# Exhibit B

# AFFIDAVIT OF JOHN W. (DON) BARRETT

STATE OF MISSISSIPPI
COUNTY OF HOLMES

I was a Carrier Scholar at the University of Mississippi, graduating magna cum laude in 1967. While at Ole Miss, I was a member of numerous scholastic and leadership honorary societies, was editor of the 1967 *Ole Miss* yearbook, and was elected to the University Hall of Fame. I graduated with honors from the Ole Miss Law School in 1969.

I am one of two partners of a fourteen-lawyer firm called Barrett Law Office, P.A. This firm has been actively engaged in the practice of law in Lexington, Mississippi, since March of 1933, and now also maintains an office in Nashville, Tennessee. Both of the firm's managing partners are rated AV by Martindale-Hubbell.

For more than thirty-four years I have maintained an active trial practice throughout Mississippi, and have substantial experience in state and federal courts throughout the nation, primarily in product liability, environmental torts, and consumer fraud.

I am a former chairman of the toxic torts section of the Mississippi Trial Lawyers Association, a founding member of the Charles Clark Inn of Court in Jackson, the founding president of the Mississippi Community College Attorneys Association, and was the Mississippi Bar delegate to the 1993 and 1994 Fifth Circuit Judicial Conferences.

Basically, I make my living preparing and trying lawsuits for injured plaintiffs. I have not kept count of the cases I have tried, but there have been many. I have won a substantial majority of the cases that I have tried. I have lost some cases, too.

Since 1986 I have taken a national leadership role in litigation against cigarette companies. I am one of only three plaintiff's attorneys in the United States to have tried three tobacco liability cases through jury submission. I had a leadership role in the massive *Castano* class action litigation in the U. S. District Court in New Orleans, and in its related state class action cases

around the country. I am one of the attorneys who represented the State of Mississippi, through Attorney General Mike Moore, in the state's successful efforts to recover its cigarette-related health care monies spent over the past years. I also represented the Attorneys General of New York, Louisiana, Arizona, Washington, Indiana, Alaska, Idaho, Oregon, Rhode Island, Ohio, Vermont, Illinois, and the Commonwealth of Puerto Rico in their successful litigation against the tobacco industry. I was one of three plaintiffs' attorneys who negotiated the landmark settlement with Liggett Group announced in March of 1996, as well as one of the lead attorneys in the historic settlement agreement entered into by twenty-two Attorneys General with Liggett Group on March 20, 1997. My tobacco litigation experiences have been chronicled in various national publications, including the *ABA Journal*, *The New York Times*, *The American Lawyer*, the *Wall Street Journal*, and *The Washington Post*. I have been featured in two books concerning tobacco litigation: (Cornered: Big Tobacco at the Bar of Justice, by Peter Pringle (Henry Holt and Company, New York City, 1998); and The People vs. Big Tobacco, by Carrick Mollencamp, et al (Bloomberg Press, Princeton, N.J., 1998), and my experiences in tobacco litigation are the primary focus of another book, Assuming the Risk, by Michael Orey (Little, Brown & Co., New York City, September, 1999).

I have also been featured on national television shows, including CBS's 60 Minutes, ABC's Day One, CNN's Moneyline, Court TV's Cochran & Grace and Pro's & Con's, British Broadcasting Company (BBC)'s The Tobacco Wars, which was rebroadcast in the United States by The Learning Channel, for my work in tobacco litigation, and on NBC's Dateline concerning my insurance fraud litigation.

One case which I have concluded is the class action case of *Nealy v. Woodman of the World Life Insurance Society*. This was a discrimination case brought against an insurance company, in which I was co-lead counsel. This case was settled for $23.1 million, which settlement was approved by Chief Judge William H. Barbour, Jr., of the U. S. District Court for the Southern

2

District of Mississippi in August of 1995. In approving this settlement, Judge Barbour had the following to say:

> THE COURT...I have got a very brief statement to make that I want to make into the record...
>
> Despite the protestations of Woodmen as to their innocence of discrimination, I think it is fairly clear that the company has since its inception practiced invidious racial discrimination against African-American citizens. I think that obviously...this lawsuit has been the impetus on the very direct actions of Woodmen to hire black agents and to begin very actively selling and soliciting to black policyholders. This should also move to remove the discrimination from the lodge systems and other fraternal benefits.
>
> I think that this is a very good example as to how the class action suit can be made and used to make substantial changes that need to be made and which could not be made but for the fact that there is enough reward system in it for diligent counsel on the class plaintiffs' side to make substantial investments not only of time but also of dollars to prosecute these cases.
>
> So I think that this is a very good example of how (the) private attorney general idea under the class action mechanism can be used to obtain very real results and I see the results in this case not so much in the substantial settlement of $23 million, which will benefit these class members, but in the breakdown of a very strong system of racial discrimination which has apparently been followed by this company until it had the heat put on it by this lawsuit...
>
> Accordingly, I congratulate the class counsel for the settlement that you have made, for the progress you have made in regard to this particular company and for the results that have been obtained.

