# Exhibit F

## DECLARATION OF BARRY R. HIMMELSTEIN

I, BARRY R. HIMMELSTEIN, declare and state:

1.     I am a member in good standing of the bar of the State of California, and a partner in the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), counsel for plaintiffs ASEA/AFSCME Local 52 Health Benefits Trust and Brian Krah in this multidistrict litigation proceeding (D. Mass. C.A. No. 1:04-CV-12285-PBS).  I make this declaration in support of LCHB's appointment as a member of the Class Plaintiffs' Steering Committee in *In re Neurontin Marketing and Sales Practices Litigation*, MDL Docket No. 1629, pursuant to Rule 23(g)(2)(a) of the Federal Rules of Civil Procedure.  I have personal knowledge of the matters set forth herein, and could and would testify competently thereto if called upon to do so.

2.     With over 60 attorneys, LCHB is one of the oldest, largest, most respected, and most successful law firms in the country specializing in class actions, and brings to the table a wealth of experience in similar litigation.  LCHB has been repeatedly recognized as one of the top plaintiffs' law firms in the country by both The National Law Journal and The American Lawyer.  *See* D. Hechler, *The Plaintiffs' Hot List*, National Law Journal (July 26, 2004), at S-8; A. Frankel, *Sweet Sixteen*, Litigation 2004, Supplement to The American Lawyer & Corporate Counsel (Dec. 2004), at 8-10.  A copy of the LCHB firm resume is attached hereto.

3.     LCHB has been appointed to leadership positions in numerous class actions involving prescription drugs.  LCHB has been appointed co-lead counsel in *In re Lupron Marketing and Sales Practices Litigation*, MDL Docket No. 1430, pending in this judicial district; co-lead counsel in *In re Buspirone Antitrust Litigation*, MDL Docket No.

1410, pending in the Southern District of New York, which settled in November 2003 for $90 million; co-lead counsel in *In re Tamoxifen Antitrust Litigation*, MDL Docket No. 1408, pending in the Eastern District of New York; co-lead counsel in *In re Ciprofloxacin Antitrust Litigation*, MDL Docket No. 1383, pending in the Eastern District of New York; and LCHB served as co-lead counsel in *Pharmaceutical Cases I, II, & III*, California Judicial Council Coordination Proceeding Nos. 2969, 2971 & 2972.

4.      I graduated *magna cum laude* from the University of California, Hastings College of the Law, in 1991.  Following graduation, I clerked for the Hon. Charles A. Legge (Ret.) of the Northern District of California, before joining the San Francisco office of Morrison & Foerster, LLP, in 1993.  I joined LCHB in 1997, and have been a partner in LCHB since 1999.

5.      During my tenure at LCHB, I have specialized in consumer fraud litigation, and I chaired the firm's consumer practice group for several years.  I am experienced in pharmaceutical litigation, and have been successful in obtaining certification of national litigation classes under the New Jersey Consumer Fraud Act and RICO.  I have personally litigated and settled class action cases totaling over $2 billion.

6.      I was appointed co-lead counsel in the groundbreaking *Synthroid Marketing Litigation*, MDL Docket No. 1182, in which the manufacturer of a prescription thyroid medication was accused of suppressing publication of an unfavorable study it had sponsored.  The case eventually settled for $134 million.  *See In re Synthroid Marketing Litig.*, 264 F.3d 712 (7th Cir. 2001).

7.      I have been successful in obtaining certification of national classes under both RICO and the consumer protection laws of a single state, including the New Jersey

Consumer Fraud Act, which I believe will be one of the most important battles in this litigation. *See In re American Family Enterprises*, MDL Docket No. 1235, 256 B.R. 377 (D. N.J. 2000) (asserting claims under RICO and New Jersey Consumer Fraud Act; settlement gave defrauded claimants 90% refunds, despite bankruptcy of principal defendant); *Medimatch, Inc. v. Lucent Technologies, Inc.*, 120 F. Supp. 2d 842 (N.D. Cal. 2000) (national litigation class later certified under New Jersey Consumer Fraud Act in unpublished opinion); *In re Synthroid Marketing Litig.*, 188 F.R.D. 295 (N.D. Ill. 1999) (certifying national litigation class asserting RICO and Illinois consumer fraud claims).

8.     For the last several years, I have been involved in litigation arising out of California's energy crisis of 2000-01. I was appointed co-lead counsel in *Natural Gas Antitrust Cases I-IV*, California Judicial Council Coordination Proceeding Nos. 4221, *et al.*, which settled in November 2003 as to the El Paso Corporation for over $1.5 billion. At the time it was negotiated, it was the largest antitrust settlement in United States history, and remains the largest for either a single defendant or the residents of a single state. In approving the settlement and awarding attorneys' fees, the Coordination Trial Judge, the Hon. J. Richard Haden, noted that LCHB "effectively handled one-half of the litigation against the El Paso Defendants." I argued all of the key motions in the case, and was principally responsible for the lengthy and difficult settlement negotiations. The success of the case hinged on the recognition of a novel but well-reasoned exception to the *Copperweld* doctrine. *See In re Natural Gas Antitrust Cases I, II, III & IV*, 2002 WL 31570296 (Cal. Superior), 2003-1 Trade Cases ¶73,959 (Oct. 16, 2002). As far as I know, it is the only time any court, state or federal, has ever recognized such an

exception. In my opinion, such creative lawyering may be essential to the success of this litigation.

9.     Other recent successes in energy litigation include a $417 million settlement with The Williams Companies, Inc., approved in June 2004, in which I was appointed co-lead counsel for the settlement class. Out of the many experienced and highly-qualified plaintiffs' attorneys involved in *In re: Western States Wholesale Natural Gas Antitrust Litig.*, MDL Docket No. 1566, I was selected to argue the most difficult and important motions.[1] The same is true in *Wholesale Electricity Antitrust Cases I & II*, California Judicial Council Coordination Proceeding Nos. 4204 & 4205, in which I successfully argued an appeal to the Ninth Circuit. *See People v. NRG Energy, Inc.*, No. 02-57200 (9th Cir. Dec. 8, 2004).

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of December, 2004, at San Francisco, California.

BARRY R. HIMMELSTEIN

---

[1] Formal lead counsel appointments have not yet been made in these cases, which were remanded on November 18, 2004. I argued the remand motion.

367427.1                    4

# *LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP*

*Embarcadero Center West*
*275 Battery Street, 30th Floor*
*San Francisco, CA  94111-3339*
*Telephone:  (415) 956-1000*
*Facsimile:  (415) 956-1008*

*780 Third Avenue*
*48th Floor*
*New York, NY  10017-2024*
*Telephone:  (212) 355-9500*
*Facsimile:  (212) 355-9592*

*1100 New York Ave., N.W.*
*Suite 1080 - West Tower*
*Washington, DC 20005-3934*
*Telephone:  (202) 582-1000*
*Facsimile:  (202) 582-1500*

*9401 Wilshire Boulevard*
*Twelfth Floor*
*Beverly Hills, CA 90212-2997*
*Telephone:  (310) 275-9400*
*Facsimile:  (310) 275-9405*

*3319 West End Avenue*
*Suite 600*
*Nashville, TN  37203-1074*
*Telephone:  (615) 313-9000*
*Facsimile:  (615) 313-9965*

*E-mail:  mail@lchb.com*
*Website:  www.lieffcabraser.com*

## FIRM PROFILE:

Lieff, Cabraser, Heimann & Bernstein, LLP, is a sixty-four attorney, AV-rated law firm founded in 1972 with offices in San Francisco, New York, Washington, D.C., Beverly Hills and Nashville.  For over 30 years, Lieff Cabraser has concentrated its practice in the field of complex civil litigation, representing plaintiffs in personal injury, products liability and mass tort, securities and investment fraud, consumer protection, antitrust, environmental and toxic exposures, employment discrimination and unfair employment practices, aviation law, and civil and human rights cases.  Lieff Cabraser has a diversified caseload that includes the representation of individuals in personal injury, employment and civil rights actions, private and public institutions in public health and securities matters, and businesses and consumers in antitrust cases.  The firm has tried and/or settled over 275 class actions.

Lieff Cabraser has served as court-appointed Plaintiffs' Lead or Class Counsel in state and federal coordinated, multi-district, and complex litigation throughout the United States.  With co-counsel, we have represented clients worldwide in cases filed in the United States.  Our firm enjoys a national reputation for professional integrity and the efficient and responsible prosecution of our clients' claims.  We possess the financial resources necessary for the handling of large, complex cases, and take pride in our cases that have achieved landmark results and precedent setting rulings.

In 2003 and 2004, the *National Law Journal* selected Lieff Cabraser as one of the top 20 plaintiffs' law firms in the nation.  In compiling the list, the *National Law Journal* examined recent verdicts and settlements in addition to overall track records.  The editors also contacted plaintiff and defense counsel, as well as dozens of corporate general counsel, asking them for the names of plaintiffs' litigation firms that they would use and recommend.

80577.1

*CASE PROFILES:*

**A.**    **Personal Injury and Products Liability Litigation**

   1.    ***Multi-State Tobacco Litigation.***  Lieff Cabraser represented the
         Attorneys' General of Massachusetts, Louisiana and Illinois, several
         additional states, and 18 cities and counties in California, in litigation
         against Philip Morris, R.J. Reynolds and other cigarette manufacturers.
         The suits were part of the landmark $206 billion settlement announced in
         November 1998 between the tobacco industry and the states' attorneys
         general.  The states, cities and counties sought both to recover the public
         costs of treating smoking-related diseases and require the tobacco industry
         to undertake extensive modifications of its marketing and promotion
         activities in order to reduce teenage smoking.  In California alone, Lieff
         Cabraser's clients were awarded an estimated $12.5 billion to be paid over
         the next 25 years.

   2.    ***Individual Vehicle Injury Lawsuits.***  Lieff Cabraser has an active practice
         prosecuting claims for clients injured, or the families of loved ones who
         have died, by unsafe and defective tires and vehicles.  We are representing
         clients in actions involving fatalities and serious injuries due to rollover
         accidents of fifteen passenger vans and sports utility vehicles.  Plaintiffs
         allege that the vans and SUVs were defectively designed because they
         pose an unreasonable risk of rollover during foreseeable driving
         conditions.  We also represent clients in several other vehicle injury cases,
         including personal injury lawsuits based on allegations that certain models
         of the Jeep Grand Cherokee are defectively designed because the vehicle
         can shift suddenly from park into reverse, even when the engine is not
         running.

   3.    ***In re Simon II Litigation***, No. 00-CV-5332 (JBW) (E.D. N.Y.).  Lieff
         Cabraser serves as Lead Class Counsel for a nationwide, punitive damages
         class of cigarette smokers.  In September 2002, U.S. District Court Judge
         Jack B. Weinstein certified a class of persons who smoke or smoked
         cigarettes, and were first diagnosed by a physician with a qualifying
         smoking-related disease on or after April 9, 1993 to the present.  *In re
         Simon II Litigation*, 211 F.R.D. 86 (E.D. N.Y. 2002).  Plaintiffs allege that
         the defendant cigarette companies manufactured, marketed and sold their
         cigarettes while knowing, but fraudulently denying and concealing, that
         they were defective and posed significant health risks to those who used
         them.  The court's certification order is limited to punitive damages only --
         the purpose of the case is to prove that the class is entitled to an award of
         punitive damages for the serious wrongful conduct of the cigarette
         companies.  The District Court's class certification order is now under
         review by the Second Circuit Court of Appeals.

4.    ***Fen-Phen ("Diet Drugs") Litigation.*** In September 1997, the "Fen-Phen" diet drugs fenfluramine (formerly sold as Pondimin) and/or dexfenfluramine (formerly sold as Redux) were withdrawn from the market. Earlier, in July 1997, Lieff Cabraser filed the first nationwide class action lawsuit against the diet drug manufacturers alleging that they had failed to adequately warn physicians and consumers of risks associated with the drugs. Since the recall was announced, Lieff Cabraser has represented over 300 individuals who have suffered heart and/or lung damage, most often consisting of cardiac valve damage and/or Primary Pulmonary Hypertension, after ingesting Pondimin or Redux. In addition, Lieff Cabraser prosecuted class action claims that sought medical monitoring relief and personal injury damages for Pondimin or Redux users. In *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Management Committee which organized and directed the Fen-Phen diet drugs litigation filed across the nation in federal courts. In August 2000, the Court approved a $4.75 billion settlement offering both medical monitoring relief for persons exposed to the drug and compensation for persons with qualifying damage. Lieff Cabraser also served on the Plaintiffs' Executive Committee in the California Coordinated Proceedings in California state court, and as class counsel in the State of Washington certified medical monitoring action. Our firm continues to represent individuals pursuing personal injury claims. We dedicate substantial resources on behalf of and attention to these clients and are available for confidential consultations for anyone who ingested Redux or Pondimin.

5.    ***Sulzer Hip and Knee Implants Litigation.*** In December 2000, Sulzer Orthopedics, Inc., announced the recall of approximately 30,000 units of its Inter-Op Acetabular Shell Hip Implant, followed in May 2001 with a notification of failures of its Natural Knee II Tibial Baseplate Knee Implant. In coordinated litigation in California state court, *In re Hip Replacement Cases*, JCCP 4165, Lieff Cabraser serves as Court-appointed Plaintiffs' Liaison Counsel and Co-Lead Counsel. In the federal litigation, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*, MDL 1410, Lieff Cabraser played a significant role in negotiating a revised settlement with Sulzer valued at more than $1 billion. In May 2002, the Court granted final approval to the revised settlement. Lieff Cabraser serves as Class Counsel for Subclass V of the settlement (class members with unrevised reprocessed Inter-Op shells).

6.    ***In re Baycol Products Litigation***, MDL No. 1431 (D. Minn.). Baycol is one of a group of drugs called statins, intended to reduce cholesterol. In August 2001, Bayer A.G. and Bayer Corporation, the manufacturers of Baycol, withdrew the drug from the worldwide market based upon reports that Baycol was associated with serious side effects and linked to the deaths of over 100 patients worldwide. In the federal multi-district

litigation, Lieff Cabraser serves as a member of the Plaintiffs' Steering Committee (PSC) and the Executive Committee of the PSC. In addition, Lieff Cabraser represented approximately 200 Baycol patients who have suffered injuries or family members of patients who died allegedly as a result of ingesting Baycol. In these cases, Lieff Cabraser reached confidential favorable settlements with Bayer.

7.     ***Blood Factor VIII And Factor IX Litigation.*** Working with counsel in Asia, Europe, South America and the Middle East, Lieff Cabraser represents hundreds of hemophiliacs worldwide, or their survivors and estates, who contracted HIV and/or Hepatitis C (HCV), and Americans with hemophilia who contracted HCV, from contaminated and defective blood factor products produced by American pharmaceutical companies. In 2004, Lieff Cabraser was appointed Plaintiffs' Lead Counsel of the "second generation" Blood Factor MDL litigation presided over by Judge Grady in the Northern District of Illinois. This groundbreaking litigation follows upon a two-month trial directed by Richard M. Heimann in 2003 in California state court on behalf of a person with hemophilia who is HIV-positive. Although the jury was unable to render a verdict, the evidence produced at trial was sufficient to convince the defendant on the eve of retrial to enter into one of the largest individual settlements in the history of the blood factor litigation.

8.     ***In re Silicone Gel Breast Implants Products Liability Litigation***, MDL No. 926 (N.D. Ala.). Lieff Cabraser serves on the Plaintiffs' Steering Committee and was one of five members of the negotiating committee which achieved a $4.25 billion global settlement with certain defendants of the action. This was renegotiated in 1995, and is referred to as the Revised Settlement Program ("RSP"). Over 100,000 recipients have received initial payments, reimbursement for the explantation expenses and/or long term benefits.

9.     ***In re Telectronics Pacing Systems Inc., Accufix Atrial "J" Leads Products Liability Litigation***, MDL No. 1057 (S.D. Ohio). Lieff Cabraser served on the court-appointed Plaintiffs' Steering Committee in a nationwide products liability action alleging that defendants placed into the stream of commerce defective pacemaker leads. In April 1997, the district court re-certified a nationwide class of "J" Lead implantees with subclasses for the claims of medical monitoring, negligence and strict product liability. A summary jury trial utilizing jury instructions and interrogatories designed by Lieff Cabraser occurred in February 1998. A partial settlement was approved thereafter by the district court, but reversed by the Court of Appeals. In March 2001, the district court approved a renewed settlement that included a $58 million fund to satisfy all past, present and future claims by patients for their medical care, injuries, or damages arising from the lead.

10.    *In re Felbatol Products Liability Litigation*, MDL No. 1048 (N.D. Cal.).
Lieff Cabraser served as Co-Lead Class Counsel and Plaintiffs' Liaison
Counsel in this nationwide litigation asserting medical monitoring,
compensatory and punitive damages claims on behalf of 100,000 users of
the anti-epilepsy drug Felbatol, who alleged present and potential injuries
from its serious adverse effects, including liver failure and aplastic
anemia. The nationwide Plaintiff class was certified on March 15, 1995;
certification was vacated for further findings by the Ninth Circuit in
*Valentino v. Carter-Wallace*, 97 F.3d 1277 (9th Cir. 1996), which
affirmed the viability of nationwide mass tort class actions. The litigation
was settled favorably on behalf of all major injury claimants in March
1997.

11.    *In re Cordis Pacemaker Product Liability Litigation*, MDL No. 850
(S.D. Ohio). Lieff Cabraser represented a certified nationwide class of
Cordis pacemaker recipients on personal injury, emotional distress, fraud,
equitable relief, and pacemaker explant compensation claims. In 1995,
shortly before trial, Lieff Cabraser negotiated and obtained Court approval
of a $21 million settlement of the action.

12.    *In re Copley Pharmaceutical, Inc., "Albuterol" Products Liability
Litigation*, MDL No. 1013 (D. Wyo.). Lieff Cabraser served on the
Plaintiffs' Steering Committee in a class action lawsuit against Copley
Pharmaceutical, which manufactured Albuterol, a bronchodilator
prescription pharmaceutical. Albuterol was the subject of a nationwide
recall in January 1994 after a microorganism was found to have
contaminated the solution, allegedly causing numerous injuries including
bronchial infections, pneumonia, respiratory distress and, in some cases,
death. In October 1994, the district court certified a nationwide class on
liability issues. *In re Copley Pharmaceutical*, 161 F.R.D. 456 (D. Wyo.
1995). In November 1995, the district court approved a $150 million
settlement of the litigation.

**B.    Securities and Investment Fraud**

1.    *In re Scorpion Technologies, Inc. Securities Litigation I*, No. C-93-
20333-EAI (N.D. Cal.); *Dietrich v. Bauer*, No. C-95-7051-RWS
(S.D.N.Y.); *Claghorn v. Edsaco*, No. 98-3039-SI (N.D. Cal.). Lieff
Cabraser served as Co-Lead Counsel in class action suits arising out of an
alleged fraudulent scheme by Scorpion Technologies, Inc., certain of its
officers, accountants, underwriters and business affiliates to inflate the
company's earnings through reporting fictitious sales. In *Scorpion I*, the
Court found plaintiffs had presented sufficient evidence of liability under
Federal securities acts against the accounting firm Grant Thornton for the
case to proceed to trial. *In re Scorpion Techs.*, 1996 U.S. Dist. LEXIS
22294 (N.D. Cal. Mar. 27, 1996). In 1988, the Court approved a $5.5
million settlement with Grant Thornton. In 2000, the Court approved a

$950,000 settlement with Credit Suisse First Boston Corporation. In April 2002, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd. The jury found that Edsaco aided Scorpion in setting up phony European companies as part of scheme in which Scorpion reported fictitious sales of its software to these companies, thereby inflating its earnings. Included in the jury verdict, one of the largest verdicts in a securities fraud suit in the U.S. in 2002, was $165 million in punitive damages. Richard M. Heimann conducted the trial for plaintiffs.

Following the *Edsaco* trial, the parties reached a settlement of the action on favorable monetary terms to the class, which included Edsaco's relinquishment of its right to appeal and the plaintiff's agreement to vacate the jury verdict. On June 14, 2002, U.S. District Court Judge Susan Illston commented on Lieff Cabraser's representation: "[C]ounsel for the plaintiffs did a very good job in a very tough situation of achieving an excellent recovery for the class here. You were opposed by extremely capable lawyers. It was an uphill battle. There were some complicated questions, and then there was the tricky issue of actually collecting anything in the end. I think based on the efforts that were made here that it was an excellent result for the class. . . . [T]he recovery that was achieved for the class in this second trial is remarkable, almost a hundred percent."

2.    *In re Network Associates, Inc. Securities Litigation*, No. C-99-1729-WHA (N.D. Cal.). Following a competitive bidding process, the Court appointed Lieff Cabraser as Lead Counsel for the Lead Plaintiff and the class of investors. The complaint alleged that Network Associates improperly accounted for acquisitions in order to inflate its stock price. In May 2001, the Court granted approval to a $30 million settlement.

In reviewing the *Network Associates* settlement, U.S. District Court Judge William H. Alsup observed, "[T]he class was well served at a good price by excellent counsel . . . We have class counsel who's one of the most foremost law firms in the country in both securities law and class actions. And they have a very excellent reputation for the conduct of these kinds of cases and their experience and views . . ."

