UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Judge Patti B. Saris |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
## FOR ENTRY OF PROTECTIVE ORDER

Members of the Plaintiffs' Class Steering Committee, Members of the Plaintiffs' Non Class Steering Committee and Plaintiffs' Liaison Counsel (collectively, "Plaintiffs' Representatives") oppose the Defendants' motion to enter a protective order to the extent that the proposed order contains provisions that this Court refused to enter in United States ex. rel. Franklin v. Parke-Davis, a Division of Warner Lambert, No. 96-11651-PBS (D. Mass). The reasons in support of the Plaintiffs' Representatives' opposition are set forth herein.

### Procedural Background

Pursuant to the Court's instruction at the initial conference in this matter, held on Tuesday November 23, 2004, the Plaintiffs' Representatives have conferred with counsel for Defendants in an attempt to draft a protective order that will govern all parties' production of discovery materials. While Plaintiffs' Representatives and counsel for Defendants were able to agree on most points, the parties were unable to agree on two points, both of which were litigated before this Court in the Franklin litigation. Accordingly, the parties agreed to submit a Proposed Protective Order which contained the disputed provisions in brackets. This procedure allows the Court to identify easily the

disputed provisions and to strike any language it decides to not insert in the final order. The parties also agreed that Defendants would move for their version of the Protective Order, but the parties' briefs would focus on the two disputed provisions.

The first dispute concerns whether the Protective Order governs all material produced in discovery or only confidential material produced by the parties and witnesses. Defendants believe the scope of the protective order should apply to non-confidential material. Plaintiffs believe this broad, over-inclusive provision would improperly restrict distribution of non-confidential material that is not eligible for protection under Fed.R.Civ.P. 26 (c). This Court addressed this precise issue in United States ex. rel. Franklin v. Parke-Davis, 210 F.R.D. 257 (D. Mass 2002) ("Franklin II") when it ruled it was improper to include such provisions in a protective order. The language at issue in this dispute is found in Paragraph 5 of the Stipulated Protective Order.

The second issue before the Court is whether a party may designate as confidential documents which they knowingly distributed to third parties. Defendants seek the ability under the protective order to designate such materials as confidential and the Plaintiffs' Representatives oppose. This issue was litigated in Franklin before Magistrate Cohen and Plaintiffs' Representatives seek to include language in the protective order similar to the language required by the Magistrate.[1] The language set forth in proposed paragraph 3(c) of the Stipulated Protective Order concerns this dispute.

---

[1] A copy of the Protective Order in Franklin, as originally entered by Magistrate Cohen, is attached as Exhibit A. The Court modified the protective order in response to the Relator's appeal from the Magistrate's Order in its February 6, 2002 Discovery Order, a copy of which is attached as Exhibit B. The Court modified the Protective Order a second time in response to an intervention request by The New York Times Company and the National Broadcasting Company. That order is contained within Franklin II, 210 F.R.D at 261.

**ARGUMENT**

A.    **Defendants Have Failed To Demonstrate Why Dissemination Of Non-Confidential Materials Should Be Restricted**

Fed.R.Civ.P. 26(c)(7) expressly provides for protection of trade secrets and "other confidential research, development, or commercial information." The proposed Stipulated Protective Order automatically provides this protection by providing special treatment for documents and information that fall within this category, including substantial limitation of access. See Stipulated Protective Order at ¶¶ 3, 6. However, Defendants also wish to restrict dissemination of materials which are not trade secrets or otherwise eligible for protection of Rule 26(c)(7). Indeed, they wish to restrict dissemination of every document they produce in discovery, no matter how mundane or public. Further, the language Defendants wish to insert in paragraph 5 of the Stipulated Protective Order is virtually identical to language the Court struck from the Protective Order in Franklin II. The Court properly ruled that such language violated the parties' First Amendment rights. If the Court felt compelled as a matter of law and discretion to strike such language from an existing protective order, it should not permit similar language to be included in the protective order to be entered in this case.

Defendants attempt to convince the Court that the language they request is "standard", but no authority from this Circuit so holds. Indeed, in Franklin II, this Court ruled that blanket protective orders are not favored and recognized their potential to violate both the media and the plaintiffs' First Amendment rights. 210 F.R.D. at 259. Given the potential for an over broad protective order to impinge upon important constitutional rights, the Court ruled in Franklin II that the Defendants bear the burden to establish good cause for the entry of such an order. Id. at 260. As in Franklin

II, Defendants have failed to surmount this hurdle. They have merely parroted the rationale for an over broad order which this Court rejected in the earlier action.

