UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re:   NEURONTIN MARKETING AND :
        SALES PRACTICES LITIGATION :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   MDL Docket No. 1629
:
THIS DOCUMENT RELATES TO: :   Master File No. 04-10981
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Judge Patti B. Saris
:
HARDEN MANUFACTURING CORPORATION; :
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, :
dba BLUECROSS/BLUESHIELD OF LOUISIANA; UNION :
OF OPERATING, LOCAL NO. 68 WELFARE FUND; :
ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; :
GERALD SMITH; and LORRAINE KOPA, on behalf of :
themselves and all others similarly situated, v. PFIZER INC. and :
WARNER-LAMBERT COMPANY. :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
THE GUARDIAN LIFE INSURANCE COMPANY OF :
AMERICA v. PFIZER INC. and :
:
AETNA, INC. v. PFIZER INC. :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW OF PFIZER INC. AND WARNER-LAMBERT COMPANY
IN SUPPORT OF THEIR MOTIONS TO DISMISS THE AMENDED CLASS ACTION
<u>COMPLAINT AND THE FIRST COORDINATED AMENDED COMPLAINT</u>**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................iii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS....................................................................................................... 3

ARGUMENT ........................................................................................................................... 6

    I.    PLAINTIFFS FAIL TO ALLEGE THAT DEFENDANTS MADE
        ANY FALSE STATEMENTS OR ACTED WITH SCIENTER................................. 6

    II.    PLAINTIFFS FAIL TO PLEAD FACTS
        ESTABLISHING CAUSATION ............................................................................... 11

        A.    All of Plaintiffs' Claims Fail To Satisfy
              Traditional Elements of Proximate Causation .................................................... 11

        B.    The Third-Party Payors Have Failed
              To Plead Causation Under RICO ....................................................................... 13

    III.    PLAINTIFFS FAIL TO ALLEGE A COGNIZABLE INJURY ............................... 14

    IV.    PLAINTIFFS FAIL TO PLEAD OTHER ESSENTIAL
        ELEMENTS OF RICO .............................................................................................. 16

        A.    Plaintiffs Do Not and Cannot Allege Adequately
              that the Alleged Enterprises Are Associations-in-Fact ....................................... 16

        B.    Plaintiffs Have Not Alleged Adequately that
              Defendants Had Control over the Alleged Enterprises ....................................... 21

        C.    Plaintiffs' Predicate Act Allegations Are Inadequate ......................................... 22

**Page**

V.   PLAINTIFFS' CONSUMER FRAUD CLAIMS FAIL
     AS A MATTER OF LAW FOR ADDITIONAL REASONS ................................... 23

     A.   The Third-Party Payors Do Not Have Standing
          Under the New Jersey Consumer Fraud Act ....................................................... 23

     B.   The California Unfair Competition Law
          and the New Jersey Consumer Fraud Act
          Do Not Apply to Non-Residents .......................................................................... 24

     C.   The Coordinated Complaint Fails To State a Claim
          Under the Remaining Consumer Fraud Statutes .................................................. 25

VI.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED
     ON FIRST AMENDMENT GROUNDS ..................................................................... 27

VII. PLAINTIFFS' STATE LAW CLAIMS ARE
     PREEMPTED BY THE FDCA ..................................................................................... 31

     A.   A Federal Statutory Scheme Is Already in Place ................................................. 31

     B.   Congress and the FDA Have Struck a Delicate Balance that
          Would Be Skewed by Permitting These Claims To Advance ............................. 33

     C.   Plaintiffs' State Law Claims Are Predicated
          upon an Alleged Violation of the FDCA ............................................................. 34

VIII. PLAINTIFFS' RICO CLAIMS ARE TIME-BARRED ............................................. 35

CONCLUSION .................................................................................................................... 40

## **TABLE OF AUTHORITIES**

### **Cases**

**Page**

Agency Holding Corp. v. Malley-Duff & Assoc. Inc.,
483 U.S. 143, 107 S. Ct. 2759 (1987) ............................................................. 35

Arruda v. Sears, Roebuck & Co., 310 F.3d 13 (1st Cir. 2002) ..................................... 37

Berkson v. Del Monte Corp., 743 F.2d 53 (1st Cir. 1984)...................................... 36, 37

Blaisdell v. City of Rochester, No. Civ. 97-82-M, 2000 WL 36953
(D.N.H. Oct. 19, 1999)................................................................................ 23

Blue Cross v. SmithKline Beecham Clinical Labs.,
108 F. Supp. 2d 116 (D. Conn. 2000) ............................................................. 39

BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 116 S. Ct. 1589 (1996).................................. 24, 28

Bd. of Trs. of Leland Stanford Jr. Univ. v. Sullivan,
773 F. Supp. 472 (D.D.C. 1991) .................................................................... 28

Bd. of Trs. of the State Univ. of N.Y. v. Fox,
492 U.S. 469, 109 S. Ct. 3028 (1989) .............................................................. 30

Bowdoin Constr. Corp. v. R.I. Hosp. Trust Nat'l Bank,
869 F. Supp. 1004 (D. Mass. 1994), aff'd sub nom.,
Schultz v. R.I. Hosp., 94 F.3d 721 (1st Cir. 1996)....................................... 21

Brehmer v. Planning Bd., 238 F.3d 117 (1st Cir. 2001) .......................................... 31

In re Bridgestone/Firestone, Inc. Tire Prods. Liab. Litig.,
288 F.3d 1012 (7th Cir. 2002)...................................................................... 24

Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341,
121 S. Ct. 1012 (2001) .................................................................... 31, 32, 33, 34, 35

Cent. Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n, 447 U.S. 557,
100 S. Ct. 2343 (1980) ............................................................................. 29

Chapple v. Nat'l Starch & Chem. Co., 178 F.3d 501 (7th Cir. 1999)........................... 36

