# EXHIBIT A



**FILED**
LOS ANGELES SUPERIOR COURT
APR 2 9 2003
JOHN A. CLARKE, CLERK
BY DOMINIC ELIAS, DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE REZULIN LITIGATION<br><br>*Intervention, Inc. v. Warner-Lambert Company, et al.* (Contra Costa County Case No. C-01-0977)<br><br>and<br><br>*California Disability Rights, Inc. v. Warner-Lambert Company* (Los Angeles County Case No. SC055268) | JUDICIAL COUNCIL COORDINATION PROCEEDING NO.: 4122<br><br>STATEMENT OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN UCL CASES |

## I.

## BACKGROUND

These representative actions are part of the coordinated JCCP Rezulin proceeding. Plaintiffs, public interest groups suing on behalf of the general public under California's Unfair Competition Law, California Business and Professions Code § 17200, et seq. ("UCL"), seek restitution against Defendants Warner-Lambert Company and Pfizer, Inc. ("WL", collectively) on behalf of individuals who were prescribed Rezulin by their doctors to treat diabetes, based on alleged unfair and deceptive practices, consisting of an alleged failure to adequately warn of

risks associated with Rezulin treatment.

WL has filed two motions for summary judgment. In the first motion, WL moves on grounds that: 1) the Court should decline to exercise its equitable power in these cases under *Kraus v. Trinity Mgmt. Services, Inc.* (2000) 23 Cal.4th 116, 138 and its progeny; and 2) that the UCL, as Plaintiffs would apply the statute in this case, violates the due process clauses of the state and federal constitutions.

In the second motion, WL seeks an order dismissing the complaints on the following grounds: 1) there is no precedent to assert 17200 or 17500 claims based on allegations concerning the approval process for a prescription medication or based on allegations that the warning label was misleading; 2) California Disability Rights' complaint should be dismissed based on the holding in *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 185-186 (the "safe harbor" argument); and 3) Plaintiffs' claims are preempted by federal law.

## II.

## DISCUSSION

### A. Preliminary rulings

Plaintiffs' objections to late filed evidence accompanying Defendants' Reply Memorandum are sustained.

The Court grants Plaintiffs' Objections to, and Motions to Strike Portions of, the Declaration of James A. Parker, Jr.. The Court finds that there is no foundation for Mr. Parker's statements regarding the internal conduct of the FDA.

**Plaintiffs'** request for continuance for purpose of pursuing discovery is denied. The requested deposition of James A. Parker, Jr., will not produce facts essential to support the opposition. CCP 437c(h).

---

[1] The underlying allegations of unfair competition, and the prayer for relief in both complaints, are substantially similar, and the Court treats the complaints the same for purposes of ruling on Warner-Lambert's motions. The Court has referenced, *infra*, in its Statement of Decision, those portions of Intervention, Inc.'s Complaint for Unfair Competition which parallel the allegations of CDR's First Amended Complaint (FAC).

### B. Motion #1 re: Court's Equitable Powers and Due Process

#### 1. Court's Equitable Powers

Under Business and Professions Code § 17200, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

"A court cannot properly exercise an equitable power without consideration of the equities on both sides of a dispute." *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 180. Additionally, a UCL action is equitable in nature, and the Court may consider equitable factors in deciding which, if any, remedies authorized by the UCL should be awarded. *Id.* at 179-181. *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 138 allows the Court "to decline to entertain the action as a representative action" "*in any case in which a defendant can demonstrate a potential for harm or show that the action is not one brought by a competent plaintiff for the benefit of injured parties.*" See also *Rosenbluth International, Inc. v. Superior Court* (2002) 101 Cal.App.4th 1073, 1079 (holding in part that Fortune 1000 companies on whose behalf the plaintiff brought his 17200 claims were not members of the "general public" under the UCL).

Defendant WL urges the Court to decline to exercise its equitable powers in this case under the *Kraus* factors set forth above.

##### a. Were actions brought for the benefit of injured parties, and can Plaintiffs obtain disgorgement or injunctive relief?

Business and Professions Code § 17203 provides as follows:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Restitutionary relief can be sought by anyone authorized to sue under sections 17200 or 17500. The purpose is for the Court to "exercise the full range of its inherent powers in order to accomplish complete justice between the parties, restoring if necessary the status quo ante as nearly

- 3 -

as may be achieved." *People v. Superior Court (Jayhill Corp.)* (1973) 9 Cal.3d 283. Damages are not allowed under sections 17200 or 17500. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1252; *Chern v. Bank of America* (1976) 15 Cal.3d 866, 875.

