# EXHIBIT C

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 10-K

(MARK ONE)

[X] ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934
FOR THE FISCAL YEAR ENDED DECEMBER 31, 1999

OR

[ ] TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934
FOR THE TRANSITION PERIOD FROM        TO

COMMISSION FILE NUMBER 1-3608

WARNER-LAMBERT COMPANY
(EXACT NAME OF REGISTRANT AS SPECIFIED IN ITS CHARTER)

| DELAWARE | 201 TABOR ROAD | 22-1598912 |
|---|---|---|
| (STATE OR OTHER JURISDICTION OF INCORPORATION OR ORGANIZATION) | MORRIS PLAINS, NEW JERSEY 07950 (ADDRESS OF PRINCIPAL EXECUTIVE OFFICES, INCLUDING ZIP CODE) | (I.R.S. EMPLOYER IDENTIFICATION NO.) |

973-385-2000
(REGISTRANT'S TELEPHONE NUMBER, INCLUDING AREA CODE)

SECURITIES REGISTERED PURSUANT TO SECTION 12(b) OF THE ACT:

| TITLE OF EACH CLASS | NAME OF EACH EXCHANGE ON WHICH REGISTERED |
|---|---|
| Common Stock (Par Value $1 Per Share) | The New York Stock Exchange, Inc. The Chicago Stock Exchange, Inc. The Pacific Stock Exchange, Inc. |
| Rights to Purchase Series A Junior Participating Preferred Stock | The New York Stock Exchange, Inc. The Chicago Stock Exchange, Inc. The Pacific Stock Exchange, Inc. |

SECURITIES REGISTERED PURSUANT TO SECTION 12(g) OF THE ACT:

None.

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports) and (2) has been subject to such filing requirements for the past 90 days.   Yes [x]   No [ ]

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. [ ]

The aggregate market value of the voting stock held by non-affiliates of Warner-Lambert Company as of February 29, 2000 was approximately $73.2 billion.

The number of shares outstanding of the registrant's Common Stock as of February 29, 2000 was 867,281,738 shares, Common Stock, par value $1.00 per share.

remediation costs for a given site may be paid out over several years. While it is not possible to predict with certainty the outcome of such matters or the total cost of remediation, management believes it is unlikely that their ultimate disposition will have a material adverse effect on the Company's financial position, liquidity, cash flows or results of operations for any year.

Also see 'Item 8. Financial Statements and Supplementary Data' below, for additional information on environmental actions, which is set forth in Note 18 to the Consolidated Financial Statements.

ITEM 2. PROPERTIES.

The executive offices of Warner-Lambert are located in Morris Plains, New Jersey. In the United States, including Puerto Rico, Warner-Lambert owns facilities aggregating approximately 6,724,000 square feet and leases facilities having an aggregate of approximately 900,000 square feet.

Warner-Lambert's United States manufacturing plants are located in Lititz, Pennsylvania (pharmaceuticals and consumer health care products); Rockford, Illinois (confectionery products); Holland, Michigan (pharmaceuticals); Greenwood, South Carolina (capsules); Milford, Connecticut (razors and blades); and Blacksburg, Virginia (pet care products). Warner-Lambert Inc., a wholly-owned subsidiary of Warner-Lambert operating in Puerto Rico, has plants located in Fajardo (pharmaceuticals) and Vega Baja (consumer health care and confectionery products). Parke-Davis Pharmaceuticals Limited, a wholly owned subsidiary of Warner-Lambert, operating in Puerto Rico, has a plant located in Vega Baja (pharmaceuticals and consumer health care products). For a discussion on the sale of the manufacturing facility located in Rochester, Michigan see 'Item 1. Business Segments -- Pharmaceutical Products' above.

In the United States, Warner-Lambert currently distributes its various products through two distribution centers located in Lititz, Pennsylvania and Elk Grove, Illinois. Principal United States research facilities are located in Ann Arbor, Michigan (pharmaceuticals), La Jolla, California (pharmaceuticals) and Morris Plains, New Jersey (pharmaceuticals, consumer health care and confectionery products).

