# EXHIBIT A
## Part 1 of 4

BUDD LARNER
David J. Novack
150 JFK Parkway
Short Hills, NJ 07078
(973) 379-4800

Attorneys for Plaintiffs

NOV 2 . 2004

ASSURANT HEALTH, INC., a Wisconsin corporation;

BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., a Florida corporation, and its wholly-owned subsidiary, HEALTH OPTIONS, INC., a Florida corporation;

LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY, doing business as BLUE CROSS and BLUE SHIELD OF LOUISIANA, a Louisiana corporation and its subsidiary HMO LOUISIANA, INC., a Louisiana corporation;

BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, a Massachusetts corporation;

BLUE CROSS BLUE SHIELD OF MICHIGAN and its wholly-owned subsidiary, BLUE CARE NETWORK, INC, Michigan corporations;

BLUE CROSS BLUE SHIELD OF MINNESOTA, a Minnesota corporation, and a subsidiary of AWARE INTEGRATED, INC., and its wholly-owned subsidiaries COMPREHENSIVE CARE SERVICES, INC., a Minnesota corporation, FIRST PLAN OF MINNESOTA, a Minnesota corporation, ATRIUM HEALTH PLAN, INC., a Wisconsin corporation, and HMO MINNESOTA, a Minnesota corporation;

GROUP HEALTH SERVICE OF OKLAHOMA, INC., doing business as BLUE CROSS BLUE SHIELD OF OKLAHOMA, an Oklahoma corporation and its wholly-owned subsidiary GROUP HEALTH MAINTENANCE ORGANIZATION, INC., doing business as BLUELINCS HMO, an Oklahoma corporation;

CAREFIRST, INC., a Maryland corporation, and its

**SUPERIOR COURT OF NEW JERSEY, LAW DIVISION**

**BERGEN COUNTY**

**Docket No.** L/13280/04

**CIVIL ACTION**

**COMPLAINT**

**JURY TRIAL DEMANDED**

wholly-owned subsidiaries, CAREFIRST OF MARYLAND, INC., a Maryland corporation, WILLSE & ASSOCIATES, INC., a Maryland corporation, CFS HEALTH GROUP, INC., a Maryland corporation, DELMARVA HEALTH PLAN, INC., a Maryland corporation, FREE STATE HEALTH PLAN, INC., a Maryland corporation, PATUXENT MEDICAL GROUP, INC., a Maryland corporation, GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., a company created under federal charter, CAPITAL CARE, INC., a District of Columbia corporation, CAPITAL AREA SERVICES, INC., a West Virginia corporation, BLUE CROSS BLUE SHIELD OF DELAWARE, INC., a Delaware corporation;

EXCELLUS HEALTH PLAN, INC., a New York corporation, and its wholly-owned subsidiary EXCELLUS BENEFIT SERVICES, INC., a New York corporation;

FEDERATED MUTUAL INSURANCE COMPANY, a Minnesota mutual company;

HEALTH CARE SERVICE CORPORATION, an Illinois Mutual Legal Reserve Company, on behalf of itself and its Illinois, New Mexico and Texas Divisions;

MUTUAL OF OMAHA INSURANCE COMPANY, a Nebraska mutual company;

TRUSTMARK INSURANCE COMPANY, a Delaware corporation;

WELLCHOICE, INC., a Delaware corporation, and its wholly-owned subsidiary EMPIRE HEALTHCHOICE ASSURANCE, INC., a New York corporation, doing business as EMPIRE BLUE CROSS BLUE SHIELD and EMPIRE BLUE CROSS, and its wholly-owned subsidiaries EMPIRE HEALTHCHOICE HMO, INC., doing business in New York as EMPIRE BLUE CROSS BLUE SHIELD HMO and EMPIRE BLUE CROSS HMO, and doing business in New Jersey as WELLCHOICE HMO OF NEW JERSEY;

WELLCHOICE INSURANCE OF NEW JERSEY, INC., a New Jersey corporation and a wholly-owned subsidiary of EMPIRE HEALTHCHOICE ASSURANCE, INC., a

New York corporation;

Plaintiffs,

v.

