# EXHIBIT A
# Part 3 of 4

152.    Defendants' above-described conduct directly and proximately resulted in increased payments by Plaintiff BCBS Oklahoma for Neurontin or generic bioequivalents of Neurontin.

153.    The economic injury to Plaintiff BCBS Oklahoma can be determined through an accurate account of payments for Neurontin and generic bioequivalents of Neurontin. Plaintiff BCBS Oklahoma's recovery will not pose a risk of double recovery.

154.    As a direct and proximate result of Defendants' above-described conduct, Plaintiff BCBS Oklahoma is entitled to three times the actual damages sustained, in an amount to be proven at trial, as well as reasonable attorney's fees, disbursements and costs, against Defendants, jointly and severally. Okla. Stat. tit. 79 § 201.

## COUNT XIII

### Unlawful Monopolization by Defendants In Violation of New Jersey Law on Behalf of All Plaintiffs

155.    Plaintiffs incorporate and reaver by reference the averments contained in the preceding paragraphs 1 through 154.

156.    As described above, Defendants knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power. This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin. The result of Defendants' unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

157.    Defendant Pfizer possessed monopoly power in the relevant market.

158.    Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market

33

and attempted to monopolize the relevant market in violation of the New Jersey Antitrust Act. N.J. Stat. Ann. § 56:9-4.

159.    Plaintiffs and their self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct.  Their injuries consist of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation.  Such injuries are of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

160..    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to three times their actual damages sustained, in an amount to be determined at trial, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

**COUNT XIV**

**Unlawful Monopolization by Defendants In Violation of
District of Columbia Law on Behalf of Plaintiff CareFirst**

161.    Plaintiff CareFirst incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 160.

162.    As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power.  This course of conduct included, inter alia, a false, deceptive, and misleading advertising and marketing campaign and misusing the legal and regulatory process.  The result of Defendant's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

163.    Defendant Pfizer possessed monopoly power in the relevant market.

Word 20113683.1

164.    Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of D.C. Code Ann. §§ 28-4503, *et seq.*

165.    Plaintiff CareFirst and its self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct.  Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation.  Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

166.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff is entitled to three times its actual damages sustained, in an amount to be determined at trial, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

### COUNT XV

**Unlawful Monopolization by Defendants In Violation of Florida
Antitrust Act of 1980 Law on Behalf of Plaintiff BCBS Florida**

167.    Plaintiff BCBS Florida incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 166.

168.    As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power.  This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin.  The result of Defendant Pfizer's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

Word 20113683.1

169.     Defendant Pfizer possessed monopoly power in the relevant market.  Fla. Stat. § 542.19.

170.     Defendant Pfizer willfully and wrongfully acquired and maintained its monopoly power in an exclusionary manner in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of the Florida Antitrust Act of 1980.  Fla. Stat. § 542.19.

171.     Plaintiff BCBS Florida and its self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct.  Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation.  Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

172.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff is entitled to three times its actual damages sustained, in an amount to be determined at trial, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

## COUNT XVI

### Unlawful Monopolization by Defendants In Violation of Illinois Law on Behalf of Plaintiffs HCSC and Trustmark

173.     Plaintiffs HCSC and Trustmark incorporate and reaver by reference the averments contained in the preceding paragraphs 1 through 172.

174.     As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power.  This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of

36

Neurontin. The result of Defendant Pfizer's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

175. Defendant Pfizer possessed monopoly power in the relevant market.

176. Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of the Illinois Antitrust Act. 740 Ill. Comp. Stat. § 10/3(3).

177. Plaintiffs HCSC and Trustmark and their self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct. Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation. Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

178. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to three times their actual damages sustained, in an amount to be determined at trial, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

### COUNT XVII

**Unlawful Monopolization by Defendants In Violation
of Louisiana Law on Behalf of Plaintiff BCBS Louisiana**

179. Plaintiff BCBS Louisiana incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 178.

180. As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power. This course of conduct included filing baseless patent infringement lawsuits

37

against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin. The result of Defendant Pfizer's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

181.    Defendant Pfizer possessed monopoly power in the relevant market.

182.    Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of La. Rev. Stat. Ann. §§ 51:137, *et seq*.

