# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE NEURONTIN ANTITRUST LITIGATION** | MDL Docket No. 1479 |
| OWENS V. PFIZER INC. | Civil Action No. 02-1390(JCL) |
| TRUJILLIO V. PFIZER INC. | Civil Action No. 02-1391(JCL) |
| SMITHFIELD FOODS, INC. V. PFIZER INC. | Civil Action No. 02-1397(JCL) |
| SALOWE-KAYE, ET AL. V. PFIZER INC. | Civil Action No. 02-1527(JCL) |
| LOUISIANA DRUG COMPANY, INC. V. PFIZER INC. | Civil Action No. 02-1830(JCL) |
| MEIJER V. PFIZER INC. * | Civil Action No. 02-2731(JCL) |
| ZAFARANA V. PFIZER INC.* | Civil Action No. 02-2741(JCL) |
| COLLINS V. PFIZER, INC.* | Civil Action No. 02-3514(JCL) |
| SALL, ET AL. V. PFIZER INC. | Civil Action No. 02-3988(JCL) |
| GREAT LAKES HEALTH PLAN V. PFIZER INC. | Civil Action No. 02-3989(JCL) |
| MELTZER V. PFIZER INC. | Civil Action No. 02-3990(JCL) |
| HEALTH & BENEFIT TRUST FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL UNION 94, 94A, 94B V. PFIZER INC. | Civil Action No. 02-3991(JCL) |

| | | |
|---|---|---|
| JAFFE V. PFIZER INC. | } | Civil Action No02-3992(JCL) |
| D'ANGELO V. PFIZER INC. | } | Civil Action No. 02-3993(JCL) |
| ACTION ALLIANCE OF SENIOR CITIZENS OF GREATER PHILADELPHIA V. PFIZER INC. | } | Civil Action No. 02-3994(JCL) |
| VISTA HEALTHPLAN, INC. V. PFIZER INC. | } | Civil Action No. 02-3995(JCL) |
| UNITED FOOD & COMMERCIAL WORKERS LOCAL 56 HEALTH & WELFARE FUND V. PFIZER INC. | } | Civil Action No. 02-3996(JCL) |
| PAINTERS DISTRICT COUNCIL NO. 30 HEALTH & WELFARE FUND V. PFIZER INC. | } | Civil Action No. 02-3997(JCL) |
| WILSON V. PFIZER INC. | } | Civil Action No. 02-3998(JCL) |
| SOEURT V. PFIZER INC. | } | Civil Action No. 02-3999(JCL) |

*Related actions pending in this District that have been identified to the Judicial Panel on Multidistrict Litigation ("MDL Panel") as "tag-along" actions.

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY THE NEURONTIN® ANTITRUST ACTIONS PENDING RESOLUTION OF THE UNDERLYING PATENT INFRINGEMENT LITIGATIONS

DRINKER, BIDDLE & SHANLEY LLP
500 Campus Drive
Florham Park, NJ 07932
Phone: (973)360-1100
Fax: (973)360-9831
*Attorneys for Defendants*
*Pfizer Inc. and Warner-Lambert Company*

On the Brief:
John J. Francis, Jr.

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Table of Authorities | | ii |
| Preliminary Statement | | 1 |
| Background | | 2 |
| | A.  The Patent Infringement Litigations Pending In This Court | 2 |
| | B.  The Antitrust Litigation. | 5 |
| Argument | | 7 |
| I. | THE COURT SHOULD STAY THE ANTITRUST LITIGATION PENDING THE OUTCOME OF THE PATENT LITIGATIONS. | 7 |
| Conclusion | | 12 |

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page**

Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.,
    544 F.2d 1207 (3rd Cir. 1976) ...............................................................7, 9

C.R. Bard, Inc. v. M3 Sys., Inc.,
    157 F. 3d 1340 (Fed. Cir. 1998)...............................................................8

Cent. Jersey Freightliner, Inc. v. Freightliner Corp.,
    987 F. Supp. 289 (D.N.J. 1997)...............................................................9

