UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                  :
In re:   NEURONTIN MARKETING AND                                  :
         SALES PRACTICES LITIGATION                               :
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   MDL Docket No. 1629
                                                                  :
THIS DOCUMENT RELATES TO:                                         :   Master File No. 04-10981
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Judge Patti B. Saris
                                                                  :
HARDEN MANUFACTURING CORPORATION;                                 :
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,                       :
dba BLUECROSS/BLUESHIELD OF LOUISIANA; UNION                      :
OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE                      :
FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS                        :
TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf                 :
of themselves and all others similarly situated, v. PFIZER INC.   :
and WARNER-LAMBERT COMPANY.                                       :
                                                                  :
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                  :
THE GUARDIAN LIFE INSURANCE COMPANY OF                            :
AMERICA v. PFIZER INC. and                                        :
                                                                  :
AETNA, INC. v. PFIZER INC.                                        :
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW OF PFIZER INC. AND
WARNER-LAMBERT COMPANY IN FURTHER SUPPORT OF
THEIR MOTIONS TO DISMISS THE AMENDED CLASS ACTION COMPLAINT
AND THE FIRST COORDINATED AMENDED COMPLAINT**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .........................................................................................iii

PRELIMINARY STATEMENT................................................................................ 1

ARGUMENT ............................................................................................................. 3

I.      PLAINTIFFS FAIL TO ALLEGE THAT DEFENDANTS MADE
        ANY ACTIONABLE STATEMENTS OR ACTED WITH SCIENTER ......................... 3

II.     PLAINTIFFS FAIL TO PLEAD CAUSATION ADEQUATELY ................................... 8

        A.      Plaintiffs Fail to Allege Facts
                Showing Actual Causation........................................................................ 8

        B.      The Third-Party Payors' Indirect and
                Derivative RICO Claims Fail Due to Remoteness.................................. 11

III.    PLAINTIFFS FAIL TO ALLEGE A COGNIZABLE INJURY ...................................... 13

IV.     PLAINTIFFS FAIL TO PLEAD OTHER ESSENTIAL
        ELEMENTS OF RICO ............................................................................................... 15

        A.      Plaintiffs Do Not and Cannot Allege Adequately
                that the Alleged Enterprises Are Associations-in-Fact ........................... 15

        B.      Plaintiffs Have Not Alleged Adequately that
                Defendants Had Control over the Alleged Enterprises ........................... 19

        C.      Plaintiffs' Predicate Act Allegations Are Inadequate ............................. 20

**Page**

V.      PLAINTIFFS FAIL TO ALLEGE A CLAIM
        UNDER THE VARIOUS CONSUMER FRAUD STATUTES ...................................... 21

        A.      The Third-Party Payors Do Not Have Standing
                Under the New Jersey Consumer Fraud Act ............................................ 21

        B.      The California Unfair Competition Law
                and the New Jersey Consumer Fraud Act
                Do Not Apply to Non-Residents .............................................................. 23

        C.      The Coordinated Complaint Fails To State a Claim
                Under the Remaining Consumer Fraud Statutes ..................................... 25

VI.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED
        ON FIRST AMENDMENT GROUNDS .......................................................... 27

VII.    PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED
        BY THE FDCA .......................................................................................... 30

VIII.   PLAINTIFFS' RICO CLAIMS ARE TIME-BARRED .................................... 35

IX.     PLAINTIFFS FAIL TO PLEAD UNJUST ENRICHMENT ........................... 39

CONCLUSION .......................................................................................................... 40

# TABLE OF AUTHORITIES

## Cases

**Page**

Andrx Pharm., Inc. v. Biovail Corp., 175 F. Supp. 2d 1362 (S.D. Fla. 2001),
  vacated on other grounds by 276 F.3d 1368 (Fed. Cir. 2002) .................................................. 32

Appletree Square I, Ltd. P'ship v. W.R. Grace & Co.,
  29 F.3d 1283 (8th Cir. 1994) .................................................................................................... 10

Bates v. Dow Agrosciences LLC,
  125 S. Ct. 1788 (2005) .............................................................................................................. 34

Blue Cross v. SmithKline Beecham Clinical Labs., Inc.,
  108 F. Supp. 2d 116 (D. Conn. 2000) ....................................................................................... 38

BMW of N. Am., Inc. v. Gore,
  517 U.S. 559 (1996) ................................................................................................................... 28

Bonilla v. Volvo Car Corp.,
  150 F.3d 62 (1st Cir. 1998) ......................................................................................................... 8

