# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ASSURANT HEALTH, INC., et al.,

    Plaintiffs,

v.

PFIZER, INC., et al.,

    Defendants.

Civil Action:  2:05-cv-0095

Hon. Joel A. Pisano, U.S.D.J.
Hon. Madeline C. Arleo, U.S.M.J.

## PLAINTIFFS' MEMORANDUM
## IN SUPPORT OF MOTION TO REMAND

BUDD LARNER
David J. Novack
150 JFK Parkway
Short Hills, NJ  07078
(973) 379-4800

*Admitted pro hac vice:*

ROBINS, KAPLAN, MILLER &
CIRESI L.L.P.
Annamarie A. Daley
Mark Ireland
Sonya C. Seidl
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

Attorneys for Plaintiffs

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

LEGAL ARGUMENT ......................................................................................... 6

I.  DEFENDANTS' PETITION FOR REMOVAL FAILED TO COMPLY WITH
    THE STATUTORY REMOVAL REQUIREMENTS ..................................... 6

II. DEFENDANTS HAVE FAILED TO ESTABLISH FEDERAL
    QUESTION JURISDICTION AND PLAINTIFFS' MOTION TO REMAND
    SHOULD BE GRANTED ............................................................................ 8

    A.  Defendants Have The Heavy Burden Of Establishing That Plaintiffs'
        Complaint Could Have Originally Been Brought In Federal Court Pursuant
        To Each and Every Alleged Theory of Liability ..................................... 8

    B.  Defendants Mischaracterize The Allegations Made In Plaintiffs' Complaint ........ 9

    C.  The FDCA and Patent Laws Are Not Substantial and Essential To
        Ultimately Find Defendants Liable Pursuant To Plaintiffs' State Law Causes
        of Action ................................................................................................. 11

        1.  There is not a "substantial" issue of federal law under the FDCA
            because there is no private cause of action to remedy a violation ............ 11

        2.  Issues of federal patent law are not essential to a finding of liability
            pursuant to each theory of liability alleged in Plaintiffs' Complaint ........ 13

            a.  The mere presence of a patent does not automatically create a
                substantial question of federal law ................................................. 13

            b.  A substantial question of federal law must be essential to each
                and every theory of liability pled for federal question
                jurisdiction to be proper ................................................................. 16

                i.   Manipulation and delay in acquiring patents and
                     interacting with the FDA for anticompetitive purposes .... 17

                ii.  Bad-faith litigation ........................................................... 18

                iii. Leveraging of monopoly power ......................................... 20

i

iv. Improper agreements and payments to doctors to prescribe Neurontin............................................................ 21

v. False, deceptive, and misleading advertising and marketing campaign........................................................... 21

c. Plaintiffs' Complaint differs from complaints in the minority of cases that were not remanded to state court ............................. 23

III. THIS COURT SHOULD NOT DEFER RULING ON THE MOTION TO REMAND.. 25

CONCLUSION........................................................................................................................ 27

# TABLE OF AUTHORITIES

## Cases

*Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*
54 F.Supp.2d 1042 (D. Kan. 1999)................................................................... 14, 19, 26

*Altman v. Bayer Corp.*
125 F.Supp.2d 666 (S.D.N.Y. 2000)................................................................... 15, 20

*American Well Works Co. v. Layne & Bowler Co.*
241 U.S. 257, 36 S.Ct. 585 (1916)..................................................................... 13, 22

*Anthem, Inc. v. Bristol-Myers Squibb Co.*
No. 03-0008, 2003 U.S. Dist. Lexis 15762 (D.N.J. March 18, 2003) ................................ 15, 25

*Berkey Photo v. Eastman Kodak Co.*
603 F.2d 263 (2d Cir. 1979)................................................................................. 19

*Boyer v. Snap-On Tools Corp.*
913 F.2d 108 (3d Cir. 1990)................................................................................... 7

*Christianson v. Colt Indus. Operating Corp.,*
486 U.S. 800, 108 S.Ct. 2166 (1988)........................................ 11, 12, 15, 19, 21, 22

*Congress of California Seniors, et al. v. Pfizer, Inc. and Parke-Davis*
CV-03-1564-SVW ................................................................................................ 12

*Drug Mart v. Abbott Labs*
No. 99-MDL-1317 (S.D. Fla. Aug. 28, 2000) ................................................................ 15

*Dukes v. U.S. Healthcare, Inc.*
57 F.3d 350 (3d Cir. 1995)...................................................................................... 8

*Eastern R.R. President's Conf. v. Noerr Motor Freight, Inc.*
365 U.S. 127 (1961)............................................................................................. 19

*Eastman Kodak Co. v. Image Technical Servs.*
504 U.S. 451, 112 S.Ct. 2072 (1992)...................................................................... 20

*Fair v. Kohler Die & Specialty Co.*
228 U.S. 22, 33 S.Ct. 410 (1913)........................................................................ 8, 9

*Farkas v. Bridgestone/Firestone, Inc.*
113 F.Supp.2d 1107 (W.D. Ky. 2000)....................................................................... 25

*Franchise Tax Board v. Construction Laborers Vacation Trust*
463 U.S. 1, 9-10, 103 S.Ct. 2841 (1983) ..................................................... 8, 10, 13

*Guckin v. Nagle*
259 F.Supp.2d 406 (E.D. Penn. 2003) ...................................................................... 12

*Healy v. Sea Gull Specialty Co.*
237 U.S. 479, 35 S.Ct. 658 (1915)............................................................................ 9

*In re Cardizem CD Antitrust Litig.*
  90 F.Supp.2d 819 (E.D. Mich. 1999)............................................................ 14, 18, 20

*In re Ciproflaxin Hydrochloride Antitrust Lit.*
  166 F. Supp. 2d 740 (E.D.N.Y. 2001) .......................................................... 13, 15, 23

*In re NASDAQ Market Makers Antitrust Litig.*
  929 F.Supp. 174 (S.D.N.Y. 1996) ........................................................................... 6

*In re Neurontin Marketing and Sales Practices Litigation*
  MDL No. 1629 (D. Mass) .................................................................................... 25

*In re Tamoxifen Citrate Antitrust Litigation*
  222 F.Supp.2d 326 (E.D.N.Y.2002) .................................................................... 23

*In the Matter of Biovail Corp.*
  2002 F.T.C. LEXIS 56 (Oct. 4, 2002) .................................................................. 17

*Intelnet International Corp. v. WorldCom Technologies, Inc.*
  Civ. Action No. 99-2273, 2000 Lexis 15828 (D.N.J. April 12, 2000) ...................... 22

*International Travel Arrangers, Inc. v. Western Airlines, Inc.*
  623 F.2d 1255 (8th Cir. 1980) ............................................................................. 21

*Leslie v. Bantac Serv. Corp.*
  928 D.Supp. 341 (S.D.N.Y. 1996) .......................................................................... 7

