Defendants Pfizer Inc. and the entity named in the Complaint as its "wholly-owned subsidiary, Warner-Lambert Company" ("Defendants"), by and through their undersigned counsel, hereby submit this memorandum of law in opposition to Plaintiffs' motion to remand this action to the Law Division of the Superior Court of New Jersey, Bergen County.

## I.    INTRODUCTION

In this case, Plaintiffs, a group of insurance and mutual insurance corporations, health services plans, and hospital and medical services corporations, have sued Defendants over the patent-enforcement and marketing relating to Defendants' Gabapentin product, which Defendants sell under the name Neurontin® ("Neurontin"). The Complaint alleges that Defendants acted unlawfully in (1) making misrepresentations to the Food and Drug Administration ("FDA") in listing certain Neurontin patents in what is known as the FDA's "Orange Book" and (2) filing bad faith, or sham, patent infringement lawsuits against generic competitors. Complaint ("Compl.") ¶¶ 46-49. In addition, the Complaint alleges that Defendants engaged in "a false, deceptive, and misleading marketing campaign" to promote Neurontin for non FDA-approved uses. *Id.* ¶ 35.

As demonstrated below, Plaintiffs' motion to remand these claims to state court should be denied. Removal was proper because this Court has subject matter jurisdiction on federal question grounds pursuant to 28 U.S.C. §§ 1331 and 1338. Although the Complaint purports to assert causes of action under state law, the Complaint gives rise to federal question jurisdiction because Plaintiffs' "'right to relief necessarily depends on resolution of a substantial question of federal law.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988) (citations omitted). This is so based on two separate sets of federal law, each of which is independently sufficient to support federal question jurisdiction.

First, deciding whether Defendants' assertion of their patent rights was permissible or barred as anti-competitive requires a determination of whether, as a matter of federal patent law, the patents were valid and infringed and, if not, whether there was nevertheless a reasonable basis for the patent suits. In fact, the Complaint here asserts no theory of liability under the anti-competition laws upon which the Court could grant Plaintiffs the relief they seek without first deciding substantial questions of federal patent law. This Court, therefore, has federal question jurisdiction over this case, which is precisely the result reached by Judge Lifland in two virtually identical cases decided last month. January 7, 2005 Memorandum and Order in *In re Neurontin Antitrust Litigation*, MDL Docket No. 1479, in *Sall v. Pfizer Inc. and Warner-Lambert Company*, Civil Action No. 02-3988 and *Zafarana v. Pfizer Inc. and Warner-Lambert Company*, Civil Action No. 02-2741 ("*Antitrust MDL-Sall/Zafarana*") at 17-18 (denying motions to remand plaintiffs' state law anti-competition claims because they could not be resolved "without deciding substantial issues of federal law, i.e., the validity, enforceability, and infringement of defendants' patents"); a copy of this opinion is Exhibit K to the Affidavit of David Novack in Support of Plaintiffs Motion to Remand ("Novack Aff.").

Second, deciding whether Defendants' marketing was permissible requires the Court to address substantial issues of federal law under the Federal Food, Drug and Cosmetic Act ("FDCA").

Moreover, this case belongs in one of the two federal Multidistrict Litigations relating to Neurontin, and should follow the five other cases previously before this Court that have since been transferred by the Judicial Panel for Multidistrict Litigation. Accordingly, the Court should defer ruling on Plaintiffs' motion to remand and allow for the Judicial Panel on Multidistrict

- 2 -

Litigation to transfer the case to one of the two multidistrict litigations related to Neurontin or, should this Court wish to reach the merits, Plaintiffs' motion to remand should be denied.

## II.    FACTUAL BACKGROUND

Gabapentin is the generic name for a drug product that is widely used to treat epilepsy, pain and neurodegenerative diseases. Defendants sell Gabapentin under the brand name Neurontin, and hold three Neurontin patents that are currently in force. Pursuant to §505 of the FDCA, 21 U.S.C. § 355 *et seq.*, these three patents were listed by Defendants in association with Gabapentin in the FDA's official listing of *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book").[1]

### A.    Procedural History

Plaintiffs consist of over 20 insurance companies, health plans and their subsidiaries from over ten states and the District of Columbia.[2]  Only one of these Plaintiffs (Well Choice of New Jersey, Compl. ¶ 17) is from New Jersey. They purport to bring their claims pursuant to the antitrust statutes of over 12 states (although many are applicable to only one defendant) (Compl., Counts I to XXIV), and the "Deceptive Trade Practices" statutes of approximately 15 states (*Id.*, Counts XXIV to XLII).  According to Plaintiffs "the relevant geographic market is the United

---

[1] Pursuant to the Hatch-Waxman Act, an applicant seeking FDA approval to market a generic form of an FDA-approved drug must certify, as to each patent listed in the Orange Book with respect to that drug, that the patent is or will be expired, or that the patent is invalid or will not be infringed by the generic product. 21 U.S.C. § 355(j)(2)(A)(vii). The generic applicant is required to provide notice to the owner of any listed patent that the generic applicant asserts is invalid or will not be infringed. 21 U.S.C. § 355(j)(2)(B). If within 45 days of providing such notice the generic applicant is sued for infringing a listed patent, FDA approval of the generic application is stayed for 30 months unless the court decides before that time that the asserted patent is invalid or not infringed. 21 U.S.C. § 355(j)(5)(B)(iii). A number of generic drug manufacturers have filed applications seeking FDA approval to market a generic Gabapentin product, notwithstanding Defendants' patents, and Defendants have sued certain of these generic drug manufacturers for patent infringement under the federal patent laws. Plaintiffs list many of these lawsuits in footnote 2 to paragraph 46 of the Complaint.

[2] Wisconsin, New York, Florida, Louisiana, Massachusetts, Michigan, Minnesota, Oklahoma, Maryland, Illinois, Delaware, District of Columbia and New Jersey. Compl. ¶¶ 3-17.

States." Compl. ¶ 31. These claims, purportedly brought under the statutory laws of many different states and almost completely by Plaintiffs from outside New Jersey, and apparently seeking to regulate the United States market as a whole, were filed in the Superior Court of New Jersey, Bergen County.

In their Complaint filed on or about November 24, 2004, Plaintiffs allege that Defendants "engaged in a continuing and on-going scheme to illegally increase market share and power by restraining generic bioequivalents of ... Neurontin from competing or otherwise entering the market through a false, deceptive, and misleading marketing campaign and misusing the legal and regulatory system." Compl. ¶ 1. As will be detailed below, it consciously and artfully omits reference to the "legal" and "regulatory system" involved. Despite such artful pleading, the Complaint raises substantial and essential issues of federal law since the purported state law liability arises from claimed misuse of the federal legal and regulatory system –simply stated, federal law.

Defendants filed a timely Notice of Removal on January 5, 2005, asserting that this Court has federal question jurisdiction over Plaintiffs' claims. On January 27, 2005, Plaintiffs served a motion to remand this case to the Law Division of the Superior Court of New Jersey, Bergen County. As set forth below, Plaintiffs' motion to remand should be denied.

**B.    The Complaint**

An examination of the Complaint leaves little doubt that it raises substantial federal issues under the Patent Laws and the FDCA. Although the federal issues need only be essential to one of Plaintiffs' claims, the Complaint reveals that these substantial federal patent and FDCA issues are essential to many of Plaintiffs' claims.

- 4 -

According to their Complaint, Defendants' purported "illegal scheme" was to:

> increase demand for Neurontin and interfere with potential generic
> competitors by illegally marketing Neurontin for certain uses that
> were not safe and effective, in conjunction with acquiring and
> using other patents on other forms and methods of using
> Gabapentin for anticompetitive purposes.

*Id.* ¶ 32. As later becomes clear, the alleged "illegal marketing" claims involve marketing an

FDA regulated drug in a way that Plaintiffs claim the FDA does not permit, and the misuse of

patents claims require a resolution of the proper scope, validity and interpretation of the patents

(and patent application process) under federal law. Plaintiffs claim that this "scheme" (1)

increased the price of Neurontin (to all buyers) above the price of generic equivalents because

the patents allowed generics to be excluded from the market (under the federal patent laws, by

the way) (Compl., Counts I to XXIV), and (2) caused certain buyers to purchase Neurontin for

unapproved (or "not proven safe") uses and/or pay an increased price (*Id.*, Counts XXV to

XLV).

The "illegal marketing" was allegedly done by "misrepresenting" Neurontin's safety and

effectiveness (a matter fully regulated by the FDA), and filing "baseless" federal patent litigation

and/or other "misuse" of the federal legal and regulatory system. Plaintiffs allege injury as a

result of Defendants' conduct, including "the misrepresentation of Neurontin's safety and

effectiveness." Compl. ¶ 43.

The Complaint then alleges that the "anti-competitive purposes" of Defendants were

pursued by efforts to "restrain competition and prevent generic bioequivalents of Neurontin from

entering the market by misusing the legal and regulatory system to harass, intimidate, and

interfere with competitors. Defendants' conduct was done intentionally, in bad faith, and as a

method to use the legal and regulatory system as an anticompetitive weapon." Compl. ¶ 45. To

this end, Plaintiffs allege that Defendants initiated a number of lawsuits, without regard to their merits or chances of success, "<u>against manufactures and distributors who intend to make or have made a generic bioequivalent of Neurontin</u> available to the public."[3]  Compl. ¶ 46 (emphasis added).  Plaintiffs further allege that this was anti-competitive because "Defendants knew at the time that each lawsuit was filed that <u>the generic bioequivalents of Neurontin would not infringe upon any valid and enforceable patient for Neurontin</u> or each lawsuit became objectively baseless and Defendants continued to litigate the lawsuit despite this knowledge." Compl. ¶ 47 (emphasis added).

