# EXHIBIT G

Westlaw.

Not Reported in F.Supp.2d                                                                      Page 1
2001 WL 950790 (D.Kan.)
**(Cite as: 2001 WL 950790 (D.Kan.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Kansas.

Charles E. McGREW, on behalf of himself and all
others similarly situated,
Plaintiff,
v.
SCHERING-PLOUGH CORPORATION, et al.,
Defendants.

No. CIV.A. 01-2311-GTV.

Aug. 6, 2001.

MEMORANDUM AND ORDER

VANBEBBER, Senior District Judge.

**\*1** This case is before the court on Plaintiff's Motion
to Remand (Doc. 3) and Defendants' Motion For a
Stay Pending Action by the Judicial Panel on
Multidistrict Litigation (Doc. 9). Plaintiff filed this
action in the District Court of Johnson County,
Kansas on May 21, 2001 alleging violation of Kansas
antitrust laws. Defendants removed the case to
federal court on June 22, 2001. Plaintiff contends that
such removal was improper, because the court lacks
subject matter jurisdiction. The court agrees, and
remands the case to the District Court of Johnson
County, Kansas. In conjunction, the court denies
defendants' motion for a stay.

I. Factual Background

Plaintiff alleges the following in his complaint:

Defendant Schering-Plough Corporation ("Schering-
Plough") is the manufacturer and patent holder of a
brand-name prescription drug referred to as K-Dur
20. Schering-Plough's patent on K-Dur 20 is
scheduled to expire on September 5, 2006. Pursuant
to the Federal Food, Drug and Cosmetic Act, 21
U.S.C. § 301 et seq., a company wishing to market
or sell a prescription drug in the United States must
first obtain approval from the Food and Drug

Administration ("FDA"). Schering-Plough has
obtained approval for K-Dur 20, and markets and
sells the drug in the United States.

Manufacturers often create generic drugs that are
bioequivalent to brand name drugs. To market or sell
these generic drugs in the United States, the
manufacturers must obtain approval from the FDA.
The Hatch-Waxman Act, 21 U.S.C. § 355, governs
the approval process. Pursuant to the Act, a
manufacturer seeking approval of a generic drug
must file an Abbreviated New Drug Application
("ANDA"). In the application, the manufacturer must
reference the relevant brand name drug, and
demonstrate that its generic drug is bioequivalent to
the brand name drug. If the brand name drug is
protected by a patent, the manufacturer must also
certify that the brand name drug's patent is invalid or
that the generic drug does not infringe upon the brand
name drug's patent. This certification is commonly
referred to as "Paragraph IV certification." Once the
manufacturer certifies under Paragraph IV, he must
notify the brand name drug patent holder.

The brand name drug patent holder then has forty-
five days to file a patent infringement suit against the
manufacturer. If he elects to do so, the FDA will stay
final approval of the generic drug until the earliest of
three events: (1) the brand name drug patent expires;
(2) thirty months pass from the time the brand name
drug patent holder is notified of the manufacturer's
ANDA with Paragraph IV certification; or (3) a final
judicial determination is made that the brand name
drug patent is invalid or not infringed. If the
manufacturer is the first to file an ANDA with
Paragraph IV certification, he will be entitled to a
180-day period of exclusivity: the FDA will refrain
from approving any other generic version of the
brand name drug until 180 days after either: (1) the
original ANDA filer begins marketing its generic
drug, or (2) a final judicial determination is made that
the brand name drug patent is invalid or not
infringed.

**\*2** On August 6, 1995, defendant Upsher-Smith filed
an ANDA seeking approval to market Klor Con M20,
a generic version of Schering-Plough's K-Dur 20.
Upsher-Smith was the first to file an ANDA
regarding K-Dur 20. Because K-Dur 20 was
protected by a patent, Upsher-Smith included
Paragraph IV certification. Upsher-Smith notified

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 950790 (D.Kan.)
(Cite as: 2001 WL 950790 (D.Kan.))

Schering-Plough of its ANDA on November 3, 1995. On December 15, 1995, Schering-Plough filed suit against Upsher-Smith for patent infringement.

In accordance with the Hatch-Waxman Act, the FDA stayed final approval of Klor Con M20 awaiting any one of the following: (1) the expiration of Schering-Plough's patent on K-Dur 20 (September 5, 2006); (2) the passing of thirty months from November 3, 1995--the date on which Upsher-Smith notified Schering-Plough of its ANDA; or (3) a final judicial determination that the K-Dur 20 patent is invalid or not infringed upon by Klor Con M20. In addition, because Upsher-Smith was the first to file an ANDA with Paragraph IV certification, the FDA stayed final approval of all other generic versions of K-Dur 20 until either: (1) 180 days pass from the time Upsher-Smith begins marketing Klor Con M20, or (2) a final judicial determination is made that the K-Dur 20 patent is invalid or not infringed upon by Klor Con M20.

Upsher-Smith strongly contested the patent infringement suit. On the eve of trial, however, Upsher-Smith entered into a settlement agreement with Schering-Plough. The agreement provided, inter alia, that Schering-Plough would pay Upsher-Smith $60 million, and Upsher-Smith would refrain from marketing Klor Con M20 or any other generic version of K-Dur 20 until September of 2001.

The FDA approved the marketing of Klor Con M20 in November of 1998. Pursuant to its agreement with Schering-Plough, however, Upsher-Smith has neither marketed Klor Con M20 nor attempted to develop another generic version of K-Dur 20. As a result, because of Upsher-Smith's right to 180 days of exclusivity, no manufacturer has been able to obtain approval from the FDA to market a generic version of K-Dur 20. It is likely that no manufacturer will obtain such approval until approximately March of 2002: If Upsher-Smith continues to adhere to its agreement with Schering-Plough, it will refrain from marketing Klor Con M20 until September of 2001. Supposing it then begins to market the drug, the earliest time at which a manufacturer will be able to obtain approval is 180 days thereafter--March of 2002. [FN1]

FN1. Because Schering-Plough and Upsher-Smith settled their lawsuit prior to trial, no final judicial determination can be made that the K-Dur 20 patent is invalid or not infringed upon by Klor Con M20.

On December 29, 1995, defendant ESI Lederle, Inc. ("ESI") filed an ANDA seeking approval to market a generic version of K-Dur 20. ESI included Paragraph IV certification and notified Schering-Plough of its filing. Thereafter, Schering-Plough filed suit against ESI for patent infringement. In 1998, the parties entered into an agreement whereby Schering-Plough agreed to pay ESI up to $30 million, and ESI and defendant American Home Products Corporation ("AHP"), an affiliate of ESI, agreed to refrain from marketing a generic version of K-Dur 20 until January of 2004, refrain from marketing more than one generic version of K-Dur 20 between January of 2004 and September of 2006, and refrain from conducting or supporting a study of the bioequivalence of any product to K-Dur 20 prior to September of 2006.

