107.     The Class consists of numerous individuals and entities throughout the United States, making individual joinder impractical, in satisfaction of Rule 23(a)(1). The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

108.     The claims of the representative Plaintiffs are typical of the claims of the Class, as required by Rule 23(a)(3), in that the representative Plaintiffs are persons who, like all Class members, purchased and/or paid for Neurontin for indications not approved by the FDA. Such representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct, in that, among other things, they paid for Neurontin to treat a condition for which the drug had not been demonstrated to be medically effective or safe, and for which the drug was not FDA-approved.

109.     The factual and legal bases of Defendants' misconduct are common to all members of the Class and represent a common thread of fraud and other misconduct resulting in injury to Plaintiffs and all members of the Class.

110.     There are many questions of law and fact common to Plaintiffs and the Class, and those questions predominate over any questions that may affect individual Class members, within the meaning of Rule 23(a)(2) and 23(b)(3). Common questions of law and fact include, but are not limited to, the following:

- Whether Neurontin is medically necessary for uses not approved by the FDA;
- Whether Defendants engaged in a fraudulent and/or deceptive scheme of improperly marketing and selling Neurontin for conditions for which it is not safe or medically efficacious;

- 44 -

325580.1

- Whether Defendants engaged in a fraudulent and/or deceptive scheme of improperly marketing and selling Neurontin to treat conditions for which the drug was not approved by the FDA;

- Whether Defendants coached or instructed physicians how to conceal the off-label nature of Neurontin prescriptions on claim forms submitted by or to Plaintiffs and members of the Class;

- Whether it was the policy and practice of Defendants to prepare, fund and publish materials which contained false information and misrepresentations regarding off-label uses for Neurontin;

- Whether Defendants paid non-physician technical writers to write articles containing misinformation and misrepresentations concerning purported scientific evidence regarding the safety and medical efficacy of Neurontin to treat off-label conditions;

- Whether Defendants paid physicians to "author" articles written by others containing misinformation and misrepresentations concerning purported scientific evidence to support the use of Neurontin for the treatment of conditions for which it has not been scientifically proven to be safe or medically effective;

- Whether Defendants paid Vendors, namely AMM and MES, to market articles containing misinformation and misrepresentations concerning purported scientific evidence regarding off-label uses of Neurontin for which the drug is not safe or medically necessary;

- Whether Defendants are liable to the Class Members for damages for conduct actionable under the New Jersey Consumer Fraud Act;

- 45 -

- Whether Defendants are liable to Class Members for damages for conduct actionable under the Uniform Deceptive Trade Practices Act;

- Whether Defendants are liable to Class Members for damages for conduct actionable under the RICO statute;

- Whether Defendants are liable to Class Members for damages for conduct actionable as common law fraud;

- Whether Defendants unjustly enriched themselves at the expense of Class Members;

- Whether Defendants engaged in a pattern or practice that directly caused Plaintiffs and Class Members to pay for Neurontin prescriptions that were for non-medically necessary uses;

- Whether Defendants engaged in a pattern and practice that directly caused Plaintiffs and Class Members to pay for Neurontin prescriptions that were for non-FDA approved uses; and

- Whether Defendants engaged in a pattern of deceptive and/or fraudulent activity with the intent to defraud Plaintiffs and the Class Members.

111.  Plaintiffs will fairly and adequately represent and protect the interests of the Class, as required by Rule 23(a)(4). Plaintiffs have retained counsel with substantial experience in the prosecution of nationwide class actions. Plaintiffs and their counsel are committed to the vigorous prosecution of this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor counsel have any interests adverse to those of the Class.

112.  Plaintiffs and members of the Class have suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct. A class

- 46 -

action is superior to other available methods for the fair and efficient adjudication of the controversy under Rule 23(b)(3). Absent a class action, most members of the Class likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

## X.   TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

113.   Any applicable statutes of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class have been kept in ignorance of vital information essential to the pursuit of these clams, without any fault or lack of diligence on their part. Plaintiffs and members of the Class could not reasonably have discovered the fraudulent nature of Defendants' conduct. Accordingly, Defendants are estopped from relying on any statute of limitations to defeat any of Plaintiffs' or the Class' claims.

