# EXHIBIT H

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2674 | **DATE** | August 12, 2003 |
| **CASE TITLE** | Janet Rubel v Pfizer, Inc., et al | | |

MOTION:    [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐  Filed motion of [ use listing in "Motion" box above.]

(2) ☐  Brief in support of motion due _____.

(3) ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐  Hearing

(5) ☐  Status hearing

(6) ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐  Trial[set for/re-set for] on _____ at _____.

(8) ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■  [Other docket entry]

Memorandum opinion and order entered. Accordingly, plaintiff's motion to remand the instant case to the Circuit Court of Cook County, Ill. is granted. Status hearing date of 9/3/03 is stricken.

(11) ■  [For further detail see order attached to the original minute order.]

*03C10472*
*Remand 9-2-03*

| | No notices required, advised in open court. | | | number of notices | |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| X | Notices mailed by judge's staff. | | | AUG 19 2003 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | docketing deputy initials | 20 |
| | Mail AO 450 form. | | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 03 AUG 18 PM 12:29 | | |
| GDS | courtroom deputy's initials | | FILED FOR DOCKETING Date/time received in central Clerk's Office | mailing deputy initials | |



JUN 18 2003

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JANET RUBEL, individually and on behalf of )
all persons similarly situated, )
                         )
         Plaintiff, )
                         ) Case No.: 03CV 2674
 - against - )
                         ) Judge Gettleman
                         )
PFIZER INC and PARKE-DAVIS, a division )
of Warner-Lambert Company, )
                         )
         Defendants. )
                         )

**FILED**
JUN 17 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION TO REMAND

Alexander Dimitrief, P.C.
Robert B. Ellis
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60606
(312) 861-2000 (telephone)
(312) 861-2200 (facsimile)

James P. Rouhandeh
Charles S. Duggan
Peter M. Bryce
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000 (telephone)
(212) 450-3800 (facsimile)

*Attorneys for Defendants Pfizer Inc*
*and Parke-Davis, a division of*
*Warner-Lambert Company*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

STATEMENT OF THE CASE ................................................................................. 2

ARGUMENT ............................................................................................................ 3

    I.       THIS COURT'S JURISDICTION IS DETERMINED BY
            THE COMPLAINT REMOVED BY DEFENDANTS, NOT
            BY THE PURPORTED AMENDED COMPLAINT ................................. 3

    II.      THIS COURT HAS JURISDICTION OVER THIS ACTION ................... 5

        A.   There Is Complete Diversity Among The Parties And The Amount In
             Controversy Exceeds The Statutory Minimum .......................................... 5

        B    The Complaint Raises A Federal Question On Its Face ............................. 9

CONCLUSION ........................................................................................................ 15

i

## TABLE OF AUTHORITIES

### Cases                                                                                                   Page

BEM I, L.L.C. v. Anthropologie, Inc., 301 F.3d 548 (7th Cir. 2002) ........................................6,8,9

Beneficial Nat'l Bank v. Anderson, ___U.S.___, 123 S.Ct. 2058 (2003) ....................................11

In re Brand Name Prescription Drugs Antitrust Litig., 123 F.3d 599
(7th Cir. 1997)...........................................................................................................................7

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988) ...............................................................13

City of Chicago v. International Coll. of Surgeons, 522 U.S. 156 (1997) ...............................11,14

D'Alessio v. New York Stock Exch., 258 F.3d 93 (2d Cir. 2001)...........................................11,13

Dawson v. CIBA-Geigy Corp., USA, 145 F. Supp. 2d 565 (D.N.J. 2001) ...................................14

Del Vecchio v. Conseco, Inc., 230 F.3d 974 (7th Cir. 2000) .......................................................6,7

Durant v. Servicemaster Co., 147 F. Supp. 2d 744 (E.D. Mich. 2001) ..........................................7

Fischer v. Senior Living Props., L.L.C., 329 Ill. App. 3d 551,
771 N.E.2d 505 (Ill. App. Ct. 2002) ..............................................................................................4

Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983).................................11

Ghosh v. Roy, 208 Ill. App. 3d 30 (Ill. Ct. App. 1991) ..................................................................4

Hampton v. Union Pac. R.R. Co., 81 F. Supp. 2d 703 (E.D. Tex. 1999) ........................................4

Kennan v. Checker Taxi Co., 250 Ill. App. 3d 155,
620 N.E.2d 1208 (Ill. App. Ct. 1993) ..........................................................................................7,8

Loizon v. SMH Societe Suisse de Microelecs., Et Horologerie SA,
950 F. Supp. 250 (N.D. Ill. 1996) ..................................................................................................8

Marcus v. AT&T Corp., 138 F.3d 46 (2d Cir. 1998)....................................................................12

McAllister v. Purdue Pharma L.P., 164 F. Supp. 2d 783 (S.D. W. Va. 2001) .............................14

Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804 (1986)....................................................14

In re Microsoft Corp. Antitrust Litig., 127 F. Supp. 2d 702 (D. Md. 2001)...................................7

|  |  |
|---|---|
| <u>Cases</u> | <u>Page</u> |

<u>Miller v. Medlab, Inc.</u>, No 96C-04-038, 2000 WL 33109473
(Del. Super. Oct. 31, 2000) ........................................................................................8

<u>Momans v. St. John's Northwestern Mil. Acad., Inc.</u>, No. 99 C 8510,
2000 U.S. Dist. LEXIS 5129 (N.D. Ill. Apr. 20, 2000) ................................4,5,6

<u>Normand v. Orkin Exterminating Co.</u>, 193 F.3d 908 (7th Cir. 1999) ...............5,6

<u>Ormet Corp. v. Ohio Power Co.</u>, 98 F.3d 799 (4th Cir. 1996) ...............11,12

<u>Pritt v. Republican Nat'l Comm.</u>, 1 F. Supp. 2d 590
(S.D. W.Va. 1998) .......................................................................................4

<u>Reape v. City of New York</u>, 228 A.D.2d 659 (App. Div. 1996) .....................8

<u>R.K. Servs. v. Spectrum Stores, Inc.</u>, 125 F. Supp. 2d 479
(M.D. Ala. 2001) ........................................................................................4

<u>Seinfeld v. Austin</u>, 39 F.3d 761 (7th Cir. 1987) ..........................................14

<u>Sercye-McCollum v. Ravenswood Hosp. Med. Ctr.</u>,
140 F.Supp.2d 944 (N.D.Ill. 2001) ...............................................................14

<u>In re Shell Oil Co.</u>, 970 F.2d 355 (7th Cir. 1992) .......................................3,5,9

<u>Smith v. Kansas City Title & Trust Co.</u>, 255 U.S. 180 (1921) .....................11

<u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283 (1938) .............3

<u>Thompson v. Victoria Fire & Cas. Co.</u>, 32 F. Supp. 2d 847 (D.S.C. 1999) ......4

<u>Tylka v. Gerber Prods. Co.</u> No. 96 C 1647,
1998 WL 92167 (N.D. Ill. Feb. 18, 1998) .....................................................7

<u>Uhl v. Thoroughbred Tech. & Telecomms., Inc.</u>,
309 F.3d 978 (7th Cir. 2002) .......................................................................6,9

<u>W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.</u>,
815 F.2d 188 (2d Cir. 1987)...........................................................................16

<u>Workman v. United Parcel Serv., Inc.</u>, 234 F.3d 998
(7th Cir. 2000).............................................................................................8,9

iii

| Cases | Page |
|---|---|
| **Statutes & Rules** | |
| 28 U.S.C. ' 1332 ...................................................................................................5 | |
| 28 U.S.C. 1446(a) .........................................................................................2,3,5,6 | |

iv

### PRELIMINARY STATEMENT

In seeking remand, plaintiff does not argue that this Court lacks jurisdiction over the allegations in the Complaint filed in this Court with defendants' Notice of Removal – allegations which establish the existence of both diversity and federal question jurisdiction. Instead, plaintiff argues that those allegations have been superseded by the filing of a purported new complaint, served on defendants after removal, from which plaintiff has expunged "[a]ny grounds for removal which may have been present in the original Complaint." (Pl. Motion at 2). Plaintiff is wrong. Under clear precedent in this Court, an amended complaint that is served after removal has no bearing on whether removal was appropriate. The appropriateness of removal is determined by reference to the Complaint, which was the only pleading that had been served on defendants prior to removal, not plaintiff's purported amended complaint.

