# EXHIBIT J



# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF ILLINOIS
**750 Missouri Avenue**
**P. O. Box 249**
**East St. Louis, IL 62202**
**618/482-9371**

Norbert G. Jaworski
Clerk of Court

**October 21, 2004**

Clerk of the Circuit Court
Madison County
155 N. Main St., Suite 120
Edwardsville, IL   62025

RE:   Chiappa Burgess v. Pfizer Inc et al
        District Court No. 04-cv-00479-GPM
        State Court No. 04-L-572

        Enclosed is a certified copy of the Minute Entry for proceedings held before Chief Judge
G. Patrick Murphy  filed 10/18/04 remanding the above mentioned cause to your Court.

        Please acknowledge receipt of the Minute Entry  by returning a signed copy of this letter to
the undersigned at the office indicated above.

                                Very truly yours,

                                NORBERT G. JAWORSKI, Clerk


                                By: s/Julie Sante_____
                                    Julie Sante, Deputy Clerk

Enclosure
Copy to counsel of record


                                Received by _____

                                Date_____


CV-11
(6/99)

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| CAROL LEE CHIAPPA BURGESS,<br>individually and on behalf of all others<br>similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>PFIZER INC, and WARNER-<br>LAMBERT COMPANY,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    CASE NO. 04-479-GPM<br>)    Hon. G. Patrick Murphy<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

The central issue in this action is a federal question: whether defendants Pfizer Inc and Warner-Lambert Company engaged in "off-label promotion" of the prescription drug Neurontin in violation of the Food, Drug and Cosmetic Act (FDCA) and regulation of the Food and Drug Administration (FDA).

Having alleged in her Complaint that federal laws and regulations provide the underpinning to her claims for relief, plaintiff cannot now retreat from those allegations in her motion to remand. Whether Defendants' alleged conduct constitutes improper "off-label" promotion – as defined by the FDCA and FDA regulations – is a matter of federal law. In light of the centrality of federal law to plaintiff's claims, the allegations of the Complaint fall squarely within this Court's federal-question jurisdiction. Indeed, Defendants' alleged "off-label" promotion is precisely what plaintiff seeks to redress in this action.

In an attempt to avoid a federal forum, plaintiff posits that marketing behavior which violates the FDCA and FDA regulations is a fraudulent practice under state law *because* it violates federal law. Specifically, plaintiff's alleged financial injury stems from her claimed purchase of Neurontin to treat conditions without knowledge that the drug was prescribed, or marketed, for "off-label" uses in violation of federal law. Moreover, plaintiff's claim allegedly arose when she purchased Neurontin to treat conditions for "off-label" uses in violation of federal law. This claim satisfies the federal subject-matter jurisdiction requirement and Plaintiff's motion for remand should be denied.

## BACKGROUND

On July 12, 2004, Defendants removed this action from the Circuit Court of Madison County, Illinois, pursuant to 28 U.S.C. § 1446(a). The notice of removal stated the grounds for jurisdiction based on the allegations in plaintiff's Complaint, which alleges that Defendants marketed and promoted the drug Gabapentin under the brand name Neurontin in violation of the "food and drug laws of the United States." (Compl. ¶ 6).

Plaintiff asserts that, in 1994, Defendants obtained FDA approval to market and promote Neurontin. (Compl. ¶ 11) The FDA approved Neurontin "for use as an adjunct to standard antiepileptic drugs in adults, in dosages of 900 to 1800 mg/d" and "has not approved" the use of Neurontin "for any other purpose." (*Id.*). The FDA's approval of Neurontin as adjunctive therapy for epilepsy, plaintiff claims, thereby limited the drug's marketing and promotion for "off-label" uses: for example, as a treatment for bipolar disorder, pain syndromes

2

and other uses that were not "FDA approved." (Compl. ¶ 16)  In short, the Complaint alleges that the FDA did not recognize Neurontin as a medically acceptable drug for "off-label" uses, and that such uses violate the FDCA.

Plaintiff further complains that Defendants constructed a national marketing plan that violated a "federal statute" – the FDCA – and the "food and drug laws of the United States." (Compl. ¶ 18)  Specifically, plaintiff alleges that Defendants formed a "scheme" to avoid the limitations imposed by the FDA in order to market Neurontin for various "off-label" uses.  (Compl. ¶ 14)  In so doing, Defendants allegedly misrepresented the intended and approved uses of Neurontin through a nationwide network of employees and "medical liaisons" hired to solicit physicians and encourage them to prescribe Neurontin for "off-label" uses in violation of the FDCA and FDA regulations; paid physicians to lend their names to articles in medical journals regarding "off-label" uses in violation of the FDCA and FDA regulations; and engaged in the "systematic avoidance of filing requirements with the FDA," the "deliberate avoidance of" FDA regulations, "the use of active concealment to avoid the FDA's enforcement mechanisms," and illegal "kickbacks" to physicians who prescribed Neurontin. (Compl. ¶15)  Plaintiffs also allege that Defendants "actively concealed" this violation of "the food and drug laws" from the FDA, in violation of the FDCA and FDA regulations. (Compl. ¶ 18).

Plaintiff herself states that her physician prescribed Neurontin for one of these "unapproved uses" in  violation of federal law. (Compl. ¶ 22)  On this basis, plaintiff claims that Defendants' alleged conduct violates the Illinois Consumer

3

Fraud And Deceptive Business Practices Act, 818 ILCS § 502/2, and "consumer protection statutes throughout the country," (Compl. ¶ 47) and asks the Court to certify a class of "all persons who purchased Neurontin who did not have the condition (epilepsy or postherpetic neuralgia) for which Neurontin had been approved by the FDA." (Compl. ¶ 25) In other words, the sole condition for class membership is the purchase of Neurontin for "off -label" uses in violation of the FDCA and FDA regulations.

## ARGUMENT

Removal of this action is proper under the substantial federal question doctrine. Despite plaintiff's protestation s to the contrary, her Complaint makes it clear that the adjudication of this matter will necessarily require the resolution of substantial questions of federal law. This is because the unfair practice on which this action is premised is the alleged promotion of Neurontin in violation of federal laws and regulations prohibiting off-label promotion.[1] Any relief for Plaintiff under her state law claims is dependent upon proving that Defendants engaged in "off-label" promotion of a prescription drug in viola tion of the FDCA and FDA regulations. This is not a case where the federal law is tangentially related to state law claims or where the federal interest is minimal. Instead, a substantial federal question lies at the heart of this action, and the regulation of

---

[1]Plaintiff alleges violations of the Illinois Consumer Fraud Act. To the extent that the substantial federal question doctrine does not extend to a particular claim, which Defendants do not concede, this Court nonetheless has supplemental jurisdiction over such claim or claims pursuant to 28 U.S.C. § 1367. *See also City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 165 (1997) (concluding that once a case was removed for federal question jurisdiction under the substantial federal question doctrine, the District Court "could exercise supplemental jurisdiction over the accompanying state law claims so long as those claims 'constitute ... other claims that . . . form part of the same case or controversy.'" (citation omitted)).

4

prescription drug marketing is a matter of ongoing, intense federal interest. Thus, Defendants properly removed this action. Plaintiff's attempts to remand this action back to the state court should be denied.

### A.   The Complaint Raises a Federal Question On Its Face.

The Complaint explicitly demonstrates that plaintiff's right to relief under her state law claims turns on whether Defendants violated federal statutes and regulations governing pharmaceutical promotion.  The opening paragraphs of plaintiff's motion to remand further confirms that her allegations against Defendants turn squarely on interpretation of the FDCA and that her claims rise and fall on federal law, specifically calling for inquiry into "the FDA approval process" and "off label uses " of Neurontin, which plaintiff defines as "uses for which the drug was not FDA approved." (Pls. Mem. at 2)  Because plaintiff's response confirms the need for the Court to assess the FDCA and FDA regulations in evaluating her state law claim, there is a substantial federal question here.

The Complaint places questions concerning the FDCA and FDA regulations at the center of this case, thereby belying plaintiff's denial of reliance on federal law.[2]  Plaintiff asserts that Defendants' alleged off -label marketing "scheme" was intended to circumvent the process of "petitioning the FDA," as

---

[2] For example, the FDCA charges the FDA with the duty to ensure that "drugs are safe and effective." 21 U.S.C. § 393(b)(2)(B).  In addition, the FDA regulates includes "all written, printed, or graphic matter" marketing drugs. 21 C.F.R. § 1.3(a).  Finally, the FDA has set forth detailed requirements for the contents of advertising for prescription drugs, and all drug advertisements must be submitted to the FDA and be consistent with the drug label or any changes to that label. *See* 21 U.S.C. § 321(m)(1)-(2); 21 C.F.R. § § 202, 203, 214.550, 314.70(c) & 314.81 (b)(3).

well as to avoid "filing requirements with the FDA" and "the FDA's enforcement mechanisms." (Compl. ¶ 14-15).

Plaintiff's claim under the Illinois Consumer Fraud Act undeniably raises a substantial federal question because the "fraud" and "unfair practices" that plaintiff alleges here are Defendants' supposed violation of federal law: the FDCA and FDA regulations. *First*, each of the elements of Defendants' alleged violations of the Illinois Consumer Fraud Act calls for the interpretation of federal law. Plaintiff claims that Defendants' alleged "misrepresentation" was the "promotion of off-label usage" of Neurontin in violation of the FDCA and FDA regulations. (Compl. ¶¶ 39-40)   And plaintiff claims that Defendants sold Neurontin for off-label uses with knowledge that Neurontin "was not approved" for such uses by the FDA.   (Compl. ¶ 41)   *Second*, plaintiff claims that Defendants' sale of Neurontin constitutes "unfair conduct" because they sold Neurontin for "off-label uses" not "approved by the FDA." (Compl. ¶¶ 44-45). In short, plaintiff claims that Defendants violated the Consumer Fraud Act because they violated a federal statute.  This claim clearly raises a substantial federal question.

