UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981 |
| LAURA ALLEN, ADMINISTRATIX OF THE ESTATE OF THE LATE DANIEL ALLEN, TIMOTHY BRIDGES, and ALFRED MORABITO, individually and on behalf of themselves and all others similarly situated, | Judge Patti B. Saris |
| | Civil Action No. 05-10797 |
| Plaintiffs, | |
| v. | |
| PFIZER, INC. and PARKE-DAVIS, a division of Warner-Lambert Company | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO REMAND**

**I.     INTRODUCTION**

Plaintiffs, Laura Allen, Administratix of the Estate of the Late Daniel Allen, Timothy Bridges and Alfred Morabito (hereinafter "Plaintiffs"), submit this memorandum in support of their Motion to Remand this case to the Suffolk Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, where jurisdiction is proper. Defendants Pfizer Inc and Park-Davis, a division of Warner-Lambert Company (hereinafter "Defendants") removed this action on April 20, 2005. Defendants rely exclusively on the Class Action Fairness Act of 2005 as grounds for their removal.

Plaintiffs, Massachusetts resident consumers who suffered nominal, economic damages as a result of Defendants' unfair and deceptive scheme designed to deceptively market and sell Neurontin for fraudulently devised uses that were not scientifically proven to be safe, efficacious, effective and useful, filed this class action lawsuit in the Suffolk Superior Court Department, Business Litigation Session on December 23, 2004. Plaintiffs filed a First Amended Class Action Complaint (hereinafter "Complaint") on March 21, 2005. Plaintiffs seek relief from Defendants for unfair or deceptive acts or practices pursuant to G.L. c. 93A, §§ 2 and 9 and False Advertising pursuant to G.L. c. 93A, §2 and 940 CMR §3.02 (Complaint, Count I and II). The Complaint expressly states that the action is "purely based on state law (G.L. c. 93A) and relies exclusively on state law." (Complaint, ¶20). Further, as masters of their Complaint, Plaintiffs expressly waive and disavow any federal claims. "Plaintiffs state and intend to state, a cause of action solely under the laws of Massachusetts and specifically deny any attempt to state a federal question and/or cause of action under the laws of the United States of America." (Complaint, ¶ 20). "Moreover, Plaintiffs' state law claim is not federally preempted." (Complaint, ¶ 20). "Neither the putative class representatives nor any member of the Class has damages exceeding $75,000 each even when trebled." (Complaint, ¶ 19). In addition, "attorneys' fees on a pro-rata basis will not exceed $75,000 for each class member." (Complaint, ¶19).

Defendants assert that this Court has federal jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A). (Notice of Removal, ¶ 8). Defendants aver that this action falls under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (February 18, 2005) (hereinafter "CAFA") (Notice of Removal, ¶¶ 8 & 9) and that the "commencement" date of

the litigation is either when the Complaint was amended or when Defendants removed the action to federal court.

First, Defendants intentionally ignore the explicit limitation of 119 Stat. 4, § 9 (Copy attached as Ex. 1) which states that "[T]he amendments made by this Act shall apply to any civil action **commenced on or after** the date of enactment of this Act." (emphasis added). Second, Defendants fail to take into consideration the legislative history of the CAFA and Congress' clear intent in drafting the bill – that the CAFA would not apply retroactively to pending actions. Third, Defendants not only fail to recognize Mass. R. Civ. P. 3, they deliberately neglect Mass. R. Civ. P. 15(c) (relation back of amendments) and established Massachusetts case law and commentary concerning the timing and commencement of an action. *See* Mass. R. Civ. P. 3; Mass. R. Civ. P. 15(c); Fed. R. Civ. P. 81; 6 JAMES W. SMITH, HILLER B. ZOBEL, *Rules Practice* § 4.2 (1996) (commencement of action must always precede service); 9 JOSEPH R. NOLAN & BRUCE HENRY, *Civil Practice* § 8.11 (3d ed. 2004) (an action is commenced when the plaintiff mails (registered or certified) to the clerk the complaint and entry fee, or when the clerk receives the complaint and fee). Instead, Defendants (with no authority)[1] attempt to redefine "commenced," to mean either: (1) when a complaint is amended or (2) when an action is removed.

Plaintiffs' two count complaint for violations of G.L. c. 93A *et seq*. was commenced prior to the enactment of CAFA and does not rely upon federal law, and as such, Defendants cannot satisfy their burden of showing subject matter jurisdiction. Therefore, the action should be remanded to the Suffolk Superior Court Department of the Trial Court, Commonwealth of Massachusetts.

