# EXHIBIT 5

settlement can only be paid in proportion to the percentage of coupons actually redeemed. For example, if an attorney's fee for obtaining a coupon settlement is $5 million but only one-fifth of the coupons are actually redeemed, the attorney can only recover one-fifth of his or her fee—roughly $1 million.

In addition, the bill requires that a judge may not approve a coupon settlement until he or she conducts a hearing to determine whether settlement terms are fair, reasonable, and adequate for class members.

There are other provisions of the bill that are also important.

In the interest of time—I see my colleague from Mississippi also wants to speak before our colleague from Illinois offers the first amendment—I will defer discussing them in detail at this hour. However, to reinforce my central argument that this is a reasonable, modest piece of legislation, it is worth mentioning what the bill does not do.

First, it does not apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be unaffected by any provision of this legislation.

Second, this legislation does not distinguish in any way or alter a pending case.

Third, it does not in any way alter substantive law or otherwise affect any individual's right to seek equitable and monetary relief.

Fourth, in does not in any way limit damages, including punitive damages.

Fifth, it does not cap attorney fees.

These are all matters that some people wanted to include in the bill.

And, it also does not impose more rigorous pleading requirements of evidentiary burdens of proof.

As some of our colleagues have said, this legislation is actually more court reform than tort reform. Candidly, I think they are more right than wrong about that. This is more court reform than tort reform. It stands in very sharp contrast to some of the other legislation considered by the Senate in the last Congress. That includes the Energy bill, which extinguished pending and future suits against makers of MTBE, a highly toxic substance that pollutes ground water.

It also includes legislation that shielded gunmakers and gun dealers from many types of lawsuits.

Incredibly, we were about to adopt legislation that would completely exclude an entire industry even when there was complete negligence on their behalf of being sued. I suggested when we were about to adopt those bills that Members think about talking about tort reform. Those matters cause this Senator deep concern, despite the fact I represent the largest gun producers in the United States. I cannot imagine my insurance companies getting a deal as the gun manufacturers were about to get. Nonetheless, those bills died, as they should have, in my opinion.

The legislation before the Senate today does not close the courthouse door to a single citizen in this country. Maybe that citizen will end up in Federal court rather than State court, but no citizen will lose the sacred right in America to seek redress or grievance in a court of law.

When this compromise was written 15 months ago, it was said that it was critical that this bill be honored as the bill moves forward—both within and beyond the Senate. I continue to believe that to be the case.

In the words of the Senator from Kentucky earlier today, as well as statements made by Speaker HASTERT, this Member is assured that, in fact, the agreements will be kept. In fact, I had a conversation with the staff of Mr. SENSENBRENNER, chairman of the House Judiciary Committee, who reinforced the notion that if we adopt this bill as it presently reads, then there will no changes in the House and they will accept the Senate language. That is good news for those of us who have worked on this compromise.

Certainly, this is not a perfect bill. No bill is. We all know that, but I think it strikes a careful balance between remedying the shortcomings and retaining the strengths of current class action practice in this country.

Obviously, the bill is not yet through the Senate. But the consent agreement entered into by the two leaders is an auspicious beginning to preserving the balance.

Let me, once again, reiterate my thanks to Senator REID of Nevada, the distinguished Democratic leader, and for Senator FRIST entering into that agreement which allows us to have this debate, and for all relevant and germane amendments to be considered to this legislation. Certainly, that is the way it ought to be done.

Moreover, I note that the leadership of the other body has indicated its willingness to respect the balance that this bill strikes, as well. That, too, is a positive development.

I stand in strong support of this legislation. I think it is a good compromise. It is not a perfect one. I know my colleagues may offer some amendments that I might have been attracted to under different circumstances which I may support, but when you try to reach agreement here, it is not easy. And when you do, I think it is worthy of support, particularly when those agreements cover as much territory as we did during the compromise efforts 15 months ago.

As I mentioned at the outset, there were four proposals with which we ended the negotiations. Those four proposals were adopted, and eight others were added during that negotiation.

I commend again the leader. I commend Senators SPECTER and LEAHY for their efforts, and I look forward to this bill passing the Senate and being adopted by the House and going to the President for his signature.

I yield the floor.

The PRESIDING OFFICER. The Senator from Mississippi.

Mr. LOTT. Mr. President, I rise today in strong support of the Class Action Fairness Act of 2005.

Before he leaves the floor, I thank the Senator from Connecticut, Mr. DODD, for his comments and for his leadership in this area. He has been steadfast. He has been involved in the process of moving this bill forward. A process which involves some give and take and some compromise.

Surprise, surprise. That is the legislative process. This is not a perfect bill, as he noted. It is not one that I particularly like. I would like to make it a lot stronger, but it is a major step forward.

I thank Senator DODD, and other Senators. Senator CARPER has been involved in that process, and colleagues on this side of the aisle.

I am pleased that the first substantive bill of the year is one that truly has a chance to make a huge difference in this country, and it is a bipartisan effort. It is one that I predict, when we go through the amendment process and get to the end, will have a large vote in support. I will not be surprised if it gets 70 votes. I hope for that. That would be a positive step.

If we can hold the line on amendments that may be offered—some that I would be attracted to, some that Senators such as Senator DODD would be attracted to—but we worked out an agreement. We should brush back those amendments, discourage a whole raft of amendments being contemplated, and complete our work. The House has indicated they will accept this product—the compromise we came up with. When was the last time you heard of that even being possible?

But they have reaffirmed just in the last few days that, yes, if we can complete it the way it is presently structured, they will take it up, pass our bill, and send it to the President. That would be a good way to start this year.

I thank colleagues on both sides of the aisle for the work that has been done.

Senator HATCH is here managing the legislation. He has worked on this long and hard, including last year when we had an opportunity that slipped away from us for a variety of reasons. It was tough last year to get much of anything done with all of us preoccupied with the Presidential campaign and our Senate campaigns and the House races. There is no use going back and rehashing why we didn't get it completed. We didn't get the job done. But we can do it now.

I thank Senator HATCH for the work he has done on this bill over the years, and Senator SPECTER for getting it out of the Judiciary Committee in good order. I thank Senator GRASSLEY for his usual dogged determination to not give up on an issue, and he continues to press not only this but the bankruptcy reform issues.

I am thankful for the way we are starting off this year. I thank the leadership for working out an agreement to