# EXHIBIT 6

excellent reason not to include them. This bill will harm victims of civil rights and labor law abuses by delaying their cases and making it much more difficult and much more expensive for them to obtain the justice they deserve. It may even discourage many from seeking any relief at all.

That is not what this bill was meant to do. We were told this bill was about cases in which individuals from across the country receive relief in State courts for relatively minor violations—sometimes getting just a coupon or a few dollars in a case they didn't even know about while a few elite attorneys receive more megadollar fees. Civil rights and wage-and-hour class action suits are not about minor violations. They are about serious, sometimes devastating harm to people who have been treated unfairly and are seeking their day in court; people such as Mary Singleton, a long-term employee at a scientific laboratory in California who joined a gender discrimination class action after her employer refused to give her and other female employees equal pay for equal work. Ms. Singleton and her coworkers filed their case in State court because State law provided greater protection against gender discrimination and retaliation and because the Federal court rules would have placed additional limits on discovery.

This bill would also harm people such as Georgie Hartwig who spent 6 years working at a national discount retailer in Colville, WA. For years, Ms. Hartwig and her fellow workers were forced to work off the clock, skipping breaks and lunch, but not being paid for their time. Now she is fighting, along with 40,000 coworkers, to get the wages they have earned. This bill was not supposed to make it harder for people such as Ms. Hartwig to get justice.

We were also told this bill would not shift cases to Federal courts unless they truly involve national issues, while State cases would remain in State court. The bill's actual effects are quite different. It does not just affect cases where the events affect people in multiple States; under this bill, a corporate defendant with headquarters outside the State can move State class action cases, including civil rights cases and worker right cases, into Federal court, even if all the underlying facts in the case happened in a single State. Think about that. If 100 workers in Alabama sue their employer under Alabama law for job discrimination that occurred in Alabama, this bill says the employer can drag their case into Federal court if the employer happens to be incorporated in Delaware. That makes no sense.

The bill would also apply to cases that seek justice for other strictly local events such as environmental damage. That is not what this amendment is about. This problem, which is affecting us now in Massachusetts, illustrates the fact that this bill is not just about truly national cases, as supporters keep insisting.

A case now pending in a Massachusetts State court illustrates how the bill deprives local citizens of access to their own State courts when they become innocent victims of widespread pollution occurring in their hometowns.

In April 2003 an oil barge ran aground on Buzzard's Bay off the coast of New Bedford, MA, spilling 98,000 gallons of oil into the bay and polluting almost 90 miles of beaches and sensitive tidal marshes in the area. Homeowners filed a class action suit in State court asking for compensation for the damage to their property. One of the defendants, Bouchard Transportation Company, has already been convicted of criminal negligence in causing the spill. The defendant companies are from out of State. Even though the case occurred entirely under Massachusetts laws, if the current bill, the proposed bill, had been in effect when the case was filed, this case could be removed to Federal court even though all the victims are full-time Massachusetts residents and seeking relief in Massachusetts courts under Massachusetts laws.

Because this bill is not retroactive, the case will not be affected by this bill, but with the passage of this act, similar future cases, properly brought in the courts of the State where the harm occurs, can be removed to the Federal courts. As a result, the victims will often be confronted by class action certification procedures more onerous than those in their State courts. They will face delays from congested Federal dockets. They will have to travel greater distances from their homes to the courthouse. The procedural changes in this bill seem abstract, but they will have a devastating consequence for real people.

First and foremost, it reduces each State's power to protect its own citizens and enforce its own laws. Moving these cases to Federal court will often end them for all practical purposes. Federal courts may decide they do not meet the Federal rules for class certification. Even if the cases are not dismissed, plaintiffs forced into Federal court on State law claims have the decks stacked against them in Federal court because Federal courts take the narrowest possible view in interpreting State laws. The First and Seventh Circuits ruled in interpreting State laws Federal courts must take the view that narrows liability. State judges should be the ones who interpret State laws, not Federal "big brother."

Often State laws have greater protections than Federal laws. That is the genius of our Federal system. Many States have stronger minimum wage laws and greater overtime protections than Federal law. Fourteen States and the District of Columbia have a higher minimum wage than the Federal standard. Twenty states have overtime laws that give workers greater protection than the Federal Fair Labor Standards Act. Over 20 States have child labor laws that are more protective than Federal child labor laws.

At a time when the administration is bent on undermining overtime at the Federal level, State law protections are more important than ever.

States are also pioneers in protecting civil rights. Many States, such as California, Minnesota, New Jersey, New York, Rhode Island, Washington, and West Virginia, have greater protections for persons with disabilities than the Federal Americans With Disabilities Act. States are also in the forefront of protecting against discrimination based on family status or citizenship.

A majority of States prohibits genetic discrimination in the workplace, a new and troubling form of discrimination where the Federal Government has been too slow to respond. Our proposal, to prohibit genetic discrimination under Federal law, passed 95–0 in the Senate, but it stalled in the House. When States act ahead of the Federal Government to provide greater rights for their citizens, State courts should be allowed to interpret their own laws. State courts, not Federal courts, have the expertise in exerting the will of the State legislature and they should have the right to do so.

We all know what is going on. We should call this bill the "Class Action Hypocrisy Act of 2005." Our colleagues love to proclaim States rights when Congress tries to expand the rights of law in all 50 States, but they do not hesitate to override States rights to help their business friends. This bill is a windfall for guilty corporate offenders. It even allows repeat offenders to drag State cases into Federal court and allows them to spend months litigating whether the case belongs there. If the Federal court decides that the case does not fit the narrow rules set by the bill and should be sent back to State court, that will cause another delay because the employer can appeal the decision. Delay is a serious problem today in many Federal trial courts across the country.

Paul Jones, an employee of Goodyear Tire Company in Ohio, found that out the hard way. He and other workers in their fifties filed an age discrimination case in the State court in Akron. All they wanted was to be judged by their ability, not their age. His attorney said, We file our class action lawsuits in the Ohio State court system because it is our experience these cases move much more rapidly in the State court than they would if filed in the Federal court system. The difference in the amount of time it takes to adjudicate a State court age discrimination case compared to a Federal court case may be as much as 2 years. No wonder the corporate defendants are salivating over this opportunity to escape the liability for their wrongs.

Paul Jones had a State law claim in State court, but his employer tried to have it dismissed based on Federal court rulings that certain types of arguments in age discriminations were invalid. The State court rejected that argument. It held that Mr. Jones could