# EXHIBIT 7

Mr. McCAIN. Madam President, I ask unanimous consent that the order for the quorum call be rescinded.

The PRESIDING OFFICER. Without objection, it is so ordered.

(The remarks of Mr. McCAIN and Mr. LIEBERMAN pertaining to the introduction of S. 342 are located in today's RECORD under "Statements on Introduced Bills and Joint Resolutions.")

Mr. McCAIN. I suggest the absence of a quorum.

The PRESIDING OFFICER (Mr. ENSIGN). The clerk will call the roll.

The assistant legislative clerk proceeded to call the roll.

Mr. SPECTER. Mr. President, I ask unanimous consent the order for the quorum call be rescinded.

The PRESIDING OFFICER. Without objection, it is so ordered.

## CONCLUSION OF MORNING BUSINESS

The PRESIDING OFFICER. Morning business is closed.

## CLASS ACTION FAIRNESS ACT OF 2005

The PRESIDING OFFICER. Under the previous order, the Senate will resume consideration of S. 5, which the clerk will report.

The legislative clerk read as follows:

A bill (S. 5) to amend the procedures that apply to the consideration of interstate class actions to assure fairer outcomes for class members and defendants, and for other purposes.

Pending:

Durbin (Modified) Amendment No. 3, to preserve State court procedures for handling mass actions.

Feingold Amendment No. 12, to establish time limits for action by Federal district courts on motions to remand cases that have been removed to Federal court.

Mr. SPECTER. Mr. President, I thank Senators on both sides of the aisle for their cooperation in moving this class action bill. We reported it out of committee a week ago today and started the opening debate on it on Monday afternoon and then proceeded in a very timely fashion. The prospects are good that we will conclude action on the bill today. A unanimous consent agreement is currently in the process of being worked out, and we will know in the next few minutes precisely what will happen.

We are going to proceed in a few minutes to the amendment offered by the Senator from Wisconsin, Mr. FEINGOLD, which would impose some time limits on the courts which, as I said at the committee hearing last week, I think is a good idea. I advised Senator FEINGOLD that I would feel constrained to oppose it on this bill because of the procedural status, where the House of Representatives has been reported to accept the Senate bill provided it comes over as what we call a clean bill, without amendments.

But as I said to Senator FEINGOLD, and will repeat for the record, I had heard many complaints about delays in our Federal judicial system. I believe that is an appropriate subject for inquiry by the Judiciary Committee on a broader range than the issue specifically proposed by Senator FEINGOLD. It is in the same family.

I want to be emphatic. We are not impinging in any way on the independence of the Federal judiciary, their discretionary judgments. But when it comes to time limits, how long they have these matters under advisement, I think that is an appropriate matter for congressional inquiry. It bears on how many judges we need and what ought to be done with our judicial system generally. So that will be a subject taken up by the Judiciary Committee at a later date.

I think the Senate bill—this may be a little parochial pride—is more in keeping with an equitable handling of class action bills than is the House bill. For example, the House bill would be retroactive and apply to matters now pending in the State courts, which would be extraordinarily disruptive of many State court proceedings. I think it is fair and accurate to say that the House bill is more restrictive than the Senate bill and our Senate bill, I think, is a better measure to achieve the targeted objective of having class actions decided in the Federal court with balance for plaintiffs and for defendants as well.

So we are moving, I think, by this afternoon, to have a bill which will be ready for concurrence by the House, and signature by the President, and that I think will be a sign that we are moving forward on the legislative calendar.

The Senator from Louisiana is going to seek recognition in a few minutes. I thank my distinguished colleague, Senator HATCH, the former chairman, who has agreed to come over and manage the bill during my absence. We are, at the moment, having hearings on the bankruptcy bill which we hope to have in executive session next Thursday, to move ahead on our fast moving, ambitious judiciary calendar.

I now yield to my distinguished colleague from Louisiana.

The PRESIDING OFFICER. The Senator from Louisiana.

Mr. VITTER. Mr. President, I rise in strong support of S. 5, the Class Action Fairness Act of 2005. In doing so, I wish to recognize and thank them for their leadership, so many Senators who have moved the bill thus far, certainly including the chairman of the Judiciary Committee who just spoke, also the Senator from Iowa, the chief sponsor of the bill, and also the Senator from Utah, the former chairman of the Judiciary Committee.

I am also an original cosponsor of this bill, because it would protect consumers from some of the most egregious abuses in our judicial system.

Let me begin by saying that class actions are an important part of our justice system. They serve an important purpose when properly defined. No one would dispute they are a valuable feature of the legal system. This bill doesn't do away with them.

As stated so eloquently by the bill's chief sponsor, my colleague from Iowa, S. 5 is really court reform more than tort reform. What does it reform? What is the problem?

The reason we need to pass this bill is that there are loopholes in the class action system, and it allows bad actors to game the system. As a result, in recent years class actions have been subject to abuses that actually work to the detriment of individual consumers, plaintiffs in such cases. That is exactly who the law is supposed to help.

Additionally, this gaming of the system clearly works to the detriment of business and our economy, and the need for job creation in forging a strong economy.

Such abuses happen mainly in State and local courts in cases that really ought to be heard in Federal court.

We currently have a system, therefore, which some trial lawyers seeking to game the system in an effort to maximize their fees seek out some small jurisdiction to pursue nationwide cookie-cutter cases, and they act against major players in a targeted industry. Often, these suits have very little, if anything, to do with the place in which they are brought. Rather, lawyers select the venues for strategic reasons, or for political reasons, a practice known as forum shopping.

These trial lawyers seek out jurisdictions in which the judge will not hesitate to approve settlements in which the lawyers walk away with huge fees and the plaintiff class members often get next to nothing. The judges in these jurisdictions will decide the claims of other State citizens under their unique State law. They will use litigation models that deny due process rights to consumers and defendants.

Often the decisions coming out of these hand-picked and carefully selected venues are huge windfalls for trial lawyers and big law firms and a punch line for consumers and the people the lawyers claim to represent. There is now in our country a full blown effort aimed at mining for jackpots in sympathetic courts known as "magnet courts" for the favorable way they treat these cases.

Let us look at a few examples of exactly what I am talking about. Perhaps the best example nationwide, in terms of preferred venues for trial lawyers, is Madison County, IL, where class action filings between 1998 and 2000 increased nearly 2,000 percent. There is actually an example of a South Carolina law firm filing a purported class action on behalf of three named plaintiffs. None of them lived in Madison County, IL, but the lawsuit was filed in that jurisdiction against 31 defendants throughout the United States. None of those defendants were located in Madison County. These lawyers based the alleged jurisdiction on the mere allegation that some as yet unknown class