# EXHIBIT 8

stewardship, I don't think th achievement would have become a reality.

I come from Illinois—the Land of Lincoln—where downstate Madison County has the dubious distinction as a personal injury lawyer's paradise. No, there are not palm trees or sandy beaches there. Instead, Madison County, Illinois, is home to very warm courtrooms where frivolous lawsuits are filed virtually everyday.

Why's Madison County? The answer: "venue shopping."

Cagey trial lawyers have figured out there's a pretty good likelihood their case—no matter what its merit—will literally get its day in court because of favorable judges.

To use a sports analogy, thanks to willing judges, personal injury lawyers get to play on their "home court" each and every time they file a frivolous lawsuit there.

For instance, a legendary class action case from Madison County illustrates what's wrong with the current legal system.

In 2000, Cable TV customers who filed suit over their cable operator's late fee policy won their case, but received nothing . . . not a dime, not a nickel, not a Lincoln penny. Instead, their $5.6 million settlement went directly into the pockets of their attorneys. How is that justice? How does that help victims?

The American people deserve better. Our working families demand better.

Today's action takes a step in the right direction to end the so-called Tort Tax.

The Tort Tax makes consumers pay more for the goods and services they use.

The Tort Tax adds to the cost of everything we buy because businesses and manufacturers have to cover themselves and their employees—just in case they get sued by a greedy personal injury lawyer.

At last estimate, this outrageous Tort Tax cost the nation's economy $246 billion a year, and by 2006, it will cost the average American nearly $1,000 more each year on their purchases because of defensive business practices.

In closing, as a matter of principle, damage awards should go to the victim, not the lawyers. Lawsuits should not be "strike it rich" schemes for lawyers.

There has to be some limit to what lawyers can take from their clients. Otherwise, cagey attorneys end up with the lion's share of the settlement and the victims end up with little more than scraps.

Mr. UDALL of Colorado. Mr. Speaker, the House has considered similar legislation in 1999, 2002, and 2003. On each of those occasions, I voted "no"—not because I was unalterably opposed to Congress acting on this subject, but because in my judgment the defects of those bills outweighed their potential benefits.

When it was announced that this bill would be considered, I hoped that the pattern would be broken and that this time I would be able to support the legislation. And if the Conyers substitute had been adopted, that would have been the case.

Adoption of the substitute would have greatly improved the legislation. It would have reaffirmed the authority and ability of each State's Attorney General to carry out his or her duties under State law. It would have made sure that the bill would not prejudice people with complaints about violations of their civil rights. It would have properly focused the legislation on class actions unrelated to personal injuries. It would have added important protections for the public's right to know about the proceedings in our courts. And it would have made other changes that would have improved the bill.

Unfortunately, the substitute was not adopted—and I have come to the reluctant conclusion that I must vote against the bill.

That conclusion is reluctant because in several ways this bill is better—or, more accurately, less bad—than its predecessors.

Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases. It also does not include a provision for immediate interlocutory appeals of denials of class action certification, or for a stay of all discovery while the appeal was pending. And in several other ways, it differs for the better from previous versions.

However, while the bill is less bad, in my opinion it still is not good enough. I remain unconvinced that the problem the bill purports to address is so great as to require such a sweeping remedy, and I am still concerned that in too many cases the side-effects of this treatment will be more severe than the disease.

Mr. Speaker, one of the most important rights we have as Americans is the ability to seek redress from the courts when we believe our rights have been abridged or we have been improperly treated. And, when a complaint arises under a State law, it is both appropriate and desirable that it be heard in State court because those are the most convenient and with the best understanding of State laws and local conditions.

Of course, it is appropriate to provide for removing some State cases to Federal courts. But I think that should be more the exception than the rule, and I think this bill tends to reverse that. I think it excessively tilts the balance between the States and the Federal government so as to throw too many cases into already-overburdened Federal courts—with the predictable result that too many will be dismissed without adequate consideration of their merits.

So, while I respect those who have urged the House to pass this bill, I cannot vote for it.

Mr. BLUMENAUER. Mr. Speaker, I agree with this bill's intent to prevent the legal system from being "gamed" by attorneys who lump thousands of speculative claims into a single class action lawsuit and then seek out a sympathetic State court. Any abusive or frivolous class action is a drain on the system and forces innocent defendants to settle cases rather than play judicial roulette with the risk of a huge unjustified settlement.

Unfortunately, instead of narrowly focusing on such abuses, Senate bill 5 completely reconfigures the judicial system, resulting in diminished corporate accountability and fundamental legal rights of individuals. While this bill makes some improvements to limit frivolous lawsuits, it does so at a price that will make it harder for average Americans to successfully pursue real claims against interests that violate their States' consumer health, civil rights, and environmental protection laws. This is an unnecessary tradeoff. I voted for a Democratic substitute motion which would have minimized some of these abuses. Sadly, it was defeated and, as a result, I voted against final passage.

I will continue to be open to changes that make our judicial system work better, but not at the expense of the people I represent. It is essential that we hold accountable the forces that have so much impact on the lives of every American.

Mr. WEXLER. Mr. Speaker, I rise today in strong opposition to the so-called "Class Action Fairness Act." I have strong objections to not only to the text of the bill itself but also to the very process by which it was strong-armed by the Republican leadership past the Judiciary Committee. This process did not allow any opportunity for committee members to raise our objections or to work constructively to fix the major problems in this legislation. This circumvention of regular order is being sold to us with a myriad of excuses, one of them is that the bill is a simple procedural fix for a judicial crisis with nothing controversial in it.

Nothing could be further from the truth. This bill is a federal mandate to undermine and all but kill the ability to raise class actions cases in State courts. Under this so-called "procedural bill," almost every class action lawsuit would be removed from State jurisdiction and forced onto an already overburdened Federal judiciary. Moving these cases to Federal court will make litigation more costly, more time-consuming and less likely that victims can get their rightful day in court at all. This bill is so preposterously far-reaching it would prevent State courts from considering class action cases that only involve State laws. We have already added so many State cases to Federal jurisdiction that if this bill passes victims will be added to the substantial backlog of Federal cases and will likely find it difficult to ever have their cases heard.

It should be obvious to even the most casual observer that the intent of this bill is to prevent class action lawsuits from ever being heard. Members should make no mistake about it—if we pass this misguided legislation, we will have effectively shut the door on civil rights, on workers rights and on anyone injured through corporate negligence.

Mr. Speaker, I urge my colleagues to join me in opposing one of the most destructive and far reaching civil justice measures ever considered by this body.

Mr. SHAYS. Mr. Speaker, I rise in support of S. 5, the Class Action Fairness Act.

This legislation will work to balance class actions. Currently, plaintiffs' lawyers take advantage of the system by bringing large, national lawsuits in specific jurisdictions with relaxed certification criteria.

Attorneys are increasingly filing interstate class actions in State courts, mostly in what are known as "magnet" jurisdictions. Courts in these jurisdictions are attractive to lawyers because they routinely approve settlements in which attorneys receive large fees and the class members receive virtually nothing, and they also decide the claims of other state's citizens under the court's state law.

This results in more and more class actions being losing propositions for everyone involved—except for the lawyers who brought them.

The Class Action Fairness Act works to improve our legal system by allowing larger interstate class action cases to be heard in Federal courts, closing the magnet jurisdiction loophole.

This bill will also make it easier for local businesses to avoid harassment. Currently,