UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge Patti B. Saris |

**RESPONSE TO PLAINTIFFS' MOTION FOR
ENTRY OF CASE MANAGEMENT ORDER NO. 4**

Defendants Pfizer Inc. and Warner-Lambert Company (together, "Defendants") submit this response to Plaintiffs' motion for entry of Case Management Order No. 4 ("CMO4").

## INTRODUCTION

Defendants have asked the Court to include in CMO4 language that would prevent duplicative prosecution of claims that are being prosecuted pursuant to the approach established by Judge Saris. Specifically, Defendants propose that the Case Management Order relating to the personal injury cases should provide as follows:

> All claims asserted in the Products Liability Cases other than those related to personal injury or products liability shall be prosecuted on behalf of plaintiffs by and at the direction of the Class Plaintiffs' Steering Committee established by this Court pursuant to Case Management Order No. 1. All non-personal injury and non-products liability claims asserted in the Products Liability Cases are subject to the Amended Class Complaint filed on February 1, 2005.

(Docket # 138 at Ex. A at 5-6.)

Plaintiffs' position with respect to the inclusion of this language is not clear. Although

they originally proposed the language, Plaintiffs now indicate either that (1) they cannot take a position as to the language until they have had an opportunity to consult with counsel for the plaintiffs in cases that are in the process of being transferred to this MDL, and/or (2) they oppose the language.

If Plaintiffs' position is that they need more time to formulate a position, Defendants would have no objection to holding this issue in abeyance pending Plaintiffs' submission of their final position, provided the submission is made promptly. (Defendants suggest a June 15 deadline, and they would request an opportunity to respond quickly and briefly to any further submissions by Plaintiffs.)

If Plaintiffs' position is that the language should not be included in CMO4, Defendants would urge the Court to reject that position and to hold them to their original position on the language. The omission of the language would jeopardize the orderly and efficient approach to this case that the three prior case management orders command.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants believe that the importance of the issue presented by the cross-motions relating to CMO4 can be fully appreciated only in context, and they understand that the cross-motions have been referred to Magistrate Judge Sorokin. For Magistrate Judge Sorokin's convenience, Defendants respectfully submit the following statement of the relevant factual and procedural background.

**Franklin v. Parke-Davis And The
Parallel Government Investigation**

In 1996, David Franklin, a former short-term employee of Warner-Lambert Company

("Warner-Lambert"), filed a qui tam case in this Court. Franklin alleged that in the mid-1990s, Parke-Davis, a division of Warner-Lambert, had conducted a campaign to promote the off-label use of the prescription drug Neurontin. He alleged that the campaign involved statements to physicians concerning the efficacy of Neurontin for off-label uses,[1] as well as payments to physicians. He alleged that the campaign had caused submissions of claims to Medicaid for reimbursement for prescriptions for off-label uses of Neurontin, and that these claims were false claims.

Franklin's complaint was unsealed by Judge Saris in January 2000. Shortly thereafter, Warner-Lambert disclosed in a public SEC filing that the United States Attorney's Office for this District was investigating Warner-Lambert's alleged off-label promotion of Neurontin.

**The Global Agreement And Its Triggering Of Waves Of Litigation**

Franklin's case and the government investigation proceeded on separate tracks until 2004. (The government never intervened in Franklin.) In January 2004, Pfizer Inc. ("Pfizer"), which

---

[1] Neurontin was approved as adjunctive therapy for epilepsy – in other words, as a secondary medication that may be used in conjunction with another, primary medication – in December 1993. Since then, Neurontin has gained widespread acceptance in the medical community for the treatment of neuropathic pain and other off-label conditions for which there are few, if any, FDA-approved medications. It is well-established that a physician may prescribe an FDA-approved drug to serve any purpose that he or she deems appropriate, regardless of whether the drug has been approved for that particular use by the FDA. Washington Legal Found. v. Henney, 202 F.3d 331, 333 (D.C. Cir. 2000); see also Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 350 (2001). A pharmaceutical company cannot, however, promote a drug for any uses other than the use or uses approved by the FDA. In May 2002, after the acquisition of Warner-Lambert by Pfizer Inc., the FDA approved Neurontin as safe and effective for the treatment of post-herpetic neuralgia, a type of neuropathic pain. (Defendant Warner-Lambert Company LLC's Sentencing Memorandum in United States v. Warner-Lambert Company LLC, Crim. No 04-10150-RGS, dated June 4, 2004 (hereinafter "Sentencing Memorandum"), at 3.)

