UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS | ) ) ) ) | Master File No. 04-10981 |
|  | ) | Judge Patti B. Saris |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER WITH RESPECT TO PLAINTIFFS' 44,872 SEPARATE REQUESTS FOR ADMISSION

Defendants Pfizer Inc. and Warner-Lambert Company ("Defendants") submit this memorandum in support of their motion for a protective order pursuant to Rule 26(c) with respect to Plaintiffs' Request for Admissions.

### PRELIMINARY STATEMENT

With an extraordinary lack of regard for the tremendous burden and expense they seek to impose, Plaintiffs have served Defendants with 44,872 requests for admission (the "requests"). These requests seek to require Defendants to admit, for each and every document produced by Defendants in the action entitled United States of America ex rel. David Franklin v. Parke-Davis, et al., C.A. No. 96-11651-PBS (D. Mass.) and re-produced in this MDL, that the document is (1) a business record pursuant to Rule 803(6) of the Federal Rules of Evidence; and (2) genuine (which Plaintiffs interpret to mean "authentic" pursuant to Rule 901 of the Federal Rules of Evidence). The requests alone – without the documents to which they relate – fill an entire box. This discovery should not be had because it would subject Defendants to annoyance, oppression, undue burden and expense; require Defendants to undertake a Herculean effort that will in large

part be wasted and unnecessary; establish a precedent that could lead to significant abuse; and violate the requirements of Rule 26(g) of the Federal Rules of Civil Procedure.

The documents at issue in the requests are confined to a time period prior to December 31, 1998, the scope of discovery permitted by Judge Saris in the <u>Franklin</u> case that spawned the current litigation.  Accordingly, the <u>Franklin</u> production consists of documents that were created or compiled over seven years ago and were contained in the files of numerous employees of Warner-Lambert Company ("Warner-Lambert"), an entity that ceased to exist when it was merged into Pfizer Inc. ("Pfizer") in June 2000.  The age of the documents and the fact that they come from a predecessor company would make it unusually difficult for Defendants quickly to ascertain whether a document is authentic and whether the multiple criteria for a business record are satisfied under Rule 803(6).  Moreover, the documents produced in <u>Franklin</u> are not limited to documents created by employees of Warner-Lambert, but also consist of copies of articles that appeared in various medical journals (<u>see</u>, <u>e.g.</u>, Chaffin Dec., Ex. A), brochures created by outside entities relating to continuing medical education seminars or other meetings (<u>see</u>, <u>e.g.</u>, Chaffin Dec., Ex B), and numerous other documents that would be even more difficult to authenticate.

In order to determine whether each document in the production is authentic and is a business record under Rule 803(6), Defendants would need to inspect each and every document. For each, a determination would need to be made as to, *inter alia*, who created the document, the circumstances under which the document was created, why the document was created, and whether it was the regular practice of the company to create the record.  For those documents that relate to outside events, a review would need to be undertaken to determine if the document was created by Warner-Lambert employees or by outside vendors.  Because the overwhelming

2

majority of relevant Warner-Lambert employees no longer work for Pfizer, this review would be very difficult. And to what end? Logic dictates that Plaintiffs cannot possibly contemplate seeking to use all 22,436 documents as evidence in connection with dispositive motions or a trial, should there be one. Yet rather than asking Defendants to address a limited universe of documents upon which Plaintiffs will seek to rely, Plaintiffs instead seek to impose a tremendous burden on Defendants that could literally consume the entire allotted discovery period for this case.

These requests clearly contravene the normal approach in civil litigation. While the Federal Rules of Civil Procedure contemplate the use of various discovery devices to establish whether documents are genuine and/or business records, custom and practice, the proscription on burdensome and harassing discovery, and other principles of civil practice dictate that there be some effort by a plaintiff first to identify those documents as to which he genuinely anticipates a foundation will be necessary. To require Defendants to admit that each and every document they have produced is both genuine and a business record is patently unreasonable and goes far beyond the obligations contemplated under the Federal Rules of Civil Procedure and the Federal Rules of Evidence. In fact, as set forth below, the requests violate Rule 26(g) of the Federal Rules of Civil Procedure.

