UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br>Master File No. 04-10981<br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | |
| Stephen Brodsky v. Pfizer Inc., et al. | Civil Action No. 05-10828 |
| Dan Huffman v. Pfizer Inc., et al. | Civil Action No. 05-10829 |
| Patti Paulsen v. Pfizer Inc., et al. | Civil Action No. 05-10830 |
| Rosalia Sumait, et al. v. Pfizer Inc., et al. | Civil Action No. 05-10832 |
| Monica Smith v. Pfizer Inc., et al. | Civil Action No. 05-10833 |
| Minnie Cooper, et al. v. Pfizer, Inc., et al. | Civil Action No. 05-10834 |
| Leroy Anderson, et al. v. Pfizer, Inc., et al. | Civil Action No. 05-10835 |
| Linda Barker v. Pfizer, Inc., et al. | Civil Action No. 05-10836 |
| Darlene Owens v. Pfizer Inc., et al. | Civil Action No. 05-11017 |
| James H. Whitehouse, Sr., et al. v. Pfizer Inc., et al. | Civil Action No. 05-11018 |
| Frank Vercillo, Jr. v. Pfizer Inc., et al. | Civil Action No. 05-11019 |

| | |
|---|---|
| Gary L. Lyman v. Pfizer Inc., et al. | Civil Action No. 05-11020 |
| Mark Minisquero v. Pfizer Inc., et al. | Civil Action No. 05-11021 |
| Nicole Justine James v. Pfizer Inc., et al. | Civil Action No. 05-11022 |
| Jay DiGiacomo v. Pfizer Inc., et al. | Civil Action No. 05-11023 |
| Avrill C. Aronson v. Pfizer Inc., et al. | Civil Action No. 05-11024 |
| Joy Dodson v. Pfizer Inc., et al. | Civil Action No. 05-11025 |
| Dorothy Kern v. Pfizer Inc., et al. | Civil Action No. 05-11027 |
| John Dees, et al. v. Pfizer Inc., et al. | Civil Action No. 05-11028 |
| Peter Veraas v. Pfizer Inc., et al. | Civil Action No. 05-11029 |
| Theodore Populis v. Pfizer Inc., et al. | Civil Action No. 05-11030 |
| Kathleen Wilson v. Pfizer Inc., et al. | Civil Action No. 05-11031 |
| William Montgomery v. Pfizer Inc., et al. | Civil Action No. 05-11032 |
| Michael Mendoza v. Pfizer Inc., et al. | Civil Action No. 05-11033 |
| Johnnie Hargrove v. Pfizer Inc., et al. | Civil Action No. 05-11034 |
| Shanan Feyer v. Pfizer Inc., et al. | Civil Action No. 05-11035 |

| | |
|---|---|
| Gregory Retzer v. Pfizer Inc., et al. ) | Civil Action No. 05-11036 |
| Sidney Brown v. Pfizer Inc., et al. ) | Civil Action No. 05-11037 |
| Stephen Belbruno v. Pfizer Inc., et al. ) | Civil Action No. 05-11153 |
| Frieda Burroughs v. Pfizer Inc., et al. ) | Civil Action No. 05- |
| Marianne Smolucha v. Pfizer Inc., et al. ) | Civil Action No. 05- |
| Christine Gambardello v. Pfizer Inc., et al. ) | Civil Action No. 05- |
| John Jarosz v. Pfizer Inc., et al. ) | Civil Action No. 05- |
| Monica Almeida v. Pfizer Inc. ) | Civil Action No. 05- |

**DECLARATION OF ANDREW G. FINKELSTEIN
IN SUPPORT OF APPOINTMENT TO PRODUCTS
LIABILITY PLAINTIFFS' STEERING COMMITTEE**

I, Andrew G. Finkelstein, deposes and states as follows:

1.  I am the managing partner with the law firm of Finkelstein & Partners, LLP. I have extensive experience in personal injury litigation. I have full knowledge of the matters stated herein and would testify thereto.

2.  I was graduated from Syracuse University with a B.S. in 1987, and I received a J.D. from Brooklyn Law School in 1991. I was admitted to the bars of the States of New York and New Jersey in 1992. I also am a member of the bars of the United States District Court for the Southern and Eastern Districts of New York, and the United States Supreme Court. I started

practicing as a trial attorney with Finkelstein & Partners in 1991, and after several years became managing partner.

3. Finkelstein & Partners has substantial resources to prosecute personal injury and products liability actions. More than 30 attorneys, 50 of counsel attorneys and over 200 support staff. Finkelstein & Partners has its main office is in Newburgh, New York, with a dozen satellite offices throughout New York State, and in Newark, New Jersey, and New Haven, Connecticut. Personal injury litigation, including products liability litigation, on behalf of plaintiffs has been the primary practice area of the firm since its since it was founded in 1962.

4. Finkelstein & Partners also is experienced with mass tort litigation. The firm represented about a dozen families whose children were killed or seriously injured when a tornado or microburst struck the East Coldenham Elementary School in the Town of Newburgh, New York. Finkelstein & Partners also represented more than 300 plaintiffs in the Cedar Hill Cemetery litigation involving the wrongful handling of cremated remains of plaintiffs' loved ones. In addition, the firm currently represents approximately 180 plaintiffs in the Prempro or hormone therapy replacement litigations. All of these lawsuits, like the Neurontin products liability actions transferred to this Court, involve actions on behalf of individually named plaintiffs, and are not class actions.

