UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge Patti B. Saris |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
AMENDED MOTION WITH REGARD TO CASE MANAGEMENT ORDER NO. 4**

Defendants Pfizer Inc. and Warner-Lambert Company ("Defendants") submit this memorandum in support of their amended motion for inclusion in Case Management Order No. 4 of two provisions that would further streamline discovery and promote judicial economy. Defendants respectfully request that the Court include the following two provisions in CMO4: (1) a provision that would ensure the orderly scheduling of depositions and (2) a provision that would require the uniform application of discovery scope limitations to all cases in the MDL.

**INTRODUCTION**

Recently, the Court indicated that it intended to enter Case Management Order No. 4 ("CMO4"), addressing the products liability cases in this proceeding, all of which are based on allegations of off-label marketing of Neurontin from the qui tam case filed in this Court, Franklin v. Parke-Davis. (See Electronic Order, June 10, 2005.) Based on a review of the docket sheet, it appears that CMO4 has not yet been entered. In order to address two issues that have recently arisen, Defendants request that the Court include two additional provisions in CMO4. The first relates to the orderly scheduling of depositions and would address a recent attempt by Plaintiffs'

counsel in certain Products Liability Cases to proceed with depositions without the participation of Plaintiffs' counsel in the sales and marketing cases, thereby subjecting Defendants to the possibility of having to produce their witnesses for depositions twice in this MDL proceeding. The provision would provide as follows:

> *Scheduling of Depositions.* The Plaintiffs in this MDL proceeding and their counsel shall not notice or otherwise seek to proceed with the deposition of any of Defendants' witnesses without first consulting with all other Plaintiffs' counsel and agreeing upon deposition dates that are acceptable to all of Plaintiffs' counsel.

In addition, to ensure consistency between the Products Liability Cases and the non-Products Liability Cases, Defendants request the inclusion of the following language to CMO4 concerning discovery scope limitations:

> *Discovery Scope Limitations.* All discovery scope limitations in the non-Products Liability Cases shall apply to the Products Liability Cases, and vice versa, unless good cause is demonstrated. Any objection to the uniform application of discovery scope limitations shall be made within fifteen (15) days of the entrance of the order applying the scope limitation and the parties shall meet and confer within five (5) days of the objections to attempt to resolve the dispute.[1]

This provision would ensure the uniform application of discovery rulings across all cases in the MDL in light of the common factual allegations in these cases.

## BACKGROUND

On May 10, 2005, counsel for a number of plaintiffs in the Products Liability Cases, Finkelstein and Partners,[2] served Defendants with deposition notices for nine current and former employees to be taken on various dates this summer. The depositions were cross-noticed in In re

---

[1] Attached as Exhibit A is a revised CMO4 that includes the proposed provisions in brackets.

[2] We note the Finkelstein and Partners has submitted an application to be named Products Liability Plaintiffs' Liaison Counsel and Counsel to the Products Liability Plaintiffs' Steering Committee. (See Docket # 160.)

Neurontin, the consolidated cases before Judge Rakoff in the Southern District of New York that were transferred to the MDL in May 2005. Plaintiffs' counsel made no attempt to limit the depositions to issues uniquely relevant to the products liability or personal injury claims. Rather, some of the noticed individuals could arguably have relevant information for all plaintiffs in the MDL because of the common core of factual allegations in all of the Neurontin-related cases.[3]

In response to the notices, Defendants suggested to Plaintiffs' counsel that the depositions not go forward in the absence of coordination of the deposition dates with MDL Plaintiffs' Liaison Counsel in order to avoid duplicative depositions and unnecessary burdens upon the witnesses. (See May 27, 2005 Letter of James Murray, attached as Ex. B.) Defendants further requested that Finkelstein and Partners coordinate the schedule for depositions with Plaintiffs' Liaison Counsel so as not to run the risk that witnesses would be called upon to testify twice concerning the very same subjects. Plaintiffs' counsel apparently reached out to MDL Plaintiffs' Liaison Counsel in an attempt to coordinate the depositions to accommodate all plaintiffs, but their efforts were apparently fruitless. (See June 9, 2005 Letter of Kenneth Fromson, attached as Ex. C.) MDL Plaintiffs' Liaison Counsel apparently insisted that they would not be prepared to commence the depositions on the schedule proposed by Finkelstein and Partners. Rather, they stated that they would prefer to wait to receive the transcripts from the completed depositions and use them at the depositions of the same witnesses at later dates. Thereafter, Finkelstein and Partners informed Defendants that they would insist on moving forward unilaterally with the depositions in mid-July.

