UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION ) ) ) ) ) | |
| THIS DOCUMENT RELATES TO: ) ) ALL MARKETING AND ) SALES PRACTICES ACTIONS ) ) | MDL Docket No. 1629 Master File No. 04-10981 Judge Patti B. Saris Mag. Judge Leo T. Sorokin |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER WITH RESPECT TO PLAINTIFFS' REQUESTS FOR ADMISSION**

The Class Plaintiffs (*Harden Manufacturing Corp., et al. v. Pfizer, Inc., et al.*) and the Coordinated Third Party Payer Plaintiffs (*The Guardian Life Insurance Company of America v. Pfizer, Inc. and Aetna, Inc. v. Pfizer, Inc.*) (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to defendants Pfizer, Inc. and Warner-Lambert Company's (collectively, "Defendants'") Motion for Protective Order With Respect to Plaintiffs' Requests for Admission (the "Motion").

The official guide for federal judges on complex litigation, the Federal Judicial Center's *Manual for Complex Litigation, Fourth* (2004), cautions that:

> The production of documents . . . will not necessarily provide the foundation for admission of those documents at trial or for use in a motion for summary judgment. In managing documents, the court should therefore take into account the need for effective and efficient procedures to establish the foundation for admission, which can be accomplished by stipulation, requests for admission, interrogatories, or depositions (particularly Rule 31 depositions on written questions). . . . The judge should advise parties to agree on

>   handling because admissibility will depend on the efficacy of these procedures.

*Id.*, § 11.445 (footnote omitted).

This is a document-intensive case. Plaintiffs, who will need to lay foundation for admissibilty of documents produced by Defendants, have made several attempts to address this issue, all of which have been rebuffed by Defendants. As Plaintiffs explained in their February 18, 2005 Case Management Conference Statement (docket entry no. 44):

>   Plaintiffs respectfully submit that any document produced by a party should be deemed authentic and a record of regularly conducted business activity, absent a statement by the producing party articulating a good faith basis for the belief that the document is not authentic and/or a business record. It would consume an enormous amount of deposition time to lay foundation for the hundreds of thousands (or millions) of documents produced by Defendants in *Franklin* and in this proceeding. Nor is it reasonable to expect the parties to be able to determine at the outset of the case which subset of documents they may wish to use at trial or summary judgment. It would be an enormous waste of attorney and witness time, and expense, to require the parties to lay foundation for every document they *may* wish to use at trial as witnesses are deposed, and any oversight (or sparing of the witness) in this regard would invite a strategic objection by the opposing party, after the deposition is concluded or discovery is closed, without any good faith basis for the objection. The producing party is in the best position to know whether there is any good faith basis for such an objection, and they should be required to articulate that objection to preserve it, placing the receiving party on notice that foundation must be laid, so that this can be done in a timely and efficient manner.

*Id.* at 3-4. At the February 24, 2005 status conference, the issue was addressed as follows:

>   MR. HIMMELSTEIN: Your Honor, of all the other issues we've raised, . . . there is one that I think bears mentioning, which is the issue of authentication of documents. This is a very document-intensive case. It does not make sense for both sides to spend months of deposition time confirming the authenticity of documents and that their [sic] business records when I think we all know that probably all are going to fall into that category, but if we don't have some protocol for authentication, we are either going to have to do that –

> THE COURT: See what you can agree on. The problem is that I can't force them to do something that the Rules of Evidence don't provide. Even though I think it makes a lot of sense. So see if you can agree on it.

Reporter's Transcript, Case Management Conference (Feb. 24, 2005), at 44:2-15.

Prior to this colloquy with the Court, the parties had already discussed this issue on more than one occasion, but Defendants expressed no willingness to enter into any such stipulation, and offered no alternative. Accordingly, as Judge Saris had already indicated that if Defendants were unwilling to enter into a stipulation, Plaintiffs would have to proceed "by the book," so to speak, Plaintiffs availed themsleves of the only discovery tool specifically designed to ascertain "the genuiness of any documents described in the request." Fed. R. Civ. P. 36(a).

As Defendants note in their dramatically-titled Motion, Plaintiffs' Requests for Admission ("RFAs"), while large in number, ask only that Defendants' admit (1) that the documents they previously produced in *United States ex rel. Franklin v. Parke-Davis, et al.*, C.A. No. 96-11651-PBS (D. Mass.) ("*Franklin*") are "genuine," and (2) that they constitute "business records," within the meaning of Federal Rule of Evidence 803(6). Plaintiffs had hoped that service of the RFAs might at least motivate Defendants to engage in a meaningful discussion and willingness to compromise on the issue, but to no avail. The June 9, 2005 "meet-and-confer" referred to in Defendants' Motion was perfunctory at best, consisting solely of a brief, unscheduled telephone call received from Defendants, during which Plaintiffs offered to stipulate that Defendants need not respond to the RFAs or file a motion for protective order on July 13, 2005, so that the parties might attempt to reach some compromise on the issue. *See* Declaration of Barry Himmelstein in Support of Plaintiffs' Opposition to Defendants' Motion for Protective Order With Respect to Plaintiffs' Requests for Admission ("Himmelstein Decl."), ¶ 2. Defendants refused this offer, demanded that Plaintiffs withdraw the RFAs, and stated that they

saw no point in discussing the matter further. *Id*.

