UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: NEURONTIN MARKETING AND SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Judge Patti B. Saris |

**AFFIDAVIT OF THOMAS GREENE IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS CREATED AFTER DECEMBER 31, 1998**

I, Thomas Greene, hereby state and declare as follows:

1.   I am an attorney licensed to practice in the Commonwealth of Massachusetts and a member in good standing of the bar of the United States District Court of Massachusetts. I am the chairman of the Class Plaintiffs' Steering Committee for the Marketing and Sales Practices portion of this multi district litigation. I was the lead attorney for the plaintiff, David Franklin, in the *qui tam* action Franklin ex. rel. United States v. Parke-Davis, a Division of Warner Lambert, C.A. No. 96-11561-PBS ("Franklin"). I have personal knowledge of the proceedings and the discovery which occurred in Franklin.

2.   Defendants' description of the production of documents in Franklin and the information the Relator had in his possession when the Amended Complaint in Franklin was drafted, contained in their opposition to Plaintiffs' motion to compel, is inaccurate. On August 22, 2000 the Relator served his first request for production of documents. Defendants responded to that request on September 19, 2000, by objecting to 39 of the 40 requests and agreeing only to produce documents responsive to a single request, which merely sought copies of the document requests served on Parke-Davis by the United States in connection with its civil investigation. On October

30, 2000 Relator served his Second Request for Production of Documents, which sought production of the documents Warner-Lambert and Parke-Davis produced to the United States pursuant to the civil investigative document requests. Defendants only agreed to produce documents previously produced to the United States, subject to a protective order, as opposed to documents responsive to 39 of the 40 requests found in the Relators' First Request For Production of Documents.

3.      After the January 2001, hearing where Judge Saris was stunned to learn that Defendant had not yet produced any documents to the Relator and ordered the immediate "attorneys eyes only" production of the documents, Defendants produced approximately 60 boxes of documents. All of these documents were copies of documents previously produced to the United States; Defendants merely produced copies of what they had produced earlier. The bulk of the production to the United States had occurred in mid-1997, and we received less than two dozen documents dated after 1997.

4.      After receipt of the 60 boxes, I asked James Murray and James Rouhundeh, the two attorneys handling the discovery dispute for the Defendants, whether Defendants intended to do a search of documents responsive to the Plaintiffs' First Request, but which may not have been included in Parke-Davis's production to the United States. Defendants refused to perform such a search, despite the fact that the scope of the documents sought by the Relator and those previously sought by the United States were not identical.

5.      Until Judge Saris ordered Defendants to produce documents through 1998, Defendants never searched Parke-Davis documents to find documents that were responsive to specific document requests made by the Relator. Even now, we do not know if the Defendants' actually searched Parke-Davis files for the documents, or merely produced a subset of documents that had been produced to the United States pursuant to the government's criminal investigation.

(Although we were aware that the United States was conducting a criminal investigation and that additional documents were obtained from Parke-Davis and Pfizer, we have no idea how many additional documents were produced or what the scope of production was).

6.    We drafted the Amended Complaint after we received the initial 60 boxes from Defendants, but before Judge Saris definitively ruled upon the scope of discovery. Accordingly, we did not have any specific documentation, at the time we drafted the Complaint, of what Parke-Davis and its agents had actually stated to physicians after 1997. However, from the documents that were produced we knew what types of misrepresentations it was Parke-Davis's policy to employ and that they intended to continue marketing in the documented manner for at least one more year. We also knew there was no evidence that Parke-Davis intended to cease its successful off-label marketing strategies. Accordingly, in the Amended Complaint, we pled that the off-label marketing campaign was conducted from 1994 through at least 1998, and upon information and belief, continued through the present day.

7.    As I have related in prior affidavits filed in the Franklin litigation, in the spring of 2003, at about the same time we were preparing our opposition to Defendants' Motion For Summary Judgment in Franklin, we learned that two of Defendants' principal vendors, Sudler & Hennessy and Cline, Davis & Mann had withheld thousands of documents in response to subpoenas served upon them in Franklin. We learned that these vendors had produced far more documents in response to civil investigative demands made by the United States. We contacted the attorney for these vendors, who agreed that the documents produced to the United States should be deemed to be documents responsive to our earlier subpoenas, and we then made arrangements to review the documents which were in the custody of the United States Attorney. We were not able to review these documents until

3

after our opposition to summary judgment was complete and just before the parties agreed, in principle, to settle the *qui tam* litigation.

8. The two vendors produced 47 moving boxes (roughly twice the size of the bankers' boxes produced by the Defendants) of documents to the United States. Although, we only had the opportunity to review approximately 10 of the boxes, it appears that these vendors produced almost as many documents relating to Defendants' off-label marketing of Neurontin as the Defendants themselves. Further, the boxes contained more detailed documentation regarding what was said at the hundreds of events they hosted than the documents produced by Defendants. For many events, for example, the vendors had transcripts of what was said which would allow us to specifically identify misrepresentations and omissions made to the physicians at said meeting. The documents also documented Defendants' control over the content of the events.

9. Most surprising of all, the vendor documents demonstrated that the promotion of off-label Neurontin through events purportedly sponsored by "independent" third parties did not cease after the merger of Pfizer and Warner-Lambert. In the boxes we examined we saw evidence of dozens of events relating to off-label Neurontin well after July 2000 and continuing through the time of document production. These events were very similar in content and format to the pre-1999 events that we were familiar with from the Defendants' document production and which were the basis of our evidence that false claims had been submitted to the United States as a result of Parke-Davis causing false and misleading statements to be made to Medicaid providers. Judge Saris, of course, found that we had presented sufficient evidence of such conduct to withstand Defendants' motion for summary judgment.

10. The FBI agents overseeing the custody of these documents only permitted our office to make copies on one of our trips to review the documents. The documents we were able to copy

were the basis of the specific allegations in the Amended Class Action Complaint regarding post-1999 events. However, with the exception of one Advisory Board meeting in March 2000, there were no transcripts of events in those documents[1]. As I noted above, we did see and review such transcripts in other trips, but we were not permitted to copy them.

11. The Class Plaintiffs have subpoenaed Sudler & Hennessy and Cline Davis & Mann in this action and requested production of the very documents they produced to the United States and ultimately produced for the Relator in Franklin. These vendors have refused to produce post 1998 documents based on their understanding that the scope of discovery is disputed in this action. Presumably, they were advised of this dispute by Defendants. If Defendants have co-ordinated the responses of these vendors with their own discovery responses, this would be another example of Defendants blocking the Plaintiffs' access to probative evidence. Such actions have plainly been taken so Defendants could later argue for dismissal of the post 1998 misrepresentation claims on the ground that Plaintiffs are unable to muster evidence in support of such claims.

12. Attached as Exhibit A to this affidavit is a true and correct copy, without attachments of the Amended Complaint my office filed on behalf of the Relator in Franklin.

Signed under the pains and penalty of perjury this 25th day of July, 2005

_____
Thomas Greene

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 7/25/05

---

[1] This transcript recorded a meeting of participating physicians with a Parke-Davis representative where the participants planned future events for non-participating physicians. The transcript does not describe in detail the content of these anticipated events.