UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION ) ) ) ) ) | |
| ) THIS DOCUMENT RELATES TO: ) ) ALL MARKETING AND ) SALES PRACTICES ACTIONS ) ) ) | MDL Docket No. 1629 Master File No. 04-10981 Judge Patti B. Saris Mag. Judge Leo T. Sorokin |

**PARTIAL TRANSCRIPT OF NOV. 23, 2004 STATUS CONFERENCE LODGED IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS, PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER CONCERNING SCOPE OF DISCOVERY, AND PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS CREATED AFTER DECEMBER 31, 1998**

In their memoranda of law filed in connection with the above-referenced motions, Plaintiffs made reference to the November 23, 2004 status conference held in front of Judge Saris, the transcript of which was previously unavailable. *See* Joint Memorandum of Law of the Class and Coordinated Plaintiffs In Opposition to Defendants' Motions to Dismiss, at 26; Joint Surreply Memorandum of Law of the Class and Coordinated Plaintiffs In Opposition to Defendants' Motions to Dismiss, at 17-18 & n.10; and Plaintiffs' Memorandum of Law In Opposition to Motion For Protective Order Concerning Scope of Discovery and In Support of Motion to Compel Production of Documents Created After December 31, 1998, at 2 n.3. The transcript has now become available, and the relevant portions are attached hereto as Exhibit A. Page 13, lines 8-9 of the transcript pertains to the pending discovery motions (pages 11-15 are provided, to put the matter in context), and pages 27-30 pertain to the pending motions to dismiss.

467057.1

Dated: August 16, 2005                                    Respectfully Submitted,

                                                By:    **/s/ Barry Himmelstein**
                                                Barry Himmelstein, Esquire
                                                Lieff Cabraser Heimann & Bernstein, LLP
                                                Embarcadero Center West
                                                275 Battery Street, 30th Floor
                                                San Francisco, CA 94111-3339

                                                By:    **/s/ Don Barrett**
                                                Don Barrett, Esquire
                                                Barrett Law Office
                                                404 Court Square North
                                                P.O. Box 987
                                                Lexington, MS 39095

                                                By:    **/s/ Daniel Becnel**
                                                Daniel Becnel, Jr., Esquire
                                                Law Offices of Daniel Becnel, Jr.
                                                106 W. Seventh Street
                                                P.O. Drawer H
                                                Reserve, LA 70084

                                                By:    **/s/ James Dugan**
                                                James Dugan, Esquire
                                                Dugan & Browne
                                                650 Poydras St., Suite 2150
                                                New Orleans, LA 70130

                                                By:    **/s/ Thomas Greene**
                                                Thomas Greene Esquire
                                                Greene & Hoffman
                                                125 Summer Street
                                                Boston, MA 02110

                                                *Members of the Class Plaintiffs'*
                                                *Steering Committee*

By:   **/s/ Thomas M. Sobol**
Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142

*Plaintiffs' Liaison Counsel and Member of the Class Plaintiffs' Steering Committee*

By:   **/s/ Richard Cohen**
Richard Cohen, Esquire
Lowey Dannenberg Bemporad
& Selinger, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY 10601

By:   **/s/ Linda P. Nussbaum**
Linda P. Nussbaum, Esquire
Cohen Milstein Hausfeld & Toll
150 East 52nd Street
Thirteenth Floor
New York, NY 10022

