EXHIBIT E

**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FILED BY _____ D.C.

2004 OCT -6  PM 3: 57

**CASE NO. 04-22228-CIV-SEITZ/BANDSTRA**

CLARENCE HADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

ANA MEDERO AND SHIRLEY LEVIN on )
behalf of themselves and all persons similarly )
situated, )
                                                  )
                    Plaintiffs, )
                                                  )
          vs. )
                                                  )
PFIZER INC., WARNER LAMBERT )
COMPANY and PARKE-DAVIS, a division of )
Warner-Lambert-Company, )
                                                  )
                    Defendants. )

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION TO REMAND TO STATE COURT**

___ LAW OFFICES ___
SHOOK, HARDY & BACON
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131-4332 ▪ TELEPHONE (305) 358-5171
1518122v1

CASE NO. 04  228-CIV-SEITZ/BANDSTRA

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .................................................................................. ii

ARGUMENT ........................................................................................................ 1

STATEMENT OF THE CASE AND FACTUAL BACKGROUND ........................... 1

I.     DIVERSITY JURISDICTION IS PROPER ...................................................... 3

     A.    The Parties Are Diverse ...................................................................... 3

     B.    Plaintiffs' Claims Exceed the Amount in Controversy Requirement
         of 28 U.S.C. § 1332 ............................................................................ 4

         1.    The Affirmative Claims of Putative Class Members Meet
             the Jurisdictional Amount in Controversy .................................... 5

         2.    The Alleged Damages on the Face of the Complaint Are in
             Excess of $75,000 .......................................................................... 6

     C.    The Court Can Look Beyond the Pleadings to Satisfy the Amount
         in Controversy Requirement .............................................................. 7

     D.    Unnamed Class Members' Damages Can Satisfy the Jurisdictional
         Requirement ....................................................................................... 8

II.    REMOVAL UNDER THE SUBSTANTIAL FEDERAL QUESTION
     DOCTRINE IS PROPER ............................................................................... 9

     A.    The First Amended Complaint on its Face Raises a Substantial
         Question of Federal Law .................................................................. 10

     B.    Federal Question Jurisdiction May Be Based on the Existence of a
         Substantial Question of Federal Law ................................................ 13

     C.    The Underlying Principles of Franchise Tax Board Continue to
         Apply to Federal Question Jurisdiction ............................................ 16

III.   PLAINTIFFS' REQUEST FOR COSTS AND FEES SHOULD BE
     DENIED .................................................................................................... 20

CONCLUSION .................................................................................................... 20

LAW OFFICES
SHOOK, HARDY & BACON
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171
1518122v1

CASE NO.: 04-CV-22228-GOLD

## TABLE OF AUTHORITIES

### CASES

*Allapattah Services, Inc. v. Exxon Corporation*, 333 F.3d 1248 (11th Cir. 2003) ..........................3

*Burns v. Windsor Co.*, 31 F.3d 1092 (11th Cir. 1994)...................................................................7

*Chapman Funeral Home, Inc. v. National Linen Service*, 178 F. Supp. 2d 1247
(M.D. Ala. 2002) ....................................................................................................................8

*City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997).................10, 13, 14

*City of Huntsville v. City of Madison*, 24 F.3d 169 (11th Cir. 1994) ......................................9, 19

*Clarke v. City of Mobile*, 1999 US DIST. LEXIS 20419, n. 1 (S.D. Ala. 1999)..........................12

*D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93 (2d Cir. 2001)..............................15, 16

*De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995)..............................................................7

*Demint v. Nations Bank of Fla.*, 208 F.R.D. 639 (M.D. Fla. 2002) .............................................6

*Drawhorn v. Qwest Communications Int'l, Inc.*, 121 F. Supp. 2d 554 (E.D. Tex.
2000) ....................................................................................................................................19

*Eckenrode v. Pfizer Inc. et al.*, Case No. 3:04-cv-00240-MCR-MD.............................................5

*Forest v. Penn Treaty Am. Corp.*, 270 F. Supp. 2d 1357 (M.D. Fla. 2003) ............................3, 8

*Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust*, 463
U.S. 1, 8-9 (1983) ...........................................................................9, 13, 14, 15, 16, 18

*Frayler v. New York Stock Exchange, Inc.*, 118 F. Supp. 2d 448 (S.D.N.Y. 2000) .............15, 16

*Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109 (1936)...............................................9, 14, 18

*Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001) .......................................................19

*Hutchens v. Progressive Paloverde Insurance Co.*, 211 F. Supp. 2d 788 (S.D. W.
Va. 2002) ...............................................................................................................................7

*Hyman v. Pfizer, Inc. et al.*, Civil No. 3:04-cv-215/RV/M.......................................................5, 6

*In re "Agent Orange" Prod. Liab. Litig.*, 1985 US Dist. LEXIS 23652, *6, 56
(ED NY 1985)..........................................................................................................................6

*In re Otter Tail Power Co.*, 116 F.3d 1207 (8th Cir. 1997)..........................................................13

*Kennedy v. Health Options, Inc.*, 329 F. Supp. 2d 1314  (S.D. Fla. 2004)..................................20

*Kirkland v. Midland Mortgage Company*, 243 F.3d 1277 (11th Cir. 2001)..................................8

*Landmark Tower Ass'n v. First National Bank of Chicago*, 439 F. Supp. 195 (S.D.
Fla. 1977) ............................................................................................................................4, 7

*Leonard v. Enterprise Rent A Car*, 279 F.3d 967 (11th Cir. 2002) .............................................8

*Lerch v. Pfizer, Inc., et al.*, Court File No. 04:302/JMR/FLN .................................................5, 6

*Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998)...................................................................19

*Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat) 304 (1816).........................................................15

*Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986) ...........9, 14, 16, 17, 18, 19

*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) ...........................................................14

*Milan Exp. Co. v. Western Sur. Co.*, 886 F.2d 783 (6th Cir. 1989)......................................16, 19

*Mitchell v. Geico*, 115 F. Supp. 2d 1322 (M.D. Al. 2000);...........................................................7

*Morrison v Allstate Indemnity Company*, 228 F.3d 1255 (11th Cir. 2000) .................................8

*Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799 (4th Cir. 1996)..............................................15, 18

*Peters v. Union Pacific R.R. Co.*, 80 F.3d 257 (8th Cir. 1996) ..................................................14

