UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
     :
In re: NEURONTIN MARKETING AND    :
SALES PRACTICES LITIGATION    :
     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
     :
THIS DOCUMENT RELATES TO:    :   MDL Docket No. 1629
     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Master File No. 04-10981
HARDEN MANUFACTURING    :
CORPORATION; LOUISIANA HEALTH    :
SERVICE INDEMNITY COMPANY, dba    :   Judge Patti B. Saris
BLUECROSS/BLUESHIELD OF    :
LOUISIANA; INTERNATIONAL UNION    :   Magistrate Judge Leo T. Sorokin
OF OPERATING ENGINEERS, LOCAL NO.    :
68 WELFARE FUND; ASEA/AFSCME    :
LOCAL 52 HEALTH BENEFITS TRUST;    :
GERALD SMITH; and LORRAINE KOPA,    :
on behalf of themselves and all others similarly    :
situated, v. PFIZER INC. and WARNER-    :
LAMBERT COMPANY.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO EXTEND CLASS DISCOVERY SCHEDULE**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 4

    I.   Plaintiffs' Minimal and Delayed Disclosure Has Prevented
        Defendants from Obtaining Necessary Class Discovery ................................................ 4

    II.  Plaintiffs Have Delayed Defendants' Efforts To Schedule
        the Depositions of the Individual Plaintiffs and Their Physicians ................................. 9

    III.  Plaintiffs Have Not Complied with Their Obligations To Meet and Confer ............... 11

    IV.  Plaintiffs Have Wrongfully Refused To Produce
         Relevant Documents and Information .......................................................................... 13

    V.  Plaintiffs Have Not Provided Meaningful Interrogatory Answers .............................. 15

ARGUMENT ................................................................................................................. 17

CONCLUSION .............................................................................................................. 20

Defendants Pfizer Inc. and Warner-Lambert Company (together, "defendants") submit this memorandum in support of their motion for an extension of the class discovery schedule.

## PRELIMINARY STATEMENT

After pressing for a fast-paced discovery schedule and the immediate exchange of discovery materials, plaintiffs have effectively prevented defendants from obtaining information that bears directly on the class plaintiffs' motion for class certification. Through their tardy disclosures, unjustified objections, and insufficient responses, plaintiffs have frustrated defendants' diligent efforts since May to obtain essential discovery from the class and coordinated plaintiffs and from certain non-parties. Accordingly, defendants respectfully request that this Court extend the class discovery period by four months. Plaintiffs oppose this request despite having originally themselves proposed a 30-day extension of class discovery.

First and foremost among the reasons class discovery is not complete is plaintiffs' failure to produce documents promptly. This delay in production includes plaintiffs' failure to produce in a timely fashion even those documents that they did not object to disclosing. Indeed, the pace of plaintiffs' document production in this litigation, detailed in this memorandum, has been glacial. Certainly the size of plaintiffs' productions do not justify the delays that have occurred given that most plaintiffs have produced no more than 2000 pages of documents. In addition, because a number of class plaintiffs have only recently identified non-parties that have essential information, defendants have not yet been able to obtain documents from those non-parties, who have estimated that their productions will take weeks or months to complete because of the volume and type of documents that they will be producing. These documents will be crucial to defendants' opposition to class certification.

Second, plaintiffs have impeded defendants' efforts to schedule the depositions of the individual class plaintiffs and their physicians.  For example, plaintiffs' counsel has not provided dates for the deposition of one of the two individual plaintiffs.  Plaintiffs have also refused to agree to a schedule for the depositions of the individual plaintiffs' physicians until documents that are the subject of defendants' motion for a protective order have been collected, searched, and produced.  Defendants are entitled, however, to take these depositions before opposing plaintiffs' motion for class certification.

Third, plaintiffs have consumed large portions of the class discovery period with their consistent failure to meet and confer promptly regarding discovery disputes.  For instance, after serving their responses to defendants' discovery requests on June 3, 2005, plaintiffs did not make themselves available to meet and confer until nearly one month later – on June 29.  Follow-up meetings were equally difficult to arrange given plaintiffs' failure to reconvene in a timely fashion, or in some cases even to participate when they had agreed to do so.  This excessive delay was further exacerbated by plaintiffs' failure to respond promptly to issues raised during these sessions, even though the issues involved (such as the purported basis of plaintiffs' burdensomeness objections) were issues that plaintiffs should have been prepared to discuss as early as June 3, when they made their objections.

