UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------- x
In re: NEURONTIN MARKETING AND            :
SALES PRACTICES LITIGATION                :
                                          :
---------------------------------------------- x
                                          :
THIS DOCUMENT RELATES TO:                 :    MDL Docket No. 1629
                                          :
---------------------------------------------- x    Master File No. 04-10981
HARDEN MANUFACTURING                      :
CORPORATION; LOUISIANA HEALTH             :    Judge Patti B. Saris
SERVICE INDEMNITY COMPANY, dba            :
BLUECROSS/BLUESHIELD OF                   :    Magistrate Judge Leo T. Sorokin
LOUISIANA; INTERNATIONAL UNION            :
OF OPERATING ENGINEERS, LOCAL NO.         :
68 WELFARE FUND; ASEA/AFSCME              :
LOCAL 52 HEALTH BENEFITS TRUST;           :
GERALD SMITH; and LORRAINE KOPA,          :
on behalf of themselves and all others similarly :
situated, v. PFIZER INC. and WARNER-      :
LAMBERT COMPANY.                          :
---------------------------------------------- x

**DECLARATION OF PATRICK J. MURRAY**

PATRICK J. MURRAY declares upon penalty of perjury in accordance with 28 U.S.C. § 1746 as follows:

1. I am an attorney associated with the law firm Davis Polk & Wardwell, counsel for Defendants Pfizer Inc. and Warner-Lambert Company ("defendants") in this action.

2. I submit this declaration in support of Defendants' Emergency Motion to Extend Class Discovery Schedule.

3. I have personal knowledge of the matters stated herein, except as otherwise noted. With respect to the matters as to which I have no personal knowledge, I have been advised by my colleagues that they are true.

4.      I have been involved in the process of obtaining discovery materials from plaintiffs and certain non-parties. During that process, I have participated in multiple meet-and-confer sessions with plaintiffs' counsel. I, or my colleagues, have reviewed the plaintiffs' productions and have discussed numerous issues regarding the adequacy, completeness, and scope of these productions with plaintiffs' counsel. We have repeatedly contacted plaintiffs' counsel by letter, telephone, and email, in attempts to resolve outstanding issues and to expedite the production schedule.

5.      While the Court was considering the schedule in this action, plaintiffs advocated for an aggressive schedule and the immediate exchange of discovery materials. See Plaintiffs' Proposed Case Management Order #2, dated Feb. 18, 2005, attached hereto as Exhibit 1, at 1-2; Plaintiffs' Case Management Conference Statement, dated Feb. 18, 2005, attached hereto as Exhibit 2, at 1-2; transcript of the February 24, 2005 Case Management Conference, attached hereto as Exhibit 3, at 7-11, 13-14, 22-23. In support of this position, plaintiffs' counsel represented to the Court that plaintiffs "w[ould] produce documents promptly." Exh. 3 at 14.

6.      Notwithstanding this, although defendants served disclosure demands on May 2, 2005, none of the plaintiffs produced a single document from its files until July 1, 2005 and half of the plaintiffs produced no documents on that date, despite defendants' multiple requests for timely production. See Letter from Edward Notargiacomo, Esq. to David Chaffin, Esq., dated July 1, 2005, attached hereto as Exhibit 4; see, e.g., Letter from James Rouhandeh, Esq. to Thomas Sobol, Esq., dated June 10, 2005, attached hereto as Exhibit 5.

2

7. Moreover, the production by the five (out of ten) plaintiffs that produced documents on July 1 collectively amounted to less than one box of documents (2195 pages). See Exh. 4.

8. Just two of the six class plaintiffs (Lorraine Kopa and International Union of Operating Engineers, Local No. 68 Welfare Fund ("Local 68")) produced documents on July 1, and their productions amounted to only 64 and 220 pages, respectively. See id. Neither of these plaintiffs have produced any documents since that date.

9. On July 7, 2005, class plaintiff Gerald Smith made his first and only production of documents to the defendants. See Letter from Mr. Notargiacomo to Mr. Rouhandeh, dated July 7, 2005, attached hereto as Exhibit 6. This production comprised 141 pages of materials.

