Request No. 21

One representative copy of each document sent to Members, providers, pharmacies, medical centers, hospitals, the government, or any other entities in which Plaintiff expresses its policy towards or information about payment for Neurontin, whether for on-label or off-label indications.

Request No. 22

All newspaper articles, magazine articles, articles from the internet, reimbursement newsletters, or other published or printed material concerning the off-label use of Neurontin.

Request No. 23

All statements or other documents disseminated by or on behalf of any Defendant to Plaintiff and/or the public concerning Neurontin.

Request No. 24

All correspondence or communications with any federal or state government entity or agency regarding Neurontin, reimbursement for off-label uses of medications, and/or any of the claims raised in the Complaint.

Request No. 25

All documents concerning medical compendia, listings, or other similar types of documents, including but not limited to DRUGDEX, that include information about off-label uses of drugs.

Request No. 26

All documents referring to any investigation, lawsuit, or other examination into the off-label use of Neurontin.

Request No. 27

All information received from any source about the use of Neurontin off-label.

Request No. 28

All documents concerning the efficacy or inefficacy of Neurontin for off-label uses.

Request No. 29

All documents concerning any budgetary plans and/or budgetary discussions about the costs and issues surrounding coverage of off-label uses for medications.

Request No. 30

All documents concerning the benefits, risks, safety, efficacy or cost or benefits of Neurontin.

Request No. 31

Records of all claims or requests for payment or reimbursement received concerning Neurontin.

Request No. 32

All documents addressing claims for reimbursement or provision of Neurontin that identify the indications for which Neurontin was prescribed or reflect Neurontin prescriptions by indication or use.

Request No. 33

All records, emails, correspondence, memorandum and documents of any kind in which the indications of Neurontin are discussed.



Request No. 34

All documents concerning Neurontin's package insert, Neurontin's label, and the indications for which Neurontin was approved.

Request No. 35

All documents in which Plaintiff addresses, questions, identifies or analyzes the level, cost, type or number of Neurontin claims received by Plaintiff.

Request No. 36

All documents comparing the level, cost, type or number of Neurontin claims to those of other anti-epileptic drugs or other drugs in general.

Request No. 37

All protocols, procedures, or requirements – whether formal or informal – for the processing of Neurontin claims.

Request No. 38

All documents related to any analysis of potential, expected or actual costs of paying for or reimbursing Members for Neurontin for any use other than as an adjunctive therapy in the treatment of epilepsy.

Request No. 39

Copies of organization charts which reflect the structure and composition of any department within Plaintiff whose responsibilities included the assessment, payment, rejection of payment, or tracking of Neurontin claims.

Request No. 40

Documents sufficient to identify all person who had responsibilities concerning the review, consideration, analysis, recommendations, or approval of any aspect of the reimbursement of costs of Neurontin.

Request No. 41

All documents or records in Plaintiff's databases that concern requests for reimbursement of the costs of Neurontin. The response to this request should include all fields of any database whose records are produced.

Request No. 42

All documents concerning any efforts by Plaintiff to track the off-label prescriptions of medications, including but not limited to Neurontin.

Request No. 43

All documents which discuss or reflect the dollar amount, numeric amount, or rate of change of Neurontin prescriptions to Members.

Request No. 44

All documents concerning any disapproval of coverage or reimbursement by Plaintiff for any Neurontin prescription for an off-label use.

Request No. 45

All documents concerning any contract or agreement between any pharmacy, provider, or other entity regarding Neurontin or payment or reimbursement of the cost of prescribing Neurontin.

Request No. 46

Each document concerning the payment, pass-on or reimbursement of costs associated with Neurontin by any pharmacy, employer, company, sponsor, insurer, or third party payor.

Request No. 47

Each document concerning rebates or other payments requested by or paid to Plaintiff regarding Neurontin.

Request No. 48

Documents sufficient to show, by month, year, and state, the number and dollar amount of payments made by Plaintiff concerning Neurontin on behalf of Members.

Request No. 49:

All documents that state, record, list, or refer to any fee, expense, cost, or item of pecuniary expense or loss of any kind for which you seek to recover compensatory damages in this action, including administrative, travel, and other costs, damages, or expenses.

