**EXHIBIT 43**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS | ) ) ) ) | Master File No. 04-10981 |
|  |  | Judge Patti B. Saris |

## DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF GERALD SMITH

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Pfizer

Inc. and Warner Lambert Company (hereinafter "Defendants"), hereby demand that in

accordance with the Definitions and Instructions set forth below, Plaintiff Gerald Smith

produce all documents requested herein for inspection and copying at the offices of Davis

Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, within thirty

(30) days of the date of service hereof.

## DEFINITIONS

1.    The definitions contained in Rule 26.5 of the Local Rules of the United

States District Court for the District of Massachusetts are incorporated herein by

reference.  Additionally, the following definitions apply.

2.    "Plaintiff" shall mean the Plaintiff Gerald Smith.

3.    "You" or "your" means Gerald Smith.

4.    "Pfizer" shall mean Defendant Pfizer Inc. and any of its predecessors,

divisions, offices, subsidiaries, affiliates, and any present or former directors, officers,

executives, trustees, and employees, including, but not limited to, Warner-Lambert and Parke-Davis, as a division of Warner-Lambert Company.

5.    "Warner-Lambert" shall mean Defendant Warner-Lambert Company and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, and employees, including, but not limited to, Parke-Davis, as a division of Warner-Lambert Company.

6.    "Parke-Davis" shall mean Parke-Davis, a division of Warner-Lambert Company, and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, and employees.

7.    "Complaint" shall mean the Amended Class Action Complaint, filed on February 1, 2005 in connection with MDL Docket No. 1629, Civil Action No. 04-10981-PBS, in the United States District Court for the District of Massachusetts.

8.    "Action" shall mean the proceeding pending in the United States District Court for the District of Massachusetts captioned *In re: Neurontin Marketing and Sales Practices Litigation*, 04-10981-PBS.

9.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

10.    The term "drug, " unless otherwise indicated, shall mean a substance used in the diagnosis, treatment, or prevention or a disease or as a component of a medication, and shall include both prescription and non-prescription drugs.

2

11.     The term "off-label" shall mean the prescription or use of a drug for indications or at dosages different from those set forth in a drug's labeling.

12.     "Any" includes the word "all" and vice-versa.

13.     "Communication" shall have the meaning set forth in Local Rule 26.5

14.     "Concerning" shall have the meaning set forth in Local Rule 26.5.

15.     "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure and Local Rule 26.5, and includes all forms of writings as defined in Rule 1001(1) of the Federal Rules of Evidence.

16.     "Meeting" shall mean any formal or informal assembly, convocation, encounter or contemporaneous presence of two or more Persons for any purpose and shall include telephone conferences and calls.

17.     "Person" or "Persons" shall mean any individual, corporation, organization, association, partnership, limited partnership, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

18.     "Relating to" shall have the same meaning as concerning.

## INSTRUCTIONS

1.     The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

3

2.    This request is intended to cover all documents in your possession or subject to your custody or control. This request is also intended to cover any and all documents you are authorized to retrieve.

3.    Each request for a document contemplates production of the document in its entirety, without abbreviation or expurgation.

4.    If any requested documents cannot be produced in full, produce them to the extent possible, specifying each reason for your inability to produce the remainder thereof and stating whatever information, knowledge, or belief you have concerning the unproduced portion.

5.    If any document is no longer in your possession, custody, or control and cannot be retrieved by you, identify the document in detail and state with specificity the location(s) of the document.

6.    This request is of continuing effect, and to the extent that any time after the production of documents called for by this request, you become aware of or acquire additional documents responsive to this request, such documents shall be produced promptly.

7.    If Plaintiff knows of information responsive to any of these requests that is in the custody, possession or control of a third person, identify the information and the person(s) possessing it.

8.    If Plaintiff claims that any document to be produced is privileged or constitutes attorneys' work product, Plaintiff is requested to submit a written statement

4

that describes the nature of the documents not produced as required under the Federal Rules of Civil Procedure.

9.    In the event that any information is redacted from a Document produced pursuant to this Document Request, that information is to be identified and the basis upon which such information is redacted should be fully stated.

