UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) |
| | ) |
| THIS DOCUMENT RELATES TO: | ) ) |
| ALL MARKETING AND SALES PRACTICES ACTIONS | ) ) ) |

MDL Docket No. 1629
Master File No. 04-10981
Judge Patti B. Saris
Mag. Judge Leo T. Sorokin

**DECLARATIONS FILED IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO EXTEND CLASS DISCOVERY SCHEDULE**

**[VOLUME I]**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL Docket No. 1629 Master File No. 04-10981 Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | ) ) | Mag. Judge Leo T. Sorokin |
| ALL MARKETING AND SALES PRACTICES ACTIONS | ) ) ) | |

**DECLARATION OF BARRY HIMMELSTEIN IN SUPPORT OF PLAINTIFFS'
MEMORANDUM IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO
EXTEND CLASS DISCOVERY SCHEDULE**

I, BARRY HIMMELSTEIN, hereby declare and state as follows:

1.      I am an attorney with the law firm of Lieff, Cabraser, Heimann &

Bernstein, LLP, Co-Lead Counsel for the Class Plaintiffs and Counsel for Class Plaintiff

ASEA/AFSCME Local 52 Health Benefits Trust ("ASEA"). I am a member in good standing of

the State Bar of California. I have personal knowledge of the matters stated herein, except as

otherwise noted. With respect to the matters as to which I have no personal knowledge, I have

been advised by colleagues that they are true. If called upon, I could testify competently thereto.

2.      I have been involved in the process of responding to discovery

propounded by Defendants' counsel and have participated in multiple meet-and-confer sessions

with Defendants' counsel. Along with my colleagues, I have had numerous communications

with Defendants' counsel, by letter, telephone, and email, in attempts to resolve outstanding

issues and to explain ASEA's position on various discovery matters.

477470.1

3.     Class Plaintiffs have offered to waive the discovery cutoff with respect to the depositions of the class representatives and those of the consumer class representatives' physicians. In a letter dated September 14, 2005, I explained our position to James Rouhandeh. A true and correct copy of that letter is attached hereto as Exhibit A.

4.     From the beginning of discussions regarding the treating doctors' depositions, I and other Class Plaintiffs' Counsel have made it clear that the depositions cannot go forward until the defendants have produced portions of the sales call database and the medical communications database relating to certain physicians, as well as all documents pertaining to events sponsored by Defendants (or their surrogates, the medical marketing firms) that these doctors attended. This information is clearly relevant and was requested by the Plaintiffs in March, almost six months ago. The only way for a fair and meaningful deposition to be taken, and taken only once, would be if it occurred after those documents were produced. The Plaintiffs offered to waive the class discovery cutoff with respect to the depositions of these treating physicians to help achieve this goal, so that the documents could be produced. I explained this to defense counsel both verbally and in the letter attached as Exhibit A.

5.     However, the Defendants have refused to produce any post-1998 documents relating to events attended by these physicians, on the grounds that it will require them to collect and search the files of numerous sales and marketing employees to identify events that these physicians attended after 1998. Defense counsel stated this in a letter dated September 16, 2005, sent by James Rouhandeh to me. A true and correct copy of that letter is attached hereto as Exhibit B. According to the defendants, until this Court rules on the discovery motion concerning the scope of discovery after 1998, it will not conduct any search. As this Court has not yet ruled, the Defendants have essentially refused to produce any such documents.

6.    A true and correct copy of the relevant pages of Defendants' First Set of Interrogatories to Plaintiff Gerald Smith is attached as Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 30, 2005

*s/s Barry Himmelstein*
**Barry Himmelstein, Esq.**

477470.1

# EXHIBIT A

# LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

ATTORNEYS AT LAW

EMBARCADERO CENTER WEST
275 BATTERY STREET, 30TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3339
TELEPHONE: (415) 956-1000
FACSIMILE: (415) 956-1008
mail@lchb.com
www.lchb.com

## FAX TRANSMITTAL

**DATE:**     September 14, 2005          **CLIENT-MATTER NO.:**  9082-0003

**FAX NUMBER**

**TO:**     James P. Rouhandeh
DAVIS POLK & WARDWELL ................................................. **212/450-3800**

**FROM:**     Barry R. Himmelstein

**RE:**     Neurontin Marketing, Sales Practices, and Products Liability Litigation

**COMMENTS:**     Please see attached.

Number of Pages Including This Sheet:       **3**

CONFIDENTIALITY NOTICE

The information contained in this telefacsimile message and the documents accompanying this transmission are transmitted by or on behalf of attorneys, and may contain confidential information which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in this transmission is strictly PROHIBITED. If you have received this transmission in error, please notify us immediately by telephone, mail the original transmission to us, and destroy any copies. Thank you.

