UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE NEURONTIN MARKETING, SALES ) 
PRACTICES, AND PRODUCTS LIABILITY ) MDL Docket No. 1629
LITIGATION ) Master File No. 04-10981
) Judge Patti B. Saris
THIS DOCUMENT RELATES TO: ) Mag. Judge Leo T. Sorokin
)
ALL MARKETING AND SALES )
PRACTICES ACTIONS )
)

**DECLARATIONS FILED IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO EXTEND CLASS
DISCOVERY SCHEDULE**

**[VOLUME II]**

477565.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL Docket No. 1629 Master File No. 04-10981 Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | ) ) | Mag. Judge Leo T. Sorokin |
| ALL MARKETING AND SALES PRACTICES ACTIONS | ) ) ) | |

## DECLARATION OF DOUGLAS R. PLYMALE IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO EXTEND CLASS DISCOVERY SCHEDULE

I, DOUGLAS R. PLYMALE, hereby declare and state as follows:

1.      I am an attorney with the law firm of Dugan & Browne, PLC, Counsel for Class Plaintiff Louisiana Health Service Indemnity Company, dba BlueCross/BlueShield of Louisiana ("Louisiana Health"). I am a member in good standing of the State Bar of Louisiana and have been admitted to the District Court for the Eastern District of Louisiana. I have personal knowledge of the matters stated herein, except as otherwise noted. With respect to the matters as to which I have no personal knowledge, I have been advised by colleagues that they are true. If called upon, I could testify competently thereto.

2.      I have been involved in the process of responding to discovery propounded by Defendants' counsel and have participated in multiple meet-and-confer sessions with Defendants' counsel. Along with my colleagues, we have had numerous communications with Defendants' counsel, by letter, telephone, and email, in attempts to resolve outstanding

issues and to explain Class Plaintiffs' position on various discovery matters.

3.    We made an initial production, including all claims data and other documents, totaling over 1300 pages of documents on August 18, 2005. This document production was supplemented on August 25, 2005 with a production of over 22,000 pages of documents. We encountered some difficulties with regard to the Bates numbering of the supplemental production which delayed it by approximately a week. Because of formatting problems, the documents had to be printed off of a disc and rescanned, prior to production. This took an extra seven days to complete. However, I kept defense counsel apprised of the problems, and they were aware of the schedule of production.

4.    Despite Defendants' indications to the contrary in its motion, I did in fact send a letter on August 26, 2005, which indicated to Defendants that Louisiana Health's production of documents was complete, except for pharmacy agreements which—due to their confidential nature—were made available for review only by limited people. I indicated that Louisiana Health was not withholding documents based on the burdensome nature of the Request, but that it would be limiting its search to the files of decision makers in response to a mere 12 out of 126 Requests, which had been previously explained to defense counsel over many hours of meet-and-confer sessions. Included with the letter were also an index of Requests for Production of Documents to which the documents produced were responsive, an index of field codes for both claims databases, a list of provider names and addresses, and a summary of the meet and confer sessions indicating whether Louisiana Health was limiting its production of documents based on an objection.   A true and correct copy of this letter dated August 26, 2005 is attached to this declaration as Exhibit A.

5.    Since August 26, 2005, both our office and employees, as well as the

-2-

office and people of our client, Louisiana Health—located in the greater New Orleans and Baton Rouge areas—have been greatly affected by the two recent hurricanes which have devastated the region. Because of this, we have not received any correspondence sent during the course of the last month and have lost or do not have access to many files.

      6.     I was recently contacted via email by Reema Abdelhamid, an associate at Davis, Polk, who stated that Defendants had served a Rule 30(b)(6) motion on September 9, 2005, noticing the deposition for October 3, 2005. We did not receive this deposition notice, due to the hurricane. I informed Ms. Abdelhamid that we had not received it, and did not plan on producing a witness on that date. I also informed her that, as soon as we were able, we would let her know alternative dates for the deposition.

      I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 30, 2005

                              _s/s Douglas R. Plymale_
                              **Douglas R. Plymale, Esq.**

# EXHIBIT A



# Dugan&Browne
### A Professional Law Corporation

Douglas R. Plymale, Ph.D.
Attorney at Law
(504) 648-0180
doug@duganbrowne.com

August 26, 2005

**Via U.S. Mail and Facsimile to: (212) 450-3800**

Patrick J. Murray, Esq.
450 Lexington Avenue
New York, NY 10017

    Re:    In re Neurontin Marketing & Sales Practices Litigation, MDL No. 1629

Dear Mr. Murray:

        By now you should have received four CD's from Ed Notargiacomo that contain Blue Cross/Blue Shield of Louisiana's ("BCBSLA") document production. If not, please contact me immediately. All of those documents should be considered "Confidential." Please find enclosed the following supplemental information:

1)     Index of Requests for Production to which the documents produced are responsive
2)     Field codes for both claims databases
3)     A list of provider names and addresses (on disk)
4)     Summary of whether my client is withholding or limiting the search for documents based on an objection as discussed in our Meet and Confers
5)     List of BCBSLA "decision makers" regarding Neurontin

        The organizational charts for January through May 1999 were created by BCBSLA's Human Resources Department with Org Plus software. These files are in ".OPX" format. BCBSLA no longer owns a copy of the Org Plus software, BCBSLA's Human Resources Department did not retain hard copies of these charts, and BCBSLA has not been able to locate hard copies of these charts from any other sources. Please note that there are other organizational charts for April and May 1999 that are in Power Point or MS Word format which duplicate the information in those charts in the .OPX format.

        BCBSLA is withholding its pharmacy agreements due to confidentiality clauses within those agreements. However, BCBSLA is willing to produce the pharmacy agreements only if they are limited to the 'eyes only' of defendant's experts and outside counsel.

        In response to Requests for Production (RFP) numbers 25 and 30, BCBSLA does have a copy of the Physician's Desk Reference that it will make available for review.

650 Poydras St., Suite 2150, New Orleans LA 70130  |  ph (504) 648-0180  |  fx (504) 648-0181  |  toll free 1-866-328-7670  |  www.DuganBrowne.com

Dugan&Browne
A Professional Law Corporation

In response to RFP numbers 4, 20, 21 & 22, BCBSLA searched for responsive documents (particularly its Network News, which are newsletters sent to providers) and found no responsive documents.

Finally, BCBSLA does not have any responsive documents for the following RFP's: 3, 4, 8, 9, 11, 12, 14, 15, 16, 17, 20, 21, 22, 23, 28, 29, 33, 34, 36, 38, 42, 43, 47, 61, 64, 65, 67, 75, 76, 77, 83, 84, 85 & 91.

If you have any questions, please do not hesitate to call. I am,

Very truly yours,

Douglas R. Plymale, Ph.D.

