UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
           :
In re: NEURONTIN MARKETING, SALES  :
PRACTICES AND PRODUCTS LIABILITY  :
LITIGATION  :
           :  MDL Docket No. 1629
THIS DOCUMENT RELATES TO:  :  Master File No. 04-10981
           :  Judge Patti B. Saris
LAUREN ALLEN, et al. v. PFIZER INC, et al.,  :  Mag. Judge Leo T. Sorokin
           :
Docket No. 05-10797-PBS  :
           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Date: November 17, 2005

**DEFENDANTS PFIZER INC. and
PARKE-DAVIS, a DIVISION of
WARNER-LAMBERT COMPANY,**

/s/ David B. Chaffin
David B. Chaffin
BBO #549245
Hare & Chaffin
160 Federal Street, 23rd Floor
Boston, MA 02110
(617) 330-5000

/s/ James P. Rouhandeh
James P. Rouhandeh, Esq.
Carter H. Burwell, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

This Court has jurisdiction over this action pursuant to the Class Action Fairness Act (CAFA) because plaintiffs "commenced" this putative class action after February 18, 2005, CAFA's effective date.  Plaintiffs concede that CAFA's jurisdictional requirements are satisfied here but contend that this Court should remand this action because they filed – but did not serve on defendants – a different complaint in state court prior to CAFA's effective date.  Plaintiffs' pre-CAFA complaint cannot defeat federal jurisdiction here for three reasons.

First, all of the operative events in this action, including service of a demand letter as well as filing and service of the amended complaint, took place after CAFA's effective date.  Second, filing and service of the amended complaint commenced a new piece of litigation, as a number of courts have recently held in similar circumstances, because it added a new cause of action and adopted a new theory of recovery.  Third, the federal policies underlying CAFA would be thwarted if plaintiffs are able to avoid federal jurisdiction here.  For all of the foregoing reasons, and as set forth more fully below, this Court should deny plaintiffs' motion to remand.

## ARGUMENT

CAFA represents a fundamental shift in the jurisdictional landscape and was expressly enacted to provide "for Federal court consideration of interstate cases of national importance" just like this.  119 Stat. 4, 5 (2005).  As Chief Judge Young and numerous other courts have recognized, plaintiffs bear the burden under CAFA to demonstrate that federal jurisdiction is improper, and courts should read CAFA's provisions broadly and err on the side of exercising jurisdiction.  See Natale v. Pfizer Inc., 379 F. Supp. 2d 161, 168 (D. Mass. 2005); Dinkel v. Gen. Motors Corp., __ F. Supp. 2d __, 2005 WL 3006728, *4 (D. Me. Nov. 9, 2005); see also Berry v. Am. Express Publ'g Corp., 381 F. Supp. 2d 1118, 1121-23 (C.D. Cal. 2005).

1

I.    Federal Jurisdiction Is Proper Because All Operative Events in This Action Occurred After CAFA's Effective Date

Federal jurisdiction is proper under CAFA because all the operative events in this putative

class action occurred after CAFA's effective date, February 18, 2005. Five days later, on February

23, 2005, plaintiffs served defendants with a demand letter pursuant to the requirements of section

9 of Massachusetts's consumer protection law. See Mass. Gen. Laws ch. 93A, § 9. Plaintiffs filed

the complaint described in their February 23 demand letter in state court on March 21, 2005, over a

month after CAFA's effective date, and served defendants with that complaint the following day.

For all practical purposes and for purposes of federal jurisdiction under CAFA, the action that

plaintiffs elected to initiate against defendants was not "commenced" until well after CAFA's

effective date.

This case presents a unique and novel set of circumstances: (1) plaintiffs file —but do not

serve—a putative class action complaint in state court prior to CAFA's effective date; (2)

plaintiffs then file an amended complaint after CAFA's effective date in order to pursue an

entirely new theory and add a new claim; (3) plaintiffs serve defendants with the post-CAFA

amended complaint; and (4) defendants remove to federal court the only complaint with which

they were ever served.

Although no court has addressed this precise situation, numerous courts have recognized

that "developments that postdate CAFA" can subject a putative class action to federal

jurisdiction under the act. Schillinger v. Union Pacific R.R. Co., 425 F.3d 330, 332 (7th Cir.

2005). For instance, several courts have noted that a plaintiff "could well commence a new piece

of litigation for federal purposes even if it bears an old docket number" simply by filing an

amended complaint after CAFA's effective date. Knudsen v. Liberty Mut. Ins. Co., 411 F.3d

805, 807 (7th Cir. 2005); see infra. This is true even where, unlike here, the initial complaint

2

was served on defendants and the case had been actively litigated in state court. See, e.g., Schillinger, 411 F.3d at 332. Moreover, a plaintiff can also subject his action to federal jurisdiction under CAFA by failing to serve all defendants in a timely fashion with his pre-CAFA complaint. Dinkel, 2005 WL 3006728, at *2-4. In other words, service after CAFA's effective date may also subject a case to federal jurisdiction even if the complaint had been filed prior to CAFA's effective date. Id. Taken as a whole, these cases counsel a flexible, case-by-case approach that looks to common sense and state and federal law to determine whether "the operative events [in the removed class action] all occurred before CAFA's effective date." Schillinger, 425 F.3d at 335.

The only operative complaint in this putative class action is the amended complaint that plaintiffs filed and served on defendants after CAFA's effective date. See Fed. R. Civ. P. 3; Mass. R. Civ. P. 3. Plaintiffs never even served defendants with their original complaint, which is now a nullity. See Mass. R. Civ. P. 4(j). Rather than proceed with that pre-CAFA action, plaintiffs abandoned it, changed their theory of the case, added a new claim, and finally served defendants with that new action.[1]

II.    Federal Jurisdiction Under CAFA Is Proper Because Plaintiffs Voluntarily Amended Their Complaint After CAFA's Effective Date To Pursue A New Theory And New Claim

Even if plaintiffs' original complaint is somehow relevant for purposes of jurisdiction under CAFA, it does not prevent this Court from exercising jurisdiction here. Plaintiffs voluntarily amended that complaint after CAFA's effective date to pursue a new theory of the case and to add an entirely new claim for relief and thus "commenced" a new action against defendants for

---

[1] Plaintiffs' complete failure to pursue their pre-CAFA action and their amendment and service of that amended complaint after CAFA's effective date distinguish this case from those like Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1097 (10th Cir. 2005), and Natale v. Pfizer, Inc., 424 F.3d 43 (1st Cir. 2005), upon which plaintiffs rely.

purposes of CAFA.  Nor does plaintiffs' amended complaint "relate back" to plaintiffs' original

complaint, because plaintiffs were required before serving their amended complaint to serve

defendants with a new demand letter pursuant to Massachusetts law.  Finally, plaintiffs' initial

complaint itself was subject to federal jurisdiction.

     As noted above, the Seventh Circuit and several district courts have recognized that an

amended complaint itself "could well commence a new piece of litigation" for federal jurisdiction

under CAFA.  Knudsen, 411 F.3d at 807; see Schorsch v. Hewlett-Packard Co., 417 F.3d 748, 749

(7th Cir. 2005).  At least four federal district courts have recently applied this principle and

concluded that a significant and substantive post-CAFA amendment provides federal courts

jurisdiction over a putative interstate class action under CAFA.  For example, in Heaphy v. State

Farm Mutual Automobile Insurance Co., a case directly analogous to the one here, the court

concluded that federal jurisdiction was proper under CAFA because plaintiff filed a post-CAFA

amended complaint that "add[ed] causes of action to the 'plain vanilla' breach of contract claims

originally asserted by [the plaintiff] on behalf of the class."  No. C05 5404RBL, 2005 WL

1950244, at *4 (W.D. Wash. Aug. 15, 2005).  Even though the new claims arose out of the "same

conduct," the court reasoned, the claims were "in fact separate from the claims originally asserted"

and thus the new complaint "was a new piece of litigation under CAFA."  Id. at *5; see Plummer

v. Farmers Group, Inc., 388 F. Supp. 2d 1310, 1313, 1317 (E.D. Ok. 2005) (CAFA jurisdiction

where amended complaint added new theories and claims on behalf of new class); see also

Senterfitt v. SunTrust Mortgage, Inc., 385 F. Supp. 2d 1377, 1379-80 (S.D. Ga. 2005) (CAFA

jurisdiction based on amended complaint expanding class definition); Adams v. Fed. Materials

Co., No. Civ.A. 5:05CV-90-R, 2005 WL 1862378, *4 (W.D. Ky. July 28, 2005) (CAFA jurisdiction of amended complaint adding new defendant).[2]

Here, plaintiffs' post-CAFA amended complaint presents an entirely new theory of the case, pleaded in an effort to sound entirely in state tort law, and includes an entirely new claim for relief. Plaintiffs now claim that defendants fraudulently and misleadingly misrepresented information regarding Neurontin's safety and efficacy for certain specific medical treatments. See, e.g., Am. Compl. at ¶¶ 1, 2, 7, 14, 63-81, 83, 332-44. Moreover, plaintiffs added an entirely new "false advertising" claim on behalf of the putative class. See id. at ¶¶ 345-53; Blackline Comparison of Plaintiffs' Complaints (attached as Exhibit E to Defendants' Notice of Additional Authority, Docket #213). Because plaintiffs substantively changed their action, their amended complaint is "sufficiently independent of the original contentions that it must be treated as fresh litigation." Knudsen, 411 F.3d at 807.

