UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------ x
                                     :
In re: NEURONTIN MARKETING AND       :
SALES PRACTICES LITIGATION           :
                                     :
------------------------------------ x
                                     :
THIS DOCUMENT RELATES TO:            :   MDL Docket No. 1629
                                     :
------------------------------------ x   Master File No. 04-10981
HARDEN MANUFACTURING                 :
CORPORATION; LOUISIANA HEALTH        :   Judge Patti B. Saris
SERVICE INDEMNITY COMPANY, dba       :
BLUECROSS/BLUESHIELD OF              :   Magistrate Judge Leo T. Sorokin
LOUISIANA; INTERNATIONAL UNION       :
OF OPERATING ENGINEERS, LOCAL NO.    :
68 WELFARE FUND; ASEA/AFSCME         :
LOCAL 52 HEALTH BENEFITS TRUST;      :
GERALD SMITH; and LORRAINE KOPA,     :
on behalf of themselves and all others similarly :
situated, v. PFIZER INC. and WARNER- :
LAMBERT COMPANY.                     :
------------------------------------ x
                                     :
THE GUARDIAN LIFE INSURANCE          :
COMPANY OF AMERICA v. PFIZER INC.    :
                                     :
and                                  :
                                     :
AETNA, INC. v. PFIZER INC.           :
------------------------------------ x
```

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
<u>THEIR MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS</u>**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ....................................................................................................................... 5

    I.   The Third-Party Payor Plaintiffs Should Be Compelled
        To Disclose Information Relating to Their Policies
        and Practices for Off-Label Reimbursement ................................................... 5

    II.  The Third-Party Payor Plaintiffs Should Be
        Compelled To Produce Relevant Claims Data ................................................. 8

    III. The Individual Plaintiffs Should Be Compelled
        To Produce Their Relevant Medical Records .................................................. 10

    IV. Class Plaintiff ASEA Should Be Compelled
        To Produce Neurontin Claims Data .................................................................. 12

    V.  Coordinated Plaintiff Kaiser Should Be Compelled
        To Produce Documents from Outside California and
        from All of Its Physician Provider Employees ................................................ 13

    VI. Class Plaintiff Harden Should Be Compelled
        To Produce Invoices Relating to Its Neurontin Claims ..................................... 14

CONCLUSION ................................................................................................................... 16

Defendants Pfizer Inc. ("Pfizer") and Warner-Lambert Company submit this memorandum in support of their motion to compel discovery from the class plaintiffs and the coordinated plaintiffs (collectively, "plaintiffs") pursuant to Federal Rule of Civil Procedure 37.[1]

## PRELIMINARY STATEMENT

Plaintiffs have unjustifiably refused to produce relevant documents and information, despite ample time permitted as a result of this Court's four-month extension of the class discovery deadline. This material includes documents and information that bear directly on the class plaintiffs' motion for class certification and the merits of the case. Defendants' attempts to persuade plaintiffs to produce this information through meet-and-confer sessions have been rejected, without legally sufficient grounds.[2] Accordingly, although defendants believe that plaintiffs' claims have no merit and should be dismissed, defendants respectfully request that this Court order plaintiffs to produce these documents and this information immediately so that discovery can proceed consistent with the current schedule. Six categories of relevant information are in dispute.

First, the third-party payor plaintiffs have refused to produce documents and information regarding their policies and practices for paying or reimbursing claims for off-label prescription drugs, unless those policies expressly mention or pertain to Neurontin. Defendants are entitled to

---

[1] The class plaintiffs are two individuals, Gerald Smith and Lorraine Kopa, and four third-party payors, Harden Manufacturing Corporation, Louisiana Health Services Indemnity Company, International Union of Operating Engineers, Local No. 68 Welfare Fund, and ASEA/AFSCME Local 52 Health Benefits Trust. The coordinated plaintiffs are four third-party payors, The Guardian Life Insurance Company of America, Aetna, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan, Inc.

[2] Defendants' counsel have had innumerable meet-and-confer sessions over the past six months with counsel for plaintiffs regarding these issues, which are documented in scores of letter and memoranda. There has been scrupulous adherence to Local Rule 37.1.

these documents and this information because if the third-party payors did not have such policies or did not enforce them, such facts could be used to rebut their argument that they paid for Neurontin because of defendants' alleged misconduct. Defendants could also use such facts to show whether and to what extent the third-party payors were aware of off-label prescriptions and whether they took action to prevent reimbursement of such prescriptions. Besides going to the merits, each of these issues is relevant to whether common issues predominate and whether the third-party payors are typical class representatives.

