# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | MDL Docket No. 1629 |
| IN RE NEURONTIN MARKETING AND ) | |
| SALES PRACTICES LITIGATION ) | Master File No. 04-10981 |
| ) | |
| THIS DOCUMENT RELATES TO: ) | Judge Patti B. Saris |
| ) | |
| ALL ACTIONS ) | Magistrate Leo T. Sorokin |
| ) | |

**DECLARATION OF RICHARD E. SHEVITZ
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL DISCOVERY**

Comes now the undersigned declarant, Richard E. Shevitz, who deposes and states as follows:

1. I am partner at the Indianapolis law firm of Cohen & Malad, LLP, and am an attorney of record for the Plaintiffs in this action, including Plaintiff and proposed class representative Gerald Smith ("Smith").

2. I have personal knowledge regarding the matters stated below and would testify to the same.

3. Smith, by and through counsel, produced his complete medical records for treatments he received for injuries sustained in an auto accident that led to his being prescribed Neurontin for off-label uses.

4. The medical records Smith produced to Defendants include medical records that pre-date his use of Neurontin by approximately seven months. Smith

produced all medical records dating from his March 1999 automobile accident, even though he was not prescribed Neurontin until October 1999.

5. In addition, Smith, by and through counsel, produced all records of chiropractic treatments he received long after he discontinued his use of Neurontin.

6. Defendants have consistently sought the production of *all* of Smith's medical records, without qualification as to time or the type of treatment those records concerned, in their First Request for the Production of Documents to Smith, in correspondence from counsel for Defendants to myself and other counsel for Plaintiffs, and during conversations between counsel for Defendants and counsel for Plaintiffs,

I declare under penalty of perjury that the foregoing representations are true and accurate to the best of my personal knowledge and belief.

Dated: January 26, 2006                               s/ Richard E. Shevitz
                                                                  Richard E. Shevitz

COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Facsimile: (317) 636-2593
rshevitz@cohenandmalad.com

# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | MDL Docket No. 1629 |
| IN RE NEURONTIN MARKETING AND ) | |
| SALES PRACTICES LITIGATION ) | Master File No. 04-10981 |
| ) | |
| THIS DOCUMENT RELATES TO: ) | Judge Patti B. Saris |
| ) | |
| ALL ACTIONS ) | Magistrate Leo T. Sorokin |
| ) | |

**DECLARATION OF RONALD J. ARANOFF
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL DISCOVERY**

Comes now the undersigned declarant, Ronald J. Aranoff, who deposes and states as follows:

1. I am of counsel at the law firm of Bernstein Liebhard & Lifshitz, LLP in New York City, and am an attorney of record for the Plaintiffs in this action, including Plaintiff and proposed class representative Lorraine Kopa ("Kopa").

2. I have personal knowledge regarding the matters stated below and would testify to the same.

3. Kopa, by and through counsel, produced her complete medical records for treatments she received for injuries sustained in an auto accident that led to her being prescribed Neurontin for off-label uses.

4. The medical records Kopa produced to Defendants include medical records that pre-date her use of Neurontin by more than six months. Kopa produced all

medical records dating from her April 2003 automobile accident, even though she was not prescribed Neurontin until November 2003.

5. Defendants have consistently sought the production of *all* of Kopa's medical records, without qualification as to time or the type of treatment those records concerned, in their First Request for the Production of Documents to Kopa, in correspondence from counsel for Defendants to myself and other counsel for Plaintiffs, and during conversations between counsel for Defendants and counsel for Plaintiffs.

I declare under penalty of perjury that the foregoing representations are true and accurate to the best of my personal knowledge and belief.

Dated: January 26, 2006            /s/ Ronald J. Aranoff

                                                    BERNSTEIN LIEBHARD & LIFSHITZ, LLP
10 East 40th Street, 22nd Floor
New York, NY 10280
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
aranoff@bernlieb.com

2

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 1629<br>Civil Action Nos. 04-10739-PBS, et al. |
| This Document Relates to:<br>HARDEN MANUFACTURING CORPORATION; LOUISIANNA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANNA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated , v. PFIZER INC. and WARNER-LAMBERT COMPANY | Master File No. 04-10981<br>Judge Patti B. Saris |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC.<br><br>and<br><br>AETNA, INC v. PFIZER INC. | |

**DECLARATION OF VALERA KINGSLEY IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY**

In accordance with 28 U.S.C. § 1746, VALERA KINGLSEY declares on penalty of

perjury as follows:

      1.      My name is Valera Kingsley. I am over 18 years of age and have personal

knowledge of the matters stated herein.

      2.      I am employed by Administration Services, Inc. and serve as the primary claims

supervisor for processing claims associated with the ASEA/AFSCME Local 52 Health Benefits Trust ("ASEA"). I have worked with ASEA's counsel to respond to Defendants' discovery requests in this matter.

