UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | ) ) ) | Master File No. 04-10981 |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCMIE LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Patti B. Saris Mag. Judge Leo T. Sorokin |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC. | ) ) ) | |
| and | ) ) | |
| AETNA, INC. v. PFIZER INC. | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS
TO REPORT AND RECOMMENDATION OF
MAGISTRATE JUDGE LEO T. SOROKIN DATED JANUARY 31, 2006**

The Class and Coordinated Plaintiffs respond to Defendants' objections to the Report and

Recommendation of Magistrate Judge Leo T. Sorokin, dated January 31,2006 (the "Report"). A

joint response to Defendants' separate memorandum of law is also filed herewith.[1]

---

[1]    References to the Objections of Defendants Pfizer Inc. And Warner-Lambert Company to Report and Recommendation of Magistrate Judge, Coordinated Plaintiffs' Objections to Report and Recommendation of Magistrate Judge and Plaintiffs' Joint Objections to Report and Recommendation, all dated and filed March 3, 2006, are denoted "Def. Obj. __," "Coord. Pl. Br.

Defendants' Objection:

1.    "Defendants object to the Report's statement that in 2000, Pfizer Inc. pled guilty to illegal off-label marketing and paid criminal and civil settlements of $430 million. Report at 2 n.3. In 2004, Warner-Lambert Company LLC pled guilty to nonfraudulent violations of the Food, Drug & Cosmetic Act and paid a fine and civil penalties totaling $430 million."

Plaintiffs' Response:

Defendants' objection is unfounded. Warner-Lambert Company LLC ("Warner-

Lambert") pled guilty to illegal marketing of Neurontin. On June 9, 2004, Warner-Lambert pled

guilty to Counts I and II of the Information in the criminal case, *United States v. Warner-*

*Lambert Company LLC*, 1:04 CR 10150 (Stearns, J.). Count I was distribution of an unapproved

new drug in violation of 21 U.S.C. §§ 331(d), 333(a)(2) & 335(a), and Count II was distribution

of a misbranded drug: inadequate directions for use, in violation of 21 U.S.C. §§ 331(a),

333(a)(2) & 352(f)(1). Both Counts specifically re-alleged and incorporated by reference

allegations regarding Warner-Lambert's off-label promotion through its sales representatives,

medical liaisons, consultants' meetings and advisory boards, and teleconferences. Plaintiffs

respectfully direct the Court to the Settlement Agreement and Release entered among the United

States, Pfizer, Inc., Warner-Lambert, and David Franklin, for the terms of civil settlement.

Defendants' Objection:

2.    "Defendants object to the Report's finding that Pfizer is based in New Jersey. Id. at 3. As the Plaintiffs have alleged, Pfizer is headquartered in New York City."

---

__" and "Pl. Jt. Br. __," respectively. References to the First Coordinated Amended Complaint and Amended Class Action Complaint, both dated February 1, 2005, are denoted "FCAC __" and "ACC __," respectively. References to the Plaintiffs' Joint Response to Defendants' Memorandum of Law In Support of Their Objections to Report And Recommendation of Magistrate Judge Leo T. Sorokin Dated January 31, 2006, filed herewith, are denoted "Pl. Jt. Resp. __." References to the Plaintiffs' Joint Memorandum, dated April 29, 2005 and Plaintiffs' Joint Surreply Memorandum, dated June 3, 2005, both submitted in opposition to Defendants' motion to dismiss, are denoted "Pl. Dism. Br. __" and "Pl. Surreply Br. __," respectively.

Plaintiffs' Response:

Defendants are correct that Pfizer is headquartered in New York City. ACC ¶ 11; FCAC ¶ 9. However, the wrongdoing occurred at the Parke-Davis division of defendant Warner-Lambert. As alleged, Warner Lambert was headquartered in New Jersey until its merger with Pfizer in June 2000. After the merger, the marketing of Neurontin continued to be managed at the merged entity's New Jersey facility. ACC ¶ 12; FCAC ¶ 11. Consequently, Defendants' objection is of little, if any, practical consequence.

Defendants' Objection:

3.       Defendants object to the Report's finding that 'adjunctive therapy' means that the drug cannot be prescribed by itself. Id. Used in this context, 'adjunctive therapy' means the use of Neurontin in combination with another treatment. Approval of Neurontin for adjunctive therapy, however, has no impact on the ability of doctors to prescribe the drug by itself."

