UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:  NEURONTIN MARKETING AND
        SALES PRACTICES LITIGATION

:
:
:
:

MDL Docket No. 1629

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

:
:
:
:

Master File No. 04-10981

Judge Patti B. Saris

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HARDEN MANUFACTURING CORPORATION;
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,
dba BLUECROSS/BLUESHIELD OF LOUISIANA;
INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL
52 HEALTH BENEFITS TRUST; GERALD SMITH; and
LORRAINE KOPA, on behalf of themselves and all others
similarly situated, v. PFIZER INC. and WARNER-LAMBERT
COMPANY.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Magistrate Judge Leo T.
Sorokin

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC. and

AETNA, INC. v. PFIZER INC.

:
:
:
:
:
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW OF PFIZER INC. AND
WARNER-LAMBERT COMPANY IN OPPOSITION TO
PLAINTIFFS' JOINT OBJECTIONS AND COORDINATED
PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION OF
<u>MAGISTRATE JUDGE LEO T. SOROKIN DATED JANUARY 31, 2006</u>**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................iii

PRELIMINARY STATEMENT............................................................................... 1

ARGUMENT ........................................................................................................... 2

I.     PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED BECAUSE
       PLAINTIFFS DO NOT ALLEGE AN ASSOCIATION-IN-FACT.................................. 2

       A.     Plaintiffs Fail To Allege a Common Fraudulent Purpose
              Among the Alleged Participants of the Association-in-Fact.................................. 3

       B.     Plaintiffs' Hub-and-Spoke Structure Cannot Support Their RICO Claims ........... 9

       C.     Plaintiffs Fail To Allege Any of the Other Factors
              for Establishing an Association-in-Fact ................................................. 11

       D.     Plaintiffs Fail To Allege a RICO Conspiracy ....................................... 12

II.    PLAINTIFFS' CLAIMS PREDICATED ON VIOLATIONS OF
       THE FDCA AND FDA REGULATIONS ARE PREEMPTED ...................................... 12

III.   THE COORDINATED PLAINTIFFS DO NOT ALLEGE
       A COGNIZABLE INJURY ............................................................................. 16

       A.     The Coordinated Plaintiffs' Claim Under California's Unfair
              Competition Law Should Be Dismissed for Failure To Allege
              Loss ............................................................................................... 20

       B.     The Coordinated Plaintiffs' Claim Under the Remaining Consumer
              Fraud Statutes Should Also Be Dismissed for Failure To Allege Loss ................ 24

       C.     The Coordinated Plaintiffs' Pennsylvania Insurance Fraud Claim
              Should Be Dismissed for Failure To Allege Loss................................................ 25

IV.    PLAINTIFFS' FRAUD CLAIMS SHOULD BE DISMISSED ...................................... 27

       A.     Allegations Based on Verbatim Reports Should Be Dismissed............................ 28

       B.     Fraud Claims Regarding Restless Leg Syndrome Should Be Dismissed ............. 29

i

**Page**

V.    PLAINTIFFS' UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED........... 29

VI.   PLAINTIFFS' MISCELLANEOUS ARGUMENTS SHOULD BE REJECTED ........... 30

    A.    The Class Plaintiffs' New Jersey Consumer Fraud Act Claim
        Should Be Dismissed Now....................................................................................... 30

    B.    The Report Properly Set Forth the Standard for Proof of Causation .................... 30

CONCLUSION ....................................................................................................................... 31

# TABLE OF AUTHORITIES

**Page**

## Cases

800537 Ontario Inc. v. Auto Enters., Inc., 113 F. Supp. 2d 1116
(E.D. Mich. 2000) ........................................................................................................ 9

AIU Ins. Co. v. Olmecs Med. Supply, Inc. CV-04-2934,
2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. Feb. 22, 2005) ............................................ 10

Allen v. Wright, 468 U.S. 737 (1984) .......................................................................... 18

Andrx Pharm., Inc. v. Biovail Corp., 175 F. Supp. 2d 1362 (S.D. Fla. 2001),
vacated on other grounds by 276 F.3d 1368 (Fed. Cir. 2002) ....................................... 13

Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic,
65 F.3d 1406 (7th Cir. 1995) ....................................................................................... 20

Blue Cross of Cal. v. SmithKline Beecham Labs., Inc., 62 F. Supp. 2d 544
(D. Conn. 1998) .......................................................................................................... 7

In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig., 288 F.3d 1012
(7th Cir. 2002) ........................................................................................................... 17

Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341 (2001) .................................... 13

Chamberlan v. Ford Motor Co., 369 F. Supp. 2d 1138 (N.D. Cal. 2005) ..................... 22

Comm. on Children's Television, Inc. v. General Foods Corp.,
673 P. 2d 660 (Cal. 1983) ........................................................................................... 24

Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.,
No. 04-0074-CV-W, 2005 WL 1279046 (W.D. Mo. May 25, 2005) ............................ 8

Day v. AT&T Corp., 74 Cal. Rptr. 2d 55 (Ct. App. 1998) ........................................... 23

Dep't of Commerce v. U.S. House of Reps., 525 U.S. 316 (1999) ............................... 18

Desiano v. Warner-Lambert Co., 326 F.3d 339 (2d Cir. 2003) .............................. 19, 25

Envtl. Prot. Info. Ctr. v. U.S. Fish & Wildlife Serv., No. C 04-4647,
2005 U.S. Dist. LEXIS 7200 (N.D. Cal. Apr. 22, 2005) .............................................. 22

iii

**Page**

Eve v. Sandoz Pharm. Corp., No. IP 98-1429-C-Y/ S,
2002 U.S. Dist. LEXIS 23965 (S.D. Ind. Jan. 28, 2002) ............................................................. 16

Fink v. Ricoh Corp., 839 A.2d 942 (N.J. Super. Ct. 2003) ........................................................ 30

Flynn v. Am. Home Prods. Corp., 627 N.W.2d 342 (Minn. Ct. App. 2001) ................................ 13

Gerlinger v. Amazon.com, Inc., No. C 02-05238,
2005 U.S. Dist. LEXIS 26019 (N.D. Cal. Oct. 31, 2005) ............................................................ 21

Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal
Cruelty USA, Inc., 29 Cal. Rptr. 3d 521 (Ct. App. 2005) .......................................................... 22

Int'l Union of Operating Eng'rs Local #68 Welfare Fund v. Merck & Co.,
No. A-0450-05T1, 2006 N.J. Super. LEXIS 95 (Sup. Ct. App. Div. Mar. 31, 2006) ................... 20

Kemp v. Medtronic, Inc., 231 F.3d 216 (6th Cir. 2000) ............................................................ 15

Kobar v. Novartis Corp., 378 F. Supp. 2d 1166 (D. Ariz. 2005) ........................................... 13, 16

Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937 (Cal. 2003) ...................................... 22

Leung v. Law, 387 F. Supp. 2d 105 (E.D.N.Y. 2005) ................................................................ 4

Libertad v. Welch, 53 F.3d 428 (1st Cir. 1995) ........................................................................ 8

Liberty Mut. Ins. Co. v. Diamante, 138 F. Supp. 2d 47 (D. Mass. 2001) ...................................... 8

In re Lorazepam & Clorazepate Antitrust Litig.,
295 F. Supp. 2d 30 (D.D.C. 2003) ........................................................................................... 20

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)............................................................. 18, 24

In re Lupron Mktg. & Sales Practices Litig., 295 F. Supp. 2d 148
(D. Mass. 2003)..................................................................................................................... passim

In re Lupron Mktg. & Sales Practices Litig., No. MDL 1430,
01-CV-10861, 2004 U.S. Dist. LEXIS 18512 (D. Mass. Sept. 16, 2004) ................................... 26

Madrid v. Perot Sys. Corp., 30 Cal. Rptr. 3d 210 (Ct. App. 2005)............................................. 22

Moll v. U.S. Life Title Ins. Co. of N.Y., 654 F. Supp. 1012
(S.D.N.Y. 1987) ...................................................................................................................... 7

**Page**

In re Pharm. Indus. Avg. Wholesale Price Litig., 263 F. Supp. 2d 172
(D. Mass. 2003) ..................................................................................................... 3, 10, 11

In re Pharm. Indus. Avg. Wholesale Price Litig., 307 F. Supp. 2d 196
(D. Mass 2004) ............................................................................................................ passim

In re Pharm. Indus. Avg. Wholesale Price Litig., 339 F. Supp. 2d 165
(D. Mass. 2004) ....................................................................................................................... 25

ReSource N.E. Inc. of Long Island v. Town of Babylon,
80 F. Supp. 2d 52 (E.D.N.Y. 2000) ............................................................................... 8

Reynolds v. Condon, 908 F. Supp. 1494 (N.D. Iowa 1995) ...................................... 8, 9

In re Rezulin Litig., Judicial Council Coordination Proceeding
No. 4122 (Cal. Sup. Ct. filed Apr. 29, 2003) ........................................................ 23, 24

In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61 (S.D.N.Y. 2002) ........................ 18, 30

River City Mkts., Inc. v. Fleming Foods W., Inc., 960 F.2d 1458
(9th Cir. 1992) ............................................................................................................... 8, 9

Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315 (5th Cir. 2002) ...................................... 18

Rodriguez v. Banco Central, 777 F. Supp. 1043 (D.P.R. 1991),
aff'd on other grounds, 990 F. 2d 7 (1st Cir. 1993) .......................................................... 8

Sandberg v. McDonald, 248 U.S. 185 (1918) .............................................................. 25

Schwartz v. Visa Int'l Serv. Ass'n, 34 Cal. Rptr. 3d 449 (Ct. App. 2005),
review pending, depublished by 37 Cal. Rptr. 3d 353 (2005) ...................................... 22

Smith v. SBC Comms., Inc., 839 A.2d 850 (N.J. 2004) ............................................... 23

Talbott v. C.R. Bard, Inc., 63 F.3d 25 (1st Cir. 1995) ................................................. 13

