UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------ x
                                                 :
In re:  NEURONTIN MARKETING,                     :
        SALES PRACTICES AND                      :
        PRODUCTS LIABILITY LITIGATION            :  MDL Docket No. 1629
------------------------------------------------ x
                                                 :  Master File No. 04-10981
THIS DOCUMENT RELATES TO:                        :
                                                 :  Judge Patti B. Saris
------------------------------------------------ x
                                                 :  Magistrate Judge Leo T.
HARDEN MANUFACTURING CORPORATION;                :  Sorokin
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,      :
dba BLUECROSS/BLUESHIELD OF LOUISIANA;           :
INTERNATIONAL UNION OF OPERATING ENGINEERS,      :
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL     :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and      :
LORRAINE KOPA, on behalf of themselves and all others :
similarly situated, v. PFIZER INC. and WARNER-LAMBERT :
COMPANY.                                         :
                                                 :
                                                 :
------------------------------------------------ x
                                                 :
THE GUARDIAN LIFE INSURANCE COMPANY OF           :
AMERICA v. PFIZER INC. and                       :
                                                 :
AETNA, INC. v. PFIZER INC.                       :
                                                 :
                                                 :
------------------------------------------------ x

**RESPONSE OF PFIZER INC. AND WARNER-LAMBERT COMPANY
TO PLAINTIFFS' POST-HEARING SUBMISSION OF
CHART IDENTIFYING FALSE STATEMENTS AND
<u>MATERIAL OMISSIONS ALLEGED IN COMPLAINTS</u>**

                                       DAVIS POLK & WARDWELL
                                       450 Lexington Avenue
                                       New York, NY 10017
                                       (212) 450-4000

                                       *Attorneys for Defendants Pfizer Inc.*
                                       *and Warner-Lambert Company*

In connection with the Court's deliberations concerning the parties' objections to Magistrate Judge Sorokin's January 31, 2006 Report and Recommendation on Defendants' Motions To Dismiss the Amended Class Complaint and the First Coordinated Amended Complaint (the "Report"), defendants respectfully submit this response to the post-hearing submission, filed on May 12, 2006, of the Class Plaintiffs and the Coordinated Plaintiffs purporting to identify false statements and material omissions alleged in the complaints (the "Submission").  In the Submission, plaintiffs identify thirteen allegedly false statements or material omissions.  Federal Rule of Civil Procedure 9(b) requires that plaintiffs allege such statements and omissions with particularity.  For the reasons set forth in the chart attached as Exhibit A, plaintiffs have failed to allege any false statements or omissions, much less with the particularity required by Rule 9(b).  Because plaintiffs have continually failed to identify any such statements or omissions, despite receiving multiple opportunities and significant discovery, their claims should be dismissed with prejudice.

Dated: May 19, 2006

                                        DAVIS POLK & WARDWELL

                                        By:  /s/ James P. Rouhandeh
                                                James P. Rouhandeh

                                        450 Lexington Avenue
                                        New York, New York 10017
                                        (212) 450-4000

                                                 - and -

        HARE & CHAFFIN

        By:   /s/ David B. Chaffin
               David B. Chaffin

        160 Federal Street
        Boston, Massachusetts 02110
        (617) 330-5000

        *Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on May 19, 2006.

        /s/David B. Chaffin

# Exhibit A

***In re Neurontin Marketing, Sales Practices and Products Liability Litigation—MDL 1629***

**DEFENDANTS' RESPONSE TO
THE CLASS AND COORDINATED PLAINTIFFS' ALLEGATIONS
OF FALSE, MISLEADING OR DECEPTIVE STATEMENTS**

| | OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|---|
| #1. ☐ | Bipolar Disorder | "data are increasing but currently limited to favorable case reports and open trials."<br><br>*- Displayed on a set of slides entitled "Gabapentin: Indications Summary—Bipolar disorder" presented to attendees of a series of dinner meetings for psychiatrists entitled "Closing the Psychiatry-Neurology Divide: Emerging Uses of Anticonvulsants," held at the erstwhile Maison Robert in Boston, Patrick's Bayside Bistro in St. Petersburg, FL, the Downtown Club in Philadelphia, Ristorante DeGrezia in New York, and other fine restaurants around the country.*<br><br>**Amended Class Action Complaint ("AC") ¶ 154; First Coordinated Amended Complaint ("FCAC") ¶ 123.** | Mar. 16, 1998<br>Mar. 17, 1998<br>Mar. 18, 1998<br>Mar. 19, 1998 | *This statement appears in a set of slides produced from Parke-Davis' files.*<br><br>• Plaintiffs have made no factual allegation that any particular person made or presented the alleged statement at any of the four meetings identified in plaintiffs' chart. Plaintiffs have made no factual allegation identifying any attendee of the alleged meetings, much less any allegation that any particular attendee heard or was presented with the alleged statement. Plaintiffs' conclusory assertion that the statement was "presented" to attendees is pure conjecture for which they have alleged no factual basis.<br><br>• Further, plaintiffs have not alleged who the author of this statement was, much less that the author lacked a basis to believe the statement was true. Plaintiffs have not alleged that the author knew of the results of the trials at the time that the slide was prepared or presented. AC ¶ 154; FCAC ¶ 123.<br><br>• Finally, plaintiffs' argument regarding Drugdex is irrelevant to whether the alleged statement satisfies plaintiffs' burden of pleading a false or misleading statement. |

-1-

| OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|
| #2.<br><br>☐ | Bipolar Disorder | Neurontin was "Innovative and effective esp. for bipolar II."<br><br>- *Said by a Parke-Davis speaker at a medical education conference to various attendees, including "Physician 604980," at the Marriott San Francisco Airport in San Francisco, CA.*<br><br>**AC ¶ 156; FCAC ¶ 124.** | Aug. 8, 1998 | *This statement comes from a verbatim report prepared by an unnamed physician identified only as "Physician 604980," a number assigned by Verispan, LLC, the company that solicited the report.*[1]<br><br>• This statement fails to satisfy plaintiffs' burden to allege a false or misleading statement because plaintiffs have not alleged facts identifying the person who allegedly made this statement. Nor have they made any factual allegation identifying any attendee of the alleged conference, much less any allegation that any particular person heard the alleged statement. Plaintiffs have also failed to allege that the person who allegedly made this statement lacked a basis for believing that it was true when made.<br><br>• Plaintiffs try to excuse their failure to allege facts with particularity by arguing in endnote 4 that defendants know the identity of the physician who prepared the report and can determine who the speaker is. This assertion is incorrect. Defendants cannot identify Physician 604980, the person who purportedly heard the alleged statement. The identity of this physician is known only to Verispan. Verispan refuses to provide pharmaceutical companies with the names of the physicians who provide the verbatim reports, and defendants have no right to obtain such information.[2] |

---

[1] Verbatim reports are surveys of physicians by companies such as Verispan, LLC. The surveys ask physicians to report their impressions from sales calls and other meetings sponsored by pharmaceutical companies. Verispan sells the reports to pharmaceutical companies. Verbatim reports do not purport to be "verbatim" recordings of what the sales representative or speaker said, but rather attempt to capture the recording physician's impressions from meetings.

[2] Verispan successfully opposed producing such physician names in the Franklin litigation. See United States ex rel. Franklin v. Parke-Davis, C.A. No. 96-11651-PBS (D. Mass.), Docket #343 (affidavit of Debra Farese, employee of Verispan) ¶ 5. A member of the plaintiffs' steering committee, who prepared plaintiffs' chart filing, has previously admitted that defendants did not receive this information. See Franklin, Docket #311 at 36-37 ("Only Scott-Levin [Verispan's predecessor] knew the identity of the doctors providing verbatims.").

| | OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|---|
| #3. ☐ | Bipolar Disorder | Neurontin was an "…effective treatment of bipolar disorder…" <br><br> *- Said by a Parke-Davis sales representative to "Physician 011623" during a sales call (detail) at the physician's office.* <br><br> **AC ¶ 156; FCAC ¶ 124.** | Aug. 31, 1998 | *This statement comes from a verbatim report prepared by an unnamed physician identified only as "Physician 011623," a number assigned by Verispan.* <br><br> • This statement fails to satisfy plaintiffs' burden to allege a false or misleading statement because plaintiffs have not alleged facts identifying the person who allegedly made this statement, much less that the person lacked a basis for believing that the statement was true when made. Nor have they made any factual allegation identifying the physician who prepared the report. As explained in connection with Statement #2, plaintiffs' argument that defendants know the identity of the physician is incorrect. |

-3-

| | OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|---|
| #4. ☐ | Bipolar Disorder | Defendants affirmatively suppressed the results of at least two failed clinical trials for Neurontin concerning bipolar disorder and thus made material omissions in statements to prescribing physicians at the following events:<br>• Speakers Bureau Meeting the Fairmont Scottsdale Princess in Scottsdale, AZ (Jan. 21-23, 2000);<br>• Speakers Bureau: Current Perspectives in the Understanding of Neurobehavioral Disorders at the Four Seasons Regent Beverly Wilshire in Beverly Hills, CA (March 24-26, 2000);<br>• Advisory Board Meeting at Hyatt Regency Hotel in San Antonio, TX (March 29, 2000);<br>• Speakers Bureau at the Wyndham New Orleans at Canal Place in New Orleans, LA (April 7-9, 2000); and<br>• Speakers Training Advanced Perspectives in the Management of Neurological and Mood Disorders at the Enchantment Resort in Sedona, AZ (April 28-30, 2000).<br><br>Moreover, Parke-Davis never submitted the results of the two failed clinical trials to Drugdex.<br><br>**AC ¶¶ 150, 153; FCAC ¶¶ 125 – 26.** | Jan. 21, 2000<br>Jan. 22, 2000<br>Jan. 23, 2000<br>Mar. 24, 2000<br>Mar. 25, 2000<br>Mar. 26, 2000<br>Mar. 29, 2000<br>Apr. 7, 2000<br>Apr. 8, 2000<br>Apr. 9, 2000<br>Apr. 28, 2000<br>Apr. 29, 2000<br>Apr. 30, 2000<br><br>(Drugdex omissions are continuous from 2000 to the present) | • Plaintiffs have not identified any statement made at any of the listed events, much less alleged that any such statement made at those events was false or misleading by omission.<br><br>• Plaintiffs have made no factual allegation that any particular person made any particular statement at any of the listed events. Plaintiffs have also made no factual allegation identifying any attendee of the alleged events, much less any allegation that any particular person heard any particular false or misleading statement. Plaintiffs' conclusory assertion that false statements or misleading omissions were made at these events is pure conjecture for which they have alleged no factual basis.<br><br>• Plaintiffs' conclusory allegation of "suppression" is not supported by any factual allegation whatsoever. There is no allegation of any action taken by any person to impede or delay the publication of the results of these clinical trials.<br><br>➤ In fact, as to one of the alleged studies, plaintiffs themselves allege that it *was* publicly presented at the 1997 Annual Meeting of the American Psychiatric Association. AC ¶ 152; FCAC ¶ 122.<br><br>➤ As to the other clinical trial, an internal Parke-Davis trial, plaintiffs do not allege that it was not published (it was) or that its publication was delayed (it was not).<br><br>• Whether Parke-Davis supplied information to Drugdex is irrelevant to whether false or misleading statements were made at the listed events. But in any event, plaintiffs have not alleged that Drugdex was unaware of the two trials, much less that defendants had any duty to submit articles to Drugdex. |

| | OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|---|
| #5. ☐ | Diabetic Peripheral Neuropathy | Defendants submitted to Drugdex a falsified abstract of the results of a Parke-Davis-funded clinical trial, which omitted the author's conclusion that Neurontin is "probably ineffective" for the treatment of diabetic peripheral neuropathy and falsely stated: "the authors suggest that higher doses of gabapentin are needed."<br><br>**AC ¶ 121; FCAC ¶¶ 108 – 11.** | Continuously from 1999 to the present | *This allegation is based on Drugdex's summary of a letter from Dr. Gorson, a non-Parke-Davis physician, to a medical journal regarding his study of low-dose Neurontin for diabetic neuropathy. Plaintiffs contend that Drugdex's summary did not accurately summarize Dr. Gorson's published letter.*<br><br>• Plaintiffs' conclusory assertion that Parke-Davis sent Drugdex "a falsified abstract" is unsupported by any factual allegation. Plaintiffs have made no factual allegation identifying the person who purportedly submitted the alleged abstract or the time or circumstances of the alleged submission. Plaintiffs' conclusory assertion that defendants are responsible for the content of the Drugdex summary is pure conjecture lacking any alleged basis in fact. Significantly, the Drugdex summary identifies as its source Dr. Gorson's published letter, not information submitted by defendants. See 3/3/06 Murray Decl. Ex. 5 at 78.<br><br>• Plaintiffs do not allege that Drugdex concluded that Neurontin is effective for diabetic neuropathy based on the abstract of Dr. Gorson's letter. In fact, Drugdex based its conclusion on a separate controlled clinical trial. See id. at 43-45.<br><br>• Plaintiffs' assertion that defendants manufactured the statement regarding higher doses is not only unsupported by any factual allegation, but also demonstrably false in view of Dr. Gorson's own writings, which have been incorporated by reference into the complaints. See id. Ex. 6 (draft article) at W06834-35 ("higher doses might produce greater analgesia" and Neurontin "may be effective in higher doses"); id. Ex. 7 (published letter) at M0422 ("the dosage |

-5-

| | OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|---|
| #5 cont. | | | | of [Neurontin] may have been too low to induce analgesia").[3] |

---

[3] The Court can consider the full Drugdex summary and the other documents cited because plaintiffs have incorporated this summary and these documents into their complaints by referring to them and selectively quoting from them. See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

|  | OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|---|
| #6. ☐ | Doses exceeding approved maximum of 1800 mg/day | "we found that clinical usage requires [daily dosages of] 2200, 3200, 3600, up to what I think … again, as I said earlier, a limit of about 4800 mgs."<br><br>- *Said by Dr. Robert Leroy, a speaker hired by Parke-Davis through the medical marketing firm Cline Davis & Mann, to the attendees of Ritz-Carlton Consultants Meeting in Boston, MA. Parke-Davis paid Dr. Leroy a total of more than $25,000 to tout Neurontin at numerous marketing events. The notion that a physician is required to increase a patient's daily intake above 1800 mg per day—and as high as 4800 mg/day—before discontinuing the drug for lack of efficacy is directly in line with a Parke-Davis marketing executive's explicit instructions: "I don't want to see a single patient coming off Neurontin until they have been up to at least 4800mg/day."*<br><br>**AC ¶ 191; FCAC ¶¶ 33, 157.** | Apr. 20, 1996 | *This statement comes from a transcript of a meeting at which Dr. LeRoy spoke.*<br><br>• This statement fails to satisfy plaintiffs' burden to allege a false or misleading statement because plaintiffs do not allege that the statement is false. Plaintiffs nowhere allege that Dr. LeRoy's statement of his experience in clinical practice was untrue. They do not allege that Dr. LeRoy did *not* find that "clinical usage [of Neurontin] require[d]" such dosages.<br><br>• Plaintiffs argue that this statement is misleading because "it omit[ted] reference to the results of Parke-Davis's own internal clinical trials," but plaintiffs do not allege that Dr. LeRoy failed to discuss those results during the meeting. Indeed, the transcript of the meeting, which is incorporated by reference in plaintiffs' complaints, shows that Dr. LeRoy acknowledged at the meeting that "[t]he U.S. monotherapy study was unsuccessful in showing efficacy." See 3/3/06 Murray Decl. Ex. 3 at WL 04391.<br><br>• The fact that the FDA-approved dose for Neurontin is 1800 mgs does not mean that Dr. LeRoy's statement regarding his use in patients was false or misleading.<br><br>• Plaintiffs' vague assertion that "excess amounts of the drug . . . cannot be absorbed" in no way suggests that Dr. LeRoy's statement regarding his use in patients was false or misleading. Moreover, nowhere do plaintiffs claim that amounts of Neurontin up to 4800 mgs cannot be absorbed, much less that Dr. LeRoy held such a view. |

