UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            )

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Judge Patti B. Saris |
| | Magistrate Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO | Civil Action No. 04-10981 |
| PRODUCT LIABILITY LITIGATION | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PRODUCTS LIABILITY PLAINTIFFS POSITIONS AS TO OUTSTANDING DISCOVERY: AGREEMENTS AND DISPUTES**

Plaintiffs in the products liability, personal injury cases, by and through the law firm of Finkelstein & Partners, respectfully submit to the Court the following template on outstanding discovery as directed by the Court at the time of the parties' hearing on May 18, 2006. To the extent the parties have been unable to submit a joint template on discovery agreements and disputes, Plaintiffs submit their positions on outstanding discovery. Defendants do not join in this submission and Plaintiffs therefore cannot represent that Defendants affirmatively accept any "agreement" as that term is used herein. Consequently, the agreements and positions listed on the aforementioned template reflect Plaintiffs' account as to previously agreed upon discovery, as well as disputed issues. They are presented to the Court so as to raise specific outstanding requests for discovery as opposed to "abstract" issues the Court has advised should be avoided during status conferences.

Background of the Case

Before Products Liability Plaintiffs were transferred to this jurisdiction, the law firm of Finkelstein & Partners was already litigating this action in the United States District Court, Southern District of New York. In the matter entitled, *In re* Neurontin, before the Honorable Jed Rakoff, the parties litigated discovery issues via motion practice, met and conferred on discovery issues, and resolved some but obviously not all of the disputes pertaining to the scope of discovery.

Upon the Product Liability Plaintiffs' cases being transferred to the MDL, this Court granted leave to Finkelstein & Partners, on behalf of said plaintiffs, to submit memoranda in opposition to Defendants' request for a protective order (Docket #161) limiting the scope of discovery. Product Liability Plaintiffs' submitted memoranda of law (Docket # 186). At a hearing before this Court on May 18, 2006, the Court suggested the parties present their positions over scope in a specific and less abstract manner so that the Court could resolve the parties' disputes. Thereafter, by electronic order (Docket # 322), this Court denied Defendants' request for a protective order and indicated that specific disputes over scope and breadth of discovery shall be handled at monthly status conferences.

Based upon the Court's direction abovementioned, Products Liability Plaintiffs submit for the Court's consideration a summary of agreements and positions relating to the scope of discovery on sales and marketing issues, as well as certain safety/efficacy issues, so that same can be addressed during the Court's status conference. The following agreements are based upon previously served discovery demands in both federal and state litigation. Interrogatories and document requests were served on or

about October 12, 2004, when the matter was venued within the United States District Court, Southern District of New York (No. 04 CV 6704). Discovery demands covering similar substantive areas were also served in the New York State litigation, <u>Young v. Pfizer</u>. Although the agreements and positions below do not reflect each and every agreement or dispute between the parties, they are meant to bring to light those issues that require the Court's immediate attention so as to facilitate discovery in an efficient manner.

I.   **Products Liability Plaintiffs' Interrogatories, dated October 12, 2004, served in the matter of *In re Neurontin*, United States District Court, Southern District of New York**

---

Interrogatory Number 5:

The names of witnesses with knowledge of whether free samples (or credit cards or coupons or other compensation for free prescriptions) of Neurontin were provided by Defendants to medical doctors for the treatment of patients, and if so, of the system which kept track of such samples, the names and addresses of all persons responsible for such samples, dosages and number of tablets provided in each month from 1983 to present.

---

Response to Number 5:

---

Agreement: **By letter, May 11, 2005, the parties agreed that Defendants would answer the request regarding samples. See defense counsel's correspondence attached hereto as Exhibit A.**

---

Plaintiff Position: The request has yet to be answered.

---

Defendant Position:

---

Interrogatory Number 13

The names of witnesses with knowledge of whether or not Defendants have ever mailed to physicians a "Dear Doctor" or "Dear Healthcare Professional" letter or warning letter or any type of direct letter to doctors other than promotional pieces, on Neurontin, its components or any similar drug, and, if so, the names of witnesses with knowledge of:
- The dates when each such letter or report was prepared;
- The dates when such letters were mailed;
- The content of such correspondence; and
- The reason for such communication.

---

Response to 13:

---

Agreement: **The parties have agreed, as of May 3, 2005, that Defendants would produce any "Dear Doctor" letters relating to Neurontin. See defense counsel's correspondence, attached hereto as Exhibit B, paragraph 13.**

---

Plaintiff Position: "Dear Doctor" letters may consist not only of those documents from within the Defendants' Merlin/Phoenix databases, but they consist also of any "Dear Doctor" letters provided by the defendants to others on an unsolicited basis or as part of

any "educational service" by Defendants.  Defendants' response is incomplete.

Defendant Position:

II.    **Products Liability Plaintiffs' Requests for Production,
dated October 12, 2004, served in the matter of In re Neurontin, United
States District Court, Southern District of New York**

Request 2: Provide  the identity and title of all persons who participated in the preparation of these responses, excluding counsel.

Response to Request 2:

Agreement: **As of May 3, 2005, the parties agreed that Defendants would produce documents sufficient to identify the persons who have been and will be primarily responsible for responding to Requests for Production by May 16, 2005.  See defense counsel's correspondence attached hereto as Exhibit B.**

Plaintiff Position:  Defendants have not yet identified the persons consistent with the above agreement.

Defendant Position:

Request 6: Provide the name, address and phone number of each individual, group or entity who has expressed any findings, opinions or belief that the labeling, instructions for use, advertising or promotional literature Neurontin was inaccurate, or incomplete in informing or warning the public and the medical profession on potential, severity, scope or frequency of harmful side effects, adverse events,  efficacy or its ability to perform as advertised and promoted.   Provide a copy of any documents associated with these findings or opinions.

