UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
                                                            :    MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                                :
        SALES PRACTICES AND                                 :    Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION                       :
                                                            :    Judge Patti B. Saris
------------------------------------------------------------x
                                                            :    Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                   :
                                                            :
PRODUCTS LIABILITY ACTIONS                                  :
                                                            :
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PRODUCTS LIABILITY PLAINTIFFS' OBJECTIONS TO DEFENDANTS' DEMAND FOR PLAINTIFFS' MEDICAL RECORDS AND CERTAIN INTERROGATORIES

Products Liability Plaintiffs, by their attorneys, Finkelstein & Partners, LLP, hereby respond and object to Defendants' demand that Plaintiffs produce copies of all of Plaintiffs' medical records and other documents for the period 20 years prior to the date of the first occurrence and from the date of the first occurrence up until the date of the request. Plaintiffs also object to Defendants' Interrogatory No. 14, which would necessitate Plaintiffs' interpretation and compilation of information from the medical records of Plaintiffs prepared by healthcare professionals who provided treatment to Plaintiffs, and instead refer Defendants to said records.

### FACTUAL BACKGROUND

Defendants served upon Plaintiffs a First Request for Production of Documents and Things dated May 8, 2006, in which Defendants demanded, as Request No. 1, the

following documents for the period 20 years prior to the date of the first occurrence and from the date of the first occurrence up until the date of the request:

> All medical records, surgical records, mental//emotional health records, x-rays, radiographic films, pathology materials, including but not limited to slides and other tissue samples, or any other records or materials related to any diagnostic or treatment tests or procedures, financial records, bills, invoices, writings, notes or memoranda relating to all of the plaintiff's physical, medical or mental/emotional conditions, illnesses or disabilities, including but no limited to those doctors, nurses, practitioners, hospitals, clinics, institutions or other health care providers or third party private or governmental health or accident insurers, without regard to whether it is the plaintiff's contention that such physical, medical or mental conditions, illnesses, or disabilities were caused in any way by the Defendants or any agent or employee of the Defendants.

Defendants also demanded in Request No. 49 that Plaintiffs produce "a signed original HIPAA-compliant authorization so that Defendants may ensure that a complete production has been made. By requesting an authorization, Defendants do not intend to relieve Plaintiffs of their obligation to produce any documents in your possession, custody or control, including medical records."

Plaintiffs believe that Defendants' medical record production requests are overly broad and burdensome. Moreover, Plaintiffs are amenable to providing copies of relevant medical records of Plaintiffs that are presently in their possession and duly executed authorizations for the release of Plaintiffs' medical records in the possession of healthcare providers who provided relevant healthcare and/or treatment for the timeframe of five (5) years prior to the date that the plaintiff was first prescribed Neurontin or the generic gabapentin or 10 years prior to the date that plaintiff attempted suicide or committed suicide as alleged in the complaint.

Further, Defendants served Plaintiffs with Defendants' First Set of Interrogatories dated May 8, 2006, in which Defendants demanded, as Interrogatory No. 14, the following:

> State the name and addresses of witnesses with knowledge of any and all medications (whether prescription or not) or drugs (whether prescription or not) which Plaintiff took orally, by injection, through ingestion, by suppository or by external application at any time during a twenty-year period prior to his/her death. For each prescription, please also state the name of the prescribing health-care professional, the name of the prescription, the prescription dosage, each date that the prescription was prescribed, where the prescription was filled, the reason for the prescription and whether it was effective at treating the condition for which it was prescribed.

Plaintiffs believe that Defendants' Interrogatory No. 14 is overly broad and burdensome, calls for duplicative discovery and requires Plaintiffs' counsel to compile and create information, which is contrary to the Federal Rules of Civil Procedure. Plaintiffs object to providing such a compilation on the grounds that the preparation of same would also implicate attorney work-product as such a compilation necessarily requires the interpretation of medical records and pharmacy records concerning the treatment provided to Plaintiffs which were prepared by non-parties, namely Plaintiffs' healthcare providers and pharmacies. Moreover, any such review, interpretation, evaluation and compilations prepared by Plaintiffs' counsel in regard to such records would be performed in preparation for the trial of these actions. Once Defendants receive the authorizations from Plaintiffs and obtain the medical and pharmacy records, they will have the opportunity to review same and extract the information which Defendants determine is pertinent.

