UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------- x
: MDL Docket No. 1629
In re: NEURONTIN MARKETING, :
SALES PRACTICES AND :  Master File No. 04-10981
PRODUCTS LIABILITY LITIGATION :
------------------------------------------------------------- x  Judge Patti B. Saris
:
THIS DOCUMENT RELATES TO: :
:  Magistrate Judge Leo T.
:  Sorokin
PRODUCTS LIABILITY ACTIONS :
:
:
:
:
------------------------------------------------------------- x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
POSITIONS REGARDING TEMPLATE DISCOVERY**

                                                         DAVIS POLK & WARDWELL
                                                         450 Lexington Avenue
                                                          New York, NY 10017
                                                          (212) 450-4000

                                                          HARE & CHAFFIN
                                                          160 Federal Street
                                                          Boston, MA 02110
                                                          (617) 330-5000

                                                          *Attorneys for Defendants Pfizer Inc.*
                                                          *and Warner-Lambert Company*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ........................................................................................................................3

    I.    PLAINTIFFS REFUSE TO PRODUCE RECORDS IN THEIR CUSTODY AND CONTROL AND INSIST UPON AN ARBITRARY TEMPORAL LIMITATION FOR THOSE DOCUMENTS THEY HAVE AGREED TO PRODUCE ....................................................3

    II.    PLAINTIFFS ARE NOT ENTITLED TO THE DISCOVERY OF EVERY DOCUMENT REFERRING TO NEURONTIN ..................................................................................8

    III.    THE PARTIES' AGREEMENTS IN YOUNG V. PFIZER SHOULD NOT NECESSARILY APPLY HERE ..................................10

CONCLUSION ...................................................................................................................12

# TABLE OF AUTHORITIES

## Case

Page

In re Agent Orange Product Liability Litig., 91 F.R.D. 616
(E.D.N.Y. 1981).....................................................................................................................5

Agosto v. Trusswal Systems Corp., 142 F.R.D. 118 (D. Pa. 1992).......................................4

Arthur v. Atkinson Freight Lines Corp., 164 F.R.D. 19
(S.D.N.Y. 1995).....................................................................................................................6

Caldwell v. Center for Correctional Health and Policy Studies, Inc.,
No. CIV. A. 03-1464 GK/JMP, 2005 WL 1313507 (D.D.C. June 02, 2005)......................6

Coffin v. Bridges, No. 95-1781, 1995 U.S. App. LEXIS 34729
(4th Cir. Dec. 11, 1995) ......................................................................................................4,6

Gill v. Gilder, 95 Civ. 7933 (RWS), 1997 U.S. Dist. LEXIS 10833
(S.D.N.Y. July 23, 1997) ......................................................................................................3

Greenberg v. United States, Civ. A. No. 89-2390-MC, 1990 U.S. Dist.
LEXIS 12091 (D. Mass. Sept. 7, 1990) ..............................................................................3,5

JB v. Asarco, Inc., 225 F.R.D. 258 (N.D. Okla. 2004).........................................................4

LaBounty v. McCoy, No. CIV. 82-581E, 1991 WL 128735
(W.D.N.Y. July 10, 1991).....................................................................................................6

McGlashan v. Midland Hotel Corp., Civ. A. No. 80-2419-Z,
1983 U.S. Dist. LEXIS 16729 (D. Mass. May 24, 1983)....................................................6

Potter v. West Side Transportation, Inc., 188 F.R.D. 362
(D. Nev. 1999) ......................................................................................................................4

Weaver v. Evans, Case No. 97-1138-FGT,
1997 U.S. Dist. LEXIS 21750 (D. Kan. Dec. 9, 1997).....................................................3,6

## Statutes & Rules

Fed. R. Civ. P. 26..................................................................................................................7

Fed. R. Civ. P. 26(b) ............................................................................................................5

**Page**

Fed. R. Civ. P. 33(d) ...........................................................................................................7

Fed. R. Civ. P. 34(a) ...........................................................................................................5

**Other Authorities**

7-34 Moore's Federal Practice - Civil § 34.14 & n.30 ......................................................5

Jennifer Wriggins, Genetics, IQ, Determinism, and Torts:
The Example of Discovery in Lead Exposure Litigation
December, 77 B.U. L. Rev. 1025, 1055 & n. 143 (1997) ..................................................4

Mark A. Rothstein, Preventing the Discovery of Plaintiff
Genetic Profiles by Defendants Seeking to Limit Damages
in Personal Injury Litigation, 71 Ind. L.J. 877 (1996) .......................................................4

Defendants Pfizer Inc. ("Pfizer") and Warner-Lambert Company ("Warner-Lambert") (collectively "the Company") respectfully submit this memorandum of law in support of their positions regarding Template Discovery submitted to the Court on June 6, 2006. See Docket Nos. 333 – 36.

