UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

_____
                                )
In re:  NEURONTIN MARKETING AND    )    MDL Docket No. 1629
       SALES PRACTICES LITIGATION    )
_____)    Master File No. 04-10981
                                )
THIS DOCUMENT RELATES TO:       )    Judge Patti B. Saris
                                )
ELMENIA JOHNSON, individually and as   )    Mag. Judge Leo T. Sorokin
Tutor For CAMERON JOHNSON AND    )
LAURYN JOHNSON v. PFIZER, INC., et al., )
No. 06-10309-PBS                   )
_____)

## PFIZER INC'S MEMORANDUM IN OPPOSITION
## TO PLAINTIFFS' MOTION TO REMAND

       Defendant, Pfizer Inc. hereby opposes the motion of plaintiff Elmenia Johnson, individually and as tutor for Cameron Johnson and Lauryn Johnson (hereinafter referred to as "plaintiffs"), to remand this action to the Louisiana state court in which it was originally filed, the 23rd Judicial District Court for the Parish of Assumption.

## PROCEDURAL HISTORY

       Plaintiffs filed this action in Assumption Parish seeking to recover damages allegedly caused by Yashiki Johnson's use of the prescription medication Neurontin.  *See* Petition ¶ 5-7. Plaintiffs named as defendants Pfizer and a fictitiously named John Doe defendant identified only as a Pfizer sales representative.  *Id.*  ¶ 1-2.  On August 4th, 2005 Pfizer timely removed this case to the Eastern District of Louisiana asserting that removal is proper on diversity grounds

under 28 U.S.C. §§ 1332, 1441 *et seq.,* because the only non-diverse defendant, the John Doe sales representative, had been fraudulently joined. *See* Notice of Removal ¶ 9. Pfizer also alleged that federal question jurisdiction exists because in asserting their survival and wrongful death claims under Louisiana state law, plaintiffs have made issues involving the FDCA and FDA regulations essential to the resolution of the causes of action. *See* Notice of Removal ¶ 10-14.

On July 28th, 2005, plaintiffs filed a First Supplemental and Amending Petition seeking to substitute Lynnita Smith (erroneously designated in the pleadings as "Lanita Smith"), a Pfizer employee and sales representative, for the John Doe defendant. *See* First Supplemental and Amending Petition for Damages ¶ 1-2. Within thirty days of receiving the amended petition, Pfizer filed an Amended Notice of Removal on August 18th, 2005, re-asserting that the sales representative, Lynnita Smith, was fraudulently joined. On August 19th, 2005, plaintiffs filed a Motion to Remand, which was set for hearing in the Eastern District of Louisiana. Pfizer then filed a Motion to Stay the Proceedings in Louisiana because of the impending transfer of the suit to this MDL court. On August 25th, 2005, Pfizer's Motion to Stay the Proceedings was granted. This matter was ultimately transferred to this Court, and plaintiffs re-filed their Motion to Remand with this Court on March 21st, 2006. This Court's stay of remand proceedings has now been lifted, so Pfizer now opposes the remand motion for the reasons more fully discussed below.

## I.     THE CONSENT OF LYNNITA SMITH WAS NOT REQUIRED.

The removing defendant is not required to obtain the consent of defendants who remain unserved at the time of removal. *See, for example, Courtney v. Benedetto*, 627 F.Supp. 523 (M.D. La. 1986) *citing Pullman Co. v. Jenkins*, 305 U.S. 534 (1939). Pfizer filed its Notice of Removal on August 4th, 2005. At that time, Lynnita Smith had not been served with the First Supplemental and Amending Petition naming her as a defendant. Nor had she been served at the

time that the Amended Notice of Removal was filed.  Indeed, according to the 23rd Judicial District Court and the records of the federal courts, to date there still has been no service of the Amending Petition on Ms. Smith.  Because her consent to removal was not required, its absence does not create a technical problem with Pfizer's removal.

