UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :

In re:  NEURONTIN MARKETING,       :
        SALES PRACTICES AND        :
        PRODUCTS LIABILITY LITIGATION     :   MDL Docket No. 1629

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Master File No. 04-10981

THIS DOCUMENT RELATES TO:          :   Judge Patti B. Saris

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Magistrate Judge Leo T.
                                    Sorokin
PRODUCTS LIABILITY CASES.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW OF PFIZER INC. AND WARNER-LAMBERT COMPANY
IN SUPPORT OF MOTION TO DISMISS THE PERSONAL INJURY PLAINTIFFS'
CLAIMS BASED UPON ALLEGEDLY IMPROPER MARKETING PRACTICES**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

PROCEDURAL BACKGROUND.............................................................................. 2

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT

PLAINTIFFS' CLAIMS BASED ON ALLEGATIONS REGARDING
MARKETING PRACTICES SHOULD BE DISMISSED
FOR FAILURE TO STATE A CLAIM ...................................................................... 8

    A.      Plaintiffs Have Not Stated a Common Law Fraud Claim.................................. 11

    B.      Plaintiffs Have Not Stated a Negligent Misrepresentation Claim ..................... 13

    C.      Plaintiffs Have Not Stated a Consumer Protection Claim ................................. 13

    D.      Plaintiffs Have Not Stated a Breach of Express Warranty Claim ..................... 15

CONCLUSION.......................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

Page

Alexander v. Smith & Nephew, P.L.C.,
  98 F. Supp. 2d 1276 (N.D. Okla. 2000) ....................................................................16

Archdiocese of San Salvador v. FM Int'l, LLC,
  C.A. No. 05-cv-237-JD, 2006 U.S. Dist. LEXIS 6964 (D.N.H. Feb. 23, 2006) .......................14

Baron v. Pfizer, Inc.,
  Index No. 6429-04, slip op. (N.Y. Sup. Ct. May 2, 2006).........................1, 2, 10, 11, 14

Barrett Assocs. v. Aronson,
  346 Mass. 150 (1963) ....................................................................................11

Basham v. Gen. Shale Prods. Corp.,
  C.A. No. 92-1608, 1993 U.S. App. LEXIS 4876 (4th Cir. Mar. 10, 1993).............................12

Cascio v. Pfizer Inc.,
  Index No. 05/109083 (N.Y. Sup. Ct. filed June 30, 2005) ............................... passim

Educadores Puertorriquenos en Accion v. Hernandez,
  367 F.3d 61 (1st Cir. 2004).............................................................................15

Epstein v. C.R. Bard, Inc.,
  C.A. No. 03-12297-RWZ, 2004 U.S. Dist. LEXIS 13384 (D. Mass. July 19, 2004)..................13

Fagan v. AmerisourceBergen Corp.,
  356 F. Supp. 2d 198 (E.D.N.Y. 2004) ....................................................................13

Fink v. Ricoh Corp.,
  839 A.2d 942 (N.J. Super. Ct. App. Div. 2003)..........................................................14

Gwyn v. Loon Mountain Corp.,
  C.A. No. 01-00214-B, 2002 U.S. Dist. LEXIS 9092 (D.N.H. May 15, 2002),
  aff'd, 350 F.3d 212 (1st Cir. 2003) .....................................................................14

In re HP Inkjet Printer Litig.,
  No. C 05-3580 JF, 2006 U.S. Dist. LEXIS 12848 (N.D. Cal. Mar. 7, 2006) ...........................16

Hayduk v. Lanna,
  775 F.2d 441 (1st Cir. 1985) ........................................................................9, 10

Page

Hearn v. R.J. Reynolds Tobacco Co.,
    279 F. Supp. 2d 1096 (D. Ariz. 2003) ..................................................................12

Hernandez v. Ciba-Geigy Corp. USA,
    200 F.R.D. 285 (S.D. Tex. 2001) .........................................................................12

Jones v. Lederle Labs.,
    695 F. Supp. 700 (E.D.N.Y. 1988) ......................................................................16

Lawson v. Affirmative Equities Co., L.P.,
    341 F. Supp. 2d 51 (D. Mass. 2004) ................................................................14, 15

Leiendecker v. Pfizer, Inc.,
    No. CIV 448742 (Cal. Super. Ct. filed Aug. 5, 2005) ...........................................8

In re Lupron Mktg. & Sales Practices Litig.,
    295 F. Supp. 2d 148 (D. Mass. 2003) ..................................................................11

In re Lupron Mktg. & Sales Practices Litig.,
    No. 01-CV-10861-RGS, 2004 U.S. Dist. LEXIS 18512 (D. Mass. Sept. 16, 2004) ...............12

Mass. Farm Bureau Fed'n, Inc. v. Blue Cross of Mass., Inc.,
    532 N.E.2d 660 (Mass. 1989) .............................................................................14

In re Meridia Prods. Liab. Litig.,
    328 F. Supp. 2d 791 (N.D. Ohio 2004),
    aff'd, No. 06a0158, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006)...........................16

In re Pharm. Indus. Average Wholesale Price Litig.,
    C.A. No. 01-12257-PBS, 2004 U.S. Dist. LEXIS 21448 (D. Mass. Oct. 26, 2004) ...............10

In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,
    MDL No. 1407, 2005 U.S. Dist. LEXIS 37008 (W.D. Wash. Aug. 29, 2005) ........................13

Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.,
    421 F.3d 1 (1st Cir. 2005)....................................................................................9

Rogers v. NSTAR Elec.,
    389 F. Supp. 2d 100 (D. Mass. 2005) ..................................................................13

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004)................................................................................15

Suna v. Bailey Corp.,
    107 F.3d 64 (1st Cir. 1997)..................................................................................11

iii

Page

In re Sonus Networks, Inc. Sec. Litig.,
    C.A. No. 04-10294-DPW, 2006 U.S. Dist. LEXIS 28272 (D. Mass. May 10, 2006) ..............15

