UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                :    MDL Docket No. 1629
In re:   NEURONTIN MARKETING, SALES PRACTICES                    :
         AND PRODUCTS LIABILITY LITIGATION                      :    Master File No. 04-10981
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    Judge Patti B. Saris
                                                                :
THIS DOCUMENT RELATES TO:                                       :    Magistrate Judge Leo T.
                                                                :    Sorokin
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                :
HARDEN MANUFACTURING CORP., et al.,                             :
v. PFIZER INC., et uno.                                         :
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                                :
THE GUARDIAN LIFE INSURANCE COMPANY OF                          :
AMERICA v. PFIZER INC. and                                      :
                                                                :
AETNA, INC. v. PFIZER INC.                                      :
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR PROTECTIVE ORDER CONCERNING SCOPE OF DISCOVERY

Defendants Pfizer Inc. and Warner-Lambert Company submit this memorandum in further support of their motion for a protective order concerning the scope of discovery.

## PRELIMINARY STATEMENT

While defendants have tailored their motion for a protective order to the Court's rulings in this case, plaintiffs continue to take a scorched earth approach to discovery in this litigation. Plaintiffs refuse to narrow their discovery requests or even acknowledge the burden that their unreasonably broad requests would impose upon defendants. Instead, plaintiffs argue that the Court's ruling narrowing the claims upon which they can proceed should have no effect on the sweeping discovery demands that they have served in this case. In the alternative, plaintiffs claim that their second amended complaints have fixed the deficiencies identified in the Court's

ruling and justify the broad discovery they seek. Plaintiffs are wrong on both counts. The Court

has narrowed the claims at issue in these complaints, and discovery should be tailored to the

theories of fraud the Court has allowed to proceed. Plaintiffs have also not corrected the

deficiencies in their complaints, as defendants intend to demonstrate in their forthcoming

motions to dismiss. (It may be appropriate for the Court to delay ruling on the appropriate scope

of discovery until ruling on those motions.) In any event, defendants' proposed discovery

approach will provide plaintiffs with the documents that they need while not putting an excessive

and undue burden upon defendants.

## ARGUMENT

### I.    The Court Has Permitted Only Two Fraud Claims To Proceed and This Remains True Under the Second Amended Complaints

#### A.    The Surviving Theories of Fraud

Plaintiffs incorrectly argue that the defendants' memorandum in support of motion for a

protective order ("Defs.' Mem.") "grossly understates" the holding of the January 31, 2006

Report and Recommendation (the "Report") and the June 12, 2006 Memorandum and Order (the

"Order"). Pls.' Opp'n at 1.[1] It is plaintiffs, however, who distort the Court's order and

steadfastly refuse to acknowledge that it has any effect on the scope of discovery.

Although the Court did observe that certain of plaintiffs' allegations satisfied Rule 9(b)'s

pleading requirements, Report at 39, the Court went on to analyze plaintiffs' claims under Rule

12(b)(6). Id. at 42-53. For example, the Court concluded that "Plaintiffs' allegations of a fraud

based upon misrepresentations that scientific evidence supported Neurontin's use fail under

12(b)(6)." Id. at 46. These findings were adopted by Judge Saris. Order at 20-21. Accordingly,

---

[1] "Pls.' Opp'n" is used in this memorandum to refer to Marketing and Sales Practices Plaintiffs' Supplemental Memorandum in Support of Their Motion to Compel Production of Documents Created After December 31, 1998 and in Opposition to Defendants' Motion for Protective Order Concerning Scope of Discovery.

plaintiffs can no longer pursue claims based on this alleged fraud.[2] As demonstrated in defendants' opening brief, the dismissal of these claims should limit the scope of discovery under applicable law and rules.

