UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:  NEURONTIN MARKETING, SALES PRACTICES,
        AND PRODUCTS LIABILITY LITIGATION

:
:
:
:
:

MDL Docket No. 1629

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

Master File No. 04-10981

:
:
:

Judge Patti B. Saris

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HARDEN MANUFACTURING CORPORATION;
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,
dba BLUECROSS/BLUESHIELD OF LOUISIANA;
INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL
52 HEALTH BENEFITS TRUST; GERALD SMITH; and
LORRAINE KOPA, on behalf of themselves and all others
similarly situated, v. PFIZER INC. and WARNER-LAMBERT
COMPANY.

Magistrate Judge Leo T.
Sorokin

:
:
:
:
:
:
:
:
:
:
:
:
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC. and

AETNA, INC. v. PFIZER INC.

:
:
:
:
:
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW OF PFIZER INC. AND
WARNER-LAMBERT COMPANY IN SUPPORT OF THEIR MOTION
TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
AND THE SECOND COORDINATED AMENDED COMPLAINT**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.  PLAINTIFFS DO NOT ADEQUATELY ALLEGE RICO CLAIMS
    BASED ON CERTAIN VENDOR ENTERPRISES ................................................. 2

    A.  HCC .............................................................................................................. 5

    B.  Boron LePore ............................................................................................... 5

    C.  MES and Physicians World............................................................................ 6

    D.  CME .............................................................................................................. 6

    E.  MAC .............................................................................................................. 7

II.  THE CLASS PLAINTIFFS' COMMON LAW FRAUD CLAIM SHOULD
     BE DISMISSED FOR FAILURE TO ALLEGE RELIANCE ............................. 7

III. DEFENDANTS ARE NOT LIABLE FOR ALLEGED
     MISREPRESENTATIONS MADE BY PHYSICIANS..................................... 9

IV.  THE CLASS PLAINTIFFS' NEW ALLEGATIONS REGARDING CERTAIN
     OFF-LABEL USES FAIL TO ALLEGE FRAUD ........................................... 12

    A.  The Class Plaintiffs' Fraud Claims Regarding Pain Other than
        Diabetic Peripheral Neuropathy Should Be Dismissed......................... 12

    B.  The Class Plaintiffs' Fraud Claims Regarding Bipolar Disorder and
        "Other Mood Disorders" Should Be Dismissed.................................... 14

    C.  The Class Plaintiffs' Fraud Claims Regarding Anxiety Disorders,
        Including Panic Disorder, Social Phobia, and Generalized Anxiety
        Disorder Should Be Dismissed ............................................................. 15

V.   THE COORDINATED PLAINTIFFS HAVE FAILED TO CURE
     THE DEFECTS IN THEIR ALLEGATIONS REGARDING LOSS............................. 16

VI.  THE COORDINATED PLAINTIFFS HAVE FAILED TO STATE A CLAIM
     UNDER THE PENNSYLVANIA INSURANCE FRAUD STATUTE ......................... 18

CONCLUSION ................................................................................................................ 20

i

## TABLE OF AUTHORITIES

### Cases

**Page**

Afonso v. Boston, 587 F. Supp. 1342 (D. Mass. 1984) ................................................ 11

In re Alkermes Sec. Litig., C.A. No. 03-12091,
    2005 U.S. Dist. LEXIS 25826 (D. Mass. Oct. 6, 2005) ........................................... 10

Baena v. KPMG LLP, No. 05-2868, 2006 U.S. App. LEXIS 15577
    (1st Cir. June 22, 2006) ............................................................................................ 10

Beddall v. State St. Bank & Trust Co., 137 F.3d 12 (1st Cir. 1998) ............................... 13

Bonilla v. Volvo Car Corp., 150 F.3d 62 (1st Cir. 1998) ............................................. 3, 5

In re Brennan, No. 98-13487, 1999 Bankr. LEXIS 1890
    (Bankr. D.N.H. May 14, 1999) ................................................................................. 11

Brown v. Philip Morris Inc., 228 F. Supp. 2d 506 (D.N.J. 2002) ................................... 8

In re Cabletron Sys., Inc., 311 F.3d 11 (1st Cir. 2002) ................................................... 9

Colonial Mortgage Bankers Corp. v. Lopez-Stubbe,
    324 F.3d 12 (1st Cir. 2003) ...................................................................................... 13

Cope v. Met. Life Ins. Co., 696 N.E.2d 1001 (Ohio 1998) .............................................. 8

Coyne v. Somerville, 972 F.2d 440 (1st Cir. 1992) ................................................. 14, 15

Desiano v. Warner-Lambert Co., 326 F.3d 339 (2d Cir. 2003) ..................................... 17

Evans v. Pearsons Enters., 434 F.3d 839 (6th Cir. 2006) ......................................... 7, 8

Fed. Sav. & Loan Ins. Corp. v. Shearson-American Express,
    658 F. Supp. 1331 (D.P.R. 1987) ............................................................................. 10

Giuliano v. Fulton, 399 F.3d 381 (1st Cir. 2005) ........................................................... 3

Hohenleitner v. Quorum Health Res., 758 N.E.2d 616 (Mass. 2001) ............................ 11

In re Jackson Nat'l Life Ins. Co. Premium Litig.,
    183 F.R.D. 217 (W.D. Mich. 1998) ........................................................................... 8

Kaufman v. i-Stat Corp., 754 A.2d 1188 (N.J. 2000) ..................................................... 8

**Page**

In re Lupron Mktg. & Sales Practices Litig., No. 01-CV-10861,
    2004 U.S. Dist. LEXIS 18512 (D. Mass. Sept. 16, 2004)............................................. 7, 18, 19

Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir. 1991) ........................................................ 10

