Finally, contrary to the district court's conclusion, the HBPs are the parties with the most direct economic injury, and the most motivated parties to pursue recovery of the $1.4 billion they paid for Rezulin. [A-44]. The district court held that "there is simply no reason why the individuals who allegedly were injured by Rezulin cannot recover the costs of the drug...." [A-90]. However, Rezulin patients can not recover the amounts HBPs spent on Rezulin, for the simple reason that these individuals did not pay these amounts. *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 347 (E.D. Mich. 2001) ("Consumers whose out-of-pocket expenditures do not vary with the cost of their prescription drugs cannot show that they suffered an economic injury as a result of Defendants' illegal conduct").

The district court's *Holmes* analysis also contradicts the widespread recognition by the federal and state courts (including this Court) that HBPs purchase and pay for prescription drugs. *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 214 (1979) (direct reimbursement to participating pharmacies for subscribers' drugs "merely [an] arrangement[] for the purchase of goods and services by Blue Shield"); *Medical Arts Pharmacy of Stamford, Inc. v. Blue Cross & Blue Shield of Connecticut, Inc.*, 675 F.2d 502, 503 (2d Cir. 1982) (describing HBP payments for prescription drugs); *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 65 F.3d 1406, 1414 (7th Cir. 1995)

-17-

("Against this it can be argued that if Blue Cross reimburses an insured for say 80 percent of a $100 charge that should have been only $50, Blue Cross has lost $40 but the insured has lost $10 and so there is still a basis for a class action. Still, in this example anyway it is Blue Cross that bears the lion's share of the loss, as well as being able to proceed on its own without the aggregation of separate plaintiffs required for a class action...."); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 717 (7th Cir. 2001) ("Except for uninsured persons and Medicare patients without separate prescription drug coverage (who must pay for their own pills), most persons' expenses for Synthroid are paid by third parties. Insurance generally requires consumers to provide a co-payment for prescriptions; this payment rises only marginally (if at all) for more expensive drugs."); *Perez v. Wyeth Lab., Inc.*, 161 N.J. 1, 4, 30-31, 734 A.2d 1245, 1247, 1263 (1999) ("Medicines are purchased in the pharmacy department of supermarkets and are often paid for by third-party providers").

Furthermore, the district court's decision ignores more than 30 years of case law recognizing the right of HBPs to recover from manufacturers of prescription drugs amounts HBPs paid to purchase such manufacturers' drugs, which were inflated due to illegal or deceptive marketing practices. *See, e.g., Hartford Hospital v. Chas. Pfizer & Co.*, 52 F.R.D. 131 (S.D.N.Y.), *aff'd mem.*, 448 F.2d

-18-

790 (2d Cir. 1971) (affirming approval of $10 million settlement between broad spectrum antibiotic pharmaceutical manufacturers and Blue Cross plans); *In re Lorazepam and Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002) (affirming $35 million aggregate settlements of HBP antitrust and consumer protection claims against manufacturer of generic drugs); *In re Synthroid Mktg. Litig.*, 264 F.3d 712 (affirming settlement of HBPs' deceptive marketing claims against drug manufacturer). Many similar claims are currently pending in MDL courts throughout the nation. *See generally, In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618 (E.D. Mich. 2000); *In re Terazosin Hydrochloride Antitrust Litig.*, MDL 1317, 1999 U.S. Dist. LEXIS 19640 (J.P.M.L. Dec. 20, 1999); *In re Buspirone Antitrust Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740 (E.D.N.Y. 2001); *In re K-Dur Antitrust Litig.*, 162 F. Supp. 2d 688 (J.P.M.L. 2001); *In re Tamoxifen Citrate Antitrust Litig.*, MDL 1408, 2001 U.S. Dist. LEXIS 12865 (J.P.M.L. Aug. 14, 2001).

### B. Louisiana Blue Cross and Eastern States Do Not Have to Establish Proximate Causation.

The HBPs' Complaint would, if required, meet any pleading standard of proximate causation necessary, due to its allegations of HBPs' direct payments to

purchase Rezulin. Notably, however, proximate causation is <u>not</u> an element of the claims brought by Louisiana Blue Cross and Eastern States. Under New Jersey law, the health benefit providers can pursue breach of warranty, restitution and statutory consumer protection claims even when they do not stand in contractual privity with the manufacturer. *See Laborers Local 17*, 191 F.3d at 234 n.3 ("depending on the statute, the existence of common-law proximate causation is neither always necessary, nor always sufficient, to meet the requirement of statutory standing") (citation omitted).

### 1. Proximate Causation Is Not An Element of the HBPs' Warranty Claims Under New Jersey's Adoption of the UCC.

Under New Jersey law, a commercial plaintiff may sue a remote manufacturer for economic losses arising out of the breach of express and implied warranties. *Spring Motors Distributors v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985). Such a claim may proceed under the UCC, but not under the tort doctrine of strict product liability. 98 N.J. at 561, 489 A.2d at 663 ("We hold that a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distribution chain for breach of warranty under the U.C.C., but not in strict liability or negligence"). Warranties extend from the supplier to the ultimate

-20-

purchaser of the product, regardless of lack of privity. 98 N.J. at 582-88, 489 A2d at 674-77.

Where breach of warranty is proven, the "commonly-applied formula to compute a buyer's damages ... is the difference 'between the value of the goods accepted and the value they would have had if they had been as warranted.'" *Kearney & Trecker Corp. v. Master Engraving Co.*, 107 N.J. 584, 594, 527 A.2d 429, 435 (1987) (citation omitted).

If, as Plaintiffs allege, Warner-Lambert breached its Rezulin warranties by falsely representing that Rezulin was "safe and effective, with side effects equivalent to a placebo," HBPs can recover the difference in value between the product purchased and the product as warranted.

### 2. Proximate Causation Is Not An Element of the HBPs' Unjust Enrichment Claim.

Nor is proximate causation an element of the HBPs' claim for unjust enrichment. Under New Jersey common law, HBPs must show (1) that Warner-Lambert received a benefit; and (2) that retention of the benefit without payment would be unjust. *Wanaque Borough Sewage Auth. v. Township of West Milford*, 144 N.J. 564, 575, 677 A.2d 747, 752-53 (1996). Where, as here, the Complaint alleges: (1) that the primary economic relationship as seller and buyer of

-21-