UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------- x
:
In re:  NEURONTIN MARKETING, SALES PRACTICES,  :
AND PRODUCTS LIABILITY LITIGATION  :
: MDL Docket No. 1629
------------------------------------------------------------- x
: Master File No. 04-10981
THIS DOCUMENT RELATES TO:  :
: Judge Patti B. Saris
------------------------------------------------------------- x
: Magistrate Judge Leo T.
HARDEN MANUFACTURING CORPORATION;  : Sorokin
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,  :
dba BLUECROSS/BLUESHIELD OF LOUISIANA;  :
INTERNATIONAL UNION OF OPERATING ENGINEERS,  :
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL  :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and  :
LORRAINE KOPA, on behalf of themselves and all others  :
similarly situated, v. PFIZER INC. and WARNER-LAMBERT  :
COMPANY.  :
:
:
------------------------------------------------------------- x
:
THE GUARDIAN LIFE INSURANCE COMPANY OF  :
AMERICA v. PFIZER INC. and  :
:
AETNA, INC. v. PFIZER INC.  :
:
------------------------------------------------------------- x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................4

    I.   The Third-Party Payor Plaintiffs Should Be
Compelled To Produce Relevant Claims Data ..............................................................4

    II.  The Individual Plaintiffs Should Be Compelled
To Produce Their Relevant Medical Records ...............................................................7

    III. Class Plaintiff ASEA Should Be Compelled
To Produce Neurontin Claims Data ..............................................................................9

    IV. Coordinated Plaintiff Kaiser Should Be Compelled
To Produce Documents from Outside California and
from All of Its Physician Provider Employees ...........................................................10

CONCLUSION .............................................................................................................................12

Defendants Pfizer Inc. and Warner-Lambert Company submit this memorandum in support of their motion to compel discovery from the Class Plaintiffs and the Coordinated Plaintiffs (collectively, "plaintiffs") pursuant to Federal Rule of Civil Procedure 37.[1]

## PRELIMINARY STATEMENT

Plaintiffs have unjustifiably refused to produce relevant documents and information that bear directly on the Class Plaintiffs' motion for class certification and the merits of the case. Defendants' attempts to persuade plaintiffs to produce this information through meet-and-confer sessions have been rejected on legally insufficient grounds.[2] Defendants respectfully request that this Court order plaintiffs to produce the documents and information set forth below immediately so that discovery can proceed. Four categories of relevant information are in dispute.

First, the third-party payor plaintiffs have refused to produce non-Neurontin prescription drug claims data for members and their dependents who took Neurontin ("Neurontin-takers"). Production of this information should be compelled because these data could be used to determine whether Neurontin was effective for these individuals and whether it was prescribed off-label, both of which are facts relevant to whether the third-party payors suffered a loss. These drug claims data will also be relevant to calculating the third-party payors' alleged damages because they will indicate what drugs they would have paid for had Neurontin not been

---

[1] The class plaintiffs are two individuals, Gerald Smith and Lorraine Kopa, and four third-party payors, Harden Manufacturing Corporation, Louisiana Health Services Indemnity Company, International Union of Operating Engineers, Local No. 68 Welfare Fund, and ASEA/AFSCME Local 52 Health Benefits Trust. The coordinated plaintiffs are four third-party payors, The Guardian Life Insurance Company of America, Aetna, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan, Inc.

[2] Defendants' counsel have had innumerable meet-and-confer sessions with counsel for plaintiffs regarding these issues, which are documented in scores of letter and memoranda. Defense counsel recently asked plaintiffs' counsel whether plaintiffs had changed their positions regarding these issues. Plaintiffs' counsel responded that plaintiffs have not changed their positions on any of these issues. There has been scrupulous adherence to Local Rule 37.1.

prescribed, as well as the cost of these alternative drugs. Such information, while relevant to the class third-party payors' claims, is particularly relevant to the Coordinated Plaintiffs, who are claiming that they suffered a loss because they could have purchased a cheaper alternative to Neurontin. Moreover, plaintiffs Kaiser Foundation Hospitals and Kaiser Foundation Health Plans, Inc. (together, "Kaiser") have even refused to produce the names of the prescribing physicians – Kaiser employees – along with the Neurontin claims data that Kaiser has agreed to produce, even though this information is readily available and would not be burdensome to produce.

