# EXHIBIT 10

*2994/1.59*

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | ) ) ) | MDL Docket No. 1629 |
|  | ) | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS | ) ) ) | Judge Patti B. Saris |

## DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Pfizer

Inc. and Warner Lambert Company (hereinafter "Defendants"), hereby demand that in

accordance with the Definitions and Instructions set forth below, Plaintiff

ASEA/AFSCME Local 52 Health Benefits Trust ("ASEA") produce all documents

requested herein for inspection and copying at the offices of Davis Polk & Wardwell, 450

Lexington Avenue, New York, New York 10017, within thirty (30) days of the date of

service hereof.

### DEFINITIONS

1.      The definitions contained in Rule 26.5 of the Local Rules of the United

States District Court for the District of Massachusetts are incorporated herein by

reference.  Additionally, the following definitions apply.

2.      "Plaintiff" or "ASEA" shall mean ASEA/AFSCME Local 52 Health

Benefits Trust and any of its past or present trustees, officials, officers, fiduciaries, third-

party administrators, representatives, assigns, employees, divisions, departments,

directors, executives, predecessors or successors in interest, offices, subsidiaries, and affiliates.

    3.     "You" or "your" means ASEA.

    4.     "Pfizer" shall mean defendant Pfizer Inc. and any of its predecessors, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, or employees, including, but not limited to, Warner-Lambert and Parke-Davis, as a division of Warner-Lambert Company.

    5.     "Warner-Lambert" shall mean defendant Warner-Lambert Company LLC and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, or employees, including, but not limited to, Parke-Davis, as a division of Warner-Lambert Company.

    6.     "Parke-Davis" shall mean Parke-Davis, a division of Warner-Lambert Company, and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, or employees.

    7.     "Complaint" shall mean the Amended Class Action Complaint, filed on February 1, 2005 in connection with MDL Docket No. 1629, Civil Action No. 04-10981-PBS, in the United States District Court for the District of Massachusetts.

    8.     "Action" shall mean the proceeding pending in the United States District Court for the District of Massachusetts captioned *In re: Neurontin Marketing and Sales Practices Litigation*, 04-10981-PBS.

9.    The term "Member" shall include the terms "participant," "beneficiary'" and "policy holder," and means persons for whom the Plaintiff provides health care benefits, health insurance coverage and/or provides prescription drug benefits, including the dependents of such persons.

10.    The term "provider" shall mean any physician, hospital, medical or health professional, pharmacy, or other person or entity that provides medical care.

11.    The term "Plan" shall mean the legal document detailing a Member or group's insurance or benefit coverage, and shall include the terms "certificate of coverage," "certificate of insurance," "evidence of coverage," and "summary plan description."

12.    The term "drug, " unless otherwise indicated, shall mean a substance used in the diagnosis, treatment, or prevention or a disease or as a component of a medication, and shall include both prescription and non-prescription drugs.

13.    The term "off-label" shall mean the prescription or use of a drug for indications or at dosages different from those set forth in a drug's labeling.

14.    "DRUGDEX" shall mean the proprietary reference service or product sold, licensed, or marketed by MICROMEDIX under the name DRUGDEX®.

15.    "Third-party payor" shall mean a non-governmental entity that is at risk, pursuant to a contract, policy, or plan providing prescription drug coverage to natural persons, to pay or reimburse the amount or some part of the amount associated with the cost of prescription drugs to those natural persons covered by such contract, policy, or plan.

3

16.     The term "policy" shall mean the written document issued by an insurance company or a third party payor to the policy owner, representing the written contract between the insurance company or third party payor and the policy owner, and describing the term, coverage, premiums and deductibles.

17.     The term "claim" shall mean notification to an insurance company or third party payor requesting payment of an amount due under the terms of the policy.

18.     The term "formulary" shall mean the list of preferred generic and brand-name drugs covered under Plaintiff's Plan.

19.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

20.     "Any" includes the word "all" and vice-versa.

21.     "Communication" shall have the meaning set forth in Local Rule 26.5

22.     "Concerning" shall have the meaning set forth in Local Rule 26.5.

23.     "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure and Local Rule 26.5, and includes all forms of writings as defined in Rule 1001(1) of the Federal Rules of Evidence.

24.     "Meeting" shall mean any formal or informal assembly, convocation, encounter or contemporaneous presence of two or more Persons for any purpose and shall include telephone conferences and calls.

25.    "Person" or "Persons" shall mean any individual, corporation, organization, association, partnership, limited partnership, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

26.    "Relating to" shall mean concerning.

## INSTRUCTIONS

1.    The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

2.    This request is intended to cover all documents in your possession or subject to your custody or control. This request is also intended to cover any and all documents you are authorized to retrieve.

3.    Each request for a document contemplates production of the document in its entirety, without abbreviation or expurgation.

4.    If any requested documents cannot be produced in full, produce them to the extent possible, specifying each reason for your inability to produce the remainder thereof and stating whatever information, knowledge, or belief you have concerning the unproduced portion.

