UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:  NEURONTIN MARKETING,
        SALES PRACTICES AND
        PRODUCTS LIABILITY LITIGATION

: MDL Docket No. 1629

: Master File No. 04-10981

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x  Judge Patti B. Saris

THIS DOCUMENT RELATES TO:

: Magistrate Judge Leo T.
: Sorokin

PRODUCTS LIABILITY ACTIONS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION TO COMPEL DISCOVERY

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

HARE & CHAFFIN
160 Federal Street
Boston, MA 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

## TABLE OF AUTHORITIES

### Cases

**Page**

Nat'l Abortion Fed'n v. Ashcroft, No. 03 Civ. 8695,
2004 WL 555701 (S.D.N.Y. March 19, 2004) ........................................................6

Nw. Mem'l Hosp. v. Ashcroft, 362 F.3d 923 (7th Cir. 2004) ...............................6

Rice v. Union Cent. Ins. Co., No. CV 05 216, 2006 WL 1128223
(D. Idaho Apr. 26, 2006) .........................................................................................6

### Statutes & Rules

42 U.S.C. § 1320d(6) ..............................................................................................6

45 C.F.R. § 164.502 .................................................................................................6

45 C.F.R. § 164.512.(e) ...........................................................................................6

45 C.F.R. § 164.514(a) ............................................................................................6

45 C.F.R. § 164.514(b) ............................................................................................6

Fed. R. Civ. P. 26 ...............................................................................................5,7,8

Fed. R. Civ. P. 26(a)(1)(E) ......................................................................................4

Fed. R. Civ. P. 26(b)(2) ...........................................................................................7

Fed. R. Civ. P. 37(a) ................................................................................................4

Local R. 37.1 ...........................................................................................................4

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND ............................................................................................... 1

ARGUMENT ..................................................................................................... 3

    I.    PLAINTIFFS MOTION TO COMPEL IS PREMATURE ............................... 3

    II.    PLAINTIFFS' REQUESTS ARE INCONSISTENT
        WITH THE DISCOVERY TEMPLATES AND ARE THE
        SUBJECT OF AGREEMENTS AMONG THE PARTIES ............................... 4

        A.    CMMS MARKETING DATABASSE ....................................... 4

        B.    VISITORS SPEAKERS BUREAU DATABASE ........................ 8

        C.    IMS HEALTH DATA ............................................................... 8

        D.    STATEMENTS TO THE MEDIA:  PUBLIC
            RELATIONS ............................................................................ 9

        E.    LABELING HISTORY PERTAINING TO THE U.K.
            AND IRELAND ....................................................................... 9

CONCLUSION ................................................................................................. 11

Defendants Pfizer Inc. ("Pfizer") and Warner-Lambert Company ("Warner-Lambert") (collectively "the Company") respectfully submit this memorandum of law in opposition to Products Liability Plaintiffs' Motion to Compel Discovery dated July 27, 2006, (hereinafter "the Motion").

## PRELIMINARY STATEMENT

Product plaintiffs filed their motion to compel before the due date for defendants' responses and objections to the discovery requests that are the subject of the Motion. Specifically, because defendants' time to respond and object to the Product Liability Plaintiffs' Request for Production of Documents and Things dated July 1, 2006 (hereinafter "the July 1 Request") had not run as of July 27, 2006, when plaintiffs filed the Motion, it is premature. Moreover, much of the discovery sought in the Motion was the subject of discussions between the parties on or about July 13, during which time defendants agreed to produce documents responsive to many of the requests. If the Court wishes for defendants to brief the substance of the issues notwithstanding plaintiffs' attempt to end run the discovery rules, defendants wish to reserve their right to submit supplementary briefing upon request.

## BACKGROUND

On May 18, 2006, the District Court of Massachusetts held a status conference regarding discovery in the Products Liability Actions, at which time the Court instructed the parties to submit uniform discovery templates and agreements and further instructed the templates should be annotated to reflect the areas of disagreement.

During the May conference, plaintiffs indicated that there were other discovery-related issues arising out of, or related to, other litigation not necessarily before the Court. The Court instructed the parties to meet and confer about these issues and if unable to reach an agreement, to bring unresolved matters to the Court's attention via a motion. Ignoring this directive, plaintiffs' counsel provided to defense counsel a draft of Docket No. 330 (hereinafter "the Positions Statement"), on May 31, 2006. On June 1, defendants offered to meet and confer with plaintiffs regarding the Positions Statement on June 12, 13 and / or 14 but plaintiffs declined those dates and instead filed the Positions Statement on June 6, notwithstanding the fact that the parties had not met and conferred about the Positions Statements. Consequently, on June 7, defendants moved to strike the Positions Statement.

