# EXHIBIT 2

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
                                    :
In re NEURONTIN                     :    04 Civ. 6704 (JSR)
                                    :
                                    :
------------------------------------X    ORDER
```

JED S. RAKOFF, U.S.D.J.

Plaintiffs allege that a series of suicides and attempted suicides were caused by the defendants' marketing their drug Neurontin for purposes for which it was not approved (so-called "off-label" uses) and for which defendants had reason to know it was not safe. The Court previously ruled that the defendant drug companies must produce records of adverse events associated with the use of this drug. See Order 2/20/05. Before the Court now is plaintiffs' motion to compel production of various databases related to defendants' sales and marketing efforts and communications with doctors. Defendants, while conceding the discoverability of parts of these databases, seek to limit discovery to events occurring in 1997 and before.[1] For the reasons stated below, the defendants' proposed temporal boundary is modified and plaintiffs' motion granted, subject to some limitations.

---

[1] While defendants' brief is limited to this issue, plaintiffs' brief argues other points that appear not to be contested by defendants, in particular that discovery of this marketing information should not be restricted geographically. Because it is unclear whether an actual controversy exists in this regard, this Order does not address any issues beyond the proposed temporal limitation on discovery.

Much of plaintiffs' complaint[2] consists of generalized allegations that do not refer to specific dates or incidents. However, the complaint does allege specific incidents, all taking place by 1997, of improper marketing of Neurontin for off-label purposes. See Complaint ¶¶ 151-183. It appears that these specific allegations are largely derived from a criminal information to which defendants pleaded guilty on June 7, 2004. See Information, attached to Complaint as Exhibit A; Complaint ¶¶ 117-18. The information contains no allegations subsequent to 1996.

Defendants argue that, because the complaint contains no specific allegations of wrongdoing subsequent to 1997, it need only turn over marketing materials prior to that time. However, the complaint does contain explicit (if generalized) allegations of wrongdoing continuing until at least June 2001. See Complaint ¶ 183. Moreover, plaintiffs' legal theory -- that the suicides and suicide attempts were caused by Neurontin that was prescribed because of defendants' wrongful actions -- implicitly requires that defendants' alleged deceptions, or at least the effects thereof, have continued at least until the last point in time when doctors could have chosen a different course of action had

---

[2]While this case now covers many plaintiffs, plaintiffs' counsel has filed a virtually identical complaint for each. For convenience, this decision refers to a single "complaint," and paragraph references are to the complaint and answer in Lyman v. Pfizer, the lead case.

2

they been properly informed. This is particularly true because defendants have interposed a learned intermediary defense, see Answer at 19, and thereby have explicitly put at issue the effects of defendants' marketing efforts on the prescribing doctors' ability to adequately counsel their patients as to Neurontin's benefits and risks.

The fact that in some places the complaint includes more particularized allegations, mostly taken from the information, does not render the remainder of the complaint, which the defendants do not claim fails to satisfy the minimal standards of notice pleading,[3] insufficiently detailed to obtain discovery of evidence relevant to the claims and defenses pleaded, see Fed. R. Civ. P. 26(b)(1). It does, perhaps, indicate that plaintiffs have a lesser chance of finding evidence bearing out those allegations, but this is not a consideration the Court may take into account in determining whether "the burden or expense of the proposed discovery outweighs its likely benefit," see Fed. R. Civ. P. 26(b)(2) (court should consider "the needs of the case, the amount in controversy, the parties' resources, the importance of

---

[3] While defendants' brief implies that the lack of specificity indicates that plaintiffs lack a good-faith basis for their generalized allegations, see Defendants' Brief at 3 (stating that plaintiffs "allege only generally and without any factual support that off-label promotion occurred in the years following 1997"), defendants do not move to strike any portion of the complaint for this reason or for vagueness, and so the Court cannot ignore the less specific allegations for these purposes.

3

the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues"). The Court's power to impose limits on discovery of potentially relevant material is meant to prevent parties from using redundant requests to turn discovery into a "war of attrition." Fed. R. Civ. P. 26 advisory committee's note. It is not a license for the Court to "deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case" because it harbors doubts about that party's ability to find evidence that bears out its allegations. Id.

Accordingly, plaintiffs are permitted to discover evidence of defendants' marketing efforts as of the last day such marketing could be relevant to the claims and defenses pleaded -- i.e., the last Neurontin prescription issued to a plaintiff or plaintiff's decedent in this case. See Incollingo v. Ewing, 282 A.2d 206, 221-23 (Pa. 1971) (upholding introduction of evidence of drug manufacturer's national marketing efforts to show influence on prescribing doctor, but permitting evidence of marketing efforts after the prescription only to show feasibility of warning, not to show negligence).[4] Applying this rule to an

---

[4] Plaintiffs argue that conduct subsequent to the suicides and suicide attempts could be relevant because it furthers plaintiffs' request for punitive damages. Defendants argue that discovery strictly for purposes of punitive damages is limited to a defendant's net worth and finances. The Court need not resolve this issue yet, because for now it finds relatively limited potential use of this material, given the burden on defendants to

4

individual case is simple. For example, decedent in the lead case, Lyman v. Pfizer, committed suicide on July 23, 2002. Complaint ¶ 4. Because the pleadings provide no further details as to any dates on which Neurontin was prescribed, if Lyman were an individual case, the Court would cut off discovery of marketing efforts at July 23, 2002, the last date at which they could be relevant.

Complicating matters somewhat is the fact that this case now includes many plaintiffs with different incident dates. Because the cases have been consolidated for all purposes, it would be pointless as well as impractical to impose separate discovery cut-off dates. The Court therefore instructs the parties to determine the last date on which marketing efforts could be relevant to any of the cases in this action; that date will be the latest alleged suicide or suicide attempt, unless there is evidence that the prescription allegedly leading to that event

---

produce it. See Affidavit of Laura M. Kibbe, sworn to 4/21/05. While courts in this circuit usually order punitive-damages discovery to take place concurrently with liability discovery, this is not a hard-and-fast rule, and concurrent discovery can be denied where, as here, the hardship to defendant substantially outweighs the potential benefit to the plaintiff, at least as seen from this stage of the case. See Tu'Shan Hamm v. Potamkin, 1999 U.S. Dist. LEXIS 5948, at *5-*8 (S.D.N.Y. 1999). Should it appear as this case progresses that plaintiffs have a substantial chance to win punitive damages and that this information is important to such a claim, the Court can order separate discovery of material specific to punitive damages. See Davis v. Ross, 107 F.R.D. 326, 327 (S.D.N.Y. 1985).

5

took place significantly earlier.[5] Such date will be the cut-off date for discovery of defendants' marketing efforts. Should the parties fail to reach agreement on this date, they are instructed to jointly call chambers immediately for resolution.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:   New York, New York
         April 25, 2005

---

[5] If plaintiffs' counsel files additional cases with later event dates that are consolidated into this action's discovery schedule, defendants are expected to update any disclosures already made to conform to such later discovery cut-off dates. Given this possibility, the parties are encouraged to set a cut-off date that accommodates any filings plaintiff expects to make in the near future.

6