UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------x
In re: NEURONTIN MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION

MDL Docket No. 1629

Master File No. 04-10981

------------------------------------------------x
THIS DOCUMENT RELATES TO:

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

------------------------------------------------x
ALL MARKETING AND SALES PRACTICES ACTIONS

------------------------------------------------x

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Defendants Pfizer Inc. and Warner-Lambert Company submit this memorandum in opposition to Plaintiffs' Motion To Compel Defendants' Compliance with Case Management Order No. 3 and for Order Concerning Contents of Privilege Log.

**PRELIMINARY STATEMENT**

Plaintiffs' proposal relating to the provision of privilege logs for future productions in this action is unworkable and would result in undue delay of the discovery process. Case Management Order No. 3 ("CMO 3") does not contemplate the provision of a privilege log every time a letter enclosing documents as part of a rolling production is sent to another party, but instead requires that a party provide a log at the completion of a discrete production (e.g., the production of all documents responsive to a particular set of document requests). By seeking a privilege log in connection with each piece of a

production, plaintiffs would put an undue burden on defendants. This burden would make it impractical for the defendants to produce documents on a rolling basis, which will delay the discovery process. The Court should avoid this outcome by clarifying that the provision of a privilege log should come at the close of production of all documents in response to a particular set of document requests.

In addition, plaintiffs' proposal relating to the provision of a log for the documents already produced should be denied. Plaintiffs now suggest – after failing to provide privilege logs in connection with their own productions to date despite the fact that defendants have commenced several depositions of plaintiffs – that logs relating to the materials produced to date be exchanged within thirty days of an order by the Court. This deadline is impractical. Defendants have never refused to provide a log relating to these materials. Instead, as defendants explained to plaintiffs during the meet-and-confer process, defendants are in the process of assessing the volume of materials that they have withheld on the grounds of privilege from completed productions in order to determine when a log can be provided. The time needed to provide a log will obviously depend on the amount of materials at issue.

Moreover, to the extent that plaintiffs are seeking the provision of a log related to materials that were produced in connection with a different case outside the MDL, such materials are not subject to the provisions of CMO 3. Finally, plaintiffs' request that the parties be ordered to provide more information on the privilege logs than contemplated by the Federal Rules of Civil Procedure should be denied.

**STATEMENT OF FACTS**

The parties began discovery in this case in March 2005, when plaintiffs served defendants with 252 document requests followed by thirty-six interrogatories. Defendants interposed objections to plaintiffs' voluminous requests, including objections on the grounds of overbreadth and relevance. These objections also contained a general objection to requests seeking materials that are privileged. During Summer 2005, defendants produced documents to the plaintiffs. These materials included (a) various collections of documents relating to safety and efficacy, such as research reports, the Neurontin New Drug Application ("NDA"), and Neurontin-related articles; and (b) materials from Warner-Lambert Company's Customer Business Units ("CBUs") outside of the Northeast CBU from the period prior to 1999 (the date cut-off that defendants sought through their motion for a protective order relating to discovery) (the "non-Northeast CBU production").[1]

Defendants served discovery requests on plaintiffs on May 2, 2005 and plaintiffs produced materials to defendants during Summer 2005 through January 2006. No privilege log was provided after production of these materials, despite the fact that defendants commenced several of plaintiffs' depositions during this period.

While the scope of discovery was under consideration by the Court, and then while discovery was stayed in the Multi-District Litigation ("MDL"), defendants were producing documents to the firm Finkelstein & Partners in connection with a single-

---

[1] Documents previously produced in the litigation United States ex rel. Franklin v. Parke-Davis (the "Franklin production") were ordered produced prior to the entry of CMO 3. Declaration of Deborah L. MacGregor, dated August 7, 2006 ("MacGregor Decl.") Exh. A. (November 23, 2004 hearing transcript) at 26:16-24 and 29:6-8.

plaintiff case pending in New York State Court captioned <u>Young v. Pfizer Inc.</u>, Docket No. 1062/2004 (N.Y. State Court, Orange County). In addition to thousands of pages of regulatory, safety, and efficacy documents produced in that case, defendants produced an additional one million pages from the files of twenty-eight custodians. MacGregor Decl. ¶ 4.

The parties and the Court have taken the view that materials produced in this MDL to the product liability plaintiffs can also be used by the sales and marketing plaintiffs in the MDL. <u>See</u> MacGregor Decl. Exh. B. (May 3, 2006 hearing transcript) at 86:4-22 (Judge Saris noting that the discovery stay in the products cases should be lifted and the sales and marketing plaintiffs will be able to look at information produced to the products liability plaintiffs); <u>see also</u> Pls.' Mem. at 3. At no point, however, have defendants agreed, or the Court ordered, that the production of documents in another litigation be governed by the case management orders in the MDL.

