UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
In re: NEURONTIN MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION

------------------------------------------------------------x
THIS DOCUMENT RELATES TO:

------------------------------------------------------------x
ALL MARKETING AND SALES PRACTICES ACTIONS

------------------------------------------------------------x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

## DECLARATION OF DEBORAH L. MACGREGOR IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH CASE MANAGEMENT ORDER NO. 3 AND FOR ORDER CONCERNING CONTENT OF PRIVILEGE LOGS

DEBORAH L. MACGREGOR declares upon penalty of perjury in accordance with 28 U.S.C. § 1746 as follows:

1. I am an attorney associated with the law firm Davis Polk & Wardwell, counsel for Defendants Pfizer Inc. and Warner-Lambert Company in this action.

2. I submit this declaration in support of Defendants' Opposition to Plaintiffs' Motion to Compel Compliance with Case Management Order No. 3 and for Order Concerning Content of Privilege Logs.

3. I have personal knowledge of the matters stated below and would testify to the same.

4.  Defendants produced in the New York State Court action captioned <u>Young v. Pfizer Inc.</u>, No. 1062/2004 (New York State Court, Orange County) thousands of pages of regulatory, safety, and efficacy documents, as well as an additional one million pages from the files of twenty-eight custodians.

5.  On July 12, 2006, plaintiffs requested that defendants provide within fourteen days a privilege log relating to materials produced to date, and the parties met and conferred telephonically on July 21, 2006 regarding this issue.

6.  During the July 21, 2006 call, plaintiffs acknowledged that they had not yet provided a privilege log, proposed that logs be exchanged within thirty days for the materials that have already been produced by the parties, and sought assurance that logs going forward would be provided fourteen days after *each* rolling production of materials or, if no materials were withheld on privilege grounds from that production, a letter would be sent to that effect.

7.  Defendants stated during the July 21, 2006 call that pursuant to CMO 3 the parties are obligated to provide privilege logs at the end of a discrete production.

8.  Defendants explained that only the collection of documents produced in <u>Franklin</u> and from the non-Northeast CBU might have had materials withheld on the grounds of privilege, and defendants have not withheld documents on the grounds of privilege from the remaining collections of materials produced to the sales and marketing plaintiffs to date in the MDL.

9.  Defendants further explained that they were still in the process of determining what materials, if any, were withheld from the <u>Franklin</u> production on the

grounds of privilege because this production was initially made years ago and materials related to Franklin are in storage, and on July 27, 2006, defendants estimated that an answer to this question and an estimate of the time needed to produce a privilege log based on the volume of any such materials, could be provided by August 11, 2006.

10. Defendants also explained that the production of documents from the non-Northeast CBU was incomplete and offered to provide a privilege log after its completion, and on July 27, 2006 defendants stated their intention to provide plaintiffs with an estimated completion date by August 4, 2006.

11. On August 4, 2006, I left a voicemail for Ronald Aranoff informing him that defendants could provide him with the promised estimate regarding the non-Northeast CBU documents, but I had not heard back from him as of August 7, 2006 at 5:00 p.m. Defendants anticipate completing the non-Northeast CBU production by the week of September 18, 2006.

12. During the July 21, 2006 call, defendants offered to provide a privilege log for each of the twenty-eight custodians whose files were produced in Young one week before that custodian's deposition is taken, but on July 25, 2006, plaintiffs rejected this proposal and demanded that a log for all twenty-eight custodians should be provided within thirty to forty-five days.

13. Plaintiffs have also indicated that they feel many redactions in the documents produced from the files of these twenty-eight custodians are improper under CMO 3, and the parties have scheduled a meet-and-confer session for mid-August to discuss this issue.

14. Attached at Exhibit A is a true and correct copy of an excerpt from the transcript of the case management conference which occurred on November 23, 2004.

15. Attached at Exhibit B is a true and correct copy of an excerpt from the transcript of oral argument on the parties' objections to Magistrate Judge Leo T. Sorokin's January 31, 2006 Report and Recommendation, which occurred on May 3, 2006.

Dated: New York, New York
August 7, 2006

/s/Deborah L. MacGregor

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on August 7, 2006.

