UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | |
| This document relates to:<br><br>HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS; LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PFIZER INC. and WARNER-LAMBERT COMPANY,<br><br>Defendants. | MDL Docket No. 1629<br><br>Master File No. 04 Civ. 10981<br><br>Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorkin |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER, INC.<br><br>and<br><br>AETNA, INC. v. PFIZER INC. | |

DECLARATION OF JUSTINE J. KAISER

JUSTINE J. KAISER declares under penalty of perjury as follows:

1. Up until January 13, 2006, I was an attorney associated with the law firm of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("Cohen, Milstein"), counsel for Plaintiffs Kaiser

Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser") in this coordinated action.

2. I submit this declaration in opposition to Defendants' Motion to Compel Discovery from Plaintiffs and the accompanying Declaration of Patrick J. Murray.

3. I have personal knowledge of the matters stated herein.

4. When I was associated with Cohen, Milstein, I participated in several meet-and-confer sessions with defense counsel regarding the scope of Kaiser's document production. I, and others at my law firm and at Kaiser, have spent considerable time in a good faith effort to respond to Defendants' requests, researching legal issues raised by Defendants' requests and responding as appropriate.

5. During those meet-and-confer sessions, I explained to defense counsel that Kaiser had performed an extensive search in its Northern and Southern California regions because the vast majority of the relevant information was located in these regions. I further explained that given Kaiser's structure, there are very significant burdens associated with conducting an exhaustive search for documents in Kaiser's other regions. Nevertheless, I informed defense counsel that the Continuing Medical Education ("CME") Coordinators for each of Kaiser's regions had been contacted as part of Kaiser's document search efforts.

6. Since that conversation, I have learned that the Directors of Pharmacy for each region and the chairs of the regional Pharmacy and Therapeutics Committees have also been asked to search and produce documents responsive to Defendants' discovery requests. To the extent such documents exist, I understand that they are being produced as part of Kaiser's rolling document production.

7. On or about August 16, 2005, I participated in a teleconference with defense

-3-

counsel concerning Kaiser's document production. During that call, I informed defense counsel that Kaiser's counsel was participating and assisting in the document search efforts. As part of this, I explained to defense counsel that Kaiser's counsel was reaching out to certain physicians in order to gather relevant information. I was not aware at that time of the specific methods used by Kaiser to identify which physicians to contact.

8. I subsequently learned that Kaiser systematically contacted those physician leaders who would most likely have relevant documents. To the extent these physicians had responsive documents, I understand that Kaiser has produced them.

Dated: New York, New York
January 20, 2006

*Justine J. Kaiser* (signature)
Justine J. Kaiser