UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1629<br><br>Master File No.: 1:04-cv-10981-PBS<br><br>Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO: ALL MARKETING AND SALES PRACTICES ACTIONS | |

**REPLY IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL DEFENDANTS'
COMPLIANCE WITH CASE MANAGEMENT ORDER NO. 3 AND
<u>FOR ORDER CONCERNING CONTENT OF PRIVILEGE LOGS</u>**

Judge Saris' directive in CMO No. 3 that "[p]rivilege logs shall be provided 14 days after *a production*" (emphasis added) unambiguously requires the parties to provide a privilege log *each time* they produce documents. This methodology makes perfect sense, providing the parties the opportunity to assess and potentially challenge assertions of privilege as millions of pages of documents are produced on a rolling basis (which rolling production has been ongoing for more than a year). Under this approach, the parties will have the benefit of periodic guidance from the Court as to the permissible scope of privilege, which will inform their subsequent review of documents for privileged materials. This method also ensures that, once the voluminous production of documents is finally completed, most of the parties' disputes will have already been resolved, allowing them to timely and efficiently complete the paper and deposition discovery phase. Plaintiffs' Motion to Compel Compliance with Case Management Order No. 3 seeks to implement this sensible system and should be granted.

**I.     Plaintiffs met and conferred with Defendants before filing their Motion for Compliance with CMO No. 3.**

Defendants accuse Plaintiffs of filing their Motion for Compliance with CMO No. 3 prematurely, and before the parties had completed their meet and confer. Opposition, p. 6. According to Defendants, Plaintiffs impermissibly asked them for a response to "complex discovery questions" in less than a week. Opposition, p. 6, n. 2. These assertions are untrue.

Plaintiffs first raised the privilege log issue with Defendants during the summer of 2005. Then, at the July status hearing, Plaintiffs informed the Court and Defendants of their intention to raise the privilege log issue at the August hearing and reiterated their need to obtain a response to this straightforward issue prior to filing their motion. On July 21, 2006, Plaintiffs conducted a good faith meet and confer session regarding privilege logs with Defendants. By letter dated July 24, 2006 (attached as Exhibit A), Plaintiffs sent Defendants a confirmatory letter stating that

Plaintiffs would consider the matter ripe for adjudication unless the parties reached an accord on the privilege log issue by July 25, 2006. (letter at ¶ 1). When no satisfactory arrangement on this issue was reached by July 27, 2006, Plaintiffs filed the instant motion.

At Defendants' request Plaintiffs even included footnote 1 in their motion which stated that Plaintiffs would withdraw their motion if Defendants offered an acceptable proposal for the provision of privilege logs before the hearing. To date, Defendants have not offered any proposals. When Defendants fail to respond to Plaintiffs' good faith effort to get a disputed matter on the Court's agenda, Plaintiffs' right to raise the issue cannot be held hostage by Defendants' tardiness.

Defendants are also incorrect in their characterization of Plaintiffs' Motion for Compliance as raising "complex discovery questions." In truth, most of Plaintiffs' motion raises a single, very simple question: under CMO No. 3, when must privilege logs be provided relative to the production of documents? While Defendants' Opposition is replete with discussion about attempts to provide dates certain for various productions of documents, this is beside the point. The only relevant meet and confer issue was whether Defendants intended to provide a privilege log *each time* they produced documents. As Defendants made it clear that they had no such intent, the dispute was ripe for judicial resolution.[1]

## II. Providing privilege logs with each production will expedite the discovery process.

Under Plaintiffs' interpretation of CMO No. 3, the parties will be able to review each others' claims of privilege on a rolling basis, instead of receiving a log after millions of pages

---

[1] Defendants criticize Plaintiffs for not providing privilege logs within 14 days of their productions of documents. Plaintiffs in their Motion for Compliance readily acknowledged their non-compliance with this requirement of CMO No. 3 and made no excuse for it. However, Plaintiffs committed to remedy this by providing privilege logs within 30 days of their motion, and explained that they had asked Defendants to do the same, an offer that Defendants refused. Contrary to Defendants' unfounded suggestion, the fact that Plaintiffs did not previously provide a privilege log does not indicate a change of course from an earlier reading of CMO No. 3. Opposition, p. 7.

2

have been produced several months from now. This approach will allow the parties and the Court to resolve disputes about privilege assertions as they arise, facilitating the earliest possible close of paper discovery and depositions.[2] Moreover, the Court will be able to guide the parties on acceptable assertions of privilege much earlier. This will further facilitate proper withholding of privileged documents and information, and should reduce privilege disputes.[3]

Defendants implicitly acknowledge in their Opposition that reviewing documents for privilege at the completion of document production would be an enormous undertaking. Indeed, at pages 11-12 of their Opposition, Defendants indicate that it would be "unworkable" to provide a privilege log for the custodial files produced in *Young* within 45 days. If Defendants cannot provide a log for those custodial files in 45 days, one can only imagine that they will demand many months to provide a privilege log after they have produced all responsive documents in this case. This fact alone proves that Defendants' interpretation of CMO No. 3 is impracticable.

