UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981 |
| | Judge Patti B. Saris |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY. | Magistrate Judge Leo T. Sorokin |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC. and | |
| AETNA, INC. v. PFIZER INC. | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    I.   The Third-Party Payor Plaintiffs Should Be Compelled
        To Produce Medical Records and Claims Data ............................................................... 1

   II.   The Individual Plaintiffs Should Be Compelled
        To Produce Their Medical Records ................................................................................. 6

  III.   If ASEA Continues To Resist Producing Relevant Neurontin
        Claims Data, It Should Be Barred from Pursuing Those Claims .................................... 8

  IV.   Kaiser's Selective Disclosure of Documents Is Improper .............................................. 8

CONCLUSION ............................................................................................................................... 9

Defendants Pfizer Inc. and Warner-Lambert Company submit this reply memorandum in further support of their motion to compel discovery from the Class Plaintiffs and the Coordinated Plaintiffs (collectively, "plaintiffs") pursuant to Federal Rule of Civil Procedure 37.

## PRELIMINARY STATEMENT

Plaintiffs' response to defendants' motion to compel completely misses the mark. Plaintiffs essentially argue that because the requested documents do not relate to their theory of the case, they are irrelevant and should not be produced. Plaintiffs ignore that fact that the documents are relevant to the defenses that defendants intend to advance. Plaintiffs' brazen attempt to withhold from defendants documents that are crucial to defending these cases should not be permitted. For the foregoing reasons and for the reasons explained further below, the motion to compel should be granted or plaintiffs' claims should be barred.

## ARGUMENT

**I.    The Third-Party Payor Plaintiffs Should Be Compelled
        To Produce Medical Records and Claims Data**

Defendants have requested that the Court compel the production of the following three categories of information from the third-party payor plaintiffs in this litigation: (i) the medical records of their Neurontin-takers for the time that Neurontin was prescribed to them as well as for the year before and after; (ii) medical claims data for their Neurontin-takers for the same period; and (iii) non-Neurontin prescription drug claims data for their Neurontin-takers for this period. Plaintiffs are resisting the production of this material on grounds of relevance and burdensomeness. The relevance objection is based on plaintiffs' self-serving analysis of what they need to prove their claims (not what defendants need to defend the case), and the burdensomeness objection is completely unsupported.

1

The medical records and claims data for the patients who were prescribed Neurontin are unquestionably relevant for the reasons that defendants summarized in their moving brief. Defs.' Mem. at 5-7. First, medical records, which contain the official documentation of the patient's visits to his or her physician or healthcare provider, will contain the most accurate information regarding why Neurontin was prescribed by the physician. Declaration of Keith E. Argenbright, M.D., dated Aug. 11, 2006 ("Argenbright Decl."), ¶¶ 16-18. Consequently, analysis of these records is the most reliable means to determine what indications Neurontin was being prescribed for. Id. ¶ 19. This information is critical to the third-party payors' claims because pursuant to recent orders of the Court, these plaintiffs will only be able to recover for off-label Neurontin prescriptions for certain conditions. Dock # 356 (June 12, 2006 Order ("Order")) at 20 (adopting Dock # 269 (Jan. 31, 2006 Report ("Report")) at 37-42). These records are also relevant because they may indicate why Neurontin rather than another drug was prescribed, including whether other drug therapy was tried but failed. Argenbright Decl. ¶ 20.[1] Moreover, patients' medical records will contain the best evidence of whether Neurontin was effective for each Neurontin-taker. Id. ¶ 21. Such information is crucial to this case because the Court has ruled that plaintiffs must prove Neurontin's inefficacy in order to be able to recover for any alleged losses. Order at 23 (adopting Report at 21-22).[2] Finally, medical records may show that a perceived lack of

---

[1] The question of alternative treatments is directly relevant to the Coordinated Plaintiffs' theory that they were damaged because they could have purchased less expensive alternatives for their Neurontin-takers. Contrary to plaintiffs' assertion, not all potential alternatives are realistic alternatives for each patient, so obtaining information relevant to each Neurontin-taker is important to assessing whether there were alternatives to Neurontin for that person. Moreover, this information is also relevant to all third-party payors' claims because any damages based on payments that the third-party payors made for Neurontin should be reduced by the cost of the alternative treatments that their Neurontin-takers would have used instead of Neurontin.

