UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

In re:  NEURONTIN MARKETING,         :
        SALES PRACTICES AND         :
        PRODUCTS LIABILITY LITIGATION :
                                    :  MDL Docket No. 1629

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :  Master File No. 04-10981

THIS DOCUMENT RELATES TO:      :
                                    :  Judge Patti B. Saris

MARTHA ACCETTULLO et al. v. PFIZER INC. et al.,  :
06-10912-PBS                      :  Magistrate Judge Leo T.
                                    :  Sorokin

VIRGIL L. ANDERSON et al. v. PFIZER INC. et al.,  :
06-11024-PBS                      :

KAMALIHA Y. BREWSTER et al. v. PFIZER INC. et al.,  :
06-11022-PBS                      :

CHARLES D. GIRARD, Sr. et al. v. PFIZER, INC. et al.,  :
06-11023-PBS                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS..................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

     I.    ALL OF PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE
           PLAINTIFFS HAVE FAILED TO ALLEGE A COGNIZABLE INJURY ............... 4

     II.   PLAINTIFFS' CLAIMS BASED ON ALLEGATIONS REGARDING
           MARKETING PRACTICES SHOULD BE DISMISSED ......................................... 7

           A.    Plaintiffs Have Not Stated a Claim for Common Law Fraud ........................... 9

           B.    Plaintiffs Have Not Stated a Claim for Breach of Express Warranty ............. 11

           C.    Plaintiffs Have Not Stated a Claim for Negligence ........................................ 13

     III.  THE MULTI-PLAINTIFF PRODUCT LIABILITY COMPLAINTS
           SHOULD BE SEVERED INTO INDIVIDUAL ACTIONS ................................... 14

CONCLUSION .................................................................................................................... 15

i

## TABLE OF AUTHORITIES

### Cases

**Page**

Alexander v. Smith & Nephew, P.L.C., 98 F. Supp. 2d 1276 (N.D. Okla. 2000) ....................... 13

Allen v. Wright, 468 U.S. 737 (1984) ........................................................................................... 7

Allied Fidelity Ins. Co. v. Pico, 656 P.2d 849 (Nev. 1983) .......................................................... 12

Anderson v. Baltrusaitis, 944 P.2d 797 (Nev. 1997) ............................................................... 5, 13

Baron v. Pfizer, Inc., Index No. 6429-04. (N.Y. Sup. Ct. May 2, 2006) ........................................ 9

Basham v. Gen. Shale Prods. Corp., C.A. No. 92-1608,
    1993 U.S. App. LEXIS 4876 (4th Cir. Mar. 10, 1993) ........................................................... 10

Carter v. Montgomery, 296 S.W.2d 442 (Ark. 1956) ............................................................... 5, 13

Ciba-Geigy Corp. v. Alter, 834 S.W.2d 136 (Ark. 1992) ............................................................. 12

County of Suffolk v. Abbot Labs. (In re Pharm. Indus. Wholesale Price Litig.),
    Civ. A. No. 01-12257-PBS, 2004 U.S. Dist. LEXIS 21448 (D. Mass. Oct. 26, 2004) ............. 6

Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316 (1999) ................................. 6

Fields v. Melrose Ltd. P'ship, 439 S.E.2d 283 (S.C. Ct. App. 1993) ........................................... 12

Goodman v. PPG Indus., Inc., 849 A.2d 1239 (Pa. Super. Ct. 2004),
    aff'd, 885 A.2d 982 (Pa. 2005) ............................................................................................... 12

Hearn v. R.J. Reynolds Tobacco Co., 279 F. Supp. 2d 1096 (D. Ariz. 2003) .............................. 10

Henderson Specialties, Inc. v. Boone County, 971 S.W.2d 234 (Ark. 1998) ........................... 5, 13

Hernandez v. Ciba-Geigy Corp. USA, 200 F.R.D. 285 (S.D. Tex. 2001) .................................... 10

Kelly v. St. Mary Hosp., 778 A.2d 1224 (Pa. Super. Ct. 2001) ................................................. 5, 13

Lubbe v. Barba, 540 P.2d 115 (Nev. 1975) ................................................................................... 5

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ................................................................... 7

**Page**

In re Lupron Mktg. & Sales Practices Litig., No. 01-CV-10861,
2004 U.S. Dist. LEXIS 18512 (D. Mass. Sept. 16, 2004)........................................................ 10

Lux v. Gerald E. Ort Trucking, Inc., 887 A.2d 1281 (Pa. Super. Ct. 2005) ............................. 5, 13

