EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NEURONTIN ANTITRUST LITIGATION | : : |
| JANE SALL and RICHARD BRAUSE, on behalf of themselves and all others similarly situated, | : : : MDL Docket No. 1479 : : Civil Action No. 02-3988(JCL) |
| Plaintiffs, | : |
| v. | : |
| PFIZER INC. and WARNER-LAMBERT COMPANY, | : : : |
| Defendants. | : |
| KATHY ZAFARANA, on behalf of herself and all others similarly situated, | : : : |
| Plaintiff, | : Civil Action No. 02-2741(JCL) |
| v. | : MEMORANDUM & ORDER |
| PFIZER INC. and WARNER-LAMBERT COMPANY, | : : : |
| Defendants. | : |

LIFLAND, District Judge

_____These cases are two of approximately twenty purported class actions that have been centralized in this Court by order of the Judicial Panel on Multidistrict Litigation (the "MDL Panel") in which consumers and others allege that Defendants Pfizer Inc. and Warner-Lambert Company ("Warner-Lambert" or "Defendants") wrongfully prevented competitors from marketing generic versions

of gabapentin, sold by Defendants under the name Neurontin®.  Before the Court are the Motions of Plaintiffs Jane Sall and Richard Brause, on behalf of themselves and others similarly situated, and Plaintiff Kathy Zafarana, on behalf of herself and others similarly situated, to remand these cases to state court for lack of federal subject-matter jurisdiction.  Defendants oppose remand in both cases.  For the foregoing reasons, Plaintiffs' Motions will be denied.

## BACKGROUND

Gabapentin is the generic name for a drug product that is widely used to treat epilepsy, pain, and neurodegenerative diseases.  Relevant here are three gabapentin patents held by Defendants: U.S. Patent No. 4,894,476 (the "'476 patent"), relating to a monohydrate form of gabapentin; U.S. Patent No. 5,084,479 (the "'479 patent"), relating to the use of gabapentin to treat neurodegenerative diseases; and U.S. Patent No. 6,054,482 (the "'482 patent"), relating to a form of gabapentin that contains less than a specified amount of a lactam impurity.

### A.    Sall

On April 2, 2002, Plaintiffs Jane Sall and Richard Brause filed a state-law consumer class action in the Superior Court of the State of California for the County of San Francisco asserting violations of the California Business & Professions Code, §§ 17200 et seq. ("Unfair Practices Act") arising out of unfair,

-2-

unlawful, and fraudulent business practices directed at keeping competing generic

drug manufacturers from entering the California (and national) market to compete

with Defendants' brand name drug Neurontin®.  Specifically, Plaintiffs allege that

Defendants acted improperly in listing certain Neurontin® patents in what is

known as the Food and Drug Administration's "Orange Book" because the patents

"do not claim or cover the form of gabapentin marketed by Defendants as

Neurontin," and by filing "sham patent infringement lawsuits against horizontal

generic competitors."  Compl. ¶¶ 5-7.  The Complaint asserts the following two

causes of action: (1) Violation of California's Unfair Trade Practices Act Based

Upon Illegal Anti-Trust Activity and (2) Equitable Relief from Unjust Enrichment

by Defendants.  Plaintiffs seek equitable relief in the form of restitution and/or

disgorgement, a permanent injunction enjoining Defendants' continuing violations

of the Act, and attorneys' fees/costs.  Id. at 21-22.

On or about May 2, 2002, Defendants removed the action to the Northern

District of California, pursuant to 28 U.S.C. § 1446, asserting both diversity and

federal-question jurisdiction.  Plaintiffs then filed a motion in the Northern District

of California to remand the action to state court.  Thereafter, the case was

transferred to this Court pursuant to an order of the MDL Panel.  Defendants then

opposed Plaintiffs' Motion to Remand.

### B.   Zafarana

On May 7, 2002, Plaintiff Kathy Zafarana filed an action in the Superior Court of New Jersey alleging violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. (hereinafter the "New Jersey CFA" or the "Act") and New Jersey common law, on behalf of a nation-wide class of end-users who purchased Neurontin®. On May 29, 2002, Zafarana filed a First Amended Class Action Complaint. The Amended Complaint asserts claims for violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq., Am. Compl. ¶¶ 122-30 and for unjust enrichment, id. ¶¶ 131-41. Plaintiff seeks declaratory relief, statutory damages, restitution, disgorgement, constructive trust, an injunction to prevent further alleged damage to class members, attorneys' fees, and costs. Id. at 26-27.

