UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:  NEURONTIN MARKETING,               :
        SALES PRACTICES, AND               :
        PRODUCTS LIABILITY LITIGATION      :   MDL Docket No. 1629
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Master File No. 04-10981
                                           :
THIS DOCUMENT RELATES TO:                  :
                                           :   Judge Patti B. Saris
                                           :
ALL MARKETING AND                          :
SALES PRACTICES ACTIONS                    :
                                           :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DEFENDANTS' RESPONSE TO
## PLAINTIFFS' OBJECTIONS TO DISCOVERY ORDER NO. 3

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

STANDARD OF REVIEW ................................................................................................. 1

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ................................................................................................................ 4

ARGUMENT ..................................................................................................................... 6

I.      PLAINTIFFS MISSTATE DEFENDANTS' ARGUMENTS SUPPORTING
        A PROTECTIVE ORDER ..................................................................................... 6

II.     PLAINTIFFS SHOULD BE PERMITTED DISCOVERY ONLY THROUGH
        MAY 31, 2001 ....................................................................................................... 9

        A.      Plaintiffs Are Only Entitled to Discovery Relating to Surviving Claims
                or Defenses in the Second Amended Complaints .................................... 9

        B.      Plaintiffs Fail To Allege Any False Statements or Fraudulent Omissions
                Occurring After May 31, 2001 ............................................................... 12

                1.      The Second Amended Complaints Contain No Allegations
                        of Fraud After May 31, 2001 ..................................................... 12

                2.      This Court Should Refuse To Consider the Additional Evidence
                        Described by Plaintiffs in Their Objections .............................. 13

        C.      Plaintiffs' Discovery Requests Would Unduly Burden Defendants ...................... 17

III.    PLAINTIFFS DISTORT JUDGE SARIS'S RULING IN THE *FRANKLIN* ACTION
        AND THE RULINGS BY JUDGE RAKOFF AND JUDGE ROSENWASSER ARE
        INAPPLICABLE TO THE DISCOVERY DISPUTE BEFORE THE COURT ............... 18

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

### Cases

**Page**

In re Ashworth, Inc. Sec. Litig., No. 99-CV-121,
    2002 WL 33009225 (S.D. Cal. May 10, 2002) ........................................................ 11

BG Real Estate Servs., Inc. v. Am. Equity Ins. Co., No. Civ. A. 04-3408,
    2005 WL 1309048 (E.D. Pa. May 18, 2005) .......................................................... 11

Bonilla v. Volvo Car Corp., 150 F.3d 62 (1st Cir. 1998) ........................................... 15

Borden v. Sec'y of Health & Human Servs., 836 F.2d 4 (1st Cir. 1987) ................. 2, 14

Collens v. City of New York, 222 F.R.D. 249 (S.D.N.Y. 2004) ................................. 11

Conboy v. Edward D. Jones & Co., No. 303-CV-2352P,
    2004 WL 1792372 (N.D. Tex. Aug. 10, 2004), aff'd,
    140 F.App'x 510 (5th Cir. 2005), cert. denied, 126 S.Ct. 737 (2005) ................... 11

Gill v. Gulfstream Park Racing Ass'n, 399 F.3d 391 (1st Cir. 2005) ......................... 17

Hart v. Verizon Commc'ns Inc., No. Civ. A. 02-11483,
    2003 WL 1798184 (D. Mass. Apr. 4, 2003) .......................................................... 12

Hayduk v. Lanna, 775 F.2d 441 (1st Cir. 1985) ......................................................... 11

Johnson v. Mundy Indus. Contractors, Inc., No. 7:01-CV-99-BO3,
    2002 WL 31464984 (E.D.N.C. Mar. 15, 2002) ..................................................... 11

Washington Legal Found. v. Friedman, 13 F. Supp. 2d 51 (D.D.C. 1998),
    vacated on other grounds by 202 F.3d 331 (D.C. Cir. 2000) ................................. 15

Wayne Inv., Inc. v. Gulf Oil Corp., 739 F.2d 11 (1st Cir. 1984) ............................... 13

### Statutes and Rules

21 C.F.R. § 312.7 ....................................................................................................... 16

Fed. R. Civ. P. 9 (b) .................................................................................................... 16

**Page**

Fed. R. Civ. P. 26 .............................................................................................................. 2, 13

Fed. R. Civ. P. 26(b)(1) ......................................................................................................... 7

Fed. R. Civ. P. 72(a) .............................................................................................................. 1

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and the advisory committee note thereto, Defendants Pfizer Inc. and Warner-Lambert Company respectfully submit this response to the objections of the Class Plaintiffs and Coordinated Plaintiffs (collectively, "plaintiffs") to Discovery Order No. 3, entered by Magistrate Judge Leo T. Sorokin on July 18, 2006 (Docket # 393) (the "Order").[1]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 72(a) states that in deciding objections to the order of a magistrate judge on a nondispositive matter, "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."

