UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                 :

In re:  NEURONTIN MARKETING,        :
        SALES PRACTICES, AND        :
        PRODUCTS LIABILITY LITIGATION  :   MDL Docket No. 1629

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Master File No. 04-10981
                                                   :

THIS DOCUMENT RELATES TO:       :   Judge Patti B. Saris
                                                   :

ALL MARKETING AND            :
SALES PRACTICES ACTIONS       :
                                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF MATTHEW B. ROWLAND

MATTHEW B. ROWLAND declares upon penalty of perjury in accordance with 28 U.S.C. § 1746 as follows:

1.     I am an attorney associated with the law firm Davis Polk & Wardwell, counsel for Defendants Pfizer Inc. and Warner-Lambert Company in this action.

2.     I submit this declaration in support of Defendants' Response to Plaintiffs' Objections to Discovery Order No. 3, filed August 18, 2006.

3.     Attached at Exhibit A is a true and correct copy of a letter from Kathryn Carney Cole to Kenneth B. Fromson, dated March 24, 2006.

4.     Attached at Exhibit B is a true and correct copy of a letter from Kathryn Carney Cole to Kenneth B. Fromson, dated April 10, 2006.

5.     Attached at Exhibit C is a true and correct copy of an excerpt of the transcript of the Motion Hearing before Magistrate Judge Sorokin, which took place on July 11, 2006.

6.      Attached at Exhibit D is a true and correct copy of a submission cover letter from Beate Roder to the journal <u>Diabetic Medicine</u>, dated February 14, 2002.

7.      Attached at Exhibit E is a true and correct copy of a submission cover letter from Beate Roder to the journal <u>Diabetologia</u>, dated October 21, 2002.

8.      Attached at Exhibit F is a true and correct copy of a Declaration of Laura Kibbe, dated June 17, 2005.

9.      Attached at Exhibit G is a true and correct copy of a Second Declaration of Laura Kibbe dated July 28, 2005.

Dated: New York, New York
       August 18, 2006

Matthew B. Rowland

# EXHIBIT A

# DAVIS POLK & WARDWELL

1300 I STREET, N.W.
WASHINGTON, D.C. 20005

1600 EL CAMINO REAL
MENLO PARK, CA 94025

99 GRESHAM STREET
LONDON EC2V 7NG

15, AVENUE MATIGNON
75008 PARIS

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

WRITER'S DIRECT

MESSETURM
60308 FRANKFURT AM MAIN

MARQUÉS DE LA ENSENADA, 2
28004 MADRID

1-6-1 ROPPONGI
MINATO-KU, TOKYO 106-6033

3A CHATER ROAD
HONG KONG

March 24, 2006

Re:    **Young v. Pfizer Inc., et al., 1062/2004**

Kenneth B. Fromson, Esq.
Finkelstein & Partners
436 Robinson Avenue
Newburgh, New York 12550

Dear Ken:

Pursuant to our discussions and agreements in the above-captioned matter and Defendants' Responses and Objections to Plaintiff's Discovery Requests, we are producing on behalf of Defendants in the above referenced matter (by a copy of this letter to Keith Altman) a hard drive containing documents from the files of the following Pfizer employees: Rudi Altevogt and Charles Taylor. For your convenience, set forth below is a chart containing details about the documents included in today's production.

| Bates Stamp Number(s) | Description |
| --- | --- |
| Pfizer_RAltevogt_00000 01-0002258 | Documents from the Files of Rudi Altevogt, Regulatory |
| Pfizer_CTaylor_000000 1-0022456 | Documents from the Files of Charles Taylor, Ph.D., Global Research & Development |

Documents on the hard drive have been designated as "Confidential," and should be treated as confidential pursuant to the Confidentiality Agreement executed by the parties dated November 29, 2004.

Please call me if you have any questions regarding the foregoing.

Very truly yours,

*Kathryn Carney Cole*

Kathryn Carney Cole

By Facsimile

cc w/ enc:        Mr. Keith Altman

Kenneth B. Fromson, Esq.                 2                    March 24, 2006

(by overnight courier)  26 Willow Drive
                        Massapequa Park, NY 11762

# EXHIBIT B

# DAVIS POLK & WARDWELL

| | | |
|---|---|---|
| 1300 I STREET, N.W.<br>WASHINGTON, D.C. 20005 | 450 LEXINGTON AVENUE<br>NEW YORK, N.Y. 10017 | MESSETURM<br>60308 FRANKFURT AM MAIN |
| 1600 EL CAMINO REAL<br>MENLO PARK, CA 94025 | 212 450 4000<br>FAX 212 450 3800 | MARQUÉS DE LA ENSENADA, 2<br>28004 MADRID |
| 99 GRESHAM STREET<br>LONDON EC2V 7NG | WRITER'S DIRECT | 1-6-1 ROPPONGI<br>MINATO-KU, TOKYO 106-6033 |
| 15, AVENUE MATIGNON<br>75008 PARIS | | 3A CHATER ROAD<br>HONG KONG |

