**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In Re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981<br>Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |
| ASSURANT HEALTH, INC., et al. v PFIZER INC., et al., No. 05-10535-PBS | |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO PFIZER'S AND WARNER-LAMBERT COMPANY'S OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE LEO T. SOROKIN, DATED AUGUST 4, 2006, RECOMMENDING THAT THE *ASSURANT* CASE BE REMANDED TO STATE COURT**

## I. INTRODUCTION

This Court should accept the Recommendation of Magistrate Judge Sorokin, dated August 4, 2006, and remand the *Assurant* Plaintiffs' case [1] to New Jersey state court where they originally filed their complaint. Contrary to the arguments of Pfizer and its wholly-owned subsidiary, Warner-Lambert Company,[2] they have not met their heavy burden to prove the basis

---

[1] The *Assurant* Plaintiffs include the following health benefit payors: ASSURANT HEALTH, INC., and its subsidiaries and affiliates and their self-funded plans; BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC. and its subsidiaries and affiliates and their self-funded plans; LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY and its subsidiaries and affiliates and their self-funded plans; BLUE CROSS BLUE SHIELD OF MASSACHUSETTS and its self-funded plans; BLUE CROSS BLUE SHIELD OF MICHIGAN and its subsidiaries and affiliates and their self-funded plans; BLUE CROSS BLUE SHIELD OF MINNESOTA and its subsidiaries and affiliates and their self-funded plans; GROUP HEALTH SERVICE OF OKLAHOMA, INC. and its subsidiaries and affiliates; CAREFIRST, INC. and its subsidiaries and affiliates and their self-funded plans; EXCELLUS HEALTH PLAN, INC. and its subsidiaries and affiliates and their self-funded plans; FEDERATED MUTUAL INSURANCE COMPANY, and its subsidiaries and affiliates and their self-funded plans; HEALTH CARE SERVICE CORPORATION, on behalf of itself and its Illinois, New Mexico and Texas Divisions and their self-funded plans; MUTUAL OF OMAHA INSURANCE COMPANY, and its subsidiaries and affiliates and their self-funded plans; TRUSTMARK INSURANCE COMPANY, and its subsidiaries and affiliates and their self-funded plans; and WELLCHOICE, INC., and its subsidiaries and affiliates and their self-funded plans.

[2] The *Assurant* Plaintiffs' Complaint is asserted against three additional defendants, Cline, Davis & Mann, Inc., Lodewijk DeVink and Anthony Wild. However, only Pfizer and its wholly-owned subsidiary, Warner-Lambert

for federal jurisdiction as required by the applicable Supreme Court authority. As Magistrate Judge Sorokin correctly determined the *Assurant* Plaintiffs plead a non-federal theory in support of their unlawful monopolization claims, hence no basis for federal jurisdiction exists over their state law claims.

A review of Pfizer's arguments demonstrates that Pfizer ignores various allegations in the *Assurant* Plaintiffs' well-pled complaint and distorts statements made at the August 18, 2005 hearing on this remand motion. Additionally, Pfizer apparently now seeks to transfer responsibility for its decision to place the *Assurant* Plaintiffs' case in this MDL proceeding with its argument, at footnote 2 of its memorandum, that the Judicial Panel on Multidistrict Litigation chose to transfer the *Assurant* Plaintiffs' case to this Court. Finally, Pfizer's arguments that it would be more practical for this Court to handle Neurontin cases without regard to the presence of federal jurisdiction is directly contrary to substantial Supreme Court precedent. None of the Supreme Court cases cited by Pfizer stand for the proposition that a federal court can exercise jurisdiction over a case simply on the grounds of "practicalities." As a result, Pfizer's arguments should be rejected and the Magistrate Judge's recommendation for remand should be accepted.

## II.  RELEVANT PROCEDURAL HISTORY

The *Assurant* Plaintiffs filed their complaint against Pfizer, its wholly-owned subsidiary Warner-Lambert Company, Cline, Davis & Mann, Inc., Lodewijk DeVink and Anthony Wild on November 24, 2004, in the Superior Court of New Jersey, Law Division, Bergen County. Document No. 125, Entry Nos. 22-23. On January 5, 2005, Pfizer removed their case to New Jersey federal court. Document No. 125, Entry No. 12, Ex. A. On January 11, 2005, James

---

Company, have objected to the Memorandum and Order of Magistrate Judge Sorokin that the case be remanded to New Jersey state court.

