UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin |
| ALL MARKETING AND SALES PRACTICES ACTIONS | |

### DEFENDANTS' OPPOSITION TO SALES AND MARKETING PLAINTIFFS' MOTION TO COMPEL

Defendants Pfizer Inc. and Warner-Lambert Company submit this memorandum in opposition to Sales and Marketing Plaintiffs' Motion To Compel Defendants To Comply with the Stipulated Protective Order and CMO # 3.

### PRELIMINARY STATEMENT

Plaintiffs are seeking the production of information that is not responsive to their document requests, not within the confines of the discovery scope order entered by the Court, not relevant to their surviving claims in this litigation, and produced in another litigation that is not governed by Case Management Order ("CMO") Number 3. In their attempt to whipsaw defendants between two litigations, plaintiffs also would impose an unnecessary burden on defendants. The Court should deny plaintiffs' motion.

The redacted information at issue relates to drugs other than Neurontin and, as such, it is not relevant to this litigation. In addition, much of this information is highly proprietary and deals with commercially sensitive issues. The information was also produced in a different litigation (in New York state court), during the time period while discovery in the MDL was stayed, and plaintiff's counsel in the New York litigation agreed to the redaction of information regarding other drugs. Plaintiffs' suggestion that defendants somehow have failed to comply with CMO 3 under these circumstances is false.

Moreover, many of the documents at issue are beyond the scope of discovery provided by the Court in this litigation, either because they are from the time period after May 31, 2001 or because they do not deal with indications that remain in the case. The MDL plaintiffs are not entitled to this information, let alone in un-redacted form.

Plaintiffs' demands related to the redactions to the documents produced in another case have highlighted concerns with the terms of CMO 3. In order to avoid wasting the Court's time by filing a separate motion with separate briefing on a substantially identical topic, defendants informed plaintiffs that they would seek to modify CMO 3 as part of their opposition to plaintiffs' motion on this issue. Plaintiffs did not object to defendants proceeding in this fashion. Accordingly, defendants respectfully request that the Court modify CMO 3 to allow the parties to redact certain non-responsive information contained in documents produced in the MDL going forward.

## STATEMENT OF FACTS

During October and November, 2005, defense counsel and Kenneth B. Fromson, Esq., of Finkelstein & Partners ("Finkelstein"), counsel for plaintiff William Young, met and conferred regarding discovery requests that had been served and objected to in the New York state action <u>Young v. Pfizer Inc., et al.</u>, 1062/2004. Pursuant to agreements reached during these meetings, defendants agreed to produce responsive documents from the custodial files of certain employees responsible for Neurontin from the clinical, medical, regulatory, risk management analysis and safety surveillance departments. Mr. Fromson agreed that the documents would be redacted by defendants to the extent the documents related to or referenced Pfizer products other than Neurontin.[1] In a subsequent telephone conference held on February 24, 2006, counsel for the parties further agreed that defendants would provide plaintiff with privilege logs corresponding to the custodial files but would not be required to produce a similar such log to correspond to redactions made on the basis of other drugs. <u>See</u> Declaration of Kathryn Cole dated September 5, 2006 ("Cole Decl."), at ¶ 5.

In the <u>Young</u> case, defendants produced documents from twenty-eight custodians, totaling 62,359 documents in the amount of 919,596 pages. The bulk of these materials were created in the period after Pfizer's merger with Warner-Lambert in June 2000, and many of the documents produced were created after May 31, 2001. <u>See</u> Cole Decl. ¶ 4. Over 15,000 of the documents produced, consisting of over 380,000 total pages, were

---

[1] While plaintiffs suggest that "the plaintiff in [Young] disputes" that defendants were permitted to make these redactions, they fail to provide an affidavit or any other support for this contention. Plaintiffs' Memorandum in Support of Motion to Compel ("Pls.' Mem.") at 2.

3

produced, per defendants' agreement with Finkelstein, bearing redactions of information relating to drugs other than Neurontin. <u>Id.</u> Defendants spent thousands of attorney hours redacting these documents and conducting second review to ensure the redactions were appropriate. <u>Id.</u> These materials were produced between January 13, 2006 and June 5, 2006. <u>Id.</u> Discovery in the sales and marketing cases was stayed for virtually the entirety of that time. <u>See</u> Order Staying Discovery, dated January 31, 2006 (Docket # 270).

On August 16, 2006, counsel for sales and marketing plaintiffs and counsel for defendants engaged in a meet-and-confer session regarding plaintiffs' outstanding document requests and other discovery issues, including the issue regarding redactions to the documents produced in <u>Young</u>. During that meet-and-confer session, defendants specifically stated that if plaintiffs were particularly concerned about the redactions to certain documents they felt were of importance, plaintiffs could identify those documents and defendants would consider un-redacting them. Cole Decl. ¶ 6. Plaintiffs instead informed defendants that they intended to make a motion to compel the production of the custodial files previously produced in <u>Young</u> in un-redacted form. <u>Id.</u> At the meet-and-confer session and in a subsequent telephone call, counsel for defendants expressed their intention to move to modify CMO 3 to allow redactions of sensitive information relating to non-responsive drugs contained in documents produced in the MDL. The parties agreed that such a request to modify CMO 3 could be included in the opposition to plaintiffs' motion to compel these materials, rather than providing the Court with multiple briefs addressing largely identical issues. <u>Id.</u> ¶ 7.

