# EXHIBIT A

# DAVIS POLK & WARDWELL

1300 I STREET, N.W.
WASHINGTON, D.C. 20005

1600 EL CAMINO REAL
MENLO PARK, CA 94025

99 GRESHAM STREET
LONDON EC2V 7NG

15, AVENUE MATIGNON
75008 PARIS

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

WRITER'S DIRECT
212 450 4853

MESSETURM
60308 FRANKFURT AM MAIN

MARQUÉS DE LA ENSENADA, 2
28004 MADRID

1-6-1 ROPPONGI
MINATO-KU, TOKYO 106-6033

3A CHATER ROAD
HONG KONG

August 24, 2006

Re:   **In re Neurontin Marketing, Sales Practices and Products Liability Litigation, MDL No. 1629**

Ms. Susan Collyer, Esq.
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street
New York, New York 10016

Dear Susan:

I write in response to your August 18, 2006 letter summarizing our discussions during the August 16, 2006 meet and confer session. Defendants wish to clarify a number of points.

Custodial Documents: We agree that the parties are at an impasse regarding redactions made to the documents of 28 custodians produced in *Young v. Pfizer Inc. et al.*, 1062/2004 (New York State Court), and we recognize that you intend to move the Court on this issue. As you know, these documents were produced in a different case which is not subject to the dictates of Case Management Order ("CMO") Number 3. Indeed, the sales and marketing plaintiffs have received a greater volume of materials from these custodians than they would have under the discovery rulings in the MDL. The redacted information at issue relates to other drugs that are irrelevant to this action and includes trade secrets. Moreover, as we discussed, to re-produce the information in unredacted form would be unduly burdensome, particularly in light of the need for attorneys to review the materials yet again prior to any such production. Finally, as you are aware, defendants may seek to modify CMO 3 to allow the redacting in the MDL of highly sensitive confidential information unrelated to Neurontin.

Physician Attendance at Neurontin Events: With regard to documents related to the consumer plaintiffs' treating physicians' attendance at Neurontin events, please note that it is not the case that "defendants refuse to produce these documents on grounds of burden and relevance." To the extent information about attendance at an event is in the documents relating to the relevant meetings regarding the off-label use of Neurontin for one of the relevant indications, such documents will be provided. As defendants have explained in the past, we are not

Susan Collyer, Esq.                    2                    August 24, 2006

willing to undertake a separate collection and review of the files of all sales and marketing employees from the period from 1999 to the present to search for this information, as this would constitute an enormous burden where there is no evidence or specific allegations that this information exists, *i.e.*, that any of the relevant physicians attended any Neurontin event during this period. Defendants have stated, however, that we are willing to conduct, where possible, targeted searches for this information if plaintiffs are able to identify events that these physicians attended. We note again that plaintiffs' counsel have been in contact with at least some of the relevant physicians. That plaintiffs' counsel have never advised us that any of these physicians in fact attended a Neurontin event after 1998 only further confirms that plaintiffs' request for these materials is a fishing expedition. Nonetheless, if you provide us with the foregoing information, we will attempt to determine whether a reasonable search can be made for documents relating to any such identified events. In addition, defendants are also willing to conduct a reasonable search if the physicians testify at their depositions as to specific events that they attended after 1998.

     <u>Cline Davis & Mann and Sudler Hennessey Documents</u>: Defendants are reviewing the vendor documents for both privilege and responsiveness, in light of the Court's discovery scope order. We have not agreed to produce "the 40 boxes" unless they are both non-privileged and responsive.

     <u>Ann Arbor "Spillover"</u>: Please note that defendants did not agree to run additional searches in order to generate a new index of Neurontin Trial Master Files ("TMFs") and Case Report Forms ("CRFs"). Defendants requested that plaintiffs send us the list of proposed search terms and stated that, once we had received that list, we would discuss the feasibility of running such a search with our client.

     <u>Identified Doctors</u>: In addition to the fact that it is burdensome to search for payments relating to the 75 identified physicians, defendants have also noted that a number of these doctors are not relevant to the case, particularly because the Court narrowed the scope of the case in the ruling on defendants' motions to dismiss. Defendants requested that plaintiffs narrow the list of doctors to those who are connected to the allegations remaining in the case. This request is based on both relevance and burdensomeness grounds. We understood that plaintiffs were going to consider limiting the list of identified physicians, but assume from your letter that plaintiffs have decided to decline to do so.

     <u>Information Related to Discussion With Micromedex</u>: Responsive materials, if any, should be in the files of the medical information group. Such files were produced in *Young* and are now available to plaintiffs.

     <u>Foreign Clinical Trials</u>: As discussed, defendants have determined that not all materials related to foreign studies were sent to Ann Arbor for storage at the completion of the study. There is not a single depository of such materials, and in order to locate any such documents defendants will be required to do an individual search for each study. Accordingly, defendants requested plaintiffs to

Susan Collyer, Esq. 3 August 24, 2006

identify those foreign studies related to indications remaining in the litigation for which you are interested in reviewing materials (if available). Meanwhile, defendants will determine whether a list of all foreign Neurontin studies exists.

<u>Budgets for Marketing, Advertising, Promotion, Sales, Research and Development of Neurontin for the Time Period Prior to May 31, 2001</u>: Defendants will conduct a reasonable search within the marketing department for these materials.

<u>Profit and Loss Statements</u>: Please note that defendants did not suggest that Pfizer does not keep profit and loss information by drug. Instead, we noted that our current understanding is that such information is not available for the United States only. As we stated during the meet and confer session, we will continue to look into this issue.

<u>Documents Relating to the Efficacy of Neurontin</u>: Defendants have conducted a diligent search of the custodians who we believe are most likely to possess materials related to the efficacy of Neurontin. Some of these files are still being produced.

<u>Identification of Marketing Strategies</u>: Defendants agreed to produce responsive documents relating to those indications that remain in the case. We expect that these documents will include discussions of marketing strategies.

<u>Custodial Files of Marketing and Medical Personnel</u>: Defendants have not agreed to produce the entire contents of these custodial files. Defendants will search these files and produce responsive documents relating to the issues that remain in the case.

Please let me know if you have any questions.

Sincerely,

*Debbie MacGregor*

Debbie MacGregor

cc: Ronald Aranoff, Esq.
    Thomas Greene, Esq.
    Kenneth Fromson, Esq.
    Irwin Levin, Esq.
    Edward Notorgiacomo, Esq.
    Mark Sandmann, Esq.
    Linda Nussbaum, Esq.
    Gerald Lawrence, Esq.

<u>By Facsimile</u>