## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) |  MDL DOCKET NO. 1629<br><br>Master File No.: 1:04-cv-10981-PBS<br><br>Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO: ALL MARKETING AND SALES PRACTICES ACTIONS | ) ) ) ) ) |  |

**REPLY TO DEFENDANTS' OPPOSITION TO SALES AND MARKETING PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO COMPLY WITH THE <u>STIPULATED PROTECTIVE ORDER AND CMO #3</u>**

I. **THE CUSTODIAL FILES ARE RESPONSIVE TO THE PLAINTIFFS' DOCUMENT REQUESTS AND WERE REQUIRED TO BE PRODUCED UN-REDACTED UNDER CMO #3 AND THE STIPULATED PROTECTIVE ORDER**

Defendants' principal justification for failing to produce documents in accordance with the terms of CMO #3 is that the documents are not responsive to the Plaintiffs' requests in these actions. They also contend that they are justified in redacting information about pregabalin (which Defendant Pfizer markets under the tradename Lyrica) because such information is not relevant and would disclose trade secrets. None of these excuses justify Defendants' failure to abide by the unambiguous terms of Case Management Order No. 3.

    A.    Notwithstanding the Discovery Limitations Imposed by Discovery Order # 3, The Custodial Files Are Discoverable in These Actions

Defendants contend that many of the redacted documents would have never been produced to the Sales and Marketing Plaintiffs because of the discovery limitations this Court imposed in Discovery Order No. 3. Once again Defendants mischaracterize the issues raised by the Plaintiffs' complaint in order to impede Plaintiffs' right to collect relevant evidence.

Defendants, for example, claim that all of the custodial files created after May 31, 2001, are undiscoverable due to the temporal limitation the Court imposed.[1] But Discovery Order No. 3 only limits <u>marketing</u> discovery. ("Thus, as a temporal matter, marketing discovery may run through May 31, 2001," Discovery Order No. 3 at 3). The parties have always agreed that scientific, medical and regulatory documents dealing with the off-label use of Neurontin are to

---

[1] Such a position begs the question regarding Defendants' position on documents prior to May 31, 2001, which are unquestionably discoverable. If Defendants were merely attempting to ensure that the Court's discovery boundaries were fairly enforced, they would immediately agree to produce un-redacted copies of pre-June 2001 documents. Instead, they want the Plaintiffs to individually identify each document believed to have been improperly redacted. This burden shifting flies in the face of CMO #3, which places the burden on the producing party to justify each redaction. Rule 26 jurisprudence also demands that the party seeking to withhold documents justify each document's nondisclosure. <u>Foltz v. State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1130 (9th Cir. 2003). A party should not be able to knowingly violate a case management order on a wholesale basis and then require the non-violating party to identify each and every occasion the producing party shirked the Court's command.

be produced regardless of date, since such information is relevant to the issues relating the Neurontin's efficacy for off-label uses (or lack thereof).

None of the custodial files at issue relate to any marketing or sales employee of the Defendants. Most—if not all—of the custodial files belonged to medical, scientific and regulatory employees: individuals who routinely received and generated documents relating to Neurontin's efficacy. In terms of volume, most of the redacted documents come from the files of Pfizer's senior scientists, such as Leslie Tive, Ph.D., Pfizer's Medical Director for Neurontin, and Charles Taylor, Ph.D., a senior scientist in Pfizer's research and development department. As scientists, Tive and Taylor were responsible for obtaining data and reviewing studies relating to Neurontin's use. Similarly, the regulatory personnel would have substantial information relating to studies that showed Neurontin's efficacy for non-epilepsy uses as well as the Defendants' failed efforts to prove that Neurontin was effective for epilepsy monotherapy, neuropathic pain, and at dosages greater than 1800 mg per day. These documents are discoverable by Plaintiffs regardless of date.

Defendants also speculate that some redacted documents may pertain to indications that are no longer in the case as a result of Discovery Order No. 3. Defendants seem to have forgotten, however, that the Court denied Defendants' request for protective order based on "non-actionable indications" and has not ruled any indication is out of the case. Indeed, Defendants do not identify any custodial documents that pertain solely to an off-label indication not alleged in the second amended complaints to have been marketed improperly.

Nor are Defendants' redactions excused because they pertain to pregabalin. First, the documents produced all concern Neurontin; documents with no relevance to Neurontin would not have been produced in any fashion. Once a subject document is responsive, at least in part,

CMO No. 3 clearly provides that the document must be produced in whole. If substantial parts of the document are immaterial, that is simply more chaff the reviewing party must separate as it winnows though the produced material. Just as important, however, is the fact that documents regarding pregabalin and Neurontin are highly relevant to the Plaintiffs' case. Pregabalin is chemically similar to Neurontin and as alleged by the Class Plaintiffs, Defendants intended pregabalin to be the successor to Neurontin. In these circumstances, as Pfizer developed the newer drug and examined its usage in comparison to its existing line, documents comparing pregabalin to Neurontin would likely contain the most candid evaluations of the usage and efficacy of the older drug. These documents are the most likely to examine the evidence regarding Neurontin's usage without puffing. A license to blot out pregabalin from documents otherwise responsive to Plaintiffs' document requests will deprive Plaintiffs of some of the most relevant evidence in this case.

