UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
In re:  NEURONTIN MARKETING,                                  :
        SALES PRACTICES AND                                   :
        PRODUCTS LIABILITY LITIGATION                         :    MDL Docket No. 1629
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    Master File No. 04-10981
                                                              :
THIS DOCUMENT RELATES TO:                                     :
                                                              :    Judge Patti B. Saris
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    Magistrate Judge Leo T.
                                                              :    Sorokin
PRODUCTS LIABILITY CASES.                                     :
                                                              :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW OF PFIZER INC. AND WARNER-LAMBERT
COMPANY IN FURTHER SUPPORT OF MOTION TO DISMISS
THE PERSONAL INJURY PLAINTIFFS' CLAIMS BASED
UPON ALLEGEDLY IMPROPER MARKETING PRACTICES**


DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

# TABLE OF CONTENTS

P̲A̲G̲E̲

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION ..............................................................................................................1

ARGUMENT ....................................................................................................................2

A.    Plaintiffs' Claims Based on Allegedly Improper Marketing Practices Are Not
      Adequately Alleged.................................................................................................2

B.    Plaintiffs Misapply the Relevant Law ......................................................................8

      1.    Common Law Fraud and Negligent Misrepresentation Claims...........................8

      2.    Consumer Protection Claims.............................................................................13

      3.    Breach of Express Warranty Claims ...................................................................14

C.    Plaintiffs Should Not Be Allowed Any Further Discovery...........................................14

CONCLUSION ................................................................................................................16

# TABLE OF AUTHORITIES

## Cases

**Page**

Am. Communications Ass'n v. Ret. Plan, 488 F. Supp. 479 (S.D.N.Y.),
aff'd, 646 F.2d 559 (2d Cir. 1980) ........................................................................................ 15

Ahmed v. Rosenblatt, 118 F.3d 886 (1st Cir. 1997) ..................................................... 10

Baron v. Pfizer, Inc., Index No. 6429-04, 2006 N.Y. Misc. LEXIS 1473
(N.Y. Sup. Ct. May 2, 2006) ........................................................................ 2,3,12,13,14

Boston & Maine Corp. v. Town of Hampton,
987 F.2d 855 (1st Cir. 1993) .................................................................................... 10

Brown v. Rochester Gen. Hosp., 738 N.Y.S.2d 803 (N.Y. App. Div. 2002)................................ 12

Buckman Co. v. Plaintiffs' Legal Comm.,
531 U.S. 341 (2001) ...................................................................................................... 7

Cordero-Hernandez v. Hernandez-Ballesteros,
449 F.3d 240 (1st Cir. 2006) .................................................................................. 15

Doyle v. Hasbro, Inc., 103 F.3d 186 (1st Cir. 1996) ..................................................... 15

Eastern Food Servs. v. Pontifical Catholic Univ. Servs. Ass'n,
357 F.3d 1 (1st Cir. 2004) ........................................................................................ 15

In re Eli Lilly & Co., 789 F. Supp. 1448 (S.D. Ind. 1992)............................................... 12

Feinstein v. Resolution Trust Corp., 942 F.2d 34 (1st Cir. 1991).............................................. 9,10

Gale v. Int'l Bus. Mach. Corp., 781 N.Y.S.2d 45 (N.Y. App. Div. 2004)................................... 14

Graffam v. Town of Harpswell, 250 F. Supp. 2d 1 (D. Me. 2003)................................. 14

Hayduk v. Lanna, 775 F.2d 441 (1st Cir. 1985)........................................................... 3,13

Jepson, Inc. v. Makita Corp., 34 F.3d 1321 (7th Cir. 1994) .......................................... 12

**Cases**

**Page**

LaBrecque v. Sch. Admin. Dist. No. 57, No. 06-16-P-S,
2006 U.S. Dist. LEXIS 13512 (D. Me. Mar. 27, 2006),
aff'd, No. 06-16-P-S, 2006 U.S. Dist. LEXIS 37390
(D. Me. Apr. 18, 2006)........................................................................................................ 14

In re Neurontin Marketing, Sales Practices & Prods. Liab. Litig.,
433 F. Supp. 2d 172 (D. Mass. 2006) ..................................................................... 5,10,11

New England Data Services, Inc. v. Becher, 829 F.2d 286 (1st Cir. 1987)........................ 9,10,12

In re Pharm. Indus. Average Wholesale Price Litig.,
No. 01-12257-PBS, 2004 U.S. Dist. LEXIS 21448 (D. Mass. Oct. 26, 2004) ......................... 3,13

