UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION ) ) ) ) ) ) ) ) ) ) ) | MDL No. 1629 Master File No. 1:04-10981-PBS |
| This document relates to: ALL ACTIONS | |

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTORY STATEMENT

Movants Rhonda Gayle Goodridge, Susan Dudley and Mark Dudley (collectively "Movants") are the Plaintiffs in *Rhonda Gayle Goodridge et al. v. Pfizer Canada Inc. et al.*, Court File No. 06-CV-307728CP, a class action lawsuit pending in the Superior Court of Justice, Ontario, Canada. (*See* Fresh As Amended Statement of Claim ("Statement of Claim"), Exh. A to Declaration of Matthew Baer ("Baer Decl."), attached hereto as Exhibit 1). Like the litigation here, Movants' lawsuit seeks damages from the manufacturer of the prescription drug gabapentin, sold under the trade name Neurontin, for its promotion of Neurontin for "off label" use for which it had no demonstrated efficacy during the period between 1994 and 2004, on behalf of themselves and all other purchasers of Neurontin in Canada. Compare Second Coordinated Amended Complaint (Dkt. No. 380 ("SCAC")), ¶¶ 1-5, 15-185 and Second Amended Class Action Complaint (Dkt. No. 379 ("SACC")), ¶¶ 1-4, 16-266 with Statement of Claim, ¶¶ 9-24.[1]

---

[1] The Statement of Claim also alleges that users of Neurontin were exposed to an undisclosed risk of

Movants seek access to Confidential documents, deposition testimony and other discovery materials produced or to be produced by the Defendants herein. The materials obtained from the Defendants in this litigation will be of immediate use in Movants' lawsuit. However, the parties to this litigation have stipulated to a protective order, entered by this Court, prohibiting dissemination of Confidential material disclosed in discovery. See Stipulated Protective Order (Dkt. No. 27)( "Protective Order").

In similar cases, litigants in collateral actions routinely have been permitted to intervene in order to seek and obtain discovery materials subject to the restrictions of a protective order. This is precisely the relief that Movants seek here.

Movants therefore respectfully request that the Court permit them to intervene for the limited purpose of seeking modification of the Protective Order so that they may obtain access to Confidential documents, interrogatory responses, responses to requests for admission, deposition transcripts and other discovery papers produced by the Defendants in this litigation, or to be produced, on the same terms as the parties to this litigation. See Proposed Order, attached.[2] Movants do not seek to participate actively as litigants on the merits in this litigation, nor do Movants challenge the Protective Order or seek public disclosure of the Confidential discovery materials protected by the Protective Order. Movants simply seek to intervene in order to obtain access to Confidential discovery materials subject to the terms of the Protective Order (with the modification that they be permitted to use such materials in the Canadian court to the extent permitted by that court).

---

experiencing suicidal behavior, an allegation not contained in the SCAC or the SACC, but included in some, if not all, of the personal injury complaints pending before the Court.

[2]    Movants expressly do not seek access to any materials produced by any plaintiff in this case.

II.     **FACTS**

The allegations of these cases reveal a concerted effort, accompanied by deceptive tactics, by Defendants (and their predecessor Parke-Davis) to promote the use of Neurontin for "off label" uses for which it was not approved and for which it had no demonstrated efficacy. *See generally* SCAC; SACC; Statement of Claim, ¶¶ 9-24. Such efforts took place and had effect in the United States as well as in Canada.

In August 2004, Movants filed a class action lawsuit in the Superior Court of Justice, Ontario, Canada, which was amended in May 2006, seeking relief on behalf of themselves and other Canadian Neurontin users based on the same facts at issue in the litigation before this Court. Baer Decl., ¶ I.

Movants understand that discovery is ongoing in the litigation before this Court.

In Movants' case, discovery has not yet begun. Baer Decl., ¶ III. Under Canadian law, Movants will be entitled to pursue discovery in their case by requesting documents and taking depositions of the defendants in that action after class certification. Baer Decl. ¶¶ III, IV.

III.    **POINTS AND AUTHORITIES**

A.      **Under Rule 24(b), Movants Should Be Granted Leave to Intervene for the Limited Purpose of Seeking Modification of the Protective Order.**

   1.   **Permissive intervention under Rule 24(b) is the proper means for Movants to seek modification of a protective order.**

As this Court noted in a previous case where similar relief was sought, "[t]he proper procedural method for asserting access to discovery materials subject to a protective order is a motion to intervene pursuant to Fed. R. Civ. P. 24." *United States ex rel. Franklin v. Parke-Davis, Division of Warner-Lambert Co.*, 210 F.R.D. 257, 258 (D. Mass. 2002), citing *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 787 (1st Cir. 1988).

