response to discovery requests, including, without limitation, interrogatories, requests for admissions, requests for productions of documents or questions at a deposition. Nor shall this Agreement be construed as a waiver of any party's right to withhold or redact information protected from disclosure by the attorney-client privilege, physician-patient privilege, work product doctrine, or other applicable privilege, protection, law, or regulation, or to seek appropriate protective orders respecting documents asserted to be subject to such privilege.

16.     Nothing in this Agreement shall limit a party's right to disclose to any person, or use, for any purpose, its own information and documents.

17.     Within forty-five (45) days after the final resolution of the Actions, all Confidential Information, including all copies, abstracts and/or summaries, shall be returned to counsel for the party that produced it or, if the producing party's counsel so requests, destroyed. As to those materials that contain or reflect Confidential Information, but that constitute or reflect counsel's work product, counsel of record for the parties shall be entitled to retain such work product in their files, so long as it is clearly marked to reflect that it contains information subject to this Agreement. Counsel shall be entitled to retain pleadings, affidavits, motions, briefs, other papers filed with the Court, deposition transcripts, and the trial record (including exhibits) even if such materials contain Confidential Information, so long as such Confidential Information are clearly marked to reflect that they contain information subject to this Agreement

18.     This Agreement shall be binding upon the parties, their attorneys, and upon the parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors and other persons or organizations over whom or which the subject parties have control. The parties, their attorneys, and employees of such attorneys each expressly stipulates to the personal jurisdiction of the court in which this action proceeds for purposes of any proceeding brought by a party to this action to enforce this Agreement. The parties agree that this Agreement is and shall be deemed to be enforceable, and the parties agree that the terms of the Agreement may be enforced by specific performance in any court of competent jurisdiction.

19.     Upon final resolution of the Actions, this Agreement shall continue to be binding. The parties expressly agree to submit to the jurisdiction of the court for enforcement of the provisions of this Agreement following the final resolution of this litigation.

20.     This Agreement may be modified, superseded or terminated by consent of the parties or by court order.

21.    The parties agree to submit this Agreement as soon as practicable to the court that retains jurisdiction over the Actions and submit a joint motion that the court adopt and "so order" this Agreement as a binding order governing the litigation.

Agreed to on the 29th day of November, 2004.

Finkelstein & PARTNERS
436 Robinson Avenue
Newburgh, NY 12550
(845) 562-0203
Counsel for Plaintiffs

Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
Counsel for Defendants

Exhibit A

1.    Avrill C. Aronson, as Personal Representative of the Estate of Rhonda Hilda Cohen, Deceased v. Pfizer Inc., Parke-Davis, Warner-Lambert Company and Warner-Lambert Co. LLC (04-111907)

2.    Joy Dodson, an Infant by her Mother and Natural Guardian, Tammy Dodson, and Tammy Dodson, Individually v. Pfizer Inc., Parke-Davis, Warner-Lambert Co., and Warner-Lambert Co. LLC (114028/04)

3.    Patti Paulsen, as Administratix of the Estate of Frederic L. Paulson, deceased, v. Pfizer Inc., Parke-Davis, Warner-Lambert Co. LLC, and Warner-Lambert Co. (04 CV 8464)

4.    Timothy P. Scott, as Administrator of the Estate of Ellem Marie Capune v. Pfizer Inc., Parke-Davis, Warner-Lambert Co. and Warner-Lambert Co. LLC (04-7096)

5.    Monica Smith, as Administratix of the Estate of Kenneth Christopher Smith, Deceased, v. Pfizer Inc., Parke-Davis, Warner-Lambert Co. LLC, and Warner-Lambert Co. (111431/04)

6.    Rosalie Sumait et al, Individually and as successors in interest to state of Manuel Sumait v. Pfizer Inc, Parke-Davis, Warner-Lambert Co., and Warner-Lambert Co. LLC (04 CV 8719)

7.    Young v. Pfizer Inc, Parke-Davis, and Warner-Lambert (04 CV 6609)

8.    Nicolette Crone et al. v. Pfizer Inc, Parke-Davis, Warner-Lambert Co., & Raymond Jennings, M.D., and Does 1-100 (CV-400432)

E



# Finkelstein & PARTNERS
### Counselors At Law

A Limited Liability Partnership

(800) 634-1212
Fax: (845) 562-3492
www.lawampm.com

Howard S. Finkelstein, P.C. (NY)
Andrew G. Finkelstein, P.C. (NY & NJ)
George M. Levy (NY)
Kenneth L. Oliver, P.C. (NY)
Joel S. Finkelstein, P.C. (NY, NJ, MA & FL)
Duncan W. Clark (NY)
Ronald Rosenkranz (NY)
Robert J. Camera (NY & NJ)
Joseph P. Rones (NY & FL)
Steven Lim (NY)
George A. Kohl, 2nd (NY & MA)
Eleanor L. Polimeni (NY)
Steven H. Cohen (NY)
Francis Navarra (NY)
Andrew J. Genna, LLM (NY & PA)
Thomas C. Yatto (NY)

Elyssa M. Fried-DeRosa (NY)
Mary Ellen Wright (NY)
Kenneth B. Fromson (NY & NJ)
Joel Bossom (NY)
Andrew L. Spitz (NY)
Nancy Y. Morgan (NY, NJ & PA)
James W. Shuttleworth, III (NY)
Lawrence D. Lissauer (NY)
David E. Gross (NY & NJ)
Terry D. Horner (NY)
Robert F. Moson (NY)
Julio E. Urrutia (NY)
————————
Debra J. Reisenman (NY)
Michael T. McGarry (NY)
Steven P. Shultz (NY & MA)

Victoria Lieb Lightcap (NY & MA)
Ann R. Johnson (NY & CT)
Marshall P. Richer (NY)
Thomas J. Pronti (NY)
Kristine M. Cahill (NY & CT)
Kara L. Campbell (NY & CT)
Arieh Mezoff (NY)
Christopher T. Milliman (NY)
Silvia Fermanian (NY)
Edward M. Steves (NY)
Karen M. Queenan (NY & CT)
Marie M. DuSault (NY)
Andrew I. Falk (NY)
Glenn W. Kelleher (NY)
Melody A. Gregory (NY & CT)
Gail Schlanger (NY)

