[2]     The appellant in each of the appeals argued together before us with leave seeks an order setting aside the order of Cumming, J made on January 26, 2001.

[3]     By that order motions made by the appellants for orders enjoining the respondents from proceeding with certain motions before Judge Thomas F. Hogan in the United States District Court for the District of Columbia were dismissed. Those motions were brought in the context of related consolidated litigation brought against the appellants and others in the U.S. The relief sought included the conferring of status on the respondents to bring the motions before Judge Hogan and exemptions for them from a protective order which protects the confidentiality of documents and information disclosed during the discovery process in the U.S. litigation. An order conferring the status sought by the respondents has now be granted and the balance of the motions stands adjourned pending the outcome of these proceedings.

[4]     The attack against the order in appeal is based principally on the characterization by the appellants of the order sought by the respondents before Judge Hogan as an order allowing discovery in the U.S. in the actions pending in this Court. In contrast, the respondents take the position that the motions brought by them were not brought for the purpose of obtaining any rights of discovery whatsoever. Rather, it is their position that the purpose of the order sought by them was to secure access to the fruits of discovery conducted by the parties in the U.S. litigation that might be of probative value in the actions pending in this Court. They do not seek the right to examine any person or compel production of any document in the U.S.

[5]     Cumming, J accepted the respondents' characterization of their motions before Judge Hogan and held that the respondents were seeking "access to discovery evidence" rather than discovery itself.

[6]     It was fairly conceded by counsel acting for the respective appellants that, if we should agree with this finding, it must follow that the appeals must be dismissed because the arguments advanced on their behalf were based on their characterization of the relief sought by the respondents which was rejected by Cumming, J.

[7]     With the greatest of respect, I prefer to rest my ultimate disposition of this appeal on this narrow issue I agree with this finding made by Cumming, J and am compelled to impose the fatal consequence contemplated by the appellants' concession.

[8]     It would be beyond belief that a foreign court would purport to assume jurisdiction over an action pending in Ontario and even contemplate

granting interlocutory relief for discovery. It is trite to assert that only this Court has jurisdiction to control its own process.

[9]     All that could reasonably be sought from the U.S court presided over by Judge Hogan by the respondents, and perhaps granted, would be assistance to further their investigations and provide evidence that might be of assistance to advance their claims in the pending litigation here. If relevant evidence could be obtained by them by that means, that evidence would still be subject to the control of this Court with respect to its admissibility.

[10]    It follows, therefore, that the U.S. motions should be governed by the applicable U.S. law in a U.S. court. Whether to entertain the motions or grant any relief are matters entirely for that court to determine.

[11]    I appreciate and adopt the following laudable principle of judicial co-operation set out by Cumming, J in paragraph 27 of his Reasons For Decision:

> "If both societies are to maximize the benefits of expanding free trade and open markets, the legal systems of both countries must recognize and facilitate an expeditious, fair and efficient regime for the resolution of litigation that arises from disputes in either one or both countries".

[12]    However, judicial co-operation cannot extend to surrendering or adopting jurisdiction without a proper basis. It would be unseemly for a court in one country to purport to assume jurisdiction over proceedings pending in a court of the other country and I do not construe the observation of Cumming, J to support such an approach.

[13]    It follows, therefore, that even if the respondents had sought the intervention of the U.S. court in the litigation pending here, it would not be necessary to grant injunctive relief prior to the hearing of the motions. It would be preferable, in my view, to await the decision of the U S court.

[14]    The jurisdiction of this Court to enjoin litigants from seeking relief from a foreign court for relief that is available only in that foreign jurisdiction is, with respect, doubtful and should await determination in another case if the issue should squarely arise.

[15]    Finally, in my respectful view, for the reasons set out above it would be an inappropriate intrusion for this Court to address the merits of the respondents' U.S. motions or to provide guidance to Judge Hogan as sought by him in his Reasons For Decision for granting intervenor status to the respondents. The merits of such a motion should be considered only by the court to which it is made.

_____

MATLOW J.

_____

ROY J.

DATE: April 10, 2002

COURT FILE NOS.: 82/2001
90/2001
91/2001
115/2001
DATE: 20020410

ONTARIO
SUPERIOR COURT OF JUSTICE

DIVISIONAL COURT

FARLEY, MATLOW, ROY JJ.

Court File No.: 99-GD-46719

BETWEEN: )
)
VITAPHARM CANADA LTD., *et al.* ) *C. Scott Ritchie and Michael Eizenga*
) for the Plaintiffs, Respondents
Plaintiffs (Respondents) )
)
- and - )
)
F. HOFFMANN-LA ROCHE LTD., *et al.* ) *John F. Rook, Q.C. and Derek J. Bell*
) for Takeda Canada Vitamin & Food
Defendants (Appellants) ) Inc. and Takeda Chemical Industries,
) Ltd., Appellants
Proceeding under the *Class Proceedings Act, 1992* )
)

Court File No.: 771/99

BETWEEN: )
)
GLEN FORD )
)
Plaintiff (Respondent) )
)
- and - )
)
F. HOFFMANN-LA ROCHE LTD., *et al.* ) *François Baril*
) for Hoffmann-La Roche Limited,
Defendants (Appellants) ) Appellant
)
Proceeding under the *Class Proceedings Act, 1992* )
)

Court File No.: 00-CV-222080CP

B E T W E E N:                                            )
                                                         )
GLEN FORD, *et al.*                                      )
                                                         )
                        Plaintiffs (Respondents)         )
                                                         )
- and -                                                  )
                                                         )
F. HOFFMANN-LA ROCHE LTD , *et al.*                      )
                                                         )
                        Defendants (Appellants)          )
                                                         )
Proceeding under the *Class Proceedings Act, 1992*       )
                                                         )

                                                         Court File No.: 00-CV-200045CP

B E T W E E N:                                           )
                                                         )
GLEN FORD, *et al.*                                      )
                                                         )
                        Plaintiffs (Respondents)         )
                                                         )
- and -                                                  )
                                                         )
F. HOFFMANN-LA ROCHE LTD., *et al*                       )
                                                         )
                        Defendants (Appellants)          )
                                                         )
Proceeding under the *Class Proceedings Act. 1992*       )
                                                         )

                                                         Court File No.: 00-CV-20173CP

B E T W E E N:                                           )
                                                         )
GLEN FORD, *et al.*                                      )
                                                         )
                        Plaintiffs (Respondents)         )
                                                         )
- and -                                                  )
                                                         )
RHONE-POULENC S A., *et al*                              )
                                                         )
                        Defendants (Appellants)          )
                                                         )
Proceeding under the *Class Proceedings Act. 1992*       )
                                                         )

