UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re: NEURONTIN MARKETING, SALES :
PRACTICES AND PRODUCTS LIABILITY :
LITIGATION :
:
: MDL Docket No. 1629
THIS DOCUMENT RELATES TO: : Master File No. 04-10981
: Judge Patti B. Saris
ASSURANT HEALTH, INC., et al. v. PFIZER : Mag. Judge Leo T. Sorokin
INC., et al., :
:
Docket No. 05-10535-PBS :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY OF PFIZER INC. AND WARNER-LAMBERT COMPANY
IN SUPPORT OF THEIR OBJECTIONS TO REPORT AND RECOMMENDATION OF
MAGISTRATE JUDGE LEO T. SOROKIN DATED AUGUST 4, 2006
RECOMMENDING THAT THE *ASSURANT* CASE
<u>BE REMANDED TO STATE COURT</u>**

Defendants Pfizer Inc. and Warner-Lambert Company submit this reply in support of their objections to Magistrate Judge Leo T. Sorokin's Memorandum and Order dated August 4, 2006 ("the Order") recommending that the <u>Assurant</u> case be remanded to New Jersey state court and in opposition to plaintiffs' response to defendants' objections ("Pls.' Resp."). On August 18, 2006, defendants timely filed their objections to the Order and a supporting memorandum of law ("Defs' Mem."). Plaintiffs did not object to any portion of the Order.

Plaintiffs' response completely ignores defendants' primary objections to the Order that, by virtue of plaintiffs' definition of the relevant product market (gabapentin and its generic substitutes) and claim of alleged preclusion of generic competition set out in their complaint, there is federal jurisdiction over plaintiffs' antitrust claims. As defendants' explained, those claims require a court to address the scope of defendants' patents to determine, among other

1

things, whether there has been any unlawful preclusion in the relevant market or whether defendants' patents provide them with the legal right to exclusivity in that market for the life of their patents.  See Defs.' Mem. at 8-11.

Nor do plaintiffs even try to distinguish Judge Lifland's holding in the Neurontin Antitrust MDL that any purported antitrust theory based on off-label promotion of Neurontin would be "qualitatively distinct" from the antitrust claims involving alleged preclusion of generic competition and thus could not "create an alternative theory of recovery" for such claims.  In re Neurontin Antitrust MDL:  Sall/Zafarana Decision Denying Remand, MDL Docket No. 1479, at 18 (Jan. 7, 2005) ("Sall/Zafarana") (attached as Ex. A to Defs.' Mem.).  As defendants previously explained, plaintiffs' "theory" that defendants' off-label marketing violated the antitrust laws is not an *alternative* theory of relief for the antitrust claims regarding preclusion of generic competition but instead is a completely *different* theory for a *different* cause of action based on *different* factual allegations for a *different* subset of plaintiffs for *different* damages based on the preclusion of competition in a *different* market.  See Defs.' Mem. at 12-14.  For these reasons, plaintiffs' remand motion should be denied because they have not supplied a viable, alternative, state-law theory for the relief sought for the antitrust claims in plaintiffs' complaint.  See Christianson v. Colt Inds. Operating Corp., 486 U.S. 797, 808-10 (1988).

Instead of responding to these arguments, plaintiffs suggest that this Court should turn its back on Judge Lifland's ruling in Sall/Zafarana simply because defendants suggested this case be assigned to this MDL and the Judicial Panel on Multidistrict Litigation agreed.  See Pls.' Resp. at 4.  As this Court will recall from the May 13, 2005 scheduling conference, the Court entertained various options for dealing with the differing consumer protection and antitrust claims in this case, including severing them and allowing plaintiffs to file separate complaints for each set of

claims or staying the antitrust claims during the pendency of the consumer protection proceedings. See Transcript of May 13, 2005 Hr'g at 8-11 (attached as Ex. A). At no point, however, did the Court or defendants endorse the idea that these plaintiffs' antitrust claims should be treated any differently than those in the proceeding before Judge Lifland. Id. Defendants maintained this position at the August 2005 hearing before the Magistrate Judge, even going further to support the severance of plaintiffs' claims with each being dealt with in the appropriate MDL. See Transcript of August 18, 2005 Hr'g ("Tr.") at 34-39 (attached as Ex. B to Defs.' Mem.). That plaintiffs' complaint contained sufficiently similar consumer-protection allegations to warrant transfer to this MDL proceeding does not distinguish Judge Lifland's decision in Sall/Zafarana as to their antitrust claims, nor does it demonstrate that federal jurisdiction is improper. Indeed, defendants respectfully submit that a remand decision by the federal judge specifically tasked with overseeing all patent and antitrust claims involving Neurontin is entitled to substantial weight.

Unable to rebut defendants' statements of law, distinguish Judge Lifland's decision in Sall/Zafarana, or support the Magistrate Judge's recommendation, plaintiffs instead direct this Court to a host of arguments related to other purported alternative antitrust theories. But these arguments are procedurally barred either because plaintiffs failed to raise them before the Magistrate Judge, see Borden v. Sec'y of Health and Human Servs., 836 F.2d 4, 6 (1st Cir. 1988), or because plaintiffs failed to file any objection to the Magistrate Judge's rejection of them in the Order. See Davet v. Maccarone, 973 F.2d 22, 31 (1st Cir. 1992); Fed. R. Civ. P. 72(b) advisory committee's note (stating that "the rule requires the district judge . . . to make a de novo determination *of those portions of the report* . . . to which timely objection is made" (emphasis added)). This Court should not consider or revisit these arguments now.

