EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ASSURANT HEALTH, INC., a Wisconsin corporation, et al., | Civil Action No. 2:05-cv-0095 |
| Plaintiffs, | Hon. Joel A. Pisano, U.S.D.J.<br>Hon. Madeline C. Arleo, U.S.M.J. |
| v. | Return Date: |
| PFIZER INC., a Delaware corporation, and its wholly-owned subsidiary WARNER-LAMBERT COMPANY, et al., | |
| Defendants. | |

## MEMORANDUM OF LAW OF DEFENDANTS PFIZER INC. AND WARNER-LAMBERT COMPANY IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND AND IN SUPPORT OF CROSS MOTION TO DEFER RULING ON REMAND PENDING MDL TRANSFER

Date:  February 11, 2005

John E. Caruso (JC-9283)
Richard G. Placey (RP-0285)
John W. Frazier, IV (admitted in PA only)
Montgomery, McCracken, Walker & Rhoads, LLP
(A LIMITED LIABILITY PARTNERSHIP FORMED IN PENNSYLVANIA)
457 Haddonfield Road, 6th Floor
Cherry Hill, NJ  08002
Telephone:  (856) 488-7700
Fax: (856) 488-7720

Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company

Of Counsel:

James P. Rouhandeh
Erick M. Zissu
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

1133729v3

2/11/05

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................... 3

      A.    Procedural History ......................................................................... 3

      B.    The Complaint ................................................................................ 4

      C.    The Multi-District Litigation ......................................................... 8

III.  ARGUMENT IN SUPPORT OF CROSS-MOTION TO DEFER RULING ON
      REMAND PENDING MDL TRANSFER ................................................. 9

      A.    THIS COURT SHOULD DEFER RULING ON THE MOTION TO
            REMAND PENDING MDL TRANSFER, PARTICULARLY SINCE
            ONE OF THE MDL COURTS HAS ALREADY DENIED A MOTION
            TO REMAND VIRTUALLY IDENTICAL CLAIMS .......................... 9

IV.   ARGUMENT IN SUPPORT OF DENIAL OF REMAND ........................... 11

      A.    DEFENDANTS' REMOVAL COMPLIED WITH ALL STATUTORY
            REMOVAL REQUIREMENTS ...................................................... 11

      B.    THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER
            THIS ACTION PURSUANT TO 28 U.S.C. §§ 1331 AND 1338 ...................... 15

            1.    Legal Standard ..................................................................... 16

            2.    Federal Question Jurisdiction Is Proper Because Plaintiffs' State
                  Law Anti-Competition Claims Necessarily Implicate Substantial
                  Issues Of Federal Patent Law .................................................. 18

                  a.    These Claims Require the Court to Determine Issues
                        Relating to the Validity, Enforceability, and Infringement
                        of Defendants' Patents for Neurontin .......................... 18

                  b.    Plaintiffs Have Failed To Allege Any Alternative Theory
                        That Would Defeat Federal Question Jurisdiction...................... 23

            3.    Plaintiffs' Consumer Claims Cannot Be Resolved Without
                  Deciding Substantial Issues Under The Food, Drug And Cosmetic
                  Act........................................................................................... 27

                  a.    The Consumer Claims in the Complaint Also Raise
                        Substantial Questions of Federal Law Under the Food,
                        Drug and Cosmetic Act........................................................ 27

                  b.    Federal Question Jurisdiction in this Case Is Thus Also
                        Proper Based on the Existence of a Substantial Question of
                        Federal Law Under the Food, Drug and Cosmetic Act .............. 29

**TABLE OF CONTENTS**
(continued)

Page

       c.    Contrary to Plaintiffs' Argument, the Underlying Principles of Franchise Tax Board Continue to Apply to the Concept of Substantial Question of Federal Law.....................................32

V.    CONCLUSION.............................................................................................36

1133729v3

# TABLE OF AUTHORITIES

## Cases

Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc., 986 F.2d 476 (Fed. Cir. 1993)..................21

Aetna U.S. Healthcare v. Hoechst Atkiengesellschaft, 54 F. Supp. 2d 1042 (D. Kan. 1999)......23

Altman v. Bayer Corp., 125 F. Supp. 2d 666, 674-75 (S.D.N.Y 2000)........................22

American Seafood, Inc., v. Magnolia Processing, Inc., Civ. A. Nos. 92-1030, 92-1086, 1992 WL 102762 (E.D. Pa. May 7, 1992) ..................11

Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003) ..................16, 30

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988)......................passim

City of Chicago v. International College of Surgeons, 522 U.S. 156 (1997)............17, 18, 29, 30

D'Alessio v. New York Stock Exchange, Inc., 258 F.3d 93 (2d Cir. 2001)..........30, 31

Drawhorn v. Quest Comm. Int'l, Inc., 121 F. Supp. 2d 554 (E.D. Tex. 2000) ..........35

Falgoust v. Microsoft Corp., No. Civ. A. 00-0779, 2000 WL 462919 (E.D.La. April 19, 2000) 10

Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)..........17, 32

Frayler v. New York Stock Exchange, Inc., 118 F. Supp. 2d 448 (S.D.N.Y. 2000) ..........31, 32

Gully v. First Nat'l Bank, 299 U.S. 109 (1936)..................17

Howery v. Allstate Ins. Co., 243 F.3d 912 (5th Cir. 2001)..................35

Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318 (Fed. Cir. 1998).......21

