the federal Food, Drug and Cosmetic Act and FDA regulations under the consumer counts.

These issues are at the forefront of this case, and are not "collateral, peripheral or remote." *Id.*[10]

> ### 2. Federal Question Jurisdiction Is Proper Because Plaintiffs' State Law Anti-Competition Claims Necessarily Implicate Substantial Issues Of Federal Patent Law
>
> #### a. These Claims Require the Court to Determine Issues Relating to the Validity, Enforceability, and Infringement of Defendants' Patents for Neurontin

Plaintiffs claim that "[i]ssues of federal patent law are not a proper basis for federal

question jurisdiction in this case." Plaintiffs' Brief at 13. Plaintiffs' argument, however, lacks

any legal merit as Plaintiffs' state law anti-competition claims require the Court to decide, first

and foremost, substantial issues of federal patent law. *See Christianson*, 486 U.S. at 808.

Indeed, federal question jurisdiction exists because a Court cannot decide whether

Defendants have unlawfully precluded potential competitors from marketing generic versions of

Neurontin without first deciding substantial questions of federal patent law. *See the Antitrust*

*MDL – Sall/Zafarana Opinion* (Novack Aff. Ex. K) (holding that the Court had federal question

jurisdiction over the plaintiffs' virtually identical state law anti-competition claims against Pfizer

and Warner-Lambert because the claims "could not be resolved without deciding substantial

issues of federal [patent] law").

In this case, the thrust of Plaintiffs' anti-competition claims is that Defendants have

brought "bad faith" or "objectively baseless" patent infringement actions against potential

generic competitors because "generic bioequivalents of Neurontin would not infringe on any

valid and enforceable patent." Compl. ¶¶ 46-47. Plaintiffs' damages on this theory (re-pled

---

[10] To the extent that the substantial federal question doctrine does not extend to Plaintiffs' other claims, this Court nonetheless has supplemental jurisdiction over such claim or claims pursuant to 28 U.S.C. § 1367. *See also City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 165-67 (1967).

again and again under numerous state anti-competition laws) are that they were "cause[d] to pay more than they otherwise would have paid" because the conduct prevented a generic equivalent of Neurontin from entering the market. *Id.* ¶ 52. Of course, since the patents would always prevent generics from being sold if valid and infringed, these claims and these damages simply cannot be advanced unless Plaintiffs can prove that Defendants' patents are invalid or not infringed.

Moreover, even if they can prove patent invalidity, a lawsuit will be considered a "sham" only if it is "objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits" and if it conceals "an attempt to interfere directly with the business relationships of a competitor." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (citations omitted); *see also Village Supermarket, Inc. v. Mayfair Supermarkets, Inc.*, 634 A.2d 1381, 1385 (N.J. Super. 1993). Here, Plaintiffs' claims relating to exclusion of generic Neurontin and alleged "bad faith" lawsuits turn on whether, as a matter of federal patent law, Plaintiffs can first prove the patents invalid and then show that Defendants did not have a reasonable basis for filing these patent actions. Only then are Plaintiffs' damages under the anti-competition counts (the additional amounts they allegedly had to pay for brand-name Neurontin because generic Neurontin was unavailable) even potentially viable. Accordingly, federal question jurisdiction over Plaintiffs' anti-competition claims is proper because this Court cannot determine whether the actions are improper without first resolving questions of patent validity and infringement.

Plaintiffs also claim that Defendants wrongfully listed Neurontin patents in the FDA Orange Book because Defendants "knew that such representations could provide, at least, a 30-month stay before a generic bioequivalent entered the market." Compl. ¶¶ 48-50. Contrary to

- 19 -

Plaintiffs' assertion, however, these Orange Book allegations do not defeat federal question

jurisdiction because they cannot be decided independently of the underlying patent infringement

issues. The federal statute governing Orange Book listing makes clear that the wrongful listing

issue is inextricably intertwined with federal patent law: "The applicant shall file with the

application the patent number and expiration date of <u>any patent which claims the drug</u> for which

the applicant submitted the application or which claims a method of using such drug and <u>with</u>

<u>respect to which a claim of patent infringement could reasonably be asserted</u> if a person not

licensed by the owner engaged in the manufacture, use or sale of the drug." 21 U.S.C. § 355

(b)(1) (emphasis added). In other words, Plaintiffs cannot prevail on a wrongful listing theory

without a court determination regarding a substantial patent law issue, then (if the patents are

invalid) followed by a determination that the listing itself was improper under 21 U.S.C. § 355.

In this regard, Plaintiffs request for an injunction against the "illegal activities alleged"

(Compl., Prayer for Relief) vividly underscores the federal question as it relates to patents and

the Orange Book. A court cannot enjoin or limit the exercise of these federally enacted rights

without resolving the questions of federal law which govern the proper exercise of those rights.

