# EXHIBIT A

Case 1:04-cv-10981-PBS   Document 488-2   Filed 09/25/2006   Page 1 of 14

1/20/2006 Ford, Milam W. (MDL)

```
 1              UNITED STATES DISTRICT COURT
 2              DISTRICT OF MASSACHUSETTS

 3              _____

                In re:  NEURONTIN MARKETING
 4              AND SALES PRACTICES LITIGATION
                                                    MDL Docket
 5              _____    No. 1629
 6              THIS DOCUMENT RELATES TO:            Master File
                                                    No. 04-10981
                _____
 7

                HARDEN MANUFACTURING CORPORATION;   Judge Patti
 8              LOUISIANA HEALTH SERVICE INDEMNITY  B. Saris
                COMPANY, dba BLUECROSS/BLUESHIELD
 9              OF LOUISIANA; INTERNATIONAL UNION
                OF OPERATING ENGINEERS, LOCAL NO.
10              68 WELFARE FUND; ASEA/AFSCME LOCAL
                52 HEALTH BENEFITS TRUST; GERALD
11              SMITH; and LORRAINE KOPA, on behalf
                of themselves and all others
12              similarly situated V. PFIZER INC.
                and WARNER-LAMBERT COMPANY
13              _____
14              THE GUARDIAN LIFE INSURANCE COMPANY
                OF AMERICA V. PFIZER INC. and AETNA,
15              INC. V. PFIZER INC.
16                      January 20, 2006
                        8:35 a.m.          VOLUME II
17
18              Deposition of BlueCross BlueShield of
19       Louisiana, through its representative, MILAM W.
20       FORD, taken by Defendants, held at the offices
21       of McGlinchey Stafford, 301 Main Street, 14th
22       Floor, Baton Rouge, Louisiana, before Jan
23       DiCicco, a Shorthand Reporter within and for the
24       State of Louisiana.
25
```

1/20/2006 Ford, Milam W. (MDL)

```
1                        INDEX
2          INDEX........................................ 298
3          APPEARANCES.................................. 299
4          STIPULATION.................................. 300
5          CERTIFICATE.................................. 474
6
7          EXAMINATION
8          BY MR. MURRAY................................ 301
9
10         EXHIBITS
11         Exhibit 9.................................... 312
12         Exhibit 10................................... 326
13         Exhibit 11................................... 329
14
15
16
17
18
19
20
21
22
23
24
25
```

