UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
             :

In re: NEURONTIN MARKETING, SALES     :
PRACTICES AND PRODUCTS LIABILITY    :
LITIGATION                 :
             :  MDL Docket No. 1629
THIS DOCUMENT RELATES TO:       :  Master File No. 04-10981
             :  Judge Patti B. Saris
JENNIFER MECIJA, et al. v. PFIZER INC. et  :  Mag. Judge Leo T. Sorokin
al.                 :
             :
Docket No. 1-06-cv-11445-PBS      :
             :
             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' OPPOSITION TO MOTION TO REMAND
## BY CO-DEFENDANT JAMES HALL

Defendants Pfizer Inc., Parke-Davis, Warner-Lambert Company and Warner-Lambert
company LLC (collectively, "defendants") submit this memorandum of law in opposition to the
Motion to Remand ("motion") filed by co-defendant Dr. James Hall ("Dr. Hall"). Defendants
respectfully submit that Dr. Hall's remand motion should be denied. Dr. Hall is a *defendant* in
this case. Plaintiffs themselves have not moved to remand their case to state court in California,
nor have plaintiffs opposed transfer to the Neurontin MDL.

Dr. Hall's motion should be denied because he was fraudulently joined solely in an
attempt to defeat federal jurisdiction. According to plaintiffs' own complaint, there is no
reasonable basis for any claim against Dr. Hall because he was unaware of any risk associated
with Neurontin's off-label use. Moreover, plaintiffs' claims against Dr. Hall are time-barred.
For these two independent reasons, Dr. Hall's motion should be denied.

First, plaintiffs have no reasonable basis for any claim against Dr. Hall because –
according to plaintiffs' own complaint – Dr. Hall has not breached any duty of care. Indeed, Dr.

1

Hall's Motion does not even take issue with this incontrovertible proposition that appears prominently in defendants' Notice of Removal. Plaintiffs' complaint repeatedly alleges that physicians like Dr. Hall had no knowledge of the alleged risks of Neurontin because defendants allegedly kept the risks a secret when they allegedly promoted Neurontin for various off-label uses. Because the risks were "*unknown and unknowable by the medical profession*," Compl. ¶ 88, plaintiffs' purported malpractice claim against Dr. Hall cannot succeed. Plaintiffs' complaint itself eviscerates any negligence claim against Dr. Hall and shows that Dr. Hall has been fraudulently joined to this action.

Second, plaintiffs' claim against Dr. Hall is time-barred. Although Dr. Hall asserts that plaintiffs' claim against him is timely and does not violate the California Code of Civil Procedure, it is clear from the fact of the complaint that plaintiffs failed to comply with the simple but strict timeliness requirements of section 364 and consequently the limitations period applicable for any claim against Dr. Hall has run and was never tolled.

Defendants wholeheartedly agree that Dr. Hall does not belong in this case; he was added solely for purposes of avoiding federal jurisdiction and in a futile effort to keep this case out of the MDL. But because plaintiffs have no reasonable basis for asserting their claim against Dr. Hall, his motion to remand this case to state court should be denied.

## ARGUMENT

This action was removed from the Superior Court for Orange County, California, and transferred to this Court by the Judicial Panel on Multidistrict Litigation. This Court has jurisdiction under 28 U.S.C. § 1332. There is no debate – and Dr. Hall does not contest – that the amount in controversy exceeds $75,000 and that there is diversity of citizenship between all plaintiffs and all "Manufacturing Defendants." The only question is whether Dr. Hall's joinder is fraudulent for jurisdictional purposes.

The joinder of a non-diverse defendant should be disregarded for jurisdictional purposes if there is no reasonable basis for the assertion of a claim against that defendant. *Polyplastics, Inc. v. Transconex, Inc,* 713 F.2d 875, 877 (1st Cir. 1983); *see also Wiles v. Capitol Indem. Corp.,* 280 F.3d 868, 871 (8th Cir. 2002) ("joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants"); *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir. 2001).[1] Here, there are two independent reasons why plaintiffs have no reasonable basis for any claim against Dr. Hall. In his Motion, Dr. Hall does not contest one of these reasons, and the Motion is simply wrong in its discussion of the other.

