UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                          :
In re:  NEURONTIN MARKETING,                              :
        SALES PRACTICES AND                               :
        PRODUCTS LIABILITY LITIGATION                     :
                                                          :    MDL Docket No. 1629
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                          :    Master File No. 04-10981
THIS DOCUMENT RELATES TO:                                 :
                                                          :    Judge Patti B. Saris
MARTHA ACCETTULLO et al. v. PFIZER INC. et al.,           :
06-10912-PBS                                              :    Magistrate Judge Leo T.
                                                          :    Sorokin
VIRGIL L. ANDERSON et al. v. PFIZER INC. et al.,          :
06-11024-PBS                                              :
                                                          :
KAMALIHA Y. BREWSTER et al. v. PFIZER INC. et al.,        :
06-11022-PBS                                              :
                                                          :
CHARLES D. GIRARD, Sr. et al. v. PFIZER, INC. et al.,     :
06-11023-PBS                                              :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**MEMORANDUM OF LAW OF PFIZER INC. AND WARNER-LAMBERT
COMPANY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**


DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ............................................................................................................... 2

I.    PLAINTIFFS' FAILURE TO OPPOSE DISMISSAL OF THEIR CLAIMS
SHOULD BE VIEWED AS A WAIVER OF OPPOSITION .......................................... 2

II.    PLAINTIFFS' FAILURE TO ALLEGE RELIANCE WITH SPECIFICITY IS
FATAL TO THEIR MARKETING-BASED CLAIMS ..................................................... 3

    A.    Plaintiffs' Bald Allegations of Reliance Are Clearly Insufficient ........................ 3

    B.    Plaintiffs Misapply the Relevant Law .................................................................. 8

        1.    Common Law Fraud and Negligent Misrepresentation Claims ............... 9

        2.    Consumer Protection Claims ................................................................. 14

    C.    Plaintiffs Should Not Be Allowed Further Discovery ......................................... 16

CONCLUSION ............................................................................................................ 17

i

## TABLE OF AUTHORITIES

PAGE

### Cases

Ahmed v. Rosenblatt, 118 F.3d 886 (1st Cir. 1997) .................................................10

Am. Communications Ass'n v. Ret. Plan, 488 F. Supp. 479 (S.D.N.Y.), aff'd,
    646 F.2d 559 (2d Cir. 1980)...........................................................................17

Archdiocese of San Salvador v. FM Int'l, LLC, C.A. No. 05-cv-237-JD, 2006
    U.S. Dist. LEXIS 6964 (D.N.H. Feb. 23, 2006) ................................................14,15

Baron v. Pfizer, Inc., Index No. 6429-04 (N.Y. Sup. Ct. filed Oct. 14, 2004) ...........13

Baron v. Pfizer, Inc., Index No. 6429-04, 2006 N.Y. Misc. LEXIS 1473
    (N.Y. Sup. Ct. May 2, 2006).....................................................................3,4,14,16

Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855 (1st Cir. 1993)..............11

Brown v. Rochester Gen. Hosp., 738 N.Y.S.2d 803 (N.Y. App. Div. 2002) ..............13

Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341 (2001)....................................8

Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240 (1st Cir. 2006).............17

Doyle v. Hasbro, Inc., 103 F.3d 186 (1st Cir. 1996) ...................................................17

Eastern Food Servs. v. Pontifical Catholic Univ. Servs. Ass'n, 357 F.3d 1
    (1st Cir. 2004) ................................................................................................16

Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61
    (1st Cir. 2004) ................................................................................................15

In re Eli Lilly & Co., 789 F. Supp. 1448 (S.D. Ind. 1992) ..........................................13

Feinstein v. Resolution Trust Corp., 942 F.2d 34 (1st Cir. 1991) ...............................10

Gale v. Int'l Bus. Mach. Corp., 781 N.Y.S.2d 45 (N.Y. App. Div. 2004) ..................16

Graffam v. Town of Harpswell, 250 F. Supp. 2d 1 (D. Me. 2003)..................................2

Gwyn v. Loon Mtn. Corp., C.A. No. 01-00214-B, 2002 U.S. Dist. LEXIS
    9092 (D.N.H. May 15, 2002), aff'd, 350 F.3d 212 (1st Cir. 2003) .................14,15

Hayduk v. Lanna, 775 F.2d 441 (1st Cir. 1985) ......................................................4,14

Jepson, Inc. v. Makita Corp., 34 F.3d 1321 (7th Cir. 1994) ...................................13

LaBrecque v. Sch. Admin. Dist. No. 57, No. 06-16-P-S, 2006 U.S. Dist.
    LEXIS 13512 (D. Me. Mar. 27, 2006), aff'd, No. 06-16-P-S, 2006 U.S.
    Dist. LEXIS 37390 (D. Me. Apr. 18, 2006) ..............................................2

Lawson v. Affirmative Equities Co., L.P., 341 F. Supp. 51 (D. Mass. 2004) ........................15

In re Neurontin Marketing, Sales Practices & Prods. Liab. Litig., 433 F. Supp.
    2d 172 (D. Mass. 2006).................................................................6,12

