UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:   NEURONTIN MARKETING, SALES PRACTICES
         AND PRODUCTS LIABILITY LITIGATION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THIS DOCUMENT RELATES TO:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ALL ACTIONS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

::
:
:
:

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T.
Sorokin

## DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING MODIFICATION TO PROTECTIVE ORDER

Defendants Pfizer Inc. and Warner-Lambert Company submit this memorandum in

opposition to the Motion To Intervene for the Limited Purpose of Seeking Modification to

Protective Order.

## PRELIMINARY STATEMENT

Movants cannot demonstrate good cause to modify the Protective Order governing

discovery in this action.  Nor have Movants demonstrated extraordinary circumstances or a

compelling need to disturb the legitimate expectations of the defendants who have relied on the

terms of the Protective Order.  Under Canadian procedural rules, the parties in the Canadian

litigation will not engage in discovery until after the court rules on the class certification motion.

Accordingly, Movants seek access to materials through the discovery conducted in the course of

this litigation that they could not yet seek in their own litigation.  A desire to make an end run

around a litigation's procedural rules cannot establish good cause for the modification of a protective order.

Moreover, Movants' interest in defendants' confidential documents arose as a result of certain plaintiffs' counsel in this proceeding granting Movants access to the documents in violation of the Protective Order, and the Court should refuse to reward such conduct. Seven months ago counsel for plaintiffs, Finkelstein & Partners, apparently provided Movants with access to the documents under the guise that Movants were consultants in this litigation. The Protective Order does not allow law firms, especially those that are not even practicing law in the United States, to be given access as "consultants," and both Movants and Finkelstein & Partners should have known this. Accordingly, Movants accessed defendants' confidential documents in violation of the Protective Order and now, having decided they want to make use of certain of these documents at a point in their litigation when they are not permitted to obtain the documents in Canada, they ask this Court to sanction their violation and grant them access to the documents. The Court should decline this request.

Finally, defendants will suffer substantial prejudice if the Court modifies the Protective Order and allows Movants to use defendants' confidential materials in their litigation. First, because the Canadian procedural rules do not contemplate that the parties will engage in discovery at this point, Movants will have access to extensive discovery materials to support their class certification motion, while defendants will not have access to Canadian plaintiffs' documents for use in their opposition papers. Second, defendants should be able to address the proper scope of discovery, at the proper time, before the Canadian court. Defendants' ability to do so is extinguished if Movants are able to obtain discovery materials from the United States before a single conversation is held about discovery scope in Canada. Finally, defendants have

no guarantee that their confidential materials will remain confidential if they are used in the Canadian litigation. Movants' offer to be bound by the dictates of the Protective Order and the jurisdiction of this Court rings hollow in light of the fact that Movants have no power to control the Canadian court, which may or may not agree to seal materials related to the class certification process.

For all of the foregoing reasons and as set forth more fully below, the motion to modify the Protective Order should be denied.

## STATEMENT OF FACTS

On May 30, 2006, Finkelstein & Partners ("Finkelstein") wrote to counsel for defendants informing them that, in the absence of an objection by defendants, Finkelstein planned to provide confidential documents to Siskinds, Cromarty, Ivey and Dowler, LLP ("Siskinds"), a Canadian law firm that has brought certain lawsuits against defendants in Canada. See Declaration of Matthew Baer dated August 31, 2006 ("Baer Decl.") (Dock. # 476) Exh. E (letter from Kenneth B. Fromson to Kathryn Carney Cole dated May 30, 2006). Finkelstein sought permission to provide the documents to Siskinds pursuant to a stipulated Confidentiality Agreement (the "Confidentiality Agreement") entered into by counsel for defendants and Finkelstein on November 29, 2004. See Baer Decl. Exh. D (November 29, 2004 Confidentiality Agreement). Paragraph 6(i) of the Confidentiality Agreement provides that confidential documents can be shared with any attorney who represents a party so long as the party producing the confidential document is given an opportunity to object. Id. ¶ 6(i).

