UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: NEURONTIN MARKETING AND<br><br>SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ASSURANT HEALTH, INC., ET AL. v.<br>PFIZER, INC., ET AL., NO. 05-10535 | MDL Docket No. 1629<br><br>Master File No. 04-10981<br>*Assurant* File No. 05-10535<br><br>Judge Patti B. Saris |

*ASSURANT* PLAINTIFFS' SUR-REPLY IN RESPONSE TO PFIZER INC.'S AND
WARNER-LAMBERT COMPANY'S OBJECTIONS TO REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE LEO T. SOROKIN, DATED
AUGUST 4, 2006, RECOMMENDING THAT THE *ASSURANT* CASE BE REMANDED
TO STATE COURT

**INTRODUCTION**

In a well-reasoned opinion, Magistrate Judge Sorokin on August 4, 2006, recommended that the *Assurant* Plaintiffs' case should be remanded to state court. *See* Memorandum and Order on *Assurant*'s Remand Motion, Doc. No. 418 at 20. The *Assurant* plaintiffs provide this Sur-Reply to the Defendants' Reply, Doc. No. 483, filed September 20, 2006, and to respond to arguments made during oral argument on September 27, 2006. As is evident from Magistrate Judge Sorokin's Memorandum, there is no basis for this case to remain in federal court. Rather, the Court should affirm the Magistrate Judge's findings and recommendations the *Assurant* plaintiffs' case should be remanded.

**I.   PLAINTIFFS' DECEPTIVE MARKETING ALLEGATIONS SUPPORT
AN ALTERNATIVE ANTITRUST STATE LAW THEORY UNDER
*CHRISTIANSON*.**

Defendants' argument that plaintiffs' deceptive marketing theory is not an alternative, non-federal theory under *Christianson v. Colt* fails for one simple reason. Defendants cannot escape the fact that, as pled, the illegal deceptive marketing was part of their overarching

DC1 45689578.1

anticompetitive scheme to increase Neurontin®'s sales by engaging in a two-pronged, and overlapping, scheme to market its unapproved uses while at the same time delaying generic competition. *See* Complaint ¶ 32 [Doc. No.125, Entry Nos. 22-23.], dated November 24, 2004.

Defendants apparently concede that Magistrate Judge Sorokin was correct that the deceptive marketing theory does not require resolution of a substantial federal question. Memorandum and Order at 13, Doc. No. 418, dated August 4, 2006 ("Notably, defendants oppose simply by asserting that [the deceptive marketing] theory does not support anti-competition damages."). Rather, defendants insist that the deceptive marketing theory does not satisfy the *Christianson* standard because it is merely a "*different* theory of relief for a *different* cause of action based on *different* factual allegations . . . ."[1] According to defendants, to be viable, alternative theories, the deceptive marketing allegations must state that defendants interfered with generic manufacturer competition. *Id.*

The central difficulty with defendants' argument is that it ignores the Complaint's core allegations that Warner-Lambert's overarching scheme was to protect the dramatic success of the deceptive marketing scheme by filing numerous generic-delay lawsuits. For example, paragraphs 45-46 of the Complaint allege that defendants abused the legal and regulatory system and engaged in sham litigation to delay generic entry. The first lawsuit cited in footnote 2 to paragraph 46 on page 18 of the Complaint, *Warner-Lambert v. Apotex,* Civ. No. 98-C-4293 (filed July 14, 1998), exemplifies the overarching scheme alleged. There, Warner-Lambert had sued generic manufacturer Apotex to block its potential off-label sales of Neurontin®, arguing that Apotex's Abbreviated New Drug Application ("ANDA") with the FDA was an infringement of its U.S. Patent 5,084,479 (the "'479 patent"), entitled "Novel Methods for Treating Neuro-degenerative Diseases." Although the FDA had not approved the use for Neurontin® for any of

---

[1] Defs. Objections Mem. at 13 [Doc. No. 436].

