# EXHIBIT C

LEXSEE

ANTHEM, INC., et al., Plaintiffs, v. BRISTOL-MYERS SQUIBB COMPANY, et al., Defendants.

Civil Action No. 03-0008

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2003 U.S. Dist. LEXIS 15762

March 17, 2003, Decided
March 18, 2003, Filed

**DISPOSITION:** Plaintiff's motion to remand was granted.

**COUNSEL:** [*1] Steven J. Fram, Esq., Archer & Greiner, P.C., Haddonfield, NJ, Attorneys for Plaintiffs Anthem, Inc., et al.

Michael A. Tanenbaum, Esq., Sedgwick, Detert, Moran & Arnold, Newark, NJ, Attorneys for Defendants Britol-Myers Squibb Company, Watson Pharmaceuticals, Inc., Watson Pharma, Inc. and Danbury Pharmacal.

**JUDGES:** William H. Walls, U.S.D.J.

**OPINIONBY:** William H. Walls

**OPINION: Walls, District Judge**

Plaintiffs have moved to remand their first amended complaint to New Jersey Superior Court, Middlesex County. For the following reasons, the motion is granted and the case is remanded.

**Background**

Plaintiffs, self-described as third-party payers of prescription drug costs, allege in the first amended complaint a conspiracy between defendants Bristol Myers Squbb Company ("BMS"), Watson Pharmaceuticals, Inc. ("Watson") and Watson's predecessors in interest, Schein Pharmaceuticals, Inc. ("Schein") and Danbury Pharmacal ("Danbury") (collectively, the "Defendants"). This alleged conspiracy according to Plaintiffs was aimed at restraining competition in the market for the anxiety drug buspirone-hydrocholoride, manufactured and sold under the brand name BuSpar by BMS since [*2] 1987.

BMS was at all relevant times the holder of a patent covering BuSpar. That patent, known as the '763 patent, was issued in January 1980 and due to expire in 2002. Manufacturers of generic equivalents to "pioneer" drugs such as BuSpar must seek FDA approval for sale of the generic within the United States. Under the Hatch-Waxman Act, *21 U.S.C. § 355*, which is part of the Federal Food, Drug and Cosmetic Act. *21 U.S.C. § 301 et seq.*, a generic manufacturer seeks such FDA approval by filing an Abbreviated New Drug Application ("ANDA") on which it certifies that its product does not infringe any valid patent. A patent holder can challenge that certification and bring a patent infringement suit within 45 days of the notice of noninfringement. If the holder brings suit, the FDA stays the final approval of the generic product for 30 months after the date that notice was given, or until the date on which the patent litigation produces a final determination of noninfringement or patent invalidity, whichever date is earlier. See *21 U.S.C. § 355(j)(5)(B)(iii)*.

The Hatch-Waxman Act also provides 180 days of [*3] market exclusivity to the first generic manufacturer who applies for approval of a generic product. The 180-day period begins to run on the date the applicant first sells its generic product or on the date on which a final, nonappealable decision determines that the patent covering the pioneer drug is invalid or not infringed, whichever date is earlier. See *21 U.S.C. § 355(j)(5)(B)(iv)*.

Here, Defendant Danbury, which was later acquired by Watson's predecessor in interest, Schein, filed in August 1992 an ANDA with the FDA seeking FDA approval to market its generic buspirone. The ANDA certified that BMS's '763 patent was invalid. BMS filed suit against Schein and Danbury for patent infringement within the 45-day statutory period, which barred the FDA from approving the ANDA for 30 months or until the issuance of a final court determination that the patent was invalid, whichever was earlier.

