UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER MECIJA, individually and as guardian ad litem for JHOANNE MECIJA, a minor, and JEFFREY MECIJA, all individually and as successors in interest to ESTATE OF HENRY C. MECIJA,<br><br>              Plaintiffs,<br><br>v.<br><br>PFIZER INC., PARKE-DAVIS, a division of Warner-Lambert Company and Warner-Lambert Company LLC, WARNER-LAMBERT COMPANY LLC, WARNER-LAMBERT COMPANY, JAMES P. HALL, D.O., and Does 1-100,<br><br>              Defendants. | MDL DOCKET NO.: 1629<br>LEAD CASE NO.: 1:04-CV-10981-PBS<br>CIVIL ACTION NO: 8:06-cv-293<br>DIST. OF MA NO.: 1:06-cv-11445-PBS<br>JUDGE PATTI B. SARIS<br><br>**REPLY BY DEFENDANT JAMES P. HALL, D.O., TO PFIZER, INC.'S OPPOSITION TO MOTION FOR REMAND; DECLARATION OF JULIA P. CHENG** |

TO THE CLERK OF THE ABOVE-ENTITELD COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Defendant JAMES HALL, D.O. ("Dr. Hall") submits herewith his Reply to defendants Pfizer, Inc., Parke-Davis, Warner-Lambert Company and Warner-Lambert LLC (collectively, "Pfizer")'s Opposition to Motion for Remand.

///

**1.**

**INTRODUCTION**

Pfizer Defendants removed this action from the California Superior Court in Orange County claiming that Defendant Hall was fraudulently joined solely in an attempt to defeat federal jurisdiction because plaintiffs do not have a reasonable basis for asserting any claim against Dr. Hall, and that plaintiffs' action against this moving defendant is barred by the Statute of Limitations contained in California <u>Code of Civil Procedure</u> §340.5.

A thorough review of plaintiffs' complaint reveals that their pleading appears to state a cause of action for Medical Negligence against Dr. Hall and their action is not time-barred. Accordingly, Defendant Hall has not attacked plaintiffs' complaint because there is no evidence indicating that Dr. Hall is a "sham" defendant as claimed by Pfizer. Dr. Hall has filed his Motion for Remand to assist this Court in assessing the bona fides of the Pfizer defendants' claims of fraudulent joinder and untimeliness. Although plaintiffs joined Dr. Hall's remand motion when the case was still pending in the federal district court in California, but did not join Dr. Hall's remand motion now that the case is in the MDL, it does not suggest that plaintiffs, indeed, do not have a reasonable basis for asserting any claim against Dr. Hall as claimed by Pfizer nor does it attest to the legitimacy of Pfizer's claim of untimeliness.

By filing this reply to Pfizer's opposition, Defendant Hall does not concede that plaintiffs' allegations against him are substantively true. On the contrary, Dr. Hall maintains

**2**
**REPLY BY DEFENDANT JAMES P. HALL, D.O., TO PFIZER, INC.'S OPPOSITION TO MOTION FOR REMAND**
132974.1

that plaintiffs' assertions are not supported by the weight of medical opinion and is prepared to defend plaintiffs' action against him on its merits. However, at the same time, Dr. Hall's counsel believes that plaintiffs have adequately stated a cause of action for Medical Negligence against him procedurally. Therefore, Defendant Hall is not a "sham" defendant as claimed by Pfizer. Dr. Hall requests that this Court carefully evaluate the validity of Pfizer defendants' claims and urges this Court to promptly remand this action to the California Superior Court in Orange County, where it was originally and properly filed.

## 2.

## ARGUMENT

1. **Pfizer Defendants' Removal Based On The Claim That Dr. Hall Was Fraudulently Joined Solely In An Attempt To Defeat Federal Jurisdiction Is Wrong Because Plaintiffs Have A Reasonable Basis For Asserting A Claim Against Dr. Hall.**

