UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WARNER-LAMBERT COMPANY,           )
                                  )
                Plaintiff,        )     Case No.: 98 C 4293
                                  )
        v.                        )
                                  )     Judge Paul E. Plunkett
APOTEX CORP., APOTEX, INC., and   )
TORPHARM, INC.,                   )     Magistrate Judge
                                  )     Arlander Keys
                Defendants.       )

TO:  THE HONORABLE PAUL E. PLUNKETT,
     UNITED STATES DISTRICT JUDGE

## REPORT AND RECOMMENDATION

This case is before the Court on a Motion for Attorneys'
Fees and Related Expenses filed by the defendants, Apotex Corp.,
Apotex, Inc. and TorPharm, Inc. (collectively, Apotex).  Also
before the Court is Apotex's Bill of Costs.  For the reasons set
forth below, the Court recommends that the district court deny
the motion for attorneys' fees, but award costs in the amount of
$20,876.53.

## FACTS & PROCEDURAL HISTORY

Warner-Lambert, a giant in the pharmaceutical industry,
holds various patents involving gabapentin, an amino acid
compound that has been proven safe and effective in the treatment
of epilepsy.  First, Warner Lambert holds U.S. Patent No.
4,894,476 (the '476 Patent), which discloses gabapentin

monohydrate, a form of gabapentin containing water, and a process for producing gabapentin monohydrate; the '476 Patent expires in 2008. Warner-Lambert also holds U.S. Patent No. 5,084,479 (the '479 Patent), which discloses the invention of "novel uses of known cyclic amino acids [including gabapentin] for treating neurodegenerative disorders, perinatal asphyxia, status epilepticus, Alzheimer's Huntington's, Parkinson's, and Amyotrophic Lateral Sclerosis." U.S. Patent No. 5,084,479, abstract. The '479 Patent expires in 2010.

In addition to the '476 and '479 Patents, Warner-Lambert holds two expired patents involving gabapentin: expired U.S. Patent 4,024,175 (the '175 Patent), which discloses the cyclic amino acid compounds that are used in the '479 Patent (including gabapentin in its water-free form), and expired U.S. Patent 4,087,544 (the '544 Patent), which discloses a method of using the compounds claimed in the '175 Patent (including gabapentin) to treat certain forms of epilepsy and other disorders. Because these two patents have expired, both the compounds claimed in the '175 Patent and the method of using those compounds claimed in the '544 Patent are now in the public domain.

In addition to the various patents, Warner-Lambert also holds an approved New Drug Application (NDA) issued in 1993 by

the United States Food and Drug Administration.[1]  The NDA allows
Warner-Lambert to market gabapentin for use in "adjunctive
therapy in the treatment of partial seizures with and without
secondary generalization in adults with epilepsy."  At least
according to Apotex, gabapentin has been a huge cash cow for
Warner-Lambert: in 2002 alone, Warner-Lambert rang up $2.26
billion in sales of Neurontin®, its gabapentin product.

On April 17, 1998, Apotex, also a player in the
pharmaceutical industry, but one specializing in generic drugs,
as opposed to brand-name or pioneer drugs, filed an Abbreviated
New Drug Application (ANDA) with the FDA.[2]  In it, Apotex sought
approval to market a generic formulation of gabapentin "for
adjunctive therapy in the treatment of partial seizures with and
without secondary generalization in adults with epilepsy" – the
same use claimed in the FDA-approved NDA.  When it filed its
ANDA, Apotex, as required by various statutory provisions, which
the Court addresses in greater detail below, notified Warner-

_____

[1]An NDA is submitted to the FDA as part of the new drug
approval process; it includes among other things safety and
efficacy information obtained through extensive testing, and, if
approved, gives the holder the exclusive right to market the new
drug for five years.  21 U.S.C. $355(a)-(c).

[2]The ANDA process is less onerous than the NDA process
because the ANDA need not address safety and efficacy concerns;
having approved the NDA covering the brand-name version of the
drug, the FDA would already have been satisfied that the drug is
safe and effective for its intended use, and the ANDA need only
establish that the generic drug covered in the ANDA is the
bioequivalent of the brand-name version.

3

Lambert that its generic gabapentin, to be used in the treatment of epilepsy, would not infringe either the '476 Patent or the '479 Patent.  Warner-Lambert disagreed with Apotex's assessment and sued.

