# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL Docket No. 1629 Master File No. 04-10981 |
| THIS ORDER RELATES TO: | ) ) ) | Judge Patti B. Saris Mag. Judge Leo T. Sorokin |
| ALL ACTIONS | ) ) | |

<u>Discovery Order No. 4</u>

August 17, 2006

SOROKIN, M.J.

Before the Court are the Sales and Marketing parties' competing scheduling proposals,
the Sales and Marketing Plaintiffs' Motion to Compel (#397), the Defendants' Motion to Compel
(#402) and the Products Liability Plaintiffs' Motion to Compel (#405). All documents produced
pursuant to this Order, or otherwise, must comply with all applicable HIPPA requirements and, if
necessary, the party producing the document must redact it to achieve HIPPA compliance.

1.    <u>Pretrial Schedule</u>

Expert discovery, including the disclosure of expert reports, shall precede the filing of
Summary Judgment Motions, as Defendants propose, rather than follow the filing of the motions,
as Plaintiffs propose. An Order will issue separately setting forth the schedule.

2.    Plaintiffs' Motion to Compel Defendants' Compliance with CMO#3 (Dkt#397)

The Motion to Compel is DENIED except as noted below.

All parties must produce privilege logs within thirty days of the production of the documents, CMO #3 is amended in this regard.  Defendants shall produce privilege logs for the documents already produced from twenty-eight custodians within ninety days of the date of this Order.  Regarding the Franklin privilege log issue, defense counsel shall send a letter to Plaintiffs' counsel explaining whether any documents were withheld and, if so, a proposed date for producing a privilege log.


3.    Defendants' Motion to Compel Documents from Plaintiffs' (#402)

The Motion to Compel is DENIED except as noted below.

Plaintiffs shall produce the non-Neurontin prescription drug claims for those persons prescribed Neurontin for the period one year before the first Neurontin prescription for the person to one year after the last Neurontin prescription for the person.  Plaintiff Kaiser shall provide the name of the doctor rather than the DEA number of the doctor.  Defendants may use the doctors' names for litigation purposes only.

Each Third Party Payor ("TPP") Plaintiff shall produce the medical claims data for each person prescribed Neurontin for the period one year before the first Neurontin prescription to one year after the last Neurontin prescription for that person.

Defendants' request for the medical records for all of the persons prescribed Neurontin and insured by the named TPP Plaintiffs presents an obvious burden and expense.  The parties have staked out diametrically opposing positions at the edges of the continuum of approaches to

2

this issue, e.g. Defendants seek at least the medical records of all such persons while Plaintiffs

contend defendants should receive not a single document. Neither of these positions are

persuasive. Whether or not these documents are ultimately relevant and admissible, the

"discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.

R. Civ. P. 26(b)(1). That said, the breadth of the discovery that Defendants seek would impose

an "undue burden or expense," Fed. R. Civ. P. 26(c), on the TPP Plaintiffs as well as on the

individual medical providers forced to find the documents. Accordingly, the Court orders the

following:

Each TPP Plaintiff shall produce the medical records in its possession, custody or

control for a random selection of two percent of all persons for whom the TPP Plaintiff paid for

Neurontin prescriptions for off-label uses at issue in this case, or for one hundred such persons,

whichever number is greater. For each insured for whom a TPP must produce medical records,

the TPP shall produce the medical records from the physician prescribing Neurontin to the

insured for the period beginning one year prior to the insured's first Neurontin prescription and

ending one year after the date of the last Neurontin prescription for that insured.

The named individual plaintiffs must produce either all of their medical records for the

period beginning one year prior to his or her first Neurontin prescription and ending one year

after the date of his or her last Neurontin prescription, or a medical release authorizing

Defendants to obtain the same.

The Motion to Compel ASEA to review one million individual paper records to find the

136,000 out of network prescription claims to then review these 136,000 documents to find the

subset of Neurontin prescriptions, if any, is DENIED. However, the question of whether ASEA

may obtain recovery for the Neurontin prescriptions within the foregoing records, absent such

discovery, is not now before the undersigned.

Kaiser's obligation to produce documents is not limited to documents located in

California. Kaiser's opposition indicates that in fact it has sought documents from outside

California. Kaiser shall produce to defendants a list of Kaiser doctors that have prescribed

Neurontin for the off-label uses at issue in this case.


4.    Products Liability Plaintiffs' Motion to Compel (#405)

The Motion to Compel is DENIED except as noted below.

Defendants shall produce the CMMS database and the Visitors Speakers database in their

entirety rather than limited, as Defendants propose, to the individual Plaintiffs' prescribing

physicians. While this discovery goes beyond the scope of the template discovery, it does not

render the template discovery "futile." The template discovery served to resolve plaintiff specific

discovery issues raised by the products liability actions.

Defendants' obligation to produce the so-called visitor speakers documents is not limited

to the documents pertaining to the individual Plaintiffs' prescribing physicians. The parties shall

confer in an effort to resolve the breadth and details of this request.

The confidentiality and contractual issues regarding the IMS (or related vendor) data shall

be resolved by counsel through the existing confidentiality orders in place and any additional

appropriate protections that may be necessary due to the nature of this information. Again,

Defendants' obligation to produce the data is not limited to the data pertaining to the individual

Plaintiffs' prescribing physicians. Accordingly, the parties shall confer to resolve the breadth and

4

details of this issue.

The Plaintiffs' requests regarding the media statements is moot in light of Defendants' response that they are producing the responsive documents, if any.

Plaintiffs' request for the United Kingdom and Ireland labels is moot in light of Defendants' response that they are producing these labels. Defendants shall clarify for Plaintiffs as to whether they are also producing the product summary information. The documents Plaintiffs refer to as "internal" or "basis" documents are relevant and material to the Plaintiffs' claims. The parties shall meet and confer to resolve the breadth and details of these requests.

In the future, the parties shall not file a discovery motion until the discovery responses are served and the meet and confer process, as to the subjects of the motion, concludes. All counsel are also reminded of the requirements of Local Rule 37.1(B)(2), (4) & (5).


SO ORDERED.

/s/ LEO T. SOROKIN
United States Magistrate Judge

5

# EXHIBIT B

BERNSTEIN LIEBHARD & LIFSHITZ, LLP

ATTORNEYS AT LAW

IO EAST 40TH STREET

NEW YORK, NEW YORK 10016

(212) 779-1414

FAX: (212) 779-3218

www.bernlieb.com

October 16, 2006

**VIA FACSIMILE**

Debbie MacGregor, Esq.

