UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------x
                                                         :   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                             :
        SALES PRACTICES AND                              :   Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION                    :
                                                         :   Judge Patti B. Saris
---------------------------------------------------------x
                                                         :   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                :
                                                         :
        PRODUCTS LIABILITY ACTIONS                       :
                                                         :
---------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PRODUCTS LIABILITY
PLAINTIFFS' MOTION TO COMPEL DISCOVERY FOR DATE
CERTAIN AND TO AMEND CASE MANAGEMENT ORDER NO. 3**

Products Liability Plaintiffs, by their undersigned counsel, respectfully move pursuant to Rule 37 of the Federal Rules of Civil Procedure, for an Order: (a) compelling Defendants to produce the discovery detailed in Discovery Order No. 4 by December 1, 2006; (b) compelling Defendants to produce remaining outstanding discovery no later than December 1, 2006; and (c) approving an amendment to Case Management Order No. 3 so as to facilitate and schedule examinations before trial.

**FACTUAL BACKGROUND**

The fact discovery deadline for the Products Liability litigation is December 31, 2006. See Product Liability Scheduling Order (ECF Doc. # 314). Products Liability Plaintiffs (hereinafter referred to as "PL Plaintiffs") have not received any discovery pursuant to this Court's Discovery Order No. 4. Additionally, Defendants have not produced a single witness for deposition since July 19, 2006. Defendants have not provided substantive discovery as requested

in PL Plaintiffs' demands of October 12, 2004[1], and July 1, September 11, and September 22, 2006.

### Discovery Order No. 4

On July 27, 2006, PL Plaintiffs filed a Motion to Compel Discovery (ECF Doc. ## 395, 405), requesting that the Court order Defendants to disclose certain documents and databases. On August 17, 2006, the Court issued Discovery Order No. 4 (attached hereto as Exhibit A), which orders the following in regard to the Products Liability Litigation: (1) that Defendants produce the CMMS and Visitor Speakers database in their entirety; (2) that Defendants produce visitor speakers documents and IMS (or related vendor) data, not limited to data pertaining to the individual Plaintiffs' prescribing physicians, and that the parties confer to resolve the breadth and details of those issues; (3) that Defendants had agreed to produce the United Kingdom and Ireland Labels and responsive media statements and that Defendants shall clarify for PL Plaintiffs as to whether Defendants are also producing the product summary information; and (4) that the "internal" or "basis" documents pertaining to the labeling were relevant and material and that the parties shall meet and confer to resolve the breadth and details of those requests.

Since the issuance of the August 17, 2006 Discovery Order No. 4, PL Plaintiffs have not received from Defendants any of the items set forth in Discovery Order No. 4. Following the Court's Order, PL Plaintiffs have made efforts to confer with Defendants as to outstanding discovery issues. On at least the following occasions, PL Plaintiffs conferred with Defendants on outstanding discovery issues: August 24, August 29, September 6, September 29, October 11, October 27 and October 30, 2006. Additionally, at Defendants' request, PL Plaintiffs have

---

[1] The Request for Production sets forth with particularity Plaintiffs' discovery requests stemming from the New York Federal court litigation (In re Neurontin, S.D.N.Y. Docket No. 04-CV-6704) before these cases were transferred to the MDL. However, to avoid any ongoing disputes between the parties as to whether Defendants were accountable for previously served demands, PL Plaintiffs subsequently served new Requests for Production in the MDL.

worked in conjunction with Sales and Marketing Plaintiffs to prioritize an order of production, not only for the abovementioned Court-ordered discovery in Discovery Order No. 4, but also for additional outstanding discovery. In a letter dated October 16, 2006 (attached hereto as Exhibit B), Sales and Marketing Plaintiff counsel, Ronald Aranoff, set forth a priority list of discovery items for Defendants' consideration, and in a letter, dated October 18, 2006 (attached hereto as Exhibit C), PL Plaintiffs concurred with the list.

