UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br>Master File No. 04-10981<br>Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO:<br><br>HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY | |
| THE GUARDIAN LIFE INSURANCE CO. OF AMERICA v. PFIZER, INC. and AETNA, INC. v. PFIZER, INC. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO FILE THIRD AMENDED COMPLAINTS,
AND FOR RECONSIDERATION OF ORDER DENYING
<u>PLAINTIFFS' OBJECTIONS TO DISCOVERY ORDER NO. 3</u>**

**TABLE OF CONTENTS**

**Page**

I. PROCEDURAL HISTORY ..................................................................................1
II. THE PROPOSED THIRD AMENDED COMPLAINTS ....................................5
III. LEAVE TO AMEND SHOULD BE GRANTED .................................................6
IV. THE TEMPORAL LIMITATION ON DISCOVERY SHOULD BE LIFTED......................................................................................................................7
V. CONCLUSION........................................................................................................7

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, and the Court's September 11, 2006 and September 29, 2006 orders, Class Plaintiffs (*Harden Manufacturing Corp., et al*. v. *Pfizer, Inc., et al*.) and the Coordinated Plaintiffs (*The Guardian Life Insurance Company of America* v. *Pfizer, Inc*. and *Aetna, Inc*. v. *Pfizer, Inc*.) (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for leave to file third amended complaints and for reconsideration of the Court's September 11, 2006 order denying Plaintiffs' Objections to Discovery Order No. 3.

## I.    PROCEDURAL HISTORY

In the predecessor *qui tam* action, *United States ex rel. Franklin v. ParkeDavis, et al.*, No. 96-CV-11651-PBS ("*Franklin*"), filed in 1996, the Court limited discovery to documents created prior to the end of 1998, finding that:

> The Amended Complaint alleges claims for the period 1994 through 1998. That is the time frame for discovery.

Discovery Order at 1 (Feb. 6, 2002) (attached as Exh. D to Dkt. No. 171).[1]

In this MDL proceeding, Plaintiffs filed their consolidated amended complaints on February 1, 2005, in which they explained that as a result of the limitation on discovery in *Franklin*:

> Plaintiffs have only had the opportunity to review limited records, mostly of events between 1994 and 1998 that were held for the North East Customer Business Unit ("CBU"). Yet Plaintiffs are aware that similar events were held across the country and that such events did not cease until Pfizer signed a Corporate Integrity Agreement with the United States and various states in 2004. Plaintiffs have not seen records of the vast majority of such events and cannot specify them because the records are in the custody of Defendants or the other members of the Peer Selling Sub-Enterprise.

---

[1] At the first status conference in this MDL proceeding, the Court did not recall having imposed this limitation. *See* Partial Transcript of Nov. 23, 2004 Status Conference, Etc. (Dkt. No. 216), Exh. A at 13:8-9 ("I don't remember stopping you in 1998, but I'll take your word for it. I just don't remember that").

Amended Class Action Complaint ("ACAC," Dkt. No. 30) ¶ 59.[2]

As Plaintiffs have previously explained, in April 2003, the U.S. Attorney informed the relator's counsel in *Franklin* that it had received 47 boxes of documents from two of the medical marketing firms, Sudler & Hennessey and Cline Davis & Mann. Relator's counsel was permitted to review about 10 of the 47 boxes, and, on one occasion, to make a small number of copies. Most of the information concerning specific post-1998 promotional activities contained in the ACAC and FCAC was obtained from this small number of copies. *See* Sealed Affidavit of Thomas Greene in Support of Plaintiffs' Reply to Defendants' Opposition to Motion to Compel Production of Documents Created After December 31, 1998 (Dkt. No. 191) ¶¶ 7-10; *see, e.g.*, ACAC ¶¶ 81 (listing 16 events arranged by Sudler & Hennessey in 2000 and 2001).

On June 17, 2005, Defendants moved for a protective order, seeking to limit Plaintiffs' discovery regarding the sales and marketing of Neurontin to the period ending December 31, 1998, the same limitation imposed in *Franklin* (despite the fact that these cases were filed eight years later). *See* Memorandum in Support of Motion for Protective Order Concerning Scope of Discovery (Dkt. No. 162) at 1-3. Plaintiffs filed a cross-motion to compel the production of documents created after December 31, 1998. *See* Motion to Compel Production of Documents Created After December 31, 1998 (Dkt. No. 172).

