UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                         :   MDL Docket No. 1629
In re:   NEURONTIN MARKETING,                                            :
         SALES PRACTICES AND                                             :   Master File No. 04-10981
         PRODUCTS LIABILITY LITIGATION                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Judge Patti B. Saris
                                                                         :
THIS DOCUMENT RELATES TO:                                                :
                                                                         :   Magistrate Judge Leo T.
                                                                         :   Sorokin
         PRODUCTS LIABILITY ACTIONS                                      :
                                                                         :
                                                                         :
                                                                         :
                                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PRODUCTS
LIABILITY PLAINTIFFS' MOTION TO COMPEL DISCOVERY FOR DATE
CERTAIN AND TO AMEND CASE MANAGEMENT ORDER NO. 3**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
HARE & CHAFFIN
160 Federal Street
Boston, MA 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

Defendants Pfizer Inc. ("Pfizer") and Warner-Lambert Company ("Warner-Lambert") (collectively "the Company") respectfully submit this memorandum of law in opposition to products liability plaintiffs' ("plaintiffs") motion to compel discovery dated October 31, 2006.

## PRELIMINARY STATEMENT

After rejecting at the last minute a joint motion for a new schedule, products liability plaintiffs now seek to compel production of a blizzard of documents in less than four weeks time.  Plaintiffs' motion should be denied for several reasons.

First, plaintiffs' request for documents and databases subject to the Court's Discovery Order No. 4 is unnecessary because defendants previously provided anticipated dates of production that are reasonable.  In addition, plaintiffs' request for certain of these documents is premature because they failed to engage in Court-mandated discussions with defendants regarding certain categories of documents.

Second, plaintiffs seek to compel the production of documents that would open an entirely new – and irrelevant – avenue of discovery.  On September 11, 2006, plaintiffs propounded discovery requests asking for any and all documents pertaining to a medication – pregabalin – that is not at issue here and which nowhere appears in plaintiffs' pleadings.  Even if these documents were relevant to a claim in this action, which they are not, their production would nearly double the amount of discovery in the litigation and thereby impose an unreasonable burden on defendants.

Finally, plaintiffs seek to amend CMO 3 to allow duplicative depositions of defendants' witnesses because they cannot agree with the Sales and Marketing Plaintiffs as to matters of scheduling.  This patently unreasonable request would serve to penalize

defendants while undermining the very efficiencies for which the MDL was designed.

Given that all the Neurontin actions share a core set of facts that justified consolidation

for pre-trial proceedings, dividing discovery between plaintiffs runs contrary to the

objectives of the MDL as set out by the Judicial Panel on Multidistrict Litigation and this

Court.

## ARGUMENT

**A.      Defendants Have Already Proposed a Reasonable Schedule for Production of Documents and Databases Subject to Discovery Order No. 4**

Plaintiffs seek production by December 1, 2006 of those documents and databases

subject to the Court's Discovery Order No. 4.  In so doing, they ignore the discussions

between defendants and various plaintiffs, including themselves and the Sales &

Marketing plaintiffs, aimed at (i) prioritizing discovery and (ii) establishing a schedule

for production.  See Letter from R. Aranoff to D. MacGregor, dated October 16, 2006;

letter from K. Fromson to J. Rouhandeh, dated October 18, 2006.  Plaintiffs also find

fault with defendants' October 24, 2006 letter detailing production for 16 categories of

documents plaintiffs identified as priorities as well as a host of other documents.  See

Letter from D. MacGregor to R. Aranoff, dated Oct. 24, 2006.[1]  Notably, the sales and

marketing plaintiffs have not objected to the dates provided by defendants in that letter.

---

[1] Plaintiffs mischaracterize and misstate Defendants' proposal.  For example, Plaintiffs contend that Defendants expect to produce "Visitors Speakers Bureau documents" by February 16, 2007.  See Pl. Mem. at 4.  Defendants' proposed production date, however, is November 22, 2006.  See Letter from D. MacGregor to R. Aranoff, dated Oct. 24, 2006.  Moreover, Defendants do not intend to "improperly exclude Pfizer era related documents."  Pl. Mem. at 4.  As Defendants stated in their October 24, 2006 letter, Defendants intend to produce the BETSY database, which will contain responsive Pfizer-era information, by January 15, 2006.  See Letter from D. MacGregor to R. Aranoff, dated October 24, 2006.

Moreover, it was plaintiffs' counsel who asked defendants to consider revising the

products liability case schedule.  In late September, plaintiffs stated that "it makes sense

to discuss whether a joint application for a discovery extension is warranted depending

on the time you require to provide responses" to Plaintiffs' July 1, 2006 First Request for

Production of Documents.  See Letter from K. Fromson to J. Rouhandeh, dated Sept. 20,

2006.[2]  Plaintiffs also acknowledged that an extension of the discovery deadline provided

them time to meet their own discovery obligations, as a number of individual plaintiffs

have yet to respond to defendants' discovery requests.  See id.  But rather than join

defendants in proposing a revised schedule, plaintiffs now undermine these efforts by

making unreasonable demands for all outstanding discovery and engaging the parties in

needless motion practice.

