UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981 |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY. | Judge Patti B. Saris  Magistrate Judge Leo T. Sorokin |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC. and  AETNA, INC. v. PFIZER INC. | |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINTS,
AND FOR RECONSIDERATION OF ORDER DENYING
<u>PLAINTIFFS' OBJECTIONS TO DISCOVERY ORDER NO. 3</u>**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................... 2

    I.    AMENDMENT OF THE COMPLAINTS WOULD BE FUTILE ............... 2

        A.    The Proposed Amendments Introduce Allegations of Nothing More than Off-Label Promotion ........................................... 3

        B.    Plaintiffs' Allegations that Defendants Did Not Disclose Adverse Clinical Trial Data Are Not Actionable Where Plaintiffs Fail to Allege that Defendants Had Any Duty to Disclose Such Data .............................................................................. 5

        C.    Plaintiffs' Allegations of Fraud Predicated on Unsubstantiated "Information and Belief" Fail to Satisfy the Pleading Standards of Rule 9(b) ..................................................................................... 8

    II.    GRANTING PLAINTIFFS' LEAVE TO AMEND WOULD DELAY THE CASE BY MORE THAN ONE YEAR AND CAUSE DEFENDANTS UNDUE PREJUDICE ....................................................... 10

CONCLUSION .......................................................................................................................... 12

# TABLE OF AUTHORITIES

### CASES

PAGE

Aldridge v. A.T. Cross Corp.,
  284 F.3d 72 (1st Cir. 2002) .................................................................................... 6

Backman v. Polaroid Corp.,
  910 F.2d 10 (1st Cir. 1990) ................................................................................. 5,6

Bonilla v. Volvo Car Corp.,
  150 F.3d 62 (1st Cir. 1998), cert. denied 526 U.S. 1098 (1999) ............................. 5,7

Foman v. Davis,
  371 U.S. 178 (1962) ............................................................................................ 10

Hayduk v. Lanna,
  775 F.2d 441 (1st Cir. 1985) ................................................................................. 3

Roeder v. Alpha Indus., Inc.,
  814 F.2d 22 (1st Cir. 1987) ................................................................................... 6

Romani v. Shearson Lehman Hutton,
  929 F.2d 875 (1st Cir. 1991) ................................................................................. 9

Wash. Legal Found. v. Friedman, 13 F. Supp. 2d 51 (D.D.C. 1998),
  vacated on other grounds by Wash. Legal Found. v. Henney,
  202 F.3d 331 (D.C. Cir. 2000) .............................................................................. 8

Wilensky v. Digital Equip. Corp.,
  903 F. Supp. 173 (D. Mass. 1995), aff'd in relevant part and rev'd in part on other
  grounds sub nom. Shaw v. Digital Equip. Corp., 82 F.3d 1194 (1st Cir. 1996) ............ 6

Wilson v. MicroFinancial, Inc.,
  No. 03-11883-RGS, 2006 U.S. Dist. LEXIS 38827 (D. Mass. June 13, 2006) ............. 6

### STATUTES & RULES

21 C.F.R. § 312.7 ............................................................................................................ 8

Fed. R. Civ. P. 9(b) ......................................................................................................... 2

Fed. R. Civ. P. 15(a)..................................................................................................... 10

OTHER AUTHORITIES

2 Sand, Siffert, Loughlin & Reiss, Modern Federal Jury Instructions,
  ¶ 44.01, at 44-11 (1997) ............................................................................................ 6

Defendants Pfizer Inc. and Warner-Lambert Company (together, "defendants") submit this memorandum of law in opposition to plaintiffs' motion for leave to file third amended complaints, and for reconsideration of order denying plaintiffs' objections to Discovery Order No. 3.

## PRELIMINARY STATEMENT

Two-and-a-half years after having brought these actions, plaintiffs now seek to file their fourth set of complaints in this multidistrict litigation. Plaintiffs' motion for leave to amend, if granted, would represent a dramatic expansion of this litigation leading to an inevitable delay and unjustified costs resulting from additional rounds of motion practice and discovery requests. Plaintiffs' motion and proposed complaints do not justify this result. Plaintiffs have been unable to allege sufficiently any fraudulent conduct that would support the expansion and delay of these cases. In short, plaintiffs' motion is too little, too late.

Based on a thorough review of the allegations of the second amended complaints, Magistrate Judge Sorokin entered Discovery Order No. 3, which limited the time period of marketing discovery to May 31, 2001. See Docket No. 393 at 3. This Court overruled plaintiffs' objections to that order. Plaintiffs now move for leave to file third amended complaints and ask the Court to reconsider their objections to Discovery Order No. 3. The purpose of these motions is to obtain an extension of discovery through the end of 2004.

