# EXHIBIT G

## COHEN & MALAD, LLP
### A T T O R N E Y S

Louis F. Cohen (1936-1992)
Richard M. Malad
Irwin B. Levin
Richard N. Bell
David J. Cutshaw
Gregory L. Laker
Thomas L. Blackburn
Richard E. Shevitz
Donald D. Levenhagen
Arend J. Abel
Shokrina Radpour Beering
Brian K. Zoeller*

Michael C. Adley
Laura C. Jeffs
Scott D. Gilchrist
Eric S. Pavlack
Jeff S. Gibson
Elizabeth J. Doepken
Julie Andrews
Philip D. Sever**
Katherine A. Harmon

**also admitted in Ohio

*Certified Family Law
Specialist

July 18, 2005

Scott L. Walker
Davis & Gilbert LLP
1740 Broadway
New York, New York 10019

*In re: Neurontin Marketing and Sales Practice Litigation*
*MDL Docket No. 04-MDL-1629*

Dear Mr. Walker:

I am writing with respect to the subpoenas I issued to your clients Sudler & Hennessy, Cline Davis & Mann, and CommonHealth in the aforementioned litigation. On June 15, 2005, you provided your clients' responses to the subpoenas. In the response, you arbitrarily limited the time parameters of the subpoena. While the subpoena I sent your clients requested documents from 1994 through the present, you only agreed to produce documents through December 31, 1998.

After receiving your client's responses, we talked on the phone to further discuss the matter. It is my understanding that the time limitation you have arbitrarily imposed stems from pending motions in which the Defendants in the above entitled matter are seeking an order from the Court limiting the scope of their responses up to 1998. You stated that your client could gather the documentation up to 1998. However, you stated that your concern is that if the Court orders the time frame of relevant production extend through the present, then your client would incur burdensome costs as a result of being required to retrieve documentation for a second time.

Your clients' position on document production is flawed for multiple reasons. First, a pending motion, to which you are not even a party, does not relieve your clients of their obligation to produce documents in a timely manner under the subpoena. Secondly, it is improper for you to arbitrarily limit the time parameters of the response. While you have set forth the typical objections permitted under Federal Rule of Civil Procedure 45, there is simply no legitimate basis for your client not to produce documents for the time perimeter set forth in the subpoena. Any alleged additional costs would be caused not by the Plaintiffs in this matter, but rather your clients' failure to fully comply with the Subpoena. Finally, at least two of your clients, Sudler & Hennessy

*July 18, 2005*
*Page Two*

and Cline Davis & Mann, previously produced documentation, which is responsive to the subpoena, to the United States Attorney's Office. There would be no burden to your client in providing these documents, as they have already been retrieved and produced.

Please contact me within seven (7) days to further discuss this matter. If I do not hear from you, I will have no choice but to seek court intervention.

Thank you for your attention to this matter.

Very truly yours,

COHEN & MALAD, LLP

Jeff S. Gibson

# EXHIBIT H

### DAVIS & GILBERT LLP

1740 BROADWAY

NEW YORK, NEW YORK 10019

(212) 468-4800

DIRECT DIAL NUMBER
(212) 468-4825
EMAIL ADDRESS
pcorcoran@dglaw.com

MAIN FACSIMILE
(212) 468-4888
PERSONAL FACSIMILE
212-974-7037

July 22, 2005

**BY FACSIMILE AND UPS OVERNIGHT**

Jeff S. Gibson, Esq.
Cohen & Malad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN  46204
317-636-6481

> Re:    Subpoenas issued to Cline Davis & Mann, Inc., Sudler & Hennessy, LLC, and CommonHealth in connection with *In re Neurontin Marketing & Sales Practices Litigation*, MDL Docket No. 04-MDL-1629, Master File No. 04-10981 (D. Mass)

Dear Mr. Gibson:

We received today your July 18, 2005 letter to our colleague Scott Walker regarding the above-referenced subpoenas issued by you to our clients Cline Davis & Mann, Inc. ("Cline"), Sudler & Hennessy, LLC ("S&H"), and CommonHealth, (the "Subpoenas").

We were surprised by your letter because we were told by Mr. Walker that when you and he last spoke over three weeks ago, you said you understood (and would get back to him shortly regarding) our concerns related to the December 1998 production cut-off date that is currently the subject of extensive motion practice before the MDL Court. As he told you at that time, our desire is simply to avoid having our clients—none of whom are parties to the MDL proceeding—incur unnecessary costs in segregating out and producing pre-December 1998 documents if the Court ultimately decides that such a production cut-off date is inappropriate.

