# DAVIS POLK & WARDWELL

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

1300 I STREET, N.W.
WASHINGTON, D.C. 20005

1600 EL CAMINO REAL
MENLO PARK, CA 94025

99 GRESHAM STREET
LONDON EC2V 7NG

15, AVENUE MATIGNON
75008 PARIS

MESSETURM
60308 FRANKFURT AM MAIN

MARQUÉS DE LA ENSENADA, 2
28004 MADRID

1-6-1 ROPPONGI
MINATO-KU, TOKYO 106-6033

3A CHATER ROAD
HONG KONG

JAMES E. MURRAY
212 450 4084
james.murray@dpw.com

212 450 4084

July 19, 2005

Re: In re Neurontin Marketing and Sales Practices Litigation, MDL No. 1629

Thomas M. Greene, Esq.
Greene & Hoffman, P.C.
125 Summer Street
Boston, MA 02110

Dear Mr. Greene:

I write in response to your letter dated July 8, 2005 regarding certain discovery matters, in which you request responses to 25 enumerated issues that remain outstanding. Without waiving any general or specific objections to Plaintiffs' discovery requests, I address each point below.

1. (Cline, Davis, Mann/Sudler Hennessey documents): At our final meet and confer session on June 16, 2005, I informed you that we would provide responsive documents contained in the boxes of vendor materials in our possession that are from the time period prior to December 31, 1998. I have also informed you on several occasions that, while we do have documents from these vendors, I do not know if these boxes represent a "copy set" of all documents, or a portion of the documents, produced to the government.

2. and 9. ("Gideon" database and clinical trial payments): Although the "Gideon" database is not the correct name, we have located at least one database that contains information regarding payments to physicians relating to clinical studies. This will confirm that we will produce the relevant portions of this database, and will continue to search for any other databases containing such information.

3., 4. and 20. (Neurontin clinical trial documents and lists of clinical trials): We have had some meetings and have scheduled additional meetings this week with personnel in clinical affairs, and should be able to provide information relating to these issues following those meetings.

Thomas M. Greene, Esq.                    2                    July 19, 2005

     5., 6., and 11. (Trial Master Files ("TMFs") and Case Report Forms ("CRFs")): This will confirm that we will make available to plaintiffs the boxes in Ann Arbor relating to clinical trials that we have described to you. Please note that pulling and preparing the boxes for inspection is a time consuming process, and we will require notice by plaintiffs of when they wish to commence inspection. We will provide the index for these boxes by Friday of this week.

     7. (medical liaison database): We have not determined whether a database exists which contains information regarding medical liaison activity prior to December 31, 1998. As we have previously stated, we have no objection to producing such portions of a database if it exists.

     8. (documents concerning "Identified Doctors"): It is not practical for us to conduct a search for information by doctor name, as it is far too burdensome to search files this way. To the extent that we are producing information in response to other of your requests, you will of course receive such information relating to the Identified Doctors. We will also consider any specific requests for particular information relating to the identified doctors that you may make.

     10. (communications with Micromedex): While your letter raises the question "whether Defendants communicated directly with Micromedex," we assume, based on our prior discussions, that you are asking whether Pfizer discussed the *Franklin* litigation with Micromedex. We are currently not aware that any such discussion took place, but we are continuing our search for the answer to this inquiry.

     12. (clinical trials conducted outside Ann Arbor): This will confirm that we understand that documents relating to clinical trials that were conducted outside Ann Arbor were sent to Ann Arbor for storage.

     13. (IMS data): As we have informed you, Defendants' normal practice is to maintain IMS data for a rolling 24 month period. We are in the process of trying to determine if we have any additional IMS data from other time periods.

     14. (public statements regarding monotherapy): As you are no doubt aware, Plaintiffs can access public statements made by Defendants through any of a number of public search engines, including Westlaw and Lexis-Nexis. We agree to search the files of the appropriate department at Pfizer to determine if any files from Warner-Lambert containing responsive information exist.

     15. and 19. (willingness to search finance department): We have spoken with people in the Pfizer finance department and are in the process of determining whether they have documents that relate to the marketing of Neurontin prior to December 31, 1998. If so, we will inform you and will review and produce responsive documents.

Thomas M. Greene, Esq.                     3                         July 19, 2005

     16. (documents relating to Pfizer's due diligence): We will conduct a search to determine if any non-privileged or not otherwise protected reports were created by Pfizer prior to the merger relating to Neurontin.

     17. (Neurontin profit and loss statements): We have located hard copies of the Neurontin profit and loss statements from 1997 – 2000 and they are enclosed herewith. Please note that they bear the legend "Confidential," designating that they should be treated as "Confidential" pursuant to the Protective Order entered by the Court on January 10, 2005. We will include these documents with bates numbers in our next production. We are continuing to look for profit and loss statements from the remaining years and will provide them to you as soon as we locate them.

     18. and 25. (articles under FDAMA): Based on our prior discussions, the issue relating to Interrogatory No. 34 was not whether we would respond to the interrogatory. The issue is whether Warner-Lambert filed articles pursuant to FDAMA. We are currently not aware that Warner-Lambert filed any such articles, but we are continuing our search for the answer to this inquiry.

     21. (stipulation of authenticity): For the reasons included in our motion for a protective order relating to Plaintiffs' more than 44,000 requests for admission, and for the reasons stated by Magistrate Judge Sorokin at the July 14, 2005 hearing, we will not stipulate to the authenticity of all documents we have produced.

     22. (definition of effectiveness): It would be entirely premature at this stage of the litigation to respond to Interrogatory Number 5, as the question whether Neurontin is effective, ineffective, or possibly effective for the treatment of various conditions is properly the subject of expert testimony. We note that we have agreed, however, to produce documents relating to the efficacy of Neurontin for various off-label uses.

     23. (identification of marketing strategies): As you are aware, Defendants have produced from the files of those persons responsible for the marketing of Neurontin documents relating to the marketing of Neurontin from the period prior to December 31, 1998. The burden of identifying marketing strategies referenced within those documents is the same for Plaintiffs as it would be for Defendants and, accordingly, Plaintiffs should review the documents to locate information responsive to this request.

     24. (lists of sales representatives and medical liaisons): While your letter references lists of sales representatives and medical liaisons, we assume, based on the referenced Interrogatory Number 28 and our prior discussions, that you are actually seeking information relating to those sales representatives and medical liaisons who were terminated within one year of the merger between Warner-Lambert and Pfizer. We are in the process of determining whether this

Thomas M. Greene, Esq.    4    July 19, 2005

information is available within one accessible location, and will let you know once we find out.

Finally, we do not intend to respond here to your assertions regarding Plaintiffs' responses to Defendants' discovery requests, but please do not take our silence as any indication that we agree with any or all of those statements.

Please do not hesitate to call me if you have any questions regarding the foregoing.

Sincerely yours,

James E. Murray

By Facsimile & Mail