# DAVIS POLK & WARDWELL

1300 I STREET, N.W.
WASHINGTON, D.C. 20005

1600 EL CAMINO REAL
MENLO PARK, CA 94025

99 GRESHAM STREET
LONDON EC2V 7NG

15, AVENUE MATIGNON
75008. PARIS

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

WRITER'S DIRECT

212 450 4853

MESSETURM
60308 FRANKFURT AM MAIN

MARQUÉS DE LA ENSENADA, 2
28004 MADRID

1-6-1 ROPPONGI
MINATO-KU, TOKYO 106-6033

3A CHATER ROAD
HONG KONG

November 13, 2006

Re:   In re Neurontin Marketing, Sales Practices and Products Liability Litigation, MDL No. 1629

Mr. Ronald J. Aranoff, Esq.
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street
New York, New York 10016

Dear Ron:

I write in response to your letter dated October 30, 2006. As you know, defendants served responses and objections to plaintiffs' interrogatories over eighteen months ago, on May 6, 2005. Subject to the objections raised in Defendants' Response and Objections to Class and Non-Class Plaintiffs' First Set of Interrogatories, and reserving all rights, defendants state the following.

Interrogatories 2 and 3: In light of the Court's August 17, 2006 discovery order, defendants will be producing IMS data. Defendants have stated that they will begin the process to provide this information once the parties have met and conferred regarding the scope of such production, as ordered by the Court. Accordingly, plaintiffs' request for prescription data relating to Neurontin will be satisfied by that production.

Interrogatory 4: As you know, defendants have produced hundreds of clinical research reports relating to Neurontin, as well as an index that provides information about the title, author, and date of each study. In addition, defendants have produced an interactive bibliography containing thousands of Neurontin articles, including certain case reports.[1] Plaintiffs can derive the information requested by letters (a) through (i) of this interrogatory from these produced documents, and it would be equally burdensome for defendants as plaintiffs to do so. In addition, defendants have made available for inspection and copying boxes containing trial master files and case report forms related to Neurontin clinical

---

[1] While plaintiffs failed to define "case report" in their interrogatories, in Plaintiffs First Request for the Production of Documents, plaintiffs defined a case report to be "a written or oral report that describes the treatment of an individual payment." This definition is patently overly broad.

Mr. Ronald J. Aranoff, Esq.                 2                    November 13, 2006

studies which may contain the design of the clinical trials and additional information relating to the results.

Interrogatory 5: Defendants continue to assert that it is premature for plaintiffs to request defendants' position as to whether Neurontin is effective for particular off-label indications. In addition, it is overly broad and unduly burdensome to require defendants to identify all publications relating to the more than 450 uses incorporated by reference in interrogatory number 5. Defendants have provided research reports and articles relating to Neurontin, and plaintiffs can divide those articles by indication with no more burden than would be incurred by defendants were they to do so.

Interrogatories 6 – 12: Defendants are producing information relating to the speakers' bureau for Neurontin and have already produced documents relating to meetings at which the relevant off-label uses of Neurontin may have been discussed. Plaintiffs can derive the answers to this interrogatory, to the extent they exist, from those files, and it is equally burdensome for defendants as plaintiffs to do so.

Interrogatory 13: Your letter states that defendants previously agreed to provide information responsive to this request through December 31, 1998. On its face, however, the interrogatory requests information from the time period after June 2000, and defendants objected to this interrogatory in large part due to that time period. At the 2005 meet-and-confer sessions, defendants stated that if the time period for discovery was extended they would need to consider how they would respond to this interrogatory, and further noted that certain phrases in the interrogatory were overly broad. In light of Discovery Order Number 3, defendants are happy to meet and confer to determine if the parties can come to some agreement as to the appropriate scope of this interrogatory.

Interrogatories 14 – 17: Defendants have already identified the databases called for in these requests. As outlined in my October 24, 2006 letter, defendants will produce the CMMS and Sherlock databases. Defendants have already produced the Merlin and Pfoenix databases. Defendants have agreed to produce IMS data after meeting and conferring regarding the scope of that data. Defendants will agree to meet and confer regarding the request for information regarding databases that record information relating to payments to physicians.

Interrogatories 18 – 21: Defendants stand on their objections regarding burden. Defendants agree to meet and confer in an attempt to narrow the scope of these interrogatories.

Interrogatory 22: At the 2005 meet-and-confer sessions, defendants stated that interrogatory 22 was duplicative of interrogatory number 13, the response to which is above. Defendants also are willing to meet and confer as to interrogatory number 22.

Mr. Ronald J. Aranoff, Esq.        3        November 13, 2006

Interrogatories 23-26: At the 2005 meet-and-confer sessions, the parties agreed that if the time frame for discovery was extended into the Pfizer period, they would discuss whether these requests could be narrowed such that defendants could provide responsive information. No discussions have taken place to date on this issue.

Interrogatory 28: The subject of this interrogatory was discussed at the August 16, 2006 meet-and-confer session. At that time, defendants reiterated their objections as to relevance and burden. Defendants also noted that, based on investigations to date, it was not possible to generate the requested information for employees with responsibility for Neurontin. To date, defendants have been unable to determine whether there is a means by which defendants will be able to respond to this interrogatory.

Interrogatories 30 – 33: Defendants have agreed to produce information relating to the speakers' bureau for Neurontin, which contains information relating to payments to physicians to act as speakers for Neurontin.

Interrogatories 35 – 36: Defendants stand by their objections to these interrogatories. Defendants fail to see the relevance of requests seeking the identification of every motion and every lawsuit in which defendants have argued "that an opposing party's evidence that any of the Defendant's drugs caused a medical condition or result was not sufficient or admissible, due to the opposing party's failure to present sufficient 'scientific' evidence."

\* \* \*

As I mentioned in my November 1, 2006 letter, fifteen months have passed since the parties last exchanged correspondence relating to plaintiffs' interrogatories. Defendants do not agree that plaintiffs have satisfied their meet and confer obligations under Rule 37(a)(2) with respect to the interrogatories identified in your letter. In fact, many of these interrogatories may have been impacted by the development of, and the discovery rulings in, the case to date. Accordingly, we are open to discussing the issues addressed above.

Sincerely,

Debbie MacGregor

Debbie MacGregor

cc:    Thomas Greene, Esq.
        Richard Shevitz, Esq.

By Facsimile