UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) ) | MDL Docket No. 1629

Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:

ALL SALES AND MARKETING ACTIONS | ) ) ) ) ) ) | Judge Patti B. Saris

Magistrate Leo T. Sorokin |

**JOINT REPORT OF OUTSTANDING
DISPUTES REGARDING DOCUMENT PRODUCTION**

The parties, by their respective undersigned counsel, consistent with the Court's July 18, 2006, Discovery Order No. 3, hereby submit their Joint Report of Outstanding Disputes Regarding Document Production.

**Background**

In its July 18, 2006, Discovery Order No. 3, the Court noted that the parties' general discovery disputes were derived from the 252 individual document requests contained in Plaintiffs' First Request for Production of Documents ("RFP"). Discovery Order No. 3, p. 4. The Court instructed the parties to confer regarding these document requests and to file a joint report delineating the specific requests for production that remained in dispute, the defendants' response thereto, and each party's respective position thereon. *Id*.

The parties have engaged in numerous meet and confer sessions and informal telephone discussions regarding the disputed discovery. The parties met and conferred on all the outstanding discovery requests on May 18 and 24, 2005, and again on June 6 and 16, 2005. On October 16, 2006, plaintiffs' counsel wrote a letter to defendant's counsel in an effort to fully

resolve the discovery dispute or proceed with a submission.  On October 24, 2006, defendants

responded to this letter, committing to discovery deadlines for the production of a number of

categories of documents listed in plaintiffs' letter.  For other categories, defendants expressed

their view that they had already produced, or were in the process of producing, responsive

materials.  For still other categories, defendants noted that they did not believe the requested

documents were called for by plaintiffs' document requests, nor did they believe the parties had

ever discussed the production of these materials, and defendants suggested that the parties meet

and confer to discuss these categories.

Plaintiffs believe the documents at issue are critical to plaintiffs' prosecution of their

case.  Accordingly, plaintiffs seek the Court's assistance in expediting the production of the

highly relevant discovery requests.  Defendants believe that they have already complied with

certain requested documents, that the meet-and-confer process has not been completed for others,

and that still other categories are objectionable.

Set forth below are the five categories of document requests upon which the parties have

reached an impasse, cross-referenced to the document request numbers plaintiffs believe each

category relates to, namely

1)      The Thought Leader Database (if different than the Betsy Database) (Plaintiffs'
        First Request for Production of Documents Nos.121-122);

2)      Documents relating to refunds that Pfizer gave to customers for lack of efficacy or
        side effects (Plaintiffs' First Request for Production of Documents Nos.136-147 and
        242);

3)      Monthly physician tracking reports (Plaintiffs' First Request for Production of
        Documents Nos.176-178);

4)      Documents relating to the internal Neurontin website, including, but not limited
        to, all archived materials and all back-up copies (Plaintiffs' First Request for Production
        of Documents Nos.136-147);

5)    All operating plans for all departments, as well as minutes for all operating meetings (Plaintiffs' First Request for Production of Documents Nos.67-68 and 124-126).

The parties note that, in preparing this Joint Submission, they have provided their own descriptions of their respective positions, and in no way endorse or agree with one another's characterizations thereof.

In addition to the categories of existing disagreement set forth below, the parties are still engaged in discussions regarding a number of Plaintiffs' document requests in an effort to resolve their differences without the need for Court intervention. If the parties are unable to resolve their differences regarding these requests, they will promptly supplement this Submission in order to apprise the Court of additional disputes concerning Plaintiffs' document requests.

## <u>Categories of Existing Disagreement</u>

### I.    The Thought Leader Database (if different than the Betsy Database) (Plaintiffs' First Request for Production of Documents Nos.121-122)

**<u>Request No. 121:</u>** All records in any of Defendants' databases, including, but not limited to, the Parke-Davis APT database, relating to any payment from Defendants to any author of an article, published letter or abstract that relates to Neurontin. However, for this request it is not necessary to produce records relating to authors who were employees of the Defendants during the time such authors were employed. The response to this request should include all fields of the database for every record produced.

