**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1629 <br><br> Master File No.: 1:04-cv-10981-PBS <br><br> Judge Patti B. Saris <br> Mag. Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO: ALL MARKETING AND SALES PRACTICES ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO RESPOND TO CERTAIN INTERROGATORIES**

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69 .................................................................. 12

*DIRECTV, Inc. v. Trone*, 209 F.R.D. 455 ....................................................................... 12

*Klonoski v. Mahlab*, 156 F.3d 255 .................................................................................. 12

### FEDERAL RULES

Fed. R. Civ. P. 37 ................................................................................................................ 3

Local Rule 37.1

The Class Plaintiffs and the Coordinated Third Party Payer Plaintiffs (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' motion to compel defendants Pfizer Inc. and Warner-Lambert Company (collectively, "Defendants") to respond to certain interrogatories pursuant to Federal Rule of Civil Procedure 37.

## PRELIMINARY STATEMENT

On March 11, 2005, Plaintiffs served their First Set of Interrogatories ("Interrogatories") on Defendants. Defendants answered by providing **absolutely no responsive information to any of Plaintiffs' thirty-six Interrogatories.** Defendants' only responses, other than objections, consisted of references to unspecified documents that Defendants "will produce…to the extent they exist." Over eighteen months later, Plaintiffs are still waiting for substantive responses to the majority of their Interrogatories.

## FACTUAL BACKGROUND

On May 6, 2005, Defendants served their Responses and Objections to Plaintiffs' Interrogatories (the "Responses"). (Declaration of Ronald J. Aranoff, Exhibit 1.) As set forth in those Responses, Defendants objected to providing the majority of the information requested by Plaintiffs. Pursuant to Fed. R. Civ. P. 37(a)(2)(B), counsel for the parties conducted a meet and confer on June 16, 2005 (the "2005 meet and confer") in an effort to resolve their disputes concerning Defendants' Responses absent judicial intervention. (Aranoff Dec. ¶ 5.) The result of the 2005 meet and confer was that, as to the majority of the Interrogatories, Defendants refused to provide more complete answers without the intervention of the Court. With respect to a few other Interrogatories, counsel for the Defendants agreed to further consider Plaintiffs' Interrogatories and to notify Plaintiffs if they would provide substantive responses. (Aranoff Dec. ¶ 7.) On July 8, 2005, Plaintiffs sent a letter to Defendants following up on the unresolved

2

issues from the 2005 meet and confer. (Aranoff Dec. Ex. 2.) Thereafter, on July 19, 2005, Defendants responded to Plaintiffs' July 8, 2005 follow-up letter. (Aranoff Dec. Ex. 3.) Unfortunately, Defendants' July 19th letter provided no substantive information responsive to the Interrogatories. At that time, Plaintiffs had fulfilled their obligation under Fed. R. Civ. P. 37(a)(2)(B) to meet and confer and began drafting a motion to compel. The Court stayed discovery before Plaintiffs filed their motion. On June 19, 2006, Magistrate Judge Sorokin issued Discovery Order No. 2 (Dkt. No. 372), lifting the stay on discovery.

On October 30, 2006, Plaintiffs sent a letter to Defendants setting forth Plaintiffs' understanding of Defendants' positions with respect to each of the disputed Responses and requesting that Defendants either confirm Plaintiffs' understanding or, if Defendants' positions had changed, to provide supplemental responses. (Aranoff Dec. Ex. 4.) On November 13, 2006, Defendants replied to Plaintiffs' October 30th letter. (Aranoff Dec. Ex. 5.) Essentially, Defendants represented that: (1) Defendants "will be producing" or "have produced" *unspecified* documents containing information responsive to some of the Interrogatories; (2) Defendants were standing on their objections and refusing to provide responsive information for other Interrogatories; and (3) Defendants believed that an additional meet and confer was necessary because a fair amount of time had passed since the 2005 meet and confer. (Id.) On November 22, 2006, counsel for the parties conducted a new meet and confer (the "2006 meet and confer") in an effort to resolve their disputes absent judicial intervention. (Aranoff Dec. ¶ 6.) As a result of the 2006 meet and confer, Defendants agreed to supplement their Responses with respect to

some of the disputed Interrogatories.[1]  A number of Defendants' Responses remain deficient, however, thereby necessitating the instant motion to compel.  (Id. ¶ 7.)

