**H.    Defendants' Motive**

123.    Defendants' motive in creating and operating the fraudulent scheme and RICO Enterprises described herein was to fraudulently obtain additional sales and revenues from Neurontin.

124.    The fraudulent scheme was designed to, and did; cause Plaintiff and the Class *to* pay claims for Neurontin to treat conditions for which the drug is not medically necessary. The fraudulent scheme also caused Plaintiff and the Class to pay claims for Neurontin to treat non-FDA approved conditions. In the absence of Defendants' improper conduct, Plaintiff and the Class would not have paid for such Neurontin claims.

**I.    Use of the Mails and Wires**

125.    During the Class Period, Defendants used thousands of mail and interstate wire communications to create and manage their fraudulent scheme. Defendants' scheme involved national marketing and sales plans and programs, and encompassed physicians and victims across the country.

126.    Defendants' use of the mails and wires to perpetrate their fraud involved thousands of communications throughout the Class Period, including:

(a)    Marketing and advertising materials about the off-label uses of Neurontin for which the drug is not safe and medically efficacious, such materials being sent to doctors across the country;

(b)    Communications, including financial payments, with the Vendors, non-physician technical writers, and physician "authors" discussing and relating to the publication of articles touting off-label uses of Neurontin for which the drug is not safe and medically efficacious, as detailed above;

(c)    Communications with the Vendors; doctors and private insurers that fraudulently represented that Neurontin was scientifically proven to be safe and effective for off-label uses;

(d)    Communications with health insurers and patients, including Plaintiff and

the Classes, inducing payments for Neurontin to be made in reliance on misrepresentations concerning the use of Neurontin for non-medically necessary uses; and

    (e)    Receiving the proceeds of the Defendants' improper scheme.

127.    In addition, Defendants' corporate headquarters have communicated by United States mail and by facsimile with various local district managers, medical liaisons and pharmaceutical representatives in furtherance of Defendants' schemes.

## V.    CLASS ACTION ALLEGATIONS

128.    Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of themselves and Class defined as:

> All entities throughout the United States and its territories who, for purposes other than resale, purchased, reimbursed and/or paid for Neurontin for indications not approved by the FDA ("the Class") during the period from January 1, 1994 through the present ("the Class Period"). For purposes of the Class definition, entities "purchased" Neurontin if they paid some or all of the purchase price.

Excluded from the Class are (a) entities who may receive relief in the action entitled *Congress of California Seniors v. Pfizer, Inc.*, Case No. BC289643, Defendants and any entity in which any Defendant has a controlling interest, and their legal representatives, officers, directors, assigns and successors, and any co-conspirators.

129.    The Class consists of numerous entities throughout the United States, making individual joinder impractical, in satisfaction of Rule 23(a)(1). The disposition of the claims of members of the Class in a single class action will provide substantial benefits to all parties and to the Court.

130.    The claims of the representative Plaintiff are typical of the claims of the Class, *as* required by Rule 23(a)(3), in that the representative Plaintiff includes entities that, like all Class members, purchased and/or paid for Neurontin for indications not approved by the FDA. Such representative Plaintiff, like all members of the Class, have been damaged by Defendants' misconduct, in that, among other things, they paid for Neurontin to treat conditions for which the

drug has not been demonstrated to be medically effective or safe and for which the drug was not FDA-approved.

131.    The factual and legal bases of Defendants' misconduct are common to all members of the Class and represent a common thread of fraud and other misconduct resulting in injury to Plaintiff and all members of the Class.

132.    There are many questions of law and fact common to Plaintiff and the Class, and those questions predominate over any questions that may affect individual Class members, within the meaning of Rule 23(a)(2) and 23(b)(3). Common questions of law and fact include, but are not limited to, the following:

(a)    Whether Neurontin is medically necessary for uses not approved by the FDA;

(b)    Whether Defendants engaged in a fraudulent and/or deceptive scheme of improperly marketing and selling Neurontin for conditions to which it is not safe or medically efficacious;

(c)    Whether Defendants engaged in a fraudulent and/or deceptive scheme of improperly marketing and selling Neurontin to treat conditions for which the drug was not approved by the FDA;

