UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
                                                               :   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                                   :
         SALES PRACTICES AND                                   :   Master File No. 04-10981
         PRODUCTS LIABILITY LITIGATION                         :
                                                               :   Judge Patti B. Saris
---------------------------------------------------------------x
                                                               :   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                      :
                                                               :
         PRODUCTS LIABILITY ACTIONS                            :
                                                               :
---------------------------------------------------------------x

## PRODUCTS LIABILITY PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RANDOM SELECTION OF TRACK ONE PLAINTIFFS' CASES

Products Liability Plaintiffs, (hereinafter referred to as PL Plaintiffs), hereby oppose Defendants' motion for the Court to randomly select, or direct the parties to randomly select, those personal injury, products liability plaintiffs denoted as "Track One" plaintiffs in the Court's December 20, 2006 Case Management Order No. 7. It is submitted that applying a random selection process for Track One plaintiffs will not promote the underlying purpose of trying these cases in an MDL forum, namely, advancing the litigation to an efficient resolution by way of either trial, settlement or dismissal. PL Plaintiffs propose that the most effective manner to advance this litigation would be for PL Plaintiffs to select ten (10) Track One cases for discovery from which two (2) cases can be selected for trial. Alternatively, PL Plaintiffs and Defendants may each select five (5) PL Plaintiffs as Track One plaintiffs, and proceed with discovery, and ultimately trial of two (2) cases selected by Plaintiffs.

## PRELIMINARY STATEMENT

The goal of this Court and the parties in this litigation should be to efficiently bring the litigation to a resolution, either by trial, settlement or dismissal. It is in the best interests of the parties and the Court to try cases that are without collateral issues. Common sense dictates that a Track One case selected for trial should be one where a jury can properly focus upon the core issue: whether ingestion of Neurontin was a proximate cause of the injury claimed by Plaintiff. The parties are in the best position to select the most representative cases for this purpose. PL Plaintiffs therefore respectfully request that this Court order PL Plaintiffs to select ten (10) Track One cases for discovery from which two (2) cases can be selected for trial. Alternatively, PL Plaintiffs and Defendants may each select five (5) PL Plaintiffs as Track One plaintiffs, and proceed with discovery, and ultimately trial of two (2) cases selected by Plaintiffs.

## ARGUMENT

**A.    A Random Selection Process Is Not "Well Settled", and Various MDL's and State Consolidations Have Utilized a Selection Process Whereby Plaintiffs or the Parties Select a Number of Test Cases for Trial**

As a matter of general principle, PL Plaintiffs should be entitled to select which cases will first proceed to trial. It is, after all, the PL Plaintiffs who brought these cases at the outset, the Plaintiffs who have the burden of proof, and Plaintiffs' counsel who are most familiar with those cases having the least collateral issues.

Recently, in *In re: Vioxx Litigation*, the Superior Court of New Jersey, Atlantic County, ordered that the plaintiffs submit a list of cases they propose to try, followed by a date by which the defendants could submit objections to those cases proposed by the plaintiffs. (*See* Order, dated October 11, 2006, annexed hereto as Exhibit A). Here, at the very least, PL Plaintiffs can

2

similarly submit a list of Track One cases they propose to try, followed by a date for Defendants to submit objections.

If the Court does not decide that PL Plaintiffs may select the ten (10) Track One cases, then the Court should order the parties to each select five (5) Track One cases from which Plaintiffs may select two (2) cases for trial.

Contrary to Defendants' assertions, random selection of test or bellwether cases is not "well settled". As noted by the Court in *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988):

> Haunted by the specter of protracted trials and in an effort to better serve judicial economy, courts are increasingly experimenting with utilizing representative plaintiffs for determining a defendant's liability to the class as a whole in mass, complex, toxic tort cases. All of this experimentation occurs amid questions about the effectiveness of the representative plaintiffs' approach in accomplishing the goal of setting benchmarks for settlement. However, as this debate continues, courts increasingly are required to establish a criterion for selecting such representative plaintiffs. There are essentially four basic approaches to selecting representative plaintiffs: plaintiffs' counsel selects all representatives; each side selects an equal number of representatives; plaintiffs' counsel or both sides nominate plaintiffs and the judge selects the representatives; or representatives are randomly selected from established categories of plaintiffs.

*Id.* at 1196 n6.

In fact, there are a number of consolidated complex litigations in which the parties have selected the cases to be tried as test or bellwether cases:

> 1. In *In re: PPA (Phenylpropanolamine)*, the Superior Court of New Jersey, Middlesex County, ordered that all pending and future litigation statewide involving the drug phenylpropanolamine (PPA) were to be handled on a coordinated basis. The drug PPA had been on the market for more than 50 years. Its primary uses were as a decongestant in both over-the-counter and prescription cold medications, and as an appetite suppressant. PPA was voluntarily removed by drug manufacturers from all over-the-counter products after the FDA expressed concerns over its safety. Pursuant to Case Management Orders Nos. 6 & 7, the plaintiffs and defendants were each ordered to select twenty (20) cases for trial as test cases. (*See* CMO No. 6 and CMO No. 7, annexed hereto as Exhibits B and C respectively.)

