UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1629<br>Master File No.: 1:04-cv-10981-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL, 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated,<br><br>v.<br><br>PFIZER INC. and WARNER-LAMBERT COMPANY. | |

**CLASS PLAINTIFFS' RESPONSE TO DEFENDANTS'
SUBMISSION PURSUANT TO DISCOVERY ORDER NO. 7**

Pursuant to Discovery Order No. 7 dated December 20, 2006 (Document No. 582) ("Discovery Order No. 7"), Class Plaintiffs hereby respectfully submit this response to Defendants' Submission Pursuant to Discovery Order No. 7 ("Defendants' Proposal") (Document No. 593). As set for the below, Class Plaintiffs have three main objections and concerns relating to Defendants' Proposal. First, Defendants have steadfastly refused to provide any preliminary information that would assist the Class Plaintiffs in determining whether Defendants' discovery proposals are reasonable. Second, Class Plaintiffs believe that it is not

sufficient for Pfizer to restrict its searches merely to the documents that it will be producing anyway, since such searches will not generate new information that Plaintiffs do not already or will not possess when the scheduled document productions are completed. Finally, even once the pool of documents to be searched is resolved, Class Plaintiffs do not find Pfizer's search methodology—i.e. the search terms to be used—to be adequate

## LACK OF AN ORGANIZATIONAL CHART AND OTHER READILY AVAILABLE SOURCES OF INFORMATION

As a preliminary matter, Class Plaintiffs continue to find the Defendants' refusal to produce an organizational chart, a list of employees and their titles, and similar documents to be a hindrance to the conduct of speedy and efficient discovery. Many of the disagreements between the two sides could have been narrowed or even eliminated had Pfizer simply provided the Class Plaintiffs with an organizational chart. Such a modicum of information would have allowed the Plaintiffs to take a more informed seat at the discovery negotiations table.

Instead, Pfizer continues to keep the Plaintiffs in the dark about which departments, teams and employees—aside from the ones that they have already decided to identify. The lack of organization information means that Plaintiffs are limited in their ability to propose reasonable search techniques that would yield relevant information. Worse, it leaves the Class Plaintiffs with very little trustworthy information upon which they can reasonably rely in trying to reach an agreement with Pfizer. Counsel for the Class Plaintiffs do not believe that they can serve their clients by entering into agreements relieving Pfizer of its burden to produce relevant information when the reasonableness of the agreements cannot be verified in anyway through neutral information. Accordingly, at a minimum, Class Plaintiffs request that Pfizer produce organizational charts for the years 2000 to 2004.

## DOCUMENTS TO BE SEARCHED

On the issue of what documents will be searched, there is a fundamental difference between the parties: with limited exceptions, Pfizer proposes *only* to search that subset of documents that, at the end of the day, it would have produced to Plaintiffs *anyway*; Plaintiffs, on the other hand, believe that Pfizer's search should go beyond a mere search of documents Plaintiffs will have access to and should extend into *other* areas where relevant documents are likely be found.

With respect to marketing events and journal articles, Pfizer has proposed the following: (a) for the Warner-Lambert era, Pfizer will search "documents from the files of Warner-Lambert employees likely to have relevant information regarding events and articles. These employees include those with responsibility for both national and regional marketing of Neurontin as well as medical liaisons and employees within the medical and clinical development departments with responsibility for Neurontin"; and (b) for the Pfizer era, Pfizer will search "documents from marketing, medical and clinical development personnel." (Defendants' Proposal at 1 – 2). With respect to marketing strategies, Pfizer's proposal is even more circumscribed. Pfizer's proposal only agrees to search for marketing strategies as follows: (c) for the Warner-Lambert era, Pfizer will search "documents from the files of Warner-Lambert employees with responsibility for marketing Neurontin at headquarters and at each of the regional offices of the company, known as Customer Business Units"; and (d) for the Warner-Lambert era, Pfizer will search "[documents] within the files of the national marketing team." (Defendants' Proposal at 2).

Pfizer's offer, which is illusory at best, is woefully inadequate for two reasons. First, with respect to events and articles, the documents referenced in subparagraphs (a) – (d) above are all documents that Pfizer has indicated it would produce to the Class Plaintiffs anyway. Thus,

the universe of responsive information is not being increased.  Rather, Pfizer is merely offering to run computerized searches of documents that Class Plaintiffs will have access to, if not now, then in a matter of months.  The intent not to produce new information is revealed by Pfizer's promise to "identify by Bates range" documents that are deemed "responsive."  If Plaintiffs did not already possess the information, a Bates range would be useless.

Second, with respect to marketing strategies, Pfizer's proposal to search only for documents from the files of the "national marketing team," flies in the face of Discovery Order No. 7, which stated:

> Interrogatories 19 and 21 concern the implementation on the regional or local level of the national strategies for each of the respective time periods. Searching within and answering from the national Neurontin marketing team files *does not appear sufficient* for a response to these two interrogatories.

(Discovery Order No. 7 at 8) (emphasis added).  Again, the files of the national marketing team are the documents that Pfizer has already indicated it would be producing.

If Pfizer's position could be elucidated in a simple, catchy slogan, it would be something along the lines of: *Read my lips, no new documents*.  The following diagram demonstrates why the production additional documents will be necessary:



*Fig. 1.*

Even under the most favorable interpretation of the location of the documents that Pfizer has proposed to search (assume the entirety of sections A, B and C above), there are still areas that will not be searched. Although Pfizer has refused to identify all the different departments, teams and committees that had involvement with the creation and implementation of the marketing strategies and marketing events, Class Plaintiffs are aware of information suggesting there are other such departments, teams, and committees, i.e. areas outside of sections A, B, and C, that possess relevant information.

For example, Class Plaintiffs are aware that Pfizer utilized a team of Regional Medical Research Specialists (RMRS), who functioned in essentially the same manner as medical liaisons. According to Pfizer, RMRS personnel are not part of the national marketing team.

Class Plaintiffs are also aware that Pfizer utilized a large regional sales force to implement its marketing strategies. This sales force routinely invited physicians to marketing

events and in many cases attended the events themselves. According to Pfizer, sales force personnel are not part of the national marketing team.

Class Plaintiffs are also aware of other departments or committees who supervised the national marketing team, reviewed and authorized its operating plans, reviewed and authorized its marketing strategies, set its budgets to execute the marketing strategies, and performed finance and accounting work relating to the marketing strategies, which includes the funding of events and journal articles. With the exception of the Finance Department, Pfizer has yet to identify these departments and committees. However, according to Pfizer, all such departments and committees lay outside of the national marketing team.

Finally, Class Plaintiffs have attempted to identify discrete teams and committees within Pfizer that may have had some intersection with the marketing team, or whose team members may themselves have also been members of the national marketing team, but who nevertheless performed tasks Pfizer deems to be separate from marketing. These teams, including the Publication Sub-Committee, the Grants Review Committee, the Product Maintenance and Pharmacovigilence (PMP) Team, also possess relevant information.

In the required meet-and-confer session, Plaintiffs proposed that Defendants search the above areas for Neurontin marketing strategies, events and articles. On each point, Defendants refused.[1] For example, because Defendants claim that a search of the files of all Neurontin sales representatives would be too burdensome, Class Plaintiffs proposed that Defendants search the files of only the top 50 sales representatives. This proposal was rejected. Class Plaintiffs also proposed that Defendants search the files of RMRS and the Grants Committee. Such proposals

---

[1] Subsequent to the filing of Defendants' Proposal, Defendants have indicated that there may be some room for compromise with respect to one or more of the areas proposed by Class Plaintiffs. To the extent that any agreement or compromise is reached prior to the hearing, the parties will inform the Court of the agreement or compromise and agree that the issue is thus moot.

were also rejected. Despite the fact that Pfizer touts one of the most advanced electronic discovery systems, Pfizer has also refused to consider conducting global computerized searches of all Pfizer documents and using the results of those searches to determine what other areas should be searched.[2]

By only agreeing to search documents that would have been produced anyway, Pfizer's approach puts the proverbial cart before the horse. If Pfizer's search does not go beyond the documents that it is producing anyway (i.e. select documents from pools A, B and C above), then the results of the search will not present the Plaintiffs with any new information. This Court has already found, however, that "it does not appear to the Court that the files of the national Neurontin marketing team would likely have all of the responsive information possessed by the defendants." (Discovery Order No. 7 at 7) (emphasis added). Inclusion of documents already produced in the MDL and Young matters does little to repair the defect. Thus, Plaintiffs had hoped that Pfizer would present the Court with a proposal that would expand the universe of documents to be searched into other discrete areas, including the ones proposed by the Plaintiffs. Pfizer's proposal does not accomplish the goal. It merely treats the universe of documents that it is producing as the entire universe of information, and gives Plaintiffs little comfort that there are no other sources of relevant information. At this stage of the litigation, given that Plaintiffs already know that responsive information in other areas, such as RMRS or the Grants Committee, the approach advocated by Pfizer is not calculated to provide the Plaintiffs with the responsive information.

---

[2] Under this method, Pfizer would conduct the same searches that it will have to conduct anyway to comply with Discovery Order No. 7. However, rather than searching only the subset of production documents, it will search the entire universe of searchable documents and use the results to determine the existence of locations outside of marketing where relevant documents can be found. Thus, if the search "hits" include numerous documents from a particular custodian in the accounting department, Pfizer would review that custodian's files for responsive information.

HOW WILL THE SEARCHES BE CONDUCTED?

Finally, Plaintiffs also disagree with the search method utilized by the Defendants. Defendants make it clear that their search for documents relating to events and articles will be limited to "[running] search terms for each of the off-label indications that remains in this case." (Defendants' Proposal at 1). There are two problems with this type of search. First, as the Third Amended Complaint demonstrates, very few events—if any—disclose their true nature in their title. It is doubtful that Defendants would have evaded FDA scrutiny for as long as they did by giving titles to events such as *Why Neurontin Is Effective for Bipolar Despite a Complete Lack of Evidence*. Instead, events are given bland and innocuous titles, such as "1998 CME Psychiatry Dinner Meeting and Teleconference Series: Dinner Meeting at Maison Robert," "Merritt-Putnam Speakers Bureau Current Perspectives in the Understanding of Neurobehavioral Disorders at the Four Seasons Regent Beverly Wilshire," or "Merritt-Putnam Speakers Training Advanced Perspectives in the Management of Neurological and Mood Disorders at the Enchantment Resort." (Third Amended Class Action Complaint, Document No. 580 at ¶ 170). It is unclear whether Defendants would retrieve the above events or similar events through the proposed search methods.

Second, even if it could be assumed that Defendants were going to be searching for events addressing relevant, off-label Neurontin uses with the same level of vigor and intellectual curiosity that Plaintiffs would have, it is clear that relevant information would be missed. The indications for Neurontin where false representations were made are merely one aspect of the many factual issues in this case. Other issues, such as the extent to which Pfizer controlled the content of physicians speakers, or the extent to which third party vendors and Pfizer engaged in

RICO violations with respect to the marketing of Neurontin, would not necessarily be located entirely within the universe of events dealing with actionable off-label indications.

The same could be true of journal articles. Suppose that Pfizer had reached an agreement whereby it agreed to pay Dr. Jones $10,000 a year if he loaned his name to Pfizer-drafted journal articles. Suppose further that Dr. Jones in fact penned two articles, the first relating to postherpetic neuralgia (not an actionable indication), and the second relating to migraine (an actionable indication), but that only the documents relating to the first article demonstrate this financial connection. Under the search methodology Pfizer has proposed, it is doubtful that the critical documents relating to the first article would be produced, thus blocking Plaintiffs to a very important piece of evidence, i.e. that Pfizer essentially controlled the statements of Dr. Jones.

It is unclear what search terms will be utilized with respect to marketing strategies. Nevertheless, Class Plaintiffs continue to believe that *all* marketing strategies should be divulged, not just the objectionable or illegal ones, so that a complete record of how Neurontin was marketed can be created. Certainly, Pfizer will claim that Neurontin's popularity was due to lawful marketing practices. To the extent that the use of lawful marketing practices would be a defense in the case, Class Plaintiffs should be entitled to discovery of such a defense. Accordingly, Class Plaintiffs request Pfizer be ordered to search for all Neurontin marketing strategies. Given the fact there are usually no more than 4 or 5 per year, such an order would not be burdensome.

Respectfully Submitted,

Dated: January 9, 2007

By: /s/ Thomas Greene
Thomas Greene Esquire
Greene & Hoffman
125 Summer Street
Boston, MA 02110

By: /s/ Barry Himmelstein
Barry Himmelstein, Esquire
Lieff Cabraser Heimann &
Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By: /s/ Don Barrett
Don Barrett, Esquire
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By: /s/ Daniel Becnel
Daniel Becnel, Jr., Esquire
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

By: /s/ James Dugan
James Dugan, Esquire
Dugan & Browne
650 Poydras St., Suite 2150
New Orleans, LA 70130

By: /s/ Thomas M. Sobol
Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142

*Members of the Class Plaintiffs'
SteeringCommittee*