UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------- x
:
In re:  NEURONTIN MARKETING, SALES PRACTICES, :
AND PRODUCTS LIABILITY LITIGATION :
: MDL Docket No. 1629
------------------------------------------------------------- x
: Master File No. 04-10981
THIS DOCUMENT RELATES TO: :
: Judge Patti B. Saris
------------------------------------------------------------- x
: Magistrate Judge Leo T.
HARDEN MANUFACTURING CORPORATION; : Sorokin
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, :
dba BLUECROSS/BLUESHIELD OF LOUISIANA; :
INTERNATIONAL UNION OF OPERATING ENGINEERS, :
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and :
LORRAINE KOPA, on behalf of themselves and all others :
similarly situated, v. PFIZER INC. and WARNER-LAMBERT :
COMPANY. :
:
------------------------------------------------------------- x
:
THE GUARDIAN LIFE INSURANCE COMPANY OF :
AMERICA v. PFIZER INC. and :
:
AETNA, INC. v. PFIZER INC. :
:
------------------------------------------------------------- x

## REPLY MEMORANDUM IN SUPPORT OF SUBMISSION PURSUANT TO DISCOVERY ORDER NO. 7

Defendants submit the following reply memorandum in support of their Submission Pursuant to Discovery Order No. 7 (Docket 593, Jan. 4, 2007) and in response to Class Plaintiffs' Response to Defendants' Submission Pursuant to Discovery Order 7 ("Plaintiffs' Response" or "Resp.") (Docket 600, Jan. 9, 2007).

**Preliminary Statement**

Not only does Plaintiffs' Response fail to offer any reasonable alternative to defendants' proposed searches, it also raises a fundamental question of whether such searches are at all necessary.

The underlying dispute between the parties relating to Discovery Order No. 7 was whether defendants could respond to plaintiffs' interrogatories by referring to categories of documents, as defendants had done, or whether defendants should be required to identify documents by referring to specific Bates stamp numbers. Discovery Order 7, at 6. Defendants argued that the burden associated with identifying responsive information from specific documents would be as great for defendants as it would be for plaintiffs. See Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Defendants to Respond to Certain Interrogatories, at 9-10 (Docket 571, Dec. 6, 2006) ("Defendants' Opposition"). Plaintiffs responded that defendants are presumptively more familiar with their documents, that the parties' respective burdens are therefore not the same, and that defendants should be required to conduct any necessary review to provide the Bates ranges for documents containing information responsive to plaintiffs' interrogatories. See Plaintiffs' Reply Memorandum in Further Support of Their Motion to Compel Defendants to Respond to Certain Interrogatories, at 3-4 (Docket 573, Dec. 8, 2006).

Plaintiffs' Response reveals that their prior position was not well founded. Plaintiffs now acknowledge that they already have information responsive to their interrogatories that could be generated by searching documents that defendants have produced. Resp. at 2. According to plaintiffs, such searches will not increase "the universe of responsive information," Resp. at 4, and they "will not present the Plaintiffs with any new information." Resp. at 7. Moreover,

plaintiffs go so far as to suggest that defendants will not conduct any searches with "the same level of vigor and intellectual curiosity" with which plaintiffs would search. Resp. at 8.

Plaintiffs' Response confirms that defendants' should not be saddled with the burden of conducting searches of already produced documents for information responsive to plaintiffs' interrogatories, and that this Court should clarify defendants' obligations under Discovery Order No. 7. Specifically, this Court should not require defendants to search for and identify by Bates range specific documents they have produced that contain information responsive to plaintiffs' interrogatories. Instead, any supplementation of defendants' responses to the interrogatories should be limited to new information.

**"Marketing Strategies"** [1]

Plaintiffs misleadingly quote from Discovery Order No. 7 to argue that Defendants' proposed search for information responsive to Interrogatory 21 "flies in the face" of that order. Resp. at 4. The Court did suggest in Discovery Order No. 7 that searching within the files of the national marketing team for Neurontin might not yield information responsive to Interrogatories 19 and 21, which concern implementation of national marketing plans. Discovery Order 7, at 8; Resp. at 4. But Plaintiffs omit the very next line of that order, in which the Court explained its reasoning: "*At least during some periods of time*, regional offices engaged in marketing of Neurontin for off-label uses at issue in this litigation." Discovery Order 7, at 8 (emphasis

---

[1] Plaintiffs' threshold contention that defendants refuse to produce organizational charts, lists of employees and their titles, or similar documents is baseless. Defendants previously offered to take reasonable steps to identify, by February 28, 2007, formal committees (and their members) that met on a regular basis and that had responsibility over time for some aspect of marketing, publications, grants or regulatory decisions regarding Neurontin. See Defendants' Opposition, at 13-14. The Court accepted defendants' proposal in Discovery Order No. 7. See Discovery Order No. 7 at 7. Plaintiffs' Response ignores this fact. Moreover, defendants have already produced numerous organizational charts and employee lists and defendants will produce additional charts and lists as they continue to review and produce documents from additional custodians, including, for example, members of the national marketing team for Neurontin.

added). Defendants acknowledged in their opening submission that for the period January 1, 1994 through June 2000, Warner-Lambert had regional offices, known as Customer Business Units ("CBUs"), at which persons had responsibility for marketing Neurontin. For that time period, Defendants proposed to search documents from the files of Warner-Lambert employees with responsibility for marketing Neurontin at headquarters and at each of those CBUs. Plaintiffs apparently do not challenge the adequacy of the scope of documents that defendants' propose to search for that period.

For the period June 2000 through May 31, 2004, Pfizer marketed Neurontin. At Pfizer the marketing function was run from headquarters and, unlike Warner-Lambert, Pfizer did not have regional offices at which persons had responsibility for marketing Neurontin. For that time period, therefore, defendants proposed to search documents within the files of the national marketing team for Neurontin.

Defendants' maintain that these searches are sufficient to identify all information responsive to plaintiffs' interrogatories relating to "marketing strategies." Prior to plaintiffs filing their response, however, defendants offered to compromise with plaintiffs regarding the scope of documents to be searched for the period June 2000 through May 31, 2004. Defendants offered to search, in addition to the files of members of the national marketing team, the files of the Vice President of Sales for the sales team that had responsibility for selling Neurontin, as well as the files of five to ten regional sales managers who reported to him. Defendants believe that searching the files of these individuals is far more likely to result in useful information being provided than searching the files of individual sales representatives. Moreover, plaintiffs' proposal that defendants initially search the files of "the top 50 sales representatives" is unreasonable. In addition to the immense (and wasteful) cost such an undertaking would entail,

defendants could not collect, process, and review the files of another 50 individuals before the April 15, 2007 fact discovery cut-off in this case. Defendants nevertheless remain willing to expand their search to include documents from the Vice President of Sales for the relevant sales division and the regional sales managers who reported to him.

**"Neurontin Events and Articles"**

Defendants' initial submission proposed running searches across documents from the files of Warner-Lambert and Pfizer employees likely to have relevant information regarding events and articles. For the Warner-Lambert era, these employees include those with responsibility for both national and regional marketing of Neurontin as well as medical liaisons and employees within the medical and clinical development departments with responsibility for Neurontin. For the Pfizer era, these employees include marketing, medical, and clinical development personnel.

Plaintiffs object that defendants' proposal is too narrow both because it limits the search to those documents that defendants have produced and because plaintiffs believe that there are other groups that possess relevant information regarding Neurontin events. See Resp. at 3, 5-6. As an initial matter, what documents defendants will produce to plaintiffs is a separate issue from how to identify within those documents information responsive to plaintiffs' interrogatories. As plaintiffs are well-aware, the parties are actively engaged in discussions regarding the scope of defendants' document production and to the extent defendants produce additional documents to plaintiffs, defendants will search and review those documents for information responsive to plaintiffs' interrogatories.

Notwithstanding the fact that defendants believe the searches they described in their initial submission are likely to identify all responsive documents related to Neurontin "events

and articles," defendants sought a compromise with plaintiffs before plaintiffs filed their opposition to defendants' submission. If this Court requires defendants to provide specific Bates ranges for previously produced documents, defendants would be willing to extend their search beyond those employees and departments that they identified in their initial submission to include documents that defendants have produced from all custodians.

Plaintiffs identify several specific teams and committees that they believe defendants' initial submission excluded. They argue that the Neurontin Publication Sub-Committee ("PSC"), the Neurontin Grants Review Committee, and the Neurontin Product Maintenance and Pharmacovigilance ("PMP") Team "may have had some intersection" with the marketing team or may have had team members who were themselves also members of the national marketing team and who therefore possess relevant information. Resp. at 6. As an initial matter, to the extent that any member of these teams was also a member of the national marketing team, defendants are producing responsive documents from that individual's files. With respect to the PSC, defendants are producing responsive documents from the files of all U.S. marketing and medical personnel who were members of that committee. Defendants are also producing responsive documents, to the extent they exist, from the files of the medical personnel (and the U.S. marketing personnel, if any) who sat on the Neurontin Grants Review Committee. The PMP Team was a multidisciplinary group focused on ongoing pharmacovigilance and communication of safety information; it was not involved in marketing Neurontin.[2] Defendants, however, cannot collect, search, and review before the April 15, 2007 deadline files of the dozens of individuals who at some point during the relevant period sat on any committee "that

---

[2] Plaintiffs also suggest that Regional Medical Research Specialists (RMRSs) were involved in marketing Neurontin. Resp. at 5. Defendants are in the process of determining what role, if any, the RMRSs played with respect to Neurontin.

6

may have had some intersection with the marketing team." Resp. at 6. In any event, such an undertaking would be wasteful and duplicative and would divert resources from other important fact discovery.

**Search Methodology**

Though plaintiffs "disagree" with the search methods that defendants propose, they fail to offer any reasonable alternative in their response.[3] Instead, plaintiffs argue that defendants' proposal to search documents for each of the relevant off-label indications in this case, and to conduct a document by document review of the results, is inadequate. This Court has repeatedly indicated that the discovery is limited to the off-label indications that remain in this case. See, e.g., Discovery Order No. 3, at 1-2 (Docket 393, July 18, 2006); Discovery Order No. 7, at 7, 8. Defendants' search terms are reasonably calculated to identify documents relating to those indications that contain information responsive to plaintiffs' interrogatories.

Plaintiffs nevertheless complain that defendants' searches will not capture "bland and innocuous [event] titles" like those plaintiffs list in their response. In an effort to address plaintiffs' concerns, defendants reviewed plaintiffs' Complaint for additional search terms that are likely to capture documents that contain such titles (but do not otherwise refer to one of the relevant off-label indications). Defendants are willing to amend their proposal to expand their search terms beyond the relevant indications to include the following terms: neurological;

---

[3] Plaintiffs claim that defendants have "refused to consider conducting global computerized searches of all Pfizer documents and using the results of those searches to determine what other areas should be searched." Resp. at 7 & n.2. Defendants cannot consider that proposal because it rests on the far-fetched assumption that "all Pfizer documents" reside somewhere in a form that is susceptible to "global computerized searches."

Even during the parties' meet and confer sessions, plaintiffs failed to articulate any reasonable approach to searching for responsive information. Instead, they suggested only that Defendants begin by searching documents for the titles of events described in plaintiffs' Complaint. Plaintiffs refused, however, to provide any assurance that they would not then demand that Defendants conduct additional searches. Indeed, they indicated that such searches would in fact be only a method of gathering information to use in later searches.

7

psychiatry; mood disorders; neurobehavioral; neurology; rheumatology; neuroscience; anesthesiology; anesthesiologists; and neuropsycopharmacology. For Neurontin "events," defendants will search for documents that contain a reference to one of the relevant off-label indications or one of these additional terms within twenty words of at least one of the following terms: event; meeting; advisory board; speakers bureau; congress; or symposium.

With respect to articles, plaintiffs' only challenge to the sufficiency of defendants' search terms is that they might not yield documents showing payments to article authors, "thus blocking Plaintiffs to a very important piece of evidence, i.e. that Pfizer essentially controlled the [doctor's] statements." Response at 9. Plaintiffs ignore the fact that the Court separately ordered that "as to authors paid to write at least one article regarding the off-label uses at issue in this litigation, defendants shall produce all the payments to such a person." Discovery Order 7, at 4 (Docket No. 582). Thus, even if defendants' search did not capture the type of payment information plaintiffs describe, plaintiffs would not be "blocked" from any evidence—they would simply be receiving it in response to a different request.

Dated: January 12, 2007

                    DAVIS POLK & WARDWELL

                    By:   /s/ James P. Rouhandeh
                           James P. Rouhandeh

                    450 Lexington Avenue
                    New York, New York 10017
                    (212) 450-4000

                        - and -

                    HARE & CHAFFIN

                    By:   /s/ David B. Chaffin
                           David B. Chaffin

                    160 Federal Street
                    Boston, Massachusetts 02110
                    (617) 330-5000

                    *Attorneys for Defendants Pfizer Inc. and*
                    *Warner-Lambert Company*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 12, 2007.

                                        /s/David B. Chaffin