UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------- x
                                   :
In re: NEURONTIN MARKETING, SALES  :
PRACTICES AND PRODUCTS             :
LIABILITY LITIGATION               :
                                   : MDL Docket No. 1629
THIS DOCUMENT RELATES TO:          : Master File No. 04-10981
                                   : Judge Patti B. Saris
ALL SALES AND MARKETING            : Mag. Judge Leo T. Sorokin
ACTIONS                            :
                                   :
Docket No. 05-10535-PBS            :
                                   :
---------------------------------- x

Non-parties Cline Davis & Mann, Inc., Sudler & Hennessy, LLC, CommonHealth, Fallon Medica, Adelphi, Inc., The Impact Group, and Current Medical Directions (the "Non-Parties") submit this brief in support of their opposition to plaintiffs' motion to compel compliance with third-party subpoenas *duces tecum* served by plaintiffs on each of the Non-Parties ("the Subpoenas").

**PRELIMINARY STATEMENT**

As a threshold matter, because none of the Subpoenas issued from the District of Massachusetts, plaintiffs' motion brought under the caption of this MDL proceeding is improper. Indeed, Rule 45 of the Federal Rules of Civil Procedure is unambiguous that only the issuing district can hear motions to compel and issue compulsion orders against non-parties. Accordingly, even assuming—contrary to the plain language of the MDL statute—that this Court has the power to act as the district court from which each of the documents-only

Subpoenas issued (the "Issuing Districts"), that just means that plaintiffs have the ability to bring an enforcement action in each of the Issuing Districts which this Court may then decide. In other words, plaintiffs cannot create—and have not created via their motion—personal jurisdiction over the Non-Parties in Massachusetts by bringing their motion under the caption of the MDL proceeding. Accordingly, this Court currently is without jurisdiction to decide plaintiffs' motion.

But assuming *arguendo* that there is jurisdiction, plaintiffs' motion nevertheless must be denied. As an initial matter—and despite plaintiffs' suggestion to the contrary—the Non-Parties are not seeking to avoid production of documents responsive to the Subpoenas. Rather, the Non-Parties are seeking simply to avoid producing documents spanning a time period beyond that imposed by this Court's discovery orders and—consistent with their third-party status—to avoid incurring unnecessary burdens and expenses. Specifically, by order dated July 18, 2006 (objections to which were denied by order dated September 11, 2006), this Court has imposed a May 31, 2001 discovery cut-off, but in violation of this order plaintiffs have issued subpoenas seeking production of documents from 1994 through 2004. Seeking such a production of documents dated through 2004 violates this Court's order. Moreover—and crucially—the Non-Parties seek to avoid the increased burden and expense in responding to the Subpoenas that would result if they were each forced to make the piecemeal production of documents for different time periods (*i.e.*, separate production of pre- and post-

2001 documents) that plaintiffs have suggested. As the Non-Parties have repeatedly explained to plaintiffs, a full production of responsive materials will be made after this Court has fully resolved the scope of discovery—something which will likely occur soon given the pending motion for leave to file third amended complaints. Curiously, plaintiffs' move only now—almost a year and a half after the first three Subpoenas were issued—even though they've understood the Non-Parties position from the beginning and have, by their inaction, effectively agreed that that making piecemeal productions for different time periods would impose unnecessary burden and expense on the Non-Parties. Ironically, and contrary to plaintiffs' current assertions, it is their own behavior in moving for leave to file third amended complaints that has caused the current delay, since—as plaintiffs were told—the Non-Parties were prepared to produce documents through May 2001 following the Court's ruling setting that cut-off date, but determined not to do so when faced with the prospect a greatly increased burden and expense should they have to produce documents from a later time if plaintiffs' motion for leave was granted.

In sum, the Subpoenas, by seeking overbroad discovery in violation of this Court's orders, have forced the Non-Parties into a position where they must choose between producing documents beyond the time period ordered by this Court and incurring the unnecessary burden and expense of a second production.

Because the applicable rules and caselaw prohibit the imposition of such burdens on third parties, the Court should deny plaintiffs' motion to compel.[1]

## BACKGROUND

Between June 2005 and October 2006, each of the Non-Parties was served with a substantively identical subpoena issued out of federal district courts sitting in the United States District Court for the Southern District of New York and the United States District Court for the District of New Jersey. Each of the Subpoenas seeks—in essence—every document that each Non-Party ever possessed related to Neurontin from 1994 through the date of the requested document production. (Declaration of Jeff Gibson in Support of Plaintiffs' Motion to Compel dated November 29, 2006 ("Gibson Dec.") at Exhibits ("Exhs.") A-C, J-M (subpoenas to each of the Non-Parties)). Faced with these outrageously overbroad Subpoenas, each of the Non-Parties submitted a Rule 45 objection letter within fourteen (14) days of being served with each of the Subpoenas—a fact plaintiffs do not dispute. In those objection letters and in all subsequent correspondence with plaintiffs' counsel, the Non-Parties have made clear that—subject to the objections in each of the Rule 45 letters—they are willing to produce documents responsive to the Subpoenas, but only to the extent that such production is consistent with the scope of discovery in the Neurontin multidistrict litigation now pending in this Court. (Gibson Dec. at Exhs. D-F, H, N-Q, S; Declaration of Scott L. Walker dated

---

[1] For the reasons set forth herein, by submitting the instant opposition to plaintiffs' motion to compel, the Non-Parties do not consent or otherwise waive their objections to this Court's jurisdiction to hear and decide that motion.

December 4, 2006 ("Walker Dec.") at Exhs. A, C, E (letters to plaintiffs' counsel)). The Non-Parties' position is consistent with that taken by this Court during the August 1, 2005 oral argument on the parties' respective motions regarding the scope of discovery (the "Discovery Motions"). At that hearing, this Court indicated that any ruling regarding the Discovery Motions should guide the parties with respect to the scope of third-party discovery. In other words, the Court suggested that the scope of third-party discovery should be only as broad or narrow as the discovery required of the parties.

The Non-Parties have sought to act in accordance with this direction while simultaneously seeking to avoid incurring unnecessary burden and expense. Accordingly, after the Court issued its order cutting-off discovery at May 2001, we indicated in a September 12, 2006 letter to plaintiffs' counsel that responsive documents through May 2001 would be produced immediately if plaintiffs represented that they did not intend to seek to amend their complaints—per the allowance of Judge Saris—to add allegations of post 2001 misconduct. (*E.g.*, Gibson Dec. at Exh. S) But instead, plaintiffs decided to move for leave to file third amended complaints alleging post-2001 conduct, which motion defendants have opposed on the grounds that, *inter alia*, plaintiffs are trying to expand the scope of discovery beyond the May 2001 cut-off without any colorable basis for doing so. Given the parties' current dispute regarding the proper scope of discovery—in which plaintiffs' assert, and defendants deny, that documents through 2004 are relevant—the Non-Parties have simply elected to await a final

ruling on the scope of discovery before producing documents responsive to the Subpoenas.

The Non-Parties have taken this position consistently and in good faith. They reiterated it most recently during an exchange of letters with plaintiffs' counsel on November 29, 2006. (Walker Dec. at Exhs. B-E) In that exchange, plaintiffs laid bare their untenable position. Specifically, in the second of two November 29th letters, plaintiffs' counsel demanded that the Non-Parties either produce documents through 2004 or make a piecemeal production, *i.e.*, a production of documents through 2001 and a subsequent production, if necessary, of post-2001 documents. (Walker Dec. at Exh. D) Were the Non-Parties to comply with plaintiffs' demands they would not only produce documents beyond the time-period set in this Court's discovery order, but they would also be acting contrary to this Court's direction that the scope of non-party and party discovery be consistent. Additionally, piecemeal production would inevitably multiply the burden and expense on the Non-Parties. For example, a piecemeal production would force the Non-Parties to increase substantially the costs and attorneys' fees associated with responding to the Subpoenas by requiring them to engage in a labor-intensive effort to segregate pre- and post-May 2001 documents—a process which, despite plaintiffs' conclusory allegations, is not easy. Moreover, if this Court ultimately determines that documents through 2004 should be produced, then all of the efforts to segregate pre- and post-2001 documents would turn out to be a waste **_and_** the Non-Parties would be forced to incur additional time and

expense in segregating pre- and post-2004 documents. Thus, plaintiffs' insistence that the Non-Parties produce documents through 2004 appears to be motivated solely by a desire to obtain documents they are currently not entitled to under the May 2001 date cut-off, *i.e.* the plaintiffs are trying to get around a Court order by engaging in a fishing expedition for materials from the Non-Parties. And plaintiffs' alternative proposal for piecemeal production simply ignores plaintiffs' obligation under Rule 45 to minimize the burden and expense imposed on the Non-Parties by the Subpoenas.

## LEGAL DISCUSSION

### A. THIS COURT HAS NO JURISDICTION TO DECIDE THE MOTION IN ITS CURRENT FORM

Per the plain language of Rule 45, motions to compel related to a third-party subpoena must be made to—and any resulting compulsion orders must come from—the district court that issued that subpoena. *See* Fed. R. Civ. Pr. 45(c)(2)(B) (providing for motions to and compulsion orders from "the court by which the subpoena was issued."). Here, five of the Subpoenas issued from the United States District Court for the Southern District of New York and two issued from the United States District Court for the District of New Jersey (collectively, the "Issuing Districts"). (Gibson Dec. at Exhs. A-C, J-M). Plaintiffs' motion therefore should have properly been made via a special proceeding in the Issuing Districts rather than in the multidistrict litigation transferee court in Massachusetts. This result comports with basic concepts of fairness and due

process given that none of the Non-Parties has any connection to Massachusetts but each of them is connected to and/or located in their respective Issuing Districts. *C.f. In re Uranium Antitrust Litigation*, 503 F. Supp. 33, 35 (N.D. Ill. 1980) (finding that transferee court could "journey to another district to hear a discovery dispute in that district, but . . . . lack[ed] the authority to exercise the judicial power of a judge of the [issuing] district from our present forum, *i.e.* reach out, assert jurisdiction, and compel the non-party disputants to . . . appear initially in this [transferee] district"). In sum, plaintiffs' motion has been improperly brought in the District of Massachusetts rather than as special proceedings in the Issuing Districts.

Contrary to plaintiffs' assertion, there is nothing to alter this conclusion in the federal statute addressing the authority of transferee districts in multidistrict litigations. In fact, the pertinent part of that statute, 28 U.S.C. § 1407(b), provides only that "[t]he judge or judges to whom such actions are assigned . . . may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions." On its face—and as at least one district court has held—§ 1407(b) merely gives a transferee court in a multidistrict litigation the power to compel compliance with a non-party subpoena seeking deposition testimony, but it does not give that court the power to compel compliance with documents-only subpoenas such as those issued to the Non-Parties here. *See Visx, Inc. v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Cal. 2002).

But even those courts that have found that § 1407(b) gives transferee courts the power to compel compliance with documents-only subpoenas stressed in their decisions that transferee courts may only exercise such power while acting as a judge of the issuing district. *United States ex rel Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F. Supp. 2d 270, 276 (D.D.C. 2002); *In re Sunrise Securities Litigation*, 130 F.R.D. 560, 585-86 (E.D. Pa. 1989); *In re Uranium Antitrust Litigation*, 503 F. Supp. at 35. Those decisions further stress that the transferee court is "bound by the rules and law of the district in which [the transferee judge] is sitting." *United States ex rel Pogue*, 238 F. Supp at 276. And any appeal from a compulsion order by a transferee judge sitting as a judge of an issuing district goes to the federal circuit court for that issuing district. *United States ex rel Pogue v. Diabetes Treatment Centers of American, Inc.*, 444 F.3d 462, 469 (6th Cir. 2006). Hence, even if—contrary to its plain language—§ 1407(b) gives a transferee judge the power to compel non-parties to comply with documents-only subpoenas, that judge may only do so while sitting as a judge of the issuing district, subject to the rules and law of that district. Thus, in accordance with Rule 45 and the law and rules of the Issuing Districts, to obtain the relief they seek plaintiffs must initiate a special proceeding in those districts and apply for compulsion orders from the Non-Parties, which application this Court—as the transferee court—may hear and decide. Plaintiffs have utterly failed to follow this required course and instead seek, improperly, to "compel the non-party disputants to . . . appear initially in this [transferee] district" with which

they have no connection. *In re Uranium Antitrust Litigation*, 503 F. Supp. at 35. This Court therefore currently is without jurisdiction to decide plaintiffs' motion.

### B. EVEN IF THIS COURT HAD JURISDICTION, PLAINTIFFS ARE NOT ENTITLED TO A COMPULSION ORDER IN THIS CASE

But even if this Court did currently have jurisdiction to hear plaintiffs' application for a compulsion order, that application must be denied because such an order would impose unnecessary burden and expense on the Non-Parties. When issuing a subpoena, the party or attorney responsible must "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1); *accord Liberty Mut. Ins. Co. v. Diamante*, 194 F.R.D. 20, 23 (D. Mass. 2000). If a subpoena does subject a person to an undue burden, a court shall quash or modify the subpoena. Fed. R. Civ. P. 45(c)(3)(A)(iv). In determining whether a subpoena submits a party to undue burden, the courts have looked to factors like "untimely service, inability to appear, inability to produce requested documents or things, failure to identify items requested, or excessive costs." *Moore's Federal Practice* § 45.04 [3][b]. Weight must be given to nonparty status regarding expense and inconvenience in assessing the burden of compliance. *See U.S. v. Intl. Bus. Machs. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979). Here, plaintiffs have demanded that the Non-Parties either (i) produce documents relating to a time period beyond that ordered by the Court or (ii) make piecemeal document productions that will multiply the burden and expense of responding to plaintiffs' overbroad Subpoenas.

Specifically, producing documents through 2004—as plaintiffs have insisted—would be entirely inconsistent with both the Court's July 18, 2006 order cutting-off discovery at May 31, 2001 and the Court's direction at the August 1, 2005 oral argument that third-party discovery be consistent with party discovery. Compelling such action by the Non-Parties is, quite simply, non-sensical and would give sanction to plaintiffs' efforts to circumvent the reasonable discovery limits imposed by this Court.

The alternative—to force each of these seven (7) non-parties to gather documents covering a ten (10) year period and segregate them into pre- and post-2001 materials—is to compel exactly what Rule 45 forbids, *i.e.*, the imposition of undue burden and expense on non-parties. If the Non-Parties actually engaged in that effort then they would be forced to make multiple document productions should a 2004 date cut-off be imposed. And if a later date cut-off is ultimately ordered by the Court, then the entire effort of segregating those documents will be wasted, and the Non-Parties will then be forced—for a ***second*** time—to cull-out all documents that fall before and after the newly-ordered cut-off date. The federal rules expressly prohibit orders to compel that impose such unnecessary burden and expense on non-parties. *See* Rule 45(c)(2)(B) (an order to compel production shall protect any person who is not a party . . . from significant expense resulting from the inspection and copying commanded.").

That the federal rules prohibit this is something plaintiffs seem to have understood for over a year and a half, *i.e.* since the first three Subpoenas were

issued and the plaintiffs stated their position that—in order to avoid unnecessary burden and expense—responsive documents would be produced after the Court finally resolved the relevant discovery time period. Put another way, by taking no action to compel production before now, one can fairly conclude that plaintiffs understood the Non-Parties' position and agreed that it would impose an undue burden and expense on them to make piecemeal productions.[2] But nevertheless, and ironically, plaintiffs now complain about the delay in production even though it is their own behavior in moving for leave to file third amended complaints that has caused the latest delay. This is so because, as the plaintiffs were informed in no less than five letters sent to them in September 2006 (Gibson Dec. at Exhs. N-Q, S), the Non-Parties were prepared to produce documents through May 2001 so long as plaintiffs did not intend to amend their complaints to add allegations after that date—but plaintiffs' prevented such a production by making their motion for leave to file third amended complaints and thereby once again creating the prospect that the Non-Parties would have to incur vastly increased burden and expense by making piecemeal document productions. In short, issuing the compulsion order sought by plaintiffs would run afoul of the strictures of Rule 45. Accordingly, plaintiffs' motion should be denied.

---

[2] Plaintiffs also certainly understood after the Court issued its discovery cut-off order on July 18, 2006 that the Subpoenas—by calling for documents through the present day—violated that same order. Oddly, plaintiffs now ask the Court to sanction their violation of that order.

## CONCLUSION

For the foregoing reasons, the Non-Parties respectfully submit that plaintiffs' motion to compel must be denied.

Dated:     New York, New York
           December 8, 2006

                                           **DAVIS & GILBERT LLP**

                                           */s/ Paul F. Corcoran*
                                           Paul F. Corcoran (PC 7432)
                                           Scott L. Walker (SW 0330)
                                           1740 Broadway
                                           New York, New York 10019
                                           (212) 468-4800
                                           *Attorneys for the Non-Parties*