# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) MDL DOCKET NO. 1629 ) ) Master File No.: 1:04-cv-10981-PBS ) ) Judge Patti B. Saris ) Mag. Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO: ALL MARKETING AND SALES PRACTICES ACTIONS | ) ) ) ) ) |

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF AN ORDER GOVERNING THIRD PARTY DISCOVERY

The Class Plaintiffs, Products Liability Plaintiffs and Coordinated Third Party Payor Plaintiffs (collectively, "Plaintiffs") respectfully submit this memorandum in support of Plaintiffs' motion for entry of an Order Governing Third Party Discovery.[1]

### FACTUAL BACKGROUND

On December 20, 2006, the Court entered Discovery Order No. 7 (Dock. #582) ordering Defendants, among other things, to "provide appropriate confidentiality agreements to Plaintiffs' counsel regarding the IMS data."[2] Thereafter, Defendants provided Plaintiffs with a draft confidentiality agreement from Wolters Kluwer Health (a division of which, Source Healthcare Analytics, Inc., (formerly NDC Health Information Services) provides drug prescribing data), and the confidentiality agreement that IMS agreed to in one of the *Vioxx* litigations. Plaintiffs

---

[1] Plaintiffs respectfully request that the Court enter an order: (1) adopting the terms of the Stipulation and Order Concerning Use of Third Party Data (attached as Exhibit 1 to the Declaration of Jeffrey D. Lerner, submitted herewith); and (2) compelling IMS to produce the names of all doctors as they appear in IMS' responsive data.

[2] The term "IMS" as used in Discovery Order No. 7 was presumably used to generally refer to IMS Health, Inc., Wolters Kluwer Health, and Verispan LLC (the "Third Party Vendors").

could not agree to the terms of the proposed Wolters Kluwer agreement, because it was unduly restrictive both on its face and in comparison to the Stipulated Protective Order (the "Protective Order") that governs this litigation and which was agreed to by Defendants. (Dock. #27, Lerner Dec. Ex. 2.)

On January 4, 2007, counsel for the parties met and conferred in an attempt to amicably resolve their disputes. The parties agreed that Plaintiffs would draft a suitable confidentiality agreement and present it to Defendants. On January 10, 2007, Plaintiffs sent Defendants a Proposed Stipulation and Order Concerning Use of Third Party Data (the "Proposed Order") (Lerner Dec. Ex. 1) which substantially tracks the language of the Protective Order already governing this case, and which was based in part on the protective order that IMS agreed to in one of the *Vioxx* litigations. On January 26, 2007, Defendants responded with a redline version of the Proposed Order showing Defendants' suggested changes (the "Response"). (Lerner Dec. Ex. 3.) Once again, Plaintiffs were unable to agree to Defendants' suggested changes because those changes would drastically limit Plaintiffs' ability to use the Third Party Vendors' data. Specifically, Defendants' Response would have eliminated Plaintiffs' ability to challenge the designation of information marked "confidential" by the Third Party Vendors, and it would have limited Plaintiffs' ability to use the Third Party Vendors' information for the sole purpose of refreshing a witness' recollection. In addition, Defendants represented that the Third Party Vendors would not disclose the names of any specific doctors that were not previously identified.[3]

---

[3] The term "identified" is terribly vague and ambiguous and is highly impractical. Plaintiffs have previously "identified" hundreds of physicians, including dozens in the various complaints, and numerous more through discovery requests. This includes a list of the 75 most notorious doctors who were involved in Defendants' efforts to market Neurontin.

2

On January 26 and 29, 2007, the parties conducted two additional meet and confer sessions in an attempt to come to an accord over the language of the third-party confidentiality agreement. On January 29, 2007 – the date of this filing – defendants clarified their positions with respect to several issues. First, with respect to the identification of doctors' names, Defendants stated that (i) Verispan does not keep doctors' names as part of its data, and (ii) Wolters Kluwer has agreed to provide Plaintiffs with the names of all doctors as they appear in its data. Notwithstanding those positions, IMS continues to refuse to produce the names of doctors that have not been previously identified. Second, with respect to plaintiffs' ability to challenge the confidentiality of documents, the Third Party Vendors are willing to provide Plaintiffs' with documents "for attorneys' and experts' eyes only," subject to Plaintiffs' experts signing some temporary confidentiality order beforehand, in the hopes that after Plaintiffs see the Third Party Vendors' information the parties will better be able to reach an agreement as to the confidential treatment of such information.

As of the filing of this motion, Plaintiffs have not had ample time to consider Defendants' recent proposal, nor have we had the opportunity to see the agreement our experts would have to sign before they are permitted to see the Third Party Vendors' information. We note, however, that under the terms of the existing Protective Order, Plaintiffs' experts are required to execute a confidentiality agreement prior to being shown any confidential information anyway. Thus, unfortunately, the parties were unable to resolve all of their differences. Therefore, Plaintiffs respectfully move the Court to enter the Proposed Order (Lerner Dec. Ex. 1) governing third-party discovery, and to compel IMS to produce the names of all doctors as they appear in IMS' data and documents.

## ARGUMENT

Defendants' positions with respect to the Proposed Order are problematic for the following three reasons: (1) Defendants, speaking on behalf of the Third Party Vendors, seek to completely deny Plaintiffs their right to use "confidential" Third Party Vendor information affirmatively in their case in chief by limiting Plaintiffs' use of such information to *only* the refreshing of a witness' recollection; (2) Defendants represent that IMS will only produce the names of specific doctors that have been previously identified by Plaintiffs; and (3) Defendants seek to completely deny Plaintiffs their right to challenge the Third Party Vendors' designation of documents and information as "confidential."

### A. Plaintiffs Have a Right to Use Confidential Information for "Any Purpose" at Trial Under the Protective Order

Paragraph 9 of the Protective Order reads in its entirety:

> Unless otherwise directed by the Court, a party may, subject to the rules of evidence and further orders of the Court, use any Confidential Information for any purpose at trial or at any hearing before a judicial officer in this litigation.

(Lerner Dec. Ex. 2.) Plaintiffs included this language, verbatim, in their Proposed Order. (Lerner Dec. Ex. 1, ¶ 7.) Defendants, however, arbitrarily seek to limit Plaintiffs' ability to use confidential information from the Third Party Vendors for the sole purpose of "refreshing a witness' recollection and not as an affirmative proof of fact." (Lerner Dec. Ex. 3, ¶ 6.)

Defendants offer no basis for limiting Plaintiffs' use of confidential information in such an unduly restrictive manner. The Proposed Order, like the Protective Order, clearly allows for court intervention if the situation requires it. For example, if Defendants have a bona-fide reason to limit Plaintiffs' use of Third Party Vendor information at trial, they can file a motion *in limine* prior to trial and request such relief at the appropriate time. Requiring Plaintiffs to blanketly agree not to use any of the confidential Third Party Vendor data in its case in chief with no

4

explanation and at this stage of the litigation, is nonsensical. Therefore, Plaintiffs respectfully request the Court to enter an order incorporating the language of the Proposed Order, which gives Plaintiffs the right to use this information affirmatively at trial and other hearings, subject only to future rulings by the Court.[4]

**B. Prescriber-Level Data for All Doctors Who Prescribed Neurontin is Necessary for Plaintiffs to Rebut Defenses**

During the meet and confer process, Defendants represented that IMS will only provide the names of specific doctors who have been identified thus far in the litigation.[5] As for other 'non-identified' doctors, IMS intends to withhold the names of specific doctors who prescribed Neurontin. This position is problematic for several reasons. First, IMS has provided no grounds other than confidentiality to support withholding physician names, as opposed to simply producing them pursuant to a confidentiality order. This position is illogical because, according to IMS, all documents containing its data are confidential. Thus, if IMS is willing to produce confidential aggregate data, it should be willing to produce prescriber-level data and mark it confidential.

Second, Defendants cannot argue that prescriber-level information is irrelevant. Because Defendants intend to raise defenses that make prescriber-level data critical, Plaintiffs need the names of all doctors that are contained in IMS' responsive data. In their Opposition to Class Certification (Dock. # 585), Defendants take the position that Plaintiffs, to establish causation, must obtain "the testimony of each class member's treating physician regarding the basis for the

---

[4] Indeed, Defendants' proposed language would render the Third Party Vendors' data completely useless to Plaintiffs who can envision no scenario in which they would use prescription data to refresh a witness' recollection.

[5] Verispan and Wolters Kluwer either do not keep doctors' names in their database or they have agreed to provide all doctors' names to Plaintiffs.

5

decision to prescribe Neurontin to each class member." (Defs. Br. at 23.) Although Plaintiffs disagree with Defendants' statement of the law, if the court adopts Defendants' standard, then Plaintiffs must have access to the prescribing data of each doctor who prescribed Neurontin to members of the class. If Defendants agree to concede that Plaintiffs may prove causation through aggregate data, then Plaintiffs will withdraw the portion of this motion to compel production of each doctors' name. Until then, Plaintiffs respectfully request that the Court compel the production of the names of all doctors who prescribed Neurontin as part of IMS' production.

      **C.**      **Plaintiffs Have a Right to Challenge the Designation of Confidential Information Under the Protective Order**

Paragraph 8 of the Protective Order provides that a party may object to the designation of information as "confidential" if it has a good faith basis to do so. (Lerner Dec. Ex. 2.) The Protective Order reads in pertinent part:

> Prior to applying to the Court for any relief, the objecting party shall consult with the designating party to attempt to resolve their differences. If the parties are unable to reach an accord as to the proper designation of the material, the objecting party may apply to the Court for a ruling that, the material shall not be so treated, giving notice to the party which has designated the material. If such a motion is made, the designating party would have the burden to establish that the designation is proper. If no such motion is made, the material will remain as designated. Any documents or other materials that have been designated Confidential shall be treated as Confidential until such time as the Court or any magistrate to whom this matter is assigned rules that such material should not be treated as Confidential.

(Id.) This provision gives the designating party ample protection in that it provides that: (1) designated information will be treated as confidential unless a party objects to such a designation; (2) in the event of an objection, the parties must meet and confer to attempt to resolve their dispute; (3) if no accord is reached and the objecting party seeks relief from the

6

Court, the information must be treated as confidential until the Court rules otherwise; and (4) if the designating party establishes that the designation was proper, then the designation remains.

Given all of these safeguards, the existing Protective Order is sufficient to protect the confidential information of the Third Party Vendors. Nevertheless, Defendants' redline version of Plaintiffs' Proposed Order *completely deletes* paragraph 6 of the Proposed Order, which is a near verbatim replication of paragraph 8 of the Protective Order. Defendants wish to completely deny Plaintiffs their right to challenge the designation of information as confidential, although they offer no basis for doing so. Under the express terms of the Protective Order, and the terms of the Proposed Order, properly designated information will remain confidential. Therefore, the language of the Proposed Order is reasonable and Plaintiffs should be permitted to challenge the designation of confidential information if they have a good faith basis to do so.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter the Proposed Order and compel IMS to produce the names of all doctors as they appear in its responsive documents and data.

Dated: January 29, 2007

Respectfully Submitted,

By:  **/s/ Thomas Greene**
Thomas Greene Esquire
Greene & Hoffman
125 Summer Street
Boston, MA 02110

By:  **/s/ Barry Himmelstein**
Barry Himmelstein, Esquire
Lieff Cabraser Heimann &
Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

7

By: **/s/ Don Barrett**
Don Barrett, Esquire
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By: **/s/ Daniel Becnel**
Daniel Becnel, Jr., Esquire
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

By: **/s/ James Dugan**
James Dugan, Esquire
Dugan & Browne
650 Poydras St., Suite 2150
New Orleans, LA 70130

*Members of the Class Plaintiffs' Steering Committee*

By: **/s/ Thomas M. Sobol**
Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142

*Plaintiffs' Liaison Counsel and Member of the Class Plaintiffs' Steering Committee*

By: **/s/ Richard Cohen**
Richard Cohen, Esquire
Lowey Dannenberg Bemporad
& Selinger, P.C.
One North Lexington Avenue
White Plains, NY 10601

By: **/s/ Linda P. Nussbaum**
Linda P. Nussbaum, Esquire
Cohen Milstein Hausfeld & Toll
150 East 52nd Street
New York, NY 10022

*Members of the Plaintiffs' Non-Class Steering Committee*

8