UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                         :
In re:   NEURONTIN MARKETING, SALES                      :
         PRACTICES, AND PRODUCTS LIABILITY               :
         LITIGATION                                      :    MDL Docket No. 1629
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                         :    Master File No. 04-
THIS DOCUMENT RELATES TO:                                :    10981
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                         :    Judge Patti B. Saris
ALL SALES AND MARKETING ACTIONS                          :
                                                         :    Magistrate Judge Leo
                                                         :    T. Sorokin
                                                         :
                                                         :
                                                         :
                                                         :
                                                         :
                                                         :
                                                         :
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

## TABLE OF AUTHORITIES

PAGE

### Cases

Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001).................................................................................................................. 8

Ardolino v. Met. Life Insur. Co., No. 00-12115, 2001 U.S. Dist. LEXIS 14318, at *10-11 (D. Mass. July 2, 2001)................................................................................ 9

Gill v. Gulfstream Park Racing Assoc. Inc., 399 F.3d 391, 400 (1st Cir. 2005) ............... 9

Mack v. The Great Atl. and Pac. Tea Co., 871 F.2d 179, 185 (1st Cir. 1989)................... 9

### Rules

Federal Rule of Civil Procedure 26(b)(2)(C)(i) .................................................................. 8

Federal Rule of Civil Procedure 26(b)(2)(C)(iii) ............................................................... 8

Defendants Pfizer Inc. and Warner-Lambert Company (together, "defendants") submit this memorandum of law in opposition to plaintiffs' motion to compel defendants' production of documents.

## <u>PRELIMINARY STATEMENT</u>

Despite an extensive meet-and-confer process, plaintiffs have filed a motion to compel that completely ignores defendants' stated position with respect to four of the five individual document requests enumerated in plaintiffs' motion.  Declaration of Deborah L. MacGregor ("MacGregor Decl.") ¶¶ 9-13.  Indeed, with respect to at least two requests, 18 and 27, plaintiffs have filed a motion to compel defendants to do *what defendants offered to do on January 19, 2007.*  MacGregor Decl. ¶¶ 9, 13.  Moreover, as set forth in the MacGregor Declaration, and contrary to the assertions in plaintiffs' motion:

- defendants have not sought to limit the production of responsive materials to the files of the national marketing team for Neurontin (<u>see</u> Pls.' Mem. at 5; MacGregor Decl. ¶ 9);

- defendants have agreed to make a production of documents in response to every one of the enumerated document requests in plaintiffs' motion, with the single exception of request number 19 (<u>see</u> Pls.' Mem. at 3; MacGregor Decl. ¶ 8);

- defendants have agreed to provide responsive materials from the files of the regional managers and vice-presidents of sales who had responsibility for Neurontin (<u>see</u> Pls.' Mem. at 6; MacGregor Decl. ¶¶ 21, 27); and

- defendants' objections to plaintiffs' requests, while including relevancy objections, also are based on over-breadth, undue burden, and vague or ambiguous drafting (<u>see</u> Pls.' Mem. at 2; MacGregor Decl. ¶ 6).

In fact, plaintiffs' declaration in support of their motion is noticeably silent as to the positions defendants took in the course of the meet-and-confer sessions on each request

1

identified in plaintiffs' motion. See Declaration of Ilyas Rona ("Rona Decl.") (Dock. # 19) ¶ 8 (stating only that "Defendants refuse to produce responsive documentation to Request for Production Nos. 18, 19, 20, 21, 26, and 27").

With respect to the disputed custodial files, defendants have produced or agreed to produce responsive documents from the files of 38 out of 56 requested custodians. Plaintiffs appear to be under certain misapprehensions regarding the role of the seven custodians whose files the production of which plaintiffs have moved to compel. The parties could, perhaps, have narrowed further the list of disputed custodians had plaintiffs been willing to discuss their grounds for seeking these custodians' files, as defendants could have pointed out plaintiffs' misconceptions. Because plaintiffs chose to provide such information for the first time in their motion to compel, defendants only now can address these positions.

## BACKGROUND

On November 13, 2006, defendants served responses and objections to Plaintiffs' Second Request for Production, dated October 16, 2006, which sought the production of 47 custodians' files.[1] On November 20, 2006, defendants served their responses and objections (the "responses and objections") to Plaintiffs' Third Request for Production, dated October 19, 2006 (the "requests"). On January 4, 11, and 19, 2007, the parties met and conferred by telephone regarding the various custodial files sought, plaintiffs' requests, and defendants' responses and objections. MacGregor Decl. ¶ 4.

---

[1] Plaintiffs' Third Request for Production, dated October 19, 2006, (one of two documents bearing the same title) sought the files of an additional 10 people, one of whom was duplicative to plaintiffs' second request, bringing the total number of custodial files sought in the two sets of requests to 56.

2

One week after the January 19, 2007 call, on or about January 26, 2007, counsel for defendants contacted counsel for plaintiffs and inquired as to whether plaintiffs were moving on any items related to their document requests. MacGregor Decl. ¶ 7. The call was placed in large part because defendants had very little idea as to what disputes remained. Defendants wished to ensure that any contemplated motion would not include issues that could or should have been resolved between the parties. With the exception of the custodial files, however, defendants did not learn which items plaintiffs intended to move upon until the afternoon of Monday, January 29, 2007, and did not learn then the basis for the motion. Id.

## ARGUMENT

The Court should deny plaintiffs' motion to compel with respect to each of the enumerated requests.

### A.    Request Numbers 18, 21 and 27

Request number 18 seeks all documents "relating to indications and/or product uses considered by Defendants for Neurontin." Pls.' Mem. at 3. Defendants believe there is no live dispute regarding this request, as plaintiffs' argument that defendants "agreed to produce some responsive documentation, but only if found in the 'marketing team' files," Pls.' Mem. at 5, is wrong. This represents the first – but not the last – occasion in plaintiffs' memorandum where plaintiffs argue against the position set forth in defendants' November 20, 2006 responses and objections, while ignoring what was discussed with respect to this request in the meet-and-confer sessions.[2]

---

[2] This error is compounded by their insinuation that defendants have somehow failed to follow the Court's recent pronouncement that certain types of responsive materials likely reside outside the national

3

As stated during the January 11, 2007 meet-and-confer session, while materials responsive to request number 18 are most likely to be found in the files of the national marketing team, defendants have already agreed to produce documents responsive to this request, to the extent they exist, from the files of *all* the custodians whose documents defendants are producing. MacGregor Decl. ¶ 9. Accordingly, plaintiffs' motion with respect to request number 18 should be denied as moot.

Request number 21 seeks "market trends, anticipated and actual effects of generic entry and/or product goals for Neurontin …." Pls.' Mem. at 3-4. On its face, this request clearly calls for materials likely to reside in the files of the marketing team. Prior to the filing of plaintiffs' motion, defendants also agreed, however, to review the files of the vice-presidents and regional managers who had responsibility for the detailing of Neurontin for any materials responsive to these requests. MacGregor Decl. ¶ 12. In response to this offer during the January 19, 2007 meet-and-confer session, plaintiffs did not ask any follow-up questions, express dissatisfaction with this position, suggest other files that should be searched, or identify any categories of documents that would not be available in the foregoing files. Id.

Request number 27 seeks "[a]ll documents reflecting communications among Defendants' sales force and detailing personnel regarding Neurontin sales or promotion." Pls.' Mem. at 4-5. Once again, plaintiffs have failed to portray accurately defendants' position. Prior to the filing of the motion to compel, defendants informed plaintiffs that

---

marketing team for Neurontin. See Pls.' Mem. at 5. Defendants' responses and objections were served November 20, 2006, three weeks before the hearing at which this issue first arose, and one month before the Court issued Discovery Order 7. During the January meet-and-confer sessions, defendants conformed with both the letter and the spirit of the Court's orders and comments in this area, and did not confine their responses to the marketing team.

they would produce responsive materials from the files of the vice-presidents and regional managers who were responsible for Neurontin. MacGregor Decl. ¶ 13. Yet this is exactly what plaintiffs now are asking the Court to order. Pls.' Mem. at 6.

Plaintiffs also argue with respect to request number 27 that information should be produced "to the extent that the Sales Department maintained its records of its internal communications concerning Neurontin." Pls.' Mem. at 6. Defendants are not sure what plaintiffs are requesting. If plaintiffs are seeking information from the custodial files of the more than 1,000 Pfizer sales representatives responsible for detailing Neurontin at various times after the June 2000 merger, however, this request should be denied. At no time during any of the meet-and-confer sessions did plaintiffs take this position. Moreover, plaintiffs have on multiple occasions said they were not asking defendants to search the files of all sales representatives. MacGregor Decl. ¶ 13. It obviously would be prohibitively expensive and unduly burdensome to review and produce documents from the files of such representatives. Defendants are producing responsive materials from the files of the relevant vice-presidents and regional managers, as well as documents from the files of sales representatives who called on plaintiffs' prescribing physicians in the Track One product liability cases. This should suffice.

**B.    Request Number 19**

Request number 19 calls for "all documents supporting value analysis for marketing Neurontin to providers, health plans and/or other payers." Pls.' Mem. at 6. When asked during the January 11, 2007, meet-and-confer session what plaintiffs were seeking in response to this request, plaintiffs' counsel stated that they were interested in receiving documents relating to efforts to convince third-party payors to use Neurontin

(including, *e.g.*, documents relating to attempts to convince such payors to add the drug to their formularies, not to conduct a drug utilization review, and not to require prior authorization).[3]  MacGregor Decl. ¶ 10.  Accordingly, at the January 19, 2007 meet-and-confer session, defendants stated that they felt such materials – even assuming they existed – were not responsive to the claims and defenses in this litigation, as plaintiffs have not made any allegations in their complaint that defendants made false and misleading statements to third-party payors.  Id.  Indeed, it appears that the lack of evidence that false or misleading statements were made to doctors has caused plaintiffs to raise for the first time (and at the eleventh hour of discovery) a claim that defendants made false statements directly to third-party payors.[4]  This claim has not been alleged and plaintiffs are not entitled to amend their complaint or seek such discovery.

C.     **Request Number 20**

Request number 20 seeks all documents which "announce or summarize drug indications for Neurontin."  Pls.' Mem. at 7-8.  As an initial matter, this request is breathtakingly overly-broad, as well as vague and ambiguous.  Defendants interpreted the request as seeking information about Neurontin's approved uses.  As such, defendants offered up the Neurontin New Drug Applications filed with the FDA.  At the meet-and-confer sessions, however, plaintiffs explained that they were interested in receiving the

---

[3] As to request number 19 (and other requests as well), plaintiffs' counsel stated that the person who drafted the request was not on the phone but other counsel would do their best to interpret what was being requested.  MacGregor Decl. ¶ 10.  Such confusion on plaintiffs' part serves to emphasize the vague and ambiguous nature of many of plaintiffs' requests and the challenges involved in appropriately narrowing or responding to such requests.

[4] Plaintiffs' third amended complaint contains only a single reference to conduct directed towards pharmacy benefit managers, but no references to conduct directed towards third party payors.  See Third Amended Class Action Complaint ("TACAC") ¶ 280.

requested information with respect to any uses of Neurontin, including off-label uses. MacGregor Decl. ¶ 11. Plaintiffs' memorandum states that they seek "basic documentation that reflects the indications of Neurontin from the Defendants' perspective," and that such "relevant documentation is basic." Pls.' Mem. at 8. Plaintiffs' attempt to make their request sound like it is very obvious and straight-forward does not change the fact that it is, in fact, extremely unclear.

In an attempt to resolve the confusion, during the meet-and-confer session, plaintiffs stated that they would take the Neurontin internal website they had previously requested as at least an initial response to this request. MacGregor Decl. ¶ 11. Defendants reminded plaintiffs that defendants have already agreed to produce such a website if they are able to locate it. Id. Beyond such a website, defendants are producing documents relating to the relevant off-label indications that remain in the case from the files of personnel who had responsibility for sales, marketing, clinical development, regulatory, and safety. This production should be sufficient.

**D.    Custodial Files**

Plaintiffs' second and third requests for documents sought the custodial files of 56 individuals. Of these, defendants have already produced, are in the process of producing, or have agreed to produce, responsive documents from the files of 38 people. Plaintiffs have moved to compel the files of seven people whose files defendants do not believe are called for in this litigation.[5]

---

[5] Plaintiffs appear to also be moving for the Pfizer-era custodial file of David Murphy, and this request should be denied. Pls.' Mem. at 9 n.4. While it is true that Mr. Murphy remained with Pfizer after the merger, he stopped working on Neurontin at that time. MacGregor Decl. ¶ 16. As such, his files from his time at Pfizer are not relevant to this litigation.

7

During the January 11 and January 19, 2007 meet-and-confer sessions, defendants explained that they had completed their inquiry and that they did not believe that certain custodians would possess documents sufficiently related to the claims and defenses in this case to justify the burden of reviewing and producing materials from their custodial files. Defendants stated, however, that plaintiffs should tell defendants in advance of filing a motion to compel why plaintiffs believed these custodians' files should be produced. MacGregor Decl. ¶ 14. Plaintiffs refused to do so, despite acknowledging that they would need to provide such information in their motion to compel. MacGregor Decl. ¶ 15.

Plaintiffs' motion should be denied with respect to Suzan Carrington, Ellen Dukes, Joan Kaplan, Marino Garcia, Paula Smith, and Kirk Taylor. For each of these custodians, as discussed further below, production of their files would be unduly burdensome, in that responsive documents, if any, would either be duplicative of materials produced from the files of other custodians, or are not justified in the face of the burden that would be incurred in reviewing and producing them.

Under the Federal Rules of Civil Procedure, a court may limit discovery if "the discovery sought is unreasonably cumulative or duplicative," or if "the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii). When a party seeks discovery similar to that already produced without a showing that "any new, relevant information will be obtained," a court can prevent the discovery because it would be an "undue burden . . . to permit such a fishing expedition." Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001); see also Ardolino v. Met. Life Insur. Co., No. 00-12115, 2001 U.S. Dist.

8

LEXIS 14318, at *10-11 (D. Mass. July 2, 2001) ("[T]his court may limit and deny

relevant discovery where it is unreasonably cumulative or duplicative, or is obtainable

from some other source that is more convenient, less burdensome, and less expensive.")

(internal quotations and citations omitted). Additionally, "[u]nder Rule 26, the trial court

is required to balance the burden of proposed discovery against the likely benefit." Gill

v. Gulfstream Park Racing Assoc. Inc., 399 F.3d 391, 400 (1st Cir. 2005); see also Mack

v. The Great Atl. and Pac. Tea Co., 871 F.2d 179, 185 (1st Cir. 1989) (upholding the

district court's denial of proposed discovery when "the burden on defendant in answering

would outweigh significantly any [corresponding] benefit to plaintiff's case") (internal

quotations and citations omitted).

Suzan Carrington played no role specific to Neurontin.[6]  In her role as Senior

Manager of the Office of Grants and Contracts, Ms. Carrington acted as the conduit for

all requests for research grants the company received, for all products.  As such, Ms.

Carrington merely sent an acknowledgement upon receipt of a grant request, and then

forwarded the request to the relevant product's medical team / grants committee for their

consideration.  Ms. Carrington had no substantive role relating to considering or

providing the requested grants.  MacGregor Decl. ¶ 17.  Accordingly, Ms. Carrington's

custodial file is not likely to yield responsive information.  On January 25, 2007,

however, defendants sent an email to counsel for plaintiffs in which defendants offered to

"provide documents sufficient to show requests for research grants relating to Neurontin

---

[6] Plaintiffs' claim that defendants "have refused to identify *all* members of the Neurontin grants committee," Pls.' Mem. at 9, is incorrect.  As defendants reminded plaintiffs in the last round of briefing, defendants have committed to providing the names of those who served on formal teams by February 28, 2007 – a date the Court has adopted.  See Defendants' Reply Memorandum in Support of Submission Pursuant to Discovery Order 7, Dock. # 605, at 3 n.1.

and responses thereto." MacGregor Decl. ¶ 24. These materials will be provided from the central files of the grants department. Moreover, defendants are producing documents from the custodial files of the key members of the Neurontin grants committee. These documents ought to satisfy plaintiffs' stated need for grant information and their request for Ms. Carrington's custodial file, therefore, should be denied.

While it is true that Ellen Dukes was involved in the Outcomes Research Group, plaintiffs have misstated the goal of that group. The Outcomes Research group had several functions, including analyzing how drugs are actually used in the marketplace (as opposed to in a clinical trial) and assessing the economic and social costs connected with certain diseases. Ms. Dukes' work with respect to Neurontin related almost entirely to the launch of Neurontin for its post-herpetic neuralgia indication (an indication approved and launched in 2002). MacGregor Decl. ¶ 18. To the extent Ms. Dukes was involved with projects regarding other types of neuropathic pain, the focus of such work was for use in countries outside the United States in which Neurontin had a broad neuropathic pain indication. Id. Defendants do not believe that work done by Outcomes Research is related to the claims and defenses in this litigation, and accordingly, Ellen Dukes' custodial file should not be produced.

Joan Kaplan's responsibilities for Neurontin did not include the United States. Her role primarily involved working with physicians outside the United States and with congresses or symposia developed for the ex-U.S. Neurontin team. MacGregor Decl. ¶ 19. The burden of reviewing and producing materials from Ms. Kaplan's files, therefore, is not justified.

10

Paula Smith simply acted to monitor stock levels and track orders for marketing materials. MacGregor Decl. ¶ 20. Plaintiffs' expressed interest in Paula Smith is to obtain a collection of the marketing materials Pfizer used relating to Neurontin. Pls.' Mem. at 11. Ms. Smith did not herself maintain copies of marketing materials, MacGregor Decl. ¶ 20, so there is no reason for the production of Ms. Smith's custodial file.

Kirk Taylor was not, as plaintiffs contend, a member of the Neurontin medical team and Neurontin Publications Subcommittee ("PSC"). Pls.' Mem. at 11. Mr. Taylor was a member of a different product team, who may have attended some of the Neurontin PSC meetings. MacGregor Decl. ¶ 21. Defendants are producing responsive materials from U.S. marketing and medical personnel who served on the Neurontin PSC. Accordingly, the request for Mr. Taylor's materials should be denied because relevant documents, if any, in Mr. Taylor's files would be cumulative and duplicative of materials produced from the files of the PSC team members.

Marino Garcia was the Marketing Team Leader for Major Markets for Neurontin. Major Markets does not include the United States. MacGregor Decl. ¶ 22. Accordingly, Mr. Garcia's files should not be reviewed and produced.

Finally, John Marino was the Worldwide Team Leader for the Neurontin Marketing Team. His role with respect to the United States was a minor one from a day-to-day operational perspective. MacGregor Decl. ¶ 23. Despite this fact, defendants will agree to produce responsive materials from Mr. Marino's files that relate to the marketing and promotion of Neurontin in the United States.

11

<u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that the Court deny the plaintiffs' motion to compel.


Dated: February 2, 2007

DAVIS POLK & WARDWELL


By:   /s/ James P. Rouhandeh
      James P. Rouhandeh
      Deborah L. MacGregor

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN


By:   /s/ David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on February 2, 2007.

/s/ David B. Chaffin

13