UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------- x
                                                     :
In re:  NEURONTIN MARKETING, SALES                   :   MDL Docket No. 1629
        PRACTICES, AND PRODUCTS LIABILITY            :
        LITIGATION                                   :   Master File No. 04-
---------------------------------------------------- x   10981
                                                     :
THIS DOCUMENT RELATES TO:                            :   Judge Patti B. Saris
                                                     :
---------------------------------------------------- x
                                                     :   Magistrate Judge Leo
ALL SALES AND MARKETING ACTIONS                      :   T. Sorokin
                                                     :
                                                     :
                                                     :
                                                     :
---------------------------------------------------- x

**DECLARATION OF DEBORAH L. MACGREGOR IN SUPPORT OF
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
DEFENDANTS' PRODUCTION OF DOCUMENTS**

DEBORAH L. MACGREGOR declares upon penalty of perjury in accordance with 28 U.S.C. § 1746 as follows:

1. I am an attorney associated with the law firm Davis Polk & Wardwell, counsel for Defendants Pfizer Inc. and Warner-Lambert Company in this action.

2. I submit this declaration in support of Defendants' Opposition to Plaintiffs' Motion to Compel Defendants' Production of Documents, filed February 2, 2007.

3. Except where indicated, I have personal knowledge of the matters stated below and would testify to the same.

4. I have been actively involved in responding to plaintiffs' requests for discovery from defendants in the MDL. I personally participated in three meet-and-

1

confer sessions regarding Class and Non-Class Plaintiffs' Second Request for Production of Documents and Class and Non-Class Plaintiffs' Third Request for Production of Documents. The first of these occurred telephonically on January 4, 2007. The second of these occurred telephonically on January 11, 2007. The third of these occurred telephonically on January 19, 2007.

5. At each of the meet-and-confer sessions, counsel for defendants conferred in good faith in an attempt to narrow the issues in dispute.

6. Defendants' objections to plaintiffs' requests for production, while including relevancy objections, also are based on, *inter alia*, over-breadth, undue burden, and vague or ambiguous drafting.

7. In addition to the meet-and-confer sessions, on or about January 26, 2007, James P. Rouhandeh, counsel for defendants, contacted Ronald Aranoff, counsel for plaintiffs, and inquired as to whether plaintiffs were planning to file a motion to compel relating to their document requests. Mr. Aranoff stated that he was not handling the motion, but his understanding was that plaintiffs would be moving to compel certain custodial files and that he would inquire of other plaintiffs' counsel as to any other items that might be at issue in a motion. On January 29, 2007, Mr. Aranoff informed me that it was his understanding that plaintiffs would be moving on certain enumerated requests, though we did not have an opportunity to discuss the basis for plaintiffs' motion.

8. During the January 11 and 19, 2007 meet-and-confer sessions, defendants provided their position regarding each of the requests for production that are at issue in plaintiffs' motion to compel (numbers 18, 19, 20, 21 and 27). For each of these requests

except for number 19, defendants agreed to produce additional responsive materials beyond those offered in their responses and objections.

9.  In response to request number 18, defendants stated during the January 11, 2007 meet-and-confer call that, while materials responsive to request number 18 are most likely to be found in the files of the national marketing team, defendants will produce documents responsive to this request from the files of all the custodians defendants are producing.

10. With respect to request number 19, during the January 11, 2007 meet-and-confer session, defendants asked what plaintiffs were seeking in response to this request. Plaintiffs' counsel stated that the person who drafted the request was not on the phone but other counsel would do their best to interpret what was being requested, and that they were interested in receiving documents relating to efforts to convince third-party payors to use Neurontin (including, *e.g.*, documents relating to attempts to convince such payors to add the drug to their formularies, not to conduct a drug utilization review, and not to require prior authorization). During the January 19, 2007 meet-and-confer session, defendants stated that they felt such materials were not responsive to the claims and defenses in this litigation, as plaintiffs have not made any allegations in their complaint that defendants made false and misleading statements to third-party payors.

11. With respect to request number 20, at the meet-and-confer sessions, plaintiffs explained that they were interested in receiving the requested information with respect to any use of Neurontin, including off-label uses. Plaintiffs also stated that they would take the Neurontin internal website they had previously requested as at least an

3

initial response to this request. Defendants reminded plaintiffs that defendants have already agreed to produce such a website if they are able to locate it.

12.     In response to request number 21, defendants agreed during the January 19, 2007 meet-and-confer session to review the files of the vice-presidents and regional managers who had responsibility for the detailing of Neurontin for any materials responsive to these requests. In response to this offer, plaintiffs did not ask any follow-up questions, express dissatisfaction with this position, suggest other files that should be searched, or identify any categories of documents that would not be available in the foregoing files.

13.     In response to request number 27, defendants informed plaintiffs during the January 19, 2007 meet-and-confer session that they would produce responsive materials from the files of the vice-presidents and regional managers who were responsible for Neurontin. At no time during any of the meet-and-confer sessions did plaintiffs take the position that defendants should produce the files of every sales representative who detailed Neurontin (of which there are more than 1,000), and plaintiffs have stated more than once in the past that they are not asking defendants to search the files of all sales representatives.

14.     During the January 11 and January 19, 2007 meet-and-confer sessions, defendants explained that they had completed their inquiry and that they did not believe that certain custodians would possess documents sufficiently related to the claims and defenses in this case to justify the burden of reviewing and producing materials from their custodial files. Defendants also stated that plaintiffs should tell defendants in advance of

filing a motion to compel why plaintiffs believed these custodians' files should be produced.

15.  Plaintiffs refused to provide a rationale for their custodial file requests, despite acknowledging to one of defendants' counsel that plaintiffs would need to provide such information in the context of a motion to compel.

16.  I understand that David Murphy remained with Pfizer after the merger, but stopped working on Neurontin at that time.

17.  I understand that Suzan Carrington, in her role as Senior Manager of the Office of Grants and Contracts, acted as the conduit for all requests for research grants the company received, for all products. As such, Ms. Carrington sent an acknowledgement upon receipt of a grant request, and then forwarded the request to the relevant product's medical team / grants committee for their consideration. Ms. Carrington had no substantive role relating to considering or providing the requested grants.

18.  I understand that Ellen Dukes was a member of the Outcomes Research group, which had several functions, including analyzing how drugs are actually used in the marketplace (as opposed to in a clinical trial) and assessing the economic and social costs connected with certain diseases. Ms. Dukes' work with respect to Neurontin related largely to the launch of Neurontin for its post-herpetic neuralgia indication (an indication approved and launched in 2002). To the extent Ms. Dukes was involved with projects regarding other types of neuropathic pain, the main focus of such work was for use in countries outside the United States in which Neurontin had a broad neuropathic pain indication.

19. I understand that Joan Kaplan's responsibilities for Neurontin did not include the United States. Her role primarily involved working with physicians outside the United States and with congresses or symposia developed for the ex-U.S. Neurontin team.

20. I understand that Paula Smith acted to monitor stock levels and track orders for marketing materials and did not herself maintain copies of marketing materials.

21. I understand that Kirk Taylor was not a member of the Neurontin medical team and Neurontin Publications Subcommittee ("PSC"), but was a member of a different product team, who attended some of the Neurontin PSC meetings as a guest.

22. I understand that Marino Garcia was the Marketing Team Leader for Major Markets for Neurontin. Major Markets does not include the United States.

23. I understand that John Marino was the Worldwide Team Leader for the Neurontin Marketing Team. His role with respect to the United States was a minor one from a day-to-day operational perspective.

24. In an email to Ronald Aranoff, Esq., dated January 25, 2007, I wrote that defendants agreed to "provide documents sufficient to show requests for research grants relating to Neurontin and responses thereto."


Dated: New York, New York
       February 2, 2007

                                              /s/ Deborah L. MacGregor
                                              Deborah L. MacGregor

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 6, 2006.

/s/David Chaffin