# EXHIBIT D

PROFESSIONAL SERVICES AGREEMENT

This Agreement is made as of January 1, 2005, by and between PFIZER INC ("PFIZER"), doing business at 235 East 42nd Street, New York, New York 10017 and VERISPAN, L.L.C. ("Consultant"), doing business at 800 Township Line Road, Suite 125, Yardley, PA 19067. In consideration of the mutual promises and covenants set forth in this Agreement and intending to be legally bound, PFIZER and Consultant agree as follows:

1. **Description of Work**

    1.1   PFIZER hereby engages Consultant, and Consultant hereby accepts such engagement, to provide such services as may be agreed upon in Statements of Work, which the parties may enter into from time to time. All such Statements of Work shall be in the form of Exhibit A attached hereto and incorporated by reference herein and shall be effective only upon execution by both parties. All work to be performed by Consultant under Statements of Work is collectively referred to herein as the "Work." Consultant will use its commercially reasonable efforts, skill and ability to perform the Work, and will comply with all applicable laws and regulations in performing the Work.

    1.2   Attached hereto as Exhibit B are terms and conditions that shall specifically apply to and govern PFIZER"s use of any Licensed Products (as defined therein) provided to PFIZER hereunder.

    1.3   If key personnel are identified in Statements of Work, Consultant represents and warrants to PFIZER that such personnel only will actually perform the Work, and that there will be no substitution of such personnel, unless PFIZER consents in writing to a substitution of such personnel; provided, however, that any such consent shall not be unreasonably withheld, conditioned, or delayed. In any event, PFIZER shall have the right at any time to request the replacement of any of Consultant's personnel without stating a cause; provided, however, that Consultant shall have a reasonable period of time within which to make such replacement.

    1.4   Promptly after the parties have finalized the Work to be performed by Consultant under the applicable Statement of Work ("New Work"), Consultant agrees to review such New Work, in consultation with PFIZER, in view of any Work that Consultant has already agreed to perform or completed under prior Statements of Work hereunder ("Prior Work"). If PFIZER determines in its sole and exclusive discretion that such New Work is substantially similar to or duplicative of any Prior Work, Pfizer may elect to either (i) abandon the request for New Work, provided written notification is delivered to Consultant prior to start of work or (ii) approve the applicable Statement of Work, agreeing to purchase New Work as outlined (the "Initial Election"). Notwithstanding the foregoing, if after completion of the New Work the parties mutually agree that such New Work is duplicative of Prior Work and such duplication did not in any way arise out of or result from changes to the New Work requested by PFIZER after the Initial Election, PFIZER shall not be responsible for paying Consultant for such New Work.

1

2. **Relationship of the Parties**

2.1    Consultant acknowledges that it is being engaged to perform the Work as an independent contractor, and not as an employee, agent, or partner of PFIZER. As such, Consultant will not participate in any PFIZER employee benefit plans, including but not limited to workers' compensation, unemployment insurance, and any other benefits that may be available to PFIZER's employees. Each party represents and warrants to the other party that (a) it does not have the power or authority to bind the other party or to assume or create any obligation, express or implied, on the other party's part or in the other party's name, and (b) it will not represent to any person or entity that such party has such power or authority.

3. **Immigration Status**

3.1    As an independent contractor, Consultant is solely responsible for verifying the work authorization status of the Consultant and its employees. Consultant represents and warrants to PFIZER that Consultant and its employees are authorized to work in the United States and further, are not acting and will not act during the term of this Agreement in violation of the Immigration Reform and Control Act of 1986 and its amendments and the regulations thereunder.

4. **Premises and Equipment**

4.1    Consultant and its personnel who come on the premises of any PFIZER facility to perform Work shall comply with the reasonable security and workplace policies and procedures in effect for such facility for the duration of the performance of such Work; provided, however, that all such policies and procedures, and all subsequent amendments thereto, shall be made available to Consultant, upon request, in writing promptly after the effective date thereof and, in any event, prior to Consultant and its employees commencement of such Work. All Work performed at a PFIZER facility shall be limited to PFIZER's standard operating hours (Monday through Friday, 7AM to 7PM, excluding holidays), unless otherwise agreed in advance by an authorized PFIZER representative.

4.2    Consultant will supply, at its sole expense, all equipment, tools, materials, and supplies to perform the Work, unless otherwise agreed to in writing by the parties, and all the foregoing is and shall remain the sole property of Consultant. If access to PFIZER's computer systems or other equipment is required in order for Consultant to perform the Work: (a) such PFIZER equipment shall be used solely to perform the Work, (b) access to PFIZER's equipment shall be restricted to Consultant's personnel who need access in order for Consultant to fulfill its obligations hereunder, and (c) Consultant shall ensure that its personnel do not attempt to break PFIZER's security systems, or attempt to obtain access to any programs or data beyond the scope of the access granted by PFIZER in writing prior to commencement of any such Work.

2

5. **Term; Termination**

5.1     This Agreement shall be effective as of the date first set forth above ("Effective Date") and shall remain in effect for a period of three (3) years, unless terminated earlier in accordance with Section 5 ("Initial Term"). Thereafter, this Agreement may be extended by mutually agreed to written agreement executed by both parties no less than thirty (30) days prior to the expiration of the Initial Term or applicable Renewal Term, for successive one (1) year terms (each a "Renewal Term") (the Initial Term and any Renewal Terms, collectively, the "Term") unless this Agreement is terminated earlier in accordance with this Section 5. To the extent any Statements of Work under this Agreement are still pending at the end of the Term and unless otherwise agreed by the Parties, this Agreement shall continue solely as to such Statements of Work until the termination or expiration thereof.

5.2     PFIZER shall have the right to terminate a Statement of Work and cancel all Work contemplated thereunder, without cause, at any time (i) on two (2) weeks' prior written notice; provided, however that the foregoing notice in clause (i) shall apply only to the extent of any one-time deliverables provided in connection with such Statement of Work and (ii) on ninety (90) days' prior written notice; provided, however, that the foregoing notice in clause (ii) shall apply only to the extent of any monthly, quarterly, or other ongoing deliverables provided in connection with such Statement of Work. Upon receipt of notice of any such termination, Consultant will discontinue Work on that date and to the extent specified in the notice with respect to such Statement of Work. In such case, PFIZER will make Payments and reimburse expenses for Work performed in accordance with the terms thereof up to the date of termination. In addition, in connection with any termination by PFIZER pursuant to this Section 5.2, PFIZER shall promptly pay Consultant a termination fee if agreed to and specified in the applicable Statement of Work.

5.3     Each party shall have the right to terminate this Agreement or any Statement of Work immediately for material breach thereof by the other party on written notice thereto; provided, however, that, prior to any such termination, the non-breaching party shall provide the breaching party written notice of any such breach and the breaching party shall have thirty (30) days after its receipt thereof to cure such breach. In such case, the non-breaching party will incur no liability for Work not performed or paid for in accordance with the terms and conditions set forth in the applicable Statement of Work.

5.4     In the event of any termination by PFIZER under Section 5, Consultant will assemble and turn over in an orderly fashion to authorized representatives of PFIZER all documents, write-ups, notes, computer programs, and other material related to the Work, but only to the extent that (i) any of the foregoing constitutes PFIZER Property as defined hereinbelow and (ii) PFIZER has made all Payments and paid all Consultant's reimbursable expenses associated with such Work in accordance with the provisions hereof. In the event of any expiration or termination of this Agreement, PFIZER shall promptly return, or at Consultant's election, destroy, any and all of Consultant's Confidential Information furnished to or acquired by PFIZER hereunder and shall certify in writing to Consultant that such return or destruction has been completed.

3

6. **Payments and Expenses**

6.1    Upon "Delivery of Completed Work" (as defined in the applicable Statement of Work) to PFIZER, PFIZER will pay Consultant for its services as set forth in the applicable Statement of Work (referred to as "Payments"). Consultant is responsible for payment of any out-of-pocket business expenses associated with the performance of all Work, unless otherwise agreed to in writing in advance by both parties. If agreed to by the parties in writing, PFIZER will reimburse agreed upon out-of-pocket expenses incurred by Consultant, at no mark-up, including travel as set forth in Exhibit C (referred to as "Consultant Travel Policy"), within thirty (30) days of PFIZER's receipt from Consultant of original documentation, or accurate and legible copies thereof, supporting such out-of-pocket expenses.

6.2    As an independent contractor, Consultant's fees and expenses will be limited to the Payments and reimbursable out-of-pocket expenses set forth in the Agreement and/or applicable Statement of Work. Additional services not directly covered under this Agreement must be approved by PFIZER and covered under a separate addendum under this Agreement pursuant to Section 16.2.

7. **Taxes**

7.1    Payments to Consultant for Work rendered shall be made in full as agreed. In addition, any taxes that may be due and payable as a result of the Payments herein by PFIZER to Consultant (including, without limitation, sales, use, excise, value-added, goods and services, and other similar taxes or duties, but exclusive of taxes based on Consultant's net income, employment taxes of Consultant's employees, and taxes on any property Consultant owns or leases) shall be paid by Consultant and passed through to PFIZER at no mark-up for payment by PFIZER to Consultant. Consultant represents and warrants that it shall pay all taxes for which Consultant may be liable on such Payments when due.

8. **Conflicting Interests**

8.1    It is understood that, in general, Consultant is providing and making its services, including, without limitation, services of the same or similar type as the Work, available to others simultaneously and that Consultant is free to accept or reject any further assignment that PFIZER may offer Consultant; provided, however, that the Consultant may not, during the term of this Agreement, undertake any work, projects, assignment or engagement that conflicts with any agreement, commitment, or undertaking made with or to PFIZER hereunder. Each party represents and warrants to the other party that the performance of such party's duties and obligations hereunder in no way conflicts or shall conflict with any other agreement, commitment, or undertaking that such party may have entered into prior to, or will enter into during, the term hereof.

9. **Intellectual Property**

9.1    The Consultant agrees to disclose to PFIZER any data or analysis generated or derived by Consultant solely as part of the Work performed by Consultant hereunder in accordance with the provisions of the applicable Statement of Work. The Consultant further agrees that the entire right, title and interest in and to any and all such analysis and data shall be the exclusive property of PFIZER (collectively, "PFIZER Property'), and that at the reasonable request of and without charge to PFIZER, but at PFIZER's expense, Consultant will execute a written assignment of the same to PFIZER and will assign to PFIZER any application for letters patent or for trademark registration made thereon, and to any common law or statutory copyright therein, and that Consultant will do whatever may be reasonably requested by PFIZER to enable PFIZER to secure any patent, trademark, copyright, or other property

4

right therein in the United States and in any foreign country, and any division, renewal, continuation in part thereof, or for any reissue of any patent issued thereon.

9.2    PFIZER will be or will be made the sole and exclusive owner of any such PFIZER Property and any patent rights therein, trademark, copyrightable material and any copyright therein. Consultant will execute such documents and take any other action as may be reasonably requested by PFIZER to establish, register, record or otherwise document PFIZER's exclusive ownership therein in the United States and foreign countries, at PFIZER's expense. Consultant will cause any Third Party it may engage pursuant to Section 15 to do the same.

9.3    Notwithstanding the foregoing in Sections 9.1 and 9.2, PFIZER acknowledges that Consultant possesses certain inventions, processes, know-how, trade secrets, data compilations, other intellectual properties, and other assets, including but not limited to analytical methods, procedures, and techniques and computer technical expertise and software, which have been independently developed or obtained by Consultant and which relate to its business or operations, including without limitation, the Licensed Products and any technology, software, and systems that are developed or used by Consultant in its performance under this Agreement, and all intellectual property rights associated therewith (collectively, the "Consultant Intellectual Property"). PFIZER and Consultant agree that all Consultant Intellectual Property or improvements thereto which are used, improved, modified, or developed by Consultant under or during the term of this Agreement are and shall remain the exclusive property of Consultant. PFIZER and Consultant further agree that PFIZER Property shall not include any Consultant Intellectual Property.

## 10.    Publications; Publicity

10.1    Consultant shall obtain PFIZER's prior written approval for any presentation or publication relating to this Agreement and Consultant's Work hereunder or to information disclosed to Consultant by PFIZER in connection herewith, both as to content and time of publication or presentation, but only to the extent that such publication or presentation relates to PFIZER Property or PFIZER Confidential Information. PFIZER, in its sole discretion, shall have the right to withhold or deny such approval. To the extent agreed upon in the applicable Statement of Work, PFIZER shall submit to Consultant for its prior written approval all advertisements and promotional pieces (electronic or print) for or concerning the Work or Consultant. Except as otherwise required by applicable law, neither party shall refer to the other party in advertising, promotional activities, or other public disclosures or announcements without such other party's prior written consent, which shall not be unreasonably withheld, conditioned, or delayed.

## 11.    Confidentiality

11.1    Neither party shall use, other than as permitted, and in the course of its performance, hereunder, or disclose to third parties, except to such party's consultants who (i) are hired or retained in connection with Work to be performed; (ii) have the need to know in connection therewith; and (iii) are bound in writing by confidentiality obligations and use restrictions at least as restrictive as those imposed on such party hereunder, any confidential information, knowledge, or property of the other party which is furnished to or acquired by such party in the course of its performance under the Agreement and, only to the extent required in the applicable Statement of Work, is clearly identified as "Confidential", except for any of the foregoing previously known to such party, known or used by the general public, or developed by such party independent of the foregoing ("Confidential Information"). Consultant will take all precautions necessary to safeguard the PFIZER Confidential Information with the same degree of care it holds its own confidential information.

5

11.2    Inasmuch as the Consultant during the course of its performance of Work for PFIZER may acquire certain PFIZER Confidential Information, Consultant agrees that, during his/her performance of Work for PFIZER and thereafter, he/she will not, without PFIZER's written permission, disclose to any third party, or use any such PFIZER Confidential Information, other than in the course of his/her performance of Work for PFIZER.

11.3    Notwithstanding any other provision of this Agreement, to the extent Nonpublic Personal Information is, either intentionally or unintentionally, disclosed to or otherwise obtained by Consultant in connection with the matters contemplated by this Agreement, Consultant will keep such Nonpublic Personal Information strictly confidential and strictly limit its use of such information to the purposes contemplated by this Agreement. Consultant agrees that PFIZER shall have the right to conduct a review of the procedures used by Consultant to maintain the confidentiality of such Nonpublic Personal Information. For the purposes of this provision, the term "Nonpublic Personal Information" is defined as any non-public personally identifiable financial or health information of an individual, including, but not limited to, PFIZER's customers or employees.

11.4    If any of PFIZER's Confidential Information must leave PFIZER's premises (through the mail, magnetic tape, line transmission or any other communication media) in order for Consultant to perform the Work, Consultant will use, and will cause its personnel to use, the highest degree of care to safeguard such information from intrusion, tampering, theft, loss, and breaches of confidentiality. In no event shall Confidential Information be removed or transmitted from PFIZER's premises without, in each case, PFIZER's express prior written consent.

11.5    The obligations of the Consultant set out herein shall survive the termination of this Agreement regardless of the cause of termination. In addition to any other right or remedy available to PFIZER, the Consultant agrees that PFIZER shall be entitled to seek injunctive relief to enforce the provisions of this clause.

11.6    PFIZER shall have the same duties and obligations with respect to the confidentiality and restricted use of Consultant's Confidential Information as those imposed hereunder on Consultant with respect to PFIZER's Confidential Information.

## 12.    Insurance

12.1    Consultant acknowledges that, as between PFIZER and Consultant, since Consultant is an independent contractor, any personal injury or property damage suffered by Consultant in the course of carrying out any obligations under this Agreement will be Consultant's sole responsibility but only to the extent that such injury or damage does not arise from or relate to the negligent act or omission, intentional or willful misconduct, or breach of this Agreement by PFIZER or its employees, agents or other representatives in which case Pfizer shall be fully responsible and liable therefor. No workers' compensation insurance shall be obtained by PFIZER concerning Consultant or any of its employees. Consultant will comply with workers' compensation laws and will provide to PFIZER a certificate of workers' compensation insurance, upon PFIZER's reasonable request.

12.2    Consultant shall provide and maintain insurance coverage in minimum types and amounts as described below. All deductibles for such insurance policies shall be assumed by, for the account of, and at Consultant's sole risk. Such insurance policies shall be primary and non-contributing with respect to any other similar insurance policies available to Client or its Affiliates. Except for Workers Compensation/ Employers' Liability and Professional Liability/Errors & Omissions insurance, all such policies shall include Client and its Affiliates and any other such entities as Client may reasonably request, as additional insureds. All such polices shall provide a waiver of subrogation in favor of Client and its Affiliates. The insurance required hereunder shall be written for not less than any limits specified herein or as required by law, whichever is greater, including, without limitation, the following:

(a)   Workers' Compensation and Employer's Liability:

(i)   Statutory limits of all claims under the applicable State Workers' Compensation Act or Acts;
(ii)  Employer's Liability Insurance: $1,000,000 covering all claims by or in respect to the employees of Vendor and all of its subcontractors;

(b)   Commercial General Liability insurance with the following limits and forms/endorsements (these limits may also be satisfied through an Excess Policy as described below, provided that the total of primary and excess limits is not less than $7,000,000 total):

Each Occurrence:      $2,000,000
Aggregate:            $2,000,000

(c) Umbrella (Excess) Liability Coverage (follow form): $5,000,000 per occurrence.

Consultant shall furnish to Client copies of certificates and additional insurance endorsements evidencing the specified insurance coverage upon Client's request. Such certificates shall provide that not less than (30) days' prior written notice of any policy cancellation or material change shall be given to Client.

## 13.    Warranties and Limitation of Liability

13.1    Warranties.

(a)    Consultant represents and warrants that all services provided to PFIZER during the Term of this Agreement in connection with Work will be performed in accordance with the provisions of Section 1.1 hereof and shall conform in all material respects to the description, if any, specified in the corresponding Statement of Work.

(b) If Consultant, in its sole discretion, determines that any data transmitted or to be transmitted under this Agreement requires modification to comply with applicable law, including, without limitation, the Privacy Rule, then as a condition to continued performance hereunder, the parties will enter into any agreements reasonably deemed necessary by the parties to ensure full compliance with such applicable laws.

(c) NOTWITHSTANDING ANY PROVISION IN THIS AGREEMENT TO THE CONTRARY AND EXCEPT AS EXPRESSLY PROVIDED IN ANY STATEMENT OF WORK, ALL CONSULTANT WARRANTIES SHALL TERMINATE AND CEASE TO BE EFFECTIVE TWO (2) YEARS AFTER THE DATE THE CORRESPONDING LICENSED PRODUCT IS DELIVERED TO PFIZER.

13.2    Limitation of Liability.

(a) IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS OR REVENUE, LOST SAVINGS, LOSS OF USE OF THE LICENSED PRODUCTS, BUSINESS INTERRUPTION, OR COST OF SUBSTITUTED FACILITIES, EQUIPMENT, OR SERVICES, WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND WHETHER ANY CLAIM FOR RECOVERY IS BASED ON THEORIES OF CONTRACT, NEGLIGENCE, OR TORT (INCLUDING STRICT LIABILITY); PROVIDED, HOWEVER, THAT THE FOREGOING SHALL NOT APPLY TO EITHER PARTY'S INDEMNIFICATION OBLIGATIONS HEREUNDER.

NOTWITHSTANDING ANY OTHER PROVISION HEREOF, IN NO EVENT SHALL CONSULTANT'S AGGREGATE LIABILITY TO PFIZER COLLECTIVELY IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, REGARDLESS OF THE FORM OF CLAIM OR ACTION, EXCEED AN AMOUNT THAT IS THE LESSER OF EITHER (I) TWO (2) TIMES THE TOTAL AMOUNT PAYABLE BY PFIZER TO CONSULTANT (EXCLUSIVE OF PASS-THROUGH EXPENSES) AS SPECIFIED UNDER THE APPLICABLE STATEMENT OF WORK OR (II) $3,000,000.

**14.    Indemnification**

14.1    Consultant will indemnify, defend and hold PFIZER harmless from and against all third party claims, suits, actions, and demands (including, without limitation, liabilities, losses, injuries, damages, costs, expenses, and reasonable attorney fees) (collectively "Liabilities") based upon or arising out of any breach by Consultant of any of its covenants or agreements hereunder, except to the extent arising from the negligent act or omission or intentional or willful misconduct of PFIZER or its directors, officers, employees, agents, or other representatives.

PFIZER will indemnify, defend and hold Consultant harmless from and against all liabilities based upon or arising out of any breach by PFIZER of any of its covenants or agreements hereunder, except to the extent arising from a negligent act or omission or intentional or willful misconduct of Consultant, or its directors, officers, employees, agents, or other representatives.

14.2    Consultant's obligation to indemnify PFIZER, as set forth in Section 14.1, will include but not be limited to fines, penalties and any attorney's fees incurred because Consultant or its employees are not authorized for work in the U.S. and are in violation of the Immigration Reform and Control Act of 1986 and its amendments and the regulations thereunder.

14.3    The indemnified party under Section 14 shall provide the indemnifying party prompt written notice of any Liability for which such indemnified party will seek indemnification hereunder, and such indemnifying party shall have sole control over any defense or settlement thereof; provided, however, that the indemnified party (i) shall provide assistance as reasonably requested by the indemnifying party in connection with any such defense or settlement and (ii) shall have the right to retain its own counsel at its own expense in connection therewith.

## 15.    Use of Non-Employees

15.1    Consultant may use freelance, non-employees or subcontractors ("Third Party") to perform part of the Work; provided, however, that (a) Consultant obtains PFIZER's consent in writing before retaining such Third Party; (b) PFIZER may at any time request the immediate replacement of any such Third Party, without stating a cause thereof; and (c) the cost of any Third Party retained by Consultant will be borne solely by Consultant and will not be an out-of-pocket expense for purposes of this Agreement.

15.2    Consultant will secure written agreements with any Third Party it may engage, which agreements shall be consistent with the terms set forth in Sections 2 (Relationship of Parties), 3 (Immigration Status), 8 (Conflicting Interests), 9 (Intellectual Property), 10 (Publications; Publicity) and 11 (Confidentiality) of this Agreement.

## 16.    General Provisions

16.1    Entire Agreement.  This Agreement, including Exhibits A, B, and C referred to herein, and all Statements of Work hereunder, constitutes the entire agreement between PFIZER and Consultant relating to the subject matter hereof and supersedes any and all prior agreements, commitments, undertakings or understandings (whether written or oral) relating to the subject matter hereof.

16.2    Amendments.  This Agreement may be amended, supplemented or otherwise modified only by a written instrument duly executed by or on behalf of each party hereto.

16.3    No Further Obligations.  Each party acknowledges and agrees that, as of the Effective Date, the other party has not made any agreement, commitment or undertaking, or offered to such party any agreement, commitment or undertaking, (a) to perform any additional work for such party, (b) to make any other payments to such party, or (c) to enter into any other agreement, commitment or undertaking with such party.

16.4    Applicable Law.  This Agreement shall be interpreted in accordance with the laws of the State of Delaware, excluding its conflicts of law rules.

16.5    Severability.  If any term or provision of this Agreement or the application thereof shall be invalid or unenforceable, the remainder of this Agreement shall be unaffected thereby and each remaining term or provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law

9

16.6 Legal Authority. Each party represents and warrants to the other that it has the legal power and authority to enter into and perform under this Agreement without violating the rights or obtaining the consent of any third party.

16.7 Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.8 Survival. The provisions of Sections 3 (Immigration Status), 9 (Intellectual Property), 10 (Publications; Publicity), 11 (Confidentiality), 13.2 (Limitation of Liability), 14 (Indemnification), 16.4 (Applicable Law), and 16.8 (Survival), of the Agreement and Section 1.2 (Identifiable Data Protections) of Exhibit B, and any other provisions that shall survive as expressly stated herein shall survive the expiration or any earlier termination of this Agreement for a period of seven (7) years from the effective date.

16.9 No Waiver. The failure of either party to insist upon the strict observation or performance of any provision of this Agreement, or to exercise any right or remedy shall not impair or waive any such right or remedy in the future. Every right and remedy given by this Agreement to the parties may be exercised from time to time as often as appropriate. All remedies, either under this Agreement or by law or otherwise afforded, will be cumulative and not alternative.

16.10 No Assignments. Neither the rights nor the obligations of a party under this Agreement may be assigned or delegated, in whole or in part, without the prior written consent of the other party. Notwithstanding the foregoing, such consent shall not be required for any such assignment or delegation in connection with a change in control of such party or the sale of all or substantially all of the assets of such party related to the subject matter hereof. Any such assignment or delegation in contravention of this Section 16.10 shall be null and void and of no effect.

16.11 Notices: Unless otherwise indicated by this Agreement or by a Statement of Work referencing this Agreement, any notice required to be given by one party to the other shall be deemed effective on the date of receipt and shall be given either by a facsimile transmission that is mechanically dated as to the time sent and received or by certified mail, return receipt requested. Notices shall be given to:

Pfizer Inc.
235 East 42nd Street
New York, NY 10017-5755
Attention: Director of Global Sourcing (Marketing)

With a copy to:
Pfizer Inc.
235 East 42nd Street
New York, NY 10017-5755
Attention: General Counsel

To Verispan: Debbie Alcott and Angelica Girone
Verispan LLC
800 Township Line Road, Suite 125,
Yardley, PA 19067
Attention:

In WITNESS WHEREOF, this Agreement has been duly executed and delivered as of the effective date set forth above.

| VERISPAN | PFIZER INC. |
|---|---|
| *(signature)* Pete Castagna | *(signature)* Name: LISA MARTIN |
| Pete Castagna | |
| July 29, 2005 | Date: 8-4-05 |
| | *(signature)* 8/9/05 |

11