UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1629<br><br>Master File No.: 1:04-cv-10981-PBS<br><br>Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO:<br>ALL MARKETING AND SALES PRACTICES ACTIONS | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF AN ORDER GOVERNING THIRD PARTY DISCOVERY**

The Class Plaintiffs, Products Liability Plaintiffs and Coordinated Third Party Payor Plaintiffs (collectively, "Plaintiffs") respectfully submit this reply memorandum in further support of Plaintiffs' motion for entry of an Order Governing Third Party Discovery (the "Proposed Order").[1]

## ARGUMENT

### A.    Plaintiffs' Motion is Timely

#### 1.    Plaintiffs' Efforts to Avoid Motion Practice

On December 12, 2006, this Court issued Discovery Order No. 7 (Dock. No. 582), which ordered Defendants to provide—by December 28, 2006—"appropriate confidentiality agreements to plaintiffs' counsel" regarding the third party data at issue in this motion. Defendants failed to comply with that Order in two respects. First, Defendants only provided a proposed agreement for one of the three Third Party Data Vendors[2] prior to the Court-imposed deadline. Second, the one agreement Defendants did provide (relating to NDC Health) was a standard data-use licensing agreement, not an "appropriate confidentiality agreement" for purposes of litigation.[3]

On January 4, 2007, the parties conducted a meet and confer session to discuss their disagreements over the third party protective order. At the conclusion of the January 4, 2007

---

[1] Plaintiffs respectfully request that the Court enter an order: (1) adopting the terms of the Stipulation and Order Concerning Use of Third Party Data (attached as Exhibit 1 to the Declaration of Jeffrey D. Lerner, submitted in support of Plaintiffs' Motion); and (2) compelling IMS to produce the names of all doctors as they appear in IMS' responsive data.

[2] The Third Party Data Vendors include: IMS, NDC Health (also known as Wolters Kluwer) and Verispan LLC.

[3] For example, Defendants' sample agreement did not provide for using confidential materials at depositions or trial, challenging confidential designations, or filing confidential materials under seal. In fact, under the terms of the sample agreement, Plaintiffs' counsel could only share the data with their clients. Thus, no expert retained by the Plaintiffs would be able to even see the data provided by these three vendors.

1

meet and confer, Plaintiffs agreed—at Defendants' request—to draft a proposed protective order to comply with Discovery Order No. 7. On January 10, 2007, Plaintiffs provided Defendants with a draft of the Proposed Order, which is based almost entirely on the January 10, 2005 Stipulated Protective Order which was ratified by Judge Saris and which already governs this case. More than two weeks later, Defendants responded with a redline version of the Proposed Order that substantially deviated from the Protective Order.

Defendants informed Plaintiffs that their changes to the Proposed Order were directed by IMS and the other Third Party Data Vendors, and that those third parties would not agree to the Proposed Order drafted by Plaintiffs. Plaintiffs were surprised by this position, given that the new terms sought by IMS and the other vendors were not contained in the protective order that IMS had agreed to in the *Vioxx* litigation. However, in an effort to avoid motion practice, the parties engaged in two additional meet and confer sessions regarding the third party protective order. At one of those meet-and-confers, Plaintiffs learned of yet another unacceptable limitation—that IMS does not intend to provide Plaintiffs with prescriber-level data. This limitation was particularly surprising because Defendants have represented that NDC Health will provide prescriber-level data to Plaintiffs.[4] Thus, because the parties were unable to resolve *all* of their disputes, Plaintiffs were left with no option but to file the instant motion.

### 2. Plaintiffs Must Be Allowed to Challenge Confidential Designations

Incredibly, Defendants now argue that Plaintiffs' motion is somehow premature because of a last-minute offer made by the Defendants to provide the third party data for attorneys-and-experts-eyes-only, provided that the experts sign a document agreeing to keep the data confidential. As set forth below, this last ditch offer was simply too little, too late.

---

[4] Defendants represented that Verispan does not maintain prescriber-level data.

First, the record is clear that Plaintiffs have made every effort to reach an accord regarding the third party protective order, including drafting a proposed agreement (despite the Court's mandate in Discovery Order No. 7 that Defendants provide an appropriate agreement to Plaintiffs by December 28th) and conducting three meet and confer sessions on this topic. Defendants, on the other hand, blatantly failed to comply with Discovery Order No. 7, both in terms of failing to provide Plaintiffs with an appropriate agreement and failing to meet the Court's deadline for doing so. In fact, to this day, Plaintiffs have not received a proposed agreement for the Verispan data from Defendants. Defendants cannot seriously complain that Plaintiffs' motion is premature given the effort expended by the parties and the considerable passage of time between Discovery Order No. 7 (December 20, 2006) and the instant motion (January 29, 2007).

Second, given the other issues that Plaintiffs have with Defendants' proposed terms for the protective order, Defendants' recent offer to provide third party data for attorneys-and-experts-eyes-only will serve only to delay this process further. Defendants state that they "expect that (after reviewing the data) plaintiffs will have no basis to challenge the confidential nature of the documents sought from third-party vendors." (Defs.' Br. 3.)[5] If Plaintiffs do in fact disagree with the designations, however, Plaintiffs will have to move this Court—as they are now—on the next filing date for an appropriate order that would allow Plaintiffs to challenge Defendants' or the Third Party Data Vendors' confidential designations. Plaintiffs simply cannot agree to Defendants' attorneys-and-experts-eyes-only proposal and risk delaying the production of the third party data for at least another month.

---

[5] Defendants' proposal would also require Plaintiffs' experts to sign a certification before being shown confidential documents. The Proposed Order, however, would also require experts, and any other non-party, to sign a certification prior to looking at confidential documents.

3

Furthermore, Defendants completely ignore the fact that the Proposed Order, like the January 10, 2005 Stipulated Protective Order ratified by Judge Saris, will only allow for the de-designation of "confidential" documents if the Court finds that a document was improperly designated. If Defendants are confident that "plaintiffs will have no basis to challenge the confidential nature" of the third party data, then they should have no problem being bound by the Proposed Order, which will protect the confidentiality of the third party data if it is truly confidential.

It is noteworthy that Exhibit A to Defendants' Opposition Brief is a protective order that IMS agreed to be bound by in the *Vioxx* litigation. Interestingly, the *Vioxx* order does not limit the plaintiffs' ability to challenge the designation of confidential information by IMS. Rather, the order expressly provides that, "[a]ll provisions of the [pre-existing] Protective Order shall apply to documents designated 'IMS Confidential' to the same extent as to documents designated 'Confidential' under that order." (Defs.' Br. Ex. A.) All Plaintiffs are asking for here is that third party data marked 'confidential' be governed by the same terms as the existing Stipulated Protective Order, which allows Plaintiffs to challenge a confidential designation.

**B.    Plaintiffs Need Not Issue a Third Party Subpoena for Documents to Which Defendants Have Access**

Defendants argue that the Court cannot compel IMS to produce the names of 'non-identified' doctors because Plaintiffs did not serve IMS with a third party subpoena. Plaintiffs did, however, propound document requests on Defendants, to which Defendants are obligated to respond. Indeed, Plaintiffs did not subpoena IMS because Defendants' represented that they will produce the requested IMS data. (See November 13, 2006 Letter from Debbie MacGregor attached as Exhibit A to the Declaration of Ronald J. Aranoff, submitted herewith.) Thus, if Defendants have access to documents that Plaintiffs requested, they must produce them. In other words, if Defendants are in possession, custody or control of IMS data that includes doctors'

4

names, this Court can compel them to produce it. Similarly, if Defendants can get data with doctors' names from IMS pursuant to their agreement, they should be compelled to do so.[6]

Whether Third Party Data Vendors must be served with a subpoena is a red herring. In fact, this issue was never raised until Defendants filed their opposition to this motion (February 2, 2007), arguing, for the first time, that Plaintiffs should have served subpoenas on the Third Party Data Vendors for the information Plaintiffs are requesting. Defendants' position stands in stark contrast to the position they took earlier when they assured this Court that the Third Party Data Vendors would provide the requested information upon the entry of an "appropriate" protective order. At no point in the proceedings before this Court have Defendants suggested that Plaintiffs must issue subpoenas on the Third Party Data Vendors. Moreover, the assertion that Plaintiffs should be compelled to issue subpoenas now strikes of nothing more than additional delay tactics.

### C. Plaintiffs Have a Right to Use Confidential Information for "Any Purpose" at Trial Under the Protective Order

Defendants do not dispute—nor can they—that the proposed limitation on Plaintiffs' use of the Third Party Vendors' data to refreshing a witness' recollection is unduly restrictive and renders the data essentially useless. Instead, Defendants argue that the use-at-trial restriction was raised at the insistence of the Third Party Data Vendors. Regardless of who actually raised this issue, the protective order agreed to by IMS in one of the *Vioxx* litigations contains no use-at-trial restriction and therefore, no such restriction should be imposed here. (Defs.' Br. Ex. A.)

The proposed prohibition on Plaintiffs' ability to use the third party data at trial is exceedingly unreasonable and is tantamount to a non-production of the data. Plaintiffs will be

---

[6] In the alternative, if the Court decides that only the names of "identified" doctors will be produced, that list should include the names of all the doctors identified by the Products Liability Plaintiffs in both the MDL and New York Coordinated Litigation.

5

severely prejudiced if they are prohibited from introducing this data as evidence at trial because this information is evidence of how much Neurontin Defendants sold. Thus, at this juncture, Plaintiffs respectfully request that the Court enter the Proposed Order allowing Plaintiffs to use the third party data for any purpose. Defendants will have ample opportunity to file a motion *in limine* prior to trial should there be appropriate grounds to preclude the data from being used.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter the Proposed Order and compel IMS to produce the prescriber-level data as it appears in its responsive documents.

Dated: February 6, 2007                                        Respectfully Submitted,

By:     **/s/ Thomas Greene**
Thomas Greene Esquire
Greene & Hoffman
125 Summer Street
Boston, MA 02110

By:     **/s/ Barry Himmelstein**
Barry Himmelstein, Esquire
Lieff Cabraser Heimann &
Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By:     **/s/ Don Barrett**
Don Barrett, Esquire
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By:     **/s/ Daniel Becnel**
Daniel Becnel, Jr., Esquire
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

By:    **/s/ James Dugan**  
James Dugan, Esquire  
Dugan & Browne  
650 Poydras St., Suite 2150  
New Orleans, LA 70130

*Members of the Class Plaintiffs' Steering Committee*

By:    **/s/ Thomas M. Sobol**  
Thomas M. Sobol  
Hagens Berman Sobol Shapiro LLP  
One Main Street, 4th Floor  
Cambridge, MA 02142

*Plaintiffs' Liaison Counsel and Member of the Class Plaintiffs' Steering Committee*

By:    **/s/ Richard Cohen**  
Richard Cohen, Esquire  
Lowey Dannenberg Bemporad  
& Selinger, P.C.  
One North Lexington Avenue  
White Plains, NY 10601

By:    **/s/ Linda P. Nussbaum**  
Linda P. Nussbaum, Esquire  
Cohen Milstein Hausfeld & Toll  
150 East 52nd Street  
New York, NY 10022

*Members of the Plaintiffs' Non-Class Steering Committee*

By:    **/s/ Kenneth B. Fromson**  
Kenneth B. Fromson, Esquire  
Finkelstein & Partners  
436 Robinson Avenue  
Newburgh, NY 12550

*Counsel for Products Liability Plaintiffs*