IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BLUE CROSS AND BLUE SHIELD OF ALABAMA; )
MUNICIPAL WORKERS COMPENSATION        )
FUND, INC.,                           )
                                      )
         PLAINTIFFS,                  )
                                      )
                                      )
                                      )    CASE NO. 06-CV-524-MEF-VPM
VS.                                   )
                                      )
                                      )
PFIZER INC., ET AL.,                  )
                                      )
         DEFENDANTS.                  )


**PLAINTIFFS' MOTION TO REMAND TO STATE COURT
AND MEMORANDUM IN SUPPORT THEREOF**


Plaintiffs, Blue Cross and Blue Shield of Alabama and the Municipal Workers Compensation

Fund, Inc., move this Honorable Court to remand this action the Circuit Court of Montgomery

County, Alabama, and submit the following memorandum of law in support thereof:

This case should be remanded to the Circuit Court of Montgomery County, Alabama,

because this Court lacks subject matter jurisdiction over the action. Defendants' removal is without

merit and sought solely for the purpose of delay and illegitimate forum shopping.[1] Controlling and

---

[1]    *See* Plaintiffs' Motion for Expedited Consideration of Motion to Remand ("Motion for Expedited Consideration"), filed contemporaneously herewith. Plaintiffs expect Pfizer to seek to have this case transferred as a "tag along" action to the United States District for the District of Massachusetts, the MDL Court for Neurontin cases (MDL 1629), where the MDL court has stayed ruling on motions to remand. Motion for Expedited Consideration ¶¶ 4-5.

persuasive caselaw demonstrates the improvidence of Defendants' removal. Upon remand, an assessment of costs and attorneys' fees should be imposed against Defendants and in favor of Plaintiffs pursuant to 28 U.S.C. § 1447(c).

## NATURE OF THE STATE ACTION

Plaintiffs' Complaint was filed in the Circuit Court of Montgomery County, Alabama, on May 12, 2006. Both Plaintiffs are citizens of Alabama, and Defendant David Longmire is presently, and was at all material times, a citizen of Alabama. (Complaint ¶¶ 13, 16). There is, therefore, no basis for diversity of citizenship jurisdiction in this case. Pfizer[2] does not allege federal question as a basis for removal in this case. The Complaint asserts only state law causes of action, expressly stating that "any claims available to Plaintiffs under federal law are specifically disclaimed." (Complaint ¶ 19.)

Specifically, Plaintiffs bring claims for:

* violations of the Alabama Deceptive Trade Practices Act ("ADTPA"), Ala. Code § 8-19-1, *et seq.*, against all Defendants (Complaint ¶ 170 - ¶ 176);

* unjust enrichment against Pfizer and Fictitious Defendants only (Complaint ¶ 177 - ¶ 181);

* fraud, deceit and suppression against all Defendants (Complaint ¶ 182 - ¶ 188);

* negligent or wanton conduct against all Defendants (Complaint ¶ 190 - ¶ 194);

---

[2] Defendant Pfizer is a Delaware corporation with its principal place of business in New York. Defendant Warner-Lambert LLC is the successor to Defendant Warner-Lambert Company and was acquired, along with Defendant Parke-Davis, by Pfizer in June 2000. Prior to the acquisition, Warner-Lambert was a Delaware corporation with its principal place of business in New Jersey. (Complaint ¶ 14 - 15). All of these entities are collectively referred to as "Pfizer."

       *      negligence or wantonness per se against all Defendants (Complaint ¶ 195 - ¶ 201.);  and,

       *      conspiracy against all Defendants (Complaint ¶ 202 - ¶ 204).

Plaintiffs' claims arise from the wrongful schemes of all Defendants to sell and market Pfizer's drug Neurontin for a variety of uses for which it is not approved, medically necessary, or medically effective.  Neurontin was approved by the FDA in December 1993, only as adjunctive therapy in the treatment of partial seizures for patients with epilepsy, and only at doses ranging from 900 to 1800 mg/day. (Complaint ¶ 21).  On May 24, 2002, the FDA also approved Neurontin for the management of postherpetic neuralgia, which is pain resulting from nerve damage caused by shingles.

As alleged in greater detail in the Complaint, beginning in 1994, Pfizer deliberately decided to avoid FDA approval of Neurontin for certain "off-label" uses and doses and to market Neurontin off-label.  Because Pfizer was prohibited by federal regulations from direct off-label marketing through its sales force, it developed what it termed a "publication strategy," an illegal off-label marketing scheme to promote and sell Neurontin.  The scheme was to be implemented in part by manipulating publications and by paying doctor-spokespersons, like Defendant Longmire, to make misrepresentations and misleading statements to other physicians at events orchestrated by Pfizer. This strategy spread false and misleading information to the public, including Plaintiffs, regarding Neurontin's off-label uses.  (Complaint  ¶¶ 20 - 41). The  purpose of this scheme was to increase the number of prescriptions, and thus sales, of Neurontin.

Pfizer used medical liaisons like Defendant Longmire as a sales force to promote off-label uses of Neurontin. (Complaint ¶¶ 142 - 144).  Pfizer paid Defendant Longmire and other doctors

substantial fees and travel benefits for their work in increasing the number of Neurontin prescriptions. (Complaint ¶¶ 145 - 147). For example, Pfizer convened "consultants'" meetings as a method for funneling cash and other benefits to so-called "consultant" physicians, such as Defendant Longmire. Working with Pfizer, Longmire spread Pfizer's false and misleading information regarding the efficacy of Neurontin for off-label uses, (Complaint ¶¶ 148 - 156), and hid Pfizer's sponsorship, design and approval of seminars billed as bona fide continuing medical education seminars (Complaint ¶¶ 157 - 159). Pfizer would reward demonstrated Neurontin advocates, such as Defendant Longmire, with payments for supposed grants and "studies." (Complaint ¶¶ 160 - 165).

Longmire played an active, knowing, and willing part in Pfizer's off-label promotion scheme. (Complaint ¶¶ 41, 43, 47, 48, 52). He "wrongfully marketed, promoted and/or lectured regarding Neurontin and its uses," for off-label treatment in order to increase Pfizer's market share and profits from Neurontin. (Complaint ¶ 16). Specifically, Longmire made false and/or misleading statements as to the efficacy of Neurontin for pain at the Jupiter Beach, Florida Consultants' Meeting in April 1996. (Complaint ¶ 75). He later repeated these statements, that Neurontin was effective for the treatment of pain, at a May 1996 Consultants' Meeting at the Ritz Carlton in Boston. (*Id*).

At the Consultants' Meeting in Jupiter Beach in April 1996, Longmire made false and/or misleading statements regarding dosing for Neurontin. Longmire stated "most [patients] do better as you raise [the dose] higher." (Complaint ¶ 133). At the same presentation, and at other presentations, such as the Consultants' Meeting at the Boston Ritz Carlton, Longmire also stated that the only reason a patient who was actually taking his medication and not malingering would not receive any benefit from Neurontin was if he was not receiving a high enough dose. (*Id*). Longmire

4

made false statements such as: "the problem with Neurontin in terms of real trigeminal neuralgia is that it has to be titrated upward. And when I say 1500 milligrams, that's the target starting dose. There are colleagues in the Huntsville area who, I have people on 5400 with no side effects." (Complaint ¶ 134). Longmire was paid fees as well as extensive travel benefits by Pfizer for agreeing to engage in peer-to-peer selling of off-label Neurontin. (Complaint ¶¶ 142, 146, 151 - 154).

Pfizer also used its funding of supposed "studies" of little scientific use as a means for funneling payments to Longmire, including $7,000.00 for "Neurontin for Pain Reduction of Sympathetically Medicated Pain and Sudomotor Function," and $2,000.00 to Longmire for "Retrospective Analysis of Neurontin in the Treatment of Pain." (Complaint ¶ 163). These "studies" were not relied upon by Pfizer in its list of "studies relating to pain, pain syndromes, and psychiatric disorders" submitted to the FDA in June 1997. Pfizer intentionally failed to report these "studies" to the FDA because it knew the funded "research" had no scientific value and would not be deemed a scientific trial by the FDA. (Complaint ¶ 163).

As alleged in the Complaint, "Defendants [Pfizer **and Longmire**] made misrepresentations and omissions or suppressions of facts material to Plaintiffs' decisions to pay for Neurontin by, *inter alia*, . . . (b) providing or publishing, or causing to be provided or published, presentations and materials containing false and/or misleading information upon which physicians and Plaintiffs relied when choosing to prescribe or pay for Neurontin . . . ." (Complaint ¶ 183). "Plaintiffs reasonably relied upon Defendants' numerous misrepresentations and omissions of material fact," (Complaint ¶ 188), and "Defendants' misrepresentations and omissions of material fact directly and proximately caused Plaintiffs' damages." (Complaint ¶ 189).

5

In May 1994, before launching the off-label promotion scheme, Pfizer estimated that Neurontin's on-label ultimate sales potential was modest -- $500 million over the lifetime of the drug, based on Neurontin's narrow use for epilepsy adjunctive therapy. (Complaint ¶ 22).   After the off-label promotion scheme was implemented, from 1995 to 2003, Pfizer's revenues from the sale of Neurontin soared from $97.5 million to nearly $2.7 billion.  (Complaint ¶ 46). By 2003, 90% of all Neurontin prescriptions were for off-label uses.  (*Id.*)  Sales of the drug grew at a rate of 50% per year, fueled primarily by prescriptions written as a result of Longmire and other physicians' peer-selling and publication efforts.  (*Id.*)

Plaintiffs, payors for Neurontin[3], brought state law claims in Montgomery County Circuit Court against Longmire to recover monies they paid as a result of Longmire's knowing participation in Pfizer's off-label promotion scheme for Neurontin.   Pfizer's arguments that federal diveristy jurisdiction is conferred because Longmire is somehow fraudulently joined or should be re-aligned as a plaintiff are utterly without merit.

---

[3]  Federal and state payors for Neurontin under the Medicaid program have already been reimbursed by Pfizer as a result of the following actions:

In 1996,  Dr. David Franklin, a  former Pfizer employee, filed a sealed qui tam action alleging that Pfizer's knowing promotion of Neurontin for off-label uses caused false claims to be presented to the United States for prescription sales that were ineligible for Medicaid reimbursement and also caused payment of kickbacks in violation of Medicaid anti-kickback provisions.  (Complaint  ¶ 7). As a result of his lawsuit, the United States Attorney for the District of Massachusetts conducted an investigation and ultimately filed a criminal case against Warner-Lambert. (Complaint ¶  8). On May 13, 2004, the company pled guilty, was required to pay $240 million in fines, and the qui tam action was unsealed.  (*Id*).

The United States Attorney and several States' Attorneys General also opened civil investigations regarding Pfizer's marketing practices with regard to Neurontin.  (Complaint  ¶ 8-9). One group of Attorneys General and the National Association of Medicaid Fraud Control Units opened civil and criminal investigations against Pfizer for Medicaid fraud.  A second group of Attorneys General, including the Alabama Attorney General, investigated violations of state consumer protection laws that occurred when Pfizer promoted Neurontin for off-label uses. (Complaint ¶ 9). The federal qui tam civil investigation and the State Attorneys General's investigations settled at the same time.  Pfizer paid $190 million to resolve the pending civil investigations and investigations.  (Complaint ¶ 10).  The settlement itself made clear that claims brought by entities such as Plaintiffs are excluded from the settlement. (Complaint ¶ 11).

## ARGUMENT

This lawsuit has been improperly removed to this Court and should be remanded to the Circuit Court of Montgomery County, Alabama, where it was originally filed.  Contrary to the assertions in Pfizer's Notice of Removal, this Court lacks subject matter jurisdiction because there is not complete diversity in this action.  It is undisputed that this action raises no federal question.  Furthermore, Longmire is not fraudulently joined as a defendant and it is ridiculous to allege that his interests identically, or even predominantly, align with Plaintiffs'.

This is not the first time this Defendant has made such an argument in this Court. See *Roughton v. Warner-Lambert*, 2001 WL 910408 (M.D. Ala. Aug. 2, 2001), rejecting Defendant's arguments, and finding:

> Although Defendants are splenetic about litigating in this forum, Plaintiff has his right to choose his forum.  Our nation's dual court system operates under the presumption of parity, which this court is not free to question. Federal courts are tribunals of limited jurisdiction. Congress has plainly dictated that state law claims involving non-diverse defendants do not belong here.

Plaintiffs are due to be awarded their costs and actual expenses, including attorney fees,  resulting from this improper removal.

## I.     Defendants Bear a Significant Burden on Removal.

The standard for removal to federal court is stringent. Pfizer,  as the removing party, bears the significant burden of establishing federal jurisdiction over the litigation. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284 n.4 (11th Cir. 1998); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  Pfizer cannot meet this burden and this case should be remanded.

As this Court has stated:

> Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. Of Am.,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed. 2d 391 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Wymbs v. Republican State Executive Comm.*, 719 F. 2d 1072, 1076 (11th Cir. 1983). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *Kokkonen*, 511 U.S. at 377. **The party seeking removal has the burden of establishing that subject matter jurisdiction exists and removal is appropriate**. *See Burns*, 31 F.3d at 1095. **Because federal court jurisdiction is limited and removal jurisdiction raises significant federalism concerns, the Eleventh Circuit Court of Appeals has held that it favors remand of removed cases when federal jurisdiction is not absolutely clear, explaining that "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand**." *Id.*

*Poole v. American International Group, Inc.,* 2006 WL 623962, *1 (M.D. Ala. March 9, 2006) (Fuller, Chief Judge) (bold emphasis added); *see also Porterfield v. Flowers Baking Co. of Opelika*, 2006 WL 1147333, *1 (M.D. Ala. May 1, 2006) (quoting *Rayfield v. Nat'l Auction Group, Inc.,* 878 F. Supp. 203, 206 (M.D. Ala. 1995)) ("[B]ecause the removal statutes are strictly construed against removal, generally speaking, all doubts about removal must be resolved in favor of remand[.]")

It is "absolutely clear" that there is no federal jurisdiction. Therefore, remand is warranted.

## II.    Longmire is Not Fraudulently Joined.

Removal based on diversity of citizenship is not proper in this case. "The diversity statute confers jurisdiction on the federal courts in civil actions between citizens of different states, in which the jurisdictional amount of greater than $75,000, exclusive of interest and costs, is met." *Faulk v. SmithKline Beecham Corp.,* 2005 WL 2179773, *1 (M.D. Ala. Sept. 7, 2005) (Fuller, Chief J) (citing 28 U.S.C. § 1332(a)(1))).   "[A]ccording to the rule of 'complete diversity,' no plaintiff may share the same state citizenship with any defendant." *Id.*

8

As in *Faulk*, "from the present Complaint it appears that there is not complete diversity of citizenship in this case because [Plaintiffs and Longmire] are all residents of Alabama." 2005 WL 219773 at *2. As in *Faulk*, "Defendants argue that, due to the fraudulent joinder, the Court should disregard the citizenship of [Longmire] for purposes of diversity jurisdiction and conclude that complete diversity exists." *Id.* This Court should rule, as it did in *Faulk*, that Pfizer has not met its' "heavy" burden of proving by "clear and convincing evidence" that Longmire was fraudulently joined. *Faulk*, 2005 WL 2179773 at *2; *see also Poole v. American International Group, Inc.,* 2006 WL 623962, at *2 (M.D. Ala. March 9, 2006) (Fuller, Chief J); *Roughton v. Warner-Lambert Co.*, 2001 WL 910408, at *1 (M.D. Ala. Aug. 2, 2001) (DeMent, J.).

Pfizer bases its removal on one of three prongs of the Eleventh Circuit's test for fraudulent joinder.[4] Pfizer claims that there is no reasonable possibility that Plaintiff can establish any cause of action against Longmire. Whether "reasonable possibility" exists, however, is not the controlling standard in the Eleventh Circuit. There must be absolutely no possibility. As this Court has recognized, "there [must be] no possibility the plaintiff could establish a cause of action against [Longmire] in state court." *Poole,* 2006 WL 623962 at *3; *see also Faulk*, 2005 WL 2179773 at *2.

---

[4]     The Eleventh Circuit applies a three-fold test for determining whether a defendant has been fraudulently joined: the removing party must show either: (1) that there is no possibility that the plaintiff could establish a cause of action against the resident defendant in state court; (2) that the plaintiff fraudulently pleaded jurisdictional facts, or (3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several, or alternative liability and the claim has no real connection to the claim against the nondiverse defendant.

*Poole*, 2006 WL 623962, at *3 (citing *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998).

This is an extremely difficult test to meet. "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998) (emphasis in original).

      In assessing Plaintiffs' claims against Longmire, this Court must:

> evaluate the parties' factual allegations in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. *See* [*Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir. 1997)]. If there is a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder is proper and remand the case to the state court. *See Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir. 1987). **In other words, a motion to remand should be denied only if the court is convinced that there is "no possibility that the plaintiff can establish *any* cause of action against the resident defendant.** *See Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir. 1989).

*Faulk*, 2005 WL 2179773, at *2 (footnote omitted) (bold emphasis added; italicized emphasis in original); *see also Poole,* 2006 WL 623962 at *2.

      Pfizer asserts in its Notice of Removal that Plaintiffs' fraud claim against Longmire has not been pled with the requisite specificity because Plaintiffs have allegedly "failed to plead the 'time, place and purported contents of the false representations'" made by Longmire; that "Plaintiffs fail to allege with particularity how they relied on any fraudulent statements by Longmire;" and that "Plaintiffs have no reasonable possibility of prevailing on any of their claims against Longmire as they have to allege a causal link (an essential element of all of their claims) between Longmire's fraudulent and unlawful behavior and their purported payments for Neurontin prescribed for off-label uses." Notice of Removal at 6-7.

10

### A.    Plaintiffs Have Alleged Longmire Proximately Caused Plaintiffs' Damages

Defendants noticeably choose not to discuss the facts or elements of any of claims against Longmire under the Alabama Deceptive Trade Practices Act ("ADTPA"), common law negligence or wanton conduct, negligence or wantonness per se, and conspiracy.    A cursory review of these claims as pled in the Complaint shows that Plaintiffs have stated valid claims against Longmire under these theories.   Indeed, Defendants make only a passing, baseless accusation that Plaintiffs' inadequately alleged causation.

For every claim brought against Longmire, Plaintiffs have alleged that his acts and/or omissions were the proximate cause of Plaintiffs' damages.  *See e.g.,* Complaint, ADTPA Claim, ¶ 173 ("Defendants'[, Pfizer's **and Longmire's**,] commission of these acts or practices declared unlawful under the ADTPA caused monetary damage to consumers, as well as to Plaintiffs, in that both consumers and Plaintiffs were caused to pay for Neurontin when it was not medically necessary or effective for the condition for which it was prescribed."); Fraud, Deceit and Suppression, ¶ 189 ("Defendants'[, Pfizer's **and Longmire's**,] misrepresentations and omissions of material fact directly and proximately caused Plaintiffs' damages."); Negligent or Wanton Conduct, ¶ 194 ("As a proximate consequence of said [negligent and/or wanton] conduct [by Pfizer **and Longmire**], Plaintiffs have been caused to suffer injury and damages."); Negligence or Wantonness Per Se,  ¶ 201 ("Defendants'[, Pfizer's **and Longmire's**,] violation of the FDCA and related regulations proximately caused Plaintiffs injury and damages."; Conspiracy, ¶ 204 ("As a proximate consequence of said conspiracy and collusion among the named Defendants [Pfizer **and Longmire**] and/or among the named Defendants and unknown third parties, the Plaintiffs have been injured and damaged.")

11

For each claim against Longmire, therefore, Plaintiffs have alleged that Longmire's false and misleading statements about Neurontin's medical necessity and efficacy were intended to, and did, cause physicians to prescribe Neurontin for off-label uses, and thus proximately caused Plaintiffs to pay for Neurontin when it was not medically necessary or effective. Under Alabama law, Plaintiffs have more than sufficiently pled proximate cause. *Cf. U.S. ex rel. David Franklin*, 2003 WL 22048255 (D. Mass. Aug. 22, 2003) (rejecting a similar causation argument by Pfizer).

Thus, leaving the other aspects of the fraud claim aside, remand is warranted because Pfizer has failed to show that there is "**no** possibility that the plaintiff can establish *any* cause of action against the resident defendant." *Faulk*, 2005 WL 2179773 at *2 (bold emphasis supplied; italicized emphasis in original). As in *Faulk*, after review of the claims against Longmire, this Court "must conclude that in this case there is a possibility that the Plaintiff can establish at least **one** of his causes of action against [Longmire] ... the resident defendant." *Id.* (bold emphasis added). This action should be remanded on this basis alone.

**B.      Plaintiffs Have Adequately Alleged a Fraud Claim Against Longmire**

**1.      Plaintiffs Have Alleged Fraud With Particularity**

As to the fraud claim against Longmire, Defendants are similarly wrong that Plaintiffs have failed to plead it with the requisite particularity. As discussed above, the Complaint sets out, and in fact quotes, Longmire's misrepresentations at Consultants' Meetings in Jupiter Beach, Florida, in April 1996, and in May 1996, at the Boston Ritz. Date, content, and place of the misrepresentations are clear. *See In re Neurontin Marketing, Sales Practices, and Products Liability Litig.,* 2006 WL 1594082 at *8 (D. Mass. June 12, 2006) (affirming Magistrate's Report and Recommendation of January 31, 2006, at 39 - 40, attached hereto as Exhibit A, holding that such

12

statements pled fraud with particularity against Pfizer); *U.S. ex rel Franklin v. Parke-Davis*, 147 F. Supp. 39, 46 - 49 (D. Mass. 2001).

While Ala. R. Civ. P. 9(b) requires that "the *circumstances* constituting the fraud be pleaded, it does not require that each element of fraud be delineated." *Spry Funeral Homes v. Deaton,* 363 So. 2d 786, 789 (Ala. 1978) (emphasis in original). "According to the committee comments to ARCP 9: '*[The] special requirement[s]* as to fraud . . . *[do] not require every element . . . to be stated with particularity.*'" *Id.* (quoting Ala. R. Civ. P 9, cmt., Subdivision (b)) (emphasis in original opinion). When, as here, the defendant is reasonably apprised that the claim against him is one for fraud and the claim is more than a generalized or conclusory statement of the fraud complained of, the pleading satisfies the rule's requirements. Plaintiffs' Complaint clearly satisfies Rule 9. See, e.g., "Nature of the State Action" Section at 5-6, *supra*.[5]

**2.      Plaintiffs Have Alleged That Longmire Committed Fraud as an Agent of, or in Conspiracy With Pfizer**

In addition, Longmire has been sued as an "employee, agent, representative and/or independent contractor of Defendants Pfizer and Warner-Lambert." *Id.* ¶ 16. Plaintiffs also claim that Longmire conspired with Pfizer. Plaintiffs' agency and conspiracy theories against Longmire include allegations that he knowingly, and in bad faith, participated in Pfizer's schemes. These claims against Longmire require remand.

---

[5]As noted throughout the Complaint, without discovery and access to testimony and documents only in the possession of Defendants, "plaintiffs cannot catalog each and every misleading statement about Neurontin," (Complaint ¶ 74), and each and every claim they might have against Pfizer and Longmire. It is clear, however, that Plaintiffs have pled specific statements by Longmire at specified times, dates and place. Pfizer's arguments to the contrary are disingenuous.

In *Poole*, the plaintiff alleged that the resident defendant was an agent or employee of foreign corporate entities. This Court examined the fraud claim as to both defendants, and concluded:

> Given the Eleventh Circuit policy favoring remand of removed cases where federal jurisdiction is not absolutely clear, *Burns v. Windsor Ins. Co,* 31 F.3d at 1095, and the standard applicable in the fraudulent joinder context, this court cannot conclude that there is no possibility Plaintiff could not establish any fraud claim against any of the resident defendants in state court despite the defenses of the statute of limitations and alleged inability to establish reasonable reliance.

*Poole*, 2006 WL 623962, at *4. *See also Roughton v. Warner-Lambert, Co.,* 2001 WL 910408, *2 (M.D. Ala. Aug. 2, 2001) (no fraudulent joinder of in-state representative of nondiverse corporate defendant); *In re Pharmaceutical Industry Average Wholesale Price Litig.,* 2006 WL 1017683, *8 - 9 (D. Mass. April 14, 2006) (no fraudulent joinder of physician defendants with drug company; evidence physicians cooperating with plaintiffs to defeat removal failed to meet "clear and convincing" evidence of fraud or collusion in the joinder; Defendant failed to show no possibility of a claim against non-resident drug company and resident physicians alleged to have participated in conspiracy to damage Plaintiff).

The cases cited by Pfizer in support of removal are easily distinguishable, and, in fact, support Plaintiffs' request for a remand. *Wakeland v. Brown & Williamson Tobacco Corp.,* 996 F. Supp. 1213 (S.D. Ala. 1998), involved claims by a smoker against resident cigarette distributors and retail sellers of cigarettes and nonresident cigarette manufacturers. The court found that plaintiffs' negligence claim against both retailer and manufacturer defendants merged into their AEMLD

14

claim.[6]  The federal district court concluded that because defendant resident retailers did not undertake to test or inspect cigarettes for safety, nor require their suppliers to adhere to their own design or quality standards, defendants would prevail on their affirmative defense of lack of a causal relation under the AEMLD.

As to the *Wakeland* plaintiffs' fraud count, unlike the factual allegations of the complaint here, the court stated that "the complaint simply does not specify what affirmative misrepresentation *any defendant* – let alone any *distributor defendant* – is alleged to have made." *Wakeland*, 996 F. Supp. at 1221. Further, the court found that "any allegation that any seller of cigarettes actually made an affirmative misrepresentation understating the risks of tobacco smoking within the applicable limitations period simply defies common sense." *Id.*

Another case upon which Pfizer misplaces reliance is *Estate of Scott v. Scott*, 907 F. Supp. 1495 (M.D. Ala. 1995).  There, the court found that plaintiffs had not pled mail and wire fraud with particularity because "the complaint merely state[d] that '[t]he actions of the Defendant in using the United States mail and the telephone constituted violations of [the mail and wire fraud statutes].'" *Id.* at 1499.

Both *Wakeland* and *Estate of Scott* are a far cry factually from the present Plaintiffs' pleading.  The present Complaint does not contain AEMLD claims against Longmire, or, for that matter, Pfizer.  Even if such a claim had been pled, the relationship between Longmire and Pfizer is not analogous to a passive retailer-manufacturer.  Longmire is sued here for his own knowing,

---

[6] This ruling was later rejected by the Alabama Supreme Court on certified questions from the Eleventh Circuit in *Tillman v. R.J. Reynolds Tobacco Co.*, 871 So. 2d 28 (Ala. 2003), in which the Alabama Supreme Court held as follows: "We will not presume to so define the boundaries of the judicially created AEMLD so that it subsumes the common-law tort actions of negligence and wantonness against the retailer defendants." *Id.* at 34.

willful, and bad faith actions in participating with Pfizer in the illegal off-label marketing scheme. Plaintiffs have pled their claims against Longmire and Pfizer with particularity, specifically the misrepresentations made by Longmire. They have done much more than merely state that Longmire's actions constituted fraud.

### 3.      No Evidence Exists From Which to Find Fraudulent Joinder

Pfizer cites *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005) for the controlling standard. *Legg,* however, actually involved the standard for granting a motion for fees and costs on an improvident removal, and the court was careful to note that "28 U.S.C. §1447(d) bars our review of a remand such as this one based on lack of subject matter jurisdiction." *Id.* at 1320. Thus, any language in *Legg* relative to the remand proceedings is dictum and should not be given *stare decisis* weight by this Court. However, even consideration of the dicta in *Legg* supports remand here.

In *Legg*, Plaintiffs filed suit against Wyeth, a non-resident defendant, and three of its resident sales representatives, claiming that Wyeth's diet drugs had caused injuries to the plaintiff's heart. Wyeth removed the action, claiming that the resident sales representatives were fraudulently joined. In support of removal, Wyeth submitted an affidavit in which a sales representative testified that she had no knowledge that the diet drugs could cause heart damage. The plaintiff failed to rebut the testimony, but the district court refused to consider the affidavits, remanded the case to state court, and awarded fees and costs to the plaintiff. *Legg*, 428 F.3d at 1319.

The Eleventh Circuit held that the district court should have considered the affidavits. *Id.* at 1323. Relying on the undisputed affidavit testimony that the sales representative did not know or have reason to know of the drug's dangers, the court noted that the action should not have been

16

remanded because the resident sales representative was fraudulently joined. *Id.* at 1323 - 1325.[7] The court concluded, therefore, that attorneys' fees and costs should not have been awarded against Wyeth for the removal. *Id.* at 1325.

The Eleventh Circuit based its finding of fraudulent joinder not only on the fact that the sales representative's affidavit was unrebutted, but also on the fact that the sales representative had acted as an innocent conduit of information for Wyeth, not as an active participant in the fraud perpetrated on the plaintiff and his physician. *Id.* at 1324. The present case presents the opposite facts.

First, there is no affidavit or other competent evidence before this Court to support removal, as in *Legg*. Pfizer makes a naked claim of fraudulent joinder, and attaches a copy of a complaint that has been filed by Dr. Longmire against Pfizer in Franklin County, Alabama, in which Dr. Longmire seeks damages due, in large part, to his exposure to liability to the Plaintiffs here ("a certain insurance company and worker compensation fund"). Notice of Removal, Ex. B ("Longmire Complaint") at ¶ 31. Longmire claims in his complaint to have been an "unwitting pawn" in the same scheme described in Plaintiffs' Complaint. *Id.* ¶ 1.

Although Pfizer uses Longmire's complaint primarily in support of its specious realignment argument (addressed below), Pfizer's citation to *Legg* at least implies that it would use Longmire's complaint to show that he was merely an innocent conduit for Pfizer's scheme, and therefore not exposed to liability to the Plaintiffs. Pfizer's position is untenable on several levels.

---

[7] The Eleventh Circuit also stated in *dicta* that there was no claim for negligent misrepresentation under Alabama law. *Id.* at 1324. This is an erroneous interpretation of Alabama law. Alabama law is well settled that misrepresentations of material fact, even if made by mistake or innocently, constitute legal fraud. *See* Ala. Code § 6-5-101 (1975); *Thomas v. Halstead*, 605 So. 2d 1181 (Ala. 1993).

First, if Pfizer would have this Court accept the contentions in Longmire's complaint as true, then Pfizer must admit liability to Longmire. Short of that, Pfizer's attempt to use Longmire's complaint at all is fallacious.

Second, Longmire's complaint against Pfizer actually supports Plaintiffs' allegations against him. For instance, he alleges, among other things, that (a) he knew Neurontin was not approved by the FDA for the treatment of pain (Longmire Complaint ¶¶ 11, 17); (b) he knew that Pfizer had not applied to the FDA for such approval (*id.*); (c) he was paid by Pfizer to assist it in promoting Neurontin for off-label use (*id.* ¶¶ 18, 20) ; (d) he questioned whether such an arrangement was legal and ethical (*id.* ¶¶ 22-24); and (e) despite such questions, he carried out the promotion of off-label uses for Neurontin without consulting an attorney as to the legal ramifications of his actions (*id.* ¶ 25).

Clearly, Dr. Longmire was acting in a capacity far different from an uninformed sales representative and "personally participated in the tort," *Legg*, 428 F.3d at 1324 (quoting *Turner v. Hayes*, 719 So. 2d 1184, 1188 (Ala. Civ. App. 1997)), even if he claims to have not fully understood the ramifications of his actions. He admits in his complaint to having legal and ethical concerns about what Pfizer was asking him to do, but chose to take Pfizer's check instead of consulting a lawyer. Whether his reliance on Pfizer's "legal advice" can be considered reasonable is a question to be worked out in his claim against Pfizer. As for Plaintiffs' claims against Longmire, it is, and at the time of the removal of this action, was utterly impossible for Pfizer to show that Longmire was fraudulently joined, making removal clearly improvident.

18

### 4. Plaintiffs Have Alleged Reliance on Longmire's Misrepresentations

Incredibly, Pfizer further asserts that Plaintiffs have not alleged reliance on Longmire's misrepresentations. A cursory review of the complaint proves otherwise.

After alleging numerous specific misrepresentations made by Longmire, *see, e.g.,* Complaint ¶¶ 75, 133, 134, 163, Plaintiffs allege:

> Defendants [Pfizer **and Longmire**] made misrepresentations and omissions or suppressions of facts material to Plaintiffs' decisions to pay for Neurontin by, *inter alia*, . . . (b) providing or publishing, or causing to be provided or published, presentations and materials containing false and/or misleading information upon which physicians and *Plaintiffs relied* when choosing to prescribe or pay for Neurontin . . . .

(Complaint ¶ 183 (emphasis added)). Moreover, Plaintiffs also allege that "*Plaintiffs reasonably relied* upon Defendants' [Pfizer's **and Longmire's**] numerous misrepresentations and omissions of material fact." (Complaint ¶ 188 (emphasis added)). To assert that Plaintiffs have not alleged reliance on Longmire's misrepresentations, Pfizer has intentionally ignored the clear language of the Complaint in its improvident removal of this action.

For all of these reasons, Longmire has not been fraudulently joined, and Plaintiffs ask this Court to grant their Motion to Remand.

## III. Longmire Should Not be Re-Aligned by this Court as a Plaintiff.

Pfizer attempts to recast its fraudulent joinder argument as a misjoinder issue and asks this Court to re-align Longmire as a party plaintiff. Pfizer claims that Longmire's suit in the Circuit Court of Franklin County, Alabama, somehow demonstrates that in this suit in Montgomery County, Alabama, the "obvious 'primary and controlling matter' ... is a determination of whether the Removing Defendants created and/or orchestrated any such fraudulent and illegal marketing scheme and whether Plaintiffs or Longmire suffered any resulting damage." Notice of Removal ¶ 17. As

19

discussed throughout, Pfizer's characterization of Plaintiffs' lawsuit is disingenuous.  This action

is brought by Plaintiffs "to recover monies paid by Plaintiffs as a result of [Pfizer **and Longmire's**]

wrongful scheme to market and sell the drug Neurontin for a variety of uses for which it is not

approved, medically necessary, or medically effective." Complaint ¶¶ 1.  The fact that Longmire and

Pfizer may or may not have claims against each other is irrelevant or, at best, peripheral to this

dispute.

In *Weller v. Navigator Marine, Inc.*, 737 F.2d 1547, 1548 (11th Cir. 1984), the Eleventh

Circuit articulated the controlling legal standard:

> [W]e must 'determine whether there is an actual or substantial controversy between citizens of different states.' [*See, e.g., Indemnity Insurance Company of North America v. First National Bank at Winter Park*, 351 F.2d 519, 522 (5th Cir. 1965)]. We look to the true interest of the parties and the positions asserted by them before the district court in making this determination.

In order to be aligned, the interests must be "substantially identical."  *Id.*   Whether 'the necessary

collision of interests exists ... must be ascertained from the principal purpose of the suit" and the

"primary and controlling matter in dispute."  *Indemnity Ins. Co. of North Am. v. First National Bank*

*of Winter Park*, 351 F.2d 519, 522 (5th Cir. 1965).  Here, the principal purpose of the suit, and the

primary and controlling matter in dispute,  is a recovery of monies paid by Plaintiffs as a result of

Longmire's and Pfizer's wrongful off-label promotion scheme.

Longmire's interests collide with, are adverse and antagonistic to, and are in no way identical

to Plaintiffs' interests.  Claims of conspiracy and fraud against co-defendants do not reflect any

identity of interest between the defendant and a plaintiff.  Neither does a further claim by a defendant

that if he is liable to the plaintiff, then the co-defendant is liable to him. Pfizer's arguments to the

contrary are not supported by the facts of this case or the law.

20

Allegations of conspiracy and fraud between two defendants, as in the present case, by their very nature preclude re-alignment.  In *East Tennessee , V & G.R. Co. v. Grayson,* 119 U.S. 240, 7 S.Ct. 190, 30 L.Ed 382 (1886), John Grayson, a citizen of Alabama and a stockholder of Memphis & Charleston Railroad, a corporation with Alabama citizenship, sued the company and the East Tennessee, Virginia & Georgia Railroad Company ("ETVG RR"), a non-resident corporation. Grayson contended that the Alabama corporation had exceeded its corporate authority in leasing its railroad in a sweetheart deal to the ETVG RR for a period of twenty years.  Plaintiff Grayson claimed conspiracy and collusion between the two defendants.

The non-resident railroad filed a petition for removal to federal court.  The Supreme Court refused to re-align the Alabama railroad as a plaintiff along with its Alabama stockholder, stating "under these circumstances it is clear that the Memphis & Charleston Company is not a mere formal party, or a party in the same interest with Grayson, but is rightly and necessarily a defendant." *Id.* at 384.  Without complete diversity, the Supreme Court affirmed the order remanding the case to Alabama state court.

Likewise, in *Schetter v. Heim,* 300 F. Supp. 1070 (E.D. Wis. 1969), the court addressed re-alignment for jurisdictional purposes on motion to dismiss.  The plaintiff, Charles Schetter, owned several parcels of real estate, and alleged that his wife, Marcella Schetter, and defendant Laura Heim conspired to defraud him of the property and fraudulently induced him to convey and mortgage the property to them. Both Schetters were residents of Florida.  The court refused to re-align the parties and dismissed the complaint:

> The plaintiff has also urged the court to realign the parties so as to sustain diversity of citizenship jurisdiction. The alignment of parties as plaintiffs and defendants in the pleadings is not conclusive for the purposes of determining jurisdiction. Rather, in determining how

21

> parties to a lawsuit should be aligned for purposes of diversity, the courts look to the ultimate interests of the parties. Plaintiff contends that in as much as the plaintiff and one of the defendants, Marcella H. Schetter, were co-owners of the parcel of realty in question as well as husband and wife, Marcella H. Schetter should be realigned as a party plaintiff for purposes of jurisdiction. **I am of the opinion, however, that the ultimate interest of the defendant, Marcella H. Schetter, lies with her co-defendant Laura M. Heim, and not with her plaintiff-husband when it is alleged that she sought to defraud to the common profit of herself and her co-defendant.**

300 F. Supp. At 1072 (bold emphasis added). *Cf. Alexander v. Washington*, 274 F. 2d 349, 350 (5th Cir. 1960) (insane person joined as a defendant properly realigned as a plaintiff and case dismissed for lack of diversity jurisdiction; defendants claimed that "no conspiracy could possibly exist [between themselves and] Roosevelt Washington for the reason he was alleged to be non compos mentis throughout the events and period involved."). *See also Jordan v. Marks,* 147 F.2d 800 (5th Cir. 1945) ("the mere fact that certain parties who seek relief against each other make common cause against a third person who is also a party does not require them to be aligned as party plaintiffs.").

Further, Longmire's Franklin County lawsuit could have been brought in this Montgomery County case by way of cross-claim. There can be no misjoinder, and thus no need for realignment, when a cross-claim or counterclaim is available. *See Belcher v. Birmingham Trust National Bank*, 348 F. Supp. 61, 79 (N.D. Ala. 1968):

> Jurisdiction does not fail nor is realignment required because some of the cross-claims of the Trustee Bank are related to the wrongful transactions and occurrences upon which plaintiff relies in asserting that wrongs were committed to the trust estate and property by one or more of the individual defendants.

*Fancher v. Scott*, 369 F.2d 845 (5th Cir. 1966), illustrates this principle. The case involved a three truck collision: the Fancher truck, driven by a resident of Texas, with two trucks driven by

22

Oklahoma residents, Scott and Short. Short brought suit against Fancher and Scott in Oklahoma state court (OK v. TX & OK). Fancher filed suit in Texas federal court, alleging negligence against Scott and Short (TX v. OK & OK). Scott counterclaimed against Fancher (OK v. TX); Short counterclaimed against Fancher (OK v. TX), and cross-claimed against Scott (OK v. OK). The jury found Scott liable and absolved Fancher and Short. Scott appealed, claiming lack of diversity subject matter jurisdiction.

> Scott asserts that a proper alignment of the parties would cast Scott and Short as opposing parties because under no theory of the facts could Short have been at fault. Thus, he concludes, the district court was without jurisdiction because Short and Scott are both Oklahoma residents. Re-alignment of the parties is to be accomplished on the basis of the facts available at the commencement of the action. [F]ancher had charged both Scott and Short with negligence and at that time it could not be said that the allegations were baseless. Accordingly, no re-alignment was required.

*Fancher*, 369 F.2d at 842. Present Plaintiffs' claims against Longmire and Pfizer are not baseless, and Longmire's suit against Pfizer does nothing to change that. *See also, Correspondent Services Corp. v. First Equities Corp. Of Florida,* 338 F.3d 119, 124 (2d Cir. 2003) (crossclaim; no realignment); *Faysound Limited v. United Coconut Chemicals,* 878 F.2d 290, 295 - 96 (9th Cir. 1989) (no realignment; previous complaint between parties, clear they were "not partners in litigation"); *Mellon Bank v. Poling,* 2004 WL 1535799, at *4-5 (re-alignment denied, remand granted; among other things, co-trustee's separate state court lawsuit against plaintiff indicated interests might not be in complete alignment).

The cases cited by Pfizer are easily distinguishable as involving relationships between parties very different from Plaintiffs and Longmire. *Premier Holidays International, Inc. v. Actrade Capital, Inc.,* 105 F. Supp. 2d 1336 (N.D. Ga. 2000), involved the alignment of interests between

plaintiff Premier Holidays and its surety, Amwest, on a bond required by defendant Arctrade insuring a contract between Premier Holidays and Arctrade. Arctrade sued Premier and Amwest in New York federal court for breach of breach. Premier filed suit in Georgia state court for breach of contract and fraud against Arctrade and sued Amwest, seeking a temporary restraining order against its surety from paying defendant. Since the case involved the "threshold issue of liability" for breach of contract, the Court found that the interests of Premier and Amwest, its surety, were aligned: "if plaintiffs succeed in this litigation, defendant Amwest also succeeds as it will assert that it owes no money under the Bonding Agreement." 105 F. Supp. 2d 1336 (N.D. Ga. 2000). *See also U.S.F.& G v. Algernon-Blair, Inc.,* 705 F. Supp. 1507, 1513 (M.D. Ala. 1988) (contractor's surety filed suit against contractor and owner of apartment complex seeking declaratory relief; "primary dispute is the breakdown and eventual termination of the contractual relationship between [contractor] and the owner."); *Boland v. State Aut. Mut. Ins. Co.,* 144 F.Supp.2d 1282 (M.D. Ala. 2001) (owner of bowling alley sued insurer of premises for breach of contract and sued banks with mortgage on property listed as loss payees of the policies for declaration of rights; both mortgagee and mortgagor have same interest in primary dispute of whether or not insurer has an obligation to provide coverage for damages to property). Plaintiffs' adversarial relationship with Longmire is in no way analogous to that of a principal and surety, or a mortgagor and mortgagee. Stated differently, Plaintiffs' success on its claims against Pfizer does not involve success for Longmire on Plaintiffs' claims against him. There is no identity of interest, and this Court should remand.

## IV.     Plaintiffs Request an Award of Costs and Actual Expenses, Including Attorneys' Fees, on Remand.

Upon remand, Plaintiffs request an award of all costs and actual expenses, including attorney fees, incurred as a result of Defendants' improper removal. United States Code § 1447(c) provides

that a party who is successful in securing the remand of an action to state court may be awarded "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." As the Supreme Court recently explained in *Martin v. Franklin Capital Corp.,* 126 S.Ct. 704 (2005), "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorneys fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 711. "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Id.*

Pfizer's removal based on the fraudulent joinder of Longmire and re-alignment of Longmire as a plaintiff is objectively unreasonable. Pfizer's motive in seeking removal is to tranfer this case to the MDL court, where all remand motions are stayed, and this case will be delayed, vanishing into the black hole of the MDL proceeding quite possibly for years. The *Martin* court noted:

> [In enacting § 1447(c),] Congress thought fee shifting appropriate in some cases. The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduced the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff.

*Id.; see also Bauknight v. Monroe County, Florida,* 446 F.3d 1327, 1329 (11th Cir. 2006).

This tactic is highlighted given the clear lack of diversity between Plaintiffs and Longmire; the specificity of the Complaint as to the allegations against Longmire; the state of the law; the obvious adverse interests between Longmire and the Plaintiffs; and the fact that Pfizer addresses only the fraud claim in its Notice of Removal and ignores all other claims by Plaintiffs against Longmire. *See Vision Builders v. Board of Trustees of the Masonry Security Plan of Washington,* 2006 WL

120786, at *2 (W.D. Wash. May 3, 2006) (granting fees and costs on removal because "a desire to win divorced entirely from consideration of the relevant law is not an objectively reasonable basis for removal."); *Preferred Merchant Hood v. Family Dollar, Inc.,* 2006 WL 1139451, at *2 (D.N.H. Apr. 25, 2006) (granting fees and costs on removal where the facts "amply support the inference that the purpose of that tactic [the removal] was to delay the resolution of this matter."); *Divine v. Prison Health Services, Inc.,* 2006 WL 844302, at *1 (M.D. Fla. Mar. 10, 2006) (granting fees and costs on remand where "Defendants failed to establish a basis for federal jurisdiction and failed to sustain a claim for fraudulent joinder.").

On these circumstances, Plaintiffs ask this Court to exercise its discretion and award them just costs and fees on remand.

WHEREFORE, Plaintiffs respectfully request that this Court remand this action to the Circuit Court of Montgomery County, Alabama for lack of subject matter jurisdiction.

Respectfully submitted,

/s/ Pamela B. Slate
Pamela B. Slate (ASB-8938-A43P)
pslate@slatekennedy.com
Slate Kennedy LLC
166 Commerce Street, Suite 350
Montgomery, Alabama 36104
Phone: (334) 262-3300
Fax:    (334) 262-3301

OF COUNSEL:

Kimberly R. West (ASB-2419-E65K)
kw@wallacejordan.com
Wallace, Jordan, Ratliff & Brandt, LLC
P.O. Box 530910
Birmingham, Alabama 35253-0910

Phone:(205) 870-0555
Fax:    (205) 871-7534

Joshua J. Wright (ASB-4891-W51J)
joshw@hollis-wright.com
Hollis & Wright, P.C.
505 North 20th Street, Suite 1750
Birmingham, AL  35203
Phone:(205) 324-3600
Fax:    (205) 324-3636

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2006, I electronically filed the foregoing with the Clerk of the  United States District Court, Middle District of Alabama, using the CM/ECF system, which will send notification of such filing to the following:

Andrew Burns Johnson, Esquire
Brian A. Wahl, Esquire
Fred M. (Tripp) Haston, III, Esquire
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104

In addition, I hereby certify that notification of such filing has this date been served on the following by placing same in the U.S. Mail, postage prepaid and properly addressed to:

David Longmire
13150 Highway 143
Russellville, AL 35653

s/ Pamela B. Slate
Pamela B. Slate (ASB-8938-A43P)
pslate@slatekennedy.com
Slate Kennedy LLC
166 Commerce Street, Suite 350
Montgomery, Alabama 36104
Phone: (334) 262-3300
Fax:    (334) 262-3301