UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION ) ) ) ) ) | |
| THIS DOCUMENT RELATES TO: ) ) ALL MARKETING AND ) SALES PRACTICES ACTIONS ) ) | MDL Docket No. 1629 Master File No. 04-10981 Judge Patti B. Saris Mag. Judge Leo T. Sorokin |

**CLASS PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO IMS HEALTH INC.'S MOTION TO INTERVENE AND FOR PROTECTIVE ORDER**

The Class Plaintiffs (*Harden Manufacturing Corp., et al. v. Pfizer, Inc., et al.*) do not oppose the motion of IMS Health Inc. ("IMS") for permissive intervention under Federal Rule of Civil Procedure 24(b), for the limited purpose of seeking modification of the existing protective order.[1] Nor do Class Plaintiffs oppose two of the proposed modifications, specifically: (1) that portions of deposition transcripts which reflect IMS data designated "Confidential Information" be treated as confidential without the need for specific transcript designations; and (2) that IMS data may not be disclosed to its competitors. IMS's other two

---

[1] IMS seeks intervention only for this limited purpose, complaining of the "substantial burden" that would be required for it to "monitor depositions taken in the actions . . . ." Memorandum of Law in Support of IMS Health Incorporated's Motions to Intervene and for a Protective Order ("IMS Mem.," Dkt. No. 638) at 1-2. As the Court is no doubt aware, the filing and service of papers filed under seal imposes considerable logistical burdens on both the filing party and the Court. Accordingly, Class Plaintiffs respectfully request that any order granting intervention provide that the parties need *not* serve IMS with any pleadings or papers filed under seal, unless specifically requested to do so.

arguments — that it should not be required to produce prescriber level data except for a handful of physicians, and that its prescriber level data should only be used to refresh witnesses' recollections — were previously presented by Pfizer on IMS's behalf, and rejected by the Court. These arguments fare no better the second time around.

I.    **IMS'S PROPOSED LIMITATION ON PRODUCTION SHOULD BE REJECTED**

IMS complains that "only that data arguably involved in a given case [should be] produced in that case," and that data should only be produced "with respect to transactions at issue in the particular action." IMS Mem. at 2. IMS "does not dispute that certain IMS HEALTH information may be relevant to this litigation," and "does not object to Defendant's production of *relevant* data that are specifically tailored to this litigation," but requests "a protective order that limits the scope of the information produced to that which is related to this litigation . . . ." *Id*. at 14 (emphasis in original). IMS asks for an order providing that:

> Each Plaintiff shall limit their document requests as to IMS HEALTH information to call for only (a) IMS HEALTH information that relates to dispensing activities in the United States associated with Neurontin, aggregated or reported at a national level of geography and aggregated or summarized for one or more calendar years, and (b) doctor-level information for doctor(s) actually at issue in a particular case.

IMS Mem. at 17. IMS never identifies which specific provision(s) of its proposed protective order are designed to accomplish this objective, but it appears to be Paragraph 4, which provides, in its entirety, that "Defendants shall produce only such Third Party Data that is relevant to Neurontin and the prescribers of Neurontin that are involved in this Multi-District Litigation proceeding." [Proposed] Order Concerning Use of Third Party Data (Dkt. No. 640) ¶ 4.

The Court already rejected any such limitation in Discovery Order No. 9 (Dkt. No. 632), for reasons equally applicable here:

> One of the third parties [IMS] has objected to the producing

>prescriber level data. This information is relevant and material to this litigation. Defendants contend that plaintiffs must prove as to each prescription of Neurontin that the alleged fraudulent statements caused the prescriber to issue the prescription.

*Id*. at 2. IMS offers no compelling justification to depart from the Court's ruling.

First, as the Court observed, virtually *every* prescription for Neurontin for off-label uses is "at issue" in this litigation. Class Plaintiffs have sued on behalf of all consumers and Third Party Payers in the nation, seeking the purchase price of all off-label Neurontin prescriptions. Unless Defendants are willing to abandon their argument that Plaintiffs must show a causal link between each prescribing physician's exposure to Defendants' off-label marketing efforts and their Neurontin prescribing activity, Plaintiffs are entitled to this information.

Second, IMS protests that the information will be so widely disseminated amongst the Plaintiffs, their counsel, and their experts that it will damage IMS's business. As the Court found in rejecting this argument, the existing protective order "provides substantial and meaningful protection for confidential data . . . ." Discovery Order No. 9 at 1. IMS proudly states that its data is "widely used" by pharmaceutical companies, numerous state, federal and international agencies, and "medical and academic institutions throughout the country" (IMS Mem. at 4, 7), with the protection of nothing more than a boilerplate confidentiality agreement. In this litigation, by contrast, each page of IMS data will (presumably) be marked confidential, and handled primarily by attorneys who are painfully aware of the severe adverse consequences that may follow should they violate the Court's order, and, as to Class Plaintiffs, two respected experts accustomed to dealing with third party confidential information and required to sign an undertaking specifically agreeing to be bound by the order.[2] In short, IMS day-to-day operations are far more likely to result in unauthorized "leakage" of its proprietary information than this

---

[2] Class Counsel see little need to discuss specific IMS data with their clients.

litigation.

Third, the IMS data produced by Defendants will be anywhere from three to eleven years old (based on the 2004 discovery cutoff), and concerns a product that is now off-patent, and, for that reason, no longer actively marketed by Defendants. While this information may be essential to the prosecution of this litigation, its commercial value is negligible.

## II.     ADMISSIBILITY OF PRESCRIBER LEVEL DATA WILL BE DETERMINED LATER IN THE CASE

Next, IMS repeats the argument, made previously on its behalf by Defendants, that IMS's physician level data is unreliable, and should therefore only be used to refresh a witness' recollection.[3] As the Court ruled in previously rejecting the same argument by proxy:

> [O]ne of the third parties [IMS] demands that its data must be used only for refreshing the recollection of witnesses, but not substantive evidence. Apparently the third party takes this position because in its view, for a variety of different reasons, the data may not be sufficiently reliable for use in litigation. Whether the data satisfies the standards governing admissibility of evidence and, if so, the weight, if any, to be given the data as evidence are determinations to be made at a later stage of this case by the presiding judge and the finder of fact.

Discovery Order No. 9 at 2. The Court's holding is undoubtedly correct.

The fact that Defendants, including Pfizer, spent $1.96 billion for IMS data in 2006 (IMS Mem. at 5) speaks volumes about the value and reliability of this information. Indeed, as discovery in the *Franklin* case revealed, Defendants closely monitored the IMS prescriber level data to determine the success of their off-label marketing campaign, and to target individual physicians. Rule 703 of the Federal Rules of Evidence specifically provides that "the facts or data" relied upon by an expert witness "need not be admissible in evidence," so long as

---

[3] *See* Defendants' Opposition to Plaintiffs' Motion for Entry of an Order Governing Third-Party Discovery (Dkt. No. 625-1) at 2 ("Defendants (at the request of plaintiffs) have simply conveyed IMS' position on the permissible use of the data."), 5 ("defendants merely conveyed IMS' position to plaintiffs").

they are "of a type reasonably relied upon by experts in the particular field . . . ." Fed. R. Evid. 703. *See Trull v. Volkswagen of America, Inc.*, 187 F.3d 88, 97 (1st Cir. 1999); *Fiorentino v. Rio Mar Associates, LP, SE*, 381 F. Supp. 2d 43, 48 (D.P.R. 2005).  IMS establishes that its data is the best available, and that it is routinely relied upon by the government in determining public policy, and by pharmaceutical companies in managing their business.  Plaintiffs' experts should be given the opportunity to analyze the data and present their findings before the Court rules on this premature motion *in limine*.[4]

### III.  A NEW PROTECTIVE ORDER IS UNWARRANTED

Finally, the bulk of IMS's proposed order merely recites selected provisions of the existing protective order.  That order expressly provides that "[n]on-parties who are obliged in this litigation to provide discovery by deposition, production of documents or otherwise, may request the protection of this Order as to said non-party's own Confidential Information." Stipulated Protective Order (Dkt. No. 27) ¶ 15.  There is no need to enter a duplicative order; IMS's two legitimate requests can easily be accommodated by amendment of the existing order.  IMS's proposed order also goes too far, by purporting to apply to any "Third Party Data Provider" (a term it does not even purport to define).  At this point, only IMS has objected to the

---

[4] In addition, IMS's arguments that its data, for which Defendants paid dearly, are less than compelling.  First, IMS argues that pharmacists may erroneously enter the name of the first physician in a group practice rather than the actual prescribing physician, but IMS does not indicate the frequency of any such errors.  IMS Mem. at 10.  Indeed, given Defendants' peer-to-peer marketing efforts, which depend in part on the fact that physicians who practice together share information on off-label uses, such errors may well be irrelevant.  Second, IMS argues that pharmacists may enter only the prescribing physician's first initial and last name, and that even though IMS "employs sophisticated, proprietary algorithms to properly link this information," "errors do occur," but again without quantification. *Id*.  Third, IMS argues that "if a doctor has most of her prescriptions filled at unsampled pharmacies, there is a higher likelihood that the estimate for that doctor will be incorrect." *Id*.  As IMS itself states, it collects data from "70% of the 54,000 pharmacies in the Untied States, and applies patented, proprietary methodologies to estimate the remaining 30% of the market." Certification of Karrie M. Hontz, of IMS Health Incorporated (Dkt. No. 639) ¶ 4.

existing protective order.  Accordingly, any modifications should be limited to IMS.

Dated: March 5, 2007                              Respectfully Submitted,

>                              By:    /s/ Barry Himmelstein
>                                     Barry Himmelstein, Esquire
>                                     Lieff Cabraser Heimann &
>                                     Bernstein, LLP
>                                     Embarcadero Center West
>                                     275 Battery Street, 30th Floor
>                                     San Francisco, CA 94111-3339
>
>                              By:    /s/ Thomas Greene
>                                     Thomas Greene Esquire
>                                     Greene & Hoffman
>                                     125 Summer Street
>                                     Boston, MA 02110
>
>                              By:    /s/ Don Barrett
>                                     Don Barrett, Esquire
>                                     Barrett Law Office
>                                     404 Court Square North
>                                     P.O. Box 987
>                                     Lexington, MS 39095
>
>                              By:    /s/ Daniel Becnel
>                                     Daniel Becnel, Jr., Esquire
>                                     Law Offices of Daniel Becnel, Jr.
>                                     106 W. Seventh Street
>                                     P.O. Drawer H
>                                     Reserve, LA 70084
>
>                              By:    /s/ James Dugan
>                                     James Dugan, Esquire
>                                     Dugan & Browne
>                                     650 Poydras St., Suite 2150
>                                     New Orleans, LA 70130
>
>                              By:    /s/ Thomas M. Sobol
>                                     Hagens Berman Sobol Shapiro LLP
>                                     One Main Street, 4th Floor
>                                     Cambridge, MA  02142
>                                     Boston, MA 02110
>
>                              ***Members of the Class Plaintiffs'***
>                              ***Steering Committee***