# EXHIBIT H



### San Francisco Superior Courts
Information Technology Group

## Document Scanning Lead Sheet
Sep-14-2006 2:09 pm

Case Number: CGC-04-437382

Filing Date: Sep-14-2006 2:07

Juke Box: 001   Image: 01538491

ORDER

ELIZABETH ANN CONTE VS. WYETH, INC. D/B/A WYETH INDIVIDUALLY AND AS et

001C01538491

**Instructions:**
Please place this sheet on top of the document to be scanned.

FILED
San Francisco County Superior Court
SEP 1 4 2006
GORDON PARK-LI, Clerk
BY: _____ Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICION

| | |
|---|---|
| ELIZABETH ANN CONTE,<br><br>Plaintiff,<br><br>vs.<br><br>WYETH, INC., d/b/a WYETH, Individually, and as Successor-In-Interest to A.H.ROBBINS,, INC. and AMERICAN HOME PRODUCTS, CORPORATION; SCHWARZ PHARMA, INC.;, PLIVA, INC.; PUREPAC, PHARMACEUTICAL CO.; TEVA, PHARMACEUTICALS USA, INC.; DRUG, COMPANY DOES 1 THROUGH 6, Inclusive;, and ROBERT J. ELSEN, M.D.,<br><br>Defendants. | Case No.: CGC-04-437382<br><br>RULING ON PUREPAC'S MOTION FOR SUMMARY JUDGMENT |

This case arises from neurological injuries allegedly suffered by plaintiff due to overexposure to the prescription drug metoclopramide. Metoclopramide is a generic drug produced by Purepac Pharmaceutical Company ("Purepac"). It was prescribed to plaintiff for gastro esophageal reflux disease.

Plaintiff contends, among other things, that she was overexposed to metoclopramide due to Purepac's dissemination of false, misleading and/or materially incomplete information about the drug's side effects, including information contained in Purepac's "package inserts."

-1-

RULING ON PUREPAC'S MOTION FOR SUMMARY JUDGMENT

1  Specifically, plaintiff contends that Purepac failed to provide her with adequate warnings
2  regarding the risks and serious side effects from long-term ingestion of metoclopramide.
3      Defendant Purepac now moves for summary judgment, or in the alternative, summary
4  adjudication on plaintiff's 1st, 2nd, 3rd, 7th and 8th causes of action (First Cause of Action (Strict
5  Products Liability), Second Cause of Action (Negligence), Third Cause of Action (Negligence
6  Per Se), Seventh Cause of Action (Breach of Express Warranties) and Eight Cause of Action
7  (Breach of Implied Warranties) on the grounds that §505(j) of the Food, Drug and Cosmetic Act,
8  21 U.S.C. §355(j) ("FDCA"), as well as 21 C.F.R. §314.150 and other relevant FDA regulations,
9  rules and statutory authority preempt plaintiff's claims.
10     The essence of Purepac's argument is that plaintiff's California State law "failure to
11 warn" claims are preempted because federal law governs claims with respect to pharmaceutical
12 labeling. Purepac contends that State law "failure to warn" claims are preempted because they
13 necessarily conflict with federal law as compliance with those standards would require Purepac
14 to make labeling statements that differ, or add to, previously approved FDA labeling.
15     Specifically, Purepac contends that plaintiff's claims are preempted because: 1) the FDA
16 is the sole determiner of the adequacy of prescription drug warning labels under a comprehensive
17 statutory and regulatory scheme; and 2) because Purepac is not required to provide additional
18 labeling beyond that already provided because, as a generic drug manufacturer, Purepac is
19 required to label its drugs exactly the same as its name brand counterpart (in this case Reglan,
20 produced by co-defendant Wyeth.). Indeed, Purepac contends that federal law prohibits a
21 generic manufacturer from altering a brand name's labeling, and doing so would result in
22 Purepac's losing its authority to market the drug.
23     Essentially, Purepac argues that because it is a generic drug manufacturer, whose conduct
24 is governed by federal statutes, rules and regulations on the subject matter of the content and
25 form of its product labeling, it has no liability for the failure to provide additional labeling (even
26 if required by California law) beyond that approved by the FDA for brand name drugs. This is
27 because any additional labels required by California law would conflict with federal standards.
28     Accordingly, Purepac contends that plaintiff's State law claims fail as a matter of law

-2-

RULING ON PUREPAC'S MOTION FOR SUMMARY JUDGMENT

because state courts lack the authority, i.e., they are preempted under conflict preemption principles, from passing on the adequacy of prescription drug labels.

Plaintiff opposes this motion on the grounds that state personal injury law is not preempted by federal law because it supplements, rather than conflicts, with the FDCA and FDA regulations pertaining to the labeling and marketing of prescription drug products. As a result, plaintiff contends that preemption is not warranted and Purepac's motion should be denied.

A motion for summary judgment must be granted if all the papers submitted show there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Code Civ. Proc., §437c, subd. (c); *Raghavan v. The Boeing Co.* (2005) 133 Cal.App.4th 1120, 1132.

A defendant moving for summary judgment must show that either one or more of the elements of a cause of action cannot be established, or that there is a complete defense to that cause of action. Calif. Civ. Proc. §437c, subd (o)(1), (2). Once the defendant makes such a prima facie showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists within the framework of the issues as fixed by the pleading. *Lowe v. California League of Prof. Baseball* (1997) 56 Cal.App.4th 112, 122.

This means that where the plaintiff has the burden of proof, at trial, of a preponderance of the evidence, the defendant must present evidence that would require a reasonable trier of fact not to find the underlying material fact more likely than not. Otherwise, the defendant would be entitled to judgment as a matter of law, but would have to present defendant's evidence to a trier of fact at trial. *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851. The import of "more likely than not" is that a moving defendant must generally present evidence that, if uncontradicted, "would constitute a preponderance of evidence that an essential element of the plaintiff's case cannot be established." *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 879.

If the defendants meet this burden then the burden shifts to plaintiff to show a triable issue of fact. If plaintiff cannot do this then defendant is entitled to judgment as a matter of law. *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 780-781. If defendants fail to meet this

RULING ON PUREPAC'S MOTION FOR SUMMARY JUDGMENT

burden, their motion must be denied; plaintiffs need not make any showing at all. *Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 468; see *Aguilar, supra,* 25 Cal. 4th at 850.

The supremacy clause of article VI of the United States Constitution grants Congress the power to preempt state law. *Dowhal v. SmithKline Beecham Consumer Healthcare et al.* (2004) 32 Cal.4th 910, 923. State law that conflicts with a federal statute is invalid. *Ibid.*

It is well established that "[c]onsideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Id.* at 32 Cal.4th at 923.

Federal preemption arises in three circumstances: 1) Congress has made its intent clear through express explicit statutory language (express preemption); 2) it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively (field preemption); and 3) it actually conflicts with federal law (conflict preemption). *Id.* at 923, citing *English v. General Electric Co.* (1990) 496 U.S. 72, 78-79. Defendant here concedes that express and field preemption are not implicated. Thus, only conflict preemption is relevant to our analysis.

Conflict preemption is present when state law actually conflicts with federal law. *Dowhal, supra,* 32 Cal.4th at 923; *Crosby v. National Foreign Trade Council* (2000) 530 U.S. 363, 372 (state law is preempted to the extent of any conflict with a federal statute.) Conflict preemption arises in two situations: 1) where it is impossible for a private party to comply with both state and federal requirements, or 2) where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Geier v. American Honda Motor Co., Inc.* (2000) 529 U.S. 861, 899. "Conflict preemption does not require a direct contradiction between state and federal law. State law is preempted if state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Dowhal, supra,* 32 Cal4th at 929; *Geier, supra,* 529 U.S. at 873.

The plaintiff maintains that defendants, including Purepac, were aware of the serious side effects caused by metoclopramide and knew or should have known that most physicians were unaware of or did not appreciate the dangers associated with prescribing it for long-term use.

(Complaint at ¶¶ 24-25, 31.) The complaint further alleges that as a result Purepac knew or should have known that the package insert and Physician Desk Reference monograph did not adequately inform physicians about the risks associated with metoclopramide, particularly for patients who could not metabolize it efficiently. (Complaint at ¶¶ 25, 31.)

The complaint further alleges that Purepac had knowledge of the danger of using metoclopramide long-term, through their own studies and research, but failed to use reasonable care to modify its "package insert" to reflect those dangers. (Complaint at ¶¶ 28-29.) For example, co-defendant Wyeth knew that certain side-effects were 100 times greater than disclosed for patients using the drug for 12 weeks or longer. (Complaint at ¶29) Plaintiff further alleges that Purepac had a duty to remain informed about the current medical literature regarding metoclopramide and report such knowledge to the FDA. (Complaint at ¶ 31) Purepac's failure to exercise reasonable care in monitoring the medical literature resulted in inadequate warnings on package inserts and caused metoclopramide to be over-prescribed as the insert substantially understated the prevalence of certain side effects. *Ibid.* Plaintiff alleges that Purepac failed to exercise reasonable care to modify the package insert, and/or seek FDA approval to do so in order to adequately warn physicians and consumers. *Ibid.*

Specifically, the First Cause of Action (strict products liability) alleges, *inter alia*, that metoclopramide was not reasonably safe due to inadequate or defective warnings that were known or knowable to Purepac. (Complaint at ¶ 38) The Second Cause of Action (negligence) alleges that Purepac was negligent in failing to accompany the product with adequate warnings and instructions regarding the side effects associated with the use of the drug despite knowing of its hazards. (Complaint at ¶ 48) The Third Cause of Action (negligence per se) alleges that the product label and package insert for metoclopramide is misbranded under 21 U.S.C. § 352(a) & (f) and California Health and Safety Code §§ 111330-111510 because it was false and misleading and failed to give adequate warnings and directions for use by physicians. (Complaint at ¶ 52) Further, plaintiff alleges that because Purepac knew or should have known that physicians prescribed the drug for long-term use, beyond the 12 week intended use approved by the FDA, long-term use became an intended use that required Purepac to provide adequate

warnings to reflect this.

The Seventh Cause of Action (breach of express warranties) alleges that Purepac falsely represented that certain side-effects only occurred in one in every 500 patients, despite the fact that published studies had established that the risk was 100 times greater than disclosed in the package insert and Physician Desk Reference for the product. (Complaint at ¶ 75) Thus, the product was not accompanied by the appropriate warnings for its dangerous propensities that were either known or knowable. (Complaint at ¶ 77) The Eighth Cause of Action (breach of implied warranties) alleges that Purepac's failure to give adequate warnings about metoclopramide's side effects breached the implied warranties of merchantability and fitness for the ordinary use of the product. (Complaint at ¶ 81).

In summary, the plaintiff asserts that Purepac should have included additional warnings on its label not mandated by the FDA.

Purepac moves for summary adjudication on each of the foregoing claims based on the claim they conflict with federally mandated labeling requirements. Accordingly the issue presented is whether the California State law "failure to warn" claims are preempted by FDA regulations (federal law).

This issue has been the subject of much disagreement among the courts that was apparently cleared by a recent pronouncement from the FDA interpreting the meaning of the FDCA. In January 2006, the FDA weighed in on the labeling preemption issue in its preamble statement to a Final Rule regarding the "Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products." See 71 Fed.Reg. 3922-39976 (January 24, 2006) ("Preamble"). There the FDA essentially provided the agency's interpretation of preemption with respect to prescription drug labeling.

In particular, the Preamble stated, *inter alia,* that it disagreed with the assumption of several courts that FDA requirements represent "minimum standards" that may be supplemented by State law. 71 Fed.Reg. 3935. Specifically, the language of the Preamble provides that the "FDA interprets the act to establish both a 'floor" and a 'ceiling,' such that additional disclosures of risk information can expose a manufacturer to liability under the act if the additional statement

-6-

RULING ON PUREPAC'S MOTION FOR SUMMARY JUDGMENT

is unsubstantiated or otherwise false or misleading." *Id.* In essence the FDA explained that prescription drug labeling is the sole province of the federal government and therefore any State law "failure to warn" claims are necessarily preempted to the extent they conflict with federal regulatory law by requiring additional labeling, i.e., additional warnings.

The courts have begun to assess the impact of the Preamble on cases such as this one recently. The issue was fully analyzed by Judge Breyer of the Northern District of California in *In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation* (N.D.Ca. August 16, 2006) 2006 WL 2374742 (*Bextra*). In *Bextra*, Judge Breyer ultimately concluded the State law "failure to warn" claims are preempted by FDA regulations because the FDA's interpretation of the preemptive effects of its regulations set forth in the January 24, 2006 Preamble, is entitled to deference. *Id.* at pp. 6-9.

The analysis by Judge Breyer details the number of cases that have held State law "failure to warn" claims are not preempted by the FDA regulations because "FDA labeling requirements impose only 'minimum standards' that may be supplemented by state law and therefore the state laws do not conflict with federal law." *Id.* at 4. Judge Breyer rejects these holdings because they were each based on the faulty premise that "FDA labeling requirements are merely minimum standards" based on the assumption the FDA regulations permit drug manufacturer to add warnings to its label without prior FDA approval." *Id.* He also relied heavily on the plain language of the Preamble as well as the settled policy of providing broad deference to an administrative agency's interpretation of the statutory scheme it was empowered to administer. *Id.* at 509; *Colacicco v. Apotex Inc* (E.D.Pa. 2006) 432 F.Supp.2d 514. The court also based its decision on the conclusion that the FDA's interpretation of the preemptive effect of the regulation was not plainly erroneous or inconsistent with its purpose because it was based on the determination the FDA retains the sole authority to decide whether a label revision is necessary. *Bextra, supra,* at p. 8. The court noted that while a manufacturer is empowered to make changes to their label, the FDA retains the ultimate authority to decide whether those changes are valid and can cease distribution of a product if a label altered by a manufacturer is improper. *Id.*

In his finding that State law "failure to warn" claims are preempted, Judge Breyer cited several passages of the Preamble he found critical. *Id* at pp 5-6. He cited language of the Preamble that explicitly states the FDA disagrees with those cases that hold State law "failure to warn" cases are not preempted on the grounds that manufacturers have the power to revise warning labels by adding or strengthening labels without the permission of the FDA. *Bextra* at p. 5, citing 71 Fed.Reg. at p. 3934. Breyer recognized the Preamble states the FDA disagrees with these cases on the grounds that the FDA is the final authority on whether the labeling revisions are necessary and because manufacturers normally consult with the agency before making any labeling changes in order to avoid enforcement action if the FDA disagrees with such revisions. He also pointed out the Preamble expressly states that the FDA does not interpret its labeling requirements to be minimum standards that may be supplemented by state law; rather the "FDA interprets the act to establish both a 'floor' and 'ceiling' such that additional disclosures of risk information can expose a manufacturer to liability under the act if the additional statement is unsubstantiated or otherwise false or misleading." *Id.* at p. 5, quoting 71 Fed.Reg. at 3935.

The district court observed that the Preamble explains that requiring additional disclosures of risk information is not necessarily more protective of patients given the comprehensiveness of the FDA's drug safety, effectiveness and labeling under the act. Notably the Preamble states that "State law attempts to impose additional warnings can lead to labeling that does not accurately portray a product's risks, thereby potentially discouraging safe and effective use of improved products or encouraging inappropriate use and undermining the objectives of the act." *Id.* Additionally, Judge Breyer observed the Preamble states that State actions threaten the central role of the FDA, an expert agency responsible for evaluating and regulating drugs, because such actions ask judges and/or juries to second-guess the risk/benefit assessments of the drug. *Id.* at 6. The FDA claims that this is potentially harmful because it may create pressure on manufacturers to include warnings that the FDA has neither approved of or found scientifically required in order to avoid State liability. Indeed, such defensive labeling could result in 'scientifically unsubstantiated warnings and underutilization of beneficial

treatments." *Id.*

Based on the foregoing language, and the well-settled policy of deferring to agency interpretations of the statutory schemes they are entrusted to administer, Judge Breyer concluded the State law "failure to warn" claims are preempted by FDA regulations. *Id.* at pp.6-9. The court determined deference was warranted because "Congress has delegated to the FDA authority to implement the FDCA; 'the subject matter is technical; and the relevant history and background are complex and extensive.' The FDA is thus 'likely to have a thorough understanding of its own regulation and its objectives and is' 'uniquely qualified' to comprehend the likely impact of state requirements." *Id.* at p.6.

It is important to note that Judge Breyer acknowledged that the FDA's current position was a 180-degree change from its long-standing position of no preemption, yet deference was still accorded. The court noted the Supreme Court had never stated an agency's view of preemptive effect of its own regulations is not to be given weight just because the agency's view changed contemporaneously with a changing leadership of the Executive Branch.

The circumstances of this case are sufficiently similar to those in *Bextra* and also *Colacicco v. Apotex Inc, supra.* to warrant granting summary judgment. The cases are similar insofar as their resolution turns on whether the recently promulgated FDA Preamble preempts State law "failure to warn" claims. Since the Court finds the reasoning of the two cases very persuasive, and in light of *Dowhal v. SmithKline Beecham Consumer Healthcare, supra*, the Court grants summary judgment as to the Purepac causes of action, namely the plaintiffs' 1st, 2nd, 3rd, 7th, and 8th.

DATED: September 14, 2006

*/s/ Robert L. Dondero*
ROBERT L. DONDERO
Judge of the Superior Court

RULING ON PUREPAC'S MOTION FOR SUMMARY JUDGMENT

## Superior Court of California
County of San Francisco

| | |
|---|---|
| ELIZABETH ANN CONTE, <br><br> Plaintiff(s) <br><br> vs. <br><br> WYETH, INC., et al., <br><br> Defendant(s) | Case Number: 437382 <br><br> **CERTIFICATE OF SERVICE BY MAIL** <br> (CCP 1013a (4)) |

I, VERA MU, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On September 14, 2006 I served the attached RULING ON PUREPAC'S MOTION FOR SUMMARY JUDGMENT by placing a copy thereof in a sealed envelope, addressed as follows:

RALPH D. PITTLE, Esq.
Medical Legal Consultants of Washington
14205 S.E. 36th St., Suite 100
Bellevue, WA 98006-1553

RICHARD DEAN, Esq.
PETER SCHNAITMAN, Esq.
Tucker Ellis & West LLP
One Market St., Steuart Tower, Suite 1300
San Francisco, CA. 94105

MELISSA M. FAIRBROTHER, Esq.
Gordon & Rees LLP
275 Battery St., Suite 2000
San Francisco, CA. 94111

MERTON A. HOWARD, Esq.
Hanson Bridgett Marcus Vlahos & Rudy LLP
333 Market St., 21st Fl.
San Francisco, CA. 94105-2173

RALPH SMITH, Esq.
Donnelly & Nelson LLP
2401 Shadelands Dr., Suite 120
Walnut Creek, CA. 94598

and, I then placed the sealed envelopes in the outgoing mail at 400 McAllister Street, San Francisco, CA. 94102 on the date indicated above for collection, attachment of required prepaid postage, and mailing on that date following standard court practices.

Dated: September 14, 2006

GORDON PARK-LI, Clerk

By: _____
VERA MU, Deputy Clerk

---

CERTIFICATE OF SERVICE BY MAIL