# EXHIBIT K

Case 1:04-cv-10981-PBS   Document 673-15   Filed 03/12/2007   Page 1 of 5

Westlaw.

Not Reported in A.2d    Page 1
Not Reported in A.2d, 2006 WL 560639 (N.J.Super.L.)
**(Cite as: 2006 WL 560639 (N.J.Super.L.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of New Jersey,
Law Division, Bergen County.
Geri Lynn ABRAMOWITZ, Plaintiff,
v.
CEPHALON, INC., ABC Corp., and John Doe (said names being fictitious),
Defendants.

Argued March 3, 2006.
Decided March 3, 2006.

Alice Beime, appearing on behalf of plaintiff, Geri Lynn Abramowitz.

John F. Brenner, (McCarter & English, LLP) appearing on behalf of defendant, Cephalon, Inc.

DONOHUE, J.

ORDER GRANTING SUMMARY JUDGMENT
AND DISMISSING ALL CLAIMS AGAINST
DEFENDANT
CEPHALON, INC.

*1 This matter having been opened to the Court on application by McCarter & English, LLP, counsel for defendant Cephalon, Inc., for the entry of an Order granting summary judgment and dismissing all claims against Cephalon, Inc. and the Court having considered the submissions of the parties, and for good cause shown,

IT IS on this *3* day of *March* 2006,

Ordered that defendant's motion be and hereby is granted; as to failure to warn & breach of warranty.

IT IS FURTHER ORDERED that all claims against Cephalon, Inc. hereby are dismissed; and denied as to design defect

IT IS FURTHER ORDERED that the defendant shall serve a copy of this Order within *7* days of receipt.

OPINION

This matter comes before this court on the defendant, Cephalon's, motion for summary judgment. This action arises from a products liability action in which the plaintiff, Gerri Lynn Abramowitz, alleges that the prescription drug Actiq® caused her to suffer massive tooth decay, which led to the removal of all but four of her natural teeth and their subsequent replacement with dentures. The plaintiff alleges that the defendant is liable under the causes of action of failure to warn of the possible side effects, producing a product with a defective design, and breech of warranty. The defendant has brought summary judgment motions for all the counts contained in the plaintiff's complaint.

The plaintiff is a 34-year old woman who was diagnosed with a non-cancerous brain tumor at the age of eight. The tumor was surgically removed; unfortunately the surgery left the plaintiff with chronic and debilitating physical problems. In or around 1997 and 1998 the plaintiff developed extreme pain. The plaintiff's pain management doctor, Dr. Pappragallo, prescribed Actiq® for the plaintiff in 2000, after other pain management therapies failed to control the plaintiff's pain. Actiq®, which is manufactured and distributed by the defendant, is intended to be used to manage the pain for cancer patients who are experiencing "break through" pains. Actiq® is not administered in pill form, but rather the active drug is on a lollypop type plastic dispenser. The drug enters the bloodstream by passing through the membranes in the mouth. This allows for faster absorption and more immediate relief then if the patient were to take a pill. The active ingredient in Actiq® is Fentanyl. Fentanyl possesses an unpleasant taste that must be masked in order that the drug can be used effectively. The defendant used sucrose and liquid glucose to mask the unpleasant taste of the Fentanyl. The plaintiff has alleged that the sucrose and liquid glucose rotted her teeth. The plaintiff claims that neither her prescribing doctor nor the nurse practioner who worked for Dr. Pappragallo advised her that taking Actiq® could cause tooth decay. The plaintiff claims that she did not become aware of the possibility that Actiq® could cause tooth decay until September 2002, and even though she had already suffered significant tooth decay, she decided to continue to use Actiq® because her and her doctor determined that the benefits outweighed the risk of further injury.

*2 Since the plaintiff has conceded the issue of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                                    Page 2
Not Reported in A.2d, 2006 WL 560639 (N.J.Super.L.)
**(Cite as: 2006 WL 560639 (N.J.Super.L.))**

breach of warranty, that leaves only two questions for this court to answer. First, is if there is a question of fact as to whether the warnings contained in the package insert and provided to physicians are sufficient under state and federal law. The second question for this court is whether the plaintiff can establish a prima facie case for a defective design claim.

New Jersey has adopted the "learned intermediary" rule with regard to a pharmaceutical manufacturer's duty to warn the user of a drug of its side effects and dangerous propensities. The "learned intermediary" rule stands for the principal that a pharmaceutical manufacturer can discharge its duty to warn the ultimate users of a drug of any side effects the drug may cause by properly warning the doctor who prescribes the drug. *Bacradi v. Holzman,* 182 *N.J.Super.* 422, 425, 442 A.2d 617 (App.Div.1981). In this case it is undisputed that the defendant included a warning about the side effects, which the plaintiff ultimately suffered. The FDA approved package insert and the information provided to physicians stated the following.

   Inactive Ingredients: Sucrose, liquid glucose (2000 PDR)
   Adverse Reactions:
   Digestive: tooth caries, tooth disorder (2000 PDR)
   Information for Patients and Their Caregivers (2002 product instructions and warnings).

Frequent consumption of sugar-containing products many increase the risk of dental caries (each Actiq unit contains approximately 2 grams of sugar [sucrose, liquid glucose] ). The occurrence of dry mouth associated with the use of opioid medications (such as Fentanyl) may add to this risk. Therefore, patients using Actiq® should consult their dentist to ensure appropriate oral hygiene.

The warnings in 2000 and 2002 clearly inform the doctor and, by way of the "learned intermediary" rule, the patient also that sugar is present in Actiq® and that tooth decay is a possible side effect. This issue before this court is whether these warnings were sufficient.

   *N.J.S.A. § 2A:58C-4* states:
   In any product liability action the manufacturer or seller shall not be liable for harm caused by a failure to warn if the product contains an adequate warning or instruction ... An adequate warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and ordinary knowledge common to, the persons by whom the product is intended to be use, or in the case of prescription drugs, taking into account the characteristics of, and the ordinary knowledge common to, the prescribing physician.

This statue, while limiting liability when an adequate warning label is used, leaves open a state claim for liability under failure to warn if the plaintiff can establish that the warning provided by the manufacturer was not an "adequate product warning or instruction" under the statute.

**\*3** Although *N.J.S.A. § 2A:58C-4* offers an avenue to pursue a failure to warn claim, the New Jersey courts have limited the availability of such a claim when the warnings have been FDA approved. The New Jersey Supreme Court has found that any duty to warn physicians about prescription drug dangers is presumptively met by compliance with federal labeling and that compliance with FDA regulations serves as compelling evidence that a manufacturer satisfied its duty to warn the physician about potentially harmful side effects of its product. However, that presumption is not absolute. *Perez v. Wyeth Laboratories,* 161 *N.J.* 1, 24, 734 A.2d 1245 (1999).

Using the standard laid out in *N.J.S.A. § 2A:58C-4* and considering the authority that New Jersey case law grants to FDA approval, this court finds that a reasonable juror could not find that the defendant did not provide an adequate warning. The plaintiff's doctor was provided with information that sugars were present in Actiq®. The warning stated that use of the drug could lead to tooth caries or a tooth disorder.

In this case the plaintiff suffered from tooth caries or the rotting of the teeth. Although it is very unfortunate injury, the plaintiff was warned through her doctor that this could happen. The plaintiff has indeed suffered a loss, but our legislatures and courts have determined that plaintiffs can not pursue a failure to warn claim for injuries they suffer as a result of taking a prescribed drug if that injury or side effect was included in an approved warning.

The court has considered that the defendant did receive 250 Med Watch forms from prescribing doctors reporting instances of tooth decay. However, the court agrees with the defendant that 250 reports

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-10981-PBS   Document 673-15   Filed 03/12/2007   Page 4 of 5

Not Reported in A.2d                                                                                                                Page 3
Not Reported in A.2d, 2006 WL 560639 (N.J.Super.L.)
**(Cite as: 2006 WL 560639 (N.J.Super.L.))**

out of the millions of prescriptions that were written is a negligible amount and falls within the 1% occurrence that the defendant warned could occur. Furthermore, the court finds that there is no evidence to suggest that the defendants attempted to hide or suppress this information. The defendants reported the occurrences to the FDA as is required by federal law.

This court has found that that there is insufficient evidence for the plaintiff to pursue a failure to warn claim against the defendant under New Jersey state law. However, absent this finding it is the court's opinion that pursuant to the newly released federal regulation, the FDA's decision to approve the defendant's label for Actiq® would preempt a state claim for failure to warn.

In The Federal Register, Vol. 71, No. 15, Tuesday, January 24, 2006, the FDA issued a regulation stating that it "believes that under existing preemption principals, FDA approval of labeling under the act, whether it be in the old or the new format, preempts conflicting or contrary state law." While this court recognizes that that federal regulation does not preempt all state claims, it does find that this particular claim would be preempted. In this instance the plaintiff is claiming that an FDA approved label was insufficient, and hence, that the FDA decision to approve the label was inappropriate. It is clear that FDA has assumed authority over the regulation and approval of pharmaceutical labels in the United States, and therefore, any state claim that would challenge an FDA approved warning is preempted.

**\*4** The New Jersey courts have addressed the issue of preemption of state claims by federal regulations. In *R.F. v. Abbott Laboratories,* 162 N.J. 596, 620, 745 A.2d 1174 (2000), the New Jersey Supreme Court found that a state law can be preempted by a federal regulation when the federal agency intends to preempt state law and the agency was acting within the scope of it authority. In the instant case, the FDA clearly intends for FDA approval of labels, both those approved in the past and those to be approved, to preempt state claims. The FDA is acting within its authority and, as such, the New Jersey state claim is preempted in this matter. The newly released regulation is not a blanket prohibition against state claims, but rather, the FDA delineates what type of state claims are preempted and what state claims can go forward. While recognizing that the FDA is not a judicial body, this court must respect its decision with regard to preemption of state claims for failure to warn as per the New Jersey Supreme Courts decision in *RF v. Abbott Laboratories.*

For the reasons stated the defendants motion for summary judgment on the failure to warn claim is granted.

The second issue this court must address is whether or not the plaintiff can establish a prima facie case for defective design. *N .J.S.A.* 2A:58C-3(a) lays out the limitations of products liability claim premised on defective design; the statute states a manufacturer shall not be liable if:

(1) At the time the product left the control of the manufacturer, there was not a practical and technically feasible alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of the product; or

(2) The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended, except that this paragraph shall not apply to industrial machinery or other equipment used in the workplace and it is not intended to apply to dangers posed by products such as machinery or equipment that can feasibly be eliminated without impairing the usefulness of the product; or

(3) The harm was caused by an unavoidably unsafe aspect of the product and the product was accompanied by an adequate warning or instruction as defined in section 4 of this act.

The question of whether there was a technically feasible alternative design that would have prevented the harm without substantially impairing the reasonably anticipated use is a question of fact. The plaintiff's expert contends that such a design existed the defendants contend that it did not.

Part three asks if the harm was caused by an "unavoidably unsafe aspect of the product" and whether the product was accompanied by an adequate warning. This court has already established that the warning provided by the defendants was indeed adequate. However, the issue of whether the plaintiff lost her teeth due to an "unavoidably unsafe aspect" of the product is less clear. The plaintiff suffered her injury as a result of the sugars that were put in Actiq® to mask the taste of the active ingredient. Had the tooth decay been caused by the Fentanyl, then it

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 2006 WL 560639 (N.J.Super.L.)  
**(Cite as: 2006 WL 560639 (N.J.Super.L.))**

Page 4

would be clear that the defendant would be shielded from liability. However this court finds that the question of whether the use of sugar in the Actiq® produced in 2000 was unavoidably unsafe or whether another product could have been used is a question of fact for jury to decide. Therefore the defendant's motion for summary judgment on the design defect claim is denied.

Not Reported in A.2d, 2006 WL 560639 (N.J.Super.L.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.