UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

MDL Docket No. 1629

---

THIS DOCUMENT RELATES TO:

Master File No. 04-10981

---

Judge Patti B. Saris

HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY.

Magistrate Judge Leo T. Sorokin

---

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC. and

AETNA, INC. v. PFIZER INC.

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO DISCOVERY ORDER NO. 9**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

Defendants Pfizer Inc. and Warner-Lambert Company respectfully submit this response to Plaintiffs' Objections to Discovery Order No. 9 ("Pls.' Objs.") (Dkt # 653)[1], in which plaintiffs objected to two aspects of Discovery Order No. 9 (the "Order") (Dkt # 632), entered by Magistrate Judge Leo T. Sorokin on February 12, 2007. Subsequent to plaintiffs' filing of their objections, Magistrate Judge Sorokin amended his Order to allow in part Plaintiffs' Motion To Compel Defendants' Production of Documents ("Pls.' Mot. Compel") (Dkt # 617) as to the custodial files of Ellen Dukes. March 1, 2007 Order (Dkt # 659). Accordingly, defendants' response is limited to the portion of plaintiffs' objections that addresses plaintiffs' motion to compel defendants' response to Request No. 19 of Plaintiffs' Third Request for Production of Documents ("Request No. 19").

## PRELIMINARY STATEMENT

Plaintiffs' request for all documents related to "value analysis" regarding Neurontin should be rejected. As an initial matter, defendants did not perform the analyses plaintiffs describe in Request No. 19 and in their objections, and accordingly plaintiffs' objections are moot.[2] Declaration of Deborah L. MacGregor, dated March 13, 2007 ("MacGregor Decl."), ¶ 4. Moreover, to the extent plaintiffs now attempt to morph Request No. 19 into one that seeks information relating to meetings attended by pharmacy benefit managers ("PBMs") at which off-label uses of Neurontin were discussed – as suggested by plaintiffs' citation to the single reference in their complaints relating to such an alleged meeting – defendants are already searching for and producing documents relating to such meetings from the files of relevant

---

[1] The caption of Plaintiffs' Objections indicates that the document relates only to Assurant Health, Inc., et al. v. Pfizer, Inc., et al., No. 05-10535. Defendants assume that the caption is in error and that the objections relate to all consolidated sales and marketing cases.

[2] Request No. 19 of Plaintiffs' Third Request for Production of Documents seeks "All documents supporting value analysis for marketing Neurontin to providers, health plans and/or other payers." Pls.' Objs. at 3.

employees.  As Magistrate Judge Sorokin recognized in his Order, this search should be sufficient.  This is particularly the case given the fact that the third-party payor plaintiffs and their PBMs failed, in response to defendants' document requests and subpoenas, to produce any documents whatsoever reflecting defendants' alleged efforts to convince PBMs to place Neurontin on formulary or the third-party payors to reimburse for Neurontin prescriptions.  MacGregor Decl. ¶ 5.  Thus plaintiffs themselves have failed to produce any documents suggesting that the alleged communications they now seek even exist.

Accordingly, and as explained further below, plaintiffs' objections to the Magistrate Judge's discovery order should be overruled.

## ARGUMENT

Plaintiffs define value analysis as referring to "the concept of analyzing and computing a drug's usefulness based on cost-benefit analysis in monetary terms, and the comparison of that cost-benefit analysis to other drugs' cost-benefit analysis."  Pls.' Objs. at 4.  They allege that such documents were presented by defendants to health plans and / or other payers.  Id.  Defendants did not prepare and present Neurontin value analyses to third-party payors or pharmacy benefit managers.  MacGregor Decl. ¶ 4.  Plaintiffs' objections are therefore moot.

While plaintiffs' objections and Request No. 19 seek only value analyses, plaintiffs support this request by reference to a single allegation in their complaints regarding an alleged meeting of "senior managers and medical directors of various pharmacies and pharmacy benefit managers."  Third Amended Class Action Complaint ("TACAC") (Dkt #580) ¶ 280.  Plaintiffs allege that the purpose of this alleged meeting "was to 'support Neurontin's use in neuropathic pain management with managed care customer[s].'"[3]  Id.  Plaintiffs' objections, however, ignore

---

[3] Plaintiffs argue that various third-party payors often rely on pharmacy benefit managers ("PBMs") to make formulary decisions for them and, thus, allegedly fraudulent statements made to PBMs are in effect made on the third-party payors who employ them.  Plaintiffs' Reply in Support of Their Motion to Compel Defendants' Production of Documents ("Pls.' Reply") (Dkt # 628) at 8.  This directly contradicts statements recently made by

the fact that defendants have already agreed to conduct a reasonable search and to produce documents relating to meetings attended by third-party payors or pharmacy benefit managers where off-label uses of Neurontin allegedly were discussed.  In addition, if so-called "value analyses" relating to the relevant off-label uses were created they would have been, or will be, produced from the files of the numerous marketing, sales, medical, regulatory, clinical and safety personnel whose documents are being provided.  Magistrate Judge Sorokin recognized in Discovery Order Number 9 that this approach was sufficient to satisfy plaintiffs' request.

This resolution is particularly appropriate because of the failure of plaintiffs themselves to produce any documents regarding allegedly fraudulent communications directed toward third-party payors or PBMs.  In response to requests served by defendants seeking documents related to communications between defendants and third-party payor plaintiffs relating to Neurontin, plaintiffs produced virtually no documents, and none containing anything resembling a value analysis.[4]  MacGregor Decl. ¶ 5.  In addition, subpoenas were issued to each PBM who worked with the named third-party payor plaintiffs, seeking documents relating to communications between defendants and these entities concerning Neurontin.  See, e.g., MacGregor Decl. Ex. B (subpoena to Medco dated July 27, 2005), Request Number 7, at 8.  Again, no relevant

---

these same plaintiffs, who argued that defendants cannot impute statements made by PBMs, third-party administrators, and other entities with whom third-party payors contract for services to the third-party payors because "[u]ltimately . . . the [third-party payor's management] make all decisions regarding the plan's policies and application of those policies to it [sic]members."  Reply Mem. Support Class Cert. at 9 n.11 (Dkt. # 648) (filed February 22, 2007) (for which leave to file was denied by the Court because overlong).

[4] For example, request number 3 from defendants' first request for production of documents, dated May 2, 2005, to plaintiff Guardian Life Insurance – which is identical to request number three in the document requests served on each coordinated and class action named plaintiff – requested "[a]ll marketing materials, marketing information, and related documents received from any manufacturer or supplier of prescription drugs or prescription drug benefits concerning Neurontin."  MacGregor Decl., Ex. A, at 8.  Request number 8 sought "[a]ll documents from any formulary committee, or any other committee with similar functions, concerning Neurontin, including but not limited to presentations, meeting minutes, and evaluations of Neurontin."  Id.  Request number 9 sought "[a]ll documents concerning Neurontin from any committee, team, council, or other group of employees, that discussed, recommended, approved, denied, or otherwise considered the inclusion of Neurontin in Plaintiff's formulary, the payment or denial of Neurontin claims, the payment of denial of off-label uses of Neurontin, or otherwise addressed Neurontin."  Id. at 9.

communications from defendants and no value analyses relating to Neurontin were produced. MacGregor Decl. ¶ 5. Accordingly, plaintiffs have no basis for claiming that value analyses were ever presented to them or their PBMs.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request that the Court overrule plaintiffs' objections to Discovery Order No. 9 and adopt the order as entered by the Magistrate Judge.

Dated: March 14, 2007

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
         James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:   /s/ David B. Chaffin
         David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 14, 2007.

/s/ David B. Chaffin
David B. Chaffin

6