# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------ x
In re:   NEURONTIN MARKETING AND
         SALES PRACTICES LITIGATION
------------------------------------------------ x   MDL Docket No. 1629

THIS DOCUMENT RELATES TO:                             Master File No. 04-10981

------------------------------------------------ x

HARDEN MANUFACTURING CORPORATION;
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,
dba BLUECROSS/BLUESHIELD OF LOUISIANA;
INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL
52 HEALTH BENEFITS TRUST; GERALD SMITH; and
LORRAINE KOPA, on behalf of themselves and all others
similarly situated, v. PFIZER INC. and WARNER-LAMBERT
COMPANY.

------------------------------------------------ x

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC. and

AETNA, INC. v. PFIZER INC.

------------------------------------------------ x

NOTICE OF SERVICE OF SUBPOENA

PLEASE TAKE NOTICE that Defendants Pfizer Inc. and Warner-Lambert Company, by their attorneys Davis Polk & Wardwell, will cause the attached subpoena to be served upon the persons or entities identified in the subpoena.

Dated: New York, New York
July 29, 2005

                DAVIS POLK & WARDWELL

                By: _____
                      James Murray
                      Patrick J. Murray
                      Reema Abdelhamid

                450 Lexington Avenue
                New York, New York 10017
                Tel: (212) 450-4000

                *Attorneys for Pfizer Inc. and Warner-Lambert Company*

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

IN RE NEURONTIN MARKETING AND
SALES PRACTICE LITIGATION

## SUBPOENA IN A CIVIL CASE

MDL Docket No. 04-MDL-1629
Master File No. 04-10981 (D. Mass)

TO: Keeper of Records
Medco
100 Parsons Pond Drive
Franklin Lakes, NJ 07417

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**All documents listed on Schedule A attached.**

| PLACE | DATE AND TIME |
|---|---|
| 100 Parsons Pond Drive<br>Franklin Lakes, NJ 07417 | August 29, 2005 at 9:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b) (6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendants | July 27, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
James Murray, Davis Polk & Wardwell
450 Lexington Ave.
New York, NY 10017    (212) 450 - 4084

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## **SCHEDULE A**

## DEFINITIONS

The definitions contained in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts are incorporated herein by reference. Additionally, the following definitions apply to this Schedule:

A.  "Medco" shall mean Medco and any of its past or present trustees, officials, officers, fiduciaries, representatives, assigns, employees, divisions, departments, directors, executives, predecessors or successors in interest, offices, subsidiaries, and affiliates.

B.  "You" or "your" shall mean Medco.

C.  "Guardian Life" shall mean Guardian Life Insurance Company of America and any of their past or present trustees, officials, officers, fiduciaries, representatives, assigns, employees, divisions, departments, directors, executives, predecessors or successors in interest, offices, subsidiaries, and affiliates.

D.  "Pfizer" shall mean defendant Pfizer Inc. and any of its predecessors, divisions, departments, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, or employees, including but not limited to Parke-Davis, as a division of Warner-Lambert.

E.  "Warner-Lambert" shall mean defendant Warner-Lambert Company LLC and any of its predecessors or successors in interest, divisions, departments, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, or employees, including but not limited to Parke-Davis, as a division of Warner-Lambert.

1

F. "Parke-Davis" shall mean Parke-Davis, a division of Warner-Lambert, and any of its predecessors or successors in interest, divisions, departments, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, or employees.

G. "Defendants" shall mean Pfizer, Warner-Lambert, or Parke-Davis.

H. "Neurontin" shall mean the drug with the chemical name gabapentin, marketed under the name Neurontin, and includes all uses or indications thereof.

I. The term "Member" shall include the terms "participant," "beneficiary," "enrollee," and "policy holder," and means persons and their eligible dependents for whom a third-party payor provides health benefits or administrative services for health benefits.

J. The term "provider" shall mean any physician, hospital, medical or health professional, pharmacy, or other person or entity that provides drugs or other medical care.

K. The term "benefit plan" shall mean the written document detailing a Member or group's health insurance or health (medical or pharmacy) benefit coverage, and shall include the terms "certificate of coverage," "certificate of insurance," "evidence of coverage," and "summary plan description."

L. The term "policy" shall mean the written document issued by a third-party payor to the policy owner, representing the written contract between the third-party payor and the policy owner, and describing the term, coverage, premiums, and deductibles.

M. The term "drug," unless otherwise indicated, shall mean a substance used in the diagnosis, treatment, or prevention of a disease or as a component of a medication, and shall include both prescription and non-prescription drugs.

N. The term "off-label" shall mean prescription, use, or promotion of a drug for indications or at dosages different from those set forth in a drug's labeling.

2

O. "Third-party payor" shall mean a non-governmental entity that provides prescription drug coverage to natural persons or processes claims or administers health benefits pursuant to a contract, policy, or benefit plan.

P. The term "claim" shall mean notification to a third-party payor or its agent, such as a third-party administrator or a pharmacy benefit manager, requesting adjudication of the claim for potential reimbursement under the terms of s contract, policy, or benefit plan.

Q. The term "formulary" shall mean the list of prescription drugs covered under a benefit plan or policy, as well as any written or electronic materials that accompany that list, including but not limited to preferred drug lists, tiered drug lists, information about co-payments, and information about FDA-approved and off-label uses.

R. The term "rebate" shall mean the amount of money paid by the labeler (or drug company) to a third-party payor or its agent (such as a third-party administrator or a pharmacy benefits manager) in connection with its agreement (and the administration thereof) to provide coverage for a drug within its formulary.

S. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

T. "Any" includes the word "all" and vice-versa.

U. "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

V. "Concerning" shall mean referring to, describing, evidencing, or constituting.

W. "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure and Local Rule 26.5, includes all forms of writings as defined in Rule 1001(1) of

3

the Federal Rules of Evidence, and includes any reduction to tangible form, whether written, recorded, taped, filmed, videotaped, or in computer, digital, or magnetic memory or storage, of communication, information, or data, including any graphic matter of any kind or nature, however produced or reproduced, and also includes originals, drafts, and non-identical copies, wherever located. "Document" shall include, but not be limited to, books, contracts, agreements, correspondence, electronic mail (email), computer tapes, discs, magnetic memory, printouts and keypunch cards, memoranda, diaries, notes, reports, bulletins, printed forms, telegraphic communications, pleadings or other legal papers, telexes, telegrams, telecopies, facsimile reproductions (faxes), factual compilations, data compilations, statistical compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work, graphics, checks, ledgers, catalogues, brochures, pamphlets, press releases, advertisements, invoices, minutes, photographs, microfilms, microfiche, films, personnel files, quotes, stenographic notes, computer disks, telephone records, schedules, bids, voice recordings, and transcriptions. This definition shall apply to all documents in the possession, custody, or control of Medco or that of its attorneys, agents, employees, officers, directors, or representatives, irrespective of who generated, prepared, or signed the documents.

X. "Person" shall mean any individual, corporation, organization, association, partnership, limited partnership, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

Y. "Relating to" shall mean concerning.

## INSTRUCTIONS

A.  The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa, and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

B.  This request is intended to cover all documents in your possession or subject to your custody or control.

C.  Each request for a document contemplates production of the document in its entirety, without abbreviation or expurgation.

D.  If any requested documents cannot be produced in full, produce them to the extent possible, specifying each reason for your inability to produce the remainder thereof and stating whatever information, knowledge, or belief you have concerning the unproduced portion.

E.  If any document is no longer in your possession, custody, or control and cannot be retrieved by you, identify the document in detail and state with specificity the location(s) of the document.

F.  This request is of continuing effect, and to the extent that any time after the production of documents called for by this request, you become aware of or acquire additional documents responsive to this request, such documents shall be produced promptly.

G.  If Medco claims that any document to be produced is privileged or constitutes attorneys' work product, Medco is requested to submit a written statement that describes the nature of the documents not produced as required under the Federal Rules of Civil Procedure.

H.  In the event that any information is redacted from a document produced pursuant to this Subpoena, that information is to be identified and the basis upon which such information is redacted should be fully stated.

5

I.  Documents shall be produced as they are or have been kept in the ordinary course, including the original file folder and label or other similar identification devices, or shall be organized and labeled to identify any file number, file name, or any other file identification system utilized by the responding party, as well as the location and custodian of such records.

J.  When a request calls for the production of an electronic database file or data file, this file must be produced in the following form: ASCII fixed width file(s), accompanied by data layout that provides the following specifications for each data field within the file: the name of the data field, the starting position of the data field within the ASCII file (e.g., the first field will begin at position 1), the length of the field (i.e., the number of positions occupied by that data field), and whether each data field contains numeric or text values. Each file must also be accompanied by a count of the number of rows of data that are purported to be included in the file. For each file produced, "data dictionary" information must be provided. This information must provide an English description of each field's contents, any validation rules that restrict the values in the field, and a translation of any non-free text values that exist within the field (i.e., a "translation table" or "lookup table" for each field that contains coded values; these tables would translate the codes that are stored in the field into an English description/interpretation).

K.  With prior approval from Defendants, electronic files in Microsoft Excel format may be an acceptable alternative to the ASCII files described in paragraph K.

L.  Unless otherwise stated, the relevant time period for this request shall be from January 1, 1990 to the present.

6

Request No. 1

All final, proposed, or draft agreements between You and Guardian Life, or any person or entity acting on behalf of Guardian Life.

Request No. 2

All documents concerning the scope of services that You performed for Guardian Life, or any person or entity acting on behalf of Guardian Life.

Request No. 3

All final, proposed, or draft agreements between You and any person or entity, which You entered on behalf of Guardian Life, concerning Neurontin.

Request No. 4

All transaction-level records of the individual claims for Neurontin by or on behalf of Guardian Life's Members, and all the transaction-level records of the individual claims for other drugs by or on behalf of these persons. To the extent that the records are in electronic format, provide all data elements captured related to these transactions, including but not limited to all of the data elements reflected in the NCPDP format.

Request No. 5

All medical claims for Guardian Life's Members who made claims for Neurontin or on whose behalf claims for Neurontin were submitted. To the extent that the records are in electronic format, provide all data elements captured related to these claims, including but not limited to all diagnosis and procedure codes as required in HCFA 1500s and UB92s.

Request No. 6

All documents relating to any communication concerning Neurontin or off-label use of any drug between You or any person or entity acting on Your behalf and Guardian Life or any

7

person or entity acting on behalf of Guardian Life, including but not limited to any such communication.

Request No. 7

All documents relating to any communication concerning Neurontin between You, Guardian Life, Guardian Life's Members, or anyone acting on behalf of You or Guardian Life and any Defendant or anyone acting on behalf of any Defendant, including but not limited to any such communication.

Request No. 8

All documents relating to any communication concerning Guardian Life's Members' claims for Neurontin or off-label use of any drug between You, Guardian Life, Guardian Life's Members, or any person or entity acting on behalf of You or Guardian Life and any provider, including but not limited to any such communication.

Request No. 9

All documents relating to any communication concerning Neurontin or off-label use of any drug between You, Guardian Life, or any person or entity acting on behalf of You or Guardian Life and Guardian Life's Members, including but not limited to any such communication.

Request No. 10

A representative sample of all physician contracts and pharmacy contracts applicable to Guardian Life's Members' claims, including all contracts or versions of contracts that governed off-label prescriptions, for each year from 1994 to present.

8

Request No. 11

All documents relating to disease management policies, strategies, or results that involve a condition for which Neurontin could be prescribed, including but not limited to epilepsy, pain, peripheral neuropathy, restless leg syndrome, reflex sympathetic dystrophy, bipolar disorder, social phobia, panic disorder, and migraine headaches.

Request No. 12

All documents relating to Guardian Life and its Members concerning claims, coverage benefits, pricing, payment, or reimbursement for Neurontin.

Request No. 13

All contracts, policies, benefit plans, or other agreements relating to claims for payment or reimbursement of Neurontin for Guardian Life's Members.

Request No. 14

All protocols, procedures, or requirements – whether formal or informal – for the processing of claims for payment or reimbursement of Neurontin for Guardian Life's members.

Request No. 15

All documents relating to Your or Guardian Life's formulary concerning Neurontin, including but not limited to documents reflecting consideration of inclusion of Neurontin on Your or Guardian Life's formulary.

Request No. 16

All documents relating to Your or Guardian Life's formulary development process, including but not limited to all documents considered when deciding whether to include drugs in the formulary.

9

Request No. 17

All documents concerning information provided to Guardian Life's Members or their providers that describe the use of a particular drug, including but not limited to descriptions provided to Guardian Life's Members and their providers that describe drugs included on the formulary.

Request No. 18

All documents relating to the use or labeling of Neurontin, including but not limited to all documents concerning the safety, risks, benefits, and efficacy or inefficacy of Neurontin, for both FDA-approved and off-label uses. This request does not call for the claims data of any entity other than Guardian Life.

Request No. 19

All documents that discuss or address the FDA-approved or off-label uses of Neurontin.

Request No. 20

All documents concerning coverage by Guardian Life or any person or entity acting on behalf of Guardian Life for off-label use of drugs, including but not limited to off-label use of Neurontin.

Request No. 21

All documents concerning any disapproval of coverage or reimbursement by Guardian Life or any person or entity acting on behalf of Guardian Life for any off-label use, including but not limited to off-label use of Neurontin.

Request No. 22

All documents concerning the number of prescriptions for off-label uses for which Guardian Life paid or reimbursed any person or entity, and the dollar amounts of all such payments or reimbursements for off-label prescriptions.

Request No. 23

All documents concerning the number of prescriptions for Neurontin for which Guardian Life paid or reimbursed any person or entity, and the dollar amounts of all such payments or reimbursements, broken down into (a) off-label prescriptions for Neurontin; and (b) prescriptions of Neurontin for FDA-approved indications.

Request No. 24

All records showing the dollar amounts for Guardian Life's payments and reimbursements for off-label uses from the period 1994 through the present, and the percentage the off-label payments and reimbursements represent of total payments and reimbursement costs for all claims paid or reimbursed during that period.

Request No. 25

All documents reflecting any budgetary or cost containment plan of or for Guardian Life, or the results of carrying out such plan, concerning off-label use of drugs, including but not limited to prior authorization, call center protocols and activities, academic detailing, utilization review, supply limits or days' supply limits, or special audits.

Request No. 26

All documents concerning actual or projected budgets for Guardian Life's coverage of off-label uses for drugs, including but not limited to Neurontin.

Request No. 27

All documents in which You, Guardian Life, or any person or entity acting on behalf of You or Guardian Life address, question, identify, or analyze the level, cost, type, or number of the Neurontin claims of Guardian Life's Members.

Request No. 28

Documents sufficient to identify all persons who had responsibility for reviewing, considering, analyzing, or approving of any aspect of Guardian Life's payment or reimbursement of costs of Neurontin.

Request No. 29

All documents concerning any efforts by You, Guardian Life, or any person or entity acting on behalf of You or Guardian Life to track the off-label prescriptions of drugs, including but not limited to Neurontin, for which Guardian Life was responsible for paying or reimbursing.

Request No. 30

All documents that discuss or reflect the dollar amount, numeric amount, or rate of change of Neurontin prescriptions to Guardian Life's Members.

Request No. 31

All documents relating to rebates or other payments requested by or paid to You, Guardian Life, or any person or entity acting on behalf of You or Guardian Life concerning Neurontin, including but not limited to documentation of market share calculations and the names of other drugs included in the calculations of market share.