UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE NEURONTIN MARKETING AND ) <br> SALES PRACTICES LITIGATION ) <br>  ) <br>  ) <br> THIS DOCUMENT RELATES TO: ) <br>  ) <br> *Blue Cross & Blue Shield of Alabama, et al.* ) <br> *v. Pfizer, Inc., et al.*, 1:06-cv-12295-PBS ) <br>  ) | MDL Docket No. 1629 <br><br> Master File No. 04-10981 <br><br> Judge Patti B. Saris |

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION TO REMAND

Plaintiffs Blue Cross and Blue Shield of Alabama ("BCBS") and Municipal Workers Compensation Fund ("MWCF") submit this brief in further support of their Motion to Remand to State Court.[1] Remand of this case is necessary because Plaintiffs and Defendant Dr. David Longmire are all residents of Alabama. These Alabama Plaintiffs, as noted in detail below, have pled numerous viable claims against Defendant Longmire based on, among other things, his misrepresentations regarding the medical necessity and efficacy of Neurontin in Alabama and across the country. There is no rational basis for Pfizer's fraudulent joinder argument, but it has accomplished the only realistic goal Pfizer could have had in making it – a delay of almost a year. Plaintiffs respectfully submit that the need for remand is clear and is warranted immediately.

PROCEDURAL HISTORY

On May 12, 2006, Plaintiffs filed their Complaint in the Circuit Court of Montgomery

---

[1] *See* Dkt. 650, Exs. 1- 13 (previous briefing of these issues before United States District Court for the Middle District of Alabama).

County, Alabama, alleging violations of Alabama state law against Defendants Pfizer[2] and Longmire. Plaintiffs' Complaint -Part 2,[3] ¶¶ 170-204. No federal claim was made. The Plaintiffs' claims arise from the wrongful schemes of all Defendants to sell and market Pfizer's drug, Neurontin, for a variety of uses for which it is not approved, medically necessary, or medically effective. At all times relevant to the claims made in the Complaint, Plaintiffs and Defendant Longmire were citizens of Alabama. Plaintiffs' Complaint - Part 1,[4] ¶¶ 13, 16.

On June 13, 2006, Defendant Pfizer filed a Notice of Removal in the United States District Court for the Middle District of Alabama alleging that Longmire had been fraudulently joined as a party to the action. Notice of Removal,[5] ¶ 10, 18-20.[6] Plaintiffs filed a Motion to Remand on June 29, 2006; Pfizer filed an opposition to remand on July 24, 2006; and Plaintiffs filed their reply on July 31, 2006. *See* Dkt. 650. On December 27, 2006, this case was transferred to this Court as a tag-along action to MDL 1629.

On February 27, 2007, BCBS and MWCF requested leave to argue their Motion to Remand

---

[2] Plaintiffs refer to "Pfizer" herein when referencing collectively all defendants other than Longmire.

[3] Dkt. 668, Attachment # 4, Ex. B-3, Part 3 of Exhibit A to Notice of Removal – Plaintiffs' Complaint – Pages 36-70 ("Plaintiffs' Complaint - Part 2").

[4] Dkt. 668, Attachment # 3, Ex. B-2, Part 2 of Exhibit A to Notice of Removal – Plaintiffs' Complaint – Pages 1-35 ("Plaintiffs' Complaint - Part 1").

[5] Dkt. 668, Attachment # 1, Ex. A, Notice of Removal ("Notice of Removal").

[6] Pfizer initially argued that Longmire should be realigned as a plaintiff to this action simply because he filed suit accusing Pfizer of fraud on the same day that Plaintiffs' complaint was filed. *See* Notice of Removal, ¶¶ 14-17. Longmire's Complaint has now been dismissed, and Plaintiffs assume that Pfizer will no longer pursue its realignment argument. Plaintiffs rely on their previously filed arguments against realignment, and will address any continued argument made by Pfizer on reply, if necessary. In any event, First Circuit law is clear that Longmire is properly aligned as a party defendant to this action. *See, e.g., U.S.I. Properties Corp. v. M.D. Construction Co.*, 860 F.2d 1, 4 (1st Cir. 1988) (holding that simply because the plaintiff and one defendant have claims against another defendant does not make the parties "partners in litigation" subject to realignment).

before this Honorable Court. Dkt. 650 and Exhibits 1-13 thereto. On March 9, 2007, this Court entered an Order scheduling this case for argument and allowing Plaintiffs to submit this supplemental memorandum in support of their Motion to Remand.

## PREVIOUS RELEVANT DECISIONS OF THIS COURT

This Court has addressed allegations regarding Defendant Longmire before. On January 31, 2006, in its Report and Recommendation on Defendants' Motion to Dismiss the Amended Class Complaint and the First Coordinated Amended Complaint ("1/31/06 Recommendation"), Dkt. 269, this Court noted that Longmire was one of the doctors the class and coordinated plaintiffs alleged to be part of the "Peer Selling Sub Enterprise." 1/31/06 Recommendation at 8, 9. The Court found that plaintiffs had failed to plead that the doctors actually knew the statements they were making on behalf of Pfizer regarding the efficacy and medical necessity of Neurontin were false, *id.* at 16-17, 43-44, and found the deficiencies prevented the establishment of a RICO enterprise. *Id.* at 26.

Judge Saris held on June 12, 2006, that the class and coordinated plaintiffs had alleged facts sufficient to show that the alleged members of the RICO enterprise, including Longmire as a doctor assisting Pfizer in the peer-to-peer marketing part of the scheme, had "an unlawful common purpose . . ., namely, to illegally promote off-label uses of Neurontin." *In re Neurontin Marketing, Sales Practices, and Prod. Liability Litig.*, 433 F. Supp. 2d 172, 181 (D. Mass. 2006). Judge Saris did agree with this Court that the plaintiffs' complaint failed to allege a RICO enterprise because there did not appear to be a sufficiently continuing relationship between the doctors and other persons. *Id.* at 183-84. However, neither Judge Saris nor this Court held that there was no claim against the doctors that could be brought.

Plaintiffs here do not bring a RICO claim, so determining whether a RICO enterprise is

adequately alleged is unnecessary. All that is necessary is that Plaintiffs have a *possibility* of stating a claim under Alabama law against Longmire. If Pfizer cannot prove otherwise by clear and convincing evidence, then there is no basis on which to argue that Longmire is fraudulently joined.

Judge Saris has clearly recognized that allegations regarding Longmire and other doctors established that the doctors and Pfizer shared a common purpose, and that "the alleged common purpose of promoting off-label uses of Neurontin violated the law . . . ." *Id.* at 181. To claim that Plaintiffs do not have the possibility of a claim against Longmire borders on absurd.

Moreover, Plaintiffs Complaint, unlike the class and coordinated plaintiffs' complaint, alleges that Longmire knew the statements he was making about Neurontin were false, and that he knew his misrepresentations would result in injury to Plaintiffs because they would be defrauded into paying for medically unnecessary and ineffective prescriptions of Neurontin. In the whistleblower case that brought light to the Neurontin off-label marketing scheme, Judge Saris addressed on motion to dismiss the relator's allegations that the scheme "caused the submission of numerous off-label prescriptions for Neurontin to the Medicaid program . . . ." *U.S. ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39, 51 (D. Mass. 2001). She held that increasing Neurontin prescriptions for which Medicaid would pay "was not only foreseeable, it was an intended consequence of the alleged scheme of fraud." *Id.* at 52-53. The present case is different only in that it seeks to recover damages for two private payers that suffered the same injury as Medicaid as a result of the illegal scheme, it seeks recovery from both Pfizer and Longmire, one of its partners in the scheme who happens to live in Alabama, and it brings claims only under Alabama state law.

**ARGUMENT**

As recently noted by Judge Saris in *In re Pharmaceutical Industry Average Wholesale Price Litigation* ("*AWP Litigation*"), 431 F. Supp. 2d 109 (D. Mass. 2006):

> In order to show that naming a non-diverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, by *clear and convincing evidence*, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court.

*Id.* at 117 (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001)) (emphasis added);[7] *see also Fabiano Shoe Co. v. Black Diamond Equipment, Ltd.*, 41 F. Supp. 2d 71-72 (D. Mass. 1999) ("Joinder is considered fraudulent when there is no possibility that the plaintiff can prove a cause of action against the non-diverse defendant. The burden of establishing that joinder is fraudulent is on the party seeking removal to federal court, and the burden is a heavy one."). It is not the Court's "responsibility at this stage to forecast the plaintiffs' likelihood of success on their claims . . . , for the inquiry is not whether the plaintiffs have winning claims. Instead, [the Court] must determine whether there is an objectively reasonable basis for the claims; if so, then federal jurisdiction is lacking and the state court should be permitted to hear the claims." *Mass. Diet Drugs*, 338 F. Supp. 2d at 202.

Pfizer has not alleged actual fraud in this case. Instead, Pfizer asserts only that Plaintiffs

---

[7] Other circuits, including the Eleventh Circuit, have similar disjunctive tests. *Id.* at 117-118 (citing *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004); *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (same); *Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). Plaintiffs recognize that this Court has followed First Circuit precedent when adjudicating federal procedural issues in transferred multi-district cases, *see, e.g., AWP Litigation*, 431 F. Supp. 2d at 116, but has noted that the law regarding fraudulent joinder is not well-developed in the First Circuit. *See e.g., In re Massachusetts Diet Drug Litigation* ("*Mass. Diet Drugs*"), 338 F. Supp. 2d 198, 202 (D. Mass. 2004). Therefore, Plaintiffs rely both on fraudulent joinder decisions from this district and on the authorities cited in Plaintiffs' previously submitted briefs in support of remand, all of which require remand to state court.

failed to allege that Longmire proximately caused Plaintiffs' damages, and therefore cannot prevail on a claim against Longmire. Such position is hollow and unsupported – both by the facts of this case and all applicable case law. Even a cursory review of the claims as pled in the Complaint shows that Plaintiffs have stated valid claims against Longmire under each and every theory alleged,[8] and allege the appropriate causal link in their Complaint.

Plaintiffs' previously filed briefs provide a more exhaustive account of the facts regarding Longmire's active participation in the illegal off-label marketing of Neurontin, and the harm he caused Plaintiffs. An overview is provided here.

Plaintiffs allege that Longmire played an active, knowing, and willing part in Pfizer's off-label promotion scheme. Plaintiffs' Complaint - Part 1, ¶¶ 41, 43, 47, 48, 52. Longmire "wrongfully marketed, promoted and/or lectured regarding Neurontin and its uses" for off-label treatment in order to increase Pfizer's market share and profits from Neurontin, *id.* ¶ 16; made false and/or misleading statements as to the efficacy of Neurontin for pain at the Jupiter Beach, Florida Consultants' Meeting in April 1996; *id.* ¶ 75; and later repeated these statements at a May 1996 Consultants' Meeting at the Ritz Carlton in Boston. *Id.* At the Consultants' Meeting in Jupiter Beach in April 1996, he made false and/or misleading statements regarding dosing for Neurontin, Plaintiffs' Complaint - Part 2, ¶ 133; stated "most [patients] do better as you raise [the dose] higher," *id.*; and at the same presentation, and at other presentations, such as the Consultants' Meeting at the Boston Ritz Carlton, he stated that the only reason a patient who was actually taking his medication and not malingering would not receive any benefit from Neurontin was if he was not receiving a high enough dose. *Id.*

---

[8]  Of course, Plaintiffs are not required to succeed on every claim. To be remanded, they must show only *a possibility* of validly stating one claim against the resident defendant. See *AWP Litigation*, 431 F. Supp. 2d at 118.

He made false statements such as: "the problem with Neurontin in terms of real trigeminal neuralgia is that it has to be titrated upward. And when I say 1500 milligrams, that's the target starting dose. There are colleagues in the Huntsville area who, I have people on 5400 with no side effects." *Id.* ¶ 134. In addition, he was paid fees as well as extensive travel benefits by Pfizer for agreeing to engage in peer-to-peer selling of off-label Neurontin. *Id.* ¶¶ 142, 146, 151 - 154.[9]

In addition, Longmire has admitted that he knew Neurontin was not approved by the FDA for the treatment of pain, Longmire Complaint[10] ¶¶ 11, 17; he knew that Pfizer had not applied to the FDA for such approval, *id.*; he was paid by Pfizer to assist it in promoting Neurontin for off-label use, *id.* ¶¶ 18, 20; he questioned whether such an arrangement was legal and ethical, *id.* ¶¶ 22-24; and despite such questions, he carried out the promotion of off-label uses for Neurontin without consulting an attorney as to the legal ramifications of his actions. *Id.* ¶ 25.

Finally, Plaintiffs allege the appropriate causal link between Defendant Longmire's conduct and their injury in the Complaint. *See e.g.*, Plaintiffs' Complaint - Part 2 (Alabama Deceptive Trade Practices Act Claim), ¶ 173 ("Defendants' [, Pfizer's and Longmire's,] commission of these acts or practices declared unlawful under the ADTPA caused monetary damage to consumers, as well as to

---

[9] Since filing their Complaint, Plaintiffs have learned that Longmire's role may have been even more extensive than promoting Neurontin for pain. In conjunction with his lawsuit, his attorneys issued a press release in which they admitted that Longmire had participated in "a deceptive scheme to market Neurontin for certain unapproved uses . . . includ[ing] post-herpetic neuralgia, painful diabetic neuralgia, anxiety disorder, social phobias, and bipolar disorder." Dkt. 650, Ex. 13. Indeed, Longmire admitted in his First Amended Complaint against Pfizer that, in addition to Jupiter Beach, Florida, he also promoted off-label use of Neurontin in various states, including Alabama. *See* Longmire Amended Complaint ¶ 30, *Longmire v. Pfizer, Inc.*, No. 3:06-cv-01160-TMP (N.D. Ala.), Dkt. 1, Ex. A at 15-30. (Pfizer filed only Longmire's original Complaint, which did not include this admission, with its Notice of Removal in this case, but included the amended complaint when removing Longmire's case. Plaintiffs referenced the ECF cite for Longmire's First Amended Complaint in their Reply in Support of Remand, Dkt. 650, Ex. 7, at 19 n.28, and attach it here for the Court's convenience as Exhibit A.)

[10] Dkt. 668, Attachment # 5, Exhibit C - Exhibit B to Notice of Removal - Defendant Longmire's Complaint Against Other Defendants ("Longmire Complaint").

Plaintiffs, in that both consumers and Plaintiffs were caused to pay for Neurontin when it was not medically necessary or effective for the condition for which it was prescribed."); *see id.* ¶¶ 189, 194, 201, 204.

For each claim against Longmire, Plaintiffs have provided direct quotations from Longmire and/or specifically alleged that Longmire's false and misleading statements about Neurontin's medical necessity and efficacy were intended to, and did, cause physicians to prescribe Neurontin for off-label uses. Thus, Plaintiffs have alleged that Longmire proximately caused Plaintiffs to pay for Neurontin when it was not medically necessary or effective.

Under this Court's rationale and previous analysis in this case and the *AWP Litigation*, remand is mandated because Pfizer has failed to produce clear and convincing evidence that there is *no possibility* that the Plaintiffs can establish any cause of action against Longmire. This action should be remanded on this basis immediately.

## CONCLUSION

Clearly, Plaintiffs have stated and can maintain a viable cause of action against Longmire. Indeed, this Court has already upheld similar factual allegations as stating a claim on motion to dismiss. As such, Longmire is not fraudulently joined and this Court lacks subject matter jurisdiction.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an order remanding this case back to the Circuit Court of Montgomery County, Alabama.

Respectfully submitted,


/s/ Pamela B. Slate
Pamela B. Slate
Slate Kennedy LLC
Colonial Financial Center
One Commerce Street, Suite 850
Montgomery, Alabama 36104
Telephone:    (334) 262-3300
Facsimile:    (334) 262-3301
pslate@slatekennedy.com



/s/ Kimberly R. West
Kimberly R. West
Wallace, Jordan, Ratliff & Brandt, LLC
800 Shades Creek Parkway, Suite 400
Birmingham, Alabama 35209
Telephone:    (205) 874-0352
Facsimile:    (205) 871-7534
kw@wallacejordan.com

Attorneys for Plaintiff
Blue Cross and Blue Shield of Alabama



/s/ Joshua J. Wright
Joshua J. Wright
Hollis & Wright, P.C.
505 North 20th Street, Suite 1750
Birmingham, Alabama 35203
Telephone:    (205) 324-3600
Facsimile:    (205) 324-3636
joshw@hollis-wright.com

Attorney for Plaintiff
Municipal Workers Compensation Fund, Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), which includes Plaintiffs' Liaison Counsel and Counsel for Defendants in *Blue Cross & Blue Shield of Alabama, et al.v . Pfizer, Inc., et al.*, 1:06-cv-12295-PBS, the only attorneys required to receive service of this document pursuant to Case Management Order No. 1, ¶ III(C), Dkt. 15 (12/16/2004).

Dated: April 5, 2007        /s/ Pamela B. Slate
                                        Pamela B. Slate