UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO: ALL MARKETING AND SALES PRACTICES ACTIONS | MDL DOCKET NO. 1629 <br><br> Master File No.: 1:04-cv-10981-PBS <br><br> Judge Patti B. Saris <br> Mag. Judge Leo T. Sorokin |

**PLAINTIFFS' MOTION TO COMPEL COMPLIANCE
WITH DISCOVERY ORDER NO. 7 AND FOR SANCTIONS**

Sales and Marketing Plaintiffs, by counsel, pursuant to Fed. R. Civ. P. 37 (b), respectfully request that the Court compel Defendants to immediately comply with the Court's Discovery Order No. 7 [Docket No. 582] by producing documents related to their internal Neurontin website, and for appropriate sanctions for Defendants' non-compliance with that Order.

**Background of this Motion**

For many months plaintiffs have vigorously sought Defendants' production of their internal Neurontin website. In a letter dated October 16, 2006, which is attached as Exhibit A, Plaintiffs' counsel reiterated their request for "Documents related to the internal Neurontin website, including, but not limited to, *all archived materials and all back-up copies*." (Exhibit A) (emphasis added). This topic was then addressed in the parties' November 30, 2006 Joint Report of Outstanding Disputes Regarding Document Production [Docket No. 557] ("Joint Report"). In that Joint Report, plaintiffs indicated:

> Upon information and belief, the Defendants maintain an internal website for Neurontin and its off-label uses, and use that website to organize relevant information relating to Neurontin, including joint articles, research reports, and internal reports. … [This internal website] provides a key source of information for Defendants' sales and/or detail representatives and other employees in the marketing and promotion of Neurontin for off-label uses. Accordingly, Plaintiffs are entitled to all documents relating to the internal Neurontin website.

Joint Report at 16. Plaintiffs' further indicated that they were seeking "***all archived materials and all back-up copies*** of the website. Joint Motion at 2 (emphasis added).

Defendants resisted providing documents related to the internal Neurontin website on various grounds, claiming that the request was overly broad and/or vague and ambiguous, that plaintiffs had failed to meet and confer on this issue, and that plaintiffs had not identified the basis for their information and belief regarding the existence of such a website. Joint Report at 16 – 17.

On December 12, 2006, the Court conducted a hearing on this and other discovery issues, and on December 20, 2006, it issued Discovery Order No. 7 [Docket No. 582]. In that Order, the Court rejected Defendants' objections to producing their internal Neurontin website and ordered production as follows:

> Plaintiffs believe that defendants *have (or had)* an internal Neurontin web site containing journal articles, research reports and internal reports pertaining to Neurontin for the use of defendants' employees in the marketing and promotion of Neurontin. Marketing type documents within such a website would also appear likely. Whether such a web site exists is unclear. Plaintiffs are proceeding on "information and belief" in asserting the existence of the site and defendants, while not categorically disputing the existence of some sort of internal Neurontin website, do state to date they have not located the "described website." Obviously journal articles and research reports are responsive to Plaintiffs' efficacy requests and shall be produced whether or not they exist within an internal Neurontin website. An internal Neurontin website, if it exists, appears likely to be responsive to various of plaintiffs' document requests pertaining to efficacy and marketing, ***accordingly it shall be produced***.

Discovery Order No. 7 at 5 – 6 (emphasis added).

2

Two months later, Defendants still had not produced any website documents, prompting the Court in its February 12, 2007 Discovery Order No. 9 [Docket No. 632] to order Defendants to "report to the Court by February 20, 2007, the status of their efforts to locate the internal Neurontin web site." Discovery Order No. 9 at 4. In response to this order, Defendants filed their Submission Pursuant to Discovery Order No. 9 ("Submission") [Docket No. 641-1]. In that Submission, Defendants asserted, without specific support of further explanation, that they had:

> completed a reasonable search for the materials plaintiffs requested and have identified the following items.
>
> Defendants have located a gabapentin bibliography website containing Neurontin articles. …
>
> In addition defendants have determined that certain eRooms® relating to Neurontin existed during the relevant time frame.

Submission at 1 – 2. Defendants agreed to produce the identified documents but did not identify any other responsive documents.

### Plaintiffs' Discovery of http://neurontin.pfizer.com

As Plaintiffs' counsel continued their intensive search of the mountain of documents produced by Defendants since January 15, 2007, they began to find documents referencing what appeared to be an internal intranet website with the URL http://neurontin.pfizer.com.[1] Upon making this discovery, Plaintiffs promptly requested that defendants produce this website in a letter dated February 27, 2007, attached as Exhibit B. That letter specifically identified http://neurontin.pfizer.com and other related URLs and requested that they be produced.

---

[1] Plaintiffs also discovered a resource known as "PPG On-Line," which contained "the Neurontin intranet." This resource was accessible to Pfizer employees via the Pfizer home page, which is located at http://home.pfizer.com. Even at this point, it is unclear whether http://neurontin.pfizer.com and the Neurontin intranet available through "PPG On-Line" are identical, whether one is a subset of the other, or whether the two are in fact distinct. For clarity of prose, the Plaintiffs' use of the term http://neurontin.pfizer.com expressly includes the Neurontin intranet available through "PPG On-Line." To the extent that there is any difference between the two, Plaintiffs ask that both be produced.

3

In their March 5, 2007 response, attached as Exhibit C, Defendants continued their dilatory tactics and obfuscation of the issue by raising several baseless claims. First, Defendants claimed that the website was not covered by Plaintiffs' initial requests for production. This argument was both incorrect and moot, as the Court's Discovery Order No. 7 previously required production of defendants' internal Neurontin website. Second, Defendants further suggested that the http://neurontin.pfizer.com internal website did not match the website described by Plaintiffs in the Joint Submission. It is difficult to understand how defendants could claim that http://neurontin.pfizer.com did not fall with plaintiffs' request for "documents relating to the internal Neurontin website." Could anything be more directly on point?

In a letter dated March 21, 2007, which is attached as Exhibit D, Plaintiffs' counsel reminded Defendants that the Neurontin website had been ordered produced by the Court's Discovery Order No. 7, and that the issue of Defendants' non-production needed to be addressed prior to the April 5, 2007 discovery motion filing deadline. Since that letter, the parties have conducted meet and confers on March 26th, April 2nd and April 5th[2] in an effort to resolve this issue.

However, despite Plaintiffs' numerous requests during those conferences for detailed information about http://neurontin.pfizer.com, Defendants' counsel has been unable to: (i) determine whether http://neurontin.pfizer.com still exists in some form[3]; (ii) identify the file format and hardware platform on which that site is being stored or archived, as well as any software needed to retrieve it; or (iii) identify the person or persons knowledgeable about this

---

[2] Deborah MacGregor has represented Defendants during each of those calls and Plaintiffs have been represented by Ron Aranoff, Ilyas Rona, and/or Eric Pavlack.

[3] Indications are that the Neurontin intranet exists in archived form, which certainly would be covered by Plaintiffs' request that specifically includes archived material and back-ups, as well as Discovery Order No. 7, which contemplates production of the internal website that Defendants "have (*or had*)." Discovery Order No. 7 at 5 (emphasis added).

4

topic. Instead, without committing to produce the information that it has within their possession, custody or control, Defendants continue to drag their feet by providing the Plaintiffs with vague information. The latest offerings are that the site was "decommissioned" in late 2003 or early 2004, the whereabouts of the data is still unknown, the hardware and software platforms have not been identified, they have been unable to locate someone knowledgeable about http://neurontin.pfizer.com because it was decommissioned so long ago (i.e. roughly three years ago), and even if the data is archived somewhere, it will likely be extremely burdensome—if not impossible—to retrieve. Most importantly, Defendants have not represented that they will comply with Discovery Order No. 7 and produce the Neurontin intranet by April 15, 2007.

Given the tight discovery timeline in this case, Defendants' inability to provide any useful information to facilitate resolution of this issue, and the desire to avoid further delays in this litigation caused by such delays, Plaintiffs' counsel on April 5, 2007 "cut to the chase" and asked Defendants if they would agree to produce all documents related to the internal Neurontin website by April 15, 2007. Defendants were unwilling to make such a commitment, prompting the present motion.

**Plaintiffs' Request that the
<u>Court Compel Production and Impose Sanctions</u>**

Based on the foregoing series of events, Plaintiffs do not believe that Defendants have been sufficiently diligent or forthright with respect to http://neurontin.pfizer.com or any other internal Neurontin-related websites that might exist. Indeed, if Plaintiffs had not located reference to the internal website through their review of documents produced by Defendants, Plaintiffs might have never learned of the existence of this website.[4] Clearly Defendants did not

---

[4] Notably, Defendants could have (and should have) "discovered" the existence of http://neurontin.pfizer.com if they had conducted some targeted computerized searches following the Court's Discovery Order No. 7 compelling production of their internal Neurontin website.

conduct a "reasonable search" for these ordered materials as represented in their submission to the Court. If they had, Plaintiffs would have had these documents months ago.

Plaintiffs ask that the Court compel Defendants to immediately produce the http://neurontin.pfizer.com and any other documents relating to internal Neurontin websites. Plaintiffs further ask that these documents be produced in their native formats, assuming the format is commonly used.

Moreover, Plaintiffs ask that the Court impose appropriate sanctions for Defendants' failure to conduct a reasonable search for its internal Neurontin website and for otherwise failing to produce documents from that website in response to the Court's Discovery Order No. 7. In determining appropriate sanctions, Plaintiffs respectfully request that the Court consider: (i) the highly probative nature of the internal Neurontin website, (ii) the prejudice caused by not being able to review the information with Plaintiffs' Experts, (iii) the prejudice caused by not being able to review the information during the briefing phase of the Motion for Class Certification, (iv) the prejudice caused by not being able to review the information in determining who should be deposed in this action, and (v) the prejudice—even if the information is ultimately produced—caused by having little or no time to review the information in preparing for depositions.

Dated: April 5, 2007                                Respectfully Submitted,

                                                    By: /s/ Thomas Greene
                                                    Thomas Greene, Esquire
                                                    BBO #: 210020
                                                    Ilyas J. Rona, Esquire
                                                    BBO #: 642964
                                                    GREENE & HOFFMAN
                                                    125 Summer Street
                                                    Boston, MA 02110

By: */s/ Thomas M. Sobol*
Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA 02142

By: */s/ Barry Himmelstein*
Barry Himmelstein, Esquire
LIEFF CABRASER HEIMANN & BERNSTEIN
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By: */s/ Don Barrett*
Don Barrett, Esquire
BARRETT LAW OFFICE
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By: */s/ Daniel Becnel, Jr.*
Daniel Becnel, Jr., Esquire
LAW OFFICES OF DANIEL BECNEL, JR.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

By: */s/ James Dugan*
James R. Dugan, II, Esquire
DUGAN & BROWNE, PLC
650 Poydras Street, Suite 2150
New Orleans, LA 70130

*Members of the Class Plaintiffs'*
*Steering Committee*

By: */s/ Richard Cohen*
Richard Cohen, Esquire
LOWEY DANNENBERG BEMPORAD
& SELINGER, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY 10601

7

By: */s/ Linda P. Nussbaum*
KAPLAN FOX & KILSHEIMER LLP
Linda Nussbaum, Esq.
805 Third Avenue
New York, NY 10022

*Members of the Plaintiffs' Non-Class Steering Committee*

## CERTIFICATIONS PURSUANT TO LOCAL RULES 7.1 & 37.1

I, Ilyas J. Rona, hereby certify that the provisions of Local Rule 37.1 were complied with relative to the above motion. I further certify that Plaintiffs' counsel have conferred and have attempted in good faith to resolve or narrow the issue.

/s/ Ilyas J. Rona
Ilyas J. Rona, Esq.

## CERTIFICATE OF SERVICE

I, Ilyas J. Rona, hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on April 5, 2007.

/s/ Ilyas J. Rona
Ilyas J. Rona, Esq.