UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------- x
In re:   NEURONTIN MARKETING,        : MDL Docket No. 1629
         SALES PRACTICES AND         :
         PRODUCTS LIABILITY LITIGATION : Master File No. 04-10981
                                     :
---------------------------------------------------------- x Judge Patti B. Saris
                                     :
THIS DOCUMENT RELATES TO:            : Magistrate Judge Leo T.
                                     : Sorokin
                                     :
     ALL ACTIONS                     :
                                     :
                                     :
                                     :
---------------------------------------------------------- x

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR ENTRY
OF CASE MANAGEMENT ORDER NO. 5, RELATING TO DEPOSITIONS**

Defendants Pfizer Inc. and Warner-Lambert Company ("Defendants") submit this memorandum in support of their motion for entry of Case Management Order No. 5 ("CMO5"), relating to depositions. A copy of the proposed case management order is attached hereto as Exhibit A.

### INTRODUCTION

As the Court is well aware, these proceedings and the parallel New York State proceedings involve product liability actions and sales and marketing actions, including multiple purported class actions. All or substantially all of these actions, product liability and sales and marketing alike, contain cross-cutting allegations concerning an alleged sales and marketing campaign involving Neurontin.

Deposition discovery in these and the New York proceedings (on a cross-notice basis) is about to begin in earnest. Because so many actions and attorneys are involved, and because virtually all of the actions here and in New York involve cross-cutting allegations concerning the

alleged sales and marketing campaign, the deposition process has the potential of becoming inefficient, wasteful, and unduly expensive, as well as disruptive to the lives and livelihoods of the deponents.

In light of this risk, on March 7, Defendants submitted to Plaintiffs a set of proposed deposition guidelines. The proposed guidelines are modeled on case management orders entered by other courts in other similar litigations. On April 2 (the first date on which Plaintiffs' counsel were willing to confer on the subject), the parties discussed the proposed guidelines. Plaintiffs tentatively rejected almost every substantive aspect of the proposed guidelines but agreed to provide their final positions on April 4.

On April 4, Defendants and Plaintiffs had a further conference. Plaintiffs confirmed their rejection of almost every substantive aspect of the proposed guidelines. (Plaintiffs' positions on specific provisions of the proposed guidelines are described in more detail below.)

The position expressed during the April 4 conference came as no surprise to Defendants. The evening before the conference, product liability Plaintiffs provided to Defendants a list of **56** current and former employees of Defendants whom they alone wish to depose before June 29. (A copy of the list and the letter and notice of deposition that accompanied it is attached hereto as Exhibit B.) Notably, the list does not include third-party witnesses, nor apparently does it reflect any effort at coordination with the sales and marketing Plaintiffs, who presumably wish to depose additional but as-yet-unspecified current and former employees. Further, product liability Plaintiffs did not suggest even that their own list is exhaustive; they apparently wish to reserve the right to depose additional current and former employees identified during the ongoing review of documents and/or the testimony of the 56 individuals whom they already have identified.

Clearly, the deposition process is close to spiraling out of control. It is equally clear that Plaintiffs have no intention of agreeing to quantitative limits and comprehensive procedures for the depositions. Accordingly, Defendants respectfully request that the Court follow the lead of other courts by implementing Defendants' proposed guidelines, which have been re-formatted and submitted herewith as Proposed CMO5.[1] CMO5 will ensure that the depositions are completed efficiently, productively, and on time.

## ARGUMENT

## CMO5 SHOULD BE ENTERED

### A.  The Purposes Of This MDL Proceeding Are Settled, And Other Similarly Situated Courts Have Entered Similar Case Management Orders

The JPML's original Transfer Order made clear that this MDL was created to "eliminate duplicative discovery, prevent inconsistent pretrial rulings . . ., and conserve the resources of the parties, their counsel and the judiciary." (Transfer Order, October 26, 2004, at 2.) This Court restated this purpose in CMO1:

> "WHEREAS, in order to promote judicial economy and avoid duplication, the Court finds that it would be appropriate for consolidation and/or coordination of all actions filed, removed to, or transferred to this District and for an organization of Plaintiffs' counsel to coordinate the efforts of counsel in these actions."

(Docket # 15 at 3.)

In similar circumstances, to promote the same ends, numerous other courts have entered case management orders like proposed CMO5. See infra. The concerns that prompted these

---

[1] Exhibit A differs in a handful of respects from the proposed guidelines that were provided to Plaintiffs on March 7. Most notably, Defendants have accepted Plaintiffs' suggestion that the requirement for serial numbering of deposition exhibits be deleted, and Defendants have accepted Plaintiffs' comments as to the provisions of Section VI.

3

courts to act exist here as well, and there can be no question that this Court is fully empowered to bring order to what otherwise promises to be a free-for-all.

**B.   Proposed CMO5 Promotes The Purposes Of This MDL**

Plaintiffs oppose five critical components of proposed CMO5. Each of the five, however, is designed to "eliminate duplicative discovery[,] conserve the resources of the parties [and] their counsel," promote efficiency, and/or avoid undue impositions on deponents.

**1.   Limit On Number Of Depositions (Section II.B.)**

Section II.B. of proposed CMO5 provides that, absent good cause shown, Plaintiffs will be limited to 20 non-case-specific depositions of Defendants' current and former employees and third-party witnesses. Plaintiffs refuse to agree to **any** limit. Indeed, as noted above, product liability Plaintiffs alone have indicated that they want to depose, by June 29, 56 current and former employees of Defendants. Considering that this list of 56 does not include third-parties or additional current and former employees whom sales and marketing Plaintiffs might seek to depose or additional current and former employees identified through ongoing document reviews and depositions, one can only imagine the number of depositions that Plaintiffs would conduct if left to their own devices.

Clearly, a limit on the number of depositions of Defendants' current and former employees is required.[2] Defendants propose that the limit be 20, not including case-specific depositions. Twenty is generous. It is twice the limit under Local Rule 26.1(c). Further, the limit does not include the additional depositions that may be required with respect to specific cases, e.g., the deposition of a sales representative who called on a particular product liability

---

[2]   The Court unquestionably has the power to impose a limit on the number of depositions of Defendants' current and former employees and the power to order every other aspect of CMO5. See generally D.F. Herr, Manual for Complex Litigation, Fourth § 11.451 (2006) (hereinafter, "Manual for Complex Litigation").

4

plaintiff's doctor. The limit would merely set a boundary on the number of current and former employees Plaintiffs could depose as to their core allegations, which, after all, vary little from case to case.

Plaintiffs' position flies in the face of authority. The Manual for Complex Litigation cautions that:

> Depositions are often overused and conducted inefficiently, and thus tend to be the most costly and time-consuming activity in complex litigation. The judge should manage the litigation so as to avoid unnecessary depositions, limit the number and length of those that are taken, and ensure that the process of taking depositions is as fair and efficient as possible.

Manual for Complex Litigation, Fourth § 11.45. "The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. Parties are entitled to a reasonable opportunity to investigate the facts—and no more." Vakharia v. Swedish Covenant Hosp., Case No. 90-C-6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994). Discovery should not be an exercise in annoyance, but rather, a reasoned process, conducted within the applicable rules of civil procedure, particularly in multi-district litigation:

> The Federal Rules of Civil Procedure are to be construed and administered to secure the just, speedy, and inexpensive determination of every action. . . . They are not, however, to be ignored. Conformity with the Rules is especially important in a complex, multi-district anti-trust case like this, involving, as it does, six plaintiffs and ten defendants, represented by some two dozen attorneys.

In re Sulfuric Acid Antitrust Litig., No. 03-C-4576, MDL No. 1536, 2005 WL 1994105, at *6 (N.D. Ill. Aug. 19, 2005).

Imposing a limit on the number of depositions appropriately will force Plaintiffs to take the time carefully to identify the current and former employees who are truly important to their cause. This they must do, for, as the Advisory Committee Notes to the 1993 amendment to Rule

5

30(a) that imposed the ten-deposition limit explains, "counsel have a professional obligation to develop a mutual cost-effective plan for discovery . . .." Fed. R. Civ. P. 30, advisory committee's note to 1993 amendments to Rule 30(a)(2)(A). And this Plaintiffs certainly can do, not only because they have been provided with a mass of documents, but because this case's roots are in the Franklin matter, and discovery was conducted and completed in Franklin long ago. Pursuant to prior case management orders in these proceedings, the fruits of that discovery have been available to Plaintiffs for years and may be utilized by them. Plaintiffs began this case with a running start.

Given product liability Plaintiffs' demand for **56** depositions, it would appear that Plaintiffs have no intention of conducting this critical, mandatory exercise. Indeed, even a cursory review of the list of 56 reveals that a scatter-shot approach has been utilized. For example, the list includes 23 separate members of a single team, the PMP team.

### 2.    Location Of Depositions (Section III)

Section III provides that, absent agreement, (1) Plaintiffs will be deposed in the district in which they filed their actions, (2) Plaintiffs/decedents' doctors' depositions will be deposed where they live, and (3) Defendants' current and former employees will be deposed in their home states. This approach simply mirrors the law. See, e.g., Smith v. Shoe Show of Rocky Mount, Inc., Civil Action No. 00-30141-MAP, 2001 U.S. Dist LEXIS 8618, at *1 (D. Mass., April 26, 2001) (employees of corporate party who are not officers or directors cannot be forced to travel for deposition); Farquhar v. Shelden, 116 F.R.D. 70, 72 (E.D. Mich. 1987) (same); United States v. Rock Springs Vista Dev., 185 F.R.D. 603 (D. Nev. 1999) (plaintiff must submit to deposition in forum of the suit); Rapoca Energy Co., L.P. v. Amci Export Corp., 199 F.R.D. 191, 193 (W.D. Va. 2001) (appropriate location for defendant's deposition is state of residence

or employment); Custom Form Mfg., Inc. v. Omron Corp., 196 F.R.D. 333, 336 (N.D. Ind. 2000) (deposition of corporation occurs at principal place of business). This approach also would prevent further attempts by Plaintiffs to notice the depositions of Defendants' non-officer employees for locations many hundreds of miles from where they live and work (attempts that led, as the Court will recall, to motion practice).[3]

### 3. Selection Of Attorneys To Conduct Depositions (Section IV.A.)

Section IV.A. provides, in summary, that one attorney shall be designated as the principal examiner for each of the two camps of Plaintiffs, that these principal examiners shall limit their examinations to issues relating to their respective claims, and that no redundant or repetitive questioning shall be permitted. Plaintiffs will not agree to these provisions.[4]

Requiring Plaintiffs to designate principal examiners will serve two important purposes. First, it will speed the deposition process, avoiding transition time and the possibility that a second, third, fourth, etc., examiner for the same group of plaintiffs will cover previously-covered ground. Second, it will lessen the stress on witnesses. Common sense dictates that the more the attorneys whose questions a witness must field, the lengthier the deposition and the greater the stress on the witness.

---

[3] On April 4, Plaintiffs proposed that the parties agree that where a single deposition of an individual who lives and works outside New York or Boston is at issue, the location for the deposition be New York or Boston, but where multiple depositions of individuals who live or work outside New York or Boston are at issue, the location for the depositions be where they live or work. An arrangement like this inevitably would lead to abuse and further motion practice. Plaintiffs could simply attempt to schedule depositions of individuals who live or work outside New York or Boston at diverse times, forcing Defendants to make the witnesses travel to Boston or New York.

[4] Counsel for some of the non-coordinated sales and marketing Plaintiffs have indicated that they would be willing to agree that only three attorneys for the non-coordinated sales and marketing Plaintiffs could examine a particular witness. Under this non-starter proposal, each witness could be examined by three different attorneys for just the non-coordinated sales and marketing Plaintiffs, plus an undefined number of attorneys for the coordinated sales and marketing Plaintiffs and the product liability Plaintiffs, and perhaps others.

Moreover, the approach Defendants propose is not a novel one. Many other courts handling similar cases have ordered this or a very similar approach. See, e.g., In re Prempro Prods. Liab. Litig., MDL Docket No. 4:03CV1507 WRW, Practice and Procedure Order No. 2 at 4 (E.D. Ark. July 2, 2003) (one principal examiner) (Exhibit C hereto); In re: New York Bextra and Celebrex Prod. Liab. Litig., Index No. 560001/2005, Case Management Order No. 8 at 9 (N.Y. Supreme Ct., N.Y. County, July 31, 2006) (limited number of principal examiners) (Exhibit D hereto); In re Bextra and Celebrex Marketing Sales Practices and Prod. Liab. Litig., Case No. M:05-CV-01699-CRB; MDL No. 1699, Pretrial Order No. 4: Conduct of Discovery at 10 (N.D. Cal., Feb. 7, 2006) (two principal examiners for plaintiffs in product liability and sales practices litigation) (Exhibit E hereto). Defendants respectfully request that this Court follow suit.

The other provisions of Section IV.A. have obvious merit: Lest precious time and other resources be wasted, principal examiners should limit themselves to the matters that concern them, and redundant examinations should not occur.

4.    **Sequence of Examinations (Sections IV.B. and IV.C.)**[5]

Sections IV.B. and IV.C., which Plaintiffs oppose in their entirety, provide for an orderly, logical sequence of examination in connection with depositions taken by Plaintiffs **and** Defendants. Given the large number of parties, claims, and counsel, it only makes sense to establish a structure for the depositions. If this were a perfect world in which cooperation and

---

[5] Defendants and product liability Plaintiffs are in the midst of discussions concerning scheduling and procedures for the depositions of the treating physicians in the Track One cases. If those discussions do not bear fruit soon, Defendants will submit in connection with their reply papers on this motion a revised form of Proposed CMO5 that includes provisions governing these particular depositions and will ask that the Court address this subject at the April 17 conference.

good faith abounded, the depositions would proceed without a hitch. But this is not a perfect world, and Sections IV.B. and IV.C. are designed to compensate by ensuring that the depositions proceed logically, efficiently, and expeditiously. Sections IV.B. and IV.C. will prevent wasteful intra-deposition disputes concerning batting order.

Other courts in similar situations have seen the wisdom of provisions just like Sections IV.B. and IV.C. See, e.g., In re Prempro Prods. Liab. Litig., supra, Practice and Procedure Order No. 2 at 7 (sequence of examinations) (Exhibit C hereto); In re: New York Bextra and Celebrex Prod. Liab. Litig., supra, Case Management Order No. 8 at 11 (sequence of examinations) (Exhibit D hereto); In re Bextra and Celebrex Marketing Sales Practices and Prod. Liab. Litig., supra, Pretrial Order No. 15: Amendment of Pretrial Order No. 4 with Respect to Designation of Examiners at Depositions of Pfizer Witnesses at 3 (N.D. Cal., July 5, 2006) (sequence of examinations) (Exhibit F hereto). Defendants respectfully request that this Court follow suit on this issue as well.

### 5. Copies of Documents (Section V.A.)

Under Section V.A., an attorney who has noticed a deposition will be required to provide, 48 hours in advance of the deposition, a copy of all of the documents as to which he or she expects to examine the deponent. Plaintiffs oppose this provision.[6]

Other courts in similar cases have adopted near clones of Section V.A. See, e.g., See, e.g., In re Prempro Prods. Liab. Litig., supra, Order (Sept. 9, 2004) (very similar provision) (Exhibit G hereto); In re Diet Drugs (Phentemine/Fenluramine/Dexfenfluramine) Prods. Liab.

---

[6] Section V.A. also requires the provision of sufficient copies of the documents during the course of the deposition. Plaintiffs apparently do not oppose this provision.

9

Litig., MDL Docket No. 1203, Pretrial Order No. 21 at 2-3 (E.D. Pa.) (very similar provision) (Exhibit H hereto). Courts have adopted such provisions with good reason.

Time will be at a premium during the coming months. If witnesses are shown documents for the first time during depositions, the examinations will be delayed while the witnesses review the documents before being examined on them. The delays would be substantial. Millions of documents are at issue, and many of them are old and voluminous. It will be no mean feat for witnesses to re-familiarize themselves with documents. Better that this occur before the depositions than during, when multiple meters and a camera will be running. The provision of documents in advance will permit witnesses to review them in advance, rather than while a roomful of lawyers sit idly by. Precious time will be saved, and fully-informed testimony will result. Springing documents on witnesses would serves no one's interest. It has been nearly 50 years since the Supreme Court made clear that the purpose of pretrial discovery is to avoid the sort of ambush and "blindman's bluff" the Plaintiffs' approach would permit. See United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter CMO5 in the form attached hereto.

Dated: April 5, 2007

                        DAVIS POLK & WARDWELL

                        By:  /s/ Neal A. Potischman
                              Neal A. Potischman

                        450 Lexington Avenue
                        New York, New York 10017
                        (212) 450-4000

SHOOK, HARDY & BACON L.L.P.

By: /s/ Scott W. Sayler
Scott W. Sayler
2555 Grand Boulevard
Kansas City, Missouri 64108
(816) 474-6550

- and -

HARE & CHAFFIN

By: /s/ David B. Chaffin
David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on April 5, 2007.

/s/David B. Chaffin

11