UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| **IN RE NEURONTIN MARKETING AND** ) | |
| **SALES PRACTICES LITIGATION** ) | |
| _____) | MDL Docket No. 1629 |
| ) | |
| **THIS DOCUMENT RELATES TO:** ) | Master File No. 04-10981 |
| ) | |
| *Blue Cross & Blue Shield of Alabama, et. al.* ) | Judge Patti B. Saris |
| *v. Pfizer, Inc., et. al.,* 1:06-CV-12295-PBS ) | |
| _____) | |

**MEMORANDUM IDENTIFYING CERTAIN INACCURATE REPRESENTATIONS
ASSERTED IN PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF THE MOTION TO REMAND**

Defendant David R. Longmire, M.D. ("Dr. Longmire") submits this Memorandum for the purpose of bringing to the Court's attention certain mischaracterizations of Dr. Longmire's prior statements made in Plaintiffs' Supplemental Memorandum in Support of Motion to Remand ("Supplemental Memo"). Dr. Longmire takes no position on the Plaintiffs' Motion to Remand or Pfizer's opposition to that motion, or the legal arguments made by either party in connection therewith.[1]

In their Supplemental Memo, the Plaintiffs' have mischaracterized Dr. Longmire's statements in order to create the preposterous illusion that Dr. Longmire has admitted that he participated in the alleged fraudulent marketing scheme to promote Neurontin. Dr. Longmire made no such admissions. The Plaintiffs' blatant misrepresentations compel Dr. Longmire to

---

[1] This Memorandum is submitted as part of counsel's duty to inform the Court of factual inaccuracies upon which the Court may rely. It is not intended as a legal response to Plaintiffs' Supplemental Memorandum in Support of the Motion to Remand, nor is it intended to have any estoppel effect on any defenses Dr. Longmire may have to Plaintiffs' claims against him.

present this Court with a more accurate picture of the statements Dr. Longmire has made regarding Neurontin.

## I.     PROCEDURAL HISTORY

On May 12, 2006, Dr. Longmire filed a complaint (the "Alabama Complaint") against Pfizer, Inc. and Warner-Lambert Co. in the Circuit Court of Franklin County, Alabama. Dr. Longmire was seeking damages and indemnification from Pfizer for the claims made by the Plaintiffs and a consortium of third party payors regarding his alleged participation in promoting Neurontin for off-label purposes. On May 15, 2006, he amended the Alabama Complaint ("Amended Alabama Complaint") to add Warner-Lambert Company, LLC and Parke-Davis as defendants, and also to plead additional facts and claims. Around the same time, counsel for Dr. Longmire distributed a press release describing Dr. Longmire's lawsuit. In neither the pleadings nor the press release did Dr. Longmire ever admit that he promoted Neurontin for on-label or off-label use.

## II.    ARGUMENT

### A.    Dr. Longmire's Actual Statements Contradict the Plaintiffs' Allegations.

In their Supplemental Memo, the Plaintiffs assert that Dr. Longmire made the following statements in the Alabama Complaint:

1. that he knew Neurontin was not approved by the FDA for the treatment of pain (¶¶ 11, 17);

2. that he knew that Pfizer had not applied to the FDA for such approval (¶¶ 11, 17);

3. that he was paid by Pfizer to assist in promoting Neurontin for off-label use (¶¶ 18, 20);

4. that he questioned whether such an arrangement was legal and ethical (¶¶ 22, 24); and

    5.    that he carried out the promotion of off-label uses for Neurontin (¶ 25).

Supplemental Memo at 7.

The Plaintiffs' misrepresentations of the allegations contained in the Alabama Complaint create two erroneous impressions: (1) that Dr. Longmire's conduct was somehow wrong because the FDA had not approved Neurontin for the treatment of pain; and (2) that Dr. Longmire engaged in the "promotion" of Neurontin for off-label uses. Contrary to the Plaintiffs' assertions, what Dr. Longmire actually asserted in the paragraphs the Plaintiffs cite above is as follows:

> ¶ 11. The Defendant [Pfizer, Inc.] provided study grants, solicited the targeted physicians to publish articles supporting the expanded use of Neurontin to reduce pain, and, through seemingly independent medical education companies, invited these physicians to speak at so-called consultants' meetings and educational events. The Defendant represented that it was gathering the studies and articles as part of its efforts to obtain clinical data to support an FDA application for approval of Neurontin as a treatment for certain types of neuropathic pain.
>
> ¶ 17. On or about 1995, the Defendant invited Dr. Longmire to participate in a small meeting of academic and practicing physicians to discuss their individual and collective experience with Neurontin. In addition to speaking about seizures, each speaker related similar observations in patients who experienced a reduction in comorbid pain when given Neurontin. When a medical school faculty member asked one of the Defendant's senior management officials why the Defendant was not developing Neurontin for use in neuropathic pain, the manager explained that such topics could only be answered after all appropriate studies and reports were submitted to the FDA in an application for a new indication for the use of Neurontin.
>
> ¶ 18. Several months after that meeting, Dr. Longmire received an educational grant from the Defendant to analyze the clinical records of comorbid pain in patients who had been given Neurontin for seizures.

¶ 20.   The Defendant provided Dr. Longmire with additional development grants for actuarial studies on comorbid or neuropathic pain and its response to Neurontin.

¶ 22.   The Defendant and/or its agents told Dr. Longmire that the lectures were intended to present early studies of the development of Neurontin for seizures to physicians who were not aware of the indications or methods of using Neurontin, and also told Dr. Longmire that he could speak about off-label uses of Neurontin where appropriate.

¶ 24.   Dr. Longmire asked if his participation in small discussion groups, consisting of five to six well-known academic neurologists, epileptologists and pain physicians for the purpose of creating, editing or reviewing educational materials that contained discussion of neuropathic pain, was appropriate.  The Defendant told Dr. Longmire that it had decided to proceed with multicenter control trials on two types of neuropathic pain to support the Defendant's application for FDA approval for the use of Neurontin to treat neuropathic pain, and that therefore his participation in such discussion groups was appropriate.

¶ 25.   Relying on the Defendant's statements, in which the Defendant appeared to be following CME guidelines while preparing for, or performing, appropriate control trials necessary for FDA approval, Dr. Longmire engaged in a series of presentations at individual and group meetings, supervised by apparently accredited CME groups, during which he shared his clinical experience and category analysis of patients who had initially been placed on Neurontin for seizures, then for other neurological abnormalities including neuropathic pain.

### A.   Plaintiffs' Allegations Regarding FDA Approval Are Irrelevant.

While manufacturers are strictly limited in what they can communicate to physicians about the off-label use of a drug, *see* 21 U.S.C. § 360aaa *et. seq.*, physicians have a First Amendment right to communicate with other physicians about the off-label uses of drugs.  *See Washington Legal Found. v. Henney*, 202 F.3d 331, 333 (D.C. Cir. 2000).  Thus, Plaintiffs' intimation that Dr. Longmire engaged in wrongful conduct because the FDA had not approved Neurontin for pain management flies in the face of well-established law.

### B.  Plaintiffs' Allegations that Dr. Longmire "Promoted" Neurontin Are Erroneous.

More disturbing, however, is the Plaintiffs' attempt to give this Court the impression that Dr. Longmire actively promoted Neurontin, where the actual allegations in the Alabama Complaint state nothing of the kind. The Plaintiffs' incorrectly assert that Paragraphs 18 and 20 of the Alabama Complaint show that Pfizer paid Dr. Longmire to assist it in promoting Neurontin for off-label use. What Paragraphs 18 and 20 actually say is that Pfizer provided Dr. Longmire with grants to conduct studies on Neurontin as a drug to treat pain. Nowhere in Paragraphs 18 or 20 does Dr. Longmire assert that Pfizer paid him to promote Neurontin in any manner.

The Plaintiffs also erroneously assert that in Paragraph 25 of the Alabama Complaint, Dr. Longmire admitted he engaged in the promotion of off-label uses of Neurontin. However, Paragraph 25 of the Alabama Complaint actually states that Dr. Longmire attended continuing medical education events, at which he "shared his clinical experience and category analysis of patients who had initially been placed on Neurontin for seizures, then for other neurological abnormalities including neuropathic pain." The Plaintiffs' misrepresentations of Dr. Longmire's allegations in the Alabama Complaint are reprehensible, as they give the Court the erroneous impression that Dr. Longmire was actively marketing Neurontin for off-label uses. The actual allegations contained in the Alabama Complaint show that Dr. Longmire did nothing of the kind.

The Plaintiffs again incorrectly assert that in the Amended Alabama Complaint, Dr. Longmire admitted that he traveled the country "promoting" Neurontin. *See* Supplemental Memo at 7, n. 9. In fact, what Dr. Longmire actually stated in the Amended Alabama Complaint was that he (like hundreds of other doctors do with regard to their experiences with other medications) presented at continuing medical education events on his experiences with

5

Neurontin as a medication for pain. *See* Plaintiff's First Amended Complaint ¶ 30, attached as Exhibit A to the Supplemental Memo. In no pleading or other filing did Dr. Longmire ever state that he engaged in the "promotion" of Neurontin, as the Plaintiffs would have this Court believe.

The Plaintiffs continue to misrepresent Dr. Longmire's activities when they make the outlandish allegation that Dr. Longmire's attorneys admitted in a press release that he participated in a "deceptive scheme to market Neurontin for certain unapproved uses…" *See* Supplemental Memo at 7, n.9. In context, the press release states that "Dr. Longmire's lawsuit charges that Warner-Lambert defrauded him by exploiting his medical expertise and reputation and luring him to unwittingly participate in a deceptive scheme to market Neurontin for certain unapproved uses, commonly known as off-label uses." *See* Press Release, dkt. 650, Ex. 13. Considering the actual words and context of Dr. Longmire's prior statements, the Plaintiffs' repeated attempts to create the incorrect impression that Dr. Longmire knowingly and voluntarily engaged in the "promotion" of Neurontin is ludicrous.

## III.   CONCLUSION

For the reasons stated above, the Court should disregard the Plaintiffs' misrepresentations regarding Dr. Longmire's prior statements.

6

Respectfully submitted,

**David R. Longmire,**

by his attorneys,

    /s/ Paul W. Shaw
Paul W. Shaw
Benjamin M. Welch
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Tel: 617-856-8200
Fax: 617-856-8201
Email: pshaw@brownrudnick.com
       bwelch@brownrudnick.com

Robert A. Griffith
Gargiulo/Rudnick LLP
66 Long Wharf
Boston, MA 02110
Tel: 617-742-3833
Fax: 617-523-7834
Email: rgriff@grglaw.com

                                          Bruce F. Rogers
                                          Charles K. Hamilton
                                          Bainbridge, Mims, Rogers & Smith, LLP
                                          The Luckie Building, Suite 415
                                          600 Luckie Drive
                                          Post Office Box 530886
                                          Birmingham, Alabama 35253
                                          Tel.: 205-879-1100
                                          Fax.: 205-879-4300
                                          Email: brogers@bainbridgemims.com
                                                      khamilton@bainbridgemims.com

## CERTIFICATE OF SERVICE

      I, Benjamin M. Welch, hereby certify that this document will be filed through the ECF system for the U.S. District Court for the District of Massachusetts and will be sent to all counsel of record as identified on the Notice of Electronic Filing, including Plaintiffs' Counsel and Counsel for Defendant Pfizer, Inc. in *Blue Cross & Blue Shield of Alabama, et. al. v. Pfizer, Inc., et. al.*, 1:06-CV-12995-PBS.

                                                                     /s/ Benjamin M. Welch
Dated April 9, 2007                                             Benjamin M. Welch

# 1489427 v1 - WELCHBM - 026035/0001