UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------- x

In re: NEURONTIN MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY
LITIGATION

THIS DOCUMENT RELATES TO:

*Blue Cross & Blue Shield of Alabama, et. al. v.
Pfizer, Inc, et al.,*

Docket No. 1:06-cv-12295-PBS

: MDL Docket No. 1629
: Master File No. 04-10981
: Judge Patti B. Saris
: Mag. Judge Leo T. Sorokin

---------------------------------- x

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION TO REMAND AND IN RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

Defendants Pfizer Inc., Warner-Lambert Company LLC., Warner-Lambert Company, and Parke-Davis ("defendants") respectfully submit that this Court has jurisdiction over this matter because plaintiffs—two Alabama third-party payors ("TPPs")—have fraudulently joined the only Alabama physician named as a defendant in this litigation in an effort to evade federal jurisdiction and to avoid having their virtually identical claims involving the alleged off-label promotion of Neurontin consolidated in the above-captioned Neurontin multi-district litigation. Federal jurisdiction is proper because: (1) plaintiffs have failed to state a valid claim against Dr. Longmire; and (2) Dr. Longmire should be realigned as a plaintiff in this action.[1]

---

[1] Defendants similarly rely on the argument advanced in their Notice of Removal and Defendants' Opposition to Plaintiffs' Motion to Remand ("Defs' Opp'n") (included at Docket No. 650) in support of their argument that Dr. Longmire should be realigned as a plaintiff in this action. Defs' Opp'n at 21-23; see Pls' Supp. Mem. at 2 n.6. That Dr. Longmire's lawsuit against defendants has now been dismissed does not matter for purposes of defendants' realignment argument because, as the First Circuit has recognized, there "was a genuine conflict between the parties at the time" that plaintiffs "filed [their] complaint." U.S.I. Prop. Corp. v. M.D. Const. Co., 860 F.2d 1, 5 (1st Cir. 1988); see Scott v. Francher, 369 F.2d 842, 844 (5th Cir. 1966) (stating that "[r]e-alignment of the parties is to be accomplished on the basis of the facts available at the commencement of the action"). Plaintiffs cannot and do not contest defendants' assertion that the "primary and controlling matter" in dispute in this litigation is whether defendants engaged in a fraudulent scheme to promote Neurontin for off-label use. Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 72 (1941).

## INTRODUCTION

Just like the other TPP complaints in the Neurontin MDL, plaintiffs' complaint focuses on an alleged scheme by the defendants to market and promote Neurontin fraudulently for various off-label uses through various means. Just like the other TPP complaints in the Neurontin MDL, plaintiffs' complaint mentions the names of several doctors who allegedly made misstatements concerning the off-label use of Neurontin. However, unlike those other TPP complaints, plaintiffs here have "cherry picked" among these doctors and included one doctor—Dr. David Longmire, a resident of the State of Alabama—as a defendant in this case in order to avoid federal diversity jurisdiction in order to attempt to litigate their claims in an Alabama state court. In doing so, plaintiffs' complaint attempts to assert five causes of action against Dr. Longmire: (1) violation of the Alabama Deceptive Trade Practices Act ("ADTPA"); (2) fraud, deceit and suppression; (3) negligent or wanton conduct; (4) negligence or wantonness per se; and (5) conspiracy. The sole basis of plaintiffs' claims against Dr. Longmire are entirely truthful statements that Dr. Longmire made over ten years ago to other doctors at conferences in Boston, Massachusetts and Jupiter Beach, Florida about his own clinical experience with Neurontin.[2]

Defendants have previously explained that plaintiffs have no valid cause of action against Dr. Longmire under Alabama law because plaintiffs have not alleged and cannot demonstrate that Dr. Longmire's statements somehow affected these TPPs' reimbursement decisions related to the off-label use of Neurontin or that these TPPs in any way relied on Dr. Longmire's statements. See Defs.' Opp'n to Plaintiffs' Mot. to Remand ("Defs.' Opp'n") (included at Docket

---

[2] Plaintiffs improperly attempt to supplement their insufficient pleadings by incorporating new allegations regarding other statements that Dr. Longmire may have made at other events, see Pls' Supp. Mem. at 7 n.9; and by advancing an entirely new (and specious) theory of causation and reliance based on Dr. Longmire's off-label prescriptions of Neurontin to plaintiffs' insureds. See Pls' Reply Mem. at 21–24; Pls' Supp. Mem. at 8. Defendants need not respond to these newfound allegations and theories, see Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 5 (D. Mass. 2004) (Saris, J.) (noting that defendants must show "there is no possibility, *based on the pleadings*, that the plaintiff can state a cause of action against the non-diverse defendant in state court" (emphasis added)), nor are they sufficient to remedy the flaws in plaintiffs' claims in any event. See infra.

No. 650). Defendants here supplement that argument and further demonstrate that Dr. Longmire is fraudulently joined here.

## ARGUMENT

I.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST DR. LONGMIRE BECAUSE THEY HAVE FAILED TO ALLEGE CAUSATION OR RELIANCE

There is no "reasonable basis in law or fact" for plaintiffs' claims against Dr. Longmire because Plaintiffs have not adequately pleaded and cannot show the required elements of causation and reliance. Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 4 (D. Mass. 2004) (Saris, J.) (noting that defendants' "right to remove is 'to be determined according to the plaintiff's pleading at the time of the petition for removal'" (quoting Pullman Co. v. Jenkins, 350 U.S. 534, 537 (1939)). Under Alabama law, "the proximate cause of an injury is that cause which in the natural and probable sequence of events, and *without intervention of any new or independent cause*, produces the injury and *without which* such injury would not have occurred." 2 Alabama Pattern Jury Instructions § 33.00 (2d ed. 1993) (emphasis added); see also Boackle v. Bedwell Constr. Co., 770 So. 2d 1076, 1081 (Ala. 2000) (citing Alabama Pattern Jury Instruction § 33.00 in a fraud case). If a plaintiff "would have adopted the same course irrespective of the misrepresentation and would have sustained the same degree of damages anyway, it can not be said that the misrepresentation caused any damage," and thus the elements of causation and reliance are lacking. Hunt Petroleum Corp., 901 So. 2d at 4 (quoting Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortgage Co., 390 So. 2d 601, 611 (Ala. 1980)).

Plaintiffs here allege that a far-reaching fraudulent marketing scheme on the part of the defendants caused them to reimburse for off-label prescriptions of Neurontin, but nowhere do plaintiffs allege that they even received Dr. Longmire's purported misrepresentations in 1996, much less that these specific statements influenced their decision to reimburse for any off-label prescriptions of Neurontin. Indeed, it is preposterous for plaintiff BCBS—the single largest TPP

in Alabama—to suggest that its reimbursement decisions related to Neurontin would have been different were it not for Dr. Longmire's comments to a room of physicians in Boston and Jupiter Beach in 1996.[3]

Moreover, absent special circumstances not relevant here, Alabama law does not provide for third-parties to recover on the basis of misrepresentations that were not made to them. Ames v. Pardue, 389 So. 2d 927, 931 (Ala. 1980); see also Montgomery Rubber & Gasket Co. v. Belmont Machinery Co., 308 F. Supp. 2d 1293, 1298–1300 (M.D. Ala. 2004). In the rare case where a third-party has been permitted to bring a fraud claim, courts have found that the defendant must have intended to induce the third-party to rely on the misrepresentations. See, e.g., Thomas v. Halstead, 605 So. 2d 1181, 1184–85 (Ala. 1992). Dr. Longmire, however, has stated that he never intended for any statements that he made regarding the off-label use of Neurontin to influence the coverage and reimbursement decisions of TPPs. Decl. of David Longmire ¶ 19 (Ex. B to Defs.' Opp'n); see Ames, 389 So. 2d at 931-32; see also Chase v. Kawasaki Motors Corp., 140 F. Supp. 2d 1280, 1293 (M.D. Ala. 2001).

Finally, plaintiffs do not allege and cannot show that they relied on Dr. Longmire's alleged misrepresentations in making their reimbursement decisions. Regardless of the truth of the factual allegations or the cause and extent of their supposed injuries, plaintiffs have no cause of action under Alabama law based on alleged fraudulent statements made to, and *relied upon*, by other parties. Alabama law has "never gone so far as to say that the injured party does not

---

[3] Alabama's articulation of the standard for causation and reliance is no different from the one that this Court and Judge Saris adopted related to the plaintiffs' common law and consumer protection claims in the Neurontin MDL. See Report & Recommendation at 19 (Docket No. 269) (emphasis added) (citing In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61 (S.D.N.Y. 2002); see In re Neurontin Mktg., Sales Practices., & Prods. Liab. Litig., 433 F. Supp. 2d 172, 186 (D. Mass. 2006) (adopting Report and Recommendation except as outlined in opinion). Plaintiffs' effort to import a different standard of causation from the Neurontin whistleblower action: (1) ignores the fundamental differences between plaintiffs' common law and consumer protection claims here and those presented by Dr. Franklin under the federal False Claims Act; and (2) demonstrates the absence of support for plaintiffs' claims under Alabama law. See Pls.' Supp. Mem. at 4; U.S. ex rel. Franklin v. Parke-Davis, 147 F. Supp. 2d 39 (D. Mass. 2001).

have to prove reliance on his or her part on the alleged misrepresentation." Chase, 140 F. Supp. 2d at 1293. No Alabama court has ever permitted a fraud claim in the absence of reliance by the plaintiff. See, e.g., Delta Health Grp., Inc. v. Stafford, 887 So. 2d 887, 899 (Ala. 2004); see also 37 Am. Jur. 2d Fraud & Deceit § 290 (May 2004).

II.   PLAINTIFFS' CLAIMS AGAINST DR. LONGMIRE ARE BARRED BY THE APPLICABLE STATUES OF LIMITATIONS

As Dr. Longmire previously pointed out in his motion to dismiss before the district court in Alabama, plaintiffs also have no reasonable basis for their claims against Dr. Longmire because their claims are barred by the statute of limitations. The ADTPA has a one-year statute of limitations from the discovery of the allegedly wrongful conduct, "but in no event may any action be brought under [the ADTPA] more than four years from the date of the transaction giving rise to the cause of action." Ala. Code. § 8-19-14. Similarly, actions for negligence and wanton conduct under Alabama law must be brought within two years of the alleged wrong, regardless of when the wrong is discovered. Ala. Code § 6-2-38(L); see Booker v. United Am. Ins. Co., 700 So. 2d 1333, 1339 (Ala. 1997); Henson v. Celtic Life Ins. Co., 621 So. 2d 1268, 1274 (Ala. 1993). Here there is no question that these claims are all barred by the statute of limitations because all conduct attributed to Dr. Longmire in the complaint occurred in 1996. See Compl. at ¶ 17, 75, 133, 134.[4]

As for plaintiffs' fraud claim, the limitations period is two years and begins to run when the "plaintiff discovers or should have discovered the fraud." Ala. Code § 6-2-3. However, when a fraud action is filed more than two years after the alleged fraud occurred, the plaintiff must allege facts showing what prevented discovery of the fraud. Smith v. National Ins. Security

---

[4] Plaintiffs also lack standing to bring their ADTPA claims because they are corporations, not "consumers" who "buy[] goods or services for personal, family, or household use." Ala Code § 8-19-3; see, e.g., Meeks v. Xtreme Cycle Supply, 2006 WL 780580, at *2 (M.D. Ala. March 27, 2006); EBSCO Indus. v. LMN Enters., 89 F'. Supp. 2d 1248, 1266 (N.D. Ala. 2000); Deerman v. Fed Home Loan Mortgage Corp., 955 F. Supp. 1393, 1399 (N.D. Ala. 1997).

Co., 860 So. 2d 343, 347 (Ala. 2003). If the complaint contains insufficient allegations to satisfy the discovery rule, the complaint must be dismissed. Id.

Plaintiffs here have not alleged any specific facts indicating what prevented them from discovering the alleged fraud as it relates to Dr. Longmire. Although plaintiffs generally and conclusorily allege in paragraph 12 that they did not discover or have inquiry notice of the alleged fraud by Dr. Longmire until less than a year before the Complaint was filed, they have conspicuously failed to explain why this is the case. Plaintiffs do not allege any facts or circumstances by which Dr. Longmire or the defendants concealed the cause of action or plaintiffs' alleged injuries, nor do they allege what prevented them from discovering facts surrounding their injuries. Smith, 860 So.2d at 346-47. Indeed, plaintiffs' burden is particularly heavy here because Dr. Longmire's alleged conduct in promoting Neurontin was, by its nature, open and public.

Not only have plaintiffs failed to allege such facts, but the facts that they have alleged indicate that plaintiffs should have discovered the alleged fraud more than two years prior to filing their Complaint. In Paragraphs 97 and 107, plaintiffs allege that in 2000, Parke-Davis published negative results of clinical trials of Neurontin for bi-polar disorder and panic disorder. Such publications put the plaintiffs on inquiry notice that Neurontin may not be effective for certain off-label uses. Because plaintiffs should have discovered the alleged misrepresentations more than two years before filing the Complaint and have utterly failed to articulate any reason why the savings clause should apply, the statute of limitations bars their fraud claims against Dr. Longmire.

III. PLAINTIFFS' ARGUMENT BASED ON THIS COURT'S RULINGS ON THE MDL PLAINTIFFS' RICO CLAIMS DEMONSTRATES THAT PLAINTIFFS' CLAIMS AGAINST DR. LONGMIRE ARE PREEMPTED BY FEDERAL LAW

In their supplemental memorandum, plaintiffs argue that, because Judge Saris has "recognized that allegations regarding Longmire and other doctors established that the doctors and Pfizer shared a common [illegal] purpose," this Court has already held that allegations such as those in their complaint are viable and that they therefore "have a *possibility* of stating a claim under Alabama law against Longmire." Pls' Supp. Mem. at 4 (emphasis in original); see id. at 8. But plaintiffs fail to recognize that all RICO claims in which doctors were alleged to have been participants were dismissed. See June 12, 2006 Ruling (Dkt # 356) at 19. Moreover, Judge Saris's ruling regarding those doctors' purported common purpose with defendants was based on her finding that the Class and Coordinated Plaintiffs had adequately alleged that the members of the various putative RICO enterprises shared a common purpose to promote Neurontin for off-label uses in violation of federal law regulating the sales and marketing of pharmaceuticals, not a common purpose to commit fraud or any other legal violation under Alabama law. See id. at 13. In fact, the Court specifically found that state law fraud claims based on off-label promotion were preempted by the Food Drug & Cosmetic Act. Id. at 20 (citing Report and Recommendation (Dkt # 269) at 34-35). Although a purpose to promote Neurontin off-label served to meet the requirements of the RICO statute, it is simply irrelevant to whether plaintiffs have stated a claim against Dr. Longmire under Alabama law. Indeed, to the extent that plaintiffs here contend that they have stated a valid state law claim by alleging that Dr. Longmire participated in a scheme to promote Neurontin for off-label use, plaintiffs are making the exact type of claim that this Court has found to be preempted by—and would support federal question jurisdiction under—federal law. See Franchise Tax Board v. Laborers Vacation Trust, 463 U.S. 1, 24 (1983).

7

IV. THIS COURT SHOULD NOT PERMIT PLAINTIFFS TO OPEN A NEW FRONT TO LITIGATE THEIR CLAIMS AGAINST DEFENDANTS

In their supplemental motion, plaintiffs assert that Dr. Longmire is simply "one of [defendants'] partners who happens to live in Alabama." Supp. Resp. at 4 (emphasis added). As noted above, it is absurd for plaintiffs to suggest that it is mere happenstance that they selected Dr. Longmire as a defendant because their complaint mentions numerous other doctors who allegedly played identical roles in the promotion of Neurontin but who they have not sued here. Plaintiffs' feigned ignorance of Dr. Longmire's citizenship also is in direct tension with the representations contained in their reply brief. In their reply brief, plaintiff BCBS submitted a declaration that confirmed plaintiffs' awareness of the Neurontin MDL and the overlap between plaintiffs' claims here and the claims of Harden Manufacturing, one of the TPP putative class representatives in the Neurontin MDL. See Decl. of Donna Harris Hill at ¶ 3. This Court recently turned back efforts by plaintiffs in products liability cases to defeat federal jurisdiction and the purposes behind 28 U.S.C. § 1407 by fraudulently joining a prescribing physician and a sales representative. See Docket Nos. 514 & 584. As the Eleventh Circuit has noted in connection with the multidistrict litigation involving Wyeth's diet drugs, such tactics are "a common strategy" by plaintiffs to "defeat[ defendant's] right to remove a case to federal court." Legg v. Wyeth, 428 F.3d 1317, 1320 (11th Cir. 2005). Defendants respectfully submit that this Court should not permit plaintiffs here to avoid the Neurontin MDL simply by including baseless claims against home-state physicians like Dr. Longmire who at some point may have made statements to other doctors about the off-label use of Neurontin.

## CONCLUSION

For the reasons stated above, as well as those stated in defendants' Notice of Removal and Opposition to Plaintiffs' Motion to Remand, defendants respectfully request that the Court deny plaintiffs' motion.

8

Dated: April 9, 2007

                    DAVIS POLK & WARDWELL

                    By:  /s/ James P. Rouhandeh
                           James P. Rouhandeh
                           Neal A. Potischman
                           Carter H. Burwell
                    450 Lexington Avenue
                  New York, New York 10017
                  (212) 450-4000

                        - and -

                  HARE & CHAFFIN

                  By:  /s/ David B. Chaffin
                           David B. Chaffin

                  160 Federal Street
                  Boston, Massachusetts 02110
                  (617) 330-5000

                  *Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on April 9, 2007.

                                    /s/David B. Chaffin