UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| ALL ACTIONS | Magistrate Judge Leo T. Sorokin |

### SALES AND MARKETING PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR ENTRY OF CASE MANAGEMENT ORDER NO. 5, RELATING TO DEPOSITIONS

Plaintiffs in the Sales and Marketing cases ("Plaintiffs") hereby respond to Defendants' Motion for Entry of Case Management Order No. 5 Relating to Depositions.

## I.     INTRODUCTION

This memorandum is styled as a "Response" rather than an "Opposition" to Defendants' Motion For Entry of Case Management Order No 5 ("Defendants' Motion") because, despite what Defendants would have this Court believe, Plaintiff do not oppose the entry of a CMO governing the parties conduct of depositions in this case. Plaintiffs disagree with some of the proposals put forth by Defendants in their proposed CMO 5 either because 1) they are unworkable at this point in the litigation, 2) are contrary to the provisions of the Federal Rules of Civil Procedure, or 3) because they are unnecessary.

Plaintiffs were in the process of conferring with Defendants in good faith over Defendants' proposed CMO 5 and were somewhat perplexed by Defendants' rush to file a motion with the Court given Plaintiffs' perception that, at least as to many of the provisions at

issue, the parties were still negotiating.  However, Plaintiffs are content to provide the Court with their revisions to Defendants' proposed CMO 5 and to explain the reasons for each suggested revision.  Attached hereto as Exhibit 1 is a proposed CMO 5 reflecting Plaintiffs' suggested revisions in redline.  Additionally, attached as Exhibit 2 is a clean version of the document that reflects Plaintiffs' proposal.

## II.    ARGUMENT

As a general proposition, Plaintiffs agree that where possible, the parties should work together and with Defendants to try to eliminate duplication and the expenditure of unnecessary time and effort in the conduct of depositions in this matter.   To that end, Plaintiffs are not opposed to the entry of a case management order that seeks to eliminate such duplication.  What Plaintiffs are opposed to is the entry of a case management order that confers a benefit to one side in the litigation under the auspices of eliminating duplication.

### A.    Limit on the Number of Depositions (Section II.B)

In their discussion on this issue with Defendants, Plaintiffs maintained that although they might be amenable to an outer limit on the number of depositions that may be taken by each side in the litigation, Plaintiffs were not now in a position to agree to such a limit because Defendants have not finished their document production and, of course, Plaintiffs are not finished reviewing Defendants documents such that they could say with any degree of confidence how many depositions they are likely to need.  While at this stage Plaintiffs have begun to formulate a list of potential deponents, that list is changing as Plaintiffs continue to receive documents from Defendants regularly.  See various correspondence from Defense Counsel enclosing documents of various individuals attached hereto as Exhibit 3.

Plaintiffs are clearly under the opinion that 20 depositions, in total, of Defendants *and* of third parties, which is what Defendants propose, is completely insufficient. Defendants argument that Plaintiffs in this case should be content with 20 deposition in total because "discovery was conducted and completed in *Franklin* long ago," (Defendants' Memo at 6), is unavailing. As this Court is aware discovery in *Franklin*, both in terms of geographic and temporal scope, was much more limited than in this case. Moreover, Pfizer has identified far more than 20 of its employees who possess relevant knowledge or documents in this case. None of these Pfizer employees were deposed in the *Franklin* case. Finally, of the dozens of physicians who were paid to fly around the country to make flattering statements about Neurontin, none were deposed in *Franklin*.

A limit of 20 depositions of both Defendants' current and former employees and third parties is not "generous" as Defendants claim but is instead an attempt by Defendants to tie Plaintiffs' hands as they seek to prove their case. By way of example Plaintiffs point to *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, also pending before Judge Saris. To date the parties in that matter have conducted more than 450 depositions of the litigants and third parties. Plaintiffs do not suggest that this number is a guide for what is appropriate here. The point is that the Court in the AWP MDL has not sought to impose an outside limit on the number of depositions, but has, where appropriate, and upon motion of a litigant or third party, granted protective orders on a case-by case basis, at times limiting or preventing a deposition or depositions noticed by Plaintiffs and Defendants for different substantive reasons. Defendants provide no reason why this would not be an appropriate way to proceed in this case. If upon receipt of notices of deposition Defendants are of the opinion that conducting the deposition of one or more individuals would be duplicative or wasteful, and

3

cannot after good faith negotiation convince Plaintiffs of that fact, they are free to seek relief from the Court.

Defendants brief somehow presupposed, without a scintilla of substantive evidence, that Plaintiffs intend to conduct an "unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." Defendants' Memo at 5. This is certainly contrary to what Plaintiffs stated in the abbreviated meet-and-confer, where Plaintiffs merely stated that it was premature for them to determine how many depositions they would need. Plaintiffs are interested in wasting neither their time nor that of the Court or of Defendants and will work, along with Defendants, to try to ensure a deposition process that is as efficient as possible given the allegations and the facts.

**B.      Location of Depositions (Section III)**

Plaintiffs proposal on the location of depositions is meant to be consistent with this Court's statement from the bench concerning the location of depositions at a hearing on June 15, 2006. At that hearing one of the issues that was discussed was the location of the deposition of a Pfizer employee who resided in Michigan, Ms. Mei Dong, noticed by the products liability Plaintiffs. At that hearing the Court expressed the view that it made practical sense to have a single deponent travel to a central location like New York and if there were more than one deponent that could be deposed in their home state, it made sense for the lawyers to travel to the home state for a series of depositions. See June 15, 2006 Transcript attached hereto as <u>Exhibit 4</u> at 65, 68.

Plaintiffs propose that all depositions take place in either New York or Boston unless either side can line up more than one deponent in a particular hometown state and conduct the depositions of more than one deponent in that location. This would seem to be the most

4

efficient, ensuring that the least number of individuals need to travel to the location of any particular deposition. Again, Defendants presume some ill motive on Plaintiffs' part, and claim, without support of any kind, that such an arrangement would lead to "abuse and further motion practice." Defendants' Memo at n.3. Again, Plaintiffs have much to do in this litigation – causing Defendants or others to waste time traveling is not one of those things. Plaintiffs propose only what would be most efficient.

In addition Plaintiffs' proposed changes to this section also make the prohibition on more than two depositions at the same time mutual unless by agreement of the parties or order of this Court.

**C.    Conduct of Depositions (Section IV, A-C)**

<u>Section A</u>

Plaintiffs' proposed changes to this section are two-fold. First, rather than make the need for more than one examiner for any particular set of litigants an issue to be debated between Plaintiffs and Defendants, as it would under Defendants proposed CMO 5, it provides for a definitive number of examiners from each group. There are occasions where, given a deponents expected knowledge of more than one subject matter relevant to this case, it will be more efficient to have more than one examiner for a party, each taking a different portion of the deposition. Plaintiffs' proposal would simply give the various Plaintiffs groups the ability to have additional examiners if this would make it more efficient, without arguing the point with Defendants or seeking leave of Court.

The second part of Plaintiffs' suggested revisions to this section regard the definition of the term "repetitive questioning." Plaintiffs agree that both Plaintiffs and Defendants should be prohibited from asking repetitive questions. However, during the April 4, 2007 conference with

5

Defendants it became clear that the parties have a differing view of what "repetitive questioning" means. Plaintiffs view, and the view reflected in Plaintiffs' draft, is that the parties should be prohibited from asking questions that have already been asked in the deposition or trying to elicit the same information that has already been elicited. Defendants view seems to be that any subject matter previously inquired about —no matter how broad—cannot be inquired about again in the deposition regardless of whether the questioner wishes to probe a different aspect of that subject matter or clarify information previously provided by the deponent with regard to that subject. Thus Plaintiffs have added a definition of the term "repetitive questioning" so that there is no disagreement about what constitutes "repetitive questioning" in the future.

### Sections B and C

These sections of Defendants' proposed CMO would mandate the order in which the various constituencies asked questions at every deposition. Plaintiffs oppose these two sections as unnecessary. The parties are perfectly capable of determining and agreeing amongst themselves, on a case-by case basis, what makes sense in each instance rather than slavishly following a pre-determined order at every deposition. It may make sense in certain circumstances for personal injury plaintiffs to go first, in other instances it may make sense for a sales and marketing examiner to take the lead. The point is that there is no need for a pre-determined order – at least as between the various plaintiffs groups.

**D.  Documents (Section V)**

Defendants seek to require the party conducting a deposition to provide the documents proposed to be used as exhibits in the deposition to opposing counsel 48 hours in advance. Defendants argue that this will avoid "substantial delays." Defendants' Memo at 10. What Defendants seek is an unfair advantage over Plaintiffs in the guise of avoiding delay during

6

depositions.  Defendants understand that this case will turn not on what Plaintiffs have to say about the documents Plaintiffs have produced in this litigation but rather on Defendants' current and former employees' ability to explain Defendants' documents.  Frankly, the more time Defendants' witnesses have to ponder their answers with the benefit of the deposition exhibits provided by Plaintiffs, the better Defendants position.  That should not be allowed by the Court.

Under Plaintiffs' proposal, as always, witnesses will be allowed to review documents during their deposition, under oath, and provide their unrehearsed responses to counsel's questions.  In defense of their position, Defendants go so far as to misquote the United States Supreme Court in *Unites States v. Procter & Gamble Co*, 356 U.S. 677, 682 (1958).  Defendants' Memo at 10.  What the Supreme Court said in that case was that "modern instruments of discovery serve a useful purpose . . . They together with pretrial procedures make *a trial* less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." (*emphasis added*).   The Court was speaking of the fact that given modern pretrial procedures the issues in a civil trial should be disclosed in pre-trial discovery so that there are no surprises at trial.  The Court said nothing about whether one party or another might appropriately be surprised *during* discovery.

Furthermore, given the tight time constraints in which all the depositions must be conducted in this case, the parties simply may not have the luxury of knowing which documents will be used in a particular deposition more that 48 hours in advance.  In fast-paced litigation involving multiple parties and many witnesses, where depositions may be double tracked, the parties, merely from a logistical standpoint, may have difficulties abiding by the requirements of Defendants' proposal with respect to the provision of deposition exhibit 48 hours in advance.

    **E.**    **Supplemental Depositions (Section VI)**

Plaintiffs proposed revisions to this section provide that despite the limitations on deposing an individual who has previously been deposed in the litigation that appear elsewhere in the section, the ability of the parties to take a *de bene esse* deposition of a witness whose deposition was previously taken, is not affected. Unlike Defendant's proposal, in Plaintiffs proposal *both* sides retain the ability to take such a deposition. Plaintiffs have also added the requirement that such a deposition must be either by agreement of the parties or upon good cause shown in motion to this Court. Defendants draft allows them the ability to re-depose any witness previously deposed by Plaintiffs without any showing that a *de bene esse* deposition is warranted or appropriate. Plaintiffs' proposal simply requires any party seeking to preserve testimony to make a minimum showing that such a deposition is necessary given the individual circumstances. This avoids a single loophole in the prohibition on re-deposing witnesses from becoming the exception that swallows the rule.

### III.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that if the Court is inclined to enter a case management order dealing with the issue of depositions, it should enter Plaintiffs' proposed Case Management Order No. 5 attached hereto.

Dated: April 10, 2007                        By:    **/s/ Thomas M. Sobol**
                                                        Thomas M. Sobol
                                                        Edward Notargiacomo
                                                         Hagens Berman Sobol Shapiro LLP
                                                        One Main Street, 4th Floor
                                                         Cambridge, MA 02142

*Plaintiffs' Liaison Counsel and Member of the Class Plaintiffs' Steering Committee*

By:  **/s/Barry Himmelstein**
Barry Himmelstein, Esquire
Lieff Cabraser Heimann & Bernstein
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By:  **/s/Don Barrett**
Don Barrett, Esquire
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By:  **/s/Daniel Becnel, Jr.**
Daniel Becnel, Jr., Esquire
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

By:  **/s/James Dugan**
James R. Dugan, II, Esquire
Dugan & Browne, PLC
650 Poydras Street, Suite 2150
New Orleans, LA 70130

By:  **/s/Thomas Greene**
Thomas Greene, Esquire
Greene & Hoffman
125 Summer Street
Boston, MA 02110

*Members of the Class Plaintiffs' Steering Committee*

By:  **/s/Richard Cohen**
Richard Cohen, Esquire
Lowey Dannenberg Bemporad
& Selinger, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY  10601

9

By: **/s/Linda Nussbaum**
Linda Nussbaum, Esquire
Kaplan Fox & Kilsheimer LLP
805 Third Avenue
New York, NY 10022

*Members of the Non-Class Plaintiffs' Steering Committee*

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on April 10, 2007.

/s/Edward Notargiacomo