# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                    )
IN RE NEURONTIN MARKETING,          )          MDL Docket No. 1629
SALES PRACTICES AND                      )
PRODUCTS LIABILITY LITIGATION       )          Master File No. 04-10981
_____)
                                                    )          Judge Patti B. Saris
THIS DOCUMENT RELATES TO:            )
                                                    )          Magistrate Judge Leo T. Sorokin
ALL ACTIONS                                    )
_____)

**[PROPOSED] CASE MANAGEMENT ORDER NO. 5**

WHEREAS, these consolidated proceedings comprise actions involving claims for

personal injuries allegedly sustained as a result of the ingestion of Neurontin (the "Product

Liability Actions") and actions, including purported class actions, involving claims for alleged

economic losses arising out of the sales and marketing of Neurontin (the "Sales and Marketing

Actions");

WHEREAS, the vast majority of the complaints in the Product Liability Actions and all

of the complaints in the Sales and Marketing Actions contain cross-cutting allegations as to an

alleged sales and marketing campaign;

WHEREAS, the parties are poised to begin a period of intensive fact witness deposition

discovery; and

WHEREAS, the deadline for the completion of fact discovery in the Sales and Marketing

Actions is June 29, 2007;

WHEREAS, in order to promote party and judicial economy and to avoid unnecessary

duplication of effort, undue delay, and undue burden on deponents, the Court finds that it would

be appropriate to establish mandatory procedures governing the conduct of fact witness depositions. Accordingly,

IT IS HEREBY ORDERED as follows:

**I.     Deposition Notices**

Each deposition notice shall include the name, and if known, the general occupational description of each deponent, the expected length of the deposition, and the date, time, and place for the deposition (including address and phone number of a contact). Deposition notices shall also state whether the deposition is to be videotaped and, if so, the business name and address of the videotape recorder. Service upon Liaison Counsel shall be deemed service on all parties. All depositions shall be cross-noticed in, at a minimum, the New York coordinated proceedings

**II.    Scheduling**

**A.     Deposition Time**

In any week in which depositions will be taken, depositions shall commence no earlier than 9:00 a.m. and end no later than 5:00 p.m. on Monday through Friday, unless by agreement of the parties or court order.

**B.     Number of Depositions of Current and Former Employees**

More than one deposition may take place in MDL 1629 at the same time; however, absent agreement of the parties or order of this Court, no party may take more than two depositions at the same time.

> **Deleted:** Beyond good cause shown, Plaintiffs shall be limited to twenty (20) non-case specific depositions of Defendants' present and former employees and third-party witnesses.

> **Deleted:** plaintiffs

> **Deleted:** not

**III.   Locations**

Unless otherwise agreed upon by the parties, the deposition of all parties shall take place in either New York City or Boston as those cities are centrally located and easily accessible to all. If there are more than two deponents that reside in a location other than New

- 2 -

York City or Boston and the parties can arrange the deponents schedule such that it would be possible and more economical to conduct a series of depositions in the deponents' home state in the same timeframe, the depositions shall be conducted in the deponents home state.

Plaintiffs/Decedents' physicians shall take place where the physicians reside.

**Deleted:** Depositions of Plaintiffs shall take place in the district in which Plaintiffs filed their actions unless otherwise agreed by the parties.

**Deleted:** Depositions of former or current Pfizer employees shall take place in the employees' home state, unless otherwise agreed by the parties.

## IV.    Conduct of Deposition

### A.    Selection of Attorneys to Conduct Examination

The Plaintiffs' Steering Committee shall designate: (i) no more than two attorneys to

**Deleted:** one

conduct the principal examination of the deponent on behalf of the product liability Plaintiffs; (ii)

**Deleted:** and

no more than two attorney to conduct the principal examination of the deponent on behalf of the

**Deleted:** one

sales and marketing class Plaintiffs and (iii) no more than one attorney to conduct the principal examination of the deponent on behalf of the non-class sales and marketing Plaintiffs. The

**Deleted:**

examiner representing the interests of the product liability Plaintiffs shall confine his or her

examination to issues relating to the product liability Plaintiffs.  Similarly, the examiner

representing the interests of the sales and marketing Plaintiffs shall confine his or her

examination to issues relating to the sales and marketing Plaintiffs.

Defendants' shall designate one attorney to conduct the principal examination on behalf of Pfizer.  In no event shall there be repetitive questioning by the designated principal examiners

**Deleted:** redundant or

for any party.  As used herein the term repetitive questioning means questions that have been

**Deleted:** i

previously asked or that seek to elicit answers from the deponent that have previously been

**Deleted:** l

given.  Repetitive questioning does not limit any party from inquiring further into a subject

matter previously covered in the deposition as long as the question is designed to illuminate a

different aspect of that subject matter.  The designated examiners for Plaintiffs shall coordinate

**Deleted:**

with other Plaintiffs' counsel reasonably in advance of the date scheduled for the deposition

2345076v1
2350046v1

regarding the areas of examination in order to conduct a thorough but non-duplicative examination.

## V.    Documents

### A.    Copies

During each deposition, extra copies of documents about which counsel expect to examine the deponent should be provided to the reporter, primary counsel for the parties, and the deponent during the course of the deposition.

### B.    Marking of Deposition Exhibits

Documents shall be marked sequentially within each deposition using the last name of the deponent as a prefix. Depositions of a deponent that are suspended and resumed at a later date may be marked serially from the last exhibit of the previous day of that deponent's deposition.

## VI.    Supplemental Depositions

Witnesses shall not be subjected to more than one deposition, nor to repetitive and redundant questioning, provided:

(1)    A party whose case is transferred to MDL 1629 after a deposition has been taken, and who did not receive service of a cross-notice, may within sixty (60) days of the Transfer Order, and upon a good faith determination that further inquiry of the deponent is necessary, notify the other parties that it will move the this Court for an order seeking resumption of the deposition.

(2)    The notice shall identify with specificity those areas where the party believes further examination is necessary, state how the MDL 1629 deposition (and other depositions of the witness placed in the depository) was inadequate or incomplete, state whether the movant has conferred with the primary examiners regarding these supplemental areas of examination, and demonstrate that further examination would be relevant and non-redundant.  The parties shall meet and confer in an effort to resolve whether the witness will be made available for a supplemental deposition.

- 4 -

**Deleted:** Defendants' shall designate one attorney to conduct on behalf of Pfizer. ¶
In a limited number of depositions, there may be sufficient divergence of positions among parties on the same side of the case such that additional examiners may be appropriate on non-redundant subject matters, in which event other attorneys will be permitted to examine deponents on non-redundant matters only.  The need for additional examiners and the non-redundant requirement will be strictly construed.¶

**Deleted: B.  Sequence of Examination - Depositions Taken by Plaintiffs** ¶
Questioning at the depositions to be taken by Plaintiffs shall be conducted in the following sequence:¶
(1)  the examiner selected by the Plaintiffs' Steering Committee on behalf of the product liability Plaintiffs;¶
(2)  the examiner selected by the Plaintiffs' Steering Committee on behalf of the sales and marketing Plaintiffs;¶
(3)  other MDL 1629 Plaintiffs' attorneys on non-redundant matters only;¶
(4)  counsel for state Plaintiffs on non-redundant matters only;¶
(5)  the primary examiner selected by Pfizer;¶
(6)  counsel for Defendants other than Pfizer and Warner-Lambert; ¶
(7)  individual counsel for the deponent, if any; and¶
(8)  any recross or redirect by 1-7, supra.¶
**C.  Sequence of Examination - Depositions Taken by Pfizer** ¶
Questioning at the depositions to be taken by Defendants shall be conducted in the following sequence:¶
(1)  the primary examiner selected by Pfizer;¶
(2)  counsel for state Defendants on non-redundant matters only;¶
(3)  the examiner selected by the Plaintiffs' Steering Committee on behalf of the product liability Plaintiffs;¶
(4)  the examiner selected by the Plaintiffs' Steering Committee on behalf of the sales and marketing Plaintiffs; . ¶
(5)  any other MDL 1629 Plaintiff ... [1]

**Deleted:** Counsel who notices a deposition of a factual witness shall, forty-eight (48) hours prior to the deposition, furnish a deponent's counsel with a copy of all of the documents he or she, in good faith, expects to question the deponent about during the deposition.  In addition to providing documents to deponent's counsel forty-eight (48) hours prior to the deposition,

**Deleted:** serially

**Deleted:** from one deposition to the next to the extent possible.

**Deleted:**

(3)     If no resolution is reached, the party seeking the supplemental deposition may move the Court for an order allowing resumption.  The motion must be limited to three (3) pages.  Within fourteen (14) days of the filing of any such motion, any party may file an opposition to the motion and seek a protective order prohibiting the supplemental deposition on the grounds that the MDL 1629 deposition (or any other deposition of the witness in the depository) adequately covered the area or areas sought to be explored in the supplemental deposition or that the testimony sought is redundant and/or not relevant, or any other grounds.

(4)     No further or supplemental deposition will be permitted (i) by any party having received notice in MDL 1629 of the original deposition or (ii) by any party represented by counsel on the Plaintiffs' Steering Committee (where the original deposition was taken by a member of the Committee), except upon agreement of the parties or upon order of the MDL 1629 Court on good cause shown.  Nothing herein shall be deemed to limit the right of any party to take the *de bene esse* deposition of a witness whose deposition was previously taken upon agreement of the parties or upon a showing to this Court of good cause for such a deposition.

(5)     The supplemental deposition shall be treated as the resumption of the deposition originally noticed.  During the resumed deposition, any other party may conduct further examination of the witness only with regard to new subject areas authorized by the order allowing the resumed deposition.  The resumed deposition shall be taken at the same location as the initial deposition unless otherwise agreed to by the parties and the deponent.

(6)     ▾

**Deleted:** Nothing herein shall be deemed to limit the right of a Defendant to take the *de bene esse* deposition of a witness whose deposition was previously taken by Plaintiffs. Plaintiffs shall not object to Defendants' taking of such *de bene esse* depositions on the ground that the witness was previously deposed.

## VII.    Continuing Effect of Case Management Orders

Except as expressly indicated, nothing in these guidelines shall modify or abridge the limitations, procedures and other provisions relating to depositions set forth in the Court's Case Management Orders.

**SO ORDERED:**

_____
United States Magistrate Judge

Dated: April __, 2007

- 5 -

2345076v1
2350046v1

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                )
IN RE NEURONTIN MARKETING,          )        MDL Docket No. 1629
SALES PRACTICES AND                      )
PRODUCTS LIABILITY LITIGATION       )        Master File No. 04-10981
_____)
                                                )        Judge Patti B. Saris
THIS DOCUMENT RELATES TO:           )
                                                )        Magistrate Judge Leo T. Sorokin
ALL ACTIONS                                  )
_____)

## [PROPOSED] CASE MANAGEMENT ORDER NO. 5

WHEREAS, these consolidated proceedings comprise actions involving claims for

personal injuries allegedly sustained as a result of the ingestion of Neurontin (the "Product

Liability Actions") and actions, including purported class actions, involving claims for alleged

economic losses arising out of the sales and marketing of Neurontin (the "Sales and Marketing

Actions");

WHEREAS, the vast majority of the complaints in the Product Liability Actions and all

of the complaints in the Sales and Marketing Actions contain cross-cutting allegations as to an

alleged sales and marketing campaign;

WHEREAS, the parties are poised to begin a period of intensive fact witness deposition

discovery; and

WHEREAS, the deadline for the completion of fact discovery in the Sales and Marketing

Actions is June 29, 2007;

WHEREAS, in order to promote party and judicial economy and to avoid unnecessary

duplication of effort, undue delay, and undue burden on deponents, the Court finds that it would

be appropriate to establish mandatory procedures governing the conduct of fact witness depositions.  Accordingly,

IT IS HEREBY ORDERED as follows:

## I.    Deposition Notices

Each deposition notice shall include the name, and if known, the general occupational description of each deponent, the expected length of the deposition, and the date, time, and place for the deposition (including address and phone number of a contact).  Deposition notices shall also state whether the deposition is to be videotaped and, if so, the business name and address of the videotape recorder.  Service upon Liaison Counsel shall be deemed service on all parties.  All depositions shall be cross-noticed in, at a minimum, the New York coordinated proceedings

## II.    Scheduling

### A.    Deposition Time

In any week in which depositions will be taken, depositions shall commence no earlier than 9:00 a.m. and end no later than 5:00 p.m. on Monday through Friday, unless by agreement of the parties or court order.

### B.    Number of Depositions of Current and Former Employees

More than one deposition may take place in MDL 1629 at the same time; however, absent agreement of the parties or order of this Court, no party may take more than two depositions at the same time.

## III.    Locations

Unless otherwise agreed upon by the parties, the deposition of all parties shall take place in either New York City or Boston as those cities are centrally located and easily accessible to all.  If there are more than two deponents that reside in a location other than New

- 2 -

York City or Boston and the parties can arrange the deponents schedule such that it would be possible and more economical to conduct a series of depositions in the deponents' home state in the same timeframe, the depositions shall be conducted in the deponents home state. Plaintiffs/Decedents' physicians shall take place where the physicians reside.

## IV.    Conduct of Deposition

### A.    Selection of Attorneys to Conduct Examination

The Plaintiffs' Steering Committee shall designate: (i) no more than two attorneys to conduct the principal examination of the deponent on behalf of the product liability Plaintiffs; (ii) no more than two attorney to conduct the principal examination of the deponent on behalf of the sales and marketing class Plaintiffs and (iii) no more than one attorney to conduct the principal examination of the deponent on behalf of the non-class sales and marketing Plaintiffs. The examiner representing the interests of the product liability Plaintiffs shall confine his or her examination to issues relating to the product liability Plaintiffs. Similarly, the examiner representing the interests of the sales and marketing Plaintiffs shall confine his or her examination to issues relating to the sales and marketing Plaintiffs.

Defendants' shall designate one attorney to conduct the principal examination on behalf of Pfizer. In no event shall there be repetitive questioning by the designated principal examiners for any party. As used herein the term repetitive questioning means questions that have been previously asked or that seek to elicit answers from the deponent that have previously been given. Repetitive questioning does not limit any party from inquiring further into a subject matter previously covered in the deposition as long as the question is designed to illuminate a different aspect of that subject matter. The designated examiners for Plaintiffs shall coordinate with other Plaintiffs' counsel reasonably in advance of the date scheduled for the deposition

- 3 -

regarding the areas of examination in order to conduct a thorough but non-duplicative examination.

## V.      Documents

### A.      Copies

During each deposition, extra copies of documents about which counsel expect to examine the deponent should be provided to the reporter, primary counsel for the parties, and the deponent during the course of the deposition.

### B.      Marking of Deposition Exhibits

Documents shall be marked sequentially within each deposition using the last name of the deponent as a prefix.   Depositions of a deponent that are suspended and resumed at a later date may be marked serially from the last exhibit of the previous day of that deponent's deposition.

## VI.    Supplemental Depositions

Witnesses shall not be subjected to more than one deposition, nor to repetitive and redundant questioning, provided:

(1)     A party whose case is transferred to MDL 1629 after a deposition has been taken, and who did not receive service of a cross-notice, may within sixty (60) days of the Transfer Order, and upon a good faith determination that further inquiry of the deponent is necessary, notify the other parties that it will move the this Court for an order seeking resumption of the deposition.

(2)     The notice shall identify with specificity those areas where the party believes further examination is necessary, state how the MDL 1629 deposition (and other depositions of the witness placed in the depository) was inadequate or incomplete, state whether the movant has conferred with the primary examiners regarding these supplemental areas of examination, and demonstrate that further examination would be relevant and non-redundant.   The parties shall meet and confer in an effort to resolve whether the witness will be made available for a supplemental deposition.

- 4 -

(3)     If no resolution is reached, the party seeking the supplemental deposition may move the Court for an order allowing resumption.  The motion must be limited to three (3) pages.  Within fourteen (14) days of the filing of any such motion, any party may file an opposition to the motion and seek a protective order prohibiting the supplemental deposition on the grounds that the MDL 1629 deposition (or any other deposition of the witness in the depository) adequately covered the area or areas sought to be explored in the supplemental deposition or that the testimony sought is redundant and/or not relevant, or any other grounds.

(4)     No further or supplemental deposition will be permitted (i) by any party having received notice in MDL 1629 of the original deposition or (ii) by any party represented by counsel on the Plaintiffs' Steering Committee (where the original deposition was taken by a member of the Committee), except upon agreement of the parties or upon order of the MDL 1629 Court on good cause shown.  Nothing herein shall be deemed to limit the right of any party to take the *de bene esse* deposition of a witness whose deposition was previously taken upon agreement of the parties or upon a showing to this Court of good cause for such a deposition.

(5)     The supplemental deposition shall be treated as the resumption of the deposition originally noticed.  During the resumed deposition, any other party may conduct further examination of the witness only with regard to new subject areas authorized by the order allowing the resumed deposition.  The resumed deposition shall be taken at the same location as the initial deposition unless otherwise agreed to by the parties and the deponent.

(6)

## VII.    Continuing Effect of Case Management Orders

Except as expressly indicated, nothing in these guidelines shall modify or abridge the

limitations, procedures and other provisions relating to depositions set forth in the Court's Case

Management Orders.

**SO ORDERED:**

_____
United States Magistrate Judge

Dated: April __, 2007

- 5 -

# DAVIS POLK & WARDWELL

| | | |
|---|---|---|
| 1300 I STREET, N.W.<br>WASHINGTON, D.C. 20005 | 450 LEXINGTON AVENUE<br>NEW YORK, N.Y. 10017<br>212 450 4000<br>FAX 212 450 3800 | MESSETURM<br>60308 FRANKFURT AM MAIN |
| 1600 EL CAMINO REAL<br>MENLO PARK, CA 94025 | | MARQUÉS DE LA ENSENADA, 2<br>28004 MADRID |
| 99 GRESHAM STREET<br>LONDON EC2V 7NG | WRITER'S DIRECT | 1-6-1 ROPPONGI<br>MINATO-KU, TOKYO 106-6033 |
| 15, AVENUE MATIGNON<br>75008 PARIS | 212-450-4513 | 3A CHATER ROAD<br>HONG KONG |

March 27, 2007

Re:    **In re Neurontin Marketing, Sales Practices & Products Liability**
       **Litigation, MDL No. 1629 (D. Mass.)**

Thomas M. Sobol, Esq.
Hagens Berman Sobol Shapiro, LLP
One Main Street
4th Floor
Cambridge, MA 02142

Dear Tom:

   Pursuant to our discussions and agreements in the above-captioned matter and
Defendants' Responses and Objections to Plaintiffs' Discovery Requests, we are
producing on behalf of Defendants in the above-referenced matter one DVD which
contains responsive documents as set forth in the following table.

| **Bates Stamp Number(s)** | **Description** |
|---|---|
| Pfizer_CBlanckmeister_0000001 –<br>Pfizer_CBlanckmeister_0000505 | Documents from the files of Carolyn<br>Blanckmeister |
| Pfizer_MBrown_0000001 –<br>Pfizer_MBrown_0002231 | Documents from the files of Mark Brown |
| Pfizer_ACiociola_0000001 –<br>Pfizer_ACiociola_0000024 | Documents from the files of Arthur<br>Ciociola |
| Pfizer_CClary_0000001 –<br>Pfizer_CClary_0004339 | Documents from the files of Catherine<br>Clary |
| Pfizer_SCristo_0000001 –<br>Pfizer_SCristo_0002420 | Documents from the files of Steven Cristo |
| Pfizer_MDana_0000001 –<br>Pfizer_MDana_0003746 | Documents from the files of the Neurontin<br>Marketing Team |

Thomas M. Sobol, Esq.                   2                    March 27, 2007

| Bates Stamp Number(s) | Description |
|---|---|
| Pfizer_CDowd_0000001 – Pfizer_CDowd_0000866 | Documents from the files of Chris Dowd |
| Pfizer_HDuda-Racki_0000001 – Pfizer_HDuda-Racki_0000829 | Documents from the files of Helen Duda-Racki |
| Pfizer_MEvertsz_0000001 – Pfizer_MEvertsz_0013994 | Documents from the files of Mary Ann Evertsz |
| Pfizer_AFannon_0016571 – Pfizer_AFannon_0017484 | Documents from the files of Alison Fannon |
| Pfizer_BFleischman_0000001 – Pfizer_BFleischman_0000035 | Documents from the files of Bruce Fleischman |
| Pfizer_TGeorge_0000001 – Pfizer_TGeorge_0002059 | Documents from the files of Tim George |
| Pfizer_CGrogan_0025192 – Pfizer_CGrogan_0025341 | Documents from the files of Christine Grogan |
| Pfizer_THylan_0000001 – Pfizer_THylan_0003440 | Documents from the files of Tim Hylan |
| Pfizer_DLinden_0000001 – Pfizer_DLinden_0003328 | Documents from the files of Dan Linden |
| Pfizer_JMarino_0000001 – Pfizer_JMarino_0002915 | Documents from the files of John Marino |
| Pfizer_JTotolis_0000001 – Pfizer_JTotolis_0000114 | Documents from the files of the Neurontin Marketing Team |

Please note that the DVD and certain documents it contains bear the legend "Confidential," designating that the DVD and the contents of those documents should be treated as confidential pursuant to the Protective Order entered by the Court on January 10, 2005.

Thomas M. Sobol, Esq.                        3                        March 27, 2007

    Please call me at 212-450-4513 should you have any questions regarding the
foregoing.

                                        Very truly yours,

                                        Christopher J. Roche

cc w/o enc:    Edward Notargiacomo, Esq. (via facsimile)
               Ronald Aranoff, Esq. (via facsimile)

By Facsimile & Overnight Courier

# DAVIS POLK & WARDWELL

| | | |
|---|---|---|
| 1300 I STREET, N.W.<br>WASHINGTON, D.C. 20005 | 450 LEXINGTON AVENUE<br>NEW YORK, N.Y. 10017<br>212 450 4000<br>FAX 212 450 3800 | MESSETURM<br>60308 FRANKFURT AM MAIN |
| 1600 EL CAMINO REAL<br>MENLO PARK, CA 94025 | | MARQUÉS DE LA ENSENADA, 2<br>28004 MADRID |
| 99 GRESHAM STREET<br>LONDON EC2V 7NG | WRITER'S DIRECT<br>212 450 4853 | 1-6-1 ROPPONGI<br>MINATO-KU, TOKYO 106-6033 |
| 15, AVENUE MATIGNON<br>75008 PARIS | | 3A CHATER ROAD<br>HONG KONG |

April 5, 2007

Re:    **In re Neurontin Marketing, Sales Practices & Products Liability
Litigation, MDL No. 1629 (D. Mass.)**

Thomas M. Sobol, Esq.
Hagens Berman Sobol Shapiro, LLP
One Main Street
4th Floor
Cambridge, MA 02142

Dear Mr. Sobol:

Pursuant to the non-party subpoena served upon Dr. Michael McLean,
dated June 16, 2005, enclosed please find documents that Dr. McLean is
producing in the above-referenced matter. Dr. McLean is producing the enclosed
documents subject to the objections raised in his letter response dated September
9, 2005. As you will see, the documents bear Bates numbers MCLEAN
00000001 through MCLEAN 0012682.

Please contact me if you have any questions about the foregoing or the
enclosed materials.

Very truly yours,

Deborah L. MacGregor

cc via facsimile w/o enc:    Edward Notargiacomo, Esq.

<u>Enclosures</u>

<u>By Overnight Courier</u>

# DAVIS POLK & WARDWELL

| | | |
|---|---|---|
| 1300 I STREET, N.W.<br>WASHINGTON, D.C. 20005 | 450 LEXINGTON AVENUE<br>NEW YORK, N.Y. 10017<br>212 450 4000<br>FAX 212 450 3800 | MESSETURM<br>60308 FRANKFURT AM MAIN |
| 1600 EL CAMINO REAL<br>MENLO PARK, CA 94025 | | MARQUÉS DE LA ENSENADA, 2<br>28004 MADRID |
| 99 GRESHAM STREET<br>LONDON EC2V 7NG | WRITER'S DIRECT<br>212 450 4853 | 1-6-1 ROPPONGI<br>MINATO-KU, TOKYO 106-6033 |
| 15, AVENUE MATIGNON<br>75008 PARIS | | 3A CHATER ROAD<br>HONG KONG |

April 5, 2007

Re:    **In re Neurontin Marketing, Sales Practices & Products Liability
Litigation, MDL No. 1629 (D. Mass.)**

Thomas M. Sobol, Esq.
Hagens Berman Sobol Shapiro, LLP
One Main Street
4th Floor
Cambridge, MA 02142

Dear Mr. Sobol:

Pursuant to the non-party subpoena served upon Dr. Carl Bazil, dated June 16, 2005, enclosed please find documents that Dr. Bazil is producing in the above-referenced matter. This production supplements and completes Dr. Bazil's September 23, 2005 production. Dr. Bazil is producing the enclosed documents subject to the objections raised in his letter response dated September 9, 2005. As you will see, the documents bear Bates numbers BAZIL 0000267 through BAZIL 0001952.

Please contact me if you have any questions about the foregoing or the enclosed materials.

Very truly yours,

*Deborah L. MacGregor*

Deborah L. MacGregor

cc via facsimile w/o enc:    Edward Notargiacomo, Esq.

Enclosures

By Overnight Courier

# DAVIS POLK & WARDWELL

| | | |
|---|---|---|
| 1300 I STREET, N.W.<br>WASHINGTON, D.C. 20005 | 450 LEXINGTON AVENUE<br>NEW YORK, N.Y. 10017 | MESSETURM<br>60308 FRANKFURT AM MAIN |
| 1600 EL CAMINO REAL<br>MENLO PARK, CA 94025 | 212 450 4000<br>FAX 212 450 3800 | MARQUÉS DE LA ENSENADA, 2<br>28004 MADRID |
| 99 GRESHAM STREET<br>LONDON EC2V 7NG | WRITER'S DIRECT | 1-6-1 ROPPONGI<br>MINATO-KU, TOKYO 106-6033 |
| 15, AVENUE MATIGNON<br>75008 PARIS | 212-450-4513 | 3A CHATER ROAD<br>HONG KONG |

April 6, 2007

Re:    **In re Neurontin Marketing, Sales Practices & Products Liability Litigation, MDL No. 1629 (D. Mass.)**

Thomas M. Sobol, Esq.
Hagens Berman Sobol Shapiro, LLP
One Main Street
4th Floor
Cambridge, MA 02142

Dear Tom:

Pursuant to our discussions and agreements in the above-captioned matter and Defendants' Responses and Objections to Plaintiffs' Discovery Requests, we are producing on behalf of Defendants in the above-referenced matter one DVD which contains responsive documents as set forth in the following table.

| Bates Stamp Number(s) | Description |
|---|---|
| Pfizer_SBrigandi_0000001 –<br>Pfizer_SBrigandi_0000142 | Documents from the files of Stephen Brigandi |
| Pfizer_SCarrington_0000001 –<br>Pfizer_SCarrington_0012052 | Documents from the files of Suzan Carrington |
| Pfizer_GCohen_0000001 –<br>Pfizer_GCohen_0001571 | Documents from the files of Guy Cohen |
| Pfizer_EDukes_0000001 –<br>Pfizer_EDukes_0034620 | Documents from the files of Ellen Dukes |
| Pfizer_MGarcia_0000001 –<br>Pfizer_MGarcia_0006741 | Documents from the files of Marino Garcia |
| Pfizer_DKargman_0000001 –<br>Pfizer_DKargman_0002945 | Documents from the files of Douglas Kargman |

Thomas M. Sobol, Esq.                    2                    April 6, 2007

| Bates Stamp Number(s) | Description |
|---|---|
| Pfizer_JMohan_0000001 –<br>Pfizer_JMohan_0000832 | Documents from the files of Jeffrey Mohan |
| Pfizer_CWohlberg_0000001 –<br>Pfizer_CWohlberg_0000056 | Documents from the files of Christopher Wohlberg |

Please note that the DVD and certain documents it contains bear the legend "Confidential," designating that the DVD and the contents of those documents should be treated as confidential pursuant to the Protective Order entered by the Court on January 10, 2005.

Please call me at 212-450-4513 should you have any questions regarding the foregoing.

Very truly yours,

Christopher J. Roche

cc w/o enc:   Edward Notargiacomo, Esq. (via facsimile)
              Ronald Aranoff, Esq. (via facsimile)

By Facsimile & Overnight Courier

# EXHIBIT 4

```
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS




HARDEN MANUFACTURING           )
CORPORATION,                   )
                Plaintiff,     )
                               )
                               ) CA No. 04-10981-PBS
vs.                            )
                               )
                               )
PFIZER, INC., et al,           )
                Defendants.    )



BEFORE:  THE HONORABLE LEO T. SOROKIN, M.J.



                    STATUS CONFERENCE




            John Joseph Moakley United States Courthouse
                      Courtroom No. 14
                      One Courthouse Way
                      Boston, MA 02210
                   Thursday, June 15, 2006
                         3:00 P.M.




                 Cheryl Dahlstrom, RMR
                 Official Court Reporter
        John Joseph Moakley United States Courthouse
               One Courthouse Way, Room 3209
                      Boston, MA 02210
           Mechanical Steno - Transcript by Computer
```

1   APPEARANCES:

2        FINKELSTEIN & PARTNERS, LLP
         By:  Andrew G. Finkelstein, Esq., and
3             Kenneth B. Fromson, Esq.
         436 Robinson Avenue
4        Newburgh, New York 12550
         - and -
5        GREENE & HOFFMAN, PC
         By:  Michael A. Tabb, Esq., and
6             Ilyas J. Rona, Esq.
         125 Summer Street
7        Boston, Massachusetts 02110
         On behalf of the Plaintiffs.

8

         DAVIS, POLK & WARDWELL
9        By:  James P. Rouhandeh, Esq.,
              Kathryn M. Carney Cole, Esq., and
10             Erik M. Zissu, Esq.
         450 Lexington Street
11       New York, New York 10017
         - and -
12       HARE & CHAFFIN
         By:  David B. Chaffin, Esq.
13       160 Federal Street
         Boston, Massachusetts 02110-1701
14       On behalf of the Defendants.

15

16

17

18

19

20

21

22

23

24

25

Page 64

1   some of them is the breadth and scope of -- albeit discovery --

2   on some things which are more sensitive and, you know, that's

3   what I've been thinking about.

4          MR. ROUHANDEH:  There, your Honor, we will make sure

5   that there's a protective order here that protects them.  It's

6   very clear that they've put their medical issue and they've put

7   their psychiatric issue -- their psychiatric state of mind at

8   issue, and these are going to be extraordinarily sensitive

9   issues.  We are going to go into a number of things that are

10  very sensitive to these individuals.

11         I guess in terms of just a final thought on a couple

12  of issues -- one remaining issue, that is, in terms of what

13  happened in those other cases, we're not saying it's completely

14  irrelevant what happened in the other cases.  We're just saying

15  we don't agree with their version necessarily.  We don't

16  necessarily agree that it automatically should apply here.

17  Thank you.

18         THE COURT:  With respect to the depositions, the

19  motions for protective order for Tischer (phon), that's moot,

20  right, because you --

21         MR. FROMSON:  That's correct.  We've agreed on a date

22  and a location for that particular deposition, Judge.

23         THE COURT:  So that one I don't have to rule on.  Mei

24  Dong (phon), the question is where to do it, right?

25         MR. FROMSON:  That raises an issue for future

1    depositions as well.

2          THE COURT:  Let me just ask you, as a practical

3    question, Mr. Rouhandeh, or both of you.  Putting aside what

4    the rule says, it would seem that -- putting aside what the

5    rule might say and putting aside what the case were -- is it a

6    man or a woman?

7          MR. ROUHANDEH:  Woman.

8          THE COURT:  Miss Dong.  Putting aside -- if Miss Dong

9    had had some unusual hardship, particular situation her life,

10   that would be different.  If she did, it seems to me,

11   automatically, you all have to go there.  That's the way it is.

12   You're the lawyers in the case.  In terms of as a general

13   matter, why wouldn't it be a lot more practical and efficient

14   to schedule the depositions when there's one person from some

15   place in New York where you might be able to then schedule a

16   sequence and you do them sort of in a row.  If you had six

17   people in Michigan to do, that might make sense for all of you

18   to troop out to Michigan.  But why not do it, as a practical

19   matter, that way?

20         MR. ROUHANDEH:  Your Honor, there are -- it may not be

21   six.  There may be dozens of people in Michigan.  Ann Arbor is

22   one of the research facilities for Pfizer.  They've already

23   noticed depositions of a couple of people who are out there.

24   There are undoubtedly going to be more.  We don't think --

25   first of all, we don't think that we're required to move that

1   person from Michigan here to convenience the plaintiffs.  These

2   people are very --

3            THE COURT:  Saves your client money.

4            MR. ROUHANDEH:  Actually, I'm not so sure because

5   we're taking away -- it's one thing to take that person away

6   for an extra day or extra two days given travel time.

7            THE COURT:  I've heard what New York lawyers charge,

8   though.

9            MR. ROUHANDEH:  Well, I guess my point was --

10           THE COURT:  Pfizer might pay their employees.

11           MR. ROUHANDEH:  They do contribute a lot to --

12           THE COURT:  I'm sure they do.  You contribute a lot,

13  too, right?

14           MR. ROUHANDEH:  Although -- not necessarily.  We don't

15  necessarily make money for them.  We're not in that business.

16           There are going to be a number of people in Michigan.

17  I think the idea that they could just simply say they have to

18  come here because they don't want to go to the burden and

19  expense.  They're not going to take their plaintiffs and fly

20  them to Boston for their depositions or New York.  They're not

21  going to fly 114 people at their expense to New York for their

22  depositions.

23           THE COURT:  They're not one.  They're 114.  It's the

24  same lawyers, but Mr. Fromson stands here, in a sense, 114

25  different times.  I mean, in other words, each of those

1  depositions happens in each individual action.  They don't --

2  they're -- the 114 aren't an entity.  They're not a class.

3        MR. ROUHANDEH:  Sure.  That's correct, your Honor.  I

4  guess what we would say is we think it makes sense for them to

5  talk to us about who they're going to want to depose, who's

6  going to be in Michigan, who's based in New York.  We don't go

7  to Michigan just once for one deposition here or there.  We

8  line them up and we knock them out because those people are

9  very busy.

10       Their preference -- and they have, I think, the legal

11 right not to have to come to New York.  They're basically

12 asking the court to exercise the power it doesn't have.  You

13 can't subpoena somebody who's not a managing agent or officer

14 to come to this or any other jurisdiction.

15       They have to go proceed by subpoena out of the court

16 in Michigan and have -- and issue a subpoena on that person for

17 their testimony.  Those people do not want to come to New York.

18 They do not want to travel to New York.  At least the ones

19 we've talked to so far have said, look, if I can do this in

20 Michigan, that's where I want to do it.  I only lose one day of

21 work that way for the deposition.  I can start -- I can work a

22 full day the day before and a full day after.  I don't have to

23 fly.  It really knocks out three days for them.

24       It's true.  It's true.  It's more expensive for the

25 lawyers to have to fly up there, but that's the cost of the

Page 68

1    litigation.  And if we can reduce that cost by being efficient

2    and having a whole bunch of depositions go forward in Michigan

3    all around the same time, I think that makes sense.  But to

4    simply to say, because a company has over 100,000 employees,

5    many, many of them not in New York, they have the ability to

6    bring --

7           THE COURT:  You don't have to produce them all in New

8    York.  I'm just saying that -- I only have one in front of me,

9    and it's the one -- it struck me, from a practical perspective,

10   as more sensible, especially we're not talking about the CEO or

11   somebody at that level.  It struck me as more -- just the

12   practical side, more sensible to do it in New York.

13           On the other hand, it does strike me in this case

14   there are going to be a lot of depositions in these 114 cases,

15   not to mention the sales and marketing side.  There is a

16   certain logic to doing the -- you may not do them all in Ann

17   Arbor, but do them in Ann Arbor and go out there and do a whole

18   bunch in Ann Arbor if you can do them.  It doesn't make sense

19   for you all to go out there necessarily for one.  You have to

20   make that judgment.

21           MR. ROUHANDEH:  Of the number of depositions they've

22   noticed, this Francine Kimball is another person they've

23   noticed.  Janet Turner is another person that they're seeking

24   to depose.  Those people are in Ann Arbor.

25           THE COURT:  Are you not going to produce them in Ann

Page 69

1  Arbor absent a subpoena issued by the United States District

2  Court in Michigan?

3       MR. ROUHANDEH:  We have to think about that.  There's

4  no problem for them to get a subpoena.  We might accept service

5  of that subpoena.  I think if we don't they're going to argue

6  that they can simply notice the depositions and they don't have

7  to serve subpoenas and that's somehow a waiver on our part.  If

8  we agree we can proceed without actually having a subpoena as

9  long as it goes forward in Michigan, we might be willing to do

10 that.  But I'm willing to give some argument later, hey, you

11 already agreed to produce these three people who aren't

12 managing agents without a subpoena and, therefore, we're

13 entitled to just issue by a notice and we're going to pick the

14 location.

15      Out of the nine people they noticed, three are in Ann

16 Arbor.  Any more that are going to be there -- that's research

17 and development out there.  It's a lot of the safety issues

18 that are going to be relevant here.  They're going to have

19 people out there, located in Ann Arbor.  That's two or three

20 depositions that could take place in Ann Arbor all at once, in

21 one trip.  I think that makes more sense than having to require

22 these people to miss work and come to New York.

23      MR. TABB:  Your Honor, Michael Tabb for the sales and

24 marketing plaintiffs.  We also were the attorneys in the

25 Franklin case.  In our experience in litigating with Pfizer,

1    Pfizer has tried to stick to the word of the rules of civil

2    procedures but not the spirit including the fact that these

3    rules are being interpreted to be in the swift and economical

4    resolution of disputes, Rule 1.

5         This court has jurisdiction over all matters relating

6    to Neurontin litigation, both in the sales and marketing and in

7    the products liability.  There's absolutely no need to get

8    subpoenas from local district courts.  Your Honor has now,

9    Judge Saris now has, all the responsibilities for all the

10   Neurontin cases, which would include the normal going in a case

11   to get the local district court.  All subpoenas can issue out

12   of here.  Your Honor has control over all litigation disputes.

13   If there's a dispute regarding a third party relating to

14   whether they're going to produce or not produce, they come to

15   this court.  We don't have to go around the court.

16        The idea that we're going to be talking about, yes,

17   we're going to try and do things by the book, which will incur

18   expense, when they are practical considerations, when all the

19   parties are here, I don't think it's necessary.  I think your

20   Honor does have the discretion.  Your Honor can create things

21   that are economical so that we can go by the spirit of the

22   rules, including the economical spirit.

23        Now, granted, we have not been participating in the

24   coordination of discovery.  Discovery has technically been

25   stayed in the sales and marketing.  I assume that's going to be