UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------------x
                                                       :   MDL Docket No. 1629
In re:   NEURONTIN MARKETING,                          :
         SALES PRACTICES AND                           :   Master File No. 04-10981
         PRODUCTS LIABILITY LITIGATION                 :
                                                       :   Judge Patti B. Saris
-------------------------------------------------------x
                                                       :   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                              :
                                                       :
         ALL ACTIONS                                   :
                                                       :
-------------------------------------------------------x
```

**PRODUCTS LIABILITY PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF
<u>CASE MANAGEMENT ORDER NO. 5, RELATING TO DEPOSITIONS</u>**

Products Liability Plaintiffs ("PL Plaintiffs") hereby oppose the motion by Defendants Pfizer Inc. and Warner-Lambert Company ("Defendants") for entry of Case Management Order No. 5 ("CMO5"), relating to depositions, as proposed and attached to Defendants' Memorandum as Exhibit A.

<u>**PRELIMINARY STATEMENT**</u>

On March 7, 2007, Defendants submitted to PL Plaintiffs a set of proposed deposition guidelines. Discussions between counsel did not result in a comprehensive agreement concerning deposition guidelines. As discussed below, PL Plaintiffs in good faith could not agree to Defendants' proposals. Defendants subsequently filed their Motion for Entry of Case Management Order No. 5, Relating to Depositions, requesting *inter alia* that Plaintiffs be limited to 20 depositions of witnesses, whether said witness is a current or former employee of Defendants or is a third party witness.

## ARGUMENT

## THE COURT SHOULD DENY DEFENDANTS' MOTION FOR ENTRY OF CMO5 AS PROPOSED

**A.     Defendants' Proposed Limitation on the Number
Of Depositions Is Arbitrary and Unnecessary**

Defendants argue that PL Plaintiffs' proposal to take the depositions of 56 of Defendants' witnesses is unreasonable. At the outset, it should be noted that in Defendants' Supplemental Initial Disclosure Statement dated May 16, 2005 (annexed hereto as Exhibit A), Defendants identified a total of 99 individuals, 65 from Warner-Lambert and 34 from Pfizer, who may have discoverable information that Defendants may use to support their claims or defenses; and in Defendants' Supplemental Disclosure Statement dated January 10, 2007 (annexed hereto as Exhibit B), Defendants identified a total of 84 such individuals, 39 from Warner-Lambert and 45 from Pfizer.

Defendants have not produced custodial file documents from each of these witnesses. PL Plaintiffs arguably would need to depose each of these 99 or 84 witnesses in order to discover the basis of Defendants' disclosure of individuals who may have discoverable information supporting Defendants' claims or defenses. There is no other mechanism to obtain such discoverable information. Nevertheless, PL Plaintiffs have only identified 56 individuals for deposition, inclusive of witnesses not on either of Defendants' disclosures but whom PL Plaintiffs have identified through investigation as individuals who have discoverable information relating to PL Plaintiffs' claims.

Moreover, PL Plaintiffs' list of 56 individuals previously identified by Defendants is not a formal notice of deposition. The Court's Discovery Order No. 2 at paragraph 10 (June 19, 2006; ECF Doc. #372) requires the parties exchange a list of proposed

2

deponents as part of the parties' obligation to confer regarding the scheduling of depositions anticipated by the parties. It is a list submitted by PL Plaintiffs to Defendants for the purposes of conferring to select witnesses in the hope that court intervention will be unnecessary. Counsel for PL Plaintiffs and Defendants should now be involved in good faith discussions concerning the availability of witnesses, their potential substantive testimony and whether their depositions can be scheduled within the discovery deadlines. Instead, Defendants are seeking an arbitrary number –20– of depositions as a limitation upon ALL Plaintiffs counsel.[1]

PL Plaintiffs have in good faith provided a list of potential deponents who may have discoverable information covering (1) safety, (2) sales/marketing, (3) regulatory and (4) research/development. Each one of these four major categories may be further divided into numerous specific sub-categories, each of which may require the deposition of multiple witnesses. Defendants' Rule 26(a) disclosures delineate at least twelve subject areas: (1) clinical research and development; (2) drug safety surveillance, (3) post market safety, (4) medical information, (5) medical liaisons, (6) medical and scientific affairs, (7) regulatory, (8) sales and marketing, (9) risk management, (10) RMRs, (11) marketing analytics, and (12) statistical analysis. These subject areas do not even represent the complete list of subject areas as to which Plaintiffs have discovered

---

[1] Notably, Defendants have cited to no decision from a complex MDL proceeding in which the Court has limited the number of depositions that the plaintiffs may take of the defendants. Defendants have attached copies of orders in the Bextra and Celebrex Product Liability Litigations pending in the New York State Supreme Court and the United States District Court for the Northern District of California, where the Courts have limited depositions of the Pfizer Entities' common fact witnesses to no more than five per month. *See In re New York Bextra & Celebrex Prod. Liab. Litig.*, Case Management Order No. 8, page 7, attached to Defs.' Mem. as Ex. D; *In re Bextra & Celebrex Marketing Sales Practices & Prod. Liab. Litig.*, Pretrial Order No. 4, page 8, attached to Defs.' Mem. as Ex. E. Clearly, the five depositions per month limitation is not a limitation on the total number of depositions that the plaintiffs are entitled to take of the Pfizer Entities' common fact witnesses.

3

witnesses that may have relevant information pertaining to the safety and efficacy of Neurontin, and they span over a decade of information and at least two major pharmaceutical companies, Warner-Lambert and Pfizer. Documents recovered in this litigation reveal further subject areas, including media relations and outcomes research, as well as an apparent worldwide group of individuals who are responsible for safety and efficacy information that may come from abroad (e.g., worldwide safety). Under the circumstances, it is clear that Plaintiffs require depositions of far more than 20 witnesses.

Defendants argue that PL Plaintiffs identified 23 witnesses from a single area, the PMP (Product Maintenance and Pharmacovigilance) Team. However, Plaintiffs have no idea whether any or all of the 23 individuals are current or former employees of Defendants, or if the witnesses are dead or alive. Plaintiffs simply do not know the witnesses' availability. Importantly, the Team is a purported group of employees spanning multiple subject matters. For example, the PMP Team includes employees representing the following areas: clinical data operations, clinical safety and risk management, clinical research and development, European drug safety, global project management, marketing analytics, medical information, program planning and management, regulatory strategy, epidemiology, labeling safety analysis, medical safety evaluation, worldwide safety, Neurontin worldwide marketing, and Neurontin worldwide medical. In sum, the Team is comprised of individuals knowledgeable about a particular subject that is relevant to Plaintiffs' claims in this litigation.

Further, Defendants' reference to the *Franklin* era documents as providing PL Plaintiffs with a running start is misplaced. The "Franklin" documents are but a small portion of the documents relating to the marketing/promotion of Neurontin and were

limited to a certain timeframe and a limited geographic area. The *Franklin* collection does not adequately encompass documents related to research, development, safety and efficacy of Neurontin. These are clearly areas of discovery that PL Plaintiffs must pursue via depositions, particularly in light of the fact that Defendants have provided a paucity of internal[2] documents from the Warner-Lambert era on these subjects.

Lastly, it must be noted that Defendants' attempt to limit discovery is not applied to their own intended depositions. To the extent the Court believes that there should be a limit on the number of depositions, then Defendants should equally be limited to the number of depositions they intend to take when scheduling case-specific depositions in Products Liability cases. Indeed, Defendants have thus far deposed at least twenty (20) witnesses in a single Plaintiff Products Liability case, *Crone v. Pfizer Inc.*, venued in California state court, and there is no end in sight as to whether Defendants will seek additional depositions. Applying simple math to the ten Track One cases venued here in the MDL, Defendants may seek over 200 depositions before resolution is reached on a mere 10 individual cases. While Plaintiffs recognize defense counsel's right or obligation to defend a client, similarly, Defendants should recognize Plaintiffs' need to depose each individual who may provide substantive testimony material and necessary to Plaintiffs' cases.

**B.     Defendants Seek to Impose Travel Requirements on
        Plaintiffs' Witnesses While Refusing to Compromise
        On Locations for Defendants' Witnesses' Depositions**

---

[2] Defendants' disclosure of Warner-Lambert era documents has included formal regulatory correspondence and filings such as the New Drug Application and supplemental filings; however, Defendants have provided a minimal amount of employee-to-employee emails or responsive custodial file documents from Warner-Lambert era employees.

5

"Where a corporation is involved as a party to the litigation, there is a general presumption in favor of conducting depositions of a corporation in its principal place of business." *Buzzeo v. Board of Educ.*, 178 F.R.D. 390, 392 (E.D.N.Y. 1998); *see also Smith v. Shoe Show of Rocky Mount, Inc.*, 2001 U.S. Dist. LEXIS 8618 at *6 (D. Mass. 2001). It is undisputed that Defendant Pfizer maintains its principal place of business in New York County.

Notwithstanding the presumption, "[t]he place to conduct the deposition of a corporate defendant and its agents depends upon an analysis of three factors: cost, convenience and litigation efficiency." *Buzzeo*, 178 F.R.D. at 392. The location of the parties' attorneys is also a relevant consideration. *Farquhar v. Shelden*, 116 F.R.D. 70, 72 (E.D. Mich. 1987). Holding the deposition of any of Defendants' witnesses in a state other than in New York would require several PL Plaintiffs', Sales/Marketing Plaintiffs' and Defendants' attorneys traveling from New York to the deponent's state, and losing extensive time from work not to mention the added expenses for travel and possibly lodging. On the other hand, if the deposition is held in New York County, only the single deponent will need to be absent from work and travel from his or her home to New York County. Moreover, the witness's deposition testimony may also be useful in the more than 225 Neurontin products liability actions being coordinated in New York County Supreme Court, where all parties are represented by New York State attorneys.

In *Boston Diagnostics Devel. Corp., Inc. v. Kollsman Mfg. Co.*, 123 F.R.D. 415, 416 (D. Mass. 1988), Magistrate Judge Collings noted that: "Cases have held that whether a witness is expected to identify himself with the interests of his principal rather than those of the other party is the 'paramount test' for determining whether an employee

6

is a 'managing agent.'" That Defendants' witnesses appear to be willing to appear for depositions in their home states strongly suggests that these individuals may be expected to identify themselves with the interests of their employer, the Defendants.

Moreover, Defendants have not submitted affidavits from any of the proposed witnesses explaining the extent to which their work and personal life might be disrupted by traveling to New York County for their depositions. There is no indication that Defendants' witnesses refuse to appear for deposition in New York County. *Cf. JSC Foreign Economic Ass'n Technostroyexport v. International Devel. & Trade Servs., Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004) (fact that alleged managing agents made it clear that they refused to appear for any depositions in this case, voluntarily or by order, even at the expense of possible sanctions against the corporate defendants, indicated that proposed deponents were beyond corporation's control). Nor is there any indication that Defendants' witnesses would not be fully compensated by their employer for their lost work time, and for any expenses associated with traveling to New York County for their depositions. Any denial of "control" by Defendants over a witness should also be accompanied by full disclosure of whether Defendants intend to represent such a witness at a deposition, retain counsel on the witness's behalf, or otherwise reimburse the witness for any counsel fees incurred.

Even assuming for the sake of argument that the Court finds that Defendants' witnesses are non-party witnesses, are mere employees of Defendants, and not managing agents, it is submitted that the Court should strongly encourage Defendants' counsel to take steps that would expedite discovery, including the assistance of non-party witnesses. *See United States v. Afram Lines (USA), Ltd*, 159 F.R.D. 408, 412 (S.D.N.Y. 1994).

"[S]ince a current employee of a party is within that party's practical control, it is often sensible to require the employee to appear pursuant to notice while deferring the question of whether his testimony will bind his employer." *Id.* at 414.

Additionally, at the last conference, the Court appeared to favor having Defendants produce witnesses in New York (or Boston) when there is a single witness involved, but if there were multiple witnesses being scheduled over consecutive days, then the Court was inclined to have the attorneys travel to the group of witnesses as that would be more efficient. Consistent with this premise, PL Plaintiffs expressed an interest in pursuing this type of protocol, as admitted by Defendants. *See* Defs.' Mem. at p. 7 n4. Now that PL Plaintiffs have provided a proposed list of witnesses, Defendants should review the list and propose dates and locations consistent with such a protocol. In no way have Plaintiffs taken steps to frustrate such a plan and "force" witnesses to New York and Boston. Indeed, to the extent depositions can begin in May, Defendants have over a month to begin scheduling witnesses.

**C.     A Fact Witness Should Not Be Provided With Documents That Would Allow the Witness to Tailor His Testimony to the Documents**

Defendants request that Plaintiffs provide copies of materials 48 hours in advance of depositions. Clearly, such a request by Defendants should be seen as an attempt to prejudice Plaintiffs' rights to candid, spontaneous answers from witnesses. Common sense dictates that Plaintiffs' counsel does not want to provide an opposing witness with the very documents intended to be used to impeach the witness: the witness should not be given the luxury of having the documents prior to the deposition to enable him to prepare for and tailor his testimony in a manner that is skewed or otherwise biased. *See In re Propulsid Prod. Liab. Litig.*, 2000 U.S. Dist. LEXIS 19034, 2000 WL 1880319

8

(E.D. La. Dec. 27, 2000) ("Plaintiffs, however, object to the advanced disclosures because they believe it would result in deposition answers that are, at best, not spontaneous, and at worse, rehearsed or perhaps counsel inspired").

Defendants attach to their Memorandum, as Exhibit G, a copy of the Order in the *Prempro* MDL pending in the U.S. District Court for the Eastern District of Arkansas, wherein the *Prempro* MDL Court adopted a similar provision requiring the production of documents to a deponent forty-eight hours prior to the deposition. Notwithstanding the *Prempro* Court's approval of such a provision, PL Plaintiffs herein adopt the arguments made by the *Prempro* plaintiffs opposing inclusion of that provision. *See* Plaintiffs' Opposition to Wyeth's Motion to Amend Practice and Procedure Order No. 2, annexed hereto as Exhibit C.

Defendants also attach to their Memorandum, as Exhibit E, a copy of Pretrial Order No. 4: Conduct of Discovery, filed in the *Bextra* MDL pending in the U.S. District Court for the Northern District of California. Defendants Pfizer and Warner-Lambert fail to note, however, that the Pfizer Entities in the *Bextra* MDL had requested inclusion of a similar provision in Pretrial Order No. 4, requiring the exchange of exhibits in advance of depositions. *See* Joint Letter from *Bextra* MDL counsel to the Court, annexed hereto as Exhibit D, enclosing, *inter alia*, the parties' [Proposed] Pretrial Order No. 4: Conduct of Discovery, annexed hereto as Exhibit E, at p. 14, ¶ 35 ("a. ]Provision Requested by Defendants: Exchange of Exhibits in Advance of Deposition. Any documents about which examining counsel expects to examine the deponent, other than those intended to be used solely to impeach the witness or to test the deponent's recollection, shall be

9

provided to counsel for the deponent and counsel for the other party participants five business days in advance of the deposition").

After arguments concerning the issue at a case management conference, the Court took the matter under submission. *See* Civil Minutes of January 27, 2006 Conference, annexed hereto as Exhibit F. The Court ultimately refused to include this provision requiring the early exchange of deposition exhibits. *See* Pretrial Order No. 4: Conduct of Discovery, annexed to Defs.' Mem. as Ex. E, at p. 14, ¶ 35.

Moreover, in the [Proposed] Case Management Order No. 5, annexed to Defendants' Memorandum as Exhibit A, Defendants Pfizer and Warner-Lambert herein do not even see fit to include the further proviso that the Pfizer Entities had proposed to be included in the *Bextra* MDL, namely, that the documents provided prior to depositions be "other than those intended to be used solely to impeach the witness or to test the deponent's recollection."

The Court is further advised that New York State recently adopted uniform rules for the conduct of depositions, including a specific provision restricting "speaking objections". *See* Part 221 Uniform Rules for the Conduct of Depositions, 22 NYCRR § 221.1(b), annexed hereto as Exhibit G. The depositions scheduled to be taken in the Neurontin MDL are also being held in coordination with the Neurontin Coordinated Litigation in New York State Supreme Court. Providing documents to a deponent in advance of his deposition would encourage the witness's attorney to circumvent the New York State prohibition against suggesting an answer to the deponent at the deposition by preparing answers concerning documents in advance of the deposition.

## CONCLUSION

PL Plaintiffs therefore respectfully request that this Court deny Defendants' Motion for Entry of Case Management Order No. 5, Relating to Depositions, as proposed and attached to Defendants' Memorandum as Exhibit A.

Dated: April 10, 2007

Respectfully submitted,

*Members of Products Liability Plaintiffs' Steering Committee*

By:   **/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY 12550

By:   **/s/ Jack W. London**
Jack W. London, Esquire
Law Offices of Jack W. London
 & Associates
106 E. 6th Street, Suite 700
Austin, TX 78701

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on April 10, 2007.

**/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire