# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE NEURONTIN

Index No. 04 CV 6704

Assigned to:

Hon. Jed S. Rakoff

DEFENDANTS'
SUPPLEMENTAL INITIAL
DISCLOSURE STATEMENT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>DEFENDANTS' SUPPLEMENTAL DISCLOSURE STATEMENT</u>

PLEASE TAKE NOTICE that, pursuant to Rule 26(a)(1) of the Federal

Rules of Civil Procedure, Defendants Pfizer Inc., Parke-Davis, a division of

Warner-Lambert Company and Warner-Lambert Company LLC, Warner-

Lambert Company, and Warner Lambert Company LLC ("Defendants") amends

their disclosures under Rule 26(a)(1)(A) as follows.

These responses are made subject to all objections as to competence,

materiality, relevance, or other objection as to admissibility that may apply in the

event that any such response, or the information contained in it, is sought to be

used in court. Defendants expressly reserve all such objections.

> **Rule 26(a)(1)(A): The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.**

Discovery and investigation in this case are on-going. Therefore, based on the information reasonably available, Defendants are unable at the present time to identify each and every individual who would have discoverable information that the Defendants may use to support their claims or defenses in the case, and the subjects of such information. Defendants reserve the right to supplement these disclosures as they become aware of additional individuals who would have such information.

Subject to the foregoing and without waiver of any of Defendants' rights, the following additional individuals may have information that they may use to support their claims and defenses in this case:

**Warner-Lambert**

| | |
|---|---|
| Mi Dong | Clinical Research and Development |
| Elizabeth Garofalo | Clinical Research and Development |
| Ron Martin | Clinical Research and Development |
| Atul Pande | Clinical Research and Development |
| Mark Pierce | Clinical Research and Development |
| Charles Taylor | Clinical Research and Development |
| Myra Ballina | Drug Safety Surveillance |
| Diane Cairns | Drug Safety Surveillance |
| Rose Rogan | Drug Safety Surveillance |
| Sylvia Tomcyzk | Drug Safety Surveillance |
| Rubin Bedell | Medical Information |
| Barbara Bonetti | Medical Information |
| Charles Fraser | Medical Information |
| Matt DiGiorgi | Medical Information |
| Helen Duda-Racki | Medical Information |
| Leslie Fierro | Medical Information |
| Robert Lewis | Medical Information |
| Robert Menella | Medical Information |
| Frank Pignataro | Medical Information |

| | |
|---|---|
| Mike Davies | Medical Liaisons |
| Joe Dymkowski | Medical Liaisons |
| LeeAnne Fogleman | Medical Liaisons |
| Richard Grady | Medical Liaisons |
| Lisa Kellett | Medical Liaisons |
| Ken Lawlor | Medical Liaisons |
| Joe McFarland | Medical Liaisons |
| Darryl Moy | Medical Liaisons |
| | |
| Elizabeth Attias | Medical and Scientific Affairs – Medical Liaisons |
| Adrian Bal | Medical and Scientific Affairs – Medical Liaisons |
| James Black | Medical and Scientific Affairs – Medical Liaisons |
| Denise Bluhm-Heise | Medical and Scientific Affairs – Medical Liaisons |
| Jyoti Jankowski | Medical and Scientific Affairs – Medical Liaisons |
| Ken Massey | Medical and Scientific Affairs – Medical Liaisons |
| Philip Magistro | Medical and Scientific Affairs – Medical Liaisons |
| Lonia Merte | Medical and Scientific Affairs – Medical Liaisons |
| William Sigmund | Medical and Scientific Affairs – Medical Liaisons |
| | |
| Leslie Magnus-Miller | Medical and Scientific Affairs |
| | |
| Irwin Martin | Regulatory |
| James Parker | Regulatory |
| Alan Rubenstein | Regulatory |
| Janeth Turner | Regulatory |
| | |
| Tom Albright | Sales and Marketing |
| Mary Lou Aquino | Sales and Marketing |
| Diane Beskenis | Sales and Marketing |
| John Boris | Sales and Marketing |
| J. Allen Crook | Sales and Marketing |
| Victor Delimata | Sales and Marketing |
| Robert Doyle | Sales and Marketing |
| John Ford | Sales and Marketing |
| Laura Johnson | Sales and Marketing |
| Tim George | Sales and Marketing |
| Edda Guerrero | Sales and Marketing |
| John Howard | Sales and Marketing |
| John Knoop | Sales and Marketing |
| Nancy Kohler | Sales and Marketing |
| John Krukar | Sales and Marketing |
| Les Lang | Sales and Marketing |
| David Murphy | Sales and Marketing |
| Lawrence Perlow | Sales and Marketing |

3

Jacqueline Rizzo          Sales and Marketing
Doug Saltel               Sales and Marketing
Les Slater                Sales and Marketing
Michael Valentino         Sales and Marketing
John Woychick             Sales and Marketing
Brian Zorn                Sales and Marketing

## Pfizer

Gretchen Dieck            Drug Safety and Risk Management
Tina Ho                   Drug Safety and Risk Management

Carol Ceuba-Jones         Drug Safety Surveillance
Vivian Conde              Drug Safety Surveillance
Yvonne Crichton           Drug Safety Surveillance
Terry Donovan             Drug Safety Surveillance
Janice Groth              Drug Safety Surveillance
Esperanza Molina          Drug Safety Surveillance
Kashia Petchel            Drug Safety Surveillance
Angela Vales              Drug Safety Surveillance
Grazia Zurlo              Drug Safety Surveillance

Bruce Parsons             Medical
Leslie Tive               Medical
Claire Wohlhuter          Medical

Barbara Bonetti           Medical Information
Catherine Clary           Medical Information
Michelle Claussen         Medical Information
Helen Duda-Racki          Medical Information
John Rocchi               Medical Information
Julie Su                  Medical Information
Adrian Vega               Medical Information

Rudi Altevogt             Regulatory
Lucy Castro               Regulatory
Art Ciociola              Regulatory
Andrea Garrity            Regulatory
Stephen Cristo            Regulatory
Manini Patel              Regulatory

Lisa Lardieri             RMRs

4

| | |
|---|---|
| Suzanne Doft | Sales and Marketing |
| John Krayacich | Sales and Marketing |
| Andrea Zeucher Malone | Sales and Marketing |
| Avanish Mishra | Sales and Marketing |
| David Probert | Sales and Marketing |
| Meg Yoder | Sales and Marketing |

To the extent any additional discovery and investigation may provide additional facts and legal contentions that may substantially alter these disclosures, Defendants reserve the right to amend without prejudice any and all disclosures herein consistent with these developments, including product identification, identifying other relevant witnesses and additional areas of information which support Defendants' defenses in this case and identifying additional individuals with discoverable information that may be used to support their claims or defenses in this case.

Dated:   New York, New York
         May 16, 2005

                              DAVIS POLK & WARDWELL

                              By: _____

                                  James P. Rouhandeh (JR-2251)
                                  James E. Murray (JM-4006)

                              450 Lexington Avenue
                              New York, New York  10017
                              (212) 450-4000

5

Attorneys For Defendants Pfizer Inc.,
Parke-Davis, a division of Warner-
Lambert Company and Warner-
Lambert LLC, Warner-Lambert
Company, and Warner-Lambert
Company LLC.

EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:  NEURONTIN MARKETING, SALES PRACTICES,
        AND PRODUCTS LIABILITY LITIGATION

MDL Docket No. 1629

Master File No. 04-10981

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

Judge Patti B. Saris

Magistrate Judge Leo T.
Sorokin

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PRODUCTS LIABILITY ACTIONS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' SUPPLEMENTAL DISCLOSURE STATEMENT

PLEASE TAKE NOTICE that, pursuant to Rule 26(a)(1) of the Federal Rules of Civil

Procedure, Defendants Pfizer Inc., Parke-Davis, a division of Warner-Lambert Company and

Warner-Lambert Company LLC, Warner-Lambert Company, and Warner Lambert Company

LLC ("Defendants") make and amend their disclosures as follows.

These responses are made subject to all objections as to competence, materiality,

relevance, or other objections as to admissibility that may apply in the event that any such

response, or the information contained in it, is sought to be used in court.  Defendants expressly

reserve all such objections.

A.     **Rule 26(a)(1)(A): The name and, if known, the address and telephone number of
       each individual likely to have discoverable information that the disclosing party
       may use to support its claims or defenses, unless solely for impeachment, identifying
       the subjects of the information.**

Discovery and investigation in these actions are on-going.  Based on the information

reasonably available, Defendants are unable at the present time to identify each and every

individual who would have discoverable information that the Defendants may use to support

their claims or defenses in the case, and the subjects of such information. Defendants reserve the right to supplement these disclosures as they become aware of additional individuals who have such information.

Subject to the foregoing and without waiver of any of Defendants' rights, the following individuals may have information that Defendants may use to support their claims and defenses in this action:

1. Plaintiff(s);

2. Members of Plaintiffs' and/or Plaintiffs' decedents' families;

3. Health care providers and treating physicians and psychiatrists, including those who prescribed Neurontin to Plaintiffs' and/or Plaintiffs' decedent;

4. Hospital, police and emergency personnel who investigated the incidents;

5. Pfizer employees and representatives who had any communications relating to Neurontin with, or were otherwise in contact relating to Neurontin with, the physician(s) who prescribed Neurontin to Plaintiffs' and/or Plaintiffs' decedents;

6. Defendants' employees and representatives with knowledge of the safety of Neurontin, including those listed below;

7. Any witnesses necessary to authenticate documents;

8. Any witnesses identified or disclosed by Plaintiffs.

Subject to the foregoing and without waiver of any of Defendants' rights, the following additional individuals may have information that Defendants' may use to support their claims and defenses in this action:

**Warner-Lambert**

| | |
|---|---|
| Mi Dong | Clinical Research and Development |
| Elizabeth Garofalo | Clinical Research and Development |
| Lloyd Knapp | Clinical Research and Development |
| Linda LaMoreaux | Clinical Research and Development |

2

| | |
|---|---|
| Atul Pande | Clinical Research and Development |
| Mark Pierce | Clinical Research and Development |
| Charles Taylor | Clinical Research and Development |
| | |
| Helen Duda-Racki | Medical Information |
| | |
| Mike Davies | Medical Liaisons |
| LeeAnne Fogleman | Medical Liaisons |
| Richard Grady | Medical Liaisons |
| Lisa Kellett | Medical Liaisons |
| Ken Lawlor | Medical Liaisons |
| Joe McFarland | Medical Liaisons |
| Darryl Moy | Medical Liaisons |
| | |
| Elizabeth Attias | Medical and Scientific Affairs – Medical Liaisons |
| Adrian Bal | Medical and Scientific Affairs – Medical Liaisons |
| James Black | Medical and Scientific Affairs – Medical Liaisons |
| Jyoti Jankowski | Medical and Scientific Affairs – Medical Liaisons |
| Philip Magistro | Medical and Scientific Affairs – Medical Liaisons |
| | |
| William Sigmund | Medical and Scientific Affairs |
| Leslie Magnus-Miller | Medical and Scientific Affairs |
| | |
| James Parker | Regulatory |
| Alan Rubenstein | Regulatory |
| Janeth Turner | Regulatory |
| | |
| John Boris | Sales/Marketing |
| J. Allen Crook | Sales/Marketing |
| Victor Delimata | Sales/Marketing |
| Robert Doyle | Sales/Marketing |
| John Ford | Sales/Marketing |
| Tim George | Sales/Marketing |
| Edda Guerrero | Sales/Marketing |
| John Howard | Sales/Marketing |
| Laura Johnson | Sales/Marketing |
| John Knoop | Sales/Marketing |
| Nancy Kohler | Sales/Marketing |
| John Krukar | Sales/Marketing |
| David Murphy | Sales/Marketing |
| John Woychick | Sales/Marketing |

**Pfizer**

| | |
|---|---|
| Larry Alphs | Clinical Development |
| Lalitha Aiyer | Drug Safety and Risk Management |
| Gretchen Dieck | Drug Safety and Risk Management |
| Greg Gribko | Drug Safety and Risk Management |
| Manfred Hauben | Drug Safety and Risk Management |
| Tina Ho | Drug Safety and Risk Management |
| Douglas Kargman | Drug Safety and Risk Management |
| Emily Lanigan | Drug Safety and Risk Management |
| Elizabeth Luczak | Drug Safety and Risk Management |
| Jeffrey Mohan | Drug Safety and Risk Management |
| Esperanza Molina | Drug Safety and Risk Management |
| Kathy Siegler | Drug Safety and Risk Management |
| Deepak Taneja | Drug Safety and Risk Management |
| Nancy Mancini | Marketing Analytics |
| Robert Glanzman | Medical |
| Bruce Parsons | Medical |
| Leslie Tive | Medical |
| Christopher Wohlberg | Medical |
| Claire Wohlhuter | Medical |
| Catherine Clary | Medical Information |
| Michelle Claussen | Medical Information |
| Helen Duda-Racki | Medical Information |
| John Rocchi | Medical Information |
| Julie Su | Medical Information |
| Adrian Vega | Medical Information |
| Kay Sumulak | Postmarket Safety |
| Rudi Altevogt | Regulatory |
| Mary Ann Carnel | Regulatory |
| Lucy Castro | Regulatory |
| Art Ciociola | Regulatory |
| Stephen Cristo | Regulatory |
| Andrea Garrity | Regulatory |
| Chris Pacella | Regulatory |
| Manini Patel | Regulatory |
| Suzanne Doft | Marketing |
| Allison Fannon | Marketing |
| Craig Glover | Marketing |

4

| | |
|---|---|
| Christine Grogan | Marketing |
| Leigh Ann Hemenway | Marketing |
| Andrea Zeucher Malone | Marketing |
| Avanish Mishra | Marketing |
| Steve Piron | Marketing |
| David Probert | Marketing |
| Meg Yoder | Marketing |
| | |
| Guy Cohen | Statistical Analysis |

To the extent any additional discovery and investigation provides additional facts and legal contentions that may substantially alter these disclosures, Defendants reserve the right to amend without prejudice any and all disclosures herein consistent with those developments, including product identification, identifying other relevant witnesses and additional areas of information which support Defendants' defenses in this case and identifying additional individuals with discoverable information that may be used to support their claims or defenses in this case.

**B.      Rule 26(a)(1)(B): A copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.**

Because discovery and investigation in these actions are ongoing, and because in many instances, Plaintiffs' counsel has not yet identified the physician(s) who prescribed Neurontin to Plaintiffs and Plaintiffs' decedents, Defendants are unable at the present time, based on the information reasonably available, to identify all documents, compilations, and tangible things, if any, that Defendants may use to support claims or defenses in these cases and the subject of such information.

Subject to the foregoing and without waiving any of Defendants' rights, Defendants submit the following list:

1.   Medical records in the possession or control of Plaintiff, Plaintiff's attorneys or health care providers.

2.   The applicable package insert for the drug manufactured by Defendants at issue in this case.

3.   Relevant documents contained in regulatory files, including the New Drug Application and Investigational New Drug Application.

4.   Relevant documents contained in safety surveillance and analysis files.

To the extent any additional discovery and investigation provides additional facts and legal contentions that may substantially alter these disclosures, Defendants reserve the right to amend without prejudice any and all disclosures herein consistent with these developments, including identifying additional areas of information, relevant documents, and tangible things that support their claims or defenses in this case.

Pursuant to Fed. R. Civ. P. 26(b)(5), Defendants object to disclosure or production of documents and materials generated during the course of this litigation that constitute attorney work product or that contain privileged attorney-client communications. These documents and materials may consist, among others, of communications or correspondence between counsel and Defendants, correspondence between counsel and consulting experts, and between Defendants and employees to facilitate the rendering of legal advice. These documents may be exempt from discovery pursuant to Fed. R. Civ. P. 26(b)(3), 26(b)(4)(B), and/or the applicable attorney-client and/or joint defense privilege.

Moreover, if Defendants identify certain documents that they believe contain trade secrets and other confidential research, development, or commercial information, such documents will be produced subject to an appropriate protective order.

6

C.    **Rule 26(a)(1)(C):  A computation of any category of damages claimed by the disclosing party.**

Not applicable.

D.    **Rule 26(a)(1)(D):  For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

Defendant is self-insured and has assets sufficient to satisfy any judgment that may be rendered in this matter.

Dated: January 10, 2007

/s/James P. Rouhandeh
James P. Rouhandeh

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

/s/David B. Chaffin
David B. Chaffin

HARE & CHAFFIN
BBO # 549245
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc.,
Parke-Davis, a division of Warner-
Lambert Company and Warner-Lambert
LLC, Warner-Lambert Company, and
Warner-Lambert Company LLC.*

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
AUG 19 2004
JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

In re:                                         :
PREMPRO PRODUCTS LIABILITY      :
LITIGATION                                   :        MDL Docket No.
                                                   :        4:03CV1507 WRW
                                                   :
                                                   :
_____  :

PLAINTIFFS' OPPOSITION TO

WYETH'S MOTION TO AMEND
PRACTICE AND PROCEDURE ORDER NO. 2

Wyeth's request that Plaintiffs reveal in advance of depositions what documents they intend to use would not only invade sacrosanct opinion work product but also would all but eliminate the spontaneity and truthfulness of witnesses, thereby thwarting the discovery process. Neither result can be justified merely by the fact that depositions might be completed more rapidly.

I.     FORCED PRE-DEPOSITION DISCLOSURE OF DOCUMENTS WOULD UNDERMINE THE SEARCH FOR TRUTH WHILE GENERATING, AT MOST, MODEST GAINS IN EFFICIENCY.

Ordinarily, Plaintiffs would present their work product argument first because the work product privilege prohibits compelled disclosure. Plaintiffs present this equitable argument first because of its simplicity and the fact that at least one MDL court, confronted with a motion identical to Wyeth's, rejected precisely the arguments Wyeth has made, finding that the harm of compelled disclosure to the truth-seeking function of

discovery outweighs any modest benefits to efficiency. *See In re: Propulsid Products Liability Litigation*, 2000 WL 1880319 (E.D. La. Dec. 27, 2000).

Like Wyeth here, the defendants in *Propulsid* sought an order requiring disclosure of documents 10 days before a deposition. Like Wyeth, the defendants supported the motion on the grounds of order and efficiency. Like Wyeth, the defendants cited the Manual on Complex Litigation and several cases in which such a procedure had been implemented. Like Wyeth, the defendants argued the court had authority to enter such an order pursuant to its authority to control the mode and order of interrogating witnesses pursuant to Rule 611 of the Federal Rules of Civil Procedure. *Id.* at *1 (Memorandum at 1-2).

The *Propulsid* court found all of this unpersuasive, concluding that the damage such a proposal would inherently impose on the truth-seeking function of a deposition outweighs any efficiency that might be achieved. In other words: Justice trumps convenience.

> Efficiency is important and alluring. History has taught us that there is a certain amount of comfort in having the trains run on time. Yet, the courts must be careful not to seek efficiency without regard to the consequences. The theoretical advantage of prior discussions are outweighed by the practical realities and potentially perilous consequences of endangering unfettered and untutored testimony. Moreover, following the traditional practice for conducting depositions in this particular case should not cause any undue hardship to the Defendants because the documents at issue will be largely produced by the Defendants who probably created them and had access to them for some period of time.[1]

---

[1] Similarly, in this case, the vast majority of documents to be used with Wyeth's witnesses will be Wyeth's own documents that Wyeth has scanned, downloaded and indexed, both objectively and subjectively.

*Id.* The court denied the defendants' motion, concluding that "a deviation from the time honored practice of producing or using documents at the time they are tendered to the witness" was unwarranted. *Id.* at *2.

Though no amount of efficiency could justify the sacrifice of truthfulness, the *Propulsid* court also concluded any gains in efficiency would be modest, at best. That is because attorneys rarely know in advance of depositions exactly which documents they will use. They would thus inherently overestimate the documents to potentially be used. *Id.* at *1. Indeed, Counsel's determination of what documents to introduce as exhibits is often based on the knowledge and answers of the witness. Counsel may have a number of documents, for example, she may use based on a particular answer. Should the witness answer differently than expected, Counsel may turn to a different set of documents through which to explore the testimony. Until the answer is delivered, Counsel does not know which documents she will use. Thus, the notion that Counsel can disclose but a few documents is naive, to say the least.

Depositions should explore a witness's or corporation's knowledge, not how well a witness can prepare to discuss certain documents. Wyeth's proposal is reminiscent of the failed experimentation by some states with completely standardized testing in which students do not spend a semester studying English literature or biology – they spend the semester learning how to take standardized tests on English literature and biology. Under Wyeth's proposal, a corporate witness would not spend the 10-day period preceding a deposition learning the corporation's knowledge of specified topics. She would instead spend the 10 days learning the "appropriate" answers to every conceivable question that might be asked regarding disclosed documents. Depositions

3

should be a process by which a litigant can uncover the knowledge possessed by a party or witness. They should not be a competition to see whose witnesses can be better coached.

## II. PURSUANT TO UNAMBIGUOUS EIGHTH CIRCUIT PRECEDENT, THE COURT IS PROHIBITED FROM COMPELLING DISCLOSURE BECAUSE COUNSEL'S SELECTION OF DOCUMENTS CONSTITUTES OPINION WORK PRODUCT THAT IS SHIELDED FROM DISCOVERY.

The modern work product doctrine has its genesis in *Hickman v. Taylor*, 329 U.S. 495 (1947). In *Hickman*, the United States Supreme Court held that preserving the privacy of an attorney's litigation preparation is essential to our adversarial system of justice. *Id.* at 393. The work product doctrine was eventually codified by the Federal Rules. *See* FED. R. CIV. P. 26(b)(3). Rule 26 distinguishes between "ordinary" and "opinion" work product. "Opinion work product" includes an attorney's legal strategy, mental impressions, thoughts, opinions and conclusions." *Hickman*, 329 U.S. at 511; *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1328 (8th Cir. 1986); *Sporck v. Peil*, 759 F.2d 312, 316 (3rd Cir. 1985). Whereas a litigant can be ordered to disclose ordinary work product (though only upon a showing of substantial need and undue hardship), opinion work production is afforded nearly absolute protection from discovery. *See* FED. R. CIV. P. 26(b)(3); *Shelton*, 805 F.2d at 1328; *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977); *Sporck*, 759 F.2d at 316.[2]

---

[2]    A court may order disclosure of opinion work product "only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." *Estate of Chopper v. R.J. Reynolds Co.*, 195 F.R.D. 648, 650 (N.D. Iowa 2000)(citations omitted).

4

The Eighth Circuit has determined that an attorney's selection of documents to be used during litigation constitutes opinion work product and is therefore shielded from discovery.  In *Shelton*, the plaintiffs deposed a defendant's corporate counsel, asking her to attest to the existence of certain documents.  Counsel declined, stating that her knowledge was based on her selection of documents to review in her role as counsel assisting with the litigation.  After ordering the witness to answer the questions, to no avail, the district court issued a default judgment on liability against the defendant.  The Eighth Circuit reversed, finding that a lawyer's selection of documents is work product subject to the highest protection.

> In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research.  We believe Burns' selective review of AMC's numerous documents were based upon her professional judgment of the issues and defenses involved in this case.  This mental selective process reflects Burns' legal theories and thought processes, which are protected as work product.

*Shelton*, 805 F.2d at 1329 (*citing Sporck*, 759 F.2d at 316)).

The Eighth Circuit reaffirmed the *Shelton* holding in *Petersen v. Douglas County Bank & Trust Co.*, 967 F.2d 1186, 1189 (8th Cir. 1992).

> Under the work product doctrine, discovery of documents prepared in anticipation of litigation by or for another party or by or for that party's attorney is restricted.  Documents "prepared in anticipation of litigation" may include <u>business records that were specifically selected and compiled</u> by the other party or its representative in preparation for litigation and that the mere acknowledgement of their selection would reveal mental impressions concerning the potential litigation.

*Id.* (emphasis added).  District court decisions from this Circuit and elsewhere concur.

*See, e.g., Moore v. R.J. Reynolds Tobacco Co.*, 194 F.R.D. 659, 662 (S.D. Iowa 2000);

*Chopper*, 195 F.R.D. at 650; *see also United States v. Pepper's Steel & Alloy, Inc.*, 132

F.R.D. 695, 698 (S.D. Fla. 1990)("opinion work product may be reflected in something as subtle as the act of selecting and ordering documents"); *American Floral Services, Inc. v. Florist's Transworld Delivery Association*, 107 F.R.D. 258, 261 (N.D. Ill. 1985)(because "disclosure of the selection made by requesting party's lawyer...necessarily reflect[ed] his or her assessment of what is and is not important in the case, [such disclosure] runs afoul of (and would be precluded by) the [Work Product] Doctrine.").

In fact, the majority of courts confronting the issue have concluded that an attorney's selection of documents is protected from disclosure as work product. *See* CHARLES ALAN WRIGHT, ET AL, FED. PRAC. & PROC. CIV. 2D § 2101 (1994).[3]

The fact that this litigation involves many documents highlights the importance of protecting Counsel's mental impressions. The selection of but a fraction of documents to use in examining a witness knowledgeable in a particular area would undeniably alert the opposing party as to Counsel's strategy in pursuing issues in that area. Assuming the number of documents identified are small, the deponent's attorney could practically construct the outline of questioning from the documents produced. If the documents identified are voluminous, there is no benefit to Wyeth's proposal, as Wyeth concedes

---

[3]   Wyeth suggests, as an aside comment, that the "upcoming depositions are, after all, discovery depositions," though Wyeth fails to identify the significance of this (erroneous) distinction (Memorandum at 1-2). Plaintiffs do not accept the categorization of depositions as purely "discovery depositions" or "trial depositions." A deposition is a deposition, admissible for any purpose, including as trial testimony (which is why all depositions taken to date have been videotaped). Further, Counsel's selection of documents to emphasize in discovery is undeniably indicative of the documents she may use at trial. Finally, Wyeth's proposed rule is not limited to "upcoming depositions" but applies universally to all depositions, including those litigants intend to use at trial, after cases are remanded to their transferor courts.

(Memorandum at 2 & n. 2). In other words, each incremental increase in purported "efficiency" comes at the expense of a greater sacrifice of work product.

It should, therefore, come as no surprise that Wyeth's proposal is inconsistent not only with the multiple decisions cited above but also with commentators' analyses as well. Wyeth cites four cases in which pre-deposition document disclosure was required (Memorandum at 2-3). In three of those cases, however, the requirement was simply part of practice and procedure orders containing a multitude of mandates. <u>No written opinions even accompanied the orders!</u> There is no indication, in any of the cases, that the provision was even a subject of dispute the court had to resolve. The provision may very well have been the product of the parties' agreement.[4]   A mere order of a district court, with no indication that the contents of the order were even contested – and with no written opinion justifying the order -- is entitled to no deference at all.

Wyeth is thus left with a single decision supporting its opinion – *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007 (1st Cir. 1988)(Memorandum at 3). Given the consensus cited above, it should come as no shock that *Dupont Plaza* has been heavily criticized. Initially, *Dupont Plaza*, which flies in the face of Eighth Circuit jurisprudence, is the only circuit court decision to ever suggest that an attorney's selection of documents is not entitled to opinion work product protection.

---

[4]    That is particularly true of the order in *In re Phenylpropanolamine Products Liability Litigation* given that every page of the order contains a footer identifying the law firm that prepared the order. The *In re Diet Drugs Products Liability Litigation* order is likewise merely an unpublished order (Wyeth's Submission Re: Motion to Amend Practice and Procedure Order No. 2, filed Aug. 12, 2004). While there is a Westlaw citation for the *In re Orthopedic Bone Screw Product Liability* provision cited by Wyeth, no written opinion is included. The Westlaw cite merely leads one to a PPO issued by the court. 1995 WL 925664 (E.D. Pa. Oct. 25, 1995)(Memorandum at 3).

Among federal appellate courts, the characterization of compilations as opinion work product has proven to be determinative of protection. The Third Circuit in *Sporck v. Peil* and the Eighth Circuit in *Petersen v. Douglas County Bank & Trust Co.*, for example, protected the compilations in those cases because they concluded the compilations reflect legal theories and mental impression. The single circuit court that characterized compilations as ordinary work product, the First Circuit in *Dupont Plaza*, concluded that no protection of any sort was appropriate.

John Soumilas, *Compilations: Truth, Privacy, and the Work Product Doctrine*, 73 TEMP. L. REV. 227, 242 (2000).[5]

*Dupont Plaza* is based on two transparently flawed conclusions. First, the court held that concerns such as work product protection should take a back seat to the practical concerns created by modern day complex litigation. 859 F.2d at 1015. Such a defeatist attitude is frighteningly inconsistent with the *Propulsid* court's conclusion that modern courts must not let their understandable desire for convenience and efficiency undermine their respect for rules ensuring the truth-seeking function of discovery. *See* text at I, *supra*. Nor should they allow that desire to justify invading work product. As one commentator wrote:

> The *In re San Juan Dupont Plaza Hotel Fire Litigation* court's attack on *Sporck* is flawed.[6] A court's desire to effectively manage a complex case is laudable, but is hardly a sufficient ground for disclosure of work product. For decades federal courts have managed complex cases effectively and efficiently without disturbing well established privileges like work product. So could the court in *In re San Juan Dupont Plaza Hotel Fire Litigation*.

Alfreda Robinson (Associate Dean, The George Washington University School of Law), *Duet or Duel: Federal Rule of Evidence 612 and the Work Product Doctrine Codified in*

---

[5]    Mr. Soumilas expressly noted that *Dupont Plaza* is inconsistent with both Eighth Circuit and Third Circuit precedent. Soumilas, *supra*, at 232.

[6]    As noted above, the Eighth Circuit follows *Sporck* rather than *Dupont Plaza*, a decision that is the antithesis of the Eighth Circuit rulings in *Shelton* and *Petersen*. *See* text at page 5, *supra*; Soumilas, *supra*, at endnotes 28, 203; *see also Shelton*, 805 F.2d at 1329 (citing *Sporck* with approval).

*Civil Procedure Rule 26(b)(3)*, 69 U. Cin. L. Rev. 197, 225 (2000); *see also* Jon Moss, *Opinion Work Product and Complex Litigation: A New Exception or Rule or Convenience*, 15 Okla. City. U.L.R. 291, 330 (1990)("the case-management exception, as announced and applied in *San Juan Dupont*, abrogated both the ordinary and opinion work-product privileges").[7]

The court's other conclusion was that attorney document selection is not protected because it will ultimately be revealed as the deposition transpires. This argument ignores the fact that the selection will not be revealed until <u>after</u> the benefits of introducing the document have occurred. Of course, eventually, all of an attorney's strategies will be revealed, some during the discovery process and the rest at trial. Their ultimate revelation does not somehow diminish the importance of their privacy before they are actually revealed. Further, *Dupont Plaza* ignores that the vast majority of documents an attorney selects for a deposition will ultimately not be used; hence, the attorney will largely maintain the confidence of her selection. *See* Robinson, *supra*, at 225-26.

In any event, this Court is bound by Eighth Circuit precedent. The Eighth Circuit has afforded the highest work product protection to an attorney's selection of documents. But even under the diametrically opposed reasoning of *DuPont Plaza*, as shown above, attorney selection constitutes at least "ordinary" work product, thereby

---

[7]    Significantly, despite its controversial nature, *Dupont Plaza* is the only case referenced in the section of the Manual for Complex Litigation Wyeth cites. *See* Manual for Complex Litigation (Fourth) § 11.451, p. 85 & n. 182 (Memorandum at 2). The single sentence of the nearly 800-page Manual on which Wyeth relies has remained essentially unchanged since the second edition and fails to take into account contemporary case law on the issue. *See* Moss, *supra*, at 331 ("It important to note that the Manual's suggestion predates the *Sporck v. Peil* decision and its progeny.").

obliging Wyeth to at least prove substantial need and undue hardship in not obtaining pre-deposition document identification in this litigation. At the very least, Wyeth must show that it has been prejudiced by the absence of such disclosure in at least one of the more than dozen depositions of its personnel taken to date. Wyeth offers no proof at all of need or burden.

## III.   WYETH'S PROPOSAL WOULD UNDULY BURDEN PLAINTIFFS.

Independently of the fact that Wyeth's proposal would undermine the search for truth while invading a sacred privilege, Wyeth's proposal is logistically unrealistic. The notion that Counsel can be fully prepared to take every deposition 10 days before the deposition is to occur ignores the realities of litigation, contemporary or historical. Counsel typically prepares to take a deposition during the few days and hours before the deposition is to occur. Few lawyers enjoy the luxury of a schedule that allows them to finish projects 10 days before they are due. Yet, in order to know each document that will be used in a deposition, the attorney would be forced to essentially outline the entire deposition questioning more than 10 days before a deposition. That is because the information sought and corresponding questions are what dictate which documents may be used.

Further, even if Counsel were able to prepare her outline of inquiry and organize all corresponding documents 10 days before a deposition, she would be compelled to review her work product and repeat this task immediately before the deposition. Counsel cannot possibly remember all the intricacies a document contains 10 days after first reviewing it. Wyeth's proposal would thus compel Plaintiffs' Counsel to prepare for

10

a deposition twice. Given the extensive discovery this litigation requires, Plaintiffs can ill afford such inefficiency.

## CONCLUSION

The Eighth Circuit has twice reversed district court orders compelling an attorney to reveal what documents she has selected as important to litigation on the ground that such selection is protected work product. At least one MDL court has rejected Wyeth's exact proposal and every argument Wyeth has made on the ground that disclosure would result in canned and untruthful testimony. Whether this Court bases its decision on the sanctity of work product or the sanctity of the truth, Wyeth's motion should be denied.

Respectfully submitted,

Russell D. Marlin
William Gary Holt
GARY EUBANKS & ASSOCIATES
708 West Second Street
Post Office Box 3887
Little Rock, Arkansas 72203-3887

Liaison Counsel for Plaintiffs

11

**CO-LEAD COUNSEL ON BEHALF
OF PERSONAL INJURY PLAINTIFFS**

Ms. Zoe Littlepage
Littlepage Booth
408 Westheimer Street
Houston, Texas 77006
Phone:  (713) 529-8000
FAX:    (713) 529-8044

## Certificate of Service

I hereby certify that a copy of the foregoing document was served according to this Court's provisions for service as set forth in the pretrial orders and sent to the following counsel of record as indicated below on this ___19th___ day of August, 2004.

_____
Russell Marlin

*VIA E-MAIL* **AND
SERVICE THROUGH LIAISON COUNSEL**
Ms. Lynn Pruitt
Mitchell, Williams, Selig, Gates & Woodyard
425 West Capitol, Suite 1800
Little Rock, Arkansas 72201

DEFENDANTS' LIAISON COUNSEL

*VIA E-MAIL* **AND
SERVICE THROUGH LIAISON COUNSEL**
Mr. John W. Vardaman: jvardaman@wc.com
Mr. Lane Heard: lheard@wc.com
Williams & Connolly, LLP
725 12th Street N.W.
Washington, D.C. 20005

ATTORNEYS FOR WYETH DEFENDANTS

**_VIA E-MAIL AND_**
**_SERVICE THROUGH LIAISON COUNSEL_**
Mr. Jaye Mayesh
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

ATTORNEYS FOR PFIZER DEFENDANTS

# EXHIBIT D

 **PIPER RUDNICK GRAY CARY**

**DLA Piper Rudnick Gray Cary US LLP**
1251 Avenue of the Americas
New York, New York 10020-1104
T 212.835.6000
F 212.835.6001
W www.dlapiper.com

AMY W. SCHULMAN
amy.schulman@dlapiper.com
T 212.835.6108  F 212.884.8508

January 24, 2006

Honorable Charles R. Breyer
United States District Court
Courtroom 8, 19th Floor
450 Golden Gate Avenue
San Francisco, California  94102

Re:    In re Bextra and Celebrex Marketing, Sales Practices and Products
       Liability Litigation, MDL No. 1699

Dear Judge Breyer:

The parties submit this letter pursuant to the Court's Pretrial Order No. 2 dated December 13, 2005.  Following the initial case management conference, Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel met and conferred a number of times and can report that we have reached agreement on a series of proposed pretrial orders, which are submitted herewith.  The parties are still discussing a common benefit fund order, which Plaintiffs' Liaison Counsel will submit to the Court tomorrow.  Any areas of disagreement in the various pretrial orders can be addressed at the status conference on January 27th.

The following are joint proposed agenda items for the status conference scheduled for Friday, January 27, 2006:

1.    The present status of the litigation, in federal and state court.

2.    The parties' [Proposed] Pretrial Order No. 3: Stipulated Protective Order.

3.    The parties' [Proposed] Pretrial Order No. 4: Conduct of Discovery.

4.    The parties' [Proposed] Pretrial Order No. 5: Plaintiff Fact Sheets and Defendant Fact Sheets.

5.    The Plaintiff Steering Committee's proposed order pertaining to a common benefit fund and cost-sharing.

**Serving clients globally**



Honorable Charles R. Breyer
January 24, 2006
Page 2

6.    How the Court wishes to address inconsistencies between its Pretrial Orders and the automatic orders issued by the Clerk's office when a case file is opened establishing individual case management conferences and discovery deadlines.

7.    The Plaintiff Steering Committee's report on the designation of Plaintiffs' State Liaison Counsel.

8.    The date for the next status conference.

Respectfully submitted,

/s/
Amy W. Schulman
DLA Piper Rudnick Gray Cary US LLP
1251 Avenue of the Americas
New York, New York  10020-1104

/s/
Elizabeth J. Cabraser
Lieff Cabraser Heimann & Bernstein LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339

Stuart M. Gordon
Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, California  94111

Joseph W. Cotchett
Frank W. Pitre
Cotchett Pitre Simon & McCarthy
840 Malcolm Road, Suite 200
Burlingame, CA  94010

cc:    All counsel of record in cases transferred to the Northern District (*via ECF*)

Enclosures:    [Proposed] Pretrial Order No. 3: Stipulated Protective Order
[Proposed] Pretrial Order No. 4: Conduct of Discovery
[Proposed] Pretrial Order No. 5: Plaintiff Fact Sheets and Defendant Fact Sheets

# EXHIBIT E

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10

11   IN RE:  BEXTRA AND CELEBREX          CASE NO. M:05-CV-01699-CRB
     MARKETING SALES PRACTICES AND
12   PRODUCT LIABILITY LITIGATION         MDL No. 1699

13

14   This Order Relates to:              **[PROPOSED] PRETRIAL ORDER NO. 4:**
                                         **CONDUCT OF DISCOVERY**
15        ALL CASES.

16

17   **I.    SCOPE OF ORDER**

18            1.    <u>Order Applicable to All Cases in MDL Proceedings</u>.  This Order shall

19   apply to all cases currently pending in MDL No. 1699 and to all related actions that have been or

20   will be originally filed in, transferred to, or removed to this Court and assigned thereto

21   (collectively, "the MDL proceedings").  This Order is binding on all parties and their counsel in

22   all cases currently pending or subsequently made part of these proceedings and shall govern each

23   case in the proceedings unless it explicitly states that it relates only to specific cases.  The

24   limitations in this Order shall apply to all cases pending in the MDL proceedings, including both

25   product liability and purchase actions and including cases involving Bextra®, Celebrex®, or

26   both.  This Order shall apply to all discovery conducted by the Plaintiffs' Steering Committee

27   ("PSC") on behalf of all Plaintiffs (including any committees or sub-committees specifically

28   authorized by the PSC to conduct such discovery) and that conducted by Defendants in these

                                              -1-

1    proceedings; neither Defendants nor individual Plaintiff's counsel nor any committees or sub-

2    committees created by the PSC shall be entitled to conduct additional non-case-specific discovery

3    in these proceedings other than as permitted by this Order or any subsequent order of this Court.

4    **II.    COORDINATION WITH OTHER LITIGATION**

5            2.    Coordination to Extent Practicable.  Plaintiffs and Defendants in this

6    litigation, and in particular the Plaintiffs' Liaison Counsel, PSC, Defendants' Liaison Counsel,

7    and all other counsel designated by the Court in prior or subsequent Pretrial Orders, shall work to

8    coordinate to the extent practicable the conduct of this litigation with other product liability or

9    marketing or sales practices actions involving Celebrex® and/or Bextra® pending in any State

10   Court.  Such coordination is intended to conserve scarce judicial resources, eliminate duplicative

11   discovery, serve the convenience of the parties and witnesses, and promote the just and efficient

12   conduct of this litigation.  It is contemplated by the Court and the parties that all discovery

13   conducted in these proceedings may be utilized in any related State Court action, in accordance

14   with that State's law and rules of evidence, and vice versa, subject to an appropriate cost-sharing

15   provision which will be the subject of a further order.  All discovery obtained in these

16   proceedings which is used in any State Court litigation is subject to this Order, any protective

17   order(s) entered by this Court, and such future cost-sharing orders as may be entered.

18           3.    Intent to Coordinate with State Courts.  In order to achieve the full benefits

19   of this MDL proceeding, this Court intends to coordinate with State Courts presiding over related

20   cases, to the extent that such State Courts so desire, such as through joint orders that will allow

21   the parties in the State Court actions to fully utilize any discovery conducted in the MDL

22   proceedings and vice versa.  As the Court indicated at the initial case management conference,

23   this Court intends to work actively to reach out to any State Court that is interested in

24   coordinating discovery activities.  The Court expects that counsel for parties in the MDL

25   proceeding will help ensure that such coordination is achieved wherever it is practicable.

26           4.    Coordination by Plaintiffs' Counsel.  All discovery directed against

27   Defendants and non-party witnesses on behalf of Plaintiffs shall be undertaken by, or under the

28   direction of, the PSC on behalf of all Plaintiffs with cases in these MDL proceedings.  Any

-2-

1  discovery not limited to a specific Plaintiff shall be signed by Plaintiffs' Liaison Counsel. The

2  PSC shall, where practicable, coordinate its discovery requests with Plaintiffs' counsel in State

3  Court litigation to the extent practicable to eliminate duplicative discovery requests.

4          5.   <u>Coordination of Production of Documents</u>. Defendants Pfizer Inc.,

5  Pharmacia & Upjohn Co., Pharmacia & Upjohn LLC, Pharmacia Corporation, and G.D. Searle

6  LLC (formerly known as G.D. Searle & Co.) (collectively, "the Pfizer Entities"), to the extent any

7  such Defendants are properly before this Court, shall produce a common set of documents to the

8  PSC for the use of Plaintiffs in these proceedings and in any related State Court which agrees to

9  their use. The PSC shall make the documents produced by the Pfizer Entities available to

10  Plaintiffs in any State Court litigation, subject to an appropriate cost-sharing provision which will

11  be the subject of a further order. This provision shall not preclude any party from asserting in any

12  action that such documents are inadmissible at trial, nor shall this provision be construed to

13  supersede or amend any State's law or State Court order pertaining to such documents.

14          6.   <u>Cross-Noticing of Depositions</u>. Depositions of fact witnesses that are

15  noticed in these proceedings (other than fact witnesses whose testimony is only relevant in an

16  individual case) may be cross-noticed in any related State Court actions by Plaintiffs' Liaison

17  Counsel and/or Defendants' Liaison Counsel, or counsel in such State Court actions. It is this

18  Court's intention that such cross-notices shall be designed to the extent practicable to avoid such

19  witnesses being deposed more than once. Accordingly, any depositions taken in these

20  proceedings may be used in any State Court action, in accordance with that State's law and rules

21  of evidence. Similarly, any deposition taken in any State Court action of such witnesses may be

22  cross-noticed in this action and may be used in these proceedings to the extent otherwise

23  permitted by or admissible under federal law and the Federal Rules of Evidence. Once a

24  deposition has been noticed and taken in the MDL proceedings, then the Plaintiffs in the MDL

25  proceedings may not take a subsequent deposition of that witness, except for good cause shown

26  as determined by this Court or upon consent of the parties. In such instances, the subsequent

27  deposition shall be restricted to such additional inquiry permitted by the Court or agreed upon by

28  the parties.

-3-

## III.    PRODUCTION OF DOCUMENTS

7.    <u>Preservation</u>. The parties shall maintain and preserve documents produced in response to requests for production of documents in the format in which they were collected so that they shall be available to all attorneys, on reasonable terms and conditions, and to the Court.

8.    <u>Depository</u>. The PSC shall bear the cost of and administer its own depository. All documents produced by Defendants in this proceeding shall be produced to the PSC's designee. The PSC shall make the documents produced by Defendants available to Plaintiffs in State Court litigation, subject to an appropriate cost-sharing provision which will be the subject of a further order. This production shall not preclude any party from asserting in any action that such documents are inadmissible at trial, nor shall this provision be construed to supersede or amend any State's law or State Court order pertaining to such documents.

9.    <u>Use of On-Line Document Depositories</u>. Counsel shall take all reasonable and necessary steps to assure the security of any confidential information produced pursuant to the Protective Order issued by this Court and will limit access to confidential information to those persons covered by the Protective Order. In particular, if counsel for any party makes documents available via the Internet, such counsel shall take all reasonable and necessary steps to ensure that the Internet site is secure and may not be accessed by individuals who are not authorized to review confidential information. Upon request by any party supplying confidential information, any party using an Internet site must certify to the Court and the supplying party that the Internet site is secure and may only be accessed pursuant to the Protective Order entered by this Court.

10.    <u>Format of Production by Pfizer Entities</u>. The parties shall meet and confer regarding the form of production of documents by the Pfizer Entities.

11.    <u>Sequence of Production by Pfizer Entities</u>. The Pfizer Entities shall produce documents on a rolling basis beginning in February 2006. The sequence in which the documents are produced need not conform to the requirements of Federal Rule of Civil Procedure 34(b). The PSC and counsel for the Pfizer Entities shall meet and confer in an effort to reach agreement as to the schedule for production.

/////

-4-

12.    <u>Page Numbering</u>.  All documents produced during discovery shall have their pages numbered sequentially by the party producing the documents.  The Pfizer Entities' documents shall bear bates numbers that identify the individual from whom the document was collected, or, where the document was collected from files maintained other than by an individual, with some other bates number that identifies the file from which the document was collected.  (For example, documents collected from the files of an employee named John Smith could be labeled "SMITH J 000001.")  Plaintiffs' Liaison Counsel shall meet and confer with Defendants' Liaison Counsel regarding the production of any documents by Plaintiffs, by other non-Pfizer parties, or by non-parties in response to subpoenas or authorizations to identify an appropriate page numbering system prior to the production of any such documents.

13.    <u>Assertion of Privilege in Response to Production Requests</u>.  Any party that withholds the production of requested documents or materials, regardless of the manner in which they are kept or maintained, on the ground of any privilege or application of the work-product doctrine must specify in writing, as to each document or thing not produced, the specific privilege(s) or doctrine(s) it is relying upon to withhold each document ("Privilege Log").  Each Privilege Log shall describe each document or thing for which a privilege or the work product doctrine is asserted in sufficient detail to reasonably permit the party seeking discovery to assess whether or not to dispute any such assertion of privilege or application of the work product doctrine.  This will include but is not limited to information regarding the document's subject, date, author, and all recipients, the authors' and recipients' titles, the specific privilege asserted, and the factual basis for the privilege.  Each party withholding materials shall provide opposing Liaison Counsel a copy of the party's Privilege Log in electronic form contemporaneously with each production whenever possible, and within twenty-one (21) days absent agreement of the parties.

14.    <u>Inadvertent Production</u>.  No party that inadvertently produces or discloses a document or information shall be deemed to have waived any privileges or work product protections that would otherwise apply to such documents or information.  The parties shall meet

/////

-5-

1  and confer to establish a protocol for addressing the inadvertent production of privileged

2  materials, to the extent such protocol is not addressed in the protective order in this litigation.

3          15.    <u>Completion of Production by Pfizer Entities</u>.  Liaison Counsel shall meet

4  and confer regarding the extent to which, if at all, the Pfizer Entities will be obligated to conduct

5  any ongoing collection and production of the Pfizer Entities' documents.  Any such ongoing

6  collection and production shall be the subject of agreement by Liaison Counsel or by further order

7  of this Court.

8          16.    <u>Production of Documents in Advance of Deposition</u>.  Absent agreement of

9  the parties or an order of this Court, any deposition notice or subpoena that requests the

10  production of documents in connection with the deposition shall be served no less than thirty days

11  in advance of the deposition.  Absent agreement of the parties or an order of this Court, the Pfizer

12  Entities shall produce all responsive, non-privileged documents in their possession, custody, and

13  control that the Pfizer Entities collected from the deponent's files not less than ten days before the

14  date of any deposition so noticed.

15          17.    <u>Production to Parties Other than Plaintiffs</u>.  The Pfizer Entities shall make

16  documents they produce under this Order available to parties other than Plaintiffs (such as

17  treating physician defendants) in the same manner and on the same terms as such documents are

18  made available to Plaintiffs.

19  **IV.**    <u>**WRITTEN DISCOVERY**</u>

20          18.    <u>Waiver of Initial Disclosures</u>.  In light of the discovery plan set forth

21  herein, the parties in all cases in this proceeding are relieved from complying with the

22  requirements of Federal Rule of Civil Procedure 26(a).

23          19.    <u>Master Written Discovery by Pfizer Entities</u>.  In addition to the Plaintiff

24  Fact Sheets that are the subject of Pretrial Order No. 5, the Pfizer Entities may serve a Master Set

25  of Requests for Production (not to exceed fifty requests), a Master Set of Interrogatories (not to

26  exceed twenty-five interrogatories, including all discrete subparts), and Set(s) of Requests for

27  Admission on each individual Plaintiff once a trial date has been set for that Plaintiff or that

28  Plaintiff is included within a trial pool, which shall be selected in a manner to be discussed

1    between the parties and which shall be the subject of a further order.  Plaintiffs shall serve written

2    responses, objections, and/or documents within thirty (30) days after receipt of such discovery

3    requests.

4        20.    Master Written Discovery by Plaintiffs.  In addition to the Defendant Fact

5    Sheets that are the subject of Pretrial Order No. 5, the PSC may serve Master Set(s) of Requests

6    for Production, Master Set(s) of Interrogatories (not to exceed fifty interrogatories, including all

7    discrete subparts, unless good cause is shown), and Set(s) of Requests for Admission on the

8    Pfizer Entities collectively (*i.e.*, the PSC may not serve master discovery on each Pfizer entity

9    individually).  No requests for production, interrogatories, or requests for admission may be

10   propounded on any Pfizer Entity other than the master discovery propounded by the PSC.

11       21.    Discovery Involving Non-Pfizer Defendants.  This Order shall not apply to

12   Defendants other than the Pfizer Entities or the Entities' current or former employees.  Discovery

13   to be conducted by and against non-Pfizer Defendants shall be the subject of a further order by

14   this Court.

15   **V.    NOTICES OF DEPOSITIONS OF PFIZER ENTITIES' COMMON FACT**

16   **WITNESSES**

17       22.    Scope of Section.  This section shall apply to the notices of depositions of

18   any witnesses currently or formerly affiliated with the Pfizer Entities.  Notices of the depositions

19   of expert witnesses or case-specific fact witnesses relating to individual Plaintiffs (e.g., health

20   care providers, individual Plaintiffs, or Pfizer sales representatives or other case-specific

21   witnesses) shall be the subject of a further Order of this Court.

22       23.    Avoidance of Duplicative Depositions.  As a general rule, absent good

23   cause or the agreement of the parties, no witness should be deposed on the same subject more

24   than once in these proceedings.  Defendants' Liaison Counsel shall advise the PSC of all

25   depositions that have been taken by Plaintiffs in other litigation related to Bextra® and

26   Celebrex® and shall provide the transcripts of such depositions to the PSC.

27       24.    Timely Completion of Discovery of Witnesses Currently or Formerly

28   Affiliated With Pfizer Entities.  All depositions of common fact witnesses currently or formerly

-7-

1  affiliated with the Pfizer Entities (*i.e.*, with the exception of witnesses or testimony relevant only

2  to individual cases), should be completed at least sixty (60) days in advance of the first trial date

3  set in these proceedings.  The parties recognize that the first trial date may be postponed if such

4  discovery is not completed by that deadline.  Any depositions of witnesses currently or formerly

5  affiliated with the Pfizer Entities that the PSC wishes to conduct after that deadline may only be

6  taken upon good cause shown or agreement of Liaison Counsel.  To ensure that discovery is

7  completed in a timely fashion, the parties shall report to the Court regarding the status of

8  discovery at regularly-scheduled status conferences and, if necessary, at other times ordered by

9  the Court.

10       25.     Scheduling.

11            a.     Number of Depositions.  No more than five depositions of common

12  fact witnesses currently or formerly employed by any of the Pfizer Entities shall be taken per

13  month, absent agreement of Liaison Counsel.  Such limitation shall include any depositions

14  conducted pursuant to Federal Rule of Civil Procedure 30(b)(6).

15            b.     Parties to Meet and Confer on Scheduling.  Absent extraordinary

16  circumstances, counsel shall consult in advance with opposing counsel and proposed deponents in

17  an effort to schedule depositions at mutually convenient times and places.  Depositions shall be

18  scheduled by agreement of the parties based upon the availability of documents relevant to the

19  specific witness and the availability of the witness and counsel.  Depositions of individually-

20  noticed witnesses currently or formerly affiliated with the Pfizer Entities may commence in April

21  2006.  Notices of depositions to be conducted pursuant to Federal Rule of Civil Procedure

22  30(b)(6) may be served as of the entry of this Order.  The parties shall work cooperatively to

23  ensure a fair and orderly process for the scheduling of depositions.

24            c.     Length.  All depositions of witnesses currently or formerly

25  affiliated with the Pfizer Entities will be limited to two seven-hour days, except for good cause

26  shown or agreement of the parties.  Questioning by Pfizer and off the record time shall not count

27  against this limit.  Sufficient time shall be reserved for all counsel designated pursuant to

28  paragraph 30 of this Order to conduct examinations; no designated counsel shall be denied

-8-

1   arbitrarily the opportunity to examine. Counsel designated pursuant to paragraph 30 of this Order

2   need not cross-notice any deposition to be entitled to examination time.

3               d.   Postponements. Once a deposition has been mutually scheduled by

4   Liaison Counsel, it shall not be taken off the calendar, rescheduled, or relocated less than three

5   calendar days in advance of the date it is scheduled to occur, except upon agreement between the

6   examiner designated by the party noticing the deposition and Liaison Counsel for the opposing

7   party and counsel for the witness, or by leave of Court for good cause.

8           26.   Location. All depositions of persons currently or formerly employed by

9   the Pfizer Entities shall be taken in a place mutually agreed to by Liaison Counsel. All

10   depositions of other witnesses shall be taken at such other locations as shall be agreed upon by the

11   witness and Liaison Counsel.

12           27.   Videotaping. Any party may videotape any deposition provided that the

13   intention to do so is set forth in the deposition notice or cross-notice.

14   **VI.    CONDUCT OF DEPOSITIONS**

15           28.   Scope of Section. This section shall apply to the depositions of any

16   witnesses currently or formerly affiliated with the Pfizer Entities. Depositions of expert witnesses

17   or case-specific fact witnesses relating to individual Plaintiffs (e.g., health care providers or

18   individual Plaintiffs) shall be the subject of a further Order of this Court.

19           29.   Attendance at Depositions.

20               a.   Who May Attend. Unless otherwise agreed to by the parties,

21   depositions may be attended only by the parties, the parties' counsel, the deponent, the deponent's

22   attorney, in-house counsel for the parties, representatives of the parties' insurers, court reporters,

23   videographers, and members and/or employees from the law firms of counsel of record. Upon

24   application, and for good cause shown, the Court may permit attendance by a person who does

25   not fall within any of the categories set forth in the previous sentence. Unnecessary attendance by

26   counsel is discouraged and may not be compensated in any fee application to the Court.

27               b.   Treatment of Confidential Documents or Testimony. While a

28   deponent is being examined about any document that is confidential because (i) the parties have

-9-

1    so agreed, (ii) a party has designated the document to be confidential pursuant to the protective

2    order associated with this litigation, or (iii) the Court has so ordered, attendance at that portion of

3    the deposition by persons to whom disclosure is not authorized by agreement of the parties or by

4    order of the Court shall be prohibited.  Any portion of the deposition transcript containing

5    confidential information shall be sealed.  Sealed portions of deposition transcripts may be opened,

6    read and utilized for all purposes as permitted by the terms of the protective order entered in this

7    litigation or in any applicable protective order entered in any State Court action.

8            30.    Number of Examiners.  The PSC may designate up to two attorneys to

9    examine a deponent.  The Plaintiffs' attorney(s) designated to conduct the examination will

10    coordinate with other Plaintiffs' counsel (including those pursuing cases in State Court as well as

11    those participating in the MDL proceeding) so as to conduct as thorough and non-duplicative an

12    examination as is practicable.  Any Plaintiffs' counsel in any related federal or state action may

13    suggest matters for inquiry in any deposition noticed in these actions by providing to the PSC or

14    its designee(s) a written list and brief explanation of such matters.  Defendants' Liaison Counsel

15    may select up to two attorneys to examine a deponent, one of whom shall be counsel for a

16    physician or other health care provider Defendant (unless no such counsel wishes to be so

17    designated).  The examiner(s) for each side shall endeavor to avoid duplicative questions.

18    Counsel for the noticing party shall give opposing counsel notice of the identity of the

19    examiner(s) at the beginning of each deposition.

20            31.    Sequence of Examination.  Questioning at the depositions will be

21    conducted in the following sequence:  (1) the examiner(s) designated by the Liaison Counsel

22    noticing the deposition, in the order designated by Liaison Counsel; (2) the examiner(s)

23    designated by the opposing Liaison Counsel, in the order designated by Liaison Counsel;

24    (3) individual counsel for the deponent, if any; and (4) any re-cross and/or redirect by such

25    counsel, in the same order.

26            32.    Objections.

27                    a.    How Objections Made.  Objections shall be made only by counsel

28    designated pursuant to paragraph 30 of this Order, plus individual counsel for the deponent (if

-10-

1    any), and shall be made by stating, "Objection" and the basis for the objection in a concise

2    manner. An objection by one party preserves the objection for and inures to the benefit of all

3    parties. No objection shall be expressed in language that suggests an answer to the deponent.

4    Counsel shall refrain from engaging in colloquy during depositions.

5        b.    Bases for Objections. No objection shall be made during the taking

6    of a deposition except to assert the following grounds: (1) the form of a question; (2) a privilege;

7    (3) a right to confidentiality; (4) a limitation imposed pursuant to a previously entered court order;

8    or (5) a question is argumentative, harassing or abusive. In connection with an objection to the

9    form of the question, the examiner may inquire as to the grounds for the objection in order to

10   allow the interrogator to amend the question.

11       c.    Objections Preserved. All objections, except as to the form of the

12   question, the responsiveness of an answer, or the assertion of a privilege shall be preserved for

13   later ruling by the court(s) in which the deposition testimony is offered and may be asserted at the

14   time the deposition testimony is proffered at trial. Objections as to the admissibility of

15   documents introduced during a deposition are not waived by failure to raise the objection during

16   the deposition, but rather are preserved for later ruling by the Court or by the trial judge.

17       d.    No Objection to Evidentiary Form of Question or Scope of Legal

18   Theory. In the event Plaintiffs seek to use at any trial the deposition testimony of any witness

19   offering an opinion, Defendants agree not to raise at such deposition or trial the objection that the

20   deposition questions asked or the answers given regarding such expert opinion do not conform to

21   the evidentiary form typically required by the jurisdiction whose law would control the case being

22   tried. For example, if one jurisdiction requires an opinion to be expressed to a "reasonable degree

23   of certainty," the Defendants shall not object to an opinion given to a "reasonable degree of

24   probability." Further, Defendants agree not to object to the form of the question posed at a

25   deposition or instruct a witness not to answer on the grounds it seeks testimony in support of a

26   particular legal theory (e.g., negligence or strict liability) that is not being prosecuted in all of the

27   cases for which the deposition is being taken. Defendants, however, reserve the right to seek to

28   exclude any particular deposition testimony at the trial of any individual case on the grounds that

-11-

1   such testimony is not relevant to the allegations of that case.  Further, the parties do not waive any

2   objection or argument they might have that answers given by a witness are legally insufficient,

3   without factual basis, or otherwise fail to meet applicable substantive or evidentiary standards.

4        33.    Consultation with Witness.  A witness may consult with counsel during a

5   deposition.  When a question is pending, the witness must first answer the question before

6   consulting with counsel, except that the witness and counsel may consult at any time for the

7   purpose of determining whether a privilege exists or whether the information sought is subject to

8   a protective order in place.

9        34.    Videotaped Depositions.

10       a.    Right to Videotape Depositions.  Any party shall have the right to

11  require that the deposition of any party or witness be recorded on videotape and shall provide

12  written notice of same with the deposition notice or, where the party wishing to videotape did not

13  notice the deposition, no later than five days before the date on which the deposition is scheduled

14  to occur.  All videotaped depositions shall be accompanied by a simultaneous audio tape and

15  stenographic transcript.

16       b.    Equipment and Techniques.  The parties shall meet and confer

17  regarding the equipment and techniques to be used to videotape depositions.  Provisions relating

18  to such equipment and techniques shall the subject of a further Order by this Court and shall be

19  issued prior to any depositions.

20       c.    Videography Technicians.  The party giving notice that the

21  deposition will be videotaped shall assure that all video technicians who record the deposition

22  possess the skills, experience and equipment necessary to understand and comply with this Order

23  and any further Order relating to the equipment and techniques to be used.  Counsel for that party

24  shall provide a copy of this Order and any further Order to the video technicians prior to the

25  deposition.

26       d.    Deposition Officer's Services Must Be Offered Equally.  Services

27  and products offered or provided by the deposition officer or the entity providing the services of

28  the deposition officer to any party or to any party's attorney or non-party who is financing all or

-12-

1    part of the deposition shall be offered or provided to all parties or their attorneys attending the

2    deposition.  No service or product may be offered or provided by the deposition officer or by the

3    entity providing the services of the deposition officer to any party or any party's attorney or non-

4    party who is financing all or part of the deposition unless the service or product is offered or

5    provided to all parties or their attorneys attending the deposition.  All services and products

6    offered or provided shall be made available at the same time and on the same terms to all parties

7    or their attorneys.

8            e.    Deposition Officer Shall Not Comment on Demeanor.  The

9    deposition officer and the organization providing the video and audio services shall not provide to

10    any party or any other person or entity any service or product consisting of their notations or

11    comments regarding the demeanor of any witness, attorney, or party present at the deposition.

12    The deposition officer and the organization providing the video and audio services shall not

13    collect any personal identifying information about the witness as a service or product to be

14    provided to any party or non-party.

15            f.    No Distortion.  The camera operators shall not distort the

16    appearance or the demeanor of participants in the deposition by the use of camera or sound

17    recording techniques.

18            g.    Oath and Identification of Attendees.  The oath shall be

19    administered to the deponent on camera and on the audio recording.

20            h.    Conclusion of Deposition.  At the conclusion of a deposition, a

21    statement shall be made on camera or on the audio recording that the deposition is ended where

22    agreed to by the parties and shall set forth any stipulations made by counsel concerning the

23    custody of the audio or video recording and the exhibits, or concerning other pertinent matters.

24            i.    Preservation of Videotapes.  The video operator shall preserve

25    custody of the original video medium in its original condition until further order of the Court.  No

26    part of the video or audio record of a video deposition shall be released or made available to any

27    member of the public unless authorized by the Court.

28    /////

-13-

1        35.    Use of Exhibits.

2        a.    [**Provision Requested by Defendants:  Exchange of Exhibits in**

3   **Advance of Deposition.**  Any documents about which examining counsel expects to examine

4   the deponent, other than those intended to be used solely to impeach the witness or to test

5   the deponent's recollection, shall be provided to counsel for the deponent and counsel for

6   the other party participants five business days in advance of the deposition.  To the extent

7   possible, all such exhibits shall have printed bates numbers affixed.]

8        b.    Provision of Hard Copies of Exhibits at Deposition.  Extra hard

9   copies of documents about which counsel examines the deponent shall be provided to counsel for

10   the deponent and counsel for the other party participants reasonably expected to attend during the

11   course of the deposition.  To the extent possible, all exhibits shall have printed bates numbers

12   affixed.

13        c.    Marking of Deposition Exhibits.  All exhibits will be marked for

14   identification by using the deponent's last name and a sequential number beginning with 1 (e.g.,

15   Smith-1).  In addition, the exhibit shall be identified on the record by the bates number of the

16   document.  If a document is used in more than one deposition, it will be marked in each

17   deposition.  All documents marked as exhibits will be attached to the original transcript and will

18   be retained with the original transcript.  Copies of exhibits may be attached to copies of the

19   transcript where the party ordering the transcript pays for the costs of copying those exhibits.

20        d.    Exhibits without Bates Stamps.  Deposition exhibits that have not

21   been previously produced in the litigation shall be assigned a bates stamp number from a range of

22   numbers reserved for this purpose.  The first time such a document is introduced as an exhibit at a

23   deposition, it shall be marked with the assigned bates stamp number and shall be placed in the

24   depository at the conclusion of the deposition.

25        36.    Time to Review Transcript.  Each deponent has the right to read and sign

26   the deposition transcript within forty-five days after receipt of the transcript from the court

27   reporter.  This time period shall not be extended, absent good cause shown.  Should the deponent

28   fail to sign the transcript within forty-five days, all parties have the right to use a copy of the

-14-

1   transcript in any further proceedings as though the copy were the original transcript. Should the

2   deponent fail to sign the errata sheet within forty-five days, the transcript will be deemed to have

3   been read and approved by the deponent. In the event the original transcript is unsigned, lost, or

4   inadvertently destroyed, a certified copy reflecting any changes made to the original transcript

5   may be used in place of the original.

6   **IT IS SO ORDERED.**

7

8   Dated: January _____, 2006

9                                          _____
                                           HONORABLE CHARLES R. BREYER
                                           UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-

EXHIBIT F

## CIVIL MINUTES

**Judge CHARLES R. BREYER**

Date: **January 27, 2006**

**MDL 1699** CRB

**In re Bextra & Celebrex Marketing, Sales Practices & Products Liability Litigation**

Attorneys:  Elizabeth Cabraser, Frank Pitre, Mark Robinson, Daniel Becnel, Jr.,
Amy Schulman, Victoria Filippov

Deputy Clerk: **BARBARA ESPINOZA**          Reporter:  Sahar McVickar
**PROCEEDINGS:**                                                          **RULING:**

1.  Further Case Management Conference         Held                                          _____

2. _____                    _____

## ORDERED AFTER HEARING:

 The Court orders that the Court's Pre Trial Order supersedes any scheduling order which might be issued by the clerk's office.  The Court takes the matter re:  when documents for depositions should be provided to opposing parties under submission

(  ) ORDER TO BE PREPARED BY:   Plntf _____  Deft _____  Court _____

(  ) Referred to Magistrate Judge For: _____
          (  )By Court          (  )Parties to approach Chief Magistrate in future

(X) CASE CONTINUED TO March 16, 2006 @ 4:00 p.m.  for Further Case Management Conference

Discovery Cut-Off _____     Expert Discovery Cut-Off _____

Plntf to Name Experts by _____     Deft to Name Experts by _____

P/T Conference Date _____  Trial Date _____ Set for _____ days
                    Type of Trial:  (  )Jury     (  )Court

Notes: _____

_____

_____

EXHIBIT G

22 NYCRR § 221.1

NEW YORK CODES, RULES AND REGULATIONS

*** THIS DOCUMENT REFLECTS CHANGES RECEIVED THROUGH MARCH 30, 2007
***

TITLE 22. JUDICIARY
SUBTITLE A. JUDICIAL ADMINISTRATION
CHAPTER II. UNIFORM RULES FOR THE NEW YORK STATE TRIAL COURTS
PART 221. UNIFORM RULES FOR THE CONDUCT OF DEPOSITIONS

22 NYCRR § 221.1 (2007)

§ 221.1  Objections at depositions

   (a) Objections in general. No objections shall be made at a deposition except those which, pursuant to subdivision (b), (c) or (d) of Rule 3115 of the Civil Practice Law and Rules, would be waived if not interposed, and except in compliance with subdivision (e) of such rule. All objections made at a deposition shall be noted by the officer before whom the deposition is taken, and the answer shall be given and the deposition shall proceed subject to the objections and to the right of a person to apply for appropriate relief pursuant to Article 31 of the CPLR.

(b) Speaking objections restricted. Every objection raised during a deposition shall be stated succinctly and framed so as not to suggest an answer to the deponent and, at the request of the questioning attorney, shall include a clear statement as to any defect in form or other basis of error or irregularity. Except to the extent permitted by CPLR Rule 3115 or by this rule, during the course of the examination persons in attendance shall not make statements or comments that interfere with the questioning.

Added 221.1 (effective 10/01/06) on 8/16/06.