UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------- x
:
In re: NEURONTIN MARKETING, SALES :
PRACTICES, AND PRODUCTS LIABILITY :
LITIGATION : MDL Docket No. 1629
:
------------------------------------- x
: Master File No. 04-
THIS DOCUMENT RELATES TO: : 10981
:
:
------------------------------------- x Judge Patti B. Saris
:
ALL SALES AND MARKETING ACTIONS :
: Magistrate Judge Leo
: T. Sorokin
:
:
:
:
:
:
:
:
------------------------------------- x

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION TO COMPEL COMPLIANCE WITH DISCOVERY ORDER NO. 7**
**AND FOR SANCTIONS**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
*Attorneys for Defendants Pfizer Inc.*
*and Warner-Lambert Company*

# TABLE OF AUTHORITIES

Page

**Cases**

Ameriwood Indus. Inc. v. Liberman, No. 4:06CV524-DJS, 2006 U.S. Dist. LEXIS 93380 at *11-12 (E.D.Mo. December 27, 2006) ............................................. 16

Big Top USA, Inc. v. The Wittern Group, 183 F.R.D. 331, 338 (D. Mass. 1998) ............ 11

Cache La Poudre Foods, LLC v. Land O'Lakes, Inc., No. 04-cv-00329-WYD-CBS, 2007 U.S. Dist. LEXIS 15277 at *49, (D.Co. March 2, 2007) ........................... 16

In re Selected Somerworth Bank Cases, 148 F.R.D. 1, 4  (D. Me. 1993) .......................... 11

Quinby v. West LB AG, No. 04-cv-7406-WHP-HBP, 2006 U.S. Dist. LEXIS 64531 at *20-21 (S.D.N.Y. September 5, 2006) ......................................................... 15

R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11, 15 (1st Cir. 1991) ....................... 10

Sansworth v. City of Witchita, 239 F.R.D. 630, 635 (D.Kan. 2006) ................................. 16

Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) ........................ 15

**Rules**

Fed. R. Civ. P. 26(b)(2)(B) .............................................................................................. 15

Fed. R. Civ. P. 37(b)(2) ................................................................................................... 10

Defendants Pfizer Inc. and Warner-Lambert Company (together, "defendants") submit this memorandum of law in opposition to plaintiffs' motion to compel compliance with Discovery Order No. 7 and for sanctions.

### PRELIMINARY STATEMENT

Plaintiffs' motion is frivolous and not well-founded. Despite an extensive search, defendants have been unable to locate a copy of the website plaintiffs seek. Plaintiffs' motion is therefore moot, as defendants cannot produce something that does not exist. Defendants have been able to locate only a single back-up tape that *might* contain a version of a possible successor site to the website identified by plaintiffs in their motion, and that successor site *might* include the content (or some portion of the content) that existed on the identified website during the relevant timeframe. Accordingly, the real issue for this motion is whether defendants should be required to restore and produce responsive materials from this back-up tape to the extent they exist. The answer to this inquiry is no.

The Court has not ordered the restoration and production of archived or backup copies of websites, despite plaintiffs' attempt to turn the Court's casual reference to the fact that defendants apparently "have (or had)" a website into such an order. The issue of burden and accessibility of electronic material was never briefed by the parties nor addressed by the Court. The law relating to this issue, including the recently amended Rule 26(b)(2) of the Federal Rules of Civil Procedure, makes clear that a party need not provide discovery of electronically stored information that is not reasonably accessible. Information contained on back-up tapes is a classic example of inaccessible data, as courts have repeatedly recognized.

1

Although plaintiffs' motion is moot and misdirected, defendants wish to correct the record regarding plaintiffs' inaccurate accusations regarding defendants' conduct with respect to this dispute, including the baseless assertion that defendants failed to exercise reasonable diligence and failed to comply with a Court order. Fist and foremost, the deadline for production of the so-called internal Neurontin website has not yet run. Had plaintiffs' required production prior to the April 16, 2007 deadline, they should have asked the Court to set an earlier production date. Plaintiffs' motion also conveniently ignores the fact that defendants promptly produced documents in response to plaintiffs' request that were available in accessible format. Defendants also promptly provided information relating to other potentially-responsive materials as soon as it was learned.

Furthermore, plaintiffs now seize on a single intranet site and ask the Court to order production of that site as if it were the site they had been seeking all along. It is not. The site they identify in the motion is not the "internal website for Neurontin and its off-label uses" they previously requested. Nor did "sales representatives and / or detail representatives, have access to the website" as plaintiffs have suggested. Plaintiffs' last-minute focus on one website also ignores the fact that they previously identified a bewildering array of over 50 websites that defendants investigated at considerable time and expense. Contrary to plaintiffs' suggestion, it was defendants thorough and prompt inquiry into the various websites and references in documents, and timely conversations with plaintiffs regarding the results of that search, that led to a focus on the website at issue. Defendants have more than fulfilled their discovery obligations.

For the foregoing reasons and as set forth more fully below, defendants respectfully submit that the Court should deny plaintiffs' motion to compel compliance

with Discovery Order No. 7 as moot, deny plaintiffs' motion for sanctions, and enter an order that defendants need not restore any back-up tapes in response to plaintiffs' request for the website at issue.

## BACKGROUND

### Plaintiffs' November 27, 2006 Request

Plaintiffs provided defendants a description of the so-called "internal Neurontin website" for the first time on November 27, 2006, just three days before incorporating that description in the parties' November 30, 2006 Joint Report of Outstanding Disputes Regarding Document Production ("Joint Report") (Dkt #557).[1] Declaration of Deborah L. MacGregor dated April 10, 2007 ("MacGregor Decl.") ¶ 6. That description noted that plaintiffs sought "an internal website for Neurontin and its off-label uses" that defendants used "to organize relevant information relating to Neurontin, including journal articles, research reports, and internal reports." Joint Report at 16. Plaintiffs also noted that "employees of Defendants, including sales and/or detail representatives, have access to the website and the information contained in it." Id. Despite extensive efforts, no such website has been located, and even the site which plaintiffs are moving to compel does not match that description.

---

[1] Plaintiffs in an October 16, 2006 letter for the first time requested documents relating to an "internal Neurontin website," but plaintiffs did not provide any further description of what this was or what it contained. See Exhibit 1 to Plaintiffs' Motion to Compel Compliance With Discovery Order No. 7 and for Sanctions ("Pls.' Mem."). Moreover, plaintiffs' reference to "reiterating" their request for such a website on that date, Pls.' Mem. at 1, is misleading, as the October 16, 2006 letter was the first time plaintiffs ever raised such a request. Defendants accordingly responded to this request by noting that the parties had never met and conferred regarding such a website and that defendants were not sure what plaintiffs were seeking. MacGregor Decl. Ex. A (October 24, 2006 letter from Deborah MacGregor to Ronald Aranoff), at 4.

Furthermore, plaintiffs did not brief the question of whether defendants should be required to produce back-up tapes or archived copies of any internal website, nor did they even mention the issue in the substance of their section of the Joint Report. Instead, plaintiffs merely titled the category at issue as "Documents relating to the internal Neurontin website, including, but not limited to, all archived materials and all back-up copies." Id. at 2 and 14. Defendants' response, formulated of necessity in less than three days and without the benefit of any meet-and-confer sessions with plaintiffs regarding the precise nature of the item plaintiffs sought, also did not address the issue of producing archived materials or back-up copies. Defendants noted that they were unaware of the existence of the website to which plaintiffs referred, that plaintiffs should provide more information about the website they were seeking, and that if the Court was inclined to order the described website to be produced, defendants should be granted a reasonable period to investigate. Joint Report at 16-17.

On December 20, 2006, the Court ordered that an "internal Neurontin website, if it exists" shall be produced. Discovery Order 7 at 5-6. The Court was silent as to whether archives or back-up copies of any such website should be produced. The Court also did not provide a deadline for production of the described website. In the absence of other deadlines or agreements, the cut-off date for discovery in this litigation is April 15, 2007. Discovery Order 7 at 3.

After receiving the Court's order, defendants began a search for the website that plaintiffs had described in the Joint Report. Personnel in defendants' Information Technology group conducted a search for materials fitting this description. MacGregor Decl. ¶ 8. In addition, counsel for defendants inquired of certain key employees who

4

were involved with the marketing and sales of Neurontin whether an internal website fitting plaintiffs' description existed. MacGregor Decl. ¶ 7. In response to these inquiries, only Neurontin eRooms® were identified.[2] MacGregor Decl. ¶ 7. Defendants' investigation led to the location of certain Neurontin eRooms® that might be responsive in part to plaintiffs' request. Defendants also located a website called "http://gaba.pfizer.com." This turned out to be the intranet version of the Neurontin bibliography that defendants had produced to plaintiffs in September 2005. Defendants promptly produced the eRooms® and this website bibliography on March 15, 2007.

**Plaintiffs' March 21, 2007 Request**

On March 21, 2007, only two weeks before plaintiffs filed their motion to compel and for sanctions, plaintiffs sent a letter that for the first time specifically identified the URL http://neurontin.pfizer.com. See Pls.' Mem. Ex. 4 This letter also referenced PPG Online and seven other URLs, including http://gaba.pfizer.com, even though defendants had already produced the corresponding website to plaintiffs on March 15, 2007.

Plaintiffs' memorandum attempts to make it appear that they actually identified the website at issue in their motion almost a month earlier, on February 27, 2007, but that is not the case. In the February 27, 2007 letter, plaintiffs provided a litany of various references, including a host of external websites, a number of internal URLs bearing no resemblance to a Neurontin website, and a sampling of references apparently pulled from various documents defendants have produced to plaintiffs. Pls.' Mem. Ex. 2. This request was markedly different than what plaintiffs described in the Joint Report and

---

[2] eRoom® is a registered trademark for a collaborative, web-based data sharing product published by EMC.

5

what the Court ordered defendants to produce. At no time did plaintiffs serve an actual request for the production of these documents pursuant to the Federal Rules of Civil Procedure. In order to serve a new request for documents at this point of the litigation, plaintiffs would have needed leave of Court. See November 30, 2006 Order (Dkt #550), at 2. Plaintiffs never sought nor received such leave.

Rather than asking for an internal website dedicated specifically to Neurontin, plaintiffs thus reinvented their November 27, 2006 request into a request seeking the identification of every document containing the word Neurontin that was ever accessible via Pfizer's sprawling intranet. Specifically, plaintiffs requested that defendants "promptly provide [plaintiffs] with a URL or file path directory of *all content relating to Neurontin that has been posted on Pfizer servers* and was available, whether internally or externally, via a web-browser." Pls.' Mem. Ex. 2 (emphasis added). Plaintiffs' counsel also identified a list of over thirty URLs from the external Neurontin website. The external website is accessible to the general public through a standard Internet browser and is, by definition, not an internal website. Finally, plaintiffs provided a list of almost twenty references to various internal URLs and vague descriptions from documents, many of which on their face did not relate to Neurontin. Included among those items was a reference to "neurontin.pfizer.com, which at one point contained 'Most key Neurontin publications.'" Pls.' Mem. Ex. 2.

Accordingly, in defendants' March 5, 2007 response, defendants noted that the 50 websites and references from documents that plaintiffs identified in their letter were far beyond the scope of the internal Neurontin website plaintiffs had described in the Joint Submission. After plaintiffs sent their March 21, 2007 letter, which identified 10 internal

6

URLs, defendants determined that only http://neurontin.pfizer.com and PPGOnline were the only items even remotely relevant to plaintiffs' request in the Joint Report.

**Defendants' Search and the Meet and Confer Process**

Plaintiffs' motion is directed to a single internal website out of the over 50 URLs and other references they identified in their February and March correspondence. The focus on this website was made possible solely because defendants investigated the numerous items identified by plaintiffs and disclosed the results of the search during the course of several conversations in response to plaintiffs' March 21, 2007 letter. Throughout the course of plaintiffs' memorandum, plaintiffs distort those conversations and side-step the only real issue: whether defendants are required to produce inaccessible electronic media.

Notwithstanding the foregoing, plaintiffs also baselessly assert that defendants were insufficiently forthright or diligent in conducting their search. Pls.' Mem. at 5. Plaintiffs entirely ignore the fact that the website they are moving to compel does not fit the description of what plaintiffs originally requested for the first time in the Joint Report. This site is not "for Neurontin and its off-label uses," nor was it accessible by sales representatives. Id.; see MacGregor Decl. ¶ 12. Instead, the site was created as a means of sharing information about Neurontin with countries outside the United States. Declaration of Nathan Friedman dated April 10, 2007 ("Friedman Decl.") ¶ 3. Plaintiffs also ignore the fact that defendants specifically informed plaintiffs that defendants had inquired of key sales and marketing employees as to the existence of an internal Neurontin website, and those employees did not identify this site.

7

On March 29, April 2, and April 4, 2007, the parties held meet-and-confer sessions during which defendants shared the results of their investigation into the myriad URLs plaintiffs identified. Among other things, defendants explained that as a result of their inquiries defendants had learned that the vast majority of the items described in plaintiffs' letters bore no resemblance to what plaintiffs had requested. Defendants also informed plaintiffs that no accessible version of the website http://neurontin.pfizer.com existed. MacGregor Decl. ¶ 9. No readily available archives of this website had been located, but defendants explained that they were actively researching the issue, and were attempting to determine, *inter alia*, (a) whether any archives of the items existed; (b) the form any such archives took; and (c) whether there were backups or any other media containing the Neurontin information. MacGregor Decl. ¶ 9. Defendants also explained that, in an effort to work within the discovery motion time constraints, they were providing information to plaintiffs as quickly as they learned it and without waiting for final confirmation of the facts, allowing plaintiffs to learn of developments almost as soon as counsel for defendants did. MacGregor Decl. ¶ 10. Defendants noted that this research was a time-consuming process because the systems that are at issue no longer exist, and certain of the people who maintained and were responsible for these systems are no longer with the company. MacGregor Decl. ¶ 10. Finally, defendants explained that if they did locate an archived or back-up copy of the website, whether they would agree to produce information from such an archive would depend on whether the archive was reasonably accessible pursuant to the Federal Rules of Civil Procedure. MacGregor Decl. ¶ 10.

On the morning of April 5, 2007, plaintiffs informed defendants that they planned to move to compel defendants to produce the identified website by April 15th. Defendants pointed out that they still were investigating the facts, that they were not yet aware whether an archived or backup version of the Neurontin site even existed, and if such a version did exist, they did not know the format or accessibility of such a version. MacGregor Decl. ¶ 11. Accordingly, defendants noted that the motion was premature. Plaintiffs nevertheless filed a motion, not only to compel, but for sanctions.

**The Neurontin Site Plaintiffs Seek No Longer Exists in Accessible Form**

The Neurontin site plaintiffs have moved to compel is no longer available. There is no way to access this site today from defendants' intranet. Defendants also have not located copies of this site in archived versions or on back-up tapes, though defendants are continuing to search. Some portion of the content from this site, however, may have been moved to a different site, which is also not readily accessible. The only item defendants have identified related to this inquiry is a back-up tape that might contain a version of a possible successor site from on or about early 2005.

The Neurontin intranet site http://neurontin.pfizer.com was created on or about the spring of 2001. In January 2004, it appears that content from http://neurontin.pfizer.com was combined with the content from another intranet site and re-launched as http://a2d.pfizer.com on a server called MOPPPGPREGABPRD. Friedman Decl. ¶ 5. Defendants have located a March 2005 backup tape of the MOPPPGPREGABPRD server.[3] Friedman Decl. ¶ 7. It is defendants' belief that this

---

[3] Defendants have not located any other backup tapes or archived copies of the website plaintiffs are seeking. Defendants' policy regarding back-up tapes is that they are not used for long term data

9

back-up tape may contain the version of the http://a2d.pfizer.com site that existed on that server in January 2005. Friedman Decl. ¶ 7. Defendants have no way to establish for certain whether this later website is on the back-up tape, however, short of restoring that tape. Friedman Decl. ¶ 8. Defendants have not located any archived copies of the server except for the single backup tape discussed above.

## ARGUMENT

### I.  Plaintiffs' Motion for Sanctions Should Be Denied

The Court should deny plaintiffs' motion for sanctions because defendants have not violated an order of the Court and because plaintiffs have not been prejudiced in any way. Rule 37(b) of the Federal Rules of Civil Procedure provides that if a party "fails to obey an order to provide or permit discovery" the court "may make such orders in regard to the failure as are just." Fed. R. Civ. P. 37(b)(2). The Rule "clearly requires two things as conditions precedent to engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated, before the enumerated sanctions can be imposed." R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11, 15 (1st Cir. 1991). Only if these conditions both exist can courts move on to consider the appropriateness and extent of any sanction. The factors considered in that analysis include "(1) the willfullness or bad faith of the noncomplying party; (2) the prejudice to the opposing party; (3) whether the procedural history indicates 'protracted inaction or deliberate delay'; (4) the disregard of earlier warning of the consequences of the misconduct; and

---

storage; they are used solely for recovering business critical systems in the event of a physical or technical disaster involving a loss of business-critical data. Defendants' backup tape standard operating procedure calls for all tapes to be held for ninety days only before reuse. Accordingly, as a matter of policy these tapes are over-written on a regular and on-going basis. Declaration of Foster Gibbons dated April 10, 2007 ("Gibbons Decl.") ¶ 6.

10

(5) the availability of less draconian factors." Big Top USA, Inc. v. The Wittern Group, 183 F.R.D. 331, 338 (D. Mass. 1998) (citing In re Selected Somerworth Bank Cases, 148 F.R.D. 1, 4 (D. Me. 1993)).

In the instant case, defendants have not violated a Court order, so sanctions should not be considered in the first place. Defendants conducted a reasonable search in an attempt to locate a website that plaintiffs described in numerous shifting ways, and promptly produced the available materials that they located. The http://neurontin.pfizer.com site does not exist any longer, and therefore cannot be produced, and a potential successor to this site also does not exist in an accessible format. Defendants' refusal to restore and produce materials from a back-up tape that might contain a version of this successor site also does not violate a Court order. The Court never heard argument on the issue of back-up tapes and did not order defendants to produce information from such tapes.

The factors courts consider when they assess the extent of sanctions also demonstrate that they are inappropriate here. Most notably, plaintiffs have suffered no prejudice as a result of the website discovery process. Plaintiffs try to create the perception of prejudice by arguing that they were injured because the website had not been produced in advance of the filing of expert reports, the filing of their sur-reply on class certification, or the determination of depositions. Pls.' Mem. at 6. The truth is that plaintiffs had no right to receive this material in advance of the April 15, 2007 deadline for production. No interim production deadline was placed on the production of the Neurontin website, and its location and production was one item on a voluminous list of

11

discovery obligations defendants have been meeting. Accordingly, plaintiffs have not been prejudiced.[4]

## II. Defendants Have Complied With Discovery Order No. 7

Defendants have been asking plaintiffs since October 20, 2007 to identify what they seek with specificity, and now plaintiffs complain because defendants were unable to locate a website plaintiffs never specifically described. Indeed, http://neurontin.pfizer.com does not fit the vague description plaintiffs provided in the Joint Report, as it is not "for Neurontin and its off-label uses" and was not accessible by sales representatives. Plaintiffs have provided disparate and shifting descriptions of what they seek, even asserting at one point that they were seeking every document about Neurontin that ever existed on defendants' intranet site. See Pls.' Mem. Ex.2. In the face of this, defendants have complied with Discovery Order No. 7 by conducting a reasonable search for potentially responsive materials, and promptly producing certain materials that seemed arguably responsive to plaintiffs' imprecise request. In addition, defendants have located a back-up tape that may contain information from a potential successor site to http://neurontin.pfizer.com from on or about early 2005. While

---

[4] The other factors courts consider also demonstrate that sanctions are not appropriate. Defendants did not act willfully or in bad faith, and their "failure" to disclose the http://neurontin.pfizer.com website prior to plaintiffs' identification of the site was inadvertent. The procedural history does not demonstrate "protracted inaction or deliberate delay," as defendants produced the only arguably responsive materials they located well before the applicable deadline. Defendants did not disregard any earlier warnings about their conduct with respect to discovery, as there have been no such warnings. Defendants have consistently abided by this Court's orders and fulfilled their discovery obligations in this matter.

12

defendants do not believe such a back-up tape must be restored and produced, defendants disclosed its existence promptly upon learning of it. Plaintiffs never suggest otherwise.[5]

Plaintiffs have responded to defendants' efforts to share information rapidly through multiple meet-and-confer sessions by accusing defendants of dragging their feet and providing vague information. Pls.' Mem. at 5. Such charges are baseless, as is plaintiffs' suggestion that defendants should have located the documents if they had "conducted some targeted computerized searches." Id. at 5 n.4. Defendants have laid out above and in the attached Declarations the tortuous history of the http://neurontin.pfizer.com website. This history has had to be painstakingly uncovered. In the past three years, the structure of the Information Technology group has changed dramatically, a number of people who worked on or were responsible for the old systems are no longer at the company, and many old systems no longer exist. Gibbons Decl. ¶ 9. These hurdles combine to make the investigation defendants are conducting more challenging than plaintiffs wish to believe. In addition, the Neurontin internal website is only one of numerous discovery requests defendants have been working diligently to locate and produce. Many of these categories, unlike the website, had production deadlines earlier than April 15, 2007.

---

[5] Defendants have produced hundreds of thousands of pages of documents in the past nine months, and have expended enormous effort and resources in complying with their discovery obligations. Indeed, defendants have met every interim production deadline along the way, both those the Court ordered and those to which defendants voluntarily agreed, except in a few instances where defendants requested and received short extensions.

### III. The Court Did Not Order Defendants to Produce Versions of the Internal Neurontin Website From Back-up Tapes

The Court has not entertained briefing, heard argument, or ruled on whether defendants must produce iterations of an internal website that have been archived or stored on backup tapes. Indeed, plaintiffs did not address this issue until they filed their motion on April 5, 2007, and still have not provided any legal argument whatsoever supporting the position that the production of archives or back-up tapes is appropriate. Instead, they attempt to paper over their failure to brief this issue in the Joint Report, and to twist the plain words in the Court's discovery order to make them mean something that they clearly do not.

In Discovery Order 7, the Court noted that "an internal website, if it exists" is likely responsive and "accordingly *it* shall be produced." Discovery Order 7 at 6 (emphasis added). Nothing in the language of this order suggests that the Court had even considered, much less was ordering, the restoration and production of any archived or back-up copies of such a site. Plaintiffs disingenuously suggest that the Court's reference to the fact that plaintiffs believe defendants "have (or had)" an internal website represents a ruling on the question of the propriety of requiring the production of archived or backup tapes, regardless of the format in which such tapes might exist and the burden associated with restoring such tapes. Pls.' Mem. at 4 n.3. This is a remarkable suggestion, considering the prominence of questions relating to electronic discovery today.

Defendants now have located a backup tape from on or about March 2005 that might contain a version of the successor site to http://neurontin.pfizer.com that existed as of approximately January 2005. Defendants have disclosed the existence of this backup

14

tape, but object to restoring and producing materials from this tape. This objection does not violate Discovery Order No. 7, which at best is silent as to the production of back-up copies and could reasonably be read as denying plaintiffs' request for such information by failing to explicitly grant the request.

### IV. The Court Should Not Now Order Defendants to Restore and Produce Materials from the Backup Tape

Once again, plaintiffs have submitted a filing without a single citation to law, as plaintiffs have chosen to rely on their incorrect assertion that they are somehow already entitled to receive materials from back-up tapes and archives. Pursuant to the Federal Rules of Civil Procedure, however, plaintiffs are not entitled to receive this material. Alternatively, if the Court believes that it is appropriate to restore the back-up tape, plaintiffs should bear the costs of this restoration.

Under the recently-amended Federal Rules of Civil Procedure, a responding party is not obligated to produce electronic data that is not reasonably accessible. Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."). The burden or expense of producing electronic data is undue when it outweighs the benefits of production, and this question often turns on whether the data is stored in an accessible or inaccessible format. See Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309, 318 (S.D.N.Y. 2003). Two examples of inaccessible data are backup tapes and erased, fragmented, or damaged data, because such data "is not readily usable" and "must be restored" or reconstructed through an elaborate and costly process before such data becomes usable. Id. at 32. See also Quinby v. West LB AG, No. 04-cv-7406-WHP-

15

HBP, 2006 U.S. Dist. LEXIS 64531 at *20-21 (S.D.N.Y. September 5, 2006) ("[D]ata that is 'inaccessible' is not readily usable and must be restored to an accessible state before the data is usable."); Cache La Poudre Foods, LLC v. Land O'Lakes, Inc., No. 04-cv-00329-WYD-CBS, 2007 U.S. Dist. LEXIS 15277 at *49, (D.Co. March 2, 2007) (noting that information stored on backup tapes may constitute electronic data not reasonably accessible under the newly amended Rule 26); Sansworth v. City of Witchita, 239 F.R.D. 630, 635 (D.Kan. 2006) (same).

The information plaintiffs seek would require defendants to restore a back-up tape, and the material accordingly is not reasonably accessible because of undue burden and cost. The restoration of backup tapes often requires the expertise of an outside vendor and the use of programmers. Gibbons Decl. ¶8; Friedman Decl. ¶ 9. Moreover, while defendants believe it likely that the back-up tape will contain a 2005 version of a possible successor site to http://neurontin.pfizer.com, there is no way to determine this definitely without restoring the tape. Because of these factors, the data is "not reasonably accessible because of undue burden and cost" and need not be produced pursuant to Rule 26. See Ameriwood Indus. Inc. v. Liberman, No. 4:06CV524-DJS, 2006 U.S. Dist. LEXIS 93380 at *11-12 (E.D.Mo. December 27, 2006) (finding the requested data not reasonably accessible given the costs in restoring erased data and converting it into a usable format).

Once the responding party establishes that the requested data is not reasonably accessible, a court should order the production of such data only if the requesting party shows good cause for such production. Advisory Committee Notes to Fed. R. Civ. P. 26(b)(2). Plaintiffs cannot do so here. The material that resided on the internal

16

Neurontin website was not unique to the website. Instead, materials that already existed were simply posted on the website so they could be accessed. MacGregor Decl. ¶ 13. Because defendants are producing responsive materials from the custodial files of the relevant custodians in this litigation, it is likely that the vast majority, if not all, of the responsive materials that were posted on this website will be produced from custodial files. Accordingly, good cause does not exist to require defendants to incur the burden of restoring the backup tape.[6]

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny the plaintiffs' motion to compel and for sanctions, and order that defendants need not restore and produce material from back-up tapes.

Dated: April 10, 2007

                                DAVIS POLK & WARDWELL

                                By:   /s/ James P. Rouhandeh
                                        James P. Rouhandeh
                                        Deborah L. MacGregor

                                450 Lexington Avenue
                                New York, New York 10017
                                (212) 450-4000

                                       - and -

---

[6] In the alternative, if the defendants are required to produce the inaccessible data, the plaintiffs should bear the costs of restoration. See Advisory Committee's Notes to Fed. R. Civ. P. 26(b)(2) (noting that even if the requesting party establishes good cause for the production of not reasonably accessible electronic data, the court may condition production on the requesting party's payment of "part or all of the reasonable costs of obtaining information from sources that are not reasonably accessible.").

HARE & CHAFFIN

By:  /s/ David B. Chaffin
     David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on April 10, 2007.

/s/ David B. Chaffin