UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------x
In re:  NEURONTIN MARKETING, SALES
PRACTICES, AND PRODUCTS LIABILITY
LITIGATION                                              : MDL Docket No. 1629
------------------------------------------------x
                                                        : Master File No. 04-10981
THIS DOCUMENT RELATES TO:
                                                        : Judge Patti B. Saris
------------------------------------------------x
ALL SALES AND MARKETING ACTIONS                         : Magistrate Judge Leo T.
                                                          Sorokin
------------------------------------------------x

**DECLARATION OF NATHAN FRIEDMAN IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH
DISCOVERY ORDER NO. 7 AND FOR SANCTIONS**

NATHAN FRIEDMAN declares upon penalty of perjury in accordance with 28 U.S.C. § 1746 as follows:

1. I am a Senior Manager in Business Technology for Pfizer. I provided business technology support for the Neurontin U.S. marketing team from 2001 until around 2003, and the Neurontin Worldwide / Major Markets team from 2001 until it was disbanded.

2. This declaration reflects my best knowledge, information and belief relating to the matters referred to herein.

3. I am familiar with the fact that an intranet website (http://neurontin.pfizer.com) was built to share certain Neurontin documents with countries outside the United States, and that this website is no longer running. I am not aware of the existence of any archives or backup

copies of that site. To the best of my recollection, this intranet website was built on a platform called PPG Online in or about 2001.

4. PPG Online was a marketing communication platform and document repository that several brand teams used to post information for dissemination, particularly to Major Markets (ex-US) brand teams. Technically it was composed of two parts: a database where the documents resided, and a controlled-access website front end through which authorized users could access materials by product and by category. Typing the web address http://neurontin.pfizer.com into his or her browser redirected the user to the PPGOnline platform, which housed the actual Neurontin documents. In other words, the Neurontin site used PPG Online's database to store documents, but used its own website front end for users to interact with and download the documents. There were similar sites on PPG Online for other products. I was involved only with the Neurontin portion of the PPG Online platform.

5. In or about January 2004, the content or a portion of the content of http://neurontin.pfizer.com was combined with content from another intranet site and re-launched as http://a2d.pfizer.com on a server called MOPPPGPREGABPRD. At some point after that happened, PPG Online was decommissioned.

6. In or about January 2005, http://a2d.pfizer.com was moved off of the MOPPPGPREGABPRD server and onto yet another platform (the GPI platform) and renamed. In or about April 2005, the MOPPPGPREGABPRD was itself decommissioned.

7. I have recently learned that a backup tape, believed to have been made of the MOPPPGPREGABPRD server from in or about March 2005, exists. It is possible that this back-up tape contains a version of the http://a2d.pfizer.com site that resided on that server in January 2005 prior to its move to the GPI server.

2

8.      I am not aware of any way to determine the content of the back-up tape except by restoring it and viewing the files themselves. Even if the MOPPPGPREGABPRD server backup tape were to be restored and any data files stored on the tape rendered more accessible, the effort still might not result in the retrieval of the website as it existed or, indeed, the retrieval of any relevant information.

9.      It *may* be technically possible – but probably very difficult – to recreate a historic website application if it exists on this backup tape by recreating its appearance, function and content from the old product site. It is likely, however, that the restoration of the appearance and function of the website alone would require extensive programming work by a web developer to assemble the various .gif and .txt and .xml files on the backup tape into an intelligible whole.

10.     As for retrieving content from the former website, there are at least two possibilities. One possibility is that relevant documents posted on the old website reside on the tape, and could be accessed. The other possibility is that relevant documents do not reside on the tape because the website actually contained only links to some location or repository that did not exist on this server but where the documents actually resided. Even if relevant documents from the website are located on the server, it may be impossible to determine whether that content was accessible through the website or to determine whether any such material located is the totality of what was accessible through the website at the time it was archived.

Dated: New York, New York
       April 10, 2007

                                                By:   /s/ Nathan Friedman
                                                      Nathan Friedman

3

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on April 10, 2007.

/s/David B. Chaffin