UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
:
In re: NEURONTIN MARKETING, SALES :
PRACTICES, AND PRODUCTS LIABILITY :
LITIGATION : MDL Docket No. 1629
------------------------------------------------------------x
: Master File No. 04-10981
THIS DOCUMENT RELATES TO: :
: Judge Patti B. Saris
------------------------------------------------------------x
ALL SALES AND MARKETING ACTIONS : Magistrate Judge Leo T.
: Sorokin
:
:
:
:
------------------------------------------------------------x

## DECLARATION OF FOSTER GIBBONS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH DISCOVERY ORDER NO. 7 AND FOR SANCTIONS

FOSTER GIBBONS declares upon penalty of perjury in accordance with 28 U.S.C. § 1746 as follows:

1.   I am currently Corporate Counsel for Pfizer Inc ("Pfizer") and am a project attorney in the Legal Division's In-House Discovery group. As part of my responsibilities, I manage and coordinate internal discovery efforts to assist our outside counsel, as well as consult with colleagues at Pfizer on issues relating to data retention policies. I have been responsible for coordinating in-house discovery efforts for this litigation since mid-2006.

2.   The information contained in this declaration is based on my general knowledge of Pfizer's business operations, and on information gathered in the course of inquiries regarding the subject matter made on behalf of our outside counsel.

3.      As a general proposition, and during the period in question, technology platforms such as those described in Nathan Friedman's accompanying April 10, 2007 declaration, including PPGOnline, product-group websites and related document repositories and e-rooms, were "owned" and managed by autonomous Information Technology ("IT") groups ("Business Technology," or "BT" groups) that functioned within each business unit. The BT groups were responsible for determining whether to continue using a particular technology or server or retiring them due to operational or technical obsolescence. The business units themselves decided which technology solutions they needed and wanted to fund.

4.      I am informed that both the PPGOnline platform and a server in Morris Plains identified as MOPPPGPREGABPRD have each been retired from service or decommissioned.

5.      Based on my knowledge of Pfizer's IT / BT practices from the relevant time period, once servers such as MOPPPGPREGABPRD were decommissioned, the BT groups responsible for a server would not, in the usual course, have maintained an archive copy of all data previously housed on the retired server. Instead, data that was deemed by the business unit to be required for ongoing business purposes would have been migrated to another "live" system and all other data – deemed past its useful life -- would have been deleted.

6.      Pfizer creates backup tapes of our IT systems for disaster recovery purposes only. Pfizer's policy with respect to back-up tapes is that they are not used for long term data storage; they are intended to be used solely for recovering business critical systems in the event of a physical or technical disaster involving a loss of business-critical data. Pfizer's backup tape standard operating procedure calls for all tapes to be held for ninety (90) days only before reuse. Accordingly, as a matter of policy these tapes are over-written on a regular and on-going basis.

7.  In certain circumstances, however, one or more back-up tapes dating from well beyond the usual retention period may have been retained in storage. We have been able to locate a tape that we believe was created to back-up data on MOPPPGPREGABPRD just before that server was decommissioned in or about April or May 2005.

8.  As a matter of business policy, Pfizer does not restore backup tapes except in the case of disaster recovery, or pursuant to a court order or government subpoena. The cost of restoring data housed on a backup tape varies depending upon the format of the tape, whether equipment that is capable of reading the tape is still in existence, the age and condition of the tape itself and the backup software used to create the tape. Tape hardware and software formats change often. Older hardware and software platforms and applications are not maintained; only the latest technology is used to process backups within the ninety day window.

9.  In the past three years, the structure and membership of the Information Technology groups at Pfizer has changed dramatically. A number of people who worked on or were responsible for older systems and platforms and who were stationed within the independent business units are no longer with the company. Due to the IT consolidation and changes within the businesses, many older systems and platforms no longer exist. All of these factors contribute to the difficulty in assembling information about retired technologies.

Dated: New York, New York
April 10, 2007

/s/ Foster Gibbons
Foster Gibbons

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on April 10, 2007.

/s/David B. Chaffin

3