UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:  NEURONTIN MARKETING, SALES
        PRACTICES, AND PRODUCTS LIABILITY
        LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALL SALES AND MARKETING ACTIONS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

## DECLARATION OF DEBORAH L. MACGREGOR IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH DISCOVERY ORDER NO. 7 AND FOR SANCTIONS

DEBORAH L. MACGREGOR declares upon penalty of perjury in accordance with 28 U.S.C. § 1746 as follows:

1.    I am an attorney associated with the law firm Davis Polk & Wardwell, counsel for Defendants Pfizer Inc. and Warner-Lambert Company in this action.

2.    I submit this declaration in support of Defendants' Opposition to Plaintiffs' Motion to Compel Compliance with Discovery Order No. 7 and For Sanctions, filed April 10, 2007.

3.    Except where indicated, I have personal knowledge of the matters stated below and would testify to the same.

4.    I have been actively involved in responding to plaintiffs' requests for discovery from defendants in the MDL. I personally participated in three meet-and-

1

confer sessions regarding plaintiffs' request for the so-called Neurontin internal website. The first of these occurred telephonically on March 29, 2007. The second of these occurred telephonically on April 2, 2007. The third of these occurred telephonically on April 4, 2007.

5.      At each of the meet-and-confer sessions, counsel for defendants conferred in good faith in an attempt to narrow the issues in dispute.

6.      Plaintiffs provided defendants a description of the so-called "internal Neurontin website" for the first time in an email on November 27, 2006.

7.      Defendants inquired of certain key employees who were involved with the marketing and sales of Neurontin whether they were aware of the existence of an internal Neurontin website fitting plaintiffs' description. The only material identified in response to this inquiry was a Neurontin eRoom.

8.      Personnel for defendants' Information Technology Group also conducted a search in an attempt to locate materials responsive to plaintiffs' request.

9.      In the course of the three meet-and-confer sessions, defendants explained that as a result of defendants' inquiries we had learned that the vast majority of the items described in plaintiffs' February 27, 2007 and March 21, 2007 letters bore no resemblance to the website plaintiffs had requested. Defendants also informed plaintiffs that it appeared that no accessible version of http://neurontin.pfizer.com or PPGOnline existed, and no readily available archives of the materials had been located. Defendants also explained that we were actively researching the issue, and were attempting to determine, *inter alia*, (a) whether any archives of the items existed; (b) the form any such

archives took; and (c) whether there were backups or any other media containing the Neurontin information.

10.    In the meet and confer sessions, defendants also told counsel for plaintiffs that defendants were providing information to plaintiffs as quickly as they learned it and without waiting for final confirmation of the facts. Defendants further explained that the research was a time-consuming process because the systems that are at issue no longer exist, and certain of the people who maintained and were responsible for these systems are no longer with the company. Defendants also noted that if defendants did locate an archived or back-up copy of the website, whether they would agree to produce materials from such an archive would depend on whether the archive was accessible information pursuant to the Federal Rules of Civil Procedure.

11.    On the morning of April 5, 2007, plaintiffs informed defendants that they planned to move to compel defendants to produce the website by April 15th. Defendants pointed out that they still were investigating the facts, that they were not yet aware as to whether an archived or backup version of the Neurontin site even existed, and if such a version did exist, they did not know the format or accessibility of such a version, and that the motion was premature.

12.    My understanding is that the site described in plaintiffs' motion is not "for Neurontin and its off-label uses," nor was it accessible by sales representatives.

13.    My understanding is that the material that resided on the internal Neurontin website generally was not unique to the website. Instead, materials that already existed were simply posted on the website, or made accessible through links from the website, so they could be viewed by those utilizing the site.

3

14.    Attached as Exhibit A is a true and correct copy of an October 24, 2006 letter from Deborah MacGregor to Ronald Aranoff.

Dated: New York, New York
       April 10, 2007

                           /s/ Deborah L. MacGregor
                             Deborah L. MacGregor

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on April 10, 2007.

/s/David Chaffin