UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------- x
In re: NEURONTIN MARKETING,
SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION
---------------------------------------------------------------- x

THIS DOCUMENT RELATES TO:

ALL ACTIONS

---------------------------------------------------------------- x

: MDL Docket No. 1629
:
: Master File No. 04-10981
:
: Judge Patti B. Saris
:
: Magistrate Judge Leo T.
: Sorokin

# REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR ENTRY OF CASE MANAGEMENT ORDER NO. 5, RELATING TO DEPOSITIONS

Defendants Pfizer Inc. and Warner-Lambert Company ("Defendants") submit this reply memorandum in further support of their motion for entry of Case Management Order No. 5 ("CMO5"), relating to depositions.

## INTRODUCTION

Plaintiffs accuse Defendants of rushing to file the motion for entry of CMO5, assuring the Court that they too are interested in a case management order governing depositions. One need look no further than product liability Plaintiffs' request for dozens of depositions and Plaintiffs' own responsive papers to see both that circumstances justified Defendants' filing and, more important, that the relief Defendants request is needed.

Defendants filed this motion because, with intensive deposition discovery about to begin, Plaintiffs waited nearly one month to respond to Defendants' proposed deposition guidelines,[1] and then indicated, twice, that five critical aspects of the proposed guidelines were unacceptable. Plaintiffs' opposition papers confirm this sequence and that the parties were at loggerheads; and they confirm that Plaintiffs were and still are intent on pulling the teeth from the case management order that Defendants have proposed:

- Plaintiffs continue to object to **any** limit on the number of depositions of Defendants' employees and former employees.

- Plaintiffs continue, contrary to clear authority, to seek an arrangement that would force Defendants to force or attempt to force employees (and perhaps former employees) who live and work in remote locations to travel to New York City or Boston to have their depositions taken.

- Plaintiffs continue to want to be able to have at least five different lawyers conduct the examination of a single deponent (while limiting Defendants to one examiner).

- Plaintiffs continue to resist any attempts to establish a logical sequence for the examinations of all deponents.

- Plaintiffs continue to oppose a mutual requirement that an attorney who has noticed a deposition provide anticipated exhibits in advance of the deposition.

This motion was filed because it had to be. Plaintiffs were not going to agree to a set of comprehensive protocols for conducting depositions, and without Defendants' proposed CMO5 in place, the upcoming wave of depositions promises to become a tsunami. Plaintiffs' vague assurances will not suffice.

---

[1] As the Court may recall, Defendants' counsel mentioned during the March 13 conference that the proposed guidelines had been provided to Plaintiffs and that Defendants were expecting Plaintiffs' input on them.

Plaintiffs also say that the case management order that Defendants have proposed is one-sided. One need look no further than the latest draft of proposed CMO5 (Exhibit A hereto) to see that this is not so. Many of Plaintiffs' suggestions have been adopted. Provisions that can and should be mutual or reciprocal are just that.

What Plaintiffs do not and cannot say is that proposed CMO5 is unprecedented. Numerous courts in similar cases have adopted case management orders just like CMO5. It made sense in those cases, and it makes sense in this one.

## ARGUMENT

## CMO5 SHOULD BE ENTERED

### A.     Limit On Number Of Depositions (Section II.B.)[2]

Plaintiffs do not deny that, if left to their own devices, they would attempt to depose dozens and dozens of Defendants' employees and former employees. Nor do they provide any inkling of even a possible ceiling on the number of those depositions. They simply say that they should not be limited and ask the Court and Defendants to trust them not to abuse the process. The Federal Rules of Civil Procedure, however, embody an explicit presumption that numerical limits on depositions are appropriate and that parties should not be left to determine on their own how many depositions they may take. This presumption is particularly important in cases such this one, as the Manual for Complex Litigation explains:

---

[2] Plaintiffs complain that the 20-deposition limit is unworkable in part because it includes Defendants' employees and third parties. It was not Defendants' intent that the limit include third parties, as Defendants memorandum indicates. Defendants agree that the limit should not cover third parties. Defendants have revised their proposed CMO5 to clarify this point and to reflect certain helpful suggestions by Plaintiffs. Attached hereto as Exhibit A is Defendants' revised version of proposed CMO5. Attached hereto as Exhibit B is a redlined version of Defendants' revised version of proposed CMO5.

3

> Depositions are often overused and conducted inefficiently, and thus tend to be the most costly and time-consuming activity in complex litigation. The judge should manage the litigation so as to avoid unnecessary depositions, limit the number and length of those that are taken, and ensure that the process of taking depositions is as fair and efficient as possible.

Manual for Complex Litigation, Fourth § 11.45.

Nevertheless, before this motion was filed, product liability Plaintiffs alone listed, on an **initial** basis, 56 deponents. And Plaintiffs' papers indicate that they have yet to conduct the witness-identification exercise that, as Defendants' opening memorandum demonstrated, they are required by the Federal Rules to conduct. Memorandum in Support of Defendants' Motion for Entry of Case Management Order No. 5, Relating to Depositions ("Defendants' Memo") (Docket # 716) at 5-6.

Plaintiffs say that they cannot say or even guess how many depositions they need to conduct because Defendants are still in the process of producing documents. What they neglect to mention is that as of February 16, 2007, Defendants had produced nearly 90% of all of the documents that will be produced by Defendants.[3]

Plaintiffs also deny that it is significant that discovery was conducted and completed in Franklin well before these proceedings began, pointing out that they deposed no doctors in Franklin. This argument misses the point entirely. The point is that Plaintiffs have had the hundreds of thousands of documents from Franklin since well before these proceedings began in 2004, and they have had, therefore, years to compile a preliminary list of deponents and to gauge

---

[3] As the Court may recall, Plaintiffs urged the Court to set a February 1 deadline for Defendants' production of documents, indicating that this would enable them to meet the current discovery deadline and thus implicitly indicating that they would have their deposition witnesses identified soon after February 1. By a mere 15 days after this proposed deadline, Plaintiffs had nearly 90% of Defendants' documents. Curiously, Plaintiffs now, two months later, profess an inability to identify the persons they wish to depose.

4

their genuine needs for others.[4] The suggestion that they cannot begin to identify potential deponents until the last document is received is obviously absurd.

The sales and marketing Plaintiffs argue that the 20-deposition limit is insufficient, pointing to the "example" of the 450 depositions conducted in In re Pharmaceutical Industry Average Wholesale Price Litigation, MDL No. 1456 ("AWP"), while assuring the Court that 450 depositions is not "a guide for what is appropriate here."[5] Sales and Marketing Plaintiffs' Response to Defendants' Motion for Entry of Case Management Order No. 5, Relating to Depositions ("Sales and Marketing Opp.") at 3 (Docket No. 722). They neglect to mention, however, that there were 42 defendants in AWP. AWP, 230 F.R.D. 61, 65 (D. Mass. 2005). Thus, in AWP, on average, no more than 11, and probably far fewer, depositions per defendant were conducted. Thus, if AWP teaches anything, it is that no more than ten depositions per defendant should be permitted here.

The solution to Defendants' concern, sales and marketing Plaintiffs say, is motion practice. Under their approach, they would have free rein to notice as many depositions as they wish, and Defendants, if they believed a deposition would be duplicative or wasteful, could ask Plaintiffs not to conduct the deposition and, if that were to fail, move for a protective order. This approach turns the presumption in Rule 30(a)(2) – that a party wishing to take more than ten depositons "must obtain leave of court" – and the policies the rule reflects on their head and is,

---

[4] The sales and marketing plaintiffs mention that none of the "dozens of physicians who were paid to fly around the country to make flattering statements about Neurontin" were deposed in Franklin, arguing that the 20-deposition limit is insufficient because these physicians must be deposed as well. As noted above, Defendants agree that the limit should not apply to third parties. Plaintiffs should be free to depose as many of these physicians as they wish.

[5] Again, Plaintiffs have not provided any indication as to the maximum number of depositions of Defendants' employees and former employees they would take if unchecked, and they claim that they cannot do so.

for practical reasons as well, a non-starter. It is highly unlikely that Plaintiffs would ever voluntarily decline to proceed with a deposition. Thus, multiple motions for protective orders would result, slowing the overall discovery process, driving up party costs, and consuming judicial resources. Moreover, this approach would never work under the current schedule: There is insufficient time between now and the discovery cut-off to litigate disputes concerning individual depositions, particularly depositions noticed relatively late in the game.

The product liability plaintiffs make much of the number of individuals identified in Defendants' Rule 26 initial disclosures. But they incorrectly assume that each of the identified individuals has different relevant information. They ignore that in the initial disclosures, the individuals were grouped by areas of knowledge/responsibility, which clearly indicated overlapping, if not identical, knowledge. And the product liability Plaintiffs incorrectly suggest that just because some individual might have some relevant knowledge, he or she should be deposed because there is no other mechanism for determining what the individual knows. Again, product liability Plaintiffs should be determining, based on the documents and other available information, the employees and former employees who have a substantial amount of information relevant to their claims; their scatter-shot approach based on the initial disclosures is no way to make the requisite determination of the identity of necessary deponents.[6] Further, product

---

[6] Product liability Plaintiffs express a concern about witness availability, their argument being, apparently, that they have to seek the deposition of virtually everyone because some may be unavailable. There are multiple flaws in this argument. First, it reflects a backwards approach: Plaintiffs first should, and must, identify the important deponents based on all available information, not start with the initial disclosures and begin fishing. Second, the concern is easily remedied – in fact, a simple telephone call might do the trick. Third, if a witness is unavailable and cannot be deposed, it would not count against the 20-deposition limit; the concern about availability has, in fact, nothing to do with whether a deposition limit should be imposed.

Product liability Plaintiffs also argue that they should not be limited because they have identified numerous subject matters as to which they must conduct deposition discovery. The argument, to the extent it can be followed, (...continued)

6

liability Plaintiffs' suggestion that there is no mechanism other than a deposition to determine what a witness knows is simply incorrect.

The product liability Plaintiffs also suggest that the deposition limit Defendants propose is unprecedented.[7] They are in error. For example, in In re: Guidant Implantable Defibrilators Products Liability Litigation, United States District Judge Donovan W. Frank issued deposition guidelines that limited the plaintiffs "at this time to twenty (20) depositions of defendants' present and former employees and third-party witnesses." MDL No. 05-1708 (DWF/AJB), Deposition Guidelines at 3 (D. Minn., Jan. 6, 2006) (Exhibit C hereto). And in In re Wireless Telephone Services Antitrust Litigation, United States District Judge Denise L. Cote limited the plaintiffs to six depositions per defendant. Case No. 02 Civ. 2637 (DLC) (S.D.N.Y.), Transcript of Proceedings at 24 (Exhibit D hereto).[8]

Product liability Plaintiffs insist that if Plaintiffs are to be held to a limit, Defendants should be as well. This is the first Defendants have heard this proposal, which is flawed. There are at most two defendants here. There are hundreds of plaintiffs. Plaintiffs can fully explore

---

holds no water. The Court will notice that some of the areas they identify would appear to have no relationship to the claims product liability Plaintiffs have asserted. Product liability Plaintiffs' claims, particularly now that their fraud claims have been dismissed, raise relatively few issues. They do not need to depose a witness from every nook and cranny of Defendants' operations.

[7] At the same time, they acknowledge that two courts have limited plaintiffs to five depositions of Pfizer entities per month. Needless to say, this approach would be acceptable to Defendants under the current schedule.

[8] Product liability Plaintiffs also seem to have forgotten that they told this Court during the June 15, 2006 status conference that their intention at that time was to depose between 20 and 25 people. (Ex. E hereto at 79-80.) (Notably, sales and marketing Plaintiffs discuss this conference and append excerpts from the transcript of it to their opposition papers, but product liability Plaintiffs do not.)

their liability case through twenty depositions of Defendants' current and former employees; Defendants cannot defend against the hundreds of cases they face with a similar limit on them.[9]

At bottom, Plaintiffs want license to disregard the Federal Rules and to depose just as many current and former employees of Defendants as they see fit, with the only "restriction" being their assurance that they will not go too far. As the product liability Plaintiffs' initial designation demonstrates, that assurance has little practical significance. Depositions are expensive, disruptive, and, when not targeted, wasteful. A limit is required. A limit will not prejudice Plaintiffs. If they genuinely need more than 20 depositions, CMO5 enables them to obtain them upon a showing of good cause. In contrast, if there were no limit, Defendants would be severely prejudiced. Were Plaintiffs to have their way, dozens of valuable employees would be taken from their duties, costs would increase substantially, disputes would arise, and motion practice would result, and all because Plaintiffs have failed to fulfill their obligation to identify the persons they genuinely need to depose.

## B.    Location Of Depositions (Section III)

Plaintiffs' proposal with respect to the location of depositions is contrary to law. Under their approach, Defendants would be required, except under the narrowest of circumstances, to make all employees (and perhaps former employees) available for deposition in New York City or Boston, irrespective of status and in the absence of any showing by Plaintiffs' as to the employees' status. The law does not require this (even assuming it could be done):

> Under Rule 30(b)(1) of the Federal Rules of Civil Procedure, a specific officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition. A corporate employee or agent who

---

[9] Defendants do not intend to conduct more than 20 depositions in any one MDL product liability case.

> does not qualify as an officer, director, or managing agent is not subject to deposition by notice. . . . Such an employee is treated as any other non-party witness, and must be subpoenaed pursuant to Rule 45 of the Federal Rules of Civil Procedure; or, if the witness is overseas, the procedures of the Hague Convention or other applicable treaty must be utilized.
>
> * * * *
>
> Finally, although the examining party bears the burden of establishing the status of the witness, . . . the exact nature of this burden is not perfectly clear . . . . Thus, the examining party satisfies its burden when it produces "enough evidence to show that there is at least a close question whether the proposed deponent is a managing agent."

Dubai Islamic Bank v. Citibank, N.A., 2002 WL 1159699 *2 (S.D.N.Y. May 31, 2002) (citation to numerous cited cases and quoted case omitted); see also cases cited in Defendants' Memo at 6-7; Reed Paper Co. v. The Procter & Gamble Distributing Co., 144 F.R.D. 2 (D. Me. 1992) (criticizing case on which Plaintiffs rely) (depositions of employees who are not managing agents not admissible pursuant to Rule 32(a)(2)).[10]

The product liability Plaintiffs appear to suggest that there is room in the case law for the Court to deem all of Defendants' employees and former employees managing agents subject to deposition pursuant to Rule 30. Not only do they misread the law, see cases cited supra, but they fail to make the necessary evidentiary showing as to status that even their reading requires. They have not come forward with any evidence that anyone on their list of 56 is a managing agent.

Plaintiffs claim that their proposal merely reflects the sentiments expressed by the Court on June 15. But the Court expressed two things that day, neither being that Defendants must, by

---

[10] The analysis under Reed Paper points up the limited utility of employee depositions under Rule 32(a)(2) and the danger of blurring the distinctions between managing agents and non-managing agents. One risk inherent in Plaintiffs' proposal is that this distinction would be blurred, opening the door to arguments that certain depositions that otherwise would not be admissible under Rule 32(a)(2) are so admissible. Defendants reserve all rights under Rule 32(a)(2) with respect to any deposition in these proceedings.

9

law, produce all employees in New York City or Boston. First, the Court urged cooperation, practicality, and efficiency. (Exhibit E hereto at 65.) Defendants are honoring the Court's wish and will continue to do so. Defendants initiated the recent efforts to reach agreement on a case management order governing the depositions, the key purposes of which include practicality and efficiency. Second, the Court did not address and resolve the controlling legal issue. (Exhibit E hereto at 65 ("**Putting aside what the rule says,** it would seem that . . .").) The Court did not say that it could and would brush aside Rules 30 and 45 and precedent under them. Further, Discovery Order No. 2, which was issued after the June 15 conference, provides: "Counsel shall then, **paying heed both to the rules governing the location of depositions** and practical scheduling considerations, resolve the timing and location of depositions." Discovery Order No. 2 at 8-9 (Docket # 372).

Plaintiffs suggest that their approach would be more efficient and convenient. It would be more convenient for Plaintiffs' counsel. But this is, after all, their job, and nothing in the rules or the case law entitles them to special conveniences not offered to other litigants. It would **not** be more efficient and convenient for the persons whose interest must be of paramount concern – the employees. Sitting for depositions is not their job. The employees are not parties to these proceedings. They stand to gain nothing from these proceedings. They stand to lose a not insubstantial amount of time at work if forced to travel for their depositions. They should not be required, and the law does not permit them to be required, to uproot themselves for days submit to a deposition in New York City or Boston. Insofar as former employees are concerned, Plaintiffs' proposal simply will not work: Defendants exercise no control over former employees, even those whom Defendants' counsel may represent in connection with their depositions.

### C. Selection Of Attorneys To Conduct Depositions (Section IV.A.)

Product liability Plaintiffs' opposition is silent on the provisions of proposed CMO5 that requires that one attorney shall be designated as the principal examiner for each of the two camps of Plaintiffs, that these principal examiners shall limit their examinations to issues relating to their respective claims, and that no redundant or repetitive questioning shall be permitted. Defendants would like to believe that this indicates general agreement with these provisions. Sales and marketing Plaintiffs oppose these provisions overtly in one respect and covertly in another.

Sales and marketing Plaintiffs propose that two lawyers for the product liability Plaintiffs, two lawyers for the sales and marketing Plaintiffs, and one lawyer for the non-class sales and marketing Plaintiffs be permitted to depose each deponent. They cite no authority for this proposal (or, with the exception of the unavailing citation to AWP, for any of their other proposals). And they do not dispute that the one-examiner-per-camp approach has been adopted by many other courts in similar matters. See Defendants' Memo at 8.

Sales and marketing Plaintiffs' approach would undercut the purpose behind the provision requiring a single examiner for each of the two camps. There would be as many as four transitions from lawyer to lawyer under their approach, and the transitions inevitably would result in lost time and would increase the risk of repetitive and redundant questioning. More important, under Plaintiffs' approach, witnesses would still have to run a gauntlet of examiners. Witnesses should not be subjected to this. As is required in most trials, each camp should assign a single examiner.

Defendants included in proposed CMO5 a prohibition on repetitive and redundant questioning. Sales and marketing Plaintiffs quietly deleted the term "redundant." This

11

seemingly insignificant modification would gut the prohibition: A bar on only repetition would prohibit only the asking of identical questions; a bar on repetition and redundancy also prohibits "[e]xceeding what is necessary or natural." The American Heritage Dictionary at 1465 (4th ed.). Only a prohibition on duplicate questions and on "[e]xceeding what is necessary and natural" will avoid wasteful examination and witness abuse.

In addition to the deletion of the word "redundant," sales and marketing Plaintiffs modified the prohibition on repetitive and redundant questioning by adding the phrase "for any party." This seemingly subtle modification would render the prohibition applicable only to the examiners in one camp, such that lawyers for the product liability Plaintiffs could ask questions that are repetitive or redundant of questions asked by the lawyers for the sales and marketing Plaintiffs. (Of course, this proposal assumes that each camp will be permitted more than one examiner, which it should not.) This proposed modification would further narrow the prohibition so as to render it virtually meaningless.

On top of these two significant proposed changes, Plaintiffs propose that the term "repetitive" be defined. Unsurprisingly, the definition they propose is so narrow that, even without Plaintiffs' other quiet wordsmithing, the prohibition would prohibit little in the way of inefficient and improper duplication.

Section IV.A. should be adopted in precisely the form Defendants have proposed.

**D.    Sequence of Examinations (Sections IV.B. and IV.C.)**

Product liability Plaintiffs say nothing about Sections IV.B. and IV.C. of proposed CMO5, which cover the sequence of examinations. Perhaps they do not oppose them.

Sales and marketing Plaintiffs propose that Sections IV.B. and IV.C. be deleted in their entirety. But they say not a whit about the cases in which provisions just like Sections IV.B. and

IV.C. have been implemented. See Defendants Memo at 9. And they cite nothing in support of their position. Instead, they argue that the two sections are unnecessary.

Defendants disagree. Having pre-set sequences will guarantee orderly transitions from lawyer to lawyer, will avoid intra-deposition squabbles concerning sequence of examination, and will enable counsel to optimize the use of their time.

### E.    Copies of Documents (Section V.A.)

Plaintiffs oppose, on two substantive grounds, any requirement that an attorney who has noticed a deposition be required to provide a copy of all of the documents as to which he or she expects to examine the deponent. The grounds do not include that the requirement is unprecedented or that the Court lacks the power to impose it. Nor do Plaintiffs disagree with Defendants' contention that because many of the documents at issue are years old and voluminous, it will save time during the deposition sessions to permit witnesses to refresh in advance.

Plaintiffs' first objection is that in proposing that exhibits be provided before depositions, Defendants are seeking an "unfair advantage." Plaintiffs forget, however, that the requirement will apply to any attorney on either side who notices a deposition.

Plaintiffs' next objection is both dispiriting and troubling. Plaintiffs admit, in not so many words, that they oppose Section V.A. because it would deny them the opportunity to spring documents on witnesses and play "gotcha." They would be denied this opportunity, they say, because defense witnesses, having seen the documents, will "tailor [their] testimony in a manner that is skewed or otherwise biased." Products Liability Plaintiffs' Memorandum in Opposition to Defendants' Motion for Entry of Case Management Order No. 5, Relating to Depositions at 8

(Docket # 723). And they aver that Defendants' counsel very well could play an active role in the tailoring process.

This objection is dispiriting because it indicates that Plaintiffs view the litigation process as more of a game than a search for the truth. The objection is troubling because it is all but an accusation, with no basis in fact, that Defendants' employees and former employees will shade the truth (or worse) and that Defendants' counsel will be active participants in and facilitators of in this exercise. Plaintiffs' objection is itself objectionable. Defendants do not share Plaintiffs' dim view of the process and their opponents. Defendants are prepared to provide deposition exhibits in advance.

## CONCLUSION

For the foregoing reasons and the reasons previously stated, Defendants respectfully request that the Court enter CMO5 in the form attached hereto as Exhibit A.

Dated: April 13, 2007

                                            DAVIS POLK & WARDWELL

                                            By:   /s/ Neal A. Potischman
                                                    Neal A. Potischman

                                            450 Lexington Avenue
                                            New York, New York 10017
                                            (212) 450-4000

SHOOK, HARDY & BACON L.L.P.

By: /s/ Scott W. Sayler
    Scott W. Sayler
2555 Grand Boulevard
Kansas City, Missouri 64108
(816) 474-6550

- and -

HARE & CHAFFIN

By: /s/ David B. Chaffin
    David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on April 13, 2007.

/s/David B. Chaffin