# EXHIBIT D

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   IN RE:
     WIRELESS TELEPHONE SERVICES                New York, N.Y.
 4   ANTITRUST LITIGATION.                      02 Civ. 2637 (DLC)
 5
     ------------------------------x
 6
                                                January 30, 2004
 7                                              11:00 a.m.
 8
 9   Before:
10                     HON. DENISE L. COTE,
11                                              District Judge
12
13
14                         APPEARANCES
15
16   LAW OFFICES OF SCOTT A. BURSOR
          Attorneys for Plaintiffs
17   BY:  SCOTT A. BURSOR
18
     FARUQI & FARUQI
19        Attorneys for Plaintiffs
     BY:  DAVID H. LEVENTHAL
20        NADEEM FARUQI
21
     FRIEDMAN KAPLAN SEILER & ADELMAN, LLP
22        Attorneys for Defendants AT&T Wireless Services, Inc., and
          Cellular Telephone Company, d/b/a AT&T Wireless Services
23   BY:  ROBERT D. KAPLAN
          DANIEL B. RAPPORT
24
25
```

```
        41u2wirc
```

1

2      ANDERSON KILL & OLICK, P.C.
            Attorneys for Defendant Sprint Spectrum, LP
3      BY:  LAWRENCE KILL
            JOEL S. TENNENBERG

4

5      KELLOGG HUBER HANSEN TODD & EVANS, PLLC
            Attorneys for Defendants Cellco Partnership d/b/a Verizon
6           Wireless, and New York SMSA Limited Partnership, d/b/a
            Verizon Wireless
7      BY:  REID M. FIGEL
            LEO R. TSAO
8           THOMAS J. DiRESTA, In-house Counsel

9      SIDLEY AUSTIN BROWN & WOOD, LLP
            Attorneys for Defendant T-Mobile USA, INC., f/k/a
10          Voicestream Wireless Corp.
       BY:  JOHN J. LAVELLE
11          ALAN M. UNGER

12

13     HUNTON & WILLIAMS
            Attorneys for Defendant Cingular Wireless, LLC
       BY:  THOMAS G. SLATER, JR.

14

15

16

17

18

19

20

21

22

23

24

25

41u2wirc

1           (In open court)
2           THE DEPUTY CLERK: In the matter of *In Re:* Wireless
3   Telephone Services Antitrust Litigation, counsel please state
4   your names for the record.
5           MR. BURSOR: Good morning, your Honor. Scott Bursor
6   for plaintiffs.
7           MR. LEVENTHAL: Good morning, your Honor. David
8   Leventhal for the plaintiffs.
9           MR. FARUQI: Good morning, your Honor. Nadeem Faruqi
10  for the plaintiffs.
11          MR. FIGEL: Good morning, your Honor. Reid Figel for
12  Verizon. I am here with Leo Tsao and Thomas DiResta.
13          MR. LAVELLE: John Lavelle for T-Mobile. I am here
14  with Alan Unger.
15          MR. KAPLAN: Good morning, your Honor. Robert Kaplan
16  for the AT&T wireless defendants along with Dan Rapport.
17          MR. KILL: Good morning, your Honor. Larry Kill for
18  the Sprint defendants. I am here with Joel Tennenberg.
19          MR. SLATER: Good morning, your Honor. Tom Slater for
20  the Cingular defendants.
21          THE COURT: Good morning to one and all. Welcome.
22          This was to be our discussion of depositions, but it
23  has ended up that it is necessary to have this conference with
24  respect to document discovery, which is supposed to be
25  substantially complete by February 20. I do plan to get to the

1  produced, it was a little blurry as to whether they were saying

2  we have produced something or we are in the process of

3  producing something, and I think more of it is in the process

4  than actually having already been produced. But we have had a

5  very smooth process so far and counsel have been very

6  professional and cordial and we have been able to resolve most

7  of our disagreements. This was simply a concern about the

8  pace.

9             THE COURT: OK. Great.

10            So fact discovery is going to be over June 11, I

11 believe, so let's turn to the number of depositions. I think

12 there are two categories. I think we should talk about the

13 number of depositions that the plaintiffs want to take per

14 defendant and probably in a separate category is the number of

15 depositions that the plaintiffs and/or defendants want to take

16 of third parties, since handset manufacturers will apparently

17 be a major focus of this and the anticompetitive impact on

18 those manufacturers of the defendants' policies.

19            With respect to each defendant, I am thinking in terms

20 of three or four depositions by the plaintiff of each

21 defendant; and with respect to handset manufacturers, I am

22 thinking in terms of one per handset manufacturer, and it could

23 be, if people have left the arena, also former handset

24 manufacturers. I don't know what those numbers would end up

25 being. If we said three depositions for each defendant and

41u2wirc

1  there are five defendants, that's 15.  I think I remember
2  something like there being in the neighborhood of ten handset
3  manufacturers at some point in life, so that would be another
4  ten.  That would be 25 depositions by the plaintiff.
5      Are the defendants going to want to take depositions
6  of handset manufacturers?
7      MR. FIGEL:  On behalf Verizon Wireless, we expect to,
8  your Honor.
9      MR. SLATER:  Same is true for Cingular, your Honor, I
10 expect for all of the defendants.  But I am sure that's
11 something we shouldn't have to take the same manufacturer
12 twice.  We ought to be able to work that out with Mr. Bursor
13 and what his needs are in that regard, so that we take
14 hopefully one deposition of each manufacturer.  The only thing
15 I can think of right now, you may not have someone at each of
16 the manufacturers today who is knowledgeable for the entire
17 time period.  I don't know that that's the case.  So there
18 could be maybe more than one per manufacturer.  That's a
19 possibility, but I don't know that.
20     THE COURT:  OK.  Well, just to have flexibility, let's
21 say ten for the defendants with respect to third-party
22 depositions, too, and the defendants are going to want to take
23 some depositions of the plaintiffs.
24     How many named plaintiffs are there?
25     MR. BURSOR:  Your Honor, I think there are

41u2wirc

1  approximately 30 in various consolidated wireless actions.  In
2  the lead case, I think there are 11 or 12.
3          Your Honor, what you just said about the number of
4  depositions per defendant and all that, was that a suggestion
5  or did you just limit us to three?
6          THE COURT:  These are all to start the ball rolling.
7  I haven't ruled.  I am just trying to, if we did this, what
8  would be the context here.
9          In the consolidated --
10         MR. BURSOR:  Your Honor, there are five cases that
11 have been consolidated, and I believe the lead case which was
12 filed in this district, there are 11 or 12, I didn't look at
13 that today, named plaintiffs and there are five or six,
14 thereabout, in each of the other consolidated -- each of the
15 other four consolidated cases.
16         THE COURT:  As I remember, we reached an agreement
17 early on here that resulted in you not filing a consolidated
18 amended complaint.  Is that right?
19         MR. BURSOR:  Well, your Honor deemed the complaint
20 that was filed on January 10 of this year to be a consolidated
21 amended complaint.
22         THE COURT:  Right.  And that one has the 15 or so
23 named plaintiffs.
24         MR. BURSOR:  I think there are 11 or 12.
25         THE COURT:  OK.  Obviously if you had actually done a

1   consolidated amended complaint anew, you may have put in all 30
2   named plaintiffs. I don't know. So I must allow the
3   defendants to depose each named plaintiff. Everybody has a
4   right to depose a party to the litigation.
5          Now I am just talking about fact discovery. I am not
6   talking about expert discovery. That has its own separate
7   schedule and requirements.
8          I don't know, are the defendants going to want to take
9   depositions of each other?
10          MR. SLATER: No, your Honor, I don't think so.
11          THE COURT: Good, good. So we have right now with
12   this rough, you know, seat-of-the-pants formulation 65
13   depositions in this case.
14          MR. FIGEL: Your Honor, just a couple of other
15   suggestions. I think it is possible that there may be
16   depositions that will be necessary from other third parties,
17   such as the various standard-setting --
18   industry-standard-setting bodies, like the CTIA and possibly
19   some government witnesses, maybe somebody from the FCC. So I
20   think on the defense side we may need more than just the
21   plaintiffs and whatever agreement we can reach with respect to
22   the manufacturers.
23          THE COURT: Are there other categories that the
24   plaintiffs are going to want to have depositions for?
25          MR. BURSOR: Your Honor, I agree with what Mr. Figel

1  just said. There are some standard-setting bodies and some
2  government witnesses that may need to be deposed. But also I
3  think the big issue that I have with what I have heard so far
4  is that the limit of three or four per defendant I think is not
5  a reasonable limit. There are, you know, Mr. Figel stated
6  earlier that they had identified 50 to 55 custodians of
7  relevant records at Verizon, and I think just from thinking
8  about the issues in this case, there is going to be somebody
9  who has been doing the communicating with the handset
10 manufacturers, there is going to be somebody else who was in
11 charge of the direct retail sales for a carrier. There is
12 going to be somebody else responsible for indirect sales
13 through retail agents. There is going to be somebody else who
14 is responsible for the financial information that we are
15 looking into. So I think a limit of three or four per
16 defendant is not even close to reasonable, and I think ten
17 would be a minimum.
18          THE COURT: So you have identified four functions
19 within the corporation that you believe you will need
20 depositions in connection with the person or the function of
21 communicating with handset manufacturers. The second category
22 was retail what?
23          MR. BURSOR: Well, there are two retail channels that
24 most of the defendants, perhaps all, engage in. They do some
25 direct retail sales, and they also have what they call an

indirect sales channel, which Voicestream brought up in its recent summary judgment motion, that involves independent -- sort of independent retail agents. There will be people responsible for handset design that may have interesting things to say about the locking schemes.

THE COURT: Handset design within the defendants?

MR. BURSOR: Yes, your Honor. As I understand it from the limited documents we have seen so far, the carrier communicates to the handset manufacturers what their specifications for handsets are, including the locking and so on, and then the handset manufacturers respond by building handsets to meet those specifications. So there will be people at AT&T or at Voicestream who are responsible for developing those specifications.

There will be business people who are responsible for determining whether those specifications are going to include a locking mechanism to reduce customer churn, so that you can't take your handset with you if you want to switch carriers. We don't yet have a sense of how diverse those functions are or whether they are concentrated in one individual or a small handful of individuals.

So I think, that being the case, a limit as low as your Honor was suggesting, three or four, is not even close to reasonable, and I think ten would even be very constrained and would require a lot of cooperation from the defendants to

4lu2wirc

1  determine who the people are that have that information.  And I
2  think if we did limit it to ten, there would be a good chance
3  we would be back asking your Honor for more.  But that's
4  something we have not discussed with the other side, so I
5  really can't say what an appropriate number would be.
6          THE COURT:  So you have five categories of functions
7  that you would like to explore within each defendant, the fifth
8  being handset design.
9          MR. BURSOR:  Your Honor, there is also business --
10 there are also business and strategic elements to these issues,
11 such as what steps are taken to reduce churn, which is the
12 industry term for subscriber turnover.  And, you know, why a
13 handset lock is incorporated, why an early termination fee is
14 imposed, those sorts of things.  So I don't know if I can
15 describe with particularity any five or six or eight functions
16 of the company, particularly when I have seen less than a box
17 of documents for many of these companies.  It was my hope that
18 we would have had a substantial rolling production to allow us
19 to educate ourselves on the plaintiffs' side before having to
20 come in and have this discussion, and the defendants prevented
21 us from doing that by producing a box or two boxes of documents
22 consisting primarily of the 10Q's before we came in to discuss
23 this.  So I don't want to limit the plaintiffs' side to five or
24 six or eight or however many functions, because we haven't been
25 able to study the documents and to study the case well enough

4lu2wirc

1  to do that. They have all the evidence, and we have a box of
2  10Q's. So we are not in a position to have that discussion in
3  a binding way.
4           THE COURT: I will hear from the defendants with
5  respect to the numbers of depositions.
6           MR. KILL: Your Honor, I know that there are, I think,
7  seven or eight named plaintiffs in all the actions.
8           THE COURT: No, about 30.
9           MR. KILL: Excuse me? No, that identifies Sprint,
10 your Honor, there are seven or eight, Mr. Bursor, I am not
11 sure, in the five actions. So that certainly is a starting
12 point for the number of depositions that Sprint anticipates it
13 will need aside from third parties and other knowledgeable
14 individuals or entities, but at least those seven or eight
15 named plaintiffs would be persons that we want to depose.
16          MR. SLATER: Your Honor, I rise to say that I think
17 what you described earlier, from what you thought was
18 reasonable from a defendant's point of view, at least from
19 Cingular's point of view would be, based on what we now know
20 about the case, what's being asserted would serve our
21 interests. Mr. Figel mentioned some additional third-parties,
22 like the FCC, the CTIA. I think that that is correct. We
23 probably would have some additional ones. But beyond what you
24 have described, and knowing what we know now, I am not -- I
25 can't say that we need any more than that, in all candor, and I

1    would hope we would not need any more than that.
2         So I think that's the best I can say from Cingular's
3    point of view today.
4         THE COURT: OK. You have a lot of work to accomplish
5    before June 11, and I want to help you get focused and plan
6    your lives between now and then. So based on what I am hearing
7    today, the defendants will be able to take a deposition of each
8    named plaintiff, which cumulatively amounts to roughly 30
9    depositions of the named plaintiffs. The defendants will be
10   able to take ten depositions, third-party depositions apart
11   from depositions of government officials or NGO's or the
12   industry-standard-setting groups.
13        With respect to the industry-standard groups and the
14   NGO's and the government entities, there will be six
15   depositions -- three by the plaintiffs, three by the
16   defendants -- so I am hoping that you will consult and
17   coordinate with each other and use those choices wisely.
18        With respect to the plaintiffs, they also get ten
19   third-party depositions. I am obviously hopeful that the 20
20   that we have talked about here -- the ten for the plaintiffs
21   and the ten for the defendants -- can be reduced in number and
22   that you can all agree on within a particular cell phone
23   manufacturer, for instance, who the right person is and just
24   eliminate any duplication there. But in case you can't agree,
25   I would allow each of you to take a deposition of the cell

1   phone manufacturer, for instance, so you may be looking at it
2   from different angles. So there would be ten.
3           That leaves us with the only open issue of how many
4   depositions the plaintiffs must take or can take with respect
5   to each of the defendants. They have identified six areas of
6   interest here by function within the businesses and they have
7   asked for a minimum of ten depositions with the possibility to
8   come back to me for more depositions.
9           I am going to place some tough limits on this for the
10  plaintiffs, but with the following understanding: that the
11  defendants are fully cooperative with respect to identifying
12  the key person with respect to responsibility for a function
13  within the company that the plaintiffs are focusing on. And if
14  you are not fully cooperative, I will give them additional
15  depositions.
16          Is there any objection to that as a basis for
17  functioning here?
18          MR. KAPLAN:  No, your Honor.
19          MR. SLATER:  Not from Cingular's point of view, your
20  Honor. And I know this is known to the court and obviously
21  known to Mr. Bursor and plaintiffs' counsel, but I would hope
22  you would not need ten per defendant. It's Rule 30(b)(6)
23  that's out there, and these six categories can be designated
24  and maybe can be covered by one or two people, but just a
25  thought.

41u2wirc

1      THE COURT: But I am wondering about this commitment
2  to cooperate to identify the right person and reduce,
3  therefore, the number of depositions.
4      MR. FIGEL: You have Verizon Wireless' commitment.
5      MR. SLATER: You have Cingular's.
6      MR. LAVELLE: T-Mobile, too.
7      MR. KILL: Same with Sprint.
8      MR. KAPLAN: No problem, your Honor.
9      THE COURT: The plaintiffs will be given six
10 depositions per defendant with the ability to come back to me
11 and ask for more if there has been less than full cooperation
12 in producing the right person with knowledge to answer the
13 questions in a forthright and thorough manner during the
14 deposition.
15      And I hope with these limits, then, and targets that
16 you can organize your life and finish fact discovery by June
17 11. That's your date, and of course with the summer, you know,
18 to follow that date, you have every incentive to work hard this
19 spring.
20      Let me just look at our schedule going forward.
21      (Pause)
22      THE COURT: Plaintiffs' identification of experts is
23 occurring June 25. And I am just looking at the scheduling
24 order of November 12, so this is nothing new. You all have
25 copies of it. And defendants' identification of experts is

4lu2wirc

1    July 23, and then summary judgment practice begins on October
2    29.
3           Just to review with you again, if I hadn't already,
4    then to review with you for the first time, what you should do
5    if there are any discovery problems. Write me a letter no
6    longer than two pages and I will get you on the phone and
7    address them promptly. I think you should focus on, among
8    yourselves, see if you can reach some agreements with respect
9    to the length of depositions and other protocols. I expect you
10   will be able to reach agreement, but if you can't, of course I
11   am available.
12          If there is any problem with discovery so that you are
13   having difficulty meeting the fact discovery cutoff of June 11,
14   the burden is on you to let me know. When July comes, it is
15   too late.
16          I think that's it. Anything else that we need to
17   discuss on the record?
18          MR. BURSOR:  I don't think so, your Honor.
19          THE COURT:  Good. The record is closed.
20                              - - -