UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION ) ) ) ) ) | |
| ) THIS DOCUMENT RELATES TO:  ) ) ALL MARKETING AND ) SALES PRACTICES ACTIONS ) ) | MDL Docket No. 1629 Master File No. 04-10981 Judge Patti B. Saris Mag. Judge Leo T. Sorokin |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL COMPLIANCE WITH DISCOVERY ORDER NO. 7
AND FOR SANCTIONS**

Defendants admit that:

- "In or about January 2004, the content or a portion of the content of http://neurontin.pfizer.com was combined with content from another intranet site and re-launched as http://a2d.pfizer.com on a server called MOPPPGPREGABPRD."

- "In or about January 2005, http://a2d.pfizer.com was moved off of the MOPPPGPREGARPRD server and onto yet another platform (the GPI platform) and renamed.  In or about April 2005, the MOPPPGPREGABPRD was itself decommissioned."

- "[A] backup tape, believed to have been made of the MOPPPGPREGABPRD server from in or about March 2005, exists.  It is possible that this back-up tape contains a version of the http://a2d.pfizer.com site that resided on that server in January 2005 prior to its move to the GPI server."

- "[D]efendants "believe it is likely that the back-up tape will contain a 2005 version of a possible successor site to

614423.1

http://neurontin.pfizer.com."

Declaration of Nathan Friedman (Dkt No. 725) ¶¶ 5-7; Defendants' Memorandum of Law In Opposition ("Defs. Opp.," Dkt. No. 724) at 16.

Defendants argue that they should not be required to restore and produce the website from the backup tape, because (1) "[n]othing in the language of [Discovery Order No. 7] suggests that the Court had even considered, much less was ordering, the restoration and production of any archived or back-up copies of such a site" (Defs. Opp. at 14); and (2) "the data is 'not reasonably accessible because of undue burden and cost.'" (Defs. Opp. at 16). Discovery Order No. 7 speaks for itself, and Defendants' hair-splitting interpretation deserves a strong rebuke from the Court, as well as the imposition of sanctions.

As to the issue of burden, on March 22, 2005, the Court entered Case Management Order No. 3 (Dkt. No. 62), which provides, in pertinent part, that:

> All parties and their counsel are reminded of their duty to preserve evidence that may be relevant to these actions. The duty extends to documents, **data**, and tangible things in possession, custody or control of the parties to this action. "Documents, **data**, and tangible things" is to be interpreted broadly to including writings, records, files, correspondence, reports, memoranda, calendars, diaries, minutes, electronic messages, voice mail, E-mail, telephone message records or logs, **computer and network activity logs, hard drives, backup data, removable computer storage media such as tapes, discs and cards,** printouts, document image files, **Web pages**, **databases**, spreadsheets, **software**, . . . or other similar such material. **Information that serves to identify, locate, or link such material,** such as file inventories, file folders, indices, and metadata, **is also included in this definition. Counsel is under an obligation to the Court to exercise all reasonable efforts to identify parties and notify them of their duty to preserve evidence.**

*Id.* (emphasis added).

This order could not be clearer: Defendants were ordered to preserve the Neurontin website in an accessible form. Sometime in April 2005 — *after* this order was entered

— Defendants "decommissioned" the site, which is the only reason it needs to be restored from a backup tape. Declaration of Nathan Friedman (Dkt No. 725) ¶ 6. Accordingly, any cost or burden in restoring the website from the backup tape is due solely to ***Defendants' violation of the Court's document preservation order***. In sum, Defendants argue that they should be excused from complying with Discovery Order No. 7 because they violated Case Management Order No. 3. To state the argument is to refute it.

Although Defendants complain of the cost of restoring the data, they have made no attempt whatsoever to quantify it, and it is no doubt miniscule in comparison to their Neurontin sales, which averaged *$7.4 million per day* in 2004. See Pfizer Investor News Release, *Pfizer Inc Fourth-Quarter 2004 Performance Report* (available at http://www.pfizer.com/pfizer/are/investors_releases/2005pr/mn_2005_0119.jsp) ("Full-year worldwide revenues for Neurontin were $2.723 billion in 2004"). Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure expressly provides that even if electronically stored information is "not reasonably accessible because of undue burden or cost, . . . the court may nonetheless order discovery from such sources if the requesting party shows good cause . . . ." Plaintiffs should not bear discovery costs that are a "product of Defendant['s] record-keeping scheme over which Plaintiffs have no control." *In re Brand Name Prescription Drugs Antitrust Litig.* (Ciba), 1995 WL 360526 (N.D. Ill. June 15, 1995) (compelling production of computer-stored email at the responding party's own expense). *See also Delozier v. First Nat'l Bank of Gatlinsburg*, 109 F.R.D. 161 (E.D. Tenn. 1986) ("A court will not shift the burden of discovery onto the discovering party where the costliness of the discovery procedure involved is entirely a product of the defendant's record-keeping scheme over which the plaintiff has no control."). This principle applies with unusual force here, where the alleged cost and burden is a result of the

responding party's violation of a pre-existing document preservation order.

In a footnote, Defendants argue in the alternative that if they "are required to produce the inaccessible data, the plaintiffs should bear the costs of restoration." Defs. Opp. at 17. As set forth above, these costs, whatever they may be, could have been avoided completely if Defendants had complied with the Court's document preservation order. Plaintiffs have no doubt that Defendants could drag their heels for months and saddle Plaintiffs with many thousands of dollars in unnecessary costs in a half-hearted effort to recover the data, no doubt resolving every judgment call in favor of non-production. Given the aggressive discovery schedule ordered by the Court, Plaintiffs simply do not have time for such continued gamesmanship. Accordingly, the Court should order Defendants to produce a copy of the backup tape to Plaintiffs, along with sufficient information regarding the hardware and software platform on which it was previously loaded, and Plaintiffs will recover the data themselves, at their own expense.

Defendants will doubtlessly protest that the backup tape may include additional data not relevant to this litigation, which they should not have to turn over to Plaintiffs. As the Court has already found, the existing protective order "provides substantial and meaningful protection for confidential data" (Discovery Order No. 9 (Dkt. No. 632) at 1), which is sufficient to address this concern. Nor can Defendants reasonably contend that the tape may contain privileged information requiring a pre-production review by defense counsel, as the websites it contains were a "marketing communication platform and document repository that several brand teams used to post information for dissemination, particularly to Major Markets (ex-US) brand teams." Declaration of Nathan Friedman ¶ 4. It is inconceivable that such widely-disseminated documents would include privileged attorney-client communications.

Dated: April 13, 2007                                  Respectfully Submitted,

                                          By:    /s/ Barry Himmelstein
                                                  Barry Himmelstein, Esquire
                                                  Lieff Cabraser Heimann &
                                                  Bernstein, LLP
                                                  Embarcadero Center West
                                                  275 Battery Street, 30th Floor
                                                  San Francisco, CA 94111-3339


                                          By:    /s/ Thomas Greene
                                                  Thomas Greene Esquire
                                                  Greene & Hoffman
                                                  125 Summer Street
                                                  Boston, MA 02110

                                          By:    /s/ Don Barrett
                                                  Don Barrett, Esquire
                                                  Barrett Law Office
                                                  404 Court Square North
                                                  P.O. Box 987
                                                  Lexington, MS 39095

                                          By:    /s/ Daniel Becnel
                                                  Daniel Becnel, Jr., Esquire
                                                  Law Offices of Daniel Becnel, Jr.
                                                  106 W. Seventh Street
                                                  P.O. Drawer H
                                                  Reserve, LA 70084

                                          By:    /s/ James Dugan
                                                  James Dugan, Esquire
                                                  Dugan & Browne
                                                  650 Poydras St., Suite 2150
                                                  New Orleans, LA 70130

                                          By:    /s/ Thomas M. Sobol
                                                  Hagens Berman Sobol Shapiro LLP
                                                  One Main Street, 4th Floor
                                                  Cambridge, MA  02142
                                                  Boston, MA 02110

                                       ***Members of the Class Plaintiffs'***

*Steering Committee*