**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Dkt. No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| | Magistrate Judge Leo T. Sorokin |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY. | **FILED UNDER SEAL** |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC. and | |
| AETNA, INC. v. PFIZER INC. | **JUDGE'S COPY** |

---

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE**
**TO DISCOVERY ORDER NO. 9**

Plaintiffs respectfully submit this Reply to Defendants' Response to Plaintiffs' Objections to Discovery Order No. 9 ("Response") [Dkt. No. 674], in which Defendants categorically assert that they did not prepare and present value analyses of Neurontin to health plans or to other payers. Based on this assertion, Defendants oppose Plaintiffs' objections to Discovery Order No. 9, which denied Plaintiffs' motion to compel a response to Request No. 19

of Plaintiffs' Third Request for Product of Documents ("Request No. 19"). From the Plaintiffs' limited review of the documents just produced by the Defendants, it appears such value analyses were, in fact, prepared and presented to Plaintiffs. As such, Plaintiffs' objections to Discovery Order No. 9 should be granted and Discovery Order No. 9 modified to require the production of responsive documents.

## ARGUMENT[1]

It has been central to Plaintiffs' case throughout that Defendants directly made misrepresentations concerning Neurontin to health plans, health insurers and other third party payors (collectively, "TPPs"). Defendants resist producing this information, asserting for the first time that these documents do not exist. However, in their original response to Request No. 19 the Defendants objected to producing these documents based on the burdensomeness of producing the requested "value analyses."[2] Defendants' Response now makes what is a truly incredible assertion – *i.e.,* that they never performed the "value analyses." Exactly what would have been burdensome about producing the now non-existent "value analyses" is left unstated in the Response. All that is provided in support of this assertion is the Macgregor Declaration in which Defendants claim to have spoken to Pfizer employees who would have prepared such analyses and to have reviewed certain electronic documents. See Macgregor Declaration, ¶ 4 at

---

[1] Defendants erroneously assert yet again (as they had at oral argument) that the relevant Complaints in this case contain only a single reference to such misrepresentations. Plaintiffs' Objections to Discovery Order No. 9 contain the numerous references in the Complaints which reference such misrepresentations. See Third Coordinated Amended Complaint, ¶¶2, 4, 20, 26, 27, 32, 33, 100, 225 227(d) 237 (a)(c), 251, 264 (b)(c)(d), 277 (b)(c)(d), 290 (b)(c)(d), 303 (b)(c)(d), 316 (b)(c)(d), 329 (b)(c)(d), 370, 371 (b)(c)(d); Third Amended Class Action Complaint ¶¶ 4, 5-8, 120, 254, 280, 306.

[2] Among other responses, Defendants objected "to Request No. 19 on the grounds that it is overly broad and unduly burdensome, including by requesting 'all' such documents."

1. Ms. Macgregor concludes from her search that Pfizer did not prepare such analyses, nor present them to payors or their PBMs.

Ms. Macgregor's representation that there were no such value analyses appears to be false. In fact, the Health Care Management ("HCM") division, the group of employees whose mission it was to market Neurontin and other P-D/Pfizer products to managed care organizations like the Plaintiffs, apparently had a cost analyses group whose job it was to prepare the very analyses Ms. McGregor now swears never existed. At least two of Pfizer's recently produced documents confirm the falsity of Defendants' position:

- A February 16, 2001 "Neurontin Situation Analysis" for the HCM division states that "[m]anaged care organizations are concerned about non-neurologists prescribing AEDs [*i.e.,* antiepileptic drugs, including Neurontin] (for emerging uses) and the use of Neurontin for monotherapy by neurologists." See attached hereto as Exhibit 1, Pfizer_NMancini_0011661. To get around off-label concerns, the HCM division intended to "[h]ighlight the potential savings on the average cost per patient in order to gain [managed care] formulary placement…" Id. at Pfizer_NMancini_0011663. Also, the HCM goal was to "[i]nfluence [managed care] P&T [*i.e.,* Pharmaceutical & Therapeutics] committees toward inclusion of Neurontin on formulary by emphasizing cost savings…, compliance and safety." Id.
- The "Overview of 2002 Operating Plan" reflects Pfizer continued efforts to make careful analyses of Neurontin's acceptance by managed care plans. See attached hereto as Exhibit 2, Pfizer_CGrogan_0004242-4259. Per Pfizer's own internal analyses, it knew that managed care plans would not change the formulary status of Neurontin because it was "an anticonvulsant, and plans want easy access to anticonvulsants for epilepsy

patients." Id. at 0004250.  Per Pfizer's own internal documents, the importance of ready access for an anti-seizure drug meant that managed care plans would not impose prior authorization limits for Neurontin, thus allowing Defendants to increase the off-label uses of Neurontin without concern of additional formulary scrutiny.  Id.

Moreover, Plaintiffs' preliminary review of the limited documents on this topic that Defendants have produced in this litigation, confirms that preparing and delivering value analysis was standard marketing tactic for Neurontin.  For example:

- A key tactic within the strategy Defendants used to sell managed care on Neurontin was the "Brainstorming for Better Health" program, a 12 month educational program, HCM used to convince managed care plans to keep Neurontin on formulary.  See attached hereto as Exhibit 3, X001930-X001946.

- A document entitled "Neurontin War Games" dated April 3, 1996 from Cline, Davis & Mann, Inc., discusses the fact that a group of P-D and Cline, Davis employees met on March 1, 1996 to "assess the current positioning and strategic direction for Neurontin…" See attached hereto as Exhibit 4, V046875.  Among the "tactics" the group devised was to "[d]evelop [a] managed care program to position Neurontin as the ideal add-on therapy for managed care environment" and that they intended to "[m]odel potential cost of drug interactions with competitive agents." Id. at V046893.

- Defendants' 1996 Business Plan for Product Development Managers unequivocally states under the "situational analyses" that "[m]anaged [c]are is critical to the success of our current products . . . ." See attached hereto as Exhibit 5, W002185.

- A 1996 "Epilepsy Business Plan" states that the P-D strategy for "managed care" was to "[d]evelop and communicate models that document the cost effectiveness of Parke-Davis

programs and products." See attached hereto as Exhibit 6, V039947. Intended customers listed were the following HMOs/PBMs: Harvard Pilgrim, Caremark, Cigna, Coventry, Humana, Pacificare, and Foundation Health. Id.

- The 1998 Business Plan for Managed Markets states that one of the Healthcare Management ("HCM") division's strategies for increasing Neurontin sales to managed care customers was to "[p]romote access and sales opportunities through programs and services that bring value to key customers." See attached hereto as Exhibit 7, WL06546 at WL06558.

The story that emerges from the limited documents produced shows how Defendants' understanding of the managed care market place grew over time. While in the 1996-1998 timeframe, P-D had attempted by win acceptance of Neurontin through value-added programs, by 2002 Defendants were able to leverage the off-label scheme into making Neurontin a multi-billion dollar blockbuster drug.

From the limited documents Defendants have produced on this subject referring to these analyses, Ms. Macgregor's Declaration thus simply appears to be false. Such analyses were a routine part of Defendants' efforts to have managed care accept Neurontin, and would graphically demonstrate how Defendants leveraged the off-label scheme to grow Neurontin into a blockbuster drug. Defendants should thus be required to produce all the "value analyses" as requested in Request No. 19.

Plaintiffs respectfully request that the Court modify Discovery Order No. 9 and compel Defendants to produce all documents responsive to Request No.19.

RESPECTFULLY SUBMITTED,

| | |
|---|---|
| For the Plaintiffs: | Dated: March 27, 2007 |
| /s/ Thomas M. Sobol, Esq.<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>Thomas M. Sobol, Esq. (BBO #471770)<br>Ed Notargiacomo, Esq. (BBO#567636)<br>One Main Street, 4th Floor<br>Cambridge, MA 02142 | |
| LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>Barry Himmelstein, Esq.<br>275 Battery Street, 30th Floor<br>San Francisco, CA 94111-3339 | |
| GREENE & HOFFMAN<br>Thomas Greene, Esq.<br>125 Summer Street<br>Boston, MA 02110 | |
| DUGAN & BROWNE<br>James Dugan, Esq.<br>650 Poydras Street, Suite 2150<br>New Orleans, LA 70130 | |
| BARRETT LAW OFFICE<br>Don Barrett, Esq.<br>404 Court Square North<br>P.O. Box 987<br>Lexington, MS 39095 | |
| LAW OFFICES OF DANIEL BECNEL, JR.<br>Daniel Becnel, Jr., Esq.<br>106 W. Seventh Street<br>P.O. Drawer H<br>Reserve, LA 70084 | |

| | |
|---|---|
| SHAPIRO HABER & URMY LLP<br>Thomas G. Shapiro, Esq. (BBO #454680)<br>53 State Street<br>Boston, MA 02109 | |
| KAPLAN FOX & KILSHEIMER LLP<br>Linda Nussbaum, Esq.<br>805 Third Avenue<br>New York, NY 10022 | |
| COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC<br>Michael D. Hausfeld, Esq.<br>1100 New York Avenue, N.W.<br>West Tower, Suite 500<br>Washington, DC 20005 | |
| RAWLINGS & ASSOCIATES, PLLC<br>Mark D. Fischer, Esq.<br>Mark Sandmann, Esq.<br>325 W. Main Street<br>Louisville, KY 40202 | |
| Joel Z. Eigerman, Esq.<br>50 Congress Street, Suite 200<br>Boston, MA 02109 | |
| BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO<br>Peter A. Pease, Esq. (BBO #392880)<br>One Liberty Square<br>Boston, MA 02109 | |

| | |
|---|---|
| LOWEY DANNENBERG BEMPORAD & SELINGER, PC<br>Richard Bemporad, Esq.<br>Richard W. Cohen, Esq.<br>Peter St. Phillip, Jr., Esq.<br>Todd S. Garber, Esq.<br>The Gateway – 11th Floor<br>One North Lexington Avenue<br>White Plains, NY 10601-1714 | |
| BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO<br>Joseph J. Tabacco, Jr., Esq.<br>425 California Street, Suite 2025<br>San Francisco, CA 94104-2205 | |
| JOHN F. INNELLI, LLC<br>John F. Innelli, Esq.<br>1818 Market Street, Suite 3620<br>Philadelphia, PA 19103 | |

## CERTIFICATE OF SERVICE

    I, Ilyas J. Rona, hereby certify that a copy of the above document was served upon counsel for defendant, Pfizer, Inc., via e-mail and first class mail, postage prepaid on this 27th day of March, 2007.

                                                /s/ Ilyas J. Rona
                                                Ilyas J. Rona, Esq.