UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:  NEURONTIN MARKETING, SALES PRACTICES,
        AND PRODUCTS LIABILITY LITIGATION

                                               MDL Docket No. 1629

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:           Master File No. 04-10981

                                               Judge Patti B. Saris

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HARDEN MANUFACTURING CORPORATION;     Magistrate Judge Leo T.
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,  Sorokin
dba BLUECROSS/BLUESHIELD OF LOUISIANA;
INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL
52 HEALTH BENEFITS TRUST; GERALD SMITH; and
LORRAINE KOPA, on behalf of themselves and all others
similarly situated, v. PFIZER INC. and WARNER-LAMBERT
COMPANY.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC. and

AETNA, INC. v. PFIZER INC.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.*
*and Warner-Lambert Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

CONCLUSION ...................................................................................................................... 8

Defendants Pfizer Inc. and Warner-Lambert Company submit this memorandum in support of their motion to compel discovery from the third-party payor Class Plaintiffs and the Coordinated Plaintiffs (collectively, "plaintiffs") pursuant to Federal Rule of Civil Procedure 37.[1] Specifically, plaintiffs should be compelled to respond to Interrogatories Two through Eight of Defendants' Second Set of Interrogatories, dated March 13, 2007 (the "Interrogatories") (attached as Exs. A-E).

## PRELIMINARY STATEMENT

Plaintiffs have unjustifiably refused to supply information that bears directly on the merits of their case. Demonstrating the existence of drugs that plaintiffs claim are cheaper and more optimal alternatives to Neurontin for the relevant off-label uses is a critical component of plaintiffs' theory of recovery. Despite this, plaintiffs now refuse to supply to defendants any evidence relevant to this theory of recovery. Plaintiffs' refusal to supply this crucial information is troubling not only because plaintiffs have failed to meet their discovery obligations regarding the merits of their case, but also because the information is critical to defendants' defenses. During much of the class period, there were *no* drugs approved for treating any type of neuropathic pain. Other drugs used off-label during this time were not, and are not to this day, considered to be more optimal than Neurontin—which is typically viewed as a first-line treatment for neuropathic pain. Accordingly, knowing what, if any, medications plaintiffs will contend were cheaper and more optimal alternatives is integral to defendants' defense.

---

[1] The third-party payor class plaintiffs are Harden Manufacturing Corporation, Louisiana Health Services Indemnity Company, and ASEA/AFSCME Local 52 Health Benefits Trust. The coordinated plaintiffs are four third-party payors, The Guardian Life Insurance Company of America, Aetna, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan, Inc.

Moreover, plaintiffs' objections to the Interrogatories are made on legally insufficient grounds. Plaintiffs claim that the Court already ruled on this issue when it heard their objections to Discovery Order No. 4 regarding the production of medical records and medical claims data. (Sep. 27, 2006 Order.) This is a non sequitur. In ruling on plaintiffs' objections to Discovery Order No. 4, the Court focused on the question whether proof of efficacy would inevitably require the examination of individual medical records and the testimony of patients. The Court's primary concern was the privacy of Members'[2] medical records and other confidential medical information. (Tr. of Sep. 27, 2006 Hr'g (Dkt # 503) at 25.) Defendants specifically tailored the Interrogatories to avoid the privacy concerns noted by the Court in its ruling. The Interrogatories do not call for the production of any documents—much less individual medical records— but instead ask plaintiffs to supply certain information regarding the prescription of supposedly cheaper and more optimal alternatives medications to plaintiffs' Members.[3] Responding to these Interrogatories also does not require plaintiffs to identify experts or disclose expert testimony, as plaintiffs contend. All that is called for are facts in the possession of plaintiffs. That plaintiffs' experts might familiarize themselves with these facts at some later date is immaterial to whether plaintiffs should supply this information now.

## FACTUAL BACKGROUND

In their complaints, plaintiffs allege that they were injured because defendants' fraud caused them to pay for prescriptions of Neurontin when there were "numerous alternative

---

[2] As defined in the Interrogatories, "Member" "shall include the terms 'participant,' 'beneficiary,' 'covered individual' and 'policy holder,' and means persons for whom the [p]laintiff[s] provide[] health care benefits, health insurance coverage and/or provide[] prescription drug benefits, including the dependents of such persons." (Ex. A at 1.)

[3] This could be done simply by adding the relevant fields to the Neurontin prescription drugs claims data already produced by plaintiffs, which does not identify any patients. Other requests call for aggregate data only.

2

medications that were cheaper and more optimal than Neurontin to treat the conditions for which Defendants were . . . touting Neurontin." (TACAC ¶ 308 (Dkt # 580); TCAC ¶ 173 (Dkt # 583).) On July 28, 2006, defendants moved to compel the production of, *inter alia*, medical records, medical claims data, and non-Neurontin claims data from plaintiffs. (Dkt # 402.) After briefing, your Honor ruled that plaintiffs should produce this information, although it limited the production of medical records to a random two percent sample of plaintiffs' Members, due to the burden of such production. (Dkt # 445 at 2-3.)

On September 27, 2006, plaintiffs objected to this ruling and also moved the Court to reconsider. (Dkt ## 462, 478.) Judge Saris held oral argument on plaintiffs' objections. Following argument, Judge Saris denied defendants' motion to compel, focusing on the fact that proof of efficacy would inevitably require the examination of individual medical records, and could even require the testimony of individual patients. (Tr. of Sep. 27, 2006 Hr'g (Dkt # 503) at 28.) The Court focused in particular on burden and the privacy concerns implicated by the production of medical records. (*Id.* at 25.)

Defendants served these Interrogatories on March 13, 2007. (Exs. A-E.) The Coordinated Plaintiffs served their responses on or before thirty days from the date of service, March 13, 2007, as required. (*See* Exs. F-H, Responses and Objections to Defendants' Second Set of Interrogatories by Coordinated Plaintiffs.) The third-party payor Class Plaintiffs requested, and received, multiple extensions of their time to respond to these Interrogatories before eventually objecting to providing most of the information requested. Class Plaintiffs served their response on May 1, 2007, just prior to the hearing on class certification before Judge Saris. (*See* Ex. I, Plaintiffs' Responses to Defendants' Second Set of Interrogatories to Plaintiff

3

ASEA/AFSCME Local 52 Health Benefits Trust on behalf of all the third-party payor Class Plaintiffs.)

Plaintiffs at first provided answers only to Interrogatories Nos. 1 and 9 of defendants' Interrogatories. Despite initial objections to Interrogatory No. 2, plaintiffs have now reconsidered and will identify the cheaper and more optimal alternatives to Neurontin that they contend exist for each of the off-label uses identified in response to Interrogatory No. 1.[4] Plaintiffs continue to object to answering Interrogatories Nos. 3-8, despite defendants' attempt to narrow their objections during a meet-and-confer held on May 29, 2007.

## ARGUMENT

Under the rules governing discovery in federal courts, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). Rule 37 provides that a motion to compel may be made when a party "fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request or inspection submitted under Rule 34, . . . fails to permit inspection as requested." Fed. R. Civ. P. 37(a)(2)(B). Plaintiffs have not satisfactorily answered six interrogatories served by defendants, and the grounds that they have advanced for not answering them do not excuse their failure to do so. Although plaintiffs have now agreed to provide defendants with the names of the medications they claim are cheaper and more optimal than Neurontin for the relevant off-label uses, they continue to object to identifying whether any of their Members actually was

---

[4] Plaintiffs made this concession during a telephonic meet-and-confer with defendants on May 29, 2007. At this time, plaintiffs were unwilling to commit to a date certain by which this information would be provided. This motion is to be heard at the June 12, 2007 discovery hearing, which is only one month prior to the close of fact discovery on July 14, 2007. Accordingly, if plaintiffs have not supplied this information on or before the date that this motion is heard, defendants request that the Court order plaintiffs to supply this information no later than June 14, 2007.

4

prescribed any of these alleged alternatives before, at the same time as, or after being prescribed Neurontin. Plaintiffs should be compelled to answer these interrogatories.

Defendants propounded these Interrogatories to discover two types of information. First, defendants sought information regarding the extent of usage of these alternative drugs by plaintiffs' Members who took Neurontin. (Interrogatories Nos. 3-4.) Second, defendants requested that plaintiffs provide the number and percentage of their Members who took Neurontin and any other drug approved or commonly used to treat bipolar disorder, depression, neuropathic pain, or epilepsy. (Interrogatories Nos. 5-8.)

This information is highly relevant because it goes directly to plaintiffs' claim—that they were injured because defendants' fraud caused them to pay for prescriptions of Neurontin when there were "numerous alternative medications that were cheaper and more optimal than Neurontin to treat the conditions for which Defendants were . . . touting Neurontin." (TACAC ¶ 308 (Dkt # 580); TCAC ¶ 173 (Dkt # 583).) Defendants are entitled to know not only what these putative "cheaper and more optimal" alternative medications were, but also the extent to which plaintiffs' Members were taking them, at what dosages, and for how long, and the number and percentage of plaintiffs' Members who were taking these and other drugs approved or commonly used to treat the conditions primarily at issue in this case. Without this discovery, defendants cannot test the merits of plaintiffs' claims regarding alternative medications. Neither can defendants accurately estimate the potential damages available under a theory that "cheaper and more optimal" alternatives to Neurontin would have been prescribed instead of Neurontin but for the alleged fraud.

Plaintiffs object to these Interrogatories based on various grounds, including that they are "overly broad," "unduly burdensome," "vague and ambiguous," and "not reasonably calculated

to lead to the discovery of admissible evidence." As noted above, the extreme importance of this discovery to defendants' case shows that there is no merit to these objections, which plaintiffs have done nothing whatsoever to explain. Plaintiffs placed this evidence in issue by advancing claims based on their cheaper and more optimal alternatives theory and should not be allowed to resist discovery relating to it. Plaintiffs' remaining objections to these interrogatories fare no better.

Plaintiffs' primary objections to providing the requested information turn on a completely misguided view of what is called for by the Interrogatories. Plaintiffs argue that defendants' interrogatories seek medical information that is protected from disclosure by privacy laws, including HIPAA; that the sought after discovery is contrary to this Court's September 27, 2006 ruling that plaintiffs need not produce individual medical records or medical claims data for their Members; and that responding to these Interrogatories would require expert testimony, which they argue is premature at this time. In fact, defendants crafted these Interrogatories specifically to avoid all of the issues upon which plaintiffs' objections are based.

None of these Interrogatories requires the production of medical records or the identification or disclosure of any confidential patient information.[5] Nonetheless, plaintiffs argue in their objections that the Court has already ruled that plaintiffs are not required to supply *any* information regarding their individual Members. Defendants, however, do not seek information that implicates the concerns raised by Discovery Order No. 4. In Interrogatory No. 3, defendants seek limited information about other drugs prescribed to plaintiffs' Members who were also prescribed Neurontin. Aggregate market data such as IMS or NDC data cannot

---

[5] To the extent that any of the Interrogatories can be read to call for information from private patient medical records, defendants expressly disavow any request herein for that information.

substitute for this information, as the particular "cocktail" of drugs a given Member is prescribed will vary from patient to patient. Provision of this information to defendants will require nothing significantly more invasive than the production of Neurontin prescription drug claims data already completed by most plaintiffs.[6] Interrogatories Nos. 4-8, seek only the "number and percentage" of Members who took Neurontin and certain alternative medications on an aggregate level. The relevance of this information cannot seriously be disputed, and any burden imposed on plaintiffs to answer these interrogatories is justified and not undue. Plaintiffs' objections based on both the ruling of this Court and privacy laws are not well-founded.

Plaintiffs' final objection is that responding to the Interrogatories would require expert testimony. This is simply incorrect. Plaintiffs have already produced in this case prescription drug claims data indicating how many of their Members were prescribed Neurontin. The answers sought by these Interrogatories are likewise accessible to them in electronic form. Requiring plaintiffs to state the number and percentage of their Members who were also prescribed drugs that they contend were cheaper and more optimal than Neurontin does not require the assistance of an expert. Neither does it require plaintiffs or any potential expert to opine on the results of such a compilation. All that is asked by the Interrogatories is for plaintiffs to provide factual information in their possession, in a form that is usable by defendants and which avoids the privacy concerns addressed by the Court in its September 27, 2006 ruling.

---

[6] With the exception of Aetna, Inc., plaintiffs have all produced this data to defendants. Aetna, Inc. has represented that it is in the process of producing its Neurontin prescription drug claims data.

## CONCLUSION

For all of the foregoing reasons, defendants' Motion To Compel plaintiffs to respond to Defendants' Second Set of Interrogatories should be granted.

Dated: May 30, 2007

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
        James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:   /s/ David B. Chaffin
        David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on May 30, 2007.

/s/David B. Chaffin

8