UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981 |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., et al., 04 CV 10739 (PBS) and | Judge Patti B. Saris |
| AETNA, INC. v. PFIZER INC., et al., 04 CV 10958 (PBS) | |

**COORDINATED PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS**

I.  **INTRODUCTION**

Coordinated Plaintiffs, Aetna, Inc., the Guardian Life Insurance Company of America, Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan, submit this opposition to Defendants' Motion to Compel Discovery from Plaintiffs (Dkt #753), on the grounds that the materials purportedly sought by Defendants are overbroad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Simply put, Defendants' interrogatories purport to seek, in the alternative, either private patient medical records,[1] which

---

[1] Defendants' Memorandum of Law in Support of Motion to Compel Discovery from Plaintiffs (Dkt #754), states that they "are entitled to know not only what these putative 'cheaper and more optimal' alternative medications were, but also the extent to which plaintiffs' Members were taking them, at what dosages, and for how long, and the number and percentage of plaintiffs' Members who were taking these and other drugs approved or commonly used to treat the conditions primarily at issue in this case." Defendants' Memorandum at 5 (emphasis added).

1825 / BRF / 00082886.WPD v1

the Court has already prohibited and Defendants disavow seeking, or information from Plaintiffs' medical claims data on an aggregate level,[2] which Defendants baselessly contend may not prohibitively invade patient privacy. Nonetheless, Defendants also contend that aggregate medical claims data is problematic and a poor substitute for patient records.[3]

## II.  FACTUAL BACKGROUND

Defendants' instant motion ignores the record, pleadings, voluminous materials already produced in discovery and the Court's prior rulings in this case. Defendants boldly state the theme of their current contentions in the "Preliminary Statement" of their Memorandum of Law in Support of Motion to Compel Discovery (Dkt #754):

> Demonstrating the existence of drugs that plaintiffs claim are cheaper and more optimal alternatives to Neurontin for the relevant off-label uses is a critical component of plaintiffs' theory of recovery. Despite this, plaintiffs now refuse to supply defendants any evidence relevant to this theory of recovery.

Defendants' Memorandum at 1.

The existence of cheaper or more optimal alternatives is pled in the Third Coordinated Amended Complaint (Dkt #530), where at paragraph 173 Plaintiffs set forth lists of alternative cheaper or more desirable medications for the identified conditions, including the average daily and monthly costs for these alternative drugs as compared to Neurontin. Defendants' claim that "Plaintiffs now refuse to supply defendants any evidence relevant to this theory of recovery" is

---

[2] "Interrogatories No. 4-8, seek only the 'number and percentage' of Members who took Neurontin and certain alternative medications **on an aggregate level**." Memorandum at 7 (emphasis added).

[3] "Aggregate market data such as IMS data or NDC data cannot substitute for this information as the particular "cocktail" of drugs a given Member is prescribed will vary from patient to patient." Memorandum at 6-7 (emphasis added).

without merit. Defendants seek to force Plaintiffs, at great cost and expense, to forage through their patient bases for claims data relating to these alternative drugs which the Defendants' counsel has already conceded is problematic. Moreover, there are many publicly available sources for data.

Defendants attempt to disguise their instant motives, but their Memorandum reveals their true intent:

> Defendants are entitled to know not only what these putative "cheaper and more optimal" alternative medications were, but also <u>the extent to which plaintiffs' Members were taking them, at what dosages, and for how long, and the number and percentage of plaintiffs' Members who were taking these and other drugs approved or commonly used to treat the conditions primarily at issue in this case.</u>

Defendants' Memorandum at 5 (emphasis added). Although Defendants' stated purpose for the interrogatory request appears to clearly implicate private patient medical information, the Court has specifically prohibited such requests and thus Defendants go to great length to "expressly disavow any request herein for that information [private patient medical records]." Memorandum at page 6, footnote 5.

Alternatively, Defendants claim that they only seek "aggregate data" and not patient specific medical records: "Interrogatories No. 4-8, seek only the 'number and percentage' of Members who took Neurontin and certain alternative medications on <u>an aggregate level</u>." Memorandum at 7 (emphasis added). In apparent contradiction of this reasoning and Defendants' oft-stated intent to disavow any request for private patient medical records, Defendants' Memorandum states that "<u>Aggregate market data</u> such as IMS data or NDC data cannot substitute for this information as the particular "cocktail" of drugs a given Member is

prescribed will vary from patient to patient." Memorandum at 6-7 (emphasis added).

Thus, if "aggregate market data" is not useful then how is Plaintiffs' data "on an aggregate level" useful? For example, at points during the class period, Plaintiff Aetna's covered population exceeded 20 million members. Even the most amateur statistician could comfortably state that Aetna's data "on an aggregate level" will not substantially diverge from industry "aggregate market data." Moreover, the Court addressed this issue and dismissed Defendants' concerns about Plaintiffs' use of industry data and weighed the burden when Defendants previously attempted to force Plaintiffs to generate data sets at their expense. (*See* transcript of Sept. 27, 2006 hearing at 56-57, Dkt # 503).

By contending that <u>aggregate data</u> cannot substitute for "the particular 'cocktail' of drugs a given Member is prescribed," Defendants both acknowledge a lack of relevancy and usefulness of the data, and confirm that their interrogatory requests are burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Moreover, at oral argument before the Court on September 27, 2007, when previously trying to obtain access to private patient medical data, Defendants' counsel already conceded the problem with wasting energy and resources producing and analyzing claims records in a vacuum. At the September 27, 2006 hearing, Mr. Rouhandeh himself said, "And we think that this is a problem we're having because their claims data they're giving us doesn't show us what the use is for. The only way to get that data is from medical records." (Sept. 27, 2006 tr. at 47). The Court has already made clear its ruling on the issue of private patient medical data, and it is inappropriate for Defendants to try to end run the Court and attempt to re-visit the issue here by claiming that Defendants "cannot substitute" aggregate data for "the particular 'cocktail' of drugs

a given Member is prescribed."

This very issue regarding available industry data which the drug manufacturers themselves rely upon was discussed in great detail at the September 27, 2006 hearing before Judge Saris:

> MR. HIMMELSTEIN: Your Honor, I can give you a very concrete and specific answer to your question if you will allow me about three minutes or two minutes or one minute. There is data, reliable data, for every diagnostic code about what drugs are prescribed. You'll have so much percent are prescribed this drug, and it has this average cost; so much percent are prescribed this drug, and it has this average cost. All of that data is available. So we show Neurontin was prescribed for, say – I'm just pulling numbers out of the air – 100,000 patients for bipolar disorder. If you would have taken that 100,000 patients and assumed that they would be prescribed the same distribution on average of drugs as the general population for that condition, we can quantify to the penny what those drugs would have cost.
>
> THE COURT: And you need an expert to put in that they are equivalent.
>
> MR. HIMMELSTEIN: Yes, I mean, really the FDA has a list of what drugs are approved for what condition. It's not a big deal. It's not, like, a big battle. There's a list of what drugs are approved for what condition, and there's data about how frequently they're prescribed for each condition and the average cost to the penny of those prescriptions. We can quantify all that. It's not a problem.
>
> THE COURT: Well, is there a drug approved for shaking leg syndrome? I imagine that it's true for some of those indications and not others.
>
> MR. HIMMELSTEIN: There's one, I've seen TV commercials on it, about how you could never get up from the couch. Have you seen that one? They're going to finally cure whatever it is that makes people be couch potatoes 24 hours a day. They're running a commercial on it, so it must be approved. I've seen that.

> THE COURT: I wouldn't necessarily jump to that, but, in any event, let me say, I don't know. I'm not willing to prejudge it. To the extent you're putting on doctors or experts to say something and they're relying on individual patient experience, that will have to be produced. Similarly, to the extent you're going to put on doctors based on individual patient experience, you know, just like any expert, you've got to put on the factual basis. What I'm not going to allow is a foraging through the third-party payors' patient base.

Sept. 27, 2006 tr. at 38-39. Regrettably, in their instant requests, Defendants again improperly seek to forage through the third party payers' patient base.

### III. ARGUMENT

Although discovery is generally permissible as to any non-privileged matter that is relevant to the claim or defense of any party, it may be limited in scope where the court determines that it is unduly burdensome. *Daniels v. American Power Conversion Corporation*, C.A. No. 05-459ML, 2007 WL 539643, at *1 (D.R.I. Feb 15, 2007). In making a decision regarding the burdensomeness of an interrogatory, a court should balance the burden on the interrogated party against the benefit to the discovering party of having the information. *Pulsecard, Inc. v. Discover Card Services, Inc., et al.*, 168 F.R.D. 295, 304 (D. Kan.1996). In addition, "interrogatories must be sufficiently definite, clear, and concise, and they must adequately advise the interrogated party of the information requested." *Capacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998). "Interrogatories that are facially overbroad are impermissible and require no response from the responding party." *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 197 (D. Kan. 1996).

Defendants in this matter have been given far more than sufficient information to defend against Plaintiffs' claim that cheaper or more optimal alternatives existed for Neurontin. The

Court has already prohibited production of private patient medical information. Plaintiffs have promised to produce additional information about damages through their experts at the appropriate times in the schedule of this action, and the instant attempt to burden Plaintiffs to produce aggregate claims data about prescriptions for Neurontin and alternative drugs, which Defendants have conceded is problematic and cannot substitute for "the particular 'cocktail' of drugs a given Member is prescribed," is burdensome and a frivolous waste of resources.

Wherefore, Plaintiffs respectfully request that the Court deny Defendants' Motion to Compel Discovery from Plaintiffs.

Dated: June 4, 2007

**For Plaintiff Guardian Life Insurance Co. Of America:**

  /s/ Thomas G. Shapiro
Thomas G. Shapiro (BBO # 454680)
Theodore Hess-Mahan (BBO # 557109)
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

**OF COUNSEL:**

**KAPLAN FOX & KILSHEIMER LLP**
Linda P. Nussbaum, Esq.
805 Third Avenue, 22nd Floor
New York, NY  10022
Telephone:  (212) 687-1980
Facsimile:  (212) 687-7714

**RAWLINGS & ASSOCIATES, PLLC**
Mark D. Fischer, Esq.
Mark Sandmann, Esq.
325 W. Main Street
Louisville, KY 40202
Telephone: (502) 587-1279
Facsimile: (502) 584-8580


**For Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals:**

  /s/ Thomas G. Shapiro
Thomas G. Shapiro (BBO # 454680)
Theodore Hess-Mahan (BBO # 557109)
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA 02109
Telephone: 617-439-3939
Facsimile: 617-439-0134


**OF COUNSEL:**

**KAPLAN FOX & KILSHEIMER LLP**
Linda P. Nussbaum, Esq.
805 Third Avenue, 22nd Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714


**For Plaintiff Aetna, Inc.:**

  /s/ Peter A. Pease
Peter A. Pease, Esq.
 (BBO # 392880)
**BERMAN DEVALERIO PEASE**
 **TABACCO BURT & PUCILLO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194

OF COUNSEL:

**LOWEY DANNENBERG BEMPORAD
   SELINGER & COHEN, P.C.**
Richard Bemporad, Esq.
Richard W. Cohen, Esq.
Gerald Lawrence, Esq.
Nicholas E. Federici, Esq.
White Plains Plaza - - 5th Floor
One North Broadway
White Plains, NY  10601-2310
Telephone:  (914) 997-0500
Facsimile:  (914) 997-0035

**BERMAN DEVALERIO PEASE
 TABACCO BURT & PUCILLO**
Joseph J. Tabacco, Jr., Esq.
425 California Street, Suite 2025
San Francisco, CA  94104-2205
Telephone:  (415) 433-3200
Facsimile:  (415) 433-6382

**JOHN F. INNELLI, LLC**
John F. Innelli, Esq.
1818 Market Street, Suite 3620
Philadelphia, PA  19103
Telephone:  (215) 5612-1011
Facsimile:  (215) 561-0012

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3.

                                              ATTORNEY FOR PLAINTIFFS

                                              /s/ Nicholas E. Federici
                                              NICHOLAS E. FEDERICI