UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------- x
: 
In re:  NEURONTIN MARKETING, SALES PRACTICES,  :
AND PRODUCTS LIABILITY LITIGATION  :
: MDL Docket No. 1629
---------------------------------------------- x
: Master File No. 04-10981
THIS DOCUMENT RELATES TO:  :
: Judge Patti B. Saris
---------------------------------------------- x
: Magistrate Judge Leo T. Sorokin
HARDEN MANUFACTURING CORPORATION;  :
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,  :
dba BLUECROSS/BLUESHIELD OF LOUISIANA;  :
INTERNATIONAL UNION OF OPERATING ENGINEERS,  :
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL  :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and  :
LORRAINE KOPA, on behalf of themselves and all others  :
similarly situated, v. PFIZER INC. and WARNER-LAMBERT  :
COMPANY.  :
:
---------------------------------------------- x
:
THE GUARDIAN LIFE INSURANCE COMPANY OF  :
AMERICA v. PFIZER INC. and  :
:
AETNA, INC. v. PFIZER INC.  :
:
---------------------------------------------- x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

Defendants Pfizer Inc. and Warner-Lambert Company submit this reply memorandum in further support of their motion to compel discovery from the third-party payor Class Plaintiffs and the Coordinated Plaintiffs (collectively, "plaintiffs") pursuant to Federal Rule of Civil Procedure 37.

## ARGUMENT

Plaintiffs appear to be laboring under the misimpression that it is permissible to allege that they suffered economic harm because their insureds received Neurontin instead of other, less expensive alternatives without ever having to disclose whether those insureds in fact received those alternative drugs. *See generally* 7 Moore's Federal Practice § 33.74, at 33-59 (Daniel R. Coquillette et al. eds., 3d ed. 2007) (observing that "[i]nterrogatories properly may inquire into the detailed factual basis for particular allegations or alleged causes of action of a party," and that "[t]he propriety of such interrogatories is based on the defendant's right to know the factual basis of plaintiff's allegations").

Plaintiffs allege that they were economically harmed because, but for the defendants' conduct, their insureds who were prescribed Neurontin would have been prescribed "cheaper and more optimal" alternative medications instead. (TACAC ¶ 308 (Dkt # 580); TCAC ¶ 173 (Dkt # 583) (alleging that carbamazepine was among these alternative medications).) What defendants' interrogatories seek is the simple answer to the obvious follow-up question: How many of these insureds did receive these allegedly "cheaper and more optimal" alternatives? Remarkably, plaintiffs purport not to have the foggiest idea what the answer is to this question. Though that ignorance should, if uncured, ultimately lead to summary judgment on liability in defendants' favor,

defendants are entitled to test the issue now as part of preparing their defenses during discovery.

Contrary to plaintiffs' suggestion, the federal discovery rules do not authorize plaintiffs to refuse to respond to interrogatories and insist that defendants purchase the relevant information from a third party. *See* 7 Moore's Federal Practice § 33.73, at 33-59 & n.7; *e.g.*, *Petruska v. Johns-Manville*, 83 F.R.D. 32, 35 (E.D. Pa. 1979) (responding party cannot object to request for production of records in its possession on the ground that propounding party could obtain the same records from an industry association).

There is, moreover, not an iota of record evidence suggesting that any third party is capable of supplying the information that defendants seek to obtain. IMS Health Inc. ("IMS") and other similar vendors take sample snapshots of patient populations. Plaintiffs have proffered no evidence that IMS and other vendors are capable of tracking particular patients over time (as plaintiffs can).

Defendants are in any event entitled to learn this information on an entity-by-entity basis because differences in drug utilization polices and procedures may well affect which patients receive which drugs. Thus, even if IMS could tell defendants what percentage of individuals nationwide took the identified drugs before taking Neurontin, that information might well prove useless as against particular plaintiffs whose policies and procedures steered patients toward or away from particular medications. For example, following the emergence of clinical data supporting the use of gabapentin for the treatment of post-herpetic neuralgia and diabetic neuropathy, plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals ("Kaiser") removed restrictions they had previously placed on gabapentin prescriptions, but issued guidelines

that their physicians should prescribe gabapentin only to "those patients unresponsive to or intolerant of other available treatment modalities, including tricyclic antidepressants (alone or in combination with narcotic analgesic agents), carbamazepine and topical agents." KAIS-001063 (attached as Exhibit 1 to the Declaration of Rajesh S. James, dated June 8, 2007). The percentage of Kaiser's insureds who took gabapentin only after proving "unresponsive to or intolerant of" carbamazepine and "other available treatment modalities" will necessarily differ from the corresponding percentage of patients insured by a TPP that did not issue similar guidelines. Furthermore, it makes no sense to allow Kaiser to recover on a theory that its insureds who were prescribed Neurontin would have been prescribed allegedly "cheaper and more optimal" alternative medications instead, when in fact those insureds were prescribed Neurontin only after proving "unresponsive to or intolerant of" these allegedly "more optimal" alternative medications.

In short, having injected the issue of supposedly superior alternative treatments into the litigation, plaintiffs should not now be permitted to deny defendants access to relevant discovery of that topic from their files.

Plaintiffs' remaining objections are likewise unavailing. The three coordinated plaintiffs assert that responding to defendants' interrogatories would prove unduly burdensome, but state no facts to support their assertion. An objecting party cannot sustain its burden of showing that interrogatories are unduly burdensome through conclusory assertions of this sort. *See* 7 Moore's Federal Practice § 33.173[3][a], at 33-93 (explaining that a responding party can sustain its burden only "by setting forth facts that demonstrate the extent and nature of the burden imposed by answering in affidavits or by supplying other evidence in support of its objections").

4

Plaintiff Blue Cross Blue Shield of Louisiana's ("BCBSLA's") assertion of undue burden is likewise unsound.  As an initial matter, BCBSLA's "burden in extracting answers to [defendants'] interrogatories" is not due to the nature of the interrogatories themselves, but "due to the inefficiency of its filing system." *Id.* § 33.173[3][b], at 33-94.  Notably, BCBSLA states that it has elected to distribute its pharmacy claims data across four databases, each of which BCBSLA has "stored on a different platform and operating system" and none of which is readily compatible with the others.  Declaration of Gayle M. Carpenter, dated June 4, 2007 (Dkt # 758) ¶¶ 4–6.  "To allow [BCBSLA] to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules." *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976); *see* 7 Moore's Federal Practice § 33.173[3][b], at 33-94 (same).

Furthermore, even if the Court were to accept BCBSLA's representations at face value, the magnitude of the burden that BCBSLA asserts—a three-month investment of an analyst's time to write and validate the relevant database queries, Carpenter Decl. ¶ 9—is trivial both in comparison to the magnitude of the recovery that class plaintiffs seek and in comparison to the millions of dollars of discovery-related costs that they have already required defendants to incur.  *See, e.g.*, *Roberts v. Heim*, 130 F.R.D. 424, 429 (N.D. Cal. 1989) (acknowledging that preparing answers to defendants' interrogatories would require plaintiffs "to expend a great deal of time and energy," but refusing to sustain undue burden objection because "Plaintiffs have brought a massive and complex class action and Defendants are entitled to know the factual basis for the claims which have been brought against them"); 7 Moore's Federal Practice § 33.173[3][b], at 33-94.

5

Plaintiff Harden Manufacturing ("Harden") resists discovery, and insists that defendants should obtain the information they have sought from Blue Cross Blue Shield of Alabama ("BCBSAL"), which maintains this information on Harden's behalf. A responding party, however, must "produce [information] in the hands of another company where the possessor was under a contractual obligation to provide the [information] to the [responding party]." *United States v. Stein*, No. S1 05 Crim. 0888 (LAK), 2007 U.S. Dist. LEXIS 31513, at *30 & n.46 (S.D.N.Y. May 1, 2007) (surveying civil case law and observing that this principle has been applied in a "wide variety of situations" and that patients have been compelled to produce documents in the hands of health care providers); *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 39 (D. Mass. 2001). Failure to observe this principle would be "patently unfair": "a litigant by contracting with a third party could nullify and evade the rules of procedure," "continuing to discover relevant information from [defendants] while relegating [defendants] to seek information from [the possessor] as a non-party." *Gordon Partners, et. al. v. Blumenthal* (*In re NTL, Inc. Sec. Litig.*), No. 02 Civ. 3013 (LAK) (AJP), 2007 U.S. Dist. LEXIS 6198, at *64–65 (S.D.N.Y. Jan. 30, 2007) (internal quotation marks omitted).

Finally, plaintiff ASEA states that it "has already provided Defendants with all of the prescription records of its insureds who were prescribed Neurontin" and that "Defendants will be able to make the requested calculations themselves." Defendants are not aware of having received any such records from ASEA. Following receipt of class plaintiffs' memorandum of law, defendants requested that ASEA identify the records that it purports to have provided. ASEA has not responded to defendants' request.

6

## CONCLUSION

For the foregoing reasons, defendants' Motion to Compel plaintiffs to respond to Defendants' Second Set of Interrogatories should be granted.

Dated: June 8, 2007

                DAVIS POLK & WARDWELL

                By:   /s/ James P. Rouhandeh
                       James P. Rouhandeh

                450 Lexington Avenue
                New York, New York 10017
                (212) 450-4000

                    - and -

                HARE & CHAFFIN

                By:   /s/ David B. Chaffin
                       David B. Chaffin

                160 Federal Street
                Boston, Massachusetts 02110
                (617) 330-5000

                *Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on June 8, 2007.

                                               /s/David B. Chaffin