# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEURONTIN
PRODUCT LIABILITY LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Index No. 765000/06

THIS DOCUMENT APPLIES TO:                      Hon. Marcy S. Friedman


     ALL CASES

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:   NEURONTIN MARKETING, SALES PRACTICES,
        AND PRODUCTS LIABILITY LITIGATION

                                                                MDL Docket No. 1629

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:                            Master File No. 04-10981

                                                             Judge Patti B. Saris

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HARDEN MANUFACTURING CORPORATION;        Magistrate Judge Leo T.
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,  Sorokin
dba BLUECROSS/BLUESHIELD OF LOUISIANA;
INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL
52 HEALTH BENEFITS TRUST; GERALD SMITH; and
LORRAINE KOPA, on behalf of themselves and all others
similarly situated, v. PFIZER INC. and WARNER-LAMBERT
COMPANY.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC. and

AETNA, INC. v. PFIZER INC.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' NOTICE OF DEPOSITION OF
## KAISER FOUNDATION HOSPITALS

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil

Procedure, Defendants Pfizer Inc. and Warner-Lambert Company, by and through their counsel,

will take the testimony by deposition upon oral examination, before a person authorized to

administer oaths, of Plaintiff Kaiser Foundation Hospitals ("Kaiser Hospitals").  The deposition

will be taken at the offices of Hare & Chaffin, 160 Federal Street, 23rd Floor, Boston, MA 02110,

on May 25, 2007, commencing at 9:30 a.m. The deposition will continue from day-to-day

thereafter until completion. Pursuant to Federal Rule of Civil Procedure 30(b)(6), Kaiser

Hospitals shall designate one or more officers, directors, managing agents, or other person or

persons who consent to testify on its behalf, who are most knowledgeable about and will testify

to the topics set forth in Schedule A.

The deposition will be transcribed by a certified court reporter and videotaped by

videographer. The contact person at Hare & Chaffin is David Chaffin, Esq. whose phone

number is (617) 330-5000. The videographer will be provided by G & M Court Reporters, 42

Chauncy Street, Boston, MA 02111.

You are invited to attend and to participate in the manner provided for in the Federal

Rules of Civil Procedure.

Dated: May 4, 2007                                PFIZER INC., et uno,

By their attorneys,

James P. Rouhandeh
Neal A. Potischman
Matthew B. Rowland

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- -and-

David B. Chaffin
BBO No. 549245
HARE & CHAFFIN
160 Federal Street

2

Boston, Massachusetts 02110
(617) 330-5000

3

## SCHEDULE A

### DEFINITIONS AND INSTRUCTIONS

1.      The definitions contained in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts are incorporated herein by reference. Additionally, the following definitions apply.

2.      "Plaintiff" or "Kaiser Hospitals" shall mean Kaiser Foundation Hospitals and any of its past or present trustees, officials, officers, fiduciaries, third-party administrators, representatives, assigns, employees, divisions, departments, directors, executives, predecessors or successors in interest, offices, subsidiaries, and affiliates.

3.      "You" or "your" means Kaiser Hospitals.

4.      "Pfizer" shall mean defendant Pfizer Inc. and any of its predecessors, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, or employees, including, but not limited to, Warner-Lambert and Parke-Davis, as a division of Warner-Lambert Company.

5.      "Warner-Lambert" shall mean Warner-Lambert Company LLC and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, or employees, including, but not limited to, Parke-Davis, as a division of Warner-Lambert Company.

6.      "Parke-Davis" shall mean Parke-Davis, a division of Warner-Lambert Company, and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, or employees.

4

7.      "Complaint" shall mean the Third Coordinated Amended Complaint, filed on December 22, 2006 in connection with MDL Docket No. 1629, Civil Action No. 04-10981-PBS, in the United States District Court for the District of Massachusetts.

8.      "Action" shall mean the proceeding pending in the United States District Court for the District of Massachusetts captioned *In re Neurontin Marketing, Sales Practices, and Products Liability Litigation*, 04-10981-PBS.

9.      "Neurontin" shall mean the drug with the chemical name gabapentin, and shall include both the product marketed under the name Neurontin as well as generic gabapentin.

10.      "Third-party payor" shall mean a non-governmental entity that is at risk, pursuant to a contract, policy, or plan providing prescription drug coverage to natural persons, to pay or reimburse the amount or some part of the amount associated with the cost of prescription drugs to those natural persons covered by such contract, policy, or plan.

11.      The term "covered individual" shall include the terms "participant," "beneficiary'" and "policy holder," and means persons for whom the Plaintiff provides health care benefits, health insurance coverage, and/or provides prescription drug benefits, including any covered dependents or household covered person of such persons.

12.      The term "provider" shall mean any physician, hospital, medical or health professional, pharmacy, or other person or entity that provides medical care.

13.      The term "benefit plan" shall mean the written document detailing a covered individual or group's insurance or benefit coverage, and shall include the terms "certificate of coverage," "certificate of insurance," "evidence of coverage," and "summary plan description."

5

14. The term "policy" shall mean the written document issued by a third-party payor to the policy owner, representing the written contract between the third-party payor and the policy owner, and describing the term, coverage, premiums, and deductibles.

15. The term "drug," unless otherwise indicated, shall mean a substance used in the diagnosis, treatment, or prevention of a disease or as a component of a medication, and shall include both prescription and non-prescription drugs.

16. The term "off-label" shall mean prescription, use, or promotion of a drug for indications or at dosages different from those set forth in a drug's labeling.

17. The term "claim" shall mean notification to an insurance company requesting payment of an amount due under the terms of the policy.

18. The term "formulary" shall mean the list of prescription drugs covered under a benefit plan or policy, as well as any written or electronic materials that accompany that list, including but not limited to preferred drug lists, tiered drug lists, information about co-payments, and information about FDA-approved and off-label uses.

19. "DRUGDEX" shall mean the proprietary reference service or product sold, licensed, or marketed by MICROMEDEX under the name DRUGDEX®.

20. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

21. "Any" includes the word "all" and vice-versa.

22. "Communication" shall have the meaning set forth in Local Rule 26.5, and includes the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

23.    "Concerning" shall have the meaning set forth in Local Rule 26.5, and includes referring to, describing, evidencing, or constituting.

24.    "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure and Local Rule 26.5, and includes all forms of writings as defined in Rule 1001(1) of the Federal Rules of Evidence, and includes any reduction to tangible form, whether written, recorded, taped, filmed, videotaped, or in computer, digital, or magnetic memory or storage, of communication, information, or data, including any graphic matter of any kind or nature, however produced or reproduced, and also includes originals, drafts, and non-identical copies, wherever located. "Document" shall include, but not be limited to, books, contracts, agreements, correspondence, electronic mail (email), computer tapes, discs, magnetic memory, printouts and keypunch cards, memoranda, diaries, notes, reports, bulletins, printed forms, telegraphic communications, pleadings or other legal papers, telexes, telegrams, telecopies, facsimile reproductions (faxes), factual compilations, data compilations, statistical compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work, graphics, checks, ledgers, catalogues, brochures, pamphlets, press releases, advertisements, invoices, minutes, photographs, microfilms, microfiche, films, personnel files, quotes, stenographic notes, computer disks, telephone records, schedules, bids, voice recordings, and transcriptions. This definition shall apply to all document in the possession, custody, or control of Kaiser Hospitals or that of its attorneys, agents, employees, officers, directors, or representatives, irrespective of who generated, prepared, or signed the documents.

25.    "Meeting" shall mean any formal or informal assembly, convocation, encounter or contemporaneous presence of two or more Persons for any purpose and shall include telephone conferences and calls.

26.    "Person" or "Persons" shall mean any individual, corporation, organization, association, partnership, limited partnership, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

27.    "Relating to" shall mean concerning.

B.    TOPICS

Each Topic encompasses the years from 1990 through the present.

1.    Your policies and practices concerning payment or reimbursement of claims for drug prescriptions generally, including: (a) claims processing and payment; (b) plan administration; (c) the use and content of formularies; (d) network contracting; (e) prior authorization; (f) drug utilization review and disease management; (g) academic detailing; and (h) claims for drug prescriptions for an off-label use.

2.    Your policies and practices concerning Neurontin, including: (a) payment or reimbursement of claims for Neurontin for off-label uses; (b) payment or reimbursement of claims for Neurontin for particular off-label uses; (c) the inclusion, maintenance, and removal of Neurontin on any formulary used, including any limits on Neurontin's coverage; (d) disease management and drug utilization review relating to Neurontin; (e) prior authorization programs relating to Neurontin; and (f) academic detailing relating to Neurontin.

3.      The names of all persons, business units, or entities (including third parties) that were responsible for supervising or implementing the policies and practices discussed in Topics 1 and 2.

4.      Your record retention policies and systems for hard copy and electronic documents relating to the policies and practices discussed in Topics 1 and 2.

5.      Any policies or practices that you had, and any determinations or efforts that you made, not to pay or reimburse for, or to limit payment or reimbursement of, claims for drug prescriptions for off-label uses generally and Neurontin specifically.

6.      Any policies or practices that you had relating to cost containment techniques, including but not limited to academic detailing, drug utilization review, drug limitations or quantity limits, prior authorization, or formulary management for prescription drugs generally and Neurontin specifically.

7.      Any analysis that you or your representatives or agents, including your third-party administrator(s) and pharmacy benefit manager(s), performed regarding whether Neurontin provides a medical benefit to patients who take it at off-label dosages or for pain, post-herpetic neuralgia, restless leg syndrome, diabetic peripheral neuropathy, social phobia, panic disorder, migraine headache, monotherapy for epilepsy, bipolar disorder, or any other off-label uses.

8.      Any conclusions or views that you or your representatives or agents, including your third-party administrator(s) and pharmacy benefit manager(s), have or had regarding whether Neurontin provides a medical benefit to, and may appropriately be prescribed by physicians for, patients who take it at off-label dosages or for pain, post-herpetic neuralgia,

9

restless leg syndrome, diabetic peripheral neuropathy, social phobia, panic disorder, migraine headache, monotherapy for epilepsy, bipolar disorder, or any other off-label uses.

9.      Any information that you have or had regarding whether any of your Members who took Neurontin for an off-label use or at an off-label dosage received or failed to receive any benefit from the drug.

10.      Any communications that you had with your third-party administrator(s), your pharmacy benefit manager(s), or any other persons or entities regarding Neurontin.

11.      Any communications that you had with your Members regarding Neurontin or off-label uses of medications.

12.      Any information that you have regarding what the uses were for Neurontin prescriptions for which you are seeking recovery.

13.      Any communications that you or any entity on your behalf had with Defendants regarding Neurontin or other prescription drugs.

14.      Any information that you have regarding whether the Neurontin prescriptions for which you are seeking recovery were written as a result of the alleged off-label promotion.

15.      Any information that you have regarding whether the alleged off-label promotion of Neurontin was fraudulent.

16.      Any information that you have regarding each of the allegations in the Third Coordinated Amended Complaint.

17.      When and how you first learned the alleged facts set forth in the Third Coordinated Amended Complaint and any efforts that you undertook, before you learned about these supposed facts, that would have led to their discovery.

10

18.    The damages that you are seeking in this action and the basis for your calculation of those damages.

19.    All efforts that you have taken to mitigate your damages, including any new procedures or practices that you adopted.

20.    Any information that you have regarding the civil action *United States of America ex rel. David Franklin v. Parke-Davis, et al.*, C.A. No. 96-11651-PBS (D. Mass.) or any government investigation into the off-label use or promotion of Neurontin.

21.    Your organizational structure.

22.    All efforts that you made to identify and produce documents responsive to each numbered request in the Defendants' First Request for the Production of Documents to Plaintiff Kaiser Foundation Hospitals, dated May 2, 2005, including but not limited to the production of Neurontin prescription drug claims data.

23.    Any information that you have regarding the issues raised by Defendants' Second Set of Interrogatories to Plaintiff Kaiser Foundation Hospitals, dated March 13, 2007, and plaintiff's responses thereto, dated April 12, 2007.

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of May 2007, I caused to be served a true and correct copy of the foregoing Notice of Deposition of Kaiser Foundation Hospitals by email PDF and first class U.S. Mail, postage prepaid, to:

Linda P. Nussbaum, Esq.
Kaplan Fox & Kilsheimer LLP
805 Third Avenue
New York, NY 10022

*Attorneys for Kaiser Foundation Hospitals*

Thomas M. Sobol, Esq.
Hagens Berman Sobol Shapiro, LLP
One Main Street
4th Floor
Cambridge, MA 02142

*Attorneys for Plaintiff Harden Manufacturing*
*Corporation and Plaintiffs' Liaison Counsel*

Andrew G. Finkelstein, Esq.
Finkelstein & Partners
436 Robinson Avenue
Newburgh, New York 12550

Jack W. London, Esq.
Law Offices of Jack London & Associates, P.C.
106 E. 6th Street, Suite 700
Austin, Texas 78701

*Members of the Products Liability Plaintiffs'*
*Steering Committee*

Matthew B. Rowland

12

# EXHIBIT 2



Kaplan Fox & Kilsheimer LLP
805 Third Avenue
New York, NY 10022
phone 212.687.1980
fax 212.687.7714
email mail@kaplanfox.com
www.kaplanfox.com

May 14, 2007

**VIA EMAIL AND FEDERAL EXPRESS**

Matthew B. Rowland
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

<strong>Re: In re Neurontin Marketing and Sales Practices Litigation, MDL<br>No. 1629 (PBS)</strong>

Dear Matt:

On Friday, May 4, 2007, certain coordinated plaintiffs received 30(b)(6) deposition notices. These plaintiffs included: Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, Aetna, Inc. and Guardian Life Insurance Company (the "Coordinated Plaintiffs"). The 30(b)(6) deposition notices listed 23 deposition topics, most of which were extremely broad. While some topics included in the 30(b)(6) deposition notices were appropriate, the Coordinated Plaintiffs object to other topics on various grounds.

Below are: (1) a list of topics to which the Coordinated Plaintiffs do not object; (2) a list of topics to which the Coordinated Plaintiffs will not object, so long as they are limited to Neurontin; (3) a list of topics to which the Coordinated Plaintiffs object, along with the basis for these objections; and (4) other objections to the deposition notices:

**I.      Topics To Which the Coordinated Plaintiffs Do Not Object**

Topics 2, 19, 20, 21, 22, and 23 are appropriate 30(b)(6) deposition topics, which are sufficiently narrow. The Coordinated Plaintiffs agree to produce the appropriate 30(b)(6) witness to testify regarding these topics.

**II.      Topics To Which the Coordinated Plaintiffs Will Not Object, So Long As They Are Limited To Neurontin**

The Coordinated Plaintiffs will agree to produce the appropriate 30(b)(6) witness to testify regarding certain topics, as long as those topics are limited to Neurontin. This

NEW YORK, NY          LOS ANGELES, CA          SAN FRANCISCO, CA

CHICAGO, IL          RICHMOND, VA          MORRISTOWN, NJ

**KAPLAN*FOX***

lawsuit only pertains to defendants' marketing and sales practices of Neurontin.
Accordingly, Topics 3, 4, 5, and 6 should be limited to Neurontin.  If these topics are
sufficiently limited to Neurontin, the Coordinated Plaintiffs will agree to produce
company representatives who can competently testify regarding these topics.

**III.    Other Topics To Which the Coordinated Plaintiffs Object**

**Topic 1**

Your policies and practices concerning payment or reimbursement of claims for
drug prescriptions generally, including:  (a) payment or reimbursement of claims
for Neurontin for off-label uses; (b) payment or reimbursement of claims for
Neurontin for particular off-label uses; (c) the inclusion, maintenance, and
removal of Neurontin on any formulary used, including any limits on Neurontin's
coverage; (d) disease management and drug utilization review relating to
Neurontin; (e) prior authorization programs relating to Neurontin; and (f)
academic detailing relating to Neurontin.

**Response to Topic 1**

The Coordinated Plaintiffs object to this topic as being overly broad, unduly
burdensome and irrelevant.  Topic 2 is a mirror image of Topic 1, except to the extent
that Topic 2 pertains specifically to Neurontin.  For this reason, the Coordinated Plaintiffs
do not object to Topic 2, but do object to Topic 1.

**Topic 7**

Any analysis that you or your representatives or agents, including your third-party
administrator(s) and pharmacy benefit manager(s), performed regarding whether
Neurontin provides a medical benefit to patients who take it at off-label dosages
or for pain, post-herpetic neuralgia, restless leg syndrome, diabetic peripheral
neuropathy, social phobia, panic disorder, migraine headache, monotherapy for
epilepsy, bipolar disorder, or any other off-label uses.

**Response to Topic 7**

The Coordinated Plaintiffs object to this topic as calling for information that is
protected by attorney-client privilege and work product.  In addition, to the extent this
topic calls for "any analysis", the Coordinated Plaintiffs object to this topic as being
beyond the scope of a 30(b)(6) deposition.  The purpose of a 30(b)(6) deposition is to
obtain information regarding the Company's practices, policies, procedures and/or
organizational structure.  Accordingly, this topic is inappropriate for a 30(b)(6)
deposition.

**KAPLAN*FOX***

**Topic 8**

Any conclusions or views that you or your representatives or agents, including your third-party administrator(s) and pharmacy benefit manager(s), have or had regarding whether Neurontin provides a medical benefit to, and may appropriately be prescribed by physicians for, parties who take it at off-label dosages or for pain, post-herpetic neuralgia, restless leg syndrome, diabetic peripheral neuropathy, social phobia, panic disorder, migraine headache, monotherapy for epilepsy, bipolar disorder, or any other off-label uses.

**Response to Topic 8**

The Coordinated Plaintiffs object to this topic as being beyond the scope of a 30(b)(6) deposition. *See* Response to Topic 7. To the extent that the topic calls for "conclusions or views" of the Company, it is beyond the scope of a 30(b)(6) deposition.

**Topic 9**

Any information that you have or had regarding whether any of your Members who took Neurontin for an off-label use or at an off-label dosage received or failed to receive any benefit from the drug.

**Response to Topic 9**

The Coordinated Plaintiffs object to this topic as being beyond the scope of a 30(b)(6) deposition. *See* Response to Topic 7. In addition, the Coordinated Plaintiffs object to this topic as being irrelevant. The Court has already ruled that the Coordinated Plaintiffs are not required to produce medical records, or other information regarding the particular uses of individual prescriptions for Neurontin. Since this topic would require an individual to testify regarding the Coordinated Plaintiffs' individual members taking Neurontin for off-label uses, the topic is irrelevant.

**Topic 10**

Any communications that you had with your third-party administrator(s), your pharmacy benefit manager(s), or any other persons or entities regarding Neurontin.

**Response to Topic 10**

The Coordinated Plaintiffs object to this topic as being beyond the scope of a 30(b)(6) deposition. *See* Response to Topic 7. To the extent this topic calls for "any communications", and not the policies or procedures regarding contacts between third-party administrators, pharmacy benefit manager(s) or others regarding Neurontin, it is an inappropriate topic for a 30(b)(6) deposition.

**KAPLAN*FOX***

**Topic 11**

Any communications that you had with your Members regarding Neurontin or off-label uses of medications.

**Response to Topic 11**

The Coordinated Plaintiffs object to this topic as being irrelevant. *See* Response to Topic 9.

**Topic 12**

Any information that you have regarding what the uses were for Neurontin prescriptions for which you are seeking recovery.

**Response to Topic 12**

The Coordinated Plaintiffs object to this topic as irrelevant. *See* Response to Topic 9.

**Topic 13**

Any communications that you or any entity on your behalf had with Defendants regarding Neurontin or other prescription drugs.

**Response to Topic 13**

The Coordinated Plaintiffs object to this topic as being overbroad, duplicative of discovery already served upon the Coordinated Plaintiffs, and beyond the scope of a 30(b)(6) deposition. The Coordinated Plaintiffs object that the topic is overbroad to the extent it calls for information not related to Neurontin. Furthermore, the Coordinated Plaintiffs object to the topic as being duplicative of discovery to which they have already responded. In response to Interrogatories 11 and 15 of Defendants' First Set of Interrogatories, the Coordinated Plaintiffs provided information regarding any communications they had with Defendants regarding Neurontin. This topic is also beyond the scope of a 30(b)(6) to the extent it calls for "communications" rather than practices, procedures or other topics that are appropriate for 30(b)(6) depositions. *See* Response to Topic 7.

**Topic 14**

Any information that you have regarding whether the Neurontin prescriptions for which you are seeking recovery were written as a result of the alleged off-label promotion.

**KAPLAN*FOX***

**Response to Topic 14**

The Coordinated Plaintiffs object to this topic as irrelevant. *See* Response to Topic 9.

**Topic 15**

Any information that you have regarding whether the alleged off-label promotion of Neurontin was fraudulent.

**Response to Topic 15**

The Coordinated Plaintiffs object to this topic as being beyond the scope of a 30(b)(6) deposition. *See* Response to Topic 7. Also, this topic is framed and better suited as a contention interrogatory, since it asks for information regarding the off-label promotion being "fraudulent". Accordingly, this topic is an inappropriate topic to be included in a 30(b)(6) deposition notice.

**Topic 16**

Any information that you have regarding each of the allegations in the Third Amended Complaint.

**Response to Topic 16**

The Coordinated Plaintiffs object to this object on grounds that it calls for information protected by the attorney-client privilege. Furthermore, this topic is beyond the scope of a 30(b)(6) deposition. *See* Response to Topic 7.

**Topic 17**

When and how you first learned the alleged facts set forth in the Third Amended Complaint and any efforts that you undertook, before you learned about these supposed facts, that would have lead to their discovery.

**Response to Topic 17**

The Coordinated Plaintiffs object to this topic on the ground that it is incomprehensive. It is unclear what information this topic is seeking. Defendants should clarify this topic so that the Coordinated Plaintiffs may determine if it is an appropriate topic for a 30(b)(6) deposition.

**Topic 18**

The damages that you are seeking in this action and the basis for your calculation of those damages.

**KAPLAN*FOX***

**Response to Topic 18**

The Coordinated Plaintiffs object to this topic on the grounds that it is duplicative of prior discovery and is an inappropriate topic for a 30(b)(6) deposition. Interrogatory No.16, included in Defendants' First Set of Interrogatories, asked the Coordinated Plaintiffs to identify "all damages you claim to have incurred, directly or indirectly, as a result of the allegations in your complaint. . ." In response to this Interrogatory, the Coordinated Plaintiffs stated that damages would be determined and demonstrated by expert testimony in this action. Accordingly, the Coordinated Plaintiffs will provide the basis for damages sought in this matter by way of expert testimony. Furthermore, this topic is inappropriate and beyond the scope of a 30(b)(6) deposition. *See* Response to Topic 7.

## IV.    Other Objections

**Time Period**

The 30(b)(6) deposition notices provide that the Coordinated Plaintiffs produce individuals who can testify regarding the time period 1990 to the present. The Coordinated Plaintiffs object to this extensive time frame on the basis that the allegations in the Third Consolidated Amended Complaint date back only to 1994, not 1990. Thus, there is no basis to provide information dating back to 1990. Furthermore, prior discovery served upon the Coordinated Plaintiffs only dated back to January 1, 1994, and not 1990. Accordingly, the Coordinated Plaintiffs object to the time period set forth in the deposition notices.

**"Most Knowledgeable"**

The 30(b)(6) deposition notices provide that each Coordinated Plaintiff designate the person "most knowledgeable" to testify regarding the topics set forth in the deposition notices. Rule 30(b)(6) of the Federal Rules of Civil Procedure does not require that an entity produce the person "most knowledgeable" to testify on its behalf regarding the topics in the deposition notice since an appropriate 30(b)(6) witness is not required to have direct or personal knowledge regarding these topics. Thus, the Coordinated Plaintiffs also object to producing witnesses who are the "most knowledgeable" about the topics set forth in the deposition notices. Instead, the Coordinated Plaintiffs agree to produce appropriate 30(b)(6) witnesses to testify regarding these topics.

**KAPLAN*FOX***

Finally, the Coordinated Plaintiffs request a meet-and-confer this week to discuss limiting the scope of these deposition notices in the ways set forth in this letter.

Very truly yours,

Aviah Cohen Pierson

cc:    Mark Sandmann, Esq.
       Gerald Lawrence, Esq.
       Linda P. Nussbaum, Esq.

7