UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------ x
                                                 :
In re:  NEURONTIN MARKETING, SALES PRACTICES,    :
        AND PRODUCTS LIABILITY LITIGATION        :
                                                 :
                                                 :
------------------------------------------------ x   MDL Docket No. 1629
                                                 :
THIS DOCUMENT RELATES TO:                        :   Master File No. 04-10981
                                                 :
ALL CLASS ACTIONS                                :   Judge Patti B. Saris
                                                 :
                                                 :
------------------------------------------------ x   Magistrate Judge Leo T.
                                                 :   Sorokin
HARDEN MANUFACTURING CORPORATION;                :
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,      :
dba BLUECROSS/BLUESHIELD OF LOUISIANA;           :
INTERNATIONAL UNION OF OPERATING ENGINEERS,      :
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL     :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and      :
LORRAINE KOPA, on behalf of themselves and all others :
similarly situated, v. PFIZER INC. and WARNER-LAMBERT :
COMPANY.                                         :
                                                 :
                                                 :
------------------------------------------------ x
```

# DEFENDANTS' POST-ARGUMENT SUBMISSION
# IN OPPOSITION TO CLASS CERTIFICATION

HARE & CHAFFIN
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

SHOOK, HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
(816) 474-6550

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

Plaintiffs' submission neither comes to grips with the critical issue in this case—causation—nor provides any evidence of a classwide fraud. At the certification hearing, the Court permitted plaintiffs to demonstrate, indication by indication, how the alleged fraud: (1) was uniform and managed from the "top-down;" and (2) caused off-label prescriptions of Neurontin. *See* Tr. at 67. Rather than come forward with such evidence, plaintiffs filed boilerplate, "summaries of their claims" that consist of allegations only and the promise of future expert testimony. Class Pls' Post-Argument Submission (Dkt #752) at 1. Plaintiffs' summaries all suffer from the same defects, and therefore defendants address them collectively and explain why the summaries cannot support class certification here.[1]

I. PLAINTIFFS CANNOT SOLVE THEIR FUNDAMENTAL PROBLEM WITH CAUSATION

    A.    <u>Plaintiffs Have Abandoned Any Attempt To Show Causation Individually</u>

Plaintiffs' claims are based on their allegation that "statements that Defendants made to prescribing physicians . . . were false and thus caused the physicians to prescribe Neurontin when they otherwise would not have." Pls' Obj. to Disc. Order No. 9 (Dkt #653) at 1. This theory requires numerous individualized determinations, including "whether an individual plaintiff's doctor received any [representations]," "whether he or she heeded those [representations]," and whether "each doctor's decision to prescribe [the medication] would have been different had defendants issued what would have been proper [representations]." *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 67 (S.D.N.Y. 2002), *cited with approval*, Report & Recommendation (Dkt

---

[1] In direct violation of the Court's order, plaintiffs' post-hearing submission exceeds thirty pages. *See* Tr. at 67 (requesting "an eight-page brief"). In doing so, plaintiffs submitted both (1) single-spaced, single-page summaries for each of their purported "eight off-label conditions" and (2) additional eight- and thirteen-page "summaries" for two of those "conditions." Dkt #752 at 1–2. Although plaintiffs contend that that these additional summaries are "more detailed" and "factual" and purport to quote from specific documents, plaintiffs do not cite to any record evidence. *Id.* at 2 & Ex. B. Defendants do not respond to these additional submissions here and respectfully request that if the Court chooses to consider them, that the Court require plaintiffs to resubmit the summaries with proper citations to the evidentiary record and permit defendants an opportunity to rebut the summaries and to respond with record evidence of their own.

#269) at 19, *adopted in relevant part*, *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 433 F. Supp. 2d 172, 196 (D. Mass. 2006). Recognizing that proving causation in this way would preclude class certification, plaintiffs expressly abandoned any individualized theory of causation at the May 4, 2007 class certification hearing. *See* Tr. at 31, 41.

      B.     <u>Plaintiffs' Fraud-on-the-Market Theory Is Without Legal or Factual Support</u>

In place of individual causation, plaintiffs at the hearing professed for the first time to be "hooking [their] stars" to a "fraud-on-the-market" theory of causation, *id.* at 15, 38, 42; a theory that they had explicitly and "repeatedly disclaimed" in their briefing papers. Pls' Reply Mem. of Law (Dkt #678) at 22. Plaintiffs' eleventh hour decision to embrace the fraud-on-the-market theory is somewhat understandable: the theory can relieve a securities fraud plaintiff of the burden of proving individualized causation stemming from a defendant's misstatement "by permitting a rebuttable presumption that the plaintiff relied on the 'integrity of the market price' which reflected that misstatement." *In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1, 7 (1st Cir. 2005). "Before an investor can be presumed to have relied upon the integrity of the market price," a plaintiff must first demonstrate that "the market [is] 'efficient.'" *Id.* at 7. The First Circuit has held that without such a showing—which the plaintiff must make at the class certification stage—"there is no assurance that the market price was affected by the defendants' alleged misstatement at all" and "[i]nstead, the price may reflect information wholly unrelated to the misstatement." *Id.* at 8, 17–18; *see also Oscar Private Equity Inv. v. Allegiance Telecom*, __ F.3d. __, 2007 WL 1430225, at **2–7 (5th Cir. May 16, 2007). It is not enough for a plaintiff to assert that "market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices." *In re Polymedica*, 432 F.3d at 10 (vacating and remanding where district court adopted this definition of market efficiency). Instead, the fraud-on-the-market theory only applies, and certification of a securities class based

on the theory is only appropriate, where plaintiffs can show that the market "price fully reflects *all* publicly available information." *Id.*

Plaintiffs' newfound reliance on this doctrine ignores the fact that "[n]o court has accepted the use of this theory outside of the context of securities fraud." *Summit Prop. Inc. v. Hoechst Celanese*, 214 F.3d 556, 561 (5th Cir 2000); *see Appletree Square v. W.R. Grace*, 29 F.3d 1283, 1287 (8th Cir. 1994). In addition, a number of courts have specifically concluded that the "market" for information concerning the efficacy of prescription drugs is not efficient and that fraud-on-the-market theories are therefore inapplicable. *See, e.g.*, *Prohias v. Pfizer*, __ Fed. Supp. 2d. ___, 2007 WL 1228784, at *6 (S.D. Fla. Apr. 24, 2007); *Heindel v. Pfizer,* 381 F. Supp. 2d 364, 380 (D.N.J. 2004); *N.J. Citizen Action v. Schering-Plough,* 842 A.2d 174, 177–79 (N.J. Super. Ct. App. Div. 2003). Likewise, plaintiffs in litigation involving medical devices have repeatedly argued, as plaintiffs do here, that prescribing physicians' reliance on alleged misrepresentations should be presumed because of medical device manufacturers' widespread marketing efforts. Federal courts have repeatedly rejected such a theory. *See Coleman v. Danek Med.*, 43 F. Supp. 2d 629, 635 n. 4 (S.D. Miss. 1998); *Baker v. Danek Med.*, 35 F. Supp. 2d 865, 874 (N.D. Fla. 1998).

Plaintiffs' reliance on a fraud-on-the-market theory is particularly ill-founded here because they have offered no expert testimony that the market for prescription medication is efficient. Indeed, defendants' experts have testified—and plaintiffs' experts have conceded—that it is not. *See* Report of Michael Keeley (Ex. 19, Dkt # 586) at ¶¶ 32–42; Report of Dr. Pradeep K. Chintagunta (Ex. 18, Dkt # 586) at ¶ 31; Deposition of Meredith Rosenthal (Ex. 16, Dkt #586) at 262. The fraud-on-the-market theory therefore fails here, not only as a matter of law but also as a factual matter.

C. *Aspinall* Is Legally and Factually Distinguishable

Asked at oral argument to identify a case that supported their contention that individual issues raised by the need to prove causation do not bar certification, plaintiffs could point only to the Massachusetts Supreme Judicial Court's decision in *Aspinall v. Philip Morris Cos.*, 442 Mass. 381 (2004). *Aspinall*, however, was decided under M.G.L. c. 93A, § 9(2), which unlike Federal Rule 23(b)(3), has no predominance requirement. *Baldassari v. Public Fin. Trust*, 369 Mass. 33, 40 (1975); *see Aspinall*, 442 Mass. at 391 (recognizing that G.L. c. 93A, § 9(2) and Federal Rule 23 "differ[] in significant respects" (citing *Baldassari*, 369 Mass. at 40)). As a result, the *Aspinall* Court was able to disregard individual questions of causation that would have precluded class certification under Federal Rule 23(b)(3). *See Aspinall*, 442 Mass. at 407 n.8 (Cordy, J., dissenting) ("Because the plaintiff class in this case does not need to demonstrate the predominance of common issues of fact or law, the necessity of individual proof concerning smoking behavior would not foreclose certification."). *Aspinall* simply has no bearing here given the critical differences between Federal Rule 23 and Mass. Gen. Laws c.93A, section 9(2).

*Aspinall* also could not be more different factually. *Aspinall* involved a single misrepresentation printed on product packaging that was presented to *every* member of the proposed class before he or she purchased Marlboro Lights. *See* 442 Mass. at 385. Unlike the case at bar, which both parties agree involves a host of alleged oral and written statements and research studies relating to a broad range of uses and treatment regimens made over several years in a variety of different contexts, *Aspinall* involved an *invariant* state of knowledge regarding the subject matter at issue and a single, uniform, written statement received by every member of the class. *See id.* at 397–402.

Moreover, defendants' pharmaceutical marketing expert has demonstrated that "there is considerable variation in the impact of marketing activities across physicians," and that it is

4

therefore inappropriate to assume "that all physicians are influenced by marketing activities or that they are influenced to the same extent." Chintagunta Report (Ex. 15, Dkt #586) at ¶ 31. The putative class representatives' own prescribing physicians amply support this contention, having testified that they prescribed Neurontin off-label for reasons wholly unrelated to the allegedly fraudulent conduct. *See* Defs' Opp'n (Dkt #585) at 7–8, 10. Plaintiffs, meanwhile, rather than produce any evidence to the contrary, have in fact *acknowledged* that "different physicians may be exposed to differing levels of promotional activity" and that "two physicians exposed to the same level of promotional activity may respond differently." Pls' Reply (Dkt #678) at 19. This concession, standing alone, eviscerates plaintiffs' request to apply the fraud-on-the-market theory to this case, under *Aspinall* or otherwise.

## II. PLAINTIFFS' ALLEGED FALSE MESSAGES CANNOT SUPPORT CERTIFICATION

Plaintiffs' purported standard messages are likewise insufficient for class certification. Plaintiffs' first allegedly uniform message—that Neurontin was "an effective treatment" for that indication—impermissibly seeks to resurrect a general theory of fraud that this Court has previously rejected as not actionable. *See* Report & Recommendation (Dkt #269) at 43–46. The other alleged fraudulent message—that "existing medical evidence . . . supports the use of Neurontin" for that indication—was rejected because plaintiffs failed to plead it in their complaint. *Id.* at 48. Indeed, the Magistrate Judge has previously observed that "the only viable theories of fraud are (a) that Defendants misrepresented the results of scientific studies; and (b) that Defendants fraudulently failed to disclose the existence of negative clinical evidence with regard to a particular indication." Disc. Order No. 3 (Dkt # 393) at 1; *see also In re Neurontin*, 433 F. Supp. 2d at 184.

Even putting aside the foregoing, the problems inherent in plaintiffs' allegedly uniform messages are fatal. Each of the allegedly "Standard False Messages" that plaintiffs identify is

5

expressed so broadly that it encompasses both actionable and non-actionable statements about the off-label use of Neurontin. In particular, defendants have submitted unrebutted evidence that numerous high-quality, scientific studies—including evidence from randomized controlled trials—support the use of Neurontin for each of the "off-label conditions" at issue.[2] Accordingly, given the existence of this scientific and medical evidence (the existence of which plaintiffs do not and cannot dispute), plaintiffs have not overcome the insurmountable difficulty of distinguishing between (i) entirely lawful dissemination of off-label information; (ii) non-fraudulent off-label promotion; and (iii) allegedly fraudulent misstatements regarding off-label uses. Nor can plaintiffs separate prescriptions attributable to truthful information from prescriptions allegedly caused by statements that they claim were fraudulent. Indeed, plaintiffs' own economic expert has conceded that, even on an aggregate basis, she cannot separate the impact of allegedly fraudulent statements from the impact of contemporaneous truthful statements. *See* Rosenthal Dep. (Ex. 16, Dkt #586) at 668 (acknowledging that her estimates would capture effects of "both the legitimate activity and the allegedly unlawful activity"). In sum, plaintiffs do not and cannot offer a way to prove causation consistent with the dictates of Rule 23(b)(3). The basis for each physician's decision to prescribe Neurontin is a quintessentially individual issue that simply is not susceptible to classwide adjudication.

III. PLAINTIFFS HAVE NOT PROVIDED ANY EVIDENCE TO SUPPORT CERTIFICATION

As defendants previously explained, certification is a "demanding inquiry" requiring a "rigorous analysis of the prerequisites established by Rule 23 before certifying a class." *In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1, 4 n.5 & 5–6 (1st Cir. 2005) (quotations omitted).

---

[2] Report of Dr. Shawn J. Bird (Ex. 21, Dkt #586); Report of Dr. Samuel Potolicchio (Ex. 22 Dkt #586); Report of Dr. Alan Rapaport (Ex. 23, Dkt #586); Report of Dr. Andrew Slaby (Ex. 24, Dkt #586).

Plaintiffs cannot carry their burden at class certification to demonstrate that common issues will predominate simply by *alleging* that defendants conveyed fraudulent statements to physicians. *See Szabo v. Bridgeport Machs.*, 249 F.3d 672, 674–677 (7th Cir. 2001) (reversing certification based on "incontestable allegations").  Indeed, plaintiffs still cannot point this Court to *any* specific evidence of a uniform, fraudulent misstatement about the off-label use of Neurontin, let alone a statement that was uniformly conveyed to all of the putative class members' physicians during the course of the entire putative class period.

Plaintiffs' submission is also utterly devoid of any response to the Court's request that plaintiffs provide "the common evidence that you'd have and how do you prove, on your theory, that this is an *Aspinall* kind of situation." Tr. at 69.  Plaintiffs simply point to charts showing a rise in the number of off-label prescriptions of Neurontin and allege baldly that "[p]laintiffs will establish through documentary evidence as well as expert testimony that Defendants' national, uniform campaign pervaded the market and was a substantial contributing factor to virtually every prescription for Neurontin to treat [insert indication] from [insert year] forward." Class Pls' Post-Argument Submission (Ex. A, Dkt # 752) at 2–8.[3]  But plaintiffs' claims are not entitled to certification based on the assertion that future, unspecified documentary evidence and expert testimony will demonstrate causation, especially given the undisputed fact that truthful off-label information and prescribing physicians' own positive experiences with Neurontin caused extensive off-label use.  *In re Polymedica*, 432 F.3d at 5–6; *see In re IPO Sec. Litig.*, 471 F.3d 24, 32–41 (2d Cir. 2006); *Kennett Corp. v. Mass Furniture & Piano Movers Ass'n, Inc.*, 101 F.R.D. 313, 317 (D. Mass. 1984); *see also Sandwich Chef of Tex. v. Reliance Nat'l Indem.*

---

[3] The United States, in its case involving the off-label promotion of Neurontin, did not claim that "virtually every" off-label prescription of Neurontin was the product of Warner-Lambert's marketing.  *See* Sentencing Mem. of the United States in *United States v. Warner-Lambert Company LLC*, 04-10150 (D. Mass) at 49-50 & Ex. A (stating that approximately 50% of Neurontin's off-label use was not attributable to any conduct by defendants).

*Ins. Co.*, 319 F.3d 205, 211, 220–24 (5th Cir. 2003) (reversing certification where defendants had come forward with evidence rebutting plaintiffs' putative classwide theories and demonstrating individualized nature of causation inquiry).

IV. PLAINTIFFS DO NOT OFFER REPRESENTATIVES FOR EACH OFF-LABEL USE

Plaintiffs' submission confirms once again that their claims relate to only "eight" "off-label conditions." Class Pls' Post-Argument Submission (Dkt #752) at 1 & Ex. A. Plaintiffs have no claims on behalf of those who received or paid for Neurontin for any other uses. Plaintiffs' submission also clarifies that each of these eight off-label uses would have its own separate and distinct class period. For instance, plaintiffs concede that the class period for their "neuropathic pain" subclass would not commence until "2000." *Id.* at Ex. A, 2. The class period for their "migraine prophylaxis" subclass, meanwhile, would not begin until "1996." *Id.* at Ex. A., 3. Ignoring the foregoing, plaintiffs fail to provide class representatives for each of the eight uses. Plaintiffs' putative class representatives, Mr. Smith and Ms. Kopa, received Neurontin for only two of the eight off-label conditions: neuropathic pain and migraine prophylaxis. Even if it could be said that Mr. Smith and Kopa raise typical claims and are adequate representatives for other consumers who received Neurontin for these two uses—and it cannot—neither can hope to advance the claims or represent the interests of consumers who received Neurontin for completely different uses.

## **CONCLUSION**

For the foregoing reasons, and those set forth previously in defendants' opposition and sur-reply, plaintiffs' motion should be denied.

Dated:   June 15, 2007

        DAVIS POLK & WARDWELL

        By:  /s/James P. Rouhandeh
              James P. Rouhandeh
              Neal A. Potischman
              Edmund Polubinski III
              Carter H. Burwell
              Rajesh S. James
              Paul S. Mishkin
              Matthew B. Rowland

        450 Lexington Avenue
        New York, New York  10017
        (212) 450-4000


        HARE & CHAFFIN

        By:  /s/David B. Chaffin
              David B. Chaffin

        160 Federal Street
        Boston, Massachusetts 02110
        (617) 330-5000


        SHOOK, HARDY & BACON L.L.P.

        By:  /s/ Scott W. Sayler
              Scott W. Sayler
              James P. Muehlberger
              Nicholas P. Mizell

        2555 Grand Boulevard
        Kansas City, Missouri 64108
        (816) 474-6550


        *Attorneys for Defendants Pfizer Inc. and*
        *Warner-Lambert Company*

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on June 15, 2007.

                                          /s/David B. Chaffin