UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
IN RE NEURONTIN MARKETING, SALES    )
PRACTICES, AND PRODUCTS LIABILITY   )
LITIGATION                          )   MDL Docket No. 1629
_____)   Master File No. 04-10981
                                    )
THIS ORDER RELATES TO:              )   Judge Patti B. Saris
                                    )   Mag. Judge Leo T. Sorokin
ALL ACTIONS                         )
_____)

Discovery Order No. 12

June 25, 2007

SOROKIN, M.J.

The Court hereby makes the following rulings and orders on the matters before the Court at the June 12, 2007 Motion Hearing.

    1.        Emergency Motion to Compel (Docket #759)

As a result of the briefing on this Motion and the oral Order entered by the Court as to Plaintiff Aetna, all of the Coordinated Plaintiffs have provided proposed dates to Defendants for 30(b)(6) depositions. Two issues remain. Kaiser wants its 30(b)(6) depositions to occur in California, while Defendants want them in New York or Boston. Under CMO 5 (Docket #736), "[d]epositions of Plaintiffs shall take place in the district in which Plaintiffs filed their actions unless otherwise agreed by the parties." Id., at 3. Accordingly, Kaiser shall, by June 27, 2007, provide Defendants dates for 30(b)(6) deponents to appear in Boston prior to the close of discovery. The parties remain free, of course, to agree to conduct these depositions in New York or California.

1

Defendants request relief from the rule requiring 21 days advance notice for scheduling a deposition because their 30(b)(6) depositions of the Coordinated Plaintiffs may lead to further deposition notices. The Court appreciates that the need for follow-up depositions might reasonably arise and that the 21 day rule might interfere with the noticing of such depositions as the date for concluding fact depositions approaches. However, at this time, that situation has not arisen. Defendants' request is DENIED WITHOUT PREJUDICE.

Accordingly, the Emergency Motion to Compel is ALLOWED IN PART AND DENIED IN PART.

2. <u>Defendants' Motion to Compel Discovery From Plaintiffs (Docket #753)</u>

Defendants served Interrogatories on the Third Party Payor Plaintiffs asking for the number and percentage of the Plaintiff Third Party Payors' members ("Members") prescribed Neurontin each year who were also prescribed either (a) an arguably cheaper more optimal drug than Neurontin or (b) one of the drugs commonly used to treat certain conditions (e.g. bipolar). Docket #754-2 at 6-7. These interrogatories do not seek individual patient data. One Interrogatory, No. 3, does seek Member level data, but no data identifying the Members. It asks Plaintiffs, for each Member prescribed Neurontin, to specify the dosage and number of prescriptions filled with the arguably cheaper more optimal drugs. Plaintiffs object to producing any of this data arguing that the requests are precluded by Judge Saris' electronic Order dated September 27, 2006, and also citing undue burden and a limited probative value of the information sought. Defendants have moved to compel.

Plaintiffs take the position that Judge Saris' ruling precludes any litigation of effectiveness other than on the level of aggregate industry data. However, Judge Saris required,

to the extent reasonably available, the Plaintiffs to produce a breakdown of Neurontin prescriptions, e.g. what percent for bipolar etc., from the Plaintiffs' own prescription claims data. Now, Defendants seek some additional prescription claims data from the Plaintiffs regarding the Members that received Neurontin prescriptions.  All but one of the Interrogatories seeks aggregate data from each Plaintiff.  The only Interrogatory seeking Member level data (#3) does not seek any patient identifying information at all.  Notably, most of the Plaintiffs do not oppose the Motion on either HIPAA or patient privacy grounds.[1]   In short, for these reasons, and, as explained below, because the discovery is relevant to the expert analysis,  the discovery is permissible.

Furthermore, the Defendants plainly seek the discovery to aid in the expert phase of the case.  Paper discovery closed April 30, 2007 (Defendants' request, filed prior to the close of paper discovery is timely and Plaintiffs have not contended otherwise).  The period of fact depositions closes July 14, 2007.  Obviously, Defendants will not receive the Interrogatory responses until after the fact depositions nor have they requested production in advance of that deadline.

Defendants may be able to use the data with their own experts or in examining the Plaintiffs' experts.  The type of aggregate data they seek is relevant to effectiveness.  For example, the percent, in a given calendar year, of persons receiving Neurontin who also received another common drug for bipolar is relevant to the claim that cheaper and more optimal drugs

---

[1] Two Class Plaintiffs, in a footnote, contend that responding to Request No. 3 would violate HIPAA by the nature of the longitudinal data sought.  However, given the spareness of the information sought and the limited nature of the objection, I do not find the Interrogatory poses HIPAA concerns.

3

existed. It is also relevant to damages issues. As framed by the Interrogatories, the information sought may not be the most probative information, but that is not the test for discovery.

Interrogatory No. 3 seeks, for each Member prescribed Neurontin, the number of prescriptions filled for each of the "cheaper more optimal" drugs as well as the dosage levels. This information is at least relevant to damages and is also relevant to the analysis by the experts. It does not open the door to patient level discovery on the effectiveness issue; the period for paper discovery is closed and the period for fact depositions will close prior to the production of these responses. Nor does this Interrogatory require or result in a determination of effectiveness on a patient by patient or prescription by prescription level.

Essentially, the Interrogatories require the Plaintiffs to cross-reference Neurontin prescription claims data with prescription claims data for certain other drugs. One of the Plaintiffs indicated it had prepared this information well prior to Judge Saris' Order, but inadvertently omitted it from an earlier production. Obviously, production now poses no burden for this Plaintiff (ASEA) and none has been suggested. One of the Plaintiffs produced an affidavit explaining that the cross-referencing process would involve several vendors using several different computer systems over the years. According to the affidavit, gathering the information would require writing a data mining algorithm which would take six months. That task, however, is not an unusual or particularly burdensome one, especially in a case of this scope and complexity and the absence of any explanation of either the cost of writing the algorithm or the reason the process would take six months. Thus, on this record, the affidavit fails to establish that the information is not reasonably available. The discovery does relate to some of the central issues in the case. None of the other Plaintiffs, while asserting burden,

provided either an affidavit or even an articulation of the burdens in their pleadings.  Thus, in light of the provisions of Fed. R. Civ. P. 26 and the considerations set out therein, I ALLOW the Motion.

The Motion to Compel is ALLOWED.  Plaintiffs shall respond to the Interrogatories by July 30, 2007.

SO ORDERED.

/s/ Leo T. Sorokin
_____
United States Magistrate Judge