# EXHIBIT A

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

| SOUTHERN | DISTRICT OF | NEW YORK |

| IN RE NEURONTIN MARKETING AND SALES PRACTICE LITIGATION | SUBPOENA IN A CIVIL CASE |

MDL Docket No. 04-MDL-1629

Master File No. 04-10981 (D. Mass)

TO: Keeper of the Records
Sudler & Hennessey
230 East Park Avenue South
New York, New York

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list document or objects):

All documents listed on Schedule A attached.

| PLACE | DATE AND TIME |
| Bernstein Liebhard & Lifshitz, LLP<br>10 East 40th Street<br>New York, NY 10016 | May 31, 2005<br>at 9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| *[signature]* | 5-10-05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jeff S. Gibson, Cohen & Malad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204          (317) 636-6481

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

### Definitions

The definitions contained in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts are incorporated herein by reference. Additionally, the following definitions apply to this Schedule:

1. "AED" shall mean anti-epileptic drug or all drugs of the ant-epileptic drug class.

2. "And" includes the word "or" and vice-versa.

3. "Any" includes the word "all" and vice-versa.

4. "Sudler & Hennessey" shall mean Sudler & Hennessey, and includes any predecessor or successor in interest, division, office, subsidiary, and affiliate thereof, or any present or former director, officer, partner, executive, trustee, employee, agent, attorney, representative and any other Person acting or purporting to act on its behalf, and includes any and all divisions including IntraMed.

5. "CME" shall mean continuing medical education.

6. "Communication" shall have the meaning set forth in Local Rule 26.5.

7. "Concerning" shall have the meaning set forth in Local Rule 26.5.

8. "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure, and Local Rule 26.5, and includes all forms of writings as defined in Rule 1001(1) of the Federal Rules of Evidence, and includes any reduction to tangible form, whether written, recorded, taped, filmed, videotaped or in computer, digital or magnetic memory or storage, of communication, information, or data, including any graphic matter of any kind or

nature, however produced or reproduced, and also includes originals, drafts, and non-identical copies, wherever located. "Document" shall include, but not be limited to, books, contracts, agreements, correspondence, electronic mail (email), computer tapes, discs, magnetic memory, printouts and keypunch cards, memoranda, diaries, notes reports, bulletins, printed forms, telegraphic communications, pleadings and other legal papers, notes, telexes, telegrams, telecopies, facsimile reproductions, or "faxes," factual compilations, data compilations, statistical compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work, graphics, checks, ledgers, catalogues, brochures, pamphlets, press releases, advertisements, invoices, minutes, photographs, microfilms, microfiche, films, personnel files, quotes, stenographic notes, computer disks, telephone records, schedules, bids, voice recordings, and transcriptions. This definition shall apply to all Documents in the possession, custody or control, of the Defendant herein, or that of its attorneys, agents, employees, officers, directors, or representatives, irrespective of who generated, prepared or signed the Documents.

9. "Event" shall mean any conference, symposium, seminar, dinner meeting, dinner, meal, advisory board meeting, consultant meeting, speaker bureau, speaker event, speaker training, CME, conference call, teleconference, trip, or weekend getaway attended by physicians.

10. "Including" shall mean including, without limitation, the specific matter or Documents described.

11. "Neurontin" shall mean the drug with the chemical name gabapentin, marketed under the name Neurontin, and includes all uses or indications thereof.

12. "Neurontin Litigation" shall mean any state or federal lawsuit, litigation concerning the marketing of Neurontin, including but not limited to <u>United States of America ex rel. David Franklin v. Parke-Davis, division of Warner-Lambert Company</u>, Civil Action No. 96-11651-PBS

(United States District Court for the District of Massachusetts), and In re Neurontin Marketing and Sales Practices Litigation, MDL 1629, and all actions transferred or consolidated thereunder.

13. "Parke-Davis" shall mean Parke-Davis, a division of Warner-Lambert Company, and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf.

14. "Person" or "Persons" shall mean any individual, corporation, organization, association, partnership, limited partnership, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

15. "Pfizer" shall mean Pfizer, Inc. and any of its predecessors or successors in interest divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf.

16. "Relating to" shall mean constituting, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, pertaining to, or having any logical or factual connection with the matter identified, in whole or in part.

17. "Warner-Lambert" shall mean Warner-Lambert Company and any of its predecessors or successors in interest divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf, and includes, but not limited to, its division, Parke-Davis.

Instructions

1.  In the event that any Document called for by this Document Request is withheld on the basis claim of privilege, that Document is to be identified as follows: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, the present custodian, and the nature of the privilege asserted.

2.  In the event that any Document called for by this Document Request has been destroyed, discarded, otherwise disposed of, or no longer exists, that Document is to be identified as completely as possible, including, without limitation, the following information: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, Person authorizing the disposal, the Person disposing of the Document, and identify its last known location and the reason it is no longer in existence.

3.  In the event that any information is redacted from a Document produced pursuant to this Document Request, that information is to be identified and the basis upon which such information is redacted be fully stated.

4.  In construing this Document Request, the singular shall include the plural and the plural shall include the singular.

5.  Unless otherwise stated, the relevant time period for this request shall be from January 1, 1994 to the present.

## DOCUMENTS REQUESTED

REQUEST NO. 1.:

A copy of all documents that were produced either directly or indirectly to the United States Attorneys Office in Boston, MA and which are referred to in the Letter from Eric T. Gordon to Sara Bloom dated April 17, 2003 and again in the Letter from Eric T. Gordon to Sara Bloom dated June 4, 2003. See Exhibit 1, attached hereto.

REQUEST NO. 2.:

To the extent not requested in Request No. 1, a copy of all documents produced to any party in connection with Neurontin Litigation.

REQUEST NO. 3:

Each engagement letter, letter agreement, memorandum of understanding, letter of intent, or contract, whether executed or otherwise, including any proposal, draft or addendum thereof, which creates, modifies, refers to, describes, or terminates the rights, duties, or services to be performed between Sudler & Hennessey on one hand and either Warner-Lambert or Pfizer, on the other hand, concerning Sudler & Hennessey's furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physicians communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management service relating to Neurontin.

REQUEST NO. 4:

Documents sufficient to show each payment to Sudler & Hennessey from Pfizer or Warner-Lambert concerning, whether in whole or in part, Sudler & Hennessey's furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training,

consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 5:**

Copies of each invoice submitted by Sudler & Hennessey to Warner-Lambert or Pfizer concerning Sudler & Hennessey's furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 6:**

Copies of each budget estimate, proposal or grant request submitted by Sudler & Hennessey. to Warner-Lambert or Pfizer concerning Sudler & Hennessey's furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 7:**

Documents sufficient to show each payment made by Sudler & Hennessey. to any Person on behalf of, at the direction of, for, or for the benefit of Pfizer or Warner-Lambert concerning Sudler & Hennessey's furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

REQUEST NO. 8:

All correspondence or communications between Sudler & Hennessey and any Person concerning Sudler & Hennessey's furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

REQUEST NO. 9:

Documents sufficient to show each Event, which was coordinated, prepared, managed, arranged, coordinated, sponsored, or hosted by Sudler & Hennessey, where Neurontin was discussed.

REQUEST NO. 10:

Documents sufficient to show each non-CME Event, which was coordinated, prepared, managed, arranged, coordinated, sponsored, or hosted by Sudler & Hennessey, where Neurontin was discussed.

REQUEST NO. 11:

Documents sufficient to show each CME, which was coordinated, prepared, managed, arranged, coordinated, sponsored, or hosted by Sudler & Hennessey and which was sponsored in whole or in part by Pfizer or Warner-Lambert, where Neurontin or AEDs were discussed.

REQUEST NO. 12:

All documents that discuss Neurontin's use, efficacy or mechanism of action for any indication, which were drafted, edited, written or prepared by Sudler & Hennessey or any technical or medical writers working for or retained by Sudler & Hennessey, including but not

limited to journal articles, letters to the editors, manuscripts, abstracts, syllabi, presentation slides, workbooks, telephone or teleconference scripts, monographs, or posters.

REQUEST NO. 13:

All documents that discuss, summarize, track, monitor, record, or reflect actual or estimated amount, number or volume Neurontin prescriptions written by physicians.

REQUEST NO. 14:

All documents received from Pfizer or Warner-Lambert relative to or concerning Neurontin's use, efficacy or mechanism of action.

REQUEST NO. 15:

All documents received from Pfizer or Warner-Lambert relative to or concerning Neurontin or the marketing, advertising, promotion, medical education, or dissemination of information relating to Neurontin.

REQUEST NO. 16:

All documents that describe, reflect, or refer to the labeling of Neurontin, or any stated, suggested, intended, off-label, emerging or investigational use thereof.

REQUEST NO. 17:

Copies of all videotapes, audiotapes, transcripts, discussion notes, invitations, brochures, agendas, speaker lists, attendee lists, physician, completed attendee or participant feedback forms, completed attendee evaluation forms, and consultant agreements, for each Event, funded in whole or in part by Pfizer or Warner-Lambert, were Neurontin was discussed

REQUEST NO. 18:

For each Event funded or sponsored, whether in whole or in part, by Pfizer or Warner-Lambert where Neurontin or other AEDS were discussed, all documents concerning or

1

Case 1:04-cv-10981-PBS    Document 774-2    Filed 06/29/2007    Page 12 of 17

## DAVIS & GILBERT LLP
### 1740 BROADWAY
### NEW YORK, NEW YORK 10019
### (212) 468-4800

DIRECT DIAL NUMBER
(212) 468-4879
EMAIL ADDRESS
egordon@dglaw.com

MAIN FACSIMILE
(212) 468-4888
PERSONAL FACSIMILE
(212) 974-7048

June 4, 2003

**BY FACSIMILE**

Sara Bloom, Esq.
U.S. Attorney's Office
John J. Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210

Re: *United States ex rel. Franklin v. Parke-Davis*,
No. 96-11651-PBS (D. Mass)

Dear Sara:

By letters dated April 17, 2003, I authorized you to provide Mr. Ilyas Rona and other attorneys from Greene & Hoffman access to the documents produced to your office by Sudler & Hennessey and Cline Davis & Mann (the "Documents"). Although not specified in my original letters, such authorization included the inspection of Documents in the form of slides, audiotapes, videotapes and electronic media. This letter further authorizes attorneys from Greene & Hoffman to make copies of the Documents. Kindly coordinate with the Greene & Hoffman attorneys to ensure that the originals are returned immediately to your office once the copies have been made.

Very truly yours,

Eric T. Gordon

c: Michael Tabb, Esq. (via facsimile)

Apr-17-2003  06:51am  From-DAVIS & GILBERT    2124684888    T-806  P.003/006  F-299

## DAVIS & GILBERT LLP
### 1740 BROADWAY
### NEW YORK, NEW YORK 10019
### (212) 468-4800

DIRECT DIAL NUMBER
(212) 468-4879
EMAIL ADDRESS
egordon@dglaw.com

MAIN FACSIMILE
(212) 468-4888
PERSONAL FACSIMILE
(212) 674-7049

April 17, 2003

**BY FEDERAL EXPRESS**

Sara Bloom, Esq.
U.S. Attorney's Office
John J. Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210

Re:  *United States ex rel. Franklin v. Parke-Davis,*
     No. 96-11651-PBS (D. Mass)
     Proworx Subpoena

Dear Sara:

I spoke with Ilyas Rona of Greene & Hoffman earlier today by telephone regarding the original documents (the "Documents") that will be produced to you on behalf of Cline Davis & Mann in response to your subpoena. Mr. Rona and I agreed that he and his firm should be granted access to the Documents. Accordingly, this letter authorizes you to provide Mr. Rona and other attorneys from Greene & Hoffman access to the Documents that you will receive shortly, with the limitation that Documents shall remain in your custody until they are returned to Sudler & Hennessey.

Very truly yours,

Eric T. Gordon

c:   Ilyas Rona, Esq. (via facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Subpoena and attached Schedule A have been served upon the following counsel of record, via Certified United States Mail, postage prepaid, this 10th day of May, 2005:

Thomas M. Sobol
Hagens Berman LLP
One Main Street, 4th Floor
Cambridge, Massachusetts 02142

David B. Chaffin
Hare & Chaffin
160 Federal Street, 23rd Floor
Boston, Massachusetts 02110

James P. Rouhandeh
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

_____
Jeff S. Gibson

COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481

discussing faculty recruitment, speaker selection, speaker identification, speaker interest, or speaker availability for the Event.

REQUEST NO. 19:

For each Event funded or sponsored, whether in whole or in part, by Pfizer or Warner-Lambert where Neurontin or other AEDS were discussed, all documents concerning or describing the planning, scheduling, logistical planning, organization, preparation, critique, or review of the Event.

REQUEST NO. 20:

All documents concerning studies, investigations, retrospective reviews, preceptorships, clinical trials, papers, manuscripts, articles, abstracts or letters to the editor, whether published or unpublished, relating to Neurontin.

REQUEST NO. 21:

All documents that reference, or were received, collected, or prepared in connection with, Neurontin Litigation.

REQUEST NO. 22:

All documents that reference, or were received, collected, or prepared in connection with, an audit or investigation into the actions of Pfizer and/or Warner-Lambert relating to the marketing of Neurontin, including but not limited to investigations by any government entity, whether state or federal, investigations by Pfizer and/or Warner-Lambert, or investigations by any other person or entity.

REQUEST NO. 23:

All document-retention and electronic file retention policies.

REQUEST NO. 24:

Documents sufficient to show the identity of all Sudler & Hennessey account group supervisors, account managers, account executives and other employees who worked on the Neurontin account or in connection with each Event funded or sponsored, whether in whole or in part, by Pfizer or Warner-Lambert, where Neurontin was discussed.

REQUEST NO. 25:

Documents sufficient to show the identity of all Sudler & Hennessey account group supervisors, account managers, account executives and other employees who were members of the Neurontin Extended Disease Team, Epilepsy Disease Team, or Extended Neurontin Disease Team, or who were regularly copied on internal Warner-Lambert or Pfizer communications.

REQUEST NO. 26:

Copies of all client memos sent by Sudler & Hennessey to Warner-Lambert or Pfizer relating to Neurontin.

REQUEST NO. 27:

Copies of all marketing strategies, marketing plans, or strategic marketing plans prepared by Sudler & Hennessey for Warner-Lambert or Pfizer relating to Neurontin.

REQUEST NO. 28:

Copies of all tactical marketing plans prepared for Warner-Lambert or Pfizer relating to Neurontin.