UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:  NEURONTIN MARKETING AND
SALES PRACTICES LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC., et al., 04 CV 10739 (PBS) and

AETNA, INC. v. PFIZER INC., et al., 04-CV-10958 (PBS)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

: MDL Docket No. 1629
:
: Master File No. 04-10981
:
: Judge Patti B. Saris
:
: Magistrate Judge Leo T.
: Sorokin
:
:
:
:
:

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION TO COMPEL RESPONSE TO ONE INTERROGATORY

Defendants Pfizer Inc. and Warner-Lambert Company ("defendants") submit this

memorandum in support of their emergency motion to compel Aetna, Inc. ("Aetna"),

ASEA/AFSCME Local 52 Health Benefits Trust ("ASEA), Guardian Life Insurance Company of

America ("Guardian"), Harden Manufacturing Corporation ("Harden"), Kaiser Foundation

Health Plan, Inc. and Kaiser Foundation Hospitals (together, "Kaiser"), and Louisiana Health

Services Indemnity Corporation d/b/a BlueCross/BlueShield of Louisiana ("Louisiana Health")

(collectively, "plaintiffs") to provide full and complete responses to a single interrogatory.

## PRELIMINARY STATEMENT

Plaintiffs allege that they suffered an injury because they claim they paid for Neurontin

instead of "cheaper and more optimal" alternatives to Neurontin.  On March 13, 2007,

defendants served an interrogatory on plaintiffs requesting that they identify all of the "cheaper

and more optimal" alternatives to Neurontin for each of the relevant off-label uses and to provide additional specific information as to each alleged alternative.

Even though plaintiffs had put the "cheaper and more optimal" theory at issue, plaintiffs failed to provide any information in response to this interrogatory. During a meet-and-confer on May 29, 2007, defendants demanded a response. Plaintiffs agreed to respond, thus avoiding a motion by defendants on the issue in advance of the June discovery conference. Three days after the conference, coordinated plaintiffs served supplemental responses. They are nearly as flawed as the original responses: Coordinated plaintiffs simply repeated, virtually verbatim, the bare-bones allegations in their amended complaints. Thus, they identified no "cheaper and more optimal" alternatives for many of the indications at issue, and they have provided none of the detailed information sought by the interrogatory concerning the alternatives they have identified.

Absent the relief sought, defendants will be substantially prejudiced by plaintiffs' failure to provide full and complete responses to this interrogatory.

## BACKGROUND

In the Third Coordinated Amended Complaint, dated December 22, 2006, Coordinated Plaintiffs alleged that there were "numerous alternative medications that were cheaper and more optimal than Neurontin to treat the conditions for which Defendants were touting Neurontin, including several medications (such as aspirin and ibuprofen) not ordinarily covered by Plaintiffs' formularies." (Docket # 383 at ¶ 173.) That allegation was followed by a chart in which are identified certain drugs that allegedly are cheaper and more effective than Neurontin for certain indications. The Third Amended Class Action Complaint, dated December 22, 2006, contains similar allegations in claiming that there were "numerous alternative medications that were cheaper and more optimal than Neurontin to treat the conditions for which Defendants were

illegally touting Neurontin. The alternative, cheaper, or more desirable medications, including in certain cases medications such as aspirin and ibuprofen, are alleged to be a fraction of the price of Neurontin." (Docket # 580 at ¶ 308.)

On March 13, 2007, defendants, having obtained leave of Court (Motion for Leave to File Supplemental Interrogatories, Docket # 657, and Order dated March 13, 2007), served a second set of interrogatories on the coordinated and class plaintiffs regarding their theory on the putative existence of "cheaper and more optimal" alternatives to Neurontin for the indications at issue. (Because defendants were required to obtain leave to serve the interrogatories and had filed the proposed interrogatories with the motion for leave to serve, plaintiffs had the interrogatories on or before February 28, 2007.) Interrogatory Number 1 asked plaintiffs to: "Identify each off-label use of Neurontin as to which you are seeking recovery." Interrogatory Number 2 asked:

> For each off-label use identified in response to Interrogatory No. 1, state, for each calendar year of the proposed Class Period, the name, dosage, NDC number, and cost to you of each drug that you contend would have been cheaper and more optimal than Neurontin in treating that condition. Describe how you identified these alternative drugs and how you arrived at these figures.

On April 12, 2007, coordinated plaintiffs served objections and responses to the second set of interrogatories. While each of them identified a number of off-label uses in response to Interrogatory Number 1, none of them provided **any** information in response to Interrogatory Number 2, one of the most important interrogatories in the set. Instead, they simply objected to the interrogatory. Class plaintiffs sought an extension of their time to respond to the interrogatories and then served responses on May 1, 2007 that simply objected to Interrogatory Number 2 and did not answer.

During a meet-and-confer on May 29, 2007, defendants demanded that plaintiffs respond to Interrogatory Number 2. Plaintiffs agreed to respond.

On June 15, 2007, each coordinated plaintiff provided its supplemental response to Interrogatory Number 2. Copies of the supplemental responses, which vary little from coordinated plaintiff to coordinated plaintiff, are attached hereto as Exhibits A (Kaiser), B (Aetna), and C (Guardian). Class plaintiffs have not yet served any further response.

The supplemental responses of the coordinated plaintiffs are little more than copies of the list of drugs and indications that appears in paragraph 173 of the Third Coordinated Amended Complaint. Although expressly called for by Interrogatory Number 2, coordinated plaintiffs failed to identify alleged "cheaper and more optimal" alternatives for all off label uses at issue, and they provided no information at all as to dosage, NDC number, and cost of the alleged alternatives they did identify. Coordinated plaintiffs also failed to provide any information in response to the sub-part of Interrogatory Number 2 that seeks a description of how they identified the alleged alternatives.

## ARGUMENT

### PLAINTIFFS SHOULD BE COMPELLED TO RESPOND

Plaintiffs' initial responses to Interrogatory Number 2 consisted of only objections, notwithstanding the allegations of the coordinated and class complaints. The supplemental responses of coordinated plaintiffs are only slightly better than the original objections. Most telling, they are nothing more than mere reiterations, almost verbatim, of the bare-bones allegations that appear in the Third Coordinated Amended Complaint. Instead of actually answering Interrogatory Number 2, it took coordinated plaintiffs four months to simply cut and paste from their amended complaints.

The supplemental responses fail to identify, for each off-label indication identified in response to Interrogatory Number 1, the name, dosage, NDC number, and cost of each drug that coordinated plaintiffs contend would have been cheaper and more optimal than Neurontin in treating the indication. Coordinated plaintiffs provided information with respect to a few of the off-label uses identified in the answer to Interrogatory No. 1. For other relevant indications, coordinated plaintiffs provided no information at all, but for some reason saw fit to provide information (albeit incomplete) as to indications that are not at issue. Specifically, alleged alternatives are identified for attention deficit disorder, bipolar disorder, social phobia, panic disorder, and migraine prophylaxis, but coordinated plaintiffs identified no alleged alternatives for neuropathic pain (including diabetic peripheral neuropathy), restless leg syndrome, monotherapy for epilepsy and other alleged off label uses. Further, aspirin and ibuprofen are identified, but not correlated to any use. Moreover, even as to the indications for which some information was provided, the supplemental responses are incomplete. The responses only list the name of the drug, but do not provide dosage, NDC number, and cost information of each drug. The supplemental responses also fail to describe how coordinated plaintiffs identified the alternative drugs and how they arrived at the cost figures, information that Interrogatory Number 2 expressly required coordinated plaintiffs to provide. They also made no attempt to provide information by each calendar year of the proposed class period.

Plaintiffs must provide full and complete responses to Interrogatory 2. Rule 11 required them to have a factual basis for the theory when they included these allegations in the complaint, and defendants are entitled to learn that factual basis. Coordinated plaintiffs shirked their duties under the discovery rules by attempting to pass off allegations from their complaints as actual responses.

Plaintiffs have no excuse. They injected the "cheaper and more optimal" theory into the case long ago. They included in their amended complaints allegations regarding the purported availability of alternatives, including allegations that there were "numerous alternative medications that were cheaper and more optimal than Neurontin" and a partial list of such alleged alternatives, with limited cost information. By all rights, and under Rule 11, they should have had the information sought by Interrogatory Number 2 when they first asserted the "cheaper and more optimal" theory. They cannot claim undue burden.

So they take a different tack: They argue that Interrogatory Number 2 seeks information that must come from an expert, and they seek to delay the provision of the information until they make their expert disclosures. (Coordinated plaintiffs imply in the supplemental responses that defendants and/or the Court "agree[d]" to this approach, but this simply is not so. As the Court will recall, during the June 12 conference, coordinated plaintiffs' counsel indicated an intention to follow this approach, and this drew a vigorous objection from defendants' counsel. The Court certainly did not issue an advisory opinion on the issue which was not yet properly before the Court.) Interrogatory Number 2 seeks the basis for a claim that plaintiffs have alleged without qualification. In alleging the claim without qualification, plaintiffs certified that the claim had "evidentiary support . . . ." Fed. R. Civ. P. 11(b)(3). Plaintiffs should not need more time and experts to reveal "evidentiary support" that Rule 11(b)(3) required them to possess when they pleaded the "cheaper and more optimal" theory. Further, Interrogatory Number 2 seeks facts, not opinions. Moreover, because plaintiffs are large insurance companies that devote substantial resources to investigating drug uses and costs, their claimed need to rely on experts for the information sought by Interrogatory Number 2 rings hollow. Finally, coordinated plaintiffs identification of alleged alternatives for some indications, both in the amended complaints and in

the so-called supplemental response belies their claim that they cannot do it for all relevant off-label uses without expert input.

The information that plaintiffs have refused to provide goes to the heart of their theory of their theory of recovery and is, therefore, critical.  Having alleged the claim, they opened themselves to discovery as to that evidentiary support and became absolutely obligated to provide it.  In direct violation of that obligation, and three years into this case, they have refused to respond to an interrogatory that directly targets that evidentiary support, even though, as plaintiffs know, defendants need full and complete responses immediately.  Defendants wish to use plaintiff's responses in certain upcoming depositions of plaintiffs.

Although sanctions might arguably be warranted here, see, e.g., Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998); Wilson v. Bradlee's of New England, Inc., 250 F.3d 10, 20-21 (1st Cir. 2001), defendants would be content to receive full and complete responses immediately.  To ensure that this occurs, defendants respectfully request that the Court issue an order requiring plaintiffs to provide full and complete responses to Interrogatory Number 2 by a date certain, and providing that any failure of plaintiffs to comply with that ruling will result in the preclusion of any argument or evidence that there are "cheaper and more optimal alternatives" to Neurontin.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request that the Court issue an order (i) requiring plaintiffs to provide full and complete responses to Interrogatory Number 2, and (ii) providing that any failure of plaintiffs to comply with that ruling will result in the preclusion of any argument or evidence that there are "cheaper and more optimal alternatives" to Neurontin for any relevant off-label use.

Dated: July 5, 2007

DAVIS POLK & WARDWELL


By:    /s/James P. Rouhandeh
      James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN


By:    /s/ David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company*


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on July 5, 2007.


/s/David B. Chaffin

8

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | ) ) ) | Master File No. 04-10981 |
| THE GUARDIAN LIFE INSURANCE COMPANY. v. PFIZER INC., 04 CV 10739 (PBS) | ) ) ) ) | Judge Patti B. Saris  Magistrate Judge Leo T. Sorokin |

**PLAINTIFFS KAISER FOUNDATION HEALTH PLAN, INC. AND KAISER FOUNDATION HOSPITALS SUPPLEMENTAL RESPONSE AND OBJECTIONS TO DEFENDANTS' SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (hereinafter "Plaintiff" or "Kaiser"), supplementally respond to Defendants Pfizer Inc. and Warner-Lambert Company's Second Set of Interrogatories as follows:

## PRELIMINARY STATEMENT

1.     Kaiser's responses are subject to all objections as to competence, relevance, materiality, admissibility, privilege, and privacy, and any and all other objections on grounds that would require exclusion of any response herein if such were offered in Court, which objections are reserved and may be interposed at the time of trial.

2. No incidental or implied admissions may be inferred from Plaintiff's responses or objections. Kaiser's response to all or any part of the Interrogatories should not be taken as an admission that: (1) Kaiser accepts or admits the existence of any fact(s) set forth in or assumed by the Interrogatory; or (2) Kaiser has in its possession, custody or control information responsive to that Interrogatory. Kaiser's response to all or any part of any Interrogatory is not intended to be, and shall not be, a waiver by Kaiser of all or any part of its objection(s) to that Interrogatory.

3. Kaiser's responses are based upon information known at this time and are made without prejudice to Kaiser's right to supplement its responses prior to trial or to produce evidence based on subsequently discovered information. Kaiser's responses are based upon, and therefore are limited by, Kaiser's present knowledge and recollection, and consequently, Kaiser reserves the right to make any changes in its responses if it appears at any time that inadvertent errors or omissions have been made.

## GENERAL OBJECTIONS

1. Kaiser incorporates each and every general objection set forth below into the responses to each Interrogatory as if they were fully set forth in the response to each Interrogatory. For emphasis, in connection with certain Interrogatories, Kaiser may reiterate a general objection set forth below in the specific response to that Interrogatory. Such reiteration shall in no way be deemed a waiver of other general objections not specifically set forth in connection with any Interrogatory.

2.     Kaiser objects to each of the Interrogatories to the extent it is inconsistent with, or seeks to impose obligations in excess of, the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Massachusetts ("Local Rules") or any applicable scheduling order, case management order, or other ruling of the Court.

3.     Kaiser objects to the Interrogatories insofar as they seek information that is protected by the attorney-client privilege, the attorney work product doctrine, the physician/patient privilege, the pharmacist/patient privilege, and/or any other applicable privilege or exemption. Kaiser will not produce such information. Any inadvertent disclosure of privileged information is not intended and should not be construed to constitute a waiver, either generally or specifically, with respect to such material or the subject matter thereof.

4.     Kaiser objects to the Interrogatories insofar as they seek information that is confidential or private in nature, that is covered by third-party confidentiality agreements or that is insulated from disclosure by federal, state or local law governing disclosure of confidential patient prescription information, including, but not limited to, the provisions of the Health Insurance Portability and Accountability Act of 1996, 29 U.S.C. §§ 1181, et seq. ("HIPAA"), the Federal Privacy Rule governing Standards for Privacy of Individually Identifiable Health Information, 45 CFR Parts 160 and 164, Rule 26 of the Federal Rules of Civil Procedure, or any other applicable privilege, rule or doctrine.

5.     Kaiser objects to the Interrogatories insofar as they seek trade secrets, proprietary business information, and/or competitively sensitive information. Kaiser will

not disclose such information until an appropriate protective order limiting access is in place.

6.      Kaiser objects to the Interrogatories to the extent they call for production of information which is protected from disclosure by any individual's or Kaiser's right(s) to privacy or seek information protected from disclosure by Section 7216 of the Internal Revenue Code

7.      Kaiser objects to each of the Interrogatories as overly broad to the extent it seeks information relating to pharmaceutical products other than Neurontin, or seeks other information having nothing to do with the subject matter of the Complaint on the ground that such requests purport to call for information that is neither relevant to this action nor likely to lead to the discovery of admissible evidence.  Plaintiff will only disclose information regarding Neurontin.

8.      Kaiser objects to the Interrogatories insofar as they are vague, ambiguous, overly broad, unduly burdensome, oppressive, vexatious, do not specify the information requested with sufficient particularity or seek information not reasonably calculated to lead to the discovery of admissible evidence.

9.      Kaiser objects to each of the Interrogatories to the extent it calls for information from persons or entities who are not parties to this action and which information is not now and never has been in the possession, custody, or control of Kaiser.

10.      Kaiser objects to each of the Interrogatories to the extent it seeks information which is publicly available or equally available to Defendants and/or already

in Defendants' possession or obtainable from another source that is more convenient, less burdensome, or less expensive.

11.     Kaiser objects to these Interrogatories to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

12.     Kaiser objects to the Interrogatories to the extent they assume the existence of facts which do not exist or events which did not occur.

13.     Kaiser objects to these Interrogatories to the extent they constitute premature contention interrogatories.

14.     Kaiser objects to the "Definitions" and "Instructions" in Defendants' Interrogatories to the extent they exceed the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules, or any applicable scheduling order, case management order, or other ruling of the Court.  Kaiser also objections to the "Definitions" to the extent they are inconsistent with normal and customary usage.

15.     Kaiser objects to the definition of "Person" or "Persons" on the grounds that it is overly broad and unduly burdensome, and purports to call for discovery from third parties over whom Kaiser has no control and to the extent that it exceeds the definition set forth in the Federal Rules of Civil Procedure and the Local Rules.

16.     Kaiser objects to the definition of "Plaintiff" or "Kaiser" on the grounds that it is overly broad and unduly burdensome, and purports to call for discovery from persons over whom Kaiser has no control and to the extent that it exceeds the definition set forth in the Federal Rules of Civil Procedure and the Local Rules.

17.     Kaiser objects to the Interrogatories to the extent they purport to require Plaintiffs to disclose information concerning any expert or other person or entity retained

by Plaintiff's counsel to assist in the preparation of Plaintiff's case to the extent any such

person or entity will not be designated by Plaintiff as a trail witness on the grounds that

such disclosure is neither relevant nor reasonably calculated to lead to the discovery of

admissible evidence.

18.     Kaiser reserves until the time of trial all objections as to the relevance or

admissibility of any information provided in response to these Interrogatories. The

supplying of any information contained herein does not constitute an admission by

Plaintiff that such information is relevant or admissible or that any statement or

characterization in Defendant's Interrogatory is accurate or complete.

19.     Kaiser's decision, now or in the future, to provide information or

documents notwithstanding the objectionable nature of any of the definitions or

instructions, or the Request itself, should not be construed as: (a) a stipulation that the

material is relevant or admissible, (b) a waiver of Kaiser's general objections or the

objections asserted in response to specific document requests, or (c) an agreement that

requests for similar information will be treated in a similar manner.

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

Interrogatory No. 2

       For each off-label use identified in response to Interrogatory No. 1, state, for each
calendar year of the proposed Class Period, the name, dosage, NDC number, and cost to
you of each drug that you contend would have been cheaper and more optimal than
Neurontin in treating that condition. Describe how you identified these alternative drugs
and how you arrived at these figures.

Supplemental Response:

       Kaiser objects to this Interrogatory on grounds that it is overly broad, unduly

burdensome, vague, ambiguous and seeks information that is neither relevant to the

subject matter of this action nor reasonably calculated to lead to the discovery of

admissible evidence.  Plaintiff further objects to this Interrogatory insofar as it seeks

protected health information that is insulated from disclosure by federal, state or local law

governing disclosure of confidential patient prescription information, including, but not

limited to HIPAA.  Furthermore, to the extent this Interrogatory calls for medical records,

Plaintiff objects on the ground that the Court has ruled Kaiser is not required to produce

such information.  In addition, Kaiser objects to this Interrogatory to the extent that it is

premature and calls for expert testimony.  In addition, as agreed to before the Magistrate

Judge Sorokin, Kaiser answers reserving its right to supplement up to and through its

expert report(s), and states: there were numerous alternative medications that were

cheaper or more optimal than Neurontin to treat the conditions for which Defendants

were touting Neurontin, including several medications (such as aspirin and ibuprofen) not

ordinarily covered by Plaintiffs' formularies.  These alternative cheaper or more desirable

medications included: attention deficit disorder: amphetamine, clonidine,

methylphenidate; bipolar disorder: carbamazepine, chlorpromazine, lithium, valproic

acid; social phobia: paroxetine, sertraline (Zoloft), venlafaxine (Effexor); panic disorder:

alprazolam, clonazepam, fluoxetine; migraine prophylaxis: propranolol, timolol.

Dated: June 18, 2007                      KAPLAN FOX & KILSHEIMER LLP

By: _____
     Linda P. Nussbaum
     805 Third Avenue, 22nd Floor
     New York, NY 10022

## CERTIFICATE OF SERVICE

The undersigned certifies that on this date, a true and correct copy of the

foregoing Plaintiff Kaiser, Inc.'s Supplemental Responses and Objections to Defendants'

Defendants Pfizer Inc. and Warner-Lambert Company's Second Set of Interrogatories

was served on the person below by federal express:

Matthew B. Rowland, Esq.
Davis Polk & Wardwell
450 Lexington Ave.
New York, NY  10017

Attorney for Defendants

Dated: June 18, 2007                     KAPLAN FOX & KILSHEIMER LLP

By: _____

Linda P. Nussbaum
805 Third Avenue, 22nd Floor
New York, NY 10022

# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION | ) ) ) | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | ) ) ) | Master File No. 04-10981 |
| AETNA, INC. v. PFIZER INC., 04 CV 10958 (PBS) | ) ) ) ) | Judge Patti B. Saris |

## PLAINTIFF AETNA, INC.'S SUPPLEMENTAL RESPONSE AND OBJECTIONS TO DEFENDANTS' SECOND SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Aetna, Inc. (hereinafter "Plaintiff" or "Aetna"), supplementally responds to Defendants Pfizer Inc. and Warner-Lambert Company's Second Set of Interrogatories as follows:

## PRELIMINARY STATEMENT

1.    Aetna's responses are subject to all objections as to competence, relevance, materiality, admissibility, privilege, and privacy, and any and all other objections on grounds that would require exclusion of any response herein if such were offered in Court, which objections are reserved and may be interposed at the time of trial.

-1-

2.     No incidental or implied admissions may be inferred from Plaintiff's responses or objections. Aetna's response to all or any part of the Interrogatories should not be taken as an admission that: (1) Aetna accepts or admits the existence of any fact(s) set forth in or assumed by the Interrogatory; or (2) Aetna has in its possession, custody or control information responsive to that Interrogatory. Aetna's response to all or any part of any Interrogatory is not intended to be, and shall not be, a waiver by Aetna of all or any part of its objection(s) to that Interrogatory.

3.     Aetna's responses are based upon information known at this time and are made without prejudice to Aetna's right to supplement its responses prior to trial or to produce evidence based on subsequently discovered information. Aetna's responses are based upon, and therefore are limited by, Aetna's present knowledge and recollection, and consequently, Aetna reserves the right to make any changes in its responses if it appears at any time that inadvertent errors or omissions have been made.

## GENERAL OBJECTIONS

1.     Aetna incorporates each and every general objection set forth below into the responses to each Interrogatory as if they were fully set forth in the response to each Interrogatory. For emphasis, in connection with certain Interrogatories, Aetna may reiterate a general objection set forth below in the specific response to that Interrogatory. Such reiteration shall in no way be deemed a waiver of other general objections not specifically set forth in connection with any Interrogatory.

2.      Aetna objects to each of the Interrogatories to the extent it is inconsistent with, or seeks to impose obligations in excess of, the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Massachusetts ("Local Rules") or any applicable scheduling order, case management order, or other ruling of the Court.

3.      Aetna objects to the Interrogatories insofar as they seek information that is protected by the attorney-client privilege, the attorney work product doctrine, the physician/patient privilege, the pharmacist/patient privilege, and/or any other applicable privilege or exemption.  Aetna will not produce such information.  Any inadvertent disclosure of privileged information is not intended and should not be construed to constitute a waiver, either generally or specifically, with respect to such material or the subject matter thereof.

4.      Aetna objects to the Interrogatories insofar as they seek information that is confidential or private in nature, that is covered by third-party confidentiality agreements or that is insulated from disclosure by federal, state or local law governing disclosure of confidential patient prescription information, including, but not limited to, the provisions of the Health Insurance Portability and Accountability Act of 1996, 29 U.S.C. §§ 1181, et seq. ("HIPAA"), the Federal Privacy Rule governing Standards for Privacy of Individually Identifiable Health Information, 45 CFR Parts 160 and 164, Rule 26 of the Federal Rules of Civil Procedure, or any other applicable privilege, rule or doctrine.

5.      Aetna objects to the Interrogatories insofar as they seek trade secrets, proprietary business information, and/or competitively sensitive information.  Aetna will

not disclose such information until an appropriate protective order limiting access is in place.

6.　　Aetna objects to the Interrogatories to the extent they call for production of information which is protected from disclosure by any individual's or Aetna's right(s) to privacy or seek information protected from disclosure by Section 7216 of the Internal Revenue Code

7.　　Aetna objects to each of the Interrogatories as overly broad to the extent it seeks information relating to pharmaceutical products other than Neurontin, or seeks other information having nothing to do with the subject matter of the Complaint on the ground that such requests purport to call for information that is neither relevant to this action nor likely to lead to the discovery of admissible evidence.　Plaintiff will only disclose information regarding Neurontin.

8.　　Aetna objects to the Interrogatories insofar as they are vague, ambiguous, overly broad, unduly burdensome, oppressive, vexatious, do not specify the information requested with sufficient particularity or seek information not reasonably calculated to lead to the discovery of admissible evidence.

9.　　Aetna objects to each of the Interrogatories to the extent it calls for information from persons or entities who are not parties to this action and which information is not now and never has been in the possession, custody, or control of Aetna.

10.　　Aetna objects to each of the Interrogatories to the extent it seeks information which is publicly available or equally available to Defendants and/or already

in Defendants' possession or obtainable from another source that is more convenient, less burdensome, or less expensive.

11.    Aetna objects to these Interrogatories to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

12.    Aetna objects to the Interrogatories to the extent they assume the existence of facts which do not exist or events which did not occur.

13.    Aetna objects to these Interrogatories to the extent they constitute premature contention interrogatories.

14.    Aetna objects to the "Definitions" and "Instructions" in Defendants' Interrogatories to the extent they exceed the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules, or any applicable scheduling order, case management order, or other ruling of the Court.  Aetna also objections to the "Definitions" to the extent they are inconsistent with normal and customary usage.

15.    Aetna objects to the definition of "Person" or "Persons" on the grounds that it is overly broad and unduly burdensome, and purports to call for discovery from third parties over whom Aetna has no control and to the extent that it exceeds the definition set forth in the Federal Rules of Civil Procedure and the Local Rules.

16.    Aetna objects to the definition of "Plaintiff" or "Aetna" on the grounds that it is overly broad and unduly burdensome, and purports to call for discovery from persons over whom Aetna has no control and to the extent that it exceeds the definition set forth in the Federal Rules of Civil Procedure and the Local Rules.

17.    Aetna objects to the Interrogatories to the extent they purport to require Plaintiffs to disclose information concerning any expert or other person or entity retained

by Plaintiff's counsel to assist in the preparation of Plaintiff's case to the extent any such

person or entity will not be designated by Plaintiff as a trail witness on the grounds that

such disclosure is neither relevant nor reasonably calculated to lead to the discovery of

admissible evidence.

18.     Aetna reserves until the time of trial all objections as to the relevance or

admissibility of any information provided in response to these Interrogatories. The

supplying of any information contained herein does not constitute an admission by

Plaintiff that such information is relevant or admissible or that any statement or

characterization in Defendant's Interrogatory is accurate or complete.

19.     Aetna's decision, now or in the future, to provide information or

documents notwithstanding the objectionable nature of any of the definitions or

instructions, or the Request itself, should not be construed as: (a) a stipulation that the

material is relevant or admissible, (b) a waiver of Aetna's general objections or the

objections asserted in response to specific document requests, or (c) an agreement that

requests for similar information will be treated in a similar manner.

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

Interrogatory No. 2

For each off-label use identified in response to Interrogatory No. 1, state, for each
calendar year of the proposed Class Period, the name, dosage, NDC number, and cost to
you of each drug that you contend would have been cheaper and more optimal than
Neurontin in treating that condition.  Describe how you identified these alternative drugs
and how you arrived at these figures.

Supplemental Response:

Aetna objects to this Interrogatory on grounds that it is overly broad, unduly

burdensome, vague, ambiguous and seeks information that is neither relevant to the

subject matter of this action nor reasonably calculated to lead to the discovery of

admissible evidence.   Plaintiff further objects to this Interrogatory insofar as it seeks

protected health information that is insulated from disclosure by federal, state or local

law governing disclosure of confidential patient prescription information, including,

but not limited to HIPAA.  Furthermore, to the extent this Interrogatory calls for

medical records, Plaintiff objects on the ground that the Court has ruled Aetna is not

required to produce such information.  In addition, Aetna objects to this Interrogatory

to the extent that it is premature and calls for expert testimony.  In addition, as agreed

to before the Magistrate Judge Sorokin, Aetna answers reserving its right to

supplement up to and through its expert report(s), and states: there were numerous

alternative medications that were cheaper or more optimal than Neurontin to treat the

conditions for which Defendants were touting Neurontin, including several

medications (such as aspirin and ibuprofen) not ordinarily covered by Plaintiffs'

formularies.  These alternative cheaper or more desirable medications included:

attention deficit disorder: amphetamine, clonidine, methylphenidate; bipolar disorder:

carbamazepine, chlorpromazine, lithium, valproic acid; social phobia: paroxetine,

sertraline (Zoloft), venlafaxine (Effexor); panic disorder: alprazolam, clonazepam,

fluoxetine; migraine prophylaxis: propranolol, timolol.

Dated: June 15, 2007

LOWEY DANNENBERG BEMPORAD
SELINGER & COHEN, P.C.

By: _____
     Richard W. Cohen
     Gerald Lawrence
     Four Tower Bridge
     200 Barr Harbor Drive, Suite 400
     West Conshohocken, PA  19428

## CERTIFICATE OF SERVICE

The undersigned certifies that on this date, a true and correct copy of the foregoing Plaintiff Aetna, Inc.'s Supplemental Responses and Objections to Defendants' Defendants Pfizer Inc. and Warner-Lambert Company's Second Set of Interrogatories was served on the person below by first class mail:

Matthew B. Rowland, Esq.
Davis Polk & Wardwell
450 Lexington Ave.
New York, NY 10017

Attorney for Defendants

Dated: June 15, 2007

LOWEY DANNENBERG BEMPORAD
SELINGER & COHEN, P.C.

By: _____
Gerald Lawrence
Four Tower Bridge
200 Barr Harbor Drive, Suite 400

# EXHIBIT C

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| )<br>IN RE NEURONTIN MARKETING AND )<br>SALES PRACTICES LITIGATION )<br>_____ )<br>THIS DOCUMENT RELATES TO:    )<br>_____ )<br>THE GUARDIAN LIFE INSURANCE<br>COMPANY. v. PFIZER INC.,    )<br>04 CV 10739 (PBS)    )<br>_____ ) | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br>Judge Patti B. Saris<br><br>Magistrate Judge Leo T.<br>Sorokin |

**PLAINTIFF GUARDIAN LIFE INSURANCE COMPANY OF AMERICA'S
SUPPLEMENTAL RESPONSE AND OBJECTIONS TO
DEFENDANTS' SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs Guardian

Life Insurance Company of America (hereinafter "Plaintiff" or "Guardian"), supplementally

respond to Defendants Pfizer Inc. and Warner-Lambert Company's Second Set of Interrogatories

as follows:

**PRELIMINARY STATEMENT**

1.    Guardian's responses are subject to all objections as to competence, relevance,

materiality, admissibility, privilege, and privacy, and any and all other objections on grounds that

would require exclusion of any response herein if such were offered in Court, which objections

are reserved and may be interposed at the time of trial.

-1-

2.      No incidental or implied admissions may be inferred from Plaintiff's responses or objections. Guardian's response to all or any part of the Interrogatories should not be taken as an admission that: (1) Guardian accepts or admits the existence of any fact(s) set forth in or assumed by the Interrogatory; or (2) Guardian has in its possession, custody or control information responsive to that Interrogatory. Guardian's response to all or any part of any Interrogatory is not intended to be, and shall not be, a waiver by Guardian of all or any part of its objection(s) to that Interrogatory.

3.      Guardian's responses are based upon information known at this time and are made without prejudice to Guardian's right to supplement its responses prior to trial or to produce evidence based on subsequently discovered information. Guardian's responses are based upon, and therefore are limited by, Guardian's present knowledge and recollection, and consequently, Guardian reserves the right to make any changes in its responses if it appears at any time that inadvertent errors or omissions have been made.

### GENERAL OBJECTIONS

1.      Guardian incorporates each and every general objection set forth below into the responses to each Interrogatory as if they were fully set forth in the response to each Interrogatory. For emphasis, in connection with certain Interrogatories, Guardian may reiterate a general objection set forth below in the specific response to that Interrogatory. Such reiteration shall in no way be deemed a waiver of other general objections not specifically set forth in connection with any Interrogatory.

2.      Guardian objects to each of the Interrogatories to the extent it is inconsistent with, or seeks to impose obligations in excess of, the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Massachusetts ("Local Rules") or any applicable scheduling order, case management order, or other ruling of the Court.

3.      Guardian objects to the Interrogatories insofar as they seek information that is protected by the attorney-client privilege, the attorney work product doctrine, the physician/patient privilege, the pharmacist/patient privilege, and/or any other applicable privilege or exemption. Guardian will not produce such information. Any inadvertent disclosure of privileged information is not intended and should not be construed to constitute a waiver, either generally or specifically, with respect to such material or the subject matter thereof.

4.      Guardian objects to the Interrogatories insofar as they seek information that is confidential or private in nature, that is covered by third-party confidentiality agreements or that is insulated from disclosure by federal, state or local law governing disclosure of confidential patient prescription information, including, but not limited to, the provisions of the Health Insurance Portability and Accountability Act of 1996, 29 U.S.C. §§ 1181, et seq. ("HIPAA"), the Federal Privacy Rule governing Standards for Privacy of Individually Identifiable Health Information, 45 CFR Parts 160 and 164, Rule 26 of the Federal Rules of Civil Procedure, or any other applicable privilege, rule or doctrine.

5.      Guardian objects to the Interrogatories insofar as they seek trade secrets, proprietary business information, and/or competitively sensitive information. Guardian

will not disclose such information until an appropriate protective order limiting access is in place.

6.      Guardian objects to the Interrogatories to the extent they call for production of information which is protected from disclosure by any individual's or Guardian's right(s) to privacy or seek information protected from disclosure by Section 7216 of the Internal Revenue Code

7.      Guardian objects to each of the Interrogatories as overly broad to the extent it seeks information relating to pharmaceutical products other than Neurontin, or seeks other information having nothing to do with the subject matter of the Complaint on the ground that such requests purport to call for information that is neither relevant to this action nor likely to lead to the discovery of admissible evidence.  Plaintiff will only disclose information regarding Neurontin.

8.      Guardian objects to the Interrogatories insofar as they are vague, ambiguous, overly broad, unduly burdensome, oppressive, vexatious, do not specify the information requested with sufficient particularity or seek information not reasonably calculated to lead to the discovery of admissible evidence.

9.      Guardian objects to each of the Interrogatories to the extent it calls for information from persons or entities who are not parties to this action and which information is not now and never has been in the possession, custody, or control of Guardian.

10.      Guardian objects to each of the Interrogatories to the extent it seeks information which is publicly available or equally available to Defendants and/or already

in Defendants' possession or obtainable from another source that is more convenient, less burdensome, or less expensive.

11.     Guardian objects to these Interrogatories to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

12.     Guardian objects to the Interrogatories to the extent they assume the existence of facts which do not exist or events which did not occur.

13.     Guardian objects to these Interrogatories to the extent they constitute premature contention interrogatories.

14.     Guardian objects to the "Definitions" and "Instructions" in Defendants' Interrogatories to the extent they exceed the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules, or any applicable scheduling order, case management order, or other ruling of the Court.  Guardian also objections to the "Definitions" to the extent they are inconsistent with normal and customary usage.

15.     Guardian objects to the definition of "Person" or "Persons" on the grounds that it is overly broad and unduly burdensome, and purports to call for discovery from third parties over whom Guardian has no control and to the extent that it exceeds the definition set forth in the Federal Rules of Civil Procedure and the Local Rules.

16.     Guardian objects to the definition of "Plaintiff" or "Guardian" on the grounds that it is overly broad and unduly burdensome, and purports to call for discovery from persons over whom Guardian has no control and to the extent that it exceeds the definition set forth in the Federal Rules of Civil Procedure and the Local Rules.

17.     Guardian objects to the Interrogatories to the extent they purport to require Plaintiffs to disclose information concerning any expert or other person or entity retained

by Plaintiff's counsel to assist in the preparation of Plaintiff's case to the extent any such

person or entity will not be designated by Plaintiff as a trail witness on the grounds that

such disclosure is neither relevant nor reasonably calculated to lead to the discovery of

admissible evidence.

18.    Guardian reserves until the time of trial all objections as to the relevance

or admissibility of any information provided in response to these Interrogatories. The

supplying of any information contained herein does not constitute an admission by

Plaintiff that such information is relevant or admissible or that any statement or

characterization in Defendant's Interrogatory is accurate or complete.

19.    Guardian's decision, now or in the future, to provide information or

documents notwithstanding the objectionable nature of any of the definitions or

instructions, or the Request itself, should not be construed as: (a) a stipulation that the

material is relevant or admissible, (b) a waiver of Guardian's general objections or the

objections asserted in response to specific document requests, or (c) an agreement that

requests for similar information will be treated in a similar manner.

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

<u>Interrogatory No. 2</u>

For each off-label use identified in response to Interrogatory No. 1, state, for each
calendar year of the proposed Class Period, the name, dosage, NDC number, and cost to
you of each drug that you contend would have been cheaper and more optimal than
Neurontin in treating that condition. Describe how you identified these alternative drugs
and how you arrived at these figures.

<u>Supplemental Response:</u>

Guardian objects to this Interrogatory on grounds that it is overly broad, unduly

burdensome, vague, ambiguous and seeks information that is neither relevant to the

subject matter of this action nor reasonably calculated to lead to the discovery of

admissible evidence.   Plaintiff further objects to this Interrogatory insofar as it seeks

protected health information that is insulated from disclosure by federal, state or local law

governing disclosure of confidential patient prescription information, including, but not

limited to HIPAA.  Furthermore, to the extent this Interrogatory calls for medical records,

Plaintiff objects on the ground that the Court has ruled Guardian is not required to

produce such information.  In addition, Guardian objects to this Interrogatory to the

extent that it is premature and calls for expert testimony.  In addition, as agreed to before

the Magistrate Judge Sorokin, Guardian answers reserving its right to supplement up to

and through its expert report(s), and states: there were numerous alternative medications

that were cheaper or more optimal than Neurontin to treat the conditions for which

Defendants were touting Neurontin, including several medications (such as aspirin and

ibuprofen) not ordinarily covered by Plaintiffs' formularies.  These alternative cheaper or

more desirable medications included: attention deficit disorder: amphetamine, clonidine,

methylphenidate; bipolar disorder: carbamazepine, chlorpromazine, lithium, valproic

acid; social phobia: paroxetine, sertraline (Zoloft), venlafaxine (Effexor); panic disorder:

alprazolam, clonazepam, fluoxetine; migraine prophylaxis: propranolol, timolol.

Dated: June 19, 2007                            KAPLAN FOX & KILSHEIMER LLP

                                                By: _____

                                                    Linda P. Nussbaum
                                                    805 Third Avenue, 22nd Floor
                                                    New York, NY 10022

## CERTIFICATE OF SERVICE

The undersigned certifies that on this date, a true and correct copy of the foregoing Plaintiff Guardian Life Insurance Company of America's Supplemental Responses and Objections to Defendants' Defendants Pfizer Inc. and Warner-Lambert Company's Second Set of Interrogatories was served on the person below by federal express:

Matthew B. Rowland, Esq.
Davis Polk & Wardwell
450 Lexington Ave.
New York, NY  10017

Attorney for Defendants

Dated: June 19, 2007                    KAPLAN FOX & KILSHEIMER LLP

By _____
Linda P. Nussbaum
805 Third Avenue, 22nd Floor
New York, NY 10022