UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | ) ) ) ) |
| | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) |
| | Judge Patti B. Saris Magistrate Judge Leo T. Sorokin |

**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER CONCERNING RULE 30(b)(6) DEPOSITION NOTICES**

Defendants Pfizer Inc. and Warner-Lambert Company (together, "defendants") submit this memorandum in support of their motion for the entry of a protective order concerning Rule 30(b)(6) deposition notices served by plaintiffs on defendants.

**PRELIMINARY STATEMENT**

In mid-June, plaintiffs served three notices of deposition of defendants pursuant to Rule 30(b)(6) (the "Notices"). The topics for examination identified in the Notices are largely irrelevant to the claims and defenses in this litigation. Further, many of the topics are patently overbroad, imprecise, duplicative, and cumulative. Indeed, some of the topics are virtually unlimited in scope, and compliance therefore would be enormously burdensome and expensive, and as to some topics impossible. Moreover, many of the topics are back-door attempts to avoid the document discovery cut-off, which has passed, because they seek to force defendants to identify and produce numerous documents. And finally, some of the topics appear to relate to entirely new theories of liability and are, therefore, impermissible under Rule 26. Despite

attempts to do so, defendants have not been able to reach an agreement with plaintiffs regarding the scope of the Notices.

For the foregoing reasons and as more fully set forth below, defendants respectfully request that the Court issue a protective order that plaintiffs are not entitled to depose defendants pursuant to the Notices.

## BACKGROUND

On June 11, 2007, plaintiffs served the Notices, purportedly scheduling all three depositions for July 2, 2007. (True and correct copies of the Notices are attached hereto as Exhibits A through C.) Defendants served objections to the Notices on June 29, 2007, indicating that, absent an agreement limiting the scope of the depositions, defendants would move for a protective order. (True and correct copies of the objections are attached hereto as Exhibits D through F.) No agreement has been reached.

One of the Notices (the "Third Party Payor Notice" (Exhibit A hereto)) primarily seeks testimony as to communications between defendants and Third Party Payors, as to conclusions and analyses regarding whether Neurontin provides medical benefits for off-label uses, and as to medical educational seminars. Another (the "Document Notice" (Exhibit B hereto)) primarily seeks testimony as to Pfizer's computer and email systems and as to defendants' document production in this litigation. The third (the "Corporate Structure Notice" (Exhibit C hereto)) primarily seeks testimony as to Pfizer's corporate structure, its worldwide offices, and the acquisition of Warner-Lambert.

Most of the topics in the Notices seek, expressly or by implication, a detailed identification of all documents related to the topics. All three Notices define the relevant time period as January 1, 1994 to the present, which is broader than the time period at issue in this

litigation. The topic descriptions in all three Notices are characterized by vagueness, overbreadth, and burdensomeness, and are not the narrow, specific requests that one would reasonably expect at this late stage of the litigation. That said, although it is not atypical to serve broad notices, the principal problem at this point is plaintiffs' refusal to narrow them sufficiently.

The Third Party Payor Notice

Since the inception of the litigation, and through two amendments of the complaints, plaintiffs have not made any allegations concerning allegedly fraudulent communications between defendants and third party payors. Plaintiffs have focused exclusively on defendants' alleged communications with physicians. Thus, to the extent the Third Party Payor Notice seeks testimony as to communications between defendants and third party payors, it seeks information that is unrelated to the claims and defenses in the litigation. (Exhibit A, topics (1), (2), (4), (9), (10).) This attempt to explore such communications is an effort to explore wholly new theories of liability, and it is far too late for that, particularly because plaintiffs have made clear that they intend to seek extensive additional discovery regarding such issues.

To the extent the Third Party Payor Notice seeks testimony regarding information, analyses and conclusions with respect to the benefits of Neurontin for any off-label uses (not merely those at issue in this litigation), it is duplicative and overbroad in the extreme, and it proposes a highly inefficient approach. (Exhibit A, topics (3), (5), (6), (7).) Defendants have produced thousands of studies, research reports, and raw data regarding these topics. A Rule 30(b)(6) deposition on the same topics would be an inefficient and highly burdensome waste of defendants' resources, with little corresponding benefit. The topics relating to educational seminars also are overbroad and duplicative, and forcing defendants to prepare and produce a witness on the topics would be inefficient and burdensome. Assuming, counter-factually, that

plaintiffs do not already have extensive information on these topics, the information should be sought by other means, e.g., through fact witnesses whose depositions plaintiffs have sought or taken.

The Document Notice

The topics in the Document Notice (e.g., Exhibit B, topics 2, 3) concerning the "functioning and use of the computer systems" utilized by Pfizer and the email systems used are impossibly vague, unwieldy, overbroad, and burdensome. The topic relating to the computer system, for example, is broken down into 15 subparts, and contains all-encompassing descriptions such as "the operations and layout of the electronic data processing system on which it performed all of its electronic data processing functions," "the type, quantity and configuration of all computer hardware and software used . . . to process any data," and "the functioning and specifications of all data base applications." (Exhibit B at 5.) Simply put, it would be impossible to prepare a Rule 30(b)(6) witness as to these subjects. Further, even assuming a witness could be prepared, most of that which he or she would say would have nothing to do with Neurontin and would be of no value in resolving the issues in the case. Also improper is the topic that would require the production of the person(s) most knowledgeable as to the source (person and department) of every one of the over three million documents produced by defendants and as to the details of the multi-year search for and production of documents by defendants. Compliance with this topic, if at all possible, would be a herculean, enormously expensive task, and even assuming defendants could comply, it would not advance the issues in the case. To be clear, defendants do not oppose the production of a witness to testify regarding defendants' efforts to produce documents and electronic data in this MDL, but do oppose producing a witness on the broad topics identified in the notice as drafted. We note that

defendants have served a records retention notice on certain plaintiffs and, although plaintiffs have not served objections to that notice, defendants are willing to confer in good faith to come to an agreement regarding the scope of that notice and to limit the scope of such a deposition to plaintiffs' efforts to produce documents and electronic data in this MDL.

The Corporate Structure Notice

The topics relating to Pfizer's corporate structure; the relationship among it and its affiliates, subsidiaries, divisions, departments, and offices; the identification of all offices and facilities worldwide; and the acquisition of Warner-Lambert are patently overbroad, vague, and ambiguous. Further, they seek irrelevant information. Further, compliance would be extremely burdensome and expensive. Pfizer is a large organization, with hundreds of facilities worldwide and tens of thousands of employees. It would be impossible to prepare a witness on these topics, both because of the sheer volume of information involved and the lack of tailoring of the topics. The extraordinary breadth of these topics (a characteristic shared by most of the topics in all three notices) forces defendants to guess as to the identity of the particular information that plaintiffs seek (if any) that actually relates to the issues in this litigation. The proposed deposition would yield little of any value toward the resolution of the issues actually presented in this case. Defendants do not oppose a 30(b)(6) deposition regarding the structure of the sales, marketing and regulatory departments of Pfizer as they relate to Neurontin, but do oppose a deposition on the topics as set forth in the notice as drafted. Defendants are willing to similarly limit the scope of any 30(b)(6) deposition of plaintiffs to the structure of the relevant departments of plaintiffs that had responsibility relating to the analysis and reimbursement of Neurontin.

**ARGUMENT**

**A PROTECTIVE ORDER IS WARRANTED**

**A.     Governing Principles**

In 1989, years before Rule 26 was amended to limit the scope of discovery, Judge Selya wrote that, although "there are no barbed-wire fences marking the precise boundaries of pretrial discovery," litigants "ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up." Mack v. Great Atlantic and Pacific Tea Company, Inc., 871 F.2d 179, 187 (1st Cir. 1989). His words were prophetic. Rule 26 now permits discovery only as to matters "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The purpose of the amendment was to ensure that the focus of discovery is the actual claims and defenses in an action and to avoid the use of discovery to develop new claims or defenses. Advisory Committee Note to 2000 Amendment to Rule 26(b)(1). See also Behler v. Hanlon, 199 F.R.D. 553, 561 (D. Md. 2001)(2000 amendment defines scope of discovery more narrowly). Thus, discovery may not be used as a "fishing expedition to discover additional instances of wrongdoing beyond those already alleged." In re PE Corporation Securities Litigation, 221 F.R.D. 20, 23-24 (D.Conn. 2003). And discovery should reflect claims pled with particularity, not general allegations with no basis in fact. See, e.g., Fed. R. Civ. P. 26(b)(1); Advisory Committee Note to 2000 Amendment to Rule 26(b)(1); United States v. Medtronic, Inc., 2000 WL 1478476, *3 (D. Kan. 2000) ("[l]itigants have an obligation to tailor discovery to suit the particular exigencies of the litigation"); see also Hickman v. Taylor, 329 U.S. 495, 507 (1947) ("discovery, like all matters of procedure, has ultimate and necessary boundaries").

Nor may abusive or invasive discovery tactics be employed. Proponents of discovery may not use the discovery process "as a club by propounding requests compelling the recipient to assume an excessive burden." Smithkline Beecham Corporation v. Apotex Corp., 2000 WL 116082, *9 (N.D. Ill. 2000) (30(b)(6) deposition notice that sought a witness to testify with respect to a party's answers to interrogatories and responses to requests for production was overbroad, unduly burdensome and inefficient; proposed area of inquiry improperly trespassed into areas of work product and attorney-client privilege).

Where a litigant flouts these principles, Rule 26(c) comes into play. It provides that "upon motion by a party or by the person from whom discovery is sought . . . the Court may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense . . .." Fed. R. Civ. P. 26(c); see also Gill v. Gulfstream Park Racing Assoc., Inc., 399 F.3d 391, 402 (1st Cir. 2005) (noting that Rule 26(c) is "highly flexible" and "requires an individualized balancing of the many interests that may be present in a particular case") (citation omitted); accord 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure, § 2036 (2d ed. 1994) (with respect to Rule 26(c), "a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule").

Under Rule 26(c), a court may limit discovery "if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit . . .." Rule 26(b)(2). The rule often has been applied to protect litigants from improper notices of deposition pursuant to Rule

30(b)(6). <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 244 F.3d 189, 192-93 (1st Cir. 2001) (upholding the quashing of a cumulative and duplicative Rule 30(b)(6) deposition subpoena; "fishing expedition" not permitted). <u>In re Independent Service Organizations Antitrust Litigation</u>, 168 F.R.D. 651, 654 (D. Kan. 1996), is instructive. In that case, the court issued a protective order that a 30(b)(6) deposition not take place where the notice was overbroad, burdensome, and "highly inefficient," and there was no substantial need to obtain the information via such a broad notice. The issuing party had failed to show the information could not be obtained by "less problematic means," or that the information was not available in "voluminous discovery" previously conducted in that case and a related case. <u>Id</u>. See <u>also</u> <u>Nicholas v. Wyndham Intern., Inc.</u>, 373 F.3d 537, 543 (4th Cir. 2004) (upholding protective order with respect to Rule 30(b)(6) deposition where there had been already been voluminous discovery).

**B.    The Discovery Sought By Plaintiffs Should Not Be Had.**

The Notices violate virtually all of the foregoing principles governing the scope and manner of discovery. The discovery they seek should not be had, per the express criteria of Rule 26(b)(2).

Given the vast quantities of information defendants already produced on many of the topics the Notices contain, the Notices are unreasonably cumulative and duplicative. Any legitimate and reasonable discovery is obtainable, and indeed already has been obtained, from other sources that are more convenient, less burdensome, and less expensive. Plaintiffs have had ample prior opportunity to conduct discovery, and have received over three million documents, including thousands of studies, research reports, and raw data regarding Neurontin. Just as in <u>In re Independent Service Organizations Antitrust Litigation</u>, the demanded Rule 30(b)(6)

depositions would be "highly inefficient," and there is no substantial need to obtain the information via the open-ended depositions plaintiffs are demanding. Plaintiffs either already have the information or could obtain it through "less problematic means."

Further, the burden and expense that the demanded depositions would entail far outweighs their likely benefit. Under Rule 30(b)(6), the production of a thoroughly-prepared witness is required. See, e.g., Berwind Property Group Inc. v. Environmental Management Group, Inc., 233 F.R.D. 62, 66 (D. Mass. 2005) (corporation has obligation to educate Rule 30(b)(6) designee). The cost and burden of preparing designees on the far-ranging and incredibly general topics contained in the notices would be enormous, and as to many topics would be, in any event, impossible. No witness could be adequately prepared to testify with respect to, for example, all of the computer systems, databases, email systems, hardware and software of Pfizer; to the "relationships" between Pfizer and all of its subsidiaries, affiliates, divisions and offices; to all of Pfizer's locations; or to the source by individual and department of all the over three million documents produced by defendants.

Moreover, much of the testimony the Notices seek simply would not be relevant to issues in this case, and the Notices therefore are not "tailored" relative to the needs of the litigation. For example, the attempt to broaden discovery into communications with Third Party Payors smacks of a fishing expedition fueled by a vague hope of finding some new theory of liability. Coming as it does at a time when the third party payors have been unable to identify the alleged cheaper alternatives to Neurontin for most of the indications at issue – a critical hole in their case – the demand for testimony as to these communications suggests a reach for a life preserver. (See Memorandum in Support of Motion to Compel Response to One Interrogatory, Docket # 778.) Likewise, the demand for testimony as to the corporate structure of Pfizer, the location of

all of its offices, its computer systems and its email systems seeks information that is neither relevant to the issues in the case nor tailored to any aspect of the case that might be relevant, and the discovery would do little or nothing to resolve the issues in the case. There is no valid reason or excuse for plaintiffs' wielding of the proverbial axe.

Also improper is plaintiffs' demand for a 30(b)(6) witness to identify documents in connection with many of the topics. This can only be a prelude to an attempt to justify further document discovery (despite some plaintiffs' assurance that such further discovery is not sought (Docket # 776 at 10)), perhaps to aid in the search for new theories of liability. Rule 30(b)(6) is not an appropriate vehicle for this purpose, which is time-barred in any event. A foray into an entirely new round of document discovery at this late date should not be allowed.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court enter a protective order that the depositions sought via the Notices not occur. Defendants do not request that the Court preclude plaintiffs from deposing defendants pursuant to Rule 30(b)(6). Plaintiffs have the right to Rule 30(b)(6) deposition(s) of defendants, just not the depositions the Notices contemplated. Defendants are fully prepared to comply with proper and timely Rule 30(b)(6) notices, if and when served.

Dated: July 5, 2007

DAVIS POLK & WARDWELL

By:    /s/ James P. Rouhandeh
　　　　James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

10

HARE & CHAFFIN

By:   /s/ David B. Chaffin
            David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and*
*Warner-Lambert Company*

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Rules 7.1 and 37.1, I certify that counsel have conferred in good faith to narrow the areas of disagreement to the greatest extent possible. The conferences took the form of written objections and at least one conference call on July 2, 2007.

/s/David B. Chaffin
David B. Chaffin

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on July 5, 2007.

/s/David B. Chaffin
David B. Chaffin