**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND ) | MDL Docket No. 1629 |
| SALES PRACTICES LITIGATION ) | |
| ———————————————) | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: ) | |
| ———————————————) | Judge Patti B. Saris |
| THE GUARDIAN LIFE INSURANCE ) | |
| COMPANY OF AMERICA ) | Magistrate Judge Leo T. |
| v. PFIZER, INC., ) | Sorokin |
| 04 CV 10739 (PBS) ) | |
| ———————————————) | |

**COORDINATED PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO**
**COMPEL RESPONSE TO ONE INTERROGATORY**

Aetna, Inc. ("Aetna"), Guardian Life Insurance Company of America ("Guardian"), and Kaiser Foundation Health Plan Inc. and Kaiser Foundation Hospitals (together "Kaiser"), (collectively "Coordinated Plaintiffs") submit this opposition to Pfizer Inc. and Warner-Lambert Company's ("Pfizer" or "Defendants") Motion to Compel Response to One Interrogatory, on the grounds that the information sought by Defendants is information that Defendants already have in their possession, is easily and readily available to Defendants, would be extremely burdensome for Coordinated Plaintiffs to gather and produce, potentially raises privacy concerns, and/or which is the proper subject of expert testimony.

## I.    INTRODUCTION

On March 13, 2007, Defendants served their second set of interrogatories on Coordinated Plaintiffs which included an interrogatory asking Coordinated Plaintiffs to identify the off-label uses of Neurontin for which they seek recovery and the interrogatory at issue, Number 2:

For each off-label use identified in response to Interrogatory No. 1, state, for each calendar year of the proposed Class Period, the name, dosage, NDC number, and cost to you of each drug that you contend would have been cheaper and more optimal than Neurontin in treating that condition. Describe how you identified these alternative drugs and how you arrived at these figures.

On April 12, 2007, Coordinated Plaintiffs served their first responses and objections to the second set of interrogatories, and objected to Interrogatory Number 2. After a meet and confer, Coordinated Plaintiffs agreed to respond to Interrogatory Number 2 by providing an initial list of alternative drugs that could be used in treating certain off-label conditions. On June 15, 18 and 19, 2007 the Coordinated Plaintiffs provided limited supplemental responses to Interrogatory Number 2, and further preserved objections to the interrogatory.[1]

## II.    **ARGUMENT**

Although discovery is generally available as to any non-privileged matter that is relevant to a claim or defense, a court may limit the scope of discovery, including interrogatories, "if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive…" Fed.R.Civ.P. 26(b)(2)(C). Where a discovery request calls for information that is already in the possession of the requesting party, a court may determine that the requesting party has a diminished need for the information and therefore limit the scope of such discovery. *See* Pacific Gas & Electric Co. v. United States, 69 Fed.Cl. 323, 326 (Fed. Cl. 2005) (limiting discovery where a requesting party already possessed the documents called for in a document request).

---

[1]    Aetna provided its supplemental response on June 15, 2007. Kaiser provided its supplemental response on June 18, 2007 and Guardian provided its supplemental response on June 19, 2007.

Interrogatory Number 2 is just such a discovery request because it seeks information that Coordinated Plaintiffs know through document discovery that Pfizer already possesses. This information is available to the public by outside vendors from which Pfizer regularly receives such information and uses such information in its day to day business. Furthermore, this interrogatory calls for detailed cost information from each Coordinated Plaintiff, which pertains to damages and is the proper subject of expert testimony rather than interrogatories. Finally, as Coordinated Plaintiffs have previously represented to the court on several occasions, they intend to rely on industry data in calculating damages, rather than individual medical records. Thus, to the extent that the interrogatory calls for information pertaining to individual medical records, as it would as presently drafted by Defendants, this subject has been previously litigated and won by the Coordinated Plaintiffs and is not a proper subject of discovery at this stage of the litigation.

In Interrogatory Number 2, for each year in the Class Period and for each off-label indication of Neurontin that is the subject of this litigation, Defendants have asked for the name of the other drugs that are prescribed to treat the off-label indications for which Neurontin was prescribed for each patient. Defendants also seek the dosage, NDC number, and the cost of each such drug that Coordinated Plaintiffs contend are cheaper than Neurontin for particular individuals. Defendants further request information regarding the way in which Coordinated Plaintiffs identified these more optimal drugs and arrived at these figures. It should be noted that a number of these more optimal drugs have already been identified in the Coordinated Plaintiffs' third amended complaint and discovery responses.

### A. Names of Drugs

Pfizer's request for the names of drugs that are used to treat the off-label indications for which Neurontin was prescribed is unreasonably duplicative of market research that Pfizer already conducts in its normal course of business. Nevertheless, the Coordinated Plaintiffs have already provided Defendants with an initial response to Interrogatory Number 2, which they will further supplement following expert discovery. Further information is unwarranted at this time since Pfizer possesses extensive knowledge regarding the drugs against which Neurontin competes, for off-label as well as on label indications of Neurontin.

Pfizer keeps detailed records and conducts extensive research on the markets in which Neurontin is prescribed and competes with other drugs. *See* Exh. A attached hereto. For instance, Exhibit A reflects the percentage of sales of Neurontin as compared to other drugs with which Neurontin competes. *Id.* at Pfizer_Amishra_0002331. Furthermore, it tracks the various uses of Neurontin as well as its competitors, including for off-label uses. *Id.* at Pfizer_Amishra_0002339. It is also clear from Exhibit A that Pfizer was monitoring the "competitive threats" to Neurontin. *See id.* at Pfizer_Amishra_0002346. As stated on various slides that make up this presentation, the source of the information on which Pfizer relies in its own business records, is IMS and Scott-Levin PDDA. These are services to which pharmaceutical companies, including Pfizer subscribe.

Pfizer is well aware of and actively tracks as a part of its normal course of its business, the drugs that compete against Neurontin for the indications for which Neurontin is marketed, off-label or on. Thus, Pfizer's request for such information is

duplicative and already known to Pfizer.  Furthermore, the information is obtainable from some source other than Coordinated Plaintiffs that is far more convenient and less burdensome to all parties, namely Pfizer's own internal research and the industry data that Pfizer subscribes to and is relied upon by Pfizer in its ordinary course of business.

### B.  Dosage

The dosing options for each competing drug is also public information, which is readily available to the Defendants.  This information is also available in the PDR and publicly available labeling information.  Since Pfizer conducts market research in each off- label use of Neurontin and tracks the drugs it competes against, it also is aware of the limited number of dosing options for each competing drug.

### C.  NDC Number

Just as with dose, a drug's "NDC number" is public information.  Since Pfizer is well aware of which drugs it competes against in which off-label markets (as exemplified in Exhibit A), Pfizer's request for NDC numbers is duplicative and burdensome and is, without question, more "obtainable from some other source that is more convenient." Fed.R.Civ.P 26(2)(C).

The Drug Listing Act of 1972 requires registered drug establishments to provide the Food and Drug Administration ("FDA") with a current list of all drugs manufactured, prepared, propagated, compounded, or processed by it for commercial distribution.  *See* Section 510 of the Federal Food, Drug, and Cosmetic Act (Act), 21 U.S.C. § 360 (2004). Drug products are identified and reported using a unique, three-segment number, called the National Drug Code (NDC), which is a universal product identifier for human drugs. The FDA inputs the full NDC number and the information submitted as part of the listing

process into a database known as the Drug Registration and Listing System.   Thus, since Pfizer is aware which drugs it competes against, it also has the means of acquiring not just the dosages of those drugs, but also the NDC number for each of those drugs as well.

### D. Cost

Not surprisingly, Pfizer is also able to receive cost information about the drugs against which Neurontin competes from public sources. Average wholesale pricing information for drugs is a figure reported by commercial publishers of drug pricing data, such as First DataBank and Thomson Medical Economics. According to the Red Book, published by Thomson Medical Economics, the pricing information is "based on data obtained from manufacturers, distributors, and other suppliers."  This pricing information is then sold to the public including government entities, private insurance companies, and other purchasers and manufacturers of prescription drugs, including Pfizer.  This issue was addressed at the September 27, 2006 hearing before Judge Saris, where Mr. Himmelstein stated:  "the FDA has a list of what drugs are approved for what condition. . . There's a list of what drugs are approved for what condition, and there's data about how frequently they're prescribed for each condition and the average cost to the penny of those prescriptions."  Pfizer is therefore well aware of the average wholesale costs of each of the drugs against which Neurontin competes off-label, which should more than satisfy Defendants' Rule 11 concerns on page 5 of its memorandum in support of its motion to compel.

Insofar as Pfizer seeks exact pricing data from each of the Coordinated Plaintiffs for each drug that competes against Neurontin, such a request is unduly burdensome and premature at this point in the litigation. Expert reposts and testimony surrounding

damages, the only subject for which exact pricing data is required over average wholesale price for any competing drug, will be forthcoming in due time as Coordinated Plaintiffs are in the process of procuring a damages expert to collect and analyze pricing information for use in expert damages calculations. However, at this point in the litigation, issues pertaining to damages are premature and certainly not the proper subject of initial discovery through interrogatories. If Rule 11 pleading concerns found on pages 5 and 6 of Defendants' memorandum are the basis for this interrogatory, then the Average Wholesale Price information available to the public and which Pfizer already possesses is more than satisfactory to meet Pfizer's informational needs and notify them of the facts that underlie the allegations in the third amended complaint.

### E. How Plaintiffs arrived at these drugs and figures

Pfizer makes much of the fact that Plaintiffs' response to their interrogatory was to cut and paste a chart of Pfizer's outlining competing drugs for various off-label indications. That Pfizer has such information demonstrates that the best way for anyone to arrive at this information is to review public records and Pfizer's own marketing research about the drugs against which Neurontin competes. Thus, the production of this information by Coordinated Plaintiffs would be duplicative of information readily available to the Defendants.

Dated: July 9, 2007

**For Plaintiff Guardian Life Insurance Co. Of America:**

/s/ Thomas G. Shapiro
Thomas G. Shapiro (BBO # 454680)
Theodore Hess-Mahan (BBO # 557109)
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

**OF COUNSEL:**

**KAPLAN FOX & KILSHEIMER LLP**
Linda P. Nussbaum, Esq.
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

**RAWLINGS & ASSOCIATES, PLLC**
Mark D. Fischer, Esq.
Mark Sandmann, Esq.
325 W. Main Street
Louisville, KY 40202
Telephone: (502) 587-1279
Facsimile: (502) 584-8580

**For Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals:**

/s/ Thomas G. Shapiro
Thomas G. Shapiro (BBO # 454680)
Theodore Hess-Mahan (BBO # 557109)
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA 02109
Telephone: 617-439-3939
Facsimile: 617-439-0134

**OF COUNSEL:**

**KAPLAN FOX & KILSHEIMER LLP**
Linda P. Nussbaum, Esq.
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

**For Plaintiff Aetna, Inc.:**

/s/ Peter A. Pease
Peter A. Pease, Esq. (BBO # 392880)
**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194

**OF COUNSEL:**

**LOWEY DANNENBERG BEMPORAD & SELINGER, P.C.**
Richard Bemporad, Esq.
Richard W. Cohen, Esq.
Gerald Lawrence, Esq.
Peter St. Phillip Jr., Esq.
Todd S. Garber, Esq.
White Plains Plaza - - 5th Floor
One North Broadway
White Plains, NY 10601-2310
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**
Joseph J. Tabacco, Jr., Esq.
425 California Street, Suite 2025
San Francisco, CA 94104-2205
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

**JOHN F. INNELLI, LLC**
John F. Innelli, Esq.
1818 Market Street, Suite 3620
Philadelphia, PA 19103
Telephone: (215) 5612-1011
Facsimile: (215) 561-0012

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3.

ATTORNEY FOR PLAINTIFFS


/s/ Linda P. Nussbaum
LINDA P. NUSSBAUM