UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :   MDL Docket No. 1629
In re:  NEURONTIN MARKETING, SALES                            :
        PRACTICES, AND PRODUCTS LIABILITY                     :   Master File No. 04-10981
        LITIGATION                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Judge Patti B. Saris
                                                              :
THIS DOCUMENT RELATES TO:                                     :
                                                              :   Magistrate Judge Leo T.
                                                              :   Sorokin
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
                                                              :
ALL ACTIONS                                                   :
                                                              :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**DEFENDANTS' RESPONSE TO SALES AND MARKETING PLAINTIFFS' MOTION FOR EXTENSION OF FACT DISCOVERY DEADLINE AND FOR LEAVE TO TAKE ADDITIONAL WRITTEN AND DEPOSITION FACT DISCOVERY**

Defendants Pfizer Inc. and Warner-Lambert Company ("defendants") submit this memorandum in response to Sales and Marketing Plaintiffs' Motion for Extension of Fact Discovery Deadline and For Leave To Take Additional Written and Deposition Fact Discovery.

**PRELIMINARY STATEMENT**

Defendants do not oppose a reasonable extension of time solely for the purpose of conducting previously-noticed depositions, provided that the extension does not disrupt the orderly progress of the litigation and does not allow plaintiffs to use the additional time to notice new depositions of defendants and non-parties or propound additional written discovery. The time has come to complete the depositions of fact witnesses that have been noticed and proceed thereafter to the expert discovery phase of the litigation, not to open up the carefully crafted discovery schedule to allow new, unspecified discovery efforts.

After plaintiffs first raised the issue of an extension at the April 17, 2007 discovery conference, the Court informed plaintiffs that they could confer with defendants and brief this issue for the May discovery hearing. See April 17, 2007 Hearing Transcript (Dckt #768) 23:24 – 24:6. The May discovery conference came and went without a motion. No motion was made in advance of the conference scheduled for June. Now, having waited months to make their motion, plaintiffs belatedly couple it with a request to expand discovery substantially, without making the required showing of good cause.

Equally importantly, the schedule proposed by plaintiffs would significantly prejudice defendants with respect to the product liability cases by forcing defendants to participate in expert discovery before the completion of depositions of fact witnesses. Defendants oppose any change in the fact discovery schedule that does not include a commensurate extension of the expert discovery schedule and all subsequent deadlines in the product liability cases.

The Court should deny plaintiffs' request that defendants produce 8 to 10 additional current or former employees for deposition, because the request is untimely and not supported by good cause as required by CMO 5. The Court also should deny plaintiffs' request to "complete" document discovery. The timing of defendants' document productions certainly does not justify plaintiffs' request to take more discovery, as defendants produced documents on a rolling basis throughout the period established by the Court for document discovery in compliance with interim production dates agreed to by the parties or ordered by the Court. Plaintiffs waited too late to argue that they need additional documents from, and depositions of, defendants and non-parties. Knowing full well that the period for taking depositions was coming to a close, plaintiffs did not serve notices for a single deposition of a non-party during the deposition period, including those non-parties from whom plaintiffs already have received voluminous documents.

Plaintiffs should not be allowed to notice and take such depositions now. Nor should plaintiffs' lack of diligence in obtaining documents from non-parties be rewarded with an extension of time to permit them to obtain such documents long after the close of the period for document production.

The depositions that the parties have already noticed can be completed by September 30, 2007, and defendants consent to an extension of time solely for the purpose of taking such depositions by that date. Defendants oppose an extension until November 15, 2007, unless the product liability plaintiffs consent to move the expert discovery schedule. If those dates are not moved, plaintiffs' proposed schedule would require defendants to depose plaintiffs' experts and produce their own experts while depositions of fact witnesses are still on-going. Such a sequence makes no sense, would defeat the purpose of this MDL, and would give plaintiffs an unfair tactical advantage in this litigation. Plaintiffs' suggestion that the expert discovery to take place in the product liability cases in October and November is somehow limited to the two Track One cases is simply wrong. Expert reports and depositions relating to general causation and marketing issues will occur during that period, and will be the subject of Daubert and summary judgment motions that will be binding on all product liability cases. It is patently unreasonable to force defendants to commence and, in some cases, complete that expert discovery prior to the completion of fact discovery.

## ARGUMENT

### I. The Court Should Deny Plaintiffs' Request For Additional Discovery

The opening paragraph of plaintiffs' memorandum seeks more time to "complete document discovery on Defendants and relevant third parties, to schedule and take the depositions of relevant third parties," and to take 8 to 10 additional unspecified depositions of

defendants' current and former employees. Pls.' Mem. at 1. Plaintiffs' request should be denied. Document discovery closed on April 30, 2007, and plaintiffs' motion, brought ten weeks after that date, provides no basis to allow additional document discovery. In addition, plaintiffs are deposing thirty current and former employees of defendants. Plaintiffs did not timely object to the order setting that limit, yet now ask the Court to increase it without demonstrating good cause for taking the deposition of even a single additional witness. Finally, the time has passed for plaintiffs to seek documents and depositions of non-parties.

**A.      The Court Should Deny Leave for Additional Written Discovery from Defendants**

The Court should deny plaintiffs' attempt to open the door to additional written discovery at this late stage of the litigation. Plaintiffs argue that one reason they need a four-month extension is to allow them to "review and follow up on document discovery from Defendants to ensure complete production of all relevant documents." Pls.' Mem. at 9. While plaintiffs claim that they would not serve new document requests, but would, if necessary, "move to compel documents not yet produced" in response to prior requests, id. at 10, this is a distinction without a difference. Plaintiffs' discovery requests were so overly broad – formulated in such a way as to encompass every scrap of paper bearing the word Neurontin (and many documents without even that connection) – that plaintiffs can try to cast any request for additional documents as being "in response to requests already propounded." Id. The period for document discovery closed over two months ago, and the Court should deny plaintiffs' attempt to re-open that period at this late date.

The timing of defendants' productions does not justify plaintiffs' request. Despite plaintiffs' repeated efforts over the course of this case to characterize defendants' conduct in producing document as somehow deficient, plaintiffs' own memorandum demonstrates

4

defendants' diligence. Defendants produced documents in the summer of 2005 that were not implicated in the dispute over the appropriate time period for discovery.[1] Defendants also worked diligently in 2005 and early 2006 to produce documents from non-sales and marketing custodians to product liability plaintiffs in the *Young* litigation in New York state litigation.

Once the final discovery period for this MDL was established, Discovery Order No. 7 set forth a clear schedule, including interim production dates agreed to by the parties, for the production of documents in this case. With very few exceptions, defendants met these dates. Indeed, plaintiffs' own chart tracking produced pages by month shows a steady, rolling production beginning in September 2006.[2] Pls.' Mem. Ex. A. The only "spike" in the volume of this rolling production occurs in February 2007, when defendants produced over 1.4 million pages of documents. Plaintiffs fail to acknowledge, however, that defendants had produced almost one million of those pages months earlier, in connection with the *Young* litigation in New York. As early as summer 2006, the product liability plaintiffs had granted access to those documents to the sales and marketing plaintiffs through a sharing agreement. After the parties and the Court resolved an issue of redactions made to those documents in the New York state proceeding, defendants re-produced those materials in the MDL in February 2007.

Plaintiffs' memorandum also is misleading in noting that defendants produced documents from the files of more than 80 individuals "as late as June 22, 2007." Pls.' Mem. at 5. Plaintiffs'

---

[1] Plaintiffs state that up to January 31, 2006, defendants had produced only "a handful" of documents outside of the *Franklin* production. Pls.' Mem. at 3. Plaintiffs fail to mention, or reference on the tracking charts attached to their memorandum, that in that period defendants also produced thousands of pages of Neurontin research reports, thousands of Neurontin articles, and the Merlin / Pfoenix database. Defendants also made the Neurontin NDAs and INDs, as well as hundreds of boxes of underlying materials relating to Neurontin clinical studies, available for inspection and copying in the summer of 2005.

[2] Plaintiffs' memorandum is conspicuously silent regarding the 230,000 pages defendants produced in the MDL in September and October 2006, as indicated on plaintiffs' own tracking chart. See Pls.' Mem. Ex. A.

count includes defendants' April 30, 2007 production, which the Court expressly allowed.[3] Moreover, the vast majority of that production consisted of post-May 2004 documents that are responsive and relevant only in the products liability cases.

Defendants produced approximately 5,800 pages of documents (enough to fill about two boxes) from the files of current or former employees, to the sales and marketing plaintiffs after April 30, 2007.[4] Exhibit A to plaintiffs' memorandum grossly inflates the number of pages defendants produced to the sales and marketing plaintiffs in June 2007 by including approximately 83,500 pages of post-May 2004 documents relating to the products liability cases that defendants produced to the products liability plaintiffs on June 7, 2007. These documents are from outside the discovery period for, and are not relevant to, the sales and marketing plaintiffs' cases.[5]

---

[3] When the Court granted defendants' motion for a two-week enlargement of time within which to produce documents, the Court also provided a commensurate two-week extension to the start date for depositions, until May 29, 2007. See Discovery Order 11 (Dckt # 735) at 2. Accordingly, plaintiffs were not prejudiced by the Court's two week extension, nor by defendants' production of materials on April 30.

[4] After April 30, 2007, defendants made supplemental productions to plaintiffs from the files of approximately 24 individuals (as well as certain non-custodial documents). Defendants had produced the vast majority of responsive documents from each of these individuals' files well before April 30, 2007, and the number of pages included in these supplemental productions was often quite small. For example, defendants produced fewer than 100 pages from the files of 14 of these individuals, and for 6 individuals defendants produced fewer than 10 pages. Moreover, but for a production totaling 21 pages from Charlie Taylor's files made shortly after the close of Taylor's deposition, defendants completed their production of documents from the files of individuals scheduled to be deposed in advance of each individual's deposition.

[5] Plaintiffs' memorandum fails to mention the fact that in mid-May 2007, plaintiffs provided defendants with over 100,000 pages of documents plaintiffs subpoenaed from non-parties. Defendants had requested copies of all such documents plaintiffs received in the fall of 2005, and requested them again in February 2007, following up in March and April 2007. Plaintiffs had at least some portion of these documents in their possession at the time of the February 2007 request and needed only to make a copy of the documents for defendants. Despite this fact, plaintiffs failed to provide the copies until almost two weeks after the close of document discovery in this case. In light of this delay, it is not at all clear that plaintiffs should even be able to use these documents, let alone leverage plaintiffs' own delay into an extension of time to take depositions.

**B.     The Court Should Deny Leave for 8 to 10 Additional Depositions of Defendants**

Plaintiffs seek a Court order allowing them to take 8 to 10 additional depositions of present and former company employees, without even attempting to articulate who those witnesses would be or the grounds for this request. The Court should deny the request. Plaintiffs are taking the depositions of thirty current and former employees, each of which is 14 hours.[6] About twenty of these depositions will be completed by the time the Court hears argument on this motion. The depositions have included, for example, seven members of the Pfizer U.S. Neurontin Marketing team, four sales vice presidents / regional managers, and two members of Pfizer's U.S. Medical Information Group. Plaintiffs have frequently used the same documents and pursued the same lines of questioning in each of the depositions taken to date, regardless of the individual witness's title, responsibilities or personal knowledge. Additional depositions will be duplicative and unnecessary, and plaintiffs have made no attempt to explain the grounds for their request. Plaintiffs have simply ignored the Court's requirement that requests for additional depositions will be granted only upon good cause shown. See CMO 5 (Dckt # 736) at 2.

In an attempt to support their request, plaintiffs note that "[t]he allegations in this case span a period of ten years and encompass two very large companies." Pls.' Mem. at 10. Both these facts were equally true when the Court set a limit of 30 depositions of current and former employees. Nothing has changed in this regard since that time. Plaintiffs' suggestion that the review of documents – both "remaining" documents from defendants and those from third-parties – and information obtained through depositions will "yield the identities of additional

---

[6] In addition to these 30 fact witness depositions, plaintiffs have made liberal use of Rule 30(b)(6), having served five notices of deposition pursuant to that rule seeking testimony covering a very broad range of topics.

former or current employees with information important to Plaintiffs' claims" is equally unavailing. Pls.' Mem. at 10. Plaintiffs have had the bulk of defendants' documents for many months. If plaintiffs, during the course of taking currently scheduled depositions, do learn of someone important to their claims of whom they could not have previously been aware, they should meet and confer with defendants at that time regarding whether good cause exists to take that person's deposition. The Court should deny, however, plaintiffs' request, made in a vacuum, for an order allowing 8 to 10 additional depositions at this time.

**C.     The Court Should Deny Leave for Non-Party Documents and Depositions**

Plaintiffs have failed to pursue depositions of non-parties within the period allocated by the Court, and the Court should deny their request to notice and take such depositions in the future. Plaintiffs provide no hint as to the identity of the non-parties they hope to depose, the status of document productions relating to such non-parties, or the number of depositions they hope to take from these entities. Defendants are aware, however, that plaintiffs received documents from some non-parties well in advance of the close of the period for document discovery, and therefore have no excuse for their failure to notice depositions of those entities. For certain other non-parties, plaintiffs failed to take sufficient steps during the document discovery period to ensure the production of documents. The time has passed for plaintiffs to pursue documents or notice depositions, particularly as plaintiffs blatantly state that they will use documents from third-parties to support a request for new depositions of defendants' former and current employees. Pls.' Mem. at 9. Despite plaintiffs' frequent protestations of diligence, they apparently failed to review documents from non-parties as they received them, failed to move to compel documents that they clearly would not otherwise receive prior to the deadline for document discovery, and failed to notice any depositions of non-parties whatsoever in the

8

allotted period. The Court should decline to reward this failure and should deny plaintiffs' request for more time to seek or obtain discovery from non-parties.

This is particularly true for the non-parties that produced documents to plaintiffs well in advance of the April 30, 2007 cut-off for document discovery, or that informed plaintiffs that they had no responsive documents. Plaintiffs had no reason for failing to notice depositions of those groups. Those vendors, according to copies of documents defendants received from plaintiffs in mid-May 2007, are Physicians World (about 4,300 pages); Custom Learning Designs (about 450 pages); Current Medical Directions (over 13,000 pages); Pro-Com International (about 450 pages); Fallon Medica (about 8,600 pages); Vox Medica (over 100,000 pages); MedCon (over 2,000 pages); the Impact Group (over 1,500 pages); CME Inc. (about 1,700 pages); and Medical Education Resources (approximately 40 documents, accompanied by a letter explaining no additional responsive documents exist). Plaintiffs provided defendants with copies of only a few of the cover letters that accompanied the documents non-parties produced to plaintiffs, so defendants have no way to know when every production occurred. A number of productions, however, had been made as early as Summer 2005. See July 9, 2007 Declaration of Deborah L. MacGregor (MacGregor Decl.) Ex. A (August 12, 2005 letter from Jeff S. Gibson, Esq. to Patrick Murray, Esq. (identifying documents plaintiffs had received from non-parties to date)).

In addition, plaintiffs filed a motion to compel the production of documents from seven specific vendors. See Plaintiffs' Motion to Compel Production of Documents from Non-Parties Sudler & Hennessy, Cline Davis & Mann, Ferguson, Adelphi Inc., Current Medical Directions Inc., Fallon Medica, and the Impact Group (Dckt # 549). The Court granted the motion with respect to those vendors. See Discovery Order 7 at 4. Plaintiffs already have received

9

documents from Fallon, the Impact Group, and Current Medical Directions, copies of which they provided to defendants in mid-May 2007. In addition, counsel for defendants possessed and produced over 120,000 pages of Sudler & Hennessey and Cline Davis & Mann materials in October 2006.[7] Yet, plaintiffs did not seek a single deposition of these non-parties either.

To the extent that there are any other vendors from whom plaintiffs subpoenaed, but did not receive, documents, plaintiffs cannot now seek the production of such documents or depositions from those entities.[8] Having failed to move to compel documents from these vendors during the time period for document discovery, plaintiffs cannot be heard now to demand the production of such documents and accompanying depositions. Plaintiffs waited until almost three months after the close of document discovery in this case to raise this issue, and this request is untimely.

## II.     Any Extension Must Be Appropriately Tailored

As noted in plaintiffs' memorandum, defendants do not oppose an extension until September 30, 2007, and believe this would be sufficient time in which to complete the depositions that have been noticed to date in this litigation. Defendants would not oppose an extension to November 15, 2007 to complete depositions already noticed in this case only if two

---

[7] Plaintiffs' Emergency Motion for Order to Show Cause Why Sudler & Hennessey and Cline Davis & Mann Should Not Be Sanctioned For Their Failure To Comply With This Court's December 20, 2006 Order (Dckt # 772) appears to seek materials that are at least in part duplicative of materials that defendants produced to plaintiffs eight months ago. The motion also appears to have been filed for the purpose of providing some basis for plaintiffs' arguments in the current motion, as defendants understand that counsel for Sudler & Hennessey and Cline Davis & Mann was in the midst of arranging for documents to be provided to plaintiffs for inspection and copying when plaintiffs filed the Order to Show Cause. It also should be noted that defendants did not, and do not plan to, review documents in the possession of these vendors in advance of the vendors' production to plaintiffs.

[8] Defendants have requested that counsel for plaintiffs specifically identify any vendors from which they are continuing to seek documents, but plaintiffs refused. See MacGregor Decl. Ex. B (May 25, 2007 Letter from Jeff S. Gibson to Deborah L. MacGregor). Accordingly, defendants do not know the number or identity of entities at issue. In addition, plaintiffs subpoenaed a number of physicians, and it is unclear whether they will seek to depose the physicians as well. If they do, defendants oppose such depositions, as it appears many of the doctors produced documents two years ago. See MacGregor Decl. Ex. A.

conditions are met: (i) the September 15, 2007 conclusion of fact discovery relating to the two Track One cases remains the same; and (ii) the other product liability dates (*i.e.*, those relating to experts, summary judgment, and trial) be pushed back at least three months, such that they do not occur until a reasonable period of time after November 15. The former condition ensures that case-specific fact discovery for the Track One cases wraps up on schedule, while the latter condition avoids an inappropriate and prejudicial result.

The current schedule in the product liability cases affords defendants a needed window after the close of fact discovery and before expert designations within which to prepare their experts. The product plaintiffs' proposed approach to an extension does away with that window by extending the time to complete fact depositions until November 15, 2007 but requiring defendants to produce their expert reports by November 7, 2007. Discovery Order 7 (Dckt #582) at 2. Any extension of time should not require defendants to forfeit the period between the end of all fact discovery and the commencement of expert discovery.

Moreover, in addition to case-specific expert witnesses, the current product liability schedule establishes expert deadlines for general causation, as well as all other issues in the two Track One cases. Counsel for product liability plaintiffs have indicated that they will designate two sales and marketing experts and two experts on general causation. Under the current schedule, which product liability plaintiffs argue the Court should maintain, defendants must depose plaintiffs' experts by October 21, 2007, and provide their own expert reports by November 7, 2007.[9] Discovery Order 7 (Dckt # 582) at 2. Accordingly, under product liability plaintiffs' proposed approach to an extension, these critical events would occur *before* the end of

---

[9] In addition, the current schedule requires defendants to produce their experts for depositions by November 30, 2007, so at least some of defendants' experts likely would be deposed prior to November 15, 2007.

the fact deposition period. Depositions of defendants' current or former employees whose testimony may be highly relevant to issues of general causation or sales and marketing could occur after these expert deadlines have passed, thus depriving defendants of the ability to factor this information into their depositions of plaintiffs' experts, or provide this information to their own experts in advance of preparation of expert reports. Even if the product liability plaintiffs truly are prepared to disclose their experts with less than a complete record, defendants are not, and the Court should not require them to do so.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court enter an Order extending the deposition period only for the purposes of completing depositions that were previously and timely noticed and denying plaintiffs' request to take additional written and deposition discovery.

Dated: June 9, 2007

                                                        DAVIS POLK & WARDWELL

                                                        By:   /s/ James P. Rouhandeh
                                                                James P. Rouhandeh
                                                                Deborah L. MacGregor

                                                       450 Lexington Avenue
                                                       New York, New York 10017
                                                       (212) 450-4000

                                                              - and -

HARE & CHAFFIN

By:   /s/ David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on July 9, 2007.

                                               /s/David B. Chaffin