UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION ) ) ) ) | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS ) ) ) ) ) ) | Master File No. 04-10981<br><br>Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS PFIZER INC.
AND WARNER-LAMBERT COMPANY'S MOTION FOR
PROTECTIVE ORDER CONCERNING RULE 30(b)(6) DEPOSITION NOTICE**

**I. INTRODUCTION**

Just like Defendants Pfizer Inc. and Warner-Lambert Company (collectively "Defendants"), Plaintiffs have served notices for depositions under Rule 30(b)(6) of the Federal Rules of Civil Procedure. The Notices at issue seek discoverable deposition testimony from Defendants on three general areas—1) Defendants' Communications with Third-Party Payors or managed care plans (the Coordinated Plaintiffs and part of the alleged class); 2) Defendants' Document Production; and 3) Defendants' Corporate Structure. Defendants have opposed those notices on various grounds including the unsubstantiated contention that their communications with the Coordinated Plaintiffs and that portion of the alleged class which includes third-party payors is not at issue in this case. This contention ignores the actual allegations in the Third Amended Coordinated Plaintiffs' Complaint (attached as Exhibit 1 to the Declaration of Aviah Cohen Pierson (*See*, *e.g.*, underlined portions)) and apparently seeks to avoid permitted discovery into Defendants' efforts to fraudulently promote Neurontin to those Plaintiffs, as is shown by some of the documents produced by Defendants. Similarly, Defendants' other

objections to the Notices ignore that many of these very same topics were first used by Defendants in their 30(b)(6) deposition notices to plaintiffs. Obviously, Defendants believed those topic descriptions to be reasonable and within the scope of Rule 26 when they sought deposition testimony from the plaintiffs on such topics. Defendants' motion for a protective order should be rejected and plaintiffs permitted to proceed with these depositions.

## II. LEGAL ARGUMENT

Under Rule 26, the plaintiffs are entitled to all discovery reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26. Other courts have permitted depositions on the type of topics Plaintiffs have included in the 30(b)(6) deposition notices that are at issue in this motion. *See, e.g., Sanyo Laser Products v. Arista Records*, 214 F.R.D. 496 (S.D. Ind. 2003)(motion for a protective order denied regarding a Rule 30(b)(6) notice of deposition where the notice sought testimony about business relationships between or among different divisions of the company, "including but not limited to financial relationships, ownership relationships, managerial relationships, [and] reporting relationships." *Id*. at 503. As the *Sanyo Laser Products* court noted, Rule 30(b)(6) was designed to prevent business entities from "bandying." *Id*. According to Fed.R.Civ.P. 30(b)(6) Advisory Committee's Note, bandying is the practice "by which officers or managing agents of a corporation [or government agency] are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." *Id*. *See also Minebea v. Papst*, 2005 WL 2106565 (D.D.C 2005)(motion to quash notice of deposition under 30(b)(6) and motion for protective order denied even though "the topics are undeniably broad, the Court finds them to be reasonable ones for discovery.")

Numerous courts have permitted 30(b)(6) depositions to gather information on document retention, collection, production, and destruction. *See, e.g., E*Trade Securities LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 590 (D. Minn. 2005) (discussing testimony of 30(b)(6) deponents on topic of document retention and destruction practices); *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 439 F.Supp.2d 524, 563 (E.D. Va. 2006) (noting that Director of Litigation at defendant company testified as 30(b)(6) witness and discussed retention of documents); *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1065 (N.D.Cal. 2006) (plaintiffs conducted 30(b)(6) deposition on topic of document preservation and collection); *U.S. v. Philip Morris USA, Inc.*, 327 F.Supp.2d 21, 26 (D.D.C. 2004) (requiring defendants to pay costs of 30(b)(6) deposition on topic of e-mail destruction practices); *Alexander v. F.B.I.*, 188 F.R.D. 111, *118 (D.D.C. 1998) (denying motion to quash 30(b)(6) deposition that would address, *inter alia*, document preservation practices); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 149-51 (S.D.N.Y. 1997) (finding that defendant had supplied inadequately prepared witness for 30(b)(6) deposition because witness was unprepared to discuss method and manner in which documents were collected, reviewed, and produced for litigation).

**A) <u>30(b)(6) Deposition Notice Regarding Defendants' Communications with Plaintiff Third-Party Payors or Managed Care Plans</u>**

Defendants have objected to this Notice on the grounds that such communications are not relevant to this case. This argument is simply unfounded. For example, at very beginning of the Third Coordinated Amended Complaint, the Coordinated Plaintiffs clearly placed at issue Defendants' communications with third-party payors (also known as managed care plans or health insurers). Those allegations include, as examples, the following:

> Defendants (a) deliberately misrepresented the scientific, medical and clinical data concerning the safety, effectiveness and usefulness of Neurontin; (b) suppressed or mischaracterized negative studies of the drug; and (c) caused misleading presentations to be made **to Plaintiffs** and physicians concerning Neurontin, its recommended and effective dosages, efficacious uses and lack of purported side effects." Paragraph 2 of the Third Coordinated Amended Complaint

> Indeed, **the financial success of Defendants' scheme depended upon targeting Plaintiffs, other health insurers**, and doctors. Paragraph 4 of the Third Coordinated Amended Complaint.

> Central to Parke-Davis's marketing effort were Plaintiffs and other TPPs, which paid the vast majority of the cost of Neurontin prescribed for patients. To facilitate those sales, Warner-Lambert had a "Health Care Management" division whose sole responsibility was to market pharmaceutical products, including Neurontin, **to Plaintiffs and other TPPs**. Paragraph 27 of the Third Coordinated Amended Complaint.

> Scientific data and evidence did not exist supporting such off-label uses, and Defendants made, and caused others to make, misrepresentations and false statements as part of their publication strategy in order to persuade . . . Plaintiffs and other TPPS to pay for the drug. Paragraph 33 of the Third Coordinated Amended Complaint.

Additionally, Defendants' refusal to allow this deposition is unreasonable. Defendants themselves seek to depose third-party payors on their communications with others about Neurontin. Declaration of Aviah Cohen Pierson, Exhibit 2. For example, in Topic 10 of one of Defendants' 30(b)(6) notices, they seek to depose third-party payors on "Any communications that you had with your third-party administrators, your pharmacy benefit manager(s) or any other person or entities regarding Neurontin." *Id.*; *See also* Declaration of Aviah Cohen Pierson, Exhibits 3 and 4. The Sales and Marketing Plaintiffs assume that Defendants believed their request for such a deposition of a third-party payor plaintiff regarding **all** communications with **any person or entity** was reasonable and within the scope of the discovery permitted by the

Federal Rules of Civil Procedure. Significantly, in Topic 13 of that same 30(b)(6) deposition notice, Defendants sought to depose third-party payors on "Any communications that you or any entity on your behalf had with Defendants regarding Neurontin or other prescription drugs." Certainly, a request to depose Defendants simply on the topic of their communications with the third-party payors, who are plaintiffs in this case, regarding Neurontin should be within the scope of permissible discovery.

Furthermore, documents produced by Defendants in this case demonstrate that Defendants spoke with third-party payors to insure that they would not limit the use of Neurontin. In an email, dated January 25, 2001, Neurontin World Wide Team Leader John Marino (a Pfizer employee) framed one of the issues with managed care plans or third-party payors as: "[e]ssentially, the basis is this – how can we justify the premium cost of NEURONTIN in Neuropathic Pain versus alternative, generic, lower cost therapies . . . ?" Declaration of Aviah Cohen Pierson, Exhibit 5. There was concern at the time within Pfizer that a surge in Neurontin sales related to the neuropathic pain launch that Pfizer was preparing would cause managed care plans to begin limiting use of the drug. For example, in the following email to Mr. Marino, the head of the Neurontin Outcomes Research Task Force, on January 25, 2001, discusses these concerns:

> There comes a time when the sheer volume of sales pushes the product on the radar of MCOs [managed care organizations]. I was wondering and really anticipating that with a launch in the NPP [neuropathic pain] area – with a further surge in product growth – if all of a sudden the request for health system impact information and formal C/E [cost effectiveness] would start to roll in. Then the

>prior authing and third tiering start to come into play. Do you anticipate this happening?[1]

*Id.* at 0024640. Mr. Marino responded later that same day:

>Ellen,
>
>In fact, in Scottsdale, AZ, at the beautiful 4 Seasons, there is a meeting with Managed Care to discuss this exact topic. Let's see how it goes once we receive their feedback. You are amazingly correct to suspect something here, but NTN [Neurontin] has amazingly been under the radar screen. The NeP [neuropathic pain] launch could change that.

*Id.*

The meeting to which Mr. Marino refers was one of a series of three advisory boards held during the first half of 2002 to influence key managed care plans and their controls over Neurontin. Among the invited participants in the advisory boards were 46 participants in the managed care market place, including 26 senior executives from regional and national health plans, and nine executives from regional and national pharmacy benefit management organizations. One of Defendants' goals was to "enhance Pfizer's relationships with important managed care customers." *See, e.g.,* Declaration of Aviah Cohen Pierson, Exhibit 6. Among the presentations made by Pfizer during the advisory boards was one by Dr. Leslie Tive, Neurontin World Wide Medical Leader, who presented slides concerning off-label uses of Neurontin, including for general neuropathic pain and diabetic peripheral neuropathy ("DPN"). *See* Declaration of Aviah Cohen Pierson, Exhibit 7.

---

[1] "Prior authing" is an apparent reference to prior authorization, a managed care program under which the use of certain drugs must be first approved before they are reimbursable. "Third tiering" is an apparent reference to a co-payment tier for non-preferred brand drugs – i.e., a tier with a higher co-payment for certain branded drugs.

The Sales and Marketing Plaintiffs should be permitted to proceed with their 30(b)(6) deposition regarding communications between Defendants and third-party payors or managed care plans.

**B)** **30(b)(6) Deposition Notice Regarding Defendants' Document Collection and Production**

Like the prior 30(b)(6) deposition notice, Defendants protest a deposition notice with topic descriptions taken from their own notice to plaintiffs and Defendants' Memorandum in Support of Motion for Protective Order implicitly acknowledges this fact. Defendants state "We note that defendants have served a records retention notice on certain plaintiffs and, although plaintiffs have not served objections to that notice, defendants are willing to . . . to limit the scope of such a deposition . . .. Defendants' Memorandum in Support of Motion for Protective Order Concernting Rule 30(b)(6) Deposition Notices at pp. 4-5. As with Defendants' other 30(b)(6) deposition notices, the Sales and Marketing Plaintiffs presume that Defendants believed their notice topics were reasonable and within the scope of permitted discovery. As a result, Defendants should not be permitted to seek a broader scope of discovery from Plaintiffs than Plaintiffs can seek from Defendants.

With respect to the request for a 30(b)(6) witness to identify the documents regarding a particular topic, Defendants' objection essentially is that Plaintiffs' should be forced to rely simply on the production of 3 million documents. With that statement, Defendants, then conclude that "Plaintiffs either already have the information or could obtain it through 'less problematic means.'" Defendants' Memorandum in Support of Motion for Protective Order Concerning Rule 30(b)(60 Deposition Notices at p. 9. Defendants' argument that Plaintiffs "already have the information" apparently refers to the 3 million documents that have been

produced in this multi-district proceeding that includes claims ranging from marketing to product liability claims. Defendants also fail to identify the "less problematic means" for Plaintiffs to obtain such information. They ignore the positions that they have taken during the depositions that have occurred such as refusals to agree that documents created by their employees constitute business records within the hearsay exception under Rule 803 of the Federal Rules of Evidence or that minutes of meetings of Pfizer employees are accurate. *See*, *e.g.*, Declaration of Aviah Cohen Pierson, Exhibit 8. Defendants have place markings on the bottom of each document but then refuse to confirm that if a particular employee name is placed in that marking, that that is an indication that the document came from that employee's files. *See*, *e.g.*, Declaration of Aviah Cohen Pierson, Exhibit 9.

On the issue of Defendants' objection on grounds of burden and expense to prepare a designee or designees to testify on topics such as Defendants' computer systems, databases, email systems, corporate structure, corporate locations and the source of the documents produced by Defendants, such topics are routine topics for 30(b)(6) depositions. Such information is relevant to understand how and where Defendants conducted business, to identify relevant documents and witnesses and to determine how to lay the foundation for the documents Defendants have produced. It is also important since Plaintiffs question whether Defendants have fulfilled their obligations to search for all responsive documents. For example, Plaintiffs have discovered a John Marino e-mail (World Wide Neurontin Team Leader) that was produced in another employee file, but not from his files. *See*, *e.g.*, Declaration of Aviah Cohen Pierson, Exhibit 10. Additionally, custodial files were not produced from a number of marketing, sales

and regulatory personnel whose names appear in numerous documents regarding Neurontin. Plaintiffs should be permitted to proceed with their properly noticed deposition.

C)   **30(b)(6) Deposition Notice Regarding Defendants' Corporate Structure**

Defendants have refused to permit Plaintiffs to proceed with a deposition regarding their corporate structure and their global system. Such information certainly falls within the scope of Rule 26 of the Federal Rules of Civil Procedure especially in this case where employees have used regulatory approvals granted by other countries for Neurontin in their deposition answers (s*ee*, *e.g.*, Declaration of Aviah Cohen Pierson, Exhibit 11) or the clinical studies are run by non-U.S. Pfizer offices. *See*, *e.g.*, Declaration of Aviah Cohen Pierson, Exhibit 12. A number of the studies at issue in this case were non-U.S. studies which then were or were not published. Here, Defendants conducted activities, especially studies regarding Neurontin, outside of the United States and then that information did or did not become available to physicians, consumers and health insurers in the United States. Under these circumstances, Plaintiffs are entitled to a 30(b)(6) deposition of Defendants' Corporate Structure.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the motion for protective order of Defendants Pfizer and Warner-Lambert so that Plaintiffs can proceed with the noticed depositions.

| For the Plaintiffs: | Dated: July 10, 2007 |
|---|---|
| /s/ Linda P. Nussbaum<br>KAPLAN FOX & KILSHEIMER LLP<br>Linda P. Nussbaum, Esq.<br>805 Third Avenue, 22nd Floor<br>New York, New York 10022 | |
| HAGENS BERMAN SOBOL SHAPIRO LLP<br>Thomas M. Sobol, Esq. (BBO #471770)<br>Ed Notargiacomo, Esq. (BBO#567636)<br>One Main Street, 4th Floor<br>Cambridge, MA 02142 | |
| LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>Barry Himmelstein, Esq.<br>275 Battery Street, 30th Floor<br>San Francisco, CA 94111-3339 | GREENE & HOFFMAN<br>Thomas Greene, Esq.<br>Ilyas Rona, Esq.<br>125 Summer Street<br>Boston, MA 02110 |
| DUGAN & BROWNE<br>James Dugan, Esq.<br>650 Poydras Street, Suite 2150<br>New Orleans, LA 70130 | BARRETT LAW OFFICE<br>Don Barrett, Esq.<br>404 Court Square North<br>P.O. Box 987<br>Lexington, MS 39095 |
| LAW OFFICES OF DANIEL BECNEL, JR.<br>Daniel Becnel, Jr., Esq.<br>106 W. Seventh Street<br>P.O. Drawer H<br>Reserve, LA 70084 | SHAPIRO HABER & URMY LLP<br>Thomas G. Shapiro, Esq. (BBO #454680)<br>53 State Street<br>Boston, MA 02109 |
| RAWLINGS & ASSOCIATES, PLLC<br>Mark D. Fischer, Esq.<br>Mark Sandmann, Esq.<br>325 W. Main Street<br>Louisville, KY 40202 | COHEN, MILSTEIN, HAUSFELD & TOLL, PLLC<br>Michael D. Hausfeld, Esq.<br>1100 New York Avenue, N.W.<br>West Tower, Suite 500<br>Washington, DC 20005 |
| BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO<br>Peter A. Pease, Esq. (BBO #392880) | Joel Z. Eigerman, Esq.<br>50 Congress Street, Suite 200<br>Boston, MA 02109 |

| | |
|---|---|
| One Liberty Square<br>Boston, MA 02109 | |
| BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO<br>Joseph J. Tobacco, Jr., Esq.<br>425 California Street, Suite 2025<br>San Francisco, CA 94104-2205 | LOWEY DANNENBERG BEMPORAD & SELINGER, PC<br>Richard Bemporad, Esq.<br>Richard W. Cohen, Esq.<br>Peter St. Phillip, Jr., Esq.<br>Todd S. Garber, Esq.<br>The Gateway – 11th Floor<br>One North Lexington Avenue<br>White Plains, NY 10601-1714 |
| JOHN F. INNELLI, LLC<br>John F. Innelli, Esq.<br>1818 Market Street, Suite 3620<br>Philadelphia, PA 19103 | |

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on July 10, 2007.

                                                                    /s/ Linda P. Nussbaum