# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND ) <br> SALES PRACTICES LITIGATION          ) <br> _____) <br> THIS DOCUMENT RELATES TO:           ) <br> _____) <br> THE GUARDIAN LIFE INSURANCE       ) <br> COMPANY OF AMERICA                     ) <br>   v. PFIZER, INC.,                                ) <br> 04 CV 10739 (PBS)                              ) <br> _____) | MDL Docket No. 1629 <br><br> Master File No. 04-10981 <br><br> Judge Patti B. Saris <br><br> Magistrate Judge Leo T. Sorokin |

## COORDINATED PLAINTIFFS' REPLY MEMORANDUM TO DEFENDANTS' OPPOSITION TO OBJECTIONS TO DISCOVERY ORDER NO. 12

Aetna, Inc. ("Aetna"), Guardian Life Insurance Company of America ("Guardian"), Kaiser Foundation Health Plan Inc. and Kaiser Foundation Hospitals (together "Kaiser") (collectively "Coordinated Plaintiffs"), submit this reply memorandum to Pfizer Inc. and Warner-Lambert Company's ("Defendants") Opposition to Coordinated Plaintiffs' Objections to Discovery Order No. 12 ("Defendants' Opposition"), on the grounds that the information sought by Defendants would be extremely burdensome for Coordinated Plaintiffs to gather and produce, raises privacy concerns, is the proper subject of expert testimony and is readily available to defendants from a more convenient source.[1]

---

[1]  It should be noted that since Coordinated Plaintiffs filed their Objections to Discovery Order No. 12, Magistrate Judge Sorokin issued Discovery Order No. 13 (Dkt # 801) which impacts the interrogatories at issue in this appeal. Magistrate Judge Sorokin states in Discovery Order No. 13 that "[t]he answer to the Interrogatory [2] necessarily will involve expert opinion as it asks Plaintiffs to state, by off-label use for each calendar year, the drug(s) that they contend were 'cheaper and more optimal' than Neurontin. Thus, Plaintiffs shall supplement their response to this Interrogatory no later than the date for serving their expert reports." (emphasis added).  Since the interrogatories at issue here pertain to a similar topic to Interrogatory No. 2 (namely the identification of alternative medications to Neurontin), to the extent the Court rules that Coordinated Plaintiffs' must supplement their responses, these parties respectfully request to do so by the submission date of expert reports.

1

I.  **PRELIMINARY STATEMENT**

Defendants' Opposition reflects a biased, one-sided perspective of the record and misstates the bases for Coordinated Plaintiffs' Objections to Discovery Order No. 12 ("Coordinated Plaintiffs' Objections") (Dkt # 794).  In order to respond to defendants' interrogatories at issue, the Coordinated Plaintiffs would have to attempt to gain access to and then review the medical records of its insureds.  As the Court is aware, this process would implicate federally protected privacy concerns and be extremely burdensome to the Coordinated Plaintiffs.  This Court has previously ruled that this information is not properly discoverable.  Certain of the information requested is the proper subject of expert testimony and other information is readily available to defendants from readily obtainable public sources.

II.  **ARGUMENT**

Discovery is generally available as to any non-privileged matter that is relevant to a claim or defense, however "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1977) (*quoting Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  A court may limit the scope of discovery, including interrogatories, "if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive…" Fed.R.Civ.P. 26(b)(2)(C).  Furthermore, "[i]n making a decision regarding burdensomeness, a court should balance the burden on the interrogated party against the benefit to the discovering party of having the information." *Pulsecard, Inc. v. Discover Card Services, Inc.,* 168 F.R.D. 295, 304

(D.Kan.1996) (*citing Hoffman v. United Telecommunications, Inc.,* 117 F.R.D. 436, 438 (D.Kan.1987)).  Here, when balancing the burden on the Coordinated Plaintiffs to answer these interrogatories, the federally mandated privacy issues, and the speculative benefit that this information provides, the burden of these requests far outweighs the potential benefit.[2]

### 1. These Interrogatories Require Review of Medical Records and Therefore Implicate Privacy Concerns and are Overly Burdensome

Defendants' interrogatories seek information which implicates privacy concerns because the attempted collection and review of individual patients' medical records would be necessary.  None of the Coordinated Plaintiffs have the records of individual patients.  It is not clear that they could actually get these records.  Yet, the review of medical records is needed in order to determine for what purpose(s) each physician prescribed Neurontin.  Without review of the medical records, these interrogatory responses would be meaningless.  For example, Interrogatory No. 3 states:

> For each of your Members who were prescribed Neurontin, state whether s/he also received one or more of the drugs identified in response to Interrogatory No. 2 and state which drug(s) each such Member received. State the dosage and number of prescriptions filled for each alternative drug prescribed to each such Member.  Describe how you arrived at these figures.

*See* Defendants' Second Set of Interrogatories to Plaintiff Kaiser Foundation Hospitals (Exh. A attached to Declaration of Linda P. Nussbaum ("Nussbaum Decl.")).

Interrogatory No. 3 <u>specifically</u> requests information regarding the prescribing history of physicians for individual members of each of the Coordinated Plaintiffs, which

---

[2] To the extent the Court determines that individual medical records need not be reviewed in response to these interrogatories, the benefit of compiling information cross-referencing the pharmacy claims data for Neurontin and other drugs would be even further diminished because it would not be possible to determine for what purpose(s) these drugs were prescribed.

3

requires the review of patients' medical records.[3]  A physician may have prescribed Neurontin for one purpose and an "alternative" drug for an entirely different purpose. Therefore, without reviewing the medical records, it would be impossible to determine whether a particular physician prescribed the other drug as an "alternative" medication. In other words, if a physician prescribed Neurontin to a patient for pain and also prescribed to that same patient, a drug listed by Coordinated Plaintiffs as an "alternative" medication for restless leg syndrome, the prescriptions of those two drugs would be included in the responses, even though the drugs were prescribed for entirely different purposes.  Thus, without reviewing the medical records of hundreds of thousands of individual patients, the responses are meaningless.

This Court has previously ruled that individual patient files were not discoverable. At the hearing held on September 27, 2006, the Court stated: "I'm not going to allow . . . a foraging through the third-party payors' patient base." Transcript of Sept. 27, 2006 hearing before Judge Saris at p. 39 (Dkt #503).  Since the Coordinated Plaintiffs do not intend to rely on the experiences of individual patients who received Neurontin or alternatives to Neurontin, the collection and review of medical records is not properly discoverable.  Similarly, since the review of medical records is necessary to answer defendants' interrogatories, Coordinated Plaintiffs object to providing the requested information.

---

[3]  In addition, as noted above, in Discovery Order No. 13, Magistrate Judge Sorokin ordered Coordinated Plaintiffs to supplement their responses to Interrogatory No. 2 no later than the filing date of expert reports.  Thus, to the extent the Coordinated Plaintiffs supplement their responses to Interrogatory No. 2 on or before that date, they would also need to supplement responses to Interrogatory Nos. 3 and 4 (Interrogatory No. 4 also specifically cross references Interrogatory No. 2 and states: "For each calendar year of the proposed Class Period, state the number and percentage of your Members who were prescribed Neurontin and who also were prescribed at least one of the drugs identified in response to Interrogatory No. 2.  Describe how you arrived at this figure.")

In seeking responses to these interrogatories, defendants' state: "[t]he gravamen of coordinated plaintiffs' complaint is that, but for defendants' conduct, their insureds who were prescribed Neurontin for these off-label uses would have received allegedly 'cheaper and more optimal' medications instead." Defendants' Opposition at p. 1. Coordinated Plaintiffs do allege, at paragraph 173 of the Third Amended Complaint (Dkt # 530), that alternative medications to Neurontin were available <u>for particular off-label uses</u>.[4] The gravamen of Coordinated Plaintiffs' complaint is that defendants marketed Neurontin improperly for off-label uses. The foreseeable result of this off-label promotion was that physicians prescribed Neurontin in lieu of cheaper and more optimal medications, which were otherwise available. This is an issue that will be determined by expert testimony and reliance on data collected by companies such as IMS Health, Inc. ("IMS") and Scott Levin Associates ("Scott Levin"), not by a review of hundreds of thousands of patient records.

Defendants state that the relevance of these interrogatories is to determine: (1) whether alternatives to Neurontin existed; and (2) whether patients who were prescribed Neurontin would have also received these alternative medications instead. *See* Defendants' Opposition at p. 7. With regard to whether alternatives to Neurontin existed, that is a topic of expert testimony and will not be answered by these interrogatories. *See* Discovery Order No. 13 at p. 4 (Dkt # 801) (response to Interrogatory No. 2 which asks Coordinated Plaintiffs to identify the cheaper and more optimal drugs to Neurontin "necessarily will involve expert opinion"). In addition, defendants' own documents show

---

[4] Another limitation to defendants' interrogatories is that some of the medications alleged to be cheaper and more optimal to Neurontin for certain indications were aspirin and ibuprofen. Since aspirin and ibuprofen are over-the-counter medications, these drugs would not be reflected in responses to these interrogatories.

5

that alternative medicines exist. Defendants use IMS and Scott Levin data in the ordinary course of their own business judgments, and are fully aware of what alternative prescriptions are available for the treatment of various conditions. *See, e.g.,* Pfizer_AMishra_0002324-62 (Exh. B attached to Nussbaum Decl.) (tracking Neurontin and alternative drugs to Neurontin over time by various uses). On the second issue, as explained above, in order to determine whether individual patients who received Neurontin also received alternative medications, the medical records of patients must be reviewed in order to determine for what uses these medications (if any) were prescribed. The Coordinated Plaintiffs do not have these records. These records are kept by the thousands of individual physicians. The review and collection of medical records would implicate privacy concerns and be overly burdensome to the Coordinated Plaintiffs.

Defendants state that responding to their interrogatories would not require collection and review of medical records. *See* Defendants' Opposition at p. 16. Coordinated Plaintiffs have elaborated as to the reasons they believe such review is necessary in order to adequately respond to the interrogatories. Defendants further state that Kaiser, in explaining the burdensomeness of these requests, does not explain why it would need at least one month to respond. *Id.* To the contrary, the declaration of Elizabeth F. Villaluz dated July 13, 2007 ("Villaluz Decl."), submitted with Coordinated Plaintiffs' Objections, explains why it would take that long to respond to the interrogatories without going back to the medical records. *See* Villaluz Decl. at p. 1-2 (Exh. A to Coordinated Plaintiffs' Objections). In her declaration, Ms. Villaluz stated that "the cross-referencing of pharmacy claims data for Neurontin and other drugs would require Kaiser to generate reports for each of its regions throughout the country." *Id.* at

6

1. Generating reports from each of Kaiser's regions requires a great deal of time and effort. Defendants state that "Kaiser, in the ordinary course of its business, produces reports of preciously the sort that defendants now seek."[5] Defendants' Opposition at p. 17. In fact, Kaiser does <u>not</u> regularly generate these reports. The reports would have to be specifically generated for this litigation and since the data would need to be sought from various regions throughout the country, the process takes extraordinary time and effort.

### 2. Documents and Testimony Cited by Defendants Undercut their Argument that Review of Medical Records is not Required

Defendants' Opposition makes clear that defendants' true intention in seeking this discovery is to analyze individual physicians' prescribing histories. Defendants cite to deposition testimony and documents of the Coordinated Plaintiffs, including Kaiser, in support of their argument that this information is relevant. Nevertheless, these documents and deposition testimony actually lend further support to Coordinated Plaintiffs' position that these interrogatories require the review of patients' medical records which the Coordinated Plaintiffs do not have and which this Court has already prohibited.

First, defendants state that the responses to these interrogatories would "enable defendants' experts to form an opinion as to the number of occasions, if any, in which Kaiser physicians prescribed Neurontin in violation of the guidelines issued by Kaiser's P&T Committee." *Id.* at 8. Responses to these interrogatories would only provide this

---

[5] Defendants cite an internal Kaiser document from 2003 in support of their argument. *See* Exh. 7 to James Decl. in support of Defendants' Opposition. This document cited by defendants does not provide nearly the level of detailed information called for by defendants' interrogatories. It would be much more burdensome for Kaiser to generate the individual reports from each Kaiser region cross-referencing the pharmacy data, than it was to create this document.

7

sort of detail if the decision of each individual Kaiser physician was analyzed, information that can only be found in the patients' medical records. Thus, defendants further highlight their true intention in seeking this discovery.

Second, defendants cite an email from one Kaiser physician in support of their argument that physicians may have prescribed certain medications as a supplement, rather than an alternative to Neurontin. *Id.* at 8-9. The single email cited by defendants is merely one example of a physician's prescribing history of Neurontin and other drugs. There are over 11,000 Kaiser physician providers, none of whom are employees of Kaiser. *See* Villaluz Decl. at p. 2. Therefore, this email is not necessarily representative of the practices of Kaiser physicians. Furthermore, this email reveals defendants true intent in seeking this discovery, namely to determine to what extent each physician prescribed Neurontin and other drugs, which is entirely dependent upon the individual patient. This information can only be derived by reviewing the patient's medical records which Kaiser does not even possess.

Defendants also imply that this discovery is necessary for damages purposes. Defendants state that if Kaiser physicians exhausted all alternative medications to Neurontin before prescribing that drug to their patients, Kaiser's damages would be nill. *See* Defendants' Opposition at p. 8. This is simply not the case. Kaiser's damages are based on the prescriptions it paid for Neurontin based on the off-label promotion of Neurontin. In certain cases, Kaiser physicians would have advised patients to take aspirin for certain indications, depending on the patient. In other cases, Kaiser physicians would have prescribed Neurontin. But an individual physician's prescribing history has

absolutely no bearing on Kaiser's damages in this action.  Therefore, these interrogatories are not relevant for purposes of calculating damages.

### 3. Industry Data is Available to Obtain Certain Information Sought by Defendants

As stated in Coordinated Plaintiffs' Objections, certain information sought by defendants is readily available by means other than this discovery.  *See* Coordinated Plaintiffs' Objections at p. 9-14.  Defendants have access to data that is available through third party vendors, including Scott Levin and IMS.  *Id.* at 9-12.  To the extent defendants do not seek to have Coordinated Plaintiffs review its insureds' medical records, these databases provide just the sort of information defendants seek through these interrogatories.  In fact, as further elaborated in Coordinated Plaintiffs' Objections, "Pfizer had at its disposal the number of prescriptions with respect to each particular Third Party Payer's plan on an annual basis for the various categories of use." *Id.* at 12.

Defendants cannot have it both ways.  In their opposition they state they are not interested in the industry wide data available by Scott Levin or IMS.  Instead, defendants are interested in determining the extent to which each of the Coordinated Plaintiffs prescribed Neurontin and alternatives to Neurontin.  Specifically, defendants are interested in "tracking particular patients over time."  Defendants' Opposition at p. 13.  This information can only be derived by foraging through the patient files of each of the Coordinated Plaintiffs, to which defendants have already been denied access.  Therefore, Coordinated Plaintiffs object to supplementing their responses to these interrogatories.

### III.  CONCLUSION

For all of these reasons, Coordinated Plaintiffs respectfully request that the Court set aside the portions of Discovery Order No. 12 requiring further response by Coordinated Plaintiffs to defendants' interrogatories.

Dated: August 10, 2007

**For Plaintiff Guardian Life Insurance Co. Of America:**

/s/ Thomas G. Shapiro
Thomas G. Shapiro (BBO # 454680)
Theodore Hess-Mahan (BBO # 557109)
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

**OF COUNSEL:**

**KAPLAN FOX & KILSHEIMER LLP**
Linda P. Nussbaum, Esq.
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

**RAWLINGS & ASSOCIATES, PLLC**
Mark D. Fischer, Esq.
Mark Sandmann, Esq.
325 W. Main Street
Louisville, KY 40202
Telephone: (502) 587-1279
Facsimile: (502) 584-8580

**For Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals:**

/s/ Thomas G. Shapiro
Thomas G. Shapiro (BBO # 454680)
Theodore Hess-Mahan (BBO # 557109)
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA 02109
Telephone: 617-439-3939
Facsimile: 617-439-0134

**OF COUNSEL:**

**KAPLAN FOX & KILSHEIMER LLP**
Linda P. Nussbaum, Esq.
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

**For Plaintiff Aetna, Inc.:**

/s/ Peter A. Pease
Peter A. Pease, Esq. (BBO # 392880)
**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194

**OF COUNSEL:**

**LOWEY DANNENBERG BEMPORAD & SELINGER, P.C.**
Richard Bemporad, Esq.
Richard W. Cohen, Esq.
Gerald Lawrence, Esq.
Peter St. Phillip Jr., Esq.
Todd S. Garber, Esq.
White Plains Plaza - - 5th Floor
One North Broadway
White Plains, NY 10601-2310
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**
Joseph J. Tabacco, Jr., Esq.
425 California Street, Suite 2025
San Francisco, CA 94104-2205
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

**JOHN F. INNELLI, LLC**
John F. Innelli, Esq.
1818 Market Street, Suite 3620
Philadelphia, PA 19103
Telephone: (215) 5612-1011
Facsimile: (215) 561-0012

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3.

                                      ATTORNEY FOR PLAINTIFFS


                                      /s/ Linda P. Nussbaum_____
                                      LINDA P. NUSSBAUM