UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------- x
                                                   :   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                       :
        SALES PRACTICES AND                        :   Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION              :
------------------------------------------------- x   Judge Patti B. Saris
                                                   :
THIS DOCUMENT RELATES TO:                          :   Magistrate Judge Leo T.
                                                   :   Sorokin
        PRODUCTS LIABILITY ACTIONS                 :
                                                   :
                                                   :
                                                   :
------------------------------------------------- x
```

## MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE AND MODIFY DISCOVERY ORDERS NO. 7, 8, 11 AND 13

**I.    INTRODUCTION**

Plaintiffs have declared their intention to eliminate the two Track One cases chosen by Pfizer, by dismissing *Strickland* (Pfizer's designated Track One "trial workup" case) and by withdrawing as counsel from *Mendoza* (Pfizer's second case selection under Discovery Order No. 8). Plaintiffs' stated intention makes a mockery of the Track One selection process ordered by this Court and vitiates the MDL fact and expert discovery and briefing schedule. In light of these developments, Pfizer requests that the Court level the playing field by prohibiting plaintiffs from retaining *Smith* (one of plaintiffs' unilaterally selected Track One cases) as their designated trial workup case, requiring selection of two new cases for trial workup from the remaining Track One cases randomly selected by the Court, and adjusting the schedule accordingly. In the alternative, the Court should allow Pfizer to choose two new Track One cases from the Finkelstein inventory, extend the current discovery schedule to allow Pfizer to conduct the limited workup of these two cases, designate one case for trial workup, and conduct

complete discovery in that case. Under either alternative, Pfizer requests its costs, expenses and attorneys' fees incurred in its defense of *Strickland* and *Mendoza*.

## II.    BACKGROUND

### A.    The Track One Case Selection Process

Discovery Orders No. 7 and 8 set out the Track One selection process by which ten cases would be identified from the Finkelstein inventory for limited discovery for dispositive motion practice. Because the parties could not agree on the selection process—Pfizer proposing complete random selection; plaintiffs proposing that they pick all ten cases—the Court ordered that each party choose two cases, and the remaining six would be randomly selected. The Court recognized that this process would "enable each side to put its best cases forward, while the random selection will ensure a range of cases as well as mitigate any information disadvantage under which Defendants may labor at this point." (Docket # 609 at 2) (emphasis added). Pfizer selected *Strickland v. Pfizer and Mendoza v. Pfizer*; plaintiffs selected *Smith v. Pfizer* and *Bentley v. Pfizer* (Docket ## 633, 629).

Following the Track One selection process, the parties again disagreed on the process for selecting trial workup cases. Pfizer proposed that the trial workup cases be selected from the pool of six randomly selected cases. Plaintiffs proposed that they be allowed to pick the two trial workup cases, or in the alternative, that they select one case and Pfizer select the other. In Discovery Order No. 11, the Court adopted plaintiffs' alternate proposal, ordering that: "Plaintiffs shall pick one case from the previously identified group of ten and Defendants shall pick one case from the previously identified group of ten" (Doc. # 735 at 1). Plaintiffs designated *Smith* as their Track One case for trial workup. After extensive fact discovery and consultation with its experts, Pfizer designated *Strickland* as its trial workup case.

**B.**    **Plaintiffs' Counsel's Stated Intention to Dismiss *Strickland* and Withdraw as Counsel from *Mendoza* and *Moore* Undermines the Court's Track One Selection Process and Disrupts the MDL Schedule**

On Thursday, August 9, 2007, plaintiffs' counsel notified counsel for Pfizer that plaintiffs intended to dismiss *Strickland* and proposed a stipulated dismissal in which each side would bear its own costs (*See* August 9, 2007 email from Ken Fromson, attached as **Exhibit A**).[1] Plaintiffs' counsel also informed Pfizer of their intention to withdraw as counsel of record from *Mendoza* (one of Pfizer's Track One selections) and *Moore v. Pfizer* (a Track One case randomly selected by the Court) (*See id*). Pfizer rejected plaintiffs' proposed stipulation and stated that plaintiffs' plan would completely undermine and disrupt the Track One case selection process and the MDL schedule (*See* August 13, 2007 email from Lori McGroder, attached as **Exhibit B**). In response, plaintiffs' counsel suggested they would seek relief from the Court at the September discovery conference, but plaintiffs have yet to inform the Court of their intentions (*See* August 13, 2007 email from Ken Fromson, attached as **Exhibit C**).[2]

## III.    DISCUSSION AND REQUESTED RELIEF

Federal Rule of Civil Procedure 41 allows a plaintiff to voluntarily dismiss his complaint by: (1) filing a notice before service by the adverse party of an answer or of a motion for summary judgment, whichever occurs first; or (2) entering a stipulation of dismissal with the opposing party. Fed. R. Civ. P. 41(a)(1). If neither of these conditions is met—as is the situation in *Strickland*—a plaintiff must seek dismissal by order of the court "upon such terms and

---

[1] In plaintiffs' original proposal to Pfizer, they indicated their intention to dismiss *Strickland* with prejudice. In plaintiffs' most recent communications with Pfizer, however, plaintiffs now state that they want to dismiss *Strickland without* prejudice, adding more unfairness to the process.

[2] After it learned of plaintiffs' plans, Pfizer suspended all discovery in *Strickland* to avoid incurring additional fees and expenses. Pfizer is promptly filing this motion for relief to prevent additional delay in the MDL Track One process in the event the Court chooses to take up this Motion in advance of the September 20, 2007 conference.

conditions as the court deems proper." Fed. R. Civ. P. 41(a)(2). "The intendment of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Alamance Industries, Inc. v. Filene's*, 291 F.2d 142, 146 (1st Cir. 1961). Whether, and on what terms, a dismissal may be granted, is thus a matter left to the trial court's discretion. *Id.; see also Diamond v. United States*, 267 F.2d 23, 25 (5th Cir. 1959) (court has authority to deny motion, grant motion, and if it grants it, do so on the conditions it deems proper).

Plaintiffs' attempt to take Pfizer's two Track One cases out of play is a blatant attempt to manipulate the Track One selection process, which, if successful, will tip the playing field in plaintiffs' direction and upset the fact and expert discovery proceedings ordered by this Court. Plaintiffs' conduct should not be countenanced. Discovery in *Strickland* has revealed that Mr. Strickland had a long history of suicide attempts and psychiatric problems before ever being prescribed Neurontin and that he continues to take Neurontin to this day. Indeed, given Mr. Strickland's history and other flaws in his case, it is highly doubtful that his case presents any triable claims. Notably, the facts concerning Mr. Strickland's history of suicide attempts and psychiatric problems easily could (and should) have been discovered by plaintiffs' counsel before *Strickland* was ever filed. The circumstances in *Mendoza* are not different. Mr. Mendoza has a long history of psychiatric problems and criminal behavior before ever taking Neurontin. It comes as no surprise that, faced with these facts, plaintiffs' counsel intend to abandon *Strickland* and *Mendoza*.

Plaintiffs' counsel's tactics undermine the case selection process set out by the Court—which took several months to craft—and disturb the Court's schedule for fact and expert discovery. Moreover, plaintiffs' counsel's intention to dismiss *Strickland* violates the Court's

- 4 -

directive that each side put its "best case[] forward." Accordingly, Pfizer respectfully urges the Court to exercise its discretion under Rule 41 and impose the conditions set forth in sections III. A or B, *infra*.

**A.    The Court Should Level the Playing Field By Requiring Each Party to Select a New Case for Trial Workup From the Remaining Five Track One Cases Randomly Selected By the Court.**

In light of plaintiffs' plan to dismiss *Strickland* and withdraw from *Mendoza*, plaintiffs should be prohibited from continuing with *Smith* (or *Bentley*, their other unilaterally selected Track One case) as their trial workup cases. Because plaintiffs' current strategy eliminates *both* of Pfizer's selections, the parties are no longer on equal footing under the Court's case selection plan. Fairness dictates that, if plaintiffs are allowed to dismiss *Strickland* (and take *Mendoza* out of the running), the Court should level the playing field by requiring plaintiffs to set aside *Smith* as their trial workup case and *Bentley* as their Track One selection. Only then will Pfizer be in the same position as plaintiffs in connection with the MDL case selection and workup process. Any other result risks both an unfair case selection process *and* future dismissals of any cases selected by Pfizer—particularly because the facts that are problematic for plaintiffs in *Strickland* are not by any means isolated to the *Strickland* case. In order to avoid revisiting this issue a few months down the road, the Court should require both parties to designate a new trial workup case from the remaining five randomly selected Track One cases,[3] and order that neither of those cases can be dismissed by plaintiffs before resolution of the parties' Summary Judgment and *Daubert* motions pursuant to the Court's MDL plan.

This approach is fair. It would be patently unfair to allow plaintiffs to proceed with *Smith* but require Pfizer to start over, having the disadvantage of losing the two cases it

---

[3]    Or, the Court could choose the cases randomly or otherwise select the cases by its own design.

originally chose.  Modifying Discovery Orders No. 8 and 11 to require each party to select a new case for trial workup from the remaining five Track One cases randomly selected by the Court is the only method that comes close to restoring the parties to their original positions in the MDL case selection process.  An extension of the schedule set forth in Discovery Orders No. 7 and 13 to accommodate fact and expert discovery will also be necessary,[4] but this approach should not unduly extend the existing MDL schedule.  The benefit of restoring a fair MDL case selection process will undeniably outweigh any negatives related to a short extension of the discovery schedule.

**B.    Alternatively, Pfizer Should Be Allowed To Choose Two Track One Cases for Limited Workup and Subsequent Selection of a New Trial Workup Case.**

If plaintiffs are permitted to keep *Smith* as their trial workup case, Pfizer should be allowed additional time to identify and develop two Track One cases from the Finkelstein inventory, and then designate a new case for full trial workup.  Moreover, efficiency and fairness dictate that expert discovery in the *Smith* case be stayed until both trial workup cases can proceed on the same schedule.

Should the Court adopt this approach, Pfizer could identify two new Track One cases from the Finkelstein inventory within two weeks after the Court rules.  Pfizer would then need the requisite time—at least four weeks—to complete the Court-required limited discovery in the two cases before designating its trial workup case.  Following designation of this case,

---

[4] Under the schedule set forth in Discovery Orders No.7 and 11, the parties were to select trial workup cases by July 23, 2007, and were provided approximately eight weeks until September 15, 2007 to complete fact discovery in the two designated trial workup cases.  Discovery Order No. 13 further provides that plaintiffs' expert reports are due on October 22, 2007, approximately five weeks after the completion of fact discovery.  Pfizer's expert reports are due on December 3, 2007.

Pfizer would need another eight weeks to complete a full case workup,[5] after which both *Smith* and Pfizer's new trial workup case could proceed to expert discovery.

By allowing Pfizer to select from the entire Finkelstein inventory, the Court would be adhering as much as possible to its original plan. Similarly, the additional time Pfizer requests to complete fact discovery in these two cases is consistent with the Track One selection and workup process originally crafted by the Court. This approach also supports the Court's justification for the Track One selection process, i.e., that "each side [be able] to put its best cases forward."

Under this alternative, the Court should extend the expert discovery schedule. Judicial economy dictates that expert discovery in both Track One cases occur at the same time. Failure to coordinate expert discovery will waste time and money by, for instance, requiring the parties to conduct duplicative depositions of experts, which would involve costly preparation and unnecessary travel. Expert discovery also must be completed in both cases before proceeding to the dispositive motion phase ordered by this Court. Further, plaintiffs should not be allowed to benefit from their attempted manipulation of the MDL process. Failure to extend expert discovery would unfairly reward plaintiffs' actions by ensuring that their selection leads the MDL Track One pack—quite possibly the result plaintiffs intended when they waited until the eve of expert discovery to inform Pfizer of their intentions regarding *Strickland* and *Mendoza*.

**C.    Pfizer Should Be Awarded Reasonable Costs Incurred as a Result of Plaintiffs' Counsel's Actions**

Regardless of the approach taken by the Court, Pfizer is entitled to costs for plaintiffs' actions. Section 1927 of Title 28 provides that:

---

[5] This eight-week period is consistent with the time period allotted for completion of fact discovery in the Court's prior discovery orders.

2585441v2

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. In this Circuit, a finding of "bad faith" is not a prerequisite to the imposition of fees under § 1927. *Cruz v. Savage*, 896 F.2d 626, 631-632 (1st Cir. 1990). Thus, an attorney need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. *Id.* at 632. It is enough that an attorney displays a "serious and studied disregard for the orderly process of justice." *Id.*

Plaintiffs' counsel's recent actions in the MDL have no doubt "unreasonably and vexatiously" multiplied the proceedings. Plaintiffs' counsel knew at least by April 16, 2007, following the plaintiff's deposition, that allegations at the heart of *Strickland* lacked factual support.[6] Plaintiffs' counsel also knew that a considerable amount of time and money would be spent investigating the *Strickland* facts, deposing physicians and other fact witnesses, and eliciting expert opinions about the case.[7] Despite this knowledge, plaintiffs' counsel took no action to dismiss the suit, and instead caused the parties to waste time and money working up a frivolous case. And plaintiffs' counsel did not state their intention to dismiss the suit until the eve of expert discovery—their moment of maximum strategic advantage. Likewise, in *Mendoza*, it was obvious the case was frivolous at the time of Mr. Mendoza's deposition. Plaintiffs' counsel's failure to immediately move to dismiss the cases in the face of these facts violates §

---

[6] Had plaintiffs' counsel conducted a reasonable inquiry prior to filing the *Strickland* case, counsel would have learned that basic factual allegations lacked evidentiary support.

[7] Pfizer has conducted extensive fact discovery in *Strickland* and *Mendoza*. In *Strickland*, Pfizer has deposed Mr. Strickland and his wife, Cathy Strickland, as well as two physicians, Dr. Sadri Avsar and Dr. Wolfram Glaser. Pfizer has also collected 9604 pages of Mr. Strickland's records from 38 different providers. In *Mendoza*, Pfizer has deposed Mr. Mendoza, his girlfriend Rosemary Reed, and three

1927 and entitles Pfizer to costs, expenses, and attorneys fees reasonably incurred as a result of the conduct. *See Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613 (1st Cir. 1988) (counsel's failure to properly investigate the facts prior to filing suit and counsel's failure to withdraw the complaint when facts were revealed to him during the early stages of discovery belabored the proceedings and constituted a § 1927 violation).

## IV.    CONCLUSION

Pfizer requests that the Court prohibit plaintiffs from designating *Smith* as their trial workup case and require each party to select a new case for trial workup from the remaining five Track One cases randomly selected by the Court or, in the alternative, allow Pfizer requisite time to workup two cases from the Finkelstein inventory, extend the discovery schedule, and extend expert discovery to occur simultaneously in both cases. Pfizer also requests its costs, expenses and attorneys' fees related to its defense of *Strickland* and *Mendoza*.

Dated: August 21, 2007

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
      James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

physicians, Dr. Karl Jones, Dr. Peter Kaplan, and Dr. Elizabieta Chobot-Sochet. Pfizer has collected 6423 pages of Mr. Mendoza's records from 42 different providers.

2585441v2

HARE & CHAFFIN

By:   /s/ David B. Chaffin
       David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on August 21, 2007.

/s/David B. Chaffin

- 10 -

2585441v2