UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | ) ) ) ) | Master File No. 04-10981 |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) | Judge Patti B. Saris Mag. Judge Leo T. Sorokin |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC. and AETNA, INC. v. PFIZER INC. | ) ) ) ) ) ) ) ) |  |

**MEMORANDUM IN SUPPORT OF SALES AND MARKETING PLAINTIFFS'
MOTION TO COMPEL DISCOVERY RELATING TO COMMUNICATIONS
BETWEEN DEFENDANTS AND THIRD-PARTY PAYOR PLAINTIFFS**

**I.    BACKGROUND**

Class Plaintiffs and Coordinated Non-Class Plaintiffs (collectively, the "Sales and

Marketing Plaintiffs" or "Plaintiffs") seek to compel discovery from Pfizer Inc. and Warner-

Lambert Company (hereinafter "Defendants") concerning communications between Defendants

726113.1

and certain of the Sales and Marketing Plaintiffs who are third-party payors. The discovery sought includes: (1) Rule 30(b)(6) testimony concerning communications between Defendants and third-party payors which contain the allegedly false and misleading statements concerning Neurontin's off-label uses; and (2) the production of documents evidencing such false and misleading communications.

The Sales and Marketing Plaintiffs are aware that the deadline for filing motions to compel regarding document discovery has been set for September 6, 2007. However, several other impending deadlines make this motion appropriate for expedited resolution. The next (and only remaining) discovery hearing is currently scheduled for September 20, 2007, which is three weeks away, and fact discovery closes on October 15, 2007. Sales and Marketing Plaintiffs are concerned that if they are not heard on this motion until the September 20th hearing date, there will be precious little time (a little over three weeks) prior to the discovery cut-off date for a designated witness to be prepared and/or any new documents to be produced, effectively mooting this motion. Therefore, Plaintiffs request that they be heard on this motion prior to the September 20th hearing date so that — in the event that the Court allows some or all of the motion — Defendants can be ordered to produce a witness and any additional documents sufficiently in advance of October 15, 2007.

## II.   DISCUSSION

### A.   Rule 30(b)(6) Testimony Concerning Third-Party Payor Communications

On June 11, 2007, Plaintiffs served three deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(6), requesting that Defendants designate a deponent on several subject matters, including communications with third-party payors concerning Neurontin ("TPP Communications"). On July 2, 2007, Defendants filed a motion for a protective order stating that Plaintiffs were not entitled to take these 30(b)(6) depositions. (*See* Dkt. No. 780.) After

briefing, Magistrate Judge Sorokin issued Discovery Order No. 13, denying Defendants' motion without prejudice, and ordering the parties to meet and confer regarding these deposition notices. (*See* Dkt. No. 801.)  The parties have participated in several meet-and-confer discussions regarding the deposition notices and were able to narrow many of the differences; however, the parties could not reach an agreement concerning the scope of the Rule 30(b)(6) notice concerning TPP Communications.[1]  The most recent meet-and-confer discussion occurred during a conference call held on August 27, 2007 at 1:30 pm involving counsel for Plaintiffs and Defendants.[2]  During that conference, counsel agreed that this matter was ripe for adjudication. Accordingly, the Sales and Marketing Plaintiffs request the Court's intervention pertaining to this notice.

Defendants continue to object to certain topics regarding TPP Communications. For example, Defendants object to Topic 2, which states, "Any information that you have regarding communications you had with Third Party Payors concerning Neurontin."  Similarly, Defendants object to Topics 3 and 10, which also pertain to TPP Communications.[3]  Defendants object to these topics on the grounds that they are "too broad . . . extremely burdensome, and . . . not relevant to the claims or defenses of any party in this litigation." (*See* Exh. A, letter dated

---

[1] With regard to the other two deposition notices (organizational structure and document retention) the parties believe they have reached an agreement concerning the scope of these deposition notices and Plaintiffs intend to go forward with these depositions prior to the close of fact discovery.

[2] Present (telephonically) for the parties were: Ed Notargiacomo, and Ilyas Rona for the Class Plaintiffs; Annamarie Daley, and Aviah Cohen Pierson for the Coordinated Plaintiffs; and James Rouhandeh and Debbie MacGregor for the Defendants.

[3] Topic 3 states: "Any information that you have regarding the promotion of Neurontin for any off-label uses, including but not limited to  pain, diabetic peripheral neuropathy, restless leg syndrome, bipolar disorder, social phobia, panic disorder, migraine, monotherapy for epilepsy, and dosages of Neurontin above the FDA-approved maximum." Topic 10 states:  "Any information concerning Pfizer's communications, marketing or otherwise, to managed care plans concerning Neurontin, as well as Pfizer's organizational structure used for such efforts, including but not limited to the identification of individuals to describe such communications and all documents concerning such communications."

August 20, 2007 from Matthew Rowland to Elana Katcher.)[4]  To the contrary, these topics are appropriate 30(b)(6) topics and Defendants' objections are unfounded.  Therefore, Defendants should produce an appropriate witness to testify regarding these topics.

Under Rule 26 of the Federal Rules of Civil Procedure, Plaintiffs are entitled to all discovery reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26.  The topics concerning TPP Communications are appropriate 30(b)(6) topics.  In fact, Defendants served deposition notices containing nearly identical topics on certain of the Sales and Marketing Plaintiffs.  Defendants' objection that the topics are too broad is not supported, and in the event this Court finds that they are broad, these topics are still appropriate topics for discovery in this case.  *See Minebea v. Papst*, 2005 WL 2106565 at *1 (D.D.C. 2005) (denying motion to quash 30(b)(6)notice of deposition and motion for protective order even though "the topics are undeniably broad, the Court finds them to be reasonable ones for discovery").  Furthermore, as previously argued, Defendants have deposed the third-party payors concerning these same topics.  (*See* Dkt No. 790, at 4-5, Pls.' Opp. to Defs' Mot. for Prot. Order.)  Surely, Defendants believed that their request for depositions concerning these topics was reasonable and permitted under the Federal Rules of Civil Procedure at the time they served their deposition notices.

Defendants' objection that these topics are not relevant to the claims or defenses of any party in this litigation is baseless.  Defendants initially maintained that false communications made to third-party payors were not part of the claims and defenses at issue in this case.  (*See* Dkt No. 623, Defs.' Mem. in Opp. to Pls.' Mot. to Compel, at 6; Dkt. No. 781, Mem. Supp. Mot. for Prot. Order, at 3.)  Plaintiffs debunked this argument in responding to

---

[4] All referenced exhibits are attached to the accompanying Declaration of Ilyas J. Rona.

Defendants' recent motion for a protective order (*see* Dkt. No. 790, at 3-7), by pointing to specific allegations in the Third Amended Complaint concerning TPP Communications. Similarly, Defendants' own discovery requests concerning Neurontin-related communications by TPP's, as well as Defendants' own documents, refer to TPP Communications. Therefore, Defendants have no grounds to assert a relevance objection.

Accordingly, Plaintiffs respectfully request that Defendants be ordered to produce an appropriate 30(b)(6) witness to testify regarding the topics set forth in their notice.

### B. Documents Concerning Third-Party Payor Communications

Defendants continue to object to the production of documents relating to or containing TPP Communications with third-party payors. Specifically, Defendants have categorically told Plaintiffs that they will not be producing documents concerning National Accounts, which promoted Neurontin to third-party payors, or more generally, any documents containing TPP Communications. Over time, Defendants have asserted several different (and in fact, inconsistent) objections to producing these documents. Each objection has been baseless.

First, Defendants have asserted, in the context of the TPP Communications topics in the Rule 30(b)(6) notice, that TPP Communications are not relevant to the claims and defenses in this case. *See* II(A) *supra*. For the same reasons elaborated above, Defendants' objection to producing documents based on relevance similarly fails. "As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any probability it might be relevant to the subject matter of the action." *U.S. v. Mass. Indus. Fin. Agency*, 162 F.R.D. 410, 414 (D. Mass. 1995). "The broad scope of the discovery rules reflects a policy that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 227 (D. Mass. 2003) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

Defendants next argued that Plaintiffs had not requested these documents previously, and that any demand for these documents now is untimely. Plaintiffs fully addressed this objection by identifying the specific document requests which covered TPP Communications. (*See* Exh. B, letter dated August 3, 2007 from Ed Notargiacomo and Linda Nussbaum to James P. Rouhandeh (referring Defendants to Class and Non-Class Plaintiffs' First Request for Production of Documents Nos. 61, 68, 229-32, 242-43, and 245).)

Defendants then reached for a third objection, arguing that while Plaintiffs had requested TPP Communications, Defendants have always objected to producing these documents and that it is simply too late to bring discovery disputes concerning documents to the Court. (*See* Exh. C, letter dated August 10, 2007 from Debbie MacGregor to Linda Nussbaum and Ed Notargiacomo, at 1.)[5] This argument is belied by the current schedule of the case. As Defendants are aware, discovery is still open. Moreover, the Court-ordered September 6, 2007 deadline for motions to compel production of documents clearly implies that the parties would continue to discuss outstanding document issues up until that deadline. Thus, the notion that a party's right to cure a document production deficiency at this stage of the discovery process is waived or barred by laches is simply illogical. Accordingly, Plaintiffs' demand for these documents is clearly timely, and the ability to seek redress from the Court is still intact.

Defendants also assert an unspecified burden in connection with Plaintiffs' requests. (*See* Exh. B. at 2.) To date, Defendants have produced the custodial files of roughly 85 different Pfizer or Parke-Davis employees, which collectively total more than 2.9 million

---

[5] Following Defendants' August 10, 2007 letter, in which Defendants stated they would produce no further documents, Plaintiffs responded by letter on August 20, 2007, identifying TPP communications as an outstanding document deficiency. (*See* Exh. D, letter from Ilyas J. Rona to Debbie MacGregor.) In response, Defendants reiterated their position that such request was untimely. (*See* Exh. E, letter dated August 24, 2007 from Debbie MacGregor to Ilyas J. Rona.) The parties discussed this issue a final time in the telephonic conference referred to in Footnote 2 above.

pages. Although Defendants have not supplied Plaintiffs with any sort of estimate of the additional custodians whose files would have to be searched, or the number of pages that such search would be expected to yield, it is doubtful that such additional searches would approach what has already been produced. In any event, whatever cost and effort that is involved in a search of additional custodians for TPP Communications to third-party payors relating to Neurontin does not outweigh the relevance of such communications to this case. In fact, it is difficult to fathom any set of facts in a fraud action that would allow a defendant to avoid producing evidence of direct communications with the parties that it is accused of defrauding.

Pfizer's National Accounts department delivered marketing messages that were tailored specifically for managed care organizations — along with the very same misrepresentations that were the bedrock of the Neurontin marketing strategies — to promote Neurontin to third-party payors, many of whom are parties in this action. Such documents clearly fall within the category of documents that have been requested and thus should be produced.[6]

---

[6] It should also be noted that the parties have already litigated one subset of the issue of Defendants' communications with third-party payors. Plaintiffs' Third Request for Production of Documents, Request No. 19, requested "All documents supporting value analyses for marketing Neurontin to providers, health plans and/or other payors." After first arguing that such communications are not part of this case, Defendants then stated that they would be producing "value analysis statements made to third party payors or pharmacy benefit managers ["PBMs"]," (see Dkt. No. 632, Discovery Order No. 9, at 4) which, in Discovery Order No. 9, they were ordered to produce. However, Discovery Order No. 9 did not require the Defendants to produce the internal value analyses themselves. Accordingly, Plaintiffs objected to Discovery Order No. 9, arguing that Defendants' internal value analyses were relevant and would contain information about the actual truth or falsity of the statements made to third party payors or PBMs. At this point, Defendants changed their story. For the first time, Defendants began claiming that they did not prepare and present to third parties any value analyses. (See Dkt. No. 674, at 3.) It does not appear that Plaintiffs' objection to Discovery Order No. 9 has been ruled upon at this time.

**III.   CONCLUSION**

       For the foregoing reasons, Plaintiffs' motion to compel the discovery requested should be granted.

                        Respectfully submitted,

Dated:  August 30, 2007        By:   /s/ Ilyas J. Rona
                                             Ilyas J. Rona, Esq. (BBO #: 642964)

                                    Thomas Greene, Esquire
                                    GREENE & HOFFMAN
                                    125 Summer Street
                                    Boston, MA 02110

                                    Thomas M. Sobol
                                    HAGENS BERMAN SOBOL SHAPIRO LLP
                                    One Main Street, 4th Floor
                                    Cambridge, MA  02142
                                    Boston, MA 02110

                                    Barry R. Himmelstein
                                    LIEFF CABRASER HEIMANN &
                                       BERNSTEIN, LLP
                                    Embarcadero Center West
                                    275 Battery Street, 30th Floor
                                    San Francisco, CA 94111-3339

                                    Don Barrett
                                    BARRETT LAW OFFICE
                                    404 Court Square North
                                    P.O. Box 987
                                    Lexington, MS 39095

                                    Daniel Becnel, Jr.
                                    LAW OFFICES OF DANIEL BECNEL, JR.
                                    106 W. Seventh Street
                                    P.O. Drawer H
                                    Reserve, LA 70084

James Dugan
DUGAN & BROWNE
650 Poydras St., Suite 2150
New Orleans, LA 70130