EXHIBIT B

LAW OFFICES
**DECHERT LLP**
A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP
PRINCETON PIKE CORPORATE CENTER
(MAIL TO)       P.O. BOX 5218, PRINCETON, NEW JERSEY 08543-5218
(DELIVER TO)   997 LENOX DRIVE, BUILDING THREE, SUITE 210
                      LAWRENCEVILLE,  NEW JERSEY 08648

(609) 620-3200
EDR-0058
TK-0043
MT-4807

ATTORNEYS FOR DEFENDANTS

---

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BERNARD STRICKLAND and CATHY STRICKLAND, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.: |
| | : | |
| vs. | : | |
| | : | |
| PFIZER INC., PARKE-DAVIS, a division of Warner-Lambert Company and Warner-Lambert Company LLC, WARNER-LAMBERT COMPANY, and WARNER-LAMBERT COMPANY LLC, | : | **NOTICE OF REMOVAL** |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

Defendants Pfizer Inc. ("Pfizer"), Warner-Lambert Company, and

Warner-Lambert Company LLC ("Warner-Lambert"), on its own behalf and on behalf of

its unincorporated division, Parke-Davis (collectively referred to hereinafter as

"Removing Defendants"), by and through their counsel, and, pursuant to 28 U.S.C.

§§ 1332, 1441, and 1446 file their Notice of Removal of this cause from the Superior

12306758.1.LITIGATION

Court of New Jersey, Law Division, Bergen County, to the United States District Court for the District of New Jersey, and state as follows:

## I.    INTRODUCTION

On December 27, 2005, plaintiffs Bernard Strickland and Cathy Strickland ("plaintiffs") filed a products liability action against the defendants in the Superior Court of New Jersey, Law Division, Bergen County, styled as *Bernard Strickland and Cathy Strickland vs. Pfizer Inc., Parke-Davis, a division of Warner-Lambert Company and Warner-Lambert Company LLC, Warner-Lambert Company, Warner-Lambert Company LLC, Purepac Pharmaceutical Co. and Alpharma Inc*, Docket No. L-008862-05. Plaintiffs seek damages for injuries that allegedly arose out of Bernard Strickland's use of the prescription drug Neurontin® ("Neurontin") (gabapentin). *See* Compl. (attached at **Exhibit A**).

Plaintiffs served their Complaint on Removing Defendants on February 14, 2006.

Under 28 U.S.C. § 1446(b), this removal is timely. This Notice of Removal is being filed within 30 days of service of the Complaint upon Removing Defendants.

## II.    JURISDICTIONAL BASIS FOR REMOVAL

This Court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1441 because: (1) there is complete diversity of citizenship between plaintiffs and the properly joined defendants; (2) none of the properly joined defendants

is a New Jersey citizen; and (3) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

A.    **Diversity of Citizenship Exists Between the Properly Joined Parties**

Upon information and belief, plaintiff Bernard Strickland is now, and was, at the time of the filing of this action, a citizen of the State of Alabama.

Upon information and belief, plaintiff Cathy Strickland is now, and was, at the time of the filing of this action, a citizen of the State of Alabama.

Defendant Pfizer is now, and was, at the time of the filing of this action, a corporation existing under the laws of the State of Delaware, having its headquarters in the State of New York.

Defendant Warner-Lambert Company is now, and was, at the time of the filing of this action, known as Warner-Lambert Company LLC and is not a separate corporation or other legal entity.

Defendant Warner-Lambert Company LLC is now, and was, at the time of the filing of this action, a Delaware limited liability company with Pfizer Inc. as its sole shareholder.    Limited liability companies are citizens of the states of which their individual shareholders are citizens.  *See Ketterson v. Wolf*, No. 99-689-JJF, 2001 U.S. Dist. LEXIS 12535, at *8 (D. Del. Aug 14, 2001); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000).  Accordingly, Warner-Lambert Company LLC is deemed a citizen of the same states as Pfizer, which was organized under the laws of Delaware and has its headquarters in New York.

12306758.1.LITIGATION

Defendant Parke-Davis is now, and was at the time of the filing of this action, an unincorporated operating division of Warner-Lambert and not a separate corporation or other legal entity.

Pursuant to paragraphs 5-10, there is complete diversity among the parties.

Upon information and belief, Alpharma Inc. ("Alpharma") and Purepac Pharmaceutical Co. ("Purepac") are now, and were, at the time of the filing of this action, corporations existing under the laws of the State of Delaware, having their headquarters in the State of New Jersey. However, the citizenship of Alpharma and Purepac must be disregarded because they have been fraudulently joined in this action in an effort to defeat removal. *See Andersen v. Home Ins. Co.*, 724 F.2d 82, 83-84 (8th Cir. 1983) (when determining whether diversity jurisdiction exists in a given case, the court may ignore the citizenship of parties fraudulently joined).

**B.    Alpharma and Purepac Have Been Fraudulently Joined, Thus Their Citizenship Must Be Disregarded**

Joinder of a resident defendant is fraudulent and removal is proper when there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992); *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002). As set forth below, Alpharma and Purepac have been fraudulently joined in this case because there is no reasonable basis for recovery against them.

Plaintiffs have no reasonable basis for recovery against Alpharma and Purepac because they did not manufacture and/or sell gabapentin until 2004 – after the alleged injuries that form the basis for plaintiffs' Complaint. Plaintiffs allege that as a

6

result of his use of Neurontin (gabapentin) and a generic form of gabapentin, Bernard Strickland attempted suicide on November 1, 2000, April 1, 2001, and April 1, 2003. *See* Compl. ¶ 113. Plaintiffs further allege that Alpharma and Purepac marketed and sold gabapentin in its generic form prior to April 1, 2003. *See* Compl. ¶¶ 85, 87. Although it is nowhere specifically stated in their Complaint, plaintiffs presumably allege that Mr. Strickland took gabapentin manufactured by Alpharma and Purepac at some point prior to his alleged suicide attempt on April 1, 2003. Without such allegations, there is no possibility of a claim against Alpharma and Purepac. Such allegations are baseless, however, as Alpharma and its subsidiary, Purepac, did not receive final FDA approval for gabapentin until September 2003 – some five months after Mr. Strickland's last alleged suicide attempt, and they did not sell gabapentin until October 2004 – eighteen months after Mr. Strickland's last alleged suicide attempt. *See* Certification of Michelangelo Troisi (attached as **Exhibit B**); Affidavit of Mary Ann Evertsz (attached as **Exhibit C**). Accordingly, Mr. Strickland could not have taken gabapentin manufactured and/or sold by Alpharma or Purepac prior to his alleged suicide attempts. As such, there is no basis for plaintiff's claims against Alpharma and Purepac and they have been fraudulently joined in this case.

C.   **The Amount in Controversy Requirement is Satisfied**

Plaintiffs allege that as a result of ingesting Neurontin, Mr. Strickland attempted suicide on three separate occasions. Compl. ¶ 113. Further, plaintiffs seek damages for loss of services, society, and consortium. Compl. at Count Six, ¶ 2. Plaintiffs also seek punitive or exemplary damages and attorney's fees. Compl. at Count

7

One, ¶ 9; Count Two, ¶ 8; Count Three, ¶ 5; Count Four, ¶ 66; Count Five, ¶ 4; Count Six, ¶ 3; and Prayer. Given the nature and extent of plaintiffs' alleged damages, including their claim for punitive damages, plaintiffs' Complaint places more than $75,000 in controversy, exclusive of interest and costs.

## III.   OTHER PROCEDURAL MATTERS

Pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), the United States District Court for the District of New Jersey is the appropriate court for filing a Notice of Removal from the Superior Court of New Jersey, Law Division, Bergen County. *See* 28 U.S.C. § 110.

Pursuant to 28 U.S.C. § 1446(a), Removing Defendants have attached hereto copies of all process, pleadings, and orders served upon Removing Defendants. *See* **Exhibit A**.

Pursuant to 28 U.S.C. § 1446(d), Removing Defendants shall give plaintiffs written notice of the filing of this Notice of Removal, and Removing Defendants shall file the written notice of having filed this Notice of Removal with the clerk of the Superior Court of New Jersey, Law Division, Bergen County, attaching thereto a copy of this Notice of Removal.

8

WHEREFORE, Removing Defendants give notice that the matter styled as *Bernard Strickland and Cathy Strickland vs. Pfizer Inc., Parke-Davis, a division of Warner-Lambert Company and Warner-Lambert Company LLC, Warner-Lambert Company, Warner-Lambert Company LLC, Purepac Pharmaceutical Co. and Alpharma Inc.*, Docket No. L-008862-05, which was filed on December 27, 2005, in the Superior Court of New Jersey, Law Division, Bergen County, is removed to the United States District Court for the District of New Jersey.

Dated: March 16, 2006

Respectfully submitted,

Ezra D. Rosenberg
Thomas Kane
Michelangelo Troisi
DECHERT LLP
A Pennsylvania Limited Liability
Partnership
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, NJ  08543-5218

Attorneys for Defendants Pfizer Inc.; Parke-Davis, a division of Warner-Lambert Company and Warner-Lambert Company LLC; Warner-Lambert Company; and Warner-Lambert Company LLC

Of Counsel:
Scott W. Sayler
Douglas B. Maddock, Jr.
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108-2613

9

12306758.1.LITIGATION

EXHIBIT C

LAW OFFICES
**DECHERT LLP**
A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP
PRINCETON PIKE CORPORATE CENTER
(MAIL TO)       P.O. BOX 5218, PRINCETON, NEW JERSEY 08543-5218
(DELIVER TO)  997 LENOX DRIVE, BUILDING THREE, SUITE 210
                     LAWRENCEVILLE,  NEW JERSEY 08648

---

(609) 620-3200
EDR-0058
TK-0043
MT-4807

ATTORNEYS FOR DEFENDANTS

---

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BERNARD STRICKLAND and CATHY STRICKLAND, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.: |
| | : | |
| vs. | : | |
| | : | |
| PFIZER INC., PARKE-DAVIS, a division of Warner-Lambert Company and Warner-Lambert Company LLC, WARNER-LAMBERT COMPANY, WARNER-LAMBERT COMPANY LLC, PUREPAC PHARMACEUTICAL CO., and ALPHARMA INC., | : : : : : : | **ANSWER OF DEFENDANTS PFIZER INC., PARKE-DAVIS, WARNER-LAMBERT COMPANY, AND WARNER-LAMBERT COMPANY LLC** |
| | : | |
| Defendants. | : | |

Defendants Pfizer Inc. ("Pfizer"), Warner-Lambert Company, and Warner-Lambert Company LLC ("Warner-Lambert"), on its own behalf and on behalf of its unincorporated division, Parke-Davis (collectively referred to hereinafter as "Defendants"), by their undersigned counsel, answer Plaintiffs' Complaint in the above-captioned action (the "Complaint") as follows:

## AS TO STATEMENT OF THE CASE

1.      Deny the allegations in paragraph 1, except admit that the United States Food and Drug Administration ("FDA") has not approved Neurontin® ("Neurontin"), the brand name for gabapentin, for labeling as safe and effective for the treatment of diabetic neuropathy and restless leg syndrome.

## AS TO PARTIES AND JURISDICTION

2.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2, and therefore deny same.

3.      Admit the allegations in paragraph 3.

4.      Admit the allegations in paragraph 4.

5.      Admit the allegations in paragraph 5.

6.      Deny the allegations in paragraph 6, except admit that Parke-Davis was a division of Warner-Lambert Company from approximately 1978 until approximately June 2000.

7.      Deny the allegations in paragraph 7.

8.      Deny the allegations in paragraph 8.

9.      Deny the allegations in paragraph 9, except admit that Warner-Lambert Company was a Delaware corporation until December 31, 2002, when it was converted into a Delaware limited liability company, known as Warner-Lambert Company LLC.

10.     Deny the allegations in paragraph 10, except admit that Warner-Lambert Company was authorized to do business in the State of New Jersey until December 31, 2002.

2

11.    Deny the allegations in paragraph 11, except admit that Warner-Lambert Company was a business entity actually doing business in the State of New Jersey until December 31, 2002.

12.    Deny the allegations in paragraph 12, except admit that Parke-Davis was a division of Warner-Lambert Company from approximately 1978 until approximately June 2000.

13.    Deny the allegations in paragraph 13.

14.    Deny the allegations in paragraph 14, except admit that from December 31, 2002, to the present Warner-Lambert Company LLC has been a Delaware limited liability company.

15.    Deny the allegations in paragraph 15, except admit that Warner-Lambert Company LLC is a Delaware limited liability company authorized to do business in the State of New Jersey since December 31, 2002.

16.    Deny the allegations in paragraph 16, except admit that Warner-Lambert Company LLC has been a business entity actually doing business in the State of New Jersey since December 31, 2002.

17.    Deny the allegations in paragraph 17, except admit, upon information and belief, that Purepac Pharmaceutical Co. is now, and was, at the time of the filing of this action, a corporation existing under the laws of the State of Delaware.

18.    Deny the allegations in paragraph 18, except admit, upon information and belief, that Purepac Pharmaceutical Co. is now, and was, at the time of the filing of this action, a corporation having its headquarters in the State of New Jersey.

3

19.     Deny the allegations in paragraph 19, except admit, upon information and belief, that Purepac Pharmaceutical Co. is now, and was, at the time of the filing of this action, a corporation having its headquarters in the State of New Jersey.

20.     Deny the allegations in paragraph 20, except admit, upon information and belief, that Alpharma Inc. is now, and was, at the time of the filing of this action, a corporation existing under the laws of the State of Delaware.

21.     Deny the allegations in paragraph 21, except admit, upon information and belief, that Alpharma Inc. is now, and was, at the time of the filing of this action, a corporation having its headquarters in the State of New Jersey.

22.     Deny the allegations in paragraph 22, except admit, upon information and belief, that Alpharma Inc. is now, and was, at the time of the filing of this action, a corporation having its headquarters in the State of New Jersey.

23.     Deny the allegations in paragraph 23, except admit that Pfizer is and has been the sole member of Warner-Lambert Company LLC since December 31, 2002.

24.     Deny the allegations in paragraph 24.

25.     Deny the allegations in paragraph 25.

26.     Deny the allegations in paragraph 26.

27.     Deny the allegations in paragraph 27, except admit that Warner-Lambert Company was a wholly-owned subsidiary of Pfizer from June 2000 through December 31, 2002.

28.     Paragraph 28 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 28.

4

29.    Deny the allegations in paragraph 29.

30.    Deny the allegations in paragraph 30, except admit that Warner-Lambert Company LLC has been a wholly-owned subsidiary of Pfizer since December 31, 2002.

31.    Paragraph 31 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 31.

32.    Paragraph 32 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 32.

33.    Paragraph 33 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 33.

34.    Paragraph 34 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 34.

35.    Paragraph 35 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 35.

36.    Paragraph 36 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 36.

37.    Paragraph 37 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 37.

38.    Paragraph 38 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 38.

39.    Paragraph 39 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 39.

40.     Paragraph 40 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 40.

41.     Paragraph 41 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 41.

42.     Paragraph 42 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 42.

43.     Paragraph 43 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 43.

44.     Paragraph 44 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 44.

45.     Paragraph 45 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 45.

46.     Paragraph 46 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 46.

47.     Paragraph 47 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 47.

48.     Paragraph 48 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 48.

49.     Paragraph 49 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 49.

50.     Paragraph 50 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 50.

51.    Paragraph 51 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 51.

52.    Paragraph 52 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 52.

53.    Paragraph 53 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 53.

54.    Paragraph 54 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 54.

55.    Paragraph 55 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 55.

56.    Paragraph 56 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 56.

57.    Paragraph 57 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 57.

58.    Paragraph 58 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 58.

59.    Paragraph 59 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 59.

60.    Paragraph 60 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 60.

61.    Paragraph 61 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 61.

62.     Paragraph 62 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 62.

63.     Paragraph 63 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 63.

64.     Paragraph 64 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 64.

65.     Paragraph 65 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 65.

66.     Paragraph 66 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 66.

67.     Paragraph 67 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 67.

68.     Paragraph 68 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 68.

69.     Paragraph 69 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 69.

70.     Paragraph 70 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 70.

71.     Paragraph 71 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 71.

72.     Deny the allegations in paragraph 72, except admit that Pfizer's headquarters are in New York.

8

73.    Paragraph 73 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 73.

74.    Paragraph 74 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 74.

75.    Paragraph 75 asserts a legal conclusion to which no response is required, and Defendants therefore deny the allegations in paragraph 75.

76.    Deny the allegations in paragraph 76, except admit that since June 2000, Pfizer, directly and/or indirectly through its subsidiaries, has marketed and sold Neurontin.

77.    Deny the allegations in paragraph 77, except admit that Pfizer, directly and/or indirectly through its subsidiaries, has marketed and sold Neurontin since June 2000.

78.    Deny the allegations in paragraph 78.

79.    Deny the allegations in paragraph 79, except admit that Parke-Davis marketed Neurontin on a date prior to November 1, 2000.

80.    Deny the allegations in paragraph 80.

81.    Deny the allegations in paragraph 81, except admit that Warner-Lambert Company marketed and sold Neurontin until June 2000.

82.    Deny the allegations in paragraph 82.

83.    Deny the allegations in paragraph 83.

84.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84, and therefore deny same.

85.    Deny the allegations in paragraph 85.

9

86.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86, and therefore deny same.

87.    Deny the allegations in paragraph 87.

### AS TO BACKGROUND

88.    Paragraph 88 does not allege facts to which a response is required, and Defendants therefore deny the allegations in paragraph 88.

89.    Paragraph 89 does not allege facts to which a response is required, but to the extent that a response might be deemed required, Defendants admit the allegations in paragraph 89.

90.    Paragraph 90 does not allege facts to which a response is required, and Defendants therefore deny the allegations in paragraph 90.

91.    Paragraph 91 does not allege facts to which a response is required, and Defendants therefore deny the allegations in paragraph 91.

92.    Paragraph 92 does not allege facts to which a response is required, and Defendants therefore deny the allegations in paragraph 92.

93.    Paragraph 93 does not allege facts to which a response is required, and Defendants therefore deny the allegations in paragraph 93.

94.    Deny the allegations in paragraph 94, except admit that, in 1993, the FDA approved Neurontin for labeling as safe and effective for adjunctive therapy in the treatment of partial seizures in patients with epilepsy at dosages of 900 to 1800 milligrams per day.

10

95.    Deny the allegations in paragraph 95, except admit that the FDA has not approved Neurontin for the treatment of diabetic neuropathy and restless leg syndrome.

96.    Deny the allegations in paragraph 96.

97.    Deny the allegations in paragraph 97.

98.    Deny the allegations in paragraph 98.

99.    Deny the allegations in paragraph 99.

100.    Deny the allegations in paragraph 100.

101.    Deny the allegations in paragraph 101.

102.    Deny the allegations in paragraph 102, except admit that Neurontin was approved as adjunctive therapy for the treatment of epilepsy.

103.    Deny the allegations in paragraph 103.

104.    Deny the allegations in paragraph 104.

105.    Deny the allegations in paragraph 105, except admit that on May 13, 2004, an Information was filed against Warner-Lambert Company LLC in the United States District Court for the District of Massachusetts.

106.    Deny the allegations in the second paragraph 105.[1]

107.    Deny the allegations in paragraph 107.

108.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108, and therefore deny same.

109.    Deny the allegations in paragraph 109, except deny knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff's physician

---

[1]    Plaintiffs incorrectly numbered this paragraph as 105, instead of 106.

11

prescribed Neurontin to treat Plaintiff's diabetic neuropathy and restless leg syndrome, and therefore deny same.

110.    Deny the allegations in paragraph 110, except deny knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff's physician prescribed Neurontin to treat Plaintiff's diabetic neuropathy and restless leg syndrome, and therefore deny same.

111.    Deny the allegations in paragraph 111.

112.    Deny the allegations in paragraph 112.

113.    Deny the allegations in paragraph 113.

114.    Deny the allegations in paragraph 114.

## AS TO FIRST COUNT

1.    Repeat each and every response to the allegations previously set forth herein.

2.    Deny the allegations in paragraph 2.

3.    Deny the allegations in paragraph 3.

4.    Deny the allegations in paragraph 4.

5.    Deny the allegations in paragraph 5.

6.    Deny the allegations in paragraph 6.

7.    Deny the allegations in paragraph 7.

8.    Deny the allegations in paragraph 8.

9.    Deny the allegations in paragraph 9.

## AS TO SECOND COUNT

1.    Repeat each and every response to the allegations previously set forth herein.

2.    Deny the allegations in paragraph 2.

3.    Deny the allegations in paragraph 3.

4.    Deny the allegations in paragraph 4.

5.    Deny the allegations in paragraph 5.

6.    Deny the allegations in paragraph 6.

7.    Deny the allegations in paragraph 7.

8.    Deny the allegations in paragraph 8.

## AS TO THIRD COUNT

1.    Repeat each and every response to the allegations previously set forth herein.

2.    Deny the allegations in paragraph 2.

3.    Deny the allegations in paragraph 3.

4.    Deny the allegations in paragraph 4.

5.    Deny the allegations in paragraph 5.

## AS TO FOURTH COUNT

1.    Repeat each and every response to the allegations previously set forth herein.

2.    Deny the allegations in paragraph 2

3.    Deny the allegations in paragraph 3.

4.    Deny the allegations in paragraph 4, except refer to the Information for its contents.

5.    Deny the allegations in paragraph 5, except refer to the Information for its contents.

13

6.    Deny the allegations in paragraph 6, except refer to the Information for its contents.

7.    Deny the allegations in paragraph 7, except refer to the Information for its contents.

8.    Deny the allegations in paragraph 8, except refer to the Information for its contents.

9.    Deny the allegations in paragraph 9, except refer to the Information for its contents.

10.    Deny the allegations in paragraph 10, except refer to the Information for its contents.

11.    Deny the allegations in paragraph 11, except refer to the Information for its contents.

12.    Deny the allegations in paragraph 12, except refer to the Information for its contents.

13.    Deny the allegations in paragraph 13, except refer to the Information for its contents.

14.    Deny the allegations in paragraph 14, except refer to the Information for its contents.

15.    Deny the allegations in paragraph 15, except refer to the Information for its contents.

16.    Deny the allegations in paragraph 16, except refer to the Information for its contents.

17.     Deny the allegations in paragraph 17, except refer to the Information for its contents.

18.     Deny the allegations in paragraph 18, except refer to the Information for its contents.

19.     Deny the allegations in paragraph 19, and all of its subparts, except refer to the Information for its contents.

20.     Deny the allegations in paragraph 20, except refer to the Information for its contents.

21.     Deny the allegations in paragraph 21, except refer to the Information for its contents.

22.     Deny the allegations in paragraph 22, except refer to the Information for its contents.

23.     Deny the allegations in paragraph 23, except refer to the Information for its contents.

24.     Deny the allegations in paragraph 24, except refer to the Information for its contents.

25.     Deny the allegations in paragraph 25, except refer to the Information for its contents.

26.     Deny the allegations in paragraph 26, except refer to the Information for its contents.

27.     Deny the allegations in paragraph 27, except refer to the Information for its contents.

28.     Deny the allegations in paragraph 28, except refer to the Information for its contents.

29.     Deny the allegations in paragraph 29, except refer to the Information for its contents.

30.     Deny the allegations in paragraph 30.

31.     Deny the allegations in paragraph 31.

32.     Deny the allegations in paragraph 32.

33.     Deny the allegations in paragraph 33.

34.     Deny the allegations in paragraph 34, and all of its subparts.

35.     Deny the allegations in paragraph 35.

36.     Deny the allegations in paragraph 36.

37.     Deny the allegations in paragraph 37.

38.     Deny the allegations in paragraph 38.

39.     Deny the allegations in paragraph 39.

40.     Deny the allegations in paragraph 40.

41.     Deny the allegations in paragraph 41, except refer to the supplemental NDA and the letter dated August 26, 1997, referenced in paragraph 41 for their contents.

42.     Deny the allegations in paragraph 42.

43.     Deny the allegations in paragraph 43.

44.     Deny the allegations in paragraph 44, except refer to the letter dated June 29, 2001, for its contents.

45.    Deny the allegations in paragraph 45, except refer to the letter dated July 1, 2002, for its contents.

46.    Deny the allegations in paragraph 46.

47.    Deny the allegations in paragraph 47.

48.    Deny the allegations in paragraph 48, except refer to the article referenced in paragraph 48 for its contents.

49.    Deny the allegations in paragraph 49.

50.    Deny the allegations in paragraph 50.

51.    Deny the allegations in paragraph 51.

52.    Deny the allegations in paragraph 52, except admit that sales of Neurontin have increased since 1999 and deny knowledge or information sufficient to form a belief as to the percentage of Neurontin prescribed for off-label uses.

53.    Deny the allegations in paragraph 53.

54.    Deny the allegations in paragraph 54.

55.    Deny the allegations in paragraph 55.

56.    Deny the allegations in paragraph 56.

57.    Deny the allegations in paragraph 57.

58.    Deny the allegations in paragraph 58, except admit that sales of Neurontin have increased since 1998, and deny knowledge or information sufficient to form a belief as to the percentage of Neurontin prescribed for off-label uses.

59.    Deny the allegations in paragraph 59.

60.    Deny the allegations in paragraph 60.

61.     Deny the allegations in paragraph 61.

62.     Deny the allegations in paragraph 62.

63.     Deny the allegations in paragraph 63.

64.     Deny the allegations in paragraph 64.

65.     Deny the allegations in paragraph 65.

66.     Deny the allegations in paragraph 66.

## AS TO FIFTH COUNT

1.     Repeat each and every response to the allegations previously set forth herein.

2.     Deny the allegations in paragraph 2.

3.     Deny the allegations in paragraph 3.

4.     Deny the allegations in paragraph 4.

## AS TO SIXTH COUNT

1.     Repeat each and every response to the allegations previously set forth herein.

2.     Deny the allegations in paragraph 2.

3.     Deny the allegations in paragraph 3, including the wherefore clause.

## GENERAL DENIAL

Defendants deny all allegations and/or legal conclusions set forth in the Complaint that have not previously been specifically admitted, denied, or explained.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof of such defenses that they would not otherwise have, Defendants affirmatively assert the following defenses:

18

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

All of the claims in the Complaint that are brought for harm caused by a product, irrespective of the theory underlying the claim, except for harm caused by breach of an express warranty, are not actionable unless brought under the New Jersey Products Liability Act, N.J.S.A. 2A:58C, et seq.

## THIRD AFFIRMATIVE DEFENSE

Neurontin was neither defective nor unreasonably dangerous, unsuitable, or unfit for its intended purpose when used according to label instructions; therefore, Plaintiffs' claims are barred by the provisions of the New Jersey Products Liability Act, N.J.S.A. 2A:58C-2.

## FOURTH AFFIRMATIVE DEFENSE

The claims set forth in the Complaint are barred by the provisions of the New Jersey Products Liability Act, N.J.S.A. 2A:58C-3, because the methods, standards and techniques used in formulating Neurontin and in issuing warnings and instructions about its use conformed to the generally recognized, reasonably available and reliable state of knowledge in the field at the time Neurontin was manufactured.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because Defendants complied with the applicable statutes; since the warnings and instructions given in connection with Neurontin were approved or prescribed by the United States Food and Drug Administration ("FDA"),

Plaintiffs' claims are barred, in whole or in part, or are otherwise limited by and pursuant to the provisions of the New Jersey Products Liability Act, N.J.S.A. 2A:58C-4, and the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, et seq.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or part, or are otherwise limited by and pursuant to the provisions of the New Jersey Products Liability Act, N.J.S.A. 2A:58C, et seq., including all of the defenses set forth herein.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovery and/or Plaintiffs' recovery is limited pursuant to the Comparative Negligence Act, N.J.S.A. 2A:15-5.1, et seq.

## EIGHTH AFFIRMATIVE DEFENSE

Pursuant to the Supremacy Clause of the United States Constitution, the claims set forth in the Complaint are preempted by federal statutes and regulations having the force of law.

## NINTH AFFIRMATIVE DEFENSE

The claims set forth in the Complaint are barred because Plaintiffs' alleged injuries and damages, if any, were actually or proximately caused by the intervening or superseding conduct of persons or entities over which or whom Defendants had no control.

20

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' injuries and damages, if any, were due to idiosyncratic reactions to Neurontin for which Defendants cannot be held responsible.

## ELEVENTH AFFIRMATIVE DEFENSE

The claims set forth in the Complaint are barred because the alleged injuries and damages, if any, were caused by medical conditions or processes (whether pre-existing or contemporaneous) unrelated to Neurontin.

## TWELFTH AFFIRMATIVE DEFENSE

The claims set forth in the Complaint are barred by the learned intermediary doctrine.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred under the Restatement (Second) of Torts: Products Liability § 402A and comments thereto, including but not limited to comments j and k, and/or the Restatement (Third) of Torts: Products Liability §§ 2, 4, and 6 and comments thereto.

## FOURTEENTH AFFIRMATIVE DEFENSE

The claims set forth in the Complaint are barred because Plaintiffs' alleged injuries and damages, if any, were caused by Plaintiff Bernard Strickland's misuse of Neurontin.

## FIFTEENTH AFFIRMATIVE DEFENSE

The claims set forth in the Complaint are barred because the foreseeable therapeutic benefits of Neurontin outweighed any foreseeable risks of harm.

21

## SIXTEENTH AFFIRMATIVE DEFENSE

The claims set forth in the Complaint are barred by the doctrine of informed consent and assumption of risk.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The claims set forth in the Complaint are barred because Defendants breached no warranty, express or implied, to Plaintiffs.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The claims set forth in the Complaint are barred by the applicable statutes of limitation and/or repose.

## NINETEENTH AFFIRMATIVE DEFENSE

The claims set forth in the Complaint are barred under the doctrines of estoppel, waiver, ratification, laches and unclean hands and other related doctrines and principles, or any one of them, and by Plaintiffs' inequitable conduct, lack of diligence, delay and inattention in pursuing such claims.

## TWENTIETH AFFIRMATIVE DEFENSE

To the extent applicable, Plaintiffs' claims for damages are barred, in whole or part, by their failure to mitigate damages.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

To the extent applicable, Defendants are entitled to contribution from any person and/or entity whose negligence or other fault contributed to Plaintiffs' alleged injuries and damages.

22

## TWENTY-SECOND AFFIRMATIVE DEFENSE

To the extent applicable, Defendants' liability for non-economic damages is several rather than joint and should be prorated.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state facts sufficient to sustain a claim for, or recovery of, punitive or exemplary damages.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs lack standing to bring this action.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the First Amendment to the United States Constitution.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims of fraud are barred by reason of the Complaint's failure to allege the factual circumstances constituting that specific claim with particularity.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for punitive and exemplary damages are barred by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims should be dismissed and/or transferred due to improper and/or inconvenient venue.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

With respect to Plaintiffs' demand for punitive and exemplary damages, Defendants specifically incorporate by reference any and all standards or limitations regarding the determination and enforceability of punitive and exemplary damage awards which arose in the decisions of <u>BMW of North America Inc. v. Gore</u>, 517 U.S. 559 (1996), <u>Cooper Industries, Inc. v. Leatherman Tool Group</u>, 532 U.S. 424 (2001), and <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408 (2003).

## THIRTIETH AFFIRMATIVE DEFENSE

To the extent Plaintiffs' claims are based on alleged misrepresentations or omissions made to the FDA, such claims are barred pursuant to <u>Buckman Co. v. Plaintiff's Legal Committee</u>, 531 U.S. 341 (2001).

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Subject to the provisions of Rule 12(h) of the Federal Rules of Civil Procedure, Defendants reserve the right to raise additional affirmative and other defenses as may be established by discovery and the evidence in this case. Defendants further reserve the right to amend their Answer and to add such counterclaims as may become necessary after reasonable opportunity for investigation and discovery.

**WHEREFORE**, Defendants respectfully request that the Court:

1.      Enter judgment in their favor on all claims alleged in the Complaint;

2.      Award Defendants the costs, disbursements and reasonable attorneys' fees associated with these proceedings; and

3.      Grant Defendants such other and further relief as the Court may deem just and proper.


Dated:  March 23, 2006                        Respectfully submitted,

                                             Ezra D. Rosenberg
                                             Michelangelo Troisi
                                             DECHERT LLP
                                             A Pennsylvania Limited Liability Partnership
                                             Princeton Pike Corporate Center
                                             P.O. Box 5218
                                             Princeton, NJ  08543-5218

                                             Attorneys for Defendants Pfizer Inc.; Parke-
                                             Davis, a division of Warner-Lambert
                                             Company and Warner-Lambert Company
                                             LLC; Warner-Lambert Company; and
                                             Warner-Lambert Company LLC

Of Counsel:
Scott W. Sayler
Douglas B. Maddock, Jr.
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108-2613

25

## CERTIFICATION OF SERVICE

I hereby certify that on this date I caused a true and complete copy of the attached

Answer of Defendants Pfizer, Inc., Parke-Davis, Warner-Lambert Company, and Warner-

Lambert Company LLC to be filed with the United States District Court for the District

of New Jersey and to be served, via FedEx, upon:

> Finkelstein & Partners, LLP
> 50 Park Place, 10th Floor
> Newark, New Jersey 07102
> Attorneys for Plaintiffs
> Bernard Strickland and Cathy Strickland

Dated: March 23, 2006

Michelangelo Trois

EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------------x
                                            :
In re:  NEURONTIN MARKETING,                :
        SALES PRACTICES AND                 :
        PRODUCTS LIABILITY LITIGATION       :
                                            :
-------------------------------------------------------x
                                            :
THIS DOCUMENT RELATES TO:                   :
                                            :
        STRICKLAND v. PFIZER INC.           :
                                            :
-------------------------------------------------------x
```

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

Individual Case No. 06-10778

## AFFIDAVIT OF BERNARD STRICKLAND

STATE OF ALABAMA        )
                        ) ss.:
COUNTY OF JEFFERSON     )

BERNARD STRICKLAND, being duly sworn, deposes and says:

1.      I am over eighteen years of age and presently reside at Birmingham, Alabama.

2.      My wife, Cathy Strickland, and I are the plaintiffs in this case in which it is claimed that I was injured due to my ingestion of the drug Neurontin.

3.      I appeared for a deposition in this case on April 16, 2007, and my wife appeared for a deposition in this case on April 17, 2007.

4.      Two of my treating physicians also appeared for depositions in this case on June 11 and 12, 2007.

5.      My wife and I have discussed our case in detail with Marshall Richer, an attorney with Finkelstein & Partners, our attorneys in this case, and we agree that based upon the deposition testimony and documents which have been produced in this case, we would be unable to prove our claim that my injuries were caused by my ingestion of Neurontin.

6.    My wife and I are very concerned that we may be personally liable for costs if we lost this case and a potential judgment were to be entered against us.

7.    It is our understanding that if our case is voluntarily discontinued with prejudice, costs will not be assessed against us, and that we will not be able to pursue in the future any claims for injuries alleged to have been caused by my ingestion of Neurontin against any of the defendants in this lawsuit.

8.    My wife and I therefore request that our case be voluntarily dismissed with prejudice.

9.    We have been advised that we may seek the opinion of other counsel with regard to this matter, but we have chosen not to do so prior to the discontinuance of this case.

_Bernard Strickland_
BERNARD STRICKLAND

On August 28th, 2007, before me personally came BERNARD STRICKLAND, who, being duly sworn according to law, acknowledged that he has read the foregoing AFFIDAVIT OF BERNARD STRICKLAND and signed same, and that all the above statements of fact contained therein are true and correct.

Subscribed and sworn to before me this 28th day of August, 2007.

_Delua W. Jones_
Notary Public

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Aug 12, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

My Commission expires

2

EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
                                    :    MDL Docket No. 1629

In re:  NEURONTIN MARKETING,     :
          SALES PRACTICES AND      :    Master File No. 04-10981
          PRODUCTS LIABILITY LITIGATION  :

                                      :    Judge Patti B. Saris
------------------------------------------------------------x
                                    :    Magistrate Judge Leo T. Sorokin

THIS DOCUMENT RELATES TO:      :
                                    :

      STRICKLAND v. PFIZER INC.      :    Individual Case No. 06-10778

                                    :
------------------------------------------------------------x

## AFFIDAVIT OF CATHY STRICKLAND

STATE OF ALABAMA     )
                      ) ss.:
COUNTY OF JEFFERSON  )

      CATHY STRICKLAND, being duly sworn, deposes and says:

      1.      I am over eighteen years of age and presently reside at Birmingham, Alabama.

      2,      My husband, Bernard Strickland, and I are the plaintiffs in this case in which it is claimed that he was injured due to his ingestion of the drug Neurontin.

      3.      My husband appeared for a deposition in this case on April 16, 2007, and I appeared for a deposition in this case on April 17, 2007.

      4.      Two of my husband's treating physicians also appeared for depositions in this case on June 11 and 12, 2007.

      5.      My husband and I have discussed our case in detail with Marshall Richer, an attorney with Finkelstein & Partners, our attorneys in this case, and we agree that based upon the deposition testimony and documents which have been produced in this case, we would be unable to prove our claim that my husband's injuries were caused by his ingestion of Neurontin.

6.    My husband and I are very concerned that we may be personally liable for costs if we lost this case and a potential judgment were to be entered against us.

7.    It is our understanding that if our case is voluntarily discontinued with prejudice, costs will not be assessed against us, and that we will not be able to pursue in the future any claims for injuries alleged to have been caused by my husband's ingestion of Neurontin against any of the defendants in this lawsuit.

8.    My husband and I therefore request that our case be voluntarily dismissed with prejudice.

9.    We have been advised that we may seek the opinion of other counsel with regard to this matter, but we have chosen not to do so prior to the discontinuance of this case.

*Cathy Strickland*

CATHY STRICKLAND

On August 28th, 2007, before me personally came CATHY STRICKLAND, who, being duly sworn according to law, acknowledged that he has read the foregoing AFFIDAVIT OF CATHY STRICKLAND and signed same, and that all the above statements of fact contained therein are true and correct.

Subscribed and sworn to before me this 28th day of August, 2007.

*Debra W. Jones*

, Notary Public

My Commission expires NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Aug 12, 2008
BONDED THRU NOTARY PUBLIC UNDERWRITERS

2

EXHIBIT F

1

```
1            IN THE UNITED STATES DISTRICT COURT

2                 DISTRICT OF MASSACHUSETTS

3

4   IN RE:  NEURONTIN MARKETING,

5   SALES PRACTICES AND PRODUCTS

6   LIABILITY LITIGATION

7

8   DEPOSITION OF:      ) MDL DOCKET NO. 1629

9   BERNARD STRICKLAND  ) MASTER FILE NO. 04-10981

10  06-CV-1332          ) JUDGE PATTI B. SARIS

11                      ) MAGISTRATE JUDGE

12                      ) LEO T. SOROKIN

13

14            S T I P U L A T I O N S

15        IT IS STIPULATED AND AGREED, by and

16  between the parties through their respective

17  counsel, that the deposition of:

18              BERNARD STRICKLAND,

19  may be taken before Carrie M. Robinson,

20  Commissioner and  Notary Public, State at Large,

21  at the Law Offices of Bradley, Arant, Rose &

22  White, One Federal Place, 1819 5th Avenue North,

23  Birmingham, Alabama  35203, on the 16th day of

24  April, 2007, commencing at approximately

25  9:05 a.m.
```

2

1    IT IS FURTHER STIPULATED AND AGREED that
2 the signature to and reading of the deposition
3 by the witness is NOT waived, the deposition to
4 have the same force and effect as if full
5 compliance had been had with all laws and rules
6 of Court relating to the taking of depositions.
7
8    IT IS FURTHER STIPULATED AND AGREED that
9 it shall not be necessary for any objections to
10 be made by counsel to any questions, except as
11 to form or leading questions, and that counsel
12 for the parties may make objections and assign
13 grounds at the time of the trial, or at the time
14 said deposition is offered in evidence, or prior
15 thereto.
16        ***
17
18
19
20
21
22
23
24
25

4

INDEX
                    Page
Examination by Mr. Haston.....................6

EXHIBIT LIST
                    Page
Defendant's Exhibit 1.......................19
Defendant's Exhibit 2.......................72
Defendant's Exhibit 3.......................91
Defendant's Exhibit 4.......................92
Defendant's Exhibit 5.....................138
Defendant's Exhibit 6.....................200
Defendant's Exhibit 7.....................236
Defendant's Exhibit 8.....................287
Defendant's Exhibit 9.....................332
Defendant's Exhibit 10...................334
Defendant's Exhibit 11...................340

3

APPEARANCES

FOR THE PLAINTIFF:
    MARSHALL P. RICHER
    Attorney at Law
    Finkelstein & Partners
    80 Wolf Road
    Suite 503
    Albany, New York  12205

FOR THE DEFENDANT:
    F.M. TRIPP HASTON, III
    BRIAN ALEXANDER WAHL
    Attorneys at Law
    Bradley, Arant, Rose & White
    One Federal Place
    1819 5th Avenue North
    Birmingham, Alabama 35203

ALSO APPEARING:
    DONNA EVANS, VIDEOGRAPHER

5

1    I, Carrie M. Robinson, a Court
2 Reporter of Birmingham, Alabama, and a Notary
3 Public for the State of Alabama at Large, acting
4 as Commissioner, certify that on this date, as
5 provided by the Federal Rules of Civil Procedure
6 and the foregoing stipulation of counsel, there
7 came before me on the 16th day of April, 2007,
8 at the law offices of Bradley, Arant, Rose &
9 White, One Federal Place, 1819 5th Avenue North,
10 Birmingham, Alabama  35203, commencing at
11 approximately 9:05 a.m., BERNARD STRICKLAND,
12 witness in the above cause, for oral
13 examination, whereupon the following proceedings
14 were had:
15    VIDEOGRAPHER:  We now commence the
16 deposition In Re:  Neurontin Marketing, Sales
17 Practices and Products Liability Litigation, MDL
18 Number 1629, Master File Number 04-0981.  This
19 document relates to Bernard Strickland, Case
20 Number 06-CV-1332.  The date is April the 16th,
21 year 2007.  The time is approximately 9:04 a.m.
22 We are in Birmingham, Alabama, at the law firm
23 of Bradley, Arant & White.  Our witness is
24 Mr. Bernard Strickland.  He will be sworn, the
25 attorneys will introduce themselves, and the

2 (Pages 2 to 5)

**6**

1 deposition will begin.
2
3        BERNARD STRICKLAND,
4 being first duly sworn, was examined and
5 testified as follows:
6
7        MR. RICHER: Marshall Richer,
8 Finkelstein & Partners for Bernard and Cathy
9 Strickland.
10       MR. HASTON: Tripp Haston for
11 Pfizer.
12 EXAMINATION BY MR. HASTON:
13 Q       Good morning.
14 A       Good morning.
15 Q       Mr. Strickland, we've never met
16 before, but my name is Tripp Haston and I
17 represent Pfizer in the suit that you've brought
18 against them.
19       Have you ever had your deposition
20 taken before?
21 A       No.
22 Q       You've probably been told by your
23 counsel about the way this will go, but
24 basically I'll be asking you a series of
25 questions. I'll have some documents for you to

**7**

1 look at, and I would like for you to answer my
2 questions to the best of your ability.
3        If you don't understand my question,
4 all I ask you to do is just tell me that and I
5 will make sure we get a question that you
6 understand so we're on the same page. Is that
7 fair?
8 A       Right.
9 Q       And this is not some kind of
10 marathon, endurance test. If you need to take a
11 break, you just tell me and we'll do that. The
12 only thing I ask is that you answer any question
13 that I have on the table at the time, unless
14 your counsel instructs you not to answer the
15 question.
16 A       All right.
17 Q       All right? Could you give me your
18 full legal name?
19 A       My name is Bernard Strickland.
20 Q       Do you have a middle name?
21 A       No.
22 Q       Do you have any nicknames that
23 you've ever gone by?
24 A       Scorpio.
25 Q       Scorpio. And when did you first get

**8**

1 the nickname Scorpio?
2 A       I think it was '77, 1977.
3 Q       Okay. And how did you get the
4 nickname Scorpio?
5 A       My karate instructor gave me that
6 name.
7 Q       Do friends and family sometimes
8 refer to you as Scorpio?
9 A       Yes, my class mates.
10 Q       Your classmates. And when you say
11 your "classmates," are you talking about your
12 karate classmates?
13 A       Yes.
14 Q       Have you ever filled out any
15 documents listing yourself by name as Scorpio?
16 A       Karate material.
17 Q       Karate material. Anything other
18 than karate material?
19 A       No.
20 Q       All right. What is your current
21 address?
22 A       1505 42nd Street, Birmingham,
23 Alabama, 35208.
24 Q       How long have you lived at that
25 particular address?

**9**

1 A       This August will be three years.
2 Q       Okay. And your date of birth?
3 A       6-20-52.
4 Q       And what is your Social Security
5 number?
6 A       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.
7 Q       Do you --
8        MR. RICHER: Bernard, let me give
9 you a tip because I reminded you about this
10 yesterday: Sometimes you know where he is going
11 to go with his question from the beginning of
12 it. You have to wait until he finishes his
13 question to answer or else this very nice lady
14 is going to have trouble because she can't take
15 down two people at the same time. Okay?
16        THE WITNESS: All right.
17 Q       (By Mr. Haston) And you understand
18 she's taking down all your testimony --
19 A       Uh-huh.
20 Q       -- and that you are under oath?
21 A       Right.
22 Q       And you understand that you are also
23 being videotaped as well?
24 A       (Witness nods head.)
25 Q       Is that right?

3 (Pages 6 to 9)

1

1   IN THE UNITED STATES DISTRICT COURT

2            DISTRICT OF MASSACHUSETTS

3

4  IN RE: NEURONTIN MARKETING, ) MDL NO. 1629

5  SALES PRACTICES AND PRODUCTS) Master File No.

6  LIABILITY LITIGATION       )   04-10981

7  ***********************************************

8  THIS DOCUMENT RELATES TO:

9  BERNARD STRICKLAND   06-CV-1332

10

11        S T I P U L A T I O N S

12

13      IT IS STIPULATED AND AGREED, by and

14  between the parties through their respective

15  counsel, that the video deposition of:

16        BERNARD STRICKLAND,

17  may be taken before Cathy A. DeBardeleben,

18  Commissioner and Notary Public, State at

19  Large, at the law offices of Bradley, Arant,

20  Rose & White, One Federal Place, 1819 5th

21  Avenue North, Birmingham, Alabama 35203, on

22  the 17th day of April, 2007, commencing at

23  approximately 9:00 a.m.

24

25

1    IT IS FURTHER STIPULATED AND AGREED
2 that the signature to and reading of the
3 deposition by the witness is not waived, the
4 deposition to have the same force and effect
5 as if full compliance had been had with all
6 laws and rules of Court relating to the
7 taking of depositions.
8
9    IT IS FURTHER STIPULATED AND
10 AGREED that it shall not be necessary for any
11 objections to be made by counsel to any
12 questions, except as to form or leading
13 questions, and that counsel for the parties
14 may make objections and assign grounds at the
15 time of the trial, or at the time said
16 deposition is offered in evidence, or prior
17 thereto.
18        ***
19
20
21
22
23
24
25

## INDEX

MR. WAHL: 6-186

## EXHIBIT LIST

Defendant's Exhibit No. 1 -  19
Defendant's Exhibit No. 2 -  54
Defendant's Exhibit No. 3 -  54
Defendant's Exhibit No. 4 -  60
Defendant's Exhibit No. 5 - 131
Defendant's Exhibit No. 6 - 145
Defendant's Exhibit No. 7 - 154

## APPEARANCES

FOR THE PLAINTIFF:
    MARSHALL P. RICHER
    Attorney at Law
    Finkelstein & Partners, LLP
    436 Robinson Avenue
    Newburgh, New York  12550

FOR THE DEFENDANT:
    BRIAN A. WAHL
    Attorney at Law
    Bradley, Arant, Rose & White
    One Federal Place
    1819 5th Avenue North
    Birmingham, Alabama  35203

1    I, Cathy A. DeBardeleben, a Court
2 Reporter of Birmingham, Alabama, and a Notary
3 Public for the State of Alabama at Large,
4 acting as Commissioner, certify that on this
5 date, as provided by the Federal Rules of
6 Civil Procedure and the foregoing stipulation
7 of counsel, there came before me on the 17th
8 day of April, 2004, at the law offices of
9 Bradley, Arant, Rose & White, One Federal
10 Place, 1819 5th Avenue North, Birmingham,
11 Alabama 35203, commencing at approximately
12 9:00 a.m., CATHY STRICKLAND, witness in the
13 above cause, for oral examination, whereupon
14 the following proceedings were had:
15    THE VIDEOGRAPHER: We now commence
16 the deposition in re: Neurontin Marketing
17 Sales Practices and Products Liability
18 Litigation, MDL No. 1629, Master File Number
19 04-10981, United States District Court the
20 District of Massachusetts.  This document
21 relates to Bernard Strickland, Case
22 06-CV-1332.  Our witness is Mrs. Cathy
23 Strickland.  The date is April 17th, the year
24 2007, approximately 9:10 a.m. in Birmingham,
25 Alabama at the law firm of Bradley, Arant,

2 (Pages 2 to 5)

**6**

1 Rose and White. Mrs. Strickland will be
2 sworn, the attorneys will introduce
3 themselves and the deposition will begin.
4        CATHY STRICKLAND,
5 being first duly sworn, was examined as
6        follows:
7     THE REPORTER: And y'all want the
8 usual stipulations except the witness waiving
9 the reading and signing?
10    MR. RICHER: I'm not sure what usual
11 stipulations here would be, but yesterday we
12 seemed to --
13    MR. HASTON: You want to waive
14 reading and signing for her? Usually it's
15 waived.
16    MR. RICHER: In this one we're not
17 because it's track one. Normally we would,
18 but on these two we are going to require reading
19 and signing.
20    MR. HASTON: Okay.
21    MR. RICHER: Marshall Richer,
22 Finkelstein and Partners for Bernard and
23 Cathy Strickland.
24    MR. WAHL: Brian Wahl, Bradley,
25 Arant, for Pfizer.

**7**

1 EXAMINATION BY MR. WAHL:
2 Q    Mrs. Strickland, good morning.
3 A    Good morning.
4 Q    Have you ever given a deposition
5 before?
6 A    No.
7 Q    Okay. I'm going to ask you a series
8 of questions. The court reporter has already
9 put you under oath. Do you understand that?
10 A    Yes, I do.
11 Q    And one thing, you always have to
12 give verbal answers so she can type down what
13 you say.
14 A    Uh-huh.
15 Q    If you say "uh-huh" like you just did
16 or "unh-unh," that's perfectly natural. We
17 all do it. When you do do that, I will
18 remind you to say "yes" or "no" or "I don't
19 know," something that she can write down on
20 the record, okay?
21 A    Okay.
22 Q    Do you have any questions for me
23 before we get started? And the reason I ask
24 that is, once I start asking questions, it
25 will be me doing the questioning and you

**8**

1 doing the answering. So, if you have got
2 anything you want to ask me now, let's go
3 ahead and do that.
4 A    No.
5 Q    All right. Would you please state
6 your full name for the record?
7 A    Cathy Strickland.
8 Q    Mrs. Strickland, what's your middle
9 name?
10 A    I don't have a middle name.
11 Q    What was your maiden name?
12 A    Willingham.
13 Q    Willingham? Can you spell that,
14 please?
15 A    W-I-L-L-I-N-G-H-A-M.
16 Q    Mrs. Strickland, when were you and
17 Mr. Strickland married?
18 A    We was married April the 16th '86.
19 Q    And as I understand it, that was
20 roughly six months before you moved to
21 Birmingham?
22 A    Yes.
23 Q    When did you move to the Birmingham?
24 A    We moved to Birmingham in -- I think
25 it was in September.

**9**

1 Q    Of that same year?
2 A    Yes, of '86.
3 Q    Had you ever been married before you
4 married Bernard Strickland?
5 A    No.
6 Q    And what is your current address?
7 A    1505 42nd Street, Birmingham, Alabama
8 35208.
9 Q    Home phone number?
10 A    785-9401.
11 Q    Does Mr. Strickland ever list that
12 phone number as a business address for a
13 karate do-jo?
14 A    I don't -- I really don't know
15 whether he's listed it or not.
16 Q    Let me ask you this. Do you ever
17 receive calls at the house about karate,
18 people calling for lessons?
19 A    Yes, some have called.
20 Q    Mrs. Strickland, as I understand it,
21 you and Mr. Strickland have had two children,
22 Diontra and Donte; is that correct?
23 A    Yes.
24 Q    And Donte is deceased?
25 A    Yes.

3 (Pages 6 to 9)

1

```
 1        IN THE UNITED STATES DISTRICT COURT

 2           DISTRICT OF MASSACHUSETTS

 3

 4   IN RE: NEURONTIN          MDL NO. 1629
     MARKETING, SALES
 5   PRACTICES AND            Master File No.
     LIABILITY LITIGATION        04-10891
 6                       JUDGE PATTI B. SARIS

 7   THIS DOCUMENT           06-CV-1332
     RELATES TO:
 8   BERNARD STRICKLAND     MAGISTRATE JUDGE
                          LEO T. SOROKIN
 9

10      DEPOSITION OF DR. WOLFRAM GLASER

11          S T I P U L A T I O N S

12

13        IT IS STIPULATED AND AGREED, by

14   and between the parties through their

15   respective counsel, that the videotaped

16   deposition of:

17            DR. WOLFRAM GLASER

18   may be taken before Nancy S. Holland,

19   Commissioner and Notary Public, State at

20   Large, at Western Mental Health Center, 1701

21   Avenue D, Birmingham, Alabama, on the 11th

22   day of June, 2007, commencing at

23   approximately 9:15 a.m.

24

25
```

2

1      IT IS FURTHER STIPULATED AND
2 AGREED that the signature to and reading of
3 the deposition by the witness is waived, the
4 deposition to have the same force and effect
5 as if full compliance had been had with all
6 laws and rules of Court relating to the
7 taking of depositions.
8
9      IT IS FURTHER STIPULATED AND
10 AGREED that it shall not be necessary for
11 any objections to be made by counsel to any
12 questions, except as to form or leading
13 questions, and that counsel for the parties
14 may make objections and assign grounds at
15 the time of the trial, or at the time said
16 deposition is offered in evidence, or prior
17 thereto.
18          ***
19
20
21
22
23
24
25

4

1          EXAMINATION INDEX
2
   DR. WOLFRAM GLASER
3   BY MR. JOHNSON . . . . . . .   6
4
5          EXHIBIT INDEX
6
   DEFENDANT'S                PAGE
7  1                    6
8  2                    13
9  3                    13
10 4                    13
11 5                    13
12 6                    13
13 7                    14
14 8                    17
15 9                    23
16
17
18
19
20
21
22
23
24
25

3

1          A P P E A R A N C E S
2 FOR BERNARD STRICKLAND:
3     MARSHALL P. RICHER
4     Attorney at Law
5     Finkelstein & Partners
6     80 Wolf Road - Suite 503
7     Albany, New York  12205
8     (800) 634-1212
9 FOR PFIZER, INC.:
10    BRIAN A. WAHL
11    ANDREW B. JOHNSON
12    Attorneys at Law
13    Bradley, Arant, Rose & White
14    One Federal Place
15    1819 Fifth Avenue North
16    Birmingham, Alabama  35203
17    (205) 521-8000
18 VIDEO TECHNICIAN:
19    DONNA G. EVANS
20
21
22
23
24
25

5

1      I, Nancy S. Holland, a Court
2 Reporter of Birmingham, Alabama, and a
3 Notary Public for the State of Alabama at
4 Large, acting as Commissioner, certify that
5 on this date, as provided by the Federal
6 Rules of Civil Procedure and the foregoing
7 stipulation of counsel, there came before me
8 on the 11th day of June, 2007, at Western
9 Mental Health Center, 1701 Avenue D,
10 Birmingham, Alabama, commencing at
11 approximately 9:15 a.m, DR. WOLFRAM GLASER,
12 witness in the above cause, for oral
13 examination, whereupon the following
14 proceedings were had:
15      THE VIDEO TECHNICIAN:  We now
16 commence the deposition In Re: Neurontin
17 Marketing, Sales Practices and Products
18 Liability Litigation, MDL Number 1629,
19 Master File 04-10981.  This document relates
20 to Bernard Strickland, individual case
21 06-CV-1332.
22      The date is June the 11th the
23 year 2007.  The time is approximately
24 9:17 a.m.  We're in Ensley, Alabama at the
25 Western Mental Health Center.  Our witness

2 (Pages 2 to 5)

**6**

1 is Dr. Wolfram Glaser. He will be sworn,
2 the attorneys will introduce themselves and
3 the deposition will begin.
4       MR. RICHER: Marshall Richer,
5 Finkelstein & Partners for Bernard
6 Strickland.
7       MR. JOHNSON: Andy Johnson and
8 Brian Wahl of Bradley, Arant for defendant
9 Pfizer, Incorporated.
10       DR. WOLFRAM GLASER,
11 being first duly sworn, was examined and
12 testified as follows:
13             EXAMINATION
14 BY MR. JOHNSON:
15 Q      Doctor, can you state your name
16 for the record.
17 A      Wolfram Glaser.
18 Q      As I just said, I'm Andy Johnson
19 and I represent Pfizer in this litigation.
20
21             (Defendant's Exhibit
                Number 1 was marked
22             for identification)
23
24 Q      I've marked as Exhibit 1 a
25 deposition notice for this case. I'm not

**7**

1 sure if you've seen that yet or not, but if
2 you would just take a minute to glance at
3 that as we begin.
4       Doctor, I show you that to ask
5 you you understand that you're here to give
6 testimony in the lawsuit that's reflected in
7 that exhibit. Is that correct?
8 A      Yes.
9 Q      You understand that this case was
10 filed by one of your former patients,
11 Bernard Strickland.
12 A      Yes.
13 Q      Against my client, Pfizer.
14 A      Yes.
15 Q      Have you given a deposition
16 before?
17 A      Yes.
18 Q      Well, it's going to be the same
19 as previous depositions you've given. I'm
20 going to ask a series of questions. If at
21 any time you don't understand one of my
22 questions, let me know. I'll do my best not
23 to talk over you if you'll try to wait until
24 I finish my question to begin your answer.
25 A      Uh-huh.

**8**

1 Q      And if there's any -- any
2 question that's ambiguous or vague to you or
3 you don't understand, please ask me to
4 rephrase it and I'll be glad to. All right?
5       Q      Where are you currently employed?
6 A      Western Mental Health Center,
7 Incorporated.
8 Q      And what is your title at Western
9 Mental Health?
10 A      I'm the medical director.
11 Q      We don't have a copy of your CV
12 yet, but can you briefly describe for me
13 your educational background?
14 A      I have an M.D. from the
15 University of Alabama School of Medicine
16 '71; internship at Children's Hospital until
17 '72; residency in psychiatry until '75. I
18 trained at a fully accredited training
19 program.
20       I am Board-certified in -- by the
21 American Board of Psychiatry and Neurology,
22 and that was in '84. I've been in practice
23 for thirty -- 32 years.
24 Q      And is that 32 years as a
25 psychiatrist?

**9**

1 A      Yes.
2 Q      Do you have any subspecialties
3 within psychiatry?
4 A      No.
5 Q      Please describe your practice for
6 me if you would.
7 A      We are here for the treatment of
8 the seriously mentally ill; that is, people
9 with those illnesses that are considered to
10 be major psychiatric illnesses and that are
11 disabling to people.
12 Q      How long have you been at Western
13 Mental Health?
14 A      Well, including my first stint in
15 the '80s -- the '70s, excuse me, this makes
16 about 17 and a half years.
17 Q      Going back from today, how long
18 have you been at Western Mental Health
19 during this current stay?
20 A      Continually since '92, June -- in
21 fact, June 1st of '92.
22 Q      I know you have a clinical
23 practice. Do you have any other sort of
24 clinical practice other than your
25 clinical practice here?

3 (Pages 6 to 9)

1

1    IN THE UNITED STATES DISTRICT COURT

2        DISTRICT OF MASSACHUSETTS

3

4  IN RE: NEURONTIN          MDL NO. 1629
   MARKETING, SALES
5  PRACTICES AND            Master File No.
   LIABILITY LITIGATION         04-10891
6                       JUDGE PATTI B. SARIS

7  THIS DOCUMENT           06-CV-1332
   RELATES TO:
8  BERNARD STRICKLAND    MAGISTRATE JUDGE
                     LEO T. SOROKIN
9

10    DEPOSITION OF SADRI M. AVSAR, M.D.

11

12      S T I P U L A T I O N S

13

14        IT IS STIPULATED AND AGREED, by

15  and between the parties through their

16  respective counsel, that the videotaped

17  deposition of:

18        SADRI M. AVSAR, M.D.

19  may be taken before Nancy S. Holland,

20  Commissioner and Notary Public, State at

21  Large, at Simon-Williamson Clinic, 3004

22  Allison Bonnett Memorial Drive, Hueytown,

23  Alabama, on the 12th day of June, 2007,

24  commencing at approximately 3:40 p.m.

25

**Page 2**

1    IT IS FURTHER STIPULATED AND
2 AGREED that the signature to and reading of
3 the deposition by the witness is waived, the
4 deposition to have the same force and effect
5 as if full compliance had been had with all
6 laws and rules of Court relating to the
7 taking of depositions.
8
9    IT IS FURTHER STIPULATED AND
10 AGREED that it shall not be necessary for
11 any objections to be made by counsel to any
12 questions, except as to form or leading
13 questions, and that counsel for the parties
14 may make objections and assign grounds at
15 the time of the trial, or at the time said
16 deposition is offered in evidence, or prior
17 thereto.
18        ***
19
20
21
22
23
24
25

**Page 3**

1        A P P E A R A N C E S
2 FOR BERNARD STRICKLAND:
3    MARSHALL P. RICHER
4    Attorney at Law
5    Finkelstein & Partners
6    80 Wolf Road - Suite 503
7    Albany, New York  12205
8    (800) 634-1212
9 FOR PFIZER, INC.:
10    BRIAN A. WAHL
11    ANDREW B. JOHNSON
12    Attorneys at Law
13    Bradley, Arant, Rose & White
14    One Federal Place
15    1819 Fifth Avenue North
16    Birmingham, Alabama  35203
17    (205) 521-8000
18 VIDEO TECHNICIAN:
19    DONNA G. EVANS
20
21
22
23
24
25

**Page 4**

1        EXAMINATION INDEX
2
3 SADRI M. AVSAR, M.D
  BY MR. JOHNSON . . . . . . .  6
  BY MR. RICHER . . . . . . . .  52
4 FURTHER BY MR. JOHNSON . . .  57
  FURTHER BY MR. RICHER . . . .  62
5
        EXHIBIT INDEX
6
7 DEFENDANT'S                PAGE
  1                    6
8
  2                    7
9
  3                   12
10
  4                   12
11
  5                   14
12
  6                   28
13
  7                   63
14
15
16
17
18
19
20
21
22
23
24
25

**Page 5**

1    I, Nancy S. Holland, a Court
2 Reporter of Birmingham, Alabama, and a
3 Notary Public for the State of Alabama at
4 Large, acting as Commissioner, certify that
5 on this date, as provided by the Federal
6 Rules of Civil Procedure and the foregoing
7 stipulation of counsel, there came before me
8 on the 12th day of June, 2007, at
9 Simon-Williamson Clinic, 3004 Allison
10 Bonnett Memorial Drive, Hueytown, Alabama,
11 commencing at approximately 3:40 p.m., SADRI
12 M. AVSAR, M.D., witness in the above cause,
13 for oral examination, whereupon the
14 following proceedings were had:
15    THE VIDEO TECHNICIAN: We now
16 commence the deposition In Re: Neurontin
17 Marketing, Sales Practices and Products
18 Liability Litigation, MDL Number 1629,
19 Master File 04-10981.
20    This document relates to Bernard
21 Strickland, Case 06-CV-1332, in the United
22 States District Court for the District of
23 Massachusetts.
24    The date is June the 12th the
25 year 2007.  The time is approximately

2 (Pages 2 to 5)

6

1 3:40 p.m. We're in Birmingham, Alabama at
2 the Simon-Williamson Clinic. Our witness is
3 Dr. Avsar. Is that correct?
4       THE WITNESS: That's correct.
5       THE VIDEO TECHNICIAN: He will be
6 sworn, the attorneys will introduce
7 themselves and the deposition will begin.
8       MR. RICHER: Marshall Richer,
9 Finkelstein & Partners for Bernard
10 Strickland.
11       MR. JOHNSON: Andy Johnson and
12 Brian Wahl of Bradley, Arant for Pfizer,
13 Inc.
14       SADRI M. AVSAR, M.D.,
15 being first duly sworn, was examined and
16 testified as follows:
17       EXAMINATION
18 BY MR. JOHNSON:
19 Q       Doctor, can you state your full
20 name for the record?
21 A       Sadri Mustafa Avsar, S-A-D-R-I,
22 M-U-S-T-A-F-A, A, V as in Victor, S-A-R.
23
24       (Defendant's Exhibit
          Number 1 was marked
25          for identification)

7

1 Q       Doctor, I've marked as Exhibit 1
2 the deposition notice for this case, and I
3 just want to confirm with you that you
4 understand that your testimony today is
5 being given on video for the trial of this
6 case for the benefit of the jury and you
7 understand that you're under oath and are
8 giving testimony in that case.
9 A       Yes, I do.
10 Q       And you understand this is a case
11 filed by one of your patients, Bernard
12 Strickland, against my client Pfizer, Inc.
13 A       I do.
14
15       (Defendant's Exhibit
          Number 2 was marked
16          for identification)
17
18 Q       Doctor, I've marked as Exhibit
19 2 --
20 A       Can I correct something on this,
21 though?
22 Q       Please.
23 A       The spelling is incorrect.
24 Q       Okay.
25 A       On the middle name, it's "F" as

8

1 opposed to a second "T."
2 Q       Okay. We'll note that for the
3 record. Middle name is M-S-U --
4 A       M-U-S.
5 Q       M-U-S-T-A-F-A.
6 A       Correct.
7 Q       I've marked as Exhibit 2 a
8 curriculum vitae that was provided by your
9 office earlier today.
10 A       Okay.
11 Q       And if you would, just confirm
12 for us that that's current and accurate to
13 the best of your knowledge.
14 A       It -- Hold on a second. Yeah.
15 It does appear to be accurate and current.
16 Q       And just so we don't spend a lot
17 of time on it today, this document sets
18 forth your education, your training and
19 experience in the medical field, correct?
20 A       That's correct.
21 Q       Doctor, you've given depositions
22 before, correct?
23 A       Right. There is something
24 missing on this CV. I'm going to update
25 this. Recertification of the internal

9

1 medicine, 2005.
2 Q       Okay.
3 A       Okay?
4 Q       Would you like to note that on
5 the --
6 A       Do you mind if I handwritten --
7 wrote it on there?
8 Q       That's fine.
9 A       I'll initial and date. How's
10 that?
11 Q       That's great.
12 A       Okay.
13 Q       Doctor, this is going to be like
14 other depositions. I'm going to ask you a
15 series of questions. Try to wait on each
16 other to finish so we don't talk over each
17 other.
18 A       Okay.
19 Q       If there's any question that's
20 vague or you don't understand, please ask me
21 to rephrase it and I'll be glad to.
22 Otherwise, I assume you understand it.
23 A       Okay.
24 Q       You understand that your -- one
25 of your patients, Bernard Strickland, has

3 (Pages 6 to 9)

# EXHIBIT G

Kenneth Fromson /FLGP    To  "McGroder, Lori (SHB)" <LMCGRODER@shb.com>
08/09/2007 03:26 PM     cc
    bcc
    Subject  Neurontin: Expert and Track 1 case issues. Plaintiff
    Response 🗋

Lori,

Please accept this communication as a "formal" response to your email in order to further expedite this
process so that defense counsel can move forward with the selection of another "defense" Track 1 case.

**The Strickland Case**
I propose the parties should agree via stipulation to dismiss with prejudice the Strickland case without
costs to either party. Attached is a proposed formal stipulation of dismissal. Please advise of your
position regarding the proposed stipulation of dismissal in the Strickland case as soon as possible.
Without an agreed upon stipulation, our intention is to file an application as early as 8/15/07 for an Order
discontinuing the case. The sooner the matter is resolved, the sooner Defendants can select another
Defendant Track 1 case.

**Application to be Relieved As Counsel**
As discussed during our telephone call, please accept this communication as formal notice of our intention
to seek relief from the Court to be relieved as counsel on the following Track 1 cases: Michael Mendoza;
Beth Moore (deceased).

**The Existing MDL Schedule**
Without debating the merits of your email in terms of whether our "actions threaten to upset this entire
[discovery] process", I am available to further confer on a resolution of your concerns. However, your
communication does raise suspicion as to the parties' agreement to depose one of our experts on October
18th and October 19th. Specifically, you indicate the following in your email: "The Court put in place an
expert discovery schedule that contemplates a **single round of expert discovery** for both selected cases,
and plaintiffs' proposed actions threaten to upset this entire process." (emphasis added). As it is our
intention that this expert be produced to provide an opinion on general causation for all cases and specific
causation in only the Smith case, we believe this deposition should go forward on 10/18 and 10/19 as
agreed upon by the parties. Even if the defendants had a Defendant Track 1 case (i.e., Strickland) for
which Plaintiffs were required to provide an expert report, it is not our intention to have this expert provide
an opinion in the specific Defendant Track 1 case (i.e., Strickland). Consequently, this expert's
appearance at a deposition is consistent with your "single round of expert discovery."

Importantly, please confirm that you will honor the October 18 and 19th deposition date for this witness.
Travel arrangements have already been made for this witness. If I do not hear from you (either by
voicemail or email ) by end of business day tomorrow, then we will again have to   (re)file our emergency
motion for this witness's deposition to be taken as previously agreed   . Of course, I will make sure to
check my voicemail so as to avoid any miscommunication that happened a few weeks ago .

Next, Product Liability Plaintiffs oppose any extension of the current MDL expert discovery schedule (e.g.,
Discovery Order 13) to the extent it delays expert discovery disclosure on general causation for all cases
and specific causation in the Smith case. Please accept this as a formal proposal that the current expert
discovery schedule remain intact: I propose that the parties move forward with general expert discovery
and specific expert discovery in the Smith case and in a manner consistent with the dates set forth in MDL
Discovery Order 13.

I further propose that Defendants select another case Track 1 case as a Defendant Track 1 case and
move forward with it in a manner consistent with the current discovery schedule . Alternatively, I propose
that Defendants select another Defendant Track 1 case and propose a discovery schedule for that specific
Defendant Track 1 case that Defendants believe is appropriate.

Finally, we spent time this morning discussing potential dates for depositions for our other anticipated experts in the litigation. To the extent defendants are unwilling to agree to commit to the various proposed dates for expert depositions, as previously set forth in correspondence to your office, please let me know your position. Much effort has been made in having these witnesses clear their schedules and we have acted in good faith to provide you with the topic of their testimony, and even their identity in certain circumstances.

I look forward to speaking with you further regarding the above issues and I truly hope we can continue to have the same candid discussions: lets use this candor to reach a resolution.

Regards,



Ken Discontinuance-stip.doc
"McGroder, Lori (SHB)" <LMCGRODER@shb.com>



|  |  |  |
|---|---|---|
| "McGroder, Lori (SHB)"<br><LMCGRODER@shb.com><br>08/09/2007 01:47 PM | To | KennethFromson@lawampm.com |
|  | cc |  |
|  | Subject | Expert and Track 1 case issues |

Ken,

Thanks for taking the time to discuss expert and other Track 1 case issues this morning. First, as I said in our conversation, plaintiffs' plan to attempt to dismiss Strickland and be relieved as counsel in Fennelon and Mendoza is problematic from a defense perspective based on the amount of work we have put into these cases under the existing schedule. We have treated Strickland for many months as our likely Track 1 selection, and have put a lot of effort (read: time and money) into working up this case, including expert development.

Second, while I appreciate your candor about plaintiffs' strategy, your approach is nevertheless disruptive of the Court's plan for case selection as well as the MDL scheduling order. It will be impractical and unfair to meet the existing MDL schedule under the current situation when we don't know whether Strickland will be dismissed, the impact of your suggested motions to be relieved as counsel, and how and when new Track One cases will be selected (as you will have deprived defendants of their right to choose two of the ten cases). Nor do we know which of those cases will be the defense selection for full case-specific workup. The Court put in place an expert discovery schedule that contemplates a single round of expert discovery for both selected cases, and plaintiffs' proposed actions threaten to upset this entire process.

Finally, we are not treating your statements regarding these Track 1 cases as formal notice for purposes of making any response. If it is your intention to seek dismissal by

stipulation in Strickland, we are waiting for your proposal.

Ken, thanks again for your candor in our discussion.

Best,
Lori

Mail Gate made the following annotations on Thu Aug 09 2007 12:47:40 CONFIDENTIALITY
NOTICE: This e-mail message including attachments, if any, is intended for the person or entity
to which it is addressed and may contain confidential and/or privileged material. Any
unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended
recipient, please contact the sender by reply e-mail and destroy all copies of the original message.
Thank you.

This Email has been scanned for all viruses by PAETEC Email Scanning Services, utilizing
MessageLabs proprietary SkyScan infrastructure. For more information on a proactive anti-virus
service working around the clock, around the globe, visit http://www.paetec.com.

Kenneth Fromson /FLGP          To  "McGroder, Lori (SHB)" <LMCGRODER@shb.com>
08/13/2007 02:00 PM            cc

                               bcc  Andrew Finkelstein/FLGP@FLGP; Gail
                                    Schlanger/FLGP@FLGP; Steven Lim/FLGP@FLGP
                               Subject  Re: Plaintiffs counter-proposal 📄

Lori,

It appears we have completed our obligations to confer on the issues. Given the parties are unable to
resolve our differences, we will take steps via motion practice with Magistrate Sorokin in time for the
September conference/oral argument date. I anticipate we will include at the very least applications to (a)
compel the deposition of our expert (general causation for all cases and specific causation in Smith) on
October 18-19 as we did in our earlier emergency motion; (b) move to dismiss Strickland without
prejudice and without costs; and (c) a motion to keep in place the current discovery schedule of expert
disclosure and dispositive motions.

Given the circumstances involving Stickland, I do think it is wise for the parties to address what if any
'defense' Track 1 case you will now pursue. Notwithstanding our differences on the discovery schedule, I
would think defendants would want to move forward on a case. In this regard, I am available for
discussion.

Ken
"McGroder, Lori (SHB)" <LMCGRODER@shb.com>


                "McGroder, Lori (SHB)"
                <LMCGRODER@shb.com>           To  KennethFromson@lawampm.com
                08/13/2007 01:10 PM           cc

                                              Subject  Plaintiffs counter-proposal

Ken,

We cannot agree to plaintiffs' proposed stipulated dismissal of Strickland. As I said last
week, your proposed dismissal completely disrupts the MDL Track One process. Nor
do we agree to your counter-proposal below regarding the Oct 18-19 expert deposition.
We anticipate you'll be filing a motion to dismiss Strickland. If you'd like to talk before
then, feel free to give me a call. Thanks.

Lori

Lori McGroder
Shook, Hardy & Bacon
816-559-2290
lmcgroder@shb.com

From: KennethFromson@lawampm.com [mailto:KennethFromson@lawampm.com]
Sent: Friday, August 10, 2007 3:37 PM
To: McGroder, Lori (SHB)

**Subject:** Re: FW: Draft email to Fromson
**Importance:** High

Lori -

Thanks for the phone call and the email. I understand from our brief phone call that it is your intention to have the overall discovery schedule extended so as to have all expert disclosure, depositions, motions, and both track one cases alligned. I am assuming that if the Court grants such a request, the litigation overall could be delayed 3-5 months off its current schedule. Obviously, we will oppose any extension of the discovery schedule as I indicated in my previous email. We also did not get an opportunity to discuss this issue in great detail, so lets speak again on monday if you are available.

As to the agreement for October 18 and 19, please consider the following counter-proposal. (a) If the discovery schedule in the MDL does NOT get changed, then we agree that the expert would testify as to general causation for all cases, and only as to Smith for this first round of Track 1 cases; this is consistent with my prior email proposal. (b) If the discovery schedule in the MDL does get changed and is extended (as I expect you will pursue an extension of several months), then we have the right to call this expert back to provide an opinion on specific causation for that 'defense' track 1 case which is the subject of our discussions. We do not have the intention to do so at this time, but would want to reserve our right to do so. While I certainly do not think you need my advice on your own strategy, the defendants still get the benefit of our expert's testimony in October 2007 on both the issues of general causation and Smith, and if the discovery deadlines are extended for months as you will likely pursue, you will have that much more time to oppose this expert's opinions with your own expert on general causation and the Smith case; indeed, possibly several months.

Let me know your thoughts. I will reach out to you on monday. You can also reach me for the remainder of the afternoon on my cell 845-541-8369/

"McGroder, Lori (SHB)" <LMCGRODER@shb.com>

08/10/2007 04:08 PM

To KennethFromson@lawampm.com
cc
Subject FW: Draft email to Fromson

Ken,

Thanks for your vm. We agree to the Oct 18-19 date for the deposition of your UK expert in NYC provided (1) any specific causation opinions he offers will be with respect to the Smith case only and he will not later be designated as a case-specific expert in Strickland or whatever Track One case is designated for full case-specific workup, (2) the Smith case is still one of the Track One cases designated for full workup at that

time, and (as already agreed) (3) you produce all reliance materials not publicly
available and identify all reliance materials publicly available at the time you provide his
report.

Have a good weekend,
Lori

Lori McGroder
Shook, Hardy & Bacon
816-559-2290
lmcgroder@shb.com

Mail Gate made the following annotations on Fri Aug 10 2007 15:08:49 CONFIDENTIALITY
NOTICE: This e-mail message including attachments, if any, is intended for the person or entity
to which it is addressed and may contain confidential and/or privileged material. Any
unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended
recipient, please contact the sender by reply e-mail and destroy all copies of the original message.
Thank you.

This Email has been scanned for all viruses by PAETEC Email Scanning Services, utilizing
MessageLabs proprietary SkyScan infrastructure. For more information on a proactive anti-virus
service working around the clock, around the globe, visit http://www.paetec.com.

Mail Gate made the following annotations on Mon Aug 13 2007 12:11:00 CONFIDENTIALITY
NOTICE: This e-mail message including attachments, if any, is intended for the person or entity
to which it is addressed and may contain confidential and/or privileged material. Any
unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended
recipient, please contact the sender by reply e-mail and destroy all copies of the original message.
Thank you.

This Email has been scanned for all viruses by PAETEC Email Scanning Services, utilizing
MessageLabs proprietary SkyScan infrastructure. For more information on a proactive anti-virus
service working around the clock, around the globe, visit http://www.paetec.com.