UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
:   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,   :
        SALES PRACTICES AND   :   Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION   :
:   Judge Patti B. Saris
---------------------------------------------------------------x
:   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:   :
:
    PRODUCTS LIABILITY ACTIONS   :
:
---------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF PRODUCTS LIABILITY PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND EXTEND THE DEADLINES FOR SERVING NOTICES TO ADMIT

Products Liability Plaintiffs, ("PL Plaintiffs"), submit this memorandum in support of the motion pursuant to Rule 37 of the Federal Rules of Civil Procedure, for an order: (1) granting PL Plaintiffs leave to serve upon Pfizer Defendants a Notice to Admit that is identical to the Requests for Admissions previously served in separate state court litigation inasmuch as the facts at issue are identical (e.g., *Crone v. Pfizer, Inc.* (CV 400432; Lake County, California ); (2) requiring Pfizer Defendants to produce documents utilized by witnesses (e.g., Adrian Vega, Andrea Garrity, Lloyd Knapp, and Manfred Hauben) in preparation for their depositions and/or to refresh their recollections in anticipation of deposition testimony as to facts and circumstances regarding Neurontin; (3) requiring Pfizer Defendants to designate and produce an additional witness, consistent with Fed. R. Civ. P. 30(b)(6), with knowledge and the ability to testify as to pharmacovigilance practices during the Warner Lambert (pre-Pfizer) time period at issue in this litigation; (4) requiring Pfizer Defendants to produce those portions of Pfizer witness Lester Reich's custodial file that pertain to Neurontin; (5) requiring Pfizer Defendants to produce Lester Reich (Medical Director, Medical Safety Evaluation Department for Pfizer) for a deposition 20

days after production of said custodial file; (6) requiring Pfizer Defendants to produce by a date certain the Standard Operating Procedures (SOPs) within the possession, custody or control of Defendants that pertain to the preparation of Standard Response Documents (e.g., documents used by the Medical Information Department to respond to inquiries about Neurontin); and (7) granting PL Plaintiffs leave to serve Notices to Admit, or otherwise granting a brief discovery extension for the limited purpose of determining whether documents are in fact Defendants' "business records" in a manner consistent with this Court's prior Order of August 9, 2005.

## FACTUAL BACKGROUND

Pfizer Defendants were ordered to complete document production, answer interrogatories, and respond to other written discovery by April 30, 2007. (ECF Doc # 576.) Pfizer Defendants have not sought an extension of this deadline from the Court, but, in violation of the Court's order, have continued to produce documents subsequent to the deadline, the latest of which were Research Reports pertaining to clinical trials sponsored by Defendants on Use of Neurontin for Bipolar Indication (e.g., Bipolar Study 945-291) and Standard Monthly Reports as propounded by Defendants' Medical Information Department, that were produced in August 2007. Additionally, as more fully set forth below, PL Plaintiffs anticipate another production of documents on or about September 17, 2007 (e.g., Standard Operating Procedures related to Standard Response Documents from Defendants' Medical Information Department). (*See* e-mail, annexed to Declaration of Kenneth B. Fromson as Exhibit A.)

Unfortunately, the discovery orders in this MDL did not provide for a time period after the conclusion of the depositions of Pfizer Defendants' witnesses and the production of documents from Defendants, for PL Plaintiffs to serve follow-up discovery requests and Notices to Admit. The testimony from depositions that have already been taken of Pfizer witnesses

demonstrates there is additional discoverable material that Pfizer Defendants have not produced but that PL Plaintiffs are entitled to be provided with for the purpose of prosecuting their claims.

On June 15, 2007, Pl Plaintiffs wrote to counsel for Pfizer Defendants concerning the deposition testimony of witness Adrian Vega, demanding: (1) the production of certain documents that the witness reviewed prior to his deposition that refreshed his recollection. (Fromson Decl., Ex. B.) On June 21, 2007, PL Plaintiffs wrote to counsel for Pfizer Defendants concerning the deposition testimony of witness Andrea Garrity, demanding the production of: (1) certain documents that the witness reviewed prior to her deposition that refreshed her recollection. (Fromson Decl., Ex. C.) On June 29, 2007, PL Plaintiffs wrote to counsel for Pfizer Defendants concerning the deposition testimony of witness Lloyd Knapp demanding: (1) the production of certain documents that this witness reviewed prior to, and in preparation for his deposition that refreshed his recollection. (Fromson Decl., Ex. D.) On June 28, 2007, PL Plaintiff wrote to counsel for Pfizer Defendants alleging a discrepancy in the Merlin Database and requesting that the parties confer to resolve the discrepancy. (Fromson Decl., Ex E.) Pfizer Defendants responded to the aforementioned requests by letter dated July 24, 2007. (Fromson Decl., Ex. F.) In addition to the discovery demanded in the aforementioned letters, PL Plaintiffs advised Pfizer Defendants by letter dated August 29, 2007, of discovery that would be sought through motion practice. (Fromson Decl., Ex. G.) The parties conferred by telephone on September 4 and September 5, 2007.

On August 1, 2005, the issue of authentication of Pfizer documents as business records was discussed, and the Court made informal suggestions on when to resolve this issue (beginning at page 68). *See also,* this Court's August 9, 2005 Order. (Fromson Decl., Ex. H.) PL Plaintiffs seek from this Court a date certain that is 30 days subsequent to Pfizer Defendants' completion

of discovery disclosure to PL Plaintiffs so as to allow PL Plaintiffs to provide Pfizer Defendants with the documents encompassed by the Order of August 9, 2005.

## ARGUMENT

Pursuant to Fed. R. Civ. P. 37, where a party "fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Moore's Federal Rules Pamphlet (2006). A district judge exercises broad discretion when supervising the discovery process. *Arzuaga-Perello v. Shell Co. (Puerto Rico),* 1999 U.S. App. LEXIS 2162 (1st Cir. 1999); *Cruden v. Bank of New York,* 957 F.2d 961, 972 (2d Cir. 1992). The First Circuit will intervene concerning the trial court's discretion "'only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party'" *Arzuaga-Perello* at *2, (citing to *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 91 (1st Cir. 1996)). A trial court may, upon motion, order the sequence and/or grant priority of the discovery process pursuant to Rule 26(d). *Meisch v. Fifth Transoceanic Shipping Co. Ltd.*, 1994 U. S. Dist. LEXIS 14995 at *1 (S.D.N.Y. 1994) (granting defendants' motion requiring, *inter alia,* that plaintiff be deposed by a date certain).

In this MDL, the deposition testimony of Pfizer witnesses demonstrate that there is discovery that is relevant to the issues in this litigation but has not been produced by Pfizer Defendants. Unfortunately, in light of the previously ordered April 30, 2007 discovery deadline, the discovery orders did not set forth a protocol for obtaining additional disclosure from Pfizer Defendants upon completion of the deposition and document production phase. PL Plaintiffs are entitled to the discovery that remains outstanding from Pfizer Defendants to successfully prosecute their claims. Moreover, PL Plaintiffs should be allowed this additional disclosure since Pfizer Defendants have continued to violate this Court's order to complete document production by April 30, 2007, as evidenced by their recent production of Research Reports

4

pertaining to clinical trials sponsored by Defendants on Use of Neurontin for Bipolar Indication (e.g., Bipolar Study 945-291) and Standard Monthly Reports as propounded by Defendants' Medical Communications Department, that were produced in August 2007.

A.  **The Documents Used To Refresh the Recollection of Pfizer Defendants Witnesses Prior to Their Deposition Testimony Should Be Produced**

Pursuant to Rule 612 of the Federal Rules of Evidence:

> [I]f a witness uses a writing to refresh memory for the purpose of testifying, either — (1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions that relate to the testimony of the witness.

Rule 612 "applies to the deposition testimony by operation of Fed. R. Civ. P. 30(c)." *Heron Interact, Inc. v. Guidelines, Inc.*, 2007 U.S. Dist. LEXIS 50191 (D. Mass. 2007). Documents that are utilized to refresh a deponent's recollection prior to, and in preparation for a deposition and that are referred to during the deposition are discoverable. *Id.*, at *4, *5. With regard to documents utilized to refresh the recollection of a deponent prior to, and in preparation for a deposition but not referred to during the course of the deposition, a court shall balance the need of the party demanding disclosure of the document "so as to have a complete record of its examination as well as to test [the witness's] credibility" with the other party's interest in protecting against disclosure of any attorney work product or attorney client privileged information. *Id.* at *5.

In *Heron*, where the documents used to refresh the deponent's recollection prior to the deposition were not created by counsel, the court found that "justice was best served" by ordering that the documents be produced. *Id.,* at *9. In *In re Atlantic Financial Mgmt. Sec. Litig.,* 121 F,.R.D. 141, 143 (D. Mass 1988), where counsel argued that their choice of material

5

shown to a deponent to refresh his recollection prior to the deposition was work product that should be protected, the court ordered the material produced finding that:

> The minimal exposure of the attorney's mental process that would occur in this case if defendant [the deponent] revealed the deposition transcripts and documents that he used to refresh his recollection does not justify withholding information that is essential to plaintiffs' effective examination of the witness.

It is well settled under New York law that any privileges concerning writings and documents shown to a witness to refresh his recollection prior to the deposition are waived, and that the "adversary has a legitimate interest in inspecting" same. *Merrill Lynch Realty Comm'l Servs., Inc., v. Rudin Mgmt. Co., Inc.*, 94 A.D.2d 617 (1st Dep't 1983) (citing to *Doxtator v. Swarhout,* 38 A.D.2d 782 (4th Dep't); *see also*, *Berkey Photo, Inc., v. Eastman Kodak Co.,* 74 F.R.D. 613 (S.D. N.Y. 1977); *Crawford v. Lahiri,* 250 A.D.2d 722 (2d Dep't 1998).[1]

In the case at bar, PL Plaintiffs submit that they are entitled to receive the documents utilized to refresh the recollection of Pfizer witnesses (e.g., Adrian Vega, Andrea Garrity, Lloyd Knapp and Manfred Hauben), under both federal and New York State law, where the discovery obtained in this MDL will serve as evidence in the New York State Neurontin Coordinated Litigation. Adrian Vega, Sr. was deposed on June 13-14, 2007, concerning his position in Pfizer's Medical Communication Department, where his duties, in part, involved providing responses to inquiries about Neurontin, whether from within or outside the company. Mr. Vega's testimony demonstrates that prior to, and in preparation for his deposition, Mr. Vega reviewed several documents that pertain to inquiries involving suicide for purposes of refreshing his recollection. (*See* Fromson Decl., Ex. I, pp. 374, 375.) Vega also testified that the documents refreshed his recollection concerning format. (Fromson Decl., Ex. I, pp. 377-378.)

---

[1] Judge Friedman of the Supreme Court of the State of New York, has indicated her intention to align the discovery schedule in the New York State Coordination with the MDL schedule. *See* Case Management Order No. 2, *In re Neurontin Products Liability Litigation,* Index No. 765,000/05 ECF Doc. # 667-1. New York law is cited due to the fact that the discovery obtained in the MDL will be utilized in the New York Coordinated Litigation.

6

Next, Pfizer witness Andrea Garrity was deposed on June 19-20, 2007; Ms. Garrity is a Sr. Director of U.S. Pharmaceuticals, Operations in Pfizer's Regulatory Affairs Department. Ms. Garrity testified to having her recollection refreshed by documents shown to her by counsel prior to, and in preparation for her deposition. (*See* Fromson Decl., Ex. J, p.75.)

Moreover, Pfizer witness Lloyd Knapp was deposed on June 26-28, 2007, not only as a fact witness, but also as the Rule 30(b)(6) designee of Pfizer Defendants as a "labeling witness" (*See* Fromson Decl., Ex. K, p.8.) Mr. Knapp's testimony on June 26, 2007, demonstrates that prior to, and in preparation for, his deposition, Mr. Knapp reviewed documents for purposes of refreshing his recollection. (*See* Fromson Decl., Ex. K, pp. 160, 161.) Mr. Knapp's testimony on June 27, 2007, further demonstrated that his recollection was refreshed by documents that were provided to him by counsel in preparation for his deposition. (*See* Fromson Decl., Ex. K, pp. 423-424.)

Finally, on July 12 and 13, 2007, Dr. Manfred Hauben was deposed as a Rule 30(b)(6) designee of Pfizer Defendants, as a witness with knowledge and the ability to testify as to pharmacovigilance practices for Neurontin that spanned from the Warner Lambert era through Pfizer's acquisition of the Neurontin product line and continuing. Dr. Hauben testified that prior to, and in preparation for his deposition testimony, he reviewed documents provided by counsel that refreshed his recollection. Pertinent excepts of his testimony are discussed in greater detail below. (*See* Fromson Decl., Ex. L, pp. 78-79.) As it pertains to each of the above mentioned witnesses (e.g, Vega, Garrity, Knapp and Hauben), Pfizer Defendants have refused to disclose the documents at issue.

Pfizer Defendants' counsel has not asserted that the documents/information requested by PL Plaintiffs were created by counsel. Moreover, pursuant to *In re Atlantic Financial Mgmt. Sec. Litig.*, the fact that counsel selected the documents for the deponents to review is not

7

sufficient to justify withholding the documents due to the "minimal exposure of the attorney's mental process that would occur." PL Plaintiffs, as well as those plaintiffs who filed their causes of action in the New York Neurontin Coordinated Litigation, under New York law have a right to the disclosure of the documents/information in question. Under New York law, Pfizer Defendants waive their right to any privileges concerning documents utilized to refresh the recollection of deponents prior to the deposition. It is in the interest of justice – as well as judicial economy – that Pfizer Defendants be ordered to produce such information; otherwise, PL Plaintiffs will be deprived of their rights, and Plaintiffs' counsel would also be required to raise the issue in an identical, duplicative application in the New York Coordinated Litigation.

**B.    Pfizer Defendants Should Be Ordered to Produce Another
       Witness With Knowledge to Testify to Pharmacovigilance
       Practices for Neurontin During the Warner-Lambert Period**

"Rule 30(b)(6) explicitly requires [a company] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires persons to review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition." *Calzaturficio S.C.A.R.P.A. s.p.a .v. Fabiano Shoe Co., Inc.,* 201 F.R.D 33 (D. Mass. 2001) (citing to *United States v. Taylor,* 166 F.R.D. 356, 362 (M.D.N.C. 1996), *aff'd* 166 F.R.D. 367 (M.D.N.C. 1996)) (witnesses were required to review all documents that had any bearing on the topic in the 30(b)(6) notice that were in the control of the corporation).

> This interpretation is necessary in order to make the deposition a meaningful one and to prevent the "sandbagging" of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial. This would totally defeat the purpose of the discovery process....Preparing for a Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business....[A company] does not fulfill its obligations at the Rule 30(b)(6) deposition by stating that it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available....
> *Id.*

A party responding to a 30(b)(6) notice has the obligation to designate an individual who will be prepared to have the requisite knowledge of the corporation to answer the inquiries as identified in the notice. *Calzaturficio S.C.A.R.P.A. s.p.a.*, 201 F.R.D. at 36. The designee of a corporation has a duty to educate him/herself concerning the issues and failure to do so is the party's failure. *Id.* at 39.(citing to *Starlight Int'l v. Herlihy,* 186 F.R.D. 629, 639 (D. Kan., 1999)). It is improper for counsel to instruct a designee of a corporation not to answer the questions interposed. *Calzaturficio S.C.A.R.P.A. s.p.a.*, 201 F.R.D. at 40; s*ee also Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 366 (N.D. Cal. 2000); *Paparelli v. Prudential Ins. Co. of America,* 108 F.R.D. 727, 729 (D. Mass. 1985). There should be a minimum of interruption from opposing counsel during the questioning and instructions not to answer because questions exceed the scope of the notice or were previously asked or answered are improper conduct. *Davo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D. Neb. 1995); *see also Morales v. Zondo, Inc.,* 204 F.R.D. 50, 53 (S.D.N.Y. 2001). Federal courts have held that a failure to abide by the obligations to make a vigorous inquiry and prepare as mandated by Rule 30(b)(6) is "tantamount to a failure to appear at a deposition." *Id.* (citing to *Starlight Int'l v. Herlihy,* 186 F.R.D. 629, 639) (D. Kan. 1999) (citing *Taylor*, 166 F.R.D. at 363).

      On July 12 and 13, 2007, Dr. Manfred Hauben was deposed as Pfizer Defendants' Rule 30(b)(6) designee as a witness with knowledge and the ability to testify to pharmacovigilance practices for Neurontin, including during the Warner Lambert period (i.e, prior to Pfizer's acquisition of the Neurontin product line). Dr. Hauben's deposition testimony demonstrates the following: (1) he was ill-prepared to provide deposition testimony about pharmacovigilance practices concerning Neurontin for any of the three defendant entities; (2) he admitted that he did not undertake an independent investigation and that any of the documents that he reviewed to prepare for his deposition to learn about the pharacovigilance practices of Warner-

9

Lambert/Parke-Davis came from his attorneys; (3) he performed limited independent preparation for the deposition and had not even investigated any of the regulatory submissions from the Warner-Lambert/Parke Davis time frame; and (4) he was not allowed by his counsel to testify freely and without interruption at the deposition due to counsel's improper speaking objections and "asked and answered" interjections. Witness Hauben was unable to distinguish between pharmacovigilance practices between the different entities since he admitted during his testimony that he did not know when Pfizer took over the Neurontin product line from Parke-Davis/Warner Lambert:

> Q. And as part of your role at Pfizer Risk Management, when, if at all, did you become aware that Pfizer took on the product line of Neurontin from Parke-Davis/Warner-Lambert?
> A. Well, I know that -- I -- I believe it was as part of -- I don't know if it was a merger or acquisition, I'm actually very bad with the business activities. I don't really understand them very well.
> Q. Did you say what year approximately? I don't know if –
> MS. McGRODER: No, I don't think he didn't complete the answer.
> Q. Approximately when did you believe that Neuro -- Neurontin was taken on by Pfizer?
> A. What do you mean by "taken on"?
> Q. Well, when did Pfizer buy Parke-Davis/Warner-Lambert, and then basically sell Neurontin as a Pfizer drug, and not a Warner-Lambert drug?
> MS. McGRODER: I object to the form of that. Go ahead.
> A. Quite honestly, I don't remember.

[*See* Fromson Decl., Ex. L, p. 58.]

Witness Hauben admitted that he did not independently review any documents in preparation for his testimony:

> Q. And with respect to this particular drug, Neurontin, and in preparation for this particular deposition, and to assist you in discussing safety issues regarding Neurontin, what steps, if any, did you take to go back and look for any documents or slides, or any information that was reflected in any knowledge transfer meeting?....
> A. To the extent I understand the question, that is, did I independently go back and look for documents? Is that the question?
> Q. In part, absolutely.
> A. No.

[*See* Fromson Decl., Ex. L, pp. 74, 75.]

Hauben confirmed that documents provided to him prior to his deposition and in preparation for the deposition refreshed his recollection:

> Q. And I asked you this question: "And were there any documents that you did review, without telling me what they were, were there any documents that you did review that actually refreshed your recollection of the things you didn't recall before looking at them?" That's the question posed.
>
> * * *
>
> A. Okay. The answer is there were documents that I saw that I recall refreshed my memory somewhat.
> Q. And what were the topics included in those documents that you saw, and that you recall refreshed your memory somewhat?
> A. I -- I -- I just don't recall that ones I saw and I thought refreshed my memory. I just recall that there were some.
> Q. And for the record, I would call for the production of those documents during the pendency of today's deposition and we can discuss it off-line.
> MS. McGRODER: And I would object to that request.
>
> [*See* Fromson Decl., Ex. L, pp. 78-79.]

Hauben admitted that he did not perform an independent investigation and that all of the documents he viewed in preparation for this deposition to learn about the pharmacovigilance practices of Warner-Lambert/Parke-Davis were provided by his attorneys:

> Q. Okay. So what did you do in preparation for this deposition to learn about Warner-Lambert/Parke-Davis pharmacovigilance practices --
> A. Well, that's --
> Q. -- as it pertained to Neurontin?
> A. Well, that's a different --
> MS. McGRODER: Objection on the basis of privilege.
> Q. That's the question I'm asking now.
> MS. McGRODER: Objection on the basis of privilege. To the extent that you can answer the question without revealing attorney/client communications, you may answer.
> A. Okay. I'm -- I'm going to ask you to repeat it because it's now a different question than the last one, so I'm just -- I just -- could you please repeat it?
> Q. What did you do in preparation for this deposition to learn about Warner-Lambert/Parke-Davis pharmaco -- pharmacovigilance practices as it pertained to Neurontin?
> MS. McGRODER: Objection. To the extent that you can answer that without revealing attorney/client privilege, then you may answer it.
> A. I -- I -- then I don't think I can answer that.
> Q. So every -- why can't you -- why can't you answer it? Is it because everything you received, you received from counsel, and therefore you believe in your counsel's objection?
> A. Yes.

> Q. Okay. Did you go and speak to any individuals, other than your lawyers, about Warner-Lambert/Parke-Davis' pharmacovigilance practices regarding Neurontin
> MS. McGRODER: You mean independently?
> MR. FROMSON: Yeah.
> A. No, I didn't.
>
> [*See* Fromson Decl., Ex. L, pp. 83-85.]
>
> * * *
>
> Q. Sure. In preparation for this deposition, have you discussed this case with anyone other than your counsel as it pertains to Warner-Lambert/Parke-Davis's pharmacovigilance practices?
> A. No.
>
> [*See* Fromson Decl., Ex. L, p. 87.]

Although Hauben testified to meeting with counsel five or six times for five or six hours on these occasions in preparation for his deposition testimony (Fromson Decl., Ex. L, p.88), he admitted to limited independent preparation for his deposition testimony (pp. 88-90) and that he had not even investigated any of the regulatory submissions from the Warner-Lambert/Parke Davis time frame:

> Q. Okay. Did you, as part of your preparation for the deposition, all right, did you go back and seek out any of the regulatory submissions from the Warner-Lambert/Parke-Davis era?
> MS. McGRODER: Objection.
> A. Independently.
> Q. Independently.
> A. No.
>
> [*See* Fromson Decl.,Ex. L, pp. 90-91.]

Moreover, Hauben admitted that had he not meet with counsel, he could not have testified concerning the pharmacovigilance practices of Warner-Lambert/Parke-Davis:

> Q. Okay. If you had not met with counsel and reviewed with counsel whatever you reviewed, do you believe you would have been able to provide testimony regarding Warner-Lambert/Parke-Davis pharmacovigilance practices?
> MS. McGRODER: Objection on relevance.
> Q. Okay. You have the objection. You can answer.
> A. Well, as I said, it's an -- it's an area that I've been removed from for quite some time, so I -- well, specifically pharmacovigilance as relates to that product and the activities that happened years ago, I have not committed that to memory.
> Q. Notwithstanding your -- your answer, because I don't know if it was responsive to my question. My -- my question was, would you have been able -- do you feel that you would be able to testify as to the Warner-Lambert/Parke-Davis pharmacovigilance practices on a factual basis? In other -- in other words, have an

12

        understanding of what Warner-Lambert/Parke-Davis did with whatever information it had, without having spoken to counsel and having whatever conversations you had with counsel, and reviewing whatever you reviewed with counsel.
        MS. McGRODER:  Well, I object to that question.
        MR. FROMSON:  Okay, you can have -- you can have your objection.
        MS. McGRODER:  No.  No, you asked us to produce a 30(b)(6) witness on the company's pharmacovigilance.  That's what we're doing.  Why don't you ask him questions about the company's pharmacovigilance, Ken.  Whether he feels like, without talking to counsel, he could answer those questions, how does he know when he doesn't know what the questions are?
        MR. FROMSON:  Your objection stands.
        MS. McGRODER:  It's -- you're just going too far.  Why don't you just ask him questions --
        MR. FROMSON:  Let him answer the question.
        MS. McGRODER:  -- about 30 -- about the --
        MR. FROMSON:  I will.
        MS. McGRODER:  -- 30(b)(6) notice.
        MR. FROMSON:  I will, I have.
Q.    You can answer the question.
A.    Okay.  I want to re -- I want to make --to make sure that I understand your question.  I just want to understand -- rephrase it. If I understand your question you're asking me, essentially, having been removed from – not removed, but not involved with product-specific work for a number of years now, would I have been, through just pure recollection, been able to have commented on the details of what happened with Warner-Lambert, I would have to say the answer is no.
[*See* Fromson Decl., Ex. L, pp. 91-93.]

It is clear from the above excerpts that witness Hauben failed to make the required vigorous investigation into the issue of the pharmacovigilance practices of Warner-Lambert in relation to Neurontin.  He admits that he did not perform an independent investigation, he did not independently view any files, and he did not speak or communicate with any other company employees regarding the pharmacovigilance practices of Warner-Lambert in relation to Neurontin.  Witness Hauben did not have a recollection of, and had he not meet with counsel, he could not have testified concerning the pharmacovigilance practices of Warner-Lambert/Parke-Davis.  Indeed, any documents upon which he relied to refresh his recollection, investigate pharmacovigilance practices, or that formed any basis for his testimony purportedly were provided solely by defense counsel.  This Court should grant PL Plaintiffs' application to compel

13

the deposition of an appropriate Rule 30(b)(6) witness who can testify as to pharmacovigilance practices during the Warner-Lambert era.

Noteworthy, as it pertains to PL Plaintiffs' application to compel disclosure of these documents, such documents are necessary to the prosecution of Plaintiffs claims, as well as to test the credibility of witness Hauben's testimony.  For example, since witness Hauben was provided documents solely from counsel, there is no way to know without a review of such documents, whether they were selected on the basis that they reflected generally accepted pharmacovigilance practices of Warner-Lambert as opposed to documents that may have existed that reflected a lack of proper or sufficient pharmacovigilance practices.

Furthermore, during his July 12, 2007 deposition, witness Hauben was improperly advised by counsel throughout the deposition not to answer the questions interposed on grounds including that the questions were outside of the scope of the notice for deposition. Notwithstanding PL Plaintiffs' position that such questions were in fact appropriately within the scope of the notice, such an objection is improper.  Indeed, this Court should recognize that although Rule 30(b)(6) directs a notice to describe with reasonable particularity the matters on which the deposition is to focus, the notice should not be used to limit what is asked of a designated witness at his deposition.  The matters set forth in the deposition notice constitute the minimum, not the maximum, about which a deponent must be prepared to speak.

At least 34 times on July 12, 2007, Pfizer Defendants' counsel interrupted the deposition with inappropriate "asked and answered" objections, and on at least 15 separate occasions, the witness was instructed by counsel for Pfizer Defendants not to answer the question.  Throughout the July 12, 2007 deposition, counsel for Pfizer Defendants made speaking objections that interrupted and seemingly affected the deponent's answer to the inquiry.  PL Plaintiffs request that this Court instruct counsel for Pfizer Defendants that their conduct was impermissible and to

refrain from further such conduct to avoid sanctions. Referenced below are only some of the objections illustrative of defense counsel's obstructive behavior:

> Q. And any other groups or functional areas that you can describe that were part of this overall department?
> MS McGRODER: Objection to form. I mean, to the extent he remembers.
>
> [*See* Fromson Decl., Ex. L, July 12, 2007, at p. 47.]
>
> \* \* \*
>
> Q. Well, you are here to speak on behalf of Pfizer. Correct?
> A. Yes
> MS. McGRODER: To the extent you understand the process. [p. 52]
>
> \* \* \*
>
> Q. And you believe you could—you could discuss good practices of pharmacovigilance as they should have been executed by Parke-Davis and Warner-Lambert. Right?
>
> \* \* \*
>
> MS. McGRODER: Well, I object to the form of that question. It assumes facts in evidence. Your characterization of what they should have done assumes that they did not do something. That's misleading and objectionable. [p. 55]
>
> \* \* \*
>
> Q. Okay. And were there any documents that you did review, without telling me what they were, were there any documents that you did review that actually refreshed your recollection of things you didn't recall before looking at them?
> MS. McGRODER: Object on the basis of privilege and work product, and don't answer the question. [p. 76]
>
> \* \* \*
>
> Q. Did you learn anything new about the Neurontin drug safety profile in preparation for this deposition that you did not know previously to your preparation for this deposition?
> MS. McGRODER: Well, I'm going to – I'm going to object on the basis of privilege to the extent if he learned anything new that he learned from me, that's – that's privileged. So to the extent you can answer that question without providing anything responsive that deals with something that we talked about, then you may answer. [p. 79]
>
> \* \* \*
>
> Q. Well, did you seek out any documents from the Warner-Lambert/Parke-Davis era that would assist you in understanding the Warner-Lambert/Parke-Davis pharmacovigilance practices?
> MS. McGRODER: I object on the bases of asked and answered, and he's already told you that everything he looked at document-wise, he got from me. So you're invading the attorney/client work product privilege, Ken. [p. 85]
>
> \* \* \*
>
> Q. Did anyone ever tell you not to go and seek out independently any document regarding the Warner-Lambert/Parke-Davis pharmacovigilance practices?
> MS. McGRODER: I object on the basis of privilege. Any – anyone other than your lawyers. [p. 85]
>
> \* \* \*

15

> Q. All right. Is it your understanding --- well, let me ask you this: Do you know as you sit here today, without me having read that example to you, that the statement was, in fact, made by the FDA?
> A. Yes.
> Q. Okay, and that's because you had reviewed a document in preparation for this deposition, right?
> MS. McGRODER: Object on the basis of privilege and work product.
> Q. What was the basis for you knowledge of knowing the statement was made?
> MS. McGRODER: I object on the basis of work product and attorney/client privilege. He's already told you that everything he—every document he looked at, is because of the fact I a gave it to him. So if he looked at it, I gave it to him.
> MR. FROMSON: Are you directing him not to answer?
> MS. McGRODER: Yes. [pp. 107-108]

Notwithstanding witness Hauben's position in Pfizer's Risk Management Strategy Department as a Medical Director (Fromson Decl., Ex. L, p. 9), where the purpose of such department is to "detect, understand, identify and take appropriate mitigating and management activities to – to manage risks associated with the use of medicines (p. 9), defense counsel obstructed PL Plaintiffs' inquiries as it pertained to the witness's knowledge about how Neurontin works (e.g., its mechanism of action), as well as to whether Neurontin was associated, or could contribute to suicidaility. It is axiomatic that a person who has responsibilities to understand the risks associated with Neurontin, should be subjected to questions about how Neurontin works in the first place, and whether Defendants knew there was any association with suicidaility. Whether the witness possesses such knowledge is another matter entirely; to prevent or otherwise obstruct the inquiry was improper:

> Q. Have you evaluated the post-marketing surveillance results for Neurontin to determine whether there is a signal involving psychiatric adverse events with the use of Neurontin?
> A. I was involved in signal detection for Neurontin, including those types of events.
> Q. And so in terms of your participation, did you think it was important to understand the drug's mechanism of action?
> A. At the time, I think it might have been helpful, but I just don't have an understanding now.
> Q. Do you have an understanding, whatsoever, as to the drug's mechanism of action as you sit here today?
> MS. McGRODER: Well, I object. That's outside the scope of what he's here to testify about. We objected specifically to that in the 30(b)6 notice in our

16

>   responses and objections. . . . so I'm not going to let him talk about the mechanism of action of drugs.
>
> [*See* Fromson Decl., Ex. L, pp. 140-141.]
>
> * * *
>
> Q. To what extent, if you know, could any of the Warner-Lambert/Parke-Davis clinical trials have been used to determine whether Neurontin was associated, or rather could contribute to suicidaility?
> MS. McGRODER: Well, that's too far. That doesn't have anything to do with post-market safety. You're asking him to comment on the clinical trial program of Warner-Lambert, and he's not here to talk about that, and it's subject to our objections.
> MR. FROMSON: So you're directing him not to answer.
> MS. McGRODER: Yeah.
>
> [*See* Fromson Decl., Ex. L, p. 55.]

C.  **Pfizer Defendants Should Be Ordered to Produce Various Documents/Information That Were Discovered During the Deposition Testimony of Pfizer Defendant Witnesses and That Are Crucial to the Prosecution of These Actions**

During the deposition of Pfizer Defendants' witnesses, PL Plaintiffs discovered that there is additional material that should have been disclosed by Pfizer Defendants:

(1) On August 16, 2007, defense witness Julia Su testified to issues concerning Pfizer Defendants' Medical Information Department. Specifically, she discussed the way in which the company responded to inquiries about Neurontin, particularly as it pertained to inquiries from the public (e.g., healthcare providers or consumers). During her testimony, she identified the existence of Standard Operating Procedures that dictated the manner in which such responses (e.g., Standard Response Documents) are prepared. Defense counsel has agreed in principle to provide such Standard Operating Procedures; however, to date they have not been provided. Consequently, PL Plaintiffs, as a protective measure, seek to have the documents ordered for disclosure by a date certain. To the extent such documents are provided before the Court's September 20, 2007 hearing, PL Plaintiffs will respectfully withdraw the application.

(2) Witness Hauben testified on July 12, 2007 to the existence of a 2001 report/evaluation addressing suicide and depression that was prepared by Pfizer Defendants' witness, Lester Reich, MD. Hauben advised that Reich would be the best individual with whom

17

to speak regarding the 2001 report/evaluation. (*See* Fromson Decl., Ex. L, pp.315-322.) Defendants have produced the subject report at issue. (*See* Fromson Decl., Ex. M, bates Pfizer_MHauben_000122 – 000125, in which Lester Reich indicates in part "[w]ith the post marketing use of gabapentin in patients other than with epilepsy it is important to identify whether these new populations may be particularly susceptible to specific adverse drug effects both labeled and unlabeled . . . ."). Oddly, the report was produced only as part of witness Hauben's custodial file. Missing from the entire production in this litigation is any document collected from Dr. Reich's custodial file. PL Plaintiffs request that Pfizer Defendants produce responsive documents from Dr. Reich's custodial file by a date certain and thereafter provide PL Plaintiffs an opportunity to depose Lester Reich, MD within 20 days after production of the custodial file documents.

**D.     The Discovery Schedule Should Be Amended to Include
         A Specific Deadline for the Service of Notices To Admit**

Notices to Admit uncontroverted facts learned through other discovery methods, and for the authentication of documents serve as valuable tools to narrow the issues and save the time and expense of preparing for unnecessary proof. As mentioned above, the discovery orders in this MDL did not provide for an ample time period after the April 30, 2007 discovery deadline given that depositions of Pfizer Defendants continued long after April (and continue into October 2007). Additionally Defendants' document production has continued through August 2007, and additional document production should be forthcoming, as explained above. PL Plaintiffs therefore request leave to serve Notices to Admit, or otherwise obtain a brief discovery extension for the limited purpose of determining whether documents produced by Pfizer Defendants are in fact Defendants' 'business records', in a manner consistent with this Court's prior Order of August 9, 2005. (ECF Doc # 209.)

In this regard, the parties conferred via telephone on September 4, 2007; although neither party had a specific objection as to resolving this issue via some type of agreed upon mechanism, time factors prevented the parties from reaching a resolution. Consequently, this application is brought to the Court's attention with the hope that the Court will extend the timeframe as set forth in its prior Order.

Moreover, Plaintiffs' counsel in a separate state court action, *Crone v. Pfizer*, *et. al.,* (CV 400432; Lake County, California ), have served Pfizer Defendants with Requests for Admissions relating to statements in the media purportedly made by Pfizer employees. (*See* Fromson Decl., Ex. N.) PL Plaintiffs request leave to serve the identical requests in said Notice to Admit in the instant litigation. PL Plaintiffs' submit that any discovery concerning Neurontin which is obtained in other state and/or and federal actions, or in the New York State Coordinated Litigation, *In re:* Neurontin Product Liability Litigation, should be considered discovery available for utilization in this MDL. In this regard, the parties conferred on September 4, 2007, and are working towards a resolution that would result in Pfizer Defendants adopting in this MDL the admissions that are provided in the *Crone* case as if the Requests for Admissions were served in this MDL. However, in light of this Court's prior order requiring motions to compel discovery by September 6, 2007, PL Plaintiffs respectfully submit this application for leave to serve an identical Notice to Admit. To the extent the parties resolve the issue prior to the September 20, 2007 hearing, PL Plaintiffs will respectfully withdraw the application.

## CONCLUSION

In view of the above, PL Plaintiffs submit that the completion of the fact discovery process has yielded information, enumerated above, that has not been adequately disclosed by Pfizer Defendants. PL Plaintiffs require this information to successfully prosecute their claims

and would be severely prejudiced if not provided with the opportunity to discover same. PL Plaintiffs therefore respectfully request that this Court issue an order granting Plaintiffs' motion.

Dated: September 6, 2007          Respectfully submitted,

*Members of Products Liability*
*Plaintiffs' Steering Committee*

By:    **/s/ Andrew G. Finkelstein**
       Andrew G. Finkelstein, Esquire
       Finkelstein & Partners, LLP
       436 Robinson Avenue
       Newburgh, NY 12550

By:    **/s/ Jack W. London**
       Jack W. London, Esquire
       Law Offices of Jack W. London
         & Associates
       106 E. 6th Street, Suite 700
       Austin, TX 78701

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on September 6, 2007.

Dated: September 6, 2007

       **/s/ Andrew G. Finkelstein**
       Andrew G. Finkelstein