UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981 |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCMIE LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY, | Judge Patti B. Saris  Mag. Judge Leo T. Sorokin |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC. | |
| and | |
| AETNA, INC. v. PFIZER INC. | |

**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS OF SPECIFIED CURRENT AND FORMER EMPLOYEES OF DEFENDANTS**

Sales and Marketing Plaintiffs ("Plaintiffs") seek an order permitting them to take additional depositions of specific Pfizer employees – twelve in total – in order to fill in testimonial gaps. As set forth below, Plaintiffs can demonstrate good cause for this modest expansion of the currently allowed number of depositions.

726633.2

I.      **Background**

Case Management Order No. 5 ("CMO No. 5") (Dkt. No. 736), dated April 20, 2007, limited to thirty (30) the number of non-case-specific depositions of Defendants' current and former employees to be taken, and provided for additional depositions upon a showing of "good cause" (Dkt. No. 736, II(B).)  Pursuant to CMO No. 5, depositions were to commence May 29, 2007 and be completed July 13, 2007.  (*Id.*)  Discovery Order No. 13 extended the deadline to complete already-noticed depositions to October 15, 2007.  (Dkt. No. 801.)  To date, 22 of the previously allotted 30 depositions of current/former employees have already taken place. Six more are scheduled and will be completed prior to October 15, 2007, and the parties are exchanging dates for the remaining two depositions.

On July 3, 2007, in moving for an extension of the fact discovery deadline, Plaintiffs explained that additional depositions would likely be needed, and requested that the 30-deposition limit of CMO No. 5 be increased.  (*See* Dkt. No. 776.)  Defendants opposed that request, suggesting that should additional names emerge during already-noticed depositions, the parties meet and confer to determine whether additional depositions are required.  (*See* Dkt. No. 787 at 8.)  In Discovery Order No. 13, the Court denied Plaintiffs' "general" request to increase the overall number of depositions.  (*See* Dkt. No. 801.)  The Court did not have before it the question of whether good cause had been shown as to any particular additional deposition.

As Plaintiffs anticipated in their previous motion, an additional twelve depositions are needed to complete deposition discovery.  The parties met and conferred on September 4, 2007 for approximately fifteen minutes concerning the additional depositions.  Present, telephonically, for the Plaintiffs was Ronald J. Aranoff, and for the Defendants, James Rouhandeh and Christopher Roche.  At that conference, Plaintiffs presented their list of requested depositions and the reasons why these depositions are being requested.  Counsel for

Defendants contacted Plaintiffs' counsel on September 5, 2007 and stated that they would not consent to any additional depositions, but provided no substantive reasons for their refusal other than that Plaintiffs already used up their 30-witness allotment.

## II.     Discussion

In the September 4, 2007 discovery conference, Plaintiffs provided the following names to Defendants, each of whom Plaintiffs believe possesses information concerning central issues in this case:

1.     <u>Angela Crespo</u>: During the course of the depositions, it has emerged that Parke-Davis and Pfizer conducted numerous clinical trials in Europe. For a number of these trials, the results were negative. In email after email, Angela Crespo, who was senior marketing colleague for both Parke-Davis and Pfizer stationed in Europe, recommended suppression or distortion of the negative clinical trials results in order to avoid a negative impact on Neurontin's sales. Plaintiffs believe that there are additional negative clinical trials results that have not been made available in discovery. For example, just last week, long after the close of paper discovery, Defendants produced a partial draft research report for a hitherto unknown, completed Spanish study on Neurontin and bipolar disorder. The results, not surprisingly, were negative. Ms. Crespo, who is Spanish, is likely the most knowledgeable witness regarding the study, when its results were available, and why the partial draft research report was not produced prior to the discovery deadline. Plaintiffs need to depose Ms. Crespo to obtain necessary testimony about the status and results of all European clinical studies.

2.     <u>Elizabeth Mutisya</u>: As medical director for Pfizer's largely European Major Markets team, Ms. Mutsiya's job requirement was to be knowledgeable about the status and outcome of European clinical trial studies, so that she could stay current on the state of the

medical science on Neurontin.  Thus, Plaintiffs need to depose Ms. Mutisya in order to obtain necessary testimony about the status and results of all European clinical studies, as well as the location of all unproduced research reports.  For example, Plaintiffs need to question Ms. Mutisya about when she first became aware, if at all, about the partial draft research report for the negative Spanish bipolar study.

3. <u>Drusilla Scott</u>: Ms. Scott was chiefly responsible for the preparation of Pfizer's supplemental new drug application (sNDA) to the FDA for approval of Neurontin's broad use for neuropathic pain.  Plaintiffs have learned that, in advance of filing the sNDA, Pfizer met with the FDA and learned that the proposed sNDA would be non-fileable – *i.e.*, that the FDA would not even review the application because it would be rejected.  Despite this strong warning, Pfizer filed the sNDA for neuropathic pain in August 2001.  Not surprisingly, the FDA rejected this application, and Pfizer was forced to amend it in January 2002 to include only postherpetic neuralgia, one narrow type of neuropathic pain.  So far, no Pfizer witness has given a credible explanation for the decision to proceed with the doomed sNDA in the face of the advance knowledge that the FDA would reject the application.  Plaintiffs believe that the application's purpose was to bolster Pfizer's false claims that Neurontin is broadly effective for all types of neuropathic pain.  The existence of the application allowed Pfizer to engage in pre-launch activities, which included telling doctors that the application had been filed (which was true), that the company expected to get the broad neuropathic pain indication (which was false), and that Pfizer merely wanted to alert physicians to the impending change in labeling to include all types of neuropathic pain (which was also false).  Plaintiffs need to question Ms. Scott about why Pfizer filed an sNDA that it knew would be rejected.

4.      David Probert:  For several years, David Probert worked on the U.S. marketing team for Neurontin.  Based on an initial review of the documents, Plaintiffs did not initially think that his deposition was necessary.  However, through the course of depositions and additional discovery, it appears that Mr. Probert was responsible for working closely with medical marketing vendors used by Defendants.  Given that Plaintiffs' RICO claims involve these same medical marketing vendors, Plaintiffs need to depose Mr. Probert about the systematic linkages between Pfizer and these vendors and other aspects of the alleged RICO relationship.

5.      Rady Johnson: Mr. Johnson is a Pfizer attorney who served on the Review Committee, which met regularly to review and approve all promotional materials for Neurontin used by the sales force.  Plaintiffs need to depose Mr. Johnson to learn whether the Review Committee reviewed all marketing materials, including the off-label marketing materials, or just the on-label promotional materials that Pfizer wanted the FDA to see.  Plaintiffs also need to depose Mr. Johnson about the standards that were used in determining whether a promotional piece was truthful, accurate and complete.

6.      Tim Windom: As the Court is aware, the conduct that resulted in a $430 million settlement of criminal and civil claims involving Neurontin related to conduct that began in the mid-1990s under Parke-Davis.  Unfortunately, few employees from the Parke-Davis era stayed with Pfizer.  Moreover, it has been difficult for Plaintiffs to identify Parke-Davis-era witnesses since Pfizer has produced very few individual custodial files for employees from that time period.[1]  Thus, unlike Pfizer employees, whose custodial files identify the custodian, Plaintiffs

---

[1] Pfizer's position, as Plaintiffs understand it, is that the custodial files of Parke-Davis employees are contained the "Franklin" documents that Plaintiffs already have, as well as certain additional "CBU" documents that were produced to fill in geographic and temporal gaps in the original Franklin production.

cannot readily tell from which employees files the Parke-Davis documents were located. Tim Windom was a Parke-Davis product manager who was involved in many of Defendants' key fraudulent off-label initiatives. Plaintiffs need to depose Mr. Windom to identify the strategies and tactics that were implemented by Parke-Davis.

7.   <u>John Knoop</u>: John Knoop was a key witness in the Franklin case. However, given the differences between the Franklin civil qui tam case and this case, Mr. Knoop was never asked about many of the issues in this case. For example, he was not asked whether the marketing message for Neurontin was false and misleading. Plaintiffs want to depose Mr. Knoop in order to obtain testimony about the truthfulness of the representations that Parke-Davis made during events that Mr. Knoop has previously admitted were marketing tactics.

8.   <u>Larry Perlow</u>: Mr. Perlow was a Parke-Davis employee who oversaw the marketing of Neurontin. However, unlike Mr. Knoop, who left Parke-Davis in 1998, Mr. Perlow stayed on. He was more senior than Messrs. Windom and. Knoop, and was likely involved in senior management's decision – at the outset – to begin marketing Neurontin for uses that lacked scientific support.

9.   <u>Dr. Donna Ricci</u>: Dr. Ricci has been identified as leading the quality group in Medical Information, which drafted the Standard Operating Procedures (SOPs) governing, among other things, how Pfizer communicated with physicians. Plaintiffs only learned about the existence of those SOPs during the depositions in this case. Plaintiffs need to depose Dr. Ricci to determine why the SOPs were created, and the factors and considerations used to draft them.

10.   <u>Joan Kaplan</u>: Ms. Kaplan was head of Professional Relations for Pfizer. Pfizer has represented that she spent nearly all her time working with foreign physicians. Given the

number of clinical trials that were conducted outside of the United States, Ms. Kaplan will be able to testify concerning the management of relationships with foreign investigators.

      11. and 12. <u>John Dauser and Mark Emtiaz</u>: Messrs. Dauser and Emtiaz were account representatives who had contacts with third-party payor Kaiser on Pfizer's behalf. Accordingly, they are expected to be able to testify about the communications between Pfizer and Kaiser, and whether those communications were truthful and non-misleading. So far, Plaintiffs have not been able to obtain such testimony from any other Pfizer employees. Thus, the depositions of Messrs. Dauser and Emtiaz are necessary to shed light on the extent to which Kaiser itself was a direct (rather than indirect) victim of fraud.

        As set forth above, each of these witnesses should be able to testify concerning topics that are unquestionably relevant to Plaintiffs' allegations. CMO No. 5 provides that additional depositions may be taken for "good cause shown." (Dkt. No. 736.) Federal Rule of Civil Procedure 16(b) provides the touchstone for assessing good cause, emphasizing diligence.[2] *See Berwind Property Grp., Inc. v. Environmental Mgmt. Grp., Inc.*, 233 F.R.D. 62, 66 (D. Mass. 2005). Plaintiffs have been diligent in noticing and conducting depositions efficiently. First, Plaintiffs provided early notification to Defendants of the likelihood that additional depositions may be required. Plaintiffs explained the need for additional depositions generally in their motion to extend the fact discovery deadline, and in discovery conferences, provided specific names of deponents to Defendants. Additionally, Plaintiffs have not received custodial files for any of these potential witnesses except David Probert and so could not have known to notice

---

[2] Although Plaintiffs seek leave to take additional depositions, their motion is not belated under the scheduling order. *Compare O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004) (affirming denial of motion for leave to amend where moving party waited five months after expiration of the scheduling order to file motion).

their depositions when Plaintiffs made the initial list of 30 deponents.  As a result, the importance of some of these witnesses did not become clear until those depositions had commenced.[3]  Finally, Plaintiffs had to provide to Defendants thirty names based on documents provided as of May 1, 2007.  The bulk of Defendants' document production started shortly before that date, and continued beyond it.  (*See* Motion For Extension of Fact Discovery Deadline at 4-5; Exh. A (Dkt. No. 776.)  Given these initial obstacles and the length and complexity of this case, it is not surprising that additional witnesses would emerge during discovery.  Plaintiffs should be given the opportunity to pursue these avenues of discovery.

### III.     Conclusion

For the foregoing reasons, Plaintiffs' motion for leave to take additional depositions of Defendants' current and former employees should be granted.

Respectfully submitted,

Dated:  September 6, 2007         By:     /s/ Barry R. Himmelstein_____
                                          Barry R. Himmelstein

                                          Barry R. Himmelstein
                                          LIEFF CABRASER HEIMANN &
                                            BERNSTEIN, LLP
                                          Embarcadero Center West
                                          275 Battery Street, 30th Floor
                                          San Francisco, CA 94111-3339

                                          Thomas Greene
                                          GREENE & HOFFMAN
                                          125 Summer Street
                                          Boston, MA 02110

---

[3] For example, Plaintiffs learned of Dr. Ricci's roles and responsibilities at the deposition of Julia Su, who worked in Medical Information.

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Boston, MA 02110

Don Barrett
BARRETT LAW OFFICE
404 Court Square North
P.O. Box 987
Lexington, MS 39095

Daniel Becnel, Jr.
LAW OFFICES OF DANIEL BECNEL, JR.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

James Dugan
DUGAN & BROWNE
650 Poydras St., Suite 2150
New Orleans, LA 70130

*Members of the Class Plaintiffs'*
*Steering Committee*

Gerald Lawrence, Esq.
LOWEY DANNENBERG BEMPORAD &
SELINGER, P.C.
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshocken, PA 19428

Linda P. Nussbaum, Esq.
KAPLAN FOX & KILSHEIMER LLP
150 East 52nd Street, Thirteenth Floor
New York, NY 10022

**Members of the Plaintiffs'**
**Non-Class Steering Committee**

726633.2                                          -9-

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 6, 2007, I caused this document to be served on the parties pursuant to Case Management Order #3 by causing it to be filed through the Court's ECF System.

                                        /s/ Daniel E. Seltz
                                        Daniel E. Seltz, Esq.