# Exhibit A

Issued by the
# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES & PRODUCTS LIABILITY LITIGATION | **SUBPOENA IN A CIVIL CASE** <br> MDL Docket No. 04-MDL-1629 <br> Master File No. 04-10981 (D. Mass) |
| TO:  Cline Davis & Mann, Inc. <br>     220 East 42nd Street <br>     New York, New York  10017 | |

_ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

X  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  The deposition will be recorded stenographically and by videotape.    **SEE ATTACHED SCHEDULE A**

| PLACE     **Kaplan Fox & Kilsheimer, LLP** <br>     **850 Third Avenue, 14th Floor** <br>     **New York, New York  10022** | DATE AND TIME <br> **September 3, 2007** <br> **9:30 a.m.** |
|---|---|

_  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

_ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE <br> August 13, 2007 |
|---|---|
| _(signature)_ <br> (Attorney for Coordinated Plaintiffs) | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Linda Nussbaum, Esq., Kaplan Fox & Kilsheimer, LLP, 850 Third Avenue, 14th Floor, New York, NY 10022, 212.687.1980

(See Rule 45, Federal Rules of Civil Procedure, Parts C&D on Reverse)

1 If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

|  | DATE 8/13/07 | PLACE 220 E. 42nd St., N.Y., N.Y. — 10017 |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) Carol Di Santo, President | MANNER OF SERVICE Hand Delivered |
|---|---|
| SERVED BY (PRINT NAME) Kenneth A. Adams | TITLE Clerk |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on   8/13/07
       DATE                          SIGNATURE OF SERVER

3224 Grand Concourse, Apt A21
ADDRESS OF SERVER

Bronx, N.Y. 10458

---

Rule 45, Federal Rules of Civil Procedure, Parts C&D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

1.      The Definitions contained in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts are incorporated herein by reference. Additionally, the following definitions apply to this schedule:"AED" shall mean anti-epileptic drug or all drugs of the anti-epileptic drug class.

2.      "And" includes the word "or" and vice-versa.

3.      "Any" includes the word "all" and vice versa.

4.      "Cline Davis" or "you" shall mean Cline Davis & Mann, Inc., and includes any predecessor or successor in interest, division, office, subsidiary, and affiliate thereof, or any present or former director, officer, partner, executive, trustee, employee, agent, attorney, representative and any other Person acting or purporting to act on its behalf, and includes any and all divisions including the Proworx division.

5.      "CME" shall mean continuing medical education.

6.      "Communication" shall have the meaning set forth in Local Rule 26.5.

7.      "Concerning" shall have the meaning set forth in Local Rule 26.5.

8.      "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure, and Local Rule 26.5, and includes all forms of writings as defined in Rule 1001(1) of the Federal Rules of Evidence, and includes any reduction to tangible form, whether written, recorded, taped, filmed, videotaped or in computer, digital or magnetic memory or storage, of communication, information, or data, including any graphic matter of any kind or

nature, however produced or reproduced, and also includes originals, drafts, and non-identical copies, wherever located.

9.     "Event" shall mean any conference, symposium, seminar, dinner meeting, dinner, meal, advisory board meeting, consultant meeting, speaker bureau, speaker event, speaker training, CME, conference call, teleconference, trip, or weekend getaway attended by physicians.

10.    "Health Strategies Group" means Health Strategies Group, Inc. and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other person acting or purporting to act on its behalf.

11.    "Including" shall mean including, without limitation, the specific matter or documents described.

12.    "Neurontin" shall mean the drug with the chemical name gabapentin, marketed under the name Neurontin, and includes all uses or indications thereof.

13.    "Neurontin litigation" shall mean any state or federal lawsuit, litigation concerning the marketing of Neurontin, including but not limited to United States of America ex rel. David Franklin v. Parke-Davis, division of Warner-Lambert Company, Civil Action No. 96-11651-PBS (United States District Court for the District of Massachusetts), and In re Neurontin Marketing and Sales Practices Litigation, MDL 1629, and all actions transferred or consolidated thereunder.

14.    "Parke-Davis" shall mean Parke-Davis, a division of Warner-Lambert Company, and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other person acting or purporting to act on its behalf.

2

15.     "Person" shall mean any individual, corporation, organization, association, partnership, limited partnership, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

16.     "Pfizer" shall mean Pfizer, Inc. and any of its predecessors or successors in interest divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other person acting or purporting to act on its behalf.

17.     "Relating to" shall mean constituting, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, pertaining to, or having any logical or factual connection with the matter identified, in whole or in part.

18.     "Third-party payor" shall mean the Guardian Life Insurance Company of America; Kaiser Foundation Health Plan, Inc.; Kaiser Foundation Hospitals; Aetna, Inc.; Time Insurance Company; John Alden Life Company; Union Security Insurance Company; American Medical Security Life Insurance Company; American Medical Security Group, Inc.; Blue Cross and Blue Shield of Florida, Inc.; Health Options, Inc.; Blue Cross Blue Shield of Massachusetts, Inc.; Blue Cross Blue Shield of Michigan; Blue Care Network, Inc.; Blue Cross Blue Shield of Minnesota; Comprehensive Care Services, Inc.; First Plan of Minnesota; Atrium Health Plan, Inc.; HMO Minnesota; Carefirst, Inc.; Carefirst of Maryland, Inc.; Carefirst Bluecross Blueshield; Willse & Associates, Inc., CFS Health Group, Inc.; Delmarva Health Plan, Inc.; Free State Health Plan, Inc.; Patuxent Medical Group, Inc.; Group Hospitalization and Medical Services, Inc.; Capital Care, Inc.; Capital Area Services, Inc.; BCBSD, Inc.; Empire Healthchoice Assurance, Inc.; Empire Healthchoice HMO, Inc.; Empire Blue Cross HMO; Wellchoice Insurance of New Jersey, Inc.; Empire Healthchoice Assurance, Inc.; Excellus

3

Health Plan, Inc.; EBS Benefit Solutions, Inc.; Federated Mutual Insurance Company; Health

Care Service Corporation; Mutual of Omaha Insurance Company; United of Omaha Life

Insurance Company; United World Life Insurance Company; Exclusive Healthcare, Inc.;

Trustmark Insurance Company; Wisconsin Education Association Council; and Wisconsin

Education Association Insurance Corporation including their predecessors, successors,

subsidiaries (foreign or domestic), divisions, employees agents (including but not limited to

attorneys accountants, consultants, investment advisors or bankers), or pharmacy benefit

managers, all joint ventures, limited or general partnerships or other entities operated or

controlled directly or indirectly by the third-party payors.

      19.    "Warner-Lambert" shall mean Warner-Lambert Company and any of its

predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present

or former directors, officers, executives, trustees, employees, agents, attorneys, representatives

and any other person acting or purporting to act on its behalf.

**TIME PERIOD**

      Unless otherwise expressly indicated, the time period covered is January 1, 1994 to

present.

**SUBJECT MATTERS OF DEPOSITION**

      Pursuant to Federal Rule of Civil Procedure 30(b)(6), Cline Davis shall designate one or

more officers, directors, managing agents, or other person(s) to testify concerning the following

subject matters:

      1.    Cline Davis's document retention policies, including, but not limited to the

retention and destruction of documents at any division, office or document storage facility.

      2.    The search for and collection of documents, including but not limited to electronic

information, responsive to plaintiffs' document requests served upon Cline Davis in the

4

Neurontin litigation, including, but not limited to:

      a.    Identification of the persons who preformed such searches;

      b.    Identification of the facilities that were searched; and

      c.    Identification of the employees whose files were searched.

3.      The policies or procedures followed by Cline Davis in producing documents and electronic data in the Neurontin litigation.

4.      Any contract or agreement between Cline Davis and either Warner-Lambert or Pfizer, concerning the furnishing of goods or services by Cline Davis in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin, including but not limited to the negotiation, execution and performance of any such contract or agreement.

5.      Payments made by Cline Davis on behalf of, at the direction of, for, or for the benefit of Pfizer or Warner-Lambert concerning Cline Davis's furnishing of goods or services, in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

6.      The identification of all Cline Davis account group supervisors, account managers, account executives and other employees who worked on the Neurontin account.

7.      The identification of all individuals at Cline Davis who had contact with either Warner-Lambert or Pfizer regarding Neurontin.

8.      The identification of all individuals at Cline Davis who had contact with any third-party payor regarding Neurontin.

9.      The identification of all individuals at Cline Davis who had contact with any

5

physician regarding Neurontin.

10.    The identification of all individuals at Cline Davis who had contact with any technical or medical writers regarding Neurontin.

11.    The structure, membership, and responsibilities of the Neurontin Extended Disease Team, Epilepsy Disease Team or Extended Neurontin Disease Team.

12.    Any marketing strategies, marketing plans, or strategic marketing plans prepared by Cline Davis for Warner-Lambert or Pfizer relating to Neurontin.

13.    Any information possessed by Cline Davis concerning the promotion of Neurontin for any off-label uses, including but not limited to pain, diabetic peripheral neuropathy, restless leg syndrome, bipolar disorder, social phobia, panic disorder, migraine, monotherapy for epilepsy, and dosages of Neurontin above the FDA-approved maximum.

14.    Any information concerning any event that was coordinated, prepared, managed, arranged, coordinated, sponsored, or hosted by Cline Davis, where Neurontin or AEDs were discussed, including but not limited to the identification of any speakers, sponsors, or third-party attendees of any such event; the preparation, organization or review of any such event; and the selection and recruitment of speakers for such event.

15.    Any analysis, studies, investigations, retrospective reviews, preceptorships, clinical trials, papers, manuscripts, articles, abstracts or letters-to-the-editor prepared or undertaken by Cline Davis or any technical or medical writers working for or retained by Cline Davis, which discuss whether Neurontin provides any medical benefit to patients who take it for any off-label uses, including but not limited to pain, diabetic peripheral neuropathy, restless leg syndrome, bipolar disorder, social phobia, panic disorder, migraine, monotherapy for epilepsy, and dosages of Neurontin above the FDA-approved maximum.

16.    Any information possessed by Cline Davis concerning whether Neurontin provides any medical benefit to patients who take it for any off-label uses, including but not limited to pain, diabetic peripheral neuropathy, restless leg syndrome, bipolar disorder, social

6

phobia, panic disorder, migraine, monotherapy for epilepsy, and dosages of Neurontin above the FDA-approved maximum.

17.     Any information possessed or analysis prepared by Cline Davis concerning the actual, estimated or predicted amount of Neurontin prescriptions written by physicians.

18.     Any information regarding if and how Cline Davis worked with Health Strategies Group in coordinating, planning or otherwise sponsoring any Advisory Board Meetings or any Continuing Medical Education seminars related to or concerning Neurontin including, but not limited to, the Neuropathic Pain Advisory Board Meeting held in Orlando, Florida on March 3-4, 2002 at the Disney Boardwalk Hotel and Resort.

7

# Exhibit B

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

SOUTHERN                    DISTRICT OF            NEW YORK

IN RE NEURONTIN MARKETING
AND SALES PRACTICE LITIGATION              SUBPOENA IN A CIVIL CASE

MDL Docket No. 04-MDL-1629

Master File No.   04-10981 (D. Mass)

TO:   Keeper of the Records
      Cline Davis & Mann, Inc.
      220 East 42nd Street
      New York, New York  10017

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified
   below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
   deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects
   at the place, date, and time specified below (list document or objects):

   **All documents listed on Schedule A attached.**

| PLACE<br>Bernstein Liebhard & Lifshitz, LLP<br>10 East 40th Street<br>New York, NY  10016 | DATE AND TIME<br>May 31, 2005<br>at 9:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more
officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person
designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>5-10-05 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jeff S. Gibson, Cohen & Malad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN  46204          (317) 636-6481

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| | | | |

| SERVED | | | |
|---|---|---|---|
| | SERVED ON (PRINT NAME) | | MANNER OF SERVICE |

| | | | TITLE |
|---|---|---|---|
| | SERVED BY (PRINT NAME) | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)   fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

### DEFINITIONS AND INSTRUCTIONS

#### Definitions

The definitions contained in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts are incorporated herein by reference. Additionally, the following definitions apply to this Schedule:

1.  "AED" shall mean anti-epileptic drug or all drugs of the ant-epileptic drug class.

2.  "And" includes the word "or" and vice-versa.

3.  "Any" includes the word "all" and vice-versa.

4.  "Cline Davis" shall mean Cline Davis & Mann, Inc., and includes any predecessor or successor in interest, division, office, subsidiary, and affiliate thereof, or any present or former director, officer, partner, executive, trustee, employee, agent, attorney, representative and any other Person acting or purporting to act on its behalf, and includes any and all divisions including the Proworx division.

5.  "CME" shall mean continuing medical education.

6.  "Communication" shall have the meaning set forth in Local Rule 26.5.

7.  "Concerning" shall have the meaning set forth in Local Rule 26.5.

8.  "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure, and Local Rule 26.5, and includes all forms of writings as defined in Rule 1001(1) of the Federal Rules of Evidence, and includes any reduction to tangible form, whether written, recorded, taped, filmed, videotaped or in computer, digital or magnetic memory or storage, of communication, information, or data, including any graphic matter of any kind or

nature, however produced or reproduced, and also includes originals, drafts, and non-identical

copies, wherever located. "Document" shall include, but not be limited to, books, contracts,

agreements, correspondence, electronic mail (email), computer tapes, discs, magnetic memory,

printouts and keypunch cards, memoranda, diaries, notes reports, bulletins, printed forms,

telegraphic communications, pleadings and other legal papers, notes, telexes, telegrams,

telecopies, facsimile reproductions, or "faxes," factual compilations, data compilations, statistical

compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work,

graphics, checks, ledgers, catalogues, brochures, pamphlets, press releases, advertisements,

invoices, minutes, photographs, microfilms, microfiche, films, personnel files, quotes,

stenographic notes, computer disks, telephone records, schedules, bids, voice recordings, and

transcriptions. This definition shall apply to all Documents in the possession, custody or control,

of the Defendant herein, or that of its attorneys, agents, employees, officers, directors, or

representatives, irrespective of who generated, prepared or signed the Documents.

   9.    "Event" shall mean any conference, symposium, seminar, dinner meeting, dinner,

meal, advisory board meeting, consultant meeting, speaker bureau, speaker event, speaker

training, CME, conference call, teleconference, trip, or weekend getaway attended by physicians.

   10.    "Including" shall mean including, without limitation, the specific matter or

Documents described.

   11.    "Neurontin" shall mean the drug with the chemical name gabapentin, marketed

under the name Neurontin, and includes all uses or indications thereof.

   12.    "Neurontin Litigation" shall mean any state or federal lawsuit, litigation

concerning the marketing of Neurontin, including but not limited to United States of America ex

rel. David Franklin v. Parke-Davis, division of Warner-Lambert Company, Civil Action No. 96-

11651-PBS (United States District Court for the District of Massachusetts), and <u>In re Neurontin Marketing and Sales Practices Litigation,</u> MDL 1629, and all actions transferred or consolidated thereunder.

13.   "Parke-Davis" shall mean Parke-Davis, a division of Warner-Lambert Company, and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf.

14.   "Person" or "Persons" shall mean any individual, corporation, organization, association, partnership, limited partnership, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

15.   "Pfizer" shall mean Pfizer, Inc. and any of its predecessors or successors in interest divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf.

16.   "Relating to" shall mean constituting, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, pertaining to, or having any logical or factual connection with the matter identified, in whole or in part.

17.   "Warner-Lambert" shall mean Warner-Lambert Company and any of its predecessors or successors in interest divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other Person acting or purporting to act on its behalf, and includes, but not limited to, its division, Parke-Davis.

3

## Instructions

1.    In the event that any Document called for by this Document Request is withheld on the basis claim of privilege, that Document is to be identified as follows: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, the present custodian, and the nature of the privilege asserted.

2.    In the event that any Document called for by this Document Request has been destroyed, discarded, otherwise disposed of, or no longer exists, that Document is to be identified as completely as possible, including, without limitation, the following information: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, Person authorizing the disposal, the Person disposing of the Document, and identify its last known location and the reason it is no longer in existence.

3.    In the event that any information is redacted from a Document produced pursuant to this Document Request, that information is to be identified and the basis upon which such information is redacted be fully stated.

4.    In construing this Document Request, the singular shall include the plural and the plural shall include the singular.

5.    Unless otherwise stated, the relevant time period for this request shall be from January 1, 1994 to the present.

## DOCUMENTS REQUESTED

**REQUEST NO. 1.:**

A copy of all documents that were produced either directly or indirectly to the United States Attorneys Office in Boston, MA and which are referred to in the Letter from Eric T. Gordon to Sara Bloom dated April 17, 2003 and again in the Letter from Eric T. Gordon to Sara Bloom dated June 4, 2003. See Exhibit 1, attached hereto.

**REQUEST NO. 2.:**

To the extent not requested in Request No. 1, a copy of all documents produced to any party in connection with Neurontin Litigation.

**REQUEST NO. 3.:**

Each engagement letter, letter agreement, memorandum of understanding, letter of intent, or contract, whether executed or otherwise, including any proposal, draft or addendum thereof, which creates, modifies, refers to, describes, or terminates the rights, duties, or services to be performed between Cline Davis on one hand and either Warner-Lambert or Pfizer, on the other hand, concerning Cline Davis's furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 4.:**

Documents sufficient to show each payment to Cline Davis from Pfizer or Warner-Lambert concerning, whether in whole or in part, Cline Davis's furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory

boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 5.:**

Copies of each invoice submitted by Cline Davis to Warner-Lambert or Pfizer concerning Cline Davis's furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 6.:**

Copies of each budget estimate, proposal or grant request submitted by Cline Davis to Warner-Lambert or Pfizer concerning Cline Davis's furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

**REQUEST NO. 7.:**

Documents sufficient to show each payment made by Cline Davis to any Person on behalf of, at the direction of, for, or for the benefit of Pfizer or Warner-Lambert concerning Cline Davis's furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

6

REQUEST NO. 8.:

All correspondence or communications between Cline Davis and any Person concerning Cline Davis's furnishing of goods or services in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

REQUEST NO. 9.:

Documents sufficient to show each Event, which was coordinated, prepared, managed, arranged, coordinated, sponsored, or hosted by Cline Davis, where Neurontin was discussed.

REQUEST NO. 10.:

Documents sufficient to show each non-CME Event, which was coordinated, prepared, managed, arranged, coordinated, sponsored, or hosted by Cline Davis, where Neurontin was discussed.

REQUEST NO. 11.:

Documents sufficient to show each CME, which was coordinated, prepared, managed, arranged, coordinated, sponsored, or hosted by Cline Davis and which was sponsored in whole or in part by Pfizer or Warner-Lambert, where Neurontin or AEDs were discussed.

REQUEST NO. 12.:

All documents that discuss Neurontin's use, efficacy or mechanism of action for any indication, which were drafted, edited, written or prepared by Cline Davis or any technical or medical writers working for or retained by Cline Davis, including but not limited to journal articles, letters to the editors, manuscripts, abstracts, syllabi, presentation slides, workbooks, telephone or teleconference scripts, monographs, or posters.

7

REQUEST NO. 13.:

All documents that discuss, summarize, track, monitor, record, or reflect actual or estimated amount, number or volume Neurontin prescriptions written by physicians.

REQUEST NO. 14.:

All documents received from Pfizer or Warner-Lambert relative to or concerning Neurontin's use, efficacy or mechanism of action.

REQUEST NO. 15.:

All documents received from Pfizer or Warner-Lambert relative to or concerning Neurontin or the marketing, advertising, promotion, medical education, or dissemination of information relating to Neurontin.

REQUEST NO. 16.:

All documents that describe, reflect, or refer to the labeling of Neurontin, or any stated, suggested, intended, off-label, emerging or investigational use thereof.

REQUEST NO. 17.:

Copies of all videotapes, audiotapes, transcripts, discussion notes, invitations, brochures, agendas, speaker lists, attendee lists, physician, completed attendee or participant feedback forms, completed attendee evaluation forms, and consultant agreements, for each Event, funded in whole or in part by Pfizer or Warner-Lambert, were Neurontin was discussed

REQUEST NO. 18.:

For each Event funded or sponsored, whether in whole or in part, by Pfizer or Warner-Lambert where Neurontin or other AEDS were discussed, all documents concerning or discussing faculty recruitment, speaker selection, speaker identification, speaker interest, or speaker availability for the Event.

8

REQUEST NO. 19.:

For each Event funded or sponsored, whether in whole or in part, by Pfizer or Warner-

Lambert where Neurontin or other AEDS were discussed, all documents concerning or

describing the planning, scheduling, logistical planning, organization, preparation, critique, or

review of the Event.

REQUEST NO. 20.:

All documents concerning studies, investigations, retrospective reviews, preceptorships,

clinical trials, papers, manuscripts, articles, abstracts or letters to the editor, whether published or

unpublished, relating to Neurontin.

REQUEST NO. 21.:

All documents that reference, or were received, collected, or prepared in connection with,

Neurontin Litigation.

REQUEST NO. 22.:

All documents that reference, or were received, collected, or prepared in connection

with, an audit or investigation into the actions of Pfizer and/or Warner-Lambert relating to the

marketing of Neurontin, including but not limited to investigations by any government entity,

whether state or federal, investigations by Pfizer and/or Warner-Lambert, or investigations by

any other person or entity.

REQUEST NO. 23.:

All document-retention and electronic file retention policies.

REQUEST NO. 24.:

Documents sufficient to show the identity of all Cline Davis account group supervisors,

account managers, account executives and other employees who worked on the Neurontin

9

account or in connection with each Event funded or sponsored, whether in whole or in part, by Pfizer or Warner-Lambert, where Neurontin was discussed.

**REQUEST NO. 25.:**

Documents sufficient to show the identity of all Cline Davis account group supervisors, account managers, account executives and other employees who were members of the Neurontin Extended Disease Team, Epilepsy Disease Team, or Extended Neurontin Disease Team, or who were regularly copied on internal Warner-Lambert or Pfizer communications.

**REQUEST NO. 26.:**

Copies of all client memos sent by Cline Davis to Warner-Lambert or Pfizer relating to Neurontin.

**REQUEST NO. 27.:**

Copies of all marketing strategies, marketing plans, or strategic marketing plans prepared by Cline Davis for Warner-Lambert or Pfizer relating to Neurontin.

**REQUEST NO. 28.:**

Copies of all tactical marketing plans prepared for Warner-Lambert or Pfizer relating to Neurontin.

10

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Subpoena and attached Schedule A have been served upon the following counsel of record, via Certified United States Mail, postage prepaid, this 10th day of May, 2005:

Thomas M. Sobol
Hagens Berman LLP
One Main Street, 4th Floor
Cambridge, Massachusetts  02142

David B. Chaffin
Hare & Chaffin
160 Federal Street, 23rd Floor
Boston, Massachusetts  02110

James P. Rouhandeh
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY  10017

_____
Jeff S. Gibson

COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana  46204
(317) 636-6481

# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL Docket No. 1629 Master File No. 04-10981 |
| THIS ORDER RELATES TO: | ) ) ) | Judge Patti B. Saris Mag. Judge Leo T. Sorokin |
| ALL ACTIONS | ) ) | |

Discovery Order No. 7

December 20, 2006

SOROKIN, M.J.

The Court hereby makes the following rulings and orders on the matters before the Court at the December 12, 2006 Motion Hearing.

1.   Schedule for Discovery Motion Hearings in 2007 (All Actions)

All hearings are set for 2:00 p.m. on the following dates.

| Hearing Date | Motion(s) & Memoranda Due | Opposition Due | Replies Due |
|---|---|---|---|
| 1/16/07 | 1/4/07 | 1/9/07 | 1/12/07 |
| 2/8/07 | 1/28/07 | 2/1/07 | 2/5/07 |
| 3/13/07 | 3/1/07 | 3/5/07 | 3/9/07 |
| 4/17/07 | 4/5/07 | 4/9/07 | 4/13/07 |
| 5/15/07 | 5/3/07 | 5/7/07 | 5/11/07 |
| 6/12/07 | 5/30/07 | 6/4/07 | 6/8/07 |
| 7/17/07 | 7/5/07 | 7/9/07 | 7/13/07 |

1

2.     Stipulation and Joint Order in Products Liability Actions (#576)

The Stipulation and Joint Order is adopted as an Order of the Court with one addition. No later than March 19, 2007, the parties shall agree upon a method for selecting the ten and two designated "Track One" cases. Absent an agreement, the parties shall submit their respective proposals to the Court by the same date. In addition, the Court makes the following changes to the proposed schedule.

| | |
|---|---|
| September 15, 2007 | Deadline for Fact Discovery in the two designated Track One Cases. |
| October 1, 2007 | Plaintiffs' Expert reports on general causation and the two designated Track One Cases. |
| October 21, 2007 | Deadline for plaintiffs to produce for deposition their designated experts. |
| November 7, 2007 | Deadline for defendants' expert reports regarding general causation and all remaining experts in the two designated Track One cases. |
| November 30, 2007 | Deadline for defendants to produce for deposition their designated experts. |
| December 15, 2007 | Motions for summary judgment on general causation and preemption, Daubert motions, and other dispositive motions pertaining to the two and ten designated Track One cases. |
| January 15, 2008 | Briefs in opposition due. |
| February 7, 2008 | Reply briefs due. |
| February 15, 2008 | Sur-Reply briefs due. |
| TBD | Hearing on summary judgment and Daubert motions. |

While the parties may conduct individualized discovery in any (or all) of the individual actions during the discovery periods set forth above, the foregoing deadlines do not close the

individual discovery in the individual cases. At a later date, the Court will address the issue of

further discovery if necessary.

    3.    Sales and Marketing Schedule (#557 & #558)

The Court has set a deadline for fact discovery of June 29, 2007. Expert discovery is to

take place from August 15, 2007 until January 21, 2008. In response to the Court's suggestion

that the parties propose subsidiary dates to ensure compliance with the deadlines, plaintiffs

proposed January 1, 2007 as the deadline for interrogatory responses and February 1, 2007 as the

deadline for document production. Defendant proposed April 15, 2007 for both the interrogatory

responses and the production of documents.

The Court adopts the April 15, 2007 deadline for all interrogatory responses and

production of documents. In addition, the subsidiary dates established in the Products Liability

Actions for the period through June 29, 2007 shall apply to the Sales and Marketing Actions.

The Court imposes the following additional deadlines:

| | |
|---|---|
| December 28, 2006 | Defendants shall provide appropriate confidentiality agreements to plaintiffs' counsel regarding the IMS data. Within seven days after receipt of the signed confidentiality agreements or January 5, 2007, whichever date is later, defendants shall produce the underlying IMS data. |
| January 15, 2007 | Production of Documents from the National Marketing Team. |
| February 15, 2007 | Production of the so-called Young documents. |
| March 1, 2007 | Production of all remaining marketing documents.[1] |

---

[1] Based upon statements of counsel at the December hearing, the Court understands that the Neurontin Marketing Team is comprised of approximately ten employees from the Pfizer-era, but that the marketing documents defendants are producing go beyond the documents from these ten employees.

4.      Motion to Compel from Non-Parties (#549) (Sales and Marketing Actions)

Plaintiffs have moved to compel non-party medical marketing firms to respond to duly issued subpoenas. The Court ORDERS that the non-party medical marketing firms shall produce the documents sought by the subpoenas no later than February 1, 2007. I note that in light of the Court's recent ruling extending the relevant time period through May of 2004, the non-parties' objections are moot. See Electronic Order of December 12, 2006.

5.      Joint Report on Discovery Disputes (#557) (Sales and Marketing Actions)

A. Defendants shall produce records, within thirty days of this Order, reflecting all payments to any author of an article, published letter or abstract concerning the off-label uses of Neurontin at issue in this litigation, as well as the same regarding the seventy-five physicians identified by the plaintiffs. For example, defendants need not produce the payments to persons paid to write articles only regarding uses of Neurontin not at issue in this case, but as to authors paid to write at least one article regarding the off-label uses at issue in this litigation, defendants shall produce all the payments to such a person. This discovery is relevant to the degree of control or influence defendants may have exercised over these authors.

Plaintiffs shall produce to defendants the address of each of the seventy-five physicians, if known, no later than January 2, 2006.

B. Plaintiffs seek each and every request made for reimbursement of funds spent purchasing Neurontin and every document reflecting a response to these requests. Defendants object to any discovery on the topic of refunds. Defendants shall produce, by April 15, 2007, the total dollar amount of reimbursements paid, the number of requests received and the number of

4

requests honored as well as copies of the documents reflecting or describing the policy or

standard(s) applied in determining whether to honor such requests. Finally, defendants shall

produce the name(s) of the employee(s) responsible for supervising the Neurontin

reimbursements. Defendants may report the foregoing by calendar year or by fiscal year,

whichever method they prefer.

   C.  Physician Tracking Reports

   Counsel for defendants have stated that they have agreed to produce the IMS data in their

possession once the Plaintiffs execute the appropriate confidentiality agreements.  The Court has

already set a schedule for the tendering of the agreements and the production of the underlying

data.  In addition, plaintiffs also seek the so-called "cuts" or reports prepared at various times

from the foregoing underlying data.  Defendants shall produce those cuts, as they have already

agreed, that are within the files for the Neurontin Marketing Team.

   D.  Internal Neurontin Web Site

   Plaintiffs believe that defendants have (or had) an internal Neurontin web site containing

journal articles, research reports and internal reports pertaining to Neurontin for the use of

defendants' employees in the marketing and promotion of Neurontin. Marketing type documents

within such a website would also appear likely.  Whether such a web site exists is unclear.

Plaintiffs are proceeding on "information and belief" in asserting the existence of the site and

defendants, while not categorically disputing the existence of some sort of internal Neurontin

website, do state to date they have not located the "described website."   Obviously journal

articles and research reports are responsive to Plaintiffs' efficacy requests and shall be produced

whether or not they exist within an internal Neurontin website.   An internal Neurontin website,

5

if it exists, appears likely to be responsive to various of plaintiffs' document requests pertaining
to efficacy and marketing, accordingly it shall be produced.

E. Operating Plans.  Plaintiffs seek operating plans and minutes for all operating
meetings within each department of the Defendants.  Defendants have agreed to produce
operating plans found in the files of the Neurontin marketing team.  They further assert that
operating plans that relate to the marketing of Neurontin will be found in the Neurontin
Marketing Team's files regardless of the source of the plan.  This suffices.

6.     Motion to Compel Interrogatory Answers (Docket #554)

At the outset, a fundamental dispute divides the parties – whether defendants may
answers the interrogatories by reference to documents and, if so, under what circumstances and
with what level of specificity.  Plainly the Rules permit, under appropriate circumstances,
answering by reference to documents with the appropriate specification described in Rule 33.
On the other hand, the Rules do not permit defendants to answer the interrogatories by a general
reference to millions of pages of documents.  To date, Defendants have not produced the
documents from which the interrogatory answers may be derived nor have they supplemented
their answers with their Rule 33 specifications.  I note that, as a general matter, defendants are
obviously more familiar with their documents than plaintiffs.  In addition, defendants are
understandably undertaking a careful search for and review of possibly responsive documents in
advance of the production of any documents.  Accordingly, the Court expects that the
defendants' Rule 33 specification, if defendants answer by reference to documents, would
reasonably direct the plaintiffs to the relevant documents from which the interrogatory answer
may be derived.

A. Neurontin Events and Articles.  What was said about Neurontin for off-label uses at issue in this litigation, and the defendant's degree of control or involvement in these statements form core issues in this case.  Plaintiffs argue that Defendants must produce this type of discovery regarding every "Event" and "Article" which terms Plaintiffs have defined broadly. Defendants have agreed to produce discovery in response to these requests from the files of the persons "responsible for the marketing of Neurontin." However, defendants complain that plaintiffs seek a "litany of information about each event." Plaintiffs are plainly entitled to this information both from the medical liaison and regarding the organized seminars, continuing medical education programs, consultants meetings, advisory board meetings, published articles or materials published at, for example, the CMEs, i.e. the various parts of the organized marketing program alleged in the complaints.

Defendants shall explain how they propose to search for and produce the responsive information called for by these interrogatories with specific information regarding what will be searched and why these searches are reasonably likely to produce all of the responsive information.   For example, it does not appear to the Court that the files of the national Neurontin marketing team would likely have all of the responsive information possessed by the defendants. Defendants shall file this explanation by the date for filing motions for the January hearing. Plaintiffs shall respond by the date for filing oppositions.

B. Defendants' Employees.

In addition to the formal team discovery defendants offered in their opposition, Defendants shall produce, for the relevant time period, the identities of the employees who had responsibility for deciding whether to seek approval by the FDA for the off-label indications at

7

issue in this litigation.  Likewise, Defendants shall produce the identities of the employees

creating the marketing budget(s).

    C.  Databases.

    In light of the response of the Defendants and the commitments contained therein,

Plaintiffs' Motion in this respect is DENIED.

    D.  Marketing Strategies.

    Interrogatories 18 and 20 concern national marketing plans for different time periods and,

accordingly, defendants' response, searching within and answering from the national Neurontin

marketing team files,  appears sufficient.  Interrogatories 19 and 21 concern the implementation

on the regional or local level of the national strategies for each of the respective time periods.

Searching within and answering from the national Neurontin marketing team files does not

appear sufficient for a response to these two interrogatories.  At least during some periods of

time, regional offices engaged in marketing of Neurontin for off-label uses at issue in this

litigation.  Defendants shall propose how they intend to search for and answer these two

interrogatories at the time for filing motions for the January hearing.  Plaintiffs may respond at

the time for oppositions.  Counsel must meet and confer prior to the filing dates.

    E.  Warner-Lambert Employees.

    Defendants shall produce the identities of any Warner-Lambert sales representatives,

territory managers, medical liaisons or marketing department employees whose employment

ended within one year before or after the June 2000 merger of Warner-Lambert and Pfizer.

Defendants may further limit the foregoing response to those persons involved in the sales or

marketing of Neurontin.

F.  Legal Proceedings.  These requests for the case citations and pleadings in every case in which defendants' challenged the admissibility or sufficiency of the opposing party's scientific evidence of causation are DENIED.  The discovery is irrelevant and unduly burdensome regarding the scientific standard by which efficacy is determined.  Insofar as Plaintiffs also seek the discovery to assist in their cross-examination of defendants' experts, the blanket requests are overly broad and unnecessary at this time.

IV.  Other (All Actions)

The temporal end date for fact discovery in all actions is May 31, 2004, in light of Judge Saris' December 12, 2006 ruling.

## CONCLUSION

For the foregoing reasons, the parties' Stipulation and Joint Order in Products Liability Actions (Docket #576) is ADOPTED in part, with additions and changes noted above.  The Motion to Compel Non-Parties to Respond to Subpoenas (Docket #549) is ALLOWED in part and DENIED in part. The plaintiffs' Motion to Compel Answers to Interrogatories (Docket #555) is ALLOWED in part and DENIED in part.

SO ORDERED.

/s/ Leo T. Sorokin

_____

United States Magistrate Judge