UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981 |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCMIE LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY, | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC. | |
| and | |
| AETNA, INC. v. PFIZER INC. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF FINANCIAL DATA RELATED TO NEURONTIN**

Sales and Marketing Plaintiffs ("Plaintiffs") seek an order requiring Defendants to produce occurrence level financial data related to Neurontin. Pharmaceutical companies, like all major corporations, meticulously track expenditures related to each of its products on an occurrence basis. That is, when they write a check for a promotional event, spend money on detailing, pay a vendor, place an advertisement, spend money on research and development, or

do any of hundreds of things necessary to market and sell their product, they record and track those expenditures according to the product or products to which the payment relates. They record who the payment is made out to, for what purpose and a host of other relevant information related to the payment. Such data is not unlike the check register an individual would maintain to keep track of personal finances. Pharmaceutical companies also often record the expenditure according to the particular indication for which the drug is being promoted. In this way they can track the return on their investment in various promotional activities.

To date, Defendants have produced only aggregate level data related to expenditures on Neurontin for a four year period from 2001-2004. This data is of such an aggregate nature as to be virtually useless. To date, Defendants have failed to produce the underlying occurrence level data. The data is relevant and it is necessary in order for Plaintiffs' experts to properly perform their liability and damage analysis, particularly in light of the Court's recent class certification decision which unequivocally requires Plaintiffs to pursue separate classes for each off-label indication. Accordingly, Plaintiffs seek an order requiring Defendants produce all occurrence level financial information concerning expenditures related to Neurontin from 1994 to 2004, including any data relating such expenditures to a particular indication.

## I.   BACKGROUND

On March 11, 2005 Plaintiffs served their First Request for Production of Documents on Defendants ("First RFP"). On April 11, 2005 Defendants served objections to Plaintiffs' First RFP. See Exhibit A attached hereto. In their First RFP Plaintiffs requested that certain financial information be produced related to a host of payments related to Neurontin, including, among others, payments to any physicians (Request No. 37), payments to attendees at advisory board meetings and CMEs (Request Nos. 81c, 82c, 83c) payments to researchers (Request No. 115),

payments to authors of articles (Request No. 121), and payments to specific doctors (Requests Nos. 129, 132). Defendants produced some paper documents related to some of these issues but no occurrence level data was forthcoming from Defendants.

On October 19, 2006 Plaintiffs served their Third Request for Production of Documents on Defendants ("Third RFP"). Defendants filed their objections to Plaintiffs' Third RFP on November 20, 2007. See Exhibit B attached hereto. In the Third RFP Plaintiffs put a finer point on the issue and specifically requested all accounting documents and data related to the marketing and promotion of Neurontin, including occurrence level data disaggregated by indication (Request No. 12), all financial documents and data related to research and development in connection with Neurontin (Request No. 14) and all financial and/or accounting documents and data reflecting payments made to all consulting physician, conference planners and CME providers. (Request No. 15).

On April 16, 2007 Defendants, citing only their objections to Plaintiffs' First RFP, and in connection with "plaintiffs' request for information regarding Neurontin's gross sales, gross unit sales, net sales, price off-sets, and budgets" produced a 19 page document bate stamped MDL_SM_01195 through 01207. See letter dated April 16, 2007 from Debbie MacGregor to Plaintiffs' counsel attached hereto as Exhibit C (w/o attachment)[1] at ¶4.

The document produced by Defendants provides information on gross sales, net sales, total revenue, total cost of sales, total marketing and distribution, total R&D by quarter for the years 2000 through 2004. Under some of these categories it provides a further breakdown for the same time period. For example, among other categories under "total marketing and

---

[1] A copy of the attachment is not provided herewith as it was designated "Confidential" when produced by Defendants and would necessitate a filing under seal. If the Court requires a copy Plaintiffs would provide one along with a motion to file under seal or alternatively could make a copy available to the Court during oral argument.

3

distribution" the document breaks out quarterly expenditures on such items as "Field Samples," "Field Aids" and "Field Force Speaker Programs." There is no further level of detail provided.

## II.     DISCUSSION

Defendants have refused to produce financial data related to Neurontin, in electronic format, at the occurrence level. In a recent meet and confer related to this issue Defendants claim Plaintiffs agreed to limit their requests to such aggregate information as was produced on April 16, 2007. Plaintiffs did not. Even if Plaintiffs had so limited their requests, the landscape has changed in that the Court in its Memorandum and Order dated August 29, 2007 related to class certification clearly held that "[t]hough defendants employed the same marketing strategy for all of the off-label uses, plaintiffs will need to prove up fraud use by use." Memorandum and Order at 36. Ironically, as the Court points out it was Defendants who contend that the originally proposed class could not be certified because "plaintiffs' allegations of fraud are unique for each off-label indication." Memorandum and Order at 35. Having argued that Plaintiffs must prove up their case indication by indication, Defendants now refuse to produce occurrence level financial data that would allow Plaintiffs to do just that.

The relevance of the occurrence level data, particularized by indication, is almost self evident. The data would allow Plaintiffs to track payments to particular vendors for particular types of promotional events related to particular off-label indications. The data will allow Plaintiffs to account for expenditures made in furtherance of legitimate on-label uses of Neurontin as opposed to off-label promotional expenditures. The detailed data would allow Plaintiffs to track expenditures on particular types of off-label promotion, for particular indications, over time. Aggregate numbers, even broken out by quarter, are completely insufficient for these purposes.

4

The burden to Defendants is minimal in that the data requested is electronic, does not require review for privilege and can be provided on disk or other electronic medium. The data is routinely produced in cases involving pharmaceutical products and it is regularly relied upon by experts in order to opine on issues related to liability and damages.

### III.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that Defendants be ordered to produce to Plaintiffs all occurrence level financial information concerning expenditures related to Neurontin from 1994 to 2004, including any data relating such expenditures to a particular indication.

Dated: September 6, 2007

By:   **/s/ Thomas M. Sobol**
Thomas M. Sobol
Edward Notargiacomo
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142

*Plaintiffs' Liaison Counsel and Member of the Class Plaintiffs' Steering Committee*

By:   **/s/Barry Himmelstein**
Barry Himmelstein, Esquire
Lieff Cabraser Heimann & Bernstein
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By:   **/s/Don Barrett**
Don Barrett, Esquire
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By: **/s/Daniel Becnel, Jr.**
Daniel Becnel, Jr., Esquire
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

By: **/s/James Dugan**
James R. Dugan, II, Esquire
Dugan & Browne, PLC
650 Poydras Street, Suite 2150
New Orleans, LA 70130

By: **/s/Thomas Greene**
Thomas Greene, Esquire
Greene & Hoffman
125 Summer Street
Boston, MA 02110

*Members of the Class Plaintiffs'
Steering Committee*

By: **/s/Richard Cohen**
Richard Cohen, Esquire
Lowey Dannenberg Bemporad
& Selinger, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY  10601

By: **/s/Linda Nussbaum**
Linda Nussbaum, Esquire
Kaplan Fox & Kilsheimer LLP
805 Third Avenue
New York, NY 10022

*Members of the Non-Class
Plaintiffs' Steering Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on September 6, 2007.

/s/Edward Notargiacomo