UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
                                :    MDL Docket No. 1629

In re:   NEURONTIN MARKETING,      :
           SALES PRACTICES AND        :    Master File No. 04-10981
           PRODUCTS LIABILITY LITIGATION  :

                                  :    Judge Patti B. Saris
------------------------------------------------------------x
                                  :    Magistrate Judge Leo T. Sorokin

THIS DOCUMENT RELATES TO:       :
                                    :
       PRODUCTS LIABILITY ACTIONS    :
                                    :
------------------------------------------------------------x

## MEMORANDUM IN OPPOSITION TO
## PFIZER DEFENDANTS' MOTION TO ENFORCE AND
## MODIFY DISCOVERY ORDERS NO. 7, 8, 11 AND 13

Products Liability Plaintiffs, (hereinafter "Plaintiffs"), hereby oppose the motion by

Defendants Pfizer Inc. and Warner-Lambert Company (hereinafter "Defendants"), to enforce and

modify Discovery Orders No. 7, 8, 11 and 13, and to strike the *Smith* case from the Track One

cases. Striking the *Smith* case or any delay in the expert disclosure and motion schedule would

defeat the underlying purpose of establishing a group of Track One cases: to advance this

litigation. Instead, Defendants should proceed to select a Track One trial workup case from the

remaining six Track One cases and proceed on the schedule set forth in Discovery Order No. 13.

(ECF Doc # 801.)

As a first alternative, Defendants should select a Track One trial workup case from the

remaining six Track One cases; the parties would proceed on the schedule detailed in Discovery

Order No. 13 as to the *Smith* case in regard to the expert and motion schedule; and Defendants

would be provided with an additional four weeks in the schedule to select one of the Track One

cases from the remaining six Track One cases. Thereafter, as to Defendants' Track One

selection, the parties would exchange expert disclosures and submit motions on dispositive issues on a separate discovery schedule to be decided by the Court. It should be noted that five of the remaining six Track One cases were randomly selected by the Court.

As a second alternative, the Court should retain the current expert disclosure and motion schedule solely with respect to general causation (i.e., whether Neurontin has the capacity to contribute to mood and behavioral disturbances, particularly suicidal behavior). The *Smith* case would remain as Plaintiffs' Track One selection, and Defendants would select one of the remaining six Track One cases as to which the parties have already completed substantial fact discovery. The schedule in regard to expert disclosure concerning specific causation in both the *Smith* case and Defendants' Track One selection would be adjusted to provide the parties with an additional four weeks to provide corresponding expert disclosure, and the Court would schedule deposition and dispositive motion deadlines for these two specific cases.

As a third alternative, the Court should retain the current expert disclosure and motion schedule solely with respect to general causation. Expert disclosure and dispositive motions with regard to the Track One cases would be temporarily suspended pending the resolution on general causation. The Court could also begin the process of selecting a Track Two set of cases so that discovery could continue to advance the litigation forward.

Moreover, Plaintiffs and counsel oppose the imposition of any costs or sanctions for the voluntary dismissal with prejudice of the *Strickland* case or the withdrawal of Plaintiffs' counsel in the *Mendoza* and *Fenelon* cases. Plaintiffs and counsel did not have any dilatory motive in connection with the motion for voluntary dismissal with prejudice in *Strickland* or counsel's motion to withdraw as attorneys in *Mendoza* and *Fenelon*. Indeed, the facts show quite the contrary: (1) Defendants cannot deny that these cases were commenced in good faith, and, based

upon that good faith belief, Plaintiffs' counsel obtained the necessary medical records, participated in all of the same depositions as Defendants' counsel, spent an extraordinary amount of time and resources in prosecution of these actions; (2) Plaintiffs and counsel diligently prosecuted these cases in accordance with the Court's discovery schedule; (3) in *Strickland,* it was only upon the completion of the deposition testimony of Plaintiffs and Mr. Strickland's treating physicians that Plaintiffs and counsel had sufficient information to evaluate and ultimately arrive at the determination that the action be dismissed with prejudice, and Defendants were advised of Plaintiffs' decision to voluntary dismiss this case at the earliest opportunity; (4) a dismissal with prejudice in *Strickland* provides Defendants with the same result as if they had succeeded at trial, but without the costs of expert depositions, motion practice, or a lengthy trial; and (5) Plaintiffs' counsel had no alternative than to seek leave to withdraw in *Mendoza* and *Fenelon*; both Mr. Mendoza and Ms. Fenelon may seek the representation of new counsel to continue their actions.

## PRELIMINARY STATEMENT

Plaintiffs' counsel had proposed the selection of ten Track One cases for full discovery and ultimate trial in order to advance this litigation in the most efficient manner. After fact discovery was completed in the ten Track One cases, Plaintiffs Bernard and Cathy Strickland, in consultation with counsel, agreed to voluntarily dismiss their case with prejudice, and the appropriate motion has therefore been filed with the Court. In this MDL litigation, as inevitably routinely occurs in other MDL litigations, the regular discovery process has yielded information which has advanced the *Strickland* case to a potential conclusion and has necessitated the dismissal of a bellwether case. *See, e.g., In re Hanford Nuclear Reservation Litig.*, 2007 U.S. App. LEXIS 19291 at *11 (9th Cir. 2007) (where parties agreed on twelve bellwether plaintiffs,

and six of these plaintiffs had their claims dismissed on dispositive, pre-trial motions).

Furthermore, circumstances beyond the control of Plaintiffs and counsel have dictated that

Plaintiffs' counsel move for leave to withdraw as counsel in *Mendoza* and *Fenelon*.

      The ten Track One cases were selected in order to fulfill the ultimate goal of the Court

and the parties to this litigation, namely, to efficiently bring the litigation to a resolution: either

by trial, settlement or dismissal. In part, the dismissal with prejudice of *Strickland* is evidence

that the litigation is proceeding in a manner that one would normally anticipate in an MDL

litigation. Presently, not counting the *Smith*, *Strickland*, *Mendoza* and *Fenelon* cases, there are

six cases remaining in the Track One cases as to which discovery has occurred in a manner

consistent with the Court's discovery schedule. This litigation should move full steam ahead

with Defendants selecting a Track One trial workup case from the remaining six Track One cases

and for expert disclosure and motions to follow on the schedule as detailed in Discovery Order

No. 13 (ECF Doc. # 801). It would defy logic to strike the *Smith* case, as requested by

Defendants, after the parties and counsel have taken substantial time and effort to complete fact

discovery in these cases; there is no basis to deprive Ruth Smith of her right to move forward in

her case because of the circumstances that have arisen in *Strickland*.

      The record does not reflect that it was counsel's intention at any time and in any way to

disrupt or delay the Track One selection process or schedule or to eliminate Defendants' two

Track One selections. Plaintiffs' counsel have proceeded in accordance with all of the discovery

orders issued by the Court. Plaintiffs and counsel have diligently provided all of the required

discovery and in a timely manner. Defendants cannot deny that the *Strickland* action was

commenced in good faith. The specific depositions in this case were just completed in the latter

half of June 2007, expert disclosure and summary judgment motions in the Track One cases are

not due, pursuant to Discovery Order No. 13, until October 22, 2007, and January 11, 2008,

respectively. Plaintiffs and counsel have proceeded as expeditiously as possible in the discovery

phase of the *Strickland, Mendoza* and *Fenelon* cases, and in seeking the appropriate relief

through motion practice.

Plaintiffs and counsel would have been remiss in making a premature determination that

the Stricklands would be unable to prove their claim that Mr. Strickland's injuries were caused

by his ingestion of Neurontin without the benefit of the depositions of Mr. Strickland's treating

physicians who were in the position to provide additional information concerning his treatment

and/or the provision of samples of Neurontin to Mr. Strickland which may not have been noted

in the medical records. Mr. Strickland's treating physicians were not deposed until June 11-12,

2007. Furthermore, Plaintiffs' counsel have absolutely no alternative but to move to be relieved

as counsel in *Mendoza* and *Fenelon*, where irreparable differences in the direction of the legal

services to be provided to these Plaintiffs prevent counsel from continuing to represent these

clients.

## ARGUMENT

**A.      The Conduct of Plaintiffs and Counsel in This Litigation
         Does not Warrant Imposition of Any Sanctions.**

Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, "an action shall not be

dismissed at the plaintiff's instance save upon order of the court and upon such terms and

conditions as the court deems proper." The decision to grant a voluntary dismissal is within the

sound discretion of the court. *United States v. Lyman,* 125 F.2d 67, 70 (1st Cir. 1942); *Zagano v.

Fordham Univ.,* 900 F.2d 12, 12-13 (2d Cir. 1990). The determination of a district court in

granting a motion to dismiss under Rule 41(a)(2) is reviewable only on the grounds of abuse of

discretion. *Alamance Indus., Inc. v. Filene's*, 291 F.2d 142, 146 (1st Cir.), *cert. denied*, 368 U.S. 831, 82 S. Ct. 53, 7 L. Ed. 2d 33 (1961).

It is well settled that "'(t)he basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced.'" *Puerto Rico Maritime Shipping Auth. v. Leith*, 668 F.2d 46, 50 (1st Cir. 1981) (quoting from *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976).

Former Chief Judge Freedman has found "highly persuasive" the position that where a plaintiff has moved to dismiss her own claim with prejudice, the court is without discretion and must grant the motion, because "'when a dismissal with prejudice is granted, it does not harm the defendants:  The defendant receives all that he would have received had the case been completed.'" *Shepard v. Egan*, 767 F. Supp. 1158, 1165 (D. Mass 1990) (citing to *Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964), and quoting from *Schwarz v. Folloder*, 767 F2d 125, 129 (5th Cir. 1985)); *see also Century Mfg. Co., Inc. v. Central Transp. Int'l, Inc.*, 209 F.R.D. 647, 648 (D. Mass 2002).

The general rule is that when a plaintiff moves for voluntary dismissal with prejudice, the defendant is not entitled to attorneys' fees and costs.  *See Aerotech, Inc. v. Estes*, 110 F.3d 1523, 1528 n1 (10th Cir. 1997); *Colombrito v. Kelly*, 764 F.2d 122, 133-34 (2d Cir. 1985); *Cauley v. Wilson*, 754 F.2d 769, 772 (7th Cir. 1985); *Smoot v. Fox*, 353 F.2d 830, 833 (6th Cir. 1965); *Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11, 18 (E.D.N.Y. 1996).

Here, Defendants' argument that the playing field be leveled or Plaintiffs and counsel be punished for moving to dismiss *Strickland* with prejudice and to withdraw as counsel in *Mendoza* flies in the face of reality.  As the Court is well aware, Defendants were not the only parties who participated in all of the fact discovery.  Contrary to Defendants' absurd allegation

6

that Plaintiffs and counsel had somehow intended to make a "mockery" of the process, Plaintiffs'
counsel also obtained the medical records, participated in all of the same depositions as
Defendants' counsel, and spent an extraordinary amount of time and resources in the prosecution
of these actions in the belief that each had viable causes of action.

  Defendants point to Mr. Strickland's and Mr. Mendoza's histories of prior psychiatric
problems.  Such prior psychiatric histories by no means demonstrate that Plaintiffs could never
have viable causes of action.  After all, it was Defendants who admitted in their guilty plea in the
*Franklin qui tam* action that they marketed Neurontin off label for a host of conditions, including
bipolar disorder and for pain.  It was reasonably foreseeable that their illegal off-label marketing
targeted and inevitably caused such vulnerable patients to be prescribed and to ingest Neurontin.
The fact that a plaintiff has a prior psychiatric history does not preclude a finding of proximate
cause, and Defendants' assertions to the contrary lack expert proof and opinion.

  Moreover, if Mr. Mendoza and Ms. Fenelon hire new counsel to continue the prosecution
of their actions, any discovery efforts by Defendants will not be utilized in the Track One phase,
but simply at a later point in the litigation process.  In any event, Defendants as well as Mr.
Mendoza and Ms. Fenelon will have the benefit of the pre-trial discovery already completed
during the Track One phase.

  Defendants, not Plaintiffs, benefit from the voluntary discontinuance with prejudice of
the *Strickland* case because Defendants will receive the outcome they desire and at the same time
save the cost of  retaining an expert for testimony regarding specific causation and a potentially
lengthy trial.  Perhaps it is Defendants who should have requested leave to move for summary
judgment or requested that the Stricklands voluntarily dismiss their case prior to the completion
of fact discovery if Defendants' counsel were so certain that this case should have been

dismissed so much sooner. Once the decision was made by the Stricklands to dismiss their case with prejudice, Plaintiffs' counsel promptly contacted Defendants' counsel so that any further efforts on their part to pursue further discovery or expert testimony regarding specific causation would cease.

There has been no showing of bad faith by Plaintiffs and counsel in the *Strickland, Mendoza* and *Fenelon* cases during the entire discovery process as clearly evidenced by the fact that Defendants have not sought the intervention of this Court to compel Plaintiffs to comply in providing any outstanding discovery. Indeed, throughout the entire litigation process, it has been Defendants who have been delinquent in complying with the discovery orders of this Court. In fact, although the Court ordered that Defendants complete document production by April 30, 2007, pursuant to Discovery Order No. 12, Defendants produced documents to Plaintiffs as late as the week of August 13, 2007. Indeed, Defendants continue to be in violation of this Court's Discovery Order No. 12, as Plaintiffs have recently been advised of their intention to produce Standard Operating Procedures for Standard Response Documents by September 17, 2007. *See* email from Defendants' attorney, annexed hereto as Exhibit A. Additionally, there continue to be outstanding depositions of Defendants' witnesses previously scheduled by the parties, but to accommodate Defendants, the depositions have been cancelled without a new date, or have been rescheduled to take place in October 2007.

In *In re Welding Fume Prods. Liab. Litig.*, 2006 U.S. Dist. LEXIS 16407 (N.D. Ohio 2006), plaintiffs in both the second (*Morgan*) and third (*Landry*) bellwether cases filed motions to voluntarily dismiss, which provoked defendants to move for sanctions on the grounds that the decisions of plaintiffs' counsel to proceed with the two cases despite early and obvious warning signs about the veracity of plaintiffs' claims forced both the Court and the defendants to waste

8

substantial time and money preparing frivolous or fraudulent cases for trial. *Id.* at *15. Landry asserted that he decided not to proceed to trial because his employer made clear its displeasure in having to comply with discovery requests and allowing him time off from work. *Id.* at *16. Defendants asserted, *inter alia*, that Landry had a history of alcohol and drug use, which could have caused his alleged neurological symptoms. *Id.* The decision by counsel for Morgan not to pursue the case was precipitated by the bombshell revelation at plaintiff's deposition of a surveillance videotape of plaintiff engaging in various household tasks that he had earlier testified under oath he was unable to do because of his neurological injuries. *Id.* at *18. In both cases, defendants argued that plaintiffs' counsel had failed to conduct adequate, independent pre-trial investigation of plaintiffs' claims before choosing these two cases as bellwether cases, and that plaintiffs should reimburse defendants for the expenses of preparing for trial in the two cases. *Id.* at *17, *18-19.

After denying defendants' requests for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, the Court in *In re Welding Fume Prods. Liab. Litig.* further denied defendants' requests for sanctions in both cases pursuant to 28 U.S.C. § 1927, concluding that defendants had not shown that plaintiffs' counsel adopted any obstructive, vexatious, unreasonable, or frivolous positions in pursuing the two cases, *id.* at *28, and explained that:

> Having carefully reviewed the evidence in this case, the Court concludes the circumstances leading up to the dismissal of the *Morgan* and *Landry* cases do not come close to supporting an award of sanctions under § 1927. At no time did plaintiffs' counsel pursue claims they should have known were meritless; at no time did plaintiffs' counsel undertake any obstructive tactics; and at no time did plaintiffs' counsel assert a frivolous position.

*Id.* at *24 (emphasis added).

In another decision by the *Welding Fume* MDL Court, *Peabody v. Lincoln Elec. Co.*, 2006 U.S. Dist. LEXIS 66103 (N.D. Ohio 2006), the MDL Court "found out after the court day

that there were some complications, let's say, as it relates to Mr. Peabody and his case," namely, "that defendants had discovered certain information suggesting plaintiff Peabody had been less than fully forthcoming about his medical history during discovery," which "[t]he Court immediately recognized . . . might lead to a decision by plaintiffs not to pursue the *Peabody* case to trial." *Id.* at *2, *2 n2.

The MDL Court in *Peabody* gave plaintiffs the choice of either moving to dismiss *Peabody* with prejudice, or resuming preparation for trial of the *Peabody* case, and denied defendants' request for fees and costs, finding that "plaintiffs' counsel were equally surprised to learn of their own clients' misrepresentations, despite counsel's own expenditures of substantial resources in investigating the *Peabody* case and preparing it for trial," and that "an Order that would require reimbursements of fees and costs *any* time a plaintiff decides not to pursue his claims after defendants have begun any form of 'affirmative' discovery is too aggressive a change in the parties' normal obligations." *Id.* at *4, *5 (emphasis in original).

Similarly, the circumstances in *Strickland* and *Mendoza* do not come close to supporting an award of sanctions under § 1927, particularly in view of the fact that it was only after the completion of depositions of Mr. Strickland's treating physicians, who are not within Plaintiffs' control, that it could be determined that Plaintiffs would be unable to prove their claim that Mr. Strickland's injuries were caused by his ingestion of Neurontin. The conduct of Plaintiffs and counsel was not in any manner vexatious and did not cause a multiplicity of proceedings. In fact, due to the conscientious conduct of Plaintiffs and counsel in complying expeditiously with the Court's discovery and case management orders, and promptly advising counsel for Defendants regarding the Stricklands' intention to voluntarily dismiss their case, the *Strickland* case has been brought to a potentially timely resolution, and there are nine other cases subject to

the Court's current fact discovery deadline of September 15, 2007, where substantial fact discovery has been completed. In contrast, Defendants are in violation of the Court's orders to complete their production of discovery by April 30, 2007.

The record before the Court makes it clear that the conduct of Plaintiffs and counsel has not caused the filing of any "duplicative motions", and Plaintiffs have been in compliance with the orders of this Court. Plaintiffs have exhibited serious regard for the orders of this Court as evidenced by their compliance with the discovery orders. In this litigation, there is absolutely nothing in the record that indicates that Plaintiffs or counsel vexatiously multiplied the proceedings or that their conduct has been unreasonable or harassing or annoying. Plaintiffs respectfully submit that there are no justified grounds for the imposition of sanctions and that this Court deny Defendants' request for sanctions in its entirety.

**B.**     **The Goal of Establishing a Group of Track One Cases Is to Advance This Litigation; Therefore Defendants Should Select a Case from the Remaining Six Cases and the Parties Should Proceed as Scheduled Pursuant to Discovery Order No. 13**

The striking of the *Smith* case or any delay in the expert disclosure and motion schedule would defeat the underlying purpose of establishing a group of Track One cases, that is, to advance this litigation. Defendants should proceed to select a Track One trial workup case from the remaining six Track One cases and proceed on the schedule detailed in Discovery Order No. 13. (ECF Doc # 801). As Defendants noted in their moving papers, six cases were randomly selected by the Court in part to "mitigate any information disadvantage under which Defendants may labor at this point." Defs.' Mem., p.2. Of the cases remaining Track One cases, five were randomly selected by the Court. These five cases have been through an extensive discovery process and neither side at this point has a disadvantage in terms of information. Whatever disadvantage Defendants allege that they may have incurred due to the voluntary dismissal with

11

prejudice of *Strickland* or Plaintiffs' counsel's motion to withdraw in *Mendoza* or *Fenelon* may be rectified in the selection process of the next group of Track Two cases.

As a first alternative to the above, Pfizer Defendants should select a Track One trial workup case from the remaining six Track One cases, and the parties would still proceed on the schedule detailed in Discovery Order No. 13 as to the *Smith* case in regard to the expert and motions schedule. However, Defendants would be provided with an additional four weeks in the schedule to select one of the Track One cases from those remaining and prepare same for expert disclosure and dispositive motion practice on a later schedule. This alternative would allow the parties additional time – at least a month – to prepare the case that is selected with expert testimony regarding the issue of specific causation.

As a second alternative, this Court should retain the current expert disclosure and motion schedule <u>solely</u> with regard to general causation. It is clearly evident that all of the parties to this litigation have had sufficient time to prepare, in conjunction with their experts, their theory of the case in regard to general causation, and this aspect of the litigation should not be further delayed. The *Smith* case would remain as Plaintiffs' Track One selection and Defendants would select another case in a manner consistent with the first alternative proposal above. Thereafter, both *Smith* and Defendants' Track One selection would have an additional four weeks in the discovery schedule as set forth in Plaintiffs' first alternative proposal.

As a third alternative, the parties should exchange expert disclosure and proceed solely with expert depositions and dispositive motions regarding general causation as currently scheduled. The Track One cases may be temporarily set aside in terms of expert disclosure and dispositive motions pending the resolution on general causation. For instance, in *In re Viagra Prods. Liab. Litig.*, Judge Magnuson determined that it would promote judicial efficiency to

initially focus on the sole issue of general causation and to stay other fact and expert discovery on other issues including specific causation. Judge Magnuson noted that the early resolution on the issue of general causation was consistent with "The Manual for Complex Litigation § 11.422 (4[th] ed. 2004), which recommends the use of phased, sequenced, or focused discovery where targeted information might provide the foundation for resolution of a dispositive motion." *See* Scheduling Order Relating to Phase I of Discovery, pp.1-2, annexed hereto as Exhibit B; *see also In re Hanford Nuclear Reservation Litig., Jaros, v. E.I. Dupont De Nemours & Co.*, 292 F.3d 1124 (9th Cir. 2002) (Court divided discovery into several phases, and in Phase II, Court directed the parties to proceed with generic causation and deferred specific causation for a subsequent time.) Plaintiffs submit that it would be appropriate and consistent with The Manual for Complex Litigation to proceed with expert disclosure and dispositive motions solely on the issue of general causation. The Court can also begin the process of selecting a Track Two set of cases so that discovery can continue to advance the litigation forward.

## CONCLUSION

In view of the above, Plaintiffs respectfully request that this Court deny Defendants' motion in its entirety, including their request to strike the *Smith* case and for sanctions, and order that Defendants select a Track One trial workup case from the remaining six Track One cases and proceed on the schedule set forth in Discovery Order No. 13, or that this litigation proceed consistent with one of Plaintiffs' three alternatives as outlined in detail above.

13

Dated:  September 11, 2007

Respectfully submitted,

***Members of Products Liability
Plaintiffs' Steering Committee***

By:    **/s/ Andrew G. Finkelstein**

Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY  12550


By:    **/s/ Jack W. London**

Jack W. London, Esquire
Law Offices of Jack W. London
    & Associates
106 E. 6th Street, Suite 700
Austin, TX  78701


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on September 11, 2007.


**/s/ Andrew G. Finkelstein**

Andrew G. Finkelstein