UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------ x
In re: NEURONTIN MARKETING,
       SALES PRACTICES AND
       PRODUCTS LIABILITY LITIGATION
------------------------------------------------ x

THIS DOCUMENT RELATES TO:

PRODUCTS LIABILITY ACTIONS

------------------------------------------------ x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

**DEFENDANTS' OMNIBUS OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS WITH PREJUDICE THE *STRICKLAND* INDIVIDUAL ACTION, MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR PLAINTIFF JAMIE FENELON, MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR PLAINTIFF MICHAEL MENDOZA, AND MOTION TO COMPEL DEFENDANTS TO CONDUCT THE DEPOSITION OF PLAINTIFFS' GENERAL/SPECIFIC CAUSATION EXPERT AS PREVIOUSLY SCHEDULED AND AGREED UPON**

**I.    INTRODUCTION**

After sitting back and permitting defendants to conduct months of discovery, plaintiffs now seek to eliminate the two Track One cases chosen by defendants, including *Strickland v. Pfizer*, which defendants had selected for trial workup. Plaintiffs' counsel seek to dismiss *Strickland* because it is a case they now concede they could never win, and they move to withdraw from *Mendoza v. Pfizer* and *Fenelon v. Pfizer* on grounds of "irreconcilable differences." Aside from the obvious costs to defendants of wasted discovery, plaintiffs' gamesmanship threatens to (i) undermine the Track One case selection and discovery process ordered by the Court and (ii) unfairly prejudice defendants. Indeed, plaintiffs' request to dismiss *Strickland* and withdraw as counsel from *Mendoza v. Pfizer* (defendants' second case selection under Discovery Order No. 8) and *Fenelon v. Pfizer* (a Track One case randomly selected by the

2625252v1

Court), makes a mockery of the Court's balanced Track One selection process and case-specific discovery process.[1]

Accordingly, pursuant to the Court's authority to attach conditions to Rule 41(a)(2) dismissals, defendants request that the Court prohibit plaintiffs from retaining *Smith v. Pfizer* as their designated trial workup case, require selection of two new cases for trial workup from the remaining Track One cases randomly selected by the Court, and permit the parties to recommend a new Track One discovery schedule.[2] Alternatively, and at a minimum, the Court should allow defendants to choose two new Track One cases from the inventory of plaintiffs' counsel Finkelstein & Partners, extend the current schedule to allow defendants to conduct initial, limited discovery, designate a case for trial workup, and conduct complete discovery in that case. Under either alternative, the Court should award defendants their costs, expenses, and attorneys' fees incurred in the defense of *Strickland*, *Mendoza*, and *Fenelon*.

Plaintiffs have also filed a Motion to Compel defendants to take the deposition of one of their causation experts on October 18 and 19, 2007. The Court should deny this motion as moot on the grounds that a new deadline is required for fact and expert discovery in the Track One trial workup cases. Because expert discovery on general causation necessarily involves an analysis of alternative causes in individual cases, expert discovery in both defendants'

---

[1] On August 21, 2007, defendants filed a Motion to Modify and Enforce Discovery Orders No. 7, 8, 11, and 13 in which they raised substantially the same issues raised in plaintiffs' motion to dismiss *Strickland* and withdraw from *Mendoza* and *Fenelon*. (Docs. 824, 825) Plaintiffs have yet to respond to this motion. Defendants hereby incorporate by reference the arguments in their Motion to Modify and Enforce.

[2] Defendants request only a narrowly tailored extension of the case-specific fact discovery deadlines in a few Track One cases. Nothing about this narrowly tailored extension should affect the completion of general discovery on October 15, 2007. Indeed, nothing has occurred that in any way justifies an extension of general (i.e., non-case-specific) discovery deadline beyond October 15.

replacement trial workup case and plaintiffs' trial workup case—whether it be *Smith* or another case—should proceed simultaneously.

## II.   BACKGROUND

### A.   The Track One Case Selection Process

The Court's Discovery Orders No. 7 and 8 set out the Track One process for selecting ten cases brought by Finkelstein & Partners for limited discovery that would inform the parties' anticipated dispositive motion practice. The Court ordered each party to choose two cases and it randomly selected the remaining six. The aim of the Track One process was to "enable each side to put its best cases forward, while the random selection will ensure a range of cases as well as mitigate any information disadvantage under which Defendants may labor at this point." (Docket # 609 at 2). Defendants selected *Strickland v. Pfizer and Mendoza v. Pfizer;* plaintiffs selected *Smith v. Pfizer* and *Bentley v. Pfizer* (Docket ## 633, 629). Following the initial Track One selection process, the parties proposed methods for selecting two cases for full case-specific discovery. In Discovery Order No. 11, the Court ordered that "Plaintiffs shall pick one case from the previously identified group of ten and Defendants shall pick one case from the previously identified group of ten" (Doc. # 735 at 1). On July 23, plaintiffs designated *Smith* as their Track One case for trial workup. After extensive fact discovery and consultation with their experts, defendants designated *Strickland* as its trial workup case on the same date.

### B.   Plaintiffs' Counsel's Recent Actions

Discovery of *Strickland* (as well as the other Track One cases) proceeded throughout the spring and summer. Defendants deposed Mr. Strickland, Mrs. Strickland, Dr. Sadri Avsar, and Dr. Wolfram Glaser. On August 9, 2007—over seven weeks after the latest deposition in *Strickland* and over two weeks after defendants selected *Strickland* as their trial

- 3 -

2625252v1

workup case—plaintiffs' counsel notified defense counsel that plaintiffs intended to dismiss *Strickland* and proposed a stipulated dismissal in which each side would bear its own costs. Plaintiffs' counsel also informed defendants of their intention to withdraw as counsel of record from *Mendoza* and *Fenelon v. Pfizer* (a Track One case randomly selected by the Court). The effect of withdrawing as counsel was clear: there would be little point in keeping *Mendoza* and *Fenelon* designated as Track One cases. Defendants rejected plaintiffs' proposed stipulation on the grounds that plaintiffs' plan undermined the Track One process and disrupted the Court's discovery schedule. Under the present schedule, fact discovery in the trial workup cases is due to end on September 15, 2007 and expert discovery on December 21, 2007. The Court expects dispositive motions on January 11, 2008. Plaintiffs' counsel took no immediate steps to inform the Court of their intentions. On September 6, 2007, plaintiffs filed their motions to dismiss and withdraw.

In their motion to dismiss, plaintiffs admit that *Strickland* is a case they cannot win. Plaintiffs state that "they would be unable to prove their claim that Mr. Strickland's injuries were caused by his ingestion of Neurontin." Pltf. Brief at 3. Plaintiffs' counsel's stated reason for withdrawing as counsel from *Mendoza* is that "irreconcilable differences have developed between Plaintiff and Plaintiff's counsel regarding the direction of legal services that may be provided."[3] Plaintiffs' counsel have not elaborated on these "irreconcilable differences" in their motion. Given the similarities between *Mendoza* and *Strickland*, including the pre-Neurontin psychiatric problems of both Mr. Strickland and Mr. Mendoza, plaintiffs' reasons for abandoning *Mendoza* are readily apparent. But plaintiffs' counsel offer no explanation for their failure to dismiss *Strickland* and *Mendoza* sooner. Instead, plaintiffs baldly assert that Pfizer will not be

---

[3] Plaintiffs' counsel's motion to withdraw from *Fenelon* is premised on the same "irreconcilable differences" statement.

- 4 -

prejudiced by the dismissal of *Strickland* and plaintiffs' counsel's withdrawal from *Mendoza* at the eleventh hour of case-specific fact discovery in the trial workup cases. As is demonstrated below, plaintiffs' attempt to "game" the Track One selection process will unfairly prejudice defendants and should not be allowed.

### III.     LAW AND ARGUMENT

There is no dispute that plaintiffs may only dismiss *Strickland* with an order of the court "upon such terms and conditions as the court deems proper." Fed. R. Civ. P. 41(a)(2). "The intendment of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Alamance Industries, Inc. v. Filene's*, 291 F.2d 142, 146 (1st Cir. 1961). The terms of a Rule 41(a)(2) dismissal are thus left to the trial court's discretion. *Id.*; *see also Diamond v. United States*, 267 F.2d 23, 25 (5th Cir. 1959) (court has authority to deny motion, grant motion, and if it grants it, do so on the conditions it deems proper). The Court similarly has discretion to grant or deny an attorney's motion to withdraw in a civil case. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 135 (1st Cir. 1985); *Irwin v. Mascott*, 196 Fed. Appx. 455, 456 (9th Cir. 2006) (denying motion to withdraw in part because it was likely to undermine the district court's inherent power to manage its cases.)

Plaintiffs argue that defendants will not be prejudiced by the dismissal of *Strickland* because when a dismissal is with prejudice, the defendant "receives all that he would have received had the case been completed." Pltf. Brief at 4. But plaintiffs ignore the context in which they seek dismissal of *Strickland*. The parties selected Track One cases as part of the MDL pre-trial process and to aid the effort of providing a factual background for dispositive motions. The parties and the Court have invested substantial energy in devising and enforcing a

schedule for discovery, which includes deadlines for the selection and full case-specific discovery of two cases. Plaintiffs' gamesmanship throws a wrench into the process. It also seeks to subvert the fairness underlying the Court's Track One design, which provided that each party select a case to prepare for trial in the event that plaintiffs surmount the dispositive motion challenges. Plaintiffs' manipulation of the Track One process leaves defendants without a trial workup case to pursue. This clearly is contradictory to the Court's aim to "enable each side to put its best cases forward." (Docket # 609 at 2) Plaintiffs' motions place defendants at a distinct disadvantage and tip the playing field in plaintiffs' direction. Because plaintiffs' proposed dismissal of *Strickland* and withdrawal from *Mendoza* will unfairly prejudice defendants, defendants respectfully urge the Court to exercise its discretion under Rule 41 and impose the conditions set forth below.

A.  **The Court Should Level the Playing Field By Requiring Each Party to Select a New Case for Trial Workup From the Remaining Five Track One Cases Randomly Selected By the Court.**

In light of plaintiffs' motions to dismiss *Strickland* and withdraw from *Mendoza*, plaintiffs should be prohibited from continuing with *Smith* (or *Bentley*, their other unilaterally selected Track One case) as their trial workup cases. Because plaintiffs' current motions eliminate *both* of defendants' selections, the parties are no longer on equal footing under the Court's case selection plan. Fairness dictates that, if plaintiffs are allowed to dismiss *Strickland* (and take *Mendoza* out of the running), the Court should level the playing field by requiring plaintiffs to set aside *Smith* as their trial workup case and *Bentley* as their Track One selection. The Court should order the selection of two new trial workup Track One cases as well as a new schedule for discovery. This will preserve the Court's intention that the parties each workup a case for trial and for providing the backdrop for expert discovery that will inform dispositive

- 6 -

2625252v1

motions. The two trial workup cases could be selected from among the randomly selected Track One cases (minus *Fenelon*).[4] This would go far in guarding against an unfair case selection process *and* future dismissals of any cases selected by defendants—particularly because the facts that are problematic for plaintiffs in *Strickland* are not by any means isolated to the *Strickland* case.

This approach is fair. It would be patently unfair to allow plaintiffs to proceed with *Smith* but require defendants to start over, having the disadvantage of losing the two cases they originally chose. Modifying Discovery Orders No. 8 and 11 to require each party to select a new case for trial workup from the remaining Track One cases randomly selected by the Court restores the parties to their original positions in the MDL case selection process. An extension of the schedule set forth in Discovery Orders No. 7 and 13 to accommodate fact and expert discovery will also be necessary,[5] but this approach should not unduly extend the existing MDL schedule. The benefit of restoring a fair MDL case selection process warrants the necessary extension of the discovery schedule.

**B.    Alternatively, Defendants Should Be Allowed To Choose Two Track One Cases for Limited Workup and Subsequent Selection of a New Trial Workup Case.**

If plaintiffs are permitted to keep *Smith* as their trial workup case, defendants should be allowed additional time both to identify and develop two Track One cases from the Finkelstein & Partners inventory and designate a new case for full trial workup. In addition,

---

[4]  Or, the Court could choose the cases randomly or otherwise select the cases by its own design.

[5]  Under the schedule set forth in Discovery Orders No.7 and 11, the parties were to select trial workup cases by July 23, 2007, and were provided approximately eight weeks until September 15, 2007 to complete fact discovery in the two designated trial workup cases. Discovery Order No. 13 further provides that plaintiffs' expert reports are due on October 22, 2007, approximately five weeks after the completion of fact discovery. Pfizer's expert reports are due on December 3, 2007.

efficiency and fairness dictate that expert discovery in the *Smith* case be stayed until both trial workup cases can proceed on the same schedule.[6]

Should the Court adopt this approach, defendants could identify two new Track One cases from the Finkelstein & Partners inventory within two weeks after the Court rules. Defendants would then need the requisite time—at least four weeks—to complete the Court-required limited discovery in the two cases before designating their trial workup case. Following designation of this case, defendants would need another eight weeks to complete a full case workup,[7] after which both *Smith* and Pfizer's new trial workup case could proceed to expert discovery.

Allowing defendants to select from the entire Finkelstein & Partners inventory salvages the Court's original justification for the Track One selection process, i.e., that "each side [be able] to put its best cases forward." Similarly, the additional time defendants request to complete fact discovery in these two cases is consistent with the Track One selection and trial workup process originally crafted by the Court.

Under this alternative, the Court should extend the expert discovery schedule. Judicial economy dictates that expert discovery in both Track One cases occur at the same time. Failure to coordinate expert discovery will waste time and money by, for instance, requiring the parties to conduct duplicative depositions of experts, which would involve costly preparation and unnecessary travel. Expert discovery also must be completed in both cases before proceeding to the dispositive motion phase ordered by this Court. Failure to extend expert discovery would

---

[6] Extending the deadlines for expert discovery is further reasonable given that the parties have agreed that certain fact depositions in *Smith* be permitted to take place after the current September 15, 2007 deadline for fact discovery in the trial workup Track One cases.

[7] This eight-week period is consistent with the time period allotted for completion of fact discovery in the Court's prior discovery orders.

2625252v1

unfairly reward plaintiffs' gamesmanship by ensuring that their selection leads the MDL Track One pack—quite possibly the result plaintiffs intended when they waited until the eve of expert discovery to file their motions to dismiss *Strickland* and withdraw from *Mendoza*.

C.  **Defendants Should Be Awarded Reasonable Costs Incurred as a Result of Plaintiffs' Counsel's Actions**

Plaintiffs ask the Court to dismiss *Strickland* without prejudice and award no costs or attorney's fees. Citing opinions from outside the First Circuit, plaintiffs rely on the "general rule" that costs should not be imposed when a case is dismissed with prejudice, except when exceptional circumstances exist and/or when there is independent statutory authority for awarding costs and fees. *See* Pltf. Brief at 5 (citing *Colombrito v. Kelly*, 764 F.2d 122, 133-34 (2d Cir. 1985)). In this case, independent statutory authority justifies an award of costs and fees, making the general rule inapplicable. Section 1927 of Title 28 permits a party to recover costs, expenses and attorneys' fees when an attorney "multiplies the proceedings in any case unreasonably and vexatiously." In *Alvarado-Morales v. Digital Equipment Corp.,* 843 F.2d 613 (1st Cir. 1988), the First Circuit held that counsel's failure to properly investigate the facts prior to filing suit and counsel's failure to withdraw the plaintiff's complaint when contrary facts were revealed to him during the early stages of discovery belabored the proceedings and constituted a § 1927 violation.

As in *Alvarado-Morales*, plaintiffs' counsel's recent actions in the MDL have no doubt "unreasonably and vexatiously" multiplied the MDL proceedings. In their motion to dismiss, plaintiffs' counsel admit that *Strickland* is a case they cannot win. Counsel represent that they learned this only after the deposition of Mr. Strickland and his treating doctors, at which time they determined that "they would be unable to prove their claim that Mr. Strickland's injuries were caused by his ingestion of Neurontin." Pltf. Brief at 3. Yet, Mr. Strickland was

- 9 -

deposed on April 16, 2007, at which time he admitted that he continues to take Neurontin and that he had a history of suicide attempts prior to ever ingesting it.[8] Similar facts were divulged in depositions given by Mr. Strickland's treating physicians on June 11-12, 2007.[9] Plaintiffs do not explain the long delay between these depositions and the filing of their motions. Nor have counsel explained their failure to uncover the obvious weaknesses in Mr. Strickland's case—especially his long history of suicidal acts and psychiatric problems that well preceded any prescription for Neurontin and the fundamental fact that he continues to take the medication even after he has alleged that it does not treat his conditions and that it caused him to harm himself—prior to filing this case or anytime during the 20 months that this case has been pending.

Plaintiffs' counsel understood that a considerable amount of time and money would be spent investigating the *Strickland* facts, deposing physicians and other fact witnesses, and eliciting expert opinions about the case.[10] Yet plaintiffs' counsel took no action to dismiss the suit, and instead caused the parties to waste time and resources working up a clearly baseless case. And plaintiffs' counsel waited until well after the July 23 trial workup selection deadline and the eve of expert discovery—their moment of maximum strategic advantage—to file their motion to dismiss and publicly acknowledge that *Strickland* is a case they could never win.

---

[8] Had plaintiffs' counsel conducted a reasonable inquiry prior to filing the *Strickland* case, counsel would have learned that basic factual allegations lacked evidentiary support.

[9] Indeed, Mr. Strickland admitted in verified Interrogatory responses in early November 2006, that he "has treated for mental illness for many years" and that he was prescribed Neurontin in May 2005—more than four and a half years after his alleged suicide attempt. Pltf's Response to Defendants' First Set of Interrogatories at ¶¶ 11, 14.

[10] Pfizer has conducted extensive fact discovery in *Strickland*, *Mendoza* and *Fenelon*. In *Strickland*, Pfizer has deposed Mr. Strickland and his wife, Cathy Strickland, as well as two physicians, Dr. Sadri Avsar and Dr. Wolfram Glaser. Pfizer has also collected over 9000 pages of Mr. Strickland's records from over 35 different providers. In *Mendoza*, Pfizer has deposed Mr. Mendoza, his girlfriend Rosemary Reed, and three physicians, Dr. Karl Jones, Dr. Peter Kaplan, and Dr. Elizabieta Chobot-Sochet. Pfizer has collected over 6000 pages of Mr. Mendoza's records from over 40 different providers. In *Fenelon*, Pfizer has deposed the plaintiff and two of decedent's treating physicians and collected more than 200 pages of medical records.

Although plaintiffs' counsel claim that they promptly informed defendants of their intention to voluntarily dismiss *Strickland*, the facts belie this claim.

As for their proposed withdrawal from representation of *Mendoza*, plaintiffs' counsel state that "irreconcilable differences have developed between Plaintiff and Plaintiff's counsel regarding the direction of legal services that may be provided." Plaintiffs' counsel do not elaborate on these "irreconcilable differences" in their motion, but given the similarities between *Mendoza* and *Strickland*—namely the rich pre-Neurontin histories of psychiatric problems and many alternative explanations for these problems, including pre-existing depression, suicidal thoughts, suicide attempts, childhood physical and sexual abuse, substance and polysubstance abuse and head trauma to name a few—and plaintiffs' counsel's admission that *Strickland* is a non-meritorious case, their effort to distance themselves from *Mendoza* is not surprising.[11] The facts of Mr. Mendoza's case, like those in *Strickland*, easily could have—and should have—been discovered prior to filing the case.[12] Yet, plaintiffs' counsel offer no explanation for their failure to seek leave to withdraw and/or dismiss *Mendoza* sooner. Instead, counsel baselessly assert that defendants are not prejudiced by the dismissal of *Strickland* and plaintiffs' counsel's withdrawal from *Mendoza*. Plaintiffs' counsel's failure to immediately move to dismiss *Strickland*, *Mendoza*, and *Fenelon* in the face of these facts violates § 1927 and entitles defendants to costs, expenses, and attorneys fees reasonably incurred as a result of the conduct.

---

[11] *Fenelon* is no different. In that case, the decedent had a long history of depression and psychiatric problems before ever taking Neurontin.

[12] Like Mr. Strickland, Mr. Mendoza admitted his psychiatric problems in verified Interrogatory responses filed long before plaintiffs' dismissal. *See* Pltf's Response to Defendants' First Set of Interrogatories at ¶¶ 11 (stating that Mr. Mendoza "has treated for PTSD, depression, schizophrenia, and attempted suicides for many years").

**D.    The Court Should Deny Plaintiffs' Motion to Compel Defendants To Take the Deposition of One of Their General/Specific Causation Experts**

Plaintiffs also move to compel defendants to take the deposition of one of their general/specific causation experts on October 18-19, 2007.[13] Plaintiffs claim that defendants agreed to take the deposition and, therefore, should be forced to stick to that agreement. What plaintiffs fail to note, however, is that discussions of scheduling expert depositions preceded the surprising news that plaintiffs intended to subvert the Track One process and schedule by dismissing *Strickland* and withdrawing from *Mendoza*. Instead, plaintiffs disingenuously gloss over their recent actions and state that "fact discovery in both the Products Liability and the Sales and Marketing Practices cases will be completed by October 15, 2007." Pltf's Motion to Compel at 5. But because plaintiffs have chosen to dismiss *Strickland*, case-specific fact discovery in the Products Liability trial workup cases cannot be concluded by October 15.

In addition, it is well-established that expert discovery, including depositions, of issues surrounding general causation involves an analysis of alternative causes in particular cases. *See* Reference Manual on Scientific Evidence 2d edition (2000) at 375 (listing "consideration of alternative explanations" as one factor to be considered in the general causation calculus). As a result, all case-specific fact discovery in the Track One cases must be completed so that an expert can properly consider alternative explanations in his or her general causation opinion. Fact discovery in defendants' trial workup case will not be completed in

---

[13] Plaintiffs' counsel express concern that their expert has already made arrangements to attend the October 18-19 deposition and is otherwise unavailable until December. Setting aside the fact that plaintiffs' gamesmanship has caused the uncertainties in the MDL schedule, Pfizer's requested extension will alleviate plaintiffs' concern by delaying expert discovery, including depositions, while Pfizer conducts discovery in its trial workup case.

- 13 -

advance of plaintiffs' expert's scheduled deposition. Accordingly, plaintiffs' Motion to Compel should be denied.

## IV.    CONCLUSION

Plaintiffs' attempted manipulation of the Track One selection process should not be countenanced. Such "gaming" of the MDL plan and schedule would unfairly prejudice defendants. Defendants request that the Court exercise its Rule 41(a)(2) authority by prohibiting plaintiffs from designating *Smith* as their trial workup case and requiring each party to select a new case for trial workup from the remaining five Track One cases randomly selected by the Court. In the alternative, defendants request that they be allowed requisite time to workup two cases from the Finkelstein inventory, including an extension of the discovery schedule so that expert discovery can occur simultaneously in both cases. Defendants also request the costs, expenses and attorneys' fees related to their defense of *Strickland, Mendoza*, and *Fenelon*. Finally, the Court should deny plaintiffs' Motion to Compel defendants to take the deposition of their general/specific causation expert until such time as both Track One trial workup cases are ripe for expert discovery.

Dated: September 11, 2007      Respectfully submitted,

DAVIS POLK & WARDWELL

By:    /s/ James P. Rouhandeh
        James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

SHOOK, HARDY & BACON LLP

By:    /s/Scott W. Sayler
        Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108
Tel: (816) 474-6550

-and-

HARE & CHAFFIN

By:    /s/David B. Chaffin
        David B. Chaffin

160 Federal Street
Boston, MA 02110
Tel: (617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company LLC*

**CERTIFICATE OF SERVICE**

     I hereby certify that this document has been served pursuant to Case Management Order No. 3.

                        /s/David B. Chaffin