# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
In re: NEURONTIN MARKETING, SALES PRACTICES,
AND PRODUCTS LIABILITY LITIGATION

------------------------------------------------------------x

THIS DOCUMENT RELATES TO:

MDL Docket No. 1629
------------------------------------------------------------x
Master File No. 04-10981

HARDEN MANUFACTURING CORPORATION;
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, Judge Patti B. Saris
dba BLUECROSS/BLUESHIELD OF LOUISIANA;
INTERNATIONAL UNION OF OPERATING ENGINEERS, Magistrate Judge Leo T.
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL Sorokin
52 HEALTH BENEFITS TRUST; GERALD SMITH; and
LORRAINE KOPA, on behalf of themselves and all others
similarly situated, v. PFIZER INC. and WARNER-LAMBERT
COMPANY.

------------------------------------------------------------x

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC. and

AETNA, INC. v. PFIZER INC.

------------------------------------------------------------x
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x
In re: NEURONTIN
PRODUCT LIABILITY LITIGATION

------------------------------------------------------------x  Index No. 765000/06

THIS DOCUMENT APPLIES TO:    Hon. Marcy S. Friedman

    ALL CASES

------------------------------------------------------------x

2537251v1

EXHIBIT
Hasbu Y
7/13/07

## DEFENDANTS' RESPONSES AND OBJECTIONS TO
## PLAINTIFFS' NOTICE OF 30(B)(6) DEPOSITION

Defendants Pfizer Inc ("Pfizer"), Parke-Davis, Warner-Lambert Company, and Warner-Lambert Company LLC (collectively, "Defendants"), by their undersigned counsel, hereby respond and object to the Plaintiffs' Notice of 30(b)(6) Deposition, (hereinafter the "Notice"), pursuant to Federal Rule of Civil Procedure 30(b)(6), in the above-captioned matter. Defendants reserve the right to make additional objections and to supplement their responses as may be deemed appropriate.

Defendants are prepared to produce a company witness, subject to the objections below, on July 12-13, 2007, between the hours of 9:00 a.m. and 6:00 p.m., in accordance with Case Management Order Numbers 3 and 5, at the law offices of Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York, 10017.

### GENERAL OBJECTIONS

Defendants make the following General Objections to the Notice and incorporate each of them by reference in each and every Specific Response below:

1. Defendants object to the Notice to the extent that it seeks testimony regarding subject matters as to which a deposition pursuant to Rule 30(b)(6) is not the best or most efficient means to conduct discovery.

2. Defendants object to the Notice to the extent that it fails to describe with reasonable particularity the matters on which examination is requested as required by Rule 30(b)(6). Defendants further object to the Notice to the extent that the subject matters designated for examination and the categories of documents identified are vague, ambiguous, unreasonably overbroad, unduly burdensome, oppressive, seek cumulative or duplicative information, and/or seek information not relevant to the claims or defenses of any party.

2

3.  Defendants object to the Notice to the extent that it seeks testimony regarding information that is protected by various privileges or immunities, including the attorney-client privilege, the attorney work product doctrine or any other legally recognized privilege and/or immunity. Such testimony will not be provided. The inadvertent disclosure of privileged information by Defendants shall not be deemed to constitute any waiver of any privilege pertaining to such information.

4.  Defendants object to the Notice to the extent that it seeks to impose discovery obligations on Defendants broader than, or inconsistent with, those set forth in the Federal Rules of Civil Procedure, the Local Rules, orders of the Court, or any other applicable rules or orders.

5.  Defendants generally object to the notice as unreasonably overbroad and unduly burdensome because it seeks a corporate designee to testify on numerous subject areas that are vague, undefined and inadequately described; unlimited in time and scope; cover diverse and expansive subject areas and documents spanning a period of nearly two decades and for which a wide range of individuals and departments were responsible, some of whom are no longer employed by the company. Defendants object to the Notice as unduly burdensome to the extent that it seeks information regarding various documents that were created and revised over an approximate 15 year period by various individuals, some of whom are no longer employed by Defendants. Defendants further object to the Notice as unduly burdensome to the extent that it seeks information regarding documents and subjects that required contributions by individuals and departments with different roles, responsibilities, knowledge and background.

6.  To the extent the Notice has added subject matter not previously identified in prior draft versions of the Notice, the Defendants object to any questioning regarding these subject areas based on insufficient notice. Case Management Order No. 3 requires "at least 21

days notice for a proposed deposition." Defendants received a final signed version of the Notice on or after July 3, 2007. Despite this fact, Defendants will designate a witness or witnesses to testify regarding certain subject matters designated for examination in the Notice, consistent with these Responses and Objections.

7. Defendants object to the Notice to the extent it requests a corporate designee to testify about the Integrated Summaries of Safety. On July 18, 2006, the Defendants produced a corporate designee pursuant to Rule 30(b)(6) to provide testimony regarding Research Report No.: RR-REG 720-02957, Title: Integrated Summary of Safety Information of Gabapentin Capsules (Item 8.6 of the Gabapentin NDA). To extent this Notice requests information related to this Integrated Summary of Safety, it is duplicative and unduly burdensome. Additionally, the Plaintiffs have provided insufficient notice in accordance with Case Management Order No. 3. Accordingly, Defendants will not provide a corporate designee to testify about the Integrated Summaries of Safety.

8. Defendants object to the Notice to the extent it requests a corporate designee to testify about the Neurontin core data sheet. On June 24-26, 2007, the Defendants produced a corporate designee, Lloyd Knapp, pursuant to Rule 30(b)(6) to provide testimony regarding Neurontin labeling, to include testimony regarding the Neurontin core data sheet. To extent this Notice requests information related to core data sheet, it is duplicative and unduly burdensome. Defendants have already produced Lloyd Knapp as a corporate designee to provide testimony relating to Neurontin labeling. Accordingly, to the extent any of the subject areas identified in the Notice relate to labeling, Defendants will not produce another corporate designee to provide additional testimony regarding the subject.

9. Defendants object to the Notice to the extent it requests a corporate designee to testify about "Standard Response Documents (including data from Merlin/Phoenix databases)." This request is unduly burdensome and duplicative of testimony previously provided by Pfizer employees. Additionally, the Plaintiffs have provided insufficient notice in accordance with Case Management Order No. 3. Accordingly, Defendants will not provide a corporate designee to testify about "Standard Response Documents (including data from Merlin/Phoenix databases)."

10. Defendants object to the Notice to the extent it requests a corporate designee to testify about any drug other than Neurontin. In many of the Issues identified in the Notice, Plaintiffs fail to limit the scope of the request to Neurontin. Accordingly, Defendants object on the grounds that to the extent Plaintiffs seek testimony regarding other medications, the request is vague, ambiguous, unreasonably overbroad, unduly burdensome, and irrelevant to the litigation. Defendants will not produce a corporate designee to testify about medications other than Neurontin.

## SPECIFIC RESPONSES AND OBJECTIONS

Each of the foregoing General Objections is expressly incorporated into each of the specific objections and responses set forth below. Subject to and without waiving the General Objections and specific objections and responses set forth below, Defendants will designate a witness or witnesses to testify regarding certain subject matters designated for examination in the Notice, consistent with these Responses and Objections.

**ISSUE 1:**

>Testimony as to Defendants' pharmacovigilance regarding Neurontin, to wit: the systematic detection, assessment, understanding, interpretation and prevention of adverse drug reactions.

5

### RESPONSE TO ISSUE 1:

In addition to the foregoing General Objections, Defendants further object to Issue 1 on the grounds that the term "pharmacovigilance" is vague, ambiguous, and unreasonably overbroad.

### ISSUE 2:

Testimony as to Defendants' review of medical literature regarding adverse events reported with the use of Neurontin and Defendants' assessment, interpretation and responsive action, if any.

### RESPONSE TO ISSUE 2:

In addition to the foregoing General Objections, Defendants further object to Issue 2 on the grounds that it is vague, ambiguous, unreasonably overbroad and unduly burdensome. It seeks information with regard to unspecified reviews of medical literature which occurred over a 15 year period by various individuals from various corporate departments, some of whom are no longer employed by Defendants. Further, Plaintiffs fail to limit the scope of the requested testimony, but rather vaguely request testimony relating to reviews of medical literature for all adverse events reported in conjunction with Neurontin use. Defendants further object to the Notice as unduly burdensome to the extent that it seeks information regarding subjects that required contributions by individuals with different roles, responsibilities, knowledge and background.

### ISSUE 3:

Testimony as to Defendants' review, response, evaluation and action, if any, pertaining to correspondence from regulatory authorities.

### RESPONSE TO ISSUE 3:

In addition to the foregoing General Objections, Defendants further object to Issue 3 on the grounds that it is vague, unreasonably overbroad, unduly burdensome, and duplicative of

testimony previously provided by employees of Defendants. To the extent Issue 3 is duplicative of the testimony of Mr. Lloyd Knapp, who was produced in response to Plaintiffs' Notice for a corporate designee to testify about the labeling of Neurontin, Defendants will not permit duplicative questioning on this subject matter. Additionally, Issue 3 was recently added to the draft Notice and Plaintiffs have failed to provide sufficient notice in accordance with Case Management Order No. 3. Defendants will accordingly not produce a corporate designee to testify in response to questions relating to Issue 3.

**ISSUE 4:**

Testimony as to Defendants' review of medical literature regarding mechanisms of action of Neurontin.

**RESPONSE TO ISSUE 4:**

In addition to the foregoing General Objections, Defendants further object to Issue 4 on the grounds that it is vague, ambiguous, unintelligible, unreasonably overbroad, unduly burdensome, and duplicative of testimony previously provided by employees of Defendants. Defendants have previously produced Dr. Charles Taylor, who responded to extensive questioning by plaintiffs regarding Neurontin's mechanism of action, and additional questioning on this subject would be objectionably duplicative. Additionally, Issue 4 was recently added to the draft Notice and Plaintiffs have failed to provide sufficient notice in accordance with Case Management Order No. 3. Defendants will accordingly not produce a corporate designee to testify in response to questions relating to Issue 4.

**ISSUE 5:**

The accuracy, and/or inaccuracy, of the statements and representations set forth in Defendants' Safety Updates, Integrated Summaries of Safety, Annual Reports, Periodic Safety Update Reports (PSURs), Investigator Brochures, and Adverse Event Databases.

7

**RESPONSE TO ISSUE 5:**

In addition to the foregoing General Objections, Defendants further object to Issue 5 on the grounds that it is vague, ambiguous, unintelligible, unreasonably overbroad, and unduly burdensome. Plaintiffs fail to identify the relevant statements and representations set forth in the "Safety Updates, Integrated Summaries of Safety, Annual Reports, Periodic Safety Update Reports (PSURs), Investigator Brochures, and Adverse Event Databases." These documents were created over an approximate 15 year period by several individuals, some of whom are no longer employed by Pfizer. They include literally thousands of pages of material. Accordingly, it is impossible for Defendants to designate a corporate representative to testify about the "accuracy, and/or inaccuracy" of the unidentified statements or representations referenced in the Notice and any attempt to provide corporate designees would create an undue hardship on Defendants. Additionally, to the extent Issue 5 requests testimony regarding the Integrated Summaries of Safety, the Defendants will not produce a corporate designee for the reasons articulated in the General Objections.

**ISSUE 6:**

> The design, goals, purposes, protocols and methodologies pertaining to the formation of Defendants' Safety Updates, Integrated Summaries of Safety, Annual Reports, Periodic Safety Update Reports (PSURs), Investigator Brochures, Standard Response Documents (including data from Merlin/Phoenix databases), and Adverse Event Databases.

**RESPONSE TO ISSUE 6:**

In addition to the foregoing General Objections, Defendants further object to Issue 6 on the grounds that it is vague, ambiguous, unreasonably overbroad, and unduly burdensome. Plaintiffs fail to define the terms: "design, goals, purposes, protocols and methodologies." Accordingly, the request is vague and ambiguous. Additionally, to the extent Issue 6 requests testimony regarding the Integrated Summaries of Safety and Standard Response Documents

8

2537251v1

(including data from Merlin/Phoenix databases), the Defendants will not produce a corporate designee for the reasons articulated in the General Objections. Subject to Defendants' Response and Objections, Defendants will produce a witness to provide testimony regarding the Defendants' post-market safety activities related to appropriate categories of documents that address post market safety data identified in the Notice.

ISSUE 7:

Identification of clinical trial names or numbers referenced in Defendants' Safety Updates, Integrated Summaries of Safety, Annual Reports, Periodic Safety Update Reports (PSURs), Investigator Brochures, and Adverse Event Databases.

**RESPONSE TO ISSUE 7:**

In addition to the foregoing General Objections, Defendants further object to Issue 7 on the grounds that it is vague, ambiguous, unreasonably overbroad, and unduly burdensome. Plaintiffs fail to identify the "clinical trial names or numbers" for which they seek additional corporate testimony (note, the Notice fails to limit the scope of the request to clinical names or numbers involving Neurontin). Plaintiffs request encompasses information in the "Safety Updates, Integrated Summaries of Safety, Annual Reports, Periodic Safety Update Reports (PSURs), Investigator Brochures, and Adverse Event Databases." There are more than 300 published clinical trials spanning approximately two decades involving over 9,000 patients treated with Neurontin. Accordingly, this request for unidentified "clinical trial names or numbers" is unreasonably overbroad and unduly burdensome. Additionally, to the extent Issue 7 requests testimony regarding the Integrated Summaries of Safety, the Defendants will not produce a corporate designee for the reasons articulated in the General Objections.

**ISSUE 8:**

> The design, goals, purposes, protocols and methodologies pertaining to clinical trials referenced in Defendants' Safety Updates, Integrated Summaries of Safety, Annual Reports, Periodic Safety Update Reports (PSURs), Investigator Brochures, and Adverse Event Databases.

**RESPONSE TO ISSUE 8:**

In addition to the foregoing General Objections, Defendants further object to Issue 8 on the grounds that it is vague, ambiguous, unreasonably overbroad, and unduly burdensome. Plaintiffs fail to define the terms: "design, goals, purposes, protocols and methodologies." Accordingly, the request is vague and ambiguous. Further, there are more than 300 published clinical trials spanning two decades involving over 9,000 patients treated with Neurontin. Issue 8 fails to identify the pertinent clinical trials that Plaintiffs wish to discuss with a corporate designee. Accordingly, Issue 8 is unreasonably overbroad and unduly burdensome. Additionally, to the extent Issue 8 requests testimony regarding the Integrated Summaries of Safety, the Defendants will not produce a corporate designee for the reasons articulated in the General Objections.

**ISSUE 9:**

> With respect to clinical trials referenced in Defendants' Safety Updates, Integrated Summaries of Safety, Annual Reports, Periodic Safety Update Reports (PSURs), Investigator Brochures, and Adverse Event Databases, testimony as to exclusion and/or inclusion criteria for prospective clinical trial participants.

**RESPONSE TO ISSUE 9:**

In addition to the foregoing General Objections, Defendants further object to Issue 9 on the grounds that it is vague, ambiguous, unintelligible, unreasonably overbroad, and unduly burdensome. Issue 9 requests the "exclusion and/or inclusion criteria for prospective clinical trial participants," but fails to identify the pertinent clinical trials. There have been more than 300 published clinical trials spanning two decades involving over 9,000 patients treated with

10

Neurontin. Plaintiffs' failure to limit the scope of Issue 9 makes it unreasonably overbroad and unduly burdensome on Defendants. Additionally, to the extent Issue 9 requests testimony regarding the Integrated Summaries of Safety, the Defendants will not produce a corporate designee for the reasons articulated in the General Objections.

### ISSUE 10:

Procedures for recruitment of clinical investigators associated with those clinical trials referenced in Defendants' Safety Updates, Integrated Summaries of Safety, Annual Reports, Periodic Safety Update Reports (PSURs), and Investigator Brochures.

### RESPONSE TO ISSUE 10:

In addition to the foregoing General Objections, Defendants further object to Issue 10 on the grounds that it is vague, ambiguous, unreasonably overbroad, and unduly burdensome. Issue 10 requests the "[p]rocedures for recruitment of clinical investigators" but fails to identify the pertinent clinical trials. There are more than 300 published clinical trials spanning two decades involving over 9,000 patients treated with Neurontin. Plaintiffs' failure to limit the scope of Issue 10 makes it unreasonably overbroad and unduly burdensome. Further, to the extent Issue 10 requests testimony regarding the Integrated Summaries of Safety, the Defendants will not produce a corporate designee for the reasons articulated in the General Objections.

### ISSUE 11:

Training of clinical investigators associated with those clinical trials referenced in Defendants' Safety Updates, Integrated Summaries of Safety, Annual Reports, Periodic Safety Update Reports (PSURs), and Investigator Brochures.

### RESPONSE TO ISSUE 11:

In addition to the foregoing General Objections, Defendants further object to Issue 11 on the grounds that it is vague, ambiguous, unreasonably overbroad, and unduly burdensome. Issue 11 requests the "[t]raining of clinical investigators" for unidentified clinical trials involving

11

Neurontin. There are more than 300 published clinical trials spanning two decades involving over 9,000 patients treated with Neurontin. Plaintiffs' failure to limit the scope of Issue 11 makes it unreasonably overbroad and unduly burdensome on Defendants. Further, to the extent Issue 11 requests testimony regarding the Integrated Summaries of Safety, the Defendants will not produce a corporate designee for the reasons articulated in the General Objections.

## ISSUE 12:

> Adverse events or "study events" experienced by any clinical trial participants as referenced in Defendants' Safety Updates, Integrated Summaries of Safety, Annual Reports, Periodic Safety Update Reports (PSURs), Investigator Brochures and Adverse Event Databases.

### RESPONSE TO ISSUE 12:

In addition to the foregoing General Objections, Defendants further object to Issue 12 on the grounds that it is vague, ambiguous, unintelligible, unreasonably overbroad, and unduly burdensome. Issue 12 appears to request corporate testimony regarding "[a]dverse events or 'study events' experienced by any clinical trial participants." Over the course of approximately two decades, there have been numerous adverse events reported by clinical trial participants using Neurontin and placebo. Plaintiffs fail to identify the pertinent adverse events or "study events" nor do they identify the pertinent clinical trials. Further, adverse events from clinical trials are fully addressed in the FDA approved labeling and Defendants previously produced a corporate designee on labeling. Plaintiffs' failure to limit the scope of Issue 12 makes it unreasonably overbroad and unduly burdensome on Defendants. Further, to the extent Issue 12 requests testimony regarding the Integrated Summaries of Safety, the Defendants will not produce a corporate designee for the reasons articulated in the General Objections.

## ISSUE 13:

> Follow-up investigation or further testing done on any clinical trial participant who experienced a psychobiologic adverse event or study event in clinical trials.

12

### RESPONSE TO ISSUE 13:

In addition to the foregoing General Objections, Defendants further object to Issue 13 on the grounds that it is vague, ambiguous, unintelligible, unreasonably overbroad, and unduly burdensome. Issue 13 appears to request corporate testimony regarding any "[f]ollow-up investigation or further testing done on any clinical trial participant who experienced a psychobiologic adverse event or study event" for unidentified clinical trials involving Neurontin. There are more than 300 published clinical trials spanning two decades involving over 9,000 patients treated with Neurontin. Plaintiffs fail to identify the pertinent clinical trials or clinical trial participants. Plaintiffs' failure to limit the scope of Issue 13 makes it unreasonably overbroad and unduly burdensome on Defendants. Additionally, to the extent Issue 13 requests testimony regarding the Integrated Summaries of Safety, the Defendants will not produce a corporate designee for the reasons articulated in the General Objections.

### ISSUE 14:

> Study data including raw data, final study data, computations, statistics or graphs generated regarding adverse events from clinical studies referenced in Defendants' Safety Updates, Integrated Summaries of Safety, Annual Reports, Periodic Safety Update Reports (PSURs), and Investigator Brochures.

### RESPONSE TO ISSUE 14:

In addition to the foregoing General Objections, Defendants further object to Issue 14 on the grounds that it is vague, ambiguous, unintelligible, unreasonably overbroad, and unduly burdensome. Issue 14 fails to clearly identify a subject area on which a corporate designee could be produced. Presumably, Issue 14 requests a designee to testify regarding "[s]tudy data including raw data, final study data, computations, statistics or graphs generated regarding adverse events" from unidentified clinical studies. Over the course of approximately two decades, the Defendants have accumulated extensive raw data relating to adverse events from

13

Neurontin clinical trials. Plaintiffs fail to identify the pertinent data nor do they identify the pertinent clinical trials. Plaintiffs' failure to limit the scope of Issue 14 makes it unreasonably overbroad and unduly burdensome. Additionally, to the extent Issue 14 requests testimony regarding the Integrated Summaries of Safety, the Defendants will not produce a corporate designee for the reasons articulated in the General Objections.

## ISSUE 15:

> Individual adverse event or adverse drug experience cases received from worldwide sources referenced in Defendants' Safety Updates, Annual Reports, Investigator Brochures, Periodic Safety Update Reports, and Standard Response Documents, including individual case histories and overviews.

### RESPONSE TO ISSUE 15:

In addition to the foregoing General Objections, Defendants further object to Issue 15 on the grounds that it is vague, ambiguous, unintelligible, unreasonably overbroad, and unduly burdensome. Issue 15 apparently requests a corporate designee to testify regarding "[i]ndividual adverse event or adverse drug experience cases received from worldwide sources." Over the course of approximately 15 years, thousands of adverse drug events have been reported worldwide by patients who were using Neurontin. In Issue 15, Plaintiffs fail to identify the pertinent adverse events that they seek the Defendants to provide a corporate designee to discuss. Plaintiffs' failure to limit the scope of Issue 15 makes it unreasonably overbroad and unduly burdensome. Additionally, to the extent Issue 15 requests testimony regarding the Integrated Summaries of Safety, the Defendants will not produce a corporate designee for the reasons articulated in the General Objections. Subject to Defendants' Response and Objections, Defendants will produce a witness to provide testimony regarding the Defendants' post-market safety activities related to appropriate categories of documents that address post market safety data identified in the Notice.

14

**ISSUE 16:**

The decision making process to determine whether an adverse event should or should not be added to any of Defendants' Neurontin core data sheets, including the goals, purposes, protocols and methodologies for making such a decision.

**RESPONSE TO ISSUE 16:**

In addition to the foregoing General Objections, Defendants further object to Issue 16 on the grounds that it is vague, ambiguous, unreasonably overbroad, and unduly burdensome. Additionally, on June 24-26, 2007, Defendants provided a corporate designee to testify about various requested areas relating to Neurontin labeling. Issue 5 of the Plaintiffs' Labeling 30(b)(6) Notice requested: "Testimony regarding Defendants' creation, edit, review, and revision of language to be included or excluded from Neurontin labeling, package insert, core data sheet, or summary of product characteristics." Accordingly, Issue 16 in this Notice is duplicative and Defendants will not produce another corporate designee to provide duplicative testimony.

**ISSUE 17:**

Identification of the name, address, education, training, selection, job title and responsibility of Defendant employees who have participated in the decision to include or exclude language referencing an adverse event from the Neurontin core data sheet.

**RESPONSE TO ISSUE 17:**

In addition to the foregoing General Objections, Defendants further object to Issue 17 on the grounds that it is vague, ambiguous, unreasonably overbroad, and unduly burdensome. Additionally, on June 24-26, 2007, Defendants provided a corporate designee to testify about various requested areas relating to Neurontin labeling. Issue 3 of the Plaintiffs' Labeling 30(b)(6) Notice requested: "Identification of the name, address, education, training, selection, job title and responsibility of Defendant employees who have participated in the decision to include or exclude language from the Neurontin labeling, package insert, core data sheet, or

15

2537251v1

summary of product characteristics." Accordingly, Issue 17 in this Notice is duplicative and Defendants will not produce another corporate designee to provide duplicative testimony.

**ISSUE 18:**

Follow-up investigation or further testing done on any individual for whom an adverse event was reported, excluding adverse events from clinical trials.

**RESPONSE TO ISSUE 18:**

In addition to the foregoing General Objections, Defendants further object to Issue 18 on the grounds that it is vague, ambiguous, unintelligible, unreasonably overbroad, and unduly burdensome. Issue 18 apparently requests a corporate designee to testify regarding "[f]ollow-up investigation or further testing done on any individual for whom an adverse event was reported, excluding adverse events from clinical trials." Over the course of approximately 15 years, thousands of non-clinical study adverse drug events have been reported to Defendants. In Issue 18, Plaintiffs fail to identify the pertinent adverse events that they seek the Defendants to provide a corporate designee to discuss. Plaintiffs' failure to limit the scope of Issue 18 makes it unreasonably overbroad and unduly burdensome.

Dated: July 10, 2007
New York, New York

PFIZER INC., et uno,

By their attorneys,

*[signature]*
James P. Rouhandeh
Deborah L. MacGregor
Matthew B. Rowland

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

-and-

16

2537251v1

Scott W. Sayler
William A. Alford, III
SHOOK HARDY & BACON
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550

-and-

David B. Chaffin
BBO No. 549245
HARE & CHAFFIN
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*