UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------------x
:
In re:  NEURONTIN MARKETING, SALES PRACTICES, :
AND PRODUCTS LIABILITY LITIGATION :
: MDL Docket No. 1629
----------------------------------------------x :
: Master File No. 04-10981
THIS DOCUMENT RELATES TO: :
: Judge Patti B. Saris
----------------------------------------------x :
: Magistrate Judge Leo T.
HARDEN MANUFACTURING CORPORATION; : Sorokin
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, :
dba BLUECROSS/BLUESHIELD OF LOUISIANA; :
INTERNATIONAL UNION OF OPERATING ENGINEERS, :
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and :
LORRAINE KOPA, on behalf of themselves and all others :
similarly situated, v. PFIZER INC. and WARNER-LAMBERT :
COMPANY. :
:
----------------------------------------------x
:
THE GUARDIAN LIFE INSURANCE COMPANY OF :
AMERICA v. PFIZER INC. and :
:
AETNA, INC. v. PFIZER INC. :
:
----------------------------------------------x

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
DISCOVERY RELATING TO COMMUNICATIONS BETWEEN
<u>DEFENDANTS AND THIRD-PARTY PAYOR PLAINTIFFS</u>**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

Defendants Pfizer Inc. and Warner-Lambert Company submit this opposition to Class and Coordinated Non-Class Plaintiffs' (collectively, the "Sales and Marketing Plaintiffs" or "plaintiffs") Motion To Compel Discovery Relating to Communications Between Defendants and Third-Party Payor Plaintiffs, filed on August 30, 2007 (the "Motion").

## **PRELIMINARY STATEMENT**

Plaintiffs concede, as they must, that defendants produced during the course of discovery in this case nearly three million pages of documents from more than eighty, clearly-identified custodians, in addition to approximately thirty fact deponents. Now, at the eleventh hour, plaintiffs seek to resurrect and repurpose document requests that they served in 2005—and to which defendants unambiguously objected at the time—in order to attempt to force defendants to reopen their document production *ab initio* and to produce documents never originally requested. Plaintiffs' request is dilatory, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs simultaneously (and quite remarkably) seek to take a 30(b)(6) deposition about a topic—alleged fraudulent communications directed to themselves—as to which their own witnesses have denied any knowledge whatsoever. As it happens, defendants already have produced documents regarding discussions between defendants and third-party payors, and plaintiffs have questioned defendants' deponents about these documents. Having failed to adduce any evidence of fraud from this discovery, plaintiffs apparently seek yet another bite at the apple.

Considered in the context of the pleadings and discovery taken to date, it is apparent that plaintiffs' Motion seeks authorization for an impermissible fishing expedition that the Court should deny.

# ARGUMENT

A. **Plaintiffs Seek Authorization for an Impermissible Fishing Expedition Into Communications Between Defendants and Third-Party Payors**

Plaintiffs attempt, by means of overly broad and highly burdensome document requests and a similarly troubled Rule 30(b)(6) notice, to uncover support for new claims not made with any particularity in their complaints, a fact made even more galling when one realizes that the putative communications about which plaintiffs seek discovery were between defendants and *the very third-party payors bringing the Motion*.  If plaintiffs had any good faith reason to believe that defendants had made fraudulent statements directly to them, they should have some evidence of that purported fraud and they should have alleged that fraud in their complaints with the particularity required by Rule 9(b).  For over two years, plaintiffs' theory of the case has focused on allegedly fraudulent communications between defendants and physicians.  Only now do plaintiffs advance the vague and unsubstantiated allegations that they claim entitle them to the discovery sought by the Motion.  This is plainly insufficient under the Rules and First Circuit precedent.  *See* Fed. R. Civ. P. 26(b)(1) & advisory committee's note; *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) ("[P]laintiffs should not be permitted to conduct fishing expeditions in hopes of discovering claims that they do not know they have."); *Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988) ("Discovery is not 'a fishing expedition;' parties must disclose some relevant factual basis for their claim before requested discovery will be allowed.").

Plaintiffs now seek extensive information that is simply not relevant to the claims in this action.  Plaintiffs' claim that they previously "debunked" defendants' relevance argument is sheer sophistry.  (*See* Memorandum in Support of Sales and Marketing Plaintiffs' Motion To Compel Discovery Relating to Communications Between Defendants and Third-Party Payor Plaintiffs, filed Aug. 30, 2007 ("Pls.' Mem.") (Dkt # 828) at 4.)  While plaintiffs pointed to

3

certain paragraphs in the Third Amended Coordinated Complaint ("TCAC" (Dkt # 790)) as supposedly justifying discovery into these communications in their opposition to defendants' motion for a protective order (TCAC (Dkt # 790) at 3-4), neither this Court nor defendants accepted the validity of these allegations as justification for the breadth of discovery plaintiffs seek.  Many of the conclusory and unparticularized allegations on which plaintiffs rely encompass alleged statements by defendants that likely would have been directed to other people or entities, and which already have been subject to extensive discovery.  For example, plaintiffs cited to allegations that "Defendants . . . caused misleading presentations to be made to Plaintiffs and physicians concerning Neurontin" and that "the financial success of Defendants' scheme depended upon targeting Plaintiffs, other health insurers, and doctors."  (TCAC (Dkt # 790) ¶¶ 2, 4.)  As the extensive discovery and motion practice in this litigation have demonstrated, plaintiffs heretofore have focused both their discovery efforts and their arguments on allegedly fraudulent statements made by defendants to physicians and the medical community.  Plaintiffs have obtained voluminous document discovery and deposition testimony about defendants' statements to both groups.  Plaintiffs have failed, however, to offer any basis to believe that defendants in fact defrauded them directly.  This failure means, at the very least, that plaintiffs have not met the burden set forth by the First Circuit that they disclose a factual basis for their discovery requests.

     Defendants also have provided during discovery documents relating to communications between defendants and third-party payors relating to Neurontin that appeared in the files of the aforementioned custodians whose files defendants have produced.  Plaintiffs have questioned defendants' deponents about this topic and these documents.  (*See, e.g.*, Deposition of Leslie Tive, taken July 11& 12, 2007 (attached as Ex. A to the Declaration of Matthew B. Rowland,

4

dated Sept. 11, 2007 ("Rowland Decl.")) at 819:14-867:14; Deposition of Christine Grogan, taken June 25 & 26, 2007 (Rowland Decl. Ex. B) at 392:8-395:24; Deposition of Margaret Yoder, taken June 20 & 21, 2007 (Rowland Decl. Ex. C) at 96:6-99:16; 121:5-122:6; 124:17-18; 195:7-196:5.)  Plaintiffs have made absolutely no showing that they are entitled to anything more.

Plaintiffs' argument that defendants made similar requests in their deposition notices of plaintiffs is similarly unavailing.  (Pls.' Mem. at 4-5.)  As an initial matter, the propriety of defendants' 30(b)(6) notices was never contested.  Furthermore, plaintiffs *did* object to similar requests in defendants' requests for production and interrogatories, on grounds including that they:  (i) were not reasonably calculated to lead to the discovery of admissible evidence, (ii) sought discovery of information that is equally available to defendants or already in defendants' possession, or (iii) that they were aware of no such communications.  (*See, e.g.*, Plaintiff Aetna, Inc.'s Responses and Objections to Defendants' First Request for Production of Documents, dated June 3, 2005 (Rowland Decl. Ex. D) at 11-12 (objecting on the ground of, *inter alia*, relevance); Plaintiff Louisiana Health Service Indemnity Company d/b/a BlueCross/BlueShield of Louisiana's Objections and Response to Defendants' First Request for Production of Documents, dated June 3, 2005 (Rowland Decl. Ex. E) at 10-11 (same); Plaintiff Aetna, Inc.'s Responses and Objections to Defendants' First Set of Interrogatories, dated June 3, 2005 (Rowland Decl. Ex. F) at 15 (objecting on the ground that the requested information was equally available to defendants or otherwise obtainable); Plaintiff Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals Responses and Objections to Defendants' First Set of Interrogatories, dated June 3, 2005 (Rowland Decl. Ex. G) at 13, 15 (same); Plaintiff Louisiana Health Service Indemnity Company d/b/a BlueCross/BlueShield of Louisiana's Objections and

Response to Defendants' First Set of Interrogatories, dated June 3, 2005 (Rowland Decl. Ex. H) at 13, 15 (objecting on relevance grounds, but also stating that it was unaware of any such communications); Plaintiff The Guardian Life Insurance Company, Inc.'s Supplemental Responses and Objections to Defendants' First Set of Interrogatories, dated Aug. 17, 2005 (Rowland Decl. Ex. I) at 1-3 (same); Plaintiff Guardian Life Insurance Company's Supplemental Responses to Defendant Pfizer's First Set of Interrogatories, dated Apr. 13, 2007 (Rowland Decl. Ex. J) at 12-14 (same).)  In any event, it simply does not follow from the fact that there is similarity between the wording of defendants' requests to plaintiffs and that of plaintiffs' requests to defendants that plaintiffs are entitled to the discovery they seek.  For plaintiffs to produce or testify about contacts with defendants is a small task of insignificant burden.  Although plaintiffs' Motion refers to communications "between defendants and certain of the Sales and Marketing Plaintiffs who are third-party payors" (Pls.' Mem. at 1-2), the notice at issue encompasses a broad list of more than fifty third-party payors and their pharmacy benefit managers (Memorandum in Support of Motion for Protective Order Concerning Rule 30(b)(6) Deposition Notices, filed July 5, 2007 (Dkt # 781) Ex. A at 2-3).  Plaintiffs insisted during meet-and-confer sessions and letter exchanges with defendants that they sought discovery as to communications between defendants and *all* third-party payors, not just those participating in this litigation, and have given no indication that that position has changed.  (*See, e.g.*, Letter from Elana Katcher to Deborah MacGregor, dated Aug. 9, 2007 (Rowland Decl. Ex. K) at 2; Letter from Matthew B. Rowland to Elana Katcher, dated Aug. 20, 2007 ("Rowland Letter") (attached as Ex. A to the Declaration of Ilyas J. Rona, filed Aug. 30, 2007 ("Rona Decl.") (Dkt # 829)) at 2-3; Pls.' Mem. at 5.)  For defendants to produce or testify about the content of each contact with

dozens of third-party payors is not only an incredibly burdensome proposition, but one of dubious relevance, particularly given the results of discovery to date. *See infra*.

Indeed, plaintiffs' 30(b)(6) witnesses have uniformly testified that they are unaware of any fraudulent communications between defendants and plaintiffs. (*See, e.g.*, Deposition of Fred Grant Brown, taken Oct. 19, 2005 ("Brown Dep.") (Rowland Decl. Ex. L) at 280:4-281:25; Deposition of Walter Eugene Matthews, taken Dec. 15, 2005 ("Matthews Dep.") (Rowland Decl. Ex. M) at 50:22-51:9; Deposition of Milam W. Ford, taken Jan. 19 & 20 ("Ford Dep.") (Rowland Decl. Ex. N) at 454:6-456:8; Deposition of Ariel Fernando, taken July 18 & 19, 2007 ("Fernando Dep.") (Rowland Decl. Ex. O) at 192:20-193:13; Deposition of Albert L. Carver, taken July 12 & 13, 2007 (Rowland Decl. Ex. P) at 292:12-294:17; Deposition of Michael Brodeur, taken July 26 & 27, 2007 (Rowland Decl. Ex. Q) at 163:11-167:19.) In fact, most of plaintiffs' company witnesses were unable to testify to the existence of, much less the content of, *any* communications between defendants and third-party payor plaintiffs. (*See, e.g.*, Brown Dep. (Rowland Decl. Ex. L) at 280:4-281:25; Matthews Dep. (Rowland Decl. Ex. M) at 50:23-51:9; Ford Dep. (Rowland Decl. Ex. N) at 454:6-456:8; Fernando Dep. (Rowland Decl. Ex. O) at 192:20-193:13).) None of them could recall ever (i) being detailed by defendants on off-label uses of Neurontin, (ii) attending a conference, advisory board, or other meeting relating to Neurontin, or (iii) knowing of any specific instances of a fraudulent communication. In addition, as discussed above, several plaintiffs initially responded to defendants' interrogatories on the subject of communications by stating that they were aware of none, and recent supplemental responses by some plaintiffs purporting to identify such communications offer no support for the contention that any of these were fraudulent. In the circumstances, the suggestion that

defendants should be put to great burden to search for proof that plaintiffs do not even believe exists makes no sense.

**B.      Plaintiffs' Request for Document Discovery Is Untimely and Unjustified**

Plaintiffs have served numerous document requests on defendants, and have noticed and/or taken the deposition of more than thirty witnesses. Yet plaintiffs have failed utterly to explain why, if the documents they seek are of the clear relevance that they claim, they waited to this late date in the litigation to file their motion to compel. (Pls.' Mem. at 7.)[1] Plaintiffs served the document requests on which they now purport to move on March 11, 2005. Since then, defendants consistently have objected to those requests. (*See* Letter from Deborah L. MacGregor to Linda P. Nussbaum and Edward Notargiacomo, dated Aug. 10, 2007 ("MacGregor Letter") (Rona Decl. (Dkt # 829) Ex. C) at 1-2; Defendants' Responses and Objections to Class and Non-Class Plaintiffs' First Request for Production of Documents, dated Apr. 11, 2005 ("Defs.' RFP Resp.") (Rowland Decl. Ex. R) at 43-44; 47-48; 144-46; 151-52.) Although plaintiffs now assert that various requests called for the production of communications with third-party payors, defendants at no time conceded the validity of that assertion. While certain of the requests implicated, as an incidental matter, certain communications between defendants and third-party payors, none of them, nor even all of them together, could be construed to call for each such communication with every third-party payor. (*See id.*)

Furthermore, defendants have met and conferred with plaintiffs on numerous occasions and at length as to the exact scope of defendants' production, and plaintiffs have long known the identities of the custodial files that defendants planned to—and did—produce. (MacGregor

---

[1] In fact, plaintiffs acknowledge that they sought the production of a related category of documents earlier during the course of discovery, at an appropriate time. (Pls.' Mem. at 7 n.6.)

8

Letter (Rona Decl. (Dkt # 829) Ex. C) at 2.)  Defendants also objected to the production of documents in response to all but one of the requests plaintiffs now claim call for the production of communications between defendants and third-party payors, on the ground that, *inter alia*, documents responsive to such requests were more appropriately sought from third parties (e.g., the third-party payors themselves).  (Defs.' RFP Resp. (Rowland Decl. Ex. R) at 43-44; 47-48; 144-46; 151-52.)  The majority of the identified requests seek not "communications," but rather documents related to decisions made by the third-party payors.  As defendants pointed out, such documents were (presumably) created by the third-party payors or other third parties such as pharmacy benefit managers, and would be in the possession of those parties, not defendants.  In light of defendants' clear statement that they would not produce documents in response to the identified requests, defendants' statements that they believed that the identified requests called for documents in the possession of third parties, and defendants' unambiguous disclosure of what they intended to produce, plaintiffs have no excuse for failing to raise the issue before this summer.

Document discovery originally was to close on April 15, 2007, and was later extended to April 30, 2007.  (*See* Discovery Order No. 7 (Dkt # 582) at 3; Discovery Order No. 11 (Dkt # 735) at 2.)  In the normal case, this schedule would have dictated the filing of a motion to compel the production of documents well prior to April 30.  Discovery Order No. 13, however, allowed in part plaintiffs' motion to extend fact discovery, stating that:  "The parties shall confer in order to resolve or to clarify any follow-up issues from the document discovery.  Motions to compel arising out of the document discovery, if any, must be filed no later than the filing deadlines set for the September 20, 2007 Discovery Hearing . . . ."  (Dkt # 801 at 2.)  This limited dispensation was based on plaintiffs' arguments that "given the timeliness of Defendants' document

production in this case"—in essence, according to plaintiffs, because defendants had continued to produce significant volumes of documents up to (and after) the close of document discovery[2]—plaintiffs "still cannot be sure that they have received all relevant requested documents from Defendants" and "need additional time to confer with Defendants over the completeness of Defendants' response to requests already propounded." (Sales and Marketing Plaintiffs' Motion for Extension of Fact Discovery Deadline, filed July 3, 2007 (Dkt # 776) at 9-10.) This explanation clearly cannot justify a motion to compel discovery that defendants had objected to more than two years ago, and regarding which there was complete clarity that documents would not be produced. Whether or not plaintiffs truly desired the documents now at issue, the appropriate time to make their motion has long since passed.

Not only have plaintiffs failed to offer an excuse for the untimeliness of their Motion, their delay in bringing the Motion until after defendants have completed the vast majority of their production of documents means that the burden associated with plaintiffs' demands would be even greater than otherwise.[3] As noted in defendants' responses to plaintiffs' requests for production, many of the documents plaintiffs seek are better obtained from some other source (often plaintiffs themselves), and it would be unduly burdensome to force defendants to conduct a search to see whether they possess such documents. Because defendants objected to producing these documents, and plaintiffs never pressed the issue, defendants have neither systematically collected nor reviewed the documents of all personnel who may have communicated with third-

---

[2] It should be noted that defendants disputed then, and continue to dispute, plaintiffs' characterization of defendants' document production in this case. (*See, e.g.*, Defs.' Resp. to Sales and Marketing Pls.' Mot. for Ext. of Fact Discovery Deadline (Dkt # 787) at 4-6.)

[3] We note that plaintiffs' argument on burden (Pls.' Mem. at 6-7) boils down to the nonsensical suggestion that because defendants' already have produced three million pages of documents, anything else less than another three million should be relatively painless. We are aware of no support, in either law or logic, for this analysis.

party payors. To require defendants to do so now would be not only highly burdensome, but would also require a significant extension of the fact discovery period. These are burdens that defendants should not have to bear, particularly when considered in light of the dubious relevance to the claims and defenses in this litigation and in the context of defendants' already significant and exhaustive production of documents, including without limitation the production of the files of marketing personnel (including documents relating to third-party payors) and files from the Warner-Lambert Managed Care CBU (a/k/a the Healthcare Management CBU).

**C.     Defendants Offered A Reasonable Compromise as to the Scope of a Rule 30(b)(6) Deposition on Communications Between Defendants and Plaintiffs**

In connection with the multiple meet-and-confer sessions that the parties had with respect to the scope of plaintiffs' Rule 30(b)(6) deposition notice (Pls.' Mem. at 3),[4] defendants previously offered a substantial and reasonable compromise in an attempt to avoid motion practice. Specifically, defendants offered to produce a witness to testify "regarding the identification of employees responsible generally for communications with the third-party payors, the types and categories of such communications, and to identify any databases that may exist containing the contents of such communications." (Rowland Letter (Rona Decl. (Dkt # 829) Ex. A) at 2.) Defendants also noted that the production of documents from the files of the marketing team, and the deposition of numerous marketing personnel, would already have provided plaintiffs with extensive discovery as to the content of any communications regarding

---

[4] Plaintiffs in their motion argue only that defendants be compelled to produce a witness to testify as to Topics 2, 3, and 10. To avoid any ambiguity, defendants note that they also objected to producing a witness in response to Topics 1 and 4 (relating to communications between defendants and third-party payors), and 5-9 (unrelated to such communications). Defendants offered in a letter dated August 3, 2007 to produce a witness to testify on these topics as limited by that letter. Defendants stand by that offer. Because plaintiffs did not address any arguments to Topics 1, 4, or 5-9, defendants ask that the Court limit any order on plaintiffs' Motion to Topics 2, 3, and 10.

Neurontin.[5]  Plaintiffs rejected defendants' proposed compromise and nowhere refer to it in their papers.

In light of the extensive discovery that defendants already have provided, the benefit that plaintiffs might derive from the demanded deposition of a company witness prepared to testify as to the content of every communication between defendants and third-party payors is at most marginal.  Plaintiffs have not demonstrated and cannot demonstrate otherwise:  Instead, they have failed utterly to explain why the testimony they seek is necessary to tell them the content of communications, which, if they occurred at all, involved the plaintiffs as participants.  Nor can plaintiffs justify the dramatic expansion of discovery that would occur if defendants were required to prepare and produce a witness to testify as to the content of every communication with *all* third-party payors, rather than just those six making the instant Motion.[6]

Even should this Court determine that plaintiffs are entitled to some of the discovery they seek through the 30(b)(6) notice, the testimony of a company witness is not an efficient means by which to obtain such information.  Plaintiffs have scheduled the deposition of several former employees who were employed by the Managed Care Customer Business Unit ("CBU") at Warner Lambert, and the testimony of these individuals, together with the extensive document discovery already produced, the testimony of other fact witnesses, and the content of the Merlin and Pfoenix databases should suffice to provide plaintiffs with any discovery the Court may find they deserve.

---

[5] Indeed, since the time of the last meet-and-confer, defendants have learned that any communications between defendants and third-party payors relating to clinical information about Neurontin were likely captured in the Merlin and Pfoenix databases already produced to plaintiffs.  These databases document requests for information made to Medical Information personnel and also reflect the content of their response.

[6] Were such an expansion allowed, the interests of fairness and due process would require that defendants be permitted to obtain discovery from those third-party payors who are not party to this litigation in relation to such communications.  This would, of course, require a significant extension of the discovery schedule.

**CONCLUSION**

For all the foregoing reasons, defendants respectfully request that the Court deny Sales and Marketing Plaintiffs' Expedited Motion To Compel Discovery Relating to Communications Between Defendants and Third-Party Payor Plaintiffs.

Dated: September 11, 2007

                                      DAVIS POLK & WARDWELL

                                      By:  /s/ James P. Rouhandeh
                                            James P. Rouhandeh
                                            Matthew B. Rowland
                                    450 Lexington Avenue
                                    New York, New York 10017
                                    (212) 450-4000

                                            - and -

                                    HARE & CHAFFIN

                                    By:  /s/ David B. Chaffin
                                            David B. Chaffin

                                    160 Federal Street
                                    Boston, Massachusetts 02110
                                    (617) 330-5000

                                    *Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*


**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on September 11, 2007.

                                            /s/ David B. Chaffin