UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------ x
:
In re:  NEURONTIN MARKETING, SALES PRACTICES, :
AND PRODUCTS LIABILITY LITIGATION :
: MDL Docket No. 1629
------------------------------------------------ x
:
THIS DOCUMENT RELATES TO: : Master File No. 04-10981
:
: Judge Patti B. Saris
------------------------------------------------ x
: Magistrate Judge Leo T.
HARDEN MANUFACTURING CORPORATION; : Sorokin
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, :
dba BLUECROSS/BLUESHIELD OF LOUISIANA; :
INTERNATIONAL UNION OF OPERATING ENGINEERS, :
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and :
LORRAINE KOPA, on behalf of themselves and all others :
similarly situated, v. PFIZER INC. and WARNER-LAMBERT :
COMPANY. :
:
:
------------------------------------------------ x
:
THE GUARDIAN LIFE INSURANCE COMPANY OF :
AMERICA v. PFIZER INC. and :
:
AETNA, INC. v. PFIZER INC. :
:
:
------------------------------------------------ x

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
LEAVE TO TAKE ADDITIONAL DEPOSITIONS OF SPECIFIED
<u>CURRENT AND FORMER EMPLOYEES OF DEFENDANTS</u>**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

Defendants Pfizer Inc. and Warner-Lambert Company respectfully submit this memorandum in opposition to plaintiffs' Motion for Leave to Take Additional Depositions of Specified Current and Former Employees of Defendants (Dckt # 846) ("Plaintiffs' Motion").

### PRELIMINARY STATEMENT

With the close of fact discovery only weeks away, plaintiffs now ask the Court to increase the number of depositions they may take of defendants' current and former employees from 30 to 43, a last-minute increase of almost 50%.[1]  Plaintiffs' Motion fails to provide good cause to disregard the 30-deposition limit already set and reaffirmed by the Court – a limit that itself is already three times the number under the Federal Rules.  As explained in detail below, (1) the additional depositions plaintiffs now seek would provide, at best, cumulative testimony of only the most tangential relevance; and (2) no new information of significance about any of these proposed additional witnesses has emerged to justify an expansion of the Court's 30-deposition limit.  Permitting these depositions to go forward would result in substantial and unnecessary additional expense and would cause unwarranted disruption for still more witnesses and their employers.

Moreover, plaintiffs' last-minute request functionally disregards the Court's "expectation that the parties will meet the new deadline[]" of October 15, 2007 for the close of fact discovery. Discovery Order No. 13 (Dckt # 801), at 2.  It was not until September 4, 2007 – with only five weeks before the close of fact discovery – that plaintiffs raised with defendants for the first time their wish to depose the twelve individuals they now identify in this motion.  See September 11,

---

[1] In addition to the 12 additional deponents Sales and Marketing Plaintiffs seek in this motion, the Products Liability Plaintiffs are separately moving this Court for leave to depose Lester Reich, who is not on the Sales and Marketing Plaintiffs' list of additional witnesses.  See Products Liability Plaintiffs' Motion to Compel Discovery and Extend the Deadlines for Services Notices to Admit (Dckt # 844).

2007 Declaration of Christopher J. Roche ("Roche Decl."), at ¶ 3.  At the time they did so, eight two-day depositions of defendants' current and former employees still remained to be taken in the weeks leading up to October 15.  Given that many of the witnesses plaintiffs now identify are overseas and/or are no longer employed by Pfizer, contacting, scheduling, preparing, and producing even some of these proposed new witnesses for testimony would likely take many weeks, even if the parties were not already occupied virtually every business day between the hearing on this motion and the current close of fact discovery with other depositions that have already been scheduled consistent with the Court's current orders.  Under the circumstances, therefore, plaintiffs' motion for additional depositions carries with it an unarticulated requirement that the Court extend the fact discovery deadline yet again.

The Court has carefully crafted a framework for the orderly conduct of discovery in this matter that contemplated an unusually large number of depositions of defendants' current and former employees.  The Court should not allow plaintiffs to subvert the present schedule with their belated request.

## ARGUMENT

I.  **Plaintiffs Have Failed To Demonstrate That Good Cause Exists for Additional Depositions**

   A.  **The Court's Existing 30-Deposition Limit Gives Plaintiffs an Unusual Amount of Discovery, Is Aligned with the Current Discovery Schedule, and Should Not Be Disturbed**

Months ago, the parties briefed and argued the appropriate number of depositions that plaintiffs should be permitted to take in this action.  Following argument, this Court permitted plaintiffs to depose 30 of defendants' current or former employees.  See CMO 5 (Dckt 736), at 2.  The Court's 30-deposition limit is unusually high – three times the number permitted per side under Federal Rule of Civil Procedure 30(a)(2)(A) and Local Rule 26.1(c), and nearly three

times the average number of depositions per defendant taken in <u>In re Pharmaceutical Industry Average Wholesale Price Litigation</u>, MDL No. 1456.

The 30 depositions permitted by the Court have taken substantial time and generated a vast amount of testimony. In the three months it has taken to complete depositions of only the first twenty-two witnesses, plaintiffs have obtained nearly forty-four days and hundreds of hours of testimony, spanning more than twelve thousand of pages of deposition transcript. In addition, the parties are scheduled complete eight remaining depositions in the weeks before the October 15 fact-discovery deadline, resulting in up to sixteen more days and more than one hundred hours of additional testimony. Simply completing the 30 company depositions permitted in the Court's order will more than occupy the remaining days in the Court's current fact discovery period.

Plaintiffs' eleventh-hour requests to depose an additional thirteen current or former employees of defendants in the final three weeks before the close of fact discovery ignores the discovery schedule set by the Court, in particular the October 15 fact discovery deadline. The additional twelve depositions sought in the Sales and Marketing Plaintiffs' motion is much more than the "modest expansion" plaintiffs claim it is. <u>See</u> Pls. Mem. at 1. Moreover, the Products Liability Plaintiffs are separately moving this Court for leave to depose yet another of defendants' employees, Lester Reich, over and above the twelve depositions the Sales and Marketing Plaintiffs now seek. <u>See</u> Products Liability Plaintiffs' Motion to Compel Discovery and Extend the Deadlines for Services Notices to Admit (Dckt # 844). Plaintiffs' apparently uncoordinated effort to increase the number of depositions undermines the efficiencies this MDL seeks to achieve. <u>See, e.g.</u>, CMO 1, at 3 ("[I]n order to promote judicial economy and avoid duplication, the Court finds that it would be appropriate to provide for consolidation and/or

4

coordination of all actions filed, removed to, or transferred to this District and for an organization of Plaintiffs' counsel to coordinate the efforts of counsel in these actions.")

The Court set the current schedule – including the current fact discovery cut-off –noting that "[t]he discovery in this MDL has been substantial"; and the Court made clear in setting the schedule that it was proceeding "with the expectation that counsel will meet the new deadlines." Discovery Order No. 13 (Dckt # 801) at 1, 2. In making this motion – which would necessitate a substantial extension to the current schedule – plaintiffs are effectively asking the Court to abandon this expectation.[2]

**B.    Plaintiffs Cannot Demonstrate Good Cause to Exceed the Court Mandated Limit of Thirty Depositions**

Plaintiffs have failed to demonstrate the good cause required by CMO 5 to justify abandoning the Court's 30-deposition limit. See CMO 5 (Dckt 736) at 2. Good cause does not exist where, as here, plaintiffs (i) seek to depose individuals in areas in which they have already taken multiple depositions and in which additional testimony would be duplicative, cumulative, and unnecessary, and (ii) seek to depose witnesses whose identities plaintiffs have or could have known to them for months, if not years. See, e.g., Berwind Prop. Group Inc. v. Envt'l Mgmt. Group, 233 F.R.D. 62, 66-67 (D. Mass. 2005) (holding that "good cause" under Fed. R. Civ. P. 16(b) does not exist to permit plaintiffs to amend their complaint where plaintiffs did or could

---

[2] In response to the Product Liability Plaintiffs' Motion to Dismiss Strickland and motions for leave to withdraw as counsel from the Mendoza and Fenelon actions, defendants are urging that plaintiffs' counsel's gamesmanship and disruption of the Track One case-specific discovery process necessitates the selection of new Track One cases and trial workup cases and an extension of the Track One case-specific discovery schedule and subsequent deadlines in the products liability litigation. Importantly, this requested extension will lead to additional case-specific discovery in only a few specific Track One cases. Nothing about this narrowly-tailored extension should affect the completion of general discovery on October 15, 2007. Indeed, nothing has occurred that in any way justifies the requested re-opening of the general discovery floodgates and an extension of general (i.e., non-case-specific) discovery beyond October 15.

have known facts sufficient to identify the parties they wanted to add before scheduling order was entered).

### 1.    Additional Depositions Would Be Duplicative and Unnecessary

Plaintiffs' depositions to date of defendants' current and former employees have already been unnecessarily cumulative and duplicative.  The additional witnesses that plaintiffs seek leave to depose would only compound this inefficiency, wasting still further resources on additional, cumulative testimony.

> The <u>Manual for Complex Litigation</u> cautions:
>
> Depositions are often overused and conducted inefficiently, and thus tend to be the most costly and time-consuming activity in complex litigation.  The judge should manage the litigation so as to avoid unnecessary depositions, limit the number and length of those that are taken, and ensure that the process of taking depositions is as fair and efficient as possible.

D.F. Herr, <u>Manual for Complex Litigation, Fourth</u>, § 11.45 (2006).  Similarly, the Advisory Committee Notes to the 1993 amendments to Federal Rule of Civil Procedure 30, which added to the Rule a limit of ten depositions per side absent leave of the court or consent of the parties, state:  "One aim of this revision is to assure judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions in a case without agreement of the other parties."  Fed. R. Civ. P. 30, advisory committee's notes to 1993 amendments.

Rule 26(b)(2) provides that a court shall limit the frequency or extent of use of the discovery methods otherwise permitted if the discovery sought is unreasonably cumulative or duplicative or where the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought.  <u>See</u> Fed. R. Civ. P. 26(b)(2)(C); <u>see also</u> <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 244 F.3d 189, 193 (1st Cir. 2001) (When a party seeks

discovery similar to that already produced without a showing that "any new, relevant information will be obtained," a court can prevent the discovery because it would be an "undue burden . . . to permit such a fishing expedition."); Ardolino v. Met. Life Insur. Co., No. 00-12115, 2001 U.S. Dist. LEXIS 14318, at *10-11 (D. Mass. July 2, 2001) ("[T]his court may limit and deny relevant discovery where it is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, and less expensive.") (internal quotations and citations omitted).

      Plaintiffs depositions of defendants' current and former employees thus far illustrate the validity of the concerns articulated in the Manual for Complex Litigation and those underlying the 1993 amendments to Federal Rule of Civil Procedure 30.  For example, plaintiffs have deposed six members of the U.S. Neurontin Marketing Team, four sales vice-presidents and regional managers, two Medical Directors, two members of Pfizer's Regulatory Affairs Department, and, among others, two members of Pfizer's Medical Information Group.  Plaintiffs have frequently used the same documents and pursued the same lines of questioning in each of the depositions taken to date, regardless of the individual witness's title, responsibilities or personal knowledge.

      Plaintiffs now seek to question additional current or former employees in areas in which plaintiffs have already deposed multiple witnesses.  For example, plaintiffs seek leave to depose David Probert because he was a member of the U.S. Neurontin Marketing Team.  Plaintiffs, however, have already deposed six members of the U.S. Neurontin Marketing Team – including Meg Yoder and Suzanne Doft, to whom Mr. Probert reported directly – and they are scheduled to depose a seventh at the beginning of October.  In those depositions, plaintiffs have had ample opportunity to explore the U.S. Neurontin Marketing Team's relationship with medical

marketing vendors. Nowhere in their current motion do they provide a rational explanation for why Mr. Probert's testimony would add anything non-cumulative to the current record.

Plaintiffs also seek leave to depose Rady Johnson because he served on the Neurontin Review Committee. Plaintiffs, however, will have deposed no fewer than 10 participants in Neurontin Review Committee meetings, including Review Committee members Leslie Tive, Robert Glanzman and Lucy Castro, as well as numerous members of the U.S. Neurontin marketing team whose pieces were submitted to the Review Committee and who therefore participated in Review Committee meetings. In those depositions, plaintiffs have had ample opportunity to learn what pieces the Review Committee reviewed and the standards the Review Committee employed. Moreover, because Mr. Johnson is an attorney, even if he had knowledge greater or different than those Review Committee participants that plaintiffs have already deposed, much of testimony would be protected from disclosure by the attorney-client privilege.

Similarly, with respect to plaintiffs' current request for the testimony of Drusilla Scott, plaintiffs already deposed Lucy Castro, one of Pfizer's regulatory liaisons with the FDA in connection with Pfizer's neuropathic pain and post-herpetic neuralgia NDAs. Plaintiffs extensively covered the initial neuropathic pain and amended post-herpetic neuralgia submissions during Ms. Castro's deposition. Plaintiffs also deposed Lloyd Knapp, who testified regarding labeling issues surrounding the submissions and subsequent post-herpetic neuralgia approval. Other than offering their own unsupported supposition and impugning the testimony under oath that has already been offered on these matters, see Pls. Mem. at 4, plaintiffs provide no reason why they should be given leave to now depose Ms. Scott on these identical issues.

Likewise, as to Angela Crespo, plaintiffs have also already deposed John Marino, the Worldwide Marketing Team Leader for Neurontin, to whom Ms. Crespo reported. Plaintiffs had

8

ample time to seek testimony from him relating to Pfizer's efforts to publish the results of clinical trials conducted abroad – their stated reason for seeking Ms. Crespo's testimony now.[3] Plaintiffs should not now be permitted to depose Ms. Crespo – who had no direct responsibility for any Neurontin marketing in the U.S. – regarding those same issues.

In the same way, plaintiffs seek leave to depose Elizabeth Mutisya to question her on the status and outcomes of European clinical studies, asserting that, as a medical director, Ms. Mutisya would be kept abreast of the status of such trials in order to remain knowledgeable about the state of medical science relating to Neurontin. Pls. Mem. at 3-4. Plaintiffs, however, have already deposed Leslie Tive (who, as Neurontin Medical Team Leader, supervised Ms. Mutisya) and Robert Glanzman (who, like Ms. Mutisya, was a medical director for Neurontin), both of whom also had and have extensive knowledge about studies bearing on the state of medical science of Neurontin. Permitting plaintiffs to now depose Ms. Mutisya on these same issues would result in needless duplication of effort and delay.

Plaintiffs' requests to depose individuals who have had no role specific to Neurontin are equally unjustified. Plaintiffs seek leave to depose Donna Ricci purportedly to question her about certain company-wide Standard Operating Procedures ("SOPs") concerning how Pfizer's Medical Information Department communicated with physicians. Pls. Mem. at 6. Multiple witnesses, however, testified that Dr. Ricci had no role specific to Neurontin. See Roche Decl.

---

[3] Plaintiffs misleadingly suggest that defendants somehow kept from them a research report on a Spanish study on Neurontin and bipolar when in fact it had been produced long ago. (Pl. Mem. at 3.) On September 5, 2007 (before plaintiffs filed the instant motion) counsel for defendants met and conferred with plaintiffs' counsel regarding, inter alia, defendants' disclosure of research reports relating to Neurontin. See Roche Decl. at ¶ 4. Defendants informed plaintiffs that they had produced the research report alluded to by plaintiffs in their papers – relating to clinical study number 945-421-291 – to plaintiff in Young v. Pfizer Inc. et al., 1062/2004 (N.Y. Sup. Ct.), see Roche Decl. at ¶ 4, and that defendants would provide copies of the research reports produced in that action to the Sales and Marketing Plaintiffs to the extent they have not already obtained or cannot obtain copies from the Products Liability Plaintiffs pursuant to their "sharing agreement." Roche Decl. at ¶ 4.

Exh. A; id. Exh. B. Moreover, defendants reached an agreement with the Products Liability Plaintiffs to produce SOPs relating to the preparation of Medical Information standard response documents. Insofar as these documents are relevant at all, they speak for themselves; Dr. Ricci's testimony would add little or nothing to the ways in which these SOPs affected Pfizer's communications with physicians with respect to Neurontin. "The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. Parties are entitled to a reasonable opportunity to investigate the facts—and no more." Vakharia v. Sweedish Convenant Hosp., Case No. 90-C-6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994).

### 2. Plaintiffs Knew the Identities and Roles of Most of the Individuals Whose Depositions They Now Seek Long Before They Had To Select Deponents

Plaintiffs made a conscious decision, based on extensive available information, not to include the 13 additional witnesses they now seek to depose on their list of 30 Court-permitted depositions last spring. Plaintiffs assertion that they could not have known to notice these current and former employees at the time (Pls. Mem. at 7-8) is unsupportable.

In seeking leave to depose Tim Windom, John Knoop, and Larry Perlow – each of whom plaintiffs claim has information relevant to the conduct at Parke-Davis that was at issue in the Franklin matter – plaintiffs do not even seriously attempt to suggest that any newly discovered information supports their last-minute request. Plaintiffs have long had access to the discovery – including the hundreds of thousands of pages of documents that defendants produced – that was completed in Franklin. In fact, in the case of Mr. Knoop, plaintiffs have had access to his Franklin deposition, which was actually taken by one of plaintiffs' counsel in this matter. Though plaintiffs do admit that Mr. Knoop was deposed in Franklin, they argue that they should

10

be permitted to depose him now because Mr. Knoop was "never asked about many of the issues in this case. For example, he was not asked whether the marketing message for Neurontin was false and misleading." Pls. Mem. at 6. Whether or not plaintiffs' counsel had every opportunity to pose those same questions to Mr. Knoop in <u>Franklin</u>, the transcript of the deposition and any perceived shortcomings of the questioning in that case have been in plaintiffs' hands in this case for years. Plaintiffs articulate no reason whatsoever why any of these three witnesses could not have appeared on their initial list of 30.

Plaintiffs' arguments concerning additional Pfizer-era witnesses are equally unpersuasive. Plaintiffs wrongly assert that "the bulk of Defendants' document production started shortly before [May 1, 2007] and continued beyond it." Pls. Mem. at 8. Defendants have previously shown that plaintiffs' characterization of defendants' document production history is misleading and incomplete. <u>See</u> Defendants' Response to Sales and Marketing Plaintiffs' Motion For Extension of Fact Discovery Deadline And For Leave to Take Additional Written and Deposition Fact Discovery (Dckt # 787), at 4-6. Plaintiffs had or had access to the bulk of defendants' documents well before they selected their 30 deponents, and they chose not to pursue the deposition of any of the witnesses whose depositions they now seek.[4]

For example, defendants produced the vast majority of documents from David Probert's custodial file (nearly 29,000 pages of a total of approximately 31,000 pages) on January 16, 2007, three and a half months before plaintiffs had to identify witnesses. <u>See</u> Roche Decl. Exh. C. Sales and Marketing Plaintiffs apparently conducted only an "initial review of his documents" and decided that they did not need Mr. Probert's deposition. <u>See</u> Pls. Mem. at 5.

---

[4] Plaintiffs' argument that it is unsurprising that they now seek additional depositions giving the complexity of this case, <u>see</u> Pls. Mem. at 8, ignores the fact that the Court was well aware of the complexity of this case when it limited plaintiffs to 30 fact witness depositions.

11

The Products Liability Plaintiffs evidently felt differently, however, and identified Mr. Probert on their initial deponents' list in April 2007, before the plaintiffs collectively made a conscious decision to remove him from their combined lists.  See Roche Decl. Exh. D.  Even setting aside the cumulativeness of any testimony from Mr. Probert (see Section I.B.1 supra), plaintiffs point to no fact that they were not aware of (or that they could not have been aware of had they conducted a thorough review of Mr. Probert's documents) that justifies permitting them to revisit that decision at this stage of the litigation.

Similarly, in February 2007 defendants directed plaintiffs to documents – most of which plaintiffs had access to much earlier than February 2007 – from which plaintiffs could identify the names of employees, including Rady Johnson, who had involvement with the Neurontin Review Committee.  See Roche Decl. Exh. E.  Plaintiffs nevertheless made a conscious decision to seek depositions from some members of the Review Committee but not others; this Court should not permit plaintiffs to revisit that decision now to permit plaintiffs to take additional, cumulative testimony.

Moreover, plaintiffs' argument that they need to depose certain additional individuals because they only recently learned during the course of depositions that Parke-Davis and Pfizer conducted clinical trials in Europe strains credulity.  See Pls. Mem. at 3, 6-7.  Indeed, the alleged suppression of the results of a U.K. clinical study is central to plaintiffs' complaint.  See, e.g., Third Amended Class Action Complaint (Dckt # 580) at ¶ 261.  And defendants produced research reports and articles relating to clinical trials conducted in Europe and elsewhere to plaintiffs years ago.

Plaintiffs' request to depose Joan Kaplan based on her contact with physicians outside the United States – an issue that is wholly irrelevant to the issues in this case, which relates to U.S

marketing only – is similarly unfounded, and it undermines the resolution the parties reached concerning the production of documents from her files. Defendants argued in response to plaintiffs' motion to compel documents from her custodial file that, because Ms. Kaplan did not have responsibilities for Neurontin in the United States, the burden of producing documents from her files was not justified. See Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Defendants' Production of Documents (Dckt # 623), at 10. In their reply brief in support of their motion to compel, plaintiffs argued that:

> If it is true that Ms. Kaplan did not do any work with physicians inside the United States (a fact that is contradicted by the documents produced thus far in the case), then the Defendants should, at a minimum, be required to identify her US counterpart. Such a move would likely eliminate this point of contention between the parties.

Plaintiffs' Reply In Support of Their Motion to Compel Defendants' Production of Documents (Dckt # 629), at 5. The parties reached agreement on this point, which the Court incorporated in Discovery Order No. 9, see Dckt # 632 at 5.[5] Plaintiffs now, however, argue that they need to depose Ms. Kaplan precisely because of her contacts with physicians outside the United States. Pls. Mem. at 6-7. Even if her testimony were even remotely relevant, having known Ms. Kaplan's role since the beginning of this year that primarily involved working with physicians outside the United States, plaintiffs cannot now claim their failure to include her among their 30 deponents should be excused and that good cause exists to permit them to depose her at this stage of the litigation.

---

[5] On February 23, 2007, pursuant to Discovery Order No. 9, defendants wrote to plaintiffs informing them that the activities Ms. Kaplan was responsible for abroad in her role as Professional Relations Manager were shared among members of the U.S. Neurontin Marketing Team. See Roche Decl. Exh. F. Plaintiffs have deposed six members of the U.S. Neurontin Marketing Team and will be deposing a seventh at the beginning of October. Plaintiffs have thus had many opportunities to explore the activities of the U.S. Neurontin Marketing Team and its members.

Finally, plaintiffs' assertion that they want to depose John Dauser and Mark Emtiaz because they only recently learned that Mr. Dauser and Mr. Emtiaz were "account representatives who had contacts with third-party payor Kaiser on Pfizer's behalf" (Pls. Mem. at 7) borders on the absurd. Kaiser – one of the Coordinated Plaintiffs – must be charged with knowledge of the identities of those at Pfizer with whom it has had communications concerning Neurontin. Plaintiffs cannot now be permitted to treat this as newly discovered information.[6]

Plaintiffs made conscious decisions based on the extensive facts before them last spring not to include these individuals in their list of 30 deponents. There is no reason for the Court to permit plaintiffs to revisit those decisions now because they chose unwisely or inefficiently based on the information they then had.

## II. Even if Plaintiffs Could Establish That One of the Proposed New Witnesses Would Provide Relevant, Non-Cumulative Testimony, Plaintiffs at Most Should Be Permitted To Substitute Any Such New Witness for One of the Eight Remaining Depositions, Not To Expand the Total Number of Depositions

For the reasons discussed above, plaintiffs have failed to establish good cause to revisit the Court's order permitting only 30 depositions of defendants' current and former employees. Plaintiffs made decisions about who to depose, and who not to depose, within the framework this Court established for the conduct of depositions in this case. Plaintiffs should not now be permitted to revisit their prior decisions.

---

[6] In addition, defendants' opposition to Sales and Marketing Plaintiffs' Motion To Compel Discovery Relating to Communications Between Defendants and Third-Party Payors, also filed today, makes clear that plaintiffs have already obtained extensive discovery relating to communications between defendants and third-party payors, that plaintiffs have failed to show good cause for further discovery in this area, and that, in any case, plaintiffs are as knowledgeable as Mr. Dauser or Mr. Emtiaz about defendants' marketing to Kaiser. As defendants' opposition makes clear, a Rule 30(b)(6) deposition concerning communications between defendants and third-party payors would not be appropriate; in the event the Court were to permit such a deposition, however, there would be even greater reason to deny the instant motion to allow the depositions of Mr. Dauser and Mr. Emtiaz, as their testimony would likely largely be duplicative of any 30(b)(6) witness.

Even if plaintiffs' could establish that any one of the thirteen newly identified witnesses would provide substantial, relevant, noncumulative testimony and should otherwise be deposed – which they have not – and the Court were persuaded that one of more of those witnesses should be deposed, plaintiffs should be required to do so within the existing framework without disturbing the Court's 30-deposition limit. Nowhere do plaintiffs even attempt to show good cause for why the Court should permit <u>both</u> the 8 remaining depositions on the calendar <u>and</u> the 13 new depositions they now seek (to say nothing of the resulting substantial extension to the discovery schedule that would be required). Accordingly, if the Court were to allow any of the additional depositions plaintiffs now request, plaintiffs should – at most – be permitted to replace one of their eight remaining scheduled witnesses with one of the new witnesses they now seek, recognizing that permitting even this kind of more modest, last-minute change would generate substantial inefficiency and expense.

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court deny Plaintiffs' Motion for Leave to Take Additional Depositions of Current and Former Employees of Defendants.

Dated: September 11, 2007

                                            DAVIS POLK & WARDWELL

                                            By:   /s/ James P. Rouhandeh
                                                    James P. Rouhandeh

                                            450 Lexington Avenue
                                            New York, New York 10017
                                            (212) 450-4000

                                                    - and -

HARE & CHAFFIN

By:   /s/ David B. Chaffin
       David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

### CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on September 11, 2007.

        /s/ David Chaffin