UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981 |
| | Judge Patti B. Saris |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY. | Magistrate Judge Leo T. Sorokin |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC. and | |
| AETNA, INC. v. PFIZER INC. | |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
<u>FINANCIAL DATA RELATED TO NEURONTIN</u>**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

Defendants Pfizer Inc. and Warner-Lambert Company respectfully submit this opposition to Plaintiffs' Motion to Compel Production of Financial Data Related to Neurontin (Docket # 856) ("Plaintiffs' Motion").

## PRELIMINARY STATEMENT

Filed less than two days after plaintiffs first apprised defendants of any possible dispute on the subject, Plaintiffs' Motion seeks "all occurrence level financial information concerning expenditures related to Neurontin from 1994 to 2004, including any data relating such expenditures to a particular indication." Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel Production of Financial Data Related ("Pls. Mem."), at 2. Plaintiffs' Motion should be denied.

First, plaintiffs' request – for all such data that in any way relates to Neurontin over a ten-year period, spanning two companies – is overly broad and almost surely would be unduly burdensome, particularly at this late stage. Moreover, based on the limited investigation defendants have conducted in the few days following plaintiffs' first communication regarding the possibility of this motion, it appears that defendants do not even maintain the data at issue on an indication-by-indication basis, contrary to plaintiffs' unfounded speculation. Assuming defendants' preliminary understanding of the data bears out, none of plaintiffs' articulations of the potential relevance of this data apply, and therefore none of those articulations would justify the substantial burdens involved in collecting and producing it.

Second, plaintiffs' motion is grossly untimely, having been made over four months after the April 2007 close of document discovery, and without any effort meaningfully to meet and confer under Local Rule 7.1(2) to narrow the issues prior to the motion deadline. Plaintiffs have known what financial data defendants had produced for many months – the parties previously

conferred regarding these issues in January 2007. Since that time, plaintiffs made no effort to further discuss with defendants the scope of defendants' productions until the day plaintiffs' motion was due, when plaintiffs informed defendants for the first time that they believed defendants' April 2007 productions of financial data and information were inadequate. Plaintiffs then filed the instant motion seeking an order requiring production of a sweeping amount of financial data.

In proceeding this way, plaintiffs did not meaningfully comply with Local Rule 7.1(2) or this Court's specific order that the parties "confer in order to resolve or clarify any follow-up issues from the document discovery." Discovery Order No. 13 (Dckt. 801), at 2. Even if it were timely and not otherwise overbroad and burdensome, Plaintiffs' Motion should further be denied on that ground alone.

## BACKGROUND

Defendants' responded and objected to Plaintiffs' First Request for Production of Documents nearly two and a half years ago. See Dckt. # 857, Exh. A. On November 20, 2006, defendants responded and objected to request numbers 12, 14 and 15 in plaintiffs' Third Request for Production of Documents (which plaintiffs describe as putting a "finer point" on their prior requests) as overly broad, unduly burdensome and duplicative of requests in Plaintiffs' First Request for Production of Documents. See Dckt. # 857m Exh. B. The parties met and conferred on January 4th, 11th, and 19th regarding the scope of these requests, during which conferences defendants told plaintiffs what financial data they were willing to produce to plaintiffs. See Declaration of Christopher J. Roche ("Roche Decl."), dated September 11, 2007, at ¶ 3. On

April 16, 2007, defendants produced data consistent with the understanding they had articulated in the meet and confer sessions.[1]

Only months later, on September 6, 2007 – the day motions to be heard at the Court's September 20 discovery hearing were due – did Plaintiffs inform defendants that they now believe defendants' production of financial data relating to Neurontin is insufficient. See Roche Decl. Exh. A. Plaintiffs had raised the issue as a meet and confer topic for the first time on September 4, only two days earlier. See Roche Decl. Exh. B. During the parties' September 5th meet and confer session, defendants reminded plaintiffs that the parties had previously met and conferred on this topic and that on April 16, 2007, subject to the discussions and agreements between the parties during their earlier meet and confer sessions, defendants produced documents in response to certain of plaintiffs' requests. See Roche Decl. ¶ 6. Defendants also reminded plaintiffs that the attorney who participated for defendants in those earlier meet and confer sessions – and with whom defendants would need to speak in order to confirm the scope of the parties' prior agreements – was on a leave of absence and was not readily available. See Roche Decl. ¶ 7. Plaintiffs' counsel stated that he would review defendants' April 16, 2007 production and that he would promptly inform defendants if an issue between the parties remained. See Roche Decl. ¶ 8.

The following afternoon – on September 6, 2007, the date this motion was due – plaintiffs wrote to defendants stating for the first time that plaintiffs believed defendants' prior production of financial information relating to Neurontin was inadequate and that plaintiffs

---

[1] Plaintiffs suggest that because defendants referenced only Plaintiffs' First Request for Production of Documents in their April 16, 2007 cover letter accompanying the production, defendants' production did not respond to Plaintiffs' Third Request for Production of Documents. Pls. Mem. at 3. Plaintiffs' assertion ignores the fact that the plaintiffs' later requests were entirely duplicative of plaintiffs' earlier requests. Plaintiffs similarly ignore that defendants' April 16, 2007 production was also made pursuant to the parties' discussions during their meet and confer sessions. See Dckt. # 857, Exh. C.

would move to compel defendants to produce "occurrence level" financial data. Roche Decl. Exh. A. Defendants' counsel promptly called plaintiffs' counsel and told him that defendants did not believe the parties had adequately met and conferred regarding this issue and that both sides needed to ascertain the scope of the parties' prior discussions and agreements to inform their positions relating to any further production of financial information relating to Neurontin. See Roche Decl. ¶ 9. Plaintiffs nevertheless filed a motion to compel early the following day.[2]

## ARGUMENT

**I.    Plaintiffs' Request Is Overbroad and Burdensome and Likely of Limited or No Relevance**

Plaintiffs' seek an order compelling defendants to produce "all occurrence level financial information concerning expenditures related to Neurontin from 1994 to 2004, including any data relating such expenditures to a particular indication." Pls. Mem. at 2. Plaintiffs' request is grossly overbroad, particularly at this late stage of discovery. Plaintiffs appear to seek all such data for any expenditure that in any way relates to Neurontin for a ten year period spanning two companies. See Pls. Mem. at 1-2. Plaintiffs' conclusory statement that the "burden to Defendants [to produce this data] is minimal," Pls. Mem. at 5, is baseless. Although defendants' inquiries into the burden associated with responding to plaintiffs' request are still only preliminary, all indications are that they will be substantial.

Plaintiffs' Motion is all the more objectionable because it fails to account for the significant discovery defendants have already provided to plaintiffs. As this Court has recognized, "[t]he discovery in this MDL has been substantial." Discovery Order No. 13 (Dckt. # 801), at 1. In addition to the materials defendants produced on April 16, 2007, defendants have

---

[2] Plaintiffs counsel served a copy of plaintiffs' Motion via electronic mail on defense counsel on the evening of September 6, 2007.

produced information relating to payments to physicians plaintiffs identified, information relating to payments to authors of articles concerning Neurontin and relevant off-label uses, as well an extract of defendants' BETSY database reflecting payments to speakers in connection with Neurontin and documents from the files of members of the U.S. Neurontin Marketing Team from which plaintiffs could obtain information relating to their requests.  Plaintiffs' overbroad request fails to account for the significant amount of related discovery completed in this matter, and it should be denied.

More fundamentally, plaintiffs have made no showing that defendants' maintain "occurrence level" financial data in the manner plaintiffs claim they do – namely segregated by indication.  Indeed, it appears that plaintiffs filed their motion to compel based on nothing more than plaintiffs' speculation (and hope) that Pfizer maintains such data.  For example, on September 6, 2007 plaintiff's counsel wrote:

> I have to believe that Pfizer and Warner Lambert, like all other pharmaceutical companies, meticulously tracked expenditures related specifically to each of its products on an occurrence basis.  They often also track these expenditures by indication.

Roche Decl. Exh. A.  And in their motion, Plaintiffs assert that "pharmaceutical companies, like all major corporations, meticulously track expenditures related to each of its products on an occurrence basis….[they] also often record expenditure[s] according to the particular indication for which the drug is being promoted."  Pls. Mem. at 1-2.  Plaintiffs conclusory assertions that such data must exist do not make it so.

To the contrary, based on defendants' limited inquiries over the three business days since defendants learned of plaintiffs' motion, it appears that Pfizer did <u>not</u> track Neurontin marketing

6

expenditures by indication.³  See Roche Decl. ¶ 10.  Plaintiffs' sole articulation of their need for – indeed even the basic relevance of – the data they request wholly depends on its being tracked to particular indications.  See, e.g., Pls. Mem. at 4 (arguing that "the relevance of the occurrence level data, <u>particularized by indication</u>, is almost self-evident.") (emphasis added).)  According to plaintiffs, such data would be essential in light of Judge Saris's recent ruling on class certification requiring plaintiffs to "'prove up fraud use by use.'"  Id. (quoting <u>In re Neurontin Marketing, Sales Practices and Prods. Liab. Litig.</u>, MDL Docket No. 1629, 2007 WL 2437954, at *14 (D. Mass. Aug. 29, 2007)).  Setting aside whether the data plaintiffs seek would enable them to do what the Court would require to certify a class – a doubtful proposition at best – neither party can dispute that the data plaintiffs seek will be of no use at all to them if it is not broken down by indication.  Data that is not dissagregated by indication would not allow plaintiffs "to track payments to particular vendors for particular types of promotional events <u>related to particular off label indications</u>"; "to account for expenditures made in furtherance of legitimate <u>on-label uses</u> of Neurontin <u>as opposed to off-label</u> promotional expenditures"; "to track expenditures on particular types of off-label promotion, <u>for particular indications</u>, over time."  Pls. Mem. at 4 (emphasis added).  As plaintiffs themselves explain, "[a]ggregate numbers, even broken down by quarter, are completely insufficient for these purposes."  Id.

Therefore, assuming defendants' preliminary understanding of the data they maintain bears out, plaintiffs have not – and cannot – articulate any relevance that this data would have to justify the substantial burdens involved in collecting and producing it.

**II.    Plaintiffs' Request for Financial Data Related to Neurontin Is Not Timely**

---

³ Defendants could have confirmed this and informed plaintiffs of as much had plaintiffs provided adequate notice to defendants of the need to meet and confer on this topic.

Plaintiffs have failed to offer any explanation for why they waited until this late date to move to compel "occurrence level" financial data relating to Neurontin – particularly if, as plaintiffs claim, "[t]he relevance of this data cannot be in doubt." Roche Decl. Exh. A. The parties met and conferred regarding the scope of defendants' production of financial data months ago. Plaintiffs understood defendants' positions and what defendants were willing to produce in response to plaintiffs' requests. Yet at no point prior to the day this motion was due did plaintiffs inform defendants that they believed that defendants' production of financial information was insufficient. Plaintiffs should not be heard only now to object to the scope of defendants' production, months after the Court's April 30 deadline for document discovery.[4] See Discovery Order 7 (Dckt. 582), at 3.

Furthermore, plaintiffs' failure to timely raise the issue of production of financial data such that the parties could meaningfully confer in advance of the September 6th motions deadline disregards both Local Rule 7.2 and the Court's requirement that the parties "<u>shall confer</u> in order to resolve or to clarify any follow-up issues from the document discovery." Discovery Order No. 13 (Dckt. 801), at 2 (emphasis added). Notwithstanding the fact that counsel for defendants informed plaintiffs prior to plaintiffs' filing their motion that defendants did not believe the parties had adequately conferred regarding plaintiffs' objection to the scope defendants' production of financial data and information, <u>see</u> Roche Decl. ¶ 9, plaintiffs filed the

---

[4] The Court did note nearly two months ago that, though "[t]he discovery in this MDL has been substantial," a "limited amount of additional time" was necessary to permit the parties to complete certain aspects of discovery. Discovery Order No. 13 (Dckt. 801), at 1-2. The Court therefore extended the deadline for fact discovery to October 15, 2007 and ordered the parties to confer in order to resolve or to clarify any "follow-up issues" from the document discovery, all "with the expectation that counsel will meet the new deadlines." <u>Id.</u> The Court's limited extension of the discovery period to allow the parties to resolve "follow-up" issues cannot be read to permit plaintiffs to reopen at the eleventh hour discovery issues on which they had long since been silent.

instant motion to compel.[5]  Plaintiffs should not now be rewarded for their delay with an order compelling the production of a sweeping amount of financial data relating to Neurontin, particularly given that the October 15 close of fact discovery is only weeks away.  Plaintiffs delay in raising this issue and their failure meaningfully to meet and confer prior to making their motion are inexcusable, and the Court should therefore deny Plaintiffs' Motion.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny Plaintiffs' Motion to Compel Production of Financial Data Related to Neurontin.

Dated: September 11, 2007

                              DAVIS POLK & WARDWELL

                              By:  /s/ James P. Rouhandeh
                                     James P. Rouhandeh

                              450 Lexington Avenue
                              New York, New York 10017
                              (212) 450-4000

                                    - and -

---

[5] Respectfully, plaintiffs misstate defendants' position in the meet and confers with respect to production of financial information relating to Neurontin.  Plaintiffs assert that "[d]efendants have refused to produce financial data related to Neurontin, in electronic format, at the occurrence level."  Pls. Mem. at 4.  In fact, defendants' position was that because plaintiffs waited so long to raise this issue, plaintiffs had not afforded the parties a reasonable opportunity to confer about the scope of plaintiffs' request.  Defendants' current understanding is that the request in plaintiffs' motion is overly broad, burdensome, and not reasonably calculated to lead to the discovery of relevant information, though defendants understandings on these issues remain preliminary because of the limited amount of time that defendants have had to consider them.

HARE & CHAFFIN

By:   /s/ David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on September 11, 2007.

                                                                                            /s/ David Chaffin