UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br>Master File No. 04-10981<br>Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO:<br><br>PRODUCTS LIABILITY ACTIONS | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO MODIFY AND ENFORCE DISCOVERY ORDERS NO. 7, 8, 11 AND 13

### INTRODUCTION

Nowhere in plaintiffs' opposition do they acknowledge that the purpose of the Track One process established by the Court was for each side to put its best cases forward. Instead, plaintiffs ignore the Court's prior orders and suggest that a new, inequitable process be utilized for selection of defendants' replacement trial workup case. At the same time, plaintiffs propose that they should be allowed the benefit of continuing with *Smith*, the trial workup case they chose. Indeed, plaintiffs ask the Court to move "full speed ahead" with *Smith* and expert discovery as it relates to general causation. This proposal is not only inherently unfair, but it also ignores the role that specific cases play in the determination of general causation. Finally, even in the absence of bad faith, plaintiffs' belated motion to dismiss *Strickland* and motions to withdraw from *Mendoza* and *Fenelon* justify the imposition of costs under 28 U.S.C. § 1927. For the reasons set forth below, the Court should reject plaintiffs' proposals and order the relief requested in defendants' Motion to Modify and Enforce, including an award of costs and fees.

## ARGUMENT

A.     **Plaintiffs' Proposed Solutions Further Undermine the Track One Process**

Each of plaintiffs' proposals further evidences their intention to "game" the Track One selection process to their tactical advantage. None of the options proposed by plaintiffs is consistent with the aim of the Track One selection process as set forth by the Court:

> This process will enable **each side to put its best cases forward**, while the random selection will ensure a range of cases as well as mitigate any information disadvantage under which Defendants may labor at this point. Discovery Order No. 8 at 2 (emphasis added)

Plaintiffs' decision to dismiss *Strickland* and withdraw from *Mendoza*—defendants' two Track One selections—makes it impossible for defendants to put their best case forward in the absence of the relief set forth in defendants' motion. Further compounding this disregard for the Track One process, plaintiffs now propose that they be allowed to move forward with *Smith*, the case they hand-picked out of the eighty cases in the Finkelstein inventory, but that defendants be forced to choose from the five randomly selected cases left in the Track One pool.[1] If plaintiffs believe that defendants' trial workup case should be selected from the universe of the five randomly selected cases—which is contrary to the Court's order—fairness dictates that plaintiffs select a case from the random pool as well.

Not happy with how the Track One selection process established by the Court has played out, plaintiffs now seek to turn back the clock and re-create that process for their own tactical purposes. This attempt to re-write history should not be allowed. Rather than rewarding plaintiffs' gamesmanship by allowing them to proceed with their case selection, the Court should

---

[1] Plaintiffs repeatedly suggest that defendants should pick from the remaining six Track One cases. Only five of those cases were randomly selected by the Court, as plaintiffs have moved to dismiss or withdraw from the two Track One cases (*Strickland* and *Mendoza*) selected by defendants and a randomly selected

impose one of the two alternatives discussed in defendants' Motion to Modify and Enforce. Namely, the Court should level the playing field by prohibiting plaintiffs from retaining *Smith* (or *Bentley*) as their designated trial workup case, requiring selection of two new cases for trial workup from the remaining Track One cases randomly selected by the Court, and providing a slight adjustment in the schedule. This approach will allow each side to select a trial work up case and thus comes close to restoring the parties to their original position in the MDL case selection process.[2] In addition, this approach will only require a short extension in the schedule to allow for case-specific discovery in the two trial workup cases.

In the alternative, the Court should allow defendants to choose two new Track One cases from the Finkelstein & Partners inventory, extend the current discovery schedule to allow defendants to conduct the limited workup of these two cases, designate one case for trial workup, conduct complete discovery in that case, and stay expert discovery until case-specific fact discovery is completed in both defendants' and plaintiffs' trial workup case. While not putting defendants in the same position as plaintiffs, this approach at least allows defendants to choose its best case from the remaining cases in the Finkelstein inventory. Moreover, this approach, like the proposal above, will not substantially interfere with the schedule. In fact, defendants are now requesting less time to complete case-specific discovery in its replacement trial workup case than the Court originally permitted in its Discovery Orders.[3]

---

case (*Fenelon*). The other case in the remaining Track One universe is *Bentley*—plaintiffs' other selection.

[2] Plaintiffs suggest that this is approach is unfair because it deprives Ruth Smith of her right to move forward. But should the Court adopt this position, Ms. Smith is in no worse position than any other plaintiff in the MDL. Her case will still move forward, just at a later date and not as one of the two designated trial workup cases.

[3] Plaintiffs also argue that staying expert discovery while defendants complete case-specific discovery in their selection would defeat "the underlying purpose of establishing a group of Track One cases, that is, to advance the litigation." This is further evidence of plaintiffs' attempt to give the Court's discovery orders

B.  **Plaintiffs' Proposals Ignore the Role Specific Cases Play in the General Causation Determination.**

In addition to undermining the Track One process, plaintiffs' proposals ignore the role specific cases play in the general causation determination. Plaintiffs urge that discovery proceed "solely with respect of general causation (*i.e.*, whether Neurontin has the capacity to contribute to mood and behavior disturbances, particularly suicidal behavior)." This suggests that general causation may be determined in a vacuum—totally divorced from specific causation. Yet, it is well-established that general causation involves an analysis of alternative causes in particular cases. Indeed, the Reference Manual on Scientific Evidence states that "consideration of alternative explanations" is a factor in making judgments about general causation. Reference Manual on Scientific Evidence at 375 (Federal Judicial Center 2000) (discussing Bradford-Hill factors).

The importance of alternative explanations was recently recognized in a pharmaceutical product liability case involving allegations of suicide, *Miller v. Pfizer*, 196 F. Supp. 2d 1062, 1081 (D. Kan. 2002). In analyzing the general causation issue, the *Miller* court noted that, "to avoid reaching an erroneous conclusion, a scientist should rule out alternative explanations." 196 F. Supp. 2d at 1081. The court granted the defendant's summary judgment motion after concluding that the plaintiffs' expert had failed "to show that Zoloft (as opposed to other factors such as depression itself) causes suicide in depressed patients" and accordingly that the expert's general causation opinion was unreliable. As in *Miller*, experts in this litigation must consider the role that alternative explanations play in the general causation determination. Because consideration of alternative explanations necessitates an evaluation of the factors at play

---

a makeover. The Court already clearly set forth the purpose of the Track One selection process—to allow each side to put its best cases forward. Staying expert discovery is the only way to ensure that both parties' selections proceed forward simultaneously.

in particular cases, plaintiffs' suggestion that discovery may proceed solely as to general causation is unworkable and should be rejected.

**C.   Plaintiffs Unreasonably and Vexatiously Multiplied the Proceedings, Entitling Defendants to Costs and Attorneys' Fees**

Plaintiffs devote much of their opposition to arguing that costs should not be imposed under 28 U.S.C. § 1927 because they acted quickly and without bad faith or dilatory motive in moving to dismiss *Strickland* and withdraw from *Mendoza* and *Fenelon*. In this Circuit, defendants need only show that plaintiffs' counsel displayed a "serious and studied disregard for the orderly process of justice." *Cruz v. Savage*, 896 F.2d 626, 631-32 (1st Cir. 1990). A finding of bad faith is not required. *Id.* Nor need an attorney intend to harass or annoy or be guilty of conscious impropriety. *Id.* So long as an attorney "multiplies the proceedings in any case unreasonably and vexatiously," costs, expenses and attorneys fees reasonably incurred as a result of this conduct may be awarded. 28 U.S.C. § 1927.

Regardless of plaintiffs' stated intentions, the undisputed facts set forth below demonstrate both that plaintiffs' counsel were well aware of the weaknesses in *Strickland* and that plaintiffs' counsel delayed dismissing the case:

- December 27, 2005 - Mr. Strickland filed his action.
- November 2, 2006 - Mr. Strickland admitted in verified Interrogatory responses that he "has treated for mental illness for many years" and that he was prescribed Neurontin in May 2005—more than four and a half years after his alleged suicide attempt.
- April 16, 2007– Mr. Strickland was deposed and admitted that Neurontin works well for him and he continues to take it to this day
- April 17, 2007 – Mrs. Strickland was deposed
- June 11, 2007 - Dr. Wolfram Glaser was deposed
- June 12, 2007 – Dr. Sadri Avsar was deposed
- July 23, 2007 – Defendants designated *Strickland* as its trial workup case
- September 6, 2007 – Plaintiffs moved to dismiss *Strickland* with prejudice

Plaintiffs seek to avoid the imposition of costs by analogizing the facts of this case to *In re: Welding Fume Prod. Liab. Litig.*, No. 1:03 CV 17000, MDL No. 1535, 2006 WL 1173960 (N.D. Ohio). This case is readily distinguishable. As plaintiffs highlight in their brief, *In re: Welding Fume*, involved a "bombshell" video at the plaintiff's deposition that showed the plaintiff performing tasks that he had previously claimed he was unable to do. *Id.* at *2. Upon seeing this video, plaintiff's counsel "immediately sought to inform the Court after viewing the surveillance video." *Id.* at *5.

Unlike *In re: Welding Fume*, plaintiffs here point to no "bombshell" information disclosed during the depositions of Mr. Strickland or his prescribing doctors. Despite being given the opportunity in both their opposition to defendants' Motion to Modify and Enforce and plaintiffs' own Motion to Dismiss, plaintiffs have not set forth the information learned at these depositions that suddenly caused them to realize that *Strickland* was a case they could never win.[4] Moreover, even assuming, *arguendo*, that plaintiffs only learned of weaknesses in their case after the depositions of Mr. Strickland and his treating physicians, they cannot explain the month and a half delay between the physicians' depositions and their filing a motion to dismiss. Plaintiffs knew that defendants had designated *Strickland* as their trial workup case, and that, as a result, defendants would spend substantial amounts of time and money in fact and expert discovery in the case. Despite this knowledge, plaintiffs took no action. This conduct is the definition of "unreasonably and vexatiously" multiplying the proceedings and defendants should be awarded costs, fees and expenses incurred as a result of this conduct.

---

[4] And plaintiffs' counsel provide no reason whatsoever for their delay in withdrawing in *Mendoza* and *Fenelon*.

## **CONCLUSION**

The Court should prohibit plaintiffs from designating *Smith* as their trial workup case and require each party to select a new case for trial workup from the remaining five Track One cases randomly selected by the Court. In the alternative, defendants request that they be allowed requisite time to complete fact discovery in a replacement trial workup case selected from the Finkelstein & Partners inventory, including an extension of the discovery schedule so that expert discovery can occur simultaneously in both cases. Defendants also request their costs, expenses and attorneys' fees related to their defense of *Strickland, Mendoza*, and *Fenelon*.

Dated: September 17, 2007         Respectfully submitted,

SHOOK, HARDY & BACON LLP

By:     /s/Scott W. Sayler
        Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108
Tel: (816) 474-6550

            -and-

DAVIS POLK & WARDWELL

By:     /s/James P. Rouhandeh
        James P. Rouhandeh

450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

            -and-

                    HARE & CHAFFIN

                    By:    /s/David B. Chaffin
                            David B. Chaffin

                    BBO #549245
                    160 Federal Street
                    Boston, MA 02110
                    Tel:  (617) 330-5000

                    *Attorneys for Defendants Pfizer Inc. and*
                    *Warner-Lambert Company LLC*

### **CERTIFICATE OF SERVICE**

     I hereby certify that this document has been served pursuant to Case Management Order No. 3.

                                                         /s/David B. Chaffin