I understand that I have a good reputation among the bar that I practice with and against. Alex Alston, a past president of the Mississippi Bar, said the following in an affidavit dated August 2, 1995, filed in support of our petition for approval of the settlement in the above-mentioned *Nealy* case:

> This is a contingent fee case in which a common fund has been created whereby monetary benefits will extend to an ascertainable class of persons similarly situated. Members of the class will be benefitted substantially as a result of what I regard as remarkable vision, skill and expertise of class counsel. Class counsel assumed

3

> the full risk of this case and took the case from a full denial of liability to an offer by defendant of a paltry sum, then to the remarkable result ultimately reached in the case. This case represents an excellent example of the "private attorney general" vindicating the rights of individuals who otherwise might not consider it worth the candle to individually embark on litigation of this nature.
>
> * * * *
>
> Highly skilled and competent counsel were required to achieve these results, from the basic formulation of a theory and a filing of a class action complaint to the class action settlement before this court. In my opinion, the members of the team working together to resolve this matter on behalf of the class were highly skilled, and their respective talents were necessary to bring about this remarkable result. All of class counsel (have) previously been involved in class action and complex litigation over the country, especially in the southeastern United States.
>
> Class counsel Don Barrett has been practicing law primarily on the side of plaintiffs in the southeastern United States for over 25 years. I have observed him and worked with him throughout his practice. He is an extremely highly skilled plaintiff's lawyer who is recognized as one of the best in this state.

I confess that I am not held in high esteem by everybody. My great friends at Adams & Reese, a high quality, blue chip defense firm in New Orleans which represents mostly major corporations, in September of 2002 declined an invitation from my firm to associate in a new case, pointing out in an internal memorandum that "Barrett.... is seen as the devil incarnate by many of our clients."

I was lead counsel in *Houchens, et al v. Rockwell*, a complex environmental tort case which resulted in a $218 million verdict for the plaintiffs on May 31, 1996, after a two-month trial in Russellville, Kentucky. After multiple trips through the Kentucky appellate system, this verdict was finally overturned in the fall of 2004. We should have settled. Over the past several years I have tried and collected damages for various plaintiffs in other environmental cases, the total of which exceeds $35 million.

I also represented the State of Mississippi in its effort to recover monies lost by Mississippi

4

consumers, and by the state itself, as a result of an alleged price-fixing conspiracy among infant formula manufacturers. I was also co-counsel for plaintiffs in state court class-actions in thirteen state court actions involving this same price-fixing conspiracy. These cases resulted in multi-million dollar settlements in twelve of these states, but only in the making of some bad law in the thirteenth state (Louisiana), on a remand issue that plaintiffs lost in a tie vote (4-4) before the U.S. Supreme Court in March of 2000.

I was the lead Court-appointed counsel for the plaintiffs in the litigation against General Motors Corporation concerning the "sidesaddle" fuel tank litigation. Final approval of a nationwide settlement with a minimum value to the class of $500 million was achieved in April of 1999.

I was co-lead counsel in the national class action against Chrysler Corporation for its defective rear minivan door latches. In this case, a settlement was reached in the U.S. District Court for the Middle District of California in the fall of 1995, and was finally approved by the Ninth Circuit Court of Appeals in early 1999.

I was lead counsel for the plaintiffs in Cox v. Shell Oil Co., et al, in the state court in Tennessee, a class action case concerning defective home plumbing systems; this case resulted in a nation-wide settlement in November, 1995, of $950 million, by far the largest property-damage settlement ever achieved in this country. As a result of the Cox litigation, on July 22, 1997, I was awarded the Public Justice Achievement Award by the Trial Lawyers for Public Justice Foundation "in recognition of (my) extraordinary contribution to the public interest."

I was co-lead counsel for the plaintiff class in Holmes v. Trustmark National Bank, et al, U.S.D.C., So. Dist Mississippi, No 1:95cv323BrR, a forced-placed insurance class action which resulted in an $8.8 million settlement approved by Judge Bramlette on June 4, 1997. In approving the settlement, the Court referred to my "substantial experience in mass-tort litigation" and wrote that class counsel "vigorously and zealously represented (the class members') interests throughout

5

this litigation."

I was lead class counsel and lead trial attorney for the plaintiffs in a national class action against State Farm Mutual Insurance Company in Illinois, concerning State Farm's use of imitation crash parts in auto repair. After a seven-week trial ending in October of 1999, the jury awarded a verdict of $456 million and an additional $600 million in punitive damages was awarded by the trial judge. This is the largest verdict ever rendered in the State of Illinois and the largest against any insurance company in the United States. As a result of that litigation, I was named the first-ever "Litigator of the Month" by the National Law Journal in its issue of November 22, 1999. This verdict was subsequently affirmed by a unanimous Illinois Court of Appeals, and is currently on appeal to the Illinois Supreme Court.

On November 22, 2000, I was appointed as the Lead Class Counsel by Chief Judge Sarah Evans Barker in the ongoing Bridgestone/Firestone/Ford tire and Explorer litigation, centralized in the U.S. District Court for the Southern District of Indiana (MDL No. 1373).

In the Summer of 2001, I was named by Judge Kathleen O'Malley, U.S.D.C., Northern District of Ohio, to the Plaintiffs' Steering Committee in *In Re: Inter-Op Hip Prosthesis Liability Litigation*, MDL No. 1401, and I was a principal negotiator for the plaintiff class for a $1.045 billion settlement reached with defendants, which settlement was finally approved by Judge O'Malley on May 22, 2002.

On December 20, 2002, I was appointed co-lead counsel for the plaintiff class by Judge Donald C. Nugent in the ongoing *In Re: Ford Motor Co. Panther Platform/Fuel Tank Design Products Liability Litigation*, MDL Docket No. 1488, pending in the U.S. District Court for the Northern District of Ohio.

I was lead counsel in the "alternative commission" class action litigation against Progressive Insurance Company, in which a nationwide settlement valued by the court at $493 million was

6

reached in the Circuit Court of Johnson County, Illinois, with final approval being given by the court on November 14, 2002. In its order granting class counsel's petition for fees, the court said:

> Class Counsel were highly competent. The Class Counsel who prosecuted this case have an impressive background, and substantial experience in prosecuting similar cases on behalf of large classes against well-funded corporations. It is evident from the record that Class Counsel worked efficiently, aggressively, and with a high degree of professionalism.

Last year, I was co-lead trial counsel with Richard Scruggs in a national class action in the U.S. District Court for the Central District of California, entitled *Austin, et al. v. Lehman Brothers, Inc., et al*. At the conclusion of this three-month trial, on May 14, 2003, Judge David O. Carter made the following statement:

> Mr. Barrett you are a superb attorney. Truly this jury has come to recognize your humor and your competency. I will never forget you looking for the elephant on your tiptoes.
>
> Your co-equal presentation in this matter and the words spoken to Mr. Scruggs are equally applicable to you. Mr. Scruggs mentioned to Ms. Duncan in this Court that he had met you after you had apparently given him a difficult lesson in trial practice. You've been courteous. You've been competent. The class is, indeed, fortunate to have you as a presenter.
>
> You mastered the complicated fact situations and brought clarity in this Court's opinion to an extremely complex area, on behalf of your clients, and it was very helpful to the jury.

After five weeks of deliberation, the jury on June 16, 2003, returned a verdict for the plaintiff class. According to the <u>Los Angeles Times</u>, "the verdict marked the first time a financial backer of an abusive lender has been held liable, carving out a new area of vulnerability for Wall Street."

On September 17, 2003, I was appointed plaintiffs' co-lead counsel in *In Re Welding Rods Litigation* (MDL 1535) by the U.S. District Court in Cleveland, Ohio.

On January 28, 2004, I was appointed plaintiffs' co-lead counsel in *In Re Unitrin MDL Litigation* (MDL 1332) by the U.S. District Court for the Eastern District of Louisiana in New Orleans, Louisiana.

These days I am frequently invited to speak at nationally-recognized legal seminars and

7

conferences. I have spoken twice at Practicing Law Institute seminars in New York City, am an invited speaker at the American Conference Institute seminar in New Orleans in November of 2004, and I am the co-chairman of the Mealey's Welding Rods Litigation Conference to be held in West Palm Beach in October of 2004. I have also been invited to be a faculty member at the Sedona Conference on Complex Litigation to be held in April of 2005. (Other faculty members invited include the General Counsel of General Motors Corporation, the General Counsel for Pfizer, Inc., and the managing partner of the Jones Day law firm.)

In an article entitled "Victory at Hand for GOP Tort Reform?" in the February 3-16, 2004, edition of *Insight,* a national news magazine, I was extensively quoted, and described therein as "one of the nation's leading litigators." I believe that description to be an exaggeration, but I do consider myself to be an experienced plaintiffs' attorney and class action litigator.

Further, affiant sayeth not.

John W. (Don) Barrett

SWORN TO and subscribed before me, on this the 23rd day of November, 2004.



Notary Public

My Commission Expires: 6-5-05