3.    *In re California Micro Devices Securities Litigation*, No. C-94-2817-VRW (N.D. Cal.). Lieff Cabraser served as Liaison Counsel for the Colorado Public Employees' Retirement Association and the California State Teachers' Retirement System, and the class they represented. Prior to 2001, the Court approved $19 million in settlements. On May 24, 2001, the Court approved an additional settlement of $12 million, which, combined with the earlier settlements, provided class members an almost complete return on their losses. The settlement with the company

included multi-million dollar contributions by the former Chairman of the Board and Chief Executive Officer.

Commenting in 2001 on Lieff Cabraser's work in *Cal Micro Devices*, U.S. District Court Judge Vaughn R. Walker stated, "It is highly unusual for a class action in the securities area to recover anywhere close to the percentage of loss that has been recovered here, and counsel and the lead plaintiffs have done an admirable job in bringing about this most satisfactory conclusion of the litigation." One year later, in a related proceeding and in response to the statement that the class had received nearly a 100% recovery, Judge Walker observed, "That's pretty remarkable. In these cases, 25 cents on the dollar is considered to be a magnificent recovery, and this is [almost] a hundred percent."

4.    *In re FPI/Agretech Securities Litigation*, MDL No. 763 (D. Haw., Real, J.). Lieff Cabraser served as Lead Class Counsel on behalf of multiple classes of investors defrauded in a limited partnership investment scheme. The Court approved $15 million in partial pretrial settlements. At trial, the jury returned a $25 million verdict, which included $10 million in punitive damages plus costs, interest, and attorneys' fees, against non-settling defendant Arthur Young & Co. on securities and tort claims arising from its involvement in the fraud. Richard M. Heimann served as Lead Trial Counsel in the class action trial. On appeal, the compensatory damages judgment was affirmed and the case was remanded for retrial on punitive damages. In December 1994, the Court approved a $17 million class settlement with Ernst & Young.

5.    *Kofuku Bank Ltd. and Namihaya Bank Ltd. v. Republic New York Securities Corp., et al.*, No. 00 CIV 3298 (S.D.N.Y.); and *Kita Hyogo Shinyo-Kumiai v. Republic New York Securities Corp., et al.*, No. 00 CIV 4114 (S.D.N.Y.). Lieff Cabraser represented Kofuku Bank, Namihaya Bank and Kita Hyogo Shinyo-Kumiai (a credit union) in individual lawsuits against, among others, Martin A. Armstrong and HSBC, Inc., the successor-in-interest to Republic New York Corporation, Republic New York Bank and Republic New York Securities Corporation for alleged violations of federal securities and racketeering laws. Through a group of interconnected companies owned and controlled by Armstrong – the Princeton Companies – Armstrong and the Republic Companies promoted and sold promissory notes, known as the "Princeton Notes," to more than eighty of the largest companies and financial institutions in Japan. Lieff Cabraser's lawsuits, as well as the lawsuits of dozens of other Princeton Note investors, alleged that the Princeton and Republic Companies made fraudulent misrepresentations and non-disclosures in connection with the promotion and sale of Princeton Notes, and that investors' moneys were commingled and misused to the benefit of Armstrong, the Princeton Companies and the Republic Companies. In December 2001, the claims of our clients and those of the other Princeton

Note investors were settled. As part of the settlement, our clients recovered more than $50 million, which represents 100% of the value of their principal investments less money they received in interest or other payments.

6.    ***Merrill Lynch Fundamental Growth Fund and Merrill Lynch Global Value Fund, Inc., v. McKesson HBOC, Inc., et al.,*** No. 02-405792 (Cal. Superior Ct.). Lieff Cabraser serves as counsel for two Merrill Lynch mutual funds in a private lawsuit filed alleging that a massive accounting fraud occurred at HBOC & Company ("HBOC") before and following its 1999 acquisition by McKesson Corporation ("McKesson"). The funds charge that defendants, including the former CFO of McKesson HBOC, the name McKesson adopted after acquiring HBOC, artificially inflated the price of securities in McKesson HBOC, through misrepresentations and omissions concerning the financial condition of HBOC, resulting in approximately $150 million in losses for plaintiffs. In a significant discovery ruling in 2004, the California Court of Appeal held that defendants waived the attorney-client and work product privileges in regard to an audit committee report and interview memoranda prepared in anticipation of shareholder lawsuits by disclosing the information to the U.S. Attorney and SEC. McKesson HBOC, Inc. v. Superior Court, 115 Cal. App. 4th 1229 (2004).

7.    ***Albert, et al. v. Alex. Brown Management Services, Inc., et al.; Baker, et al. v. Alex. Brown Management Services, Inc., et al.*** (Del. Superior Court). In May 2004, on behalf of investors in two investment funds controlled, managed and operated by Deutsche Bank and advised by DC Investment Partners, Lieff Cabraser filed lawsuits for alleged fraudulent conduct that resulted in an aggregate loss of hundreds of millions of dollars. The suits name as defendants Deutsche Bank and its subsidiaries Alex Brown Management Services and Deutsche Bank Securities, members of the funds' management committee, as well as DC Investments Partners and two of its principles. Among the plaintiff-investors are 70 high net worth individuals.

8.    ***Allocco et al. v. Gardner et al.,*** No. Case No. GIC 806450 (Cal. Superior Ct.). Lieff Cabraser represents Lawrence L. Garlick, the co-founder and former Chief Executive Officer of Remedy Corporation and 24 other former senior executives and directors of Remedy Corporation in a private (non-class) securities fraud lawsuit against Stephen P. Gardner, the former Chief Executive Officer of Peregrine Systems, Inc., John J. Moores, Peregrine's former Chairman of the Board, Matthew C. Gless, Peregrine's former Chief Financial Officer, Peregrine's accounting firm Arthur Andersen and certain entities that entered into fraudulent transactions with Peregrine. The lawsuit, filed in California state court, arises out of Peregrine's August 2001 acquisition of Remedy. Plaintiffs charge that they were induced to exchange their Remedy stock for Peregrine stock on

the basis of false and misleading representations made by defendants. Within months of the Remedy acquisition, Peregrine began to reveal to the public that it had grossly overstated its revenue during the years 2000-2002, and eventually restated more than $500 million in revenues.

9.    ***In re National Century Financial Enterprises, Inc. Investment Litigation***, MDL 1565 (S.D. Ohio).  Lieff Cabraser serves as Lead Counsel for the New York City Employees' Retirement System, Teachers' Retirement System for the City of New York, New York City Police Pension Fund, and New York City Fire Department Pension Fund in a securities fraud and breach of fiduciary duties lawsuit against Bank One, JPMorgan Chase Bank, Credit Suisse First Boston LLC, and additional defendants.  The complaint charges that plaintiffs suffered $89 million in losses as a result of a massive Ponzi scheme orchestrated and implemented by National Century Financial Enterprises and defendants.

10.   ***Alaska State Department of Revenue, et al. v. America Online, Inc., et al.***, No. 1JU-04-503 (Alaska Superior Ct.).  Serving as co-counsel with the Alaska Attorney General, Lieff Cabraser filed a complaint in April 2004 against America Online, Inc., Time Warner, Inc., Ernst & Young, Morgan Stanley, and certain current and former officers and directors.  The complaint alleges that several State of Alaska funds incurred substantial losses in their investments in AOL and Time Warner stock because the defendants misrepresented revenues and subscriber numbers before and after the merger of AOL and Time Warner.

11.   ***Informix/Illustra Securities Litigation***, No. C-97-1289-CRB (N.D. Cal.).  Lieff Cabraser represented Richard H. Williams, the former Chief Executive Officer and President of Illustra Information Technologies, Inc. ("Illustra"), and a class of Illustra shareholders in a class action suit on behalf of all former Illustra securities holders who tendered their Illustra preferred or common stock, stock warrants or stock options in exchange for securities of Informix Corporation ("Informix") in connection with Informix's 1996 purchase of Illustra.  Pursuant to that acquisition, Illustra stockholders received Informix securities representing approximately 10% of the value of the combined company.  The complaint alleged claims for common law fraud and violations of Federal securities law arising out of the acquisition.  In October 1999, U.S. District Judge Charles E. Breyer approved a global settlement of the litigation for $136 million, constituting one of the largest settlements ever involving a high technology company alleged to have committed securities fraud.  Our clients, the Illustra shareholders, received approximately 30% of the net settlement fund.

12.   ***In re Transmeta Corporation Securities Litigation***, No. C 01-02450 WHA (N.D. Cal.).  Lieff Cabraser served as Lead Counsel in a class action lawsuit against Transmeta Corporation and several of its officers and directors for alleged violations of federal securities laws.  Plaintiffs

allege that defendants misrepresented both the capabilities and performance of Transmeta's principal product, the "Crusoe" line of microprocessors, and the company's true financial condition and business prospects in order to artificially inflate and maintain the price of Transmeta's stock. In March 2003, the Court granted final approval to a $5.5 million settlement.

13.    *In re Media Vision Technology Securities Litigation*, No. CV-94-1015 (N.D.Cal.). Lieff Cabraser serves as Co-Lead Counsel in a class action lawsuit which alleged that certain of Media Vision's officers, outside directors, accountants and underwriters engaged in a fraudulent scheme to inflate the company's earnings, and issued false and misleading public statements about the company's finances, earnings and profits. By 1998, the Court had approved several partial settlements with many of Media Vision's officers and directors, accountants and underwriters which totalled $31 million. The settlement proceeds have been distributed to eligible class members. The evidence that Lieff Cabraser developed in the civil case led prosecutors to commence an investigation and ultimately file criminal charges against Media Vision's former Chief Executive Officer and Chief Financial Officer. The civil action against Media Vision's CEO and CFO was stayed pending the criminal proceedings against them. In the criminal proceedings, the CEO pled guilty on several counts, and the CFO was convicted at trial. In October, 2003, the Court granted Plaintiffs' motions for summary judgment and entered a judgment in favor of the class against these two defendants in the amount of $188 million.

14.    *In re Pre-Paid Legal Services, Inc.*, No. 02-0273-C (RJC) (W.D. Okla.). On behalf of persons who purchased an "Opportunity" from Pre-Paid Legal Services, Inc. to sell "legal insurance plans" issued by Pre-Paid Legal Services, Inc. and to recruit others into the same program. Lieff Cabraser serves as Lead Counsel in a class action lawsuit against Pre-Paid and certain of its officers for violations of the Securities Act of 1933, certain Oklahoma statutes, and various common-law claims. The complaint alleges that the purchase of Pre-Paid's "Opportunity" is an investment contract security, which is fraudulently marketed and sold as part of an alleged unlawful pyramid scheme.

15.    *Nguyen v. FundAmerica*, No. C-90-2090 MHP (N.D. Cal., Patel, J.), 1990 Fed. Sec. L. Rep. (CCH) ¶¶ 95,497, 95,498 (N.D. Cal. 1990). Lieff Cabraser served as Plaintiffs' Class Counsel in this securities/RICO/tort action seeking an injunction against alleged unfair "pyramid" marketing practices and compensation to participants. The District Court certified a nationwide class for injunctive relief and damages on a mandatory basis and enjoined fraudulent overseas transfers of assets. The Bankruptcy Court permitted class proof of claims. Lieff Cabraser obtained dual

District Court and Bankruptcy Court approval of settlements distributing over $13 million in FundAmerica assets to class members.

16.    ***In re First Capital Holdings Corp. Financial Products Securities Litigation***, MDL No. 901 (C.D. Cal.). Lieff Cabraser served as Co-Lead Counsel in a class action brought to recover damages sustained by policyholders of First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company policyholders resulting from the insurance companies' allegedly fraudulent or reckless investment and financial practices, and the manipulation of the companies' financial statements. This policyholder settlement generated over $1 billion in restored life insurance policies, and was approved by both federal and state courts in parallel proceedings and then affirmed by the Ninth Circuit on appeal.

17.    ***In re Precious Metals Dealers/Safrabank Securities Litigation***, MDL No. 804 (C.D. Cal.) Lieff Cabraser served as Lead Counsel for a class of purchasers who were allegedly fraudulently induced to purchase precious metal through similar high pressure sales pitches. The case resulted in a $10 million settlement.

C.    **Employment Discrimination and Unfair Employment Practices**

1.    ***Butler v. Home Depot***, No. C94-4335 SI (N.D. Cal.). Lieff Cabraser and co-counsel represented a class of approximately 25,000 female employees and applicants for employment with Home Depot's West Coast Division who alleged gender discrimination in connection with hiring, promotions, pay, job assignment, and other terms and conditions of employment. The class was certified in January 1995. In January 1998, the Court approved a $87.5 million settlement of the action that included comprehensive injunctive relief over the term of a five-year Consent Decree. Under the terms of the settlement, Home Depot committed to modify its hiring, promotion, and compensation practices to ensure that interested and qualified women will be hired for, and promoted to, sales and management positions.

On January 14, 1998, U.S. District Judge Susan Illston commented that the settlement provides "a very significant monetary payment to the class members for which I think they should be grateful to their counsel, but even more significant is the injunctive relief that's provided for . . ." By 2003, the injunctive relief created thousands of new job opportunities in sales and management positions at Home Depot, generating the equivalent of over approximately $100 million per year in wages for female employees.

2.    ***Frank v. United Airlines, Inc.***, No. C-92-0692 MJJ (N.D. Cal.). Lieff Cabraser and co-counsel obtained a $36.5 million settlement in February

2004 for a class of female flight attendants who were required to weigh less than comparable male flight attendants.

Former U.S. District Court Judge Charles B. Renfrew (ret.), who served as a mediator in the case, stated, "As a participant in the settlement negotiations, I am familiar with and know the reputation, experience and skills of lawyers involved. They are dedicated, hardworking and able counsel who have represented their clients very effectively." U.S. District Judge Martin J. Jenkins, in granting final approval to the settlement, found "that the results achieved here could be nothing less than described as exceptional," and that the settlement "was obtained through the efforts of outstanding counsel." Judge Jenkins observed that Lieff Cabraser partner James Finberg "in particular, and his firm, in particular, are very sophisticated in handling matters of this type.

3.   *Barnett v. Wal-Mart*, No. 01-2-24553-SNKT (Wash.); *Gamble v. Wal-Mart*, No. 7121-01 (N.Y.). Lieff Cabraser and co-counsel represent proposed classes of hourly wage earners at Wal-Mart in Washington and New York who allegedly have been forced to work "off-the-clock" (without pay). Plaintiffs, current and former Wal Mart employees, allege that, in violation of state wage and hour laws, Wal-Mart forces employees to work through breaks and to work without pay after they have clocked out. In October 2004, in the Washington Wal-Mart action, the Court certified a class of approximately 40,000 current and former Wal-Mart employees.

4.   *In Re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation*, MDL No. 1439 (D. Or.). Lieff Cabraser and co-counsel represent personal lines claims representatives of Farmers' Insurance Exchange seeking unpaid overtime. In November 2003, after a three week liability phase trial, the Court held that Farmers' claims adjusters who handle auto and low level property claims are entitled to overtime. 300 F.Supp. 2d 1020 (2003). The Court further found that Farmers' actions were willful and were not taken in good faith, entitling plaintiffs to seek double damages on the lost overtime wages during the upcoming damages phase of the trial. Lieff Cabraser partner James M. Finberg serves as one of the lead trial counsel for plaintiffs.

5.   *Gonzalez et al. v. Abercrombie & Fitch Stores, Inc. et al.*, No. C03-2817 SI (N.D. Cal.). A settlement has been reached, valued at approximately $50 million, which requires the retail clothing giant Abercrombie & Fitch to provide monetary benefits of $40 million to the class of Latino, African American, Asian American and female applicants and employees who charged the company with discrimination. The settlement also requires the company to institute a range of policies and programs to promote diversity among its workforce and to prevent discrimination based on race or gender. The class action received significant nationwide publicity,

including a profile on *60 Minutes*. Lieff Cabraser serves as Class Co-Counsel with the Mexican American Legal Defense and Educational Fund, the Asian Pacific American Legal Center and the NAACP Legal Defense and Educational Fund, Inc.

6.   *Trotter v. Perdue Farms, Inc.*, No. C 99-893-RRM (JJF) (MPT) (D. Del.). Lieff Cabraser represented a class of chicken processing employees of Perdue Farms, Inc., one of the nation's largest poultry processors, for wage and hour violations. The suit challenged Perdue's failure to compensate its assembly line employees for putting on, taking off, and cleaning protective and sanitary equipment in violation of the Fair Labor Standards Act, various state wage and hour laws, and the Employee Retirement Income Security Act. In October, 2002, the Court granted final approval of a settlement resolving the action. Under the settlement, Perdue paid $10 million for wages lost by its chicken processing employees and attorneys' fees and costs. The settlement was in addition to a $10 million settlement of a suit brought by the Department of Labor in the wake of Lieff Cabraser's lawsuit.

7.   *Gottlieb v. SBC Communications*, No. CV-00-04139 AHM (MANx) (C.D. Cal.). With co-counsel, Lieff Cabraser represented current and former employees of SBC and Pacific Telesis Group ("PTG") who participated in AirTouch Stock Funds, which were at one time part of PTG's salaried and non-salaried savings plans. After acquiring PTG, SBC sold AirTouch, which PTG had owned, and caused the AirTouch Stock Funds that were included in the PTG employees' savings plans to be liquidated. Plaintiffs allege that in eliminating the AirTouch Stock Funds, and in allegedly failing to adequately communicate with employees about the liquidation, SBC breached its duties to 401k plan participants under the Employee Retirement Income Security Act. In 2002, the Court granted final approval to a $10 million settlement for all PTG salaried and non-salaried plan participants who had a balance in AirTouch Stock Funds on December 31, 1997.

8.   *Thomas v. California State Automobile Association*, No. CH217752 (Cal. Superior Court, Alameda County). With co-counsel, Lieff Cabraser represented 1,200 current and former field claims adjusters who worked for the California State Automobile Association ("CSAA"). Plaintiffs alleged that CSAA improperly classified their employees as exempt, therefore denying them overtime pay for overtime worked. In May 2002, the Court approved an $8 million settlement of the case.

9.   *Church v. Consolidated Freightways*, No. C90-2290 DLJ (N.D. Cal.). Lieff Cabraser was the Lead Court-appointed Class Counsel in this class action on behalf of the exempt employees of Emery Air Freight, a freight forwarding company acquired by Consolidated Freightways in 1989. On behalf of the employee class, Lieff Cabraser prosecuted claims for

violation of the Employee Retirement Income Security Act ("ERISA"), the securities laws, and the Age Discrimination in Employment Act ("ADEA"). The case settled in 1993 for $13.5 million.

10. ***Buttram v. UPS, Inc.***, No. C-97-01590 MJJ (N.D. Cal.). Lieff Cabraser and several co-counsel represented a class of approximately 14,000 African-American part-time hourly employees of UPS's Pacific and Northwest Regions alleging race discrimination in promotions and job advancement. In 1999, the Court approved a $12.14 million settlement of the action. Under the injunctive relief portion of the settlement, among other things, Class Counsel continues to monitor the promotions of African-American part-time hourly employees to part-time supervisor and full-time package car driver.

11. ***Lyon v. TMP Worldwide, Inc.***, No. 993096 (San Francisco Superior Ct.). Lieff Cabraser served as Class Counsel for a class of certain non-supervisory employees in an advertising firm. The settlement, approved in 2000, provided almost a 100% recovery to class members. The suit alleged that TMP failed to pay overtime wages to these employees.

12. ***Kahn v. Denny's***, No. BC177254 (Los Angeles Superior Ct.). Lieff Cabraser brought a lawsuit alleging that Denny's failed to pay overtime wages to its General Managers and Managers who worked at company-owned restaurants in California. The Court certified the class and the case settled in 2000 for $4 million.

13. ***Foster v. The Great Atlantic & Pacific Tea Company, Inc. ("A&P")***, No. 99 Civ. 3860 (CM) (S.D.N.Y.). Lieff Cabraser, along with co-counsel, represented approximately 870 current and former employees of New York area supermarkets suing under the Fair Labor Standards Act. The Opt-In Plaintiffs in the certified collective action sought unpaid overtime compensation resulting from Defendants' alleged failure to compensate employees for work performed "off-the-clock." In May 2004, the Court approved a settlement providing $3.11 million to the Opt-In Plaintiffs. In June 2004, Lieff Cabraser filed a new lawsuit against defendants in New York state court seeking certification of a class of current and former full-time hourly employees of The Great Atlantic & Pacific Tea Company, Inc. in New York for past six years. The plaintiffs allege that defendants fail to pay overtime wages and delete hours actually worked from time records in violation of New York labor law.

14. ***Satchell, et al. v. FedEx Express***, No. C 03-2659 SI; C 03-2878 SI (N.D. Cal.). Lieff Cabraser, with co-counsel, represents African American and Latino employees of FedEx Express in its Western Region in a class action lawsuit. Plaintiffs allege that FedEx Express has discriminated against minority employees on the basis of race with respect to initial job assignment, compensation, promotion and discipline.

15.  ***Giles v. Allstate***, JCCP Nos. 2984 and 2985. Lieff Cabraser represented a class of Allstate insurance agents seeking reimbursement of out-of-pocket costs. The action settled for approximately $40 million.

16.  ***Bogan v. Fleetwood Enterprises, Inc.***, No. CIV 00-0440-S-BLW (D. Idaho). Lieff Cabraser, along with co-counsel, represents a nationwide class of women production associates who allegedly have been discriminated against on the basis of sex with respect to promotions and compensation, and who allegedly have been subjected to rampant sexual harassment. In 2002, the Court approved a settlement that included comprehensive injunctive relief.

17.  ***Dupree v. The Prudential Insurance Co., et al.***, No. 99-8337-CIV (AJJ) (S.D. Fla.) With co-counsel, Lieff Cabraser represents a group of retired employees of Prudential who are participants in Prudential's Retirement Plan. The Plan provides pension benefits to thousands of retirees who used to work for Prudential. Those benefits are protected by a federal statute called the Employee Retirement Income Security Act (ERISA), which was enacted by Congress to prevent employers from exercising improper control over the assets of their retirement plans. The plaintiff retirees allege that Prudential violated ERISA by using (and continuing to use) the Retirement Plan's assets to benefit Prudential, instead of its retirees. Trial commenced on February 17, 2004, and concluded in March. Closing arguments are scheduled for January 2005. Plaintiffs request that the Court make Prudential restore to all Plan participants the funds allegedly taken out of the Retirement Plan in violation of the law.

Lieff Cabraser attorneys have also had experience working on several other employment cases, including cases involving race, gender, and age discrimination, ERISA, breach of contract claims, and wage/hour claims. Lieff Cabraser attorneys frequently write amici briefs on cutting-edge legal issues involving employment law. Lieff Cabraser is currently investigating charges of race, gender and/or age discrimination, and wage/hour violations against several companies.

**D.  <u>Consumer Protection</u>**

1.  ***Avery v. State Farm Mutual Auto Insurance Co.***, No. 97-L-114 (Williamson County Circuit Ct., Ill.). With co-counsel, Lieff Cabraser challenged State Farm's practice of specifying non-original-equipment manufacturer (non-OEM) imitation "crash" parts on repair estimates for millions of its insureds' vehicles. Trial in the case commenced on August 10, 1999. On October 4, 1999, the jury awarded $456 million in compensatory damages to plaintiffs for their breach of contract claim. On October 8, 1999, the trial court agreed that State Farm had breached its contract and found that State Farm's practice of using imitation parts and claiming they were of like kind and quality violated the Illinois Consumer Fraud Act. The trial court awarded an additional $130 million in compensatory damages, and ordered State Farm to pay an additional $600

million in punitive damages. State Farm appealed the judgment. On April 5, 2001, the Appellate Court of Illinois, in a unanimous opinion, upheld the verdict. 321 Ill. App. 3d 269; 746 N.E.2d 1242 (2000). The Appellate Court found no error in either the trial of the action as a class action or the conduct of the trial court. The Appellate Court, however, reduced the original $1.18 billion judgment entered by the trial court by $130 million to subtract what it felt was an overlapping award on the two separate counts. The total remaining award of $1.05 billion is one of the largest verdicts ever upheld on appeal. The case is now pending before the Illinois Supreme Court.

2.     *Providian Credit Card Cases*, No. JCCP 4085 (San Francisco Superior Ct.). Lieff Cabraser served as Co-Lead Counsel for a certified national Settlement Class of Providian credit cardholders who alleged that Providian had engaged in widespread misconduct by charging cardholders unlawful, excessive interest and late charges, and by promoting and selling to cardholders "add-on products" promising illusory benefits and services. In November 2001, the Court granted final approval to a $105 million settlement of the case, which also required Providian to implement substantial changes in its business practices. The $105 million settlement, combined with an earlier settlement by Providian with Federal and state agencies, represents the largest settlement ever by a U.S. credit card company in a consumer protection case.

3.     *In re Tri-State Crematory Litigation*, MDL No. 1467 (N.D. Ga.). In March 2004, trial commenced with Lieff Cabraser partner Kathryn E. Barnett delivering the opening statement in a class action by families whose loved ones were improperly cremated and desecrated by Tri-State Crematory in Noble, Georgia. The families also asserted claims against the funeral homes that delivered the decedents to Tri-State Crematory for failing to ensure that the crematory performed cremations in the manner required under the law and by human decency. One week into trial, settlements with the remaining funeral home defendants were reached and brought the settlement total to approximately $37 million. Since March 2004, all of the settlements with the funeral homes have been preliminarily or finally approved. The Marsh defendants, the operators of Tri-State Crematory, however, withdrew from the tentatively approved settlement. Trial on the class members' claims against the Marsh defendants began in August 2004. Soon thereafter, the Marsh defendants entered into a $80 million settlement with plaintiffs. As part of the settlement, all buildings on the Tri-State property will be razed. The property will remain in a trust so that it will be preserved in peace and dignity as a secluded memorial to those whose remains were mistreated, and to prevent crematory operations or other inappropriate activities from ever taking place there. Earlier in the litigation, the Court granted plaintiffs' motion for class certification in a published order. 215 F.R.D. 660 (2003).

4.    *Kline v. The Progressive Corporation*, Circuit No.: 02-L-6 (Circuit Court of the First Judicial Circuit, Johnson County, Illinois). Lieff Cabraser served as settlement class counsel in a nationwide consumer class action challenging Progressive Corporation's private passenger automobile insurance sales practices. Plaintiffs alleged that the Progressive Corporation wrongfully concealed from class members the availability of lower priced insurance for which they qualified. In 2002, the Court approved a settlement valued at approximately $450 million, which included both cash and equitable relief. The claims program, implemented upon a nationwide mail and publication notice program, was completed in 2003.

5.    *Citigroup Loan Cases*, JCCP No. 4197 (San Francisco Superior Ct.). In 2003, the Court approved a settlement that provided approximately $240 million in relief to former Associates' customers across America. Prior to its acquisition in November 2000, Associates First Financial, referred to as The Associates, was one of the nation's largest "subprime" lenders. Lieff Cabraser represented former customers of The Associates charging that the company added on mortgage loans unwanted and unnecessary insurance products and engaged in improper loan refinancing practices.

6.    *In re Synthroid Marketing Litigation*, MDL No. 1182 (N.D. Ill.). Lieff Cabraser served as Co-Lead Counsel for the purchasers of the thyroid medication Synthroid in litigation against Knoll Pharmaceutical, the manufacturer of Synthroid. The lawsuits charged that Knoll misled physicians and patients into keeping patients on Synthroid despite knowing that less costly, but equally effective drugs, were available. In 2000, the District Court gave final approval to a $87.4 million settlement with Knoll and its parent company, BASF Corporation, on behalf of a class of all consumers who purchased Synthroid at any time from 1990 to 1999. In 2001, the Court of Appeals upheld the order approving the settlement and remanded the case for further proceedings. 264 F. 3d 712 (7th Circ. 2001). The settlement proceeds were distributed in 2003.

7.    *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, MDL No. 1604 (Northern District of Illinois). Lieff Cabraser serves as Co-Lead Plaintiffs' Counsel in a nationwide class action against Ocwen Financial Corporation, Ocwen Federal Bank FSB, and their affiliates ("Ocwen"). This lawsuit arises out of charges against Ocwen of misconduct in servicing its customers' mortgage loans and in its provision of certain related services, including debt collection and foreclosure services.

8.    *Curry v. Fairbanks Capital Corporation*, No. 03-10895-DPW (D. Mass.). In 2004, the Court approved a $55 million settlement of a class action lawsuit against Fairbanks Capital Corporation arising out of charges against Fairbanks of misconduct in servicing its customers' mortgage loans. The settlement also required substantial changes

in Fairbanks' business practices and established a default resolution program to limit the imposition of fees and foreclosure proceedings against Fairbanks' customers. Lieff Cabraser served as nationwide Co-Lead Counsel for the homeowners.

9.   *Reverse Mortgage Cases*, JCCP No. 4061 (San Mateo County Superior Ct., Cal.). Transamerica Corporation, through its subsidiary Transamerica Homefirst, Inc., sold "reverse mortgages" marketed under the trade name "Lifetime." The Lifetime reverse mortgages were sold exclusively to seniors, *i.e.*, persons 65 years or older. Lieff Cabraser, with co-counsel, filed suit on behalf of seniors alleging that the terms of the reverse mortgages were unfair, and that borrowers were misled as to the loan terms, including the existence and amount of certain charges and fees. In 2003, the Court granted final approval to an $8 million settlement of the action.

10.  *Fischl v. Direct Merchants Credit Card Bank, N.A. , Metris Companies and Metris Direct*, No. CT 00-007129 (Hennepin County District Ct., Minn.). Lieff Cabraser served as Plaintiffs' Co-Counsel in a national consumer class action filed on behalf of millions of Direct Merchants' credit cardholders who allege that defendants engaged in unfair, deceptive and misleading practices and violated state consumer protection statutes in connection with the sale and marketing of their credit cards and fee based services and products. In 2002, the Court granted final approval to a settlement that requires defendants to modify or cease certain business practices; offer certain free products, services or benefits to former cardholders or ServiceEdge members who are not current cardholders; and offer participation in a Customer Satisfaction Guarantee Program to current cardholders, in which current cardholders may resolve the complaints, including for monetary credits in an amount between $10.00 and $70.00.

11.  *In re American Family Enterprises*, MDL No. 1235 (D. N.J.). Lieff Cabraser served as co-lead counsel for a nationwide class of persons who received any sweepstakes materials sent under the name "American Family Publishers." The class action lawsuit alleged that defendants deceived consumers into purchasing magazine subscriptions and merchandise in the belief that such purchases were necessary to win an American Family Publishers' sweepstakes prize or enhanced their chances of winning a sweepstakes prize. In September 2000, the Court granted final approval of a $33 million settlement of the class action. In April 2001, over 63,000 class members received refunds averaging over $500 each, representing 92% of their eligible purchases. In addition, American Family Publishers agreed to make significant changes to the way it conducts the sweepstakes.

12.     *In re Sears Automotive Center Consumer Litigation*, Civ. No. C-92-2227 RHS (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Co-Lead Counsel for a certified nationwide class of Sears auto center customers for purposes of approval of a combined injunctive relief/refund settlement. As part of the settlement, Sears distributed to class members merchandise coupons valued at $25 million.

13.     *Roberts v. Bausch & Lomb*, Civ. No. 94-C-1144-W (N.D. Ala.). Lieff Cabraser was designated as one of several Class Counsel in November 1994 in this nationwide consumer fraud class action involving deceptive marketing of contact lenses. In 1996, the Court approved a settlement valued at $68 million ($34 million cash and $34 million in eye care products).

14.     *In re Miracle Ear Consumer Litigation*, Civ. No. 94-1696 (4th Jud. Dist. Minn.). Lieff Cabraser served as Co-Lead Class Counsel in a nationwide class action certified in late 1994 involving claims arising from misrepresentations regarding performance of a hearing aid device. State courts in Minnesota and Alabama granted final approval to the nationwide settlement.

E.     **Non-Personal Injury Defective Products**

1.     *Behr Wood Sealant Cases*, JCCP Nos. 4132 & 4138 (San Joaquin County Superior Ct., Cal.). With co-counsel, Lieff Cabraser represents homeowners and other consumers that purchased and applied the Behr wood sealant products Super Liquid Raw-Hide or Natural Seal Plus to exterior wood surfaces within the United States since January 1, 1991. In May 2003, the Hon. Carter P. Holly granted final approval to a $107.5 million settlement to provide compensation for mildew damage to wood surfaces that Class members incurred.

2.     *Richison v. American Cemwood Corp.*, No. 005532 (San Joaquin Superior Ct., Cal.). Lieff Cabraser served as Co-lead Class Counsel for an estimated nationwide class of 30,000 owners of homes and other structures on which defective Cemwood Shakes were installed. In November 2003, the Court granted final approval to a $75 million Phase 2 settlement in the American Cemwood roofing shakes national class action litigation. This amount was in addition to a $65 million partial settlement approved by the Court in May 2000, and brought the litigation to a conclusion. The claims period runs through 2015.

3.     *Williams v. Weyerhaeuser*, No. 995787 (San Francisco Superior Ct.). Lieff Cabraser served as Class Counsel on behalf of a nationwide class of hundreds of thousands or millions of owners of homes and other structures with defective Weyerhaeuser hardboard siding. A California-wide class was certified for all purposes in February 1999, and withstood writ review

by both the California Court of Appeal and Supreme Court of California. In 2000, the Court granted final approval to a nationwide settlement of the case which provides class members with compensation for their damaged siding, based on the cost of replacing or, in some instances, repairing, damaged siding. The settlement has no cap, and requires Weyerhaeuser to pay all timely, qualified claims over a nine year period. The claims program is underway and paying claims.

4.    ***Foothill/DeAnza Community College District v. Northwest Pipe Company***, No. C-00-20749 (N.D. Cal.). In June 2004, the court approved the creation of a settlement fund of up to $14.5 million for property owners nationwide with Poz-Lok fire sprinkler piping that fails. Since 1990, Poz-Lok pipes and pipe fittings were sold in the U.S. as part of fire suppression systems for use in residential and commercial buildings. After leaks in Poz-Lok pipes caused damage to its DeAnza Campus Center building, Foothill/DeAnza Community College District in California retained Lieff Cabraser to file a class action lawsuit against the manufacturers of Poz-Lok. The college district charged that Poz-Lok pipe had manufacturing and design defects that resulted in the premature corrosion and failure of the product. Under the settlement, owners whose Poz-Lok pipes are leaking today, or over the next 15 years, may file a claim for compensation.

5.    ***Toshiba Laptop Screen Flicker Settlement.*** Lieff Cabraser negotiated a settlement with Toshiba America Information Systems, Inc. ("TAIS") to provide relief for owners of certain Toshiba Satellite 1800 Series, Satellite Pro 4600 and Tecra 8100 personal notebook computers whose screens flickered, dimmed or went blank due to an issue with the FL Inverter Board component. Under the terms of the Settlement, owners of affected computers who paid to have the FL Inverter issue repaired by either TAIS or an authorized TAIS service provider may recover the cost of that repair, up to $300 for the Satellite 1800 Series and the Satellite Pro 4600 personal computers, or $400 for the Tecra 8100 personal computers. The claim program is open until May 6, 2005, when all claims must be postmarked. TAIS also agreed to extend the affected computers' warranties for the FL Inverter issue by 18 months, until May 4, 2006.

6.    ***ABS Pipe Litigation***, JCCP No. 3126 (Contra Costa County Superior Ct., Cal.). Lieff Cabraser served as Lead Class Counsel on behalf of property owners whose ABS plumbing pipe was allegedly defective and caused property damage by leaking. Six separate class actions were filed in California against five different ABS pipe manufacturers, numerous developers of homes containing the ABS pipe, as well as the resin supplier and the entity charged with ensuring the integrity of the product. Between 1998 and 2001, we achieved 12 separate settlements in the class actions and related individual lawsuits for approximately $78 million.

Commenting on the work of Lieff Cabraser and co-counsel in the case, California Superior Court (now appellate) Judge Mark B. Simons stated on May 14, 1998: "The attorneys who were involved in the resolution of the case certainly entered the case with impressive reputations and did nothing in the course of their work on this case to diminish these reputations, but underlined, in my opinion, how well deserved those reputations are."

7.    *McManus, et al. v. Fleetwood Enterprises, Inc.*, NO. SA-99-CA-464-FB (W.D. Tex.). Lieff Cabraser served as Class Counsel on behalf of original owners of 1994-2000 model year Fleetwood Class A and Class C motor homes. In 2003, the Court approved a settlement that resolved lawsuits pending in Texas and California about braking while towing with 1994 Fleetwood Class A and Class C motor homes. The lawsuits alleged that Fleetwood misrepresented the towing capabilities of new motor homes it sold, and claimed that Fleetwood should have told buyers that a supplemental braking system is needed to stop safely while towing heavy items, such as a vehicle or trailer. The settlement paid $250 to people who bought a supplemental braking system for Fleetwood motor homes that they bought new.

8.    *Cox v. Shell*, No. 18,844 (Obion County Chancery Ct., Tenn.). Lieff Cabraser served as Class Counsel on behalf of a nationwide class of approximately 6 million owners of property equipped with defective polybutylene plumbing systems and yard service lines. In November 1995, the Court approved a settlement involving an initial commitment by Defendants of $950 million in compensation for past and future expenses incurred as a result of pipe leaks, and to provide replacement pipes to eligible claimants. The settlement claims program will continue past 2010, under the continuing supervision of the trial court.

9.    *Naef v. Masonite*, No. CV-94-4033 (Mobile County Circuit Ct., Ala.). Lieff Cabraser Heimann & Bernstein served as Class Counsel on behalf of a nationwide Class of an estimated 4 million homeowners with allegedly defective hardboard siding manufactured and sold by Masonite Corporation, a subsidiary of International Paper, on their homes. The Class was certified in November 1995, and the Alabama Supreme Court twice denied extraordinary writs seeking to decertify the Class, including in *Ex Parte Masonite*, 681 So. 2d 1068 (Ala. 1996). A month-long jury trial in 1996 established the factual predicate that Masonite hardboard siding was defective under the laws of most states. The case settled on the eve of a second Class-wide trial, and in January 1998, the Court approved a Class Settlement. Under the Settlement, Class members with failing Masonite hardboard siding installed and incorporated in their property between January 1, 1980 and January 15, 1998 can make claims over a multi-year claims program and have their homes evaluated by independent inspectors. Class members with qualifying damage to their siding recover

damages associated with the siding. To date, the Settlement has paid out over $584 million to homeowners across the country, and claims continue to be made and paid.

10. ***In re Louisiana-Pacific Inner-Seal Siding Litigation***, No. C-95-879-JO (D. Or.). Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide class of homeowners with defective exterior siding on their homes. Plaintiffs asserted claims for breach of warranty, fraud, negligence, and violation of consumer protection statutes. On April 26, 1996, U.S. District Judge Robert E. Jones entered an Order, Final Judgment and Decree granting final approval to a nationwide settlement requiring Louisiana-Pacific to provide funding up to $475 million to pay for inspection of homes and repair and replacement of failing siding over the next seven years.

11. ***In re Intel Pentium Processor Litigation***, No. CV 745729 (Santa Clara Superior Ct., Cal.). Lieff Cabraser served as one of two court appointed Co-Lead Class Counsel, and negotiated a settlement, approved by the Court in June 1995, involving both injunctive relief and damages having an economic value of approximately $1 billion. The chip replacement program has been implemented, and is ongoing.

12. ***Gross v. Mobil***, No. C 95-1237-SI (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Class Counsel in this nationwide action involving an estimated 2,500 aircraft engine owners whose engines were affected by Mobil AV-1, an aircraft engine oil. Plaintiffs alleged claims for strict liability, negligence, misrepresentation, violation of consumer protection statutes, and for injunctive relief. Plaintiffs obtained a preliminary injunction requiring Defendant Mobil Corporation to provide notice to all potential class members of the risks associated with past use of Defendants' aircraft engine oil. In addition, Plaintiffs negotiated a proposed Settlement, granted final approval by the Court in November 1995, valued at over $12.5 million, under which all Class Members were eligible to participate in an engine inspection and repair program, and receive compensation for past repairs and for the loss of use of their aircraft associated with damage caused by Mobil AV-1.

13. ***In re General Motors Corp. Pick-Up Fuel Tank Products Liability Litigation***, MDL No. 961. Lieff Cabraser served as court-appointed Co-Lead Counsel representing a class of 4.7 million plaintiffs who owned 1973-1987 GM C/K pickup trucks with allegedly defective gas tanks. The Consolidated Complaint asserted claims under the Lanham Act, the Magnuson-Moss Act, state consumer protection statutes, and common law. In 1995, the Third Circuit vacated the District Court settlement approval order and remanded the matter to the District Court for further proceedings. In July 1996, a new nationwide class action was certified for purposes of an enhanced settlement program valued at a minimum of

$600 million, plus funding for independent fuel system safety research projects. Final approval was granted in November 1996.

14. ***Hanlon v. Chrysler Corp.***, No. C-95-2010-CAL (N.D. Cal.). In 1995, the district court approved a $200+ million settlement enforcing Chrysler's comprehensive minivan rear latch replacement program, and to correct alleged safety problems with Chrysler's pre-1995 designs. As part of the settlement, Chrysler agreed to replace the rear latches with redesigned latches. The settlement was affirmed on appeal by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998).

F.    **Antitrust/Trade Regulation/Intellectual Property**

1. ***Natural Gas Antitrust Cases***, J.C.C.P Nos. 4221, 4224, 4226 & 4228 (Cal. Supr. Ct.). In a landmark victory for California consumers and businesses, the Court approved a $1.5 billion settlement in December 2003 of class action litigation against El Paso Natural Gas Co. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel for residential and business consumers of natural gas. Plaintiffs charged that during the California energy crisis in 2000-2001, El Paso manipulated the market for natural gas pipeline transmission capacity into California to enable its energy trading subsidiary to acquire the capacity, and then used the capacity to drive up natural gas prices on the spot market.

2. ***Microsoft Private Antitrust Litigation***. Lieff Cabraser is prosecuting cases on behalf of businesses and consumers against Microsoft Corporation in various state courts across the country, including Florida, New York, North Carolina, and Tennessee. Plaintiffs allege that Microsoft engaged in anticompetitive conduct and/or violated state deceptive and unfair business practices statutes to harm competition and monopolize the markets for Intel-compatible, personal computer operating system software, as well as word processing and spreadsheet software. In November 2003, in the Florida Microsoft litigation, the Court granted final approval to a $202 million settlement, one of the largest antitrust settlements in Florida history. In June 2004, the Court in the Tennessee action granted final approval to a $64 million settlement. In August 2004, the Court in the North Carolina action granted final approval to a settlement valued at over $89 million.

3. ***Azizian v. Federated Department Stores, 3:03 CV 03359 SBA (N.D. Cal.)***. Lieff Cabraser and its co-counsel are prosecuting a national class action on behalf of consumers of department store cosmetics. The suit alleges that various manufacturers and retailers of department store cosmetics engaged in anticompetitive practices to prevent discounting. The Court has preliminarily approved a settlement valued at $175 million.

4.     *In re Buspirone Antitrust Litigation*, MDL No. 1413.  In November 2003, Lieff Cabraser obtained a $90 million cash settlement for individual consumers, consumer organizations, and third party payors that purchased BuSpar, a drug prescribed to alleviate symptoms of anxiety.  Plaintiffs alleged that Bristol-Myers Squibb Co. (BMS), Danbury Pharmacal, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. entered into an unlawful agreement in restraint of trade under which BMS paid a potential generic manufacturer of BuSpar to drop its challenge to BMS' patent and refrain from entering the market.  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

5.     *Ciprofloxacin Federal and State Antitrust Litigation*, MDL No. 1383 (E.D.N.Y.), Lieff Cabraser serves as Co-Lead Counsel for consumers who purchased Cipro, the top selling antibiotic in the world.  Plaintiffs allege that Bayer Corporation, Barr Laboratories, two other generic drug companies, and other defendants entered into an unlawful agreement to keep a generic version of the drug off the market that allowed Bayer to sell Cipro at inflated prices.  Lieff Cabraser also represents purchasers of Cipro in a class action lawsuit filed in California state court.  In July 2004, the California Court of Appeal upheld the trial court's grant of class certification of an antitrust and unfair competition action against defendants.

6.     *In Re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430. Lieff Cabraser serves as Co-Lead Counsel for patients prescribed Lupron, a prescription drug used to treat prostate cancer.  Plaintiffs charge that the manufacturers of Lupron, Abbott Laboratories, Takeda Chemical Industries and TAP Pharmaceuticals, conspired to overstate the drug's average wholesale price ("AWP").  The AWP is the rate upon which Medicare bases the reimbursement and co-payment.  As a result, the Medicare program and Medicare patients paid artificially inflated prices for Lupron.  Plaintiffs also allege that Defendants provided physicians with free samples of Lupron, while instructing physicians to bill the Medicare program and patients for the fee samples.  In November 2003, the court denied the majority of defendants' arguments raised in support of their motion to dismiss the lawsuit.  Lieff Cabraser also serves as counsel in an action against TAP and other companies in Illinois State Court.  In October 2003, the Illinois Appellate Court upheld an order certifying a nationwide class of consumers against TAP based on claims for unjust enrichment and violation of the Illinois Consumer Fraud Act.  The private litigation seeks to obtain a recovery for Medicare and non-Medicare patients that paid inflated, out of pocket costs for Lupron.

7.     *California Vitamin Cases*, JCCP No. 4076 (San Francisco Superior Ct.). Lieff Cabraser served as Co-Liaison Counsel and Co-Chairman of the Plaintiffs' Executive Committee on behalf of a class of California indirect vitamin purchasers in every level of the chain of distribution.  In January

2002, the Court granted final approval of a $96 million settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins.

8.    ***Pharmaceutical Cases I, II, and III***, JCCP Nos. 2969, 2971, and 2972 (San Francisco County Ct.).  Lieff Cabraser served as Co-Lead and Co-Liaison Counsel representing a certified class of indirect purchasers (consumers) on claims against the major pharmaceutical manufacturers for violations of the Cartwright Act and the Unfair Competition Act.  The class alleged that defendants unlawfully fixed discriminatory prices on prescription drugs to retail pharmacists in comparison with the prices charged to certain favored purchasers, including HMOs and mail order houses.  In April 1999, the Court approved a settlement providing $148 million in free, brand-name prescription drugs to health agencies that serve California's poor and uninsured.  In October 2001, the Court approved a settlement with the remaining defendants in the case, which provided an additional $23 million in free, brand-name prescription drugs to these agencies.

9.    ***In re Nifedipine Antitrust Litigation***, MDL No. 1515 (D.D.C.).  Lieff Cabraser serves as Co-Lead Counsel for class of consumers who purchased the drug Adalat, also known as Nifedipine.  Plaintiffs allege that two generic manufacturers of Adalat entered into an agreement to allocate the dosages markets for generic Adalat, thereby substantially reducing competition and unlawfully inflating prices on both generic and brand-name Adalat, in violation of the Sherman Act.

10.   ***In re Electrical Carbon Products Antitrust Litigation***, MDL No. 1514 (D.N.J.).  Lieff Cabraser represents the City and County of San Francisco and a class of direct purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Sherman Act.

11.   ***Electrical Carbon Products Cases***, J.C.C.P. No. 4294 (San Francisco Superior Court).  Lieff Cabraser represents the City and County of San Francisco and a class of indirect purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Cartwright Act and the Unfair Competition Law.  Lieff Cabraser also represents the People of the State of California in claims arising from the Unfair Competition Law.

12.   ***In re Compact Disc Antitrust Litigation***, MDL No. 1216 (C.D. Cal.).  Lieff Cabraser serves as Co-Lead Counsel for the direct purchasers of compact discs on claims that the producers fixed the price of CDs in violation of the federal antitrust laws.

13.  *In re Carpet Antitrust Litigation*, MDL No. 1075 (N.D. Ga.). Lieff
     Cabraser served as Class Counsel and a member of the trial team for a
     class of direct purchasers of twenty-ounce level loop polypropylene
     carpet. Plaintiffs, distributors of polypropylene carpet, alleged that
     Defendants, seven manufacturers of polypropylene carpet, conspired to fix
     the prices of polypropylene carpet by agreeing to eliminate discounts and
     charge inflated prices on the carpet. In 2001, the Court approved a $50
     million settlement of the case.

14.  *In re Lasik/PRK Antitrust Litigation*, No. CV 772894 (Santa Clara
     Superior Ct., Cal.). Lieff Cabraser served as a member of Plaintiffs'
     Executive Committee in class actions brought on behalf of persons who
     underwent Lasik/PRK eye surgery. Plaintiffs alleged that defendants, the
     manufacturers of the laser system used for the laser vision correction
     surgery, manipulated fees charged to ophthalmologists and others who
     performed the surgery, and that the overcharges were passed onto
     consumers who paid for laser vision correction surgery. In December
     2001, the Court approved a $12.5 million settlement of the litigation.

15.  *In re Toys 'R' Us Antitrust Litigation*, MDL No. 1211 (E.D.N.Y.). Lieff
     Cabraser served as Co-Lead Counsel representing a class of direct
     purchasers (consumers) who alleged that Toys 'R' Us conspired with the
     major toy manufacturers to boycott certain discount retailers in order to
     restrict competition and inflate toy prices. In February 2000, the Court
     approved a settlement of cash and product of over $56 million.

16.  *In re Travel Agency Commission Antitrust Litigation*, MDL No. 1058
     (D. Minn.). Lieff Cabraser served as Co-Lead Counsel for a certified class
     of U.S. travel agents on claims against the major U.S. air carriers, who
     allegedly violated the federal antitrust laws by fixing the commissions
     paid to travel agents. In 1997, the Court approved an $82 million
     settlement.

17.  *Sanitary Paper Cases I & II*, JCCP Nos. 4019 and 4027 (San Francisco
     Superior Ct.). Lieff Cabraser served as Liaison Counsel on behalf of
     indirect purchasers of commercial paper products. Plaintiffs alleged that
     from 1993 to 2000 Defendants fixed the price of commercial tissue, toilet
     paper, toilet seat covers, and other commercial paper products in violation
     of the Cartwright Act and Unfair Competition Act. In February 2001, the
     Court approved a $3 million settlement of the case.

18.  *Schwartz v. National Football League*, No. 97-CV-5184 (E.D. Pa.). Lieff
     Cabraser served as counsel for individuals who purchased the "NFL
     Sunday Ticket" package of private satellite transmissions in litigation
     against the National Football League for allegedly violating the Sherman
     Act by limiting the distribution of television broadcasts of NFL games by
     satellite transmission to one package. In August 2001, the Court approved

of a class action settlement that included: (1) the requirement that defendants provide an additional weekly satellite television package known as Single Sunday Ticket for the 2001 NFL football season, under certain circumstances for one more season, and at the defendants' discretion thereafter; (2) a $7.5 million settlement fund to be distributed to class members; (3) merchandise coupons entitling class members to discounts at the NFL's Internet store which the parties value at approximately $3 million; and (4) $2.3 million to pay for administering the settlement fund and notifying class members.

19.    *In re Commercial Explosives Antitrust Litigation*, MDL No. 1093 (D. Utah). Lieff Cabraser served as Class Counsel on behalf of direct purchasers of explosives used in mining operations. In 1998, the Court approved a $77 million settlement of the litigation.

20.    *In re California Indirect-Purchaser X-Ray Antitrust Litigation*, No. 960886 (San Francisco Superior Ct.). Lieff Cabraser served as Class Counsel on behalf of indirect purchasers (consumers) of medical x-ray film who alleged violations of the Cartwright and Unfair Competition Acts. In 1998, the Court approved a $3.75 million settlement of the litigation.

21.    *In re Brand Name Prescription Drugs*, MDL No. 997 (N.D. Ill.). Lieff Cabraser served as Class Counsel for a class of tens of thousands of retail pharmacies against the leading pharmaceutical manufacturers and wholesalers of brand name prescription drugs for alleged price-fixing from 1989 to 1995 in violation of the federal antitrust laws. Class Plaintiffs charged that defendants engaged in price discrimination against retail pharmacies by denying them discounts provided to hospitals, health maintenance organizations, and nursing homes. In 1996 and 1998, the Court approved settlements with certain manufacturers totaling $723 million.

22.    *In re K-Dur Prescription Drug Antitrust Litigation*, MDL No. 1419. Lieff Cabraser serves as Class Counsel on behalf of indirect purchasers of K-Dur, a potassium supplement often prescribed in conjunction with high blood pressure medication. K-Dur is the fourth most frequently prescribed drug to seniors. The complaint alleges the defendants illegally agreed not to compete in the sale of K-Dur which prevented any generic version of K-Dur from coming onto the market.

23.    *In re Flat Glass Antitrust Litigation*, MDL 1200 (W.D. Pa.). Lieff Cabraser serves as Class Counsel on behalf of a class of direct purchasers of flat glass.

24.    *In re Linerboard Antitrust Litigation*, MDL 1261 (E.D. Pa.). Lieff Cabraser serves as Class Counsel on behalf of a class of direct purchasers

of linerboard. The court recently approved a settlement totaling $202 million.

25. ***In re High Pressure Laminates Antitrust Litigation***, MDL No. 1368 (S.D.N.Y.). Lieff Cabraser serves as Trial Counsel on behalf of a class of direct purchasers of high pressure laminates.

26. ***Bromine Cases***, J.C.C.P. No. 4108. Lieff Cabraser serves a Lead Counsel on behalf of indirect purchasers of bromine, a chemical used as a fire-retardant. Lieff Cabraser was chosen by the court as the most qualified candidate of all firms that submitted sealed bids.

27. ***Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.***, No. CV-99-07796 (C.D. Cal.). In August, 1999, Lieff Cabraser and its co-counsel filed a class action lawsuit on behalf of direct purchasers of carbon fiber. The suit alleges that the major United States manufacturers and distributors of carbon fiber conspired to raise, fix, and maintain artificially high prices of carbon fiber in violation of the federal Sherman Antitrust Act.

28. ***Methionine Cases I and II***, JCCP Nos. 4090 and 4096 (Stanislaus County Superior Ct., Cal.). Lieff Cabraser serves as Co-Lead Counsel on behalf of indirect purchasers of methionine, an amino acid used primarily as a poultry and swine feed additive to enhance growth and production. Plaintiffs allege that the companies illegally conspired to raise methionine prices to super-competitive levels. The case has settled.

29. ***Wholesale Electricity Antitrust Cases I & II***, J.C.C.P. Nos. 4204 & 4205 (San Diego Superior Ct). Lieff Cabraser and its Co-Counsel were retained by businesses to prosecute claims on behalf of indirect purchasers of wholesale electricity sold in California. The complaint alleges that the wholesale providers of electricity conspired to sell electricity at artificially-inflated prices. Lieff Cabraser recently was successful in obtaining an order remanding the case to the Superior Court, but that order is pending appeal. Lieff Cabraser on behalf of the class settled for over $100 million the claims with The Williams Companies.

30. ***Sample v. Monsanto***, No. 4:01CV65RSW (E.D. Mo.). Lieff Cabraser serves as Co-Lead Counsel in a class action lawsuit against Monsanto Company and others alleging that a conspiracy to fix prices on genetically modified Roundup Ready soybean seeds and Yieldgard corn seeds. The District Court's ruling on class certification is presently on appeal to the Eighth Circuit Court of Appeals.

31. ***Tortola Restaurants, L.P. v. Minnesota Mining and Manufacturing***, No. 314281 (San Francisco Superior Ct). Lieff Cabraser serves as Co-Lead Counsel on behalf of indirect purchasers of Scotch-brand invisible

and transparent tape. Plaintiffs allege that defendant 3M conspired with certain retailers to monopolize the sale of Scotch-brand tape in California.

32. ***Brennan, et al. v. Concord EFS, et al.***, No. 3:04-cv-02676-VRW (N.D. Cal.). Lieff Cabraser represents a putative class of ATM users against a number of banks comprising the Star ATM Network, alleging that those banks conspired to fix the price of ATM interchange fees, thereby unlawfully inflating fees paid by ATM users in the network.

## G.    Environmental and Toxic Exposures

1. ***In re Unocal Refinery Litigation***, No. C 94-04141 (Contra Costa Superior Ct., Cal.). Lieff Cabraser served as one of two Co-Lead Class Counsel and on the Plaintiffs' Steering Committee in this action against Union Oil Company of California ("Unocal") arising from a series of toxic releases from Unocal's San Francisco refinery in Rodeo, California. The action was settled in 1997 on behalf of approximately 10,000 individuals for $80 million.

2. ***Kentucky Coal Sludge Litigation.*** On October 11, 2000, near Inez, Kentucky, a coal waste storage facility ruptured, spilling 300 million gallons of coal sludge (a wet mixture produced by the treatment and cleaning of coal) into waterways in the region and contaminating hundreds of properties. This was one of the worst environmental disasters in the Southeastern United States. With co-counsel, Lieff Cabraser represented over 400 clients in property damage claims, including claims for diminution in the value of their homes and properties. In April 2003, the parties reached a confidential settlement agreement on favorable terms to the plaintiffs.

3. ***Toms River Childhood Cancer Incidents***. With co-counsel, Lieff Cabraser represented 69 families in Toms River, New Jersey, each with a child having cancer, that claimed the cancers were caused by environmental contamination in the Toms River area. Commencing in 1998, the parties – the 69 families, Ciba Specialty Chemicals, Union Carbide and United Water Resources, Inc., a water distributor in the area – participated in an unique alternative dispute resolution process, which lead to a fair and efficient consideration of the factual and scientific issues in the matter. In December 2001, under the supervision of a mediator, a confidential settlement favorable to the families was reached.

4. ***In re Exxon Valdez Oil Spill Litigation*** (District of Alaska/Alaska Sup. Ct.). The Exxon Valdez ran aground in March of 1989, spilling 11 million gallons of oil into Prince William Sound. Lieff Cabraser served as one of the court-appointed Plaintiffs' Class Counsel. The class consisted of 32,000 fisherman, Alaska natives, landowners and others whose livelihoods were gravely affected by the disaster. In addition, Lieff served

on the Class Trial Team in 1994. A class action jury trial was held in federal court in 1994. That jury awarded $5 billion in punitive damages to the plaintiff class. The punitive damages award has been on repeated appeal by the Exxon Corporation ever since. In 2001, the Ninth Circuit Court of Appeals ruled that the original $5 billion punitive damages verdict was excessive. In 2002, U.S. District Court Judge H. Russell Holland reinstated the award at $4 billion. Judge Holland stated that, "Exxon officials knew that carrying huge volumes of crude oil through Prince William sound was a dangerous business, yet they knowingly permitted a relapsed alcoholic to direct the operation of the Exxon Valdez through Prince William Sound." In 2003, the Ninth Circuit again directed Judge Holland to reconsider the punitive damages award under United States Supreme Court punitive damages guidelines. In January 2004, Judge Holland issued his order finding that recent Supreme Court decisions did not change the court's earlier analysis. The court specifically found that a punitive damages award of $4.5 billion plus $2.25 billion in interest was in accordance with Supreme Court authority. Exxon has again filed an appeal of the punitive damages award. To date, the plaintiffs and victims of the Exxon Valdez disaster have waited over 15 years for the resolution of their case.

5.  *West v. G&H Seed Co., Aventis CropSciences USA, LLP, et al.*, No. 99-C-4984-A (La. State Ct). With co-counsel, Lieff Cabraser represented a class of 1,500 Louisiana crawfish farmers. The farmers sued Bayer CropScience LP claiming the pesticide ICON killed their crawfish and caused economic ruin. In 2004, the Court granted approved a $45 million settlement. The settlement was reached after the parties had presented nearly a month's worth of evidence at trial, and were on the verge of making closing arguments to the jury.

6.  *Craft v. Vanderbilt University*, Civ. No. 3-94-0090 (M.D. Tenn.). Lieff Cabraser served as Lead Counsel of a certified class of over 800 pregnant women and their children who were intentionally fed radioactive iron without their consent while receiving prenatal care at defendant Vanderbilt's hospital in the 1940's. The facts surrounding the administration of radioactive iron to the pregnant women and their children *in utero* came to light as a result of Energy Secretary Hazel O'Leary's 1993 disclosures of government sponsored human radiation experimentation during the Cold War. Defendants' attempts to dismiss the claims and decertify the class were unsuccessful. The case was settled in July 1998 for a total of $10.3 million and a formal apology from Vanderbilt.

7.  *In re GCC Richmond Works Cases*, JCCP No. 2906. Lieff Cabraser served as Co-Liaison Counsel and Lead Class Counsel in coordinated litigation arising out of the release of a massive toxic sulfuric acid cloud which injured an estimated 50,000 residents of Richmond, California on

July 26, 1993. The Coordination Trial Court granted final approval to a $180 million class settlement for exposed residents.

8. ***In re Sacramento River Spill Cases I and II***, JCCP Nos. 2617 and 2620 (San Francisco County Superior Ct.). Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel, Lead Class Counsel, and chaired the Plaintiffs' Litigation Committee in an action arising out of a July 14, 1991 Southern Pacific train derailment and toxic spill near Dunsmuir, California. Settlement proceeds of approximately $16 million were distributed pursuant to Court approval of a plan of allocation to four certified plaintiff classes: personal injury, business loss, property damage/diminution, and evacuation.

## H.    Aviation Law

1. ***Air Algerie Boeing 737 Accident.*** Working with French co-counsel, Lieff Cabraser is assisting in the representation of families of passengers who died on March 6, 2003 in a crash of a Boeing 737 airplane operated by Air Algerie. The aircraft departed the southern Algerian city of Tamanrasset and crashed soon after takeoff, with one of the engines reportedly on fire.

2. ***Aeroflot-Russian International Airlines Airbus Disaster.*** Lieff Cabraser represented the families of passengers who were on Aeroflot-Russian International Airlines Flight SU593 that crashed in Siberia on March 23, 1994. The plane was in route from Moscow to Hong Kong. All passengers on board died. According to a transcript of the cockpit voice record, the pilot's two children entered the cockpit during the flight and took turns flying the plane. The autopilot apparently was inadvertently turned off during this time, and the pilot was unable to remove his son from the captain's seat in time to avert the plane's fatal dive. Lieff Cabraser, alongside French co-counsel, filed suit in France, where Airbus, the plane's manufacturer, was headquartered. All the families Lieff Cabraser represented obtained substantial economic recoveries in settlement of the action.

3. ***United Airlines Boeing 747 Disaster***, MDL No. 807 (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Liaison Counsel on behalf of the passengers and families of passengers injured and killed in the United Airlines Boeing 747 cargo door catastrophe near Honolulu, Hawaii on February 24, 1989. Lieff Cabraser organized the litigation of the case, which included claims brought against United Airlines and Boeing Corporation. Among our work, we developed a statistical system for settling the passengers' and families' damages claims with certain defendants, and coordinated the prosecution of successful individual damages trial for wrongful death against the non-settling defendants.

4.    ***German Air Force Lockheed F-104 Star Fighter Litigation:*** In the late 1960s and extending into the early 1970s, the United States sold F-104 Star Fighter jets to the German Air Force that were manufactured by Lockheed Aircraft Corporation in California. The F-104 Star Fighter was designed for high-altitude fighter combat, but used in Germany and other European countries for low-level bombing and attack missions. Consequently, the aircraft had an extremely high crash rate, with over 300 pilots killed. Commencing in 1971, the law firm of Belli Ashe Ellison Choulos & Lieff filed hundreds of lawsuits for wrongful death and other claims on behalf of the widows and surviving children of the pilots. Robert Lieff continued to prosecute the cases after the formation of our firm. In 1974, the lawsuits were settled with Lockheed on terms favorable to the plaintiffs. This litigation helped establish the principle that citizens of foreign countries could assert claims in United States courts, and obtain substantial recoveries, against an American manufacturer based upon airplane accidents or crashes occurring outside of the United States.

## I.    International and Human Rights Litigation

1.    ***Holocaust Cases***. Lieff Cabraser is one of the leading firms that prosecuted claims by Holocaust survivors and the heirs of Holocaust survivors and victims against banks and private manufacturers and other corporations who enslaved and/or looted the assets of Jews and other minority groups persecuted by the Nazi Regime during the Second World War era. We serve as Settlement Class Counsel in the case against the Swiss banks that the Court approved a U.S. $1.25 billion settlement in July 2000. Lieff Cabraser donated its attorneys' fees in the Swiss Banks case, in the amount of $1.5 million, to endow a Human Rights clinical chair at Columbia University Law School. We were also active in slave labor and property litigation against German and Austrian defendants, and Nazi-era banking litigation against French banks. In connection therewith, Lieff Cabraser participated in multi-national negotiations that led to Executive Agreements establishing an additional approximately U.S. $5 billion in funds for survivors and victims of Nazi persecution. Our website provides links to the websites of settlement and claims administrators in these cases.

Commenting on the work of Lieff Cabraser and co-counsel in the litigation against private German corporations, entitled *In re Holocaust Era German Industry, Bank & Insurance Litigation* (MDL No. 1337), U.S. District Court Judge William G. Bassler stated on November 13, 2002:

> Up until this litigation, as far as I can tell, perhaps with some minor exceptions, the claims of slave and forced labor fell on deaf ears. You can say what you to say about class actions and about attorneys, but

the fact of the matter is, there was no attention to this very, very large group of people by Germany, or by German industry until these cases were filed. . . . What has been accomplished here with the efforts of the plaintiffs' attorneys and defense counsel is quite incredible. . . I want to thank counsel for the assistance in bringing us to where we are today. Cases don't get settled just by litigants. It can only be settled by competent, patient attorneys.

2.    ***Cruz v. U.S., Estados Unidos Mexicanos, Wells Fargo Bank, et al.***, No. 01-0892-CRB (N.D. Cal.).  In April 2001, Lieff Cabraser filed a class action on behalf of contract workers (known as "Braceros") who came from Mexico to the United States pursuant to bilateral agreements from 1942 through 1949 to aid American farms and industries hurt by employee shortages.  The agreements provided that ten percent of the Braceros' wages would be withheld from them and transferred via United States and Mexican banks to savings accounts for each Bracero.  Plaintiffs claim they were never reimbursed for the portion of their wages placed in the forced savings accounts.  On August 28, 2002, U.S. District Court Judge Charles Breyer dismissed the claims against the Mexican government and bank defendants, while granting plaintiffs leave to file an amended complaint against the U.S. government. Judge Breyer nevertheless wrote: " I do not doubt that many Braceros never received savings fund withholdings to which they were entitled." Plaintiffs have filed motions to amend the complaint and for reconsideration in light of intervening Ninth Circuit authority.  These motions will are set for hearing on June 27, 2003.

3.    ***Jae Wong Jeong v. Onoda Cement Co., Ltd.***, No. BC217805 (Los Angeles Superior Ct.).  Lieff Cabraser, along with co-counsel, is prosecuting the claims of Jae Won Jeong, one of thousands of Korean civilians allegedly forced by Japanese companies to perform forced/slave labor during World War II.  On January 15, 2003, the California Court of Appeal upheld the right of Californians to sue corporations that subjected them to forced or slave labor during World War II in California state court. The court rejected the position of the U.S. State Department that the case should be dismissed because it interfered with the President's exclusive power over foreign affairs.   Subsequently, the California Supreme Court granted review, and asked the parties to brief the issues.  No hearing date has been scheduled yet.

**FIRM BIOGRAPHY:**

**PARTNERS**

***ROBERT L. LIEFF***, born Bridgeport, Connecticut, September 29, 1936. Admitted to practice in California, 1966; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1969; U.S. Supreme Court, 1969; U.S. Court of Appeals, Seventh Circuit, 1972; U.S. Tax Court, 1974; U.S. District Court, District of Hawaii, 1986. *Education*: Columbia University (M.B.A., 1962; J.D., 1962); Cornell University; University of Bridgeport (B.A., 1958). Member, Columbia Law School Dean's Council; Member, Columbia Law School Board of Visitors (1992-present); Member, Columbia Law School Center on Corporate Governance Advisory Board (2004). *Member*: Bar Association of San Francisco; State Bar of California (Member: Committee on Rules of Court, 1971-74; Special Committee on Multiple Litigation and Class Actions, 1972-73); American Bar Association (Section on Corporation, Banking and Business Law); Lawyers Club of San Francisco; San Francisco Trial Lawyers Association; California Trial Lawyers Association; Consumer Attorneys of California; Association of Trial Lawyers of America;

***ELIZABETH J. CABRASER***, born Oakland, California, June 23, 1952. Admitted to practice in California, 1978; California and U.S. Supreme Court; U.S. District Court, Northern, Eastern, Central and Southern Districts of California; U.S. Court of Appeals, Second, Third, Fifth, Sixth, Seventh, Ninth, Tenth and Eleventh Circuits and U.S. Tax Court; U.S. District Court, District of Hawaii; U.S. District Court, District of Arizona. *Education*: Boalt Hall School of Law, University of California (J.D., 1978); University of California at Berkeley (A.B., 1975). *Awards and Honors*: "Top 100 Lawyers," *California Daily Journal*, 1998-2004; *Northern California SuperLawyers*, 2004; University of California, Berkeley School of Law Citation Award, 2003; "Top 30 Women Litigators," *California Daily Journal*, 2002; *Distinguished Jurisprudence Award*, Anti-Defamation League, 2002; "Top Ten Women Litigators," *National Law Journal*, 2001; "One Hundred Most Influential Lawyers in America," *National Law Journal*, 2000 and 1997; *Matthew O. Tobriner Public Service Award*, Legal Aid Society, 2000; *Presidential Award of Merit*, Consumer Attorneys of California, 1998; "Fifty Most Influential Women Lawyers," *National Law Journal*, 1998; "Lawyers of the Year," *California Lawyer*, 1998; *Public Justice Achievement Award*, Trial Lawyers for Public Justice, 1997. *Publications*: Editor in Chief, *California Class Actions Practice and Procedures* (2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law*, updated and re-published in 5 *Newberg on Class Actions* (ABA 2001-2004); Co-Author, "Mass But Not (Necessarily) Class: Emerging Aggregation Alternatives Under the Federal Rules," ABA 8th Annual National Institute on Class Actions, New York (Oct. 15, 2004), New Orleans (Oct. 29, 2004); Co-Author, "2004 ABA Toxicology Monograph-California State Law," (January 2004); "Human Rights Violations as Mass Torts: Compensation as a Proxy for Justice in the United States Civil Litigation System"; Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-02); "Unfinished Business: Reaching the Due Process Limits of Punitive Damages in Tobacco Litigation Through Unitary Classwide Adjudication," 36 *Wake Forest Law Review* 979 (Winter 2001); "Symposium: Enforcing the Social Contract through Representative Litigation," 33 *Connecticut Law Review*

1239 (Summer 2001); "Equity for the Victims, Equity for the Transgressor: The Classwide Treatment of Punitive Damages Claims," 74 *Tulane Law Review* 2005 (June 2000); "Class Action Trends and Developments After *Amchem* and *Ortiz*," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 1999); Contributor/Editor, *Moore's Federal Practice* (1999); "Life After *Amchem*: The Class Struggle Continues," 31 *Loyola Law Review* 373 (1998); "Recent Developments in Nationwide Products Liability Litigation: The Phenomenon of Non-Injury Products Cases, the Impact of *Amchem* and the Trend Toward State Court Adjudication," *Products Liability* (ABA February 1998); Contributor/Editor, *California Causes of Action* (1998); "Beyond Bifurcation: Multi-Phase Structure in Mass Tort Class Actions," *Class Actions & Derivative Suits* (Spring 1997); "The Road Not Taken: Thoughts on the Fifth Circuit's Decertification of the *Castano* Class," SB24 ALI-ABA 433 (1996); "Getting the Word Out: Pre-Certification Notice to Class Members Under Rule 23(d)(2)," *Class Actions & Derivative Suits Newsletter* (October 1995); "Mass Tort Class Action Settlements," 24 *CTLA Forum* 11 (Jan./Feb. 1994); "Do You Know the Way from San Jose? The Evolution of Environmental and Toxic Nuisance Class Actions," *Class Actions & Derivative Suits* (Spring 1994); "An *Oracle* of Change? Realizing the Potential of Emerging Fee Award Methodologies for Enhancing The Role and Control of Investors in Derivative and Class Action Suits," *Principles of Corporate Governance* (ALI October 1994); "How To Streamline Complex Litigation: Tailor a Case Management Order to Your Controversy," 21 *The Brief* 12 (ABA/TIPS Summer 1992); "The Applicability of the Fraud-On-The-Market Theory to 'Undeveloped' Markets: When Fraud Creates the Market, 12 *Class Action Reports* 402 (1989); "The Applicability of the Fraud-On-The-Market Theory to 'Undeveloped' Markets: When Fraud Creates the Market," 12 *Class Action Reports* 402 (1989); "Mandatory Certification of Settlement Classes," 10 *Class Action Reports* 151 (1987); Co-author with Fabrice N. Vincent, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author with Fabrice N. Vincent, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002). *Member*: American Law Institute, Council; American Bar Association (Past Co-Chair, Committee on Mass Torts; Committee on Class Actions and Derivative Suits; Tort and Insurance Practice Section (TIPS); Past Vice-Chair, Rules & Procedures Committee, Contributor, Civil Procedure & Evidence News Letter; Business Law Section, Corporate & Litigation Group); Federal Bar Association, Northern District of California Chapter; Bar Association of San Francisco (Past President, Securities Litigation Section; Board of Directors, 1997-1998; Past Member, Judiciary Committee); Advisor, American Law Institute International Jurisdiction and Judgments and Aggregate Litigation Projects; California Constitution Revision Commission, 1993-1996; National Center for State Courts Mass Tort Conference Planning Committee; Northern District of California Civil Justice Reform Act (CJRA) Advisory Committee, and Advisory Committee on Professional Conduct; Lawyer-Delegate, Ninth Circuit Judicial Conference, 1992-1995; Bar Association of San Francisco (Past President, Securities Litigation Section; Board of Directors); American Bar Association (Litigation Section and Committee on Class Actions and Derivative Suits; Co-Chair, Committee on Mass Torts); Consumer Attorneys of California (CAOC); Trial Lawyers for Public Justice (TLPJ); Bar Association of the Fifth Federal Circuit; Association of Trial Lawyers of America (ATLA) (California State Liaison, Women Trial Lawyers Caucus); California Women Lawyers; Lawyers Club of San Francisco;

Queens Bench; Association of Business Trial Lawyers; Bay Area Lawyers for Individual Freedom; ABA National Institute on Class Actions (Organizer/ Participant, 1997-2000).

**RICHARD M. HEIMANN**, born Miami, Florida, August 23, 1948. Admitted to practice in Pennsylvania, 1972; District of Columbia, 1974; California, U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1975; U.S. Supreme Court, 1980; U.S. Court of Appeals, Second Circuit, 1980; U.S. District Court, District of Hawaii, 1986. *Education*: Georgetown University (J.D., 1972); *Georgetown Law Journal*, 1971-72; University of Florida (B.S.B.A., with honors, 1969). *Employment*: Mr. Heimann served as Deputy District Attorney and Acting Assistant District Attorney for Tulare County, California, and as an Assistant Public Defender in Philadelphia, Pennsylvania, 1972-74. As a private civil law attorney, Mr. Heimann has tried over 30 civil jury cases, including complex cases such as the successful *FPI/Agretech* and *Edsaco* securities class action trials. In April 2002 in the *Edsaco* case, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd., which included $165 million in punitive damages. Following the *Edsaco* trial, the parties reached a settlement of the action on favorable monetary terms to the class, which included Edsaco's relinquishment of its right to appeal and the plaintiff's agreement to vacate the jury verdict. *Member*: State Bar of California; Bar Association of San Francisco. *Awards and Honors: Northern California SuperLawyers*, 2004.

**WILLIAM BERNSTEIN**, born York, Pennsylvania, July 5, 1950. Admitted to practice in California, 1975; U.S. Court of Appeals, Ninth Circuit, 1975; New York and U.S. Supreme Court, 1985; U.S. District Court, Central and Eastern Districts of California, 1991; U.S. District Court, Southern District of California, 1992. *Education*: University of San Francisco (J.D. 1975); *San Francisco Law Review*, 1974-75; University of Pennsylvania (B.A., general honors, 1972). *Community Service*: Judge Pro Tem for San Francisco Superior Court, 2000-present; Marin Municipal Court, 1984; Discovery Referee for the Marin Superior Court, 1984-89; Arbitrator for the Superior Court of Marin, 1984-1990. *Publications*: Co-author with Donald C. Arbitblit, "Effective Use of Class Action Procedures in California Toxic Tort Litigation", 3 *Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996). *Member*: State Bar of California; State Bar of New York; Marin County Bar Association (Admin. of Justice Committee, 1988); Bar Association of San Francisco. *Awards and Honors: Northern California SuperLawyers*, 2004.

**JAMES M. FINBERG**, born Baltimore, Maryland, September 6, 1958. Admitted to practice in California, 1984; U.S. District Court, Northern District of California, 1984; U.S. Court of Appeals, Ninth Circuit, 1987; U.S. Court of Appeals, Federal Circuit, 1987; U.S. District Court, Eastern District of California, 1987; U.S. District Court, District of Hawaii, 1988; U.S. District Court, Central District of California, 1992; U.S. District Court, Southern District of California, 1992; U.S. Court of Appeals, Tenth Circuit, 1992; U.S. Supreme Court, 1994; U.S. Court of Appeals, Eleventh Circuit, 1999; U.S. District Court, District of Colorado, 2001; U.S. Third Circuit Court of Appeals, 2001; U.S. District Court, Southern District of Texas, 2003. *Education*: University of Chicago (J.D., 1983); Executive Editor, *University of Chicago Law Review*, 1982-83; Brown University (B.A., 1980). *Employment*: Law Clerk to Justice Charles L. Levin, Michigan Supreme Court, 1983-84. *Publications: Co-Author with Chimène I. Keitner, "New Overtime Regulations Require Heightened Vigilance," *San Francisco Attorney Magazine*,

Spring 2004; Co-Author with Chimène I. Keitner, "Summary of Proposed DOL Regulations Re FLSA Overtime Exemptions" (2003) (American Bar Association – Labor and Employment Law, Federal Labor Standards Legislation Committee Annual Report); Editor, 2000 and 2002 Cumulative Supplements to Chapter 39, "Statistical Proof," *Employment Discrimination Law* (3rd ed., Lindemann and Grossman); Co-Author, "Statistical and Other Expert Proof," *Employment Discrimination Law* (4th ed., Lindemann and Grossman); "Title VII's Remedial Scheme: Employment Discrimination Class Actions at the Crossroads," *San Francisco Attorney* (August/September 2002); "Certification of Employment Discrimination Actions After The Passage of the 1991 Civil Rights Act: (b)(2) or Not (b)(2), That Is The Question*," Class Actions & Derivative Suits,* Vol. 10 (March 2000); Co-Author with Joshua P. Davis, *"Allison v. Citgo Petroleum Corp.-* A Noble Retreat," *Class Actions & Derivative Suits,* Vol. 9, No. 1 (Winter 1999); Co-Author with Kelly Dermody, "Discovery in Employment Discrimination Class Actions," in *Litigation and Settlement of Complex Class Actions* (Glasser Legal Works 1998); Co-Author with Melanie M. Piech, "The Impact of the Private Securities Litigation Reform Act: Unintended Consequences," *Securities Reform Act Litigation Reporter,* Vol. 6, No. 3 (Dec. 1998); Co-Author with Karen Jo Koonan, "The Importance of Anecdotal Testimony to the Jury Trial of a Title VII Class Action: Lessons from *Butler v. Home Depot," Class Actions & Derivative Suits,* Vol. 8, No. 3 (Summer 1998); "Northern District of California Requires Internet Posting of Pleadings And Key Briefs In Securities Actions," *"Securities Reform Act Litigation Reporter"* (1997); "Class Actions: Useful Devices That Promote Judicial Economy And Provide Access to Justice," 41 *New York Law School Law Review* 353 (1997); Co-Author (with Melvin R. Goldman), "Deposing Expert Witnesses" in *Taking Depositions* (ABA) (1989); Co-Author (with George C. Weickhardt), "New Push For Chemical Weapons," *Bulletin of the Atomic Scientist* (Nov. 1986); Comment, "The General Mining Law and The Doctrine of Pedis Possessio: The Case For Congressional Action," 49 *University of Chicago Law Review* 1027 (1982). *Member:* Bar Association of San Francisco (President-elect, 2004; Treasurer, 2003; Secretary, 2002; Board of Directors, 1998-2000; Judicial Evaluation Committee, 1994); Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 1992-98; Co-Chair 1997-98; Finance Chair, 1992-95; Secretary, 1996); Board of Editors, *Securities Litigation Reporter* (Glasser LegalWorks); ACLU of Northern California (Board of Directors, 1994-95); Northern District of California Advisory Committee on Local Rules Under the Securities Litigation Reform Act, 1996-present; American Bar Association (Member, Class Actions and Derivative Suits Committee; Chair, Securities Subcommittee, 1998-2001; Chair, Plaintiff Program, Equal Employment Opportunity Committee, 2000-present); Ninth Circuit Judicial Conference (Lawyer Representative 1998-2000; Co-Chair of Northern District of California Lawyer Representative Delegation, 1999-2000); Ninth Circuit Public Information Outreach Committee (Member, 2001-present); Standing Committee on Legal Services to the Poor of the State Bar of California (1990-94; Vice Chair, 1993-94). *Awards and Honors:* In 2003, he was selected by *The Recorder* legal newspaper (based on a survey of judges, arbitrators, mediators, and lawyers in the field) as the top plaintiffs' securities litigator in the San Francisco Bay Area; *Northern California SuperLawyers,* 2004; "Top San Francisco Employment Lawyers," *The Recorder,* June 2004; 2001-2002 Outstanding Subcommittee Chair for the Class Actions & Derivative Suits of ABA Section of Litigation.

**JOSEPH R. SAVERI,** born San Francisco, California, August 18, 1962. Admitted to practice in California, 1987; U.S. District Court, Northern District of California; U.S. District

Court, Central District of California; U.S. District Court, Southern District of California; U.S. Court of Appeals, Seventh Circuit; U.S. Court of Appeals, Eighth Circuit; U.S. Court of Appeals, Ninth Circuit; U.S. Court of Appeals, First Circuit. *Education*: University of Virginia (J.D., 1987); University of California at Berkeley (B.A., 1984). *Publications and Presentations*: Panelist, "Soaring Prices for Prescription Drugs: Just Rewards for Innovations or Antitrust Violations?", University of San Francisco Law Review (November 13, 2004); California Antitrust & Unfair Competition Law 3d (Antitrust and Unfair Competition Law Section of the State Bar of California 2003); Panelist, Fordham Conference on Electronic Discovery, Discovery Subcommittee of Advisory Committee on the Rules of Civil Procedure; Contributing Author, *California Class Actions Practice and Procedure (*Elizabeth J. Cabraser editor in chief, 2003); "RICO Update," 22 *Review of Securities and Commodities Regulation*, No. 18 (Oct. 25, 1989). *Member*: Bar Association of San Francisco; State Bar of California; Italian American Bar Association; Lawyers Club of San Francisco.

**DONALD C. ARBITBLIT**, born Jersey City, New Jersey, May 5, 1951. Admitted to practice in Vermont, 1979; California and U.S. District Court, Northern District of California, 1986. *Education*: Boalt Hall School of Law, University of California (J.D., 1979); Order of the Coif; Tufts University (B.S., *magna cum laude*, 1974). *Publications*: "Comment on Joiner: Decision on the Daubert Test of Admissibility of Expert Testimony," 6 *Mealey's Emerging Toxic Torts*, No. 18 (December 1997); Co-author with William Bernstein, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," 3 *Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996); "The Plight of American Citizens Injured by Transboundary River Pollution," 8 *Ecology Law Quarterly*, No. 2 (1979). *Appointments*: Member of the Federal Court-appointed Science and Expert Witness Committees in *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), *In re Baycol Products Litigation*, MDL No. 1431 (D. Minn.) and *Rezulin Products Liability Litigation*, MDL No. 1348 (S.D. N.Y.). *Member*: Bar Association of San Francisco; State Bar of California. *Awards and Honors: Northern California SuperLawyers*, 2004.

**STEVEN E. FINEMAN,** born Los Angeles, California, February 13, 1963. Managing Partner. Admitted to practice in California, 1989; U.S. District Court, Northern, Eastern and Central Districts of California and U.S. Court of Appeals, Ninth Circuit, 1995; U.S. Court of Appeals, Fifth Circuit, 1996; New York, U.S. District Court, Eastern and Southern Districts of New York, U.S. Court of Appeals, Second Circuit and U.S. Supreme Court, 1997; District of Columbia, 1997. *Education*: University of California, Hastings College of the Law (J.D., 1988); University of California, San Diego (B.A., 1985); Stirling University, Scotland (English Literature and Political Science, 1983-84). *Honors/Appointments*: "40 under 40", *National Law Journal*, 2002, recognized as one of the nation's most successful young litigators; Board of Directors, Trial Lawyers for Public Justice (July 2002-present); Board of Trustees, Civil Justice Foundation (January 2004-present); Board of Directors, New York State Trial Lawyers Association (July 2001-July 2004); Lexis/Nexis – Mealey's Toxic Tort Advisory Council (January 2002-present). *Publications/Presentations*: Stanford University Law School, The Stanford Center on Conflict and Negotiation, Interdisciplinary Seminar on Conflict and Dispute Resolution, Guest Lecturer, *In Search of "Global Settlements": Resolving Class Actions and Mass Torts with Finality* (March 16, 2004, Stanford, California); Lexis/Nexis, Mealey's Publications and Conferences Group, Wall Street Forum: Mass Tort Litigation, Co-Chair of

Event (July 15, 2003, New York, New York); Northstar Conferences, The Class Action Litigation Summit, Panel Member on Class Actions in the Securities Industry, and Paper, *Practical Considerations for Investors' Counsel - Getting the Case* (June 27, 2003, Washington, D.C.); The Manhattan Institute, Center for Legal Policy, Forum Commentator on Presentation by John H. Beisner, "Magnet Courts: If You Build Them, Claims Will Come" (April 22, 2003, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's Courses on Complex Litigation ("Selecting The Forum For a Complex Case -- Strategic Choices Between Federal And State Jurisdictions") and Alternative Dispute Resolution ("ADR In Mass Tort Litigation") (March 4, 2003, Stanford, California); American Bar Association, Tort and Insurance Practice Section, Emerging Issues Committee, Member of Focus Group on Emerging Issues in Tort and Insurance Practice (coordinated event with New York University Law School and University of Connecticut Law School, August 27, 2002, New York, New York); Duke University and University of Geneva, *Debates Over Group Litigation in Comparative Perspective*, Panel Member on Mass Torts and Products Liability (July 21-22, 2000, Geneva, Switzerland); New York Law Journal, Article, *Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme* (November 23, 1998); Leader Publications, Litigation Strategist, "Fen-Phen" Articles, *The Admissibility of Scientific Evidence in Fen-Phen Litigation* and *Daubert Developments: Something for Plaintiffs, Defense Counsel* (June 1998, New York, New York); The Defense Research Institute and Trial Lawyer Association, Toxic Torts and Environmental Law Seminar, Article and Lecture, *A Plaintiffs' Counsels' Perspective: What's the Next Horizon?* (April 30, 1998, New York, New York); Lexis/Nexis, Mealey's Publications and Conference Group, Mealey's Tobacco Conference: Settlement and Beyond 1998, Article and Lecture, *The Expanding Litigation* (February 21, 1998, Washington, D.C.); New York State Bar Association, Expert Testimony in Federal Court After Daubert and New Federal Rule 26, Article and Lecture, *Breast Implant Litigation: Plaintiffs' Perspective on the Daubert Principles* (May 23, 1997, New York, New York). *Member*: American Bar Association; New York Bar Association; California Bar Association; District of Columbia Bar Association; Trial Lawyers for Public Justice; Association of the Bar of the City of New York; Association of Trial Lawyers of America; Supreme Court Historical Society; New York State Trial Lawyers Association, Lawyers' Committee for Human Rights, aka Human Rights First.

**ROBERT J. NELSON**, born New York, New York, October 20, 1960; admitted practice in California, 1987; U.S. District Court, Central District of California, 1987; U.S. District Court, Northern District of California, 1988; U.S. Court of Appeals, Ninth Circuit, 1988; U.S. Court of Appeals, Sixth Circuit, 1995; District of Columbia, 1998; New York, 1999; U.S. District Court, Eastern District of New York, Southern District of New York, 2001. *Education*: N.Y.U. School of Law (J.D., 1987); Root-Tilden Scholarship Program, N.Y.U. School of Law; Order of the Coif, N.Y.U. School of Law; Articles Editor, *New York University Law Review;* Cornell University (A.B., *cum laude* 1982); Member, Phi Beta Kappa, Cornell; Member, College Scholar Honors Program, Cornell; London School of Economics (General Course, 1980-81). *Employment:* Law Clerk to Judge Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 1987-88; Assistant Federal Public Defender, Northern District of California, 1988-93; Legal Research and Writing Instructor, University of California-Hastings College of the Law, 1989-91; Faculty Member, Stanford Law School Advocacy Skills Workshop, 1994-95. *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser

editor in chief, 2003); "To Infer or Not to Infer a Discriminatory Purpose: Rethinking Equal Protection Doctrine," 61 *New York University Law Review* 334 (1986). *Member*: State Bar of California; Bar of the District of Columbia; State Bar of New York; Bar Association of San Francisco; Association of Trial Lawyers of America; American Bar Association. *Awards and Honors: Northern California SuperLawyers*, 2004.

**MORRIS A. RATNER**, born San Jose, California, November 13, 1966. Admitted to practice in California, 1991; District of Columbia, 1999; New York, 2000; U.S. District Court, Northern, Central and Southern Districts of California; and U.S. Court of Appeals, Second, Third, Sixth and Ninth Circuits. *Education*: Harvard University (J.D., 1991); Stanford University (B.A., with distinction, 1988); Phi Beta Kappa. *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "Factors Impacting the Selection and Positioning of Human Rights Class Actions in United States Courts: A Practical Overview," 58 *New York University Annual Survey of American Law* 623 (2003); "The Settlement of Nazi-Era Litigation Through the Executive and Judicial Branches," 20 *Berkeley Journal of International Law* 212 (No. 1, March 2002). *Member*: State Bar of California; State Bar of New York; Bar of the District of Columbia; Bar Association of San Francisco.

**KELLY M. DERMODY**, born Ithaca, New York, June 16, 1967. Admitted to practice in California, 1994; U.S. District Court, Northern District of California, 1995; U.S. Third Circuit Court of Appeals, 2001. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 1993); Moot Court Executive Board (1992-1993); Articles Editor, *Industrial Relations Law Journal/Berkeley Journal of Employment and Labor Law* (1991-1992); Harvard University (A.B. *magna cum laude*, 1990), Senior Class Ames Memorial Public Service Award. *Employment*: Law Clerk to Chief Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, 1993-1994; Adjunct Professor of Law, Golden Gate University School of Law, Employment Law (Spring 2001). *Publications/Presentations*: "Class Actions: Latest Developments in Litigating and Settling Employment Discrimination Class Actions" (American Bar Association Labor and Employment Section Equal Opportunity Committee, Mid-Year Meeting, 2001); Co-Author with James M. Finberg, "A Road Map to Discovery in Employment Discrimination and Wage/Hour Class Actions" (Glasser Legal Works Seminar, 2000); "Employment Discrimination Class Actions in the Wake of Allison v. Citgo Petroleum Corp." (American Bar Association Litigation Section Annual Meeting, 2000); "Employment Discrimination Class Actions in the Wake of Allison v. Citgo Petroleum Corp. and Fed. R. Civ. P. 23(f)" (Federal Bar Association Convention, 1999); Co-Author with James M. Finberg, "Discovery in Employment Discrimination Class Actions," in *Litigation and Settlement of Complex Class Actions* (Glasser Legal Works 1998). *Member*: American Bar Association (Labor and Employment Law Section and Equal Employment Opportunity Committee (Co-Chair, 2003-present; Mid-Year Meeting, Planning Committee, 2000-present)); ABA Young Lawyers Division Labor and Employment Committee (Vice-Chair, 1997-1999); Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 1998-present; Secretary, 1999-2003; Co-Chair, 2003-present); National Center for Lesbian Rights (Board of Directors, 2002-present); Board of Directors, Pride Law Fund (Secretary, 1995-1997; Chairperson, 1997-2002); Equal Rights Advocates (Litigation Committee, 2000-2002); Bar Association of San Francisco (Litigation Section, Executive Committee, 2002-present); State Bar

of California; Consumer Attorneys of California; National Employment Lawyers' Association; Bay Area Lawyers for Individual Freedom.

*JONATHAN D. SELBIN*, born Baton Rouge, Louisiana, May 11, 1967. Admitted to practice in California; District of Columbia; New York; U.S. Court of Appeals, Fifth Circuit; U.S. District Court, Northern District of California; U.S. District Court, Central District of California; U.S. District Court, Southern District of New York. *Education*: Harvard University (J.D., *magna cum laude*, 1993); University of Michigan (B.A., *summa cum laude*, 1989). *Employment*: Law Clerk to Judge Marilyn Hall Patel, U.S. District Court, Northern District of California, 1993-95. *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "Bashers Beware: The Continuing Constitutionality of Hate Crimes Statutes After R.A.V.," 72 *Oregon Law Review* 157 (Spring, 1993). *Member*: State Bar of California; Bar of the District of Columbia; State Bar of New York; American Bar Association; New York State Trial Lawyers Association.

*BARRY R. HIMMELSTEIN*, born Philadelphia, Pennsylvania, March 14, 1958. Admitted to bar, 1992, California; U.S. District Court, Northern District of California, 1992. *Education*: Hastings College of the Law (J.D., *magna cum laude*, 1991); Note and Articles Editor, *Hastings Law Journal* (1990-91); University of Michigan at Ann Arbor (B.G.S., with distinction, 1982). *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003). *Employment*: Law Clerk to Judge Charles A. Legge, U.S. District Court, Northern District of California, 1991-92. *Member*: State Bar of California; Bar Association of San Francisco.

*ROBERT G. EISLER*, born Philadelphia, Pennsylvania, January 6, 1964. Admitted to bar, 1989, Pennsylvania; 1989, U.S. District Court, Eastern District of Pennsylvania; 2000, New York; 2001, U.S. District Court, Southern District of New York. *Education*: Villanova University School of Law (J.D., 1989); LaSalle University (B.A., 1986). *Member*: American Bar Association, Bar Association of the City of New York, Pennsylvania Bar Association, Philadelphia Bar Association.

*MICHELE C. JACKSON*, born Redwood City, California, January 17, 1954. Admitted to bar, 1979, California; U.S. District Court, Northern District of California, 1979; United States Supreme Court; U.S. Court of Appeals, Ninth Circuit, 1981; U.S. District Court, Central District of California, 1985; U.S. Court of Appeals, Fifth Circuit, 1989. *Education*: University of San Francisco School of Law (J.D., *cum laude*, 1979); Stanford University (B.A., with honors, 1976). *Employment*: Judicial Extern to Justice Wiley W. Manuel, California Supreme Court, Summer 1977. *Publications*: Chapter Co-Author with Marc Seltzer, "State Antitrust Law and Intellectual Property" in *California Antitrust & Unfair Competition Law* (Third), Vol. 1: Antitrust; Author, American Bar Association, Section Of Antitrust Law Course Materials, *Asserted Defenses to a § 17200 Class Action Based on Korea Supply -- The Interplay With Indirect Purchaser Litigation*; Contributing Author, *California Class Actions Practice and Procedure (*2003). *Awards and Honors*: Recipient of State Bar Board of Governors Award. *Appointments*: Officer, Advisor and Executive Committee Member, State Bar of California Antitrust and Unfair Competition Section (term beginning September 9, 2001). *Member*: American Bar Association; State Bar of California; Bar Association of San Francisco; McAuliffe Law Honor Society.

**MICHAEL W. SOBOL**, born Mt. Kisco, New York, October 5, 1961. Admitted to practice in Massachusetts, 1989; California, 1998; United States District Court, District of Massachusetts, 1990; U.S. District Court, Northern District of California, 2001. *Education*: Boston University (J.D., 1989); Hobart College (B.A., *cum laude*, 1983). *Employment*: Lecturer in Law, Boston University School of Law, 1995-1997. *Member*: State Bar of California; Bar Association of San Francisco.

**MELANIE M. PIECH**, born Los Angeles, California, April 18, 1964. Admitted to practice in California, 1989; U.S. Court of Appeals for the Ninth Circuit, 1990; U.S. District Court, Central District of California, 1990; U.S. District Court, Northern District of California, 1991. *Education*: Hastings College of the Law, University of California (J.D., 1989); Loyola Marymount University (B.A., *magna cum laude*, 1986). *Publications*: Co-Author with James M. Finberg, "The Impact of the Private Securities Litigation Reform Act: Unintended Consequences," *Securities Reform Act Litigation Reporter*, Vol. 6, No. 3 (Dec. 1998). *Member*: State Bar of California; Bar Association of San Francisco.

**FABRICE N. VINCENT**, born Paris, France, June 15, 1966. Admitted to practice in California, 1992; U.S. District Court, Northern District of California, Central District of California, Eastern District of California, Ninth Circuit Court of Appeals, 1992. *Education*: Cornell Law School (J.D., *cum laude*, 1992); University of California at Berkeley (B.A., 1989). *Publications*: Co-Editor, *California Class Actions Practice and Procedures* (2003-04); Co-Author, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author with Elizabeth J. Cabraser, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law* (ABA 2000-2004), updated and re-published in 5 *Newberg on Class Actions* (2001-04); Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-02); Co-Editor-In-Chief, *Fen-Phen Litigation Strategist* (Leader Publications 1998-2000) and author of "Off-Label Drug Promotion Permitted" (Oct. 1999); Co-Author, "The Future of Prescription Drug Products Liability Litigation in a Changing Marketplace," and "Six Courts Certify Medical Monitoring Claims for Class Treatment," 29 *Forum* 4 (Consumer Attorneys of California 1999); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study 1999); Co-Author, "How Class Proofs of Claim in Bankruptcy Can Help in Medical Monitoring Cases," (Leader Publications 1999); Co-Author, Introduction, "Sanctioning Discovery Abuses in the Federal Court," (LRP Publications 2000); "With Final Approval, Diet Drug Class Action Settlement Avoids Problems That Doomed Asbestos Pact," (Leader Publications 2000). *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association; Association of Trial Lawyers of America; Association of Business Trial Lawyers.

**DAVID S. STELLINGS**, born New Jersey, April 23, 1968. Admitted to practice in New York, 1994; New Jersey; 1994; U.S. District Court, Southern District of New York, 1994. *Education*: New York University School of Law (J.D., 1993); Editor, *Journal of International Law and Politics;* Cornell University (B.A., *cum laude*, 1990). *Member*: State Bar of New

York; State Bar of New Jersey; Bar Association of the City of New York; New York State Bar Association; American Bar Association.

**ERIC B. FASTIFF,** born San Francisco, California, March 22, 1968. Admitted to practice in California, 1996; District of Columbia, 1997; U.S. Court of Appeals for the Ninth Circuit, U.S. District Courts for the Northern and Central Districts of California, District of Columbia; U.S. Court of Federal Claims, 1997. *Education:* Cornell Law School (J.D., 1995); Editor-in-Chief, *Cornell International Law Journal;* London School of Economics (M. Sc. Econ, 1991); Tufts University (B.A., *cum laude, magno cum honore in thesi,* 1990). *Employment:* Law Clerk to Hon. James T. Turner, U.S. Court of Federal Claims, 1995-1996. *Publications:* Co-Editor, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser, Editor-in-Chief, 2004); "US Generic Drug Litigation Update," 1 *Journal of Generic Medicines* 212 (2004); "The Proposed Hague Convention on the Recognition and Enforcement of Civil and Commercial Judgments: A Solution to Butch Reynolds's Jurisdiction and Enforcement Problems," 28 *Cornell International Law Journal* 469 (1995). *Member:* State Bar of California; District of Columbia Bar Association; Bar Association of San Francisco; Bar of the U.S. Court of Federal Claims; Editorial Board Member, *Journal of Generic Medicines,* 2003-present.

**WENDY FLEISHMAN**, born Philadelphia, Pennsylvania, 1954. Admitted to practice in Pennsylvania, 1977; New York, 1992. *Education:* University of Pennsylvania (Post-Baccalaureate Pre-Med, 1982); Temple University (J.D., 1977); Sarah Lawrence College (B.A., 1974). *Employment:* Skadden, Arps, Slate, Meagher & Flom LLP in New York (Counsel in the Mass Torts and Complex Litigation Department), 1993-2001; Fox, Rothschild O'Brien & Frankel (partner), 1988-93 (tried more than thirty civil, criminal, employment and jury trials, and AAA arbitrations, including toxic tort, medical malpractice and serious injury and wrongful death cases); Ballard Spahr Andrews & Ingersoll (associate), 1984-88 (tried more than thirty jury trials on behalf of the defense and the plaintiffs in civil personal injury and tort actions as well as employment- and construction-related matters); Assistant District Attorney in Philadelphia, 1977-84 (in charge of and tried major homicide and sex crime cases). *Publications:* Co-Author, "From the Defense Perspective," in *Scientific Evidence,* Chapter 6, (Aspen Law Pub, 1999); American Bar Association, Editor, *Trial Techniques Newsletter,* Tort and Insurance Practices Section, 1995-96; and 1993-94. *Member:* American Bar Association (2000, Affair Chair, ABA Annual Meeting, Torts & Insurance Practices Section, NYC; 1997, Chair, Trial Techniques Committee, Tort & Insurance Practices); 1996, Chair Elect, Trial Techniques Committee, Tort & Insurance Practices); Pennsylvania Bar Association (Committee on Legal Ethics and Professionalism, 1993-Present; Committee on Attorney Advertising, 1993-Present; Vice-Chair, Task Force on Attorney Advertising, 1991-92); State Bar of New York, Federal Bar Association; Member, Gender and Race Bias Task Force of the Second Circuit, 1994-present; Deputy Counsel, Governor Cuomo's Screening Committee for New York State Judicial Candidates, 1993-94; New York State Trial Lawyers Association; New York Women's Bar Association; Association of the Bar of the City of New York; New York County Lawyers; ATLA; NYTLA; PATLA; Philadelphia Bar Association (Member of Committee on Professionalism 1991-92).

**RICHARD T. SEYMOUR**, born Grand Rapids, Michigan, August 22, 1942. Admitted to practice in the District of Columbia, 1968; U.S. Court of Appeals, D.C. Circuit, 1969; U.S. Court of Appeals 4th Circuit, 1971; U.S. Court of Appeals Former 5th Circuit, 1971; U.S. Supreme Court, 1972; U.S. District Court for the Northern District of Mississippi, 1975; U.S. Court of

Appeals Current 5th Circuit, U.S. Court of Appeals 11th Circuit, 1981; U.S. Court of Appeals 3rd Circuit, U.S. Court of Appeals 10th Circuit, 1993; U.S. District Court for the Northern District of New York, 1994; U.S. Court of Appeals 6th Circuit, U.S. Court of Appeals 9th Circuit, U.S. District Court for the Southern District of Texas, 1997. *Education*: Harvard Law School (J.D., 1968); Aquinas College (B.A., 1965). *Employment*: U.S. Commission on Civil Rights, Office of General Counsel, June 1968 - Sept. 1969 (attorney); Washington Research Project (predecessor of the Children's Defense Fund), Oct. 1969 - Sept. 1973 (attorney); Solo practice, Oct. 1973 - Jan. 1977; Lawyers' Committee for Civil Rights Under the Law, Jan. 1977 - Feb. 2001 (Director, Government Employment Project to 1979; Director, Employment Discrimination Project to 2001); Adjunct Professor, Georgetown University Law Center, Graduate Program, 1991-93. *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "The Sixteen Summary-Judgment Commandments," 28 *Trial* (Dec. 2000); Co-Author with Barbara Berish Brown, *Equal Employment Law Update* (BNA), Summer 1996 edition, Spring 1997 edition, Fall 1997 edition, Spring 1998 edition, Fall 1998 edition, Spring 1999 edition, Fall 1999 edition; "Roundtable and Dialogue on the Effects of *Ellerth* and *Faragher,*" *Employment Discrimination Report* (BNA Aug. 19, 1998); "The Use of 'Proof of Claim' Forms and Gag Orders in Employment Discrimination Class Actions," 10 *Connecticut Law Review* 920 (1978); "Strategic Effects of the Weber Decision on Employers," reprinted in *Equal Employment Practice Guide*, Vol. 1, Chapter 3 (Federal Bar Association 1980); *Affirmative Action by Public Employers Under the Terms of a Court Order* (ABA, National Institute on Affirmative Action, 1980); *Post-Certification Problems in Class Actions* (Practicing Law Institute Handbook, Federal Civil Rights Litigation, 1982); "Why Plaintiffs' Counsel Challenge Tests, and How They Can Successfully Challenge the Theory of 'Validity Generalization,'" 33 *Journal of Vocational Behavior* 331 (1988); "Predictability in EEO Litigation," in *Promoting Minorities and Women: A Practical Guide to Affirmative Action for the 1990s* (BNA 1989); "The Loss of Predictability in EEO Litigation, and Further Questions to be Resolved," in *Employment Discrimination After the 1989 U.S. Supreme Court Rulings* (Prentice Hall 1989). *Member*: American Bar Association (Labor and Employment Law Section, 1998-present, Member of Council; 1995-98-present, Co-Chair CLE Committee; 1994-95, Co-Chair Annual Meeting Subcommittee; 1991-94, Co-Chair Equal Employment Opportunity Committee; 1988-91, Co-Chair Subcommittee on Liaison with Department of Labor; 2000-01, Council Task Force on Multidisciplinary Practice; 2000-01, Council Task Force on Government Fellowship Program; 1997-98, Council Task Force on Investments; 1998-2000, Council Task Force on Law Student Recruitment; 2000-Present, Council Liaison to Task Force on Judicial Law Clerk Education; 1998-Present, Council Liaison to the Alliance for Education in Dispute Resolution; Association of Lawyers of America (Committee on the Courts; 1999-2000; Executive Committee of Employee Rights Division, 1999-2000; College of Labor and Employment Lawyers, Fellow, Governor, 1998-Present; Chair, Committee on Standards of Practice, 1998-2000).

**BILL LANN LEE**, admitted to practice in New York, 1975; California, 1983; U.S. District Court, Central and Northern Districts of California; U.S. Court of Appeals, D.C., Second, Third, Fourth, Fifth, Sixth, Ninth and Eleventh Circuits; Supreme Court of the United States. *Education*: Columbia Law School (J.D. 1974), Stone Scholar, Best Moot Court Brief Prize; Yale College (B.A. 1971), Phi Beta Kappa, *magna cum laude* in History. *Employment*: Visiting Scholar, Columbia Law School, New York, NY, Feb.-Oct. 2001; Assistant Attorney General for Civil Rights, United States Department of Justice, Washington D.C., Dec. 1997-Jan.

2001; Western Regional Counsel, NAACP Legal Defense and Educational Fund, Inc., Los Angeles, CA, 1988-97; Supervising Attorney for Civil Rights Litigation, Center for Law in the Public Interest, Los Angeles, CA, 1983-88; Assistant Counsel, NAACP Legal Defense and Educational Fund, Inc., 1974-82; Counsel, Asian American Legal Defense and Education Fund, New York, NY, 1979-80; Adjunct Professor of Political Science, Fordham University, New York, NY, 1977-80. *Awards and Honors*: *Northern California SuperLawyers*, 2004; Pearlstein Civil Rights Award, Anti-Defamation League, 2002; Honorary Doctorates in Law from City University of New York Law School, 2001; North Carolina Central University, 2000 and Wesleyan University, 1999; John Randolph Distinguished Service Award, United States Department of Justice, 2001; Pioneer Award, Organization of Chinese Americans, 2000; Trailblazer Award, National Asian Pacific American Bar Association, 1999; Judge Delbert E. Wong Distinguished Service Award, Southern California Chinese Lawyers Association, 1998. *Publications/Presentations*: Symposium Addresses: "Reason, Passion & the Progress of Law: Remembering and Advancing the Constitutional Vision of Justice William T. Brennan," Dinner Address, 300 *Harvard Civil Rights-Civil Liberties Law Review* 321 (1998); Book Review, "In Search of Equality, The Chinese Struggle Against Discrimination in Nineteenth Century America" by Charles J. McClain, 21 *Amerasia Journal* 205 (1995); "For Affirmative Action, Richmond Decision is a Detour, Not a Dead End," Op-ed, *Los Angeles Times*, Feb. 8, 1989, at p. 7 (with Jack Greenberg); "The Disparate Impact Model and Subjective Criteria in Employment Discrimination Litigation," 5 *Labor & Employment Law News*, (Spring 1986) (with Pearl Lattaker); "A Right to An Integrated Education: A Survey," 14 *Urban Lawyer* 423 (1982), "Eliminating Barriers to Communications Between Class Action Counsel and Members in Actions Brought Pursuant to Rule 23, Federal Rules of Civil Procedure," *Report of the Committee on Civil Rights of the Association of the Bar of the City of New York* (1980); "Racial Discrimination in the United States," *Helsinki Watch Committee* (1980); "Yung Wing and the Americanization of China," 1 *Amerasia Journal* 25 (1971). *Member*: American Bar Association (Co-Chair, Committee on Class Action and Derivative Suits, Litigation Section, 1992-94; Association of the Bar of the City of New York, 1975-83, Member, Civil Rights Committee, 1979-83); Los Angeles County Bar Association, 1983-97; Ninth Circuit Judicial Conference, Central District California Lawyer Representative, 1990-93; Southern California Chinese Lawyers Association, 1988-97, Member, Board of Governors, 1988-90.

**PAULINA DO AMARAL**, born New York, New York, February 1966. Admitted to practice in New York, 1997; California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Southern District of New York, 2004. *Education*: Hastings College of Law, University of California (J.D., 1996); Executive Editor, *Hastings Constitutional Law Quarterly*; National Moot Court Competition Team, 1995; Moot Court Executive Board; University of Rochester (B.A., 1988). *Employment*: Law Clerk to Chief Judge Richard Alan Enslen, U.S. District Court, Western District of Michigan, 1996-98. *Member*: American Bar Association; State Bar of New York, State Bar of California, Bar Association of San Francisco; American Trial Lawyers Association; Association of the Bar of the City of New York.

**HEATHER A. FOSTER**, born Washington, D.C., October 2, 1970. Admitted to practice in California, 1996; U.S. District Court, Northern District of California, 1996. *Education*: University of the Pacific, McGeorge School of Law (J.D., 1996); Moot Court Honors Board, 1995-96; Trial Advocacy Honors 1996; Boston College (B.A., 1992). *Employment*: Adjunct Professor, San Francisco State University – College of Extended Learning, Paralegal and LNC

program (Fall 2000-Spring 2001). *Publications*: Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study, 1999). *Bar-Related Activities*: Volunteer Legal Services Program, BASF, Liaison for the Summer Associate Public Service Program – Homeless Advocacy Program, 2002; Volunteer Legal Services Program, BASF, Teachers in the Schools Program, 1999-2000; Volunteer Legal Services Program, BASF, Pro Bono Attorney – Family Law Clinic, 1999. *Member*: American Bar Association (Litigation Section); State Bar of California; Bar Association of San Francisco; Association of Trial Lawyers of America; Phi Alpha Delta; Legal Assistant Management Association; Association of Legal Administrators.

*HECTOR D. GERIBON*, born Montevideo, Uruguay, November 5, 1966. Admitted to practice in New Jersey and New York, 1997; California, 1999; U.S. District Court, District of New Jersey, 1997; U.S. Court of Appeals for the Ninth Circuit, U.S. District Courts for the Northern and Central Districts of California, 1999; U.S. Court of Appeals, Third Circuit, 2001; U.S. District Court, Southern District of New York, 2003. *Education*: Brooklyn Law School (J.D., 1996); Moot Court Honor Society; American Jurisprudence Award for Health Law; Recipient, Edward V. Sparer Public Interest Law Fellowship; St. John's University, (B.S., Dean's List, 1988). *Employment*: Law Clerk to Judge Manuel L. Real, U.S. District Court, Central District of California, 1997-98; Judicial Extern to Chief Judge Peter C. Dorsey, U.S. District Court, District of Connecticut, 1995. *Member*: State Bar of New York; Bar Association of the City of New York, American Bar Association.

*LISA J. LEEBOVE*, born Detroit, Michigan, October 23, 1970. Admitted to practice in California, 1996; U.S. District Court, Northern District of California, 1997; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Central District of California, 2002. *Education*: Hastings College of the Law (J.D. *cum laude* 1996); Member, *Hastings Law Journal* (1994-95), Associate Notes Editor, *Hastings Law Journal* (1995-96); University of Arizona (B.A. *cum laude* 1992). *Employment*: Judicial Extern to Judge Susan Y. Illston, U.S. District Court, Northern District of California, 1996. *Publications*: Contributing Author, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser editor in chief, 2003). *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association.

*STEVEN M. TINDALL*, born Columbia, South Carolina, April 12, 1968. Admitted to practice in California, 1996; U.S. District Court, Eastern District of California, 2004; U.S. District Court, Northern District of California, 2001; U.S. District Court, Central District of California, 2000. *Education*: Boalt Hall School of Law, University of California at Berkeley (J.D., 1996); Moot Court; Co-Director of Workers' Rights Clinic, 1994; Yale University (B.A., English Literature, *summa cum laude*, Phi Beta Kappa, 1990). *Employment*: Law Clerk to Chief Judge Judith N. Keep, U.S. District Court, Southern District of California, 1996-97; Law Clerk to Judge Claudia Wilken, U.S. District Court, Northern District of California, 1997-98. *Publications*: Contributing Author, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser editor in chief, 2003); "'Do as she does, not as she says: The Shortcoming of Justice O'Connor's Direct Evidence Requirement in *Price Waterhouse v. Hopkins*," 17 *Berkeley Journal of Employment and Labor Law* 332 (1996). *Member*: State Bar of California; Bar Association of San Francisco.

**KATHRYN E. BARNETT**, born Chapel Hill, North Carolina, October 23, 1967. Admitted to practice in Tennessee, 1992; U.S. District Court, Middle District of Tennessee, 1997; U.S. 6th Circuit, 2000; U.S. District Court, Western District of Tennessee, 2001; U.S. 11th Circuit, 2003. *Education*: Vanderbilt University School of Law (J.D., 1992); American Jurisprudence Awards: Torts I and Jurisprudence; Davidson College (B.A., with Honors in Philosophy, 1989), Dean Rusk Grant for International Studies. *Litigation Experience*: Ms. Barnett has tried over 15 civil and criminal trials, including complex and class action cases, as well as catastrophic personal injury cases. In 2000, Ms. Barnett obtained a verdict of nearly $6 million on behalf of parents whose unborn fetus died tragically due to medical malpractice. In March, 2004, Ms. Barnett served as co-lead trial counsel in the class action lawsuit of *In re Tri-State Crematory Litigation*, Multi-District Litigation Docket No. 1467. The case was settled during the second week of trial. The settlements in the Tri-State litigation exceed $40 million. *Employment*: Judicial Intern to Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, Fall 1990; Assistant Public Defender, Davidson County, Tennessee, Sept. 1991-Dec. 1995. *Publications/Presentations*: "Limiting the Harmful Testimony of Experts on the Law," Trial (Jan 2001); "Letting Focus Groups Work for You," Trial (April 1999); "Damages," Tennessee Trial Lawyers (Oct. and Nov. 2003); "Trying the Wrongful Death Case in Tennessee," National Business Institute (Aug. 2003); "Advanced Personal Injury," National Business Institute (July 2003); "Mass Torts," Tennessee Bar Association (July 2002); "Superior Depositions Strategies in Civil Trial Practice," National Business Institute (Jan. 2002, Dec. 1999); "Lawsuits Against the Nursing Home Industry," Tennessee Trial Lawyers (Feb. 2000); "How to Prepare for Mediation and other Practice Tips," Nashville Bar Association (Oct. 2000); "Tennessee Expert Witness," Lorman Education Services (July 2000); "Using Focus Groups to Get the Settlement or Verdict Your Client Deserves," Tennessee Trial Lawyers (Feb. 1999). *Member*: Tennessee Trial Lawyers (Board of Governors, 2002-2005; Chair Continuing Legal Education Committee 2004-05); Nashville Bar Foundation (Fellow); Tennessee Justice Center, Inc. (Board of Directors, 2002-05, Secretary-Treasurer, 2003-04); Nashville Lawyer's Association for Women (President, 2004-05; President-elect 2003-04; Director, 2002-03; Treasurer, 2000-02; Board, 1998-present); Davidson County, Tennessee Metropolitan Board of Equalization, 2000-04; Harry Phillips American Inn of Courts (Executive Committee, 2004-05; Member, 2004 - 2008, 1997-99); Nashville Bar Association; Tennessee Bar Association; American Association of Trial Lawyers.

**EVE H. CERVANTEZ**, born Columbus, Ohio, December 2, 1963. Admitted to practice in California, 1993; U.S. District Court, Northern District of California, and U.S. Court of Appeals, Ninth Circuit, 1993; United States Supreme Court, and U.S. District Court, Southern District of California, 1998; Eastern District of California, and Central District of California, 1999. *Education*: Harvard Law School (J.D., 1992); *Harvard Law Review*, 1991-92; Washington University (A.B., 1985). *Employment*: Law Clerk to Judge Charles A. Legge, U.S. District Court, Northern District of California, 1992-93. *Publications*: "When Should You Bring State Law Wage & Hour Claims In Addition To, Or Instead Of, FLSA Claims?" *The Employee Advocate* (Summer/Fall 2003); Chapter Contributor to *Employment Discrimination Law*, "Statistical Proof" (BNA, 2002 Cumulative Supplement). *Member*: State Bar of California; American Bar Association, Bar Association of San Francisco; National Employment Lawyers Association; California Employment Lawyers Association.

*JOY A. KRUSE*, born Buffalo, New York, February 24, 1955. Admitted to practice in Washington, D.C., 1984; California; U.S. Supreme Court; U.S. Courts of Appeals for the District of Columbia, Ninth, and Federal Circuits; U.S. District Courts for the Northern and Eastern Districts of California, 1989. *Education*: Harvard Law School (J.D., 1984); Wellesley College (B.A., 1977). *Employment*: Assistant Federal Public Defender, Northern District of California, 1992-96; Public Defender Service, Washington D.C., 1984-89. *Member*: Phi Beta Kappa; State Bar of California; Bar Association of San Francisco.

## OF COUNSEL

*WILLIAM B. HIRSCH*, born Los Angeles, California, May 19, 1951. Admitted to practice in California, 1983; U.S. District Court, Northern District of California; U.S. District Court, District of Hawaii, 1991. *Education*: Harvard University (J.D., 1983); Princeton University (M.A., 1975); University of California at Santa Cruz (B.A., with highest honors, 1973). *Awards and Honors*: *Trial Lawyer of the Year*, Trial Lawyers for Public Justice, 1995. *Publications*: "Justice Delayed: Seven Years Later & No End In Sight," in *The Exxon Valdez Disaster: Readings On A Modern Social Problem* (Kendall & Hunt Pub. Co. 1996). *Member*: Bar Association of San Francisco; State Bar of California; Trial Lawyers for Public Justice; The Association of Trial Lawyers of America; ACLU of Northern California (Steering Committee, 1993-94).

*SUSIE INJIJIAN*, born Cairo, Egypt, September 7, 1960. Admitted to practice in California, 1987; U.S. District Court, Central District of California, 1987; U.S. District Court, Northern and Eastern Districts of California, 1990; U.S. Court of Appeals, Ninth Circuit, 1992; U.S. Supreme Court, 2003. *Education*: University of San Francisco (J.D., 1986); McAuliffe Law Honor Society; University of California at Berkeley (B.A., 1982); University of San Diego. *Awards and Honors*: Named as one of California "Trial Lawyers of the Year," *California Lawyer*, 2000. *Employment*: Senior Attorney, Sterns & Walker, San Francisco and Oakland, 1990-2004. *Member*: State Bar of California; Consumer Attorneys of California; San Francisco Trial Lawyers Association.

*KARIN KRAMER*, born Philadelphia, Pennsylvania, June 30, 1952. Admitted to practice in New Hampshire, 1977; California, 1979; U.S. Court of Appeals, Ninth Circuit, 1982; U.S. Supreme Court, 2002. *Education*: Boston University School of Law (J.D., 1977), Stone Moot Court (Best Brief, Best Oralist), National Moot Court, Administrative Jurisprudence Awards: Corporations, Administrative Law, Academic Award - Family Law; Brown University (B.A., 1974). *Employment:* Chavez & Gertler (2002-2004), Keker & Van Nest (1987 - 2002). *Publications*: "Will the Supreme Court Federalize Class Actions?" *Forum* (October 2002). *Member*: State Bar of California; San Francisco Bar Association; Marin Trial Lawyers Association (Treasurer); Trial Lawyers for Public Justice; National Association of Consumer Attorneys.

*BRUCE W. LEPPLA*, born Oakland, California, September 6, 1949. Admitted to practice in California, 1976; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1976; New York, 1978. *Education*: Boalt Hall School of Law, University of California (J.D., 1975); M.G. Reade Scholarship Prize, Boalt Hall School of Law; University of California, Berkeley (M.A., Economics, with honors, 1974); Yale University

(B.A., *magna cum laude*, Highest Honors in Economics, 1971). *Employment*: California Bankers Insurance Services Inc. (CEO, President and General Counsel), 1998-2000; Redwood Bank (CEO, President and General Counsel), 1986-98; Lasky, Haas, Cohler & Munter, 1980-82; Brobeck, Phleger & Harrison, 1980; Davis, Polk & Wardwell, 1976-80. *Teaching Positions*: Lecturer, California Bankers Association General Counsel Seminars, Lending Documentation, Financial Institutions Litigation and similar topics, 1994-97; Lecturer, University of California at Berkeley, Haas School of Business, Real Estate Law and Finance, 1993-96. *Publications*: Author or co-author of 11 different U.S. and International patents in electronic commerce and commercial product design, including "A Method for Storing and Retrieving Digital Data Transmissions," United States Patent No. 5,659,746, issued August 19, 1997; Author, "Securities Powers for Community Banks," *California Bankers Association Legislative Journal* (Nov. 1987). *Member*: State Bar of California; State Bar of New York; Yale University Alumni Board of Directors (Director, 2001-present); California Bankers Association (Director, 1996-98); California State Small Business Development Board, 1989-1997; University of California at Berkeley, Boalt Hall Alumni Board of Directors, 1993-96; Leadership Council, San Francisco Chamber of Commerce, 1990-1992; Community Reinvestment Institute (Founding Director, 1989-1990).

### ASSOCIATES

*ELIZABETH A. ALEXANDER,* born Morristown, Tennessee, October 4, 1971. Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 2001; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Eastern District of Tennessee, 2002. *Education*: Vanderbilt University Law School (J.D., 1998); President, Criminal Law Association; Moot Court Board Member; Vanderbilt University Honor Committee; Hollins College (B.A., 1993). *Employment*: Associate, Dodson, Parker, Dinkins & Behm (2002-03); Associate, Wyatt, Tarrant & Combs (2000-2002); Law Clerk, Honorable Thomas A. Higgins, U.S. District Court for the Middle District of Tennessee (1998-2000). *Member*: State Bar of Tennessee; Tennessee Bar Association; Nashville Bar Association (Board of Directors, Young Lawyers Division); American Bar Association; Lawyers' Association for Women (First-Year Director).

*LORI ERIN ANDRUS,* born Baton Rouge, Louisiana, March 3, 1972. Admitted to practice in California, 1999; U.S. District Court, Northern, Southern and Central District of California, 2000. *Education*: Duke University (J.D., *cum laude*, 1999); Women Law Students' Association; Dean's Advisory Council; Boston University (M.S., *cum laude*, 1993). *Member*: State Bar of California; Association of Trial Lawyers of America; American Bar Association.

*DANIEL E. BARENBAUM,* born Boston, Massachusetts. Admitted to practice in California, 2000; U.S. Court of Appeals for the Ninth Circuit, U.S. District Court for the Northern District of California. *Education*: Emory School of Law (J.D., 2000); Goizueta Business School, Emory University (M.B.A., 2000, Award: Most Outstanding Academic Accomplishment); Tufts University (B.A., 1994). *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability*

*Litigation* (ALI-ABA Course of Study, 1999). *Member*: State Bar of California; Bar Association of San Francisco.

**CARYN BECKER**, born Johannesburg, South Africa, January 10, 1973. Admitted to practice in California, 1998; U.S. District Court, Northern District of California, U.S. District Court, Central District of California; U.S. Court of Appeals, Ninth Circuit, 1999. *Education*: Duke Law School (J.D., with honors, 1998); Technical Editor, *Law and Contemporary Problems*; Articles Editor, *Duke Journal of Gender Law & Policy*; Phi Beta Kappa; University of California at Berkeley (B.A., with high honors, 1995). *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003). *Member*: American Bar Association; State Bar of California; Bar Association of San Francisco.

**STEPHEN H. CASSIDY**, born Pittsburgh, Pennsylvania, May 14, 1964. Admitted to practice in California, 1989; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1997. *Education*: Hastings College of the Law (J.D., *magna cum laude*, 1989); Associate Managing Editor, *Hastings International and Comparative Law Review*, 1988-89; Order of the Coif; Member, Thurston Society; Recipient, American Jurisprudence Awards for Real Property, Evidence and American Legal History; Georgetown University (B.S.F.S., 1986). *Employment*: Law Clerk to Magistrate-Judge Joan S. Brennan, U.S. District, Northern District of California, 1989-90; Motions Attorney, U.S. Court of Appeals, Ninth Circuit, 1992-94, 1996-97. *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," in *Survey of State Class Action Law* (ABA 2001); "The Newest Member of the Nuclear Club: Pakistan's Drive for a Nuclear Weapon's Capability," 12 *Hastings Int'l & Comp. L. Rev.* 679 (1989). *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association (Litigation Section); Trial Lawyers for Public Justice; Association of Trial Lawyers of America; Consumer Attorneys of California.

**MARK P. CHALOS**, born New York, New York, September 3, 1973. Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 1999; U.S. District Court, Middle District of Tennessee, 1999; U.S. District Court, Western District of Tennessee, 2001. *Education*: Emory University School of Law (J.D., 1998); Dean's List; Award for Highest Grade, Admiralty Law; Research Editor, *Emory International Law Review*; Phi Delta Phi Legal Fraternity; Vanderbilt University (B.A., 1995). *Publications, Presentations, Appointments*: "The End of Meaningful Punitive Damages," *Nashville Bar Journal*, November 2001; "In Profile: Tennessee Attorney General Paul Summers," *Nashville Bar Journal*, February 2003; "Is Civility Dead?" *Nashville Bar Journal*, October 2003. *Member*: American Bar Association; Association of Trial Lawyers of America; Tennessee Bar Association; Tennessee Trial Lawyers Association; Nashville Bar Association; Co-Chair, ABA YLD Criminal & Juvenile Justice Committee; Board of Directors, Nashville Bar Association YLD; Chair, Nashville Bar Association YLD Continuing Legal Education; *Nashville Bar Journal*, Editorial Board; Member, Harry Phillips American Inn of Court (2002-2004); Grant Review Panelist, Metropolitan Nashville Arts Commission; Founding Member, Young Professionals Program, Frist Center for the Visual Arts; President, Kappa Chapter of Kappa Sigma Fraternity Alumni Association.

**DANIEL P. CHIPLOCK,** born Albany, New York.  Admitted to practice in New York, 2001; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2001. *Education*:  Stanford Law School (J.D., 2000); Phi Beta Kappa; Article Review Board, *Stanford Environmental Law Journal*; Recipient, Keck Award for Public Service; Columbia University (B.A., *summa cum laude*, 1994). *Member*:  State Bar of New York; Association of Trial Lawyers of America.

**ELIZABETH H. CRONISE,** born Allentown, Pennsylvania, 1971.  Admitted to practice in Virginia, 1997; U.S. Court of Appeals, 4th Circuit, 1997; U.S. District Court, Eastern and Western Districts of Virginia, 1997; District of Columbia, 1998; U.S. District Court, District of Columbia, 1999; U.S. Court of Appeals, District of Columbia, 2002; U.S. District Court, Eastern District of Wisconsin, 2003; U.S. Court of Appeals, Eighth Circuit, 2003. *Education*:  George Washington University Law School (J.D., with honors, 1997); Moot Court Board (President, 1996-97; Member, 1995-97); West Bar Publishing Award for Clinical Achievement; Dean's Fellow in Legal Research and Writing; Carnegie Mellon University (B.A., with college honors, 1992). *Employment*: Associate, DiMuro, Ginsberg & Lieberman, 1997-1998; Associate, Lukas, Nace, Gutierrez & Sachs, Chartered, 1998-1999; Associate, Cohen, Milstein, Hausfeld & Toll, PLLC, 1999-2003. *Presentations & Public Service*: Pro Bono Attorney, Trial Lawyers Care, Representing Claimants before the September 11 Victims Compensation Fund (2003-2004); "Sample v. Monsanto: Price Fixing and Biotech Seeds," Conference on Complex Litigation in Agricultural Markets (2002); "Reparations for World War II Comfort Women," UNC Law School 6th Annual Conference on Race, Gender, Class & Ethnicity – Reconciling Hope and History: The Question of Reparations (2002); "Class Action Lawsuits and Genetic Engineering," National Conference of the Genetic Engineering Action Network (GEAN) (2001); "The Intersection of Antitrust and Intellectual Property," Conference on Complex Litigation in Agricultural Markets (2001); "The Case Against Monsanto," FarmAid 2000, Second Annual Farmer Summit on Genetic Engineering in Agriculture (2000); Radio Commentator, WTEM/WBIG, Public Service Programming on Current Events and Legal Issues (1997-2001). *Member*:  Virginia State Bar Association; District of Columbia Bar Association (Chairperson, Young Litigators Committee, Litigation Section, 2002-03); American Bar Association; American Trial Lawyers Association.

**MATTHEW S. DA VEGA**, born Santa Rosa, California, February 14, 1971. Admitted to practice in California, 1998; U.S. District Court, Northern District of California, 1998. *Education*:  University of San Francisco Law School (J.D., 1997); University of California, Santa Barbara (B.A., 1993). *Employment*:  Associate, Brayton & Purcell, 2000-2002; Law Clerk to Judge Elaine Watters, California Superior Court, Sonoma County, 1998. *Member*:  State Bar of California; Bar Association of San Francisco; Trial Lawyers for Public Justice.

**MARK T. DAVEY,** born Meridian, Mississippi, December 14, 1970. Admitted to practice in California, 2003; U.S. District Court, Northern District of California, 2004. *Education*: University of California, Boalt Hall School of Law (J.D., 2003); Brian M. Sax Memorial Prize for Excellence in Clinical Advocacy; University of California, Berkeley (B.A., *Phi Beta Kappa*, 1998); Highest Distinction in General Scholarship. *Member*:  San Francisco Bar Association; State Bar of California; Barrister's Club.

**NICHOLAS R. DIAMAND**, born London, England, October 18, 1969. Admitted to practice in New York, 2003; U.S. District Court, Southern and Eastern Districts of New York, 2003. *Education*: Columbia University School of Law (LL.M., Stone Scholar, 2002); College of Law, London, England (C.P.E.; L.P.C.; Commendation, 1997); Columbia University (B.A., *magna cum laude,* 1992). *Employment*: Solicitor, Herbert Smith, London (1999-2001); Law Clerk to the Honorable Edward R. Korman, Chief Judge, U.S. District Court, Eastern District of New York (2002-03). *Member*: New York State Bar Association, Law Society of England and Wales.

**ALEXANDRA L. FOOTE**, born Riverside, California, September 14, 1971. Admitted to practice in California, 2002; U.S. Court of Appeals for the Ninth Circuit, 2002; U.S. District Court, Northern District of California, 2002. *Education*: University of California, Hastings College of the Law (J.D. 2002); Hastings College of the Law Civil Justice Clinic; Brown University (A.M. Environmental Studies 2000); University of Oregon, (B.A. 1992, *magna cum laude, Phi Beta Kappa*, departmental honors, Outstanding Junior Woman of the Year Award 1991, Outstanding Senior of the Year Award 1992). *Publications:* Co-author with Elizabeth J. Cabraser, and Fabrice N. Vincent, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's Daubert Report* (December 2002); Co-author of California Section of *Survey of State Class Action Law* (ABA 2003), re-published in 5 *Newberg on Class Actions* (2003). *Member*: California State Bar; American Bar Association, Litigation Section; Bar Association of San Francisco; Lawyer's Club of San Francisco; Association of Trial Lawyers of America.

**RACHEL GEMAN**, born Northampton, Massachusetts, August 7, 1971. Admitted to practice in New York, 1998; Southern and Eastern Districts of New York, 1999. *Education*: Columbia University School of Law (J.D. 1997); Stone Scholar; Equal Justice America Fellow; Human Rights Fellow; Editor, *Columbia Journal of Law and Social Problems*; Harvard University (A.B. *cum laude* 1993). *Employment*: Special Advisor, United States Mission to the United Nations, 2000; Law Clerk to Judge Constance Baker Motley, U.S. District Court, Southern District of New York, 1997-98. *Awards and Honors*: *Distinguished Honor Award*, United States Department of State, 2001. *Publications/Presentations*: "Fair Labor Standards Act Overtime Exemptions: Proposed Regulatory Changes," *New York State Bar Association Labor and Employment Newsletter* (Spring 2004); "Current Topics in Fair Labor Standards Act Litigation," Conference, Association of the Bar of the City of New York (2003, Chair & Panelist); "Workforce Without Borders," ABA Section of Labor & Employment Law, EEOC 2003 Midwinter Meeting (Moderator). *Member*: Bar Association of the City of New York (Labor and Employment Section, 2000-present); American Bar Association.

**DAVID P. GOLD**, born New York, New York, December 29, 1967. Admitted to practice in New York, 2004. *Education*: Columbia Law School (J.D., James Kent Scholar, 2002); Articles Editor, *Columbia Law Review*; University of Pennsylvania (Ph.D., William Penn Fellow, 2002); Brown University (A.B., *magna cum laude,* 1990). *Employment*: Law Clerk to Honorable Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 2002-03. *Publications*: "Wildlife Protection and Public Welfare Doctrine," 27 *Colum. J. Envtl. L.* 633 (2002); "A Hitherto Unknown Sanskrit Work Concerning Mādhava's Power Series for Sine and Cosine," 42 *Historia Scientiarum* 49 (1991). *Member:* State Bar of New York.

**JENNIFER GROSS**, born Sleepy Hollow, New York, July 1, 1969. Admitted to practice in California, 1994; U.S. District Court, Central District of California, 1994. *Education*: RAND Graduate School (M. Phil., 1997); University of Southern California (J.D., 1994); Emory University (B.A., 1991). *Publications*: Co-Author, *Intelligence, Surveillance, and Reconnaissance Force Mix Study: Final Report* (RAND 2003); Co-Author, *Asbestos Litigation Costs and Compensation: An Interim Report* (RAND 2002); Co-Author, *Asbestos Litigation in the U.S.: A New Look at an Old Issue* (RAND 2001); Co-Author, *Class Action Dilemmas: Pursuing Public Goals for Private Gain* (RAND, 2000); Co-Author, *Potential Vulnerabilities of U.S. Air Force Information Systems* (RAND, 1999); Co-Author, "Preliminary Results of the RAND Study of Class Action Litigation," (RAND, 1997). *Member*: State Bar of California.

**LEXI J. HAZAM,** born Olney, Maryland, October 9, 1973. Admitted to practice in California, 2003. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2001); California Law Review; Articles Editor, La Raza Law Journal; Recipient, Berkeley Law Foundation Summer Grant for Public Service; Federal Practice Clinic, Hopi Appellate Clinic; Stanford University (B.A., *Phi Beta Kappa*, 1995, M.A. 1996). *Employment:* Law Clerk, Mexican American Legal Defense and Education Fund, Summer 1999; Law Clerk to Judge Henry H. Kennedy, Jr., U.S. District Court for the District of Columbia, 2001-02. *Member*: State Bar of California, National Employment Lawyers' Association.

**CHIMÈNE I. KEITNER,** born Ontario, Canada, November 14, 1975. Admitted to practice in California, 2003; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 2003. *Education*: Yale Law School (J.D., 2002); Moot Court of Appeals (Best Individual and Best Team Performance, 2002); Senior Editor, *The Yale Law Journal* (2001-02); Book Reviews Editor, *The Yale Journal of International Law* (2000-01); Oxford University (Doctorate in International Relations, 2001; Rhodes Scholar); Harvard University (A.B., 1996). *Employment*: Student Director, Jerome N. Frank Legal Services Immigration Clinic (2000-01); Consultant, UNESCO Division of Cultural Policies (2001); Law Clerk, Canadian Supreme Court Chief Justice Beverley McLachlin (2002-03). *Publications*: Co-Author with James M. Finberg, "New Overtime Regulations Require Heightened Vigilance," *San Francisco Attorney Magazine*, Spring 2004; "Free Association: The United States Experience," with W. Michael Reisman, *Texas International Law Journal*, Vol. 39, No. 1 (Fall 2003); "Associate Statehood: Principles and Prospects," *Faroese Law Review*, Vol. 3, No. 1 (May 2003); "The Challenge of Building an Inter-Communal Rule of Law in Helen Hunt Jackson's *Ramona*," *Law and Literature*, Vol. 15, No. 1 (Spring 2003); "Victim or Vamp? Images of Violent Women in the Criminal Justice System," *Columbia Journal of Gender and Law*, Vol. 11, No. 1 (Spring 2002); "Crafting the International Criminal Court: Trials and Tribulations in Article 98(2)," *UCLA Journal of International Law and Foreign Affairs*, Vol. 6, No. 1 (Spring/Summer 2001); "National Self-Determination in Historical Perspective 1789/1989: Insights from the French Revolution for Today's Debates," *International Studies Review*, Vol. 2, Issue 3 (Fall 2000); "The 'False Promise' of Civic Nationalism," *Millennium: Journal of International Studies*, Vol. 28, No. 2 (1999); "Nationalism and War in the French Revolution," *The ASEN Bulletin*, No. 17 (Summer 1999); "Power and Identity in Nationalist Conflicts," *Oxford International Review*, Vol. VIII, No. 2 (Spring 1997). *Member*: State Bar of California; American Bar Association (Section of Litigation); Bar Association of San Francisco; Association of Trial Lawyers of America; American Society of International Law.

**KRISTEN E. LAW**, born Parkersburg, West Virginia, April 3, 1974. Admitted to practice in California, 2002. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2002); Executive Editor, *Ecology Law Quarterly*; Moot Court Advocacy Award; Moot Court Board; Hopi Appellate Clinic; Ohio Wesleyan University (B.A., *summa cum laude*, 1995); Presidential Scholar. *Member*: Phi Beta Kappa; State Bar of California.

**CHRISTOPHER K. LEUNG**, born Oakland, California, January 5, 1974. Admitted to practice in California, 2000. *Education*: University of California, Hastings College of the Law (J.D., 2000); University of California Berkeley (B.A., 1996). *Employment*: Law Clerk to Judge Oliver W. Wanger, U.S. District Court, Eastern District of California, 2000-01; Judicial Extern to Magistrate-Judge James Larson, U.S. District Court, Northern District of California, Spring 2000. *Publications*: Contributing Author, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser editor in chief, 2003). *Member*: State Bar of California; American Bar Association; Asian American Bar Association; Association of Trial Lawyers of America; Bar Association of San Francisco.

**DAVID MARCUS**, born Rochester, New York, March 23, 1976. Admitted to practice in New York, 2003; California, 2004. *Education*: Yale Law School (J.D., 2002); Articles and book review editor, Yale Journal of International Law; Harvard University (B.A., magna cum laude, 1998). *Employment*: Law Clerk to Honorable Allyne R. Ross, United States District Judge, Eastern District of New York, 2002-03. *Publications*: "Famine Crimes in International Law," *American Journal of International Law*, April 2003. *Member*: State Bar of New York.

**PAUL A. MOORE III**, born Kailua, Hawaii, January 1, 1966. Admitted to practice in Maryland. *Education*: University of Virginia (J.D., 1998); George Mason University -- Institute for Conflict Analysis and Resolution (M.S.C.A.R., 1994); Georgetown University (B.S.F.S., 1990). *Employment*: Trial Attorney, U.S. Department of Justice - Antitrust Division, 1998-2004. *Member*: State Bar of Maryland, American Bar Association.

**SCOTT P. NEALEY**, born Champaign, Illinois, July 28, 1966. Admitted to practice in California, 1997; U.S. District Court, Northern District of California, 1998; U.S. District Court, Eastern District of California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Central District of California, 2000. *Education*: Boalt Hall School of Law, University of California (J.D., 1996); University of California at Berkeley (B.A., 1988). *Employment*: Law Clerk to Chief Justice Joseph R. Weisberger, Supreme Court of Rhode Island, 1996-97. *Publications*: Contributing Author, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser editor in chief, 2003). *Member*: Bar Association of San Francisco; State Bar of California.

**REBECCA POATE**, born Summit, New Jersey, July 11, 1973. Admitted to practice in California, 2001; U.S. Court of Appeals, Ninth Circuit, 2001; U.S. District Court, Central District of California, 2001; U.S. District Court, Northern District of California, 2002. *Education*: University of California, Hastings College of Law (J.D., *magna cum laude*, 2000); Hastings Law Journal, 1998-2000; Order of the Coif; Williams College (B.A., *cum laude*, 1995). *Employment*: Swanson & McNamara LLP, 2004; Caldwell, Leslie, Newcombe & Pettit, 2001-2003; Law Clerk to Honorable Melvin Brunetti, U.S. Court of Appeals, Ninth Circuit, 2000-2001. *Publications*: "Beyond Relevant Conduct: The Federal Sentencing Commission's

(In)discretion," 51 *Hastings Law Journal* 1363 (2000). *Member*: California Bar Association; American Bar Association.

**DANIEL H. ROSE**, born New Rochelle, New York, June 30, 1958. Admitted to practice in California, 1984; U.S. District Court, Northern District of California, 1984. *Education*: University of California, Hastings College of Law (J.D., 1984); Constitutional Law Quarterly (1983-1984); University of Colorado at Boulder (B.A., Economics, *Magna Cum Laude, Phi Beta Kappa*, 1980). *Employment*: Judicial Extern, Honorable Thelton E. Henderson, United States District Judge, Northern District of California, 1984. *Publications*: "National Beverage Container Deposit Legislation: A Cost-Benefit Analysis," 12 *Journal of Environmental Systems* 71 (1982-83) *Member*: State Bar of California; Bar Association of San Francisco.

**JAHAN C. SAGAFI**, born Philadelphia, Pennsylvania, December 26, 1971. Admitted to practice in California, 2003. *Education*: Harvard Law School (J.D., 2001); Senior Editor, *Harvard Civil Rights-Civil Liberties Law Review*, 1999-2001; President, Board of Student Advisers; Harvard College (B.A., *magna cum laude*, 1994). *Employment*: Law Clerk to Judge William W Schwarzer, U.S. District Court, Northern District of California, 2001-02. *Member*: State Bar of California.

**NIREJ SEKHON**, born Long Beach, California, July 3, 1973. Admitted to practice in California, 2001; Washington, 2002. *Education*: New York University School of Law (J.D., 2000); Associate Editor, NYU Law Review; Cornell University (B.A. Economics, 1995; B.A. Government, 1995). *Publications*: "A Birthright Rearticulated: The Politics of Bilingual Education," 74 *NYU Law Review* 1407 (1999). *Employment*: Staff Attorney, The Defender Association, 2002-2004; Law Clerk to Honorable M. Margaret McKeown, Ninth Circuit Court of Appeals, 2001-02; Law Clerk to Hon. Carlos Moreno, U.S. District Court, Central District of California, 2000-01. *Member*: State Bar of California.

**DANIEL E. SELTZ**, born Alexandria, Virginia, April 24, 1974. Admitted to practice in New York, 2004. *Education*: New York University School of Law (J.D., 2003); *Review of Law and Social* Change, Managing Editor; Hiroshima University (Fulbright Fellow, 1997-98); Brown University (B.A., *magna cum laude*, Phi Beta Kappa, 1997). *Employment*: Law Clerk to Honorable John T. Nixon, U.S. District Court, Middle District of Tennessee, 2003-04. *Publications*: "Remembering the War and the Atomic Bombs: New Museums, New Approches," in *Memory and the Impact of Political Transformation in Public Space* (Duke University Press, 2004), originally published in *Radical History Review*, Vol. 75 (1998); "Issue Advocacy in the 1998 Congressional Elections," with Jonathan S. Krasno (Urban Institute, 2001); *Buying Time: Television Advertising in the 1998 Congressional Elections*, with Jonathan S. Krasno (Brennan Center for Justice, 2000); "Going Negative," in *Playing Hardball*, with Kenneth Goldstein, Jonathan S. Krasno and Lee Bradford, (Prentice-Hall, 2000).

**ERIK L. SHAWN**, born New York, New York, May 3, 1970. Admitted to practice in New York, 1996. *Education*: Fordham University School of Law (J.D., 1995); Brandeis University (B.A., *cum laude*, 1992). *Member*: State Bar of New York; American Bar Association; New York State Bar Association - Entertainment, Arts and Sports Law Section; New York County Lawyers Association - Entertainment, Media, Intellectual Property and Sports

Law Section - Co-Chair, Sports and Law Committee; Intellectual Property Committee; Co-Chair, Brandeis Lawyers Network; Fordham Law School - Recent Graduates Committee.

*GENA E. WILTSEK*, born New York, New York, March 19, 1973. Admitted to practice in New York, 2001; District of Columbia, 2002; U.S. District Court for the District of Columbia, 2003. *Education*: University of Michigan Law School (J.D., 1999); Associate Editor, *Michigan Journal of Law Reform*; Yale University (B.A., with distinction in Political Science, 1995). *Employment*: Bernabei & Katz, PLLC (2000-2004). *Member*: American Bar Association; New York State Bar Association; District of Columbia Bar.


Notice on the Firm's AV Rating: AV is a registered certification mark of Reed Elsevier Properties, Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies. Martindale-Hubbell is the facilitator of a peer review process that rates lawyers. Ratings reflect the confidential opinions of members of the Bar and the Judiciary. Martindale-Hubbell Ratings fall into two categories – legal ability and general ethical standards.