Defendants summarily assert that prohibiting the receiving parties' from asserting their constitutional right to disseminate non-confidential material will speed production of documents because the parties responding to discovery will not have to perform a careful review for confidentiality purposes. The very same rationale was proffered in <u>Franklin</u> and rejected. The Court noted that Defendants were represented by sophisticated counsel (the same counsel, indeed, who represent Defendants in this action) who zealously protected Defendants' confidential information. There is no reason to believe such practices will cease in this case. Moreover, as in <u>Franklin II,</u> Defendants have failed to identify any type of non-confidential responsive documents that would not be produced if the Court fails to restrict disclosure of discovery materials.

Defendants' rationale for protection is merely a pretext to keep unflattering documents from coming to light. The Court repeatedly observed such behavior in <u>Franklin</u> when Defendants repeatedly stamped as confidential obsolete and dated materials whose disclosure could never have any competitive impact. Many of those materials will be also be produced in this case. If the Court found it unnecessary and disruptive to restrict such material in <u>Franklin</u>, there is no reason why the same sorts of materials should be restricted here. Indeed, the Court found such an order would be over inclusive in violation of the First Amendment in <u>Franklin II,</u> 210 F.R.D. at 261, and Defendants have not presented any facts or legal argument to suggest why that holding would not apply here.

Defendants attempt to distinguish <u>Franklin II</u> on the basis that it was a qui tam action and the plaintiff in that action was acting on behalf of the United States. However, when the Court acknowledged that the public interest favored a narrow protective order in <u>Franklin II</u>, it did not rely

4

upon the plaintiff's status as a relator.  Instead, the Court noted that the public interest favored "discussing alleged fraudulent practices."  210 F.R.D. at 261.  Here too, the plaintiffs' allegations concern alleged fraudulent conduct with as far reaching effect as the allegations in <u>Franklin</u>.

The Court has before it class and individual actions which allege that Defendants' misrepresentations caused thousands of consumers and numerous health insurers to pay for a drug that was ineffective for numerous uses.  Moreover, the Defendants' admitted practice of marketing Nuerontin for off-label uses is highly controversial and information about such practices is vital for an intelligent policy debate about whether and when drug companies should provide information about unapproved uses for their products.  Indeed, given recent headlines concerning the FDA's limited ability to monitor safety and efficacy data once a drug has been approved and the effect of drug company marketing on the overutilization of prescription medications[2], the public interest unquestionably favors the dissemination of non-confidential information on these important public policy issues.

It is important to note that unlike <u>Franklin</u>, in these cases many of the plaintiffs also have confidential and sensitive business information that will likely have to be produced in this litigation. The Third Party Payor plaintiffs, many of whom are sizable health insurance companies, have the same concerns about disclosure of their confidential information as Defendants, but they have recognized that the confidentiality provisions of the Stipulated Protective Order provide sufficient protection to safeguard legitimate confidentiality concerns.  The fact that plaintiffs who have the

---

[2]        See e.g. "Medicine Fueled by Marketing Intensified Trouble for Pain Pills", The New York Times, December 19, 2004, Section 1, Page 1; "F.D.A. Failing In Drug Safety, Official Asserts", The New York Times, November 19, 2004, Section A, Page 1.

same competitive concerns as the Defendants support the narrower order proves that such an order

is a workable compromise for both the individual and corporate parties involved in this litigation.[3]

**B.     Documents and Information Knowingly Given To Third Parties Are Not Confidential**

The parties in <u>Franklin</u> also disputed whether documents provided to third parties could be

designated "Confidential" under the provisions of the protective order in that case.  This point was

argued before Magistrate Cohen who ruled in favor of narrowing the confidentiality provisions.  He

added paragraph 2(b) to the Protective Order in that case, which stated:

> A party may not designate as "Confidential" information contained in
> documents that are already in the possession of a third party even if the
> documents contain the party's "Confidential" information.

The Defendants did not appeal from the Magistrate's ruling.  In any event, this Court confirmed that

section of the Magistrate's order in its Discovery Order of February 6, 2002.[4]

Defendants' do not address why materials not deemed to be confidential in <u>Franklin</u> should

be found confidential here.  Indeed, given the Court's frustration with over-designation in the earlier

action, it makes no sense to add even more grounds for sealing documents.  Moreover, the

suggestion by Defendants is easily prone to abuse.  The Defendants' proposed language does not

define what constitutes a "confidentiality agreement."  Oral agreements would literally qualify.

---

[3]     Contrary to the intimations in Defendants' memorandum in support of their motion, the Plaintiffs' liaison counsel and all counsel to the proposed steering committees, class and non-class, support the narrower protective order for which this memorandum argues.  Defendants are mistaken when they contend that Greene & Hoffman, the firm selected by the steering committees to negotiate the protective order, only represented their individual client when they discussed the proposed order with counsel for Defendants.  Greene and Hoffman conferred with all proposed steering committee counsel during the discussions and the positions they took in the negotiations had been approved by the committees and the liaison counsel.

[4]     The Court affirmed all sections of the Magistrate's order not otherwise modified by the Court.  See Exhibit B, ¶ 5.

Unstated understandings between parties might also qualify. Indeed, a practice within the industry not to disclose materials to third parties could be deemed to be a "confidentiality agreement" since both parties understood there would be no additional disclosures. When faced with such diaphanous agreements, any party challenging confidentiality will not be able to prove such an agreement does not exist, even when disclosure of the information would have no competitive effect upon the party claiming confidentiality.

The Plaintiffs' Representatives are willing to compromise on this point. They propose a modification to the language found in ¶ 3(c) of the Stipulated Protective Order which would allow confidential designation for material explicitly provided to third parties with a requirement of confidential treatment. The compromise would protect the legitimate confidentiality expectations of parties, while prohibiting wholesale confidential designation merely because one party assumed the documents would be kept confidential. The compromise language proposed by the Plaintiffs' Representatives follows, with the underlined language representing the compromise language proposed by the Plaintiffs' Representatives.

> A party may not designate as "Confidential" information contained in documents which are already in the possession of a third party even if the documents contain information which would otherwise constitute Confidential Information, unless such documents were provided to the third party (a) subject to the terms of a protective order entered by a court of competent jurisdiction; or (b) pursuant to a writing requiring the information to be maintained in a confidential manner.

Plaintiff Representatives believes that the compromise language meets most of the concerns of the Defendants.

## CONCLUSION

Wherefore, for the reasons set forth above, the Plaintiffs' Representatives request the Court to limit the provisions of the Protective Order to "Confidential Materials" as opposed to "Discovery Materials," and to include proposed paragraph 3(c) of the Stipulated Protective Order with the compromise language proposed in Section B infra in the final version of the Court's order.

By their attorneys,

*Proposed Plaintiffs' Liaison counsel*

By:     /s/ **Thomas M. Sobol**
        Thomas M. Sobol
        Hagens Berman LLP
        One Main Street, 4th Floor
        Cambridge, MA 02142

*Proposed Members of the*
*Class Plaintiffs' Steering Committee*

By:     /s/ **Don Barrett**
        Don Barrett, Esquire
        Barrett Law Office
        404 Court Square North
        P.O. Box 987
        Lexington, MS 39095


By:     /s/ **Daniel Becnel, Jr.**
        Daniel Becnel, Jr., Esquire
        Law Offices of Daniel Becnel, Jr.
        106 W. Seventh Street
        P.O. Drawer H
        Reserve, LA 70084

By:     **/s/ James Dugan**
James Dugan, Esquire
Dugan & Browne
650 Poydras St., Suite 2150
New Orleans, LA 70130


By:     **/s/ Thomas M. Greene**
Thomas Greene, Esquire, BBO # 210020
Greene & Hoffman
125 Summer Street
Boston, MA 02110


By:     **/s/ Barry Himmelstein**
Barry Himmelstein, Esquire
Lieff Cabraser Heimann & Bernstein
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339


*Proposed Members of the*
*Plaintiffs' Non-Class Steering Committee*


By:     **/s/ Richard Cohen**
Richard Cohen, Esquire
Lowey Dannenberg Bemporad
& Selinger, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY  10601


By:     **/s/ Linda P. Nussbaum**
Linda P. Nussbaum, Esquire
Cohen Milstein Hausfeld & Toll
150 East 52nd Street
Thirteenth Floor
New York, NY 10022

Date:  January 4, 2005

9