Churchill Vill., LLC v. G.E. Co., 169 F. Supp. 2d 1119 (N.D. Cal. 2000),
aff'd, 361 F.3d 566 (9th Cir. 2004), cert. denied, 125 S. Ct. 56 (2004)........................ 25

**Page**

City Check Cashing v. Nat'l State Bank, 582 A.2d 809 (N.J. Super. Ct. 1990).......................... 23

Collins v. Safeway Stores, Inc., 231 Cal. Rptr. 638 (Ct. App. 1986) ........................................... 15

Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n,
233 F.3d 981 (7th Cir. 2000)....................................................................................................... 29

Commonwealth of Mass. v. Mylan Labs., No. Civ.A. 03-11865-PBS,
2005 WL 352556, at *7 (D. Mass. Feb. 4, 2005) ........................................................................ 11

Damon v. Sun Co., 87 F.3d 1467 (1st Cir. 1996) ........................................................................ 11

Danca v. Taunton Sav. Bank, 429 N.E.2d 1129 (Mass. 1982) ...................................................... 7

Day v. AT&T Corp., 74 Cal. Rptr. 2d 55 (Ct. App. 1998) ........................................................... 15

Desiano v. Warner-Lambert Co., 326 F.3d 339 (2d Cir. 2003) ................................................... 13

Doyle v. Hasbro, Inc., 103 F.3d 186 (1st Cir. 1996)...................................................................... 7

Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S. Ct. 1375 (1976) ............................................... 8

Fink v. Ricoh Corp., 839 A.2d 942 (N.J. Super. Ct. 2003)......................................... 11, 12, 24, 25

In re Firearm Cases, 24 Cal. Rptr. 3d 659 (Ct. App. 2005) ........................................................ 11

Food Lion Inc. v. Capital Cities, 194 F. 3d 505 (4th Cir. 1999).................................................. 29

In re Ford Motor Co. Bronco II Prod. Liab. Litig., 177 F.R.D. 360 (E.D. La. 1997) .................. 25

In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,
174 F.R.D. 332 (D.N.J. 1997) ..................................................................................................... 24

George Lussier Enters. v. Subaru of New Eng., Inc., Civ. No. C-99-109-B,
2000 WL 1466132 (D.N.H. Jan. 13, 2000)................................................................................. 20

Gonzalez-Bernal v. United States, 907 F.2d 246 (1st Cir. 1990).................................................. 36

Gonzalez v. United States, 284 F.3d 281 (1st Cir. 2002)............................................................... 37

Gustafson v. Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,
288 F.3d 1012 (7th Cir. 2002), cert. denied, 537 U.S. 1105 (2003) ............................................ 15

Healy v. Beer Inst., 491 U.S. 324, 109 S. Ct. 2491 (1989)........................................................... 25

**Page**

Heindel v. Pfizer, Inc., Civ. A. No. 02-3348(SRC), 2004 WL 1398024
(D.N.J. June 7, 2004) ....................................................................................... 12

Hines v. Davidowitz, 312 U.S. 52, 61 S. Ct. 399 (1941) ................................... 31

Hodas v. Sherburne Powers & Needham, P.C., 938 F. Supp. 60 (D. Mass. 1996) ...................... 35

Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258,
112 S. Ct. 1311 (1992) ................................................................................ 11, 13

Kavky v. Herbalife Int'l of Am., 820 A.2d 677 (N.J. Super. Ct. 2003) ........................ 23

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
191 F.3d 229 (2d Cir. 1999) ........................................................................ 13, 14

Lares Group v. Tobin, 47 F. Supp. 2d 223 (D.R.I. 1999),
aff'd 221 F.3d 41 (1st Cir. 2000) ....................................................................... 38

Lares Group II v. Tobin, 221 F.3d 41 (1st Cir. 2000) ....................................... 35

Libertad v. Welch, 53 F.3d 428 (1st Cir. 1995) ........................................... 18, 20

In re: Lupron(R) Mktg. & Sales Practices Litig.,
295 F. Supp. 2d 148 (D. Mass. 2003) ................................................... 7, 18, 19, 20

In re Managed Care Litig., 298 F. Supp. 2d 1259 (S.D. Fla. 2003) ...................... 23, 24

In re Mastercard Int'l Inc., 132 F. Supp. 2d 468 (E.D. La. 2001),
aff'd, 313 F.3d 257 (5th Cir. 2002) .................................................................... 19

Miller v. Johnson, 515 U.S. 900, 115 S. Ct. 2475 (1995) ................................. 27

Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir. 1991) ................................. 21

N.J. Citizen Action v. Schering-Plough Corp.,
842 A.2d 174 (N.J. Super. Ct. 2003) ............................................................. 12, 13

Norwest Mortgage, Inc. v. Superior Court, 85 Cal. Rptr. 2d 18
(Ct. App. 1999) ........................................................................................ 24, 25

Oliveira v. Amoco Oil Co., 776 N.E.2d 151 (Ill. 2002) ...................................... 13

In re Pharm. Indus. AWP Litig., 307 F. Supp. 2d 196 (D. Mass. 2004) .......... 16, 17, 18, 34

**Page**

Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S. Ct. 2965 (1985)......................................24

Productores Asociados de Café Rio Claro v. Barnett, No. 98 Civ. 499,
1999 WL 287389 (S.D.N.Y. May 7, 1999)...................................................................................8

Reves v. Ernst & Young, 507 U.S. 170, 113 S. Ct. 1163 (1993)..................................................21

In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61 (S.D.N.Y. 2002) ..............................................15

In re Rezulin Prods. Liab. Litig., Judicial Council Proceeding No. 4122
(slip op.) (Cal. Sup. Ct. Apr. 29, 2003) ......................................................................................15

R.I. Laborers' Health & Welfare Fund ex rel. Trs.
v. Philip Morris, Inc., 99 F. Supp. 2d 174 (D.R.I. 2000) .............................................................14

Rodriguez v. Banco Cent. Corp., 917 F.2d 664 (1st Cir. 1990).....................................................35

Rotella v. Wood, 528 U.S. 549, 120 S. Ct. 1075 (2000).................................................................35

Salois v. Dime Sav. Bank, 128 F.3d 20 (1st Cir. 1997) ..................................................................36

Smith v. SBC Communs., Inc., 839 A.2d 850 (N.J. 2004) .............................................................15

Spence v. Glock, GES.m.b.H., 227 F.3d 308 (5th Cir. 2000)...................................................24, 25

Summit Props. v. Hoechst Celanese Corp., 214 F.3d 556 (5th Cir. 2000) ...................................12

Timberline Northwest v. Paul Hill, 141 F. 3d 1179 (9th Cir. 1998)..............................................20

Trollinger v. Tyson Foods, Inc., 370 F.3d 602 (6th Cir. 2004).....................................................14

United States v. Arlen, 947 F.2d 139 (5th Cir. 1991) .....................................................................32

United States v. Bradshaw, 840 F.2d 871 (11th Cir. 1988) ...........................................................32

United States ex rel. Franklin v. Parke Davis, No. 96 Civ. 11651 (D. Mass.)..............................11

Universal City Studios v. Corley, 273 F. 3d 429 (2d Cir. 2001) ...................................................27

In re Universal Serv. Fund Tel. Billing Practices Litig.,
300 F. Supp. 2d 1107 (D. Kan. 2003) ..........................................................................................26

Va. State Bd. of Pharmacy v. Virginia Citizen's Consumer Council,
425 U.S. 748, 96 S. Ct. 1817 (1976).............................................................................................29

**Page**

Volin v. Bd. of Pub. Accountancy, 661 N.E. 2d 639 (Mass. 1996) ................................................ 30

Wash. Legal Found.v. Friedman, 13 F. Supp. 2d 51 (D.D.C. 1998),
vacated on other grounds by 202 F.3d 331 (D.C. Cir. 2000) ........................................... 28, 29, 30

Weaver v. Chrysler Corp., 172 F.R.D. 96 (S.D.N.Y. 1997) ......................................................... 26

Wells Fargo Bank Northwest v. Taca Int'l Airlines,
247 F. Supp. 2d 352 (S.D.N.Y. 2002) .......................................................................................... 8

West 79th St. Corp. v. Congregation Kahl Minchas Chinuch,
No. 03 Civ. 8606, 2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004) ............................................... 22

Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003) ........................................ 15

**Statutes & Rules**

18 Pa. C.S. § 4117(a)(2) ............................................................................................................... 7

18 Pa. C.S. § 4117(g) .................................................................................................................. 11

18 U.S.C. § 1961(1) ..................................................................................................................... 23

18 U.S.C. § 1962(c) ..................................................................................................................... 21

21 C.F.R. § 5.35 ........................................................................................................................... 32

21 C.F.R. § 312.7 ............................................................................................................... 28, 29, 34

21 U.S.C. § 331 ............................................................................................................................ 32

21 U.S.C. § 331(a) ....................................................................................................................... 32

21 U.S.C. § 333 ............................................................................................................................ 32

21 U.S.C. § 333(a) ....................................................................................................................... 32

21 U.S.C. § 355(d) ......................................................................................................................... 7

21 U.S.C. § 372 ............................................................................................................................ 32

21 U.S.C. § 396 ............................................................................................................................ 33

**Page**

42 Pa. C.S. § 5524(7) ........................................................................................ 39

Ala. Code § 8-19-10(e) (2005) ......................................................................... 26

Ala. Code § 8-19-10(f) (2005) .......................................................................... 26

Ala. Code § 27-1-10.1 (2005) ........................................................................... 16

Cal. Civ. Code § 1782 (2005) ........................................................................... 26

Cal. Civ. Code § 1783 ....................................................................................... 39

Fed. R. Civ. P. 9(b) ............................................................................................. 1

Fed. R. Civ. P. 12 (b)(6) ..................................................................................... 1

Ga. Code § 10-1-399(b) .................................................................................... 26

Iowa Code Ann. § 714.16(7) (2003) ................................................................ 26

Md. Ins. Code Ann. § 15-804 (2005) ............................................................... 16

Mass. Gen. Laws. Ann. ch. 260 § 2A .............................................................. 39

Miss. Code Ann. § 75-24-15(4) (2004) ............................................................ 26

Mont. Code Ann. § 30-14-133(1) (2003) ......................................................... 26

N.D. Cent. Code § 26.1-36-06.1 (2005) ........................................................... 16

N.J. Stat. § 2C:21-10(a) (2004) ........................................................................ 22

N.J. Stat. § 17B:26-2.1g (2004) ....................................................................... 16

N.J. Stat. § 26:1A-36.9 (2004) ......................................................................... 16

N.J. Stat. § 56:8-22 (2004) ............................................................................... 26

Ohio Rev. Code Ann. § 1345.01(A) (2005) ..................................................... 26

R.I. Gen. Laws § 6-13.1-5.2 (2004) ................................................................. 26

S.C. Code Ann. § 39-5-140(a) (2004) .............................................................. 26

**Page**

Tenn. Code Ann. § 56-7-2352 (2004) ......................................................................... 16

Tex. Bus. & Com. Code Ann. § 17.505 (2004)........................................................... 26

W. Va. Code § 46A-6-102(b) (2004) .......................................................................... 26

Wyo. Stat. § 40-12-102(ix) (2004).............................................................................. 26

## Other Authorities

James M. Beck & Elizabeth D. Azari, <u>FDA, Off-Label Use, and
Informed Consent: Debunking Myths and Misconceptions,</u>
53 Food & Drug L.J. 71 (1998)................................................................................... 33

<u>Black's Law Dictionary</u> (7th ed. 1999) ....................................................................... 8

U.S. Dep't of Health and Human Services, Food and Drug
Administration, Request for Comment on First Amendment
Issues, 67 Fed. Reg. 34,942 (2002) ........................................................................... 28

John E. Nowak & Ronald Rotunda, <u>Constitutional Law</u> (7th ed., 2000)...................... 28

Defendants Pfizer Inc. ("Pfizer") and Warner-Lambert Company ("Warner-Lambert") respectfully submit this memorandum of law in support of their motions to dismiss the Amended Class Action Complaint (the "Class Complaint") and the First Coordinated Amended Complaint (the "Coordinated Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## PRELIMINARY STATEMENT

Plaintiffs in these actions fail in their attempt to convert allegations of off-label promotion of Neurontin into federal and state law claims involving false statements and fraud. Plaintiffs spill a considerable amount of ink in the 235 pages that comprise their complaints by including innumerable and irrelevant names, dates, and locations, yet fail to plead the most basic facts with respect to critical elements of their claims.

Plaintiffs assert that defendants made (and caused others to make) false statements to physicians about Neurontin's effectiveness for certain off-label uses. The complaints, however, neither allege that Neurontin is ineffective for such uses nor contain facts that would support such a conclusion. This failure eviscerates plaintiffs' conclusory allegations that defendants lied or misrepresented any material fact. Equally fatal to plaintiffs' claims of fraud and deception is plaintiffs' failure to plead facts supporting an allegation of scienter. Even if plaintiffs have pled off-label promotion, they cannot bootstrap those allegations into a claim of fraud without specific allegations that would support a finding of intent to defraud.

Plaintiffs' complaints also lack any factual allegation that statements regarding off-label uses of Neurontin caused plaintiffs to pay for Neurontin. There is no allegation that any alleged misrepresentations were made to *any* of the plaintiffs. Moreover, there is simply nothing in the complaints to connect the alleged off-label promotion to the physicians who wrote prescriptions that plaintiffs paid for or reimbursed. In fact, there is no allegation that any physician prescribed

1

Neurontin without concluding, correctly, that it was an appropriate medical treatment.  In addition to being subject to dismissal on this ground, the third-party payors' claims should be dismissed as too remote because their alleged injuries are derivative of an alleged injury to another party.

Furthermore, plaintiffs fail to allege facts indicating that they suffered any legally cognizable loss.  Plaintiffs in these actions do not assert that they suffered any personal injury. Instead, they seek recovery solely for money used to purchase, or to reimburse others for the purchase of, Neurontin.  By failing to allege that Neurontin is ineffective, plaintiffs cannot allege that they received anything other than a drug that performed entirely as the prescribing doctors expected.  Plaintiffs cannot possibly be entitled to a nationwide refund of all amounts paid for a product that was effective.  This is all the more true for third-party payors that are required by statute or contract to reimburse the costs of off-label prescriptions.

In addition to these fundamental failures, plaintiffs' federal racketeering claims should be dismissed because, among other reasons, the alleged "enterprises" are nothing more than a sprawling collection of entities and individuals – including up to ten separate corporate entities and innumerable physicians – who are not alleged to have known of the allegedly fraudulent nature of the enterprises.  Nor have plaintiffs alleged adequately that defendants controlled the alleged enterprises or committed predicate acts.

Plaintiffs' state consumer fraud claims suffer from additional defects.  For instance, the state statutes under which plaintiffs have elected to proceed do not (and cannot, consistent with due process) apply extraterritorially to non-residents and, therefore, have no relevance to the overwhelming majority of plaintiffs in these actions.  In fact, the New Jersey statute pursuant to which the purported class claims are brought does not even provide a cause of action to the third-

party payors, which clearly fall outside of the category of persons that the statute was intended to protect.

Plaintiffs' claims are barred for three other reasons.  First, imposing liability on defendants for speech between and among physicians would violate the First Amendment by restricting the flow of scientific information about prescription drugs.  Second, plaintiffs' state law claims are barred by the federal preemption doctrine because they conflict with the robust federal regulatory regime governing the marketing of prescription medications to physicians.  Third, because plaintiffs have known about the supposed injuries for which they seek recovery – payments for off-label Neurontin use – for more than four years before they brought suit, their claims are time-barred.

## STATEMENT OF FACTS

The complaints seek recovery for payments made for all off-label prescriptions of Neurontin over a period in excess of ten years.  The Class Complaint was brought on behalf of "[a]ll individuals and entities . . . who . . . paid for Neurontin for indications not approved by the FDA."  (Class Compl. ¶ 255.)  This complaint also asserts claims on behalf of two subclasses: (i) "[a]ll private, non-governmental entities . . . that are at risk . . . to pay or reimburse all or part of the cost of Neurontin prescribed . . . for indications not approved by the FDA," and (ii) "[a]ll individuals . . . who . . . paid for . . . Neurontin, for indications not approved by the FDA."  (Id. ¶¶ 256-57.)  The Coordinated Complaint was brought by four third-party payors seeking to recover amounts that they paid for off-label prescriptions of Neurontin.[1]

---

[1] The term "third-party payors" refers hereafter to the four plaintiffs in the Coordinated Complaint and the entities that comprise the first subclass in the Class Complaint.  The terms "consumers" refers hereafter to the individuals that comprise the second subclass in the Class Complaint.

The complaints allege that Warner-Lambert (and other members of the purported enterprises) made false statements to physicians about Neurontin's efficacy for certain off-label uses.  (Class Compl. ¶¶ 4, 45, 128; Coor. Compl. ¶¶ 3, 37, 87.)[2]  These statements are alleged to be false because defendants purportedly lacked the type of clinical evidence required by the Food and Drug Administration (the "FDA") to approve the drug for these uses.  (Class Compl. ¶¶ 4, 125, 131, 142, 151, 158, 162, 166, 180, 182, 184; Coor. Compl. ¶¶ 99, 103-04, 121, 127, 130, 141, 142.)  The complaints do not allege that (i) defendants claimed that Neurontin was proven to be clinically effective for any off-label use; (ii) Neurontin was ineffective for any off-label use or that evidence exists demonstrating its lack of efficacy; (iii) defendants made any statements regarding Neurontin's efficacy with knowledge that Neurontin was ineffective for the uses in question; or (iv) defendants made any misrepresentations to third-party payors or consumers.

The complaints assert that alleged misrepresentations were made to physicians – not plaintiffs – in three ways.  First, the complaints claim that Warner-Lambert caused the publication of numerous articles in medical and scientific journals.  The complaints identify three such articles.  (Class Compl. ¶¶ 112, 116, 120; Coor. Compl. ¶¶ 80, 109, 118.)  The complaints do not allege that the three cited articles contained misrepresentations regarding Neurontin's effectiveness for off-label uses.  (Class Compl. ¶¶ 112, 116, 120; Coor. Compl. ¶¶ 80, 109, 118.)  The remainder of the allegations relating to publications refers to "intended" articles that are not alleged to have been published.  (Class Compl. ¶¶ 85, 109, 118-19; Coor. Compl. ¶¶ 72, 79, 108-09.)  Second, the complaints allege that Warner-Lambert induced doctors to make favorable

---

[2] The Class Complaint also alleges that defendants committed predicate acts of bribery by allegedly making payments to physicians to influence them to (i) make positive statements to other physicians regarding Neurontin and (ii) to increase their prescriptions of Neurontin.  (Class Compl. ¶ 210.)

4

statements regarding Neurontin at meetings.  (Class Compl. ¶¶ 129, 135, 167; Coor. Compl. ¶¶ 102, 107, 144.)  The complaints provide the names of four doctors who allegedly claimed that Neurontin was effective for an off-label use.  (Class Compl. ¶¶ 129, 135, 167; Coor. Compl. ¶¶ 102, 107, 144.)  The complaints do not contain any facts suggesting that such claims, if made, were untrue or that these physicians or the defendants knew that these statements were false. The remainder of the allegations relating to statements by physicians merely consist of lists of meetings at which off-label uses allegedly were discussed.  Third, the complaints allege that on eleven occasions, Warner-Lambert's sales representatives made sales pitches to individual physicians claiming that Neurontin was effective for an off-label use.  (Class Compl. ¶¶ 134, 148, 156, 171, 181; Coor. Compl. ¶¶ 106, 119, 124, 140.)  No facts are set forth as to the identity of the sales representatives or the physicians.  Further, no facts are alleged setting forth the knowledge or mental state of any of the unnamed sales representatives at the time that they allegedly made the statements.

Both complaints purport to allege the existence of an overarching enterprise – the Off-Label Promotion Enterprise and the Promotion Enterprise – comprised of defendants and seven to ten vendors (including marketing firms and publishers) as well as twenty-eight named, and innumerable unnamed, physicians.  (Class Compl. ¶¶ 104, 273; Coor. Compl. ¶¶ 95, 191.)  The complaints assert that the purpose of the alleged enterprise was to "aid in marketing Neurontin for off-label uses," which purportedly "allowed Defendants to reap unlawful and unfair profits." (Class Compl. ¶¶ 4, 271; see, e.g., Coor. Compl. ¶¶ 192, 205, 218.)  Plaintiffs allege that this enterprise pursued a scheme to "provide favorable information on the off-label use of Neurontin" through meetings and publications.  (Class Compl. ¶ 44; see Coor. Compl. ¶ 30.)  The complaints aver that the vendors "knew that the programs did not provide fair and balanced drug

information" and "[t]he participating physicians knew that failure to provide fair and balanced information meant the information the attending physicians received would be false and misleading."  (Class Compl. ¶ 56; <u>see also</u> Coor. Compl. ¶ 98.)

Both complaints assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and for unjust enrichment.  (Class Compl. ¶¶ 264-303, 317-22; Coor. Compl. ¶¶ 189-300, 323-26.)  The Class Complaint brings additional claims under the New Jersey Consumer Fraud Act (the "NJCFA") and for common law fraud, both of which are also based on alleged misrepresentations.  (Class Compl. ¶¶ 304-09, 310-16.)  The Coordinated Complaint asserts additional claims pursuant to the Pennsylvania Insurance Fraud Statute, California's Unfair Competition Law (the "UCL"), and the consumer fraud statutes of the remaining forty-nine states, the District of Columbia, and the Commonwealth of Puerto Rico, all of which are also based on allegations of fraud.  (Coor. Compl. ¶¶ 313-22, 301-07, 308-12.)

<strong>ARGUMENT</strong>

## I.   PLAINTIFFS FAIL TO ALLEGE THAT DEFENDANTS MADE ANY FALSE STATEMENTS OR ACTED WITH SCIENTER

The heart of plaintiffs' complaints is that defendants and physicians made allegedly fraudulent statements regarding the effectiveness of Neurontin for certain off-label uses in medical journals, in large meetings attended by other physicians, and during one-on-one sales pitches in doctors' offices.  Yet, plaintiffs fail to allege facts demonstrating that any statement regarding Neurontin actually was false or was made with the intent to defraud.  For these reasons, plaintiffs' claims under RICO (based upon alleged predicate acts of mail and wire

6

fraud), common law fraud, the Pennsylvania Insurance Fraud Statute, the NJCFA, and the UCL should be dismissed for failure to plead false statements and scienter.[3]

The complaints in these actions allege that Warner-Lambert and physicians paid by the company made false statements suggesting that Neurontin is effective for certain, specified off-label uses.[4]  Significantly, however, plaintiffs never actually assert that these statements are actually or objectively false because they do not allege that Neurontin is, in fact, ineffective for these off-label uses.  Nor do they set forth any facts that could support such an allegation.

To attempt to overcome this deficiency – which is fatal to their claims – plaintiffs assert that every statement regarding effectiveness implies that clinical trials have been conducted that demonstrate efficacy in a manner that would satisfy the FDA.  As plaintiffs explain:

> In the context of describing properties of approved prescription drugs, the terms 'effective' and 'efficacy' have specific and well-understood meanings.  Because the FDA will only find a pharmaceutical to be effective if the proposed use is supported by substantial evidence consisting of well designed, well controlled clinical trials that establish a causal relationship to a statistically significant degree, 21 U.S.C. § 355(d), a statement that a drug is 'effective,' or 'works,' or 'has been proven to' is understood to mean that well controlled clinical studies support the use.  To make such a statement without clinical proof is misleading.

(Coor. Compl. ¶ 99; see also Class Compl. ¶ 125.)

This explicit attempt to use the FDA's drug approval standard as the benchmark for analyzing the veracity of all statements made regarding Neurontin's effectiveness for off-label

---

[3] See In re: Lupron(R) Mktg. & Sales Practices Litig., 295 F. Supp. 2d 148, 165 (D. Mass. 2003) (RICO); Doyle v. Hasbro, Inc., 103 F.3d 186, 193 (1st Cir. 1996) (common law fraud); Danca v. Taunton Sav. Bank, 429 N.E.2d 1129, 1132-33 (Mass. 1982) (same); 18 Pa. C.S. § 4117(a)(2) (Pennsylvania Insurance Fraud Statute).  In addition, all of plaintiffs' consumer fraud claims, including those under the NJCFA and the UCL, are based on allegations of false statements and intent to defraud.  (Class. Compl. ¶¶ 304-09; Coor. Compl. ¶¶ 302-12.)

[4] These alleged misrepresentations relate to the following eight off-label uses:  pain, restless leg syndrome, diabetic peripheral neuropathy, social phobia, panic disorder, migraine headache, monotherapy, and bipolar disorder.

conditions fails as a matter of law.  A statement is false if it is untrue.  Black's Law Dictionary

618 (7th ed. 1999).  Accordingly, statements that Neurontin is effective are not actionable as

false statements unless plaintiffs plead that Neurontin is ineffective, which they have not done.

Plaintiffs' reliance on the FDA standard also defies common sense.  Plaintiffs nowhere

allege that defendants claimed that Neurontin was proven to be clinically effective for any off-

label use.  A claim that Neurontin is effective is obviously materially different from a claim that

Neurontin has been clinically proven to be effective.  The attempts by plaintiffs to conflate the

two must fail, especially because plaintiffs do not and cannot allege any facts to support the

assertion that physicians assume that every statement by another physician regarding efficacy is

always based on clinical trials as opposed to other information, such as their own experience

treating their own patients.

Under the relevant laws pursuant to which their claims have been brought, plaintiffs must

also allege that defendants acted with scienter.  As the Supreme Court has explained, scienter

"refers to a mental state embracing intent to deceive, manipulate, or defraud."  Ernst & Ernst v.

Hochfelder, 425 U.S. 185, 193 n.12, 96 S. Ct. 1375, 1381 n.12 (1976).  The only "fact" alleged

in support of plaintiffs' conclusory scienter allegations is that defendants were motivated by

money.  (Class Compl. ¶¶ 4, 20; Coor. Compl. ¶ 2.)  Courts repeatedly have rejected this "fact"

in a number of contexts as wholly insufficient to support a claim of fraudulent intent.  See, e.g.,

Wells Fargo Bank Northwest v. Taca Int'l Airlines, 247 F. Supp. 2d 352, 365 (S.D.N.Y. 2002)

("[A] generalized profit motive that could be imputed to any for-profit company, is insufficient

for purposes of inferring scienter."); Productores Asociadoes de Café Rio Claro v. Barnett, No.

98 Civ. 499, 1999 WL 287389, at *4 (S.D.N.Y. May 7, 1999) ("[G]eneralized motives 'which

could be imputed to any publicly-owned, for-profit endeavor, [are] . . . not sufficiently concrete for the purposes of inferring scienter.'" (citations omitted)).

Plaintiffs allege that one way in which Warner-Lambert is liable is through funding the publication of articles in medical and scientific journals.  Specifically, plaintiffs allege that the purported RICO enterprises "caused numerous articles and promotional pieces to be published in medical literature throughout the country misrepresenting the safety, efficacy, effectiveness and usefulness of Neurontin to treat a variety of off-label conditions."  (Coor. Compl. ¶ 31; see also Class Compl. ¶ 43.)  Yet, plaintiffs only identify a total of three published articles in their complaints and nowhere do they allege that these articles falsely claimed that Neurontin was effective for off-label uses.  (Class Compl. ¶¶ 112, 116, 120; Coor. Compl. ¶¶ 80, 109, 118.)  Nor do plaintiffs allege that the authors of these articles intended to defraud anyone.  In fact, the authors of the articles (Drs. Pollack, Gorson, Mellick, and Mellick) are not even alleged to be among the physicians who purportedly participated in the alleged RICO enterprises.  (Class Compl. ¶ 104; Coor. Compl. ¶ 95.)[5]

With respect to statements made by physicians at meetings, plaintiffs fail to allege that any such statement actually was false or was made with scienter.  As an initial matter, plaintiffs allege that only four physicians claimed that Neurontin is effective for an off-label use.  (Class Compl. ¶¶ 129, 135, 167; Coor. Compl. ¶¶ 102, 107, 144.)  Not one of these physicians' statements is alleged to be actually false.  For example, while plaintiffs allege that one physician

---

[5] Unable to allege scienter or to identify any false statements, plaintiffs allege that defendants engaged in "ghostwriting," a practice which they claim "gave the false impression that the article was unbiased and not sponsored by the drug manufacturer."  (Coor. Compl. ¶ 31; see also Class Compl. ¶ 45.)  Plaintiffs have not alleged and cannot allege, however, that defendants were legally required to ensure that "sponsorship" by defendants was disclosed or that any such duty was owed to plaintiffs.

(Dr. Longmire) stated that Neurontin was effective for the treatment of pain (Coor. Compl. ¶ 102; Class Compl. ¶ 129), there is no allegation that Neurontin is not effective for pain.  Nor do plaintiffs plead that Dr. Longmire made this statement with actual knowledge to the contrary or with an intent to defraud.  The same holds true of the two physicians (Drs. Harden and LeRoy) who allegedly claimed jointly at a meeting that Neurontin is effective as monotherapy for the treatment of epilepsy (Class Compl. ¶ 167; Coor. Compl. ¶ 144), as well as of the physician (Dr. Nicholson) who allegedly stated that patients "'will' have their burning sensations relieved" with the use of Neurontin (Class Compl. ¶ 135; Coor. Compl. ¶ 107).[6]  All that is alleged with respect to the numerous other meetings listed in the complaints is that off-label uses were discussed. (See, e.g., Class Compl. ¶¶ 150, 157; Coor. Compl. ¶¶ 120, 126.)

Plaintiffs likewise fail to allege adequately that Warner-Lambert's sales representatives made statements regarding efficacy that were actually false or that were made with an intent to defraud.  (Class Compl. ¶¶ 134, 148, 156, 171-72, 181; Coor. Compl. ¶¶ 106, 119, 124, 140, 147.)  Plaintiffs' complaints include eleven occasions on which sales representatives allegedly said to physicians that Neurontin was effective for a specific off-label use.  Plaintiffs do not identify the sales representatives or the physicians as required under Rule 9(b).  Instead, plaintiffs allege, for example, that an unnamed sales representative stated that Neurontin was "[e]ffective for many types of chronic pain" (Coor. Compl. ¶ 106; Class Compl. ¶ 134) and that another stated that Neurontin was "[e]ffective treatment of bipolar disorder" (Coor. Compl. ¶ 124; Class Compl. ¶ 156).  Nowhere, however, do plaintiffs allege that Neurontin was, in fact,

---

[6] In addition to these four doctors, one other physician is alleged to have claimed that "pain specialists are finding that low dosages of Neurontin are effective" and another is alleged to have made similar statements.  (Class Compl. ¶ 129; Coor. Compl. ¶ 102.)  These statements are likewise not actionable, given the failure to plead contrary facts and scienter.

ineffective for these conditions or that the sales representatives made these alleged statements with scienter.  Thus, even if plaintiffs could prove that one of Warner-Lambert's sales representatives actually made such statements to a physician, absent proof of falsity or intent to defraud, the statements constitute, at most, non-fraudulent off-label promotion.

The failure of plaintiffs to come forward with any facts to support their allegations of false statements and scienter, despite having access to all of the discovery in United States ex rel. Franklin v. Parke Davis, No. 96 Civ. 11651 (D. Mass.), strongly weighs in favor of dismissal with prejudice, not only for failure to plead fraud with particularity pursuant to Rule 9(b), but also for failure to state a claim pursuant to Rule 12(b)(6).

## II.     PLAINTIFFS FAIL TO PLEAD FACTS ESTABLISHING CAUSATION

### A.     All of Plaintiffs' Claims Fail To Satisfy Traditional Elements of Proximate Causation

Plaintiffs fail to plead any causal link between the alleged misconduct and their purported injuries.  All of plaintiffs' claims require causation to be alleged.  Under RICO, plaintiffs must allege with heightened particularity that defendants' acts were the proximate cause of their alleged injury.  See Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 266 n.11, 112 S. Ct. 1311, 1317 n.11 (1992).  Plaintiffs' consumer fraud claims under New Jersey and California law and insurance fraud claims under Pennsylvania law require a showing of causation.  See Fink v. Ricoh Corp., 839 A.2d 942, 958-59 (N.J. Super. Ct. 2003); In re Firearm Cases, 24 Cal. Rptr. 3d 659, 671-72 (Ct. App. 2005); 18 Pa. C.S. § 4117(g).  Similarly, plaintiffs' common law fraud and unjust enrichment claims require proof of causation.  See Damon v. Sun Co., 87 F.3d 1467, 1472 (1st Cir. 1996) (common law fraud); Commonwealth of Mass. v. Mylan Labs., No. Civ.A. 03-11865-PBS, 2005 WL 352556, at *7 (D. Mass. Feb. 4, 2005) (unjust enrichment).

Plaintiffs fail to plead causation because they do not allege facts demonstrating a link between the conduct alleged and their payments for Neurontin. In fact, no allegation connects the alleged fraud to any off-label prescriptions. For example, there are no allegations that consumers Gerald Smith or Lorraine Kopa were prescribed Neurontin as a result of their doctors being exposed to any of the alleged misconduct. (Class Compl. ¶¶ 9-10.) Nor do the third-party payors allege any facts demonstrating that they paid for prescriptions written by doctors as a result of the alleged misconduct. In fact, plaintiffs blithely devote only a single paragraph in each of the complaints to causation. (Class Compl. ¶ 249; Coor. Compl. ¶ 183.)

Where courts have considered claims that false representations caused physicians to write unneeded prescriptions or otherwise artificially inflated the demand for prescription medications, they have held that plaintiffs may not plead or prove causation through a fraud-on-the-market theory. See, e.g., Heindel v. Pfizer, Inc., No. CIV.A. 02-3348(SRC), 2004 WL 1398024, at *14-15 (D.N.J. June 7, 2004) (finding under New Jersey and Pennsylvania law that such a causation theory was "patently absurd" in the context of pharmaceutical drug promotion); N.J. Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 178 (N.J. Super. Ct. 2003) (noting that fraud-on-the-market theory "would virtually eliminate the requirement that there be a connection between the misdeed complained of and the loss suffered"). In fact, no court has accepted the fraud-on-the-market theory outside of the securities context. See Summit Props. v. Hoechst Celanese Corp., 214 F.3d 556, 561 (5th Cir. 2000). Such courts have ruled that *actual proof* of causation is required. See, e.g., Fink, 839 A.2d at 958 ("While reliance need not be proven under the NJCFA, plaintiffs must nevertheless demonstrate that each class member read one or more of the advertisements upon which plaintiffs rely and that one or more of the false advertising and material factual concealments that they allege were contained therein constituted a proximate

cause of 'an ascertainable loss' of money or property."); <u>Oliveira v. Amoco Oil Co.</u>, 776 N.E.2d 151 (Ill. 2002).

Moreover, even if the alleged misrepresentations had been made directly to consumers, causation could not be established.  Because the alleged claims were made "within a highly regulated industry in which the ultimate consumer is not in fact free to act on claims in advertising in any event, the relationship between words used in the advertising and purchase of the product is at best an attenuated one."  <u>N.J. Citizen Action</u>, 842 A.2d at 178 (explaining significance of "the intervention by a physician in the decision-making process necessitated by his or her exercise of judgment whether or not to prescribe a particular medication").

Plaintiffs' complete failure to connect the alleged misconduct to payments that plaintiffs made for Neurontin is grounds for dismissal.

**B.      The Third-Party Payors Have Failed
          To Plead Causation Under RICO**

The third-party payors' RICO claims must also be dismissed on causation grounds for the additional reason that they are too remote.  The proximate causation requirement under RICO is "more stringent than those of most states" and "in practice, [courts] have held RICO plaintiffs to a more stringent showing of proximate cause than would be required at common law."  <u>Desiano v. Warner-Lambert Co.</u>, 326 F.3d 339, 348 (2d Cir. 2003).  In order to comply with this tougher proximate causation requirement, plaintiffs must allege "some direct relation between the injury asserted and the injurious conduct alleged."  <u>Holmes</u>, 503 U.S. at 268.  This directness requirement is "independent of and in addition to the other traditional elements of proximate cause."  <u>Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.</u>, 191 F.3d 229, 235 (2d Cir. 1999); <u>see also</u> <u>Holmes</u>, 503 U.S. at 268.

13

The third-party payors do not and cannot allege that they were directly injured by defendants' alleged conduct.  Because their claims are derivative of and dependent upon more direct injuries allegedly inflicted upon a third party, they fail as a matter of law.  See, e.g., Laborers Local 17, 191 F.3d at 238-29 ("[T]he critical question posed by the direct injury test is whether the damages a plaintiff sustains are derivative of an injury to a third party.  If so, then the injury is indirect; if not, it is direct."); R.I. Laborers' Health & Welfare Fund ex rel. Trs. v. Philip Morris, Inc., 99 F. Supp. 2d 174, 177 (D.R.I. 2000) ("[T]he federal appellate courts are unanimous in ruling that the principles of proximate cause and remoteness of injury preclude health funds from recovering damages for injuries which are wholly dependent upon the actions of more directly injured parties.").  As the Sixth Circuit explained, "from a procedural standpoint, a RICO case with a derivative-injury problem is better suited to dismissal on the pleadings than a RICO case with a traditional proximate-cause problem."  Trollinger v. Tyson Foods, Inc., 370 F.3d 602, 615 (6th Cir. 2004).  Because all of the third-party payors' RICO claims flow from the alleged deception of their insureds' doctors, those claims must be dismissed as too remote.

## III.   PLAINTIFFS FAIL TO ALLEGE A COGNIZABLE INJURY

All of plaintiffs' claims should be dismissed because plaintiffs do not allege an actual loss.  The complaints do not claim that any plaintiff suffered a personal injury as a result of taking Neurontin.  Instead, plaintiffs seek recovery solely for alleged economic losses.  Yet, plaintiffs allege neither that Neurontin failed to perform as expected by the prescribing physicians nor that patients failed to receive exactly what they paid for:  a prescription drug approved by the FDA as adjunctive therapy for epilepsy and prescribed by the physicians for a different, off-label use.  In fact, plaintiffs do not even allege that Neurontin failed to work for

those off-label uses for which it was prescribed.  In the absence of such allegations, plaintiffs have suffered no actual loss.

Numerous courts considering very similar consumer protection claims have recognized explicitly the necessity of alleging an actual loss.[7]  See In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61, 68 (S.D.N.Y. 2002); Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003).  For example, in In re Rezulin Products Liability Litigation the court held that despite allegations of promotional misconduct, to show "loss" in a nationwide consumer protection action, consumers would need to demonstrate that the drug did not work.  210 F.R.D. at 68.  Similarly, in Williams, the D.C. District Court held that "[w]ithout alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs."  297 F. Supp. 2d at 176.  Because plaintiffs do not allege that Neurontin was ineffective, allowing them to collect damages would grant them a windfall.  See Gustafson v. Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig., 288 F.3d 1012, 1017 (7th Cir. 2002) ("If tort law fully compensates those who are physically injured, then any recoveries by those whose products function properly means excess compensation."), cert. denied, 537 U.S. 1105 (2003); Day v. AT&T Corp., 74 Cal. Rptr. 2d 55, 64-65 (Ct. App. 1998).  This rationale applies equally to plaintiffs' RICO, fraud, and unjust enrichment claims.

---

[7] This is an explicit requirement of both the UCL and the NJCFA.  See In re Rezulin Prods. Liab. Litig, Judicial Council Coordination Proceeding No. 4122 (slip op.) (Cal. Sup. Ct. Apr. 29, 2003) (finding that without an allegation that Rezulin was ineffective, there was no remediable loss under the UCL); Day v. AT&T Corp., 74 Cal. Rptr. 2d 55, 64-65 (Ct. App. 1998) (stating that "in the absence of a measurable loss the [UCL] does not allow the imposition of a monetary sanction"); Collins v. Safeway Stores, Inc., 231 Cal. Rptr. 638, 643 (Ct. App. 1986) (noting that the "inability to prove loss or harm" necessarily renders an action "without merit"); Smith v. SBC Communs., Inc., 839 A.2d 850, 856 (N.J. 2004) ("[The NJCFA] created a private cause of action 'only for victims of consumer fraud who have suffered an ascertainable loss.'").  A copy of the slip opinion from In re Rezulin Products Liability Litigation is attached at Exhibit A to the Declaration of David Chaffin, dated March 17, 2005 ("Chaffin Decl.").