Neither reliance nor actual damage need be proven to obtain restitutionary relief. *Fletcher v. Security Pacific National Bank* (1979) 23 Cal.3d 442. Remedies under § 17200 are cumulative to each other (*People v. Bestline Products, Inc.* (1976) 61 Cal.App.3d 879) as well as to other laws' remedies. *People v. Los Angeles Palm, Inc.* (1981) 121 Cal.App.3d 25, 32-33.

Rezulin has been voluntarily withdrawn from the market by Warner-Lambert. There is no allegation in the CDR First Amended Complaint seeking an injunction. The real issue is whether the Court can award restitution or disgorgement, and whether these actions were brought for the benefit of injured parties, under the facts alleged in these cases. For the reasons discussed below, *Kraus, Day v. AT&T Corp.* (1998) 63 Cal.App.4th 325, and *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1148 mandate a finding that the relief Plaintiffs seek is not available under the UCL.

*Day, supra*, 63 Cal.App.4th 325 dealt with a 17200 representative claim on behalf of persons who purchased telephone calling cards. The plaintiffs had alleged that the calls made with the cards were charged by rounding up to the next full minute. In affirming the trial court's order sustaining the demurrer without leave to amend, the Court of Appeal stated:

> [T]he notion of restoring something to a victim of unfair competition includes two separate components. The offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep. *Because the filed rates charged by respondents are presumptively correct, a consumer who uses a prepaid phone card obtains the full value of what was paid for and therefore has given up nothing, regardless of whether he or she was improperly induced to purchase the card in the first place.* Any attempt to calculate a monetary amount to be paid on behalf of those who purchased the cards would necessarily result in a refund or rebate of properly collected fees for services. This would enmesh the court in the rate-setting process and directly contravene the filed rate doctrine. Appellants are not entitled to seek restoration of any money under section 17203. *Day* at 340. (Emphasis added.)

*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134 rejected the plaintiff's attempt to obtain nonrestitutionary disgorgement. In *Korea Supply*, the Republic of Korea

- 4 -

solicited bids to purchase a radar system. The plaintiff represented an entity which stood to gain $30 million in commissions if it won the contract. The defendant's predecessor ultimately won the contract. The plaintiff alleged the reason the defendant's predecessor won the contract was due to alleged bribes to the Korean government. Plaintiff filed a 17200 action against the defendant, seeking an order disgorging the defendant's profits obtained by means of an unfair business practice. The Court considered "whether disgorgement of profits that is not restitutionary in nature is an available remedy for an individual private plaintiff under the UCL." *Korea Supply* at 1144.

The Court rejected the plaintiff's attempt to pursue such relief under § 17200. The Court first noted that "[W]e held in *Kraus* that while restitution was an available remedy under the UCL, *disgorgement* of money obtained through an unfair business practice is an available remedy in a representative action *only to the extent that it constitutes restitution*. We reaffirm this holding here in the context of an individual action under the UCL." *Korea Supply*, 29 Cal.4th at 1145 (emphasis added). The *Korea Supply* court referenced the definition of "restitution" set forth in *Kraus* - an order "'compelling a UCL defendant to return money obtained through an unfair business practice *to those persons in interest from whom the property was taken*, that is, to persons who had an ownership interest in the property or those claiming through that person.'" *Korea Supply* at 1144-145 (citing *Kraus*, 23 Cal.4th at pp. 126-127.)) (Emphasis added.) The Court further noted that "[u]nder the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits *in which the plaintiff has an ownership interest*." *Id.* at 1148 (emphasis added). In other words, "[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Id.*

The Court applied its analysis of the concepts of "restitution" and "disgorgement" as follows:

> In an attempt to fit its claim within the statutory authorization for relief, and as an implicit acknowledgement that nonrestitutionary disgorgement is not an available remedy in an individual action under the UCL, plaintiff describes its requested remedy as "restitution." This term does not accurately describe the relief sought by plaintiff. As defined in *Kraus*, an order for restitution is one "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an

- 5 -

ownership interest in the property or those claiming through that person." (*Kraus, supra*, 23 Cal.4th at pp. 126-127.

The remedy sought by plaintiff in this case is not restitutionary because plaintiff *does not have an ownership interest in the money it seeks to recover from defendants*. First, it is clear that plaintiff is not seeking the return of money or property that was once in its possession. KSC has not given any money to Lockheed Martin: instead, it was from the Republic of Korea that Lockheed Martin received its profits. Any award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff.

Further, the relief sought by plaintiff is not restitutionary under an alternative theory because plaintiff *has no vested interest* in the money it seeks to recover. We have stated that "the concept of restoration or restitution, as used in the UCL, is not limited only to the return of money or property that was once in the possession of that person." (*Cortez, supra*, 23 Cal.4th at p. 178.) Instead, restitution is broad enough to allow a plaintiff to recover money or property in which he or she has a *vested interest*. In *Cortez*, we determined that "earned wages that are due and payable pursuant to section 200 et seq. of the Labor Code are as much the property of the employee who has given his or her labor to the employer in exchange for that property as is property a person surrenders through an unfair business practice." (*Ibid.*) Therefore, we concluded that such wages could be recovered as restitution under the UCL. We reached this result because "equity regards that which ought to have been done as done [citation], and thus recognizes equitable conversion." (*Cortez, supra*, at p. 178.)

In its First Amended Complaint, Plaintiff California Disability Rights (CDR) alleges that Warner Lambert, in marketing Rezulin, "engaged in conduct which (1) suppressed and concealed from the FDA and the public the information about the drug it derived from clinical trials and otherwise which showed significant risk of liver damage and cardiovascular problems and other adverse side effects, and (2) advertised Rezulin as being safe and having side effects 'comparable to a placebo.'"[2] CDR's FAC sets forth in further detail allegations of Warner-Lambert's purported suppression of information on the true nature of Rezulin. Ultimately, "following FDA proceedings, media reports, and a request for a congressional investigation as to why the FDA had approved Rezulin, W-L acceded to the FDA's request that Rezulin be voluntarily withdrawn from

---

[2] FAC in *CDR v. Warner-Lambert* at ¶13. *See also* ¶17 of Intervention's Complaint for Unfair Competition. ("Dr. [Randall] Whitcomb [Warner-Lambert's Vice-President] told an FDA advisory committee on December 11, 1996 that occurrences of liver injury among Rezulin patients were 'comparable to placebo' in the clinical studies" and ¶15 ("Warner-Lambert intentionally, fraudulently misrepresented to the FDA that the risk of liver damage from Rezulin was trivial.")

- 6 -

1 the market."³

2 In CDR's first cause of action for the 17200 violation, ¶108 alleges that: "[i]n making the aforementioned representations and statements, the Defendants engaged in a systematic marketing campaign that was false, unfair, unlawful, and likely to deceive California diabetic consumers as to the safety, efficacy and uniqueness of Rezulin. As a result, Defendants' conduct violated Business and Professions Code §§ 17200 and 17500."⁴ ¶109 alleges that "[a]s a result of this likelihood of deception; members of the public are all considered to have purchased Rezulin as a result of Defendants' false, unfair, unlawful and deceptive and misleading advertising and promotion of Rezulin without the need for individualized proof of reliance, causation and damage or injury."

Disgorgement, as noted in *Korea Supply*, is available to Plaintiffs in these representative UCL actions only to the extent the disgorgement sought encompasses restitution. In other words, disgorgement would be available if it restored the "status quo." The parties have stipulated that the Plaintiffs are not seeking relief on behalf of those members of the general public who were *physically injured* from taking Rezulin.⁵ It is further undisputed that Rezulin is not currently, and has not been, available to members of the general public or marketed to members of the general public since it was withdrawn from the market and that Plaintiffs seek no injunctive relief in these actions. The basis for the complaints is essentially that Warner-Lambert deceived the public into purchasing Rezulin, and Plaintiff seeks "an order requiring Defendants to disgorge, restore and or make restitution of any money which may have been acquired by means of unfair competition."⁶

---

³ FAC in *CDR v. Warner-Lambert*, ¶83. *See also* ¶21 of Intervention's Complaint ("Rezulin was withdrawn in approximately March, 2000.")

⁴ *See generally* ¶39 in Intervention's Complaint, alleging that "Defendants' conduct constitutes unfair competition within the meaning of Business and Professions Code section 17200."

⁵ See Exhibit J to Declaration of Robert Barnes; Plaintiffs' Separate Statement of Disputed Material Facts, Fact 2.

⁶ CDR's FAC, Prayer, ¶1. *See also* Intervention, Inc.'s Prayer, ¶¶1, 2 ("For these reasons, plaintiff asks 1. That defendants refund all monies obtained through the sale of Rezulin; [and] 2. That defendants refund to pre-merger Pfizer shareholders the incremental benefit which Warner-Lambert obtained from them through its unfair competition.")

However, Plaintiffs have offered no evidence suggesting that members of the general public for whose benefit these cases are prosecuted (persons who sustained no physical injury) did not benefit from the use of Rezulin. There is nothing in the complaints, for instance, claiming that Rezulin was ineffective. In the absence of such allegations, there is no "property" in which the general public has an "ownership interest" which Warner-Lambert must "restore" under *Korea Supply*. There is no "vested interest" the general public would have in such property. Consequently, as mandated by the result in *Day* and *Korea Supply*, Plaintiffs, under the facts alleged in the complaints, have nothing to recover as disgorgement or restitution as a matter of law.

Plaintiffs contend that they "have limited their claims to those for economic injuries relating to the marketing of Rezulin."[7] However, there is no admissible evidence in the record establishing a triable issue of material fact that the general public has in fact suffered such economic injury. To the extent that members of the general public paid for, and used, the prescription drug Rezulin without harm to them, there is no means of determining that any portion of the amounts paid for the drug were wrongfully obtained by the defendants or that, in equity, any moneys should be returned to members of the general public.

To the extent that Plaintiffs argue that one purpose of the UCL is to prevent those who engage in wrongful conduct from profiting from that conduct, their suggestion that disgorgement of all monies received by Defendants for the sale of Rezulin is neither supported by the cases cited, nor appropriate. The Court notes that in these coordinated cases there are claims for punitive damages based on the same facts and evidence alleged by the UCL Plaintiffs in the cases now before the Court. To the extent the conduct alleged by the UCL plaintiffs is proved in the personal injury cases, Defendants will be exposed to punitive damages that will both punish Defendants' past conduct and deter similar conduct in the future. Thus, the goal of the UCL to insure that one does not profit from wrongful conduct will be achieved not through the UCL claims, but rather through the award of punitive damages, if appropriate, in the injury cases.

In sum, the Court finds that neither restitution nor disgorgement of profits is available to

---

[7] Plaintiffs' Separate Statement of Disputed Material Facts, Fact 2.

the Plaintiffs as is sought under the complaints. In the absence of triable issues of material fact, and in light of *Kraus*, *Cortez*, *Day*, and *Korea Supply*, the Court finds there is no basis upon which it can order either disgorgement or restitution. Consequently, the Court finds that Plaintiffs are not entitled to any remedy as a matter of law. For these reasons, the motion for summary judgment is granted.

Given the Court's order granting summary judgment, it declines to address WL's argument that the suit violates WL's due process rights under the state and/or federal constitutions.

### C. Motion #2 re: Safe Harbor and Preemption

In view of the Court's determination that the absence of an available remedy supports the granting of summary judgment for the Defendants, the Court declines to rule on the issues relating to the doctrines of abstention or preemption. In this regard, it is the view of the Court that notwithstanding the decision in *Buckman v. Plaintiffs' Legal Committee* (2001) 531 U.S. 341, all UCL cases involving FDA approved products are not necessarily preempted. Specifically, in this case, where the FDA has no continuing involvement, and the drug has been withdrawn from the market, independent state law claims may survive absent a showing that prosecution of such claims would interfere with the FDA's ongoing regulatory powers. With respect to the doctrine of abstention, the Court does not have sufficient relevant and admissible evidence on which to rule. With respect to Defendant's reliance on the doctrine of abstention, it is this Court's view that abstention based on the existence of a regulatory scheme administered by a public agency such as the FDA requires an evidentiary showing either by a party, or by the regulatory agency, of the conflict between a plaintiff's claims and the work of the regulatory agency, or of the advantages of permitting the regulatory agency to adjudicate a plaintiff's claims. Such a showing has not been made in this case.

### III.

### CONCLUSION AND ORDER

The motion for summary judgment based on the Court's equitable powers is granted pursuant to *Korea Supply Co. v. Lockheed Martin Corp.*, (2003) 29 Cal.4th 1134; *Kraus v. Trinity Mgmt. Servs., Inc.*, (2000) 24 Cal.4th 116; *Cortez v. Purolator Air Filtration Prods. Co.*, (2000)

- 9 -

1 | 23 Cal.4th 163; and *Day v. AT&T Corp.*, (1998) 63 Cal.App.4th 325. Defendants have met their
2 | burden under CCP § 437c(p)(2) of demonstrating that neither restitution nor disgorgement are
3 | available remedies under Plaintiffs' UCL claims, as a matter of law. Plaintiffs have not met their
4 | burden under CCP § 437c(p)(2) of showing one or more triable issues of material facts exists with
5 | respect to the availability of relief under their UCL claims.

6 | In light of the Court's order granting the motion for summary judgment based on *Korea*
7 | *Supply Co.*, *Kraus*, *Cortez*, and *Day*, the Court declines to rule on the issues in Defendants'
8 | concurrent motion for summary judgment relating to the doctrines of abstention or preemption.

10 | Dated: April 29, 2003

Carl J. West
Judge of the Superior Court