Internationally, Warner-Lambert owns, leases or operates, through its subsidiaries or branches, 59 production facilities in 29 countries. Principal international manufacturing plants are located in Ireland, Germany, Canada, Mexico, Japan, France, Brazil, Colombia and Australia. Principal international research facilities are located in Ireland, France, Germany, Japan, the United Kingdom and Canada.

In order to achieve its objectives of increased efficiency and a lower cost of goods sold, Warner-Lambert, over a number of years and at significant cost, has consolidated many of its plants and facilities around the world. This has often resulted in the production of pharmaceutical products, consumer health care products and/or confectionery products at a single facility. The loss of one or more of Warner-Lambert's own production and packaging facilities could have a material adverse effect on certain of Warner-Lambert's reportable segments.

Warner-Lambert's facilities are generally in good operating condition and repair and at present are adequately utilized within reasonable limits. Leases are not material to the business of Warner-Lambert taken as a whole.

ITEM 3. LEGAL PROCEEDINGS.

For information relating to environmental matters see 'Item 1. Business -- Environment' above.

In November 1999, following the announcement by the Company of its execution of the AHP Merger Agreement, Pfizer filed suit against the Company, its board of directors and AHP, seeking to invalidate certain provisions in the AHP Merger Agreement and enjoin their implementation. The lawsuit claimed, among other things, that the termination fee, reciprocal stock option agreements and a provision preventing Warner-Lambert's directors from amending its shareholder rights plan were invalid, and that the members of the Company's board of directors breached their fiduciary duties to the Company's shareholders by entering into the AHP Merger Agreement. Pursuant to a settlement agreement executed on February 6, 2000 in connection with the termination of the AHP Merger Agreement and the execution of the Pfizer Merger Agreement, the Company, AHP and Pfizer entered

into settlement agreements with respect to this litigation. Shortly thereafter the litigation against AHP was dismissed with prejudice and the litigation between Pfizer and the Company was dismissed without prejudice.

The Company, its Directors and AHP have been named in approximately 40 lawsuits in Delaware Chancery Court, one lawsuit in Morris County, New Jersey, and two lawsuits in federal court in New Jersey brought on behalf of purported classes of the Company's shareholders. These lawsuits involve allegations similar to those contained in Pfizer's lawsuit, described above, and contain additional allegations, including that the consideration that was to be paid to the Company's shareholders in the proposed merger with AHP was inadequate. The Company believes these lawsuits to be without merit and is defending them vigorously. Following the termination of the AHP Merger Agreement, the Company has begun to seek disposition of these claims.

On November 23, 1999, Pfizer filed suit against the Company in the Delaware Court of Chancery relating to certain contracts between Pfizer and the Company for the marketing and co-promotion of LIPITOR. Pfizer alleged that the execution of the AHP Merger Agreement violated certain provision in those agreements. The Company counterclaimed on November 29, 1999 and sought a declatory judgment that the Company was entitled to terminate the LIPITOR agreements. Pursuant to a settlement agreement executed on February 6, 2000 in connection with the termination of the AHP Merger Agreement and the execution of the Pfizer Merger Agreement, the Company and Pfizer entered into a settlement agreement with respect to the LIPITOR litigation. The litigation was dismissed without prejudice shortly thereafter.

Certain employees of Warner-Lambert were served with subpoenas in January, 2000, by the U.S. Attorney's office in Boston, Massachusetts, directing them to provide testimony before a federal grand jury in Boston. The U.S. Attorney's office is conducting an inquiry into Warner-Lambert's promotion of NEURONTIN. Warner-Lambert is cooperating with the inquiry and cannot predict what the outcome of the investigation will be.

In late 1993, Warner-Lambert, along with numerous other pharmaceutical manufacturers and wholesalers, was sued in a number of state and federal antitrust lawsuits seeking damages (including trebled and statutory damages, where applicable) and injunctive relief. These actions arose from allegations that the defendant drug companies, acting alone or in concert, engaged in differential pricing whereby they favored managed institutions, managed care entities, mail order pharmacies and other buyers with lower prices for brand name prescription drugs than those afforded to retail pharmacies. The federal cases, which were brought by retailers, were consolidated by the Judicial Panel on Multidistrict Litigation and transferred to the U.S. District Court for the Northern District of Illinois for pre-trial proceedings. In June 1996, the Court approved Warner-Lambert's agreement to settle part of the consolidated federal cases, specifically, the class action conspiracy lawsuit, for a total of $15.1 million. This settlement also contains certain commitments regarding Warner-Lambert's pricing of brand name prescription drugs. Appeals of the District Court's approval of this settlement were unsuccessful, and the commitments have become effective. Certain other rulings of the judge presiding in this case were also appealed, and the judge was reversed on all rulings. The cases have been remanded to the District Court, and trial of the class action conspiracy action against the non-settling defendant pharmaceutical manufacturers and wholesalers was concluded in November, 1998 with a directed verdict for the defendants and dismissal of the class plaintiffs' case. That decision was affirmed in substantial part by the 7th Circuit Court of Appeals. In April 1997, after execution of the federal class settlement referred to above but prior to the formal effectiveness of its pricing commitments, the same plaintiff-class members brought a new purported class action relating to the time period subsequent to the execution of the settlement. This new class suit sought only injunctive relief. At present, Warner-Lambert cannot predict the outcome of this and the other remaining federal lawsuits in which it is a defendant.

In addition, the Company has settled the vast majority of the Robinson-Patman Act lawsuits brought by those retail pharmacies which opted out of the class action conspiracy lawsuit. The amount of these settlements is not material.

The state cases pending in California, brought by classes of pharmacies and consumers, have been coordinated in the Superior Court of California, County of San Francisco. The Company, with the majority of the other drug company defendants, settled the California consumer class action and this

10

SIGNATURES

    PURSUANT TO THE REQUIREMENTS OF SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934, THE REGISTRANT HAS DULY CAUSED THIS REPORT TO BE SIGNED ON ITS BEHALF BY THE UNDERSIGNED, THEREUNTO DULY AUTHORIZED.

WARNER-LAMBERT COMPANY<br>Registrant

Dated as of March 28, 2000      By /S/ LODEWIJK J. R. DE VINK
                                                                                  ...................................
                                                                                   Lodewijk J. R. de Vink
                                                                             Chairman of the Board,
                                                 President and Chief Executive Officer

    PURSUANT TO THE REQUIREMENTS OF THE SECURITIES EXCHANGE ACT OF 1934, THIS REPORT HAS BEEN SIGNED BELOW BY THE FOLLOWING PERSONS ON BEHALF OF THE REGISTRANT AND IN THE CAPACITIES AND ON THE DATES INDICATED.

```
                    /S/ LODEWIJK J. R. DE VINK
    By          ...........................................
                      Lodewijk J. R. de Vink
                  Chairman of the Board, President
                    and Chief Executive Officer
                     (Principal Executive Officer)
                            and Director

                      /S/ ERNEST J. LARINI
    By          ...........................................
                         Ernest J. Larini
                   Chief Financial Officer and
              Executive Vice President Administration
                    (Principal Financial Officer)
                                                                        March 28, 2000
                       /S/ JOSEPH E. LYNCH
    By          ...........................................
                         Joseph E. Lynch
                   Vice President and Controller
                    (Principal Accounting Officer)

                       /S/ ROBERT N. BURT
    By          ...........................................
                     Robert N. Burt, Director

                       /S/ DONALD C. CLARK
    By          ...........................................
                     Donald C. Clark, Director
```

69

```
         /S/ JOHN A. GEORGES
By    ............................................
         John A. Georges, Director

         /S/ WILLIAM H. GRAY III
By    ............................................
         William H. Gray III, Director

         /S/ WILLIAM R. HOWELL
By    ............................................
         William R. Howell, Director

         /S/ LASALLE D. LEFFALL, JR.
By    ............................................         March 28, 2000
         LaSalle D. Leffall, Jr., M.D., Director

         /S/ GEORGE A. LORCH
By    ............................................
         George A. Lorch, Director

         /S/ ALEX J. MANDL
By    ............................................
         Alex J. Mandl, Director

         /S/ MICHAEL I. SOVERN
By    ............................................
         Michael I. Sovern, Director
```

70

STATEMENT OF DIFFERENCES

```
The registered trademark symbol shall be expressed as...............  'r'
The Greek letter Mu shall be expressed as..........................  'u'
```