PFIZER, INC., a Delaware Corporation, and its wholly-owned subsidiary WARNER-LAMBERT COMPANY;

CLINE, DAVIS & MANN, INC., a New York Corporation;

LODEWIJK J.R. DE VINK, a resident of New Jersey; and

ANTHONY WILD, a resident of New Jersey,

Defendants.

# TABLE OF CONTENTS

INTRODUCTION ....... 1

NATURE OF ACTION ....... 1

PLAINTIFFS ....... 2

DEFENDANTS ....... 10

JURISDICTION AND VENUE ....... 12

FACTS ....... 12

COUNT I
Unlawful Restraint of Trade by Defendants In Violation of New Jersey Antitrust Act on Behalf of All Plaintiffs ....... 21

COUNT II
Unlawful Restraint of Trade by Defendants In Violation of District of Columbia's Antitrust Act on Behalf of Plaintiff CareFirst ....... 22

COUNT III
Unlawful Restraint of Trade by Defendants In Violation of the District of Columbia's Prescription Drug Price Information Law on Behalf of Plaintiff CareFirst ....... 23

COUNT IV
Unlawful Restraint of Trade by Defendants In Violation of Florida Antitrust Act of 1980 on Behalf of Plaintiff BCBS Florida ....... 24

COUNT V
Unlawful Restraint of Trade by Defendants In Violation of the Illinois Antitrust Act on Behalf of Plaintiffs HCSC and Trustmark ....... 25

COUNT VI
Unlawful Restraint of Trade by Defendants In Violation of Louisiana Antitrust Act on Behalf of Plaintiff BCBS Louisiana ....... 26

COUNT VII
Unlawful Restraint of Trade by Defendants In Violation of Michigan Antitrust Reform Act on Behalf of Plaintiff BCBS Michigan ....... 27

COUNT VIII
Unlawful Restraint of Trade by Defendants In Violation of Minnesota Antitrust Act of 1971 on Behalf of Plaintiffs BCBS Minnesota and Federated Insurance ....... 28

COUNT IX
Unlawful Restraint of Trade by Defendants In Violation of the Nebraska Antitrust Laws on Behalf of Plaintiff Mutual of Omaha ....29

COUNT X
Unlawful Restraint of Trade by Defendants In Violation of New Mexico Antitrust Act on Behalf of Plaintiff HCSC ....30

COUNT XI
Unlawful Restraint of Trade by Defendants In Violation of New York Antitrust Act on Behalf of Plaintiffs WellChoice and Excellus ....31

COUNT XII
Unlawful Restraint of Trade by Defendants In Violation of Oklahoma's Antitrust Reform Act on Behalf of Plaintiff BCBS Oklahoma ....32

COUNT XIII
Unlawful Monopolization by Defendants In Violation of New Jersey Law on Behalf of All Plaintiffs ....33

COUNT XIV
Unlawful Monopolization by Defendants In Violation of District of Columbia Law on Behalf of Plaintiff CareFirst ....34

COUNT XV
Unlawful Monopolization by Defendants In Violation of Florida Antitrust Act of 1980 Law on Behalf of Plaintiff BCBS Florida ....35

COUNT XVI
Unlawful Monopolization by Defendants In Violation of Illinois Law on Behalf of Plaintiffs HCSC and Trustmark ....36

COUNT XVII
Unlawful Monopolization by Defendants In Violation of Louisiana Law on Behalf of Plaintiff BCBS Louisiana ....37

COUNT XVIII
Unlawful Monopolization by Defendants In Violation of Massachusetts Law on Behalf of Plaintiff BCBS Massachusetts ....38

COUNT XIX
Unlawful Monopolization by Defendants In Violation of Michigan Law on Behalf of Plaintiff BCBS Michigan ....39

COUNT XX
Unlawful Monopolization by Defendants In Violation of Minnesota Law on Behalf of Plaintiffs BCBS Minnesota and Federated Insurance ....40

COUNT XXI
Unlawful Monopolization by Defendants In Violation of Nebraska Law on Behalf of Plaintiff Mutual of Omaha ........ 42

COUNT XXII
Unlawful Monopolization by Defendants In Violation of New Mexico Law on Behalf of Plaintiff HCSC ........ 43

COUNT XXIII
Unlawful Monopolization by Defendants In Violation of New York Law on Behalf of Plaintiffs WellChoice and Excellus ........ 44

COUNT XXIV
Unlawful Monopolization by Defendants In Violation of Oklahoma Law on Behalf of Plaintiff BCBS Oklahoma ........ 45

COUNT XXV
Unfair and Deceptive Trade Practices by Defendants In Violation of New Jersey Consumer Fraud Act on Behalf of All Plaintiffs ........ 46

COUNT XXVI
Unfair and Deceptive Trade Practices by Defendants In Violation of the Delaware Consumer Fraud Act on Behalf of Plaintiff CareFirst ........ 47

COUNT XXVII
Unfair and Deceptive Trade Practices by Defendants In Violation of the Delaware Uniform Deceptive Trade Practices Act on Behalf of Plaintiff CareFirst ........ 48

COUNT XXVIII
Unfair and Deceptive Trade Practices by Defendants In Violation of the District of Columbia Consumer Protection Procedures Act on Behalf of Plaintiff CareFirst ........ 49

COUNT XXIX
Unfair and Deceptive Trade Practices by Defendants In Violation of the Florida Deceptive and Unfair Trade Practices Act on Behalf of Plaintiff BCBS Florida ........ 51

COUNT XXX
Unfair and Deceptive Trade Practices by Defendants In Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act on Behalf of Plaintiffs HCSC and Trustmark ........ 52

COUNT XXXI
Unfair and Deceptive Trade Practices by Defendants In Violation of the Illinois Uniform Deceptive Trade Practices Act on Behalf of Plaintiffs HCSC and Trustmark ........ 53

COUNT XXXII
Unfair and Deceptive Trade Practices by Defendants In Violation of the Louisiana Unfair Trade Practices and Consumer Protection Act on Behalf of Plaintiff BCBS Louisiana ........ 54

COUNT XXXIII
Unfair and Deceptive Trade Practices by Defendants In Violation of the Maryland Consumer Protection Act on behalf of Plaintiff CareFirst....................55

COUNT XXXIV
Unfair and Deceptive Trade Practices by Defendants In Violation of Massachusetts' Consumer Protection Act on Behalf of Plaintiff BCBS Massachusetts ....................57

COUNT XXXV
Unfair and Deceptive Trade Practices by Defendants In Violation of the Michigan Consumer Protection Act on Behalf of Plaintiff BCBS Michigan ....................57

COUNT XXXVI
Unfair and Deceptive Trade Practices by Defendants In Violation of the Minnesota Uniform Deceptive Trade Practices Act on Behalf of Plaintiffs BCBS Minnesota and Federated Insurance ....................59

COUNT XXXVII
Unfair and Deceptive Trade Practices by Defendants In Violation of the Minnesota Prevention of Consumer Fraud Act on Behalf of Plaintiff BCBS Minnesota ....................60

COUNT XXXVIII
Unfair and Deceptive Trade Practices by Defendants In Violation of the Nebraska Uniform Deceptive Trade Practices Act on Behalf of Plaintiff Mutual of Omaha ....................61

COUNT XXXIX
Unfair Methods of Competition and Deceptive Practices by Defendants In Violation of the Nebraska Consumer Protection Act on Behalf of Plaintiff Mutual of Omaha ....................62

COUNT XL
Unfair and Deceptive Trade Practices by Defendants In Violation of the New Mexico Unfair Practices Act on Behalf of Plaintiff HCSC ....................62

COUNT XLI
Unfair and Deceptive Trade Practices by Defendants In Violation of the New York Deceptive Acts and Practices Law on Behalf of Plaintiffs WellChoice and Excellus ....................64

COUNT XLII
Unfair and Deceptive Trade Practices by Defendants In Violation of the Oklahoma Consumer Protection Act on Behalf of Plaintiff BCBS Oklahoma ....................65

COUNT XLIII
Unfair and Deceptive Trade Practices by Defendants In Violation of the Oklahoma Deceptive Trade Practices Act on Behalf of Plaintiffs BCBS Oklahoma ....................66

COUNT XLIV
Tortious Interference with Business Relationship or Prospective Economic Advantage by Defendants Under State Law on Behalf of All Plaintiffs ....................67

COUNT XLV
Unjust Enrichment by Defendants Under State Law on Behalf of All Plaintiffs ........................68

Plaintiffs, by and through their attorneys, Robins, Kaplan, Miller & Ciresi L.L.P., on behalf of themselves and certain self-funded customers, hereby seek damages, other monetary relief and equitable relief for Defendants' violations of state antitrust and consumer protection laws. Plaintiffs' Complaint is based upon knowledge as to themselves and their own acts, and upon information and belief based on publicly available documents and pleadings as to all other matters, as follows:

## INTRODUCTION

1. Pfizer, Inc., Warner-Lambert Co., Cline, Davis & Mann, Inc., Lodewijk J.R. de Vink, and Anthony Wild (unless otherwise identified, collectively referred to herein as "Defendants") engaged in a continuing and on-going scheme to illegally increase market share and power by restraining generic bioequivalents of its popular anti-convulsant drug Neurontin from competing or otherwise entering the market through a false, deceptive, and misleading marketing campaign and misusing the legal and regulatory system.

## NATURE OF ACTION

2. This action seeks damages and injunctive relief pursuant to state antitrust and state consumer protection statutes, in addition to redress for Defendants' unjust enrichment and tortious interference with Plaintiffs' prospective economic advantage and business relationships. Plaintiffs have paid and continue to pay artificially high prices for Neurontin or generic bioequivalents of Neurontin[1], as a direct result of Defendants' unlawful acts. Defendants unreasonably prevented and eliminated competition in the market for Neurontin or generic bioequivalents of Neurontin, thereby illegally increasing and maintaining market share and power, and otherwise engaged in fraudulent, unfair, and deceptive acts and practices that directly

[1] Hereinafter "generic bioequivalents of Neurontin" or "generic bioequivalent of Neurontin" means anhydrous gabapentin that is not lactam free, unless otherwise specified.

caused Plaintiffs and certain self-funded employer groups to pay inflated prices for Neurontin or generic bioequivalents of Neurontin.

**PLAINTIFFS**

3. Plaintiff Assurant Health, a subsidiary of Assurant, Inc., is a New York corporation with its principal place of business in Milwaukee, Wisconsin. At all times relevant to this action, Assurant Health has been, and is, licensed to do, and is doing, business in the state of Wisconsin and is a payer for prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its members and self-funded customers, typically employer-sponsored health plans that contract with Assurant Health to administer claims on their behalf and to pursue recoveries of plan-related losses. Assurant Health is engaged in prescription drug managed-care programs on behalf of its members and self-funded customers. Assurant Health has the authority on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "Assurant Health" includes its self-funded customers.

4. Plaintiffs Blue Cross and Blue Shield of Florida, a Florida mutual insurance corporation and its wholly-owned subsidiary, Health Options, Inc., a Florida health care corporation (collectively "BCBS Florida"), are both incorporated under the laws of Florida and have their principal places of business in Jacksonville, Florida. At all times relevant to this action, BCBS Florida has been, and is, licensed to do, and is doing, business in the state of Florida and is a payer for prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its members and self-funded customers, typically employer-sponsored health plans that contract with BCBS Florida to administer claims on their behalf and to pursue recoveries of plan-related losses. BCBS Florida is engaged in prescription drug managed-care programs on behalf of its members and self-funded customers. BCBS Florida has the authority

on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "BCBS Florida" includes its self-funded customers.

5.    Plaintiff Louisiana Health Service & Indemnity Company, doing business as Blue Cross and Blue Shield of Louisiana is a Louisiana health services plan corporation incorporated under the laws of the state of Louisiana, and has its principal place of business in Baton Rouge, Louisiana and its wholly-owned subsidiary, Plaintiff HMO Louisiana, Inc. ("HMOLA") is a Louisiana corporation, (collectively "BCBS Louisiana"). At all times relevant to this action, BCBS Louisiana has been, and is, licensed to do, and is doing, business in the state of Louisiana and is a payer for prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its members and self-funded customers, typically employer-sponsored health plans that contract with BCBS Louisiana to administer claims on their behalf and to pursue recoveries of plan-related losses. BCBS Louisiana is engaged in prescription drug managed-care programs on behalf of its members and self-funded customers. BCBS Louisiana has the authority on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "BCBS Louisiana" includes its self-funded customers.

6.    Plaintiff Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBS Massachusetts") is a hospital and medical services corporation organized under the laws of Massachusetts, and has its principal place of business in Boston, Massachusetts. At all times relevant to this action, BCBS Massachusetts has been, and is, licensed to do, and is doing, business in the state of Massachusetts and is a payer for prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its members and self-funded customers, typically employer-sponsored health plans that contract with BCBS Massachusetts to administer claims on their behalf and to pursue recoveries of plan-related losses. BCBS Massachusetts is

engaged in prescription drug managed-care programs on behalf of its members and self-funded customers. BCBS Massachusetts has the authority on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "BCBS Massachusetts" includes its self-funded customers.

7. Plaintiffs Blue Cross Blue Shield of Michigan and its wholly-owned subsidiary, Blue Care Network, Inc. (collectively "BCBS Michigan") are Michigan health care corporations incorporated under the laws of Michigan, and have their principal places of business in Michigan. At all times relevant to this action, BCBS Michigan has been, and is, licensed to do, and is doing, business in the state of Michigan and is a payer for prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its members and self-funded customers, typically employer-sponsored health plans that contract with BCBS Michigan to administer claims on their behalf and to pursue recoveries of plan-related losses. BCBS Michigan is engaged in prescription drug managed-care programs on behalf of its members and self-funded customers. BCBS Michigan has the authority on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "BCBS Michigan" includes its self-funded customers.

8. Plaintiffs Blue Cross Blue Shield of Minnesota, a subsidiary of Aware Integrated, Inc., and its wholly-owned subsidiaries Comprehensive Care Services, Inc., First Plan of Minnesota, Atrium Health Plan and HMO Minnesota, (collectively "BCBS Minnesota"), are Minnesota health services plan corporations incorporated under the Minnesota Nonprofit Health Service Plan Corporations Act, Minn. Stat. § 62C (2000), and have their principal places of business in Eagan, Minnesota. At all times relevant to this action, BCBS Minnesota has been, and is, licensed to do, and is doing, business in the state of Minnesota and is a payer for

prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its subscribers and self-funded customers, typically employer-sponsored health plans that contract with BCBS Minnesota to administer claims on their behalf and to pursue recoveries of plan-related losses. BCBS Minnesota is engaged in prescription drug managed-care programs on behalf of its subscribers and self-funded customers. BCBS Minnesota has the authority on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "BCBS Minnesota" includes its self-funded customers.

9. Plaintiff Group Health Service of Oklahoma, Inc., doing business as Blue Cross Blue Shield of Oklahoma, is an Oklahoma health services corporation incorporated under the Oklahoma Hospital Service and Medical Indemnity Corporations, Nonprofit Act, Okla. Stat. tit. 36 Section 2601 et seq., and its wholly-owned subsidiary Plaintiff Group Health Maintenance Organization, Inc., doing business as Bluelincs HMO (collectively "BCBS Oklahoma") have their principal places of business in Tulsa, Oklahoma. At all times relevant to this action, BCBS Oklahoma has been, and is, licensed to do, and is doing, business in the state of Oklahoma and is a payer for prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its subscribers, typically employer-sponsored health plans that contract with BCBS Oklahoma to administer claims on their behalf and to pursue recoveries of plan-related losses. BCBS Oklahoma is engaged in prescription drug managed-care programs on behalf of its subscribers.

10. Plaintiff CareFirst, Inc. is a health services plan corporation incorporated under the laws of Maryland, and has its principal place of business in Owings Mills, Maryland with wholly-owned subsidiaries: Plaintiffs CareFirst of Maryland, Inc., a Maryland corporation with its principal place of business in Owings Mills, Maryland; Willse & Associates, Inc. a Maryland

corporation with its principal place of business in Owings Mills, Maryland; CFS Health Group, Inc., a Maryland corporation with its principal place of business in Owings Mills, Maryland; Delmarva Health Plan, Inc., a Maryland corporation with its principal place of business in Owings Mills, Maryland; Free State Health Plan, Inc., a Maryland corporation with its principal place of business in Owings Mills, Maryland; Group Hospitalization and Medical Services, Inc., a District of Columbia company created under federal charter with its principal place of business in the District of Columbia; Capital Care, Inc., a District of Columbia corporation with its principal place of business in the District of Columbia; Capital Area Services, Inc., a West Virginia corporation with its principal place of business in West Virginia; and BCBS of Delaware, Inc., a Delaware corporation with its principal place of business in Delaware (collectively "CareFirst"). At all times relevant to this action, CareFirst has been, and is, licensed to do, and is doing, business in the state of Maryland and is a payer for prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its subscriber and self-funded customers, typically employer-sponsored health plans that contract with CareFirst to administer claims on their behalf and to pursue recoveries of plan-related losses. CareFirst is engaged in prescription drug managed-care programs on behalf of its subscriber and self-funded customers. CareFirst has the authority on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "CareFirst" includes its self-funded customers.

11. Plaintiff Excellus Health Plan, Inc. is a New York insurer with its principal offices located in Rochester, New York, with a wholly-owned subsidiary, Plaintiff Excellus Benefit Services, Inc., a New York corporation, headquartered in Syracuse, N.Y. (collectively "Excellus") wholly-owned. At all times relevant to this action, Excellus has been, and is,

licensed to do, and is doing, business in the state of New York and is a payer for prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its members and self-funded customers, typically employer-sponsored health plans that contract with Excellus to administer claims on their behalf and to pursue recoveries of plan-related losses. Excellus is engaged in prescription drug managed-care programs on behalf of its members and self-funded customers. Excellus has the authority on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "Excellus" includes its self-funded customers.

12.    Federated Mutual Insurance Company ("Federated Insurance") is a Minnesota mutual corporation, with its principal place of business in Owatonna, Minnesota. At all times relevant to this action, Federated Insurance has been, and is, licensed to do, and is doing, business in the state of Minnesota and is a payer of prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its members and self-funded customers, typically employer-sponsored health plans that contract with Federated Insurance to administer claims on their behalf. Federated Insurance is engaged in prescription drug managed-care programs on behalf of its members and self-funded customers. Federated Insurance has the authority on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "Federated Insurance" includes its self-funded customers.

13.    Plaintiff Health Care Service Corporation ("HCSC") is an Illinois Mutual Legal Reserve Company, which includes its Illinois, New Mexico and Texas Divisions. HCSC is incorporated under the laws of the state of Illinois, and has its principal place of business in Chicago, Illinois. At all times relevant to this action, HCSC has been, and is, licensed to do, and is doing, business in the states of Illinois, Texas and New Mexico, and is a payer for prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its members and

self-funded customers, typically employer-sponsored health plans that contract with HCSC to administer claims on their behalf and to pursue recoveries of plan-related losses. HCSC is engaged in prescription drug managed-care programs on behalf of its members and self-funded customers. HCSC has the authority on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "HCSC" includes its self-funded customers.

14.    Plaintiff Mutual of Omaha Insurance Company ("Mutual of Omaha") is a Nebraska mutual company incorporated under the laws of Nebraska, and has its principal place of business in Omaha, Nebraska, with wholly-owned subsidiaries:  United of Omaha Life Insurance Company, a Nebraska corporation with its principal place of business in Omaha, Nebraska; United World Life Insurance Company, a Nebraska corporation with its principal place of business in Omaha, Nebraska; Exclusive Healthcare, Inc., a Nebraska corporation, with its principal place of business in Omaha, Nebraska; and Companion Life Insurance Company, incorporated in New York, with its principal place of business in New York (collectively, "Mutual of Omaha"). At all times relevant to this action, Mutual of Omaha has been, and is, licensed to do, and is doing, business in the state of Nebraska and is a payer for prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its members and self-funded customers, typically employer-sponsored health plans that contract with Mutual of Omaha to administer claims on their behalf and to pursue recoveries of plan related losses. Mutual of Omaha is engaged in prescription drug managed-care programs on behalf of its members and self-funded customers. Mutual of Omaha is also pursuing the claims of its self-funded customers against the Defendants. As used herein, "Mutual of Omaha" includes its self-funded customers.

15. The Trustmark Insurance Company (Sentinel Group) ("Trustmark") is a Delaware Corporation with its principal place of business in Lake Forest, Illinois. At all times relevant to this action, Trustmark has been, and is, licensed to do, and is doing, business in the state of Illinois and is a payer for prescription drugs, including gabapentin prescription products, on behalf of its members and self-funded customers, typically employer-sponsored health plans that contract with Trustmark to administer claims on their behalf and to pursue recoveries of plan-related losses. Trustmark is engaged in prescription drug managed-care programs on behalf of its members and self-funded customers. Trustmark has the authority on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "Trustmark" includes its self-funded customers.

16. Plaintiff WellChoice, Inc. is a corporation incorporated under the laws of Delaware with its principal place of business in New York, New York. Plaintiff WellChoice Inc. wholly owns (through WellChoice Holdings of New York, Inc.) Plaintiff Empire HealthChoice Assurance, Inc. (d/b/a Empire Blue Cross Blue Shield and Empire Blue Cross) ("EHCA") which in turn wholly owns Plaintiff Empire HealthChoice HMO, Inc. (d/b/a Empire Blue Cross Blue Shield HMO and Empire Blue Cross HMO in the state of New York, and d/b/a WellChoice HMO of New Jersey in the state of New Jersey). EHCA is a health insurance corporation incorporated under the laws of New York; and Empire HealthChoice HMO, Inc. is a health maintenance corporation incorporated under the laws of the state of New York. (collectively "WellChoice"). At all times relevant to this action, WellChoice has been, and is, licensed to do, and is doing, business in the state of New York and is a payer for prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its members and self-funded customers, typically employer-sponsored health plans that contract with WellChoice to

administer claims on their behalf and to pursue recoveries of plan-related losses. WellChoice is engaged in prescription drug managed-care programs on behalf of its members and self-funded customers. WellChoice has the authority on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "WellChoice" includes its self-funded customers.

17.    Plaintiff WellChoice Insurance of New Jersey, Inc. is a health insurance corporation incorporated under the laws of the state of New Jersey, which has its principal place of business in Iselin, New Jersey ("WellChoice of New Jersey"). WellChoice of New Jersey is a wholly owned subsidiary of EHCA, and at all times relevant to this action, WellChoice of New Jersey has been, and is, licensed to do, and is doing, business in the state of New Jersey and is a payer for prescription drugs, including Neurontin or generic bioequivalents of Neurontin, on behalf of its members and/or self-funded customers, typically employer-sponsored health plans that contract with WellChoice of New Jersey to administer claims on their behalf and to pursue recoveries of plan-related losses. WellChoice of New Jersey is engaged in prescription drug managed-care programs on behalf of its members and self-funded customers. WellChoice of New Jersey has the authority on behalf of its self-funded customers to pursue claims against the Defendants. As used herein, "WellChoice of New Jersey" includes its self-funded customers.

## DEFENDANTS

18.    Defendant Pfizer, Inc. is a Delaware corporation with its principal corporate offices located at 235 East 42nd Street, New York, New York. Defendant Pfizer, Inc. wholly owns Defendant Warner-Lambert Company and its Parke-Davis Division as of June 19, 2000, and Defendant Pfizer, Inc. is the successor corporation to Warner-Lambert Company, Inc., a Delaware Corporation with its principal place of business at 201 Tabor Road, Morris Plains,

New Jersey, and any parent, subsidiary, division, or affiliate of Warner-Lambert Company, Inc. (unless otherwise identified, collectively "Pfizer").

19.     Pfizer is a leading international pharmaceutical company distributing products to 150 countries worldwide, and manufactures and markets several of the world's top-selling brand-name prescription drugs, including Neurontin.   In 2003, Pfizer's net sales worldwide were approximately $45.2 billion.

20.     Since Pfizer's acquisition of Warner-Lambert Company in June 2000, Pfizer has continued to participate in, further, accept the benefits from, and ratify a scheme commenced by Warner-Lambert Company and others to prevent or delay generic versions of Neurontin from being available to the public and misrepresenting Neurontin and its safety and effectiveness.

21.     Defendant Cline, Davis & Mann, Inc. ("Cline, Davis & Mann") is a New York corporation with its principal place of business at 22 East 42nd Street, New York, New York 10017, with offices at 302 Carnegie Center, Suite 102, Princeton, New Jersey 08540.  Defendant Cline, Davis & Mann, Inc. entered into an agreement with Defendant Pfizer and was aware of, participated in, and received the benefits from the conduct alleged in this Complaint.

22.     Defendant Lodewijk J.R. de Vink was the former Chairman, Chief Executive Officer and President of Warner-Lambert Company.   Upon information and belief, Defendant Lodewijk J.R. de Vink is a resident of New Jersey.

23.     Defendant Lodewijk J.R. de Vink has personally benefited from and participated in, directed, knowingly acquiesced to or should have known about and had the power to control the conduct alleged in this Complaint and incorporated herein by reference.

24.     Defendant Anthony Hugh Wild was the former Executive Vice President of Warner-Lambert Company and President of Warner-Lambert Company's Pharmaceutical Sector,

and President of Parke-Davis North America. Defendant Anthony Hugh Wild is a resident of New Jersey.

25. Defendant Anthony Hugh Wild has personally benefited from and participated in, directed, knowingly acquiesced to or should have known about and had the power to control the conduct alleged in this Complaint and incorporated herein by reference.

26. The acts alleged in this Complaint related to Defendants Pfizer and Cline, Davis & Mann, Inc. were authorized, ordered and performed by their officers, directors, agents, employees, representatives or subsidiaries while engaged in the management, direction, control or transaction of Defendants' businesses.

**JURISDICTION AND VENUE**

27. Subject matter jurisdiction is proper pursuant to N.J. Stat. § 56:9-10 (2004).

28. Venue in this Court is proper pursuant to New Jersey Court Rules 4:3-2 (2004). Defendants' conduct as alleged below transpired and/or was carried out in New Jersey and elsewhere in the United States. In addition, Defendants maintain offices, facilities or residences in various locations in New Jersey, including Morris Plains, New Vernon, Parsippany, Peapack, Princeton and Red Bank. Defendants do business in Bergen County.

**FACTS**

29. Defendant Pfizer began to market anhydrous gabapentin that is not lactam free, under the brand name Neurontin, in or about 1993. Defendant Pfizer marketed Neurontin as a unique and superior product compared to other drugs. The actual demand for Neurontin, however, was small, because Neurontin had only been approved as an anti-convulsant agent for adjunctive treatment, not stand-alone treatment, of seizures for adults with epilepsy up to 1800 mg/day.