183.    Plaintiff BCBS Louisiana and its self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct. Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation. Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

184.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff is entitled to three times its actual damages sustained, in an amount to be determined at trial, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

## COUNT XVIII

### Unlawful Monopolization by Defendants In Violation of Massachusetts Law on Behalf of Plaintiff BCBS Massachusetts

185.    Plaintiff BCBS Massachusetts incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 184.

186.    As described above, Defendants knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly

power.  This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin. The result of Defendants' unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

187.    Defendant Pfizer possessed monopoly power in the relevant market.

188.    Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of Mass. Gen. Laws. ch. 93A, *et seq.*

189.    Plaintiff BCBS Massachusetts and its self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct.  Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation.  Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

190.    As a direct and proximate result of Defendants' unlawful conduct, BCBS Massachusetts has suffered damages in an amount not yet determined, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

## COUNT XIX

### Unlawful Monopolization by Defendants In Violation of Michigan Law on Behalf of Plaintiff BCBS Michigan

191.    Plaintiff BCBS Michigan incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 190.

192.    As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its

Word 20113683.1

monopoly power. This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin. The result of Defendant Pfizer's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

193.    Defendant Pfizer possessed monopoly power in the relevant market.

194.    Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of Mich. Comp. Laws §§ 445.771, *et seq.*.

195.    Plaintiff BCBS Michigan and its self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct. Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation. Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

196.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff is entitled to three times its actual damages sustained, in an amount to be determined at trial, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

### COUNT XX

**Unlawful Monopolization by Defendants In Violation of**
**Minnesota Law on Behalf of Plaintiffs BCBS Minnesota and Federated Insurance**

197.    Plaintiffs BCBS Minnesota and Federated Insurance incorporate and reaver by reference the averments contained in the preceding paragraphs 1 through 196.

198.   As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power.  This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin.  The result of Defendant Pfizer's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

199.   Defendant Pfizer possessed monopoly power in the relevant market.

200.   Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of Minn. Stat. §§ 325D.52 *et seq.*.

201.   Plaintiffs BCBS Minnesota and Federated Insurance and their self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct.  Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation.  Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

202.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to three times their actual damages sustained, in an amount to be determined at trial, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

Word 20113683.1

## COUNT XXI

### Unlawful Monopolization by Defendants In Violation
### of Nebraska Law on Behalf of Plaintiff Mutual of Omaha

203.    Plaintiff Mutual of Omaha incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 202.

204.    As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power. This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin. The result of Defendant Pfizer's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

205.    Defendant Pfizer possessed monopoly power in the relevant market.

206.    Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of Neb. Rev. Stat. § 59-802.

207.    Plaintiff Mutual of Omaha and its self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct. Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation. Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

208.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff is entitled to three times its actual damages sustained, in an amount to be determined at trial, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

42

## COUNT XXII

### Unlawful Monopolization by Defendants In Violation
### of New Mexico Law on Behalf of Plaintiff HCSC

209.    Plaintiff HCSC incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 208.

210.    As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power.  This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin.  The result of Defendant Pfizer's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

211.    Defendant Pfizer possessed monopoly power in the relevant market.

212.    Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of N.M. Stat. Ann. §§ 57-1-1 *et seq*.

213.    Plaintiff HCSC and its self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct.  Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation.  Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

214.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff is entitled to three times its actual damages sustained, in an amount to be determined at trial,

Word 20113683.1

together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

## COUNT XXIII

### Unlawful Monopolization by Defendants In Violation of
### New York Law on Behalf of Plaintiffs WellChoice and Excellus

215.    Plaintiffs WellChoice and Excellus incorporate and reavers by reference the averments contained in the preceding paragraphs 1 through 214.

216.    As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power.  This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin.  The result of Defendant Pfizer's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

217.    Defendant Pfizer possessed monopoly power in the relevant market.

218.    Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of New York General Business Law.  N.Y. Gen. Bus. Law § 340 *et seq.*.

219.    Plaintiffs and their self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct.  Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation.  Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

220.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to three times their actual damages sustained, in an amount to be determined at trial, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

**COUNT XXIV**

**Unlawful Monopolization by Defendants In Violation
of Oklahoma Law on Behalf of Plaintiff BCBS Oklahoma**

221.    Plaintiff BCBS Oklahoma incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 220.

222.    As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power. This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin. The result of Defendant Pfizer's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

223.    Defendant Pfizer possessed monopoly power in the relevant market.

224.    Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of the Oklahoma Antitrust Reform Act. Okla. Stat. tit. 79, § 203.

225.    Plaintiff BCBS Oklahoma has been injured in business or property by reason of Defendants' unlawful conduct. Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation.

Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

226.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff is entitled to three times its actual damages sustained, in an amount to be determined at trial, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

## COUNT XXV

### Unfair and Deceptive Trade Practices by Defendants In Violation of New Jersey Consumer Fraud Act on Behalf of All Plaintiffs

227.    All Plaintiffs hereby incorporate and reaver by reference the averments contained in the preceding paragraphs 1 through 226.

228.    The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*, (2004) ("NJCFA") is designed to protect consumers such as Plaintiffs and their self-funded employer groups from fraudulent and deceptive practices.  The above-described Defendants' acts and practices fall into the types of acts or practices the NJCFA was created to prevent.

229.    Plaintiffs are "persons," within the meaning of N.J. Rev. Stat. § 56:8-1(d).

230.    Defendants are "persons," within the meaning of N.J. Rev. Stat. § 56:8-1(d).

231.    Neurontin and generic bioequivalents of Neurontin are "merchandise," within the meaning of N.J. Rev. Stat. § 56:8-1(c).

232.    Defendants engaged in "sales," within the meaning of N.J. Rev. Stat. § 56:8-1(e).

233.    The marketing and sale of brand name prescription drugs, including Neurontin or generic bioequivalents of Neurontin, to the public at large and the concomitant reimbursement for all or a portion of prescription drugs by Plaintiffs and their self-funded employer groups constitute consumer transactions subject to the NJCFA.

234.    In violation of the NJCFA, the Defendants engaged in unfair, fraudulent, and deceptive acts and practices in connection with the marketing and sale of merchandise, namely the brand name prescription drug Neurontin. N.J.S.A. § 56:8-2.

235.    Defendants have used fraudulent, deceptive, and unconscionable commercial marketing and sales practices for Neurontin or generic bioequivalents of Neurontin and have fraudulently and knowingly concealed, suppressed, misled, and/or omitted material facts from Plaintiffs regarding Neurontin, thereby causing Plaintiffs and their self-funded employer groups to pay substantially higher prices for Neurontin or generic bioequivalents of Neurontin or otherwise suffer damages.

236.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to an award of all damages, including, but not limited to, Plaintiffs' losses, Defendants' ill-gotten profits, treble damages, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiffs in this action.

### COUNT XXVI

**Unfair and Deceptive Trade Practices by Defendants In Violation of
the Delaware Consumer Fraud Act on Behalf of Plaintiff CareFirst**

237.    Plaintiff ("CareFirst") incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 236.

238.    Defendants have violated the Delaware Consumer Fraud Act, Del. Code tit. 6 §§ 2511 *et seq.* (2004), by intentionally and/or negligently acting, using, or employing deception, fraud, false pretense, false promise, or misrepresentation, and the concealment, suppression, or omission of a material fact, in connection with the sale of merchandise.

239.    Plaintiff CareFirst is a "person," within the meaning of Del. Code tit. 6 § 2511(5).

240.    Defendants are "persons," within the meaning of Del. Code tit. 6 § 2511(5).

Word 20113683.1

241.    Gabapentin prescription drug products are "merchandise" within the meaning of Del. Code tit. 6 § 2511(4).

242.    Defendants engaged in "sales," within the meaning of Del. Code tit. 6 § 2511(6).

243.    Defendants' unlawful practices as herein alleged were gross, oppressive, and aggravated.

244.    As a direct and proximate result of Defendants' unlawful practices, Plaintiff CareFirst has suffered significant losses and costs, and will continue to do so.

245.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff CareFirst is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action, including interest and attorneys' fees.

### COUNT XXVII

**Unfair and Deceptive Trade Practices by Defendants In Violation of the Delaware Uniform Deceptive Trade Practices Act on Behalf of Plaintiff CareFirst**

246.    Plaintiff CareFirst incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 245.

247.    Defendants have violated the Delaware Uniform Deceptive Trade Practices Act, Del. Code Ann. tit. 6, §§ 2531 *et seq.* (2004), by willfully, or with reason to know, engaging in deceptive trade practices in the course of their businesses.

248.    Plaintiff CareFirst is a "person," within the meaning of Del. Code Ann. tit. 6, § 2531(5).

249.    Defendants are "persons," within the meaning of Del. Code Ann. tit. 6, § 2531(5).

250.    Defendants have engaged in deceptive trade practices by willfully, or with reason to know, in the course of Defendants' businesses:

Word 20113683.1

48

(a)    Causing likelihood of confusion as to the source, sponsorship, approval, or certification of goods. Del. Code Ann. tit. 6, § 2532(2).

(b)    Causing likelihood of confusion as to affiliation, connection, or association with or certification by another. Del. Code Ann. tit. 6, § 2532(3).

(c)    Representing that goods have sponsorship, approval, or characteristics that they do not have, or that a person has sponsorship, approval, status, affiliation, or connection that it does not have. Del. Code Ann. tit. 6, § 2532(5).

(d)    Engaging in conduct as herein alleged that similarly creates a likelihood of confusion or misunderstanding. Del. Code Ann. tit. 6, § 2532(12).

251.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff CareFirst has suffered significant losses and costs and will continue to do so.

252.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff CareFirst is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action.

## COUNT XXVIII

### Unfair and Deceptive Trade Practices by Defendants In Violation of the District of Columbia Consumer Protection Procedures Act on Behalf of Plaintiff CareFirst

253.    Plaintiff CareFirst ("CareFirst") incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 252.

254.    Defendants have violated the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 et seq. (2004), by engaging in unlawful trade practices.

255.    Plaintiff CareFirst is a "person," within the meaning of D.C. Code § 28-3901(a)(1).

256. Defendants are "persons" within the meaning of D.C. Code § 28-3901(a)(1).

257. Neurontin and generic bioequivalents of Neurontin are "goods or services" within the meaning of D.C. Code § 28-3901(a)(7).

258. Defendants' acts were "trade practices" within the meaning of D.C. Code § 28-3901(a)(6).

259. Defendants have engaged in unlawful trade practices, by knowingly, or failing to exercise due care in knowing, that they were:

    (a) Representing that Neurontin had sponsorship or approval that it did not have;

    (b) Representing that Defendants had sponsorship, approval, status, affiliation, connection, qualifications, or license that they did not have; and

    (c) Engaging in a campaign of misrepresentation and misinformation concerning the Neurontin and generic bioequivalents of Neurontin.

260. As a direct and proximate result of Defendants' unlawful trade practices in the conduct of trade or commerce, Plaintiff CareFirst has suffered significant losses and costs, and will continue to do so.

261. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff CareFirst is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, treble or punitive damages, interest, and reimbursement of all costs attorneys' fees, and expenses incurred by Plaintiff in this action.

Word 20113683.1

## COUNT XXIX

### Unfair and Deceptive Trade Practices by Defendants In Violation of the Florida Deceptive and Unfair Trade Practices Act on Behalf of Plaintiff BCBS Florida

262.   Plaintiff BCBS Florida incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 261.

263.   Defendants have violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* (2003), by knowingly, or with reason to know, engaging in unfair competition, unconscionable acts or practices, and unfair or deceptive acts in the conduct of any trade or commerce.

264.   Defendants' acts were in the conduct of "trade" or "commerce," within of the meaning of Fla. Stat. § 501.203(8).

265.   Defendants' unlawful conduct included, but is not limited to, violations of the following:

(a)   Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. §§ 41 *et seq.*;

(b)   The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts;

(c)   Any law, statute, rule, regulation, or ordinance that proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

266.   As a direct and proximate result of Defendants' unfair competition, unconscionable acts or practices, and unfair or deceptive acts in the conduct of any trade or commerce, Plaintiff BCBS Florida has suffered significant losses and costs and will continue to do so.

267.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff BCBS Florida is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action.

## COUNT XXX

**Unfair and Deceptive Trade Practices by Defendants In Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act on Behalf of Plaintiffs HCSC and Trustmark**

268.    Plaintiffs HCSC and Trustmark incorporate and reaver by reference the averments contained in the preceding paragraphs 1 through 267.

269.    Defendants have violated the Illinois Consumer Fraud and Deceptive Business Practices Act, § 815 Ill. Comp. Stat. 505/1 *et seq.* (2004), by engaging in the above-described unfair methods of competition and unfair and deceptive trade practices and acts.

270.    Plaintiffs HCSC and Trustmark are "persons," within the meaning of § 815 Ill. Comp. Stat. 505/1(c).

271.    Defendants are "persons," within the meaning of § 815 Ill. Comp. Stat. 505/1(c).

272.    Neurontin and generic bioequivalents of Neurontin are "merchandise," within the meaning of § 815 Ill. Comp. Stat. 505/1(b).

273.    Defendants engaged in "sales," within the meaning of § 815 Ill. Comp. Stat. 505/1(d).

274.    Defendants' acts were in the conduct of "trade" and "commerce," within the meaning of § 815 Ill. Comp. Stat. 505/1(f).

275.    Defendants have engaged in unfair methods of competition and unfair or deceptive acts or practices, knowingly, or failing to exercise due care by:

Word 20113683.1