Elsag Bailey (Canada) Inc. v. Trojan Techs., Inc.,
    1996 WL 571156 (E.D. Pa. Oct. 3, 1996)...............................................9

In re Gabapentin Patent Litig.,
    2001 U.S. Dist. LEXIS 1726 (J.P.M.L. Feb. 5, 2001) ...............................4

Kappel v. Comfort,
    914 F. Supp. 1056 (S.D.N.Y. 1996)...............................................................10

Landis v. North American Co.,
    299 U.S. 248 (1936)...............................................................7

Levine v. McLeskey,
    881 F. Supp. 1030 (E.D. Va. 1995) ...............................................................8

Mova Pharm. Corp. v. Shalala,
    140 F.3d 1060 (D.C. Cir. 1998)...............................................................3

In re Neurontin® Antitrust Litig.,
    __ F. Supp.2d __, 2002 WL 1905938 (J.P.M.L Aug. 15, 2002)...........................1, 6-7

NFL Props., Inc. v. Hi-Pro Mktg., Inc.,
    1992 WL 204370 (S.D.N.Y. Aug. 11, 1992)...............................................................9

Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,
    508 U.S. 49 (1993)...............................................................8

Regions Bank v. Wieder & Mastroianni, P.C.,
    170 F. Supp. 2d 436 (S.D.N.Y. 2001)...............................................................9

TRW Fin. Sys., Inc. v. Unisys Corp.,
    835 F. Supp. 994 (E.D. Mich. 1993)...............................................................8-9

Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag,
    207 F. Supp. 2d 221 (S.D.N.Y. 2002)...............................................................8

**Statutes And Regulations**

21 U.S.C. § 355(j)(2)(A)............................................................................................................2, 3

21 U.S.C. § 355(j)(5)(B)................................................................................................................3

28 U.S.C. § 1407............................................................................................................................6

21 C.F.R. § 314.107(b)(3)(v) ........................................................................................................3

Defendants Pfizer Inc. ("Pfizer") and Warner-Lambert Company ("Warner-Lambert") (collectively, "Defendants") submit this memorandum of law in support of their motion for a stay of all proceedings in the actions that are pending before this Court pursuant to the Order of the Judicial Panel on Multidistrict Litigation (the "MDL Panel") in In re Neurontin Antitrust Litig., MDL Docket No. 1479, __F. Supp.2d__, 2002 WL 1905938 (J.P.M.L. Aug. 15, 2002), transferring certain actions here for coordinated or consolidated pretrial proceedings, together with the related actions already pending before the Court (collectively, the "Antitrust Litigation"). Defendants seek a stay pending resolution by this Court of the closely related gabapentin patent infringement claims (the "Patent Litigations") upon which the Antitrust Litigation is based.

## Preliminary Statement

In the Patent Litigations currently pending before the Court, listed in Schedule A to Defendants' Notice of Motion, Pfizer and Warner-Lambert assert that certain generic manufacturers have submitted Abbreviated New Drug Applications ("ANDAs") for generic gabapentin products which infringe their patents. Two of the defendants in those Patent Litigations have asserted counterclaims alleging that the patent claims are sham litigation in violation of federal antitrust laws. These counterclaims have been bifurcated and stayed by the Court based on the pending Patent Litigations.

Recently, a number of consumers, insurers and other plaintiffs have filed antitrust actions in various state and federal courts which largely track the counterclaims in the Patent Litigations and allege that the Patent Litigations are shams. All of these actions, which comprise the Antitrust Litigation (and are listed in Schedule B attached to Defendants' Notice), are either already pending before the Court, or were transferred to it pursuant to a recent Order of the MDL Panel.

Defendants now seek a stay of the Antitrust Litigation similar to the stay already in place with respect to the nearly identical antitrust counterclaims in the Patent Litigations. A stay pending resolution of the Patent Litigations is appropriate because resolution of those actions may also dispose of the claims in the Antitrust Litigation and in any event will shed light on certain of the key issues in the latter Litigation. Awaiting the outcome of the Patent Litigations before proceeding with the Antitrust Litigation will also conserve judicial resources and prevent unnecessary discovery and motion practice.

## Background

### A.    The Patent Infringement Litigations Pending In This Court

As this Court is aware, gabapentin is the generic name for a drug product that is approved by the FDA for the treatment of epilepsy and is also widely used to treat pain and neurodegenerative diseases such as Alzheimer's Disease. (See Cmplt. in Owens v. Pfizer Inc. and Warner-Lambert Co., Civ. A. No. 02CV1390, at ¶¶ 34, 36.)[1] Warner-Lambert, which was acquired by Pfizer in June 2000, manufactures and markets gabapentin under the brand name Neurontin®. (Id. ¶¶ 15, 35.)

Under the Hatch-Waxman Amendments to the Federal Food, Drug and Cosmetics Act, a company seeking to market a generic version of an approved pioneer drug may submit to the FDA an ANDA which, among other things, must demonstrate "bioequivalen[cy]" to the FDA-approved pioneer drug. 21 U.S.C. § 355(j)(2)(A)(iv). Pursuant to the statute and its regulations, the FDA lists patents that may apply to the pioneer drug or its methods of use in its

---

[1]    All citations to complaint paragraph numbers in this memorandum are to the complaint in Owens (the first-filed action in this District), hereafter referred to as "Cmplt." The various complaints in the Antitrust Litigation contain substantially the same allegations.

"Orange Book."[2]  If an ANDA applicant wishes to market a generic product prior to the

expiration of an associated patent listed in the Orange Book, it must certify to the FDA, pursuant

to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) (a "paragraph IV certification"), that the pioneer's patent is

invalid or will not be infringed by the marketing of its product.  If a paragraph IV certification is

filed, and the patentee sues the ANDA applicant for patent infringement within 45 days, the FDA

may not give final approval to market the generic product until the patent case is resolved, or

until 30 months have elapsed, whichever occurs first (the "30 month stay").  See Mova Pharm.

Corp. v. Shalala, 140 F.3d 1060, 1064 (D.C. Cir. 1998) (explaining 21 U.S.C.

§ 355(j)(5)(B)(iii)).  In the interim, the FDA will grant only tentative approval to an ANDA that

has satisfied all non-patent regulatory requirements. 21 C.F.R. § 314.107(b)(3)(v).

  As this Court is also aware, Defendants hold three patents currently in force that

cover forms of gabapentin and the use of gabapentin in treating neurodegenerative diseases.

U.S. Patent No. 4,894,476 (the "'476 patent"), which issued in January 1990, claims a

monohydrate form of gabapentin; U.S. Patent No. 6,054,482 (the "'482 patent"), which issued in

April 2000, claims a low lactam form of gabapentin; and U.S. Patent No. 5,084,479 (the "'479

patent"), which issued in January 1992, claims the use of gabapentin to treat neurodegenerative

diseases. (Cmplt. ¶¶ 45-47.)  Each of these patents was listed by Warner-Lambert (prior to its

acquisition by Pfizer) in association with gabapentin in the FDA's Orange Book.

  A number of generic drug manufacturers -- including Apotex Corp., Purepac

-Pharmaceutical Co., Teva Pharmaceuticals USA, Zenith Goldline Pharmaceuticals, Inc. and Eon

Labs Manufacturing, Inc. -- filed applications seeking FDA approval to market gabapentin as a

---

[2] The formal name of the FDA's Orange Book is "Approved Drug Products with
Therapeutic Equivalence Evaluations."

3

generic notwithstanding Defendants' patents. (Cmplt. ¶¶ 49-50, 69-70, 89.) Defendants sued

Apotex and Purepac for infringement of the '476 and '479 patents and have sued five of the

generics, including Apotex and Purepac, for infringement of the '482 patent.[3] (Cmplt. ¶¶ 52, 66,

72, 78, 84, 89-91.) All of these actions constitute the Patent Litigations. The MDL Panel

centralized all of the actions alleging infringement of Defendants' '482 patent in this Court by

transferring the cases not already before it under MDL Docket No. 1384. In re Gabapentin

Patent Litig., 2001 U.S. Dist. LEXIS 1726 (J.P.M.L. Feb. 5, 2001). The Gabapentin patent

actions alleging infringement of the '476 and '479 patents against Purepac were already pending

before the Court.[4] Thus, all of the pending Patent Litigations are now in this District before

Judge Lifland. Purepac has moved the Court for summary judgment of noninfringement on the

'476, '479 and '482 patents, while Apotex has moved the Court for summary judgment on the

'482 patent. These motions are pending.

   In the Patent Litigations, Apotex and Purepac have asserted antitrust

counterclaims alleging that Warner-Lambert's listing of the patents in association with

gabapentin in the FDA Orange Book was improper, and that Defendants' bringing of

infringement actions against ANDA applicants constituted sham litigation, all in violation of the

Sherman Act. (E.g., Cmplt. ¶¶ 55-58, 67, 85.) In essence, the counterclaims allege that

Defendants had no objectively reasonable basis for expecting their patent infringement claims to

---

[3]  Some of the infringement suits were brought by Warner-Lambert before Pfizer acquired it. Both Warner-Lambert and Pfizer are named as plaintiffs in the actions brought subsequent to the acquisition.

[4]  The action against Apotex on the '476 and '479 patents was brought in the Northern District of Illinois, which granted Apotex' motions for summary judgment. The decision granting summary judgment to Apotex on the '479 patent is on appeal to the United States Court of Appeals for the Federal Circuit ("CAFC").

succeed and brought the actions only for the purpose of delaying generic competition. The counterclaims seek damages under the federal antitrust laws. (See id.)

On December 22, 2000, this Court denied Defendants' motion to dismiss Purepac's antitrust counterclaims relating to the '476 and '479 patents, but granted Defendants' motion to bifurcate the counterclaims. The Court ordered bifurcation of the antitrust counterclaims because "the outcome of [the patent infringement trial] may either support or eliminate Purepac's claim that Warner-Lambert filed an objectively baseless suit."[5] Subsequently, by order of Magistrate Judge Chesler dated April 24, 2001, "[a]ll antitrust and unfair competition counterclaims" were "bifurcated from MDL No. 1384 for purposes of discovery and trial, and stayed, pending further Court action."[6]

### B.    The Antitrust Litigation.

Since March 7, 2002, twenty-one actions have been filed in seven different federal district courts, all asserting overlapping claims against Defendants predicated on the Defendants' conduct in listing its patents in the Orange Book, and in bringing and maintaining the Patent Litigations. The complaints in large part track the antitrust counterclaims asserted by the generic company defendants in the Patent Litigations. Thus, many of the Plaintiffs allege that Defendants' listings of the '476, '479 and '482 patents in the Orange Book were improper, and all allege that the infringement suits against the generics were sham. (E.g., Cmplt. ¶ 4.)

---

[5]    See Opinion, entered December 22, 2000 in Civ. A. No. 98-02749 (JCL), 99-05948 (JCL), and 00-02053 (JCL) ("12/22/00 Opinion"), at 21 (bifurcating Purepac's antitrust claims relating to the '476 and '479 patents).

[6]    See Pretrial Order No. 1, entered April 26, 2001 in MDL No. 1384 and Civ. A. Nos. 00-CV-2931, 00-CV-3522, 00-CV-4168, 00-CV-4589, 00-CV-6073, 01-CV-0193 and 01-CV-0611 ("4/26/01 Pretrial Order"), at ¶ F (bifurcating and staying "antitrust and unfair competition counterclaims").

Plaintiffs allege that they were forced to pay higher prices for gabapentin than they otherwise would have if FDA approval of generic gabapentin had not been delayed by the 30 month stays resulting from the Patent Litigations. (E.g., Cmplt. ¶¶ 52, 95-100.)

The named plaintiffs in the Antitrust Litigation include consumers, health insurers, activist organizations, a drug wholesaler, and a meat processing company. Plaintiffs by and large seek to represent nationwide classes of Neurontin® purchasers, as well as subclasses of persons who purchased Neurontin® in certain states that allegedly permit antitrust or consumer fraud claims by indirect purchasers. They demand injunctive relief under the federal antitrust laws, damages and injunctive relief under various state antitrust and consumer protection laws, and disgorgement of Defendants' alleged "unjust enrichment" as a result of the alleged delay in the entry of generic gabapentin.

On August 15, 2002, the MDL Panel granted Defendants' motion to transfer the cases in the Antitrust Litigation which were pending outside the District of New Jersey to this Court, pursuant to 28 U.S.C. § 1407, for coordinated or consolidated pretrial proceedings with the five actions that are already pending here.[7] In re Neurontin Antitrust Litig., MDL Docket

---

[7]    A complete list of the actions including the Antitrust Litigation is attached as Schedule B to the Notice of Motion. Two of the listed actions, Sall v. Pfizer Inc. and Warner-Lambert Co., Civ. A. No. 02CV3988 (JCL), and Zafarana v. Pfizer Inc. and Warner-Lambert Co., Civ. A. No. 02CV2741 (JCL), were originally filed in California and New Jersey state courts, respectively, but were removed by Defendants to federal court and have now been transferred to this District. Four related actions were not included in the Transfer Order issued by the MDL Panel on August 15, 2002: Zafarana, Stuart v. Pfizer Inc. and Warner-Lambert Co., Civ. A. No. 02-2511 (W.D. Tenn.), Collins v. Pfizer Inc. and Warner-Lambert Co., 02CV3514 (JCL) and Meijer, Inc. v. Pfizer Inc. and Warner-Lambert Co., 02CV2731 (JCL). Three of these actions are already pending before this Court (Zafarana, Collins and Meijer). Stuart was removed from state court in Tennessee to federal court and was reported to the MDL Panel as a related action. We expect that the MDL Panel will transfer Stuart to this Court in the next few weeks.

th

No. 1479, __ F. Supp.2d __, 2002 WL 1905938 (J.P.M.L. Aug. 15, 2002). Thus, now pending

before the Court are the Patent Litigations, including the bifurcated and stayed antitrust

counterclaims, and the closely related actions which constitute the Antitrust Litigation.

### Argument

I.   **THE COURT SHOULD STAY THE ANTITRUST LITIGATION PENDING THE OUTCOME OF THE PATENT LITIGATIONS.**

Defendants seek a stay of the actions that comprise the Antitrust Litigation,

pending resolution of the Patent Litigations on which the Antitrust Litigation is based.

The Third Circuit has held that, "[i]n the exercise of its sound discretion, a court

may hold one lawsuit in abeyance to abide the outcome of another which may substantially

affect it or be dispositive of the issues." Bechtel Corp. v. Local 215, Laborers' Int'l Union of N.

Am., 544 F.2d 1207, 1215 (3rd Cir. 1976); see also Landis v. North American Co., 299 U.S. 248,

254 (1936) (Cardozo, J.) ("the power to stay proceedings is incidental to the power inherent in

every court to control the disposition of the causes on its docket with economy of time and effort

for itself, for counsel and for litigants"). In Landis the Supreme Court reversed a Court of

Appeals decision that the district court lacked the power to grant a stay in several actions,

pending the decision in a test case going forward in another court. 299 U.S. at 256-57. The

Court held that the district court had the power to "coordinate the business of the court efficiently

and sensibly," and could grant a stay because even if the decision in the test case "[might] not

settle every question . . . , in all likelihood it will settle many and simplify them all." Id. at 255-

56.

Here, the key allegation in the complaints in the Antitrust Litigation is that the

patent infringement actions brought by Defendants against the generics under the gabapentin

patents were sham. To sustain this allegation, Plaintiffs will need to prove that the infringement

7

actions already pending before this Court are "objectively baseless" in the sense that "no reasonable litigant could realistically expect success on the merits." Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1993). Hence, the merit of Pfizer's and Warner-Lambert's claims in the Patent Litigations are also central to the actions comprising the Antitrust Litigation. If Defendants win their patent infringement cases, they indisputably were not sham. See id. at 60 n.5 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."); Levine v. McLeskey, 881 F. Supp. 1030, 1042-44 (E.D. Va. 1995) (litigation not sham given success at trial level even though reversed on appeal), aff'd in relevant part and vacated in nonrelevant part, 164 F.3d 210 (4th Cir. 1998).

Even if Defendants were to lose their patent infringement cases, the record in those cases would be highly relevant to determining whether the actions were objectively baseless.[8] For example, in Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag, 207 F. Supp. 2d 221, 224 (S.D.N.Y. 2002), the defendant had asserted six patents against potential generic competitors. In dismissing antitrust claims later brought against the defendant alleging sham litigation, the court held that, even though several of the patents were declared invalid, the fact that "claims of infringement of four of the six asserted patents [were allowed] to proceed beyond summary judgment, and two of the four [were allowed] to proceed through trial, preclude any contention" that the litigation was sham. Id.; see also TRW Fin. Sys., Inc. v. Unisys Corp., 835 F. Supp. 994, 1014 (E.D. Mich. 1993) (defendant could not show patent infringement suit

---

[8]     Needless to say, the mere fact that, after discovery, an accused infringer prevails on the merits is not an indication that the litigation lacked a reasonable basis. See Prof'l Real Estate Investors, 508 U.S. at 60 n.5; C.R. Bard, Inc. v. M3 Sys., Inc., 157 F. 3d 1340, 1369 (Fed. Cir. 1998).

was sham because of fact specific nature of issues in suit and because record indicated that

plaintiff's chance of winning infringement claim was "not frivolous[]").

In similar circumstances, courts in the Third Circuit, including this Court, have

consistently acted to promote judicial economy and efficiency by staying one proceeding

pending the outcome of another. For example, in Elsag Bailey (Canada) Inc. v. Trojan Techs.,

Inc., 1996 WL 571156, at *1 (E.D. Pa. Oct. 3, 1996), the plaintiff asserted antitrust and unfair

competition claims based in part on allegations that patent litigation instituted by the defendant

on a Canadian patent was a "sham." The court stayed the sham litigation claims pending the

resolution of the underlying patent litigation. The court held that its consideration of those

claims "[would] be greatly aided and may be disposed of by the resolution" of the litigation on

the Canadian patent. Id. The court found that the stay was necessary because "[a]ny other result

could surely result in incomplete proceedings, a waste of judicial economy and potentially

inconsistent results." Id.; accord Bechtel Corp., 544 F.2d at 1215 (3d Cir.) (affirmed grant of

stay pending arbitration where, if the plaintiff prevailed on the claims being arbitrated and was

awarded damages, its other claims could be dismissed as moot); Cent. Jersey Freightliner, Inc. v.

Freightliner Corp., 987 F. Supp. 289, 300 (D.N.J. 1997) (Lifland, J.) ("Given the factual

intertwining of plaintiff's arbitrable and non-arbitrable claims, the Court, in its discretion, will

stay litigation of the non-arbitrable claims pending arbitration."); Regions Bank v. Wieder &

Mastroianni, P.C., 170 F. Supp. 2d 436, 440 (S.D.N.Y. 2001) (staying action pending outcome of

action in Georgia because "[i]f Regions succeeds against [defendant] in the Georgia action, a

decision in this Court will be rendered unnecessary"); NFL Props., Inc. v. Hi-Pro Mktg., Inc.,

1992 WL 204370, at *3 (S.D.N.Y. Aug. 11, 1992) (ordering action stayed where "[t]he outcome

of [another] litigation may relieve this Court from having to try the instant action at all"; stay

was appropriate because it would "preserve judicial resources and avoid duplicative litigation").

9

This Court has already recognized the advantages of staying claims similar to those in the Antitrust Litigation until the Patent Litigations are resolved. The claims in the Antitrust Litigation parallel the antitrust counterclaims asserted against Defendants by two of the generic companies in the Patent Litigations. The Court bifurcated the antitrust counterclaims relating to the '476 and '479 patents because "the outcome of [the patent infringement trial] may either support or eliminate" those counterclaims. 12/22/00 Opinion, at 21; see 4/26/01 Pretrial Order, at ¶ F (bifurcating and staying antitrust counterclaims in MDL 1384). The Court's reasoning in the Patent Litigations also applies to the Antitrust Litigation: Resolution of the patent infringement claims may "support or eliminate" the antitrust plaintiffs' claims.

Granting the stay requested by the Defendants will provide other benefits as well. If and when there is reason for discovery regarding the antitrust counterclaims asserted in the Patent Litigations, that discovery would largely overlap with the discovery that would be conducted relating to the claims in the Antitrust Litigation. There is no reason for Defendants here to provide the same discovery twice. In Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996), for example, the court found the likelihood of duplicative discovery important in deciding to grant a stay. The Kappel court stayed the litigation before it, pending the resolution of related claims in another court, even though those related claims were also stayed. It determined that the defendants "would be considerably burdened" by being required to engage in discovery and motion practice in the litigation before the court, "knowing that they might well have to provide discovery" in connection with the related claims once the stay was lifted. In addition, the Court will avoid the necessity of dealing with discovery disputes that may be rendered unnecessary by the resolution of the Patent Litigations.

Here, as in Elsag and the other cases discussed above, granting a stay of the Antitrust Litigation until the underlying Patent Litigations are resolved will promote judicial

10

economy and efficiency, and will prevent duplicative and possibly unnecessary discovery and

motion practice.

## **Conclusion**

For all the foregoing reasons, Defendants respectfully request that the Court stay all of the purported class actions in the Antitrust Litigation pending its resolution of the underlying gabapentin patent infringement litigations.

Dated: August 27, 2002

Respectfully submitted,

By: _John J. Francis Jr./BCS_

John J. Francis, Jr.(1655)
DRINKER, BIDDLE & SHANLEY LLP
500 Campus Drive
Florham Park, NJ 07932
Phone: (973)360-1100
Fax: (973)360-9831

*Attorneys for Defendants*
*Pfizer Inc. and Warner-Lambert Company*

Gerald Sobel
Myron Kirschbaum
Aaron Stiefel
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Phone: (212) 836-8000
Fax: (212) 836-8689

*Of Counsel*

12

# SCHEDULE A

1.  In re Gabapentin Patent Litigation
    MDL Docket No. 1384

2.  Warner-Lambert Company v. Purepac Pharmaceutical Co.and Faulding, Inc.
    Civil Action No. 00-2931(JCL) (Gabapentin)

3.  Pfizer, Inc. v. Purepac Pharmaceutical Co. & Faulding Inc.
    Civil Action No. 00-3522(JCL) (Gabapentin)

4.  Warner-Lambert Co. v. Apotex Corp., et al.
         Civil Action No. 01-611(JCL)

5.  Warner-Lambert Company v. Purepac Pharmaceutical Co and Faulding, Inc.
    Civil Action No. 98-2749(JCL)

6.  Warner-Lambert Company v. Purepac Pharmaceutical Co and Faulding, Inc.
    Civil Action No. 99-5948(JCL)

7.  Warner-Lambert Company, Pfizer v. Teva Pharmaceutical Co.
    Civil Action No. 00-4168(JCL) (Gabapentin)

8.  Warner-Lambert Company, Pfizer v. Teva Pharmaceutical Co.
    Civil Action No. 00-4589(JCL) (Gabapentin)

9.  Warner-Lambert Company, Pfizer v. Zenith Goldline Laboratories
    Civil Action No. 00-6073(JCL) (Gabapentin)

10. Warner-Lambert Company, Pfizer v. Zenith Goldline Laboratories
    Civil Action No. 01-0193(JCL) (Gabapentin)

11. Warner-Lambert Company, Pfizer v. Zenith Goldline Laboratories
    Civil Action No. 01-1577(JCL)

12. Warner-Lambert Company, Pfizer v. Zenith Goldline Laboratories
    Civil Action No. 01-1538(JCL)

## SCHEDULE B

Listed below are all of the related actions in the Neurontin® antitrust actions that are pending before this Court. They include the actions that were transferred here pursuant to the Order, dated August 15, 2002, of the Judicial Panel on Multidistrict Litigation in In re Neurontin Antitrust Litigation, MDL Docket No. 1479, 2002 WL 1905938, (J.P.M.L. Aug. 15, 2002), as well as the related actions that were already pending before this Court.

1. Owens v. Pfizer, Inc. and Warner-Lambert Co.,
   Civil Action No. 02-1390 (JCL)

2. Trujillo v. Pfizer, Inc. and Warner-Lambert Co.,
   Civil Action No. 02-1391 (JCL)

3. Smithfield Foods, Inc. v. Pfizer Inc. and Warner-Lambert Co.,
   Civil Action No. 02-1397 (JCL)

4. Salowe-Kaye v. Pfizer Inc. and Warner-Lambert Co.,
   Civil Action No. 02-1527 (JCL)

5. Louisiana Wholesale Drug Company, Inc. v. Pfizer Inc. and Warner-Lambert Co.,
   Civil Action No. 02-1830 (JCL)

6. Meijer, Inc. v. Pfizer Inc. and Warner-Lambert Co.,
   Civil Action No. 02-2731 (JCL)

7. Zafarana v. Pfizer Inc. and Warner-Lambert Co.,
   Civil Action No. 02-2741 (JCL)

8. Collins v. Pfizer Inc. and Warner-Lambert Co.,
   Civil Action No. 02-3514 (JCL)

9. Sall v. Pfizer Inc. and Warner-Lambert Co.,
   Civil Action No. 02-3988 (JCL)

10. Great Lakes Health Plan, Inc. v. Pfizer, Inc. and Warner-Lambert Co.,
    Civil Action No. 02-3989 (JCL)

11. Meltzer v. Pfizer, Inc. and Warner-Lambert Co.,
    Civil Action No. 02-3990 (JCL)

12. Health and Benefit Trust Fund of the International Union of Operating Engineers Local Union 94, 94A, 94B v. Pfizer Inc. and Warner-Lambert Co.,
    Civil Action No. 02-3991 (JCL)

13. Jaffe v. Pfizer, Inc. and Warner-Lambert Co.,
    Civil Action No. 02-3992 (JCL)

14.   D'Angelo v. Pfizer, Inc. and Warner-Lambert Co.,
      Civil Action No. 02-3993 (JCL)

15.   Action Alliance of Senior Citizens of Greater Philadelphia v. Pfizer Inc. and Warner-
      Lambert Co.,
      Civil Action No. 02-3994 (JCL)

16.   Vista HealthPlan, Inc. v. Pfizer Inc. and Warner-Lambert Co.,
      Civil Action No. 02-3995 (JCL)

17.   United Food and Commercial Workers Local 56 Health & Welfare Fund v. Pfizer Inc.
      and Warner-Lambert Co.,
      Civil Action No. 02-3996 (JCL)

18.   Painters District Council No. 30 Health and Welfare Fund v. Pfizer Inc. and Warner-
      Lambert Co.,
      Civil Action No. 02-3997 (JCL)

19.   Wilson v. Pfizer, Inc. and Warner-Lambert Co.,
      Civil Action No. 02-3998 (JCL)

20.   Socurt v. Pfizer, Inc. and Warner-Lambert Co.,
      Civil Action No. 02-3999 (JCL)