Boyes v. Greenwich Boat Works, Inc.,
  27 F. Supp. 2d 543 (D.N.J. 1998) ............................................................................................. 25

In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,
  288 F.3d 1012 (7th Cir. 2002)................................................................................................... 24

Buckman Co. v. Plaintiffs' Legal Comm.,
  531 U.S. 341 (2001) ............................................................................................................ passim

Callahan v. United States,
  337 F. Supp. 2d 348 (D. Mass. 2004) ....................................................................................... 36

Caraker v. Sandoz Pharm. Corp.,
  172 F. Supp. 2d 1018 (S.D. Ill. 2001) ...................................................................................... 32

Clifton v. Fed. Election Comm'n,
  114 F.3d 1309 (1st Cir. 1997) ................................................................................................... 30

Cooperman v. Individual Inc.,
  171 F.3d 43 (1st Cir. 1999) ....................................................................................................... 11

**Page**

Cupek v. Medtronic, Inc.,
No. 04-3201, 2005 WL 911323
(6th Cir. Apr. 21, 2005) ............................................................................. 34

Desiano v. Warner-Lambert Co.,
326 F.3d 339 (2d Cir. 2003) ............................................... 11, 12, 14, 23

Epstein v. C.R. Bard, Inc.,
No. CIV.A.03-12297, 2004 WL 1598912
(D. Mass. July 19, 2004) ............................................................................ 36

Fink v. Ricoh Corp.,
839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) ................................. 10, 25

Fitzgerald v. Smith & Nephew, Inc.,
11 Fed. Appx. 335 (4th Cir. 2000) ........................................................... 31

General Electric Co. v. Iljin Corp.,
No. CIV.A.89-40094, 1993 WL 41752 (D. Mass. Feb. 12, 1993).......... 18

Gooley v. Mobil Oil Corp.,
851 F.2d 513 (1st Cir. 1988) ...................................................................... 26

Grace v. Perception Technology Corp.,
128 F.R.D. 165 (D. Mass. 1989) ............................................................... 24

Greenstone v. Cambex Corp.,
975 F.2d 22 (1st Cir. 1992) .......................................................................... 4

Hawkins v. Upjohn Co.,
890 F. Supp. 609 (E.D. Tex. 1994) ........................................................... 32

Heindel v. Pfizer, Inc.,
No. CIV.A.02-3348(SRC), 2004 WL 1398024
(D.N.J. June 7, 2004)................................................................................... 10

Hundred E. Credit Corp. v. Eric Schuster Corp.,
515 A.2d 246 (N.J. Super Ct. App. Div. 1986) ................................... 21, 22

Int'l Union of Operating Eng'rs Local 69 v. Merck, Inc.,
No. ATL-L-3015-04 (N.J. Super. Ct. Atl. Cty. July 8, 2004) .................... 22

Kavky v. Herbalife Int'l of Am.,
820 A.2d 677 (N.J. Super. Ct. App. Div. 2003) ................................... 21, 22

**Page**

Kemp v. Medtronic, Inc.,
    231 F.3d 216 (6th Cir. 2000)............................................................................... 33

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999)............................................................................... 12

Laker v. Freid,
    854 F. Supp. 923 (D. Mass. 1994) ...................................................................... 4

In re Lupron Mktg. and Sales Practices Litig.,
    295 F. Supp. 2d 148 (D. Mass. 2003) ..................................................... passim

In re Managed Care Litig.,
    185 F. Supp. 2d 1310 (S.D. Fla. 2002) .............................................................. 18

In re Managed Care Litig.,
    298 F. Supp. 2d 1259 (S.D. Fla. 2003) .............................................................. 22

McCallister v. Purdue Pharma L.P.,
    164 F. Supp. 2d 783 (S.D. W. Va. 2001) ........................................................... 32

Medical Soc'y of N.J. v. AmeriHealth HMO, Inc.,
    868 A.2d 1162 (N.J. Super. Ct. App. Div. 2005)................................................ 22

Medical Soc'y of N.J. v. Oxford Health Plans, Inc.,
    No. A-1485-03T1 (N.J. Super. Ct. App. Div. Feb. 14, 2005)............................. 22

Medtronic, Inc. v. Lohr,
    518 U.S. 470 (1996) ........................................................................................... 34

Mendes v. Medtronic, Inc.,
    18 F.3d 13 (1st Cir. 1994) .................................................................................. 33

Miami Herald Publ'g Co. v. Tornillo,
    418 U.S. 241 (1974)........................................................................................... 30

Miranda v. Ponce Fed. Bank,
    948 F.2d 41 (1st Cir. 1991) .................................................................................. 9

Moore v. PaineWebber, Inc.,
    189 F.3d 165 (2d Cir. 1999)................................................................................. 9

Nathan Kimmel, Inc. v. DowElanco,
    275 F.3d 1199 (9th Cir. 2002).............................................................................. 32

**Page**

Nat'l Org. for Women, Inc. v. Scheilder,
    510 U.S. 249 (1994) ................................................................................ 9

Neveroski v. Blair,
    358 A.2d 473 (N.J. Super. Ct. App. Div. 1976)................................. 22, 23

Norwest Mortgage, Inc. v. Superior Court,
    85 Cal. Rptr. 2d 18 (Ct. App. 1999) ...................................................... 25

O'Ferral v. Trebol Motors Corp.,
    45 F.3d 561 (1st Cir. 1995) .................................................................... 7

Ohler v. Purdue Pharma, L.P.,
    No. CIV.A.01-3061, 2002 WL 88945 (E.D. La. Jan. 22, 2002)................ 32

Pacific Gas & Elec. Co. v. Public Utils. Comm'n,
    475 U.S. 1 (1986) .................................................................................. 29

Pharmacare v. Caremark,
    965 F. Supp. 1411 (D. Haw. 1996) ........................................................ 18

In re Pharm. Indus. AWP Litig.,
    263 F. Supp. 172 (D. Mass. 2003) ................................................... 17, 18

In re Pharm. Indus. AWP Litig.,
    307 F. Supp. 2d 196 (D. Mass. 2004) .............................................. 15, 17

Reves v. Ernst & Young,
    507 U.S. 170 (1993) .............................................................................. 19

In re Rezulin Prods. Liab. Litig.,
    210 F.R.D. 61 (S.D.N.Y. 2002) ............................................................ 14

Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,
    487 U.S. 781 (1988) .............................................................................. 30

Rivera v. Wyeth-Ayerst Labs.,
    283 F. 3d 315 (5th Cir. 2002)................................................................ 13

Rodriguez v. Banco Cent. Corp.,
    917 F.2d 664 (1st Cir. 1990) ................................................................. 35

**Page**

Shaw Indus., Inc. v. The Superior Court of Los Angeles,
    No. B167878, 2003 WL 22995267
    (Cal. Ct. App. Dec. 22, 2003) ................................................................................... 25

Sikes v. Teleline, Inc.,
    281 F.3d 1350 (11th Cir. 2002) ................................................................................ 10

Slavin v. Morgan Stanley & Co.,
    791 F. Supp. 327 (D. Mass. 1992) ........................................................................... 36

Talbott v. C.R. Bard, Inc.,
    865 F. Supp. 37 (D. Mass. 1994),
    aff'd, 63 F.3d 25 (1st Cir. 1995) ........................................................................ 33, 34

Truck Drivers & Helpers Union, Local No. 170 v. N.L.R.B.,
    993 F.2d 990 (1st Cir. 1993) .................................................................................... 37

United States v. Doherty,
    867 F.2d 47 (1st Cir. 1989) ...................................................................................... 16

United States v. London,
    66 F.3d 1227 (1st Cir. 1995) .................................................................................... 16

United States ex rel. Franklin v. Parke-Davis,
    No. CIV.A.96-11651(PBS), 2003 WL 22048255
    (D. Mass. Aug. 22, 2003) ........................................................................................ 11

Wash. Legal Found. v. Friedman,
    13. F. Supp. 2d 51 (D.D.C. 1998) ...................................................................... 28, 29

Wash. Legal Found. v. Henney,
    202 F.3d 331 (D.C. Cir. 2000) ................................................................................... 7

Watterson v. Page,
    987 F.2d 1 (1st Cir. 1993) ........................................................................................ 36

Webster v. Pacesetter, Inc.,
    259 F. Supp. 2d 27 (D.D.C. 2003) ........................................................................... 35

Wershba v. Apple Computer, Inc.,
    110 Cal. Rptr. 2d 145 (Ct. App. 2001) ..................................................................... 24

**Page**

W. 79th Street Corp. v. Congregation Kahl Minchas Chinuch,
No. 03 Civ. 8606, 2004 WL 2187069
(S.D.N.Y. Sept. 29, 2004) ................................................................................... 15

Williams v. Purdue Pharma Co.,
297 F. Supp. 2d 171 (D.C. Cir. 2003) ............................................................. 13, 14


**Statutes & Rules**

21 U.S.C. § 360aaa(c) .......................................................................................... 7

21 U.S.C. § 360aaa-1(a)(2) .................................................................................. 7

Fed. R. Civ. P. 9(b) ........................................................................................... 1, 7

Fed. R. Civ. P. 12(b)(6) ........................................................................ 1, 10, 26, 36

N.J. Stat. § 2C:21-10(a) ....................................................................................... 21


**Other Authorities**

American Medical Association, Guidelines E-8.061
Gifts to Physicians from Industry (1998),
http://www.ama-assn.org/ama/pub/category/8484.html ........................................ 7

Federal Judicial Center, Manual for Complex Litigation 3d (1995) ............................ 20

Office of Inspector General, Compliance Program Guidance for
Pharmaceutical Manufacturers (Apr. 2003) ...................................................... 8

PhRMA Code on Interactions with Healthcare Professionals (2002) ............................ 7

Defendants Pfizer Inc. ("Pfizer") and Warner-Lambert Company ("Warner-Lambert") respectfully submit this reply memorandum of law in further support of their motions to dismiss the Amended Class Action Complaint (the "Class Complaint") and the First Coordinated Amended Complaint (the "Coordinated Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## PRELIMINARY STATEMENT

Plaintiffs' effort to recast allegations of off-label promotion of Neurontin into claims of fraud and racketeering is too little, and far too late. Unable to demonstrate that their claims have been alleged adequately, plaintiffs rely instead upon general averments of scienter, lengthy citations to vaguely alleged meetings and payments, and colorful attacks on defendants.

One of the most glaring weaknesses in plaintiffs' arguments remains the lack of specific facts supporting their allegations of scienter. Plaintiffs' opposition fails to identify a single factual allegation in the 235 pages of their complaints suggesting that the maker of any statement was aware of any facts contradicting the statement, let alone that such statement was made with an intent to defraud. In an effort to side-step these inadequacies, plaintiffs attempt to base their claims on alleged half-truths and omissions. This argument fails because plaintiffs neither specify any purported half-truths or omissions, nor identify any facts to support an allegation that defendants had the requisite scienter with respect to any alleged half-truths or omissions. Moreover, plaintiffs fail to identify any duty that would require defendants to disclose the information that plaintiffs say defendants should have disclosed.

Plaintiffs also fail to identify a single prescription that they paid for that resulted from the alleged misconduct. Instead, plaintiffs attempt to plead causation by relying on the fraud-on-the-

market theory, which is inapplicable outside the securities context.  In addition, the third-party

payors' racketeering claims are subject to dismissal on remoteness grounds because they are

derivative of the claims of their insureds and because the complaints do not allege that

misrepresentations were made to any third-party payors.  Plaintiffs also fail to allege injury.

Although one of the complaints (but not the other) alleges that Neurontin was ineffective for all

off-label uses, that complaint offers no specificity to support that unsubstantiated assertion.

     Plaintiffs' opposition makes colorful references to "consigliere" and "shills," but

invoking mob allusions is not enough to plead a RICO enterprise.  Plaintiffs' allegations do not

satisfy the most important requirement in pleading an association-in-fact – namely, that all the

participants knew of the fraudulent nature of the enterprise.  Instead, plaintiffs focus on the

common purpose test, to the exclusion of nearly all other relevant factors, but offer nothing more

than non-specific and legally insufficient allegations that the participants in the alleged enterprise

shared the common purpose of making money.

     Further, plaintiffs fail to address the defects of their state consumer fraud claims.  For

example, plaintiffs do not explain why the California Unfair Competition Law (the "UCL") or

the New Jersey Consumer Fraud Act (the "NJCFA") should apply to claims with no apparent

connection to California and New Jersey, respectively.  In a glaring commentary on the

weakness of their arguments, plaintiffs do little beyond asking the Court to refrain from deciding

the issue at this stage of the case, a particularly puzzling position given that the defendants are

entitled to a ruling as to whether the named plaintiffs have alleged facts to state a claim under

these statutes.

Finally, plaintiffs' claims are not timely, as their injuries accrued when they began paying for Neurontin well more than four years before they brought their complaints.  Moreover, plaintiffs do not and cannot plead fraudulent concealment or reasonable due diligence because the facts giving rise to their claims were in the public domain also more than four years before they brought suit.  If the foregoing defenses are not enough, plaintiffs have failed to respond adequately to defendants' argument that allowing retrospective damages actions would violate the First Amendment and that plaintiffs' claims – which are admittedly predicated on a violation of the Food, Drug & Cosmetic Act (the "FDCA") – are preempted by extensive federal regulation of prescription medicines.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO ALLEGE THAT DEFENDANTS MADE ANY ACTIONABLE STATEMENTS OR ACTED WITH SCIENTER

In their moving brief, defendants demonstrated that plaintiffs not only failed to allege any facts supporting an allegation that the misrepresentations identified in the complaints were made with scienter but also failed to set forth facts contradicting any of those statements.  Defs.' Mem. at 6-11.  In opposition, plaintiffs effectively abandon any argument that the purported misrepresentations have been adequately alleged by completely failing to discuss any of the statements at issue.  Pls.' Opp'n at 5-9.  Instead, plaintiffs accuse defendants of ignoring allegations of half-truths and omissions.  Id. at 5-6.  Plaintiffs never identify, however, any half-truths, at least none that differ from the alleged misstatements which defendants analyzed.  Id. at 5-9.  Moreover, plaintiffs do not identify any specific facts supporting an allegation that defendants had the requisite scienter with respect to any alleged half-truths.  Id. at 10-11. Plaintiffs also fail to come forward with any duty to disclose that would render any alleged

3

omissions actionable.  Id. at 8-9.  For these reasons, plaintiffs' claims under RICO, common law

fraud, Pennsylvania insurance fraud, and fifty-two consumer fraud statutes must be dismissed.

The most striking deficiency in plaintiffs' opposition is its total failure to identify any

specific facts in the complaints supporting plaintiffs' general allegations of scienter.  As this

Court has recognized in a similar context, a complaint alleging fraud should be dismissed if it

makes merely a "general averment of the defendant's 'knowledge' of material falsity, unless the

complaint also sets forth specific facts that make it reasonable to believe that defendant knew

that a statement was materially false or misleading."  Laker v. Freid, 854 F. Supp. 923, 931 (D.

Mass. 1994) (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992)).  Here,

plaintiffs' allegations of scienter are not specific.  (Class Compl. ¶ 45; Coor. Compl. ¶ 3; see

Pls.' Opp'n at 10-11.)  Moreover, the fact that Warner-Lambert pled guilty to a non-fraudulent

charge of off-label promotion not only fails to support a finding of scienter, but arguably

undermines it.  Pls.' Opp'n at 11.

Defendants' moving brief analyzed each of the alleged false statements regarding

efficacy – whether made by a doctor or sales representative and whether made orally at a

meeting or in writing in a journal.  Defs.' Mem. at 9-11.  As defendants explained, plaintiffs'

complaints have not pled any facts supporting the allegation that these statements were made

with intent to defraud.  Id.  This is true whether these statements are characterized as

misrepresentations or half-truths.  Indeed, plaintiffs have not identified any contrary facts of

which the speakers were aware when they made the alleged statements, let alone any facts

indicating that they acted with an intent to defraud.  Pls.' Opp'n at 6-11.

4

For example, plaintiffs alleged that Dr. Steven Schacter stated in a meeting that "pain specialists are finding that low dosages of Neurontin are effective." (Coor. Compl. ¶ 102; Class Compl. ¶ 129.) Defendants' moving brief highlighted the fact that besides failing to allege that Neurontin was ineffective for pain, plaintiffs did not allege that Dr. Schacter made this statement with actual knowledge to the contrary. Defs.' Mem. at 10 n.6. Plaintiffs' opposition never attempts to address this deficiency. Similarly, defendants noted that while plaintiffs allege that another physician (Dr. Longmire) allegedly stated that Neurontin was effective for the treatment of pain, the complaints do not allege that he was aware of facts demonstrating that Neurontin is ineffective for pain. Id. at 9-10. Plaintiffs' failure to plead facts supporting an allegation that any statements were made with scienter is fatal to their claims.

In response to defendants' arguments that plaintiffs failed to allege false or fraudulent statements with specificity, plaintiffs counter that the complaints contain thirty-five pages of detailed allegations. Pls.' Opp'n at 10. Mistaking length for specificity, plaintiffs ignore the fact that the vast majority of the details in the complaints do not relate to any specific alleged misrepresentations or omissions. (See, e.g., Class Compl. ¶¶ 109, 135, 140; Coor. Compl. ¶¶ 95, 102, 130.) Specificity is not achieved by alleging the dates and locations of meetings or conferences with nothing more than a vague allegation that unspecified statements were made by unidentified doctors at these venues.

To the extent that plaintiffs are contending that defendants made false statements because Neurontin is ineffective for off-label uses, their allegations are deficient. In their opposition, plaintiffs cite to a few paragraphs in the complaints that purportedly allege that Neurontin is not

effective for off-label uses.  Pls.' Opp'n at 6 n.2.  Contrary to plaintiffs' assertion, the

Coordinated Complaint does not even contain a general allegation of ineffectiveness.  Id. at 6 &

n.2 (citing Coor. Compl. ¶ 249).  Moreover, the Class Complaint does not allege that Neurontin

is ineffective as to any particular indication and does not plead a factual basis for any such

allegation.

Plaintiffs also argue that defendants' alleged statements were misleading because

defendants did not have enough scientific evidence to obtain FDA approval.  This assertion,

which is not supported by any facts, might arguably be relevant if plaintiffs had alleged that

defendants told doctors that sufficient proof existed to convince the FDA of efficacy, but no such

allegation is contained in the complaints.  In order for a statement that "Neurontin is effective for

a particular off-label use" to be actionable, plaintiffs must allege with particularity that Neurontin

is not, in fact, effective for such use and that the maker of the statement not only knew this but

intended to defraud others.  It is certainly not enough for plaintiffs to allege that the FDA had not

approved Neurontin for a particular use.  Plaintiffs do not allege that a single physician actually

equated "efficacy" with FDA approval, which would fly in the face of medical practice and defy

common sense.  Defs.' Mem. at 7-8.  Specific factual allegations of Neurontin's lack of efficacy

for specific off-label cases are absolutely essential to plaintiffs' claims.

Rather than confront these infirmities, plaintiffs instead focus on vague allegations of

half-truths and omissions.  Pls.' Opp'n at 6-9.  The plaintiffs ignore the fact that they must

identify specific half-truths or omissions, plead that the speaker was aware of specific contrary

facts, and allege scienter with particularity.  The failure to do so violates Rule 9(b).

Moreover, while plaintiffs acknowledge that omissions are not actionable under mail and wire fraud unless there is a duty to disclose, they fail to identify such a duty. The First Circuit has repeatedly stated that "mere nondisclosure, absent some affirmative misrepresentation or a special duty of disclosure, does not comprise RICO fraud." O'Ferral v. Trebol Motors Corp., 45 F.3d 561, 563 (1st Cir. 1995). To overcome this pleading hurdle, plaintiffs suggest that pharmaceutical manufacturers are under a legal duty to provide "fair and balanced information regarding their products for off-label use." Pls.' Opp'n at 9 & n.6. Plaintiffs assert that 21 U.S.C. §§ 360aaa(c) and 360aaa-1(a)(2) create this duty to disclose. As an initial matter, plaintiffs' reliance on 21 U.S.C. § 360aaa(c) is particularly puzzling because this provision relates to additional information that the Secretary of Health and Human Services could require a drug manufacturer to disseminate after reviewing initial materials supplied by the company in order to qualify for a safe harbor. This provision, therefore, has no application to the allegations in these actions. Moreover, as the FDA itself has acknowledged, these provisions were intended to be *safe harbors* and do not independently authorize the FDA to prohibit or sanction statements by drug manufacturers. See Wash. Legal Found. v. Henney, 202 F.3d 331, 335 (D.C. Cir. 2000). Because these provisions do not apply here and do not impose affirmative obligations, plaintiffs' reliance on them is completely misplaced.

Plaintiffs also cite three voluntary guidelines in support of their argument that defendants were under a duty to disclose the information allegedly omitted. Pls.' Opp'n at 9 n.6. It is clear that these guidelines do not purport to impose any duties. See PhRMA Code on Interactions with Healthcare Professionals preamble at 1, pt.9 at 5 (2002) (encouraging adherence to this

"voluntary" code); Office of Inspector General, <u>Compliance Program Guidance for Pharmaceutical Manufacturers</u> at 2 (Apr. 2003) (explaining that it "is not a compliance program," but rather part of an effort "to promote voluntary compliance programs").[1]

   <u>Bonilla v. Volvo Car Corporation</u>, a case relied upon by plaintiffs, makes clear that "there is no general obligation of the seller to tell the buyer everything negative that the buyer might be interested in learning about the transaction or item to be purchased." 150 F.3d 62, 70 (1st Cir. 1998). For this reason, numerous statutes and regulations have been enacted to require specified disclosures in certain circumstances. <u>Id.</u> at 70 n.10. Plaintiffs' failure to identify any such statutory or regulatory obligations is fatal to their claims based on omissions.

## II.    PLAINTIFFS FAIL TO PLEAD CAUSATION ADEQUATELY

### A.    Plaintiffs Fail to Allege Facts Showing Actual Causation

   Defendants previously argued that plaintiffs must plead that the alleged misconduct was the proximate cause of their purported injuries. Defs.' Mem. at 11. Plaintiffs do not dispute this pleading requirement but instead contend that their supposedly detailed pleading of defendants' purported scheme to promote Neurontin for off-label uses along with a general increase in off-label prescription satisfies this requirement. Pls.' Opp'n at 11-12.

   Plaintiffs' allegations of causation, contained in a single paragraph, suffer from an obvious deficiency: failure to point to a single prescription of Neurontin paid for by them that resulted from a representation made by defendants. Plaintiffs' inability to plead causation is

---

[1] In fact, one of the guidelines does not even purport to apply to anyone other than doctors. <u>See</u> American Medical Association, Code of Ethics, <u>Guidelines E-8.061 Gifts to Physicians from Industry</u> (1998), http://www.ama-assn.org/ama/pub/category/8484.html.

particularly pronounced with regard to RICO, which has a heightened causation standard.  See

Moore v. PaineWebber, Inc., 189 F.3d 165, 179 (2d Cir. 1999) (Calabresi, G., concurring) ("In

practice, our courts have held RICO plaintiffs to a more stringent showing of proximate cause

than would be required at common law."); Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir.

1991) (explaining that RICO must be plead to a high standard because "civil RICO is an

unusually potent weapon – the litigation equivalent of a thermonuclear device").[2]

Plaintiffs have failed to allege that any doctors, let alone their particular doctors,

prescribed Neurontin because of defendants' alleged misconduct or that plaintiffs paid for any

resulting prescriptions.  Even if the third-party payors are not required at this stage to make these

allegations with respect to every prescription they paid for, they must come forward with facts to

show that at least some specific prescriptions for which they paid resulted from defendants'

alleged misconduct.  And the individual plaintiffs are certainly required to allege that their

doctors prescribed Neurontin as a result of false or misleading statements made to those doctors.

Plaintiffs' opposition has not advanced the ball.  Instead of identifying a causal link

between the alleged misconduct and their payments of Neurontin, plaintiffs claim that defendants

made a "deliberate decision . . . to unlawfully promote Neurontin" and that sales grew over time,

demonstrating that the alleged scheme "worked."  Pls.' Opp'n at 11-12.  To survive dismissal,

however, plaintiffs must allege facts demonstrating that they paid for Neurontin as a result of the

alleged misconduct.  They have not.  The continued strong demand for, and increased sales of,

Neurontin is equally consistent with the conclusion that physicians continue to find Neurontin to

---

[2] Plaintiffs' reference to National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994), is misplaced since that decision concerned injury and is not germane to the standard for pleading causation under RICO.

be safe and effective for off-label uses.  There are no facts to support the allegation that off-label

sales increased as a result of defendants' alleged misconduct as opposed to this or any of a

number of other possible factors.  This complete failure to plead actual causation, after access to

the discovery from the <u>Franklin</u> case and years to investigate their claims, mandates dismissal of

all of plaintiffs' claims with prejudice under Rule 12(b)(6), as well as RICO's heightened

pleading standard.

Plaintiffs also attempt to overcome their failure to allege facts showing actual causation

by implicitly, if not explicitly, relying on a fraud-on-the-market theory to establish a presumption

of causation.  Plaintiffs, however, fail to address the fact that the theory has never been applied

outside the securities context.  Defs.' Mem. at 12 (citing cases); <u>see also</u> <u>Sikes v. Teleline, Inc.</u>,

281 F.3d 1350, 1363 (11th Cir. 2002); <u>Appletree Square I, Ltd. P'ship v. W.R. Grace & Co.</u>, 29

F.3d 1283, 1287 (8th Cir. 1994).  In the prescription medicine context, there is no indication that

an efficient market for information exists such that it can be presumed that every prescription for

Neurontin resulted from an alleged misstatement regarding the medicine.  <u>See</u> <u>Heindel v. Pfizer,

Inc.</u>, No. CIV.A.02-3348(SRC), 2004 WL 1398024, at *14-15 (D.N.J. June 7, 2004).

Plaintiffs contend that the cases cited by defendants which refused to accept a fraud-on-

the-market theory of causation, including those in the pharmaceutical arena, are distinguishable

because they relate to price inflation.  Pls.' Opp'n at 13-14.  While these cases certainly address

price inflation, this does not diminish their relevance here.  These courts rejected the fraud-on-

the-market theory not simply because the cases involved price inflation but because the relevant

industries did not have efficient markets similar to certain securities markets.  <u>See</u> <u>Heindel</u>, 2004

WL 1398024, at *14-15; <u>Fink v. Ricoh Corp.</u>, 839 A.2d 942, 963-64 (N.J. Super. Ct. Law Div.

2003).  Application of a fraud-on-the-market theory is inappropriate here for the same reason –

information regarding medications is not disseminated through an efficient market.

Finally, plaintiffs try to circumvent the necessity of alleging causation specifically by

claiming that it is a jury question and cannot be grounds for dismissal.  Pls.' Opp'n at 12.[3]  While

the sufficiency of proof of causation may sometimes be a jury question, this does not mean that

plaintiffs are excused from pleading it with specific factual support.  See Cooperman v.

Individual Inc., 171 F.3d 43, 47-48 (1st Cir. 1999) (explaining that plaintiffs must sufficiently

assert facts with respect to every element of a cause of action to survive a motion to dismiss).

Because plaintiffs fail to plead facts supporting their allegation of causation, namely that specific

statements or omissions caused specific prescriptions of Neurontin to be written that were in fact

paid for by plaintiffs, the complaints should be dismissed with prejudice.[4]

### B.     The Third-Party Payors' Indirect and Derivative RICO Claims Fail Due to Remoteness

Defendants have also set forth an independent basis for dismissal of the third-party

payors' RICO claims, namely that the alleged injury is indirect or derivative and, therefore, too

remote.  Defs.' Mem. at 13-14.  Plaintiffs, relying on Desiano v. Warner-Lambert Company, 326

F.3d 339 (2d Cir. 2003), attempt to overcome this issue by claiming that the third-party payors

were directly injured by defendants and that their injuries are not derivative of injuries to their

---

[3] Plaintiffs' reliance on the Court's decision in United States ex rel. Franklin v. Parke-Davis, No. Civ.A.96-11651(PBS), 2003 WL 22048255 (D. Mass. Aug. 22, 2003), is misplaced because that case involved causation under the False Claims Act, not under RICO or state consumer fraud statutes.

[4] Plaintiffs misinterpret defendants' argument on page 13 of the moving brief as a foreseeability argument. Pls.' Opp'n at 12-13.  In this paragraph, defendants were simply setting forth the additional hurdles that plaintiffs would have to overcome if they were alleging that misrepresentations were made directly to consumers.  It is now clear from plaintiffs' opposition that they are not, in fact, alleging that any statements were made to patients.

insureds. Pls.' Opp'n at 14-16. This argument fails for two reasons. First, the <u>Desiano</u> court stated explicitly that it was not reviewing the issue of proximate causation or remoteness under RICO, which it acknowledged was more stringent than state or common law proximate causation requirements. 326 F.3d at 348. Second, the plaintiffs in <u>Desiano</u> claimed that the fraudulent statements were directed at the public, including the third-party payors who allegedly suffered their own injury (i.e., higher prices) distinct from any injury suffered by their insureds. <u>Id.</u> at 342-44. In the instant case, the third-party payors claim that doctors, not the third-party payors or the public, were the recipients of the alleged misstatements. (Class Comp. ¶¶ 53, 55, 156; Coor. Compl. ¶¶ 37, 77, 106; <u>see also</u> Pls.' Opp'n at 6.)

    Nowhere in the hundreds of pages of the complaints do plaintiffs claim that the defendants made any statements whatsoever to the third-party payors. The third-party payors, therefore, were not misled in any way and any injury that they allegedly suffered is derivative of the alleged injury to another party. For this reason, the third-party payors' claims fail as a matter of law. <u>See, e.g.</u>, <u>Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.</u>, 191 F.3d 229, 238-39 (2d Cir. 1999) ("<u>Laborers Local 17</u>"). In <u>Laborers Local 17</u>, as in the instant case, the allegedly false statements were not made to the third-party payors. In fact, causation is even more remote here than in <u>Laborers Local 17</u> because in that case it was alleged that misstatements were made to the parties insured by the plaintiffs. Here it is not alleged that statements were made to the third-party payors or those they insured, and their claims are therefore too remote.

12