*McGrew v. Shering-Plough Corp.*
  No. 01-2311-GTV, 2001 WL 950790 (D. Kan. Aug. 6, 2001) ............................... 14

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*
  478 U.S. 804, 106 S.Ct. 3229 (1986)............................................................ 10, 12,,13

*Montana v. Abbott Laboratories*
  266 F.Supp.2d 250 (D. Mass. 2003) .................................................................... 12

*National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories*
  850 F.2d 904 (2d Cir. 1988)................................................................................. 21

*Sall v. Pfizer Inc.*
  MDL Docket No. 1479 (Order) (January 7, 2005) ........................................... 23, 24

*Smith v. Indus. Valley Title Ins. Co.*
  957 F.2d 90 (3d Cir. 1992).............................................................................. 12, 19

*Smith-Kline Corp. v. Eli Lilly & Co.,*
  575 F.2d 1056 (3d Cir. 1978).............................................................................. 19

*Steel Valley Auth. v. Union Switch and Signal Div.*
  809 F.2d 1006 (3d Cir.1987)............................................................................ 6, 8

*Stern v. Mut. Life Ins. Co.*
  968 F.Supp. 637 (N.D. Ala. 1997)....................................................................... 26

*Stuart v. Pfizer, Inc.*
  No. 02-2511 (Order) (W.D. Tenn. Oct. 2, 2002) ............................................. 23, 24

iv

*Telesis Mergers & Acquisitions, Inc. v. Atlis Fed. Svcs, Inc.*
   918 F.Supp. 823 (D. N.J. 1996) ........................................................... 6

*Temptations. Inc. v. Wager*
   26 F. Supp. 2d 740 (D.N.J. 1998) ........................................................ 13

*Times-Picayune Publishing Co. v. United States*
   345 U.S. 594, 73 S.Ct. 872 (1953)) .................................................... 20

*Tortola Restaurants, L.P. v. Kimberly-Clark Corp.*
   987 F.Supp 1186 (N.D. Cal. 1997) ..................................................... 26

*Uroplasty Inc. v. Advanced Uroscience, Inc.,*
   239 F.3d 1277 (Fed. Cir. 2001)........................................................... 11

## Statutes

28 U.S.C. § 1331 ...................................................................................... 5

28 U.S.C. § 1332 ...................................................................................... 5

28 U.S.C. § 1338 ............................................................................. 13, 16, 24

28 U.S.C. § 1407 ..................................................................................... 25

28 U.S.C. § 1446(a-b) (2002) .................................................................. 7

28 U.S.C. § 1447(c ) ..................................................................... 6, 25, 26

Fed. R. Civ. P. 11(a) (2004) ..................................................................... 7

Local Civ. R. 11.1 (2004) ......................................................................... 7

## Other Authorities

*Federal Practice and Procedure: Jurisdiction 3d* § 3721 (3d ed.1998)........................................ 8

*Manual for Complex Litig.* § 31.131 at 252 (3d ed. 1995) ........................................ 25

## INTRODUCTION

Plaintiffs' motion to remand this action to state court should be granted for two reasons. First, Defendants' removal failed to comply with the statutory requirements. On this basis alone, Plaintiffs' motion should be granted. Second, Plaintiffs' Complaint does not allege any federal causes of action, and the success of Plaintiffs' purely state law claims do not depend upon the resolution of substantial and essential issues of federal law. At the heart of Plaintiffs' Complaint is a civil conspiracy, based on Defendants' decision to illegally increase Pfizer's market share and power through a false, deceptive, and misleading marketing campaign, while misusing the legal and regulatory system to extend its market exclusivity. This scheme allowed Defendants to restrain competition in the market including its blockbuster drug, Neurontin; to improperly leverage its market share and power to restrain competition for another product; to illegally fix the price of Neurontin at a supracompetitive level; and to charge prescription drug purchasers, such as Plaintiffs, an inflated price.

Defendants erroneously based their petition for removal upon a purported question of federal law. Specifically, Defendants state that Plaintiffs alleged violations of the Food, Drug and Cosmetic Act— which they did not— and that liability turns on whether the court finds that Defendants conduct complies with this federal law. Defendants also claim that Plaintiffs' references to patents in their Complaint raises substantial issues of federal patent law. These grounds for removal are not a proper basis for federal question jurisdiction, because federal question jurisdiction depends upon an issue of federal law being both substantial and essential to finding liability pursuant to each and every theory alleged in Plaintiffs' Complaint.

The United States Supreme Court has held that purported violations of, or compliance with, the Food, Drug and Cosmetic Act are not substantial issues of federal law, because the Act does not provide for a private cause of action. Mere references to Defendant Pfizer's patents are

1

also not a proper basis for federal question jurisdiction because a determination as to the validity

of such patents are not essential to finding liability pursuant to each, if any, theory of liability in

Plaintiffs' Complaint. Therefore, Plaintiffs respectfully request that the court grant their motion

to remand.

## BACKGROUND

Defendants have engaged in a continuous and ongoing scheme to illegally expand and

maintain market share and power. (Plaintiffs' Complaint ¶ 1.) This civil conspiracy began in

1994 or 1995 when Defendants met and devised a plan to restrain, if not entirely prevent,

competition from manufacturers and distributors of generic bioequivalents of Neurontin. (*Id.* at

¶ 32.) At that time, Defendants understood that, if they did not create and then implement this

scheme, generic bioequivalents would soon enter the market on or about June 16, 2000, costing

Defendant Pfizer (as the successor to Warner-Lambert) billions of dollars in sales. (*Id.* at ¶¶

29,30) Defendants also understood that the availability of a generic bioequivalent of Neurontin

would negatively impact the sales of another drug, which Defendant Pfizer was developing for

sale. (*Id.* at ¶ 33.) Defendants' scheme both delayed generic bioequivalents of Neurontin from

entering the market and increased the demand for Neurontin beyond the limited demand for its

only approved use. (*Id.*) [1]

As described in detail below, Defendants decided to expand and to extend Neurontin's

market share and power through a false, deceptive, and misleading advertising campaign, and/or

misuse of the legal and regulatory system. (*Id.* at ¶ 32.) Pursuant to this scheme, Defendants

illegally marketed Neurontin for certain uses that were not safe and effective, in conjunction with

---

[1] Neurontin had been approved only as an anti-convulsant agent for adjunctive treatment, not for a stand-alone treatment, of seizures for adults with epilepsy up to 1800 mg/day. (*Id.*)

2

a series of patent infringement lawsuits that harassed and intimidated competitors and automatically stayed generic bioequivalents from entering the market. (*Id.* at ¶¶ 32,51.)

Defendant Pfizer entered into a conspiracy with doctors, providers, marketing firms, and other independent entities to further its anticompetitive goals. (*Id.* at ¶ 38.) Pursuant to the agreements, Defendant Pfizer paid these third parties money in exchange for the false, deceptive, and misleading promotion of Neurontin and the parties had full knowledge of the agreement's anticompetitive purposes. (*Id.*)

Specifically, Defendants made false, deceptive, and misleading statements related to (a) the safety and effectiveness of Neurontin at certain dosages, (b) Neurontin's use as monotherapy for the treatment of epilepsy and seizures, and (c) its use for the treatment of a myriad of disorders or diseases, such as Lou Gehrig's disease, depression, bipolar disorder, restless leg syndrome, and Attention Deficit Disorder. (*Id.* at ¶ 36.) Defendants also, among other things, misrepresented the independence and role of so-called "medical liaisons." The medical liaisons were specifically instructed by Defendant Pfizer's Sales Director to be "out there every day selling Neurontin.... That's where we need to be holding their hand and whispering in their ear: Neurontin for pain, Neurontin for monotherapy, Neurontin for bipolar, Neurontin for everything.... I don't want to see a single patient coming off Neurontin until they have been up to at least 4800 mg/day. I don't want to hear that safety crap either...." (*Id.* at ¶¶ 34, 37.)

Defendants further concealed studies that had shown Neurontin was not effective for certain uses, and created and published misleading articles related to Neurontin while misrepresenting the identity and independence of the author and financial relationship with the medical journal. Defendants also entered into agreements with doctors to prescribe Neurontin

3

for unproven and possibly dangerous uses, under the guise of consulting fees or for participating in purported medical studies that had little, if any, scientific value. (*Id.* at ¶ 37.)

Defendants used patents on other forms and methods of using gabapentin to harass, intimidate, and interfere with competitors through the legal and regulatory system. (*Id.* at ¶¶ 32, 45.)  For example, Defendants engaged in a series of bad-faith patent infringement lawsuits against manufacturers and distributors who intended to make or had made a generic bioequivalent of Neurontin available to the public. (*Id.* at ¶¶ 46-47.) Defendants engaged in this series of legal proceedings without regard to whether they were successful or unsuccessful, and with no genuine interest to redress grievances. (*Id.*)  The exclusion of generic competition, through these lawsuits, was also intended to leverage Neurontin's market share and power for the benefit of another product that Defendant Pfizer had been developing. (*Id.* at ¶ 33.) Defendant Pfizer also manipulated and delayed its interaction with the Patent and Trademark Office and the Food and Drug Administration ("FDA") to improperly obtain or extend Neurontin's market exclusivity. (*Id.* at ¶¶ 48, 51.)

As a direct and proximate cause of Defendants' scheme, sales of Neurontin grew dramatically, and Defendant Pfizer's market share and power similarly grew.  (*Id.* at ¶ 42.)  It was not until late 2004, over four years after Defendants' patent exclusivity period should have ended, that a generic bioequivalent of Neurontin was finally able to enter the market. (*Id.* at ¶ 31.)

On November 23, 2004, Plaintiffs filed a lawsuit in the New Jersey Superior Court for Bergen County against Defendants seeking damages caused by Defendants' conduct and inflated prices paid for Neurontin.  Plaintiffs' Complaint contains 45 state law claims against Defendants under the law of several states.  These causes of action fit within several categories:  (1) claims

4

for violations of state antitrust laws; (2) claims for violations of state consumer protection statutes, (3) state statutory insurance fraud claims; and (4) state common-law claim for unjust enrichment and tortious interference with business relationships and prospective economic advantage.

On the last day that a removal petition could be timely filed, January 5, 2005, Defendant Pfizer, Inc. submitted a Notice of Filing of Removal, a Notice of Removal, and Joinders in Notice of Removal for Cline, Davis & Mann and Lodewijk de Vink and Anthony Wild. (Novack Aff., Ex. A, a copy of the Court's electronic docket for this matter.) According to the electronic docket, only Exhibits A through C to the Notice of Removal were filed on January 5, 2005. (*Id.*) The clerk noted that another attachment, apparently Exhibit D, was added seven days after the due date on January 12, 2005. (*Id.*) Exhibit D is the relevant state court pleadings in this matter. (*Id.*) The joinder, submitted for Lodewijk de Vink and Anthony Wild on January 5, 2005, was signed by Scott Edelman of Milbank, Tweed, Hadley & McCloy LLP. (Novack Aff., Ex. B). Mr. Edelman was not admitted to practice law before the United States District Court of New Jersey. (Novack Aff., Ex. C).

Nine days after the deadline for a removal petition, Richard Placey, attorney for Defendant Pfizer, submitted a Joinder in Notice of Removal for Lodewijk de Vink and Anthony Wild. (Novack Aff., Ex. D). At the time of the service of this Memorandum, there was no attorney of record for Defendants de Vink and Wild listed on the district court's system. (Novack Aff., Ex. E is a printed listing of the attorneys of record, as of January 27, 2005).

**LEGAL ARGUMENT**

In addition to failing to comply with the statutory procedural requirements of filing a Petition for Removal, Defendants also fail to satisfy the jurisdictional basis for removal. Defendants do not assert that there is diversity of citizenship among the parties, or that Plaintiffs' Complaint presents any federal law causes of action. *See* 28 U.S.C. §§ 1331-1332. The sole basis for Defendants' removal is that Plaintiffs' state law claims purportedly arise under the federal Food Drug and Cosmetic Act and federal patent laws. Such a purported basis for removal, however, is not sufficient to maintain federal question jurisdiction. The federal Food Drug and Cosmetic Act and related regulations (collectively referred to as the "FDCA") and patent laws are not both "substantial" and "essential" to ultimately finding Defendants liable for violating state law. The FDCA is not substantial, because there is no private cause of action or remedy for proscribed conduct under the FDCA. Issues related to Pfizer's patents are also not a proper basis for federal question jurisdiction, because they are not essential to each, if any, theory of liability alleged in Plaintiffs' well-pleaded Complaint and typically arise only as a defense to such claims.

Therefore, Plaintiffs' motion to remand this action to state court should be granted because the removal was both procedurally defective and substantively deficient.

I.    **DEFENDANTS' REMOVAL FAILED TO COMPLY WITH THE STATUTORY REMOVAL REQUIREMENTS.**

Defendants have failed to comply with the statutory requirements to remove a purely state law cause of action to federal court. The removing party not only must demonstrate a jurisdictional basis for removal, but also must demonstrate the necessary compliance with the statutory removal requirements.

6

> An action removed to federal court may be remanded to state court pursuant to Section 1447(c) on the basis of *any* defect in the removal procedure.

*Telesis Mergers & Acquisitions, Inc. v. Atlis Fed. Svcs, Inc.*, 918 F. Supp. 823, 828 (D.N.J. 1996) (emphasis added). The procedural statutes related to removal from state court must be "strictly construed" both because the federal courts are of limited jurisdiction and because removal raises significant federalism concerns. *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987), *In re NASDAQ Market Makers Antitrust Litig.*, 929 F. Supp. 174, 178 (S.D.N.Y. 1996). Therefore, "all doubts should be resolved in favor of remand." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *Leslie v. Bantac Serv. Corp.*, 928 F. Supp. 341, 347 (S.D.N.Y. 1996).

In this case, Defendants failed to comply with the clear statutory requirements when removing Plaintiffs' action to federal court. To remove a case from state court, defendants must, within thirty days of service, file:

> [A] notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a-b) (2002). Rule 11 requires that "Every pleading, written motion, and other paper shall be signed by at least **one attorney of record** in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party." Fed. R. Civ. P. 11(a) (2004) (emphasis added); *see also* Local Civ. R. 11.1 (2004) ("In each case, the attorney of record **who is a member of the bar of this Court** shall personally sign all papers submitted to the Court or filed with the Clerk."(emphasis added))

Here, Defendants failed to submit the relevant state court pleadings with their Notice of Removal by the deadline of January 5, 2005. The joinder submitted by Defendants Lodewijk de Vink and Anthony Wild also failed to comply with the procedural requirements set forth by

7

statute.   Specifically, papers submitted in support of a Petition for Removal are required to comply with Rule 11, which provides that they shall be signed by an attorney of record in the case or by the actual party.   28 U.S.C. § 1446(a).   Since Lodewijk de Vink and Anthony Wild's joinder was not signed by an attorney of record properly admitted to practice in the Federal District Court of New Jersey, their joinder was defective.   The subsequent joinder, filed by Mr. Placey, was untimely.   Additionally, significant doubts exist regarding whether Mr. Placey actually represents Mr. de Vink and Mr. Wild.   Mr. Placey was not listed as the attorney of record for these defendants at the time of filing the joinder on behalf of Mr. de Vink and Mr. Wild, and still is not listed as their attorney of record as of the date of this motion to remand.   By failing to timely submit all relevant state court pleadings and by failing to obtain proper consent for removal on behalf of all defendants, removal was procedurally defective.   This case should be remanded on these grounds alone.

## II.   DEFENDANTS HAVE FAILED TO ESTABLISH FEDERAL QUESTION JURISDICTION AND PLAINTIFFS' MOTION TO REMAND SHOULD BE GRANTED.

### A.   Defendants Have The Heavy Burden Of Establishing That Plaintiffs' Complaint Could Have Originally Been Brought In Federal Court Pursuant To Each and Every Alleged Theory of Liability.

Upon a motion to remand, "the burden of establishing removal jurisdiction rests with the defendant." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 359 (3d Cir. 1995); 14B Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 3d* § 3721 (3d ed. 1998).   Specifically, Defendants have the burden to establish that the state court action could have originally been brought in federal court pursuant to each and every theory of liability alleged by Plaintiffs in their Complaint.   *Id.*   All doubts regarding the existence of federal question jurisdiction must be resolved in favor of remanding the action to state court.   *Steel Valley Auth. v. Union Switch and Signal Division*, 809 F.2d 1006, 1010 (3d Cir. 1987).

It has long been held that the question of whether a claim "arises under" federal law and provides a basis for federal jurisdiction must be determined by reference to the "well-pleaded complaint." *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9-10, 103 S. Ct. 2841, 2846-47 (1983). Under the well-pleaded complaint rule, federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint, and federal jurisdiction may be avoided by exclusive reliance on state law. *Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S. Ct. 410, 411 (1913). Plaintiffs are the "absolute masters" of their complaint, and have the power to determine upon what law they rely and what jurisdiction to which they will appeal. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 810, 106 S. Ct. 3229, 3233 n.6 (1986)(citing *Healy v. Sea Gull Specialty Co.,* 237 U.S. 479, 480, 35 S. Ct. 658, 659 (1915); *Fair,* 228 U.S. at 25, 33 S. Ct. at 411).

Defendants cannot base their removal to federal court and, ultimately, federal question jurisdiction on a legal theory that the Plaintiffs have not advanced, or on a federal issue that is not both substantial and essential to finding liability pursuant to each of Plaintiffs' alternate theories. *Id.* Here, Plaintiffs have not alleged any federal causes of action. Defendants' improper efforts to invoke federal question jurisdiction should be rejected.

### B.   Defendants Mischaracterize The Allegations Made In Plaintiffs' Complaint.

At the most basic level, Defendants have failed to identify and correctly describe the anticompetitive scheme alleged in Plaintiffs' Complaint. To support their removal petition, Defendants isolate allegations related to the restraint of generic competition from the broad course of anticompetitive conduct alleged by Plaintiffs. Defendants' scheme included multiple sets of activities and theories of liability that resulted in a common injury for violating state antitrust, consumer protection, and insurance fraud laws, and common-law claims for unjust

9

enrichment and tortious interference with business relationships and prospective economic advantage. By making the restraint of generic bioequivalents a separate "prong," Defendants did not acknowledge either the alternate theories of liability in this matter or that Plaintiffs' Complaint alleges an overall strategy to restrain competition and to increase Defendant Pfizer's market share and power.[2]

Defendants further mischaracterize the factual allegations that are made in Plaintiffs' Complaint. Defendants state that "plaintiffs' claims are based on allegations that Defendants' failed to market Neurontin in accordance with the FDA's permission granted under the provisions of the Federal Food Drug and Cosmetic Act" and that violations of this federal statute are "at the forefront of this case." (Petition for Removal ¶ 13). While Defendants may or may not have complied with the Food Drug and Cosmetic Act and related regulations, no such allegation was made anywhere in Plaintiffs' Complaint. Plaintiffs have alleged only state law causes of action, and, as described in more detail below, Defendants' liability may be found independent of the resolution of any federal issue. *See Franchise Tax Board*, 463 U.S. at 26, 103 S. Ct. at 2855; *Christianson*, 486 U.S. at 811, 108 S.Ct. at 2175.

Defendants also state that Plaintiffs alleged that Defendants delayed competition for Neurontin in violation of federal law. (Petition for Removal ¶ 16). In fact, Plaintiffs alleged that Defendants delayed competition for Neurontin in violation of state law. Plaintiffs' Complaint never alleged any federal cause of action, and, instead, asserts purely state law causes of action.

---

[2] Defendants also broadly describe gabapentin as the "drug marketed and sold under the brand name Neurontin." In fact, the drug marketed and sold under the brand name Neurontin is anhydrous gabapentin that is not lactam free, and Defendants' ongoing attempt to redefine and broaden the definition of the drug marketed as Neurontin is one of the issues in this case.

**C.   The FDCA and Patent Laws Are Not Substantial and Essential To Ultimately Find Defendants Liable Pursuant To Plaintiffs' State Law Causes of Action.**

Since Plaintiffs do not allege a direct violation of federal law or that federal law "creates" any of these causes of action, the only way to find federal question jurisdiction is if "the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Board*, 463 U.S. at 9, 103 S. Ct. at 2846; *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808, 108 S. Ct. 2166, 2173 (1988).   This basis for federal question jurisdiction, however, must be "read with caution" and must be analyzed with "prudence and restraint." *Merrell Dow,* 478 U.S. at 809-810, 106 S. Ct. at 3232-33.  The mere presence of a potential federal issue in a state law cause of action does not automatically confer federal question jurisdiction.  *Christianson*, 486 U.S. at 811, 108 S. Ct. at 2175; *Uroplasty Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir. 2001).   The issue of federal law must be both substantial and essential to each theory of liability alleged by the plaintiff.  *Christianson*, 486 U.S. at 810-811, 108 S. Ct. at 2174-75.   A defense based on federal law, by its very nature, is not essential to a theory of liability.  *Id.*

In their removal petition, Defendants assert that Plaintiffs' right to relief is predicated on the resolution of a substantial and essential issue of the FDCA and patent law.  (Defendants' Petition for Removal at ¶¶ 13, 15).   As described in detail below, the FDCA and patent laws are not substantial and essential to ultimately finding Defendants liable and do not provide a basis for federal question jurisdiction in this case.

**1.   There is not a "substantial" issue of federal law under the FDCA because there is no private cause of action to remedy a violation.**

In *Merrell Dow*, the Supreme Court specifically analyzed the FDCA, and held that the statute does not provide a basis for federal question jurisdiction.  In determining whether a claim related to the FDCA presents a "substantial" question of federal law, the Supreme Court held that

11

the absence of a private cause of action was "tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow,* 478 U.S. at 814, 106 S. Ct. at 3235:

> We think it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation of the federal statute is said to be a "rebuttable presumption" or a "proximate cause" under state law, rather than a federal action under federal law.

*Id.* at 812, 106 S. Ct. at 3234. The Third Circuit later held that, pursuant to and consistent with *Merrell Dow,* that a "private federal remedy for a violation of [a] federal statute is a *prerequisite* for finding federal question jurisdiction." *Smith v. Indus. Valley Title Ins. Co.,* 957 F.2d 90, 93 (3d Cir. 1992) (emphasis added). *See also Guckin v. Nagle,* 259 F. Supp. 2d 406, 412 (E.D. Penn. 2003) (holding that a possible violation of the FDCA does not raise a substantial federal question); *Montana v. Abbott Laboratories,* 266 F.Supp.2d 250, 256 (D. Mass. 2003). There is no apparent reason that this clear precedent should not be binding and followed in this case.

Defendant Pfizer has already made many of its removal arguments related to the FDCA in a Neurontin lawsuit brought in California. In that case, the federal district court rejected Pfizer's arguments and remanded the case to state court. *Congress of California Seniors, et al. v. Pfizer, Inc. and Parke-Davis*, CV-03-1564-SVW, Order Granting Motion to Remand (C.D. Cal. April 25, 2003) (Novack Aff., Ex. F). In *California Seniors*, plaintiffs alleged that Defendant Pfizer engaged in a false, deceptive, and misleading marketing campaign for its drug Neurontin *Id.* Specifically, plaintiffs alleged that Defendant Pfizer's use of medical liaisons and representations related to the safety and effectiveness of Neurontin violated state consumer protection laws. *Id.* Despite specific references to the FDCA in the plaintiff's Complaint, the

12

district court granted plaintiff's motion to remand and held that the FDCA and apparent violation of related marketing and labeling regulations did not create a substantial question of federal law. Like *California Seniors*, Plaintiffs in this matter allege that the representations and business practices related to Neurontin only violate state law, and, like *California Seniors*, this court should hold that the FDCA or mere references to the FDCA are not grounds for federal question jurisdiction.

**2.      Issues of federal patent law are not essential to a finding of liability pursuant to each theory of liability alleged in Plaintiffs' Complaint.**

Issues of federal patent law also are not a proper basis for federal question jurisdiction in this case. Defendants claim that Plaintiffs' Complaint arises under 28 U.S.C. § 1338, which provides the federal court with jurisdiction over certain civil actions related to patents. Defendants state in their Petition for Removal that Plaintiffs' right to relief will "depend" on the ultimate resolution of pending patent infringement litigation and a determination of whether patents were properly listed in the Food and Drug Administration's Orange Book. (Petition for Removal ¶¶ 15, 17). While Plaintiffs disagree with Defendants' characterization of their causes of action, even so, Defendants still do not meet their burden to sustain federal question jurisdiction.

**a.      The mere presence of a patent does not automatically create a substantial question of federal law.**

Although Defendants contend that Plaintiffs' claims are dependent upon the validity of its patents, this is not an automatic basis for federal question jurisdiction. The mere presence of an allegation regarding a patent does not automatically create a substantial and essential question of federal law, and there is no federal question jurisdiction when there are alternate theories of liability within a particular cause of action that are not dependent upon the resolution of federal

13

patent law. *Christianson*, 486 U.S. at 811, 108 S. Ct. at 2175; *Franchise Tax Board*, 463 U.S. at 26, 103 S. Ct. at 2855. "[E]ven the holder of a valid patent may be subject to liability for conduct amounting to an unreasonable restraint on trade." *In re Ciproflaxin Hydrochloride Antitrust Lit.*, 166 F. Supp. 2d 740, 749 (E.D.N.Y. 2001). The validity of a patent is typically raised as part of a defense, and, even if the patent is valid, the Supreme Court has held that such a finding does not necessarily immunize a defendant from liability. *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 259, 36 S.Ct. 585, 586 (1916) ("such justifications are defenses, and raise issues that are not part of the plaintiffs' case"); *cf. Temptations Inc. v. Wager*, 26 F. Supp. 2d 740, 745 (D.N.J. 1998) (remanding case even though validity of federal copyright would have defeated plaintiff's tort claims, because "that a federal law may be a defense to plaintiff's claims is of no legal consequence to whether plaintiffs' claim arises under federal law").

Numerous federal courts have remanded cases involving name-brand drugs and their respective patents back to state court. Courts held that defendants could still be liable for violating state law regardless of any construction or interpretation of a relevant patent. For example, a lawsuit alleging that defendants interfered with the production of lower-cost generic versions of the drug Cardizem was remanded to state court. *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F. Supp. 2d 1042, 1046 (D. Kan. 1999). That federal district court held that the bad-faith litigation claims related to defendants' patent infringement litigation did not raise a substantial federal question:

> Any discussion of patent law is merely tangential to plaintiffs' claim that HMR had an ill motive which resulted in unfair competition. While federal law may be implicated in an examination of HMR's motives, it is hardly a substantial or necessary part of plaintiffs' claims.

14

*Id.; see also In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 837-840 (E.D. Mich. 1999) (remanding antitrust case related to name-brand drug company's anticompetitive practices to state court and rejecting arguments that Hatch-Waxman Act, patent law, and Noerr-Pennington doctrine create substantial federal question).

Similarly, a district court remanded a case involving anticompetitive conduct and the name-brand drug K-Dur. *McGrew v. Shering-Plough Corp.*, No. 01-2311-GTV, 2001 WL 950790, *3-4 (D. Kan. Aug. 6, 2001) (Novack Aff., Ex. G). In *McGrew*, Schering-Plough, like Defendants in this case, argued that liability depended upon the validity of its patents, whether the patents were infringed, and if defendants violated the Hatch-Waxman Act. *Id.* The federal district court rejected these arguments:

> Plaintiff's claims do not require the court to determine whether Schering-Plough's patent on K-Dur 20 is valid, and if so, whether Upsher-Smith and/or ESI infringed upon Schering-Plough's patent. Instead, plaintiff's claims require the court to determine whether the defendants entered into one or more conspiracies with the intent to prevent or restrain competition of the sale of K-Dur 20….Similarly, plaintiff's claims do not require the court to interpret the Hatch-Waxman Act….As with patent law, any discussion of the Hatch-Waxman Act is merely tangential to plaintiff's claims.

*Id. See also In re Ciproflaxin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740 (E.D.N.Y. 2001) (remanding state law causes of action related to the antibiotic drug ciprofloxacin hydrochloride because anticompetitive effects of licensing agreement did not depend upon the validity of the patent at issue); *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 673-75 (S.D.N.Y. 2000) (remanding state law antitrust causes of action related to the drug Cipro because plaintiffs' allegations did not require the resolution of a substantial federal question or determination of the validity of a federal patent); *Drug Mart v. Abbott Labs*, No. 99-MDL-1317 (S.D. Fla. Aug. 28, 2000) (same) (Novack Aff., Ex. H); *Anthem, Inc. v. Bristol-Myers Squibb Co.*, No. 03-0008, 2003 U.S. Dist. Lexis 15762, at *15 (D.N.J. March 18, 2003) (remanding state law causes of

action related to the name-brand drug BuSpar, because liability did not require plaintiffs to establish the invalidity of patents or any other question of patent law) (Novack Aff., Ex. I).

Each of these antitrust cases involved claims of interference with generic competitors for the market of that name brand-drug. The district courts held that liability did not ultimately depend upon the resolution or interpretation of federal patent law and remanded these cases to state court. And, like the courts in each of these antitrust cases, this court should reject Defendants' assertions that liability depends upon the validity of Neurontin's patents and compliance with the Hatch-Waxman listing requirements. The patents referenced in Defendants' Petition for Removal are tangential to any cause of action alleged by Plaintiffs and are not elements of Plaintiffs' claims. Plaintiffs' purely state law causes of action are based upon Defendants' conspiracy to interfere with generic competition and should be remanded to state court.

> **b.  A substantial question of federal law must be essential to each and every theory of liability pled for federal question jurisdiction.**

Even if the court finds that a theory of liability alleged by Plaintiffs requires the resolution of a substantial issue of federal patent law, there is not federal question jurisdiction unless every theory of liability, within a particular cause of action alleged by plaintiffs, requires the resolution of a substantial federal question. In *Christianson*, the Supreme Court held that a monopolization claim, based on an alleged "course of conduct to illegally extend [the patent holder's] monopoly position with respect to the described patents," did not arise under federal patent law for purposes of section 1338(a) jurisdiction. 486 U.S. at 811, 108 S. Ct. at 2175. There, the plaintiffs had alleged that the defendant employed bad-faith patent litigation and made false representations to plaintiffs' customers in an effort to drive the plaintiffs out of business.

*Id.* at 805, 108 S. Ct. at 2172. Although patents were an aspect of the case, the Court held that the antitrust claims did not arise under federal patent law because there were theories of liability under which federal patent law was not essential. *Id.* at 811-12, 108 S. Ct. at 2175.

Here, Plaintiffs allege that Defendants engaged in an ongoing and continuous scheme to expand and to extend market share and power through a false, deceptive and misleading marketing campaign and misuse of the legal and regulatory system. (Plaintiffs' Complaint ¶ 32). Like the plaintiffs in *Christianson*, Plaintiffs allege various theories of liability, some of which are outlined below. These theories of liability are not predicated upon the resolution of a patent issue or the patent issue is raised only as part of a defense. Therefore, Plaintiffs' motion to remand this action to state court should be granted.

### i. Manipulation and delay in acquiring patents and interacting with the FDA for anticompetitive purposes.

Plaintiffs' allegations that Defendants intentionally manipulated and delayed the acquisition of patents and timing of interactions with the FDA is not predicated on a substantial issue of federal patent law. A name-brand drug company may be liable for violations of antitrust laws if the company intentionally acquires a patent for anticompetitive purposes. *See In the Matter of Biovail Corp.,* 2002 F.T.C. LEXIS 56 (Oct. 4, 2002) (Complaint and Consent Order Dkt. No. C-4060) (Novack Aff., Ex. J.) In this case, Plaintiffs allege that Defendants acquired certain patents and manipulated the timing of interactions with the Patent and Trademark Office and FDA for the purpose of delaying generic competition for, at least, 23 months. (Complaint at ¶ 51.)

17

For example, Defendants could have been issued what is now known as the '482 patent[3] on or about August 30, 1994. Pursuant to and at approximately the same time as Defendants formulated their anticompetitive scheme, the application was withdrawn and the Defendants filed a continuation application. The withdrawal of the Defendants' application delayed the issuance of the '482 patent for approximately five years. This delay allowed Defendants to stagger the automatic 30-month stays under the Hatch-Waxman Act, and block generic competitors from the market. Even assuming that Defendant Pfizer's '482 patent is valid and Defendant Pfizer complied with Orange Book listing regulations, Defendants are liable for violations of state antitrust laws by their purposeful acquisition of the original German patent and delay in acquiring and listing the U.S. patent. Defendants arguably had the right to obtain and list the patent, but could not obtain and list the patent for anticompetitive purposes or manipulate its timing of acquisition to restrain generic competition. No substantial issue of federal law must be resolved to assess Defendants' anticompetitive motives in acquiring its patents.

### ii.   Bad-faith litigation.

Plaintiffs' separate theory of liability that Defendants engaged in bad-faith litigation also does not implicate a substantial issue of federal patent law. In *Christianson*, the defendant was alleged to have filed a patent infringement lawsuit "in bad faith subjecting [petitioners] to substantial expense in extended discovery procedures" and to prevent customers and potential customers from doing business with petitioners. 486 U.S. at 812, 108 S. Ct. at 2175. The Supreme Court held that a determination of whether the lawsuit was in bad-faith was a theory of liability that did not depend upon the resolution of a substantial federal issue, and was not a proper basis for federal question jurisdiction. *Id.*

---

[3] U.S. Patent No. 6,054,482 (the "'482 patent").

Plaintiffs, in this case, similarly allege that Defendants filed their patent infringement lawsuits "in bad faith, and as a method to use the legal and regulatory system as an anticompetitive weapon." (Plaintiffs' Complaint ¶ 45.) Defendants' series of lawsuits was used as a method to "harass, intimidate, and interfere with competitors" and was brought "without regard to whether or not they are successful or unsuccessful." (*Id.* at ¶¶ 45-46). A determination of Defendants' knowledge and intent to interfere with competitors does not require resolution or analysis of the underlying patents. *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 837-840 (E.D. Mich. 1999) (holding that federal law is "hardly a substantial or necessary" part of plaintiffs' claims related to frivolous patent infringement litigation, because claims do not depend on validity of patent only that defendant had an impure heart and federal law is not a necessary element of one of the well-pleaded claims.)

The applicability of the *Noerr-Pennington* doctrine, which was cited in Defendants' Petition for Removal as a basis for federal jurisdiction, is simply not a proper basis to convert Plaintiffs' allegations of bad-faith into a substantial question of federal law. (Petition for Removal at ¶ 17.) The *Noerr-Pennington* doctrine provides immunity from antitrust claims for certain interactions with or lobbying of the government. *Eastern R.R. President's Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961). The *Noerr-Pennington* doctrine, however, is merely a defense to an allegation of anticompetitive conduct. *Aetna U.S. Healthcare,* 54 F. Supp. 2d at 1053 ("While a defendant can attack plaintiffs' complaint for failing to allege an exception to the [*Noerr-Pennington*] doctrine, such an exception is not a necessary element of plaintiffs' claim....Because the Court finds that the Noerr-Pennington doctrine constitutes a defense, it cannot form the basis for federal question jurisdiction in this case.") It is well settled that a defense, by definition, cannot raise a substantial question of federal law. *Christianson*, 486 U.S.

at 810-811, 108 S. Ct. at 2174-75. Thus, Plaintiffs' allegations that Defendants engaged in bad-faith patent infringement litigation provides an independent theory that does not require resolution of a federal issue to ultimately determine liability.

### iii. Leveraging of monopoly power.

Defendant Pfizer's scheme to leverage its market share and power related to Neurontin in order to ultimately expand its market share and power related to other products, such as Lyrica or pregabalin, is another theory of liability that does not implicate a substantial issue of federal law. The use of monopoly power attained in one market to gain a competitive advantage in another is a violation of antitrust laws. *Smith-Kline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1065 (3d Cir. 1978); *Berkey Photo v. Eastman Kodak Co.*, 603 F.2d 263, 275-76 (2d Cir. 1979). "The Court has held many times that power gained through some natural and legal advantage such as a patent, copyright, or business acumen can give rise to liability if 'a seller exploits his dominant position in one market to expand his empire into the next.'" *Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. 451, 479, 112 S. Ct. 2072, 2089 n.29 (1992) (citing *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 611, 73 S. Ct. 872, 882 (1953)).

In this case, Plaintiffs allege that Pfizer engaged in its anticompetitive scheme, such as filing patent infringement lawsuits against the manufacturers and distributors of generic bioequivalents of Neurontin, for the purpose of minimizing "the negative impact generic bioequivalents of Neurontin might have on potential sales of another drug that Defendant Pfizer had been developing, which would be exclusively sold and priced by Defendant Pfizer." (*Id.* at ¶ 33). Liability for Defendants' scheme, pursuant to leveraging, does not depend on the resolution of any substantial issue of federal patent law. In fact, liability attaches even if Defendant Pfizer's market position for Neurontin and related patents were obtained lawfully. It was Defendants'

20

use of this market position and these patents to block generic competition from the market until consumers were transferred from Neurontin to a new patented drug product that triggers liability pursuant to state law.

## iv. Improper agreements and payments to doctors to prescribe Neurontin.

Defendants' agreements with and subsequent payments to doctors to prescribe Neurontin is a method of conduct that is a basis for antitrust and other state law liability that does not require the court to resolve or address any issue of federal law. Similar to market allocation or customer limitation agreements between two competitors or a manufacturer and a dealer, Defendants' direct payments to doctors to prescribe Neurontin was an illegal restraint on competition. *See generally Altman v. Bayer Corp.*, 125 F. Supp. 2d 666 (S.D.N.Y. 2000); *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819 (E.D. Mich. 1999). Here, Plaintiffs allege that Defendants paid doctors to prescribe Neurontin under the guise of consulting or speaking fees, or for participation in a purported medical study that had little, if any, scientific value. (Plaintiffs' Complaint ¶ 37(E)). Such payments were made to doctors for the purpose of increasing Defendant Pfizer's market share and power and with full knowledge both of the anticompetitive purposes underlying the agreement and of the effect such actions would have on competition. (*Id.* at ¶ 38). Defendants' potential liability for entering into these agreements with doctors exists without the resolution of any federal questions of law.

## v. False, deceptive, and misleading advertising and marketing campaign.

Defendants engaged in a false, deceptive, and misleading marketing campaign related to Neurontin in violation of state law, including antitrust, consumer fraud, and deceptive trade practices statutes. Deceptive marketing and advertising campaigns can implicate both consumer

21

protection and antitrust laws. *See generally National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratorie*s, 850 F.2d 904, 916 (2d Cir. 1988) (holding that false and deceptive letter allegedly sent by pharmaceutical company may be violation of antitrust laws, in addition to laws prohibiting false and misleading statements); *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1268 (8th Cir. 1980) (affirming antitrust violations based on false, deceptive and misleading marketing campaign).

Here, Defendants represented that Neurontin was safe and effective for certain uses and dosages that were, in fact, not safe and effective. (Plaintiffs' Complaint ¶ 36). For example, Defendants represented that Neurontin was safe and effective as monotherapy, meaning stand-alone treatment, for epilepsy and seizures, and to treat bipolar disorder and Attention Deficit Disorder. (*Id.* at ¶ 36). These statements were either false, deceptive, or misleading, or Defendant lacked sufficient substantiation for these claims. (*Id.*) As part of their marketing scheme, Defendants utilized a variety of deceptive business tactics, such as misrepresenting the role and credentials of its medical liaisons, publishing false advertisements, concealing studies that had shown Neurontin was not effective for certain uses, and failing to disclose their relationship with purportedly independent researchers, medical journals, and Continuing Medical Education seminars. (*Id.* at ¶ 37). A determination of whether this conduct violated state law does not require a resolution or interpretation of federal law. A court may simply find that the representations are false and such conduct is anticompetitive.

Defendants state in their removal petition that such conduct is only in violation of state law "so far as it runs counter to FDA regulations" that were promulgated pursuant to the FDCA and that the "gravamen of the Complaint is based on allegations of Defendant's failure to conform its actions to federal law." (Petition for Removal ¶ 14.) While Plaintiffs' Complaint

contains no such allegation, liability exists regardless of whether Defendants complied with federal regulations. For the reasons discussed above, compliance with FDCA regulations is not a basis for federal question jurisdiction. *Merrell Dow*, 478 U.S. at 812, 106 S. Ct. at 3234; *see also Intelnet International Corp. v. WorldCom Technologies, Inc.*, Civ. Action No. 99-2273, 2000 Lexis 15828 at *19 (D.N.J. April 12, 2000) (Pisano, J) (holding that whether defendants complied with federal regulations was only "one factor to consider" in determining liability and not a basis for federal question jurisdiction). Such an argument is also likely to be raised only as a defense, and a defense is not a proper basis for federal question jurisdiction. *American Well Works*, 241 U.S. at 259, 36 S. Ct. at 586. Therefore, Defendants cannot satisfy their burden of establishing federal question jurisdiction based upon Plaintiffs' well-pleaded complaint.

      c.     **Plaintiffs' Complaint differs from complaints in the minority of cases that were not remanded to state court.**

Although the majority of district courts to consider this issue have ruled in favor of remand, there have been some antitrust cases, involving other name-brand drugs and Neurontin, that have not been remanded to state court. *See In re Tamoxifen Citrate Antitrust Litigation*, 222 F. Supp. 2d 326, 330-31 (E.D.N.Y.2002) (acknowledging that majority of courts have ruled in favor of remand, but denying motion because, as alleged, plaintiffs cannot succeed on their claims without proving the invalidity or unenforceability of a patent); *Sall v. Pfizer Inc.*, MDL Docket No. 1479 (Order) (January 7, 2005) (denying motion to remand because the liability, as alleged, depends on the validity, enforceability, and infringement of patents)(Novack Aff., Ex. K); *Stuart v. Pfizer, Inc.*, No. 02-2511 (Order) (W.D. Tenn. Oct. 2, 2002) (denying motion to remand because plaintiffs failed to provide evidence of a "conspiratorial scheme" to maintain an unlawful monopoly) (Novack Aff., Ex. L). In each of these cases, the courts narrowly constructed plaintiffs' allegations, and held that liability turned solely on the validity and

23

construction of the underlying patents. *Id.* The courts failed to acknowledge that the validity of certain patents — to the extent they are relevant at all — arose only in the context of a defense not as an element of the underlying antitrust or consumer protection claim. *See Cipro*, 166 F.Supp. 2d at 748 (patent validity "smacks of a defense more than that of a failure to state a viable cause of action").

These actions, however, differ from the action at bar. In each case denying a plaintiffs' motion to remand, the court noted that the motions would have been granted if the plaintiffs had alleged alternate theories of liability that did not depend on the validity or construction of a federal patent or that the conduct was impermissible under patent laws. *In re Tamoxifen Citrate Antitrust Litigation*, 222 F.Supp. 2d at 330 ("[A] claim supported by alternative theories which do not rely on the resolution of a question of patent law will not form the basis for Section 1338(a) jurisdiction"); *Stuart*, No. 02-2511 at 16 (plaintiffs fail to offer an alternative theory "evidencing a conspiratorial scheme to maintain an unlawful monopoly); *Sall*, MDL Docket No. 1479 at 17 (same).

As outlined and described in detail above, Plaintiffs in this case have, in fact, alleged a broad anticompetitive scheme with multiple theories of liability. Unlike *Stuart* and *Sall*, Plaintiffs do not simply allege that Defendants' sham litigation, related to the drug Neurontin, prevented access to lower-cost generic bioequivalents. Instead, Plaintiffs' Complaint alleges alternate theories of liability deriving from Defendants' conduct, such as leveraging arguably valid patents for the purpose of excluding generic competition for the benefit of another product or the delay in obtaining certain patents for anticompetitive purposes. Neither of these theories ultimately depends upon the validity or construction of Defendant Pfizer's patents, and each are

24

consistent with Plaintiffs' principal claim that Defendants improperly prevented all those who purchased Neurontin from having access to less-expensive generic bioequivalents.

In both *Stuart* and *Sall*, the minority position was taken and the plaintiffs' motions to remand were denied because plaintiffs' theories depended solely on the courts' view of the patents at issue. Therefore, even applying the test set forth in *Stuart* and *Sall*, Plaintiffs' motion to remand should be granted.

## III.   THIS COURT SHOULD NOT DEFER RULING ON THE MOTION TO REMAND.

Plaintiffs understand that Defendants have asked the Judicial Panel on Multidistrict Litigation ("JPML") to transfer this case to the District Court of Massachusetts, pursuant to Panel Rule 7.2(i), for consolidation with *In re Neurontin Marketing and Sales Practices Litigation*, MDL No. 1629 (D. Mass). Defendants may also ask this Court to stay any ruling on Plaintiffs' Motion to Remand pending the JPML's decision on their transfer motion. The Court should deny any such request and instead determine, as a threshold matter, whether federal jurisdiction may be properly exercised over Plaintiffs' claims at all.

The federal remand statute imposes a clear mandate: "[i]f at any time before judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c ). The JPML's rules of procedure preserve this Court's ability to decide the remand issue despite the pendency of a motion to transfer. Panel Rule 1.5 ("pendency of a motion...[or] conditional transfer order...before the Panel concerning transfer...of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending"); *see also Manual for Complex Litig.* § 31.131 at 252 (3d ed. 1995) (filing of a transfer motion "should not automatically...postpone rulings on pending motions").

Rather than deferring a decision on the remand motion to a possible transferor court, courts often decide the motions to remand. *See* e.g., *Anthem,* 2003 U.S. Dist. Lexis 15762, at *15 ("Deciding the jurisdictional question now promotes judicial economy: if jurisdiction does not exist, then the case need not be transferred to the MDL court at all, and if it does exist then both the parties and MDL court will be faced with one less contested issue..."); *Farkas v. Bridgestone/Firestone, Inc.*, 113 F. Supp. 2d 1107, 1115n.8 (W.D. Ky. 2000) (holding that "the jurisdictional issue must be resolved before deciding whether to stay or transfer the case to the MDL panel"); *Aetna*, 54 F. Supp. 2d at 1048 (refusing to defer ruling on motion to remand, despite motion to transfer case, because "judicial economy dictates a present ruling on the remand issue"); *Tortola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F. Supp 1186, 1188 (N.D. Cal. 1997) (same); *Stern v. Mut. Life Ins. Co.*, 968 F. Supp. 637 (N.D. Ala. 1997) (the "determination as to whether [the court] has, or does not have jurisdiction...involves no issues that the putative transferee court in the multi-district action would be uniquely qualified to address"). Those factors equally support the Court's immediate exercise of its authority to determine whether it "lacks subject matter jurisdiction" in this case. *See* 28 U.S.C. § 1447(c). Accordingly, this Court should decline any invitation by Defendants to stay or to defer a ruling on Plaintiffs' motion to remand.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motion to remand and enter

an order remanding this matter to the New Jersey Superior Court, Middlesex County.

BUDD LARNER

By: _____
        David J. Novack   (9527)

150 JFK Parkway
Short Hills, NJ 07078
(973) 379-4800

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Annamarie A. Daley, *pro hac vice*
Mark Ireland, *pro hac vice*
Sonya C. Seidl, *pro hac vice*
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

Dated: January 27, 2005.                    Attorneys for Plaintiffs

27