To further this allegedly "anti-competitive" patent strategy, the Complaint alleges that Defendants "intentionally made false representations to the Food and Drug Administration ("FDA") in listing patents in the Orange Book." Compl. ¶ 48.  "Specifically, Defendants represented, directly or by implication, that its patents claim a drug or drug product or method of using a drug or drug product that the patents do not claim.  Defendants further represented that a claim of patent infringement could be reasonably asserted that, in fact, could not be reasonably asserted." *Id.*  Finally, the Complaint alleges that "Defendants intentionally manipulated and delayed its acquisition of patents and timing of interactions with the FDA to extend the automatic stay of generic bioequivalents of Neurontin by, at least, 23 months." Compl. ¶ 51.

---

[3] The footnote to paragraph 46 identifies the lawsuits as the following: *Warner-Lambert Co. v. Apotex, Inc. and Torpharm*, No. 98 C 4293 (N.D. Ill. filed July 14, 1998); *Warner-Lambert Co. v. Apotex, Inc. and Torpharm*, No. 01-0611 (N.D. Ill. filed February 5, 2001); *Warner-Lambert Co. v. Purepac Pharmaceutical Co. and Faulding Inc.*, No. 98-2749 (D.N.J. filed June 11, 1998); *Warner-Lambert Co. v. Purepac Pharmaceutical Co. and Faulding Inc.*, No. 99-5948 (D.N.J. filed December 20, 1999); *Warner-Lambert Co. v. Purepac Pharmaceutical Co. and Faulding Inc.*, No. 00-2931 (D.N.J. filed June 15, 2000); *Warner-Lambert Co. v. Purepac Pharmaceutical Co. and Faulding Inc.*, No. 00-3522 (D.N.J. filed July 20, 2000); *Pfizer Inc., Warner-Lambert Co. v. Teva Pharmaceuticals, Inc.*, 00-4168 (D.N.J. filed August 24, 2000); *Pfizer Inc., Warner-Lambert Co. v. Teva Pharmaceuticals*, No. 00-4589 (D.N.J. filed September 20, 2000); *Pfizer Inc. v. Zenith Laboratories and Ivax Corp.*, No. 00-6073 (D.N.J. filed December 14, 2000); *Pfizer Inc. v. Zenith Laboratories and Ivax Corp.*, No. 01-0193 (D.N.J. filed January 12, 2001); *Pfizer Inc. v. Zenith Laboratories and Ivax Corp.*, No. 01-1537 (D.N.J. filed March 30, 2001). *Id.* at ¶46, fn 2.

- 6 -

The damages arising from this alleged anti-competitive strategy are that "[b]y interfering or preventing a generic bioequivalent of Neurontin from reaching the market, Defendants injured plaintiffs . . .by causing them to pay more than they otherwise would have paid." Compl. ¶ 52.

While the Complaint was artfully drafted to omit the fact that the litigation involved was federal patent litigation, the footnote to paragraph 46 reveals that all the cases cited are federal patent cases. In any event, the claimed liability – causing Plaintiffs to pay more for Neurontin by excluding generics based on the patents – could only be alleged if the relevant federal patents were either invalid or did not cover the generics. Otherwise, the valid patents excluded the generics and Plaintiffs have no anti-competition claims.

Moreover, in their Prayer for Relief, Plaintiffs seek not only damages but

> A.   A declaration that defendants have committed the violations...
>
> C.   <u>Enjoin [sic] defendants from continuing the illegal activities alleged herein</u>...

Compl. at 70 (Prayer for Relief) (emphasis added). Thus, among other things, Plaintiffs apparently seek to enjoin Defendants from filing future federal patent lawsuits once the Court decides that generics "would not infringe on any valid and enforceable patent for Neurontin," to enjoin or limit certain interactions with the FDA and filings in the Orange Book, and to regulate the timing and manner in which Defendants seek patents from the United States Patent and Trademark Office. *See* Compl. ¶¶ 47, 48, 51 (alleging these specific "illegal" activities). In reality, Plaintiffs are asking that the Superior Court of New Jersey decide whether the federal patent lawsuits were "baseless," whether generics "would not infringe on any valid and enforceable patent," and set the rules for Defendants' dealings with the FDA and Patent Office. These are matters of federal law.

- 7 -

1133729v3

## C.    **The Multi-District Litigation**

Other insurers, benefit plans, individuals and entities have sought the same recoveries

from Defendants on similar or identical theories. The Judicial Panel on Multidistrict Litigation

("JPML") has consolidated these similar actions into two multi-district litigation actions – *In re*

*Neurontin Marketing and Sales Practices Litigation*, MDL Docket No. 1629 (D. Mass)

("Marketing MDL") and *In re Neurontin Antitrust Litigation*, MDL Docket No. 1479 (D. N.J.)

("Antitrust MDL"). Five other cases that had been pending in this district have been transferred

to the Marketing MDL already. As noted previously, the Court in the Antitrust MDL has already

held that antitrust allegations virtually identical to those made by Plaintiffs here raise a federal

question under the Patent Laws. *See Antitrust MDL – Sall/Zafarana* at 17-18 (Novack Aff. Ex.

K).

Moreover, it must be noted that these Plaintiffs are members of the proposed plaintiff

class as asserted in the initial complaint giving rise to the Marketing MDL. That Complaint,

originally filed in this Court in *ASEA v. Pfizer, Inc.*, Civil Action No. 2:04cv02577 JAP/MCA,

purportedly defined the class as:

> All individuals and entities in the United States or its territories
> who, for purposes other than resale, purchased, reimbursed and/or
> paid for Neurontin for indications not approved by the FDA during
> the period from June 1, 1994 through the present.

*ASEA* Complaint (Placey Cert. Tab 4) at ¶ 106. In addition, the *ASEA* Complaint (at Counts

Five, Six and Eight) makes the same state consumer protection and unjust enrichment claims

made in Counts XXV to XLV of Plaintiffs' Complaint here. The *ASEA* action has now been

transferred to the Marketing MDL. Thus, while Plaintiffs may ultimately try their claims

separately rather than as members of a class, it is plain that this action is part and parcel of the

MDL litigations and should be treated consistently. For this reason, as will be argued below, this

1133729v3

Court should defer ruling on the remand motion until this action is transferred by the JPML to one of the two Neurontin MDLs, where other remand motions are pending and/or have been decided.

## III. ARGUMENT IN SUPPORT OF CROSS-MOTION TO DEFER RULING ON REMAND PENDING MDL TRANSFER

### A. THIS COURT SHOULD DEFER RULING ON THE MOTION TO REMAND PENDING MDL TRANSFER, PARTICULARLY SINCE ONE OF THE MDL COURTS HAS ALREADY DENIED A MOTION TO REMAND VIRTUALLY IDENTICAL CLAIMS

Preliminarily, this Court should simply defer ruing on Plaintiffs' Motion to Remand and allow this action to be transferred to one of two Neurontin MDLs already established. As noted above, numerous cases have been filed in state and federal jurisdictions across the United States alleging, among other things, that Pfizer and Warner-Lambert violated federal patent laws, the FDCA, and various state consumer protection or anti-competition statutes with respect to Neurontin. The JPML has transferred 39 of the cases pending in federal courts to Honorable Patti B. Saris of the United States District Court for the District of Massachusetts for coordinated or consolidated pretrial proceedings in the Marketing MDL, captioned *In re: Neurontin Marketing and Sales Practices Litigation*, MDL Docket No. 1629. Conditional Transfer Orders are pending in eight additional cases, and the JPML has been notified, pursuant to JPML Rule 7.5(e), that this case is a potential tag-along action.[4] As detailed above, these Plaintiffs even fall within the definition of the proposed class in the action in which MDL treatment was initially sought. ASEA Complaint ¶106 (Placey Cert. Tab 4).

Approximately 20 additional purported class actions have been centralized by the JPML in this Court for coordinated or consolidated pretrial proceedings before Honorable John C.

---

[4] Here, Plaintiffs have advised all of the Defendants that they intend to oppose MDL transfer, at a minimum on jurisdictional grounds. That, of course, will be for the JPML to determine.

1133729v3

Lifland in the Antitrust MDL, captioned *In re Neurontin Antitrust Litigation*, MDL Docket No.

1479. As discussed in detail in the argument in opposition to remand below, Judge Lifland has

already denied a motion to remand virtually identical claims in two of these cases. *See* the

*Antitrust MDL – Sall/Zafarana* Opinion (Novack Aff. Ex. K).

In addition, eight pending motions to remand have been filed in these Neurontin actions

and appear to be based on the same arguments set forth in Plaintiffs' Brief here. The remand

motions filed in these Neurontin actions should be decided at one time by a single judge, and

accordingly, this Court should defer ruling on Plaintiffs' motion at this time. *See Jackson v.*

*Johnson & Johnson, Inc.*, No. 01-2113, 2001 WL 34048067, at *2 (W.D. Tenn. April 3, 2001)

("Federal Courts routinely defer ruling on pending motions to remand in MDL litigation until

after the JPMDL has transferred the case to the MDL court.").

By deferring to the MDL, this Court would promote judicial economy, ensure uniformity

in pre-trial rulings, and prevent litigants from engaging in costly and duplicative efforts. *See In*

*re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990); *Falgoust v. Microsoft Corp.*, No. Civ. A. 00-0779, 2000 WL

462919, at * 1 (E.D.La. April 19, 2000) ("the purpose of the JPML is to promote judicial

economy and to prevent inconsistent rulings"); *Trench v. Jackson Nat'l Life Ins. Co.*,

No. 99-C-5182, 1999 WL 1044923, at * 1-2 (N.D. Ill. Nov. 12, 1999) (noting that "resolution…

in a single forum will ensure consistency and avoid duplicative efforts").

Here, Plaintiffs present issues that arise in eight of the other removed actions that have

been filed in various jurisdictions, not to mention those already decided in the *Antitrust MDL –*

*Sall/Zafarana* Opinion. In Pfizer and Warner-Lambert's view, these actions share a common

foundation of claims that are intertwined with, and demand interpretation of, the patent laws and

the extensive and layered federal regulations of the prescription drug industry. An MDL

- 10 -

1133729v3

transferee court with the benefit of understanding the similarity of the complaints, can best provide the consistency, judicial economy, and reduction of the unnecessary expense of litigating the same issues in numerous separate cases. In addition, the relative hardship, if any, on Plaintiffs resulting from the delay is clearly outweighed by the benefits of deferring a ruling on Plaintiffs' motion. *See Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1053 (E.D. Wis. 2001) (where defendant faced the same or similar issues on remand in eight other cases, stay was granted because gains in judicial economy outweighed the burden of delay); *American Seafood, Inc., v. Magnolia Processing, Inc.*, Civ. A. Nos. 92-1030, 92-1086, 1992 WL 102762, at *2 (E.D. Pa. May 7, 1992) ("Duplicative motion practice and discovery heavily outweigh the possible prejudice to the plaintiffs due to the delay.").

For these reasons, this Court should simply defer a ruling on Plaintiff's motion to remand pending MDL transfer.

## IV.    ARGUMENT IN SUPPORT OF DENIAL OF REMAND

### A.    DEFENDANTS' REMOVAL COMPLIED WITH ALL STATUTORY REMOVAL REQUIREMENTS

In Plaintiffs' Memorandum in Support of Motion to Remand ("Plaintiffs' Brief"), in their first and presumably best argument, Plaintiffs claim that "Defendants' have failed to comply with that statutory requirements to remove a purely state law cause of action to federal court." Plaintiffs' Brief at 6. Plaintiffs' claims, however, are without merit because Defendants filed a timely Notice of Removal on January 5, 2005 and its filing complied with all statutory requirements.

To start, Plaintiffs contend that "Defendants failed to submit the relevant state court pleadings with their Notice of Removal by the deadline of January 5, 2005" as required by the removal statute. Plaintiffs' Brief at 7; *see also* 28 U.S.C. § 1446(a). This claim, however, is just

- 11 -

factually wrong: the Notice of Removal and all exhibits were submitted together on January 5. This is clear from a review of the docket (which shows the filing date as January 5 for all documents), as well as Defendants' cover letter accompanying their Notice of Removal, showing that Defendants submitted all relevant state court pleadings (including Exhibit D to the Notice of Removal) in a timely manner on January 5, 2005. *See* Certification of Richard G. Placey submitted herewith, containing time-stamped copies of the filing and cover letter (which specifically states that the Complaint [the only pleading] is also on the computer disk in a separate file). The Clerk's office may have mechanically opened the computer file or added documents on January 11, but the filing date reflected throughout for all documents is January 5. Thus, Plaintiffs are grasping at straws even in their very first arguments in support of remand.

Plaintiffs' next contention, that the joinder submitted by Defendants Lodewijk de Vink and Anthony Wild failed to comply with the procedural requirements set forth in the removal statute, and that consequently Defendants failed "to obtain proper consent for removal on behalf of all defendants," is still more grasping at straws. Plaintiffs' Brief at 7-8. Contrary to Plaintiffs' assertions, however, the joinder of Defendants De Vink and Wild was proper here, and satisfied the requirements of the removal statute.

"[I]t is a well-settled rule of law – commonly known as the 'rule of unanimity' – that all defendants must join in or consent to the removal petition." *Michaels v. State of New Jersey*, 955 F. Supp. 315, 319 (D.N.J. 1996). Pursuant to the rule of unanimity, each defendant does not have to sign the same removal petition, but simply must submit "timely written evidence of joinder or consent" to the removal "by filing its own notice of removal, an affidavit of joinder or consent, <u>or even a letter</u>." *Id.* at 321 (emphasis added). There is no requirement that a formal pleading be filed – only that written evidence be submitted.

- 12 -

Here, Defendants de Vink and Wild agreed to the attachment of a timely joinder to the

Notice of Removal on January 5, 2005 (Exhibit B to the Notice of Removal), voicing "their

consent <u>directly to the court</u>" as required under the rule of unanimity. *Michaels id.* at 320

(emphasis in original). This attachment was signed by their New York counsel, and submitted as

supporting evidence of their consent to removal (as pled in the very beginning of the Notice

itself). This satisfies the requirement that written evidence of consent be submitted, and the

Court need go no further in order to reject this argument. *Id.* at 321. In that regard, no one

disputes the fact that de Vink and Wild do in fact consent.

Given that Defendants de Vink and Wild properly voiced their consent to removal,

Plaintiffs' entire argument rests on the fact that original joinder submitted by Defendants de Vink

and Wild was signed by an attorney who was not admitted to practice before the United States

District Court for the District of New Jersey and should therefore somehow be ignored.[5]

Plaintiffs' Brief at 8. It should not be: the original joinder signed by New York counsel is

sufficient "evidence" of de Vink's and Wild's consent. *Michaels, id.* at 321.

Plaintiffs argue that the de Vink/Wild joinder was defective because it was not signed by

a member of the bar of the United States District Court for the District of New Jersey, but that

does not render it defective. The removal statute expressly requires that a Notice of Removal be

signed "pursuant to Rule 11," which in turn requires that the document be signed by "at least one

attorney of record." The removal notice here complied fully with this requirement because it

was signed by Richard Placey, who is not only the attorney of record but is also a member of the

bar of the State of New Jersey and the bar of this District Court. See 28 U.S.C. § 1446(a); Fed.

---

[5] Plaintiffs go to great lengths to scrounge support for this hypertechnical and formalistic argument, even attaching a Martindale Hubbell listing for the Milbank Tweed firm in an effort to show that it is a New York firm. Novack Aff. Ex. C.

R. Civ. P. 11. Contrary to Plaintiffs' assertion, there is no statutory provision even requiring the filing of a joinder merely to evidence the consent of other defendants as pled in the Notice itself, let alone a provision as to how such a joinder is to be signed.[6]

Moreover, Defendants de Vink and Wild promptly submitted another joinder (confirming their original joinder), signed by an attorney admitted to practice before this Court. *See* Docket Item No. 6. Thus, even if the evidence of consent signed by New York counsel could be ignored, "[i]t is uniformly recognized" that the failure to properly join all defendants in a removal petition "is not deemed to be jurisdictional." *See Michaels*, 955 F. Supp. at 321 (citing *Balazek v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995)). Instead, such defects are considered "modal or formal, and can be waived," and some courts "have exercised their discretion to permit defendants to cure technical defects in removal petitions." *Michaels, id.* at 321 (listing cases).

Even if Plaintiffs' hypertechnical "defective consent" argument could be credited, any defect would be of no consequence and/or should be waived here because it was promptly fixed by Defendants de Vink and Wild and caused no prejudice to Plaintiffs. This position is supported by the decisions of various federal courts. *See Kovilic Const. Co., Inc. v. Missbrenner*, 106 F.3d 768, 771-772 (7th Cir. 1997) (reversing district court's decision to strike appellee's brief under Rule 11(a) where appellees' attorney had failed to file an appearance form and affidavit as required by the local rules because the district court made no finding that the appellant was prejudiced by the omission); *Operating Engineers Local 139 Health Benefit Fund*

---

[6] Even if the joinder could only be signed by a member of the bar of this Court, Rule 11 itself provides that "[a]n unsigned paper shall be stricken <u>unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.</u>" Fed. R. Civ. P. 11(a) (emphasis added). In the circumstances of the present case, even if the signature required was that of a local attorney, Defendants de Vink and Wild were thereby entitled to promptly correct that omission, and they did so by filing an amended joinder with corrected signatures on January 14, 2005 – almost two weeks before Plaintiffs served the Motion to Remand.

*v. Rawson Plumbing, Inc.*, 130 F. Supp.2d 1022, 1023-24 (E.D. Wis. 2001) (applying Rule 11(a) and citing *Kovilic*, the court denied the plaintiffs' request for default judgment based on fact that the defendant's answer had been signed by an officer of the defendant, who was not an attorney admitted to practice in the Eastern District of Wisconsin, because the plaintiffs had suffered no prejudice as a result of this technical defect); *Guess?, Inc. v. Chang*, 912 F. Supp. 372, 380 (N.D. Ill. 1995) (denying the defendants' motion to strike an amended complaint under Rule 11(a) that was signed by the plaintiff's original attorneys, as opposed to the plaintiff's current counsel, because "dismissal for such a technical defect would be improper"); F.R.Civ.P. 11(a) (omission of signature may be corrected promptly).

Accordingly, Defendants fully complied with the applicable procedural requirements in the removal statute. For this reason, as well as the reasons set forth below, Plaintiffs' motion to remand should be denied.

**B.    THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER THIS ACTION PURSUANT TO 28 U.S.C. §§ 1331 AND 1338**

In their second argument, Plaintiffs claim that Defendants have failed to establish that this Court has federal question jurisdiction over this action. Contrary to the assertions in Plaintiffs' Brief, however, this case was properly removed from state court because this Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.[7] Federal question jurisdiction exists where a plaintiff's right to relief requires resolution of a substantial federal law issue. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988).[8] Here, substantial

---

[7] 28 U.S.C. § 1331 provides for original district court jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1338(a) provides for exclusive federal court jurisdiction over "any civil action arising under any Act of Congress relating to patents."

[8] In Plaintiffs' Brief, they claim that Defendants "have the burden to establish that the state court action could have originally been brought in federal court pursuant to each and every theory of liability alleged by Plaintiffs in their Complaint." Plaintiffs' Brief at 8 (emphasis added). Plaintiffs, however, have misstated the appropriate legal
Continued...

issues of federal patent law must be decided as a necessary element of certain claims, and substantial issues under the FDCA must be decided as an element of certain other claims.

As will be demonstrated below, this Court has federal question jurisdiction for these two independently sufficient reasons: (1) certain of Plaintiffs' claims, primarily the anti-competition claims in Count I to XXIV, raise substantial issues of federal patent law and (2) certain other of Plaintiffs' claims, primarily the consumer claims in Counts XXV to XLV, raise substantial issues under the federal Food, Drug and Cosmetic Act.

### 1.    Legal Standard

According to the United States Supreme Court, "[a] district court's federal-question jurisdiction ... extends over 'only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law,' in that 'federal law is a necessary element of one of the well-pleaded ... claims.'" *Christianson*, 486 U.S. at 808 (citations omitted).[9] The Third Circuit recently clarified the second prong of the *Christianson* test for federal question jurisdiction in *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002), stating that:

> It is sufficient that the merits of the litigation turn on a substantial federal issue that is "an element, and an essential one, of the plaintiff's cause of action." The controversy must be "genuine and present ... not merely ... conjectural." In short, the federal law "must be in the forefront of the case and not collateral, peripheral

----

....Continued

standard. Rather, in *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, n.3 (2003), the United States Supreme Court clarified that if one "claim in the complaint is removable," any remaining state law claims are also removable under the federal supplemental jurisdiction statute. Accordingly, Defendants only have to establish that one claim – not all claims – alleged by Plaintiffs could have originally been brought in federal court, and that the claim was properly removed.

[9] Note that federal law must be a necessary element of <u>one</u> of the claims. *Id.* Although one would be sufficient, here federal law is a necessary element of most of Plaintiffs' claims.

> or remote" … It need not, however, be a situation in which federal
> law completely preempts state law."

*Id.* at 389 (citations omitted).

Put another way, "even though state law creates [Plaintiffs'] causes of action, [their] case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983). A long line of Supreme Court cases has clearly established the doctrine of substantial federal question jurisdiction. *See Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921); *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936); *Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808-809 (1986); *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164 (1997). A case involving a substantial question of federal law is one that "poses what Justice Frankfurter called the litigation-provoking problem – the presence of a federal issue in a state-created cause of action." *Merrell Dow,* 478 U.S. at 809-10.

Moreover, as Judge Lifland recently noted in *Antitrust MDL – Sall/Zafarana*: "A plaintiff cannot avoid removal by failing to plead necessary federal questions. [citations omitted] 'If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint.'" *Id.* at 7 (Novack Aff., Ex. K) (citations omitted) .

In this case, federal question jurisdiction is proper because – however artfully they have tried to disguise it – Plaintiffs' claims require the Court to decide substantial issues of federal patent law under the anti-competition counts, as well as issues relating to alleged violations of

- 17 -

the federal Food, Drug and Cosmetic Act and FDA regulations under the consumer counts.

These issues are at the forefront of this case, and are not "collateral, peripheral or remote." *Id.*[10]

> 2.  **Federal Question Jurisdiction Is Proper Because Plaintiffs' State Law Anti-Competition Claims Necessarily Implicate Substantial Issues Of Federal Patent Law**
>
>> a.  **These Claims Require the Court to Determine Issues Relating to the Validity, Enforceability, and Infringement of Defendants' Patents for Neurontin**

Plaintiffs claim that "[i]ssues of federal patent law are not a proper basis for federal

question jurisdiction in this case." Plaintiffs' Brief at 13.  Plaintiffs' argument, however, lacks

any legal merit as Plaintiffs' state law anti-competition claims require the Court to decide, first

and foremost, substantial issues of federal patent law. *See Christianson*, 486 U.S. at 808.

Indeed, federal question jurisdiction exists because a Court cannot decide whether

Defendants have unlawfully precluded potential competitors from marketing generic versions of

Neurontin without first deciding substantial questions of federal patent law. *See the Antitrust

MDL – Sall/Zafarana Opinion* (Novack Aff. Ex. K) (holding that the Court had federal question

jurisdiction over the plaintiffs' virtually identical state law anti-competition claims against Pfizer

and Warner-Lambert because the claims "could not be resolved without deciding substantial

issues of federal [patent] law").

In this case, the thrust of Plaintiffs' anti-competition claims is that Defendants have

brought "bad faith" or "objectively baseless" patent infringement actions against potential

generic competitors because "generic bioequivalents of Neurontin would not infringe on any

valid and enforceable patent." Compl. ¶¶ 46-47.  Plaintiffs' damages on this theory (re-pled

---

[10] To the extent that the substantial federal question doctrine does not extend to Plaintiffs' other claims, this Court nonetheless has supplemental jurisdiction over such claim or claims pursuant to 28 U.S.C. § 1367. *See also City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 165-67 (1967).

again and again under numerous state anti-competition laws) are that they were "cause[d] to pay more than they otherwise would have paid" because the conduct prevented a generic equivalent of Neurontin from entering the market. *Id.* ¶ 52. Of course, since the patents would always prevent generics from being sold if valid and infringed, these claims and these damages simply cannot be advanced unless Plaintiffs can prove that Defendants' patents are invalid or not infringed.

Moreover, even if they can prove patent invalidity, a lawsuit will be considered a "sham" only if it is "objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits" and if it conceals "an attempt to interfere directly with the business relationships of a competitor." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (citations omitted); *see also Village Supermarket, Inc. v. Mayfair Supermarkets, Inc.*, 634 A.2d 1381, 1385 (N.J. Super. 1993). Here, Plaintiffs' claims relating to exclusion of generic Neurontin and alleged "bad faith" lawsuits turn on whether, as a matter of federal patent law, Plaintiffs can first prove the patents invalid and then show that Defendants did not have a reasonable basis for filing these patent actions. Only then are Plaintiffs' damages under the anti-competition counts (the additional amounts they allegedly had to pay for brand-name Neurontin because generic Neurontin was unavailable) even potentially viable. Accordingly, federal question jurisdiction over Plaintiffs' anti-competition claims is proper because this Court cannot determine whether the actions are improper without first resolving questions of patent validity and infringement.

Plaintiffs also claim that Defendants wrongfully listed Neurontin patents in the FDA Orange Book because Defendants "knew that such representations could provide, at least, a 30-month stay before a generic bioequivalent entered the market." Compl. ¶¶ 48-50. Contrary to

Plaintiffs' assertion, however, these Orange Book allegations do not defeat federal question jurisdiction because they cannot be decided independently of the underlying patent infringement issues. The federal statute governing Orange Book listing makes clear that the wrongful listing issue is inextricably intertwined with federal patent law: "The applicant shall file with the application the patent number and expiration date of <u>any patent which claims the drug</u> for which the applicant submitted the application or which claims a method of using such drug and <u>with respect to which a claim of patent infringement could reasonably be asserted</u> if a person not licensed by the owner engaged in the manufacture, use or sale of the drug." 21 U.S.C. § 355 (b)(1) (emphasis added). In other words, Plaintiffs cannot prevail on a wrongful listing theory without a court determination regarding a substantial patent law issue, then (if the patents are invalid) followed by a determination that the listing itself was improper under 21 U.S.C. § 355.

In this regard, Plaintiffs request for an injunction against the "illegal activities alleged" (Compl., Prayer for Relief) vividly underscores the federal question as it relates to patents and the Orange Book. A court cannot enjoin or limit the exercise of these federally enacted rights without resolving the questions of federal law which govern the proper exercise of those rights.

Moreover, in the nearly identical *Antitrust MDL – Sall/Zafarana* cases, the Court held that these types of claims necessarily involve substantial questions of federal patent law. *See id.* at 17-18 (Novack Aff. Ex. K) There, as here, the plaintiffs alleged that the defendants "wrongfully prevented competitors from marketing generic versions of gabapentin" "by filing 'sham patent infringement lawsuits against horizontal generic competitors'" and improperly listing certain Neurontin patents in the Orange Book. *Id.* at 1, 3-4. The Court denied the plaintiffs' motions to remand these claims to state court, holding that these claims could not be resolved "without deciding substantial issues of federal law, i.e., the validity, enforceability, and

- 20 -

1133729v3

infringement of defendants' patents." *Id.* at 17-18. "In short," the Court concluded that "the

legitimacy" of the defendants' conduct – the filing of patent infringement lawsuits – depended

"directly on the scope of the patents." *Id.* at 18. In addition, the Court held that "[t]he propriety

of listing patents in the Orange Book likewise depends directly on the scope of the claims of the

patents." *Id.*[11] Whatever the state anti-competition law might say, "'a [valid] patent holder is

permitted to maintain his patent monopoly through conduct permissible under the [federal]

patent laws' and, therefore, the plaintiffs were required to show that the defendants' conduct was

impermissible under the patent laws." *Id.* at 13 (citing *Tamoxifen Citrate Antitrust Litig.*, 222 F.

Supp. 326, 331 (E.D.N.Y. 2002)).

As the case law plainly holds, Plaintiffs' state law anti-competition claims based on the

alleged filing of sham lawsuits and improper listing of patents in the Orange Book cannot be

resolved without deciding substantial issues of federal patent law. For this reason alone, federal

question jurisdiction exists and the motion to remand should be denied.

Plaintiffs attempt to distinguish the decision in *Antitrust MDL – Sall/Zafarana* (as well as

*Stuart* and *Tamoxifen*), on the grounds that the courts in those cases "failed to acknowledge that

the validity of certain patents ... arose only in the context of a defense," and that that a defense

cannot create federal question jurisdiction. Plaintiffs' Brief at 23. Similarly, Plaintiffs contend

---

[11] Additional cases applying the *Christianson* standard also make clear that there is federal question jurisdiction in this case. *See* Order Denying Motion to Remand in *Stuart v. Pfizer Inc.*, No. 02-2511. Slip. Op. at 15 (W.D. Tenn. Oct. 2, 2002) (a copy of this opinion is at Novack Aff. Ex. L) (denying motion to remand because a "determination of sham litigation requires first and foremost resolution of an essential question of federal patent law"); *In re Tamoxifen Citrate Antitrust Litig.*, 222 F. Supp. 2d 326, 330-331 (E.D.N.Y. 2002) (a copy of this opinion is at Novack Aff. Ex. L) (denying motion to remand because the plaintiffs could not succeed on their state law anti-competition claims without proving the invalidity or unenforceability of a patent); *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1328-29 (Fed. Cir. 1998), *overruled on other grounds in Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999); (holding that removal was proper where patent law issues were integral to the state claims that were asserted, even though there was no dispute that those claims arose under state law); *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 986 F.2d 476, 478 (Fed. Cir. 1993) (holding that the need to resolve a question of federal patent law in deciding a state law business disparagement claim was grounds for removal).

that the "the patent issue" does not create federal question jurisdiction in this case because it has only been raised by Defendants "as part of a defense." *Id.* at 17. In both instances, Plaintiffs are incorrect. A careful reading of Judge Lifland's opinion in *Antitrust MDL – Sall/Zafarana* shows that he considered and rejected this exact argument.

Judge Lifland found that the defendants' "ability to stave off competition stands or falls on the scope of its patents and the rights flowing therefrom." *Id.* at 18. Accordingly, he concluded that a "determination of the scope of Defendants' patents is *a necessary part of Plaintiffs' claims in the first instance and not, as Plaintiffs argue, merely invoked as a defense.*" *Id.* (emphasis added).

Similarly in this case, a determination of the scope of Defendants' patents for Neurontin is a necessary part of Plaintiffs' state law anti-competition claims, and is not merely invoked in a defensive posture.[12] Accordingly, Plaintiffs' anti-competition claims (and the consumer claims,

---

[12] Plaintiffs further contend that *Antitrust MDL-Sall/Zafarana* represents the minority view, and that "[n]umerous federal courts have remanded cases involving name-brand drugs and their respective patents back to state court." Plaintiffs' Brief at 14. All of the cases cited by Plaintiffs, however, are distinguishable from this case because the Plaintiffs' anti-competition claims include alternate theories of liability which do not depend on the resolution federal law issues. *See Stuart*, No. 02-2511, Slip. Op. at 14-15 (Novack Aff. Ex. L) at 14 ("[N]o authority supports the proposition that remand is appropriate in the absence of alternative theories that do not require resolution of federal questions.").

In each and every case cited by Plaintiffs, the Defendants allegedly executed settlement agreements or stipulations with generic manufacturers "to preserve and perpetuate the monopoly of a questionable patent" (*Id.* at 13), and these allegedly anti-competitive agreements were either the sole theory of liability or an alternative to a sham litigation theory. *See Anthem, Inc. v. Bristol-Meyers Squibb Co.*, Civil Action No. 03-0008, 2003 U.S. Dist. LEXIS 15762, at *3-4 (D.N.J. March 18, 2003) (alleging that the defendants entered into a settlement agreement with a generic manufacturer); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 748 (E.D.N.Y. 2001) (alleging that the defendant had reached "an unreasonably anti-competitive agreement" with generic manufacturers); *McGrew v. Schering-Plough Corp.*, No. 01-2311-GTV, 2001 WL 950790, at *2 (D. Kan. Aug. 6, 2001) (alleging that the defendant entered into a settlement argument with a generic manufacturer); *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 674-75 (S.D.N.Y 2000) (holding that the plaintiffs could point to the defendant's use of a stipulation agreement with a generic competitor to prove their state law claims); *Drug Mart Pharmacy Corp. v. Abbott Labs.* (*In re Terazosin Hydrochloride Antitrust Litig.*), Case No. 00-631-CV-SEITZ/GARBER, Slip. Op. at 10 (Novack Aff. Ex. H) (S.D. Fla. August 26, 2000) (alleging that the defendants "entered into illegal agreements to restrain trade"); *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 839 (E.D. Mich. 1999) (alleging that the defendant committed "other acts that would violate state law," including a "stipulation agreement" with a generic competitor); *Aetna U.S. Healthcare v. Hoechst Atkiengesellschaft*, 54 F.

Continued...

to the extent they seek damages based on the patents as well as the promotion) provide a proper basis for federal question jurisdiction, and Plaintiffs' motion to remand should be denied.

        b.    **Plaintiffs Have Failed To Allege Any Alternative Theory That Would Defeat Federal Question Jurisdiction**

Federal question jurisdiction is proper where, as here, "the patent law issue" is "necessary to every theory under at least one claim." *Antitrust-Sall/Zafarana* at 7 (citing *Christianson*, 486 U.S. at 810). In their Brief, Plaintiffs claim that they have pled various theories of liability against Defendants that are "not predicated upon the resolution" of a federal patent law issue, and that these "alternative" theories defeat federal question jurisdiction. Plaintiffs' Brief at 13-14, 17. This argument, however, is belied by even a brief examination of the allegations contained in the Complaint. As set forth below, none of Plaintiffs' purported "alternate" theories of liability are sufficient to defeat federal question jurisdiction over Plaintiffs' anti-competition claims.

Plaintiffs claim that the following theories of liability do not require the Court to resolve federal patent law issues: (1) that Defendants engaged in "bad faith" patent infringement lawsuits; (2) that Defendants "intentionally manipulated and delayed the acquisition of patents and timing of interactions with the FDA" for anti-competitive purposes; and (3) that Defendant Pfizer "engaged in a scheme to leverage its monopoly power." Plaintiffs' Brief at 17-20.

---

....Continued

Supp. 2d 1042, 1046-47 (D. Kan. 1999) (alleging that one of the defendants executed a stipulation agreement with a generic competitor).

    As discussed below, Plaintiffs have not alleged that any such anti-competitive agreement existed, and have failed to allege any alternate theory that does not require resolution of a federal patent law issue. Accordingly, the cases cited by Plaintiffs offer no support for Plaintiffs' argument that federal question jurisdiction is not proper here, and Plaintiffs' motion to remand should be denied.

1133729v3

Contrary to Plaintiffs' claims, the first alleged "alternate" theory of liability – the filing of bad faith lawsuits – does not defeat federal question jurisdiction here. As discussed above, Judge Lifland recently held (in the related Neurontin *Antitrust MDL*) that allegations of bad faith or sham patent infringement lawsuits require the resolution of substantial issues of federal patent law. *Antitrust MDL – Sall/Zafarana* at 16; *see also Stuart* at 15 ("A determination of sham litigation requires first and foremost resolution of an essential question of federal patent law."). Accordingly, this theory of liability does not avoid federal question jurisdiction over Plaintiffs' state law anti-competition claims.

In addition, the second "alternate" theory alleged by Plaintiffs – the delay in acquiring and listing a particular patent – does not defeat federal question jurisdiction because it is based on allegations in Plaintiffs' Brief that do not appear anywhere in the Complaint. *See* Plaintiffs' Brief at 18 (discussing Defendants' acquisition and listing of "what is now known as the 482 patent"). In any event, "[t]he propriety of listing patents in the Orange Book ... depends directly on the scope of the claims of the patents" and involves a substantial question of federal patent law. *Antitrust MDL – Sall/Zafarana* at 18. Thus, despite the improper and belated nature of this purported "alternate" theory of liability, it does not defeat federal question jurisdiction here.

Similarly, the third "alternate" theory alleged by Plaintiffs – that Defendant Pfizer attempted to use its monopoly power with respect to Neurontin "to expand its market share and power related to other products, such as Lyrica or pregabalin" – does not defeat federal question jurisdiction because it too is based on allegations in Plaintiffs' Brief that go beyond what is alleged in the Complaint. *See* Plaintiffs' Brief at 20. Moreover, Plaintiffs allege that Defendant Pfizer perpetrated this "scheme to leverage its monopoly power" by filing sham patent infringement lawsuits (*id.*), and as discussed above, these types of allegations require the Court

- 24 -

to decide substantive issues of federal patent law. In addition, courts have clearly held that the ability to "raise, fix, maintain and stabilize Neurontin prices at artificial and supercompetitive levels .... would not in and of itself demonstrate an unlawful monopoly if Defendants owned a valid and enforceable patent for Neurontin," *Stuart* at 16, and "'a [valid] patent holder is permitted to maintain his patent monopoly through conduct permissible under the patent laws' and, therefore, plaintiffs were required to show that the defendants' conduct was impermissible under the patent laws." *Antitrust MDL – Sall/Zafarana* at 13 (citation omitted; emphasis added). Accordingly, this purported "alternate" theory of liability involves substantial questions of federal patent law, and does not undercut federal question jurisdiction over Plaintiffs' state law anti-competition claims.

The only additional theory advanced by Plaintiffs is that Defendants have unlawfully promoted Neurontin for non FDA-approved uses. *See* Compl. ¶¶ 34-41. For example, Plaintiffs claim that Defendants engaged in a "false, deceptive and misleading marketing campaign" and made payments directly to doctors to encourage the prescription of Neurontin for non FDA-approved uses. *See id.; see also* Plaintiffs' Brief at 21-23. This, of course, is not an alternative theory on which Plaintiffs could recover on the claims about preventing generic competition and the claimed anti-competition damages, which arise from the lack of generic competition (*e.g.*, Counts I to XXIV). Instead, it is an entirely separate claim by which plaintiffs seek to recover alleged losses resulting from the claim that Plaintiffs paid for the unapproved use of Neurontin. That is plain from the fact that even if successful, Plaintiffs' supposed "alternate" theory would only provide damages to those who bought Neurontin for unapproved uses (or based on "illegal" promotion), and such Plaintiffs presumably would seek their entire purchase price as damages. This theory would provide no relief for those who bought Neurontin for FDA approved uses, but

- 25 -

who claim they overpaid due to lack of generic competition (these plaintiffs would presumably seek only a part of this purchase price as damages).

Indeed, this precise issue was before the *Antitrust MDL – Sall/Zafarana* Court, which found that the claims for purchase of Neurontin for non-FDA approved uses were "qualitatively distinct" from claims brought for allegedly inflated prices paid for Neurontin for its approved uses (due to exclusion of generics). Thus, they did not "create an alternate theory of recovery for Plaintiffs' claims relating to [Defendants' alleged interference with or prevention of] generic competition," and combining these claims with the anti-competition claims could not defeat federal jurisdiction. *Id.* at 18 (emphasis added). Consequently, in this case, as in *Zafarana*, Plaintiffs have failed to allege any alternative theories of liability with respect to their anti-competition claims that would defeat federal question jurisdiction.

The federal jurisdictional issue here, the absence of alternatives which do not implicate federal law, and the role of federal law and federal decision-making in this case is critical to the federal policy articulated by the Supreme Court in *Christiansen,* as the Court in *Tamoxifen-Citrate* held:

> The policy behind *Christianson* is that the patent law is intended to be applied uniformly by the Federal Courts. *If state courts were able to make rulings on any anti-competitive theory that could nullify patent rights, uniformity of the patent law would be a mirage.* Thus, the Court concludes that plaintiffs' claims necessarily depend upon the resolution of a substantial question of federal patent law.

222 F. Supp. 2d at 333 (emphasis added) *See also* U.S.C.A. Const., Art. I, § 8. This is the critical reason that this Court has federal question jurisdiction here, and accordingly the Motion for Remand should be denied due to the existence of substantial questions of federal patent law.

3.    **Plaintiffs' Consumer Claims Cannot Be Resolved Without Deciding Substantial Issues Under The Food, Drug And Cosmetic Act**

In addition to raising questions of federal patent law (particularly in the anti-competition claims), Plaintiffs' Complaint also raises questions of federal law under the FDCA in the consumer claims (Counts XXV to XLV). For this additional and independent reason, federal question jurisdiction exists, although the Court need not reach this issue if it concludes that this Court has federal question jurisdiction over the anti-competition claims due to the substantial patent law issues.

a.    **The Consumer Claims in the Complaint Also Raise Substantial Questions of Federal Law Under the Food, Drug and Cosmetic Act**

Plaintiffs' Complaint demonstrates that Plaintiffs' right to relief under their state law claims turns on whether Defendants violated federal statutes and regulations governing pharmaceutical promotion. As Plaintiffs undoubtedly realize, the authority to regulate the promotion and marketing of prescription drugs resides with the FDA. Consequently, many of the allegations in the Complaint directly implicate FDA regulations and the FDCA.[13] For example, Plaintiffs allege that Defendants, in an effort to increase sales, illegally marketed Neurontin. Compl. ¶ 32. In so doing, Defendants allegedly sponsored continuing medical education seminars and provided grants for the writing of articles to be submitted to peer-reviewed journals. *See* Compl. ¶¶ 40A, 37C. Such conduct, it is clear, may be deemed wrongful only insofar as it runs counter to federal regulations governing the promotion of pharmaceuticals.

---

[13] For example, the FDCA charges the FDA with the duty to ensure that "drugs are safe and effective." 21 U.S.C. § 393(b)(2)(B). As part of the FDA's responsibility for determining the safety and efficacy of drugs, it is responsible for the regulation and approval of prescription drug labeling. Drug labeling includes "all written, printed, or graphic matter" marketing the drug, 21 C.F.R. § 1.3(a), and the FDA has set forth detailed requirements for the contents of advertising for prescription drugs. *See* 21 C.F.R. §§ 202, 203; 21 U.S.C. § 321(m)(1)-(2). All drug advertisements must be submitted to the FDA and be consistent with the drug label or any changes to that label. *See* 21 C.F.R. § 214.550; 21 C.F.R. 314.70(c); 21 C.F.R. § 314.81(b)(3).

- 27 -

Indeed, the Complaint's references to the FDA's "Orange Book" further illustrates the role federal regulations has in Plaintiffs' theory of liability here. Compl. ¶ 48. As a result, because Plaintiffs themselves have put questions of federal importance at the center of these claims, they may not now attempt to avoid this Court's jurisdiction.

Plaintiffs state law causes of action are premised on alleged violations of federal regulations and statutes. The gravamen of the consumer protection claims is that, contrary to federal law and regulations, Defendants engaged in FDA-prohibited promotion which injured Plaintiffs. *See* Compl. ¶¶ 37, 40. To adjudicate these claims, it appears unavoidable that the Court must determine the parameters of the FDCA and FDA regulatory prohibitions on such marketing and promotion.

Indeed, federal law governs the content of representations or claims made by pharmaceutical manufacturers, including scientific statements and information provided on prescription drug labels. Because the labeling and branding of prescription drugs lie within the province of federal regulation, an examination of Plaintiffs' allegations will unavoidably entail an analysis of the scope and breadth of FDA regulations and the FDCA regarding the promotion of prescription drugs by pharmaceutical companies. For example, Plaintiffs' allegations will require a determination as to what activities qualify as wrongful promotion and thus violate federal law. The Court will therefore be unable to analyze the propriety of Plaintiffs' claims without first analyzing what constitutes alleged unlawful promotion of pharmaceuticals under the federal regulatory regime.

Furthermore, Plaintiffs cannot avoid federal question jurisdiction over their claims by now disclaiming their reliance on the FDCA, which governs off-label promotion of prescription drugs. Plaintiffs assert that they "have alleged only state law causes of action, and ...

- 28 -

1133729v3

Defendants' liability may be found independent of the resolution of any federal issue." Plaintiffs Brief at 10. But this argument is belied by the Complaint, which is filled with allegations that Defendants promoted Neurontin in ways that would constitute only violations of federal law. In that regard, Plaintiffs' Complaint is artfully pled to avoid specific reference to the FDCA and other pervasive federal regulation of drug marketing. However, the *Antitrust MDL – Sall/Zafarana* opinion teaches that removal cannot be avoided by failing to plead necessary federal questions: "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the ... Complaint." *Id.* at 7.

    As set forth above, even such "artful pleading" cannot divorce the Complaint from the pervasive federal regulation of drugs and drug marketing. Thus, any determination of Plaintiffs' claims, not to mention any requested injunction which may be considered, requires an interpretation of the thicket of FDA regulations that govern the marketing of prescription drugs.

        b.      **Federal Question Jurisdiction in this Case Is Thus Also Proper Based on the Existence of a Substantial Question of Federal Law Under the Food, Drug and Cosmetic Act**

    In its most recent pronouncement on the matter, *International College of Surgeons*, the Supreme Court affirmed the fundamental principle that federal jurisdiction may exist when federal questions "were raised by way of a cause of action created by state law." 522 U.S. at 164. In that case, the plaintiff sued the City of Chicago in state court under a state administrative review law after it was denied permits under local law to develop properties that had been accorded landmark status. Among plaintiff's claims were allegations that the city's actions were unconstitutional. Although the action was brought under state law, the Court, in upholding jurisdiction in a federal forum, found that the necessity of evaluating federal constitutional issues satisfied the court's jurisdictional requirements. Acknowledging that it "is long settled law that a

- 29 -

cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law," the Court pointed to *Franchise Tax Board* in explaining its duty to examine the complaint to determine whether a party's "right to relief under state law requires resolution of a substantial question of federal law." *Id.* at 164 (citations omitted). Unmistakably, therefore, a complaint alleging a state law claim may "arise under" federal law if a substantial federal issue is present in the case.[14]

Other courts have similarly adopted this line of precedent. For example, in *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 95-97 (2d Cir. 2001), the plaintiff, an independent floor broker, sued the New York Stock Exchange ("NYSE") in state court on a variety of state tort theories, alleging that the NYSE had intentionally provided him with incorrect interpretations of federal laws prohibiting unlawful trading in violation of NYSE's own obligations under federal law to ensure that its members comply with the securities laws. The case was removed to federal court and eventually dismissed. *See id.* On review, the Second Circuit determined that removal had been proper, because the "resolution of D'Alessio's claims requires a court to construe federal securities laws and evaluate the scope of the NYSE's duties, as defined under [federal law], in enforcing and monitoring members' compliance with those laws." *Id.* at 101-02. The Court held that "[t]he source of the duty imposed on the NYSE ... is found in federal law" *Id.* at 103. "Thus, it is the propriety of the NYSE's actions, as prescribed under federal law, that is at the heart of D'Alessio's allegations." *Id.*

---

[14] Recently, in *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003), the Supreme Court stated that "a state claim may be removed to federal court in only two circumstances – when Congress expressly so provides ... or when a federal statute wholly displaces the state law cause of action through complete preemption." *Anderson*, however, was discussing the conditions for removal that apply where the complaint does not itself refer to federal law and the defendant has removed in reliance on the well-pleaded complaint doctrine. *Anderson* did not discuss the applicability of its holding to cases, such as this one, where a substantial federal question is presented on the face of the filings in the case. Nor does it cite to, let alone reverse, *City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156 (1997).

- 30 -

In a companion case, *Frayler v. New York Stock Exchange, Inc.*, this Court noted that "the federal issue here is decisive because upon the federal statute's construction depends the vindication of rights and definition of relationship's at the heart of the lawsuit." 118 F. Supp. 2d 448, 450 (S.D.N.Y. 2000), (internal quotations omitted). In *Frayler*, the plaintiff brought an action against the stock exchange for violation of its duty under the Securities and Exchange Act of 1934. *See id.* at 449. An interpretation of the NYSE's duty, this Court found, required construction of federal law in order to establish the plaintiff's right to relief under state law. *See id.* at 450.

Like the allegations in *D'Alessio* and *Frayler*, Plaintiffs' allegations in this case "are rooted in violations of federal law." *D'Alessio*, 258 F.3d at 101. The core underlying premise of Plaintiffs' claims – that Defendants violated FDA regulations by marketing Neurontin for unapproved uses – is indistinguishable, for jurisdictional purposes, from D'Alessio's core claim that the Stock Exchange violated the federal securities laws. Here, as in *D'Alessio*, "it is the propriety of the [defendants'] actions, as prescribed under federal law, that is at the heart of [plaintiff's] allegations." *Id.* at 103. Further, as in *D'Alessio*, where the court found that it needed to construe federal securities laws in order to evaluate the scope of the NYSE's duties, *id.* at 101-02, Plaintiffs' Complaint requires that federal laws and regulations governing prescription drugs be interpreted to determine the content of the allegations.

Courts also consider the nature of the federal interest in making jurisdictional decisions. *See, e.g., Frayler*, 118 F. Supp. 2d at 451 (jurisdictional determination accompanied by finding that the regulation of the nation's securities markets were "a matter of intense federal concern"). As explained by the Fourth Circuit in *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (citing *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat) 304, 347-48 (1816)), the "need for

- 31 -

uniformity" with respect to a federal statutory regime "becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts" in circumstances "[w]here the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime." *See also Milan Exp. Co. v. Western Sur. Co.*, 886 F.2d 783, 787 (6th Cir. 1989) ("[P]laintiffs' claims... should not be subjected to the peculiarities of interpretation in fifty different state forums."). Additionally, in *Frayler* this Court pointed to *Merrell Dow* as "suggesting that 'our § 1331 decisions can be understood as an evaluation of the nature of the federal interest at stake'" before finding that "whether the [defendant in *Frayler*] properly interpreted § 11(a) of the Exchange Act is wholly a matter of federal law and, indeed, a matter of intense federal concern given the importance of federal regulation of the stock market." *Frayler*, 118 F. Supp. 2d at 450-51.

Moreover, it cannot be forgotten that Plaintiffs ask the Court to enjoin "the illegal activities alleged." Compl., Prayer for Relief. Given the extensive federal regulation of drug marketing, no such injunction can even be considered without deciding what federal law requires, what it permits and what it prohibits. Additionally, as in *Frayler*, the federal interest at issue here, namely the enforcement of the FDCA and the regulation of the prescription drug industry by the FDA, is "a matter of intense federal concern." 118 F. Supp. 2d at 451.

        c.    **Contrary to Plaintiffs' Argument, the Underlying Principles of**
                ***Franchise Tax Board* Continue to Apply to the Concept of**
                **Substantial Question of Federal Law**

In connection with the issue of a federal question under the FDCA, Plaintiffs also argue that the principles of *Franchise Tax Board* have been significantly reined in by the Supreme Court's holding in *Merrell Dow* by asserting that the lack of a private cause of action under a federal law strongly suggests that a substantial federal question does not exist. Plaintiffs' Brief at 11, 12. This argument is incorrect.

First, to read *Merrell Dow* with the formalism that Plaintiffs suggest is to fail to appreciate the circumstances of that case. In that case, the plaintiff relied on the violation of a federal guideline to establish a rebuttable presumption in connection with a common law negligence claim. *See Merrell Dow*, 478 U.S. at 806; *Smith v. Indus. Valley Title Ins. Co.*, 957 F.2d 90, 95 (3d Cir. 1992) (noting that *Merrell Dow* "did not overrule the Supreme Court's earlier decisions in *Smith* and *Franchise Tax Board* – both of which established more expansive standards for federal jurisdiction.") (Cowen, J., dissenting). Combined with the fact that the FDCA provided no private right of action, the peripheral nature of the federal issue was deemed too insubstantial to merit federal jurisdiction. *See Merrell Dow* at 814. But unlike *Merrell Dow*, the federal question here is not simply threshold because it serves a far more significant role than providing a mere presumption in connection with a negligence claim. Instead, Plaintiffs have asserted claims whereby a violation of the FDCA is, allegedly, an unfair consumer practice actionable under state law.

Second, contrary to Plaintiffs' contention, the absence of a private right of action does not bar federal jurisdiction under the substantial federal question doctrine. As the Supreme Court in *Merrell Dow* pointed out, federal jurisdiction is not subject to an automatic test, but rather demands practicality and necessity and a "common-sense accommodation of judgment to kaleidoscopic situations" when construing the jurisdictional statute. *See* 478 U.S. at 813 (citing *Franchise Tax Bd.*, 463 U.S. 1, and *Gully*, 299 U.S. at 117-18). Other courts have followed this guidance and found jurisdiction over state law claims that implicate a federal interest even where a private right of action is lacking. *See West 14th St. Comm. Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987) (holding that even without a private cause of action under federal law "we conclude that the federal element in plaintiffs' state cause of action would still

- 33 -

be sufficiently substantial to confer arising under jurisdiction"); *Marcus v. AT&T Corp.*, 138

F.3d 46, 55-56 (2d Cir. 1998) (approving denial of motion to remand where the plaintiffs' breach

of warranty claim under state law necessarily raised a substantial federal question, because

defendant's contractual obligations were set by a tariff filed with the Federal Communications

Commission); *Smith*, 957 F.2d at 96 (noting that too much weight is accorded the "rigid rule"

that a private right of action be a prerequisite of federal question jurisdiction and "too little

weight [is given] to other important federal interests which are necessarily implicated by federal

question jurisdiction.") (Cowen, J., dissenting).

Moreover, to the extent *Merrell Dow* can be read to require the existence of a private

right of action in order to determine whether a federal issue is substantial, one circuit court noted

that *Merrell Dow* "looked at substantiality with narrowed eyes." *West 14th St.*, 815 F.2d at 196.

In discussing *Merrell Dow*, that court found that the federal statute at issue was

> merely incorporated by reference as a standard of conduct in a state
> negligence action. Here the situation is quite different. In
> construing the [federal statute] in a state cause of action, the federal
> issue is decisive because upon that Act's construction the
> vindication of rights and definition of relationships created by
> federal law depends.

*Id.* (emphasis in original). Accordingly, "[i]n light of this qualitative difference" the federal

ingredient in *West 14th St.* was found to be sufficiently substantial despite the absence of a

private right of action. *Id.*; *but see Smith v. Indus. Valley Title Ins. Co.*, 957 F.2d 90 (3d Cir.

1992) (following *Merrell Dow* in remanding a case alleging state law claims but requiring

interpretation of federal tax code).

Other courts have similarly found federal question jurisdiction in the absence of a private

right of action. *See, e.g., Ormet Corp.*, 98 F.3d at 806-07 (concluding that the substantial federal

question doctrine applied where the plaintiff contended it was entitled to particular share of

emission allowances issued by the Environmental Protection Agency because it was an "owner" as the resolution of the dispute required an interpretation and application of the federal act to the facts of the action); *Milan Exp.*, 886 F.2d at 787 (distinguishing *Merrell Dow*); *Regents of Univ. of Minnesota v. Glaxo Wellcome, Inc.*, 58 F. Supp. 2d 1036, 1038 (D. Minn. 1999) ("[F]ederal courts have exclusive jurisdiction over state law causes of action in which a substantial question of federal … law is pleaded."); *see also U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917 (5th Cir. 2001); *Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997); *Drawhorn v. Quest Comm. Int'l, Inc.*, 121 F. Supp. 2d 554, 560 n.6 (E.D. Tex. 2000) ("In this case the defendants have not contended that there are any private rights of action under the various statutes that allegedly give the defendants rights in the plaintiffs' land. Instead, the defendants have argued that the state law claims all involve substantial federal issues. Thus, the reasoning that applied in *Merrell Dow* is not applicable here.").

In light of this case law, as well as the Supreme Court's own guidance in *Merrell Dow* that federal jurisdiction demands a flexible analysis, Plaintiffs' assertion that the lack of a private right of action in the FDCA precludes federal jurisdiction is mistaken. Furthermore, this is not a case where the federal question is simply threshold, preliminary or collateral to the resolution of state claims. The alleged scheme to promote Neurontin through continuing medical education seminars and for non-FDA approved uses revolves around federal regulations governing the promotion of prescription drugs. The question of whether Defendants' activities violated federal regulations and statutes governing off-label promotion of prescription drugs is not only crucial to Plaintiffs' claims under state law, but is the very essence of those claims. The centrality and substantiality of the federal FDCA question presented by Plaintiffs' claims demonstrates that this

Court has federal question jurisdiction. For this additional and independent reason, the Court should deny remand to state court.

## V.  CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court defer ruling pending the MDL transfer or, in the alternative, deny Plaintiffs' motion to remand this action to the Law Division of the Superior Court of New Jersey, Bergen County.

MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP

*Attorneys for Defendant Pfizer Inc.
and Warner Lambert)*

Dated: February 11, 2005                    By: _____s/RG Placey_____
                                                 John E. Caruso (JC-9283)
                                                 Richard G. Placey (RP-0285)
                                                 John W. Frazier, IV (admitted in PA only)

Of Counsel:

James P. Rouhandeh
Erick M. Zissu
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

- 36 -

1133729v3

**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**
(A LIMITED LIABILITY PARTNERSHIP FORMED IN PENNSYLVANIA)
BY: John E. Caruso (JC-9283) and Richard G. Placey (RP-0285)
457 HADDONFIELD ROAD, 6TH FLOOR
CHERRY HILL, NJ 08002
(856) 488-7700
ATTORNEYS FOR DEFENDANTS PFIZER INC. and WARNER-LAMBERT

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ASSURANT HEALTH, INC., a Wisconsin corporation, et al., | : : : | Civil Action No. 2:05-cv-0095 |
| Plaintiffs, | : : | Hon. Joel A. Pisano, U.S.D.J. Hon. Madeline C. Arleo, U.S.M.J. |
| v. | : : | Return Date: |
| PFIZER INC., a Delaware corporation, and its wholly-owned subsidiary WARNER-LAMBERT COMPANY, et al., | : : : : | **NOTICE OF CROSS MOTION TO DEFER RULING ON PLAINTIFFS'** |
| Defendants. | : : | **MOTION TO REMAND PENDING MDL TRANSFER** |

TO:    David J. Novack, Esquire
       Budd Larner
       150 JFK Parkway
       Short Hills, NJ 07078

   PLEASE TAKE NOTICE THAT on the same date that Plaintiffs move

before the Honorable Joel A. Pisano, U.S.D.J. of the United States District Court for the

District of New Jersey, at the Martin Luther King Federal Building & U.S. Courthouse,

50 Walnut Street, Newark, New Jersey 07101 for an Order remanding this matter to the

New Jersey Superior Court, Defendants Pfizer Inc. and Warner-Lambert Company shall

cross move to defer ruling on such motion to remand pending the MDL transfer.

Defendants' will rely on the attached Memorandum of Law of Defendants' Pfizer Inc. and Warner-Lambert Company in Opposition to Plaintiffs' Motion to Remand and in Support of Cross Motion to Defer Ruling on Remand Pending MDL Transfer and the Certification of Richard G. Placey, Esquire.   A proposed form of Order is also being submitted to the Court.

Date: 2-11-05

MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP

By: _____
    John E. Caruso
    Richard G. Placey

Of Counsel:

James P. Rouhandeh
James E. Murray
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**
(A LIMITED LIABILITY PARTNERSHIP FORMED IN PENNSYLVANIA)
BY: John E. Caruso (JC-9283) and Richard G. Placey (RP-0285)
457 HADDONFIELD ROAD, 6TH FLOOR
CHERRY HILL, NJ 08002
(856) 488-7700
ATTORNEYS FOR DEFENDANTS PFIZER INC. and WARNER-LAMBERT

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ASSURANT HEALTH, INC., et al. | : | Civil Action:  2:05-cv-0095 |
|  | : |  |
| Plaintiffs, | : | Hon. Joel A. Pisano, U.S.D.J. |
|  | : | Hon. Madeline C. Arleo, U.S.M.J. |
| v. | : |  |
|  | : |  |
| PFIZER INC., et al. | : |  |
| Defendants. | : | **CERTIFICATE OF SERVICE** |

I, Richard G. Placey, Esquire, hereby certify that, as agreed by counsel, on this date I caused a true and correct copy of (1) the Memorandum of Law of Defendants Pfizer Inc. and Warner-Lambert Company in Opposition to Plaintiffs' Motion to Remand and in Support of Cross Motion to Defer Ruling on Remand Pending MDL Transfer, (2) the Certification of Richard G. Placey, Esquire in Support of the Memorandum of Law of Defendants' Pfizer Inc. and Warner-Lambert Company in Opposition to Plaintiffs' Motion to Remand and in Support of Cross Motion to Defer Ruling on Remand Pending MDL Transfer, along with Exhibits, (3) proposed form of Order and (4) Notice of Cross-Motion to Defer Ruling on Remand Pending MDL Transfer to be served via Express Mail, overnight delivery, upon the following interested parties at the addresses listed below:

1136126v1

David J. Novack, Esquire
BUDD LARNER
150 JFK Parkway
Short Hills, NJ 07078

W. Scott Simmer, Esquire
Hardy Vieux, Esquire
ROBINS, KAPLAN, MILLER
& CIRESI, L.L.P.
1801 K Street, N.W., Suite 1200
Washington, D.C. 20006

Annamarie A. Daley, Esquire
Mark Ireland, Esquire
Sonya C. Seidl, Esquire
ROBINS, KAPLAN, MILLER
& CIRESI, L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

Paul Corcoran, Esquire
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Scott A. Edelman, Esquire
Hung Ta, Esquire
Milbank, Tweed, Hadley
   & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

John A. Boyle, Esquire
Marino & Associates, P.C.
One Newark Center
9th Floor
Newark, New Jersey 07102-5211

I also certify that on this same date, I caused to be served copies of those documents

(without exhibits) via e-mail to the following e-mail addresses:

Dnovack@budd-larner.com

RCampione@budd-larner.com

WSSimmer@rkmc.com

AADaley@rkmc.com

pcorcoran@dglaw.com

HTa@milbank.com

jboyle@khmarino.com

_____
s/ RGPlacey
Richard G. Placey

Dated:   February 11, 2005

1136126v1

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ASSURANT HEALTH, INC., et al. | : | Civil Action: 2:05-cv-0095 |
|  | : |  |
| Plaintiffs, | : | Hon. Joel A. Pisano, U.S.D.J. |
|  | : | Hon. Madeline C. Arleo, U.S.M.J. |
| v. | : |  |
|  | : |  |
| PFIZER INC., et al. | : |  |
| Defendants. | : |  |

## <u>ORDER</u>

This matter having come before the Court on Plaintiffs' Motion to Remand to the Superior Court of New Jersey, the Cross Motion to Defer Ruling on Remand Pending MDL Transfer, and the Court having considered the briefs and arguments of counsel, and for good cause shown:

IT IS ON THIS _____ day of _____, 2005, ORDERED that ruling on Plaintiff's Motion to Remand is deferred pending MDL transfer.

_____
Hon. Joel A. Pisano, U.S.D.J.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

ASSURANT HEALTH, INC., et al.,

             Plaintiffs,

v.

PFIZER, INC., et al.,

             Defendants.

Civil Action: 2:05-cv-0095

Hon. Joel A. Pisano, U.S.D.J.
Hon. Madeline C. Arleo, U.S.M.J.

**AFFIDAVIT OF RONALD J. CAMPIONE IN SUPPORT OF
PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO REMAND AND IN OPPOSITION TO DEFENDANTS' CROSS MOTION TO
DEFER RULING ON REMAND**

Ronald J. Campione, being duly sworn on oath, states as follows:

1.      I am an attorney at the law firm of BUDD LARNER, and counsel for Plaintiffs in the above-captioned matter. I submit this Affidavit to identify the exhibits cited and relied upon in connection with Plaintiffs' Motion to Remand and Opposition to Defendants' Cross-Motion to Defer Ruling on Remand.

2.      Attached as Exhibit A is a true and correct copy of Defendants' January 11, 2005 letter to the JMPL listing *Assurant Health Inc., et al. v. Pfizer Inc. et. al.,* as a potential tag along action in MDL 1629.

3.      Attached as Exhibit B is a true and correct copy of Defendants' January 5, 2005 letter to the court administrator regarding removal papers.

4.      Attached as Exhibit C is a true and correct copy of Defendants' Substitution of Counsel, dated February 11, 2005.

Word 20124115.1

5.      Attached as Exhibit D is a true and correct copy of the October 26, 2004 Transfer Order by the Judicial Panel on Multidistrict Litigation ("JPML") regarding *In re Neurontin Marketing and Sales Practices Litigation*.

6.      Attached as Exhibit E is a true and correct copy of the JPML's February 8, 2005 to involved counsel regarding MDL-1629 *In re Neurontin Marketing and Sales Practices Litigation* with accompanying Conditional Transfer Order (CTO-3) listing *Assurant Health, Inc., et al. v. Pfizer, Inc., et al.* as a tag-along action.

7.      Attached as Exhibit F is a true and correct copy of the Memorandum and Order granting Plaintiff's motion to remand in *Clark v. Pfizer, Inc.* (E.D. Penn), with Defendants' Opposition brief.

8.      Attached as Exhibit G is a true and correct copy of the Memorandum and Order granting Plaintiff's motion to remand in *Pierson v. Pfizer, Inc.* (S.D. Ill.).

9.      Attached as Exhibit H is a true and correct copy of the Memorandum opinion and order granting plaintiff's motion to remand in *Rubel v. Pfizer, Inc., et al.* (N.D. Ill.), with Defendants' Opposition brief.

10.     Attached as Exhibit I is a true and correct copy of the Order by the United States Court of Appeals for the Seventh Circuit dismissing Defendants' appeal for want of jurisdiction in *Rubel v. Pfizer, Inc., et al.* (N.D. Ill.).

11.     Attached as Exhibit J is a true and correct copy of the October 21, 2004 letter from the United States District Court for the Southern District of Illinois enclosing the Minute Entry remanding *Burgess v. Pfizer, Inc. et al.*, Civ. No. 04-cv-00479 (GPM) (S.D. Ill.) to state court in Madison County, with Defendants' Opposition brief.

2

12.    Attached as Exhibit K is a true and correct copy of Defendants' Consolidated Response to Pending Motions to Transfer and Defendants' Cross-Motion to Transfer Pursuant to 28 U.S.C. § 1407, MDL Docket No. 1629, dated July 12, 2004.

13.    Attached as Exhibit L is a true and correct copy of *Anthem, Inc., et al. v. Bristol-Myers Squibb Company, et al.*, 2003 U.S. Dist. LEXIS 15762 (D.N.J. March 17, 2003).

14.    Attached as Exhibit M is a true and correct copy of *Vassilatos, et al. v. Del Monte Fresh Produce Co., et al.*, 2004 U.S. Dist. LEXIS 22123 (S.D. Fla. July 23, 2004).

15.    Attached as Exhibit N is a true and correct copy of *Villarreal, et al., v. Chrysler Corp.*, 1996 U.S. Dist. LEXIS 3159 (N.D. Cal. March 11, 1996).

Dated:  February 25, 2005.

Ronald J. Campione

Subscribed and sworn to before me
this 25th day of February, 2005.

Notary Public

**ROSEMARY A. BONOCORE**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires March 8, 2009**

3