II. Discussion

A. Defendants' Motion to Stay

**\*3** On May 23, 2001, Schering-Plough filed a motion with the Judicial Panel on Multidistrict Litigation ("MDL") requesting that this case be transferred to the United States District Court for the District of New Jersey. Defendants contend that this court should stay all proceedings in this case, including any ruling on plaintiff's motion to remand, until the MDL decides whether to grant the motion to transfer.

The court discerns no reason to stay the proceedings in this case, nor to delay ruling on plaintiff's motion for remand. According to Panel Rule 1.5, the court retains jurisdiction to conduct all pretrial proceedings despite Schering-Plough's pending motion to transfer. See Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Rule 1.5. The court adopts the reasoning of Judge Vratil as stated in *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft:*

For purposes of judicial economy, the jurisdictional issue should be resolved immediately. If federal jurisdiction does not exist, the case can be remanded before federal resources are further expended.... [J]udicial economy dictates a present ruling on the remand issue.

54 F.Supp.2d 1042, 1048 (D.Kan.1999) (citing generally *Tortola Restaurants, L.P. v. Kimberly-Clark Corp., 987 F.Supp. 1186, 1188 (N.D.Cal.1997)).* Accordingly, the court denies defendants' motion to stay.

B. Plaintiff's Motion for Remand

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 950790 (D.Kan.)
(Cite as: 2001 WL 950790 (D.Kan.))

Page 3

A state court action may be removed to federal court if the plaintiff could have brought the action in federal court originally. See 28 U.S.C. § 1441(a). The court is required to remand an action to the state court from which it came "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The defendant has the burden of demonstrating that the court has jurisdiction. See _McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)._

"Absent diversity of citizenship, federal[ ]question jurisdiction is required." _Caterpillar Inc. v. Williams, 482 U .S. 386, 392 (1987)_ (citing 28 U.S.C. § 1331). Federal question jurisdiction exists where the action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Defendants contend that federal question jurisdiction exists in this case because plaintiff's claims require the court to "interpret substantial questions of federal law, including specifically the validity of [Schering-Plough's] patent and whether it was infringed, and whether any of the [d]efendants enjoys marketing exclusivity under the federal Hatch-Waxman Act." (Defendants' Memorandum in Opposition to Plaintiff's Motion to Remand at 4.) The court disagrees.

Plaintiff alleges in his complaint that defendants violated Kansas antitrust laws by conspiring:

(a) to prevent market entry of products that would compete against K-Dur 20; (b) to increase and/or maintain the price of K-Dur 20 in Kansas; (c) to create and carry out unreasonable restrictions on the free flow of the trade and commerce in Kansas ...; and (d) to prevent or restrain competition in the sale of K-Dur 20 in Kansas.

*4 (Plaintiff's Complaint at ¶ ¶ 80-81.) Plaintiff's claims do not require the court to determine whether Schering-Plough's patent on K-Dur 20 is valid, and if so, whether Upsher-Smith and/or ESI infringed upon Schering-Plough's patent. Instead, plaintiff's claims require the court to determine whether defendants entered into one or more conspiracies with the intent to prevent or restrain competition of the sale of K-Dur 20 in Kansas. To the extent patent law is discussed, it is "merely tangential to [plaintiff's] claim that [defendants] had an ill motive which resulted in [state law violations]." _Aetna U.S. Healthcare, Inc., 54 F.Supp.2d at 1054._ "While federal law may be implicated in an examination of [defendants'] motives, it is hardly a substantial or necessary part of plaintiff's claim[s]." _Id._ (citing _Gaines-Tabb v. Mid-Kansas Co-op. Assn, 980_

_F.Supp. 1424, 1428 (D.Kan.1997))._

Similarly, plaintiff's claims do not require the court to interpret the Hatch-Waxman Act. Plaintiff's claims do not seek a determination that defendants violated the Hatch-Waxman Act. Plaintiff's claims seek a determination that defendants agreed to prevent or restrain competition of the sale of K-Dur 20 in Kansas. As with patent law, any discussion of the Hatch-Waxman Act is merely tangential to plaintiff's claims. "[W]hile consideration of the agreement will reference defendants' rights under the [Hatch-Waxman Act], it will not require an interpretation or application of the [Hatch-Waxman Act]." _Id._ at 1055.

Defendants contend in the alternative that federal jurisdiction exists because plaintiff's claims "seek to undermine the settlement and dismissal of [defendants'] federal patent litigations." (Defendants' Memorandum in Opposition to Plaintiff's Motion to Remand at 4.) The court does not agree.

Plaintiff's claims do not seek to undermine or set aside the settlement agreements that were entered into in connection with defendants' federal patent litigations. To the extent the settlement agreements are involved, they simply "form part of the factual basis of [p]laintiff's claims"; they simply explain the circumstances under which defendants allegedly conspired to prevent or restrain competition of the sale of K-Dur 20 in Kansas. (Plaintiff's Memorandum in Support of Motion to Remand at 9.)

The court determines that it lacks subject matter jurisdiction over this case and thus the case should be remanded to the state court from which it came.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for remand (Doc. 3) is granted; the case is remanded to the District Court of Johnson County, Kansas.

IT IS FURTHER BY THE COURT ORDERED that defendants' motion to stay (Doc. 9) is denied.

The clerk is directed to take such steps as are necessary to remand the case to the District Court of Johnson County, Kansas.

The clerk is also directed to transmit copies of this order to counsel of record for the parties.

*5 IT IS SO ORDERED.

2001 WL 950790 (D.Kan.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                           Page 4
2001 WL 950790 (D.Kan.)
(Cite as: 2001 WL 950790 (D.Kan.))


**Motions, Pleadings and Filings <u>(Back to top)</u>**
  •          <u>2:01CV02311              </u>(Docket)
(Jun. 22, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

CASE NO. 99-MDL-1317-SEITZ/GARBER

FILED by _H2O_ D.C.

AUG 2 8 2000

CLARENCE MADDOX
CLER.. U.S. DIST. .CT.
S.D. OF FLA. · MIAMI

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

This Order Pertains to:

Case No. 00-631-CV-SEITZ/GARBER
(E.D.N.Y. Case No. 99-cv-5783)

DRUG MART PHARMACY CORP.,

Plaintiff,

vs.

ABBOTT LABORATORIES, *et al.,*

Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

Plaintiff brings this Motion to Remand[1] seeking remand to Kings County Supreme Court in

New York pursuant to 28 U.S.C. § 1447(c). Specifically, Plaintiff contends that this case, which on ·

its face alleges only state law claims, was improperly removed to federal court upon Defendants'

contention that the case raised substantial questions of federal patent law. After a review of the

papers and supplemental briefs the parties filed and consideration of the oral argument of counsel,

the Court finds that this case should be remanded to state court in New York because it does not arise

_____

[1]     This Motion is Docket Entry #10 on the E.D.N.Y. docket sheet. This case was
transferred to this district after the motion was filed, and thus the Motion is not listed on this
Court's docket.

under federal patent law.  Accordingly, for the reasons set forth in detail below, the Motion for Remand will be granted.

## I. Procedural and Factual Background

This case, which was transferred to this Court pursuant to the Order of the Multi-District Litigation Panel, is one of many in which various plaintiffs are suing Defendants Abbott Laboratories ("Abbott"), Geneva Pharmaceuticals ("Geneva") and Zenith Goldline Pharmaceuticals ("Zenith") for their alleged involvement in an anticompetitive conspiracy to delay the entry and sale of a generic form of the branded drug, Hytrin.[2]  Physicians commonly prescribe Hytrin to treat hypertension and an enlarged prostate.  Plaintiff brings this particular action on behalf of indirect consumers of Hytrin who are located in New York and who purchased Hytrin from 1996 to present. Specifically, Plaintiff claims that the Defendants colluded to extend the exclusive life of Hytrin to the financial detriment of consumers.  On the face of the complaint, the claims are limited to allegations of violations under New York's antitrust and consumer protection laws ("the Donnelly Act").  Although other plaintiffs in this multi-district litigation are suing under the Sherman Act, these indirect purchasers, even if they so desired, could not bring a federal action because they lack standing. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Nevertheless, Defendants maintain that this action is properly in federal court because Plaintiff's claims necessarily rely upon the resolution of substantial federal questions of patent law.

In its complaint, Plaintiff alleges that the Defendants engaged in two different types of improper and illegal conduct.  First, Defendants allegedly pursued baseless patent litigation and abused the federal regulatory process in order to slow the entry into the pharmaceutical marketplace

---

[2]    "Hytrin" is a registered trademark of Abbott.

2

of a generic and less expensive version of Hytrin that Zenith and Geneva had developed. Second, in 1998, the Defendants entered into allegedly illegal agreements whereby Abbott, the owner of the Hytrin patent, paid Zenith and Geneva millions of dollars either not to market or to delay the introduction of their generic versions of Hytrin. Consequently, Plaintiff contends that the potential class of consumers represented in this litigation expended millions of dollars to purchase Hytrin, when a less expensive generic version could have been available for purchase but for the sham litigation and the illegal arrangement among the Defendants.

## II. Analysis

Under federal law, removal of a civil action is permitted when "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1338, "[t]he district courts shall have original jurisdiction of any civil action arising under any act of Congress relating to patents. . . ." 28 U.S.C. § 1338(a). Accordingly, Defendants removed this action to federal court alleging that it was in essence a federal patent case. Plaintiff has now moved to remand.

In deciding Plaintiff's motion to remand, the Court is guided by the well-pleaded complaint rule which provides that the properly pleaded complaint governs its jurisdictional considerations. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908). It is a long-standing principle that plaintiffs are the master of their complaint and may decide which claims to pursue and on which law to rely. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391 (1987). Moreover, a plaintiff may avoid federal jurisdiction by exclusively relying upon state law. *Id.* at 391 & n.7. There is an exception, however, to the well-pleaded complaint rule. The "artful pleading" doctrine permits removal of a state law claim where a plaintiff has artfully pled its claim in order to avoid federal jurisdiction where the complaint is necessarily based upon federal law. *Waste Control Specialists, LLC v. Envirocare of Tex., Inc.*, 199 F.3d 781, 784 (5th Cir. 2000).

3

Although a plaintiff cannot avoid federal jurisdiction where a federal claim is necessary to the complaint, a defense that raises a federal question is inadequate to invoke federal question jurisdiction. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (holding that determination regarding whether claim arises under patent law must be determined from plaintiff's statement of complaint "unaided by anything alleged in anticipation or avoidance of any defenses which it is thought defendant may interpose"). In addition, the Court is aware that removal jurisdiction is narrowly construed and "any doubts regarding the existence of federal jurisdiction [are resolved] in favor of the non-removing party." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). The court's scrutiny of claims must be thorough, and the court "must ascertain whether all of the theories by which the plaintiff could prevail on a claim rely solely on resolving a substantial question of federal patent law." *Hunter Douglas, Inc. v. Harmonics Design, Inc.*, 153 F.3d 1318, 1329 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 1143 (1999) (emphasis added). Finally, the Court must deny jurisdiction in all cases where it does not affirmatively appear in the record. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982). With these general principles in mind, the Court addresses whether this case should be remanded to state court.

A. Federal Question Jurisdiction Exists Where The Case "Arises Under" Federal Law.

While a case generally arises under federal law only if it is the federal law that creates that cause of action, *see Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983), it may also arise where the "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Id.* at 9. Defendants contend that this case raises substantial questions of federal law under the patent laws and the federal statutes and regulations relating to pharmaceutical drugs. In particular, Defendants point to the fact that Plaintiff's claims are based on

4

their allegations that Defendants engaged in baseless patent litigation in federal court in order to slow the entry of a generic drug to the market. Defendants argue that in order for a court to evaluate that claim, it will necessarily have to delve into the merits and substance of the underlying patent litigation. Moreover, they assert that those actions are the only ones which serve as a basis for the damages sought on behalf of purchasers between 1996 and 1998, when the Defendants signed the allegedly illegal agreements. Accordingly, Defendants maintain that because Plaintiff's sham litigation theory is necessary to the recovery of damages for a certain timeframe alleged or for certain members of the putative class[3] to collect damages, federal jurisdiction exists.

In analyzing these arguments, the Court must keep in mind the Supreme Court's seminal opinion in *Gully v. First National Bank*, 299 U.S. 109 (1936), which provided that the federal element in the claim must be "basic" as opposed to "collateral," and "necessary" as opposed to "merely possible." *Id.* at 118. In essence, the Court must determine whether the federal element is pivotal and substantial as opposed to incidental, and the question must be direct and essential and not attenuated or collateral to the case being determined. *Id.* Moreover, not every action that involves a patent issue is subject to federal jurisdiction. For example, an action based on a contract which involves issues of patent law does not "arise under" patent law. *Beghin-Say Int'l v. Ole-Bendt Rasmussen*, 733 F.2d 1568, 1571 (Fed. Cir. 1984). On the other hand, where the relief requested necessarily depends upon the resolution of a substantial federal question such as inventorship of a patent, then the federal court will have jurisdiction. *See MCV, Inc. v. King-Seeley Thermos, Co.*, 870 F.2d 1568, 1571 (Fed. Cir. 1989); *see also RustEvader Corp. v. Cowatch*, 842 F. Supp. 171 (W.D.

---

[3]      The Court assumes that there are members of the putative class who purchased Hytrin in 1996 or 1997, but did not use it thereafter, and thus would be limited to damages for the pre-Agreement time period.

Pa. 1993) (denying motion to remand where action necessarily presented federal question of patent ownership).

In 1988, the Supreme Court addressed whether patent-related issues in an antitrust case were sufficient for the Federal Circuit[4] rather than the Seventh Circuit to have appellate jurisdiction. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988).[5] The Supreme Court held that in order for a court to have jurisdiction under 28 U.S.C. § 1338, a federal patent law must create the cause of action, or the plaintiff's right to relief must require the resolution of a substantial question of patent law, and patent law must be a necessary element of one of the well-pleaded claims. "If on the face of the well pleaded complaint, there are . . . reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks, then the claim does not arise under those laws." *Id.* at 810. Merely because <u>an element</u> of a particular <u>theory</u> is governed by patent law does not mean that the entire <u>claim</u> arises under patent law. *Id.* at 811.[6] As will be discussed in the following sections, one element of Plaintiff's theory of unfair competition is that Defendants engaged in sham litigation, but that element is not necessary for them to prevail on their claim under the Donnelly Act.[7] For the reasons discussed below, the

_____

[4]    The Federal Circuit has appellate jurisdiction over all patent litigation. *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1573 (Fed. Cir. 1984).

[5]    Although *Christianson* dealt with the issue of appellate jurisdiction in a patent case, the holding of that case is applicable here where the Court must determine if the patent law issue is necessary to this case. Indeed, the Supreme Court explicitly stated that its rationale was equally applicable to determining "arising under" jurisdiction under § 1331. *Id.* at 809.

[6]    Oddly, Defendants take the position that *Christianson* is not applicable because it deals with a peculiar jurisdictional issue which Defendants contend is wholly unrelated to this case. At the same time, however, Defendants argue that Federal Circuit precedent is controlling in this case presumably for the reasons outlined in the *Christianson* case.

[7]    For example, if Plaintiff can prove that the 1998 Agreements were illegal restraints of trade, it will prevail on its claim regardless of how the Court rules on its sham

Court finds that the underlying patent issues are tangential and not pivotal to the claims Plaintiff alleged.

        **1.**      **Plaintiff May Prevail on Its Claims Regardless of How The Court Rules On Its Sham Litigation Theory.**

Plaintiff argues that even if the Court were to ignore its theory that Defendants engaged in frivolous patent litigation, it has an alternative theory that the agreements between the Defendants themselves are a violation of the New York statute.[8] These agreements, it alleges, were entered into in order to prevent Zenith and Geneva from competing with Abbott. It contends that if it can prove those allegations, it does not matter whether the patent litigation was baseless or whether Abbott's patents were valid or not.

Numerous federal courts have addressed the issue of whether a state law claim that relates to underlying federal litigation is within the jurisdiction of the federal court and have found no jurisdiction. One such case is *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F. Supp. 2d 1042 (D. Kan. 1999) (hereinafter "*Aetna*"). In *Aetna*, plaintiff sued defendants alleging unfair competition under Kansas state law. Defendants removed and plaintiff moved for remand. As in this case, plaintiff was not seeking to litigate the validity of the patents; rather, it, like Plaintiff here, brought the litigation in part because it believed that defendants had instigated patent litigation for the sole purpose of delaying and preventing free competition. *Id.* at 1053. In granting the motion to remand, the court held:

---

litigation theory.

      [8]     Moreover, Plaintiff's claim of sham litigation is more focused on the motives of the parties than the validity of the patents themselves. Nevertheless, even assuming the Court would have to make a preliminary determination of the patents' validity, such a determination only relates to one theory supporting Plaintiff's claim.

Plaintiffs' claims do not depend on whether the HMR patents are valid; they allege only that HMR had an impure heart when it filed suit. Moreover, regardless of whether the HMR patent is valid, plaintiff alleged that defendants committed other acts of unfair competition – such as the stipulation agreement. Any discussion of patent law is merely tangential to plaintiffs' claim that HMR had an ill motive which resulted in unfair competition. While federal law may be implicated in an examination of HMR's motives, it is hardly a substantial or necessary part of plaintiffs' claim.

*Id.* at 1053-54 (emphasis added); *see also In Re Cardizem CD Antitrust Litigation*, 90 F. Supp. 2d

819, 837 (E.D. Mich. 1999) (holding that interpretation of the Hatch-Waxman Act, an FTC Consent

Order, and patent law including application of the Noerr-Pennington doctrine did not establish a

substantial question of federal law that was a necessary element of one of the plaintiffs' well-pleaded

claims).[9]

Likewise in this instance, Plaintiff has alleged that "each of nine patent infringement actions

brought by Abbott against its generic competitors has been objectively baseless in the sense that no

reasonable litigant could have realistically expected success on the merits. Each action has lacked

probable cause. Each action has been sham." (Complaint ¶ 61). In addition or in the alternative,

however, Plaintiff alleges that Abbott entered into illegal agreements with Zenith and Geneva in

which Abbott agreed to pay millions of dollars in exchange for their delaying the entry of their

generic versions of Hytrin. (Complaint ¶ ¶ 65, 66). Accordingly, like the plaintiffs in *Aetna,*

---

[9]    The *Cardizem* case is also analogous in that the plaintiff alleged similar conduct in the context of a generic drug's delayed entry into the market. Defendants, however, attempt to distinguish the case by relying upon the definition of the class and the timeframe for which Plaintiff seeks damages. While the *Cardizem* court addressed the tangential nature of the patent litigation head-on, Defendants maintain that that discussion was not necessary to the decision and that the *Cardizem* case is not applicable because here, the plaintiff's potential class includes people seeking damages solely based upon the frivolous litigation. For the reasons set forth in more detail *infra*, the Court does not find that distinction to be significant or persuasive because at least certain potential Plaintiffs' claims may succeed regardless of the viability of their sham patent litigation theory.

Plaintiff is not solely relying upon its sham litigation theory. While the patent issues are tangentially related to this litigation, they are not essential to the claim and thus do not support the Court's jurisdiction.[10]  *See Aetna*, 54 F. Supp. 2d at 1053-54.

Likewise, the case that Defendants rely upon heavily, *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1329 (Fed. Cir. 1998), also supports this conclusion. In *Hunter Douglas*, plaintiffs brought a state law claim alleging injurious falsehood. The only falsehood alleged in the complaint was that the defendants asserted that they held the exclusive rights to make or sell shades under certain patents. *Id.* at 1329. The court specifically stated that "all of the theories upon which Hunter Douglas could prevail depend on resolving a question of federal patent law, because Hunter Douglas does not plead, in its complaint, any other basis for the falsity on the defendants' part." *Id.* (citing *Christianson*, 486 U.S. at 813 (concluding that "the appearance on the complaint's face of an alterative, non-patent theory compels the conclusion that the ... claim does not "arise under" patent law")).  Presumably then, given its emphasis on the fact that plaintiff had a single theory, the Hunter Douglas court would not have entertained jurisdiction over the injurious falsehood claim if plaintiff has plead both a patent-based falsehood and an unrelated falsehood.

Accordingly, in this case, Plaintiff has alleged at least two theories under which it could recover under Section 340 of the New York State General Business Law, also known as the Donnelly Act. The Donnelly Act makes any alleged contract, agreement or arrangement that restrains or unduly interferes with the free exercise of any activity in the conduct of any business

---

[10]    Even if the sham litigation were a necessary part of Plaintiff's claim, it is not clear that there would be federal jurisdiction.  *See Berg v. Leason*, 32 F.3d 422, 423 (9th Cir. 1994) (reversing lower court's decision finding jurisdiction in state law malicious prosecution claim relating to prior RICO and federal securities law complaint because the federal element was "insufficiently substantial").

illegal. N.Y. Gen'l Bus. Law § 340; *see also Great Atl. &'Pac. Tea Co. v. Town of East Hampton,*
997 F. Supp. 340, 352 (E.D.N.Y. 1998). In order to state a claim under the Donnelly Act, Plaintiff
must: (1) identify the relevant market; (2) describe the nature and effects of the purported
conspiracy; (3) allege the economic impact of the restraint on trade; and (4) show a conspiracy
between two or more entities. *Id.* (citing *Creative Trading Co. v. Larkin-Pluznick-Larkin,* 523
N.Y.S. 2d 102, 103 (N.Y.A.D. 1 Dept. 1988)). In this case, Plaintiff has two alterative, but not
mutually exclusive, theories to support its claim under the second prong of the test. Specifically, it
alleges that Defendants entered into illegal agreements to restrain trade. In the alternative or in
addition, it alleges that Defendants engaged in sham patent litigation. Because the face of the
Complaint alleges an alternative non-patent theory, the claim does not arise under patent law, and
the Court consequently does not have jurisdiction. *See Christianson,* 486 U.S. at 813.

> **2. Federal Question Jurisdiction Depends Upon the Claims Asserted Not on The Relief Sought.**

In order to prevail on this Motion, Defendants attempt to shift the focus from the claims that
Plaintiff asserts to the relief or remedies that Plaintiff seeks. Defendants argue that this case is
unique in that Plaintiff has defined the putative class as "all persons or entities present in the State
of New York who indirectly purchased Hytrin manufactured by Abbott from 1996 to present."
(Complaint ¶ 17). The factual allegations of the Complaint reveal that the only basis for recovery
from 1996 until March 1998 is the allegedly baseless and frivolous prosecution of patent litigation.
Presumably then, certain potential Plaintiffs cannot recover damages for that time period without
the Court's favorably resolving the question of whether the patent litigation was frivolous, which
in turn requires the Court to construe patent law. Yet, Defendants fail to cite any case in support of

this unique jurisdictional analysis. Instead, Defendants rely heavily upon *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318.

The *Hunter Douglas* court, relying upon *Christianson*, looked to the plaintiffs' <u>claims</u> in order to determine if the case required the resolution of a substantial question of patent law. In finding that it had jurisdiction, the court noted that the claim relied <u>solely</u> upon federal patent law because there were no non-patent allegations regarding the claim in plaintiff's complaint. *Id.* at 1329. *Hunter Douglas* does not support Defendants' position in this case because the Court need not determine the validity or enforceability of the patents in order for at least some plaintiffs to obtain some relief as the claims are alleged in the complaint. Contrary to Defendants' proposed jurisdictional analysis, this Court has focused on Plaintiff's claims rather than the relief it seeks and finds that there is no substantial federal question.

B.    Plaintiff's References to the Hatch-Waxman Amendments and the Abuse of the Federal Regulatory Process Do Not Support Federal Jurisdiction.

Defendants claim that Plaintiff's allegations regarding Defendants' abuse of the regulatory process governing the approval of generic drugs also support federal jurisdiction. The Hatch-Waxman Amendments to the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, govern the FDA approval of generic drugs. After discussing the regulatory process in great detail in its Complaint, Plaintiff attempts to show that Defendants abused the regulatory process for anti-competitive purposes. The *Aetna* court addressed this identical issue and found that issues related to the purported abuse of the regulatory scheme were insufficient to establish federal jurisdiction. *Aetna*, 54 F. Supp. 2d at 1055. Specifically, the court noted that although plaintiffs alleged that the regulatory system had been abused by the defendants, in order to prevail on their claim, they only needed to show unfair competition. *Id.* While their proof might include a showing of abuse of the

11

federal regulatory scheme, that was insufficient to confer federal question jurisdiction. *Id.* Likewise, Plaintiff in this case may, but need not, offer proof of abuse of the regulatory process in order to prevail on its state law claims.

## C.    The Noerr-Pennington Defense Is Insufficient To Establish Federal Jurisdiction.

Defendants assert that Noerr-Pennington immunity will insulate them from liability in this case, and moreover, that it is an element of the Plaintiff's case. The Noerr-Pennington doctrine is based upon the First Amendment and exempts from antitrust liability any legitimate use of the political process by private individuals even if their intent is anti-competitive. *Aetna*, 54 F. Supp. 2d at 1052. There is a "sham" exception to the Noerr-Pennington doctrine, however, which does not provide immunity to parties where the litigation is baseless.

It is the general rule that a defense under federal law does not provide the court with jurisdiction over a removed case even if it is clear from the complaint that that defense will be raised and that it is really the only issue to be resolved. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). With respect to Noerr-Pennington immunity and whether that doctrine confers jurisdiction, various courts have held that Noerr-Pennington is a defense, and thus it cannot form the basis for federal jurisdiction. *See, e.g., In re Cardizem CD*, 90 F. Supp. 2d 819, 840; *Aetna*, 54 F. Supp. 2d at 1053.

Defendants counter this argument by stating that Plaintiff must allege the absence of Noerr-Pennington immunity. *See McGuire Oil Co. v. Mapco*, 958 F.2d 1552, 1558 n.9 (11th Cir. 1992). *Mapco* states that "[u]nder the Sherman Act, Noerr-Pennington immunity is not merely an affirmative defense. Rather, the antitrust plaintiff has the burden of establishing that the defendants restrained trade unreasonably, which cannot be done when the restraining action is that of the government." *Id.* In *Aetna*, however, the court agreed that although Noerr Pennington was more

12

than an affirmative defense, plaintiffs' allegations were not a necessary element to the claim. *Id.* at 1053. This Court agrees. Although Plaintiff has stated allegations to negate the Noerr-Pennington defense, those allegations are in "anticipation or avoidance" of a federal defense and do not confer federal jurisdiction. *See Christianson*, 486 U.S. at 809.

### III. Conclusion

Accordingly, for the reasons set forth above, it is hereby

ORDERED that Plaintiff's Motion for Remand is GRANTED. This case is REMANDED to Kings County Supreme Court in New York. This case is CLOSED. All pending motions in this case are DENIED as moot.

DONE AND ORDERED in Miami, Florida, this 26ᵗʰ day of August, 2000.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Magistrate Judge Garber
Counsel of Record
Mr. Michael Beck, Clerk of the MDL Panel (certified copy)

13

# EXHIBIT I

1 of 1 DOCUMENT

**ANTHEM, INC., et al., Plaintiffs, v. BRISTOL-MYERS SQUIBB COMPANY, et al., Defendants.**

**Civil Action No. 03-0008**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2003 U.S. Dist. LEXIS 15762*

**March 17, 2003, Decided**
**March 18, 2003, Filed**

**DISPOSITION:** Plaintiff's motion to remand was granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, third-party payers of prescription drug costs, alleged in the first amended complaint a conspiracy between defendants patent holder, and pharmaceutical companies and its predecessors in interest (companies). The payers moved to remand their first amended complaint to state court.

**OVERVIEW:** Allegedly the conspiracy was aimed at restraining competition in the market for the anxiety drug buspirone-hydrocholoride, manufactured and by the patent holder since 1987. The payers sought damages for the allegedly excess prices paid for the drug during the period when generic buspirone could have been marketed, according to the payers, but for the companies conspiracy. The companies argued that the amended complaint alleged two separate claims because it alleged two separate events purportedly separated by five years, involving different sets of corporations and individuals, and motivated by dissimilar factual and legal circumstances. The amended complaint alleged that the patent holder engaged in a course of conduct over several years designed to maintain their drug as the sole buspirone product on the market. That this alleged course of conduct included multiple sets of activities was of no moment in light of the alleged common motivation (the maintenance of the drug monopoly) and alleged common injury (the higher priced the payers were forced to pay) pleaded in the amended complaint. The amended complaint alleged two theories, not two separate claims.

**OUTCOME:** The motion to remand the case was granted.

**LexisNexis(R) Headnotes**

*Governments > Agriculture & Food > Federal Food, Drug & Cosmetic Act*
[HN1] Manufacturers of generic equivalents to "pioneer" drugs must seek (Food and Drug Administration) FDA approval for sale of the generic within the United States. Under the Hatch-Waxman Act, *21 U.S.C.S. § 355,* which is part of the Federal Food, Drug and Cosmetic Act. *21 U.S.C.S. § 301* et seq., a generic manufacturer seeks such FDA approval by filing an Abbreviated New Drug Application (ANDA) on which it certifies that its product does not infringe any valid patent. A patent holder can challenge that certification and bring a patent infringement suit within 45 days of the notice of noninfringement. If the holder brings suit, the FDA stays the final approval of the generic product for 30 months after the date that notice was given, or until the date on which the patent litigation produces a final determination of non-infringement or patent invalidity, whichever date is earlier. *21 U.S.C.S. § 355(j)(5)(B)(iii).*

*Governments > Agriculture & Food > Federal Food, Drug & Cosmetic Act*
[HN2] The Hatch-Waxman Act also provides 180 days of market exclusivity to the first generic manufacturer who applies for approval of a generic product. The 180-day period begins to run on the date the applicant first sells its generic product or on the date on which a final, nonappealable decision determines that the patent

covering the pioneer drug is invalid or not infringed, whichever date is earlier. *21 U.S.C.S. § 355(j)(5)(B)(iv).*

**Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas**

[HN3] The decision to stay proceedings is within the sound discretion of a court. Each party submits, by way of comparison, examples of cases in which courts have either stayed similarly postured cases, or opted not to impose a stay. Taken as a whole, these cases indicate that either course of action is justified.

**Civil Procedure > Removal > Basis for Removal**

[HN4] A state court action may be removed to federal court if it originally could have been brought in federal court. *28 U.S.C.S. § 1441(a).* A case must be remanded to state court, however, if at any time before final judgment it appears that the federal court lacks subject matter jurisdiction. *28 U.S.C.S. § 1447(c).* The burden of establishing federal jurisdiction rests with the party seeking to invoke it; on a motion to remand, therefore, that burden rests with the defendant. Federal jurisdiction is to be strictly construed against removal and all doubts should be resolved in favor of remand.

**Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction**

[HN5] See *28 U.S.C.S. § 1338(a).*

**Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Question Jurisdiction**

[HN6] Whether a case "arises under" federal patent law is governed by United States Supreme Court's precedent. The Supreme Court has held that federal question jurisdiction exists only where a well-pleaded complaint establishes (1) that federal patent law creates the cause of action, or (2) that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of patent law in that patent law is a necessary element of one of the well-pleaded claims.

**Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction**

[HN7] Under the well-pleaded complaint rule, whether a claim arises under patent law must be determined from what necessarily appears in a plaintiff's statement of his own claim unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose. A case raising a federal patent law defense therefore does not for that reason alone arise under patent law, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.

**Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction**

[HN8] A claim does not arise under the patent laws if on the face of a well-pleaded complaint there are reasons completely unrelated to the provisions and purposes of the patent laws why a plaintiff may or may not be entitled to the relief it seeks. In other words, a claim supported by alternative theories in the complaint may not form the basis for *28 U.S.C.S. § 1338(a)* jurisdiction unless patent law is essential to each of those theories.

**COUNSEL:** [*1] Steven J. Fram, Esq., Archer & Greiner, P.C., Haddonfield, NJ, Attorneys for Plaintiffs Anthem, Inc., et al.

Michael A. Tanenbaum, Esq., Sedgwick, Detert, Moran & Arnold, Newark, NJ, Attorneys for Defendants Britol-Myers Squibb Company, Watson Pharmaceuticals, Inc., Watson Pharma, Inc. and Danbury Pharmacal.

**JUDGES:** William H. Walls, U.S.D.J.

**OPINIONBY:** William H. Walls

**OPINION: Walls, District Judge**

Plaintiffs have moved to remand their first amended complaint to New Jersey Superior Court. Middlesex County. For the following reasons, the motion is granted and the case is remanded.

**Background**

Plaintiffs, self-described as third-party payers of prescription drug costs, allege in the first amended complaint a conspiracy between defendants Bristol Myers Squbb Company ("BMS"), Watson Pharmaceuticals, Inc. ("Watson") and Watson's predecessors in interest, Schein Pharmaceuticals, Inc. ("Schein") and Danbury Pharmacal ("Danbury") (collectively, the "Defendants"). This alleged conspiracy according to Plaintiffs was aimed at restraining competition in the market for the anxiety drug buspirone-hydrochloride, manufactured and sold under the brand name BuSpar by BMS since [*2] 1987.

BMS was at all relevant times the holder of a patent covering BuSpar. That patent, known as the '763 patent, was issued in January 1980 and due to expire in 2002. [HN1] Manufacturers of generic equivalents to "pioneer" drugs such as BuSpar must seek FDA approval for sale of the generic within the United States. Under the Hatch-Waxman Act, *21 U.S.C. § 355*, which is part of the Federal Food, Drug and Cosmetic Act. *21 U.S.C. § 301 et seq.,* a generic manufacturer seeks such FDA approval by filing an Abbreviated New Drug Application ("ANDA") on which it certifies that its product does not

2003 U.S. Dist. LEXIS 15762, *

infringe any valid patent. A patent holder can challenge that certification and bring a patent infringement suit within 45 days of the notice of noninfringement. If the holder brings suit, the FDA stays the final approval of the generic product for 30 months after the date that notice was given, or until the date on which the patent litigation produces a final determination of non-infringement or patent invalidity, whichever date is earlier. See *21 U.S.C. § 355(j)(5)(B)(iii)*.

[HN2] The Hatch-Waxman Act also provides 180 days of [*3] market exclusivity to the first generic manufacturer who applies for approval of a generic product. The 180-day period begins to run on the date the applicant first sells its generic product or on the date on which a final, nonappealable decision determines that the patent covering the pioneer drug is invalid or not infringed, whichever date is earlier. See *21 U.S.C. § 355(j)(5)(B)(iv)*.

Here, Defendant Danbury, which was later acquired by Watson's predecessor in interest, Schein, filed in August 1992 an ANDA with the FDA seeking FDA approval to market its generic buspirone. The ANDA certified that BMS's '763 patent was invalid. BMS filed suit against Schein and Danbury for patent infringement within the 45-day statutory period, which barred the FDA from approving the ANDA for 30 months or until the issuance of a final court determination that the patent was invalid, whichever was earlier.

On December 2, 1994, with approximately three months remaining on the 30-month waiting period before Schein could begin to market generic buspirone. BMS and Schein and Danbury entered a settlement of the patent litigation (the "Settlement Agreement"). Under the Settlement [*4] Agreement, Schein abandoned its challenge to the validity of the '763 patent, stipulated to the Patent's validity and enforceability, and agreed not to market their generic product until the expiration of the '763 patent. In consideration, Schein and Danbury received $ 72.5 million in present and future payments. The Settlement Agreement indefinitely delayed the triggering of the 180-day generic exclusivity period, thereby preventing any other generic manufacturer from entering the market before the '763 patent expired in November 2000. According to Plaintiffs, by entering into the Settlement Agreement the defendants BMS, Schein and Danbury illegally restricted trade.

Plaintiffs claim that BMS embarked on a second course of anticompetitive conduct in late 1998. In September 1998, another would-be producer of generic buspirone, Mylan Laboratories ("Mylan"), submitted to the FDA an ANDA for its product. Mylan did not challenge the '763 patent, but instead certified that it would not market its generic drug until the patent expired

in November 2000. Shortly before that expiration date, however, BMS obtained a second patent - the '365 patent - which it claimed covered BuSpar. BMS successfully [*5] sought to have the '365 patent listed in the "Orange Book," the FDA's list of approved drug-covering patents. In plaintiffs' words, "by doing so, BMS could use the Hatch Waxman Act to continue to block FDA approval of Mylan's and other generic manufacturers' ANDA's for generic buspirone by bringing sham patent infringement suits against other generic competitors." [Plaintiffs' Brief in Support of Motion to Remand ("Plaintiffs' Brief") at 6].

In November 2002, plaintiffs filed this lawsuit in New Jersey Superior Court, Middlesex County, seeking damages for the allegedly excess prices paid for BuSpar during the period when generic buspirone could have been marketed, according to plaintiffs, but for Defendants' conspiracy. The amended complaint alleges 92 state law claims, including claims under state antitrust law, consumer protection statutes, insurance fraud, and common law unjust enrichment, under the law of several states. Defendants filed a notice of removal of the action on January 2, 2003 on the basis of this Court's alleged federal question jurisdiction. Plaintiffs move to remand the case on the grounds that no federal subject matter jurisdiction exists.

On February 5, 2002, the [*6] Judicial Panel on Multidistrict Litigation ("JPML") issued a Conditional Transfer Order pursuant to which this case may be transferred to the Federal District Court for the Southern District of New York. The JPML found that this case involves questions of fact common to other cases previously transferred to and consolidated in the Southern District Plaintiffs have filed an objection to the Conditional Transfer Order, and a final decision from the JPML is pending.

## DISCUSSION

### I. The Court Will Not Stay This Action Pending Decision By The JPML

As an initial matter, the Court declines the invitation of Defendants to stay this action pending a final transfer decision from the JPML. As Defendants note, [HN3] the decision to stay proceedings is within the sound discretion of the court. See *Landis v. N. Am. Co., 299 U.S. 248, 254-55, 81 L. Ed. 153, 57 S. Ct. 163 (1936)*. Each party submits, by way of comparison, examples of cases in which courts have either stayed similarly postured cases, or opted not to impose a stay. Compare, e.g., *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, et al., 54 F. Supp. 2d 1042, 1047-48 (D.Kan. 1999)* ("for purposes of judicial [*7] economy, the jurisdictional issue should be resolved immediately")

Case 1:04-cv-10981-PBS    Document 125-10    Filed 05/19/2005    Page 24 of 26

Page 4
2003 U.S. Dist. LEXIS 15762, *

with *Medical Society of the State of New York v. Conn. Gen. Corp.*, 187 F. Supp. 2d 89 (S.D.N.Y. 2001) (holding that judicial economy is promoted by imposing a stay and allowing jurisdictional issues to be decided by a single court). Taken as a whole, these cases indicate that either course of action is justified.

In exercising its discretion, however, the Court finds that the better option is to decline to stay proceedings and to consider the jurisdictional issue now. The issue is fully briefed by the parties and is ripe for determination. All relevant facts that could be presented to the MDL court are before this Court. Deciding the jurisdictional question now promotes judicial economy: if jurisdiction does not exist, then the case need not be transferred to the MDL court at all, and if it does exist then both the parties and the MDL court will be faced with one less contested issue if and when the case eventually is transferred. Finally, it is not clear that the other cases now before the MDL court involve perfectly identical facts and circumstances. Although the Court has not had the benefit of [*8] reviewing the complaints in each of those cases, according to the parties those complaints did not initially include allegations of anti-competitive conduct involving the Settlement Agreement: such allegations were apparently added by amendment. This Court, of course, is not in a position to assess whether that distinction would make a difference in deciding the motion to remand, or whether other differences might exist between the instant complaint and the complaints before the MDL court. But, because judicial economy can be promoted by deciding the issue now, the Court sees little benefit to delay this case. The Court will not impose a stay.

## II. The Motion to Remand

### A. Standard

[HN4] A state court action may be removed to federal court if it originally could have been brought in federal court. *28 U.S.C. § 1441(a)*. A case must be remanded to state court, however, "if at any time before final judgment it appears that [the federal court] lacks subject matter jurisdiction." *28 U.S.C. § 1447(c)*. The burden of establishing federal jurisdiction rests with the party seeking to invoke it; on a motion to remand, therefore, [*9] that burden rests with the defendant. *Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)* (citations omitted). Federal jurisdiction is to be strictly construed against removal and all doubts should be resolved in favor of remand. Id. (citations omitted).

Defendants assert that the federal district court has original - indeed exclusive - jurisdiction over this matter based on federal question jurisdiction. [HN5] Under the

federal question statute, "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." *28 U.S.C. § 1338(a)*. [HN6] Whether a case "arises under" federal patent law is governed by the Supreme Court's holding in *Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988)*. The Court held that federal question jurisdiction exists only where a well-pleaded complaint establishes (1) that federal patent law creates the cause of action, or (2) that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of patent [*10] law in that patent law is a necessary element of one of the well-pleaded claims. *Id., 486 U.S. at 808-09, 108 S. Ct. at 2174*. Defendants do not claim that federal patent law creates the cause of action asserted here. The issue is whether Plaintiffs' right to relief depends on the resolution of a substantial question of patent law.

Two other principles are relevant. First, [HN7] under the well-pleaded complaint rule, whether a claim arises under patent law "must be determined from what necessarily appears in the plaintiffs statement of his own claim... unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Christianson, 486 U.S. at 809, 108 S. Ct. at 2174*, quoting *Franchise Tax Board of California v. Construction Laborers Vacation Trust, 463 U.S. 1, 10, 103 S. Ct. 2841, 2846, 77 L. Ed. 2d 420 (1983)* (internal quotations omitted). A case raising a federal patent law defense therefore does not for that reason alone arise under patent law, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly [*11] at issue in the case." *Christianson, 486 U.S. at 809, 108 S. Ct. at 2174*, quoting *Franchise Tax Board, 463 U.S. at 14, 103 S. Ct. at 2848*.

Second, [HN8] a claim does not arise under the patent laws if "on the face of a well-pleaded complaint there are... reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks." *Christianson, 486 U.S. at 810, 108 S. Ct. at 2174*, quoting *Franchise Tax Board, 463 U.S. at 26, 103 S. Ct. at 2855*. In other words, "a claim supported by alternative theories in the complaint may not form the basis for *§ 1338(a)* jurisdiction unless patent law is essential to *each* of those theories." Id. (emphasis added).

### B. Discussion

As noted, the Plaintiffs in this case allege that the Defendants violated state antitrust law in two ways. First, they claim that by entering the Settlement Agreement, the Defendants unlawfully excluded generic makers of

buspirone from entering the market by permanently delaying the 180-day exclusivity period granted to defendant Schein as the first generic buspirone [*12] manufacturer to file an ANDA. Second, they claim that Defendants prevented generic buspirone from entering the market in November 2000 by improperly causing the '365 patent to be listed in the Orange Book, and in so doing effectively extending BuSpar's exclusive market access.

As an initial matter, the Court must consider whether the amended complaint asserts a single claim supported by alternate theories of recovery, as Plaintiffs urge, or two separate claims, as Defendants argue. If the former, then the federal jurisdiction cannot stand unless patent law is essential to Plaintiffs' recovery on each theory; if the latter, then federal jurisdiction is proper if patent law is essential to either claim. Put another way, if the amended complaint asserts a single claim with alternative theories, then the case must be remanded if Plaintiffs could recover on either theory without the resolution of a substantial question of patent law, but if the amended complaint alleges two separate claims then the case will be remanded only if neither claim requires the resolution of a substantial question of patent law.

Defendants argue that the amended complaint alleges two separate claims because [*13] it alleges two separate events purportedly separated by five years, involving different sets of corporations and individuals, and motivated by dissimilar factual and legal circumstances. The better reading of the amended complaint, however, supports Plaintiffs' argument that it asserts a single claim based on alternate theories of recovery. The amended complaint alleges that Defendant BMS engaged in a course of conduct over several years designed to maintain BuSpar as the sole buspirone product on the market. That this alleged course of conduct included multiple sets of activities is of no moment in light of the alleged common motivation (the maintenance of the BuSpar monopoly) and alleged common injury (the higher priced Plaintiffs were forced to pay) pleaded in the amended complaint. In sum, the amended complaint alleges two theories, not two separate claims. See *In re Buspirone Patent & Antitrust Litig., 210 F.R.D. 43, 51-52 (S.D.N.Y. 2002)* (in case with identical factual allegations, plaintiff raised antitrust and state law claims "based not only on *theories* related to the allegedly improper listing of the '365 Patent and subsequent patent infringement suits but also [*14] on *theories* related to an alleged agreement in restraint of trade with Schein") (emphasis added); citing *Christianson, 486 U.S. at 809-10, 108 S. Ct. at 2166.*

The resulting question is whether Plaintiffs could prevail on either of its theories of recovery without the resolution of a substantial question of patent law. The Court finds that Plaintiffs' theory regarding the Settlement Agreement affords them such an opportunity. The determination of whether the Plaintiffs' allegations regarding the Settlement Agreement amount to a violation of state antitrust law does not require a decision on the validity of the '763 patent, or any other substantial question of patent law. Plaintiffs allege that, but for the Settlement Agreement, the first generic buspirone producer could have marketed its product 30 months after the filing of the underlying patent suit *regardless* of the final determination of the '763 patent's validity, and that competing generic buspirone manufacturers could have entered the market 180 clays later. Such allegations may or may not amount to a violation of state antitrust law, but they do not require a decision on the validity of the '763 patent, [*15] or on any other question of patent law. Patent law might arise if Defendants argue that the execution of the Settlement Agreement, even if otherwise violative of state antitrust law, is permissible here as within the legitimate rights of a patent holder. That issue, however, arises as a defense to Plaintiffs' theory, not as an element of Plaintiffs' claim, and thus cannot provide the basis for federal subject matter jurisdiction. See *Christianson, 486 U.S. at 809, 108 S. Ct. at 2174* (when arising as a defense rather than as an element of a claim, patent law does not provide jurisdictional basis) (citations omitted).

In so finding, the Court is in agreement with the more persuasive line of cases that have considered the issue under the same or similar factual circumstances. See *In re Ciprofloxacin Hydrochloride Antitrust Litig., 166 F. Supp. 2d 740, 748-51 (E.D.N.Y. 2001); Altman v. Bayer Corp., 125 F. Supp. 2d 666, 674-75 (S.D.N.Y. 2000); In re Cardizem CD Antitrust Litig., 90 F. Supp. 2d 819, 839 (E.D.Mich. 1999); Aetna, 54 F. Supp. 2d at 1053-54.*

The motion to remand is granted.

William H. Walls, [*16] U.S.D.J.

17 March 2003

Dated

**ORDER** ENTERED MAR 19 2003

### Walls, District Judge

Plaintiffs filed a motion to remand this action to the Superior Court of New Jersey, Middlesex County. Defendants filed a motion to stay the action pending a decision by the Judicial Panel on Multidistrict Litigation.

The Court, having considered the motions and supporting materials submitted by the parties, elects in its discretion not to stay this action, and finds that it lacks

2003 U.S. Dist. LEXIS 15762, *

federal subject matter jurisdiction. It is therefore on this 17th day of March, 2003, ORDERED:

That the motion to stay this action is DENIED, and

That the motion to remand the case to the Superior Court of New Jersey, Middlesex County, is GRANTED.

William H. Walls, U.S.D.J.