## FIRST CLAIM FOR RELIEF
### VIOLATION OF 18 U.S.C. § 1962(c) (THE MES ENTERPRISE)

114.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

115.   Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

116.   The MES Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4), consisting of each of Defendants, including their employees and agents, and MES. The MES Enterprise is an ongoing organization that functions as a continuing unit. The

- 47 -

MES Enterprise was created and/or used as a tool to effectuate Defendants' pattern of racketeering activity. The Defendant "persons" are distinct from the MES Enterprise.

117.    The MES Enterprise engaged in and affected interstate commerce, because, *inter alia*, it marketed, sold, purchased, or provided Neurontin to thousands of individuals throughout the United States.

118.    Defendants have exerted control over the MES Enterprise, and Defendants have participated in the operation or management of the affairs of the MES Enterprise, through the following actions:

a.    Defendants have asserted direct control over the information and content disseminated to the Vendors (including MES), doctors and the public regarding the medical safety and efficacy of Neurontin for off-label uses in articles published across the country.

b.    Defendants have asserted direct control over the creation and distribution of mass-marketing and sales materials sent to Vendors and doctors throughout the United States; and

c.    Defendants have placed their own employees and agents in positions of authority and control in the MES Enterprise.

119.    Defendants have conducted and participated in the affairs of the MES Enterprise through a pattern of racketeering activity that includes acts indictable under 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud), as described above.

120.    In implementing their fraudulent scheme, Defendants were acutely aware that Plaintiffs and members of the Class depend on the honesty of Defendants in representing the safety and medical efficacy of Neurontin's uses.

- 48 -

121.    As detailed above, Defendants' fraudulent scheme consisted of, *inter alia*:
(a) causing providers to misrepresent the off-label use(s) for which Neurontin was being
prescribed so that Plaintiffs and members of the Class were unaware that contrary to their plain
language they were purchasing Neurontin for off-label uses; (b) deliberately misrepresenting the
uses for which Neurontin was safe and effective so that Plaintiffs and members of the Class paid
for this drug to treat symptoms for which it was not scientifically proven to be safe and effective;
(c) publishing or causing to have published materials containing false information upon which
physicians, Plaintiffs, and members of the Class relied upon when choosing to prescribe or pay
for Neurontin to treat off-label uses for which the drug is not scientifically proven to be safe or
medically efficacious; and (d) actively concealing, and causing others to conceal, information
about the true safety and efficacy of Neurontin to treat conditions for which it had not been
approved by the FDA.

122.    Defendants' scheme was calculated to ensure that Plaintiffs and the Class
would pay for Neurontin to treat a wide variety of uses which Defendants knew were not
necessarily treatable with Neurontin.

123.    Each of Defendants' fraudulent mailings and interstate wire transmissions
constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Collectively, these
violations constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C.
§ 1961(5).

124.    Defendants engaged in a pattern of racketeering activity intending to
defraud Plaintiffs and the Class.

125.    The above described racketeering activities amounted to a common course
of conduct intended to deceive Plaintiffs and the Class. Defendants' criminal acts of

325580.1

racketeering had the same pattern and similar purpose of defrauding Plaintiffs and the Class. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiffs and the members of the Class. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of Plaintiffs and the Class.

126. The pattern of racketeering activity alleged herein and the MES Enterprise are separate and distinct from each other. Defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the MES Enterprise.

127. Plaintiffs and members of the Class have been injured in their property by reason of these violations in that Plaintiffs and members of the Class have made billions of dollars in payments for Neurontin that they would not have made had Defendants not engaged in their pattern of racketeering activity.

128. Plaintiffs and members of the Class relied to their detriment on Defendants' fraudulent misrepresentations and omissions.

129. Plaintiffs' and members of the Class' injuries were directly and proximately caused by Defendants' racketeering activity as described above.

130. By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are jointly and severally liable to Plaintiffs and the Class for three times the damages Plaintiffs and the Class have sustained, plus the cost of this suit, including reasonable attorneys' fees.

### SECOND CLAIM FOR RELIEF
### VIOLATION OF 18 U.S.C. § 1962(c) (THE AMM ENTERPRISE)

131. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

325580 1

132.    Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

133.    The AMM Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of each of Defendants, including their employees and agents, and AMM. The AMM Enterprise is an ongoing organization that functions as a continuing unit. The AMM Enterprise was created and/or used as a tool to effectuate Defendants' pattern of racketeering activity. The Defendant "persons" are distinct from the AMM Enterprise.

134.    The AMM Enterprise engaged in and affected interstate commerce, because, *inter alia*, it marketed, sold, purchased, or provided Neurontin to thousands of individuals throughout the United States.

135.    Defendants have exerted control over the AMM Enterprise, and Defendants have participated in the operation or management of the affairs of the AMM Enterprise, through the following actions:

a.    Defendants have asserted direct control over the information and content disseminated to the Vendors (including AMM), doctors and the public regarding the medical safety and efficacy of Neurontin for off-label uses in articles published across the country.

b.    Defendants have asserted direct control over the creation and distribution of mass-marketing and sales materials sent to Vendors and doctors throughout the United States; and

c.    Defendants have placed their own employees and agents in positions of authority and control in the AMM Enterprise.

- 51 -

136.    Defendants have conducted and participated in the affairs of the AMM Enterprise through a pattern of racketeering activity that includes acts indictable under 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud), as described above.

137.    In implementing their fraudulent scheme, Defendants were acutely aware that Plaintiffs and members of the Classes depend on the honesty of Defendants in representing the safety and medical efficacy of Neurontin's uses.

138.    As detailed above, Defendants' fraudulent scheme consisted of, *inter alia*: (a) causing providers to misrepresent the off-label use(s) for which Neurontin was being prescribed so that Plaintiffs and members of the Class were unaware that contrary to their plain language they were purchasing Neurontin for off-label uses; (b) deliberately misrepresenting the uses for which Neurontin was safe and effective so that Plaintiffs and members of the Class paid for this drug to treat symptoms for which it was not scientifically proven to be safe and effective; (c) publishing or causing to have published materials containing false information upon which physicians, Plaintiffs, and members of the Class relied upon when choosing to prescribe or pay for Neurontin to treat off-label uses for which the drug is not scientifically proven to be safe or medically efficacious; and (d) actively concealing, and causing others to conceal, information about the true safety and efficacy of Neurontin to treat conditions for which it had not been approved by the FDA.

139.    Defendants' scheme was calculated to ensure that Plaintiffs and the Class would pay for Neurontin to treat a wide variety of uses which Defendants knew were not necessarily treatable with Neurontin.

140.    Each of Defendants' fraudulent mailings and interstate wire transmissions constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Collectively, these

violations constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

141.    Defendants engaged in a pattern of racketeering activity intending to defraud Plaintiffs and the Class.

142.    The above described racketeering activities amounted to a common course of conduct intended to deceive Plaintiffs and the Class. Defendants' criminal acts of racketeering had the same pattern and similar purpose of defrauding Plaintiffs and the Class. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiffs and the members of the Class. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to the property of Plaintiffs and the Class.

143.    The pattern of racketeering activity alleged herein and the AMM Enterprise are separate and distinct from each other. Defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the AMM Enterprise.

144.    Plaintiffs and members of the Class have been injured in their property by reason of these violations in that Plaintiffs and members of the Class have made billions of dollars in payments for Neurontin that they would not have made had Defendants not engaged in their pattern of racketeering activity.

145.    Plaintiffs and members of the Class relied to their detriment on Defendants' fraudulent misrepresentations and omissions.

- 53 -

146.     Plaintiffs' and members of the Class' injuries were directly and proximately caused by Defendants' racketeering activity as described above.

147.     By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are jointly and severally liable to Plaintiffs and the Class for three times the damages Plaintiffs and the Class have sustained, plus the cost of this suit, including reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF 18 U.S.C. § 1962(c)
## (THE PROMOTIONAL STRATEGIST ENTERPRISE)

148.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

149.     Defendants are "persons" within the meaning of § 1961(3) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

150.     The Promotional Strategist Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4), consisting of Pfizer and Warner-Lambert, including their employees and agents, and the non-physician technical writers, physician "authors" and Vendors located throughout the United States who participated in the fraudulent schemes described above. The Promotional Strategist Enterprise is an ongoing organization and functions as a continuing unit. The Promotional Strategist Enterprise was created and/or used as a tool to effectuate Defendants' pattern of racketeering activity. The Defendants' "persons" are distinct from the Promotional Strategist Enterprise.

151.     The Promotional Strategist Enterprise falls within the meaning of 18 U.S.C. § 1961(4), and consists of a group of "persons" associated together for the common purposes of marketing and selling Neurontin to Plaintiffs and the Class and earning profits therefrom.

- 54 -

152.    The Promotional Strategist Enterprise engaged in and affected interstate commerce, because, *inter alia*, it marketed, sold, purchased, or provided Neurontin to thousands of individuals throughout the United States.

153.    Defendants have exerted control over the Promotional Strategist Enterprise, and Defendants have participated in the operation or management of the affairs of the Promotional Strategist Enterprise, through the following actions:

a.    Defendants have asserted direct control over the information and content disseminated to doctors and the public regarding the medical safety and efficacy of Neurontin for off-label uses in articles published across the country.

b.    Defendants have asserted direct control over the creation and distribution of mass-marketing and sales materials sent to doctors throughout the United States; and

c.    Defendants have placed their own employees and agents in positions of authority and control in the Promotional Strategist Enterprise.

154.    Defendants have conducted and participated in the affairs of the Promotional Strategist Enterprise through a pattern of racketeering activity that includes acts indictable under 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud), as described above.

155.    In implementing their fraudulent scheme, Defendants were acutely aware that Plaintiffs and members of the Classes depend on the honesty of Defendants in representing the safety and medical efficacy of Neurontin's uses.

156.    As detailed above, Defendants' fraudulent scheme consisted of, *inter alia*: (a) causing providers to misrepresent the off-label use(s) for which Neurontin was being prescribed so that Plaintiffs and members of the Class were unaware that contrary to their plain

- 55 -

language they were purchasing Neurontin for off-label uses; (b) deliberately misrepresenting the

uses for which Neurontin was safe and effective so that Plaintiffs and members of the Class paid

for this drug to treat symptoms for which it was not scientifically proven to be safe and effective;

(c) publishing or causing to have published materials containing false information upon which

physicians, Plaintiffs, and members of the Class relied upon when choosing to prescribe or pay

for Neurontin to treat off-label uses for which the drug is not scientifically proven to be safe or

medically efficacious; and (d) actively concealing, and causing others to conceal, information

about the true safety and efficacy of Neurontin to treat conditions for which it had not been

approved by the FDA.

     157.    Defendants' scheme was calculated to ensure that Plaintiffs and the Class

would pay for Neurontin to treat a wide variety of uses which Defendants knew were not

necessarily treatable with Neurontin.

     158.    Each of Defendants' fraudulent mailings and interstate wire transmissions

constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Collectively, these

violations constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C.

§ 1961(5).

     159.    Defendants engaged in a pattern of racketeering activity intending to

defraud Plaintiffs and the Class.

     160.    The above described racketeering activities amounted to a common course

of conduct intended to deceive Plaintiffs and the Class. Defendants' criminal acts of

racketeering had the same pattern and similar purpose of defrauding Plaintiffs and the Class.

Each such racketeering activity was related, had similar purposes, involved the same or similar

participants and methods of commission, and had similar results affecting similar victims,

including Plaintiff and the members of the Class. Defendants' fraudulent activities are part of

their ongoing business and constitute a continuing threat to the property of Plaintiffs and the

Class.

161.    The pattern of racketeering activity alleged herein and the Promotional

Strategist Enterprise are separate and distinct from each other. Defendants engaged in a pattern

of racketeering activity alleged herein for the purpose of conducting the affairs of the

Promotional Strategist Enterprise.

162.    Plaintiffs and members of the Class have been injured in their property by

reason of these violations in that Plaintiffs and members of the Class have made billions of

dollars in payments for Neurontin that they would not have made had Defendants not engaged in

their pattern of racketeering activity.

163.    Plaintiffs and members of the Class relied to their detriment on

Defendants' fraudulent misrepresentations and omissions.

164.    Plaintiffs' and members of the Class' injuries were directly and

proximately caused by Defendants' racketeering activity as described above.

165.    By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are

jointly and severally liable to Plaintiffs and the Class for three times the damages Plaintiffs and

the Class have sustained, plus the cost of this suit, including reasonable attorneys' fees.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF 18 U.S.C. § 1962(d) BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(c)

166.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set

forth herein.

167.    Section 1962(d) of RICO provides that it "shall be unlawful for any person

to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

325580.1

168.    Defendants have violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c).  The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the § 1962(c) Enterprises described previously through a pattern of racketeering activity.

169.    As demonstrated in detail above, Defendants' co-conspirators have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to defraud Plaintiffs and the Class of money.

170.    The nature of the above-described Defendants' co-conspirators' acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but they were aware that their ongoing fraudulent and extortionate acts have been and are part of an overall pattern of racketeering activity.

171.    As a direct and proximate result of Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § § 1962(c), Plaintiffs and the Class have been and are continuing to be injured in their business or property as set forth more fully above.

172.    Defendants have sought to and have engaged in the commission of and continue to commit overt acts, including the following unlawful racketeering predicate acts:

a.    Multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1342;

b.    Multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346; and

- 58 -

c.    Multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346.

173.    Defendants' violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting Defendants' illegal acts constituting a pattern of racketeering activity is fashioned and imposed by the Court.

## FIFTH CLAIM FOR RELIEF
## VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT,
## N.J.S.A. 56:8-1 *ET SEQ.*

174.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

175.    This claim is asserted by Plaintiffs on their own behalf and on behalf of all other similarly situated members of the Class against Defendants.

176.    The unfair and deceptive acts and practices of Defendants have directly, foreseeably, and proximately caused or will cause damages and injury to Plaintiffs and the members of the Class.

177.    The actions and failures to act of Defendants, including the false and misleading representations and omissions of material facts regarding the off-label use(s) for Neurontin, and the above described course of fraudulent conduct and fraudulent concealment, constitute acts, uses, or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression or omission of material facts in connection with the sale of merchandise of Defendants in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

- 59 -

178. Physicians relied upon Defendants' misrepresentations and omissions in prescribing Neurontin for "off-label" uses. Plaintiffs and the Class were damaged by paying for these prescriptions.

179. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and members of the Class are entitled to compensatory damages, treble damages, attorneys' fees and costs of suit.

## SIXTH CLAIM FOR RELIEF
## VIOLATION OF UNIFORM DECEPTIVE TRADE PRACTICES ACT

180. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

181. If the Court does not permit Plaintiffs to pursue the Fifth Claim for Relief on behalf of a national class, in the alternative, Plaintiffs assert this claim for violations of the Uniform Deceptive Trade Practices Act ("UDTPA"), which prohibits "[r]epresenting that goods . . . have sponsorship, approval, characteristics, . . . uses, [or] benefits . . . that they do not have," on behalf of a subclass composed of all Class Members who reside in the 22 states who have enacted these provisions of the UDTPA (listed in Paragraph 183).

182. Defendants engaged in deceptive trade practices in violation of the 22 state consumer protection statutes that incorporate the provisions of the UDTPA quoted above, by, *inter alia*, (a) causing providers to misrepresent the off-label use(s) for which Neurontin was being prescribed so that Plaintiffs and members of the Class were unaware that contrary to their plain language they were purchasing Neurontin for off-label uses; (b) deliberately misrepresenting the uses for which Neurontin was safe and effective so that Plaintiff and members of the Class paid for this drug to treat symptoms for which it was not scientifically proven to be safe and effective; (c) publishing or causing to have published materials containing

- 60 -

false information upon which physicians, Plaintiffs, and members of the Class relied upon when choosing to prescribe or pay for Neurontin to treat off-label uses for which the drug is not scientifically proven to be safe or medically efficacious; and (d) actively concealing, and causing others to conceal, information about the true safety and efficacy of Neurontin to treat conditions for which it had not been approved by the FDA.

      183.    Defendants have violated the deceptive trade practices statutes of the 22 states that incorporate the provisions of the UDTPA quoted above, as follows:

      a.    Defendants have engaged in deceptive trade practices in violation of Ala. Code § 8-19-5, *et seq.*;

      b.    Defendants have engaged in deceptive trade practices in violation of Alaska Stat. § 45.50.471, *et seq.*;

      c.    Defendants have engaged in deceptive trade practices in violation of Cal. Civ. Code § 1770 *et seq.*;

      d.    Defendants have engaged in deceptive trade practices in violation of 6 Del. C. § 2532, *set seq.*;

      e.    Defendants have engaged in deceptive trade practices in violation of Ga. Code Ann. §§ 10-1-372, *et seq.*, 10-1-393 *et seq.*, and 26-2-29 *et seq.*;

      f.    Defendants have engaged in deceptive trade practices in violation of Haw. Rev. Stat. § 481A-3, *et seq.*;

      g.    Defendants have engaged in deceptive trade practices in violation of Idaho Code § 48-603 *et seq.*;

      h.    Defendants have engaged in deceptive trade practices in violation of 815 Ill. L.C.S. § 510/2 *et seq.*;

- 61 -

       i.     Defendants have engaged in deceptive trade practices in violation of 10 Me. Rev. Stat. Ann. § 1212, *et seq.*;

       j.     Defendants have engaged in deceptive trade practices in violation of Mich. Comp. L. Ann. § 445.903 *et seq.*;

       k.     Defendants have engaged in deceptive trade practices in violation of Minn. Stat. Ann. § 325D.44 *et seq.*;

       l.     Defendants have engaged in deceptive trade practices in violation of Miss. Code Ann. § 75-24-5 *et seq.*;

       m.     Defendants have engaged in deceptive trade practices in violation of Neb. Rev. Stat. §§ 81-2,285 *et seq.*, 87-302 *et seq.*;

       n.     Defendants have engaged in deceptive trade practices in violation of N.H. Rev. Stat. § 358-A:2 *et seq.*;

       o.     Defendants have engaged in deceptive trade practices in violation of N.M. Stat. Ann. § 57-12-2 *et seq.*;

       p.     Defendants have engaged in deceptive trade practices in violation of Ohio Rev. Code § 4165.02 *et seq.*;

       q.     Defendants have engaged in deceptive trade practices in violation of Or. Rev. Stat. § 646.608 *et seq.*;

       r.     Defendants have engaged in deceptive trade practices in violation of 10 Penn. Stat. § 162.15 *et seq.* and 73 Penn. Stat. § 201-2 *et seq.*;

       s.     Defendants have engaged in deceptive trade practices in violation of R.I. Gen. Laws § 6-13-1.1 *et seq.*;

t.    Defendants have engaged in deceptive trade practices in violation of Tenn. Code Ann. § 47-18-104 *et seq.*;

u.    Defendants have engaged in deceptive trade practices in violation of Tex. Bus. & Comm. Code § 17.46, *et seq.*;

v.    Defendants have engaged in deceptive trade practices in violation of Utah Code § 13-11a-3 *et seq.*;

w.    Defendants have engaged in deceptive trade practices in violation of W.Va. Code § 46A-6-102 *et seq.*

184.    To this date, Defendants continue to engage in the foregoing unlawful practices in violation of the UDTPA and the deceptive trade practices statutes of the 22 states that incorporate the UDTPA.

185.    Plaintiffs and the Class suffered actual damages as a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices.

**COUNT SEVEN**
**COMMON LAW FRAUD**

186.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

187.    This claim is asserted by Plaintiffs on their own behalf and on behalf of all other similarly situated members of the Class against Defendants.

188.    Defendants made misrepresentations and omissions of facts material to Plaintiffs' and Class member's decisions to purchase Neurontin by, *inter alia*, (a) causing providers to misrepresent the off-label use(s) for which Neurontin was being prescribed so that Plaintiffs and members of the Class were unaware that contrary to their plain language they were purchasing Neurontin for off-label uses; (b) deliberately misrepresenting the uses for which

- 63 -

Neurontin was safe and effective so that Plaintiffs and members of the Class paid for this drug to treat symptoms for which it was not scientifically proven to be safe and effective; (c) publishing or causing to have published materials containing false information upon which physicians, Plaintiffs, and members of the Class relied upon when choosing to prescribe or pay for Neurontin to treat off-label uses for which the drug is not scientifically proven to be safe or medically efficacious; and (d) actively concealing, and causing others to conceal, information about the true safety and efficacy of Neurontin to treat conditions for which it had not been approved by the FDA.

189.    Defendants knew at the time that they made these misrepresentations that they were false.

190.    Defendants intended that Plaintiffs and the Class members would rely through their physicians on these misrepresentations, so that Plaintiffs and the Class would purchase Neurontin for off-label uses.

191.    Plaintiffs and the Class reasonably relied upon Defendants' misrepresentations and omissions of material fact. Plaintiffs and the Class had no reason to doubt the veracity or scientific validity of the information Defendants promoted through their marketing and sales strategies.

192.    Defendants' misrepresentations and omissions of material fact directly and proximately caused Plaintiffs' and the Class' damages.

193.    By virtue of the fraud they perpetrated on Plaintiffs and the Class, Defendants are jointly and severally liable to Plaintiffs and the Class for all damages Plaintiffs and the Class have sustained, plus punitive damages, plus the cost of this suit, including attorneys' fees.

- 64 -

## COUNT EIGHT
### UNJUST ENRICHMENT

194.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

195.    This claim is asserted by Plaintiffs on their own behalf and on behalf of all other similarly situated members of the Class against Defendants.

196.    As the intended and expected result of their conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from payments Plaintiffs and the Class made for Neurontin.

197.    In exchange for the payments they made for Neurontin, and at the time they made these payments, Plaintiffs and the Class expected that the drug was a safe and medically effective treatment for the condition, illness, disease, disorder, or symptom for which it was prescribed.

198.    Defendants have voluntarily accepted and retained these payments, with full knowledge and awareness that, as a result of their wrongdoing, Plaintiffs and the Class paid for Neurontin when they otherwise would not have done so. The failure of Defendants to provide Plaintiffs and the Class with the renumeration they expected enriched Defendants unjustly.

199.    Plaintiffs and the Class are entitled in equity to seek restitution of Defendants' wrongful profits, revenues and benefits to the extent, and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

325580.1

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs and the Class demand judgment against Defendants in each claim for relief, jointly and severally, as follows:

a.    On Plaintiffs' and the Class' RICO claims, three times the damages Plaintiffs and the Class have sustained as a result of Defendants' conduct, such amount to be determined at trial, plus Plaintiffs' costs in this suit, including reasonable attorneys' fees;

b.    On Plaintiffs' and the Class' New Jersey Consumer Fraud Act claim, compensatory damages, three times the damages Plaintiffs and the Class have sustained as a result of Defendants' conduct, such amount to be determined at trial, plus Plaintiffs' costs in this suit, including reasonable attorneys' fees;

c.    On Plaintiffs' and the Class' Uniform Deceptive Trade Practices Act claim as incorporated in the deceptive trade practices statutes of 22 states, all measures of damages allowable under such statutes, such amount to be determined at trial, plus Plaintiffs' costs in this suit, including attorneys' fees;

d.    On Plaintiffs' and the Class' common law fraud claim, compensatory damages, punitive damages, such amounts to be determined at trial, plus Plaintiffs' costs in this suit, including all reasonable attorneys' fees;

e.    On Plaintiffs' and the Class' claim for unjust enrichment, recovery in the amount of Plaintiffs' and the Class' payment for Neurontin to treat conditions for which it was not approved by the FDA, such amount to be determined at trial, plus Plaintiffs' costs in this suit, including all reasonable attorneys' fees;

f.    Awarding Plaintiffs and the Class other appropriate equitable relief;

325580.1

g.    Awarding Plaintiffs their costs and expenses in this litigation,

including reasonable attorneys' fees and expert fees; and

h.    Awarding Plaintiffs and the Class such other and further relief as

may be just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by

jury on all issues so triable.

Dated: June 2, 2004

*Respectfully submitted,*

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**

By: _____

Lisa J. Rodriguez (LR 6767)
Donna Siegel Moffa (DSM4634)
8 Kings Highway West
Haddonfield, New Jersey 08033
(856) 795-9002
(856) 795-9887 – Facsimile


**LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP**
Barry R. Himmelstein
Eric B. Fastiff
David W. Marcus
275 Battery Street, 30th Floor
San Francisco, California 94111-3339
(415) 956-1000
(415) 956-1008 – Facsimile

325580.1

**LIEFF, CABRASER, HEIMANN &**
**BERNSTEIN, LLP**
Robert J. Eisler
780 Third Avenue, 48th Floor
New York, New York  10017-2024
(212) 355-9500
(212) 355-9592 – Facsimile


**TOUSLEY BRAIN STEPHENS PLLC**
Christopher I. Brain
Janissa A. Strabuck
700 Fifth Avenue, Suite 5600
Seattle, WA  98104-5056
(206) 695-9285
(206) 682-2992 – Facsimile


**HERUM, CRABTREE, BROWN,**
  **DYER, ZOLEZZI & TERPSTRA, INC.**
James B. Brown
2291 West March Lane, Suite B100
Stockton, CA  95207
Telephone:  (209) 472-7700
(209) 472-7986 – Facsimile

**Attorneys for Plaintiffs and the Class**

225580 1