The allegations of the Complaint demonstrate that this Action was properly removed to this Court. There is complete diversity of citizenship, and the miscellany of damages and relief sought by plaintiff in the Complaint, including actual damages (including damages for personal injury), punitive damages, attorneys fees and injunctive and declaratory relief (including restitution and disgorgement) indicate that the amount in controversy in this case exceeds the $75,000 statutory minimum. The Complaint also raises a federal question on its face. Plaintiff asserts that defendants violated the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") by marketing Neurontin, an epilepsy drug, in a manner that violated the Food, Drug and Cosmetic Act ("FDCA"). Plaintiff seeks a determination that defendants violated the FDCA – not because such a determination would in some way support a conclusion that state law standards were

violated, but rather because, in plaintiff's view, the state consumer protection laws impose liability for marketing drugs in violation of federal law.

## STATEMENT OF THE CASE

Defendants removed this action on April 21, 2003 in compliance with the requirements of federal law by filing a notice of removal and copies of "all process, pleadings, and orders served upon . . . defendants in [the] action." 28 U.S.C. § 1446(a). The notice of removal briefly stated the grounds for federal jurisdiction based on the allegations in the Complaint, which was the only pleading that had been "served upon . . . defendants" prior to removal.

The Complaint asserts that during the mid- to late-1990s, Parke-Davis, a division of Warner-Lambert, violated the FDCA by marketing Neurontin for medical uses other than the treatment of epilepsy, which at the time was the only use for which the drug was approved by the Food and Drug Administration ("FDA"). (Compl. ¶¶ 3, 26.) Under the FDCA, pharmaceutical manufacturers are prohibited from promoting drugs for uses that have not been approved by the FDA. (Compl. ¶ 25.) Doctors, however, are free to prescribe drugs for such "off-label" uses, and complex federal regulations dictate when and how pharmaceutical companies can share information with doctors regarding the "off-label" applications for which drugs may be useful.

On April 23, 2003, two days after defendants removed this action, plaintiff served defendants with a purported amended complaint. This new complaint had been filed with the state court on April 4, 2003, but without prior leave to amend, in violation of state procedural requirements. The purported amended complaint expunges many (but not all) of the references to federal law that appear on the face of the Complaint, and the only relief it expressly requests is damages for payments made to purchase Neurontin and

2

punitive damages; it omits plaintiff's prior express demands for personal injury damages, injunctive and declaratory relief and disgorgement. The essential theory of the new complaint remains, however, that defendants' supposed marketing of Neurontin for "off-label" uses in violation of federal law constitutes grounds for relief under the Illinois consumer fraud laws. Defendants had no knowledge of the amended complaint before it was served, and it has yet to be filed with this Court, except as an exhibit to plaintiff's motion to remand.

ARGUMENT

I.    THIS COURT'S JURISDICTION IS DETERMINED BY THE
      COMPLAINT REMOVED BY DEFENDANTS, NOT BY THE
      PURPORTED AMENDED COMPLAINT

This Court's jurisdiction over this action -- and the appropriateness of removal -- must be assessed in light of the allegations in the Complaint. Plaintiff's purported amended complaint, which was not served on defendants until after they properly removed this action to this Court, has no bearing on the appropriateness of removal or on this Court's jurisdiction. At the time of removal, defendants properly filed with this Court copies of "all process, pleadings, and orders served upon . . . defendants in [the] action," in compliance with 28 U.S.C. § 1446(a). Under the plain language of the federal removal statute, the pleadings and other papers that have been "served upon . . . defendants" are the relevant documents for purposes of removal. This conclusion is consistent with the well-settled rule that subject matter jurisdiction "is determined as of the instant of removal." In the Matter of Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992) (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 292-93 (1938)).

This Court, following other federal district courts, has expressly held that it is the complaint that has been served upon the defendant as of the time of removal that

3

determines whether removal was proper. Momans v. St. John's Northwestern Military Academy, Inc., No. 99 C 8510, 2000 U.S. Dist. LEXIS 5129, at *9 (N.D. Ill. Apr. 20, 2000) (denying remand motion on ground that an amended complaint filed but not served prior to removal did not supersede prior complaint for purposes of determining federal jurisdiction). An amended complaint, even if already filed with the state court, has no bearing on the appropriateness of removal or the Court's jurisdiction if the new complaint was not served on defendants prior to removal. See id. ("[S]ervice of the amended complaint must be completed to effectuate the amended pleading."); Thompson v. Victoria Fire & Cas. Co., 32 F. Supp. 2d 847, 848-49 (D.S.C. 1999) (same); Pritt v. Republican Nat'l Comm., 1 F. Supp. 2d 590, 591 (S.D. W.Va. 1998) (same). Here, plaintiff's purported amended complaint was not served on defendants until two days after this action was removed to this Court. Nor did defendants have any notice of the purported amendment prior to removal.

None of the cases cited by plaintiff displaces the clear rule of this Court's Momans decision that an amended complaint that is filed, but not served, prior to removal has no bearing on the appropriateness of federal jurisdiction over the removed action. The two cases on which plaintiff relies, R.K. Services v. Spectrum Stores, Inc., 125 F. Supp. 2d 479 (M.D. Ala. 2001), and Hampton v. Union Pac. R.R. Co., 81 F. Supp. 2d 703 (E.D. Tex. 1999), address only the timing of filing relative to removal.[1] Neither case discusses the question of service on defendants, which § 1446(a) establishes as the

---

[1] Plaintiff's purported amended complaint was not even properly filed in state court, where Illinois law requires a party to seek and obtain the court's permission to file an amendment. See Ghosh v. Roy, 208 Ill. App. 3d 30, 31 (Ill. Ct. App. 1991). Although Illinois courts have recognized an equitable exception to this requirement where strict enforcement would result in the disallowance of claims under statutes of limitations, Fischer v. Senior Living Properties, L.L.C., 329 Ill. App. 3d 551, 554, 555 (Ill. Ct. App. 2002), that exception is inapplicable here.

4

criterion for whether "process, pleadings and orders" are part of the action as removed to federal court.[2] The Complaint is the only pleading that was served on defendants prior to removal, and accordingly, under § 1446(a), Momans and the other cases cited above, it is the allegations in the Complaint which determine whether this Court has jurisdiction. Indeed, plaintiff's purported amended complaint has not even been filed with this Court, other than as an exhibit to plaintiff's motion to remand.

II.    THIS COURT HAS JURISDICTION OVER THIS ACTION

Removal to this Court was proper because the conditions for diversity jurisdiction are satisfied and because the Complaint presents a substantial federal question.

A.  There Is Complete Diversity Among The Parties And
    The Amount In Controversy Exceeds The Statutory Minimum

This Court has federal diversity jurisdiction over this action. Plaintiff does not dispute that complete diversity exists, and the allegations in the Complaint demonstrate that the amount in controversy exceeds $75,000.[3] See 28 U.S.C. § 1332.

The Complaint seeks injunctive and declaratory relief, including restitution and disgorgement of illegal profits, damages (including amounts for personal injury), punitive damages, interest and attorneys' fees. (Compl. ¶¶ 12, 91, 92, 108.) A defendant seeking removal "need demonstrate no more than a good faith, minimally reasonable belief that the suit might result in a judgment in excess of th[e] amount [in controversy]." Normand

---

[2] Plaintiff also cites cases holding that, under 28 U.S.C. § 1448, defendants can be made parties to an action after removal using state court process. (Pl. Motion at 2 n.1.) That proposition in no way suggests, however, that a court's subject matter jurisdiction, which is determined "as of the instant of removal," Shell Oil, 970 F.2d at 356, can be revoked by post-removal service with a new complaint.

[3] Plaintiff has not argued that complete diversity is lacking, despite having so alleged in the Complaint. (Compl. ¶ 15.) In any event, there is complete diversity: defendants are both organized under the laws of Delaware and have their principal places of business in New York, and plaintiff is a "resident" and apparent citizen of Illinois. (Compl. ¶ 13.)

5

v. Orkin Exterminating Co., 193 F.3d 908, 910 (7th Cir. 1999). Although plaintiff does not specify her damages or the amount of disgorgement or other relief sought, even a conservative assessment of plaintiff's claims indicates that the amount in controversy exceeds the statutory minimum.

First, the injunctive relief sought here would itself exceed $75,000. It is well settled that "the jurisdictional minimum in diversity cases is not the amount sought by the plaintiff but the amount at stake to either party to the suit." BEM I, L.L.C. v. Anthropologie, Inc., 301 F.3d 548, 553 (7th Cir. 2002). The Seventh Circuit has acknowledged that injunctive relief that would cost the defendant in excess of $75,000, even if awarded to just the named plaintiff in a class action, satisfies the amount-in-controversy requirement. Uhl v. Thoroughbred Tech. & Telecomm., Inc., 309 F.3d 978, 983-84 (7th Cir. 2002) ("[Defendant] would have to spend more than $75,000 to avoid the costs of injunction and condemnation even if only [the class representative plaintiff's] land was involved."); see also BEM, 301 F.3d at 553 ("[I]t seems to us beyond absurd to allow a defendant to remove if the plaintiff is seeking damages of $75,000.01, but not if the plaintiff is seeking an injunction directing the defendant to tear down, as a nuisance, a $10 million building that the defendant owns.")

The relief sought by plaintiff specifically includes not only the damages to the plaintiff class, but also disgorgement of all "illegal profits" and any allegedly "illegal and excessive payments" resulting from defendants' alleged off-label promotion of Neurontin. (Compl. ¶¶ 12, 108.) Although the amount sought from defendants in a class action is usually assessed for jurisdictional purposes in terms of the damages attributable to each individual claimant, see, e.g., Del Vecchio v. Conseco, Inc., 230 F.3d 974, 977-78

6

(7th Cir. 2000), "in the unusual cases in which a putative class of plaintiffs 'have claimed disgorgement *in addition to their claims for damages*, and they have not disavowed their entitlement to that remedy under the substantive state laws giving rise to their causes of action,' a claim for unjust enrichment is aggregated and removed properly," Durant v. Servicemaster Co. Truegreen. Inc., 147 F. Supp. 2d 744, 750 (E.D. Mich. 2001) (emphasis in original) (quoting In re Microsoft Corp. Antitrust Litig., 127 F. Supp. 2d 702, 720-21 (D. Md. 2001)). The aggregate disgorgement sought in this case would unquestionably exceed the statutory minimum. Plaintiff alleges that Neurontin sales for 1998 alone were $1.3 billion and that 80% of this amount was attributable to improper promotion by defendants for non-FDA approved uses. (Compl. ¶ 11.) Thus, even if plaintiff were to establish only a small fraction of the misconduct she alleges, the amount of disgorgement that could potentially be ordered would exceed the statutory minimum.[4]

Wholly apart from potential injunctive relief, the total amount of actual damages, punitive damages and attorneys' fees attributable solely to plaintiff individually would independently exceed the jurisdictional minimum. Plaintiff seeks to recover amounts paid for Neurontin, which is an expensive drug. In addition, she alleges that she and other plaintiffs were needlessly subjected to, and suffered, unspecified side effects from taking the drug. (Compl. ¶¶ 91, 92.) These allegations could support substantial damages, even if the side effects were neither drastic nor permanent. Juries commonly return substantial damages for non-permanent injuries. See, e.g., Kernan v. Checker

---

[4] Moreover, plaintiff's request for injunctive relief is not limited to disgorgement. (Compl. ¶ 12.) The costs to defendants if they were ordered to provide nationwide corrective notice that Neurontin has not been approved for its popular off-label uses, for example, would very likely exceed $75,000 – and plaintiff has not foresworn such relief. See, e.g., Tylka v. Gerber Prods. Co., No. 96 C 1647, 1998 WL 92167, at *1-2 (N.D.Ill. Feb. 18, 1998).

7

Taxi Co., 620 N.E.2d 1208, 1210-11, 1214 (Ill. App. Ct. 1993) (affirming compensatory award of $120,000 against employer of cab driver for painful bruises, humiliation and post-traumatic stress disorder suffered by passenger assaulted by driver); Reape v. City of New York, 228 A.D.2d 659, 660 (App. Div. 1996) (remitting $1 million jury award to $60,000 where plaintiff suffered temporary side effects, but no permanent injuries, lost wages or lost employment, from drugs taken as result of erroneous diagnosis); Miller v. Medlab, Inc., No. 96C-04-038, 2000 WL 33109473, at *2-4 (Del. Super. Oct. 31, 2000) (affirming $50,000 award for side effects of unnecessary additional chemotherapy sessions).

Finally, the Complaint also seeks punitive damages, backed by allegations that Parke-Davis "encouraged many physicians to experiment with their own patients by prescribing very high levels of Neurontin, very much higher than approved by the FDA," and "expressed callous disregard for the possibility of adverse reactions occurring during these informal, non-FDA sanctioned, illegal experiments." (Compl. ¶ 8.)  Even a relatively modest award of punitive damages to plaintiff on her claims alone, apart from any compensatory award, would be substantial in relation to the statutory minimum.

Notably, although plaintiff denied in her Complaint that diversity jurisdiction exists, she did not disclaim that her personal relief would not exceed $75,000.  (Compl. ¶ 15.)  Under this circuit's precedent, the absence of such a disclaimer supports the view that the amount in controversy exceeds the jurisdictional minimum.  See BEM, 301 F.3d at 552 ("[H]ad [plaintiff] wanted to make sure that its stake was less than $75,000, it should have stipulated to that effect."); Workman v. United Parcel Serv., Inc., 234 F.3d

8

998, 1000 (7th Cir. 2000) (Where plaintiff "doesn't make such a stipulation, the inference arises that he thinks his claim may be worth more.").[5]

In sum, looking just to the plaintiff's own potential damages – assuming no class action is certified – and taking into account that plaintiff did not limit the relief sought before removal, it is reasonably probable that plaintiff's actual damages for drug purchases, physical injury and pain and suffering, together with even a modest award of punitive damages, would exceed the statutory minimum. The defendants, out-of-state pharmaceutical companies, are entitled to defend these non-trivial claims in federal court. See BEM, 301 F.3d at 553 (Removal "enable[s] a nonresident defendant to move the case against him from state to federal court, provided the case is not trivial.").

B. The Complaint Raises A Federal Question On Its Face

The central issue in this action is a federal question: whether defendants engaged in "off-label promotion" in violation of the FDCA. Plaintiff's Complaint posits that marketing behavior that violates the FDCA is a fraudulent practice under state law because it violates the FDCA. The second paragraph of the Complaint plainly states that the gravamen of plaintiff's claim is defendants' alleged violation of the FDCA:

> There are strict federal regulations about what form [drug] promotion can take. The rules are meant to ensure that drug companies give doctors trustworthy information, so that medications are prescribed appropriately. But drug makers get around the rules and this case arises from one company's widespread scheme designed to unlawfully promote the sale of the anti-epilepsy drug Neurontin for non-FDA approved uses. (Compl. ¶ 2.)

---

[5] Nor should any weight be given to plaintiff's post-removal disclaimer limiting her damages. (Pl. Motion at 2-3). Post-removal stipulations by plaintiffs to limit damages are ineffective, because jurisdiction is determined at the "instant of removal." Shell Oil, 970 F.2d at 356 ("Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints.").

The Complaint asserts that "[p]romotion by a drug manufacturer of 'off-label' uses of prescription drugs is strictly illegal and contrary to the explicit policies and regulations of the United States Government." (Compl. ¶ 25.) Plaintiff repeatedly references federal standards in asserting that the conduct through which defendants' "scheme" was supposedly implemented was improper. (Compl. ¶¶ 2, 3, 19, 20, 21, 22, 25, 26, 27, 31, 34g-i, 46, 52, 63, 70, 78, 86.) Indeed, the only condition for class membership is consumption of Neurontin for a use not approved by the FDA. (Compl. ¶ 93.

Perhaps the best proof that plaintiff's theory of liability is premised on substantial questions of federal law is the substantially federal nature of the "common questions" that plaintiff asserts to justify adjudication on a class-wide basis:

- "Whether defendants engaged in illegal direct solicitation of physicians for 'off-label' uses" (Compl. ¶ 95(c));

- "Whether defendants . . . charg[ed] [the] full price for drugs actually being used in experimental trials and thus subject to federal price restriction" (Compl. ¶ 95(f));

- "Whether defendants did or caused systematic avoidance of filing requirements with the FDA" (Compl. ¶ 95(g));

- "Whether defendants engaged in or caused the deliberate avoidance of the FDA's classification of Neurontin as to its therapeutic equivalency" (Compl. ¶ 95(h)).

These and other statements in the Complaint demonstrate that substantial federal questions lie at the root of plaintiff's supposed state law consumer fraud claim. To adjudicate that state law claim, a court must determine the parameters of FDCA prohibitions on off-label promotion. Plaintiff's self-serving denial of reliance on federal law (Compl. ¶ 18) is belied by her own allegations, which put questions of federal law

squarely at the center of this case.[6]  At bottom, plaintiff's claim is an FDCA violation dressed up as a state law consumer fraud claim.

Where a plaintiff's state-law claim presents a substantial federal question – as it does here – the action is deemed to "arise under" federal law for purposes of establishing federal question jurisdiction.  See City of Chicago v. International College of Surgeons, 522 U.S. 156, 164 (1997); Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13 (1983); see also Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199 (1921) ("The general rule is that, where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States . . . the District Court has jurisdiction"); Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 806-807 (4th Cir. 1996) (noting that a state law claim is deemed to "arise under federal law" if it depends on the resolution of a "sufficiently substantial" federal question, and approving federal jurisdiction over contract dispute regarding right to federal emission credits where, "to resolve that dispute, a court must interpret both the [federal law] and the contract.").[7]

Removal of an action asserting a state law claim was recently approved on this ground by the Second Circuit in D'Alessio v. New York Stock Exchange, 258 F.3d 93

---

[6] Tellingly, plaintiff's purported amended complaint (attached as Exhibit A to plaintiff's remand motion) expunges many (but not all) of the overt references to the FDCA and federal law in an apparent effort to defeat removal.  Nevertheless, the new complaint posits the same fundamental, and fundamentally federal, theory of liability arising from defendants' alleged promotion of Neurontin for "off-label" uses.

[7] Recently, in Beneficial Nat'l Bank v. Anderson, ___ U.S.___, 123 S. Ct. 2058, 2063 (2003), the Supreme Court stated that "a state claim may be removed to federal court in only two circumstances – when Congress expressly so provides . . . or when a federal statute wholly displaces the state law cause of action through complete preemption."  Anderson, however, was discussing the conditions for removal that apply where the complaint does not itself refer to federal law and the defendant has removed in reliance on the well-pleaded complaint doctrine.  Anderson did not discuss the applicability of its holding to cases, such as this one, where a substantial federal question is presented on the face of the plaintiff's complaint.

11

(2nd Cir. 2001).  In <u>D'Alessio</u> the plaintiff, an independent floor broker, sued the New

York Stock Exchange ("NYSE") in state court on a variety of state tort theories, alleging

that the NYSE had intentionally provided him with incorrect interpretations of federal

laws prohibiting unlawful trading in violation of NYSE's own obligations under federal

law to ensure that its members comply with the securities laws.  The case was removed to

federal court and eventually dismissed.  On review, the Second Circuit determined that

removal had been proper, because the "resolution of D'Alessio's claims requires a court

to construe federal securities laws and evaluate the scope of the NYSE's duties, as

defined under [federal law], in enforcing and monitoring members' compliance with

those laws."  <u>D'Alessio</u>, 258 F. 3d at 101-02.  "The source of the duty imposed on the

NYSE . . . is found in federal law," the court held.  <u>Id.</u> at 103.  "Thus, it is the propriety of

the NYSE's actions, as prescribed under federal law, that is at the heart of D'Alessio's

allegations."  <u>Id.</u>

      Like the allegations in <u>D'Alessio</u>, plaintiff's allegations in this case "are rooted in

violations of federal law." 258 F.3d at 101.  Plaintiff's core claim that defendants

violated the FDCA by marketing Neurontin for off-label uses is indistinguishable, for

jurisdictional purposes, from D'Alessio's core claim that the NYSE violated the federal

securities laws.  Here, as in <u>D'Alessio</u>, "it is the propriety of the [defendants'] actions, as

prescribed under federal law, that is at the heart of [plaintiff's] allegations." <u>Id.</u> at 103.

In such cases, federal courts have repeatedly found that federal question jurisdiction

exists over removed actions asserting state law claims. <u>See</u>, <u>e.g.</u>, <u>Ormet Corp.</u>, 98 F.3d at

806-807; <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 55-56 (2d Cir. 1998) (approving denial of

motion to remand where plaintiffs' breach of warranty claim under state law necessarily

12

raised a substantial federal question, because defendant's contractual obligations were set by a tariff filed with the Federal Communications Commission).[8]

The cases cited by plaintiff do not undermine the presence of federal question jurisdiction in this case. In Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804 (1986), the plaintiffs alleged that the defendants had negligently failed to disclose risks associated with a drug manufactured by the defendants. Among other theories of negligence, the plaintiffs asserted that the defendants' allegedly improper disclosures constituted "misbranding" under the FDCA that created a "rebuttable presumption" of negligence under state law. Id. at 806. In other words, the alleged federal law violation was merely presumptive evidence of a breach of the applicable state standard of care. The Supreme Court held that, where Congress had not conferred a private right of action for misbranding violations under the FDCA, the "mere presence" of such a misbranding allegation as part of plaintiff's state law negligence claim was insufficient to establish federal question jurisdiction. Id. at 813-14.

Here, by contrast, plaintiff has asserted that defendants' marketing practices are fraudulent under state law because they violate the FDCA. The alleged violation is central to plaintiff's claim and, moreover, raises important federal policy issues that should be adjudicated in federal court. Accordingly, Merrell Dow does not preclude federal arising under jurisdiction. See D'Alessio, 258 F.3d at 99 (noting that Merrell Dow

---

[8] Even if plaintiff's new complaint were viewed as advancing a different theory of liability that did not raise a substantial federal question, plaintiff cannot divest this Court of jurisdiction by a post-removal amendment. This Court would still have supplemental jurisdiction over this action under 28 U.S.C. § 1367 (assuming, for present purposes only, that diversity jurisdiction was also lacking). Given the important federal issues that would remain in the case (including, among others, defenses of preemption and of protection under the first amendment) and, in addition, plaintiff's apparent effort to manipulate her pleadings to remove the federal question, see Carnegie-Mellon University v. Cohill, 484 U.S. 343, 357 (1988), retaining the case for adjudication would be an appropriate exercise of the Court's discretion.

did not alter the rule that cases may be "deemed to 'arise under' federal law 'where the

vindication of a right under state law necessarily turn[s] on some construction of federal

law'"); City of Chicago v. International Coll. of Surgeons, 522 U.S. 156, 168 (1997)

(observing that, under Merrell Dow, arising under jurisdiction does not exist if the

"federal claims are so insubstantial as not to establish federal jurisdiction"); cf. Sercye-

McCollum v. Ravenswood Hosp. Med. Ctr., 140 F. Supp. 2d 944, 946 (N.D.Ill. 2001)

(alleged breach of federally mandated emergency care standards, which would be prima

facie evidence of negligence under state law, did not create a substantial federal

question).[9]

Nor do the other cases cited by plaintiff support remand, despite sharing

superficial similarities with this case. In Dawson v. CIBA-Geigy Corp., USA, 145 F.

Supp. 2d 565, 573 (D. N.J. 2001), the plaintiffs did not assert that the defendants had

violated the FDCA. Rather, it was defendants who injected a federal issue into the case

by arguing that the injunctive relief sought by plaintiffs, which included directing

defendants to make corrective disclosures regarding the risks of a drug, would require

FDA approval. Similarly, in McAllister v. Purdue Pharma, 164 F. Supp. 2d 783, 793

n.17 (S.D. W.Va. 2001), there was no indication that the plaintiffs were asserting that

---

[9] The Seventh Circuit, in Seinfeld v. Austin, 39 F.3d 761 (7th Cir. 1987), interpreted Merrell Dow
to mean that, if federal law does not provide a private right of action, a state claim based on a violation
of the federal law does not raise a substantial federal question. Id. at 764. The correctness of this
interpretation is questionable, however, in light of the Supreme Court's subsequent decision in City of
Chicago v. International Coll. of Surgeons, 522 U.S. 156, 164 (1997), where the Court, in discussing when
a state claim "arises under" federal law, did not articulate any requirement that the federal law put at issue
by the plaintiff's state law claim must itself provide a private right of action. Indeed, as noted above, in
City of Chicago, the Supreme Court referred to Merrell Dow simply as precluding federal "arising under"
jurisdiction where the federal basis for state law claims was "insubstantial." Id. at 168.

14

defendants had violated the FDCA, much less that such a violation, in itself, would

constitute grounds for liability under state law, as plaintiff alleges here.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny

Plaintiff's Motion for Remand.

DATED: June 17, 2003                    Respectfully submitted,


Alexander Dimitrief, P.C.
Robert B. Ellis
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60601
  (312) 861-2000 (telephone)
  (312) 861-2200 (facsimile)

James P. Rouhandeh
Charles S. Duggan
Peter M. Bryce
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
  (212) 450-4000 (telephone)
  (212) 450-3800 (facsimile)

*Attorneys for Defendants Pfizer Inc.
and Parke-Davis, a division of
Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I, Robert B. Ellis, hereby certify that a true and correct copy of the foregoing

*Defendants' Opposition to Plaintiff's Motion to Remand* was forwarded on June 17, 2003 via

messenger delivery to the following:

> Lawrence Walner, Esq.
> Kristi L. Browne, Esq.
> LAWRENCE WALNER & ASSOCIATES, LTD.
> 150 N. Wacker Drive
> Suite 2150
> Chicago, Illinois 60606
>
> William J. Harte, Esq.
> WILLIAM J. HARTE, LTD.
> 111 W. Washington
> Suite 1100
> Chicago, Illinois 60602

and via first class mail to:

> Richard Lewis, Esq.
> Douglas McNamara, Esq.
> COHEN, MILSTEIN, HAUSFIELD & TOLL, PLLC
> West Tower, Suite 500, 100 New York Ave.
> Washington, DC 20005-3694
> 202-408-4600 (phone)
> 202-408-4699 (facsimile)

Robert B. Ellis, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JANET RUBEL, individually and on behalf of all )
persons similarly situated,                     )
                                                )
                Plaintiffs,                      )
                                                )        No.     03 C 2674
        v.                                      )
                                                )        Judge Robert W. Gettleman
PFIZER INC. and PARKE-DAVIS, a division of      )
Warner-Lambert Company,                         )
                                                )
                Defendants.                      )

AUG 1 9 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a putative class action complaint on March 12, 2003, in the Circuit Court of

Cook County, Illinois, seeking damages, injunctive relief, and attorneys' fees under the Illinois

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., arising from

defendants' alleged marketing of the epilepsy drug Neurontin for "off-label" uses. On April 4,

2003, without leave of court and before defendants had filed any appearance, plaintiff filed an

amended complaint which omitted her prayer for injunctive relief. Defendants were not served

with the amended complaint until April 23, 2003, however, two days after they had already

removed the instant action to this court on the basis of plaintiff's original complaint.

On May 21, 2003, plaintiff moved to remand the instant case to state court, contending

that "any grounds for removal which may have been present in the original Complaint are no

longer before this court" because plaintiff's original complaint was superseded by her amended

complaint, which plaintiff contends does not permit either diversity or federal subject matter

jurisdiction. For the reasons stated herein, the court concludes that the operative complaint for

20

purposes of removal is plaintiff's original complaint, which did not provide a basis for either

diversity or federal question jurisdiction.

## DISCUSSION

The propriety of removal is determined on the basis of plaintiff's pleading as it existed at

the time of removal. Pullman Co. v. Jenkins, 305 U.S. 534, 537, 59 S.Ct. 347 (1939); Shannon

v. Shannon, 965 F.2d 542, 545 (7th Cir. 1992); Momans v. St. John's Northwestern Military

Academy, Inc., No. 99 C 8510, 2000 WL 33976543, at *2 (N.D.Ill. April 20, 2000). The

threshold task in evaluating plaintiff's motion to remand, then, is to determine which complaint

controlled at the time defendants removed the instant case. Defendants maintain that the original

complaint is not superseded by the amended complaint because, (1) plaintiff did not obtain leave

of court to file her amended complaint "in violation of state procedural requirements," and (2)

defendants were not properly served with the amended complaint prior to removal. Because the

court concludes that the issue of seeking leave to amend is dispositive, the court need not reach

defendants' arguments regarding service.

The court agrees with defendants that, under 735 ILCS 5/2-616(a), plaintiff was required

to obtain leave of court before filing her amended complaint. Section 2-616(a) provides:

> At any time before final judgment amendments may be allowed on just and reasonable
> terms, introducing any party who ought to have been joined as plaintiff or defendant,
> dismissing any party, changing the cause of action or defense or adding new causes of
> action or defenses, and in any matter, either of form or substance, in any process,
> pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the
> claim for which it was intended to be brought or the defendant to make a defense or assert
> a cross claim. [Emphasis added.]

The rules governing Illinois civil practice do not appear to contemplate an amendment as

a matter of course prior to a responsive pleading. Compare Fed. R. Civ. P. 15(a) ("A party may

2

amend the party's pleading once as a matter of course at any time before a responsible pleading is served...").

That a party may waive an objection to his opponent's failure to seek leave to amend is of no consequence. See Ragan v. Columbia Mutual Ins. Co., 183 Ill. 2d 342, 355 (1998) (finding that "failure to obtain leave to amend a complaint is not a jurisdictional defect and that a party may waive its right to object to the defect"). The question before the court is not whether failure to obtain leave under Section 2-616(a) is jurisdictional and thus not waivable on appeal, but rather whether Section 2-616(a) directs parties to seek leave of court before amending their pleadings.

Plaintiff directs the court's attention to Fischer v. Senior Living Properties, L.L.C., 329 Ill. App. 3d 551 (Ill. App. 4th Dist. 2002), for the proposition that Section 2-616(a) is "directory" rather than "mandatory." This distinction, however, does not alter the court's conclusion. In Fischer, the plaintiff's attorney sought leave to amend his complaint, but the judge failed to timely sign the order granting leave to amend. In declining to invalidate the filing of the amended complaint, the appellate court characterized the failure to obtain the judge's signature as a "minor technicality" and "directory," and further noted that the plaintiff had "substantially complied" with Section 2-616(a). Id. at 513. In the instant case, in contrast, plaintiff is not in substantial compliance with Section 2-616(a) because she never sought leave to file her amended complaint. Thus, the court concludes that plaintiff's amended complaint does not supersede the original complaint, and the original complaint is the operative complaint for purposes of defendants' removal petition.

Defendants argue that the original complaint was removable on the basis of both federal

3

question and diversity jurisdiction. Looking to the original complaint, the court concludes that, (1) the original complaint did not support federal question jurisdiction, and (2) given the lack of an ad damnum clause in the original complaint, defendants' failure to comply with Local Rule 81.2 of the Northern District of Illinois merits a remand of the instant case to state court.

As a starting point, the court notes that the burden of establishing federal jurisdiction falls on the party seeking removal. Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993), citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 42 S.Ct. 35 (1921). Further, any doubt regarding jurisdiction should be resolved in favor of state courts. Allied-Signal, Inc., 985 F.2d at 911, citing Jones v. General Tire & Rubber Co., 541 F.2d 660, 664 (7th Cir. 1976).

28 U.S.C. § 1331, which governs federal question jurisdiction, provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Defendants, in support of their assertion of federal question jurisdiction, direct the court's attention to numerous references throughout the original complaint to federal statutes and regulations governing Medicare, Medicaid and the Food and Drug Administration (FDA), as well as allegations that defendants acted in contravention of those federal laws. Notwithstanding those references, however, plaintiff deliberately fashioned her original one-count complaint to seek relief exclusively under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.[1] The question is thus whether plaintiff's myriad references to federal law create federal question jurisdiction in the instant case.

---

[1] For example, in paragraph 86 of her complaint, plaintiff references 42 U.S.C. § 1320a-7 and 42 C.F.R. § 1001, which prohibit kickbacks to physicians and medical care providers under Medicare and Medicaid, but specifically notes that "[n]o federal claim for relief is being made under [those] or other federal statutes."

4

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429 (1987). Accordingly, the plaintiff is the master of her own pleading and can avoid federal jurisdiction by exclusive reliance on state law. Id.

In Beneficial Nat'l Bank v. Anderson, ___ U.S. ___, 123 S.Ct. 2058, 2063 (2003), the Supreme Court stated that "a state claim may be removed to federal court in only two circumstances - when Congress explicitly so provides... or when a federal statute wholly displaces the state-law cause of action through complete preemption." Rather than arguing that there is either an explicit Congressional directive to remove plaintiff's state law claim or complete preemption in the instant case, defendants try to distinguish Anderson by noting that the complaint in Anderson did not refer to federal law. Defendants' argument is unavailing, however, in light of Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229 (1986).

In Merrell Dow, the plaintiffs alleged that defendants' failure to disclose risks associated with a drug manufactured by the defendants constituted "misbranding" under the Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. §§ 301 et seq., that created a rebuttable presumption of negligence under state law. Id. at 805-806. In other words, plaintiffs' complaint pled the violation of a federal statute as an element of a state law cause of action. Id. at 813. Notwithstanding the unambiguous presence of a federal issue in that case, the Merrell Dow court concluded that federal question jurisdiction was not present. According to the court, "[A]

5

complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" Id. at 817 (citations omitted).

In Seinfeld v. Austen, 39 F.3d 761, 764 (7th Cir. 1987), the Seventh Circuit concluded that, under Merrell Dow, "if federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a 'substantial federal question.'" (Internal quotations and citations omitted.) Defendants do not dispute that the FDCA does not contain private enforcement provisions that would encompass plaintiff's claim. See Merrell Dow, 478 U.S. at 811; In re Orthopedic Bone Screw Products Liability Litigation, 193 F.3d 781, 788 (3d Cir. 1999) ("It is well settled ... that the FDCA creates no private right of action"); PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1113 (2d Cir.1997); Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1139 (4th Cir. 1993). Following Merrell Dow, therefore, the court concludes that plaintiff's state law claim relating to defendants' alleged marketing of the drug Neurontin for "off-label" uses does not give rise to federal question jurisdiction.[2]

Defendants' attempt to demonstrate that the court has diversity jurisdiction in the instant case is more persuasive, but flawed. 28 U.S.C. § 1332(a) provides that the district courts shall have original jurisdiction of all civil actions between diverse parties in which the amount in

_____

[2]To the extent that D'Alessio v. New York Stock Exchange, Inc., 258 F.3d 93 (2d Cir. 2001), suggests a contrary result, this court respectfully disagrees. See, e.g., Dawson ex rel. Thompson v. Ciba-Geigy Corp., 145 F. Supp. 2d 565, 570, fn. 9 (D.N.J. 2001) ("[I]f Plaintiffs had claimed a violation of the FDCA as an element of a state law claim, removal would not be proper under [Merrell Dow].") (Citations omitted.)

controversy exceeds $75,000.  In the instant case, there is complete diversity of citizenship among the parties: plaintiff is a citizen of Illinois, and both defendants are incorporated in Delaware and reside in New York.  With respect to the amount in controversy, defendants "need demonstrate no more than a good faith, minimally reasonable belief that the suit might result in a judgment in excess of [$75,000]." Normand v. Orkin Exterminating Co., Inc., 193 F.3d 908, 910 (7th Cir. 1999).

The original complaint seeks declaratory and injunctive relief, including restitution and disgorgement of illegal profits, as well as damages (including amounts for personal injury and punitive damages).  Notwithstanding defendants' argument to the contrary, the Seventh Circuit has implied that aggregate disgorgement of profits shall not count toward the amount in controversy.  See Del Vecchio v. Conseco, Inc., 230 F.3d 974, 977-978 (7th Cir. 2000).  Further, it is unclear whether plaintiff's prayer for personal injury damages, taken together with the potential for a punitive damages award, can satisfy the amount in controversy.[3]  Aside from alleging that "plaintiff and class members were exposed to and many suffered side effects of the drug," the nature of the personal injuries at issue in the instant suit, and the damages suffered therefrom, are not apparent from the face of plaintiff's complaint.

---

[3]Notably, as defendants point out, although the original complaint disclaims (apparently inaccurately) diversity of citizenship, it did not disclaim that plaintiff's recovery in the instant case would not exceed $75,000.  In the Seventh Circuit, the absence of such a disclaimer supports the conclusion that the amount in controversy exceeds the statutory minimum.  See BEM I, L.L.C. v. Anthropologie, Inc., 301 F.3d 548, 552 (7th Cir. 2002) ("Had [plaintiff] wanted to make sure that its stake was less than $75,000, it should have stipulated to that effect.").  But see Local Rule 81.2 of the Northern District of Illinois, infra.

Local Rule 81.2 of the Northern District of Illinois ("L.R. 81.2") prescribes the "procedure to be followed in cases where the complaint filed in state court does not, on its face, indicate that the amount in controversy exceeds the jurisdictional amount specified by 28 U.S.C. § 1332(a)." According to L.R. 81.2:

> Where one or more defendants seek to remove an action from an Illinois state court based upon diversity of citizenship, and where the complaint does not contain an express *ad damnum*, as to at least one claim asserted by at least one plaintiff, in an amount exceeding the jurisdictional amount in controversy... the notice of removal shall include in addition to any other matters required by law:
>
> > (1) a statement by each of the defendants previously served in the state court action that it is his, her or its good faith belief that the amount in controversy exceeds the jurisdictional amount; and
> >
> > (2) with respect to at least one plaintiff in the Illinois action, either—
> >
> > > (A) a response by such plaintiff to an interrogatory or interrogatories (see Ill.S.Ct. Rule 213) as to the amount in controversy, either (i) stating that the damages actually sought by that plaintiff exceed the jurisdictional amounts or (ii) declining to agree that the damage award to that plaintiff will in no event exceed the jurisdictional amount; or
> > >
> > > (B) an admission by such plaintiff in response to a request for admissions (*see* Ill.S.Ct. Rule 216(a)), or a showing as to the deemed admission by such plaintiff by reason of plaintiff's failure to serve a timely denial to such a request (*see* Ill.S.Ct. Rule 216(c)), in either event conforming to the statement or declination to agree described in subparagraph (2)(A) of this rule.

L.R. 81.2 further provides that when a defendant does not comply with one of the alternatives described in paragraph (2) above, "the action will be subject to remand to the state court for failure to establish a basis of federal jurisdiction." See, e.g., Murley v. Landmark Pub. Corp., No. 02c50392, 2002 WL 31854979 (N.D.Ill. Dec. 19, 2002) (remanding case to state court for defendant's failure to comply with L.R. 81.2).

8

The record in the instant case indicates that defendants have not complied with either of the alternatives provided in L.R. 81.2(2). Because the original complaint contains only generalized allegations regarding the nature of plaintiff's injuries and does not specify the damages sought by the named plaintiff or any members of the putative class, defendants' failure to obtain an admission or interrogatory response from plaintiff pursuant to L.R. 81.2(2) compels remand to state court. See Allied-Signal, Inc., 985 F.2d at 911 ("[A]ny doubt regarding jurisdiction should be resolved in favor of the states.").

## CONCLUSION

For the reasons stated herein, plaintiff's motion to remand the instant case to the Circuit Court of Cook County, Illinois, is granted.

**ENTER:**    **August 12. 2003**

Robert W. Gettleman
United States District Judge

9

# EXHIBIT I

# United States Court of Appeals

### For the Seventh Circuit

### Chicago, Illinois 60604

#### JUDGMENT - WITH ORAL ARGUMENT

**Date: March 24, 2004**

**BEFORE:**     Honorable WILLIAM J. BAUER, Circuit Judge

Honorable FRANK H. EASTERBROOK, Circuit Judge

Honorable MICHAEL S. KANNE, Circuit Judge

No. 03-3488

JANET RUBEL,

                Plaintiff - Appellee

     v.

PFIZER, INCORPORATED and WARNER-LAMBERT COMPANY,
               Defendants - Appellants

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 03 C 2674, Robert W. Gettleman, Judge

        This appeal is DISMISSED for want of jurisdiction, with costs.
The above is in accordance with the decision of this court entered on
this date.

(1061-110393)





APR 1 6 2004

## In the
## United States Court of Appeals
### For the Seventh Circuit

FILED
APR 1 6 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

No. 03-3488

JANET RUBEL,

*Plaintiff-Appellee,*

*v.*

PFIZER INC and WARNER-LAMBERT COMPANY,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 C 2674—Robert W. Gettleman, *Judge.*

ARGUED FEBRUARY 23, 2004—DECIDED MARCH 24, 2004

Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.*  Janet Rubel filed in state court a complaint alleging that Pfizer and Warner-Lambert had improperly promoted the prescription drug Neurontin for off-label uses (i.e., medical conditions not covered by the Food and Drug Administration's finding that the drug is safe and effective). She sought restitution of the amounts she had paid for the drug, an injunction forbidding future promotion for off-label uses, disgorge-

30

ment of all profits Pfizer had made from these sales, and
punitive damages. Rubel also sought to represent a nation-
al class including everyone who had purchased Neurontin
for off-label uses. Consistent with Illinois practice, the
complaint did not attempt to estimate the amount in
controversy.

Defendants removed the case to federal court under 28
U.S.C. §1441(a), alleging that the district court would have
had original jurisdiction under 28 U.S.C. §1332(a)(1). The
parties are of diverse citizenship (Rubel is a citizen of
Illinois; the defendants are incorporated in Delaware and
have their principal places of business in New York), and
the notice of removal asserted that the amount in con-
troversy exceeds $75,000. That is a plausible position,
quite apart from any doubt about the potential for dis-
gorgement and punitive damages, given this circuit's rule
that the cost to the defendant of complying with an in-
junction counts toward the jurisdictional minimum. See *In
re Brand Name Prescription Drugs Antitrust Litigation*,
123 F.3d 599, 609 (7th Cir. 1997). Sales of Neurontin
exceed $1 billion annually, and an injunction curtailing the
size of the market could be quite costly to the defendants
(though the record does not show what portion of all pre-
scriptions are for off-label uses). But the defendants did
not attempt to quantify the losses to which disgorgement
or an injunction would expose them. Nor did they comply
with the Northern District of Illinois's Local Rule 81.2(a),
which provides:

> Where one or more defendants seek to remove an
> action from an Illinois state court based upon di-
> versity of citizenship, and where the complaint
> does not contain an express *ad damnum*, as to at
> least one claim asserted by at least one plaintiff, in
> an amount exceeding the jurisdictional amount in
> controversy, exclusive of interest and costs, spe-
> cified in 28 U.S.C §1332 (the "jurisdictional

No. 03-3488                                            3

amount") that is based on express allegations in that claim in conformity with that *ad damnum*, the notice of removal shall include in addition to any other matters required by law:

(1) a statement by each of the defendants previously served in the state court action that it is his, her or its good faith belief that the amount in controversy exceeds the jurisdictional amount; and

(2) with respect to at least one plaintiff in the Illinois action, either—

(A) a response by such plaintiff to an interrogatory or interrogatories (*see* Ill.S.Ct. Rule 213) as to the amount in controversy, either (i) stating that the damages actually sought by that plaintiff exceed the jurisdictional amounts or (ii) declining to agree that the damage award to that plaintiff will in no event exceed the jurisdictional amount; or

(B) an admission by such plaintiff in response to a request for admissions (*see* Ill.S.Ct. Rule 216(a)), or a showing as to the deemed admission by such plaintiff by reason of plaintiff's failure to serve a timely denial to such a request (*see* Ill.S.Ct. Rule 216(c)), in either event conforming to the statement or declination to agree described in subparagraph (2)(A) of this rule.

Receipt by the removing defendant or defendants of the response by a plaintiff referred to in subparagraph (2)(A) or of the admission by a plaintiff referred to in paragraph (2)(B), or the occurrence of the event giving rise to a deemed admission by a plaintiff referred to in subparagraph (2)(B) shall

No. 03-3488

> constitute the receipt of a "paper from which it
> may first be ascertained that the case is one which
> is or has become removable" within the meaning of
> 28 U.S.C. §1446(b). Where the defendant or defen-
> dants do not include the statement required by
> paragraph (1) of this rule, or do not comply with
> one of the alternatives described in paragraph (2)
> of this rule, the action will be subject to remand to
> the state court for failure to establish a basis of
> federal jurisdiction.

Although this rule initially requires removing parties to
submit not only the defendants' statement (subsection (1))
but also at least one plaintiff's acknowledgment (subsec-
tion (2)), the final sentence of the trailing unnumbered
paragraph implies that either will suffice. Thus even if no
plaintiff will concede that the stakes exceed $75,000 or
refuse to accept a cap on recovery—neither option is help-
ful when removal is based on the cost to the defendant of
an injunction or other equitable relief—a defendant can
satisfy the rule by supplying "a statement by each of the
defendants . . . that it is his, her or its good faith belief
that the amount in controversy exceeds the jurisdictional
amount". Because neither Pfizer nor Warner-Lambert has
made such a representation—and did not offer any other
evidence about the stakes, such as an affidavit estimating
the cost of an injunction against off-label uses—the district
court found that subject-matter jurisdiction had not been
established and remanded the proceeding to state court.
276 F. Supp. 2d 904, 907-09 (N.D. Ill. 2003).

Pfizer and Warner-Lambert have appealed. Their im-
mediate problem is 28 U.S.C. §1447(d), which provides:
"An order remanding a case to the State court from which
it was removed is not reviewable on appeal or otherwise".
The Supreme Court has been unwilling to take this lan-
guage literally. A series of cases beginning with *Thermtron
Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976), and

culminating in *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995), had produced this conclusion:

> §1447(d) must be read *in pari materia* with §1447(c), so that only remands based on grounds specified in §1447(c) are immune from review under §1447(d). As long as a district court's remand is based on a timely raised defect in removal procedure or on lack of subject-matter jurisdiction— the grounds for remand recognized by §1447(c)—a court of appeals lacks jurisdiction to entertain an appeal of the remand order under §1447(d).

516 U.S. at 127-28 (citation omitted). Pfizer and Warner-Lambert observe that Local Rule 81.2(a) is not among the grounds specified in §1447(c) and contend that we therefore may entertain an appeal that questions the rule's validity and application.

The problem with this position is that the district court did not remand the proceeding as a sanction for failure to comply with a local rule. Judge Gettleman, no less than the defendants, knows that §1447(c) does not mention local rules. Local Rule 81.2(a) itself says that the remand is "for failure to establish a basis of federal jurisdiction." The rule is designed to elicit information that will enable the district court to determine whether the amount in controversy exceeds the jurisdictional minimum. If the removing party does not supply vital information, then a remand follows—because it is the defendant, as the proponent of federal jurisdiction, who bears the risk of nonpersuasion. When the papers filed in the district court do not establish subject-matter jurisdiction, remand is obligatory; and appellate review of a remand based on the lack of federal jurisdiction is securely blocked by §1447(d). See, e.g., *Gravitt v. Southwestern Bell Telephone Co.*, 430 U.S. 723 (1977), in addition to the language we have quoted from *Things Remembered*. See also *Adkins v. Illinois Central R.R.*, 326 F.3d 828 (7th Cir. 2003).

What appellants want us to do is look past the ultimate
ground (lack of jurisdiction) to the reasoning behind it.
They contend that if the line of reasoning is not *itself*
mentioned in §1447(c), then §1447(d) may be disregarded.
That contention is one we have entertained, and spurned,
before. See *Phoenix Container, L.P. v. Sokoloff*, 235 F.3d
352 (7th Cir. 2000). As we observed there, no part of the
Judicial Code is self-contained. All depend for their oper-
ation on assumptions about how the legal system works. A
statute saying "remand when jurisdiction does not exist"
presumes that the court has a means to determine juris-
dictional facts. Local Rule 81.2(a) is one such mechanism;
Fed. R. Civ. P. 12(b)(1) is another, and no more mentioned
in §1447 than is Local Rule 81.2. If we could look past the
conclusion (no jurisdiction) to the procedures behind it,
the norm of §1447(d) would evaporate. If, for example, the
district judge had held a hearing under Rule 12(b)(1),
accepted evidentiary submissions of all kinds (not just
those listed in Local Rule 81.2), found that the stakes are
less than $75,000, and remanded for lack of jurisdiction,
by appellants' reasoning an appeal would lie from that de-
cision. They would say something like: "We are not con-
testing the judge's understanding of federal jurisdiction
but instead we seek review of clearly erroneous finding of
fact." That sort of reasoning would nullify §1447(d). We
rejected it in *Phoenix Container* and reject it again today.
Appellate courts review judgments, not opinions. If the
judgment is one remanding for lack of jurisdiction, the
reasoning in the opinion is not independently reviewable.
(Appellants do not contend that the ostensible ground is
other than the real one; instead they challenge the reason-
ing behind the actual ground. We need not decide whether
appellate review would be available if a judge dissembled
about the reason, slapping a "no jurisdiction" label on a
remand based on, say, a belief that federal judges ought
not hear tort suits.)

If a district judge were to construe Local Rule 81.2(a) in a way that conditioned removal on plaintiff's acknowledgment that the stakes exceed $75,000—*i.e.*, if the court were to understand the rule to require defendants to satisfy both subsection (1) and subsection (2)—that would call its validity into serious question. Removal is proper if the defendant's estimate of the stakes is plausible; plaintiffs can't prevent removal by refusing to concede that the controversy exceeds the jurisdictional minimum or by insisting that injunctions do not count toward the amount in controversy. See *The Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203 (7th Cir. 1997); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir. 1993). Because all local rules must be consistent with federal statutes, see 28 U.S.C. §2071(a), Fed. R. Civ. P. 83(a)(1), a rule blocking the defendants from making an independent estimate of the amount in controversy, or from relying on the costs of equitable relief, could not be enforced. But the district court did not use Local Rule 81.2(a) in that fashion—and, even if it had done so, appeal would not be a remedy given §1447(d). Pfizer and Warner-Lambert can ask the Supreme Court of the United States for review if they are ultimately unsuccessful in state court. In the meantime, the validity of Local Rule 81.2 may come before this court in some other case in which the judge declines to remand and enters judgment on the merits adverse to plaintiff, who argues on appeal that the case should have been litigated in state court. The validity of Local Rule 81.2 also could be considered by the Judicial Council of this circuit. See 28 U.S.C. §2071(c)(1). Although the Northern District of Illinois promulgated Local Rule 81.2 in 1997, it did not then comply with §2071(d) by presenting the new rule to the Council for review. It did include Local Rule 81.2 in a package of rules submitted to the Council in September 1999. Although the Circuit Executive asked the Northern District for further information on May 15, 2000,

8                                                    No. 03-3488

that court never responded, so the validity of this rule has
yet to be evaluated by the Judicial Council. None of these
considerations affects appellate jurisdiction, however, so
although some questions about Local Rule 81.2 remain
unanswered, this appeal is

DISMISSED FOR WANT OF JURISDICTION.

A true Copy:

Teste:

*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—3-24-04