Tellingly, the allegations of plaintiff's Complaint concerning class certification also turn *solely* on plaintiff's assertions concerning the FDCA.  The only condition for membership in plaintiff's proposed nationwide class is purchase of Neurontin for purposes not "approved by the FDA." (Compl. ¶ 25) Moreover, the "common questions of law or fact" which plaintiff cites support of

6

certifying this nationwide class call upon the Court to determine the meaning of 'Unapproved Uses" of Neuron tin as defined by federal law.  (Compl. ¶ 28).

Plaintiff's self-serving denial of reliance on federal law is undermined by her own allegations, which put questions of federal law squarely at the center of this case.  At bottom, plaintiff's claim is an FDCA violation dressed up as a state law consumer fraud claim.

### B.  The Substantial Federal Question Here Precludes Remand

Where a plaintiff's state-law claim presents a substantial federal question, – as it does here – the action is deemed to 'arise under" federal law for purposes of establishing federal question jurisdiction.  *City of Chicago* 522 U.S. at 164; *Franchise Tax Bd. v. Constr. Laborers Vacation Trust Co.*, 463 U.S. 1, 13 (1983); *see also Smith v. Kan. City Title & Trust Co.*, 255 U.S. 180, 199 (1921) ("The general rule is that, where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States ... the District Court has jurisdiction").  A plaintiff may not 'avoid federal jurisdiction by omitting from his complaint federal law essential to his or her claim, or by casting in state law language a claim that can be made only under federal law."  *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212 (6th Cir. 1999).

A long line of Supreme Court precedent has established the doctrine of substantial federal question jurisdiction.  *See City of Chicago*, 522 U.S. at 164; *Franchise Tax Bd.*, 463 U.S. at 13;  *Smith*, 255 U.S. at 199.  Under the substantial federal question doctrine, '[e]ven though state law creates [Plaintiff's] causes of

7

action, [her] case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13.[3] In other words, such a case is one that "poses what Justice Frankfurter called the litigation-provoking problem – the presence of a federal issue in a state-created cause of action." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 809-10 (1986).

In its most recent pronouncement on the substantial federal question doctrine, the Supreme Court affirmed the fundamental principle that federal jurisdiction may exist when the federal claims at issue "were raised by way of a cause of action created by state law." *City of Chicago*, 522 U.S. at 164. In that case, the Court held that a federal forum was proper where the necessity of evaluating federal constitutional issues satisfied the substantial federal question requirement. In reaching this holding, the Court explained and reaffirmed the district judge's duty to examine a plaintiff's complaint to determine whether a party's "right to relief under state law requires resolution of a substantial question of federal law." *Id.* Similarly, in this case, because a resolution of plaintiff's state law claim leads inescapably to an interpretation of federal law regarding

---

[3] Recently, the Supreme Court stated that "a state claim may be removed to federal court in only two circumstances – when Congress expressly so provides ... or when a federal statute wholly displaces the state law cause of action through complete preemption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003). The Court's discussion, however, was limited to instances in which the defendant has removed in reliance on the well-pleaded complaint doctrine. *Id.* The Court did not discuss the applicability of this holding to cases, such as this one, where the substantial federal question exception to the well-pleaded complaint rule applies.

8

plaintiff's alleged "off-label" marketing of Neurontin, this court has subject-matter jurisdiction.

Another case where the presence of a federal issue in a state created cause of action resulted in federal subject matter jurisdiction was recently decided by the Second Circuit. *See D'Alessio v. N.Y. Stock Exch.*, 258 F.3d 93 (2d Cir 2001). In *D'Alessio*, the plaintiff, a stockbroker, sued the New York Stock Exchange in state court on a variety of state tort theories, alleging that the Exchange had intentionally provided him with incorrect interpretations of federal law prohibiting unlawful trading, in violation of the Exchange's obligations under federal securities laws. *Id.* at 96. The case was removed to federal court and eventually dismissed. *Id.* On review, the Second Circuit determined that removal had been proper, because the "resolution of [plaintiff's] claims requires a court to construe federal securities laws and evaluate the scope of the NYSE's duties, as defined under" federal law. *Id.* at 101-02; *see also id.* at 103 (removal proper where "[t]he source of the duty imposed on" defendant "is found in federal law" and "prescribed under federal law"). [4]

Like the allegations in *D'Alessio*, plaintiff's allegations in this case are "rooted in violations of federal law." *Id.* at 101. Plaintiff's core claim that

---

[4] *See also Frayler v. N.Y. Stock Exch.*, 118 F. Supp. 2d 448, 450 (S.D.N.Y. 2000) ("the federal issue [here] is decisive because upon [the federal statute's] construction [depends] the vindication of rights and definition of relationships' at the heart of the lawsuit.") (alterations original) (citations omitted). Courts also consider the nature of the federal interest in making jurisdictional decisions. *Id.* at 451 (finding that the regulation of the nation's securities markets were "a matter of intense federal concern"); *see also Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) ("[w]here the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts.").

Defendants violated the FDCA and FDA regulations by marketing Neurontin for off-label uses is indistinguishable, for jurisdictional purposes, from D'Alessio's core claim that the New York Stock Exchange violated the federal securities laws. Here, as in *D'Alessio*, 'it is the propriety of' Defendants' conduct 'as proscribed under federal law" that lies 'at the heart" of the Complaint's allegations.   *Id.* at 103.   In such cases, federal courts have repeatedly found that federal question jurisdiction exists over removed actions asserting state law claims.   *See, e.g., Ormet Corp.* 98 F.3d at 806-07 (holding federal jurisdiction was proper); *accord Marcus v. AT&T Corp.*, 138 F.3d 46, 55-56 (2d Cir. 1998) (approving denial of motion to remand where plaintiffs' breach of warranty claim under state law necessarily raised a substantial federal question, because defendant's contractual obligations were set by a tariff filed with the Federal Communications Commission); *Sable v. Gen. Motors Corp.*, 90 F.3d 171, 175 (6th Cir. 1996) ('Since plaintiff is pursuing a state law claim for circumstances created by [a] federal consent agreement, plaintiff's claims arise under federal law. Thus the District Court did not err in denying plaintiff' s motion to remand to state court.").

Courts also consider the nature of the federal interest in making jurisdictional decisions. *See Frayler*, 118 F. Supp. 2d at 450 (federal issue is 'decisive" where 'the vindication of rights and d efinition of relationships at the heart of the lawsuit" depends upon construction of a federal statute); *Id.* at 451 (finding that the regulation of the nation's securities markets were 'a matter of intense federal concern"); *see also Ormet Corp.*, 98 F.3d at 807 ('[w]here the resolution of a federal issue in a state-law cause of action could, because of

10

different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts."). Here, the federal interest at issue, namely the enforcement of the FDCA and the regulation of the FDA, is a "matter of intense federal concern" such that a federal forum is appropriate.

Although plaintiff's Complaint raises a substantial federal question, she nonetheless seeks remand to state court by mechanistically relying on the well-pleaded complaint rule and emphasizing that as "master of [his] claim" she may "avoid federal jurisdiction by exclusive reliance on state law." (Pls. Mem. at 4 (citations omitted)). Plaintiff's effort to avoid federal jurisdiction, however, fails. The holding of *Franchise Tax Board* makes this clear:

> Although we have often repeated that 'the party who brings a suit is master to decide what law he will rely upon,' **it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint . . . .**

463 U.S. 1, 22 (citations omitted) (emphasis added); *see also In re Otter Tail Power Co.*, 116 F.3d 1207, 1213 (8th Cir. 1997) ("A plaintiff's characterization of a claim as based solely on state law is not dispositive of whether federal question jurisdiction exists"). Here, because plaintiff's claims require the Court to construe the nature and reach of the FDCA and FDA regulations, this Court's jurisdictional requirements are satisfied.

Plaintiff also argues that the principles of *Franchise Tax Board* are no longer applicable given the Supreme Court's holding in *Merrell Dow*, 478 U.S.

11

804 (finding that Congress' decision to not provide for a private cause of action for violations of the FDCA meant that the federal issue alleging violation of an FDCA standard was perforce insubstantial.).[5] This argument is misplaced. First, to read *Merrell Dow* with the formalism that Plaintiff suggests is to fail to appreciate the circumstances of that case. In that case, the plaintiff relied on the violation of a federal guideline to establish a rebuttable presumption and thereby fulfill an element in a common law negligence claim. *See Merrell Dow*, 478 U.S. at 806. Combined with the fact that the FDCA provided no private right of action, the peripheral nature of the federal issue was deemed too insubstantial to merit federal jurisdiction. *See Merrell Dow*, 478 U.S. at 814. But unlike *Merrell Dow*, the federal question here is not simply threshold and serves a far more significant role than providing a mere element of a negligence claim. Instead, Plaintiff has asserted a claim under the Consumer Fraud Act whereby a violation of federal law is, allegedly, an unfair consumer practice actionable under state law.

In an unavailing effort to counter her substantial reliance on federal law, plaintiff argues that she may recover on her claims "without any reference to the FDCA or FDA regulations." (Pls. Mem. at 8) But this assertion only serves to acknowledge that such reliance on violations of the FDCA would, in fact, raise a substantial federal question. More importantly, plaintiff's attempt to disclaim that

---

[5] That this is so in every case alleging a violation of federal law where no private cause of action exists is dubious in light of a more recent case where the Court identified the substantial federal issue as stemming from a constitutional violation. As the Court noted, the vindication of that constitutional right would require the bringing of an action under section 1983. *See City of Chicago*, 522 U.S. at 167.

12

federal law is central to her claims starkly underscores the absence of any factual allegations in the Complaint that Defendants' conduct was in violation of any statutory or common law duty other than those established by federal law. Plaintiff has not, and indeed cannot, plead that Defendants made false statements or that there was no valid scientific evidence as to the efficacy of Neurontin *without* reference to federal law. That is because federal law governs the content of representations or claims made by pharmaceutical manufacturers, including scientific statements and information provided on prescription drug labels. Indeed, the paragraphs of her Complaint to which plaintiff now points in order to disclaim reliance on federal law reveal that by her own framing of the issues, Defendants' conduct is allegedly unlawful only when viewed in light of federal law. (Compl. ¶¶ 13, 15(d)). Her Complaint cannot be divorced from its extensive reliance on federal law, and any determination of Plaintiff's claims similarly requires an interpretation of the thicket of FDA regulations that govern the marketing of prescription drugs. Accordingly, this action raises a substantial federal question and is properly removed.

Second, contrary to Plaintiff's contentions, the absence of a private right of action does not bar federal jurisdiction under the substantial federal question doctrine. As the *Merrell Dow* Court pointed out, federal jurisdiction is not subject to an "automatic test," but rather demands "practicality and necessity" and a "common-sense accommodation of judgment to kaleidoscopic situations" when construing the jurisdictional statute. *See* 478 U.S. 811-12, 813-14 (citing

13

*Franchise Tax Bd.*, 463 U.S. 1, and *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 117-18 (1936)).

A number of courts have followed this guidance and found jurisdiction over state law claims that implicate a federal interest but where a private right of action is lacking. *See Ormet Corp.* 98 F.3d at 806-807; *see also, e.g., Milan Express Co. v. W. Surety Co.*, 886 F.2d 783, 787, 789 (6th Cir. 1989) (distinguishing *Merrell Dow*); *West 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987) (even without a private cause of action under federal law "we conclude that the federal element in plaintiffs' state cause of action would still be sufficiently substantial to confer arising under jurisdiction."); *Regents of the Univ. of Minn. v. GlaxoWellcome, Inc.*, 58 F. Supp. 2d 1036, 1038 (D. Minn. 1999) ("[F]ederal courts have exclusive jurisdiction over state law causes of action in which a substantial question of federal . . . law is pleaded"); *accord Marcus*, 38 F.3d at 55-56 (approving denial of motion to remand where plaintiffs' breach of warranty claim under state law necessarily raised a substantial federal question, because defendant's contractual obligations were set by a tariff filed with the Federal Communications Commission). And one court found:

> In *Merrell Dow*, the Supreme Court reasoned that there is no federal question under the "well-pleaded complaint" rule when Congress declined to create a private right of action based on a violation of that federal standard when it enacted the underlying statute. In this case, the defendants have not contended that there are any private rights of action under the various statues which allegedly give the defendants rights in the plaintiffs= land. Instead, the defendants have argued that the state

14

> law claims all involve **substantial federal issues.**
> **Thus, the reasoning that applied in** *Merrell Dow*
> **is not applicable here.**

*Drawhorn v. Quest Comm. Int'l, Inc.*, 121 F. Supp. 2d 554, 560 n. 6 (E.D. Tex. 2000)

(emphasis added).  In light of this precedent, as well as the *Merrell Dow* Court's own

guidance that substantial federal question jurisdiction demands a flexible analysis,

plaintiff's assertion that the lack of a private right of action precludes jurisdiction here is

mistaken.[6]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court

deny Plaintiff's Motion for Remand.

---

[6] Plaintiff also cites to *Rubel v. Pfizer Inc.*, 276 F. Supp. 2d 904 (N.D. Ill. 2003) in
support of her motion.  While the *Rubel* court relied on the absence of a private right of action
under the FDCA in finding that the federal issue present in that case was too insubstantial to merit
removal, the lack of a private right of action is not dispositive in determining whether federal
question jurisdiction exists, and, where, as here, the federal issue is so central, absence of a private
right of action does not necessitate remand.

15

Dated:  September 3, 2004

Respectfully Submitted,

_____

Joseph R. Brown, Jr.
LUCCO & BROWN
P.O.  Box 539
Edwardsville, Illinois 62025
(618) 656-2321 (tel)
(618) 656-2363 (fax)

Alexander Dimitrief, P.C.
Robert B. Ellis
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000 (tel)
(312) 861-2200 (fax)

*Of Counsel*

James P. Rouhandeh
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450 4000 (tel.)
(212) 450 3800 (fax)

*Attorneys for Defendants
Pfizer Inc and Warner-
Lambert Company.*

16

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

CAROL LEE CHIAPPA BURGESS,　　　)
individually and on behalf of all others　)
similarly situated,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　)　CASE NO. 04-479-GPM
v.　　　　　　　　　　　　　　　　)　Hon. G. Patrick Murphy
　　　　　　　　　　　　　　　　　)
PFIZER INC., and WARNER-　　　　　)
LAMBERT COMPANY,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)

### Certificate of Service

I hereby certify that on September 3, 2004, I electronically filed

Defendants'  Opposition to Plaintiff  s Motion to Remand with the

Clerk of Court using the CM/ECF system which will send notification

of such filings(s) to the following:

Aaron Dickey　　　Aaron@gmhalaw.com,

Robert B. Ellis　　　rellis@kirkland.com

Robert D. Rowland　　　rrowland@gmhalaw.com

and I hereby certify that on September 3, 2004, I mailed by United

States Postal Service, the documents(s) to the following non-

registered participants:

Alexander Dimitrief and James Rouhandeh.

17

Respectfully submitted,
JOSEPH R. BROWN, JR.
224 St. Louis Street
P.O. Box 539
Edwardsville, IL  62025
Phone: (618)656-2321
Fax: (618)656-2363
E-mail: jbrown@lbmlaw.com
#00316253

18

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

## NOTICE OF ERRORS AND/OR DEFICIENCIES
## IN ELECTRONICALLY FILED DOCUMENTS

DATE:  09/07/04

CASE NO. : 04-cv-00479-GPM                    CASE NAME: Chiappa Burgess v. Pfizer
Inc et al

DOCUMENT NO.: 19          DOCUMENT TITLE:          RESPONSE in Opposition re
                                                  12 MOTION to Remand filed
                                                  by Pfizer Inc, Warner-
                                                  Lambert Company.


One of the following errors/deficiencies has been identified in the document listed above:

☐    Document entered in wrong case
☐    Document linked incorrectly
☐    Incorrect document type selected (PDF and event do not match)
☐    Certificate of Service is missing
X    Other: Document is not signed

### ACTION TAKEN BY CLERK'S OFFICE

☐    Docket entry "STRICKEN" as ordered by the Court
☐    Docket entry corrected
X    Other: INFORMATIONAL PURPOSES ONLY - For future filings please be sure both
     Document AND Certificate of Service are signed.

### ACTION REQUIRED BY FILER

X    NO FURTHER ACTION REQUIRED BY FILER


                                        Norbert G. Jaworski
                                        Clerk of Court


                                        By: s/Julie Sante, Deputy Clerk

# EXHIBIT K

**MDL1629**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 1 4 2004

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

- - - - - - - - - - - - - - - - - - - - - x
                                          :
IN RE NEURONTIN MARKETING AND      :    MDL DOCKET NO: 1629
SALES PRACTICES LITIGATION            :
                                          :
- - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' CONSOLIDATED RESPONSE TO PENDING
MOTIONS TO TRANSFER AND DEFENDANTS' CROSS-
MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the

Judicial Panel on Multidistrict Litigation, Defendants Pfizer Inc ("Pfizer"), Warner-

Lambert Company ("Warner-Lambert"), and Parke-Davis ("Parke-Davis"), a division of

Warner-Lambert (collectively, the "Defendants"), respectfully move the Judicial Panel on

Multidistrict Litigation (the "Panel") for an order to transfer and consolidate the actions

listed in the attached Schedule of Actions Involved, attached hereto, to the United States

District Court for the Southern District of New York for coordinated or consolidated

pretrial proceedings.  In addition, Defendants submit this consolidated response to the

two motions[1] to transfer, captioned "In re Neurontin Marketing and Sales Practices

Litigation" (MDL Docket No. 1629).

RECEIVED
CLERK'S OFFICE

2004 JUL 12  A 11: 4

...AL PANEL ON
ULTIDISTRICT
LITIGATION

---

[1] There are two pending Motions to Transfer filed by certain plaintiffs.  The first was filed on June 3, 2004 by plaintiffs ASEA/AFSCME Local 52 Health Benefits Trust ("ASEA Motion").  The underlying case is pending before the District Court of New Jersey.  The second was filed on June 10, 2004 by plaintiff Emma Christina ("Christina Motion").  The underlying case is pending before the Eastern District of Louisiana.

**OFFICIAL FILE COPY**

IMAGED  JUL 1 5 '04

PLEADING NO. 57

## I.    DEFENDANTS' CROSS-MOTION

In support of transfer and consolidation under 28 U.S.C. § 1407 and Panel Rule 7.2, and as set forth more fully in Defendants' accompanying Memorandum, Defendants state as follows:

1.    Defendant Pfizer Inc ("Pfizer") currently manufactures and sells Neurontin. In 2000, Pfizer acquired Defendant Warner-Lambert Company ("Warner-Lambert"), which previously manufactured and sold Neurontin through its Parke-Davis Division ("Parke-Davis"). Pfizer is incorporated in Delaware and has its principal place of business in New York, New York. Warner-Lambert was incorporated in Delaware and had its principal place of business in Morris Plains, New Jersey.

2.    Twenty seven lawsuits (the "Neurontin Marketing Actions") have been filed in sixteen different districts. All actions arise out of a common core of factual allegations relating to the marketing of Neurontin.

3.    Transfer of the lawsuits to a single judicial district for coordinated or consolidated pretrial proceedings will promote the just and efficient conduct of the actions and would serve the interests of the vast majority of parties and witnesses.

4.    The Southern District of New York is the only appropriate transferee forum for the transfer of the Neurontin Marketing Actions. Pfizer Inc, which acquired Warner-Lambert Company, including its Parke-Davis Division, in June 2000, is essentially the sole defendant and is headquartered in New York. Most of the potential witnesses and the vast majority of the potentially relevant documents are located in New York. Additionally, the Southern District of New York is centrally located and easily

2

accessible.  An assignment of the Neurontin Marketing Actions to the Southern District

of New York would thus promote judicial efficiency and insure consistency among

pretrial rulings relating to discovery and class certification.

WHEREFORE, Defendants respectfully request entry of an order pursuant to 28

U.S.C. § 1407 transferring the Neurontin Marketing Actions to the United States District

Court of the Southern District of New York for consolidated pretrial proceedings.

**II.    DEFENDANTS' RESPONSE TO THE FACTUAL AVERMENTS
CONTAINED IN THE MOVING PLAINTIFFS' MOTIONS**

Pursuant to J.P.M.L Rule 7.1(b), Defendants respond to the factual averments

contained in the ASEA Motion and Christina Motion as follows:

**A.    Response to the ASEA Motion**

1.    Deny knowledge or information sufficient to admit or deny the

allegations in paragraph 1 of the ASEA Motion except admit that Plaintiff's complaint

purports to represent a class of consumers and third-party payers who purchased the drug

Neurontin to treat conditions for which it did not have approval from the FDA.

2.    Admit the allegations in paragraph 2 of the ASEA Motion.

3.    Deny the allegations in paragraph 3 of the ASEA Motion.

4.    Admit the allegations in paragraph 4 of the ASEA Motion, except

deny that the four lawsuits filed in the District of Massachusetts allege identical claims.

5.    Admit the allegations in paragraph 5 of the ASEA Motion.

6.    Admit the allegations in paragraph 6 of the ASEA Motion.

7.    Deny the allegations in paragraph 7 of the ASEA Motion.

8.  Respondents incorporate herein by reference their "Memorandum of Law in Support of Defendants' Consolidated Response to Pending Motions to Transfer and in Support of Cross-Motion to Transfer Pursuant to 28 U.S.C. § 1407."

**B.   Response to the Christina Motion**

1.  Deny the allegations in paragraph 1 of the Christina Motion.

2.  Admit the allegations in paragraph 2 of the Christina Motion to the extent that Neurontin was approved for use in the adjunctive treatment of epilepsy in 1993, and was approved for use in the treatment of post-herpetic neuralgia in 2002.

3.  Admit the allegations in paragraph 3 of the Christina Motion to the extent that the Food, Drug and Cosmetic Act, and accompanying regulations, govern the advertising and labeling of drugs approved by the FDA. Defendants also admit that any use of a drug for purposes other than those approved by the FDA is known as "off-label" use.

4.  Deny the allegations in paragraph 4 of the Christina Motion. In May 2004 Warner-Lambert Company LLC, not Pfizer Inc, agreed to plead guilty to two counts under the Federal Food Drug & Cosmetic Act (FDCA) for misdemeanor conduct that occurred prior to the end of August 1996. Warner-Lambert Company LLC did not plead guilty to fraud. Warner-Lambert Company LLC agreed to pay a $240 million fine, and an additional $190 million was paid as part of a civil settlement without any admission of liability to various parties including the Federal and State Medicaid programs and the State Attorneys General.

5.  Deny the allegations in paragraph 5 of the Christina Motion.

4

6.     Admit the allegations in paragraph 6 of the Christina Motion.

7.     Deny the allegations in paragraph 7 of the Christina Motion except admit that litigation involving potential patent and antitrust issues is pending under the caption and in the court identified in paragraph 7.

8.     Deny the allegations in paragraph 8 of the Christina Motion, except admit that the factual and legal issues involved in In re Neurontin Antitrust Litigation (MDL. No. 1479) are different from the factual and legal issues relating to the Neurontin Marketing Actions.

9.     Deny knowledge or information sufficient to admit or deny the allegations in paragraph 9 of the Christina Motion.

10.    Deny knowledge or information sufficient to admit or deny the allegations in paragraph 10 of the Christina Motion.

11.    Respondents incorporate herein by reference their "Memorandum of Law in Support of Defendants' Consolidated Response to Pending Motions to Transfer and in Support of Cross-Motion to Transfer Pursuant to 28 U.S.C. § 1407."

5

Dated: July 12, 2004

Respectfully submitted,

DAVIS POLK & WARDWELL

By: James P. Rouhandeh /mp
    James P. Rouhandeh

    James P. Rouhandeh
    James Murray
    R. Michael Vagnucci

450 Lexington Avenue
New York, New York  10017
(212) 450-4835
(212) 450-3835

ATTORNEYS FOR DEFENDANTS PFIZER INC,
WARNER-LAMBERT COMPANY, and PARKE-
DAVIS, A DIVISION OF WARNER-LAMBERT
COMPANY

6

# EXHIBIT L

LEXSEE 2003 US DIST LEXIS 15762

**ANTHEM, INC., et al., Plaintiffs, v. BRISTOL-MYERS SQUIBB COMPANY, et al., Defendants.**

Civil Action No. 03-0008

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*2003 U.S. Dist. LEXIS 15762*

March 17, 2003, Decided
March 18, 2003, Filed

**DISPOSITION:** Plaintiffs' motion to remand was granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] Steven J. Fram, Esq., Archer & Greiner, P.C., Haddonfield, NJ, Attorneys for Plaintiffs Anthem, Inc., et al.

Michael A. Tanenbaum, Esq., Sedgwick, Detert, Moran & Arnold, Newark, NJ, Attorneys for Defendants Britol-Myers Squibb Company, Watson Pharmaceuticals, Inc., Watson Pharma, Inc. and Danbury Pharmacal.

**JUDGES:** William H. Walls, U.S.D.J.

**OPINIONBY:** William H. Walls

**OPINION: Walls, District Judge**

Plaintiffs have moved to remand their first amended complaint to New Jersey Superior Court, Middlesex County. For the following reasons, the motion is granted and the case is remanded.

**Background**

Plaintiffs, self-described as third-party payers of prescription drug costs, allege in the first amended complaint a conspiracy between defendants Bristol Myers Squbb Company ("BMS"), Watson Pharmaceuticals, Inc. ("Watson") and Watson's predecessors in interest, Schein Pharmaceuticals, Inc. ("Schein") and Danbury Pharmacal ("Danbury") (collectively, the "Defendants"). This alleged conspiracy

according to Plaintiffs was aimed at restraining competition in the market for the anxiety drug buspirone-hydrocholoride, manufactured and sold under the brand name BuSpar by BMS since [*2] 1987.

BMS was at all relevant times the holder of a patent covering BuSpar. That patent, known as the '763 patent, was issued in January 1980 and due to expire in 2002. Manufacturers of generic equivalents to "pioneer" drugs such as BuSpar must seek FDA approval for sale of the generic within the United States. Under the Hatch-Waxman Act, *21 U.S.C. § 355*, which is part of the Federal Food, Drug and Cosmetic Act. *21 U.S.C. § 301 et seq.*, a generic manufacturer seeks such FDA approval by filing an Abbreviated New Drug Application ("ANDA") on which it certifies that its product does not infringe any valid patent. A patent holder can challenge that certification and bring a patent infringement suit within 45 days of the notice of noninfringement. If the holder brings suit, the FDA stays the final approval of the generic product for 30 months after the date that notice was given, or until the date on which the patent litigation produces a final determination of non-infringement or patent invalidity, whichever date is earlier. See *21 U.S.C. § 355(j)(5)(B)(iii)*.

The Hatch-Waxman Act also provides 180 days of [*3] market exclusivity to the first generic manufacturer who applies for approval of a generic product. The 180-day period begins to run on the date the applicant first sells its generic product or on the date on which a final, nonappealable decision determines that the patent covering the pioneer drug is invalid or not infringed, whichever date is earlier. See *21 U.S.C. § 355(j)(5)(B)(iv)*.

Here, Defendant Danbury, which was later acquired by Watson's predecessor in interest, Schein, filed in August 1992 an ANDA with the FDA seeking FDA approval to market its generic buspirone. The ANDA certified that BMS's '763 patent was invalid. BMS filed suit against Schein and Danbury for patent infringement within the 45-day statutory period, which barred the FDA from approving the ANDA for 30 months or until the issuance of a final court determination that the patent was invalid, whichever was earlier.

On December 2, 1994, with approximately three months remaining on the 30-month waiting period before Schein could begin to market generic buspirone. BMS and Schein and Danbury entered a settlement of the patent litigation (the "Settlement Agreement"). Under the Settlement [*4] Agreement, Schein abandoned its challenge to the validity of the '763 patent, stipulated to the Patent's validity and enforceability, and agreed not to market their generic product until the expiration of the '763 patent. In consideration, Schein and Danbury received $ 72.5 million in present and future payments. The Settlement Agreement indefinitely delayed the triggering of the 180-day generic exclusivity period, thereby preventing any other generic manufacturer from entering the market before the '763 patent expired in November 2000. According to Plaintiffs, by entering into the Settlement Agreement the defendants BMS, Schein and Danbury illegally restricted trade.

Plaintiffs claim that BMS embarked on a second course of anticompetitive conduct in late 1998. In September 1998, another would-be producer of generic buspirone, Mylan Laboratories ("Mylan"), submitted to the FDA an ANDA for its product. Mylan did not challenge the '763 patent, but instead certified that it would not market its generic drug until the patent expired in November 2000. Shortly before that expiration date, however, BMS obtained a second patent - the '365 patent - which it claimed covered BuSpar. BMS successfully [*5] sought to have the '365 patent listed in the "Orange Book," the FDA's list of approved drug-covering patents. In plaintiffs' words, "by doing so, BMS could use the Hatch Waxman Act to continue to block FDA approval of Mylan's and other generic manufacturers' ANDA's for generic buspirone by bringing sham patent infringement suits against other generic competitors." [Plaintiffs' Brief in Support of Motion to Remand ("Plaintiffs' Brief") at 6].

In November 2002, plaintiffs filed this lawsuit in New Jersey Superior Court, Middlesex County, seeking damages for the allegedly excess prices paid for BuSpar during the period when generic buspirone could have been marketed, according to plaintiffs, but for Defendants' conspiracy. The amended complaint alleges 92 state law claims, including claims under state antitrust

law, consumer protection statutes, insurance fraud, and common law unjust enrichment, under the law of several states. Defendants filed a notice of removal of the action on January 2, 2003 on the basis of this Court's alleged federal question jurisdiction. Plaintiffs move to remand the case on the grounds that no federal subject matter jurisdiction exists.

On February 5, 2002, the [*6] Judicial Panel on Multidistrict Litigation ("JPML") issued a Conditional Transfer Order pursuant to which this case may be transferred to the Federal District Court for the Southern District of New York. The JPML found that this case involves questions of fact common to other cases previously transferred to and consolidated in the Southern District Plaintiffs have filed an objection to the Conditional Transfer Order, and a final decision from the JPML is pending.

## DISCUSSION

### I. The Court Will Not Stay This Action Pending Decision By The JPML

As an initial matter, the Court declines the invitation of Defendants to stay this action pending a final transfer decision from the JPML. As Defendants note, the decision to stay proceedings is within the sound discretion of the court. See *Landis v. N. Am. Co., 299 U.S. 248, 254-55, 81 L. Ed. 153, 57 S. Ct. 163 (1936)*. Each party submits, by way of comparison, examples of cases in which courts have either stayed similarly postured cases, or opted not to impose a stay. Compare, e.g., *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, et al., 54 F. Supp. 2d 1042, 1047-48 (D.Kan. 1999)* ("for purposes of judicial [*7] economy, the jurisdictional issue should be resolved immediately") with *Medical Society of the State of New York v. Conn. Gen. Corp., 187 F. Supp. 2d 89 (S.D.N.Y. 2001)* (holding that judicial economy is promoted by imposing a stay and allowing jurisdictional issues to be decided by a single court). Taken as a whole, these cases indicate that either course of action is justified.

In exercising its discretion, however, the Court finds that the better option is to decline to stay proceedings and to consider the jurisdictional issue now. The issue is fully briefed by the parties and is ripe for determination. All relevant facts that could be presented to the MDL court are before this Court. Deciding the jurisdictional question now promotes judicial economy: if jurisdiction does not exist, then the case need not be transferred to the MDL court at all, and if it does exist then both the parties and the MDL court will be faced with one less contested issue if and when the case eventually is transferred. Finally, it is not clear that the other cases now before the MDL court involve perfectly identical

2003 U.S. Dist. LEXIS 15762, *

facts and circumstances. Although the Court has not had the benefit of [*8] reviewing the complaints in each of those cases, according to the parties those complaints did not initially include allegations of anti-competitive conduct involving the Settlement Agreement: such allegations were apparently added by amendment. This Court, of course, is not in a position to assess whether that distinction would make a difference in deciding the motion to remand, or whether other differences might exist between the instant complaint and the complaints before the MDL court. But, because judicial economy can be promoted by deciding the issue now, the Court sees little benefit to delay this case. The Court will not impose a stay.

## II. The Motion to Remand

### A. Standard

A state court action may be removed to federal court if it originally could have been brought in federal court. *28 U.S.C. § 1441(a).* A case must be remanded to state court, however, "if at any time before final judgment it appears that [the federal court] lacks subject matter jurisdiction." *28 U.S.C. § 1447(c).* The burden of establishing federal jurisdiction rests with the party seeking to invoke it; on a motion to remand, therefore, [*9] that burden rests with the defendant. *Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)* (citations omitted). Federal jurisdiction is to be strictly construed against removal and all doubts should be resolved in favor of remand. Id. (citations omitted).

Defendants assert that the federal district court has original - indeed exclusive - jurisdiction over this matter based on federal question jurisdiction. Under the federal question statute, "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." *28 U.S.C. § 1338(a).* Whether a case "arises under" federal patent law is governed by the Supreme Court's holding in *Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988).* The Court held that federal question jurisdiction exists only where a well-pleaded complaint establishes (1) that federal patent law creates the cause of action, or (2) that the plaintiff's right to relief necessarily depends on the resolution of a substantial question [*10] law in that patent law is a necessary element of one of the well-pleaded claims. *Id., 486 U.S. at 808-09, 108 S. Ct. at 2174.* Defendants do not claim that federal patent law creates the cause of action asserted here. The issue is whether Plaintiffs' right to relief depends on the resolution of a substantial question of patent law.

Two other principles are relevant. First, under the well-pleaded complaint rule, whether a claim arises under patent law "must be determined from what necessarily appears in the plaintiffs statement of his own claim... unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Christianson, 486 U.S. at 809, 108 S. Ct. at 2174,* quoting *Franchise Tax Board of California v. Construction Laborers Vacation Trust, 463 U.S. 1, 10, 103 S. Ct. 2841, 2846, 77 L. Ed. 2d 420 (1983)* (internal quotations omitted). A case raising a federal patent law defense therefore does not for that reason alone arise under patent law, "even if the defense is anticipated in the plaintiffs complaint, and even if both parties admit that the defense is the only question truly [*11] at issue in the case." *Christianson, 486 U.S. at 809, 108 S. Ct. at 2174,* quoting *Franchise Tax Board, 463 U.S. at 14, 103 S. Ct. at 2848.*

Second, a claim does not arise under the patent laws if "on the face of a well-pleaded complaint there are... reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks." *Christianson, 486 U.S. at 810, 108 S. Ct. at 2174,* quoting *Franchise Tax Board, 463 U.S. at 26, 103 S. Ct. at 2855.* In other words, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." Id. (emphasis added).

### B. Discussion

As noted, the Plaintiffs in this case allege that the Defendants violated state antitrust law in two ways. First, they claim that by entering the Settlement Agreement, the Defendants unlawfully excluded generic makers of buspirone from entering the market by permanently delaying the 180-day exclusivity period granted to defendant Schein as the first generic buspirone [*12] manufacturer to file an ANDA. Second, they claim that Defendants prevented generic buspirone from entering the market in November 2000 by improperly causing the '365 patent to be listed in the Orange Book, and in so doing effectively extending BuSpar's exclusive market access.

As an initial matter, the Court must consider whether the amended complaint asserts a single claim supported by alternate theories of recovery, as Plaintiffs urge, or two separate claims, as Defendants argue. If the former, then the federal jurisdiction cannot stand unless patent law is essential to Plaintiffs' recovery on each theory; if the latter, then federal jurisdiction is proper if patent law is essential to either claim. Put another way, if the amended complaint asserts a single claim with alternative theories, then the case must be remanded if

Plaintiffs could recover on either theory without the resolution of a substantial question of patent law, but if the amended complaint alleges two separate claims then the case will be remanded only if neither claim requires the resolution of a substantial question of patent law.

Defendants argue that the amended complaint alleges two separate claims because [*13] it alleges two separate events purportedly separated by five years, involving different sets of corporations and individuals, and motivated by dissimilar factual and legal circumstances. The better reading of the amended complaint, however, supports Plaintiffs' argument that it asserts a single claim based on alternate theories of recovery. The amended complaint alleges that Defendant BMS engaged in a course of conduct over several years designed to maintain BuSpar as the sole buspirone product on the market. That this alleged course of conduct included multiple sets of activities is of no moment in light of the alleged common motivation (the maintenance of the BuSpar monopoly) and alleged common injury (the higher priced Plaintiffs were forced to pay) pleaded in the amended complaint. In sum, the amended complaint alleges two theories, not two separate claims. See *In re Buspirone Patent & Antitrust Litig., 210 F.R.D. 43, 51-52 (S.D.N.Y. 2002)* (in case with identical factual allegations, plaintiff raised antitrust and state law claims "based not only on *theories* related to the allegedly improper listing of the '365 Patent and subsequent patent infringement suits but also [*14] on *theories* related to an alleged agreement in restraint of trade with Schein") (emphasis added); citing *Christianson, 486 U.S. at 809-10, 108 S. Ct. at 2166.*

The resulting question is whether Plaintiffs could prevail on either of its theories of recovery without the resolution of a substantial question of patent law. The Court finds that Plaintiffs' theory regarding the Settlement Agreement affords them such an opportunity. The determination of whether the Plaintiffs' allegations regarding the Settlement Agreement amount to a violation of state antitrust law does not require a decision on the validity of the '763 patent, or any other substantial question of patent law. Plaintiffs allege that, but for the Settlement Agreement, the first generic buspirone producer could have marketed its product 30 months after the filing of the underlying patent suit *regardless of* the final determination of the '763 patent's validity, and that competing generic buspirone manufacturers could have entered the market 180 clays later. Such allegations

may or may not amount to a violation of state antitrust law, but they do not require a decision on the validity of the '763 patent, [*15] or on any other question of patent law. Patent law might arise if Defendants argue that the execution of the Settlement Agreement, even if otherwise violative of state antitrust law, is permissible here as within the legitimate rights of a patent holder. That issue, however, arises as a defense to Plaintiffs' theory, not as an element of Plaintiffs' claim, and thus cannot provide the basis for federal subject matter jurisdiction. See *Christianson, 486 U.S. at 809, 108 S. Ct. at 2174* (when arising as a defense rather than as an element of a claim, patent law does not provide jurisdictional basis) (citations omitted).

In so finding, the Court is in agreement with the more persuasive line of cases that have considered the issue under the same or similar factual circumstances. See *In re Ciprofloxacin Hydrochloride Antitrust Litig., 166 F. Supp. 2d 740, 748-51 (E.D.N.Y. 2001); Altman v. Bayer Corp., 125 F. Supp. 2d 666, 674-75 (S.D.N.Y. 2000); In re Cardizem CD Antitrust Litig., 90 F. Supp. 2d 819, 839 (E.D.Mich. 1999); Aetna, 54 F. Supp. 2d at 1053-54.*

The motion to remand is granted.

William H. Walls, [*16] U.S.D.J.

17 March 2003

Dated

**ORDER ENTERED MAR 19 2003**

**Walls, District Judge**

Plaintiffs filed a motion to remand this action to the Superior Court of New Jersey, Middlesex County. Defendants filed a motion to stay the action pending a decision by the Judicial Panel on Multidistrict Litigation.

The Court, having considered the motions and supporting materials submitted by the parties, elects in its discretion not to stay this action, and finds that it lacks federal subject matter jurisdiction. It is therefore on this 17th day of March, 2003, ORDERED:

That the motion to stay this action is DENIED, and

That the motion to remand the case to the Superior Court of New Jersey, Middlesex County, is GRANTED.

William H. Walls, U.S.D.J.

# EXHIBIT M

LEXSEE 2004 U.S. DIST LEXIS 22123

FAYE VASSILATOS, on behalf of herself and all others similarly situated,
Plaintiffs, vs. DEL MONTE FRESH PRODUCE CO., DEL MONTE FRESH
PRODUCE (FLORIDA) INC., and DEL MONTE FRESH PRODUCE N.A., INC.,
Defendants.

CASE. NO. 04-80450-CIV-MIDDLEBROOKS/JOHNSON

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
FLORIDA

*2004 U.S. Dist. LEXIS 22123*

July 23, 2004, Decided
July 23, 2004, Filed

SUBSEQUENT HISTORY: Related proceeding at *In re Pineapple Antitrust Litig., 342 F. Supp. 2d 1348, 2004 U.S. Dist. LEXIS 21639 (J.P.M.L., Oct. 25, 2004)*

PRIOR HISTORY: *Williams v. Del Monte Fresh Produce Co., 325 F. Supp. 2d 855, 2004 U.S. Dist. LEXIS 13331 (M.D. Tenn., 2004)*

DISPOSITION: [*1] Motion to Stay DENIED and Motion to Remand GRANTED.

LexisNexis(R) Headnotes

COUNSEL: For FAYE VASSILATOS, on behalf of herself and all others similarly situayed, plaintiff: Abraham Rappaport, Jayne Arnold Goldstein, Mager White & Goldstein, Coral Springs, FL.

For DEL MONTE FRESH PRODUCE COMPANY, DEL MONTE FRESH PRODUCE, N.A., INC., DEL MONTE FRESH PRODUCE (FLORIDA) INC., defendants: Stuart Harold Singer, Carlos Mario Sires, Carl Edward Goldfarb, Boies Schiller & Flexner, Fort Lauderdale, FL.

JUDGES: DONALD M. MIDDLEBROOKS, UNITED STATES DISTRICT JUDGE.

OPINIONBY: DONALD M. MIDDLEBROOKS

OPINION:

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANT'S MOTION TO STAY

THIS CAUSE comes before the Court upon Plaintiff's Motion to Remand (DE 3) filed on May 28, 2004 (the "Remand Motion"), and Defendant's Motion to Stay (DE 9) filed on June 18 (the "Stay Motion"), 2004. The Court has reviewed the Motions and is otherwise fully informed of the premises and finds that the Remand Motion is due to be granted and that the Stay Motion is due to be denied.

**Background**

Plaintiffs, Florida consumers, bring this action asserting that the Defendants violated Florida's *Deceptive and Unfair TradePractices Act* [*2] ("DUPTA") by unfairly and deceptively monopolizing the Florida market for whole extra-sweet fresh pineapples, resulting in higher consumer prices than those that would have resulted from a competitive market. The following facts, contained in Plaintiffs' Complaint, are taken as true for the purposes of these Motions.

Three companies, each a competitor with the other, dominate the pineapple market in the United Sates: Del Monte (Defendant herein); Dole Food Company ("Dole"), and Maui Pineapple Company ("Maui"). Del Monte had the largest market share as of early 2001. Within the realm of the pineapple market is a sub-market for the "extra sweet" variety of pineapple (the "ESP"). The ESP is the variety at issue in this law suit. Del

2004 U.S. Dist. LEXIS 22123, *

Monte also has the largest market share in the ESP market as well. (Compl. at 3).

Prior to 1987, there existed a coalition of pineapple growers known as the Pineapple Research Institute of Hawaii ("PRI"). The PRI was funded by the coaltion to sponsor a pineapple breeding program. PRI research was conducted on the island of Maui, Hawaii. Each PRI member had the rights to fully share in PRI creations, patents and inventions. (Id. at 4). After [*3] several years of research, and after several of the original members had left the membership, the PRI 73-114 was developed. At the time of this development, Del Mont and Maui Pineapple were the two sole remaining members in the PRI. In 1987, the PRI dissolved and the PRI 73-114 seedlings were turned over to both Del Monte and Maui, who were both co-owners. Del Monte re-named PRI 73-114 the "MD-2." MD-2 and PRI 73-114 are genetically identical and therefore the same pineapple.

At some point in the late 1980's, Del Monte began selling MD-2 under the name "Fresh Del Monte Gold." Over the course of several years, Fresh Del Monte Gold has become the "best selling pineapple in Florida, the U.S., and the world." Id. At some point in 1992, Del Monte attempted to patent the MD-2, but was unable to do so for two reasons. The first was that, having two co-owners, the application required Maui's participation in the application, which was declined. The second was that Del Monte had been engaged in the sale of the Fresh Del Monte Gold for too many years prior to the application for the patent to issue as a new invention. Subsequent to this, at some point in 1994, Del Monte did obtain a patent [*4] on a new variety of pineapple, the "CO-2." Patent number 8863 was issued to Del Monte for the CO-2 pineapple (the "'863 Patent"). However, the Del Monte has since withdrawn the '863 Patent. n1

n1 In Case No. 00-1171, *Del Monte Fresh Produce Co., et al. v. Dole Food Co., Inc.,* a case within this District, before the Honorable Magistrate Judge Simonton, in this district, Del Monte admitted that the '863 Patent was invalid because their had in fact been pre-patent application sales of the CO-2 pineapple by Maui rendering them unpatentable. Del Monte disclaimed rights to the '863 Patent with the Patent and Trademark Office. They denied any knowledge that they were aware of the unpatentability of the CO-2. It appears as though the CO-2 and the MD-2 pineapples were genetically the same, but the Court makes no such finding.

Judge Simonton's findings in *Dole* and Del Monte's subsequent disclaimer of the '863 Patent has resulted in the filing of a dozen separate suits against Del Monte through out the country. [*5] Four of the actions are direct purchaser actions which have been consolidated before the Honorable Richard M. Berman, District Judge for the Southern District of New York. n2 Two are indirect purchaser actions also before Judge Berman. n3 These six cases have been consolidated for pre-trial purposes before Judge Berman. The remaining six cases are indirect purchaser actions, including the one herein, which were each filed in state court under state law theories of fraud and which Del Monte removed to federal court. n4

n2 Case No. 03-CV-10230-RMB, *American Banana Co., Inc., et al. v. Del Monte Fresh Produce Co., et al.;* Case No. 04-CV-0705-RMB, *J. Bonafed Co., Inc. v. Del Monte Fresh Produce, N.A.;* Case NO. 04-CV-1687-RMB, *Just a Mere Trading Co., LLC v. Del Monte Fresh Produce Co., et al.;* Case No. 04-CV-2406-RMB, *Meijer, Inc. And Meijer Distribution, Inc. v. Del Monte Fresh Produce, N.A., Inc.*

n3 Case No. 04-CV-1950-RMB, *Gary Freed, et al. v. Del Monte Fresh Produce Co., et al.;* and Case No. 04-CV-2526-RMB, *Neil Schwam v. Del Monte Fresh Produce Co., et al.*

n4 *Williams v. Del Monte Fresh Produce Co., 325 F. Supp. 2d 855 (M.D. Tenn.); Conroy v. Fresh Del Monte Produce Inc., 325 F. Supp. 2d 1049 (N.D. Cal);* Case No. 04-CV-2709-RSWL, *Jonathan Weiss v. Del Monte Fresh Produce (West Coast) et al.,* (C.D. Cal.); *James Linden, et al. v. Fresh Del Monte Produce Inc., et al.* (C.D. Cal); Case No. 04-CV-1067, *Eileen Churosh v. Fresh Del Monte Produce Co., N.A., Inc.* (D.Ariz); and the instant case.

[*6]

**The Stay Motion**

Plaintiffs filed their complaint in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County. The Complaint claims that the '863 Patent was intentionally and fraudulently obtained by Del Monte to create a monopoly in the ESP industry. Further, they allege that Del Monte engaged in aggressive litigation strategy to coerce competitors not to pursue development or sales of super sweet pineapples, and that such deceptive and fraudulent practices resulted in harm to them as consumers of the products. Specifically, the Complaint sets forth claims for violation of Florida's

2004 U.S. Dist. LEXIS 22123, *

DUPTA (Count I) and Unjust Enrichment (Count II). It is undisputed that both of these claims are state law claims. Plaintiff did not cite to nor invoke any federal statutes, rules or regulations relating to patent law or any other federal law.

On June 4, 2004, Defendants applied with the Judicial Panel on Multidistrict Litigation, pursuant to *28 U.S.C. § 1407* for a transfer of this and the five other state cases to the Southern District of New York for consolidation with the cases pending before Judge Berman. In the meanwhile, two of the five [*7] other cases have been stayed pursuant to a request by Del Monte identical to the one herein, and two have been remanded back to the state courts from which they came with the stay requests being denied. n5 Del Monte requests that we stay this action pending a ruling by the Judicial Panel on Multidistrict Litigation regarding its transfer request. Plaintiffs oppose such stay and in turn request that we rule upon their motion for Remand.

> n5 There had been no ruling in the last remaining indirect purchaser case as of the date of this Order.

It is well established that "the pendency of a [transfer] motion . . . before the [Judicial] Panel [on Multidistrict Litigation] . . . does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." *Rules of the Judicial Panel on MDL, Rule 1.5.* The decision of whether or not to grant a stay of proceeding pending a ruling on the transfer of the matter to [*8] the MDL court lies within the Court's sound discretion. *Landis v. North American Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 165-66, 81 L. Ed. 153 (1936); I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1551 (11th Cir. 1986).* This Court finds that it is not in the best interest of judicial economy to stay these proceedings. n6 Accordingly, the Motion to Stay shall be denied.

> N6 The Remand Motion has already been briefed in full. Additionally, as this Court is readily familiar with Florida law and none of the other cases in the transfer motion require application of Florida law, no economy is had by staying the case to allow Judge Berman to rule on the Remand Motion. Lastly, it is always in the best interest of judicial economy to decide issues of jurisdiction as early as possible to conserve scarce federal resources.

**The Remand Motion**

At times it is wise to defer a ruling on a motion to remand a case. Such times are when deference would allow a better opportunity [*9] for uniformity, consistency and predictability in the rulings for common cases. *28 U.S.C. § 1407.* In deciding whether to defer such ruling, however, the Court is obliged to assess its jurisdiction, and if a preliminary assessment suggests that removal was improper, then the Court should decide the merits of such motion. To delay such resolution in the face of a clearly improper removal wastes precious judicial resources and protracts litigation that is oftentimes already overly long and burdensome.

Federal jurisdiction is proper in a civil action that is based upon a claim or right arising under the Constitution, treaties or laws of the United States. *28 U.S.C. § 1331.* District Courts have original jurisdiction of any civil action arising under any Act of Congress relating to patents. *28 U.S.C. § 1338(a).* A civil action filed in a state court may be removed to federal court only if the federal court could have exercised original jurisdiction over the case. *28 U.S.C. § 1338(a).* Jurisdiction under *Section 1338* is proper in cases where: (1) a complaint contains facts establishing that federal [*10] patent law creates the cause of action; or (2) it is necessary to resolve a substantial issue of patent law in order to determine plaintiffs entitlement to relief. *See Christianson v. Colt Indus. Oper. Corp., 486 U.S. 800, 809, 108 S. Ct. 2166, 2174, 100 L. Ed. 2d 811 (1988).*

Applying *Christianson,* the most superficial perusal of the complaint establishes, and no one disputes, that patent law did not in any sense create plaintiffs claims. "Since no one asserts that federal jurisdiction rests on [plaintiffs'] state-law claims, the dispute centers around whether patent law is a necessary element of one of the well-pleaded [state] claims." *Id.* The Court finds then, that the answer to this inquiry is no. There are no predominating issues of patent law necessary to the resolution of this case. The Court will not read a federal cause of action into what is otherwise a well-pleaded complaint for state common law or statutory claims. The Plaintiffs can prove fraudulent actions in obtaining a patent as well as intent to defraud without analyzing the validity of the '863 Patent, especially since the validity is not in issue. Accordingly, the Motion to Remand is [*11] due to be granted, and for the reasons set forth above, it is

ORDERED and ADJUDGED that the Motion to Stay (DE 9) be and is hereby DENIED and that the Motion to Remand (DE 3) be and is hereby GRANTED. The Clerk of Court shall remand this case to the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm

2004 U.S. Dist. LEXIS 22123, *

Beach County from whence it came and shall CLOSE this CASE.

DONE and ORDERED in Chambers, at West Palm Beach, Florida this 23 day of July, 2004.

DONALD M. MIDDLEBROOKS

UNITED STATES DISTRICT JUDGE

# EXHIBIT N

LEXSEE 1996 US DIST LEXIS 3159

**SUSAN VILLARREAL and BRAD BERGANTZ et al., Plaintiffs, vs. CHRYSLER CORPORATION, Defendant.**

**No. C-95-4414 FMS**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*1996 U.S. Dist. LEXIS 3159*

**March 11, 1996, Dated**
**March 12, 1996, FILED; March 14, 1996, ENTERED**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For SUSAN VILLARREAL, individually, and on behalf of all others similarly situated, BRAD BERGANTZ, individually, and on behalf of all others similarly situated, Plaintiffs: Joseph J. Tabacco, Jr., [COR LD NTC], M. Elizabeth Graham, [COR NTC], Berman DeValerio Pease & Tabacco, San Francisco, CA.

For CHRYSLER CORPORATION, defendant: Kevin J. Dunne, [COR NTC], Micki S. Singer, [COR LD NTC], W. Bruce Wold, [COR LD NTC], Sedgwick Detert, [COR NTC], Sedgwick Detert Moran & Arnold, San Francisco, CA. Charles A. Newman, [COR NTC], Roman P. Wuller, [COR NTC], Diane M. Hoelzl, [COR NTC], Thompson & Mitchell, St. Louis, MO.

**JUDGES:** FERN M. SMITH, United States District Judge

**OPINIONBY:** FERN M. SMITH

**OPINION:**

ORDER GRANTING MOTION TO REMAND TO STATE COURT

**ISSUES**

Defendant Chrysler Corporation's ("defendant") motion for a stay of proceedings requires the Court to decide whether to stay the putative class action brought by plaintiffs Susan Villarreal and Brad Bergantz ("plaintiffs") because defendant petitioned the Judicial Panel on Multidistrict Litigation ("Panel") to transfer this and other related class actions to the Eastern District of Michigan.

If the Court declines to [*2] stay the action, plaintiffs' motion requires the Court to determine whether defendant has failed to establish that the amount in controversy for every class member exceeds the $ 50,000 federal jurisdictional requirement so that the action should be removed. n1 Specifically, the Court must determine whether plaintiffs have a common and undivided interest in the alleged punitive damage award so that plaintiffs' claim can be aggregated for jurisdictional purposes.

n1 For the purposes of determining jurisdiction, the Court will assume the suit has been certified as a class action. *City of Inglewood v. City of Los Angeles, 451 F.2d 948, 951 (9th Cir. 1971).*

Alternatively, if defendant proves that the claim of the named representatives exceed the jurisdictional requirement, the Court must decide whether to exercise supplemental jurisdiction over the claims of the putative class members whose claims fall below the jurisdictional requirement.

**BACKGROUND**

Plaintiffs filed a class action in Santa Clara [*3] County Superior Court on behalf of all persons and entities residing in California who own at least one, but less than fifty, Chrysler vehicles equipped with the

1996 U.S. Dist. LEXIS 3159, *

Bendix 10 Anti-Lock Brake System ("ABS"). Plaintiffs allege five causes of action stemming from the allegedly defective ABS and claims for: (1) breach of warranty under *California Civil Code section 1790* et seq.;(2) unfair and fraudulent business practices under *California Business and Professions Code section 17200* et seq.; (3) fraud and deceit under *California Civil Code section 1710*; and (4) negligent misrepresentation under *California Civil Code section 1710*. Plaintiffs seek compensatory and punitive damages as well as equitable relief.

Defendant removed the action to federal court on the basis of diversity jurisdiction. Subsequently, defendant petitioned the Panel to transfer this and related ABS cases to the Eastern District of Michigan. Plaintiffs then filed this motion to remand, contending that the claimed damages are not in excess of the $ 50,000 jurisdictional requirement. Plaintiffs also seek costs and attorneys' fees as a result of the removal.

## DISCUSSION

### I. Legal Standard For Stay  [*4]

A court has the inherent power to stay proceedings. *Landis v. North Am. Co., 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163 (1936).* Petitions for consolidation and transfer pending before the Panel, however, do "not affect . . . pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." Panel Rule 18, 147 F.R.D. 589, 601 (1993).

Defendant requests a stay on the basis that this and two other putative class actions will be consolidated and transferred to the Eastern District of Michigan by the Panel pursuant to *28 U.S.C. § 1407.* Consistent with the directives of the Panel, a stay is improper. Judicial economy will best be served by addressing the remand issue because a determination on this issue will facilitate litigation in the appropriate forum. The appropriate forum, moreover, is a threshold issue to class certification and defendant's petition to the Panel does not affect scheduled pretrial proceedings.

For the foregoing reasons, defendant's request for a stay of the action is DENIED. Accordingly, the Court will address the merits of plaintiffs' motion to remand.

### II. Removal [*5]  and Remand

#### A. Legal Standard for Remand

In a removal action, a district court is required to remand a case to state court if, at any time before final judgment, the court determines that it lacks subject matter jurisdiction. See *28 U.S.C. § 1447(c).* Where the jurisdiction of the court is challenged, the party invoking

federal jurisdiction bears the burden of demonstrating that its jurisdictional allegations are supported by competent proof. *Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988).* The removal statute is strictly construed against removal jurisdiction. Id.

Where the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $ 50,000. *Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992)* (citing *McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 80 L. Ed. 1135, 56 S. Ct. 780 (1936)).* Moreover, where state law prohibits pleading a specific amount of damages, the burden is on the defendant to present underlying facts in support of its contention that the amount in controversy exceeds $ 50,000. Id. Conclusory [*6] allegations that the damages are in excess of $ 50,000 do not satisfy defendant's burden. Id.

The preponderance of the evidence standard applies to the case at bar because defendant seeks federal jurisdiction over the action, and California pleading laws prohibit plaintiffs from setting forth a specific amount of punitive damages in their complaint. n2 See *Cal. Civ. Code § 3294(e)* (Deering 1996) ("No claim for exemplary damages shall state an amount or amounts.").

n2 In contrast to the preponderance of the evidence standard, a court applies the "legal certainty" test when the plaintiff seeks to confer federal jurisdiction over the action by alleging damages in excess of $ 50,000. See *St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 82 L. Ed. 845, 58 S. Ct. 586 (1938).*

Both plaintiffs and defendant incorrectly rely on the "legal certainty" standard. The cases applying this standard are inapposite to the case at bar. See *United States v. Southern Pacific Trans. Co., 543 F.2d 676, 682 (9th Cir. 1976)* (class action plaintiffs' motion for summary judgment shifted burden to plaintiffs to show it did not appear to a legal certainty that claims were for less than jurisdictional requirement).

[*7]

#### B. Amount in Controversy

In the class action context, the defendant must prove that each plaintiff and every class member has an amount in controversy in excess of $ 50,000. *Snyder v. Harris, 394 U.S. 332, 338, 22 L. Ed. 2d 319, 89 S. Ct. 1053 (1969); Zahn v. International Paper, 414 U.S. 291, 300, 38 L. Ed. 2d 511, 94 S. Ct. 505 (1973)* ("Any plaintiff without jurisdictional amount must be dismissed from

the case, even though others allege jurisdictionally sufficient claims.").

As a general rule, the "separate and distinct" claims of class action plaintiffs cannot be aggregated to reach the $ 50,000 jurisdictional requirement. *Snyder, 394 U.S. at 336-37.* Aggregation is permissible, however, when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id. at 335.* Thus, an "integrated" claim of class action plaintiffs may be aggregated to determine the jurisdictional requirement. Id.

**1. Aggregation: Common and Undivided Interest**

Aggregation of damages so as to meet the jurisdictional requirement is prohibited in diversity-based class actions. See *Zahn, 414 U.S. at 300.* Defendant, therefore, [*8] argues that punitive damage claims are "integrated," and thus aggregation is permissible.

Under Ninth Circuit law, claims constitute a common and undivided interest only if plaintiffs hold their rights in a group status. *Eagle v. American Tel. and Tel. Co., 769 F.2d 541, 546 (9th Cir. 1969); Potrero Hill Community Action Com. v. Housing Authority, 410 F.2d 974, 978 (9th Cir. 1969).* Class members may not aggregate their claims to satisfy the amount in controversy requirement unless the claims are joint and common." *United States v. Southern Pacific Trans. Co., 543 F.2d 676, 683 (9th Cir. 1976).* Common questions of law and fact are not sufficient in determining whether the jurisdictional requirement is satisfied. Id.

**2. Punitive Damages**

In determining the amount in controversy, a court must consider not only actual pecuniary damages, but also potential punitive damages. *Bell v. Preferred Life Assur. Soc. of Montgomery, 320 U.S. 238, 240, 88 L. Ed. 15, 64 S. Ct. 5 (1943).* The Ninth Circuit, however, has not directly addressed whether a punitive damages claim constitutes a "common and undivided interest," thereby allowing aggregation in determining the amount [*9] in controversy. See *Borgeson v. Archer Daniels Midland Co. et. al, 909 F. Supp. 709, 1995 WL 743800 (C.D. Cal. 1995).*

Consistent with Southern Pacific, several district courts have held that a class action plaintiffs' claim for punitive damages cannot be aggregated as a common and undivided interest. See, e.g., *Harris v. Chase Manhattan Bank, N.A., 1992 U.S. Dist. LEXIS 19986, No. C-92-1483 JPV (N.D. Cal. 1992); Kasky v. Perrier Group of Am., 1991 U.S. Dist. LEXIS 21171, No. C-91-0489-R(M) (S.D. Cal. 1995); Smiley v. Citibank (South Dakota), N.A., 863 F. Supp. 1156, 1162-64 (C.D. Cal. 1993).*

Plaintiffs' complaint expressly states that the claimed damages do not exceed $ 50,000, yet defendant contends that punitive damages may be aggregated as a "common and undivided interest" of the plaintiffs. n3 See Complaint at P 9. The Court finds the Harris, Kasky, and Smiley decisions persuasive and concludes that plaintiffs assert separate and distinct rights respecting the allegedly defective ABS. n4 Each plaintiffs' claim is derived from the allegedly defective ABS component in an individual vehicle; therefore, aggregation is not warranted.

n3 Defendant does not seek an aggregation of damages on the basis of plaintiffs' potential equitable relief. Even assuming such an argument were raised, the Ninth Circuit has held that "'the ban on aggregation [applies] with equal force to . . . equitable as well as . . . monetary relief.'" *Snow v. Ford, 561 F.2d 787, 790 (9th Cir. 1977)* (quoting *Barton Chem. Corp. v. Avis Rent a Car Sys., Inc., 402 F. Supp. 1195 (N.D. Ill. 1975)).* [*10]

n4 Defendant's reliance on *Allen v. R & H Oil & Gas Co., 63 F.3d 1326 (5th Cir. 1995),* for the proposition that punitive damages constitute a common and undivided interest, is unpersuasive. The Allen Court's holding "specifically reflects a result under the Mississippi law of punitive damages and is not to be construed as a comment on any similar case that might arise under the law of any other state." *Allen, 70 F.3d 26 (5th Cir. 1995)* (per curiam). Accordingly, the Court must consider whether punitive damages awards constitute a "common and undivided interest" under California law.

**B. Supplemental Jurisdiction**

Defendants alternatively contend that if Villarreal and Bergantz as the named representatives satisfy the jurisdictional requirement, the claims of other class members can be brought in federal court based on supplemental jurisdiction. See *28 U.S.C. § 1367.*

The named plaintiffs seek attorneys' fees pursuant to *California Civil Code section 1780. Cal. Civ. Code § 1780* (Deering 1996). Defendant contends that the award of attorneys' fees pushes the amount in controversy [*11] over the jurisdictional threshold for the named representatives. Under Ninth Circuit law, however, attorneys' fees must be pro rated to each class member rather than attributed to the named plaintiff only. *Goldberg v. CPC Int'l Inc., 678 F.2d 1365, 1367 (9th*

1996 U.S. Dist. LEXIS 3159, *

Cir.), cert. denied, *459 U.S. 945, 74 L. Ed. 2d 202, 103 S. Ct. 259 (1982).*

Although the amount of attorneys' fees in class actions can be significant, it is too speculative to conclude that each plaintiff's attorney will recover fees in excess of $ 50,000. Further, unlike an action for personal injuries which may have a high potential for punitive damages, plaintiffs here are seeking only compensatory damages for the cost of the replacement of the brakes, diminution in value for the cars, and injunctive relief. The ABS is one component of the car which has a total value of $ 20,000, and thus defendant has not demonstrated that the claims are likely to be in excess of $ 50,000. Defendant, therefore, has not sustained its burden of demonstrating that the potential recovery of the named representatives, including attorneys' fees, satisfies the $ 50,000 threshold.

Because the complaint does not plead damages in excess of [*12] $ 50,000 for the named representatives, the Court need not address whether to exercise supplemental jurisdiction. The jurisdictional requirement is not met.

### III. Attorneys' Fees

Plaintiffs seek costs and fees associated with defendant's removal pursuant to *28 U.S.C. § 1447*(c). A court has discretion to impose sanctions. *Moore v. Kaiser Foundation Hosps., 765 F. Supp. 1464, 1466 (N.D. Cal. 1991).* Generally, removal must be unjustifiable prior to such imposition. *Samura v. Kaiser Foundation Health Plan, Inc., 715 F. Supp. 970, 972 (N.D. Cal. 1989).*

Here, defendant's removal does not warrant an imposition of attorneys' fees. The issue of whether punitive damages constitute a common and undivided interest is not entirely clear, and defendant had some authority for its assertions. A legitimate question of the existence of federal subject matter jurisdiction was presented. n5 Accordingly, the Court declines to award costs and fees.

n5 The Court notes, however, that defendant has unsuccessfully raised the same arguments regarding the aggregation of punitive damages in prior cases. The state of the law on this issue is becoming clearer and may be a factor for awarding fees in any subsequent removals by defendant.

[*13]
### CONCLUSION

For the reasons set forth above, the Court GRANTS plaintiffs' request to remand this action to the Santa Clara County Superior Court but DENIES plaintiffs' request for costs and attorneys' fees. As this action has been remanded to state court, defendant's motion to dismiss noticed for March 29, 1996, is hereby withdrawn.

The Clerk of the Court shall close the file.

SO ORDERED.

Dated: March 11, 1996

FERN M. SMITH

United States District Judge