---

[1] Defendants fail to cite one Massachusetts case (or foreign case) to support their unilateral interpretation of the term "commenced." Defendants simply state, "we believe

## II.   FACTUAL BACKGROUND

On December 23, 2004, Plaintiffs Laura Allen, Administratix of the Estate of the Late Daniel Allen, Timothy Bridges and Alfred Morabito commenced this action by filing a Class Action Complaint in the Suffolk Superior Court. On March 21, 2005, Plaintiffs filed, as a matter of course, a First Amended Class Action Complaint ("Complaint") on behalf of themselves and a class of all consumers residing in the Commonwealth of Massachusetts who purchased Neurontin after being prescribed said medication for Bipolar Disorder, Peripheral Neuropathy, Diabetic Neuropathy and other pain syndromes, Epilepsy Monotherapy, Reflex Sympathetic Dystrophy, Attention Deficit Disorder, Restless Leg Syndrome, Trigeminal Neuralgia; Essential Tremor Periodic Limb Movement Disorder, migraines, Amyotrophic Lateral Sclerosis, and drug and alcohol withdrawal seizures during the period from January 1, 1994 to the present. (Complaint, ¶ 21; Copy of the Complaint is attached as Exhibit 1 to the Notice of Removal). As alleged in the Complaint, since at least 1994, the Defendants have implemented an unfair and deceptive scheme to deliberately misrepresent and deceitfully market and sell Neurontin for scientifically unproven uses even though Defendants knew that no scientific evidence existed to suggest that Neurontin was safe and effective.[2] (Complaint ¶¶ 2, 42-207, 313-327, 332-353). As a direct and proximate result of the unfair and deceptive conduct of Defendants, from at least 1994 through the present, tens of thousands of Massachusetts residents have taken Neurontin to treat conditions for which the drug is not medically safe, efficacious, effective or necessary." (Complaint, ¶ 331). Plaintiffs and the Class have been injured and have suffered actual economic damages by paying for Neurontin to treat conditions

---

[this] to be the correct view of the law ... ." (Notice of Removal, ¶ 11).
[2] In fact, the Defendants' marketing department unilaterally selected uses based

4

that lacked scientific, medical and clinical data concerning safety, efficacy, effectiveness or usefulness. (Complaint, ¶¶ 12-14, 208-312, 338-39, 350-51).

On April 20, 2005, Defendants filed a Notice of Removal to this Court, asserting jurisdiction under 28 U.S.C. §1332(d)(2)(A).

## III. ARGUMENT

### A. Defendants Have The Burden Of Proof To Establish Removal Jurisdiction

The general federal remand statute, 28 U.S.C. § 1447(c), provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Therefore, if this Court determines that it does not have subject matter jurisdiction, it *must* remand the case to the Suffolk Superior Court Department of the Trial Court of the Commonwealth of Massachusetts.

Defendants, having removed this case from state court, have the burden of demonstrating that this Court has subject matter jurisdiction, whether by virtue of federal question jurisdiction, 28 U.S.C. §1331,[3] or diversity jurisdiction, 28 U.S.C. §1332.[4] *Danca v. Private Heath Care Systems, Inc.*, 185 F.3d 1, 4 (1st Cir. 1999); *Ciardi v. F. Hoffmann-La*

---

exclusively on potential profitability.

[3] This action is not subject to federal question jurisdiction under 28 U.S.C. § 1331, which Defendants rightfully concede by not raising as a ground for removal.

[4] Defendants solely rely upon the newly expanded definition of diversity in 28 U.S.C. § 1332(d)(2)(A) as provided for by CAFA (aggregate damages in excess of $5,000,000 and plaintiff is a citizen of a different state from defendant). Defendants do not dispute that the damages sustained by Plaintiffs and each individual class member are less than $75,000 and that Massachusetts law does not permit defendants to evade the anti-aggregation rule. *Ciardi v. F. Hoffmann-La Roche, Ltd, et al.*, 2000 WL 159320 (D. Mass., February 7, 2000); *Hairston v. Home Loan and Investment Bank*, 814 F. Supp. 180, 181 & n.1 (D. Mass. 1993); *Spielman v. Genzyme Corporation*, 193 F.R.D. 19, 22 (D. Mass. 2000); *Radlo v. Rhone-Poulenc, S.A.*, 241 F. Supp.2d 61, 64 (D. Mass. 2002). Moreover, Defendants waive supplemental jurisdiction.

*Roche, Ltd., et al.*, 2000 WL 159320 (D. Mass., February 7, 2000); *American Buildings Co. v. Varicon, Inc.*, 616 F. Supp. 641, 643 (D. Mass. 1985); *Crosby v. America Online, Inc.*, 967 F. Supp. 257 (N.D. Ohio 1997); and *Sherwood v. Microsoft Corp.*, 91 F. Supp.2d 1196 (M.D.Tenn. 2000). The removal statutes, 28 U.S.C. §1441 *et seq.*, are to be strictly construed. *Shamrock Oil Corp. v. Sheets*, 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed.2d 1214 (1941). Any doubt as to the existence of federal jurisdiction must be resolved in favor of state court jurisdiction. *Bally v. National Collegiate Athletic Association*, 707 F. Supp. 57, 58 (D. Mass. 1988); *Freitas v. First New Hampshire Mortgage Corp.*, 1998 WL 657606 at *5 (D.R.I. 1998); *Rosack v. Volvo of America Corp.*, 421 F. Supp. 933, 937 (N.D.Cal. 1976), *stay den.*, 429 U.S. 1331 (1976).

As courts within this District have recognized on numerous occasions, the exercise of federal jurisdiction, particularly on removal, is not something to be undertaken lightly. *See Santiago v. Barre National, Inc.*, 795 F. Supp. 508, 511(D. Mass. 1992) ("Removal statutes ... are to be strictly construed in order to further principles of judicial economy and comity."). Federal courts "have a responsibility to police the border of federal jurisdiction." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001). In this case, Defendants have thoroughly failed to establish the necessary predicates to federal jurisdiction.

### B.  Congress' Intention Is Clear – CAFA Should Not Apply to Cases Currently on File

The CAFA applies to "any civil action commenced on or after the date of enactment of this Act." 119 Stat. 4, § 9. The language of the Act is plain, any pending action commenced prior to the enactment of CAFA is not governed by CAFA. While the

language is explicit, Congress' intent regarding the meaning of the term "commenced" is also very clear.

When such intent is available to the Court, it controls. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 n.9 (1984) ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

> Where the language of the statute is clear ... the text of the statute is the end of the matter. However, if the language of the statute is unclear, we attempt to discern Congress' intent using the canons of statutory construction. If the tools of statutory construction reveal Congress' intent, that ends the inquiry.

*U.S. v. Cooper*, 396 F.3d 308, 310-11 (3rd Cir. 2005) (internal citations and quotations omitted). Here, congressional intent is evident in two separate ways: (1) earlier versions of the bill included retroactive language that was removed from the final statute; and (2) legislators on both sides of the bill agreed the bill was not to apply retroactively.

      1.     Similar Bills Contained An Express Retroactive Provision That Did Not Survive The Final Draft

Over the past three years, bills similar to the CAFA were introduced in Congress. These bills contained language expressly creating retroactive effect. For example, on March 6, 2003, H.R. 1115 was introduced in the House. (Copy attached as Ex. 2 at 18-19). This bill, like the CAFA, sought to allow limited resort to federal tribunals for some class actions. While the Senate rejected the bill, its language is instructive. It provided as follows:

The amendments made by this Act shall apply to –

> (1) any civil action commenced on or after the date of the enactment of this Act; and
>
> (2) any civil action commenced before such date of enactment in which a class certification order (as defined in section 1332(d)(1)(C) of title 28, United States Code, as amended by section 4 of this Act) is entered on or after such date of enactment.

*Id.* at 18-19. Similarly, House Bill H.R. 516, which was introduced in the House on February 2, 2005, contained this same retroactive language and was rejected. (Copy attached as Ex. 3 at 18). The rejected language would have allowed defendants to remove pending class actions where a class certification order had not yet been entered or was entered after the date of enactment of the bill. The final version of the CAFA does not contain this language.

Thus, it is evident that Congress considered language allowing retroactive application of the CAFA and rejected it. In addition to this refusal to adopt retroactive language, Congress explicitly stated its intent that the CAFA not apply to currently filed cases.

### 2. In Addition To The History Of Prior Bills, The Legislators Made Their Intent Expressly Known

In addition to Congress' refusal to include retroactive language in the final bill, it made clear its intent that the CAFA, in its final form, was not meant to apply to already-filed cases.[5] Senator Dodd, a key supporter of the bill and architect of the version enacted into law, described the compromises made to get the bill passed. He stated as follows:

> Mr. DODD. As a result of our negotiations, we came back with 12 improvements in this bill, agreed to by myself, Senators FRIST, GRASSLEY, KOHL, LADRIEU, and SCHUMER, [including the following]:

---

[5] The CAFA was the result of the Senate passing its compromise bill, S.5, and the House passing the identical bill without amendment.

8

> THE COMPROMISE IS NOT RETROACTIVE.
> Unlike the House bill, the compromise will not retroactively change the rules governing jurisdiction over class actions.

151 CONG. REC. S1077 – S1079 (daily ed. Feb. 8, 2005), (Copy attached as Ex. 4).

Senator Dodd described this agreement as follows:

> First, it does not apply retroactively, despite those who wanted it to. **A case filed before the date of enactment will be unaffected by any provision of this legislation.** Second, this legislation does not distinguish in any way or alter a pending case.

151 CONG. REC. S1080 (daily ed. Feb. 8, 2005)(emphasis added), (Copy attached as Ex. 5).

Senator Kennedy, an opponent of the bill, emphasized that the bill would not affect cases already pending in state court on the date of enactment. He stated as follows:

> A case now pending in a Massachusetts State court illustrates how the bill deprives local citizens of access to their own State courts when they become innocent victims of widespread pollution occurring in their hometowns.
>
> In April 2003 an oil barge ran aground on Buzzard's Bay off the coast of New Bedford, MA, spilling 98,000 gallons of oil into the bay and polluting almost 90 miles of beaches and sensitive tidal marshes in the area. Homeowners filed a class action suit in State court asking for compensation for the damage to their property. One of the defendants, Bouchard Transportation Company, has already been convicted of criminal negligence in causing the spill. The defendant companies are from out of state. Even though the case occurred entirely under Massachusetts laws, if the current bill, the proposed bill, had been in effect when the case was filed, this case could be removed to Federal court even though all the victims are full-time Massachusetts residents and seeking relief in Massachusetts courts under Massachusetts laws.
>
> **Because this bill is not retroactive, the case will not be affected by this bill**, but with the passage of this act, similar future cases, properly brought in the courts of the state where the harm occurs, can be removed to the Federal courts. As a result, the victims will often be confronted by class action certification procedures more onerous than those in their State courts. They will face delays from congested Federal dockets. They will have to travel greater distances from their homes to the courthouse. The procedural changes

in this bill seem abstract, but they will have a devastating consequence for real people.

151 CONG. REC. S1087 (daily ed. Feb. 8, 2005) (emphasis added), (Copy attached as Ex. 6).

Senator Specter, Chairman of the Senate Judiciary Committee and a supporter of the bill, stated:

> I think the Senate bill – this may be a little parochial pride – is more in keeping with an equitable handling of class action bills than is the House bill. **For example, the House bill would be retroactive and apply to matters now pending the State courts, which would be extraordinarily disruptive of many State court proceedings.** I think it is fair and accurate to say that the House bill is more restrictive than the Senate bill and our Senate bill, I think, is a better measure to achieve the targeted objective of having class actions decided in the Federal court with balance for plaintiffs and for defendants as well.

151 CONG. REC. S1225 (daily ed. Feb. 10, 2005)(emphasis added), (Copy attached as Ex. 7).

Representative Udall of Colorado, an opponent of the bill, stated:

> **Unlike earlier versions, S.5 [the CAFA] would not have a retroactive effect, so it would not affect pending cases.** It also does not include a provision for immediate interlocutory appeals of denials of class action certification, or for a stay of all discovery while the appeal was pending. And in several other ways, it differs for the better from previous versions.

151 CONG. REC. H 741 (daily ed. Feb. 17, 2005) (emphasis added), (Copy attached as Ex 8).

Representative Goodlatte, a supporter of the bill, stated:

> Now the truth about class action fairness and Vioxx. Critics have been arguing in the press that S.5 should be rejected because it will hurt consumers bringing Vioxx cases against Merck. The truth is, however, that this legislation will have absolutely no effect on Vioxx suits, and here is why.
> …
> Most of the class actions have been brought against Merck. **Since the legislation is not retroactive, it would absolutely no effect on the 75 class actions already filed** against Merck in the wake of the Vioxx withdrawal.

151 CONG. REC. H 753 (daily ed. Feb. 17, 2005)(emphasis added), (Copy attached hereto as Ex. 9).

The above-quoted language, as well as the changes made to the rejected House Bills, H.R. 1115 and H.R. 516, clearly evidence the intent of Congress to reject retroactive application of the CAFA. In fact, not a single legislator, supporter or opponent of the CAFA, in any floor statement or report remotely suggests that Defendants' interpretation of "commenced" is correct.

Accordingly, the word "commenced" within the context of the CAFA (and as interpreted in Massachusetts) means the date of filing of the complaint in state court, not the date of removal to federal court. This interpretation is consistent with the language used by Senator Dodd when he clearly stated: "A case filed before the date of enactment will be unaffected by any provision of this legislation." 151 CONG. REC. S1080 (daily ed., Feb. 8, 2005). (Copy attached as Ex. 5).

### C. The Identical Argument Advanced by Defendants Has Already Been Denied By Other Courts

In *Pritchett v. Office Depot, Inc.* 360 F. Supp.2d 1176 (D.Colo. Mar. 9, 2005), the court was faced with the same argument, should the Class Action Fairness Act apply to an action filed in state court prior to the effective date of the Act? The *Pritchett* court, in ruling that CAFA did not apply, sought guidance from Congress' intent. *Id.* at 1179. After reviewing the entire reported Congressional hearings, the Court found "no specific statement of contrary intent by any legislator evincing an intention that the Act permit removal of presently-pending cases." *Id.* at 1180. In fact, "it is clear that both supporters and opponents of the bill in both houses understood that the Act would not apply to pending cases." *Id.* at 1179. Accordingly, the court determined that the term

11

"commenced" in section 9 of the CAFA refers to the date the action was first filed in a court of proper jurisdiction and not the date of removal to federal court. *Id.* at 1181. "To read the word 'commenced' in the context of the Act to refer to the filing of a Notice of Removal would require a strained reading of the word in both the colloquial and legal sense." *Id.* at 1180. Finding that the CAFA did not apply to presently pending class actions, the *Pritchett* Court granted Plaintiff's Motion to Remand. *Id.* at 1181.

The Tenth Circuit has also held that the term "commenced" for purposes of the CAFA means when the action was first filed in state court and not when it was removed to federal court. *Pritchett v. Office Depot, Inc.*, 404 F.3d 1232, 1238 (10th Cir., Colo, April 11, 2005). After reviewing the language and legislative history of CAFA, looking at public policy and prior precedent, and applying the intent of Congress with a reasonable narrow construction of the term "commenced," the Court of Appeals concluded that removal to federal court does not "commence" an action for purposes of CAFA. *Id.* at *1235-38. Permitting removal would allow Defendant to apply new rules to "a statute that was designed, in the first place, to curtail jurisdictional gaming and forum-shopping." *Id.* at *1238.

### D.   "Commenced" Means When The Complaint Was Filed In Suffolk Superior Court On December 23, 2004

Mass. R. Civ. P. 3 states: "A civil action is commenced by (1) mailing to the clerk of the proper court by certified or registered mail a complaint and an entry fee prescribed by law, or (2) filing such complaint and an entry fee with such clerk." "Commencement of the action must always precede service." 6 JAMES W. SMITH, HILLER B. ZOBEL, Rule Practice, § 4.2. (1996). "It should be noted that in all cases under the Rules of Civil Procedure, an action is considered commenced, for all practical purposes, including the

applicable statute of limitations, when the plaintiff mails (registered or certified) to the clerk the complaint and entry fee, or when the clerk receives the complaint and fee," 9 JOSEPH R. NOLAN & BRUCE HENRY, *Civil Practice* § 8.11 (3d ed. 2004).

Mass. R. Civ. P. 15(c) states: **"Relation Back of Amendments**. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading." The law in the Commonwealth with respect to amendments is more liberal than elsewhere - an amendment to a complaint relates back to the date of the original writ. *Wadsworth v. Boston Gas Company*, 352 Mass. 86, 89 (1967).

The plain meaning of the word "commenced" has been interpreted by a court within this District. In *Santiago v. Barre National, Inc.*, 795 F. Supp. 508, 510 (D. Mass. 1992), the court (Woodlock, J.) in deciding whether removal was barred by the one year statutory prohibition, ruled that the action was commenced by the filing of the complaint in state court. "The question of when an action 'commences' is to be determined by the applicable state law." *Id.* at 510 (citations omitted). "Under Mass. R. Civ. P. 3, [a] civil action statute is commenced by (1) mailing to the clerk of the proper court by certified or registered mail a complaint and an entry fee prescribed by law, or (2) filing such complaint and an entry fee with such clerk." *Id. See also Finkel v. Natale Rota, Inc.,* 19 Mass.App.Ct. 55, 56 n.2 (1984), *rev denied*, 393 Mass. 1106 (1985) (action is "commenced" by delivering the complaint and the entry fee to the clerk of the proper court or by mailing them to the clerk by certified or registered mail).

The statute relied upon by Defendants in removing this case, 28 U.S.C. § 1446(b), and the cases that have interpreted the meaning of "commencement" in the statute, support Plaintiffs' argument. 28 U.S.C. § 1446(b) states that "a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after **commencement** of the action." (emphasis added). "[A] common sense reading of the text of the statute," *Burke v. Atlantic Fuels Marketing Corp.*, 775 F. Supp. 474, 477 (1991), demonstrates that removal is improper if it occurs more than one year after the action first commences. *Id.*

Another court took a pragmatic approach and interpreted the plain meaning of the word "commenced." *Barron v. American Motorists Ins. Co.*, 170 F. Supp. 412, 414 (D.C. Tex. 1958).

> The definition and application of the word 'commenced' is the term over which the controversy arises. Did the cases before us actually commence in the State court or Federal court? A suit must commence somewhere. It can't be removed until it has been commenced. You can't remove something that doesn't exist.
> 'Commence. * * * to begin, to perform the first act of; as, to commence a lawsuit.' Webster.
> 'Commence. To do the first act in anything; to take the first step.' 7 Cyc. p. 405.
> 'Commence. Present Tense. To begin, or cause to begin to be, to do the first act, or take the first step, in anything, to enter upon, or to originate; to perform the first act of, to start;
> 'As in these phrases, 'commence actual operations,' 'commence an action for taxes,' 'commence a proceeding in error,' 'commence drilling operations' * * * 15 C.J.S. p. 247.
> 'Commencement. Defined in the Century Dictionary as the act or fact of commencing; beginning; origin; first existence; inception. * * *' 15 C.J.S. p. 248.
> 'Commencement Of Action Or Other Proceeding. The commencement of an action to enforce a right before the statute of limitations has run against it suspends the running of the statute * * *.' 54 C.J.S. Limitations of Actions § 261, p. 290.
> A word or a term used in any document whether it be a contract or an act

of law must be taken in its usual meaning. 'Commence' means to begin according to Webster and according to the universal adoption of the word.

*Barron.*, 170 F. Supp. at 414 (concluding "[w]e think that … the act means what it says and that commenced applies to the beginning of a lawsuit when filed in any court holding jurisdiction of the parties and subject matter.").

Regardless of whether one looks at the well-established law in Massachusetts, the clear intent of Congress, or the plain meaning of the word "commence," the answer is the same. Commencement of this action occurred when it was first filed with Suffolk Superior Court on December 23, 2004.

### E.  Defendants Cannot Overcome The Heavy Burden Necessary to Sustain Removal

"When a party removes a state court action to the federal district court on the basis of diversity of citizenship, and the party seeking remand challenges the jurisdictional predicate for removal, 'the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof.'" *American Buildings Company v. Varicon, Inc.*, 616 F. Supp. 641, 643 (D. Mass. 1985) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979); *See also, Hodges v. Demchuk*, 866 F. Supp. 730, 732 (S.D.NY. 1994) ("On a motion for remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper.")(citations omitted); *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) ("It is hornbook law that party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction.").

Defendants advance CAFA as their sole ground for removal of this consumer class action predicated solely upon state law. Defendants overlook the Massachusetts

15

Rules of Civil Procedure and fail to cite a single Massachusetts authority to support their improper removal. In fact, Defendants' unsupported conjecture can best be summed up in their own papers -- "we believe [this] to be the correct view of the law ... ." (Notice of Removal, ¶ 11). Given that the term "commenced" is clearly defined in Massachusetts by rule and case law and that this action was commenced on December 23, 2004, well before the enactment of CAFA, Defendants have not and cannot sustain their burden of demonstrating that removal was proper.

## IV. CONCLUSION

For the reasons advanced above, Plaintiffs' Motion to Remand this case to the Suffolk Superior Court Department should be ALLOWED.

DATED: May 19, 2005                           Respectfully submitted,

*/s/ Daniel D'Angelo*
Robert J. Bonsignore, BBO# 547880
Daniel D'Angelo, BBO# 630321
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Tel: (781) 391-9400
Fax: (781) 391-9496

ATTORNEYS FOR PLAINTIFFS