acquired Warner-Lambert in June 2000, announced that it had taken a $427 million charge against 2003 earnings as a reserve sufficient to resolve all federal and state governmental investigations related to the promotion of Neurontin and Franklin. After the disclosure, lawsuits based on Franklin's allegations began to trickle in. The trickle became a torrent in the Spring of last year, after it was announced publicly that Defendants had reached a global resolution of the governments' claims and Franklin and that the resolution entailed total payments (including fines) in excess of $400 million.[2]

By mid-2004, dozens of cases were pending in numerous state and federal courts across the country. Some were purported consumer class actions in which the damages alleged were the amounts the consumers allegedly had paid for Neurontin for off-label uses. Others were purported class actions on behalf of third party payors (e.g., insurers), in which the third party payors' alleged damages were the amounts they allegedly had paid for Neurontin on behalf of,

---

[2]   Under the global resolution, Warner-Lambert Company LLC agreed to plead guilty to one count of introducing an unapproved drug into interstate commerce in violation of 21 U.S.C. §§ 331(d), 333(a)(2), and 355(a), and to one count of introducing a misbranded drug into interstate commerce in violation of 21 U.S.C. §§ 331(a), 333(a)(2), and 352(f)(1). The counts appeared in a criminal information filed in May 2004 in United States v. Warner-Lambert Company LLC, Crim. No. 04-10150 RLS (D. Mass.). The conduct charged in the information occurred before the end of August 1996, well before Pfizer acquired Warner-Lambert. Defendants were not charged with, and did not admit, any intent to defraud or mislead. Nor were they charged with causing harm to any patient.
   In connection with the plea, Warner-Lambert Company LLC agreed to pay a $240,000,000 criminal fine. Warner-Lambert Company LLC also agreed to settle potential civil claims under the federal False Claims Act, without any admission of liability, and to pay the United States $83,600,000, plus interest. It also agreed to settle all potential medicaid state claims relating to Neurontin and to pay to the fifty states and the District of Columbia, without any admission of liability, $68,400,000, plus interest. It also agreed to settle all potential consumer protection claims that could have been brought by the states and, without any admission of liability, to pay to the fifty states and the District of Columbia $38,000,000, plus interest.

for example, insured individuals for off-label uses. Various theories of liability were alleged, but every complaint had as its core factual allegations a litany derived from the complaint in Franklin concerning the alleged off-label marketing program.[3]

In June 2004, the plaintiffs in a number of these cases moved the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407 to transfer the federal cases to a single district for coordinated or consolidated pretrial proceedings. On October 26, 2004, the JPML granted the motions, transferring the 27 actions (from 16 districts) to this Court and, with the consent of this Court, assigning them to Judge Saris. The JPML explained that the cases all "involv[ed] allegations that common defendants have engaged in the illegal promotion and sale of the drug Neurontin for 'off-label' use . . . [and that] [c]entralization . . . is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings . . ., and conserve the resources of the parties, their counsel and the judiciary." (Transfer Order, dated October 26, 2004 at 1-2. (A copy of the Transfer Order is attached hereto as Exhibit A.))

**The Case Management Orders**

The first status conference in the case took place in late November 2004. Since then, Judge Saris has entered three Case Management Orders ("CMOs"). (Docket ## 15, 47, 62.)

The first CMO ("CMO1") was entered on December 16, 2004, "in order to promote judicial economy and avoid duplication," and based on a finding that "it would be appropriate to provide for consolidation and/or coordination of all actions filed, removed to, or transferred to

---

[3] In addition to these "consumer" and third-party payor cases seeking reimbursement for money spent on off-label uses of Neurontin, a number of personal injury/product liability cases also were filed. These are discussed in more detail below.

this District . . . ." (Docket # 15 at 3.) It applies to all cases "that become a part of this proceeding by virtue of being filed in, removed to, or transferred to this Court (including cases transferred pursuant to Local Rules[,] 28 U.S.C. § 1404(a), or 28 U.S.C. § 1407)." (Docket # 15 at 4-5.)

CMO1 established the procedure and schedule pursuant to which all plaintiffs were to re-plead on a consolidated and/or coordinated basis, Defendants were to move to dismiss the amended complaints, and the parties were to brief the motions. The provisions concerning re-pleading obviously were designed to coordinate and consolidate the many actions that had been transferred to this Court. It would also appear that, all things considered, the Court's intention was that the pleadings filed pursuant to the re-pleading provisions of CMO1 would be the only complaints on which this case (as then constituted, at least) would proceed. Indeed, CMO1 was intended to preclude the fracturing and complication of these proceedings via the pursuit of tag-along actions on a separate basis, and that it places the burden on any plaintiff that wishes to proceed separately to seek relief from the Court. (Docket # 15 at 10.)

Pursuant to CMO1, a First Coordinated Amended Complaint by multiple insurers and an Amended Class Action Complaint on behalf of putative classes of individuals and third-party payors, including insurers, have been filed. (Docket ## 30, 31.) Each of these complaints is over 100 pages long and contains extensive allegations concerning the alleged off-label marketing program. The complaints were filed on February 1, 2005, over two months after the initial conference, over nine months after the filing of the first Neurontin marketing and sales case in this district, over five years after the unsealing of the complaint in United States of America ex rel. David Franklin v. Parke-Davis, Division of Warner-Lambert Co., Civil Action No. 96-

11651-PBS, and nearly a decade after the alleged events and circumstances that were at issue in Franklin (which are, Plaintiffs' claims to the contrary notwithstanding, the only events and circumstances at issue here). Defendants have filed motions to dismiss both amended complaints. The briefing on the motions is complete. (Docket ## 58, 59, 60, 101, 122, 144.)

In addition to establishing the mechanics for the consolidation of the numerous actions that had been and were to be transferred here, CMO1 appointed Plaintiffs' Liaison Counsel, established the membership of Plaintiffs' Steering Committee, and defined the roles and responsibilities of liaison counsel and the steering committee. It also required initial discovery, established the procedure for the entry of a protective order (which has been entered), and required the preparation and presentation of further proposed CMOs (which have been entered). (Docket # 15 at 7-9, 11.)

The second CMO was entered on February 24, 2005. It establishes the schedule pursuant to which "[t]he case shall be conducted . . .." The third CMO was entered on March 22, 2005. (Docket # 62.) It contains extensive provisions concerning filing and service, discovery, and settlement.

**Status Of Discovery**

As noted, CMO1 required initial discovery, consisting of a process for making available to all plaintiffs the hundreds of thousands of pages of documents that Defendants had produced to Franklin. This process has been completed.

Plaintiffs and Defendants have served voluminous written discovery requests. A substantial volume of documents have been provided by Defendants. Counsel have conferred at length on multiple occasions to discuss the scope of discovery. In addition, initial disclosures

have been served.

**The Threats To The Orderly
And Efficient Handling Of This Case**

Since the MDL was first established and transferred to this Court, the JPML has been transferring additional cases to this Court. For the most part, the late arrivals have not threatened the structure and schedule established by Judge Saris. One case (the Assurant case) and one category of cases (the personal injury cases), however, could result in "duplicative discovery" and "inconsistent pretrial rulings," and could waste "the resources of the parties, their counsel and the judiciary." (Exhibit A at 2.)

**Assurant**

In Assurant Health, Inc., et al. v. Pfizer Inc., Docket No. 05-10535-PBS ("Assurant"), the plaintiffs are insurance companies and other entities that allegedly have purchased Neurontin or that are pursuing claims on behalf of entities that allegedly have purchased Neurontin. The plaintiffs allege, as do all of the other plaintiffs in MDL 1629, that Defendants engaged in a "false, deceptive, and misleading" off-label marketing program for Neurontin. They also allege that Defendants engaged in anticompetitive behavior with respect to Neurontin, consisting primarily of the pursuit of allegedly meritless litigation based on the patents on Neurontin.

The JPML transferred Assurant to this Court for inclusion in these proceedings on March 15, 2005. Thereafter, Assurant's counsel advised Defendants' counsel that they believed that Defendants had or would have an obligation to respond separately to their complaint (or possible amended complaint) and that they intended to proceed separately on their own complaint (or amended complaint). In response, Defendants filed an Emergency Motion for Stay or in the

Alternative, for Enlargement of Time, which sought either a stay of all proceedings in <u>Assurant</u> or an enlargement <u>sine die</u> of the time within which all Defendants must answer, move, or otherwise respond. Defendants argued that the <u>Assurant</u> plaintiffs should not be permitted to pursue their claims on a separate and duplicative track, particularly since it could lead to requests by other tag-along plaintiffs for similar treatment, which, if granted, would further complicate matters. (Docket # 64 at 8-9.) Judge Saris issued an Electronic Order on March 28, 2005 that "allow[ed] the motion for enlargement of time . . .," and that Order remains in effect. A motion to remand <u>Assurant</u> is under advisement.

**The Personal Injury Cases**

In April of this year, the JPML renamed this case <u>In re Neurontin Marketing, Sales Practices and Products Liability Litigation</u> and began to transfer to this Court cases in which the plaintiffs allege that they sustained personal injuries as a result of the alleged off-label promotion of Neurontin. While these cases (the "Personal Injury Cases") present scientific issues of specific and general causation and measures of damages that are not presented by the cases described above (the "Marketing Cases"), they also put in issue the same "allegations that common defendants have engaged in the illegal promotion and sale of the drug Neurontin for 'off-label' use . . . .'" (Exhibit A at 1-2.) Each complaint in the Personal Injury Cases contains the familiar litany, derived from complaint in <u>Franklin</u>, concerning the alleged campaign to promote Neurontin for off-label uses.

# ARGUMENT

## SECTION IV.A. SHOULD BE INCLUDED IN CMO4 TO AVOID REDUNDANT PROSECUTION OF PREVIOUSLY-ASSERTED CLAIMS

The Personal Injury Cases share with the Marketing Cases a core of identical factual allegations and causes of action. Liaison Counsel and the Steering Committee in the sales and marketing cases are pursuing the common allegations and claims pursuant to the schedule established by Judge Saris. To preserve that schedule and to avoid duplication of effort as to the common allegations and claims, Defendants have proposed that CMO4 include this language:

> All claims asserted in the Products Liability Cases other than those related to personal injury or products liability shall be prosecuted on behalf of plaintiffs by and at the direction of the Class Plaintiffs' Steering Committee established by this Court pursuant to Case Management Order No. 1. All non-personal injury and non-products liability claims asserted in the Products Liability Cases are subject to the Amended Class Complaint filed on February 1, 2005.

(Docket # 138 at Ex. A at 5-6.)

The proposed language reflects a reasonable approach that is well within the Court's power. Indeed, were it so inclined, the Court could go so far as to stay all proceedings in the Personal Injury Cases. See, e.g., Microfinancial, Inc. v. Premier Holidays International, Inc., 385 F.3d 72, 77 (1st Cir. 2004) (recognizing court's inherent power to stay proceedings for prudential reasons); In re Columbia University Patent Litigation, 330 F. Supp. 2d 12, 15 (D. Mass. 2004) (same). Numerous courts have entered stays in circumstances such as these. For instance, in In re Managed Care Litigation, 2003 WL 22410373 at *1, n.3 (S.D. Fla.), after numerous tag-along cases had been transferred to the court, the court stayed all tag-along cases "pending disposition of dispositive motions in the main track." Staying tag-along actions is a necessary and effective

tool in the administration of multi-district litigation:

> The addition of tag-along actions following the initiation of core MDL proceedings poses an administrative problem inasmuch as the tag-along plaintiffs are thrown into ongoing proceedings and must attempt to catch up . . .. To ameliorate such problems, I have found it beneficial in other multidistrict litigation to stay proceedings related to tag-along actions until the core proceedings have been completed. In all other respects, scheduling and pretrial orders entered in the captioned litigation apply to the tag-along actions as well as to the core proceedings. Moreover, although proceedings are stayed in the tag-along actions, I permit counsel for the tag-along plaintiffs to participate in the core discovery and exercise my discretion in deciding whether to rule on motions filed in the tag-along actions prior to consolidation (e.g., motions to remand).

In re Ford Motor Co. Bronco II Products Liability Litigation, 1996 WL 148294 at *2 (E.D.La.); see also In re Taxable Municipal Bond Securities Litigation, 1994 WL 589659 at *1-2 (E.D.La.) (rulings on dispositive motions in tag-along actions deferred pending resolution of class certification issues).

Defendants could, but do not at this time, urge a stay of the Personal Injury Cases. Instead, to avoid duplicative proceedings on identical factual allegations and claims, Defendants ask only that the Court require that those allegations and claims be pursued once, pursuant to the schedule and procedures that are well under way. Under this approach, the plaintiffs in the Personal Injury Cases will be free to pursue the issues that are distinctive to their cases and will be fully protected insofar as the common allegations and claims are concerned. Without the requested language, the plaintiff in each and every Personal Injury Case (and there are currently over 30) would be free to pursue separately the common allegations and claims, which would lead to the "duplicative discovery" and waste of "the resources of the parties, their counsel and the judiciary . . ." that this multidistrict proceeding is designed to avoid. (Exhibit A at 2.)

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion, grant Defendants' motion, and include in CMO4 the bracketed and italicized language that appears on pages 5-6 of Exhibit A to Defendants' Memorandum in Support of Motion for Inclusion in Case Management Order No. 4 of Provision Preventing Redundant Prosecution of Claims (Docket # 138).

Dated: June 8, 2005

PFIZER INC., et uno,

By their attorneys,

s/James P. Rouhandeh
James P. Rouhandeh
James E. Murray
Deborah L. MacGregor
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

-and-

s/David B.Chaffin
David B. Chaffin
BBO No. 549245
HARE & CHAFFIN
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

# EXHIBIT A

**MDL 1629**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 26 2004

RELEASED FOR PUBLICATION

FILED
CLERK'S OFFICE

*DOCKET NO. 1629*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION*

*BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ, ROBERT L. MILLER, JR., KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL*

*TRANSFER ORDER*

Now before the Panel are three separate motions encompassing a total of 27 actions that are listed on the attached Schedule A and are pending in sixteen districts as follows: six actions in the Eastern District of Louisiana; four actions in the District of Massachusetts; two actions each in the Eastern District of Arkansas, the Northern District of Florida, and the District of New Jersey; and one action each in the Southern District of Alabama, the Northern District of Georgia, the Southern District of Illinois, the Southern District of Indiana, the Western District of Louisiana, the District of Minnesota, the Southern District of Mississippi, the Southern District of New York, the Northern District of Ohio, the Western District of Tennessee, and the Northern District of Texas.[1] Pursuant to 28 U.S.C. § 1407, i) plaintiffs in one District of New Jersey action that originally moved for centralization in the District of New Jersey now move for centralization in the District of Massachusetts; ii) plaintiffs in two Eastern District of Louisiana actions move for centralization in their Louisiana district; and iii) common defendants Pfizer, Inc., Warner-Lambert Co., and Parke-Davis move for centralization in the Southern District of New York. No responding party opposes centralization, though respondents continue and expand upon the disagreement among movants regarding the appropriate choice for transferee district. Thus, some respondents support one of the forums suggested in the three Section 1407 motions, while other respondents have expressed support for one of four other potential transferee districts: the Northern District of Illinois, the Southern District of Illinois, the District of New Jersey, and the Northern District of Ohio.

On the basis of the papers filed and hearing session held, the Panel finds that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the District of Massachusetts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions are purported class actions involving

---

[1] The Panel has been notified of additional related actions recently filed in the Middle and Southern Districts of Alabama, the Southern District of Florida, the Northern and Southern Districts of Illinois, the Eastern District of Louisiana, the Eastern District of Missouri, the District of New Jersey, and the Eastern District of Texas. In light of the Panel's disposition of this docket, these actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

- 2 -

allegations that common defendants have engaged in the illegal promotion and sale of the drug Neurontin for "off-label" use. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification matters), and conserve the resources of the parties, their counsel and the judiciary.

In concluding that the District of Massachusetts is an appropriate forum for this docket, we note that i) the district is where a False Claims Act *qui tam* action predicated on the same facts as those at issue in the MDL-1629 actions had been pending for eight years and had proceeded to a very advanced stage before being settled; and ii) the judge assigned to the constituent MDL-1629 Massachusetts actions is the same judge who presided over the *qui tam* action and is thus already thoroughly familiar with the issues of fact and law raised in the MDL-1629 actions.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the District of Massachusetts are transferred to that district and, with the consent of that court, assigned to the Honorable Patti B. Saris for coordinated or consolidated pretrial proceedings with the actions pending there and listed on Schedule A.

FOR THE PANEL:

_____
Wm. Terrell Hodges
Chairman

SCHEDULE A

MDL-1629 -- In re Neurontin Marketing and Sales Practices Litigation

Southern District of Alabama

*Gulf Distributing Holdings, LLC v. Pfizer, Inc.*, C.A. No. 1:04-403

Eastern District of Arkansas

*Claudia Lang v. Pfizer, Inc., et al.*, C.A. No. 5:04-234
*James Hope v. Pfizer, Inc., et al.*, C.A. No. 5:04-248

Northern District of Florida

*Sylvia G. Hyman v. Pfizer, Inc., et al.*, C.A. No. 3:04-215
*Clifford Eckenrode v. Pfizer, Inc., et al.*, C.A. No. 3:04-240

Northern District of Georgia

*Johnny Ray Meeks, et al. v. Pfizer, Inc., et al.*, C.A. No. 1:04-1781

Southern District of Illinois

*Brenda Straddeck v. Pfizer, Inc., et al.*, C.A. No. 4:04-4106

Southern District of Indiana

*Gerald Smith v. Pfizer, Inc., et al.*, C.A. No. 1:04-1052

Eastern District of Louisiana

*Emma B. Christina v. Pfizer, Inc., et al.*, C.A. No. 2:04-1450
*Debra Mull, etc. v. Pfizer, Inc., et al.*, C.A. No. 2:04-1489
*Maggie Dorty, et al. v. Pfizer, Inc., et al.*, C.A. No. 2:04-1547
*Dianne Irene Hood v. Pfizer, Inc., et al.*, C.A. No. 2:04-1575
*Joyce B. Duhe v. Pfizer, Inc., et al.*, C.A. No. 2:04-1591
*Patricia Ann White v. Pfizer, Inc., et al.*, C.A. No. 2:04-1712

Western District of Louisiana

*Annie D. Blevins v. Pfizer, Inc.*, C.A. No. 6:04-1162

- 2 -

**MDL-1629 Schedule A (Continued)**

      <u>District of Massachusetts</u>

*The Guardian Life Insurance Co. of America v. Pfizer, Inc., et al.*, C.A. No. 1:04-10739
*Aetna, Inc. v. Pfizer, Inc., et al.*, C.A. No. 1:04-10958
*Harden Manufacturing Corp. v. Pfizer, Inc., et al.*, C.A. No. 1:04-10981
*Teamsters Health & Welfare Fund of Philadelphia & Vicinity v. Pfizer Inc., et al.*,
  C.A. No. 1:04-10984

      <u>District of Minnesota</u>

*John Lerch v. Pfizer, Inc., et al.*, C.A. No. 0:04-3021

      <u>Southern District of Mississippi</u>

*Mary Jane Gordon, et al. v. Pfizer, Inc., et al.*, C.A. No. 1:04-552

      <u>District of New Jersey</u>

*ASEA/AFSCME Local 52 Health Benefits Trust, et al. v. Pfizer, Inc., et al.*,
  C.A. No. 2:04-2577
*Julie K. Bakle v. Pfizer, Inc., et al.*, C.A. No. 2:04-2935

      <u>Southern District of New York</u>

*Lorraine Kopa v. Pfizer, Inc., et al.*, C.A. No. 1:04-4593

      <u>Northern District of Ohio</u>

*Mary Lou Lienerth v. Pfizer, Inc., et al.*, C.A. No. 1:04-1161

      <u>Western District of Tennessee</u>

*James Doyle v. Pfizer, Inc., et al.*, C.A. No. 2:04-2509

      <u>Northern District of Texas</u>

*Tammylee Willoz v. Pfizer, Inc., et al.*, C.A. No. 3:04-1234