Plaintiffs' requests subject Defendants to annoyance, oppression, and undue burden and expense. Defendants therefore respectfully request that the Court issue a Protective Order that Defendants need not respond to the 44,872 requests for admission.

### BACKGROUND

In 1996, David Franklin, an employee of Warner-Lambert from April 1996 to July 1996, filed a qui tam case in this Court alleging that Parke-Davis, a division of Warner-Lambert, had

3

conducted a campaign to promote the off-label use of the prescription drug Neurontin.
Franklin's complaint was unsealed by Judge Saris in January 2000 and extensive discovery was
taken in connection with that case. Approximately 80 boxes of documents (the "Franklin
production") were provided by Warner-Lambert in the Franklin action. The entirety of this
production has now been produced in the instant case subject to the first Case Management
Order ("CMO") entered in this action. (Docket # 15 at 11).

On February 23, 2005, Plaintiffs and Defendants each submitted to the Court a proposed
CMO #2, which included a proposed schedule for the case as well as paragraphs related to case
management, some of which were in dispute between the parties. One of the areas of
disagreement concerned Plaintiffs' demand that the CMO contain this provision:

> Documents produced whether as part of the initial disclosures, in response to
> formal document requests, or by agreement, shall by reason of such production be
> deemed to be authentic documents under Federal Rule of Civil Procedure 901
> [sic] and to qualify as records of regularly conducted business activities under
> Federal Rule of Civil Procedure 803(5) [sic] unless at the time of production, or
> within fifteen days thereafter, the producing party specifies that a document is or
> may not be authentic or is or may not be a record of regularly conducted business
> activity.

(Docket # 44, Attach. 1 at 5; see also Docket # 44 at 3-4). Defendants argued that the proposed
procedure relating to authentication was not only burdensome and oppressive, but also imposed a
procedure that did not exist under any law or rule. (Docket # 43 at 5). The proposal would have
imposed upon the producing party the obligation to review the entirety of its production to
determine which documents were not business records or were not authentic.

On February 24, 2005, a hearing was held before Judge Saris. At that hearing, the Court
adopted a case schedule and directed Plaintiffs and Defendants to confer and attempt to narrow
the areas of disagreement concerning case management issues. Barry Himmelstein, one of the
members of the Plaintiffs' Steering Committee, raised the issue of authentication of documents,

and in response Judge Saris urged the parties to try to agree on an acceptable approach, noting that she could not force Defendants to do something not required by the Federal Rules of Evidence. (Chaffin Dec., Ex. C at 51). Plaintiffs apparently decided thereafter to voluntarily withdraw their proposal. The parties conferred over the next couple of weeks, during which time Plaintiffs did not press the issue of authentication. The parties submitted a consolidated proposed CMO #3 to the Court, the Court resolved the few areas of disagreement included in the proposal, and the Court entered the Order. Neither the proposed nor final CMO #3 contains language related to the authentication of documents. (Docket ## 51, 62).

On May 11, 2005, Plaintiffs served Defendants with 44,872 separate requests for admission. As explained in Plaintiffs' cover letter accompanying the Requests, "[t]hese Requests for Admission contain two requests relating to each document previously produced by the Defendants in United States ex rel. Franklin v. Parke-Davis, et al., one concerning the genuineness of the document and one requesting an admission that the document is a business record." (Chaffin Dec., Ex. D at 1). On June 9, 2005, counsel for Defendants contacted Mr. Himmelstein by telephone and conducted a "meet and confer" concerning the requests. Counsel for Defendants stated in that meet and confer that the requests were overly broad and unduly burdensome and requested that Plaintiffs withdraw the requests. Mr. Himmelstein refused to do so. (MacGregor Dec. ¶¶ 2 – 5). Accordingly, Defendants hereby seek a protective order that this "discovery" not be had on the grounds that Plaintiffs' requests for admission would subject Defendants to annoyance, oppression, and undue burden and expense.

## ARGUMENT

Rule 26(c) of Federal Rules of Civil Procedure provides that "upon motion by a party or by the person from whom discovery is sought … the Court may make any order which justice

5

requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense…" Fed. R. Civ. P. 26(c).  Rule 26(c) seeks to curtail abuses of the discovery process, and grants the trial court broad discretion to balance "the injury that might result if uncontrolled disclosure is compelled" against the request of the propounding party.  Horsewood v. Kids "R" Us, No. CIV. A. 97-2441-GTV, 1998 WL 526589, at *2 (D. Kan. Aug 13, 1998) (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787 (3d Cir. 1994), and Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1368 (10th Cir. 1997) (holding that "the desire to afford 'broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant'")).  In the First Circuit, "the breadth of [the trial judge's] discretion in managing pretrial mechanics and discovery is very great."  Fusco v. General Motors Corp., 11 F.3d 259, 267 (1st Cir. 1993).  If a party on whom a request for admission has been served finds the request to be oppressive, or feels that to respond to the request would cause undue expense, the responding party may seek a protective order.  Fed. R. Civ. P. 26(c); Fed R. Civ. P. 36(a) Advisory Committee Notes to 1970 Amendment.  See also 4A Moore's Federal Practice para. 36.11[e].

The Court should enter a protective order that the requests for admission not be had in order to protect Defendants from annoyance, oppression, and undue burden and expense. Plaintiffs request that Defendants admit that each of the 22,436 documents previously produced by certain defendants in Franklin is (1) "a record of regularly conducted activity within the meaning of Rule 803(6) of the Federal Rules of Evidence;" and (2) "genuine."  Plaintiffs have made, as Mr. Himmelstein conceded, no effort to limit or narrow the number of documents that are the subject of the requests; rather, they seek to require Defendants to examine every one of the 22,436 documents, regardless of whether there is even the faintest chance Plaintiffs will want

6

to use a particular document at trial, in connection with depositions, or in dispositive motions. The resulting burden on Defendants is not only extremely high, but largely unnecessary, because so many of the 22,436 documents will not be used by either party.

**Plaintiffs' Requests Would Impose a**
**Tremendous Burden on Defendants**

It appears to be unprecedented for a party to request that an adversary admit that the entirety of its production consists of authentic documents that are business records. The absence of any authority requiring a party to admit the authenticity and business record status of entire productions is not surprising, as the precedent such an approach would set would stand the Federal Rules of Civil Procedure and Evidence on their head. Rather than requiring a party to establish the authenticity of a document in order to utilize it, as provided in Rule 901 of the Federal Rules of Evidence, or to overcome a hearsay objection by establishing that a document to be used at trial is a business record pursuant to Rule 803(6) of the Federal Rules of Evidence, a party would simply ask the other side to admit both these facts as to every document in the case at the outset of the case. Discovery would, of necessity, slow to a crawl, as parties would have to make a detailed inquiry as to every document produced even if the overwhelming majority would never be used in the case.

Plaintiffs have far exceeded the scope of discovery contemplated under Rule 36. Requiring Defendants to determine whether each and every one of the 22,436 documents at issue is authentic and a business record would constitute a tremendous burden and expense within the meaning of Fed. R. Civ. Proc. 26(c), and this burden and expense would far outweigh any conceivable benefit. A protective order is therefore warranted, as Rule 26(b)(2) requires that burden and expense be balanced against benefit. Fed. R. Civ. P. 26(b)(2). The scale tips decidedly against Plaintiffs. The definite and unavoidable burden and expense of conducting

7

literally tens of thousands of individual inquiries far outweighs any possible benefit to Plaintiffs,
particularly since (1) Plaintiffs have not even determined whether they will need the foundation
they seek, and (2) the benefit would be merely marginal, for other avenues for obtaining the
foundations are available.  It is no wonder there is no precedent of which Defendants are aware
that would justify Plaintiffs' approach.

Plaintiffs' 44,872 requests are particularly indefensible in light of the Discovery Event
Limitation imposed by Local Rule 26.1(c) of United States District Court for the District of
Massachusetts, which states that "[u]nless the judicial officer orders otherwise, the number of
discovery events shall be limited for each side…to…twenty-five requests for admissions…" D.
Mass. LR 26.1 (2004).  Although CMO #3 lifted these limitations, the purpose behind them
remains valid and applicable, and it is unlikely that the Court contemplated that by entering
CMO #3 it would be opening the door to the service of 1,794 times the number of requests for
admissions deemed to be sufficient for most cases in the District.

Rule 36 requests are intended to be used as a selective device to eliminate the need to
prove facts which neither party disputes.  Wigler v. Electronic Data Systems Corp., 108 F.R.D.
204, 206 (D. Md. 1985).  Admissions "should not be of such great number and broad scope as to
cover all the issues [even] of a complex case…"  Id. at 206-07, quoting Lantz v. New York
Central Railroad Co., 37 F.R.D. 69 (N.D. Ohio 1963).  The Wigler court explained in some detail
the problems posed by the sort of enormous, indiscriminate requests made by Plaintiffs:

> There can be no question that defendant's request for the admission of 1,664
> numbered items, excluding subparts, constitutes an intolerable distortion of the
> purpose of this particular discovery tool, viz, to save time and expense for all by
> narrowing the issues to be tried.  It also serves no useful purpose to invest a
> tremendous number of lawyer-hours in preparing such huge requests, especially
> where the sanction for an improper failure to admit, under Rule 37(c), is the
> recovery of expenses and fees incurred in proving the particular factual matter at

8

> issue. These expenses and fees, given the narrow scope of issues actually to be
> tried, as opposed to matters as to which discovery is sought, may be far less than
> the expense of preparing Rule 36 requests as to every matter that has turned up in
> the course of interrogatory and deposition discovery.

Id. at 207. These concerns are equally applicable here, where Plaintiffs seek to have Defendants

admit the evidentiary foundation for every document despite the fact that there will only be a

"narrow scope" of documents actually offered in evidence. Plaintiffs have certainly acted with

no regard for the expense and burden to Defendants their requests would impose.

Plaintiffs, rather than identifying specific documents of interest to them, want to force

Defendants to perform the thousands of hours of work that would be required to determine

whether each of the tens of thousands of documents is an "authentic" "business record." To

qualify as a business record, a document must be a record 1) made at or near the time of the

event, 2) by or from information transmitted by a person with knowledge, 3) that is kept in the

course of a regularly conducted business activity, 4) where it was the regular practice of that

business to make such a record. Fed. R. Evid. 803 (6). Defendants would be required to make a

"reasonable inquiry" into each of these points for each document. See Fed. R. Civ. P. 36(a). The

burden of such an inquiry would be unreasonable.

Determining whether a document is genuine, as used in the requests, is equally

burdensome. During the Rule 37.1 conference of June 9, 2005, counsel for Defendants asked

Mr. Himmelstein what was meant by the term "genuine" in the requests. Mr. Himmelstein

advised that it was intended to be the equivalent of "authentic" as that term is used in Rule 901

of the Federal Rules of Evidence. (MacGregor Dec. at ¶ 7). The purpose of the requests,

therefore, obviously is to lay an evidentiary foundation for the admission of every document

produced in Franklin, irrespective of whether Plaintiffs intend to offer it. Authentication under

Rule 901 requires "evidence sufficient to support a finding that the matter in question is what its

9

proponent claims." Fed. R. Evid. 901(a). No doubt some portion of the 22,436 documents could be determined to be authentic. In order to determine whether every document is authentic, however, Defendants would have to conduct a thorough review of each of the 22,436 documents – most of which will never be used. Many of the documents bear handwritten comments. (See, e.g., Chaffin Dec., Ex. E). For others, it may be unclear whether they were prepared by Defendants or by an outside party. (See, e.g., Chaffin Dec., Ex. F). For documents such as these, the authenticity inquiry would be no small matter, and the task of even identifying which require particularized inquiry would be daunting. Plaintiffs have strayed beyond the bounds of appropriate practice by seeking to impose these burdens on Defendants when they have not even attempted to isolate the documents of genuine interest and therefore are attempting to force Defendants to expend substantial time and money.

Were Defendants required to respond to the requests, the effort could literally consume the entire allotted discovery period for this case. Defendants would need to go through 22,436 documents and make multiple inquiries as to each. The entire process would be complicated by two facts. First, these documents were all created prior to December 31, 1998, and are thus over seven years old. Second, these documents were contained in the files of employees of Warner-Lambert and/or its unincorporated division, Parke-Davis. Very few employees from Warner-Lambert are currently employed by Pfizer. The admission process might arguably require Defendants to contact ex-employees about records they have not been involved with, seen, or thought about in years. The number of employees Defendants might need to attempt to contact could easily run into the hundreds. For example, Class Plaintiffs have identified over 300 names of potential witnesses in their initial disclosures alone – more than 50 of whom are identified as former employees of Parke-Davis or Warner-Lambert. (Chaffin Dec., Ex. G at 2 – 63). These

10

individuals, most if not all of whom Defendants assume were derived from documents contained in the <u>Franklin</u> production, represent only a portion of the number of people Defendants would need to contact in an attempt to authentic all documents contained in the production. Because Plaintiffs have listed these names, Defendants assume that Plaintiffs are planning to depose these witnesses. In that case, Plaintiffs can certainly seek to have the documents authenticated and establish whether they are business records in the course of those depositions.

The preliminary review and classification of documents (assuming a conservative 5 minutes to initially review each document and determine whether there are questions about it, and who to contact) would take Defendants at least <u>1,870</u> hours – 234 8-hour days. If one assumes that it takes a mere additional 30 minutes to follow-up on each document, the time and expense needed to conduct the inquiry is still overwhelming. Such a review would consume at least 11,218 hours. This is 1,402 8-hour days, in addition to the original 234 days of investigating, or over 4 years worth of work, and much more time than is remaining in the discovery schedule.

It is telling that counsel for the Relator in the <u>qui tam</u> case, when faced with this same document production, did not serve such requests for admission. And it is equally telling that there was no reason for him to have done so, because he relied on only a small fraction of the documents produced by Defendants to support his various filings. <u>See, e.g.</u>, Relator's Separate Statement of Disputed Material Facts in <u>Franklin</u> (Docket # 355) (utilizing less than 200 exhibits). Relator's counsel followed the usual procedure of asking about those documents in which he was interested at depositions of appropriate witnesses. Plaintiffs in the instant MDL surely have the resources to identify the subset of documents in which they are interested, as they have numerous plaintiff firms at their disposal – nine on the steering committee alone. The

11

attempt to shift the burden of establishing authentication and business records onto Defendants is indefensible.

There are appropriate discovery devices that will allow Plaintiffs to establish foundations for the documents in which they are interested. For example, Plaintiffs can identify documents in which they are interested and depose the person related to those documents. Requiring Defendants to assume the massive burden of reviewing every one of 22,436 documents from more than seven years ago to determine whether each is genuine and is a business record, however, is unduly burdensome and an abuse of the Rule 36 request for admission process.

**The Requests for Admission do not Comply With
Plaintiffs' Obligations Under Rule 26(g)**

Further illustration of the inappropriate nature of Plaintiffs' requests is found in the fact that the requests fail to meet the requirements of Rule 26(g) of the Federal Rules of Civil Procedure. In relation to the service of discovery, Rule 26(g) provides that the signature of an attorney on a discovery request constitutes a certification that:

> to the best of the signor's knowledge, information, and belief, formed after a reasonable inquiry, the request … is (A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (C) not unreasonably or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

Fed. R. Civ. P. 26(g). Defendants submit that the requests fail to conform to these requirements.

In the June 9, 2005 Rule 37.1 conference, Mr. Himmelstein stated more than once that he had no precedent, and had not looked for any, suggesting that requests for admissions relating to the <u>entirety</u> of a large production of documents could be made. (MacGregor Dec. at ¶ 6). He said that the text of Rule 36 and the lack of an internal limitation to that Rule provided the bases

for the requests. (Id.). Defendants have also not located any precedent that would support the service of such requests. Defendants have located, however, cases in which courts have held that a high volume of requests – though a much lower volume than in this case – is unduly burdensome. See., e.g., Wigler, 108 F.R.D. at 205-06 (finding that 1,664 separate requests for admission totaling 370 pages with 300 pages of attachments imposed an undue burden on the movant, and granting motion for a protective order); Salomon S.A. v. Alpina Sports Corp., 737 F. Supp. 720,726 (D.N.H. 1990) (remarking before referring the "undue burden" issue to a magistrate judge that "the Court is unaware of any case in which the number of requests permitted comes even close to the number of requests [2,710] propounded by Salomon here"); Leonard v. Univ. of Delaware, No. 96-360 MMS, 1997 U.S. Dist. LEXIS 4196 at *26 - 27 (D. Del. Feb. 20, 1997) (characterizing Plaintiff's over-800 requests to admission as an "oppressive number," and sanctioning Plaintiff and Plaintiff's counsel under 26(g)(3) in light of the number and incoherence of the requests). Notably, these cases involved requests for admission of facts. Here, less beneficial admissions as to mere evidentiary foundations for every single document produced are sought, without any antecedent determination of need. Accordingly, the requests violate Rule 26(g)(A), because there is no legal support for seeking to use Rule 36 to obtain admissions as to every document produced by a party.

Second, Mr. Himmelstein acknowledged that all 22,436 documents could not be used at trial. (MacGregor Dec. at ¶ 5). Mr. Himmelstein stated that Plaintiffs were not able (despite his co-counsel's many years of involvement in this matter through his position as counsel to the Relator in Franklin) to identify which documents they plan to use at this point, as they feel a very large number of documents in this case are potentially useful. (MacGregor Dec. at ¶ 5). Plaintiffs therefore want Defendants to incur the expense of authenticating each of the 22,436

documents and determining whether each is a business record so that Plaintiffs will have the option of choosing to use documents without worrying about whether the document is authentic and a business record. Requiring Defendants to incur such a massive expense for documents that will never be used, simply to spare Plaintiffs from the need to satisfy their burden of showing authenticity and admissibility of the documents they do decide to use, needlessly increases the cost of litigation, and the requests therefore violate Rule 26(g)(B).

Third, Mr. Himmelstein announced that Plaintiffs were not willing to expend "50,000 attorney hours" and hours of their deposition time laying foundation for documents, and instead wanted Defendants to assume the burden of providing the foundation for each document produced. (MacGregor Dec. at ¶¶ 5 - 6). This position is not only unreasonable, but unduly burdensome and expensive. As a result, the requests violate Rule 26(g)(C).

14

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter a

Protective Order that the Plaintiffs' Requests for Admission not be had.

Dated: June 13, 2005

PFIZER INC., et uno,

By their attorneys,

s/James P. Rouhandeh
James P. Rouhandeh
James E. Murray
Deborah L. MacGregor
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

-and-

s/David B.Chaffin
David B. Chaffin
BBO No. 549245
HARE & CHAFFIN
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

## CERTIFICATION OF CONSULTATION

Pursuant to Local Rule 37.1, I certify that I have conferred with opposing counsel in an attempt to narrow or resolve the issue presented by this motion but have been unable to do so. The consultation included a telephone conversation held on June 8, 2005. David Chaffin and I participated in the conversation. Mr. Barry Himmelstein participated on behalf of Plaintiffs.

s/Deborah L. MacGregor
Deborah L. MacGregor

15