5. Finkelstein & Partners filed the case of <u>William T. Young v. Pfizer Inc., et al.</u>, in Orange County Supreme Court, New York, on February 18, 2004. We believe that this is the first case commenced seeking damages for wrongful death or personal injury caused by off-label marketing and promotion and use of Neurontin. The case was removed to the United States District Court for the Southern District of New York, where it was the first Neurontin products

liability case assigned to Judge Jed S. Rakoff, U.S.D.J., but was then remanded to state court where Judge Stewart Rosenwasser, A.J.S.C., has already issued several decisions and orders.

6. In a conference call on March 31, 2004, with Dr. Russell Katz, Director, Neuropharmacological Drug Products, and several members of his staff at the Food and Drug Administration, I discussed at length our concerns regarding the unusually high incidence of suicidal ideations and gestures, and attempted and completed suicides by individuals who had been prescribed Neurontin.

7. On or about May 17, 2004, Finkelstein & Partners filed a Citizen Petition with the FDA, requesting amplification of the current Neurontin labeling to properly reflect the significant number of postmarketing reports of completed suicides, suicidal attempts and suicidal ideations. (See Letter enclosing Citizen Petition (without Attachments), annexed as Exhibit A.)

8. The next day, I wrote to Judge Richard Stearns, U.S.D.J., objecting to the proposed plea agreement relating to crimes committed by Warner-Lambert resulting from its illegal marketing and promotion of Neurontin. (See Letter dated May 18, 2004, annexed as Exhibit B.)

7. When the FDA continued to take no action for almost a year in response to the concerns raised in the conference call and the Citizen Petition, I wrote to Dr. Katz, enclosing 258 MedWatch forms, most with redacted death certificates, each representing a suicide of an American who was on Neurontin when he or she took his or her own life, and I denounced the FDA's continuing refusal to mandate a simple "Dear Doctor" letter advising health care providers about a known risk of Neurontin. (See Letter dated March 21, 2005 (without enclosures), annexed as Exhibit C.)

5

8. In responding to my letter, Dr. Katz acknowledged "that in part because of the concerns you have raised, we have asked the sponsors of all drugs approved to treat epilepsy to re-analyze their controlled trial databases to examine the question of drug-induced suicide and/or suicidality." (See Letter, dated April 12, 2005, annexed as Exhibit D.)

9. In reply to Dr. Katz's letter, I noted several misconceptions and misstatements on his part that I felt compelled to address. (See Letter, dated April 15, 2005, annexed as Exhibit E; see also Reprint of article from San Francisco Chronicle, April 21, 2005, p. 1, annexed as Exhibit F (discussing the FDA's directives to the drug makers, partially in response to the concerns we had raised); Reprint of article from globeandmail.com indicating that Health Canada has taken similar action against pharmaceutical firms in Canada), annexed as Exhibit G.)

10. Finkelstein & Partners represent the plaintiffs in 27 of the 34 Neurontin products liability cases that have been transferred to this Court. (See Finkelstein Neurontin Cases in Federal Courts, annexed hereto as Exhibit H.) Finkelstein & Partners also represent the plaintiff in the potential tag-along case of Ruth Smith v. Pfizer Inc., et al., M.D. Tenn. Civil Action No. 05-444, which was originally commenced in the Davidson County Circuit Court, Tennessee, before recently being removed to the United States District Court for the Middle District of Tennessee.

11. I have spoken with Harris L. Pogust, Esq., attorney for the plaintiffs in the Smolucha and Gambardello Neurontin products liability actions that were recently transferred to this Court, who supports my appointment to the Products Liability Plaintiffs' Steering Committee. I have also spoken with Jack W. London, Esq., attorney for the plaintiff in the potential tag-along case of Irene Barlow v. Pfizer, Inc., et al., W.D. Tex. Civil Action No. 05-175

(see Conditional Transfer Order (CTO-8)), who also supports my appointment to the Steering Committee.

12. In addition, Finkelstein & Partners are counsel for the plaintiffs in more than 70 Neurontin products liability cases pending in various state courts, including one in Lake County Superior Court, California (filed on April 12, 2004); two in Orange County Supreme Court, New York; one in Rockland County Supreme Court, New York; one in Richmond County Supreme Court, New York; and approximately 70 in New York County Supreme Court, New York. (See Finkelstein & Partners Neurontin Cases in State Courts, annexed hereto as Exhibit I).

13. The firm continues to file new Neurontin products liability actions in state and federal courts every week.

14. We believe that the Neurontin products liability cases pending in various New York State Supreme Courts may eventually be coordinated for litigation pursuant to Section 202.69 of the Uniform Rules for the Trial Courts of New York State.

15. In the meantime, the firm has already been coordinating pretrial discovery in the federal and state court cases with Davis Polk & Wardwell, lead counsel for the defendants.

16. Finkelstein & Partners have committed significant resources to date, including thousands of hours by attorneys and support staff, and substantial litigation costs and expenses, in prosecuting the Neurontin products liability cases, and we will continue to do so.

17. In short, Finkelstein & Partners and the undersigned took the lead in investigating and developing and gathering important evidence relating to the Neurontin products liability litigation, and we represent the plaintiffs in the great majority of the Neurontin products liability cases before this Court. We plainly have the most experience and expertise to handle both the

substantive and procedural responsibilities involved in the efficient prosecution of these cases on behalf of all Neurontin products liability plaintiffs.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 17, 2005                             /s/ Andrew G. Finkelstein
                                                 Andrew G. Finkelstein, Esq.