---

[3] Defendants do not concede that the noticed individuals in fact have information relevant to any of Plaintiffs' claims.

In light of the difficulties encountered in connection with coordinating the scheduling of the noticed depositions with all parties in the MDL, Defendants request adding the above-quoted language to CMO4 to protect the parties from the undue burden and expense of unnecessary motion practice and duplicative depositions.

In addition, for the reasons set forth below, Defendants request that the Court add a provision to CMO4 ensuring the uniform application of discovery scope limitations across the entire range of cases in the MDL.

## ARGUMENT

Starting with CMO1, the Court has made it clear that the purpose of this MDL is to coordinate and streamline discovery for the parties involved in the litigation concerning Neurontin and allegations of alleged off-label sales and marketing. CMO1 provides that:

> "WHEREAS, in order to promote judicial economy and avoid duplication, the Court finds that it would be appropriate for consolidation and/or coordination of all actions filed, removed to, or transferred to this District and for an organization of Plaintiffs' counsel to coordinate the efforts of counsel in these actions."

(Docket # 15 at 3.) The entry of CMO4, which contains nearly identical language regarding the purpose of coordinating the Products Liability Cases, would affirm that these principles apply to the personal injury and products liability cases. (See Exhibit A at 1-2.) Despite the clear directives of the Case Management Orders, Finkelstein and Partners, the very same firm that has applied to be appointed Products Liability Liaison Counsel and Counsel to the Products Liability Steering Committee, is insisting on taking the depositions of Defendants' witnesses without establishing a coordinated schedule with the existing Plaintiffs' Liaison Counsel.

There is currently nothing in the existing Case Management Orders that explicitly takes into account the inefficiencies created by Plaintiffs' refusal to coordinate deposition schedules.

There is, however, a provision in CMO4, entitled "Coordination," that provides, in pertinent part, that:

> "the Court expects Plaintiffs, through the respective steering committees, to the extent possible, to coordinate the prosecution of these matters so as to avoid the undue waste of time, duplication of effort or undue expense on behalf of the Court and all parties involved."

(Exhibit A at 6.) Plaintiffs' failure to coordinate the depositions contravenes the very letter of CMO4. Further, there is nothing in the Case Management Orders that explicitly prevents one set of plaintiffs from re-deposing these individuals on the very same issues. Indeed, there is nothing prohibiting plaintiffs from asking these individuals the very same questions that they were asked in their initial depositions. At the very least, such duplication of effort and resulting burden and expense certainly runs afoul of the spirit of the Case Management Orders. Moreover, the coordination difficulties that Defendants have recently encountered with Plaintiffs' counsel further highlights the need to add a provision to CMO4 with language preventing the redundant prosecution of claims, as requested in Defendants' earlier motion for entry of CMO4. (See Docket ## 137, 138, 147.) The potential for the duplication of effort is greater when multiple Plaintiffs' counsel with varying motives can pursue identical claims.

In addition, consistent with the motion for a protective order in the consumer protection cases, Defendants seek inclusion of a provision ensuring the uniform application of discovery scope limitations across the spectrum of MDL cases in recognition of the common factual core of Plaintiffs' allegations, whether alleging products liability claims, personal injury claims or consumer fraud claims. The inclusion of such a provision regarding discovery scope limitations will avoid the continuing need to make motions to apply scope limitations to all MDL cases, but

would preserve the parties' rights to object to the uniform application of particular limitations.[4]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court include in CMO4 the two additional provisions regarding the scheduling of depositions and discovery scope limitations.

Dated:  June 23, 2005

DAVIS POLK & WARDWELL

By:  s/James P. Rouhandeh
     James P. Rouhandeh
     James E. Murray

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:  s/David B. Chaffin
     David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

---

[4] Defendants note that on June 16, 2005, they filed a Motion for Protective Order Concerning Scope of Discovery asking the Court to limit the scope of discovery in the consumer protection cases regarding sales and marketing of Neurontin to the period ending December 31, 1998.  (See Docket ## 161, 162.)  There are no additional allegations in the complaints filed in the Products Liability Cases concerning Defendants' post-1998 sales and marketing activities.

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Civil Action No. 04-10981 |

**[PROPOSED] CASE MANAGEMENT ORDER NO. 4**
**(RELATING TO PRODUCTS LIABILITY LITIGATION)**

WHEREAS, by Order dated April 20, 2005 the Judicial Panel on MultiDistrict Litigation: a) transferred to this Court five (5) product liability actions involving both allegations with respect to the marketing and sales practices related to Neurontin as well as allegations related to the safety of Neurontin and claims that Neurontin caused personal injury to plaintiffs; and b) renamed MDL 1629 as *In re Neurontin Marketing, Sales Practices and Products Liability Litigation*; and

WHEREAS, on May 11, 2005, twenty-one (21) additional actions involving marketing and sales practices, personal injury, and products liability allegations were transferred to MDL 1629;

WHEREAS, on May 20, 2005, eight (8) actions involving marketing and sales practices, personal injury, and products liability allegations were conditionally transferred to MDL 1629; and

WHEREAS, in order to promote judicial economy and avoid undue delay, the Court finds that it would be appropriate to provide for case management of all transferred cases

alleging personal injury and product liability claims, separate and apart from that provided for the originally transferred cases involving claims related exclusively to marketing and sales practices and to appoint a separate committee of counsel to act for and on behalf of plaintiffs with claims of personal injury. Accordingly,

IT IS HEREBY ORDERED as follows:

I. **PRETRIAL CONSOLIDATION AND COORDINATION**

1. By order of the Judicial Panel on Multidistrict Litigation ("MDL Panel"), the actions listed on Exhibit A have been transferred to this Court for coordinated pretrial proceedings. Additional cases, identified on Exhibit B, have been identified as Tag-Along Actions and await transfer by the MDL Panel to this Court for coordinated pretrial proceedings.

2. These cases, and any other cases involving claims of personal injury or products liability that are subsequently filed in, transferred to or removed to this proceeding are referred to as the "Products Liability Cases."

3. This Order does not constitute a determination that actions consolidated for pretrial purposes should be consolidated for trial, nor does it have the effect of making any entity a party to any action in which he/she has not been named, served or added in accordance with the Federal Rules of Civil Procedure. No party, by agreeing to this Order, waives any defense of lack of personal jurisdiction or insufficiency of service of process.

A. **Applicability of Order**

The terms of this Order shall apply automatically to all products liability and personal injury cases transferred into MDL 1629 and to all other products liability and personal injury cases that become a part of this proceeding by virtue of being filed in, removed to, or transferred to this Court (including cases transferred pursuant to Local Rules, 28 U.S.C. § 1404(a), or 28 U.S.C. § 1407). Case Management Orders Nos. 1-3 shall also apply to the Products Liability

Cases to the extent the Court does not make alternative provisions related to the Products Liability Cases in this Order or in subsequent case management orders.

B.    **Dissemination of Order**

Within five (5) days of the date of this Order, Plaintiffs' Liaison Counsel (designated in Case Management Order 1) shall send a copy of this Order by overnight delivery, hand delivery or telecopy to all counsel in Products Liability Cases to which this Order applies. When an action that properly belongs as part of this proceeding and which alleges personal injury or asserts products liability claims is hereinafter filed before this Court or transferred or removed to the Court from another forum, Plaintiffs' Liaison Counsel shall immediately send a copy of this Order by overnight delivery, hand delivery, or telecopy to plaintiffs' counsel in that action. After the appointment of liaison counsel for the Products Liability Cases it shall be the responsibility of the designated liaison counsel to disseminate this Order to plaintiffs' counsel in actions filed in, transferred to or removed to this Court that are properly part of this proceeding and which allege personal injury or products liability claims. Objections to the terms of this Order must be filed by parties or their counsel within fifteen (15) days of receipt of the Order.

II.    **CASE IDENTIFICATION**

This case shall be styled "*In re Neurontin Marketing, Sales Practices and Products Liability Litigation*", and all provisions of all prior Case Management Orders are hereby concerning the case title are hereby amended accordingly.

III.   **ORGANIZATION OF PRODUCTS LIABILITY COUNSEL**

A.    **Designation**

The Court intends to appoint a steering committee and liaison counsel for the Products Liability Cases, to be referred to as the Products Liability Plaintiffs' Steering Committee and the Products Liability Plaintiffs' Liaison Counsel respectively. Currently there are three different

3

attorneys and/or firms representing plaintiffs in the Products Liability Cases and, based on the Conditional Transfer Order of May 20, 2005, it is possible that additional plaintiffs' counsel will be involved in the Products Liability Cases. Accordingly, to give counsel in the conditionally transferred actions an opportunity to petition for appointment to the steering committee or to act as liaison counsel, the Court orders plaintiffs' counsel to submit motions for appointment to the Products Liability Steering Committee and as liaison counsel by June 17, 2005. The motions shall include declarations of support as well as materials demonstrating counsels' qualifications for appointment.

      B.    **Products Liability Plaintiffs' Steering Committee Responsibilities**

      1.    Counsel appointed as members of the steering committee above shall be referred to collectively as the Products Liability Plaintiffs' Steering Committee of "PLPSC" or "PL Plaintiffs' Steering Committee."

      2.    PL Plaintiffs' Steering Committee shall have sole authority over the following matters on behalf of the Products Liability Plaintiffs in their respective cases: (a) the establishment of working committees for the efficient prosecution of the Products Liability Cases and appointment of chair persons and members of such committees; (b) the initiation, response, scheduling, briefing and argument of all motions related to the Products Liability Cases; (c) the scope, order and conduct of all discovery proceedings in the Products Liability Cases; (d) such work assignments to other Plaintiffs' counsel in the Products Liability Cases as they may deem appropriate; (e) the retention of experts in the furtherance of the Products Liability Cases; (f) designation of which attorneys may appear at hearings, depositions and conferences with the Court related to the Products Liability Cases; (g) the timing and substance of any settlement negotiations with Defendants related to the Products Liability Cases; and (h) other matters concerning the prosecution and resolution of their respective cases.

3. No motion shall be initiated or filed on behalf of any Products Liability Class Plaintiff except through Products Liability Plaintiffs' Steering Committee.

4. Products Liability Plaintiffs' Steering Committee shall have sole authority to communicate with Defendants' counsel and the Court on behalf of all Products Liability Plaintiffs, unless that authority is expressly delegated to other counsel. Defendants' counsel may rely upon all agreements made with Products Liability Plaintiffs' Steering Committee.

C. **Products Liability Plaintiffs' Liaison Counsel Responsibilities**

1. Upon appointment, Products Liability Plaintiffs' Liaison Counsel shall (a) maintain and distribute to all counsel an up-to-date service list; (b) receive and, as appropriate, distribute to plaintiffs' counsel orders from the Court and materials served by Defendants' counsel; (c) communicate with plaintiffs' counsel information concerning the status of and developments in this proceeding.

2. Upon appointment, Products Liability Plaintiffs' Liaison Counsel will be designated as the counsel for plaintiffs upon whom all notices, orders, pleadings, motions, discovery and memoranda are to be served, except for case-specific matters, which shall be served on Products Liability Plaintiffs' Liaison Counsel as well as on the attorneys of record in that particular case.

D. **Further Orders**

Upon application of Products Liability Plaintiffs' Steering Committee, or of by the Court *sua sponte*, further organizational order(s), including orders under Fed. R. Civ. 23(g)(2)(a), will be considered.

5

IV. **COORDINATION OF PROCEEDINGS BETWEEN MARKETING AND SALES CASES AND PRODUCTS LIABILITY CASES**

**Defendants' Proposal:**

[A. **Claims Other Than Personal Injury and Products Liability Claims**

All claims asserted in the Products Liability Cases other than those related to personal injury or products liability shall be prosecuted on behalf of plaintiffs by and at the direction of the Class Plaintiffs' Steering Committee established by this Court pursuant to Case Management Order No. 1. All non-personal injury and non-products liability claims asserted in the Products Liability Cases are subject to the Amended Class Complaint filed on February 1, 2005.]

**Plaintiffs' Proposal:**

[Omit paragraph IV. A. above]

B. **Coordination**

Despite the separate steering committees appointed to represent, respectively, the interests of Plaintiffs with personal injury or product liability claims and those with claims related to the marketing and sales practices of Neurontin, and despite the separate case schedule that may be established as between the two types of cases or claims, the Court expects Plaintiffs, through the respective steering committees, to the extent possible, to coordinate the prosecution of these matters so as to avoid undue waste of time, duplication of effort or undue expense on behalf of the Court and all parties involved.

[C. **Scheduling of Depositions**

The Plaintiffs in this MDL proceeding and their counsel shall not notice or otherwise seek to proceed with the deposition of any of Defendants' witnesses without first consulting with all other Plaintiffs' counsel and agreeing upon deposition dates that are acceptable to all Plaintiffs' counsel.]

6

**[D.    Discovery Scope Limitations**

All discovery scope limitations in effect in the non-Products Liability Cases shall apply to the Products Liability Cases, and vice versa, unless Liaison Counsel can establish the inapplicability of the uniform application of specific scope limitations. Any such objection shall be made within fifteen (15) days of the entrance of the order applying the scope limitation and Liaison Counsel shall meet and confer within five (5) days of the objections to attempt to resolve the dispute.]

## V.    FURTHER CASE SCHEDULE

Within fourteen (14) days of an Order appointing the Products Liability Plaintiff Steering Committee and liaison counsel, Defendants and Products Liability Plaintiff Steering Committee shall confer and provide the Court with a Proposed Stipulated Case Schedule to govern the remainder of the pre-trial activities related to the Products Liability Cases. If the parties are unable to agree on such a schedule they shall provide the Court with a single statement identifying all areas of agreement and any areas on which agreement could not be reached.

## VI.    ATTORNEYS' TIME AND EXPENSE RECORDS

### A.    Maintenance of Contemporaneous Records

Any counsel who may seek an award (or approval) of a fee (or expenses) by the Court in connection with this proceeding shall keep a daily record of his/her time spent and expenses incurred regarding this proceeding, including a specific record of the hours, location, and particular activity. The failure to maintain such records will be grounds for denying court-awarded attorneys' fees, as will insufficient description of the activity.

7

**B.     Filing**

Each counsel (or each firm) who may seek an award (or approval) of a fee (or expenses) by the Court shall file quarterly with Product Liability Plaintiffs' Liaison Counsel a report summarizing according to each separate activity the time and reasonable and necessary expenses spent during the preceding quarter (and the ordinary billing rates of such attorneys in effect during such quarter) and the accumulated total of counsel's time, hourly rates, and expenses to date.

By: _____

By: _____

**SO ORDERED:**

_____
United States District Judge

Dated: _____

# EXHIBIT B

# DAVIS POLK & WARDWELL

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

1300 I STREET, N.W.
WASHINGTON, D.C. 20005

1600 EL CAMINO REAL
MENLO PARK, CA 94025

99 GRESHAM STREET
LONDON EC2V 7NG

15, AVENUE MATIGNON
75008 PARIS

MESSETURM
60308 FRANKFURT AM MAIN

MARQUÉS DE LA ENSENADA, 2
28004 MADRID

1-6-1 ROPPONGI
MINATO-KU, TOKYO 105-6033

3A CHATER ROAD
HONG KONG

JAMES E. MURRAY
212 450 4084
james.murray@dpw.com

May 27, 2005

Re: **In re Neurontin**

Kenneth B. Fromson, Esq.
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, N.Y. 12550

Dear Ken:

I write regarding your Notices to take Oral Deposition dated May 10, 2005. As the suicide cases in federal court have now been transferred to the MDL before Judge Saris in the District of Massachusetts, we would like to wait until a proper Case Management Order is in place before we provide individuals to be deposed. In doing so we seek to avoid subjecting witnesses to duplicate depositions. In the meantime, we will continue to be in touch with the current and former employees whom you have noticed regarding convenient dates for their depositions.

We have serious objections, however, to any depositions of three current employees, Paul Fitzhenry, Bryant Haskins and Martin Teicher. These individuals have no personal knowledge that is relevant to this litigation beyond the statements they have made as a matter of public record. Deposing these individuals is not necessary. We are happy to discuss this with you further, but if you persist in seeking to depose them we will be forced to seek a protective order.

As always, please feel free to call me if you would like to discuss.

Very truly yours,

/s/ James E. Murray
James E. Murray

By Facsimile & E-Mail

# EXHIBIT C



Howard S. Finkelstein, P.C.
Andrew G. Finkelstein, P.C. (NY & NJ)
George M. Levy
Kenneth L. Oliver, P.C.
Joel S. Finkelstein, P.C. (NY, NJ, MA & FL)
Duncan W. Clark
Ronald Rosenkranz
Robert J. Camera (NY & NJ)
Joseph P. Rones (NY & FL)
Steven Lim
George A. Kohl, 2nd (NY & MA)
Eleanor L. Polimeni
Steven H. Cohen
Francis Navarra

Andrew J. Genna (NY & PA)
Thomas C. Yatto
Elyssa M. Fried-DeRosa
Mary Ellen Wright
Kenneth B. Fromson (NY & NJ)
Joel Bossom
Nancy Y. Morgan (NY & PA)
Andrew L. Spitz
James W. Shuttleworth, III
Lawrence D. Lissauer
David E. Gross (NY & NJ)

Bonna L. Horovitz (NY, NJ & MA)
Terry D. Horner

Robert F. Moson
Debra J. Reisenman
Michael T. McGarry
Steven P. Shultz (NY & MA)
Julio E. Urrutia
Victoria Lieb Lightcap (NY & MA)
Ann R. Johnson (NY & CT)
Marshall P. Richer
Thomas J. Pronti
Kristine M. Cahill (NY & CT)
Kara L. Campbell (NY & CT)
Arieh Mezoff
Christopher T. Milliman

Silvia Fermanian
Karen M. Queenan (NY & CT)
Marie M. DuSault
Andrew I. Falk

*Of Counsel*
Jules P. Levine, P.C. (NY & FL)
Michael O. Gittelsohn, P.C. (NY)
Joel A. Reback (NY & Israel)
Sheila Rosenrauch (NY)
Kenneth Cohen (NJ)
Cynthia M. Maurer (NY & NJ)
Raye D. Futerfas (NJ)
Frances M. Bova (NY & NJ)
Kenneth G. Bartlett (CT & NJ)
Ari Kresch (NY & MI)

A Limited Liability Partnership

(800) 634-1212
REFER TO OUR FILE # 207962

June 9, 2005

James Rouhandeh, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

By email & Mail

Re:   In re Neurontin

Dear Jim:

Based upon James Murray's letter, dated May 27, 2005, and the telephone conference of June 6, 2005, I understand that Defendants do not intend to produce witnesses on the dates outlined in the deposition notices, dated May 10, 2005. Defendants have not proposed a specific alternate date.

As discussed during the telephone conference, we have reached out to Liaison Counsel in the MDL in an attempt to coordinate depositions. Specifically, I advised counsel as to the deposition dates for which Defendants were served notices on May 10, 2005. As of this writing, I have not received a response from Liaison Counsel. I will keep you advised as to the situation, and whether we will be making a motion to compel the depositions.

As to other outstanding discovery, and as to each of Defendants' objections to Plaintiff's discovery demands, we do intend to make a motion to compel discovery by June 22, 2005, along with our opposition to Defendants' pending motion. To the extent Defendants have specific proposals as to resolving Defendants' objections, please advise accordingly.

Very truly,

Kenneth B. Fromson

NEWBURGH • ALBANY • SYRACUSE • POUGHKEEPSIE • UTICA • TROY • BINGHAMTON • MIDDLETOWN • NYACK
NEWARK • NEW WINDSOR • GOSHEN • NEW HAVEN • CINCINNATI
Accredited CLE Provider   www.lawampm.com   www.stocklitigationlaw.com
send ALL correspondence to our operations center: 436 Robinson Avenue, Newburgh, NY 12550 • (800)634-1212 • Fax (845)562-3492