Notwithstanding Defendants' lack of interest in further discussions, on June 24, 2005, Plaintiffs proposed the following compromise resolution of the instant dispute:

> We would be willing to withdraw the requests (without prejudice to serving a narrower set at a later date), provided that:
>
> On the RFAs related to authenticity, Defendants stipulate to the authenticity of documents generated by Pfizer or Warner-Lambert, as opposed to third parties.
>
> On the RFAs relating to the business records exception, Defendants stipulate that if necessary, Plaintiffs may recall already-deposed witnesses to lay foundation for documents, irrespective of discovery cutoff dates, or the two-day per witness limit on depositions.
>
> . . . [T]his proposal fairly addresses Plaintiffs' concern that they will be unable to lay foundation for documents, and Defendants' concern that the RFAs include documents which will never be introduced as evidence so that foundation will be unnecessary.

Himmelstein Decl., ¶ 3 & Exh. 1. Defendants rejected this proposal in its entirety, and took the position that Plaintiffs should not take any depositions until Defendants had completed their document production, and that all documents should be authenticated, and foundation for admissibility laid, through deposition testimony. Himmelstein Decl., ¶ 4.

Plaintiffs' proposed compromise is eminently reasonable, but as Defendants have refused to enter into such a stipulation, and have offered no compromise of their own, it is not unreasonable to require Defendants to proceed "by the book," and respond to the RFAs.[1] At

---

[1] None of the cases cited by Defendants in support of the Motion involved requests to admit the authenticity of documents, which is specifically authorized by Rule 36(a), let alone documents produced by the responding party, or requests concerning admissibility of those documents. *See Wigler v. Electronic Data Systems Corp.*, 108 F.R.D. 204, 205 (D. Md. 1985) (defendants' 1,664 requests "represent an attempt not just to nail down the core facts of the case, but also to pick every nit that a squad of lawyers could possibly see in it"); *Lantz v. New York Central R.R. Co.*, 37 F.R.D. 69 (N.D. Ohio 1963) (a one-paragraph decision that reveals nothing about the nature of the requests, but states that "[a]dmissions sought under Rule 36 should not be of such great

botom, this Motion presents the question: Which is more reasonable, requiring Defendants to admit or deny the authenticity and business-records character of their own documents, or requiring Plaintiffs to refrain from taking any depositions until Defendants' document production is complete (which may be many months, according to Defendants) and Plaintiffs have identified every document they may wish to use in opposition to summary judgment or at trial, or risk losing their only opportunity to authenticate and lay foundation for the documents? As Defendants are unwilling to compromise on the issue, it is not unduly burdensome to require them to respond to the RFAs. Accordingly, the Motion should be denied.

---

number and broad scope as to cover all the issues of a complex case"); *Salomon S.A. v. Alpina Sports Corp.*, 737 F.Supp. 720, 726 (D. N.H. 1990) (plaintiffs served "a huge number of 'requests for admissions' which seek defendants' stipulation on a variety of facts related to the patent infringement claims that form the central part of this litigation"); *Leonard v. Univ. of Delaware*, No. 96-360 MMS, 1997 WL 158280 at *5 (D. Del. March 20, 1997) (describing requests, drafted by client in wrongful termination suit, as "simply incomprehensible" or "offensive").

Dated: July 8, 2005                         Respectfully Submitted,

                                                   By:    **/s/ Barry Himmelstein**
Barry Himmelstein, Esquire
Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By:    **/s/ Thomas Greene**
Thomas Greene Esquire
Greene & Hoffman
125 Summer Street
Boston, MA 02110

By:    **/s/ Don Barrett**
Don Barrett, Esquire
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By:    **/s/ Daniel Becnel**
Daniel Becnel, Jr., Esquire
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

By:    **/s/ James Dugan**
James Dugan, Esquire
Dugan & Browne
650 Poydras St., Suite 2150
New Orleans, LA 70130

*Members of the Class Plaintiffs' Steering Committee*

-7-

By: **/s/ Thomas M. Sobol**
Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142

*Plaintiffs' Liaison Counsel and Member of the Class Plaintiffs' Steering Committee*

By: **/s/ Richard Cohen**
Richard Cohen, Esquire
Lowey Dannenberg Bemporad
& Selinger, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY 10601

By: **/s/ Linda P. Nussbaum**
Linda P. Nussbaum, Esquire
Cohen Milstein Hausfeld & Toll
150 East 52nd Street
Thirteenth Floor
New York, NY 10022

*Members of the Plaintiffs' Non-Class Steering Committee*