*Members of the Plaintiffs' Non-Class Steering Committee*

# **EXHIBIT A**

SC11234.TXT

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
---------------------------------
IN RE:                          :    Civil Action
                                :    MDL No. 1629
   NEURONTIN MARKETING and      :
                                :    Courtroom No. 19
   SALES PRACTICES LITIGATION   :    1 Courthouse Way
                                :    Boston, MA 02210-3002
---------------------------------    2:30 p.m., Tuesday
                                     November 23, 2004
```

Status Conference

Before:    THE HONORABLE PATTI B. SARIS,
           UNITED STATES DISTRICT JUDGE

APPEARANCES:

Lowey Dannenberg Bemporad & Selinger, P.C.,
   (by Richard Cohen, Esq.), The Gateway,
   One North Lexington Avenue, White Plains, NY 10601,
   on behalf of Aetna, Inc.

Shapiro, Haber & Urmy, LLP, (by Thomas G. Shapiro, Esq.),
   53 State Street, Boston, MA 02109,
   on behalf of Guardian Life Insurance Co. and other
   third-party payors.

Cohen, Milstein, Hausfeld & Toll, P.L.L.C.,
   (by Linda P. Nussbaum, Esq. and Richard Louison, Esq.),
   150 East 52nd Street, 30th Floor, New York, NY 10022,
   on behalf of Guardian Life Insurance Company.

Hagens Berman LLP, (by Thomas M. Sobol, Esq. and
   Edward Notargiacomo, Esq.),
   One Main Street, Cambridge, MA 02142,
   on behalf of Harden Manufacturing.

                  Marie L. Cloonan
                Official Court Reporter
             1 Courthouse Way - Suite 7200
         Boston, MA 02210-3002 - (617)439-7086
           Mechanical Steno - Transcript by Computer


APPEARANCES CONTINUED:

Greene & Hoffman, PC, (by Thomas M. Greene, Esq.),
   125 Summer Street, Boston, MA 02110,
   on behalf of Brenda Straddeck.

Barrett Law Office, (by Don Barrett, Esq.),
   404 Court Square North, Lexington, MS 39095,

Page 1

SC11234.TXT
on behalf of Mary Lou Lienerth.

The Law Offices of Daniel E. Becnel, Jr.,
   (by Daniel E. Becnel, Jr., Esq.),
   106 W. Seventh Street, P. O. Drawer H, Reserve, LA 70084,
   on behalf of Emma B. Christina.

Lieff, Cabraser, Heimann & Bernstein, LLP,
   (by Barry R. Himmelstein, Esq.),
   Embarcadero Center West, 275 Battery Street,
   San Francisco, CA 94111-3339,
   on behalf of Alaska State Employees Association.

Dugan & Browne, (by James Dugan, Esq.),
   609 Poydras Street, Suite 2150, New Orleans, LA 70130,
   on behalf of Blue Cross of Louisiana and Allied Services.

Berman, DeValerio, Pease Tabacco, Burt & Pucillo,
   (by Peter A. Pease, Esq.)
   One Liberty Square, Boston, MA 02109,
   on behalf of Aetna, Inc.

Seeger Weiss LLP, (by Seth A. Katz, Esq.),
   One William Street, New York, NY 10004-2502,
   on behalf of Allied Services Division Welfare Fund and
   International Union of Operating Engineers Local 68.

Cohen & Malad, LLP, (by Irwin B. Levin, Esq.),
   One Indiana Square, Suite 1400, Indianapolis, IN 46204,
   on behalf of the Plaintiff, Gerald Smith.

Bruno & Bruno LLP, (by Joseph M. Bruno, Esq.),
   855 Baronne Street, New Orleans, LA 70113,
   on behalf of the Plaintiff, Debra Null.


APPEARANCES CONTINUED:

Murray Law Firm, (by Stephen B. Murray, Jr., Esq.),
   Suite 2550 LL&E Tower, 909 Poydras Street,
   New Orleans, LA 70112-4000,
   on behalf of the Plaintiff, Maggie Dorty.

Dane S. Ciolino, Esq.,
   P.O. Box 850848, New Orleans, LA 70185-0848,
   on behalf of the Plaintiff, Joyce Duhe.

Davis Polk & Wardwell,
   (by James P. Rouhandeh, Esq. and Louis Bernstein, Esq.),
   450 Lexington Avenue, New York, NY 10017,
   for the Defendant, Pfizer.

Hare & Chaffin, (by David B. Chaffin, Esq.),
   150 Federal Street, Boston, MA 02110,
   on behalf of Defendant, Pfizer.


Page 2

SC11234.TXT

23  the process of preparing a consolidated amended complaint,
24  an amended master consolidated complaint, another MCC.
25      At some point in the process, between now and class

13

1   certification, we will make a decision as to how to class
2   the case, whether it would be all in a large group or
3   whether it would be segregated, TPPs as in consumers. And,
4   of course, there are other issues that deal with the class
5   as well: What the time period would be, what the kind of
6   claims are that we're trying to get certified, that kind of
7   thing.
8       And so, at least as I understand the steering
9   committee proposal we've outlined to date, is that it
10  contemplates another round, if you will, of structuring the
11  case in a flexible way so that we can, in fact, perhaps
12  proceed on a, you know, different -- on a split, if you
13  will, basis, although litigating the case on parallel
14  tracks.
15      THE COURT: All right. Let me say this. As far as
16  I'm concerned -- and, I honestly don't know the individual
17  circumstances of each third-party payor, so we'll put that
18  aside for a minute. But, the basic Neurontin dispute has
19  been fully discovered. We were -- it settled when, after
20  the discovery period had closed? Am I right?
21      MR. ROUHANDEH: Yes, that's correct, your Honor.
22      THE COURT: I don't want to redo all that. I know
23  I had protective orders. If I remember it correctly, it was
24  heavily litigated at various points in time.
25      One part of what the lead counsel need to talk

14

SC11234.TXT

1   about is opening all of that up to this case because I don't
2   want you all to redo that. There may be individual defenses
3   that you may have vis-a-vis individual third-party payors.
4   I know causation is a huge issue.
5           MR. GREENE: If I can address --
6           THE COURT: But I don't want to start again.
7           MR. GREENE: No, I don't think we have to start
8   again.
9           You permitted discovery for a four-year period and
10  you primarily limited it georgrahically to the northeast CVU
11  and to other documents that had passed through the main
12  office in Morris Plains.
13          As you know, Judge, the sales of Neurontin have
14  continued since '98. The time period you gave us was '94 to
15  '98. In the last several years, they've exceeded $2
16  million. The marketing continued after '98. You just
17  limited the scope of discovery. So, we have all the
18  discovery that we obtained from the defendants and
19  third-party vendors, other parties. We have that and can
20  make that available.
21          But there's additional discovery that has to be
22  done from the year 1999 up to the present date, that has to
23  be done nationwide.
24          THE COURT: You mean as part of the other
25  actions --

                                                            15


1           MR. GREENE: Pardon me?
2           THE COURT: -- you didn't deal with the off label
3   issue?
4           MR. ROUHANDEH: Well, your Honor, there aren't any

Page 12

SC11234.TXT

5  allegations, at least that we've seen, with any sort of
6  specific allegations of any conduct after 1998. I'm sure
7  they might like to get every document they could get their
8  hands on after '98. But, all of the allegations in these
9  complaints are about conduct that has been fully discovered.
10         THE COURT: You know, I wasn't even that involved
11  in the criminal case. What was the plea to?
12         MR. ROUHANDEH: It was to two violations of the
13  Food, Drug and Cosmetic Act. And, it's very important. The
14  conduct was misdemeanor conduct. There was no intent to
15  defraud in that it was a felony by virtue of a prior
16  conviction.
17         THE COURT: Was it the off label stuff?
18         MR. ROUHANDEH: It related to off label
19  promotion.
20         THE COURT: I'm assuming, though, that you're not
21  continuing to do that?
22         MR. ROUHANDEH: No. Of course not.
23         (Laughter.)
24         THE COURT: I'm being serious.
25         So when you say post -- all right. So, you're

                                        16

1  saying in between the time of the plea and 1998, is that
2  what you're saying, it's ongoing now?
3         MR. ROUHANDEH: Yes.
4         MR. GREENE: Between '98 and the plea happened in
5  May or through June of 2004. But, the marketing continued
6  after '98. Pfizer didn't acquire Warner Lambert until June
7  of 2000. And, the sales have continued after that.
8         THE COURT: I don't remember stopping you in 1998,
9  but I'll take your word for it. I just don't remember that.

Page 13

SC11234.TXT

10      So, you're just trying to get it caught up to the
11 point of the criminal plea. You're not making allegations
12 it's ongoing now?
13      MR. GREENE: Well, we don't know what Pfizer's
14 marketing efforts are today.
15      But, you may recall that when they filed their --
16 we filed our opposition to Motion for Summary Judgment, we
17 had been informed by the U. S. Attorney's Office that there
18 were additional documents, some 40 boxes that had come
19 through Davis Polk's office, from a third party, that we
20 never saw, even though we subpoenaed those documents.
21      And, you said -- we wanted to supplement our
22 filing. And, you said: Well, go -- we wanted extension
23 time. You said: No. Go look at the documents.
24      And, I spent a couple of days in the U. S.
25 Attorney's Office looking through documents that were dated

17

1  2000, and I believe beyond, showing marketing.
2      THE COURT: So, you're saying that there needs to
3  be a period of time to do the 1998 to 2004?
4      MR. GREENE: Yes.
5      MR. ROUHANDEH: Your Honor, if I could respond to
6  that?
7      THE COURT: Yeah.
8      MR. ROUHANDEH: The idea that the government
9  investigated this matter for as long as they did, and they
10 left in place marketing procedures where the company is
11 going out continuing to market this product off label, is
12 pretty close to preposterous and I don't use that word
13 lightly. The idea that the U. S. Attorney's Office in

Page 14

SC11234.TXT

14  Boston is going to let that conduct continue, there are
15  procedures in place to make sure that conduct doesn't
16  continue.
17       There are no specific allegations of any conduct
18  after '98. The plea related to specific instances of
19  conduct in '95 and '96. The idea that -- it's just fishing
20  around, looking to see if they can find something in that
21  six-year period.
22       THE COURT: Let's do this. We can't even discuss
23  this until you've got -- do you have a committee in place?
24       MR. GREENE: We do, your Honor.
25       THE COURT: All right.

                                                          18


1        What you need to do is file an amended complaint.
2   And, when can you do that?
3        MR. SHAPIRO: Your Honor, may I speak for a minute?
4        THE COURT: Yeah.
5        MR. SHAPIRO: There have been a lot of discussions
6   trying to coordinate the non-class and the class cases.
7   And, I think, candidly, if we have another week or two, we
8   could probably get you a consensus and present a unanimous
9   proposal to the Court as to its structure on the plaintiff's
10  side of the case. We could do that, get that in place, and
11  then schedule the filing of --
12       THE COURT: I don't want to pull everyone back, is
13  the thing. It's too expensive and it's -- people coming in
14  from out of state.
15       I think the way it should work is, you all meet and
16  whoever agrees to be part of the amended complaint will be.
17  And, anyone who isn't -- did you want to amend? Let's
18  assume for a minute you're not part of it, Mr. Shapiro. Do

Page 15

SC11234.TXT

14  another set of 50-page briefs. Of course, you can reference
15  the cases.
16          The key as to my understanding of how this works in
17  the clients of the enterprise, if it's basic fraud, I know
18  what fraud law is. Is there a dispute as to what a state's
19  law applies in the state law claims?
20          MR. ROUHANDEH: I think there is, your Honor,
21  because I don't believe --
22          THE COURT: So, you want what, New Jersey?
23          MR. ROUHANDEH: Well, they've asserted violations
24  of all 50-state Consumer Protection laws, some of which you
25  can't bring a case under state statutes, but, nonetheless,

                                                            32

1   some of the complaints have all 50 states. So, I think
2   there clearly will be issues as to what law applies. In
3   fact, some states --
4           THE COURT: You know what? I won't decide that on
5   a Motion to Dismiss, if even one survives. So, I would take
6   a few of them. If even one survives, that's not going to --
7   I guarantee you I won't go through 50 laws.
8           MR. ROUHANDEH: I certainly don't want you to, your
9   Honor. And, I don't think that -- many of them are just in
10  the brief of the complaint, even though there's no reference
11  of any allegations ever touching that state, no plaintiff
12  from that state. If we can just put those to the side,
13  they'd almost -- they shouldn't really be asserting those
14  state law claims. It will be a lot simpler if they assert
15  --
16          THE COURT: Well, are there any states where
17  Neurontin wasn't sold in at all?
18          MR. ROUHANDEH: Sure -- No, they were sold in all

SC11234.TXT

19   the states.
20       MR. SOBOL: We would have alleged more, your Honor,
21   but we ran out of states.
22       (Laughter.)
23       THE COURT: My only point, I'm not going to do 50
24   states, and I'm not going to do it with all 50 causes of
25   action. You're not planning on that, are you? As you did

33

1   In re: Pharmaceutical, you boiled it down to two causes of
2   action you really cared about. I guarantee you I'm not
3   going to go through 50 state laws. You boil it down to two:
4   State consumer fraud and a conspiracy claim in the
5   pharmaceutical cases.
6       MR. SOBOL: Right.
7       THE COURT: You've got to do that in your amended
8   complaint.
9       RICO is RICO. But, I've written a lot on that.
10  And, I'm not saying that you can't cite new cases to me.
11  But, I don't need a treatise on it. What I find when I give
12  people an unlimited period of time, is I get a treatise on
13  the law.
14      MR. COHEN: Your Honor, Richard Cohen for Aetna.
15      Just so I understand, just as Pfizer sold Neurontin
16  in all 51 or 52 jurisdictions, Aetna bought it in all 51 or
17  52 jurisdictions. I would be only too thrilled to be able
18  to plead all of its claims under the State Consumer
19  Protection or Unfair Trade Practices law of a single state.
20  And, I imagine Pfizer would object vehemently to that.
21      Our complaint currently does list the laws of all
22  of those states.

Page 28

SC11234.TXT

23        THE COURT: It's bad case law for you -- let me put
24   it this way -- on my taking 50 different state laws and
25   certifying a national class.

                                                              34


1         MR. COHEN: We're not in class.
2         THE COURT: So, you're the non-class --
3         MR. COHEN: We're proceeding not as a class.
4         THE COURT: Well, if it's a class, it certainly is
5    great.
6         So, what are you asserting, unfair what? Business
7    practices?
8         MR. COHEN: Wherever the transactions occur. As I
9    said, we would -- we will plead in the alternative that --
10        THE COURT: Well, come up with a state law that you
11   think is appropriate.
12        MR. COHEN: Excellent. Thank you, your Honor. We
13   will.
14        THE COURT: Where are you from? Where is Aetna?
15        MR. COHEN: It's all over the country.
16        THE COURT: There must be a principal place of
17   business.
18        MR. COHEN: Our principal place of business is in
19   Hartford, incorporated in Pennsylvania.
20        THE COURT: I don't know what -- what do you
21   usually pick, Connecticut law or New Jersey law? How
22   different could it be?
23        MR. COHEN: New Jersey law.
24        THE COURT: Pick their home state.
25        MR. COHEN: Thank you, your Honor.

                                                              35

SC11234.TXT

| | |
|---|---|
| 1 | THE COURT: But, in any event, I won't resolve that |
| 2 | issue now. |
| 3 | Do you all want New Jersey law? |
| 4 | MR. ROUHANDEH: Well, I think we have to see what |
| 5 | the complaint says. |
| 6 | THE COURT: Yeah. It must be not so good. |
| 7 | (Laughter.) |
| 8 | THE COURT: I look forward to you all. I still owe |
| 9 | the basic case something. Right? Don't we have an argument |
| 10 | on attorneys' fees? |
| 11 | MR. GREENE: Next Wednesday, your Honor. |
| 12 | THE COURT: All right. Okay. |
| 13 | So, a week from Wednesday. Right? Not tomorrow? |
| 14 | MR. CHAFFIN: No. The 1st. |
| 15 | THE COURT: I look forward to seeing you all. |
| 16 | MR. ROUHANDEH: Thank you, your Honor. |
| 17 | (Discussion off the record between the Court and |
| 18 | the Clerk.) |
| 19 | THE COURT: Yes. Excuse me. Before I do this, Mr. |
| 20 | Alba made an excellent suggestion, and I forgot to mention |
| 21 | that. |
| 22 | Absolutely everything needs to be done via the |
| 23 | CM/ECF. There's no way for -- I have poor Christine here. |
| 24 | She's the one who's sort of carrying the boxes around and |
| 25 | worrying about the filings. She'll do the quality assurance |

36

| | |
|---|---|
| 1 | to make sure they're properly docketed and stuff. But, you |
| 2 | need to make sure it's all e-filed. |
| 3 | And, the second thing is, it'll be too much to |
| 4 | e-file it in all these 43 cases. Do you want to just take |