*Poore v. American-Amicable Life Insurance Co.*, 125 F. Supp. 2d 1378 (S.D. Ga.
2000) ......................................................................................................................................7

LAW OFFICES
SHOOK, HARDY & BACON
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171
1518122v1

*Regents of Univ. of Minnesota v. Glaxo Wellcome, Inc.*, 58 F. Supp. 2d 1036 (D. Minn. 1999) ...................................................................................................................19

*Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868 (6th Cir. 2000) ......................................7

*Rubel v. Pfizer Inc.*, 276 F. Supp. 2d 904 (N.D. Ill. 2003), *appeal dismissed*, 361 F.3d 1016 (7th Cir. 2004) .............................................................................................17

*Savalle v. Nestle Waters North America, Inc.*, 289 F. Supp. 2d 31 (D. Conn. 2003).....11

*Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921)..........................................14

*Snyder v. Harris*, 394 U.S. 332, 336 (1969) .....................................................................3

*Supreme Tribe of Ben-Hur v. Cauble* .................................................................................3

*Torres v. Southern Peru Copper Corp.*, 113 F.3d 540 (5th Cir. 1997) .............................19

*U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002) ....................................19

*Villareal v. Brown Express*, 529 F. 2d 1219 (5th Cir. 1976).............................................4

*West 14th St. Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188 (2d Cir. 1987)......................................................................................................................19

## STATUTES

21 U.S.C. § 301....................................................................................................................2

21 U.S.C. § 321..................................................................................................................18

21 U.S.C. § 393..................................................................................................................18

28 U.S.C. § 1332........................................................................................................1, 3, 4

28 U.S.C. § 1367...........................................................................................................8, 10

## REGULATIONS

21 C.F.R. § 1.3...................................................................................................................18

21 C.F.R. § 214.550...........................................................................................................18

21 C.F.R. § 314.81.............................................................................................................18

21 C.F.R. §§ 202, 203........................................................................................................18

21 C.F.R. 314.70................................................................................................................18

LAW OFFICES
SHOOK, HARDY & BACON
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171
1518122v1

CASE NO. 04-_228-CIV-SEITZ/BANDSTRA

## ARGUMENT

This Court should deny Plaintiffs' Motion to Remand because there exist two independent grounds establishing subject matter jurisdiction: (1) diversity jurisdiction and (2) federal question jurisdiction. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1) because the action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000. The jurisdictional amount is satisfied as a result of (1) the affirmative claims of unnamed class members, and (2) the damages alleged on the face of the Complaint.

In addition to diversity jurisdiction, this Court has federal question jurisdiction because the core allegations of the Complaint arise under federal law. Plaintiffs allege that Defendants' marketing and promotional practices violate the Federal Food, Drug and Cosmetic Act ("FDCA"), regulations of the Food and Drug Administration "(FDA") and other federal statutes, which raise substantial questions of federal law.

Because this Court has subject matter jurisdiction over this case, it should deny Plaintiffs' Motion to Remand.

## STATEMENT OF THE CASE AND FACTUAL BACKGROUND

On or about August 5, 2004, Plaintiffs filed a class action Complaint in the Circuit Court of Dade County, Florida. (Attached as Exhibit A) On September 7, 2004, Defendants removed this action to this Court. This case is one of approximately forty-one other similar actions currently pending in twenty-two different federal districts, all premised on similar factual allegations.[1] Plaintiffs' claims in this action, as in each of the other actions, center upon

---

[1]    Thirty-one of those cases were originally filed in federal court and eleven cases, including this case, were removed to federal court. Contemporaneous with the filing of this Opposition to Plaintiffs' Remand Motion, Defendants filed a motion to stay

- 1 -

LAW OFFICES
SHOOK, HARDY & BACON
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171
1518122v1

marketing and promotional practices involving a prescription drug known as Neurontin. Specifically, these cases assert that Parke-Davis obtained approval from the FDA for Neurontin only as an adjunctive therapy for epilepsy for persons who did not adequately respond to other anti-seizure medications, but Defendants nevertheless marketed and promoted the drug for treatment of bipolar mental disorder, pain control, attention deficit disorder, a monotherapy treatment for epilepsy, treatment of seizures and for other uses, in violation of the FDCA, 21 U.S.C. § 301 *et seq.*, and FDA regulations. *See* Compl. ¶¶ 20, 27.

Plaintiffs further allege that, in implementing their plan to promote the off-label uses of Neurontin, Defendants engaged in unlawful and illegal practices, including violations of the Medicaid kickback regulations and Medicare and Medicaid Fraud and Abuse Laws, including the Anti-kickback Statute, by: (1) making illegal payments to physicians who prescribed Neurontin, (2) directly soliciting physicians to prescribe the drug for off-label uses, (3) making false and misleading statements to physicians and other health care providers concerning the efficacy and safety of Neurontin, (4) using "medical liaisons" who represented themselves as scientific experts, and (5) holding "consultant meetings," teleconferences, sham independent medical education events and charging high prices for Neurontin in violation of federal pricing regulations. Compl. ¶¶ 34(c), 35, 36, 61, 62, 71, 78, 79, 87. Plaintiffs claim that Defendants' deceptive practices were in violation of the FDCA regulations and therefore violate the Florida

---

consideration of Plaintiffs' Motion to Remand pending transfer to multidistrict proceedings. Although this action was properly removed by Defendants to federal court, it is Defendants' position that a decision on Plaintiffs' Motion to Remand should not be made by this Court. Instead, consideration of uniformity and economy dictate that all remand motions in related Neurontin actions should be decided in a single forum to be designated by the Judicial Panel on Multidistrict Litigation. If the Court grants Defendants' motion to stay, it is unnecessary for the Court to consider this Memorandum in Opposition to Plaintiffs' Motion to Remand. *See* Defendants' Motion to Stay Consideration of Motion to Remand Pending Transfer to Multidistrict Proceedings.

- 2 -

CASE NO. 04-22228-CIV-SEITZ/BANDSTRA

Deceptive and Unfair Trade Practices Act ("FDUTPA"), and amount to negligence, unjust enrichment, and breach of implied warranties. *Id.* ¶¶ 105-137.

## I.    DIVERSITY JURISDICTION IS PROPER

The Court has diversity jurisdiction as this case satisfies both requirements under 28 U.S.C. § 1332(a): (1) the parties are citizens of different states and (2) the amount in controversy exceeds $75,000.[2]

### A.    The Parties Are Diverse

Plaintiffs do not challenge the diverse citizenship of the parties in that the named Plaintiffs, Ana Medero and Shirley Levin, purport to be citizens of Florida,[3] and none of the named Defendants are Florida citizens.[4] Accordingly, diversity of citizenship is present pursuant to 28 U.S.C. § 1332(a)).

---

[2]    Plaintiffs do not dispute that this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all members of the putative class when at least one class member meets the amount in controversy requirement. *See* Motion to Remand at p. 16, n. 8 (Attached as Exhibit B); *see also Allapattah Services, Inc. v. Exxon Corporation*, 333 F.3d 1248, 1254 (11th Cir. 2003) (concluding that § 1367 "clearly and unambiguously provides district courts with the authority in diversity class actions to exercise supplemental jurisdiction over the claims of class members who do not meet the minimum amount in controversy"); *Forest v. Penn Treaty Am. Corp.*, 270 F. Supp. 2d 1357, 1364 (M.D. Fla. 2003) (holding supplemental jurisdiction exists in a class action based on diversity when at least one putative class member meets the amount in controversy requirement).

[3]    Compl. ¶ 13. While the Court should look to the unnamed class members to satisfy the amount in controversy requirement, *see infra* at 8-9, the Court must consider the citizenship of only the named class representatives in evaluating whether there is diversity of citizenship. *See Snyder v. Harris*, 394 U.S. 332, 336 (1969); *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 365-66 (1921).

[4]    Pfizer Inc is a corporation organized under the laws of Delaware with its principal place of business in New York. Pfizer acquired Warner-Lambert Company, a Delaware corporation, in 2000.

- 3 -

LAW OFFICES
SHOOK, HARDY & BACON
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171
1518122v1

CASE NO. 04-...228-CIV-SEITZ/BANDSTRA

**B.    Plaintiffs' Claims Exceed the Amount in Controversy Requirement of 28 U.S.C. § 1332**

Plaintiffs argue that the jurisdictional amount in controversy is not satisfied because under the "well pleaded complaint rule," Plaintiffs did not plead damages in excess of $75,000. Motion to Remand at 14-15.[5] (Attached, without exhibits, as Exhibit B) Plaintiffs further argue that "separate and distinct claims raised by different plaintiffs may not be aggregated to satisfy the jurisdictional amount in controversy." Motion to Remand at 15. Yet regardless of what Plaintiffs actually plead, the amount in controversy can be satisfied from looking outside the complaint. *Landmark Tower Ass'n v. First National Bank of Chicago*, 439 F. Supp. 195, 196 (S.D. Fla. 1977) ("'This Court should be guided by the principle that 'in practice, the federal courts usually do not limit their inquiry to the face of the plaintiffs' complaint, but rather consider the facts disclosed on the record as a whole in determining the propriety of removal.'") (quoting *Villareal v. Brown Express*, 529 F. 2d 1219 (5th Cir. 1976)). Additionally, this Court need not rely on aggregation to determine that the jurisdictional amount is reached here. Rather, this Court has diversity jurisdiction based on the alleged damages on the face of Plaintiffs' Complaint and because putative class members in this action have individual claims in excess of $75,000 as evidenced in other pending Neurontin marketing and fraud actions.

---

[5]    Plaintiffs admit that personal injury claims could "conceivably lead to damages in excess of $75,000." Motion to Remand at pp. 15-16, n 7. Of importance, one of the named Plaintiffs, Ana Medero, reports to have suffered hallucinations and other physical side effects from taking the prescription Neurontin. *See* PharmaLive Article, Attached as Exhibit C). The named class representatives' waiver of certain claims and the express limitation of the amount of possible recovery on behalf of unnamed class members raise concerns as to the named plaintiffs' adequacy to serve as the class representatives. Under Federal Rule of Civil Procedure 23 and Florida's Class Action Rule, 1.220, a named representative's claims cannot be in conflict with the claims of the putative class members. Putting such a limitation on damages, while not limiting the class definition to exclude class members with personal injury claims, poses a conflict. Plaintiffs even admit that personal injury claims could "conceivably lead to damages in excess of $75,000." Motion to Remand, pp. 15-16, n 7.

LAW OFFICES
SHOOK, HARDY & BACON
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171
1518122v1

### 1.  The Affirmative Claims of Putative Class Members Meet the Jurisdictional Amount in Controversy

This action is brought on behalf of the *exact same* putative class members, against the *exact same* defendants and based upon substantially similar factual allegations as two other Florida cases currently pending in federal court. *See Hyman v. Pfizer, Inc. et al.,* Civil No. 3:04-cv-215/RV/M; *see also Eckenrode v. Pfizer Inc. et al.,* Case No. 3:04-cv-00240-MCR-MD.[6] (Attached collectively as Composite Exhibit D). Moreover, another case, *Lerch v. Pfizer, Inc., et al.,* Court File No. 04:302/JMR/FLN, brought on behalf of a nation wide class, is pending in the United States District Court for the District of Minnesota. (Attached as Exhibit E). The *Lerch* action was filed in federal court and affirmatively seeks damages in excess of $75,000 and is against the *exact same* defendants, based upon substantially similar factual allegations and brought on behalf of a proposed class that overlaps with the putative class members in this action.[7]

Both John Lerch and Sylvia Hyman originally filed their Complaints in federal court asserting damages in excess of $75,000. *See Hyman* Compl. ¶ 9;[8] *Lerch* Compl. ¶ 26. The fact

---

[6]    The *Hyman* case is currently pending in the United States District Court for the Northern District of Florida, Pensacola Division and is assigned to Judge Roger Vinson. The *Eckenrode* case is currently pending in the United States District Court for the Northern District of Florida, Pensacola Division and is assigned to Judge M. Casey Rodgers. The only difference between the *Hyman* and *Eckenrode* class definitions and the class definition in this case is that the *Medero* class period encompasses a time period from 1995 to the present, while the *Eckenrode* and *Hyman* actions class period is from 1994 to the present. *See* Compl. ¶ 95(a).

[7]    The *Lerch* class definition includes all persons throughout the United States (including Florida) who purchased Neurontin by prescription for a diagnosis of any disorder other than epilepsy. The class period appears to run from 1994 to 2000.

[8]    Only *after* Defendants removed the *Eckenrode* case to federal court, did Plaintiff's counsel in the *Hyman* Action attempt to withdraw their concession that the amount in controversy exceeds $75,000 by amending the *Hyman* Complaint and dropping their allegation as to the amount of Ms. Hyman's damages. Significantly, Ms. Hyman did <u>not</u> amend her complaint to affirmatively allege that her damages were $75,000 or less — she

that Sylvia Hyman is a putative class member of this case and is claiming damages in excess of $75,000 provides adequate grounds for jurisdiction here. Diversity jurisdiction is further evidenced by the fact that the entire putative class in the *Hyman* action and the Florida putative class in the *Lerch* action asserts damages in excess of $75,000 based on the representations of the named class representative.

Furthermore, Plaintiffs would have the Court believe that the named plaintiffs in separate Neurontin marketing and fraud cases have opted out of this case and should not be considered for diversity purposes. Motion to Remand, p. 16, n.7. This statement is simply not true. *See Demint v. Nations Bank of Fla.*, 208 F.R.D. 639, 641 (M.D. Fla. 2002)("pendency of a separate, individual action neither excuses a litigant from compliance with a applicable "opt-out" procedure in a related class action nor obligates any party or court to treat the litigant as unique or different in any respect from the other potential call members"). Moreover, the class representatives in other related actions, namely, Sylvia Hyman, Clifford Eckenrode and John Lerch, filed their complaints prior to Plaintiffs filing this action. It is well established that when multiple actions are filed, controlling authority derives from the first certified class. *See In re "Agent Orange" Prod. Liab. Litig.*, 1985 US Dist. LEXIS 23652, *6, 56 (ED NY 1985)(once a class was certified other duplicative class actions were dismissed).

### 2.    The Alleged Damages on the Face of the Complaint Are in Excess of $75,000

Aside from looking outside the Complaint to satisfy the amount in controversy requirement, the Court need look no further than the Complaint itself to establish that the amount in controversy exceeds $75,000. The Complaint asserts damages in excess of $15,000 under

---

just removed the paragraph of the complaint which referred to the amount of her damages. Everything else remained the same.

LAW OFFICES
SHOOK, HARDY & BACON
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171
1518122v1

each of Plaintiffs' five claims for a total amount in excess of $75,000. Plaintiffs also seek treble damages under the Florida Deceptive and Unfair Trade Practices Act "(FDUTPA") (essentially making that one, individual claim worth $45,000) along with punitive damages, attorney fees and all other relief the court deems just and proper. Compl. ¶¶ 105-132. The simple math of Plaintiffs' Complaint demonstrates, that even if the damages are prorated amongst the entire putative class, the amount in controversy exceeds the jurisdictional amount.

### C.    The Court Can Look Beyond the Pleadings to Satisfy the Amount in Controversy Requirement

An objective view of the Complaint clearly demonstrates that the actual amount in controversy exceeds $75,000 resulting in diversity jurisdiction. *See Burns v. Windsor Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) ("The standard is an objective one; plaintiff's or plaintiff's counsels subjective intent in drafting the prayer is not the true issue"); *Landmark Tower Ass'n,* 439 F. Supp. at 196 ("[T]his court should be guided by the principle that 'in practice, the federal courts usually do not limit their inquiry to the face of the plaintiffs' complaint, but rather consider the facts disclosed on the record as a whole in determining the propriety of removal.'"); *Poore v. American-Amicable Life Insurance Co.,* 125 F. Supp. 2d 1378, 1379, 1385-87 (S.D. Ga. 2000); *Mitchell v. Geico,* 115 F. Supp. 2d 1322, 1325 (M.D. Al. 2000); *see also De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1410 (5th Cir. 1995) (pleading below the jurisdictional minimum may be ignored if a defendant can show by a "preponderance of the evidence" that the amount in controversy actually exceeds $75,000); *Rogers v. Wal-Mart Stores, Inc.,* 230 F.3d 868, 873 (6th Cir. 2000) (plaintiff limited her damages to less than $75,000 but because state law would have allowed plaintiff to recover damages in excess of what she prayed for, it was "more likely than not" her damages would exceed $75,000"); *Hutchens v. Progressive Paloverde Insurance Co.,* 211 F. Supp. 2d 788 (S.D. W. Va. 2002) (same).

- 7 -

**D.     Unnamed Class Members' Damages Can Satisfy the Jurisdictional Requirement**

Plaintiffs, in their remand motion, do not dispute that unnamed class members may satisfy the jurisdictional amount. In fact, consistent with Eleventh Circuit case law, Plaintiffs appear to agree that as long as a single plaintiff meets the jurisdictional requirement, the Court would have jurisdiction over the entire class. *See* Motion to Remand at 16 ("The Court would be faced with a different question *if any* single Plaintiff met the $75,000 in damages requirement") (emphasis added).

Under the law of the Eleventh Circuit, so long as the claims of at least one class member exceed the jurisdictional minimum, this court can exercise supplemental jurisdiction over the claims of the remaining class members under 28 U.S.C. § 1367. *See Morrison v Allstate Indemnity Company*, 228 F.3d 1255, 1272-73 (11th Cir. 2000) (court provided plaintiffs with an opportunity to "show whether there are other [unnamed] class members who may make a 'good faith' allegation that they have incurred $75,000 in damages"); *Kirkland v. Midland Mortgage Company*, 243 F.3d 1277, 1280 (11th Cir. 2001) (unnamed class members' damages could satisfy the jurisdictional amount); *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 974 (11th Cir. 2002) ("*at least one member of the plaintiff class* [must] stand to recover damages and other relief valued in excess of $75,000") (emphasis added); *see also Forest*, 270 F. Supp. 2d at 1366 ("Defendants may rely upon the damages claimed by an unnamed plaintiff in attempting to establish the jurisdictional threshold"); *Chapman Funeral Home, Inc. v. National Linen Service*, 178 F. Supp. 2d 1247, 1250 n.2 (M.D. Ala. 2002) (since "the Eleventh Circuit was willing to consider the amount in controversy of the putative class members . . . this court has done so in this case").

- 8 -

Since the amount in controversy is established by both the affirmative claims of unnamed putative class members and from the face of the Complaint itself, diversity jurisdiction is proper here.

## II.  REMOVAL UNDER THE SUBSTANTIAL FEDERAL QUESTION DOCTRINE IS PROPER

Removal of this action is also proper under the substantial federal question doctrine because the Plaintiffs' state law claims arise under federal law.  Regardless of whether Plaintiffs seek recovery under a federal statute, they cannot avoid federal jurisdiction by artful pleading.  The Plaintiffs' right to relief requires an extended and substantial analysis of federal law.  Motion to Remand, p.1, n.1; p. 6, 7, 8, 9.  Consequently, the Motion to Remand should be denied.

In general, a case "arises under" federal law if federal law creates the cause of action, *or* if plaintiffs' "right to relief under state law requires resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8-9 (1983); *see also City of Huntsville v. City of Madison*, 24 F.3d 169 (11th Cir. 1994).  The determination of federal jurisdiction is not a matter of mathematical precision.  As recognized by the United States Supreme Court, when a court is called on to determine federal jurisdiction, "[w]hat is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations . . . ." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 117 (1936); *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

Despite Plaintiffs' conclusory arguments to the contrary, the Complaint makes it clear that the adjudication of this matter will necessarily require the resolution of substantial questions of federal law.  This is because the unfair practice on which this action is premised is the alleged false and misleading promotion of Neurontin in violation of federal law.  Any relief for Plaintiffs

- 9 -

under their state law claims is necessarily dependent upon proving that Defendants engaged in false and misleading "off-label" promotion of a prescription drug in violation of the FDCA, FDA and other federal regulations. This is not a case where the federal law is tangentially related to state law claims. Here, a substantial federal question lies at the heart of this action, and the regulation of prescription drug marketing is a matter of ongoing, intense federal interest.[9]

### A.    The First Amended Complaint on its Face Raises a Substantial Question of Federal Law

Plaintiffs' Complaint on its face demonstrates that Plaintiffs' right to relief under their state law claims turn on whether Defendants violated federal statutes and regulations governing pharmaceutical promotion. Because Plaintiffs themselves implicate questions of federal importance, Plaintiffs may not now attempt to avoid this Court's jurisdiction.

Here, questions of substantial federal significance are apparent from the face of Plaintiffs' Complaint:

- "Under applicable statutes and regulations, the manufacturer of a prescription drug regulated by the FDA may not promote or market the use of the drug for purposes or in doses other than those approved by the FDA. . . . Promotion by a drug manufacturer of 'off-label' uses of prescription drugs is strictly illegal and contrary to the explicit policies and regulations of the United States Government." Compl. ¶ 25.

- "There are strict federal regulations about what form the promotion can take. . . . But drug makers can get around the rules and this case arises from one company's widespread scheme designed to unlawfully promote the sale of the anti-epilepsy drug Neurontin for non-FDA approved uses." Compl. ¶ 2.

- "The decision was made [by Parke-Davis] to completely avoid the normal regulatory process of the FDA pertaining to the marketing of a new use of a drug and to proceed in an illegal fashion." Compl. ¶ 3.

---

[9]    To the extent that the substantial federal question doctrine does not extend to a particular claim, which Defendants do not concede, this Court nonetheless has supplemental jurisdiction over such claim or claims pursuant to 28 U.S.C. § 1367. *See also City of Chicago v. International College of Surgeons*, 522 U.S. 156, 165-67 (1997). In fact, Plaintiffs' counsel makes a similar argument in their remand motion. *See* Motion to Remand, p. 16, n.8.

- Defendants "engaged in or caused the deliberate avoidance of the FDA's classification of Neurontin as to its therapeutic equivalency", "used or caused the use of active concealment to avoid the FDA's enforcement mechanisms", and "engaged in or caused the systemic avoidance of filing requirements with the FDA." Compl. ¶ 34g-i.

Plaintiffs' Complaint also alleges that Defendants violated Medicaid kickback regulations and Medicare and Medicaid Fraud and Abuse Laws, including the Medicaid Anti-Kickback Statute, by making illegal payments to physicians. Compl. ¶¶ 35, 61, 87. Moreover, Plaintiffs allege that Defendants engaged in an unlawful marketing scheme that included illegal direct solicitation of physicians for off-label uses, false statements to doctors concerning the efficacy and safety of Neurontin for off-label uses, and payments to physicians to appear as authors of medical journal articles on unapproved uses when the articles were actually written by individuals working under the direction of Defendants. Compl. ¶¶ 34(c), 34(d), 54. In fact, every allegation relating to an unlawful marketing scheme turns on what is an "off-label" use or promotion. In the sixty-one pages of Plaintiffs' Complaint, Plaintiffs refer to the FDA or the FDCA on at least forty-three occasions and to the term "off-label" on over eighty occasions. Indeed, the only condition for class membership is a purchase of Neurontin after being prescribed for a medical condition not approved by the FDA. _Id._ ¶ 95(a).[10] Additionally, Plaintiffs' theory of liability is premised on substantial questions of federal law as shown by the

---

[10]    Plaintiffs cite _Savalle v. Nestle Waters North America, Inc._, 289 F. Supp. 2d 31 (D. Conn. 2003) for the proposition that, since the FDCA does not provide a private right of action, this case should be remanded. Motion to Remand at 10-11. In _Savalle_, however, the complaint never relied upon or even mentioned the interpretation of a federal statute or regulation. This is plainly in contrast to the Complaint here, where the gravamen of Plaintiffs' claims is that Defendants engaged in "off-label" promotion in violation of federal law and regulations. To adjudicate Plaintiffs' state law claim, the Court must first determine the parameters of the FDCA and FDA regulatory prohibitions on "off-label" marketing and promotion. Moreover, Plaintiffs allege violations of federal anti-kickback statutes, further requiring the resolution of questions of federal law.

LAW OFFICES
SHOOK, HARDY & BACON
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171
1518122v1

substantially federal nature of the "common questions" that they assert to justify adjudication on a class-wide basis. *See* Compl. at ¶ 100(a)-(i), (l).

Furthermore, Plaintiffs cannot avoid federal question jurisdiction over their claims by alleging:

> Plaintiffs' complaint does not seek recovery under any federal statute or theory. It is grounded in five state law counts. Since federal jurisdiction under 28 U.S.C. § 1331 does not exist, this Court cannot exercise supplemental jurisdiction over those (exclusively) state court claims.

*Id.* ¶ 18; Motion to Remand at 5. This allegation is an asserted conclusion of law, rather than an assertion of fact, and the Court is not required to accept it at face value. *See Clarke v. City of Mobile*, 1999 US DIST. LEXIS 20419, n. 1 (S.D. Ala. 1999) ("Although Plaintiff attempts to include legal conclusions and personal interpretations with her statement of facts, the Court will only adopt what it considers to be *factual* allegations").

Plaintiffs emphasize that since they are the "master of their complaint," their choice of claims controls, and they may avoid federal jurisdiction by exclusive reliance on state law.[11] Motion to Remand at 8-9. Plaintiffs' strategy, however, fails because the "artful pleading" doctrine permits removal when the plaintiff has "artfully" pled his complaint to avoid stating the federal law question upon which the complaint is necessarily based. As the United States Supreme Court has noted:

---

[11] Plaintiffs' cite to the Florida Securities and Investor Protection Act and to the Florida Motor Vehicle Warranty and Enforcement Act as examples as to how claims can be brought under state law when the same conduct is governed by federal law. Motion to Remand at p. 10. However, under the two examples that Plaintiffs provide, each of them creates a cause of action without relying on federal law—i.e. even if there were no federal law governing automobiles, Plaintiffs would still have a cause of action under state law. In this action, Plaintiffs state law causes of action are brought against Defendants for violation of federal law.

LAW OFFICES
SHOOK, HARDY & BACON
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131-4332 • TELEPHONE (305) 358-5171
1518122v1

> Although we have often repeated that "the party who brings a suit
> is master to decide what law he will rely upon," **it is an**
> **independent corollary of the well-pleaded complaint rule that a**
> **plaintiff may not defeat removal by omitting to plead necessary**
> **federal questions in a complaint . . . .**

*Franchise Tax Bd.,* 463 U.S. at 22 (citations omitted) (emphasis added); *see also City of*

*Chicago, supra,* 522 U.S. at 164("Accordingly, ICS errs in relying on the established principle

that a plaintiff, as master of the complaint, can 'choose to have the case heard in state court.'");

*In re Otter Tail Power Co.,* 116 F.3d 1207, 1213 (8th Cir. 1997) ("A plaintiff's characterization

of a claim as based solely on state law is not dispositive of whether federal question jurisdiction

exists").

Because the labeling and branding of prescription drugs lie within the exclusive province

of federal regulation, an examination of Plaintiffs' allegations here will unavoidably entail an

analysis of the scope and breadth of FDA regulations and the FDCA regarding the promotion of

prescription drugs by pharmaceutical companies. For example, Plaintiffs' allegations will

require a determination as to what activities qualify as "off-label" promotion and thus constitute

violations of federal law. The wide range of behavior that falls under the comprehensive federal

regulatory scheme includes the publication of studies on "off-label" uses in medical journals, the

sponsorship of Continuing Medical Education classes and the organization of consultants'

meetings and advisory boards. In this instance where the presence of substantial questions of

federal law is evident from the face of the Complaint, Plaintiffs' reliance on the well-pleaded

complaint rule is clearly misplaced.

**B.    Federal Question Jurisdiction May Be Based on the Existence of a**
**Substantial Question of Federal Law**

Plaintiffs make much ado about federal preemption not applying in this case. *See* Motion

to Remand, p. 10-11. While federal jurisdiction may also be established when federal law is said

to create the cause of action, *see Gully v. First Nat'l Bank in Meridian*, 299, U.S. 109, 112 (1936), or "when the preemptive force of a federal statute is so complete that it transforms complaints styled as ordinary common-law claims into ones stating a federal claim," Defendants do not purport to remove this case *sub judice* on either of those grounds. *See also Peters v. Union Pacific R.R. Co.*, 80 F.3d 257, 260 (8th Cir. 1996) (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).

"Even though state law creates [Plaintiffs'] causes of action, [their] case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13. A long line of additional Supreme Court cases has clearly established the doctrine of substantial federal question jurisdiction. *See Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921); *Gully*, 299 U.S. 109; *Merrell Dow*, 478 U.S. at 808-09; *City of Chicago v. International Coll. of Surgeons*, 522 U.S. at 164.[12]

In its most recent pronouncement on the matter, *City of Chicago v. International College of Surgeons*, the Supreme Court affirmed the fundamental principle that federal jurisdiction may exist when the federal claims at issue "were raised by way of a cause of action created by state law." 522 U.S. at 164.[13] Another case where the presence of a federal issue in a state created

---

[12]    Federal jurisdiction may also be established when federal law is said to create the cause of action, *see Gully*, 299 U.S. at 112, or when the preemptive force of a federal statute is so complete that it transforms complaints styled as ordinary common-law claims into ones stating a federal claim." *Peters v. Union Pacific R.R. Co.*, 80 F.3d 257, 260 (8th Cir. 1996) (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Defendants do not purport to have removed the case *sub judice* on either of those grounds.

[13]    In that case, the plaintiff sued the City of Chicago in state court under a state administrative review law after it was denied permits to develop properties that had been accorded landmark status. Among plaintiff's claims were allegations that the city's actions were unconstitutional. Although the action was brought under state law, the Court, in upholding jurisdiction in a federal forum, found that the necessity of evaluating

- 14 -

cause of action resulted in federal subject matter jurisdiction was recently decided by the Second

Circuit in *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93 (2d Cir. 2001) (although

plaintiff only brought state law claims, the court held that resolution of plaintiff's claims required

the court to construe federal law, thus invoking substantial federal question jurisdiction).[14]  In a

companion case, *Frayler v. New York Stock Exchange, Inc.*, 118 F. Supp. 2d 448, 450 (S.D.N.Y.

2000), the court found that "the federal issue here is decisive because upon the federal statute's

construction depends the vindication of rights and definition of relationship's at the heart of the

lawsuit." (internal quotations omitted).

Courts also consider the nature of the federal interest in making jurisdictional decisions.

*See Frayler*, 118 F. Supp. 2d at 451 (jurisdictional determination accompanied by finding that

the regulation of the nation's securities markets were "a matter of intense federal concern").  As

explained by the Fourth Circuit in *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir.

1996) , (citing *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat) 304, 347-48 (1816)), the "need for

---

the constitutional issues satisfied the court's jurisdictional requirements.[13] Acknowledging that it "is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law," the Court pointed to *Franchise Tax Board* in explaining its duty to examine the complaint to determine whether a party's "right to relief under state law requires resolution of a substantial question of federal law." *Id.* at 164. Unmistakably, therefore, a complaint alleging a state law claim may "arise under" federal law.

[14] In *D'Alessio*, the plaintiff, an independent floor broker, sued the New York Stock Exchange ("NYSE") in state court on a variety of state tort theories, alleging that the NYSE had intentionally provided him with incorrect interpretations of federal laws prohibiting unlawful trading in violation of NYSE's own obligations under federal law to ensure that its members comply with the securities laws. The case was removed to federal court and eventually dismissed. On review, the Second Circuit determined that removal had been proper, because the "resolution of D'Alessio's claims requires a court to construe federal securities laws and evaluate the scope of the NYSE's duties, as defined under [federal law], in enforcing and monitoring members' compliance with those laws." 258 F.3d at 101-02. "The source of the duty imposed on the NYSE . . . is found in federal law," the court held. *Id.* at 103. "Thus, it is the propriety of the NYSE's actions, as prescribed under federal law, that is at the heart of *D'Alessio's* allegations." *Id.*

- 15 -

uniformity" with respect to a federal statutory regime "becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts" in circumstances "[w]here the resolution of a federal issue in a state law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime."[15]

Like the allegations in *D'Alessio*, Plaintiffs' allegations in this case "are rooted in violations of federal law." *D'Alessio*, 258 F.3d at 101. The core underlying premise of Plaintiffs' claim -- that Defendants violated FDA regulations by marketing Neurontin for off-label uses -- is indistinguishable, for jurisdictional purposes, from *D'Alessio's* core claim that the NYSE violated the federal securities laws. Here, as in *D'Alessio*, "it is the propriety of the [defendants'] actions, as prescribed under federal law, that is at the heart of [plaintiffs'] allegations." *Id.* at 103. Additionally, as in *Frayler*, the federal interest at issue here, namely the enforcement of the FDCA and the regulation of the prescription drug industry by the FDA, is "a matter of intense federal concern." 118 F. Supp. 2d at 451.

### C.    The Underlying Principles of *Franchise Tax Board* Continue to Apply to Federal Question Jurisdiction

Plaintiffs imply that the principles of *Franchise Tax Board* are no longer applicable given the Supreme Court's holding in *Merrell Dow*. Plaintiffs interpret the decision in *Merrell Dow* to hold that unless there is a private right of action under the FDCA, there is no substantial federal question. Motion to Remand, p. 13. This argument is misplaced.

First, to read *Merrell Dow* with the narrow formalism that Plaintiffs suggest completely ignores the circumstances of that case. In that case, the plaintiff relied on the violation of a federal guideline to establish a rebuttable presumption and thereby fulfill an element in a

---

[15]    *Cf. Milan Exp. Co. v. Western Sur. Co.*, 886 F.2d 783, 787 (6th Cir. 1989) ("[P]laintiffs' claims should not be subjected to the peculiarities of interpretation in fifty different state forums.").

LAW OFFICES
SHOOK, HARDY & BACON
-- MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171
1518122v1

common law negligence claim. *See Merrell Dow*, 478 U.S. at 806. Combined with the fact that the FDCA provided no private right of action, the peripheral nature of the federal issue was deemed too insubstantial to merit federal jurisdiction. *See id.* at 814. But unlike *Merrell Dow*, the federal question here is not simply threshold and serves a far more significant role than providing a mere element of a negligence claim.

In this case, Plaintiffs have asserted claims whereby a violation of federal law is, allegedly, an unfair consumer practice actionable under state law.[16] Plaintiffs have affirmatively chosen to premise their state law causes of action on alleged violations of federal regulations and statutes and refer to them throughout their entire Complaint.[17] Plaintiffs have not, and indeed cannot, plead that Defendants made false statements or that there was no valid scientific evidence as to the safety and efficacy of Neurontin *without* reference to federal law. That is because federal law governs the content of representations or claims made by pharmaceutical manufacturers, including scientific statements and information provided on prescription drug labels.[18]

---

[16]    Plaintiffs cite to *Rubel v. Pfizer Inc.*, 276 F. Supp. 2d 904 (N.D. Ill. 2003), *appeal dismissed*, 361 F.3d 1016 (7th Cir. 2004), in support of their motion. But in *Merrell Dow*, the federal issue was the mere use of a violation of a federal guideline to establish a rebuttable presumption in a negligence claim. This fact, combined with the lack of a private right of action, made the federal issue too peripheral and too collateral to establish federal jurisdiction. The *Rubel* court relied on the FDCA's lack of a private right of action in finding that the federal issue present in that case was too insubstantial to merit removal. But, as Defendants clearly show, *see infra* at 19-23, the lack of a private right of action is not dispositive in determining whether federal question jurisdiction exists. And where, as here, the federal issue is so central, the lack of a private right of action does not necessitate remand.

[17]    It is important to note that the fact Plaintiffs have premised their state law causes of action on alleged violations of federal regulations and statutes does not relieve them of the obligation to prove other elements of their causes of action, such as falsity, causation, reliance, injury, etc.

[18]    Moreover, Plaintiffs rely on federal law in asserting that Defendants violated Medicaid kickback regulations and Medicare and Medicaid Fraud and Abuse Laws, including the

- 17 -

CASE NO. 04-22228-CIV-SEITZ/BANDSTRA

Thus, despite Plaintiffs' attempt to disavow federal law, Plaintiffs' Complaint cannot be divorced from its extensive reliance on federal law. Defendants' conduct would be unlawful only if viewed in the context of federal law, and any determination of Plaintiffs' claims similarly requires an interpretation of the thicket of FDA regulations that govern the marketing of prescription drugs.[19] Of particular significance, Plaintiffs elected to define the putative class and identify putative class members by one key factor: whether persons purchased Neurontin after being prescribed that medication for an off-label use, i.e. "medical conditions other than those approved by the Food and Drug Administration." Compl. ¶ 95(a). Plaintiffs' own proposed class definition raises a substantial federal question.

Second, contrary to Plaintiffs' contentions, the absence of a private right of action does not bar federal jurisdiction under the substantial federal question doctrine. As the *Merrell Dow* Court pointed out, federal jurisdiction is not subject to an "automatic test," but rather demands "practicality and necessity" and a "common-sense accommodation of judgment to kaleidoscopic situations" when construing the jurisdictional statute. *See* 478 U.S. at 813-14 (citing *Franchise Tax Bd.*, 463 U.S. 1, and *Gully*, 299 U.S. at 117-18);[20] *see also Drawhorn v. Qwest*

---

Medicaid Anti-Kickback Statute, by making illegal payments to physicians. Compl. ¶¶ 35, 61, 87.

[19]    For example, the FDCA charges the FDA with the duty to ensure that "drugs are safe and effective." 21 U.S.C. § 393(b)(2)(B). As part of the FDA's responsibility for determining the safety and efficacy of drugs, it is responsible for the regulation and approval of prescription drug labeling. Drug labeling includes "all written, printed, or graphic matter" marketing the drug, 21 C.F.R. § 1.3(a), and the FDA has set forth detailed requirements for the contents of advertising for prescription drugs. *See* 21 C.F.R. §§ 202, 203; 21 U.S.C. § 321(m)(1)-(2). All drug advertisements must be submitted to the FDA and be consistent with the drug label or any changes to that label. *See* 21 C.F.R. § 214.550; 21 C.F.R. 314.70(c); 21 C.F.R. § 314.81(b)(3).

[20]    A number of courts have followed this guidance and found jurisdiction over state law claims that implicate a federal interest but where a private right of action is lacking. *See, e.g., Ormet Corp.*, 98 F.3d at 806-07 (concluding that the substantial federal question doctrine applied where the plaintiff contended it was entitled to particular share of emission allowances issued by the Environmental Protection Agency because it was an

- 18 -

*Communications Int'l, Inc.*, 121 F. Supp. 2d 554, 560 n.6 (E.D. Tex. 2000)(distinguished the

holding in *Merrell Dow* and found substantial federal question jurisdiction when the state law

claims involved substantial federal issues). Even the Eleventh Circuit has held that the absence

of a private cause of action is not dispositive of whether a complaint raises a substantial question

of federal law because a "substantial disputed question of federal law is a necessary element of a

state cause of action." *City of Huntsville*, 24 F.3d at 172, 174.

In short, Plaintiffs' assertion that the lack of a private right of action precludes federal

jurisdiction is simply wrong. This is not a case where the federal question is simply threshold,

preliminary or collateral to the resolution of state claims. The question whether Defendants'

activities violated federal regulations and statutes governing off-label promotion of prescription

drugs is not only crucial to Plaintiffs' claims under state law, but is the very essence of those

claims. The centrality and substantiality of this federal question clearly demonstrates this

Court's jurisdiction over Plaintiffs' claims.

---

"owner" as the resolution of the dispute required an interpretation and application of the
federal act to the facts of the action); *West 14th St. Commercial Corp. v. 5 West 14th
Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987) (holding that even without a private
cause of action under federal law "we conclude that the federal element in plaintiffs' state
cause of action would still be sufficiently substantial to confer arising under
jurisdiction."); *Milan Exp. Co. v. Western Surety Co.*, 886 F.2d 783, 787 (6th Cir. 1989)
(distinguishing *Merrell Dow*); *Regents of Univ. of Minnesota v. Glaxo Wellcome, Inc.*, 58
F. Supp. 2d 1036, 1038 (D. Minn. 1999) ("[F]ederal courts have exclusive jurisdiction
over state law causes of action in which a substantial question of federal . . . law is
pleaded."); *Marcus v. AT&T Corp.*, 138 F.3d 46, 55-56 (2d Cir. 1998) (approving denial
of motion to remand where plaintiffs' breach of warranty claim under state law
necessarily raised a substantial federal question, because defendant's contractual
obligations were set by a tariff filed with the Federal Communications Commission); *see
also U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002); *Howery v.
Allstate Ins. Co.*, 243 F.3d 912, 917 (5th Cir. 2001); *Torres v. Southern Peru Copper
Corp.*, 113 F.3d 540, 543 (5th Cir. 1997).

- 19 -

CASE NO. 0..2228-CIV-SEITZ/BANDSTRA

### III.    PLAINTIFFS' REQUEST FOR COSTS AND FEES SHOULD BE DENIED

Even if the Court were to ultimately conclude that this case should be remanded, Plaintiff's requests for costs and fees should be denied. *See Kennedy v. Health Options, Inc.*, 329 F. Supp. 2d 1314, *12 (S.D. Fla. 2004) ("there is no indication that a trial court should ordinarily grant an award of attorneys' fees whenever an effort to removal fails"). The *Kennedy* court denied attorney fees and costs in that action since "Defendants decision to attempt removal was an objectively reasonable one where there is some basis in the law for Defendant's arguments." Given that there is a clear basis in the law (diversity and substantial federal question) on which Defendants base their removal, any award of fees or costs to Plaintiffs should be denied.

### CONCLUSION

For all the reasons provided above, this Court should deny Plaintiffs' Motion to Remand. Dated this 6th day of October, 2004.

Respectfully submitted,

By _____
Kenneth J. Reilly, Fla. Bar. No.0157082
Stacey Koch, Fla. Bar No. 0091472
SHOOK, HARDY & BACON L.L.P.
Suite 2400, Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131-4332
Telephone (305) 358-5171
Facsimile  (305) 358-7470
E-mail Address(es):  kreilly@shb.com
                                skoch@shb.com
ATTORNEYS FOR DEFENDANTS

Of Counsel:
James P. Rouhandeh
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
Telephone (212) 450-4000
Facsimile (212) 450-3800
E-mail Address:
jim.rouhandeh@dpw.com

- 20 -

CASE NO. 0~ ~2228-CIV-SEITZ/BANDSTRA

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2004, a copy of the foregoing was mailed by United

States Postal Service and, for those registered to receive electronic service through the ECF

system, was sent by electronic service to the following counsel:

Philip Freidin, Esq.
Omar Malone, Esq.
Freidin & Brown, P.A.
One Biscayne Tower, Suite 3100
2 South Biscayne Boulevard
Miami, Florida  33131

Rosenblum & Rosenblum, P.A.
700 South Andrews Avenue, Suite 200
Fort Lauderdale, Florida  33316

By _____
Kenneth J. Reilly

LAW OFFICES
SHOOK, HARDY & BACON
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131-4332 • TELEPHONE (305) 358-5171
1518122v1