Fourth, plaintiffs have refused to produce highly relevant documents without a legitimate justification, making it impossible for defendants to litigate class certification adequately.  For instance, the third-party payor plaintiffs have refused to produce documents regarding their policies and practices for paying drug claims for off-label uses where those documents do not mention Neurontin.  These documents are essential to a number of issues on class certification, such as the circumstances under which the plaintiffs were reimbursing for off-label drug use

generally and what, if any, actions the third-party payors took to prevent the payment of claims for off-label use.  Plaintiffs have also refused to produce, among other things, (i) the drug reimbursement history of the third-party payors' members; (ii) certain Neurontin claims for which one third-party payor is seeking recovery; and (iii) the individual plaintiffs' medical records.

Finally, plaintiffs have provided inadequate interrogatory answers.  These inadequacies range from one class plaintiff's complete failure to provide any response (for over three and a half months) to numerous deficiencies in all of the remaining plaintiffs' interrogatory answers.  One example of these deficiencies was plaintiffs' failure to identify their third-party administrators and pharmacy benefit managers in a timely fashion.

As a result of plaintiffs' delay as well as the sheer volume of non-party discovery outstanding, defendants require a four-month extension of the class discovery schedule.  This extension will allow defendants to obtain necessary discovery from class plaintiffs' pharmacy benefit managers and third-party administrators, to take the depositions of the class plaintiffs and their physicians and representatives, and to obtain information responsive to defendants' interrogatories.  Magistrate Judge Sorokin indicated at a conference last month that he was open to a change in the schedule and asked the parties to attempt to reach an agreement or to propose competing schedules.  Plaintiffs ignore this point and refuse to consent to the requested extension despite delays of their own making.

Ironically, plaintiffs themselves initially recognized the need for more time when they proposed a 30-day extension of the class discovery period.  After defendants suggested that the extension be 120 days, plaintiffs retracted that proposal and suggested instead that certain depositions take place after the close of the class discovery period on October 10.  Plaintiffs'

3

most recent proposal is unworkable because it does not account for defendants' need to obtain

non-party documents or to take depositions only after receiving relevant documents from

plaintiffs and non-parties.  Nor does it account for the potential need to seek additional

documents as a result of these depositions.

For all of the foregoing reasons, as set forth more fully below, defendants respectfully

request that the Court extend the class discovery schedule and briefing by 120 days.

**STATEMENT OF FACTS**

Plaintiffs advocated for an aggressive schedule and the immediate exchange of discovery

materials.[1]  In support of this position, plaintiffs' counsel represented to the Court that plaintiffs

"w[ould] produce documents *promptly*."  Declaration of Patrick J. Murray, dated Sept. 19, 2005

("Murray Decl."), Exh. 3 at 14 (emphasis added).  As set forth below, plaintiffs have failed to do

so and have failed to cooperate with defendants' efforts to obtain discovery within the four-

month class discovery period.

**I.     Plaintiffs' Minimal and Delayed Disclosure Has Prevented
         Defendants from Obtaining Necessary Class Discovery**

Plaintiffs have failed to produce documents at the speed necessary to complete class

discovery in the time scheduled for this disclosure.  As a result, defendants' efforts to obtain

documents and to take the necessary depositions in order to oppose class certification have been

materially hindered, if not halted.

Although defendants served disclosure demands on May 2, 2005, none of the plaintiffs

produced a single document from its files until July 1, 2005 and half of the plaintiffs produced no

---

[1] Declaration of Patrick J. Murray, dated Sept. 19, 2005 ("Murray Decl."), Exh. 1 at 1-2; id. Exh. 2 at 1-2; id. Exh. 3 at 7-11, 13-14, 22-23.

4

documents on that date, despite defendants' multiple requests for timely production.  Id. Exhs. 4,

5.  This delay occurred despite plaintiffs' representation to the Court that they "[w]ould produce

documents promptly."  Id. Exh. 3 at 14.  Moreover, the production by the five (out of ten)

plaintiffs that produced documents on July 1 collectively amounted to less than one box of

documents (2195 pages).  Id. Exh. 4.  Just two of the six class plaintiffs (Lorraine Kopa and

International Union of Operating Engineers, Local No. 68 Welfare Fund ("Local 68")) produced

documents on July 1, and their productions amounted to only 64 and 220 pages, respectively.  Id.

Neither of these plaintiffs has produced any additional documents since that date.  Id. ¶ 8.

Equally egregious, a number of plaintiffs produced no documents until more than half of the

class discovery period had elapsed.

    As further detailed below, plaintiffs' productions have been slow and meager.

- On July 7, class plaintiff Gerald Smith made his first and only production of documents, which totaled 141 pages.  Id. Exh. 6; id. ¶ 9.

- On July 15, class plaintiff Harden Manufacturing Corporation ("Harden") made its first production, which totaled 1268 pages.  Id. Exh. 7.  Harden produced 19 additional pages on September 6.  Id. Exh. 8.

- On July 15, The Guardian Life Insurance Company of America ("Guardian Life") supplemented its initial production of 158 pages with an additional 1691 pages.  Id. Exh. 7.  On August 15, Guardian Life produced certain Neurontin claims data.  Id. Exh. 9.

- On July 26, Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (together, "Kaiser") produced 2692 pages, correcting errors in their original production of 1753 pages.  Id. Exh. 10.  Kaiser supplemented this production on August 9 with an additional 1759 pages.  Id. Exh. 11.

- On July 29, class plaintiff ASEA/AFSCME Local 52 Health Benefits Trust ("ASEA") made its first production, which totaled 475 pages, and on August 9,

ASEA supplemented this production with 440 additional pages. Id. Exhs. 12, 13; id. ¶ 13.[2]

- On August 9, Aetna, Inc. ("Aetna") made its first and only production of 514 pages. Id. Exh. 14.

- On August 18, class plaintiff Louisiana Health Service Indemnity Company ("Louisiana Health") made its first production of selected Neurontin claims data and 1312 pages of other documents, which it supplemented on August 25 with 22,303 pages of documents. Id. Exhs. 15, 16; id. ¶ 15.[3]

Plaintiffs have not provided any justification as to why this small amount of material was provided so late in the class discovery period. In the context of a litigation involving claims that defendants engaged in a far-reaching scheme that supposedly resulted in millions of prescriptions being written and billions of dollars paid, it is shocking that the ten plaintiffs in these actions have produced a sum total of eleven boxes of documents. Id. ¶ 17.[4]

The document production process was further postponed by plaintiffs' failure to explain their burdensomeness objections in a timely manner. At meet-and-confer sessions on July 6, 15, and 29, 2005, the third-party payor plaintiffs in attendance initially asserted burdensomeness objections but then stated that they needed to investigate the nature of the burden with their clients before they could explain it in detail. Id. ¶ 18. When these plaintiffs did not respond regarding these objections, defendants obtained a commitment from them to explain their burdensomeness objections by August 12. Id. ¶ 18; id. Exh. 18. Most of the third-party payor

---

[2] ASEA's production of 915 pages purportedly includes both its own documents and those of its third-party administrator, Administration Services, Inc. Id. ¶ 13.

[3] Louisiana Health's tardy disclosure has only been compounded by Hurricane Katrina. Defendants understandably have received no additional documents, information, or communications from Louisiana Health since that disaster occurred. Louisiana Health, however, first produced documents in late August, after repeated requests for an earlier production. E.g., id. Exh. 17.

[4] Seven of the eleven boxes consist of multiple variations of Louisiana Health's benefit plans, provider contracts, organizational charts, and enrollment forms. Id. ¶ 17.

plaintiffs did not, however, respond until August 26.  Id. ¶ 19.  It is unclear why it took most of these plaintiffs a month or more to explain their burdensomeness objections.  This is particularly true for Harden, Local 68, and Guardian Life, which informed defendants on August 26 that they are not limiting their productions based on burden.  Id. Exh. 19.  Moreover, other plaintiffs, namely Louisiana Health and Aetna, still have yet to detail the scope and nature of their burden objections.  Id. ¶ 20.

Plaintiffs' failure to produce documents promptly and their prolonged efforts to explain their burdensomeness objections have consumed most of the four-month period for class discovery.  Consequently, defendants' ability to oppose class certification has been materially prejudiced by these delays.

Defendants have not yet been able to take the depositions of the class third-party payor plaintiffs.  For instance, defendants recently noticed the depositions of ASEA and Harden under Rule 30(b)(6) for the last week of September 2005.  Id. Exhs. 20, 21.  Even though defendants have been unable to determine whether class plaintiffs Local 68 and Louisiana Health intend to supplement their document production and interrogatories, defendants have noticed their depositions as well.  Id. Exhs. 22, 23.  Even if these depositions were to occur before the close of class discovery, which would require defendants to proceed without documents from non-parties (discussed below), defendants would still need time after these depositions to seek additional discovery relevant to class certification, including the depositions of non-parties and potentially additional depositions of the plaintiffs.

In addition, plaintiffs' delayed disclosure of relevant information has hindered defendants' ability to obtain discovery from plaintiffs' pharmacy benefit managers and third-

party administrators, which possess essential documents and information.[5]  In fact, counsel for

some of the plaintiffs have informed defendants that their productions are so small because their

pharmacy benefit managers and third-party administrators will have most of the relevant

documents.  Id. ¶ 24.  Despite this fact, a number of plaintiffs did not identify their pharmacy

benefit managers and third-party administrators until late July 2005 and one class plaintiff did

not identify two of its pharmacy benefit managers until late August 2005.  Id. ¶ 25.[6]  Because

these entities are non-parties, it is more difficult to obtain discovery from them quickly.

Obtaining such discovery, however, is essential because the class third-party payors contracted

with these entities to perform the prescription drug reimbursement that is at issue in this

litigation.

　　　　To date, defendants have received very few documents from the third-party

administrators and pharmacy benefit managers.  For instance, defendants have received no

documents from Local 68's third-party administrator and pharmacy benefit managers, Harden's

third-party administrator, and most of Louisiana Health's pharmacy benefit managers regarding

these plaintiffs.  Id. ¶ 26.[7]  ASEA's pharmacy benefits manager has only produced a very limited

amount of material.  Id. ¶ 26.  Furthermore, none of these parties' pharmacy benefit managers

have produced the claims data that defendants have requested, including the Neurontin claims

---

[5] There is little doubt that the type of information possessed by plaintiffs' pharmacy benefit managers and third-party administrators is extremely relevant to class certification.  The class third-party payors contracted with these entities to administer and pay their members' prescription drug claims, including the Neurontin claims for which they are seeking recovery.  Id. ¶ 23.  As a result, these entities possess, for example, claims data and formulary-related information.  Id.

[6] One class plaintiff, Local 68, has not yet even identified its pharmacy benefit managers.  Id. ¶ 25.  Defendants have only identified these entities through Local 68's third-party administrator.  Id.

[7] Defendants have not even been able to ascertain whether Harden's third-party administrator used a pharmacy benefits manager that would have relevant information.  Id. ¶ 26.

data for which plaintiffs are seeking recovery.  Id. ¶ 27.  Consequently, significant additional

documentary discovery is still required from the entities that administered the class plaintiffs'

Neurontin claims.

Finally, even after these documents are disclosed to defendants, in order to oppose class

certification adequately defendants will need to depose representatives of these third-party

administrators and pharmacy benefit managers.  Defendants have not noticed these depositions

because they have received almost no documents from these non-party entities.

## II.     Plaintiffs Have Delayed Defendants' Efforts To Schedule
##          the Depositions of the Individual Plaintiffs and Their Physicians

Plaintiffs have frustrated defendants' efforts to schedule the depositions of the individual

plaintiffs and their physicians sufficiently in advance of the current cut-off of class discovery.

Defendants contacted counsel for the individual plaintiffs in early August 2005 and requested

dates upon which each of the individual plaintiffs would be available for deposition.  Id. ¶ 28.

Defendants also asked whether plaintiffs' counsel could accept service for their client's

physicians.  Id. ¶ 28.  When defendants did not receive a response after two weeks, they noticed

the depositions of the individual plaintiffs and issued subpoenas for the depositions of their

physicians for the second week of September – approximately one month before the close of the

class discovery period.  Id. Exhs. 24-28.[8]

With respect to the depositions of the individual plaintiffs, their counsel informed

defendants that they were unable to go forward on the date noticed for those depositions –

September 14, 2005.  Id. Exhs. 29, 30.  On August 25, counsel for Ms. Kopa stated that he would

---

[8] Defendants chose these dates substantially in advance of the class discovery deadline so that they would have time to pursue issues raised during the depositions afterwards.

provide defendants with dates upon which Ms. Kopa and her counsel would be available, but defendants have so far received none.  Id. Exh. 29.  Counsel for Ms. Kopa subsequently stated that he understood that the class discovery cut-off might be extended and stated that the individual plaintiffs would provide deposition dates once the extension issue was resolved.  Id. Exh. 31.  Defendants still have not yet received proposed deposition dates for Ms. Kopa, even though class discovery is scheduled to close on October 10, 2005 and plaintiffs have made clear that they oppose an extension of that date.  Id. ¶ 31.[9]

Plaintiffs have also refused to proceed with the depositions of the individual plaintiffs' physicians.  After defendants served deposition subpoenas, plaintiffs' counsel informed defendants that they could not attend on the dates noticed, but they did not propose any alternate dates.  Id. Exhs. 29, 30.  Moreover, plaintiffs' counsel stated that these depositions should not occur until defendants produced certain documents.  Id. Exh. 30.  Counsel for Mr. Smith refused to go forward with the deposition of Mr. Smith's physician on an alternate date proposed by the physician even if the document issues were resolved.  Id. ¶ 36.

On September 7, defendants responded that they would produce certain database entries requested by plaintiffs, but that they could not satisfy plaintiffs' demand that defendants identify and produce documents regarding all events sponsored by defendants that these physicians attended.  Id. Exh. 32.  Defendants explained that plaintiffs' request would potentially require defendants to collect and search the files of all sales and marketing employees and such a search was already the subject of defendants' motion for a protective order.  Id.  Defendants indicated,

---

[9] In contrast, Mr. Smith's counsel has finally provided defendants with dates for Mr. Smith's deposition, albeit grudgingly and only after repeated letters and phone calls.  Mr. Smith's original proposed date was October 10, the last day of the current class discovery period.

however, that they would consider conducting a targeted search for documents if the depositions of these physicians were to reveal that these physicians attended events sponsored by defendants. Id.

Plaintiffs replied on September 9 by stating that they would provide their availability for the depositions of the prescribing physicians once the extension issue was resolved.  Id. Exh. 31. Plaintiffs' counsel stated on September 14 that they want *all* documents pertaining to any events attended by the prescribing physicians and their partners before the depositions of the prescribing physicians occur.  Id. Exh. 33.  By persisting in this course, plaintiffs are continuing to ask defendants "to look for a needle in a haystack," without even knowing first if a needle exists.  Id. Exh. 34.  Defendants have explained that they cannot comply with this unreasonable demand and have proposed a reasonable alternative as described above.  Id.

**III.    Plaintiffs Have Not Complied with Their Obligations To Meet and Confer**

During the class discovery process, plaintiffs have also repeatedly frustrated defendants' efforts to obtain discovery by failing to make themselves available in a timely fashion for meet-and-confer sessions and by failing to respond promptly to defendants' various discovery-related inquiries.  In what can only be described as repeated foot-dragging, plaintiffs have slowed the discovery process to a degree that has prevented defendants from obtaining information necessary to class certification.  This has been carried out in four ways.

The first category of delay involves avoiding the scheduling of meet-and-confer sessions. Despite defendants' repeated requests to meet and confer, plaintiffs did not make themselves available for an initial meet-and-confer session until June 29, 2005 – four weeks after serving objections to defendants' requests.  Id. ¶ 43.  This delay not only violated the Court's local rules, but began a pattern of continual stalling in scheduling meetings.  See D. Mass. R. 37.1 ("Failure

11

of opposing counsel to respond to a request for a discovery conference within seven (7) days of the request shall be grounds for sanctions, which may include automatic allowance of the motion."). Despite defendants' offers to meet at any time, plaintiffs continually delayed scheduling meetings. Id. Exh. 35; id. ¶ 44.

In addition to slowing down the process by professing extremely limited availability for the meet-and-confer sessions, plaintiffs further failed to cooperate in this process by not appearing at sessions when they were scheduled to do so. For instance, during the meet-and-confer session scheduled on July 6, 2005, class plaintiff Louisiana Health did not join until approximately two hours into the session, despite the fact that defendants had specifically informed plaintiffs that defendants would be using Louisiana Health's responses as the starting point for conducting the session. Id. ¶ 45. At this same session, another class plaintiff, Local 68, failed to appear entirely. Id. ¶ 46. These instances of partial attendance or non-attendance are by no means exhaustive, but are surprising because plaintiffs themselves insisted upon delaying the meet-and-confer sessions until all similarly-situated plaintiffs were available. For all of those plaintiffs who missed a session or part of a session, defendants had to repeat the material covered with them separately. Id. ¶ 47.

Defendants' repeated requests for one-on-one meet-and-confer sessions with each of the plaintiffs fared little better. During June and July, plaintiffs refused such requests to meet and confer individually with defendants. Id. ¶ 48. Only after the parties had covered all of the defendants' requests collectively did plaintiffs agree to meet and confer in one-on-one sessions. Id. ¶ 49. Even these one-on-one sessions were difficult to schedule, with some plaintiffs at times taking many days to return defendants' telephone calls or returning calls only after repeated messages were left for them. Id. ¶ 49.

Finally, plaintiffs added to the delay by taking excessive time to respond to questions raised in or as a result of the meet-and-confer sessions.  For example, the individual plaintiffs took an unnecessarily lengthy period to respond to defendants' inquiries.  At the July 22, 2005 meet-and-confer session, defendants asked counsel for the individual plaintiffs whether their clients would be supplementing their discovery responses.  Id. ¶ 50.  A few days later, defendants asked for a reply by July 29.  Id. Exh. 36.  The individual plaintiffs declined this request and did not respond until over a month later – on August 26.  Id. Exh. 37; id. Exhs. 38, 39.  This type of delay was not an isolated occurrence.

IV.   **Plaintiffs Have Wrongfully Refused To Produce Relevant Documents and Information**

Plaintiffs have improperly refused to produce extremely relevant documents and information.  With respect to the third-party payor plaintiffs, defendants have requested documents regarding their policies and practices for the payment of claims for drug prescriptions for off-label uses (regardless of whether they are for Neurontin).  See, e.g., id. Exh. 40 Reqs. 1, 20, 24, 29, 42, 57, 60-61, 66, 74-76, 83-93.  Such documents are relevant because, among other things, they will show whether and under what circumstances plaintiffs were reimbursing for the off-label use of drugs generally and what actions plaintiffs took, if any, to prevent payment of claims, including Neurontin claims, for off-label uses.  Defendants have also requested all of the prescription drug claims for each of the third-party payors' members who submitted claims for Neurontin.  See, e.g., id. Req. 51.  Plaintiffs have refused to produce these documents, taking the position that they do not consider them relevant to the case.  Id. Exh. 41.

In addition, class plaintiff ASEA has refused to produce certain Neurontin claims for which it is seeking recovery.  Id. Exh. 19 (attaching Letter from Nancy Pacharzina, Esq. to

13

Patrick Murray, Esq., dated Aug. 22, 2005, at 2). While ASEA's pharmacy benefits manager administered most of the drug claims for which ASEA is seeking recovery, its third-party administrator, Administration Services, Inc. ("ASI"), administered approximately 136,000 of ASEA's drug claims. Id. ¶ 55. ASI does not have individual electronic records of these claims, just aggregate totals. Id. ¶ 56. ASI does possess, however, hard copies of each of these individual claims. Id. Nonetheless, ASEA has objected to producing these hard copies, asserting burdensomeness. Id.[10] Despite this, ASEA is seeking to recover on these claims. Id. ¶ 57.

The individual plaintiffs have also refused to produce documents regarding drugs other than Neurontin. Id. Exh. 41. Defendants requested documents concerning each individual plaintiffs' medical history, including all medical and prescriptions drug records from the time of the injury that caused each plaintiff to take Neurontin. See, e.g., id. Exh. 42 Reqs. 8, 11, 16-24. These documents are relevant for multiple reasons, such as to show why Neurontin was prescribed, whether it worked, and why the individual took the medication. After the July 22, 2005 meet-and-confer session, the individual plaintiffs took over one month to consider defendants' explanations as to why such information was relevant and then informed defendants on August 26 that they would not be producing the requested documents. Id. Exh. 38. The individual plaintiffs have refused to provide even a list of other prescription drugs that they were taking while on Neurontin. Id. ¶ 61.[11]

---

[10] ASEA and ASI are represented by the same counsel and stamped their document production with the same production prefix. It is defendants' understanding that ASEA has control over and thus, a right to receive this claim information.

[11] In connection with their efforts to obtain comprehensive medical records, defendants have requested that the individual plaintiffs execute authorizations allowing defendants to obtain their medical records from the non-parties which have them. Id. Exhs. 42, 43. The individual plaintiffs refused to provide such authorizations, stating that they would obtain their medical records and produce those that they deemed relevant. Id. Exh. 41. Defendants (…continued)

While these and other such deficiencies in plaintiffs' production will require defendants to move to compel, for the time being, defendants seek an extension of time in order to obtain, among other things, (i) discovery to which plaintiffs do not object to providing; (ii) documents over which plaintiffs claim they have no control; and (iii) depositions of both plaintiffs and non-parties.

**V.     Plaintiffs Have Not Provided Meaningful Interrogatory Answers**

Plaintiffs have also provided inadequate answers to defendants' interrogatories, requiring defendants to seek supplementation of these answers and resulting in further delay.  Some class plaintiffs have still not provided meaningful answers.

One of the most egregious examples of plaintiffs' failure to provide meaningful answers is the response of Local 68, which basically provided no responsive information at all.  Id. Exh. 44.  In this document, Local 68 answered thirteen of defendants' nineteen interrogatories by stating that it was "in the process of answering defendants' interrogator[ies] and w[ould] provide responses as soon as possible."  Id. Resps. 1-5, 10-15, 18-19.  In response to the other six interrogatories, Local 68 stated that the requested information would be or had already been produced in documentary form.  Id. Resps. 6-9, 16-17.  As of the filing of this motion, Local 68 has not yet produced any substantive interrogatory answers and has not produced documents containing the requested information.  Id. ¶ 67.

Perhaps more importantly, a number of plaintiffs took an unreasonable amount of time to identify relevant non-parties, such as their third-party administrators and their pharmacy benefit

---

(continued…)

need to conduct their own search for these materials to make sure that all of the necessary medical records have been obtained from non-party doctors and hospitals.

managers, who are expected to have much of the discoverable material relevant to class certification. For instance, it was not until defense counsel explicitly pressed counsel for Louisiana Health at the July 29 meet-and-confer session that the name of Louisiana Health's pharmacy benefit manager was disclosed. See, e.g., id. Exh. 45 Resp. 1; id. ¶ 68. This disclosure, however, was incomplete. On August 25, after seeing the names of other pharmacy benefit managers in documents produced by Louisiana Health, defense counsel telephoned counsel for Louisiana Health and asked if his client had any other pharmacy benefit managers about which defendants should know. Id. ¶ 69. Louisiana Health's counsel responded that his client had four or five pharmacy benefit managers during the relevant period, but that he was not able to locate their names at that time. Id. ¶ 70. The names of these pharmacy benefit managers were finally provided to defendants on August 26 – almost three full months after they should have been disclosed in Louisiana Health's initial disclosures and in response to defendants' first interrogatory. Id. Exh. 46. As explained above, due to this inexcusable delay, defendants have only just begun the process of seeking documents regarding Louisiana Health from these pharmacy benefit managers. Id. ¶ 72.

In order to obtain satisfactory interrogatory answers from plaintiffs, defendants wrote letters to plaintiffs cataloging the numerous deficiencies with their answers. Id. Exhs. 47-51. The individual plaintiffs have responded to these letters, but some of their interrogatory responses remain materially deficient. Id. Exhs. 38-39. For example, Ms. Kopa continues to object to giving the names of her immediate supervisors and her entire employment history on what appear to be grounds of relevance and burdensomeness. Id. Exh. 38. As Ms. Kopa worked in the health care industry as a nurse, such information is unquestionably relevant to class certification issues and should be provided. Meanwhile, Mr. Smith has refused to produce

information about any psychiatric or psychological examinations or treatments that he received

while taking Neurontin, even though the documents that he has produced indicate that he had

mental health issues and Neurontin's off-label uses include mental health conditions.  Id. Exh.

39.

## ARGUMENT

Defendants respectfully request that this Court extend the period for class discovery by

four months – from October 10, 2005 to February 7, 2006 and correspondingly extend the other

dates relating to class certification.  This extension is necessary because plaintiffs have

repeatedly delayed disclosure and failed to cooperate in discovery.  Absent such an extension,

defendants would be forced to litigate the motion for class certification with one hand tied

behind their backs.  As explained above, plaintiffs have (i) failed to produce documents promptly

and comprehensively; (ii) frustrated defendants' efforts to schedule depositions; (iii) failed to

meet and confer on a timely basis; (iv) provided inadequate interrogatory answers; and (v)

refused to produce relevant documents.  As a result of plaintiffs' aforementioned actions and

failures to act, defendants will not be able to complete class discovery by October 10 – the date

upon which it is presently scheduled to close.  This is something that plaintiffs themselves

acknowledge, for they recognize that certain depositions will need to occur after October 10.  Id.

Exh. 33; id. Exh. 52.

In fact, on September 7, plaintiffs themselves proposed a 30-day extension of the class

discovery period.  Id. ¶ 78.  During that call, defense counsel responded that more time was

necessary to complete the numerous tasks remaining and so, proposed a 120-day extension.  Id.

Plaintiffs' counsel agreed to reply to defendants' proposal.  Id.  When defendants did not receive

a response by September 13, defense counsel requested one by the close of business on

17

September 14.  Id. Exh. 53.  While defendants did receive a letter from plaintiffs' counsel on that date, this letter did not directly address defendants' proposal, but apparently withdrew plaintiffs' 30-day extension proposal.  Id. Exh. 33.  Accordingly, defendants sought an answer from Plaintiffs' Liaison Counsel on September 15.  Id. Exh. 54.  Plaintiffs' Liaison Counsel confirmed on September 16 that plaintiffs oppose a 120-day extension.  Id. Exh. 55.

Defendants need additional time to accomplish a number of discovery tasks that plaintiffs have interfered with and, in some cases, stymied.  For instance, the class plaintiffs are denying that they have crucial documents, thereby requiring defendants to subpoena non-parties.  As a result, defendants must still obtain a substantial volume of material from certain non-parties such as the third-party payors plaintiffs' pharmacy benefit managers and third-party administrators. The class third-party payor plaintiffs ASEA, Harden, and Local 68 have explained that they do not have many of the documents requested by defendants but that their pharmacy benefit managers and third-party administrators should.  Despite dubious claims of lack of control, defendants have subpoenaed these important documents.  Unfortunately, these non-parties have stated that it will take them a significant amount of time to produce these documents, and their productions will not be complete by October 10.  Id. ¶ 82.  Moreover, some of these non-parties have only recently been identified to defendants by plaintiffs.  Id.

Because plaintiffs' document discovery was received so recently and much remains outstanding, it will be impossible for defendants to take the depositions of plaintiffs and the relevant non-parties in the time remaining for class discovery.  Defendants have noticed for deposition in late September and early October 2005 representatives of the class third-party payor plaintiffs.  If would be difficult to complete these depositions even if plaintiffs were able to make their representatives available within this time.  In fact, it is already clear that the

deposition of Harden's corporate designee cannot happen within this period, since counsel for Harden has stated that Harden's chosen designee will not be available before October 13 and 14, 2005.  Id. Exh. 52 at 5.

Moreover, defendants need to take the depositions of representatives of the non-parties. These non-parties have, however, with minor exceptions, not yet produced documents.[12]  These depositions cannot be completed before October 10.  It is also expected that defendants will have to conduct follow-up discovery after the depositions.  In light of all of this, defendants respectfully suggest that the need for an extension is clear.

---

[12] Caremark, a pharmacy benefit manager for ASEA and Louisiana Health, has produced a handful of relatively insignificant documents.  Id. ¶ 84.  It is impossible to ascertain the volume of documents produced by ASI because ASEA/ASI used a joint production number.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request that their motion for an extension of the class discovery schedule and briefing be granted.

Dated: September 21, 2005

DAVIS POLK & WARDWELL

By:   s/James P. Rouhandeh
      James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:   s/David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

20