10. On July 15, 2005, class plaintiff Harden Manufacturing Corporation ("Harden") made its first production, which totaled 1268 pages. See Letter from Mr. Notargiacomo to Mr. Rouhandeh, dated July 15, 2005, attached hereto as Exhibit 7. Harden produced 19 additional pages on September 6. See Letter from Mr. Notargiacomo to Reema Abdelhamid, Esq., dated Sept. 6, 2005, attached hereto as Exhibit 8.

11. On July 15, 2005, The Guardian Life Insurance Company of America ("Guardian Life") supplemented its initial production of 158 pages with an additional 1691 pages. See Exhs. 4, 7. On August 15, 2005, Guardian Life produced certain Neurontin claims data. See Letter from Garvis Campbell to Patrick Murray, Esq., dated Aug. 15, 2005, attached hereto as Exhibit 9.

12. On July 26, 2005, Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (together, "Kaiser") produced 2692 pages, correcting errors in their original production. See Letter from Justine Kaiser, Esq. to Mr. Rouhandeh and Mr. P. Murray, dated July 26, 2005,

attached hereto as Exhibit 10. Kaiser supplemented this production on August 9, 2005 with an additional 1759 pages. See Letter from Ms. Kaiser to Mr. Rouhandeh and Mr. P. Murray, dated Aug. 9, 2005, attached hereto as Exhibit 11.

13.     On July 29, 2005, class plaintiff ASEA/AFSCME Local 52 Health Benefits Trust ("ASEA") made its first production. See Letter from Mr. Notargiacomo to Mr. Rouhandeh, dated July 29, 2005, attached hereto as Exhibit 12. This production comprised 475 pages. On August 9, 2005, ASEA supplemented this production with 440 additional pages. See Letter from Mr. Notargiacomo to Mr. Rouhandeh, dated Aug. 9, 2005, attached hereto as Exhibit 13. The combined 915 pages produced by ASEA purportedly includes its own documents and those of its third-party administrator, Administration Services, Inc.

14.     On August 9, 2005, Aetna, Inc. ("Aetna") made its first and only production of 514 pages. See Letter from Gerald Lawrence, Esq. to Mr. P. Murray, dated Aug. 9, 2005, attached hereto as Exhibit 14.

15.     On August 18, class plaintiff Louisiana Health Service Indemnity Company ("Louisiana Health") made its first production of selected Neurontin claims data and other documents. See Letter from Mr. Notargiacomo to Mr. Rouhandeh, dated Aug. 18, 2005, attached hereto as Exhibit 15. These other documents amounted to 1312 pages. Louisiana Health supplemented its production on August 25. See Letter from Mr. Notargiacomo to Mr. Rouhandeh, dated Aug. 25, 2005, attached hereto as Exhibit 16. This supplemental production contained 22,303 pages.

16. Louisiana Health first produced documents in late August, after repeated requests for an earlier production. E.g., Letter from Mr. Rouhandeh to Douglas Plymale, Esq., dated Aug. 4, 2005, attached hereto as Exhibit 17.

17. The ten plaintiffs in these actions have produced a sum total of eleven boxes of documents. According to review conducted by my colleagues, seven of these boxes consist of multiple variations of Louisiana Health's benefit plans, provider contracts, organizational charts, and enrollment forms.

18. At the meet-and-confer sessions on July 6, 15, and 29, 2005, the third-party payor plaintiffs in attendance asserted burdensomeness objections and stated that they needed to investigate the nature of the burden with their clients before they could explain it in detail. When these plaintiffs did not respond regarding these objections, defendants obtained a commitment from them to explain their burdensomeness objections by August 12. See Letter from Mr. P. Murray to Ronald Aranoff, Esq., dated Aug. 15, 2005, attached hereto as Exhibit 18.

19. Most of the third-party payor plaintiffs did not provide explanations for their clients' burdensomeness objections until August 26. On this date, Harden, Local 68, and Guardian Life informed defendants that they are not limiting their production based on burden. See Letter from Mr. Aranoff to Mr. P. Murray, dated Aug. 26, 2005, attached hereto as Exhibit 19.

20. Louisiana Health and Aetna still have yet to detail the scope and nature of their burden objections.

21. Defendants recently noticed the depositions of ASEA and Harden under Rule 30(b)(6) for the last week of September 2005. See Notice of Deposition of ASEA/AFSCME

Local 52 Health Benefits Trust, dated Sept. 9, 2005, and Notice of Deposition of Harden Manufacturing Corporation, dated Sept. 9, 2005, attached hereto as Exhibits 20 and 21, respectively.

22. Defendants have noticed the depositions of Local 68 and Louisiana Health as well. See Notice of Deposition of International Union of Operating Engineers, Local No. 68 Welfare Fund, dated Sept. 9, 2005, and Notice of Deposition of Louisiana Health Services Indemnity Company dba BlueCross/BlueSheild of Louisiana, dated Sept. 9, 2005, attached hereto as Exhibits 22 and 23, respectively.

23. The class third-party payors contracted with pharmacy benefit managers and third-party administrators to administer and pay their members' prescription drug claims, including the Neurontin claims for which they are seeking recovery. These entities possess claims data and formulary-related information.

24. Counsel for some of the plaintiffs have informed defendants that their productions are so small because their pharmacy benefit managers and third-party administrators will have most of the relevant documents.

25. Various plaintiffs did not identify their pharmacy benefit managers and third-party administrators until late July 2005 and one class plaintiff did not identify two of its pharmacy benefit managers until late August 2005. One class plaintiff, Local 68, has not yet even identified its pharmacy benefit managers. Defendants have only identified these entities through Local 68's third-party administrator.

26. Defendants have received no documents from Local 68's third-party administrator and pharmacy benefit managers, Harden's third-party administrator, and most of Louisiana

Health's pharmacy benefit managers regarding these plaintiffs. Defendants have not been able to ascertain whether Harden's third-party administrator used a pharmacy benefit manager that would have relevant information. ASEA's pharmacy benefits manager has only produced a very limited amount of material.

27. None of these parties' pharmacy benefit managers have produced the claims data that defendants have requested, including the Neurontin claims data for which plaintiffs are seeking recovery.

28. Defendants contacted counsel for the individual plaintiffs in early August 2005 and requested dates upon which each of the individual plaintiffs would be available for deposition. Defendants also asked whether plaintiffs' counsel could accept service for their client's physicians.

29. When defendants did not receive a response after two weeks, they noticed the depositions of the individual plaintiffs and issued subpoenas for the depositions of their physicians for the second week of September – approximately one month before the close of the class discovery period. See Notice of Deposition of Ms. Kopa, dated Aug. 17, 2005, and Notice of Deposition of Mr. Smith, dated Aug. 17, 2005, attached hereto as Exhibits 24 and 25, respectively; Notice of Deposition of Dr. Dhaduk, dated Aug. 18, 2005, Notice of Deposition of Dr. Craparo, dated Aug. 18, 2005, and Notice of Deposition of Dr. Huler, dated Aug. 17, 2005, attached hereto as Exhibits 26, 27, and 28, respectively.

30. The individual plaintiffs' counsel informed defendants that they were unable to go forward on the date noticed for both individual plaintiffs' depositions – September 14, 2005. See Letter of Mr. Aranoff to James Murray, Esq., dated Aug. 25, 2005, attached hereto as Exhibit 29;

Letter of Richard Shevitz, Esq. and Eric Pavlack, Esq. to Messrs. J. Murray and P. Murray, dated Aug. 30, 2005, attached hereto as Exhibit 30.

31. On August 25, 2005, counsel for Ms. Kopa stated that he would provide defendants with dates upon which Ms. Kopa and her counsel were available, but defendants have so far received none. See Exh. 29.

32. Counsel for Ms. Kopa subsequently stated that he understood that the class discovery cut-off might be extended and stated that the individual plaintiffs would provide deposition dates once the extension issue was resolved. See Letter from Mr. Aranoff to Mr. P. Murray, dated Sept. 9, 2005, attached hereto as Exhibit 31.

33. Defendants still have not yet received proposed deposition dates for Ms. Kopa.

34. After defendants served deposition subpoenas on the individual plaintiffs' doctors, plaintiffs' counsel informed defendants that they could not attend on the dates noticed, but they did not propose any alternate dates. See Exhs. 29-30.

35. Plaintiffs' counsel stated that the depositions of plaintiffs' physicians should not occur until defendants produced certain documents. See Exh. 30.

36. Counsel for Mr. Smith refused to go forward with the deposition of Mr. Smith's physician on an alternate date proposed by the physician even if the document issues were resolved.

37. On September 7, defendants responded that they would produce certain database entries requested by plaintiffs, but that they could not satisfy plaintiffs' demand that defendants identify and produce documents regarding all events sponsored by defendants that these

physicians attended. See Letter from Mr. P. Murray to Messrs. Shevitz and Pavlack, dated Sept. 7, 2005, attached hereto as Exhibit 32.

38. Defendants explained that plaintiffs' request would potentially require defendants to collect and search the files of all sales and marketing employees and such a search was already the subject of defendants' motion for a protective order. Id.

39. Defendants indicated, however, that they would consider conducting a targeted search for documents if the depositions of these physicians were to reveal that these physicians attended events sponsored by defendants. Id.

40. Plaintiffs replied on September 9 by stating that they would provide their availability for the depositions of the prescribing physicians once the extension issue was resolved. See Exh. 31.

41. Plaintiffs' counsel stated on September 14 that they want all documents pertaining to any events attended by the prescribing physicians and their partners before the depositions of the prescribing physicians occur. See Letter from Barry Himmelstein, Esq. to Mr. Rouhandeh, dated Sept. 14, 2005, attached hereto as Exhibit 33.

42. In response, defendants explained that by persisting in this course, plaintiffs are continuing to ask defendants "to look for a needle in a haystack," without even knowing first if a needle exists. See Letter from Mr. Rouhandeh to Mr. Himmelstein, dated Sept. 16, 2005, attached hereto as Exhibit 34. Defendants then explained that they cannot comply with plaintiffs' demand and proposed an alternative as described above. Id.

43.     Despite defendants' repeated requests to meet and confer, plaintiffs did not make themselves available for an initial meet-and-confer session until June 29, 2005 – four weeks after serving objections to defendants' requests.

44.     Plaintiffs continually delayed scheduling subsequent meetings despite defendants' offers to meet at any time. See Letter from Mr. P. Murray to Mr. Aranoff, dated July 19, 2005, attached hereto as Exhibit 35.

45.     During the meet-and-confer session scheduled on July 6, 2005, class plaintiff Louisiana Health did not join until approximately two hours into the session, despite the fact that defendants had specifically informed plaintiffs that defendants would be using Louisiana Health's responses as the starting point for conducting the session.

46.     Class plaintiff, Local 68, failed to appear entirely at the July 6, 2005 meet-and-confer session.

47.     For all of those plaintiffs who missed a session or part of a session, defendants had to repeat the material covered with them separately.

48.     During June and July 2005, plaintiffs refused requests to meet and confer individually with defendants.

49.     Only after the parties had covered all of the defendants' requests collectively did plaintiffs agree to meet and confer in one-on-one sessions. With respect to scheduling these one-on-one sessions, some plaintiffs at times took many days to return defendants' telephone calls or returned calls only after repeated messages were left for them.

50.     At the July 22, 2005 meet-and-confer session, defendants asked counsel for the individual plaintiffs whether their clients would be supplementing their discovery responses. A

few days later, defendants asked for a reply by July 29. See Letter from Mr. Rouhandeh to Messrs. Aranoff and Shevitz, dated July 26, 2005, attached hereto as Exhibit 36.

51. The individual plaintiffs declined the request to supplement their discovery responses by July 29 and did not respond until over a month later – on August 26. See Letter from Mr. Shevitz to Mr. Rouhandeh, dated July 28, 2005, attached hereto as Exhibit 37; Letter from Mr. Aranoff to Mr. P. Murray, dated Aug. 26, 2005, attached hereto as Exhibit 38; Letter from Messrs. Shevitz and Pavlack to Mr. P. Murray, dated Aug. 26, 2005, attached hereto as Exhibit 39.

52. Defendants have requested documents regarding the third-party payor plaintiffs' policies and practices for the payment of claims for drug prescriptions for off-label uses (regardless of whether they are for Neurontin). See, e.g., Defendants' First Request for Production of Documents to Plaintiff Louisiana Health Services Indemnity Company dba BlueCross/BlueShield of Louisiana, dated May 2, 2005, attached hereto as Exhibit 40, Reqs. 1, 19-20, 24, 29, 42, 57, 60-61, 66, 74-76, 83-89.

53. Defendants have also requested all of the prescription drug claims of the third-party payors' members who submitted claims for Neurontin. See, e.g., id. Req. 51.

54. Plaintiffs have refused to produce documents responsive to this request, stating that they do not consider them relevant to the case. See Letter from Mr. Aranoff to Mr. J. Murray, dated July 6, 2005, attached hereto as Exhibit 41.

55. Class plaintiff ASEA has refused to produce certain Neurontin claims for which it is seeking recovery. See Exh. 19 (attaching Letter from Nancy Pacharzina, Esq. to Mr. P. Murray, dated Aug. 22, 2005, at 2). While ASEA's pharmacy benefits manager administered

11

most of the drug claims for which ASEA is seeking recovery, its third-party administrator, Administration Services, Inc. ("ASI"), administered approximately 136,000 of ASEA's drug claims.

56. ASI does not have individual electronic records of these claims, just aggregate totals. ASI does possess, however, hard copies of each of these individual claims. Nonetheless, ASEA has objected to producing these hard copies, asserting burdensomeness. Id.

57. Despite this, ASEA is seeking to recover on the claims for which it is providing no individual claims data.

58. The individual plaintiffs have refused to produce documents regarding drugs other than Neurontin. See Exh. 41.

59. Defendants requested documents concerning each individual plaintiffs' medical history, including all medical and prescription drug records from the time of the injury that caused each plaintiff to take Neurontin. See, e.g., Defendants' First Request for Production of Documents to Plaintiff Lorraine Kopa, dated May 2, 2005, attached hereto as Exhibit 42, Reqs. 8, 11, 16-24.

60. After the July 22, 2005 meet-and-confer session, the individual plaintiffs took over one month to consider defendants' explanations as to why such information was relevant and then informed defendants on August 26 that they would not be producing the requested documents. See Exh. 38.

61. The individual defendants have refused to provide even a list of other prescription drugs that they were taking while on Neurontin.

62. Defendants have requested that the individual plaintiffs execute authorizations allowing defendants to obtain their medical records from the non-parties which have them. See Exh. 42; Defendants' First Request for Production of Documents to Plaintiff Gerald Smith, dated May 2, 2005, attached hereto as Exhibit 43.

63. The individual plaintiffs refused to provide such authorizations, stating that they would obtain their medical records and produce those that they deemed relevant. See Exh. 41.

64. Local 68 provided almost no responsive information at all when it served its responses to defendants' interrogatories. See Plaintiff International Union of Operating Engineers, Local No. 68 Welfare Fund's Objections and Response to Defendants' First Set of Interrogatories, dated June 2, 2005, attached hereto as Exhibit 44.

65. In its responses, Local 68 answered thirteen of defendants' nineteen interrogatories by stating that it was "in the process of answering defendants' interrogator[ies] and w[ould] provide responses as soon as possible." Id. Resps. 1-5, 10-15, 18-19.

66. In response to the remaining six interrogatories, Local 68 stated that the requested information would be or had already been produced in documentary form. See id. Resps. 6-9, 16-17.

67. As of the filing of this motion, Local 68 has not yet produced any substantive interrogatory answers and has not produced documents containing the requested information.

68. It was not until I explicitly pressed counsel for Louisiana Health at the July 29 meet-and-confer session that the name of Louisiana Health's pharmacy benefit manager was disclosed. See Plaintiff Louisiana Health Services Indemnity Company d/b/a

13

BlueCross/BlueShield of Louisiana's Objections and Response to Defendants' First Set of Interrogatories, dated June 3, 2005, attached hereto as Exhibit 45.

69.    On August 25, after seeing the names of other pharmacy benefit managers in documents produced by Louisiana Health, my colleague, Reema Abdelhamid, telephoned counsel for Louisiana Health and asked if his client had any other pharmacy benefit managers about which defendants should know.

70.    I have been told that Louisiana Health's counsel responded that his client had four or five pharmacy benefit managers during the relevant period, but that he was not able to locate their names at that time.

71.    The names of these pharmacy benefit managers were finally provided to defendants on August 26 – almost three full months after they should have been disclosed in Louisiana Health's initial disclosures and in response to defendants' first interrogatory. See Letter from Dr. Plymale to Mr. P. Murray, dated Aug. 26, 2005, attached hereto as Exhibit 46.

72.    As a result, defendants have only just begun the process of seeking documents regarding Louisiana Health from these pharmacy benefit managers.

73.    Defendants wrote various letters to plaintiffs cataloging the numerous deficiencies with their answers. See Letter from Mr. P. Murray to Mr. Shevitz, dated Aug. 12, 2005, attached hereto as Exhibit 47; Letter from Mr. P. Murray to Mr. Aranoff, dated Aug. 12, 2005, attached hereto as Exhibit 48; Letter from Mr. P. Murray to Stephen Weiss, Esq., dated Aug. 24, 2005, attached hereto as Exhibit 49; Letter from Mr. P. Murray to Ms. Pacharzina, dated August 25, 2005, attached hereto as Exhibit 50; Letter from Mr. P. Murray to Mr. Notargiacomo, dated Aug. 25, 2005, attached hereto at Exhibit 51.

74. The individual plaintiffs have responded to these letters. See Exhs. 38, 39.

75. Ms. Kopa continues to object to giving the names of her immediate supervisors and her entire employment history. See Exh. 38.

76. Mr. Smith has refused to produce information about any psychiatric or psychological examinations or treatments that he received while taking Neurontin. See Exh. 39.

77. In two letters, plaintiffs have recognized that some depositions will need to occur after October 10. See Exh. 33; Letter from Mr. Notargiacomo to Mr. P. Murray and Ms. Abdelhamid, dated Sept. 16, 2005, attached hereto as Exhibit 52, at 5.

78. On September 7, 2005, plaintiffs' counsel called defense counsel and proposed a 30-day extension of the class discovery period. Defense counsel responded that more time was necessary to complete the numerous tasks remaining and so, proposed a 120-day extension. During this call, plaintiffs' counsel agreed to reply to defendants' proposal.

79. When defendants did not receive a response by September 13, defense counsel requested one by the close of business on September 14. See Letter from Mr. Rouhandeh to Mr. Himmelstein, dated Sept. 13, 2005, attached hereto as Exhibit 53.

80. Defendants received a letter from plaintiffs' counsel on September 14, 2005. This letter did not directly address defendants' proposal for a 120-day extension, but apparently withdrew plaintiffs' 30-day extension proposal. See Exh. 33.

81. Accordingly, defendants sought an answer from Plaintiffs' Liaison Counsel on September 15. See Letter from Mr. Rouhandeh to Mr. Sobol, dated Sept. 15, 2005, attached hereto as Exhibit 54. Plaintiffs' Liaison Counsel confirmed on September 16 that plaintiffs

oppose a 120-day extension. See Letter from Mr. Sobol to Mr. Rouhandeh, dated Sept. 16, 2005, attached hereto as Exhibit 55.

82. Defendants have subpoenaed documents from non-parties including pharmacy benefit managers and third-party administrators. These non-parties have stated that it will take them a significant amount of time to produce these documents, and discussions have shown that their productions will not be complete by October 10. Some of the non-parties have only recently been identified to defendants by plaintiffs.

83. Counsel for Harden has stated that Harden's chosen corporate designee will not be available for deposition before October 13 and 14, 2005. See Exh. 52.

84. Caremark, a pharmacy benefit manager for ASEA and Louisiana Health, has produced a handful of relatively insignificant documents.

Dated: New York, New York
       September 21, 2005

_____
Patrick J. Murray