Request No. 50

All documents, including any in an electronic data format, showing individual claims submitted to and payments made by Plaintiff for Neurontin to Members or to providers or other parties on behalf of any Member. For each transaction, data should include information regarding the type of contract and funding methodology between the parties. These documents or databases should include all information or all fields necessary to adjudicate claims, including but not limited to the following: encrypted member i.d., member age, date of service, date of payment, amount billed, amount paid

15

by plan, co-pay, deductible, coinsurance, third party liability, ICD-9 code, CPT, HCPCS, NDC or local code used by the plan, physician i.d., and claim status/adjudication code. If fields containing confidential information (e.g., member name, social security number) are encrypted, they should be encrypted so as to allow the tracking of an individual Member over time.

Request No. 51

For each Member's claim or payment identified in Plaintiff's response to Request No. 50, provide documents, including any in an electronic data format, showing all individual claims submitted to and payments made by Plaintiff for any prescription drug to those Members or to providers or other parties on behalf of those Members. For each transaction, data should include all information necessary to adjudicate claims, including but not limited to the following: encrypted member i.d., member age, name of drug, reason drug was prescribed to Member, date of service, date of payment, amount billed, amount paid by plan, co-pay, deductible, coinsurance, third party liability, ICD-9 code, CPT, HCPCS, NDC or local code used by the plan, physician i.d., and claim status/adjudication code. If fields containing confidential information (e.g., member name, social security number) are encrypted, they should be encrypted so as to allow the tracking of an individual Member over time (including tracking the Member against the information provided in response to Request No. 50).

Request No. 52

All documents concerning Plaintiff's payment of all or part of the purchase price for Neurontin, including co-payment or deductible amounts, on behalf of any Member of Plaintiff. This request includes, but is not limited to, documents sufficient to identify the

16

date the payment was made; the person or entity to whom the payment was made; the name of the Member on whose behalf the payment was made and whether the Member is covered by Medicare or eligible for Medicare benefits; the dosage of Neurontin purchased; the name, address, and telephone number of the health care provider or pharmacy providing Neurontin; and the dollar amount of the payment, as well as statements, invoices, bills, receipts, cancelled checks, credit card statements, or other proof of payment.

Request No. 53

All documents concerning any damages that Plaintiff contends were sustained from Defendants' alleged conduct or otherwise supporting Plaintiff's claim for damages or other relief in this case.

Request No. 54

All documents, including medical records, concerning Plaintiff's Members' treatment with Neurontin.

Request No. 55

All documents in the possession of Plaintiff or Plaintiff's attorneys related to Neurontin that were provided by non-parties to any of the parties in the civil action *United States of America ex rel. David Franklin v. Parke-Davis, et al.*, C.A. No. 96-11651-PBS (D. Mass.).

Request No. 56

All of Plaintiff's summary annual reports, annual reports, and state and federal tax filings for the years 1994 through the present.

17

Request No. 57

All documents filed with any federal or state government entity, including the Department of Health and Human Services, Centers for Medicare and Medicaid Services, and any State Department of Insurance, relating to medical benefits concerning Neurontin or concerning the off-label use of any drug.

Request No. 58

Copies of all articles of incorporation, by-laws, charters, agreements, or other documents under which Plaintiff was created or organized, which describe Plaintiff's corporate governance, organizational structure, and/or which identify Plaintiff's purposes or operations.

Request No. 59

Copies of organization charts which reflect Plaintiff's structure.

Request No. 60

All documents submitted to any government entity or agency since January 1, 1994 relating to Plaintiff which discussed or addressed the off-label use of medications.

Request No. 61

All minutes of meetings of Plaintiff's trustees, fiduciaries, or officers, notices regarding such meetings, and all documents distributed before, during, or as result of such meetings, including all documents reflecting a decision of the trustees, fiduciaries, or officers in lieu of a meeting, in which the off-label use of medications was discussed.

Request No. 62

Documents sufficient to identify the names and addresses of Plaintiff's trustees, fiduciaries, and officers since January 1, 1994.

18

Request No. 63

Documents sufficient to identify the names and addresses of all individuals and entities providing administrative services to Plaintiff, including the Plan Administrator(s), since January 1, 1994.

Request No. 64

Plaintiff's Plan and trust documents and documents reflecting amendments thereto since January 1, 1994.

Request No. 65

Adoption agreements and documents reflecting amendments thereto since January 1, 1994.

Request No. 66

One representative copy of all communications since January 1, 1994 with Plaintiff's Members and providers relating to anti-epileptic drugs or to off-label uses, including, but not limited to, summary plan descriptions and summaries of material modifications.

Request No. 67

Participation agreements and documents reflecting amendments thereto since January 1, 1994.

Request No. 68

All documents concerning communications between Plaintiff, any third-party plan administrator or Preferred Provider, including insurance companies, and/or consultant of any type since January 1, 1994 relating to coverage for drugs, payment for drugs, drug

formularies, off-label usage of drugs, and methodologies for reimbursing third-parties or Members for drugs.

Request No. 69

All documents concerning the type and terms of all health benefits Plaintiff provides that relate in any way to pharmaceutical drugs including, but not limited to, documents concerning prescription drug benefits, hospital benefits, physician services benefits, medical testing benefits, and any other benefits related to medical care, as well as documents reflecting premiums paid and the methodology used for calculating premiums.

Request No. 70

All documents concerning pricing and marketing of prescription drugs and pharmaceutical benefits, including pricing and underwriting guidelines, pricing and underwriting policies and procedures, marketing guidelines, and marketing policies and procedures. Produce separately, or identify within this production, those documents responsive to Request No. 70 that relate to off-label uses of drugs.

Request No. 71

Documents sufficient to show (a) all drugs for which Plaintiff provides coverage; (b) the amount Plaintiff has paid for each drug, both brand name and generics, for each year since January 1, 1994, including but not limited to any pricing lists and contracts with pharmaceutical manufacturers; and (c) the amount, if applicable, Plaintiff charges to its Members for Neurontin.

Request No. 72:

All documents regarding Plaintiff's policies and procedures since 1994 with respect to the reimbursement of, or payment for, the costs of medications prescribed to Plaintiff's Members.

Request No. 73:

All documents regarding Plaintiff's policies and procedures since 1994 with respect to the off-label use of medications, including but not limited to documents addressing policies for reimbursing Members for off-label medications.

Request No. 74

All documents concerning Plaintiff's standard operating procedures or claims handling practices and procedures regarding payment of claims related to off-label uses.

Request No. 75:

All documents relating or referring to, or embodying, minutes of meetings, agendas, dossiers, internal memoranda regarding strategies and issues, Questions and Answers, scheduling, or any other documents concerning meetings at which off-label prescribing of medicines was discussed.

Request No. 76:

Copies of all presentations, internal memoranda, or other documents that include any reference to off-label prescribing of medicines, including but not limited to references about Plaintiff's practices with respect to off-label prescriptions.

Request No. 77

Copies of any industry newsletters or publications, trade publications, articles, or similar documents addressing in any way how insurance companies or third party payors

21

are to handle claims for off-label prescriptions, including but not limited to documents discussing company approaches or best practices, government or industry regulations or requirements, and evolutions in the industry with respect to off-label prescriptions and off-label use of medications.

Request No. 78

Copies of any federal, state or local laws or regulations addressing the reimbursement by insurers of off-label prescriptions.

Request No. 79

All documents concerning Plaintiff's obligation, or lack of obligation, under any internal or external policy, rule, regulation, or case law to pay for, reimburse, or cover the costs – in full or in part – of off-label uses of drugs and medications.

Request No. 80

All documents referencing Plaintiff's compliance (or lack of compliance) with internal or external rules, regulations, and policies pertaining to reimbursement for off-label prescriptions.

Request No. 81

All records reflecting the resolution of claims related to an off-label prescription.

Request No. 82

All documents addressing how Plaintiff determines whether a claim is for a medication used for an off-label use.

Request No. 83

All documents showing that Plaintiff refused payment, either in whole or in part, for a claim involving an off-label prescription, and all documents related to, discussing or analyzing that refusal.

Request No. 84

Any correspondence to or from Members, providers, hospitals, pharmacies, or any other individual, organization, or institution addressing a claim involving an off-label prescription.

Request No. 85

All documents concerning any review, consideration, analysis, recommendation or approval of payment for or reimbursement of some or all of the costs of medications prescribed for an off-label use.

Request No. 86

All documents concerning any requirement (or lack of requirement) that Members, pharmacies, providers, or any other person or entity identify the indication for which a drug was prescribed when submitting a claim to Plaintiff for reimbursement of the costs of that drug.

Request No. 87

All documents concerning any requirement (or lack of requirement) that Members, pharmacies, providers, or any other person or entity identify whether a drug was prescribed for an off-label use when submitting a claim to Plaintiff for reimbursement of the costs of that drug.



Request No. 88

All documents concerning any discussion about or decision by Plaintiff to inform Members that it would not pay for the off-label uses of drugs.

Request No. 89

All documents concerning communications by Plaintiff to pharmaceutical manufacturers, including but not limited to Parke Davis, Warner Lambert, and Pfizer Inc., concerning the off-label use of drugs.

Request No. 90

All documents concerning communications by Plaintiff to pharmaceutical manufacturers, including but not limited to Parke Davis, Warner Lambert, and Pfizer Inc., not provided in response to Request No. 89.

Request No. 91

All documents concerning Plaintiff's internal communications concerning the review, design, analysis, write up, or proposal for reimbursement of medications for off-label uses.

Request No. 92

All requests, letters, inquiries, disputes, clarifications, emails, or logs of telephone calls from Members or providers referencing Plaintiff's policies, requirements, or treatment of off-label prescriptions.

Request No. 93

All records in any database maintained by Plaintiff or documents which contain information regarding claims for reimbursement for off-label uses of medications, whether such records were generated by Plaintiff or purchased from third parties. The

response to this request should include for any database all fields of the database for every record produced.

Request No. 94

All documents in the possession of Plaintiff or Plaintiff's attorneys concerning, concerning, or discussing the civil action *United States of America ex rel. David Franklin v. Parke-Davis, et al.*, C.A. No. 96-11651-PBS (D. Mass.).

Request No. 95

All documents reviewed by any expert retained by Plaintiff to testify at trial in this Action.

Request No. 96

All documents prepared by any expert retained by Plaintiff to testify at trial in this Action.

Request No. 97

The complete file and/or working papers of any expert whom Plaintiff intends to call as a witness at trial.

Request No. 98

The current resume or curriculum vitae of any expert whom Plaintiff intends to call as a witness at trial.

Request No. 99

All reports of any expert whom Plaintiff intends to call as a witness at trial.

Request No. 100

All drafts of all reports of any expert whom Plaintiff intends to call as a witness at trial.

25

Request No. 101

All notes prepared by any expert whom Plaintiff intends to call as a witness at trial.

Request No. 102

All documents that you provided to any expert whom Plaintiff intends to call as a witness at trial.

Request No. 103

All documents concerning communications between Plaintiff and any expert whom Plaintiff intends to call as a witness at trial.

Request No. 104

All documents reviewed by any expert whom Plaintiff intends to call as a witness at trial.

Request No. 105

All documents relied upon by any expert whom Plaintiffs intend to call as a witness at trial.

Request No. 106

All documents supporting, rebutting, or otherwise relating in any way to the allegations of the Complaint, including but not limited to all documents reviewed in advance of, or relied on in, drafting the Complaint.

Request No. 107

All documents Plaintiff intends to introduce or rely upon at any hearing, trial, or in connection with any dispositive motion.



Request No. 108

All internal investigations or reports performed or prepared by Plaintiff, or on its

behalf, concerning the allegations in the Complaint.

Request No. 109

All documents concerning any alleged misrepresentation(s) or any false,

fraudulent, misleading, or deceptive statements allegedly made by or on behalf of any

Defendant concerning Neurontin.

Request No. 110

All documents that you contend provide support or evidence of the allegation in

paragraph 22 of the Complaint that "Parke-Davis knew there was no scientific rationale

for Neurontin being effective for bipolar disorder, acute mania, social phobia and panic

disorder."

Request No. 111

All documents that you contend provide support or evidence of the allegation in

paragraph 29 of the Complaint that "Parke-Davis only intended to publish studies that

generated positive results."

Request No. 112

All documents that you contend provide support or evidence of the allegation in

paragraph 31 of the Complaint that "the marketing enterprises Parke-Davis conducted

routinely engaged in acts of mail fraud, wire fraud, commercial bribery, unfair and

deceptive trade practices and other unlawful conduct."

Request No. 113

All documents that you contend provide support or evidence of the allegation in paragraph 42 of the Complaint that "Defendants hid their involvement in the promotion of off-label information and mislead physicians into believing that the physicians who promoted Neurontin were independent or not otherwise part of the enterprise Parke-Davis created to market Neurontin off-label."

Request No. 114:

All documents that you contend provide support or evidence of the allegation in paragraph 44 of the Complaint that "physicians who attended these events were deceived into thinking that the events were educational in nature and independent from the control of the Defendants."

Request No. 115

All documents that you contend provide support or evidence of the allegations in paragraph 45 of the Complaint that Defendants engaged in practices of "(a) deliberately misrepresenting the safety and medical efficacy of Neurontin for a variety of off-label uses; (b) knowingly misrepresenting the existence and findings of scientific data, studies, reports and clinical trials concerning the safety and medical efficacy of Neurontin for a variety of off-label uses; (c) deliberately concealing negative findings or the absence of positive findings ... (d) misrepresenting the credentials and qualifications of certain of Defendants' employees ... (e) wrongfully and illegally compensating physicians for prescribing Neurontin for various off-label uses; (f) knowingly publishing articles, studies and reports misrepresenting the scientific credibility of data and touting the medical efficacy of Neurontin for off-label uses; (i) intentionally misrepresenting and

28

concealing Defendants' role and participation [in various events and publications]; and (j) intentionally misrepresenting and concealing the financial ties between the Defendants and other participants in the Enterprise."

Request No. 116

All documents that you contend provide support or evidence of the allegation in paragraph 53 of the Complaint that unrestricted grants in support of medical education events "were expressly provided for the purpose of obtaining a program that extolled the use of Neurontin for unapproved indications."

Request No. 117

All documents that you contend provide support or evidence of the allegation in paragraph 55 of the Complaint that "the real purpose of [Consultants' Meetings] was to expose the attendees to Neurontin's uses for non-epilepsy treatment."

Request No. 118

All documents that you contend provide support or evidence of the allegation in paragraph 56 of the Complaint that "the vendor participants (with the assistance of the participating physicians and the Defendants) intentionally designed the programs so that the attendee physicians would not receive fair and balanced information."

Request No. 119

All documents identifying each study Plaintiff claims contains "negative clinical trial results that demonstrated that Neurontin was no more effective than a placebo for several off-label conditions," as referenced in paragraph 56 of the Complaint; and for each such study provide all documents showing the date the study was undertaken,

29

whether it was sponsored by Defendants, and the date the results of the study were released.

Request No. 120

All documents that you contend provide support or evidence of the allegation in paragraph 115 of the Complaint that "Publications that Defendants distributed as part of their 'publication strategy' intentionally misrepresented Defendants' role in the creation and sponsorship of the publications."

Request No. 121

All documents that you contend provide support or evidence of the allegation in paragraph 128 of the Complaint that "the Off-Label Promotion Enterprise routinely and knowingly provided false, inaccurate, misleading, distorted, unfair and unbalanced information about Neurontin's use for unapproved indications."

Request No. 122

All documents that you contend provide support or evidence of the allegation in paragraph 132 of the Complaint that "Defendants ... deliberately suppressed negative studies" about pain.

Request No. 123

All documents that you contend provide support or evidence of the allegation in paragraph 210 of the Complaint that "Defendants elected to pay kickbacks and otherwise provide participant and attendee physicians with items of substantial value to induce them to listen to the off-label marketing pitch, to prescribe Neurontin, and to recommend Neurontin to other physicians."

30

Request No. 124

All documents that you contend provide support or evidence of the allegation in paragraph 235 of the Complaint that "Pfizer has routinely marketed Neurontin for off-label indications up until May of 2004."

Request No. 125

All documents that reflect Plaintiff's total revenues, income and/or profit generated directly or indirectly from Plaintiff's provision of prescription drug coverage, including without limitation financial statements, internal reports, memoranda and correspondence by year for the period from January 1, 1994 through the present.

Request No. 126

All documents reflecting the total volume of premiums received for prescription drug coverage (in dollars and in terms of numbers of policyholders) by year for the period from January 1, 1994 through the present.

Request No. 127

All contracts and documents concerning such contracts between Plaintiff and Defendants for the period from January 1, 1994 through the present.

Request No. 128

All documents concerning Neurontin that have not been provided in response to any other Request.

Request No. 129

All documents concerning communications between Plaintiff and Pfizer, Warner-Lambert-Company, or Parke-Davis that have not been provided in response to any other Request.

31

Dated:   New York, New York
         May 2, 2005

DAVIS POLK & WARDWELL

By:  _____
        James P. Rouhandeh
        James E. Murray

450 Lexington Avenue
New York, New York  10017
(212) 450-4000

HARE & CHAFFIN

By:  _____
        David B. Chaffin
        BBO No. 549245

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

Attorneys For Defendants Pfizer Inc. and
Warner-Lambert Company.

32

**EXHIBIT 41**

BERNSTEIN LIEBHARD & LIFSHITZ, LLP

ATTORNEYS AT LAW

IO EAST 4OTH STREET

NEW YORK, NEW YORK IOOI6

(2I2) 779-I4I4

FAX: (2I2) 779-32I8

www.bernlieb.com

.NLEY D. BERNSTEIN
.NDY A. LIEBHARD
L E. LIFSHITZ
TH M. FLEISCHMAN
FFREY M. HABER
BERT J. BERG*
.NCIS P. KARAM▼
BECCA M. KATZ
BETH OTTENSOSER

.ENIOR COUNSEL
.LIAM A. K. TITELMAN▲

OF COUNSEL
IOTHY J. MacFALL
RK T. MILLKEY

ABRAHAM I. KATSMAN*
MICHAEL S. EGAN*
MARY U. HOOVER
ANNE W. SALISBURY
FELECIA L. STERN
RONALD J. ARANOFF
DANIELLE MAZZINI-DALY
BRIAN S. COHEN
GREGORY M. EGLESTON
JOSEPH R. SEIDMAN, JR.
ALDEN W. VEDDER
MICHAEL S. BIGIN
STEPHANIE M. BEIGE
ANDREA H. WILLIAMS*
JESSICA L. FRANCISCO
THERESA A. VITELLO***
BRETT M. LOGAN
RUSSELL M. IGER

*ALSO ADMITTED IN NJ
▼ALSO ADMITTED IN PA
▲ADMITTED ONLY IN PA
***ADMITTED ONLY IN NJ & PA

July 6, 2005

**BY HAND**

James Murray, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

    Re:   *In Re Neurontin Marketing and Sales Practices Litigation*
          *MDL No. 1629*

Dear Jim:

    I am writing to follow up on some of the issues that were raised at the June 29, 2005 meet and confer in the above-referenced matter.

    First, with respect to documents unrelated to Neurontin, the Third Party Payor Plaintiffs ("TPPs") will not produce such documents. Individual Plaintiffs will produce documents unrelated to Neurontin to the extent they have documents that relate to a chronic or pre-existing medical condition for which the individual was prescribed Neurontin.

    Second, with respect to time period, the TPPs will not produce documents created prior to January 1, 1994. TPPs will produce, however, responsive, relevant documents through the present. Individual Plaintiffs will produce pre-1994 documents to the extent they have documents that relate to a chronic or pre-existing medical condition for which the individual was prescribed Neurontin. Individual Plaintiffs will also produce responsive, relevant documents through the present.

    Third, with respect to the Plaintiffs' confidentiality objections, we confirm that Plaintiffs have not withheld any documents solely on the basis of confidentiality.

    Fourth, with respect to the Plaintiffs' objections on the grounds that responsive documents are already in Defendants' possession, custody or control, Plaintiffs will not produce any documents that were produced by the Defendants in the *Franklin Qui Tam* action. Plaintiffs

ERNSTEIN LIEBHARD & LIFSHITZ, LLP

James Murray, Esq.
July 6, 2005
Page 2 of 2

will agree to a mutual exchange of documents that were produced or received pursuant to third party subpoenas served by any party in *Franklin*. Subject to these limitations, Plaintiffs will not withhold any other responsive, relevant documents solely on the grounds that such documents are already in Defendants' possession, custody or control.

Fifth, with respect to Plaintiffs' objections that Defendants' contention requests and requests for documents and information relating to experts are premature, we are willing to discuss a mutual exchange date for expert discovery. For now, however, Plaintiffs have not withheld any responsive, relevant documents solely on the basis that Defendants' requests are premature.

Sixth, Plaintiffs confirm that they are not withholding any responsive, relevant documents solely on the basis that such documents are in electronic form. To the extent that it takes longer to find such documents and/or convert them into a readable format, Plaintiffs will continue to produce electronic documents on a rolling basis.

Seventh, we are in receipt of Patrick Murray's email from yesterday insisting that we provide medical authorizations for the end-payor Plaintiffs. Please be advised that Plaintiffs will not voluntarily provide medical authorizations in this matter.

Finally, I am mindful that issues raised at the June 29th meet and confer are not addressed in this letter. Plaintiffs' counsel are in the process of conferring with each other and our respective clients. Depending on the availability of our clients, we hope to respond to the other open issues from the June 29th meet and confer by July 13, 2005.

Very truly yours,

Ronald J. Aranoff