10.    Documents shall be produced as they are or have been kept in the ordinary course, including the original file folder and label or other similar identification devices.

11.    To the extent that you view any document request as vague or imprecise, counsel for Defendants offers to confer with counsel for Plaintiff as to the intended scope of such document request.

## DOCUMENT REQUESTS

Request No. 1

Documents sufficient to identify whether Plaintiff has ever been previously married, the date of each marriage, the name and address of each spouse and the name, address and birth dates of any children.

Request No. 2:

Documents sufficient to identify schools the Plaintiff has attended, the years attended, whether Plaintiff graduated, and whether Plaintiff obtained any degrees.

Request No. 3:

Documents sufficient to show Plaintiff's employment through the present, and with regard to each job Plaintiff has held: (a) a description of the job; (b) Plaintiff's

immediate supervisor; (c) the dates each employment commenced and ended; and (d) the reasons the employment ended.

Request No. 4:

All documents concerning any legal proceeding (whether civil, criminal, or administrative, including, but not limited to, any criminal indictment or conviction, petition for protective order, petition for restraining order, commitment proceeding, divorce proceeding, separation proceeding, juvenile court proceeding, or guardianship proceeding) in which Plaintiff has ever been named a party, a deponent, a testifying witness, an affiant, or a declarant under penalty of perjury.

Request No. 5:

All documents concerning any counseling, recommendation for counseling, arrest, prosecution, conviction, or treatment of Plaintiff for any use of, possession of, addiction to, intoxication with, or abuse of any form of alcohol, controlled substance, mind-altering substance, illegal drug, or medication.

Request No. 6:

All documents that describe, refer to, were filed in, or were produced by or provided to Plaintiff in connection with, any claim or suit for personal injury or disability filed by Plaintiff, including, but not limited to, all documents that identify the court in which each such claim or suit was filed, the nature and extent of the injuries for which damages were sought, the identities of all parties to each such claim or suit, and the disposition of each such claim or suit.

6

Request No. 7:

All documents concerning any conviction of Plaintiff for committing any violation of any criminal or juvenile law, code, or statute, including, but not limited to, all records revealing the nature of each such offense, the name of the court in which each such matter or proceeding was filed or prosecuted, each judgment or plea entered in connection with each such offense, the sentence or other punishment imposed for each such offense, the name and address of each institution in which Plaintiff was confined or referred for treatment or counseling in connection with each such offense, or the name and last known address of any probation, parole, or juvenile officer assigned to any such case.

Request No. 8:

All medical records, surgical records, mental/emotional health records, x-rays, radiographic films, pathology materials, including but not limited to slides and other tissue samples, or any other records or materials related to any diagnostic or treatment tests or procedures, financial records, bills, invoices, writings, notes or memoranda relating to all of the Plaintiff's physical, medical or mental/emotional conditions, illnesses or disabilities, including but not limited to those of doctors, nurses, practitioners, hospitals, clinics, institutions or other health care providers or third party private or governmental health or accident insurers, without regard to whether it is the Plaintiff's contention that such physical, medical or mental conditions, illnesses, or disabilities were caused in any way by the Defendants or any agent or employee of the Defendants.

7

Request No. 9:

With regard to any medical or hospital records of the Plaintiff referred to in Request No. 8 above which are in existence but are not physically in the possession or custody of the Plaintiff or the Plaintiff's attorney, but which are in the Plaintiff's control, the Defendants request that the Plaintiff execute authorizations to each doctor, health care professional or hospital where records exist, to allow the Defendant to obtain and examine copies of such records. (To facilitate your compliance with this request, copies of the required authorization forms are attached hereto).

Request No. 10:

All documents concerning any medical test, psychological test, psychiatric test, intelligence test, mental health test, or standardized test of any kind ever taken by or administered to Plaintiff.

Request No. 11

All documents concerning any drug or medication of any kind that was prescribed for, administered to, obtained by, provided to, or made available to Plaintiff.

Request No. 12

All documents in which Plaintiff or any other person described or referred to Plaintiff's use of any medication other than Neurontin, described or referred to any adverse event or "side effect" experienced by Plaintiff as a result of ingesting any medication other than Neurontin, described or referred to the effectiveness or ineffectiveness for Plaintiff of any medication other than Neurontin, or described or referred to any injury, damage, or harm that resulted from Plaintiff's ingesting any medication other than Neurontin.

8

Request No. 13:

All documents concerning any medical insurance which Plaintiff has or had in effect.

Request No. 14:

Each bottle and label in Plaintiff's possession, custody or control of any product, drug or device referred to in the Complaint or other drug (whether prescription or otherwise) taken by Plaintiff.

Request No. 15:

All calendars or diaries prepared by Plaintiff covering any portion of time of the matters alleged in the Complaint.

Request No. 16

Documents sufficient to show when Plaintiff first began suffering from headaches.

Request No. 17

Documents sufficient to show when Plaintiff first began suffering from neuropathic pain.

Request No. 18

Documents sufficient to identify each occasion that Plaintiff suffered from headaches.

Request No. 19

Documents sufficient to identify each occasion that Plaintiff suffered from neuropathic pain.

9

<u>Request No. 20</u>

All references to Neurontin or Plaintiff's headaches or neuropathic pain in calendars or diaries prepared by or pertaining to Plaintiff.

<u>Request No. 21</u>

Documents sufficient to identify each and every medical practitioner, health care practitioner, or professional of any kind whom Plaintiff visited for treatment for or help with his headaches.

<u>Request No. 22</u>

Documents sufficient to identify each and every medical practitioner, health care practitioner, or professional of any kind whom Plaintiff visited for treatment for or help with his neuropathic pain.

<u>Request No. 23</u>

Documents sufficient to show any medications, prescription or otherwise, that Plaintiff was prescribed, purchased, or otherwise received, the purpose of which was to help treat Plaintiff's headaches, and the time period(s) in which Plaintiff ingested each medication.

<u>Request No. 24</u>

Documents sufficient to show any medications, prescription or otherwise, that Plaintiff was prescribed, purchased, or otherwise received, the purpose of which was to help treat Plaintiff's neuropathic pain, and the time period(s) in which Plaintiff ingested each medication.

10

Request No. 25

All documents concerning whether any of the medications identified in the response to Request Nos. 23 and 24 were prescribed or purchased by Plaintiff, and used by Plaintiff, for an off-label use.

Request No. 26

All documents concerning whether any of the medications identified in the response to Request Nos. 23 and 24 were effective in treating Plaintiff's headaches and / or neuropathic pain.

Request No. 27

All documents concerning whether Plaintiff experienced any adverse effects or health concerns while he was ingesting any of the medications identified in the response to Request Nos. 23 and 24.

Request No. 28

All documents concerning when and why Plaintiff stopped taking each of the medications identified in the response to Request Nos. 23 and 24.

Request No. 29

Each and every prescription or record thereof which shows that Neurontin® ("Neurontin") was prescribed to Plaintiff.

Request No. 30

Each and every document or record that demonstrates the dosage of Neurontin prescribed to Plaintiff and the dosage actually ingested by Plaintiff.

Request No. 31

Documents sufficient to identify each and every health or medical practitioner who prescribed Neurontin to Plaintiff to help treat Plaintiff's headaches and / or neuropathic pain.

Request No. 32

All package inserts, labels, or other materials containing information about Neurontin received or obtained by Plaintiff.

Request No. 33:

All documents that state, describe, or refer to any benefit, efficacy, physical or chemical property, indication, contraindication, "side effect," adverse reaction, warning, precaution, or recommendation of or for Neurontin that Plaintiff read, viewed, received, or obtained.

Request No. 34

All documents that state, describe, or refer to Plaintiff's physician's reasons for prescribing Neurontin to Plaintiff.

Request No. 35

All documents concerning any communication by Plaintiff or any other person, included but not limited to Plaintiff's physician, about whether Neurontin was or appeared to be effective or ineffective for treating Plaintiff's headaches or neuropathic pain.

12

Request No. 36

All documents concerning any communication by Plaintiff or any other person, included but not limited to Plaintiff's physician, about whether Plaintiff complained of any possible side effects while taking Neurontin.

Request No. 37

All documents concerning any communications to Plaintiff from any person having, or purporting to have, knowledge or information pertaining to Neurontin.

Request No. 38:

All documents concerning any opinion by any person with an M.D., Ph.D., D.O., M.P.H., D. Sc., pharmacy degree, or by any similarly trained or educated health care professional or scientist concerning Neurontin.

Request No. 39:

All documents concerning any communication by any person, including your attorneys, to or from the Food and Drug Administration ("FDA"), including but not limited to online, phoned, mailed or faxed communications to the FDA's MedWatch program, regarding Neurontin, including the dates of any such communications.

Request No. 40:

All documents concerning any communication by any person about reporting adverse reactions to Neurontin to the FDA or to Pfizer.

Request No. 41:

All documents proposing, recommending, or in anyway suggesting that Defendants should add to or change the warnings and instructions provided to physicians or consumers about Neurontin.

13

Request No. 42:

All documents in which Plaintiff or any other person described or referred to Plaintiff's use of Neurontin, described or referred to any adverse event or "side effect" experienced by Plaintiff that occurred while Plaintiff was ingesting Neurontin, or described or referred to any injury, damage, or harm that allegedly resulted from Plaintiff ingesting Neurontin.

Request No. 43

All documents concerning any communication between Plaintiff, or anyone acting on Plaintiff's behalf, and any health care provider, pharmacy, or insurer relating to treatment with Neurontin or any other treatment for headaches or neuropathic pain.

Request No. 44:

All newspaper, magazine or medical journal articles concerning the use of Neurontin for the treatment of headaches or neuropathic pain.

Request No. 45:

All promotional or marketing materials or other documents concerning the use of Neurontin in the treatment of headaches or neuropathic pain that Plaintiff alleges were provided by Defendants to Plaintiff's physician.

Request No. 46:

All medical articles, treatises, research studies, publications, or other documents concerning the use of Neurontin for the treatment of headaches or neuropathic pain that were reviewed or relied upon by Plaintiff's physician.

14

Request No. 47

All documents concerning any statements made by Defendant to the physician who prescribed Neurontin to Plaintiff.

Request No. 48

All documents showing that the physician who prescribed Neurontin to Plaintiff attended any of the events referred to in Paragraphs 65, 75, 81, 86, 90, 91, 129, 150, 157, 162, 179, 189-192, 197, 220, and 225 of the Complaint.

Request No. 49

All documents indicating that the physician who prescribed Neurontin to Plaintiff received a payment such as those referenced in Paragraphs 104, 226 and 229 of the Complaint, or participated in a study like those described in Paragraph 229 of the Complaint.

Request No. 50

All documents concerning any advertisement Plaintiff saw regarding Neurontin.

Request No. 51

All documents containing information about the approved indications for Neurontin or that indicate that Neurontin was not approved by the FDA for the treatment of headaches or neuropathic pain.

Request No. 52

All documents concerning whether Plaintiff is taking or has taken at any time any drugs besides Neurontin for an off-label use.

15

Request No. 53

All documents concerning any statements made by Defendants to Plaintiff about Neurontin.

Request No. 54

All documents concerning any alleged misrepresentation(s) or any allegedly false, fraudulent, misleading, or deceptive statements made by Defendants concerning Neurontin.

Request No. 55:

All documents that state, record, list, or refer to any fee, expense, cost, or item of pecuniary expense or loss of any kind for which Plaintiff seeks to recover compensatory damages in this action, including medical, legal, counseling, administrative, travel, and other costs, damages, or expenses.

Request No. 56

All documents concerning any payment made by Plaintiff or on Plaintiff's behalf for the receipt or administration of Neurontin, including but not limited to, statements, invoices, bills, receipts, cancelled checks, credit card statements, or other proof of payment.

Request No. 57

All forms submitted to insurance carriers, company health plans, or any other entity concerning Neurontin, including but not limited to documents seeking pre-approval to use Neurontin and documents seeking reimbursement of any amount for the costs of Neurontin.

16

Request No. 58

All records showing whether Plaintiff was reimbursed in any amount for the costs of Neurontin and showing the amount of the reimbursement.

Request No. 59

All documents in the possession of Plaintiff or Plaintiff's attorneys concerning Neurontin that were provided by non-parties to any of the parties in the civil action *United States of America ex rel. David Franklin v. Parke-Davis, et al.*, C.A. No. 96-11651-PBS (D. Mass.).

Request No. 60

All documents reviewed by any expert retained by Plaintiff to testify at trial in this Action, or any expert whom Plaintiff intends to call as a witness at trial.

Request No. 61

All documents prepared by any expert retained by Plaintiff to testify at trial in this Action.

Request No. 62

The complete file and/or working papers of any expert whom Plaintiff intends to call as a witness at trial.

Request No. 63

The current resume or curriculum vitae of any expert whom Plaintiff intends to call as a witness at trial.

Request No. 64

All reports of any expert whom Plaintiff intends to call as a witness at trial.

17

Request No. 65

All drafts of all reports of any expert whom Plaintiff intends to call as a witness at trial.

Request No. 66

All notes prepared by any expert whom Plaintiff intends to call as a witness at trial.

Request No. 67

All documents that you provided to any expert whom Plaintiff intends to call as a witness at trial.

Request No. 68

All documents concerning communications between Plaintiff and any expert whom Plaintiff intends to call as a witness at trial.

Request No. 69

All documents relied upon by any expert whom Plaintiffs intend to call as a witness at trial.

Request No. 70

All documents that you contend provide support or evidence of the allegation in paragraph 22 of the Complaint that "Parke-Davis knew there was no scientific rationale for Neurontin being effective for bipolar disorder, acute mania, social phobia and panic disorder."

Request No. 71

All documents that you contend provide support or evidence of the allegation in paragraph 29 of the Complaint that "Parke-Davis only intended to publish studies that generated positive results."

Request No. 72

All documents that you contend provide support or evidence of the allegation in paragraph 31 of the Complaint that "the marketing enterprises Parke-Davis conducted routinely engaged in acts of mail fraud, wire fraud, commercial bribery, unfair and deceptive trade practices and other unlawful conduct."

Request No. 73

All documents that you contend provide support or evidence of the allegation in paragraph 42 of the Complaint that "Defendants hid their involvement in the promotion of off-label information and mislead physicians into believing that the physicians who promoted Neurontin were independent or not otherwise part of the enterprise Parke-Davis created to market Neurontin off-label."

Request No. 74:

All documents that you contend provide support or evidence of the allegation in paragraph 44 of the Complaint that "physicians who attended these events were deceived into thinking that the events were educational in nature and independent from the control of the Defendants."

Request No. 75

All documents that you contend provide support or evidence of the allegations in paragraph 45 of the Complaint that Defendants engaged in practices of "(a) deliberately

19

misrepresenting the safety and medical efficacy of Neurontin for a variety of off-label uses; (b) knowingly misrepresenting the existence and findings of scientific data, studies, reports and clinical trials concerning the safety and medical efficacy of Neurontin for a variety of off-label uses; (c) deliberately concealing negative findings or the absence of positive findings ... (d) misrepresenting the credentials and qualifications of certain of Defendants' employees ... (e) wrongfully and illegally compensating physicians for prescribing Neurontin for various off-label uses; (f) knowingly publishing articles, studies and reports misrepresenting the scientific credibility of data and touting the medical efficacy of Neurontin for off-label uses; (i) intentionally misrepresenting and concealing Defendants' role and participation [in various events and publications]; and (j) intentionally misrepresenting and concealing the financial ties between the Defendants and other participants in the Enterprise."

Request No. 76

All documents that you contend provide support or evidence of the allegation in paragraph 53 of the Complaint that unrestricted grants in support of medical education events "were expressly provided for the purpose of obtaining a program that extolled the use of Neurontin for unapproved indications."

Request No. 77

All documents that you contend provide support or evidence of the allegation in paragraph 55 of the Complaint that "the real purpose of [Consultants' Meetings] was to expose the attendees to Neurontin's uses for non-epilepsy treatment."

20

Request No. 78

All documents that you contend provide support or evidence of the allegation in paragraph 56 of the Complaint that "the vendor participants (with the assistance of the participating physicians and the Defendants) intentionally designed the programs so that the attendee physicians would not receive fair and balanced information."

Request No. 79

All documents identifying each study Plaintiff claims contains "negative clinical trial results that demonstrated that Neurontin was no more effective than a placebo for several off-label conditions," as referenced in paragraph 56 of the Complaint; and for each such study provide all documents showing the date the study was undertaken, whether it was sponsored by Defendants, and the date the results of the study were released.

Request No. 80

All documents that you contend provide support or evidence of the allegation in paragraph 115 of the Complaint that "Publications that Defendants distributed as part of their 'publication strategy' intentionally misrepresented Defendants' role in the creation and sponsorship of the publications."

Request No. 81

All documents that you contend provide support or evidence of the allegation in paragraph 128 of the Complaint that "the Off-Label Promotion Enterprise routinely and knowingly provided false, inaccurate, misleading, distorted, unfair and unbalanced information about Neurontin's use for unapproved indications."

21

Request No. 82

All documents that you contend provide support or evidence of the allegation in paragraph 132 of the Complaint that "Defendants ... deliberately suppressed negative studies" about pain.

Request No. 83

All documents that you contend provide support or evidence of the allegation in paragraph 210 of the Complaint that "Defendants elected to pay kickbacks and otherwise provide participant and attendee physicians with items of substantial value to induce them to listen to the off-label marketing pitch, to prescribe Neurontin, and to recommend Neurontin to other physicians."

Request No. 84

All documents that you contend provide support or evidence of the allegation in paragraph 235 of the Complaint that "Pfizer has routinely marketed Neurontin for off-label indications up until May of 2004."

Request No. 85

All documents supporting, rebutting, or otherwise relating in any way to the allegations of the Complaint, including but not limited to all documents reviewed in advance of, or relied on in, drafting the Complaint.

Request No. 86

All documents concerning Neurontin that have not been provided in response to any other Request.

22

Request No. 87

All documents concerning communications between Plaintiff and Pfizer, Warner-Lambert, or Parke-Davis that have not been provided in response to any other Request.

Dated:  New York, New York
        May 2, 2005

                                DAVIS POLK & WARDWELL

                                By:  _____
                                     James P. Rouhandeh
                                     James E. Murray

                                450 Lexington Avenue
                                New York, New York  10017
                                (212) 450-4000

                                HARE & CHAFFIN

                                By:  _____
                                     David B. Chaffin
                                     BBO No. 549245

                                160 Federal Street
                                Boston, Massachusetts 02110
                                (617) 330-5000

                                Attorneys For Defendants Pfizer Inc. and
                                Warner-Lambert Company

23

**AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA**

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| Patient Address | | |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1.  This authorization may include disclosure of information relating to **ALCOHOL** and **DRUG ABUSE, MENTAL HEALTH TREATMENT**, to include psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2.  If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the appropriate State Division of Human Rights or City Commission of Human Rights, as these agencies are responsible for protecting my rights.

3.  I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4.  I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5.  Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6.  **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9(b).**

7. Name and address of health provider or entity to release this information:

8. Name and address of person(s) or category of person to whom this information will be sent:
**Debbie MacGregor, Esq., DAVIS POLK & WARDWELL, 450 Lexington Avenue, New York, NY 10017**

9(a). Specific information to be released:
☐ Medical Record from (insert date) _____ to (insert date) _____.
☐ Entire Medical Record, including patient histories, office notes (to include psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.

☐ Other: _____
_____

Include: *(Indicate by Initialing)*
_____ **Alcohol/Drug Treatment**
_____ **Mental Health Information**
_____ **HIV-Related Information**

**Authorization to Discuss Health Information**
(b) ☐ By initialing here _____ I authorize _____
          Initials                              Name of individual health care provider

to discuss my health information with my attorney, or a governmental agency, listed here:

_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: <br> ☐ At request of individual <br> ☐ Other: | 11. Date or event on which this authorization will expire: |
|---|---|
| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of this form.

_____          Date: _____
Signature of patient or representative authorized by law.

\* Human Immunodeficiency Virus that causes AIDS.

**EXHIBIT 44**