**Please call (415) 956-1000 x3314 if you do not receive all pages.**

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

ATTORNEYS AT LAW

BARRY R. HIMMELSTEIN
PARTNER

EMBARCADERO CENTER WEST
275 BATTERY STREET, 30TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3339
TELEPHONE: (415) 956-1000
FACSIMILE: (415) 956-1008
mail@lchb.com
www.lchb.com

NEW YORK
WASHINGTON, D.C.
BEVERLY HILLS
NASHVILLE

September 14, 2005

<u>VIA FACSIMILE</u>
(212) 450-3800

James P. Rouhandeh
DAVIS POLK & WARDWELL
450 Lexington Ave.
New York, NY 10017

       Re:    In re Neurontin Marketing, Sales Practices, and Products Liability
              Litigation
              MDL Docket No. 1629
              <u>Client-Matter No. 9082-0003</u>

Dear Jim:

      We are entitled to obtain *all* documents pertaining to Neurontin "events" attended by the
class representatives' prescribing physicians (and their close colleagues) before those depositions
are taken. We requested these documents in our first RFP served back in March. As you know,
the consumer class representatives did not begin taking Neurontin until October 1999 (Smith)
and November 2003 (Kopa), respectively. Accordingly, even you have not disputed the
relevance of these documents, whether or not they were generated after 1998.

      Your proposal for a 120-day extension of class discovery does nothing to address our
concern, as you have stated that Pfizer is not even going to start looking for those documents
unless and until Magistrate Judge Sorokin rules against it on the pending motion re scope of
discovery, and that this search and subsequent production, once begun, will take far more than
120 days to complete. You have also frustrated our attempts to get these documents from the
third-party medical marketing firms via subpoena, by instructing them not to produce them until
your motion (which addresses only Pfizer's supposed burden, not theirs) is ruled upon.

      We are willing to waive the class discovery cutoff with respect to the depositions of the
consumer class representatives' physicians, so that a fair and meaningful deposition can be taken,
and taken only once, after the foregoing documents have been produced. We do not have the
same concerns or impediments with respect to the depositions of the consumer and TPP class

James Rouhandeh
September 14, 2005
Page 2

representatives. We remain willing to waive the cutoff as necessary to accommodate scheduling difficulties with respect to any of these depositions, which should proceed forthwith.

Very truly yours,

Barry R. Himmelstein

BRH/tks

473379.1

```
*********************
***   TX REPORT   ***
*********************
```

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 2672 |
| RECIPIENT ADDRESS | 1320#9082#3#12124503800# |
| DESTINATION ID | |
| ST. TIME | 09/14 14:02 |
| TIME USE | 01'15 |
| PAGES SENT | 3 |
| RESULT | OK |

## LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

### ATTORNEYS AT LAW

EMBARCADERO CENTER WEST
275 BATTERY STREET, 30TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3339
TELEPHONE: (415) 956-1000
FACSIMILE: (415) 956-1008
mail@lchb.com
www.lchb.com

## FAX TRANSMITTAL

**DATE:**    September 14, 2005        **CLIENT-MATTER NO.:**  9082-0003

**FAX NUMBER**

**TO:**    James P. Rouhandeh
DAVIS POLK & WARDWELL ................................................ 212/450-3800

**FROM:**    Barry R. Himmelstein

**RE:**    Neurontin Marketing, Sales Practices, and Products Liability Litigation

**COMMENTS:**    Please see attached.

Number of Pages Including This Sheet:    __3__

# EXHIBIT B

## DAVIS POLK & WARDWELL

| Fax Transmittal | Sender | | Sender E-mail Address | |
|---|---|---|---|---|
| **450 Lexington Avenue**<br>**New York, New York 10017**<br>**(212) 450-4000** | **James P. Rouhandeh** | | **rouhandeh@dpw.com** | |
| | Date | | Number of Pages (this page included) | |
| | **September 16, 2005** | | **3** | |
| | Sender Voice Number | | If problems receiving this fax, call | |
| | **212 450 4835** | | **212 450 5394** | |
| | Sender Fax Number | | Reference | |
| | **212 450 3835** | | **16590/014** | |
| To<br>**Barry Himmelstein, Esq.** | Fax Number<br>**(415) 956-1008** | Company<br>**Lieff, Cabraser, Heimann &<br>Bernstein, LLP** | | Recipient Phone Number<br>**(415) 956-1000** |
| **Thomas Sobol, Esq.** | **(617) 482-3003** | **Hagens Berman Sobol<br>Shapiro LLP** | | **(617) 482-3700** |

Message:

To ensure compliance with requirements imposed by the IRS, we inform you that, unless explicitly provided otherwise, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidentiality Note: This facsimile is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this facsimile or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this facsimile in error, please notify us immediately by telephone and return the facsimile by mail.

# DAVIS POLK & WARDWELL

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

1300 I STREET, N.W.
WASHINGTON, D.C. 20005

1600 EL CAMINO REAL
MENLO PARK, CA 94025

99 GRESHAM STREET
LONDON EC2V 7NG

15, AVENUE MATIGNON
75008 PARIS

MESSETURM
60308 FRANKFURT AM MAIN

MARQUÉS DE LA ENSENADA, 2
28004 MADRID

1-6-1 ROPPONGI
MINATO-KU, TOKYO 106-6033

3A CHATER ROAD
HONG KONG

JAMES P. ROUHANDEH
212 450 4835
james.rouhandeh@dpw.com

September 16, 2005

Re:    **In re Neurontin Marketing & Sales Practices Litigation, MDL No. 1629**

Barry R. Himmelstein, Esq.
Lieff, Cabraser, Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, Suite 3000
San Francisco, CA 94111

Dear Barry:

Your letter of yesterday mischaracterizes defendants' position. We are not
refusing to search for documents concerning events attended by plaintiffs Smith
and Kopa's physicians and their partners. As we explained in a September 7,
2005 letter to Messrs. Shevitz and Pavlack, in order for defendants to conduct a
search, plaintiffs or their physicians must identify events that these physicians
attended. Without some indication of events attended by these physicians you are
asking us to look for a needle in a haystack. Your proposal would require
defendants to collect and review *all* of their post-1998 sales and marketing
documents, without any evidence that these physicians attended any events. As
you know, plaintiffs' demand that defendants collect and review such documents
is subject to defendants' motion for a protective order. If plaintiffs have some
basis for believing that these physicians attended particular events, please let us
know. If plaintiffs have no such information now, plaintiffs will be able to ask
these physicians at their depositions if they attended any events. If the physicians
indicate what events they attended, if any, defendants will be in a much better
position to locate the documents that plaintiffs seek.

Your letter of yesterday also makes a false assertion concerning our
conduct with respect to third-party medical marketing firms. We have not given
these firms (or any other third parties) such instructions. As you know, however,

Barry R. Himmelstein, Esq.            2            September 16, 2005

the Court made clear that any ruling on defendants' motion for a protective order will apply to the scope of third-party discovery.

Finally, you indicate that the class plaintiffs are prepared to proceed with depositions. As we are still waiting for the individual plaintiffs to propose dates upon which they are available for deposition (since they were unwilling to proceed on the dates noticed), let this serve as a re-iteration of our request for their available dates. With respect to your client, ASEA, Nancy Pacharzina has informed us that while ASEA's two representatives are not available for deposition on the date noticed, they are available during the week of October 3, 2005. Accordingly, please ask them to reserve October 4 and 5 for deposition although our willingness to go forward on those dates depends on the status of document production by both ASEA and relevant third parties.

Sincerely yours,

James P. Rouhandeh

cc:    Thomas Sobol, Esq.

By Facsimile & Mail

# EXHIBIT C

8/2/05

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION ) ) ) ) | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS ) ) ) ) | Master File No. 04-10981 |
| | Judge Patti B. Saris |

### DEFENDANTS' FIRST SET OF INTERROGATORIES
### TO PLAINTIFF GERALD SMITH

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants Pfizer Inc. and Warner-Lambert Company (hereinafter "Defendants"), hereby request that in accordance with the Definitions and Instructions set forth, Plaintiff Gerald Smith answer the interrogatories listed below within thirty (30) days of the date of service hereof.

### DEFINITIONS

1.     The definitions contained in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts are incorporated herein by reference. Additionally, the following definitions apply.

2.     "Plaintiff" shall mean the Plaintiff Gerald Smith.

3.     "You" or "your" means Gerald Smith.

4.     "Pfizer" shall mean defendant Pfizer Inc. and any of its predecessors, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, and employees, including, but not limited to, Warner-Lambert Company and Parke-Davis, as a division of Warner-Lambert Company.

6.    To the extent that you view any interrogatory as vague or imprecise, counsel for defendants offers to confer with counsel for Plaintiff as to the intended scope of such interrogatory.

## INTERROGATORIES

Interrogatory No. 1:

Provide the identity and title of all persons who participated in the preparation of these Interrogatory responses, excluding counsel.

Interrogatory No. 2:

State Plaintiff's full name and any nicknames or aliases by which Plaintiff has ever been known; Plaintiff's present address, date of birth, and social security number; whether Plaintiff has ever been married, and, if so, the date of each marriage and the name and address of each spouse; and the name, address and birth dates of any children.

Interrogatory No. 3:

List the address(es) that Plaintiff resided at during the ten years prior to the matters alleged in the Complaint. As to each, state (a) the dates when Plaintiff resided at the address; and (b) the name and present address of each individual that resided with Plaintiff.

Interrogatory No. 4:

List the schools Plaintiff has attended, the years attended, and indicate for each school (a) whether Plaintiff graduated; and (b) whether Plaintiff obtained any degrees, and if so, the name of each degree obtained and the year in which it was obtained.

Interrogatory No. 5:

State the name and address of each of Plaintiff's employers. As to each job Plaintiff has held, state: (a) a description of the job; (b) Plaintiff's immediate supervisor; (c) the dates each employment commenced and ended; and (d) the reasons the employment ended.

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE NEURONTIN MARKETING, SALES )
PRACTICES, AND PRODUCTS LIABILITY )          MDL Docket No. 1629
LITIGATION )          Master File No. 04-10981
_____ )    Judge Patti B. Saris
)          Mag. Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO: )
)
ALL MARKETING AND SALES )
PRACTICES ACTIONS )
_____ )

### DECLARATION OF MICHAEL TABB IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO EXTEND CLASS DISCOVERY SCHEDULE

I, MICHAEL TABB, hereby declare and state as follows:

1.     I am an attorney licensed to practice law in the Commonwealth of

Massachusetts, and am a member of the law firm of Greene & Hoffman, P.C.  I am a member in

good standing of the bar of the Commonwealth of Massachusetts and the United States District

Court for the District of Massachusetts.  I have personal knowledge of the matters stated herein,

except as otherwise noted.  With respect to the matters as to which I have no personal

knowledge, I have been advised by colleagues that they are true.  If called upon, I could testify

competently thereto.

2.     Greene & Hoffman is co-lead counsel for the class plaintiffs in this

litigation and I am one of the attorneys at Greene and Hoffman who has been working on this

matter.  Additionally, I was one of the attorneys at Greene & Hoffman who represented the

Relator, David Franklin, in United States ex rel. Franklin v. Parke-Davis, a division of Warner

Lambert, No. 96-11651-PBS, United States District Court for the District of Massachusetts

- 1 -

("Franklin"). I have personal knowledge of the discovery propounded by the Relator in that action and the documents produced by the defendants, Parke-Davis and Pfizer, in response to those discovery requests. Parke-Davis and Pfizer, of course, are also the defendants in this litigation and they are represented by the same law firm, Davis Polk and Wardwell, who represented them in Franklin.

3.    In this litigation, I have been responsible for drafting discovery requests on behalf of the plaintiffs and monitoring Defendants' production of responsive documents and other materials. In this capacity, I have participated in multiple meet-and-confer sessions with Defendants' counsel. I have had numerous communications with Defendants' counsel--by letter, telephone, and email--in attempts to resolve outstanding issues relating to the Plaintiffs' discovery requests and to explain the Class Plaintiffs' position on these discovery matters. To a lesser extent, I have also been involved in the process of responding to discovery requests propounded by Defendants' counsel.

4.    As the Court is aware, some of the issues in this litigation are similar to those litigated in Franklin. In that case, Defendants produced over 200,000 pages of documents relating to the sales and marketing of Neurontin through 1998. In that case, however, the District Court imposed a geographical limitation. Defendants were only required to produce sales and marketing documents that were present in Parke-Davis's corporate headquarters and its Northeast Central Business Unit (or CBU). Defendants were not required to produce documents from its four other regional CBUs or its Managed Care CBU. Defendants have acknowledged that no such geographical limitation applies to their discovery obligations in this litigation.

5.    In April 2005, Plaintiffs served an extensive document request on Pfizer, seeking numerous categories of documents that were never produced in the Franklin Litigation.

-2-

Defendants objected to almost every request, and I (and other attorneys representing the Plaintiffs) made four trips to New York to meet-and-confer with Defendants regarding Defendants' responses to Plaintiffs' discovery requests and Defendants' document production. These sessions took place on May 17, 2005, May 24, 2005, June 6, 2005 and June 16, 2005. Shortly after the first meet and confer session, Defendants began to produce documents. My office has received copies of all the documents produced by Defendants in this litigation.

6.    Despite the fact that the vast majority of documents requested by the Plaintiffs concerned Defendants' sales and marketing practices relating to Neurontin, Defendants have failed to produce anything more than a smattering of sales and marketing documents that the Class Plaintiffs did not already possess at the outset of the litigation.    In response to this request for production of document, the Defendants have so far only produced the following documents that might be considered sales and marketing documents:[1]

a.    Documents purportedly representing marketing documents from Defendants' customer business units ("CBUs") outside of the Northeast CBU;

b.    Redacted copies of the Merlin and Phoenix databases (databases recording communications between third parties, including physicians, and the Defendants regarding clinical use of Neurontin); and

c.    4 Pages of profit and loss statements covering 1997 – 2000.

7.    Even these limited productions have been so thoroughly deficient as to be virtually meaningless.    With respect to the clinical databases, Merlin and Phoenix, the databases

---

[1] Defendants have also produced documents relating to the scientific issues raised in this action, including a copy of Neurontin's NDA, research reports concerning clinical trials conducted by Defendants, trial master files and case report forms, and a bibliography of third party literature on Neurontin. We understand that Defendants agreed, or were ordered, to produce most of these documents for the plaintiffs who had brought product liability claims against Defendants relating to Neurontin.

originally produced were defective. When Pfizer produced a working database, physicians'
names were redacted, rendering them completely useless to the Class Plaintiffs' investigation of
this case.

   8.  With respect to the CBU documents, the Defendants have so far only
produced a total of 8711 pages from the other five CBUs . Given that Defendants produced
200,000 pages in Franklin, and Judge Saris only ordered Defendants to produce documents for
one of the six CBUs, it is difficult to believe that the production of pre-1998 documents is
complete, Moreover, these 8711 pages overwhelmingly contain duplicative copies of journal
article reprints, as opposed to documents relating to actual CBU marketing.

   9.  Only a handful of CBU documents reference a CBU-specific marketing
event or activity. From the documents produced in Franklin, we can identify specific off-label
marketing events that occurred in CBUs other than the Northeast CBU and were funded by
Defendants . But when we examined the newly produced documents for information relating to
specific known events, there were no documents relating to them. In Franklin, we observed that
the planning and execution of Neurontin marketing events in the Northeast CBU generated a
significant amount of paper relating to organization, selection of attendees and speakers,
compensation, logistics, content, and similar matters. For the most part, such documents are
missing from the production, even though the Franklin documents confirm that such events
occurred in the other CBUs. Nor is there any records actual payments to a physician in these
other CBUs, even though the Class Plaintiffs have evidence that millions of dollars in such
payments were made to thousands of physicians around the country through all of the regional
CBUs.

10.    To further illustrate the type of relevant documents that have not been produced, Class Representative Smith's prescribing physician was not within the Northeast CBU, yet documents produced in <u>Franklin</u> indicate she attended (and was paid by Defendants to attend) at least two Neurontin marketing events, at least one of which discussed off-label use of Neurontin. Indeed, Defendants appear to have paid this physician to travel from Indianapolis to Pasadena in May 1997. Plaintiffs are also aware that the professional colleagues who worked with this physician on a day to day basis also attended numerous off-label Neurontin marketing events prior to 1998. But no documents relating to any of these events are contained in the documents produced by Defendants in this litigation.[2]

11.    Another obvious failure to produce promised documents relates to the separate CBU, known as the Managed Care CBU, that Defendants created for dealing with entities such as the Third Party Payors Plaintiffs in this litigation. Clearly, marketing to these entities is highly relevant to this action. Yet not a single document relating to the Managed Care CBU has been produced by Defendants, notwithstanding Defendants' promises that such documents shall be produced.

12.    There are many other examples of categories of documents that defendants promised months ago to produce, but which have not been produced. For example, shortly after the meet and confers began, in May 2005, Defendants promised to produce a working copy of their sales call database, which would identify when Parke-Davis sales reps met with physicians

---

[2] Documents also show that the treating physician for Class Plaintiff Kopa attended a half-dozen events during 1995 to 1997, and that he was paid over $3,500 for speaking and attending these events. Of course, Plaintiffs have also not received copies of documents relating to Neurontin events either of the class representatives' prescribing physicians attended post-1998. Given that both physicians had attended such events prior to 1998 (and one was even trained by Parke-Davis to be a speaker in support of Neurontin), it is vital Plaintiffs receive discovery relating to the Neurontin programs and marketing these doctors were exposed to prior to the taking of their depositions.

and summarize what was discussed at their meeting. Defendants have still not produced this
database and have refused to inform us when they expect to be able to produce the database.

13.    Correspondence between our office and Defendants' counsel documents
unfulfilled commitments by Defendants to provide documents or necessary information relating
to discovery. On July 8, 2005, my colleague, Tom Greene, sent Defendants a letter identifying at
least 25 discovery issues that were unresolved after the meet and confer meetings held on May
17th, May 24th, June 6th and June 16th. A true and correct copy of that letter is attached as
Exhibit A to this declaration.

14.    On July 19, 2005, James Murray, one of the attorneys for the Defendants
responded to that letter, a true and correct copy of which is attached as Exhibit B to this
declaration. Among other things, Mr. Murray committed to produce the following documents,
or information regarding the existence of the following documents and Defendants' position
regarding production:

a.    The "Gideon" database, which contains information regarding
payments to physicians in connection with clinical studies;

b.    database records which reflect medical liaison contacts with
physicians;

c.    Communications with Micromedex, a company that publishes
purportedly unbiased information relating to off-label uses of drugs;

d.    a "snapshot" of IMS data, which, if still extant, would describe
physicians prescription writing of Neurontin during the time frame;

e.    Documents relating to public statements made by Defendants
concerning Neurontin's failure to be approved for monotherapy;

- 6 -

        f.      Marketing documents generated or in the possession of

Defendants' Finance Department;

        g.     Pfizer's due diligence files relating to Neurontin generated in

connection the merger between Warner-Lambert and Pfizer;

        h.     Profit and loss statements for years outside of 1997 – 2000;

        i.      All journal articles relating to off-label uses filed with the FDA

pursuant to the FDA Modernization Act of 1997; and

        j.      Lists identifying Defendants' sales representative and medical

liaisons who had left the company at or about the time of the merger.

        15.    For each of these items, counsel for the Defendants indicated that they

would either produce such documents or get back to us with more information. I spoke to Mr.

Murray on the phone in early August to confirm that we would receive follow ups on each of

these items. Yet, thus far, Defendants have not produced a single page relating to any of these

items, or made any effort to update us on the status of these outstanding discovery items.

        16.    In my August phone call with Mr. Murray, Mr. Murray informed me that

although Defendants were willing in principle to produce many of the documents they had

promised, including many of the documents referenced in Exhibits A and B, in practice he

anticipated few documents would in fact be produced until Defendants knew whether they would

have to produce documents subsequent to 1998. Mr. Murray informed me that it was

Defendants' position that it was burdensome to have to search for pre-1998 documents and then

have to make a subsequent search for post 1998 documents if the Court ruled that Defendants

were required to produce them. He informed me that with regard to marketing documents, it

was likely Defendants would not search for responsive documents until it knew the scope of discovery.

17.     Defendants have been true to their word.  Since my phone conversation with Mr. Murray, with the exception of approximately 4,000 pages of CBU documents produced on August 17, 2005, we have received no sales and marketing documents from Defendants or any further information regarding when, or if, we will receive more.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 30, 2005                    ___ *s/s Michael Tabb*
                                             Michael Tabb, Esq.

477562.1

# EXHIBIT A

# GREENE & HOFFMAN

PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

FACSIMILE
(617) 261-3558
EMAIL
office@greenehoffman.com



125 SUMMER STREET, SUITE 1410
BOSTON, MASSACHUSETTS 02110
(617) 261-0040
www.greenehoffman.com

July 8, 2005

James P. Rouhandeh, Esq.
James E. Murray, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Re:    *In Re Neurontin Marketing and Sales Practices Litigation*
       *MDL No. 1629*

Dear Counsel:

I am writing to follow up with you on the issues that remain unresolved from the meet and confer sessions regarding Defendants' responses to Plaintiffs' document requests and interrogatories in the above-referenced matter.

As you are undoubtedly aware, several issues remain unresolved from the meet and confer sessions that took place on May 17th, May 24th, June 6th and June 16th, 2005. For each of the following issues, you promised that you would get back to us after consulting with your client and/or after you had a chance to conduct further investigation. To date, we are still awaiting responses from you. The following is a list of the remaining open issues:

1.    You agreed to tell us whether or not you would produce a copy of the Cline, Davis, Mann/Sudler Hennessey documents that were produced to the government in the Franklin case (a copy set of which was made by your firm).

2.    You agreed to inform us whether the Gideon database (containing, in part, payments to physicians to conduct medical studies) exists and identify the fields of data in this database, and whether you will produce it.

3.    You agreed to inform us of the types of documents that exist that relate to Neurontin clinical trials.

4.    You agreed to inform us whether the defendants would provide us with all drafts of research reports and clinical design documents regarding the Neurontin clinical trials.

James E. Murray, Esq.
July 8, 2005
Page 2

5.   With respect to the approximately 1,000 boxes of documents in Ann Arbor, although
     you agreed to produce an index, we have not received it.

·6.   Will you permit Plaintiffs' counsel to inspect the 1,000 boxes of documents in Ann
     Arbor, and if so, when?

7.   With respect to Document Request No. 53, whether the medical liaison database
     existed prior to December 31, 1998, and if it did, what fields were part of that
     database.

8.   With respect to Document Request Nos. 105 and 121-122, whether you will produce
     documents concerning the "Identified Doctors."

9.   Whether a database exists concerning payments for clinical trials.

10.  Whether Defendants communicated directly with Micromedex.

11.  When you will provide Plaintiffs with a copy of the index for the Ann Arbor boxes.

12.  Whether documents relating to clinical trials that were conducted outside of Ann
     Arbor have been sent to Ann Arbor for storage.

13.  What data the Defendants have from the IMS database (the "snapshot").

14.  With respect to Document Request Nos. 172-173:
     a.  Whether Defendants made any public statements regarding the FDA's denial of
         Defendants' application for approval of Neurontin as monotherapy for epilepsy.
     b.  If they did, whether you will produce responsive documents.

15.  With respect to Document Request Nos. 174-175, whether you will look in the
     finance department for these documents.

16.  With respect to Document Request No. 208, whether you will produce documents
     created as part of Pfizer's due diligence.

17.  With respect to Document Request No. 240, whether you have found profit and loss
     statements, and if so, when you will produce them. (On June 16, 2005, you
     represented that you thought that hard copy profit and loss statements had been found,
     and that you would produce them within two weeks).

18.  With respect to Document Request Nos. 246-249, whether you will search for and
     produce documents related to FDAMA filings.

James E. Murray, Esq.
July 8, 2005
Page 3

19.  With respect to Document Request No. 250, whether you will search the finance
     department for responsive documents.

20.  With respect to Interrogatory No. 4, whether you will provide us with a list of
     Clinical Trials, Medical Studies, and Case Reports that Defendants funded, and if so,
     whether you will respond to Interrogatory No. 4 with respect to at least those studies.

21.  Whether you will stipulate to the authenticity of the documents that you have
     produced.

22.  With respect to Interrogatory No. 5, whether you are willing to discuss a mutually
     acceptable definition of "effective," and then respond to the interrogatory on the
     bases of such a definition.

23.  With respect to Interrogatory Nos. 18 and 19, whether you will respond to the extent
     the interrogatory calls for the identification of all marketing strategies adopted,
     pursued, formulated, planned, and/or implemented by Defendants for Neurontin prior
     to January 1, 1999.

24.  With respect to Interrogatory No. 28, whether you will provide a list of all Warner-
     Lambert sales representatives.

25.  With respect to Interrogatory No. 34, whether you will respond.

     Note that we produced Plaintiffs' first wave of documents within 30 days of receiving
Defendants' document requests and responded within a week to the vast majority of issues raised
by counsel at the June 29, 2005 meet and confer regarding Plaintiffs' responses to Defendants'
document requests and interrogatories. So that there is no misunderstanding, if we do not
receive a substantive response to each of these issues within seven (7) days we will consider the
remaining unresolved issues to be ripe for a motion to compel.

                                        Very truly yours,

                                        Thomas M. Greene

TMG/sc

James E. Murray, Esq.
July 8, 2005
Page 4

cc:    Don Barrett, Esq.
        Daniel E. Becnel, Jr., Esq.
        James R. Dugan, Esq.
        Barry Himmelstein, Esq.
        Thomas Sobol, Esq.
        Linda P. Nussbaum, Esq.
        Richard Shevitz, Esq.
        Ronald Aranoff, Esq.

# EXHIBIT B

# DAVIS POLK & WARDWELL

| Fax Transmittal | Sender | Sender E-mail Address |
|---|---|---|
| 450 Lexington Avenue<br>New York, New York 10017<br>(212) 450-4000 | **Deborah L. MacGregor** | **deborah.macgregor@dpw.com** |
| | Date | Number of Pages (this page included) |
| | **July 19, 2005** | |
| | Sender Voice Number | If problems receiving this fax, call |
| | **212 450 4853** | **212 450 5393** |
| | Sender Fax Number | Reference |
| | **212 450 3853** | **In re Neurontin** |

| To | Fax Number | Company | Recipient Phone Number |
|---|---|---|---|
| **Thomas M. Greene, Esq.** | **617-261-3558** | **Greene & Hoffman, P.C.** | **617-261-0040** |

Message:

To ensure compliance with requirements imposed by the IRS, we inform you that, unless explicitly provided otherwise, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidentiality Note: This facsimile is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this facsimile or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this facsimile in error, please notify us

# DAVIS POLK & WARDWELL

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

212 450 4084

1300 I STREET, N.W.
WASHINGTON, D.C. 20005

1600 EL CAMINO REAL
MENLO PARK, CA 94025

99 GRESHAM STREET
LONDON EC2V 7NG

15, AVENUE MATIGNON
75008 PARIS

MESSETURM
60308 FRANKFURT AM MAIN

MARQUÉS DE LA ENSENADA, 2
28004 MADRID

1-6-1 ROPPONGI
MINATO-KU, TOKYO 106-6033

3A CHATER ROAD
HONG KONG

JAMES E. MURRAY
212 450 4084
james.murray@dpw.com

July 19, 2005

Re:    In re Neurontin Marketing and Sales Practices Litigation, MDL No. 1629

Thomas M. Greene, Esq.
Greene & Hoffman, P.C.
125 Summer Street
Boston, MA 02110

Dear Mr. Greene:

I write in response to your letter dated July 8, 2005 regarding certain discovery matters, in which you request responses to 25 enumerated issues that remain outstanding. Without waiving any general or specific objections to Plaintiffs' discovery requests, I address each point below.

1. (Cline, Davis, Mann/Sudler Hennessey documents): At our final meet and confer session on June 16, 2005, I informed you that we would provide responsive documents contained in the boxes of vendor materials in our possession that are from the time period prior to December 31, 1998. I have also informed you on several occasions that, while we do have documents from these vendors, I do not know if these boxes represent a "copy set" of all documents, or a portion of the documents, produced to the government.

2. and 9. ("Gideon" database and clinical trial payments): Although the "Gideon" database is not the correct name, we have located at least one database that contains information regarding payments to physicians relating to clinical studies. This will confirm that we will produce the relevant portions of this database, and will continue to search for any other databases containing such information.

3., 4. and 20. (Neurontin clinical trial documents and lists of clinical trials): We have had some meetings and have scheduled additional meetings this week with personnel in clinical affairs, and should be able to provide information relating to these issues following those meetings.

Thomas M. Greene, Esq.                    2                    July 19, 2005

5., 6., and 11. (Trial Master Files ("TMFs") and Case Report Forms ("CRFs")): This will confirm that we will make available to plaintiffs the boxes in Ann Arbor relating to clinical trials that we have described to you. Please note that pulling and preparing the boxes for inspection is a time consuming process, and we will require notice by plaintiffs of when they wish to commence inspection. We will provide the index for these boxes by Friday of this week.

7. (medical liaison database): We have not determined whether a database exists which contains information regarding medical liaison activity prior to December 31, 1998. As we have previously stated, we have no objection to producing such portions of a database if it exists.

8. (documents concerning "Identified Doctors"): It is not practical for us to conduct a search for information by doctor name, as it is far too burdensome to search files this way. To the extent that we are producing information in response to other of your requests, you will of course receive such information relating to the Identified Doctors. We will also consider any specific requests for particular information relating to the identified doctors that you may make.

10. (communications with Micromedex): While your letter raises the question "whether Defendants communicated directly with Micromedex," we assume, based on our prior discussions, that you are asking whether Pfizer discussed the Franklin litigation with Micromedex. We are currently not aware that any such discussion took place, but we are continuing our search for the answer to this inquiry.

12. (clinical trials conducted outside Ann Arbor): This will confirm that we understand that documents relating to clinical trials that were conducted outside Ann Arbor were sent to Ann Arbor for storage.

13. (IMS data): As we have informed you, Defendants' normal practice is to maintain IMS data for a rolling 24 month period. We are in the process of trying to determine if we have any additional IMS data from other time periods.

14. (public statements regarding monotherapy): As you are no doubt aware, Plaintiffs can access public statements made by Defendants through any of a number of public search engines, including Westlaw and Lexis-Nexis. We agree to search the files of the appropriate department at Pfizer to determine if any files from Warner-Lambert containing responsive information exist.

15. and 19. (willingness to search finance department): We have spoken with people in the Pfizer finance department and are in the process of determining whether they have documents that relate to the marketing of Neurontin prior to December 31, 1998. If so, we will inform you and will review and produce responsive documents.

Thomas M. Greene, Esq.                   3                   July 19, 2005

16. (documents relating to Pfizer's due diligence): We will conduct a search to determine if any non-privileged or not otherwise protected reports were created by Pfizer prior to the merger relating to Neurontin.

17. (Neurontin profit and loss statements): We have located hard copies of the Neurontin profit and loss statements from 1997 – 2000 and they are enclosed herewith. Please note that they bear the legend "Confidential," designating that they should be treated as "Confidential" pursuant to the Protective Order entered by the Court on January 10, 2005. We will include these documents with bates numbers in our next production. We are continuing to look for profit and loss statements from the remaining years and will provide them to you as soon as we locate them.

18. and 25. (articles under FDAMA): Based on our prior discussions, the issue relating to Interrogatory No. 34 was not whether we would respond to the interrogatory. The issue is whether Warner-Lambert filed articles pursuant to FDAMA. We are currently not aware that Warner-Lambert filed any such articles, but we are continuing our search for the answer to this inquiry.

21. (stipulation of authenticity): For the reasons included in our motion for a protective order relating to Plaintiffs' more than 44,000 requests for admission, and for the reasons stated by Magistrate Judge Sorokin at the July 14, 2005 hearing, we will not stipulate to the authenticity of all documents we have produced.

22. (definition of effectiveness): It would be entirely premature at this stage of the litigation to respond to Interrogatory Number 5, as the question whether Neurontin is effective, ineffective, or possibly effective for the treatment of various conditions is properly the subject of expert testimony. We note that we have agreed, however, to produce documents relating to the efficacy of Neurontin for various off-label uses.

23. (identification of marketing strategies): As you are aware, Defendants have produced from the files of those persons responsible for the marketing of Neurontin documents relating to the marketing of Neurontin from the period prior to December 31, 1998. The burden of identifying marketing strategies referenced within those documents is the same for Plaintiffs as it would be for Defendants and, accordingly, Plaintiffs should review the documents to locate information responsive to this request.

24. (lists of sales representatives and medical liaisons): While your letter references lists of sales representatives and medical liaisons, we assume, based on the referenced Interrogatory Number 28 and our prior discussions, that you are actually seeking information relating to those sales representatives and medical liaisons who were terminated within one year of the merger between Warner-Lambert and Pfizer. We are in the process of determining whether this

Thomas M. Greene, Esq.                4                July 19, 2005

information is available within one accessible location, and will let you know once we find out.

Finally, we do not intend to respond here to your assertions regarding Plaintiffs' responses to Defendants' discovery requests, but please do not take our silence as any indication that we agree with any or all of those statements.

Please do not hesitate to call me if you have any questions regarding the foregoing.

Sincerely yours,

James E. Murray

By Facsimile & Mail