Enclosures

Master List – Neurontin Documents

## DOCUMENT                                                    RESPONSIVE TO RFP #:

Organizational Charts                                          RFP #39

**1994**
        Officers 11/94

**1995**
        Officers 12/95

**1996**
        Benefits Services & Managed Care Division – Benefits Administration 10/96
        Benefits Services & Managed Care Division – Managed Care Services 10/96
        Benefits Services & Managed Care Division – Management 10/96
        Officers 12/96

**1997**
        Benefits Services & Managed Care Division – Management 2/97
        Officers 12/97

**1998**
        Officers 4/98
        Officers 6/98
        Officers 10/98

**1999**
        Officers 1-99
        President - VPs – 2/99
        President - VPs – 3/99
        President - VPs – 4/99
        Officers 6/99
        Officer 7/99
        Officers 8/99
        Officers 8/99
        Officers 10/99
        Officers 11/99
        Benefits Administration 11/99
        Managed Care – 11/99

**2000**
        Officers 1/00
        Officers 2/00
        Officers 3/00
        Officers 5/00
        Officers 6/00
        Officers 8/00

1

Officers 9/00
Officers 10/00
Officers 11/00
Officers 12/00
Benefits Administration Management 12/00
Medical Economics Management – 12/00
Medical Management 12/00

2001

Officers 1/01
Officers 2/01
Officers 3/01
Officers 6/01
Officers 9/01
Officers 11/01
Benefits Administration Management 11/01
Managed Care 11/01
Medical Economics Management 11/01

2002

Officers 1/02
Officers 3/02
Officers 6/02
Officers 9/02
Benefits Administration Management 6/02
Managed Care 6/02
Medical Economics Management 6/02

2003

Officers 1/03
Officers 11/03
Benefits Administration Management 6/03
Medical Management 12/03
Medical Economics Management 6/03
Coding Claims 6/03
Coding Claims II 6/03

2004

Benefits Administration 10/04
Officers and Key Management 4/04

2005

Benefits Administration 4/05
Provider Reimbursement 4/05
Medical Economics 3/1/05
Medical Economics Management 3/15/05
Medical Economics Division 4/05

Pharmacy Agreements--**Withheld due to confidentiality**          RFP #S 6, 7, 10, 37, 40, 45,
                                                                  63 68, 72 73, 74, 82 & 87

PCS Agreements
Medco Agreements
Express Scripts Agreements
Community Pharmacy Agreements
Specialty Pharmacy Agreements

Annual reports                                          RFP #s 56 &62

1994 – 2003

Names & addresses of trustees, fiduciaries, and officers 1/1/1994 to present

List of members of the Board of Directors – 1993 - 2004
List of officers 1994 – 1999
List of Officers of the Board of Directors and Offices of the Corporation 2000 – 2005.

Names and addresses of all Plan Administrators from 1/1/1994 to present

PCS Health Systems, Inc.
P. O. Box 52115
Phoenix, AZ  85072-2115

Paid Prescriptions, Inc.
1900 Pollitt Drive
Fair Lawn, NJ  07410

National RX Services of Texas, Inc.
15001 Trinity Boulevard
Fort Worth, TX 76115

Merck-Medco Rx Services of Texas, Inc.
100 Summit Avenue
Montvale, NJ  07054

Express Scripts, Inc.
6625 West 78th Street
Bloomington, MN  55439-0842

3

Organizational Charts                                     RFP #s 39, 40 & 59

Annual Reports                                            RFP #s 56 & 62

2004

Pharmacy Agreements                                       RFP #S 6, 7, 10, 37, 40, 45,
                                                          63 68, 72 73, 74, 82 & 87
Centocor Agreement 4/1/2003

Miscellaneous                                             RFP # 68

1995 Pharmacy Request for Proposal
2001 Request for Information/Request for Proposal/Pharmacy Benefits Management
2004 Pharmacy Request for Proposal

Understanding Treatment Decision Criteria for Multimodal Therapy 4/26/04        RFP 01, 89
                                                                                & 90

LHSIC Article of Incorporation                            RFP #s 58 & 62
LHSIC BY-Laws

Prescription Claim Form                                   RFP # 86

Sample Provider Contracts                                 RFP #s19, 66, 68, & 92

Sample Member Health Contracts                            RFP #s 6, 57, 60, 66, 74, 79,
                                                          80, 87, 88 & 92

Formularies                                               RFP #S 6, 7, 10, 37, 40, 45,
                                                          63 68, 72 73, 74, 82 & 87
Preferred Prescription Formulary – 1997
Preferred Prescriptions Formulary 1998
Client Formulary Design Form 3/1999
Blue Selections Preferred Rx Member Guide – 1999
Three-Tier Formulary 2005
Five-Tier Formulary 2005
1999 Blue Selections Preferred Rx Physician's Guide

Newspapers Articles                                       RFP #s 13, 26, & 27

10/19/02 – "Pfizer to settle Medicaid Allegations" – *The Advocate* – Baton Rouge, La.

11/8/02 – "Ad Agency Helped Push Neurontin, Documents Show" from the *Wall Street Journal* (Eastern Edition)

8/9/03 – "Drug firms accused of unlawful marketing" – *The times Picayune* – New Orleans, La.

4

## For BCBSLA claims system database, the fields are as follows:

Masked Contract – Encrypted Subscriber ID.
Masked Claim – Encrypted Claim Number
Age – Age of the member
DOS – Date of Service
Dt Paid – Date Paid
Charge – Amount Billed
Paid – Amount Paid
Co-Pay – member co-payment
Deduct – member deductible
Coins – member coinsurance
Diag13 – Diagnosis Code
DX1 – Diagnosis Code
CPT4 – CPT4 Code
HCPCS – HCPCS Code
NDC – National Drug Code
Pre DEA – Prescriber DEA Code
Reg Prov No – BCBSLA Regional Provider Number
Disp – BCBSLA Claim Disposition Code
1  First payment for each claim
2  Replaces a payment which has been cancelled (used after code 3)
3  Cancels a payment
4  Voids a payment (used after codes 1 or 2)
5  Rejected claim, no payment
State – State of Pharmacy

## For the PBM Claims Data:

Masked Contract – Encrypted Subscriber ID.
Masked Claim – Encrypted Claim Number
DOS - Date of Service
DOP - Date of Payment
Billed Amount – the amount BCBSLA paid
Co-Pay Amount – member co-payment
Calc Ingred Cost – Calculated Ingredient Cost - the cost of the drug dispensed based on the
          participating pharmacy contract as calculated by the PBM
Dispensing Fee – prescription dispensing fee
Tax Amount – amount of the tax on the prescription
NDC - National Drug Code
Physician Number – the physician's DEA number
Pharmacy Number - the pharmacy's NCPDP or NABP number
Dispensing State - State of Pharmacy

1. Not withholding.
2. Not withholding.
3. Limiting search.
4. Not withholding, but may produce exemplar documents due to burden.
5. Limiting search
6. Not withholding.
7. Not withholding
8. Not withholding
9. Not withholding
10. Not withholding
11. Not withholding
12. Not withholding
13. Limiting search based on burden
14. Limiting search based on burden
15. Not withholding
16. Limiting search
17. Not withholding
18. Not withholding
19. Not withholding
20. Not withholding
21. Not withholding
22. Not withholding
23. Not withholding
24. Limiting search based on burden
25. Not withholding—will provide list
26. Limiting search
27. Limiting search
28. response pending resolution of terms "efficacy" and "inefficacy"
29. Not withholding
30. Not withholding, except for documents re "efficacy," see #28.
31. Not withholding
32. Not withholding
33. Not withholding
34. Not withholding
35. Not withholding
36. Not withholding
37. Not withholding
38. Not withholding
39. Not withholding
40. Not withholding
41. Not withholding
42. Not withholding
43. Not withholding
44. Not withholding
45. Not withholding
46. Not withholding

1

47. Not withholding
48. Not withholding
49. Not withholding
50. Not withholding
51. Not withholding
52. Not withholding
53. Not withholding
54. Not withholding
55. Plaintiffs to exchange Bates numbered list
56. Not withholding
57. Not withholding
58. Not withholding
59. Not withholding
60. Not withholding
61. Not withholding
62. Not withholding
63. Not withholding
64. Not withholding
65. Response pending Defendants defining "adoption agreements"
66. Not withholding
67. Response pending Defendants defining "adoption agreements"
68. Limiting search
69. Withholding based on relevance and burden.
70. Withholding based on relevance and burden.
71. a) not withholding
    b) withholding based on confidentiality
    c) not withholding
72. Limiting search
73. Limiting search
74. Not withholding
75. Not withholding
76. Not withholding
77. Limiting search
78. Withholding based on equal availability.
79. Not withholding
80. Not withholding
81. Not withholding
82. Not withholding
83. Not withholding
84. Not withholding
85. Not withholding
86. Not withholding
87. Not withholding
88. Not withholding
89. Not withholding.
90. Not withholding.

2

91. Not withholding.
92. Not withholding.
93. Not withholding.
94. N/A
95. through 105 Withholding premature.
106. and 110-126 Withholding premature.

**BCBSLA Decision Makers re Neurontin**

James G. Gengelbach, D. O.
Vice President, Managed Care and Medical Director
Louisiana Health Service & Indemnity Company,
D/b/a Blue Cross and Blue Shield of Louisiana
5145 Bluebonnet Boulevard
Baton Rouge, LA 70809
(225) 408-1422
2/1993 to 1/2003


R. Dwight Brower, M. D.
Medical Director, Health & Quality Management
Louisiana Health Service & Indemnity Company,
D/b/a Blue Cross and Blue Shield of Louisiana
5525 Reitz Avenue (70809)
P. O. Box 98029
Baton Rouge, LA 70898-9029
(225) 295-3307
1997 to the present


Milam W. Ford, R. Ph., M. B. A., M. P. H.
Director of Pharmacy Services
Louisiana Health Service & Indemnity Company,
D/b/a Blue Cross and Blue Shield of Louisiana
5525 Reitz Avenue (70809)
P. O. Box 98029
Baton Rouge, LA 70898-9029
(225) 295-3307
6/2002 to the present


Armand Ramirez, Jr.
Director of Pharmacy Services
Address unknown
2/1999 to 2/2002

1

Imelda C. Coleman, PharmD
Manager, Commercial Pharmacy Operations
Louisiana Health Service & Indemnity Company,
D/b/a Blue Cross and Blue Shield of Louisiana
5525 Reitz Avenue (70809)
P. O. Box 98029
Baton Rouge, LA 70898-9029
(225) 295-3307
March 2003 to the present


J. Richard Williams
Corporate Vice President of Network Administration
Louisiana Health Service & Indemnity Company,
D/b/a Blue Cross and Blue Shield of Louisiana
5525 Reitz Avenue (70809)
P. O. Box 98029
Baton Rouge, LA 70898-9029
(225) 295-3307
1974 to the present

Katherine P. Crosby
Director, Professional Reimbursement
Louisiana Health Service & Indemnity Company,
D/b/a Blue Cross and Blue Shield of Louisiana
5525 Reitz Avenue (70809)
P. O. Box 98029
Baton Rouge, LA 70898-9029
(225) 295-3307
1989 to the present


Sabrina Heltz
Corporate Vice President, Medical Economics
Louisiana Health Service & Indemnity Company,
D/b/a Blue Cross and Blue Shield of Louisiana
5525 Reitz Avenue (70809)
P. O. Box 98029
Baton Rouge, LA 70898-9029
(225) 295-3307
1985 to the present

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES ) PRACTICES, AND PRODUCTS LIABILITY ) LITIGATION ) ) ————————————————————— ) THIS DOCUMENT RELATES TO: ) ) ALL MARKETING AND SALES ) PRACTICES ACTIONS ) ————————————————————— ) | MDL Docket No. 1629 Master File No. 04-10981 Judge Patti B. Saris Mag. Judge Leo T. Sorokin |

**DECLARATION OF MICHAEL FARKAS IN SUPPORT OF PLAINTIFFS'
MEMORANDUM IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO
EXTEND CLASS DISCOVERY SCHEDULE**

I, MICHAEL S. FARKAS, hereby declare and state as follows:

1.      I am an attorney with the law firm of Seeger Weiss, LLP, counsel for

Class Plaintiff International Union of Operating Engineers, Local No. 68 Welfare Fund ("Local

68") in this action. I am a member in good standing of the State Bars of New York and New

Jersey. I have personal knowledge of the matters stated herein, except as otherwise noted. With

respect to the matters as to which I have no personal knowledge, I have been advised by

colleagues that they are true. If called upon, I could testify competently thereto.

2.      I have been involved in the process of responding to discovery

propounded by Defendants' counsel and have participated in multiple meet-and-confer sessions

with Defendants' counsel. Along with my colleagues, we have had numerous communications

with Defendants' counsel, by letter, telephone, and email, in attempts to resolve outstanding

issues and to explain Local 68's position on various discovery matters.

3.    Local 68 produced all the responsive documents it had in its possession on July 1, 2005. Although the documents only totaled 220 pages, the reason is because Local 68 does not manage its own plan and does not have a great amount of information concerning Neurontin or its prescription plan.

4.    Local 68 has not withheld any documents on the grounds of the burdensome nature of the objection, because it does not have very much information regarding Neurontin or the details of their prescription plan.

5.    With regard to the interrogatories, Local 68 has not provided defense counsel with information in response to certain interrogatories. Once that information is provided, Local 68 will have provided all information in its possession.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 30, 2005

_____s/s Michael Farkas_____
**Michael S. Farkas, Esq.**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES ) PRACTICES, AND PRODUCTS LIABILITY ) LITIGATION ) _____) THIS DOCUMENT RELATES TO: ) ) ALL MARKETING AND SALES ) PRACTICES ACTIONS ) _____) | MDL Docket No. 1629 Master File No. 04-10981 Judge Patti B. Saris Mag. Judge Leo T. Sorokin |

**DECLARATION OF EDWARD NOTARGIACOMO IN SUPPORT OF PLAINTIFFS'
MEMORANDUM IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO
EXTEND CLASS DISCOVERY SCHEDULE**

I, EDWARD NOTARGIACOMO, hereby declare and state as follows:

1.     I am an associate with the law firm of Hagens, Berman, Sobol, Shapiro,

LLP, Co-Lead Counsel for the Class Plaintiffs and counsel for Class Plaintiff Harden

Manufacturing Company ("Harden") in this action. I am a member in good standing of the State

Bar of Massachusetts and the District Court for the District of Massachusetts. I have personal

knowledge of the matters stated herein, except as otherwise noted. With respect to the matters as

to which I have no personal knowledge, I have been advised by colleagues that they are true. If

called upon, I could testify competently thereto.

2.     I have been involved in the process of responding to discovery

propounded by Defendants' counsel and have participated in multiple meet-and-confer sessions

with Defendants' counsel. I have had numerous communications with Defendants' counsel, by

letter, telephone, and email, in attempts to resolve outstanding issues and to explain Harden's

position on various discovery matters.

3.      Class Plaintiffs initially responded to Defendants' disclosure demands on

June 2, 2005. At that time, the parties were in the midst of meeting and conferring with regard to

Defendants' responses to discovery propounded by the Plaintiffs. The meet and confer sessions

concerning Defendants' responses occurred on May 17, 2005; May 24, 2005; June 6, 2005; and

June 16, 2005. The parties collectively agreed that they would finish discussing Defendants'

responses to Plaintiffs' discovery prior to beginning discussion of Plaintiffs' responses.

4.      The meet and confer sessions concerning Defendants' responses took

place on June 29, 2005 (approximately a five hour meeting); July 6, 2005 (a six hour meeting);

July 15, 2005 (a six hour meeting);  July 22, 2005 (a three hour meeting);  and July 29, 2005 (a

five hour meeting).  During those meetings, defense counsel insisted that the parties review each

and every objection and response to every discovery request (106 Request for Production and 25

Interrogatories) for every individual plaintiff.  Because of this method, all counsel had to attend

each meet and confer session, and they took approximately 25 hours, in total, to complete.

5.      Harden made its first production of documents totaling 1268 pages on July

15, 2005, followed by a supplemental production of 19 additional pages on September 6, 2005.

During the meet and confer sessions, I repeatedly explained to defense counsel that Harden is a

manufacturer of furniture whose main purpose is to manufacture and sell furniture, not to

monitor drugs and reimbursements of drugs for their employees. Therefore, the amount of

relevant documents to be produced would be small, not because Harden was withholding

documents, but simply because no other documents existed in Harden's possession. Moreover,

defense counsel has known that Harden's document production has been complete since

September 6, 2005 (over a month before the cutoff of class certification discovery), when the

-2-

supplemental production occurred.

6.    During the meet and confer sessions with defense counsel that took place
from June 29, 2005 to July 29, 2005, I also repeatedly stated that Harden was not withholding
documents or limiting its production based on an objection concerning the burden of production.
The letter dated August 26, 2005 from Mr. Aranoff to Patrick Murray, defense counsel, simply
restated a position I had previously explained.

7.    Harden disclosed the identity of its third party payor in its initial
disclosures on June 3, 2005.

8.    I wrote a letter to defense counsel on September 16, 2005, offering to
make Harden's representative available for a Rule 30(b)(6) deposition on October 13 and 14,
2005. A true and correct copy of that letter is attached as Exhibit 52 to the Declaration of Patrick
Murray, filed in support of Defendants' Emergency Motion. According to representations made
by the attorney for Harden's third party payor to me and to defense counsel and which I have
also relayed to defense counsel, Neurontin claims data and other material will be produced by the
TPP during the first week in October and therefore will be available for the deposition.    I
received no response to that letter until September 29, 2005 when defense counsel wrote to insist
that the 30(b)(6) deposition of Harden take place in Boston rather than in Harden's home state of
Alabama and asking me for dates on which Harden's representative could be made available in
Boston.

9.    With respect to documents concerning the policies and practices for
payment of claims for drug prescriptions for off-label uses, regardless of whether they are for
Neurontin, I have told defense counsel that we would produce any such general policy, but that
none existed in Harden's possession. To my knowledge, the only documents which all Plaintiffs

-3-

have refused to produce relating to policies regarding off-label uses for drugs other than

Neurontin are any claim data and other utilization information for drugs other than Neurontin.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 30, 2005

_s/s Edward Notargiacomo_

**Edward Notargiacomo, Esq.**

477255.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL Docket No. 1629 Master File No. 04-10981 Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | ) ) | Mag. Judge Leo T. Sorokin |
| ALL MARKETING AND SALES PRACTICES ACTIONS | ) ) ) ) | |

**DECLARATION OF JEFFREY LERNER IN SUPPORT OF PLAINTIFFS'
MEMORANDUM IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO
EXTEND CLASS DISCOVERY SCHEDULE**

I, JEFFREY LERNER, hereby declare and state as follows:

1.    I am an associate with the law firm of Bernstein, Liebhard & Lifshitz,

LLP, counsel for Class Plaintiff Lorraine Kopa in this action. I am a member in good standing of

the State Bars of New Jersey and Pennsylvania. I have personal knowledge of the matters stated

herein, except as otherwise noted. With respect to the matters as to which I have no personal

knowledge, I have been advised by colleagues that they are true. If called upon, I could testify

competently thereto.

2.    I have been involved in the process of responding to discovery

propounded by Defendants' counsel and have participated in multiple meet-and-confer sessions

with Defendants' counsel. Along with my colleague, Ronald Aranoff, we have had numerous

communications with Defendants' counsel, by letter, telephone, and email, in attempts to resolve

outstanding issues and to explain Ms. Kopa's position on various discovery matters.

3.    Ms. Kopa produced 64 pages of documents on July 1, 2005. These documents contain the entirety of her medical records pertaining to the treatment for the pain for which she was prescribed Neurontin.

4.    On September 22, 2005 we informed Defendants that Ms. Kopa is available for a deposition on October 11, 2005. Defense counsel could not commit to that date and suggested two alternate dates, October 12th and 13th,. Neither Mr. Aranoff, who will be defending the deposition, nor Ms. Kopa are available on those dates. A true and correct copy of emails exchanged between Mr. Aranoff and Patrick Murray, defense counsel, on this subject are attached as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 30, 2005

_____*s/s Jeffrey Lerner*_____
**Jeffrey Lerner, Esq.**

-2-

477381.1

# EXHIBIT A

**Jeffrey Lerner**

| | |
|---|---|
| **From:** | Ronald J. Aranoff |
| **Sent:** | Friday, September 23, 2005 4:02 PM |
| **To:** | 'Patrick Murray' |
| **Subject:** | RE: Deposition of Ms. Kopa |

Patrick:

     I cannot do the 12th or 13th and neither can Ms. Kopa. Ms. Kopa must work on both of those dates. The 12th is the day before Yom Kippur, and thus a short day for me. The 13th is Yom Kippur itself and I don't work on that day. If we don't do the 11th, I will attempt to get you new dates, but given my schedule, Ms. Kopa's schedule, and the numerous Jewish Holidays which I observe in October, it's going to be quite difficult. I will hold the 11th until I hear back from you. Otherwise, we are going to have to explore dates in either very late October or November and I wont have a new set of dates from Ms. Kopa until mid-October at the earliest. Having said all of that, please let me know how you wish to proceed.

Ron Aranoff
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street-28th Floor
New York, New York 10016
(212) 779-1414 (Phone)
(212) 779-3218 (Facsimile)
aranoff@bernlieb.com (Email)


-----Original Message-----
From: Patrick Murray [mailto:pmurray@dpw.com]
Sent: Friday, September 23, 2005 3:38 PM
To: Ronald J. Aranoff
Subject: Deposition of Ms. Kopa


Ron,

We are having trouble with October 11. We would, however, be able to take Ms. Kopa's deposition on October 12 or 13. Can she be available on either of those two days?

Regards,
Patrick J. Murray
Davis Polk & Wardwell
450 Lexington Avenue
Room 2825
New York, New York 10017
212-450-4252

---

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please notify the sender immediately and destroy the original message and all copies.

---

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                                    |     |                             |
| -------------------------------------------------- | --- | --------------------------- |
|                                                    | )   |                             |
| IN RE NEURONTIN MARKETING, SALES                   | )   |                             |
| PRACTICES, AND PRODUCTS LIABILITY                  | )   | MDL Docket No. 1629         |
| LITIGATION                                         | )   | Master File No. 04-10981    |
|                                                    | )   | Judge Patti B. Saris        |
| THIS DOCUMENT RELATES TO:                          | )   | Mag. Judge Leo T. Sorokin   |
|                                                    | )   |                             |
| ALL MARKETING AND SALES                            | )   |                             |
| PRACTICES ACTIONS                                  | )   |                             |
|                                                    | )   |                             |

### DECLARATION OF ERIC S. PAVLACK IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO EXTEND CLASS DISCOVERY SCHEDULE

I, ERIC PAVLACK, hereby declare and state as follows:

1.     I am an attorney with the law firm of Cohen & Malad, LLP, counsel for

Class Plaintiff Gerald Smith in this action. I am a member in good standing of the State Bar of

Indiana and the United States District Court for the Northern and Southern Districts of Indiana. I

have personal knowledge of the matters stated herein, except as otherwise noted. With respect to

the matters as to which I have no personal knowledge, I have been advised by colleagues that

they are true. If called upon, I could testify competently thereto.

2.     I have been involved in the process of responding to discovery

propounded by Defendants' counsel and have participated in multiple meet-and-confer sessions

with Defendants' counsel. Along with my colleague, Richard Shevitz, we have had numerous

communications with Defendants' counsel, by letter, telephone, and email, in attempts to resolve

outstanding issues and to explain Mr. Smith's position on various discovery matters.

477455.1

3.     Mr. Smith produced all the relevant documents in his possession on July 7, 2005. Those documents totaled 141 pages and included Mr. Smith's complete medical records related to the automobile accident and the resulting injuries for which he was prescribed Neurontin that he had in his possession at that time. The only remaining outstanding records are from Mr. Smith's chiropractor. We informed defense counsel that these had not yet been received and would be as soon as they arrived. Those records recently arrived to Mr. Smith and were produced to defense counsel on September 26, 2005.

4.     We have informed defense counsel that, other than the chiropractor records, no other relevant documents remain outstanding.

5.     It is evident from the records produced by Mr. Smith that he was prescribed Neurontin for physical maladies, not psychiatric or mental health conditions. Therefore, any documents relating to psychiatric examinations are irrelevant.

6.     With regard to Mr. Smith's deposition, we originally suggested scheduling that deposition for October 10, 2005, the final day of the class discovery period. However, Defendants refused to accept that date. Since that time, the parties have been discussing the date and location for that deposition, and the parties have agreed upon October 6, 2005, for Mr. Smith's deposition, which will take place in Indianapolis.

7.     As we stated in a letter dated August 30, 2005, we opposed going forward with the depositions of treating doctors for Mr. Smith until defendants produced the physician sales call database and clinical communications database, as they contained information highly relevant to the class representatives' treating physicians' knowledge of Neurontin for off-label uses. This position was also taken by counsel for the other individual Consumer Class Plaintiff, Lorraine Kopa.

5.    As I further explained to defense counsel, Patrick Murray, on the phone on September 6, 2005, the individual plaintiffs would not proceed with the depositions of treating physicians until defendants identify and produce documents related to all events sponsored by defendants that these doctors and their professional partners attended.  Mr. Murray stated that defendants' position was that plaintiffs will be able to ask these physicians at their depositions if they attended any events, and only after those events are identified will defense counsel look for documents related to those events.  I stated that this course of action would necessarily require plaintiffs to retake the doctors' depositions, a duplication of effort that benefits no one.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 30, 2005

_s/s Erik Pavlack_
**Eric Pavlack, Esq.**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL Docket No. 1629 Master File No. 04-10981 Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | ) ) | Mag. Judge Leo T. Sorokin |
| ALL MARKETING AND SALES PRACTICES ACTIONS | ) ) ) ) | |

**DECLARATION OF NANCY A. PACHARZINA IN SUPPORT OF PLAINTIFFS'
MEMORANDUM IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO
EXTEND CLASS DISCOVERY SCHEDULE**

I, NANCY A. PACHARZINA, hereby declare and state as follows:

1.      I am an attorney with the law firm of Tousley Brain Stephens, PLLC,

Counsel for Class Plaintiff ASEA/AFSCME Local 52 Health Benefits Trust ("ASEA"). I am a

member in good standing of the State Bar of Washington. I have personal knowledge of the

matters stated herein, except as otherwise noted. With respect to the matters as to which I have

no personal knowledge, I have been advised by colleagues that they are true. If called upon, I

could testify competently thereto.

2.      I have been involved in the process of responding to discovery

propounded by Defendants' counsel and have participated in multiple meet-and-confer sessions

with Defendants' counsel. Along with my colleagues, we have had numerous communications

with Defendants' counsel, by letter, telephone, and email, in attempts to resolve outstanding

issues and to explain ASEA's position on various discovery matters.

477493.1

3.      On July 29, 2005, ASEA made its first production which totaled 475 pages
and supplemented this production with 440 additional pages on August 9, 2005, over two months
prior to the class certification discovery cut off. Recently, defense counsel requested ASEA
supplement its production to include various types of documents in their entirety for which
ASEA had originally provided exemplars. ASEA supplemented its production to include these
on September 30, 2005. At this time, ASEA's production of documents, not including
documents withheld based on burden, is complete, and I have informed defense counsel it is
complete. Although defense counsel has expressed incredulity about the small volume of
documents produced, we have repeatedly explained ASEA simply does not have a wealth of
documents in its possession relating to off-label use of prescription drugs in general and
Neurontin specifically.

4.      I have engaged in extensive discussion with Defendants concerning the
issue of production of documents regarding policies pertaining to off-label use of
pharmaceuticals in general. I have explained ASEA will and has provided all information and
documents concerning any global policies -that pertain to Neurontin as well as other prescription
drugs.

5.      With regard to the identity of ASEA's pharmacy benefit managers and
third-party administrators, we provided this information in ASEA's initial disclosures on June 3,
2005. Defendants did not subpoena these non-parties until July, almost two months later.

6.      With regards to discovery of ASEA's third-party administrator,
Administration Services, Inc. (ASI), ASEA's counsel represents ASI as well and has made full
production of ASI's responsive documents.

7.      With regard to discovery of ASEA's prescription benefits manager,

-2-

Caremark, ASEA originally offered to facilitate production of a Neurontin claims report from

Caremark. However, Defendants insisted the claims report include more data fields than

originally generated by Caremark for ASEA. ASEA offered to negotiate adding more data

fields, if Defendants would let ASEA know which further fields they needed. Instead,

Defendants demanded that they see Caremark's entire data dictionary. As ASEA could not

force Caremark to turn over its data dictionary, ASEA left the issue to be worked out between

Caremark and Defendants.   Caremark is represented by its own counsel. Although I understand

Caremark has not yet produced a data dictionary I know Caremark has produced a great many

responsive documents pursuant to Defendants third-party subpoena.

        8.      ASEA also has asserted a legitimate "burden" objection to one set of

Neurontin claims data that was processed by ASI as opposed to Caremark. ASEA and ASI have

explained the nature of the burden in detail. Attached hereto as Exhibit A are true and correct

copies of emails and correspondence on this issue.

        8.      Defendants noticed a Rule 30(b)(6) deposition and requested dates for

deposition of ASEA's representative. We not only offered dates in mid September and the first

week of October, before the discovery cut off, we also offered to facilitate production of third-

party witnesses (e.g. a representative from ASI). Defendant delayed responding and than chose

to assert its right to take the deposition of ASEA in New Jersey, thus precluding inclusion of an

ASI deposition at the same time.   ASEA resides in Alaska and ASI resides in New Jersey.

        7.      As of September 30, 2005, no dates have been confirmed by defense

counsel.   True and correct copies of the email correspondence concerning deposition dates is

attached hereto as Exhibit B.

        I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 30, 2005

*s/s Nancy Pacharzina*

**Nancy Pacharzina, Esq.**

477493.1

# EXHIBIT A



**Tousley
Brain
Stephens**
PLLC

1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-1332
Telephone (206) 682-5600
Facsimile (206) 682-2992

NANCY A. PACHARZINA
npacharzina@tousley.com

OUR FILE NO:
N-4126-001.L1D

August 22, 2005

*VIA FACSIMILE AND U.S. MAIL*

Patrick J. Murray
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017

Re:     *In re Neurontin Marketing and Sales Practices Litigation*
        MDL Docket No. 1629
        U.S. District Court for the District of Massachusetts Master File No. 04-10981

Dear Mr. Murray:

This letter addresses several discovery matters we have previously addressed on the phone.

First, enclosed please find ASI's responses and objections to Defendants' subpoena.

Second, yesterday I sent you a copy by e mail of ASI's contract with Caremark. This document will also be produced on disc through the ordinary course of ASEA's continuing production.

Third, as I explained on the phone and as noted in ASI's objections to the subpoena, both ASI and ASEA are standing on their "overly burdensome" and "burden outweighs the benefit" objections with respect to the following categories of documents:

1.     Medical records of ASEA's members that have made claims for Neurontin

ASI does not yet know how many or which of ASEA's Plan members have made claims for Neurontin. Caremark is generating that information for both ASI and Defendants. Until ASI has that information, it cannot determine whether it is possible, or the extent of the burden associated with attempting, to produce all medical records for each claimant in a sanitized form such that neither ASI nor ASEA would violate the Health Information Portability and Accountability Act of 1996,

Patrick J. Murray
DAVIS POLK & WARDWELL
August 22, 2005
Page 2

29 U.S.C. §§ 1181 *et seq.* ("HIPAA"), or other applicable privilege protection. ASI will continue to investigate to determine the extent of the burden.

    2.    <u>Transaction-level Neurontin claims records for claims processed by ASI as opposed to Caremark</u>

The vast majority of all transaction-level records for any claim for Neurontin made to the ASEA Health Plan are maintained by Caremark, the ASEA Health Plan's Prescription Benefits Manager. Both ASEA and Caremark are working with Defendants to provide that information pursuant to discovery served on ASEA and Caremark.

ASEA and ASI do have in their possession, however, some records of prescription drug claims made to the ASEA Health Plan during the time period from July 1, 2001 (the Plan's inception) to June 30, 2003. During this time, ASI instead of Caremark processed prescription drug claims in cases where the prescription was filled by a pharmacy out of Caremark's network. The electronic records ASI maintains for these claims, however, do not include the drug name. There were approximately 44,916 claims processed by ASI that may or may not be for Neurontin. To determine if a given claim was for Neurontin, each original claim would have to be located and retrieved from a warehouse of documents, reviewed to identify the drug name, and if the claim was for Neurontin, redacted to sanitize all member-identifying information before it could be produced. The burden to ASI of attempting to produce this information would far outweigh any potential benefit to Defendants.

    3.    <u>Transaction level records or other documents regarding drugs other than Neurontin</u>

This has been discussed in numerous discovery conferences.

    4.    <u>Exemplar documents</u>

ASEA has provided Defendants exemplars of certain documents, even though the documents contain no relevant information or information that will assist Defendants to discover relevant information. Should Defendants request production of all such records despite their limited usefulness, ASI and ASEA reserve their right to assert "overly burdensome" and "burden outweighs the benefit" objections in addition to other objections previously asserted.

Patrick J. Murray
DAVIS POLK & WARDWELL
August 22, 2005
Page 3


       Both ASEA and ASI are continuing to search for and identify any records that may be responsive to your requests. Their responses will be supplemented accordingly.

                              Regards,

                        TOUSLEY BRAIN STEPHENS PLLC

                        Nancy A. Pacharzina

NAP/jka
Enclosure
cc:    Barry Himmelstein (via facsimile only, with enclosure)
       Ed Notargiacomo (via facsimile only, with enclosure)
       Ken Hearron (via facsimile only, with enclosure)
       Mary L. Stoll (via facsimile only, with enclosure)
       Christopher I. Brain (with enclosure)
       Kim D. Stephens (with enclosure)

4126/001/183875.1

## Poate, Rebecca J.

**From:** Nancy Pacharzina [NPacharzina@Tousley.com]
**Sent:** Wednesday, September 07, 2005 3:38 PM
**To:** 'Reema Abdelhamid'
**Cc:** Himmelstein, Barry R.; Kim Stephens; Chris Brain
**Subject:** RE: Subpoenas/Neurontin Litigation

Dear Reema,

Regarding the items you asked about in your email below:

(1)  Marketing information – I spoke with Valera Kingsley at ASI again on this subject.  She stated again, ASI does not receive any pharmaceutical marketing materials, relevant magazines or journals on a regular basis.  They periodically receive pharmacy updates but they are not retained.  When ASI was processing pharmacy claims they subscribed to Medispan but they no longer subscribe.  They did not retain old copies.  She also stated, as head of the claims department she would know if anyone at ASI who processed claims for ASEA received any such items.  As such, we consider both ASI's and ASEA's response on this issue complete.

(2)  Pharmacy Claims processed by ASI instead of Caremark – ASI/ASEA stand on their overly burdensome objection regarding production of pharmacy claims processed by ASI.  ASEA is NOT, however, forgoing its claim for damages regarding such claims as there are alternative methods by which ASEA can prove the number and amount of the claims that were for Neurontin to the appropriate legal standard (e.g. extrapolation).  Defendants have as much information as ASEA does regarding those methods and will be free to argue their adequacy to the court.  ASI is collecting additional information regarding the burden associated with trying to determine which of these 44,000 claims are for Neurontin.

In addition, I will produce on CD the additional documents we have discussed (that you do not already have) by early next week. These include: An exemplar of a Caremark invoice to ASI, the AdvancePCS (aka Caremark) "Standard Covered Drugs List," an exemplar of a quarterly rebate report, and the portions of ASEA Board of Trustee Meeting Minutes in which Caremark made annual reports on drug utilization.

I apologize for not getting you this last week.  I was shepherding denial of a preliminary injunction through the emergency appeals process.  Thank you again for your patience.

Regards,
*Nancy A. Pacharzina*
*Attorney*
*Tousley Brain Stephens PLLC*
*1700 Seventh Avenue, Suite 2200*
*Seattle, WA 98101-1332*
*(206) 682-5600*
*(206) 682-2992 (fax)*
*npacharzina@tousley.com*
*The information contained in this email is confidential and may be attorney-client privileged or attorney work product. It is intended for the addressee only. Unauthorized use, review or disclosure is prohibited. If you received this email in error, please notify the sender at the above address and permanently delete the original message as well as any copy or printout.*

**From:** Reema Abdelhamid [mailto:abdelham@dpw.com]
**Sent:** Tuesday, September 06, 2005 11:24 AM

**To:** Nancy Pacharzina
**Subject:** RE: Subpoenas/Neurontin Litigation

Thanks.

At 10:40 AM 9/6/2005 -0700, you wrote:

Thanks for your patience Reema. I will let you know something tomorrow, if not today.

Nancy A. Pacharzina
Attorney
Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-1332
(206) 682-5600
(206) 682-2992 (fax)
npacharzina@tousley.com

The information contained in this email is confidential and may be attorney-client privileged or attorney work product. It is intended for the addressee only. Unauthorized use, review or disclosure is prohibited. If you received this email in error, please notify the sender at the above address and permanently delete the original message as well as any copy or printout.

-----Original Message-----
From: Reema Abdelhamid [mailto:abdelham@dpw.com]
Sent: Tuesday, September 06, 2005 7:42 AM
To: Nancy Pacharzina
Subject: Subpoenas/Neurontin Litigation

Hi. Hope you had a good labor day weekend. I know that when we spoke a couple of weeks ago we agreed that you would be getting back to us by the end of last week regarding 1) marketing information - specifically the scope of the search that could be done for such information and 2) Request #4 in the ASI subpoena - specifically, whether your client is foregoing damages claims for the period covered by materials for which ASI is asserting its burdensomeness objection.

Please let us know whether you have responses on these issues or, if not, by when you anticipate responding.

Regards,
Reema

# EXHIBIT B

## Poate, Rebecca J.

**From:**   Nancy Pacharzina [NPacharzina@Tousley.com]

**Sent:**   Monday, September 12, 2005 5:56 PM

**To:**   'Patrick Murray'

**Cc:**   Himmelstein, Barry R.; 'Mary Stoll'

**Subject:** RE: In re Neurontin

Dear Patrick,

This email regards scheduling the 30(b)(6) deposition of ASEA. As we discussed on the phone, ASEA will produce the Chair of ASEA's Board, Fred Brown, and Valera Kingsley of ASI in response to your notice. The deponents are not available the week of September 26th . Mr. Brown, however, who lives in Fairbanks Alaska, will be in Seattle the week of September 19th. Both he and Ms. Valera could be available September 19-21 in Seattle. If you are not available then, both deponents could be available the week of October 3rd.

Regards,
*Nancy A. Pacharzina*
*Attorney*
*Tousley Brain Stephens PLLC*
*1700 Seventh Avenue, Suite 2200*
*Seattle, WA 98101-1332*
*(206) 682-5600*
*(206) 682-2992 (fax)*
*npacharzina@tousley.com*

*The information contained in this email is confidential and may be attorney-client privileged or attorney work product. It is intended for the addressee only. Unauthorized use, review or disclosure is prohibited. If you received this email in error, please notify the sender at the above address and permanently delete the original message as well as any copy or printout.*

Page 1 of 1

## Poate, Rebecca J.

**From:**   Nancy Pacharzina [NPacharzina@Tousley.com]

**Sent:**   Friday, September 16, 2005 11:10 AM

**To:**   'pmurray@dpw.com'

**Cc:**   Himmelstein, Barry R.; Chris Brain; 'Mary Stoll'; Kim Stephens

**Subject:** Neurontin

Dear Patrick,

     In response to your notice of deposition and desire to complete depositions before the end of class discovery we offered to make our 30(b)(6) designees available next week. But we have not heard back from you. Please let us know when you would like to schedule the deposition and I will again check our designees' availability.

Regards,

*Nancy A. Pacharzina*

*Attorney*

*Tousley Brain Stephens PLLC*

*1700 Seventh Avenue, Suite 2200*

*Seattle, WA 98101-1332*

*(206) 682-5600*

*(206) 682-2992 (fax)*

*npacharzina@tousley.com*

*The information contained in this email is confidential and may be attorney-client privileged or attorney work product. It is intended for the addressee only. Unauthorized use, review or disclosure is prohibited. If you received this email in error, please notify the sender at the above address and permanently delete the original message as well as any copy or printout.*

## Poate, Rebecca J.

**From:** Nancy Pacharzina [NPacharzina@Tousley.com]

**Sent:** Friday, September 16, 2005 11:26 AM

**To:** 'pmurray@dpw.com'

**Cc:** Chris Brain; Himmelstein, Barry R.; 'Mary Stoll'; Kim Stephens

**Subject:** Neurontin

Dear Patrick,

This email regards production of additional claims analysis reports and other documents we discussed earlier this week (i.e., documents for which we previously produced exemplars). ASEA objects to production of additional copies of such reports because, as I told you on the phone, to the extent the reports contain any relevant information, the reports are duplicative of information already provided in other formats. Without waiving the above stated objection, however, ASEA will produce all copies of such reports maintained by ASI for ASEA. I should be able to produce the reports next week.

Regards,
*Nancy A. Pacharzina*
*Attorney*
*Tousley Brain Stephens PLLC*
*1700 Seventh Avenue, Suite 2200*
*Seattle, WA 98101-1332*
*(206) 682-5600*
*(206) 682-2992 (fax)*
*npacharzina@tousley.com*

*The information contained in this email is confidential and may be attorney-client privileged or attorney work product. It is intended for the addressee only. Unauthorized use, review or disclosure is prohibited. If you received this email in error, please notify the sender at the above address and permanently delete the original message as well as any copy or printout.*

## Poate, Rebecca J.

| | |
|---|---|
| **From:** | Nancy Pacharzina [NPacharzina@Tousley.com] |
| **Sent:** | Tuesday, September 27, 2005 3:53 PM |
| **To:** | 'pmurray@dpw.com' |
| **Cc:** | 'Mary Stoll'; Himmelstein, Barry R.; Kim Stephens; Chris Brain |
| **Subject:** | Neurontin |

Dear Patrick,

Please let me know by tomorrow if you intend to conduct depositions of Fred Brown and Valera Kingsley in Seattle October 4th and 5th or if you have decided to depose Mr. Brown in New Jersey. If the later please let us know on what date you would like to depose Mr. Brown in New Jersey.

Sometime ago, at your request, we determined availability and let you know Mr. Brown and Ms. Kinsley would be available for deposition in Seattle on October 4th and 5th. Mr. Brown is ASEA's designee for all topics identified in your notice. We had also offered to facilitate making Valera Kingsley of ASI available on the assumption it would be helpful to you to conduct west coast depositions in a single trip. When last we spoke I also offered to make Colleen Savoie of Marsh USA available in Seattle on October 7th, again on the assumption it was efficient for you.

You have now indicated you may want to depose Mr. Brown in New Jersey. That is possible, although not on October 4th. Also, as we discussed you do not have subpoena power to require Ms. Kingsley or Ms. Marsh to travel to New Jersey. They will have to be deposed in Spokane, Washington and Anchorage, Alaska respectively although they may be willing to travel to Seattle. It should also be noted, our offer to facilitate production of Ms. Kingsley or Ms. Savoie for deposition in Seattle in conjunction with a deposition of Mr. Brown is made only on the condition you agree is the only time either will be deposed in this matter for either ASEA, ASI or Marsh.

In closing, the potential deponents need to know if they are expected in Seattle next week. Please let us know what you are currently requesting for a schedule.

Regards,
*Nancy A. Pacharzina*
*Attorney*
*Tousley Brain Stephens PLLC*
*1700 Seventh Avenue, Suite 2200*
*Seattle, WA 98101-1332*
*(206) 682-5600*
*(206) 682-2992 (fax)*
*npacharzina@tousley.com*
*The information contained in this email is confidential and may be attorney-client privileged or attorney work product. It is intended for the addressee only. Unauthorized use, review or disclosure is*

prohibited. If you received this email in error, please notify the sender at the above address and permanently delete the original message as well as any copy or printout.

## Poate, Rebecca J.

**From:**    Patrick Murray [patrick.murray@dpw.com]
**Sent:**    Tuesday, September 27, 2005 9:15 PM
**To:**    Nancy Pacharzina
**Subject:** Re: Neurontin

Yes, but either New York or New Jersey is fine with us.

-----Original Message-----
From: Nancy Pacharzina <NPacharzina@Tousley.com>
Date: Tue, 27 Sep 2005 18:26:02
To:'"Patrick Murray"' <pmurray@dpw.com>
Cc:bhimmelstein@lchb.com, '"Mary Stoll"' <marys@mlstoll-law.com>
Subject: RE: Neurontin

Patrick,


I will check on Mr. Browns availability. In the meantime would you prefer to take the deposition in New York?



Regards,



Nancy A. Pacharzina
Attorney
Tousley Brain Stephens PLLC
1700   Seventh Avenue, Suite 2200
Seattle, WA 98101-1332
(206) 682-5600
(206) 682-2992 (fax)
npacharzina@tousley.com

The information contained in this email is confidential and may be attorney-client privileged or attorney work product.  It is intended for the addressee only.  Unauthorized use, review or disclosure is prohibited.  If you received this email in error, please notify the sender at the above address and permanently delete the original message as well as any copy or printout.



From: Patrick Murray [mailto:pmurray@dpw.com]
Sent: Tuesday, September 27, 2005 6:08 PM
To: Nancy Pacharzina
Subject: Re: Neurontin

Nancy,

We have decided to take ASEA's 30(b)(6) deposition in New Jersey, where ASEA filed its suit. We are prepared to proceed on October 4, or any other day next week. Since you have indicated that ASEA will not produce its designee, Mr. Brown, in New Jersey on October 4, please let us know which are the first four or five dates upon which he could be available in New Jersey -- next week or as soon thereafter as possible -- as ASEA's 30(b)(6) designee.


Regards,
Patrick Murray
Davis Polk & Wardwell
212-450-4252


At 03:52 PM 9/27/2005 -0700, Nancy Pacharzina wrote:


Dear Patrick,

Please let me know by tomorrow if you intend to conduct depositions of Fred Brown and Valera Kingsley in Seattle October 4th and 5th or if you have decided to depose Mr. Brown in New Jersey. If the later please let us know on what date you would like to depose Mr. Brown in New Jersey.


Sometime ago, at your request, we determined availability and let you know Mr. Brown and Ms. Kinsley would be available for deposition in Seattle on October 4th and 5th. Mr. Brown is ASEAs designee for all topics identified in your notice. We had also offered to facilitate making Valera Kingsley of ASI available on the assumption it would be helpful to you to conduct west coast depositions in a single trip. When last we spoke I also offered to make Colleen Savoie of Marsh USA available in Seattle on October 7th , again on the assumption it was efficient for you.


You have now indicated you may want to depose Mr. Brown in New Jersey. That is possible, although not on October 4th. Also, as we discussed you do not have subpoena power to require Ms. Kingsley or Ms. Marsh to travel to New Jersey. They will have to be deposed in Spokane, Washington and Anchorage, Alaska respectively although they may be willing to travel to Seattle. It should also be noted, our offer to facilitate production of Ms. Kingsley or Ms. Savoie for deposition in Seattle in conjunction with a deposition of Mr. Brown is made only on the condition you agree is the only time either will be deposed in this matter for either ASEA, ASI or Marsh.


In closing, the potential deponents need to know if they are expected in Seattle next week. Please let us know what you are currently requesting for a schedule.


Regards,
Nancy A. Pacharzina
Attorney
Tousley Brain Stephens PLLC
1700  Seventh Avenue, Suite 2200
Seattle, WA 98101-1332
(206) 682-5600
(206) 682-2992 (fax)
npacharzina@tousley.com

The information contained in this email is confidential and may be attorney-client privileged or attorney work product. It is intended for the addressee only. Unauthorized use, review or disclosure is prohibited. If you received this email in error,

9/30/2005

please notify the sender at the above address and permanently delete the original message as well as any copy or printout.