Nor does the amended complaint "relate back" to the original, un-served complaint because plaintiffs served defendants with a second, independent, self-styled "substitute" demand letter setting forth the substantially revised basis for their new allegations and claim on February 23, 2005. See Blackline Comparison of Plaintiffs' Demand Letters (attached hereto as Exhibit A). An adequate demand letter is a jurisdictional prerequisite to any consumer protection claim under chapter 93A of Massachusetts law and Massachusetts courts will prevent a plaintiff from asserting any claim not set forth in the demand letter. See, e.g., Spring v. Geriatric Auth. of Holyoke, 475

---

[2] It cannot be said that plaintiffs' amended complaint simply corrected a mistake or made the sort of minor change that courts have held does not constitute new litigation for purposes of removal under CAFA. See, e.g., Schillinger, 425 F.3d at 335 (correction of "scrivener's error"); Knudsen, 411 F.3d at 806 (minor change to class definition); Judy v. Pfizer, Inc., No. 4:05CV1208RWS, 2005 WL 2240088, at *3 (E.D. Mo. Sept. 14, 2005) (providing further information regarding claims and refining existing allegations); see also New Century Health Quality Alliance, Inc. v. Blue Cross & Blue Shield of Kansas City, Inc., No. 05-0555-CVWSOW, 2005 WL 2219827 *1, *4-*5 (W.D. Mo. Sept. 13, 2005); Eufaula Drugs, Inc. v. ScripSolutions, No. 2:05CV370-A, 2005 WL 2465746, *4 (M.D. Al. Oct. 6, 2005).

N.E.2d 727, 736 (Mass. 1985); Entrialgo v. Twin City Dodge, Inc., 333 N.E.2d 202, 204 (Mass. 1975). Plaintiffs were thus barred under Massachusetts law from commencing these new claims until after service of the new demand letter, which was sent to defendants after CAFA's effective date. Indeed, the revised post-CAFA demand letter is the only one plaintiffs describe in their amended complaint. See Am. Compl. ¶ 340 & Exh. 1. Allowing plaintiffs' amended complaint to "relate back" to the original, un-served complaint would be contrary to, and defeat the purposes of, demand letters under section 9 of Massachusetts's consumer protection law. See Mass. Gen. Laws ch. 93A.

In any event, plaintiffs' original complaint was itself subject to federal jurisdiction. That complaint essentially duplicated the federal *qui tam* action against defendants and based its single claim for relief solely on defendants' alleged violations of federal prescription drug marketing regulations. Had plaintiffs actually served that complaint, defendants could have removed the action pursuant to 28 U.S.C. § 1331 because any determination of plaintiffs' claim would have necessarily required interpretation of the thicket of FDA regulations that govern the marketing of prescription drugs. See In re Zyprexa Prods. Liab. Litig., 375 F. Supp. 2d 170, 172-73 (E.D.N.Y. 2005) (exercising federal question jurisdiction over claim involving alleged violations of federal law related to off-label promotion of prescription drugs).

III.    Federal Jurisdiction Is Proper Under CAFA Because It Would Promote The Federal Policies Behind CAFA And The MDL

Federal jurisdiction is proper under CAFA for the additional reason that exercising jurisdiction would promote both the federal policies behind CAFA and the MDL. As noted above, Congress enacted CAFA with the express purpose of providing federal court jurisdiction over putative class actions such as this. See 119 Stat. at 5. Plaintiffs do not contest that this case would otherwise fall squarely within this Court's expanded jurisdiction under CAFA. Instead, plaintiffs

claim that a wholly different complaint that they never served on defendants prevents this case from being heard in federal court. This contention is "contrary to everything Congress thought it was accomplishing in enacting CAFA." Dinkel, 2005 WL 3006728, at *4 (citing extensively to CAFA's legislative history). To allow plaintiffs' un-served and abandoned pre-CAFA complaint to defeat federal jurisdiction under CAFA here would subvert Congress's stated intent in enacting CAFA and unfairly prejudice defendants' right to removal.

Moreover, plaintiffs' amended action is indistinguishable from those already before this Court in In re Neurontin Marketing, Sales Practices and Products Liability Litigation, MDL Docket No. 1629 (the Neurontin MDL). As this Court is well aware, the Judicial Panel on Multidistrict Litigation has already consolidated in this District over fifty putative class actions that raise claims substantially identical to those plaintiffs raise in their amended complaint. Exercising federal jurisdiction here will help to prevent inconsistent judgments and promote judicial economy by ensuring that this action is transferred and consolidated in the Neurontin MDL. 28 U.S.C. § 1407; see Dinkel, 2005 WL at *3006728 (exercising CAFA jurisdiction in context of action "transferred to this court for multidistrict proceedings along with the multitude of other comparable lawsuits from around the country").

## CONCLUSION

For the foregoing reasons, defendants respectfully request that plaintiffs' motion to remand be denied.

EXHIBIT A

~~Bonsignore~~

# BONSIGNORE & ~~Brewer~~BREWER
## [Logo]

~~October 14, 2004~~

February 23, 2005

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**No. 7004 1350** ~~0002 1482 1969~~**0000 3484 8559**
**Pfizer, Inc.**
235 East 42nd Street
New York, NY 10017

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**No. 7004 1350** ~~0002 1482 1976~~**0000 3484 8566**
**Parke -Davis**
2800 Plymouth Road.
Ann Arbor, MI 48105

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**No. 7004 1350** ~~0002 1482 1983~~**0000 3484 8573**
**Warner-Lambert Co.**
201 Tabor Road
Morris Plains, NJ 07950

> **Re:** **Consumer Demand Letter Pursuant to the Massachusetts**
> **Consumer Protection Act, Mass. Gen. Laws c. 93A**

Dear Sirs and/or Madams:

Please be advised that this office represents ~~the within named~~Claimants and putative class representatives, Laura Allen, Administratix of the Estate of the Late Daniel Allen, Timothy Bridges, Alfred Morabito, Scott M. Bernard and others, Massachusetts consumer purchasers of Neurontin ~~and others including but not limited to those listed in Attachment A in their claims~~(hereinafter referred to as "Claimants"), and all other similarly situated Massachusetts resident consumers

in their claims for damages against PFIZER, INC., individually and as successor
in interest to PARKE -DAVIS and WARNER -LAMBERT CO. and others
known only to the aforementioned parties (hereafter collectively referred to as
"Pfizer" and/or "you")., "Respondents" and/or "you"). This letter serves as a
written demand for relief pursuant to Massachusetts General Laws Chapter 93A,
§9(3) and another attempt by Claimants to facilitate a genuine settlement
dialogue. To the extent that you did not understand or accept our first
correspondence, we provide you with this substitute.

## SUMMARY DEMAND

From 1994 to the present, Pfizer created and implemented an unfair or
deceptive marketing and sales scheme that misrepresented the scientific, medical
and clinical data related to the safety, medical efficacy, effectiveness and
usefulness of Neurontin for medical conditions other than for adjunctive therapy
for epilepsy and for post-herpetic neuralgia. The purpose of the unfair or
deceptive scheme was to substantially increase the sales and profits of Neurontin
at the expense of Massachusetts consumers.

Pfizer knowingly and willingly engaged in unfair or deceptive acts or
practices that caused Massachusetts consumers to pay for Neurontin to treat a
variety of symptoms for which Neurontin was not proven to be safe, efficacious,
effective or useful. Using their own employees, intermediary medical marketing
firms and unsuspecting physicians, Pfizer unfairly and deceptively marketed and
sold Neurontin to treat a multitude of medical conditions despite Pfizer's
knowledge that there was no scientific basis to support such uses. Pfizer's unfair
or deceptive marketing and sales practices included: (1) deliberate
misrepresentations concerning the scientific, medical and clinical data related to
safety, efficacy, effectiveness and usefulness of Neurontin for medical conditions
other than as an adjunct therapy for epilepsy (1994) and for post-herpetic
neuralgia (2003); (2) knowing creation, publication and dissemination of articles,
reports and studies misrepresenting the scientific credibility of data and authors of
such articles, reports and studies; (3) deliberate misrepresentations of the
credentials and qualifications of certain Pfizer employees as purported specialists,
researchers or physicians in order to market and sell Neurontin for scientifically
unproven uses; (4) organizing seminars and encouraging physicians to prescribe
Neurontin for uses not proven to be safe, efficacious, effective or useful; and (5)
intentional misrepresentations and concealment of Pfizer's role and participation
in the creation and sponsorship of seminars, events, articles and publications
aimed at selling Neurontin for medical conditions other than as an adjunct therapy
for epilepsy and for post-herpetic neuralgia.

The putative class includes all Massachusetts resident consumers who
purchased Neurontin as prescribed for a reason other than postherpetic neuralgia
or adjunctive therapy inscientifically unproven uses between January 1, 1994 and

2

the present. ("Class Period"). Excluded from the class are consumers who purchased Neurontin as adjunctive therapy for the treatment of partial epileptic seizures ~~or any other off-label use promoted by Defendants between October 8, 2000, and the present, and/or as extended as a result of fraudulent concealment, and/or for a class period deemed just and reasonable by a Court of law. At this time we know your drug was approved inn 1993. Demand is made for the first date you promoted Neurontin for an off-label use and for the dates of all related off-label marketing campaigns of whatever nature including the so-called ghost writing work leading up to active marketing efforts.~~and for post-herpetic neuralgia. All references in this correspondence other than those assigned a specific time frame are to the aforementioned class period.

~~This correspondence is a demand for a reasonable offer of settlement for harm caused by you to consumers who purchased Neurontin for a non-FDA approved, off-label use. Your promotion of off-label uses of Neurontin, including but not limited to the actions referenced herein, constitutes willful and knowing conduct. As such, it is our position that a failure on your part to respond to this demand for relief will expose you to a statutory award of multiple damages. Please seriously consider your exposure before you reject this claim and force us to file suit. Please tender your written response within thirty (30) days. See M.G.L. c. 93A § 9(3). Failure to tender a written offer of settlement may subject you to punitive damages.~~

~~This class-wide claim on behalf of similarly situated consumers arises from illegal, unfair and/or deceptive conduct in your promotion of off-label uses for Neurontin. In addition to the lack of any legal, ethical, scientifically valid, and/or FDA approved authority or support for representations made to physicians and the public that Neurontin would have clinical value for the off-label uses, we take the time to list several of your unfair acts and practices. It is our position that individually and jointly they violated the Massachusetts Consumer Protection Act, M.G.L. c. 93A and caused similar injury to each putative class member.~~

Demand is made for the following economic relief:

1.    That you offer full reimbursement to Claimants and each class member who purchased Neurontin for the treatment of medical conditions other than as an adjunct therapy for epilepsy or for post-herpetic neuralgia; or in the alternative
2.    Statutory minimum damages in the amount of $25 per person as allowed under M.G.L. c. 93A, § 9(3); and
3.    Reimburse Claimants and members of the proposed class for their reasonable attorney's fees and expenses incurred in asserting this claim.

3

Be clear that under Massachusetts' state law your conduct ~~entitles the putative class representatives~~entitles the Claimants to pursue a class action suit against you. ~~Persons who have been~~The Massachusetts legislature made clear their intent to create a wholly state law cause of action for persons injured by an unfair or deceptive act or practice. Such persons can pursue a class action "*if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons.*" ~~M.~~G.L. c. 93A, § 9(2). Your ~~overall~~common course of conduct presents the identical legal issue to all members of the putative class, namely, whether ~~your conduct in~~promoting the ~~off-label promotion of Neurontin violated G.L. c. 93A §§ 2, 9.~~use of Neurontin for purposes having no scientifically valid support violated G.L. c. 93A, §§ 2,9. Other unfair or deceptive practices exist, including but not limited to, whether the nature and extent of the marketing department ghost writers and the other unfair or deceptive acts or practices you undertook in target marketing the mentally ill, those in chronic pain and the terminally ill. Each member of the class is similarly situated to other persons who were victimized by your unfair ~~promotional~~or deceptive marketing and sales acts and practices. Each ~~has been similarly injured~~class member has suffered similarly economic injury and is entitled to restitution or statutory minimum damages.

~~Your offer should be for class-wide relief. We ask that you agree to a permanent injunction that has the effect of banning the off-label promotion of Neurontin in the Commonwealth of Massachusetts. We are willing to craft the injunction so as to allow for future legal and appropriate uses of Neurontin, pursuant to court-reviewed and approved medical studies conducted by reputable hospitals or universities.~~

~~We also demand that you extend an offer of the minimum statutory damage recovery of $25 per consumer and a claims administration program via an independent concern specializing in such claims processing. In the alternative we demand you set forth a reasonable offer of settlement.~~

~~Should you fail to respond with a reasonable offer of settlement within the statutorily allotted thirty (30) days, we reserve the right to seek $25 per purchase, punitive damages and/or to pursue, if necessary, through to the highest appellate level an equitable damages claim of disgorgement of bad profits.~~

## FACTUAL BACKGROUND

~~The Food and Drug Administration approved Neurontin, the brand name drug for the generic gabapentin, for only two uses: (1)~~It is a matter of public record that Neurontin was approved on December 30, 1993 for the limited purpose of treatment of partial seizures with and without secondary generalization in adults with epilepsy In doses from 900 to 1800 milligrams a day. Neurontin was also approved in 2003 for the management of post-herpetic neuralgia in

4

adults, and (2) as. The scientifically valid support you have on the efficacy of Neurontin remains limited. During the class period, the uses of Neurontin that you were able to garner scientific support was limited to adjudicative therapy in the treatment of partial seizures with or without secondary generalization in patients age 12 and over with epilepsy (as of 1994) and for the management of post-herpetic neuralgia in adults (as of 2003) (hereinafter referred to as adjunctive therapy for epilepsy and post-herpetic neuralgia).

Notwithstanding these express limitations by the FDAthe fact you lacked scientifically valid support for the wide spread use of Neurontin, you selected the drug for "blockbuster"[1] status and. You then aggressively marketed it for off-label usesNeurontin in an unfair and deceptive manner. for purposes having no scientifically valid support. The highly profitable conditions you unfairly and deceptively selected for off-label promotion knowingly and willfully targeted among the most vulnerable and desperate consumer groups. These off-label uses included, but areYou unfairly and deceptively promoted Neurontin for medical conditions without scientific, medical and clinical data related to the safety, medical efficacy, effectiveness and usefulness of numerous conditions, including but not limited to, the treatment of:

1. Bipolar Disorder;
2. Pain Syndromes, Peripheral Neuropathy, and Diabetic Neuropathy;
3. Epilepsy as a monotherapy;
4. Reflex Sympathetic Dystrophy (RSD);
5. Attention Deficit Disorder (ADD);
6. Restless Leg Syndrome (RLS);
7. Trigeminal Neuralgia;
8. Amyotrophic Lateral Sclerosis (ALS, a degenerative nerve disease commonly referred to as Lou Gehrig's Disease);
9. Essential Tremor Periodic Limb Movement;
10. Migraines; and
11. Drug and Alcohol withdrawal seizures.;

You marketed, advertised, and distributed Neurontin in the Commonwealth of Massachusetts, benefiting from our laws and deriving substantial financial gain, all the while making material misrepresentations and omissions that reasonably altered consumer behavior. This and the other conduct referred to herein was knowing, willful, unfair and deceptive. The allegedly clinically significantclinical evidence to whichthat you pointedpromoted was flawed, inadequate, misrepresented, unfair and/or deceptive. Your wrongful

---

[1] As you know, in the drug industry a "blockbuster" drug is any drug that sells $1 billion per year or more.

5

~~conduct harmed~~ and directly caused each member of the putative class to suffer similar economic injury.

As described herein, and as further documented in your own internal documents and corporate knowledge, at a minimum you actively manipulated, created, represented and/or disseminated intentionally false information ~~about Neuroritin's qualities~~concerning Neurontin's safety, medical efficacy, effectiveness and usefulness.[2] You also failed to disclose or provide full information about the known true limitations of Neurontin use or the basis ~~of the off-label~~for your unfair or deceptive promotions. In essence, your product was no more effective than a sugar pill ~~to many who changed or adopted their purchasing habits and/or other conduct to buy Neurontin based on your unfair or deceptive acts and practices and/or methods of competition.~~ Perhaps most reprehensible is the fact you chose to wrongfully profit at the expense of those in our society who are most vulnerable, *i. e.*, ~~chronic pain sufferers and~~ the mentally ill, the terminally ill and those in chronic pain.

Much of the information pertaining to your unfair or deceptive marketing and sales scheme that misrepresented the scientific, medical and clinical data related to the safety, medical efficacy, effectiveness and usefulness of Neurontin continues to remain in you exclusive possession and control. Likewise, information that would allow Claimants to identify the number of prescriptions written in the Commonwealth of Massachusetts to treat symptoms for which Neurontin was not proven to be safe, efficacious, effective or useful and the number of known patients in the Commonwealth of Massachusetts that were prescribed Neurontin for conditions where the scientific, medical and clinical data were misrepresented remains in your exclusive possession and control. As such, Claimants respectfully request that this information be provided as evidence of your interest in participating in good faith efforts to reasonably reach resolution of this claim.

## OVERVIEW OF MASSACHUSETTS CONSUMER PROTECTION LAW

All "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are illegal in the Commonwealth of Massachusetts. ~~M.~~G.L. c. 93A § 2(a). A practice is "deceptive" for purposes of the Act if it could reasonably be found to have

---

[2] A successful G.L. c. 93A action based on deceptive acts or practices does not require proof that a plaintiff relied on the representation or that the Defendant knew that the representation was false, see *Slaney v. Westwood Auto, Inc., 366 Mass. 688, 703, 322 N.E.2d 768 (1975)*, or even that the defendant intended to deceive the plaintiff which you did. See *Swanson v. Bankers Life Co.*, 389 Mass 345, 349, 450 N.E.2d ~~577~~577.

caused a person to act differently from the way he or she otherwise would have acted. In the same vein, we have stated that conduct is deceptive if it possesses a tendency to deceive. In determining whether an act or practice is deceptive, regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which the act or practice might reasonably be expected to have upon the general public. *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. ~~381, 394~~381,394 (2004) (internal marks and citations omitted).

Your ~~wrongful~~unfair and deceptive conduct caused members of the class to suffer similar economic harm each time they ~~expended payment for~~purchased a prescription of Neurontin~~, as described by the Act and supporting regulations, 940 C.M.R. §§ 3.00 et seq. (2004)~~. The economic loss stems directly from Pfizer's ~~illegal~~unfair or deceptive marketing, promotion and advertisement of the drug Neurontin.

~~Note that M.G.L. c. 93A § 9(3) sets forth procedural requirements to commence a cause of action under G.L. c. 93A.~~ We believe this demand ~~meets the minimum pre-litigation procedural requirements set forth, as it~~ identifies the ~~claimants~~Claimants, reasonably describes the unfair or deceptive acts or practices committed by you and/or your companies, and states the injury suffered. *See, e.g.,* ~~Entriago~~*Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 813 (1975); *Baldassari v. Public Finance Trust*, 369 Mass. 33, 41-42 (1975); *York v. Sullivan*, 369 Mass. 157, 163 (1975); *Heller v. Silverbranch Const. Corp.*, 376 Mass. ~~621, 627~~621,627 (1978); *Spring v. Geriatric Authority of Holyoke*, 394 Mass. 274, 287 (1985). Moreover, we believe this demand letter sufficiently ~~gives Pfizer~~provides you with "an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied" and at a minimum enables ~~Pfizer~~you to ~~offer~~extend "a reasonable tender of settlement"~~ so as to potentially limit the recoverable damages~~." *Slaney v. Westwood Auto, Inc.*, 366 Mass. ~~688, 704~~688,704 (1975). *See also Spring*, 394 Mass. at 288; *York*, 369 Mass. at 162-63.

### PUTATIVE CLASS REPRESENTATIVES AND THE CLASS

~~Stella Alexander is a resident of Massachusetts whose doctor prescribed Neurontin as a drug therapy treatment for the following conditions: chronic back pain; pain syndromes; peripheral neuropathy; and diabetic neuropathy. You wrongly promoted the drug for these off-label uses.~~

~~Dan Allen was a resident of Massachusetts whose doctor prescribed Neurontin as a drug therapy treatment for Amyotrophic Lateral sclerosis (Lou Gehrig's Disease). You wrongly promoted the drug for these off-label uses.~~

7

~~Lawrence Beren is a resident of Randolph, Massachusetts, who took Neurontin for two separate thirty-day periods. His doctor prescribed Neurontin as a drug therapy treatment for the following conditions: diabetic neuropathy; peripheral neuropathy; and pain syndromes. You wrongly promoted the drug for these off-label uses.~~

Claimant, Laura Allen, Aministratrix of the Estate of the late Daniel Allen, is a resident of the Commonwealth of Massachusetts whose late husband was prescribed Neurontin during the Class Period for the treatment of migraine headaches, loss of energy and Amyotrophic Lateral Sclerosis (Lou Gehrig's Disease). Such conditions were among the scientifically unproven uses of Neurontin that you wrongly promoted the drug for. As a result, Claimant has been injured by reason of the acts or practices alleged herein.

Claimant, Timothy Bridges, is a resident of the Commonwealth of Massachusetts who was prescribed Neurontin during the Class Period for treatment of pain syndromes, nerve pain and stroke-like symptoms. Such conditions were among the scientifically unproven uses of Neurontin that you wrongly promoted the drug for. As a result, Claimant has been injured by reason of the acts or practices alleged herein.

Claimant, Alfred Morabito, is a resident of the Commonwealth of Massachusetts who was prescribed Neurontin during the Class Period for treatment of arthritis, tremors and fibromyalgia. Such conditions were among the scientifically unproven uses of Neurontin that you wrongly promoted the drug for. As a result, Claimant has been injured by reason of the acts or practices alleged herein.

Claimant Scott M. Bernard is a resident of ~~Norfolk,~~the Commonwealth of Massachusetts, ~~who took Neurontin for approximately three (3) months. His doctor~~ who was prescribed Neurontin during the Class Period as a drug therapy treatment for ~~the following conditions:~~bipolar disorder;, Attention Deficit Disorder ~~(ADD);~~ and drug/alcohol withdrawal symptoms. ~~You~~Such conditions were among the scientifically unproven uses of Neurontin that you wrongly promoted the drug for ~~these off-label uses.~~ As a result, Claimant has been injured by reason of the acts or practices alleged herein.

~~Timothy Bridges is a resident of Nantucket, Massachusetts, who has been taking Neurontin for approximately five (5) years. His doctor prescribed Neurontin as a drug therapy treatment for pain syndromes, and specifically nerve pain. You wrongly promoted the drug for this off-label use.~~

~~Anne Calucci is a resident of Massachusetts whose doctor prescribed Neurontin as a drug therapy treatment for head pain due to Ramsey-Hunt~~

8

Syndrome and trigeminal neuraligia. You wrongly promoted the drug for these off-label uses.

Rachel Pauline Cann (hereafter "Cann") is a resident of Massachusetts who took Neurontin for approximately six (6) months. Her doctor prescribed Neurontin as a drug therapy treatment for pain syndromes, and specifically severe arthritis. You wrongly promoted the drug for this off-label use.

Joseph Delong is a resident of Massachusetts whose doctor prescribed Neurontin as a drug therapy treatment for the pain syndromes and migraines. You wrongly promoted the drug for these off-label uses.

Faye K. DeSaulnier (hereafter "DeSaulnier") is a resident of Shrewsbury, Massachusetts, who took Neurontin for approximately one (1) year. Her doctor prescribed Neurontin as a drug therapy treatment for the following conditions: diabetic neuropathy; Restless Leg Syndrome (RLS); and essential tremor periodic limb movement. You wrongly promoted the drug for these off-label uses.

Marilee Kemsley is a resident of Massachusetts whose doctor prescribed Neurontin as a drug therapy treatment for migraines. You wrongly promoted the drug this off-label use.

Laura Ashley Kindred is a resident of Burlington, Massachusetts, who took Neurontin for approximately twenty-two (22) months. Her doctor prescribed Neurontin as drug therapy treatment for depression. You wrongly promoted the drug for this off-label use.

Sanchito Murray is a resident of Massachusetts whose doctor prescribed Neurontin as a drug therapy treatment for the following conditions: bipolar disorder; pain syndromes; diabetic neuropathy; Restless Leg Syndrome (RLS); and essential tremor periodic limb movement. You wrongly promoted the drug for these off-label uses.

Gabriele Percy is a Massachusetts resident whose doctor prescribed Neurontin as a drug therapy treatment for pain syndromes and trigeminal neuralgia. You wrongly promoted the drug for these off-label uses.

Paul Schwolzer was a Massachusetts resident whose doctor prescribed Neurontin as a drug therapy treatment for Amyotrophic Lateral Sclerosis (Lou Gehrig's Disease). You wrongly promoted the drug for this off-label use.

Renee Wardenaar is a Massachusetts resident whose doctor prescribed Neurontin as a drug therapy treatment for nightmares, flashbacks, and drug and alcohol withdrawal seizures. You wrongly promoted the drug for these off-label uses.

9

Claimants make a claim against Pfizer individually and on behalf of all other similarly situated and injured.[3] *See* G.L. c. 93A § 9(2); *see also Aspinall*, 442 Mass. at 391, 402 (certifying under (IL. c. 93A a class of consumers alleged to have been subjected to misleading marketing). Claimants assert the claims exclusively under (G.L. c. 93A, §§ 2 and 9(2), individually and on behalf of the following putative class:

> All resident Massachusetts consumers who purchased Neurontin for non-commercial and/or consumer purposes as prescribed for scientifically unproven uses between January 1, 1994 and the present.

> Excluded from the Class are all claims for personal injury or wrongful death. Neither the Claimants nor any member of the class has damages exceeding $75,000 each even when trebled. Claimants state and intend to state a cause of action solely under the laws of Massachusetts and specifically disavow any attempt to state or rely upon a federal question and/or cause action under the laws of the United States.

~~Each~~Claimants and each member of the putative class ~~and each of these claimants~~ sustained economic harm and/or the invasion of a legally protected right by Pfizer's use or employment of unfair or deceptive acts or practices, ~~as further described below~~referred to herein, which have been declared unlawful ~~by~~and violative of M.G.L. c. 93A §§§ 2 and ~~accompanying regulations.~~9. *See, e.g., Aspinall*, 442 Mass. at 400 (quoting *Leardi v. Brown*, 394 Mass. 151, 160 (1985)). ~~Therefore, each claimant is entitled to bring an action against Pfizer pursuant to M.G.L. c. 93A § 9(1).~~

~~Moreover, the claimants serve this demand letter as a precursor to a subsequent M.G.L. c. 93A § 9(2) class action suit. Each claimant makes a claim against Pfizer individually and on behalf of all others similarly situated and injured.[3] See M.G.L. c. 93A § 9(2); see also Aspinall, 442 Mass. at 391, 402~~

---

[3] The Consumer Protection Act, MG.L. c. 93A § 9(2) provides that: "[a]ny persons entitled to bring [an action under M.G.L. c. 93A § 9(1)] may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons. . . ."

[3] ~~The Consumer Protection Act, M.G.L. c. 93A § 9(2) provides that: "[a]ny persons entitled to bring [an action under M.G.L. c. 93A § 9(1)] may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons. . . ."~~

~~(certifying a consumer class under M.G.L. c. 93A alleged to have been subjected to misleading marketing).~~

~~The putative class includes all Massachusetts resident consumers who purchased Neurontin as prescribed for a reason other than postherpetic neuralgia or adjunctive therapy in the treatment of partial epileptic seizures or any other off-label use promoted by Defendants between October 8, 2000, and the present, and/or as extended as a result of fraudulent concealment, and/or for a class period deemed just and reasonable by a Court of law.[4] The putative class asserts that as a result of your fraudulent concealment, the statute of limitations has been tolled.~~

## ~~A SAMPLING OF~~ UNFAIR OR DECEPTIVE ACTS OR PRACTICES ~~AND UNFAIR METHODS OF COMPETITION~~

Pfizer violated ~~M.~~G.L. c. 93A by engaging in knowing~~,~~ and willful, intentional and coordinated deceptive acts ~~and practices~~or practices to market and sell Neurontin to treat a multitude of medical conditions despite Pfizer's knowledge that there was no scientific basis to support such uses. The Supreme Judicial Court recently clarified the definition of "deceptive" for cases such as this.

> [A] practice is "deceptive," for purposes of G.L. c. 93A, if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted. In the same vein, we have stated that conduct is deceptive if it possesses a tendency to deceive. In determining whether an act or practice is deceptive, regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which the act or practice might reasonably be expected to have upon the general public.

*Aspinall*, 442 Mass. at 394 (internal marks and citations omitted).

Pfizer also violated ~~M.~~(G.L. c. 93A § 2(a) by engaging in a variety of other unfair or deceptive acts or practices in the conduct of trade or commerce, as identified by 940 C.M.R. §§ 3.00 et seq., regulations authorized by M.G.L. c. 93A § 2(c). These regulations have the force of law and "set standards the violations of which ... constitute violations of [G.L.] c. 93A." *Purity Supreme, Inc. v. Attorney*

---

[4] ~~The applicable statute of limitations for violations of the Consumer Protection Act, M.G.L. c. 93A, is four (4) years. See MGL. c. 260 § 5A. However, the statute of limitations is tolled when a defendant fraudulently conceals wrongful conduct from the injured plaintiff(s). See M.G.L. c. 260 § 12 ("If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."); see also Ciardi v. Hoffmann-LaRoche, LTD. 2000 WL 33162197, at *9 (Mass. Super. Sept. 29, 2000) (Botsford, J.)~~

11

*Gen.*, 380 Mass. 762, 769-771 (1980). Per the terms of the regulations, the following activities constitute unlawful unfair or deceptive acts or practices that violate ~~M.~~G.L. c. 93A § 2:

1.  producing a statement in advertising which creates a false impression of the quality or utility of the product offered, or which may otherwise misrepresent the product, *see* 940 C.M.R. § 3.02(2);

2.  stating a claim or representation "by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect. . . [including] representations or claims relating to the. . . reliability. . . or the utility of such product . . . or the benefit to be derived from the use thereof," see 940 C.M.R. § 3.05(1);

3.  using advertisements "which would mislead or tend to mislead buyers or prospective buyers, through pictorial representations or in any other manner, as to the product being offered for sale," 940 C.M.R. § 3.05(2); *see also* 940 C.M.R. § 6.01 (defining "material representation"); 940 C.M.R. § 6.04(1) (defining "misleading representation").

~~Further, "an act or practice is a violation of M.G.L. c. 93A, § 2 if: (1) [i]t is oppressive or otherwise unconscionable in any respect; or (2) [a]ny person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; or (3) [i]t fails to comply with existing statutes, rules regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection; or (4) [i]t violates the Federal Trade Commission Act... or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2." 940 C.M.R. § 3.16.~~ Note that "940 CMR 3.00 is not intended to be all inclusive as to the types of activities declared unlawful by ~~M.~~G.L. ~~c.~~ c. 93A, § 2(1) but ~~are~~axe intended to be of general application." 940 C.M.R. § 3.00.

~~In 1993, Pfizer obtained approval from the Food and Drug Administration (FDA) for Neurontin only as adjunctive therapy in the treatment of partial seizures after maximum tolerated doses of older drugs are used. Nine years later, in 2002, Pfizer received approval for Neurontin for the management of post-herpetic neuralgia in adults. These uses are the only two that can legally appear on the label for Neurontin. Accordingly, pursuant to FDA regulations, Pfizer may only advertise Neurontin for these approved uses. *See* 21 C.F.R. § 812.7(a) (2004).~~

## A SAMPLING OF UNFAIR OR DECEPTIVE ACTS OR PRACTICES

With apparently utter disregard for the ~~law~~mentally ill, terminally ill and those in chronic pain, Pfizer promoted Neurontin for at least ~~twelve~~eleven (~~12~~) ~~"off-label" unapproved~~11) uses that lacked scientifically valid support, including the treatment of: bipolar disorder; pain syndromes, peripheral neuropathy, and diabetic neuropathy; epilepsy as a monotherapy; Reflex Sympathetic Dystrophy (RSD); Attention Deficit Disorder (ADD); Restless Leg Syndrome (RLS); trigeminal neuralgia; Amyotrophic Lateral Sclerosis (ALS, a degenerative nerve disease commonly referred to as Lou Gehrig's Disease); essential tremor periodic limb movement; migraines; and drug and alcohol withdrawal seizures.~~Pfizer's conduct in marketing Neurontin has constituted, on numerous occasions and in a variety of ways,~~ In addition, in an effort to increase sales, Pfizer initiated an unfair or deceptive campaign to convince physicians to prescribe Neurontin in doses 33% greater than the accepted safety level. Pfizer abandoned any semblance of ethical behavior and adopted an unfair or deceptive pattern of marketing based on half-truths, misrepresentations and worse. Your quest for an unattainable sales volume and its related profits fueled and sustained your descent into marketing Neurontin almost exclusively by unfair or deceptive acts or practices.~~Once proven, all~~ are violative of G.L. c. 93A.

All members of the putative class of ~~off-label purchasers will have been injured (regardless of whether some off-label consumers actually received some benefit from the drug). This is so because all purchased (and presumably used) a product that that~~Massachusetts Neurontin purchasers were economically injured. All purchased a product that was not equal in value to the price charged, a product which was deceptively marketed~~, as a matter of law, because~~ by you. Claimants believe that your unfair or deceptive ~~marketing efforts created an overall misleading impression. All~~. marketing acts or practices were intentional, willful and were meant to deceive. A~~ll~~ class members will be entitled at a minimum to statutory damages. *See* ~~M.~~G.L. c. 93A § 9(3); *Aspinall, supra.*

This class wide claim brought on behalf of similarly situated and similarly injured Massachusetts consumers arises from unfair and/or deceptive conduct in your promotion of uses for Neurontin that lacked sufficient scientifically valid support. In addition to the lack of scientifically valid support, your marketing violated industry ethical standards and the representations you made to Massachusetts physicians and the consuming public was unfair and deceptive. While we take the time to list several of your unfair acts and practices understand they are only examples. The list of individual instances of your unfair and deceptive practices is voluminous and you retain exclusive possession and control of many details. As such, Pfizer willfully and knowingly utilized an unfair or deceptive ~~stream of unethical promotion tactics~~scheme of acts and practices to achieve ~~its~~the high ~~marketing~~sales volume and profit goals it set for Neurontin, including, but not limited to the following~~.~~:

13

1.    Pfizer encouraged sales representatives to provide <u>improper</u> one-on-one sales pitches to physicians, ~~without prior inquiry,~~ about ~~off-label~~ uses of Neurontin~~.~~ <u>for purposes having no scientifically valid support;</u>

2.    Pfizer <u>published or caused to be published articles, studies and reports that misrepresenting the scientific credibility of the data and the authors of the articles, studies and reports;</u>

<u>3.</u>    Pfizer permitted its agents to make false or misleading statements to health care professionals about the drug's <u>safety,</u> efficacy, <u>effectiveness</u> and ~~FDA approval.~~<u>usefulness;</u>

~~3.~~<u>4.</u> Pfizer utilized "medical liaisons," to promote ~~off-label uses.~~ ~~These~~<u>select uses of Neurontin that had no scientifically valid support. Further, these</u> liaisons represented themselves (often falsely) as scientific experts~~.~~<u>;</u>

~~4.~~<u>5.</u> Pfizer ~~also~~ paid doctors to attend "consultants' meetings." Despite the fact that Pfizer allegedly hired these physicians to provide consultations at the meetings, ~~they provided~~<u>Pfizer did not use the information gathered if any, and after appearing the attendees were asked to provide</u> little or no significant consulting. Rather, the doctors ~~attended~~<u>attending were directed in the alternative to</u> expensive dinners or conferences at luxurious locations, during which Pfizer's agents made presentations about ~~off-label~~ uses of Neurontin <u>for purposes having no scientifically valid support.</u> These so-called<u> medical liaison</u> "meetings" included extravagant weekends and trips to Florida, the 1996 Atlanta Olympics, and Hawaii~~.~~<u>;</u>

~~5.~~    ~~Further,~~<u>6.</u> Pfizer instructed its sales representatives to recruit physicians to call into teleconferences and listen to a doctor or Pfizer employee lecture on ~~off-label~~<u>select</u> uses of Neurontin. <u>Those select uses involved purposes having no scientifically valid support;</u>

~~6.~~<u>7.</u> Pfizer also sponsored ~~alleged~~<u>events they misrepresented to be</u> "independent medical education" events, focusing on ~~off-label~~ uses of Neurontin~~, where~~ <u>having no scientifically valid support. During these "independent medical education"</u> its employees or agents would ~~maintain~~<u>exercise</u> extensive control over the topics, speakers, content, and participants~~. Indeed, on~~ <u>but deceptively did not disclose this fact to attendees. On</u> at least one occasion, when a speaker at ~~such an~~<u>a deceptively self styled</u> "independent medical

14

education" event posited unfavorable remarks about Neurontin, Pfizer knowingly, willfully, unfairly and deceptively offset the negative impact by then planting its agents and/or employees in the audience to ask questions that would highlight the drug's illusory benefits.;

7.    Moreover8.    Using unfair and deceptive misrepresentations as a lead in, Pfizer even paid physicians to allow sales representatives to be present during the examination of patients. The sales representatives would deceptively offer biased advice regarding the patient's treatment in order to advance the off-label uses of Neurontin for purposes having no scientifically valid support; and

9.    Pfizer intentionally misrepresented and concealed their role in the creation and sponsorship of a variety of seminars, events, articles and publications aimed to sell Neurontin for purposes with no scientific, medical and clinical data related to safety, efficacy, effectiveness and usefulness.

These inventedThe misrepresented uses for Neurontin and illegalthe unfair or deceptive promotional tactics. were implemented as part of a widespread, coordinated effort to implement an off-label marketing plan, turned the drug to turn the Neurontin into a "blockbuster." A " despite the fact that standing on its own scientifically supported uses "blockbuster" status could never be reached. A "blockbuster" is any drug that sold $1 billion per year or more. Neurontin earned $1.3 billion in 2000 and $1.7 billion in 2001; the vast majority of these sales were for off-label uses with more than 78% of prescription written for uses with no scientific, medical and clinical data.

Not only has Pfizer reaped the financial benefits from the marketing plan, amounting to approximately $3 billion in just 2000 and 2001, but the company may also attain long-term benefits from the current prescribing habits of physicians. Additionally, over 700 articles have beenOn information and belief over 700 articles were published in medical literature on Neurontin. These during the putative class period. Many of these articles employ results obtained from company-contrived studies on off-label uses of the drug, and there may not be any effort to eradicate this misleading information from the medical journals. Thus, patient's years into the future remain susceptible to the prescription of Neurontin for inappropriate, ineffective, and potentially harmful usesuses of Neurontin for purposes having no scientifically valid support.

Pfizer designed, expanded and perpetuated its off-labeltheir promotion of uses of Neurontin for purposes having no scientifically valid support. This unfair or deceptive marketing scheme was not for the benefit of Massachusetts consumers or enhanced comfort of patients, but solely for the purpose of meeting

15

its marketing goals. ~~The Neurontin off-label marketing campaign put profits over people.~~ Underscoring this fact, ~~during one teleconference,~~and as summed up best by a senior Pfizer marketing executive ~~said to~~during a teleconference with a medical ~~liaisons~~liaison:

> "I want you out there every day selling Neurontin. Look this isn't just me,, it's come down from Morris Plains that Neurontin is more profitable. We all know Neurontin's not growing as an adjunctive therapy, beside that is not where the money is. Pain management, now that's money. Monotherapy, that's money. We don't want to share these patients with everybody, we want them on Neurontin only. We want their whole drug budget, not a quarter, not half, the whole thing. . . .We can't wait for, them to ask, we need to get out there and tell them up front. . . That's where we need to be holding their hand and whispering in their ear.- Neurontin for pain, Neurontin for monotherapy, Neurontin for bipolar, Neurontin for everything². . . . . . . I don't want to see a single patient coming off Neurontin until they have been up to at least 4800 mg/day, I don't want to hear that safety crap either, have you tried Neurontin, every one of you should take one just to see there is nothing [that the drug is safe], it's a great drug."

Other examples of Pfizer's unfair or deceptive scheme include, but are not limited to:

1.   Instructing employees to deliberately contrive reports to mislead physicians into believing that a body of data existed that demonstrated the effectiveness of Neurontin in the treatment of unproven uses such as bipolar disease. In fact, no data existed at all to support such uses;

2.   Instructing employees to actively deceive physicians with contrived data, falsified "leaks" from clinical trials, scientifically flawed reports, or "success stories" that stated that Neurontin was highly effective in the treatment of a variety of uses including pain syndromes. No such body of evidence existed;

3.   Instructing employees to advise physicians that Pfizer had developed a large body of data to support the use of Neurontin as monotherapy. This was an "outright lie" and left patients unknowingly without good seizure context.

4.   Instructing employees to advise physicians that a great deal of data existed that supported the safe use of Neurontin at levels that exceed 4800 mg/day. However, clinically significant safety data existed at dosing levels at only 1800 mg/day.

16

5.    Providing medical liaisons with slides that stated that Neurontin was effective for the treatment of Attention Deficit Disorders when no data existed to support that claim.

In willfully and knowingly carrying out unfair or deceptive acts or practices, you fraudulently, effectively, and affirmatively concealed you scheme from the Claimants and the putative Massachusetts class. Although Claimants exercised due diligence during the Class Period by promptly investigating the facts giving rise to the claims asserted herein, Claimant did not discover your wrongful conduct until at the earliest May 2002 when the federal court file in the Franklin *qui tam* case was completely unsealed.  Your fraudulent concealment also constitutes a separate and distinct violation of the Massachusetts Consumer Protection statute. The putative class asserts that as a result of your fraudulent concealment, the statute of limitations has been tolled.[4]

Claimants allegations of unfair or deceptive acts or practices are meritorious as well as your knowledge of the unfair or deceptive acts or practices for which the Claimants lodge complaint and demand compensation. This is evidenced by the fact that on May 13, 2004, you agreed to plead guilty to criminal allegations in connection with illegal and fraudulent promotion of unapproved uses for Neurontin.

**SIMILAR INJURY SUFFERED BY** ~~EACH MEMBER OF THE~~**ALL CLASS MEMBERS UNDER G.L. C. 93A**

~~Each putative class representative~~Respondents' willful and knowing, unfair or deceptive acts or practices described herein have caused similar economic injury and damages to Claimants. Each Claimant and class member suffered ~~ana~~ similar economic injury and/or the similar invasion of a legally protected interest as a result of ~~Pfizer's unlawful~~your unfair and/or deceptive promotion of Neurontin ~~for off-label uses~~to treat a variety of symptoms for which Neurontin was not proven to be safe, efficacious, effective or useful. First, with regard to the economic injury, all class members paid the purchase price of Neurontin, including but not limited to prescription co-payments, which they

---

[4] The applicable statute of limitations for violations of the Consumer Protection Act, M.G.L. c. 93A, is four (4) years. See M.G.L. c. 260 § 5A.  However, the statute of limitations is tolled when a defendant fraudulently conceals wrongful conduct from the injured plaintiff(s). *See* M.G.L. c. 260 § 12 ("Ifa person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."); *see also Ciardi v. Hoffmann-LaRoche, LTD*, 2000 WL, 33162197, at *9 (Mass. Super. Sept. 29, 2000) (Botsford, J.).

17

would not have paid had they known about Pfizer's profuse misrepresentations. Second, with regard to the invasion of a legally protected interest, all class members have a right to participate ~~in~~In the marketplace, free from unfair or deceptive acts or practices and from being intentionally ~~mislead~~deceived. *See* ~~M.~~*Aspinall*, 442 Mass. at 394; G.L. c. 93A § 2.

Be clear that under Massachusetts law, product marketing through intentionally false representations constitutes, in and of itself, an ascertainable ~~injury~~Injury under ~~M.~~G.L. c. 93A. *See Aspinall*, 442 Mass. at 394; *Leardi*, 394 Mass. at 158-60; *Slaney*, 366 Mass. at 703.  In your offer of settlement you should seriously consider ~~this fact. Pfizer reprehensibly promoted Neurontin for off-label~~the related law of the Commonwealth of Massachusetts under which you will be judged and held accountable. Pfizer knowingly and willingly promoted Neurontin to Massachusetts consumers for unproven uses to vulnerable consumers because they represented a highly profitable target market. ~~Consumers inherently~~These vulnerable consumers sustained similar economic injury as a result of ~~Pfizer's false and misleading~~your unfair or deceptive representations of Neurontin as safe and effective for ~~those off-label~~uses and purposes having no scientifically valid support.

### DEMAND FOR RELIEF

The above -named ~~class members~~Claimants, individually and on behalf of others similarly situated, hereby demand that Pfizer:

1.    ~~tender~~Tender a reasonable offer of written settlement within thirty (30) days;

~~2.    cease and desist from unlawful off-label promotion and from further engaging in unfair or deceptive acts or practices, as or similar to those described above; and~~

2.    Pay restitution and refunds to Claimants and members of the putative class for all sums paid by them to purchase Neurontin to treat a variety of symptoms for which Neurontin was not proven to be safe, efficacious, effective or useful; or

3.    ~~pay money damages to each~~Pay restitution and refunds to Claimants and the putative class~~ member~~ in the amount of ~~at least the statutory minimum damage~~twenty-five dollars a person as allowed under ~~M.~~G.L. c. 93A, § 9(3); and

4.    Reimburse Claimants and members of the proposed class for their reasonable attorney's fees and expenses incurred in asserting this claim.

~~Plaintiffs~~Claimants also demand, pursuant to ~~M.~~G.L. 93A, that you respond directly to the following inquiries. ~~Please state:~~;

18

1.  ~~The nature and extent of damages to which you concede the Massachusetts class and/or its individual members is entitled;~~Please state in writing whether you are interested in entering settlement discussions with Claimants and the putative class of Massachusetts consumers;

2.  ~~Whether you will agree to the injunctive relief requested or anything like it; and3. The~~If yes, please provide the first date you promoted Neurontin ~~for an off label use~~to treat a variety of symptoms for which Neurontin was not proven to be safe, efficacious, effective or useful and for the dates of all related ~~off label~~unfair or deceptive marketing campaigns ~~of whatever nature~~ including the so-called ghost writing work leading up to active marketing efforts. for the sale of Neurontin for scientifically unproven uses;

~~In the event that Pfizer fails to make a settlement offer within thirty (30) days, class members shall initiate suit against the company, pursuant to M.G.L. c. 93A §§ 2, 9, and request that the Court award monetary damages, injunctive relief, attorneys' fees and costs, punitive damages as allowed by M.G.L. c. 93A § 9(3), as well as other relief deemed just and reasonable.~~

3.  If yes, please provide the number of prescriptions for Neurontin written in the Commonwealth of Massachusetts to treat the variety of symptoms for which Neurontin was not proven to be safe, efficacious, effective or useful and the number of known patients in the Commonwealth of Massachusetts that were prescribed Neurontin for conditions where the scientific, medical and clinical data were misrepresented;

4.  If yes, please provide the nature and extent of damages to which you calculate were sustained by the Massachusetts class; and

5.  Please provide appropriate measure of damages for those you are willing to offer.

Claimants are willing to enter into a protective order and request that you agree to produce the above-requested information.

Please be advised that you have (30) days to make a reasonable offer of relief. If you fail to make a reasonable offer and your conduct is found to be unfair or deceptive, Claimants and the class will be awarded their damages and attorney's fees. Further, if the Court determines that your conduct was willfully and knowingly unfair or deceptive the Court must award the Claimants and the class up to three times, but not less than two times, their actual damages.

19

Sincerely,


Robert J. Bonsignore, Esquire

RJB/jl

# ATTACHMENT A

| | | |
|---|---|---|
| Alexander, Stella<br>(508) 655-0596<br>19 Pauline Drive<br>Natick, MA 01760 | Bernard, Scott<br>(978) 922-2799<br>563 Cabot Street<br>Beverly, MA 01915 | Burash, Benjamin<br>(617) 227-2237<br>C/O Mark Burash<br>217 Humphrey St.<br>Swampscott, MA 01907 |
| Alperin, Daniel<br>(781) 275-1138<br>20 Ledgewon Drive<br>Bedford, MA 01730 | Billinsky, Phil<br>(207) 9341507<br>PO Box 7326<br>Ocean Park, ME 04063 | Burke, Monica<br>(781) 331-2979<br>681 Commercial St.<br>East Weymouth, MA 02189 |
| Applebee, Sharon<br>(508) 881-0636<br>79 Sudbury Road<br>Ashland, MA 01721 | Bitchell, Stanley<br>(978) 531-7644<br>No. 9 Fitz Road<br>Peabody, MA 01960 | Butter, Mrs.<br>(978) 535-0768<br>3 Ledgewood Way, Unit 13<br>Peabody, MA 01960 |
| Ascolillo, Richard<br>(617) 567-6434<br>214 Everett Street<br>East Boston, MA 02128 | Block, Elaine<br>(781) 344-7325<br>36-H Jessica Drive<br>Stoughton, MA 02072 | Buzzy, Maureen<br>(781) 665-8450<br>90 Richardson Street<br>Melrose, MA 02176 |
| Avery, Chris<br>(203) 549-7683<br>625 Augusta Road<br>Jefferson, ME 04348 | Bluestein Mariam<br>41 Lyndon Road<br>Sharon, MA 02067 | Cabanna, Paul<br>284-7294<br>PO Box 361<br>Saco, ME 04072 |
| Axil, Beth<br>(781) 233-6431 | Beggia, Dorothy<br>103 Burlington Street<br>Lexington, MA 02420 | Cahill, Kevin<br>(508) 797-3612<br>95 Elm Street<br>Worcester, MA 01609 |
| Baas, Laurie<br>(802) 253-8376<br>180 Edson Hill<br>Stowe, VT 05672 | Boucher, Wendy<br>(207) 775-3868<br>64 Brookside Road<br>Portland, ME 04103 | Carbonneau, Sylvia<br>(978) 454-7133<br>81 Dover Street<br>Lowell, MA 01851 |
| Barisano, James<br>(781) 837-2732<br>18A Tea Rock Gardens<br>Marshfield, MA 02050 | Bowen, Judy<br>(508) 836-2964<br>27 Hunter Circle<br>West Yarmouth, MA | Case, Charles<br>(617) 288-7288<br>73 Mountain Road<br>Unit 1 Boston, MA 02122-1735 |
| Beall, Bruce<br>(617) 262-2242<br>180 Beacon Street<br>Boston, MA 02116 | Brennon, Richard<br>(978) 372-0637<br>6-Tike Drive<br>Groveland, MA 07834 | Cassidy, Michelle<br>(617) 846-0703<br>190 Pauline Street<br>Winthrop, MA 02152 |
| Belansky, Arlene<br>1200 Salem St<br>unit # 166<br>Lynnfield, Massachusetts<br>01940 | Bridges, Timothy<br>2 Greglan Avenue<br>PMB-150<br>Nantucket, MA 02554 | Champion, Caniel<br>(781) 729-3250<br>PO Box 662<br>Winchester, MA 01890 |

20

01940

Beren, Lawrence                    Brooks, Brigette
(617) 240-0495                     (508) 588-6851
18 Pond Lane                       74 Jordan Street
Randolph, MA 02368                 Brockton, MA 02302

21

Chapman, Brad
(781) 860-0163
11 Greeley Village
Lexington, MA 02421

Chester, Eric
(412) 367-9356
43 Taylor Hill Road
Montague , MA 01351

Ciardi, Valerie
(781) 729-8858
16 Eaton Street
Winchester, MA 01890

Cobino, Frank
(781) 233-1017
5 Cedar Glenn Circle
Saugus, MA 01906

Coctas, Jenny
(978) 532-6456
4 Palmer Ave
Peabody, MA 01960

Cohen, jeff
(774) 406-0631
18 Cobalt Street
Wilmington, MA 01887

Cole, Harry A.
(617) 887-9617
201 Captains Row
Apt 318
Chelsea, MA 02150

Colillo, Rick
(603) 436-3495
368 South St
Portsmouth, NH 03801

Colucci, Anne
(207) 797-4405
61 Constitutional Drive
Westbrook, ME 04092

Costa, John
(978) 922-0476
PO Box 382
Salem, MA 01970

Cottis, Jill
(617) 325-9054
28 Woodley Avenue
West Roxbury, MA 02132

Coutrier, Carol
PO Box 551
Sudbury, MA 01776

Crepeau, Kristen
(207) 283-4385
3 Alexander Drive
Biddeford, ME 04005

Curtin, Thomas A.
(617) 738-6299
96 Grove Street
Chestnut Hill, MA 02467

Damon, Tom
(803) 343-4826
PO Box 1284
Stowe, VT 05672

Decarreau, Jody
(802) 655-1905
23 Weaver Lane
Wisouski, VT 05404

Delaney, Edward
(617) 323-7452
84 Felwyn Drive
Roslindate, MA 02131

Delaney, Maureen
(603) 890-6736
7 More Terrace
Salem, NH 03079

Demeule, Diane
(207) 283-8294
4 Wesley Drive
Biddeford, ME 04005

Despier, Frank
(781) 834-8795
81 Meetinghouse Lane
Marshfield, MA 02050

DiNauta, Joseph
(617) 926-0658

Dobson, William J.
#W-48182
MCI Cedar Junction – PO Box 100
S. Walpole, MA 02071

Donnelly, Shirley
(781) 863-1129
36 Drummerboy Way
Lexington, MA 02420

Dragos, Stephen
(508) 763-3329
3 Bishop Road
Rochester, MA 02770

Dulman, Betty
(617) 277-4554
20 Park Street
Brooklyn, MA 02446

Dunn, Ilene
(781) 829-5085
7 Cottage Lane
Pembroke, MA 02359

Durkan, Mary
(802) 655-9631
76 Elm Street
Winooski, VT 05404

Dwayne-Alves
W80100 O.C.C.C.
One Adminstration Road
Bridgewater, MA 02324

Feeney, James M.
Old Colony Corr. Center
1 Administration Rd.
Bridgewater, Massachusetts 02324

Feldman, Bruce
(508) 877-4747

Fisher, Theodore
(508) 785-0903
PO Box 276
Dover, MA 02030

Flynn, Kerrie
(617) 965-2547
31 Woodbine Street
Newton, MA 02466

Fowler, Dotilin
(508) 825-8992
54 Essex Road
Nantucket, MA 22054

(NY) 16590/014/COR05/2.23.05_Second_Demand.doc 10/18/05 2:21 AM

Freeman, Vivian
(508) 775-4618
90 Lake Drive
Centerville, MA 02632

Gaetani, Steven
(978) 836-8069
7 Bidetta Street
Peabody, MA 01960

Ganglain, Carolyn
(978) 744-2744
6 Angenica Terrace
Marblehead, MA 01945

Gans, Richard
(781) 331-2970
5615 Sourwood Rd.
Cumming, GA 30040

Gibblin, Walter
(617) 232-3546
233 Freeman St.
#2
Brookline, MA 02446

Giorgio, Matt
(800) 235-3132

Goldstein, Martin
20 Louis Lane
Randolph, MA 02368

Goodwin, Tammy
105B Beaver Terrace Circle
Framingham, MA 01702

Graiser, Gilbert
(802) 865-5198

Gribbin, Thomas
(207) 774-4389
53 Wellington Road
Portland, ME 04103

Griffin, John
(603) 383-4594
PO Box 795
Glenn, NH 03838

Gross, Steven
(207) 726-0920
Lincoln County Detention Center
PO Box 611
Wiscasset, ME 04578

Haggett, Jeanette
7 Blackberry Lane
Wells, ME 04070

Hanna, Joyce
(508) 875-6808
52 Ledgewood Road
Framingham, MA 01701

Hansen, Thomas
(781) 237-7133
82 Dover Road
Wellesley, MA 02482

Haskell, Cherly
(603) 893-5128
24 Haverhill Road
Salem, NH 03079

Hayes, Debra
(617) 268-5225
264 Emerson Street
Boston, MA 02127

Healey, Damian
(508) 393-2453
59 School Street
Northborough, MA 01532

Hennings, Carmen
(978) 287-4376
51 Nashoba Road
Concord, MA 01742

Hibbard, Lorraine
(720) 851-9143
19620 Clubhouse Drive 11-200
Parker, CO 80138

Hildevrandt, Harry
(207) 563-3617
3501 JS. Highway
Nobleboro, ME 04555

Hoist, Phillys
(508) 966-2292
32 Standish Road
Bellingham, MA 02019

Houghton, Ken
(781) 324-1523
11 Acorn Court
Maiden, MA 02148

Howe, Virginia
(207) 799-7385
188 Walnut Street
S. Portland, ME 04116

Hurley, Steve
(508) 888-9220

Ireland, James
(508) 279-992041 Country Drive
Bridgewater, MA 02324

Jackiewecz, Gwendolyn
(207) 797-4876
89 Main Avenue
Portland, ME 04103

James, Joyce
1401 Beacon Street
Apt 102
Brookline, MA 02446

Johnson, Janice
(617) 435-0414
PO Box 2664
Jamaica Plains, MA 02130

Kabler, Erwin
402 Paradise Road
Apt. M3P
Swampscott, MA 01907

Keay, Linda
(781) 721-5938
11 Royalstone Avenue
Winchester, MA 01890

Keefe, Pam
(802) 878-4702
9 Steams Avenue
Essex, VT 05452

Kelly, Karen
(802) 865-7182
180 Gazo Avenue
Burlington, VT 05401

Kessler, Desiree
(207) 622-6529
7 Windsor Avenue
Augusta, ME 04330

Kilroy, Francis
(978) 777-3382
7 MacArthur Blvd.
Danverse, MA 01923

23

King, Stephen
(617) 825-6878
189 Milton Street
Dorcester, MA 02124

Klemarczyk, Kim
(978) 521-4276
9 Bonin Drive
Haverhill, MA 01832

Kuba, Beverly
(781) 444-3603
138A Linden Street
Needham, MA 02492

Lambert, Lisa
(978) 388-5934
105 Elm Street
Amesbury, MA 01913

Lapointe, Tom
(978) 681-5220
21 Emerald Ave.
Lawrence, MA 01843

Lavoie, Robert
(603) 878-1209
168 Old Hillcrest Drive
Grainville, NH 03048

Leary, Ruth K.
(508) 644-2002
6 Marianno Street
Assonet, MA 02702

Lecoair, Cherly
(617) 773-9647
1001 Marina Drive, #512
Quincy, MA 02171

Levens, Adah
(781) 893-7442
31A Wyconia Way
Waltham, MA 02453

Levy, Susan
(617) 244-4017
71 Beethoven Avenue
Waban, MA 02468

Livingson, Sheryl
63 Shepard Ave.
Swapscott, MA 01970

Loftus, Mary
58 Clover Lane
Stoughton, MA 02072

Long, Madeline
1 Revere Beach Blvd. 42
Revere, MA 02151

Louaas, Russell
(508) 866-3942
PO Box 564
Carver, MA 02330

Lowenthal, Robert
(617) 306 Ext 1008
4 Jenn Road
Randolph, Massachusetts 02368

Lumbar, Grace
(603) 632-2375
2 Tallant Road
Pelham, NH 03076
Macfarlane
6 Clipper Way
Newburyport, MA 01950

Maldonado, Jose
(802) 864-9719
425 Dorset Street
Unit 1
South Burlington, VT 05403

Marden, Harvey
11888 Manzo Avenue
Boynton Beach, FL 33437

Marks, Paul
(703) 836-9243
318 Prince Street
No. 6
Alexandria, VA 22314

Martin, Jonathan
(781) 259-0632
34 A Lowell Drive
Lincoln, MA 01773

McCage, Rose Ella
(617) 964-2511

McDonald, Paul
(781) 337-1650
21 Hunt Street
Apartment 16
Weymouth, MA 02188

McKinney, Lawrence
(781) 646-4380
30 Foster Street
Arlington, MA 02474

McNeely, Dennis
(978) 388-6358
72 South Hampton Road
Amesbury, MA 01913

Melvin, Glass
(781) 631-4259
c% Melvin Glass
15 Higgins Road
Marblehead, MA 01945

Meyer, Dianr
(207) 282-3616
104 Summer Street
Apt 101
Biddeford, MA 04005

Mire, Janice
(207) 438-3940
9 Gulliver Rd.
Sanford, ME 04073

Mitch, Cindy
(617) 584-4450
35 Sandy Brook Rd.
Burlington, MA 01803

Moran, Nancy
(802) 372-9147
303 US Route 2
Grand Isle, VT 05458

Morra, Mary
(617) 254-4304
11 Matchett Street
Brighton, MA 02135

Mott, Sandra
(802) 862-1249
33 Mary Street
S. Burlington, MA 05403

Linn, Kenneth
(978) 774-1447 Ext 13
251 South Main Street
Middleton, MA 01949

Mullen, Sandra
(978) 977-0758

Murphy, Gerald
(207) 846-5836
265 Portland Street
Yarmouth, ME 04096

Murray, Sanchito
Old Colony Correctional
Center
1 Administrator Road
Bridgewater, MA 02115

Neiman, Stefan
(508) 238-7466
174 Purchase Street
Easton, MA 02375

Nichols, Betty
(508) 677-3328
470 Cambridge St.
Fall River, Masachusetts
02721

Niemic, Keith
PO Box 100
S. Walpole, MA 02071

Nix, Merge
109 Old Essex
Manchester, MA 01944

Noran, Mercedes
(207) 797-7734
PO Box 1797
Portland, ME 04104

Norris, Marion
(781) 646-9288
15 Cypress Road
Arlington, MA 02474

O'Brien, Kristin
(617) 773-0098
18 Bucklee Street
Quincy, MA 02169

McCausland, Barbara
(978) 897-0048
80 Summer Hill Glenn
Maynard, MA 01754

Oconnor, Bart
66 Austin Street
Apt. 2
Norwood, MA 02062

Olive, Vincent
(617) 254-4304
191 Linebrook Road
Ipswich, MA 01938

Osgood, Jean
(904) 797-4770
45 Andelusic Court
St. Augustine, FL 32086

Ovoian Lucy
(781) 932-0456
4 Webster Court
Wobum, MA 01801

Padulsky, Sandra
(617) 884-0386
33 John Street
Chelsea, MA 02150

Parma JR
(508) 635-6451
7 Madison Street
Natick, MA 01760

Peikey, David
(802) 482-2669
299 Swamp Road
Hiensdburg, VT 05461

Percy, Gabrielle
(802) 626-5204
185 Mountain Rd.
East Burke, VT 05832

Perno, Roger
(508) 888-2835
6 Menotomy Road
Plymouth, MA 02360

Petrini, Lee
17 Lynn Road
Needham, MA 02494

Pollino, George
(781) 986-5600
24 Cedar Avenue
Randolph, MA 02368

Prall Anne
170 Sprague Street
Dedham, MA 02026

Preisler, Florence
(781) 326-4119
46 Country Club Road
Dedham, MA 02026

Prudence, Toni
(781) 321-1498
190 Mountain Avenue
Apt 302
Maiden, MA 02148

Rao, Carolyn
(781) 286-2887
540 Maiden Street
Revere, MA 02151

Ray, Michael
(207) 563-6222
4 Jackies Trail
Damariscotta, ME 04543

Ricca, Silvio
(781) 646-8217
99 College Avenue
Arlington, MA 02347

Rizzo, Jenne
(603) 841-5138
5 Brick Street
Somersworth, NH 03878

Robishaw, Mary
(617) 327-9019
328 Vermont Street
West Roxbury, MA 02132

Roderick, Barbara
(617) 623-2885
30 Tower Street
Somerville, MA 02143

Roper, Mary V.
(781) 837-5513
PO Box 398
37 Deerhill Lane
Marshfield Hills, MA 02051

25

O'Keefe, Edythe
10 Soule St.
Apt 403
Portland, ME 04106

Pierce, Allen
(207) 829-3330
40 Linconberry Court
Cumberland, ME 04021

Ross, Marilyn
(781) 878-3255
72 Gerard Road
Norwell, MA 02061

Slansip, Todd
(559) 224-9454

Thibodeau, Sue
(508) 384-2523
160 Ellry St.
Wrentham, MA 02093

Roth, James
(617) 479-7374
13 Plover Road
Quincy, MA 02169

Smidt, John
(781) 631-9652
21 Skinners Path
Marblehead, MA 01945

Thompson, Howard
(781) 944-5831
3 Summit Drive
Apartment 5B
Reading, MA 01867

Russell, Thomas
(508) 799-7984
78 West St.
#2 Left
Worcester, MA 01609

Smith, Janna
(802) 862-6084
92 Sunny View Drive
Jerico, VT 05465

Thumudo, Mario
(781) 294-1250
224 Queenbrook Road
Pembroke, MA 02359

Samuels, Eli
(508) 994-8769
26 William Street
Dartmouth, MA 02748

Soucy, Tom
(207) 725-9399
2 Willow Grove Road
Brunswick, ME 040111

Totaro, Jillian
(508) 359-2626
c/o Janet Totaro
14 Stewart Street
Medfield, MA 02052

Scharak, Robin
(617) 327-9134

Spaulding, Philip
(207) 354-2181
639 River Road
Gushing, ME 04563

Tozier, Carla
(207) 767-4126
42 Eastman Road
Cape Elizabeth, ME 04107

Schwotzer Paul
(508) 866-8084
12 Harvest View Way
Carver, MA 02330

Stanhope, David
(802) 933-5081
PO Box 182
Enosburg, VT 05450

Truvente, Toni
190 Mountain Avenue
Apartment 302
Malden, MA 02148

Senk, Janet
(781) 558-3113
113 Lincoln Avenue
Unit 3
Saugus, MA 010906-2832

Stefano, Mike & Linda
(617) 884-7380

Ventola, Lucy
(781) 662-6385
17 Russett Lane
Melrose, MA 02176

Shanfold, Mindy
(508) 320-9974
8 Elliot Hill Road
South Natick, MA 01760

Stone, Dennis
(401) 946-9796
26 Garland Avenue
Cranston, RI 02910

Vierling, Deborah
(802) 864-6590
303 Lime Kilm Road
Number 25
South Burlington, VT 05403

Shapiro
(781) 599-7918
406 Paradise Road
Apartment COP-3E
Swatnpscott, MA 01907

Storms, Judith
PO Box 795
Gorham, ME 04038

Walfield, Debra
4 Weisman Drive
Peabody, MA 01960

Sherman, Pearl
(508) 877-1509
48 Agnes Drive
Framingham, MA 01701

Sylvester, Leo
(207) 934-1321
PO Box 1531
Biddleford, ME 04005

Waltman, Francis
(781) 321-2119
15 Albion Street Maiden, MA 02148

26

10/18/05 2:21 AM

Sills, Harriet
(508) 222-7838
134 Parsonage Way
Attleboro, MA 02703

Simpson, Richard
(978) 663-4076
22 Fredrickson Road
Billerica, MA 01821

Tankel, Eleanor
(508) 668-0174
18 Rainbow Pond Drive
Walpole, MA 02081

Tessier, Gerard P.
(781) 933-0952
21 Fortune Rd
Woburn, MA 01801

Weinberg, Marion
(508) 477-2345
174-98 Lowell Road
Mashpee, MA 02649

Weintraub, Robert
(617) 244-6236
14 Scarsdale Road
Newtonville, MA 02460

Wells, Catherine
(774) 219-9665
65 E. Washington Street
North Attleboro, MA 02760

Wentzel, Virginia
44 Merimack
Newburyport, MA 01950

White, Bill
(802) 424-3092
630 Burt Road
Huntington, VT 05462

Whitmore, Linda
(781-718-2143)
7 Cronin Way
Woburn, MA 01801

Williams, Ginger
(617) 846-3080
203 Veteran Road
Winthrop, MA 02152

Winter, Greg
(617) 854-6641
821 Barrens Mill Road
Concord, MA 01742

Wood, Evelyn
(207) 766-2575
26 Garfiled Street
Long Island, ME 04050

Woodard, Wade
(802) 244-6616
PO Box 13
Waterbury Center, VT 05677

Zaro, Angela
(902) 457-7468
16 Talbot Road
Hingham, MA 02043

Zimmerman, Beverly
(508) 946-0533
150 Wood Street, Apt. K
Middleboro, MA 02346

.

27

Document comparison done by DeltaView on Tuesday, October 18, 2005 10:24:24 AM

| Input: | |
|---|---|
| Document 1 | file://M:/COR05/DELTAVIEW/10.14.04_First_Demand_Letter.051018_0721.doc |
| Document 2 | file://M:/COR05/DELTAVIEW/2.23.05_Second_Demand.051018_0723.doc |
| Rendering set | DPW -- Color Legislative |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 221 |
| Deletions | 417 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 638 |