Second, the third-party payor plaintiffs have refused to produce non-Neurontin prescription drug claims data for members and their dependents who took Neurontin ("Neurontin-takers"). Production of this information should be compelled because this data might be used to determine whether Neurontin was effective and whether it was prescribed off-label, both of which are relevant to whether the third-party payors suffered a loss. This drug claims data will also be relevant to calculating the third-party payors' alleged damages because it will indicate what drugs they would have paid for had Neurontin not been prescribed, as well as the cost of these drugs. Moreover, plaintiffs Kaiser Foundation Hospitals and Kaiser Foundation Health Plans, Inc. (together, "Kaiser") have even refused to produce the names of the prescribing physicians – who they employ – with the Neurontin claims data that Kaiser will produce, even though this information is available to it and would not be burdensome to produce.

The third-party payor plaintiffs have also refused or failed to produce medical records and medical claims data for Neurontin-takers. These records and this data are essential because

they may show whether Neurontin was effective and whether it was prescribed off-label,[3] whether a lack of efficacy was due to a factor unique to the covered individual, and whether defendants' alleged misconduct, something in the patient's medical history, or something else caused the prescription.

Third, the individual plaintiffs have refused to produce medical records unless they relate expressly to Neurontin or the condition for which Neurontin was prescribed. Defendants are entitled, however, to examine all of the individual plaintiffs' medical records during the time that they were taking Neurontin, as well as all their medical records from one year before and after. These records are critical because they will reflect, among other things, what factors could have influenced the doctors to prescribe or stop prescribing Neurontin or affected Neurontin's efficacy in the individual plaintiffs' particular cases. For example, if prior to taking Neurontin an individual plaintiff was taking another drug that might have adversely interacted with Neurontin's alternatives, defendants could use this information to rebut a plaintiff's allegation that his Neurontin prescriptions were caused by defendants' fraudulent off-label promotion. These medical records could also show whether the individual plaintiffs took other drugs off-label besides Neurontin, which is relevant to whether they took Neurontin off-label due to the alleged fraudulent conduct. In addition, so that defendants can confirm that the individual plaintiffs' productions regarding medical records are complete, plaintiffs should be compelled to execute medical authorizations for this period.

---

[3] Medical claims data are the records of all medical claims submitted by plaintiffs' covered employees and their dependents. Unlike prescription drug claims data, both medical records and medical claims data are likely to have diagnosis information that could rebut plaintiffs' claims that Neurontin was prescribed to their employees for off-label uses.

3

Fourth, class plaintiff ASEA/AFSCME Local 52 Health Benefits Trust ("ASEA") has refused to produce certain Neurontin claims, even though it is seeking to recover for its payment of those claims and has no other record of them. Without access to these records, defendants cannot examine whether ASEA actually incurred the damages that they assert. ASEA should be compelled to produce them or be precluded from recovering upon them.

Fifth, Kaiser has refused to produce documents from most of the physicians in its employ who prescribed Neurontin, even though it is alleging that those physicians were deceived about Neurontin, and it is seeking to recover for the Neurontin that they prescribed. These physicians may have documents that reflect whether they were exposed to the alleged misconduct and why they prescribed Neurontin. Kaiser has conceded their relevance by producing such documents for a self-selected number of physicians. Kaiser has also unreasonably limited the scope of its document collection to California (even though its claims have no such limitation). Kaiser is thus arbitrarily preventing defendants from examining the same information that Kaiser is producing for its operations in California – information that it has implicitly conceded is relevant and properly discoverable.

Sixth, class plaintiff Harden Manufacturing Corporation ("Harden") has refused, without adequate grounds, to produce weekly invoices sent by its third-party administrator that reflect the aggregate amounts that Harden was charged for prescriptions for its employees. These invoices are perhaps the only evidence of when Harden became self-insured. Since Harden proposes to represent a class of institutions at risk of paying for Neurontin and Harden was only at risk when it was self-insured, this information is highly relevant to its adequacy as a class representative.

4

Consequently, Harden should be compelled to produce the first several of these invoices, as well as some of the subsequent invoices sufficient to show over what period Harden was self-insured.

Having brought this facially invalid lawsuit, with all of its extraordinary burdens, plaintiffs should not be permitted to escape their own obligations to participate fully in the discovery process.

## ARGUMENT

Under the federal discovery rules, all relevant, non-privileged materials are discoverable. Rule 26 states in pertinent part: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ." Fed. R. Civ. P. 26(b)(1). Rule 37 provides that a motion to compel may be made when a party "fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request or inspection submitted under Rule 34, . . . fails to permit inspection as requested." Fed. R. Civ. P. 37(a)(2)(B). Plaintiffs have not produced relevant document requested by defendants, and the grounds that they have advanced for not producing them do not excuse their failure to do so. Plaintiffs should be compelled to produce the documents that they are improperly refusing to produce.

I. **The Third-Party Payor Plaintiffs Should Be Compelled To Disclose Information Relating to Their Policies and Practices for Off-Label Reimbursement**

The third-party payor plaintiffs should be ordered to produce all documents and information concerning their practices and procedures for reimbursement of prescription drugs

for off-label uses, regardless of whether they mention or relate specifically to Neurontin.[4] The third-party payor plaintiffs have improperly refused to produce such documents and information on the grounds that they are not relevant and that their production would be burdensome. See Declaration of Patrick J. Murray, dated Jan. 9, 2006 ("Murray Decl.") Exh. 3; see, e.g., id. Exh. 4 Gen Obj. 10 at 3, Resp. 20 at 17; id. Exh. 5 Gen Obj. 8 at 3, Resp. 19 at 17-18.[5]

Documents concerning the third-party payors' policies and practices for off-label drug reimbursement are highly relevant. Among other things, they may show whether and to what extent the third-party payors were aware that off-label prescribing occurs. They may also show whether these plaintiffs took or failed to take action to prevent payment of claims for the off-label use of Neurontin. Indeed, if the third-party payors did not have any policies against reimbursement for off-label use, failed to enforce such policies, or only enforced them selectively, defendants could use this to rebut plaintiffs' argument that they paid for Neurontin as a result of defendants' misconduct. Not only are the third-party payors' policies and practices relevant to the merits of this litigation, but they are also crucial to class certification issues of predominance and typicality. For all these reasons, the third-party payor plaintiffs should be

---

[4] See, e.g., Declaration of Patrick J. Murray, dated Jan. 9, 2006 ("Murray Decl."), Exh. 1 Reqs. 1, 19-20, 24, 29, 42, 57, 60-61, 66, 74-76, 79, 83-93 (seeking documents regarding the third-party payors' policies and practices for the payment of claims for prescription drugs for off-label uses); id. Exh. 2 Ints. 7, 19 (seeking information regarding such policies and practices of the third-party payors).

[5] Although certain plaintiffs have apparently produced a few documents that do not mention Neurontin by name but contain information relevant to both Neurontin and other drugs, plaintiffs' counsel reiterated during the meet-and-confer sessions that they would not be searching for and producing such documents.

6

compelled to produce documents and information concerning their off-label policies and practices.[6]

Positions already asserted by plaintiff Aetna, Inc. ("Aetna") illustrate why the third-party payors should be compelled to produce these documents. Aetna's counsel has stated that Aetna should be able to recover for its payment of any off-label Neurontin prescriptions because such payments – for any drug – are against Aetna's company policy. Id. ¶ 6.[7] Defendants need to be able to test this claim as to Aetna and the other plaintiffs – who as a matter of policy or of practice may or may not have knowingly reimbursed for drugs used off-label.

The third-party payors have objected to producing any general policy or related documents regarding off-label reimbursement that do not mention Neurontin by name. Id. ¶ 5. This objection is indefensible in a case in which plaintiffs seek to recover for amounts paid for off-label uses. All third-party payor plaintiffs should be compelled to produce such policies and the documents that discuss them (such as documents regarding whether to adopt such policies, or accessing the costs of such practices), regardless of whether these policies specifically mention or relate to Neurontin. For instance, an internal memorandum stating that the company knew

---

[6] Defendants' document requests have been carefully tailored to seek out these policies and practices. For example, Document Requests Nos. 19 and 20 seek samples of documents expressing the third-party payors' policies on payment of off-label prescriptions and anti-epileptic drugs. Id. Exh. 1 Reqs. 19-20. Document Request No. 29 seeks documents relating to budgeting plans regarding the cost of off-label uses. Id. Req. 29. Other examples include Document Requests Nos. 24 (correspondence or communications with any government entity regarding reimbursement for off-label uses), 42 (documents regarding efforts to track off-label prescriptions), 60 (documents submitted to the government discussing off-label uses), and 79 (documents regarding the third-party payors' obligation to pay for off-label uses). Id. Reqs. 24, 42, 60, 79.

[7]

**REDACTED - CONFIDENTIAL**

that it was reimbursing significant volumes of off-label drugs, or perhaps anti-epileptic drugs, would undoubtedly be relevant to what caused the reimbursement of off-label Neurontin prescriptions, regardless of whether the memorandum mentioned Neurontin specifically. Plaintiffs should be ordered to produce all such documents.

## II.   The Third-Party Payor Plaintiffs Should Be Compelled To Produce Relevant Claims Data

The third-party payor plaintiffs should also be compelled to produce (i) all prescription drug claims data for Neurontin-takers for the period from one year before they started taking Neurontin to one year after they stopped taking it and (ii) all medical claims data for the same persons for the same period.[8]

The third-party payors have not objected to providing Neurontin claims for their Neurontin-takers, but do object to producing these individuals' claims for other prescription drugs. Id. Exh. 3. In fact, Harden has objected to this even though it would entail the collection of this information for no more than fifty people. This information is highly relevant for reasons central to issues of causation, loss, damages, and predominance. First, the non-Neurontin prescription drugs that individuals were taking may indicate why they were prescribed Neurontin[9] and whether it was effective or was prescribed for an off-label use. Information regarding non-Neurontin drugs may also show whether the covered individuals had been

---

[8] See, e.g., id. Exh. 1 Req. 51 (requesting all prescription drug claims for covered individuals who were Neurontin-takers).

[9] Given Neurontin's side-effects profile, its status as a non-narcotic agent, and its lack of interaction with other drugs, id. Exh. 8 at BAZIL 0000030, BAZIL 0000054,
REDACTED - CONFIDENTIAL
Production of information regarding the other drugs that covered individuals were taking would enable defendants to analyze whether this was the reason for their Neurontin prescriptions rather than the alleged fraudulent off-label promotion.

8

prescribed other drugs off-label, whether they were candidates for drugs other than Neurontin, and how costly such alternatives would be. Finally, this data is relevant because it will demonstrate the plaintiffs' policies and practices regarding the payment of drug claims generally, including policies and practices relating to prior authorization, reimbursement of off-label uses, and drug utilization – all of which reflect their knowledge of or a willingness to pay for off-label uses.

Kaiser has also refused to include the names of the prescribing physicians with the Neurontin claims data that it will be producing. Kaiser is not asserting that producing this information would be burdensome, only that defendants can, through their own effort, identify these physicians' names through DEA numbers that Kaiser is producing. The fact that information may be otherwise accessible is not a valid basis for refusing to produce such information, particularly where Kaiser has the information and producing it would impose no burden upon Kaiser. Kaiser should be compelled to produce the names of the prescribing physicians with its Neurontin claims data.

Lastly, the third-party payor plaintiffs have refused or failed to produce medical records and medical claims data for Neurontin-takers. Again, even Harden has refused to do this for its under fifty Neurontin-takers. Defendants are entitled to this information because medical records and medical claims data, which may contain diagnosis codes, are one of the few means of determining whether Neurontin prescriptions were written for an approved or off-label use. In a case where plaintiffs seek to recover only for off-label prescriptions, information that will enable defendants to identify what prescriptions may have been written for on-label uses is

9

highly relevant.[10] Further, the medical records will be extremely relevant to whether Neurontin was effective.

### III. The Individual Plaintiffs Should Be Compelled To Produce Their Relevant Medical Records

The individual plaintiffs, Gerald Smith and Lorraine Kopa, should be compelled to produce their medical records for the year prior to when they started taking Neurontin to the present.[11] Ms. Kopa has refused to produce medical records that do not mention Neurontin, while Mr. Smith refused to produce medical records that do not relate to the injury for which he took Neurontin. Id. Exh. 3; id. Exh. 12. The information being withheld is highly relevant, and plaintiffs have not demonstrated any burden that would excuse production.

Complete production of the individual plaintiffs' medical records from one year before they began taking Neurontin to the present is essential to defendants' ability to oppose class certification and to defend this case on the merits. The individual plaintiffs are alleging that they took Neurontin as a result of fraudulent off-label promotion by defendants, and they must show that Neurontin was ineffective. To test these allegations and claims, defendants are entitled to learn why their physicians prescribed Neurontin and whether it was effective. Accordingly,

---

[10] One plaintiff (ASEA) has recently indicated that it will produce summaries of its Neurontin-takers' medical claims, as well as five individual medical claims for its Neurontin-takers. To the extent that these summaries not provide all relevant information, defendants request that ASEA be compelled to produce all medical claims data for its Neurontin-takers.

[11] See, e.g., id. Exh. 10 Reqs. 8, 11, 16-24 (requesting all documents concerning each individual plaintiff's medical history, including all medical and prescriptions drug records from the time of the injury that caused each plaintiff to take Neurontin); id. Exh. 11 Ints. 10-12, 14. In connection with their efforts to obtain comprehensive medical records, defendants have requested that the individual plaintiffs execute authorizations allowing defendants to obtain their medical records from the non-parties which have them. The individual plaintiffs refused to provide such authorizations, stating that they would obtain their medical records and produce those that they deemed relevant. Id. Exh. 3. Defendants should be permitted to conduct their own search for these materials to make sure that all of the necessary medical records have been obtained from non-party doctors and hospitals.

defendants need to understand these plaintiffs' complete medical history – from at least the year before they started taking Neurontin to the present.

Such information is necessary for multiple reasons going to adequacy, typicality, predominance, causation, reliance, and loss. First, the individual plaintiffs' medical records from before they began taking Neurontin will provide a critical baseline against which their subsequent health and the efficacy of Neurontin can be assessed. In addition, defendants are entitled to examine whether some factor unique to the individual plaintiff, such as a condition that was resistant to other approved medical treatments, might explain Neurontin's alleged lack of efficacy in their individual cases. The plaintiffs' medical records from before the period when they began taking Neurontin are essential to assess these issues.

These records will also show whether the individual plaintiffs took other off-label prescription drugs besides Neurontin. They will also show why their treating physicians chose to prescribe Neurontin instead of other drugs typically used to treat the conditions of the individual plaintiffs. Mr. Smith's counseling records could bear on his adequacy as a class representative because the depression that he suffered from prior to taking Neurontin may explain the drug's alleged inefficacy in his case. Id. Exh. 13.

Finally, defendants are entitled to know why these individuals stopped taking Neurontin, whether they took any other off-label drugs after they stopped taking Neurontin, and whether they took any other drugs for pain. The individual plaintiffs' medical records from after they stopped taking Neurontin could be critical to these issues.

Because of the importance of these documents and this information, defendants request that the Court order that the individual plaintiffs produce their medical records from the period

11

starting the year before they began taking Neurontin to the present. In addition, defendants request that the individual plaintiffs be compelled to execute medical authorizations so that defendants can confirm that all such records have been produced.

### IV. Class Plaintiff ASEA Should Be Compelled To Produce Neurontin Claims Data

Class plaintiff ASEA has unreasonably refused to produce Neurontin claims data upon which it purports to base a portion of its damages claim in this case. ASEA should either be compelled to produce the Neurontin claims that it is withholding or be precluded from recovery for these claims.

Defendants requested documents and information regarding claims for reimbursement of Neurontin prescriptions by ASEA. Id. Exh. 14 Req. 48. ASEA's third-party administrator, Administration Services, Inc. ("ASI"), possesses approximately 136,000 of ASEA's out-of-network drug claims, some unknown portion of which purportedly includes Neurontin claims. Id. Exh. 15. ASEA does not deny that it has control over these ASI documents. ASI does not possess electronic records of these claims (except in aggregated totals), and ASEA refuses to direct ASI to produce hard copies on burdensomeness grounds. Id. And yet, despite this refusal, ASEA asserts that it is entitled to recovery for these out-of-network claims for Neurontin. Id.

Defendants request that the Court either compel ASEA to produce the hard copies of its out-of-network Neurontin claims or preclude ASEA from recovering upon these claims. Defendants are entitled to information about the claims on which ASEA purports to rely in seeking damages. ASEA's assertion that the production of these documents is unduly burdensome is inadequate to preclude discovery when it is ASEA's own claims that put them

12

directly at issue. ASEA should be ordered either to produce the documents or to have waived any claim for damages based on the claims data that it refuses to produce.

V.  **Coordinated Plaintiff Kaiser Should Be Compelled To Produce Documents from Outside California and from All of Its Physician Provider Employees**

Coordinated plaintiff Kaiser should be compelled to produce documents from outside California. Kaiser should also be compelled to produce documents from all of its physician providers who it alleges were defrauded.

Kaiser, headquartered in California, administers a health plan with 8.2 million members in nine states and the District of Columbia. Id. Exh. 16. Unlike the other coordinated plaintiffs and the third-party payor class plaintiffs, Kaiser is an integrated health delivery system and, as such, owns and operates its own health care facilities and employs its own physicians and pharmacists. Id. The members of Kaiser's health plans typically receive treatment from Kaiser physicians in Kaiser offices and hospitals, and have their prescriptions filled in Kaiser in-house pharmacies.

Kaiser has unreasonably refused to conduct a thorough search for responsive documents in regions outside of California, even though its claims are not limited to Kaiser's business in California. Id. ¶ 7. Kaiser has stated that, outside of California, it will neither search any of its facilities nor speak with any of its employees, except for Continuing Medical Education Coordinators. Id. This is grossly inadequate because documents about Neurontin from Kaiser's offices outside of California are just as relevant as the numerous documents about Neurontin that Kaiser will produce from California. To the extent that Kaiser wants to recover for Neurontin

13

claims outside of California, it should be required to make a complete production from these regions or should be precluded from recovering for such claims.

Kaiser has also refused to produce documents from all but a few of its physicians who it claims were defrauded despite seeking recovery for all off-label Neurontin prescriptions by its doctors. Id. ¶ 8. It has instead unilaterally limited its production from its physicians to physicians who Kaiser asserts may have been high Neurontin prescribers or showed "strong interest" in Neurontin. Id.[12] By agreeing to produce these documents – albeit ones of its own selection – Kaiser has conceded that these documents are relevant. Yet the scope of its production is entirely inadequate, and Kaiser cannot self-select which physicians' files will be produced. Kaiser should either be compelled to produce all documents from its physician providers who prescribed Neurontin or be precluded from recovering for any Neurontin claims for which the physician was a Kaiser employee but whose documents were not produced.

## VI.   Class Plaintiff Harden Should Be Compelled To Produce Invoices Relating to Its Neurontin Claims

Class plaintiff Harden should be compelled to produce certain of the invoices that it received from its third-party administrator (BlueCross and BlueShield of Alabama) on a weekly basis. Defendants recently learned during the Rule 30(b)(6) deposition of Harden that Harden's health benefits were fully underwritten by Blue Cross and Blue Shield of Alabama from the beginning of the class period in 1994 until at least mid-1999 (and perhaps later). Harden did not become a self-insured employer until after that time. Id. Exh. 17 (Matthews Dep. 69:7 – 92:8).

---

[12] During a teleconference on August 16, 2005, Kaiser's counsel stated that she was not aware of any systematic way in which these physician providers were being selected and that the collection was being performed by Kaiser's in-house counsel. Id. ¶ 18.

Harden's designee also testified that Harden received weekly invoices from Blue Cross and Blue Shield of Alabama while it was self-insured, but not while it was fully underwritten. Because Harden was only "at risk" of paying for Neurontin while it was self-insured and the class definition is limited to entities that are "at risk" of paying for Neurontin, Harden will not be a class member when its health benefits were underwritten. Thus, the date range of these invoices is directly relevant to the period of time for which Harden has a potential claim, as well as Harden's suitability as a class representative. Consequently, Harden should be required to produce the first of these invoices, as well as subsequent invoices sufficient to show the period of time that it was self-insured.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to compel the production of certain documents and information should be granted.

Dated: January 9, 2006

                                        DAVIS POLK & WARDWELL

                                        By:   /s/ James P. Rouhandeh
                                                 James P. Rouhandeh

                                      450 Lexington Avenue
                                      New York, New York 10017
                                      (212) 450-4000

                                            - and -

                                      HARE & CHAFFIN

                                      By:   /s/ David B. Chaffin
                                                 David B. Chaffin

                                      160 Federal Street
                                      Boston, Massachusetts 02110
                                      (617) 330-5000

                                      *Attorneys for Defendants Pfizer Inc. and*
                                      *Warner-Lambert Company*

### Certificate of Consultation

I certify that counsel have conferred and have attempted in good faith to resolve or narrow the issues presented by this motion and that the requirements of Local Rule 37.1 have been complied with.

                                                   s/David B. Chaffin