3. Under my direction ASI generated medical claims summaries for over 400 of its Neurontin taking members. This effort took approximately 40 hours of staff time and is not within our normal scope of work. ASEA will be billed approximately $2000 for this effort.

4. From the inception of ASEA's health benefits plan (the "Plan"), the majority of prescription drug claims have been processed by the Plan's Prescription Benefits Manager, Caremark. For a time, however, a subset of drug claims were processed by ASI.

5. ASI processed "out-of-network" drug claims. These are claims for prescriptions filled by pharmacies out of Caremark's network, *e.g.*, Indian service facilities, military hospitals and remote locations.

6. From the Plan's inception to July 2004 ASI processed approximately 136,000 such claims in the same manner it processed medical claims. In July 2004 Caremark began administering these claims.

7. The electronic record ASI created when out-of network claims were processed does not include the name of the drug. It only identifies whether the prescription was for a generic or a brand name drug.

8. The only way to determine if an out-of-network drug claim processed by ASI is for Neurontin is to retrieve the underlying paper work for the claim. The paper record of these claims is stored by date in the "day batches" of medical and drug claims processed by each of 12 claims adjudicators. In other words these 136,000 drug claims are randomly interspersed among the records of over one million medical claims warehoused in over 300 boxes of claim files. To

find all the drug claims, ASI would have to search all of these boxes and then review the documentation of all 136,000 claims to determine which of them were for Neurontin.

9. Maintaining the integrity of these files is very important to both ASI and ASEA as they represent the audit trail for claims processed.

Dated : Spokane, Washington
January 19, 2006

_____
Valera Kingsley

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re: NEURONTIN MARKETING AND
SALES PRACTICES LITIGATION

This document relates to:

HARDEN MANUFACTURING
CORPORATION; LOUISIANA HEALTH
SERVICE INDEMNITY COMPANY, dba
BLUECROSS/BLUESHIELD OF
LOUISIANA; INTERNATIONAL UNION OF
OPERATING ENGINEERS; LOCAL NO. 68
WELFARE FUND; ASEA/AFSCME LOCAL
52 HEALTH BENEFITS TRUST; GERALD
SMITH; and LORRAINE KOPA, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

PFIZER INC. and WARNER-LAMBERT
COMPANY,

Defendants.

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA v. PFIZER, INC.

and

AETNA, INC. v. PFIZER INC.

MDL. Docket No. 1629

Master File No. 04 Civ. 10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorkin

## DECLARATION OF JUSTINE J. KAISER

JUSTINE J. KAISER declares under penalty of perjury as follows:

1. Up until January 13, 2006, I was an attorney associated with the law firm of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("Cohen, Milstein"), counsel for Plaintiffs Kaiser

Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser") in this coordinated action.

2.  I submit this declaration in opposition to Defendants' Motion to Compel Discovery from Plaintiffs and the accompanying Declaration of Patrick J. Murray.

3.  I have personal knowledge of the matters stated herein.

4.  When I was associated with Cohen, Milstein, I participated in several meet-and-confer sessions with defense counsel regarding the scope of Kaiser's document production. I, and others at my law firm and at Kaiser, have spent considerable time in a good faith effort to respond to Defendants' requests, researching legal issues raised by Defendants' requests and responding as appropriate.

5.  During those meet-and-confer sessions, I explained to defense counsel that Kaiser had performed an extensive search in its Northern and Southern California regions because the vast majority of the relevant information was located in these regions. I further explained that given Kaiser's structure, there are very significant burdens associated with conducting an exhaustive search for documents in Kaiser's other regions. Nevertheless, I informed defense counsel that the Continuing Medical Education ("CME") Coordinators for each of Kaiser's regions had been contacted as part of Kaiser's document search efforts.

6.  Since that conversation, I have learned that the Directors of Pharmacy for each region and the chairs of the regional Pharmacy and Therapeutics Committees have also been asked to search and produce documents responsive to Defendants' discovery requests. To the extent such documents exist, I understand that they are being produced as part of Kaiser's rolling document production.

7.  On or about August 16, 2005, I participated in a teleconference with defense

counsel concerning Kaiser's document production. During that call, I informed defense counsel that Kaiser's counsel was participating and assisting in the document search efforts. As part of this, I explained to defense counsel that Kaiser's counsel was reaching out to certain physicians in order to gather relevant information. I was not aware at that time of the specific methods used by Kaiser to identify which physicians to contact.

8. I subsequently learned that Kaiser systematically contacted those physician leaders who would most likely have relevant documents. To the extent these physicians had responsive documents, I understand that Kaiser has produced them.

Dated: New York, New York
January 20, 2006

*Justine J. Kaiser*
Justine J. Kaiser