Plaintiffs' Response:

Defendants' objection misses the point. Physicians may prescribe Neurontin by itself even though it has only been approved as "adjunctive therapy." However, as manufacturers and marketers of pharmaceuticals, Defendants cannot *promote* Neurontin for off-label uses, including as monotherapy. Plaintiffs have alleged that Defendants repeatedly fraudulently asserted that Neurontin was effective as a monotherapy treatment for epilepsy, despite knowing that their own clinical trials did not establish effectiveness for the indication. ACC ¶¶ 166-172; FCAC ¶¶ 142-147.

Defendants' Objection:

4.       "Defendants object to the Report's finding that Pfizer's sales representatives are also known as medical liaisons. Id. at 12. Medical liaisons are separate, and serve a purpose distinct, from sales representatives."

<u>Plaintiffs' Response</u>:

This objection is unfounded.  The Report accurately summarizes the allegations of the

Complaints concerning Defendants' blurring of the distinction between "medical liaisons" and

"sales representatives" and does not purport to make a "finding" that medical liaisons and sales

representatives are synonymous.  <u>See, e.g.</u>, ACC ¶¶ 207-09 ("In effect, Parke-Davis used the

medical liaisons as a surrogate sales force who marked Neurontin for off-label uses."); FCAC ¶¶

32-33 (same).

<u>Defendants' Objection</u>:

5.     "Defendants object to the Report's summary of the grounds upon which defendants
       moved for dismissal of plaintiffs' RICO claims.  <u>Id</u>. at 15.  Defendants also moved for
       dismissal of the claims on the following grounds: (1) plaintiffs failed to allege any false
       statements; (2) third-party payor plaintiffs failed to plead facts establishing causation
       under the heightened causation requirements of the RICO statute; and (3) plaintiffs'
       RICO claims are time-barred.  <u>See</u> Defendants' Memorandum of Law in Support of Their
       Motions to Dismiss, dated Mar. 17, 2005 ('Defs.' Mem.') at 6-11, 13-16, 35-39;
       Defendants' Reply Memorandum of Law in Further Support of Motions To Dismiss,
       dated May 16, 2005 ('Defs.' Reply') at 4-6, 11-15, 35-39. "

<u>Plaintiffs' Response</u>:

This objection is unfounded.  The court has discretion to organize its discussion of the

issues in any way it sees fit. Notably, Defendants do not object that the Report fails to address

the purported lack of false statements, the RICO pleading requirements, or the statute of

limitations, but rather, object only to the characterization of Defendants' grounds for dismissal.

In fact, the Report goes through an extensive discussion of certain of the false and misleading

statements and omissions alleged in the operative complaints.  <u>See</u> Report at 39-52.

Furthermore, the Report specifically rejects Defendants' contention that there is a heightened

pleading requirement for causation under RICO, <u>see id</u>. at 18, and that Plaintiffs' claims were

time-barred.  <u>see id</u>. at 55-56.  Defendants themselves recognize that their issues are addressed,

for example, in their objection no. 23 (objecting to the conclusion that statute of limitations issue should be left to the jury).

Defendants' Objection:

6.    "Defendants object to the Report's conclusion that plaintiffs have adequately alleged that defendants acted with scienter.  Report at 15-16.  This conclusion should be rejected because plaintiffs have made only conclusory allegations of scienter."

Plaintiffs' Response:

The Report correctly found that Plaintiffs have sufficiently alleged scienter.  Both the Class and Coordinated Complaints are replete with allegations that Defendants purposely developed a scheme to mislead their audiences about the effectiveness of Neurontin for unapproved uses, in order to drive off-label sales and obtain greater market share. See, e.g., Pl. Dism. Br. at 5-11; Pl. Surreply Br. at 1-5.

Defendants' Objection:

7.    "Defendants object to the Report's conclusion that plaintiffs have adequately pled causation. Report at 17-20.  This conclusion should be rejected because plaintiffs have failed to allege facts demonstrating that they paid for Neurontin as a result of defendants' alleged misconduct.  See Defs. Mem. At 13-14; Defs.' Reply at 11-12."

Plaintiffs' Response:

Defendants' objection is without merit.  Plaintiffs clearly allege that they paid for excessive prescriptions of Neurontin because of Defendants' unlawful conduct.  See ACC ¶¶ 5-8, 291; FCAC ¶¶ 5-8, 199, 212, 225, 238, 251, 264, 277, 290.  *See In re Lupron Marketing and Sales Practices Litig.*, 295 F. Supp. 2d 148, 175 (D. Mass. 2003) (Stearns, J.) (allegations that wrongful drug marketing scheme caused many millions of dollars in excess payments for drug "more than sufficient" to state a claim.).  See also Pl. Dism. Br. at 11-18; Pl. Surreply Br. at 5-6.

Defendants' Objection:

8.    "Defendants object to the Report's rejection of their argument that the third-party payor
       plaintiffs have failed to plead causation under RICO.  Report at 20.  These plaintiffs'
       RICO claim failed to plead causation because any injury suffered by them is too remote.
       See Defs.' Mem. at 13-14; Defs.' Reply at 11-12."

Plaintiffs' Response:

        Defendants' objection is baseless.  Third party payors, such as Plaintiffs, paid the

majority of the purchase price of Neurontin and suffered the largest direct economic injury from

Defendants' unlawful conduct.  See ACC ¶¶ 5-8, 291; FCAC ¶¶ 5-8, 199, 212, 225, 238, 251,

264, 277, 290.  As this Court has recognized, third party payors suffer "direct" injury from the

type of misconduct at issue.  See In re Pharmaceutical Industry Average Wholesale Price

Litigation, 307 F. Supp. 2d 196, 207-08 (D. Mass. 2004) ("In the private, end-payor context, the

harm alleged by Defendants' alleged actions is visited directly upon the end-payor plaintiffs, as

they have paid directly for the named drugs. . . .").  See also Pl. Dism. Br. at 11-18; Pl. Surreply

Br. at 5-8.

Defendants' Objection:

9.    "Defendants object to the Report's conclusion that plaintiffs have sufficiently pled
       'systematic linkages' between defendants and Physicians World.  Report at 25- 26.  This
       conclusion should be rejected because plaintiffs have only alleged discrete instances of
       legitimate business interaction, not an ongoing and established mechanism for decision-
       making and direction.  See Defs.' Mem. at 20."

Plaintiffs' Response:

        This objection is unfounded.  The Report correctly recognizes that Plaintiffs have alleged

systematic linkages between Defendants and Physicians World by alleging, *inter alia*, the

commingling of employees and resources.  Report at 25-26; ACC ¶¶ 66-75; FCAC ¶¶ 52-62.

When construed in the light most favorable to plaintiffs, the numerous connections between

Defendants and Physicians World are not "discrete instances of legitimate business interaction."

See also Pl. Dism. Br. at 18-22; Pl. Surreply Br. at 12-14.

Defendants' Objection:

10.    "Defendants object to the Report's conclusion that plaintiffs have adequately alleged that defendants controlled the purported RICO enterprises.  Report at 26-27.  This conclusion should be rejected because plaintiffs have only made conclusory, factually insufficient allegations of control.  See Defs.' Mem. at 21-22; Defs.' Reply at 19-20."

Plaintiffs' Response:

The Report correctly concludes that Plaintiffs have sufficiently pled Defendants' control of the enterprise.  Plaintiffs allege that Defendants controlled the content of messages being delivered by the physician participants at each event; controlled the stream of information disseminated concerning Neurontin by ensuring only favorable results were published and disclosed; hand-picked physician speakers, as well as attendees for each seminar, event, and presentation; paid physician speakers for their participation; and placed their own employees and agents in positions of authority and control in the enterprises.  See, e.g., Pl. Dism. Br. at 22-23 & n.27 (citing ACC and FCAC); Pl. Surreply Br. at 15.

Defendants' Objection:

11.    Defendants object to the Report's recommendation that plaintiffs should be permitted to obtain additional discovery from defendants and then provided with another opportunity to plead mail and wire fraud with specificity, as well as the Report's conjecture that plaintiffs can cure the acknowledged deficiency in pleading.  Report at 27-29.  This recommendation should be rejected because defendants have already provided plaintiffs with substantial discovery, and plaintiffs had ample opportunity to conduct, and did conduct, substantial third-party discovery (including discovery of other alleged members of the purported enterprises) before filing their complaints, but despite all of this, plaintiffs have not satisfied Rule 9(b)'s pleading standards.  Given the history of this case and its ancestor, Franklin, this is not a situation in which a 'second determination' should be permitted."

<u>Plaintiffs' Response</u>:

Plaintiffs object to the Report's conclusion that Plaintiffs have failed to plead the predicate acts of mail and wire fraud with particularity.  Thousands of instances of mail and wire fraud are pled in the Complaints.  <u>See</u> ACC ¶¶ 250-253; FCAC ¶¶ 184-86.  Should the Court find that greater specificity is needed, however, Plaintiffs should be able to conduct additional discovery and replead.  Defendants' contention that Plaintiffs have had enough discovery is baseless, as Defendants have persistently resisted discovery, refusing even to produce documents previously gathered and produced to the U.S. Attorney in connection with the <u>Franklin</u> litigation.

<u>Defendants' Objection</u>:

12. "Defendants object to the Report's conclusion that only some of plaintiffs' state law claims are preempted.  Report at 30-37.  All of plaintiffs' state law claims should be preempted because permitting these claims would interfere with the Food & Drug Administration's complicated role of policing pharmaceutical manufacturers and because all of these claims are predicated on violation of the Food, Drug & Cosmetic Act.  <u>See</u> Defs.' Mem. at 31-35; Defs.' Reply at 30-35."

<u>Plaintiffs' Response</u>:

None of Plaintiffs' state law claims are preempted by the Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.,* for the reasons discussed in the Joint Memorandum of Law of the Class and Coordinated Plaintiffs in Opposition to Defendants' Motion to Dismiss (at 31-35) and Joint Surreply Memorandum of Law of the Class and Coordinated Plaintiffs in Opposition to Defendants' Motion to Dismiss (at 23-30).

In addition, as explained in Plaintiffs' Objections to the Report filed on March 3, 2006 (at 18-20), the Report errs in its preemption analysis by splitting Plaintiffs' allegations into "two categories of misleading statements": those relating to the "structure of the marketing campaign" and "actual statements regarding Neurontin's effectiveness."  Report at 30, 35.  Plaintiffs allege a single wrongful scheme to deceptively promote and market Neurontin.  The Supreme Court has

instructed that "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. The character and effect of a conspiracy are not to be judge by dismembering it and viewing it in separate parts, but only by looking at it as a whole. . . ." Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 699 (1962).

Defendants' Objection:

13.     "Defendants object to the Report's conclusion that alleged misrepresentations by certain
        physicians can be imputed to defendants. Report at 38-39. This conclusion should be
        rejected, *inter alia*, because plaintiffs have not adequately alleged that defendants
        controlled, or were entangled with, these physicians. See Defendants' Memorandum of
        Law in Support of Objections to Report and Recommendation of Magistrate Judge Leo T.
        Sorokin Dated Mar. 3, 2006 ("Defs.' Objs. Mem.") at 16-18, 21, 23-24, 27."

Plaintiffs' Response:

        The Report correctly concludes that Defendants can be held responsible for the

statements of certain physicians. Plaintiffs allege a wide-ranging scheme to increase Neurontin

sales, in which Defendants supplied misinformation to the prescribing physicians by, *inter alia*,

inducing certain doctors to write journal articles and give talks at medical education seminars,

advisory boards, consultant meetings, speakers bureaus and similar events that favorably

discussed the off-label use of Neurontin. See ACC ¶¶ 210-33; FCAC ¶¶ 87-95. Plaintiffs further

allege that Defendants hand-picked physicians who spoke at meetings and that any presenter

who publicly presented an unfavorable view of Neurontin was "blacklisted" from speaking at

any future medical marketing events. See ACC ¶¶ 63, 96-104; FCAC ¶¶ 49, 87-95. These

allegations are sufficient to impute the physicians' misstatements to Defendants.

Defendants' Objection:

14.    "Defendants object to the Report's conclusion that the allegations involving statements made about pain, dose dependency, diabetic neuropathy, monotherapy, restless leg syndrome, bipolar disorder, and panic disorder satisfy Rule 9(b)'s pleading requirements. Report at 39-41.  This conclusion should be rejected because the Report erroneously assumes that defendants have transcripts of seminars and meetings that plaintiffs do not and that this assumed fact excuses plaintiffs from pleading the alleged fraudulently statements with particularity."

Plaintiffs' Response:

    Defendants misconstrue the Report's conclusion.  The Report finds that "Plaintiffs have alleged enough about the substance of the statement to put Defendants on notice of the claim and allay Rule 9(b)'s concern regarding strike suits."  Report at 40.  See, e.g., Pl. Dism. Br. at 10.  Rather than *relieving* Plaintiffs of their pleading obligation because Defendants possess transcripts, the Report concludes that Plaintiffs have *satisfied* their burden by alleging sufficient details for Defendants to be able to prepare a defense.

Defendants' Objection:

15.    "Defendants object to the Report's assumption that defendants have transcripts of all of the seminars referenced in the complaints.  Id. at 40-41.  Although defendants possess transcripts from some seminars, they do not possess transcripts from many others.  Many of the transcripts that defendants do not possess have been provided to plaintiffs.  Thus, where transcripts are available, plaintiffs should be required to identify the alleged misrepresentations contained within them with specificity.  Where transcripts are not available, plaintiffs' allegations should be dismissed for failure to plead with specificity."

Plaintiffs' Response:

    See Response to Defendants' Objection No. 14.  In addition, whether Defendants in fact possess transcripts of many of the events described in Plaintiffs' complaints neither invalidates the specific sentence in the Magistrate Judge's report to which the Defendants object, nor the larger point being made in the Report – that Defendants are capable of responding to Plaintiffs' claims from the information provided in the complaints.

With respect to the transcripts, what is relevant is whether Defendants have possession, custody or control of the transcripts, not necessarily physical possession. Pursuant to Defendants' instructions and well-established practices in the industry, Defendants' agents, the vendor participants, routinely transcribed or recorded the events. Accordingly, the Magistrate correctly concluded that Defendants "have" transcripts, just as a party is deemed to have documents that are within the physical possession of its agent. Defendants have not presented evidence contradicting this factual assertion.

Moreover, Defendants' assertion that Plaintiffs have been "provided" transcripts that Defendants do not possess is demonstrably false. The only transcripts which Plaintiffs have been "provided" that were not produced by Defendants in <u>Franklin</u> are a few documents Dr. Franklin's attorneys were allowed to copy that had been produced to the United States Attorney by two of their co-conspirators, the medical marketing firms Cline, Davis & Mann and Sudler & Hennessey. At the conclusion of the <u>Franklin</u> litigation, the existence of approximately 40 banker's boxes of such material was made made known to Dr. Franklin's counsel, and his attorneys had a limited opportunity to review a small proportion of that material, and copy even less.[2] Although they were not allowed to review most of the boxes, Dr. Franklin's attorneys observed scores of transcripts and recordings from the events in question. Defendants' counsel admit they have physical possession of all of this material, but have refused to produce it.[3] Thus, the Magistrate Judge had ample basis to conclude that these facts are within the exclusive control

---

[2] Significantly, all of this material, including the relevant transcripts and recordings, was reviewed and copied by Defendants' counsel before the documents were turned over to the U.S. Attorney. Defendants failed to produce this material both in this action and in <u>Franklin</u>.

[3] The medical marketing firms, following Defendants' lead, have also refused to produce these documents in response to third-party subpoenas. The Magistrate Judge is aware of these facts, because they are the subject of a motion to compel by Plaintiffs that has been pending since July 2, 2005 (docket entry nos. 170-72), and which is now, of course, currently stayed.

of Defendants and Plaintiffs are not required by Rule 9(b) to plead further particulars with

respect to these matters.

Defendants' Objection:

16.    "Defendants object to the Report's statement in footnote 20 that plaintiffs have alleged
       that Neurontin was ineffective for the conditions for which it was allegedly touted. Id. at
       42-43 n.20.  The Coordinated Plaintiffs have not made this allegation, which was
       recognized earlier in the Report. Id. at 22."

Plaintiffs' Response:

       Coordinated Plaintiffs have alleged that Neurontin was ineffective for many conditions,

such as diabetic peripheral neuropathy, restless leg syndrome, bipolar disorder, and panic

disorder.  See, e.g., Coord. Pl. Br. at 6; FCAC ¶¶ 107-25 and 130-32.  As Coordinated Plaintiffs

explained in their objections (filed Mar. 3, 2006), however, the effectiveness of Neurontin is not

relevant to the issue of whether Plaintiffs were injured by Defendants' scheme.  See Coord. Pl.

Br. at 1-10.  Coordinated Plaintiffs paid for Neurontin (a) at dosages exceeding recommended

and effective levels; (b) for medical conditions for which Neurontin was no better than a

placebo; and (c) for uses for which Defendants had no basis for touting the drug was effective or

where negative studies, side effects or findings were suppressed.  See, e.g., FCAC ¶¶ 107-11,

120-25, 130-40 and 148-62.

Defendants' Objection:

17.    "Defendants object to the Report's conclusion that plaintiffs have pled sufficient facts
       under their theory that defendants misrepresented the results of scientific studies. Id. at
       46-47.  This conclusion should be rejected for the reasons discussed in Defendants'
       Memorandum of Law in Support of Objections to Report and Recommendation of
       Magistrate Judge Leo T. Sorokin Dated January 31, 2006, dated March 3, 2006
       ('Defendants' Objections Memorandum').  Defs.' Objs. Mem. at 15-16, 18-20."

Plaintiffs' Response:

       In their memorandum of law, Defendants argue that this Court should examine the

substance of certain meeting transcripts because the documents have been incorporated by

- 12 -

reference in the Complaints.  This Court should reject Defendants' attempt to turn this motion to dismiss into a motion for summary judgment.  Defendants conveniently gloss over the fact that the Complaints do not cite (and therefore do not "incorporate by reference") any transcripts, but merely report (1) the events of a meeting at Jupiter Beach on August 1996, in which Drs. Harden and Leroy misrepresented the results of an Eastern European clinical study on monotherapy; see ACC ¶¶ 166-167; FCAC ¶ 144; and (2) Parke-Davis's dissemination of a journal abstract that hid and misrepresented Dr. Gorson's negative findings regarding Neurontin's use for diabetic peripheral neuropathy.  See ACC ¶¶ 118-123; FCAC ¶¶ 109-111.

Defendants' Objection:

18.    "Defendants object to the Report's conclusion that plaintiffs have pled sufficient facts under their theory that defendants fraudulently failed to disclose existing negative clinical evidence regarding Neurontin's efficacy for bipolar disorder, panic disorder, diabetic neuropathy, and migraine.  Report at 49.  This conclusion should be rejected for the reasons discussed in Defendants' Objections Memorandum.  Defs.' Objs. Mem. at 20-27."

Plaintiffs' Response:

Plaintiffs' Complaints are replete with facts to support the contention that Defendants fraudulently failed to disclose existing negative clinical evidence regarding Neurontin's efficacy for bipolar disorder, panic disorder, diabetic neuropathy, and migraine.  See ACC ¶¶ 135-139, 149-156, 162-165, 173-181; FCAC ¶¶ 107-111, 120-125, 130-132, 133-140.

Defendants' Objection:

19.    "Defendants object to the Report's conclusion that the issue of whether the plaintiffs have pled a claim, or have standing, under the New Jersey Consumer Fraud Act should be deferred to either the class certification or summary judgment stage.  Report at 53.  This conclusion should be rejected for the reasons discussed in Defendants' Objections Memorandum."

<u>Plaintiffs' Response</u>:

Defendants do not contend that the New Jersey Consumer Fraud Act ("NJCFA") contains an express territorial limitation, or that it cannot be applied to benefit non-residents.  Instead, they argue that the NJCFA *should* not be applied to benefit nonresidents based on choice-of-law considerations.  This Court has already recognized at the initial status conference – *twice*– , that this battle is premature, and the choice of law issues are more appropriately addressed in the context of class certification or summary judgment.  <u>See</u> Pl. Dism. Br. at 26-27; Pl. Surreply Br. at 16-17.

<u>Defendants' Objection</u>:

20.    "Defendants object to the Report's conclusion that the issue of whether the third-party payor plaintiffs have standing to bring a claim under the New Jersey Consumer Fraud Act should be deferred to either the class certification or summary judgment stage.  Report at 53 n.23.  This conclusion should be rejected for the reasons discussed in Defendants' Objection Memorandum.  Defs.' Objs. Mem. at 4-5, 10-12."

<u>Plaintiffs' Response</u>:

<u>See</u> Response to Objection 19.

<u>Defendants' Objection</u>:

21.    "Defendants object to the Report's failure to address whether the plaintiffs adequately pled reliance in connection with their claim for common law fraud. Report at 53.  This conclusion should be rejected for the reasons discussed in Defendants' Objections Memorandum.  Defs.' Objs. Mem. at 12-14."

<u>Plaintiffs' Response</u>:

Defendants failed to raise this argument in connection with the motions to dismiss, and should not be allowed to raise the matter for the first time as an objection to the Report.  <u>See</u> Pl. Jt. Resp., Part IV.A (at 15-16).  In any event, a presumption of reliance applies (<u>see</u> <u>id</u>., Part IV.B. at 16-18), and the Report correctly concluded that Plaintiffs have stated a claim for common law fraud for the reasons stated therein.  <u>See</u> Report at 53.

Defendants' Objection:

22.    "Defendants object to the Report's conclusion that the Coordinated Plaintiffs have sufficiently pled a claim for unjust enrichment.  Report at 54, 57.  This conclusion should be rejected for the reasons discussed in Defendants' Objections Memorandum.  Defs.' Objs. Mem. at 3-4."

Plaintiffs' Response:

As explained in Part II (at 3-5) of Plaintiffs' Joint Response, Coordinated Plaintiffs have appropriately alleged all elements of their claim for unjust enrichment, including tens of millions of dollars of direct economic injuries from payment for excessive prescriptions for Neurontin. Moreover, as this Court has repeatedly held, it would be premature to dismiss any plaintiff's unjust enrichment claim at this early stage of the litigation.  Id.  See also Pl. Jt. Br. at 26-27; Pl. Dism. Br. at 39-40; Pl. Surreply Br. at 33.

Defendants' Objection:

23.    "Defendants object to the Report's conclusion that the issue of whether certain of plaintiffs' claims are barred by the statute of limitations should be left to the jury.  Report at 56.  This conclusion should be rejected because courts frequently dismiss complaints on statute of limitations grounds pursuant to Rule 12(b)(6), where as here, the claims are patently time-barred.  See Defs. Reply at 36."

Plaintiffs' Response:

The Report correctly concluded that the determination of when a plaintiff should have been on notice of its injury should be left to the trier of fact.  Plaintiffs have alleged that Defendants deliberately concealed their involvement in the off-label promotion of Neurontin and were remarkably successful at it.  See ACC ¶¶ 31, 40, 45, 53-56, 63, 68, 74, 75, 78-81, 83-86, 89, 91, 95, 96-104, 107-113, 116-122, 125, 128-142, 144-46, 148-150, 153-154, 156-157, 159, 162-164, 166-171, 178-182, 189-193, 197, 206-212, 223-226, 229-231; FCAC ¶¶ 17-23, 25, 26, 28-32, 34, 36-37, 41-42, 49, 77-78, 87, 92, 98, 101-105, 107-111, 113-117, 119-132, 134-147,

150-162, 167-168, 174-175, 179.  See Pl. Dism. Br. at 35-39; Pl. Surreply Br. at 30-33.

Plaintiffs' claims are not time-barred.

<u>Defendants' Objection</u>:

24.    "Defendants object to the Report's failure to address whether fraudulent concealment
        was adequately pled.  Report at 55 n.25.  As defendants' briefing on the motion to
        dismiss explained, plaintiffs have failed to plead the elements of fraudulent concealment
        with particularity.  See Defs.' Mem.at 35-39; Defs.' Reply at 25-26."

<u>Plaintiffs' Response</u>:

        The Report correctly concluded that Plaintiffs have stated a claim for common law fraud

for the reasons stated therein.  See Report at 55.

<u>Defendants' Objection</u>:

25.    "Defendants object to the Report's failure to address the alternate bases for dismissal
        raised in defendants' motion to dismiss the Coordinated Complaint's claims under the
        consumer fraud statutes of every state, Puerto Rico, and the District of Columbia, as well
        as its claim under the Pennsylvania Insurance Fraud Statute.  Report at 30-56, 57 n.26.
        The bases were raised in defendants' briefing of the motion to dismiss.  Defs. Mem. at 7
        n.3, 11, 25-27, 39 n.20; Defs.' Reply at 25-26."

<u>Plaintiffs' Response</u>:

        Coordinated Plaintiffs respectfully direct the Court to Section III of their Objections to

the Report (at 10-16) for a discussion of how Coordinated Plaintiffs have sufficiently alleged

claims under the California Unfair Competition Law, the Pennsylvania Insurance Fraud Statute

and the consumer protection statutes of all states, Puerto Rico and the District of Columbia.  <u>See</u>

<u>also</u> Pl. Dism. Br. at 24-28; Pl. Surreply Br. at 16-21.

<u>Defendants' Objection</u>:

26.    "Defendants reserve the right to assert additional objections based on plaintiffs'
        anticipated objections to the Report."

Plaintiffs' Response:

This reservation of rights to assert additional objections is inappropriate.  As the Report notes (at 58 n.27), any objections not asserted in a timely fashion are waived.


Dated: April 10, 2006                          Respectfully submitted,

                                               **For The Class:**


                                               **/s/ Barry Himmelstein**
                                                    Barry Himmelstein

                                               **LIEFF, CABRASER, HEIMANN &**
                                               **BERNSTEIN, LLP**
                                               Barry Himmelstein, Esq.
                                               275 Battery Street, 30th Floor
                                               San Francisco, CA  94111-3339
                                               **GREENE & HOFFMAN**
                                               Thomas Greene, Esq.
                                               125 Summer Street
                                               Boston, MA  02110

                                               **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                               Thomas M. Sobol, Esq.
                                               One Main Street, 4th Floor
                                               Cambridge, MA  02142

                                               **DUGAN & BROWNE**
                                               James Dugan, Esq.
                                               650 Poydras Street, Suite 2150
                                               New Orleans, LA  70130

                                               **BARRETT LAW OFFICE**
                                               Don Barrett, Esq.
                                               404 Court Square North
                                               P.O. Box 987
                                               Lexington, MS  39095

529540.1

**LAW OFFICES OF DANIEL BECNEL, JR.**
Daniel Becnel, Jr., Esq.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA  70084


**Co-Lead Counsel for Plaintiffs and the Class**


**For Plaintiff Aetna, Inc.:**


**/s/ Peter A. Pease**
   Peter A. Pease, Esq.  (BBO # 392880)

**BERMAN DEVALERIO PEASE**
  **TABACCO BURT & PUCILLO**
One Liberty Square
Boston, MA  02109
Telephone:  617-542-8300
Facsimile:  617-542-1194

**OF COUNSEL:**

**LOWEY DANNENBERG BEMPORAD**
  **& SELINGER, P.C.**
Richard Bemporad, Esq.
Richard W. Cohen, Esq.
Gerald Lawrence, Esq.
Peter St. Phillip Jr., Esq.
The Gateway - 11th Floor
One North Lexington Avenue
White Plains, NY  10601-1714
Telephone:  (914) 997-0500
Facsimile:   (914) 997-0035

**BERMAN DEVALERIO PEASE**
  **TABACCO BURT & PUCILLO**
Joseph J. Tabacco, Jr., Esq.
425 California Street, Suite 2025
San Francisco, CA  94104-2205
Telephone:  (415) 433-3200
Facsimile:   (415) 433-6382

**JOHN F. INNELLI, LLC**
John F. Innelli, Esq.
1818 Market Street, Suite 3620
Philadelphia, PA  19103
Telephone:  (215) 5612-1011
Facsimile:   (215) 561-0012

**For Plaintiffs Guardian Life Insurance Co. of America, Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals:**


**/s/ Thomas G. Shapiro**
    Thomas G.  Shapiro (BBO #454680)

Theodore Hess-Mahan (BBO #557109)
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA 02109
Telephone: 617-439-3939
Facsimile: 617-439-0134

**OF COUNSEL:**

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
Linda P. Nussbaum, Esq.
Kanchana Wangkeo, Esq.
Steig D. Olson, Esq.
150 East 52nd Street, 30th Floor
New York, NY  10022
Telephone:  (212) 838 7797
Facsimile:  (212) 838 7745

   **and**

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
Michael D. Hausfeld, Esq.
1100 New York Avenue, N.W
West Tower, Suite 500
Washington, DC  20005
Telephone:  (202) 408 4600
Facsimile:  (202) 408 4699

529540.1

**RAWLINGS & ASSOCIATES, PLLC**
Mark D. Fischer, Esq.
Mark Sandmann, Esq.
325 W. Main Street
Louisville, KY  40202
Telephone:  (502) 587 1279
Facsimile:  (502) 584 8580

**JOEL Z. EIGERMAN, ESQ.**
50 Congress Street, Suite 200
Boston, MA  02109
Telephone:  (617) 367-0014
Facsimile:  (617) 523-5612

529540.1