Trew v. Volvo Cars of N. Am., LLC, No. CIV-S-05-1379,
2006 U.S. Dist. LEXIS 4890 (E.D. Cal. Feb. 7, 2006) .............................................. 21

United States v. Caputo, 288 F. Supp. 2d 912 (N.D. Ill. 2003) ................................ 15

United States v. Cianci, 378 F.3d 71 (1st Cir. 2004) ............................................... 6, 7

**Page**

United States v. London, 66 F.3d 1227 (1st Cir. 1995) ................................................... 7

United States ex rel. Franklin v. Parke-Davis, 147 F. Supp. 2d 39
(D. Mass. 2001) ............................................................................................................. 27

United States ex rel. Franklin v. Parke-Davis, Civ. A. No. 96-11651,
2003 U.S. Dist. LEXIS 15754 (D. Mass. Aug. 22, 2003) ............................................. 27

Valley Forge Christian Coll. v. Ams. United for Separation
of Church & State, Inc., 454 U.S. 464 (1982) .............................................................. 18

VNA Plus, Inc. v. Apria Healthcare Group, Inc., 29 F. Supp. 2d 1253
(D. Kan. 1998) ................................................................................................................. 8

VonGrabe v. Sprint PCS, 312 F. Supp. 2d 1313 (S.D. Cal. 2004) ................................ 21

In re Warfarin Sodium Antitrust Litig., 391 F.3d 516 (3d Cir. 2004) ........................... 20

Washington Legal Found. v. Friedman, 13 F. Supp. 2d 51
(D.D.C. 1998), vacated on other grounds by Washington Legal Found.
v. Henney, 202 F.3d 331 (D.C. Cir. 2000) ..................................................................... 15

Web Press Servs. Corp. v. New London Motors, Inc., 525 A.2d 57
(Conn. 1987) ................................................................................................................... 25

Weil v. Long Island Sav. Bank FSB, 77 F. Supp. 2d 313
(E.D.N.Y. 1999) ................................................................................................................ 8

W. States Med. Ctr. v. Shalala, 69 F. Supp. 2d 1288 (D. Nev. 1999),
aff'd in part and rev'd in part by 238 F.3d 1090 (9th Cir. 2001), aff'd sub nom.
Thompson v. W. States Med. Ctr., 535 U.S. 357 (2002) ............................................... 15

Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003) .................... 18, 24

Young v. Cmty. Nutrition Inst., 476 U.S. 974 (1986) .................................................... 13

**Page**

### Statutes & Rules

18 Pa. Cons. Stat. § 4117(a)(2) (2006)................................................................. 25, 26, 27

18 U.S.C. § 1962(d) ...................................................................................................... 12

42 U.S.C. § 1396b(i)(10)............................................................................................... 27

42 U.S.C. § 1396r-8 ...................................................................................................... 27

71 Fed. Reg. 3922, 3933-36 (Jan. 24, 2006) (to be codified at 21 C.F.R. pt. 201)............... 13, 16

2004 Cal. Legis. Serv. Prop. 64 [Approved by voters Nov. 2, 2004] ..................... 21, 22

Fed. R. Civ. P. 9(b) .................................................................................................. 1, 28

Fed. R. Civ. P. 12(b)(6)................................................................................................... 1

Organized Crime Control Act of 1970, Pub. L. 91-452, 84 Stat. 922, 923 (1970) ......................... 9

### Other Authorities

36 Am. Jur. <u>Proof of Facts</u> 3d § 221 (2005)............................................................... 24

<u>Wikipedia</u>, <u>http://en.wikipedia.org/</u>...................................................................... 16

Defendants Pfizer Inc. and Warner-Lambert Company respectfully submit this memorandum of law in opposition to plaintiffs' joint objections ("Pls.' Objs.") and the Coordinated Plaintiffs' separate objections ("Coor. Pls.' Objs.") to Magistrate Judge Leo T. Sorokin's Report and Recommendation dated January 31, 2006 (the "Report"), which made recommendations regarding defendants' motions to dismiss the Amended Class Action Complaint (the "Class Complaint") and the First Coordinated Amended Complaint (the "Coordinated Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## PRELIMINARY STATEMENT

Magistrate Judge Sorokin properly recommended dismissal of the vast majority of plaintiffs' claims. Although plaintiffs only object to some of the Report's recommendations adverse to them, none of these objections should be sustained. Indeed, as defendants previously explained, the complaints should be dismissed in their entireties.

The Report recommended dismissal of plaintiffs' RICO claims because the complaints fail to allege an association-in-fact. Plaintiffs object to this recommendation, arguing that they have alleged a sufficient common purpose. As the Report concluded, however, plaintiffs' RICO claims should be dismissed because plaintiffs have not adequately alleged a common purpose and because plaintiffs have merely alleged a hub-and-spoke association-in-fact. Moreover, plaintiffs have not adequately alleged any of the other five factors relevant to finding an association-in-fact.

Plaintiffs' objection to the Report's recommendation regarding preemption should also be rejected. Plaintiffs do not take issue with the Report's summary of preemption law. Nor have they disputed that claims based on truthful off-label promotion of Neurontin by defendants' employees are preempted. Rather, plaintiffs attempt to characterize truthful off-label promotion by physicians as "shilling" and argue that this gives rise to a fraud claim that they say should not

1

be preempted.  This attempt to end run the Report's recommendation should not stand.  Plaintiffs have not alleged fraud by the physicians, and their claims are, therefore, preempted.

The Coordinated Plaintiffs seek to overcome their failure to allege loss.  The Report correctly concluded that these plaintiffs failed to allege loss because they did not allege that Neurontin was ineffective for their insureds.  The Coordinated Plaintiffs employ various tactics to avoid pleading this basic element and necessary standing requirement.  For instance, they attempt to recast this as an overpayment case without alleging that there is a cheaper alternative to Neurontin that they would have purchased instead of Neurontin and that would have been effective.  The Coordinated Plaintiffs also erroneously contend that a cognizable injury need not be alleged under California's Unfair Competition Law, despite the fact that loss must be alleged pursuant to Article III of the U.S. Constitution, a recent California statutory amendment, and the traditional elements of this claim.

Finally, all plaintiffs object to only two of the Report's many reasons for dismissing the majority of their fraud claims.  Neither of these objections has merit.  Plaintiffs' first objection (regarding verbatim reports) should be rejected because the complaints have not made allegations regarding such reports with particularity.  The second objection (regarding restless leg syndrome) should be rejected because plaintiffs' allegations regarding that syndrome do not support a fraud claim.

## ARGUMENT

## I.   PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT ALLEGE AN ASSOCIATION-IN-FACT

Magistrate Judge Sorokin recommended dismissal of plaintiffs' RICO claims due to, *inter alia*, a failure to allege an association-in-fact.  Report at 24-26 (finding a failure to plead common purpose and systematic linkages and noting that plaintiffs use the disfavored "hub-and-spoke" theory).  Plaintiffs object to this recommendation on two primary bases.  They argue that

the complaints adequately allege the common purpose of the purported enterprise.  Pls.' Objs. at

6-13.  Plaintiffs also contend that they do not allege a "hub-and-spoke" association-in-fact.  Id. at

14-16.  Because both of these objections are incorrect, plaintiffs' RICO claims should be

dismissed.  Moreover, even if plaintiffs are found to have alleged common purpose adequately,

dismissal is appropriate because they have failed to plead the other factors relating to an

association-in-fact.

### A.    Plaintiffs Fail To Allege a Common Fraudulent Purpose Among the Alleged Participants of the Association-in-Fact

As the Report found, plaintiffs' RICO claims should be dismissed because plaintiffs have

not alleged a common fraudulent purpose.  Report at 24, 56-57.  Plaintiffs contest this issue,

claiming that they have asserted a sufficient common purpose, and complain that the common

purpose prong of the association-in-fact analysis does not require that the common purpose be

fraudulent.  Pls.' Objs. at 6-13.  Magistrate Judge Sorokin, however, correctly applied the

association-in-fact test utilized by courts in this jurisdiction.

The requirements for pleading an association-in-fact have been carefully considered in

the First Circuit.  In a series of decisions in the AWP litigation, this Court synthesized those First

Circuit opinions and explained the factors that are examined when determining whether an

association-in-fact has been pled.  In re Pharm. Indus. Avg. Wholesale Price Litig., 263 F. Supp.

2d 172, 181 (D. Mass. 2003) (AWP I); In re Pharm. Indus. Avg. Wholesale Price Litig., 307 F.

Supp. 2d 196, 203-04 (D. Mass 2004) (AWP II).  Foremost among those factors is whether the

alleged participants in the association-in-fact had a common purpose.  307 F. Supp. 2d at 204.[1]

While discussing this factor, this Court made clear that the common purpose of an association-

---

[1] While plaintiffs have correctly pointed out that none of these factors is dispositive, some are clearly more important than others.  See AWP II, 307 F. Supp. 2d at 204 (noting that "an enterprise *must* be 'a group of persons associated together for a common purpose of engaging in a course of conduct'" (emphasis added)).

in-fact must be fraudulent or otherwise illicit. Id. at 204-05 (analyzing whether the purported participants in the alleged association-in-fact "knew of the fraudulent nature" of their actions). While a separate legal entity corrupted by RICO defendants may be a wholly innocent party, an association-in-fact must be motivated by an improper objective. Id.; see In re Lupron Mktg. & Sales Practices Litig., 295 F. Supp. 2d 148, 173-74 (D. Mass. 2003). The reason behind this rule is sound. Without a prohibition against alleging innocent associations-in-fact, plaintiffs can easily turn garden variety fraud cases into RICO claims by alleging two instances of predicate acts and building an association around them *ex post facto*. Cf. Leung v. Law, 387 F. Supp. 2d 105, 112-13 (E.D.N.Y. 2005).

The facts alleged by plaintiffs do not satisfy the common purpose test. Plaintiffs allege that hundreds (maybe thousands) of people scattered across the country, including employees of various medical education vendors and innumerable physicians, participated in an association-in-fact. See, e.g., ACC ¶¶ 47, 104; FCAC ¶¶ 95. Plaintiffs have not pled that these individuals coordinated their activities with one another or that they were even aware of one another's existence. Further, plaintiffs have not alleged that these purported participants had a common fraudulent purpose.

After identifying the same pleading failure, the Lupron court dismissed the RICO claims in that case. 295 F. Supp. 2d at 173-74 (holding that "there are no allegations (and it is difficult to see how there could be) that the thousands of doctors who benefited from discounted purchases or free samples of [the drug] were associated together in any meaningful sense, or were even aware of one another's existence as participants in a scheme to defraud"). Plaintiffs attempt to distinguish Lupron by arguing that the structures of the association-in-fact pled here and in Lupron differ. Pls.' Objs. at 14. This attempt fails. In Lupron, the physician enterprise was alleged to consist of TAP (and its owners) and all medical providers who dispensed Lupron

to patients. 295 F. Supp. 2d at 173. As alleged, that association-in-fact was formed by the pharmaceutical manufacturer and the physicians who sought to make a profit by administering the drug and collecting the inflated rate of reimbursement for it. Id. at 174. The physician enterprise in Lupron is very similar to the association-in-fact alleged here by plaintiffs, consisting of Warner-Lambert and Pfizer along with many unrelated participants. The Lupron court properly found this structure insufficient to support a RICO association-in-fact. Id.

Moreover, plaintiffs have only identified two potential common purposes that the purported participants of the alleged associations-in-fact might have had. Neither of these suffices. First, plaintiffs have alleged that the physician, vendor, and defendant participants sought to make money selling Neurontin. ACC ¶ 47; FCAC ¶ 93. As this Court explained in AWP II, the motive of "reaping a profit," shared by all business people, is not sufficient to be the common purpose of a RICO association-in-fact. 307 F. Supp. 2d at 204-05; see In re Lupron 295 F. Supp. 2d at 174. The second purpose that plaintiffs discuss is the fraudulent, illegal promotion of Neurontin. ACC ¶ 47; FCAC ¶ 38. As defendants have explained previously and as the Report concluded, plaintiffs have not alleged that the purported physician and vendor participants were aware of the alleged improper activity at issue. Defs.' Reply at 2, 16; Report at 16. Thus, this motive does not suffice because it was not common to all of the participants. As the Lupron court held: "Common purpose does not mean commonality of motive, it means coordinated activity in pursuit of a common objective." 295 F. Supp. 2d at 173. Plaintiffs have alleged no facts to suggest that physicians and other purported participants coordinated their activities in pursuit of the common objective of improperly promoting Neurontin for off-label uses. The complaints, in fact, fail to allege any motive at all with respect to the physicians, with the possible exception of seeking to reap a profit.

Recognizing that they have not alleged and cannot allege that all of the purported participants shared a common purpose or even knew of the allegedly fraudulent activity, plaintiffs argue that they need not allege a common fraudulent purpose.  Confronted with this Court's clear precedent in <u>AWP II</u>, plaintiffs contend that a First Circuit decision overrules this precedent, and rely on decisions from outside this district.  These arguments, however, should be rejected.  The First Circuit decision cited, <u>United States v. Cianci</u>, 378 F.3d 71 (1st Cir. 2004), does not stand for the proposition for which plaintiffs cite it and the other authority upon which they rely is distinguishable.

Plaintiffs cite <u>Cianci</u> for the proposition that participants in a RICO association-in-fact need not share the criminal intent of the defendants, implying that they need not have a common illicit purpose.  Pls.' Objs. at 11.  They go so far as to argue that <u>Cianci</u> overturned or modified the decision of this Court in <u>AWP II</u>.  <u>Id.</u> at 7 n.3.  <u>Cianci</u>, however, did not limit, modify, or overturn any part of <u>AWP II</u> or Judge Stearns' decision in <u>Lupron</u>, and plaintiffs' reliance on <u>Cianci</u> could hardly be more misplaced.  <u>Cianci</u> involved a criminal RICO charge against individuals who controlled a municipal government and used it to advance their common criminal purpose.  The <u>Cianci</u> court recognized that the participants involved in the alleged association-in-fact shared the same criminal purpose.  While discussing this shared purpose, the court repeatedly referred to the fact that it was illicit, illegal, corrupt, or criminal.  <u>See id.</u> at 83, 84, 85, 87, 88.

Thus, <u>Cianci</u> does not stand for the proposition that the individuals and entities comprising an association-in-fact need only share a completely innocent purpose, such as making a profit.  <u>Id.</u> at 83.  Instead, it stands for the somewhat obvious proposition that corporations, which cannot possess any intent, are animated by the intent of those who control them, who in turn must still possess the requisite illicit intent in order for the corporation to be a

participant in a RICO association-in-fact.  Id.  Accordingly, this decision has no impact on the

holdings of AWP II and Lupron that the participants of an association-in-fact must share a

common illicit purpose.  378 F. 3d at 83.  As the First Circuit explained:

> Requiring the government to prove that all members named in the enterprise
> shared *a common purpose of illegality* did not compel the government to show
> that the City itself had the mens rea to seek bribes and to extort.  The Ninth and
> Sixth Circuits articulated what in some sense is the obvious:  that a corporate or
> municipal entity does not have a mind of its own for purposes of RICO. . . .
> Unlawful common purpose is imputed to the City by way of the individual
> defendants' control, influence, and manipulation of the City for their illicit ends.

Id. at 84 (emphasis added and citations omitted).

Plaintiffs' objections contain numerous other attempts to evade the application of the

common purpose test that has been clearly set forth by two courts in this jurisdiction (including

this Court).  Plaintiffs argue that in AWP II this Court relied in error on Blue Cross of California

v. SmithKline Beecham Laboratories, Inc., 62 F. Supp. 2d 544 (D. Conn. 1998).  Pls.' Objs. at 11

n.7.  It is clear, however, from the text of the Blue Cross decision that it fully supports the

reasoning in AWP II.  The Blue Cross court recounted the Second Circuit's standard for

determining whether there is a common purpose:  "[F]or an association of individuals to

constitute an 'enterprise' for purposes of RICO, the individuals must share a *common purpose to*

*engage in a particular fraudulent course of conduct* and work together to achieve such

purposes."  62 F. Supp. 2d at 551 (emphasis added) (quoting Moll v. U.S. Life Title Ins. Co. of

N.Y., 654 F. Supp. 1012, 1031 (S.D.N.Y. 1987).  Thus, Blue Cross states explicitly that the

members of an association-in-fact must share a common fraudulent purpose.[2]

---

[2]  Plaintiffs also argue that this Court in AWP II cited United States v. London, 66 F.3d 1227 (1st Cir.
1995), incorrectly.  As the Court may recall, the AWP II decision cited London for the simple proposition that an
association-in-fact must have a common purpose.  307 F. Supp. 2d at 204.  The London court ruled that the
members of an association-in-fact (in that case, a money laundering ring) needed to have a common purpose, 66
F.3d at 1244, exactly the proposition for which it was cited.

Plaintiffs cite several additional cases which do not support their argument and do not apply to the instant case:

- For instance, <u>Liberty Mutual Insurance Co. v. Diamante</u>, 138 F. Supp. 2d 47, 61 (D. Mass. 2001) and <u>Reynolds v. Condon</u>, 908 F. Supp. 1494 (N.D. Iowa 1995), are not on point because the RICO enterprises alleged in these cases were legal entities, not associations-in-fact, so these cases do not address the standard for finding an association-in-fact. <u>See, e.g.</u>, 908 F. Supp. at 1510 ("The RICO enterprise, *at least when identified as a legal entity*, need not, however, have as its shared or common purpose the illegal scheme perpetrated against the victim, although, in some circumstances, that may be the case." (emphasis added)).

- <u>Libertad v. Welch</u> also does not assist plaintiffs because the First Circuit found that the alleged participants used both legal and illegal means to achieve their goals and never found that an innocent purpose alone is sufficient. 53 F.3d 428, 443 (1st Cir. 1995).

- <u>ReSource N.E. Inc. of Long Island v. Town of Babylon</u> and <u>Weil v. Long Island Savings Bank FSB</u> do not support plaintiffs' point because all of the participants in the associations-in-fact at issue were alleged to have knowingly committed illegal acts to advance their common purpose. 80 F. Supp. 2d 52, 62 (E.D.N.Y. 2000); 77 F. Supp. 2d 313, 316 (E.D.N.Y. 1999).

- <u>VNA Plus, Inc. v. Apria Healthcare Group, Inc.</u>, 29 F. Supp. 2d 1253, 1259 (D. Kan. 1998), a Kansas district court opinion, states the extremely broad principle that "[v]irtually every business contract can be called an 'association in fact.'" <u>VNA</u> relies upon <u>River City Markets, Inc. v. Fleming Foods West, Inc.</u>, 960 F.2d 1458, 1462 (9th Cir. 1992), but quotes it incompletely. <u>River City Markets</u> set forth the principle quoted in <u>VNA</u> but qualified it by stating: "To constitute a *proscribed* RICO enterprise the associates must participate, directly or indirectly 'in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" 960 F.2d at 1462-63 (emphasis added). Thus, <u>River City Markets</u> required even associations-in-fact that are business contracts to have a common fraudulent or illegal purpose.

Plaintiffs cite only one case in this Circuit which states that the common purpose for an association-in-fact can be an innocent one. Pls.' Objs. at 9 (citing <u>Rodriguez v. Banco Central</u>, 777 F. Supp. 1043, 1055 (D.P.R. 1991), <u>aff'd on other grounds</u>, 990 F.2d 7 (1st Cir. 1993)). While <u>Rodriguez</u> does state this proposition, it erred in failing to distinguish between RICO enterprises that are legal entities and those that are associations-in-fact. Many courts, including this one, have recognized that the common purpose required for legal entities and associations-

in-fact is different.  See, e.g., In re Lupron, 295 F. Supp. 2d at 173-74; AWP II, 307 F. Supp. 2d

at 204-05; Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., No. 04-0074-CV-W, 2005 WL

1279046, at *1-2 (W.D. Mo. May 25, 2005); 800537 Ontario Inc. v. Auto Enters., Inc., 113 F.

Supp. 2d 1116, 1123 (E.D. Mich. 2000); Reynolds, 908 F. Supp. at 1510; River City Markets,

960 F.2d at 1462-63.  These courts have recognized that a legal entity need not be alleged to

have an illegal purpose.  Indeed, one of the purposes of the RICO legislation was to address

illicit actions by those who have corrupted legitimate organizations.  Organized Crime Control

Act of 1970, Pub. L. 91-452, 84 Stat. 922, 923 (1970).  With associations-in-fact, however, the

common purpose must be illegal or fraudulent.  See, e.g., In re Lupron, 295 F. Supp. 2d at 173-

74; AWP II, 307 F. Supp. 2d at 204-05; Ontario, 113 F. Supp. 2d at 1123; Craig, 2005 WL

1279046, at *2.

> **B.**    **Plaintiffs' Hub-and-Spoke Structure Cannot Support**
> **Their RICO Claims**

Plaintiffs' RICO claims should also be dismissed because plaintiffs' associations-in-fact

employ a "hub-and-spoke" structure.  The Report concluded that this approach failed as a matter

of law.  Report at 25.  Plaintiffs object, arguing that they have alleged not only a hub-and-spoke

conspiracy, but also two rims to connect the spokes.  Pls.' Objs. at 14-16.  Analysis of their

complaints does not support this argument.

Plaintiffs allege an association-in-fact among defendants, various medical education

vendors, and numerous physicians.  As the Report noted, "Plaintiffs have described a scenario

whereby [Defendants] at the center, deal[t] independently with each medical marketing firm and

physician participant as a 'spoke.'"  Report at 25.  In doing so, plaintiffs have failed to allege

connections among the physicians and vendors sufficient to form a "rim" to connect all of the

various spokes.  This type of hub-and-spoke approach is disfavored because participants in the

9

same association-in-fact do not know of one another's existence or activities.  See AWP I, 263 F. Supp. 2d at 183; In re Lupron, 295 F. Supp. 2d at 174 n.29.

Plaintiffs cite AIU Insurance Co. v. Olmecs Medical Supply, Inc. in support of their claim that vague references to coordination among the alleged participants constitute the necessary rims to connect the various spokes.  CV-04-2934, 2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. Feb. 22, 2005).  Plaintiffs' reliance on AIU Insurance, which involved fraudulent medical claims made for unnecessary procedures, is entirely misplaced.  Id. at *22-23.  As the court in that case explicitly stated, the physicians alleged to be part of the association-in-fact worked at the same clinic, saw the same patients, and were aware of the nature of the enterprise and that it extended beyond their role in it.  Id.  Unlike the Lupron physicians or the physicians in this case, there were clear connections among the physicians in AIU Insurance that constituted a rim connecting the spokes of the purported association.

In an attempt to cure this defect, plaintiffs now argue, with absolutely no corresponding allegation of fact, that they have pled two different rims to connect the various spokes.  Plaintiffs baldly claim that there was "communication and coordination" among the physicians and the medical education companies.  Pls.' Objs. at 14-15.  For instance, plaintiffs claim that some of the physicians gave the same presentation at different events.  Id. at 15.  This, however, does nothing to address the simple fact that plaintiffs have not linked the physician and vendor participants to one another.  There are no allegations that these disparate individuals knew one another, or even vaguely knew that they were part of a larger group, working toward a common goal.  There are no facts alleged to support these newfound assertions, and they cannot cure the

fatal defects in plaintiffs' complaints.  Plaintiffs' alleged enterprise remains a large group of

individuals and entities, unaware of one another, having no common purpose.[3]

### C.     Plaintiffs Fail To Allege Any of the Other Factors for Establishing an Association-in-Fact

Not only do plaintiffs fail to plead a common purpose, but they also fail to allege any of

the remaining factors in the RICO association-in-fact analysis.  In their complaints, plaintiffs fail

to allege that the participants in the alleged association-in-fact had a common communication

system or systematic linkages (such as a shared leadership structure), held meetings where

important discussions took place, or conducted common training or instruction.  See AWP I, 263

F. Supp. 2d at 182.  While plaintiffs correctly state that no single one of these factors discussed

in AWP is dispositive, they cannot rely upon this fact to save their RICO claims.  Plaintiffs have

not adequately alleged any of the six factors.  As the Report indicated, they have not pled

systematic linkages among defendants and the other alleged participants.  Report at 25-26.  They

have not pled that there were meetings among these various participants to discuss important

issues.  And they have not attempted to plead that they conducted common training or

instruction.  Under even the most relaxed reading of the standard and the complaints, plaintiffs

have utterly failed to allege an association-in-fact.

As a last-ditch effort, plaintiffs claim that the existence of the RICO enterprise is a

question of fact and must be left to the trier of fact.  Pls.' Objs. at 16 n.10.  It is true that

questions of fact must be left to the trier of facts, *where the facts giving rise to a claim have been*

*properly alleged.*  Where plaintiffs have failed to meet their pleading burden, however, RICO

---

[3] Plaintiffs assert that they can correct this error by amending their complaints to include allegations regarding an additional vendor that purportedly participated in the alleged publication strategy.  Pls.' Objs. at 17 n.11.  Plaintiffs apparently misunderstand the nature of the hub-and-spoke problem.  Even if plaintiffs could link one vendor to defendants, they still cannot overcome the fact that there are no allegations that the vendors and the physicians were even aware of one another.

claims must be dismissed.  See, e.g., In re Lupron, 295 F. Supp. 2d at 174; AWP II, 307 F. Supp. 2d at 205.

### D.    Plaintiffs Fail To Allege a RICO Conspiracy

For the reasons stated above and as the Report recommended, plaintiffs' claims for violation of 18 U.S.C. § 1962(d), alleging a RICO conspiracy, should be dismissed because plaintiffs have not adequately alleged a RICO enterprise.  Report at 29.  In addition, these claims fail because plaintiffs have not alleged any predicate acts with sufficient particularity.  Report at 27-29.[4]

## II.    PLAINTIFFS' CLAIMS PREDICATED ON VIOLATIONS OF THE FDCA AND FDA REGULATIONS ARE PREEMPTED

The Report correctly determined that plaintiffs' claims based on off-label marketing are predicated solely on violations of FDA regulations and, therefore, are preempted.  Report at 30-35.  Plaintiffs do not dispute the Report's summary of the relevant legal principles underlying the magistrate judge's recommendation.  Pls.' Objs. at 18-20.  Instead, they contend for the first time that some of their allegations are actionable independent of FDA regulations because they say that statements made by physicians at the behest of the company amount to "shilling," a form of fraud according to plaintiffs.  Id. at 19-20.  Because these allegations, like all of their claims based on the structure of the off-label marketing program, "seek to enforce the FDCA and its accompanying regulations," they are preempted.  Report at 33.

As defendants have previously demonstrated, claims that are based on FDA regulations interfere with the statutory framework that Congress established when it passed the FDCA, and thereby represent an unconstitutional interference with federal law.  Defs.' Mem. at 31-35; Defs.'

---

[4] Although the Report noted that plaintiffs could be given leave for further discovery in order to cure the deficiencies in their pleading of predicate acts, Report at 28-29, this Court should deny such additional discovery because plaintiffs had access to the extensive discovery conducted in the Franklin case before filing their amended complaints.

Reply at 33-34.  In <u>Buckman Co. v. Plaintiffs' Legal Committee</u>, the Supreme Court ruled that

allowing private litigants to base state law claims on violations of FDA regulations would disrupt

the careful balance of competing interests that Congress sought to strike in crafting this

regulatory regime.  531 U.S. 341, 349-353 (2001).[5]  The conclusion reached by <u>Buckman</u>, and

followed by courts interpreting the decision, is that when FDA regulations form a critical

element in a plaintiff's claim, that claim is preempted.  <u>Id.</u> at 353; <u>see</u> <u>Kobar v. Novartis Corp.</u>,

378 F. Supp. 2d 1166, 1171 (D. Ariz. 2005) (explaining how <u>Buckman</u> has been applied by

lower courts); Report at 32-34; Defs.' Mem. at 33-34; Defs.' Reply at 30-34.[6]  The central logic

of <u>Buckman</u> has been reaffirmed, and arguably expanded, by a recent FDA pronouncement.  <u>See</u>

71 Fed. Reg. 3922, 3933-36 (Jan. 24, 2006) (to be codified at 21 C.F.R. pt. 201) (explaining that

even when private actions are not directly based on FDA regulations, but instead attempt to use

state statutes to create supplementary duties on manufacturers in an area of FDA regulation, they

interfere with the FDA's ability to safeguard the public health).  This FDA declaration is

pertinent because, as the Report recognized, the Court should accord substantial deference to the

FDA's interpretation of the scope and exercise of its authority.  Report at 34; <u>see</u> <u>Young v. Cmty.</u>

<u>Nutrition Inst.</u>, 476 U.S. 974, 981-82 (1986).

  The claims in plaintiffs' complaints are based on alleged violations of FDA regulations

concerning the marketing of prescription drugs.  Indeed, prior to the Report's recommendation,

---

[5] Even prior to <u>Buckman</u>, the First Circuit had reached the same conclusion regarding attempts to base private tort claims on FDA regulations.  <u>See</u> <u>Talbott v. C.R. Bard, Inc.</u>, 63 F.3d 25, 29-30 (1st Cir. 1995) (finding that permitting such claims "disturb[s] the balance Congress struck between the competing goals of protecting individuals . . . and spurring innovation by ensuring that . . . manufacturers are subject to uniform, nationwide standards"); Defs.' Reply at 34.

[6] Although plaintiffs suggest that <u>Buckman</u> held that only claims based solely on FDA regulations are prohibited, Pls.' Objs. at 18, this is contrary to the language of the decision, 531 U.S. at 353 (finding preemption where "the existence of these federal enactments is a *critical element* in [a plaintiff's] case" because "this sort of litigation would exert an extraneous pull on the scheme established by Congress" (emphasis added)); <u>see</u> <u>Andrx Pharm., Inc. v. Biovail Corp.</u>, 175 F. Supp. 2d 1362, 1369-70 (S.D. Fla. 2001), <u>vacated on other grounds by</u> 276 F.3d 1368 (Fed. Cir. 2002); <u>Flynn v. Am. Home Prods. Corp.</u>, 627 N.W.2d 342, 349 (Minn. Ct. App. 2001).

plaintiffs never disputed that their claims are derivative of federal regulations. In opposing defendants' motion to dismiss, plaintiffs repeatedly contended that defendants' conduct violated federal regulations. Pls.' Opp'n at 31-33 & n.41; Pls.' Surreply at 1, 25-29. Moreover, in their most recent memorandum, even as they attempt to evade the Report's preemption conclusions, plaintiffs continue to point to the fact that defendants allegedly violated federal regulations as proof that they have alleged actionable misconduct. Pls.' Objs. at 12, 20 n.13.

Irrespective of how plaintiffs attempt to spin their allegations, the complaints themselves reveal that plaintiffs' allegations concerning alleged off-label promotion are derived from federal regulations. Not only are both complaints littered with explicit and implicit references to FDA regulations, but they quite evidently attempt to impose duties upon defendants that are based on these regulations. Report at 33 ("Plaintiffs contend they may enforce these federal substantive standards through state law causes of action"); Defs.' Mem. at 34-35; Defs.' Reply at 31. For example, plaintiffs have alleged that defendants' employees and certain physicians made representations that were not "fair and balanced," a duty based entirely on FDA regulations. Report at 33 (identifying twenty-five such allegations). As a result, the Report properly concluded that plaintiffs' claims based on off-label promotion, as opposed to specific misrepresentations, are preempted.

Despite the sometimes colorful manner in which plaintiffs attempt to characterize their allegations, the Report determined that they amount to nothing more than a general assertion that defendants engaged in a "campaign to market Neurontin for off-label purposes" in contravention of federal regulations. Report at 30-31. Beyond a limited number of improperly pled misrepresentations, plaintiffs do not contend that any of the alleged off-label marketing was false, that defendants had an intent to transmit false information, or that any of the participants even believed the information to be false. Truthful statements regarding off-label uses, even if

transmitted in a way that violates FDA regulations, are not inherently misleading or fraudulent. See W. States Med. Ctr. v. Shalala, 69 F. Supp. 2d 1288, 1298-99 (D. Nev. 1999), aff'd in part and rev'd in part by 238 F.3d 1090 (9th Cir. 2001), aff'd sub nom. Thompson v. W. States Med. Ctr., 535 U.S. 357 (2002); Washington Legal Found. v. Friedman, 13 F. Supp. 2d 51, 66-67 (D.D.C. 1998), vacated on other grounds by Washington Legal Found. v. Henney, 202 F.3d 331 (D.C. Cir. 2000); United States v. Caputo, 288 F. Supp. 2d 912, 921 (N.D. Ill. 2003).

In an attempt to avoid preemption, plaintiffs try to draw a distinction between truthful off-label statements made by defendants' employees and truthful off-label statements made by physicians at defendants' direction, labeling the latter as "shilling." Pls.' Objs. at 19-20. The Report, however, considered and rejected this distinction. Report at 30-31 (concluding that plaintiffs' allegations concerning physician presenters and authors are based on FDA regulations). Plaintiffs do not allege that the physicians made any false statements. They simply argue that the physicians, rather than defendants' employees, made statements regarding off-label uses. Regardless of whether the allegation is that defendants promoted off-label uses of Neurontin through statements by their own sales representatives or through paid speakers, the claims remain based on FDA regulations. Plaintiffs try to distinguish off-label promotion by physicians by asserting that their audience has an expectation of receiving "fair and balanced" information. Pls.' Objs. at 19. Irrespective of the source of such promotion, the Court would still have to decide whether the information presented was "fair and balanced," with the accompanying risk of creating conflicting interpretations of the federal regulation. See Kemp v. Medtronic, Inc., 231 F.3d 216, 234-36 (6th Cir. 2000) (explaining the likely repercussions of permitting state tort actions based on FDA regulations); Defs.' Reply at 33-34.[7]

---

[7] Moreover, plaintiffs cite no valid legal authority for the proposition that this conduct constitutes fraud. In fact, the only source cited by plaintiffs on this point, an online encyclopedia that is based on submissions by users, (…continued)

Finally, plaintiffs rely on <u>Eve v. Sandoz Pharmaceutical Corp.</u>, No. IP 98-1429-C-Y/ S,

2002 U.S. Dist. LEXIS 23965, at *2 (S.D. Ind. Jan. 28, 2002), but this decision is inapposite.

Pls.' Objs. 20.  First, failure-to-warn cases like <u>Eve</u> are arguably based on longstanding state law,

rather than violations of FDA regulations.  Defs.' Reply at 32; <u>see</u> <u>Kobar</u>, 378 F. Supp. 2d at

1174 (explaining that in <u>Eve</u> violation of a federal statute was not an essential element of the

claim); Report at 36 (noting that <u>Eve</u> is only applicable to the extent that plaintiffs can allege

specific misrepresentations that would violate state law absent the existence of FDA regulations).

Second, the FDA recently listed <u>Eve</u> as a specific example of a case where a court's decision

could lead to "interpretations of the [FDCA] and FDA regulations that conflict with the agency's

own interpretations and frustrate the agency's implementation of its statutory mandate."  71 Fed.

Reg. at 3934.  This danger would only be exacerbated by plaintiffs' claims, which seek to create

duties on defendants that have not previously been recognized by state courts.

## III.   THE COORDINATED PLAINTIFFS DO NOT ALLEGE A COGNIZABLE INJURY

Magistrate Judge Sorokin correctly recommended dismissal of all of the Coordinated

Plaintiffs' legal claims for failure to plead a loss or injury.  Report at 21-22, 57 & n.26.  The

Report reasoned that "Plaintiffs' contention that it is sufficient to argue that they paid for a drug

that 'had not been proven effective' is without merit.  It is simply not enough to claim that

Neurontin had not been proven to be effective; rather, Plaintiffs must allege that it was

ineffective."  <u>Id.</u> at 22.  The Coordinated Plaintiffs utterly fail to allege this.  Nowhere in their

complaints do they claim that Neurontin did not work for their insureds or for any particular off-

---

(continued…)

acknowledges that many forms of so-called "shilling" are legal, and the practice normally becomes illegal only when it is employed to "put *uninformed* parties at a risk of loss."  Wikipedia, at http://en.wikipedia.org/wiki/Shill (emphasis added).  Because anyone can submit information to this online encyclopedia, which in theory could include plaintiffs, its editors admit that articles may contain "significant misinformation, unencyclopedic content, or vandalism."  <u>Id.</u>, at http://en.wikipedia.org/wiki/Wikipedia:About.

label conditions.  Id. at 21-22; see Defs.' Mem. at 14-15; Defs.' Reply at 13.  Rather, the

Coordinated Plaintiffs have taken the position that they have pled loss because they alleged that

defendants did not have clinical proof of Neurontin's effectiveness.  Pls.' Opp'n at 16; Pls.'

Surreply at 9.  As the Report makes clear, this is insufficient.

Seeking to avoid having to plead and prove actual loss, the Coordinated Plaintiffs strive

vigorously to convince the Court that something less is sufficient.  First, they attempt what

amounts to a sleight of hand, claiming that they have alleged a loss and then devoting two and a

half pages to a description of defendants' allegedly wrongful acts.  Coor. Pls.' Objs. at 3-6.

None of these alleged acts goes to whether the Coordinated Plaintiffs suffered a loss.[8]  Next, the

Coordinated Plaintiffs recount the amount of Neurontin sales and the percentage of off-label

Neurontin prescriptions in 2003.  Id. at 6.  Neither of these facts pertains to whether Neurontin

was ineffective.  Following this, the Coordinated Plaintiffs insist that their complaint does, in

fact, allege that Neurontin was ineffective for four conditions.  Id. (citing FCAC ¶¶ 107-25, 130-

32).  This is incorrect.  These paragraphs in their complaint neither allege that Neurontin was

ineffective for these conditions nor assert that it did not work for their insureds who took it for

these conditions.

Only after making these baseless arguments do the Coordinated Plaintiffs address the

issue at hand:  what must be alleged to plead a loss in these circumstances.  The requirement that

plaintiffs plead a specific loss is well established.  As the Seventh Circuit succinctly explained:

"No injury, no tort."  In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig., 288 F.3d 1012,

---

[8] For instance, plaintiffs repeat a "quote" from a Parke-Davis marketing executive.  Coor. Pls.' Objs. at 5-6.
In fact, the text that they present as a direct quote was Dr. Franklin's paraphrased recollection of a statement by a
Parke-Davis employee, which Dr. Franklin raised in the qui tam action.  Declaration of Patrick J. Murray, dated Apr.
10, 2006 ("Murray Decl."), Exs. A (Franklin Dep. 227:22-228:16), B (deposition exhibit) at 11.  This is not a
"quote" and, more to the point, does not in any way address the issue of loss.

1017 (7th Cir. 2002).[9]  In fraud cases like this, injury occurs when the drug in question –

Neurontin – does not work for the individual who took it.  See Rivera v. Wyeth-Ayerst Labs.,

283 F.3d 315, 319-21 (5th Cir. 2002); Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171,

176-78 (D.D.C. 2003); In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61, 68 (S.D.N.Y. 2002).

This is because if the drug worked, the party paying for it received the benefit of the bargain.

See Williams, 297 F. Supp. 2d at 176.

     Confronted with this controlling principle, plaintiffs try to distinguish the directly

analogous decisions upon which the Report relied.  Report at 21-22 (discussing Williams and In

re Rezulin).  Plaintiffs attempt to distinguish Williams on the ground that the case was brought

by a consumer class that "specifically exclud[ed] those injured by the drug," suggesting

(incorrectly) that the Williams plaintiffs did not allege an injury.  Coor. Pls.' Objs. at 9.

Plaintiffs are clearly misreading the word "injury."  While the purported class in Williams was

designed to exclude all those who had been *physically* injured by the drug, 297 F. Supp. 2d at

172, the plaintiffs in Williams claimed that they had suffered an economic injury because the

drug at issue did not provide its advertised pain relief to certain other individuals (i.e., those who

had been excluded from the class), id. at 175-76.  The Williams court ruled that "[w]ithout

alleging that a product failed to perform as advertised [for him], a plaintiff has received the

benefit of his bargain and has no basis to recover purchase costs."  Id. at 176 (citation omitted).

The Coordinated Plaintiffs are in exactly the same position as the plaintiffs in Williams:  both

---

[9] Whether the Coordinated Plaintiffs' pleading failure is characterized as a failure to allege all of the substantive elements of their causes of action or as an Article III standing defect, the results are the same.  Without a loss, plaintiffs have no standing to bring suit and no injury for which they can be compensated.  The Supreme Court has "repeatedly noted that in order to establish Article III standing, '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'"  Dep't of Commerce v. U.S. House of Reps., 525 U.S. 316, 329 (1999) (citing Allen v. Wright, 468 U.S. 737, 751 (1984); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982)).

groups of plaintiffs sought recovery for economic injuries, failed to allege that the product did

not work for them, and thus, failed to allege that they did not receive the benefit of their bargain.

No doubt appreciating their pleading deficiencies, the Coordinated Plaintiffs try to

recharacterize their loss as the overpayment for Neurontin when cheaper alternatives were

available. Coor. Pls.' Objs. at 6 (citing FCAC ¶¶ 107-25, 130-68). None of these paragraphs in

their complaint cited, however, discusses overpayment. FCAC ¶¶ 107-25, 130-68 (discussing

defendants' alleged misconduct, not any loss suffered). The Coordinated Complaint never even

mentions the existence of any cheaper alternative to Neurontin that would have been effective.[10]

Because of this, the cases involving overpayment for drugs upon which the Coordinated

Plaintiffs rely are readily distinguishable. Coor. Pls.' Objs. at 7-10. For instance, the

Coordinated Plaintiffs read too broadly Desiano v. Warner-Lambert Co., 326 F.3d 339 (2d Cir.

2003), a decision upon which they rely heavily. As defendants explained in their reply, Desiano

is a true overpayment case. Defs.' Reply at 14-15. The plaintiffs were not attempting to recover

their purchase price; they were attempting to recover the difference between the price of Rezulin

and equally effective alternatives to Rezulin which they would have purchased were it not for the

manufacturer's misrepresentations. 326 F.3d at 349. The claimed loss in that case stemmed

from the assertion that the defendants' alleged misrepresentations allowed it to charge a higher

price for Rezulin as compared to competitor drugs. Thus, the Second Circuit in those

circumstances held that the Desiano plaintiffs had alleged an injury "since they would not have

bought Defendants' product, rather than available cheaper alternatives, had they not been

---

[10] The Coordinated Plaintiffs contort their allegations in order to characterize this as an overpayment case, suggesting that their allegations that Neurontin was prescribed at off-label dosages and that some studies found that Neurontin was no more effective than a placebo are allegations of overpayment. Coor. Pls.' Objs. at 2, 10. These allegations, however, are just another aspect of their off-label promotion argument with respect to which they have not pled ineffectiveness. These allegations are not analogous to true overpayment claims (where the plaintiffs allege that they would have purchased a cheaper, though equally effective, alternative), and their arguments are nothing more than an attempt to dress up their off-label promotion claims as overpayment allegations.

mislead by Defendants' misrepresentations." Id.  The Desiano holding is inapposite because the Coordinated Plaintiffs are not seeking the difference between the price that they actually paid for Neurontin and the price that they would have paid absent the alleged off-label promotion.  The Coordinated Plaintiffs also have not alleged that there is a cheaper alternative to Neurontin that they would have purchased instead of Neurontin and that would have been effective.

The other decisions upon which the Coordinated Plaintiffs rely are no more helpful.  In re Warfarin Sodium Antitrust Litigation is another overpayment case that does not apply here.  391 F.3d 516, 522-23 (3d Cir. 2004) (plaintiffs sought recovery of the difference in purchase price between Warfarin and generic medications based upon the defendant's false statements that the generics were not bioequivalents); see also Int'l Union of Operating Eng'rs Local #68 Welfare Fund v. Merck & Co., No. A-0450-05T1, 2006 N.J. Super. LEXIS 95, at *5 (Super. Ct. App. Div. Mar. 31, 2006) (plaintiffs seeking difference between a $72/month drug and $9/month alternatives).  In re Lorazepam & Clorazepate Antitrust Litigation, 295 F. Supp. 2d 30 (D.D.C. 2003), and Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic, 65 F.3d 1406 (7th Cir. 1995), are restraint of trade cases and are therefore not analogous to the instant case.  In re Lupron Marketing & Sales Practices Litigation is equally unhelpful to the Coordinated Plaintiffs because the plaintiffs in that case had clearly alleged an injury by asserting that the defendants had manipulated the spread between the acquisition price and the average wholesale price of a drug, resulting in overcharges to insurers.  295 F. Supp. 2d 148, 160-61 (D. Mass. 2003).

**A.    The Coordinated Plaintiffs' Claim Under California's Unfair Competition Law Should Be Dismissed for Failure To Allege Loss**

The Report properly recommended dismissal of the Coordinated Plaintiffs' Unfair Competition Law ("UCL") claim for failure to allege loss.  Report at 57 & n.26.  In an effort to revive their UCL claim, the Coordinated Plaintiffs make the additional argument that loss does

not need to be alleged and proved under the statute.  Coor. Pls.' Objs. at 11, 13-14.[11]  The

Coordinated Plaintiffs, however, have conceded that alleging actual loss is a requirement under

the UCL by not disputing this point in response to defendants' motion to dismiss.  Compare

Defs.' Mem. at 15 & n.7 (stating that the UCL requires loss to be pled) with Pls.' Opp'n at 16-

18; Pls.' Surreply at 9-12.  Nonetheless, in their objections, the Coordinated Plaintiffs for the

first time contend that in contrast to their other claims, their UCL claim need not include an

allegation of loss.  This argument fails for multiple reasons.

Perhaps most significantly, without alleging loss the Coordinated Plaintiffs lack standing

under Article III of the U.S. Constitution.  Irrespective of California law, a plaintiff asserting a

UCL claim must allege an injury to have Article III standing in a federal court.  See Gerlinger v.

Amazon.com, Inc., No. C 02-05238, 2005 U.S. Dist. LEXIS 26019, at *9-10 (N.D. Cal. Oct. 31,

2005) (stating that "for plaintiff to bring his UCL claim in federal court he must establish some

injury in fact"); Trew v. Volvo Cars of N. Am., LLC, No. CIV-S-05-1379, 2006 U.S. Dist.

LEXIS 4890, at *15 (E.D. Cal. Feb. 7, 2006) (explaining that in federal court a plaintiff must

allege a cognizable injury to have standing for a UCL claim); VonGrabe v. Sprint PCS, 312 F.

Supp. 2d 1313, 1323 (S.D. Cal. 2004).  Hence, the Coordinated Plaintiffs are wrong in asserting

that they can bring a UCL claim in federal court without alleging injury.

In addition, a recently adopted amendment to the UCL – Proposition 64 – makes clear

that injury must be alleged for a party to have standing under the statute.  2004 Cal. Legis. Serv.

Prop. 64 [Approved by voters Nov. 2, 2004].  Proposition 64, which was passed in November

---

[11] The Coordinated Plaintiffs also suggest that some of their claims do not sound in fraud and thus, are not governed by Rule 9(b).  Coor. Pls.' Objs. at 13 n.12.  This suggestion must be rejected because, as the Report recognized, Report at 55, plaintiffs have previously indicated that all of their claims are premised on allegations of misrepresentations (except to the limited extent that they are based upon predicate acts of commercial bribery), Pls.' Surreply at 22 n.17.  To the extent that any of plaintiffs' claims are not fraud-based, they are preempted and/or barred by the First Amendment.  Report at 30-37, 54-55; Defs.' Mem. at 27-35; Defs.' Reply at 27-35.

2004, provides that a non-governmental plaintiff can bring a UCL claim only if the plaintiff

"suffered injury in fact." Id. § 3; see Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal

Cruelty USA, Inc., 29 Cal. Rptr. 3d 521, 547 (Ct. App. 2005). This rule became effective

immediately. Huntingdon, 29 Cal. Rptr. 3d at 547. Moreover, Proposition 64 applies to pending

cases regardless of when the claims were filed. See, e.g., Envtl. Prot. Info. Ctr. v. U.S. Fish &

Wildlife Serv., No. C 04-4647, 2005 U.S. Dist. LEXIS 7200, at *12-17 (N.D. Cal. Apr. 22,

2005).[12] Thus, Proposition 64 is yet another reason that the UCL claim should be dismissed.

Finally, regardless of the standing requirements imposed by Article III and Proposition

64, plaintiffs seeking restitution under the UCL must allege injury. As the Coordinated Plaintiffs

state, the scope of the UCL is broad. Coor. Pls.' Objs. at 12-13. As a result, the remedies

available under the UCL are limited to injunctive relief and restitution. See Korea Supply Co. v.

Lockheed Martin Corp., 63 P.3d 937, 944 (Cal. 2003). Since the Coordinated Plaintiffs do not

seek injunctive relief, FCAC ¶ 307, the only remedy available to them is restitution.

In the context of the UCL, restitution means the return of a measurable amount of

property obtained through a deceptive business practice to those who have a legitimate claim to

the property. See Korea Supply, 63 P.3d at 948; Madrid v. Perot Sys. Corp., 30 Cal. Rptr. 3d

210, 221-22 (Ct. App. 2005). Thus, to be entitled to restitution, a plaintiff must have an

ownership interest in the relevant property. Where a plaintiff has paid money to a defendant, the

plaintiff retains an ownership interest in that money if she does not get that for which she paid.

---

[12] While the issue of whether Proposition 64 applies to pending cases is presently before the California Supreme Court, virtually every California court that has considered the issue has determined that it applies to pending cases. See Schwartz v. Visa Int'l Serv. Ass'n, 34 Cal. Rptr. 3d 449, 453-57 (Ct. App. 2005), review pending, depublished by 37 Cal. Rptr. 3d 353 (2005); Chamberlan v. Ford Motor Co., 369 F. Supp. 2d 1138, 1149-51 (N.D. Cal. 2005). In any event, this stand-alone UCL claim was filed after the passage of Proposition 64. FCAC at 101-03, 112.

If, however, the plaintiff gets that for which she paid, she relinquishes her ownership interest in the money.

The decisions cited by defendants in support of their motion to dismiss demonstrate this point.  Defs.' Mem. at 15 & n.7.  For example, in Day v. AT&T Corp., plaintiffs brought UCL claims against telephone service providers and phone card retailers for allegedly deceptive advertising.  74 Cal. Rptr. 2d 55 (Ct. App. 1998).  The court reasoned that the practice of "rounding up" minutes on a calling card could not be challenged under the filed rate doctrine.  Id. at 61-63.  The court then ruled that since the rate was fair as a matter of law, the plaintiffs could not allege a viable UCL claim because "the members of the public received *exactly what they paid for*."  Id. at 64 (emphasis added) (holding that "in the absence of a measurable loss the [UCL] does not allow the imposition of a monetary sanction").[13]

The other decision, In re Rezulin Litigation – ignored by plaintiffs – applies this principle in directly analogous circumstances.  Judicial Council Coordination Proceeding No. 4122 (Cal. Sup. Ct. filed Apr. 29, 2003).[14]  After setting forth the definition of restitution, the Rezulin trial court granted summary judgment to the defendant with respect to the UCL claim because the plaintiffs had offered no evidence suggesting that the individuals who took the drug did not benefit from its use.  Id. at 8.  The court explained that since the plaintiffs had not alleged that the drug was ineffective, there was no "property" in which those individuals had an "ownership interest" for the defendant to restore.  Id.  As a result, the Rezulin court found that these

---

[13] The Coordinated Plaintiffs incorrectly contend that Day was based solely on the filed rate doctrine.  Coor. Pls.' Objs. at 12 n.11.  Although this doctrine was the reason that the court found that the plaintiffs suffered no loss, the court then concluded that restitution could not be sought because no injury had been alleged.  Day, 74 Cal. Rptr. 2d at 64-65 ("Because the filed rates charged by respondents are presumptively correct, a consumer who uses a prepaid phone card obtains the full value of what was paid for and therefore has given up nothing . . . ."); see also Smith v. SBC Comms., Inc., 839 A.2d 850, 857 (N.J. 2004) (explaining that because the plaintiffs in Day received the filed rate, "there were no ill-gotten profits to restore").

[14] A copy of the slip opinion from In re Rezulin Litigation is attached.  Murray Decl. Ex. C.

individuals were not entitled to restitution.  Id.  The situation here is identical:  because the

Coordinated Plaintiffs have failed to allege that Neurontin was ineffective, they have no

recoverable interest in the money that they paid for Neurontin and are not entitled to restitution.[15]

### B. The Coordinated Plaintiffs' Claim Under the Remaining Consumer Fraud Statutes Should Also Be Dismissed for Failure To Allege Loss

Count XI of the Coordinated Complaint, which was brought under 51 non-California

consumer fraud statutes,[16] should be dismissed for the same reason that all of the Coordinated

Plaintiffs' claims must be dismissed:  failure to allege a cognizable injury.  The Report

recognized this.  Report at 57 & n.26.  In response, the Coordinated Plaintiffs simply rely upon

their argument that they had pled loss under RICO.  Coor. Pls.' Objs. at 15.  As explained above,

the Coordinated Plaintiffs have not alleged a cognizable injury – under RICO or any other

statute.  Because they must do so to establish Article III standing, see Lujan, 504 U.S. at 560-61;

Williams, 297 F. Supp. 2d at 175-78; see also supra at 18 n.9, as well as to state a claim under

each of these consumer fraud statutes, 36 Am. Jur. Proof of Facts 3d § 221, at § 4 (2005), this

claim must be dismissed.

The Coordinated Plaintiffs also refer to a number of decisions for the general proposition

that state consumer fraud statutes are meant to provide broad protection and in some respects

provide broader protection than RICO and fraud.  Coor. Pls.' Objs. at 15-16 (employing the

signal "cf.").  None of these decisions, however, suggest that the injury requirement under these

state statutes is any less robust than that of RICO and fraud.  See In re Lupron, 295 F. Supp. 2d

---

[15] The decision upon which the Coordinated Plaintiffs rely, Coor. Pls.' Objs. at 11-14 (citing Comm. on Children's Television, Inc. v. General Foods Corp., 673 P.2d 660 (Cal. 1983)), does not undercut the applicability of Day and Rezulin.  This pre-Proposition 64 decision concerns the UCL's standing requirements, not whether the actual object of the alleged misconduct must suffer a cognizable injury.  673 P.2d at 671.

[16] The Coordinated Plaintiffs' pleading of this claim is nothing more than a string cite to numerous statutes. FCAC ¶ 311.  As defendants explained previously, plaintiffs not only have failed to allege the elements required by these statutes, but also have not addressed the fact that they are barred from asserting claims under many of these statutes.  See Defs.' Mem. at 25-26; Defs.' Reply at 25-27.

at 180-81 & n. 37; <u>In re Pharm. Indus. Avg. Wholesale Price Litig.</u>, 339 F. Supp. 2d 165, 181-82

(D. Mass. 2004); <u>Web Press Servs. Corp. v. New London Motors, Inc.</u>, 525 A.2d 57, 68 (Conn.

1987); <u>Desiano</u>, 326 F.3d at 349.

### C.    The Coordinated Plaintiffs' Pennsylvania Insurance Fraud Claim Should Be Dismissed for Failure To Allege Loss

Just like their other claims, the Coordinated Plaintiffs' claim under the Pennsylvania

Insurance Fraud Statute should be dismissed because the Coordinated Complaint does not allege

a cognizable injury.[17]  Magistrate Judge Sorokin recommended dismissal of this claim for failure

to allege loss.  Report at 57 & n.26.  The Coordinated Plaintiffs object to this recommendation on

the grounds that they have alleged all of the required elements of this statutory claim, including

loss, and that "the Statute is specifically designed and intended to remedy insurance fraud, the

very conduct at issue."  Coor. Pls.' Objs. at 14-15.  These objections should be rejected because

the Coordinated Plaintiffs not only fail to allege a cognizable injury, but also do not plead that

any false statements were presented to them.

In order to state their claim under the Pennsylvania Insurance Fraud Statute, the

Coordinated Plaintiffs must allege that defendants "present[ed] or caus[ed] to be presented to any

insurer or self-insured any statement forming a part of, or in support of, a claim that contains any

false, incomplete or misleading information concerning any fact or thing material to the claim."

18 Pa. Cons. Stat. § 4117(a)(2) (2006).  The first reason that the Coordinated Plaintiffs' claim

---

[17] Because each of the Coordinated Plaintiffs failed to allege an adequate nexus with Pennsylvania, their claim under the Pennsylvania Insurance Fraud Statute should be dismissed for the further reason that the statute does not apply extraterritorially.  There is a general presumption against application of a state statute to non-residents because a state's laws are "presumptively territorial and confined to limits over which the law-making power has jurisdiction."  <u>Sandberg v. McDonald</u>, 248 U.S. 185, 195 (1918); <u>accord</u> Defs.' Objs. at 4-9 (arguing that the New Jersey Consumer Fraud Act (the "NJCFA") does not apply extraterritorially); Defs.' Reply at 23-25 (same as to both the NJCFA and the UCL); Defs.' Mem. at 24-25 (same).  To rebut this presumption, the Coordinated Plaintiffs must allege with particularity facts to show that they have a claim under the Pennsylvania Insurance Fraud Statute.  Plaintiffs Kaiser and Guardian Life have not alleged any nexus with Pennsylvania sufficient to permit their claims to proceed.  Even Aetna, a Pennsylvania corporation, has not asserted that the alleged misconduct underlying its claims occurred in Pennsylvania.

under the Pennsylvania Insurance Fraud Statute must be dismissed is that they have failed to

allege a cognizable injury, as Magistrate Judge Sorokin recognized.  Report at 21-22, 57 & n.26.

These plaintiffs concede, as they must, that injury is a required element of this claim.  Coor. Pls.'

Objs. at 14.[18]

In addition to failing to allege loss, the Coordinated Plaintiffs' Pennsylvania Insurance

Fraud Statute claim should be dismissed for failure to allege that defendants made or caused to

be made any *false* statements to the Coordinated Plaintiffs forming a part of or in support of any

claims for Neurontin.  This statute requires that "false, incomplete or misleading" information be

presented to an insurer.  18 Pa. Cons. Stat. § 4117(a)(2).  The Coordinated Complaint does not

allege with any specificity, let alone the specificity required by Rule 9(b), any false, incomplete,

or misleading information that was conveyed to the Coordinated Plaintiffs in connection with the

Neurontin claims.

Finally, the two decisions that the Coordinated Plaintiffs cite in support of their argument

that the Pennsylvania Insurance Fraud Statute is intended to cover the conduct at issue are both

distinguishable.  Plaintiffs cite the first, Lupron, for the proposition that the intent of the

Pennsylvania Insurance Fraud Statute is to protect all insurers from fraudulent claims, whether

the defendant submitted such claims or caused the insured to submit them.  Coor. Pls.' Objs. at

15 (citing In re Lupron Mktg. & Sales Practices Litig., No. MDL 1430, 01-CV-10861, 2004 U.S.

Dist. LEXIS 18512, at *2 (D. Mass. Sept. 16, 2004)).  While this proposition is true, it is only

applicable where claims containing or accompanied by false information were submitted to the

_____

[18] To support their argument, the Coordinated Plaintiffs assert that "it is hard to imagine a clearer case of insurance fraud" and state that defendants have admitted that their conduct was fraudulent.  Coor. Pls.' Objs. at 14. As the Report recognized, defendants never admitted that the conduct at issue was fraudulent.  Report at 2 n.3 ("Pfizer pled guilty to illegal off-label marketing . . . ."); see also Defs.' Objs. at 2 ("In 2004, Warner-Lambert Company LLC pled guilty to nonfraudulent violations of the Food, Drug & Cosmetic Act and paid a fine and civil settlements totaling $430 million.").

insurer. 18 Pa. Cons. Stat. § 4117(a)(2). Thus, it is not relevant here because although the

plaintiff in <u>Lupron</u> did allege that false information was submitted to it in conjunction with

claims for insurance, the Coordinated Plaintiffs have not.

The Coordinated Plaintiffs also rely upon <u>United States ex rel. Franklin v. Parke-Davis</u>,

Civ. A. No. 96-11651, 2003 U.S. Dist. LEXIS 15754, at *16 (D. Mass. Aug. 22, 2003), to

support their argument. Coor. Pls.' Objs. at 14. The ruling which the Coordinated Plaintiffs cite,

however, is not applicable because this Court in <u>Franklin</u> found that the claims at issue might

themselves be false not because they contained or were accompanied by any false information,

but because the Medicaid statute arguably did not permit payment for drugs prescribed for off-

label uses that were not included in an approved drug compendium. 2003 U.S. Dist. LEXIS

15754, at *16 (citing <u>United States ex rel. Franklin v. Parke-Davis</u>, 147 F. Supp. 2d 39, 44-45

(D. Mass. 2001) (citing 42 U.S.C. § 1396b(i)(10); <u>id.</u> § 1396r-8)).[19] In contrast, under the

Pennsylvania Insurance Fraud Statute, actual false information must be conveyed to the insurer,

which the Coordinated Plaintiffs have not alleged. Nor have the Coordinated Plaintiffs alleged

that they do not pay for off-label uses, thereby rendering claims for payment "false."

## IV. PLAINTIFFS' FRAUD CLAIMS SHOULD BE DISMISSED

Although Magistrate Judge Sorokin recommended dismissal of the vast majority of

plaintiffs' fraud allegations, Report at 56-57, defendants' memorandum in support of their

objections explained that the Report did not go far enough. Complete dismissal of plaintiffs'

fraud claims is warranted here. Defs.' Objs. Mem. at 4-27. This is especially true given that

their allegations are flatly contradicted by the very documents that have been incorporated into

the complaints by reference. <u>Id.</u> at 16, 19, 22, 25; Declaration of Patrick J. Murray, dated Mar. 3,

---

[19] In <u>Franklin</u>, this Court ultimately did not resolve the question of whether a Medicaid-reimbursement request for a drug prescribed for an off-label use not included in a medical compendium constituted a false claim. 2003 U.S. Dist. LEXIS 15754, at *16 (requesting an amicus brief from the government on this issue).

2006, Exs. 3-10.  Notably, Magistrate Judge Sorokin did not have those documents before him when he rendered his report.

Plaintiffs apparently recognize that most of their fraud claims should be dismissed because they object to only two of the Report's recommendations regarding these claims:  (1) the dismissal of claims based on verbatim reports, and (2) the dismissal of claims regarding restless leg syndrome ("RLS").  Pls.' Objs. at 21-25.  Both of these objections should be rejected for the reasons set forth below.  As a result, all of plaintiffs' fraud claims should be dismissed.

## A.     Allegations Based on Verbatim Reports Should Be Dismissed

All of plaintiffs' allegations based upon verbatim reports should be dismissed because none have been pled with the particularity demanded by Rule 9(b).  The Report recognized this when it recommended dismissal because for each statement in these reports, plaintiffs "fail to assert the identity of the speaker, and where and precisely when the statement was made." Report at 42.  In response, plaintiffs first argue that none of their fraud claims are based solely on allegations regarding sales representatives' statements.  Pls.' Objs. at 21-22.  It is unclear what plaintiffs mean.  If plaintiffs wish to base any of their causes of action upon verbatim reports, then such allegations must be analyzed independently under Rule 9(b) to determine whether they state a claim.  The Report conducted such an examination and properly concluded that these allegations do not state a claim for fraud with sufficient particularity.

Next, plaintiffs attempt to justify their pleading failure by arguing that the "who," "when," and "where" of these verbatim statements are unavailable because they are within defendants' sole control.  Id. at 22-23.  Yet, plaintiffs admit that the relevant details are not within defendants' control, but rather in the control of Verispan, LLC – a third-party in this litigation.  Id.  Thus, there is no basis to relax the relevant pleading requirements, as plaintiffs suggest.

### B.     Fraud Claims Regarding Restless Leg Syndrome Should Be Dismissed

Plaintiffs have not adequately alleged fraud with respect to statements about RLS because the purportedly negative study that they identify does not relate to this condition.  Plaintiffs object that Magistrate Judge Sorokin adopted an "overly crabbed" reading of their allegations.  Pls.' Objs. at 24 (citing Report at 51).  The Report's analysis, however, is a straightforward interpretation of plaintiffs' complaints and merely reflects their failure to allege a connection between RLS and the purportedly negative study of periodic limb movement in sleep ("PLMS").  Although PLMS may be "closely related" to RLS, these conditions are not the same disorder and plaintiffs do not and cannot allege otherwise.  Plaintiffs have not even alleged that the conditions are treated in the same manner.  See Report at 51.

## V.     PLAINTIFFS' UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED

Even if plaintiffs are correct that this Court should not dismiss the Class Plaintiffs' unjust enrichment claim on the ground that these plaintiffs have an adequate remedy at law, Pls.' Objs. at 26-27, this claim as well as the Coordinated Plaintiffs' unjust enrichment claim should be dismissed for multiple other reasons.  As defendants have argued previously, plaintiffs have failed to plead two other required elements of this claim:  causation and loss.  Defs.' Mem. at 11, 15; Defs.' Reply at 39; Defs.' Objs. Mem. at 3-4.  As explained above, the Coordinated Plaintiffs have failed to allege cognizable injury and hence, have not pled an impoverishment.  Supra Section III; see Report at 21-22, 57; Defs.' Objs. Mem. at 3-4.  Moreover, none of these plaintiffs have alleged the required connection between the alleged enrichment and impoverishment.  This element requires plaintiffs to allege some causal link between the alleged misconduct and plaintiffs' payments for Neurontin, which has not been done.  Finally, to the extent that plaintiffs have pled unjust enrichment (which they have not), it certainly would have

occurred outside of the three-year statute of limitations and is therefore time-barred.  Defs.'
Mem. at 39 n.20; Defs.' Reply at 39.

## VI.    PLAINTIFFS' MISCELLANEOUS ARGUMENTS SHOULD BE REJECTED

### A.    The Class Plaintiffs' New Jersey Consumer Fraud Act Claim Should Be Dismissed Now

As defendants explained in the memorandum that accompanied their objections, the class
plaintiffs' NJCFA claim should be dismissed because none of the class representatives has
alleged a sufficient nexus with New Jersey.  Defs.' Objs. Mem. at 4-9.  Defendants objected to
the Report's recommendation that this issue be deferred to the class certification or summary
judgment stage.  Id. at 4-6.  Plaintiffs also complain that the magistrate judge apparently pre-
judged the choice-of-law issue.  Pls.' Objs. at 27.  This objection is baseless, as there is no
choice-of-law issue to prejudge.  As defendants explained, the class plaintiffs brought their
consumer fraud claim under *one* statute:  the NJCFA.   Defs.' Objs. Mem. at 4-5.  As a result, no
law will need to be chosen.  Accordingly, the Court should analyze the NJCFA claim now and
dismiss it for the reasons set forth in defendants' memorandum in support of this objection.

### B.    The Report Properly Set Forth the Standard for Proof of Causation

Plaintiffs object to the Report's recognition that "[t]he named plaintiffs, for example, will
need to establish that their physicians prescribed Neurontin as a result of defendants' fraudulent
or misleading statements" on the ground that this is *dicta* and the method of proving causation
should not be prejudged.  Pls.' Objs. at 28 (quoting Report at 19 (citing In re Rezulin, 210 F.R.D.
at 68)).  Defendants squarely raised the issue of causation on the motions to dismiss, Defs.'
Mem. at 12; Defs.' Reply at 8-9, and the magistrate judge's analysis is correct, see, e.g., Fink v.
Ricoh Corp., 839 A.2d 942, 958-59 (N.J. Super. Ct. 2003) (holding that each class member must
demonstrate that defendants' conduct caused him or her to purchase a digital camera).

## CONCLUSION

For all of the foregoing reasons, the Class Complaint and the Coordinated Complaint should be dismissed with prejudice.

Dated: April 10, 2006

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
        James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:   /s/ David B. Chaffin
        David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 10, 2006.

/s/David B. Chaffin