-7-

| | OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|---|
| #7. ☐ | Migraine | Neurontin was "Effective in controlling … migraine headache."<br><br>- *Said by a Parke-Davis sales representative to "Physician 019311" during a Neurontin sales call (detail) at the physician's office.*<br><br>**AC ¶ 181; FCAC ¶ 140.** | Aug. 16, 1996 | *This statement comes from a verbatim report prepared by an unnamed physician identified only as "Physician 019311," a number assigned by Verispan.*<br><br>• This statement fails to satisfy plaintiffs' burden to allege a false or misleading statement because plaintiffs do not allege that Neurontin is ineffective for migraine. Indeed, Drugdex, upon which plaintiffs freely rely, concludes that Neurontin is effective for migraine.[4]<br><br>• In addition, this statement fails to satisfy plaintiffs' burden to allege a false or misleading statement because plaintiffs have not alleged facts identifying the person who allegedly made this statement, let alone that the person lacked a basis for believing that the statement was true when made. Nor have they made any factual allegation identifying the physician who prepared the report. As explained in connection with Statement #2, plaintiffs' argument that defendants know the identity of the physician is incorrect. |

---

[4] See 3/3/06 Murray Decl. Ex. 5 at 51 (citing Mathew et al., *Efficacy of Gabapentin in Migraine Prophylaxis*, 41 Headache 119 (2001)). The Court can consider the entry in the Drugdex summary regarding this study because this summary has been incorporated into the complaints by reference, as explained above.

| OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|
| #8.  ☐  Migraine | Question: "But do you have any data [relating to Neurontin and migraine]?"  Answer: "We didn't…No, not really, because we didn't capture headache baseline."  - *Said by Leslie Magnus-Miller, Senior Director of Medical Affairs employed by Parke-Davis to members of the Parke-Davis Migraine Advisory Board, in response to a question from a physician questioning the need for additional research on Neurontin and migraine if Parke-Davis had "that data already in house."*  **AC ¶ 178; FCAC ¶ 138.** | May 25, 1996 | *This statement comes from the transcript of an advisory committee meeting.*  • Plaintiffs persist in misleadingly quoting the exchange between Dr. Magnus-Miller and Dr. Moskowitz. In an effort to portray the answer as deceptive, plaintiffs have changed the question through their misleading bracketed language.[5] As defendants have previously explained, the question asked was whether *headache* data was collected during the company's epilepsy trials—not whether the company had any data relating to Neurontin's treatment of migraine. See Defs.' Objs. Mem. at 24-27 (citing 3/3/06 Murray Decl. Ex. 10 at X010715-16). Plaintiffs do not allege that data relating to *headache* was collected as part of those epilepsy trials, which would be necessary in order for plaintiffs to claim that the statement was false.  • Notably, this is the only statement or omission on plaintiffs' chart where an employee of defendants is actually identified as a speaker. Yet plaintiffs cannot allege that the statement was false or misleading without putting words in the mouth of the *other* party to the conversation. |

---

[5] The actual exchange was as follows:

    Dr. Moskowitz: But do you have any data? It might be hard to sort it out, but at least you, …
    Dr. Magnus-Miller: We didn't …
    Dr. Moskowitz: … you know you might see a trend that would be …
    Dr. Magnus-Miller: No, not really, because we didn't capture headache baseline.
    Ms. Guerrero: Unfortunately we did not, even in monotherapy I think. Right?

3/3/06 Murray Decl. Ex. 10 at X010716.

| | OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|---|
| #9. ☐ | Migraine | Defendants suppressed the results of a failed clinical trial on migraine prophylaxis and thus made material omissions to prescribing physicians at various events where Neurontin was marketed for migraine, including: Gabapentin in the Management of Migraine in Short Hills, NJ [not NY as alleged] on May 25, 1996 and the Advisory Board Meeting at the Hyatt Regency Hotel San Antonio, TX on March 29, 2000.<br><br>**AC ¶ 179; FCAC ¶ 139.** | May 25, 1996<br>Mar. 29, 2000 | • Plaintiffs have not identified any statement at either of the two listed events, much less alleged that any such statement at those events was false or misleading by omission.<br><br>• Plaintiffs have made no factual allegation that any particular person made any particular statement at either of the two listed events. Plaintiffs have also made no factual allegation identifying any attendee of the alleged events, much less any allegation that any particular person heard any particular false or misleading statement. Plaintiffs' conclusory assertion that false of misleading statements were made at these events is pure conjecture for which they have alleged no factual basis.<br><br>• Plaintiffs' conclusory allegation of "suppression" is not supported by any factual allegation whatsoever. There is no allegation of any action taken by any person to impede the publication of the results of any clinical trial on migraine prophylaxis. |

-10-

|  | OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|---|
| #10. ☐ | Monotherapy treatment for epilepsy | "Now approved as monotherapy for seizures"<br><br>- *Said by a moderator hired by Parke-Davis to "Physician 608932" during a teleconference to discuss Neurontin's off-label uses.*<br><br>**AC ¶ 172; FCAC ¶ 147.** | Sept. 1997 [not 1998 as alleged] | *This statement comes from a verbatim report prepared by an unnamed physician identified only as "Physician 608932," a number assigned by Verispan.*<br><br>• This statement fails to satisfy plaintiffs' burden to allege a false or misleading statement because plaintiffs have not alleged facts identifying the person who allegedly made this statement, much less that the person lacked a basis for believing that the statement was true. (Plaintiffs do not and cannot take issue with the fact that Neurontin is approved for monotherapy in numerous countries throughout the world.) Plaintiffs also have not made any factual allegation identifying the physician who made the report. As explained in connection with Statement #2, plaintiffs' argument that defendants know the identity of the physician is incorrect. |

-11-

|  | OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|---|
| #11. ☐ | Monotherapy treatment for epilepsy | "Is effective as monotherapy or as add-on."<br><br>- *Said by a moderator hired by Parke-Davis to "Physician 602425" during a teleconference to discuss Neurontin's off-label uses.*<br><br>**AC ¶ 171; FCAC ¶ 147.** | Feb. 1998 | *This statement comes from a verbatim report prepared by an unnamed physician identified only as "Physician 602425," a number assigned by Verispan.*<br><br>• Plaintiffs do not and cannot allege that the statement is false. They do not and cannot allege that there are no studies demonstrating that Neurontin is effective as monotherapy. They do not and cannot allege that physicians have not found Neurontin to be effective for monotherapy.<br><br>• Furthermore, this statement fails to satisfy plaintiffs' burden to allege a false or misleading statement because plaintiffs have not alleged facts identifying the person who allegedly made this statement, much less that the person lacked a basis for believing that the statement was true when made. Nor have they made any factual allegation identifying the physician who made the report. As explained in connection with Statement #2, plaintiffs' argument that defendants know the identity of the physician is incorrect. |

| | OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|---|
| #12. ☐ | Restless Leg Syndrome (RLS)/ Periodic Limb Movement Syndrome (PLMS) | "Dr. Ehrenberg's patients had a 90% response rate to Neurontin."<br><br>- *Said by Parke-Davis Medical Liaisons to physicians, referring to Dr. Bruce Ehrenberg of the New England Medical Center, who had conducted a study on RLS and PLMS. This allegation was confirmed by the sworn testimony in the Franklin case of Lisa Kellett, a former Parke-Davis Medical Liaison.*<br><br>**AC ¶ 145; FCAC ¶ 116.** | Continuous | *This statement is contained in an internal memorandum produced from Parke-Davis' files. It refers to clinical response rates of patients of Dr. Ehrenberg, who also conducted a study of Neurontin's use in treating PLMS. This statement reports information received from Dr. Ehrenberg regarding his treatment of his patients, not the results of his PLMS study.*<br><br>• Plaintiffs have not identified a single meeting at which this statement was allegedly made. Plaintiffs also have not identified any particular person who made the alleged statement at any such meeting. Moreover, plaintiffs have made no factual allegation identifying any attendee of such a meeting, much less any allegation that any particular attendee heard the alleged statement. Plaintiffs' conclusory assertion that Parke-Davis medical liaisons conveyed this statement to physicians is pure conjecture for which they have alleged no factual basis.<br><br>• Plaintiffs have failed to allege this statement's falsity. Plaintiffs have never alleged that Dr. Ehrenberg's patients did not experience a 90% response rate. The allegation that Dr. Ehrenberg's study did not support the use of Neurontin for PLMS does not disprove that his patients at one time had a 90% response rate. Furthermore, plaintiffs do not and cannot allege that Dr. Ehrenberg never told defendants that his patients experienced this response rate.[6]<br><br>• Plaintiffs' assertion that Neurontin is not effective for PLMS does not support plaintiffs' argument that Neurontin is not |

---

[6] Plaintiffs' assertion that Ms. Kellett testified that Parke-Davis employees made this statement to physicians is incorrect. Ms. Kellett testified that *Dr. Ehrenberg* told *her* that his patients had a 90% response rate to Neurontin. She did not testify that she shared this fact with physicians, but she testified that she might have done so if they asked her and because she believed that Dr. Ehrenberg was telling the truth. Ms. Kellett did not testify that this statement was untrue or misleading.

-13-

| | **OFF-LABEL USE** | **THE ALLEGED FALSE STATEMENT OR OMISSION** | **DATE** | **WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY** |
|---|---|---|---|---|
| #12 cont. | | | | effective for RLS.<br><br>- In addition, plaintiffs have alleged no factual basis to conclude that this statement was actually communicated to anyone outside the company.<br><br>- Plaintiffs' assertion that Dr. Ehrenberg's PLMS study results were not disclosed is false, as they were presented at the 1997 Annual Meeting of the American Academy of Neurology, were twice published in supplements to the journal *Neurology*, and have been repeatedly cited in scientific literature, all of which the Court can take judicial notice. |

| | OFF-LABEL USE | THE ALLEGED FALSE STATEMENT OR OMISSION | DATE | WHY THE STATEMENT AND OMISSION HAVE NOT BEEN ALLEGED WITH PARTICULARITY |
|---|---|---|---|---|
| #13. ☐ | Restless Leg Syndrome (RLS)/ Periodic Limb Movement Syndrome (PLMS) | Neurontin was "Effective in controlling…restless leg syndrome..." <br><br> *- A Parke-Davis sales representative to "Physician 019311" during a sales call (detail) at the physician's office.* <br><br> **AC ¶ 148; FCAC ¶ 119.** | Aug. 16, 1996 | *This statement comes from the same verbatim report as Statement #7.* <br><br> • This statement fails to satisfy plaintiffs' burden to allege a false or misleading statement because plaintiffs have not alleged facts identifying the person who allegedly made this statement, much less that the person lacked a basis for believing that the statement was true when made. Nor have they made any factual allegation identifying the physician who prepared the report. As explained in connection with Statement #2, plaintiffs' argument that defendants know the identity of the physician is incorrect. |