Response to Request 6:

Agreement: **On or about May 3, 2005, the parties agreed that Defendants would produce documents containing any statement that the Neurontin label was inaccurate or incomplete, not limited to suicide, after the production of databases. To the extent that such documents are also found in employee or departmental files,**

**Defendants agreed to produce such documents after the production of the databases. See defense counsel's letter, dated May 3, 2005, attached hereto as Exhibit B.**

Plaintiff Position:

Defendants should identify what databases remain outstanding so that the parties have an understanding as to when documents consistent with the parties' agreement shall be provided to Plaintiffs.

Plaintiffs believe that Defendants' response pertaining to this agreement is incomplete because Defendants have not provided  a complete response for documents from departmental and employee files pertaining to the FDA's request, dated March 16, 2005, attached hereto as Exhibit B.  In said request, the FDA asked that Defendants evaluate "possibly suicide related" adverse events during gabapentin clinical trials.

Plaintiffs believe that Defendants' response pertaining to this agreement is incomplete, particularly in light of the Defendants' decision to submit to the Food & Drug Administration a "Changes Being Effected" supplemental new drug application, dated December 21, 2005, submitted under section 505(b) of the Federal Food, Drug, and Cosmetic Act for Neurontin. This label change added the terms suicide attempt and suicide in the section titled **Other Adverse Events Observed During All Clinical Trials**. Plaintiffs believe Defendants have not provided a complete response for documents from departmental and employee files pertaining to the above label change.

Defendant Position:

---

Request 15:

State whether or not any changes have been made in the labels, labeling or other printed matter accompanying Neurontin since its introduction on the market, and if so:

- Explain in detail when and why each change, addition, deletion or alteration was made;
- State who, if anyone, required each such change to be made;
- State the purpose, or intended purpose, to be accomplished by each such change;
- Provide a copy of each label or other printed matter accompanying Neurontin.

Response to 15:

Agreement:

**By letter, May 3, 2005, the parties agreed that Defendants would provide documents from the regulatory affairs department relating to any changes to the Neurontin label, not limited to suicide, after the production of databases. To the extent that such documents are also found in employee or departmental files, Defendants agreed to produce such documents after production of the databases. See Exhibit B.**

Plaintiff Position:

Defendants should identify what databases remain outstanding so that the parties have an understanding as to when documents consistent with the parties' agreement shall be provided to Plaintiffs.

Plaintiffs believe that Defendants' response pertaining to this agreement is incomplete because Defendants have not provided a complete response for documents from departmental and employee files pertaining to the FDA's request, dated March 16, 2005, attached hereto as Exhibit B. In said request, the FDA asked that Defendants evaluate "possibly suicide related" adverse events during gabapentin clinical trials.

Plaintiffs believe that Defendants' response pertaining to this agreement is incomplete, particularly in light of the Defendants' decision to submit to the Food & Drug Administration a "Changes Being Effected" supplemental new drug application, dated December 21, 2005, submitted under section 505(b) of the Federal Food, Drug, and Cosmetic Act for Neurontin. This label change added the terms <u>suicide attempt</u> and <u>suicide</u> in the section titled **Other Adverse Events Observed During All Clinical Trials**. Plaintiffs believe Defendants have not provided a complete response for documents from departmental and employee files pertaining to the above label change.

Defendant Position:

---

Request 16:

State whether or not you have ever mailed to physicians a "Dear Doctor" or "Dear Healthcare Professional" letter or warning letter or any type of direct letter to doctors other than promotional pieces, regarding Neurontin, and if so state:
- The dates when each such letter or report was prepared;
- The dates when such letters were mailed;
- The content of such correspondence: and
- The reason for such communication.
- Provide a copy of any such documents mailed since 1983.

Response to Request 16:

Agreement:

**The parties agreed, as of May 3, 2005, that Defendants would produce <u>any</u> "Dear Doctor" letters relating to Neurontin, not limited to suicide, by May 16, 2005,**

**and by Defendants' production of databases. See defense counsel's correspondence, attached hereto as Exhibit B, paragraph 16.**

Plaintiff Position: "Dear Doctor" letters may consist not only of those documents from within the Defendants' Merlin/Phoenix databases, but they consist also of any "Dear Doctor" letters provided by the defendants to others on an unsolicited basis or as part of any "educational service" by Defendants. Defendants' response is incomplete.

Defendant Position:

*The following Request is brought to the Court's attention to reflect the parties agreements as to documents from Sales & Marketing databases:*

Request 19:   Provide all notes, memorandum, reports, minutes or other documents relating to Neurontin from 1983 to the present from the following committees or divisions:

             . . .

             15.     Global Safety Surveillance and Epidemiology
             16.     Marketing
             17.     Strategic Marketing
             . . .

             20.     Market Research
             21.     Sales Training and Management Development
             22.     Public Relations
             23.     Global Strategic Marketing

Response to 19:

Agreement:   **The parties have previously agreed that Defendants would produce *Sales and Marketing* databases without imposing any geographic restriction and consistent with the Hon. Jed Rakoff's Order, dated April 25, 2005. See defense counsel's correspondence, attached hereto as Exhibit B. See Order attached hereto as exhibit C.**

Plaintiff Position:
    Defendants have identified, but not have not yet produced  their complete CMMS sales call database. Defendants should identify and produce any other databases consistent with the parties agreement.

Plaintiffs believe that documents reflecting Sales Tracking data, IMS, Visitor Speakers Bureau (VSB) information, physician attendee lists, and payment information associated with same should be produced in accordance with the Defendants' agreement to produce *Sales and Marketing* databases without geographic restriction.

By letter, May 11, 2005, Defendants, in *In Re Neurontin* federal litigation, agreed to "produce databases, if any relating to the visitors speakers bureau." See exhibit A.

Thereafter, on October 19, 2005, Defense counsel memorialized in writing various charts (very much like those here) in which defense counsel agreed to produce documents sufficient to identify the physicians (and their address to the extent available in a database) who were members of the Speaker's Bureau from 1994 through 2004. Specifically, this agreement was set forth in the context of Plaintiff's Request for Production, dated April 28, 2004, #176, in the New York State action of <u>Young v. Pfizer</u>, and is detailed more fully below.  Notwithstanding Defendants' agreement to provide said databases relating to the Visitors Speakers Bureau (VSB), Plaintiffs believe Defendants' response is incomplete.

<u>Defendant Position:</u>

## The New York Litigation

On or about October 19, 2005, the parties submitted to the Supreme Court State of New York (Orange County), multiple exhibits reflecting the parties' agreements and positions pertaining to Plaintiff's discovery demands. Attached please find the Affirmation of defense counsel, James Murray, at Exhibit D in this regard.  Plaintiffs herein provide for this Court pertinent agreements and positions from the New York State litigation that Plaintiffs believe should be binding upon the Defendants herein.  The Agreements were subsequently "So Ordered" by the Hon. Stewart Rosenwasser (Supreme Court, Orange County).

The failure to include below all the Agreements and positions herein is merely because  Plaintiffs are focusing on those issues that Plaintiffs believe must be resolved immediately so as to move forward with discovery in an efficient manner.

III.    **Plaintiffs' Requests for Production, dated April 28, 2004, served in Young v. Pfizer, Supreme Court, State of New York.**

<table>
<tr><td>

Request 81:

      a.     All documents relating or referring to medical seminars, conferences or lectures, conducted by or sponsored in whole or in part by defendants, or in which defendants or any of their agents participated regarding Neurontin;

      b.     All materials displayed, relied upon or distributed by defendants at any of the above-referenced medical seminars, conferences or lectures.

</td></tr>
<tr><td>

Response to Number 81:

In addition to the General Objections, the Company objects to Request Nos. 81(a) – (b) on the grounds that the requests are overly broad and unduly burdensome, because they are not limited to the use of Neurontin for bipolar disorder, or in time period or geographic region, and in particular, are not limited to "medical seminars, conferences, or lectures" attended by the physician who prescribed Neurontin to Plaintiff.

</td></tr>
<tr><td>

Agreement:

      Defendant will produce any documents relating to meetings attended through October 9, 2002 by:

- Plaintiff's prescribing physician;

- physician(s) who treated Plaintiff during time he was on Neurontin;

- physician(s) who discussed Neurontin with the prescribing physician and that the prescribing physician relied on.

</td></tr>
</table>

Plaintiff Position:

**Application to MDL: Plaintiffs believe that Defendants should not be able to limit documents responsive to this request to those physicians corresponding to an individual plaintiff. The above agreement in the <u>Young</u> action reflects Defendants' continued position that discovery of certain sales and marketing documents should be limited on an individual case-by-case basis as opposed to Plaintiffs' position that such discovery should be on a nationwide basis.**

**Plaintiffs' request is not without limitation. Defendants should make a diligent search for records responsive to this request, and if Defendants want limitations on the sources to where they must search for responsive documents, then Defendants should propose departments, individuals, or centralized locations where responsive documents may exist and to where they are willing to search.**

Defendant Position: Defendant does not believe Plaintiff should be able to compel Defendants to search for documents relating to all meetings relating to Neurontin, with no limitation, where none of the physicians relating to Plaintiff attended such meetings.

---

Request 96:  Records wherein defendants tracked whether, and the degree to which, doctors prescribed Neurontin.

Response to Number 96:

In addition to the General Objections, the Company objects to Request No. 96 on the grounds that it is overly broad and unduly burdensome because it is not limited to the physician who prescribed Neurontin to Plaintiff and because it is not limited in time period and geographic region. The Company further objects on the grounds that it is not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Agreement: As set forth in the response to the Aug. 18 Request, Defendants will produce any documents through 10/9/02 relating to the tracking of prescriptions of:

- Plaintiff's prescribing physician;

- physician(s) who treated Plaintiff during time he was on Neurontin;

- physician(s) who discussed Neurontin with the prescribing physician and that the prescribing physician relied on.

Plaintiff Position:

**Application to MDL: Plaintiffs believe that Defendants should not be able to limit documents responsive to this request to those physicians corresponding to an**

individual plaintiff.  **The above agreement in the <u>Young</u> action reflects Defendants' continued position that discovery of certain sales and marketing documents should be limited on an individual case-by-case basis as opposed to Plaintiffs' position that such discovery should be on a nationwide basis.**

   **Plaintiffs' request is not without limitation.  Defendants should make a diligent search for records responsive to this request, and if Defendants want limitations on the sources to where they must search for responsive documents, then Defendants should propose a broader range of departments, individuals, or centralized locations where responsive documents may exist and to where they are willing to search.**

<u>Defendant Position:</u> Defendant does not believe Plaintiffs should be able to compel Defendants to search for documents relating to all prescription tracking relating to Neurontin, for physicians having nothing to do with a particular Plaintiff.

---

<u>Request Number 104:</u>

Internal documents regarding the promotion of Neurontin for off-label uses.

<u>Response to Number 104:</u>

In addition to the General Objections, the Company objects to Request No. 104 on the grounds that it is argumentative and is unworkable as a request for the production of documents.  The Company further objects on the grounds that it is duplicative of other requests, and it is overly broad because it is not limited to the physician who prescribed Neurontin to Plaintiff, to the time period before Neurontin was prescribed to Plaintiff, nor to the use of Neurontin for bipolar disorder.

<u>Agreement:</u> Defendants will produce any documents relating to off-label uses of Neurontin from the files of sales representatives, district managers, and medical liaisons as set forth in the response to the Aug. 18 Request. **Defendants also agreed to produce "the documents from the files of the person from marketing who sat on the interdisciplinary committee." (p.3, 11/17/05 Conference Proceedings)**

<u>Plaintiff Position:</u> Plaintiff believes Defendant should produce all documents relating to off-label uses of Neurontin, with no limitations, through October 9, 2002.

**Application to MDL:  But for Defendants' offer to produce documents from the files of the person from marketing who sat on the interdisciplinary committee (Product Manager),  Plaintiff believes Defendants should produce documents from a broader range of individuals.  The Aug 18 Request limits responsive documents to only those circumstances where sales representatives, district managers and medical liaisons had contact with an individual plaintiff's healthcare provider.**

Defendants should identify the individual from marketing who sat on the interdisciplinary committee.

**Defendant Position:** Defendant does not believe Plaintiff should be able to compel Defendants to search for all internal documents relating to off-label uses of Neurontin, having no connection to Plaintiff, from the files of hundreds, if not thousands, of employees.

---

Request Number 109:

A listing of all articles produced by Medical Education Systems for the defendants which discuss the off-label use of Neurontin, including full title, author, journal[s] in which the article was published, volume number, month and year of publication.

Response to Number 109:

In addition to the General Objections, the Company objects to Request No. 109 on the grounds that it is overly broad and unduly burdensome in that it is not limited to the use of Neurontin for bipolar disorder and is not limited to articles received by the physician who prescribed Neurontin to Plaintiff in the time period before the physician prescribed Neurontin to Plaintiff, and that it therefore seeks documents not relevant to this action.

**Agreement:** Defendants have produced documents relating to Medical Education Systems relating to Neurontin. **Defendants also agreed to determine if Medical Education Systems was paid any money for any services relating to Neurontin after 12/31/98 and before October 2002 (p.5, 11/17/05 Conference Transcript).**

**Plaintiff Position:** Plaintiff believes Defendant should produce a list of Medical Education Systems articles between 1993 and October 9, 2002.

**Application to MDL: Plaintiffs believe that Defendants should provide documents relating to Medical Education Systems after 12/31/98 through the date of the last alleged suicide or suicide attempt as claimed by an MDL Plaintiff.**

**Defendant Position:** Defendants believe that since there is no connection between Medical Education Systems and Plaintiff, Defendants should not be required to search the files of all sales and marketing personnel for such documents.

| |
|---|
| Request No. 1: |
| Any contracts between defendants and Proworx that relate to Neurontin. |
| Response to Request No. 1: |
| In addition to the General Objections, the Company objects to Request No. 150 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. |
| Agreement |
| Defendants have produced documents relating to Proworx by Defendant relating to Neurontin. |
| Plaintiff Position |
| Plaintiff believes Defendant should produce contracts between 1993 and October 9, 2002.<br><br>**Application to MDL: Defendants should produce such documents through the date of the last alleged suicide or suicide attempt.** |

Request Number 158:

Programs held out to be Continuing Medical Education seminars wherein off-label uses of Neurontin were addressed and/or discussed.

Response to 158:

In addition to the General Objections, the Company objects to Request No. 158 on the grounds that it is overly broad, unduly burdensome, and not relevant to this action because it is not limited to bipolar disorder and it is not limited to Continuing Medical Seminars attended by the physician who prescribed Neurontin to Plaintiff.

Agreement

Defendant will produce any documents relating to meetings attended through October 9, 2002 by:

- Plaintiff's prescribing physician;

- physician(s) who treated Plaintiff during time he was on Neurontin;

- physician(s) who discussed Neurontin with the prescribing physician and that the prescribing physician relied on.

Plaintiff Position

Plaintiff believes Defendant should produce all documents relating to Continuing Medical Education seminars, with no limitations, through October 9, 2002.

**Application to MDL: Defendants should produce such documents through the date of the last alleged suicide or suicide attempt. Plaintiffs' request is not without limitation. Defendants should make a diligent search for records responsive to this request, and if Defendants want limitations on the sources to where they must search for responsive documents, then Defendants should propose a broader range of departments, individuals, or centralized locations where responsive documents may exist and to where they are willing to search.**

Defendant Position

Defendant does not believe Plaintiff should be able to compel Defendants to search for documents relating to all meetings relating to Neurontin, with no limitation, having no connection to Plaintiff or Plaintiff's physicians.

Request Number 159:

Documents reflecting defendants' involvement in the selection of attendees, the selection of speakers, the selection of presentation topics and the content of the presentations made at such Continuing Medical Education seminars.

Response to 159:

In addition to the General Objections, the Company objects to Request No. 159 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information because it is not limited to bipolar disorder and it is not limited to Continuing Medical Seminars attended by the physician who prescribed Neurontin to Plaintiff.

Agreement

Defendant will produce any documents relating to meetings attended through October 9, 2002 by:

- Plaintiff's prescribing physician;

- physician(s) who treated Plaintiff during time he was on Neurontin;

- physician(s) who discussed Neurontin with the prescribing physician and that the prescribing physician relied on.

Plaintiff Position

Plaintiff believes Defendant should produce all documents relating to Continuing Medical Education seminars, with no limitations, through October 9, 2002.

**Application to MDL: Defendants should produce such documents through the date of the last alleged suicide or suicide attempt. Plaintiffs' request is not without limitation. Defendants should make a diligent search for records responsive to this request, and if Defendants want limitations on the sources to where they must search for responsive documents, then Defendants should propose a broader range of departments, individuals, or centralized locations where responsive documents may exist and to where they are willing to search.**

Defendant Position

Defendant does not believe Plaintiff should be able to compel Defendants to search for documents relating to all meetings relating to Neurontin, with no limitation, having no connection to Plaintiff or Plaintiff's physicians.

Request Number 162:

Records reflecting the tracking by defendants of the consultants' Neurontin prescription writing practices after attending Continuing Medical Education seminars.

Response to 162:

In addition to the General Objections, the Company objects to Request No. 162 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information because it is not limited to bipolar disorder and it is not limited to Continuing Medical Seminars attended by the physician who prescribed Neurontin to Plaintiff.

Agreement

Defendant will produce any documents relating to meetings attended through October 9, 2002 by:

- Plaintiff's prescribing physician;

- physician(s) who treated Plaintiff during time he was on Neurontin;

- physician(s) who discussed Neurontin with the prescribing physician and that the prescribing physician relied on.

Plaintiff Position

Plaintiff believes Defendant should produce all documents relating to Continuing Medical Education seminars, with no limitations, through October 9, 2002.

**Application to MDL: Defendants should produce such documents through the date of the last alleged suicide or suicide attempt. Plaintiffs' request is not without limitation. Defendants should make a diligent search for records responsive to this request, and if Defendants want limitations on the sources to where they must search for responsive documents, then Defendants should propose a broader range of departments, individuals, or centralized locations where responsive documents may exist and to where they are willing to search.**

Defendant Position

Defendant does not believe Plaintiff should be able to compel Defendants to search for documents relating to all meetings relating to Neurontin, with no limitation, having no connection to Plaintiff or Plaintiff's physicians.

Request Number 164:

Any follow-up memorandum and/or reports to defendants' marketing officials or other employees regarding the content of the presentations with respect to the promotion of off-label uses of Neurontin and the pledges made by attendees to order more Neurontin for their patients.

Response to 164:

In addition to the General Objections, the Company objects to Request No. 164 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information because it is not limited to Continuing Medical Seminars attended by the physician who prescribed Neurontin to Plaintiff. The Company further objects on the grounds that the phrases "the presentations" and "attendees" are vague and ambiguous.

Agreement

Defendant will produce any documents relating to meetings attended through October 9, 2002 by:

- Plaintiff's prescribing physician;

- physician(s) who treated Plaintiff during time he was on Neurontin;

- physician(s) who discussed Neurontin with the prescribing physician and that the prescribing physician relied on.

Plaintiff Position

Plaintiff believes Defendant should produce all documents relating to Continuing Medical Education seminars, with no limitations, through October 9, 2002.

**Application to MDL: Defendants should produce such documents through the date of the last alleged suicide or suicide attempt. Plaintiffs' request is not without limitation. Defendants should make a diligent search for records responsive to this request, and if Defendants want limitations on the sources to where they must search for responsive documents, then Defendants should propose a broader range of departments, individuals, or centralized locations where responsive documents may exist and to where they are willing to search.**

Defendant Position

       Defendant does not believe Plaintiff should be able to compel Defendants to search for documents relating to all meetings relating to Neurontin, with no limitation, having no connection to Plaintiff or Plaintiff's physicians.

Request Number 176:

A listing of the speakers who comprised the Speaker's Bureau from 1994 through 2004, including full name and address.

Response to 176:  In addition to the General Objections, the Company objects to Request No. 176 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, in that it is not limited to the physician who prescribed Neurontin to Plaintiff.  The Company further objects that this request is overly broad in the time period it covers and that it is not confined to Neurontin-related information.

Agreement:  Defendant will produce documents sufficient to identify the physicians (and their address to the extent available in a database) who were members of the Speaker's Bureau.  This agreement satisfies this request.

Plaintiff Position:  **Defendants have not provided a listing of such speakers through 2004.  Rather, Defendants provided limited responsive documents through 2000 regarding "New York physicians who spoke at speakers' bureau meetings.  (See defense counsel correspondence, dated 2/28/06, attached hereto as exhibit E).**

Defendant Position:

IV.      **Plaintiffs' Request for Production, dated April 22, 2005, served in the New York State Action of Young v. Pfizer**

Request Number 1:

       All documents authored by, created by, edited by, received by, reviewed, read, copied on, or in the custodial files of any current or former employee, consultant or agent of Defendants, including all emails and electronic communications relating to Neurontin.  This request specifically (but is not limited to) the custodial files for the following individuals.

Altevoght, Rudi; Albright, Tom; Aquno, Mary Lou; Attias-Yon Beth; Bal, Adrian; Becker, Bill; Biddell,

Rubin; Binetti, Barbara; Black, James; Bros, John; Brandicourt, Oliver; Britt, David; Brumfeld, Martha; Castro, O. Lucy; Ciociola, Art; Clary, Katherin; Conde, Vivian; Crestwell, Ronnie; Cristo, Steve; Crook, Alan; Cueba-Jones, Carol; Davis, David; Delimenta (or Delimotta), Victor; Delong, R.; Devink, Ludwig; Diamond, K.; Dieck, Gretchen; Digiorgi, Matthew; Donavan, Terry; Duda-Rack, Helen; Ek, Carol; Farese, Debra; Feczko, Joseph; Feldman, Felicia; Fiero, Larry; Fitzhenry, Paul; Fogelman, Lee Ann; Ford, John; Fraser, Charles; Grafolo, Eliazabeth; Garrity, Andrea; Gorga, Tom; Grady, Richard; Groth, Janice; Guary, Raphael; Guerrero, Edda; Hall, Janice; Harrigan, Edmond; Haskins, Bryant; Higgins, Chris; Jankowski, J.; Jankowskiass, Jyoti; Jaris, Al; Johnson, Laura; Katen, Karen; Kivez (or Kivel), Francine; Knoop, John; Kohler, Nancy; Krayacich, John; Krucker, John; Laesecke, M.D., Klaus; LaMattina, John; Lang, L.; Lankler, Doug; Laudieri, Lisa; Lessauer, Kelly; Long, Dave; Magistro, Phil; Magnus Miller, Leslie; Marcoux, Frank; Martin, I.; Martin, Ron; Martin, Tammy; Mccorry, Hank; Mckinnel, Hank; Menella, Robert; Merino, Wililam; Meyers, Sharle; Milke, Margaret; Miller, Chris; Moffit, R.; Molina, Esperanza; Montgomery, John; Montgomery, John; Morales, Mark; Mosebrook, Mick; Murphy, David; Murphy, David; Natilicchio, Terry; Nitschmann, Paul; Padel, Ajul; Parker, James; Parsons, Bruce; Patel, Manini; Pearce, Alexandra; Perlow, Larry; Petchel, Kasia; Picciano, Eugene; Pierce, Mark; Pieroni, Joseph; Pignataro, Frank; Quadrigajus, Pedro; Rafferty, Michael; Reichenburger, Patrick; Renshaw, Maurice; Repp, Kim; Rizzo, Jackie; Rocchi, John; Rose-Igatt, Andrea; Rubsenstein, Allen; Salatek, Doug; Saltel, Doug; Saundes, Bernie; Schaumberg, J.; Shellenberger, K.; Sigmund, Bill; Slater, Lee; Spalding, Art; Steinholz, Anne; Suskin, Helen; Tarnok, Mike; Teicher, Martin; Treado, M.; Trudeau, V.; Turner, Janet; Ultich, Linda; Valentino, Michael; Vales, Angela; Vega, Adrien; Walker, Alan; Weiss, Richard; Wild, Anthony; William, Sigmund; Williams, Brabara; Windom, Tim; Yoder, Meg; Zurlo, Grazia

Response to Number 1:

In addition to the General Objections, Defendant objects to Request No. 1 on the grounds that the Request is overly broad and unduly burdensome, including by requesting "all" documents "authored by, created by, edited by, received by, reviewed, read, copied on, or in the custodial files" of "any" current or former employee relating to Neurontin without limitation. Defendants further object to the Request on the grounds that it fails to describe the documents sought with sufficient particularity. Defendants further object to the Request to the extent that it seeks documents not limited to Neurontin and not confined to off-label uses of Neurontin. Defendants further object to the Request on the grounds that it is not limited to documents from the relevant time period and is duplicative of other Requests that have been the subject of discussion and agreement between the parties.

Subject to and without waiving the General Objections and the foregoing Specific Objections, Defendants will produce, at a mutually convenient time and location, documents, to the extent they exist, from the files of those persons responsible for the marketing of Neurontin, relating to the off-label uses of Neurontin through December 31, 1998.

Agreement:

Defendants will produce documents that Defendants have agreed to produce (in response to all of Plaintiffs eight document requests) from the custodial files of the employees responsible for Neurontin from the clinical, medical, regulatory, risk management analysis and safety surveillance departments by January 31, 2006. Defendants will undertake to produce the custodial files in three roughly equal monthly installments: by

the end of November, the end of December, and the end of January.

Defendants will produce the remaining documents that Defendants have agreed to produce in response to all of Plaintiff's eight requests by February 28, 2006. Defendants will identify each person from whose files documents are being produced for each custodial file.

Plaintiff Position:

Defendants' production of documents from the files of those persons responsible for the marketing of Neurontin, relating to the off-label uses of Neurontin, should not be limited to December 31, 1998.

Defendants production of documents from the custodial files of employees in clinical, medical, regulatory, risk management analysis and safety surveillance departments remains incomplete. Plaintiffs believe that Defendants should identify the remaining individuals set forth in the above request from whom they do or do not intend to seek responsive documents.

Defendant Position:

Request Number 4:

Documents reflecting the full name and last known address of any individuals who have or continue to be members of the "Review Committee" at any time that Pfizer sponsored a promotional talk involving Neurontin. Your attention is referenced to the testimony of Suzanne Doft on March 29, 2005:

A.    *Pfizer – the – the promotional talk is approved by the Review Committee . . . . – Pfizer would author and then approve through Review Committee. (p. 125).*

Response to Request Number 4:

In addition to the General Objections, Defendants object to Request No. 4 on the grounds that it is not limited to the off-label uses of Neurontin and is overly broad as written. Defendants further object to the Request to the extent it seeks information from outside of the relevant time period. The Company further objects on the grounds that this information is better sought through a different discovery device.

Agreement:

Defendants will identify the members of this committee, which will satisfy this request.

Plaintiff Position:    Defendants have not yet identified the members of this Committee, and to the extent Defendants maintain that said members have been identified, then Plaintiffs request that Defendants identify the bates numbers associated with the

documents responsive to this request.

Defendant Position:

---

Request Number 7:

The database known as KOL Connect which keeps track of key opinion leaders, and articles they have written, to the extent that any such information pertains to Neurontin, as identified by Suzanne Doft during her examination under oath on March 29, 2005.

*Q. Do you make use of databases in Marketing? A. I make use of our internal databases. ….A. The one that would think of is something called KOL Connect. A. It keeps track of our key opinion leaders, and articles they have written. (p. 174).*

Response to Number 7:

In addition to the General Objections, Defendants object to Request No. 7 on the ground that it is overly broad as written and seeks documents from outside of the relevant time period and is not limited to information relating to the off-label use of Neurontin. Defendants further object to Request No. 7 to the extent it requests the entire database and to the extent it seeks documents already produced by Defendants during discovery or requests documents Defendants have previously agreed to produce.

Agreement:

Defendant will produce that portion of the database that predates October 9, 2002. This agreement will satisfy this request.

Plaintiff Position:  Defendants should produce responsive portions of the database through 2005, and thereafter through the date of the latest alleged suicide or suicide attempt involving a plaintiff who has filed an action against Defendants.

Defendant Position:

---

Request Number 14:

Documents, if any, reflecting the subject matter of the consulting assignment for Pfizer performed by Dr. Cynthia McCormick as described in the San Francisco Chronicle on April 21, 2005:  "This is not an unexpected event in the population it was approved for,' said McCormick, who did a brief consulting assignment for Pfizer about a year ago."

Response to Number 14:

In addition to the General Objections, Defendants object to Request No. 14 to the extent it seeks information better obtained through a different discovery device.  Defendants further object to Request No. 14 on the ground that it is not limited to documents from

the relevant time period and to the extent that it seeks documents not limited to Neurontin.

Agreement: Defendants will agree to determine whether Ms. McCormick was retained by Pfizer as a consultant, and the remainder of the request is deferred.

Plaintiff Position: Defendants have yet to provide a response to this request.

Defendant Position:

Request Number 18:

Documents reflecting the full name and last known address of any individuals who have been or continue to be members of the multidisciplinary "Team," as it pertains to Neurontin and as described by Steve Cristo during his examination under oath on February 17, 2005. Your attention is referenced in part to his testimony:

A. *There's a team within Safety that evaluates any safety data that comes in.*

Q. *And for what purpose does the Regulatory Affairs Department sit on the team to evaluate safety data?*

A. *To be part of the multi-disciplinary process, and if it does warrant a label change, the label change would be communicated through official correspondence to the FDA.  (p. 148).*

Response to Number 18:

In addition to the General Objections, Defendants object to Request No. 18 on the grounds that is overly broad as written in seeking information for "any individuals." Defendants further object to the Request to the extent it seeks information not limited to Neurontin. The Company further objects on the grounds that this information is better sought through a different discovery device.  Defendants further object to the Request on the ground that it is duplicative of other Requests that have been the subject of discussion and agreement between the parties.

Subject to the foregoing objections, Defendants agree to produce, on a mutually agreeable schedule, documents sufficient to identify those individuals at Pfizer responsible for the Neurontin label.

Agreement:

Defendants will identify the individuals on the team, which will satisfy this request.

Plaintiff Position:  Defendants have not yet identified the members of this Team, and to the extent Defendants maintain that said members have been identified, then Plaintiffs request that Defendants identify the bates numbers associated with the documents responsive to this request.

Defendant Position:

---

Request Number 19:

Documents reflecting the full name and last known address of any individuals who have or continue to be members of the Review Committee described by Steve Cristo during his examination under oath on February 17, 2005.  Your attention is referenced in part to his testimony:

*A.  In general, I mentioned that the review committee would be – would – would review the letter, and the Review Committee is Medical, Marketing, Legal and Regulatory, determine the – the merit of the letter, and make a determination and recommendation to the senior management in those line functions, and make a determination on how the company will respond.  (p. 179).*

Response to Number 19:

   In addition to the General Objections, Defendants object to Request No. 19 on the grounds that is overly broad as written in seeking information for "any individuals." Defendants further object to the Request to the extent it seeks information not limited to Neurontin.  The Company further objects on the grounds that this information is better sought through a different discovery device.  Defendants further object to the Request on the ground that it is duplicative of other Requests that have been the subject of discussion and agreement between the parties.

   Subject to the foregoing objections, Defendants agree to produce, on a mutually agreeable schedule, documents sufficient to identify those individuals at Pfizer responsible for the Neurontin label.

Agreement:

Defendants will identify the members of this committee, which will satisfy this request.

---

Plaintiff Position:   Defendants have not yet identified the members of this Committee, and to the extent Defendants maintain that said members have been identified, then Plaintiffs request that Defendants identify the bates numbers associated with the documents responsive to this request.

Defendant Position:

Request Number 21:

Documents reflecting the full name and last known address of any individuals who have or continue to be members of the Safety Review Group described by Steve Cristo during his examination under oath on February 17, 2005.  Your attention is referenced in part to his testimony.

*Q.  Similarly to the period report, does the increased frequency report go through Regulatory before going to the FDA?*

*A.  As part of the Safety Review Group, Regulatory participates in that review, and would be aware of it.  (p. 215).*

Response to Number 21:

In addition to the General Objections, Defendants object to Request No. 21 on the grounds that is overly broad as written in seeking information for "any individuals." Defendants further object to the Request to the extent it seeks information from outside of the relevant time period and is not limited to Neurontin.  The Company further objects on the grounds that this information is better sought through a different discovery device. Defendants further object to the Request on the ground that it is duplicative of other Requests that have been the subject of discussion and agreement between the parties.

Agreement: Defendants will identify the members of this committee, which will satisfy this request.

Plaintiff Position:

Defendants have not yet identified the members of this Committee, and to the extent Defendants maintain that said members have been identified, then Plaintiffs request that Defendants identify the bates numbers associated with the documents responsive to this request.

Defendant Position:

Request Number 22:

Documents reflecting the full name and last known address of any individuals who have or continue to be members of the "Team" described by Steve Cristo during his examination under oath on February 17, 2005 as making benefit/risk assessments.  Your attention is referenced in part to his testimony.

*A.  Regulatory doesn't necessarily make the benefit/risk assessment.  Those are medical assessments, and Full Development Team clinical people make the assessment.  (p. 234).*

Response to Number 22:

In addition to the General Objections, Defendants object to Request No. 22 on the grounds that is overly broad as written in seeking information for "any individuals." Defendants further object to the Request to the extent it seeks information not limited to Neurontin. The Company further objects on the grounds that this information is better sought through a different discovery device. Defendants further object to the Request on the ground that it is duplicative of other Requests that have been the subject of discussion and agreement between the parties.

Subject to the foregoing objections, Defendants agree to produce, on a mutually agreeable schedule, documents sufficient to identify those individuals at Pfizer responsible for the Neurontin label.

Agreement:

Defendants will identify the members of this committee, which will satisfy this request.

Plaintiff Position: Defendants have not yet identified the members of this Committee, and to the extent Defendants maintain that said members have been identified, then Plaintiffs request that Defendants identify the bates numbers associated with the documents responsive to this request.

Defendant Position:

Request Number 23:

Documents reflecting the full name and last known address of any individuals who have or continue to be members of the Sr. Leadership Team described by Steve Cristo during his examination under oath on February 17, 2005 as making benefit/risk assessments. Your attention is referenced in part to his testimony.

*Q. Who is responsible for determining the facts of each incident? A. It would be the senior leadership team of WRAQA. ...*

*Q. Who is on the senior leadership team? A. The senior vice president, Dr. Edmond Harrigan, each of the site leads, the head of Regulatory Operations, the head of Quality Assurance and the Director of Communications.*

Response to Number 23:

In addition to the General Objections, Defendants object to Request No. 23 on the grounds that is overly broad as written in seeking information for "any individuals." Defendants further object to the Request to the extent it seeks information not limited to Neurontin. The Company further objects on the grounds that this information is better sought through a different discovery device. Defendants further object to the Request on the ground that it is duplicative of other Requests that have been the subject of discussion

and agreement between the parties.

Subject to the foregoing objections, Defendants agree to produce, on a mutually agreeable schedule, documents sufficient to identify those individuals at Pfizer responsible for the Neurontin label.

Agreement: Defendants will identify the members of this committee to the extent that they are responsible for Neurontin, which will satisfy this request.

Plaintiff Position: Defendants have not yet identified the members of this Committee, and to the extent Defendants maintain that said members have been identified, then Plaintiffs request that Defendants identify the bates numbers associated with the documents responsive to this request.

Defendant Position:

---

Request Number 27: Documents reflecting the names and last known addresses of any individuals who have or continue to be members of the medical group and or disease management team responsible for deciding Neurontin's assigned therapeutic area, as described by Helen Duda Racki during her examination under oath on February 24, 2005. Your attention s referenced in part to her testimony:

> A. Our therapeutic areas are determined by a medical group that we report to. As so we always align to map the group. So we don't decide the therapeutic area names or where the products fall, we merely mirror the structure that's outlined.
>
> Q. Who makes that decision? A. The disease management teams, I believe. (p. 102).

Response to Number 27: In addition to the General Objections, Defendants object to Request No. 25 on the grounds that it is overly broad as written in seeking information for "any individuals." Defendants further object to the Request to the extent it seeks information from outside of the relevant time period. The Company further objects on the grounds that this information is better sought through a different discovery device. Defendants further object to the Request on the grounds that is duplicative of other Requests that have been the subject of discussion and agreement between the parties.

Agreement: Defendants will attempt to locate documents sufficient to show the designation of Neurontin as belonging to a particular therapeutic area, if any, and this will satisfy this request.

Plaintiff Position: Defendants have not yet produced documents sufficient to show the designation of Neurontin as belonging to a particular therapeutic area, and to the extent Defendants maintain that such documents have been produced, then Plaintiffs request that Defendants identify the bates numbers associated with the documents responsive to this

| request. |
| Defendant Position: |

V. **Plaintiffs' Request for Production, dated May 19, 2005, served in the New York State Action of Young v. Pfizer**

Request Number 1:

All documents authored by, created by, edited by, received by, reviewed, read, copied on, or in the custodial files of any current or former employee, consultant or agent of Defendants, including all emails and electronic communications relating to Neurontin. This request specifically requests (but is not limited to) the custodial files for the following individuals.

Ballina, Myra; Beskenis, Diane; Bluhm-Heise, Denise; Bonetti, Barbara; Cairns, Diane; Claussen, Michelle; Crichton, Yvonne; Davies, Mike; Doft, Suzanne; Dong, Mi; Doyle, Robert; Dymkowski, Joe; George, Tim; Ho, Tina; Howard, John; Kellett, Lisa; Kohler, Nancy; Lardieri, Lisa; Lawlor, Ken; Lewis, Robert; Malone, Andrea Zeucher; Massey, Ken; McFarland, Joe; Merte, Lonia; Mishra, Avanish; Moy, Darryl; Probert, David; Rogan, Rose; Su, Julie; Taylor, Charles; Tive, Leslie; Tomcyzk, Sylvia; Valentino, Michael; Wohlhuter, Claire; Woychick, John; Zorn, Brian

Response to Number 1:

In addition to the General Objections, Defendant objects to Request No. 1 on the grounds that the Request is overly broad and unduly burdensome, including by requesting "all" documents relating to Neurontin without limitation. Defendants further object to the Request on the grounds that by requesting all such documents "authored by, created by, edited by, received by, reviewed, read, copied on, or in the custodial files" of "any" current or former employee, the Request fails to describe the documents sought with sufficient particularity. Defendants further object to the Request to the extent that it seeks documents not limited to off-label uses of Neurontin. Defendants further object to the Request on the grounds that it is not limited to documents from the relevant time period and is duplicative of other Requests that have been the subject of discussion and agreement between the parties.

Agreement:

Defendants will produce documents that Defendants have agreed to produce (in response to all of Plaintiffs eight document requests) from the custodial files of the employees responsible for Neurontin from the clinical, medical, regulatory, risk management analysis and safety surveillance departments by January 31, 2006. There are approximately 36 employees covered by such an agreement, and Defendant will undertake to produce 12 custodial files by the end of November, 12 by the end of December, and the remainder by the end of January.

Defendants will produce the remaining documents that Defendants have agreed to

produce in response to all of Plaintiff's eight requests by February 28, 2006.

Defendants will identify each person from whose files documents are being produced for each custodial file.

Plaintiff Position:  Defendants' production of documents should also include those from the files of those persons responsible for the <u>marketing</u> of Neurontin, relating to the off-label uses of Neurontin, and such documents should not be limited to December 31, 1998.

Defendants production of documents from the custodial files of employees in clinical, medical, regulatory, risk management analysis and safety surveillance departments remains incomplete.  Plaintiffs believe that Defendants should identify the remaining individuals set forth in the above request from whom they do or do not intend to seek responsive documents.

Defendant Position:

---

Request Number 3:

A current copy of Defendants' contract agreement with IMS.

Response to Number 3:

In addition to the General Objections, Defendants object to Request No. 3 on the grounds that it is not limited to documents from the relevant time period.  Defendants further object to the Request on the grounds that "contract agreement" is vague and ambiguous in this context.

Agreement:  Defendants will produce the license agreement with IMS.

Plaintiff Position:  Defendants have not provided the contract consistent with this request.

Defendant Position:

Dated: June 6, 2006

Respectfully Submitted,

**Finkelstein & PARTNERS**

By:     /s/ Andrew G. Finkelstein
        Andrew G. Finkelstein
        Kenneth B. Fromson

        436 Robinson Avenue
        Newburgh, NY 12550
        (845) 562-0203

        *Plaintiffs Products Liability*
        *Steering Committee*