3

## ARGUMENT

## POINT I

### PLAINTIFFS ARE NOT IN POSSESSION, CUSTODY AND CONTROL OF ALL OF THE MEDICAL RECORDS THAT DEFENDANTS HAVE DEMANDED BE PRODUCED

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, a party to an action may serve a demand on other parties to an action to:

> produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents (including writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detect ion devices into reasonably usable form), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served.

District Courts have differed on the issue of whether a plaintiff, who is not in possession and/or does not have custody of his medical records, has control of the medical records maintained by his physicians and/or medical advisors. *Neal v. Boulder,* 142 F.R.D. 325 (D. Colo. 1992), is a medical malpractice case where the defendants demanded that the plaintiffs' counsel produce documents and signed medical releases for medical records from the plaintiff's treating physicians. The plaintiffs had objected to providing the authorizations which were so broadly worded that they posed the potential for the defendants to have *ex parte* communications with the physicians. The court found that requests for the production of documents were governed by Fed. R. Civ. P. 34 and that the medical records which defendants demanded be produced by the plaintiffs were not in the "care and custody of plaintiffs". However, if the plaintiffs were in possession of copies of any medical records they were obligated to make same available to the

4

defendants for inspection. The court made clear that "Plaintiffs cannot produce medical records over which they do not have control". *Id.* at 327.

Moreover, the court denied the defendants' demand for authorizations to obtain the medical records of the plaintiffs from the treating physicians and advised the defendants that requests for such documents could be obtained from third parties pursuant to the 1991 amendment to Fed. R. Civ. P. 45, by issuing a subpoena *duces tecum* and deposing the non-party, and noted that the plaintiffs did not have "custody of the medical records being sought". *Id.*

Likewise, in *Greene v. Sears, Roebuck & Co.*, 40 F.R.D. 14 (N.D. Ohio 1966), the court found that the plaintiff was not in possession, custody, or control of medical records where the plaintiff did not have copies of the medical records of her treating physicians in her possession. The defendant moved pursuant to Fed. R. Civ. P. 34 to produce and allow inspection and copying of "ALL records, including statements and reports" of all physicians who had treated or examined plaintiff." *Id.* The District Court noted that Rule 34 extended solely to copies of documents which a party had "in his possession, custody, or control". *Id.* at 16. The court denied the defendant's motion in regard to office medical records, finding that "From the record it does not appear, and it seems quite unlikely, that any of the subject office records are now in the possession or custody of the plaintiff or her counsel. Nor could it be said that these office records are under their control.". *Id.*

Similarly, in *Clark v. Vega Wholesale, Inc.*, 181 F.R.D. 470, 472, the defendants moved to compel the plaintiff's execution of a release to obtain medical records under Rule 34. (D. Nev. 1998). The court found that the plaintiff did not have possession of the

5

records and that the relationship between the plaintiff and her physician was "not sufficient to establish control". *Id.* at 472. The court denied the defendant's motion to compel and held that the defendant could obtain copies of the requested documents from the custodian of records just as easily as the plaintiff through the appropriate use of the Federal Rules of Civil Procedure. *Id.*

Although the issue of whether the plaintiff had control of his medical records was not considered, in *Leszynski v. Russ*, where the plaintiff sustained injuries after falling through an unguarded opening in the defendants' vessel, the court did not order that the plaintiff produce copies of the medical records demanded but that the plaintiff was "required to execute the necessary papers to make those records available to defendant and the court would issue any order or subpoena . . ." 29 F.R.D. 10, 13 (D. Md. 1961). Moreover, the court ordered that the expense of furnishing copies of records and reports after the accident to "be borne by the defendant". *Id.*

In the instant case, Plaintiffs are amenable to producing the relevant medical records which are in their possession. However, similar to the plaintiffs in the cases cited above, Plaintiffs in the within matter do not have control over the medical records maintained by the health care providers who treated Plaintiffs. Although Plaintiffs may authorize a healthcare provider to release their medical records to a third party, Plaintiffs do not have any control over, *inter alia*: the content of the health care information retained; whether the entity complies with federally regulated mandates concerning the time period for which the material is retained; whether the entity will comply with the authorization and release the records; whether, if released, the records will be complete; or whether the information contained in the health care information is accurate.

6

Moreover, Defendants have made it quite clear that they are also demanding authorizations for the release of the very same records from the entities who have control of the medical records of Plaintiffs with the intention of obtaining said records in order to verify that Plaintiffs have produced a complete and accurate copy of same. It appears that Defendants have demanded that Plaintiffs produce the actual medical records in question in an effort simply to harass Plaintiffs since Defendants admit they intend to obtain their own copies of the medical records from the providers. Clearly, Defendants' demand that Plaintiffs produce copies of their medical records calls for unnecessary and duplicative discovery and should be denied.

Furthermore, there may be medical records which Plaintiffs did not intend to obtain in pursuit of the prosecution of these actions which Defendants may decide are necessary for their defense against these actions. Why should Plaintiffs be forced to bear the expense of providing copies of documents which they will not utilize in this action? Plaintiffs assert that the most reasonable and expedient method for handling Defendants' demand for the production of medical records would be for Plaintiffs to provide duly executed authorizations for medical records evidencing treatment provided to Plaintiffs that are relevant to the issues of this case during the relevant time periods to Defendants.

Plaintiffs request that this Court find that Plaintiffs do not have control of medical records which are in the possession of the healthcare providers who treated Plaintiffs. Plaintiffs also respectfully request that this Court find that Plaintiffs will have sufficiently complied with their obligations in regard to the production of medical records if Plaintiffs produce all relevant medical records presently in their possession and provide Defendants

7

with duly executed authorizations for the release of Plaintiffs' medical records concerning relevant treatment during the relevant period.

## POINT II

### IN THE ALTERNATIVE, IF THE COURT FINDS PLAINTIFFS HAVE CONTROL OVER THE MEDICAL RECORDS, DULY EXECUTED AUTHORIZATIONS FOR THE RELEASE OF THE RECORDS SHOULD SUFFICE TO SATISFY DEFENDANTS' DEMANDS

Even where District Courts have found that the plaintiffs have control over the medical records, the plaintiffs' production of fully executed releases has been found to have sufficiently satisfied the mandates of Rule 34. In *Greenberg v. United States of America,* in response to the defendant's motion to compel production of medical records through the plaintiff's execution of authorizations for release of said records, and the plaintiff's motion to quash a Rule 45 subpoena, the District Court for the District of Massachusetts found that the plaintiff had "control" although she did not have physical possession of the medical records, due to the fact that she had a legal right to obtain the records. 1990 U.S. Dist. LEXIS 12091 at *9 (D. Mass. 1990). The court did not order the plaintiff to produce copies of the records but instead stated that "it was within the federal court's authority to order plaintiff to execute releases in order to obtain documents which she has a legal right to possess." *Id.*

Similarly, in *Schwartz v. Travelers Ins. Co.,* the defendants moved to inspect and copy the plaintiff's medical records where the plaintiff's counsel had copies of the hospital records but did not have possession of physicians' records. 17 F.R.D. 330 (S.D.N.Y. 1954). Although the court found that the plaintiff exercised control over the records, it did not order that the plaintiff produce same, but instead ordered the plaintiff

8

to "grant permission to the hospital and to the physician to allow defendant to examine and copy the records." *Id.*

Although the demand involved employment records rather than medical records, in *Shaw v. Management & Training Corp.*, the District Court denied the defendant's motion to compel the production of documents and authorizations for the release of the plaintiff's employments records from employers for whom she worked before and after her employment was terminated by the defendant. 2005 U.S. Dist. LEXIS 2348 (D. Kan. 2005). The court found that the relationship between the plaintiff and the prospective employers was not adequate to demonstrate that she had control of the employment records at that particular stage of the discovery process. *Id.* at 7. The court also found that the defendant had not tried to obtain the documents demanded from the non-party custodian of records pursuant to a subpoena. The court ultimately held that "It is only after the individuals or entities object on the grounds of privilege or otherwise fail to produce the documents pursuant to subpoena that the Court will consider a motion requesting (1) the Court compel the entity to produce the documents pursuant to Rule 45; or (2) compel the party to execute appropriate releases pursuant to the Court's general powers to enforce its own orders." *Id.*

Here, Products Liability Plaintiffs have agreed to provide Defendants with authorizations for medical providers and hospitals that have provided relevant treatment to Plaintiffs for the reasonable and relevant time frame of five (5) years prior to the date that the Plaintiff was first prescribed Neurontin, or the generic gabapentin, or ten (10) years prior to the date that the Plaintiff attempted suicide or committed suicide as alleged in the complaint. Further, Plaintiffs have agreed to produce relevant medical records in

9

the possession of Plaintiffs and their attorneys, notwithstanding the fact that these same medical records may be obtained by Defendants themselves through the authorizations which will be provided to Defendants. If, through medical records produced in response to authorizations provided by Plaintiffs, Defendants are able to identify other medical providers who have provided additional relevant treatment to Plaintiffs but whose identities Plaintiffs could not previously recall, Plaintiffs have no objection to providing further authorizations for relevant medical records from such medical providers during the relevant time period. However, at this time, there is nothing more that Plaintiffs are obligated to do under the Federal Rules of Civil Procedure and case law cited *supra*.

### POINT III

### PLAINTIFFS ARE NOT REQUIRED TO PRODUCE COPIES OF THE MEDICAL RECORDS THAT THEY DO NOT HAVE IN THEIR POSSESSION UNDER THE LAW OF THE STATE OF NEW YORK WHERE A MAJORITY OF NEURONTIN CASES HAVE BEEN FILED AND CONSOLIDATED IN NEW YORK COUNTY

"In a personal injury action, a demand to furnish a defendant with written authorizations to obtain copies of the medical records of an injured plaintiff's treating physicians is authorized by the general rules of disclosure set forth in CPLR 3101(a) and an order compelling a plaintiff's treating physicians to provide a copy of their medical records, at a reasonable cost, is authorized by CPLR 3120(b)." *Tower v. Chemical Bank*, 140 A.D.2d 514, 516, 528 N.Y.S.2d 413 (2d Dep't 1988); *see also Diamantstein v. Friedman*, 199 A.D.2d 458, 459, 606 N.Y.S.2d 16 (2d Dep't 1993) ("the defendant could easily have demanded that the plaintiff furnish him with written authorizations to obtain copies of the treating physician's medical records regarding the plaintiff's condition as authorized by CPLR 3101(a)"); *Mendola v. Richmond OB/GYN Assocs.*, 191 Misc. 2d

10

699, 701, 744 N.Y.S.2d 637 (Sup. Ct. Richmond Co. 2002) ("the defense acknowledged that it was aware of the names of the plaintiff's treating doctors well in advance of trial, had been provided with medical authorizations to obtain the plaintiff's medical records from those doctors, and in fact had the plaintiff's medical and hospital records in its possession prior to the start of trial").

The court in *Pagan v. St. John's Prep. Sch.*, 169 Misc. 2d 248, 251-52, 645 N.Y.S.2d 729 (Sup. Ct. Queens Co. 1996), quoting the above quote from *Tower v. Chemical Bank*, 140 A.D.2d 514, noted that "plaintiff has already provided Defendants with access to the records and notes of treating physicians through written authorizations to defense counsel, and granted defendant's motion "to the extent of directing plaintiffs to furnish defendant with copies of the records and documents sought by defendant's several notices to produce and for discovery and inspection, or [emphasis added] properly executed authorizations to obtain such records and documents."

As this Court is well aware, more than two hundred and twenty-five (225) Neurontin cases that were filed in New York State Court have been consolidated for discovery under the auspices of Supreme Court Judge Marcy Friedman. Pursuant to New York caselaw cited above, Plaintiffs' furnishing of written authorizations to defense counsel sufficiently complies with Defendants' discovery demands for medical record production. Plaintiffs therefore further request that this Court find, consistent with New York law, that Plaintiffs' provision of duly executed authorizations for the release of medical records from Plaintiffs' healthcare providers for the relevant time period and for relevant treatment, along with the production of such other relevant healthcare records

Plaintiffs may already have in their possession, will suffice in regard to Defendants demands for the production of medical records.

**POINT IV**

**DEFENDANTS' DEMAND FOR *ALL* OF PLAINTIFFS'
MEDICAL RECORDS, AND OTHER RECORDS, AND
AUTHORIZATIONS FOR RELEASE OF SAME FOR A
20 YEAR PERIOD IS OVERLY BROAD AND BURDENSOME**

Pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 1320d *et seq.*, and the U.S. Department of Health and Human Services Administrative Requirements, 45 C.F.R. § 164.530j(2), as promulgated thereunder, healthcare providers are obligated to retain copies of medical records as follows: "Retention period. A covered entity must retain the documentation required by paragraph (j)(1) of this section for six years from the date of its creation or the date when it last was in effect, whichever is later." District Courts have limited the time period of the medical records permitted to be produced and to the type of medical record according to relevancy.

In *Greene v. Sears, Roebuck & Co.,* Defendants had demanded "*ALL* records, including statements and reports of doctors who have examined and treated the plaintiff at different times." 40 F.R.D. at 15. The court limited the discovery of medical records to "the extent that the records sought may deal with the plaintiff's claim of a herniated intervertebral disc and aggravated arthritis of the lumbo-sacral joint the records would meet the Rule's requirement of relevancy." *Id.*

In *Manessis v. New York City Dep't of Transp.*, a sexual discrimination case where the plaintiff claimed she suffered stress and emotional distress, the defendants' discovery of medical records was limited to the plaintiffs' "mental health treatment

records, whether they are the records of psychiatrists, psychologists, mental health therapists or counselors, or other medical practitioners," and the court found that the defendants were "not entitled to pursue discovery into treatments Manessis may have received for any physical ailments, unless Manessis has first indicated through deposition testimony or other discovery responses that a particular physical ailment or ailments caused him emotional distress during the relevant period." 2002 U.S. Dist. LEXIS 17884 at *7 (S.D.N.Y. 2002).

Moreover, New York State courts have limited the plaintiffs' production of medical records as to time period and relevancy to the injury complained upon. *See Chervin v. Macura*, 2006 N.Y. App. Div. LEXIS (2d Dep't 2006) (Appellate Division limited disclosure in wrongful death action to "past medical records to those records which were related to cardiology, gastroenterology, and obesity treatment and which were only for the five-year period prior to the decedent's death, as the defendants failed to demonstrate that all of the decedent's medical records were material and necessary to the defense of this action," citing CPLR 3101[a], 3121; *Cynthia B. v. New Rochelle Hosp. Med. Ctr.*, 60 N.Y.2d 452, 456-57, 458 N.E.2d 363, 470 N.Y.S.2d 122 (1983); *McLane v. Damiano*, 307 A.D.2d 338, 762 N.Y.S.2d 814 (2d Dep't 2003); *DeStrange v. Lind*, 277 A.D.2d 344, 716 N.Y.S.2d 105 (2d Dep't 2000); *Coddington v. Lisk*, 249 A.D.2d 817, 671 N.Y.S.2d 826 (3d Dep't 1998)).

Here, Defendants have demanded a complete 20 year medical history of Plaintiffs without providing sufficient justification that such a general and overly broad demand is relevant to the salient issues involved in these cases. Moreover, the majority of Defendants' demands in reference to documentation or authorizations pertain to the

overly broad and burdensome 20 year time period. In contrast, Plaintiffs are amenable to providing copies of relevant medical records of Plaintiffs that are presently in their possession and duly executed authorizations for the release of medical records concerning relevant treatment received by each Plaintiff for the reasonable and relevant time frame of five (5) years prior to the date that the Plaintiff was first prescribed Neurontin, or the generic gabapentin or 10 years prior to the date that Plaintiff attempted suicide or committed suicide as alleged in the complaint. Plaintiffs are firm in their conviction that the above time frame, which is considerably longer than the six (6) year federally mandated records retention policy under which health care providers are obligated to retain healthcare records of individuals, is reasonable and will provide Defendants with medical information relative to the issues of this action. Plaintiffs are also firm in their contention that authorizations for records other than medical records demanded by Defendants should not exceed the relevant time frame of five (5) years prior to the date that Plaintiff was first prescribed Neurontin, or the generic gabapentin or ten (10) years prior to the date that Plaintiff attempted suicide or committed suicide as alleged in the complaint.

Regarding the issue of what type of healthcare or medical treatment is relevant to the issues of this case, Plaintiffs proffer that certainly the medical records regarding the underlying condition for which Plaintiffs were prescribed Neurontin or the generic drug gabapentin is relevant to the issues of this case. Furthermore, since the injuries alleged concern suicide or attempted suicide, records regarding any treatment that Plaintiffs received for any psychiatric, psychological records are also pertinent to the issues of these cases. Any treatment provided to Plaintiffs concerning the physical injuries

14

Plaintiffs sustained due to the suicide attempt or death is also relevant to this case. Moreover, Plaintiffs agree that prior medical records from healthcare providers who treated Plaintiffs for any such similar physical injuries for the relevant prior time period are relevant to this case. Plaintiffs are amenable to providing duly executed authorizations for the release of Plaintiffs' records for the aforementioned healthcare treatment provided to Plaintiffs during the five (5) years prior to the date that Plaintiff was first prescribed Neurontin, or the generic gabapentin or ten (10) years prior to the date that Plaintiff attempted suicide or committed suicide as alleged in the complaint.

## POINT V

**PLAINTIFFS ARE NOT OBLIGATED TO COMPILE INFORMATION FROM THE RECORDS PREPARED BY NON-PARTIES WHICH ARE EQUALLY AVAILABLE TO DEFENDANTS, THE PREPARATION OF SUCH A COMPILATION WOULD BE SUBJECT TO ATTORNEY WORK-PRODUCT, AND DEFENDANTS ARE UNABLE TO MAKE A SUBSTANTIAL SHOWING THAT THE INFORMATION CANNOT BE OBTAINED DIRECTLY FROM THE MEDICAL RECORDS**

"It is elementary that a party has no right to require his opponent to make compilations of information when documents containing the material necessary for the compilations are available to the first party." *Leonia Amusement Corp., v. Loew's Inc.,* 18 F.R.D. 503, 507 (S.D.N.Y. 1955); s*ee Winfield v. St. Joe Paper Co.,* 1978 U.S. Dist. LEXIS 18062 (N.D. Fla. 1978) (Court denied motion to compel as duplicative and overly burdensome where answers to interrogatory called for the compilation of a statistical summary of discovery previously provided). In *Triangle Mfg. Co., Inc. v. Paramount Bag Mfg. Co., Inc.,* 35 F.R.D. 540, 543 (E.D.N.Y. 1964), the interrogatories propounded by the defendants, in essence, required that the plaintiff compile the information by the extensive cataloguing of data in its records. The court sustained the plaintiff's objection

to the interrogatory, finding that it would require an "inordinate amount of time and effort" for the plaintiff to compile same and held that records be produced and the defendants could "bear the burden" of collecting and extracting the information required. *Id.* The court explained that "there must be limits beyond which a party should not be required to go; this is particularly true when, as in the instant case, there exists a reasonable alternative to the discovery method employed by the inquiring party". *Id.*

To obtain the work-product of an adverse party the party must make a "substantial showing that he is unable through his efforts to obtain needed information". *Admiral Ins. Co. v. United States District Court for the District of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989). The court explained the purpose of the work-product rule as "The conditional protections afforded by the work-product rule prevent exploitation of a party's efforts in preparing for litigation . . . The effort of a party or his representative in generating information needed for trial generally does not create information that will not be available to others willing to invest similar effort in discovery". *Id.*.

In *Winfield, et al v . St. Joe Paper Co.*, the District Court for the Northern District of Florida denied a motion to compel answers to interrogatories which required that a statistical summary for information already provided through the discovery process. 1978 U.S. Dist. LEXIS 18062 at *2. The court noted that if the interrogatory requested information which was to be compiled by the responding attorneys it was protected under the attorney work product doctrine, Rule 26(b)(3), and noted that work performed by parties in preparation for the trial of the action was also protected from disclosure. *Id.*

Here, Defendants' Interrogatory No. 14, in pertinent part, calls for information in regard to each prescription including, *inter alia,* the name of the prescribing health-care

professional, the name of the prescription, the prescription dosage, each date that the prescription was prescribed, where the prescription was filled, the reason for the prescription and whether it was effective at treating the condition for which it was prescribed." It is reasonable to assume that Plaintiffs, in all probability, cannot recall specific information such as the dates the drugs were prescribed, and therefore, will rely in part on the records and subsequent depositions of physicians who provided them with treatment.

As previously mentioned, Plaintiffs are amenable to providing Defendants with authorizations for the release of medical records and pharmacy records of Plaintiffs for the relevant time period. The medical and pharmacy records of Plaintiffs will therefore be just as available to Defendants as they are to Plaintiffs. Plaintiffs should not be obligated to compile information from these medical and pharmacy records which were prepared by non-party healthcare providers in order to present information in response to an interrogatory propounded by Defendants. In the first instance, the best source of information will not be a compilation of the information prepared by Plaintiffs, but the actual medical and pharmacy records. The compilation of information requested by Interrogatory No. 14 will take an inordinate amount of time and effort due to the fact there will be several different health care providers for each Plaintiff. Moreover, there might be errors made by Plaintiffs in deciphering the handwriting contained in the records and/or there is great room for error in transcribing the dates or names of medicines from the original medical records into a compilation.

Compiling the information that Defendants have demanded through Interrogatory No. 14 will necessarily mean that the medical and pharmacy records prepared by either

physicians or their staff will be reviewed and evaluated by Plaintiffs' attorneys. A majority of the sections of the medicals records are subject to interpretation and therefore, the mental impressions of an attorney undertaking such a review would be included in the response to the interrogatory. Any such review of the medical records is attorney work-product and any compilation would necessarily be in preparation for the ultimate trial of these case.

In regard to the issue of attorney work-product, Defendants cannot possibly meet their burden of a "substantial showing" that Defendants are unable through their own efforts to obtain needed information because Defendants will be in possession of the same medical and pharmacy records. Furthermore, Plaintiffs are in no way obligated to prepare Defendants' case for trial – the provision of relevant authorizations for release the medical records of healthcare providers who treated Plaintiffs and the relevant pharmacy records for the relevant time period should sufficiently fulfill Plaintiffs' obligations in reference to Defendants' Interrogatory No. 14. Defendants should be willing to invest the same efforts as Plaintiffs in preparation of their case for trial and review, interpret and evaluate the medical records received pursuant to the authorizations provided by Plaintiffs.

## CONCLUSION

In view of the above, it is respectfully submitted that the Court should issue an Order finding that Plaintiffs' provision of duly executed authorizations for Defendants to obtain the medical records of Plaintiffs and other documents demanded for the time frame of five (5) years prior to the date that the Plaintiff was first prescribed Neurontin, or the generic gabapentin or 10 years prior to the date that the Plaintiff attempted suicide

or committed suicide as alleged in the complaint sufficiently complies with the medical record production of Rule 34; that the authorizations Plaintiffs provide to Defendants be limited to healthcare treatment received by Plaintiffs in regard to: the underlying condition for which Plaintiffs were prescribed Neurontin or the generic drug gabapentin; records regarding any treatment that Plaintiffs received for any psychiatric, psychological records; any treatment provided to Plaintiffs concerning the physical injuries Plaintiffs sustained due to the suicide attempt or death; and prior medical records from healthcare providers who treated Plaintiffs for any such similar physical injuries for the relevant prior time period is relevant to this case; and that the provision of relevant authorizations for the medical records of healthcare providers who treated the Plaintiff for the relevant time period should sufficiently fulfill Plaintiffs' obligations in reference to Defendants' Interrogatory No. 14.

Dated:  June 9, 2006                              Respectfully submitted,

                                                  FINKELSTEIN & PARTNERS, LLP


                                                  By:   /s/ Andrew G. Finkelstein
                                                        Andrew G. Finkelstein

                                                  436 Robinson Avenue
                                                  Newburgh, NY  12550
                                                  (800) 634-1212

                                                  *Attorneys for Products*
                                                  *Liability Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on June 9, 2006.

Dated: June 9, 2006

/s/ Kenneth B. Fromson
Kenneth B. Fromson