## PRELIMINARY STATEMENT

Although many of the sixty-eight Requests for Production and twenty-eight Interrogatories before the Court remain in dispute, most of those disputes fall into a handful of categories.[1] First, plaintiffs seek to limit production to documents in their possession, excluding documents in their custody or control. This position is indefensible and contrary to the Federal Rules of Civil Procedure.

Second, plaintiffs assert that their obligation to produce medical records under their control ends with the provision of medical authorizations to defendants. Plaintiffs' position is nothing less than an abdication of their discovery obligations. The effect of plaintiffs' position is to shift to defendants virtually all of the burdens of locating and collecting medical records.

Third, plaintiffs seek to place an arbitrary temporal restriction on their obligation to produce medical records and authorizations. Specifically, plaintiffs limit production to five years before plaintiff started taking Neurontin or ten years before the occurrence of the injury alleged in the complaint. Were plaintiffs to have their way, defendants would

---

[1] Defendants are prepared to brief each of the templates' separate document requests and interrogatories should the Court so desire. To avoid burdening the Court, and in view of the 20-page limit, this memorandum addresses only recurring issues. Defendants will be prepared at the June 15 conference to address the templates in detail.

not be entitled to medical records relating to prior suicide attempts or psychiatric hospitalizations were they to have occurred prior to these periods.

Fourth, plaintiffs demand *all* documents or records relating to Neurontin. Plaintiffs maintain that the mere mention in a document of the word "Neurontin" is sufficient for that document to be produced. But by that standard, unimaginable amounts of paper and electronic documents would need to be produced that have nothing to do with plaintiffs' claims.

Fifth, plaintiffs assert that all prior agreements stemming from a lawsuit in New York state court should automatically apply here without regard to the burden that would be imposed on defendants. Unlike this litigation, which currently involves 114 plaintiffs and continues to grow, the Young v. Pfizer matter is a single plaintiff lawsuit. Simply put, what may have been practical in connection with that lawsuit does not set the standard for what would be appropriate or reasonable here.

## BACKGROUND

On May 18, 2006, the District Court of Massachusetts held a status conference regarding discovery in the Products Liability Actions, at which time the Court instructed the parties to submit uniform discovery templates and agreements. To the extent disagreements exist, the Court provided that the parties should highlight the disagreements for the Court's consideration and invited memoranda of law to be submitted regarding any disputes. Despite efforts to resolve outstanding discovery disputes embodied in the templates, the parties remain unable to reach consensus.

## ARGUMENT

I.   **PLAINTIFFS REFUSE TO PRODUCE RECORDS IN THEIR CUSTODY AND CONTROL AND INSIST UPON AN ARBITRARY TEMPORAL LIMITATION FOR THOSE DOCUMENTS THEY HAVE AGREED TO PRODUCE**

Notwithstanding the fact that plaintiffs have affirmatively placed their medical conditions at issue by filing their respective lawsuits, they refuse to participate fully in the discovery process relating to their medical histories. Indeed, plaintiffs have taken the position that they will produce only those records in their possession or the possession of counsel, and only for a limited period of time. Plaintiffs' refusal to produce responsive documents in their *custody or control* runs contrary to the Federal Rules of Civil Procedure and relevant case law.

It is axiomatic that when plaintiffs put their medical condition(s) at issue in a lawsuit, their medical records are subject to discovery. See, e.g., Greenberg v. United States, Civ. A. No. 89-2390-MC, 1990 U.S. Dist. LEXIS 12091, *10 (D. Mass. Sept. 7, 1990) (rejecting plaintiff's contention in personal injury case that medical records were irrelevant and ordering their production); Gill v. Gilder, 95 Civ. 7933 (RWS), 1997 U.S. Dist. LEXIS 10833, *8-9 (S.D.N.Y. July 23, 1997) (citing numerous cases in support of the proposition that "[a] plaintiff waives his right to privacy in his medical records when he puts his medical condition at issue in a lawsuit"); Weaver v. Evans, Case No. 97-1138-FGT, 1997 U.S. Dist. LEXIS 21750, *1 (D. Kan. Dec. 9, 1997) ("When a party makes their medical condition an element or factor of their claim or defense, that party has completely waived the physician-patient privilege and all medical records of that party

3

are relevant and discoverable.") (emphasis added);[2] see also Jennifer Wriggins, Genetics, IQ, Determinism, and Torts: The Example of Discovery in Lead Exposure Litigation December, 77 B.U. L. Rev. 1025, 1055 & n. 143 (1997) (recognizing "the basic principle that a personal injury claim brought by an individual places that person's physical and, in some cases, mental condition at issue, thereby waiving whatever confidentiality protections she otherwise has over her medical records", and making those medical records discoverable) (emphasis added); Mark A. Rothstein, Preventing the Discovery of Plaintiff Genetic Profiles by Defendants Seeking to Limit Damages in Personal Injury Litigation, 71 Ind. L.J. 877, 887 (1996) ("Requests for the medical records of personal injury plaintiffs are considered routine and are rarely challenged.").[3] It is equally clear that mental health records are discoverable when plaintiffs place their mental health at issue. See, e.g., Coffin v. Bridges, No. 95-1781, 1995 U.S. App. LEXIS 34729, *1, *6 (4th Cir. Dec. 11, 1995) (upholding dismissal of plaintiffs' claim in personal injury case for failure to produce "mental health care records that could have been relevant to [plaintiffs'] alleged injuries"); Potter v. West Side Transportation, Inc., 188 F.R.D. 362, 363-64 (D. Nev. 1999) (finding mental health records discoverable in personal injury case where plaintiffs "voluntarily put their mental and emotion[al] condition in issue").

---

[2] Even where the medical records in question would reveal particularly sensitive information, plaintiffs must produce those records if they wish to maintain a claim that places their medical condition(s) at issue. See, e.g., Agosto v. Trusswal Systems Corp., 142 F.R.D. 118, 120 (D. Pa. 1992) (requiring production in products liability case of medical records of HIV-positive plaintiff, notwithstanding existence of state law providing for confidentiality of HIV-related information).

[3] Indeed, even the medical records of plaintiffs' family members in personal injury cases may be discoverable in certain circumstances. See, e.g., JB v. Asarco, Inc., 225 F.R.D. 258, 262 (D. Okla. 2004) (stating in lead dust inhalation case that "courts have held, and the undersigned finds, that medical information concerning non-party siblings is relevant to or may lead to admissible evidence regarding the cause of the cognitive disabilities alleged herein").

4

The very nature of the injuries alleged in plaintiffs' complaints – suicide, suicide attempt, and other personal injuries – place plaintiffs' complete medical histories squarely before the Court. Indeed, these cases revolve almost completely around the medical records of each individual plaintiff who alleges that he or she was harmed by ingesting Neurontin.

Documents are typically subject to discovery if they are relevant and are in the "possession, custody or control" of a party. Fed. R. Civ. Pro. 26(b); 34(a). In the case of medical records not physically in the possession of a plaintiff, the question of discoverability turns on whether the medical records are subject to the "control" of the plaintiff. See, e.g., Greenberg v. United States, 1990 U.S. Dist. LEXIS 12091, *8 (D. Mass. 1990). " 'Control' for purposes of the Rule is established where, although the party does not have physical possession of the requested documents, she has the legal right to obtain them." Id. For example, where, as here, medical records are in the possession of a party's physician, courts typically find that the party has the requisite "control" over those documents to make them discoverable. See, e.g., id.; 7-34 Moore's Federal Practice - Civil § 34.14 & n.30 ("The courts have often required a party to produce his or her medical records, even when the party is not presently in possession of a copy of those records.").

Courts routinely require broad production of medical records. See, e.g., In re Agent Orange Product Liability Litig., 91 F.R.D. 616, 618 (E.D.N.Y. 1981) ("Given the uncertainties associated with the complicated causation issues in this lawsuit, the court finds that defendants are entitled to any and all available medical and military information. Plaintiff is deemed to have waived any privilege that he may have had when

5

he put his medical condition into issue by initiating this lawsuit.") (emphasis added); Coffin v. Bridges, 1995 U.S. App. LEXIS 34729, *1 (4th Cir. 1995) (affirming district court's dismissal of personal injury action because of plaintiff's failure to produce medical records "that could have been relevant to [plaintiff's] alleged injuries") (emphasis added); Weaver v. Evans, 1997 U.S. Dist. LEXIS 21750, *1 (D. Kan. 1997) ("When a party makes their medical condition an element or factor of their claim or defense, that party has completely waived the physician-patient privilege and all medical records of that party are relevant and discoverable.") (emphasis added). See also McGlashan v. Midland Hotel Corp., 1983 U.S. Dist. LEXIS 16729, *7 (D. Mass. 1983) (defendant in personal injury case must have "detailed understanding of [plaintiff's] medical history" in order to present lack of causation defense).

Moreover, plaintiffs cannot unilaterally and arbitrarily limit the scope of their discovery obligations. See, e.g., Arthur v. Atkinson Freight Lines Corp., 164 F.R.D. 19, 20-21 (S.D.N.Y. 1995) (requiring disclosure of all medical records and stating that "[t]he disclosure provisions in the Federal Rules of Civil Procedure do not permit a party to trim his duty of disclosure to suit his own view of what might be relevant to his adversary"); LaBounty v. McCoy, 1991 WL 128735 (W.D.N.Y. 1991), *2 ("[T]he plaintiff cannot withhold records based solely on his conclusory assertion that they are not relevant. . . . He must make available all medical records and, to the extent he believes some should be exempt from production, he must provide the Court with specific facts upon which such belief is founded.") (emphasis added); Caldwell v. Center for Correctional Health and Policy Studies, Inc., No. Civ. A. 03-1464 GK/JMF, 2005 WL 1313507, *2 (D.D.C. June 2, 2005) (concluding that plaintiff breached his discovery obligations by withholding a

6

particular medical record and chastising plaintiff's counsel for "substitut[ing] his definition of what is discoverable . . . for the discovery standard as stated by the Federal Rules of Civil Procedure"). Defendants are entitled to explore thoroughly plaintiffs' theory of causation, which will require a full review of each plaintiff's entire medical history. Plaintiffs' temporal limitation is arbitrary and without basis in law.

Plaintiffs' position, which states they are willing to produce only those documents and records in their possession, or in the possession of their counsel, and only for a limited period of time effectively prevents discovery of the issues at the heart of this litigation. While plaintiffs have agreed to furnish authorizations and further refer defendants to, what has to date been, incomplete and deficient records appended to Rule 26 disclosures, this does little more than shift the burden and cost of discovery onto defendants. Defendants should not be required to conduct discovery for both parties.[4]

---

[4] In another attempt to evade discovery obligations, plaintiffs refuse to indicate the method by which they plan to respond to Defendants' Interrogatory No. 14, which seeks, among other things, the identification of prescribing physicians and corresponding dates of Neurontin prescriptions. While plaintiffs agree to provide a response to the interrogatory, they indicate the interrogatory is duplicative of, and unnecessary in light of, Defendants' Document Request No. 1.

Whether plaintiffs will satisfy their discovery obligation by providing a response to the interrogatory or by providing documents in response to Request No. 1 remains to be seen. While the provision of documents in response to Request No. 1 is perfectly permissible under Fed. R. Civ. Pro. 33(d), the rule does not permit a party to dump a cache of incomplete medical records upon their adversary and require the adversary to search through the materials to locate responsive information. Such gamesmanship would be a clear attempt to shift the burdens of discovery onto defendants. The identification of the prescribing physicians is crucial to defendants' ability to proceed with their own discovery obligations. Defendants production is contingent upon plaintiffs identifying in Rule 26 disclosures and / or Plaintiffs' Responses to Defendants' Interrogatories, the respective prescribing physician(s), and date of Neurontin prescriptions.

## II. PLAINTIFFS ARE NOT ENTITLED TO THE DISCOVERY OF EVERY DOCUMENT REFERRING TO NEURONTIN

Plaintiffs seek the production of every document referring to Neurontin in the files of potentially hundreds of sales representatives. Plaintiffs' position is that the mention of "Neurontin", no matter how transitory or inconsequential, renders a document responsive. If discovery were to progress using plaintiffs' position as the threshold for determining responsiveness, the result would be a massive production of documents that are neither relevant nor material to the subject matter of this litigation, nor reasonably calculated to lead to the discovery of admissible evidence. Indeed, plaintiffs have not shown and cannot show that every document relating to Neurontin is discoverable, nor have they shown that the burden they would impose is outweighed by the expected benefit of production. Plaintiffs' position sweeps far too broadly, as it would, for example, require the production of on-label information and materials, which are not relevant to this litigation, as well as vast amounts of duplicative information found in the files of multiple sales representatives.

To search for all documents that contain any reference to Neurontin would be a massive undertaking. Indeed, assuming each of the products plaintiffs in the Multidistrict Litigation has only one prescribing physician, defendants would be required to collect and review the files of 114 sales representatives for every single reference to Neurontin. The result would be a discovery exercise requiring far more time than currently scheduled for discovery. If required to review in excess of 10 million pages (see infra) for these custodians, the result would be a significant delay of discovery given the time it would take to execute the review. Indeed, the time necessary for the collection,

processing, conversion and review of all documents relating to Neurontin would put the parties well past the December 31, 2006, close of discovery.

Plaintiffs' position fails to take into account the significant burdens imposed upon defendants if required to collect, review, process and produce such material. Indeed, Laura Kibbe, Senior Corporate Counsel at Pfizer, submitted a declaration in connection with Defendants' June 17, 2005 motion for a protective order with respect to the scope of discovery, in which she declared that for approximately 100 custodians the "reviewable" information collected and culled would be in excess of 10 million pages See Declaration of Laura Kibbe, Exhibit A to Docket # 162 (copy attached hereto as Exhibit A) at 2.[5] She also estimated that the cost to process the electronic information, which excludes the cost for reviewing the documents, would exceed $1.7 million dollars. See id. When the costs of review are added, Kibbe estimated it would take approximately 40 temporary workers, working 40 hours per week, almost ten months to review 10 million pages. See id.

At the estimated rate of $40-$60 per hour for temporary workers, which Kibbe indicated was at the low end of the range of the likely cost, the magnitude of review would require Pfizer to spend between $2.9 and $4.3 million in review costs, for a total of $4.6 to $6 million when the processing and initial review of documents is completed. See id. Therefore, to search, process, and first review the files of one hundred sales representatives will cost approximately $4.6 to $6 million dollars and take approximately ten months unless some reasonable limitations can be placed on what is collected from

---

[5] Although the attached declaration discusses the costs incurred for the collection, processing and review of custodians other than field and sales personnel, of which Kibbe noted there were hundreds, the same calculations apply here as Kibbe's affidavit was based upon the costs incurred for one hundred custodians – a conservative approximation of the number of sales representatives whose files would have to be searched presuming each prescribing physician was detailed by only a single sales representative.

each custodian. These calculations do not include the time or expense of any attorney review. See id. at 2-3.

Defendants have proposed a fair and targeted method to capture responsive documents – providing custodial files from identified individuals that relate to (i) adverse events of suicidal behavior or other injuries allegedly suffered by plaintiffs; (ii) off-label uses identified in plaintiffs' complaints; and (iii) contacts with the plaintiffs' prescribing physician(s), if any, through the date of such physician's last prescription of Neurontin to such plaintiff. Defendants' proposal is reasonable as it amounts to an agreement to search the custodial files for the issues presented in these cases. While plaintiffs remain unwilling to engage in the basic discovery of their medical records, they expect defendants to scour the earth to find any and all records in the files of sales representatives that make even a passing reference to Neurontin, spanning a period in excess of ten years.

### III. THE PARTIES' AGREEMENTS IN YOUNG V. PFIZER SHOULD NOT NECESSARILY APPLY HERE

Plaintiffs seem to be under the impression that anything the parties previously agreed to in the pending New York state action, Young v. Pfizer, should apply here. They argue that defendants agreed to produce all documents relating to the safety, efficacy, sales and marketing of Neurontin contained in the files of the sales representatives who called on plaintiff Young's prescribing physician. Plaintiffs further argue that defendants should also produce documents from the files of the district managers that correspond to the identified sales representatives, and again reference a previous agreement between the parties in Young v. Pfizer.

10

What plaintiffs fail to recognize is that the "agreement" was eventually moot, as no sales representative ever called on plaintiff's doctor in that case. Accordingly, no production whatsoever was made from the files of any sales representative in that case. Plaintiffs further fail to recognize that <u>Young v. Pfizer</u> has since been coordinated in New York County Supreme Court with more than 230 other actions and that it is at present unclear what the scope of discovery will be in that coordinated action. Moreover, plaintiffs' basic premise is flawed. In <u>Young v. Pfizer</u>, defendants agreed to produce, subject to and without waiving defendants' objections, certain categories of documents without regard for some of the concerns at issue here. Unlike this litigation, which currently involves 114 plaintiffs and continues to grow, the <u>Young v. Pfizer</u> matter, at the time of the referenced agreements, was a single plaintiff lawsuit. Simply put, what may have been feasible in connection with that lawsuit does not set the standard for what would be appropriate or reasonable here.

11

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court adopt Defendants' positions as set forth in the discovery templates.

Dated: June 9, 2006

            DAVIS POLK & WARDWELL

            By:   /s/ James P. Rouhandeh
                James P. Rouhandeh

            450 Lexington Avenue
            New York, New York 10017
            (212) 450-4000

            - and -

            HARE & CHAFFIN

            By:   /s/ David B. Chaffin
                David B. Chaffin

            160 Federal Street
            Boston, Massachusetts 02110
            (617) 330-5000

            *Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 37.1, I certify that I conferred with opposing counsel in good faith to narrow the areas of disagreement to the greatest extent possible. The conference consisted of multiple e-mail exchanges and telephone conversations with opposing counsel during late May and early June.

                /s/ James P. Rouhandeh

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on June 9, 2006.

/s/ David B. Chaffin