## II.     REMOVAL IS PROPER ON DIVERSITY GROUNDS

Even if Lynnita Smith had been served prior to removal, her consent was not required because she was fraudulently joined.  As Judge Saris has held, "[w]hen a plaintiff fraudulently joins a defendant to destroy removability, a federal court may ignore the lack of consent from that defendant and permit the removal of the case." *In re Pharmaceutical Industry Average Wholesale Price Litigation*, M.D.L. No. 1456; Civ. No. 01-12257-PBS, 2006 WL 1017683 at *6 (D. Mass., April 14, 2006) (citing *In re Diet Drugs*, 220 F. Supp. 2d 414, 422 (E. D. Pa. 2002) (ignoring lack of consent from fraudulently joined defendants)).  Plaintiffs' joinder of a Pfizer sales representative on these minimal allegations was fraudulent so that joinder cannot defeat Pfizer's removal right.  In accordance with the Supreme Court's admonition that "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right," *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185-86 (1907), plaintiffs' remand motion should be denied.

## A.     The Fraudulent Joinder Standard.

The standard for establishing fraudulent joinder is "whether the joinder of the non-diverse party has a reasonable basis in law and fact." *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 4 (D. Mass. 2001) (Saris, J.).  In *Mills*, Judge Saris cited with approval, but added her own gloss to, this test articulated by the Second Circuit:

> In order to show that naming a non-diverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, *or* that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court.

*Id*. (quoting *Whitaker v. American Telecasting, Inc*., 261 F.3d 196, 207 (2d Cir. 2001)). Judge Saris's important gloss is that "a mere theoretical possibility of recovery" is not sufficient. Id. *See also In re New England Mutual Life Insurance Co. Sales Practices Litigation*, 324 F. Supp. 2d 288, 298 (D. Mass. 2004). (Notably, the law in the circuit of the transferor court is to the same effect. *Smallwood v. Illinois Central Railroad Company*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*) (standard is that "there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *See also Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (reviewing Fifth Circuit case law and finding that "no possibility" means no "reasonable basis"); *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000) (*Badon II*) (rejecting contention "that *any mere theoretical possibility* of recovery under local law – no matter how remote or fanciful – suffices to preclude removal. . . . [T]here must at least be a *reasonable* basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder.") (emphasis in original); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699, 701 (5th Cir. 1999) ("[w]e must determine whether there is any *reasonable* basis for predicting that Griggs might be able to establish Blum's liability on the pleaded claims in state court . . . .") (emphasis in original); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. 1981) ("the question is whether there is arguably a *reasonable* basis for predicting that the state law might impose liability on the facts involved") (emphasis added); *Harrod v. Zenon*,

Civ. Action No. 03-1088, 2003 WL 21748687, at *1 (E.D. La. July 25, 2003) (the "possibility that state law may impose liability . . . must be *reasonable*, not merely theoretical") (emphasis added); *Case v. Merck & Co.*, Civ. Action No. 02-1779, 2002 WL 1897048, at *1 (E.D. La. Aug. 15, 2002) ("the case may be removed if the defendants show . . . that there is no *reasonable* basis to predict that plaintiffs could establish a claim against the in-state defendant.").)  Plaintiffs' joinder of Lynnita Smith was fraudulent if this Court can find no reasonable basis for recovery against her.

In determining whether a plaintiff has no reasonable basis for recovery against the joined party, a court may look to extrinsic evidence.  As Judge Saris explained in *Mills*, "[t]he Court may also examine . . . affidavits of the parties in determining the propriety of joinder."  178 F. Supp. 2d at 4.

**B.     Lynnita Smith Was Fraudulently Joined.**

The only non-diverse defendant named in plaintiffs' Petition and First Supplemental and Amending Petition is the sales representative, Lynnita Smith, who is accused of knowingly marketing the prescription medication Neurontin for uses not approved by the Food and Drug Administration.  *See* Petition for Damages (as amended by First Supplemental and Amending Petition) ¶ 7-8.   Plaintiffs also allege that Ms. Smith negligently sold, marketed, and/or distributed Neurontin.  *See* Remand Brief ¶ II.  However, plaintiffs' claims against Ms. Smith fail for at least three separate and independent reasons:

> (1) Plaintiffs have not factually alleged any connection between Yashiki Johnson's alleged injuries and Ms. Smith;

> (2) Plaintiffs have not pled any facts that would establish a claim against Ms. Smith in her individual capacity;

(3) Plaintiffs have not pled any facts that would establish a claim against Ms. Smith in her official capacity.

Lynnita Smith was therefore fraudulently joined, and plaintiffs' remand motion should be denied.

**1.     There is No Factual Connection Between Lynnita Smith and Yashiki Johnson's Alleged Injuries.**

In a petition short on specifics about the cause of action alleged, plaintiffs fail to identify Ms. Johnson's prescribing physician or provide any information about why she was given a prescription for Neurontin.  Instead, plaintiffs simply allege that Neurontin was prescribed for a use "not approved by the FDA" and that this use of the drug "presented an unreasonable risk" that Ms. Johnson would commit suicide.  Plaintiffs do not allege in the Petition or Supplemental Petition that Yashiki Johnson's doctor received any Neurontin from Lynnita Smith or that it was, in turn, given to Ms. Johnson.  Nor do they claim that Ms. Johnson received the prescription for Neurontin from her physician because of some specific representation made by Ms. Smith or that Ms. Smith failed to warn Ms. Johnson's doctor about any risk of use of Neurontin. Consequently, plaintiffs fail to factually allege any direct connection between Yashiki Johnson's alleged injuries and Lynnita Smith as required under Louisiana law.   Under the learned intermediary doctrine, it is the duty of the manufacturer of a pharmaceutical product to warn only the prescribing physician of the risks of use of the product.  *See Willet v. Baxter International, Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991).  Because plaintiffs have not alleged that Ms. Smith made misrepresentations to the prescribing doctor, plaintiffs have not alleged that Ms. Smith caused Yashiki Johnson's alleged injuries.  Without evidence of a connection between Ms. Smith

and Ms. Johnson's alleged injuries, plaintiffs can have no possibility of recovery under Louisiana law.

### 2.     Lynnita Smith Cannot be Liable in Her Individual Capacity.

The Eastern District of Louisiana has held that the only duty owed by drug sales representatives is to deliver and explain the package inserts to physicians. *See Westbrook, et vir. v. Wyeth, et al*., Civ. Action No. 03-1918 (W.D. La. 12/22/03 Report and Recommendation; 2/2/04 Judgment). In *Westbrook*, the plaintiff alleged that two of Wyeth's sales representatives promoted Pondimin and Redux diet drugs to physicians, and knowingly provided misleading and false information regarding the safety of those drugs. *See* Exhibit A, Report and Recommendation at page 3. The Court found in *Westbrook* that there was no reasonable possibility that the plaintiff could succeed on her claims against the sales representatives because the petition lacked allegations that the sales representatives breached their limited duty under Louisiana law to "deliver and explain" the Redux package insert. *See* Exhibit A, Report and Recommendation at n. 3. Without any specific allegation that the sales representatives failed to provide or explain the package insert to Westbrook's physician, the Court found that no cause of action had been stated and the claims were dismissed. *Id.*

Here, Lynnita Smith's declaration establishes that she delivered and explained the package insert. She did not discuss unapproved uses of the product with any of the doctors she visited on behalf of the company. As in *Westbrook,* plaintiffs here cannot establish a breach of the sales representative duty; their claims fail and they have no possibility of recovery against Lynnita Smith.

The job of a sales representative is to make physicians aware of Pfizer's products so that they can consider whether to prescribe them for particular patients. *See* Exhibit B, Smith Declaration at ¶ 4. Detailers endeavor to raise physician awareness of Pfizer's products by visiting them and delivering FDA-approved package inserts and other FDA-approved information. *Id.* A physician visit typically lasts less than five minutes; some physicians refuse to meet with sales representatives at all.

The FDA-approved package insert that detailers provide is a lengthy disclosure containing information as to a medication's pharmacological properties, indications, contraindications and side effects. Although detailers deliver the package insert to physicians, they have no control over its content. *See* Exhibit B, Smith Affidavit at ¶ 6. Nor are detailers typically expected or able to evaluate independently the accuracy of the package insert. Detailers, for example, generally do not possess training in pharmacology or medicine apart from that provided by their employer. *See id.* at ¶ 5.

Under Louisiana law, an employee is individually liable for damages caused in the performance of his or her employment only in limited circumstances. Under the four-part test adopted by the Louisiana Supreme Court in *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973), such liability requires that the "employee has breached this duty through personal (as contrasted with technical or vicarious) fault." *Id.*; *see also Harrod*, 2003 WL 21748687, at *2 ("[u]nder Louisiana law, individual liability of an employee for a work-related function can only exist if there was a breach of a *personal* duty of care to another") (emphasis in original).

Recognizing the limited responsibilities of drug sales representatives, the Louisiana Court of Appeals has applied the *Canter* test to reject claims against drug company sales

representatives in *Catalanotto Wallace v. Upjohn Co.*, 535 So.2d 1110 (La. App. 1st Cir. 1988); *accord Miller v. Upjohn Co.*, 465 So.2d 42, 47 (La. App. 1st Cir. 1985).  The court held that the sales representatives were not personally liable under *Canter* because they had not breached their limited duty to plaintiffs, which was "only . . . to deliver and explain" the warnings provided by the drug company.  *Id.* at 1117.  Thus, under Louisiana law, sales representatives only owe a duty to deliver the instructions and warnings provided by the drug manufacturer and this is exactly what Ms. Smith did for Pfizer.

Plaintiffs claim that Lynnita Smith was negligent in the sales, marketing and distribution of the drug, but they provide no specific allegation of how she was negligent.  *See*, *e.g.*, Remand Brief at ¶ II (stating that plaintiffs assert claims against the Sales Representative for "negligent sales, marketing, and/or distribution of Neurontin within Louisiana").  However, as stated above, the sales representative has no duty under *Canter* to second-guess the FDA-approved information or warnings provided by Pfizer.  And, as set forth in Smith's declaration, she only discussed the FDA-approved information about Neurontin with the doctors she visited.  *See* Exhibit B, Smith Declaration at ¶ 8.  Thus, as in *Westbrook*, "plaintiffs' petition is devoid of any specific allegations that the detailmen failed to provide the product insert to her physician(s) or that they failed to explain the product insert," so plaintiffs have not alleged any actionable conduct by Lynnita Smith.  Exhibit A, Report and Recommendation at n. 3 (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (a petition which fails to state any specific actionable conduct on the part of a non-diverse defendant does not satisfy the liberalized requirements of notice pleading such as to state a valid cause of action)).

Both the Eastern and Middle Districts of Louisiana have repeatedly held that where, as here, a plaintiff names both an employer and an employee as defendants, and fails to allege facts sufficient to establish that the employee has liability in his or her individual capacity, that employee is fraudulently joined. *See, e.g., Harrod*, 2003 WL 21748687 at *4; *Couvi's Drink Box v. Phillip Morris U.S.A.*, Civ. Action No. 94-0454, 1994 WL 202319, at *2 (E.D. La. May 13, 1994); *Daves Ins. Agency v. Hartford Ins. Co.*, Civ. Action No. 89-428, 1989 WL 126513, at **1-2 (E.D. La. Oct. 16, 1989) (where employee defendant's allegedly tortious actions were performed in the scope of his employment, and no personal duty was owed by defendant to plaintiff, defendant was fraudulently joined); *Hibernia Community Development Corp. v. U.S.E. Community Service Group, Inc.*, 166 F. Supp.2d 511, 515 (E.D. La. 2001) (same); *Hornsby v. Allied signal*, 961 F.Supp. 923, 929 (M.D. La. 1997); *Pinsonat v. J.E. Merit Constructors, Inc.*, 962 F.Supp. 848, 852 (M.D. La. 1996) ("the Court finds that the plaintiff's suit against Richard as an agent of JE Merit is actually a suit against the employer itself and not one in which Richard can be held personally liable to the plaintiffs . . . [so] . . . the Court concludes that Richard was fraudulently joined").

The Eastern District applied the *Canter* test to determine that a defendant had been fraudulently joined in *Couvi's Drink Box*, finding that the plaintiff had failed to establish individual liability on the part of a sales representative employee of Phillip Morris in a suit alleging that Phillip Morris failed to honor coupons. 1994 WL 202319. The court found that plaintiff's allegations were "completely and classically conclusory and speculative," were held to be insufficient because they "fail[ed] to establish that [the sales representative] acted in any

capacity other than as an instructed employee." *Id.* at *2. The same is true here, where plaintiffs' petition is devoid of factual allegations as to Lynnita Smith.

Similarly, in *Hornsby*, the Middle District of Louisiana applied the *Canter* test to determine that the manager of a chemical plant had been fraudulently joined. In *Hornsby*, the plaintiff sued a corporation for release of toxic chemicals from the corporation's plant. 961 F.Supp. at 925. The court determined that the plaintiff failed to allege facts sufficient to prove that the plant manager could be held liable in his individual capacity. *Id.* at 929. Allegations that "merely because [defendant] was a plant manager of a facility that could potentially cause harm to others," do not establish a *Canter* duty. *Id.*

Because plaintiffs have not alleged that Lynnita Smith acted other than as instructed by her employer, they necessarily have not demonstrated that Lynnita Smith breached any duty through personal fault. Accordingly, plaintiffs cannot satisfy the *Canter* test or any liability against Lynnita Smith in her individual capacity.

**3. Lynnita Smith Cannot be Liable in Her Official Capacity.**

Nor can plaintiffs state a claim against Lynnita Smith in her official capacity. Under Louisiana law, any claim against a sales representative for actions taken in the course of her employment runs against the company and not against the sales representative. *See Sims v. Jefferson Downs Racing Assoc., Inc.*, 778 F.2d 1068, 1081 (5th Cir. 1985) (*citing Miller v. Keating*, 349 So.2d 265 (La. 1977); *Matthews v. Otis Mfg. Co.*, 142 La. 88 (1917)). Because a claim against an employee for actions taken in the employee's official capacity runs against the company, *see* La. Civ. Code art. 2320, a plaintiff cannot recover against both the company and the employee, as this would allow a double recovery against the company. *See Sims*, 778 F.2d at

1081.  Because plaintiffs have separately named Pfizer as a defendant, any claim against Lynnita

Smith in her official capacity is barred.

### III.    FEDERAL QUESTION JURISDICTION EXISTS

In asserting survival and wrongful death claims under Louisiana state law,  plaintiffs have

made issues involving the FDCA and FDA regulations essential to the resolution of the causes of

action.  This Court has removal jurisdiction because this is a civil action "of which the district

courts have original jurisdiction" and an action "founded on a claim or right arising under the

Constitution … or laws of the United States."  28 U.S.C. § 1441(a),(b); 28 U.S.C. § 1331.

Federal question jurisdiction exists because these plaintiffs' claims arise out of Pfizer's

alleged failure to market Neurontin in accordance with the FDA's permission granted under the

provisions of the Federal Food Drug and Cosmetic Act., 21 U.S.C.  § 301 et. seq., and its alleged

dissemination of unapproved information to physicians.  The interpretation of the federal statutes

and regulations regarding the promotion of a prescription pharmaceutical drug is a substantial

question that is pivotal to the plaintiffs' claims. 21 U.S.C. § 301 *et. seq.*

The resolution of plaintiffs' allegations necessarily turns on the construction of federal

law, namely whether Pfizer violated the FDCA or FDA regulations.  *See Franchise Tax Bd. v.*

*Constr. Laborers Vacation Trust*, 463 U.S. 1, 28 (1983) (holding that federal question

jurisdiction exists whenever "the plaintiff's right to relief necessarily depends on resolution of a

substantial question of federal law"); *City of Chicago v. Int'l Coll. Of Surgeons, Inc.* 522 U.S.

156, 164 (1997) ("[E]ven though state law creates [a party's] causes of action, its case might still

'arise under' the laws of the United States if a well-pleaded complaint established that its right to

relief under state law requires the resolution of a substantial question of federal law." (internal

quotation marks omitted)); *Grable & Sons Metal Products, Inc. v. Daure Eng'g & Mfg.*, 125 S.Ct. 2363, 2367 (2005) ("The [substantial federal question] doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."); *see also In re Zyprexa Products Liability Litig.*, 2005 US Dist. Lexis 13204, at *14 (E.D.N.Y. July 1, 2005) (denying remand and finding federal jurisdiction based, in part, on allegations regarding violations of federal law through improper off-label marketing of subject prescription drug).

Plaintiffs' allegations of Pfizer's wrongful conduct in "knowingly market[ing] Neurontin for the unapproved uses for which it was prescribed to Yashiki Johnson" (Petition ¶ 8) may be deemed allegations of wrongdoing only so far as the conduct runs counter to FDA regulations. The gravamen of the Petition is based on allegations of Defendant's failure to conform its actions to federal law. Thus federal question jurisdiction has been properly invoked.

## CONCLUSION

**WHEREFORE**, Pfizer, Inc. respectfully requests that Plaintiffs' Motion to Remand be denied because removal is proper under diversity jurisdiction and the claims asserted against Pfizer involve questions of federal law.

Dated: June 9, 2006

DAVIS POLK & WARDWELL

By:  /s/ James P. Rouhandeh
        James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:  /s/ David B. Chaffin
        David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served
pursuant to Case Management #3 on June 9, 2006.

/s/David B. Chaffin