In re Suprema Specialties, Inc. Sec. Litig.,
    438 F.3d 256 (3d Cir. 2006)...................................................................................................15

Swierkiewicz v. Sorema,
    534 U.S. 506 (2002)...............................................................................................................15

Vess v. Ciba-Geigy Corp. USA,
    317 F.3d 1097 (9th Cir. 2003) ..............................................................................................14

Yurcic v. Purdue Pharma, L.P.,
    343 F. Supp. 2d 386 (M.D. Pa. 2004) ...................................................................................16

**Statutes & Rules**

Fed. R. Civ. P. 8(a) ......................................................................................................................15

Fed. R. Civ. P. 9(b) ............................................................................................................... passim

**Other Authorities**

Louis R. Frumer & Cary Stewart Sklaren, Products Liability § 9.02 (2d ed. 2006) ..............15, 16

Defendants Pfizer Inc. and Warner-Lambert Company respectfully submit this memorandum of law in support of their motion to dismiss the personal injury plaintiffs' claims based on allegedly improper marketing practices pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). The plaintiffs in this multidistrict litigation can be divided into two categories: those seeking to recover for the cost of Neurontin (the "consumer protection plaintiffs") and those seeking to recover for alleged personal injuries (the "personal injury plaintiffs"). This motion addresses the claims of all plaintiffs in the latter category. The names and index numbers for the personal injury plaintiffs' one-hundred and five cases are set forth in the Appendix to this memorandum. Defendants intend to file separate motions to dismiss claims of certain subgroups of the personal injury plaintiffs on other grounds.

## PRELIMINARY STATEMENT

The personal injury plaintiffs' claims based on allegedly improper marketing practices, including their claims of common law fraud, negligent misrepresentation, consumer protection violations, and breach of express warranty, must all be dismissed.[1] These claims require that plaintiffs plead and prove that defendants made false statements and warranties regarding Neurontin, that these statements and warranties caused plaintiffs harm, and for most claims, that plaintiffs or their physicians relied upon such statements and warranties. Plaintiffs have alleged no such thing. Instead, they parrot allegations regarding defendants' marketing practices from other complaints and fail to connect these activities to plaintiffs themselves. The personal injury plaintiffs do not allege that false statements or warranties were made to them or their physicians. They also have not alleged any connection between the alleged marketing practices and their

---

[1] Defendants intend to move for summary judgment on the personal injury plaintiffs' product liability claims.

own physicians' decision to prescribe them Neurontin.  As the New York court in <u>Baron v. Pfizer, Inc.</u> recently concluded in an almost identical situation, these pleading deficiencies require dismissal of plaintiffs' claims based on marketing practices.

## **PROCEDURAL BACKGROUND**

Numerous personal injury suits have been brought against defendants by or on behalf of persons who allegedly took Neurontin and thereafter allegedly experienced harm, or by the families and heirs of such persons.[2]  These personal injury plaintiffs have sued to recover for an array of alleged personal injuries, the vast majority of which allegedly result from suicide or suicide attempts.  One-hundred and five of these suits have been transferred to this multidistrict litigation as of the date of this motion.  These one-hundred and five suits were filed in twenty-three states by plaintiffs from thirty different states.[3]

In addition to bringing product liability claims seeking to recover for their purported personal injuries, many of these plaintiffs have brought claims of common law fraud, negligent misrepresentation, consumer protection violations, and breach of express warranty.  <u>See, e.g.,</u> Cascio Compl. ¶¶ 1, 121, 123.[4]  These additional claims all rest on the same basic premise that

---

[2] The majority of these suits involve individual actions by or on behalf of the allegedly injured party and his or her family, if any.  Three suits, however, <u>Accettullo v. Pfizer Inc.</u>, <u>Anderson v. Pfizer, Inc.</u>, and <u>Cooper v. Pfizer, Inc.</u>, involve multiple plaintiffs.

[3] Approximately half of the individual personal injury plaintiffs brought suit in their home state.  The remaining individual cases were brought in New York by residents of other states.

[4] Defendants' citations refer to a representative complaint, <u>Cascio v. Pfizer Inc.</u>, Index No. 05/109083 (N.Y. Sup. Ct. filed June 30, 2005).  The Cascio complaint is one of seventy complaints filed by Finkelstein & Partners. Each of these complaints is substantially the same, except for the inclusion of certain personal information specific to each plaintiff, such as name and date of injury.  (None of this personal information resolves the deficiencies that are the subject of this motion.)  Although the wording of the non-Finkelstein complaints is not identical to that of the Finkelstein complaints, the non-Finkelstein complaints contain the same substantive allegations as those found in the Finkelstein complaints.  (The names of the non-Finkelstein complaints are italicized and highlighted in the Appendix.)

defendants made untrue or fraudulent statements while marketing Neurontin and that these statements caused plaintiffs to suffer harm. See, e.g., id. ¶¶ 148-207.

## STATEMENT OF FACTS

The personal injury plaintiffs have alleged that defendants fraudulently marketed Neurontin to physicians for a variety of so-called "off-label" uses. See, e.g., Cascio Compl. ¶¶ 106, 113, 161 (concerning bipolar disorder). The personal injury plaintiffs do not allege, however, that any untrue or misleading statement about Neurontin was ever made to their own physicians or to plaintiffs themselves. Nor do they allege any connection between the allegedly fraudulent marketing that they describe and their own physicians or themselves. For example, in one representative complaint filed in New York by Joseph Cascio, a New Jersey resident who took Neurontin for bipolar disorder, there is no allegation connecting Mr. Cascio's injury to the purportedly fraudulent marketing. Mr. Cascio alleges that he attempted to commit suicide in January 2001 and that he suffered severe personal injury as a result. Id. ¶ 123. Nowhere, however, does he allege any misrepresentations regarding Neurontin that defendants or their agents made to his prescribing physician (or psychiatrist) prior to that date. Nor does Mr. Cascio allege any misrepresentations from before January 2001 that were made to him.

In fact, none of the examples of false or fraudulent marketing alleged by Mr. Cascio are connected in any way to him, his physician, or his attempted suicide. For instance, Mr. Cascio alleges that in Fall 1996, more than five years before his attempted suicide, defendants' Southeast Customer Business Unit created a planning document titled "SECBU Right on the Mark with Neurontin and Pain." Id. ¶ 154. This alleged document has nothing to do with bipolar disorder, and there is no allegation that Mr. Cascio's physician received a

3

misrepresentation as a result of this document, let alone that this document contained any false or fraudulent statements.  Id.

Mr. Cascio also makes various allegations regarding defendants' sales representatives and medical liaisons that have nothing to do with his prescription of Neurontin for bipolar disorder or his attempted suicide.  Id. ¶¶ 162-65.  For example, he alleges that an October 1995 memorandum was circulated to defendants' Epilepsy Disease Team noting that data from an outside vendor indicated that certain of defendants' sales representatives were providing off-label messages regarding pain and reflex sympathetic dystrophy to physicians.  Id. ¶ 162.  He also alleges that in October 1996, a Louisiana sales representative made off-label, but not false or fraudulent, statements to a doctor regarding pain.  Id. ¶ 163.  Mr. Cascio has not alleged how statements about Neurontin's use for pain made in 1995 and 1996 are relevant to his attempted suicide in 2001, especially given that he was taking Neurontin for bipolar disorder.  Moreover, he has not alleged that he or his physician was exposed to such statements.  Mr. Cascio has certainly not alleged how or why they caused his attempted suicide.  He has not even alleged that these sales representatives made any false statements to anyone.[5]

Mr. Cascio further alleges that defendants organized consultants meetings, advisory board meetings, teleconferences, and speakers' bureaus to promote Neurontin for off-label uses.  Id. ¶¶ 166-76, 178.  None of these allegations, however, has anything to do with his alleged injury.  For example, Mr. Cascio complains of a consultants' meeting that defendants held in Jupiter Beach, Florida on April 19-20, 1996, which was attended by forty-two physicians.  Id. ¶ 166.  He alleges that at this meeting Neurontin's use for essential tremor, episodic dyscontrol,

---

[5] Plaintiffs' other allegations regarding sales representatives and medical liaisons are similarly deficient.  Id. ¶¶ 164-65.

and pain was promoted.  Id. ¶¶ 168-69.  Mr. Cascio fails to connect this Jupiter Beach meeting in any way to his claims.  He does not explain why the alleged statements regarding Neurontin's off-label use for pain and these other conditions either were false or were related to his treatment for bipolar disorder.  Beyond this, he does not allege that his physician attended this meeting.

Mr. Cascio also alleges that defendants promoted Neurontin at a series of other consultants' meetings from 1995 through 1997.  Id. ¶ 176.  He does not claim, however, that he or his physician was exposed to any misrepresentations as a result of any of these meetings.  Nor does he allege that any particular false statements at these meetings caused his physician to prescribe him Neurontin for bipolar disorder or that his physician relied upon such statements. In fact, even though Mr. Cascio alleges that defendants held a consultants' meeting titled "Use of Anti-Convulsants in Psychiatric Disorders" in Short Hills, New Jersey in October 1996, he does not assert that any misrepresentations were made at this meeting or that his physician attended. Id. ¶ 176.  Mr. Cascio certainly does not allege that at this meeting in 1996, his physician heard or read a misrepresentation regarding Neurontin's use for bipolar disorder and as a result, prescribed him Neurontin years later.

Similarly, Mr. Cascio fails to make any relevant allegations regarding an advisory board meeting that defendants held in Atlanta, Georgia in August 1996.  Id. ¶¶ 171-73.  He alleges that defendants "expressly instructed" certain physician speakers at this meeting to address some of the unapproved uses of Neurontin.  Id. ¶ 171.  Mr. Cascio does not allege that bipolar disorder was one of these uses.  He does not allege that his physician attended this meeting or received any information from it.  He does not even allege that the physicians who allegedly discussed off-label uses made any false or misleading statements regarding these uses.

Next, Mr. Cascio complains that defendants promoted Neurontin for off-label uses during two telephone conferences in March and May 1996, respectively. Id. ¶¶ 174-75. Again, he fails to allege any connection between these telephone conferences and his suicide attempt. Mr. Cascio does not claim that his prescribing physician was among the doctors who participated in these calls. Nor does he assert that Neurontin's use for bipolar disorder was addressed in either. And as with all of his allegations, Mr. Cascio does not suggest that any statements regarding off-label use made during these calls were untrue or misleading.

Only a few of Mr. Cascio's allegations regarding marketing practices even relate to bipolar disorder directly. Id. ¶¶ 179-80. First, Mr. Cascio alleges that defendants employed medical liaisons "who were provided with new company slides that detailed methods to increase 'off-label' use of Neurontin" for various conditions, including bipolar disorder. Id. ¶ 179. Not only does Mr. Cascio fail to allege that any such slides regarding bipolar disorder were false or misleading or that his physician was exposed to such slides, but he does not even allege that any medical liaisons actually used the methods employed in these slides. Second, Mr. Cascio alleges that medical liaisons "informed psychiatrists that early results from clinical trials evaluating Neurontin for the treatment of bipolar disorder indicated ninety percent (90%) response rate" even though "[n]o such results existed." Id. ¶ 180(a). He does not allege that his physician or psychiatrist received this message from a medical liaison or anyone else.[6]

Lastly, Mr. Cascio alleges that defendants sponsored a 1998 study of Neurontin's use for the treatment of bipolar disorder that concluded that "patients receiving Neurontin did worse than those on sugar pills" and that the results of this study were not published until two years

---

[6] Mr. Cascio alleges that defendants' marketing personnel made many similar misrepresentations regarding other off-label uses of Neurontin. Cascio Compl. ¶ 180(b)-(j). He does not allege that his prescribing physician or psychiatrist was exposed to any of these purported misrepresentations either.

later. Id. ¶ 181. He claims that before publication of the results, "a substantial number of physicians had already been induced to prescribe Neurontin and a substantial number of patients had already been induced to take Neurontin." Id. Mr. Cascio does not allege that he or his physician was among those whose actions were purportedly influenced by the alleged suppression of these results. Moreover, it is evident from his allegations that the results of this study were available to him and his physician before his injury since according to his complaint, these results were disclosed in 2000 and he attempted suicide in January 2001. Id. ¶¶ 123, 181.

The only connection that Mr. Cascio alleges between the purported fraudulent marketing that he describes and his injury is either very conclusory or is based on information and belief. For instance, Mr. Cascio alleges merely that his physician prescribed Neurontin for his bipolar disorder "[b]y reason of defendants' conduct." Id. ¶ 114; id. ¶ 207 (alleging that he was injured "[b]y reason of defendants' acts, uses and employment of deception, unfair and deceptive acts"). He never identifies any single instance of such conduct that caused his physician to write this prescription. Mr. Cascio also alleges *on information and belief* that his physician prescribed Neurontin to him "in reliance upon defendants' direct and indirect advertising, marketing and promoting of Neurontin as being safe and effective for the treatment of bipolar disorder." Id. ¶ 119; see id. ¶ 202 (alleging that he "justifiably relied upon defendants' misrepresentations"). No purported fraudulent marketing practices upon which he or his physician relied are ever identified.

Mr. Cascio's failure to allege any specific instances of fraudulent marketing that are connected to his use of Neurontin for bipolar disorder is not unique to his complaint. Each of the other personal injury plaintiffs' complaints are similarly flawed. All of these plaintiffs allege the same broad array of fraudulent marketing practices. None, however, explain how even one of

7

these practices relates to their alleged injuries.  In fact, the personal injury plaintiffs do not make any allegations concerning how they came to be prescribed Neurontin.  They do not state when they were prescribed Neurontin, who prescribed Neurontin for them, how long they took Neurontin, or even if they were on Neurontin at the time of their injury.

**ARGUMENT**

**PLAINTIFFS' CLAIMS BASED ON ALLEGATIONS
REGARDING MARKETING PRACTICES SHOULD BE DISMISSED
FOR FAILURE TO STATE A CLAIM**

The personal injury plaintiffs allege that over the past decade defendants made misleading statements about Neurontin's safety and efficacy for off-label uses while marketing the drug in doctors' offices, at conferences or CME events, and through published articles.  See, e.g., Cascio Compl. ¶¶ 162-80.  Despite these allegations, the personal injury plaintiffs fail to allege that any misrepresentations were made to them or their doctors or that there is any link between these supposedly improper marketing practices and their injuries.  These basic pleading defects are fatal to their claims based upon such alleged misconduct.

The personal injury plaintiffs have seized upon certain allegations of off-label marketing of Neurontin at particular events or places as a supposed basis to recover damages.  For instance, plaintiffs recite allegations advanced in consumer protection complaints in this multidistrict litigation and across the country.  They also invoke Warner-Lambert's guilty plea to non-fraudulent instances of off-label promotion that occurred in 1995 and 1996, *three years* before the earliest allegation of a suicide or suicide attempt by any of the personal injury plaintiffs.  Leiendecker v. Pfizer, Inc., No. CIV 44874 (Cal. Sup. Ct. filed Aug. 5, 2005) ¶ 1.  None of the personal injury plaintiffs, however, describe any improper marketing that was connected either to

him or her or to his or her doctors, or explain how the alleged marketing misconduct caused him
or her to take the Neurontin that is allegedly responsible for his or her injuries.

Plaintiff Joseph Cascio's complaint is an illustrative example. See supra note 4. This
complaint, like all of the others, does not include any allegations concerning how the plaintiff
came to be prescribed Neurontin. Mr. Cascio's complaint also does not state when he was
prescribed Neurontin, who prescribed Neurontin for him, how long he took Neurontin, or even if
he was on Neurontin at the time of his alleged injury, a suicide attempt. In fact, his complaint is
completely silent as to his personal circumstances, and the medical decisions about his condition
that led to him being prescribed Neurontin.

Although Mr. Cascio generally alleges that he relied on statements made by defendants
about Neurontin's safety and efficacy for off-label uses, he does not identify any statements that
were made to either him or his physician, or that he relied upon in taking or being prescribed
Neurontin. Instead, he makes the conclusory allegation that he "justifiably relied upon
defendants' misrepresentations." Cascio Compl. ¶ 202. He alleges on information and belief
that his physician prescribed Neurontin to him "in reliance" on defendants' marketing. Id. ¶ 119.
He also generally alleges that "[b]y reason of defendants' acts, uses and employment of
deception, unfair and deceptive acts and practices . . . , reasonable patients/consumers, such as
[himself], were caused to attempt suicide." See, e.g., id. ¶ 207; see id. ¶ 114. These types of
bald assertions clearly do not suffice to state a claim. See Redondo-Borges v. U.S. Dep't of
Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005) ("[T]he court need not credit 'bald assertions,
unsupportable conclusions, periphrastic circumlocutions, and the like.'"); Hayduk v. Lanna, 775
F.2d 441, 444 (1st Cir. 1985) (explaining that under Rule 9(b), "mere allegations of fraud . . . or
referrals to plans and schemes are too conclusional . . . no matter how many times such

9

accusations are repeated."). Moreover, Mr. Cascio's allegation of reliance based on information and belief in paragraph 119 does not excuse him from pleading facts sufficient to show why this belief is reasonable. See Hayduk, 775 F.2d at 444 ("Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint.").

Mr. Cascio makes a number of allegations regarding defendants engaging in off-label promotion of Neurontin, but he does not claim that either he or his physician was aware of these marketing efforts or that they caused him to be prescribed Neurontin or to be injured by Neurontin. Every specific allegation regarding marketing practices made in Mr. Cascio's complaint is completely unrelated to his personal circumstances, and his physician's decision to prescribe Neurontin to him. In sum, neither his broad conclusory allegations of misconduct nor his specific unrelated assertions of misrepresentations being made can disguise the fact that Mr. Cascio does not allege that defendants engaged in any actionable conduct that caused his injury.

Claims based on alleged marketing misconduct brought by the personal injury plaintiffs, like Mr. Cascio, should be dismissed because of this failure to allege misrepresentations made to them that caused their injuries. As this Court explained in In re Pharmaceutical Industry Average Wholesale Price Litigation, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." C.A. No. 01-12257-PBS, 2004 U.S. Dist. LEXIS 21448, at *3 (D. Mass. Oct. 26, 2004). Applying this fundamental principle that a complaint must allege a connection between alleged misconduct and the complained of injury, a New York court recently dismissed a Neurontin consumer protection class action based on similar allegations of off-label promotion. See Baron v. Pfizer, Inc., Index No. 6429-04, slip op. at 7 (N.Y. Sup. Ct. May 2, 2006), attached to the Declaration of Patrick J. Murray, dated June 14,

2006, Exh. 1. The court noted that "nothing within the four corners of the complaint alleges that the deceptive conduct in which defendants supposedly engaged . . . caused plaintiff's physician to prescribe Neurontin for her, and such conduct resulted in actual injury to plaintiff." Id. As a result, the Baron court dismissed the consumer protection, common law fraud, and unjust enrichment claims because the named plaintiff failed to allege any factual connection between the wide range of alleged misconduct and her injury. See id. at 8-10. The claims based on marketing practices brought by the personal injury plaintiffs suffer from the same defect and should be similarly dismissed.

### A.    Plaintiffs Have Not Stated a Common Law Fraud Claim

The personal injury plaintiffs' common law fraud claims should be dismissed on these grounds. To assert a viable claim for common law fraud, a plaintiff must allege that (i) defendant falsely represented a material fact to the victim, (ii) for the purpose of inducing the victim to act thereon, and (iii) that the victim did rely upon the representation to his detriment. See Barrett Assocs. v. Aronson, 346 Mass. 150, 152 (1963); In re Lupron Mktg. & Sales Practices Litig., 295 F. Supp. 2d 148, 181 (D. Mass. 2003). Moreover, it is well-established that for fraud cases in federal court, each element except scienter must be pled with particularity in accordance with Rule 9(b). See Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997).

The personal injury plaintiffs' allegations are clearly insufficient to sustain a common law fraud cause of action. As an initial matter, most of their allegations involve off-label promotion, not fraudulent statements, see, e.g., Cascio Compl. ¶¶ 162-79, and thus, are not actionable as fraud. Furthermore, the personal injury plaintiffs have completely failed to identify any untrue representations that defendants made to them or their physicians. See, e.g., id. ¶ 180. Allegations that statements were made at certain times or places to unidentified physicians does

not meet plaintiffs' burden of alleging that statements were specifically made to their physicians. The personal injury plaintiffs have also not alleged that their physicians relied on particular statements, or that their injuries resulted from the alleged misrepresentations. See Baron, slip op. at 9 (dismissing a fraud claim because "the complaint lacks specific allegations regarding whether plaintiff's physician either received or relied upon any information in prescribing Neurontin for plaintiff"); Hernandez v. Ciba-Geigy Corp. USA, 200 F.R.D. 285, 292-93 (S.D. Tex. 2001) (dismissing fraud and consumer protection claims where the plaintiffs could not allege that their doctors relied on a misstatement in prescribing Ritalin).

While such a wholesale failure to allege a causal connection between supposed misrepresentations made by defendants and their injury would require dismissal under any pleading standard, this is particularly true under Rule 9(b). As the Lupron court explained, plaintiffs must specifically plead factual allegations describing how they came to rely on alleged misrepresentations or the extent to which those misrepresentations influenced their behavior. In re Lupron Mktg. & Sales Practices Litig., No. 01-CV-10861-RGS, 2004 U.S. Dist. LEXIS 18512, at *14-15 (D. Mass. Sept. 16, 2004); see Basham v. Gen. Shale Prods. Corp., C.A. No. 92-1608, 1993 U.S. App. LEXIS 4876, at *11 (4th Cir. Mar. 10, 1993) ("The weakness in appellants' argument is their failure to allege any facts establishing their reliance on [defendant's] alleged misrepresentations."); Hearn v. R.J. Reynolds Tobacco Co., 279 F. Supp. 2d 1096, 1114 (D. Ariz. 2003) ("Plaintiffs must allege with particularity how [the decedent] knew of the various particular statements noted in the Complaint and how she reasonably relied on them."). It is obvious, therefore, that plaintiffs have not adequately alleged a claim for common law fraud.

**B.      Plaintiffs Have Not Stated a Negligent Misrepresentation Claim**

For the same reasons, plaintiffs have failed to allege the elements of negligent

misrepresentation.  See Rogers v. NSTAR Elec., 389 F. Supp. 2d 100, 110 (D. Mass. 2005)

(explaining that "[t]o recover on a claim for negligent misrepresentation, the plaintiffs must

establish that defendants (i) negligently made a false statement of material fact, (ii) to induce

action by the plaintiffs, (iii) on which the plaintiffs relied to their detriment").  While the

personal injury plaintiffs' negligent misrepresentation claims should be dismissed for failure to

assert a connection between alleged misstatements and plaintiffs' injuries, their allegations are

particularly deficient because in federal court negligent misrepresentation must be alleged with

specificity under Rule 9(b).  See In re Phenylpropanolamine (PPA) Prods. Liab. Litig., MDL No.

1407, 2005 U.S. Dist. LEXIS 37008, at *4-6 (W.D. Wash. Aug. 29, 2005) (dismissing fraud and

negligent misrepresentation claims where the plaintiffs did not allege with particularity "the

precise misrepresentations or omissions made, the time, place, and manner in which they were

made, and the persons to whom they were made," as well as that they relied on

misrepresentations in taking the medication); Fagan v. AmerisourceBergen Corp., 356 F. Supp.

2d 198, 218-19 (E.D.N.Y. 2004); Epstein v. C.R. Bard, Inc., C.A. No. 03-12297-RWZ, 2004 U.S.

Dist. LEXIS 13384, at *9-11 (D. Mass. July 19, 2004) (analyzing fraud and negligent

misrepresentation claims under Rule 9(b) and concluding that "aside from bald assertions that

such representations were made to induce his reliance on them, and that he did so to his

detriment, plaintiff alleges no facts").

**C.      Plaintiffs Have Not Stated a Consumer Protection Claim**

Similarly, plaintiffs have failed to allege the essential elements of their consumer

protection claims.  Although state consumer protection statutes vary widely from state to state,

13

each requires a plaintiff to allege some fraudulent or deceptive practice, as well as a causal

connection between that practice and a plaintiff's claimed injury for which recovery is sought.

See, e.g., Mass. Farm Bureau Fed'n, Inc. v. Blue Cross of Mass., Inc., 532 N.E.2d 660, 665

(Mass. 1989) (finding that under the Massachusetts consumer protection statute there must be a

causal link between a deceptive practice and an injury); Fink v. Ricoh Corp., 839 A.2d 942, 955-

56 (N.J. Super. Ct. App. Div. 2003) (examining different state consumer protection statutes and

finding that they all require a casual nexus between misconduct and injury).  Again, plaintiffs

here have alleged neither.  They have failed to identify any fraudulent or deceptive practice that

is related to their injuries, and they have not alleged any causal connection between the various

purported acts of misconduct that they allege and their injuries.  Consequently, their consumer

protection claims should be dismissed.  See, e.g., Baron, slip op. at 8 (dismissing plaintiff's New

York consumer protection claim).

It is also noteworthy that the personal injury plaintiffs' consumer protections claims are

based on alleged misrepresentations made by defendants and thus, sound in fraud.  Similarly to

fraud and negligent misrepresentation claims, in federal court Rule 9(b) applies to all averments

sounding in fraud, including claims brought under state consumer protection statutes.  See, e.g.,

Gwyn v. Loon Mtn. Corp., C.A. No. 01-00214-B, 2002 U.S. Dist. LEXIS 9092, at *25 (D.N.H.

May 15, 2002) (applying Rule 9(b) to a claim alleging misrepresentations in violation of New

Hampshire's consumer protection statute), aff'd, 350 F.3d 212 (1st Cir. 2003); Archdiocese of

San Salvador v. FM Int'l, LLC, C.A. No. 05-cv-237-JD, 2006 U.S. Dist. LEXIS 6964, at *22

(D.N.H. Feb. 23, 2006).  But see Lawson v. Affirmative Equities Co., L.P., 341 F. Supp. 2d 51,

14

67 & n.25 (D. Mass. 2004).[7]  Moreover, it is established law in other contexts, such as actions brought pursuant to the federal securities laws, that claims sounding in fraud should be alleged with the specificity required by Rule 9(b).  See In re Sonus Networks, Inc. Sec. Litig., C.A. No. 04-10294-DPW, 2006 U.S. Dist. LEXIS 28272, at *17-22 (D. Mass. May 10, 2006) (holding that Rule 9(b) applies to claims brought under Sections 11 and 12(a)(2) that sound in fraud); In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 272 (3d Cir. 2006); Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004).  As the Ninth Circuit succinctly explained:  "In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. . . .  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

**D.    Plaintiffs Have Not Stated a Breach of Express Warranty Claim**

Finally, plaintiffs' pleading defect is fatal to their claims for breach of express warranty. To plead such a claim, plaintiffs must allege (i) that defendants made promises to them amounting to an express warranty; (ii) breach of the warranty; (iii) causation; and (iv) damages. See Louis R. Frumer & Cary Stewart Sklaren, Products Liability § 9.02 (2d ed. 2006) (outlining the elements for breach of express warranty as a cause of action).  In addition, with the exception of six states – Alabama, Colorado, Delaware, Idaho, Missouri, and Washington – every

---

[7] Although the Lawson court held that Massachusetts consumer protection claims sounding in fraud should not be evaluated under Rule 9(b), 341 F. Supp. 2d at 67, two other district courts in this Circuit have disagreed.  See Gwyn, 2002 U.S. Dist. LEXIS 9092, at *25; Archdiocese of San Salvador, 2006 U.S. Dist. LEXIS 6964, at *22. Defendants respectfully submit that Gwyn and San Salvador were properly decided.  Lawson purports to rely upon Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61 (1st Cir. 2004), and Swierkiewicz v. Sorema, 534 U.S. 506 (2002), for the proposition that the pleading of claims sounding in fraud should be evaluated under Rule 8(a), but nothing in those civil rights pleading cases demands this.  In fact, this is contrary to the plain language of the rule.  Fed. R. Civ. P. 9(b) (referring to "all averments of fraud").

jurisdiction interprets the relevant section of the UCC to require that in order for a plaintiff to assert a claim for breach of express warranty, the plaintiff must have relied on the supposed express warranty as part of the basis for their purchase. See id.; e.g., In re HP Inkjet Printer Litig., No. C 05-3580 JF, 2006 U.S. Dist. LEXIS 12848, at *13 (N.D. Cal. Mar. 7, 2006) ("In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." (citations omitted)). "First of all, asserting that a product is 'safe and effective' is not sufficiently clear to create an express warranty." In re Meridia Prods. Liab. Litig., 328 F. Supp. 2d 791, 818 (N.D. Ohio 2004), aff'd, No. 06a0158, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). Also, because the personal injury plaintiffs have not alleged that defendants made any statements about Neurontin's safety and efficacy for off-label uses that were communicated to them, they have not demonstrated the existence of an express warranty. See Jones v. Lederle Labs., 695 F. Supp. 700, 709 (E.D.N.Y. 1988) (finding that there was no express warranty where a plaintiff could not allege that a drug manufacturer made representations to her). The personal injury plaintiffs also have not alleged that they or their doctors relied upon this express warranty, and thus they do not have a viable cause of action in those states that require reliance for a breach of express warranty claim. See, e.g., Yurcic v. Purdue Pharma, L.P., 343 F. Supp. 2d 386, 394-95 (M.D. Pa. 2004) (dismissing a breach of warranty claim where the plaintiff did not allege that he relied on a warranty in purchasing OxyContin); Alexander v. Smith & Nephew, P.L.C., 98 F. Supp. 2d 1276, 1286 (N.D. Okla. 2000) ("Plaintiff's claim for breach of express warranty fails, because Plaintiff has submitted no evidence that Dr. Hawkins relied on any of Defendant's representations.").

*    *    *

The personal injury plaintiffs' glaring failure to allege basic facts that show a link between the alleged misconduct and their supposed injuries is all the more important because plaintiffs' physicians could have prescribed Neurontin to them for various reasons. Not only might those reasons have been unrelated to defendants' actions, but they could have been based upon completely lawful and legitimate conduct by defendants. In light of this, it is essential that plaintiffs allege to what actionable statements they were exposed and why they are fraudulent.

The personal injury plaintiffs have identified no particular misconduct that is connected to their injuries, and consequently, their claims of fraud, negligent misrepresentation, consumer protection violations, and breach of express warranty must be dismissed.

## CONCLUSION

For all of the foregoing reasons, the personal injury plaintiffs' claims based upon allegedly improper marketing practices should be dismissed with prejudice.

Dated: June 15, 2006

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
      James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:   /s/ David B. Chaffin
        David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and*
*Warner-Lambert Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on June 15, 2006.

/s/ David B. Chaffin

18

# Appendix

Neurontin Marketing, Sales Practices, & Products Liability Litigation

# Personal Injury Plaintiffs' Claims
# Subject to Defendants' Motion To Dismiss

| Number | Action | Case No. |
|--------|--------|----------|
| 1 | *Accettullo v. Pfizer Inc.* | 1:06-cv-10912-PBS |
| 2 | Acton v. Pfizer Inc. | 1:05-cv-12129-PBS |
| 3 | Adkins v. Pfizer Inc. | 1:06-cv-10539-PBS |
| 4 | *Almeida v. Pfizer Inc.* | 1:05-cv-11264-PBS |
| 5 | Alsberge v. Pfizer Inc. | 1:06-cv-10957-PBS |
| 6 | Alsberge v. Pfizer Inc. | 1:05-cv-11699-PBS |
| 7 | *Anderson v. Pfizer Inc.* | 1:05-cv-10835-PBS |
| 8 | *Aranda v. Pfizer Inc.* | 1:06-cv-10310-PBS |
| 9 | Aronson v. Pfizer Inc. | 1:05-cv-11024-PBS |
| 10 | *Barker v. Pfizer Inc.* | 1:05-cv-10836-PBS |
| 11 | *Barlow v. Pfizer Inc.* | 1:05-cv-11501-PBS |
| 12 | Belbruno v. Pfizer Inc. | 1:05-cv-11153-PBS |
| 13 | Belongie v. Pfizer Inc. | 1:06-cv-10109-PBS |
| 14 | Bentley v. Pfizer Inc. | 1:05-cv-11997-PBS |
| 15 | *Blackwell v. Pfizer Inc.* | 1:06-cv-10420-PBS |
| 16 | Briggs v. Pfizer Inc. | 1:05-cv-11700-PBS |
| 17 | Brodsky v. Pfizer Inc. | 1:05-cv-10828-PBS |
| 18 | *Brown (L) v. Pfizer Inc.* | 1:06-cv-10776-PBS |
| 19 | Brown v. Pfizer Inc. | 1:05-cv-11037-PBS |
| 20 | Browne v. Pfizer Inc. | 1:05-cv-12385-PBS |
| 21 | Burke v. Pfizer Inc. | 1:06-cv-10779-PBS |
| 22 | *Burroughs (F) v. Pfizer Inc.* | 1:05-cv-11260-PBS |
| 23 | Cailor v. Pfizer Inc. | 1:06-cv-10537-PBS |
| 24 | Cascio v. Pfizer Inc. | 1:06-cv-10536-PBS |
| 25 | Christ v. Pfizer Inc. | 1:05-cv-12128-PBS |
| 26 | *Coleman v. Pfizer Inc.* | 1:05-cv-11504-PBS |
| 27 | Colton v. Pfizer Inc. | 1:05-cv-11996-PBS |
| 28 | Cook v. Pfizer Inc. | 1:06-cv-10777-PBS |
| 29 | *Cooper v. Pfizer Inc.* | 1:05-cv-10834-PBS |
| 30 | *Craft v. Pfizer Inc.* | 1:05-cv-12444-PBS |
| 31 | *Cunningham v. Pfizer Inc.* | 1:05-cv-11503-PBS |
| 32 | Dane v. Pfizer Inc. | 1:05-cv-12384-PBS |
| 33 | Dees v. Pfizer Inc. | 1:05-cv-11028-PBS |
| 34 | DiGiacomo v. Pfizer Inc. | 1:05-cv-11023-PBS |
| 35 | Dixon v. Pfizer Inc. | 1:05-cv-11998-PBS |
| 36 | Dodson v. Pfizer Inc. | 1:05-cv-11025-PBS |
| 37 | Dolgoff v. Pfizer Inc. | 1:05-cv-12075-PBS |
| 38 | *Dorsey v. Pfizer Inc.* | 1:05-cv-10639-PBS |
| 39 | *Edwards v. Pfizer Inc.* | 1:05-cv-11701-PBS |

| Number | Action | Case No. |
|--------|--------|----------|
| 40 | Ellis v. Pfizer Inc. | 1:06-cv-10914-PBS |
| 41 | *Felici v. Pfizer Inc.* | 1:06-cv-10689-PBS |
| 42 | Feyer v. Pfizer Inc. | 1:05-cv-11035-PBS |
| 43 | *Fish v. Pfizer Inc.* | 1:05-cv-11505-PBS |
| 44 | Flanders v. Pfizer Inc. | 1:06-cv-10913-PBS |
| 45 | *Fonseca v. Pfizer Inc.* | 1:06-cv-10311-PBS |
| 46 | French v. Pfizer Inc. | 1:05-cv-12595-PBS |
| 47 | *Gambardello v. Pfizer Inc.* | 1:05-cv-11262-PBS |
| 48 | George (L) v. Pfizer Inc. | 1:06-cv-10112-PBS |
| 49 | Haddock v. Pfizer Inc. | 1:06-cv-10254-PBS |
| 50 | Hargrove v. Pfizer Inc. | 1:05-cv-11034-PBS |
| 51 | *Henderson v. Pfizer Inc.* | 1:06-cv-10956-PBS |
| 52 | Henry v. Pfizer Inc. | 1:05-cv-11995-PBS |
| 53 | *Huff v. Pfizer Inc.* | 1:06-cv-10954-PBS |
| 54 | Huffman v. Pfizer Inc. | 1:05-cv-10829-PBS |
| 55 | James v. Pfizer Inc. | 1:05-cv-11022-PBS |
| 56 | Jarosz v. Pfizer Inc. | 1:05-cv-11263-PBS |
| 57 | *Johnson (E) v. Pfizer Inc.* | 1:06-cv-10309-PBS |
| 58 | *Johnson (M) v. Pfizer Inc.* | 1:06-cv-12073-PBS |
| 59 | Keegan v. Pfizer Inc. | 1:06-cv-10538-PBS |
| 60 | Kern v. Pfizer Inc. | 1:05-cv-11027-PBS |
| 61 | *Leiendecker v. Pfizer Inc.* | 1:05-cv-12074-PBS |
| 62 | Lutz v. Pfizer Inc. | 1:06-cv-10255-PBS |
| 63 | Lyman v. Pfizer Inc. | 1:05-cv-11020-PBS |
| 64 | Marzolo v. Pfizer Inc. | 1:05-cv-12387-PBS |
| 65 | McGee v. Pfizer Inc. | 1:05-cv-12593-PBS |
| 66 | *McPherson v. Pfizer Inc.* | 1:05-cv-12076-PBS |
| 67 | Mendoza v. Pfizer Inc. | 1:05-cv-11033-PBS |
| 68 | *Minervino v. Pfizer, Inc.* | 1:05-cv-11513-PBS |
| 69 | Minisquero v. Pfizer Inc. | 1:05-cv-11021-PBS |
| 70 | Montgomery (M) v. Pfizer | 1:06-cv-10110-PBS |
| 71 | Montgomery (W) v. Pfizer | 1:05-cv-11032-PBS |
| 72 | Morris v. Pfizer Inc. | 1:06-cv-10780-PBS |
| 73 | Mosley v. Pfizer Inc. | 1:05-cv-12388-PBS |
| 74 | O'Bryan v. Pfizer Inc. | 1:05-cv-12594-PBS |
| 75 | Owens v. Pfizer Inc. | 1:05-cv-11017-PBS |
| 76 | Paulsen v. Pfizer Inc. | 1:05-cv-10830-PBS |
| 77 | Populis v. Pfizer Inc. | 1:05-cv-11030-PBS |
| 78 | *Reott v. Pfizer Inc.* | 1:05-cv-11514-PBS |
| 79 | Retzer v. Pfizer Inc. | 1:05-cv-11036-PBS |
| 80 | Richey v. Pfizer Inc. | 1:05-cv-12000-PBS |
| 81 | Roberson v. Pfizer Inc. | 1:05-cv-12001-PBS |
| 82 | *Salinas v. Pfizer Inc.* | 1:06-cv-10687-PBS |
| 83 | *Sanutti v. Pfizer Inc.* | 1:05-cv-11702-PBS |
| 84 | Scott (K) v. Pfizer Inc. | 1:06-cv-10253-PBS |
| 85 | Sims v. Pfizer Inc. | 1:06-cv-10419-PBS |
| 86 | Sizemore v. Pfizer Inc. | 1:06:cv-10111-PBS |

| Number | Action | Case No. |
|--------|--------|----------|
| 87 | Smith (Mo) v. Pfizer Inc. | 1:05-cv-10833-PBS |
| 88 | Smith (Ro) v. Pfizer Inc. | 1:05-cv-12386-PBS |
| 89 | Smith (Ro) v. Pfizer Inc. | 1:06-cv-10535-PBS |
| 90 | Smith (Ru) v. Pfizer Inc. | 1:05-cv-11515-PBS |
| 91 | Smolucha v. Pfizer Inc. | 1:05-cv-11261-PBS |
| 92 | Spears v. Pfizer Inc. | 1:06-cv-10108-PBS |
| 93 | Strickland (B) v. Pfizer Inc. | 1:06-cv-10778-PBS |
| 94 | Strickland (K) v. Pfizer Inc. | 1:05-cv-11993-PBS |
| 95 | Sumait v. Pfizer Inc. | 1:05-cv-10832-PBS |
| 96 | Teater v. Pfizer Inc. | 1:05-cv-12123-PBS |
| 97 | Veraas v. Pfizer Inc. | 1:05-cv-11029-PBS |
| 98 | Vercillo v. Pfizer Inc. | 1:05-cv-11019-PBS |
| 99 | Watson v. Pfizer Inc. | 1:05-cv-12002-PBS |
| 100 | Wendorf v. Pfizer Inc. | 1:05-cv-11999-PBS |
| 101 | Werner v. Pfizer Inc. | 1:05-cv-11994-PBS |
| 102 | White (J) v. Pfizer Inc. | 1:05-cv-12127-PBS |
| 103 | Whitehouse(s) v. Pfizer Inc. | 1:05-cv-11018-PBS |
| 104 | Wilson (K) v. Pfizer Inc. | 1:05-cv-11031-PBS |
| 105 | Wilson (Lo) v. Pfizer, Inc. | 1:05-cv-11502-PBS |