Plaintiffs also claim that defendants ignore their RICO claims, which they claim "have survived intact." Pls.' Opp'n at 4. The Court held that the complaints adequately alleged the existence of a series of enterprises made up of each medical marketing firm and defendants. This does not mean that plaintiffs are entitled to discovery of every document that passed between defendants and the marketing firms. "To state a successful RICO claim, a plaintiff must allege four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Report at 15 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). A pattern of racketeering activity involves the commission of at least two predicate acts enumerated in the RICO statute. Giuliano v. Fulton, 399 F.3d 381, 388 (1st Cir. 2005) (citing 18 U.S.C. § 1961(5)). Because the Court has limited the theories of actionable fraud to the two discussed in defendants' memorandum, only conduct related to those two theories can support an allegation that the alleged enterprises engaged in a pattern of racketeering activity.

**B.      The Second Amended Complaints Do Not Justify Broad Discovery**

The amendments that plaintiffs made to their complaints do not serve to expand the scope of the theories of fraud under which the Court has held they can proceed. As an initial matter, the Second Coordinated Amended Complaint only pleads certain additional allegations related to dosage and the relative costs of the drug and does not include any additional allegations regarding the conditions for which no actionable allegations survived the motion to dismiss – that

---

[2] The fact that the Court assessed the adequacy of allegations separately under Rule 9(b) and Rule 12(b)(6) is demonstrated by the Court's review of the allegations regarding social phobia under Rule 12(b)(6). The Court stated that "[a]lthough the allegations regarding Social Phobia failed to survive the Defendants' Rule 9(b) objection, I analyze them here as well *for the sake of completeness.*" Report at 51 n. 22 (emphasis added). In other words, claims or allegations need only fail under one test, either Rule 9(b) or Rule 12(b)(6), but not under both.

is pain, social phobia, and restless leg syndrome. In addition, while the Second Amended Class

Complaint attempts to revise its allegations in some respects to squeeze more off-label uses and

allegations under the umbrella of the two surviving fraud theories, it is unsuccessful in doing so,

as will be discussed in defendants' forthcoming motion to dismiss. Accordingly, the second

amended complaints do not justify an expansion of the scope of discovery at this juncture.[3]

## II.    Plaintiffs Fail to Adjust Their Position in Light of Current Case Posture

Plaintiffs refuse to modify their discovery requests, despite the fact that the Court has

narrowed the theories of fraud under which they may proceed, and they insist that they are

entitled to the same sweeping discovery they have demanded from the beginning. Indeed,

plaintiffs label a section of their memorandum with the heading that "[t]he claims dismissed by

the court should not affect the scope of discovery." Pls.' Opp'n at 7. Plaintiffs fail to provide

one shred of legal support for this statement. Nor do they address the legal arguments and case

law regarding the effect of the 2000 Amendments to Rule 26 of the Federal Rules of Civil

Procedure that are discussed in defendants' memorandum and establish that plaintiffs are not

entitled to discovery as to dismissed claims. See Defs.' Mem. at 11-13.

Defendants have tailored their position to the Court's rulings, arguing only that they

should not be required to produce documents that are "unrelated to relevant meetings allegedly

sponsored by the defendants regarding monotherapy, DPN, bipolar disorder, panic disorder, and

migraine studies, as well as documents unrelated to the relevant clinical studies regarding these

---

[3] Plaintiffs also identify a list of new allegations in the class action plaintiffs' second amended complaint that they claim establish that discovery should not be limited to an "arbitrary date limitation." Pl. Mem. at 11. Defendants are not arguing for an arbitrary limitation on discovery, temporal or otherwise. Instead, defendants believe that the scope of discovery should be tailored to the claims in the complaints that the Court has allowed to proceed. Indeed, defendants have consistently taken this position. During briefing in 2005 regarding the scope of discovery, defendants noted that they would provide discovery into post-1998 conduct to the extent that plaintiffs made sufficiently particular allegations about such conduct. See, e.g., Defendants' Opposition to Motion to Compel Production of Documents Created After December 31, 1998, Docket No. 184, at 9 n. 6 (noting that post-1998 letters from the Food and Drug Administration to defendants regarding Neurontin could be the subject of targeted discovery).

conditions." Defs.' Mem. at 14. This tailoring of discovery is reasonable in light of the Court's determination that two theories of fraud relating to certain of these indications survived the motions to dismiss.

In contrast, plaintiffs not only fail to adjust, even slightly, their document demands in the wake of the narrowing of their claims, but they also fail to acknowledge at several points in their opposition that defendants have done so. Throughout plaintiffs' memorandum, they mischaracterize defendants' position regarding discovery and then argue against that straw man, claiming that discovery should not be subject to an "artificial cut-off date of December 31, 1998." See, e.g., Pls.' Opp'n at 1; see also id. at 2 (claiming defendants seek to limit production to the marketing documents produced in the Franklin case). Plaintiffs' failure to support their portrayal of defendants' position with citations to defendants' memorandum is a tell-tale sign of the lack of basis for plaintiffs' mischaracterization of defendants' positions.

In the wake of the ruling on the motions to dismiss, defendants adjusted their motion for a protective order in recognition of the cases' current posture. Plaintiffs, in marked contrast, continue to take the same position they have staked out since the beginning of this litigation and insist on nothing less than receipt of every scrap of paper related to off-label uses of Neurontin (and many others not related to off-label uses). See Pls.' Opp'n at 1 (noting that plaintiffs' position is "that Defendants should be required to produce all relevant documents relating to Parke-Davis' and Pfizer's off-label promotion of Neurontin subsequent to 1998."); see also id. at 7 n.5 (suggesting that "[b]eing required to produce all off-label marketing materials" would somehow be less burdensome for defendants).

Plaintiffs think nothing of requiring defendants to incur millions of dollars of expense in order to produce documents unrelated to the claims that have survived defendants' motions to

dismiss. Indeed, plaintiffs blithely dismiss such burden with the outrageous claim that it is actually *easier* for defendants to simply turn over everything in the company related to Neurontin than to limit the scope of that production because defendants could therefore avoid a document by document review. Pls.' Opp'n at 7 n.5. Such a statement displays a remarkable lack of understanding about the realities of discovery and document production. At a minimum, defendants must review every document prior to production for privilege and confidentiality, as well as responsiveness.

### III.    Vendor Documents

Defendants disagree with both of plaintiffs' arguments with respect to the discovery of materials related to medical marketing firms. First, plaintiffs argue that "off-label marketing documents that are not directly relevant to specific misrepresentations at issue would still be relevant to the defenses of lack of control and lack of enterprise." Pls.' Opp'n at 8. Defendants intend to move to dismiss many of the remaining RICO enterprises. After the Court rules on this issue in connection with defendants' forthcoming motions to dismiss, plaintiffs should serve specific requests with respect to the vendors, if any, who remain participants in a RICO enterprise.

Second, for all the reasons discussed above, defendants disagree with plaintiffs' demand that certain boxes of vendor documents be immediately turned over in their entirety to plaintiffs. Those documents, as well as documents from all third parties, should be governed by the Court's ruling on the permissible scope of discovery.

### IV.    Scope of Discovery in Product Liability Actions

Plaintiffs also demonstrate a surprising lack of understanding for the scope of discovery that has been allowed in the product liability cases. The Court has ruled on template discovery

that relates to discovery into communications between defendants and each individual plaintiff's prescribing physician regarding Neurontin, through the date of the alleged injury. The Court has not yet addressed whether the product liability plaintiffs are entitled to additional discovery of marketing documents outside that permitted under the discovery templates.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court enter the requested protective order.

Dated:   July 7, 2006

PFIZER INC., et uno,

By their attorneys,

s/ James P. Rouhandeh
James P. Rouhandeh

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

-and-

s/ David B. Chaffin
David B. Chaffin
BBO # 549245
HARE & CHAFFIN
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on July 7, 2006.

/s/David B. Chaffin