New Eng. Data Servs. Inc. v. Becher, 829 F.2d 286 (1st Cir. 1987) ................................................. 3

Sabel v. Mead Johnson & Co., 737 F. Supp. 135 (D. Mass. 1990)................................................. 11

Seimer v. Assocs. First Capital Corp., CV 97-281,
    2000 U.S. Dist. LEXIS 21244 (D. Ariz. Dec. 13, 2000)............................................................. 8

Sekuk Global Enter. v. KVH Indus., C.A. No. 4-306,
    2005 U.S. Dist. LEXIS 16628 (D.R.I. Aug. 11, 2005) ............................................................. 10

Smith v. Mitlof, 198 F. Supp. 2d 492 (S.D.N.Y. 2002) ................................................................. 8

Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654 (7th Cir. 1992)............................................. 4

Tamburello v. Comm-Tract Corp., 67 F.3d 973 (1st Cir. 1995).................................................... 4

Thornton v. Harvard Univ., 2 F. Supp. 2d 89 (D. Mass. 1998) ................................................... 11

United States v. O'Connell, 890 F.2d 563 (1st Cir. 1989)............................................................. 10

United States ex rel. Franklin v. Parke-Davis,
    147 F. Supp. 2d 39 (D. Mass. 2001) ..................................................................................... 19

United States ex rel. Franklin v. Parke-Davis, Civ. A. No. 96-11651,
    2003 U.S. Dist. LEXIS 15754 (D. Mass. Aug. 22, 2003)....................................................... 19

Varacallo v. Mass. Mut. Life Ins. Co., 752 A.2d 807 (N.J. Sup. Ct. 2000) ...................................... 8

Vasquez v. Sup. Ct. San Joaquin Cty., 484 P.2d 964 (Cal. 1971) ................................................... 8

In re Warfarin Sodium Antitrust Litig., 391 F.3d 516 (3d Cir. 2004)............................................ 18

Watterson v. Page, 987 F.2d 1 (1st Cir. 1993).......................................................................... 13

Wayne Inv., Inc. v. Gulf Oil Corp., 739 F.2d 11 (1st Cir. 1984)...................................... 13, 14, 16

**Page**

**Statutes & Rules**

18 U.S.C. § 1961(5) ................................................................................................. 3

42 U.S.C. § 1396b(i)(10) ......................................................................................... 19

42 U.S.C. § 1396r-8 ................................................................................................. 19

Fed. R. Civ. P. 9(b) ........................................................................................... passim

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1

18 Pa. Cons. Stat. § 4117(a)(2) ......................................................................... 18, 19


**Other Authorities**

Brief of Plaintiffs-Appellants, <u>In re Rezulin Prods.</u>,
    Docket No. 01-9318 (2d Cir. Apr. 23, 2002) ....................................................... 17

Serpell et al., <u>Gabapentin in Neuropathic Pain Syndromes:  A Randomised,
    Double-Blind, Placebo-Controlled Trial</u>, 99 <u>Pain</u> 557, 563 (2002) ......................... 13

William E. Knepper & Dan A. Bailey, Liability of Corporate Officers and Directors
    § 15.05 (1st ed. 2005) ........................................................................................ 9

Defendants Pfizer Inc. and Warner-Lambert Company respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Class Action Complaint (the "Second Class Complaint") and the Second Coordinated Amended Complaint (the "Second Coordinated Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## PRELIMINARY STATEMENT

Under the analysis set forth in this Court's June 12, 2006 order (the "Order"), plaintiffs' claims based on a number of RICO enterprises must be dismissed. The Order dismissed all of plaintiffs' alleged RICO enterprises except those consisting of defendants and a number of medical education vendors (the "Vendor Enterprises"). Plaintiffs' RICO claims relating to six of these Vendor Enterprises should now be dismissed because the second amended complaints do not allege that these enterprises, each consisting of defendants and an individual vendor, had anything whatsoever to do with the alleged fraud. In other words, there is a complete disconnect between six of the Vendor Enterprises and the fraud alleged in the second amended complaints.

Certain of plaintiffs' fraud claims are also subject to dismissal. First, the Class Plaintiffs' common law fraud claim should be dismissed because these plaintiffs have not alleged reliance. Second, dismissal of plaintiffs' fraud claims based upon statements by physicians, as opposed to statements by defendants, is warranted because plaintiffs have not provided a legal or factual basis upon which these statements could be imputed to defendants. Third, new fraud claims asserted by the Class Plaintiffs should be dismissed because these plaintiffs improperly attempt to use negative clinical evidence regarding one condition as a basis for alleging that positive statements regarding another condition are misleading and because these claims are based on

conclusory allegations of suppression.  Fourth, the Class Plaintiffs' new fraud claims are based on information and belief, but no factual basis has been alleged for such claims.

Finally, the Coordinated Plaintiffs have failed to cure the defects in their allegations regarding loss.  Specifically, the Coordinated Plaintiffs still do not allege that Neurontin was ineffective for their insureds, despite being given the opportunity to do so, and thus, do not allege loss based upon inefficacy.  While the Coordinated Plaintiffs do allege that they were injured because they could have purchased cheaper alternatives to Neurontin, this allegation does not suffice because the Second Coordinated Complaint does not, with respect to any alternative drug, allege that the cheaper alternative was safer than (or as safe as) or more effective than (or as effective as) Neurontin.  Plaintiffs obviously cannot demonstrate loss if the only alternatives to Neurontin were less effective or less safe, even if they were cheaper.  In addition, the Coordinated Plaintiffs' claim under the Pennsylvania Insurance Fraud Statute should be dismissed because these plaintiffs do not allege that any false statements were "presented" to them.

For these reasons, portions of plaintiffs' second amended complaints should be dismissed.

## ARGUMENT

### I.    PLAINTIFFS DO NOT ADEQUATELY ALLEGE RICO CLAIMS BASED ON CERTAIN VENDOR ENTERPRISES

Plaintiffs originally asserted RICO liability based upon an array of purported association-in-fact enterprises.[1]  In its Order, this Court dismissed all of these enterprises except the Vendor

---

[1] The Class Plaintiffs allege that defendants participated in twenty-seven different enterprises:  (i) an overarching "Off-Label Promotion Enterprise" purportedly consisting of defendants, physicians, and various companies that they characterize as vendors or marketing companies (the "vendors"); (ii) a "Peer-Selling Enterprise" and a "Publication Enterprise," both comprised of these same entities; (iii) a "Peer-Selling Enterprise"

2

Enterprises. Order at 15-17. Plaintiffs have not attempted to re-plead the dismissed enterprises, so the only remaining RICO enterprises at issue are the Vendor Enterprises. Six of the Vendor Enterprises alleged by the Class Plaintiffs and three of those alleged by the Coordinated Plaintiffs should be dismissed for failure to allege a pattern of racketeering. Specifically, there is a complete disconnect between these enterprises and the alleged misconduct.

To state a RICO claim, a plaintiff must allege (i) conduct; (ii) of an enterprise; (iii) through a pattern; (iv) of racketeering activity. See Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005). A pattern of racketeering activity involves the commission of at least two predicate acts enumerated in the RICO statute. Id. at 388 (citing 18 U.S.C. § 1961(5)).

Plaintiffs base their RICO allegations primarily upon alleged mail and wire fraud predicate acts.[2] To plead mail and wire fraud, a plaintiff must allege: "(1) a scheme to defraud; (2) the defendant's knowing and willful participation in the scheme with the intent to defraud; and (3) the use of the mails or interstate wire or radio communication in furtherance of the scheme." Bonilla v. Volvo Car Corp., 150 F.3d 62, 66 (1st Cir. 1998). Such instances of mail and wire fraud must be alleged with Rule 9(b) specificity. See New Eng. Data Servs. Inc. v. Becher, 829 F.2d 286, 290 (1st Cir. 1987).

---

and a "Publication Enterprise," comprised of only defendants and vendors but not the physicians; (iv) eleven "Vendor-Physician Enterprises," each comprised of defendants, a vendor, and physicians; and (v) eleven Vendor Enterprises, each comprised of defendants and a vendor. Second Am. Class Action Compl. ("SACAC") ¶¶ 291, 298-301. The Coordinated Plaintiffs allege that defendants participated in fifteen different enterprises: (i) an overarching "Promotion Enterprise" purportedly consisting of defendants, vendors, and physicians; (ii) seven "Vendor-Physician Enterprises," each comprised of defendants, a vendor, and physicians; and (iii) seven Vendor Enterprises, each comprised of defendants and a vendor. Second Coordinated Am. Compl. ("SCAC") ¶¶ 177, 198, 302.

[2] The Class Plaintiffs also allege predicate acts of bribery, SACAC ¶¶ 307, 312-13, 325, but they do not specifically identify any alleged acts of bribery and do not tie any such acts to particular vendors. Accordingly, the RICO claims should be dismissed to the extent that they rely on alleged predicate acts of bribery.

In its Order, the Court allowed only two theories of fraud to proceed: (i) that defendants made misrepresentations regarding the results of certain scientific studies, and (ii) that defendants fraudulently omitted negative scientific evidence during certain meetings at which positive anecdotal experiences were described. Order at 20-21 (adopting Report and Recommendation, dated Jan. 31, 2006 (the "Report"), at 46-47, 49-50). Plaintiffs' surviving claims allege that defendants engaged in this fraud through separate enterprises involving each vendor. The vendors are not alleged to have engaged in such fraud themselves; rather they are alleged generally to have engaged in off-label promotion at the behest of defendants. The Class Plaintiffs have failed to allege, however, that there is any connection between the alleged fraud and six of the eleven Vendor Enterprises alleged in the Second Class Complaint – (i) Healthcare Communications Group ("HCC"); (ii) Boron LePore and Associates, Inc. ("Boron LePore"); (iii) Medical Education Systems, Inc. ("MES"); (iv) Thompson's Physicians World ("Physicians World"); (v) CME, Inc. ("CME"); and (vi) Medical Action Communications, Inc. ("MAC"). SACAC ¶¶ 67-76, 88-101, 114-29. The Coordinated Plaintiffs similarly fail to allege a connection between the alleged fraud and three of the seven Vendor Enterprises alleged in the Second Coordinated Complaint – (i) HCC; (ii) MES; and (iii) Physicians World. SCAC ¶¶ 56-66, 79-86.[3]

---

[3] Plaintiffs acknowledged, as they must, during oral argument that their RICO predicate acts are based on specific fraudulent statements rather than off-label marketing. See Murray Decl. Exh. A (May 3, 2006 hearing transcript) at 13:21 to 14:4. Plaintiffs cannot allege that violations of the FDCA are RICO predicate acts because conduct that only becomes illegal by virtue of the existence of a statute that does not have a private right of action cannot serve as predicate acts under RICO. See, e.g., Tamburello v. Comm-Tract Corp., 67 F.3d 973, 978-79 (1st Cir. 1995); Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 662 (7th Cir. 1992) (stating that "the underlying conduct of the plaintiffs' RICO claim is wrongful *only by virtue of the labor laws*, therefore the claim is preempted under the [National Labor Relations Act]").

### A.  HCC

Claims relating to the Vendor Enterprise consisting of HCC and defendants should be dismissed because plaintiffs have not alleged that this enterprise had anything whatsoever to do with allegedly fraudulent conduct.  Even a cursory glance at the single paragraph regarding HCC in each of the complaints reveals that no misrepresentation of scientific studies or fraudulent omission of negative scientific studies is alleged to have occurred during the five events in which HCC allegedly was involved during April 1997 and May 1998.  SACAC ¶ 92; SCAC ¶ 86. Plaintiffs do not identify any misrepresentations that occurred at these events (neither in this paragraph nor later in the complaints), and they certainly do not plead facts demonstrating that such misrepresentations fall within the two surviving theories of fraud.  Instead, plaintiffs allege merely that HCC and defendants took part in off-label marketing, which is not actionable under any of plaintiffs' claims.  Because plaintiffs do not allege any actionable instances of mail or wire fraud involving the HCC Vendor Enterprise, this enterprise must be dismissed.  See Bonilla, 150 F.3d at 68.

### B.  Boron LePore

Claims based on the alleged Vendor Enterprise including Boron LePore also should be dismissed because the Second Class Complaint does not allege that this enterprise took part in any events where fraud allegedly occurred.  In two brief paragraphs, the Class Plaintiffs allege that between October and December 1997, Boron LePore "managed and coordinated" certain teleconferences concerning the use of Neurontin as monotherapy.  SACAC ¶¶ 95-96.  Nowhere in the complaint, however, do plaintiffs allege that any misrepresentations were made or that negative studies were suppressed during these teleconferences.

C.    **MES and Physicians World**

Plaintiffs' RICO claims based on the enterprises consisting of MES, Physicians World, and defendants should be dismissed because plaintiffs fail to allege any connection between these enterprises and the alleged fraud.  Plaintiffs allege that Physicians World held a series of meetings in 1995 and 1996 regarding Neurontin's use for pain and that MES arranged two events in 1996, one of which "was designed to tout Neurontin for . . . pain and psychological uses." SACAC ¶¶ 76, 90-91; see SACAC ¶ 81.[4]  Plaintiffs do not allege that any scientific studies were misrepresented at these events.  Moreover, the foregoing alleged events preceded the completion of the pain, bipolar disorder, and panic disorder studies that allegedly made sharing of anecdotal evidence regarding these conditions misleading.  According to the complaints, the earliest negative pain study regarding Neurontin was completed in August 1997, and the negative bipolar disorder and panic disorder studies were completed in 1997 as well.  SACAC ¶¶ 146, 172; SCAC ¶¶ 112, 126.  Thus, with respect to the MES Enterprise and the Physicians World Enterprise, there is no connection to the alleged fraud that is the basis of plaintiffs' remaining claims.

D.    **CME**

Similarly, the Class Plaintiffs' only allegation relating to CME – that it managed and coordinated a program called New Frontiers in Social Phobia and Bipolar Disorder – demonstrates that claims based on this Vendor Enterprise should also be dismissed.  SACAC ¶¶ 93-94.  The Class Plaintiffs fail to allege, either in the two paragraphs regarding CME or

---

[4] The plaintiffs also allege that in connection with the so-called Publication Enterprise, MES "assisted the defendants in publishing a variety of articles about Neurontin and off-label uses" and that doctors "loaned" their names to these articles in exchange for honoraria.  SACAC ¶ 114; see SCAC ¶ 82.  This allegation already has been dismissed.  Order at 20 (adopting Report at 52).

elsewhere in the complaint, that this program was held after defendants learned of the alleged

bipolar disorder study results in 1997.  Nor do they allege that the results of any scientific studies

were misrepresented at this meeting.  Accordingly, RICO claims based on this Vendor Enterprise

should be dismissed.

    **E.**    **MAC**

    Claims based on the newly-alleged Vendor Enterprise consisting of MAC and defendants

should be dismissed because the Class Plaintiffs do not allege facts indicating that this enterprise

has any connection to the alleged fraud.  Plaintiffs allege that MAC assisted defendants with the

preparation of articles regarding Neurontin and "key messages" about its off-label uses.  Id. ¶

121.  Although the Class Plaintiffs assert in conclusory fashion that MAC was involved in the

preparation of various articles that were false and misleading, they do not identify a single

allegedly false or misleading statement within any of those articles.  Id. ¶¶ 121-29.  Thus, they

have failed to plead a RICO claim based on the MAC Vendor Enterprise.

**II.**    **THE CLASS PLAINTIFFS' COMMON LAW FRAUD CLAIM**
         **SHOULD BE DISMISSED FOR FAILURE TO ALLEGE RELIANCE**

    The Class Plaintiffs' common law fraud claim should be dismissed for failure to plead

actual reliance on specific misstatements.  See In re Lupron Mktg. & Sales Practices Litig., No.

01-CV-10861, 2004 U.S. Dist. LEXIS 18512, at *14-15 (D. Mass. Sept. 16, 2004).  Rule 9(b)

requires this element to be alleged with particularity.  See Evans v. Pearsons Enters., 434 F.3d

839, 852-53 (6th Cir. 2006).

    The Second Class Complaint nowhere pleads particularized facts demonstrating that

plaintiffs relied upon any alleged statements made by defendants.  In fact, it does not even allege

that the physicians who prescribed Neurontin to the individual plaintiffs and the third-party

payors' covered individuals relied upon – or even were exposed to – any such representations when deciding to prescribe Neurontin.  All that the Class Plaintiffs have alleged is that they "reasonably relied upon Defendants' misrepresentations and omissions of material fact." SACAC ¶ 339.  This conclusory allegation is insufficient as a matter of law.  See Evans, 434 F.3d at 852-53 (holding that "[c]onclusory statements of reliance are not sufficient to explain with particularity how [plaintiff] detrimentally relied on the alleged fraud"); Smith v. Mitlof, 198 F. Supp. 2d 492, 504-05 (S.D.N.Y. 2002) (ruling that plaintiffs' allegation of reasonable reliance was insufficient to meet the heightened pleading requirements of Rule 9(b)).

Moreover, the Class Plaintiffs cannot successfully argue that they are entitled to a presumption of reliance.  Although some courts have found that the reliance element of common law fraud claims can be presumed under very limited circumstances, those cases have involved situations where the alleged misrepresentations were essentially identical to one another and there was no question that the plaintiffs had been exposed to such statements.  See, e.g., Varacallo v. Mass. Mut. Life Ins. Co., 752 A.2d 807 (N.J. Sup. Ct. 2000); Cope v. Met. Life Ins. Co., 696 N.E.2d 1001, 1006 (Ohio 1998); Vasquez v. Sup. Ct. San Joaquin Cty., 484 P.2d 964, 972-73 (Cal. 1971).  In contrast, where common law fraud cases involve diverse misrepresentations or where the plaintiffs have not alleged that they received any misrepresentations, reliance will not be presumed.  See, e.g., Seimer v. Assocs. First Capital Corp., CV 97-281, 2000 U.S. Dist. LEXIS 21244, at *53 (D. Ariz. Dec. 13, 2000) (citing In re Jackson Nat'l Life Ins. Co. Premium Litig., 183 F.R.D. 217, 221 (W.D. Mich. 1998)); Brown v. Philip Morris Inc., 228 F. Supp. 2d 506, 520 n.14 (D.N.J. 2002); cf. Kaufman v. i-Stat Corp., 754 A.2d 1188 (N.J. 2000) (explaining that "[t]he actual receipt and consideration of any misrepresentation remains central to the case of any plaintiff seeking to prove that he or she was

deceived by the misstatement or omission"). Because the Class Plaintiffs here have alleged

misrepresentations by multiple speakers relaying various messages and because these plaintiffs

have not alleged that all class members were exposed to identical misrepresentations, reliance

cannot be presumed.

## III.    DEFENDANTS ARE NOT LIABLE FOR ALLEGED MISREPRESENTATIONS MADE BY PHYSICIANS

Plaintiffs' two surviving theories of fraud, which underlie their RICO, fraud, and

consumer protection claims, are based largely upon alleged misrepresentations by physician

presenters at medical conferences and advisory boards that cannot be attributed to defendants.

Plaintiffs claim that these physicians were "absolutely critical" to the success of the alleged off-

label promotion scheme because they were the means by which misrepresentations were

supposedly transmitted to prescribing physicians.  SACAC ¶ 105; SCAC ¶ 95.  Plaintiffs have

not, however, alleged facts sufficient to demonstrate that alleged misrepresentations made by

these speakers can be imputed to defendants.

Liability for alleged misrepresentations made by physicians cannot be imputed to

defendants on the basis of "entanglement."  The entanglement test holds that a corporation can

be held liable for misrepresentations made by a securities analyst where the corporation adopted

the misrepresentations or sufficiently entangled itself with the analyst's work.  See In re

Cabletron Sys., Inc., 311 F.3d 11, 37 (1st Cir. 2002).  This test derives from the relationship

between a public corporation and the securities analysts that attempt to analyze or otherwise

project the financial health of that corporation.  See William E. Knepper & Dan A. Bailey,

Liability of Corporate Officers and Directors § 15.05 (1st ed. 2005) (explaining that

entanglement is a securities fraud theory).  In the First Circuit, the entanglement test has only

been employed as a theory of vicarious liability in securities fraud cases.  See, e.g., In re Alkermes Sec. Litig., C.A. No. 03-12091-RCL, 2005 U.S. Dist. LEXIS 25826, at *40-41 (D. Mass. Oct. 6, 2005); Sekuk Global Enter. v. KVH Indus., C.A. No. 4-306ML, 2005 U.S. Dist. LEXIS 16628, at *39-40 (D.R.I. Aug. 11, 2005).  There is simply no basis for applying the entanglement test to alleged misrepresentations made by physicians at medical conferences or advisory board meetings.[5]

Outside of the securities fraud context, agency principles are generally used to determine if a defendant can be held liable for the misconduct of a third-party.  See, e.g., Baena v. KPMG LLP, No. 05-2868, 2006 U.S. App. LEXIS 15577, at *19 (1st Cir. June 22, 2006) (explaining that Massachusetts applies accepted agency principles to the issue of imputation).  With respect to plaintiffs' RICO claims, courts apply agency principles to determine if a RICO principal, such as defendants are alleged to be, can be held liable for the misconduct of non-participants in the RICO enterprise.  See Fed. Sav. & Loan Ins. Corp. v. Shearson-American Express, 658 F. Supp. 1331, 1338 (D.P.R. 1987) (explaining that normal doctrines of vicarious liability have been applied by courts to RICO).  The statutory language of the RICO Act, however, prevents misconduct by agents of the enterprise or participants in the enterprise from being imputed to a RICO defendant for the purposes of RICO liability.  See Miranda v. Ponce Fed. Bank, 948 F.2d 41, 45 (1st Cir. 1991); United States v. O'Connell, 890 F.2d 563, 568 (1st Cir. 1989) (noting that the "statute contains specific language that prevents the application of vicarious liability").  Accordingly, plaintiffs cannot proceed under a theory that physician speakers were agents of the alleged enterprises or the vendors.

---

[5] While Magistrate Judge Sorokin analyzed defendants' liability for statements made by physicians under an entanglement test, he admitted that given the lack of briefing on this issue, "it would be inappropriate for this Court to make a determination at this time of what standard or test should be applied."  Report at 39.

Here, plaintiffs also have failed to plead the existence of an agency relationship between defendants and the physician speakers.  Under Massachusetts law, for example, establishing the existence of an agency relationship requires showing the following:  "(1) the power of the agent to alter the legal relationships between the principal and third parties; (2) the existence of a fiduciary relationship toward the principal with respect to matters within the scope of the agency; and (3) the right of the principal to control the agent's conduct with respect to matters within the scope of the agency."  Thornton v. Harvard Univ., 2 F. Supp. 2d 89, 96 (D. Mass. 1998).

Plaintiffs have not alleged facts sufficient to satisfy any of the three elements of the agency test.  Because plaintiffs' claims sound in fraud, they must allege these elements with Rule 9(b) particularity.  See, e.g., In re Brennan, No. 98-13487-MWV, 1999 Bankr. LEXIS 1890, at *5-6 (Bankr. D.N.H. May 14, 1999).  First, plaintiffs have failed to allege that any physician speaker could modify legal relationships on behalf of defendants.  Second, there are no factual allegations that any physician speaker owed defendants a fiduciary duty.  Third, plaintiffs have not alleged that defendants had the right to control actions of the physicians.  See generally Sabel v. Mead Johnson & Co., 737 F. Supp. 135, 139-40 (D. Mass. 1990) (rejecting agency relationship between physician presenter and prescription drug manufacturer).

Plaintiffs do allege that defendants conditioned speaking fees and research grants on the speakers making positive statements about Neurontin.  SACAC ¶ 107; SCAC ¶ 97.  Control in the context of agency law, however, means the legal authority to dictate the conduct of a third-party, not merely the offering of some alleged inducement to encourage particular conduct.  See Afonso v. Boston, 587 F. Supp. 1342, 1347 (D. Mass. 1984) ("Under Massachusetts law, the critical test of a master-servant relationship is the existence of a right to control the servant's actions."); Hohenleitner v. Quorum Health Res., 758 N.E.2d 616, 625 (Mass. 2001) (finding that

in order for an agency relationship to exist the principal must have "the right to control the physical conduct of the other in the performance of the service"). Thus, there is no factual allegation that the defendants had the right to control the third-party physicians.

## IV.    THE CLASS PLAINTIFFS' NEW ALLEGATIONS REGARDING CERTAIN OFF-LABEL USES FAIL TO ALLEGE FRAUD

In the Order, the Court dismissed many of plaintiffs' wide-ranging fraud allegations. Order at 20-22.  The Order held that plaintiffs had made allegations under two specific theories of fraud with respect to five particular off-label conditions.  Id. (adopting Report at 37-52).  The Class Plaintiffs attempt but fail to re-plead adequately the dismissed allegations regarding other conditions.[6]

### A.    The Class Plaintiffs' Fraud Claims Regarding Pain Other than Diabetic Peripheral Neuropathy Should Be Dismissed

The Class Plaintiffs' original allegations regarding general pain were dismissed.  Id. at 20 (adopting Report at 43-46, 50-51).  Allegations regarding diabetic peripheral neuropathy ("DPN"), a specific type of pain, survived dismissal.  Id. (adopting Report at 46-47, 49).  The Class Plaintiffs have now combined their allegations regarding pain *and* DPN into one section of their complaint in a classic "bait-and-switch" attempt to survive dismissal.  Compare SACAC ¶¶ 143-58 with Am. Class Action Compl., dated Feb. 1, 2005, ¶¶ 129-34, 135-39 (making separate allegations regarding pain and DPN).

As part of their attempt to resuscitate their dismissed pain-related claims, the Class Plaintiffs allege in conclusory fashion that defendants "intentionally blurred the lines between different pain conditions by making representations to physicians that data relating to narrow

---

[6] The Coordinated Plaintiffs have not amended their fraud allegations, except for those relating to restless leg syndrome, and so those that were previously dismissed for failure to state a claim remain deficient.

pain indications applied to all other pain indications." SACAC ¶ 145; see id. ¶ 155. Plaintiffs neither provide a basis for this allegation nor allege any examples of such representations. Instead, they re-allege the same statements from the Amended Class Action Complaint that this Court already has found fail to state a claim. Id. ¶¶ 153-58; see Order at 20 (adopting Report at 43-46, 50-52). Plaintiffs also assert that the failure to disclose two allegedly negative DPN studies made statements about the use of Neurontin in treating other types of pain misleading. SACAC ¶¶ 145-49. This Court has already rejected the argument that alleged omission of negative results about one condition is sufficient to state a claim for fraud with respect to some other allegedly related condition unless plaintiffs plead with particularity the connection between the two conditions. Order at 20 (adopting Report at 51). Plaintiffs do not, and obviously cannot, show that defendants were under a duty to disclose the results of studies regarding DPN when allegedly discussing "different pain conditions." SACAC ¶ 145.

The Class Plaintiffs also argue that defendants were aware by May 2000 that Neurontin displayed poor efficacy with regard to various types of neuropathic pain, and that there was a clinical trial evidencing this poor efficacy. Id. ¶ 150.[7] Plaintiffs further allege on information and belief that defendants falsely relayed this clinical evidence to physicians. Id. Nowhere, however, do the Class Plaintiffs identify any specific misrepresentations in which defendants falsely described the evidence to physicians. Nor do they explain the basis for their belief, as they are required. See Wayne Inv., Inc. v. Gulf Oil Corp., 739 F.2d 11, 13-14 (1st Cir. 1984)

---

[7] Plaintiffs mischaracterize the results of this clinical trial, which in fact were positive. See Serpell et al., Gabapentin in Neuropathic Pain Syndromes: A Randomised, Double-Blind, Placebo-Controlled Trial, 99 Pain 557, 563 (2002) (finding that Neurontin is effective and "reduces pain in patients with a wide range of neuropathic pain syndromes") (attached at Murray Decl. Ex. B). The Court may consider published clinical study reports that are referred to in the complaint and are susceptible to judicial notice. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998); Colonial Mortgage Bankers Corp. v. Lopez-Stubbe, 324 F.3d 12, 15 (1st Cir. 2003) (allowing consideration on a motion to dismiss of facts susceptible to judicial notice).

("[A]llegations based on 'information and belief' do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded . . . [and this] requirement applies even when the fraud relates to matters peculiarly within the knowledge of the opposing party.").

The Class Plaintiffs further allege that defendants simultaneously suppressed two clinical trials where Neurontin's efficacy in treating nociceptive pain was proven to be no better than or inferior to a placebo while claiming that Neurontin was effective for nociceptive pain. SACAC ¶ 152. Plaintiffs yet again fail to identify any statements by anyone that Neurontin was effective for such pain. Rather, plaintiffs reword their complaint to allege in a conclusory fashion that "presenters expressly stated or implied that Neurontin was effective for the treatment of broad and unqualified categories of pain, including various types of both nociceptive and neuropathic pain." Id. ¶ 153. If such general averments were sufficient to meet the heightened pleading standards of Rule 9(b), the particularity requirement would be stripped of any meaning.

**B.     The Class Plaintiffs' Fraud Claims Regarding Bipolar Disorder and "Other Mood Disorders" Should Be Dismissed**

Plaintiffs baldly assert that defendants "suppressed" the negative results of their own bipolar disorder trial and failed to disclose information about that trial to physicians whom they hired to share positive anecdotal experiences with their colleagues. Id. ¶¶ 172-76. The Second Class Complaint alleges that defendants knew by the third quarter of 1997 about the negative results of the trial conducted by Parke-Davis investigators in 1997 and 1998, yet did not publish those results until 2000. Id. ¶ 173. Vague allegations of "suppression" cannot be credited where plaintiffs fail to allege that the publication was intentionally delayed, let alone that the length of time between completion of the trial and publication was atypical. See Coyne v. Somerville, 972

14

F.2d 440, 444-45 (1st Cir. 1992) ("A plaintiff 'may not . . . rest on 'subjective characterizations' or conclusory descriptions of 'a general scenario which could be dominated by unpleaded facts.'" (citation omitted)).  Merely alleging that the trial was completed on one date and published on another subsequent date is not sufficient to support an allegation of suppression.

Similar to the discussion of neuropathic pain disorders above, the Class Plaintiffs' conclusory assertion that alleged suppression of a bipolar study made misleading anecdotal statements regarding "other mood disorders" should be rejected.  Plaintiffs provide no new allegations as a basis for this assertion, but simply append the words "and other mood disorders" to their previous allegations.  SACAC ¶¶ 169-70, 173-74, 176.  This does not satisfy Rule 9(b).

### C.     The Class Plaintiffs' Fraud Claims Regarding Anxiety Disorders, Including Panic Disorder, Social Phobia, and Generalized Anxiety Disorder Should Be Dismissed

The Class Plaintiffs' fraud allegations regarding anxiety disorders should be dismissed for failure to plead suppression and fraudulent omission with particularity.  Plaintiffs, while spending considerable effort arguing that these disorders are so similar that any statement regarding one condition triggers a *per se* legal obligation to disclose scientific evidence regarding all of them, have not alleged any specific statement or omission with particularity, instead proceeding solely on information and belief.  Id. ¶ 185.  In fact, plaintiffs allege only one act of suppression, claiming that defendants did not publish until 2000 the results of their own 1997 clinical trial, which allegedly found that Neurontin was no more efficacious than placebo in treating panic disorder.  Id. ¶ 182.  Plaintiffs fail to allege, however, any facts other than the aforementioned dates.  Such vague allegations of suppression cannot be accepted.  See Coyne, 972 F.2d at 444-45.

15

Furthermore, the Class Plaintiffs allege that "[u]pon information and belief, at every presentation concerning Neurontin's use for anxiety disorders, negative data concerning Neurontin and Panic Disorder was suppressed . . . [and] anecdotal evidence was presented to support Neurontin's use."  SACAC ¶ 185.  Such vague allegations based on information and belief are insufficient under Rule 9(b).  See Wayne, 739 F.2d at 13-14.

## V.     THE COORDINATED PLAINTIFFS HAVE FAILED TO CURE THE DEFECTS IN THEIR ALLEGATIONS REGARDING LOSS

The Court adopted the Report's conclusion that the Coordinated Plaintiffs had not properly alleged that Neurontin was ineffective for their insured patients.  Order at 23-24 (adopting Report at 22).  The Second Coordinated Complaint has not corrected this failure.  Instead, the Coordinated Plaintiffs merely repeat the exact same conclusory allegations that this Court and Magistrate Judge Sorokin concluded were insufficient – that Neurontin "had not been proven effective" for off-label conditions.  See, e.g., SCAC ¶¶ 33, 40, 108, 111, 132.  This continues to be plainly insufficient and fails to support any claim of loss.

The Court also considered two other theories of loss set forth in the Coordinated Plaintiffs' objections to the Report and found that these plaintiffs had adequately alleged loss under an "excessive dosing" theory, but had not alleged loss under a "cheaper alternatives" theory.  Order at 24.[8]  The Coordinated Plaintiffs have failed to replead claims based on the latter theory.

The Coordinated Plaintiffs do not allege the existence of any alternative treatments that were as safe as (or safer than) or as effective as (or more effective than) Neurontin.  Instead, they

---

[8] The Coordinated Plaintiffs did not advance this second theory in the First Coordinated Amended Complaint, but instead raised it for the first time while objecting to the Report.  The Court, in its Order, decided that an allegation that plaintiffs purchased Neurontin instead of cheaper alternatives could be sufficient to plead loss and gave the Coordinated Plaintiffs an opportunity to replead.  Order at 24.

allege in conclusory and ambiguous fashion that other treatments were "more optimal" or "more desirable" than Neurontin, without ever comparing the safety and efficacy of these alternatives to Neurontin.  SCAC ¶ 173.  As demonstrated by the chart included in the Second Coordinated Complaint, the only characteristic that appears to matter to plaintiffs in determining which drug is more "optimal" or "desirable" is cost.  Id.  For example, the Coordinated Plaintiffs make references to aspirin as an alternative for which they would have had to pay nothing.  Id. Plaintiffs, however, do not and cannot claim that aspirin has been demonstrated to be effective for any of the indications for which Neurontin was prescribed.

In the absence of any allegations regarding the relative safety and efficacy of Neurontin as compared to these other drugs, the Coordinated Plaintiffs have only demonstrated that some prescription drugs cost more than others.  Of course, a drug that costs more but is safer than its alternatives may be the appropriate drug to prescribe to a patient.  Similarly, a doctor, using his or her medical judgment, might choose to prescribe a drug that is more effective than its alternatives notwithstanding its higher price.  If the physicians in question prescribed Neurontin for these reasons, the Coordinated Plaintiffs did not suffer a cognizable legal injury.

The instant case differs markedly from over-pricing cases such as Desiano v. Warner-Lambert Co., 326 F.3d 339 (2d Cir. 2003).  In Desiano, the plaintiffs argued that the conduct of the defendants caused them to purchase Rezulin instead of safer, less expensive treatments also approved to treat diabetes.  In that case, the plaintiffs alleged that alternatives to Rezulin were both less expensive and safer than Rezulin.  Brief of Plaintiffs-Appellants, In re Rezulin Prods., Docket No. 01-9318 (2d Cir. Apr. 23, 2002) at 7, 10, 12 (attached to Murray Decl. Exh. C); see

also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 522-23 (3d Cir. 2004).[9]  The

Coordinated Plaintiffs make no such claims.  They claim that other drugs were less expensive

than Neurontin, but nowhere do they allege that these other drugs were as safe as (or safer than)

or as effective as (or more effective than) Neurontin.  Instead, they assert that these drugs were

"more optimal," a phrase of obvious and calculated obfuscation.

## VI.    THE COORDINATED PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE PENNSYLVANIA INSURANCE FRAUD STATUTE

The Coordinated Plaintiffs' Pennsylvania Insurance Fraud claim should be dismissed

because they do not allege that any false statements were "presented" to them.  In order to state a

claim under the Pennsylvania Insurance Fraud Statute, a plaintiff must allege that the defendant

"present[ed] or caus[ed] to be presented to any insurer or self-insured any statement forming a

part of, or in support of, a claim that contains any false, incomplete or misleading information

concerning any fact or thing material to the claim."  18 Pa. Cons. Stat. § 4117(a)(2).  The

Coordinated Plaintiffs do not allege, let alone with the specificity required by Rule 9(b), any

false, incomplete, or misleading information that was conveyed to them as part of or in support

of any insurance claim for Neurontin.

The court in In re Lupron Marketing & Sales Practices Litigation stated that the intent of

the Pennsylvania Insurance Fraud Statute is "to protect insurers from all fraudulent claims,

whether directly submitted by an insured, or submitted at the instigation of a third party not

directly involved in the claims process."  01-CV-10861, 2004 U.S. Dist. LEXIS 18512, at *9 (D.

Mass. Sept. 16, 2004).  While this proposition is true, it is only applicable where claims

---

[9]  In Warfarin, plaintiffs sought to recover the difference in purchase price between Warfarin and generic medications based upon the defendant's false statements that the generics were not bioequivalents.  391 F.3d at 522-23.  In fact, the generics were found to be equally effective and safe and less expensive than the branded drug.  Id. at 523.

*containing* or *accompanied by* false information were submitted to the insurer.  18 Pa. Cons. Stat. § 4117(a)(2).  Whereas the plaintiff in <u>Lupron</u> did allege that false information was submitted to it in conjunction with claims for insurance, 2004 U.S. Dist. LEXIS, at *7, the Coordinated Plaintiffs have not.

This Court's decision on the summary judgment motion in <u>United States ex rel. Franklin v. Parke-Davis</u> does not warrant a different result.  Civ. A. No. 96-11651, 2003 U.S. Dist. LEXIS 15754 (D. Mass. Aug. 22, 2003).  This Court in <u>Franklin</u> considered the issue of whether Medicaid claims for Neurontin were per se false under the False Claims Act (the "FCA") not because they contained or were accompanied by any false information, but because the Medicaid arguably statute did not permit payment for drugs prescribed for off-label uses not included in an approved drug compendium.  2003 U.S. Dist. LEXIS 15754, at *6-10 (citing <u>United States ex rel. Franklin v. Parke-Davis</u>, 147 F. Supp. 2d 39, 45, 51 (D. Mass. 2001) (citing 42 U.S.C. § 1396b(i)(10); <u>id.</u> § 1396r-8)).[10]  In contrast, under the Pennsylvania Insurance Fraud Statute, a much narrower statute than the FCA, actual false information must be conveyed to the insurer, which the Coordinated Plaintiffs have not alleged.  The Coordinated Plaintiffs' failure to allege that any false statements were "presented" to them, an essential element of their claim, requires that this claim be dismissed.

---

[10] Notably, in <u>Franklin</u> this Court ultimately did not resolve the question of whether a Medicaid-reimbursement request for a drug prescribed for an off-label use not included in a medical compendium constituted a false claim.  2003 U.S. Dist. LEXIS 15754, at *16 (requesting an amicus brief from the government on this issue).

## CONCLUSION

For all of the foregoing reasons, the Second Class Complaint and the Second Coordinated

Complaint should be dismissed with prejudice.

Dated: July 27, 2006

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
      James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:   /s/ David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served
pursuant to Case Management Order #3 on July 27, 2006.

/s/David Chaffin

20