The third-party payor plaintiffs have also refused or failed to produce medical records and medical claims data for Neurontin-takers. These records and data are essential because they may show whether Neurontin was effective and whether it was prescribed off-label,[3] whether a lack of efficacy was due to a factor unique to the covered individual, and whether defendants' alleged misrepresentations, something in the patient's medical history, or something else caused the prescription.

Second, the individual plaintiffs have refused to produce medical records unless they relate expressly to Neurontin or the condition for which Neurontin was prescribed. Defendants are entitled, however, to examine all of the individual plaintiffs' medical records during the time that they were taking Neurontin, as well as all their medical records from some period before and after. These records are critical because they will reflect, among other things, what factors could

---

[3] Medical claims data are the records of all medical claims submitted by plaintiffs' covered employees and their dependents. Unlike prescription drug claims data, both medical records and medical claims data are likely to have diagnosis information that could rebut plaintiffs' claims that Neurontin was prescribed to their employees for off-label uses.

2

have influenced the individual plaintiffs' doctors to prescribe or to stop prescribing Neurontin or could have affected Neurontin's efficacy for each individual plaintiff. For example, if, prior to taking Neurontin, an individual plaintiff was taking another drug that might have adversely interacted with Neurontin's alternatives, defendants could use this information to rebut a plaintiff's allegation that his Neurontin prescriptions were caused by defendants' alleged misrepresentations. These medical records could also show whether the individual plaintiffs took other drugs off-label besides Neurontin, which is relevant to whether the alleged fraudulent conduct caused them to be prescribed Neurontin for an off-label condition. In addition, so that defendants can confirm that the individual plaintiffs' productions regarding medical records are complete, these plaintiffs should be compelled to execute medical authorizations for the relevant period.

Third, class plaintiff ASEA/AFSCME Local 52 Health Benefits Trust ("ASEA") has refused to produce certain Neurontin claims, even though it is seeking to recover for its payment of those claims and has no other record of them. Without access to these records, defendants cannot examine whether ASEA actually incurred the damages that it asserts. ASEA should be compelled to produce them or be precluded from recovering upon them.

Fourth, Kaiser has refused to produce documents from most of the physicians in its employ who prescribed Neurontin, even though it is alleging that those physicians were deceived about Neurontin, and it is seeking to recover for the Neurontin that they prescribed. These physicians may have documents that reflect whether they were exposed to alleged misrepresentations and why they prescribed Neurontin. Kaiser has conceded their relevance by producing such documents for a self-selected number of physicians. Kaiser has also

3

unreasonably limited the scope of its document collection to California (even though its claims have no such limitation). Kaiser is thus arbitrarily preventing defendants from examining the same information that Kaiser is producing for its operations in California – information that it has implicitly conceded is relevant and properly discoverable.

Having brought this baseless lawsuit, with all of its extraordinary burdens, plaintiffs should not be permitted to escape their own obligations to participate fully in the discovery process.[4]

## ARGUMENT

Under the federal discovery rules, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). Rule 37 provides that a motion to compel may be made when a party "fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request or inspection submitted under Rule 34, . . . fails to permit inspection as requested." Fed. R. Civ. P. 37(a)(2)(B). Plaintiffs have not produced relevant documents requested by defendants, and the grounds that they have advanced for not producing them do not excuse their failure to do so. Plaintiffs should be compelled to produce the documents that they are improperly refusing to produce.

### I. The Third-Party Payor Plaintiffs Should Be Compelled To Produce Relevant Claims Data

The third-party payor plaintiffs should be compelled to produce (i) all prescription drug claims data for Neurontin-takers for the period from one year before they started taking

---

[4] Defendants' original motion requested the production of the third-party payor plaintiffs' policies regarding reimbursement of off-label prescriptions. Plaintiffs have indicated in their original opposition brief that the third-party payor plaintiffs have produced these documents. Accordingly, defendants are not currently moving to compel the production of this group of documents, but reserve the right to revive this argument upon review of the produced materials.

4

Neurontin to one year after they stopped taking it and (ii) all medical records and medical claims data for the same persons for the same period.[5]

The third-party payors have not objected to providing Neurontin claims for their Neurontin-takers, but do object to producing these individuals' claims for other prescription drugs. See Declaration of Patrick J. Murray, dated July 27, 2006, ("Murray Decl.") Exh. 3. In fact, Harden Manufacturing Corporation ("Harden") has objected to this even though it would entail the collection of this information for no more than fifty people. This information is highly relevant for reasons central to issues of causation, loss, damages, and predominance. First, the non-Neurontin prescription drugs that individuals were taking may indicate why they were prescribed Neurontin[6] and whether it was effective or was prescribed for an off-label use. Information regarding non-Neurontin drugs may also show whether the covered individuals had been prescribed other drugs off-label, whether they were candidates for drugs other than Neurontin, and how costly such alternatives would be. These last two categories of information would be particularly relevant to the Coordinated Plaintiffs' claims as these plaintiffs have alleged that they suffered loss when they purchased Neurontin because they could have used cheaper alternatives. Thus, this information may show whether cheaper alternatives to Neurontin could have been prescribed for their insureds. Finally, these data are relevant because they will

---

[5] See, e.g., Declaration of Patrick J. Murray, dated July 27, 2006 ("Murray Decl."), Exh. 1 Req. 51 (requesting all prescription drug claims for covered individuals who were Neurontin-takers); Exh. 2 Req. 1 (requesting all medical records for covered individuals who were Neurontin-takers).

[6] Given Neurontin's side-effects profile, its status as a non-narcotic agent, and its lack of interaction with other drugs, id. Exh. 4 at BAZIL 0000030, BAZIL 0000054,
**REDACTED - CONFIDENTIAL**
Production of information regarding the other drugs that covered individuals were taking would enable defendants to analyze whether this was the reason for their Neurontin prescriptions rather than the alleged fraudulent off-label promotion.

demonstrate the plaintiffs' policies and practices regarding the payment of drug claims generally, including policies and practices relating to prior authorization, reimbursement of off-label uses, and drug utilization – all of which reflect their knowledge of or willingness to pay for off-label uses.

Kaiser has also refused to include the names of the prescribing physicians with the Neurontin claims data that it will be producing. Kaiser is not asserting that producing this information would be burdensome, only that defendants can, through their own effort, identify these physicians' names through DEA numbers that Kaiser is producing. The fact that information may be otherwise accessible is not a valid basis for refusing to produce such information, particularly where Kaiser has the information and producing it would impose no burden upon Kaiser. Kaiser should be compelled to produce the names of the prescribing physicians with its Neurontin claims data.

Lastly, the third-party payor plaintiffs have refused or failed to produce medical records and medical claims data for Neurontin-takers. Again, even Harden has refused to do this for its fewer than fifty Neurontin-takers. Defendants are entitled to this information because medical records and medical claims data, which may contain diagnosis codes, are one of the few means of determining whether Neurontin prescriptions were written for an approved or off-label use and ascertaining what those uses were. In a case where plaintiffs are able to recover only for off-label prescriptions for certain conditions, information that will enable defendants to identify what prescriptions may have been written for on-label uses and what those uses were is highly

relevant to the claims and defenses of the parties in this action.[7] Further, the medical records will be extremely relevant to whether Neurontin was effective.

## II. The Individual Plaintiffs Should Be Compelled To Produce Their Relevant Medical Records

The individual plaintiffs, Gerald Smith and Lorraine Kopa, should be compelled to produce their medical records from a reasonable period prior to when they started taking Neurontin to the present.[8] Ms. Kopa has refused to produce medical records that do not mention Neurontin, while Mr. Smith refused to produce medical records that do not relate to the injury for which he took Neurontin. Murray Decl. Exh. 3; id. Exh. 8. The information being withheld is highly relevant, and these plaintiffs have not demonstrated any burden that would excuse production.

Complete production of the individual plaintiffs' medical records from before they began taking Neurontin to the present is essential to defendants' ability to oppose class certification and to defend this case on the merits. The individual plaintiffs are alleging that they took Neurontin as a result of fraud by defendants, and they must show that Neurontin was ineffective. To test these allegations and claims, defendants are entitled to learn why their physicians prescribed

---

[7] One plaintiff (ASEA) has indicated that it will produce summaries of its Neurontin-takers' medical claims, as well as five individual medical claims for its Neurontin-takers. To the extent that these summaries do not provide all relevant information, defendants request that ASEA be compelled to produce all medical claims data for its Neurontin-takers.

[8] See, e.g., Murray Decl. Exh. 6 Reqs. 8, 11, 16-24 (requesting all documents concerning each individual plaintiff's medical history, including all medical and prescriptions drug records from the time of the injury that caused each plaintiff to take Neurontin); id. Exh. 7 Ints. 10-12, 14. In connection with their efforts to obtain comprehensive medical records, defendants have requested that the individual plaintiffs execute authorizations allowing defendants to obtain their medical records from the non-parties which have them. The individual plaintiffs refused to provide such authorizations, stating that they would obtain their medical records and produce those that they deemed relevant. Id. Exh. 3. Defendants should be permitted to conduct their own search for these materials to make sure that all of the necessary medical records have been obtained from non-party doctors and hospitals.

Neurontin and whether it was effective. Accordingly, defendants need to understand these plaintiffs' complete medical history – from at least the year before they started taking Neurontin to the present.

Such information is necessary for multiple reasons going to adequacy, typicality, predominance, causation, reliance, and loss. First, the individual plaintiffs' medical records from before they began taking Neurontin will provide a critical baseline against which their subsequent health and the efficacy of Neurontin can be assessed. In addition, defendants are entitled to examine whether some factor unique to the individual plaintiff, such as a condition that was resistant to other approved medical treatments, might explain Neurontin's alleged lack of efficacy in their individual cases. The plaintiffs' medical records from before the period when they began taking Neurontin are essential to assess these issues.

These records will also show whether the individual plaintiffs took other prescription drugs off-label besides Neurontin. In addition, they may show why their treating physicians chose to prescribe Neurontin instead of another drug typically used to treat the conditions of the individual plaintiffs. Further, Mr. Smith's counseling records could bear on his adequacy as a class representative because the depression that he suffered from prior to taking Neurontin may explain the drug's alleged inefficacy in his case. Id. Exh. 9.

Finally, defendants are entitled to know why these individuals stopped taking Neurontin, whether they took any other drugs off-label after they stopped taking Neurontin, and whether they took any other drugs for pain. The individual plaintiffs' medical records from after they stopped taking Neurontin could be critical to these issues.

Because of the importance of these documents and this information, defendants request that the Court order that the individual plaintiffs produce their medical records from a reasonable point in time prior to the time they began taking Neurontin to the present. In addition, defendants request that the individual plaintiffs be compelled to execute medical authorizations so that defendants can confirm that all such records have been produced.

### III. Class Plaintiff ASEA Should Be Compelled To Produce Neurontin Claims Data

Class plaintiff ASEA has unreasonably refused to produce Neurontin claims data upon which it purports to base a portion of its damages claim in this case. ASEA should either be compelled to produce the Neurontin claims that it is withholding or be precluded from recovery for these claims.

Defendants requested documents and information regarding claims for reimbursement of Neurontin prescriptions by ASEA. Murray Decl. Exh. 10 Req. 48. ASEA's third-party administrator, Administration Services, Inc. ("ASI"), possesses approximately 136,000 of ASEA's out-of-network drug claims, some unknown portion of which purportedly includes Neurontin claims. Id. Exh. 11. ASEA does not deny that it has control over these ASI documents. ASI does not possess electronic records of these claims (except in aggregated totals), and ASEA refuses to direct ASI to produce hard copies on burdensomeness grounds. Id. And yet, despite this refusal, ASEA asserts that it is entitled to recovery for these out-of-network claims for Neurontin. Id.

Defendants request that the Court either compel ASEA to produce the hard copies of its out-of-network Neurontin claims or preclude ASEA from recovering upon these claims. Defendants are entitled to information about the claims on which ASEA purports to rely in

9

seeking damages. ASEA's assertion that the production of these documents is unduly burdensome is inadequate to preclude discovery when it is ASEA's own claims that put them directly at issue. ASEA should either be ordered to produce the documents or be deemed to have waived any claim for damages based on the claims data that it refuses to produce.

IV.     **Coordinated Plaintiff Kaiser Should Be Compelled To Produce Documents from Outside California and from All of Its Physician Provider Employees**

Coordinated plaintiff Kaiser should be compelled to produce documents from outside California. Kaiser should also be compelled to produce documents from all of its physician providers who it alleges were defrauded.

Kaiser, headquartered in California, administers a health plan with 8.2 million members in nine states and the District of Columbia. Id. Exh. 12. Unlike the other coordinated plaintiffs and the third-party payor class plaintiffs, Kaiser is an integrated health delivery system and, as such, owns and operates its own health care facilities and employs its own physicians and pharmacists. Id. The members of Kaiser's health plans typically receive treatment from Kaiser physicians in Kaiser offices and hospitals, and have their prescriptions filled by Kaiser in-house pharmacies.

Kaiser has unreasonably refused to conduct a thorough search for responsive documents in regions outside of California, even though its claims are not limited to Kaiser's business in California. Murray Decl. ¶ 5. Kaiser has stated that, outside of California, it will neither search any of its facilities nor speak with any of its employees, except for Continuing Medical Education Coordinators. Id. This is grossly inadequate because documents about Neurontin from Kaiser's offices outside of California are just as relevant as the documents about Neurontin

10

that Kaiser has produced and will produce from California. To the extent that Kaiser wants to recover for Neurontin claims outside of California, it should be required to make a complete production from these regions or should be precluded from recovering for such claims.

Kaiser has also refused to produce documents from all but a few of its physicians who it claims were defrauded despite seeking recovery for all off-label Neurontin prescriptions by its doctors. Id. ¶ 6. It has instead unilaterally limited its production from its physicians to those physicians who Kaiser asserts may have been high Neurontin prescribers or showed "strong interest" in Neurontin. Id.[9] By agreeing to produce these documents – albeit ones of its own selection – Kaiser has conceded that these documents are relevant. Yet the scope of its production is entirely inadequate, and Kaiser cannot self-select which physicians' files will be produced. Kaiser should either be compelled to produce all documents from its physician providers who prescribed Neurontin or be precluded from recovering for any Neurontin claims for which the physician was a Kaiser employee but whose documents were not produced.

---

[9] During a teleconference on August 16, 2005, Kaiser's counsel stated that she was not aware of any systematic way in which these physician providers were being selected and that the collection was being performed by Kaiser's in-house counsel. Id. ¶ 6.

11

## CONCLUSION

For all of the foregoing reasons, defendants' motion to compel the production of certain documents and information should be granted.

Dated: July 27, 2006

          DAVIS POLK & WARDWELL

          By: /s/ James P. Rouhandeh
             James P. Rouhandeh

          450 Lexington Avenue
          New York, New York 10017
          (212) 450-4000

          - and -

          HARE & CHAFFIN

          By: /s/ David B. Chaffin
             David B. Chaffin

          160 Federal Street
          Boston, Massachusetts 02110
          (617) 330-5000

          *Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 27, 2006.

              /s/David B. Chaffin