5.    If any document is no longer in your possession, custody, or control and cannot be retrieved by you, identify the document in detail and state with specificity the location(s) of the document.

6.      This request is of continuing effect, and to the extent that any time after the production of documents called for by this request, you become aware of or acquire additional documents responsive to this request, such documents shall be produced promptly.

7.      If Plaintiff knows of information responsive to any of these requests that is in the custody, possession or control of a third person, identify the information and the person(s) possessing it.

8.      If Plaintiff claims that any document to be produced is privileged or constitutes attorneys' work product, Plaintiff is requested to submit a written statement that describes the nature of the documents not produced as required under the Federal Rules of Civil Procedure.

9.      In the event that any information is redacted from a Document produced pursuant to this Document Request, that information is to be identified and the basis upon which such information is redacted should be fully stated.

10.      Documents shall be produced as they are or have been kept in the ordinary course, including the original file folder and label or other similar identification devices, or shall be organized and labeled to identify any file number, file name, or any other file identification system utilized by the responding party, as well as the location and custodian of such records.

11.      When a request calls for the production of an electronic database file or Data File, this file must be produced in a form compatible with Microsoft Access, or in any other format agreed to by the parties.

6

12.    To the extent that you view any document request as vague or imprecise, counsel for Defendants offers to confer with counsel for Plaintiff as to the intended scope of such document request.

## DOCUMENT REQUESTS

Request No. 1

Provide all documents concerning the number of prescriptions for off-label uses for which Plaintiff paid or reimbursed Members, providers, pharmacies, or any other person or entity, and the dollar amounts of all such payments or reimbursements for off-label prescriptions.

Request No. 2

Provide all documents concerning the number of prescriptions for Neurontin for which Plaintiff paid or reimbursed Members, providers, pharmacies, or any other person or entity, and the dollar amounts of all such payments or reimbursements, broken down into (a) off-label prescriptions for Neurontin; and (b) prescriptions of Neurontin for approved indications.

Request No. 3

All marketing materials, marketing information, and related documents received from any manufacturer or supplier of prescription drugs or prescription drug benefits concerning Neurontin.

Request No. 4

All documents concerning any communication between Plaintiff, any third-party Plan Administrator or Preferred Provider, including insurance companies, Plaintiff's Members or anyone acting on their behalf, and any provider or pharmacy relating to

7

Neurontin, including but not limited to payments, prior authorizations, pre-approvals, or coverage of claims.

Request No. 5

All invoices, advertisements, catalogs or industry publications concerning Neurontin.

Request No. 6

All documents concerning claims, coverage, benefits, pricing, or reimbursement for Neurontin.

Request No. 7

All formulary documents concerning Neurontin.

Request No. 8

All documents from any formulary committee, or any other committee with similar functions, concerning Neurontin, including but not limited to presentations, meeting minutes, and evaluations of Neurontin.

Request No. 9

All documents concerning Neurontin from any committee, team, council, or other group of employees, that discussed, recommended, approved, denied, or otherwise considered the inclusion of Neurontin in Plaintiff's formulary, the payment or denial of Neurontin claims, the payment of denial of off-label uses of Neurontin, or otherwise addressed Neurontin.

Request No. 10

All documents concerning any communication or interaction between Plaintiff, any third-party Plan Administrator or Preferred Provider, including insurance companies, Plaintiff's Members or anyone acting on their behalf, and any Defendant.

Request No. 11

All documents concerning any statements obtained by the Plaintiff from any person having, or purporting to have, knowledge or information pertaining to Neurontin.

Request No. 12:

All documents concerning any opinion by any person with an M.D., Ph.D., D.O., M.P.H., or D. Sc., pharmacy degree, or by any similarly trained or educated health care professional or scientist, concerning Neurontin.

Request No. 13

Copies of all newspaper, magazine or medical journal articles which discuss, refer or relate to the use of Neurontin for off-label uses.

Request No. 14:

Copies of all promotional or marketing materials or other documents regarding the use of Neurontin.

Request No. 15

Copies of all promotional or marketing materials or other documents regarding the use of Neurontin that Plaintiff alleges were provided by Defendants to any physician who prescribed Neurontin to Plaintiff's Members.

Request No. 16:

Copies of each medical article, treatise, research study, publication, or other document regarding the use of Neurontin for the treatment of off-label uses.

Request No. 17

Copies of all documents that provide information about the approved indications for Neurontin or that indicate that Neurontin was not approved by the FDA for certain uses.

Request No. 18

All records showing the dollar amounts for reimbursements or payments of prescriptions or costs of drugs prescribed for off-label uses from the period 1994 through the present, and the percentage the off-label payments represent of total reimbursements and costs for all claims during that period.

Request No. 19

One representative copy of each document sent to Members, physicians, pharmacies, medical centers, hospitals, the government, or any other entities in which Plaintiff expresses its policy towards or information about payment for off-label prescriptions.

Request No. 20

One representative copy of each document sent to Members, physicians, pharmacies, medical centers, hospitals, the government, or any other entities in which Plaintiff expresses its policy towards or information about payment for anti-epileptic drugs, whether for on-label or off-label indications.

<u>Request No. 21</u>

One representative copy of each document sent to Members, providers, pharmacies, medical centers, hospitals, the government, or any other entities in which Plaintiff expresses its policy towards or information about payment for Neurontin, whether for on-label or off-label indications.

<u>Request No. 22</u>

All newspaper articles, magazine articles, articles from the internet, reimbursement newsletters, or other published or printed material concerning the off-label use of Neurontin.

<u>Request No. 23</u>

All statements or other documents disseminated by or on behalf of any Defendant to Plaintiff and/or the public concerning Neurontin.

<u>Request No. 24</u>

All correspondence or communications with any federal or state government entity or agency regarding Neurontin, reimbursement for off-label uses of medications, and/or any of the claims raised in the Complaint.

<u>Request No. 25</u>

All documents concerning medical compendia, listings, or other similar types of documents, including but not limited to DRUGDEX, that include information about off-label uses of drugs.

<u>Request No. 26</u>

All documents referring to any investigation, lawsuit, or other examination into the off-label use of Neurontin.

11

Request No. 27

All information received from any source about the use of Neurontin off-label.

Request No. 28

All documents concerning the efficacy or inefficacy of Neurontin for off-label uses.

Request No. 29

All documents concerning any budgetary plans and/or budgetary discussions about the costs and issues surrounding coverage of off-label uses for medications.

Request No. 30

All documents concerning the benefits, risks, safety, efficacy or cost or benefits of Neurontin.

Request No. 31

Records of all claims or requests for payment or reimbursement received concerning Neurontin.

Request No. 32

All documents addressing claims for reimbursement or provision of Neurontin that identify the indications for which Neurontin was prescribed or reflect Neurontin prescriptions by indication or use.

Request No. 33

All records, emails, correspondence, memorandum and documents of any kind in which the indications of Neurontin are discussed.

12

Request No. 34

All documents concerning Neurontin's package insert, Neurontin's label, and the indications for which Neurontin was approved.

Request No. 35

All documents in which Plaintiff addresses, questions, identifies or analyzes the level, cost, type or number of Neurontin claims received by Plaintiff.

Request No. 36

All documents comparing the level, cost, type or number of Neurontin claims to those of other anti-epileptic drugs or other drugs in general.

Request No. 37

All protocols, procedures, or requirements – whether formal or informal – for the processing of Neurontin claims.

Request No. 38

All documents related to any analysis of potential, expected or actual costs of paying for or reimbursing Members for Neurontin for any use other than as an adjunctive therapy in the treatment of epilepsy.

Request No. 39

Copies of organization charts which reflect the structure and composition of any department within Plaintiff whose responsibilities included the assessment, payment, rejection of payment, or tracking of Neurontin claims.

Request No. 40

Documents sufficient to identify all person who had responsibilities concerning the review, consideration, analysis, recommendations, or approval of any aspect of the reimbursement of costs of Neurontin.

Request No. 41

All documents or records in Plaintiff's databases that concern requests for reimbursement of the costs of Neurontin. The response to this request should include all fields of any database whose records are produced.

Request No. 42

All documents concerning any efforts by Plaintiff to track the off-label prescriptions of medications, including but not limited to Neurontin.

Request No. 43

All documents which discuss or reflect the dollar amount, numeric amount, or rate of change of Neurontin prescriptions to Members.

Request No. 44

All documents concerning any disapproval of coverage or reimbursement by Plaintiff for any Neurontin prescription for an off-label use.

Request No. 45

All documents concerning any contract or agreement between any pharmacy, provider, or other entity regarding Neurontin or payment or reimbursement of the cost of prescribing Neurontin.

14

Request No. 46

Each document concerning the payment, pass-on or reimbursement of costs associated with Neurontin by any pharmacy, employer, company, sponsor, insurer, or third party payor.

Request No. 47

Each document concerning rebates or other payments requested by or paid to Plaintiff regarding Neurontin.

Request No. 48

Documents sufficient to show, by month, year, and state, the number and dollar amount of payments made by Plaintiff concerning Neurontin on behalf of Members.

Request No. 49:

All documents that state, record, list, or refer to any fee, expense, cost, or item of pecuniary expense or loss of any kind for which you seek to recover compensatory damages in this action, including administrative, travel, and other costs, damages, or expenses.

Request No. 50

All documents, including any in an electronic data format, showing individual claims submitted to and payments made by Plaintiff for Neurontin to Members or to providers or other parties on behalf of any Member. For each transaction, data should include information regarding the type of contract and funding methodology between the parties. These documents or databases should include all information or all fields necessary to adjudicate claims, including but not limited to the following: encrypted member i.d., member age, date of service, date of payment, amount billed, amount paid

15

by plan, co-pay, deductible, coinsurance, third party liability, ICD-9 code, CPT, HCPCS, NDC or local code used by the plan, physician i.d., and claim status/adjudication code. If fields containing confidential information (e.g., member name, social security number) are encrypted, they should be encrypted so as to allow the tracking of an individual Member over time.

Request No. 51

For each Member's claim or payment identified in Plaintiff's response to Request No. 50, provide documents, including any in an electronic data format, showing all individual claims submitted to and payments made by Plaintiff for any prescription drug to those Members or to providers or other parties on behalf of those Members. For each transaction, data should include all information necessary to adjudicate claims, including but not limited to the following: encrypted member i.d., member age, name of drug, reason drug was prescribed to Member, date of service, date of payment, amount billed, amount paid by plan, co-pay, deductible, coinsurance, third party liability, ICD-9 code, CPT, HCPCS, NDC or local code used by the plan, physician i.d., and claim status/adjudication code. If fields containing confidential information (e.g., member name, social security number) are encrypted, they should be encrypted so as to allow the tracking of an individual Member over time (including tracking the Member against the information provided in response to Request No. 50).

Request No. 52

All documents concerning Plaintiff's payment of all or part of the purchase price for Neurontin, including co-payment or deductible amounts, on behalf of any Member of Plaintiff. This request includes, but is not limited to, documents sufficient to identify the

16

date the payment was made; the person or entity to whom the payment was made; the

name of the Member on whose behalf the payment was made and whether the Member is

covered by Medicare or eligible for Medicare benefits; the dosage of Neurontin

purchased; the name, address, and telephone number of the health care provider or

pharmacy providing Neurontin; and the dollar amount of the payment, as well as

statements, invoices, bills, receipts, cancelled checks, credit card statements, or other

proof of payment.

Request No. 53

All documents concerning any damages that Plaintiff contends were sustained

from Defendants' alleged conduct or otherwise supporting Plaintiffs' claim for damages

or other relief in this case.

Request No. 54

All documents, including medical records, concerning Plaintiff's Members'

treatment with Neurontin.

Request No. 55

All documents in the possession of Plaintiff or Plaintiff's attorneys related to

Neurontin that were provided by non-parties to any of the parties in the civil action

*United States of America ex rel. David Franklin v. Parke-Davis, et al.*, C.A. No. 96-

11651-PBS (D. Mass.).

Request No. 56

All of Plaintiff's summary annual reports, annual reports, and state and federal tax

filings for the years 1994 through the present.

17

Request No. 57

All documents filed with any federal or state government entity, including the Department of Health and Human Services, Centers for Medicare and Medicaid Services, and any State Department of Insurance, relating to medical benefits concerning Neurontin or concerning the off-label use of any drug.

Request No. 58

Copies of all articles of incorporation, by-laws, charters, agreements, or other documents under which Plaintiff was created or organized, which describe Plaintiff's corporate governance, organizational structure, and/or which identify Plaintiff's purposes or operations.

Request No. 59

Copies of organization charts which reflect Plaintiff's structure.

Request No. 60

All documents submitted to any government entity or agency since January 1, 1994 relating to Plaintiff which discussed or addressed the off-label use of medications.

Request No. 61

All minutes of meetings of Plaintiff's trustees, fiduciaries, or officers, notices regarding such meetings, and all documents distributed before, during, or as result of such meetings, including all documents reflecting a decision of the trustees, fiduciaries, or officers in lieu of a meeting, in which the off-label use of medications was discussed.

Request No. 62

Documents sufficient to identify the names and addresses of Plaintiff's trustees, fiduciaries, and officers since January 1, 1994.

18

<u>Request No. 63</u>

Documents sufficient to identify the names and addresses of all individuals and entities providing administrative services to Plaintiff, including the Plan Administrator(s), since January 1, 1994.

<u>Request No. 64</u>

Plaintiff's Plan and trust documents and documents reflecting amendments thereto since January 1, 1994.

<u>Request No. 65</u>

Adoption agreements and documents reflecting amendments thereto since January 1, 1994.

<u>Request No. 66</u>

One representative copy of all communications since January 1, 1994 with Plaintiff's Members and providers relating to anti-epileptic drugs or to off-label uses, including, but not limited to, summary plan descriptions and summaries of material modifications.

<u>Request No. 67</u>

Participation agreements and documents reflecting amendments thereto since January 1, 1994.

<u>Request No. 68</u>

All documents concerning communications between Plaintiff, any third-party plan administrator or Preferred Provider, including insurance companies, and/or consultant of any type since January 1, 1994 relating to coverage for drugs, payment for drugs, drug

formularies, off-label usage of drugs, and methodologies for reimbursing third-parties or Members for drugs.

Request No. 69

All documents concerning the type and terms of all health benefits Plaintiff provides that relate in any way to pharmaceutical drugs including, but not limited to, documents concerning prescription drug benefits, hospital benefits, physician services benefits, medical testing benefits, and any other benefits related to medical care, as well as documents reflecting premiums paid and the methodology used for calculating premiums.

Request No. 70

All documents concerning pricing and marketing of prescription drugs and pharmaceutical benefits, including pricing and underwriting guidelines, pricing and underwriting policies and procedures, marketing guidelines, and marketing policies and procedures. Produce separately, or identify within this production, those documents responsive to Request No. 70 that relate to off-label uses of drugs.

Request No. 71

Documents sufficient to show (a) all drugs for which Plaintiff provides coverage; (b) the amount Plaintiff has paid for each drug, both brand name and generics, for each year since January 1, 1994, including but not limited to any pricing lists and contracts with pharmaceutical manufacturers; and (c) the amount, if applicable, Plaintiff charges to its Members for Neurontin.

Request No. 72:

All documents regarding Plaintiff's policies and procedures since 1994 with respect to the reimbursement of, or payment for, the costs of medications prescribed to Plaintiff's Members.

Request No. 73:

All documents regarding Plaintiff's policies and procedures since 1994 with respect to the off-label use of medications, including but not limited to documents addressing policies for reimbursing Members for off-label medications.

Request No. 74

All documents concerning Plaintiff's standard operating procedures or claims handling practices and procedures regarding payment of claims related to off-label uses.

Request No. 75:

All documents relating or referring to, or embodying, minutes of meetings, agendas, dossiers, internal memoranda regarding strategies and issues, Questions and Answers, scheduling, or any other documents concerning meetings at which off-label prescribing of medicines was discussed.

Request No. 76:

Copies of all presentations, internal memoranda, or other documents that include any reference to off-label prescribing of medicines, including but not limited to references about Plaintiff's practices with respect to off-label prescriptions.

Request No. 77

Copies of any industry newsletters or publications, trade publications, articles, or similar documents addressing in any way how insurance companies or third party payors

are to handle claims for off-label prescriptions, including but not limited to documents discussing company approaches or best practices, government or industry regulations or requirements, and evolutions in the industry with respect to off-label prescriptions and off-label use of medications.

Request No. 78

Copies of any federal, state or local laws or regulations addressing the reimbursement by insurers of off-label prescriptions.

Request No. 79

All documents concerning Plaintiff's obligation, or lack of obligation, under any internal or external policy, rule, regulation, or case law to pay for, reimburse, or cover the costs – in full or in part – of off-label uses of drugs and medications.

Request No. 80

All documents referencing Plaintiff's compliance (or lack of compliance) with internal or external rules, regulations, and policies pertaining to reimbursement for off-label prescriptions.

Request No. 81

All records reflecting the resolution of claims related to an off-label prescription.

Request No. 82

All documents addressing how Plaintiff determines whether a claim is for a medication used for an off-label use.

Request No. 83

All documents showing that Plaintiff refused payment, either in whole or in part, for a claim involving an off-label prescription, and all documents related to, discussing or analyzing that refusal.

Request No. 84

Any correspondence to or from Members, providers, hospitals, pharmacies, or any other individual, organization, or institution addressing a claim involving an off-label prescription.

Request No. 85

All documents concerning any review, consideration, analysis, recommendation or approval of payment for or reimbursement of some or all of the costs of medications prescribed for an off-label use.

Request No. 86

All documents concerning any requirement (or lack of requirement) that Members, pharmacies, providers, or any other person or entity identify the indication for which a drug was prescribed when submitting a claim to Plaintiff for reimbursement of the costs of that drug.

Request No. 87

All documents concerning any requirement (or lack of requirement) that Members, pharmacies, providers, or any other person or entity identify whether a drug was prescribed for an off-label use when submitting a claim to Plaintiff for reimbursement of the costs of that drug.

23

Request No. 88

All documents concerning any discussion about or decision by Plaintiff to inform Members that it would not pay for the off-label uses of drugs.

Request No. 89

All documents concerning communications by Plaintiff to pharmaceutical manufacturers, including but not limited to Parke Davis, Warner Lambert, and Pfizer Inc., concerning the off-label use of drugs.

Request No. 90

All documents concerning communications by Plaintiff to pharmaceutical manufacturers, including but not limited to Parke Davis, Warner Lambert, and Pfizer Inc., not provided in response to Request No. 89.

Request No. 91

All documents concerning Plaintiff's internal communications concerning the review, design, analysis, write up, or proposal for reimbursement of medications for off-label uses.

Request No. 92

All requests, letters, inquiries, disputes, clarifications, emails, or logs of telephone calls from Members or providers referencing Plaintiff's policies, requirements, or treatment of off-label prescriptions.

Request No. 93

All records in any database maintained by Plaintiff or documents which contain information regarding claims for reimbursement for off-label uses of medications, whether such records were generated by Plaintiff or purchased from third parties. The

24

response to this request should include for any database all fields of the database for every record produced.

Request No. 94

All documents in the possession of Plaintiff or Plaintiff's attorneys concerning, concerning, or discussing the civil action *United States of America ex rel. David Franklin v. Parke-Davis, et al.*, C.A. No. 96-11651-PBS (D. Mass.).

Request No. 95

All documents reviewed by any expert retained by Plaintiff to testify at trial in this Action.

Request No. 96

All documents prepared by any expert retained by Plaintiff to testify at trial in this Action.

Request No. 97

The complete file and/or working papers of any expert whom Plaintiff intends to call as a witness at trial.

Request No. 98

The current resume or curriculum vitae of any expert whom Plaintiff intends to call as a witness at trial.

Request No. 99

All reports of any expert whom Plaintiff intends to call as a witness at trial.

Request No. 100

All drafts of all reports of any expert whom Plaintiff intends to call as a witness at trial.

Request No. 101

All notes prepared by any expert whom Plaintiff intends to call as a witness at trial.

Request No. 102

All documents that you provided to any expert whom Plaintiff intends to call as a witness at trial.

Request No. 103

All documents concerning communications between Plaintiff and any expert whom Plaintiff intends to call as a witness at trial.

Request No. 104

All documents reviewed by any expert whom Plaintiff intends to call as a witness at trial.

Request No. 105

All documents relied upon by any expert whom Plaintiffs intend to call as a witness at trial.

Request No. 106

All documents supporting, rebutting, or otherwise relating in any way to the allegations of the Complaint, including but not limited to all documents reviewed in advance of, or relied on in, drafting the Complaint.

Request No. 107

All documents Plaintiff intends to introduce or rely upon at any hearing, trial, or in connection with any dispositive motion.

26

Request No. 108

All internal investigations or reports performed or prepared by Plaintiff, or on its behalf, concerning the allegations in the Complaint.

Request No. 109

All documents concerning any alleged misrepresentation(s) or any false, fraudulent, misleading, or deceptive statements allegedly made by or on behalf of any Defendant concerning Neurontin.

Request No. 110

All documents that you contend provide support or evidence of the allegation in paragraph 22 of the Complaint that "Parke-Davis knew there was no scientific rationale for Neurontin being effective for bipolar disorder, acute mania, social phobia and panic disorder."

Request No. 111

All documents that you contend provide support or evidence of the allegation in paragraph 29 of the Complaint that "Parke-Davis only intended to publish studies that generated positive results."

Request No. 112

All documents that you contend provide support or evidence of the allegation in paragraph 31 of the Complaint that "the marketing enterprises Parke-Davis conducted routinely engaged in acts of mail fraud, wire fraud, commercial bribery, unfair and deceptive trade practices and other unlawful conduct."

27

Request No. 113

All documents that you contend provide support or evidence of the allegation in paragraph 42 of the Complaint that "Defendants hid their involvement in the promotion of off-label information and mislead physicians into believing that the physicians who promoted Neurontin were independent or not otherwise part of the enterprise Parke-Davis created to market Neurontin off-label."

Request No. 114:

All documents that you contend provide support or evidence of the allegation in paragraph 44 of the Complaint that "physicians who attended these events were deceived into thinking that the events were educational in nature and independent from the control of the Defendants."

Request No. 115

All documents that you contend provide support or evidence of the allegations in paragraph 45 of the Complaint that Defendants engaged in practices of "(a) deliberately misrepresenting the safety and medical efficacy of Neurontin for a variety of off-label uses; (b) knowingly misrepresenting the existence and findings of scientific data, studies, reports and clinical trials concerning the safety and medical efficacy of Neurontin for a variety of off-label uses; (c) deliberately concealing negative findings or the absence of positive findings ... (d) misrepresenting the credentials and qualifications of certain of Defendants' employees ... (e) wrongfully and illegally compensating physicians for prescribing Neurontin for various off-label uses; (f) knowingly publishing articles, studies and reports misrepresenting the scientific credibility of data and touting the medical efficacy of Neurontin for off-label uses; (i) intentionally misrepresenting and

28

concealing Defendants' role and participation [in various events and publications]; and (j)

intentionally misrepresenting and concealing the financial ties between the Defendants

and other participants in the Enterprise."

<u>Request No. 116</u>

All documents that you contend provide support or evidence of the allegation in

paragraph 53 of the Complaint that unrestricted grants in support of medical education

events "were expressly provided for the purpose of obtaining a program that extolled the

use of Neurontin for unapproved indications."

<u>Request No. 117</u>

All documents that you contend provide support or evidence of the allegation in

paragraph 55 of the Complaint that "the real purpose of [Consultants' Meetings] was to

expose the attendees to Neurontin's uses for non-epilepsy treatment."

<u>Request No. 118</u>

All documents that you contend provide support or evidence of the allegation in

paragraph 56 of the Complaint that "the vendor participants (with the assistance of the

participating physicians and the Defendants) intentionally designed the programs so that

the attendee physicians would not receive fair and balanced information."

<u>Request No. 119</u>

All documents identifying each study Plaintiff claims contains "negative clinical

trial results that demonstrated that Neurontin was no more effective than a placebo for

several off-label conditions," as referenced in paragraph 56 of the Complaint; and for

each such study provide all documents showing the date the study was undertaken,

29

whether it was sponsored by Defendants, and the date the results of the study were released.

Request No. 120

All documents that you contend provide support or evidence of the allegation in paragraph 115 of the Complaint that "Publications that Defendants distributed as part of their 'publication strategy' intentionally misrepresented Defendants' role in the creation and sponsorship of the publications."

Request No. 121

All documents that you contend provide support or evidence of the allegation in paragraph 128 of the Complaint that "the Off-Label Promotion Enterprise routinely and knowingly provided false, inaccurate, misleading, distorted, unfair and unbalanced information about Neurontin's use for unapproved indications."

Request No. 122

All documents that you contend provide support or evidence of the allegation in paragraph 132 of the Complaint that "Defendants ... deliberately suppressed negative studies" about pain.

Request No. 123

All documents that you contend provide support or evidence of the allegation in paragraph 210 of the Complaint that "Defendants elected to pay kickbacks and otherwise provide participant and attendee physicians with items of substantial value to induce them to listen to the off-label marketing pitch, to prescribe Neurontin, and to recommend Neurontin to other physicians."

Request No. 124

All documents that you contend provide support or evidence of the allegation in paragraph 235 of the Complaint that "Pfizer has routinely marketed Neurontin for off-label indications up until May of 2004."

Request No. 125

All documents that reflect Plaintiff's total revenues, income and/or profit generated directly or indirectly from Plaintiff's provision of prescription drug coverage, including without limitation financial statements, internal reports, memoranda and correspondence by year for the period from January 1, 1994 through the present.

Request No. 126

All documents reflecting the total volume of premiums received for prescription drug coverage (in dollars and in terms of numbers of policyholders) by year for the period from January 1, 1994 through the present.

Request No. 127

All contracts and documents concerning such contracts between Plaintiff and Defendants for the period from January 1, 1994 through the present.

Request No. 128

All documents concerning Neurontin that have not been provided in response to any other Request.

Request No. 129

All documents concerning communications between Plaintiff and Pfizer, Warner-Lambert-Company, or Parke-Davis that have not been provided in response to any other Request.

31

Dated:  New York, New York
        May 2, 2005

                        DAVIS POLK & WARDWELL

                        By: _____
                            James P. Rouhandeh
                            James E. Murray

                        450 Lexington Avenue
                        New York, New York  10017
                        (212) 450-4000


                        HARE & CHAFFIN

                        By: _____
                            David B. Chaffin
                            BBO No. 549245

                        160 Federal Street
                        Boston, Massachusetts 02110
                        (617) 330-5000


                        Attorneys For Defendants Pfizer Inc. and
                        Warner-Lambert Company.

# EXHIBIT 11

## Reema S. Abdelhamid

**From:**    Nancy Pacharzina [NPacharzina@Tousley.com]
**Sent:**    Monday, September 12, 2005 9:14 PM
**To:**      'abdelham@dpw.com'
**Subject:** FW: Subpoenas/Neurontin Litigation

Dear Reema,

I have additional information from ASI regarding the burden associated with producing claims documents for the pharmacy claims processed by ASI instead of Caremark. ASI can generate a list of claims that are pharmacy claims instead of medical claims.   . It turns out there are approximately 136,000 such claims. The documentation is contained in 309 boxes stored in a warehouse. The claims processed on any given day by a single person are stored in a manilla envelope. The boxes contain many manilla envelopes. The list will identify in which box the envelop containing the drug claim is located. A reviewer would then have to go to that envelope and extract the claim documentation and determine if the claim was for Neurontin. ASI estimates it would take 1138 hours to review the claims at a rate of two claims per minute. At $50.00/hr that translates into a $56,900charge to the Trust plus $1,500 to retrieve the 309 boxes. ASEA stands on it objection.

Regards,

*Nancy A. Pacharzina*
*Attorney*
*Tousley Brain Stephens PLLC*
*1700 Seventh Avenue, Suite 2200*
*Seattle, WA 98101-1332*
*(206) 682-5600*
*(206) 682-2992 (fax)*
*npacharzina@tousley.com*
 *The information contained in this email is confidential and may be attorney-client privileged or attorney work product. It is intended for the addressee only. Unauthorized use, review or disclosure is prohibited. If you received this email in error, please notify the sender at the above address and permanently delete the original message as well as any copy or printout.*

**From:** Nancy Pacharzina
**Sent:** Wednesday, September 07, 2005 3:38 PM
**To:** 'Reema Abdelhamid'
**Cc:** bhimmelstein@lchb.com; Kim Stephens; Chris Brain
**Subject:** RE: Subpoenas/Neurontin Litigation

Dear Reema,

Regarding the items you asked about in your email below:

(1)  Marketing information – I spoke with Valera Kingsley at ASI again on this subject. She stated again, ASI does not receive any pharmaceutical marketing materials, relevant magazines or journals on a regular basis. They periodically receive pharmacy updates but they are not retained. When ASI was processing pharmacy claims they subscribed to Medispan but they no longer subscribe. They did not retain old copies. She also stated, as head of the claims department she would know if anyone at ASI who processed claims for ASEA received any such items. As such, we consider both ASI's and ASEA's response on this issue complete.

1/6/2006

(2)   Pharmacy Claims processed by ASI instead of Caremark – ASI/ASEA stand on their overly burdensome objection regarding production of pharmacy claims processed by ASI.  ASEA is NOT, however, forgoing its claim for damages regarding such claims as there are alternative methods by which ASEA can prove the number and amount of the claims that were for Neurontin to the appropriate legal standard (e.g. extrapolation).   Defendants have as much information as ASEA does regarding those methods and will be free to argue their adequacy to the court.  ASI is collecting additional information regarding the burden associated with trying to determine which of these 44,000 claims are for Neurontin.

In addition, I will produce on CD the additional documents we have discussed (that you do not already have) by early next week. These include: An exemplar of a Caremark invoice to ASI, the AdvancePCS (aka Caremark) "Standard Covered Drugs List," an exemplar of a quarterly rebate report, and the portions of ASEA Board of Trustee Meeting Minutes in which Caremark made annual reports on drug utilization.

I apologize for not getting you this last week.  I was shepherding denial of a preliminary injunction through the emergency appeals process.  Thank you again for your patience.

Regards,
*Nancy A. Pacharzina*
*Attorney*
*Tousley Brain Stephens PLLC*
*1700 Seventh Avenue, Suite 2200*
*Seattle, WA 98101-1332*
*(206) 682-5600*
*(206) 682-2992 (fax)*
**npacharzina@tousley.com**

*The information contained in this email is confidential and may be attorney-client privileged or attorney work product.  It is intended for the addressee only.  Unauthorized use, review or disclosure is prohibited.  If you received this email in error, please notify the sender at the above address and permanently delete the original message as well as any copy or printout.*

**From:** Reema Abdelhamid [mailto:abdelham@dpw.com]
**Sent:** Tuesday, September 06, 2005 11:24 AM
**To:** Nancy Pacharzina
**Subject:** RE: Subpoenas/Neurontin Litigation

Thanks.

At 10:40 AM 9/6/2005 -0700, you wrote:

Thanks for your patience Reema.  I will let you know something tomorrow, if not today.

Nancy A. Pacharzina
Attorney
Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-1332
(206) 682-5600
(206) 682-2992 (fax)
npacharzina@tousley.com

The information contained in this email is confidential and may be attorney-client privileged or attorney work product.  It is intended for the addressee only.  Unauthorized use, review or disclosure is prohibited.  If you received this email in error, please notify the sender at the above address and permanently delete the original message as well as any copy or printout.

-----Original Message-----
From: Reema Abdelhamid [mailto:abdelham@dpw.com]
Sent: Tuesday, September 06, 2005 7:42 AM
To: Nancy Pacharzina
Subject: Subpoenas/Neurontin Litigation

Hi. Hope you had a good labor day weekend. I know that when we spoke a couple of weeks ago we agreed that you would be getting back to us by the end of last week regarding 1) marketing information - specifically the scope of the search that could be done for such information and 2) Request #4 in the ASI subpoena - specifically, whether your client is foregoing damages claims for the period covered by materials for which ASI is asserting its burdensomeness objection.

Please let us know whether you have responses on these issues or, if not, by when you anticipate responding.


Regards,
Reema

# **EXHIBIT 12**

 KAISER PERMANENTE.

☐ Change your region: California - Southern

**Health plans    Decision help    About us    Locate our services    Your health**



## Structure of Kaiser Permanente

▫ Who we are

▫ Fast facts



### Organized to best serve our members

### About us

Kaiser Permanente is the largest nonprofit health plan* in the United States, serving 8.2 million members in 9 states and the District of Columbia. We are an integrated health delivery system, which that we provide and coordinate the entire scope of care for our members, including:

- preventive care
- well-baby and prenatal care
- immunizations
- emergency care
- screening diagnostics
- hospital and medical services
- pharmacy services

As a nonprofit health plan, we are driven by the needs of our members rather than the needs of shareholders. We also believe we have a responsibility to serve the communities in which we operate. Some of our community activities include:

- providing assistance to the uninsured and special popul
- training new health professionals
- introducing new delivery methods into the health care f
- developing and sharing better ways of caring for patien

Learn more about our organization's core values.

---

\* Kaiser Permanente is composed of Kaiser Foundation Health Plans (nonp
public-benefit corporations), Kaiser Foundation Hospitals (a nonprofit, p
benefit corporation), and the Permanente Medical Groups (for-profit
professional organizations).

▲ Back to top

Terms & conditions      Privacy practices      Site policies      About us
Contact Web manager      Web awards & accreditations      Careers
Technical information      Home kp.org