In a Decision and Order dated June 19 (hereinafter "the Decision and Order"), Magistrate Sorokin denied as moot defendants motion to strike indicating, "[Docket No. 330] is neither styled as a motion nor is the Court treating it as such. It was not filed in support of or in opposition to any pending motion and, accordingly, was not considered with respect to any of the pending motions."

Plaintiffs did nothing further with the Positions Statement, which is not styled as a discovery device, and fails to afford defendants an opportunity to respond in a meaningful way. Recognizing this, plaintiffs served defendants with the July 1 Request, attached hereto with accompanying cover letter and exhibits as Exhibit 1. In the accompanying cover letter plaintiffs indicated:

> Prior to the last conference before Judge Sorokin, Products Liability
> Plaintiffs proposed template discovery agreements regarding the generic
> scope of discovery [Docket No. 330]. Defense counsel did not propose a

2

similar document, but rather sought to strike Plaintiffs' document from the
docket. Since that time, the parties have still not conferred on the issue.
The next conference before Judge Sorokin is fast approaching, Defendants
have not formally represented that they will honor agreements between the
parties in the Young action or from the Southern District of New York.
Consequently, I am providing to you formal discovery demands for
documents and things in an attempt to narrowly tailor the discovery so that
Judge Sorokin can address these issues without any concerns that the
parties are arguing over 'abstract' issues.

See Exhibit 1. Accordingly, plaintiffs' July 1 Request explicitly referenced and rendered

moot the earlier filed Positions Statement.

The Court has set dates before which time disputed matters must be fully briefed

in order to be properly before the Court at each hearing. Plaintiffs cannot flout the

rulings of the Court or the Federal Rules of Civil Procedure as they see fit by shortening

the time defendants have to respond and object under the Rules. Defendants should not

be forced to oppose and respond to a motion to compel that is premature because it was

served prior to the due date for defendants' time to respond and object.

## ARGUMENT

### I.    PLAINTIFFS' MOTION TO COMPEL IS PREMATURE

Docket No. 330 is not the operative document. In fact, each of the subject

areas sought to be compelled are the subject of requests in the July 1 Request, which,

according to plaintiffs' cover letter of the same date, recognizes that plaintiffs had to

serve a formal discovery device to afford defendants an opportunity to respond in a

meaningful way, and was served for the specific purpose of narrowly tailoring the

discovery in these actions. See Exhibit 1. The parties engaged in a meet and confer on or

about July 13, to discuss the July 1 Request. During this time, and in advance of

defendants' time to respond and object to the same, many of the twenty six requests were

the subject of tentative agreements among the parties. Defendants indicated they would

be serving responses and objections but were willing to engage in a subsequent meet and

confer in an attempt to resolve the parties' differences.

Plaintiffs moved to compel production of documents before defendants had an

opportunity to respond and object to the July 1 Request as permitted under the Federal

Rules of Civil Procedure. See Fed. R. Civ. P. 26(a)(1)(E) (allowing for 30 days to

respond to such discovery demands). Moreover, in moving to compel in advance of

defendants' time to respond, plaintiffs failed to comply with the requirements of Federal

Rule 37(a) and Local Rule 37.1. In doing so, plaintiffs not only have tried to end run the

Federal Rules but also have attempted to manipulate the briefing schedule set in place by

Magistrate Sorokin. The Motion is premature.

## II.    PLAINTIFFS' REQUESTS ARE INCONSISTENT WITH THE DISCOVERY TEMPLATES AND ARE THE SUBJECT OF AGREEMENTS AMONG THE PARTIES

### A. CMMS MARKETING DATABASE

Request No. 15[1] in the July 1 Request reads: "CMMS Database: Produce an

electronic copy of sale tracking data from Defendants' database (with all data inputted

pertaining to Neurontin) relating to Defendants' Neurontin from January 1, 1994 through

June 30, 2006." Consistent with the discovery templates and the corresponding Decision

and Order, plaintiffs should be entitled to receive only those portions of the CMMS

database that relate to the prescribers for each respective plaintiff. To this end,

defendants have agreed to produce such excerpts, if any, from the sales-call database

---

[1] Plaintiffs' requests are not sequentially numbered. To avoid confusion and for ease of reference, defendants adopts plaintiffs' numbering schema.

containing contacts between sales representative(s) and plaintiffs' prescribing

physician(s) relating to Neurontin during the period that the sales representative(s)

detailed plaintiffs' prescribing physician(s), but in no event beyond the last date of the

Neurontin prescription to the respective plaintiff by the respective physician. This will be

done after plaintiffs' counsel specifically identifies in plaintiffs' Rule 26 disclosures

and/or plaintiffs' responses to defendants' interrogatories, the respective prescribing

physician(s) and the dates of Neurontin prescriptions.[2] See Defendants' Responses and

Objections to Product Liability Plaintiffs' Request for Production of Documents and

Things dated July 1, 2006, attached hereto at Exhibit 3. Production of the entire sales-

call database would result in the production of non-relevant material such as information

regarding sales representatives visiting doctors other than plaintiffs' prescribers, which

has no bearing upon plaintiffs' claims. Moreover, doing so would render the template

discovery and corresponding Decision and Order an exercise in futility. Wholesale

production would also require defendants to review the entirety of the database in order

to redact any portions containing individually identifiable health information relating to

individuals other than plaintiffs in this matter as required under the Health Insurance

Portability and Accountability Acts (hereinafter "HIPAA"). "Individually identifiable

health information" is defined by HIPAA as:

---

[2] Plaintiffs attempt to rely on a statement in Defendants' Reply Memorandum in Response to Personal Injury Plaintiffs' Memorandum and In Further Support of Defendants' Motion for Protective Order, dated July 29, 2005 (ECF Document No. 196). Plaintiffs would like to believe that defendants' statement implies that Judge Rakoff ordered the wholesale production of the CMMS database without regard to a temporal limitation. Read as written and with context, however, it is clear that defendants said nothing more than the Rakoff order dealt specifically with databases and not with non-database documents. In no way did defendants suggest, nor did Judge Rakoff order, the wholesale production of the sales and marketing databases. See Order of Jed S. Rakoff, U.S.D.J., for the Southern District of New York, dated April 25, 2005, attached hereto at Exhibit 2.

> [A]ny information . . . that—(A) is created by or received
> by a health care provider . . . ; and (B) relates to the past,
> present, or future physical or mental health or condition of
> an individual, [or] the provision of health care to an
> individual . . . and—(i) identifies the individual; or (ii) with
> respect to which there is a reasonable basis to believe that
> the information can be used to identify the individual.

42 U.S.C. § 1320d(6).  While the Department of Health and Human Services ("HHS")

has adopted regulations implementing HIPAA that preclude the disclosure of individually

identifiable health information except in limited circumstances (45 C.F.R. § 164.502; §

164.512.(e); see also Rice v. Union Cent. Ins. Co., No. CV 05 216, 2006 WL 1128223, at

*6 (D. Idaho April 26, 2006) (discussing the disclosure requirements of HIPAA in the

context of judicial proceedings)), the protected health information can be "de-identified"

or redacted such that it no longer "identif[ies] an individual and with respect to which

there is no reasonable basis to believe that the information can be used to identify an

individual." 45 C.F.R. § 164.514(a); see Rice, 2006 WL 1128223, at *6.

Redaction requires compliance with extensive requirements and procedures and

the removal of many types of information, including patient names, addresses (including

redaction of zip codes), dates relating to an individual (except for year), telephone

numbers, email addresses, and social security numbers.  45 C.F.R. § 164.514(b); see also

Nw. Mem'l Hosp. v. Ashcroft, 362 F.3d 923, 926 (7th Cir. 2004) (describing the

redaction requirements as "stringent").  Once redacted, the health information is no

longer individually identifiable and can be disclosed without further regard to the

requirements of HIPAA.  See, e.g., Nw. Mem'l Hosp., 362 F.3d at 926; Nat'l Abortion

Fed'n v. Ashcroft, No. 03 Civ. 8695, 2004 WL 555701, at *3, 7 (S.D.N.Y. March 19,

2004) (holding that medical records redacted to remove individually identifiable health

information are no longer subject to the disclosure requirements of HIPAA). Storage for the amount of data in the Sales Marketing Databases collected through March of 2005 that potentially would be relevant to Neurontin consumes over 2 gigabytes and consists of well over 4 million call records. See Affirmation of Alex Thurber, Litigation and Data Forensics Consultant, attached hereto as Exhibit 4. Follow-on data that has yet to be delivered, representing sales calls from March 2005 through a more recent date, could be expected to add significantly to these numbers. Id. Consequently, a redaction project of this degree would grind the discovery process to a halt for several months. [3]

Recognizing the time and expense involved with production of the requested database, there can be no doubt that "the burden [and] expense of the [requested] discovery outweighs its likely benefit". Fed. R. Civ. P. 26(b)(2) (court should consider "the needs of the case, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues"). Defendants' agreement to produce those portions of the database that relate to plaintiffs' prescribing physicians is reasonable and defendants request that the Court impose such limits on the requested discovery. See Fed. R. Civ. P. 26, advisory committee's note (Court can imposed discovery limits to prevent parties from using redundant requests to turn discovery into a "war of attrition").

---

[3] While plaintiffs may state that Defendants produced portions of the CMMS database in unredacted form in Young v. Pfizer it must be noted that this production was made subject to all of defendants' objections and was in no way intended to operate as a waiver. Rather, defendants made such productions explicitly reserving all of our objections. Moreover, defendants were under a Court imposed deadline that did not allow for the time necessary for defendants to redact.

## B. VISITORS SPEAKERS BUREAU DATABASE

Plaintiffs request production of the Visitors Speakers Bureau Database at Request No. 2. Defendants have agreed to produce, subject to and without waiving defendants' general objections and specific objections, entries from the described database, if any, that identify plaintiffs' prescribing physicians who are Neurontin speakers. Defendants will execute such searches once plaintiffs identify, in Rule 26 disclosures and / or in plaintiffs' Responses to Interrogatories, plaintiffs' prescribing physicians. Defendants' response is consistent with the template discovery entered among the parties in which defendants agreed to produce, in response to plaintiffs' Request No. 10, "entries from a database of speakers, if any, indicating whether plaintiffs' prescribing physician(s) was retained as a speaker regarding Neurontin and the related amount of compensation paid for speaking events relating to Neurontin through the date of the last prescription of Neurontin to the respective plaintiff by the respective physician. Defendants further agree to produce entries from a database of payments, if any, reflecting payments, if any, made to plaintiffs' prescribing physician(s), as a member in defendants' speaker program, as a clinical investigator or as a consultant relating to Neurontin prior to the time the respective plaintiff was last prescribed Neurontin by his or her respective physician." Nothing more should be required now. To hold otherwise would be to render the template discovery an exercise in futility.

## C. IMS HEALTH DATA

Plaintiffs request the production of IMS data in Request Nos. 5-7 of the July 1 Request. In response, Defendants stated that they have received data from a vendor other

8

than IMS and that this vendor requires a party receiving its data to enter into a contract prior to receipt. Defendants further indicated on July 31, that they are ready and willing to meet and confer with plaintiffs' counsel regarding the data received, if any, that reflect plaintiffs' prescribing physicians' Neurontin prescriptions.

## D. STATEMENTS TO THE MEDIA: PUBLIC RELATIONS

Plaintiffs request the production of documents relating to two specific statements made to the media by Paul Fitzhenry and Bryant Haskins, respectively, in Request Nos. 8 and 9 of the July 1 Request. In response, defendants indicated they would search for and produce, subject to and without waiving their objections, responsive documents, if any.

## E. LABELING HISTORY PERTAINING TO THE U.K. AND IRELAND

While plaintiffs cite a litany of prior discovery requests that claim to have requested the production of labels and their accompanying literature for all of the years for which Neurontin was approved, plaintiffs fail to inform the Court that in a May 2005, the parties reached an agreement regarding the production of labels. Specifically, defendants agreed to produce the gabapentin label(s) from the United Kingdom from 2000 onward, as those were easily accessible and located within the United States. The parties agreed to further confer with regard to plaintiff's ability to compel discovery of earlier versions of the United Kingdom label, which were located in the United Kingdom. The decision to confer further was made in light of the associated burden of obtaining labels not located within the United States.

There were no subsequent conferences or discussions in this regard. Rather the issue was renewed in the July 1 Request at Request Nos. 11-12. In response to the July 1

9

Request, defendants have agreed to search for and produce documents, if any, that were responsive to these requests seeking the United Kingdom and Ireland labels and would do so subject to defendants objections. To the extent plaintiffs' July 1 Request sought "labeling history documents" other than the label itself, (see, e.g., Request No. 13, which would include the production of all internal documents whatsoever relating to Neurontin that identify or discuss certain language used in the labels), such requests are extremely broad and would impose an unnecessary burden on defendants.

10

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny

Plaintiffs' Motion to Compel in its entirety.

Dated: August 7, 2006

DAVIS POLK & WARDWELL


By:    /s/ James P. Rouhandeh
       James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN


By:    /s/ David B. Chaffin
       David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on August 7, 2006.

/s/ David B. Chaffin