On June 19, 2006, the Court lifted the stay of discovery in the sales and marketing cases. <u>See</u> June 19, 2006 Order (Dock. No. 372). On July 12, 2006, plaintiffs requested that defendants provide within fourteen days a privilege log relating to materials produced to date, and the parties met and conferred telephonically on July 21, 2006 regarding this issue. MacGregor Decl. ¶ 5. In the course of that call, plaintiffs acknowledged that they had not yet provided their own privilege log and proposed that logs be exchanged within thirty days for the materials that have already been produced by the parties. Plaintiffs also sought assurance that logs going forward would be provided

fourteen days after *each* production of materials or, if no materials were withheld on privilege grounds from that production, a letter would be sent to that effect. Id. ¶ 6.

Defendants responded that pursuant to CMO 3 the parties are obligated to provide privilege logs at the end of a discrete production – i.e., after completing the production of documents in response to a particular set of document requests – as it would be impractical, unwieldy, and inefficient to provide a log after each part of a rolling production. Id. ¶ 7. Defendants offered a compromise regarding their past productions in the MDL. Defendants explained that of the materials produced to date only the collection of documents produced in Franklin and from the non-Northeast CBU might have had materials withheld on the grounds of privilege. Id. ¶ 8. Defendants further explained that they were still in the process of determining what materials, if any, were withheld from the Franklin production on the grounds of privilege. Defendants estimated that an answer to this question and an estimate of the time needed to produce a privilege log based on the volume of any such materials could be provided by August 11, 2006. Id. ¶ 9. Defendants then explained that production of documents from the non-Northeast CBU was incomplete and offered to provide a privilege log after its completion. Id. ¶ 10.

During the July 21, 2006 call, defendants offered to provide a privilege log for each of the twenty-eight custodians whose files were produced in Young one week before that custodian's deposition is taken. Id. ¶ 12. On July 25, 2006, plaintiffs rejected this proposal and demanded that a log for all twenty-eight custodians should be provided within thirty to forty-five days. Id. Defendants believe this is unreasonable and that the production of these documents is not governed by CMO 3.

**ARGUMENT**

Plaintiffs' proposed approach to privilege logs in this case is not consistent with the purpose of CMO 3 and will result in a delay in the number and timing of productions and undue burden. Moreover, plaintiffs brought their motion prematurely while the parties were in the process of meeting and conferring on these issues.[2]

Defendants request that the Court (i) order that privilege logs be provided fourteen days after the completion of a discrete production (i.e., at the time that all documents in response to a particular set of document requests have been produced); (ii) decline to order a date certain for the production of a privilege log relating to the Franklin documents until defendants have been afforded a reasonable time to determine the volume of materials at issue, if any; (iii) hold that the documents produced in Young are not subject to the provisions of CMO 3 and that no log is due at this time for those materials; and (iv) refrain from ordering that privilege logs in this case include more information than is required by the Federal Rules of Civil Procedure.

**I.    UNDER CMO 3 PRIVILEGE LOGS SHOULD BE PROVIDED UPON THE COMPLETION OF A DISCRETE PRODUCTION**

Privilege logs should not be exchanged every time a set of documents is provided to another party. CMO 3 requires that a privilege log be provided fourteen days after the completion of "a production." See CMO 3 (Dock. No. 62). In a document-intensive case such as this one, this provision should be interpreted to mean that a log is due after a

---

[2] Defendants recognize that plaintiffs made this motion so that it would be heard at the next court conference pursuant to the Court's briefing schedule for discovery motions. See June 19, 2006 Order (Dock. No. 372); Pls.' Mem. at 2 n.1. This resulted in defendants being asked to respond to complex discovery questions in less than a week. The setting of conferences and a briefing schedule should not result in truncating the meet-and-confer process.

discrete production is complete. In complex litigation, materials are often produced on a rolling basis in order to expedite discovery. Where such production occurs, the producing party should not be penalized for its willingness to facilitate discovery. Rather, such a party should only have to go through the materials held back as privileged once and produce a log at the end of a discrete production.

It should be noted that defendants have always read CMO 3 this way. Plaintiffs, however, claim that they understood CMO 3 to require the provision of a log fourteen days after a letter is sent enclosing documents. Pls.' Mem. at 2. If that truly was plaintiffs' interpretation, then there is no excuse for plaintiffs not having provided defendants with privilege logs associated with their past productions.

Plaintiffs seek to establish a process in this case that is unwieldy, burdensome, and destined to slow the production of materials. Such an approach will virtually eliminate any ability to produce custodians' files or subject matter files on a rolling basis. Instead, each party will be forced to refrain from making a production until the review of a discrete set of files is totally complete in all respects, including a second review of all potentially-privileged materials.

In addition, parties often will not have a clear picture of the types of documents that are privileged (particularly as attorney work-product) until all relevant documents have been reviewed. Requiring the exchange of privilege logs before such a complete review is conducted could lead to the over or under-inclusion of documents on privilege logs which would have to be remedied at a later time. Moreover, providing numerous small privilege logs makes it impossible to de-duplicate privileged documents and may

result in inconsistent privilege calls. The burden associated with this approach is undue and also falls disproportionately on defendants, as plaintiffs to date have produced far fewer documents.[3]

Moreover, the approach proposed by plaintiffs, far from reducing motion practice, will increase it. Under plaintiffs' reading of CMO 3, each rolling production will be accompanied by a log, and each log could result in a meet and confer, and each meet and confer could result in motion practice, which will further slow the pace of review as lawyers turn from focusing on production to briefing discovery disputes. See Pls.' Mem. at 7 (noting that the parties will be able to "review and, if necessary challenge, each others' claims of privilege on a continuing basis"). Rather than going through this process one time, or a limited number of times, plaintiffs want this process to be in constant play during the discovery period. This is particularly unjustified in light of plaintiffs' stated preference to refrain from taking depositions until all documents have been assembled and reviewed. Id. at 5. Because they plan to wait to receive all the documents before conducting depositions, plaintiffs have no need to receive privilege logs on a rolling basis.

Plaintiffs' request that a letter be sent after each rolling production if no privileged documents were withheld highlights the problem with plaintiffs' proposed approach. If a party sets aside certain documents from a custodian as potentially privileged and therefore needing more review, but goes ahead and sends out the first installment of that custodian's materials while completing review of other materials, then

---

[3] Indeed, plaintiff Kopa produced documents totaling a mere sixty-four pages.

the party must either produce a privilege log relating to those materials (even though later review might change the privilege determination) or send a letter that no documents were withheld as privileged (which would not necessarily be true).  This is unworkable and, again, will likely lead to the parties only producing documents once the universe of documents ready for production and a privilege log has been prepared.  Defendants do not object to providing a letter after a production from which no privileged documents were withheld, if "production" means the completion of a production.

For the above reasons, the Court should clarify that CMO 3 requires the exchange of logs only after the completion of a production.

## II.    IT IS PREMATURE TO REQUIRE THE PROVISION OF A PRIVILEGE LOG FOR MATERIALS PRODUCED TO DATE

Defendants did not, contrary to plaintiffs' statement, see Pls.' Mem. at 1, refuse to provide a log for the documents that they have already produced.  To the contrary, as set forth below, defendants have agreed to provide a log relating to documents produced to date *where applicable*.  In the course of several teleconferences over five business days, defendants explained during every call that they required more time to respond to plaintiffs. MacGregor Decl. ¶¶ 9-10.  There are four categories for which defendants might have withheld privileged documents:  (i) the documents produced in Franklin that were subsequently provided to plaintiffs in the MDL; (ii) documents from Warner-Lambert's CBUs other than the Northeast CBU; (iii) other collections of documents defendants have produced to the sales and marketing plaintiffs to date (such as Neurontin-related research reports, the Neurontin NDAs and INDs, and articles related to Neurontin); and (iv) documents produced in a state court case captioned Young v. Pfizer

Inc. to plaintiffs' counsel who also represent a number of the plaintiffs in the product liability cases in the MDL.

Only one of these four productions is complete: the Franklin production. As an initial matter, because the Franklin production was prepared in another case and ordered to be re-produced in this case before CMO 3 was entered, it is not clear that this production is even subject to the provisions of that CMO. Nonetheless, defendants have not, contrary to plaintiffs' assertions, refused to provide a log related to these materials. To the contrary, defendants have explained that they are in the process of determining whether a log was prepared in connection with the original production of those materials and, if not, whether documents were held aside as privileged.[4] Defendants are unable to say at this time when, or whether, they can provide a log because they have not yet located documents, if any, withheld on the grounds of privilege. Defendants are in the process of conducting a diligent search and have told plaintiffs prior to the filing of plaintiffs' motion that, barring unforeseen circumstances, they should be able to determine whether privileged documents were withheld and, if so, provide an estimate for the completion of a privilege log by August 11, 2006. MacGregor Decl. ¶ 9.

Defendants have also been producing materials gathered from CBU's outside the Northeast CBU from the period prior to 1999. As discussed above, defendants have offered to provide a log after the completion of the production and stated that they should be able to do so after the production is complete. On August 4th, defendants called

---

[4] As defendants explained to plaintiffs, the production was initially made years ago and materials related to the Franklin case are in storage. MacGregor Decl. ¶ 9.

plaintiffs in order to inform them of the estimated date of completion (September 18) for that production.  Id. ¶ 11.

No privilege log is due with respect to the other materials produced to sales and marketing plaintiffs in this case, because defendants have not withheld documents on the grounds of privilege from these materials, as they informed plaintiffs prior to the date plaintiffs made their motion.  Id. ¶ 8.  Plaintiffs seem to interpret the fact that defendants included a general objection, applicable to all of plaintiffs' 252 document requests, to producing privileged documents to mean that defendants have withheld privileged documents related to each of the 252 requests.  See Pls.' Mem. at 3.  That is not the case. With the exception of the documents discussed above, defendants have not withheld any documents on the basis of privilege from the collections of documents produced to date.

Plaintiffs are also seeking the provision of a log relating to materials that were produced by defendants in the Young case, a single-plaintiff product liability case in New York state court.  In that case, defendants produced documents from the files of twenty-eight custodians between November 2005 and May 2006.  Because these materials were produced in a different case, under a different discovery order and case schedule, they are not subject to the dictates of CMO 3 and plaintiffs are not entitled to a privilege log fourteen days after the production of those materials.  Defendants have offered, however, to provide a privilege log one week in advance of any deposition scheduled of a custodian.[5]  Plaintiffs responded on July 25, 2006 that this time period is insufficient and

---

[5] Plaintiffs also refer to documents "bear[ing] significant redactions," Pls.' Mem. at 3, yet fail to acknowledge that such documents were produced in a different case.  Discussion of these redactions is premature, as the parties are in the process of scheduling a meet-and-confer session on this issue and it is

asked that defendants provide a log relating to all of these custodian file documents within thirty to forty-five days. MacGregor Decl. ¶ 12. This is unworkable. As an initial matter, because these documents were produced in another case, the state court should decide when a privilege log is due. Were this Court to order defendants to create a log relating to the twenty-eight custodian files, however, it would require more than forty-five days.

### III. PRIVILEGE LOGS SHOULD ONLY CONTAIN THE INFORMATION REQUIRED UNDER THE FEDERAL RULES

The Court should decline plaintiffs' invitation to require the parties to include more information on their privilege logs than is required under Rule 26(b)(5) of the Federal Rules of Procedure. See Pls.' Mem. at 8. In addition to routine information generally found on privilege logs, plaintiffs "[a]dditionally" propose that the title of the withheld document be included on the logs.[6] Id. The subject line of an email or title of a memorandum often itself reveals privileged information. Providing such a road map to a privileged communication is clearly not contemplated by the Federal Rules, as is demonstrated by plaintiffs' acknowledgement that the information generally included on such logs is the document date, type, author, recipient and explanation of why the document is privileged. See id. (citing Gloves, Inc. v. Berger, 198 F.R.D. 6, 7 (D. Mass. 2000)); see also Rivera v. Kmart Corp., 190 F.R.D. 298, 301 (D.P.R. 2000) (holding that to have provided more information on a privilege log than the document's date, author,

---

therefore not ripe for adjudication.

[6] Defendants have no objection to including on the privilege log the bates number of any document redacted on the grounds of privilege.

recipient, and grounds for privilege "would have resulted in divulging confidential information").

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court deny the plaintiffs' motion to compel and hold that (i) privilege logs should be provided no less than fourteen days after the completion of a discrete production; (ii) a privilege log relating to the Franklin materials is not due until a reasonable time after defendants determine the scope of any materials withheld on the basis of privilege; (iii) a privilege log is not due in connection with the custodian files produced in Young; and (iv) the subject of a document need not be included on a privilege log.

Dated: August 7, 2006

PFIZER INC., et uno,

By their attorneys,

/s/ James P. Rouhandeh
James P. Rouhandeh
Deborah L. MacGregor

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

-and-

/s/ David B. Chaffin
David B. Chaffin
BBO # 549245
HARE & CHAFFIN
160 Federal Street

Boston, Massachusetts 02110<br>(617) 330-5000

## **CERTIFICATE OF SERVICE**

  I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on August 7, 2006.

/s/ David B. Chaffin