/s/David Chaffin

# EXHIBIT A

SC11234.TXT


UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
-----------------------------------
IN RE:                             :    Civil Action
                                   :    MDL No. 1629
     NEURONTIN MARKETING and       :
                                   :    Courtroom No. 19
     SALES PRACTICES LITIGATION    :    1 Courthouse Way
                                   :    Boston, MA 02210-3002
-----------------------------------     2:30 p.m., Tuesday
                                        November 23, 2004
```

Status Conference


Before:      THE HONORABLE PATTI B. SARIS,
             UNITED STATES DISTRICT JUDGE


APPEARANCES:

Lowey Dannenberg Bemporad & Selinger, P.C.,
   (by Richard Cohen, Esq.), The Gateway,
   One North Lexington Avenue, White Plains, NY 10601,
   on behalf of Aetna, Inc.

Shapiro, Haber & Urmy, LLP, (by Thomas G. Shapiro, Esq.),
   53 State Street, Boston, MA 02109,
   on behalf of Guardian Life Insurance Co. and other
   third-party payors.

Cohen, Milstein, Hausfeld & Toll, P.L.L.C.,
   (by Linda P. Nussbaum, Esq. and Richard Louison, Esq.),
   150 East 52nd Street, 30th Floor, New York, NY 10022,
   on behalf of Guardian Life Insurance Company.

Hagens Berman LLP, (by Thomas M. Sobol, Esq. and
   Edward Notargiacomo, Esq.),
   One Main Street, Cambridge, MA 02142,
   on behalf of Harden Manufacturing.


                    Marie L. Cloonan
                 Official Court Reporter
              1 Courthouse Way - Suite 7200
           Boston, MA 02210-3002 - (617)439-7086
            Mechanical Steno - Transcript by Computer



APPEARANCES CONTINUED:

Greene & Hoffman, PC, (by Thomas M. Greene, Esq.),
   125 Summer Street, Boston, MA 02110,
   on behalf of Brenda Straddeck.

Barrett Law Office, (by Don Barrett, Esq.),
   404 Court Square North, Lexington, MS 39095,
                         Page 1

SC11234.TXT

```
14    depositions until I've resolved it. So, it may just be
15    an updating of documents and that sort of thing.
16         So, what we need to do is have a case management
17    schedule and I think probably we should set that up now,
18    with all the attorneys in the room, so that I can
19    definitively decide that once I've sort of had a look at the
20    complaint and Motion to Dismiss to see, you know -- it'll
21    take me six months anyway to get -- I mean, we won't even
22    have a hearing until probably June at the rate we're going
23    on the Motion to Dismiss. So, I'm unlikely to wait that
24    period of time to start discovery going.
25         That having been said, if I see the complaint and I
```

25

```
1     see the Motion to Dismiss and I think there is nothing
2     there, then, I'd give them the chance to argue for a stay.
3          So, let me --
4          MR. SOBOL: If I may, your Honor?
5          THE COURT: Yeah. When do you want to do a case
6     management hearing?
7          MR. SOBOL: Well, I think let me address the one
8     issue that I have and then maybe that will put it in
9     context, your Honor.
10         I don't disagree with anything you said about when
11    to begin discovery and how to deal with case management
12    issues. The one issue that I would suggest that we at least
13    enjoin the parties positions on, on or before December 15th,
14    would be the scope of any supplemental discovery
15    documents that have already been produced by Pfizer.
16         THE COURT: You know, that's not going to happen.
17    The only thing that should happen is the agreement on the
18    protective order so that everything that's already been
```

Page 21

SC11234.TXT

19    produced gets produced to everyone.
20            MR. SOBOL: On or before the 15th?
21            THE COURT: Yeah. We should just agree to that or
22    I'll order it. Just agree to a protective order so that the
23    people who aren't as familiar with this case can get going
24    on it.
25            I know there are boxes and boxes, because they sat

26

1     up there in my office, in support of a Motion for Summary
2     Judgment. We never got to look at it.
3             MR. SOBOL: I know.
4             And, I would suggest that given the fact that
5     you've ordered the plaintiffs to file any consolidated
6     amended complaints on or before January 17th, the defendants
7     would probably want an opportunity to be able to see the
8     allegations against them before we talk about the scope of
9     discovery and dealing with that.
10            THE COURT: Sure.
11            MR. SOBOL: And, therefore, probably a case
12    management conference sometime early February probably makes
13    sense.
14            THE COURT: Fine.
15            I just want everyone in this room to have it on
16    their calendar --
17            MR. SOBOL: Right.
18            THE COURT: -- so I will be able to get everyone in
19    here.
20            MR. SOBOL: Also, have a date by which the parties
21    submit either a joint case management order or competing
22    proposals so you have that in writing before that date, too.

Page 22

```
                              SC11234.TXT
    23              THE COURT:  Sure.
    24              So, when in early February?
    25              THE CLERK:  February 9th at 3:00 p.m.
```
                                                                27


```
     1              MR. BARRETT:  What date?
     2              THE CLERK:  February 9th at 3:00 p.m.
     3              MR. ROUHANDEH:  I have a hearing in California the
     4    next day, in the morning.  So, I'm going to have to travel.
     5    It's impossible to defend this case.
     6              THE CLERK:  February 2nd at 3:00 p.m.
     7              THE COURT:  You all are just from New York.  Right?
     8    You just shoot on the shuttle?
     9              MR. ROUHANDEH:  Yeah.  That's fine.
    10              Any day, other than the 9th or the 10th is fine.
    11              THE COURT:  We should do it later in the
    12    afternoon --
    13              THE CLERK:  The 2nd at 3:00 p.m.
    14              THE COURT:  -- so the people from the South don't
    15    have to spend one extra cold night up here.
    16              (Laughter.)
    17              THE COURT:  What time?
    18              THE CLERK:  3:00 p.m.
    19              THE COURT:  And, then -- does that seem -- I'm
    20    assuming it won't take longer than an hour.  And, I don't
    21    need everyone up here.  I mean, to the extent that we have a
    22    steering committee, whoever is on the steering committee can
    23    be up here.
    24              The thing that's very difficult for me is the
    25    teleconferences.  It's just hard to figure out how to do.  I
```
                                                                28

SC11234.TXT

1   prefer not to do teleconferences unless we get a snowstorm.
2   You know, snow?
3           MR. BARRETT: What's a snowstorm?
4           THE COURT: Yeah.
5           And, then, about the week beforehand, case
6   management orders. Until then, all discovery is stayed,
7   except for the protective order and the access to these
8   documents.
9           MR. SOBOL: Again, when you say "these documents,"
10  you mean only the documents that are produced to Mr. Greene
11  or also documents that are produced to the DOJ?
12          THE COURT: And, to the extent he has access to the
13  documents to the DOJ, they're not here, so I couldn't -- I
14  don't know if they were produced in response to a grand jury
15  subpoena. So, I don't know how appropriate it is for me to
16  order that. I don't know.
17          MR. SOBOL: One related issue --
18          THE COURT: I don't know they are a party,
19  Department of Justice, are they?
20          MR. GREENE: Well, there are a group of documents
21  that I made reference earlier to, 40-plus boxes that I
22  inspected here in the U. S. Attorney's Office. They were
23  not produced pursuant to a grand jury subpoena. And, those
24  boxes had the label of Davis Polk on it. I don't know if
25  thoose boxes -- I spoke to Sarah Bloom several weeks ago.

29

1   They're no longer here. So, don't know whether Mr.
2   Rouhandeh has them --
3           THE COURT: Well, in any event, that will just have
4   to be part of discovery.

Page 24

# EXHIBIT B

```
                    0503.oral.argument.transcript.txt
0001
  1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS
  2
  3
  4    IN RE:                     )
       NEURONTIN MARKETING AND    )  CA No. 04-10981-PBS
  5    SALES PRACTICES LITIGATION )
  6
  7
  8
                 OBJECTIONS TO REPORT AND RECOMMENDATION
  9
                  BEFORE THE HONORABLE PATTI B. SARIS
 10                   UNITED STATES DISTRICT JUDGE
 11
 12
 13
 14                              United States District Court
                                 1 Courthouse Way, Courtroom 19
 15                              Boston, Massachusetts
                                 May 3, 2006, 2:30 p.m.
 16
 17
 18
 19
 20
 21
 22
                           LEE A. MARZILLI
 23                     OFFICIAL COURT REPORTER
                       United States District Court
 24                  1 Courthouse Way, Room 3205
                          Boston, MA  02210
 25                         (617)345-6787
0002
  1    A P P E A R A N C E S:
  2    FOR THE PLAINTIFFS:
  3         ANDREW G. FINKELSTEIN, ESQ., Finkelstein & Partners,
       LLP, 436 Robinson Avenue, Newburgh, New York, 12550.
  4
            THOMAS M. GREENE, ESQ., Greene & Hoffman, P.C.,
  5    125 Summer Street, Suite 1410, Boston, Massachusetts, 02110.
  6         THOMAS M. SOBOL, ESQ., Hagens, Berman, Sobol & Shapiro,
       LLP, One Main Street, Cambridge, Massachusetts, 01923.
  7
            RICHARD BEMPORAD, ESQ., Lowey, Dannenberg, Bemporad &
  8    Selinger, P.C., The Gateway, One North Lexington Avenue,
       White Plains, New York, 10501-1714.
  9
            JAMES R. DUGAN, II, ESQ., Dugan & Browne,
 10    650 Poydras Street, Suite 2150, New Orleans, Louisiana.
 11         BARRY R. HIMMELSTEIN, ESQ., Lieff, Gabraser, Heimann &
       Bernstein, LLP, Embarcadero Center West, 275 Battery Street,
 12    30th Floor, San Francisco, California, 94111-3339.
 13         LINDA P. NUSSBAUM, ESQ., Cohen, Milstein, Hausfeld &
       Toll, P.L.L.C., 150 East 52nd Street, Thirtieth Floor,
 14    New York, New York, 10022.
 15         DON BARRETT, ESQ., Barrett Law Office,
       404 Court Square North, P.O. Box 987, Lexington,
 16    Mississippi, 39095.
 17
       FOR THE DEFENDANTS:
                                 Page 1
```

```
                         0503.oral.argument.transcript.txt
24    Panel sent it here, but why don't we get it going?
25           MR. ROUHANDEH:  Well, your Honor, actually, if you
0085
 1    read one of the complaints, it reads like their complaints.
 2    It's 50-80 pages of all this stuff about off-label
 3    marketing.  Then at the end, they have some claims where they
 4    say, you know, strict liability --
 5           THE COURT:  You've answered it, right?
 6           MR. ROUHANDEH:  The allegations are all about
 7    off-label promotion to doctors.
 8           THE COURT:  But you've answered it?  There's no
 9    motion to dismiss, right?
10           MR. ROUHANDEH:  That's correct.
11           THE COURT:  All right, so let's just get going.
12           MR. FINKELSTEIN:  That's all we want.
13           MR. GREENE:  Judge, may I be heard?
14           THE COURT:  Yes.
15           MR. GREENE:  We would like to get going with our
16    discovery too.  And Pfizer filed a motion last June for a
17    protective order to limit the discovery to the end of '98,
18    and we filed a motion to compel on July 1 to get discovery
19    from '98 in the Franklin documents, get through the '98, the
20    '98 up to May, 2004, the date of the plea.  We argued that
21    those motions were fully briefed.  We argued that motion in
22    front of Magistrate Sorokin in August, and then we didn't get
23    any decision, and we got an order in January staying
24    discovery.  Now, a lot of the discovery --
25           THE COURT:  But that's different because yours may
0086
 1    be quite different depending on what I do with all of this.
 2    And it's been very helpful today, but theirs just turns out
 3    to be a different situation.
 4           MR. GREENE:  But a lot of the sales and marketing
 5    information that Mr. Finkelstein is looking for we're looking
 6    for.  A lot of the sales call data that he is looking for
 7    for the medical liaison sales rep we're looking for.
 8           THE COURT:  So?  You'll be able to look at it.
 9           MR. GREENE:  So if they're going to produce it for
10    them, why can't we see it?
11           THE COURT:  I'm not saying you can't.  I'm saying,
12    let's just get going on discovery on this.  And then to the
13    extent that -- I'm not going to have you redo it because that
14    would be too expensive.  They'll just have to jump right into
15    whatever your discovery is.
16           MR. FINKELSTEIN:  It's all electronic.  There will
17    be no burden.
18           THE COURT:  The truth is that most of it has been
19    done, at least up to a certain period of time.  I had the
20    first case dealing with the Neurontin whistleblower, so a
21    huge amount has been done, huge, but not all.  So, anyway,
22    how long would you like for fact discovery?
23           MR. FINKELSTEIN:  As soon as they can produce it.
24    We're ready to -- it's not -- how long would I like it?  If
25    they tell me it will take 30 days to produce, I want 30 days
0087
 1    to review it.  You're asking the wrong party here, Judge.
 2    I'm ready to move forward.
 3           THE COURT:  Right, we're going to move forward.
 4    You got that, you won.  I just want to know how long you
 5    need.  Fact discovery all together, how long to produce all
 6    the documents you did in the Neurontin whistleblower case?
 7           MR. ROUHANDEH:  They already have that.  They're
 8    just coming in here and suggesting that no discovery has
                                  Page 36
```