Defendants also argue that intermittent privilege logs will cause delays and slow the production of materials. *See, e.g.*, Opposition, pp. 6, 7. They claim they will be unable to produce custodial or subject matter files until their review of such files are complete, resulting in fewer productions. Opposition, p. 7. This claim is illogical. There is no reason why Defendants could not, for example, review a custodian's file in segments, cull privileged materials upon the review of each segment, and promptly produce a log. In fact, there is no other logical way to do

---

[2] Plaintiffs indicated at page five of their motion that they planned to assemble and review "all relevant paper discovery" prior to taking depositions. Motion for Compliance, pp. 5-6. Defendants take this to mean that Plaintiffs do not intend to take any depositions until every shred of paper has been produced. Opposition, p. 8. This is not so. Plaintiffs intend to take depositions as soon as "all relevant" discovery with respect to particular individuals' files or areas of knowledge have been produced, regardless of whether all paper discovery has been concluded.

[3] Defendants repeatedly suggest that they are producing documents on a rolling basis as some sort of favor to the Plaintiffs and Court, and that they are free to instead withhold all production until some indeterminate future date. *See, e.g.,* Opposition, p. 7 ("the producing party should not be penalized for its willingness to facilitate discovery" by producing documents on a rolling basis; "each party will be forced to refrain from making a production until the review of a discrete set of files is totally complete in all respects …") In reality, Defendants are being *allowed* to produce documents on a rolling basis for their convenience. Certainly the Court would not permit Defendants to wait over a year while they assembled every responsive document before producing anything to Plaintiffs.

3

it. Surely Defendants do not review documents separately before producing them to Plaintiffs and then review them again for privileged materials.

### III.    Defendants have not proposed a workable interpretation of CMO No. 3.

For all of their criticism of Plaintiffs' straightforward interpretation of CMO No. 3, Defendants have failed to propose a workable alternative. Defendants' suggested methodology is so vague and subject to interpretation that it would set the stage for unprecedented gamesmanship and needless discovery disputes.

Defendants frame their interpretation of CMO No. 3 as "requir[ing] that a party provide a log at the completion of a discrete production (e.g. the production of all documents responsive to a particular set of document requests)." Opposition, p. 1. This suggestion is completely subjective and open to interpretation. What exactly is meant by a "discrete production"? To what "sets" of document requests are Defendants referring? How are Plaintiffs to know when Defendants have responded to a "set" of documents requests when Defendants are not designating documents as responsive to particular requests and are instead producing them as they are kept in the ordinary course of business? These questions illustrate that, under Defendants' proposal, each production of documents would inevitably lead to disputes about whether such production had triggered a required privilege log.

These disputes will be completely avoided under Plaintiffs' interpretation of CMO No. 3. Plaintiffs have proposed a logical, simple, and, perhaps most importantly, certain trigger for the provision of privilege logs. This not only is the best method, it is the method already ordered by this Court.

**IV.    Defendant should be ordered to provide a privilege log for documents withheld from their production in *Young*.**

As acknowledged in their Opposition and supporting Declaration, Defendants have produced documents in the products liability case of *Young v. Pfizer, Inc.*, including regulatory, safety, and efficacy documents, as well as one million pages from the files of 28 custodians (collectively the "*Young* Documents"). Opposition, p. 4; MacGregor Decl., ¶ 4. Defendants claim that those documents do not fall within the purview of CMO No. 3, and accordingly have refused to produce a privilege log of those documents until one week before a particular custodian's deposition.

Defendants' assertion that the documents are not governed by CMO No. 3 violates the spirit, if not the substance, of CMO No. 3, as well as this Court's previous ruling regarding the *Young* Documents. As set forth in the excerpt of the transcript from the May 3, 2006 hearing, this Court specifically gave the Sales and Marketing Plaintiffs the right to review the *Young* Documents in lieu of separately seeking their production. As the Court explained, "You'll be able to look at [the documents produced in *Young*]. … I'm not going to have you redo it because that would be too expensive." Transcript, Ex. B to MacGregor Decl., p. 86:8-15.

CMO No. 3 requires a privilege log for documents withheld in this case. While the *Young* documents may not have been directly produced in this case, the Court acknowledged the Sales and Marketing Plaintiffs' right to review those documents and precluded them from separately seeking the documents. Thus, those documents were in essence produced in this case by reference, making Defendants' refusal to provide a privilege log in accordance with CMO No. 3 completely unjustified.

Even if CMO No. 3 does not directly apply to the *Young* Documents, Defendants are still required under F.R.C.P. 26(b)(5) to provide a privilege log. Defendants' proposal of providing a

5

log one week before each of the custodian's depositions is an invitation for needless discovery disputes and deposition delays. Under Defendants' proposal, Plaintiffs would never be able to review, challenge, and obtain a ruling on potentially improperly redacted or withheld documents in time for a custodian's deposition. The obvious result is that Plaintiffs would be forced to choose between postponing depositions each time they wished to challenge an assertion of privilege, or going forward with depositions without potentially important documents.

If Defendants refuse to timely provide a privilege log for the *Young* documents because they believe those documents are not covered by CMO No. 3, Plaintiffs respectfully request permission to serve a new request for production seeking all documents produced in that case. A privilege log would then be due 14 days after Defendants produced responsive documents, rendering the dispute about these documents moot. Such a pointless exercise is the logical solution to Defendants' absurd interpretation of CMO No. 3.

**V.    CMO No. 3 should apply to documents produced in *Franklin*.**

Defendants claim that CMO No. 3's privilege log requirement does not apply to documents produced in *Franklin*. This suggestion also violates the spirit, if not the intent, of CMO No. 3. In CMO No. 3, Judge Saris specifically recognized that "documents produced by the defendants in the Franklin case have been provided to plaintiffs by Mr. Thomas Greene, counsel for the Relator in Franklin, and defendants shall have no further obligation to produce those documents." CMO No. 3, p. 4. Notably, this issue has arisen only because the Defendants did not produce a privilege log in *Franklin*. Even if the *Franklin* documents do not fall within the purview of CMO No. 3, there still is no reason why Defendants should not immediately provide a privilege log as required by F.R.C.P. 26(b)(5).

6

**VI.    The parties should be required to provide a letter indicating that they have not withheld or redacted documents on the basis of privilege.**

Defendants object to Plaintiffs' request that a producing party provide written confirmation if it makes a production in which no documents have been redacted or withheld on the basis of privilege. Defendants claim that they might not know whether documents were withheld on this basis until they have completed review of all of the documents, e.g., from a particular custodian. This makes no sense. If Defendants review and produce a portion of a custodian's records, and during their review they pull or redact some of those records, they should disclose those withholdings or redactions at that time. It is that simple. Requiring the producing party to send out a one paragraph letter when documents have not been withheld cannot be considered onerous.

**VII.   Including the title or correspondence/email "Re:" line in privilege logs will reduce discovery disputes.**

Defendants also oppose Plaintiffs' request for an order requiring that, for each document withheld or redacted on the basis of privilege, the withholding party identify, among other things, the title of the withheld document (or the "Re:" line in the case of correspondence and e-mail). Defendants claim that such information might itself contain privileged information.

Plaintiffs' request is designed to avoid needless discovery disputes, not to force Defendants to reveal privileged information. Thus, Plaintiffs hereby clarify that they only request that the title or correspondence/email "Re:" line of allegedly privileged materials be included in privilege logs if they do not contain privileged information.

## **CONCLUSION**

For all of the foregoing additional reasons, the Plaintiffs respectfully request that their Motion for Compliance with CMO No. 3 be granted, and for all other just and proper relief.

Dated: August 11, 2006

Respectfully Submitted,

By: */s/ Thomas Greene*
Thomas Greene, Esquire
Michael A. Tabb, Esquire
GREENE & HOFFMAN
125 Summer Street
Boston, MA 02110

By: */s/ Thomas M. Sobol*
Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA 02142

By: */s/ Barry Himmelstein*
Barry Himmelstein, Esquire
LIEFF CABRASER HEIMANN & BERNSTEIN
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By: */s/ Don Barrett*
Don Barrett, Esquire
BARRETT LAW OFFICE
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By: */s/ Daniel Becnel, Jr.*
Daniel Becnel, Jr., Esquire
LAW OFFICES OF DANIEL BECNEL, JR.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

By: */s/ James Dugan*
James R. Dugan, II, Esquire
DUGAN & BROWNE, PLC
650 Poydras Street, Suite 2150
New Orleans, LA 70130

***Members of the Class Plaintiffs'
Steering Committee***

By: */s/ Richard Cohen*
Richard Cohen, Esquire
LOWEY DANNENBERG BEMPORAD
& SELINGER, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY 10601

By: */s/ Linda P. Nussbaum*
Linda P. Nussbaum, Esquire
COHEN MILSTEIN HAUSFELD & TOLL
150 East 52nd Street
Thirteenth Floor
New York, NY 10022

*Members of the Plaintiffs' Non-Class Steering Committee*

9

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on August 11, 2006.

/s/ Thomas Greene