[2] Plaintiffs completely ignore this reason. This is understandable because the third-party payors would like the Court to assume that Neurontin did not work for any of their Neurontin-takers. As the Court has made clear, the third-party payors will not be able to recover for payments for Neurontin where the drug was effective. Defendants must be entitled to obtain the best source of evidence on this issue, i.e., the patients' medical records.

efficacy was due to a factor unique to a patient, such as the patient's noncompliance with his or her drug treatment plan. Argenbright Decl. ¶ 22.

The medical claims data of the third-party payors' Neurontin-takers is similarly relevant. Medical claims data contain diagnosis codes, which set forth the physician's diagnosis of the patient's condition. Id. ¶ 23. Such information is not contained in the prescription drug data that the third-party payors have produced or will be producing. Thus, medical claims data with diagnosis information that is contemporaneous with each Neurontin-taker's Neurontin prescriptions will be linked with prescription drug data to determine why Neurontin was prescribed. Id. ¶¶ 24-25. As explained above, the results of this exercise will be highly relevant because the third-party payors cannot recover for Neurontin prescriptions for approved uses and, pursuant to the Court's recent rulings, can only recover for Neurontin prescriptions for a handful of conditions. Order at 20 (adopting Report at 37-42).[3]

Furthermore, the non-Neurontin prescription drug data that defendants seek is relevant for similar reasons. This data will be used by defendants to identify relevant changes in therapy for a patient. Argenbright Decl. ¶ 26. For example, if a patient was prescribed another antiepileptic drug for two months, that drug was discontinued, and the patient was subsequently prescribed Neurontin for four years, this would tend to show that Neurontin was an effective alternative treatment for the patient. Id. ¶ 27. This data also will show what alternatives to Neurontin were taken, if any, whether the condition for which a patient was prescribed Neurontin

---

[3] Defendants do not concede that this information could accurately determine the diagnosis of particular Neurontin prescriptions, but this information is relevant to that question.

3

was refractory to treatment, or whether Neurontin might have been prescribed because alternate treatments would have resulted in adverse drug-drug interactions. Id. ¶ 28.[4]

Plaintiffs wrongly discount all of these reasons. Instead, they assert that this information is irrelevant because the third-party payors do not intend to prove causation on a claim-by-claim or an individual-by-individual basis, but rather on an aggregate basis, dispensing with actually proving that any particular Neurontin prescription was for a particular off-label use and was ineffective.[5] While the third-party payors no doubt will try to convince the Court that their "aggregate" proof is sufficient (which defendants will vigorously oppose), what these plaintiffs cannot dispute is that defendants will contest these arguments with theories of their own and are entitled to discovery relevant to those defenses. Clearly, concrete information is the best means by which to rebut the arguments that plaintiffs will make and thus, is indisputably relevant. See, e.g., United States v. Grace, 401 F. Supp. 2d 1093, 1097 (D. Mont. 2005) (finding that access to medical records was necessary for defendants to contest the government's theory of how their product caused harm). Moreover, defendants need this information in order to cross-examine plaintiffs' experts and to challenge their models. See Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 562-63 (7th Cir. 1984). Finally, plaintiffs' argument in their response that

---

[4] Plaintiffs' unsupported argument that "[t]here were numerous FDA approved alternatives to Neurontin for off-label uses" is flat wrong. Pls.' Opp'n at 4. To this day, no drug in the United States is approved to treat neuropathic pain and only a few drugs have been approved to treat a few specific types of neuropathic pain.

[5] The cases that plaintiffs cite in support of the proposition that Dr. Raymond Hartman's opinion renders defendants' access to medical and prescription data unnecessary are mostly cases based on allegations of anticompetive behavior, where the individuals' reasons for purchasing the product in question and the product's effectiveness were irrelevant. See In re Worldcom, Inc., C.A. No. 02-13533 (AJG), 2006 Bankr. LEXIS 706, at *26-27 (Bankr. S.D.N.Y. May 4, 2006) (explaining the limited applicability of cases like In re Synthroid Mktg. Litig., 188 F.R.D. 295 (N.D. Ill. 1999), to actions where reliance and harm are at issue). Moreover, these cases were all at the class certification stage. In this action, merits discovery and class certification discovery are ongoing concurrently, and consequently defendants are entitled to information that would demonstrate which plaintiffs suffered damages. Plaintiffs can point to no similar case in which this issue was presented and a court declined such discovery.

causation can be proven on a class-wide basis essentially asks this Court to make a substantive legal ruling that will be vigorously contested at the class certification stage and is not appropriate for resolution on a motion to compel. By asking this Court to limit defendants' access to discovery, plaintiffs are seeking to tie one hand behind defendants' back on class certification before that issue is even before the Court.

Plaintiffs also raise an objection to the production of the requested medical records and claims data on grounds of burdensomeness, which they have failed to support with anything other than the self-serving arguments of counsel.[6] The third-party plaintiffs have failed to detail the nature of their alleged burden in any way. Having brought their claims and imposed tremendous burdens on defendants, which have resulted in the production of millions of pages of documents by defendants to date, plaintiffs have no right to complain. They should not be permitted to pursue their claims if they are unwilling to produce the documents that are relevant to those claims.

Finally, plaintiffs' argument that due to privacy concerns the claims data and medical records should not be produced is nothing more than a red herring. As previously explained, these records are crucial to defendants' ability to defend themselves successfully in this action, and the privacy concerns raised by plaintiffs should be alleviated by the HIPAA-compliant protective order that has already been entered in this case. 45 CFR § 164.512(e).[7] Moreover,

---

[6] Notably, the third-party payors do not assert that this information is not within their control.

[7] Plaintiffs' citation to Northwestern Mem'l Hosp. v. Ashcroft is inapposite since that case involved the unique circumstances of a government third-party subpoena to a hospital for medical records of women who had partial-birth abortions performed, which had been recently criminalized. 362 F.3d 923, 929 (7th Cir. 2004) ("This is hardly a typical case in which medical records get drawn into a lawsuit."). Moreover, the decision turned on the fact that, unlike defendants, the government put forth no explanation for why the medical records were necessary. Id. at 930.

plaintiffs can redact patient names, thus alleviating any potential privacy issue. See In re Rezulin Prod. Liab. Litig., 178 F. Supp. 2d 412, 416 (S.D.N.Y. 2001).

While plaintiffs also argue that some states prohibit the production of redacted medical records, they concede that most courts have found that federal privilege law applies in cases where there are both federal and state claims. Pls.' Opp'n at 8 & n.5. In addition, in the only First Circuit case to address this issue, Blake v. Southcoast Health Systems, Inc., the court found that the appropriate resolution was "to accord supremacy to the evidentiary rule that has the most probative force," which here, as in that case, is the federal rule. 206 F. Supp. 2d 174, 182 (D. Mass. 2002), rev'd on other grounds sub nom. Blake v. Pellegrino, 329 F.3d 43, 46 (1st Cir. 2003). Notwithstanding the fact that the federal rule should apply, the plaintiffs can only cite to one example of a state that has such a statute. Accordingly, defendants should not be barred from access to the requested medical and prescription records.

**II.     The Individual Plaintiffs Should Be Compelled
         To Produce Their Medical Records**

The individual plaintiffs Smith and Kopa seek to restrict their production of medical records too narrowly. They have produced medical records "for treatments received for injuries sustained in auto accidents that led to their being prescribed Neurontin for off-label uses." Pls.' Mem. at 9. While these documents are certainly relevant, they are not the universe of these plaintiffs' relevant medical records. Argenbright Decl. ¶¶ 29-33.[8]

---

[8] Plaintiffs misleadingly state that the individual plaintiffs "have already produced a majority of the documents Defendants presently seek in their motion to compel." Pls.' Opp'n at 11. Defendants are not requesting that the Court compel the production any documents from these plaintiffs that have already been produced. Defendants seek the production of the remainder which have not been produced.

For instance, medical records from a reasonable period[9] prior to when the individual plaintiffs started taking Neurontin are relevant to whether Neurontin's alleged inefficacy was due to a factor unique to the individual plaintiff. Id. ¶ 30. Smith's produced medical records already suggest this possibility. These records show that Smith sustained a head injury several few years prior to his auto accident. Id. ¶ 31. Full records regarding this injury and any other injuries that he suffered are relevant to whether Smith has a medical condition that Neurontin could not relieve. Id. In addition, and by way of example only, whether these plaintiffs used other off-label medications with or without their knowledge, used medications consistent with their doctors' orders, or suffered from illness resistant treatment are highly relevant to defenses in their cases. Id. ¶ 33. These facts will be crucial in determining whether the plaintiffs are typical or adequate class representatives, including whether their claims are subject to unique defenses.

Plaintiffs suggest that the individual plaintiffs' refusal to produce relevant documents can be justified by the fact that the information in question can be obtained from depositions of plaintiffs' doctors. Pls.' Opp'n at 10. Even if this information could be obtained from the doctors (which has not been established and is highly unlikely), this does not mean that defendants are not entitled to the relevant medical records from the putative class representatives.

Finally, the individual plaintiffs are not asserting a burden. As there is no other justification for their refusal to produce these medical records, which they have put at issue, this Court should order them to produce their medical records from a reasonable period prior to when the individual plaintiffs started taking Neurontin to the present.

---

[9] Plaintiffs mistake the scope of defendants' request. In light of the Court's recent order requiring broad production of medical records (Dock # 372 at 3-4), defendants do not limit their request to merely the medical records from one year before and after the individual plaintiffs' use of Neurontin.

### III. If ASEA Continues To Resist Producing Neurontin Claims Data It Should Be Barred from Pursuing Those Claims

ASEA has conceded that it is able to search for the hard copy Neurontin claims that defendants are requesting and has admitted that these claims are the only documentation available that would allow determination of which of ASEA's out-of-network claims were for Neurontin prescriptions. Id. at 13-14. ASEA's only basis for resisting production of these claims is its assertion that production would be too burdensome "given the small benefit" that such documents would afford to defendants. This argument is absurd. The documents in question are the only tangible evidence of ASEA's out-of-network claims. ASEA apparently hopes to extrapolate the extent of its out-of-network Neurontin claims from other information, but ASEA has not identified such information and has provided no basis to suggest that the proportion of the out-of-network Neurontin claims (submitted at Indian service facilities, military hospitals, etc.) can be ascertained from other information.

Again, plaintiffs suggest that the information requested is not relevant to their theory of recovery and therefore, is not relevant generally. As discussed above, this position is groundless, and defendants are entitled to receive documents that could be used to disprove plaintiffs' claims. To the extent that ASEA refuses to produce these documents, it should be considered to have waived its ability to seek recovery for such claims.

### IV. Kaiser's Selective Disclosure of Documents Is Improper

Kaiser has limited its document production without justification in at least two material ways. First, even though Kaiser is pursuing claims in connection with its business activities in nine states and the District of Columbia, it has "focused its efforts in California" and has purposefully limited its production of documents from outside the state. Second, while Kaiser is

8

seeking to recover for Neurontin prescriptions written by all of its physicians, Kaiser has gathered documents only from physicians of their own choosing.[10]

This is unacceptable. Kaiser is not limiting its claims only to Neurontin prescriptions written in California. Nor is it only seeking damages for Neurontin prescriptions written by certain of its physicians who prescribed the drug. Kaiser itself has put the requested documents at issue by asserting the claims that it has brought in this case.

Kaiser's assertion that defendants "have not sufficiently demonstrated their need for" the names of the Kaiser physicians who prescribed Neurontin in connection with the Neurontin claims data that Kaiser is producing is inexplicable. <u>Id.</u> at 17 n.11. These individuals are the alleged victims of the purported fraud. Ascertaining who they are and obtaining evidence from them is vital to the defense of this action.

## **CONCLUSION**

For all of the foregoing reasons, defendants' motion to compel should be granted.

Dated: August 11, 2006

                DAVIS POLK & WARDWELL

                By:   /s/ James P. Rouhandeh
                   James P. Rouhandeh

                450 Lexington Avenue
                New York, New York 10017
                (212) 450-4000

                  - and -

---

[10] Kaiser has still not yet indicated how many physicians it collected documents from, let alone their identities. Defendants are not requesting that Kaiser search the files of all 11,000 of its physicians. Defendants are only asking that Kaiser collect responsive documents from those physicians who are alleged to be the victims of the alleged fraud.

HARE & CHAFFIN

By:   /s/ David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

   I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on August 11, 2006.

                              /s/David B. Chaffin