In re Meridia Prods. Liab. Litig., 328 F. Supp. 2d 791 (N.D. Ohio 2004),
aff'd, 447 F.3d 861 (6th Cir. 2006)........................................................................................ 11

In re Orthopedic Bone Screw Prods. Liab. Litig., MDL 1014,
1995 WL 428683 (E.D. Pa. July 17, 1995)....................................................................... 14, 15

In re Orthopedic Bone Screw Prods. Liab. Litig., MDL 1014,
1997 WL 305256 (E.D. Pa. May 20, 1997) ............................................................................ 15

Parkinson v. Guidant Corp., 315 F. Supp. 2d 741 (W.D. Pa. 2004) ...................................... 11, 12

Porreco v. Porreco, 811 A.2d 566 (Pa. 2002) ...................................................................... 5

In re Prempro Prods. Liab. Litig., 417 F. Supp. 2d 1058 (E.D. Ark. 2006)........................... 14, 15

Regions Bank v. Schmauch, 582 S.E.2d 432 (S.C. Ct. App. 2003).......................................... 5

Scaffidi v. United Nissan, 425 F. Supp. 2d 1172 (D. Nev. 2005)............................................ 5

Scialabba v. Brandise Construction Co., 921 P.2d 928 (Nev. 1996) ...................................... 5, 13

Scollard v. Scollard, 947 S.W.2d 345 (Ark. 1997) .............................................................. 4

Spino v. John S. Tilley Ladder Co., 696 A.2d 1169 (Pa. 1997)............................................... 5

Stevens v. Allen, 536 S.E.2d 663 (S.C. 2000) .................................................................... 5, 13

Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,
454 U.S. 464 (1982)............................................................................................................. 7

Whitlaw v. Kroger Co., 410 S.E.2d 251 (S.C. 1991)........................................................... 5, 13

Whittington v. Eli Lilly & Co., 333 F. Supp. 98 (S.D. W. Va. 1971).......................................... 11

Wilson v. Style Crest Prods., 627 S.E.2d 733 (S.C. 2006) ..................................................... 5

Yurcic v. Purdue Pharma, L.P., 343 F. Supp. 2d 386 (M.D. Pa. 2004) ................................... 13

## Statutes & Rules

**Page**

13 Pa. Cons. Stat. § 2714 ...................................................................................... 5

13 Pa. Cons. Stat. Ann. § 2313 ........................................................................... 12

Ark. Code Ann. § 4-2-714(2) .................................................................................. 5

Ark. Code Ann. § 4-86-102(a) ................................................................................ 5

Ark. R. Civ. P. 20(a) ............................................................................................. 14

Fed. R. Civ. P. 8(a) ............................................................................................ 2, 6

Fed. R. Civ. P. 9(b) ....................................................................................... 1, 2, 10

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1, 2, 5

Fed. R. Civ. P. 20(a) ............................................................................................ 14

Nev. R. Civ. P. 20(a) ........................................................................................... 14

Nev. Rev. Stat. § 104.2714(2) ............................................................................... 5

Pa. R. Civ. P. 2229(a) .......................................................................................... 14

S.C. Code Ann. § 36-2-714(2) ................................................................................ 5

S.C. R. Civ. P. 20(a) ............................................................................................ 14

## Other Authorities

Louis R. Frumer & Cary Stewart Sklaren, <u>Products Liability</u> § 9.02 (2d ed. 2006)..................... 11

Defendants Pfizer Inc., Parke-Davis, Warner-Lambert Company, and Warner-Lambert Company, L.L.C. respectfully submit this memorandum of law in support of their motion to dismiss the complaints in <u>Accettullo v. Pfizer, Inc.</u>, 06-10912-PBS; <u>Anderson v. Pfizer, Inc.</u>, 06-11024-PBS; <u>Brewster v. Pfizer, Inc.</u>, 06-11022-PBS; and <u>Girard v. Pfizer, Inc.</u>, 06-11023-PBS (collectively, the "Multi-Plaintiff Product Liability Complaints") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## <u>PRELIMINARY STATEMENT</u>

The plaintiffs bringing the Multi-Plaintiff Product Liability Complaints ("plaintiffs") assert claims of common law fraud, negligence, negligence per se, product liability, and breach of express warranty. These complaints are similar to the product liability complaints in this multidistrict litigation brought by individual plaintiffs, which defendants moved to dismiss approximately two months ago (Dock ## 363-64). But they contain a more fundamental problem: they fail to allege that the various plaintiffs were injured at all, let alone what each injury was. This deficiency is so obvious that the federal district court judge to whom the <u>Accettullo</u> action was removed wrote a letter *sua sponte* to plaintiffs' counsel that highlighted this deficiency:

> "I am the transferee judge in <u>In re Prempro</u>, MDL 1507, which like this case, involves allegations regarding prescription drugs. In that case, I have repeatedly complained about generic, omnidirectional complaints naming multiple plaintiffs, from multiple jurisdictions. While those complaints are thorough on the history of the drug at issue they fail [to] connect that history to the named plaintiffs. The <u>Accettullo</u> Complaint, naming over 75 plaintiffs from multiple states, seems to be a classic example of what I have been complaining about.
>
> . . . I see no reference to any specific plaintiffs or what injury that plaintiff has suffered."

Plaintiffs in <u>Accettullo</u> have done nothing to correct this deficiency. The other Multi-Plaintiff Product Liability Complaints, brought by the same plaintiffs' lawyers, suffer from this same problem. These cases should be dismissed because alleging an injury is necessary to state each of plaintiffs' claims. In fact, absent such allegations plaintiffs have no standing under Article III to bring suit in federal court. As another MDL judge observed, the multi-plaintiff complaints fail to allege harm to each individual plaintiff and thus, fail to allege injury.

Plaintiffs' claims based upon marketing allegations suffer from an additional defect. As in the single-plaintiff product liability actions, plaintiffs have failed to plead any connection between the alleged misconduct and their use of Neurontin. Plaintiffs have not identified the false or misleading statements upon which they or their physicians relied. Nor have they alleged how these false statements caused them harm. Plaintiffs have not pled the necessary causal link between the misconduct of which they complain and any injuries that they suffered. For example, with respect to their fraud claims, not only must Plaintiffs allege the "who, what, where, and when" of the fraud, but they must also allege, with particularity, how these misstatements caused their purported injuries. There are, however, no specific allegations of causation and reliance whatsoever in any of the complaints. In fact, the claims brought by plaintiffs even fail to state a claim under the relaxed notice pleading standards of Rule 8(a). The glaring deficiencies in the plaintiffs' allegations necessitate dismissal under Rules 12(b)(6) and Rule 9(b).

**STATEMENT OF FACTS**

Over 200 plaintiffs have brought four substantially similar lawsuits seeking damages relating to their use of Neurontin.[1]  Eighty plaintiffs have brought the Accettullo suit in Arkansas state court, sixty-nine brought the Anderson suit in the District of South Carolina, fourteen brought the Brewster suit in the District of Nevada, and another sixty-two brought the Girard suit in the Eastern District of Pennsylvania.  Plaintiffs in these multi-plaintiff suits are apparently seeking to recover both for personal injuries resulting from the use of Neurontin and for their payments for Neurontin that they used for off-label conditions.  These plaintiffs allege that they were "injured and damaged, some fatally," from their use of Neurontin and claim that their losses were due to defendants' off-label marketing of Neurontin.  Accettullo Compl. ¶ 1; see Girard Compl. ¶ 15.[2]  They do not allege, however, how each of them was injured or what conduct by defendants caused their injury.

Plaintiffs claim that the defendants employed a variety of methods to promote Neurontin for off-label uses, including the use of a "publication strategy," meetings, speakers bureaus, medical education seminars, advisory boards, teleconferences, and the payment of kickbacks to prescribers of Neurontin.  Accettullo Compl. ¶¶ 99-101; Girard Compl. ¶¶ 27-29.  According to plaintiffs, defendants did this even though they knew or should have known that (i) scientific evidence did not adequately establish Neurontin's safety and efficacy for these off-label uses,

---

[1] The Anderson, Brewster, and Girard complaints assert causes of action for fraud, negligence, negligence per se, breach of express warranty, strict product liability and product liability, personal injuries, and wrongful death and survival actions.  These three complaints are substantively identical, and references made to the Girard complaint are illustrative of the allegations made in all three complaints.  The Accettullo complaint asserts claims for negligence and gross negligence, strict product liability and product liability, personal injuries, and wrongful death and survival actions.  The Accettullo complaint also demands punitive damages.

[2] References to the Girard Complaint are to those numbered paragraphs in the section titled "General Allegations."

(ii) Neurontin caused substantial physical injuries, and (iii) Neurontin was ineffective for the off-label conditions.  Accettullo Compl. ¶ 1; Girard Compl. ¶¶ 4, 10, 14.

Plaintiffs recite a litany of conditions for which Neurontin was allegedly prescribed off-label, and list numerous events at which Neurontin was allegedly promoted as a treatment for these off-label indications.  See Accettullo Compl. ¶¶ 112, 124; Girard Compl. ¶¶ 40, 52. Plaintiffs identify particular meetings at which Neurontin was allegedly discussed and name doctors who received grants to study Neurontin for various conditions.  Accettullo Compl. ¶ 130; Girard Compl. ¶ 58.  Plaintiffs do not, however, allege that any of them or their physicians attended any of these meetings or received these grants.  The plaintiffs in the Girard, Brewster, and Anderson actions also make the conclusory allegation that they were the victims of fraud, but provide no factual allegations to support their assertions.  Girard Compl. ¶¶ 72-79.  These plaintiffs merely allege that "Defendants, directly or indirectly, made material misrepresentations," that "Plaintiffs and their doctors in fact relied to their detriment and physical and mental injury upon the deceptive statements," and that "as a direct and proximate cause of Defendants' conduct, Plaintiffs have suffered actual damages."  Girard Compl. ¶¶ 73, 78, 79.

## ARGUMENT

### I.    ALL OF PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE A COGNIZABLE INJURY

The Multi-Plaintiff Product Liability Complaints should all be dismissed because plaintiffs have failed to allege loss, an element of each of their causes of action.  In each jurisdiction in which plaintiffs have brought suit, loss is an element of fraud, negligence, negligence per se, breach of express warranty, and product liability claims.  See, e.g., Scollard v. Scollard, 947 S.W.2d 345, 348 (Ark. 1997) (discussing elements of fraud); Lubbe v. Barba, 540

P.2d 115, 117 (Nev. 1975) (same); <u>Porreco v. Porreco</u>, 811 A.2d 566, 570 (Pa. 2002) (same); <u>Regions Bank v. Schmauch</u>, 582 S.E.2d 432, 444-45 (S.C. Ct. App. 2003) (same); <u>Henderson Specialties, Inc. v. Boone County</u>, 971 S.W.2d 234, 236-37 (Ark. 1998) (discussing elements of negligence claims); <u>Scialabba v. Brandise Construction Co.</u>, 921 P.2d 928, 930 (Nev. 1996) (same); <u>Kelly v. St. Mary Hosp.</u>, 778 A.2d 1224, 1226 (Pa. Super. Ct. 2001) (same); <u>Stevens v. Allen</u>, 536 S.E.2d 663, 665 (S.C. 2000) (same); <u>Carter v. Montgomery</u>, 296 S.W.2d 442, 444-45 (Ark. 1956) (discussing elements of negligence per se); <u>Anderson v. Baltrusaitis</u>, 944 P.2d 797, 799 (Nev. 1997) (same); <u>Lux v. Gerald E. Ort Trucking, Inc.</u>, 887 A.2d 1281, 1288 (Pa. Super. Ct. 2005) (same); <u>Whitlaw v. Kroger Co.</u>, 410 S.E.2d 251, 253 (S.C. 1991) (same); Ark. Code Ann. § 4-2-714(2) (discussing damages calculations in breach of warranty claims); Nev. Rev. Stat. § 104.2714(2) (same); 13 Pa. Cons. Stat. § 2714 (same); S.C. Code Ann. § 36-2-714(2) (same); Ark. Code Ann. § 4-86-102(a) (enumerating elements of a cause of action for products liability); <u>Scaffidi v. United Nissan</u>, 425 F. Supp. 2d 1172, 1192 (D. Nev. 2005) (same); <u>Spino v. John S. Tilley Ladder Co.</u>, 696 A.2d 1169, 1172 (Pa. 1997) (same); <u>Wilson v. Style Crest Prods.</u>, 627 S.E.2d 733, 736 (S.C. 2006) (holding that under a products liability theory, plaintiffs must establish an actual injury). Plaintiffs' failure to plead a loss requires that their complaints be dismissed under Rule 12(b)(6).

All four complaints contain the exact same substantive pleading deficiency. They generally allege injuries including attempted and completed suicides as well as physical and emotional harm, but do not allege what injuries each plaintiff has suffered. <u>See, e.g.</u>, Girard Compl. ¶¶ 14, 37; Accettullo Compl. ¶¶ 1, 145, 147. Because these complaints contain personal injury claims brought by multiple plaintiffs and allege various types of injury, it is entirely unclear whether each of the plaintiffs has actually suffered any cognizable injury at all. For

example, the plaintiffs bringing the Accettullo complaint allege that they suffered "physical pain and mental anguish," but do not allege the type of injury each plaintiff suffered, if any. Accettullo Compl. ¶ 145.

The deficiencies in the Multi-Plaintiff Product Liability Complaints are so obvious that the transferor judge in the Arkansas action – Accettullo – raised these very problems in a letter to the plaintiffs' counsel *sua sponte*. See Declaration of Patrick J. Murray, dated Aug. 11, 2006 ("Murray Decl."), Ex. 1 (noting that the Accettullo complaint makes "no reference to any specific plaintiff or what injury that plaintiff has suffered"). In order to state an injury in a multi-plaintiff complaint properly, plaintiffs must allege the injury that each plaintiff purportedly suffered. Plaintiffs have failed to do so. Instead, plaintiffs have made allegations such as "many patients who ingested Neurontin suffered countless side effects, including attempting suicide, and in some cases, successful suicide." Girard Compl. ¶ 14. Nowhere do the plaintiffs allege whether they were among the purportedly "many patients" who suffered these countless, unnamed side effects. Plaintiffs' allegations simply assert in conclusory fashion that they were injured by Neurontin without any details regarding the circumstances of their use of Neurontin or any particular injury that they may have suffered. These barebones assertions will not suffice even under the relaxed Rule 8(a) pleading standard. See County of Suffolk v. Abbot Labs. (In re Pharm. Indus. Wholesale Price Litig.), Civ. A. No. 01-12257-PBS, 2004 U.S. Dist. LEXIS 21448, at *3 (D. Mass. Oct. 26, 2004).

Plaintiffs' failure to allege an injury not only means that have they failed to state each of their claims, but also that they have failed to demonstrate that they have Article III standing to bring suit in federal court. The Supreme Court has "repeatedly noted that in order to establish Article III standing, '[a] plaintiff must allege personal injury fairly traceable to the defendant's

allegedly unlawful conduct and likely to be redressed by the requested relief.'" <u>Dep't of Commerce v. U.S. House of Representatives</u>, 525 U.S. 316, 329 (1999) (citing <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984); <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992); <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 472 (1982)).  The plaintiffs in each of the four complaints have all failed to allege any individualized injury.  They have certainly not alleged how this injury can be traced to the defendants' alleged conduct.  Regardless of whether their pleading deficiency is considered an Article III standing issue or a failure to plead the substantive elements of their causes of action, the plaintiffs' lack of allegations regarding their injuries is fatal to all of their claims.

## II.    PLAINTIFFS' CLAIMS BASED ON ALLEGATIONS REGARDING MARKETING PRACTICES SHOULD BE DISMISSED

Plaintiffs allege that over the past decade defendants made misleading statements about Neurontin's safety and efficacy for off-label uses while marketing the drug in doctors' offices, at conferences or CME events, and through published articles.  <u>See, e.g.</u>, Accettullo Compl. ¶¶ 116-43; Girard Compl. ¶¶ 44-71.  Despite these allegations, plaintiffs fail to allege that any misrepresentations were made to them or their doctors or that there is any link between these supposedly improper marketing practices and their injuries.  These basic pleading defects are fatal to their claims based upon such alleged misconduct.

Plaintiffs have seized upon certain allegations of off-label marketing of Neurontin at particular events or places as a supposed basis to recover damages.  For instance, plaintiffs parrot allegations advanced in other complaints in this multidistrict litigation.  They also invoke Warner-Lambert's guilty plea to non-fraudulent instances of off-label promotion that occurred in 1995 and 1996, many years prior to the date of any injury for which a non-barred cause of action exists.  None of the plaintiffs, however, describes any improper marketing that was connected

either to him or her or to his or her doctors, or explains how the alleged marketing misconduct caused him or her to take the Neurontin that is allegedly responsible for his or her injuries.

The Girard complaint is illustrative. This complaint, like each of the other three, does not include any allegations concerning how its sixty-two plaintiffs came to be prescribed Neurontin. The complaint also does not state when these plaintiffs were prescribed Neurontin, who prescribed Neurontin for them, how long they took Neurontin, or even if they were on Neurontin at the time of their purported injuries. In fact, this complaint is completely silent as to the personal circumstances of the plaintiffs, and the medical decisions about their conditions that led their doctors to prescribe them Neurontin. Plaintiffs must allege a connection between each plaintiff's injuries and the complained of conduct. Plaintiffs do not even allege a connection between *any* plaintiff's injuries and the defendants' purported conduct.

For instance, the plaintiffs in <u>Anderson</u>, <u>Brewster</u>, and <u>Girard</u> generally allege that they relied on statements made by defendants about Neurontin's safety and efficacy for off-label uses.[3] Nowhere do they identify any statements that were made to either them or their physicians, or that they relied upon in taking or being prescribed Neurontin. Instead, they make the conclusory allegation that they "relied to their detriment" on defendants' representations. Girard Compl. ¶ 78. These plaintiffs also allege that "[d]efendants intended, or could reasonably have foreseen or expected, that these material misrepresentations and omissions would influence [p]laintiffs, and their doctors, in their decisions to purchase or prescribe Neurontin for unapproved uses" and that "[a]s a direct and proximate cause of [d]efendants' conduct, [p]laintiffs have suffered actual damages." <u>Id.</u> ¶¶ 77, 79. These types of bald assertions clearly do not suffice to state a claim.

---

[3] The plaintiffs in <u>Accettullo</u> do not assert a fraud claim and thus, have not alleged reliance.

Applying the fundamental principle that a complaint must allege a connection between any alleged misconduct and the complained of injury, a New York court recently dismissed a Neurontin consumer protection class action based on similar allegations of off-label promotion. See Baron v. Pfizer, Inc., Index No. 6429-04, slip op. at 7 (N.Y. Sup. Ct. May 2, 2006), attached as Murray Decl. Ex. 2. The court noted that "nothing within the four corners of the complaint alleges that the deceptive conduct in which defendants supposedly engaged . . . caused plaintiff's physician to prescribe Neurontin for her, and such conduct resulted in actual injury to plaintiff." Id. As a result, the Baron court dismissed the consumer protection, common law fraud, and unjust enrichment claims because the named plaintiff failed to allege any factual connection between the wide range of alleged misconduct and her injury. See id. at 8-10. The claims based on marketing practices brought by plaintiffs suffer from the same defect and should similarly be dismissed.

### A.    Plaintiffs Have Not Stated a Claim for Common Law Fraud

Plaintiffs' allegations are clearly insufficient to sustain a common law fraud cause of action. As an initial matter, most of their allegations involve off-label promotion, not fraudulent statements, see, e.g., Girard Compl. ¶¶ 25-28, 30-40, and thus are not actionable as fraud. Furthermore, plaintiffs have completely failed to identify any untrue representations that defendants made to them or their physicians. See, e.g., id. ¶¶ 45-53. Allegations that statements were made at certain times or places to unidentified physicians do not meet the plaintiffs' burden of alleging that statements were specifically made to their physicians. The plaintiffs have also not pled that their physicians relied on particular statements, or that their injuries resulted from these alleged misrepresentations. The Baron court, in fact, dismissed the plaintiff's common law fraud claim because "the complaint lacks specific allegations regarding whether plaintiff's

physician either received or relied upon any information in prescribing Neurontin for plaintiff."
Murray Decl. Ex. 2 at 9; see also Hernandez v. Ciba-Geigy Corp. USA, 200 F.R.D. 285, 292-93
(S.D. Tex. 2001) (dismissing fraud and consumer protection claims where the plaintiffs could not
allege that their doctors relied on a misstatement in prescribing Ritalin).

While such a wholesale failure to allege a causal connection between supposed
misrepresentations made by defendants and their injury would require dismissal under any
pleading standard, this is particularly true under Rule 9(b), which requires that, where a cause of
action is based on allegations of fraud or misrepresentation, the circumstances surrounding the
claim must be stated in detail.  As the Lupron court explained, plaintiffs must specifically plead
factual allegations describing how they came to rely on alleged misrepresentations or the extent
to which those misrepresentations influenced their behavior.  In re Lupron Mktg. & Sales
Practices Litig., No. 01-CV-10861, 2004 U.S. Dist. LEXIS 18512, at *14-15 (D. Mass. Sept. 16,
2004); see Basham v. Gen. Shale Prods. Corp., C.A. No. 92-1608, 1993 U.S. App. LEXIS 4876,
at *11 (4th Cir. Mar. 10, 1993) ("The weakness in appellants' argument is their failure to allege
any facts establishing their reliance on [defendant's] alleged misrepresentations."); Hearn v. R.J.
Reynolds Tobacco Co., 279 F. Supp. 2d 1096, 1114 (D. Ariz. 2003) ("Plaintiffs must allege with
particularity how [the decedent] knew of the various particular statements noted in the Complaint
and how she reasonably relied on them.").  It is also not sufficient for the plaintiffs to allege a
number of meetings purportedly held by defendants, without alleging that they or their
physicians attended these meetings or were exposed to any fraudulent statements at these
meetings.  It is clear, therefore, that plaintiffs have not adequately alleged a claim for common
law fraud, and such claims should be dismissed.

### B.    Plaintiffs Have Not Stated a Claim for Breach of Express Warranty

Plaintiffs' pleading defect is also fatal to their claims for breach of express warranty, which allege that "[p]laintiffs received express warranties from [d]efendants through their doctors, through MES' publications and through the written material included with the purchased Neurontin." Girard Compl. ¶ 93. To bring a claim for breach of express warranty a plaintiff must allege (i) that the defendant made promises to him or her amounting to an express warranty; (ii) breach of the warranty; (iii) causation; and (iv) damages. See Louis R. Frumer & Cary Stewart Sklaren, Products Liability § 9.02 (2d ed. 2006) (outlining the elements for breach of express warranty as a cause of action). In addition, a plaintiff must also allege that the express warranty was a part of the basis of the bargain. See id.

For various reasons, none of the plaintiffs has alleged viable claims for breach of express warranty. First, although plaintiffs claim that defendants expressly warranted that Neurontin would be safe and effective for off-label uses, "asserting that a product is 'safe and effective' is not sufficiently clear to create an express warranty." In re Meridia Prods. Liab. Litig., 328 F. Supp. 2d 791, 818 (N.D. Ohio 2004), aff'd, 447 F.3d 861 (6th Cir. 2006). The assertion that a prescription drug is safe and effective does not imply that it either will work for or is safe for every user, and thus it is too vague a term to constitute an express warranty. See Whittington v. Eli Lilly & Co., 333 F. Supp. 98, 100 (S.D. W. Va. 1971) (holding that there was no express warranty as to effectiveness of a drug where the supposed warranty made no claims of absolute effectiveness and tests showed that the drug did not work for every individual).

Furthermore, plaintiffs have not demonstrated the existence of an express warranty because they have not alleged that defendants made any statements about Neurontin's safety and efficacy for off-label uses that were communicated to them. "An express warranty is created by

11

a seller, inter alia, through 'any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain.'" Parkinson v. Guidant Corp., 315 F. Supp. 2d 741, 751 (W.D. Pa. 2004) (quoting 13 Pa. Cons. Stat. Ann. § 2313); see also Fields v. Melrose Ltd. P'ship, 439 S.E.2d 283, 284 (S.C. Ct. App. 1993); Ciba-Geigy Corp. v. Alter, 834 S.W.2d 136, 146 (Ark. 1992); Allied Fidelity Ins. Co. v. Pico, 656 P.2d 849, 850 (Nev. 1983). Consequently, plaintiffs' inability to allege that supposed warranties were ever made to them means that they cannot assert claims for breach of express warranty. See, e.g., Goodman v. PPG Indus., Inc., 849 A.2d 1239, 1243-44 (Pa. Super. Ct. 2004) (affirming the dismissal of breach of warranty claim where appellant did not allege that PPG ever made expressions of a warranty to the appellant), aff'd, 885 A.2d 982 (Pa. 2005); Ciba-Geigy Corp., 834 S.W.2d at 147 (holding that there was no express warranty because plaintiff had not read the statement at issue).

Finally, plaintiffs have not alleged that any supposed warranty formed a "basis of the bargain," and thus they do not have a viable cause of action for breach of express warranty. See, e.g., Parkinson, 315 F. Supp. 2d at 752 ("Here, plaintiffs have offered no proof that anyone read, heard, saw or knew of the statements . . . or that they were induced to buy the [product] based on these statements. Accordingly, there is no evidence that these statements became 'part of the basis of the bargain'"); Ciba-Geigy Corp, 834 S.W.2d at 147 (written express warranty could not be considered the "basis of the bargain" where the purchaser admitted to not reading the written warranty, and therefore plaintiff had no cause of action for any alleged breach). Courts in analogous factual circumstances have found that the plaintiffs did not have a claim for breach of express warranty where they did not specifically allege that their doctors based their medical decisions to prescribe a drug or install a medical device on representations made by the

manufacturer.  See, e.g., Yurcic v. Purdue Pharma, L.P., 343 F. Supp. 2d 386, 394-95 (M.D. Pa. 2004) (dismissing a breach of warranty claim where the plaintiff did not allege that he relied on a warranty in purchasing OxyContin); Alexander v. Smith & Nephew, P.L.C., 98 F. Supp. 2d 1276, 1286 (N.D. Okla. 2000) ("Plaintiff's claim for breach of express warranty fails, because Plaintiff has submitted no evidence that Dr. Hawkins relied on any of Defendant's representations.").  Plaintiffs' similar inability to plead that defendants made any misrepresentations about Neurontin that caused their doctors to prescribe it means that their breach of express warranty claims should also be dismissed.

### C.    Plaintiffs Have Not Stated a Claim for Negligence

Plaintiffs' negligence, negligence per se, and gross negligence claims are similarly deficient.  Each of these allegations requires a showing of causation, plainly missing from plaintiffs' complaints.  See, e.g., Henderson Specialties, Inc. v. Boone County, 971 S.W.2d 234, 236-37 (Ark. 1998) (discussing elements of negligence claims); Scialabba v. Brandise Construction Co., 921 P.2d 928, 930 (Nev. 1996) (same); Kelly v. St. Mary Hosp., 778 A.2d 1224, 1226 (Pa. Super. Ct. 2001) (same); Stevens v. Allen, 536 S.E.2d 663, 665 (S.C. 2000) (same); Carter v. Montgomery, 296 S.W.2d 442, 444-45 (Ark. 1956) (discussing elements of negligence per se); Anderson v. Baltrusaitis, 944 P.2d 797, 799 (Nev. 1997) (same); Lux v. Gerald E. Ort Trucking, Inc., 887 A.2d 1281, 1288 (Pa. Super. Ct. 2005) (same); Whitlaw v. The Kroger Co., 410 S.E.2d 251, 253 (S.C. 1991) (same).  Plaintiffs have alleged that the defendants were negligent in the marketing and promotion of Neurontin, and that defendants failed to warn plaintiffs about alleged dangers of Neurontin.  See Accettullo Compl. ¶ 145; Girard Compl. ¶¶ 83, 84.  Plaintiffs do not, however, allege that these purportedly negligent acts caused their injuries.  As stated above, plaintiffs' complaints are completely lacking factual allegations to

13

suggest a causal link between any behavior on the part of the defendants and any injury suffered

by the plaintiffs.  This deficiency requires that plaintiffs' claims of negligence be dismissed.

## III.     THE MULTI-PLAINTIFF PRODUCT LIABILITY COMPLAINTS
##            SHOULD BE SEVERED INTO INDIVIDUAL ACTIONS

Any of the plaintiffs' claims which survive this motion to dismiss should be severed into

individual actions because the claims of numerous plaintiffs with unrelated claims have been

improperly joined.  Plaintiffs bringing the Multi-Plaintiff Product Liability Complaints have been

joined in violation of both the governing federal rule and the corresponding state rules because

their injuries do not arise out of the "same transaction, occurrence, or series of transactions or

occurrences."  Fed. R. Civ. P. 20(a) ("All persons may join in one action as plaintiffs if they

assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the

same transaction, occurrence, or series of transactions or occurrences and if any question of law

or fact common to all these persons will arise in the action."); see Ark. R. Civ. P. 20(a) (same);

Nev. R. Civ. P. 20(a) (same); Pa. R. Civ. P. 2229(a) (same); S.C. R. Civ. P. 20(a) (same); see,

e.g., In re Prempro Prods. Liab. Litig., 417 F. Supp. 2d 1058, 1060 (E.D. Ark. 2006) (finding in a

consumer fraud case that plaintiffs had been misjoined where the only thing common among

plaintiffs was that they had taken a hormone replacement therapy drug, but otherwise were

residents of different states, with different doctors, and were prescribed the drug for different

durations of time, in different dosages, and suffered different alleged injuries); In re Orthopedic

Bone Screw Prods. Liab. Litig., MDL 1014, 1995 WL 428683, at *2 (E.D. Pa. July 17, 1995)

(requiring "at a minimum that the central facts of each plaintiff's claim arise on a somewhat

individualized basis out of the same set of circumstances" and finding that "there are many

differences between the unique histories of each plaintiff" in ruling that plaintiffs had been

misjoined).  Courts finding that plaintiffs have been misjoined drop the improperly joined

plaintiffs from the case and require them to file new complaints in the appropriate jurisdiction.

See, e.g., Prempro, 417 F. Supp. 2d at 1061 (dropping misjoined plaintiffs and allowing them

thirty days to file a new complaint in a proper venue); Orthopedic Bone Screw, 1995 WL

428683, at *2-3 (ruling that improperly joined plaintiffs must be dropped from the case),

enforced, 1997 WL 305256, at *1 (E.D. Pa. May 20, 1997) (dropping misjoined plaintiffs and

requiring them to file new complaints in a proper venue and with proper joinder).  To the extent

that any of plaintiffs' claims remain after this Court's ruling on this motion to dismiss, the Court

should sever these four multi-plaintiff complaints into 225 individual actions, one for each

plaintiff.

## CONCLUSION

For all of the foregoing reasons, the Multi-Plaintiff Product Liability Complaints should

be dismissed with prejudice.

Dated: August 11, 2006

<div style="margin-left:40%">

DAVIS POLK & WARDWELL

By:     /s/ James P. Rouhandeh
         James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

        - and -

HARE & CHAFFIN

By:     /s/ David B. Chaffin
         David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110

</div>

(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served
pursuant to Case Management #3 on August 11, 2006.


By:     /s/ David B. Chaffin
        David B. Chaffin

16