The Amended Complaint alleges the following wrongdoing on the part of Defendants: (1) "Even though the '476 Patent, the '479 Patent and the '482 Patent do not claim or cover the form of gabapentin marketed by Defendants as Neurontin, Defendants have listed these patents for Neurontin in the Orange Book to prevent or delay the FDA from approving generic versions of Neurontin," id. ¶ 62; (2) "Defendants have filed sham patent infringement lawsuits against horizontal generic competitors seeking to manufacture and market generic formulations, even though Defendants knew that these generic formulations of

Neurontin did not infringe any patent owned by or licensed to Defendants," id. ¶5;
and (3) Defendants used their sales force "to actively, and illegally, promote off-
label uses of Neurontin," id. ¶ 65. As a result of this conduct, Plaintiff alleges that
she and the "class" are "being denied the opportunity to pay for lower-cost generic
versions of Neurontin, paying artificially high prices for Neurontin." Id. ¶ 127.
She further complains that she and the "class" are "being denied material
information regarding the circumstances surrounding their purchase of Neurontin
so that they could make an informed decision as to whether to purchase Neurontin,
an alternative therapy or nothing at all." Id.

Defendants removed this action on June 6, 2002, asserting federal-question
jurisdiction. Plaintiff then moved for remand, arguing that the claims asserted do
not "arise under" federal law because no violation of any federal statute has been
alleged and the claims are founded on the New Jersey CFA and the common law;
because Plaintiff's rights to relief under state law do not require resolution of a
substantial question of federal law; and because claims concerning off-label
promotion are far removed from the pending patent litigation.

By Order of then-Magistrate Judge Chesler dated October 29, 2002, these
cases were stayed pending resolution of motions for summary judgment served,
filed, or pending in the related patent litigation. Exempted from the stay were the

instant motions to remand.

## DISCUSSION

The Court must construe the removal statutes strictly and resolve all doubts in favor of remand. Shamrock Oil and Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941); Brown v. Francis, 75 F.3d 860, 865 (3d Cir. 1996); Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985); North Jersey Savings & Loan Assoc. v. Fidelity and Deposit Co. of Md., 125 F.R.D. 96, 100 (D.N.J. 1988). The party seeking removal bears the burden of showing the propriety of removal by establishing the existence of federal subject-matter jurisdiction. State of New Jersey v. City of Wildwood, 22 F. Supp. 2d 395, 400 (D.N.J. 1998) (citing Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 359 (3d Cir. 1995); Gateway 2000, Inc. v. Cyrix Corp., 942 F. Supp. 985, 989 (D.N.J. 1996)).

I.     **Federal-Question Jurisdiction**

   A.     **Relevant Law**

   "A district court's federal-question jurisdiction . . . extends over 'only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law' in that 'federal law is a necessary element of one of the well-pleaded . . . claims.'" Christianson v. Colt

Indus. Operating Corp., 486 U.S. 800, 808 (1988). "It is sufficient that the merits of the litigation turn on a substantial federal issue that is 'an element, and an essential one, of the plaintiff's cause of action.'" U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 389 (3d Cir. 2002). A defense cannot create federal-question jurisdiction. Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for So. Cal., 463 U.S. 1, 14 (1983). Moreover, for a patent law issue appearing on the face of a complaint to raise a substantial question of federal law sufficient to create federal-question jurisdiction, the patent law issue must be necessary to every theory under at least one claim. Christianson, 486 U.S. at 810.

A plaintiff cannot avoid removal by failing to plead necessary federal questions. Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998) (citing Franchise Tax Bd. of Cal., 463 U.S. at 22). "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." Id.

**B.    Parties' Arguments**

**1.    Sall**

Plaintiffs seek to have this matter remanded, arguing that federal law is secondary to the wrongs alleged under state law and that federal law would only be invoked, if at all, in a defensive posture. That is, Defendants presumably will

-7-

assert that the patents were valid and that infringement suits were appropriately filed. Plaintiffs further maintain that allegations concerning Defendants' "bad faith" conduct in filing patents in the Orange Book and misusing them to file infringement suits to keep cheaper generic Neurontin® from the market defeats federal-question jurisdiction because that theory does not require testing of the patent. Rather, recovery turns on whether Defendants had an "impure heart" when they filed patents in the Orange Book and then launched patent infringement suits against Abbreviated New Drug Application ("ANDA") filers based on those patents.

Defendants counter that federal-question jurisdiction exists because resolution of the claim that they have unlawfully precluded potential competitors from marketing generic versions of Neurontin® turns on substantial questions of federal patent law. Defendants argue that the sham litigation allegation depends on a determination that Defendants' patent infringement suits are objectively baseless and the improper listing allegation depends on a determination that a claim of patent infringement could not reasonably be asserted against an ANDA filer. Defendants add that Plaintiffs offer no alternative theories of liability that do not depend on patent law.

-8-

2.    <u>Zafarana</u>

Plaintiff Zafarana argues that allegations concerning Defendants acting in

bad faith when they filed patents in the Orange Book and then misusing them to

file infringement suits to keep cheaper generic Neurontin® from the market do not

involve Defendants' claim of federal-question jurisdiction. The argument goes

that because Plaintiff may establish liability under the New Jersey CFA by

demonstrating that Defendants' conduct was unconscionable, deceptive, or

fraudulent, as those terms are defined by New Jersey courts–without resort to

testing the validity of Defendants' patents–there is no federal-question

jurisdiction. Zafarana maintains that all she must establish to prevail is "the

improper insertion of the patents in the Orange Book." Pl.'s Mem. in Support of

Remand at 10.

More recently, Zafarana sought leave to supplement "the record" with

evidence concerning Warner-Lambert's plea agreement in a suit brought by a

former employee under the federal False Claims Act. The employee alleged that

Warner-Lambert unlawfully marketed and promoted Neurontin® to pharmacists

and physicians for non-FDA approved uses. Zafarana argues that "[a] compelling

portion of this case sounds in the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-

1, et seq., and . . . that the defendants illegally marketed the drug Neurontin for

off-label, unapproved uses." Levinson Cert. ¶ 5. The argument continues that

Warner-Lambert admitted to the conduct alleged by Plaintiff by pleading guilty to

criminal charges and by agreeing to pay $430 Million in monetary penalties

arising from its illegal and fraudulent promotion of unapproved uses for

Neurontin®, and such conduct deprived doctors of proper information upon which

to base their treatment decisions and instead led them to make decisions premised

upon misinformation or inducements provided by Warner-Lambert. Id. ¶ 6.

Plaintiff maintains that this information is relevant insofar as it validates the illegal

promotion claim and "necessarily marginalizes any federal question issues in this

case." Id. ¶ 7.

Defendants oppose Zafarana's request to supplement the record, arguing

that the plea agreement is totally irrelevant to the motion for remand. The

argument goes that this Court has subject-matter jurisdiction because it must

address substantial questions of federal patent law to resolve Plaintiff's sham

litigation and Orange Book claims. That is so irrespective of Plaintiff's alleged

off-label promotion of Neurontin®. Defendants add that even if Plaintiff's

allegations about off-label marketing enabled certain class members to recover

damages for off-label sales, those allegations would not permit recovery of

damages for all sales of Neurontin® attributable to the difference in price between

-10-

the branded product and a potential generic competitor. The latter is recoverable only if Plaintiff can show that Warner-Lambert's patent litigation was a sham. Warner-Lambert thus maintains that Plaintiff's allegations concerning off-label promotion do not constitute an alternative theory that would allow the Court to award the recovery Plaintiff seeks without having to come to grips with issues of patent law.

**C.    Analysis**

**1.    Motion for Leave to "Supplement the Record"**

The Court first turns to Zafarana's request for leave to supplement the record on its Motion to Remand. Zafarana's allegations of Warner-Lambert's efforts to promote off-label use of Neurontin® are set forth in the Amended Complaint. See e.g., Am. Compl. ¶ 65, 125. Evidence that bolsters or validates those allegations is not properly considered at this juncture; it is simply not relevant to whether, based on the face of the Amended Complaint, Plaintiff's claims arise under federal law. Accordingly, Zafarana's request for leave to supplement the record by way of evidence of Warner-Lambert's promotion of off-label use of Neurontin® is denied.

**2.    "Arising Under" Jurisdiction**

The complaints herein do not squarely assert a federal cause of action.

-11-

Thus, there is no federal-question jurisdiction under the first prong of

Christianson. This Court must next determine whether the claims "arise under"

federal law. Several courts have held in favor of remand in cases brought against

drug manufacturers for preventing generic competition. See, e.g., Ciprofloxacin

Hydrochloride Antitrust Litig., 166 F. Supp. 2d 740 (E.D.N.Y. 2001) (allegations

of collusion to keep generic drug off the market in violation of California's Unfair

Competition Act); McGrew v. Schering-Plough Corp., No. 01-2311, 2001 WL

950790 (D. Kan. Aug. 6, 2001) (allegations of conspiracy to prevent competition

in violation of Kansas law); Altman v. Bayer Corp., 125 F. Supp. 2d 666

(S.D.N.Y. 2000) (allegations of collusion between name-brand manufacturer and

potential manufacturer of generic equivalent to keep generic version off the

market in violation of New York law); Drug Mart Pharmacy Corp. v. Abbott

Labs., No. 00-631 (E.D.N.Y. Aug. 28, 2000) (allegations of sham litigation and

illegal agreements did not "arise under" patent law for purposes of federal-

question jurisdiction). See also In re Cardizem CD Antitrust Litig., 90 F. Supp. 2d

819 (E.D. Mich. 1999) (allegations of an "impure heart" when filing patent

infringement suit did not turn on substantial question of federal law sufficient to

create federal-question jurisdiction); Aetna United States Healthcare v. Hoechst

Aktiengesellschaft, 54 F. Supp. 2d 1042 (D. Kan. 1999) (allegations that

-12-

defendants acted solely to unlawfully delay and prevent competition turned on whether defendant had an "impure heart" when infringement suits were filed and not on validity of patents).

Other courts have concluded that there is federal-question jurisdiction where defendant brand and generic drug makers allegedly conspired to prop up a patent already held to be invalid in order to block generics from the market. E.g., In re Tamoxifen Citrate Antitrust Litigation, 222 F. Supp. 2d 326 (E.D.N.Y. Aug. 26, 2002); Koonan v. Barr Laboratories, Inc., No. C-01-0779 (N.D. Cal. June 25, 2001). In re Tamoxifen Citrate Antitrust Litigation involved allegations that a defendant patentee and defendant generic drug manufacturer entered into an agreement pursuant to which the patentee paid the generic manufacturer over twenty million dollars in return for the generic manufacturer (1) dropping its challenge to validity of the patent that was already found unenforceable and (2) agreeing not to market a generic version of the patented product until expiration of the patent. The court concluded that there was federal-question jurisdiction on the basis that "a [valid] patent holder is permitted to maintain his patent monopoly through conduct permissible under the patent laws," and, therefore, the plaintiffs were required to show that the defendants' conduct was impermissible under the patent laws. Id. at 331.

-13-

_____Still another court concluded that federal-question jurisdiction existed on

facts nearly identical to this case. In Stuart v. Pfizer Inc., C.A. No. 2:02-2511, at

*15 (W.D. Tenn. Oct. 2, 2002), the plaintiffs alleged that Pfizer and Warner-

Lambert engaged in anti-competitive conduct by submitting patents on formulas

not equivalent to Neurontin® for inclusion in the FDA's Orange Book and by

filing frivolous patent infringement lawsuits against potential competitors.

Plaintiffs asserted the following claims for relief:

- violation of Tennessee Unfair Trade Practices Act, Tenn. Code Ann. § 47-25-101 et seq.;
- violation of Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq.;
- common law monopolization of the market for Neurontin; and
- unjust enrichment as a result of anti-competitive conduct.

The court concluded that federal-question jurisdiction existed because "[a]

determination of sham litigation requires first and foremost resolution of an

essential question of federal patent law," and that plaintiff had failed "to offer an

alternative theory to support its claims . . . which would not require resolution of

federal patent law." Id. at 15-16. The court reasoned that even if a patent holder

files an infringement suit with an "impure heart," as Plaintiffs claim here, a

determination that the patent at issue is valid undermines such a claim of

fraudulent litigation and legitimizes the patent holder's efforts to market its

-14-

product. Id. at 15 (citing Prof'l Real Estate Investors, Inc. v. Columbia Pictures

Indus., Inc., 508 U.S. 49, 59 (1993)). A claim of sham litigation, without some

other anti-competitive conduct, was held not to justify remand. In so holding, the

court distinguished cases involving agreements, stipulations, or consent judgments

signaling defendants' collusion to maintain a monopoly.

Plaintiffs here seek relief pursuant to California's Unfair Practices Act, New

Jersey CFA, and the common law. To establish liability under California's Unfair

Practices Act, a plaintiff may prove that a defendant's conduct was unlawful,

unfair, or deceptive. Cel-Tech Communications, Inc. v. Los Angeles Cellular

Tele. Co., 20 Cal.4th 163, 180 (1999). Whether a given business practice is

"unfair" under California law broadly "involves an examination of [that practice's]

impact on its alleged victim balanced against the reasons, justification, and

motives of the alleged wrongdoer." Podolosky v. First Healthcare Corp., 50 Cal.

App. 4th 632, 647 (1996). An "unlawful" business practice in violation of §17200

is "anything that can properly be called a business practice and that at the same

time is forbidden by law." People v. McKale, 25 Cal.3d 626, 634 (1979) (quoting

Barquis v. Merchants Collection Ass'n, 7 Cal.3d 94, 113 (1972)). Finally, the

deceit prong requires a showing of a likelihood of deception. Committee on

Children's Television, Inc. v. General Foods Corp., 35 Cal.3d 197, 210-11 (1983).

-15-

Similarly, relief pursuant to the New Jersey CFA turns on "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact." N.J.S.A. §56:8-1 et seq.

Plaintiffs charge Defendants with attempting to maintain an illegal monopoly that was broader than that to which their patents, even if valid, entitled them. Defendants argue that Plaintiffs' sham litigation claims–as alleged in the Complaints–turn on whether, as a matter of federal patent law, there was a reasonable basis for the patent infringement actions brought by Defendants against potential generic competitors. In other words, this Court cannot determine that the infringement actions are sham without (at the very least) resolving questions of patent infringement (or validity) against the patentee. Then, the Court must also examine whether the infringement actions were instituted without regard to the merits of the underlying cases.[1]

Defendants further urge that the theory of liability based on alleged improper listing of patents in the Orange Book requires resolution of an issue of federal patent law insofar as it turns on the provision that

---

[1] As all litigators know, an objectively baseless lawsuit is far different from a lawsuit that did not turn out to be a winner.

-16-

> [t]he applicant shall file with the application the patent number and
> the expiration date of any patent which claims the drug for which the
> applicant submitted the application or which claims a method of using
> such drug and with respect to which a claim of patent infringement
> *could reasonably be asserted* if a person not licensed by the owner
> engaged in the manufacture, use or sale of the drug.

21 U.S.C. § 355(b)(1) (emphasis added). A determination on whether a claim of

patent infringement could "reasonably be asserted" against an ANDA filer,

according to Defendants, invokes federal-question jurisdiction.

Finally, as to Zafarana's allegations concerning Warner-Lambert's

promoting off-label use of Neurontin®, Warner-Lambert challenges the

sufficiency of Plaintiff's allegations of harm due to such conduct. Warner-

Lambert also argues that the off-label promotion is wholly separate from

Zafarana's principal claim that Defendants improperly prevented all those who

purchased Neurontin®—even for approved uses—from having access to cheaper

generic versions. It follows, according to Defendants, that the off-label promotion

is not an alternate theory that would allow the Court to decide claims of anti-

competitive conduct without resolving substantial issues of patent law.

This Court concludes that there is federal-question jurisdiction in both Sall

and Zafarana. The Court is satisfied that the state-law anti-competition claims, as

alleged by Plaintiffs, cannot be resolved without deciding substantial issues of

federal law, i.e., the validity, enforceability, and infringement of defendants'

-17-

patents. Defendants' ability to stave off competition stands or falls on the scope of its patents and the rights flowing therefrom. A determination of the scope of Defendants' patents is a necessary part of Plaintiff's claims in the first instance and not, as Plaintiffs argue, merely invoked as a defense. In short, the legitimacy of Defendants' conduct depends directly on the scope of the patents. The propriety of listing patents in the Orange Book likewise depends directly on the scope of the claims of the patents. Thus, this Court agrees with the reasoning and result of Stuart v. Pfizer Inc.

Finally, the Court concludes that allegations concerning promotion of off-label use are qualitatively distinct so as not to create an alternate theory of recovery for Plaintiffs' claims relating to generic competition.[2]

## II.   Diversity Jurisdiction

The Court will next consider whether there is diversity jurisdiction in Sall. Diversity jurisdiction exists where there is diversity of citizenship and "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The Supreme Court has interpreted 28 U.S.C. § 1332's "matter in controversy" language as requiring that each plaintiff's claim

---

[2] The Court does not express an opinion whether allegations concerning promotion of off-label use of Neurontin® are sufficient to state a claim upon which relief may be granted.

-18-

satisfy the jurisdictional amount. <u>Zahn v. Int'l Paper Co.</u>, 414 U.S. 291, 294-95

(1973); <u>Snyder v. Harris</u>, 394 U.S. 332, 336-37 (1969).

Defendants urge that there is diversity jurisdiction here because Plaintiffs

are residents of California, Defendants are Delaware corporations with their

principal places of business in New York and New Jersey, and because the cost to

Defendants of an injunction compelling them to discontinue multiple major patent

infringement litigations would far exceed $75,000.  Defendants initially requested

that the Court stay its consideration of this issue because the United States

Supreme Court had granted a petition for certiorari in <u>Ford Motor Co. v.</u>

<u>McCauley</u>, 534 U.S. 1126 (2002), concerning

> [w]hether the cost of the defendant of complying with an injunction
> sought by a plaintiffs' class may satisfy the amount-in-controversy
> requirement of the diversity statute, where such compliance would
> cost the defendant more than the $75,000 minimum whether it
> covered the entire class or any single member of the class.

However, the Supreme Court subsequently withdrew certiorari as "improvidently

granted." <u>Ford Motor Co. v. McCauley</u>, 537 U.S. 1 (2002).  This Court thus turns

to Third Circuit law for guidance on this issue.

Claims of each class member—and not merely each named plaintiff—must

satisfy the jurisdictional amount.  In <u>Packard v. Provident Nat'l Bank</u>, 994 F.2d

1039, 1045 (3d Cir. 1993), the Third Circuit reaffirmed that "[i]t is well settled

-19-

### III.   Costs

Lastly, Plaintiff Zafarana requests that "just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal" be assessed against Defendant on the theory that removal was not "fairly supportable." <u>Int'l Brotherhood of Elec. Workers, Local 640 v. Dueck</u>, 148 F. Supp. 2d 955, 964 (D. Ariz. 2000). That request is denied, consistent with this Court's conclusion that removal was proper.

### <u>CONCLUSION</u>

For the foregoing reasons, the motions to remand these cases for lack of subject-matter jurisdiction will be denied.

Accordingly, IT IS on this 7th day of January 2005,

ORDERED that the Motion of Plaintiffs Jane Sall and Richard Brause, on behalf of themselves and others similarly situated, for leave to supplement the record is denied; and it is further

ORDERED that the Motion of Plaintiffs Jane Sall and Richard Brause, on behalf of themselves and others similarly situated, to remand for lack of subject-matter jurisdiction is denied; and it is further

ORDERED that the Motion of Plaintiff Kathy Zafarana, on behalf of herself and others similarly situated, to remand for lack of subject-matter

jurisdiction is denied; and it is further

ORDERED that the Motion of Plaintiff Kathy Zafarana, on behalf of

herself and others similarly situated, to award costs and expenses incurred as a

result of removal is denied.

/s/ John C. Lifland, U.S.D.J.