## PRELIMINARY STATEMENT

Plaintiffs objections to Magistrate Judge Sorokin's Discovery Order No. 3 should be overruled because plaintiffs cannot demonstrate that the order was clearly erroneous or contrary to law. Magistrate Judge Sorokin entered the order after extensive briefing (totaling over 300 pages of briefs and exhibits) and two lengthy oral arguments. Unable to point to any error in the Order arising from arguments or facts presented to Magistrate Judge Sorokin, plaintiffs assert for the first time new arguments based on documents that were not before the magistrate. For this reason alone, plaintiffs' objections should be overruled. In their response to defendants' objections to the Magistrate Judge's report and recommendation, plaintiffs argued that the Court should not consider certain documents that defendants relied upon in their objections to the

---

[1] Plaintiffs suggest that Rule 72(a) of the Federal Rules of Civil Procedure does not provide for a response to objections on nondispositive matters. Plaintiffs' Objections to Discovery Order No. 3 (Docket # 411) ("Pls.' Objs.") at 1. The advisory committee note to the Rule, however, states that "[i]t also is contemplated that a party who is successful before the magistrate will be afforded an opportunity to respond to objections raised to the magistrate's ruling."

report.  The Court accepted this argument, stating "The Court will not consider any objections which raise new issues not put before the Magistrate Judge in the original briefing on the motion to dismiss."  Memorandum and Order, dated June 12, 2006 (Docket # 356) ("6/12/06 Order") at 2 (citing <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987)).  The additional evidence and allegations advanced by plaintiffs in their objections to Discovery Order No. 3 also raise a new issue not before the Magistrate Judge, and this Court should similarly refuse to consider them.

Even if this Court were to consider plaintiffs' new arguments based on matters not before the magistrate judge, these arguments do not justify modification of the Order.  Rule 26 of the Federal Rules of Civil Procedure has been amended to make clear that discovery should proceed only in relation to the claims and defenses of the parties, a narrower standard for discovery than the broad "subject matter" standard it replaced.  Here, the scope of discovery should be tailored to the claims and allegations that survived the motions to dismiss.  As an initial matter, the magistrate ruled that discovery should not be extended beyond May 31, 2001, because after a careful review of the complaints he determined that May 19, 2001 was the last date of any relevant conduct alleged by plaintiffs.  The handful of documents that plaintiffs say entitles them to additional discovery were not made part of the complaints, even though they were produced in advance of the filing date of the amended complaints[2] and even though plaintiffs knew that the

---

[2] The second amended complaints were filed on June 30, 2006.  <u>See</u> Second Amended Class Action Complaint (Docket # 379); Second Coordinated Amended Complaint (Docket # 380).  The documents discussed in plaintiffs objections' to Discovery Order No. 3 were produced on March 24, 2006 (documents stamped Pfizer_CTaylor) and April 10, 2006 (documents stamped Pfizer_LTive).  <u>See</u> Letter from Kathryn Carney Cole to Kenneth B. Fromson, dated March 24, 2006 (attached to Declaration of Matthew B. Rowland, dated August 18, 2006 ("Rowland Decl.") Ex. A); Letter from Kathryn Carney Cole to Kenneth B. Fromson, dated April 10, 2006 (Rowland Decl. Ex. B) (note that a signed copy of this letter is unavailable).  Although these documents were produced in the <u>Young</u> litigation in New York Supreme Court, the parties have agreed that "responsive documents (…continued)

2

discovery cut-off date was the subject of defendants' outstanding motion for a protective order and plaintiffs' cross-motion to compel. Accordingly, those documents and any claims based on them could have been incorporated in the amended complaints, but were not and, therefore, any claims based on them have not been tested by motion to dismiss. This is critical because any potential claims based on the documents do not fit within the claims that this Court has allowed to go forward. Plaintiffs themselves inadvertently concede this when they say at the outset of their brief that "based on documents obtained by plaintiffs," they "could further amend their complaints to allege specific off-label marketing events through December 2004." Pls. Objs.' at 2-3. Yet plaintiffs fail to acknowledge that claims based on off-label marketing alone have been dismissed; in these cases, plaintiffs must plead and prove fraud. 6/12/06 Order at 20-21. Plaintiffs claim that there were instances of off-label promotion after May 31, 2001 (a conclusion that defendants dispute) is of no moment. Plaintiffs have not and cannot allege specific instances of fraud after May 31, 2001, let alone fraud that falls within the theories of fraud that this Court has allowed to go forward.

Finally, demonstrating the weakness of their substantive arguments, plaintiffs' other principal argument is that the issue of a temporal limitation was not before Magistrate Judge Sorokin. They argue, without citation to any statement by defendants, that defendants abandoned their argument seeking a temporal limitation. That is simply wrong. At no time did defendants ever waive or abandon this argument. Moreover, defendants' motion for a protective

---

(continued…)

produced by the Defendants in the related personal injury cases can be shared with the Class Plaintiffs and that Pfizer's obligation to produce such documents in this litigation is discharged upon production in the personal injury cases." Declaration of Ronald J. Aranoff, dated July 27, 2006 (attached to Docket # 398) ¶ 5. That this sharing has taken place is evidenced by the fact that plaintiffs attached these documents to their objections. See Declaration of Ilyas J. Rona, dated August 1, 2006 (Docket # 412).

order limiting discovery to December 31, 1998 was still pending when the Magistrate Judge entered the Order. The fact that no mention of the temporal limitation was made in defendants' June 23, 2006 briefing is because defendants heeded the Magistrate Judge's admonitions that "the Court does not invite duplicative briefing." Discovery Order No. 2 (Docket # 372) at 3. Even if the Court were to adopt plaintiffs' argument that defendants should have reargued the temporal limitation in a new brief contrary to the Magistrate Judge's instructions (or refiled their earlier briefs supporting the motion for a protective order), the issue of a temporal restriction on discovery was still before the Magistrate Judge by virtue of the fact that plaintiffs refiled their motion to compel the production of documents after December 31, 1998.

For the forgoing reasons, and as set forth more fully below, plaintiffs' objections to Discovery Order No. 3 should be overruled.

## **BACKGROUND**

Plaintiffs served their initial document requests on March 11, 2005. The Class and Non-Class Plaintiffs' First Request for Production of Documents (the "requests") consists of 252 individual document requests, almost all of which are extremely broad. Taken as a whole, the requests seek basically every document relating to the sales and marketing of Neurontin from the period of January 1994 through May 2004.[3]

---

[3] Plaintiffs' document requests seek, among many other items, all documents pertaining to Vendors (defined broadly to include entities providing assistance in event management, publication, and marketing) concerning the marketing of Neurontin, see, e.g., Request Nos. 64, 69-71, 75, all documents relating in any way to any Events (defined broadly to include substantially every meeting or event paid for in whole or in part by defendants) at which off-label uses of Neurontin were discussed, see, e.g., Request Nos. 57-63, 65-66, 76-79, 81-87, all documents relating to the publication of articles regarding Neurontin and the communication of information between and among physicians, see, e.g., Request Nos. 117-26, all documents relating to payments to physicians or Vendors regarding Neurontin and all communications about payments, see, e.g., Request Nos. 37-49, 61-63, all documents relating to market analysis, forecasts, budgets, and projections concerning off-label uses of Neurontin, see, e.g., Request Nos. 18-20, 28, all documents relating to the medical liaison budgets and describing or "refer[ing] to" the role of medical liaisons in the marketing, promotion and sales of any of defendants' drugs, see, e.g., Request (…continued)

4

Defendants served their Responses and Objections to Class and Non-Class Plaintiffs'
First Request for Production of Documents (the "responses") on April 11, 2005. Defendants
objected to a number of the 252 requests on various grounds, including overbreadth, inclusion of
vague and ambiguous terms, failure to identify the documents sought with reasonable
particularity, and lack of relevance. One over-arching and critical objection related to the *time
period* for which plaintiffs seek discovery. Defendants objected to producing sales and
marketing materials relating to the entire period from 1994 through 2004 on the grounds that this
time period is overly broad.

Differences relating to the issue of the time period for discovery of sales and marketing
documents led defendants to file a motion for a protective order on June 17, 2005, seeking a
judicial determination regarding this issue. See Docket ## 161-62. After defendants filed their
motion for a protective order limiting the production of documents after December 31, 1998,
plaintiffs filed a cross-motion to compel documents through 2004, and the parties engaged in
extensive briefing regarding this issue during Summer 2005. See Docket ## 161-62, 170-72,
184, 186, 189-91, 196. On August 1, 2005, oral argument was held on the issue of the
appropriate timeframe for discovery, but no decision was entered prior to Magistrate Judge
Sorokin's report and recommendation on defendants' motions to dismiss on January 31, 2006.
Report and Recommendation, dated January 31, 2006 (Docket # 269) (the "Report").

On the same day that he issued the Report, Magistrate Judge Sorokin stayed discovery in
the sales and marketing cases after until after this Court ruled on the parties' objections to that

(continued…)

Nos. 218-20, and all data which reports on physicians who prescribe Neurontin, and all documents relating to any
reports or analysis of such data, see, e.g., Request Nos. 151-152, 178.

5

report.  Order Staying Discovery (Docket # 270).  On June 12, 2006, this Court dismissed certain

of plaintiffs' claims but allowed others to proceed.  One week later, on June 19, 2006, Magistrate

Judge Sorokin lifted the stay on discovery in the sales and marketing cases.  Discovery Order

No. 2 (Docket # 372) at 1.  As part of that ruling, the Magistrate Judge allowed the parties to

revive their earlier motions regarding the appropriate time period for discovery by simply

refiling their earlier briefs or to file new briefs discussing the impact of the Court's ruling on the

motions to dismiss, but the Magistrate Judge made cleat he was not inviting the parties to

duplicate their arguments made in the first round of briefs.  Id.

On July 18, 2006, Magistrate Judge Sorokin issued Discovery Order No. 3, which limited

the time period for discovery to documents created through May 31, 2001.  Plaintiffs filed their

objections to this Order on August 1, 2006.  Plaintiffs' Objections to Discovery Order No. 3

(Docket # 411) ("Pls.' Objs.").  Plaintiffs' objections memorandum is twenty-six pages long,

significantly longer than the briefing limit set by this Court and by Local Rule 7.1.

## ARGUMENT

## I.  PLAINTIFFS MISSTATE DEFENDANTS' ARGUMENTS SUPPORTING A PROTECTIVE ORDER

The Federal Rules of Civil Procedure only permit discovery as to matters "relevant to the

*claim or defense* of any party."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  During the summer

of 2005, in the briefing on defendants' first motion for a protective order and plaintiffs' cross-

motion to compel, defendants argued that because plaintiffs had only alleged fraud as to events

prior to 1999, discovery should only be allowed through 1998, thus limiting discovery to those

allegations in the first amended complaints.[4]  <u>See, e.g.</u>, 6/17/05 Defs.' Mem. Protective Order

(Docket # 162); 7/18/05 Defs.' Opp'n Pls.' Mot. Compel (Docket # 184) at 3.

In Discovery Order No. 2, the Magistrate allowed the parties to either revive their

previous discovery motions relying on their prior briefing or to file new briefing reacting to the

ruling on defendants' motions to dismiss:

> The parties may revive these motions by filing a new motion
> without an accompanying memorandum.  The motion should
> simply indicate that counsel intends to rely upon the papers
> previously filed in relation to the original motion.  If counsel
> believe that new briefing is warranted, they may file new motions
> with supporting memoranda in compliance with the schedule set
> forth above.  With regard to the time period dispute, counsel are
> reminded that the Court does not invite duplicate briefing.

Discovery Order No. 2 (Docket # 372) at 2-3.

Accordingly, in defendants' second round of briefing in June 2006, defendants argued

that discovery should be further limited to the claims and allegations in the second amended

complaints that survived defendants' motions to dismiss.  <u>See</u> Defendants' Memorandum in

Support of Motion for Protective Order Concerning Scope of Discovery, dated June 23, 2006

(Docket # 376) ("Defs.' Mem.").  In other words, discovery should be limited to the claims or

defenses still at issue in this litigation.  Defendants did not repeat the arguments regarding time

period, which had already been briefed and argued.

In contrast, plaintiffs both filed a new memorandum in support of their motion to compel

and refiled their previous briefs.  (Docket ## 383-84).  After failing to follow the Magistrate

Judge's Order, plaintiffs assert that defendants' decision to abide by the Magistrate's instruction

---

[4] Defendants' choice of December 31, 1998 as the appropriate date through which discovery should be
allowed was not, as plaintiffs allege, "arbitrary," Pls.' Objs. at 7 n.5, but rather based on the good-faith belief that
none of plaintiffs' allegations regarding conduct after that date would survive the pending motion to dismiss.

7

was an "abandonment" of their earlier arguments.  Pls.' Objs. at 5.  Defendants' effort to comply

with the instructions of this Court should not be held against them.

Moreover, Magistrate Judge Sorokin clearly recognized the absence of any waiver, as is

demonstrated both by his order and his statements at the hearing on this discovery dispute.

Transcript of Motion Hearing before Magistrate Judge Sorokin, July 11, 2006, attached to

Declaration of Matthew B. Rowland, dated August 18, 2006 ("Rowland Decl.") Ex. C at 31:1-2,

31:15-17 ("I don't infer because the positions have evolved that there's some sort of waiver or

concession . . . .  It's really what are the responsive documents, and that's what I'm focused

on.").  Magistrate Judge Sorokin also found defendants' arguments regarding the proper scope of

discovery compelling, stating:  "Defendants are correct that the allegations in the Complaints, i.e.

the claims and defenses, are the touchstone for determining the scope of discovery under Rule

26."  Order at 3.  Therefore, he denied plaintiffs' motion to compel and limited discovery to the

time frame within which that conduct was alleged to have occurred:

> Accordingly, Plaintiffs are entitled to discovery related to the
> indications for which they have specifically pled fraud. . . .  The
> claims in the complaints arise out of meetings or conferences
> promoting Neurontin fraudulently, according to plaintiffs.  The last
> meeting identified in the Complaints occurred on May 19, 2001.
> Thus, as a temporal matter, marketing discovery may run through
> May 31, 2001.[5]

Id.

The Magistrate Judge in making his order had access to extensive briefing from the

parties, as well as familiarity with the facts of this case and the procedural developments of the

---

[5] Plaintiffs do not object to the Magistrate Judge's finding that discovery should be limited to "the
indications for which [plaintiffs] have specifically pled fraud."  Order at 3.

past year.  Because the Magistrate Judge's order is neither clearly erroneous nor contrary to the

law, this Court should reject plaintiffs' objections to Discovery Order No. 3 and accept May 31,

2001 as the end of the time period for discovery.

## II.    PLAINTIFFS SHOULD BE PERMITTED DISCOVERY ONLY THROUGH MAY 31, 2001

Plaintiffs continue to argue that discovery should proceed through May 31, 2004, even in

the face of rulings from this Court narrowing their claims and limiting the theories of liability on

which they can proceed.  Plaintiffs do not and cannot dispute that they are entitled only to

discovery relevant to the claims and defenses remaining in this case.  See Pls.' Objs. at 6-7.

Nevertheless, they fail to recognize the distinction between claims that have been properly pled

in the complaints and the conclusory allegations on which they base their demand for discovery

between May 31, 2001 and May 31, 2004.  Where, as here, plaintiffs have failed to allege fraud

after May 31, 2001, there is no reason that this Court should allow them to put defendants to the

significant burden imposed by broad and indiscriminate discovery of the type sought by

plaintiffs.

### A.    Plaintiffs Are Only Entitled to Discovery Relating to Surviving Claims or Defenses in the Second Amended Complaints

In its Order on defendants' motions to dismiss, this Court adopted the recommendation of

the Magistrate that plaintiffs' allegations based on off-label promotion were not actionable,

instead finding that only allegations of fraud stated a claim for which recovery was possible.

6/12/06 Order at 20 (adopting Report at 34-35).  Plaintiffs' complaints were significantly

narrowed, because many of their allegations merely related to off-label promotion without

alleging fraud, and many of the "specific facts" alleged related only to the fact that certain

meetings were held or certain off-label uses of Neurontin were discussed at those meetings,

9

without more. Yet, as discussed below, it is vague allegations of off-label promotion upon which plaintiffs rely to justify their request for discovery through May 2004.[6] Off-label promotion is not actionable on the part of plaintiffs and cannot entitle them to discovery, as this Court has recognized. 6/12/06 Order at 20.

The cases cited by plaintiffs are not to the contrary. As an initial matter, it should be noted that none of this case law addresses the effect of the 2000 amendments on Rule 26 – in fact, all of the cases cited in plaintiffs' objections are from 1986 or earlier. As argued in the briefing on defendants' motion for a protective order, the effect of the 2000 amendment to Rule 26 was to ensure that the focus of discovery is the actual claims and defenses in an action and to avoid the use of discovery to develop new claims or defenses. Defs.' Mem. at 11; see, e.g., BG Real Estate Servs., Inc. v. Am. Equity Ins. Co., No. Civ. A. 04-3408, 2005 WL 1309048, at *1 (E.D. Pa. May 18, 2005) (ruling that the defendants carried their burden of establishing the tremendous burden and expense that they faced if required to respond to requests and explaining that "[t]he new standard concerning the scope of discovery is *narrower* than the old, pre-2000, broader standard"); Conboy v. Edward D. Jones & Co., No. 303-CV-2352P, 2004 WL 1792372, at *4 (N.D. Tex. Aug. 10, 2004) (stating that under amendment, courts "should not allow parties to 'roam in the shadow zones of relevancy to explore matter which does not presently appear

---

[6] Plaintiffs gratuitously assert that "Defendants have never denied that the same types of unlawful off-label promotional activities alleged by plaintiffs continued well after 1998." Pls.' Objs. at 7-8. Not only is this statement untrue, but it has been plainly refuted in the past. In fact, plaintiffs included the same statement almost verbatim in their original motion to compel the production of documents. Docket # 170 at 3. In their response to that motion, defendants stated "Although reluctant to take up the Court's time with a statement of the obvious, Defendants do indeed deny that such unlawful promotional activities took place, and further deny that they ever engaged in any fraudulent conduct with respect to the marketing of Neurontin at any time." Docket # 184 at 3-4. It should also be noted that the government never accused Pfizer of having any involvement whatsoever in the off-label marketing of Neurontin that led to the resolution entered in 2004. Furthermore, the government only charged Warner-Lambert Company LLC with specific instances of off-label promotion during 1995 and early 1996 (all of which was non-fraudulent).

germane on the theory that it might conceivably become so'" (internal citation omitted)), aff'd, 140 F.App'x 510 (5th Cir. 2005), cert. denied, 126 S.Ct. 737 (2005); Collens v. City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (limiting "fishing expedition" discovery not related to claims or defenses); Johnson v. Mundy Indus. Contractors, Inc., No. 7:01-CV-99-BO3, 2002 WL 31464984, at *3 (E.D.N.C. Mar. 15, 2002) (noting that "2000 amendments 'mandate greater scrutiny of Plaintiff's [discovery] request'"); see also Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) ("In cases in which fraud lies at the core of the action, the rule does not permit a complainant to file suit first, and subsequently to search for a cause of action."). The cases cited by defendants in their earlier briefing emphasize both that the purpose of the 2000 amendment was to narrow the scope of discovery and to tailor discovery to the claims or defenses of the parties as opposed to the broader subject matter standard it replaced. See, e.g., In re Ashworth, Inc. Sec. Litig., No. 99-CV-121, 2002 WL 33009225, at *2 (S.D. Cal. May 10, 2002) (noting that the amendment to Rule 26 was "significant" and that "the focus of discovery has shifted to a more narrow 'claim or defense' standard" in holding that plaintiffs' requests were overly broad following a ruling on defendants' motion to dismiss that limited the claims remaining in the case); see also Hart v. Verizon Commc'ns Inc., No. Civ. A. 02-11483, 2003 WL 1798184, *1 (D. Mass. Apr. 4, 2003) (limiting deposition discovery to matters relevant to claim that survived a motion to dismiss and not into matters unrelated to that claim).

Nor should plaintiffs' pleading failures be excused because the relevant information is solely within the control of defendants. The doctors who were allegedly defrauded by defendants are not within their control. Rather, it is the third-party payor plaintiffs who have access to their doctors and records. Plaintiffs would also have access to information regarding any alleged fraud if it had occurred. The utter failure of plaintiffs to make allegations of fraud

11

after May 31, 2001 suggest strongly that such fraud never occurred.  In any case, this argument cannot justify granting plaintiffs the discovery they seek.

> **B.      Plaintiffs Fail To Allege Any False Statements or Fraudulent Omissions Occurring After May 31, 2001**

In support of their argument, plaintiffs argue that their complaints contain allegations that the alleged fraud continued until May 31, 2004.  Plaintiffs also argue that recently obtained documents provide factual support for new allegations, not contained in the second amended complaints, of "misconduct" continuing after May 31, 2001.  In doing so, plaintiffs engage in the same conduct for which they so vociferously criticized defendants on the motions to dismiss – offering new evidence to this Court that was not before the Magistrate Judge when he made his recommendation.  See, e.g., Pls.' Objs. Response (Docket # 303) at 18-19.  For the same reason that this Court refused to consider the evidence offered by defendants at that time, the Court should similarly not consider the new evidence and the allegations supposedly derived therefrom offered by plaintiffs in their objections to Discovery Order No. 3.

> **1.      The Second Amended Complaints Contain No Allegations of Fraud After May 31, 2001**

Plaintiffs argue that the second amended complaints state a claim for fraud by alleging the publication by defendants of false and misleading articles.  Pls.' Objs. at 13-14.  This argument fails, however, because plaintiffs fail to identify any fraudulent statement.  Allegations of "spinning" articles to emphasize positive results or of "moving the goalposts" to make studies appear more favorable, id. at 14, are not only lacking in particularity, but do not even state an actionable claim of fraud.  Plaintiffs do not identify any particular statement in any particular article that they allege is false.  Cf. Second Amended Class Action Complaint (Docket # 379) ("SACAC") ¶¶ 122-23, 126-28 (cited in Pls.' Objs. at 13-14).   Furthermore, plaintiffs do not

allege that defendants actually falsified results or concealed from journal editors relevant information – nor that the articles as published were inaccurate.  Instead, they spill considerable ink in arguing that Pfizer and vendor Medical Action Communications, Inc. intended to publish "key messages" that were "designed to be false and misleading distortions of Neurontin's efficacy in off-label uses."  Pls.' Objs. at 13-14 (citing SACAC ¶ 122).   Vague and conclusory allegations of fraud such as these cannot justify the broad discovery sough by plaintiffs.[7]

> **2.     This Court Should Refuse To Consider the Additional Evidence Described by Plaintiffs in Their Objections**

The Court should not accept plaintiffs' argument that new documents recently produced to them by the defendants provide further support for the extension of the relevant time period for discovery.  Pls.' Objs. at 17.  Plaintiffs never raised these allegations or these documents before the Magistrate Judge.  Because defendants never had the opportunity to address these new allegations before Magistrate Judge Sorokin or in their motions to dismiss, it would be improper for this Court to consider them in ruling on plaintiffs' objections to the Magistrate Judge's discovery order.  Furthermore, even if this Court were to examine this new evidence, the

---

[7] Plaintiffs in a footnote cite to multiple paragraphs of the second amended complaint that they allege also demonstrate continuing misconduct through 2004.  Pls.' Objs. at 7 n.6.  None of these allegations have been pled with any particularity, and many of them are made only on "information and belief."  Allegations made on information and belief must plead with particularity the basis for any such belief.  See, e.g., Wayne Inv., Inc. v. Gulf Oil Corp., 739 F.2d 11, 13-14 (1st Cir. 1984) ("[A]llegations based on 'information and belief' do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded . . . [and this] requirement applies even when the fraud relates to matters peculiarly within the knowledge of the opposing party.").  Accordingly, these allegations also cannot form the basis for extending discovery after May 31, 2001.

Plaintiffs also argue that the fact that named plaintiff Lorraine Kopa did not begin taking Neurontin until November 2003, after the May 2001 date set for the end of discovery, militates in favor of extending discovery through May 2004.  Pls.' Objs. at 16.  This argument only serves to demonstrate that there are serious questions as to the validity of Ms. Kopa's claims, given that there are no allegations that she or her physician were aware of any of the alleged fraudulent statements.  In any event, defendants have never objected to targeted discovery relating to sales efforts directed to the individual plaintiffs' physicians.  Accordingly, this argument is not grounds for a broad extension of discovery through May 2004.

additional documents put forward by plaintiffs do not support the allegations that they claim derive therefrom.

In their objections to the report and recommendation of the Magistrate Judge on their first motion to dismiss, defendants argued that the Court should consider certain documents relating to plaintiffs' claims. Plaintiffs argued that because defendants had not raised these arguments before the Magistrate Judge, it would be improper for the Court to consider them in ruling on the objections. This Court accepted plaintiffs' argument, stating "The Court will not consider any objections which raise new issues not put before the Magistrate Judge in the original briefing on the motion to dismiss." 6/12/06 Order at 2 (citing Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)). The additional evidence and allegations advanced by plaintiffs in their objections also raise a new issue not before the Magistrate Judge, and this Court should similarly refuse to consider them.

Although defendants believe it would be improper to consider the evidence newly offered by plaintiffs, it is also the case that this evidence does not support plaintiffs' argument regarding the proper time period for discovery because none of it supports any actionable claims of fraud. None of the so-called evidence from post-May 2001 is fraudulent. For example, plaintiffs allege that Michael Rowbotham and Miroslav Backonja delivered a presentation that falsely concluded that Neurontin was safe and effective for several neuropathic pain conditions. Id. at 17-18. As an initial matter, plaintiffs allege that both individuals were "paid speakers of Pfizer," but not that Pfizer had paid them to make the statements at issue or had otherwise been involved in controlling the content of those statements. Id. at 17. The statements of physicians cannot be imputed to defendants without specific allegations describing how defendants controlled such statements, and plaintiffs have failed to provide any such allegations here.

14

Furthermore, the statements alleged to be false are in fact accurate descriptions of published clinical studies, some of which were conducted by the speakers. This is not an example of the discussion of "positive anecdotal experiences despite knowing that scientific studies (the results of some of which Defendants had withheld) significantly contradicted and undermined the doctors' statements." Report at 49. Rather, this is the description of published, peer-reviewed scientific studies by trained physicians familiar with the research in the field. It would be an unprecedented intrusion into the First Amendment rights of physicians and pharmaceutical companies to dictate that every time a positive clinical study is mentioned they must follow it with descriptions of every study that failed to prove efficacy. Cf. Bonilla v. Volvo Car Corp., 150 F.3d 62, 70 (1st Cir. 1998) (holding that "there is no general obligation of the seller to tell the buyer everything negative that the buyer might be interested in learning"). The FDA itself has acknowledged that the dissemination of scientific information regarding off-label uses of prescription drugs is allowed and in fact encouraged. See Washington Legal Found. v. Friedman, 13 F. Supp. 2d 51, 67 (D.D.C. 1998), vacated on other grounds by 202 F.3d 331, 336 (D.C. Cir. 2000). In fact, FDA regulations prohibiting the off-label promotion of prescription drugs are not intended to "restrict the full exchange of scientific information concerning the drug, including dissemination of scientific findings in scientific or lay media." 21 C.F.R. § 312.7.[8]

---

[8] Similarly, plaintiffs describe statements made at a sales training event to Pfizer employees, which cannot be the basis for plaintiffs' claims of fraud. Pls.' Objs. at 19-20. Other allegations are so vague that defendants cannot even ascertain what theory of fraud is being advanced by plaintiffs, and they therefore obviously fail to meet the requirements of Rule 9(b). See, e.g., Pls.' Objs. at 20 (bullet point listing of different events). Plaintiffs provide no particularity as to what specific statements were made, by whom, or whether they can be attributed to defendants. Plaintiffs cannot even allege that the statements made at these events represent illegal off-label promotion (a claim which this Court found preempted), as it is perfectly legal for defendants to discuss the results of clinical studies of Neurontin. More specific allegations regarding a June 5, 2004 American Diabetes Association meeting make it (…continued)

Plaintiffs also allege that Pfizer suppressed the results of a purportedly failed DPN trial (study 945-224) conducted by Dr. Reckless.  Pls.' Objs. at 22.  They allege that this act of suppression continued from October 2000 to March 2003, thus justifying discovery after the March 31, 2001 deadline imposed by Discovery Order No. 3.  Id.  In fact, the results of study 945-224 were submitted to several different journals, including Diabetic Medicine and Diabetologia.  See Rowland Decl. Exs. D, E (submission cover letters to Diabetic Medicine, dated February 14, 2002, and Diabetologia, dated October 21, 2002).  Accordingly, not only are these allegations of suppression insufficient to state a claim for fraud, they are simply not true.

Plaintiffs' final attempt to establish that defendants' alleged fraudulent conduct continued after May 31, 2001 is even more strained.  Plaintiffs now argue for the first time that published articles describing clinical study results for a given use of Neurontin must mention any negative studies of the same use.[9]  Pls.' Objs. at 23.  Plaintiffs provide no support for their argument that choosing not to list every study on a given use would be fraud.  Nor do they allege facts allowing statements or omissions in articles published by researchers to be attributed to defendants.  Plaintiffs' request that this Court dictate the content of peer-reviewed scientific articles is obviously overreaching on the part of plaintiffs.

---

(continued…)

clear that the discussion alleged to be false was an overview of clinical trial results.  Id. at 21.  Plaintiffs also allege that false statements about Neurontin were made at an October 2004 National Pain Forum focused on the "appropriate diagnosis and treatment of a multitude of pain states."  Id.  Plaintiffs identify no particular statement as false, nor account for the fact that Neurontin is, in fact, approved to treat at least one type of pain.  Because plaintiffs identified no false or misleading statements, their allegation that "Pfizer repeated the false and misleading statements outlined above" at certain other events cannot be grounds for extending discovery.  Id. at 22.

[9] The Garcia-Borreguero article cited by plaintiffs, Pls.' Objs. at 23, does, contrary to plaintiffs' assertion, cite several other clinical trials of Neurontin's efficacy in RLS and PLMS; the fact that it does not cite the allegedly negative Ehrenberg trial, which was published only as an abstract, is unsurprising, as that trial had many limitations and was contradicted by other trials using higher dosages and better design.

Plaintiffs also seem to deny the fact that what was previously unknown may become known through scientific research and experimentation, as they claim that it is fraud for a physician to publish new research on the mechanism of action of Neurontin. Pls.' Objs. at 24. Plaintiffs have not alleged that defendants claimed a certain mechanism of action to be proven while knowing that the evidence contradicted that statement, and accordingly their allegations regarding statements about the mechanism of action for Neurontin are not allegations of fraud.

### C.     Plaintiffs' Discovery Requests Would Unduly Burden Defendants

Rule 26 requires balance; a discovery demand may not impose "undue" burden and expense. See, e.g., Gill v. Gulfstream Park Racing Ass'n, 399 F.3d 391, 400 & n.5 (1st Cir. 2005). The task of gathering, reviewing, and producing all Neurontin sales and marketing documents, untethered to the remaining claims in the complaints, would require many thousands of hours of attorney time, would cost millions of dollars, and would disrupt defendants' operations. Defendants estimate, conservatively, that they would need to collect documents from over a hundred people to respond to plaintiffs' overly broad sales and marketing requests. See Declaration of Laura Kibbe, dated June 17, 2005 (Rowland Decl. Ex. F) ¶ 4. It would take hundreds of hours simply to collect this material, and almost ten months for forty temporary workers reviewing documents full time to complete the initial review alone.[10] See id. ¶ 5. The costs associated with collection, processing, and this initial review would be $5 million or more, and these costs do not even include the necessary second review by Pfizer's attorneys for responsiveness, privilege, and confidentiality. See id. ¶¶ 5-6; see also Second Declaration of

---

[10] The two Kibbe declarations discuss discovery requirements for the entire six-year period from December 31, 1998 to May 31, 2004. As such, these estimates are too large when considering just the three-year period from May 31, 2001 to May 31, 2004. More recent documents, however, will probably incur greater costs for review, as they are more likely to need to be marked "Confidential" pursuant to the protective order in this case.

Laura Kibbe dated July 28, 2005 (Rowland Decl. Ex. G) (explaining vendor costs and likely volume of materials per custodian).

The entire process, including initial collection, first and second review, and production, would last well over a year and cost over $10 million. See Rowland Decl. Ex. G ¶ 6. Moreover, these estimates assume that defendants will not be required to collect documents from field-level employees. If such a collection has to be made, the costs and time that would be incurred to collect and review documents would substantially increase, as there are likely hundreds of such field personnel. In short, plaintiffs' demands seeking virtually all Neurontin sales and marketing documents would impose an extraordinary and undue burden and expense on defendants.[11]

## III.  PLAINTIFFS DISTORT JUDGE SARIS'S RULING IN THE _FRANKLIN_ ACTION AND THE RULINGS BY JUDGE RAKOFF AND JUDGE ROSENWASSER ARE INAPPLICABLE TO THE DISCOVERY DISPUTE BEFORE THE COURT

Plaintiffs are incorrect that this Court's discovery ruling in the Franklin action somehow militates in favor of granting them discovery in this litigation through May 31, 2004. Pls. Mem. at 9. Franklin had sought extremely broad categories of documents relating to the sales and marketing of Neurontin through August 22, 2000, the date of the request, arguing (in the context of Relator's motion to compel discovery) that Relator "believes" that Defendants' conduct "lasted through 2000," Franklin Docket # 117 at 9, and that such conduct "extends from 1994

---

[11] In his order, the Magistrate Judge also ruled that the discovery of boxes of documents relating to Cline Davis & Mann and Sudler & Hennessy, previously produced by these vendors to the government during its civil investigation of defendants' alleged off-label promotion, should be subject to the scope of discovery set forth in the order. Order at 3 n.2. Plaintiffs argue that this material should be produced immediately without regard to the time limitation set forth in the order. Pls. Objs. at 12, 26. Plaintiffs' demand should be rejected and these materials should be governed by the May 31, 2001 discovery time frame as set forth in the Magistrate Judge's order. Moreover, these materials cannot be produced immediately because defendants will need to review this material for responsiveness, as well as confidentiality and privilege, before any production can be made.

through at least 1998 and *most likely into 2000* . . . ." <u>Franklin</u> Docket # 145 at 11 (emphasis added).  Defendants argued that Relator had not provided any allegations of misconduct in 1999 and 2000 (and, in fact, had stated only the bares of allegations in 1998).  On February 6, 2002, this Court rejected Relator's attempt to obtain documents from 1999 and 2000 based on a mere belief rather than specific allegations, and limited discovery to 1994 through 1998.  <u>Franklin</u> Docket # 159.

Plaintiffs also misleadingly argue that defendants have twice litigated the discovery issue in the past and twice lost before two different judges.  This characterization is incorrect and unsupported by the record.  In the first instance, plaintiffs imply that Judge Rakoff's April 25, 2005 Order in a handful of personal injury cases permitting plaintiffs access to certain sales and marketing databases applied to all documents and not just to databases.  Pls.' Objs. at 15-16.  This strained reading of Judge Rakoff's Order is incorrect.[12]  The April 25 Order specifically provides that it addresses only the production of certain "*databases* related to defendants' sales and marketing efforts and communications with doctors," and not, as plaintiffs argue, *all* of defendants' documents concerning their marketing efforts for Neurontin  <u>See</u> Poate Decl. (Docket # 171), Ex. H at 1 (emphasis added).

The order of Justice Rosenwasser of the New York State Supreme Court for Orange County in <u>Young v. Pfizer</u> was similarly limited.  In his order, as quoted by plaintiffs, Justice

---

[12] Plaintiffs also put great stock in the view expressed by this Court that Judge Rakoff's order "seemed reasonable." Pls.' Objs. at 16 (citing Tr. at 28:15 (Poate Decl. (Docket # 171), Ex. N)). Plaintiffs neglect, however, to mention the remainder of Judge Saris's comments, which undercut their reliance on the quoted phrase. The context of that comment is relevant here: "[The Order] seemed like a reasonable guidepost to start with, but if someone's going to challenge it, they should do it . . . . I haven't thought through the issues, and I'd hate to do that without hearing the point/counterpoint, which is always very helpful." Tr. at 28 (Poate Decl. (Docket # 171), Ex. N). As evidenced by the extensive briefing both in 2005 and 2006 on the issue of the appropriate limits for discovery, it is clear that this issue has moved far beyond this starting guidepost.

Rosenwasser only "ordered the production of Defendants' Neurontin Medical Communications, Sales/Marketing, and Visitors' Speakers Bureau *databases*," and not all other documents concerning the marketing efforts for Neurontin.[13] Pls.' Objs. at 16 (emphasis added). This narrow order, like that of Judge Rakoff, does not support the broad document discovery now sought by plaintiffs. Furthermore, the <u>Young</u> case was transferred to a coordinated proceeding and this order is no longer in effect.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court reject plaintiffs' objections to Discovery Order #3 and adopt it as entered by the Magistrate.

Dated: August 18, 2006

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
        James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

---

[13] Although the order addresses the discovery of other documents, that part of Justice Rosenwasser's ruling was objected to by defendants and was the subject of an agreement subsequently negotiated by the parties. Notably, Justice Rosenwasser never overruled defendants' objections relating to time period.

HARE & CHAFFIN

By:    /s/ David B. Chaffin
         David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on August 18, 2006.

/s/David B. Chaffin

21