212-450-4228

April 10, 2006

Re:     **Young v. Pfizer Inc., et al., 1062/2004**

Kenneth B. Fromson, Esq.
Finkelstein & Partners
436 Robinson Avenue
Newburgh, New York 12550

Dear Ken:

Pursuant to our discussions and agreements in the above-captioned matter and Defendants' Responses and Objections to Plaintiff's Discovery Requests, we are producing on behalf of Defendants in the above referenced matter (by a copy of this letter to Keith Altman) one Hard Drive which contain documents from the files of the following Pfizer employees: Leslie Tive, Linda LaMoreaux, Lloyd Knapp and Atul Pande. We are also producing two CD-ROMs. The first CD-ROM contains documents bearing bates stamp numbers Pfizer_InRe_0002694 – 0005122. The second CD-ROM is intended to replace and supplement the data from the CMS database that was produced to you on November 15, 2005. For your convenience, set forth below is a chart containing details about the documents included in today's production.

| Bates Stamp Number(s) | Description |
|---|---|
| Pfizer_LTive_0000001-0022746 | Documents from the Files of Leslie Tive, Medical |
| Pfizer_LLaMoreaux_0000001-0031650 | Documents from the Files of Linda LaMoreaux, Clinical Development |
| Pfizer_LKnapp_0000001-0129533 | Documents from the Files of Lloyd Knapp, Clinical Development |
| Pfizer_APande_0000001-0004288 | Documents from the Files of Atul Pande, Clinical Development |
| Pfizer_InRe_0002694 -0005122 | (1) Labeling SOP that was in existence prior to the implementation of the interim policy that was previously produced on February 28, 2006; (2) |

Kenneth B. Fromson, Esq.                2                April 10, 2006

| Bates Stamp Number(s) | Description |
|---|---|
|  | Patents filed by Parke-Davis relating to (a) Neurontin and neurogenerative disease and (b) Neurontin and depression; (3) Adverse event report source file for plaintiff, William T. Young |
| Produced without Bates Stamp | CD labeled "CMS-New York" which contains, in Microsoft Access format, portions of the CMS sales call database reflecting calls on physicians in New York state relating to Neurontin |

     Documents on the Hard Drive and CD-ROMs have been designated as "Confidential," and should be treated as confidential pursuant to the Confidentiality Agreement executed by the parties dated November 29, 2004.

     Please call me at 212-450-4228 should you have any questions regarding the foregoing.

                         Very truly yours,

                         Kathryn Carney Cole

<u>By Facsimile</u>

cc w/ enc:            Mr. Keith Altman
(by overnight courier)  26 Willow Drive
                      Massapequa Park, NY 11762

# EXHIBIT C

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF MASSACHUSETTS

3

4

5

6    IN RE:                        )   C.A. No. 04-10981-PBS

     NEURONTIN MARKETING AND       )

7    SALES PRACTICES LITIGATION    )   Courtroom No. 14

                                   )   1 Courthouse Way

8                                  )   Boston, MA  02210

9

10                     MOTION HEARING

11                    JULY 11, 2006

12                       2 p.m.

13

14

15

16

17        BEFORE THE HONORABLE LEO T. SOROKIN

18           UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24               VALERIE A. O'HARA

25             OFFICIAL COURT REPORTER

```
 1    A P P E A R A N C E S:
 2    For the Plaintiffs:
 3         Finkelstein & Partners, LLP, by ANDREW G. FINKELSTEIN,
      ESQ. and KENNETH B. FROMSON, ESQ., 436 Robinson Avenue,
 4    Newburgh, New York  12550;
 5         Greene & Hoffman, P.C., THOMAS M. GREENE, ESQ. and
      MICHAEL TABB, ESQ. and ILYAS J. RONA, ESQ., 125 Summer
 6    Street, Suite 1410, Boston, Massachusetts  02110;
 7

      For the Defendants:
 8

           Davis, Polk & Wardwell, by JAMES P. ROUHANDEH, ESQ.,
 9    KATHRYN M. CARNEY COLE, ATTORNEY and DEBORAH MacGREGOR,
      ATTORNEY, 450 Lexington Avenue, New York, New York  10017;
10

           Shapiro, Haber & Urmy, LLP, by THEODORE M. HESS-MAHAN,
11    ESQ., 53 State Street, Boston, Massachusetts  02109;
12         Hare & Chaffin, by DAVID B. CHAFFIN, ESQ., 160 Federal
      Street, Boston, Massachusetts  02110-1701;
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1    first instance, in any event, but that's not what we're

2    talking about here.

3            We're talking about theory of the case which is

4    fraud, and that's what their claims are based on.  We're

5    entitled to see if what we paid were off-label or written as

6    a result of the off-label promotion, but the preemption

7    ruling, as well as the whole decision, your Honor's report

8    and recommendation and Judge Saris' decision makes pretty

9    clear what's left in this case are RICO and other fraud

10   claims and are not some claims alleged on off-label

11   promotion.

12           In fact, we heard very little of fraud, I think he

13   used fraud or falsely misleading once in what he said.

14   They're not entitled to that.  In terms of what Mr. Greene

15   suggests, we have withdrawn this temporal issue.  What's

16   important to understand is what we said at the outset in

17   that motion.  What we said at the outset of the motion, our

18   first motion, was you're not entitled to all documents after

19   December 31, 1998 because you haven't alleged conduct after

20   that.  We said -- and it's in our brief -- if you allege

21   specific things that occurred after 1998, you should do some

22   tailored discovery if you've got allegations which is how

23   you're to treat fraud.

24           THE COURT:  I don't view -- I understand you to be

25   making a protective order motion not with respect to time

1    period, that I don't infer because the positions have

2    evolved that there's some sort of waiver or concession that,

3    therefore, I'm going to find it so I'm going to just resolve

4    the question about the scope of discovery based upon the

5    scope of discovery.

6         It strikes me that I'm certainly not going to I

7    don't think enter a protective order based on the time

8    period because you're not asking for that now.  That's not

9    the theory you're advancing, and the other motions are gone,

10   and to the extent that the plaintiffs have moved for an

11   order compelling that there isn't a cutoff on time period,

12   at least tentatively I don't disagree with them because it's

13   not -- I think that in effect that they say in their papers

14   it's not really about the time period, it's about even their

15   protective order says responsive documents.  It's really

16   what are the responsive documents, and that's what I'm

17   focused on.

18        MR. ROUHANDEH:    I understand and obviously agree.

19   I don't think this is really any longer about the time

20   period, it's really about the scope of discovery.  I think

21   there's one issue that's very important to go back through,

22   and that is this issue with the vendors because yes, there

23   are allegations, and we did ask that perhaps the Court would

24   stay not a ruling on the entirety of this, but with respect

25   to the vendors we're going to make a motion that in part

# EXHIBIT D

Pfizer GmbH
Mooswaldallee 1
79090 Freiburg · Germany
Telephone (+49 761) 518-0
Telefax (+49 761) 518-3072



# Pfizer GmbH

February 14, 2002

Professor Simon Heller
c/o *Diabetic Medicine* Editorial Office
Blackwell Science Ltd.
25 John Street
London, WC1N 2BS
United Kingdom

Dear Professor Heller:

Enclosed are four copies of our manuscript, "Gabapentin in painful diabetic neuropathy: a randomized, double-blind, placebo-controlled study," for submission to *Diabetic Medicine* for consideration for publication. Each copy contains the complete text of the manuscript as well as all accompanying tables and figures.

Patients with diabetes often develop neuropathy that gives rise to substantial chronic pain. Such painful diabetic neuropathy significantly impacts quality of life and increases the potential for further complications. The study reported in this manuscript examined the efficacy, dose-response characteristics, and tolerability of gabapentin for the symptomatic relief of painful diabetic neuropathy. The results obtained reveal that gabapentin has significant beneficial effects on responder rate, weekly mean sleep interference score, Clinical Global Impression of Change, and several domains of quality of life. These results are consistent with those seen in previous trials and further establish gabapentin as a useful and well-tolerated treatment option for painful diabetic neuropathy. Therefore, we believe that this manuscript would be of great interest to the readers of *Diabetic Medicine* and merits consideration as an original article.

None of the material contained in this manuscript has been published previously or is being considered for publication elsewhere. With respect to potential conflicts of interest, I would like to disclose that one of the authors (P.M.) is an employee of Pfizer GRD and that I am an employee of Pfizer GmbH.

If anything further is required, please do not hesitate to contact me.

Thank you for your consideration.

Sincerely,

*B. Roder*

Beate Roder, PhD
Pfizer GmbH
Mooswaldallee 1, 79090
Freiburg, Germany
Telephone ++49 761 518 2146
Fax ++49 761 518 3072
beate.roder@pfizer.com

# EXHIBIT E

Pfizer GmbH
Mooswaldallee 1
79090 Freiburg · Germany
Telephone (+49 761) 518-0
Telefax (+49 761) 518-3072



**Pfizer GmbH**



October, 21st, 2002

W. Waldhäusl, M.D.
c/o *Diabetologia* Editorial Office
Lazarettgasse 14/BT 81
A-1090 Wien
Austria

Dear Dr. Waldhäusl,

Enclosed are four copies of our manuscript, "Gabapentin in painful diabetic neuropathy: a randomized, double-blind, placebo-controlled study," for submission to *Diabetologia* for consideration for publication. Each copy contains the complete text of the manuscript as well as all accompanying tables and figures.

Patients with diabetes often develop neuropathy that gives rise to substantial chronic pain. Such painful diabetic neuropathy significantly impacts quality of life and increases the potential for further complications. The study reported in this manuscript examined the efficacy, dose-response characteristics, and tolerability of gabapentin for the symptomatic relief of painful diabetic neuropathy. The results obtained reveal that gabapentin has significant beneficial effects on responder rate, weekly mean sleep interference score, Clinical Global Impression of Change, and several domains of quality of life. These results are consistent with those seen in previous trials and further establish gabapentin as a useful and well-tolerated treatment option for painful diabetic neuropathy. Therefore, we believe that this manuscript would be of great interest to the readers of *Diabetologia* and merits consideration as a regular article.

None of the material contained in this manuscript has been published previously or is being considered for publication elsewhere. With respect to potential conflicts of interest, I would like to disclose that one of the authors (P.M.) is an employee of Pfizer GRD and that I am an employee of Pfizer GmbH.

If anything further is required, please do not hesitate to contact me.

Thank you for your consideration.

Sincerely,

B. Roder

Beate Roder, PhD
Pfizer GmbH
Mooswaldallee 1,
79090 Freiburg, Germany
Telephone ++49 761 518 2146
Fax ++49 761 518 3072
beate.roder@pfizer.com

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------- x
                                                   :
In re:  NEURONTIN MARKETING AND                    :
        SALES PRACTICES LITIGATION                 :
                                                   :
------------------------------------------------- x   MDL Docket No. 1629
                                                   :
THIS DOCUMENT RELATES TO:                          :   Master File No. 04-10981
                                                   :
------------------------------------------------- x   Judge Patti B. Saris
                                                   :
HARDEN MANUFACTURING CORPORATION;                  :
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,        :
dba BLUECROSS/BLUESHIELD OF LOUISIANA; UNION       :
OF OPERATING, LOCAL NO. 68 WELFARE FUND;           :
ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST;        :
GERALD SMITH; and LORRAINE KOPA, on behalf of      :
themselves and all others similarly situated, v. PFIZER INC. and  :
WARNER-LAMBERT COMPANY.                            :
                                                   :
------------------------------------------------- x
                                                   :
THE GUARDIAN LIFE INSURANCE COMPANY OF            :
AMERICA v. PFIZER INC. and                         :
                                                   :
AETNA, INC. v. PFIZER INC.                         :
                                                   :
------------------------------------------------- x

## DECLARATION OF LAURA KIBBE

I, Laura Kibbe, hereby declare as follows:

1.      I am a Senior Corporate Counsel at Pfizer Inc ("Pfizer"), one of the defendants in
the above-captioned matter.

2.      As part of my responsibilities, I coordinate discovery protocols and procedures,
as well as respond to discovery requests. I have been responsible for managing and coordinating
large scale document productions since the early 1990s.

3.    The information contained in this declaration is based on my general knowledge of Pfizer's business operations, and the magnitude of the efforts that would be necessary to locate and review information sought by the Plaintiffs in their discovery requests.

4.    After reviewing Plaintiffs' requests for post December 31, 1998 documents from Warner-Lambert and Pfizer-era custodians, I estimate that the documents from a minimum of well over 100 custodians would need to be collected in order to provide those documents. This number does not include personnel based in the field, as addressed below. I further estimate that it would take tens of thousands of hours to collect and review for responsiveness, confidentiality and privilege all documents necessary, including millions of e-mails, to respond to Plaintiffs' requests. In addition, Pfizer would incur costs for lost productivity and other business costs, such as training and contracting non-Pfizer personnel to conduct such a review.

5.    Based upon my experience conducting Pfizer discovery, I also estimate that the majority of the more than 100 potential custodians of documents will have multiple gigabytes of electronic data to be searched and culled, resulting in "reviewable" information in excess of 10 million pages in total. I also estimate that the cost for processing the electronic information, which excludes the cost for reviewing documents, would exceed $1.7 million dollars. When the costs of review are added, I estimate that it would take approximately 40 temporary workers, working 40 hours per week, almost 10 months to review 10 million pages. At the estimated hourly rates of $40 -$60 per hour for temporary workers, which is at the low end of the range of the likely cost, the magnitude of that review would require Pfizer to spend anywhere between $2.9 and $4.3 million in review costs, for a total of $4.6 to $6 million when the processing and initial review of documents for responsiveness is completed, excluding the costs of second

2

review by Pfizer's attorneys for privileged, confidentiality, and responsiveness. This estimate does not include the costs that would be incurred if documents needed to be collected from field sales personnel and field medical liaisons, of which there are hundreds.

6.    This estimate also does not include time and expense for review of documents by Pfizer's firm attorneys for responsiveness, privilege and confidentiality. Even assuming merely 25% of the documents initially reviewed for responsiveness, or approximately 2.5 million pages, are deemed responsive and in need of second review, the completion of this review by Pfizer's firm attorneys would add another one to two months to the total review time. The privilege and confidentiality check would also result in substantial additional costs, which would likely equal or exceed the expense incurred in conducting the initial review. The combined expense incurred in the search, collection, and production of documents in response to Plaintiffs' requests for documents after Dec. 31 1998 is therefore likely to exceed $10 million.

I declare under penalty of perjury under the law of the state of New York that the foregoing is true and correct, and that this declaration executed on _17th_ day of June 2005 at _Waterbury, Connecticut_.

Laura M. Kibbe

Laura Kibbe

3

# EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
In re:  NEURONTIN MARKETING,                                  :
        SALES PRACTICES AND                                   :  MDL Docket No. 1629
        PRODUCTS LIABILITY LITIGATION                         :
                                                              :  Master File No. 04-10981
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :  Judge Patti B. Saris
THIS DOCUMENT RELATES TO:                                     :  Magistrate Judge Leo T. Sorokin
                                                              :
ALL ACTIONS                                                   :
                                                              :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## SECOND DECLARATION OF LAURA KIBBE

I, Laura Kibbe, hereby declare as follows:

1.      I am a Senior Corporate Counsel at Pfizer Inc. ("Pfizer"), one of the defendants in the above-captioned matter.

2.      As part of my responsibilities, I coordinate discovery protocols and procedures, as well as respond to discovery requests. I have been responsible for managing and coordinating large scale document productions since the early 1990s.

3.      The information contained in this declaration is based on my knowledge of Pfizer's business operations, and the magnitude of the efforts that would be necessary to locate and review information sought by the Plaintiffs in their discovery requests.

4.      Historically, Pfizer collects 7.5 gigabytes of non-system files for each custodian during the course of a litigation. Non-system files are the actual data pulled from the laptops and the company's network, not program data such as Microsoft Word, Excel, or other word processing files. 7.5 gigabytes equals roughly 675,000 pages or 7500 megabytes. Pfizer's vendor charges $2 per megabyte to index and search.

Therefore, the processing costs alone are on average $15,000 per custodian. Notably, this does not take into consideration the paper documents that the custodians are likely to have. After removing all duplicates and filtering out documents that do not contain certain carefully crafted key works, Pfizer historically ends up with a reviewable set of documents reflecting 15% of the overall collected documents. Further, because of the redaction needs and the unproven nature of the technology for redacting native files, that 15% must be converted to a tiff images. Pfizer pays approximately 8 cents per page to convert native files into tiff images. That is on average $8100 per custodian for the tiff process. Accordingly, with 100 custodians, in addition to the processing costs, the "reviewable" number of pages in electronic form would equal just over 10 million pages.

5.    In the Provera litigation, as the collection is complete, the actual size of the average custodians' non-system files is far less than 7.5 gigabytes. This number reflects the fact that unlike Neurontin, Provera has not been actively promoted for years. Therefore, in the Provera litigation many custodians had virtually no responsive documents.

6.    In the Rezulin litigation in 2000, the volume of information for that product was far less than what one would expect to find for sales and marketing of Neurontin post-1998 because Rezulin was only on the market for three years (March 1997 through 2000). In addition, with advances in technology, electronic document collection efforts in 2005 are more complex and costly – and yield far greater volumes of electronic documents – than electronic document collection efforts in even as recently as 2000, when the Rezulin collection was conducted.

2

I declare under penalty of perjury under the law of the state of New York that the foregoing is true and correct, and that this declaration executed on 28th day of July 2005 at _New York, New York._

_Laura M. Kibbe_

Laura Kibbe