Rouhandeh, as counsel for Pfizer and Warner-Lambert Company, sent a letter to the Judicial Panel on Multidistrict Litigation and notified and advised that Judicial Panel that the *Assurant* case "contain[ed] common factual allegations similar to those in the twenty-seven actions transferred by the Panel on October 26, 2004 to the District Court of Massachusetts (MDL 1629)." Declaration of Annamarie A. Daley (submitted herewith), Exhibit B.

On January 27, 2005, the *Assurant* Plaintiffs filed their remand motion with the New Jersey federal court and asked that their case be returned to New Jersey state court. Document No. 125, Entry Nos. 2-3. On February 11, 2005, the defendants filed their opposition brief to that remand motion. Document No. 125, Entry Nos. 11-17. On February 25, 2005, the *Assurant* Plaintiffs filed their reply brief in support of their motion to remand. Document No. 125, Entry Nos. 18-21.

Pursuant to a Conditional Transfer Order, the *Assurant* case was transferred to this Court. A hearing on the *Assurant* plaintiffs' remand motion was held by Magistrate Judge Leo T. Sorokin on August 18, 2005. *See* Docket, Electronic Clerk's Notes, dated August 19, 2005.[3]

On August 25, 2005, Judge Lifland (the MDL judge on the patent cases brought by Pfizer against the various companies seeking to sell generic versions of Neurontin) granted summary judgment against Pfizer on its claims of infringement and in favor of various generic companies. Declaration of Annamarie A. Daley, Exhibit A.

### III.  LEGAL ARGUMENT

One of Pfizer's main arguments is that the *Assurant* Plaintiffs' case should be subject to Judge Lifland's ruling on remand motions in two cases in a separate MDL proceeding. As part of this argument, Pfizer's Memorandum, at footnote 2, contains the following statement: "The

---

[3] Although the docket entry states that the hearing date was August 19, 2005, a review of the actual transcript confirms that the hearing actually was held on August 18, 2005.

Judicial Panel on Multidistrict Litigation transferred this case here because of the factual allegations and consumer-protection claims related to the off-label promotion of Neurontin." However, nowhere in its Memorandum does Pfizer advise the Court that it, through the same counsel who signed its Memorandum objecting to Magistrate Judge Sorokin's Order, previously told the Judicial Panel the following:

> Pursuant to Panel Rule 7.2(i), Defendants Pfizer Inc, Warner-Lambert Company, and Parke-Davis, a division of Warner-Lambert Company, hereby notify and advise the Judicial Panel on Multidistrict Litigation (the "Panel") that the following actions, listed below, are potential tag-along actions in the above-captioned matter.
>
> 1) *Assurant Health Inc., et. al. v. Pfizer Inc, et. al.*
>
> * * *
>
> Under the Panel Rule 1.1, the above actions contain common factual allegations similar to those in the twenty-seven actions transferred by the Panel on October 26, 2004 to the District Court of Massachusetts (MDL 1629).

This actual statement to the Judicial Panel on Multidistrict Litigation is in Mr. Rouhandeh's January 11, 2005 letter, which is attached as Exhibit B to the Declaration of Annamarie A. Daley. Contrary to Pfizer's current arguments, when it first reviewed the Complaint of the *Assurant* Plaintiffs, it did not believe it was similar to the cases pending before Judge Lifland in that MDL proceeding. Rather, Pfizer apparently thought that the *Assurant* Plaintiffs' Complaint was different and therefore belonged in a different MDL proceeding. Moreover, Magistrate Judge Sorokin stated at the August 18 hearing that "the defendants sought to put you [referring to the *Assurant* Plaintiffs] here . . ." Document No. 436, Transcript, 65.

A.      **Standard of Review**

Pfizer has the heavy burden to establish that this state court action, asserting all state law

claims, could have originally been brought in federal court.  *See* Document No. 418, Order, 11.

All ambiguities as to the source of law relied on by plaintiffs must be resolved in favor of

plaintiffs.  *Rosello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 11 (1st Cir. 2004) ("Moreover, it is

well-settled that the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction

by exclusive reliance on state law.  Thus, the burden to prove that a federal question has been

pled lies with the party seeking removal. In light of this burden, and of the important federalism

concerns at play in considering removal jurisdiction, we find that any ambiguity as to the source

of law relied upon by the Suarez plaintiffs ought to be resolved against removal.") (quotations

and citations omitted).  Further, any doubts about the propriety of removal must be resolved in

favor of Plaintiffs.[4]  *In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 2d 98, 105

(D. Mass. 2006) (J. Saris)  ("The removal statute should be strictly construed, and any doubts

about the propriety of removal should be resolved against the removal of an action.").

Federal courts are courts of limited jurisdiction that may be asserted only over cases

"arising under the Constitution, laws or treaties of the United States."  28 U.S.C § 1331.  Federal

jurisdiction can exist over a plaintiff's well-pleaded complaint only if "plaintiff's right to relief

necessarily depends on resolution of a substantial question of federal law," *Christianson v. Colt*

*Indus. Operating Corp.*, 486 U.S. 800, 808 (1988), quoting *Franchise Tax Board of Cal. v.*

*Construct. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).  A claim cannot "arise under"

patent law unless resolution of a question of patent law is essential to all of the theories asserted

by a plaintiff for that claim.  "If 'on the face of a well-pleaded complaint there are . . . reasons

completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may

or may not be entitled to the relief it seeks,' then the claim does not 'arise under' those laws."

*Id.* at 810, quoting *Franchise Tax Board*, 463 U.S. at 26, n. 28.

Here, Pfizer has failed to meet this burden and the Recommendation should be accepted.

**B.      Remand is Proper Because Plaintiffs' Theory, Based on Pfizer's Payments to Doctors to Promote Neurontin, Supports Plaintiffs' Monopolization Claims Without the Need to Resolve any Substantial Federal Question.**

Magistrate Judge Sorokin correctly concluded that the Court should remand Plaintiffs'

case to New Jersey state court because Plaintiffs have advanced at least one non-federal theory

for their unlawful monopolization claims.  Magistrate Judge Sorokin explained:

> Plaintiffs do advance one non-federal theory: that defendants paid doctors, in the guise of speaking or consulting fees, to prescribe Neurontin for off-label purposes.  Complaint ¶ 37(E).  The Complaint makes plain that this is an allegation in support of a theory of anticompetitive conduct as follows.  Plaintiffs allege Pfizer entered into agreements with doctors . . . to unreasonably restrain trade, further anticompetitive goals, and improperly expand and maintain market share and power.™Id. at ¶ 38. Pursuant to these agreements, Pfizer paid the doctors for the false, deceptive, and misleading promotion of Neurontin.™Id.  One type of deceptive business practice plaintiffs allege is paying doctors to prescribe Neurontin for off-label uses.  Id. at ¶ 37.  Finally, plaintiffs allege the foregoing conduct necessarily and directly restrained and affected trade or commerce™ and proximately resulted in increased payments™ by plaintiffs for Neurontin or generic bioequivalents of Neurontin.  Complaint ¶¶ 61, 64.

Document No. 418, Order, 13.  Consequently, remand is proper because Plaintiffs have

presented a theory for their unlawful monopolization claims that raises no substantial question of

federal law.

Magistrate Judge Sorokin, who presided over the August 18 hearing, apparently disagrees

with Pfizer's contention that some abandonment of this theory occurred at that hearing.  A

careful review of the entire transcript demonstrates this point.  Plaintiffs' counsel explained at

the hearing that the marketing agreements, of themselves, could not establish a monopolization

claim without proof that Pfizer had monopoly power.  When asked: "[D]o you think you can win

on the monopolization claim on a marketing theory alone?"  Plaintiffs counsel stated: "On the

marketing theory alone in terms of the agreement, no."  Document No. 436, Entry Nos. 1-2.

Transcript, Aug. 18, 2005 at 14.  Obviously, the *Assurant* Plaintiffs would still need to prove that

those agreements allowed Pfizer to improperly obtain market power as alleged at ¶ 38 of the

Complaint.

By taking statements out of context, Pfizer argues that Plaintiffs waived or abandoned

arguments that Plaintiffs did not waive.  But Plaintiffs' counsel explained to Magistrate Judge

Sorokin that Defendants intentionally maintained their monopoly, lawfully acquired or

otherwise, by increasing demand through a deceptive marketing campaign:

> MS. DALEY: "Additionally, it was through that false information,
> saying that Neurontin was safe and effective for various uses and
> getting that information out to doctors who would then prescribe
> Neurontin, that also led to an increased demand for Neurontin in a
> situation where generics to Neurontin would not be able to use the
> ANDA procedure in order to get quick approval from the FDA."

Document No. 436, Transcript, 13:5-11.

Plaintiffs' counsel went on to explain:

> MS. DALEY:  "And that's one of the reasons why Pfizer decided
> to engage in this off-label campaign rather than going to the FDA
> and obtaining approval.  Now again, that doesn't rely upon the
> resolution of a federal question.  That goes to the intent of Pfizer
> and why it  was deciding to engage in this off-label marketing
> campaign, and there is no resolution of a federal question at all."

Document No. 436, Transcript, 16:23-17:5.

Plaintiffs have never maintained that the deceptive marketing allegations, standing alone,

could prove that Defendants monopolized the relevant market. Plaintiffs must first prove that

Defendants acquired a monopoly, lawful or otherwise. After establishing Defendants' monopoly power in a relevant market, Plaintiffs must then prove that Defendants intentionally maintained that monopoly, in this case, through a campaign of false, fraudulent and deceptive marketing of Neurontin® for off-label uses. None of the above issues require the resolution of any issues of patent law or any other federal law. Consequently, Magistrate Judge Sorokin correctly recommended remand, because Plaintiffs have presented a theory under which they could recover under all of their antitrust claims, both unlawful restraint of trade and monopolization, that does not require the resolution of a substantial federal question.

**C.    Remand is Proper Because a Federal Court Has Already Resolved the Substantial Federal Question Asserted by Pfizer in Its Objections.**

Even accepting Pfizer's arguments on Plaintiffs' marketing theory as correct, there is no longer any substantial federal question to be resolved in this case. Judge Lifland has granted summary judgment of noninfringement to the first and second wave defendants, generic manufacturers of gabapentin, ruling that patent plaintiff, Warner-Lambert, had not proved infringement as a matter of law. On August 25, 2005, about one week after oral argument on remand took place before Magistrate Judge Sorokin, the court in *In re Gabapentin Antitrust Litigation*, MDL No. 1384 (J. Lifland) granted summary judgment of noninfringement to the first wave of patent defendants, generic manufacturers of gabapentin Purepac, Teva, Ivax and Apotex. Judge Lifland concluded that Warner-Lambert was incapable of proving infringement of U.S. Patent No. 6,054,482 as a matter of law. On June 20, 2006, Judge Lifland also granted summary judgment of noninfringement on the same grounds to a "second-wave" patent defendant, Geneva.[5] With the issue of noninfringement resolved, upon remand, the state court may now determine whether that litigation against generic manufacturers of gabapentin was a sham. To

---

[5] On August 11, 2006, Warner-Lambert filed a notice of appeal to the Federal Circuit.

resolve this issue, a state court may rely on traditional legal concepts of sham litigation, without resolving any particular questions of patent law. The fundamental basis for Pfizer's objections to remand, that "any theory based on the antitrust claims in plaintiffs' complaint necessarily involves substantial questions of patent law" is incorrect. *See* Defs. Mem. at 1. Contrary to the main premise of Pfizer's objections to the order of Magistrate Judge Sorokin, there are no longer any substantial questions of patent law for the state court to resolve. Consequently, this Court should adopt Magistrate Judge Sorokin's recommendation that Plaintiffs' remand motion be granted.

With the issue of noninfringement resolved, the New Jersey state court is fully capable of resolving the issue in this case of whether Pfizer's lawsuits against generic manufacturers of gabapentin were a sham. A state court is perfectly capable of determining whether a patent holder engaged in sham litigation. *See Williams v. Del Monte Fresh Produce Co.*, 325 F. Supp. 2d 855, 859 (M.D. Tenn. July 9, 2004) (granting plaintiffs' motion to remand, determining that the state court could resolve the issue of whether defendants intentionally attempted to enforce a patent that was invalid) ("State court is a competent and appropriate forum to make this inquiry."). In a similar case involving a drug manufacturer who allegedly filed sham patent litigation against generic manufacturers, a federal court granted plaintiffs' motion to remand, noting that sham litigation, is an issue the state court is competent to resolve.

> "Plaintiffs, however, do not seek to litigate the validity of HMR patents. Rather, they allege that HMR violated Kansas law by instigating patent litigation for the sole purpose of delaying and preventing competition. Plaintiffs' right to relief does not 'necessarily depend on resolution of a substantial question of federal law.' and federal law is not 'a necessary element of one of the well-pleaded . . . claims.'"

*See Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F. Supp. 2d 1042, 1053 (D. Kan. 1999), quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 800 (1988). *See also In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 839 (E.D. Mich. 1999) (granting plaintiffs' motion to remand because plaintiffs' allegations of sham patent litigation did not require resolution of a substantial question of federal law); *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 674-75 (S.D.N.Y. 2000) (same).

Importantly, these courts found that allegations of sham litigation do not arise under patent law, even when the issues of patent validity or infringement had not already been resolved by a federal court.  Here, by contrast, a federal court has already determined the infringement issue.[6]

Pfizer has not advised this Court that Judge Lifland resolved the very issue of patent law that it now argues requires this Court to assert federal jurisdiction over this case. Notwithstanding Judge Lifland's grant of summary judgment of noninfringement, Pfizer maintains that "plaintiffs' antitrust claims depend on the exclusion of generic competition from the market for gabapentin, a market for which defendants' patents gave them exclusive control." Defs. Mem. at 1.  Pfizer declares that "patent law is essential to each of the theories underlying the antitrust claims in plaintiffs' complaint" (*id.* at 6) and that plaintiffs' antitrust "claims are grounded in the viability and scope of defendants' exclusive right to sell and market gabapentin." *Id.* at 7.

Pfizer does refer this court to another Judge Lifland order - one denying remand motions in two other cases - *Sall* and *Zafrana*.  First, as Pfizer itself recognized when it (not the JPML) decided to seek transfer of the Assurant case to this Court, the Assurant case is different than the

---

[6] As discussed *supra*, Plaintiffs' state antitrust claims do not depend on the resolution of substantial questions of federal law in the first place.

antitrust claims in the Lifland MDL antitrust proceedings.  Second, the antitrust claims in those

cases apparently relied solely on the scope of Pfizer's patents and the rights flowing from those

patents.  *See* Defs. Mem. Ex B, Order, MDL N0. 1479, *In re Neurontin Antitrust Litig.*, dated

Jan. 7, 2005, at 17-18.

Because at least one non-federal theory supports the *Assurant* Plaintiffs' unlawful

monopolization claims, this court lacks federal subject matter jurisdiction over this case.  No

amount of practical considerations can create subject matter jurisdiction where none exists, even

though Pfizer argues that the court could take such issues into consideration. As Magistrate

Judge Sorokin's Memorandum and Order correctly states: "The removal statute should be strictly

construed and any doubts about the propriety of removal should be resolved against the removal

of an action . . . . Defendants bear the burden of establishing jurisdiction" Document No. 418,

Order, 10, 11 (citations omitted).  Federal jurisdiction is lacking if Plaintiffs "articulate a theory

or theories of relief at least one of which is applicable to each claim that does not raise a

substantial federal question under a well-pleaded complaint."  Document No. 418, Order, 11.

Practical considerations cannot create subject matter jurisdiction where none exists.  But if a

court considers practical considerations, then remand is especially appropriate now that a federal

court has already determined that Pfizer has not established infringement by various generic

producers as a matter of law.

> **D.      Plaintiffs' Monopoly Leveraging Theory Referenced in Paragraphs 32-33 of the Complaint does not Require Resolution of any Substantial Issue of Federal Law.**

Plaintiff's monopoly leveraging theory does not require the resolution of any federal

question.  Leveraging is unlawful, even if the original monopoly was obtained through lawful

patent enforcement on a valid patent.  Consequently, monopoly leveraging provides an additional

theory, apart from the theory discussed *supra*, under which Plaintiffs could recover that does not require resolution of a substantial issue of federal law. Consequently, Plaintiffs' monopoly leveraging theory provides an independent reason why the Court should remand Plaintiffs' complaint.

Plaintiffs' Complaint asserts that Defendants have monopolized the market for Neurontin® and its generic bioequivalents.

> Defendants met and devised an illegal scheme to expand and extend market share and power through a false, deceptive, and misleading marketing campaign and misuse of the legal and regulatory system. Specifically, Defendants decided to increase demand for Neurontin and interfere with potential generic competitors by illegally marketing Neurontin for certain uses that were not safe and effective, in conjunction with acquiring and using other patents on other forms and methods of using gabapentin for anticompetitive purposes.

Document No. 125, Entry Nos. 22-23, Complaint, ¶ 32. Plaintiffs specifically allege that Defendants engaged in a monopoly leveraging scheme to expand the illegal monopoly power Defendants obtained in the market for Neurontin into other drug products being developed by Defendants. "Defendants also believed that their scheme would minimize the negative impact generic bioequivalents of Neurontin might have on potential sales of another drug that Defendant Pfizer had been developing, which would be exclusively sold and priced by Defendant Pfizer." Document No. 125, Entry Nos. 22-23, Complaint, ¶ 33.

The Magistrate Judge considered the monopoly leveraging theory, but decided that the theory relied on resolution of questions of federal law *See* Document No. 418, Order at 17, 19. The Magistrate Judge believed that Plaintiffs' monopoly leveraging theory depends on Defendants' filing objectively baseless litigation. But this is not correct. To the contrary, even legal monopolies violate the antitrust laws if "a seller exploits his dominant position in one

market to expand his empire into the next." *Times-Picayune Publ. Co. v. United States*, 345 U.S. 594, 611 (1953)  In fact,  a monopoly leveraging claim, by its very nature, assumes that the original monopoly is legal and valid and therefore, requires no resolution of any patent claim since it assumes that the patent is valid and has been properly enforced.

The expansion of a monopoly, even a legal one, into new markets, constitutes illegal monopolization.  *See Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 479 (1992), quoting *Times-Picayune Publ. Co. v. United States*, 345 U.S. 594, 611 (1953)  ("The Court has held many times that power gained through some natural and legal advantage such as a patent, copyright, or business acumen can give rise to liability if "a seller exploits his dominant position in one market to expand his empire into the next.'").  "A monopolist who acquires a dominant position in one market through patents and copyrights may violate § Two [of the Sherman Act] if the monopolist exploits that dominant position to enhance a monopoly in another market." *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1216 (9th Cir. 1997).

Just last month, another court rejected a challenge to a monopolization claim based on a monopoly leveraging theory.  *See* Ex. C, Daley Declaration, *In re Abbott Labs. Norvir Anti-trust Litig.*, No. C 04-4203 CW, 2006 U.S. Dist. LEXIS 47246 (July 6, 2006).  There Plaintiffs, including a health benefit plan, alleged that Defendant, Abbott Laboratories, improperly leveraged its monopoly over Norvir®, a branded version of the drug, ritonavir, used to combat the HIV virus.  In small doses, ritonavir can be used to enhance the effectiveness of other drugs that fight HIV.  The court referred to these markets as the "booster" market (for ritonavir) and the "boosted market" (for other HIV drugs with small doses of ritonavir added). The Court determined: "Plaintiffs provide evidence that Defendant abused its patent rights to Norvir to maintain its monopoly in the boosted market." *Id.* at \*\*14-15.  The monopoly leveraging claim

stated a claim for monopolization. As a result, that court denied the defendant's renewed summary judgment motion.

As the U.S. Supreme Court notes in *Times Picayune* and *Eastman Kodak*, cited above, leveraging of a legal monopoly is still actionable as monopolization. Here, Plaintiffs' monopoly leveraging theory provides an independent basis for recovery, without recourse to federal law. As a result, the Recommendation should be accepted and Plaintiffs' remand motion should be granted.

## IV.  CONCLUSION

For all of the reasons stated above and in the *Assurant* Plaintiffs' submissions in support of their motion to remand, the *Assurant* Plaintiffs respectfully request that the Court accept the recommended action to remand their case to New Jersey state court.

DATE:   September 1, 2006.

s/Annamarie Daley
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Annamarie A. Daley (Minn. #158112)
Jeffrey R. Vesel (Minn. #325193)
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Tel.: 612.349.8500
Fax: 202.223.8604

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
W. Scott Simmer (D.C. #460726)
Thomas J. Poulin (D.C. #475115)
1801 K Street, N.W., Suite 1200
Washington, DC 20006
Tel.: 202.775.0725
Fax: 612.339.4181

*Attorneys for Assurant Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on September 1, 2006.

/s/Annamarie A. Daley_____