## ARGUMENT

The Court should deny plaintiffs' attempt to secure access to non-responsive, commercially sensitive information. While plaintiffs claim that defendants have somehow violated CMO 3, Pls.' Mem. at 4, the truth is that these documents were not produced in the MDL and therefore are not subject to the dictates of the case management orders in this litigation. The fact that the parties have agreed that the sales and marketing plaintiffs can have access to the materials produced in Young does not change this.[2]

Plaintiffs' interest in and focus on these materials have led defendants to develop some concerns about the production of materials in the MDL going forward. Defendants respectfully request that the Court modify CMO 3 to provide that the parties can redact sensitive non-responsive information from materials produced in the MDL.

### I.   DEFENDANTS SHOULD NOT BE REQUIRED TO PRODUCE UN-REDACTED VERSIONS OF REDACTED DOCUMENTS PRODUCED IN YOUNG

#### A.   Plaintiffs Are Not Entitled to Un-redacted Versions of Documents

Sales and marketing plaintiffs are not entitled to receive un-redacted versions of the documents produced in Young. As an initial matter, no case management order governed the redaction of information produced in Young, and, in particular, CMO 3 did not apply to those productions. Because of this, and because of the agreement reached

---

[2] Plaintiffs refer to the "agreement" by which they are granted access to documents produced to Finkelstein in Young. Pls.' Mem. at 2-3. Defendants have not disagreed that Finkelstein can use such documents in connection with other litigations brought by that firm, including those that have been transferred to the MDL. Defendants also did not object to Finkelstein sharing those documents with the sales and marketing plaintiffs. No order or stipulation in this case, however, sets forth guidelines for this sharing.

5

between defendants and counsel for Mr. Young, the redactions that the defendants made to the documents were entirely proper.

Moreover, contrary to plaintiffs' unsupported assertions in their memorandum, Pls. Mem. at 1, defendants have never agreed that the information redacted from the documents is responsive. Indeed, defendants clearly stated in writing that the redacted information relates to other drugs that are irrelevant to this case, as well as containing trade secrets. See Cole Decl. Exh. A (letter from Deborah MacGregor to Susan Collyer, dated August 24, 2006), at 2.

Much, if not all, of the redacted information is non-responsive because it is not relevant to the claims and defenses at issue in the MDL. These documents were produced in Young prior to Magistrate Judge Sorokin's July 18, 2006 discovery order, which tailored discovery in this case to the claims and defenses that remain in the litigation. See July 18, 2006 Discovery Order No. 3 (Docket # 393) ("Discovery Order 3"). The documents relating to indications other than those in Discovery Order 3 are not called for in the MDL. Discovery Order 3, at 3. Documents from the period after May 31, 2001 are also not responsive. Id. While defendants do not suggest that these materials should not have been shared with the sales and marketing plaintiffs, the plaintiffs have received more documents from the files of these custodians than they are entitled to in this litigation, and as a result they certainly are not entitled to receive those documents now in un-redacted form.

Plaintiffs argue that the redactions appear to relate only to Lyrica, that Lyrica is relevant to their case, and that defendants have not sought to dismiss allegations relating to Lyrica.[3] Pls.' Mem. at 6. The only allegation that plaintiffs make about Lyrica is that defendants marketed Neurontin for off-label uses with the intention of "switching" physicians to Lyrica once it launched. Second Amended Class Action Complaint ("SACAC") at ¶ 44. Such an allegation is insufficient to render all information about Lyrica relevant and responsive to this litigation. Moreover, contrary to plaintiffs' assertions, defendants have not redacted information about Lyrica because it "happens to be the only drug whose connection to Neurontin is discussed in the complaint," Pls.' Mem. at 6, but because Lyrica is a very new drug that was just approved on December 30, 2004. Because of this fact, discussions about approvals, submission to the FDA, launch plans, financial projections, product positioning, and the like are particularly sensitive and should be redacted. Finally, defendants are not seeking to deprive plaintiffs of any materials to which they are entitled, as demonstrated by defendants' offer to consider un-redacting documents plaintiffs identify as of particular interest.

B. **Plaintiffs' Demand Would Subject Defendants to Undue Burden**

Plaintiffs' demand for un-redacted documents is an attempt to whipsaw defendants between litigations, to the expense and detriment of defendants. In order to move discovery forward in <u>Young</u>, defendants agreed to produce the files of twenty-eight

---

[3] Plaintiffs' assertion that "Defendants have not moved to dismiss these allegations," Pls.' Mem. at 6, is puzzling, because pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure a party does not seek to dismiss an allegation, but rather moves to dismiss claims.

7

custodians, subject to an agreement that defendants could redact certain non-responsive information. Plaintiff's counsel, Finkelstein – which serves on the Products Liability Steering Committee in this MDL – agreed to this restriction, and defendants duly incurred the tremendous time and expense associated with conducting a thorough review of these materials, including making redactions pursuant to the agreement reached with plaintiff. Now a different set of plaintiffs' lawyers demand production of these materials, but without the redactions defendants so laboriously input. This would not only be inefficient but would be highly burdensome, and would require defendants to conduct the same expensive and time-consuming work more than once.

Moreover, defendants cannot produce un-redacted versions of these materials after simply flipping a switch. Instead, counsel for defendants will need to review each document in its entirety to ensure that only appropriate redactions were removed and that no redactions for privilege or patient privacy purposes were inadvertently removed. Over 15,000 documents, consisting of over 380,000 total pages, were produced in <u>Young</u> with information relating to drugs other than Neurontin redacted. Conducting a re-review of these materials would require a significant effort and investment of attorney hours, and would necessarily divert man power from producing numerous other materials requested by plaintiffs.

Plaintiffs' suggestion that defendants could simply rely on a privilege log instead of engaging in this exercise is not practical. Pls.' Mem. at 7. As explained during the meet-and-confer sessions, privileged documents inadvertently produced by defendants in

another Neurontin matter have been the subject of several meet-and-confer sessions and may lead to motion practice. Cole Decl. ¶ 8. In part because of this experience, defendants must continue to be particularly careful to avoid the inadvertent production of privileged documents. Moreover, comparing over 15,000 documents to a list on a privilege log would be no small task in and of itself. Finally, as defendants explained at the August 16, 2006 meet-and-confer session, any burden incurred to un-redact these documents is undue because it is effort spent undoing work defendants engaged in permissibly in the first place.

## II.   THE COURT SHOULD MODIFY CASE MANAGEMENT ORDER NUMBER 3 TO ALLOW THE REDACTION OF NON-RESPONSIVE INFORMATION

In addition to ruling that the plaintiffs are not entitled to receive un-redacted versions of the documents produced in Young, the Court also should modify CMO 3 to allow such redactions to documents produced in the MDL in the future. Plaintiffs are not entitled to receive non-responsive material in the course of discovery. Because of this, defendants should be permitted to redact such material, particularly when it relates to commercially sensitive information.[4]

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, courts have an inherent power to modify protective orders and the decision to modify is committed to the sound discretion of the trial court. See Public Citizen v. Liggett Group, Inc. 858 F.2d

---

[4] Plaintiffs attempt to buttress their untrue accusation that defendants are violating CMO 3 by stating that "Defendants have not argued for any modification of the Protective Order." Pls.' Mem. at 5. This statement is unwarranted, as defendants informed plaintiffs of their intention to seek such a modification both at the August 16, 2006 meet-and-confer session and again in their August 24, 2006 letter. See Cole Decl. Exh. A.

9

775, 782, 790 (1st Cir. 1988). CMO 3 currently provides that the parties may redact only for purposes of protecting a legal privilege or information protected by the Health Insurance Portability and Accountability Act ("HIPAA"). CMO 3 (Docket # 62) at 6. The Court should exercise its discretion and modify CMO 3 to allow the parties also to redact non-responsive material from documents they produce in the MDL.

Allowing redactions of non-responsive material does not harm plaintiffs. Rule 26 of the Federal Rules of Civil Procedure provides that parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Accordingly, parties have no right to receive information that is not relevant to a claim or defense. Plaintiffs, not surprisingly, point to no law providing that non-responsive materials should be produced in the course of discovery.

The bulk of the material that defendants would seek to redact under a modified CMO relates to drugs other than Neurontin. Such materials often appear within documents containing responsive Neurontin information. This occurs because documents are often created to address more than one subject. The production of information relating to such drugs clearly is not contemplated by Discovery Order 3.

It is particularly appropriate to allow redactions when the non-responsive material is commercially sensitive. Such information includes, *inter alia*, on-going marketing

strategies. As discussed above, this will hold true in particular for Lyrica, and the modification of CMO 3 therefore should allow such redactions related to that drug.[5]

Plaintiffs argue that the January 10, 2005 protective order in this case should adequately address defendants' concerns regarding the production of commercially sensitive, non-responsive information, but defendants believe that they should not have to rely on the protection afforded by that order for non-responsive information. Defendants have not argued that there is some exception to the protective order that allows the redaction of responsive, but confidential, material. Instead, defendants believe that CMO 3 should be modified to allow the redaction of *non-responsive*, commercially sensitive information.

---

[5] Were this Court to determine that defendants should provide un-redacted information about Lyrica, not all such information should be provided. Only information relating to plaintiffs' sole allegation about Lyrica, see SACAC ¶ 44, should be un-redacted.

11

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny the plaintiffs' motion to compel and modify CMO 3 to allow the redaction of non-responsive information.

Dated:   September 5, 2006                    PFIZER INC., et uno,

By their attorneys,

s/ James P. Rouhandeh
James P. Rouhandeh
Deborah L. MacGregor

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

-and-

s/ David B. Chaffin
David B. Chaffin
BBO # 549245
HARE & CHAFFIN
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 5, 2006.

/s/David B. Chaffin