      B.      There Is No Basis For Modifying The Parties' Agreement That Trade Secrets Would Be Disclosed Subject To the Stipulated Protective Order

A second basis proposed by Defendants for redacting documents is to prevent the disclosure of "particularly sensitive" commercial information regarding pregabalin. However, at the start of this litigation, the parties wrestled with the problems posed by commercially sensitive information and reached an agreement, which was subsequently adopted by the Court as the Stipulated Protective Order. Under the agreement, documents that contained trade secrets or confidential commercial information could be designated as "Confidential," thus restricting their circulation to defined classes of individuals. But no party is excused from refusing to produce a document on the ground that it confidential. Defendants propose no good reason why they should not remain bound by their earlier bargain.

Defendants' motion effectively proposes that the Court modify the Stipulated Protective Order to permit two classes of confidential information—material that can currently be classified as "Confidential," and an even more protected class of "particularly sensitive" information. The latter category, under the Defendants' proposal, need not be disclosed and can be redacted from documents at the discretion of the producing party. Yet such a restructuring of the protective order ignores the fact that in the negotiations among the parties that led to the Stipulated Protective Order, Defendants proposed, and the Sales and Marketing Plaintiffs rejected, a protective order that permitted Defendants to designate different tiers of confidentiality, including a "highly confidential" designation that substantially restricted disclosure. In consideration for Plaintiffs agreeing to other elements of the Stipulated Protective Order, Defendants dropped their request to give heightened protection to certain types of documents and information.[2] Having obtained concessions from the Plaintiffs in order to get agreement on the Stipulated Protective Order, Defendants cannot be allowed not only to nullify one of the most important benefits the Plaintiffs bargained for, but also to completely stonewall information disclosure at their discretion with the Plaintiffs having virtually no ability to overturn Defendants' unilateral decision to redact.[3]

It is well established that there is no absolute privilege for trade secrets and similar

---

[2] The Stipulated Protective Order does permit Third Party Payor plaintiffs to designate certain types of information as "Highly Confidential," but this exception only proves the rule. First, this designation only applies to the TPPs and cannot be invoked by Pfizer. Second, the reason for this heightened protection was to prevent confidential commercial information from being disclosed to competitors or adversaries in existing, unrelated litigation. No such danger exists here. Third, even "Highly Confidential" material must be disclosed; such a designation only restricts who may view the material.

[3] The same argument, of course, also applies to Defendants' efforts to modify CMO #3, another order that was carefully negotiated by the parties. Defendants are once again asking the Court to free them from the responsibilities their experienced and capable counsel knowingly committed them. It is ironic that Defendants repeatedly claim they should get the benefits of a disputed agreement with the Product Liability Plaintiffs' Counsel, even if the consequences of such an action is to breach two undisputed agreements (subsequently formalized into court orders) with the Sales and Marketing Plaintiffs.

confidential information.  <u>Federal Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill</u>, 443 U.S. 340, 362, 99 S. Ct. 2800, 2813 (1979).  Courts will often require disclosure of trade secrets, even in litigation with competitors, when appropriate precautions are provided.  <u>Ares-Serono, Inc. v. Organon Int'l B.V.</u>, 151 F.R.D. 215 (D. Mass. 1994) (requiring disclosure of research data since protective order already existed in the case).  Here, the existing protective order provides such protection and there is no concern about competitors obtaining the sensitive information.  Defendants have simply failed to carry their burden under Fed. R. Civ. P. 26 (c) to show how a disclosure of the redacted material would cause identifiable, significant harm.  <u>Foltz v. State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1130 (9th Cir. 2003).

Indeed, it is unlikely any harm will arise if Defendants are required to comply with CMO #3.  In the <u>Franklin</u> litigation, Defendants did not redact documents that referenced pregabalin, even though at that time the drug was still in the investigation stage and all testing of the drug was considered confidential by the FDA.  Now that the drug is out on the market, it hard to see how information related to the compound is more confidential.  Second, many of the custodial files do not redact references to pregabalin.  In other cases, the redaction is so transparent that the stray blacked out words provide little more protection than pasties.  Plaintiffs cannot understand why information about pregabalin can be sensitive in one document, but have no bearing on another; such conduct leads to the strong inference that information is being suppressed for tactical, not commercial, reasons.  Defendants' inconsistent application of the redaction stamp amounts to a subject matter waiver.

    C.    <u>Defendants Cannot Legitimately Claim That The Burden of Producing Un-Redacted Documents That They Voluntarily Agreed To Bear Is Undue</u>

It is beyond comprehension how Defendants can claim that it is an undue burden for

5

them to comply with consensual orders that they negotiated and voluntarily entered. Defendants knowingly limited their right to redact when they agreed to the terms of CMO #3. Defendants made identical choices when they agreed to the terms of the Stipulated Protective Order. Even if the Products Liability Plaintiffs granted them a concession in their production under the Young case, they have never been excused from their production obligations in these actions. Given that Defendants intelligently agreed to those obligations when they negotiated the applicable orders, they cannot now claim those obligations result in undue burden.

Defendants also claim that they will incur duplicative expense if they are required to comply. Yet, at the time the documents were produced, Defendants knew their obligations under CMO # 3, knew that the documents would be turned over to the Sales and Marketing Plaintiffs and knew that the documents were responsive to the Sales and Marketing Plaintiffs existing document requests.[4] Aware of those responsibilities, they nonetheless choose to make a production that did not meet their obligations. Had they kept their obligations in these actions in mind, they undoubtedly could have saved themselves some effort. Defendants' failure to use a little foresight should not obviate them from complying with the Court's orders. It is often easier to do things unilaterally than meet with a court's procedural requirements, but just because Defendants ignored those requirements is not an excuse for noncompliance.

## II.   CASE MANAGEMENT ORDER NO. 3 SHOULD NOT BE AMENDED

In addition to the unfairness of Defendants' altering an agreed upon order without sufficient grounds, the proposed amendment of CMO No. 3 is an invitation to discovery abuse

---

[4] Defendants cannot claim that they did not know these documents would be required to be produced in this action because they did not know what the scope of production would be for marketing documents until the Court ruled on their motion to limit production to documents prior to 1998. As argued above, the custodial documents turned over to the Products Liability Plaintiffs concern scientific and regulatory personnel, not marketing staff. Defendants had acknowledged that all documents relating to Neurontin's efficacy, no matter when created were relevant to this case.

that should be avoided. CMO No. 3 and the other orders entered by this court have attempted to make discovery as transparent as possible. Under the current rules, unilateral redaction is highly circumscribed and when it occurs, the producing party must provide objective evidence—in the form of a privilege log—that allows the receiving party to evaluate the claim and contest improper designations. Defendants' proposed amendment does not provide equivalent protections. Pages can be (and have been) blacked out and the producing party can simply state "non-responsive" or "trade secret" as the ground. The responding party has no basis to contest such a designation without requiring the Court to perform an in camera evaluation, and will not be able to distinguish legitimate claims from tactical claims. The producing party, through its power to redact, can deprive the other side of highly relevant evidence and there is no effective way to deter a party from aggressive use of redaction.

There is no comparable harm from failing to modify the current order. More marginally relevant material will be produced, but this is mostly a burden to the reviewing party. If a receiving party tries to make hay with a tantalizing, but non-material, document, the Court is sufficiently discriminating to protect the producing party and ignore the immaterial. And the Stipulated Protective Order prevents disclosure of all documents—material or immaterial—that qualify for protection as trade secrets of confidential commercial information. Finally, of course, the parties knowingly and intelligently agreed to the current system, and cannot claim they are unduly burdened by that to which they voluntarily agreed. The order should remain in tact.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' principal brief, the Court should grant the Sales and Marketing Plaintiffs' Motion To Compel and deny Defendants' request to amend CMO No. 3.

Dated: September 8, 2006            Respectfully Submitted,

By: */s/ Michael A. Tabb*
Thomas M. Greene, Esquire
Michael A. Tabb, Esquire
GREENE & HOFFMAN
125 Summer Street
Boston, MA 02110

By: */s/ Thomas M. Sobol*
Thomas M. Sobol, Esquire
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA 02142

By: */s/ Barry Himmelstein*
Barry Himmelstein, Esquire
LIEFF CABRASER HEIMANN & BERNSTEIN
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By: */s/ Don Barrett*
Don Barrett, Esquire
BARRETT LAW OFFICE
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By: */s/ Daniel Becnel, Jr.*
Daniel Becnel, Jr., Esquire
LAW OFFICES OF DANIEL BECNEL, JR.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

By: */s/ James Dugan*
James R. Dugan, II, Esquire
DUGAN & BROWNE, PLC
650 Poydras Street, Suite 2150
New Orleans, LA 70130

***Members of the Class Plaintiffs'***
***Steering Committee***

By: */s/ Richard Cohen*
Richard Cohen, Esquire
LOWEY DANNENBERG BEMPORAD
& SELINGER, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY 10601

By: */s/ Linda P. Nussbaum*
Linda P. Nussbaum, Esquire
COHEN MILSTEIN HAUSFELD & TOLL
150 East 52nd Street
Thirteenth Floor
New York, NY 10022

***Members of the Plaintiffs' Non-Class Steering Committee***

9

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on September 8, 2006.

                                        /s/ Michael A. Tabb