Redondo-Borges v. United States Dep't of Hous. & Urban Dev.,
421 F.3d 1 (1st Cir. 2005) ................................................................................................... 3

Stander v. Fin. Clearing & Servs. Corp.,
718 F. Supp. 1204 (S.D.N.Y. 1989)................................................................................... 15

United States v. Caputo, 288 F. Supp. 2d 912 (N.D. Ill. 2003) ......................................... 6

United States ex rel. Russell v. Epic Healthcare Mgmt. Group,
193 F.3d 304 (5th Cir. 1999)............................................................................................ 12

United States ex rel. Karvelas v. Melrose-Wakefield Hosp.,
360 F.3d 220 (1st Cir. 2004), cert. denied, 543 U.S. 820 (2004)........................................... 10,11

United States ex rel. Franklin v. Parke-Davis,
147 F. Supp. 2d 39 (D. Mass. 2001) .............................................................................. 7,11,13

United States ex rel. Rost v. Pfizer, Inc., No. 03-11084-JLT,
2006 U.S. Dist. LEXIS 61720 (D. Mass. Aug. 30, 2006)............................................................ 11

W. States Med. Ctr. v. Shalala, 69 F. Supp. 2d 1288 (D. Nev. 1999),
aff'd in part and rev'd in part by 238 F.3d 1090 (9th Cir. 2001),
aff'd sub nom. Thompson v. W. States Med. Ctr., 535 U.S. 357 (2002)...................................... 6

Washington Legal Found. v. Friedman, 13 F. Supp. 2d 51 (D.D.C. 1998),
vacated on other grounds by Washington Legal Found. v. Henney,
202 F.3d 331 (D.C. Cir. 2000) ..................................................................................... 5,6

**<u>Cases</u>**

**<u>Page</u>**

<u>Yuhasz v. Brush Wellman, Inc.</u>, 341 F.3d 559 (6th Cir. 2003) .................................................... 12

**<u>Statutes & Rules</u>**

42 U.S.C. § 1320d-6 ...................................................................................................... 4

21 C.F.R. § 312.7(a) ...................................................................................................... 5

Fed. R. Civ. P. 9(b) ................................................................................ 1,8,9,10,11,13

Fed. R. Civ. P. 12b(6) .................................................................................................... 1

Fed. R. Civ. P. 12(c) ...................................................................................................... 1

Defendants Pfizer Inc. and Warner-Lambert Company respectfully submit this memorandum of law in further support of their motion to dismiss the personal injury plaintiffs' claims based on allegedly improper marketing practices pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1]

## INTRODUCTION

Plaintiffs now admit that they have asserted claims for deceptive marketing with no factual basis to know whether (1) defendants told their physicians anything, (2) defendants told their physicians something false, or (3) their physicians relied on a false statement in prescribing Neurontin to them. It is difficult to imagine a more bald abuse of the Federal Rules of Civil Procedure and of the obligation to have a factual basis for a claim before asserting it.

Plaintiffs offer no excuse for the manifest failings of their pleadings except to rely, solely, on the thoroughly illogical assertion that the information necessary for them to allege their marketing-based claims is within defendants' control. Quite obviously, plaintiffs' physicians – not defendants – are the only ones who know what information they relied on in deciding to prescribe Neurontin to plaintiffs. By asserting that defendants deceived their physicians without first taking steps to confirm that supposition, plaintiffs have failed to allege their claims adequately.

Plaintiffs should be required to make a reasonable inquiry to determine whether their marketing-based claims have any factual basis. Those plaintiffs, if any, who have such a basis should replead their claims with the specificity required by law. Those plaintiffs who lack a factual basis for asserting such claims obviously have no business asserting them.

---

[1] As plaintiffs acknowledge, whether the motion is treated as a motion to dismiss under Rule 12(b)(6) or as a motion for judgment on the pleadings under Rule 12(c) "does not affect the Court's analysis." See Opp. at 10.

## ARGUMENT

### A.    Plaintiffs' Claims Based on Allegedly Improper Marketing Practices Are Not Adequately Alleged

Plaintiffs expressly concede in their opposition brief that not a single one of them has alleged basic facts showing a connection between any allegedly false or misleading marketing practices and his or her physician's decision to prescribe Neurontin to him or her. See Opp. at 13 ("Plaintiff Cascio, like every other plaintiff except Mr. Young [whose case is not pending before this Court], cannot, at this time, allege exactly what false representations or omissions were specifically made by defendants that plaintiff's physician relied upon to induce the physician to prescribe Neurontin off-label treatment of plaintiff's medical condition[.]").  Plaintiffs' failure to allege such basic facts in their complaints is fatal to their claims based on defendants' allegedly improper marketing practices.  See, e.g., Baron v. Pfizer, Inc., Index No. 6429-04, 2006 N.Y. Misc. LEXIS 1473, at *4-*5, slip op. at 6-7, 9 (N.Y. Sup. Ct. May 2, 2006), attached to the Declaration of Patrick J. Murray, dated June 14, 2006, Ex. 1.

Notwithstanding this concession, plaintiffs contend that they have adequately alleged their claims because each of their complaints "does allege . . . that plaintiff's physician relied on [defendants'] false representations in prescribing Neurontin to plaintiff for off-label use in the treatment of his bipolar disorder," but they never identify any factual basis for this assertion.  See Opp. at 12.  Plaintiffs also quote Mr. Cascio's allegation, *on information and belief*, that his physician prescribed him Neurontin "in reliance upon defendants' direct and indirect advertising, marketing and promoting of Neurontin as being safe and effective for the treatment of bipolar disorder," but no facts upon which this "belief" is based are ever alleged.  See id. at 3-4.

It is well-settled that such bald and conclusory allegations, which do not identify a single allegedly false or misleading statement which plaintiffs or their physicians relied upon or were

even exposed to, fail to state a claim under any of plaintiffs' legal theories.  See, e.g., Redondo-Borges v. United States Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005) ("[T]he court need not credit 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like."); Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985) ("Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint."); In re Pharm. Indus. Average Wholesale Price Litig., No. 01-12257-PBS, 2004 U.S. Dist. LEXIS 21448, at *3 (D. Mass. Oct. 26, 2004) (complaint alleging consumer protection violation "should at least set forth minimal facts as to who did what to whom, when, where, and why – although why, when why means the actor's state of mind, can be averred generally") (internal citation and quotation marks omitted).  Indeed, the Baron court recently dismissed fraud and consumer protection claims based on allegations virtually identical to those here on the ground that "the complaint lacks specific allegations regarding whether plaintiff's physician either received or relied upon any information from defendant in prescribing [Neurontin] for plaintiff."  Baron, 2006 N.Y. Misc. LEXIS 1473, at *5, slip op. at 9.

        Implicitly acknowledging this well-settled law, plaintiffs assert that it would be "patently unfair" to require them to allege a factual basis for their claims because the facts necessary for them to do so are "exclusively within defendants' knowledge, and/or the knowledge of the third-party physicians."  See Opp. at 15, 18.  Plaintiffs' suggestion that the facts necessary for them to allege their claims are "exclusively within defendants' knowledge" is illogical, since it is plaintiffs' physicians who know whether they heard and relied upon any statement by defendants in prescribing Neurontin to plaintiffs.  Not only are such facts not "exclusively within defendants' knowledge," but defendants could not even obtain them if they tried, because plaintiffs' physicians are prohibited by law from disclosing any medical information about

plaintiffs without their express consent.  See 42 U.S.C. § 1320d-6 (prohibiting wrongful

disclosure of individually identifiable health information).  Plaintiffs also fail to explain why it

would be "patently unfair" to require each plaintiff in these individual actions to speak to the

person best positioned to substantiate or refute that plaintiff's allegations – namely, the physician

who prescribed him or her Neurontin – before asserting their claims.

The affirmation of Dr. Sylvain Nakkab, submitted by plaintiffs in opposition to

defendants' motion, demonstrates the flaw in plaintiffs' argument.  Dr. Nakkab, a physician with

no connection to any of the plaintiffs in this proceeding, alleges that he prescribed Neurontin to

William Young, a plaintiff in a case pending in New York state court, based primarily on an

article written by Dr. Norman Sussman, a professor of psychiatry at New York University, and

published in the Primary Psychiatry Journal in August 1997.  Affirmation of Dr. Sylvain Nakkab,

M.D., dated July 27, 2006 ("Nakkab Aff."), ¶¶ 8, 10-11.  Dr. Nakkab does not state that any oral

or written statements by defendants caused him to prescribe Neurontin to Mr. Young.  As to the

publication which he references, Dr. Nakkab does not allege that Dr. Sussman's article contains

any false or misleading statements or omissions with respect to the safety or efficacy of

Neurontin for off-label uses.  Dr. Nakkab does allege, however, that at the time he prescribed

Neurontin to Mr. Young, he was not aware of Dr. Sussman's alleged "involvement" with Parke-

Davis, the manufacturer of the drug, and that it is "unlikely" that he would have prescribed

Neurontin to Mr. Young if he had been aware of such involvement.  Id. ¶¶ 16-21.

The credibility of Dr. Nakkab's affirmation is questionable, as it is inconsistent with his

prior deposition testimony in the Young case, and it was prepared only after he was retained as a

consultant by plaintiffs' counsel.  Putting that issue aside, this Court has squarely held that

conduct of the kind described by Dr. Nakkab, involving the non-disclosure by a scientist of his

alleged "involvement" with defendants, is not actionable against defendants because the scientist

has no duty to disclose such "involvement" and because, in any event, his failure to do so cannot

be imputed to defendants.  See Report & Recommendation on Defendants' Motions to Dismiss

the Amended Class Complaint and the First Coordinated Amended Complaint, dated Jan. 31,

2006, at 52; In re Neurontin Marketing, Sales Practices & Prods. Liab. Litig., 433 F. Supp. 2d

172, 177 (D. Mass. 2006) (agreeing with and adopting magistrate judge's January 31, 2006

report and recommendation except as otherwise indicated).  Moreover, such conduct is protected

by the First Amendment, see, e.g., Washington Legal Found. v. Friedman, 13 F. Supp. 2d 51, 66-

67 (D.D.C. 1998), vacated on other grounds by Washington Legal Found. v. Henney, 202 F.3d

331 (D.C. Cir. 2000), and is also explicitly protected by federal regulation, see 21 C.F.R.

§ 312.7(a) (nothing in this section restricts sponsor of investigational new drug from

participating in "the full exchange of scientific information concerning the drug, including

dissemination of scientific findings in scientific or lay media").[2]

        Even if Dr. Nakkab's affirmation is taken at face value, however, it demonstrates the

fallacy of plaintiffs' position that defendants are "in the exclusive possession" of information as

to whether allegedly false or misleading statements caused their physicians to prescribe

Neurontin.  Moreover, it begs the question as to why plaintiffs have not sought and alleged

similar facts from their own physicians.  Plaintiffs attempt to address this issue by asserting that

Dr. Nakkab only became aware of Dr. Sussman's alleged "involvement" with Parke-Davis after

reviewing documents produced by defendants during the pendency of this litigation.  See Opp. at

---

[2] For the same reasons, the affidavit of Charles King III, plaintiffs' purported marketing expert, also fails to describe any actionable conduct on the part of defendants.  Nor does Mr. King even assert that it is likely that Dr. Sussman's alleged non-disclosure of his "involvement" with Parke-Davis caused a single physician other than Dr. Nakkab to prescribe Neurontin for off-label use.

9; see also Nakkab Aff. ¶ 15.  Even assuming that were true, however, it would not support

plaintiffs' position, because there is no reason why they cannot ask their own physicians why

they prescribed Neurontin or whether they ever read or relied upon Dr. Sussman's article or any

of the statements described in their complaints.  Moreover, Dr. Nakkab's allegation that he relied

upon an article that he read in a scientific journal simply confirms the obvious fact that plaintiffs'

physicians are in a far better position than defendants to know why they prescribed Neurontin to

plaintiffs.

        Plaintiffs compound their errors by continuing to state erroneously that off-label

marketing is per se fraudulent, a position that has been consistently rejected by the courts.  See

W. States Med. Ctr. v. Shalala, 69 F. Supp. 2d 1288, 1298-99 (D. Nev. 1999), aff'd in part and

rev'd in part by 238 F.3d 1090 (9th Cir. 2001), aff'd sub nom. Thompson v. W. States Med. Ctr.,

535 U.S. 357 (2002); Washington Legal Found. v. Friedman, 13 F. Supp. 2d 51, 66-67 (D.D.C.

1998), vacated on other grounds by Washington Legal Found. v. Henney, 202 F.3d 331 (D.C.

Cir. 2000); United States v. Caputo, 288 F. Supp. 2d 912, 921 (N.D. Ill. 2003).  For example,

plaintiffs refer to the Information filed in United States v. Warner-Lambert Company LLC (Opp.

at 3), even though that document indisputably does not allege that defendants made a single false

or misleading statement about Neurontin.  Plaintiffs also refer to Mr. Cascio's allegations

regarding "various events where defendants promoted the prescribing of Neurontin for

unspecified off-label uses," but they nowhere allege that any false or misleading statements were

made at these events, or that Mr. Cascio's physician (or the physician of any other plaintiff)

attended any of the events.  See id. at 5.

        Plaintiffs also refer in their opposition brief to defendants' alleged concealment of the

results of a 1998 Harvard study, which were allegedly not published until 2000.  See Opp. at 6;

see also Compl. ¶ 181.  But plaintiffs have not alleged any facts supporting an inference that these results were suppressed, that two years is an unusually long period of time for the publication of research results, or that defendants controlled the publication of the results.  See id. In any event, the alleged temporary suppression of the results cannot have caused Mr. Cascio's injury, because his complaint makes clear that they were available to him and his physician prior to his attempted suicide in January 2001.  See id. ¶¶ 123, 181.[3]

Plaintiffs' failure to allege facts connecting the allegedly false or misleading marketing practices with their own physicians' decisions to prescribe Neurontin is not merely a technical deficiency in their complaints.  As this Court has previously recognized, "[a]llowing physicians to prescribe drugs for . . . 'off-label' usage 'is an accepted and necessary corollary of the FDA's mission to regulate [pharmaceuticals] without directly interfering with the practice of medicine.'"  United States ex rel. Franklin v. Parke-Davis, 147 F. Supp. 2d 39, 44 (D. Mass. 2001) (quoting Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 350 (2001)) (alteration in original).  Plaintiffs' physicians could have prescribed Neurontin to them for various reasons unrelated to defendants' practices, or because of completely lawful and legitimate conduct by defendants.  Moreover, as discussed above, the vast majority of the allegedly improper practices that plaintiffs describe in their complaints consist at most of alleged off-label marketing, which is not itself false or misleading.  This makes it all the more important that plaintiffs specifically allege the statements that they or their physicians were exposed to and relied upon, and why such statements are false or misleading.

---

[3] Plaintiffs contend in their opposition brief that "defendants did not publish the results until two years later after a substantial number of physicians had already been induced to prescribe Neurontin."  See Opp. at 6.  Plaintiffs never explain why some articles induced their physicians to prescribe Neurontin but other articles had no effect on their prescribing decisions.

**B.    Plaintiffs Misapply the Relevant Law**

Plaintiffs also advance a number of legal arguments specific to certain of their claims. None of these arguments has any merit.

**1.    Common Law Fraud and Negligent Misrepresentation Claims**

It is undisputed that a plaintiff asserting a common law fraud or negligent misrepresentation claim must allege facts showing reliance on an allegedly false representation of material fact, and that such a claim must be pleaded in accordance with Federal Rule of Civil Procedure 9(b), which requires that "the circumstances constituting fraud . . . shall be stated with particularity."  See Opp. at 12, 18; Defs. Mem. at 13.

Plaintiffs contend that the Rule 9(b) pleading requirement should be relaxed here because there is a "high probability and reasonable inference that plaintiffs' physicians were exposed to, and relied upon [defendants'] false representations and omissions, which are alleged to have occurred over a period of years."  See Opp. at 17-18.  This contention has no merit as either a factual or legal matter.

In the first place, there is no reasonable basis to infer that all physicians who prescribed Neurontin for off-label uses (including plaintiffs' physicians) were exposed to and relied upon any allegedly false or misleading statement by defendants.  As discussed above, it is an accepted practice for physicians to prescribe drugs for off-label use, and the vast majority of the allegedly improper practices that plaintiffs describe in their complaints consist at most of alleged off-label marketing, which is not itself false or misleading.  See supra pp. 6-7.  Moreover, this Court has squarely rejected plaintiffs' theory, which underlies the Nakkab affirmation and King affidavit, that the non-disclosure by a scientist of his alleged "involvement" with defendants is actionable against defendants.  See supra pp. 4-5.

Second, even assuming that plaintiffs could allege facts showing that there was a "high probability and reasonable inference" that all physicians who prescribed Neurontin for off-label use were exposed to and relied upon allegedly false or misleading statements by defendants, that would not excuse each plaintiff in these individual actions from alleging basic facts showing that his or her physician actually did rely upon such a statement in prescribing him or her Neurontin. Plaintiffs cite New England Data Services, Inc. v. Becher, 829 F.2d 286 (1st Cir. 1987), in support of their argument that the Rule 9(b) pleading requirement should be relaxed here, but that case actually undermines their argument.

The First Circuit in Becher delimited a very narrow exception to the Rule 9(b) pleading requirement, holding that a RICO plaintiff's failure to allege with particularity the defendant's use of the interstate mails or wires should not result in "automatic" dismissal "where the specific allegations of the plaintiff make it likely that the defendant used interstate mail or telecommunication facilities, and the specific information as to use is likely in the exclusive control of the defendant." Id. at 290 (emphasis in original). The court noted that it had previously "declined to consider as a factor whether the facts are peculiarly within the defendant's control in a securities fraud case," but reasoned that, in a RICO mail and wire fraud case, "the burden on the plaintiff to know exactly when the defendants called each other or corresponded with other, and the contents thereof, is not realistic" where "there are multiple defendants . . . and where the plaintiff was not directly involved in the alleged transaction." Id. at 291 (internal citations omitted).

The First Circuit has at times expressly stated that its "special gloss" on Rule 9(b) in Becher applies only to the pleading of predicate acts in the RICO context, and not to the pleading of common law fraud in a "garden-variety fraud case." See Feinstein v. Resolution Trust Corp.,

942 F.2d 34, 43 (1st Cir. 1991) (citing cases); see also Ahmed v. Rosenblatt, 118 F.3d 886, 889-90 (1st Cir. 1997) ("Rule 9(b) has a special gloss in the RICO context in cases where a plaintiff's specific allegations make it likely that a defendant has used interstate mails or wire, and where this information is in the exclusive control of the defendant[.]").  At other times, the First Circuit has stated in dicta that the Rule 9(b) pleading requirement may also be relaxed outside the RICO context if the facts necessary for the plaintiff to allege its claim are "peculiarly within the defendants' control."  See Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855, 866 (1st Cir. 1993) (claim of municipal liability under state statute); see also United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 229 (1st Cir. 2004) (stating in dictum that Rule 9(b) pleading requirement may be relaxed, depending on "the nature of the statute under which the plaintiff's cause of action arises," where defendant is "the only practical source for discovering the specific facts supporting a pleader's conclusion").

Becher and its progeny do not support plaintiffs' contention that the Rule 9(b) pleading requirement should be relaxed here because this is not a RICO case, the information that each of the plaintiffs has failed to plead with particularity is not "in the exclusive control of the defendant[s]," and it would not impose an "unrealistic burden" on plaintiffs to require each of them to allege basic facts showing that his or her physician relied upon defendants' allegedly false or misleading statements in prescribing Neurontin to him or her.  See Becher, 829 F.2d at 290-91; see also, e.g., Boston & Maine Corp., 987 F.2d at 866.

Plaintiffs also cite two decisions of this Court in other cases relating to defendants' alleged off-label marketing of Neurontin.  See Opp. at 17.  In the more recent decision, this Court held that third party payors and two individual class representatives adequately alleged state law fraud claims based on statements contained in Verbatim Reports.  See In re Neurontin

<u>Marketing, Sales Practices, & Prods. Liab. Litig.</u>, 433 F. Supp. 2d 172, 184-85 (D. Mass. 2006). In the other decision, this Court held that a <u>qui tam</u> relator alleging that the off-label marketing of Neurontin resulted in the submission of false claims to the federal government for Medicaid reimbursement was not required to identify every alleged false claim.  <u>Frankin</u>, 147 F. Supp. 2d at 49.

This Court's decisions in <u>In re Neurontin</u> and <u>Franklin</u> are inapposite and do not support plaintiffs' contention that the Rule 9(b) pleading requirement should be relaxed here because, unlike for the plaintiffs in those cases (third party payors, class representatives and a <u>qui tam</u> relator), it would not be "extremely ungainly" for each of the plaintiffs in these individual actions to allege basic facts showing his or her own physician's reliance on defendants' allegedly fraudulent marketing practices.  Indeed, the accessibility of plaintiffs' own physicians to plaintiffs is amply demonstrated by Mr. Young's ability to obtain an affirmation from Dr. Nakkab.  Moreover, unlike the plaintiffs in those cases, each of the plaintiffs here reasonably can be expected to obtain access to his or her own patient-specific information before subjecting defendants to burdensome discovery.[4]

The law of every other jurisdiction is likewise fatal to plaintiffs' contention.  The Fifth, Sixth and Seventh Circuits, for example, have expressly held that the Rule 9(b) pleading requirement is not relaxed where the information necessary for the plaintiff to allege its claim with particularity is accessible from a third party and therefore not "within the exclusive control"

---

[4] The correctness of <u>Franklin</u> has also been cast into serious doubt by the First Circuit's subsequent holding in <u>Karvelas</u> that "a <u>qui tam</u> relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery."  <u>See Karvelas</u>, 360 F.3d at 231; <u>see also</u> <u>United States ex rel. Rost v. Pfizer, Inc.</u>, No. 03-11084-JLT, 2006 U.S. Dist. LEXIS 61720, at *65 (D. Mass. Aug. 30, 2006) (<u>Franklin</u> "was decided before the First Circuit rejected any relaxation of the requirements of Rule 9(b) in FCA claims and before the First Circuit indicated its hostility to the complexity exception to the pleading requirements").

of the defendant.  See United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 308 (5th Cir. 1999); Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 566 (6th Cir. 2003); Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994); see also, e.g., Brown v. Rochester Gen. Hosp., 738 N.Y.S.2d 803, 804-805 (N.Y. App. Div. 2002) (affirming dismissal of complaint and denial of plaintiff's request for discovery because facts necessary to oppose motion "would have come from plaintiff's treating physicians" and thus were not in "exclusive control" of defendant hospital).

The only case that arguably supports plaintiffs' contention, In re Eli Lilly & Co., 789 F. Supp. 1448 (S.D. Ind. 1992), is inconsistent with the Seventh Circuit's later decision in Jepson and is in any event contrary to the law of this Circuit.  The In re Eli Lilly court held that general allegations of reliance satisfied the Rule 9(b) pleading requirement because "the reliance was incurred principally by third parties (the doctors), rather than by plaintiffs themselves" and because "the representations are alleged to have occurred over a period of several years."  In re Eli Lilly, 789 F. Supp. at 1457.  The Seventh Circuit has subsequently held, however, that the Rule 9(b) pleading requirement should not be relaxed where the plaintiffs "have as much access as the defendants to [third parties] who can flesh out the details of the mailings and wire communications" upon which the plaintiffs' RICO claims are predicated.  Jepson, 34 F.3d at 1328.  In any event, In re Eli Lilly is clearly inconsistent with the requirement of Becher and its progeny that the information necessary for the plaintiff to plead its claim with particularity be "in the exclusive control of the defendant."  See, e.g., Becher, 829 F.2d at 290.

Finally, plaintiffs do not even attempt to distinguish the Baron decision, which dismissed common law fraud and consumer protection claims based on allegations virtually identical to those here.  There, as here, plaintiff made bald and conclusory allegations that she was

prescribed Neurontin "as a result of" defendant's allegedly false and misleading statements.  See

Baron v. Pfizer, Inc., Index No. 6429-04 (N.Y. Sup. Ct. filed Oct. 14, 2004), ¶¶ 16, 30, 36, 45,

attached to the Declaration of Neal A. Potischman, dated September 15, 2006, Ex. 1.  The trial

court dismissed plaintiff's claims on the ground that "the complaint lacks specific allegations

regarding whether plaintiff's physician either received or relied upon any information from

defendant in prescribing [Neurontin] for plaintiff."  Baron, 2006 N.Y. Misc. LEXIS 1473, at *5,

slip op. at 9.

### 2.     Consumer Protection Claims

It is undisputed that each state's consumer protection statute requires a plaintiff to allege

facts showing that his or her injury was caused by defendant's alleged deception.  See Opp. at

18-19; see also Defs. Mem. at 14.

Plaintiffs contend that their consumer protection claims "should not be subjected to the

Rule 9(b) heightened pleading standard."  See Opp. at 18.  The First Circuit has stated, however,

that "where fraud lies at the core of the action, Rule 9(b) applies."  Hayduk v. Lanna, 775 F.2d

441, 443 (1st Cir. 1985).  As explained in defendants' opening brief, the better reasoned district

court cases in this Circuit hold that Rule 9(b) applies to consumer protection claims sounding in

fraud.  See Defs. Mem. at 14-15 & n.7.  Here, the gravamen of plaintiffs' complaints is that

defendants knowingly made allegedly false or misleading statements about the safety and

effectiveness of Neurontin for off-label uses.  See id. at 3-8; see also Franklin, 147 F. Supp. 2d at

52 ("The gravamen of Relator's claim is that Parke-Davis engaged in an unlawful course of

fraudulent conduct including knowingly making false statements to doctors[.]").

In any event, even if this Court were to apply a lesser pleading standard to plaintiffs'

consumer protection claims, those claims should be dismissed because plaintiffs have not alleged

<u>any</u> facts showing that their injuries were caused by defendants' alleged deception. <u>See</u> <u>In re</u> <u>Pharm. Indus. Average Wholesale Price Litig.</u>, No. 01-12257-PBS, 2004 U.S. Dist. LEXIS 21448, at *3 (D. Mass. Oct. 26, 2004) (complaint alleging consumer protection violation under New York law "should at least set forth minimal facts as to who did what to whom, when, where, and why – although why, when why means the actor's state of mind, can be averred generally") (internal citation and quotation marks omitted); <u>Gale v. Int'l Bus. Mach. Corp.</u>, 781 N.Y.S.2d 45, 46-47 (N.Y. App. Div. 2004) (dismissing consumer protection claims because of plaintiff's failure specifically to allege that he saw any of defendant's allegedly misleading advertisements before he purchased disk drive manufactured by defendant); <u>Baron</u>, 2006 N.Y. Misc. LEXIS 1473, at *4, slip op. at 7 (dismissing consumer protection claim because "plaintiff has failed to include in her complaint any allegations regarding how the defendant's alleged deceptive acts or practices mislead [<u>sic</u>] her or her physician").

### 3.    Breach of Express Warranty Claims

Plaintiffs fail to respond to defendants' argument that they have not adequately alleged claims for breach of express warranty.  <u>See</u> Defs. Mem. at 15-16.  Accordingly, these claims should be dismissed.  <u>See, e.g.</u>, <u>LaBrecque v. Sch. Admin. Dist. No. 57</u>, No. 06-16-P-S, 2006 U.S. Dist. LEXIS 13512, at *8 (D. Me. Mar. 27, 2006) (opposition deemed waived where plaintiff failed to respond to argument that his claim should be dismissed), <u>aff'd</u>, No. 06-16-P-S, 2006 U.S. Dist. LEXIS 37390 (D. Me. Apr. 18, 2006); <u>Graffam v. Town of Harpswell</u>, 250 F. Supp. 2d 1, 7 (D. Me. 2003) (same).

### C.    Plaintiffs Should Not Be Allowed Any Further Discovery

Plaintiffs contend that the Court should deny defendants' motions to dismiss, grant plaintiffs "continued pre-trial discovery from defendants and . . . the opportunity to depose their

prescribing physicians," and permit plaintiffs "to amend the complaints after such discovery before the Court considers dismissing the cases or granting summary judgment to defendants." See Opp. at 11, 18.

Plaintiffs' request for further discovery from defendants so that they can ascertain whether their own physicians relied on defendants' alleged statements in prescribing Neurontin to them is not only patently absurd and contrary to the law, it also represents a thinly-veiled attempt to use the discovery process to fish for possible claims against defendants.  This is plainly inappropriate.  See, e.g., Eastern Food Servs. v. Pontifical Catholic Univ. Servs. Ass'n, 357 F.3d 1, 9 (1st Cir. 2004) (discovery is "expensive and burdensome process" and "not for fishing expeditions"); Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) ("Rule 9 imposes a heightened pleading requirement for allegations of fraud . . . to prevent the filing of suits that simply hope to uncover relevant information during discovery."); Am. Communications Ass'n v. Ret. Plan, 488 F. Supp. 479, 484 (S.D.N.Y.), aff'd, 646 F.2d 559 (2d Cir. 1980) (plaintiffs cannot "use an insufficient complaint with a conclusory allegation as a hunting license to discover whether in fact a viable claim may be alleged"); Stander v. Fin. Clearing & Servs. Corp., 718 F. Supp. 1204 (S.D.N.Y. 1989) ("It is well settled law that an insufficient and conclusory complaint cannot serve as the basis for discovery aimed at fishing for a possible claim against the purported defendant.").

Discovery would be especially inappropriate here because plaintiffs already have extensive access to millions of pages of defendants' internal documents.  See, e.g., Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 (1st Cir. 2006) (affirming dismissal of complaint and denial of further discovery where plaintiff had already received substantial discovery from defendant).

15

## CONCLUSION

For all of the foregoing reasons, the personal injury plaintiffs' claims based upon allegedly improper marketing practices should be dismissed with prejudice.

Dated: September 15, 2006

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
      James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:   /s/ David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on September 15, 2006.

/s/ David B. Chaffin

16