Rule 24(b), Fed. R. Civ. P., provides that "[u]pon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common." Such permissive intervention is committed to the discretion of the court. *Id.*

Courts routinely have granted parties in collateral litigation the right to intervene for the sole purpose of sharing of discovery materials. *See, e.g.*, *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.* ("EEOC"), 146 F.3d 1042, 1045 (D.C. Cir. 1998); *Wilk v. American Medical Assn.*, 635 F.2d 1295, 1297 (7th Cir. 1980); *Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir. 1987); *Grove Fresh Dist. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994); *In re Linerboard Antitrust Litigation*, 333 F. Supp.2d 333 (E.D. Pa. 2004); *Re: What's the Score v. UST, Inc.*, 1999 U.S. Dist. LEXIS 14714 (D.N.J. April 14, 1999).

> **2.  Neither an independent basis for jurisdiction nor a case or controversy before this Court are required in order to grant permissive intervention for the purpose of modifying a protective order.**

The traditional requirements for permissive intervention are: 1) an independent ground for subject matter jurisdiction; 2) a timely motion; and 3) a claim or defense that has a question of law or fact in common with the main action. *EEOC*, 146 F.3d at 1046; *Linerboard*, 333 F. Supp.2d at 338-39; *see also Beckman Indus. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992), *cert. denied* 506 U.S. 868.

However, these requirements are interpreted flexibly when a non-party seeks intervention for the limited purpose of modifying a protective order. First, the intervenor need not demonstrate an independent ground for subject matter jurisdiction. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778, n.3 (3d Cir. 1994). That is because "such intervenors do not ask the district court to exercise jurisdiction over an additional claim on the merits, but rather to

4

exercise a power that it already has, namely the power to modify a previously entered confidentiality order." *EEOC*, 146 F.3d at 1047; *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987).

Similarly, the requirement that a claim or defense present common legal or factual issues to the main action is interpreted "with considerable breadth," *EEOC*, 146 F.2d at 1047; *Pansy*, 23 F.3d at 778. Courts regularly have held this requirement satisfied if the movant raises a common question in a suit in another jurisdiction. *EEOC*, 146 F.2d at 1047; *Meyer Goldberg*, 823 F.2d at 162; *Kerasotes Michigan Theatres v. National Amusements*, 139 F.R.D. 102, 103-4 (E.D. Mich. 1991).

The requirement of a "timely" motion has also been interpreted broadly in the context of modifying protective orders, with courts granting permissive intervention sometimes years after the main case has been settled and dismissed. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424 (10th Cir. 1990)(allowing intervention three years after main case was settled); *Kerasotes*, 139 F.R.D. at 103, 106-7 (granting intervention in "this long-settled case"). In *Pansy*, the Third Circuit noted a "growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated." 23 F.3d at 779 (citing *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157 (3d Cir. 1993)). *See Public Citizen*, 858 F.2d at 785 ("Numerous courts have allowed third parties to intervene in cases directly analogous to this one, many involving delays of years rather than weeks.")

In sum, "courts have been willing to adopt generous interpretations of Rule 24(b)" to facilitate "an effective mechanism for third-party claims of access to information generated through judicial proceedings." *EEOC*, 146 F.3d at 1045, citing *Public Citizen*, 858 F.2d at 783.

### 3. Movants' request to intervene is appropriate and should be granted.

Movants meet the requirements for permissive intervention. As in the above-cited cases, Movants assert jurisdiction based on this Court's power to modify its own previously-entered protective order. "Courts have the inherent power to modify protective orders in light of changed circumstances during the time that such orders are in effect." *Franklin*, 210 F.R.D. at 258 (citations omitted).

Movants' request for intervention is also timely. In *Public Citizen*, the First Circuit applied the four-part timeliness test suggested in *Culbreath v. Dukakis*, 630 F.2d 15 (1st Cir. 1980). *Public Citizen*, 858 F.2d at 785.

The first factor to be considered is when Movants "became aware that [their] interest in the case would no longer be adequately protected by the parties," not when they first became aware of the litigation. *Id.* Here Movants brought their motion to intervene a short time after their attempt to obtain Defendants' consent to use Confidential documents in the Canadian court proceeding was finally refused and Defendants invited them to seek permission from this Court. Baer Decl., ¶ VII.

The second *Culbreath* factor is the existence of prejudice to existing parties. With respect to this factor, the court in *Public Citizen* noted that "if the desired intervention relates to an ancillary issue and will not interrupt the resolution of the underlying merits, untimely intervention is much less likely to prejudice the parties." *Public Citizen*, 858 F.2d at 786. This is because "the purpose of the basic requirement that the application to intervene be timely is to prevent last minute disruption of painstaking work by the parties and the court." *Culbreath*, 630 F.2d at 18. Here, the litigation is ongoing and Movants do not seek to intervene on the merits, but only for the limited, ancillary purpose of passively receiving the fruits of ongoing

6

Confidential discovery. Such intervention will have no disruptive effect on resolution of this litigation on the merits and hence works no prejudice to the parties.

The third *Culbreath* factor is whether the intervenor would suffer prejudice if intervention were denied. *Culbreath*, 630 F.2d at 19. "This requires that [a court] determine whether the movant, had intervention been allowed, would have 'enjoyed a significant probability of success on the merits.'" *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1232 (1st Cir. 1992). As Movants show in detail below, courts have frequently permitted the type of relief Movants seek here. Indeed, it has been held that a protective order which precludes sharing of confidential documents with litigants in similar cases in other courts lacks "good cause." *Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 126 (D. Mass. 1990). Moreover, counsel for certain plaintiffs in this litigation have already evinced a willingness to share Confidential discovery materials with Movants, albeit in a form which currently precludes their use in the Canadian proceeding. Baer Decl., ¶ V. Thus, Movants have a significant probability of success on the merits.

The final *Culbreath* factor is the existence of unusual circumstances militating for or against intervention. *Culbreath*, 630 F.2d at 24. Here, no circumstances militate against intervention. Movants do not seek to intervene on the merits, nor do they seek to disclose Confidential discovery materials to the public. Moreover, they do not seek to conduct their own discovery. They merely seek to receive access to Confidential discovery materials, subject to all the strictures of the Protective Order, for use in their own case in Canada, a case with significant public health overtones. Nor is this merely a fishing expedition. Movants have been permitted to review some of the Confidential documents produced herein pursuant to consulting agreements under the Protective Order with counsel for the plaintiffs in certain of the person

7

injury actions and found them to be relevant to the Canadian action, where discovery has not yet begun. Baer Decl., ¶¶ III-IV. Allowing Movants access to Confidential discovery materials now would materially assist them in developing their case at an earlier stage than otherwise, prevent duplicative discovery, and allow them to use relevant documents in support of their pending class certification motion. Baer Decl., ¶¶ I, VIII. Such circumstances clearly militate in favor of granting intervention.

In sum, all of the *Culbreath* factors indicate that Movants application to intervene is timely under all the circumstances.

Finally, Movants meet (indeed, exceed) the requirement that their action present common facts or legal issues to those presented here. Movants' case is based on the identical factual core as this litigation: the concerted effort, accompanied by deceptive tactics, by Defendants (and their predecessor Parke-Davis) to promote the use of Neurontin for "off label" uses for which it was not approved and for which it had no demonstrated efficacy. Baer Decl., ¶ I.

The fact that Movants are plaintiffs in another jurisdiction should not dissuade the Court from granting intervention. Federal courts have not hesitated to grant sharing of discovery not only with litigants in other federal courts, but also litigants from state and foreign courts. *See, e.g., Linerboard*, 333 F. Supp.2d 333 (granting intervention and access to discovery to litigants from a Canadian court); *In re: Baycol Prod. Litig.*, MDL No. 1431, Pretrial Order No. 77 (D.Minn.May 6, 2003)(available at http://www.mnd.uscourts.gov/Baycol_Mdl/pretrial_Order_77.PDF) (same); *In re: Vitamins Antitrust Litigation*, 2001 U.S. Dist. LEXIS 25068 (D.D.C. March 19, 2001)(granting intervention to litigants from a Canadian court, but deferring ruling on modification to protective order); *Re: What's the Score v. UST, Inc.*, 1999 U.S. Dist. LEXIS 14714 (D.N.J. April 14, 1999)

(granting access to litigants from another federal court); *Cohabaco Cigar Co. v. United States Tobacco Co.*, 1999 U.S. Dist. LEXIS 12912 (N.D. Ill. Aug. 12, 1999)(same); *United Nuclear Corp.*, 905 F.2d 1424 (allowing access to litigants in "other state and federal courts"); *EEOC*, 146 F.3d 1042 (granting access to litigant from District of Columbia Superior Court). *See also Baker v. Liggett Group, Inc.*, 132 F.R.D. at 126. It would be an exercise of comity for this Court to allow Canadian plaintiffs to obtain access to Confidential discovery in furtherance of their Canadian action.[3]

**B.  Movants' Proposed Modifications to The Protective Order Should Be Granted.**

   **1.   Courts traditionally allow litigants in collateral suits to obtain protected materials, so long as the collateral litigation is *bona fide* and the materials sought are relevant to the collateral case.**

Courts have declined to place technical obstacles in the way of litigants who seek to share discovery in related cases, even where discovery has been produced pursuant to a blanket protective order. Non-parties routinely have been granted access to discovery materials for use in their collateral cases. *See, e.g., Cohabaco*, 1999 U.S. Dist. LEXIS 12912 at * 12; *Kraszewski v. State Farm Gen. Ins. Co.*, 139 F.R.D. 156 (N.D. Cal. 1991); *Kerasotes*, 139 F.R.D. at 103, 106-7; *United Nuclear Corp.*, 905 F.2d 1424 (allowing access to litigants in "other state and federal courts"); *Wilk*, 635 F.2d 1295; *Linerboard*, 333 F. Supp.2d 333. *See also Baker*, 132 F.R.D. at 126.

Before allowing discovery to be shared, the Court must first consider whether the collateral litigation is *bona fide*. *Wilk*, 635 F.2d at 1300. The Court should also consider "whether the discovery sought will obviate the need for that party to engage in duplicative

---

[3]   The admissibility of any of the materials that Movants acquire is an issue for the Canadian court to determine.

discovery." *Cohabaco*, 1999 U.S. Dist. LEXIS at *12.

Here, there is no question that Movants are *bona fide* litigants. They have been pursuing collateral litigation in the Canadian court for two years. There is also no question that Movants will require and eventually be allowed discovery of virtually identical facts as are being inquired into in this litigation. As under U.S. law, such discovery is permitted in Canada through both document demands and deposition testimony, though not at this stage of the litigation. *See* Baer Decl. ¶¶ III, IV.

The fact that Movants will be using the discovery materials obtained in this litigation to aid in an action involving wide-spread public health concerns places an especially high value on granting this motion. *See Public Citizen*, 858 F.2d at 787. *Cf. Meyer Goldberg*, 823 F.2d at 162 ("It is clear that making records available to a party seeking to enforce the antitrust laws to prevent illegal price-setting practices is generally considered to be a matter in which the public has an interest.") Movants are entitled to seek information that may be useful to them in their Canadian action; there is simply "no reason to erect gratuitous roadblocks in the path of a litigant who finds a trail blazed by another." *Wilk*, 635 F2d. at 1301.

2. **The Court need not balance the competing interests of "disclosure" versus "confidentiality" of discovered materials, because Movants merely seek access to the materials under the terms of the Protective Order.**

Suggestive but not controlling are those cases in which members of the public, or of the press, have sought access to discovery materials for their own use. In those cases, the party seeking to protect materials from disclosure has borne the burden to demonstrate prejudice. Upon such a showing, courts have then proceeded to balance the interests of disclosure versus secrecy, bearing in mind the principle that it is important that "the general public be afforded access to discovery materials whenever possible." *Agent Orange*, 821 F.2d at 146.

Where collateral litigants are concerned, however, the balancing test is far simpler. If the defendant's secrecy interest can be preserved by subjecting the intervenor to the terms of the protective order, access should be granted *"even if the need for the protected materials is minimal."* *Kerasotes*, 139 F.R.D. at 106, (emphasis supplied); *Meyer Goldberg*, 823 F.2d at 163; *Linerboard*, 333 F. Supp.2d at 340. In cases like this one, when the efficiency of the requested access is high, courts have remedied defendants' secrecy concerns by simply requiring that the intervenor be subject to the terms of the protective order. *Grove Fresh*, 24 F.3d at 896; *Baker*, 132 F.R.D. at 126. This is the procedure that Movants propose here. Movants' Canadian counsel have agreed to abide by the terms of the Protective Order. Baer Decl., ¶ VI.

Finally, to anticipate any concerns that Defendants may raise regarding the enforceability of the protective order against them, Movants' Canadian counsel have agreed to submit themselves to the personal jurisdiction of this Court for purposes of enforcement of the Protective Order. Baer Decl., ¶ VI.

3. **Defendants would suffer no prejudice, and significant duplication of discovery would be avoided, by amending the Protective Order to include Movants.**

Courts have recognized that significant efficiencies can be gained from sharing discovery between collateral actions. Discovery-sharing should presumptively be granted because, as the Seventh Circuit explained in *Wilk*:

> in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process. Particularly in litigation of this magnitude, we . . . are impressed with the wastefulness of requiring the [collateral litigant] to duplicate discovery already made.

635 F.2d at 1299. *See also Kerasotes*, 139 F.R.D. at 106 ("The information in the deposition

11

transcripts could lead to admissible evidence and will probably save significant time and expense in the [collateral action] discovery . . . ."); *Kraszewski*, 139 F.R.D. at 160 ("It simply does not make sense to force class counsel to reinvent the wheel and to promulgate discovery requests and take depositions when much of the same discovery has already taken place in this action."); *Linerboard*, 333 F. Supp.2d at 342 ("Having managed the discovery process in the instant case, this Court is similarly 'impressed with the wastefulness to all parties including defendants of requiring the [movant] to duplicate discovery already made.'")(quoting *Wilk*).

Defendants can point to no prejudice that they would encounter as a result of Movants' obtaining access to discovery. The only ill effect that Defendants might suffer is the elimination of their ability to keep valuable information from Movants that is likely to be useful to them in their action. However, "Defendants' desire to make it more burdensome for Intervenors to pursue their collateral litigation is not legitimate prejudice." *United Nuclear Corp.*, 905 F.2d at 1428; *see also Linerboard*, 333 F. Supp.2d at 342 ("defendants will suffer no prejudice from granting movant access to materials that have already been produced to plaintiffs....").

It should be emphasized that the relief Movants seek would not offend Canadian law or Ontario procedure, which allow broad discovery of relevant facts in civil cases. Nor would such relief offend Canadian judicial sensibilities. Indeed, the efforts of the defendants in the *Vitamins* case to enjoin in Canada the effort to seek access to discovery materials in the United States were rebuffed by Canadian courts at three levels, which recognized that movants were seeking to gather evidence in the United States, not conduct discovery. *See* Baer Decl. ¶ VII; *see also Linerboard*, 333 F. Supp.2d at 341-42. Further, both the Ontario rules <u>and</u> this Court's protective order will prevent the unauthorized disclosure of the materials that Movants will obtain. If particular materials to which Movants receive access in this case cannot properly be

utilized in Movants' Canadian action, that is for the Canadian court to determine. There is thus no basis to require Movants to "reinvent the wheel" by seeking identical information from the identical defendants in their case. *Kraszewski*, 139 F.R.D. at 160.

The procedure which Movants propose here is identical to that followed in the *Linerboard* case. Movants' Canadian counsel here also represented the intervenor there. The court granted the motion to intervene and to modify the protective order. *Linerboard*, 333 F. Supp.2d at 342. The Canadian intervenor obtained access to discovery materials and utilized them in its motion for class certification. In order to preserve the confidentiality of the documents they were submitted to the Ontario court under seal. Baer Decl., ¶ VIII.

### 4. Movants should be granted access to Confidential documents, deposition transcripts and discovery papers from the Defendants.

Once access to discovery is granted, that access should be on the same terms as afforded to litigants in the pending litigation. *See Wilk*, 635 F.2d at 1300 ("We conclude that, given [*inter alia*] the close similarity between the [collateral] action and Wilk . . . the State is presumptively entitled to access to all of the *Wilk* discovery on the same terms as the *Wilk* plaintiffs.") The only limitation to be placed on Movants' access to discovery in this case is that Movants may not "gain information which is relevant to [the collateral action] but wholly irrelevant to this action." *Kraszewski*, 139 F.R.D. at 161.

Subject to this limitation, the most efficient means for Movants to share the fruits of Plaintiffs' common discovery effort regarding Neurontin is to allow Movants to review and copy Confidential documents, deposition transcripts, interrogatory responses, responses to requests for admission, and other discovery papers produced by the Defendants. Similar grants of access to discovery proceedings have been permitted by other courts and are appropriate here.

## III. CONCLUSION

For the reasons stated, Movants respectfully request that the Court modify the Protective Order so that they may obtain access to Confidential discovery materials produced by the Defendants in this litigation on the same terms as the parties to this litigation. <u>See</u> Proposed Order, attached.

        Respectfully submitted,

        RHONDA GAYLE GOODRIGDE, SUSAN
        DUDLEY AND MARK DUDLEY,

        By their attorneys,

        */s/ Christopher Weld, Jr.*
        Christopher Weld, Jr. (BBO#: 522230)
        cweld@toddweld.com
        TODD & WELD LLP
        28 State Street, 31st Floor
        Boston, MA 02109
        (617) 720-2626

        Of Counsel:

        Jonathan W. Cuneo
        David W. Stanley
        CUNEO GILBERT& LaDUCA, LLP
        507 C Street, NE
        Washington, DC  20002
        (202) 789-3960

September 18, 2006

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Fling (NEF) and paper copies will be sent to those indicated as non registered participants on September 18, 2006.

                                                                           Christopher Weld, Jr.

Date: September 18, 2006