Elizabeth A. Wolff (NY & MA)

*Of Counsel*
Jules P. Levine, P.C. (NY & FL)
Michael O. Gittelsohn, P.C. (NY)
Joel A. Reback (NY & Israel)
Sheila Rosenrauch (NY)
Kenneth Cohen (N.J)
Cynthia M. Maurer (NY & NJ)
Raye D. Futerfas (NJ)
Frances M. Bova (NY & N.J)
Kenneth G. Bartlett (CT & NJ)
Ari Kresch (NY & MI)
Gustavo W. Alzugaray (NY & NJ)

*Accredited CLE Provider*

REFER TO OUR FILE #:

200599

May 30, 2006

Kathryn Carney Cole, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Re: Neurontin Product Liability Litigation

Dear Kathryn:

Pursuant to the parties' confidentiality agreement, dated November 29, 2004, please be advised of our intention to disclose documents to the following attorneys:

SISKIND, CROMARTY, IVEY and DOWLER, LLP
680 Waterloo Street
London, ON N6A 3V8
Canada

Kindly advise within 10 days as to any objection you may have

Very truly,

Kenneth B. Fromson
(845) 562-0203 x9259

F

# DAVIS POLK & WARDWELL

1300 I STREET, N.W.
WASHINGTON, D.C. 20005

1600 EL CAMINO REAL
MENLO PARK, CA 94025

99 GRESHAM STREET
LONDON EC2V 7NG

15, AVENUE MATIGNON
75008 PARIS

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

WRITER'S DIRECT

212 450 4853

MESSETURM
60308 FRANKFURT AM MAIN

MARQUÉS DE LA ENSENADA, 2
28004 MADRID

1-6-1 ROPPONGI
MINATO-KU, TOKYO 106-6033

3A CHATER ROAD
HONG KONG

June 9, 2006

Re:    **Neurontin Product Liability Litigation**

Kenneth B. Fromson
Finkelstein & Partners
436 Robinson Avenue
Newburgh, NY 12550

Dear Ken:

I am writing in response to your May 30, 2006 letter to Kathryn Cole in which you advise of your intention to disclose documents to attorneys of the law firm Siskinds, Cromarty, Ivey and Dowler, LLP ("Siskinds") in Canada. This letter serves as Pfizer's formal objection to your intended actions.

Our objection is based, among other reasons, on the fact that the Confidentiality Agreement dated November 29, 2004 (the "Agreement") which governs the production of materials to date by defendants limits the parties to whom confidential materials can be disclosed. Paragraph 6(i) of that agreement states that confidential materials can be revealed to:

> any attorney *who represents a party* and who has agreed in advance and in writing to abide by the terms of this Agreement and who has agreed to the jurisdiction of this court in the event of any violation of this Agreement.

Confidentiality Agreement, ¶ 6(i) (emphasis added). Siskinds does not represent any party in the cases covered by the Agreement and therefore materials designated as confidential cannot be shared with Siskinds under the Agreement.

Please confirm that in light of our objection you will not be providing materials to Siskinds.

Sincerely,

Deborah L. MacGregor

G



# Finkelstein
# & PARTNERS
## *Counselors At Law*

A Limited Liability Partnership

(800) 634-1212
Fax: (845) 562-3492
www.lawampm.com

| | | |
|---|---|---|
| Howard S. Finkelstein, P.C. (NY) | Elyssa M. Fried-DeRosa (NY) | Steven P. Shultz (NY & MA) | Melody A. Gregory (NY & CT) |
| Andrew G. Finkelstein, P.C. (NY & NJ) | Mary Ellen Wright (NY) | Victoria Lieb Lightcap (NY & MA) | Gail Schlanger (NY) |
| George M. Levy (NY) | Kenneth B. Fromson (NY & NJ) | Ann R. Johnson (NY & CT) | Elizabeth A. Wolff (NY & MA) |
| Kenneth L. Oliver, P.C. (NY) | Joel Bossom (NY) | Marshall P. Richer (NY) | |
| Joel S. Finkelstein, P.C. (RT, NJ, MA & FL) | Nancy Y. Morgan (NY, NJ & PA) | Thomas J. Pronti (NY) | Of Counsel |
| Duncan W. Clark (NY) | Andrew L. Spitz (NY) | Kristine M. Cahill (NY & CT) | Jules P. Levine, P.C. (NY & FL) |
| Ronald Rosenkranz (NY) | James W. Shuttleworth, III (NY) | Kara L. Campbell (NY & CT) | Michael O. Gittelsohn, P.C. (NY) |
| Robert J. Camera (NY & NJ) | Lawrence D. Lissauer (NY) | Arieh Mezoff (NY) | Joel A. Reback (NY & Israel) |
| Joseph P. Rones (NY & FL) | David E. Gross (NY & NJ) | Christopher T. Milliman (NY) | Sheila Rosenrauch (NY) |
| Steven Lim (NY) | Terry D. Homer (NY) | Silvia Fermanian (NY) | Kenneth Cohan (NJ) |
| George A. Kohl, 2nd (NY & MA) | Robert F. Moson (NY) | Edward M. Steves (NY) | Cynthia M. Maurer (NY & NJ) |
| Eleanor L. Polimeni (NY) | Julie E. Urrutia (NY) | Karen M. Queenan (NY & CT) | Raye D. Futerfas (NJ) |
| Steven H. Cohen (NY) | | Marie M. DuSault (NY) | Frances M. Bova (NY & NJ) |
| Francis Navarra (NY) | Debra J. Reisenman (NY) | Andrew I. Falk (NY) | Kenneth G. Bartlett (CT & NJ) |
| Andrew J. Genna, LLM (NY & PA) | Michael T. McGarry (NY) | Glenn W. Kelleher (NY) | Ari Kresch (NY & MI) |
| Thomas C. Yatto (NY) | | | |

*Accredited CLE Provider*

REFER TO OUR FILE #: 200599

June 12, 2006

Deborah L. MacGregor
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Dear Ms. MacGregor:

I am in receipt of your letter, dated June 9, 2006, in which defense counsel sets forth an objection to the disclosure of confidential information to the law firm of Siskinds, Cromarty, Ivey and Dowler, LLP ("Siskinds") in Canada. Please advise when you are able to confer on this issue prior to any motion practice.

I appreciate your position that "Siskinds does not represent any party in the cases covered by the Agreement. . . ." However, your position is somewhat inconsistent with the parties intentions. The purpose of paragraph 6(i) was to allow Finkelstein & Partners to share documents with other attorneys who had filed cases in other jurisdictions against Defendants. Not only would this assist in the overall coordination of litigation, it would obviate the necessity for Defendants to duplicate much of their exchange efforts. Nevertheless, I do understand your position as written in your June 9, 2006.

By example, let me remind you of the parties' agreement to share confidential documents with the law firm of Garcia & Karam, 820, South Main Street, McCallen, TX 78501. The Garcia firm represents **Maria Aranda** in her action against Defendants Pfizer, Parke Davis and Warner Lambert. The Aranda case was filed in Texas State Court and thus arguably was not one of the original cases set forth in the November 2004 Agreement that is the subject of this letter.

I would ask that you make yourself available to discuss the matter further.

Very truly,

Kenneth B. Fromson

Newburgh · Albany · Binghamton · Goshen · Kingston · Middletown · Monroe · New Windsor · Newark · Poughkeepsie · Spring Valley · Syracuse · Troy · Utica

436 ROBINSON AVENUE
NEWBURGH NY 12550

50 PARK PLACE, 10TH FLOOR
NEWARK NJ 07102

H

P 1/003        F-364



**CASSELS BROCK**
LAWYERS

July 11, 2006

**sent by facsimile**

gzakalb@casselsbrock.com
tel    416 869 5711
fax 416 350-6907
file # 26443-24

Mr. Mike Peerless
Siskind, Cromarty, Ivey & Dowler
680 Waterloo Street
P.O  Box 2520, Station B
London, ON N6A 3V8

Dear Mr. Peerless:

**Re: Neurontin Class Action**

I am writing in response to our telephone discussion of June 21, 2006, You advised that access was granted to your firm to documents otherwise covered by a Protective Order agreed to in the United States between the Finkelstein Partners firm and US counsel for Pfizer. In our telephone discussion, you indicated your intention to make use of documents which are the subject of the Protective Order in support of your motion for certification of your action as a class proceeding in Canada. You asked that we seek Pfizer's agreement to extend the Protective Order to allow your firm to make use of the documents in the Canadian Neurontin litigation class action.

We understand your position is that you were provided access to these documents as a "consultant". We require your confirmation in writing as to the basis upon which you were provided access to these documents and the specific provisions of the Protective Order or any other authority upon which you seek to rely in support of your entitlement to review the documentary productions.

I have had an opportunity to both obtain and review the Protective Order and to review the exchange of correspondence between Finkelstein Partners and Davis Polk and Wardwell, Pfizer's U.S. counsel. Based upon this review and our knowledge of the facts at present, it is our position that you have received documentation in violation of the Protective Order. We require the immediate return to us of all such documentation as made available to you by the Finkelstein Partners firm and that you advise of the date(s) on which you were granted access to these documents.

Finally, you raised with me your intention to seek an order granting your firm access to the documents otherwise covered by the Protective Order. You have indicated your view that you may wish to bring such motion before Madam Justice Hoy. Having reviewed the provisions of the Protective Order, we note that, assuming you take the

P. 3/003          F-384



CASSELS BROCK
LAWY ( k3

Mr. Mike Peerless
Page 2

position you have reviewed these documents pursuant to the provisions of the Order, you have accepted generally and unconditionally the jurisdiction of the US Court for purposes of dealing with the enforcement of the provisions of the order. Accordingly, your motion should be brought before the appropriate U.S Court.

I look forward to receipt of your answer to the Inquiries raised in this

letter. Yours truly,

Glenn M. W2

aibGMZ:wt


Cc    Phil Spencer
      Megan Evans
      Debbie MacGregor - Davis Polk & Wardell

I

COURT FILE NO.: 99-GD-46719
DATE:  20010126

ONTARIO
SUPERIOR COURT OF JUSTICE

B E T W E E N:         )     *C. Scott Ritchie, Michael Eizenga*

)     and *Charles Wright* for the Plaintiffs

VITAPHARM CANADA LTD., FLEMING )
FEED MILL LTD., ROGER AWAD and )
MARY HELEN AWAD )

)

Plaintiffs     )

)

- and -     )

)

F. HOFFMAN-LAROCHE LTD., )     *David W. Kent* for BASF Canada
HOFFMAN-LAROCHE INC., ROCHE )     Inc.
VITAMINS INC., HOFFMAN-LAROCHE )
LIMITED, RHONE-POULENC S.A., )     *William Vanveen* for Hoffman-
RHONE-POULENC CANADA INC., BASF)     LaRoche Ltd.
AKTIENGESELLSCHAFT, BASF )
CORPORATION, BASF CANADA INC., )     *Sandra Forbes* for Rhone-Poulenc
LONZA A.G., LONZA INC., ALUSUISSE-)     Canada Inc.
LONZA CANADA INC., CHINOOK )
GROUP LTD., CHINOOK GROUP INC., )     *Donald Houston* and *Jennifer*
DCV INC. and DUCOA L.P. )     *Roberts-Logan* for Alusuisse-

)     Lonza Canada Inc.

Defendants     )

PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*

COURT FILE NO.: 771/99

B E T W E E N:         )     *C. Scott Ritchie, Michael Eizenga*

)     and *Charles Wright* for the Plaintiffs

GLEN FORD     )

)

)

Plaintiff     )

)

- and -

```
                                              )
                                              )
F. HOFFMANN-LaROCHE LTD., RHONE-)
POULENCE S.A., LONZA INC., BASF AG,)
EISAI CO LTD., TAKEDA CHEMICAL    )
INDUSTRIES LTD., MERCK KgaA,      )
CHINOOK GROUP LTD., DCV INC.,     )
DUCOA L.P., AKZO NOBEL NV,        )
DAIICHI PHARMACEUTICAL            )
COMPANY LTD., BIOPRODUCTS INC.,   )
DEGUSSA-HULS AG, DEGUSSA          )
CORPORATION, REILLY CHEMICALS     )
S.A., VITACHEM COMPANY,           )
HOFFMANN-LA ROCHE LTD., RHONE- )
POULENC CANADA INC., AND BASF     )
CANADA INC.                       )
                                              )
                                              )
                     Defendants   )
```

*Derek J. Bell* for Takeda Chemical Industries Ltd.

*James Doris* for Bioproducts Inc.

PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*

COURT FILE NO.:00-CV-222080CP

```
B E T W E E N:                        )
                                      )
GLEN FORD, VITAPHARM CANADA      )
LTD., FLEMING FEED MILL LTD., and )
MARCY DAVID                       )
                                      )
                                      )
                Plaintiffs        )
                                      )
- and -                           )
                                      )
                                      )
F. HOFFMANN-LA ROCHE LTD.,        )
HOFFMANN-LA ROCHE LTD., MERCK )
KgaA, LONZA A.G., ALUSUISSE-LONZA)
CANADA INC., SUMITOMO CHEMICAL)
CO. LTD., SUMITOMO CANADA         )
LIMITED/LIMITEE and TANABE        )
SEIYAKU CO., LTD.                 )
                                      )
                Defendants        )
```

*C. Scott Ritchie, Michael Eizenga* and *Charles Wright* for the Plaintiffs

*William Vanveen* for Hoffman-LaRoche Ltd.

*Donald Houston* and *Jennifer Roberts-Logan* for Alusuisse-Lonza Canada Inc.

PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*

COURT FILE NO.: 00-CV-200045CP

BETWEEN:

GLEN FORD, VITAPHARM CANADA LTD., FLEMING FEED MILL LTD., ALIMENTS BRETON INC., ROGER AWAD and MARY HELEN AWAD

Plaintiffs

- and -

F. HOFFMANN-LA ROCHE LTD., HOFFMANN-LA ROCHE LIMITED/ LIMITEE, RHONE-POULENC S.A., RHONE-POULENC CANADA INC., RHONE-POULENC ANIMAL NUTRITION INC., RHONE-POULENC INC., BASF AKTIENGESELLSCHAFT, BASF CORPORATION, BASF CANADA INC., EISAI CO. LTD., TAKEDA CHEMICAL INDUSTRIES LTD., TAKEDA CANADA VITAMIN AND FOOD INC., MERCK KgaA, DAIICHI PHARMACEUTICAL COMPANY, LTD., REINHARD STEINMETZ, DIETER SUTER, HUGO STROTMANN, ANDREAS HAURI, KUNO SOMMER AND ROLAND BRONNIMANN

Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*C. Scott Ritchie, Michael Eizenga* and *Charles Wright* for the Plaintiffs

*William Vanveen* for Hoffman-LaRoche Ltd.

*Sandra Forbes* for Rhone-Poulenc Canada Inc.

*David W. Kent* for BASF Canada Inc.

PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*

COURT FILE NO.: 00-CV-20173CP

B E T W E E N:                               )    *C. Scott Ritchie, Michael Eizenga*
                                            )    and *Charles Wright* for the Plaintiffs
GLEN FORD, FLEMING FEED MILL                )
LTD., ALIMENTS BRETON INC., and             )
KRISTI CAPPA                                )
                                            )
                              Plaintiffs    )
                                            )
- and -                                     )
                                            )
RHONE-POULENC S.A., RHONE-                  )    *Sandra Forbes* for Rhone-Poulenc
POULENC CANADA INC., DEGUSSA-               )    Canada Inc.
HULS AG, DEGUSSA CORPORATION,               )
NOVUS INTERNATIONAL INC., and               )
AVENTIS ANIMAL NUTRITION S.A.               )
                                            )
                              Defendants    )

PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*

COURT FILE NO.: 00-CV-200044CP

B E T W E E N:                               )    *C. Scott Ritchie, Michael Eizenga*
                                            )    and *Charles Wright* for the Plaintiffs
VITAPHARM CANADA LTD., FLEMING              )
FEED MILL LTD., ALIMENTS BRETON             )
INC., and KRISTI CAPPA                      )
                                            )
                              Plaintiffs    )
                                            )
- and -                                     )
                                            )
DEGUSSA-HULS AG, DEGUSSA                     )    *Donald Houston* and *Jennifer*
CORPORATION, REILLY INDUSTRIES              )    *Roberts-Logan* for Alusuisse-
INC., REILLY CHEMICALS S.A.,                )    Lonza Canada Inc.
VITACHEM COMPANY, ALUSUISSE-                )
LONZA CANADA INC., LONZA A.G.,              )

NEPERA INCORPORATED, ROGER    )
NOACK and DAVID PURPI         )
                             )
                Defendants    )

PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*


COURT FILE NO.: 00-CV-198647CP


B E T W E E N:                    )      *C. Scott Ritchie, Michael Eizenga*
                                 )      and *Charles Wright* for the Plaintiffs
FLEMING FEED MILL LTD., ALIMENTS )
BRETON INC., GLEN FORD and MARCY )
DAVID                            )
                                 )
              Plaintiffs         )
                                 )
    - and -                      )
                                 )
BASF AKTIENGESELLSCHAFT, BASF    )      *David W. Kent* for BASF Canada
CORPORATION, BASF CANADA INC.,   )      Inc.
CHINOOK GROUP LTD., CHINOOK      )
GROUP INC., DCV INC., DUCOA L.P.,)      *James Doris* for Bioproducts Inc.
AKZO NOBEL NV, BIOPRODUCTS INC., )
RUSSELL COSBURN, JOHN KENNEDY,   )
ROBERT SAMUELSON, LINDELL        )
HILLING, JOHN L. ("PETE") FISCHER)
and ANTONIO FELIX                )
                                 )
              Defendants         )      HEARD:  January 12, 2001

PROCEEDING UNDER THE *CLASS PROCEEDINGS ACT, 1992*


REASONS FOR DECISION


The Motion

[1]    This motion raises a matter of first impression. The moving party defendants seek

an order preventing plaintiffs from gaining access to documentary and deposition evidence from discovery in United States' litigation dealing with claims analogous to those seen in this Canadian action.

[2]    There are seven Ontario class actions which allege price fixing of vitamins and vitamin products. Parallel actions are taking place in British Columbia and Quebec.

[3]    The defendants BASF Canada Inc. ("BASF Canada"), Takeda Chemical Industries Ltd. ("Takeda Chemical"), Takeda Canada Vitamin & Food Inc. ("Takeda Canada"), F. Hoffmann-LaRoche Ltd. and Alusuisse-Lonza Canada Inc.(collectively, the "moving defendants") move for an order declaring that the plaintiffs in these class proceedings are acting contrary to the purposes and provisions of the *Class Proceedings Act, 1992* S.O. 1992, c. 6 ("*CPA*") and the *Rules of Civil Procedure* R.R.O. 1990, Reg. 194 ("rules").

[4]    The plaintiffs in action #771/99 *Glen Ford v. F. Hoffman-LaRoche Ltd. et al* (the "*Ford*" action) and #99-GD-46719 *VitaPharm Canada Ltd. et al v. F. Hoffman Ltd. et al.* (the "*VitaPharm*" action) have moved to intervene in United States' litigation (*In re: Vitamins Anti-Trust Litigation*, MDL No. 1285) to obtain discovery evidence being given by defendants in that litigation (the "U.S.Motion"). The moving defendants ask for an order requiring the plaintiffs to discontinue their motion before the American court.

[5]    Some background is necessary.


## Background

[6]    The plaintiffs in the class actions at issue sue various combinations of defendants. The plaintiffs in the Canadian class proceedings assert that the defendants entered into conspiracies to fix prices with respect to the distribution and sale of vitamins and related products manufactured by some of the corporate defendants.

[7]    The claims assert that the worldwide vitamin industry was dominated by certain groupings of defendants who controlled a significant percentage of the world vitamin market for many of the main types of vitamins. Some defendants have pled guilty in the United States and Canada to price fixing charges concerning vitamins. The Canadian class proceedings are based upon the impact of the alleged global conspiracies upon residents in Canada.

[8]    Generally, vitamins are manufactured and marketed for one or the other of three specific uses: for direct human consumption, as food and beverage additives for human consumption and as an agricultural feed supplement for animal consumption.

[9]    The Ontario and British Columbia class proceedings allege that different combinations of the defendants fixed the prices of various vitamins having one or more of the mentioned three uses. There is a broad spectrum of plaintiffs because of the different users. The proposed representative plaintiffs in each action bring the action on

their own behalf and on behalf of similarly situated persons who purchased, used or received a particular vitamin and/or purchased products containing a certain vitamin or products derived from animals that consumed a particular vitamin.

### The Canadian Class Proceedings

[10]    A number of class proceedings have been commenced in Canada. The seven Ontario actions are to be dealt with in the Toronto Region. See *VitaPharm Canada Ltd. v. F Hoffman La-Roche Ltd.* (2000), 48 O.R. (3d) 21 (S.C.J.). Plaintiffs' counsel (the "Strosberg/Siskind counsel group") has been named lead counsel for the Ontario class actions, as a result of a "carriage motion". See *VitaPharm Canada Ltd. v. F. Hoffman-Laroche Ltd.* [2000] O.J. No. 4594 (S.C.J.). Four other Ontario class actions have been stayed as a result of the carriage motion. The current Ontario class actions seek certification for national classes, covering all Canadians other than those plaintiffs in the British Columbia and Quebec class actions.

[11]    There is a class action commenced in British Columbia-C994010 *Ritchie-Smith v. F. Hoffman et al.* ( *"Ritchie-Smith"*). Counsel for the British Columbia plaintiffs has entered into cooperative arrangements with the Strosberg/Siskind counsel group. The intent is for the litigation to proceed primarily in Ontario. The plaintiffs in *Ritchie-Smith* have joined with the plaintiffs in the *Ford* and *VitaPharm* actions in bringing the U.S. Motion. Counsel for the British Columbia plaintiffs in *Ritchie-Smith* has not agreed that this Ontario court's disposition of the motion at hand will in any way govern the B.C. plaintiffs in respect of the U.S. Motion. This court does not, of course, have jurisdiction over the *Ritchie-Smith* case.

[12]    There are also two class proceedings commenced in Quebec which relate to the alleged conspiracies-#500-06-000090-999 *Quebec Option Consommateurs et al. v. Roche Holding et al.* and #500-06-000090-999 *Quebec Auger et al. v. Hoffman LaRoche et al.* It is noted parenthetically that in Quebec a class action may only include individuals as class members and not corporations. The Ontario actions include corporate plaintiffs, and embrace Quebec corporations as putative class members.

[13]    For ease of convenience and simplicity, I shall refer to the Ontario and British Columbia class actions as the "Canadian class proceedings". The Canadian class proceedings continue to be re-engineered because of the complexities. Thus, the seven current Ontario class actions include five new, so-called reconstituted class actions - #00-CV-200045CP (relating to an alleged conspiracy in respect of "Bulk Vitamins"), #00-CV-222090CP (relating to an alleged conspiracy in respect of "Biotin"), #00-CV-201723CP (relating to an alleged conspiracy in respect of "Methionine"), #00-CV-200044CP (relating to an alleged conspiracy in respect of "Niacin") and #00-CV-19867CP (relating to an alleged conspiracy in respect of "Choline Choride".) The pleadings for some of these five actions have not yet been served on all defendants. Jurisdiction motions are pending by defendants. No class proceeding has yet been certified.

### The United States' Litigation

[14]    A myriad of plaintiffs have commenced actions in the United States in respect of alleged price fixing in the distribution and sale of vitamins and related products manufactured by some of the corporate defendants in the Canadian actions. All federal court civil litigation in the United States, class and non-class, has been consolidated before Judge Thomas F. Hogan in the United States District Court for the District of Columbia under the style *In re: Vitamins Anti-Trust Litigation*, MDL No. 1285 ("U.S. Litigation").

[15]    The U.S. Litigation includes some 48 defendants, 29 of whom who are not parties to the Ontario or British Columbia vitamins cases. Conversely, many of the defendants in the Canadian class proceedings are not defendants in the U.S. Litigation. Of the five parties who are moving defendants, only Takeda Chemical is a named defendant in the U.S. Litigation.

[16]    Documentary and oral discovery of both parties and non-parties is already underway in the U.S. Litigation. Collectively, the defendants in the U.S. Litigation have produced over two million documents with perhaps another two million documents being anticipated. Another 250,000 documents are anticipated from non-parties. Hundreds of depositions, including non-party depositions, are probable.

[17]    The U.S. Litigation discovery process is governed in part by a Protective Order entered on November 3, 1999 (the "Protective Order"). The Protective Order limits access to and dissemination of all documents and information disclosed during the discovery process.

[18]    The U.S. Litigation is using an Internet based system called Verilaw to serve interlocutory papers and to schedule depositions. More than 600 papers (plus related confidential materials and documents) relating to the U.S. Litigation have been posted on the Verilaw site.

### The Plaintiffs' U.S. Motion

[19]    On October 26, 2000 the plaintiffs in the *Ford, VitaPharm* and *Ritchie-Smith* actions brought the U.S. motion in the U.S. Litigation seeking modification of the Protective Order and access to the evidence from the discovery of certain of the U.S. corporate defendants who allegedly participated in the manufacture and sale of Niacin and Niacinamide ("corporate Niacin defendants"). Six of the eight corporate Niacin defendants in the U.S. Litigation reportedly are named as defendants in the Ontario actions. None of these six corporate Niacin defendants have pleaded guilty to conspiracy charges in Canada. Three of the six have pleaded guilty in the U.S. to charges of conspiracy to fix prices in the U.S. and elsewhere.

[20]    The plaintiffs seek an order by Judge Hogan to modify the Protective Order, whereby plaintiffs' counsel would be granted access to all documents, interrogatory responses, admissions and other discovery papers produced by the corporate Niacin defendants. Counsel would also be granted permission to attend depositions of the corporate Niacin defendants and plaintiffs' counsel would be added to the Verilaw system for both service and deposition scheduling. To enable the access, the plaintiffs seek to be deemed "Parties" and to have their counsel deemed to be "Counsel" in the U.S. Litigation.

[21]    The defendants say that the effect of the requested order of Judge Hogan would be to give the plaintiffs unfettered access to discovery evidence and the documents of all defendants to the U.S. Litigation, not just the corporate Niacin defendants. However, the plaintiffs advise they are prepared to limit their access to discovery of the corporate Niacin defendants.

[22]    The plaintiffs' purpose through the U.S. Motion is to obtain evidence in support of their claims in the Canadian class proceedings. They rely upon "comity" in proposing the intervention in the U.S. Litigation for discovery sharing. The plaintiffs' U.S. Motion is grounded upon their status as litigants in the Canadian class proceedings.

[23]    The moving defendants submit that the plaintiffs' U.S. Motion is inconsistent with the *CPA*. In addition, the defendants characterize the motion at hand as a "practice motion" which relates to the control by the court over the manner in which litigants conduct litigation. It is in the nature of injunctive relief. The moving defendants seek an order from this court requiring the plaintiffs to discontinue and withdraw the U.S. motion.

The Issues

[24]    There are three issues:

1) Does this Court have jurisdiction to grant the relief sought by the moving defendants' motion?

2) Does this Court have any role in respect of the U.S. Motion? and

3) Should this Court require the plaintiffs to discontinue and withdraw the U.S. Motion?

First Issue: Does this Court have jurisdiction to grant the relief sought by the moving defendants' motion?

[25]    This court has jurisdiction to deal with the moving defendants' motion under s. 101 of the *Courts of Justice Act*, R.S.O. 1990, c. C. 43 and s. 12 of the *CPA*. More generally,

the Superior Court of Justice has plenary jurisdiction to control its own process. See *Amchem Products v. British Columbia (Workers Compensation Board)*, [1993] 1 S.C.R. 897 where the Supreme Court of Canada recognized the power to issue an anti-suit injunction. If this Court has the power to issue an anti-suit injunction the court necessarily has the power to take the lesser steps sought in the defendants' motion.

[26]    The House of Lords considered a similar issue in *South Carolina Insurance Co. v. Assurantie Maatschappij "De Zeven Provincien" NV*, [1987] 1 A.C. 24 (H.L.). The defendants in a court action in the High Court of England sought pre-trial discovery of business associates of the plaintiffs by an application under 28 U.S.C. § 1782 before the United States district court. The plaintiffs sought an injunction from the English court. Lord Brandon pointed out that a party to an action in England can not compel pre-trial discovery as against a non-party to the action. (p.492). However, Lord Brandon then stated (p. 497):

> I cannot see that the defendants, by seeking to exercise a right potentially available to them under the Federal Law of the United States, have in any way departed from, or interfered with, the procedure of the English court. All they have done is what any party preparing his case in the High Court here is entitled to do, namely to try to obtain in a foreign country, by means lawful in that country, documentary evidence which they believe that they need in order to prepare and present their case.

[27]    As a result of the inexorable forces of globalization and expanding international free trade and open markets, there will be an ever-increasing inter-jurisdictional presence of corporate enterprises. This is seen particularly in respect of American and Canadian business activity, given the extent of cross-border trade. If both societies are to maximize the benefits of expanding freer trade and open markets, the legal systems of both countries must recognize and facilitate an expeditious, fair and efficient regime for the resolution of litigation that arises from disputes in either one or both countries.

[28]    For the reasons given, in my view this court has jurisdiction to grant the relief sought by the moving defendants' motion.

## Second Issue: Does this Court have any role in respect of the U.S. Motion?

[29]    The U. S. Motion ultimately will be determined under United States' law. Nevertheless, United States' courts have made it clear that they welcome foreign courts' comments on the propriety of crossborder motions by foreign litigants seeking U.S. discovery. See *In re Bayer A.G.*, 146 F.3d 188 (3d Cir. 1988) and *Euromepa S.A. v. R. Esmerian Inc.*, 51 F.3d 1095 (2d Cir. 1995).

[30]    The moving defendants say that the plaintiffs have not applied for early or non-party discovery in the Canadian class proceedings before this court. The moving

defendants request this court to exercise control over its process by preventing the plaintiffs from gaining access to U.S. discovery. The moving defendants rely upon s. 12 of the *CPA* which provides that this court "may make any order it considers appropriate respecting the conduct of a class proceeding to ensure its fair and expeditious determination..."

[31]    The plaintiffs are not seeking discovery in the U.S. through their U.S. Motion. Rather, they are only seeking *access* to the discovery of the litigants in the U.S. Litigation. From a legal standpoint, the U.S. Motion is only necessary because of the Protective Order.

[32]    If there was no Protective Order and the plaintiffs were simply given access to discovery documents and depositions generated in the U.S. Litigation, the defendants could not take objection. It is only Judge Hogan who has jurisdiction to vary the terms of the Protective Order. Accordingly, the plaintiffs can only gain access by being successful in respect of their U.S. Motion.

[33]    There appears to be no precedent for the intervention by a Canadian litigant in foreign proceedings for the purposes of having access to the discovery evidence generated by the litigants in the foreign action. However, pursuant to 28 U.S.C. § 1782, United States statutory federal civil procedure facilitates foreign litigants by providing assistance when they wish to conduct discovery in the U.S. in aid of foreign litigation. This cooperative approach is based upon "...considerations of comity and sovereignity [sic] that pervade international law." *John Deere Ltd. v. Sperry Corp.* 754 F. 2d 132 (3d Cir. 1985) ("*John Deere*") at 135. Reciprocity by the foreign court is not a precondition for this assistance. *John Deere, supra* at 135.

[34]    Section 1782 provides two routes to the Canadian litigant seeking discovery through testimony or documents in the United States in aid of Canadian litigation. First, the Canadian litigant may obtain a letters rogatory or request from the Canadian court and then move in the appropriate federal district court for an order compelling discovery. (Rules 34.07(2) and 36.03 provide for such letters of request in Ontario.)

[35]    Alternatively, the Canadian litigant may simply apply directly to the appropriate U.S. federal district court for an order compelling discovery. The litigant need not go through the Canadian court as a prerequisite to making the request of the U.S. court. *John Deere, supra*

[36]    Section 1782 represents unilateral U.S. legislation not dependent on reciprocity with the other country. Nevertheless, U.S. courts have taken the position they should not "countenance the use of U.S. discovery procedures to evade the limitations placed on domestic pre-trial disclosure by foreign tribunals." *John Deere, supra* at 136. United States' courts will have regard to the foreign country's laws that address evidence gathering. Permission to take U.S. discovery "that trenched upon the clearly established procedures of a foreign tribunal would not be within section 1782." *John Deere, supra* at 135.

[37]    English judges have noted the U.S. courts' invitation to foreign courts to provide guidance. English courts have observed that the domestic court will always be in the best position to both describe and act upon its own discovery practice and the question of whether the proposed U.S. discovery is appropriate in the context of the English proceedings. *Bankers Trust International plc v. P.T. Dharmal Sakti Sejahtera*, [1996] C.L.C. 252 (Q.B.) at 262, 263 ("*Bankers Trust*").

[38]    None of the Canadian class proceedings have been certified. The plaintiffs are simply putative representative plaintiffs to this point in time. The plaintiffs are not normally entitled to discovery until the close of pleadings (rules 30.03 (1) 31.03, 30.04, 31.04), they may not examine more than one officer of a corporate defendant without leave (rule 31.03 (2), (3)) and discovery of a non-party is dependent upon leave of the court (rules 30.10, 31.10). See for example *Stern v. Imasco* (1999), 38 C.P.C. (4th) 347 (Ont. S.C.J.). Ontario has enacted a rule that is narrower in scope than the American approach. See generally *Ontario (Attorney General) v. Stavro* (1995), 26 O.R. (3d) 39 (C.A.) at 47-48. The moving defendants submit that to allow the plaintiffs to continue with the U.S. Motion would be inconsistent with the Ontario rules of civil procedure.

[39]    The Ontario limitations with respect to pre-trial discovery of a non-party without leave is intended to protect non-parties. Its purpose is not to protect parties to the action.

[40]    A U.S. federal district court hearing an application for an order under s. 1782 considers whether permitting discovery would offend the foreign tribunal. There is a particular concern that the discovery provisions of the foreign jurisdiction are "not circumvented by procedures authorized in American courts" when the request for discovery assistance does not arise from letters rogatory but rather comes directly from the foreign litigant. *John Deere, supra* at 136.

[41]    The district court hearing an application for discovery assistance under s. 1782 will normally allow for the discovery of relevant evidence unless the opposing party can raise a justifiable objection.

[42]    In making this determination the district court in its discretion may consider statutes or case law from the foreign jurisdiction. *In Re Bayer AG, supra* at 8; *Euromepa S.A. v. R. Esmerian, Inc. supra*, at 1099, 1100.

[43]    The English courts have restrained a party to English proceedings from pursuing an application in the United States under s.1782. In *Bankers Trust, supra*, Mance J. held that this can be done where the application is unconscionable, such as when the conduct is vexatious or oppressive or interferes with the due process of the English court (at 254, 262, 263).

[44]    In that case the defendant sought discovery in the United States after completion of the trial in England but before judgment. In determining whether or not the applicant's intended application in the United States was unconscionable, Mance J took into

account not only the "potential injustice to the one party if the other is allowed to pursue" the proceeding in the U.S. but also "the potential injustice to the latter if he is not so allowed..." (at 254)

[45]    A Canadian court generally will be reluctant to prevent someone from gathering evidence extraterritorially, as its ultimate admissibility in a Canadian proceeding will be determined by the Canadian courts. *Penty v. Law Society of British Columbia* (1999), 68 B.C.L.R. (3d) 159 (S.C.) at 162; (1999), 69 B.C.L.R. (3d) 97 (B.C.C.A.) at 107-108; application for leave to appeal dismissed with costs, [1999] S.C.C.A. No. 616.

### (3)  Should this Court require the plaintiffs to discontinue and withdraw the U.S. Motion?

[46]    The moving defendants submit that the plaintiffs should not have access to discovery in the United States until the jurisdiction of this court in respect of the Canadian proceedings is decided through the hearing of the pending motions by the defendants in this court. I disagree. If this court is ultimately found to lack jurisdiction, then the Ontario actions will fall away and the defendants will be free of them. In such event, the plaintiffs' access to discovery in the United States will be of no import.

[47]    The moving defendants also profess to have a concern about a loss of confidentiality if access is given to the U.S. discovery. They express a concern about an invasion of privacy. (It is noted incidentally that Takeda Chemical is the only moving defendant who is a party to both the U.S. and Canadian proceedings. No other moving defendant has produced documents in the U.S.) The maintenance of confidentiality is, of course a matter for Judge Hogan in his consideration of the U.S. Motion. The plaintiffs have stated that if Judge Hogan grants the plaintiffs access to U.S. discovery they will consent to an order of this court if the defendants see that to be of assistance in maintaining confidentiality and the sanctity of the Protective Order.

[48]    The plaintiffs' U.S. Motion *prima facie* has the purpose of saving considerable time and money in the Canadian proceedings. If successful in gaining access to U.S. discovery in the U.S. Litigation, the plaintiffs can determine earlier and with greater certainty the nature and extent of the precise evidence available that is relevant to the Canadian proceedings. To deny access to the present U.S. discovery could conceivably mean that the plaintiffs over time would have to pursue separately s. 1782 orders in respect of the corporate Niacin defendants in the U.S. Litigation. At the least, success in obtaining access to the present U.S. discovery means that the plaintiffs can much more easily determine and discard what is *not relevant* for the purpose of the Canadian proceedings.

[49]    The plaintiffs' action in seeking access to the U.S. discovery is not oppressive or unfair to the defendants in the Canadian proceedings. To the contrary. Such access is consistent with the three policy objectives underlying the *CPA* – facilitating access to justice, judicial efficiency and behaviour modification. In particular, there will be

significant savings in litigation costs through such access.

[50]   The plaintiffs' request for access to discovery evidence which they believe necessary to prepare their case in Canada, a request made through means lawful in the United States, does not violate the rules and procedure of this court. There is no consequential unfairness to the defendants in the Canadian class proceedings.

[51]   Therefore, in my view, this court should not require the plaintiffs to discontinue and withdraw the U.S. Motion.

## Disposition

[52]   For the reasons given the motion of the moving defendants is dismissed. I may be spoken to as to costs.

CUMMING J.

Released:  January 26, 2001

COURT FILE NOS.: 82/2001
90/2001
91/2001
115/2001

DATE: 2002/04/10

SUPERIOR COURT OF JUSTICE – ONTARIO
(DIVISIONAL COURT)

RE:    Court File No. 99-GD-46719

VITAPHARM CANADA LTD., *et al* (Plaintiffs/Respondents) and
F. HOFFMANN-LAROCHE LTD., *et al* (Defendants/Appellants)
Proceeding under the *Class Proceedings Act, 1992*

Court File No. 771/99

GLEN FORD (Plaintiff/Respondent) and F. HOFFMANN-LA
ROCHE LTD., *et al.* (Defendants/Appellants) Proceeding under
the *Class Proceedings Act, 1992*

Court File No. 00-CV-222080CP

GLEN FORD, *et al.* (Plaintiffs/Respondents) and F.
HOFFMANN-LAROCHE LTD., *et al.* (Defendants/Appellants)
Proceeding under the *Class Proceedings Act, 1992*

Court File No. 00-CV-200045CP

GLEN FORD, *et al.* (Plaintiffs/Respondents) and F.
HOFFMANN-LAROCHE LTD., *et al.* (Defendants/Appellants)
Proceeding under the *Class Proceedings Act, 1992*

Court File No. 00-CV-20173CP

GLEN FORD, *et al.* (Plaintiffs/Respondents) and RHONE-POULENC S.A., *et al.* (Defendants/Appellants) Proceeding under the *Class Proceedings Act, 1992*

Court File No. 00-CV-200044CP

VITAPHARM CANADA LTD., *et al.* (Plaintiffs/Respondents) and DEGUSSA-HULS AG, *et al.* (Defendants/Appellants) Proceeding under the *Class Proceedings Act, 1992*

Court File No. 00-CV-198647CP

FLEMING FEED MILL LTD., *et al.* (Plaintiffs/Respondents) and BASF AKTIENGESELLSCHAFT, *et al.* (Defendant/Appellants) Proceeding under the *Class Proceedings act, 1992*

BEFORE:   FARLEY, MATLOW, ROY JJ:

COUNSEL:   *C. Scott Ritchie and Michael A. Eizenga* for the Plaintiffs (Respondents)

*John F. Rook, Q.C. and Derek J. Bell* for Takeda Canada Vitamin & Food Inc. and Takeda Chemical Industries Ltd., Appellants

*François Baril* for Hoffman-LaRoche Limited, Appellant

*Donald Houston and Jennifer Roberts-Logan* for the Alusuisse-Lonza Canada Inc., Appellant

*David Kent* for BASF Canada Inc., Appellant

HEARD:   January 7 and 8, 2002

## ENDORSEMENT

[1]   Each of the four appeals is dismissed with costs fixed at $1500 payable forthwith.