Court File No.: 00-CV-200044CP

B E T W E E N:                                   )
                                                )
VITAPHARM CANADA LTD., *et al.*                 )
                                                )
                    Plaintiffs (Respondents)    )
                                                )
- and -                                         )
                                                )
DEGUSSA-HULS AG, *et al.*                       )          *Donald Houston and*
                                                )          *Jennifer Roberts-Logan*
                    Defendants (Appellants)     )          for the Alusuisse-Lonza Canada Inc.,
                                                )          Appellant
Proceeding under the *Class Proceedings Act, 1992*   )
                                                )

                                                          Court File No.: 00-CV-198647CP

B E T W E E N:                                   )
                                                )
FLEMING FEED MILL LTD., *et al.*                )
                                                )
                    Plaintiffs (Respondents)    )
                                                )
- and -                                         )
                                                )
BASF AKTIENGESELLSCHAFT, *et al.*               )          *David Kent*
                                                )          for BASF Canada Inc., Appellant
                    Defendants (Appellants)     )
                                                )
Proceeding under the *Class Proceedings Act, 1992*   )
                                                )
                                                )
                                                )          HEARD: January 7, 2002

## FARLEY J.:

[1]     The defendants BASF Canada Inc., Hoffmann-La Roche Limited, Alusuisse-Lonza
Canada Inc. and Takeda Canada Vitamin & Food Inc. / Takeda Chemical Industries, Ltd. appeal
the order of Cumming J. dated January 26, 2001 dismissing the defendants' motion for an order
preventing the plaintiffs from gaining access to documentary and deposition evidence from
discovery in litigation in the United States dealing with claims analogous to those comprising the
various Canadian class proceedings. There are seven Ontario class actions which allege price
fixing of vitamins and vitamin products, with parallel actions in British Columbia and Quebec.
The defendants had asserted to Cumming J. that the plaintiffs in these class proceedings, by

seeking access to such evidence, were acting contrary to the purposes and provisions of the *Class Proceedings Act, 1992*, S.O. 1992, c.6 ("CP Act") and the *Rules of Civil Procedure*, R.R.O. 1990, Reg. 194 ("Rules"). Access to the U.S. evidence was sought by the plaintiffs moving to intervene in the litigation in the U.S. (*In re: Vitamins Antitrust Litigation*, MDL No. 1285) so as to obtain discovery evidence being given in that litigation. The defendants requested that Cumming J. require the plaintiffs to discontinue their motion in the U.S. Court. I have had the benefit of reviewing Matlow J.'s draft reasons. While I come to the same conclusion as he has in dismissing the defendants' appeal, I felt that the issue involved merited a somewhat more extensive analysis.

[2]     In this appeal, the defendants asked that Cumming J.'s order be set aside and that this court grant an order as follows:

- (a)     declaring that the plaintiffs are acting contrary to the purpose and provisions of the CP Act and the Rules by moving to intervene in the U.S. Litigation for the purpose of obtaining discovery from the U.S. defendants in that U.S. Litigation ("the U.S. Motion");

(b)     requiring the plaintiffs to take all necessary steps to discontinue and withdraw the U.S. Motion and/or to refrain from taking any steps under any eventual U.S. order granting the relief sought by the plaintiffs in the U.S. Motion;

(c)     for the costs of this appeal, of obtaining leave to appeal and of the original motion; and

(d)     for such further and other relief as this Honourable Court may deem just.

[3]     In the U.S. Litigation, there is a U.S. Protective Order which limits access and use of documentary and disposition evidence produced in that litigation to the parties to that litigation as opposed to the general U.S. provision that such material would be openly accessible. This should be contrasted with the Canadian approach to litigation which restricts access to discovery evidence.

[4]     On March 19, 2001 U.S. District Judge Hogan presiding over the U.S. Litigation determined that the plaintiffs met the criteria for permissive intervention but deferred ruling on the portion of the U.S. Motion seeking modification of the U.S. Protective Order, access to Verilaw and attendance at depositions of the Niacin Defendants until the appeals process in the Canadian courts is exhausted or otherwise concluded or until such time as Judge Hogan determines that it is otherwise appropriate to decide those issues. At pp. 14-5 of his decision Judge Hogan stated:

... In the instant case, such a determination would require this Court to engage in an exegesis of Canadian procedure and discovery principles. Although Justice Cumming has stated that granting access to Plaintiffs does not offend Canadian procedure, this is only one Ontario court's interpretation of existing Canadian law.[20]   And the decision does not purport to be binding on the litigation pending

in other Canadian provinces.[21]  A decision by this Court to modify the Protective Order would surely require this Court to engage in its own evaluation of various Canadian provincial procedures. Based on pragmatic considerations, this Court determines that such an inquiry, if undertaken at all, is best left until the conclusion of the Canadian appellate process. This Court is reluctant to rule on issues that are a matter of first impression not only in the U.S., but in Canadian courts as well, particularly in light of the fact that the subsequent Canadian appellate decisions may effectively moot the Motion pending before this Court.[22] Even if the Canadian courts decline to overturn Justice Cumming's denial of the injunction sought by the Defendants, the appellate opinions are likely to provide valuable guidance to this Court in making its determination.

At footnote 21, Judge Hogan also raised an enquiry:

> [21]    As an additional consideration, the Canadian court asserts that it has "plenary jurisdiction to control its own process" and thus the authority to grant or deny the requested injunction, id. ¶ 25, at 9-10, but this Court queries whether such jurisdiction extends to supervising Movants' compliance with provisions of a U.S. protective order. The Canadian Plaintiffs have agreed to submit to the jurisdiction of this Court for the purposes of enforcing the provisions of the Protective Order, but Defendants argue that there is no realistic way for this Court to enforce the Protective Order against the Canadian Plaintiffs. Defs' Opp. Mem. P&A at 19. In his Reasons for Decision, Justice Cumming notes that the Canadian Plaintiffs "will consent to an order of this court if the defendants see that to be of assistance in maintaining confidentiality and the sanctity of the Protective Order." Reasons for Decision ¶ 47. at 13. Unfortunately, the Canadian court does not provide this Court with any insight as the nature of such a hypothetical order. Nor does the Canadian court clearly delineate the jurisdiction of the Canadian court to enforce a U.S. protective order.

With respect to Judge Hogan's footnote concerns, I am of the view that reference should be had to the approach of Canadian courts to comity as exemplified in the following cases: *United States v. Ivey* (1995), 27 B.L.R. (2d) 221 (Ont. Gen. Div.). affirmed (1996), 27 B.L.R. (2d) 243 (Ont. C.A.), leave to S.C.C. refused [1997] 2 S.C.R. x; *Arrowmaster Inc. v. Unique Forming Ltd.* (1993), 17 O.R. (3d) 407 (Gen. Div.); *ATL Industries Ltd. v. Han Eol Ind. Co.* (1995), 36 C.P.C. (3d) 288 (Ont. Gen. Div.), all applying the principles enunciated in *Morguard Investments Ltd. v. De Savoye*, [1990] S.C.R. 1077.

[5]    Then J. in granting leave to appeal Cumming J.'s order summarized in his reasons of March 6, 2001 the points of contention at paras. 2-5:

> 2    The reasons of Cumming J. for dismissing the Defendants' motion may be fairly summarized, *inter alia*, as follows:

a)    the Ontario Court had jurisdiction to grant the relief sought [paras. 25-28]; and

b)    the Ontario Court had a valid role in this matter even though the U.S. Motion itself is subject to U.S. law and requires a ruling by Judge Hogan [paras. 29, 37-43]; *but*

c)    the Plaintiffs were not seeking U.S. discovery but rather "access" to U.S. discovery [para. 31];

d)    Canadian courts are generally reluctant to prevent extraterritorial evidence gathering [para. 45];

e)    the pending attacks on the jurisdiction of the Ontario Court were irrelevant [para. 46];

f)    only one moving party before him was a party to the U.S. Litigation [para. 47];

g)    access to U.S. discovery would give the Plaintiffs an early evaluation of what evidence is relevant to the Canadian litigation and would generate significant savings in litigation costs [para. 49]; and

h)    the Plaintiffs' U.S. Motion is not unfair to the Defendants in the Canadian litigation and would generate significant savings in litigation costs [para. 49].

3.    The Defendants contend that the effect of the U.S. Motion will be to achieve a result in the U.S. Litigation for the purposes of the Canadian Litigation, to which the Plaintiffs are currently not entitled in the Canadian Litigation. As there has been no certification of the proceedings as a class action, the Defendants contend that the Plaintiffs have no current right of discovery in the Canadian Litigation as there is no right to discovery on the merits until the action has been certified as a class action. *Stern v Imasco Ltd* (1999), 38 C.P.C. (4th) 347 at 359 (Ont. S.C.J.).

4.    The Defendants contend that, apart from certification, there are proceedings pending attacking jurisdiction which if successful would terminate the Canadian proceedings against the successful Defendants and thus terminate the Plaintiffs' right to discovery against those Defendants Finally, some of the U.S. Defendants are not parties to the Canadian proceedings and would not be subject to discovery in Ontario without leave of the Ontario Court.

5.    The Defendants submit that in the circumstances, the Plaintiffs U.S. Motion represents an end run around Ontario's discovery policies codified in our Rules which provide *inter alia* in Rules 30, 31 and 36:

> (a)    there is no right to discovery of a defendant until after the close of pleadings and after the delivery of the plaintiff's affidavit of documents;

> (b)    discovery of a defendant is limited to information related to matters "in issue in an action";

> (c)    discovery of a corporate defendant is limited to single representative of the corporation;

> (d)    there is no right to discovery of a non-party without leave of the Court;

> (e)    if leave is granted, discovery of a non-party is limited to information "relevant to a material issue in the action"; and,

> (f)    evidence of persons outside the jurisdiction of the court may be obtained by letters rogatory, but only with leave of the court.

I am of the view that the foregoing (a) to (f) is an accurate summary of our approach in Ontario, subject to the adjustment to (f) as set forth below:

> (f)    <u>compelled</u> evidence of persons outside the jurisdiction of the court may be obtained by letters rogatory, but only with leave of the requesting court <u>and the acceptance of same by the foreign court</u>. (emphasis indicating adjustment)

I would also note that in the present Canadian cases, although correctly styled as "Proceeding under the *Class Proceedings Act, 1992*", these proceedings have not been certified as class actions. Rather they are <u>proposed</u> class actions with <u>putative</u> representative plaintiffs, which actions are <u>only at the pre-discovery stage</u>.

[6]    Judge Hogan on the U.S. side and Cumming J. and Then J. on the Canadian side as well as the parties to this appeal all recognize that this is a question of first impression.

[7]    The Canadian plaintiffs assert that significant deference should be given to Superior Court justices who have developed expertise in the area of class proceedings relying on *Anderson v. Wilson* (1999), 44 O.R. (3d) 673 (C.A.) at p. 677; *Campbell v. Flexwatt Corp.*, [1997] B.C.J. No. 2477 at para. 25; *Carom v. Bre-X Minerals Ltd.*, [2000] O.J. No. 4014 at para. 36. Cumming J. has earned an excellent reputation in the field of class proceedings. However it seems to me that the aspect of deference must be appropriately modified in this appeal for two reasons: (a) As observed above, Cumming J. recognized that he was stepping into unknown territory and (b) while certain elements of his decision were in the bailiwick of class proceedings, other elements were outside that purview.

[8]    I would note that (as I understand it) <u>but for</u> the U.S. Protective Order, the Canadian plaintiffs here could have gone to the U.S. and subject to any residuary rules or polices, they would have been able to interview the U.S. plaintiffs and their counsel and review the discoverable information and documents then existing (or as may be forthcoming).

[9]    To my view the question for this Canadian court is whether the Canadian plaintiffs (if permitted by Judge Hogan) will be accessing this discovery evidence in the passive sense of merely looking at that which has been produced in the ordinary course in the U.S. Litigation but not in the active sense of asking U.S. counsel to pursue avenues (which U.S. counsel would not have otherwise travelled) for the purpose of assisting the Canadian plaintiffs. If they were to proceed in the active sense, then in substance and effect, the Canadian plaintiffs would be engaging in discovery prior to the time that they are entitled to under our Rules and in a way which would be a breach of those Rules.

[10]    The Canadian defendants have raised the spectre that Canadian counsel will use their cooperative liaison with their U.S. counterparts so as to have the latter act as their stalking horse to get discovery in the active sense. I would think that there are two safeguards against that inappropriate behaviour. Firstly, I would presume that Judge Hogan, if inclined to relax the U.S. Protective Order, would be concerned about irrelevant discovery being pursued in the U.S. Litigation and he would require terms which would ensure that the Canadian plaintiffs got nothing more than would otherwise be discovered in the U.S. (that is, as if the Canadian proceedings did not exist). Secondly, I would be of the opinion that if the Canadian plaintiffs did engage in active sense discovery, then this (Canadian) Court would determine (a) whether the fruits of that labour could be employed in the Canadian proceedings and (b) the other sanctions for infringement of our discovery rules. However if the Canadian plaintiffs are permitted by Judge Hogan to have access to what has otherwise been discovered in the U.S. Litigation and they conduct themselves in the passive sense, then I do not see that there is a conflict between our principles on (a) gathering evidence in a foreign jurisdiction (see *South Carolina v. Assurantie Maataschappij "De Zeven Provincien" NV*, [1986] 3 All E.R. 487 (H.L.)) and (b) the right to privacy (see *Ontario (Attorney General) v Stavro* (1995), 26 O.R. (3d) 39 (C.A.); *Goodman v. Rossi* (1995), 125 D.L.R. (4th) 613 (Ont. C.A.)).

[11]    In the South Carolina case, Lord Brandon (with whom the other law lords agreed) stated at p. 497:

    ... I cannot see that the defendants, by seeking to exercise a right potentially available to them under the Federal law of the United States, have in any way departed from, or interfered with, the procedure of the English court. All they have done is what any party preparing his case in the High Court here is entitled to do, namely to try to obtain in a foreign country, by means lawful in that country, documentary evidence which they believe that they need in order to prepare and present their case.

[12]    In *Stavro*, our Court of Appeal stated at pp. 47-8:

In making the fairness assessment required by rule 30.10(1)(b), the motion judge must be guided by the policy underlying the discovery regime presently operating in Ontario. That regime provides for full discovery of and production from parties to the litigation. It also imposes ongoing disclosure obligations on those parties. Save in the circumstances specifically addressed by the rules, non-parties are immune from the potentially intrusive, costly and time-consuming process of discovery and production. By its terms, rule 30.10 assumes that requiring a party to go to trial without the forced production of relevant documents in the hands of non-parties is not *per se* unfair.

In *Goodman v. Rossi*, our Court of Appeal further observed at pp. 621-2:

... the [implied undertaking] principle is based on recognition of the general right of privacy which a person has with respect to his or her documents. The discovery process represents an intrusion on this right under the compulsory processes of the court. The necessary corollary is that this intrusion should not be allowed for any purpose other than that of securing justice in the proceeding in which the discovery takes place.

...

The rationale for the implied undertaking rule is compendiously stated Matthews and Malek's *Discovery* (1992), at p. 253:

The primary rationale for the imposition of the implied undertaking is the protection of privacy. Discovery is an invasion of the right of the individual to keep his own documents to himself. It is a matter of public interest to safeguard that right. The purpose of the undertaking is to protect, so far as is consistent with the proper conduct of the action, the confidentiality of a party's documents. It is in general wrong that one who is compelled by law to produce documents for the purpose of particular proceedings should be in peril of having those documents used by the other party for some purpose other than the purpose of the particular legal proceedings and, in particular, that they should be made available to third parties who might use them to the detriment of the party who has produced them on discovery. A further rationale is the promotion of full discovery, as without such an undertaking the fear of collateral use may in some cases operate as a disincentive to proper discovery. The interests of proper administration of justice require that there should be no disincentive to full and frank discovery.

[13]    If the Canadian plaintiffs have access to discovery in the passive sense, then they are merely evidence gathering as opposed to engaging in discovery of the Canadian defendants or non-parties. There is no compulsory disclosure thereby in the sense that someone is being coerced to provide material to the Canadian plaintiffs which is not already required solely for the U.S. Litigation. Further there will be no intrusion into the privacy of these persons since they will not be subjected to any further questioning or document production than they would have been already been required to do even if there were no Canadian proceedings. As well, but for

the U.S. Protective Order these persons do not have any protected privacy rights in the U.S Litigation. It was raised by the Canadian defendants that if the Canadian plaintiffs were allowed to come in under a relaxed U.S. Protective Order, there will be an increased risk that the confidentiality which the U.S. Protective Order seeks to maintain will run an extra risk of (inadvertent) disclosure. That is not for this Court to consider, but rather for Judge Hogan. I have a similar view of their concern that the Canadian plaintiffs will see material which is not germane to the Canadian proceedings. Further the defence position that the Canadian plaintiffs are trying to end run our rule dealing with letters rogatory is untenable in an access to discovery passive sense situation; they are not able to use the coercive power of the court to compel answers and production in that sense but they are able to inspect what would otherwise be the U.S. public record.

[14]    Notwithstanding that the Canadian plaintiffs may have employed some loose language which could be interpreted as their having requested Judge Hogan to allow them to discover the U.S. defendants (as opposed to having access to that which has already been discovered), it appears clear to me that they in fact are asking him that the U.S. Protective Order be relaxed to allow them to review that which has otherwise been discovered in the ordinary course of the U.S. Litigation (as if the Canadian proceedings did not exist). On that basis, I would dismiss the appeal of the Canadian defendants and their request that the Canadian plaintiffs be enjoined from proceeding with their U.S. Motion.

[15]    If the Canadian plaintiffs were in fact asking that they be permitted to directly or indirectly engage in discovery in the active sense, then I would have come to an opposite conclusion. Simply put, that request would not be mere evidence gathering but the use of the coercive power to require discovery answer and production of documents which would infringe the privacy rights as discussed in *Stavro* and *Goodman v. Rossi*. That would be an end run around our Rules 30, 31 and 36 as discussed above. In the end result I am of the view that the appeal of the defendants should be dismissed on the basis that the Canadian plaintiffs are only seeking access to discovery material which would exist independently of (a) the Canadian proceedings and (b) the Canadian plaintiffs and their counsel.

[16]    Given the novelty of the question I am of the view that each party should bear its own costs.

Farley J.

Released: April 10, 2002

DATE: 20030313<br>
DOCKET: C38626, C38625,<br>
C38620 and C38615

## COURT OF APPEAL FOR ONTARIO

RE:     GLENN FORD, VITAPHARM CANADA LTD., FELMING FEED
MILL LTD. and MARCY DAVID (Respondents (Plaintiffs)) - and -
F. HOFFMANN-LA ROCHE LTD., ET AL (Appellants
(Defendants))

BEFORE:   CATZMAN, CARTHY and MOLDAVER JJ.A.

COUNSEL:   David Kent for the appellants
BASF Corp., and BASF Canada Inc.

        Don Houston and Jennifer Roberts-Logan
for the appellants Lonza A.G.

        Derek J. Bell for the appellants
Takedo Chemical Industries Ltd. and
Takedo Canada Vitamin & Food Inc.

        F. Paul Morrison for the appellants
Degussa-Hulls AG, Degussa Corp.,
and Degussa Canada Inc.

        Brent Olthuis for the appellants
Hoffman-Laroche Ltd.

        John Callaghan and Ben Na for
Sumitomo Chemical Ltd.

        C. Scott Ritchie, Mike Eizenga and
Andrea DeKay for the respondents

HEARD:    FEBRUARY 26, 2003

On appeal from the order of the Divisional Court (Farley, Matlow and Roy JJ.) dated
April 20, 2002 and the order of Cumming J. dated January 26, 2001.

# E N D O R S E M E N T

[1]    The appellants appeal from the order of the Divisional Court dismissing their appeal from the order of Cumming J., who refused to enjoin the respondents from pursuing their motion in the United States seeking access to testimony and documents obtained through the discovery process in that country. The facts surrounding the dispute between the parties are fully set out in the reasons of Cumming J. and need not be repeated.

[2]    These brief reasons are designed to address particular concerns raised by the appellants in their argument. They should be read in conjunction with the reasons of Cumming J., with which we substantially agree.

[3]    In our assessment, the facts and circumstances of this case do not give rise to comity concern, nor are there any overriding policy or fairness issues that would warrant the injunctive or declaratory relief sought by the appellants.

[4]    Properly characterized, the respondents are attempting to gather evidence in a foreign jurisdiction in accordance with the rules of that jurisdiction. The appellants challenge that characterization. They submit that the respondents are not "evidence-gathering" but are instead attempting to obtain, prior to certification, discovery of evidence given under compulsion of the United States discovery rules. The fallacy in this demarcation between the permissible and the impermissible is revealed by considering the circumstance if there was no protective order. Then the productions would be freely available and no complaint could be made if the respondents sought them out. Yet, they

would have been produced under compulsion. So, compulsion cannot be the hallmark of improper conduct.

[5]    With respect to the appellants' submission that Judge Hogan has requested information about the governing rules of practice and procedure in Ontario and that this court should provide him with such information, we are respectfully of the view that this can and should be done through expert evidence adduced by the parties before him. As for the other concerns raised by the appellants, including the timing of the respondents' motion, the nature and breadth of the information they seek, the fact that some of the documents might be subject to public interest privilege in Canada and the need to ensure that the respondents will abide by the terms of any amended protective order, these are best left to Judge Hogan. In our view, he is in the best position to make an order that is both fair and just and that takes into account the competing interests of the parties. In the end, we believe it is for Judge Hogan to determine when, if at all, to what extent and upon what terms and conditions, if any, the protective order should be varied as requested by the respondents.

[6]    To the extent that Judge Hogan is concerned about the type of order that a Canadian court could make to ensure compliance in Canada with his protective order, we see no impediment to his making any variation of his order conditional upon it being matched by an order of similar nature from the Superior Courts of the provinces in which the Canadian litigation is proceeding.

[7]    The appeal is dismissed with costs to the respondents. Counsel are invited to make

written submissions with respect to the quantum of such costs in the usual manner.



Supreme Court of Canada          Cour suprême du Canada



No. 29790

| | |
|---|---|
| November 27, 2003 | Le 27 novembre 2003 |
| Coram: Bastarache, LeBel and Deschamps JJ. | Coram : Les juges Bastarache, LeBel et Deschamps |

| | |
|---|---|
| **BETWEEN:** | **ENTRE :** |
| Hoffmann-La Roche Ltd. | Hoffmann-La Roche Ltd. |
| Applicant | Demanderesse |
| - and - | - et - |
| Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd. and Marcy David | Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd. et Marcy David |
| Respondents | Intimés |
| **AND BETWEEN:** | **ET ENTRE :** |
| Hoffmann-La Roche Limited/Limitée | Hoffmann-La Roche Limited/Limitée |
| Applicant | Demanderesse |
| - and - | - et - |

- 2 -

No. 29790

| | |
|---|---|
| Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc., Roger Awad and Mary Helen Awad | Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc., Roger Awad et Mary Helen Awad |
| Respondents | Intimés |
| AND BETWEEN: | ET ENTRE : |
| Takeda Chemical Industries Ltd. and Takeda Canada Vitamin and Food Inc. | Takeda Chemical Industries Ltd. et Takeda Canada Vitamin and Food Inc. |
| Applicants | Demanderesses |
| - and - | - et - |
| Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc., Roger Awad and Mary Helen Awad | Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc., Roger Awad et Mary Helen Awad |
| Respondents | Intimés |
| AND BETWEEN: | ET ENTRE : |
| BASF Aktiengesellschaft, BASF Corporation and BASF Canada Inc. | BASF Aktiengesellschaft, BASF Corporation et BASF Canada Inc. |
| Applicants | Demanderesses |
| - and - | - et - |
| Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc., Roger Awad and Mary Helen Awad | Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc., Roger Awad et Mary Helen Awad |
| Respondents | Intimés |
| AND BETWEEN: | ET ENTRE : |
| BASF Aktiengesellschaft, BASF Corporation and BASF Canada Inc. | BASF Aktiengesellschaft, BASF Corporation et BASF Canada Inc. |

- 3 -

No. 29790

| | |
|---|---|
| Applicants | Demandeurs |
| - and - | - et - |
| Fleming Feed Mill Ltd., Aliments Breton Inc., Glen Ford and Marcy David | Fleming Feed Mill Ltd., Aliments Breton Inc., Glen Ford et Marcy David |
| Respondents | Intimés |

AND BETWEEN:                                ET ENTRE :

| | |
|---|---|
| Lonza A.G. | Lonza A.G. |
| Applicant | Demanderesse |
| - and - | - et - |
| Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd. and Marcy David | Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd. et Marcy David |
| Respondents | Intimés |

AND BETWEEN:                                ET ENTRE :

| | |
|---|---|
| Lonza A.G. | Lonza A.G. |
| Applicant | Demanderesse |
| - and - | - et - |
| Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc. and Kristi Cappa | Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc. et Kristi Cappa |
| Respondents | Intimées |

AND BETWEEN:                                ET ENTRE :

| | |
|---|---|
| Sumitomo Chemical Co. Ltd. | Sumitomo Chemical Co. Ltd. |

- 4 -

No. 29790

| | |
|---|---|
| Applicant | Demanderesse |
| - and - | - et - |
| Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd. and Marcy David | Glen Ford, Vitapharm Canada Ltd., Fleming Feed Mill Ltd. et Marcy David |
| Respondents | Intimés |
| AND BETWEEN: | ET ENTRE : |
| Degussa-Hüls AG, Degussa Corporation and Degussa Canada Inc. | Degussa-Hüls AG, Degussa Corporation et Degussa Canada Inc. |
| Applicants | Demanderesses |
| - and - | - et - |
| Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc. and Kristi Cappa | Vitapharm Canada Ltd., Fleming Feed Mill Ltd., Aliments Breton Inc. et Kristi Cappa |
| Respondents | Intimées |

| JUDGMENT | JUGEMENT |
|---|---|
| The applications for leave to appeal from the judgment of the Court of Appeal for Ontario, Numbers C38615, C38620, C38625 and C38626, dated March 13, 2003, are dismissed with costs. | Les demandes d'autorisation d'appel de l'arrêt de la Cour d'appel de l'Ontario, numéros C38615, C38620, C38625 et C38626, daté du 13 mars 2003, sont rejetées avec dépens. |

J.S.C.C.
J.C.S.C.

J

Case Name:

# In re Linerboard Antitrust Litig.

IN RE LINERBOARD ANTITRUST LITIGATION; THIS DOCUMENT RELATES TO:
All Actions (Civil Action Numbers 98-5055 and 99-1341)

333 F. Supp. 2d 333; 2004 U.S. Dist. LEXIS 22566; 59 Fed. R.
Serv. 3d (Callaghan) 551

MDL No. 1261

## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

August 24, 2004, Decided

---

**Prior History:**

In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10531 (E.D. Pa., June 4, 2004)

**Subsequent History:**

Costs and fees proceeding at, Request granted In re Linerboard Antitrust Litig., 333 F. Supp. 2d 343, 2004 U.S. Dist. LEXIS 17157 (E.D. Pa., 2004)

**Disposition:**

[**1] Motion of La Cie McCormick Canada Co. to intervene for limited purpose granted.

**Counsel:**

For WINOFF INDUSTRIES, INC., Plaintiff: ALLEN D. BLACK, ROBERTA D. LIEBENBERG, FINE, KAPLAN & BLACK, PHILA, PA; H. LADDIE MONTAGUE, JR., JOHN R. TAYLOR, BERGER & MONTAGUE, P.C., PHILA, PA; HOWARD LANGER, LANGER & GROGAN P.C., PHILADELPHIA, PA; JOSEPH BRUCKNER, LOCKRIDGE, GRINDAL, NAUDEN, HOLSTEIN, PLLP, MINNEAPOLIS, MN; ROBERT J. LAROCCA, KOHN SWIFT & GRAF, P.C., PHILADELPHIA, PA.

For STONE CONTAINER CORPORATION, Defendant: ANDREW G. KLEVORN, KATHLEEN M. MULLIGAN, NATHAN P. EIMER, SIDLEY & AUSTIN, CHICAGO, IL; BARBARA W. MATHER, PEPPER HAMILTON LLP, PHILADELPHIA, PA; ERIC F. GLADBACH, JOHN P. HOOPER, NEW YORK, NY; R. MARK MC CAREINS, WINSTON & STRAWN, CHICAGO, IL; RALPH G. WELLINGTON, SCHNADER HARRISON SEGAL AND LEWIS L.L.P., PHILADELPHIA, PA.

For LANGER & GROGAN, P.C., HOWARD LANGER, Respondents: JOHN G. HARKINS, JR., HARKINS CUNNINGHAM, PHILADELPHIA, PA.

For FARMLAND FOODS, INC., Movant: JAMES J. RODGERS, DILWORTH PAXSON L.L.P., PHILADELPHIA, PA.

For USG CORPORATION, FEDERAL BEEF PROCESSORS, INC., GFI AMERICA, INC., Movants: JOSEPH [**2] M. DONLEY, KITTREDGE, DONLEY, ELSON, FULLEM & EMBICK, LLP, PHILADELPHIA, PA.

For JOHN F. PEOPLES, Movant: GEORGE BOCHETTO, BOCHETTO & LENTZ PC, PHILADELPHIA, PA.

For LOUIS DIMARE, JOSEPH T. PISCITELLO, Movants: ANNE M. DIXON, LACHEEN DIXON WITTELS & GREENBERG LLP, PHILADELPHIA, PA.

For JEFFERSON SMURFIT CORP., SMURFIT-STONE CONTAINER CORP., Defendants: BARBARA W. MATHER, PEPPER HAMILTON LLP, PHILADELPHIA, PA; ERIC F. GLADBACH, JOHN P. HOOPER, NEW YORK, NY; PAUL H. SAINT-ANTOINE, DRINKER, BIDDLE & REATH LLP, PHILADELPHIA, PA; RALPH G. WELLINGTON, SCHNADER HARRISON SEGAL AND LEWIS L.L.P., PHILADELPHIA, PA.

For INTERNATIONAL PAPER CO., Defendant: DANIEL B. HUYETT, STEVENS & LEE, READING, PA; J. ROBERT ROBERTSON, STEVEN J. HARPER, STEVEN C. SEEGER, KIRKLAND AND ELLIS, CHICAGO, IL; RALPH G. WELLINGTON, SCHNADER HARRISON SEGAL AND LEWIS L.L.P., PHILADELPHIA, PA.

For GEORGIA PACIFIC CORP., Defendant: DOUGLAS M. GARROU, THOMAS G. SLATER, HUNTON & WILLIAMS, RICHMOND, VA; EDWARD M. POSNER, ISABEL C. DUFFY, PAUL H. SAINT-ANTOINE, REBECCA S. RIMMER, DRINKER, BIDDLE & REATH LLP, PHILADELPHIA, PA; RALPH G. WELLINGTON, SCHNADER HARRISON SEGAL AND LEWIS LLP, PHILADELPHIA, [**3] PA.

For WEYERHAEUSER PAPER CO., Defendant: RALPH G. WELLINGTON, SCOTT L. FAST, SHERRY A. SWIRSKY, SCHNADER HARRISON SEGAL & LEWIS LLP, PHILADELPHIA, PA; RAM PADMANABHAN, ROBERT F. HUFF, JR., KIRKLAND & ELLIS, CHICAGO, IL.

For TEMPLER-INLAND INC., Defendant: JENNIFER R. CLARKE, PHILA, PA; RALPH G. WELLINGTON, SCHNADER HARRISON SEGAL AND LEWIS L.L.P., PHILADELPHIA, PA.

For GAYLOR CONTAINER CORP., Defendant: DONALD C. LE GOWER, DECHERT, PHILADELPHIA, PA; RALPH G. WELLINGTON, SCOTT L. FAST, SCHNADER HARRISON SEGAL AND LEWIS L.L.P., PHILADELPHIA, PA; RAM PADMANABHAN, ROBERT F. HUFF, JR., KIRKLAND & ELLIS, CHICAGO, IL.

For UNION CAMP CORP., Defendant: DANIEL B. HUYETT, STEVENS & LEE, READING, PA; RALPH G. WELLINGTON, SCHNADER HARRISON SEGAL AND LEWIS L.L.P., PHILADELPHIA, PA.

For TENNECO, INC., TENNECO PACKAGING, Defendants: DANIEL W. SMITH, NORMAN M. HIRSCH, JENNER & BLOCK, CHICAGO, IL; DOUGLAS J. KURTENBACH, KIRKLAND & ELLIS, CHICAGO, IL; RALPH G. WELLINGTON, SCOTT L. FAST, SHERRY A. SWIRSKY, SCHNADER HARRISON SEGAL & LEWIS LLP, PHILADELPHIA, PA.

For PACKAGING CORPORATION OF AMERICA, Defendant: DOUGLAS J. KURTENBACH, ROBERT F HUFF, JR., KIRKLAND & ELLIS, [**4] CHICAGO, IL; RALPH G. WELLINGTON, SCOTT L. FAST, SHERRY A. SWIRSKY, SCHNADER HARRISON SEGAL & LEWIS LLP, PHILADELPHIA, PA.

Judges:

JAN E. DUBOIS, J.

Opinion by:

JAN E. DUBOIS

Opinion:

[*334] ORDER AND MEMORANDUM

ORDER

AND NOW, this 24th day of August, 2004, upon consideration of the Motion of [*335] La Cie McCormick Canada Co. to Intervene for the Limited Purpose of Seeking Modification to Confidentiality Order (Docket No. 409, filed July 9, 2004), Defendants' Response to the Motion of La Cie McCormick Canada Co. to Intervene for the Limited Purpose of Seeking Modification to Confidentiality Order (Docket No. 428, filed July 26, 2004) and Reply Memorandum in Support of Motion of La Cie McCormick Canada Co. to Intervene for the Limited Purpose of Seeking Modification to Confidentiality Order (Docket No. 460, filed August 4, 2004), IT IS ORDERED that the Motion of La Cie McCormick Canada Co. to Intervene for the Limited Purpose of Seeking Modification to Confidentiality Order is GRANTED.

IT IS FURTHER ORDERED as follows:

1. Intervenor McCormick's counsel shall be granted access (at his own expense) by the parties in this action to all discovery in this action including, [**5] but not limited to, defendants' documents, interrogatory responses and responses to requests for admission, and deposition transcripts; and

2. The Court's Order of December 14, 2000 is amended to add a new paragraph, paragraph 13, as follows:

    Plaintiff in La Cie McCormick Canada Co. v. Stone Container Corp., et al., Sup. Ct. Justice File No. 43669 (Ontario, Canada) shall be deemed a 'Party hereunder for the purpose of obtaining access to discovery materials. The Plaintiff in McCormick shall be permitted to use such discovery materials in its action in any manner permitted by the court in which that case is pending, and its counsel shall be deemed 'counsel of record' for all purposes under this Confidentiality Order. For the purpose of this Paragraph, the persons and entities listed in Paragraph 3 in this Order shall be deemed to include all of their respective counterparts in the McCormick action. The plaintiff in McCormick is bound by the terms of the Order not to use such materials for any purpose other than for the prosecution of its own litigation, and is bound to abide by the non-disclosure provisions of this Order except as modified in this Paragraph. [**6] "

3. This Court's Order of December 14, 2000 remains in effect subject to this amendment.

MEMORANDUM

I. INTRODUCTION

Presently before the court is the Motion of La Cie McCormick Canada Co. to Intervene for the Limited Purpose of Seeking Modification to Confidentiality Order and related filings. For the reasons that follow, the Motion to Intervene is

granted and the Court's Confidentiality Order of December 14, 2000 is amended to permit La Cie McCormick to access discovery materials in this case pursuant to the Confidentiality Order.

II. FACTUAL AND PROCEDURAL HISTORY

The Court sets forth only an abbreviated factual and procedural history as pertinent to Defendants' Motion for Expedited Discovery and Defendants' Motion Under Rule 60 to Correct Mistake. The factual background of the case is described at length in this Court's Memorandum dated October 4, 2000 denying defendants' Motion to Dismiss, its Memorandum dated September 4, 2001 certifying classes of direct purchasers of corrugated boxes and corrugated sheets, the Opinion of the Court of Appeals for the Third Circuit affirming the September 4, 2001 Memorandum and Order, this Court's [**7] Memorandum [*336] dated August 26, 2003 approving the final settlement between plaintiffs classes and two of the defendants, Temple-Inland, Inc. and Gaylord Container Corporation and this Court's Memorandum dated June 2, 2004 awarding class counsel attorneys fees. See In re Linerboard Antitrust Litig., 2000 U.S. Dist. LEXIS 14433, MDL No. 1261, 2000 WL 1475559, at *1-3 (E.D. Pa. Oct. 4, 2000) ("Linerboard I"); In re Linerboard Antitrust Litig., 203 F.R.D. 197, 201-04 (E.D. Pa. 2001) ("Linerboard II"); In re Linerboard Antitrust Litig., 305 F.3d 145, 147-49 (3d Cir. 2002) ("Linerboard III"); In re Linerboard Antitrust Litig., 296 F. Supp. 2d 568, 573-575 (E.D. Pa. Aug. 26, 2003) ("Linerboard IV"); In re Linerboard Antitrust Litig.,    F. Supp.2d , 2004 U.S. Dist. LEXIS 10531, 2004 WL 1221350, *1-3 (E.D.Pa. Jun. 2, 2004) ("Linerboard V").

This is an antitrust action involving allegations that a number of U.S. manufacturers of linerboard n1 engaged in a combination and conspiracy in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

n1 Linerboard includes any grade of paperboard suitable for use in the production of corrugated sheets, which are in turn used in the manufacture of corrugated boxes and for a variety of industrial and commercial applications. Corrugated sheets are made by gluing a fluted sheet which is not made of linerboard, known as the corrugating medium, between facing sheets of linerboard; corrugated sheets are also referred to as containerboard. The defendants named in the instant lawsuits are major integrated manufacturers and sellers of linerboard, corrugated sheets and corrugated boxes.

[**8]

A. The Class Case

Class plaintiffs named the following defendants in their Complaints and Amended Complaints--Stone Container Corporation, Jefferson Smurfit Corporation, Smurfit-Stone Container Corp., International Paper Company, Georgia-Pacific Corporation, Temple-Inland, Inc., Gaylord Container Corporation, Tenneco, Inc., Tenneco Packaging, Inc., Union Camp Corporation, Packing Corporation of American and Weyerhaeuser Paper Company--and alleged that they conspired to raise the price of corrugated containers and corrugated sheets throughout the United States by restricting production and/or curtailing inventories in violation of federal antitrust laws.

By Memorandum and Order dated September 4, 2001, this Court certified the following two plaintiff classes: a "sheet class" consisting of buyers of corrugated sheets and a "box class" consisting of purchasers of corrugated containers. Linerboard II, 203 F.R.D. at 224. The Court's certification rulings were affirmed by the Third Circuit and the Supreme Court denied certiorari. See Gaylord Container Corp. v. Garrett Paper, Inc., 538 U.S. 977, 155 L. Ed. 2d 666, 123 S. Ct. 1786 (2003) (No. 02-1070). [**9] As of April 2004, as a result of four settlements between the classes and various groups of defendants, all claims in the class case were resolved for a total of $202,572,489. n2

n2 By Order dated August 26, 2003, this Court approved a partial settlement in the amount of $8 million between plaintiff classes and Temple-Inland, Inc. and Gaylord Container Corp. The $8 million settlement was reduced to $7.2 million in accordance with the terms of the settlement agreement based on the number of parties that subsequently opted-

out of the classes. This first partial settlement was described by petitioners as an "ice-breaker-a settlement that would lead to further settlements.

Within a month of Court approval of the ice-breaker settlement, on September 22, 2003, the plaintiff classes and defendants International Paper Company and Union Camp Corporation, Georgia Pacific Corporation, and Weyerhauser Company announced they had reached a settlement agreement in the total amount of $68 million (the "International Paper Settlement"). The Court granted final approval of that settlement on December 8, 2003.

Prior to that date, in October and November 2003, the parties announced the additional partial settlements with defendants Packaging Corporation of America, Tenneco, Inc., and Tenneco Packaging, Inc. (The "PCA Settlement") in the amount of $43 million and with defendants Stone Container Corporation, Jefferson Smurfit Corporation, and Smurfit Stone Container Corporation (the "Stone Settlement") in the amount of $92.5 million. As a result of a "most favored nation's clause" in the PCA Settlement, the terms of the Stone Settlement triggered a reduction in the amount owed by PCA from $43 million to $34 million. The Court granted final approval of both the PCA Settlement and the Stone Settlement in a Memorandum and Order dated March 21, 2004. With the Court's approval of these last two partial settlements, all claims in the class action were resolved for a total of $202,572,489.

[**10]

[*337] B. The Direct Actions

One-hundred and forty entities opted out of the classes certified by the Court by filing Requests for Exclusion on or before June 9, 2003. n3 These 140 entities opted-out not only themselves but also approximately 3400 subsidiary and affiliate companies. A detailed description of the notice to classes and the procedural history involving the opt-outs from the classes is provided in this Court's Memorandum of September 5, 2003. Of the 140 Requests for Exclusion, 13 groups of opt-outs subsequently filed tag-along actions against defendants. As of the date of this memorandum, 11 of those groups have outstanding claims against one or more of the defendants. n4

n3 A copy of the Record of Potential Class Members Who Excluded Themselves from the Classes is appended to this Court's Memorandum and Order dated December 8, 2003 approving the Settlement Agreement between Temple-Inland, Inc. and Gaylord Container Corporation; this Court's Memorandum and Order dated December 8, 2003, granting Class Plaintiffs' Motion for Final Approval of Settlement Agreement Between the Class and International Paper Company and Union Camp Corporation, Georgia-Pacific Corporation, and Weyerhauser Company; and this Court's Memorandum and Order dated April 21, 2004 granting Class Plaintiffs' Motion for Final Approval of the Settlements with Defendants Packaging Corporation of America, Inc., Tenneco, Inc. And Tenneco Packaging Inc. and with Defendants Stone Container Corporation, Jefferson Smurfit Corporation, and Smurfit Stone Container Corporation.

[**11]

n4 The following are the direct actions that are proceeding:              ·

1. Perdue Farms Incorporated v. Stone Container Corporation, et al., No. 03-1702 (D. Md. filed June 9, 2003);

2. Sara Lee Corporation, et al. v. Smurfit Stone Container Corporation, et al., No. 03-3939 (N.D. Ill. filed June 10, 2003);

3. Procter & Gamble Company, et al. v. Stone Container Corporation, et al., No. 03-3944 (N.D. Ill filed June 10, 2003);

4. United States Gypsum Company, et al. v. Stone Container Corporation, et al., No. 03-4251 (N.D. Ill. filed June 10, 2003);

5. Smithfield Foods, Inc., et al. v. Smurfit Stone Container Corporation, et al., No. 03-3968 (N.D. Ill. filed June 11, 2003);

6. Hormel Foods Corporation, et al. v. Stone Container Corporation, et al., No. 03-3421 (D. Minn. filed June 13, 2003);

7. Milne Fruit Products, Inc., et al. v. Stone Container Corporation, et al., No. 03-4049 (N.D. Ill. filed June 13, 2003);

8. Kellogg Company, et al. v. Smurfit Stone Container Corporation, et al., No. 03-4213 (N.D. Ill. filed June 19, 2003)

9. Farmland National Beef Packing Co. v. Stone Container Corporation, et al., No. 03-1312 (D. of Kansas filed August 29, 2003);

10. Mars Inc., et al. v. Stone Container Corporation, et al., No. 03-6977 (N.D. of Ill. filed October 1, 2003); and

11. Conopco, Inc., et al. v. Smurfit Stone Container Corporation, as successor to Stone Container Corporation, et al., No. 03-3549 (E.D. Pa. filed June 9, 2003).

[**12]

C. Motion of La Cie McCormick Canada Co. to Intervene

On July 7, 2004, La Cie McCormick Canada Co. ("McCormick" or "movant"), [*338] moved to intervene in MDL 1261 for the limited purpose of seeking modification of the Confidentiality Order entered by the Court on December 14, 2000. Movant is the plaintiff in La Cie McCormick Canada Co. v. Stone Container Corp., et al., File No. 43669, a class action lawsuit pending in the Superior Court of Justice, Ontario, Canada. McCormick's Mem. of Points and Auth. 1, Ex. A Declaration of Andrew DeKay. Movant asserts that its suit is similar to the instant matter with the exception that its suit is brought on behalf of linerboard purchasers, both direct and indirect, who are located in Canada. Id. Movant seeks access to discovery plaintiffs have collected in MDL 1261 that is the subject to the Court's December 14, 2000 Confidentiality Order.

That Order provides that parties may designate as "Confidential" any material it produces in this litigation which contains "trade secrets or other confidential research, development or commercial information, including cost information and planning information ('Confidential Material') for which [**13] a good faith claim of need of protection from disclosure can be made." Order of Dec. 14, 2000 P2. Confidential Material may be provided only to counsel of record for the parties and, absent consent from the producing party or unless otherwise directed by the Court, may be disclosed by such counsel only to the following persons:

     (i) attorneys appearing in and/or working on this Litigation, including regular and temporary employees, contracts and agents;

     (ii) outside experts or consultants retained to assist in the preparation of this case by any attorney described in subparagraph (I) above, as well as employees of such expert or consultant;

     (iii) outside photocopying, graphic production services or litigation support services employed by the parties or their counsel to assist in this Litigation, and computer service personnel performing duties in relation to a computerized litigation system;

     (iv) potential witnesses to the extent that they received the Confidential Material, or otherwise had access to the confidential information contained in them, in the ordinary course of business;

     (v) the Court, witnesses (including deponents), court reporters, stenographers, court personnel,