3

For instance, plaintiffs argue that federal jurisdiction is inappropriate in light of two summary judgment decisions by Judge Lifland in the Gabapentin Patent MDL. Pls.' Resp. at 8. Notwithstanding the irony that plaintiffs here ask this Court to *follow* Judge Lifland (in cases that are currently on appeal to the Federal Circuit),[1] plaintiffs waived this claim because they never raised it before the Magistrate Judge. See Borden, 836 F.2d at 6.[2]

Under the Supreme Court's decision in Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc. litigation cannot be found sham, and thus cannot constitute an antitrust violation, unless it is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." 508 U.S. 49, 61 (1993). Thus, in Stuart v. Pfizer the court held that a determination that patent litigation is sham "requires first and foremost resolution of an essential question of federal patent law" – whether or not the litigation was "objectively baseless" under the Professional Real Estate standard. No. 02-2511-Ma/Bre, at 15 (W.D. Tenn. 2002). For this reason, the Stuart court held, a earlier summary judgment ruling against Warner-Lambert in one of the patent cases was "not inconsistent with the court's view that the resolution of federal patent law issues is necessary" to the resolution of antitrust claims based on allegations of sham patent litigation. Id. at 15-16 & n.5. As the Stuart court noted, regardless of the summary judgment ruling, if the patent infringement action brought by the patentee, i.e., Pfizer, was "legitimate" under the Professional Real Estate standard, the antitrust "plaintiff's claims cannot stand." Id. Likewise, in Professional Real Estate, the Supreme Court

---

[1] In light of plaintiffs' appeal of these decisions to the Federal Circuit, Judge Lifland has stayed all antitrust counterclaims pending the outcome of that appeal.

[2] Nor can plaintiffs contend that they did not have the opportunity to raise these decisions or any other arguments before the Magistrate Judge because on May 31, 2006 – well in advance of the Magistrate Judge's ruling and long after Judge Lifland's first decision – plaintiffs submitted to the Magistrate Judge a Notice of Supplemental Authority and Supplemental Pleading With Respect To Their Remand Motion. See In re Neurontin MDL, Docket No. 327.

noted that simply because a party loses the underlying action does not mean that the action was baseless, or that the antitrust court does not need to address the merits of the underlying action: "When the antitrust defendant has lost the underlying litigation, a court must 'resist the understandable temptation to engage in post hoc reasoning by concluding' that an ultimately unsuccessful 'action must have been unreasonable or without foundation,'" because "even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." Prof'l Real Estate, 508 U.S. at 61 n.5. Defendants again respectfully submit that these remand decisions specifically involving Neurontin directly favor federal jurisdiction here.

In the end, plaintiffs cannot even point to any statement that they made during the hearing in which they actually advanced the limited theory regarding payments to doctors that formed the basis of the Magistrate Judge's recommendation. See Defs.' Mem. at 14-18 (stating plaintiffs abandoned this alternative theory at the hearing before the Magistrate Judge); Pls.' Resp. at 6-8; Order at 12. Instead, plaintiffs direct the Court to general statements by plaintiffs' counsel at the hearing about defendants' alleged campaign to market Neurontin for off-label uses and its purported effect on generic competition. See Pls.' Resp. at 7 (pointing to block quotes by plaintiffs' counsel regarding "false information, saying that Neurontin was safe and effective for various uses" and "this off-label campaign"). But this is a separate theory and the same "marketing plus theory" that plaintiffs fell back on at the hearing. See Defs.' Mem. at 15-16. Indeed, the Magistrate Judge himself recognized this at the hearing and prompted defendants that plaintiffs' counsel was "saying . . . it wasn't merely the agreement [to market Neurontin off-label]. She's saying it's the agreement plus an intentional decision not to seek approval from the FDA that . . . was made for the purpose of excluding the generics from the market for these off-

label uses." Tr. at 29-30; see also id. 31-32, 50. And in his Order, Magistrate Judge Sorokin correctly concluded plaintiffs "ha[d] not advanced this theory anywhere in the complaint." Order at 17; see id. ("Nowhere in their complaint do plaintiffs allege specifically anything about defendants' decision not to seek FDA approval off-label uses of Neurontin."). Because plaintiffs failed to object to this or any other portion of the Order, they cannot now ask this Court to reconsider the Magistrate Judge's rejection of it. Davet, 973 F.2d at 31.

Plaintiffs' reference to their "monopoly leveraging theory" in the final section of their response is similarly doomed. Pls.' Resp. at 11-14. Magistrate Judge Sorokin correctly found that plaintiffs' own explication of this theory depended on their allegations about defendants' patents and therefore necessarily raised a substantial federal question. Order at 19; see also Mem. of Law of Defs. in Opposition to Pls.' Mot. to Remand at 24-25 (attached as Ex. B) (stating that plaintiffs' monopoly leveraging theory went beyond the allegations in their complaint). Plaintiffs failed to object to this portion of the Magistrate's Order and cannot do so now. Davet, 973 F.2d at 31.

Finally, to the extent that plaintiffs contend that practical considerations are irrelevant or contrary to Supreme Court precedent on federal question jurisdiction, defendants respectfully direct plaintiffs' attention to Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 125 S. Ct. 2363 (2005), and this Court's most recent decision interpreting Grable and "this knotty area of the law." In re AWP Litigation, MDL No. 1456 at 10 (Memorandum & Order dated Sept. 6, 2006). As defendants previously argued, here the federal interest in uniform application of patent law and the overlapping Neurontin MDLs strongly favor exercising federal jurisdiction over plaintiffs' complaint. See Defs.' Mem. at 23-24.

## CONCLUSION

For all of the foregoing reasons, and for the reasons stated in defendants' opposition to plaintiffs' motion, defendants respectfully request that plaintiffs' remand motion be denied.

Dated: September 20, 2006

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
      James P. Rouhandeh
      Carter H. Burwell
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:   /s/ David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on September 20, 2006.

/s/David B. Chaffin