In re Cardizem CD Antitrust Litig., 90 F. Supp. 2d 819 (E.D. Mich. 1999) ..................22

In re Ciprofloxacin Hydrochloride Antitrust Litig., 166 F. Supp. 2d 740 (E.D.N.Y. 2001) ........22

In re Ivy, 901 F.2d 7 (2d Cir. 1990)..................10

In re Neurontin Antitrust Litigation, MDL Docket No. 1479, in Sall v. Pfizer Inc. and Warner-Lambert Company, Civil Action No. 02-3988 and Zafarana v. Pfizer Inc. and Warner-Lambert Company, Civil Action No. 02-2741 (Novack Aff. Ex. K)..................passim

In re Tamoxifen Citrate Antitrust Litig., 222 F. Supp. 2d 326 (E.D.N.Y. 2002) ..........21, 22, 26

Guess?, Inc. v. Chang, 912 F. Supp. 372 (N.D. Ill. 1995)..................15

-iii-

1133729v3

**Table Of Authorities**

(Continued)

Jackson v. Johnson & Johnson, Inc., No. 01-2113, 2001 WL 34048067
    (W.D. Tenn. April 3, 2001) ............................................................................................... 10

Kovilic Const. Co., Inc. v. Missbrenner, 106 F.3d 768 (7th Cir. 1997) ..................................... 14

Marcus v. AT&T Corp., 138 F.3d 46 (2d Cir. 1998) ................................................................. 34

McGrew v. Schering-Plough Corp., No. 01-2311-GTV, 2001 WL 950790
    (D. Kan. Aug. 6, 2001) .................................................................................................... 22

Merrell Dow Pharms. v. Thompson, 478 U.S. 804 (1986) ............................................. 17, 18, 33

Meyers v. Bayer AG, 143 F. Supp. 2d 1044 (E.D. Wis. 2001) ................................................... 11

Michaels v. State of New Jersey, 955 F. Supp. 315 (D.N.J. 1996) ................................... 12, 13, 14

Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356 (Fed. Cir. 1999) ...................... 21

Milan Exp. Co. v. Western Sur. Co., 886 F.2d 783 (6th Cir. 1989) ..................................... 32, 35

Operating Engineers Local 139 Health Benefit Fund v. Rawson Plumbing, Inc., 130 F. Supp.2d
    1022 (E.D. Wis. 2001) ..................................................................................................... 15

Ormet Corp. v. Ohio Power Co., 98 F.3d 799 (4th Cir. 1996) ............................................. 31, 34

Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49 (1993) . 19

Regents of Univ. of Minnesota v. Glaxo Wellcome, Inc., 58 F. Supp. 2d 1036
    (D. Minn. 1999) .............................................................................................................. 35

Smith v. Indus. Valley Title Ins. Co., 957 F.2d 90 (3d Cir. 1992) ....................................... 33, 34

Smith v. Kansas City Title & Trust Co., 255 U.S. 180 (1921) .................................................... 17

Stuart v. Pfizer, Inc. No. 02-2571 (W.D. Tenn. 2002) (Novack Aff. Ex. L) ............................... 21

Torres v. Southern Peru Copper Corp., 113 F.3d 540 (5th Cir. 1997) ........................................ 35

Trench v. Jackson Nat'l Life Ins. Co., No. 99-C-5182, 1999 WL 1044923,
    (N.D. Ill. Nov. 12, 1999) .................................................................................................. 10

U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383 (3d Cir. 2002) ................................... 16, 17, 35

Village Supermarket, Inc. v. Mayfair Supermarkets, Inc., 634 A.2d 1381 (N.J. Super. 1993) .... 19

West 14th St. Comm. Corp. v. 5 West 14th Owners Corp., 815 F.2d 188 (2d Cir. 1987) ..... 33, 34

**Table Of Authorities**

(Continued)

**Constitutional Provisions**

U.S.C.A. Const., Article I, § 8 .................................................................................. 26

**Statutes**

21 U.S.C. § 321(m)(1)-(2) ...................................................................................... 27

21 U.S.C. § 355 ................................................................................................ passim

21 U.S.C. § 355(j)(2)(B) ............................................................................................ 3

21 U.S.C. § 393(b)(2)(B) ......................................................................................... 27

28 U.S.C. § 1331 .............................................................................................. 1, 15

28 U.S.C. § 1338(a) ................................................................................................ 15

28 U.S.C. § 1367 ..................................................................................................... 18

28 U.S.C. § 1446(a) ......................................................................................... 11, 13

**Rules**

JPML Rule 7.5(e) ...................................................................................................... 9

**Regulations**

21 C.F.R. § 1.3(a) ................................................................................................... 27

21 C.F.R. § 214.550 ............................................................................................... 27

21 C.F.R. § 314.81(b)(3) ....................................................................................... 27

21 C.F.R. §§ 202 .................................................................................................... 27

21 C.F.R. 314.70(c) ............................................................................................... 27

Defendants Pfizer Inc. and the entity named in the Complaint as its "wholly-owned subsidiary, Warner-Lambert Company" ("Defendants"), by and through their undersigned counsel, hereby submit this memorandum of law in opposition to Plaintiffs' motion to remand this action to the Law Division of the Superior Court of New Jersey, Bergen County.

## I.    **INTRODUCTION**

In this case, Plaintiffs, a group of insurance and mutual insurance corporations, health services plans, and hospital and medical services corporations, have sued Defendants over the patent-enforcement and marketing relating to Defendants' Gabapentin product, which Defendants sell under the name Neurontin® ("Neurontin"). The Complaint alleges that Defendants acted unlawfully in (1) making misrepresentations to the Food and Drug Administration ("FDA") in listing certain Neurontin patents in what is known as the FDA's "Orange Book" and (2) filing bad faith, or sham, patent infringement lawsuits against generic competitors. Complaint ("Compl.") ¶¶ 46-49. In addition, the Complaint alleges that Defendants engaged in "a false, deceptive, and misleading marketing campaign" to promote Neurontin for non FDA-approved uses. *Id.* ¶ 35.

As demonstrated below, Plaintiffs' motion to remand these claims to state court should be denied. Removal was proper because this Court has subject matter jurisdiction on federal question grounds pursuant to 28 U.S.C. §§ 1331 and 1338. Although the Complaint purports to assert causes of action under state law, the Complaint gives rise to federal question jurisdiction because Plaintiffs' "'right to relief necessarily depends on resolution of a substantial question of federal law.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988) (citations omitted). This is so based on two separate sets of federal law, each of which is independently sufficient to support federal question jurisdiction.

First, deciding whether Defendants' assertion of their patent rights was permissible or barred as anti-competitive requires a determination of whether, as a matter of federal patent law, the patents were valid and infringed and, if not, whether there was nevertheless a reasonable basis for the patent suits. In fact, the Complaint here asserts no theory of liability under the anti-competition laws upon which the Court could grant Plaintiffs the relief they seek without first deciding substantial questions of federal patent law. This Court, therefore, has federal question jurisdiction over this case, which is precisely the result reached by Judge Lifland in two virtually identical cases decided last month. January 7, 2005 Memorandum and Order in *In re Neurontin Antitrust Litigation*, MDL Docket No. 1479, in *Sall v. Pfizer Inc. and Warner-Lambert Company*, Civil Action No. 02-3988 and *Zafarana v. Pfizer Inc. and Warner-Lambert Company*, Civil Action No. 02-2741 ("*Antitrust MDL-Sall/Zafarana*") at 17-18 (denying motions to remand plaintiffs' state law anti-competition claims because they could not be resolved "without deciding substantial issues of federal law, i.e., the validity, enforceability, and infringement of defendants' patents"); a copy of this opinion is Exhibit K to the Affidavit of David Novack in Support of Plaintiffs Motion to Remand ("Novack Aff.").

Second, deciding whether Defendants' marketing was permissible requires the Court to address substantial issues of federal law under the Federal Food, Drug and Cosmetic Act ("FDCA").

Moreover, this case belongs in one of the two federal Multidistrict Litigations relating to Neurontin, and should follow the five other cases previously before this Court that have since been transferred by the Judicial Panel for Multidistrict Litigation. Accordingly, the Court should defer ruling on Plaintiffs' motion to remand and allow for the Judicial Panel on Multidistrict

- 2 -

Litigation to transfer the case to one of the two multidistrict litigations related to Neurontin or, should this Court wish to reach the merits, Plaintiffs' motion to remand should be denied.

## II.    FACTUAL BACKGROUND

Gabapentin is the generic name for a drug product that is widely used to treat epilepsy, pain and neurodegenerative diseases. Defendants sell Gabapentin under the brand name Neurontin, and hold three Neurontin patents that are currently in force. Pursuant to §505 of the FDCA, 21 U.S.C. § 355 *et seq.*, these three patents were listed by Defendants in association with Gabapentin in the FDA's official listing of *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book").[1]

### A.    Procedural History

Plaintiffs consist of over 20 insurance companies, health plans and their subsidiaries from over ten states and the District of Columbia.[2]  Only one of these Plaintiffs (Well Choice of New Jersey, Compl. ¶ 17) is from New Jersey. They purport to bring their claims pursuant to the antitrust statutes of over 12 states (although many are applicable to only one defendant) (Compl., Counts I to XXIV), and the "Deceptive Trade Practices" statutes of approximately 15 states (*Id.*, Counts XXIV to XLII).  According to Plaintiffs "the relevant geographic market is the United

---

[1] Pursuant to the Hatch-Waxman Act, an applicant seeking FDA approval to market a generic form of an FDA-approved drug must certify, as to each patent listed in the Orange Book with respect to that drug, that the patent is or will be expired, or that the patent is invalid or will not be infringed by the generic product. 21 U.S.C. § 355(j)(2)(A)(vii). The generic applicant is required to provide notice to the owner of any listed patent that the generic applicant asserts is invalid or will not be infringed. 21 U.S.C. § 355(j)(2)(B). If within 45 days of providing such notice the generic applicant is sued for infringing a listed patent, FDA approval of the generic application is stayed for 30 months unless the court decides before that time that the asserted patent is invalid or not infringed. 21 U.S.C. § 355(j)(5)(B)(iii). A number of generic drug manufacturers have filed applications seeking FDA approval to market a generic Gabapentin product, notwithstanding Defendants' patents, and Defendants have sued certain of these generic drug manufacturers for patent infringement under the federal patent laws. Plaintiffs list many of these lawsuits in footnote 2 to paragraph 46 of the Complaint.

[2] Wisconsin, New York, Florida, Louisiana, Massachusetts, Michigan, Minnesota, Oklahoma, Maryland, Illinois, Delaware, District of Columbia and New Jersey. Compl. ¶¶ 3-17.

States." Compl. ¶ 31. These claims, purportedly brought under the statutory laws of many different states and almost completely by Plaintiffs from outside New Jersey, and apparently seeking to regulate the United States market as a whole, were filed in the Superior Court of New Jersey, Bergen County.

In their Complaint filed on or about November 24, 2004, Plaintiffs allege that Defendants "engaged in a continuing and on-going scheme to illegally increase market share and power by restraining generic bioequivalents of … Neurontin from competing or otherwise entering the market through a false, deceptive, and misleading marketing campaign and misusing the legal and regulatory system." Compl. ¶ 1. As will be detailed below, it consciously and artfully omits reference to the "legal" and "regulatory system" involved. Despite such artful pleading, the Complaint raises substantial and essential issues of federal law since the purported state law liability arises from claimed misuse of the federal legal and regulatory system –simply stated, <u>federal</u> law.

Defendants filed a timely Notice of Removal on January 5, 2005, asserting that this Court has federal question jurisdiction over Plaintiffs' claims. On January 27, 2005, Plaintiffs served a motion to remand this case to the Law Division of the Superior Court of New Jersey, Bergen County. As set forth below, Plaintiffs' motion to remand should be denied.

**B.**    <u>**The Complaint**</u>

An examination of the Complaint leaves little doubt that it raises substantial federal issues under the Patent Laws and the FDCA. Although the federal issues need only be essential to one of Plaintiffs' claims, the Complaint reveals that these substantial federal patent and FDCA issues are essential to many of Plaintiffs' claims.

1133729v3

According to their Complaint, Defendants' purported "illegal scheme" was to:

> increase demand for Neurontin and interfere with potential generic
> competitors by illegally marketing Neurontin for certain uses that
> were not safe and effective, in conjunction with acquiring and
> using other patents on other forms and methods of using
> Gabapentin for anticompetitive purposes.

*Id.* ¶ 32. As later becomes clear, the alleged "illegal marketing" claims involve marketing an

FDA regulated drug in a way that Plaintiffs claim the FDA does not permit, and the misuse of

patents claims require a resolution of the proper scope, validity and interpretation of the patents

(and patent application process) under federal law. Plaintiffs claim that this "scheme" (1)

increased the price of Neurontin (to all buyers) above the price of generic equivalents because

the patents allowed generics to be excluded from the market (under the federal patent laws, by

the way) (Compl., Counts I to XXIV), and (2) caused certain buyers to purchase Neurontin for

unapproved (or "not proven safe") uses and/or pay an increased price (*Id.*, Counts XXV to

XLV).

The "illegal marketing" was allegedly done by "misrepresenting" Neurontin's safety and

effectiveness (a matter fully regulated by the FDA), and filing "baseless" federal patent litigation

and/or other "misuse" of the federal legal and regulatory system. Plaintiffs allege injury as a

result of Defendants' conduct, including "the misrepresentation of Neurontin's safety and

effectiveness." Compl. ¶ 43.

The Complaint then alleges that the "anti-competitive purposes" of Defendants were

pursued by efforts to "restrain competition and prevent generic bioequivalents of Neurontin from

entering the market by misusing the legal and regulatory system to harass, intimidate, and

interfere with competitors. Defendants' conduct was done intentionally, in bad faith, and as a

method to use the legal and regulatory system as an anticompetitive weapon." Compl. ¶ 45. To

- 5 -

this end, Plaintiffs allege that Defendants initiated a number of lawsuits, without regard to their merits or chances of success, "against manufactures and distributors who intend to make or have made a generic bioequivalent of Neurontin available to the public."[3] Compl. ¶ 46 (emphasis added). Plaintiffs further allege that this was anti-competitive because "Defendants knew at the time that each lawsuit was filed that the generic bioequivalents of Neurontin would not infringe upon any valid and enforceable patient for Neurontin or each lawsuit became objectively baseless and Defendants continued to litigate the lawsuit despite this knowledge." Compl. ¶ 47 (emphasis added).

To further this allegedly "anti-competitive" patent strategy, the Complaint alleges that Defendants "intentionally made false representations to the Food and Drug Administration ("FDA") in listing patents in the Orange Book." Compl. ¶ 48. "Specifically, Defendants represented, directly or by implication, that its patents claim a drug or drug product or method of using a drug or drug product that the patents do not claim. Defendants further represented that a claim of patent infringement could be reasonably asserted that, in fact, could not be reasonably asserted." Id. Finally, the Complaint alleges that "Defendants intentionally manipulated and delayed its acquisition of patents and timing of interactions with the FDA to extend the automatic stay of generic bioequivalents of Neurontin by, at least, 23 months." Compl. ¶ 51.

_____

[3] The footnote to paragraph 46 identifies the lawsuits as the following: *Warner-Lambert Co. v. Apotex, Inc. and Torpharm*, No. 98 C 4293 (N.D. Ill. filed July 14, 1998); *Warner-Lambert Co. v. Apotex, Inc. and Torpharm*, No. 01-0611 (N.D. Ill. filed February 5, 2001); *Warner-Lambert Co. v. Purepac Pharmaceutical Co. and Faulding Inc.*, No. 98-2749 (D.N.J. filed June 11, 1998); *Warner-Lambert Co. v. Purepac Pharmaceutical Co. and Faulding Inc.*, No. 99-5948 (D.N.J. filed December 20, 1999); *Warner-Lambert Co. v. Purepac Pharmaceutical Co. and Faulding Inc.*, No. 00-2931 (D.N.J. filed June 15, 2000); *Warner-Lambert Co. v. Purepac Pharmaceutical Co. and Faulding Inc.*, No. 00-3522 (D.N.J. filed July 20, 2000); *Pfizer Inc., Warner-Lambert Co. v. Teva Pharmaceuticals, Inc.*, 00-4168 (D.N.J. filed August 24, 2000); *Pfizer Inc., Warner-Lambert Co. v. Teva Pharmaceuticals*, No. 00-4589 (D.N.J. filed September 20, 2000); *Pfizer Inc. v. Zenith Laboratories and Ivax Corp.*, No. 00-6073 (D.N.J. filed December 14, 2000); *Pfizer Inc. v. Zenith Laboratories and Ivax Corp.*, No. 01-0193 (D.N.J. filed January 12, 2001); *Pfizer Inc. v. Zenith Laboratories and Ivax Corp.*, No. 01-1537 (D.N.J. filed March 30, 2001). *Id.* at ¶46, fn 2.

The damages arising from this alleged anti-competitive strategy are that "[b]y interfering or preventing a generic bioequivalent of Neurontin from reaching the market, Defendants injured plaintiffs . . .by causing them to pay more than they otherwise would have paid." Compl. ¶ 52.

While the Complaint was artfully drafted to omit the fact that the litigation involved was federal patent litigation, the footnote to paragraph 46 reveals that all the cases cited are federal patent cases.  In any event, the claimed liability – causing Plaintiffs to pay more for Neurontin by excluding generics based on the patents – could only be alleged if the relevant federal patents were either invalid or did not cover the generics.  Otherwise, the valid patents excluded the generics and Plaintiffs have no anti-competition claims.

Moreover, in their Prayer for Relief, Plaintiffs seek not only damages but

> A.    A declaration that defendants have committed the violations…
>
> C.    Enjoin [sic] defendants from continuing the illegal activities alleged herein…

Compl. at 70 (Prayer for Relief) (emphasis added).  Thus, among other things, Plaintiffs apparently seek to enjoin Defendants from filing future federal patent lawsuits once the Court decides that generics "would not infringe on any valid and enforceable patent for Neurontin," to enjoin or limit certain interactions with the FDA and filings in the Orange Book, and to regulate the timing and manner in which Defendants seek patents from the United States Patent and Trademark Office.  *See* Compl. ¶¶ 47, 48, 51 (alleging these specific "illegal" activities).  In reality, Plaintiffs are asking that the Superior Court of New Jersey decide whether the federal patent lawsuits were "baseless," whether generics "would not infringe on any valid and enforceable patent," and set the rules for Defendants' dealings with the FDA and Patent Office.  These are matters of federal law.

- 7 -

C.    **The Multi-District Litigation**

Other insurers, benefit plans, individuals and entities have sought the same recoveries

from Defendants on similar or identical theories.  The Judicial Panel on Multidistrict Litigation

("JPML") has consolidated these similar actions into two multi-district litigation actions – *In re*

*Neurontin Marketing and Sales Practices Litigation*, MDL Docket No. 1629 (D. Mass)

("Marketing MDL") and *In re Neurontin Antitrust Litigation*, MDL Docket No. 1479 (D. N.J.)

("Antitrust MDL").  Five other cases that had been pending in this district have been transferred

to the Marketing MDL already.  As noted previously, the Court in the Antitrust MDL has already

held that antitrust allegations virtually identical to those made by Plaintiffs here raise a federal

question under the Patent Laws.  *See Antitrust MDL – Sall/Zafarana* at 17-18 (Novack Aff. Ex.

K).

Moreover, it must be noted that these Plaintiffs are members of the proposed plaintiff

class as asserted in the initial complaint giving rise to the Marketing MDL.  That Complaint,

originally filed in this Court in *ASEA v. Pfizer, Inc.*, Civil Action No. 2:04cv02577 JAP/MCA,

purportedly defined the class as:

> All individuals and entities in the United States or its territories
> who, for purposes other than resale, purchased, reimbursed and/or
> paid for Neurontin for indications not approved by the FDA during
> the period from June 1, 1994 through the present.

*ASEA* Complaint (Placey Cert. Tab 4) at ¶ 106.  In addition, the *ASEA* Complaint (at Counts

Five, Six and Eight) makes the same state consumer protection and unjust enrichment claims

made in Counts XXV to XLV of Plaintiffs' Complaint here.  The *ASEA* action has now been

transferred to the Marketing MDL.  Thus, while Plaintiffs may ultimately try their claims

separately rather than as members of a class, it is plain that this action is part and parcel of the

MDL litigations and should be treated consistently.  For this reason, as will be argued below, this

- 8 -

Court should defer ruling on the remand motion until this action is transferred by the JPML to

one of the two Neurontin MDLs, where other remand motions are pending and/or have been

decided.

**III.    ARGUMENT IN SUPPORT OF CROSS-MOTION TO DEFER RULING ON REMAND PENDING MDL TRANSFER**

    **A.    THIS COURT SHOULD DEFER RULING ON THE MOTION TO REMAND PENDING MDL TRANSFER, PARTICULARLY SINCE ONE OF THE MDL COURTS HAS ALREADY DENIED A MOTION TO REMAND VIRTUALLY IDENTICAL CLAIMS**

Preliminarily, this Court should simply defer ruing on Plaintiffs' Motion to Remand and

allow this action to be transferred to one of two Neurontin MDLs already established. As noted

above, numerous cases have been filed in state and federal jurisdictions across the United States

alleging, among other things, that Pfizer and Warner-Lambert violated federal patent laws, the

FDCA, and various state consumer protection or anti-competition statutes with respect to

Neurontin. The JPML has transferred 39 of the cases pending in federal courts to Honorable

Patti B. Saris of the United States District Court for the District of Massachusetts for coordinated

or consolidated pretrial proceedings in the Marketing MDL, captioned *In re: Neurontin*

*Marketing and Sales Practices Litigation*, MDL Docket No. 1629. Conditional Transfer Orders

are pending in eight additional cases, and the JPML has been notified, pursuant to JPML Rule

7.5(e), that this case is a potential tag-along action.[4] As detailed above, these Plaintiffs even fall

within the definition of the proposed class in the action in which MDL treatment was initially

sought. ASEA Complaint ¶106 (Placey Cert. Tab 4).

Approximately 20 additional purported class actions have been centralized by the JPML

in this Court for coordinated or consolidated pretrial proceedings before Honorable John C.

---

[4] Here, Plaintiffs have advised all of the Defendants that they intend to oppose MDL transfer, at a minimum on jurisdictional grounds. That, of course, will be for the JPML to determine.

Lifland in the Antitrust MDL, captioned *In re Neurontin Antitrust Litigation*, MDL Docket No. 1479. As discussed in detail in the argument in opposition to remand below, Judge Lifland has already denied a motion to remand virtually identical claims in two of these cases. *See* the *Antitrust MDL – Sall/Zafarana* Opinion (Novack Aff. Ex. K).

In addition, eight pending motions to remand have been filed in these Neurontin actions and appear to be based on the same arguments set forth in Plaintiffs' Brief here. The remand motions filed in these Neurontin actions should be decided at one time by a single judge, and accordingly, this Court should defer ruling on Plaintiffs' motion at this time. *See Jackson v. Johnson & Johnson, Inc.*, No. 01-2113, 2001 WL 34048067, at *2 (W.D. Tenn. April 3, 2001) ("Federal Courts routinely defer ruling on pending motions to remand in MDL litigation until after the JPMDL has transferred the case to the MDL court.").

By deferring to the MDL, this Court would promote judicial economy, ensure uniformity in pre-trial rulings, and prevent litigants from engaging in costly and duplicative efforts. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990); *Falgoust v. Microsoft Corp.*, No. Civ. A. 00-0779, 2000 WL 462919, at * 1 (E.D.La. April 19, 2000) ("the purpose of the JPML is to promote judicial economy and to prevent inconsistent rulings"); *Trench v. Jackson Nat'l Life Ins. Co.*, No. 99-C-5182, 1999 WL 1044923, at * 1-2 (N.D. Ill. Nov. 12, 1999) (noting that "resolution… in a single forum will ensure consistency and avoid duplicative efforts").

Here, Plaintiffs present issues that arise in eight of the other removed actions that have been filed in various jurisdictions, not to mention those already decided in the *Antitrust MDL – Sall/Zafarana* Opinion. In Pfizer and Warner-Lambert's view, these actions share a common foundation of claims that are intertwined with, and demand interpretation of, the patent laws and the extensive and layered federal regulations of the prescription drug industry. An MDL

- 10 -

transferee court with the benefit of understanding the similarity of the complaints, can best provide the consistency, judicial economy, and reduction of the unnecessary expense of litigating the same issues in numerous separate cases. In addition, the relative hardship, if any, on Plaintiffs resulting from the delay is clearly outweighed by the benefits of deferring a ruling on Plaintiffs' motion. *See Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1053 (E.D. Wis. 2001) (where defendant faced the same or similar issues on remand in eight other cases, stay was granted because gains in judicial economy outweighed the burden of delay); *American Seafood, Inc., v. Magnolia Processing, Inc.*, Civ. A. Nos. 92-1030, 92-1086, 1992 WL 102762, at *2 (E.D. Pa. May 7, 1992) ("Duplicative motion practice and discovery heavily outweigh the possible prejudice to the plaintiffs due to the delay.").

For these reasons, this Court should simply defer a ruling on Plaintiff's motion to remand pending MDL transfer.

## IV.    ARGUMENT IN SUPPORT OF DENIAL OF REMAND

### A.    DEFENDANTS' REMOVAL COMPLIED WITH ALL STATUTORY REMOVAL REQUIREMENTS

In Plaintiffs' Memorandum in Support of Motion to Remand ("Plaintiffs' Brief"), in their first and presumably best argument, Plaintiffs claim that "Defendants' have failed to comply with that statutory requirements to remove a purely state law cause of action to federal court." Plaintiffs' Brief at 6. Plaintiffs' claims, however, are without merit because Defendants filed a timely Notice of Removal on January 5, 2005 and its filing complied with all statutory requirements.

To start, Plaintiffs contend that "Defendants failed to submit the relevant state court pleadings with their Notice of Removal by the deadline of January 5, 2005" as required by the removal statute. Plaintiffs' Brief at 7; *see also* 28 U.S.C. § 1446(a). This claim, however, is just

- 11 -

factually wrong: the Notice of Removal and all exhibits were submitted together on January 5. This is clear from a review of the docket (which shows the filing date as January 5 for all documents), as well as Defendants' cover letter accompanying their Notice of Removal, showing that Defendants submitted all relevant state court pleadings (including Exhibit D to the Notice of Removal) in a timely manner on January 5, 2005. *See* Certification of Richard G. Placey submitted herewith, containing time-stamped copies of the filing and cover letter (which specifically states that the Complaint [the only pleading] is also on the computer disk in a separate file). The Clerk's office may have mechanically opened the computer file or added documents on January 11, but the filing date reflected throughout for all documents is January 5. Thus, Plaintiffs are grasping at straws even in their very first arguments in support of remand.

Plaintiffs' next contention, that the joinder submitted by Defendants Lodewijk de Vink and Anthony Wild failed to comply with the procedural requirements set forth in the removal statute, and that consequently Defendants failed "to obtain proper consent for removal on behalf of all defendants," is still more grasping at straws. Plaintiffs' Brief at 7-8. Contrary to Plaintiffs' assertions, however, the joinder of Defendants De Vink and Wild was proper here, and satisfied the requirements of the removal statute.

"[I]t is a well-settled rule of law – commonly known as the 'rule of unanimity' – that all defendants must join in or consent to the removal petition." *Michaels v. State of New Jersey*, 955 F. Supp. 315, 319 (D.N.J. 1996). Pursuant to the rule of unanimity, each defendant does not have to sign the same removal petition, but simply must submit "timely written evidence of joinder or consent" to the removal "by filing its own notice of removal, an affidavit of joinder or consent, or even a letter." *Id.* at 321 (emphasis added). There is no requirement that a formal pleading be filed – only that written evidence be submitted.

- 12 -

Here, Defendants de Vink and Wild agreed to the attachment of a timely joinder to the Notice of Removal on January 5, 2005 (Exhibit B to the Notice of Removal), voicing "their consent <u>directly to the court</u>" as required under the rule of unanimity. *Michaels id.* at 320 (emphasis in original). This attachment was signed by their New York counsel, and submitted as supporting evidence of their consent to removal (as pled in the very beginning of the Notice itself). This satisfies the requirement that written evidence of consent be submitted, and the Court need go no further in order to reject this argument. *Id.* at 321. In that regard, no one disputes the fact that de Vink and Wild do in fact consent.

Given that Defendants de Vink and Wild properly voiced their consent to removal, Plaintiffs' entire argument rests on the fact that original joinder submitted by Defendants de Vink and Wild was signed by an attorney who was not admitted to practice before the United States District Court for the District of New Jersey and should therefore somehow be ignored.[5] Plaintiffs' Brief at 8. It should not be: the original joinder signed by New York counsel is sufficient "evidence" of de Vink's and Wild's consent. *Michaels, id.* at 321.

Plaintiffs argue that the de Vink/Wild joinder was defective because it was not signed by a member of the bar of the United States District Court for the District of New Jersey, but that does not render it defective. The removal statute expressly requires that a Notice of Removal be signed "pursuant to Rule 11," which in turn requires that the document be signed by "at least one attorney of record." The removal notice here complied fully with this requirement because it was signed by Richard Placey, who is not only the attorney of record but is also a member of the bar of the State of New Jersey and the bar of this District Court. See 28 U.S.C. § 1446(a); Fed.

---

[5] Plaintiffs go to great lengths to scrounge support for this hypertechnical and formalistic argument, even attaching a Martindale Hubbell listing for the Milbank Tweed firm in an effort to show that it is a New York firm. Novack Aff. Ex. C.

1133729v3

R. Civ. P. 11. Contrary to Plaintiffs' assertion, there is no statutory provision even requiring the

filing of a joinder merely to evidence the consent of other defendants as pled in the Notice itself,

let alone a provision as to how such a joinder is to be signed.[6]

Moreover, Defendants de Vink and Wild promptly submitted another joinder (confirming

their original joinder), signed by an attorney admitted to practice before this Court. *See* Docket

Item No. 6. Thus, even if the evidence of consent signed by New York counsel could be

ignored, "[i]t is uniformly recognized" that the failure to properly join all defendants in a

removal petition "is not deemed to be jurisdictional." *See Michaels*, 955 F. Supp. at 321 (citing

*Balazek v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995)). Instead, such defects are

considered "modal or formal, and can be waived," and some courts "have exercised their

discretion to permit defendants to cure technical defects in removal petitions." *Michaels*, *id.* at

321 (listing cases).

Even if Plaintiffs' hypertechnical "defective consent" argument could be credited, any

defect would be of no consequence and/or should be waived here because it was promptly fixed

by Defendants de Vink and Wild and caused no prejudice to Plaintiffs. This position is

supported by the decisions of various federal courts. *See Kovilic Const. Co., Inc. v. Missbrenner*,

106 F.3d 768, 771-772 (7th Cir. 1997) (reversing district court's decision to strike appellee's

brief under Rule 11(a) where appellees' attorney had failed to file an appearance form and

affidavit as required by the local rules because the district court made no finding that the

appellant was prejudiced by the omission); *Operating Engineers Local 139 Health Benefit Fund*

---

[6] Even if the joinder could only be signed by a member of the bar of this Court, Rule 11 itself provides that "[a]n unsigned paper shall be stricken <u>unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.</u>" Fed. R. Civ. P. 11(a) (emphasis added). In the circumstances of the present case, even if the signature required was that of a local attorney, Defendants de Vink and Wild were thereby entitled to promptly correct that omission, and they did so by filing an amended joinder with corrected signatures on January 14, 2005 – almost two weeks before Plaintiffs served the Motion to Remand.

*v. Rawson Plumbing, Inc.*, 130 F. Supp.2d 1022, 1023-24 (E.D. Wis. 2001) (applying Rule 11(a) and citing *Kovilic*, the court denied the plaintiffs' request for default judgment based on fact that the defendant's answer had been signed by an officer of the defendant, who was not an attorney admitted to practice in the Eastern District of Wisconsin, because the plaintiffs had suffered no prejudice as a result of this technical defect); *Guess?, Inc. v. Chang*, 912 F. Supp. 372, 380 (N.D. Ill. 1995) (denying the defendants' motion to strike an amended complaint under Rule 11(a) that was signed by the plaintiff's original attorneys, as opposed to the plaintiff's current counsel, because "dismissal for such a technical defect would be improper"); F.R.Civ.P. 11(a) (omission of signature may be corrected promptly).

Accordingly, Defendants fully complied with the applicable procedural requirements in the removal statute. For this reason, as well as the reasons set forth below, Plaintiffs' motion to remand should be denied.

### B.    THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER THIS ACTION PURSUANT TO 28 U.S.C. §§ 1331 AND 1338

In their second argument, Plaintiffs claim that Defendants have failed to establish that this Court has federal question jurisdiction over this action. Contrary to the assertions in Plaintiffs' Brief, however, this case was properly removed from state court because this Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.[7] Federal question jurisdiction exists where a plaintiff's right to relief requires resolution of a substantial federal law issue. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988).[8] Here, substantial

---

[7] 28 U.S.C. § 1331 provides for original district court jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1338(a) provides for exclusive federal court jurisdiction over "any civil action arising under any Act of Congress relating to patents."

[8] In Plaintiffs' Brief, they claim that Defendants "have the burden to establish that the state court action could have originally been brought in federal court pursuant to each and every theory of liability alleged by Plaintiffs in their Complaint." Plaintiffs' Brief at 8 (emphasis added). Plaintiffs, however, have misstated the appropriate legal
Continued...

1133729v3

issues of federal patent law must be decided as a necessary element of certain claims, and

substantial issues under the FDCA must be decided as an element of certain other claims.

As will be demonstrated below, this Court has federal question jurisdiction for these two

independently sufficient reasons: (1) certain of Plaintiffs' claims, primarily the anti-competition

claims in Count I to XXIV, raise substantial issues of federal patent law and (2) certain other of

Plaintiffs' claims, primarily the consumer claims in Counts XXV to XLV, raise substantial issues

under the federal Food, Drug and Cosmetic Act.

### 1.    Legal Standard

According to the United States Supreme Court, "[a] district court's federal-question

jurisdiction ... extends over 'only those cases in which a well-pleaded complaint establishes

either that federal law creates the cause of action or that the plaintiff's right to relief necessarily

depends on resolution of a substantial question of federal law,' in that 'federal law is a necessary

element of one of the well-pleaded ... claims.'" *Christianson*, 486 U.S. at 808 (citations

omitted).[9] The Third Circuit recently clarified the second prong of the *Christianson* test for

federal question jurisdiction in *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002),

stating that:

> It is sufficient that the merits of the litigation turn on a substantial
> federal issue that is "an element, and an essential one, of the
> plaintiff's cause of action." The controversy must be "genuine and
> present ... not merely ... conjectural." In short, the federal law
> "must be in the forefront of the case and not collateral, peripheral

---

....Continued

standard. Rather, in *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, n.3 (2003), the United States Supreme Court
clarified that if one "claim in the complaint is removable," any remaining state law claims are also removable under
the federal supplemental jurisdiction statute. Accordingly, Defendants only have to establish that one claim – not all
claims – alleged by Plaintiffs could have originally been brought in federal court, and that the claim was properly
removed.

[9] Note that federal law must be a necessary element of <u>one</u> of the claims. *Id.* Although one would be sufficient,
here federal law is a necessary element of most of Plaintiffs' claims.

- 16 -

> or remote" … It need not, however, be a situation in which federal
> law completely preempts state law."

*Id.* at 389 (citations omitted).

Put another way, "even though state law creates [Plaintiffs'] causes of action, [their] case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983). A long line of Supreme Court cases has clearly established the doctrine of substantial federal question jurisdiction. *See Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921); *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936); *Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808-809 (1986); *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164 (1997). A case involving a substantial question of federal law is one that "poses what Justice Frankfurter called the litigation-provoking problem – the presence of a federal issue in a state-created cause of action." *Merrell Dow*, 478 U.S. at 809-10.

Moreover, as Judge Lifland recently noted in *Antitrust MDL – Sall/Zafarana*: "A plaintiff cannot avoid removal by failing to plead necessary federal questions. [citations omitted] 'If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint.'" *Id.* at 7 (Novack Aff., Ex. K) (citations omitted) .

In this case, federal question jurisdiction is proper because – however artfully they have tried to disguise it – Plaintiffs' claims require the Court to decide substantial issues of federal patent law under the anti-competition counts, as well as issues relating to alleged violations of