Moreover, in the nearly identical *Antitrust MDL – Sall/Zafarana* cases, the Court held

that these types of claims necessarily involve substantial questions of federal patent law. *See id.*

at 17-18 (Novack Aff. Ex. K) There, as here, the plaintiffs alleged that the defendants

"wrongfully prevented competitors from marketing generic versions of gabapentin" "by filing

'sham patent infringement lawsuits against horizontal generic competitors'" and improperly

listing certain Neurontin patents in the Orange Book. *Id.* at 1, 3-4. The Court denied the

plaintiffs' motions to remand these claims to state court, holding that these claims could not be

resolved "without deciding substantial issues of federal law, i.e., the validity, enforceability, and

- 20 -

Plaintiffs' assertion, however, these Orange Book allegations do not defeat federal question jurisdiction because they cannot be decided independently of the underlying patent infringement issues. The federal statute governing Orange Book listing makes clear that the wrongful listing issue is inextricably intertwined with federal patent law: "The applicant shall file with the application the patent number and expiration date of <u>any patent which claims the drug</u> for which the applicant submitted the application or which claims a method of using such drug and <u>with respect to which a claim of patent infringement could reasonably be asserted</u> if a person not licensed by the owner engaged in the manufacture, use or sale of the drug." 21 U.S.C. § 355 (b)(1) (emphasis added). In other words, Plaintiffs cannot prevail on a wrongful listing theory without a court determination regarding a substantial patent law issue, then (if the patents are invalid) followed by a determination that the listing itself was improper under 21 U.S.C. § 355.

In this regard, Plaintiffs request for an injunction against the "illegal activities alleged" (Compl., Prayer for Relief) vividly underscores the federal question as it relates to patents and the Orange Book. A court cannot enjoin or limit the exercise of these federally enacted rights without resolving the questions of federal law which govern the proper exercise of those rights.

Moreover, in the nearly identical *Antitrust MDL – Sall/Zafarana* cases, the Court held that these types of claims necessarily involve substantial questions of federal patent law. *See id.* at 17-18 (Novack Aff. Ex. K) There, as here, the plaintiffs alleged that the defendants "wrongfully prevented competitors from marketing generic versions of gabapentin" "by filing 'sham patent infringement lawsuits against horizontal generic competitors'" and improperly listing certain Neurontin patents in the Orange Book. *Id.* at 1, 3-4. The Court denied the plaintiffs' motions to remand these claims to state court, holding that these claims could not be resolved "without deciding substantial issues of federal law, i.e., the validity, enforceability, and

1133729v3

infringement of defendants' patents." *Id.* at 17-18. "In short," the Court concluded that "the legitimacy" of the defendants' conduct – the filing of patent infringement lawsuits – depended "directly on the scope of the patents." *Id.* at 18. In addition, the Court held that "[t]he propriety of listing patents in the Orange Book likewise depends directly on the scope of the claims of the patents." *Id.*[11] Whatever the state anti-competition law might say, "'a [valid] patent holder is permitted to maintain his patent monopoly through conduct permissible under the [federal] patent laws' and, therefore, the plaintiffs were required to show that the defendants' conduct was impermissible under the patent laws." *Id.* at 13 (citing *Tamoxifen Citrate Antitrust Litig.*, 222 F. Supp. 326, 331 (E.D.N.Y. 2002)).

As the case law plainly holds, Plaintiffs' state law anti-competition claims based on the alleged filing of sham lawsuits and improper listing of patents in the Orange Book cannot be resolved without deciding substantial issues of federal patent law. For this reason alone, federal question jurisdiction exists and the motion to remand should be denied.

Plaintiffs attempt to distinguish the decision in *Antitrust MDL – Sall/Zafarana* (as well as *Stuart* and *Tamoxifen*), on the grounds that the courts in those cases "failed to acknowledge that the validity of certain patents ... arose only in the context of a defense," and that that a defense cannot create federal question jurisdiction. Plaintiffs' Brief at 23. Similarly, Plaintiffs contend

---

[11] Additional cases applying the *Christianson* standard also make clear that there is federal question jurisdiction in this case. *See* Order Denying Motion to Remand in *Stuart v. Pfizer Inc.*, No. 02-2511. Slip. Op. at 15 (W.D. Tenn. Oct. 2, 2002) (a copy of this opinion is at Novack Aff. Ex. L) (denying motion to remand because a "determination of sham litigation requires first and foremost resolution of an essential question of federal patent law"); *In re Tamoxifen Citrate Antitrust Litig.*, 222 F. Supp. 2d 326, 330-331 (E.D.N.Y. 2002) (a copy of this opinion is at Novack Aff. Ex. L) (denying motion to remand because the plaintiffs could not succeed on their state law anti-competition claims without proving the invalidity or unenforceability of a patent); *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1328-29 (Fed. Cir. 1998), *overruled on other grounds* in *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999); (holding that removal was proper where patent law issues were integral to the state claims that were asserted, even though there was no dispute that those claims arose under state law); *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 986 F.2d 476, 478 (Fed. Cir. 1993) (holding that the need to resolve a question of federal patent law in deciding a state law business disparagement claim was grounds for removal).

- 21 -

that the "the patent issue" does not create federal question jurisdiction in this case because it has only been raised by Defendants "as part of a defense." *Id.* at 17. In both instances, Plaintiffs are incorrect. A careful reading of Judge Lifland's opinion in *Antitrust MDL – Sall/Zafarana* shows that he considered and rejected this exact argument.

Judge Lifland found that the defendants' "ability to stave off competition stands or falls on the scope of its patents and the rights flowing therefrom." *Id.* at 18. Accordingly, he concluded that a "determination of the scope of Defendants' patents is *a necessary part of Plaintiffs' claims in the first instance and not, as Plaintiffs argue, merely invoked as a defense.*" *Id.* (emphasis added).

Similarly in this case, a determination of the scope of Defendants' patents for Neurontin is a necessary part of Plaintiffs' state law anti-competition claims, and is not merely invoked in a defensive posture.[12] Accordingly, Plaintiffs' anti-competition claims (and the consumer claims,

---

[12] Plaintiffs further contend that *Antitrust MDL-Sall/Zafarana* represents the minority view, and that "[n]umerous federal courts have remanded cases involving name-brand drugs and their respective patents back to state court." Plaintiffs' Brief at 14. All of the cases cited by Plaintiffs, however, are distinguishable from this case because the Plaintiffs' anti-competition claims include alternate theories of liability which do not depend on the resolution federal law issues. *See Stuart*, No. 02-2511, Slip. Op. at 14-15 (Novack Aff. Ex. L) at 14 ("[N]o authority supports the proposition that remand is appropriate in the absence of alternative theories that do not require resolution of federal questions.").

In each and every case cited by Plaintiffs, the Defendants allegedly executed settlement agreements or stipulations with generic manufacturers "to preserve and perpetuate the monopoly of a questionable patent" (*Id.* at 13), and these allegedly anti-competitive agreements were either the sole theory of liability or an alternative to a sham litigation theory. *See Anthem, Inc. v. Bristol-Meyers Squibb Co.*, Civil Action No. 03-0008, 2003 U.S. Dist. LEXIS 15762, at *3-4 (D.N.J. March 18, 2003) (alleging that the defendants entered into a settlement agreement with a generic manufacturer); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 748 (E.D.N.Y. 2001) (alleging that the defendant had reached "an unreasonably anti-competitive agreement" with generic manufacturers); *McGrew v. Schering-Plough Corp.*, No. 01-2311-GTV, 2001 WL 950790, at *2 (D. Kan. Aug. 6, 2001) (alleging that the defendant entered into a settlement argument with a generic manufacturer); *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 674-75 (S.D.N.Y 2000) (holding that the plaintiffs could point to the defendant's use of a stipulation agreement with a generic competitor to prove their state law claims); *Drug Mart Pharmacy Corp. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.)*, Case No. 00-631-CV-SEITZ/GARBER, Slip. Op. at 10 (Novack Aff. Ex. H) (S.D. Fla. August 26, 2000) (alleging that the defendants "entered into illegal agreements to restrain trade"); *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 839 (E.D. Mich. 1999) (alleging that the defendant committed "other acts that would violate state law," including a "stipulation agreement" with a generic competitor); *Aetna U.S. Healthcare v. Hoechst Atkiengesellschaft*, 54 F.

Continued...

- 22 -

1133729v3

to the extent they seek damages based on the patents as well as the promotion) provide a proper

basis for federal question jurisdiction, and Plaintiffs' motion to remand should be denied.

**b.    Plaintiffs Have Failed To Allege Any Alternative Theory That Would Defeat Federal Question Jurisdiction**

Federal question jurisdiction is proper where, as here, "the patent law issue" is "necessary

to every theory under at least one claim." *Antitrust-Sall/Zafarana* at 7 (citing *Christianson*, 486

U.S. at 810). In their Brief, Plaintiffs claim that they have pled various theories of liability

against Defendants that are "not predicated upon the resolution" of a federal patent law issue,

and that these "alternative" theories defeat federal question jurisdiction. Plaintiffs' Brief at 13-

14, 17. This argument, however, is belied by even a brief examination of the allegations

contained in the Complaint. As set forth below, none of Plaintiffs' purported "alternate" theories

of liability are sufficient to defeat federal question jurisdiction over Plaintiffs' anti-competition

claims.

Plaintiffs claim that the following theories of liability do not require the Court to resolve

federal patent law issues: (1) that Defendants engaged in "bad faith" patent infringement

lawsuits; (2) that Defendants "intentionally manipulated and delayed the acquisition of patents

and timing of interactions with the FDA" for anti-competitive purposes; and (3) that Defendant

Pfizer "engaged in a scheme to leverage its monopoly power." Plaintiffs' Brief at 17-20.

---

....Continued

Supp. 2d 1042, 1046-47 (D. Kan. 1999) (alleging that one of the defendants executed a stipulation agreement with a generic competitor).

As discussed below, Plaintiffs have not alleged that any such anti-competitive agreement existed, and have failed to allege any alternate theory that does not require resolution of a federal patent law issue. Accordingly, the cases cited by Plaintiffs offer no support for Plaintiffs' argument that federal question jurisdiction is not proper here, and Plaintiffs' motion to remand should be denied.

- 23 -

Contrary to Plaintiffs' claims, the first alleged "alternate" theory of liability – the filing of bad faith lawsuits – does not defeat federal question jurisdiction here. As discussed above, Judge Lifland recently held (in the related Neurontin *Antitrust MDL*) that allegations of bad faith or sham patent infringement lawsuits require the resolution of substantial issues of federal patent law. *Antitrust MDL – Sall/Zafarana* at 16; *see also Stuart* at 15 ("A determination of sham litigation requires first and foremost resolution of an essential question of federal patent law."). Accordingly, this theory of liability does not avoid federal question jurisdiction over Plaintiffs' state law anti-competition claims.

In addition, the second "alternate" theory alleged by Plaintiffs – the delay in acquiring and listing a particular patent – does not defeat federal question jurisdiction because it is based on allegations in Plaintiffs' Brief that do not appear anywhere in the Complaint. *See* Plaintiffs' Brief at 18 (discussing Defendants' acquisition and listing of "what is now known as the 482 patent"). In any event, "[t]he propriety of listing patents in the Orange Book ... depends directly on the scope of the claims of the patents" and involves a substantial question of federal patent law. *Antitrust MDL – Sall/Zafarana* at 18. Thus, despite the improper and belated nature of this purported "alternate" theory of liability, it does not defeat federal question jurisdiction here.

Similarly, the third "alternate" theory alleged by Plaintiffs – that Defendant Pfizer attempted to use its monopoly power with respect to Neurontin "to expand its market share and power related to other products, such as Lyrica or pregabalin" – does not defeat federal question jurisdiction because it too is based on allegations in Plaintiffs' Brief that go beyond what is alleged in the Complaint. *See* Plaintiffs' Brief at 20. Moreover, Plaintiffs allege that Defendant Pfizer perpetrated this "scheme to leverage its monopoly power" by filing sham patent infringement lawsuits (*id.*), and as discussed above, these types of allegations require the Court

- 24 -

to decide substantive issues of federal patent law.  In addition, courts have clearly held that the

ability to "raise, fix, maintain and stabilize Neurontin prices at artificial and supercompetitive

levels …. would not in and of itself demonstrate an unlawful monopoly if Defendants owned a

valid and enforceable patent for Neurontin," *Stuart* at 16, and "'a [valid] patent holder is

permitted to maintain his patent monopoly through conduct permissible under the patent laws'

and, therefore, <u>plaintiffs were required to show that the defendants' conduct was impermissible</u>

<u>under the patent laws</u>." *Antitrust MDL – Sall/Zafarana* at 13 (citation omitted; emphasis added).

Accordingly, this purported "alternate" theory of liability involves substantial questions of

federal patent law, and does not undercut federal question jurisdiction over Plaintiffs' state law

anti-competition claims.

The only additional theory advanced by Plaintiffs is that Defendants have unlawfully

promoted Neurontin for non FDA-approved uses.  *See* Compl. ¶¶ 34-41.  For example, Plaintiffs

claim that Defendants engaged in a "false, deceptive and misleading marketing campaign" and

made payments directly to doctors to encourage the prescription of Neurontin for non FDA-

approved uses.  *See id.*; *see also* Plaintiffs' Brief at 21-23.  This, of course, is not an alternative

theory on which Plaintiffs could recover on the claims about preventing generic competition and

the claimed anti-competition damages, which arise from the lack of generic competition (*e.g.*,

Counts I to XXIV).  Instead, it is an entirely separate claim by which plaintiffs seek to recover

alleged losses resulting from the claim that Plaintiffs paid for the unapproved use of Neurontin.

That is plain from the fact that even if successful, Plaintiffs' supposed "alternate" theory would

only provide damages to those who bought Neurontin for unapproved uses (or based on "illegal"

promotion), and such Plaintiffs presumably would seek their entire purchase price as damages.

This theory would provide no relief for those who bought Neurontin for FDA approved uses, but

- 25 -

who claim they overpaid due to lack of generic competition (these plaintiffs would presumably seek only a part of this purchase price as damages).

Indeed, this precise issue was before the *Antitrust MDL – Sall/Zafarana* Court, which found that the claims for purchase of Neurontin for non-FDA approved uses were "qualitatively distinct" from claims brought for allegedly inflated prices paid for Neurontin for its approved uses (due to exclusion of generics). Thus, they did not "create an alternate theory of recovery for Plaintiffs' claims relating to [Defendants' alleged interference with or prevention of] generic competition," and combining these claims with the anti-competition claims could not defeat federal jurisdiction. *Id.* at 18 (emphasis added). Consequently, in this case, as in *Zafarana*, Plaintiffs have failed to allege any alternative theories of liability with respect to their anti-competition claims that would defeat federal question jurisdiction.

The federal jurisdictional issue here, the absence of alternatives which do not implicate federal law, and the role of federal law and federal decision-making in this case is critical to the federal policy articulated by the Supreme Court in *Christiansen,* as the Court in *Tamoxifen-Citrate* held:

> The policy behind *Christianson* is that the patent law is intended to be applied uniformly by the Federal Courts. *If state courts were able to make rulings on any anti-competitive theory that could nullify patent rights, uniformity of the patent law would be a mirage.* Thus, the Court concludes that plaintiffs' claims necessarily depend upon the resolution of a substantial question of federal patent law.

222 F. Supp. 2d at 333 (emphasis added) *See also* U.S.C.A. Const., Art. I, § 8. This is the critical reason that this Court has federal question jurisdiction here, and accordingly the Motion for Remand should be denied due to the existence of substantial questions of federal patent law.

- 26 -

### 3. Plaintiffs' Consumer Claims Cannot Be Resolved Without Deciding Substantial Issues Under The Food, Drug And Cosmetic Act

In addition to raising questions of federal patent law (particularly in the anti-competition claims), Plaintiffs' Complaint also raises questions of federal law under the FDCA in the consumer claims (Counts XXV to XLV). For this additional and independent reason, federal question jurisdiction exists, although the Court need not reach this issue if it concludes that this Court has federal question jurisdiction over the anti-competition claims due to the substantial patent law issues.

### a. The Consumer Claims in the Complaint Also Raise Substantial Questions of Federal Law Under the Food, Drug and Cosmetic Act

Plaintiffs' Complaint demonstrates that Plaintiffs' right to relief under their state law claims turns on whether Defendants violated federal statutes and regulations governing pharmaceutical promotion. As Plaintiffs undoubtedly realize, the authority to regulate the promotion and marketing of prescription drugs resides with the FDA. Consequently, many of the allegations in the Complaint directly implicate FDA regulations and the FDCA.[13] For example, Plaintiffs allege that Defendants, in an effort to increase sales, illegally marketed Neurontin. Compl. ¶ 32. In so doing, Defendants allegedly sponsored continuing medical education seminars and provided grants for the writing of articles to be submitted to peer-reviewed journals. *See* Compl. ¶¶ 40A, 37C. Such conduct, it is clear, may be deemed wrongful only insofar as it runs counter to federal regulations governing the promotion of pharmaceuticals.

---

[13] For example, the FDCA charges the FDA with the duty to ensure that "drugs are safe and effective." 21 U.S.C. § 393(b)(2)(B). As part of the FDA's responsibility for determining the safety and efficacy of drugs, it is responsible for the regulation and approval of prescription drug labeling. Drug labeling includes "all written, printed, or graphic matter" marketing the drug, 21 C.F.R. § 1.3(a), and the FDA has set forth detailed requirements for the contents of advertising for prescription drugs. *See* 21 C.F.R. §§ 202, 203; 21 U.S.C. § 321(m)(1)-(2). All drug advertisements must be submitted to the FDA and be consistent with the drug label or any changes to that label. *See* 21 C.F.R. § 214.550; 21 C.F.R. 314.70(c); 21 C.F.R. § 314.81(b)(3).

- 27 -

Indeed, the Complaint's references to the FDA's "Orange Book" further illustrates the role federal regulations has in Plaintiffs' theory of liability here. Compl. ¶ 48. As a result, because Plaintiffs themselves have put questions of federal importance at the center of these claims, they may not now attempt to avoid this Court's jurisdiction.

Plaintiffs state law causes of action are premised on alleged violations of federal regulations and statutes. The gravamen of the consumer protection claims is that, contrary to federal law and regulations, Defendants engaged in FDA-prohibited promotion which injured Plaintiffs. *See* Compl. ¶¶ 37, 40. To adjudicate these claims, it appears unavoidable that the Court must determine the parameters of the FDCA and FDA regulatory prohibitions on such marketing and promotion.

Indeed, federal law governs the content of representations or claims made by pharmaceutical manufacturers, including scientific statements and information provided on prescription drug labels. Because the labeling and branding of prescription drugs lie within the province of federal regulation, an examination of Plaintiffs' allegations will unavoidably entail an analysis of the scope and breadth of FDA regulations and the FDCA regarding the promotion of prescription drugs by pharmaceutical companies. For example, Plaintiffs' allegations will require a determination as to what activities qualify as wrongful promotion and thus violate federal law. The Court will therefore be unable to analyze the propriety of Plaintiffs' claims without first analyzing what constitutes alleged unlawful promotion of pharmaceuticals under the federal regulatory regime.

Furthermore, Plaintiffs cannot avoid federal question jurisdiction over their claims by now disclaiming their reliance on the FDCA, which governs off-label promotion of prescription drugs. Plaintiffs assert that they "have alleged only state law causes of action, and …

- 28 -

Defendants' liability may be found independent of the resolution of any federal issue." Plaintiffs Brief at 10.  But this argument is belied by the Complaint, which is filled with allegations that Defendants promoted Neurontin in ways that would constitute only violations of federal law.  In that regard, Plaintiffs' Complaint is artfully pled to avoid specific reference to the FDCA and other pervasive federal regulation of drug marketing.  However, the *Antitrust MDL – Sall/Zafarana* opinion teaches that removal cannot be avoided by failing to plead necessary federal questions:  "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the . . . Complaint." *Id*. at 7.

As set forth above, even such "artful pleading" cannot divorce the Complaint from the pervasive federal regulation of drugs and drug marketing.  Thus, any determination of Plaintiffs' claims, not to mention any requested injunction which may be considered, requires an interpretation of the thicket of FDA regulations that govern the marketing of prescription drugs.

> **b.    Federal Question Jurisdiction in this Case Is Thus Also Proper Based on the Existence of a Substantial Question of Federal Law Under the Food, Drug and Cosmetic Act**

In its most recent pronouncement on the matter, *International College of Surgeons*, the Supreme Court affirmed the fundamental principle that federal jurisdiction may exist when federal questions "were raised by way of a cause of action created by state law." 522 U.S. at 164.  In that case, the plaintiff sued the City of Chicago in state court under a state administrative review law after it was denied permits under local law to develop properties that had been accorded landmark status.  Among plaintiff's claims were allegations that the city's actions were unconstitutional.  Although the action was brought under state law, the Court, in upholding jurisdiction in a federal forum, found that the necessity of evaluating federal constitutional issues satisfied the court's jurisdictional requirements.  Acknowledging that it "is long settled law that a

cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law," the Court pointed to *Franchise Tax Board* in explaining its duty to examine the complaint to determine whether a party's "right to relief under state law requires resolution of a substantial question of federal law." *Id.* at 164 (citations omitted). Unmistakably, therefore, a complaint alleging a state law claim may "arise under" federal law if a substantial federal issue is present in the case.[14]

Other courts have similarly adopted this line of precedent. For example, in *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 95-97 (2d Cir. 2001), the plaintiff, an independent floor broker, sued the New York Stock Exchange ("NYSE") in state court on a variety of state tort theories, alleging that the NYSE had intentionally provided him with incorrect interpretations of federal laws prohibiting unlawful trading in violation of NYSE's own obligations under federal law to ensure that its members comply with the securities laws. The case was removed to federal court and eventually dismissed. *See id.* On review, the Second Circuit determined that removal had been proper, because the "resolution of D'Alessio's claims requires a court to construe federal securities laws and evaluate the scope of the NYSE's duties, as defined under [federal law], in enforcing and monitoring members' compliance with those laws." *Id.* at 101-02. The Court held that "[t]he source of the duty imposed on the NYSE ... is found in federal law" *Id.* at 103. "Thus, it is the propriety of the NYSE's actions, as prescribed under federal law, that is at the heart of D'Alessio's allegations." *Id.*

---

[14] Recently, in *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003), the Supreme Court stated that "a state claim may be removed to federal court in only two circumstances – when Congress expressly so provides ... or when a federal statute wholly displaces the state law cause of action through complete preemption." *Anderson*, however, was discussing the conditions for removal that apply where the complaint does not itself refer to federal law and the defendant has removed in reliance on the well-pleaded complaint doctrine. *Anderson* did not discuss the applicability of its holding to cases, such as this one, where a substantial federal question is presented on the face of the filings in the case. Nor does it cite to, let alone reverse, *City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156 (1997).

In a companion case, *Frayler v. New York Stock Exchange, Inc.*, this Court noted that "the federal issue here is decisive because upon the federal statute's construction depends the vindication of rights and definition of relationship's at the heart of the lawsuit." 118 F. Supp. 2d 448, 450 (S.D.N.Y. 2000), (internal quotations omitted). In *Frayler*, the plaintiff brought an action against the stock exchange for violation of its duty under the Securities and Exchange Act of 1934. *See id.* at 449. An interpretation of the NYSE's duty, this Court found, required construction of federal law in order to establish the plaintiff's right to relief under state law. *See id.* at 450.

Like the allegations in *D'Alessio* and *Frayler*, Plaintiffs' allegations in this case "are rooted in violations of federal law." *D'Alessio*, 258 F.3d at 101. The core underlying premise of Plaintiffs' claims – that Defendants violated FDA regulations by marketing Neurontin for unapproved uses – is indistinguishable, for jurisdictional purposes, from D'Alessio's core claim that the Stock Exchange violated the federal securities laws. Here, as in *D'Alessio*, "it is the propriety of the [defendants'] actions, as prescribed under federal law, that is at the heart of [plaintiff's] allegations." *Id.* at 103. Further, as in *D'Alessio*, where the court found that it needed to construe federal securities laws in order to evaluate the scope of the NYSE's duties, *id.* at 101-02, Plaintiffs' Complaint requires that federal laws and regulations governing prescription drugs be interpreted to determine the content of the allegations.

Courts also consider the nature of the federal interest in making jurisdictional decisions. *See, e.g., Frayler*, 118 F. Supp. 2d at 451 (jurisdictional determination accompanied by finding that the regulation of the nation's securities markets were "a matter of intense federal concern"). As explained by the Fourth Circuit in *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (citing *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat) 304, 347-48 (1816)), the "need for

- 31 -

uniformity" with respect to a federal statutory regime "becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts" in circumstances "[w]here the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime." *See also Milan Exp. Co. v. Western Sur. Co.*, 886 F.2d 783, 787 (6th Cir. 1989) ("[P]laintiffs' claims... should not be subjected to the peculiarities of interpretation in fifty different state forums."). Additionally, in *Frayler* this Court pointed to *Merrell Dow* as "suggesting that 'our § 1331 decisions can be understood as an evaluation of the nature of the federal interest at stake'" before finding that "whether the [defendant in *Frayler*] properly interpreted § 11(a) of the Exchange Act is wholly a matter of federal law and, indeed, a matter of intense federal concern given the importance of federal regulation of the stock market." *Frayler*, 118 F. Supp. 2d at 450-51.

Moreover, it cannot be forgotten that Plaintiffs ask the Court to enjoin "the illegal activities alleged." Compl., Prayer for Relief. Given the extensive federal regulation of drug marketing, no such injunction can even be considered without deciding what federal law requires, what it permits and what it prohibits. Additionally, as in *Frayler*, the federal interest at issue here, namely the enforcement of the FDCA and the regulation of the prescription drug industry by the FDA, is "a matter of intense federal concern." 118 F. Supp. 2d at 451.

        c.    **Contrary to Plaintiffs' Argument, the Underlying Principles of *Franchise Tax Board* Continue to Apply to the Concept of Substantial Question of Federal Law**

In connection with the issue of a federal question under the FDCA, Plaintiffs also argue that the principles of *Franchise Tax Board* have been significantly reined in by the Supreme Court's holding in *Merrell Dow* by asserting that the lack of a private cause of action under a federal law strongly suggests that a substantial federal question does not exist. Plaintiffs' Brief at 11, 12. This argument is incorrect.

- 32 -

1133729v3

First, to read *Merrell Dow* with the formalism that Plaintiffs suggest is to fail to appreciate the circumstances of that case. In that case, the plaintiff relied on the violation of a federal guideline to establish a rebuttable presumption in connection with a common law negligence claim. *See Merrell Dow*, 478 U.S. at 806; *Smith v. Indus. Valley Title Ins. Co.*, 957 F.2d 90, 95 (3d Cir. 1992) (noting that *Merrell Dow* "did not overrule the Supreme Court's earlier decisions in *Smith* and *Franchise Tax Board* – both of which established more expansive standards for federal jurisdiction.") (Cowen, J., dissenting). Combined with the fact that the FDCA provided no private right of action, the peripheral nature of the federal issue was deemed too insubstantial to merit federal jurisdiction. *See Merrell Dow* at 814. But unlike *Merrell Dow*, the federal question here is not simply threshold because it serves a far more significant role than providing a mere presumption in connection with a negligence claim. Instead, Plaintiffs have asserted claims whereby a violation of the FDCA is, allegedly, an unfair consumer practice actionable under state law.

Second, contrary to Plaintiffs' contention, the absence of a private right of action does not bar federal jurisdiction under the substantial federal question doctrine. As the Supreme Court in *Merrell Dow* pointed out, federal jurisdiction is not subject to an automatic test, but rather demands practicality and necessity and a "common-sense accommodation of judgment to kaleidoscopic situations" when construing the jurisdictional statute. *See* 478 U.S. at 813 (citing *Franchise Tax Bd.*, 463 U.S. 1, and *Gully*, 299 U.S. at 117-18). Other courts have followed this guidance and found jurisdiction over state law claims that implicate a federal interest even where a private right of action is lacking. *See West 14th St. Comm. Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987) (holding that even without a private cause of action under federal law "we conclude that the federal element in plaintiffs' state cause of action would still

be sufficiently substantial to confer arising under jurisdiction"); *Marcus v. AT&T Corp.*, 138

F.3d 46, 55-56 (2d Cir. 1998) (approving denial of motion to remand where the plaintiffs' breach

of warranty claim under state law necessarily raised a substantial federal question, because

defendant's contractual obligations were set by a tariff filed with the Federal Communications

Commission); *Smith*, 957 F.2d at 96 (noting that too much weight is accorded the "rigid rule"

that a private right of action be a prerequisite of federal question jurisdiction and "too little

weight [is given] to other important federal interests which are necessarily implicated by federal

question jurisdiction.") (Cowen, J., dissenting).

  Moreover, to the extent *Merrell Dow* can be read to require the existence of a private

right of action in order to determine whether a federal issue is substantial, one circuit court noted

that *Merrell Dow* "looked at substantiality with narrowed eyes." *West 14th St.*, 815 F.2d at 196.

In discussing *Merrell Dow*, that court found that the federal statute at issue was

> merely incorporated by reference as a standard of conduct in a state
> negligence action. Here the situation is quite different. In
> construing the [federal statute] in a state cause of action, the federal
> issue is decisive because upon that Act's construction the
> vindication of rights and definition of relationships <u>created by
> federal law</u> depends.

*Id.* (emphasis in original). Accordingly, "[i]n light of this qualitative difference" the federal

ingredient in *West 14th St.* was found to be sufficiently substantial despite the absence of a

private right of action. *Id.*; *but see Smith v. Indus. Valley Title Ins. Co.*, 957 F.2d 90 (3d Cir.

1992) (following *Merrell Dow* in remanding a case alleging state law claims but requiring

interpretation of federal tax code).

  Other courts have similarly found federal question jurisdiction in the absence of a private

right of action. *See, e.g., Ormet Corp.*, 98 F.3d at 806-07 (concluding that the substantial federal

question doctrine applied where the plaintiff contended it was entitled to particular share of

- 34 -

1133729v3

emission allowances issued by the Environmental Protection Agency because it was an "owner" as the resolution of the dispute required an interpretation and application of the federal act to the facts of the action); *Milan Exp.*, 886 F.2d at 787 (distinguishing *Merrell Dow*); *Regents of Univ. of Minnesota v. Glaxo Wellcome, Inc.*, 58 F. Supp. 2d 1036, 1038 (D. Minn. 1999) ("[F]ederal courts have exclusive jurisdiction over state law causes of action in which a substantial question of federal … law is pleaded."); *see also U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917 (5th Cir. 2001); *Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997); *Drawhorn v. Quest Comm. Int'l, Inc.*, 121 F. Supp. 2d 554, 560 n.6 (E.D. Tex. 2000) ("In this case the defendants have not contended that there are any private rights of action under the various statutes that allegedly give the defendants rights in the plaintiffs' land.  Instead, the defendants have argued that the state law claims all involve substantial federal issues.  Thus, the reasoning that applied in *Merrell Dow* is not applicable here.").

        In light of this case law, as well as the Supreme Court's own guidance in *Merrell Dow* that federal jurisdiction demands a flexible analysis, Plaintiffs' assertion that the lack of a private right of action in the FDCA precludes federal jurisdiction is mistaken.  Furthermore, this is not a case where the federal question is simply threshold, preliminary or collateral to the resolution of state claims.  The alleged scheme to promote Neurontin through continuing medical education seminars and for non-FDA approved uses revolves around federal regulations governing the promotion of prescription drugs.  The question of whether Defendants' activities violated federal regulations and statutes governing off-label promotion of prescription drugs is not only crucial to Plaintiffs' claims under state law, but is the very essence of those claims.  The centrality and substantiality of the federal FOCA question presented by Plaintiffs' claims demonstrates that this

1133729v3

Court has federal question jurisdiction. For this additional and independent reason, the Court

should deny remand to state court.

## V.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court defer

ruling pending the MDL transfer or, in the alternative, deny Plaintiffs' motion to remand this

action to the Law Division of the Superior Court of New Jersey, Bergen County.

                                    MONTGOMERY, MCCRACKEN,
                                       WALKER & RHOADS, LLP

                                    *Attorneys for Defendant Pfizer Inc.
                                    and Warner Lambert)*


Dated: February 11, 2005            By:    s/RG Placey
                                           John E. Caruso (JC-9283)
                                           Richard G. Placey (RP-0285)
                                           John W. Frazier, IV (admitted in PA only)


Of Counsel:

James P. Rouhandeh
Erick M. Zissu
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

1133729v3

Court has federal question jurisdiction. For this additional and independent reason, the Court

should deny remand to state court.

## V.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court defer

ruling pending the MDL transfer or, in the alternative, deny Plaintiffs' motion to remand this

action to the Law Division of the Superior Court of New Jersey, Bergen County.

MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP

*Attorneys for Defendant Pfizer Inc.
and Warner Lambert)*

Dated: February 11, 2005            By: _s/RG Placey_____

                                        John E. Caruso (JC-9283)
                                        Richard G. Placey (RP-0285)
                                        John W. Frazier, IV (admitted in PA only)

Of Counsel:

James P. Rouhandeh
Erick M. Zissu
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

- 36 -

1133729v3

**MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP**
(A LIMITED LIABILITY PARTNERSHIP FORMED IN PENNSYLVANIA)
BY: John E. Caruso (JC-9283) and Richard G. Placey (RP-0285)
457 HADDONFIELD ROAD, 6TH FLOOR
CHERRY HILL, NJ 08002
(856) 488-7700
ATTORNEYS FOR DEFENDANTS PFIZER INC. and WARNER-LAMBERT

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ASSURANT HEALTH, INC., et al. | : | Civil Action:  2:05-cv-0095 |
| | : | |
| Plaintiffs, | : | Hon. Joel A. Pisano, U.S.D.J. |
| | : | Hon. Madeline C. Arleo, U.S.M.J. |
| v. | : | |
| | : | |
| PFIZER INC., et al. | : | |
| Defendants. | : | **CERTIFICATE OF SERVICE** |

I, Richard G. Placey, Esquire, hereby certify that, as agreed by counsel, on this date I caused a true and correct copy of (1) the Memorandum of Law of Defendants Pfizer Inc. and Warner-Lambert Company in Opposition to Plaintiffs' Motion to Remand and in Support of Cross Motion to Defer Ruling on Remand Pending MDL Transfer, (2) the Certification of Richard G. Placey, Esquire in Support of the Memorandum of Law of Defendants' Pfizer Inc. and Warner-Lambert Company in Opposition to Plaintiffs' Motion to Remand and in Support of Cross Motion to Defer Ruling on Remand Pending MDL Transfer, along with Exhibits, (3) proposed form of Order and (4) Notice of Cross-Motion to Defer Ruling on Remand Pending MDL Transfer to be served via Express Mail, overnight delivery, upon the following interested parties at the addresses listed below:

1136126v1

David J. Novack, Esquire
BUDD LARNER
150 JFK Parkway
Short Hills, NJ 07078

W. Scott Simmer, Esquire
Hardy Vieux, Esquire
ROBINS, KAPLAN, MILLER
& CIRESI, L.L.P.
1801 K Street, N.W., Suite 1200
Washington, D.C. 20006

Annamarie A. Daley, Esquire
Mark Ireland, Esquire
Sonya C. Seidl, Esquire
ROBINS, KAPLAN, MILLER
& CIRESI, L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

Paul Corcoran, Esquire
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Scott A. Edelman, Esquire
Hung Ta, Esquire
Milbank, Tweed, Hadley
& McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

John A. Boyle, Esquire
Marino & Associates, P.C.
One Newark Center
9th Floor
Newark, New Jersey 07102-5211

I also certify that on this same date, I caused to be served copies of those documents

(without exhibits) via e-mail to the following e-mail addresses:

Dnovack@budd-larner.com

RCampione@budd-larner.com

WSSimmer@rkmc.com

AADaley@rkmc.com

pcorcoran@dglaw.com

HTa@milbank.com

jboyle@khmarino.com

s/ RGPlacey
_____
Richard G. Placey

Dated:   February 11, 2005

1136126v1