**1/20/2006 Ford, Milam W. (MDL)**

```
 1              APPEARANCES:
 2         DUGAN & BROWNE, PLC
           Attorneys for Class Plaintiffs
 3              650 Poydras Street
                Suite 2150
 4              New Orleans, Louisiana  70130
 5         BY:  DOUGLAS R. PLYMALE, ESQ.
                   -AND-
 6              JAMES DUGAN, ESQ.
 7         BLUECROSS BLUESHIELD OF LOUISIANA
           Class Plaintiffs
 8              5525 Reitz Avenue
                Baton Rouge, Louisiana  98029
 9
           BY:  CHARLES ANDREW O'BRIEN, ESQ.
10
11         DAVIS POLK & WARDWELL
           Attorneys for Defendants
12              450 Lexington Avenue
                New York, New York  10017
13
           BY:  PATRICK J. MURRAY, ESQ.
14                  -AND-
                MATTHEW B. ROWLAND, ESQ.
15
      REPORTED BY:
16
           JAN DICICCO
17         CERTIFIED COURT REPORTER
18
19
20
21
22
23
24
25
```

```
 1                    STIPULATION
 2            It is stipulated and agreed by counsel
 3    for the parties that the deposition of BlueCross
 4    BlueShield of Louisiana, through its
 5    representative, MILAM W. FORD, is hereby taken
 6    pursuant to Rule 30(b)(6) of the Federal Rules
 7    of Civil Procedure for all lawful purposes;
 8            That the formalities, save those as to
 9    the reading and the signing of the deposition by
10    the witness, are specifically waived;
11            That all objections, save those as to
12    the form of the questions and responsiveness of
13    the answers, are hereby reserved until such time
14    as this deposition, or any part thereof, may be
15    used or sought to be used in evidence.
16            Jan DiCicco, Certified Court Reporter
17    in and for the State of Louisiana, officiated in
18    administering the oath to the above-named
19    witness.
20                      *****
21                    MILAM W. FORD
22    BlueCross BlueShield of Louisiana, 5525 Reitz
23    Avenue, Baton Rouge, Louisiana, 70809, after
24    first being duly sworn by the Court Reporter,
25    did hereby testify as follows:
```

```
 1      to either.
 2          Q.   Is that true with respect to its
 3      off-label use to treat pain?
 4          A.   Yes.
 5          Q.   Postherpetic neuralgia?
 6          A.   No.
 7          Q.   Restless leg syndrome?
 8          A.   Yes.
 9          Q.   Diabetic peripheral neuropathy?
10          A.   Yes.
11          Q.   Social phobia?
12          A.   Yes.
13          Q.   Panic disorder?
14          A.   Yes.
15          Q.   Migraine headache?
16          A.   Yes.
17          Q.   Monotherapy for epilepsy?
18          A.   Yes.
19          Q.   Bipolar disorder?
20          A.   Yes.
21          Q.   And any other uses?
22          A.   Yes.
23          Q.   And has Louisiana BlueCross's P & T
24      committee or its PBM's performed any analysis
25      regarding whether Neurontin provides a medical
```

```
 1   benefit for its off-label uses?
 2           MR. PLYMALE:
 3                   Objection to the extent it
 4   requires speculation.
 5           THE WITNESS:
 6                   Is the question has BlueCross's
 7   PBM ever performed any of those analyses?
 8   BY MR. MURRAY:
 9      Q.   Are you aware of any analysis to that
10   extent, any type of analysis regarding whether
11   Neurontin provides a medical benefit that's been
12   performed by either Louisiana BlueCross's P & T
13   committee or by its PBM's?
14           MR. PLYMALE:
15                   Objection.  Asked and answered.
16           THE WITNESS:
17                   Not by the P & T committee.  I'm
18   not aware of any such information from either
19   the PBM's.  I think I stated yesterday that in
20   the quarterly meetings that were held with
21   Medco, it was possible that there might have
22   been a footnote or bullet somewhere, but it
23   certainly wasn't an extensive or, it would have
24   been more of an afterthought if it exists at
25   all.  It's not the central part of any review by
```

```
 1    BlueCross or request for information or data.
 2    BY MR. MURRAY:
 3         Q.   Has Louisiana BlueCross received any
 4    information regarding whether Neurontin was
 5    effective for any of its members whose claims it
 6    paid?
 7              MR. PLYMALE:
 8                   Objection.
 9              THE WITNESS:
10                   Has BlueCross received any
11    information regarding the efficacy of the drug
12    for its members?
13    BY MR. MURRAY:
14         Q.   For those individuals.
15         A.   No.
16         Q.   So does Louisiana BlueCross know in
17    which cases Neurontin was effective for its
18    members?
19         A.   No.
20         Q.   How would Louisiana BlueCross go about
21    finding this out?
22         A.   It would be very difficult through
23    claims data.  About the only way would be to
24    talk to the prescribing physicians or patients
25    themselves.
```

```
 1      Q.   Would there be any documents or records
 2   that Louisiana BlueCross could go to that also
 3   might be relevant to determining whether or not
 4   the drug was effective for the individuals who
 5   took it?
 6           MR. PLYMALE:
 7                Objection.  Requires medical
 8   conclusion in effectiveness.
 9           THE WITNESS:
10                No.  I'm not aware of any
11   documents we could go to to find that out in
12   BlueCross.
13   BY MR. MURRAY:
14      Q.   Based upon your experience as a
15   pharmacist, do you know whether or not going to
16   the medical records for those individuals would
17   allow one to make this determination or at least
18   get relevant information to the determination?
19           MR. PLYMALE:
20                Objection.
21           THE WITNESS:
22                Going to a specific patient's
23   medical records, if you mean the medical records
24   that a prescribing physician might keep in their
25   office, that would probably be the best written
```

```
 1   source, assuming that doctor documented that.
 2   BlueCross typically has electronic, electronic
 3   records, but typically not as complete as the
 4   prescribing physicians records would be.
 5   BY MR. MURRAY:
 6        Q.   What do you mean by electronic records?
 7   Electronic records of the patient's medical
 8   records?
 9        A.   No.  No.  Not that sophisticated.  Just
10   really more claims based information, you know,
11   when a physician bills for an office visit, to
12   the extent that they put a diagnosis code on
13   there, just the typical health insurance type
14   electronic records.
15        Q.   Do you know whether Louisiana BlueCross
16   has a right to receive from physicians the
17   medical records of the members whose claims it
18   pays?
19             MR. PLYMALE:
20                  Objection.  Requires a legal
21   conclusion.
22             THE WITNESS:
23                  It's my understanding that
24   occasionally medical records are requested.
25   That's typically done by the case management or
```

1/20/2006 Ford, Milam W. (MDL)

```
 1   utilization management departments.  And they
 2   are requested in the context of making coverage
 3   decisions.  But they would not request the
 4   entire medical record.  Only the relevant part
 5   of the medical record required to make whatever
 6   decision they're making at the time.
 7   BY MR. MURRAY:
 8       Q.   Do you know if Louisiana BlueCross's
 9   PBM's have any information regarding Neurontin's
10   efficacy for Louisiana BlueCross's members?
11            MR. PLYMALE:
12                 Objection.  Calls for speculation.
13            THE WITNESS:
14                 Am I aware of any information that
15   PBM would have created specific to BlueCross
16   regarding Neurontin and its use?
17   BY MR. MURRAY:
18       Q.   I'm sorry.  Could you say that again.
19       A.   Is the question, am I aware of any
20   documents that the PBM would have created
21   specific to Neurontin for BlueCross's use?
22       Q.   Not limited to that.  I mean, if the
23   PBM had information, other information regarding
24   Neurontin's efficacy for Louisiana BlueCross's
25   members, I would want to know that as well.
```

```
1       A.   The type of information that is shared
2  in a P & T committee, as discussed yesterday,
3  would be a drug monograph or a therapeutic class
4  review.  I would, I know that both Medco and
5  Express Scripts do have monographs and therapy
6  class reviews for the drug Neurontin and for the
7  therapy class, the anti-epileptic drug class.
8       Q.   But those wouldn't be for information
9  about the efficacy for Louisiana BlueCross's
10 members themselves, would they?
11      A.   No.  They would not.
12      Q.   And are you aware that they have any
13 such information?
14      A.   Oh.  Specific to our members, no.
15      Q.   Okay.  So Louisiana BlueCross doesn't
16 have any information regarding whether Neurontin
17 was effective for the patients whose claims are
18 the basis of this suit, correct?
19           MR. PLYMALE:
20               Objection.
21           THE WITNESS:
22               That's correct.
23 BY MR. MURRAY:
24      Q.   We've touched on this previously, but I
25 want to make sure we cover it comprehensively.
```

```
 1    During the relevant period, were Neurontin's
 2    off-label uses discussed at Louisiana BlueCross?
 3            MR. PLYMALE:
 4                    Objection. Asked and answered.
 5            THE WITNESS:
 6                    No. Not that I'm aware of.
 7    BY MR. MURRAY:
 8        Q.   Do you know whether this P & T
 9    committee or the physicians advisory committee
10    discussed those uses before you joined the
11    company?
12        A.   I don't believe that they did. I don't
13    know -- I can't say that I'm a hundred percent
14    sure. I, however, I have no minutes or records
15    or documents that shows the drug was reviewed.
16    The drug was on formulary when Medco was
17    performing the P & T functions for BlueCross.
18            And then when BlueCross moved to a
19    custom formulary, there was no movement or
20    discussion of changing the formulary status or
21    authorization requirements, et cetera, for
22    Neurontin. To my knowledge, it remained a
23    formulary drug until the generic came out.
24        Q.   During the period in which Medco was
25    the PBM for Louisiana BlueCross, was Medco
```