**I.      Dr. Hall Cannot Be Held Liable For Malpractice For Failing To Warn About Risks That Plaintiffs Allege were Concealed From Him.**

Plaintiffs' complaint alleges that Henry Mecija committed suicide after Dr. Hall prescribed Neurontin to treat Mecija's anxiety and claims that Dr. Hall committed malpractice by failing to warn Mecija of the alleged risk of taking Neurontin. Compl. ¶ 101. However, the complaint does <u>not</u> allege that Dr. Hall knew about any purported risk from taking Neurontin.

---

[1] A party who has been fraudulently joined need not join in a removal petition, and Dr. Hall does not contend that defendants' removal of this case was improper because he did not consent. *Polyplastics,* 713 F.2d at 877; *see United Computer Systems v. AT&T Corp.,* 298 F.3d 756, 762 (9th Cir. 2002).

Nor does it even allege that Dr. Hall should have known about any risk because such a risk was known or even "knowable" by the medical profession. In fact, the complaint alleges the exact opposite and thereby dooms any claim against Dr. Hall.

Plaintiffs' complaint alleges repeatedly that the "Manufacturing Defendants" failed to warn physicians, including Dr. Hall, of the risk of suicide allegedly associated with use of Neurontin. Compl. ¶ 59. In particular, the complaint alleges that the "Manufacturing Defendants:"

- "failed to adequately and properly warn the medical profession . . . of the risks of complications of Neurontin . . .," Compl. ¶ 59;

- "failed to adequately and properly label Neurontin so as to warn the medical profession. . .of the risk of complications of Neurontin. . .," Compl. ¶ 59;

- "failed to adequately warn of the risk of suicide or aggressive, self-destructive behavior . . . " Compl. ¶ 60;

- "misrepresented and disclosed inadequate facts to healthcare professionals…about the danger of using Neurontin." Compl. ¶ 81; and,

- distributed Neurontin "unaccompanied by proper and adequate warnings regarding the above-described potentially life-threatening side effects and related conditions and diseases associated with the use of Neurontin. The warnings given did not accurately reflect the symptoms, scope or severity of such injuries and health risks, notably, the risk of suicide." Compl. ¶ 86.

The sum of these charges is laid out in plain terms: plaintiffs claim that "Neurontin . . . poses unacceptable risks ***unknown and unknowable*** by the medical profession." Compl. ¶ 88 (emphasis added).

It is black-letter law that a viable negligence claim (like malpractice) requires the plaintiff to show that the defendant "knew or should have known of the risk." *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 485 (2001) (distinguishing negligence from strict liability). Conclusory allegations of duty to the patient "do not come close to alleging that [the non-diverse doctor] proximately caused [plaintiffs'] injuries or that he knew or should have known of the risks of

[the drug]." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) (denying remand because non-diverse doctor was fraudulently joined); *see also Spier v. Bayer Corp. (In re Baycol Prods. Litig.)*, No. MDL 1431(MJD), 02-4835, 2003 WL 21223842 (D. Minn. May 27, 2003) (same).

In *Spier*, the court considered a motion to remand where the plaintiff alleged that the non-diverse treating physician knew or should have known of the risks associated with the drug at issue. The court denied the motion because, just like in this case, the complaint stated that the manufacturer had failed to disclose the pertinent information to the doctor:

> Reading the Complaint as a whole, it is clear that the main thrust of this action is that the [defendants] misrepresented [the drug's] risks and failed to adequately warn of such risks. Plaintiff has not included any factual assertions in her Complaint to support the conclusory allegation that [the physician] "knew or should have known" of [the drug's] risks. Her conclusory allegations, however, will not defeat a finding of fraudulent joinder.

*Id*. at *2.

The rationale in *Spier* applies with even greater force in this case. Here, plaintiff's complaint does not even make conclusory allegations that Dr. Hall knew or should have known of the risk about which he allegedly failed to warn Mr. Mecija. Instead, the complaint alleges only in conclusory terms that Dr. Hall breached a duty. Such a general accusation cannot survive in the face of plaintiffs' explicit allegations that the "Manufacturing Defendants" deceived and misled Dr. Hall and other physicians about the very information he supposedly failed to discuss with Mr. Mecija.

The court's analysis in the multidistrict litigation involving the prescription drug Rezulin is equally compelling and shows that based on plaintiffs' own complaint, there is no reasonable basis for any claim against Dr. Hall. In *Rezulin*, plaintiffs sued the drug manufacturer and a local doctor for injuries allegedly sustained by taking a diabetes medication. Defendants removed the case to federal court and asserted that the doctor had been fraudulently joined. Plaintiffs moved to remand, and the court denied the motion because:

> Plaintiffs do not come close to alleging that (the doctor) proximately caused their injuries or that he knew or should have known of the risks of Rezulin. In fact, the assertion that "[d]efendants . . . recklessly, falsely and/or deceptively represented or knowingly omitted, suppressed or concealed facts of such materiality regarding the safety and efficacy of Rezulin from prescribing physicians" refutes the assumption that [the doctor] had knowledge of Rezulin's harmful effects. In short, plaintiffs have failed to state any legally cognizable claim against [the doctor], and this Court holds that he was joined improperly.

*Id.* at 295.

The same *Rezulin* court later denied a similar remand motion on the same basis. The court noted that:

> [I]n light of plaintiff's myriad allegations that the [drug manufacturer] withheld information concerning the risks of Rezulin from physicians and others, an entirely conclusory allegation that the physician failed to warn of risks of Rezulin is insufficient to provide the defendant sufficient notice of the claim against him.

*In re Rezulin Prods. Liab Litig.*, 2003 U.S. Dist. LEXIS 28, at **1-2 (S.D.N.Y. Jan. 6, 2003).

Numerous other courts similarly have denied remand motions in these same circumstances. In *Brown v. Bristol-Myers Squibb Co.*, Civ. Action No. 4:02CV301LN, slip op. at 11-12 (S.D. Miss. Nov. 30, 2002), the court held that the non-diverse doctor was fraudulently joined because "there was no allegation or hint of an allegation in the complaint that [the doctor] knew or should have known of the information that plaintiffs pointedly allege was withheld by the manufacturer defendants." Likewise, the court in *Louis v. Wyeth-Ayerst Pharms., Inc.*, Civ. Action No. 5:00CV102LN, slip op. at **4-5, 9 (S.D. Miss. Sept. 25, 2000) refused to remand an action because the defendants lacked "knowledge or reason to know of any of the dangers associated with the product[s]."[2]

---

[2] The Orders entered in *Louis* and *Brown* are attached as Exhibits A and B, respectively. *See also Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759 (S.D.W.Va. 2003) (finding non-diverse physician was fraudulently joined where plaintiff alleged that the doctor knew or should have known of the drug's dangers but also alleged that the

6

Plaintiffs' complaint affirmatively alleges that physicians did not know of the purported risk. In these circumstances, defendants respectfully submit that the reasoning of the courts cited above is persuasive and that Dr. Hall's joinder is fraudulent. Indeed, the fact that Dr. Hall's motion fails to address this separate and independent basis for concluding that he has been fraudulently joined in this action is yet another reason that his Motion should be denied.[3]

## II.     Plaintiffs Did Not Comply With the Tolling Statute, and the Statute of Limitations on Any Action Against Dr. Hall Expired.

The only basis for remand asserted in Dr. Hall's motion is that plaintiffs' claim against him is not barred by the pertinent statute of limitations. Under California law, plaintiffs had one year from the date of the decedent's death – or until September 30, 2005 – to file their suit against Dr. Hall.[4] Plaintiffs' complaint, however, was not filed until December 2005 and is clearly time barred.

---

manufacturer failed to warn doctors and the public of those dangers); *Flores v. Merck & Co.*, Civ. Action No. C-03-362, slip op. at 2 (S.D. Tex. Mar. 15, 2004) (denying remand where plaintiffs' petition alleged that the non-diverse doctor, as a member of the health care industry, was not made aware of the risks of the drug) (*See* Exhibit C, attached); *Smith v. Bayer Corp.*, (*In re Baycol Prods. Litig.*), No. MDL 1431(MJD), 02-139, 2002 WL 32155268, at *2 (D. Minn. May 24, 2002) (applying California law) (denying remand because pharmacy could not be liable for failing to warn of "unknown risks" where plaintiffs alleged that manufacturer failed to warn doctors and pharmacies of the drug's dangers).

[3] To the extent that plaintiffs' complaint also seeks to claim that Dr. Hall committed malpractice by prescribing Neurontin for an off-label use at a dosage above that described in the labeling, *see* Compl. ¶ 101, that claim is similarly hopeless. First, and as this Court is well aware, "[a] physician may prescribe a legal drug to serve any purpose that he or she deems appropriate, regardless of whether the drug has been approved for that use by the FDA." *Washington Legal Found. v. Henney*, 202 F.3d 331, 333 (D.C. Cir. 2000). Even the complaint acknowledges that a physician is not bound to adhere to "the package insert instructions [and] recommendations" for a medicine, Compl. ¶ 101, and there is nothing wrongful *per se* about off-label prescription. Second, the complaint actually alleges that Dr. Hall prescribed Neurontin for an off-label indication "in reliance upon" Pfizer's allegedly deceptive marketing and promotion. Compl. ¶¶ 51, 52. Again, the complaint charges that Dr. Hall was duped, not that he was careless about "unknown and unknowable" risks.

[4] There is no dispute that California substantive law governs this case because the alleged injury occurred there and plaintiffs' decedent lived there at the time of the injury. *See* Dr. Hall's Mtn. for Remand at 9-11. California Code of Civil Procedure § 340.5 bars an action for injury or death against a healthcare provider for alleged professional negligence if it is not brought within "three years after the date of injury or one year after plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, *whichever occurs first*" (emphasis added). A plaintiff "is charged with 'presumptive' knowledge of his negligent injury, and the

Dr. Hall contends in his motion for remand that plaintiffs' claims against him are timely because on September 29, 2005, plaintiffs' attorney served a "Notice of Intention to Bring Suit" upon him pursuant to California C.C.P. § 364, and therefore the limitations period, which otherwise expired the next day, was tolled for 90 days. Dr. Hall's motion correctly states that C.C.P. § 364(d) tolls the limitations period to a date 90 days after the Notice was served. *Woods v. Young*, 53 Cal. 3d 315, 325 (1991). However, Dr. Hall's motion fails to recognize that the service of such a notice is just the beginning, not the end, of any statute of limitations analysis. There are other requirements for tolling that plaintiffs failed to satisfy, and these omissions eliminate any tolling of the statute of the limitations.

First and foremost, the notice did not toll the limitations period for plaintiffs' purported claim against Dr. Hall because plaintiffs did not comply with C.C.P. section 364(a). Section 364(a) requires "at least 90 days' prior notice of the intention to commence the action." Here, plaintiffs filed the complaint on December 22, 2005, less than 90 days after they served the notice.

As the California Supreme Court explained in *Woods v. Young*, 53 Cal.3d 315, 325 (1991), section 364's 90 day notice period is important and was enacted to provide a physician "*at least*" 90 days notice so that the parties can attempt to avoid or resolve litigation prior to filing. In *Woods*, the Court grappled with reconciling the statutory requirement of 90 days' notice in section 364(a) with the literal application of the provision in section 364(d) that if the notice is properly served, "the time for commencement of the action shall be extended 90 days from the service of the notice." To assure that the physician would receive the full 90 days notice before the plaintiff filed suit, *Woods* interpreted "extended" to mean "tolled." The Court

---

statute commences to run, once he has 'notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation.'" *Gutierrez v. Mofid*, 39 Cal. 3d 892, 896-97 (1985). As set forth more fully in the Pfizer's Notice of Removal, in the face of extensive public information that alleged and discussed a linkage between Neurontin and suicide, Plaintiffs were "on inquiry" of their claim upon decedent's death on September 30, 2004 and therefore the one year statute of limitations began to run on that date.

explained that otherwise the 90 days' notice would end on the same day as the limitations period expired, thus requiring plaintiff to file an action before the full 90 days' notice had concluded. The only way to preserve the full 90 days in section 364(a) was to treat section 364(d) as tolling the statute, so that *after* the 90 days notice expired, the plaintiff had whatever time remained between the notice date and the expiration of the limitations period.

The lesson from *Woods* is that the full 90 days' notice is an essential part of the statutory scheme – so essential that the California Supreme Court defined "extended" as "tolled" in order to preserve the full 90 days' notice. In subsequent cases, courts have stressed that "[t]he notice of intent to commence a medical malpractice claim is not a mere formality." *Derderian v. Dietrick*, 56 Cal. App. 4th 892, 894 (1997). In *Derderian*, where the physician did not receive the notice, the court adopted a strict application of section 364: "[A]ppellants failed to comply with the requirements of section 364 and thus, the applicable one-year statute of limitations was not tolled." The consequence can be no different where the plaintiff delivers notice but truncates the notice period. Like the plaintiff who serves no notice at all, one who chooses to cut short the notice period before it runs the full 90 days forfeits the tolling that section 364(d) would otherwise provide. Nothing in the statute permits partial compliance, and the case law condemns it as insufficient.

Plaintiffs' failure to comply with the plain requirements of § 364(a) is exacerbated by plaintiffs' failure to serve Dr. Hall properly. Section 364(c) requires service as provided in C.C.P. §1010 *et seq.* Plaintiffs' notice, however, was served by overnight mail, and is therefore governed by C.C.P. section 1013(c). Service under section 1013(c) requires service "at the office address as last given by that person on any document filed in the cause and served on the party making service" – which does not apply here because there was no cause pending – or "*otherwise at that party's place of residence*" (emphasis added). Here, there is no declaration from Dr. Hall indicating where or how he received the notice, but the notice itself indicates it was mailed to a variety of business addresses, not to Dr. Hall's residence as required by section

9

1013(c).  Moreover, while service under section 1013(c) "is complete at the time of the deposit," events triggered by service are "extended by two court days."  In this case, Dr. Hall's service on September 29, 2005 did not begin to toll the limitations period until October 4, 2005 – several days after the limitations period already had expired.[5]

While a plaintiffs' non-compliance with section 364 does not invalidate the court proceedings or deprive the court of jurisdiction, a plaintiff who fails to comply with section 364 cannot claim the protection of any tolling under section 364.  In this case, having chosen to deprive Dr. Hall of the statutorily mandated, 90 day notice period to which he was entitled, plaintiffs will be unable to claim the benefit of any tolling under section 364.  Nor can plaintiffs offer any excuse for their conduct.  Plaintiffs waited until or after the last possible moment to serve Dr. Hall with notice and then jumped the gun on filing their lawsuit.  Having failed to comply with the statutory requirements under section 364, plaintiffs' claims against Dr. Hall are barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in defendants' notice of removal, defendants respectfully submit that Dr. Hall's motion for remand should be denied because plaintiffs fraudulently joined Dr. Hall in this action.

---

[5] Even if one adopted the conclusion that service was governed by C.C.P. § 1012, the general "service by mail" statute, that statutory provision extends by five calendar the time of events triggered by service.  Under this view as well, the limitations period expired before the complaint was filed.

10

Dated: September 29, 2006

DAVIS POLK & WARDWELL

By:    /s/ James P. Rouhandeh
      James P. Rouhandeh
      Carter H. Burwell
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:    /s/ David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on September 29, 2006.

/s/David B. Chaffin

11