New England Data Services, Inc. v. Becher, 829 F.2d 286 (1st Cir. 1987) .....................10,11,13

In re Pharm. Indus. Average Wholesale Price Litig., No. 01-12257-PBS, 2004
    U.S. Dist. LEXIS 21448 (D. Mass. Oct. 26, 2004)...........................................4,15

Redondo-Borges v. United States Dep't of Hous. & Urban Dev., 421 F.3d 1
    (1st Cir. 2005).........................................................................4

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004).........................................................15

In re Sonus Networks, Inc. Sec. Litig., C.A. No. 04-10294-DPW, 2006 U.S.
    Dist. LEXIS 28272 (D. Mass. May 10, 2006) ............................................15

Stander v. Fin. Clearing & Servs. Corp., 718 F. Supp. 1204 (S.D.N.Y. 1989) ..........................17

In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256 (3d Cir. 2006).....................................15

Swierkiewicz v. Sorema, 534 U.S. 506 (2002).........................................................15

United States ex rel. Franklin v. Parke-Davis, 147 F. Supp. 2d 39
    (D. Mass. 2001)...................................................................8,12,15

United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220 (1st
    Cir. 2004), cert. denied, 543 U.S. 820 (2004)...................................................11,12

United States ex rel. Rost v. Pfizer, Inc., No. 03-11084-JLT, 2006 U.S. Dist.
    LEXIS 61720 (D. Mass. Aug. 30, 2006) .................................................12

United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304
    (5th Cir. 1999)........................................................................13

United States v. Caputo, 288 F. Supp. 2d 912 (N.D. Ill. 2003) .......................................7

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003)....................................15

W. States Med. Ctr. v. Shalala, 69 F. Supp. 2d 1288 (D. Nev. 1999), aff'd in
    part and rev'd in part by 238 F.3d 1090 (9th Cir. 2001), aff'd sub nom.
    Thompson v. W. States Med. Ctr., 535 U.S. 357 (2002)..........................................7

<u>Washington Legal Found. v. Friedman</u>, 13 F. Supp. 2d 51 (D.D.C. 1998),
    <u>vacated on other grounds by</u> <u>Washington Legal Found. v. Henney</u>, 202
    F.3d 331 (D.C. Cir. 2000) .......................................................................................6,7

<u>Yuhasz v. Brush Wellman, Inc.</u>, 341 F.3d 559 (6th Cir. 2003) ....................................13

## **Statutes and Rules**

21 C.F.R. § 312.7(a)................................................................................................6

42 U.S.C. § 1320d-6 ...............................................................................................5

Fed. R. Civ. P. 9(b) .......................................................................... <u>passim</u>

Fed. R. Civ. P. 12(b)(6).........................................................................................1

Defendants Pfizer Inc., Parke-Davis, Warner-Lambert Company, and Warner-Lambert Company, L.L.C. respectfully submit this memorandum of law in further support of their motion to dismiss the complaints in <u>Accettullo v. Pfizer, Inc.</u>, 06-10912-PBS; <u>Anderson v. Pfizer, Inc.</u>, 06-11024-PBS; <u>Brewster v. Pfizer, Inc.</u>, 06-11022-PBS; and <u>Girard v. Pfizer, Inc.</u>, 06-11023-PBS (collectively, the "Multi-Plaintiff Product Liability Complaints") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).[1]

## PRELIMINARY STATEMENT

Plaintiffs have not addressed the numerous deficiencies in their complaints, either in their opposition brief or in their amended complaint.[2]   Plaintiffs, in fact, do not even oppose the defendants' arguments that their complaints must be dismissed in their entirety for failure to plead injury and that their claims are improperly joined.  Plaintiffs also inexplicably argue against the dismissal of consumer protection claims that they do not even assert in their original complaint, apparently having cribbed their opposition brief from an entirely different case altogether.

Plaintiffs' marketing-based claims must fail for the additional reason that plaintiffs now admit that they have no factual basis to know whether (1) defendants told their physicians anything, (2) defendants told their physicians something false, or (3) their physicians relied on a

---

[1] Plaintiffs' brief borrows extensively from papers filed previously by the Finkelstein firm (Docket # 410), and as to which defendants already have filed responsive papers (Docket # 473). Rather than cross-reference those papers repeatedly, for ease of reference defendants repeat much of their prior analysis herein. We note that the primary additional arguments made here appear in Point I below.

[2] Plaintiffs have sought leave to file an amended complaint to bring the following causes of action: negligence, breach of warranty, strict products liability, fraud, and consumer protection claims. Plaintiffs' opposition to defendants' motion to dismiss refers to this amended complaint instead of the plaintiffs' original complaints.  Throughout their opposition brief, plaintiffs refer to Mr. Cascio—a plaintiff in a separate Neurontin litigation before this Court—as though his complaint and his allegations were at issue in these proceedings.  The text of plaintiffs' opposition brief refers to Mr. Cascio as though he were the plaintiff in this case.

1

false statement in prescribing Neurontin to them. It is difficult to imagine a more bald abuse of the Federal Rules of Civil Procedure and of the obligation to have a factual basis for a claim before asserting it.

Plaintiffs offer no excuse for the manifest failings of their pleadings except to rely, solely, on the thoroughly illogical assertion that the information necessary for them to allege their marketing-based claims is within defendants' control. Quite obviously, plaintiffs' physicians – not defendants – are the only ones who know what information they relied on in deciding to prescribe Neurontin to plaintiffs. By asserting that defendants deceived their physicians without first taking steps to confirm that supposition, plaintiffs have failed to allege their claims adequately.

## ARGUMENT

### I.    PLAINTIFFS' FAILURE TO OPPOSE DISMISSAL OF THEIR CLAIMS SHOULD BE VIEWED AS A WAIVER OF OPPOSITION

In their opposition brief, plaintiffs nowhere address defendants' argument that they have failed to plead an injury. See Defs. Mem. at 4-7. Nor do plaintiffs address the defendants arguments that they have failed to state a claim for breach of warranty or that their claims have been improperly joined and that any surviving claims must be severed. See Defs. Mem. at 11-13, 14-15. Accordingly, the plaintiffs' claims should be dismissed. See, e.g., LaBrecque v. Sch. Admin. Dist. No. 57, No. 06-16-P-S, 2006 U.S. Dist. LEXIS 13512, at *8 (D. Me. Mar. 27, 2006) (opposition deemed waived where plaintiff failed to respond to argument that his claim should be dismissed), aff'd, No. 06-16-P-S, 2006 U.S. Dist. LEXIS 37390 (D. Me. Apr. 18, 2006); Graffam v. Town of Harpswell, 250 F. Supp. 2d 1, 8 (D. Me. 2003) (same).

2

## II.    PLAINTIFFS' FAILURE TO ALLEGE RELIANCE WITH SPECIFICITY IS FATAL TO THEIR MARKETING-BASED CLAIMS

### A.    Plaintiffs' Bald Allegations of Reliance Are Clearly Insufficient

Plaintiffs expressly concede in their opposition brief that not a single one of them has alleged basic facts showing a connection between any allegedly false or misleading marketing practices and his or her physician's decision to prescribe Neurontin to him or her. See Opp. at 15 ("Plaintiff Cascio, like every other plaintiff except Mr. Young [whose case is not pending before this Court], cannot, at this time, allege exactly what false representations or omissions were specifically made by defendants that plaintiff's physician relied upon to induce the physician to prescribe Neurontin off-label treatment of plaintiff's medical condition[.]"). Plaintiffs' failure to allege such basic facts in their complaints is fatal to their claims based on defendants' allegedly improper marketing practices. See, e.g., Baron v. Pfizer, Inc., Index No. 6429-04, 2006 N.Y. Misc. LEXIS 1473, at *4-*5, slip op. at 6-7, 9 (N.Y. Sup. Ct. May 2, 2006), attached to the Declaration of Patrick J. Murray, dated June 14, 2006, Ex. 1.

Notwithstanding this concession, plaintiffs contend that they have adequately alleged their claims because each of their complaints "does allege . . . that plaintiff's physician relied on [defendants'] false representations in prescribing Neurontin to plaintiff for off-label use in the treatment of his bipolar disorder," but they never identify any factual basis for this assertion. See Opp. at 14.[3] It is well-settled that such bald and conclusory allegations, which do not identify a single allegedly false or misleading statement which plaintiffs or their physicians relied upon or were even exposed to, fail to state a claim under any of plaintiffs' legal theories. See, e.g.,

---

[3] While their opposition states that Mr. Cascio, a plaintiff in another action, took Neurontin for bipolar disorder, nowhere in plaintiffs' complaints or opposition brief do they state what each plaintiff here took Neurontin for. Instead of pleading the reasons why they took Neurontin, plaintiffs have served upon defendants voluminous medical records, apparently under the impression that it is the duty of defendants to sift through the information and cure the defects in plaintiffs' pleadings.

Redondo-Borges v. United States Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005) ("[T]he court need not credit 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like."); Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985) ("Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint."); In re Pharm. Indus. Average Wholesale Price Litig., No. 01-12257-PBS, 2004 U.S. Dist. LEXIS 21448, at *3 (D. Mass. Oct. 26, 2004) (complaint alleging consumer protection violation "should at least set forth minimal facts as to who did what to whom, when, where, and why – although why, when why means the actor's state of mind, can be averred generally") (internal citation and quotation marks omitted). Indeed, the Baron court recently dismissed fraud and consumer protection claims based on allegations virtually identical to those here on the ground that "the complaint lacks specific allegations regarding whether plaintiff's physician either received or relied upon any information from defendant in prescribing [Neurontin] for plaintiff." Baron, 2006 N.Y. Misc. LEXIS 1473, at *5, slip op. at 9.

Implicitly acknowledging this well-settled law, plaintiffs assert that it would be "patently unfair" to require them to allege a factual basis for their claims because the facts necessary for them to do so are "exclusively within defendants' knowledge, and/or the knowledge of the third-party physicians." See Opp. at 17, 20. Plaintiffs' suggestion that the facts necessary for them to allege their claims are "exclusively within defendants' knowledge" is absurd, because it is plaintiffs' physicians who know whether they heard and relied upon any statement by defendants in prescribing Neurontin to plaintiffs. Not only are such facts not "exclusively within defendants' knowledge," but defendants could not even obtain them if they tried, because plaintiffs' physicians are prohibited by law from disclosing any medical information about

4

plaintiffs without their express consent. See 42 U.S.C. § 1320d-6 (prohibiting wrongful disclosure of individually identifiable health information). Plaintiffs also fail to explain why it would be "patently unfair" to require each plaintiff in these individual actions to speak to the person best positioned to substantiate or refute that plaintiff's allegations – namely, the physician who prescribed him or her Neurontin – before asserting their claims.

The affirmation of Dr. Sylvain Nakkab, submitted by plaintiffs in opposition to defendants' motion, demonstrates the flaw in plaintiffs' argument. Dr. Nakkab, a physician with no connection to any of the plaintiffs in this proceeding, alleges that he prescribed Neurontin to William Young, a plaintiff in a case pending in New York state court, based primarily on an article written by Dr. Norman Sussman, a professor of psychiatry at New York University, and published in the Primary Psychiatry Journal in August 1997. Affirmation of Dr. Sylvain Nakkab, M.D., dated July 27, 2006 ("Nakkab Aff."), ¶¶ 8, 10-11. Dr. Nakkab does not state that any oral or written statements by defendants caused him to prescribe Neurontin to Mr. Young. As to the publication which he references, Dr. Nakkab does not allege that Dr. Sussman's article contains any false or misleading statements or omissions with respect to the safety or efficacy of Neurontin for off-label uses. Dr. Nakkab does allege, however, that at the time he prescribed Neurontin to Mr. Young, he was not aware of Dr. Sussman's alleged "involvement" with Parke-Davis, the manufacturer of the drug, and that it is "unlikely" that he would have prescribed Neurontin to Mr. Young if he had been aware of such involvement. Id. ¶¶ 16-21.

The credibility of Dr. Nakkab's affirmation is questionable, as it is inconsistent with his prior deposition testimony in the Young case, and it was prepared only after he was retained as a consultant by plaintiffs' counsel in the Cascio litigation. Putting that issue aside, this Court has squarely held that conduct of the kind described by Dr. Nakkab, involving the non-disclosure by

5

a scientist of his alleged "involvement" with defendants, is not actionable against defendants because the scientist has no duty to disclose such "involvement" and because, in any event, his failure to do so cannot be imputed to defendants. See Report & Recommendation on Defendants' Motions to Dismiss the Amended Class Complaint and the First Coordinated Amended Complaint, dated Jan. 31, 2006, at 52; In re Neurontin Marketing, Sales Practices & Prods. Liab. Litig., 433 F. Supp. 2d 172, 177 (D. Mass. 2006) (agreeing with and adopting magistrate judge's January 31, 2006 report and recommendation except as otherwise indicated). Moreover, such conduct is protected by the First Amendment, see, e.g., Washington Legal Found. v. Friedman, 13 F. Supp. 2d 51, 66-67 (D.D.C. 1998), vacated on other grounds by Washington Legal Found. v. Henney, 202 F.3d 331 (D.C. Cir. 2000), and is also explicitly protected by federal regulation, see 21 C.F.R. § 312.7(a) (nothing in this section restricts sponsor of investigational new drug from participating in "the full exchange of scientific information concerning the drug, including dissemination of scientific findings in scientific or lay media").[4]

Even if Dr. Nakkab's affirmation is taken at face value, however, it demonstrates the fallacy of plaintiffs' position that defendants are "in the exclusive possession" of information as to whether allegedly false or misleading statements caused their physicians to prescribe Neurontin. Moreover, it begs the question as to why plaintiffs have not sought and alleged similar facts from their own physicians. Plaintiffs attempt to address this issue by asserting that Dr. Nakkab only became aware of Dr. Sussman's alleged "involvement" with Parke-Davis after reviewing documents produced by defendants during the pendency of this litigation. See Opp. at 11; see also Nakkab Aff. ¶ 15. Even assuming that were true, however, it would not support

---

[4] For the same reasons, the affidavit of Charles King III, plaintiffs' purported marketing expert, also fails to describe any actionable conduct on the part of defendants. Nor does Mr. King even assert that it is likely that Dr. Sussman's alleged non-disclosure of his "involvement" with Parke-Davis caused a single physician other than Dr. Nakkab to prescribe Neurontin for off-label use.

plaintiffs' position, because there is no reason why they cannot ask their own physicians why they prescribed Neurontin or whether they ever read or relied upon Dr. Sussman's article or any of the statements described in their complaints. Moreover, Dr. Nakkab's allegation that he relied upon an article that he read in a scientific journal simply confirms the obvious fact that plaintiffs' physicians are in a far better position than defendants to know why they prescribed Neurontin to plaintiffs.

Plaintiffs compound their errors by continuing to state erroneously that off-label marketing is per se fraudulent, a position that has been consistently rejected by the courts. See W. States Med. Ctr. v. Shalala, 69 F. Supp. 2d 1288, 1298-99 (D. Nev. 1999), aff'd in part and rev'd in part by 238 F.3d 1090 (9th Cir. 2001), aff'd sub nom. Thompson v. W. States Med. Ctr., 535 U.S. 357 (2002); Washington Legal Found. v. Friedman, 13 F. Supp. 2d 51, 66-67 (D.D.C. 1998), vacated on other grounds by Washington Legal Found. v. Henney, 202 F.3d 331 (D.C. Cir. 2000); United States v. Caputo, 288 F. Supp. 2d 912, 921 (N.D. Ill. 2003). For example, plaintiffs refer to the Information filed in United States v. Warner-Lambert Company LLC (Opp. at 4), even though that document indisputably does not allege that defendants made a single false or misleading statement about Neurontin. Plaintiffs also refer to Mr. Cascio's allegations regarding "various events where defendants promoted the prescribing of Neurontin for unspecified off-label uses," but they nowhere allege that any false or misleading statements were made at these events, or that Mr. Cascio's physician (or the physician of any other plaintiff) attended any of the events. See id. at 6-7.

Plaintiffs also refer in their opposition brief to defendants' alleged concealment of the results of a 1998 Harvard study, which were allegedly not published until 2000. See Opp. at 8. But plaintiffs have not alleged any facts supporting an inference that these results were

7

suppressed, that two years is an unusually long period of time for the publication of research results, or that defendants controlled the publication of the results.

Plaintiffs' failure to allege facts connecting the allegedly false or misleading marketing practices with their own physicians' decisions to prescribe Neurontin is not merely a technical deficiency in their complaints. As this Court has previously recognized, "[a]llowing physicians to prescribe drugs for . . . 'off-label' usage 'is an accepted and necessary corollary of the FDA's mission to regulate [pharmaceuticals] without directly interfering with the practice of medicine.'" United States ex rel. Franklin v. Parke-Davis, 147 F. Supp. 2d 39, 44 (D. Mass. 2001) (quoting Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 350 (2001)) (alteration in original). Plaintiffs' physicians could have prescribed Neurontin to them for various reasons unrelated to defendants' practices, or because of completely lawful and legitimate conduct by defendants. Moreover, as discussed above, the vast majority of the allegedly improper practices that plaintiffs describe in their complaints consist at most of alleged off-label marketing, which is not itself false or misleading. This makes it all the more important that plaintiffs specifically allege the statements that they or their physicians were exposed to and relied upon, and why such statements are false or misleading. The failure to plead the relevant false and misleading statements upon which their physicians relied is fatal to all of the plaintiffs' marketing-based claims, including any consumer protection claims which, as noted above, nowhere appear in their pleadings but which they apparently do not wish to be dismissed.

## B.    Plaintiffs Misapply the Relevant Law

Plaintiffs also advance a number of legal arguments specific to certain of their claims. None of these arguments has any merit.

8

1.    **Common Law Fraud and Negligent Misrepresentation Claims**

It is undisputed that a plaintiff asserting a common law fraud or negligent

misrepresentation claim must allege facts showing reliance on an allegedly false representation

of material fact, and that such a claim must be pleaded in accordance with Federal Rule of Civil

Procedure 9(b), which requires that "the circumstances constituting fraud . . . shall be stated with

particularity." See Opp. at 13, 19; Defs. Mem. at 10.

Plaintiffs contend that the Rule 9(b) pleading requirement should be relaxed here because

there is a "high probability and reasonable inference that plaintiffs' physicians were exposed to,

and relied upon [defendants'] false representations and omissions, which are alleged to have

occurred over a period of years." See Opp. at 19-20. This contention has no merit as either a

factual or legal matter.

In the first place, there is no reasonable basis to infer that all physicians who prescribed

Neurontin for off-label uses (including plaintiffs' physicians) were exposed to and relied upon

any allegedly false or misleading statement by defendants. As discussed above, it is an accepted

practice for physicians to prescribe drugs for off-label use, and the vast majority of the allegedly

improper practices that plaintiffs describe in their complaints consist at most of alleged off-label

marketing, which is not itself false or misleading. See supra pp. 6-7. Moreover, this Court has

squarely rejected plaintiffs' theory, which underlies the Nakkab affirmation and King affidavit,

that the non-disclosure by a scientist of his alleged "involvement" with defendants is actionable

against defendants. See supra pp. 10-11.

Second, even assuming that plaintiffs could allege facts showing that there was a "high

probability and reasonable inference" that all physicians who prescribed Neurontin for off-label

use were exposed to and relied upon allegedly false or misleading statements by defendants, that

9

would not excuse each plaintiff in these individual actions from alleging basic facts showing that

his or her physician actually did rely upon such a statement in prescribing him or her Neurontin.

Plaintiffs cite New England Data Services, Inc. v. Becher, 829 F.2d 286 (1st Cir. 1987), in

support of their argument that the Rule 9(b) pleading requirement should be relaxed here, but

that case actually undermines their argument.

The First Circuit in Becher delimited a very narrow exception to the Rule 9(b) pleading

requirement, holding that a RICO plaintiff's failure to allege with particularity the defendant's

use of the interstate mails or wires should not result in "automatic" dismissal "where . . . the

specific allegations of the plaintiff make it likely that the defendant used interstate mail or

telecommunication facilities, and the specific information as to use is likely in the exclusive

control of the defendant." Id. at 290 (emphasis in original).  The court noted that it had

previously "declined to consider as a factor whether the facts are peculiarly within the

defendant's control in a securities fraud case," but reasoned that, in a RICO mail and wire fraud

case, "the burden on the plaintiff to know exactly when the defendants called each other or

corresponded with other, and the contents thereof, is not realistic" where "there are multiple

defendants . . . and where the plaintiff was not directly involved in the alleged transaction." Id.

at 291 (internal citations omitted).

The First Circuit has at times expressly stated that its "special gloss" on Rule 9(b) in

Becher applies only to the pleading of predicate acts in the RICO context, and not to the pleading

of common law fraud in a "garden-variety fraud case." See Feinstein v. Resolution Trust Corp.,

942 F.2d 34, 43 (1st Cir. 1991) (citing cases).  Moreover, the rule established in the Becher case

relates only to the plaintiffs' pleading requirements relating to the defendants' use of interstate

mails and wires. See Ahmed v. Rosenblatt, 118 F.3d 886, 889-90 (1st Cir. 1997) ("Rule 9(b) has

10

a special gloss in the RICO context in cases where a plaintiff's specific allegations make it likely that a defendant has used interstate mails or wire, and where this information is in the exclusive control of the defendant[.]"). At other times, the First Circuit has stated in dicta that the Rule 9(b) pleading requirement may also be relaxed outside the RICO context if the facts necessary for the plaintiff to allege its claim are "peculiarly within the defendants' control." See Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855, 866 (1st Cir. 1993) (claim of municipal liability under state statute); see also United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 229 (1st Cir. 2004), cert. denied, 543 U.S. 820 (2004) (stating in dictum that Rule 9(b) pleading requirement may be relaxed, depending on "the nature of the statute under which the plaintiff's cause of action arises," where defendant is "the only practical source for discovering the specific facts supporting a pleader's conclusion").

Becher and its progeny do not support plaintiffs' contention that the Rule 9(b) pleading requirement should be relaxed here because this is not a RICO case, the information that each of the plaintiffs has failed to plead with particularity is not "in the exclusive control of the defendant[s]," and it would not impose an "unrealistic burden" on plaintiffs to require each of them to allege basic facts showing that his or her physician relied upon defendants' allegedly false or misleading statements in prescribing Neurontin to him or her. See Becher, 829 F.2d at 290-91; see also Boston & Maine Corp., 987 F.2d at 866. Accordingly, plaintiffs cannot rely on the Becher case to excuse their failure to plead the existence of a false or misleading statement upon which their physicians relied.

Plaintiffs also cite two decisions of this Court in other cases relating to defendants' alleged off-label marketing of Neurontin. See Opp. at 19. In the more recent decision, this Court held that third party payors and two individual class representatives adequately alleged

11

state law fraud claims based on statements contained in Verbatim Reports. <u>See</u> <u>In re Neurontin</u>

<u>Marketing, Sales Practices, & Prods. Liab. Litig.</u>, 433 F. Supp. 2d 172, 184-85 (D. Mass. 2006).

In the other decision, this Court held that a <u>qui</u> <u>tam</u> relator alleging that the off-label marketing of

Neurontin resulted in the submission of false claims to the federal government for Medicaid

reimbursement was not required to identify every alleged false claim. <u>Franklin</u>, 147 F. Supp. 2d

at 49.

This Court's decisions in <u>In re Neurontin</u> and <u>Franklin</u> are inapposite and do not support

plaintiffs' contention that the Rule 9(b) pleading requirement should be relaxed here because,

unlike for the plaintiffs in those cases (third party payors, class representatives and a <u>qui</u> <u>tam</u>

relator), it would not be "extremely ungainly" for each of the plaintiffs in these individual actions

to allege basic facts showing his or her own physician's reliance on defendants' allegedly

fraudulent marketing practices.  Indeed, the accessibility of plaintiffs' own physicians to

plaintiffs is amply demonstrated by Mr. Young's ability to obtain an affirmation from Dr.

Nakkab.  Moreover, unlike the plaintiffs in those cases, each of the plaintiffs here reasonably can

be expected to obtain access to his or her own patient-specific information before subjecting

defendants to burdensome discovery.[5]

The law of every other jurisdiction is likewise fatal to plaintiffs' contention.  The Fifth,

Sixth and Seventh Circuits, for example, have expressly held that the Rule 9(b) pleading

requirement is not relaxed where the information necessary for the plaintiff to allege its claim

---

[5] The correctness of <u>Franklin</u> has also been cast into serious doubt by the First Circuit's subsequent holding in <u>Karvelas</u> that "a <u>qui</u> <u>tam</u> relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery." <u>See</u> <u>Karvelas</u>, 360 F.3d at 231; <u>see also</u> <u>United States ex rel. Rost v. Pfizer, Inc.</u>, No. 03-11084-JLT, 2006 U.S. Dist. LEXIS 61720, at *65 (D. Mass. Aug. 30, 2006) (<u>Franklin</u> "was decided before the First Circuit rejected any relaxation of the requirements of Rule 9(b) in FCA claims and before the First Circuit indicated its hostility to the complexity exception to the pleading requirements").

with particularity is accessible from a third party and therefore not "within the exclusive control" of the defendant.  See United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 308 (5th Cir. 1999); Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 566 (6th Cir. 2003); Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994); see also, e.g., Brown v. Rochester Gen. Hosp., 738 N.Y.S.2d 803, 804-805 (N.Y. App. Div. 2002) (affirming dismissal of complaint and denial of plaintiff's request for discovery because facts necessary to oppose motion "would have come from plaintiff's treating physicians" and thus were not in "exclusive control" of defendant hospital).

The only case that arguably supports plaintiffs' contention, In re Eli Lilly & Co., 789 F. Supp. 1448 (S.D. Ind. 1992), is inconsistent with the Seventh Circuit's later decision in Jepson and is in any event contrary to the law of this Circuit.  The In re Eli Lilly court held that general allegations of reliance satisfied the Rule 9(b) pleading requirement because "the reliance was incurred principally by third parties (the doctors), rather than by plaintiffs themselves" and because "the representations are alleged to have occurred over a period of several years."  In re Eli Lilly, 789 F. Supp. at 1457.  The Seventh Circuit has subsequently held, however, that the Rule 9(b) pleading requirement should not be relaxed where the plaintiffs "have as much access as the defendants to [third parties] who can flesh out the details of the mailings and wire communications" upon which the plaintiffs' RICO claims are predicated.  Jepson, 34 F.3d at 1328.  In any event, In re Eli Lilly is clearly inconsistent with the requirement of Becher and its progeny that the information necessary for the plaintiff to plead its claim with particularity be "in the exclusive control of the defendant."  See, e.g., Becher, 829 F.2d at 290.

Finally, plaintiffs do not even attempt to distinguish the Baron decision, which dismissed common law fraud and consumer protection claims based on allegations virtually identical to

those here. There, as here, plaintiff made bald and conclusory allegations that she was prescribed Neurontin "as a result of" defendant's allegedly false and misleading statements. See Baron v. Pfizer, Inc., Index No. 6429-04 (N.Y. Sup. Ct. filed Oct. 14, 2004), ¶¶ 16, 30, 36, 45, attached to the Declaration of Neal A. Potischman, dated September 15, 2006, Ex. 1. The trial court dismissed plaintiff's claims on the ground that "the complaint lacks specific allegations regarding whether plaintiff's physician either received or relied upon any information from defendant in prescribing [Neurontin] for plaintiff." Baron, 2006 N.Y. Misc. LEXIS 1473, at *5, slip op. at 9.

### 2.    Consumer Protection Claims

Plaintiffs did not initially bring any consumer protection claims. Plaintiffs have, however, sought leave to amend their complaints to assert consumer protection claims. These new claims are, however, deficient and should be dismissed because it is undisputed that each state's consumer protection statute requires a plaintiff to allege facts showing that his or her injury was caused by defendant's alleged deception. See Opp. at 21.

Plaintiffs contend that their consumer protection claims "should not be subjected to the Rule 9(b) heightened pleading standard." See Opp. at 20. The First Circuit has stated, however, that "where fraud lies at the core of the action, Rule 9(b) applies." Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985). The better reasoned district court cases in this Circuit hold that Rule 9(b) applies to consumer protection claims sounding in fraud. See, e.g., Gwyn v. Loon Mtn. Corp., C.A. No. 01-00214-B, 2002 U.S. Dist. LEXIS 9092, at *25 (D.N.H. May 15, 2002) (applying Rule 9(b) to a claim alleging misrepresentations in violation of New Hampshire's consumer protection statute), aff'd, 350 F.3d 212 (1st Cir. 2003); Archdiocese of San Salvador v. FM Int'l, LLC, C.A. No. 05-cv-237-JD, 2006 U.S. Dist. LEXIS 6964, at *22 (D.N.H. Feb. 23,

2006). But see Lawson v. Affirmative Equities Co., L.P., 341 F. Supp. 2d 51, 67 & n.25 (D. Mass. 2004).[6]

Moreover, it is established law in other contexts, such as actions brought pursuant to the federal securities laws, that claims sounding in fraud should be alleged with the specificity required by Rule 9(b). See In re Sonus Networks, Inc. Sec. Litig., C.A. No. 04-10294-DPW, 2006 U.S. Dist. LEXIS 28272, at *17-22 (D. Mass. May 10, 2006) (holding that Rule 9(b) applies to claims brought under Sections 11 and 12(a)(2) that sound in fraud); In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 272 (3d Cir. 2006); Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004). As the Ninth Circuit succinctly explained: "In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. . . . In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Here, the gravamen of plaintiffs' complaints is that defendants knowingly made allegedly false or misleading statements about the safety and effectiveness of Neurontin for off-label uses. See Opp. at 3-9.

In any event, even if this Court were to apply a lesser pleading standard to plaintiffs' consumer protection claims, those claims should be dismissed because plaintiffs have not alleged any facts showing that their injuries were caused by defendants' alleged deception. See In re

---

[6] Although the Lawson court held that Massachusetts consumer protection claims sounding in fraud should not be evaluated under Rule 9(b), 341 F. Supp. 2d at 67, two other district courts in this Circuit have disagreed. See Gwyn, 2002 U.S. Dist. LEXIS 9092, at *25; Archdiocese of San Salvador, 2006 U.S. Dist. LEXIS 6964, at *22. Defendants respectfully submit that Gwyn and San Salvador were properly decided. Lawson purports to rely upon Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61 (1st Cir. 2004), and Swierkiewicz v. Sorema, 534 U.S. 506 (2002), for the proposition that the pleading of claims sounding in fraud should be evaluated under Rule 8(a), but nothing in those civil rights pleading cases demands this. In fact, this is contrary to the plain language of the rule. Fed. R. Civ. P. 9(b) (referring to "all averments of fraud").

<u>Pharm. Indus. Average Wholesale Price Litig.</u>, No. 01-12257-PBS, 2004 U.S. Dist. LEXIS 21448, at *3 (D. Mass. Oct. 26, 2004) (complaint alleging consumer protection violation under New York law "should at least set forth minimal facts as to who did what to whom, when, where, and why – although why, when why means the actor's state of mind, can be averred generally") (internal citation and quotation marks omitted); <u>Gale v. Int'l Bus. Mach. Corp.</u>, 781 N.Y.S.2d 45, 46-47 (N.Y. App. Div. 2004) (dismissing consumer protection claims because of plaintiff's failure specifically to allege that he saw any of defendant's allegedly misleading advertisements before he purchased disk drive manufactured by defendant); <u>Baron</u>, 2006 N.Y. Misc. LEXIS 1473, at *4, slip op. at 7 (dismissing consumer protection claim because "plaintiff has failed to include in her complaint any allegations regarding how the defendant's alleged deceptive acts or practices mislead [<u>sic</u>] her or her physician").

## C.   Plaintiffs Should Not Be Allowed Further Discovery

Plaintiffs contend that the Court should deny defendants' motions to dismiss, grant plaintiffs "continued pre-trial discovery from defendants and . . . the opportunity to depose their prescribing physicians," and permit plaintiffs "to amend the complaints after such discovery before the Court considers dismissing the cases or granting summary judgment to defendants." <u>See</u> Opp. at 13, 20.

Plaintiffs' request for further discovery from defendants so that they can ascertain whether their own physicians relied on defendants' alleged statements in prescribing Neurontin to them is not only patently absurd and contrary to the law, it also represents a thinly-veiled attempt to use the discovery process to fish for possible claims against defendants. This is plainly inappropriate. <u>See, e.g.</u>, <u>Eastern Food Servs. v. Pontifical Catholic Univ. Servs. Ass'n</u>, 357 F.3d 1, 9 (1st Cir. 2004) (discovery is "expensive and burdensome process" and "not for

fishing expeditions"); Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) ("Rule 9 imposes a heightened pleading requirement for allegations of fraud . . . to prevent the filing of suits that simply hope to uncover relevant information during discovery."); Am. Communications Ass'n v. Ret. Plan, 488 F. Supp. 479, 484 (S.D.N.Y.), aff'd, 646 F.2d 559 (2d Cir. 1980) (plaintiffs cannot "use an insufficient complaint with a conclusory allegation as a hunting license to discover whether in fact a viable claim may be alleged"); Stander v. Fin. Clearing & Servs. Corp., 718 F. Supp. 1204, 1210 (S.D.N.Y. 1989) ("It is well settled law that an insufficient and conclusory complaint cannot serve as the basis for discovery aimed at fishing for a possible claim against the purported defendant.").

Discovery would be especially inappropriate here because plaintiffs already have extensive access to hundreds of thousands of pages of defendants' internal documents. See, e.g., Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 (1st Cir. 2006) (affirming dismissal of complaint and denial of further discovery where plaintiff had already received substantial discovery from defendant).

## CONCLUSION

For all of the foregoing reasons, plaintiffs' complaints should be dismissed with prejudice.

Dated: October 2, 2006

DAVIS POLK & WARDWELL

By:    /s/ James P. Rouhandeh
      James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

17

HARE & CHAFFIN

By:     /s/ David B. Chaffin
        David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on October 2, 2006.

By:     /s/ David B. Chaffin
        David B. Chaffin