On June 9, 2006, counsel for defendants timely objected to this disclosure. Baer Decl. Exh. F (letter from Deborah L. MacGregor to Kenneth B. Fromson dated June 9, 2006). On June 12, 2006, Finkelstein acknowledged receipt of the objection, but expressed the view that

paragraph 6(i) of the Confidentiality Agreement stipulated to by the parties should allow

Finkelstein to share confidential materials with Siskinds.  Baer Decl. Exh. G (letter from

Kenneth B. Fromson to Deborah L. MacGregor dated June 12, 2006).  Finkelstein never sought

defendants' permission to share documents with Siskinds under any provision of the Protective

Order entered by the Court on January 10, 2005, which restricts the parties from sharing

materials produced in this litigation that are stamped "confidential" except in certain limited

circumstances.  See Protective Order (Dock. # 27) ¶¶ 6(a)-(i). Paragraph 6(i) of the Protective

Order plainly requires that a party grant permission before any other party shares its confidential

documents with attorneys outside this litigation.

On June 21, 2006, two weeks after defendants refused to allow Finkelstein to share the

confidential documents, counsel at Siskinds contacted defendants' Canadian counsel, the law

firm Cassels Brock, by phone and indicated that Siskinds nonetheless already had been granted

access to these materials, a fact that Finkelstein had failed to inform defendants.  See Baer Decl.

Exh. H (letter from Glenn Zakaib to Michael Peerless dated July 11, 2006).  Siskinds indicated

that they received such access based on the claim that they were "consultants" in the U.S.

proceedings.  Id.  Siskinds asked defendants to allow them to use the materials to which they had

been improperly given access in connection with Movants' motion for certification of a class of

Canadian consumers who took Neurontin for off-label uses.  Id.

In response to Siskinds' phone call, Cassels Brock advised Siskinds that they were given

access to confidential documents in violation of a protective order, requested that any such

documents in Siskinds' possession be returned to defendants or destroyed, and requested

Siskinds advise defendants of the date on which they were granted access to these documents.

See Baer Decl. Exh. H.  Siskinds' August 1, 2006 response to this letter failed to respond to

either of defendants' requests.  <u>See</u> Declaration of Deborah L. MacGregor ("MacGregor Decl.")
Exh. A (letter from Michael Peerless to Glenn Zakaib dated August 1, 2006).  Six weeks later –
more than two months after counsel for defendants informed Movants that they would not grant
permission for Siskinds to access the confidential documents – Movants filed their Motion to
Intervene for the Limited Purpose of Seeking Modification of Protective Order and
accompanying Memorandum of Points and Authorities ("Movants' memorandum" or "Movants'
Mem.").

Only upon receipt of Movants' motion did defendants learn that Finkelstein apparently
granted Siskinds access to defendants' confidential documents in February 2006, more than three
months <u>before</u> Finkelstein sent the May 30, 2006 letter to defendants seeking permission to
provide such access.  <u>See</u> Baer Decl. ¶ V; Baer Decl. Exh. D (including certification agreeing to
abide by the provisions of the Protective Order signed by Matthew Baer of Siskinds on February
16, 2006).

<u>**ARGUMENT**</u>

If the Court decides to permit Movants to intervene in this litigation, it should deny their
request to modify the Protective Order because Movants have failed to demonstrate good cause
for such modification.  In addition, the Court should refuse to modify the Protective Order
because Movants already have violated the order and because defendants will be prejudiced if
the order is modified, while Movants will suffer no prejudice if it is not.

**A.    Movants Cannot Show Good Cause To Modify the Protective Order**

A party seeking to vacate or modify a protective order has the burden, at a minimum, to
demonstrate good cause for the modification.  <u>Cordis Corp. v. SciMed Life Systems, Inc.</u>, 177
F.R.D. 651, 654 (D.Minn. 1997); <u>Bayer AG and Miles, Inc. v. Barr Labs.</u>, 162 F.R.D. 456, 460,

5

464 (S.D.N.Y. 1995).  Indeed, several courts have held that, because a modification to a protective order disturbs the legitimate expectations of the litigants, a party seeking a modification must do more than merely invoke the "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure.  See, e.g., Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 791 (1st Cir. 1988) (discussing various standards); SEC v. TheStreet.com, 273 F.3d 222, 233-34 (2d Cir. 2001); Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 296 (2d Cir. 1979).  Although the First Circuit has not directly addressed the standard that must be applied in situations where, as here, the circumstances making a protective order necessary have not changed, see Public Citizen, 858 F.2d at 791, other courts have held that a party seeking a modification in such situations must show either "extraordinary circumstances or compelling need."  Martindell, 594 F.2d at 296; see also TheStreet.com, 273 F.3d at 233-34 (noting that the extraordinary circumstances test applies when a party has engaged in discovery in reliance upon a protective order).

In Martindell, the Second Circuit explained that protective orders serve "the vital function . . . of 'secur[ing] the just, speedy, and inexpensive determination' of civil disputes . . . by encouraging full disclosure of all evidence that might conceivably be relevant.  This objective presents the cornerstone of our administration of civil justice."  594 F.2d at 295.  To ensure reliance on protective orders so as to enable this efficient administration of civil justice, the court held that a protective order should not be modified "absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need."  Id. at 296.  The Second Circuit's rationale in support of this view is that "if previously-entered protective orders have no presumptive entitlement to remain in force, parties would resort less often to the judicial

6

system for fear that such orders would be readily set aside in the future." TheStreet.com, 273 F.3d at 229-30.

The Protective Order in this case should not be modified because Movants have failed to satisfy even the good cause standard to support such modification, much less shown extraordinary circumstances or compelling need.[1] Movants offer no reason to modify the order other than their assertion that access to the "Confidential discovery materials now would materially assist them in developing their case at an earlier stage than otherwise, prevent duplicative discovery, and allow them to use relevant documents in support of their pending class certification motion." Movants' Mem. at 8. Movants concede that under Canadian law they cannot pursue discovery until after class certification. Movants' Mem. at 3; see also In re Linerboard Antitrust Litigation, 333 F.Supp. 2d 333, 341 (E.D. Penn. 2004) (noting that the Canadian plaintiffs did not dispute "that the Ontario Rules of Civil Procedure do not permit a plaintiff to seek discovery from a defendant until after class certification."). In other words, the only reason Movants put forward to justify a modification of the Protective Order is that they want to receive and use defendants' confidential documents before the applicable Canadian procedural rules permit them to seek these documents in the Canadian proceeding.

---

[1] The First Circuit has not adopted the approach under which Movants analyze modification of a protective order, *i.e.*, a standard adopted by the Seventh Circuit in Wilk v. American Medical Association, 635 F.2d 1295, 1300 (7th Cir. 1980). See Movants' Mem. at 9, 11, 13 (discussing such factors as whether a collateral litigation is *bona fide* and the balance between competing interests of disclosure and confidentiality). In addition, Movants' argument that courts "routinely" grant access to discovery materials to participants in collateral cases is similarly flawed. See Movants' Mem. at 9. Indeed, Courts regularly refuse to modify protective orders in the absence of changed circumstances amounting to, at least, good cause. See, e.g., AT & T Corp. v. Sprint Corp., 407 F.3d 560, 562 (2d Cir 2005) (noting it is presumptively unfair for courts to modify protective orders that have been relied on in the absence of extraordinary circumstances or compelling need); U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., No. 99-3298, 2004 WL 2009414, *2 (D.D.C. May 17, 2004) (noting good cause implies changed circumstances or new situations); Murata v. Bel Fuse Inc., 234 F.R.D. 175, 179 (N.D. Ill. 2006) (noting that a threat of summary judgment is not a demonstration of good cause, particularly where alternative discovery methods are available). Here, the circumstances have not changed since the Court entered the Protective Order. Defendants still have an interest in protecting their confidential materials from disclosure outside this litigation.

While some Canadian courts have held that it does not offend their judiciary if plaintiffs obtain access to documents produced in the United States prior to the Canadian class certification process, see Vitapharm Canada Ltd. v. F. Hoffmann-LaRoche Ltd. [2001] O.J. No. 237 (Ont. SCJ) (affirmed on appeal, [2002] O.J. No. 1400 (Ont.Div.Ct.)), Movants certainly cannot be said to have established good cause for modification of the Protective Order through their mere desire to obtain early access. Moreover, the Canadian courts who have addressed this issue have held merely that if a United States court independently determines to modify a protective order, then the Canadian courts will not preclude litigants from using such documents. Vitapharm Canada Ltd. v. F. Hoffmann-LaRoche Ltd., No. 82/2001 (Ont. Sup. Ct. (Division Court) April 10, 2002). The Canadian courts have stressed the obvious point that the initial determination by the United States court is not one in which the Canadian courts have any interest or input. Id. paras. 10, 15. Indeed, the Court should decline to follow the approach in In re Linerboard, upon which Movants heavily rely, in part because that court failed to recognize and address this very point. See 333 F.Supp.2d at 341-42 (relying in large part on the fact that Canadian courts will not be offended by allowing their litigants access to U.S. discovery prior to class certification as justification for the modification of a protective order, but failing to address why this fact establishes good cause for such modification).

Indeed, it is particularly the case that good cause does not exist to modify the Protective Order here because the order only protects defendants' confidential materials from use outside this litigation. See Protective Order at 6 (selecting between two options proposed by the parties and designating that only discovery materials designated as confidential can be used solely for the purpose of conducting this litigation). Accordingly, Movants already can access, and doubtless have accessed, the non-confidential materials produced in this litigation. Under these

circumstances, there is even less cause to modify a protective order to allow access to confidential materials. See In re Baycol Prods. Litig., MDL No. 1431, 2003 WL 22331293 at *7 (D. Minn. May 6, 2003) (modifying the blanket protective order to allow Canadian plaintiffs access to non-confidential discovery materials, but noting that "[d]ifferent issues arise … with respect to discovery material that has been marked confidential.").

Movants' claim that modifying the Protective Order would be efficient is incorrect. See Movants' Mem. at 12-13. Indeed, there is nothing efficient about widespread distribution of defendants' confidential materials to litigants who are not entitled to them at this stage of their litigation and who may never need them, depending on the outcome of the class certification proceedings. At the time that discovery is permitted under Canadian procedural rules, Movants can request materials from defendants and at that point arguments related to efficiency may well come to bear on how discovery is handled. At this point, however, such arguments are premature.[2] Accordingly, Movants have failed to establish good cause for a modification.

**B.    The Court Should Exercise Its Discretion and Decline To Modify the Protective Order**

Movants not only fail to establish good cause to modify the Protective Order, but the facts strongly suggest that the Court should refuse to modify it. Public Citizen, 858 F.2d 775, 782 (holding that modification of a protective order does not take place as of right and the decision to modify is committed to the sound discretion of the trial court). Movants already have had access to confidential documents in violation of the Protective Order and should not be

---

[2] In addition to the fact that Movants are not entitled to receive these materials at this point in their case, Movants cannot establish that there is good cause to modify the Protective Order because they have no need for such materials to support their motion for class certification. Under Canadian law, a party needs only to submit evidentiary support sufficient to establish the five factors related to the certification of a class. Hollick v. Toronto (City) (2001), 205 D.L.R. (4th) 19 at para. 16 (S.C.C.) (holding that "the certification stage is decidedly not meant to be a test of the merits of the action").

rewarded for this conduct.  In addition, as explained above, it is unnecessary to provide Movants

with access to documents at this stage of their Canadian litigation when the Canadian rules of

procedure do not afford Movants such access.  Finally, defendants would suffer substantial

undue prejudice if the Court were to modify the Protective Order, including because these

sensitive documents, which have nothing to do with Canada and may never need be produced in

a Canadian litigation, will suddenly become available not only to Movants, but potentially to

others as well.

> **1.    Movants' Prior Access to Defendants' Confidential Materials
> Violates the Protective Order**

Movants acknowledge that their counsel have already accessed defendants' confidential

materials, despite defendants' objections, and claim that they received such access by virtue of

their role as "consultants."  Respectfully, the suggestion that Movants are consultants to the

plaintiffs who provided the documents to them does not pass the "laugh test."

Under the Protective Order, a party can allow access to confidential documents to "any

outside expert, consultant or investigator" who is "retained by counsel for the purposes of

consulting and/or testifying in this litigation."  Protective Order ¶ 6(c).  A law firm from another

country that is not authorized to practice law in the United States and that obviously is working

to prosecute suits of its own cannot reasonably be viewed as such a consultant.[3]  This paragraph

of the Protective Order provides absolutely no support for Movants' contention that they are

"consultants."  See Baer Decl. Exh. F; Exh. H.

---

[3] Doubtless both Finkelstein and Siskinds will protest that Siskinds actually was acting as a consultant, that it was therefore covered by paragraph 6(c) of the Protective Order, and that there has been no violation of the order. Defendants respectfully submit that such a strained reading of the term "consultant" in this context is hardly to be credited.

In February 2006, Siskinds signed a certification, and it is probable that that Movants received access to defendants confidential documents shortly thereafter. Yet it was not until May 30, 2006, that Finkelstein informed defendants that it wished to provide confidential materials to Movants, and defendants promptly objected to such provision. Accordingly, Finkelstein granted and Movant accepted access to defendants' confidential documents either three months before informing defendants, or after defendants expressly objected in writing to such provision of materials. Either way, Movants violated the Protective Order and now come to the Court with unclean hands seeking officially-sanctioned access to these materials. The Movants' prior misconduct strongly counsels against granting their requested relief. Cf. Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 880 (1st Cir. 1995) (noting that the doctrine of unclean hands applies when a claimant's misconduct is directly related to the merits of the controversy between the parties).

**2.      Defendants Will Suffer Prejudice if the Protective Order Is Modified**

Movants acknowledge that they seek defendants' confidential documents to use "in support of their pending class certification motion." Movants' Mem. at 8. Yet, as discussed above, Canadian practice in class action cases does not generally permit the parties to engage in parallel documentary or oral discovery in advance of class certification, and defendants will not be permitted to engage in parallel discovery of Movants prior to submitting defendants' class certification opposition. Accordingly, if the Court permits Movants to receive these materials at this time, it will be permitting Movants to obtain an unfair procedural advantage in their Canadian litigation to which they are not entitled.

Defendants also will be prejudiced by a modification of the Protective Order because they be denied the opportunity to address in the first instance the proper scope of discovery in

Canada. While Movants claim that there is "no question that Movants will require and eventually be allowed discovery of virtually identical facts as are being inquired into in this litigation," Movants' Mem. at 10, common sense dictates precisely the opposite. In the Canadian litigation, defendants may challenge the provision of broad discovery related to conduct in the United States having nothing to do with Canada. Quite obviously, a Canadian court should determine in the first instance what types of materials defendants must produce. To suggest that millions of pages of documents in a U.S. litigation about U.S. sales and marketing practices should automatically be produced in a Canadian litigation about Canadian sales and marketing practices makes no sense. Defendants will be substantially prejudiced by any ruling that prematurely opens the floodgates of discovery in the Canadian proceeding.

        Finally, defendants will be prejudiced by a modification of the Protective Order because they have no guarantee that their confidential materials will remain sealed in Canada. Defendants have engaged in discovery in this case in reliance upon the Protective Order and under the explicit understanding that confidential documents produced in this litigation will remain sealed. If those confidential documents are provided to Movants and used in connection with their Canadian litigation, it is possible that they will not remain sealed. Movants contend that they agree to submit to the jurisdiction of this Court for enforcement of the Protective Order. See Baer Decl. ¶ VI. As an initial matter, it is unclear what that means in the case where, as here, it appears that counsel for Movants are not admitted to practice in this country. In addition, even if Movants act in good faith to protect the confidentiality of documents, they cannot guarantee that the presiding court in Canada will agree to seal the class certification motion and confidential documents submitted in support thereof. As a general matter, once documents are used in the motion for class certification in Canada they become a matter of public record, which

would render the Protective Order *de facto* null and void.  If the Canadian court refuses to alter this presumption, defendants' confidential materials will be a matter of public record in Canada and defendants will suffer prejudice as a result.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny the Movants' request to modify the Protective Order.  Defendants further request that the Court order Siskinds to return defendants' confidential materials that they received.

Dated:   October 2, 2006                     PFIZER INC., et uno,

By their attorneys,


s/ James P. Rouhandeh
James P. Rouhandeh
Deborah L. MacGregor

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

-and-

s/ David B. Chaffin
David B. Chaffin
BBO # 549245
HARE & CHAFFIN
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

13