the indications claimed in the '479 patent, and the patent (U.S. Patent 4,087,544, claiming a method of treating certain forms of epilepsy) for the only FDA-approved used of Neurontin® had expired, Warner-Lambert nonetheless contended Apotex would infringe its '479 patent. According to Warner-Lambert, this infringement would occur because patients would use Apotex's generic for all of the off-label uses for which Warner-Lambert's Neurontin® "has been and customarily is used . . . ."  *See Warner-Lambert Co. v. Apotex Corp., Inc.,* 316 F.3d 1348, 1353 (Fed. Cir. 2003).[2]  Warner-Lambert's patent infringement suit was aimed at protecting the huge profits generated from the off-label scheme.

Apotex moved for summary judgment, which Warner-Lambert opposed, arguing that "doctors, managed care organizations, and other institutions commonly and routinely substitute generic drugs for all indications for which the brand name drug is used" including the off-label uses. *Id.* (citing Warner-Lambert's Memorandum in Opposition to Apotex's Motion for Summary Judgment at 20 (Dec. 10, 1998)) (emphasis added).  Warner-Lambert was thus suing Apotex to deter the very generic substitution programs alleged in paragraphs 52-56 of the Complaint, which the *Assurant* plaintiffs would have used to switch to cheaper generic gabapentin.[3]  The district court granted summary judgment for Apotex. *See Warner-Lambert Co. v. Apotex Corp.,* No. 98 C 4293, 2001 U.S. Dist. LEXIS 14592 (N.D. Ill. Sept. 14, 2001) (Ex. E, Daley Decl.).

On appeal to the Federal Circuit, Warner-Lambert filed papers in which it was silent about its scheme to off-label market Neurontin®, and instead described the phenomenal growth

---

[2] The suit also included an infringement claim under Warner-Lambert's monohydrate patent, U.S. Patent 4,894,476 (the "'476 patent").  The district court granted summary judgment of non-infringement with respect to that patent on March 2, 2001. *See Warner-Lambert Co. v. Apotex Corp.*, 2001 U.S. Dist. LEXIS 22263 (N.D. Ill. Mar. 2, 2001) (Ex. D, Daley Decl.).

[3] In addition, Warner-Lambert argued that, by October 1999, more than 89% of the prescriptions for Neurontin were for uses other than epilepsy, and that "pharmacists and other drug dispensing organizations . . . commonly substitute generic drugs for name brand drugs whenever possible."  *Id.* at 1364.

- 3 -

in off-label use as an independent event in which it had no apparent role. For example, Warner-Lambert failed to explain its role in ghost-writing research studies about Neurontin®, and instead stated: "In the mid-1990's, moreover, other researchers discovered that Neurontin® was useful in reducing certain kinds of neuropathic pain." Warner-Lambert Replacement Brief, May 23, 2002 at 11. Even though it had engaged in a widespread scheme to market the off-label use of Neurontin®, Warner-Lambert left the impression this off-label use spawned spontaneously: "Doctors began to employ the invention of the '479 patent by prescribing Neurontin® for the treatment of neurodegenerative conditions such as Parkinson's and ALS." *Id.* And, ignoring mention of its own illegal off-label campaign, Warner-Lambert told the Federal Circuit: "The plain fact is that by law, neither Warner-Lambert nor Apotex can promote gabapentin for unapproved uses by going to doctors and describing to them the benefits of the drug for such uses. . . . Yet, . . . prescriptions continue to be written for such unapproved uses, even without such promotion . . . ." *Id.* at 20. Again, in its brief Warner-Lambert pointed out that, once the generic form of a drug would be approved by the FDA, "pharmacists and other drug dispensing organizations commonly substitute generic drugs in place of brand name drugs for all indications for which a brand name drug is prescribed." *Id.* at 14. The very purpose of the *Apotex* suit was to make certain that managed care plans like plaintiffs' plans would not have generic gabapentin available to substitute for Neurontin®'s off-label uses.

Rejecting Warner-Lambert's arguments, the Federal Circuit affirmed the district court's summary judgment, holding with regard to non-infringement:

> If Warner-Lambert's interpretation were correct . . . an NDA holder would be able to maintain its exclusivity merely by regularly filing a new patent application claiming a narrow method of use not covered by its NDA. It would then <u>be able to use § 271(e)(2)(A) as a sword against any competitor's ANDA seeking approval to market an off-patent drug for an approved use not covered by the patent. Generic manufacturers would effectively be barred altogether from entering the market.</u>

- 4 -

316 F.3d at 1359. The Federal Circuit likewise held "the request [by Apotex for ANDA approval] to make and sell a drug labeled with a permissible (non-infringing) use cannot reasonably be interpreted as an act of infringement (induced or otherwise) with respect to a patent on an unapproved use, as the ANDA does not induce anyone to perform the unapproved acts required to infringe." *Id.* at 1364. Warner-Lambert was thus using its sham lawsuit against Apotex as a "sword" to delay generic entry, knowing full well that if generic gabapentin became available all the monies it had paid to doctors under its deceptive marketing scheme would have been wasted because under managed care plans like the *Assurant* plaintiffs' plans the much cheaper generic would be substituted for Neurontin®.

It should thus be clear that plaintiffs have stated a viable non-federal theory, alleging defendants promoted off-label use of Neurontin® which is concurrent and inextricably intertwined with the generic-delay theory. The overarching scheme was to make sure that generic competitors (and, in turn, managed care companies such as plaintiffs) would not benefit from generic entry.

Nor does Judge Lifland's opinion in *Zafarana* mandate a different result. Defendants argue *Zafarana* supports their view that an antitrust theory based on deceptive marketing of Neurontin® would be "qualitatively distinct" from antitrust theories involving preclusion of generic competition.[4] Of course, the difficulty with using *Zafarana* is that there the plaintiff included off-label allegations in her amended complaint only as an apparent afterthought, but made no attempt to articulate facts tying them to the patent claims. Rather, paragraphs 65 through 67 of the *Zafarana* Amended Complaint just allege off-label marketing without in any way linking it to the generic-delay allegations. By contrast, here the *Assurant* Complaint

---

[4] Reply of Pfizer Inc. and Warner-Lambert Company in Support of Their Objections to Report and Recommendation of Magistrate Judge Leo T. Sorokin Dated August 4, 2006 Recommending that the *Assurant* Case be Remanded to State Court ("Defs. Reply Mem.") at 2, Doc. No. 483.

- 5 -

specifically asserts deceptive marketing and generic-delay allegations were part of a common scheme undertaken by defendants. Thus, defendants' reliance on *Zafarana* is misplaced.

The *Assurant* complaint alleges that defendants engaged in a course of conduct designed to increase sales and maintain Neurontin® as the sole gabapentin product on the market. *See* ¶¶ 29-58 [Doc. No. 125, Entry Nos. 22-23]. That defendants engaged in multiple types of activities to further its scheme does not change the fact that plaintiffs have alleged an alternative theory of recovery that does not rely on federal law. *See Anthem,* 2003 U.S. Dist. LEXIS 15762 at *13 (citing *Christianson*, 486 U.S. at 809-10) ("That this alleged course of conduct included multiple sets of activities is of no moment in light of the alleged common motivation (the maintenance of the Buspar® monopoly) and alleged common injury (the higher prices plaintiffs were forced to pay) pleaded in the complaint."). Because the deceptive marketing allegations do not require a decision on the validity of any Neurontin® patent, or on any other question of patent law, remand is appropriate.

## II. UNDER *CHRISTIANSON,* THE COMPLAINT NEED ONLY SEEK RELIEF UNRELATED TO THE PROVISIONS AND PURPOSES OF THE PATENT LAWS.

Defendants' mistaken argument, raised again during oral argument, that (for there to be an alternative claim under *Christianson*) the relief requested in the federal and non-federal theories must be identical is simply wrong.[5] As the Supreme Court stated in *Christianson*, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is *essential* to *each* of those theories." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809-10 (1988) (emphasis added). Here, as Magistrate Judge Sorokin found, the plaintiffs have at least one alternative theory regarding Defendants' deceptive

---

[5] Memorandum of Law of Defendants Pfizer Inc. and Warner-Lambert Company in Opposition to Plaintiffs' Motion to Remand and in Support of Cross Motion to Defer Ruling on Remand Pending MDL Transfer ("Defs. Remand Mem.") at 25-26, Doc. No. 125, Entry Nos. 11-17, Feb. 11, 2005 (the claims are not "qualitatively distinct" under Judge Lifland's decision in *Zafarana*).

and fraudulent marketing scheme that supports their state law antitrust[6] claims that does not require resolution of any issue of patent law. *Christianson* and cases applying its principles in similar contexts have treated different alleged instances of anti-competitive behavior as theories in support of the state law claims, not separate claims in and of themselves. *Christianson*, 488 U.S. at 812 (in monopolization claim, while false accusations of trade secret infringement arguably raised issue of patent law, other instances of anti-competitive conduct supporting claim did not); *Aetna U.S. Healthcare, Inc. v. Hoescht Aktiengesellschaft*, 54 F. Supp. 2d 1042 (D. Kan. 1999) (patent issues irrelevant because "plaintiffs allege that defendants committed other acts of unfair competition such as the stipulation agreement").

Defendants' argument that the damages must not be "qualitatively district" is not the holding from *Christianson.* *See* Defs. Remand Mem. at 26. To be sufficient under *Christianson,* "if 'on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief [it] seeks,' then the claim does not 'arise under' those laws." *Christianson,* 486 U.S. 810 (quoting *Franchise Tax Board,* 463 U.S. at 26). Here, the *Assurant* Plaintiffs' allegations regarding Pfizer's deceptive and fraudulent marketing scheme provide a basis for their right to relief unrelated to the validity of the patents for Neurontin.[7] *See also Franchise Tax Board of*

---

[6] In Pfizer's objections to the Magistrate's Report and Recommendation, it challenges the Magistrate's analysis regarding only the *Assurant* plaintiffs' state antitrust claims, not any of their other state law claims. *See* Memorandum of Law of Pfizer Inc. and Warner-Lambert Co. in Support of Their Objections to Report and Recommendation of Magistrate Judge Leo T. Sorokin Dated August 4, 2006 Recommending That the *Assurant* Case be Remanded to State Court ("Defs. Objections Mem.") at 13, Doc. No. 436, Aug. 18, 2006.

[7] Defendants also overlook a significant implication of this argument. If defendants are correct that the allegations related to their deception and generic-delay scheme are so distinct that they do not constitute the same cause of action under the Restatement (Second) of Judgments, the Court would still be required to remand Plaintiffs' state law consumer fraud, deceptive marketing, unjust enrichment claims based on the deceptive marketing scheme because those claims would then not be within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). *Compare United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (state law claim must arise from a "common nucleus of operative fact" with federal claim to support supplemental jurisdiction), *Robertson v. Bartels,* 148 F. Supp. 2d 443, 448-49 (D.N.J. 2001) (causes of action are the "same" for *res judicata* purposes only if "there exists a common nucleus of operative facts") (citing Restatement (Second) of Judgments § 24(b) cmt. b (1982)).

*Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 6 (1983)( "right to relief necessarily depends on resolution of a substantial question of federal law.").

The majority of federal courts confronting similar issues have remanded cases even if a question of patent law arises in the calculation of damages. *See, e.g., Aetna*, 54 F. Supp. 2d 1042 (remanding state consumer fraud claims arising from defendants' alleged sham patent litigation); *Anthem, Inc. v. Bristol-Myers Squibb Co.*, C.A. No. 03-0008, 2003 U.S. Dist. LEXIS 15762 (D.N.J. Mar. 18, 2003) (Ex. C, Daley Decl.) (remanding state law antitrust, consumer fraud and common law claims arising from allegedly anticompetitive patent settlement and improper Orange Book listings); *Williams v. Del Monte Fresh Produce Co.*, 325 F. Supp. 2d 855 (M.D. Tenn. 2004) (remanding state antitrust and consumer fraud claims arising from defendants' alleged sham patent litigation).

Here, because nothing on the face of the deceptive marketing allegations requires resolution of a substantial federal patent question, the *Assurant* plaintiffs' claims do not "arise under" federal law. As such, the *Assurant* case should be remanded.

**III.   STATE COURT IS AN APPROPRIATE FORUM FOR RESOLVING INTENT ISSUES IN THE *ASSURANT* PLAINTIFFS' ANTITRUST CLAIMS.**

The Court should reject the defendants' interpretation of *Professional Real Estate Investors* that sham litigation claims can be resolved only by federal courts. *See* Defs. Reply Br. [Doc. 483] at 4-5. In the case at bar, a federal court has already determined that Pfizer's gabapentin patents were not infringed as a matter of law. *See* Pls. Mem. [Doc. 456], Ex. A, Daley Declaration, dated September 1, 2006. Consequently, a New Jersey state court can then determine whether defendants intentionally engaged in a policy of filing litigation against

competitors, regardless of the merits.[8]  *See* Pls. Mem. at 9-10 [Doc. 456], citing *Del Monte*, 325 F. Supp. 2d at 859 (remanding patent sham litigation claims to state court after a federal court had determined that the patents were not infringed).

In *Del Monte,* Del Monte made the same argument that the defendants make here, that (under *PRE*) questions of patent enforcement are so intertwined with federal patent law that the federal question is substantial and needs to be adjudicated in federal court.  *Id.* at 858.  The *Del Monte* Court determined, however, that the allegations asserted – intent to defraud the PTO – did not require close examination of federal patent law.  Rather,

> [i]f plaintiff can prove these facts, then there would not be a federal question, only a *Walker Process*-like fraud inquiry, where intent is paramount to a decision. State court is a competent and appropriate forum to make this inquiry. The state court could consider whether the defendants intentionally misled the USPO - an inquiry <u>that revolves more around intent and proof of intent than around the actual facts given to the USPO. In addition, the state court could consider whether the defendants had knowledge that its patent was invalid and continued to attempt to enforce it - again, a question more of intent than patent law</u>.

*Id.* at 859 (emphasis added).  In addition, just as in this case, the *Del Monte* court held the state court would not need to address the underlying validity of the patent because this had already been determined in parallel federal court proceedings.  *Id.* at 860.

Likewise, the majority of the courts to consider jurisdictional questions similar to the one at bar have held in favor of remand.  *See, e.g., Aetna,* 54 F. Supp. 2d at 1053); *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 839 (E.D. Mich. 1999); *Altman v. Bayer Corp.,* 125 F. Supp. 2d. 666, 674-75 (S.D.N.Y. 2000); *Anthem,* , 2003 U.S. Dist. LEXIS 15762, at \*\*13-14.  Defendants ignore this substantial body of caselaw, and only cite one case, *Stuart v. Pfizer,* for

---

[8] It is not material that these rulings on the underlying patents may be subject to reversal on appeal.  Not only would this undermine the substantial *Christianson* jurisprudence requiring remand if there is an alternative, non-federal theory, it would allow defendants to stall remand while they seek reversal.  Clearly, defendants may argue in the state court proceeding the fruits of any appellate reversal as a defense.  Moreover, at least one Federal Circuit decision, *Warner-Lambert Co. v. Apotex Corp., Inc.,* 316 F.3d 1348 (Fed. Cir. 2003), has already held that the off-label infringement claims asserted had no merit.

the proposition that remand is not permissible. In *Stuart,* however, the Court chose to reject the majority of courts which have remanded cases to state court only because "plaintiffs alleged that defendants engaged in something more than sham litigation, for example, anti-competitive acts such as executing an agreement with an ANDA applicant to preserve and perpetuate the monopoly of a questionable patent." Ex. C, Defs. Objections Br. [Doc. No. 436], *Stuart v. Pfizer,* Civ. No. 02-2511-Ma/Bre (M.D. Tenn. 2002), at 13. According to the Court, "none of the majority cases considered the issue of whether purported sham litigation was by itself sufficient for remand to state court." *Id.* at 14. Unlike the plaintiffs in *Stuart,* here the *Assurant* plaintiffs have articulated a viable, non-federal alternative theory (i.e., the deceptive marketing scheme), which even the defendants agree does not implicate resolution of a federal question. As a result, *Stuart* actually supports plaintiffs' motion to remand.

### IV. THE *ASSURANT* PLAINTIFFS' ANTITRUST CLAIMS SHOULD NOT BE SEVERED FROM THEIR REMAINING CLAIMS UNDER F.R.C.P. 21.

The court has *sua sponte* raised severance of plaintiffs' antitrust claims from its other claims. Under very limited circumstances, Federal Rule of Civil Procedure 21 provides that "any claim may be severed and proceeded with separately." Courts may sever an <u>unrelated</u> claim when doing so would be in the best interest of some or all of the parties. *See* 7 Wright, Miller & Kane, Federal Practice and Procedure 3d § 1689 (2001). Courts have discretion to order severance under appropriate limited circumstances. The four factors courts consider in a Rule 21 severance include: (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof; (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted. *Official Comm. Of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355

(E.D. Pa. 2000), cited in *Acevedo-Garcia v. Monroig*, 351 F. 3d 547, 558 (1st Cir. 2003). Severance is not appropriate here under all four *Shapiro* factors.

**First,** the issues here are intertwined, not separate. When allegations are not significantly different, but related, as here, severance has been denied. *See Old Colony Ventures I v. SMWNPF Holdings,* Inc., 918 F. Supp. 343, 350 (D. Kan. 1996) (denying severance of waiver of foreclosure defense and breach of fiduciary duty claims from foreclosure claims as being inextricably intertwined). A similar result was reached in *Abbott Labs. v. Selfcare, Inc.*, 2000 U.S. Dist. Lexis 15263 (D. Mass., September 29, 2005) ("*Abbott*") (Ex. F, Daley Decl.), where the court denied Abbott's motion to sever claims that involved (1) patent infringement by Abbott, and (2) invalidity of defendant's patent. The subject patents concerned similar rapid immunoassay technology, and although different claims were asserted, the anticipated evidence involved issues common to the subject patents. In addition, the *Abbott* court found that "[e]ducating two separate juries on the complexities of immunoassay technology would be duplicative, and would prove far more taxing for the litigants and the court than conducting a single, albeit longer, jury trial." *Id.* at *5. The relatedness of the liability claims is compared to an earlier ruling by the court in *Abbott* to sever liability and damages issues, as that decision "involved quite different considerations .…"*Id.*[9]

When claims are not related, courts have tended to sever claims. For example, claims of breach of contract and patent infringement were severed in *Tab Express v. Aviation Simulation*, 215 F.R.D. 621624-625 (D. Kan. 2003). By contrast, the facts underlying each of the various allegations in the *Assurant* plaintiffs' Complaint are closely intertwined and proof of defendants' conduct will involve common witnesses and common facts supporting proof that defendants

---

[9] The court also denied severance based upon F. R. Civ. P. 18, which provides the parties with "great freedom in the joinder of claims . . . ." *Abbott* at **3-4 (internal citations omitted).

- 11 -

DC1 45689578.1

fraudulently schemed to block generic competition while engaging in deceptive marketing of Neurontin.®  *See* Complaint, ¶¶ 1-2, 29-32, 35-42 (scheme to increase demand), 45-58 (scheme to decrease supply by eliminating competition).  To bifurcate the fraudulent increase of demand from the fraudulent decrease in supply would be to create a false dichotomy by providing only half of the story to each of two sets of factfinders.[10]

**Second,** the issues in this case will require common witnesses and proof.  Clearly, the defendants' anticompetitive conduct may violate *both* antitrust laws and deceptive trade practice statutes.  *See, e.g., Ciardi v. L. Hoffman La-Roche, Ltd.*, 762 N.E.2d 303, 308-09 (Mass. 2002) (citations omitted) (holding that anticompetitive conduct is an unfair business practice that may violate Massachusetts' deceptive trade practices statute); *Mack v. Bristol-Myers Squibb Co.*, 673 So.2d 100, 107 (Fla. App. 1996) (holding that anticompetitive conduct is an unfair business practice that may violate Florida's deceptive trade practices statute).[11]  In addition to common liability proof, plaintiffs' causation and damages evidence is likely to involve common witnesses and documentary proof.  Indeed, plaintiffs' state law claims are analogous to *Abbott* in that plaintiffs' related claims involve, like immunoassay technology, a similar technical field of prescription drug pricing and marketing, and the same class of product, Neurontin® and generic gabapentin, that should be tried by one jury.

**Third**, severing the antitrust claims from the remaining state law claims apparently is based on the belief that these interrelated allegations can be severed.  However, such a severance

---

[10] Defendants acknowledge the antitrust and marketing claims are not separate and distinct.  In *Defendants' Response to Assurant Plaintiffs' Request That the Court Issue a Suggestion of Remand* at 8, Doc. No. 136, May 27, 2005, the defendants note that "it may be true" that the issue of whether the defendants engaged in illegal promotion is implicated by both the anti-trust claims and the deceptive trade practices claims.

[11] Conversely, defendants' deceptive, and misleading statements may also implicate state antitrust laws. *See Nat'l Assoc. of Pharm. Mfrs, Inc. v. Ayerst Lab*s., 850 F.2d 904, 916 (2d Cir. 1988) (holding that false and deceptive letter allegedly sent by pharmaceutical company may be a violation of antitrust laws, in addition to laws prohibiting false and misleading statements); *Int'l Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1268 (8th Cir. 1980) (affirming antitrust violations based on false, deceptive and misleading marketing campaign).

DC1 45689578.1

will severely prejudice plaintiffs' ability to present defendants' overarching scheme to the jury, without truncating evidence or testimony in two separate trials, with potentially two sets of conflicting rulings. Plaintiffs are entitled to their forum choice in this case, in bringing in one trial these interrelated theories. *Abbott* at \*\*3-4.

**Fourth,** severance will not in any event accomplish the defendants' stated goal of keeping the deceptive marketing part of the case in this MDL. This is because, by severing plaintiffs' antitrust claims from this case, this MDL Court will lose subject matter jurisdiction over plaintiffs' remaining state-law claims, which defendants concede do not require resolution of any federal question and because there is no diversity of citizenship.

Thus, severance under Rule 21 is not appropriate.

## V. CONCLUSION

For all the reasons stated herein and in the *Assurant* plaintiffs' prior submissions regarding their remand motion, the *Assurant* case should be remanded.

s/Annamarie Daley
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Annamarie A. Daley (Minn. #158112)
Jeffrey R. Vesel (Minn. #325193)
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Tel.: 612.349.8500
Fax: 202.223.8604

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
W. Scott Simmer (D.C. #460726)
Thomas J. Poulin (D.C. #475115)
1801 K Street, N.W., Suite 1200
Washington, DC 20006
Tel.: 202.775.0725
Fax: 612.339.4181

*Attorneys for Assurant Plaintiffs*

- 13 -

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on October 4, 2006.

                                            /s/Annamarie A. Daley_____