On December 2, 1994, with approximately three months remaining on the 30-month waiting period before Schein could begin to market generic buspirone. BMS and Schein and Danbury entered a settlement of the patent litigation (the "Settlement Agreement"). Under the Settlement [*4] Agreement, Schein abandoned its challenge to the validity of the '763 patent, stipulated to the Patent's validity and enforceability, and agreed not to market their generic product until the expiration of the '763 patent. In consideration, Schein and Danbury received $ 72.5 million in present and future payments. The Settlement Agreement indefinitely delayed the triggering of the 180-day generic exclusivity period, thereby preventing any other generic manufacturer from entering the market before the '763 patent expired in November 2000. According to Plaintiffs, by entering into the Settlement Agreement the defendants BMS, Schein and Danbury illegally restricted trade.

Plaintiffs claim that BMS embarked on a second course of anticompetitive conduct in late 1998. In September 1998, another would-be producer of generic buspirone, Mylan Laboratories ("Mylan"), submitted to the FDA an ANDA for its product. Mylan did not challenge the '763 patent, but instead certified that it would not market its generic drug until the patent expired in November 2000. Shortly before that expiration date, however, BMS obtained a second patent - the '365 patent - which it claimed covered BuSpar. BMS successfully [*5] sought to have the '365 patent listed in the "Orange Book," the FDA's list of approved drug-covering patents. In plaintiffs' words, "by doing so, BMS could use the Hatch Waxman Act to continue to block FDA approval of Mylan's and other generic manufacturers' ANDA's for generic buspirone by bringing sham patent infringement suits against other generic competitors." [Plaintiffs' Brief in Support of Motion to Remand ("Plaintiffs' Brief") at 6].

In November 2002, plaintiffs tiled this lawsuit in New Jersey Superior Court, Middlesex County, seeking damages for the allegedly excess prices paid for BuSpar during the period when generic buspirone could have been marketed, according to plaintiffs, but for Defendants' conspiracy. The amended complaint alleges 92 state law claims, including claims under state antitrust law, consumer protection statutes, insurance fraud, and common law unjust enrichment, under the law of several states. Defendants tiled a notice of removal of the action on January 2, 2003 on the basis of this Court's alleged federal question jurisdiction. Plaintiffs move to remand the case on the grounds that no federal subject matter jurisdiction exists.

On February 5, 2002, the [*6] Judicial Panel on Multidistrict Litigation ("JPML") issued a Conditional Transfer Order pursuant to which this case may be transferred to the Federal District Court for the Southern District of New York. The JPML found that this case involves questions of fact common to other cases previously transferred to and consolidated in the Southern District Plaintiffs have filed an objection to the Conditional Transfer Order, and a final decision from the JPML is pending.

## DISCUSSION

### I. The Court Will Not Stay This Action Pending Decision By The JPML

As an initial matter, the Court declines the invitation of Defendants to stay this action pending a final transfer decision from the JPML. As Defendants note, the decision to stay proceedings is within the sound discretion of the court. See *Landis v. N. Am. Co., 299 U.S. 248, 254-55, 81 L. Ed. 153, 57 S. Ct. 163 (1936)*. Each party submits, by way of comparison, examples of cases in which courts have either stayed similarly postured cases, or opted not to impose a stay. Compare, e.g., *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, et al., 54 F. Supp. 2d 1042, 1047-48 (D.Kan. 1999)* ("for purposes of judicial [*7] economy, the jurisdictional issue should be resolved immediately") with *Medical Society of the State of New York v. Conn. Gen. Corp., 187 F. Supp. 2d 89 (S.D.N.Y. 2001)* (holding that judicial economy is promoted by imposing a stay and allowing jurisdictional issues to be decided by a single court). Taken as a whole, these cases indicate that either course of action is justified.

In exercising its discretion, however, the Court finds that the better option is to decline to stay proceedings and to consider the jurisdictional issue now. The issue is fully briefed by the parties and is ripe for determination. All relevant facts that could be presented to the MDL court are before this Court. Deciding the jurisdictional question now promotes judicial economy: if jurisdiction does not exist, then the case need not be transferred to the MDL court at all, and if it does exist then both the parties and the MDL court will be faced with one less contested issue if and when the case eventually is transferred. Finally, it is not clear that the other cases now before the MDL court involve perfectly identical facts and circumstances. Although the Court has not had the benefit of [*8] reviewing the complaints in each of those cases, according to the parties those complaints did not initially include allegations of anti-competitive conduct involving the Settlement Agreement: such allegations were apparently added by amendment. This Court, of course, is not in a position to assess whether that distinction would make a difference in deciding the motion to remand, or whether other differences might exist between the instant complaint and the complaints before

the MDL court. But, because judicial economy can be promoted by deciding the issue now, the Court sees little benefit to delay this case. The Court will not impose a stay.

## II. The Motion to Remand

### A. Standard

A state court action may be removed to federal court if it originally could have been brought in federal court. *28 U.S.C. § 1441(a)*. A case must be remanded to state court, however, "if at any time before final judgment it appears that [the federal court] lacks subject matter jurisdiction." *28 U.S.C. § 1447(c)*. The burden of establishing federal jurisdiction rests with the party seeking to invoke it; on a motion to remand, therefore, [*9] that burden rests with the defendant. *Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)* (citations omitted). Federal jurisdiction is to be strictly construed against removal and all doubts should be resolved in favor of remand. Id. (citations omitted).

Defendants assert that the federal district court has original - indeed exclusive - jurisdiction over this matter based on federal question jurisdiction. Under the federal question statute, "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." *28 U.S.C. § 1338(a)*. Whether a case "arises under" federal patent law is governed by the Supreme Court's holding in *Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988)*. The Court held that federal question jurisdiction exists only where a well-pleaded complaint establishes (1) that federal patent law creates the cause of action, or (2) that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of patent [*10] law in that patent law is a necessary element of one of the well-pleaded claims. *Id., 486 U.S. at 808-09, 108 S. Ct. at 2174*. Defendants do not claim that federal patent law creates the cause of action asserted here. The issue is whether Plaintiffs' right to relief depends on the resolution of a substantial question of patent law.

Two other principles are relevant. First, under the well-pleaded complaint rule, whether a claim arises under patent law "must be determined from what necessarily appears in the plaintiffs statement of his own claim... unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Christianson, 486 U.S. at 809, 108 S. Ct. at 2174*, quoting *Franchise Tax Board of California v. Construction Laborers Vacation Trust, 463 U.S. 1, 10, 103 S. Ct. 2841, 2846, 77 L. Ed. 2d 420 (1983)* (internal quotations omitted). A case raising a federal patent law defense therefore does not for that reason alone arise under patent law, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly [*11] at issue in the case." *Christianson, 486 U.S. at 809, 108 S. Ct. at 2174*, quoting *Franchise Tax Board, 463 U.S. at 14, 103 S. Ct. at 2848*.

Second, a claim does not arise under the patent laws if "on the face of a well-pleaded complaint there are... reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks." *Christianson, 486 U.S. at 810, 108 S. Ct. at 2174*, quoting *Franchise Tax Board, 463 U.S. at 26, 103 S. Ct. at 2855*. In other words, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to *each* of those theories." Id. (emphasis added).

### B. Discussion

As noted, the Plaintiffs in this case allege that the Defendants violated state antitrust law in two ways. First, they claim that by entering the Settlement Agreement, the Defendants unlawfully excluded generic makers of buspirone from entering the market by permanently delaying the 180-day exclusivity period granted to defendant Schein as the first generic buspirone [*12] manufacturer to file an ANDA. Second, they claim that Defendants prevented generic buspirone from entering the market in November 2000 by improperly causing the '365 patent to be listed in the Orange Book, and in so doing effectively extending BuSpar's exclusive market access.

As an initial matter, the Court must consider whether the amended complaint asserts a single claim supported by alternate theories of recovery, as Plaintiffs urge, or two separate claims, as Defendants argue. If the former, then the federal jurisdiction cannot stand unless patent law is essential to Plaintiffs' recovery on each theory; if the latter, then federal jurisdiction is proper if patent law is essential to either claim. Put another way, if the amended complaint asserts a single claim with alternative theories, then the case must be remanded if Plaintiffs could recover on either theory without the resolution of a substantial question of patent law, but if the amended complaint alleges two separate claims then the case will be remanded only if neither claim requires the resolution of a substantial question of patent law.

Defendants argue that the amended complaint alleges two separate claims because [*13] it alleges two separate events purportedly separated by five years, involving different sets of corporations and individuals, and motivated by dissimilar factual and legal circum-

stances. The better reading of the amended complaint, however, supports Plaintiffs' argument that it asserts a single claim based on alternate theories of recovery. The amended complaint alleges that Defendant BMS engaged in a course of conduct over several years designed to maintain BuSpar as the sole buspirone product on the market. That this alleged course of conduct included multiple sets of activities is of no moment in light of the alleged common motivation (the maintenance of the BuSpar monopoly) and alleged common injury (the higher priced Plaintiffs were forced to pay) pleaded in the amended complaint. In sum, the amended complaint alleges two theories, not two separate claims. See *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43, 51-52 (S.D.N.Y. 2002) (in case with identical factual allegations, plaintiff raised antitrust and state law claims "based not only on *theories* related to the allegedly improper listing of the '365 Patent and subsequent patent infringement suits but also [*14] on *theories* related to an alleged agreement in restraint of trade with Schein") (emphasis added); citing *Christianson*, 486 U.S. at 809-10, 108 S. Ct. at 2166.

The resulting question is whether Plaintiffs could prevail on either of its theories of recovery without the resolution of a substantial question of patent law. The Court finds that Plaintiffs' theory regarding the Settlement Agreement affords them such an opportunity. The determination of whether the Plaintiffs' allegations regarding the Settlement Agreement amount to a violation of state antitrust law does not require a decision on the validity of the '763 patent, or any other substantial question of patent law. Plaintiffs allege that, but for the Settlement Agreement, the first generic buspirone producer could have marketed its product 30 months after the filing of the underlying patent suit *regardless* of the final determination of the '763 patent's validity, and that competing generic buspirone manufacturers could have entered the market 180 clays later. Such allegations may or may not amount to a violation of state antitrust law, but they do not require a decision on the validity of the '763 patent, [*15] or on any other question of patent law. Patent law might arise if Defendants argue that the execution of the Settlement Agreement, even if otherwise violative of state antitrust law, is permissible here as within the legitimate rights of a patent holder. That issue, however, arises as a defense to Plaintiffs' theory, not as an element of Plaintiffs' claim, and thus cannot provide the basis for federal subject matter jurisdiction. See *Christianson*, 486 U.S. at 809, 108 S. Ct. at 2174 (when arising as a defense rather than as an element of a claim, patent law does not provide jurisdictional basis) (citations omitted).

In so finding, the Court is in agreement with the more persuasive line of cases that have considered the issue under the same or similar factual circumstances. See *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 748-51 (E.D.N.Y. 2001); *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 674-75 (S.D.N.Y. 2000); *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 839 (E.D.Mich. 1999)*; Aetna*, 54 F. Supp. 2d at 1053-54.

The motion to remand is granted.

William H. Walls, [*16] U.S.D.J.

17 March 2003

Dated

**ORDER** ENTERED MAR 19 2003

**Walls, District Judge**

Plaintiffs filed a motion to remand this action to the Superior Court of New Jersey, Middlesex County. Defendants filed a motion to stay the action pending a decision by the Judicial Panel on Multidistrict Litigation.

The Court, having considered the motions and supporting materials submitted by the parties, elects in its discretion not to stay this action, and finds that it lacks federal subject matter jurisdiction. It is therefore on this 17th day of March, 2003, ORDERED:

That the motion to stay this action is DENIED, and

That the motion to remand the case to the Superior Court of New Jersey, Middlesex County, is GRANTED.

William H. Walls, U.S.D.J.