Defendant Hall is named in the Sixth Cause of Action for Medical Negligence in plaintiffs' complaint for damages. It is alleged that on or about July 7, 2004, Dr. Hall prescribed Neurontin to decedent Mr. Mecija for treatment of anxiety, a use for which it was not approved, and continued to prescribe Neurontin to the decedent until his death. Among other things, Defendant Hall is charged with failing to stay informed as to the risks associated with Neurontin, failing to inform decedent as to the risks associated with taking Neurontin, failing to carefully follow the package insert instructions, recommendations and warnings

for taking Neurontin, failing to prescribe proper doses of Neurontin, and failing to offer safer alternative drugs to decedent. (See Plaintiffs' complaint ¶ 101) It is further alleged that defendant Hall's alleged failures were negligent, fell below the standard of care for physicians, and resulted in decedent's death by suicide. (See Plaintiffs' complaint ¶¶ 102-103)

To remove a case to the federal court, the "removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the instate defendant in state court, or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." Green v. Amerada Hess Corp., 707 F.2d 201, 205 (5th Cir. 1983) The inquiry is not whether the plaintiff will actually prevail on the merits, but whether there is a possibility that she may do so. Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42 (5th Cir. 1992); Ritchey v. Upjohn Drug Co., supra, 139 F.3d at 1318-1319 (9th Cir. 1998); Hartley v. CSX Transp., Inc., 187 F.3d 422, 426 (4th Cir. 1999) ("slight" possibility of recovery ends jurisdictional inquiry). Furthermore, in evaluating sham defendant claims, the Court "must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." Dodson, 951 F.2d at 42.

For the reasons stated below, Pfizer Defendants' claim that Dr. Hall was fraudulently joined solely in an attempt to defeat federal jurisdiction is wrong because plaintiffs do have a reasonable basis for asserting a claim against this defendant.

///

    A.    <u>Contrary to Pfizer's Conclusory Contention, It Is Conceivable That Dr. Hall Could Have Knowledge Of The Alleged Risks Of Neurontin.</u>

Pfizer defendants attempt to rely on plaintiffs' allegation that the medical profession had no knowledge of the alleged risks of Neurontin because the Pfizer defendants allegedly kept the risks a secret when they allegedly promoted Neurontin for various off-label uses. Pfizer defendants also point to plaintiffs' complaint which alleges that the "Manufacturing Defendants" failed to warn the medical profession of the risk of suicide allegedly associated with the use of Neurontin. (See Plaintiffs' complaint ¶ 59)   Based on the above, counsel for the Pfizer defendants conclusively contends that plaintiffs, therefore, have no reasonable basis for asserting any claim against Dr. Hall.

Pfizer defendants erroneously assume that their package insert instructions, recommendations and warnings for taking Neurontin is the sole source for Dr. Hall to obtain his information about the drug.  Clearly, Pfizer fails to recognize that although the manufacturing defendants have a duty to warn physicians of the risk of suicide allegedly associated with the use of Neurontin, whether there are risks associated with the use of Neurontin can presumably be obtained by Dr. Hall, through other medical references or sources, and not necessarily just from Pfizer's package insert instructions, recommendations and warnings for taking Neurontin. A psychiatrist, like Dr. Hall, has an obligation to review authoritative medical sources such as Goodman & Gilman's Pharmacological Basis of Therapeutics in exercising his medical decision.  Goodman & Gilman's Pharmacological

Basis of Therapeutics is an authoritative medical source that contains information on the correlation of pharmacology with related medical sciences and the reinterpretation of the actions and uses of drugs from the viewpoint of important advances in medicine.

As stated in plaintiffs' complaint, the Food, Drug, and Cosmetic Act ("FDCA") does not prevent doctors from prescribing a drug approved for a particular use for other uses that are different than those approved by the FDA ("off-label" usage) (See Plaintiffs' complaint ¶ 31) Since Pfizer is charged by plaintiffs to have failed to "adequately and properly *label* Neurontin so as to warn the medical profession... of the risk of complications of Neurontin, including, but not limited to suicide" (See Plaintiffs' complaint ¶ 59) and Dr. Hall is alleged to have prescribed the medication to Mr. Mecija for off-label use, naturally Dr. Hall would not have relied on Pfizer's package insert instructions, recommendations and warnings (labels required by the FDA) for taking Neurontin as the source to obtain his information about the drug if he prescribed the medication to decedent for off-label use.

Additionally, according to the complaint, defendant Warren-Lambert Company LLC, was indicted in the United States District Court for the District of Massachusetts for violations of 21 U.S.C. §§331(a), 331(d), 333(a), 352 (f)(1) and 355. (See Plaintiffs' complaint ¶ 47) On or about *June 7, 2004,* defendant Warren-Lambert Company LLC, formally pled guilty to all charges (See Plaintiffs' complaint ¶ 48). Moreover, on or about *July 7, 2004,* a month after defendant Warren-Lambert Company LLC, pled guilty of the charges, plaintiffs' decedent, Mr. Mecija was prescribed Neurontin by Dr. Hall. (See

Plaintiffs' complaint ¶ 101). With these factual allegations, it is conceivable that Dr. Hall could have obtained knowledge of the alleged risks of Neurontin between the time defendant Warren-Lambert Company LLC formally pled guilty in June 2004, and the time he prescribed Neurontin to Mr. Mecija in July 2004. A psychiatrist, like Dr. Hall, has an obligation to stay informed through medical literatures and news as to the risks associated with the medication that he prescribes to his patients.

Accordingly, there is reasonable basis for plaintiffs to assert that Dr. Hall allegedly did not stay informed as to the risks associated with Neurontin, or allegedly did not inform decedent as to the risks associated with taking Neurontin. Without entertaining this possibility, Pfizer makes a general conclusion that because plaintiffs claim that "Neurontin...poses unacceptable risks unknown and unknowable by the medical profession," that plaintiffs, therefore, have no reasonable basis for any claim against Dr. Hall. (See Plaintiffs' complaint ¶ 88)

The Court should note that plaintiffs claim that Neurontin poses unacceptable risks unknown and unknowable by the *medical profession*. Plaintiffs' complaint does not allege that Neurontin poses unacceptable risks unknown and unknowable by *Dr. Hall*. Had plaintiffs specifically allege the latter, perhaps Pfizer's claim would have more merit.

    B.    <u>Plaintiffs Can Assert Allegations Against Both The Pfizer Defendants and Defendant Dr. Hall</u>.

The whole thrust of Pfizer's argument appears to be that if plaintiffs assert certain

allegations against the manufacturing defendants, they can not adequately assert claims against Dr. Hall. On this basis, Pfizer concludes that Dr. Hall must be a "sham" defendant. For example, Pfizer points to plaintiffs' complaint which alleges that the "Manufacturing Defendants" failed to warn the *medical profession* of the risk of suicide allegedly associated with the use of Neurontin and failed to warn of the risk of complications of Neurontin. (See Plaintiffs' complaint ¶ 59) As discussed above, these allegations by plaintiffs do not automatically mean that Defendant Hall did not or could not have learned of the associated risks of Neurontin himself from information gathered from other medical sources when he prescribed Neurontin to Mr. Mecija for off-label use.

According to <u>Fagan v. Union Pac. R. Co.</u>, 85 Cal.App.2d 583, 193 P.2d 776(1948), if an injury is caused by concurrent effect of *two* separate wrongful acts, each is a proximate cause of injury and neither can operate as an efficient intervening cause with regard to the other, and neither party can escape liability so long as his own negligent act is one of proximate causes of the injury. Moreover, the doctrine of *concurrent* causation is applicable in strict products liability as well as in negligence cases. <u>Southern Cal. Edison Co. v. Harnischfeger Corp.</u>, 120 Cal.App.3d 842, 175 Cal.Rptr. 67 (1981). In this case, in order to justify federal jurisdiction, not only did Pfizer defendants misread plaintiffs' complaint, they are also misleading this Court to form the wrong impression that plaintiffs do not have a reasonable basis for asserting any claim against Dr. Hall.

///

C. <u>Plaintiffs' Unverified Complaint Is Easily Amendable.</u>

Pfizer defendants further argue in their opposition to Dr. Hall's Motion For Remand that plaintiffs have no reasonable basis for any claim against Dr. Hall because, according to plaintiffs' own complaint, Dr. Hall has not breached any duty of care. Specifically, they point to the fact that the complaint does not allege that Defendant Hall knew about any purported risk from taking Neurontin. Nor does the complaint allege that Dr. Hall should have known about any risk because such a risk was known or even "knowable" by the medical profession. Pfizer defendants cite to the case of <u>Merrill v. Navegar , Inc.</u>, 26 Cal. 4th 465, 485 (2001) that a viable negligence claim (like malpractice) requires the plaintiff to show that the defendant "knew or should have known of the risk."

Pfizer defendants fails to realize that plaintiffs' complaint in this case is unverified, and a plaintiff has a right to amend his or her complaint once, as a matter of right under <u>Federal Rules of Civil Procedure Rule 12</u>. In other words, even if plaintiffs' pleading only makes conclusory allegations, it can be easily amended, and does not eviscerates any negligence claim against Dr. Hall.

**2. <u>The Statute of Limitations Contained in California Code of Civil Procedure Section §340.5 Does Not Bar Plaintiffs' Claim Against California Defendant James P. Hall, D.O. Because Plaintiffs' Medical Negligence Cause of Action Was Tolled by California Code of Civil Procedure § 364.</u>**

///

A. <u>Plaintiffs' Complaint Was Timely Filed.</u>

Pfizer's counsel's interpretation of the <u>Woods v. Young</u>, 53 Cal. 3d 315 (1991) decision and the application of <u>California Code of Civil Procedure</u> §364 are seriously misplaced. <u>California Code of Civil Procedure</u> §364(d) provides that when a notice of intent is served within the last 90 days of the "applicable statue of limitation," the time for commencement of the action "shall be extended 90 days" from the date of service of the notice. If applied literally, the 90-day period and the statute of limitations would both expire on the same day in every case in which tolling applied. Since th plaintiff must wait at least 90 days before his suit, he could not comply with section 364 and file a timely complaint in those circumstances.

Accordingly, the California Supreme Court has interpreted subdivision (d) to mean that the statute of limitations is *tolled*, or stops running, during the 90-day waiting period <u>Woods v. Young,</u> supra at 325-326. Thus, when the tolling ends at the end of the 90-day period, the plaintiff still has whatever time was left in the limitations period when he served the notice within which to file his lawsuit. This effectively tacks on an additional 90 days to the applicable limitations period whenever a notice of intention is served within the last 90 days of the limitations period.

According to the Complaint, the plaintiffs' decedent died on September 30, 2004. Thus, Pfizer is correct that the plaintiffs had one year, or until September 30, 2005, to file their suit. Even though the plaintiffs' suit was not filed until December 22, 2005, almost

three months after the date the statute of limitations would have otherwise expired, their action against Dr. Hall is not barred by the statute of limitations because the plaintiffs' attorney sent a Notice of Intention to Bring Suit upon Dr. Hall pursuant to California Code of Civil Procedure § 364 on September 29, 2005, therefore, the statute of limitations was tolled. Hence, when the plaintiffs' counsel mailed a Notice of Intention to Bring Suit upon Dr. Hall on September 29, 2005, which was within the last 90 days of the limitations period, it had the effect of tacking on an additional 90 days to the applicable limitations period. In other words, plaintiffs had up to approximately December 29, 2005 in which to file the lawsuit. In this case, plaintiffs actually timely filed their suit on December 22, 2005.

Although it is correct that California Code of Civil Procedure §364(a) provides that "[n]o action based upon the health care provider's professional negligence may be commenced unless the defendant has been given *at least* 90 days' prior notice of the intention to commence the action," Pfizer's counsel misperceives that because plaintiffs in this matter filed the complaint on December 22, 2005, *less than 90 days after* they served the notice on September 29, 2005, that their action is time-barred. According to the Woods Court, "Section 365 [California Code of Civil Procedure §365] states that a medical malpractice plaintiff's failure to comply with the 90-day notice requirement of section 364(a) does not invalidate court proceedings and is not jurisdictional, although failure to comply may subject the plaintiff's attorney to State Bar disciplinary proceedings... ." Woods, supra, at 324. Therefore, when plaintiffs file their complaint on December 22, 2005 and did not wait until

the full 90 day notice period had expired before filing suit *does not invalidate* the suit.

  B. <u>Plaintiffs' Service Of The Notice of Intention To Sue Was Properly Served.</u>

  Counsel for the Pfizer defendants also argues that the validity of the service of the Notice of Intention to Sue is questionable. <u>California Code of Civil Procedure</u> §364(b) states in substance that no particular form of notice is required and §364(c) states that, "notice may be served in the manner prescribed in Chapter 5 (commencing with Section 1010) of Title 14 of Part 2." <u>California Code of Civil Procedure</u> §1012 allows service of the notice upon the addressee at either the addressee's residence or office. Exhibit 3 attached to the Declaration of Byron J. Beam in support of defendant Hall's Motion for Remand reveals that the Notice of Intent to Commence Action pursuant to <u>California Code of Civil Procedure</u> §364 was served upon Dr. Hall by depositing the Notice with the United States Postal Overnight Mail Courier on September 29, 2005, addressed to all three offices of Dr. Hall, including his Cypress, California, office where the decedent was treated.

  Pfizer then incorrectly argues that since plaintiffs' notice was served by Overnight Mail, therefore service must be governed by <u>California Code of Civil Procedure</u> §1013(c) which requires service "at the office address as last given by that person on any document filed in the cause and served on the party making service by Express Mail; otherwise at that party's place of residence." According to <u>Derderian v. Dietrick</u>, 56 Cal. App. 4th 892, 894 (1997), in a medical malpractice action against a physician, there is a relatively simple and direct way to comply with the prefiling notice. <u>California Code of Regulations, Title 16</u>,§

1303 provides that "[e]ach person holding a certificate, license, permit or any other authority issued under the Medical Practice Act shall file his or her proper and current mailing address with the division in its principal office, and shall immediately notify the division at its office of any and all changes of mailing address, given both the old and new address." Therefore, for plaintiffs, "resorting to public records is essential to fulfill the requirement for prefiling notice." Derderian, at 900. Any doubt about the sources may be resolved by resorting to the public record of the Medical Board of California, Division of Medical Quality, where physicians' current addresses are maintained in accordance with the law regulating medical doctors. Id.

In this case, it appears that the plaintiffs resorted to the public record of the Osteopathic Medical Board of California, Division of Consumer Affairs, to ascertain Dr. Hall's office address. Exhibit 1 attached to the Declaration of Julia P. Cheng in support of defendant Hall's Motion for Remand reveals that according to the public record of the Osteopathic Medical Board of California, Dr. Hall's office address is located in Cypress, California. Therefore, plaintiffs' California Code of Civil Procedure §364 notice was validly served upon Dr. Hall whey they deposited the notice with the United States Postal Overnight Mail Courier on September 29, 200, addressed to all three offices of Dr. Hall, including his Cypress, California, office where the decedent was treated.

///

///

**13**
**REPLY BY DEFENDANT JAMES P. HALL, D.O., TO PFIZER, INC.'S OPPOSITION TO**
132974.1                                          **MOTION FOR REMAND**

      C.    <u>Plaintiffs' Service Of The Notice of Intention To Sue Was Complete At The Time Of The Deposit.</u>

      Finally, Pfizer defendants' argue that while service under <u>California Code of Civil Procedure</u> §1013(c) is "complete at the time of the deposit," events triggered by service are "extended by two court days." Based on this erroneous interpretation of the statute, they conclude that Dr. Hall's service on September 29, 2005 did not begin to toll the limitations period until October 4, 2005, several days after the limitations period already had expired. Pfizer defendants also argue, in the alternative that, even if one adopted the conclusion that service was governed by <u>California Code of Civil Procedure</u> §1012, the general "service by mail" statute, that statutory provision extends by five calendar days the time of events triggered by service. Pfizer defendants then incorrectly conclude, that under this view, the limitations period expired before the complaint was filed.

      According to <u>Silver v. McNamee</u> (App. 4 Dist. 1999) 81 Cal.Rptr.2d 445, 69 Cal.App.4th 269, service on physician of notice of intent to bring medical malpractice action, which was made by mail in compliance with statutory requirements, *was complete*, for purposes of determining whether notice was served within 90 days of expiration of limitations period, and thus operated to toll period, *on date on which notices were deposited in mail*. It is evident that the Pfizer defendants are not familiar with the application of California statutes governing the tolling of limitations period in a medical negligence case, determining whether service of the notice of intention to sue a California healthcare professional is proper,

**14**
**REPLY BY DEFENDANT JAMES P. HALL, D.O., TO PFIZER, INC.'S OPPOSITION TO MOTION FOR REMAND**
132974.1

and the fact that service of the notice of intention to sue is deemed complete at the time of deposit. Although Pfizer defendants may have read the statutes, they applied the statutes literally and incorrectly, without considering how the California courts have interpreted the application of the statutes.

The Pfizer defendants' initial Notice of Removal of Action seemed to largely rely upon the assertion that the suit against defendant Hall is fraudulent or a sham because the suit against him was not timely filed. Since this assertion is clearly not supported by California law, it would work a great inconvenience upon defendant Hall (a California resident and psychiatrist in practice at Cypress, California), to become captive in the Neurontin Multi District Litigation in the Massachusetts District Court.

### 3.

### CONCLUSION

For the foregoing reasons, Defendant JAMES P. HALL, D.O., requests that this action be promptly remanded to the California Superior Court in Orange County where it was originally filed. The above arguments are made without prejudice to Dr. Hall's position to bring a motion to dismiss under Federal Rules of Civil Procedure Rule 12(b).

DATED: October 10, 2006         */s/ Julia P. Cheng*
                                **Attorneys for Defendant James P. Hall, D.O.**
                                BYRON J. BEAM, Bar No.: 35825
                                JULIA P. CHENG, Bar No.: 219771
                                **BEAM BROBECK WEST BORGES & ROSA**
                                600 West Santa Ana Boulevard

|  | Suite 1000 |
|---|---|
|  | Santa Ana, California 92701-4586 |
|  | (714) 558-3944 |
|  | (714) 568-0129 |
|  | bbeam@bbwbrlawfirm.com |
|  | jcheng@bbwbrlawfirm.com |

## DECLARATION OF JULIA P. CHENG, ESQ.

1.  I am an associate in the law firm of Beam, Brobeck, West, Borges & Rosa LLP, attorneys of record for defendant JAMES P. HALL, O.D.. The matters stated herein are within my own personal knowledge and if called as a witness I could and would competently testify thereto.

2.  According to the public record of the Osteopathic Medical Board of California and its website, Dr. Hall's office address is listed as being located in Cypress, California. Attached as Exhibit 1 is a true and correct print out of the internet page for Dr. Hall's office address that is listed on the Osteopathic Medical Board of California's website.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Santa Ana, California on October 10, 2006.


                                        */s/ Julia P. Cheng*

                                        Julia P. Cheng, Declarant

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 10, 2006.

DATED: October 10, 2006           */s/ Julia P. Cheng*

**Attorneys for Defendant James P. Hall, D.O.**
BYRON J. BEAM, Bar No.: 35825
JULIA P. CHENG, Bar No.: 219771
**BEAM BROBECK WEST BORGES & ROSA LLP**
600 West Santa Ana Boulevard
Suite 1000
Santa Ana, California 92701-4586
(714) 558-3944
(714) 568-0129
bbeam@bbwbrlawfirm.com
jcheng@bbwbrlawfirm.com

## **SERVICE LIST**

Donald S. Edgar, Esq.
Jeremy R. Fietz, Esq.
Edgar Law Firm
408 College Avenue
Santa Rosa, CA 95401
Telephone Number:          (707) 545-3200
Fax Number:                (707) 578-3040
***Attorneys for Plaintiffs Jennifer Mecija, individually and as guardian ad litem for Jhoanne Mecija, a minor, and Jeffrey Mecija, all individually and as successors in interest to Estate of Henry C. Mecija***


Thomas P. Hanrahan
Rebecca G. Goldstein
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013-1010
Telephone Number:          (213) 896-6000
Fax Number:                (213) 896-6600
***Attorneys for Defendants Pfizer Inc., Parke-Davis, Warner-Lambert Company and Warner-lambert Company LLC***

Of Counsel:
Scott W. Sayler
Douglas B. Maddock, Jr.
Shook, Hardy & Bacon L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone Number:          (816) 474-6550
Facsimile:                 (816) 421-5547
***Attorneys for Defendants Pfizer Inc., Parke-Davis, Warner-Lambert Company and Warner-lambert Company LLC***

Tobias L. Millrood
Schiffrin & Barroway, LLP
280 King of Prussia Road
Radnor, PATIENT 19087

**19**
**REPLY BY DEFENDANT JAMES P. HALL, D.O., TO PFIZER, INC.'S OPPOSITION TO**
132974.1                    **MOTION FOR REMAND**

Eleanor Louise Poliemeni
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY 12550

James P. Rouhandeh
Davis, Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Thomas M. Sobol
Hagens Berman Sobol Shapiro, LLP
One Main Street
4th Floor
Cambridge, MA 02142

Adam S. Tolin
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PATIENT 19104-2808