In its complaint, Warner-Lambert claimed infringement of both the '476 Patent and the '479 Patent.  Early on, Apotex sought summary judgment of noninfringement with respect to the '479 Patent, arguing that there could be no infringement as a matter of law because the use for which Apotex's ANDA sought approval was different from the use claimed in the patent.  The district court denied the motion because it found that, under an inducement of infringement theory, which Warner-Lambert was perfectly entitled to pursue, the question of whether Apotex's proposed use of the drug was within the scope of the patent was irrelevant.  *Warner-Lambert v. Apotex*, No. 98 C 4293, 1999 WL 259946, at *3 (N.D. Ill. April 8, 1999).  The court further found that the circumstantial evidence raised a genuine issue as to whether, by filing the ANDA seeking approval to use gabapentin in the treatment of epilepsy, Apotex intended to induce doctors to use the drug in the treatment of neurodegenerative diseases as taught in the '479 Patent, and it therefore denied Apotex's motion for summary judgment.  *Id.* at *4-*6.

After discovery was completed, Apotex moved for summary judgment of noninfringement with respect to the '476 Patent.

4

Apotex again argued that its ANDA fell outside the scope of the patent – this time, with respect to the product; the ANDA sought approval of anhydrous gabapentin (a version containing no water), whereas the '476 Patent discloses gabapentin monohydrate.  In response to the motion, Warner-Lambert stated that it had always conceded that Apotex's final product did not infringe the patent. But it alleged that the company that manufactured the gabapentin for Apotex likely made an infringing version as an intermediary in the manufacturing process.  With discovery closed, Warner-Lambert was forced to admit that it had been utterly unsuccessful in trying to obtain discovery concerning whether gabapentin monohydrate was, in fact, used at any point during the manufacturing process, and, with no evidence to support its claim, Warner-Lambert advised the court that it did not oppose the entry of summary judgment.  Based upon that concession, the court entered judgment in Apotex's favor and certified the order as final and appealable under Rule 54(b).  *Warner-Lambert v. Apotex*, No. 98 C 4293 (N.D. Ill. Order dated March 2, 2001).  On a motion from Warner-Lambert, the court later vacated that order and disposed of the claim under Rule 56; in other words, Apotex still won its motion, but the order was neither final nor appealable at that time.  *See Warner-Lambert v. Apotex*, No. 98 C

5

4293, 2001 WL 736024, at *2 (N.D. Ill. June 28, 2001).[3]

Shortly after its victory on the claim of infringement of the '476 Patent, Apotex again moved for summary judgment on the claim of infringement of the '479 Patent. This time, the court sided with Apotex. With discovery closed, the court held, Warner-Lambert had failed to adduce any evidence that Apotex knew or should have known that its actions would induce actual infringement of the patent, i.e., that Apotex knew its actions would induce doctors to use the generic gabapentin in the treatment of neurodegenerative diseases (the method of use claimed in the '479 Patent). *Warner-Lambert Co. v. Apotex Corp.*, No. 98 C 4293, 2001 WL 1104618, at *3–*4 (N.D. Ill. Sept. 14, 2001). Accordingly, the court entered summary judgment in Apotex's favor. *Id.* at *4. Warner-Lambert appealed the court's decision on the '479 Patent only, and, on January 16, 2003, the Federal Circuit affirmed. *See Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348 (Fed. Cir. 2003).

Apotex then filed a timely motion for attorneys' fees, which was referred to this Court. Apotex seeks an award of fees and related expenses under both 35 U.S.C. §285 and Rule 11 of the Federal Rules of Civil Procedure, though its arguments justifying

---

[3]These legal machinations potentially impacted Apotex's battle with another generic manufacturer (Purepac Pharmaceutical Co.) for exclusivity rights in the generic gabapentin market. But that is well beyond the scope of this opinion.

the award under both provisions are the same: Apotex argues that Warner-Lambert knew that its infringement claims had no basis in law or fact, but pursued them nonetheless.  All told, Apotex seeks to recover $726,932.38 in fees and expenses.  Apotex also seeks from Warner-Lambert $22,260.01 in costs. The purpose of the Court's opinion herein is to determine whether Apotex is entitled to anything, and, if so, how much.

### DISCUSSION

A.   Apotex's Motion for Attorneys' Fees
Under 35 U.S.C. §285

A prevailing party in a patent case is not, as a matter of course, entitled to recover its attorneys' fees; rather, courts award fees only in "exceptional cases."  35 U.S.C. 285.  Apotex argues that this is such a case.  To give full meaning to why Apotex claims this is so, the Court must provide a bit of background concerning the statutory provisions at issue in the underlying claims.[4]

A drug manufacturer who files an ANDA seeking to market a generic version of a brand name product listed with the FDA[5] is

---

[4]For present purposes, a cursory explanation of these provisions will suffice; the laws and regulations governing the ANDA process and the statutory creation of an infringement claim based upon that process are analyzed and explained in the courts' previous decisions in this case.

[5]An NDA applicant is required to identify, as part of its NDA, "any patent which claims the drug for which the applicant submitted the application or which claims a method of using such drug and with respect to which a claim of patent infringement

FAX:R:    At 07/28/2003 05:08:09 PM  Page 10

required to file one of four certifications with the FDA, *see* 21
U.S.C. §355(j)(2)(A)(vii)(I)-(IV).  Because Warner-Lambert had
listed the '476 and '479 Patents with the FDA, this statutory
provision came into play when Apotex filed its ANDA.  To satisfy
this requirement, Apotex filed what is called a "paragraph IV
certification," claiming that the patents covering the listed
drug (here, the '476 and '479 Patents) are "invalid or will not
be infringed by the manufacture, use or sale of the new drug for
which the [ANDA] is submitted."  21 U.S.C.
§355(j)(2)(A)(vii)(IV).  The statute provides that, if the holder
of the patents at issue sues within forty-five days after
receiving the paragraph IV certification, the FDA may not approve
the ANDA for a period of thirty months or until a court decides
the questions raised in the patentee's suit.  *See* 21 U.S.C.
§355(j)(5)(B)(iii).  Thus, because Warner-Lambert sued Apotex
under this provision, the FDA was statutorily required to shelve
Apotex's ANDA for thirty months or until the district court
decided the issues of infringement or invalidity.  Apotex accuses
Warner-Lambert of filing this lawsuit with the express purpose of
triggering the 30-month delay so that it could keep Apotex from
entering the gabapentin market and maintain its very lucrative –

---

could reasonably be asserted . . . ."  21 U.S.C. §355(b).  The
FDA lists such patents in a book commonly referred to as the
"Orange Book." *Andrx Pharmaceuticals, Inc. v. Biovail Corp.*, 276
F.3d 1368, 1371 (Fed. Cir. 2002).

$2.26 billion per year — gabapentin monopoly.  Motion for Attorneys' Fees, ¶3.  This reprehensible behavior, according to Apotex, makes this case exceptional and mandates that Warner-Lambert should pay the attorneys' fees and expenses Apotex was forced to incur to defend its ANDA.

A party seeking an award of fees under 35 U.S.C. §285 "may prove the existence of an exceptional case by showing inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002) (citing *Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed. Cir. 2000)).  Apotex has sought to invoke the "frivolous suit" definition of exceptional, claiming that Warner-Lambert pursued baseless claims to delay the FDA's approval of Apotex's ANDA.  A frivolous infringement suit is one that the patentee either knew or, on reasonable investigation, should have known was baseless. *Haynes International Co. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1994); *Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990).  As the party seeking fees, Apotex bears the burden of demonstrating the frivolousness of the suit, and it must do so by clear and convincing evidence. *See Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 669 (Fed. Cir. 2000); *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.*, 15 F.3d

9

1573, 1584 (Fed. Cir. 1993).

Apotex argues that this lawsuit was frivolous because neither of Warner-Lambert's infringement claims had any basis in law or fact. With respect to Warner-Lambert's first claim, the claim involving the '476 Patent, Apotex first argues that Warner-Lambert knew or should have known from the outset that Apotex's generic gabapentin is anhydrous (or water-free) and therefore could not infringe the '476 Patent, which claims gabapentin monohydrate, a version of the drug containing water. But this argument ignores the true nature of Warner-Lambert's infringement claim. Warner-Lambert conceded that the final product that was the subject of the ANDA would not infringe the '476 Patent. But, it claimed, the manufacturer making the generic gabapentin was likely making gabapentin monohydrate at some point in the process. Thus, this issue – emphasized repeatedly by Apotex – is a bit of a red herring.

Apotex next argues that, even if Warner-Lambert could reasonably have believed that Apotex's manufacturing process used the patented product as an intermediary, Warner-Lambert had no reasonable basis to believe that such use occurred *in the United States*, an essential element of any infringement claim. Looking at the issue at the close of discovery, Apotex's argument appears to have some merit. Apotex's ANDA indicated that ███████████

███████████████████████████████████████████████

███████.  Although Teva apparently has subsidiaries in the
United States, the ANDA does not ████████████████████████
████████████████████████████████████████████████████

███████.  Despite this, Warner-Lambert contends, in opposition to
the motion for attorneys' fees, that the ANDA "left open the
prospect that unfinished gabapentin was sent from Israel to the
United States for additional processing that could have involved
use of the monohydrate." Opposition Brief, pp. 17-18.  The Court
does not see how this is so, and Warner-Lambert did not provide
the Court with any reference in the ANDA to support the point.
In fact, Warner-Lambert cites only *SmithKline Beecham Corp. v.
Apotex Corp.*, 247 F.Supp. 2d 1011 (N.D. Ill. 2003), which it says
establishes that "generic drugs are often processed in several
stages at different sites." Opposition Brief, p. 18.  But even
if that is true, it says nothing about those sites being in the
United States.  And, significantly, in *SmithKline*, the various
facilities referenced by the court were all specifically
identified in the ANDA.  *SmithKline*, 247 F.Supp. 2d at 1023.
Here, as Warner-Lambert concedes, the ANDA noted █████████
████████████████████████████████████████████████.

    Having said all of this, the Court recognizes that it is
viewing the issue with the benefit of hindsight.  Although
Apotex's ANDA certainly suggested that the entire manufacturing
process took place outside the United States, given the amount of

money at stake, the Court can hardly fault Warner-Lambert for wanting to confirm that fact through investigation.  The Court is satisfied that, when it filed its complaint, Warner-Lambert had a reasonable basis to think that it would ultimately discover that Teva performed some step in the production process at one of its United States subsidiaries.

Moreover, upon realizing that it could not sustain an infringement claim with respect to the '476 Patent, Warner-Lambert did not persist with its allegations; it gave up.  When Apotex moved for summary judgment at the close of discovery, Warner-Lambert did not oppose the motion.  In fact, Warner-Lambert agreed that the entry of summary judgment was proper, given its inability to marshal the evidence to prove its claim. This would tend to undermine Apotex's allegation of bad faith on Warner-Lambert's part.  *See Eltech*, 903 F.2d at 811 (where the patent holder is "manifestly unreasonable in assessing infringement, while continuing to assert infringement in court," an inference of bad faith may be proper).

In *Warner-Lambert Co. v. Purepac Pharmaceutical Co.*, a case that is, for present purposes, identical to this case except that it names as a defendant Purepac, Apotex's rival in the generic gabapentin market, the district judge granted summary judgment of noninfringement on the '476 Patent, but declined to award fees under §285.  In so doing, the court reasoned:

> An award of attorneys fees might be justified if
> Warner-Lambert considered its claim to be frivolous and
> filed suit solely to initiate the 30-month stay.
> However, absent compelling evidence to that effect, it
> would be unjust to punish Warner-Lambert for defending
> its patent rights, particularly given the high stakes
> involved in this dispute.  While Purepac has presented
> evidence that Warner-Lambert was told that Purepac's
> gabapentin was anhydrous and produced in Israel,
> Warner-Lambert had the right to investigate those
> representations by engaging in discovery.

*Warner-Lambert Co. v. Purepac Pharmaceutical Co.*, Nos. 98-2729

and 99-5948, slip op. at 7 (D.N.J. May 22, 2003).  This Court

could not agree more.  Apotex has tried to characterize Warner-

Lambert as a pharmaceutical bully that will stop at nothing to

preserve its stranglehold on the gabapentin market; while the

story makes for interesting reading, it is not supported by the

record evidence.[6]

In its second claim of infringement, Warner-Lambert alleged

that, by filing the ANDA seeking FDA approval to market generic

gabapentin for use in the treatment of epilepsy, Apotex infringed

the '479 Patent, which claimed a method of using gabapentin in

the treatment of neurodegenerative diseases.  Apotex argues that,

---

[6]As an aside, even if Apotex could prove that Warner-
Lambert's first claim of infringement was frivolous, it is not
clear that this would make an award of fees under §285
appropriate.  To award fees under this section, the Court must
find that the *case* is exceptional, not just that one of the
claims fits that bill.  *See* 35 U.S.C. §285 ("The court in
exceptional *cases* may award reasonable attorney fees . . . .")
(emphasis added).  *See also Epcon Gas*, 279 F.3d at 1034 (a party
may prove the existence of an exceptional case by showing . . . a
frivolous **suit** . . . .") (emphasis added).

13

because it was crystal clear from the get-go that Apotex was not
seeking approval to market the drug for the use claimed in the
patent, infringement could not lie. But the question of whether
infringement occurs if the ANDA discloses a use different from
the use covered in the patent was an open one when Warner-Lambert
filed its complaint. Indeed, the Federal Circuit specifically
noted that the issue raised by Warner-Lambert's pursuit of its
infringement claim on this basis was one of first impression:

> The central issue in the present case is whether it is
> an act of infringement under 35 U.S.C. §271(e)(2)(A) to
> submit an ANDA seeking approval to make, use, or sell a
> drug for an approved use if any other use of the drug
> is claimed in a patent, or if it is only an act of
> infringement to submit an ANDA seeking approval to
> make, use, or sell a drug if the drug or the use *for
> which FDA approval is sought* is claimed in a patent.
> That issue presents a matter of first impression for
> this court.

*Warner-Lambert*, 316 F.3d at 1354 (emphasis in original).

The Court ultimately concluded that Warner-Lambert's claim
should fail because "it is not an act of infringement to submit
an ANDA for approval to market a drug for a use when neither the
drug nor that use is covered by an existing patent, and the
patent at issue is for a use not approved under the NDA." *Id.* at
1354-55. But the court could just as easily have gone the other
way. Indeed, at least three federal circuit judges have
indicated that they disagree with the court's conclusion in
*Warner-Lambert*. *See Allergan, Inc. v. Alcon Laboratories, Inc.*,
324 F.3d 1322, 1334-35, 1345-46 (Fed. Cir. 2003).

14

In *Allergan*, a case argued and submitted for decision the
same week as *Warner-Lambert*, the court considered whether the law
allows an action for induced infringement based upon the filing
of an ANDA when: (1) the patent at issue claims a method of use
that has not been approved by the FDA in an NDA; (2) the ANDA
seeks approval to make a generic drug to be used in a way other
than that disclosed in the patent; and (3) the generic drug
covered by the ANDA is effective for the use claimed in the
patent. *Id.* at 1323. In a *per curiam* opinion, the court held –
solely because of the *Warner-Lambert* decision – that under these
circumstances an action for induced infringement is not
cognizable under §271(e)(2). *Id.* at 1334. Two concurring
opinions followed, each expressing some level of disagreement
with the decision in *Warner-Lambert*, and each suggesting that
§271(e)(2), properly construed, would permit an infringement
action based upon the filing of an ANDA for a drug whose use is
patented, even if approval for the patented use is not sought in
the ANDA. *Id.* at 1334-35(Schall, C.J., concurring); *Id.* at 1345-
46 (Linn, C.J., concurring). Although these judges ultimately
signed on to the holding of *Warner-Lambert*, their musings make
clear that Warner-Lambert's theory of infringement with respect
to the '479 Patent had a reasonable basis in the law. After all,
if three judges of the federal circuit think that, in the absence
of the *Warner-Lambert* decision, the statute would give rise to an

15

infringement claim in circumstances such as those present here, the Court cannot say that Warner-Lambert was unreasonable for thinking the same thing. Given the lack of any definitive ruling on the issue at the time, Warner-Lambert could reasonably have believed that it had a cause of action under the statute.

The record also shows that the claim of infringement of the '479 Patent had a reasonable basis in fact. Indeed, the district court initially denied Apotex's motion for summary judgment on this claim because it found that the evidence revealed a genuine issue of fact regarding Apotex's intent to induce infringement. *See Warner-Lambert v. Apotex*, No. 98 C 4293, 1999 WL 259946, at *4-*6 (N.D. Ill. April 8, 1999). The fact that discovery ultimately failed to turn up enough evidence to prove Apotex's intent does not make that claim frivolous.

In sum, based upon its review of the entire record, the Court finds that this is not an exceptional case. Apotex has not demonstrated, by clear and convincing evidence, that Warner-Lambert's claims were frivolous or that this case otherwise falls within the purview of §285.

B.   Apotex's Motion for Attorneys' Fees Under Rule 11

Apotex asks the Court to award attorneys' fees as a sanction under Rule 11, which provides that

> [b]y presenting to the court a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry

16

reasonable under the circumstances, –

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the costs of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Apotex argues both that the asserted claims were factually and legally unsupportable and that the claims were filed for an improper purpose – namely, to delay the FDA's approval of Apotex's ANDA and to prolong Warner-Lambert's gabapentin monopoly.

To be sure, there is one comment in the record to support Apotex's delay claim. At one point, the district court stated, "[i]t is clear that the catalyst behind plaintiff's desire to prolong the entry of final judgment is so that plaintiff can preserve its monopoly in the marketplace for as long as possible." *Warner-Lambert Co. v. Apotex Corp.*, No. 98-4293, 2001 WL 736024, at *2 (N.D. Ill. June 28, 2001). But that comment came in response to an argument by Warner-Lambert that certifying the entry of summary judgment on the first claim of infringement might adversely affect the rights of Purepac. Knowing that

Warner-Lambert had sued Purepac for allegedly doing the same thing Apotex had done, and knowing that Purepac was Apotex's rival in the race to get an approved ANDA and win the exclusive right to market generic gabapentin, the district judge quickly saw through Warner-Lambert's hypocrisy.  But feigning concern for one's adversary is not the same thing as filing a claim for an improper purpose; one is within the boundaries of the law and the other is not.  And other than this one comment, the record contains nothing to indicate that Warner-Lambert filed its suit to keep Apotex out of the gabapentin market; under the regulations, Warner-Lambert no doubt knew that that would be a consequence of filing the suit, but Apotex has offered no evidence to convince the Court that this was a motivating factor in Warner-Lambert's decision to sue.

Nor does the record support Apotex's contention that Warner-Lambert's claims lacked any basis in law or fact.  Consistent with the Court's analysis in the previous section of this opinion, the Court finds sanctions under Rule 11 unwarranted.  It is easy to say, with the benefit of hindsight, that Warner-Lambert's claim on the '476 Patent was weak.  But a weak case does not by itself establish a Rule 11 violation; rather, there must be some evidence of bad faith or a callous disregard for the law.  *See, e.g., Allison v. Dugan*, 951 F.2d 828, 834 (7th Cir. 1992).  Here, Apotex has attempted to show bad faith simply by

suggesting that Warner-Lambert stood to lose billions if the FDA
approved Apotex's ANDA and allowed Apotex to enter the gabapentin
market.  But the fact that Warner-Lambert made a lot of money off
its gabapentin monopoly is not enough to prove that the company
was willing to break the rules to preserve that monopoly and that
it, in fact, did so.  Warner-Lambert's conduct was predicated on
a reasonable reading of the statutory framework relating to the
filing of NDAs and ANDAs.  To the extent those provisions create
perverse incentives or give rise to other problems because of the
way they are worded, those issues must be addressed by Congress.
For the Court's purposes, it is sufficient that what Warner-
Lambert did fell within the boundaries of the provisions as
written and interpreted at the time.

    C.    Apotex's Bill of Costs

Along with its motion for attorneys' fees, Apotex submitted
a Bill of Costs, with supporting invoices and documentation
attached, and a memorandum in support thereof.  Apotex seeks
$4,740.96 in deposition- and court reporter-related fees and
$17,485.05 in copying charges.  Warner-Lambert filed no response
or objections to the Bill of Costs.

Federal Rule of Civil Procedure 54(d) provides that "costs
other than attorneys' fees shall be allowed as of course to the
prevailing party unless the court otherwise directs."  The rule
does not give courts carte blanche to award any costs claimed,

19

however.  *See Farmer v. Arabian American Oil Co.*, 379 U.S. 227,

235 (1964).  Rather, absent some superceding statutory or

contractual authority, courts may award only those costs

specified in 28 U.S.C. §1920.  *See Crawford Fitting Co. v. J.T.*

*Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987).  Here, recoverable

costs are limited to: (1) fees of the clerk and marshal; (2) fees

for transcripts necessarily obtained for use in the case; (3)

fees for printing and witnesses; (4) fees for copies of papers

necessarily obtained for use in the case; (5) docket fees; and

(6) compensation of court appointed experts and interpreters.

*See* 28 U.S.C. § 1920.

Apotex seeks to recover copying charges and court reporter

and transcript fees, both of which generally fall within §1920.

But after carefully scrutinizing Apotex's bill of costs, the

Court finds that a portion of the reporter and transcript costs

Apotex seeks to recover must be disallowed.

First, in some cases, Apotex ordered deposition transcripts

in condensed form, by email or on a computer disk, in addition to

the traditional hardcopy versions.  Such niceties are purely

matters of convenience, not necessity, and these costs are

therefore not recoverable.  *See Zeidler v. A&W Restaurants, Inc.*,

No. 99 C 2591, 2001 WL 561367, at *1 (N.D. Ill. May 21, 2001)

(citing *EEOC v. Yellow Freight Services, Inc.*, No. 98 C 2725,

1999 WL 965854, at *3 (N.D. Ill. Oct. 14, 1999); *Fields v.*

20

*General Motors Corp.*, 171 F.R.D. 234, 236-37 (N.D. Ill. 1997)).
Accordingly, the Court will deduct these amounts (totaling
$252.00) from Apotex's bill of costs.

Apotex also seeks to recover certain expedited delivery and
courier delivery costs, as well as standard shipping and handling
costs charged by the court reporting agencies.  Such costs are
generally considered ordinary business expenses that may not be
charged in relation to obtaining transcripts.  *See Tirapelli v.*
*Advanced Equities, Inc.*, 222 F.Supp. 2d 1081, 1085, 1086 (N.D.
Ill. 2002) (citing *Rogers v. City of Chicago*, No. 00 C 2227, 2002
WL 423723, at *4 (N.D.Ill. Mar. 15, 2002)).  Thus, the Court will
deduct these costs (totaling $293.88) from Apotex's bill of
costs.

Finally, in some cases, Apotex paid for transcripts at a
rate higher than the rate that had been approved at the time by
the Judicial Conference.  When the depositions were taken in this
case, the approved per page rate for regular transcripts was
$3.00 per page, and the approved per page rate for copies was
$.75 per page.  *See Cengr v. Fusibond Piping Systems, Inc.*, 135
F.3d 445, 455 (7th Cir. 1998).  Nevertheless, Apotex paid $3.10
per page for Ronald Martin's deposition transcript, $3.85 for
Charles Taylor's and Elizabeth Garofalo's deposition transcripts,
and a whopping $6.16 per page for Geoffrey Woodruff's and John
Joubran's deposition transcripts.  And Apotex paid twice the

21

approved rate for copies of the transcripts of the depositions of Bernard Sherman, Don Barber, David Coffin-Beach, and Victor Gordon.  The Court will deduct from Apotex's bill of costs the amount exceeding the allowable rates (a total of $803.60).  *See* Local Rule 54.1.

The other entries on Apotex's bill of costs are properly taxable under §1920, and, except as indicated above, the amounts of the fees are reasonable.  The Court therefore recommends that the district court award costs to Apotex in the amount of $20,876.53 (consisting of $17,485.05 in copying costs and $3,391.48 in court reporter- and transcript-related charges).

## CONCLUSION

For the reasons set forth above, the Court finds that Apotex failed to show, by clear and convincing evidence, that this is an exceptional case within the meaning of 35 U.S.C. §285; nor has Apotex shown that Warner-Lambert filed or pursued its claims in violation of Rule 11. The Court therefore recommends that the district court deny Apotex's Motion for Attorneys' Fees and Related Expenses. With respect to Apotex's Bill of Costs, the Court finds that, except as noted above, the requested costs are recoverable and reasonable. The Court therefore recommends that the district court award Apotex costs in the amount of $20,876.53.

Date: July 25, 2003

RESPECTFULLY SUBMITTED:

ARLANDER KEYS
United States Magistrate Judge

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable Paul E. Plunkett. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut General Life Ins. Co.,* 900 F.2d 1032, 1039 (7th Cir. 1990).