Davis Polk & Wardwell

450 Lexington Avenue

New York, NY 10017

Re: *In Re Neurontin Marketing and Sales Practices Litigation*
   *MDL No. 1629*

Dear Debbie:

I write in order to get a firm commitment from you as to when Plaintiffs can expect to receive: 1) the complete documents that you indicated would be produced in your August 24, 2006 letter; 2) the documents that Magistrate Sorokin ordered be produced in paragraph 4 of his August 17, 2006 Order; and 3) other documents previously discussed with James Murray, but where no agreement has yet been reached about the production of those documents.

In anticipation of your providing the requested documents in a timely and efficient manner, and pursuant to your recent request, I have spoken in detail to Ken Fromson, in an effort to prioritize the order of production for you. So that there is no misunderstanding, I have agreed to coordinate with Ken simply for efficiency sake. We still believe that Defendants should be diligently working on all categories of document production simultaneously so that Plaintiffs get access to the requested documents as soon as practicable. Indeed, that is how Plaintiffs have worked to provide documents to Defendants. We continue to maintain that Defendants' practice of completing one production before moving on to the next is inappropriate because it unnecessarily slows down discovery. Rather, the proper mode of production is for Defendants to be working on multiple productions simultaneously so that the case advances commensurate with Judge Saris' wishes.

Nevertheless, below is a prioritized list of documents that either the Court ordered Defendants to produce, Defendants have agreed to voluntarily produce or Defendants have agreed to get back us to on whether/when they will produce the requested documents. Kindly let me know by no later than the close of business on October 23, 2006, whether/when we can expect to receive each of these categories of documents. If we do not hear from you, or if we are unable to reach an accord on dates for production by October 23rd, we will immediately seek appropriate relief from the Court.

1) CMMS database/documents in their entirety (8/17/06 Order p. 4);

BERNSTEIN LIEBHARD & LIFSHITZ, LLP

Debbie MacGregor, Esq.
October 16, 2006
Page 2

2) Visitors Speakers database/documents in their entirety (8/17/06 Order p. 4);
3) IMS Documents (8/17/06 Order p. 4);
4) The entire Sherlock database, as well as all Post-Call Note Summaries and Weekly Activity Reports;
5) The entire Betsy database;
6) The Thought Leader Database (if different than the Besty Database);
7) Custodial Files of Marketing and Medical Personnel responsible for the marketing of Neurontin (8/24/06 letter p. 3);
8) Identification of Neurontin Marketing Strategies 1998-2001[1] (8/24/06 letter p. 3);
9) Documents relating to the efficacy/inefficacy of Neurontin 1998-2001[1] (8/24/06 letter p. 3);
10) Documents relating to refunds that Pfizer gave to customers for lack of efficacy or side effects;
11) Monthly physician tracking reports;
12) Warner-Lambert Documents from Morris Plains from 1998-2000, including, but not limited to, documents from the Sales and Marketing Department, Market Research Department, Information Management Department and Market Planning Department;
13) Documents relating to the internal Neurontin website, including, but not limited to, all archived materials and all back-up copies;
14) Budgets for Marketing, Advertising, Promotion, Sales, Research and Development of Neurontin for the applicable time period through at least May 31, 2001[1] (8/24/06 letter p. 3);
15) All operating plans for all departments, as well as minutes for all operating meetings;
16) Profit and Loss Statements, if any (8/24/06 letter p. 3).

In addition, on a somewhat separate but related note, you indicated in your August 24th letter that Information Related to Discussions with Micromedex were "produced in *Young* and are now available to Plaintiffs." Plaintiffs do not want to share in the *Young* production of documents. This is the case because, up until this point, redactions in the *Young* case (a case in which we are not a party), appear to be far more expansive than those permitted under Case Management Order ("CMO") No. 3 which governs this action. Thus, we ask that you kindly produce these documents in the MDL action and in accordance with all of the provisions of CMO No. 3.

Very truly yours,

Ronald J. Aranoff

cc: Thomas Greene, Esq.
    Richard Shevitz, Esq.
    Kenneth Fromson, Esq.

---

[1] Should the Court grant Plaintiffs' request and extend the applicable time period, we would expect Defendants to promptly supplement their production to include documents from the additional time period authorized by Judge Saris.

EXHIBIT C



# Finkelstein
# & PARTNERS
*Counselors At Law*

A Limited Liability Partnership

(800) 634-1212
Fax: (845) 562-3492
www.lawampm.com

Howard S. Finkelstein, P.C. (NY)
Andrew G. Finkelstein, P.C. (NY & NJ)
George M. Levy (NY)
Kenneth L. Oliver, P.C. (NY)
Joel S. Finkelstein, P.C. (NY, NJ, MA & FL)
Duncan W. Clark (NY)
Ronald Rosenkranz (NY)
Robert J. Camera (NY & NJ)
Joseph P. Rones (NY & FL)
Steven Lim (NY)
George A. Kohl, 2nd (NY & MA)
Eleanor L. Polimeni (NY)
Steven H. Cohen (NY)
Francis Navarra (NY)
Andrew J. Genna, LLM (NY & PA)
Thomas C. Yatto (NY)

Elyssa M. Fried-DeRosa (NY)
Mary Ellen Wright (NY)
Kenneth B. Fromson (NY, NJ & PA)
Joel Bossom (NY)
Nancy Y. Morgan (NY, NJ & PA)
Andrew L. Spitz (NY)
James W. Shuttleworth, III (NY)
Lawrence D. Lissauer (NY)
David E. Gross (NY & NJ)
Terry D. Horner (NY)
Robert F. Moson (NY)
Julio E. Urrutia (NY)
_____
Debra J. Reisenman (NY)
Michael T. McGarry (NY)
Steven P. Shultz (NY & MA)

Victoria Lieb Lightcap (NY & MA)
Ann R. Johnson (NY & CT)
Marshall P. Richer (NY)
Thomas J. Pronti (NY)
Kristina M. Cahill (NY & CT)
Kara L. Campbell (NY & CT)
Arieh Mazoff (NY)
Christopher T. Milliman (NY)
Silvia Fermanian (NY)
Edward M. Steves (NY)
Karen M. Queenan (NY & CT)
Mario M. DuSault (NY)
Andrew I. Falk (NY)
Glenn W. Kelleher (NY)
Melody A. Gregory (NY & CT)
Gail Schlanger (NY)

Elizabeth A. Wolff (NY & MA)

*Of Counsel*
Jules P. Levine, P.C. (NY & FL)
Michael O. Gittelsohn, P.C. (NY)
Joel A. Reback (NY & Israel)
Shaila Rosenrauch (NY)
Kenneth Cohen (NJ)
Cynthia M. Maurer (NY & NJ)
Raye D. Futerfas (NJ)
Frances M. Bova (NY & NJ)
Kenneth G. Bartlett (CT & NJ)
Ari Kresch (NY & MI)
Gustavo W. Alzugaray (NY & NJ)

*Accredited CLE Provider*

REFER TO OUR FILE #: 200599

October 18, 2006

James Rouhandeh
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Re:    Neurontin Products Liability Litigation
       MDL 1629

Dear Jim:

I have received attorney Ron Aranoff's correspondence, dated October 17, 2006. You have requested that Plaintiffs (both Sales and Products Plaintiffs) coordinate their demands for discovery and prioritize the order of document production in this litigation. I trust you have found Mr. Aranoff's letter informative. On behalf of the Product Liability Plaintiffs, I concur with his positions as set forth in his letter.

Importantly, Product Liability Plaintiffs are not limited by the 2001 timeframe that Mr. Aranoff references in his letter, and so discovery as to safety, efficacy, sales and marketing should be provided through the date of the last suicide (or suicide attempt) committed by a plaintiff who has brought a personal injury action. A review of cases transferred to the MDL demonstrates that Plaintiff Marilyn Blackwell claims to have attempted suicide on May 1, 2005 (see Index 06/2295). I also remind you that the limitations as to the scope of discovery that you have placed upon Sales Plaintiffs, in terms of the off-label indications for which the parties have sought discovery, is not consistent with the scope of discovery afforded to Product Liability Plaintiffs. Consequently, any attempt by Defendants to avoid producing discovery as to any particular indication would be improper.

Product Liability Plaintiffs also reject any offer by Defendants to accept documents previously exchanged in the <u>Young</u> (Orange County, New York) action. Defendants should produce discovery in the MDL and should do so in a form and fashion consistent with CMO 3.

As you know, fact discovery for Product Liability Plaintiffs and Defendants ends on December 31, 2006; we have had several discussions regarding outstanding discovery, and I have indicated our expectation that the outstanding discovery owed to Plaintiffs be provided by November 13, 2006. The fact discovery deadline in this case precludes further delay of discovery. As requested by Mr. Aranoff, I too hope to hear from you on or before October 23, 2006, so that we can reach a resolution on discovery. Otherwise, we will seek relief from the Court.

Newburgh • Albany • Binghamton • Goshen • Kingston • Middletown • Monroe • New Windsor • Newark • Poughkeepsie • Spring Valley • Syracuse • Troy • Utica

436 ROBINSON AVENUE
NEWBURGH, NY 12550

50 PARK PLACE, 10th FLOOR
NEWARK, NJ 07102

I look forward to hearing from you.

Very truly,

Kenneth B. Fromson

cc Ronald J. Aranoff

# EXHIBIT D

# DAVIS POLK & WARDWELL

| | | |
|---|---|---|
| 1300 I STREET, N.W.<br>WASHINGTON, D.C. 20005 | 450 LEXINGTON AVENUE<br>NEW YORK, N.Y. 10017<br>212 450 4000<br>FAX 212 450 3800 | MESSETURM<br>60308 FRANKFURT AM MAIN |
| 1600 EL CAMINO REAL<br>MENLO PARK, CA 94025 | | MARQUÉS DE LA ENSENADA, 2<br>28004 MADRID |
| 99 GRESHAM STREET<br>LONDON EC2V 7NG | WRITER'S DIRECT<br>212 450 4853 | 1-6-1 ROPPONGI<br>MINATO-KU, TOKYO 106-6033 |
| 15, AVENUE MATIGNON<br>75008 PARIS | | 3A CHATER ROAD<br>HONG KONG |

October 24, 2006

Re:    **In re Neurontin Marketing, Sales Practices and Products Liability
       Litigation, MDL No. 1629**

Mr. Ronald J. Aranoff, Esq.
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street
New York, New York  10016

Dear Ron:

I write with respect to your October 16, 2006 letter requesting that defendants provide information regarding the time-frame for the production of certain discovery materials.

Your letter identifies sixteen categories of documents that you state "either the Court ordered Defendants to produce, Defendants have agreed to voluntarily produce or Defendants have agreed to get back to us on whether/when they will produce the requested documents." For a number of the categories, you include a cross-reference to specific Orders or correspondence. Knowing those items that are most important to plaintiffs allows us to better concentrate our discovery efforts. Please note, however, that defendants have been diligently pursuing multiple discovery requests at the same time, and are not completing one production before moving on to the next, as you characterize in your letter.

Indeed, as you are aware, on September 8, 2006, defendants produced almost 85,000 pages of trial master file and case report forms relating to Neurontin. On September 28, 2006, defendants produced additional Neurontin materials from the period prior to 2000. In addition, plaintiffs insisted on receiving information related to the named plaintiffs' prescribing physicians and their identified current or former partners prior to allowing the depositions of the prescribing physicians to go forward. These materials are being provided to you tomorrow. Defendants will be producing the vendor documents relating to Cline Davis & Mann and Sudler & Hennessy by the end of October. In addition, defendants will be providing, as ordered by the Court, a privilege log relating to the 28 custodians whose materials we produced in the *Young* action. Defendants have also been working on supplementing the productions for these custodians.

Mr. Ronald J. Aranoff, Esq.                2                October 24, 2006

Below, I provide our best estimate of dates by which defendants can produce certain categories identified in your letter. Defendants recognize that these categories are being used as short-hand to reflect previous discussions, correspondence and Orders, and the scope of the request is defined by those underlying materials and discussions and by the discovery orders in this case, not by the descriptions contained in your letter. Without agreeing to any characterization of the categories provided in the October 16th letter,[1] and reserving all of our rights and objections, defendants expect to produce materials as set forth in greater detail below.

*November 22, 2006:*

- Visitors Speakers documents (category 2): We have not located a database related to the Parke-Davis / Warner-Lambert Speakers Bureau. In response to this request, we will produce, in Excel format, documents identifying payments to physicians who may have acted as speakers for Neurontin during the period 1996 – 2000. To the extent that relevant documents relating to these speakers exist, they will either be contained in materials already produced or will be produced by February 16, 2007 as part of the production of category number 12.

- "Profit and Loss" Statements (category 16)

*December 15, 2006*

- Custodial Files of the Neurontin marketing team and Neurontin Medical Personnel (category 7): Defendants will engage in a rolling productions of responsive documents from custodial files, commencing on December 15, 2006. Given the nature of this request and the lack of visibility regarding the full scope of what will be entailed in responding to it, we cannot at this time provide an accurate estimate of when defendants will complete this production. Defendants will continue to devote substantial resources to the issue, however, and will endeavor to complete this production within 90 days of commencement. If defendants learn that they cannot complete the production on that schedule, defendants will promptly advise plaintiffs of that fact.

---

[1] Defendants also do not agree with the characterizations relating to the scope of production contained in the October 6, 2006 letter from Thomas Greene, which we will respond to separately.

Mr. Ronald J. Aranoff, Esq.                    3                    October 24, 2006

### *January 15, 2006*

- CMMS database (category 1)

- Sherlock database (category 4)

- BETSY database (category 5)

### *February 16, 2006*

- Relevant Warner-Lambert Neurontin documents from Morris
  Plains from 1998 – 2000 (category 12)

*Categories 8, 9 and 14:* Materials called for in these categories either
have been produced already or will be included in the production of other
categories of documents. Specifically, certain documents relating to Neurontin
Marketing Strategies (category 8), budgets for Marketing, Advertising,
Promotion, Sales, Research and Development of Neurontin (category 14), and the
efficacy or inefficacy of Neurontin (category 9) have already been produced.
Indeed, with respect to category 9, defendants have produced hundreds of
research reports related Neurontin clinical trials and a bibliography or Neurontin
articles. Defendants also have made available for inspection and copying the
Neurontin NDAs and INDs, as well as hundreds of boxes containing underlying
materials relating to clinical research trials. Additional responsive materials
related to these three categories will be produced to the extent they are contained
within, and on the production time-frame for, categories 7 and 12.

*Category 3:* With respect to category 3, IMS documents, defendants are
unable to provide an estimate at this time due to the need, as recognized by the
Court in its August 17, 2006 Order, to work out contractual obligations with the
vendor from whom we receive such information. In addition, the Court's Order
also stated that the parties should confer to determine the "breadth and details" of
the production of such materials. Since the date that Order was entered, plaintiffs
have made no effort to schedule a meet and confer session regarding either the
contractual issue or the scope of any production. We suggest that the parties
schedule a meet and confer session in the near future, as ordered by the Court, to
address this issue.

*Categories 6, 10, 11, 13 and 15:* At defendants' request, you provided
additional cross-references with respect to categories 6, 10, 11, 13, and 15 on
October 20, 2006.. These cross-references relate to Plaintiffs' First Request for
Production. I have reviewed the identified requests, defendants' Responses and
Objections to these requests, and notes from the various meet-and-confer sessions
conducted in 2005 and correspondence exchanged between the parties. With
respect to monthly physician tracking reports (category 11), such documents, if

Mr. Ronald J. Aranoff, Esq.                4                        October 24, 2006

any, have been produced already or will be produced to the extent they are
contained within, and on the production time-frame for, categories 7 and 12.

To my knowledge, the remaining categories (6, 10, 13, and 15) were not
identified in the requests or in the meet and confer sessions, nor am I aware that
they were raised in the months since those sessions occurred. Several of these
categories are vague and ambiguous, and defendants are unable to ascertain their
meaning, and/or they appear overly broad on their face. Defendants suggest that
the parties meet and confer to discuss these items further.

Finally, please note that there are a number of outstanding discovery items
that either the sales and marketing plaintiffs or the products liability plaintiffs owe
defendants. We will address these issues under separate cover.

We are available to discuss the above if you have any questions.

Sincerely,

Debbie MacGregor

cc:      Thomas Greene, Esq.
         Richard Shevitz, Esq.
         Kenneth Fromson, Esq.

By Facsimile

# EXHIBIT E

# GREENE & HOFFMAN

PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

FACSIMILE
(617) 261-3558
EMAIL
office@greenehoffman.com

125 SUMMER STREET, SUITE 1410
BOSTON, MASSACHUSETTS 02110
(617) 261-0040
www.greenehoffman.com

October 6, 2006

SENT BY FIRST CLASS MAIL
 & FACSIMILE (212) 450-3835

James P. Rouhandeh, Esq.
Davis, Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Re:   In re: Neurontin Marketing and Sales Practices Litigation, MDL No. 1629

Dear Mr. Rouhandeh:

I am writing on behalf of the Sales and Marketing Plaintiffs to seek clarification of your client's position regarding the scope of discovery and to ascertain what efforts your firm will undertake to look for and produce relevant documents. I have reviewed, among other things, the letter from Debbie MacGregor to Susan Collyer dated August 24, 2006 ("the MacGregor Letter"), in which you make unilateral decisions as to what topics are relevant to this litigation. I am referring specifically to the following: (1) the repeated statements made by you and in the MacGregor Letter that your client will only produce documents relating to the "off-label use of Neurontin for one of the relevant indications," or "indications remaining in the litigation"; (2) the repeated statements made by you and in the MacGregor Letter that your client will only produce documents relating to the "relevant events"; (3) the clear indications that you intend to withhold non-privileged documents from the 40-60 boxes of documents that were produced by Cline Davis & Mann, Sudler & Hennessey, and other vendors to the United States Attorney during the *Franklin* litigation.

Based on the foregoing, I am concerned whether your client intends to meet its discovery obligations. Nevertheless, before filing a motion to compel, I would like to seek clarification of your positions and determine whether, in light of Judge Saris's denial of your second motion to dismiss, your position has changed. I will now take each of the issues in order:

Letter to James P. Rouhandeh, Esq.
October 6, 2006
Page 2

    (1)    "Relevant Indications and Relevant Events"

In 2005, during the series of meets and confers we had to discuss the Sales and Marketing Plaintiffs' document requests, James Murray repeatedly informed us that Pfizer intended to produce all documents within the relevant period that related to all off-label marketing of Neurontin. Now that the Court has defined that period as through May 31, 2001 (and will likely enlarge that period through 2004 once the Sales and Marketing Plaintiffs submit their Third Amended Complaint specifically identifying events through 2004 where the defendants attempted to promote Neurontin for non-approved uses through misleading statements) Defendants appear to have retreated from this commitment. As referenced above, Defendants now claim that due to the Court's narrowing of the Plaintiff's claims, it will only produce marketing and related documents concerning "relevant indications" and "relevant events".

Sales and Marketing Plaintiffs do not believe that there are any treatment areas and indications that were relevant at the time of the 2005 meet and confers, but are no longer relevant to this litigation as a result of the Court's rulings. Indeed, while we are aware of the Court limiting some of the techniques the Defendants used to mislead physicians regarding the efficacy of Neurontin for off-label uses, we are unaware of any rulings by the Court that Defendants' marketing efforts regarding any specific indication were not misleading or any ruling prohibiting the Sales and Marketing Plaintiffs from obtaining discovery regarding a specific indication. Accordingly, if Defendants intend to withhold any documents regarding their efforts to communicate (either directly or through vendors and third parties retained by Defendants) information relating to the use of Neurontin to treat indications not approved by the FDA, identify specifically the treatment areas and indications that you contend are no longer discoverable given the various rulings in this case. In other words, identify the classes of documents, by off-label indication that you are refusing to provide so we have an ability to determine if such documents are being properly withheld.

Similarly, it appears that Defendants intend to withhold documents relating to particular events that they contend are no longer relevant to the case, regardless of whether the events fall within the time period deemed relevant by the Court or pertain to off label uses that the Sales and Marketing Plaintiffs allege were promoted by misleading means. As you recall, the Sales and Marketing Plaintiffs were not required to allege each and every event where false statements occurred, given that the evidence of events is in the "exclusive control" of your client. Accordingly, Sales and Marketing Plaintiffs are entitled to production of documents relating to all physician-attended marketing events. Unless you are willing to search for and produce documents sufficient to show all marketing events for Neurontin within the time period prescribed by the Court, please inform us how you are determining the events for which you are producing documents.

Letter to James P. Rouhandeh, Esq.
October 6, 2006
Page 3

      (2)     Cline Davis & Mann and Sudler & Hennessey Documents

     Your client's failure to produce the 40-60 boxes of documents that were produced by Cline Davis & Mann, Sudler & Hennessey, and other vendors to the United States Attorneys Office is particularly troubling. I first informed you of our intent to seek production of these documents on or about December 6, 2004. There was a meet-and-confer more than one year ago, in which we sought production of these documents. I have recently learned that, notwithstanding a Court order more than two months ago, you have barely begun the process of producing the documents. Your client's delay in producing these documents is prejudicial to the Sales and Marketing Plaintiffs, and borders on contempt for the Court's order. These documents do not need to be reviewed for privilege, since they were already reviewed for privilege before they were produced to the United States Attorneys Office. Moreover, since they are not Pfizer's documents, there is no reason there would be privileged material in the documents. Accordingly, we seek production of the documents in their entirety, including audiotapes and videotapes, within 30 days.

     We have other concerns with the statements made in the MacGregor Letter, which we will raise at the appropriate juncture. In the interests of expediency and judicial economy, I thought it best to raise the above issues now. Please do not take my silence on those other issues as tacit approval.

     I look forward to hearing from you on these matters.

                    Very truly yours,

                    Thomas M. Greene

TMG/

cc:    Debbie MacGregor, Esq.
       Irwin Levin, Esq.
       Ronald Aranoff, Esq.
       Susan Collyer, Esq.
       Ed Notargiacomo, Esq.
       Linda Nussbaum, Esq.
       Gerald Lawrence, Esq.
       Mark Sandmann, Esq.
       Kenneth Fromson, Esq.

# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | )<br>)MDL Docket No. 1629<br>)<br>)Judge Patti B. Saris<br>)Magistrate Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO:<br>PRODUCT LIABILITY LITIGATION | )<br>)<br>)Civil Action No. 04-10981<br>)<br>) |

**PRODUCT LIABILITY PLAINTIFFS' REQUESTS FOR PRODUCTION OF
DOCUMENTS AND THINGS TO DEFENDANTS PFIZER, INC., WARNER
LAMBERT COMPANY LLC, PARKE-DAVIS, A Division of Warner Lambert
Company, and WARNER LAMBERT COMPANY**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, the Plaintiffs hereby request

Defendants Pfizer, Inc and Warner-Lambert Company produce for inspection and

copying the documents and materials described below at the offices of Finkelstein &

Partners, 436 Robinson Avenue, Newburgh, NY 12550 within thirty days of the date of

the service of this request. Plaintiffs further request that such production be made in

accordance with the Definitions and Instructions set forth below.

### Definitions and Instructions

### Definitions

The definitions contained in Rule 26.5 of the Local Rules of the United States District

Court for the District of Massachusetts are incorporated herein by reference.

Additionally, the following definitions apply to this Document Request:

"And" includes the word "or" and vice-versa.

"Any" includes the and encompasses "all" and vice-versa.

"Communication" shall include oral, written or electronic communications.

"Defendants" shall mean "Pfizer" and "Warner-Lambert" and any of their predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf, including, but not limited to, Parke-Davis.

"Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure, and Local Rule 26.5, and includes all forms of writings as defined in Rule 1001(1) of the Federal Rules of Evidence, and includes any reduction to tangible form, whether written, recorded, taped, filmed, videotaped or in computer, digital or magnetic memory or storage, of communication, information, or data, including any graphic matter of any kind or nature, however produced or reproduced, and also includes originals, drafts, and non-identical copies, wherever located. "Document" shall include, but not be limited to, books, contracts, agreements, correspondence, electronic mail (email), computer tapes, discs, magnetic memory, printouts and keypunch cards, memoranda, diaries, notes reports, bulletins, printed forms, telegraphic communications, pleadings and other legal papers, notes, telexes, telegrams, telecopies, facsimile reproductions, or "faxes," factual compilations, data compilations, statistical compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work, graphics, checks, ledgers, catalogues, brochures, pamphlets, press releases, advertisements, invoices, minutes, photographs, microfilms, microfiche, films, personnel files, quotes, stenographic notes, computer disks, telephone records, schedules, bids,

voice recordings, and transcriptions.  This definition shall apply to all Documents in the

possession, custody or control of the Defendants herein, or that of their attorneys, agents,

employees, officers, directors, or representatives, irrespective of who generated, prepared

or signed the Documents.

Unless otherwise stated, the time period for this Document Request shall be from

January 1, 1994 to June 30, 2006.  A request to provide documents or materials "at any

time" is unlimited in temporal scope.

As used throughout these requests, the term "internal", which will be found

preceding the term document(s) correspondence, refers to communications by and

between employees, agents or representatives of Defendants.

## REQUESTS

1. Produce the custodial files of the following individuals, to include all documents
   pertaining to the safety, efficacy, sales and marketing of Neurontin (including
   emails and electronic communications) authored by, created by, edited by,
   received by, reviewed, read, or copied on by the following individuals:

   > Attias-Yon, Elizabeth
   > Batesko, Susan
   > Blanckmeister, Carolyn
   > Brody, Bob
   > Brown, Judy
   > Campbell, Michael
   > Crespo, Angela
   > Dickens, Annette
   > Doft Suzanne
   > Fannon, Allison
   > Fogleman, LeeAnne
   > Gasparella, Doreen
   > Glanzman, Robert
   > Gracon, Stephen
   > Hauben, Manfred
   > Holley, Preston
   > Hylan, Tim

Johansen, Joel
Kerrick-Walker, Jill
Marino, John
Magnus-Miller, Leslie
Pacella, Chris
Panek, Diana
Parsons, Bruce
Patel, Manini
Perlow, Larry
Pomerantz, Steve
Pritts, Jill
Probert, David
Reich, Lester
Rocchi, John
Sigmund, William
Teicher, Martin
Vega, Adrian
Williams, Barbara
Womer, Dan
Yoder, Meg

2.  The database that maintains the listing of approved speakers that a representative can use for a promotional talk, as described by Suzanne Doft during her examination under oath on March 29, 2005:

> A. For speakers bureau participants, there is an approved database of speakers that a representative can use." (p.127).

4.  Documents reflecting Neurontin-related meetings held in all states in the United States and Neurontin-related payments to physicians, institutions, or investigators, including, but not limited to the following: physicians who attended Neurontin meetings, physicians who spoke at speakers' bureau meetings.

5.  All documents relating to marketing, sales or prescribing data regarding Neurontin Defendants have received from IMS Health.

6.  All documents relating to any review, analysis or critique of data Defendants received from IMS Health relating to Neurontin.

7.  The IMS data used by the Marketing Analytics Department, to the extent it involves Neurontin, as described by Suzanne Doft during her examination under oath on March 29, 2005.

*A. Marketing Analytics would use most of our databases to generate data.
. . .A. IMS . . . What do they utilize that for? A. To track product, new
prescriptions, total prescriptions. (p.174-5).*

8.  Documents, if any exist,  authored by, created by, edited by, received by,
    reviewed, read, copied on, or in the custodial file of  Pfizer spokesman Paul
    Fitzhenry that formed the basis for his statement published in the U.S.A. Today
    on April 21, 2005:

    *"Pfizer spokesman Paul Fitzhenry says Neurontin adverse event reports over the
    past decade 'show no link between Neurontin and suicidal thoughts or
    behavior.'"*

9.  Documents, if any exist,  authored by, created by, edited by, received by,
    reviewed, read, copied on, or in the custodial file of  Pfizer spokesman, Bryant
    Haskins  that formed the basis for his statement published in the San Francisco
    Chronicle on April 21, 2005:

    *"'Pfizer maintains an extensive program for tracking and reporting medical
    events associated with the use of Neurontin, as we do for all our medicines.... The
    comprehensive data --- including clinical trial results--- that we've submitted to
    the FDA over the past decade refute any suggestion that Neurontin causes
    depression, suicidal thoughts or suicidal behavior.... Haskins, the company
    spokesman, said the data don't support Finkelstein's demand for a prominent
    'black box' warning on Neurontin's label –the FDA's most stringent enforcement
    action short of banning a drug. 'It's simply irresponsible to promote the false
    impression that a causal link exists between  the use of Neurontin and suicide,'
    said Haskins.'"*

10. Documents, if any, reflecting the subject matter of the consulting assignment for
    Pfizer performed by Dr. Cynthia McCormick  as described in the San Francisco
    Chronicle on April 21, 2005:  *"This is not an unexpected event in the population it
    was approved for,' said McCormick, who did a brief consulting assignment for
    Pfizer about a year ago."*

11. Copies of each Label and Summary of Product Characteristics pertaining to
    Defendants' Neurontin in the United Kingdom for each year that Neurontin has
    been approved for distribution in the United Kingdom.

12. Copies of each Label and Summary of Product Characteristics pertaining to
    Defendants' Neurontin in Ireland for each year that Neurontin has been approved
    for distribution in Ireland.

13. Produce all internal documents relating to Neurontin that identify or discuss the
    following language, as set forth in Defendants' labeling or Summary of Product
    Characteristics in Ireland:

*"Patients with epilepsy can be the subject of mood and behavioural disturbances. Such reports have been noted in patients on Neurontin although a causal link has not been established."*

11. Produce all documents pertaining to Neurontin, whether internal or otherwise, that reflect the basis of Defendants' decision to utilize the following language in Defendants' labeling or Summary of Product Characteristics in Ireland:

*"Patients with epilepsy can be the subject of mood and behavioural disturbances. Such reports have been noted in patients on Neurontin although a causal link has not been established."*

12. Produce all internal documents relating to Neurontin that identify or discuss the following language, as set forth in Defendants' labeling or Summary of Product Characteristics in the United Kingdom:

*"Patients taking Neurontin can be the subject of mood and behavioural disturbances. Such reports have been noted in patients on Neurontin although a causal link has not been established . . . . Caution is recommended in patients with a history of psychotic illness. On commencing Neurontin therapy, psychotic episodes have been reported in some patients with, and rarely without, a history of psychotic illness. Most of these events resolved when Neurontin was discontinued or the dosage was reduced."*

13. Produce all documents pertaining to Neurontin, whether internal or otherwise, that reflect the basis of Defendants' decision to utilize the following language in Defendants' labeling or Summary of Product Characteristics in the United Kingdom:

*"Patients taking Neurontin can be the subject of mood and behavioural disturbances. Such reports have been noted in patients on Neurontin although a causal link has not been established . . . . Caution is recommended in patients with a history of psychotic illness. On commencing Neurontin therapy, psychotic episodes have been reported in some patients with, and rarely without, a history of psychotic illness. Most of these events resolved when Neurontin was discontinued or the dosage was reduced."*

14. Produce all internal documents pertaining to Neurontin that identify or discuss whether the United States labeling or package insert should include language, either specifically, or in sum and substance, that caution is recommended in patients with a history of depression or psychotic illness.

15. CMMS Database: Produce an electronic copy of sales tracking data from Defendants' database (with all data inputted pertaining to Neurontin) relating to Defendants' Neurontin from January 1, 1994 through June 30, 2006.

16. All correspondence, e-mails, memorandum, minutes of meetings, documents or materials reflecting contact or communication between any employee or agent of the Defendants pertaining to Neurontin, as to the following:

    a. Teleconferences in which a physician or scientist who was identified by members of the Parke-Davis Department of Medical and Scientific Affairs as being knowledgeable about Neurontin could answer questions regarding Neurontin.

    b. The prohibition by Defendant Parke-Davis of members of the Department of Medical and Scientific Affairs from organizing or participating in group meetings or teleconferences held to respond to questions concerning off-label uses of products marketed by Parke-Davis.

    c. The selection of physicians and scientists who would respond to questions posed by participants.

17. For the time period since Neurontin's introduction to the market through June 30, 2006, Plaintiff requests production (in electronic, searchable format) of information from Defendants' electronic database used by Defendants to collect all information, names, addresses, dates, locations, details, budgets, money spent or other information on any presentation, lecture, continuing medical education program made by any physician on behalf of Defendants or (as a member of Defendants' Speakers Bureau or expert group) regarding Defendants' Neurontin.

18. Based upon Defendants' correspondence to the FDA, Center for Drug Evaluation and Research, dated June 9, 1997, attached hereto as EXHIBIT A, Plaintiff requests the following production with respect to Defendants' Neurontin, and limited to the safety, efficacy, sale and marketing of Neurontin:

    a. All documents produced by Defendants to the FDA referenced in the abovementioned correspondence, dated June 9, 1997;

    b. All documents (including all emails and electronic communications) created by, edited by, received by, reviewed, read, copied on, or in the custodial files of the Area Business Manager (ABM), relating to the implementing of Defendants' sales plan, hiring, training, conducting performance reviews, making salary and promotion recommendations of Defendants' territory managers and sales representatives.

19. With respect to correspondence, dated July 19, 1996, from the FDA Department of Health and Human Services, attached hereto as EXHIBIT B, Plaintiff requests production of the following:

    a. All correspondence, e-mails, memorandum, minutes of meetings, documents or materials reflecting contact or communication between any employee or agent of the Defendants pertaining to Neurontin and the

subject matter set forth in the above referenced correspondence, dated July 19, 1996, from the FDA Department of Health and Human Services, attached hereto as EXHIBIT B.

b.  All documents submitted to the FDA in response to said correspondence, dated July 19, 1996.

c.  A copy of all non-privileged drafts of any document submitted to the FDA in response to said correspondence, dated July 19, 1996.

20. With respect to correspondence, dated March 16, 2005, from the FDA Department of Health and Human Services, attached hereto as EXHIBIT C, Plaintiffs request production of the following:

a.  All correspondence, e-mails, memorandum, minutes of meetings, documents or materials reflecting contact or communication between any employee or agent of the Defendants pertaining to Neurontin and the subject matter set forth in the above referenced correspondence, dated March 16, 2005, from the FDA Department of Health and Human Services, attached hereto as EXHIBIT C.

b.  All documents submitted to the FDA in response to said correspondence, dated March 16, 2005.

c.  A copy of all non-privileged drafts of any document submitted to the FDA in response to said correspondence, dated March 16, 2005.

d.  all documents reflecting research that formed the basis of Defendants' response to the FDA's correspondence.

21. With respect to documents, dated December 21, 2005, submitted by Defendants to the FDA as a "Changes Being Effected" supplemental new drug application, pertaining to Neurontin, in which Defendants' Neurontin label added the terms suicide attempt and suicide in the label section entitled "Other Adverse Events Observed During All Clinical Trials", Plaintiffs request production of the following:

a.  All correspondence, e-mails, memorandum, minutes of meetings, documents or materials reflecting contact or communication between any employee or agent of the Defendants pertaining to Neurontin and the subject matter set forth in the above referenced documents, dated December 21, 2005.

b.  All documents submitted to the FDA pertaining to said documents, dated December 21, 2005.

    c.  A copy of all non-privileged drafts of any document submitted to the FDA pertaining to the above referenced "Changes Being Effected" supplemental new drug application.

    d.  All documents reflecting research that formed the basis of Defendants' response to the FDA's correspondence.

22. With respect to correspondence, dated May 3, 2006, from the FDA Department of Health and Human Services, attached hereto as EXHIBIT D, Plaintiffs request production of the following:

    a.  All correspondence, e-mails, memorandum, minutes of meetings, documents or materials reflecting contact or communication between any employee or agent of the Defendants pertaining to Neurontin and the subject matter set forth in the above referenced correspondence, dated May 3, 2006, from the FDA Department of Health and Human Services, attached hereto as EXHIBIT D.

23. Sales Data:  Documents sufficient to identify and reflect gross and net sales information for Defendants' Neurontin,  for each year of sales since entry of Defendants' Neurontin to the market through June 30, 2006.

24. All records, emails, drafts, proposals, databases, and documents of every kind and character regarding clinical trial 945-209, including but not limited to all reports, studies, letters, anecdotes, file reviews, case reviews, retrospective reviews, announcements, solicitations, protocols, budget allocations, invitations to physicians to participate, patient evaluations, tests, measurements, observations, conclusions, articles, publications, drafts, and announcements regarding clinical trial 945-209.

Dated: July 1, 2006

FINKELSTEIN & PARTNERS

By:      /s/Kenneth B. Fromson
            /s/Andrew G. Finkelstein
            Kenneth B. Fromson
            Andrew G. Finkelstein

            436 Robinson Avenue
            Newburgh, NY 12550
            (845) 562-0203

            Attorneys for Product Liability Plaintiffs

By: Electronic Mail and U.S. Mail

# EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | ) )MDL Docket No. 1629 ) )Judge Patti B. Saris )Magistrate Judge Leo T. Sorokin ) |
| THIS DOCUMENT RELATES TO: PRODUCT LIABILITY LITIGATION | ) ) )Civil Action No. 04-10981 ) ) |

**PRODUCT LIABILITY PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANTS PFIZER, INC., WARNER LAMBERT COMPANY LLC, PARKE-DAVIS, A Division of Warner Lambert Company, and WARNER LAMBERT COMPANY**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, the Plaintiffs hereby request

Defendants Pfizer, Inc and Warner-Lambert Company produce for inspection and

copying the documents and materials described below at the offices of Finkelstein &

Partners, 436 Robinson Avenue, Newburgh, NY 12550 within thirty days of the date of

the service of this request. Plaintiffs further request that such production be made in

accordance with the Definitions and Instructions set forth below.

### Definitions and Instructions

### Definitions

The definitions contained in Rule 26.5 of the Local Rules of the United States District

Court for the District of Massachusetts are incorporated herein by reference.

Additionally, the following definitions apply to this Document Request:

"And" includes the word "or" and vice-versa.

"Any" includes the and encompasses "all" and vice-versa.

"Communication" shall include oral, written or electronic communications.

"Defendants" shall mean "Pfizer" and "Warner-Lambert" and any of their predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf, including, but not limited to, Parke-Davis.

"Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure, and Local Rule 26.5, and includes all forms of writings as defined in Rule 1001(1) of the Federal Rules of Evidence, and includes any reduction to tangible form, whether written, recorded, taped, filmed, videotaped or in computer, digital or magnetic memory or storage, of communication, information, or data, including any graphic matter of any kind or nature, however produced or reproduced, and also includes originals, drafts, and non-identical copies, wherever located. "Document" shall include, but not be limited to, books, contracts, agreements, correspondence, electronic mail (email), computer tapes, discs, magnetic memory, printouts and keypunch cards, memoranda, diaries, notes reports, bulletins, printed forms, telegraphic communications, pleadings and other legal papers, notes, telexes, telegrams, telecopies, facsimile reproductions, or "faxes," factual compilations, data compilations, statistical compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work, graphics, checks, ledgers, catalogues, brochures, pamphlets, press releases, advertisements, invoices, minutes, photographs, microfilms, microfiche, films, personnel files, quotes, stenographic notes, computer disks, telephone records, schedules, bids,

voice recordings, and transcriptions. This definition shall apply to all Documents in the

possession, custody or control of the Defendants herein, or that of their attorneys, agents,

employees, officers, directors, or representatives, irrespective of who generated, prepared

or signed the Documents.

A request to provide documents or materials "at any time" is unlimited in

temporal scope.

As used throughout these requests, the term "internal", which will be found

preceding the term document(s) correspondence, refers to communications by and

between employees, agents or representatives of Defendants.


## REQUESTS

1. Produce the custodial files of the following individuals, to include all documents
   pertaining to the safety, efficacy, sales and marketing of Neurontin (including
   emails and electronic communications) authored by, created by, edited by,
   received by, reviewed, read, or copied on by the following individuals:

   > Douglas Feltner

2. Produce a current set of standalone CD-ROM disks that represent Defendants'
   comprehensive interactive Neurontin library as described in document
   Pfizer_LTive_0029659.

3. Produce all documents related to the "recently reported suicide case" as identified
   in document Pfizer_APande_0003890, and which further states the following:

   > "The objective of this meeting held 17th March, was to share information
   > known to date on the recently reported suicide case (drug related as per the
   > PI) and agree the next steps to meet FDA request for further information
   > on this case. . .
   > **Next steps**
   > Larry stressed the importance now of collecting the following information
   > to meet FDA request for all information on this patient –
   > • CRF, and database all the information
   > • copy source documentation
   > • obtain past medical record

- any police, coroner or newspaper reports

All this information would then be reviewed and a summary prepared and included with the rest of the above information."

4. A copy of the entire Investigational, New, Abbreviated or Supplemental Drug Application for Defendant PFIZER's Pregabalin.

5. An electronic copy of the adverse event database (complete with input data) used to record, file, sort, search, index and detail all reports of adverse events or Medwatches and that includes adverse events reported with patients using Defendant Pfizer's Pregabalin.

6. All reports or documents related to overdose, psychiatric and psychobiological adverse events reported for clinical trial patients who participated in any study on Defendant Pfizer's Pregabalin.

7. All correspondence, e-mails, FDA contact sheets, memorandum, minutes of meetings, documents or materials relating to contact or communication between any employee or agent of the Defendant Pfizer and the Food and Drug Administration BEFORE the filing of an Investigational, New, Abbreviated or Supplemental Drug Application by Defendant Pfizer for Pregabalin.

8. All correspondence, e-mails, FDA contact sheets, memorandum, minutes of meetings, documents or materials relating to contact or communication between any employee or agent of the Defendant and the Food and Drug Administration AFTER the filing of any Investigational, New, Abbreviated, or Supplemental Drug Application by Defendant Pfizer for Pregabalin.

9. A copy of all of the labels, package inserts or warnings for Defendant Pfizer's Pregabalin for all years of sale.

10. Produce all internal documents relating to Pregabalin that identify or discuss the following language, as set forth in Defendants' labeling:

> "[Pregabalin] is inactive at serotonin and dopamine receptors and does not inhibit dopamine, serotonin, or noradrenaline reuptake."

11. Produce all documents pertaining to Pregabalin, whether internal or otherwise, that reflect the basis of Defendants' decision to utilize the following language in Defendants' labeling:

> "[Pregabalin] is inactive at serotonin and dopamine receptors and does not inhibit dopamine, serotonin, or noradrenaline reuptake."

Dated: September 11, 2006

FINKELSTEIN & PARTNERS

By:     /s/Kenneth B. Fromson
        /s/Andrew G. Finkelstein
        Kenneth B. Fromson
        Andrew G. Finkelstein

        436 Robinson Avenue
        Newburgh, NY 12550
        (845) 562-0203

        Attorneys for Product Liability Plaintiffs