In the October 18, 2006 letter, PL Plaintiffs wrote to Defendants (1) to support the prioritized listing provided by Sales and Marketing Plaintiffs and advise that PL Plaintiffs expect a response to the listing by October 23, 2006; (2) to remind Defendants of PL Plaintiffs' entitlement to safety, efficacy and sales and marketing discovery up to the date of the latest suicide/attempt by a Plaintiff in the MDL, because Defendants had expressed an intention to limit the scope of discovery to the Sales and Marketing Plaintiffs that would be improper as to PL Plaintiffs[2]; and (3) to request Defendants to produce outstanding discovery no later than November 13, 2006, in view of the December 31, 2006 fact discovery deadline.

Defendants responded to Mr. Aranoff's letter by a letter dated October 24, 2006 (attached hereto as Exhibit D). Importantly, Defendants seek to limit the scope of production as it pertains to the discovery to Sales and Marketing Plaintiffs; for example, Defendants seek to limit discovery of Neurontin off-label indications, and they seek to limit certain discovery to a timeframe before 2001. Such limitations would be improper as they pertain to discovery owed to PL Plaintiffs. Indeed, there is no basis for such a limitation since PL Plaintiffs are entitled to safety, efficacy and sales and marketing discovery up to the date of the latest suicide/attempt by

---

[2] In correspondence, dated October 6, 2006 (attached hereto as Exhibit E), Sales and Marketing Plaintiff Counsel, Thomas Greene, summarized issues of outstanding discovery and his objection to Defendants' limitations on discovery.

3

a Plaintiff in the MDL. Defendants have failed to articulate their position on how they intend to resolve any unilateral limitations placed on discovery.

Defendants' October 24, 2006 letter provides a tentative schedule of production and the timeframe that is well beyond the Court-ordered discovery deadline of December 31, 2006. Among the subjects detailed by Defendants, the following are noteworthy:

a) <u>Visitors Speakers Bureau documents</u>: Defendants improperly exclude Pfizer era related documents. Defendants represent they will produce "in Excel format, documents identifying payments to physicians who may have acted as speakers for Neurontin during the period 1996-2000." To do so would be to include only Parke-Davis/Warner-Lambert era documents. Production is anticipated by February 16, 2007.

b) <u>Custodial Files of Marketing and Medical Personnel responsible for Marketing of Neurontin</u>: Production is anticipated only to begin on a rolling basis by December 15, 2006, and Defendants "will endeavor to complete this production within 90 days of commencement." Defendants are silent on the timeframe that will be encompassed by these documents. PL Plaintiffs expect documents through the date of the latest PL Plaintiff's suicide or suicide attempt.

c) <u>CMMS, Sherlock and Betsy database</u>: Production is not anticipated until January 15, 2007.

d) <u>Warner-Lambert Documents from Morris Plains 1998-2000</u>: Production is not anticipated until February 16, 2007.

e) <u>Identification of Neurontin Marketing Strategies/Documents relating to the efficacy of Neurontin//Budgets for Sales and Marketing</u>: While Defendants may limit Sales

4

and Marketing Plaintiffs to discovery through 2001, PL Plaintiffs are not limited to this timeframe. Defendants should provide such discovery through the date of the latest PL Plaintiff's suicide or suicide attempt. Defendants do not anticipate completion of a rolling production until 2007.

f) <u>IMS Documents</u>: PL Plaintiffs have conferred with Defendants on numerous occasions regarding IMS data, both before and after the Court's Discovery Order No. 4. PL Plaintiffs have maintained that Defendants should provide the IMS data in the form and fashion as they have received it from their vendor.

### PL Plaintiffs' Requests for Production Remain Outstanding

In addition to the outstanding discovery owed to PL Plaintiffs encompassed by Discovery Order No. 4, Defendants have yet to provide discovery consistent with PL Plaintiffs' July 1, September 11, or September 22, 2006 Requests for Production (attached hereto as Exhibit F, G and H, respectively). The great majority of these requests were previously set forth in PL Plaintiffs' demands served in 2004, in the New York Federal court litigation (<u>In re Neurontin</u>, S.D.N.Y. Docket No. 04-CV-6704) before the cases were transferred to the MDL. Moreover, PL Plaintiffs' demands dated September 22, 2006, are repetitive of Sales and Marketing Plaintiffs' demands from March 11, 2005. Rather than continue disputes with Defendants as to whether PL Plaintiffs were entitled to discovery based upon these previously served demands, PL Plaintiffs formally served new demands in the MDL. To the extent that the items sought in these demands are encompassed by Mr. Aranoff's aforementioned letter, in which he prioritized items for discovery, then PL Plaintiffs seek a date certain, namely December 1, 2006, for these materials to be produced by Defendants. To the extent that Mr. Aranoff's letter does not encompass the

discovery requests served by PL Plaintiffs, then PL Plaintiffs also seek this remaining discovery by December 1, 2006.

The discovery that was ordered by the Court in Discovery Order No. 4, in addition to the discovery which Defendants voluntarily agreed to provide, is crucial to the issues in dispute in this litigation and, once provided, may indeed lead to further discovery requests by PL Plaintiffs. PL Plaintiffs hereby request that the Court order that Defendants (a) comply with Discovery Order No. 4 forthwith, (b) produce the documents Defendants agreed to produce no later than a date certain, namely, December 1, 2006, and (c) produce all remaining outstanding discovery no later than a date certain, namely, December 1, 2006.

**PL Plaintiffs' Proposal to Amend Case Management Order No. 3 Regarding Depositions**

PL Plaintiffs have identified for Defendants the names of witnesses whom PL Plaintiffs seek to depose. Sales and Marketing Plaintiffs have advised that they oppose proceeding with any depositions that pertain to sales, marketing, as well as certain key witnesses regarding safety and efficacy. Defendants refuse to produce witnesses for depositions given Sales and Marketing Plaintiffs' reservation of rights to re-depose witnesses noticed solely by PL Plaintiffs. In an effort to facilitate the discovery of Defendants' witnesses prior to the Court-ordered discovery deadline, PL Plaintiffs have proposed the following amendment to Case Management Order No. 3 (Section II, C):

> In the event that a three week deposition notice of a defendant witness is served by less than all of the Plaintiffs' Steering Committees, the deposition of the witness shall be scheduled in compliance with the paragraph above. The Plaintiffs' Steering Committee(s) that did not notice the witness for deposition shall have the opportunity to participate in the deposition as scheduled, or notice the witness for a further deposition upon non-duplicative questions on a subsequent date. The further deposition of the witness shall be held in the state in which the witness resides or is employed.

PL Plaintiffs communicated the above proposal to both Sales and Marketing Plaintiffs and Defendants' counsel by letter dated October 24, 2006 (attached hereto as Exhibit I). The proposal has not been accepted by either party.

## ARGUMENT

Pursuant to Rule 37 of the Federal Rules of Procedure, when a party "fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." A District Judge exercises broad discretion when supervising the discovery process. *Arzuaga-Perello v. Shell Co. (Puerto Rico)*, 1999 U.S. App. LEXIS 2162 (1st Cir. 1999); *Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir. 1992). The First Circuit has stated that it will intervene concerning the trial court's discretion "'…only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party'" *Arzuaga-Perello* at *2 (citing to *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 91 (1st Cir. 1996)). A trial court may, upon motion, order the sequence and/or grant priority of the discovery process pursuant to Fed. Rule Civ. P. 26(d). *Meisch v. Fifth Transoceanic Shipping Co. Ltd.*, 1994 U. S. Dist. LEXIS 14995 at *1 (S.D.N.Y. 1994) (Court granted defendants motion requiring, *inter alia*, that plaintiff be deposed by a date certain).

### I. DISCOVERY ORDER NO. 4

The discovery process in the Products Liability Litigation is virtually at a standstill due to Defendants' failure to provide the discovery detailed in the Court's Discovery Order No. 4, even though PL Plaintiffs have contacted and conferred with Defendants on numerous occasions. Furthermore, upon the eventual production of this outstanding discovery by Defendants and

7

review of same by PL Plaintiffs, additional time for discovery may be required as this discovery may lead to the need for PL Plaintiffs to serve further discovery demands and/or notices for depositions of Defendant witnesses. These discovery delays should not be tolerated by the Court as they negatively impact over 100 individual cases in the Multidistrict Litigation which deserve a timely resolution. Compelling Defendants to produce this outstanding discovery will not prejudice Defendants who have had ample time to work on the production of this discovery.

## II. DISCOVERY PERTAINING TO SAFETY AND EFFICACY

Plaintiffs have repeatedly sought, via discovery requests and numerous discussions with Defendants, information and documents related to the safety and efficacy of Defendants' Neurontin. To date, Defendants have provided little discovery in the MDL. The information Defendants have provided has been largely disclosed in the context of a single plaintiff's case, Young v Pfizer Inc., brought in the Supreme Court of the State of New York, County of Orange, Index No. 1062-04, and has been provided in a manner inconsistent with Case Management Order No. 3 in the MDL. Based upon the Court's previous instructions that the parties raise specific issues for resolution at monthly discovery hearings in lieu of addressing disputes in an "abstract" form, PL Plaintiffs raise below particular items of discovery that require the Court's intervention.

    A.    **PL Plaintiffs' Requests for Production, dated September 11, 2006, seek discovery of Neurontin safety and efficacy issues that are within Defendants' Lyrica (Pregabalin) New Drug Application, internal documents, and adverse event database.**

PL Plaintiffs require the discovery of Pregabalin information because Pregabalin's safety profile is so similar to that of Neurontin that the safety and efficacy information possessed by Defendants about Pregabalin should have placed Defendants on notice of Neurontin's negative

effects on mood and behavior. PL Plaintiffs served eleven document requests on September 11, 2006 (attached hereto as Exhibit G). Of utmost importance, included in these demands are PL Plaintiffs' requests for Lyrica (Pregabalin) information. On or about October 25, 2006, Defendants provided responses to PL Plaintiffs' demands, in which they rejected wholesale any requests for information about Lyrica (Pregabalin), (hereafter "Pregabalin"). The parties conferred over the objections on October 27, 2006; based upon Defendants' objections as well as PL Plaintiffs' position that all requests were proper, the parties were unable to resolve their disputes. The Court should reject Defendants' objections and require full and complete responses to PL Plaintiffs' requests for production of the Pregabalin information.

Pregabalin is a drug designed specifically to manage diabetic nerve pain and pain after shingles. It is also approved to treat partial onset seizures in adults with epilepsy. Pregabalin was approved by the FDA by at least 2004. Pregabalin and Neurontin are analogues of the inhibitory neurotransmitter gamma-aminobutyric acid (GABA) and differ in their chemical structure by only one carbon atom. Pregabalin and Neurontin are therefore used for similar indications. PL Plaintiffs submit that Pfizer considered Pregabalin and Neurontin as similar pharmacologic and therapeutic agents, inasmuch as the two products have been compared in a variety of studies.

The U.S. package inserts for Neurontin and Pregabalin demonstrate the similar safety profiles. As is the case with Neurontin, the most commonly reported adverse events in patients taking Pregabalin are central nervous system-related and include dizziness and somnolence. Adverse psychobiologic events, including suicide-related behaviors, known to occur with Neurontin, have also been observed in patients taking Pregabalin. Importantly, the Pregabalin label has historically provided the more descriptive adverse event terms *suicide* and *suicide*

*attempt*, while Neurontin's label listed only *suicidal* and *suicidal gesture*. Pregabalin's labeling is arguably stronger in terms of informing physicians and the public of the dangers of suicide than the Neurontin labeling.

Notwithstanding Defendants' attempts to inappropriately redact references to Pregabalin when providing disclosure, Defendants previously exchanged in the aforementioned Young case at least 6,000 purported Neurontin documents in which there are references to Pregabalin. Many of these documents further support the position that Defendants utilized Neurontin as a partial basis for Pregabalin's FDA approval and/or that Pregabalin's safety profile was similar to Neurontin. See Pfizer_THO_0000214 (in which Defendants were "using Neurontin history to support [their] position" on Pregabalin safety issues); WLC_FRANKLIN_0000038878 (in which Defendants indicate the "adverse event profile appears to be similar at this point."). In either situation, Defendants knew or should have known of Neurontin's capacity to have negative effects on mood and behavior. The Pregabalin New Drug Application and corresponding documents serve as yet another source upon which PL Plaintiffs can rely to show prior knowledge of Neurontin's dangers.

A review of documents in PL Plaintiffs' possession reflects that Pfizer has compared the disposition of Pregabalin in the presence and absence of Neurontin in a multiple dose, healthy volunteer clinical study (Study # 1008-144; Research Report 744-00616). In this study, Neurontin produced slight perturbations in the Pregabalin pharmacokinetic profile (FDA Clinical Pharmacology and Biopharmaceutics Review). A significant number of suicide-related events in patients taking Neurontin have been observed in clinical trials and/or reported in postmarketing databases. In fact, patients at risk of suicidal behavior were excluded from Pregabalin trials involving patients with generalized anxiety disorder. See Pande et al, Pregabalin in generalized

anxiety disorder: a placebo-controlled trial, *Am. J. Psychiatry* (2003); Rickels, K., et al., Pregabalin for treatment of generalized anxiety disorder: a 4-week, multicenter, double-blind, placebo-controlled trial of pregabalin and alprazolam, *Arch. Gen. Psychiatry* 62 (2005); Pohl, R.B., Feltner, D.E., et al., Efficacy of pregabalin in the treatment of generalized anxiety disorder: double-blind, placebo-controlled comparison of BID versus TID dosing, *J. Clin. Psychopharmacol.* 25, 151-158 (2005). Pfizer has also excluded patients from Pregabalin trials if they had not responded to Neurontin. These study design criteria suggest that Pfizer equated the clinical properties of Pregabalin and Neurontin. Indeed, Pfizer has maintained that Neurontin is a "suitable comparator to Pregabalin based on shared chemical properties and pharmacologic action" (FDA-Pfizer teleconference, August 2004).

In sum, Pfizer cannot separate their knowledge of Neurontin from their knowledge Pregabalin: the pharmacologic properties, safety profile, efficacy and indications of the two drugs are so similar that Pfizer has routinely drew upon their experience of one in support of the other. Consequently, the Pregabalin and Neurontin New Drug Application, adverse event databases, and corresponding documents must be reviewed to evaluate all data relevant to the issues of safety and efficacy of Neurontin. Based upon the above, this Court should reject Defendants' objections to Plaintiffs' Requests for Production, dated September 11, 2006. Defendants should be compelled to produce the items demanded by a date certain, namely December 1, 2006.

**B.  Defendants should be compelled to produce "source files" that correspond with adverse event reports of suicidal behavior, deaths, and psychiatric events.**

Defendants have previously agreed to provide "source files" that effectively provide historical and background information about certain adverse event reports associated with

11

Neurontin. However, PL Plaintiffs have been waiting for said production for over a year. Consequently, PL Plaintiffs urge the Court to compel the production of said "source files" by December 1, 2006.

On or about May 25, 2005, Plaintiff's counsel in the New York State court action, Young v. Pfizer Inc., served Plaintiff's Request to Produce (attached hereto as Exhibit J) the following:

> All documents, upon information and belief known as "source files", that correspond with each adverse event report itemized on the attached CD, which are incorporated by reference herein; the CD includes a list of 4801 reports subdivided into four categories: suicidal behavior (350 reports), deaths (764 reports), serious psychiatric events (1089 reports) and non-serious psychiatric events (2598 reports).

Thereafter, as of September 21, 2005—well after Finkelstein & Partners, LLP, was coordinating discovery in both the Federal MDL and New York litigation—Defendants made clear their intention to produce the above referenced documents. In correspondence by former defense counsel James Murray of Davis Polk & Wardwell, dated September 21, 2005 (attached hereto as Exhibit K), Defendants confirmed their willingness to produce the material:

> [W]e have located the supporting documents to the adverse event reports you reference in your letter of May 25, 2005 and the accompanying CD, which are contained in approximately 50 boxes. We will make the documents available for inspection at a mutually convenient time. Please call me to discuss scheduling details.

By correspondence dated September 22, 2005 (attached hereto as Exhibit L), Plaintiffs' counsel advised Defendants of our willingness to scan the documents as we had previously done with Defendants' Neurontin New Drug Application. Subsequently, on October 5, 2005, James Murray confirmed via telephone that Defendants would review the documents for privilege and redaction purposes, and then Defendants would scan the source documents and exchange same with Plaintiffs. To date, Plaintiffs have not received the documents from Defendants. The Court should compel production of the aforementioned source files by December 1, 2006.

### III. PROPOSED AMENDMENT TO CASE MANAGEMENT ORDER NO. 3

PL Plaintiffs are ready and willing to proceed with the deposition of certain witnesses. Consistent with the Court's prior instructions, PL Plaintiffs have identified the witnesses that PL Plaintiffs seek to depose. Sales and Marketing Plaintiffs have advised that they require further discovery prior to deposing these witnesses, and that they oppose proceeding with any depositions that pertain to sales, marketing, as well as certain key witnesses regarding safety and efficacy. Meanwhile, Defendants refuse to produce witnesses for depositions given the Sales and Marketing Plaintiffs' reservation of rights to re-depose witnesses noticed solely by the PL Plaintiffs. Consequently, discovery is at a virtual standstill and an amendment to Case Management Order No. 3 is warranted.

A Case Management Order may be modified where cause is shown. See In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1020 (1st Cir. 1988) (order "susceptible to modification in specific instances, for cause shown"); Fed. R. Civ. P. 16(b) (scheduling order may be modified upon showing of good cause); Fed. R. Civ. P. 16(e) (pretrial orders subject to modification). Therefore, PL Plaintiffs have suggested that the Court amend Case Management Order No. 3 (Section II. C.) in accordance with the language indicated below:

> In the event that a three week deposition notice of a defendant witness is served by less than all of the Plaintiffs' Steering Committees, the deposition of the witness shall be scheduled in compliance with the paragraph above. The Plaintiffs' Steering Committee(s) that did not notice the witness for deposition shall have the opportunity to participate in the deposition as scheduled, or notice the witness for a further deposition upon non-duplicative questions on a subsequent date. The further deposition of the witness shall be held in the state in which the witness resides or is employed.

Such an amendment will enable the depositions of Defendants' witnesses to proceed in a timely manner; allow other Plaintiffs the opportunity to depose Defendants' witnesses at a later date and ask non-duplicative questions; and mitigate any inconvenience to Defendants' witnesses

appearing on two occasions by allowing the second deposition to be taken at a convenient location for the witness, namely, the state where the witness resides or is employed.

## CONCLUSION

PL Plaintiffs therefore respectfully request that the Court issue an Order (a) compelling Defendants to produce the discovery detailed in Discovery Order No. 4 by December 1, 2006; (b) compelling Defendants to produce remaining outstanding discovery no later than December 1, 2006; and (c) approving the amendment as proposed above to Case Management Order No. 3 so as to facilitate and schedule examinations before trial.

Dated:  October 31, 2006                              Respectfully submitted,

*Members of Products Liability*
*Plaintiffs' Steering Committee*

By:   /s/ **Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY  12550

By:   /s/ **Jack W. London**
Jack W. London, Esquire
Law Offices of Jack W. London
    & Associates
106 E. 6th Street, Suite 700
Austin, TX  78701

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on October 31, 2006.

Dated: October 31, 2006

/s/ Kenneth B. Fromson
Kenneth B. Fromson