---

[2] *See also* First Coordinated Amended Complaint ("FCAC," Dkt. No. 31) ¶ 95 ("The Promotion Enterprise sponsored hundreds of events across the country and numerous articles between 1996 and 2004 and the plaintiffs have only had an opportunity to review the records of a small subgroup of these events and articles."); ACAC ¶ 104 ("The Off-Label Promotion Enterprise sponsored hundreds of events across the country between 1996 and 2004 and the Plaintiffs have only had an opportunity to review the records of a small subgroup of these events."); ACAC ¶¶ 134, 148, 156, 171, 181 ("review of recent verbatim reports will demonstrate that similar statements were regularly made by the Defendants' sales forces from 1999 through 2004"); FCAC ¶¶ 106, 119, 124, 140, 147, 60 ("review of recent verbatim reports will demonstrate that similar statements were regularly made by the Defendants' sales forces from 1998 through 2004"); ACAC ¶ 235, FCAC ¶ 171("Pfizer has routinely marketed Neurontin for off-label indications up until May of 2004").

In conformity with the Court's June 12, 2006 Order on the motion to dismiss (Dkt. No. 356), on June 30, 2006, Plaintiffs filed their second amended complaints, correcting the deficiencies identified by the Court in the Order (which did not find any temporal deficiencies in Plaintiffs' allegations).  *See* Second Amended Class Action Complaint ("SACC," Dkt. No. 379); Second Coordinated Amended Complaint ("SCAC," Dkt. No. 380).  Like the first amended complaints, the second amended complaints allege that Defendants continued their false, misleading, or otherwise fraudulent off-label promotional activities through 2004.[3]

On July 18, 2006, Magistrate Judge Sorokin ruled on the cross-motions regarding the temporal scope of discovery, holding that:

> The claims in the complaints arise out of meetings or conferences promoting Neurontin fraudulently, according to plaintiffs.  The last meeting identified in the Complaints occurred on May 19, 2001.  Thus, as a temporal matter, marketing discovery may run through May 31, 2001.

Discovery Order No. 3 (Dkt. No. 393) at 2.  The discovery order imposed the same temporal limitation on the production of the 47 boxes of documents produced to the U.S. Attorney in the *Franklin* litigation.  *Id*. at 3 n.2.

Plaintiffs objected to these portions of the order.  In their objections, Plaintiffs explained that Defendants have been producing custodial files to the plaintiff in *Young v. Pfizer, Inc. and Parke-Davis*, N.Y. Super. Ct., County of Orange, Index No. 1062/2004 ("*Young*") on a rolling

---

[3] *See, e.g.,* SACC ¶¶ 44 ("Pfizer intended the off-label marketing campaigns described below to continue through the introduction of pregabalin at the end of 2004."), 45 ("Defendants funded hundreds of such events between 1996 and 2004."), 60 ("similar events were held across the country and . . . such events did not cease until Pfizer signed a Corporate Integrity Agreement with the United States and various states in 2004"), 110 ("The Off-Label Promotion Enterprise sponsored hundreds of events across the country between 1996 and 2004 and the Plaintiffs have only had an opportunity to review the records of a small subgroup of these events."), 158, 168, 176, 192, 202 ("review of recent verbatim reports will demonstrate that similar statements were regularly made by the Defendants' sales forces from 1999 through 2004"), 257 ("Pfizer has routinely marketed Neurontin for off-label indications up until May of 2004").

basis without any such temporal limitation, and that these documents — which were received too late to incorporate their contents in the second amended complaints — confirm that Defendants continued to make false and misleading presentations at Neurontin off-label marketing events, suppress unfavorable information, and publish misleading information about Neurontin and off-label uses through 2004. *See* Plaintiffs' Objections to Discovery Order No. 3 (Dkt. No. 414) at 12-15, 17. In Plaintiffs' objections, portions of which were filed under seal,[4] Plaintiffs identified *dozens* of post-May-2001 marketing events at which Defendants delivered their misleading off-label promotional messages, as well as numerous misleading articles published after that date, and requested leave to amend to allege these post-May-2001 events, should the Court deem it necessary for Plaintiffs to obtain more recent discovery. *Id.* at 2-3.

On September 11, 2006, the Court denied Plaintiffs' Objections to Discovery Order No. 3 "without prejudice to amending the complaint to plead with particularity events occurring post 2001." (Unnumbered docket entry.) On September 29, 2006, the Court ordered that "[w]ith the exception of the proposed amendment regarding timing of the alleged illegal acts (i.e. post 2001 activities), no further amendments will be permitted." (Unnumbered docket entry.)

In the weeks since these orders were issued, Plaintiffs have completed their initial review of the *Young* documents[5] for additional misleading promotional events and publications

---

[4] Because many of the documents relied upon by Plaintiffs were produced subject to a protective order, Plaintiffs filed the portion of their brief discussing these documents, and the supporting declaration of Ilyas Rona attaching those documents, under seal. *See* Dkt. Nos. 416, 417.

[5] As Plaintiffs noted at the September 27, 2006 hearing, over two years into this litigation, Defendants *still* have not produced any Pfizer-era (i.e. 2001-2004) sales and marketing documents in these cases. Defendants have produced some additional marketing documents from the Warner-Lambert era to the Sales and Marketing Plaintiffs. They have also produced custodial files from the safety reporting, clinical research, and medical departments of Pfizer; these documents, which are heavily redacted in a manner inconsistent with CMO #3, were produced in the *Young* case only, and thus far are deemed not to have been produced to the Sales and Marketing Plaintiffs. Nevertheless, even crediting the production of safety reporting,

occurring after May 31, 2001, for incorporation into proposed third amended complaints.

## II.   THE PROPOSED THIRD AMENDED COMPLAINTS

A proposed Third Amended Class Action Complaint ("TACAC") and a proposed Third Coordinated Amended Complaint ("TCAC") are filed herewith. For ease of reference, Plaintiffs have confined their proposed amendments to discrete sections of the complaints. *See* TACAC ¶¶ 256-90; TCAC ¶¶ 178-212. In these 23 pages of detailed factual allegations, Plaintiffs identify 10 representative misleading articles regarding off-label uses published by Pfizer between September 2002 and January 2005 (TACAC ¶¶ 268-74; TCAC ¶¶ 190-96), and 82 representative Neurontin "events" between June 2001 and December 2004, at which Pfizer and/or its presenters delivered their misleading off-label messages (TACAC ¶¶ 278-90; TCAC ¶¶ 200-212).

Plaintiffs also allege that "Pfizer has routinely marketed Neurontin for off-label indications up until December of 2004, regardless of FDA limitations on the approved use of the particular product." TACAC ¶ 292; TCAC ¶ 214 ("Pfizer routinely marketed Neurontin for off-label indications until at least December, 2004"). When these cases were filed early in 2004, Plaintiffs assumed, as has the Court, that Pfizer ceased its unlawful promotional activities by May 11, 2004, when it executed a Corporate Integrity Agreement. In fact, the agreement contains a number of provisions which did not become applicable until 30, 90, or 120 days from the effective date. *See* Corporate Integrity Agreement (attached as Exh. A to the Declaration of Barry Himmelstein, filed herewith) at §§ 10, 11, 14, 20, and 23. The massive Neurontin off-label promotional enterprise coasted, rather than screeched, to a halt, and Pfizer continued to reap the benefits of its unlawful promotional efforts through the end of 2004. *See* Pfizer Investor News Release, *Pfizer Inc Fourth-Quarter 2004 Performance Report* (attached as Exh. B to the

---

clinical research, and medical documents, Defendants have not yet started producing—in either set of cases—custodial files from Pfizer's marketing department.

Himmelstein Declaration) ("Full-year worldwide revenues for Neurontin were $2.723 billion in 2004, up 1 percent, and were $481 million in the fourth quarter of 2004, down 39 percent. The decline in the fourth quarter is due to the at-risk launch of generic gabapentin by Ivax, Alpharma, and Teva in the U.S.").

Plaintiffs appreciate that the Court does not wish discovery to be temporally open-ended. The introduction of generic gabapentin at the end of 2004 (*see id*.) provides an appropriate end point, as Defendants effectively abandoned their marketing effort when the generic versions became available. As a consequence, by March 2005, Pfizer's Neurontin marketing department consisted of a single person, and there was no longer any marketing strategy. *See* Deposition of Suzanne Doft at 5:15-17, 10:10-12 (attached as Exh. C to the Himmelstein Declaration). Accordingly, Plaintiffs should be permitted discovery through the end of 2004.

### III.   LEAVE TO AMEND SHOULD BE GRANTED

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Underlying Rule 15(a)'s liberal amendment policy is the Supreme Court's recognition that a litigant "ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). As the Supreme Court has held, in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," leave to amend "should, as the rules require, be 'freely given.'" *Id*. The decision to grant leave to amend is committed to the sound discretion of the district court. *Id.*; *Exec. Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66 (1st Cir. 1995).

Plaintiffs have at all times acted in the utmost good faith in this litigation. Plaintiffs have used all of the information available to them to draft their complaints. Initially, that universe was

limited to documents produced in *Franklin* (which pre-dated 1999), and a small number of documents copied from a production to the U.S. Attorney. The amendments are not required to cure defects in the complaints, but only in response to the Court's order denying Plaintiffs' objections to Discovery Order No. 3, issued less than two months ago. Plaintiffs have used the time since then to complete an initial review of the documents recently produced in *Young*, for use in the third amended complaints. Accordingly, there has been no undue delay, and the motion to amend should be granted.

## IV.     THE TEMPORAL LIMITATION ON DISCOVERY SHOULD BE LIFTED

As the foregoing procedural history makes clear, Plaintiffs seek to amend their complaints to allege specific, post-May-2001 events so that they will be permitted to obtain discovery of documents created after that time. Indeed, the clear implication of the Court's September 11, 2006 ruling is that if Plaintiffs "plead with particularity events occurring post 2001," the temporal limitation on discovery will be lifted. *Id*. Accordingly, Plaintiffs direct this request to the Court, rather than the Magistrate Judge.

## V.      CONCLUSION

Plaintiffs allege, as they have since the outset of this litigation, that Defendants continued their unlawful and misleading promotional activities well into 2004. Based on documents recently produced by Defendants in related litigation, Plaintiffs should be granted leave to amend their complaints to allege 10 representative misleading articles regarding off-label uses of Neurontin published by Pfizer between September 2002 and January 2005, and 82 representative Neurontin "events" between June 2001 and December 2004, at which Pfizer delivered its

misleading off-label messages. Plaintiffs should be permitted to conduct discovery into Defendants' sales and marketing practices through 2004.

Dated: November 2, 2006    By their attorneys,

*Members of the Class Plaintiffs' Steering Committee*

By: **/s/ Thomas M. Greene**

Thomas Greene, Esquire, BBO # 210020
Greene & Hoffman
125 Summer Street
Boston, MA 02110

By: **/s/ Don Barrett**

Don Barrett, Esquire
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By: **/s/ Daniel Becnel, Jr.**

Daniel Becnel, Jr., Esquire
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

By: **/s/ James Dugan**

James Dugan, Esquire
Dugan & Browne
650 Poydras St., Suite 2150
New Orleans, LA 70130

By: **/s/ Barry Himmelstein**

Barry Himmelstein, Esquire
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By: **/s/ Thomas M. Sobol**

Thomas M. Sobol, Esquire
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142

*Members of the Plaintiffs' Non-Class Steering Committee*

By: **/s/ Richard Bemporad**

Richard Bemporad, Esquire
Gerald Lawrence, Esquire
Lowey Dannenberg Bemporad & Selinger, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY  10601

By: **/s/ Linda P. Nussbaum**

Linda P. Nussbaum, Esquire
Cohen Milstein Hausfeld & Toll
150 East 52nd Street, 13th Floor
New York, NY 10022