Plaintiffs' blanket request for the "discovery detailed in Discovery Order No. 4"

is also premature.  The Order requires the parties to meet and confer, for example, to

"resolve the breadth and details" with respect to the production of "IMS (or related

vendor) data."  See Order at 4.  Yet such discussions have not taken place.  Plaintiffs

have also made no effort to resolve the confidentiality and contractual issues regarding

IMS data.  See id.  Similarly, while defendants have agreed to produce the labels for

Neurontin from the United Kingdom and Ireland, the parties have not adequately met and

conferred regarding the internal or "basis" documents for those labels.  Although

plaintiffs assert that they have conferred with defendants on "outstanding discovery

---

[2] On September 11, 2006 Plaintiffs served a second Request for Production of Documents seeking vast amounts of information and documents for a drug other than Neurontin.  See infra at 5-8.  On September 24, only two days after recognizing that the parties might need to extend the current discovery cut-off date, plaintiffs served yet another Request for Production encompassing 248 separate additional requests.

issues" on a number of occasions, they have not done so as to these issues.  See

Memorandum of Law in Support of Product Plaintiffs' Motion to Compel Discovery for

Date Certain and to Amend Case Management Order No. 3 (hereafter "Pls. Mem.") at 2.[3]

Plaintiffs' demand for production of adverse event "source files" by December 1,

2006 is also unjustified.  First, these documents were not placed on the extensive list of

priority discovery items provided by all plaintiffs.  See Letter from R. Aranoff to D.

MacGregor, dated Oct. 16, 2006; letter from K. Fromson to J. Rouhandeh, dated Oct. 18,

2006.  And while source files were addressed in 2005 – and defendants subsequently

gathered, processed and initially reviewed the patient-sensitive files underlying 4,800

adverse events – plaintiffs did not suggest they urgently needed these documents.

Instead, plaintiffs on October 30, 2006 simply stated that they would immediately move

to compel production.  In any event, defendants expect to produce these documents by

December 31, 2006.

Second, plaintiffs point to no discovery request served in the MDL that seeks

"source files."  Instead, plaintiffs rely on a request made in a different action pending in

state court in New York.  See Pls. Mem. at 12.  Indeed, each of the documents to which

plaintiffs refer in support of their motion to compel production of the "source files" bears

a caption or reference to Young v. Pfizer Inc., Index No. 2004-1062 (N.Y. Sup. Ct.).

Because plaintiffs have made no request to defendants pursuant to Rule 34 for "source

---

[3] Plaintiffs' protest that defendants have not articulated their position on "resolv[ing] any
unilateral limitations placed on discovery" is nothing more than just that—it is an aside to their motion and
requires neither a response nor resolution by the Court.  Nevertheless, plaintiffs' argument that they are
entitled to sales and marketing discovery up to the date of the latest suicide or attempted suicide by a
plaintiff in the MDL overlooks the fact that there is a pending motion to dismiss all of plaintiffs'
marketing-based claims on the ground that none of plaintiffs have alleged any fact to support those claims.
See MDL Docket Nos. 363, 431.

files" in this action, any motion to compel production of those documents is

inappropriate.  See, e.g., Bermudez v. Nueas, 936 F.2d 1064, 1068 (9th Cir. 1991)

(motion to compel was premature where movant made no request for discovery pursuant

to Fed. R. Civ. P. 34); see also Grissom v. N.L.R.B., 364 F. Supp. 1151, 1153-54 (M.D.

La. 1973) (holding that court would not entertain motion to compel production of

documents until movant made request for those documents and was improperly refused).

> **B.**      **Plaintiffs' Requests for Any and All Documents Pertaining to a Medication Nowhere Mentioned in Their Complaints Are Irrelevant to This Litigation and Pose an Undue Burden on Defendants**

Plaintiffs assert without basis that they are entitled to documents pertaining to

pregabalin, and they fail to show that such documents are relevant to any claim or

defense in this litigation.  No plaintiff alleges that he or she ingested pregabalin or was

harmed thereby.  Indeed, the word "pregabalin" (or that compound's trade name,

"Lyrica") does not appear in plaintiffs' complaints.  Plaintiffs' allegations are confined to

Neurontin and the robust documentary record of that medication has been and continues

to be produced to plaintiffs.  In fact, pregabalin's peripheral relation to plaintiffs' claims

are highlighted by plaintiffs' counsel's agreement in a Neurontin personal injury action in

state court in New York with near-identical allegations that defendants could redact any

mention of pregabalin or Lyrica from documents being produced in that case.

Federal Rule of Civil Procedure 26(b)(2) governs the "frequency or extent of use

of the discovery methods otherwise permitted under the[] [R]ules," and states in relevant

part that discovery "shall be limited by the court if it determines that:  (i) the discovery

sought is unreasonably cumulative or duplicative . . . or (iii) the burden or expense of the

proposed discovery outweighs its likely benefit."[4]  Plaintiffs' requests for the pregabalin

new drug application ("NDA"), internal documents, and adverse event database fall well

short of this standard.

Even if pregabalin documents were relevant to these actions, plaintiffs, by their

own admission, have received approximately 6,000 documents that pertain to both

Neurontin and pregabalin as a result of defendants' efforts to produce documents

responsive to plaintiffs' many document requests.  Although plaintiffs state that

defendants "cannot separate their knowledge of Neurontin from their knowledge [of]

Pregabalin," this unsupported rhetoric hardly entitles them to an even greater – and more

burdensome – production of documents pertaining to a drug plaintiffs do not allege they

ingested.  Pls. Mem. at 11.  If plaintiffs cannot demonstrate causation of their injuries as

to Neurontin, no amount of documents regarding pregabalin can surmount that

shortcoming.  Needless to say, plaintiffs fail to cite any authority that entitles them to

broadly expand discovery to include documents pertaining to a medication that plaintiffs

do not allege ingesting.

Moreover, the vast quantity of pregabalin materials requested by plaintiffs –

which could equal the amount of Neurontin-related documents – would impose a burden

that far outweighs any likely benefit.  For instance, plaintiffs seek to compel defendants

to produce "the entire Investigational, New, Abbreviated or Supplemental Drug

Application for Defendant PFIZER's Pregabalin," "[a]n electronic copy of the adverse

---

[4] It should be noted that one of the other categories of documents requested by plaintiffs in their
September 11, 2006 Request for Production was already produced by defendants in 2005, rendering this
request clearly duplicative.  See Product Liability Plaintiffs' Request for Production of Documents and
things, No. 2, dated Sept. 11, 2006.

event database (complete with input data) used to record, file, sort, search, index and detail all reports of adverse events or Medwatches that includes adverse events reported with patients using Defendant Pfizer's pregabalin," "all internal documents relating to Pregabalin that identify or discuss the following language, as set forth in Defendants' labeling: '[Pregabalin] is inactive at serotonin and dopamine receptors and does not inhibit dopamine, serotonin, or noradrenalin reuptake,'" as well as "all documents pertaining to Pregabalin, whether internal or otherwise, that reflect the basis of Defendants' decision to utilize" the above statement in the pregabalin labeling.  See Product Liability Plaintiffs' Request for Production, dated Sept. 11, 2006, Request Nos. 4-5, 10-11.  Even this subset of plaintiffs' request would lead to the production of a massive volume of documents and data, requiring defendants to spend thousands of hours reviewing and producing this material.  This significant burden is not only undue, but completely unjustified when considered against the marginal, if any, relevance that it could have to plaintiffs' case.

Finally, plaintiffs' motion to compel the production of this discovery is both premature and an abuse of the discovery process.  Plaintiffs' Request for Production was served on September 11, 2006.  On October 23, plaintiffs indicated that they were amenable to meeting-and-conferring with defendants in order to narrow their requests as to pregabalin.  However, during an October 27 telephonic conference, plaintiffs abruptly changed course, instead focusing on other discovery requests, devoting less than two minutes to the discussion of pregabalin materials and stating that they would not accept less than "everything" related to pregabalin.  On the basis of this inadequate meet and confer, plaintiffs' motion to compel followed two business days later.

7

**C.      Plaintiffs' Amendment of CMO 3 Undermines the Efficiencies of the MDL and Would Penalize Defendants By Requiring Duplicative Discovery**

Plaintiffs state that because counsel for the Sales and Marketing Plaintiffs will not agree to schedule depositions at this time, defendants' witnesses should be exposed to serial depositions.  This argument is flawed.

First, the MDL promotes efficiency in pretrial proceedings and, especially, discovery.  In re Automotive Refinishing Paint, 229 F.R.D. 482, 486 (E.D.Pa. 2005) (noting that multidistrict litigations are "designed to provide for the 'just and efficient conduct' of related cases");  Menowitz v. Brown, 991 F.2d 36, 40 (2nd Cir. 1993) (citing the Manual for Complex Litigation for the proposition that MDLs are designed to eliminate, among other things, duplication in discovery, avoid conflicting schedules, reduce litigation costs, and save the time and effort of the parties and witnesses).  The Judicial Panel on Multidistrict Litigation ("JPML") created this MDL and consolidated the actions, both sales and marketing and products liability actions, because they all share a common set of facts and circumstances.  See Transfer Orders of JPML, dated Oct. 26, 2004 and April 19, 2005 (finding that actions involve common questions of fact).  To now segregate these actions undermines the efficiencies the MDL was designed to effect.

Second, plaintiffs' proposed amendment would unduly burden defendants. Wasteful and duplicative discovery is inevitable when witnesses must be produced more than once.  The inconvenience of additional depositions to the witnesses is undisputed. In contrast, the safeguards that plaintiffs propose are insufficient.  Restrictions on non-duplicative questions would undoubtedly lead to significant disagreements between

counsel and near-endless references to prior transcripts to determine whether particular

questions were asked previously.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny

products liability plaintiffs' motion.

Dated: November 6, 2006

DAVIS POLK & WARDWELL


By:   /s/ James P. Rouhandeh
        James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN


By:   /s/ David B. Chaffin
        David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and*
*Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served
pursuant to Case Management #3 on November 6, 2006.

/s/David B. Chaffin