Plaintiffs' attempted radical expansion of the case is not supported by the plaintiffs' proposed third amended complaints, which contain only the most conclusory

1

allegations of any activities after May 2001. Plaintiffs have provided little more than a laundry-list of publications and events purportedly concerning off-label uses of Neurontin, without ever alleging specific facts demonstrating that any information presented was false. Even though it is the settled law of this case that off-label promotion is not actionable absent a showing of falsity, plaintiffs again attempt to pass off vague allegations of off-label promotion as evidence of fraud. This tactic should not be permitted, based on the requirements of Federal Rule of Civil Procedure 9(b) and the rulings of this Court.

Furthermore, the proposed expansion of discovery would result in additional delays and unjustified costs that could add another year to the discovery schedule, dramatically slowing the progress of this litigation. It would also create an undue burden upon the defendants. For all of the above reasons, plaintiffs' motion for leave to file the third amended complaints and for reconsideration of this Court's Order overruling their objections to Discovery Order No. 3 should be denied.

## ARGUMENT

**I.    AMENDMENT OF THE COMPLAINTS WOULD BE FUTILE**

The sole bases that plaintiffs proffer for the dramatic expansion of the case that they propose are allegations that fall well short of satisfying the rigorous pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 9(b). Plaintiffs apparently hope that these patently inadequate allegations will support an extraordinary expansion of the scope of discovery that might, in turn, allow plaintiffs to assert viable claims relating to post-May 2001 conduct. The First Circuit, however, has rejected similar efforts to invert the pleading requirements of Rule 9(b), explaining

2

that, "[i]n cases in which fraud lies at the core of the action, the rule does not permit a complainant to file suit first, and subsequently to search for a cause of action." Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) (internal quotations omitted).

Plaintiffs' new allegations are utterly devoid of the requisite particularity and fail to meet the pleading standards of Rule 9(b). Although this Court has previously required plaintiffs to identify the date, location, and speaker of purportedly fraudulent statements with particularity, see Docket No. 356 (hereinafter "Mem. & Order") at 20; Docket No. 269 (hereinafter "Report & Recommendations") at 40, the new allegations consistently fail to identify the "who, what, where, or when" of any of the statements that plaintiffs deem actionable.

Moreover, the viability of plaintiffs' proposed amendments depends on three incorrect propositions: (1) that off-label promotion, absent any allegation of falsehood, is actionable in and of itself; (2) that any discussion of positive clinical trial data is misleading unless all potentially negative or inconclusive data is disclosed, and (3) that a plaintiff may allege fraud based on "information and belief" without setting forth any facts on which that belief could reasonably be founded. As discussed below, each of these propositions is contrary to the law of this case and incompatible with the law of this Circuit.

> A.  **The Proposed Amendments Introduce Allegations of Nothing More than Off-Label Promotion.**

A number of the new paragraphs of plaintiffs' proposed third amended complaints allege that defendants sponsored publications and events in which or at which Neurontin's off-label uses were discussed, but plaintiffs fail to allege these discussions

3

contained any false or misleading statements. See, e.g., Proposed Third Coor. Am. Compl. ("TCAC") ¶¶ 184–89, 202; Proposed Third Amended Class Action Compl. ("TACAC") ¶¶ 262-267, 280. Absent allegations that statements made were false, allegations of statements concerning off-label use are not actionable, see Mem. & Order at 20; Report and Recommendations at 34–35, and amendment of the second amended complaints to incorporate these allegations therefore would be futile.

Indeed, many of these allegations are substantially identical to allegations previously incorporated by plaintiffs in their second amended complaints, compare Second Am. Coor. Compl. ¶¶ 123–27, with TCAC ¶¶ 186–90, and previously rejected by this Court as a basis for extending discovery beyond May 2001. See Sept. 11, 2006 Order Denying Plaintiffs' Objections to Discovery Order No. 3; Docket No. 393 at 3; see also Docket No. 414 at 14 (plaintiffs' objections to Discovery Order No. 3) (citing these allegations in support of plaintiffs' argument that they had pleaded instances of fraud occurring post-2001).

New allegations of off-label promotion likewise fail to allege fraud. Plaintiffs suggest, for instance, that a March 2002 meeting to "support Neurontin's use in neuropathic pain management" is actionable because the FDA had not approved Neurontin for a broad neuropathic pain indication—a theory of fraud that this Court has rejected. See TCAC ¶ 202; TACAC ¶ 280; Mem. & Order at 20; Report & Recommendations at 44–45; see also TCAC ¶ 191; TACAC ¶ 269. Plaintiffs' remaining allegations are similarly vague and not actionable.

### B.  Plaintiffs' Allegations that Defendants Did Not Disclose Adverse Clinical Trial Data Are Not Actionable Where Plaintiffs Fail To Allege that Defendants Had Any Duty To Disclose Such Data.

The bulk of plaintiffs' remaining allegations fail to state a claim because they allege that defendants did not disclose adverse clinical trial data, but fail to establish that defendants had any duty to disclose such data. See TCAC ¶¶ 192, 195, 201, 203–07; TACAC ¶¶ 270, 273, 279, 281-85.[1]  It is well settled in this Circuit that "[s]ilence, absent a duty to disclose, is not misleading." Backman v. Polaroid Corp., 910 F.2d 10, 11 (1st Cir. 1990).  Such a duty of disclosure may arise only (1) if "'the defendant was under a legal, professional or contractual duty to make such a disclosure'" or (2) if defendants made a prior "affirmative false statement or a half truth" such that further disclosure was required to ensure that defendants' prior statement was not misleading. Bonilla v. Volvo Car Corp., 150 F.3d 62, 69–70 (1st Cir. 1998), cert. denied, 526 U.S. 1098 (1999)

---

[1] At most three paragraphs of plaintiffs' twenty-three pages of new allegations concern affirmative misrepresentations. See TCAC ¶¶ 193, 194, 196; TACAC ¶¶ 270, 271, 274.  These paragraphs allege that misstatements were made in three journal articles prepared or edited by medical education vendors whom defendants had retained.  Plaintiffs, however, never allege that either defendants or the vendors were aware of the alleged misstatements, much less that the alleged misstatements were intentional.  Indeed, the trivial character of the misrepresentations alleged rebuts any assumption of the sort:  Plaintiffs allege that a February 2003 article addressing hot flashes stated that "gabapentin has shown efficacy in controlled studies for neuropathic pain, migraine headache, essential tremor, panic disorder, and social phobia." TCAC ¶ 193; TACAC ¶ 270.  Plaintiffs take no issue with the clinical trials cited to support Neurontin's efficacy for neuropathic pain, migraine headache, essential tremor, or social phobia, but allege that the panic disorder trial cited did not support efficacy.  TCAC ¶ 193; TACAC ¶ 270; see also TCAC ¶ 194; TACAC ¶ 271 (alleging that a second article addressing hot flashes stated that gabapentin received a neuropathic pain indication in 2002, when the indication obtained was limited to post-herpetic neuralgia, a type of neuropathic pain).

Plaintiffs also allege that a May 2003 article "misrepresented the negative results of various trials that failed to establish a dose response." TCAC ¶ 196; TACAC ¶ 274.  Plaintiffs, however, fail to identify any of the "various trials" they reference or explain whether these unspecified trials were affirmatively misrepresented or, more in keeping with plaintiffs' remaining allegations, "misrepresented" through omission.  These allegations—which are both trivial and vague—plainly do not justify expanding the scope of this litigation as plaintiffs propose.

(quoting 2 Sand, Siffert, Loughlin & Reiss, Modern Federal Jury Instructions, ¶ 44.01, at 44-11 (1997));  see also Roeder v. Alpha Indus., Inc., 814 F.2d 22, 26–27 (1st Cir. 1987).

Neither of these conditions is satisfied here:  Plaintiffs have pointed to no legal, professional or contractual duty that would require defendants to disclose adverse or inconclusive clinical trial data.

Plaintiffs likewise fail to allege that defendants made any affirmative false statements or half truths such that disclosure of adverse or inconclusive clinical trial data was required to ensure that defendants' prior statements were not "so incomplete as to mislead."  Wilson v. MicroFinancial, Inc., No. 03-11883-RGS, 2006 U.S. Dist. LEXIS 38827, at *8–9 (D. Mass. June 13, 2006) (holding that "[a] corporation need only make disclosures to the extent necessary to insure that information that is revealed is not 'so incomplete as to mislead.'" (quoting Backman, 910 F.2d at 16)).  Rule 9(b) requires plaintiffs to plead with particularity not only "each allegedly misleading statement or omission including its time, place and content," but also "facts that show exactly why the statements or omissions were misleading."  Aldridge v. A.T. Cross Corp., 284 F.3d 72, 78 (1st Cir. 2002) (emphasis added and internal quotation marks omitted).  A plaintiff must, in other words, supply the court with sufficiently specific allegations concerning a defendant corporation's statements and omissions that a court, after "review[ing] the corporation's statements alongside the alleged omissions," may determine whether "the alleged omissions . . . render [the corporation]'s statements false or misleading."  Wilensky v. Digital Equip. Corp., 903 F. Supp. 173, 179 –80 (D. Mass. 1995), aff'd in relevant part and rev'd in part on other grounds sub nom. Shaw v. Digital Equip. Corp., 82 F.3d 1194 (1st Cir. 1996).

The third amended complaints fail to allege such facts. This Court has previously found that a pharmaceutical company may not hire doctors to relate their "positive anecdotal experiences" without also disclosing "scientific studies [that] significantly contradict[] and undermine[] the doctors' statements." Report & Recommendations at 49. The proposed third amended complaints, however, do not allege that any articles or presentations sponsored by defendants between May 2001 and December 2004 related positive anecdotal experiences that would have required concomitant disclosure of contradictory scientific studies. See TCAC ¶¶ 191-212; TACAC ¶¶ 269-90.

Nor do plaintiffs allege any other facts to demonstrate that the alleged omissions of adverse or inconclusive clinical trial data were misleading. Instead, the allegations of the third amended complaints are predicated on the assumption that defendants have a duty to disclose all adverse or inconclusive clinical trial data whenever a positive clinical trial is discussed. This contention is not consistent with the law of this case or of this Circuit.

This Court has previously rejected the proposition that any statement promoting Neurontin for a particular use imposes a duty on the speaker to disclose all potentially adverse or inconclusive clinical trial data. As this Court recognized:

> It would be a truly revolutionary change to make a criminal [or defrauder] out of every salesman . . . who did not take the initiative to reveal negative information about the product and who—a jury might find—harbored in his heart the hope that the buyer would never ask.

Report & Recommendations at 50 (quoting Bonilla, 150 F.3d at 70); see Mem. & Order at 20.

Nor has this Court ever endorsed plaintiffs' theory that a pharmaceutical company may never discuss any positive clinical trial without also disclosing data from every potentially conflicting clinical trial. See Mem. & Order at 20; Report & Recommendations at 46, 49. The duty to disclose that plaintiffs seek to create has no foundation either in case law or in the regulations governing the pharmaceutical industry. See, e.g., 21 C.F.R. § 312.7 (stating that federal regulations prohibiting the off-label promotion of drugs are not intended to "restrict the full exchange of scientific information concerning the drug, including dissemination of scientific findings in scientific or lay media"). Moreover, such a disclosure obligation would create a significant burden on defendants' and doctors' First Amendment speech rights. See Wash. Legal Found. v. Friedman, 13 F. Supp. 2d 51 (D.D.C. 1998), vacated on other grounds by Wash. Legal Found. v. Henney, 202 F.3d 331, 336 (D.C. Cir. 2000).

  **C.** **Plaintiffs' Allegations of Fraud Predicated on Unsubstantiated "Information and Belief" Fail To Satisfy the Pleading Standards of Rule 9(b).**

Plaintiffs argue that their proposed amendments comprise "23 pages of detailed factual allegations" that "identify 82 representative Neurontin 'events' between June 2001 and December 2004, at which Pfizer and/or its presenters delivered their misleading off-label messages." Mem. L. Supp. Pls.' Mot. Leave File Third Am. Compls. at 5. The proposed third amended complaints, however, only allege statements made at three of the eighty-two events cited. See TCAC ¶¶ 201, 208, 209; TACAC ¶¶ 279, 286, 287. Cursory descriptions are supplied for eight other events. See TCAC ¶¶ 202–07, 210, 211;

TACAC ¶¶ 280-285, 288, 289.[2] For the remaining seventy-one events, the proposed complaints provide only conference names, locations and dates without offering any information about what was said at these events, by whom or to whom. Plaintiffs only apparent selection criteria for these events is that they extend through December 2004, plaintiffs' proposed discovery cutoff, and all allegations of fraud with respect to these events are based exclusively on plaintiffs' "information and belief." TCAC ¶¶ 182, 212; TACAC ¶¶ 260, 290.

The First Circuit, however, "has consistently held that allegations based on information and belief do not satisfy Rule 9(b)'s particularity requirement unless the Complaint sets forth the facts on which the belief is founded." See Report & Recommendations at 40. Plaintiffs' proposed amendments with regard to these seventy-one events are futile, as these amendments "contain[] no factual allegations that would support a reasonable inference" of fraud. Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991) (dismissing complaint on these grounds).

---

[2] None of the statements alleged satisfies the pleading requirements of Rule 9(b). Plaintiffs, for instance, allege that presenters at a September 2001 conference concluded that "[g]abapentin was effective and safe in reducing neuropathic pain in patients suffering with diabetic peripheral neuropathy, postherpetic neuralgia, or neuropathic pain resulting from various etiologies in 5 multicenter studies." TCAC ¶ 201; TACAC ¶ 279. Plaintiffs allege that this conclusion is "false," not because the presenters mischaracterized the five multicenter studies they discussed, but because unspecified "data in Pfizer's possession failed to show efficacy for diabetic peripheral neuropathy or neuropathic pain apart from postherpetic neuralgia." TCAC ¶ 201; TACAC ¶ 279. As discussed above in section I.B, pp. 5–8, an accurate description of positive clinical trial data is not rendered misleading because it is unaccompanied by a recitation of all potentially negative or inconclusive data that might exist.

The complaints' cursory descriptions of eight other "Neurontin 'events'" are likewise unavailing. Plaintiffs, for instance, allege that information provided at a June 2005 lecture "was false and misleading because the attendees were not advised of the failed Reckless 945-224 study or the negative results of the Gorson study." TCAC ¶ 211; TACAC ¶ 289. Given that plaintiffs fail so much as to allege that Neurontin was discussed at this lecture, see id., the alleged omissions fail to satisfy Rule 9(b)'s rigorous pleading requirements.

II. **GRANTING PLAINTIFFS LEAVE TO AMEND WOULD DELAY THE CASE BY ONE YEAR AND CAUSE DEFENDANTS UNDUE PREJUDICE**

Plaintiffs' motion for leave to amend their complaints would create an extraordinary and unjustified burden and delay in discovery. See generally Foman v. Davis, 371 U.S. 178, 182 (1962) (citing "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" as grounds on which a motion for leave to amend may properly be denied under Federal Rule of Civil Procedure 15(a)). The task of gathering, reviewing, and producing all Neurontin sales and marketing documents created after May 31, 2001 would require many thousands of hours of attorney time, would cost millions of dollars, and would disrupt defendants' operations. This would result in a substantial delay in the discovery process and impose dramatic and undue prejudice upon defendants.

Defendants have previously estimated that any ruling that might require defendants to produce documents from one hundred individuals would require hundreds of hours for collection alone, and that forty temporary workers reviewing documents full time would require nearly ten months to complete initial review. See Declaration of Laura Kibbe, dated June 17, 2005, ¶ 4, 5 (Kazemi Decl. Ex. A). The costs associated with collection, processing, and this initial review would be $5 million or more, and these costs do not even include the necessary second review by Pfizer's attorneys for responsiveness, privilege, and confidentiality. See id. ¶¶ 5–6; see also Second Declaration of Laura Kibbe dated July 28, 2005 (Kazemi Decl. Ex. B) (explaining vendor

costs and likely volume of materials per custodian).  The entire process, including initial collection, first and second review, and production, would last well over a year and cost more than $10 million.  See id. ¶ 6.

Plaintiffs' most recent requests for production demonstrate the dramatic expansion to the scope of discovery they seek; these requests seek the production of the files of more than fifty individuals.[3]  Production of these individuals' files will significantly increase both the length of time necessary to complete discovery and the cost to defendants.  One can only imagine the scope of new requests that will undoubtedly be served if plaintiffs' motion is granted.

---

[3] Plaintiffs do not limit this request to those files relating to Neurontin, but rather seek all custodial files for the named individuals.  See Plaintiffs' Second Request for Documents; Plaintiffs' Third Request for Documents (Kazemi Decl. Ex. E & F).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny the plaintiffs' motion for leave to file third amended complaints, and for reconsideration of this Court's Order denying plaintiffs' objections to Discovery Order No. 3.

Dated: November 16, 2006

                              DAVIS POLK & WARDWELL

                              By:  /s/ James P. Rouhandeh
                                    James P. Rouhandeh

                              450 Lexington Avenue
                              New York, New York 10017
                              (212) 450-4000

                                    - and -

                              HARE & CHAFFIN

                              By:  /s/ David B. Chaffin
                                    David B. Chaffin

                              160 Federal Street
                              Boston, Massachusetts 02110
                              (617) 330-5000

                              *Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

**CERTIFICATE OF SERVICE**

  I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on November 16, 2006.

                /s/ David B. Chaffin