We understand that on August 1, 2005 there will be a hearing and, presumably, a decision by the MDL Court regarding the motions related to the document production cut-off date. In view of the shortness of the delay involved—nine days—we ask you to reconsider your position and to defer the production of documents by our client until after that hearing. If that is not acceptable, we will direct our clients to begin the process of segregating out the disputed documents—a burdensome task which may be wholly unnecessary.

As much of the documentation our clients will be making available is likely to duplicate information you already have available from Pfizer, the consideration we are

DAVIS & GILBERT LLP

Jeff S. Gibson, Esq.
July 22, 2005
Page 2

requesting on behalf of our non-party clients seems to us rather reasonable, and in keeping with the letter and spirit of Rules 26(b)(2) and 26(c).   We look forward to your response to our request.

Very truly yours,

Paul F. Corcoran

cc:   Scott L. Walker, Esq.
      Marc J. Rachman, Esq.

# EXHIBIT I



COHEN & MALAD, LLP
**A T T O R N E Y S**

Louis F. Cohen (1936-1992)
Richard M. Malad
Irwin B. Levin
Richard N. Bell
David J. Cutshaw
Gregory L. Laker
Thomas L. Blackburn
Richard E. Shevitz
Donald D. Levenhagen
Arend J. Abel
Shokrina Radpour Beering
Brian K. Zoeller*

*Certified Family Law
Specialist

Michael C. Adley
Laura C. Jeffs
Scott D. Gilchrist
Eric S. Pavlack
Jeff S. Gibson
Elizabeth J. Doepken
Julie Andrews
Philip D. Sever**
Katherine A. Harmon

**also admitted in Ohio

September 6, 2005

Scott L. Walker
Davis & Gilbert LLP
1740 Broadway
New York, New York 10019

*In re: Neurontin Marketing and Sales Practice Litigation*
*MDL Docket No. 04-MDL-1629*

Dear Mr. Walker:

I am writing with respect to the subpoenas I issued to your clients Sudler & Hennessy, Cline Davis & Mann, and CommonHealth in the aforementioned litigation. On June 15, 2005, you provided your clients' responses to the subpoenas. In the response, you arbitrarily limited the time parameters of the subpoena. While the subpoena I sent your clients requested documents from 1994 through the present, you only agreed to produce documents through December 31, 1998.

On July 18, 2005, I sent you correspondence explaining how your client's position on the document production is inherently flawed. Mr. Paul Corcoran of your office responded by again stating that the concern is that if the Court orders the time frame of relevant production extend through the present, then your client would incur burdensome costs as a result of being required to retrieve documentation for a second time. Mr. Corcoran requested that the document production be delayed until this issue was resolved.

Your position suffers from one monumental flaw. The supposed burden you are claiming is self-imposed and not the result of the subpoena. Nowhere do you claim that merely producing all documents from the 1998 – 2004 period is in and of itself unduly burdensome. Rather, you claim that the burden would result from having to produce documents twice — the first production being a narrow subset of the documents from the 1994 – 1998 period (the period of relevance claimed by Pfizer and now apparently adopted by you after discussing the matter with counsel for Pfizer), and the second production being whatever post-1998 documents would have to be produced to supplement production up to the discovery endpoint established by the Magistrate Judge.

September 6, 2005
Page Two

Of course, this dilemma could be avoided if you simply complied with the subpoena and produced all documents as specified, i.e. from 1998 – 2004.

If it is your position producing documents from the 1998 – 2004 period is somehow unduly burdensome, the proper remedy is to seek a court order either quashing the subpoena. I would point out, however, that your client bears the burden of demonstrating the undue burden of producing post-1998 documents; claims of burden that are unsupported and based upon idle speculation of how a Magistrate Judge may rule are insufficient to meet this burden. Lacking any demonstration that complying with the subpoena is unduly burdensome, and lacking any motion to quash the subpoena or for a protective order on file, we cannot countenance any further delay.

Accordingly, we respectfully ask that you produce all documents from the time period requested (1998 – 2004) immediately. If you do not produce these documents as requested, we will have no choice but to seek attorney's fees and costs for the unnecessary time spent in trying to obtain these documents.

Thank you for your attention to this matter.

Very truly yours,

COHEN & MALAD, LLP

Jeff S. Gibson

# EXHIBIT J

☐AO88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

| SOUTHERN | DISTRICT OF | NEW YORK |
|---|---|---|

| IN RE NEURONTIN MARKETING AND SALES PRACTICE LITIGATION | SUBPOENA IN A CIVIL CASE |
|---|---|

MDL Docket No. 04-MDL-1629

Master File No.    04-10981 (D. Mass)

TO:    Keeper of the Records
       Adelphi, Inc.
       30 Irving Place, 10th Floor
       New York, NY  10063

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list document or objects):

**All documents listed on Schedule A attached.**

| PLACE | DATE AND TIME |
|---|---|
| **Keith M. Fleischman** **Bernstein Liebhard & Lifshitz, LLP** **10 East 40th Street** **New York, NY  10016** | **September 28, 2006** **at 9:00 a.m.** |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 7/18/06 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
**Jeff S. Gibson, Cohen & Malad, LLP**
**One Indiana Square, Suite 1400**
**Indianapolis, IN  46204          (317) 636-6481**

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

   (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

   (2)   (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

      (B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

   (3)   (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

         (i)   fails to allow reasonable time for compliance,
         (ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person; except that,

subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

         (iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or
         (iv)   subjects a person to undue burden.

      (B) If a subpoena

         (i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or
         (ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
         (iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

   (1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

   (2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

### Definitions

The definitions contained in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts are incorporated herein by reference. Additionally, the following definitions apply to this Schedule:

1.  "AED" shall mean anti-epileptic drug or all drugs of the ant-epileptic drug class.

2.  "And" includes the word "or" and vice-versa.

3.  "Any" includes the word "all" and vice-versa.

4.  "Adelphi, Inc." shall mean Adelphi, Inc. and includes any predecessor or successor in interest, division, office, subsidiary, and affiliate thereof, or any present or former director, officer, partner, executive, trustee, employee, agent, attorney, representative and any other Person acting or purporting to act on its behalf.

5.  "CME" shall mean continuing medical education.

6.  "Communication" shall have the meaning set forth in Local Rule 26.5.

7.  "Concerning" shall have the meaning set forth in Local Rule 26.5.

8.  "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure, and Local Rule 26.5, and includes all forms of writings as defined in Rule 1001(1) of the Federal Rules of Evidence, and includes any reduction to tangible form, whether written, recorded, taped, filmed, videotaped or in computer, digital or magnetic memory or storage, of communication, information, or data, including any graphic matter of any kind or nature, however produced or reproduced, and also includes originals, drafts, and non-identical

copies, wherever located. "Document" shall include, but not be limited to, books, contracts,

agreements, correspondence, electronic mail (email), computer tapes, discs, magnetic memory,

printouts and keypunch cards, memoranda, diaries, notes reports, bulletins, printed forms,

telegraphic communications, pleadings and other legal papers, notes, telexes, telegrams,

telecopies, facsimile reproductions, or "faxes," factual compilations, data compilations, statistical

compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work,

graphics, checks, ledgers, catalogues, brochures, pamphlets, press releases, advertisements,

invoices, minutes, photographs, microfilms, microfiche, films, personnel files, quotes,

stenographic notes, computer disks, telephone records, schedules, bids, voice recordings, and

transcriptions. This definition shall apply to all Documents in the possession, custody or control,

of the Defendant herein, or that of its attorneys, agents, employees, officers, directors, or

representatives, irrespective of who generated, prepared or signed the Documents.

9.    "Event" shall mean any conference, symposium, seminar, dinner meeting, dinner,

meal, advisory board meeting, consultant meeting, speaker bureau, speaker event, speaker

training, CME, conference call, teleconference, trip, or weekend getaway attended by physicians.

10.    "Including" shall mean including, without limitation, the specific matter or

Documents described.

11.    "Neurontin" shall mean the drug with the chemical name gabapentin, marketed

under the name Neurontin, and includes all uses or indications thereof.

12.    "Neurontin Litigation" shall mean any state or federal lawsuit, litigation

concerning the marketing of Neurontin, including but not limited to United States of America ex

rel. David Franklin v. Parke-Davis, division of Warner-Lambert Company, Civil Action No. 96-

11651-PBS (United States District Court for the District of Massachusetts), and In re Neurontin

Marketing and Sales Practices Litigation, MDL 1629, and all actions transferred or consolidated thereunder.

13. "Parke-Davis" shall mean Parke-Davis, a division of Warner-Lambert Company, and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf.

14. "Person" or "Persons" shall mean any individual, corporation, organization, association, partnership, limited partnership, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

15. "Pfizer" shall mean Pfizer, Inc. and any of its predecessors or successors in interest divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf.

16. "Relating to" shall mean constituting, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, pertaining to, or having any logical or factual connection with the matter identified, in whole or in part.

17. "Relator" shall mean the Relator David Franklin.

18. "Warner-Lambert" shall mean Warner-Lambert Company and any of its predecessors or successors in interest divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf, and includes, but not limited to, its division, Parke-Davis.

## Instructions

1.      In the event that any Document called for by this Document Request is withheld on the basis claim of privilege, that Document is to be identified as follows: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, the present custodian, and the nature of the privilege asserted.

2.      In the event that any Document called for by this Document Request has been destroyed, discarded, otherwise disposed of, or no longer exists, that Document is to be identified as completely as possible, including, without limitation, the following information: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, Person authorizing the disposal, the Person disposing of the Document, and identify its last known location and the reason it is no longer in existence.

3.      In the event that any information is redacted from a Document produced pursuant to this Document Request, that information is to be identified and the basis upon which such information is redacted be fully stated.

4.      In construing this Document Request, the singular shall include the plural and the plural shall include the singular.

5.      Unless otherwise stated, the relevant time period for this request shall be from January 1, 1994 to the present.

## DOCUMENTS REQUESTED

### REQUEST NO. 1.:

A copy of all documents produced to any party in connection with Neurontin Litigation.

### REQUEST NO. 2.:

Each engagement letter, letter agreement, memorandum of understanding, letter of intent, or contract, whether executed or otherwise, including any proposal, draft or addendum thereof, which creates, modifies, refers to, describes, or terminates the rights, duties, or services to be performed between Adelphi, Inc. on one hand and either Warner-Lambert or Pfizer, on the other hand, concerning Adelphi, Inc.'s furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

### REQUEST NO. 3.:

Documents sufficient to show each payment to Adelphi, Inc. from Pfizer or Warner-Lambert concerning, whether in whole or in part, Adelphi, Inc.'s furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

### REQUEST NO. 4.:

Copies of each invoice submitted by Adelphi, Inc. to Warner-Lambert or Pfizer concerning Adelphi, Inc.'s furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct

mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 5.:**

Copies of each budget estimate, proposal or grant request submitted by Adelphi, Inc.. to Warner-Lambert or Pfizer concerning Adelphi, Inc.'s furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 6.:**

Documents sufficient to show each payment made by Adelphi, Inc.. to any Person on behalf of, at the direction of, for, or for the benefit of Pfizer or Warner-Lambert concerning Adelphi, Inc.'s furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 7.:**

All correspondence or communications between Adelphi, Inc. and any Person concerning Adelphi, Inc.'s furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 8.:**

Documents sufficient to show each Event, which was coordinated, prepared, managed, arranged, coordinated, sponsored, or hosted by Adelphi, Inc., where Neurontin was discussed.

**REQUEST NO. 9.:**

Documents sufficient to show each non-CME Event, which was coordinated, prepared, managed, arranged, coordinated, sponsored, or hosted by Adelphi, Inc., where Neurontin was discussed.

**REQUEST NO. 10.:**

Documents sufficient to show each CME, which was coordinated, prepared, managed, arranged, coordinated, sponsored, or hosted by Adelphi, Inc. and which was sponsored in whole or in part by Pfizer or Warner-Lambert, where Neurontin or AEDs were discussed.

**REQUEST NO. 11.:**

All documents that discuss Neurontin's use, efficacy or mechanism of action for any indication, which were drafted, edited, written or prepared by Adelphi, Inc. or any technical or medical writers working for or retained by Adelphi, Inc., including but not limited to journal articles, letters to the editors, manuscripts, abstracts, syllabi, presentation slides, workbooks, telephone or teleconference scripts, monographs, or posters.

**REQUEST NO. 12.:**

All documents that discuss, summarize, track, monitor, record, or reflect actual or estimated amount, number or volume Neurontin prescriptions written by physicians.

**REQUEST NO. 13.:**

All documents received from Pfizer or Warner-Lambert relative to or concerning Neurontin's use, efficacy or mechanism of action.

**REQUEST NO. 14.:**

All documents received from Pfizer or Warner-Lambert relative to or concerning Neurontin or the marketing, advertising, promotion, medical education, or dissemination of information relating to Neurontin.

**REQUEST NO. 15.:**

All documents that describe, reflect, or refer to the labeling of Neurontin, or any stated, suggested, intended, off-label, emerging or investigational use thereof.

**REQUEST NO. 16.:**

Copies of all videotapes, audiotapes, transcripts, discussion notes, invitations, brochures, agendas, speaker lists, attendee lists, physician, completed attendee or participant feedback forms, completed attendee evaluation forms, and consultant agreements, for each Event, funded in whole or in part by Pfizer or Warner-Lambert, were Neurontin was discussed

**REQUEST NO. 17.:**

For each Event funded or sponsored, whether in whole or in part, by Pfizer or Warner-Lambert where Neurontin or other AEDS were discussed, all documents concerning or discussing faculty recruitment, speaker selection, speaker identification, speaker interest, or speaker availability for the Event.

8

**REQUEST NO. 18.:**

For each Event funded or sponsored, whether in whole or in part, by Pfizer or Warner-Lambert where Neurontin or other AEDS were discussed, all documents concerning or describing the planning, scheduling, logistical planning, organization, preparation, critique, or review of the Event.

**REQUEST NO. 19.:**

All documents concerning studies, investigations, retrospective reviews, preceptorships, clinical trials, papers, manuscripts, articles, abstracts or letters to the editor, whether published or unpublished, relating to Neurontin.

**REQUEST NO. 20.:**

All documents that reference, or were received, collected, or prepared in connection with, Neurontin Litigation.

**REQUEST NO. 21.:**

All documents that reference, or were received, collected, or prepared in connection with, an audit or investigation into the actions of Pfizer and/or Warner-Lambert relating to the marketing of Neurontin, including but not limited to investigations by any government entity, whether state or federal, investigations by Pfizer and/or Warner-Lambert, or investigations by any other person or entity.

**REQUEST NO. 22.:**

All document-retention and electronic file retention policies.

**REQUEST NO. 23.:**

Documents sufficient to show the identity of all Adelphi, Inc. account group supervisors, account managers, account executives and other employees who worked on the Neurontin

account or in connection with each Event funded or sponsored, whether in whole or in part, by

Pfizer or Warner-Lambert, where Neurontin was discussed.

## REQUEST NO. 24.:

Documents sufficient to show the identity of all Adelphi, Inc. account group supervisors,

account managers, account executives and other employees who were members of the Neurontin

Extended Disease Team, Epilepsy Disease Team, or Extended Neurontin Disease Team, or who

were regularly copied on internal Warner-Lambert or Pfizer communications.

## REQUEST NO. 25.:

Copies of all client memos sent by Adelphi, Inc. to Warner-Lambert or Pfizer relating to

Neurontin.

## REQUEST NO. 26.:

Copies of all marketing strategies, marketing plans, or strategic marketing plans prepared

by Adelphi, Inc. for Warner-Lambert or Pfizer relating to Neurontin.

## REQUEST NO. 27.:

Copies of all tactical marketing plans prepared for Warner-Lambert or Pfizer relating to

Neurontin.

Respectfully submitted,

COHEN & MALAD, LLP

Jeff S. Gibson (#22362-49)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Subpoena and attached Schedule A have been served upon the following counsel of record, via Certified United States Mail, postage prepaid, this ___ day of September, 2006:

Thomas M. Sobol
Hagens Berman LLP
One Main Street, 4th Floor
Cambridge, Massachusetts 02142

David B. Chaffin
Hare & Chaffin
160 Federal Street, 23rd Floor
Boston, Massachusetts 02110

James P. Rouhandeh
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Jeff S. Gibson

COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481

11

# EXHIBIT K

☐AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

**SOUTHERN** _____ DISTRICT OF _____ **NEW YORK**

IN RE NEURONTIN MARKETING
AND SALES PRACTICE LITIGATION

**SUBPOENA IN A CIVIL CASE**

MDL Docket No. 04-MDL-1629

Master File No.   04-10981 (D. Mass)

TO:    Keeper of the Records
       Current Medical Directions, Inc.
       1250 Broadway
       New York, NY  10001

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list document or objects):

**All documents listed on Schedule A attached.**

| PLACE | DATE AND TIME |
|---|---|
| Keith M. Fleischman<br>Bernstein Liebhard & Lifshitz, LLP<br>10 East 40th Street<br>New York, NY  10016 | **September 28, 2006**<br>**at 9:00 a.m.** |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE  9/8/06 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
**Jeff S. Gibson, Cohen & Malad, LLP**
**One Indiana Square, Suite 1400**
**Indianapolis, IN  46204**        **(317) 636-6481**

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|

| SERVED | | |
|---|---|---|
| | SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | SERVED BY (PRINT NAME) | TITLE |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

ꝺAO88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF          **MASSACHUSETTS**

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICE LITIGATION | **SUBPOENA IN A CIVIL CASE** |

MDL Docket No. 04-MDL-1629

Master File No.    04-10981 (D. Mass)

TO:    Keeper of the Records
       Custom Learning Designs, Inc.
       375 Concord Avenue
       Belmont, MA  02478

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list document or objects):

**All documents listed on Schedule A attached.**

| PLACE | DATE AND TIME |
|---|---|
| **Thomas Greene** **Greene & Hoffman** **125 Summer Street, Suite 1410** **Boston, MA  02110** | **September 28, 2006** **at 9:00 a.m.** |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
**Jeff S. Gibson, Cohen & Malad, LLP**
**One Indiana Square, Suite 1400**
**Indianapolis, IN  46204          (317) 636-6481**

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

<sup>1</sup> If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|

| SERVED | | |
|---|---|---|
| | SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)   fails to allow reasonable time for compliance,
(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

### Definitions

The definitions contained in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts are incorporated herein by reference. Additionally, the following definitions apply to this Schedule:

1.  "AED" shall mean anti-epileptic drug or all drugs of the ant-epileptic drug class.

2.  "And" includes the word "or" and vice-versa.

3.  "Any" includes the word "all" and vice-versa.

4.  "Current Medical Directions, Inc." shall mean Current Medical Directions, Inc. and includes any predecessor or successor in interest, division, office, subsidiary, and affiliate thereof, or any present or former director, officer, partner, executive, trustee, employee, agent, attorney, representative and any other Person acting or purporting to act on its behalf.

5.  "CME" shall mean continuing medical education.

6.  "Communication" shall have the meaning set forth in Local Rule 26.5.

7.  "Concerning" shall have the meaning set forth in Local Rule 26.5.

8.  "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure, and Local Rule 26.5, and includes all forms of writings as defined in Rule 1001(1) of the Federal Rules of Evidence, and includes any reduction to tangible form, whether written, recorded, taped, filmed, videotaped or in computer, digital or magnetic memory or storage, of communication, information, or data, including any graphic matter of any kind or nature, however produced or reproduced, and also includes originals, drafts, and non-identical

copies, wherever located. "Document" shall include, but not be limited to, books, contracts,

agreements, correspondence, electronic mail (email), computer tapes, discs, magnetic memory,

printouts and keypunch cards, memoranda, diaries, notes reports, bulletins, printed forms,

telegraphic communications, pleadings and other legal papers, notes, telexes, telegrams,

telecopies, facsimile reproductions, or "faxes," factual compilations, data compilations, statistical

compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work,

graphics, checks, ledgers, catalogues, brochures, pamphlets, press releases, advertisements,

invoices, minutes, photographs, microfilms, microfiche, films, personnel files, quotes,

stenographic notes, computer disks, telephone records, schedules, bids, voice recordings, and

transcriptions. This definition shall apply to all Documents in the possession, custody or control,

of the Defendant herein, or that of its attorneys, agents, employees, officers, directors, or

representatives, irrespective of who generated, prepared or signed the Documents.

9.     "Event" shall mean any conference, symposium, seminar, dinner meeting, dinner,

meal, advisory board meeting, consultant meeting, speaker bureau, speaker event, speaker

training, CME, conference call, teleconference, trip, or weekend getaway attended by physicians.

10.     "Including" shall mean including, without limitation, the specific matter or

Documents described.

11.     "Neurontin" shall mean the drug with the chemical name gabapentin, marketed

under the name Neurontin, and includes all uses or indications thereof.

12.     "Neurontin Litigation" shall mean any state or federal lawsuit, litigation

concerning the marketing of Neurontin, including but not limited to <u>United States of America ex</u>

<u>rel. David Franklin v. Parke-Davis, division of Warner-Lambert Company</u>, Civil Action No. 96-

11651-PBS (United States District Court for the District of Massachusetts), and <u>In re Neurontin</u>

2

Marketing and Sales Practices Litigation, MDL 1629, and all actions transferred or consolidated thereunder.

13.    "Parke-Davis" shall mean Parke-Davis, a division of Warner-Lambert Company, and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf.

14.    "Person" or "Persons" shall mean any individual, corporation, organization, association, partnership, limited partnership, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

15.    "Pfizer" shall mean Pfizer, Inc. and any of its predecessors or successors in interest divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf.

16.    "Relating to" shall mean constituting, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, pertaining to, or having any logical or factual connection with the matter identified, in whole or in part.

17.    "Relator" shall mean the Relator David Franklin.

18.    "Warner-Lambert" shall mean Warner-Lambert Company and any of its predecessors or successors in interest divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf, and includes, but not limited to, its division, Parke-Davis.

### Instructions

1.     In the event that any Document called for by this Document Request is withheld on the basis claim of privilege, that Document is to be identified as follows: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, the present custodian, and the nature of the privilege asserted.

2.     In the event that any Document called for by this Document Request has been destroyed, discarded, otherwise disposed of, or no longer exists, that Document is to be identified as completely as possible, including, without limitation, the following information: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, Person authorizing the disposal, the Person disposing of the Document, and identify its last known location and the reason it is no longer in existence.

3.     In the event that any information is redacted from a Document produced pursuant to this Document Request, that information is to be identified and the basis upon which such information is redacted be fully stated.

4.     In construing this Document Request, the singular shall include the plural and the plural shall include the singular.

5.     Unless otherwise stated, the relevant time period for this request shall be from January 1, 1994 to the present.

## DOCUMENTS REQUESTED

**REQUEST NO. 1.:**

A copy of all documents produced to any party in connection with Neurontin Litigation.

**REQUEST NO. 2.:**

Each engagement letter, letter agreement, memorandum of understanding, letter of intent, or contract, whether executed or otherwise, including any proposal, draft or addendum thereof, which creates, modifies, refers to, describes, or terminates the rights, duties, or services to be performed between Current Medical Directions, Inc. on one hand and either Warner-Lambert or Pfizer, on the other hand, concerning Current Medical Directions, Inc.'s furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 3.:**

Documents sufficient to show each payment to Current Medical Directions, Inc. from Pfizer or Warner-Lambert concerning, whether in whole or in part, Current Medical Directions, Inc.'s furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 4.:**

Copies of each invoice submitted by Current Medical Directions, Inc. to Warner-Lambert or Pfizer concerning Current Medical Directions, Inc.'s furnishing of goods or services in

5

connection with marketing, advertising, promotion, medical education, employee training,

physician communication, direct mail, speakers bureau/speakers training, consulting, advisory

boards, dissemination of information, strategic services, or management services relating to

Neurontin.

**REQUEST NO. 5.:**

Copies of each budget estimate, proposal or grant request submitted by Current Medical

Directions, Inc.. to Warner-Lambert or Pfizer concerning Current Medical Directions, Inc.'s

furnishing of goods or services in connection with marketing, advertising, promotion, medical

education, employee training, physician communication, direct mail, speakers bureau/speakers

training, consulting, advisory boards, dissemination of information, strategic services, or

management services relating to Neurontin.

**REQUEST NO. 6.:**

Documents sufficient to show each payment made by Current Medical Directions, Inc.. to

any Person on behalf of, at the direction of, for, or for the benefit of Pfizer or Warner-Lambert

concerning Current Medical Directions, Inc.'s furnishing of goods or services in connection with

marketing, advertising, promotion, medical education, employee training, physician

communication, direct mail, speakers bureau/speakers training, consulting, advisory boards,

dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 7.:**

All correspondence or communications between Current Medical Directions, Inc. and any

Person concerning Current Medical Directions, Inc.'s furnishing of goods or services in

connection with marketing, advertising, promotion, medical education, employee training,

physician communication, direct mail, speakers bureau/speakers training, consulting, advisory

boards, dissemination of information, strategic services, or management services relating to
Neurontin.

**REQUEST NO. 8.:**

Documents sufficient to show each Event, which was coordinated, prepared, managed,
arranged, coordinated, sponsored, or hosted by Current Medical Directions, Inc., where
Neurontin was discussed.

**REQUEST NO. 9.:**

Documents sufficient to show each non-CME Event, which was coordinated, prepared,
managed, arranged, coordinated, sponsored, or hosted by Current Medical Directions, Inc.,
where Neurontin was discussed.

**REQUEST NO. 10.:**

Documents sufficient to show each CME, which was coordinated, prepared, managed,
arranged, coordinated, sponsored, or hosted by Current Medical Directions, Inc. and which was
sponsored in whole or in part by Pfizer or Warner-Lambert, where Neurontin or AEDs were
discussed.

**REQUEST NO. 11.:**

All documents that discuss Neurontin's use, efficacy or mechanism of action for any
indication, which were drafted, edited, written or prepared by Current Medical Directions, Inc. or
any technical or medical writers working for or retained by Current Medical Directions, Inc.,
including but not limited to journal articles, letters to the editors, manuscripts, abstracts, syllabi,
presentation slides, workbooks, telephone or teleconference scripts, monographs, or posters.

**REQUEST NO. 12.:**

All documents that discuss, summarize, track, monitor, record, or reflect actual or estimated amount, number or volume Neurontin prescriptions written by physicians.

**REQUEST NO. 13.:**

All documents received from Pfizer or Warner-Lambert relative to or concerning Neurontin's use, efficacy or mechanism of action.

**REQUEST NO. 14.:**

All documents received from Pfizer or Warner-Lambert relative to or concerning Neurontin or the marketing, advertising, promotion, medical education, or dissemination of information relating to Neurontin.

**REQUEST NO. 15.:**

All documents that describe, reflect, or refer to the labeling of Neurontin, or any stated, suggested, intended, off-label, emerging or investigational use thereof.

**REQUEST NO. 16.:**

Copies of all videotapes, audiotapes, transcripts, discussion notes, invitations, brochures, agendas, speaker lists, attendee lists, physician, completed attendee or participant feedback forms, completed attendee evaluation forms, and consultant agreements, for each Event, funded in whole or in part by Pfizer or Warner-Lambert, were Neurontin was discussed

**REQUEST NO. 17.:**

For each Event funded or sponsored, whether in whole or in part, by Pfizer or Warner-Lambert where Neurontin or other AEDS were discussed, all documents concerning or discussing faculty recruitment, speaker selection, speaker identification, speaker interest, or speaker availability for the Event.

**REQUEST NO. 18.:**

8

For each Event funded or sponsored, whether in whole or in part, by Pfizer or Warner-Lambert where Neurontin or other AEDS were discussed, all documents concerning or describing the planning, scheduling, logistical planning, organization, preparation, critique, or review of the Event.

**REQUEST NO. 19.:**

All documents concerning studies, investigations, retrospective reviews, preceptorships, clinical trials, papers, manuscripts, articles, abstracts or letters to the editor, whether published or unpublished, relating to Neurontin.

**REQUEST NO. 20.:**

All documents that reference, or were received, collected, or prepared in connection with, Neurontin Litigation.

**REQUEST NO. 21.:**

All documents that reference, or were received, collected, or prepared in connection with, an audit or investigation into the actions of Pfizer and/or Warner-Lambert relating to the marketing of Neurontin, including but not limited to investigations by any government entity, whether state or federal, investigations by Pfizer and/or Warner-Lambert, or investigations by any other person or entity.

**REQUEST NO. 22.:**

All document-retention and electronic file retention policies.

**REQUEST NO. 23.:**

Documents sufficient to show the identity of all Current Medical Directions, Inc. account group supervisors, account managers, account executives and other employees who worked on

the Neurontin account or in connection with each Event funded or sponsored, whether in whole or in part, by Pfizer or Warner-Lambert, where Neurontin was discussed.

**REQUEST NO. 24.:**

Documents sufficient to show the identity of all Current Medical Directions, Inc. account group supervisors, account managers, account executives and other employees who were members of the Neurontin Extended Disease Team, Epilepsy Disease Team, or Extended Neurontin Disease Team, or who were regularly copied on internal Warner-Lambert or Pfizer communications.

**REQUEST NO. 25.:**

Copies of all client memos sent by Current Medical Directions, Inc. to Warner-Lambert or Pfizer relating to Neurontin.

**REQUEST NO. 26.:**

Copies of all marketing strategies, marketing plans, or strategic marketing plans prepared by Current Medical Directions, Inc. for Warner-Lambert or Pfizer relating to Neurontin.

**REQUEST NO. 27.:**

Copies of all tactical marketing plans prepared for Warner-Lambert or Pfizer relating to Neurontin.

Respectfully submitted,

COHEN & MALAD, LLP

_____
Jeff S. Gibson (#22362-49)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Subpoena and attached Schedule A have been served upon the following counsel of record, via Certified United States Mail, postage prepaid, this ___ day of September, 2006:

Thomas M. Sobol
Hagens Berman LLP
One Main Street, 4th Floor
Cambridge, Massachusetts  02142

David B. Chaffin
Hare & Chaffin
160 Federal Street, 23rd Floor
Boston, Massachusetts  02110

James P. Rouhandeh
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY  10017

_____
Jeff S. Gibson

COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana  46204
(317) 636-6481

11