**<u>Defendants' Response</u>**: In addition to the General Objections, Defendants object to Request No. 121 on the grounds that the request is overly broad in requesting "all" such records. Defendants further object on the grounds that the request is not limited to documents from the relevant time period, and that it is duplicative of other requests. Defendants further object to Request No. 121 on the grounds that the request is not limited to off-label uses of Neurontin.

**<u>Request No. 122:</u>** All records in any of Defendants' databases, including, but not limited to, the Parke-Davis APT database, relating to all payments from Defendants, directly or indirectly, to any of Identified Physicians. The response to this request should include all fields of the database for every record produced.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 122 on the grounds that the request is overly broad and unduly burdensome. Defendants further object on the grounds that the request is not limited to documents from the relevant time period.  Defendants further object to Request No. 122 on the grounds that the request is not limited to off-label uses of Neurontin.

A.    **Plaintiff's Position**

Plaintiffs can understand Defendants' reluctance to disclose information concerning these champions of Neurontin because all of Defendants' communications with these "thought leaders" are at the heart of the alleged indirect network they used to surreptitiously promote Neurontin in contravention of the FDA's restrictions.  However, Defendants' preference to keep these potentially damaging documents from the Plaintiffs does not form a proper basis to avoid their production.  And any perceived burden is outweighed by the direct and material significance these documents have to Plaintiffs' case, and the burden that would result if Plaintiffs were not permitted to discover them.

Moreover, Plaintiffs' access to Pfizer's communications with "thought leaders" should not be limited to communications relating to "off-label" uses.  Plaintiffs seek access to all communications, since they are probative of the manner in which Pfizer controlled the content of supposedly unbiased, independent presentations.  Thousands of clinicians attend continuing medical education seminars and review medical literature each year that they assume is prepared by an unbiased author not affiliated with the pharmaceutical industry.  The information obtained from seminars and medical literature impact their prescribing practices. If it were known that the physicians who author the literature and present it at seminars are, in fact, "thought leaders," who are in the back pocket of Pfizer, an attendee might be more skeptical of the disseminated information and more judicious in prescribing the product.  This remains true whether the "thought leaders" are promoting for off-label or FDA approved uses.  Plaintiffs are entitled to

this highly probative information to show the extent to which Defendants' controlled the content of the supposedly independent presentations and the bias they created in the marketplace.

**B.      Defendants' Position**

Putting aside plaintiffs' baseless, self-serving description of defendants' position and motives in the description of plaintiffs' position with respect to this and the following items, plaintiffs' document requests, delineated above, for all records in databases relating to payments to the authors of Neurontin articles and for records of all payments to the so-called "Identified Physicians" (of which there are 75), referenced in Request No. 122, bear no relation on their face to a request for a so-called "Thought Leader" database.  Defendants have located no record reflecting a discussion with plaintiffs in which plaintiffs requested the "Thought Leader" database in advance of October 16, 2006, when defendants first received the letter from plaintiffs in which plaintiffs sought the status of the production of such a database.  In their October 24, 2006 response to that letter, defendants expressed their belief that this database had never been discussed and suggested that the parties meet and confer to discuss this issue.  Instead, plaintiffs included this issue in this joint submission.

If plaintiffs are actually requesting the APT database, referenced in request number 121, this database is an accounts payable database.  Defendants will produce information from this database, as well as from Pfizer's accounts payable database, sufficient to show Neurontin-related payments, if any, to the 75 "Identified Physicians," after plaintiffs provide additional identifying information about these physicians (such as their address or state of residence).  As previously described to plaintiffs, this is an extremely time-consuming process.  Defendants will also consider identifying other payments, if any, made to other relevant physicians, if and when such physicians are identified by plaintiffs.

To the extent plaintiffs are relying on the delineated requests to seek a so-called "Thought-Leader" database, defendants request that plaintiffs provide additional information to allow defendants to determine the nature of the information plaintiffs seek. Based on a search to date, defendants have not located a database fitting plaintiffs' description. Defendants note that they have already produced a list of physicians described as key opinion leaders in the areas of epilepsy and post-herpetic neuralgia (Neurontin's approved indications). Defendants also note that they previously agreed to produce relevant documents from the files of the national marketing team for Neurontin. To the extent documents in these files refer to "thought leaders" for the relevant off-label uses for Neurontin, these documents will be produced.

## II. Documents relating to refunds that Pfizer gave to customers for lack of efficacy or side effects (Plaintiffs' First Request for Production of Documents Nos.136-147 and 242

<u>**Request No. 136:**</u>    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of any pain syndrome.

<u>**Defendants' Response:**</u>  In addition to the General Objections, Defendants object to Request No. 136 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents. Defendants further object on the basis that the request is duplicative of other requests.

<u>**Request No. 137:**</u>    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of any psychiatric syndrome.

<u>**Defendants' Response:**</u>  In addition to the General Objections, Defendants object to Request No. 137 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents. Defendants further object on the basis that the request is duplicative of other requests.

<u>**Request No. 138:**</u>    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of migraine.

<u>**Defendants' Response:**</u>  In addition to the General Objections, Defendants object to Request No. 138 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents. Defendants further object on the basis that the request is duplicative of other requests.

<u>**Request No. 139:**</u>    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of social phobia.

D**efendants' Response:**  In addition to the General Objections, Defendants object to Request No. 139 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 140:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of anxiety disorder.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 140 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 141:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of any bipolar disorder.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 141 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 142:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of restless leg syndrome.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 142 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 143:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of RSD.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 143 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 144:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of panic disorder.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 144 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 145:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of sleep disorders.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 145 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 146:**    All documents relating to the efficacy or inefficacy of Neurontin at doses greater than 1800 mgs/day.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 146 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 147:**    All documents relating to the efficacy or inefficacy of Neurontin as a monotherapy for the treatment of epilepsy.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 147 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 242:**    All documents relating to payment or non-payment of claims relating to prescriptions for off-label use of Neurontin by third-party payors.

**Defendants' Response:**  In addition to the General Objections, Defendants further object on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the grounds that it seeks documents from outside the relevant time period.  Defendants further object on the grounds that such documents and information are more appropriately sought from third parties.

A.    **Plaintiffs' Position**

Plaintiffs' case is based in large part on the Defendants' promotion of Neurontin for off-label uses and/or uses for which it is not efficacious.  Through the limited discovery of Pfizer documents that has occurred thus far, Plaintiffs have learned that following the high profile media exposure of Defendants' fraudulent marketing practices for Neurontin, the Defendants began receiving  refund requests from customers who had used Neurontin off-label.   These requests were assigned to a specific Pfizer employee. In the event that Defendants did in fact

give refunds of money to customers that purchased or paid for a Neurontin prescription, this creates a strong inference that the Defendants knew or had reason to know that their drug is not efficacious.  Accordingly, any document reflecting the request for or payment of refund for Neurontin based on lack of efficacy, or any document evidencing the assignment of refund requests to a specific Pfizer employee is both highly relevant and probative.

**B.     Defendants' Position**

As with the "Thought Leader" database, defendants only learned of plaintiffs' interest in documents relating to refunds upon receipt of plaintiffs' October 16, 2006 letter.  Again, in their October 24, 2006 response, defendants expressed their belief that this subject had never been discussed previously (including at the meet-and-confer sessions that occurred in 2005), explained that the requested information appeared to be overly broad and/or vague and ambiguous, and suggested that the parties meet and confer to discuss this issue.  Instead, plaintiffs included this issue in this joint submission.

The fact that plaintiffs have tied their request for refund information to the above document requests, to which defendants interposed objections due to the fact that the requests were duplicative, makes it appear that defendants refused to produce documents relating to the efficacy of Neurontin.  In reality, in response to plaintiffs' requests for information regarding efficacy, defendants have produced hundreds of clinical research reports related to Neurontin and thousands of published articles in a database, and have made available for inspection and copying over 1,000 total boxes of materials containing the Neurontin New Drug Applications ("NDA"), Investigational New Drug Applications ("IND"), and material relating to the Neurontin clinical trials.  Despite these productions, plaintiffs now take the position that requests by individuals for refunds are responsive to their requests for documents relating to the efficacy

or inefficacy of Neurontin.  Plaintiffs' request should be denied as overly broad and unduly

burdensome.  In addition, this request seeks information that is irrelevant, as requests for refunds

cannot establish inefficacy.

### III.   Monthly physician tracking reports (Plaintiffs' First Request for Production of Documents Nos.176-178)

**Request No. 176:**   All documents relating to any efforts by Defendants to track the Neurontin prescribing behavior of physicians who had been visited by a medical liaison.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 176 on the grounds that the request calls for documents that are not relevant to the present litigation and are not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is not limited to documents from the relevant time period.  Defendants further object on the grounds that they have already produced documents responsive to the request.

Subject to and without waiving the General Objections and the foregoing Specific Objections, Defendants will produce, at a mutually convenient time and location, additional documents, to the extent they exist, from the files of those persons responsible for the marketing of Neurontin, relating to the use of medical liaisons regarding the off-label uses of Neurontin through December 31, 1998.

**Request No. 177:**   All documents relating to any efforts by Defendants to track the Neurontin prescribing behavior of physicians who had attended any Event funded, directly or indirectly, by Defendants at which off-label usage of Neurontin was discussed.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 177 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is not limited to documents from the relevant time period.  Further, Defendants object on the grounds that the request is duplicative of other requests.  Defendants also object to the request on the grounds that it is unworkable in calling for documents regarding all events "at which off-label usage of Neurontin was discussed."  Defendants further object on the grounds that they have already produced documents responsive to the request.

**Request No. 178:**   All records in any database maintained by the Defendants which contains information regarding the Neurontin prescribing history of individual physicians, whether such records were generated by Defendants or purchased from third parties.  The response to this request should include all fields of the database for every record produced.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 178 on the grounds that the request calls for documents that are not relevant to the

present litigation and are not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object on the grounds that the request is overly broad in requesting "all" such records. Defendants further object on the basis that the request is not limited to documents from the relevant time period and is not confined to off-label uses of Neurontin. Defendants further object on the grounds that the request seeks documents available from third parties.

### A.    Plaintiffs' Position

The pharmaceutical industry spends billions of dollars to purchase physician prescription data from companies such as IMS. This data is used primarily to: (a) monitor and gauge the effects of marketing tactics on specific physicians located in specific geographic areas; (b) monitor and gauge the performance of specific sales representatives for purposes of determination compensation; and (c) monitor fluctuations in specific physicians' prescriptions of the company's drug products as well as competitor products.

In its original form, prescription data is stored in electronically, either in a database file or in a spreadsheet. Because these electronic files are massive and unwieldy, Pfizer and the vendors that sell the data generate specialized reports, sometimes referred to as "cuts," that transform the data into useable form. For example, individual sales representatives will periodically receive a report detailing the prescriptions of all the physicians in their sales area. Pfizer will also generate reports that track the prescriptions of specific physicians in a specific hospital or geographic area in order to determine whether its marketing messages are penetrating that segment of the physician market.

Monthly physician tracking reports are an example of this report-generating process. These reports allow Pfizer and its sales representatives to examine the prescriptions of individual prescriptions on a monthly basis. This is precisely the type of document that Sales and Marketing Plaintiffs seek in order to show that Defendants' fraudulent marketing of Neurontin

caused physicians to generate prescriptions.  Monthly physician tracking reports will show physician attendance at events where false or misleading statements were made, or physicians being detailed by sales representatives with misleading or incomplete product information, all of which caused the physicians to write Neurontin prescriptions.  Defendants' refusal to specifically produce these reports is highly prejudicial to the Plaintiffs.  Defendants have denied that their actions caused physicians to write Neurontin prescriptions.  Absent the monthly tracking reports, Plaintiffs will not have access to the contemporaneous business records to challenge the Defendants' positions.  Plaintiffs will not be able to obtain such monthly information from any other source.  The original electronic databases are continuously updated and thus lack this historical detail.  For example, if a physician moved from San Diego to Boston in September 2000, the database will show him as being a Boston physician, whereas the monthly physician tracking reports will show that at least through September 2000, he or she was a San Diego physician.  This level of historical detail will not be available unless Defendants are required to produce monthly physician tracking reports.  Counsel for the Personal Injury Plaintiffs, Ken Fromson,  met and conferred with the Defendants on September 29, 2006 regarding the IMS data.  Counsel for the Sales and Marketing Plaintiffs met and conferred with the Defendants regarding the IMS data on November 22, 2006.

### A.    Defendants' Position

Defendants have agreed to produce IMS data relating to Neurontin, and are waiting only to meet-and-confer regarding the scope of such production, per the Court's August 17, 2006 Discovery Order, and for an agreement between IMS and plaintiffs that would allow defendants

to produce this data to plaintiffs.[1]  To the extent so-called "cuts" of this data exist, they will be produced from the files of the marketing team for Neurontin.

Despite these planned productions, plaintiffs seek any analysis of information related to Neurontin prescriptions that the company performed, not just those residing in the marketing team's files.  Plaintiffs have created a wish list about the types of documents they believe defendants should possess and then demanded the production of such documents.  Indeed, their claim that monthly tracking reports somehow will allow them "to show that Defendants' fraudulent marketing of Neurontin caused physicians to generate prescriptions" lacks any foundation whatsoever.  A report showing that a doctor wrote more prescriptions for Neurontin over time does nothing to establish why those prescriptions were written.

Moreover, to the extent plaintiffs want to determine whether a physician was detailed, they can do so by using the sales call databases that defendants have offered to produce by January 15, 2007.  To the extent that plaintiffs want to see changes in that physician's prescriptions, they can use the IMS data.  To the extent that the marketing team analyzed the effects of a marketing strategy relating to Neurontin, such analyses will be provided in the course of the production of relevant documents from the files of the marketing team.  The Court should find that the productions offered by defendants are sufficient.  It is overly broad and unduly burdensome to require defendants to conduct a broader search for analyses of Neurontin prescriptions that might, but might not, reside in other files.

---

[1]  Defendants did discuss IMS data briefly during a telephonic call with sales and marketing plaintiffs on November 22, 2006 that addressed literally dozens of issues, and defendants are still gathering information in response to that call regarding the data.  Plaintiffs' attempt to suggest that a conversation on September 29, 2006 with the product liability plaintiffs on this topic somehow constitutes a meet-and-confer with respect to the sales and marketing cases makes absolutely no sense.  Putting aside that the "meet-and-confer" was not held in this litigation, the September 29, 2006 discussion consisted of counsel for the product liability cases stating their desire to receive IMS data through the date of the last alleged suicide as quickly as possible.  Respectfully, plaintiffs' suggestion that this issue is ripe for resolution after the September and November calls is misleading.

**IV.    Documents relating to the internal Neurontin website, including, but not limited to, all archived materials and all back-up copies (Plaintiffs' First Request for Production of Documents Nos. 136-147)**

**Request No. 136:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of any pain syndrome.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 136 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 137:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of any psychiatric syndrome.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 137 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 138:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of migraine.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 138 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 139:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of social phobia.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 139 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 140:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of anxiety disorder.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 140 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 141:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of any bipolar disorder.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 141 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 142:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of restless leg syndrome.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 142 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 143:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of RSD.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 143 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 144:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of panic disorder.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 144 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 145:**    All documents relating to the efficacy or inefficacy of Neurontin for the treatment of sleep disorders.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 145 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 146:**    All documents relating to the efficacy or inefficacy of Neurontin at doses greater than 1800 mgs/day.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 146 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

**Request No. 147:**    All documents relating to the efficacy or inefficacy of Neurontin as a monotherapy for the treatment of epilepsy.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 147 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the basis that the request is duplicative of other requests.

A.    **Plaintiffs' Position**

Upon information and belief, the Defendants maintain an internal website for Neurontin and its off-label uses, and use that website to organize relevant information relating to Neurontin, including journal articles, research reports, and internal reports.  Employees of Defendants, including sales and/or detail representatives have access to the website and the information contained in it.  Therefore, not only does the website evidence the manner in which the Defendants organize, store, and use information about Neurontin in the ordinary course of business, but it also provides a key source of information for Defendants' sales and/or detail representatives and other employees in the marketing and promotion of Neurontin for off-label uses.  Accordingly, Plaintiffs are entitled to all documents relating to the internal Neurontin website.

B.    **Defendants' Position**

As with the "Thought Leader" database and the request for information regarding refunds, defendants only learned of plaintiffs' interest in documents relating to the "internal Neurontin website" upon receipt of plaintiffs' October 16, 2006 letter.  Again, in their October 24, 2006 response, defendants expressed their belief that this subject had never been discussed previously (including at the meet-and-confer sessions that occurred in 2005), explained that the requested information appeared to be overly broad and/or vague and ambiguous, and suggested that the parties meet and confer to discuss this issue.  Instead, plaintiffs included this issue in this

joint submission.  Indeed, before providing their position in this joint submission on November 27, 2006, plaintiffs had provided no information about this request, nor have plaintiffs identified the basis for their information and belief regarding the existence of such a website.

As with their position regarding refunds, plaintiffs tied their request for the "internal Neurontin website" to certain document requests to which defendants interposed objections due to the fact that the requests were duplicative.  As discussed above in connection with plaintiffs' request for information regarding refunds, this makes it appear that defendants refused to produce any documents relating to the efficacy of Neurontin.  In reality, defendants have produced large amounts of material related to this topic.  Despite these productions, plaintiffs now argue that these requests call for production of the "internal Neurontin website."  Plaintiffs' request should be denied as irrelevant and overly broad and unduly burdensome.  Alternatively, plaintiffs should provide defendants with the basis for their "belief" regarding the existence of such a website, and defendants should be granted a reasonable time to investigate the existence, if any, of such a website.  To date, defendants have not located the described website.

## V.    All operating plans for all departments, as well as minutes for all operating meetings (Plaintiffs' First Request for Production of Documents Nos.67-68 and 124-126);

**Request No. 67:**      All documents relating to marketing strategies for Neurontin (whether at the national, regional or CBU level).

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 67 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the grounds that request is not limited to documents from the relevant time period.  Defendants further object to Request No. 67 on the grounds that it is not confined to off-label uses of Neurontin.  Defendants further object on the grounds that they have already produced documents relating to Request No. 67.

Subject to and without waiving the General Objections and the foregoing Specific Objections, Defendants will produce, at a mutually convenient time and location, additional documents, to the extent they exist, from the files of those persons responsible for the marketing of Neurontin, relating to the off-label use of Neurontin through December 31, 1998.

**Request No. 68:**    All documents relating to tactical plans created to implement marketing strategies for Neurontin (whether at the national, regional or CBU level).

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 68 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the grounds that request is not limited to documents from the relevant time period, and is duplicative of other requests.  Defendants further object to Request No. 68 on the grounds that it is not confined to off-label uses of Neurontin.  Defendants further object on the grounds that they have already produced documents relating to Request No. 68.

Subject to and without waiving the General Objections and the foregoing Specific Objections, Defendants will produce, at a mutually convenient time and location, additional documents, to the extent they exist, from the files of those persons responsible for the marketing of Neurontin, relating to the off-label use of Neurontin through December 31, 1998.

**Request No. 124:**    All documents relating to any publication strategy with regard to Neurontin considered, adopted, executed, funded, proposed or rejected by Defendants.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 124 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the grounds that the request is not limited to documents from the relevant time period.  Defendants further object to Request No. 124 on the grounds that the request is not limited to off-label uses of Neurontin.  Defendants further object on the grounds that they have already produced documents responsive to the request.

Subject to and without waiving the General Objections and the foregoing Specific Objections, Defendants will produce, at a mutually convenient time and location, additional documents, to the extent they exist, from the files of those persons responsible for the marketing of Neurontin, relating to the off-label use of Neurontin through December 31, 1998.

**Request No. 125:**    All documents relating to any plans, programs, or efforts to encourage or assist physicians to write articles, published letters, posters or abstracts regarding Neurontin use.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 125 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the grounds that the request is not limited to documents from the relevant time period.  Defendants further object on the basis that the phrase "efforts to encourage or assist" is vague and ambiguous.  Defendants further object to Request No. 125 on the grounds that the request is not limited to off-label uses of Neurontin.  Defendants further object on the grounds that they have already produced documents responsive to the request.

Subject to and without waiving the General Objections and the foregoing Specific Objections, Defendants will produce, at a mutually convenient time and location, additional documents, to the extent they exist, from the files of those persons responsible for the marketing of Neurontin, relating to the off-label use of Neurontin through December 31, 1998.

**Request No. 126:**    All documents relating to any plans or programs to encourage or assist physicians to instruct, make presentations to, advise, champion, or otherwise speak to other physicians about Neurontin use.

**Defendants' Response:**  In addition to the General Objections, Defendants object to Request No. 126 on the grounds that the request is overly broad and unduly burdensome, including by requesting "all" such documents.  Defendants further object on the grounds that the request is not limited to documents from the relevant time period.  Defendants further object on the basis that the phrase "to encourage or assist" is vague and ambiguous.  Defendants further object to Request No. 126 on the grounds that the request is not limited to off-label uses of Neurontin.  Defendants further object on the grounds that they have already produced documents responsive to the request.

Subject to and without waiving the General Objections and the foregoing Specific Objections, Defendants will produce, at a mutually convenient time and location, additional documents, to the extent they exist, from the files of those persons responsible for the marketing of Neurontin, relating to the off-label use of Neurontin through December 31, 1998.

A.    **Plaintiffs' Position**

Defendants arbitrarily limited their production to documents from employees that were responsible for marketing.  Plaintiffs' request targets a specific class of documents that may not be found in the marketing files.  Specifically, Plaintiffs seek the operating plans and minutes for all operating meetings within each department of the Defendants.

Operating plans are created at the highest levels of Pfizer, well in advance of a marketing campaign; these plans form the basis for marketing strategy and set forth the budget for each strategy.  For example, the Defendants might create an operating plan which states a goal of increasing sales of Neurontin in patients with bipolar disorder and other mood disorders.  The marketing plan then tries to accomplish that goal by focusing on specific target audiences who treat patients with bipolar.  However, these marketing strategies may be given innocuously described, such as "increasing awareness of Neurontin in the psychiatric community through

funding of CMEs".  If Plaintiffs only received the marketing plan,[2] they would not know that the main plan was to increase Neurontin's sales to patients with bipolar and other mood disorders. The operating plan, however, will reveal the true nature of a particular marketing campaign.  It will also show the budgets, and thus provide a better picture of how much money Pfizer spent on the various aspects of its false and fraudulent marketing campaign.

### B.    Defendants' Position

Plaintiffs' position supports, rather than undermines, defendants' offer to produce responsive materials from the files of the marketing team for Neurontin.  The operating plans that relate to the marketing of Neurontin, regardless of where they might have been drafted originally, would be located in the files of the marketing team, which defendants are producing. Searching the files of the people who worked on the Neurontin marketing team will capture both high level operating plans relating to the marketing of Neurontin, as well as any more focused or lower level marketing plans.  Regardless of the terminology used, the point remains the same and is not in dispute:  documents relating to marketing strategy and marketing plans are most likely to be found in the marketing department.

Plaintiffs' demand to receive all operating plans and minutes of operating meetings from all departments is overly broad and unduly burdensome, and such a production is not called for by the very terms of the requests above.  As an initial matter, it is unclear upon what plaintiffs base their assumption that there are formal operating meetings and minutes.  If there are, however, plaintiffs do not, and cannot, justify the burden that would be imposed upon defendants

---

[2] There is no guarantee that Defendants intend to produce relevant documents unless the documents make specific reference to specific off-label uses that they deem to be relevant.  For example, in the example above, it is not certain that Defendants would even agree to produce a marketing strategy relating to promoting Neurontin to psychiatrists since there is no reference to "bipolar or mood disorders" or "anxiety disorders," event though those are some of the most common disorders that psychiatrists treat.

were they to track all such materials down.  The operating plan for Neurontin will be included in,

and produced from, the files of the marketing team for Neurontin.

Respectfully submitted,

**For the Plaintiffs:**

/s/ Thomas M. Sobol, Esq.                    Dated: November 30, 2006
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Thomas M. Sobol, Esq. (BBO #471770)
Ed Notargiacomo, Esq. (BBO#567636)
One Main Street, 4th Floor
Cambridge, MA 02142

**LIEFF, CABRASER, HEIMANN & BERNSTEIN,
LLP**
Barry Himmelstein, Esq.
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

**GREENE & HOFFMAN**
Thomas Greene, Esq.
125 Summer Street
Boston, MA 02110

**DUGAN & BROWNE**
James Dugan, Esq.
650 Poydras Street, Suite 2150
New Orleans, LA 70130

**BARRETT LAW OFFICE**
Don Barrett, Esq.
404 Court Square North
P.O. Box 987
Lexington, MS 39095

**LAW OFFICES OF DANIEL BECNEL, JR.**
Daniel Becnel, Jr., Esq.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

**SHAPIRO HABER & URMY LLP**
Thomas G. Shapiro, Esq. (BBO #454680)
53 State Street
Boston, MA 02109

**COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC**
Linda P. Nussbaum, Esq.
150 East 52nd Street, 30th Floor
New York, NY 10022

**COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC**
Michael D. Hausfeld, Esq.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

**RAWLINGS & ASSOCIATES, PLLC**
Mark D. Fischer, Esq.
Mark Sandmann, Esq.
325 W. Main Street
Louisville, KY 40202

**JOEL Z. EIGERMAN, ESQ.**
50 Congress Street, Suite 200
Boston, MA 02109

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**
Peter A. Pease, Esq. (BBO #392880)
One Liberty Square
Boston, MA 02109

**LOWEY DANNENBERG BEMPORAD & SELINGER, PC**
Richard Bemporad, Esq.
Richard W. Cohen, Esq.
Peter St. Phillip, Jr., Esq.
Todd S. Garber, Esq.
The Gateway – 11th Floor
One North Lexington Avenue
White Plains, NY 10601-1714

**BERMAN DEVALERIO PEASE TABACCO BURT**

**& PUCILLO**
Joseph J. Tobacco, Jr., Esq.
425 California Street, Suite 2025
San Francisco, CA 94104-2205

**JOHN F. INNELLI, LLC**
John F. Innelli, Esq.
1818 Market Street, Suite 3620
Philadelphia, PA 19103

**For the Defendants:**

/s/ James P. Rouhandeh
**DAVIS POLK & WARDWELL**
James P. Rouhandeh, Esq.
Deborah L. MacGregor, Esq.
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

**HARE & CHAFFIN**
David B. Chaffin, Esq. (BBO #549245)
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000