## ARGUMENT

Defendants' deficient responses fall into the following six categories:  (1) failure to identify Neurontin events and articles sponsored or funded by Defendants; (2) failure to identify certain Pfizer employees; (3) failure to identify each database relating to Neurontin sales call and prescription data; (4) failure to identify all Neurontin marketing strategies; (5) failure to identify sales representatives whose employment was terminated around the time of Warner-Lambert's merger with Pfizer (the "Merger"); and (6) failure to identify other legal proceedings in which Defendants challenged the admissibility of an opposing party's medical evidence on the grounds that the opposing party failed to present sufficient scientific support.[2]

### A. Neurontin Events and Articles

Plaintiffs asked Defendants to identify every event that Defendants sponsored or funded where the use of Neurontin for off-label uses was discussed.[3]  These interrogatories included requests for the names of doctors who spoke at and attended the events, as well as other event-related information, including the identification of meetings where doctors were trained to speak about Neurontin and the identification of vendors and continuing medical education ("CME") providers involved in organizing and hosting the events.  Plaintiffs also asked Defendants to identify each journal article or similar medical literature that was either funded by Defendants or

---

[1] With respect to the Interrogatories for which Defendants have promised to supplement their Responses, Plaintiffs reserve their rights to file another motion to compel at a later date should Defendants' supplemental responses prove insufficient.

[2] The full text of the disputed Interrogatories and the Responses thereto are set forth, as required by Local Rule 37.1(b)(4), in Exhibit 1 to the Aranoff Declaration, submitted herewith.

[3] Interrogatories Nos. 6-9 (Aranoff Dec. Ex. 1.)

reviewed or edited by Defendants prior to publication that discusses the off-label use of Neurontin.[4]

On November 22, 2006, twenty months after the Interrogatories were first propounded, Defendants finally produced the Speakers Bureau database, which contains names of *some* doctors who spoke at *certain* Neurontin events, and Defendants have just now pledged that they will "continue to investigate" whether they have the other requested event-related information. (Aranoff Dec. Ex. 6.) Not only does the Speakers Bureau Database not contain *all* events, it is qualitatively deficient as well. Speakers Bureau meetings are overtly promotional in nature, meaning that attendees know they are receiving marketing information directly from the drug company through its stable of speakers—the Speakers Bureau. Because they are promotional in nature, Speakers Bureau events are required to be restricted to on-label topics. According to Defendants' counsel, the Speakers Bureau Database does not include events that were not overtly promotional, such as CMEs or consultant meetings, where off-label topics were discussed. In other words, rather than produce all the requested information, Defendants are producing only a subset, and one that is calculated to be least relevant to this case.

Defendants do not dispute the relevance of Plaintiffs' requests, nor do they object that these requests are burdensome.[5] Without explanation, however, Defendants have been unable – *in twenty months* – to determine whether they have the information responsive to these interrogatories. Importantly, Defendants have never claimed that they do not have access to

---

[4] Interrogatories Nos. 10-12 (Aranoff Dec. Ex. 1.)

[5] Defendants object that Plaintiffs' requests are "unworkable" to the extent they call for information about events "where the use of Neurontin for one or more Off-Label Uses was discussed." (Aranoff Dec. Ex. 1.) Of course, the Federal Rules of Civil Procedure contain no provision that allows a party to object to an interrogatory based upon its self-serving determination that a phrase is "unworkable."

5

information responsive to these interrogatories. If Defendants have this information in their possession, custody or control, they should produce it.

Defendants also attempt to satisfy their burden to respond to Plaintiffs' requests by referring to unspecified documents that may not even exist. For example, Defendants state that "information responsive to these interrogatories…can be derived, *to the extent it exists*, from the files of the marketing team for Neurontin." (Aranoff Dec. Ex. 6) (emphasis added). Local Rule 33.1 requires much greater specificity than Defendants have provided:

> Whenever a party answers any interrogatory by reference to records from which the answer may be derived or ascertained...the specification of documents to be produced shall be in sufficient detail to permit the interrogating party to locate and identify the records and to ascertain the answer as readily as could the party from whom discovery is sought.

Local Rule 33.1(b)(1). Defendants cannot invoke Rule 33 without providing a reasonable bates range where the referenced documents can be found.[6] Plaintiffs respectfully request that the Court order Defendants to identify every Defendant-sponsored Neurontin event, and every meeting, vendor, and CME provider relating to such events by a date certain in the near future.[7]

### B. **Pfizer Employees**

Plaintiffs requested that Defendants identify each committee, team or other similar group of employees which was responsible, from June 2000 forward, for marketing Neurontin, for deciding whether to seek regulatory approval for Neurontin, and for conducting indication

---

[6] Reference to unspecified documents is a recurring problem in Defendants' Responses. Rather than waste the Court's time by re-arguing the point for each disputed interrogatory, Plaintiffs respectfully request that the Court order Defendants to provide a specific bates range for each of their responses that refers to documents produced.

[7] Local Rule 33.1(b)(4) provides that, when a party answers an interrogatory by reference to records, "the documents shall be made available…within fourteen (14) days after service of the answers to interrogatories or at a date agreed upon by the parties." Plaintiffs respectfully request that Defendants be ordered to specify documents within 14 days of the entry of any order granting Plaintiffs' motion to compel.

6

decision analysis for Neurontin.[8] Defendants initially objected that the time period contemplated by these interrogatories was overly broad. Aranoff Dec., Ex. 1. Defendants have since agreed to provide the names of the Pfizer employees who made up the *national marketing team* for Neurontin. (Aranoff Dec. Ex. 6.)

Again, Defendants do not dispute the relevance[9] of this interrogatory nor do they assert any burden. While Defendants have agreed to provide the names of employees who made up the national marketing team, Plaintiffs have asked for much more. For example, Plaintiffs are entitled to know the names of non-marketing employees who had responsibility for deciding whether to seek approval by the Food and Drug Administration ("FDA") for various off-label indications so that Plaintiffs can depose the people most knowledgeable about this process. Plaintiffs are also entitled to learn the identities of employees who created and approved the marketing team's budgets for various types of marketing strategies and tactics, a function normally carried out by a separate department. Plaintiffs respectfully request that the Court order Defendants to identify all of the requested working groups and employees, including those with responsibility for indication decision analysis and recommending whether to seek regulatory approval, as well as those involved in budgeting, by a date certain in the near future.

**C. Databases**

Plaintiffs requested that Defendants identify each database that contains: (i) data relating to sales visits or other Neurontin-related communications between Defendants and doctors; (ii) data relating to payments to doctors in connection with Neurontin; and (iii) data relating to

---

[8] Interrogatories Nos. 13 and 22 (Aranoff Dec. Ex. 1.)

[9] Defendants initially objected that these interrogatories seek information that is not relevant because the time period was overly broad. Defendants' time period objection no longer applies in light of the Court's Discovery Order No. 3 (Docket #393), which extended marketing discovery through May 31, 2001.

7

Neurontin prescriptions.[10] Defendants have produced two databases and have agreed to produce two additional databases. (Aranoff Dec. Ex. 6.) However, Defendants have never answered these interrogatories by *identifying each responsive database*, and therefore Plaintiffs do not know whether there are databases other than the ones that have been or will be produced which contain responsive information. Defendants do not challenge the relevance of Plaintiffs' requests, and there is no burden. Plaintiffs request that the Court compel Defendants to identify each database responsive to these interrogatories by a date certain in the near future.

In addition, the databases that were already produced were redacted to obscure the names of doctors in direct violation of Case Management Order No. 3 ("CMO No. 3") (Docket #62). CMO No. 3 provides that there

> shall be no redaction of documents by any party on any basis other than a bona fide claim of a recognized lawful privilege, or as required by the Health Insurance Portability and Accountability Act of 1996 or other federal laws.

Id. Defendants have not asserted any basis whatsoever for redacting doctors' names, let alone under any recognized privilege or under HIPAA. Indeed, doctors' names are neither privileged nor confidential, and are in fact highly relevant to this litigation. Therefore, Plaintiffs request that the Court compel Defendants to produce un-redacted versions of each responsive database by a date certain in the near future.

### D. Marketing Strategies

Plaintiffs requested that Defendants identify all strategies used by Defendants for marketing Neurontin, including the name of the strategy, a description of the strategy, and the budget and estimated profit for each strategy.[11] Defendants state that responsive information, "if

---

[10] Interrogatories Nos. 14-17 (Aranoff Dec. Ex. 1.)

[11] Interrogatories Nos. 18-21 (Aranoff Dec. Ex. 1.)

8

any," will be provided in documents from the files of the Neurontin marketing team. (Aranoff Dec. Ex. 6.) Again, Defendants cannot refer Plaintiffs to documents and then not specify which documents contain the responsive information and Defendants certainly cannot satisfy their obligations under the discovery rules by referring to documents which may or may not contain responsive information. Defendants should be compelled to provide Plaintiffs with reasonable bates ranges of the documents to which they refer.

Additionally, Plaintiffs have requested the identification of *all* marketing strategies, not just the ones that may or may not be found in the files of the marketing team. Moreover, Plaintiffs have requested information relating to the creation, review and approval of these strategies, and there is no guarantee that these processes were carried out by the Neurontin marketing team. Plaintiffs request that the Court order Defendants to answer these interrogatories by identifying all responsive marketing strategies and related information in Defendants' possession, custody or control by a date certain in the near future.

### E. Former Warner-Lambert Employees

Plaintiffs requested that Defendants identify all Warner-Lambert sales representatives or other employees involved in the marketing, sale, advertisement, or development of Neurontin and whose employment was terminated as a result of, or within one year of, the Merger.[12] Defendants assert that they are unable to ascertain which terminated employees were involved with Neurontin, and that providing Plaintiffs with a list of all the terminated employees – and letting Plaintiffs figure out for themselves who was involved with Neurontin – would be overly broad and burdensome.

---

[12] Interrogatories Nos. 28-29 (Aranoff Dec. Ex. 1.)

9

The identification of these terminated employees is crucial to Plaintiffs' ability to rebut one of Defendants' likely defenses. Specifically, Defendants have asserted that Pfizer discontinued Parke-Davis' off-label marketing campaign following the Merger. In numerous press releases, Pfizer has claimed that the $430 million settlement of civil and criminal claims relating to the marketing of Neurontin was a "legacy" matter related to its acquisition of Warner-Lambert. See Pfizer Inc. 2004 Financial Report at 19, available at http://www.pfizer.com/pfizer/annualreport/2004/financial/financial2004.pdf. Of course, Plaintiffs are entitled to discovery into claims *and defenses*, and Plaintiffs are plainly entitled to talk to former employees to confirm whether this defense is true – i.e., whether Pfizer discontinued the off-label promotion enterprise following the Merger. If Defendants do not have access to information regarding which former employees were involved with Neurontin, they should provide Plaintiffs with a list of all the terminated employees and let Plaintiffs figure out for themselves who was involved with Neurontin. This solution would present no burden to Defendants. Therefore, Plaintiffs request that the Court order Defendants to identify all employees who were terminated within one year of the merger by a date certain in the near future.

### F. Motions Challenging the Admissibility of Scientific Evidence

Plaintiffs requested that Defendants identify every legal proceeding in which they filed a motion asserting that an opposing party's evidence that Defendants' drugs caused a medical condition was not sufficient or admissible due to the opposing party's failure to present sufficient scientific evidence.[13] Defendants have steadfastly refused to provide information responsive to these interrogatories, objecting on the grounds of relevance and burden.

---

[13] Interrogatories Nos. 35-36, Aranoff Dec., Ex. 1.

Relevance is a liberal standard and includes all requests that appear reasonably calculated to lead to the discovery of admissible evidence. *See Klonoski v. Mahlab*, 156 F.3d 255, 267 (1st Cir. 1998) (holding Rule 26 contemplates wide-ranging discovery to the fullest possible extent). At issue in this case is the scientific standard by which efficacy is determined. Defendants have already taken a position in this case – that anecdotal stories and case reports of Neurontin's efficacy are admissible – that is 180 degrees contrary to the position Defendants have taken in other litigations, where they claim that such evidence is inadmissible. Plaintiffs believe that such evidence will be tremendously useful in determining the admissibility of scientific and non-scientific evidence, and are entitled to discovery on this issue to rebut Defendants' positions here.

As for their burdensome objection, Defendants have not articulated what the burden would be. *See DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (party who resists discovery has burden to show discovery should not be allowed, and burden of "clarifying, explaining, and supporting its objections"); *Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69, 71 (D. Conn. 2004) (objecting party bears burden of demonstrating specifically how each question is burdensome by submitting affidavits or offering evidence revealing nature of burden). Providing Plaintiffs with a list of cases or legal proceedings where Defendants filed motions relating to issues relevant to this litigation does not seem to present any burden whatsoever. Access to this information should be well within the possession, custody or control of Defendants or their counsel. Plaintiffs respectfully request that the Court order Defendants to provide an answer to these interrogatories by a date certain in the near future.

## CONCLUSION

The information requested by Plaintiffs in their Interrogatories is necessary to their claims. The burden on Defendants of responding substantively to the Interrogatories, and

11

providing specific bates ranges for documents containing responsive information, is minimal. Accordingly, Plaintiffs' motion to compel Defendants' to respond to certain Interrogatories should be granted.

Dated: November 30, 2006

Respectfully Submitted,

By:  /s/ **Thomas Greene**
Thomas Greene Esquire
Greene & Hoffman
125 Summer Street
Boston, MA 02110

By:  /s/ **Barry Himmelstein**
Barry Himmelstein, Esquire
Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By:  /s/ **Don Barrett**
Don Barrett, Esquire
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By:  /s/ **Daniel Becnel**
Daniel Becnel, Jr., Esquire
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

By:  /s/ **James Dugan**
James Dugan, Esquire
Dugan & Browne
650 Poydras St., Suite 2150
New Orleans, LA 70130

***Members of the Class Plaintiffs' Steering Committee***

By: **/s/ Thomas M. Sobol**
Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142

*Plaintiffs' Liaison Counsel and Member of the Class Plaintiffs' Steering Committee*

By: **/s/ Richard Cohen**
Richard Cohen, Esquire
Lowey Dannenberg Bemporad
& Selinger, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY 10601

By: **/s/ Linda P. Nussbaum**
Linda P. Nussbaum, Esquire
Cohen Milstein Hausfeld & Toll
150 East 52nd Street
Thirteenth Floor
New York, NY 10022

*Members of the Plaintiffs' Non-Class Steering Committee*