(d)    Whether Defendants instructed or coached doctors on how to conceal the off-label nature of Neurontin on claim forms submitted to Plaintiff and members of the Class;

(e)    Whether it was the policy and practice of Defendants to prepare, fund and publish materials which contained false information and misrepresentations regarding off-label uses for Neurontin;

(f)    Whether Defendants paid non-physician technical writers to write articles containing misinformation and misrepresentations concerning purported scientific evidence regarding the safety and medical efficacy of Neurontin to treat off-label conditions;

(g)    Whether Defendants paid physicians to "author" articles written by others containing misinformation and misrepresentations concerning purported scientific evidence regarding uses of Neurontin for which it has not been scientifically proven to be safe or medically effective;

(h)    Whether Defendants paid Vendors, namely AMM and MES, to market articles containing misinformation and misrepresentations concerning purported scientific evidence regarding off-label uses of Neurontin for which the drug is not safe or medically necessary;

(i)    Whether Defendants are liable to the Class Members for damages for conduct actionable under common law fraud and unjust enrichment;

(j)    Whether Defendants are liable to the Class Members for damages for conduct actionable under the various state consumer protection laws;

(k)    Whether Defendants engaged in a pattern and practice that directly caused Plaintiff and Class Members to pay for Neurontin claims that were for non-medically necessary uses;

(l)    Whether Defendants engaged in a pattern and practice that directly caused Plaintiff and Class Members to pay for Neurontin claims that were for non-FDA approved uses, and

(m)    Whether Defendants engaged in a pattern of deceptive and/or fraudulent activity with the intent to defraud Plaintiff and the Class Members.

133.    Plaintiff will fairly and adequately represent and protect the interests of the Class, as required by Rule 23(a)(4). Plaintiff has retained counsel with substantial experience in prosecuting nationwide class actions. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither Plaintiff nor its counsel have any interest adverse to those of the Class.

134.    Plaintiff and members of the Class have suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is

-52-

superior to other available methods for the fair and efficient adjudication of the controversy under Rule 23(b)(3). Absent a class action, most members of the Class likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. Additionally, Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the Classes and require Court imposition of uniform relief to ensure compatible standards of conduct toward the Class, thereby making appropriate equitable relief to the Class as a whole within the meaning of Rule 23(b)(1) and (b)(2).

## TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

135.    Any applicable statutes of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiff and members of the Class have been kept in ignorance of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and members of the Class could not reasonably have discovered the fraudulent nature of Defendants' conduct. Accordingly, Defendants are estopped from relying on any statute of limitations.

### FIRST CAUSE OF ACTION
### Violation of 18 U.S.C. § 1962(c)
### (The MES Enterprise)

136.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

137.    Defendants are the "persons" within the meaning of § 1961(3) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

138.    MES is an "enterprise" which was created and/or used as a tool to effectuate Defendants' pattern racketeering activity. The Defendant "persons" are distinct from MES as the enterprise.

139.    The MES Enterprise engaged in and affected interstate commerce, because, *inter*

-53-

*alia*, it marketed, sold, purchased or provided Neurontin to thousands of individuals throughout the United States.

140.    Defendants have exerted control over the MES Enterprise; and Defendants have participated in the operation or management of the affairs of the MES Enterprise, through the following actions:

(a)    Defendants have asserted direct control over the information and content disseminated to the Vendors (including MES), doctors and the public regarding the medical safety and efficacy of Neurontin for off-label uses in articles published across the country;

(b)    Defendants have asserted direct control over the creation and distribution of mass-marketing and sales materials sent to Vendors and doctors throughout the United States; and

(c)    Defendants have placed their own employees and agents in positions of authority and control in the MES Enterprise.

141.    Defendants have conducted and participated in the affairs of the MES Enterprise through a pattern of racketeering activity that includes acts indictable under 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud), as described above.

142.    In implementing their fraudulent scheme, Defendants were acutely aware that Plaintiff and members of the Class depend on the honesty of Defendants in representing the safety and medical efficacy of Neurontin's uses.

143.    As detailed above, Defendants' fraudulent scheme consisted of, *inter alia*:

(a)    causing providers to misrepresent the off-label use(s) for which Neurontin was being prescribed so that Plaintiff and members of the Class were unaware that contrary to their plan language they were paying Neurontin claims for off-label uses;

(b)    deliberately misrepresenting the uses for which Neurontin was safe and effective so that Plaintiff and members of the Classes paid for this drug to treat symptoms for which it was not scientifically proven to be safe and effective;

-54-

(c)    publishing or causing to have published materials containing false information upon which physicians, Plaintiff and members of the Class relied upon when choosing to prescribe or pay for Neurontin to treat off-label uses for which the drug is not scientifically proven to be safe or medically efficacious; and

(d)    actively concealing, and causing others to conceal, information about the true safety and efficacy of Neurontin to treat conditions for which it had not been approved by the FDA.

144.    Defendants' scheme was calculated to ensure that Plaintiff and the Class would pay claims for Neurontin to treat a wide variety of uses which Defendants knew were not necessarily treatable with Neurontin.

145.    Each of Defendants' fraudulent mailings and interstate wire transmissions constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Collectively, these violations constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

146.    Defendants engaged in a pattern of racketeering activity intending to defraud Plaintiff and the Class.

147.    The above described racketeering activities amounted to a common course of conduct intended to deceive Plaintiff and the Classes. Defendants' criminal acts of racketeering had the same pattern and similar purpose of defrauding Plaintiff and the Class. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiff and the members of the Class. Defendants' fraudulent activities are part of their regular way of conducting their ongoing business and constitute a continuing threat to the property of Plaintiff and the Class.

148.    The pattern of racketeering activity alleged herein and the MES Enterprise are separate and distinct from each other. Defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the MES Enterprise. Plaintiff and

members of the Class have been injured in their property by reason of these violations in that
Plaintiff and members of the Class have made millions of dollars in overpayments for Neurontin.

149.     Plaintiff and the members of the Class relied, to their detriment, on Defendants'
fraudulent misrepresentations and omissions.

150.     Plaintiff's and the Classes' injuries were directly and proximately caused by
Defendants' racketeering activity as described above.

151.     By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are jointly and
severally liable to Plaintiff and the Class for three times the damages Plaintiff and the Class have
sustained, plus the cost of this suit, including reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### Violation of 18 U.S.C. § 1962(c)
### (The AMM Enterprise)

152.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth
herein.

153.     Defendants are the "persons" within the meaning of 18 U.S.C. § 1961(3) who
conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18
U.S.C. § 1962(c).

154.     AMM is an "enterprise" which was created and/or used as a tool to effectuate
Defendants' pattern of racketeering activity. The Defendant "persons" are distinct from AMM as
the enterprise.

155.     The AMM Enterprise engaged in and affected interstate commerce, because, *inter
alia*, it marketed, sold, purchased or provided Neurontin to thousands of individuals throughout
the United States.

156.     Defendants have exerted control over the AMM Enterprise, and Defendants have
participated in the operation or management of the affairs of the AMM Enterprise, through the
following actions:

            (a)      Defendants have asserted direct control over the information and content
disseminated to the Vendors (including AMM), doctors and the public regarding the

medical safety and efficacy of Neurontin for off-label uses in articles published across the country;

(b)    Defendants have asserted direct control over the creation and distribution of mass-marketing and sales materials sent to Vendors and doctors throughout the United States; and

(c)    Defendants have placed their own employees and agents in positions of authority and control in the AMM Enterprise.

157.    Defendants have conducted and participated in the affairs of the AMM Enterprise through a pattern of racketeering activity that includes acts indictable under 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud), as described above.

158.    In implementing their fraudulent scheme, Defendants were acutely aware that Plaintiff and members of the Class depend on the honesty of Defendants in representing the safety and medical efficacy of Neurontin's uses.

159.    As detailed above, Defendants' fraudulent scheme consisted of, *inter alia*:

(a)    causing providers to misrepresent the off-label use(s) for which Neurontin was being prescribed so that Plaintiff and members of the Class were unaware that contrary to their plan language they were paying Neurontin claims for off-label uses;

(b)    deliberately misrepresenting the uses for which Neurontin was safe and effective so that Plaintiff and members of the Classes paid for this drug to treat symptoms for which it was not scientifically proven to be safe and effective;

(c)    publishing or causing to have published materials containing false information upon which physicians, Plaintiff and members of the Class relied upon when choosing to prescribe or pay for Neurontin to treat off-label uses for which the drug is not scientifically proven to be safe or medically efficacious; and

(d)    actively concealing, and causing others to conceal, information about the true safety and efficacy of Neurontin to treat conditions for which it had not been approved by the FDA.

160.    Defendants' scheme was calculated to ensure that Plaintiff and the Class would pay claims for Neurontin to treat a wide variety of uses which Defendants knew were not necessarily treatable with Neurontin.

161.    Each of Defendants' fraudulent mailings and interstate wire transmissions constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Collectively, these violations constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

162.    Defendants engaged in a pattern of racketeering activity intending to defraud Plaintiff and the Class.

163.    The above described racketeering activities amounted to a common course of conduct intended to deceive Plaintiff and the Class. Defendants' criminal acts of racketeering had the same pattern and similar purpose of defrauding Plaintiff and the Class. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiff and the members of the Class. Defendants' fraudulent activities are part of their regular way of conducting their ongoing business and constitute a continuing threat to the property of Plaintiff and the Class.

164.    The pattern of racketeering activity alleged herein and the AMM Enterprise are separate and distinct from each other. Defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the AMM Enterprise.

165.    Plaintiff and members of the Class have been injured in their property by reason of these violations in that Plaintiff and members of the Class have made millions of dollars in overpayments for Neurontin.

166.    Plaintiff and the members of the Class relied, to their detriment, on Defendants' fraudulent misrepresentations and omissions.

167.    Plaintiff's and the Class's injuries were directly and proximately caused by Defendants' racketeering activity as described above.

168.    By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are jointly and severally liable to Plaintiff and the Class for three times the damages Plaintiff and the Class have sustained, plus the cost of this suit, including reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### Violation of 18 U.S.C. § 1962(c)
### (The Promotion Strategist Enterprise)

169.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

170.    Defendants are the "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

171.    The enterprise is an association in fact within the meaning of 18 U.S.C. § 1961(4) consisting of each of the three Defendants, Pfizer, Warner-Lambert and Parke-Davis, including their employees and agents, and the non-physician technical writers, physician "authors," and Vendors located throughout the United States who participated in the fraudulent schemes described above (the "Promotional Strategist Enterprise"). The Promotional Strategist Enterprise is an ongoing organization and functions as a continuing unit. The Promotional Strategist Enterprise was created and/or used as a tool to effectuate Defendants' pattern of racketeering activity. The Defendant "persons" are distinct from the Promotional Strategist Enterprise.

172.    The Promotional Strategist Enterprise falls within the meaning of 18 U.S.C. § 1961(4), and consists of a group of "persons" associated together for the common purposes of marketing and selling Neurontin to Plaintiff and the Class and earning profits therefrom.

173.    The Promotional Strategist Enterprise engaged in and affected interstate commerce, because, *inter alia*, it marketed, sold, purchased or provided Neurontin to thousands of individuals throughout the United States.

174.    Each Defendant has exerted control over the Promotional Strategist Enterprise and each has participated in the operation or management of the affairs of the Promotional Strategist Enterprise, through the following actions:

-59-

(a)    Defendants have asserted direct control over the information and content disseminated to doctors and the public regarding the medical safety and efficacy of Neurontin for off-label uses in articles published across the country;

(b)    Defendants have asserted direct control over the creation and distribution of mass-marketing and sales materials sent to doctors throughout the United States; and

(c)    Defendants have placed their own employees and agents in positions of authority and control in the Promotional Strategist Enterprise.

175.    Defendants have conducted and participated in the affairs of the Promotional Strategist Enterprise through a pattern of racketeering activity that includes acts indictable under 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud), as described above.

176.    In implementing their fraudulent scheme, Defendants were acutely aware that Plaintiff and the Class depend on the honesty of Defendants in representing the safety and efficacy of Neurontin's uses.

177.    As detailed above, Defendants' fraudulent scheme consisted of *inter alia:*

(a)    causing providers to misrepresent the off-label use(s) for which Neurontin was being prescribed so that Plaintiff and members of the Class were unaware that contrary to their plan language they were paying Neurontin claims for off-label uses;

(b)    deliberately misrepresenting the uses for which Neurontin was safe and effective so that Plaintiff and members of the Class paid for this drug to treat symptoms for which it was not scientifically proven to be safe and effective;

(c)    publishing or causing to have published materials containing false information upon which physicians, Plaintiff and members of the Class relied upon when choosing to prescribe or pay for Neurontin to treat off-label uses for which the drug is not scientifically proven to be safe or medically efficacious; and

(d)    actively concealing, and causing others to conceal, information about the true safety and efficacy of Neurontin to treat conditions for which it had not been approved by the FDA.

178.    Defendants' scheme was calculated to ensure that Plaintiff and the Class would pay claims for Neurontin to treat a wide variety of uses which Defendants knew were not necessarily treatable with Neurontin.

179.    Each of Defendants' fraudulent mailings and interstate wire transmissions constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Collectively, these violations constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

180.    Defendants engaged in a pattern of racketeering activity intending to defraud Plaintiff and the Class.

181.    The above described racketeering activities amounted to a common course of conduct intended to deceive Plaintiff and the Class. Defendants' criminal acts of racketeering had the same pattern and similar purpose of defrauding Plaintiff and the Class. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiff and the Class. Defendants' fraudulent activities are part of their regular way of conducting their ongoing business and constitute a continuing threat to the property of Plaintiff and the Class.

182.    The pattern of racketeering activity alleged herein and the Promotional Strategist Enterprise are separate and distinct from each other. Defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the Promotional Strategist Enterprise.

183.    Plaintiff and members of the Classes have been injured in their property by reason of these violations in that Plaintiff and members of the Class have made millions of dollars in overpayments for Neurontin.

184.    Plaintiff and the members of the Class relied, to their detriment, on Defendants' fraudulent misrepresentations and omissions.

185.    Plaintiff's and the Class's injuries were directly and proximately caused by Defendants' racketeering activity as described above.

186.    By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are jointly and severally liable to Plaintiff and the Class for three times the damages Plaintiff and the Class have sustained, plus the cost of this suit, including reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION
### Violations of 18 U.S.C. § 1962(d) by Conspiring to Violate 18 U.S.C. § 1962(c)

187.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

188.    Section 1962(d) of the RICO statute provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a); (b) or (c) of this section."

189.    Defendants have violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). The object of this conspiracy was to conduct or participate in, directly or indirectly, the conduct of the affairs of the § 1962(c) Enterprises described above through a pattern of racketeering activity.

190.    As detailed above, Defendants' co-conspirators have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to defraud Plaintiff and members of the Class.

191.    The nature of the above described Defendants' co-conspirators' acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but they were aware that their ongoing fraudulent and extortionate acts have been and are part of an overall pattern of racketeering activity.

192.    As a direct and proximate result of Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), Plaintiff and members of the Class have been and are continuing to be injured in their business or property as set forth more fully above.

193.    Defendants have sought to and have engaged in the commission of overt acts, including the following unlawful racketeering predicate acts:

-62-

(a)     Multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1342;

(b)     Multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346; and

(c)     Multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346.

194.    Defendants' violations of the above federal laws and the effects thereof, detailed above, are continuing and will continue unless injunctive relief prohibiting Defendants' illegal acts constituting a pattern of racketeering activity is imposed by the Court.

## FIFTH CAUSE OF ACTION
## Common Law Fraud

195.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

196.    Defendants have repeatedly made knowing misrepresentations and concealed facts to Plaintiff, the Class and others concerning the medical safety, efficacy and necessity of Neurontin for off-label uses, for which claims were submitted to Plaintiff and the Class to pay for Neurontin to treat non-FDA approved medical conditions.

197.    These representations were materially false in that Neurontin has no medical necessity other than for its FDA-approved uses.

198.    These representations were materially false in that they represented that the submitted claims were to pay for FDA-approved uses of Neurontin when in fact they were to pay for off-label uses, causing Plaintiff and the Class to unwittingly pay for Neurontin in violation of their healthcare policies.

199.    Plaintiff and the members of the Class reasonably relied upon the veracity of the Defendants' representations regarding the safety, efficacy and necessity of Neurontin for off-label uses.

200.    Plaintiff and the members of the Class reasonably relied upon the veracity of the Neurontin claims submitted to pay for non-FDA approved uses.

201. Defendants knew that the scientifically unsupported studies, publications and representations were being relied upon by physicians, Plaintiff and the Class for the purpose of prescribing or paying claims for Neurontin to treat such off-label conditions for which the drug is not scientifically proven to be safe or medically efficacious.

202. Defendants knew that the Neurontin claims concealing the off-label purposes for which they were being submitted were being relied upon by Plaintiff and the Class for the purpose of determining whether to pay for such claims in accordance with their policies.

203. Plaintiff and the Class suffered damage in the form of payments for Neurontin to cover off-label uses and to cover conditions for which Neurontin was not safe or medically efficacious.

204. Plaintiff and the members of the Class are therefore entitled to restitution of their payments for Neurontin to treat off-label uses and an award of compensatory damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### Violations of the Consumer Protection Statutes of the 50 States

205. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

206. Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of various state consumer protection statutes listed:

    (a) Defendants caused third parties to publish and make factual representations and statements designed to promote Neurontin "off-label" use that were false, misleading and/or deceptive;

    (b) Defendants unfairly and deceptively sold Neurontin to the public based upon statements made by a third party that Defendants hired or improperly influenced, that were deceptive;

(c)    Defendants omitted material information known to them that would have disclosed materially adverse facts to doctors in order to induce doctors to prescribe Neurontin;

(d)    Defendants knew that published studies promoting Neurontin for non-approved users lacked the scientific integrity that was expected of such studies and acted to conceal adverse studies and a balanced statement of the facts;

(e)    Defendants sent to doctors promotional literature regarding "off-label" uses of Neurontin that were false and misleading and were sent in violation of applicable state and federal law;

(f)    Defendants distributed false and misleading information to doctors for the purpose of causing those doctors to use Neurontin for "off-label" uses and to deceive members of the public into believing that such use was appropriate;

(g)    Defendants' use of grants or other forms of compensation used to influence doctors to author "studies" that were not scientifically supported but which showed favorable results using Neurontin, was an unfair and fraudulent practice;

(h)    The payment to doctors, honorariums, consultant fees and the like, all for the purpose of encouraging the "off-label" use of Neurontin, was an unfair practice.

(i)    Defendants embarked on a marketing scheme that was in violation of state and federal laws with the purpose to deceive the public;

(j)    Defendants falsely and deceptively marketed Neurontin for uses for which no valid scientific data existed; and

(k)    Defendants' conduct violated FDAMA, 21 U.S.A. § 360aaa *et seq.* because Defendants did not seek FDA approval for the majority of "off-label" uses Neurontin was promoted for; the materials were not provided to the FDA prior to their use; the materials were not peer-reviewed or qualified reference publications, and Defendants did not provide the FDA with all reports they possess on safety and efficacy.

207.    The promotional activities described above violate laws prohibiting promotion of off-label uses, and in particular the studies distributed by defendants' sales employees were false

and/or misleading and failed to disclose that the studies were not independently produced. And, the above conduct violates anti-kickback regulations, 42 U.S.C. § 1320A-7 and 42 C.F.R. § 1001.

208.    Defendants have violated the consumer protection statutes of any and all of the fifty states as follows:

(a)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, et seq.;

(b)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. Code § 45.50.471, et seq.;

(c)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, et seq.;

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, et seq.;

(e)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, et seq.;

(f)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of Colo. Rev. Stat. § 6-1-105, et seq.;

(g)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, et seq.;

(h)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, et seq.;

(i)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. Code § 28-3901, et seq.;

(j)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, et seq.;

(k)    Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of Ga. Stat. § 10-1-392, *et seq.*;

(l)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

(m)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

(n)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS § 505/1, *et seq.*;

(o)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

(p)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code § 714.1b, *et seq.*;

(q)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

(r)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

(s)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

(t)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

(u)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

(v)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

(w)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

(x)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

(y)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

(z)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Mo. Rev. Stat. § 407.010, *et seq.*;

(aa)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

(bb)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

(cc)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

(dd)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

(ee)    Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

(ff)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1 *et seq.*;

(gg)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

(hh)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

(ii)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

(jj)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*;

(kk)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

(ll)    Defendants have engaged in unfair competition or unfair or deceptive acts

-68-

or practices in violation of Or. Rev. Stat. § 646.605, et seq.;

(mm)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, et seq.;

(nn)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, et seq.;

(oo)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, et seq.;

(pp)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1; et seq.;

(qq)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, et seq.;

(rr)    Defendants have engaged in unfair competition or unfair or deceptive or practices in violation of Tex. Bus. & Com. Code § 17.41, et seq.;

(ss)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, et seq.;

(tt)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9, § 2451, et seq.;

(uu)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, et seq.;

(vv)    Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wash. Rev. Code. § 19.86.010, et seq.;

(ww)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101 , et seq.;

(xx)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, et seq.; and

(yy)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, et seq.

209.   As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the Class have suffered actual economic damage by paying for Neurontin to treat conditions for which the drug is not FDA approved and is not medically necessary.

**SEVENTH CAUSE OF ACTION**
**Restitution/Disgorgement for Unjust Enrichment**

210.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

211.   As the intended and expected result of their conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from the payment of claims for Neurontin by Plaintiff and members of the Class to treat conditions for which the drug is not FDA-approved.

212.   Defendants have voluntarily accepted and retained these profits and benefits, derived from Plaintiff and the Class, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiff and the Class paid for Neurontin when they otherwise would not have but for Defendants' improper actions.

213.   By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of Plaintiff and the Class, who are entitled in equity to seek the disgorgement and restitution of Defendants' wrongful profits, revenues and benefits, to the extent, and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**VI.   DEMAND FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants in each claim for relief, jointly and severally, as follows:

(a)   On Plaintiff's RICO claims, three times the damages Plaintiff and the Class have sustained as a result of Defendants' conduct, such amount to be determined at trial, plus Plaintiff's costs in this suit, including reasonable attorneys' fees;

-70-

(b)    On Plaintiff's claims for Common Law Fraud, damages in the amount of Plaintiff's and the Class's payment for Neurontin to treat conditions for which the drug was not approved by the FDA for which it was not medically necessary, such amounts to be determined at trial, plus Plaintiff's costs in this suit, including attorneys' fees;

(c)    On Plaintiff's claims under the Consumer Protection Statutes of all fifty states, all measures of damages allowable under such statutes, such amount to be determined at trial, plus Plaintiff's costs in this suit, including reasonable attorneys' fees;

(d)    On Plaintiff's claims for Unjust Enrichment, recovery in the amount of Plaintiff's and the Class's payment for Neurontin to treat conditions for which the drug was not approved by the FDA and for which it was not medically necessary, such amounts to be determined at trial, plus Plaintiff's costs in this suit, including attorneys' fees;

(e)    Awarding Plaintiff and the Class other appropriate equitable relief;

(f)    Awarding Plaintiff its costs and expenses in this litigation, including reasonable attorneys' fees and expert fees; and

(g)    Awarding Plaintiff and the Class such other and further relief as may be just and proper under the circumstances.

## VII.    DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: May 14, 2004

Respectfully submitted,

Thomas M. Sobol (BBO# 471770)
HAGENS BERMAN, LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Tel: (617) 482-3700
Fax: (617) 482-3003

-71-



OF COUNSEL:

Steve W. Berman
HAGENS BERMAN LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594


Garve Ivey, Esq.
IVEY & RAGSDALE
315 19th Street
Post Office Box 1349
Jasper, AL 35502
Tel: (205) 221-4644
Fax: (205) 252-8484

John W. Lowe
LOWE, MOBLEY & LOWE
1210 21st St.
P.O. Box 576
Haleyville, AL 35565
Tel: (205) 486-5296
Fax: (205) 486-4531