3

2. In *In re: Guidant Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, pending in the United States District Court in the District of Minnesota, the litigation focuses on claims of injuries caused by implantable cardiac defibrillators that were recalled by the manufacturer, Guidant Corp. due to short-circuiting and other malfunctions. Under Pretrial Order No. 9, Bellwether Case Selection Plan, the plaintiffs and defendants were each allowed to select twenty (20) potential bellwether cases. (*See* PTO No. 9, annexed hereto as Exhibit D.)

3. In *In re Hormone Therapy ("HT") Litig.*, the Court of Common Pleas, Philadelphia County, established a coordinated program for cases filed in Pennsylvania by plaintiffs alleging injuries caused by the ingestion of Hormone Therapy Drugs. Under Case Management Order No.3, Trial Scheduling Expert Discovery and Pretrial Proceedings, the plaintiffs and defendants were each ordered to identify twelve (12) proposed tests cases from the inventory of cases in which breast cancer was the claimed injury and proceed with full-blown discovery in the cases selected. At the conclusion of the discovery process, out of the initial twenty-four (24) cases selected by the parties, eight (8) trial cases were to be selected. (*See* CMO No. 3, annexed hereto as Exhibit E.)

4. In the Three Mile Island litigation consolidated in the United States District Court for the Middle District of Pennsylvania, twelve (12) test cases were initially scheduled for trial, with the plaintiffs and defendants each selecting six of the cases. *See In re: TMI Litig. Consolidated Proceedings*, 927 F. Supp. 834, 837 n5 (M.D. Pa. 1996); *In Re: TMI Litig.*, 193 F.3d 613, 627 (3d Cir. 1999).

PL Plaintiffs submit that if the Court does not find that Plaintiffs should select the ten (10) Track One cases, then, applying the selection processes in the abovementioned cases to the present case, the Court should direct that the parties each select five (5) cases for discovery from which Plaintiffs may select two (2) cases for trial as Track One cases.

**B.    Defendants Have Failed to Demonstrate That a Random Selection of Neurontin Suicide Related Cases Filed by Finkelstein & Partners Will Assist in Resolving Motions for Summary Judgment**

Defendants have failed to describe or discuss with PL Plaintiffs what different types of cases, or subcategories, if any, are included within the cases that have been filed in the MDL and may be used as categories in order to obtain a selection of representative cases for trial as test cases. In other words, there has been little if any discussion between the parties as to what, if

4

any "issues [are] similar to most cases that will assist in resolution of motions for summary judgment." *See* Mem. in Supp. of Defs.' Motion, p. 4.

Furthermore, Defendants' suggestion that ten (10) Track One plaintiffs be randomly selected out of the approximately eighty (80) cases where the PL Plaintiffs are represented by Finkelstein & Partners may easily result in missing the PL Plaintiffs' best and worst cases and categories of cases being over- or under-represented.

Moreover, the situation in this Neurontin MDL is easily distinguishable from that in *In re Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir. 1997). In *Chevron*, approximately 3,000 plaintiffs claimed damages for personal injuries, wrongful death, and property contamination allegedly caused by Chevron's acts and omissions, as opposed to the approximately 140 pending product liability actions in this Neurontin MDL, including the approximately eighty (80) cases where the PL Plaintiffs are represented by Finkelstein & Partners.

The trial court in *Chevron* intended to utilize a "unitary trial" on the issues of "general liability or causation," involving thirty (30) plaintiffs, fifteen (15) to be chosen by the plaintiffs and fifteen (15) to be chosen by Chevron, and "extrapolate" the results beyond these thirty (30) plaintiffs to the remaining 3,000 plaintiffs. In contrast, in the instant Neurontin MDL, pursuant to the parties' Stipulation (ECF Doc. 576) and the Court's Discovery Order No. 7 (Doc. 582): (a) ten (10) Track One plaintiffs alleging suicide-related injuries are to be identified, full-blown discovery may be conducted in these cases, and individual trials may be conducted in each of these ten (10) cases; and (b) two (2) cases are to be identified from the ten (10) previously designated Track One plaintiffs, and motions for summary judgment on general causation and preemption, *Daubert* motions, and other dispositive motions pertaining to the two (2) designated

5

Track One cases will be briefed and heard by the Court. Thus, the random selection procedure in *Chevron* is plainly inappropriate for selecting the Track One plaintiffs in the Neurontin MDL.

## CONCLUSION

PL Plaintiffs therefore respectfully request that this Court issue an order that PL Plaintiffs select ten (10) Track One cases from which two (2) cases can be selected for trial; or, alternatively, that this Court order that the parties each select five (5) Track One cases as to which the parties may proceed with discovery from which two (2) cases can be selected for trial by Plaintiffs.

Dated: January 9, 2007

Respectfully submitted,

*Members of Products Liability Plaintiffs' Steering Committee*

By:   /s/ **Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY 12550

By:   /s/ **Jack W. London**
Jack W. London, Esquire
Law Offices of Jack W. London
  & Associates
106 E. 6th Street, Suite 700
Austin, TX 78701

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on January 9, 2007.

/s/ **Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire