UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------------x
                                                            :    MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                                :
        SALES PRACTICES AND                                 :    Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION                       :
                                                            :    Judge Patti B. Saris
------------------------------------------------------------x
                                                            :    Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                   :
                                                            :
        PRODUCTS LIABILITY ACTIONS                          :
                                                            :
------------------------------------------------------------x
```

**MEMORANDUM IN REPLY TO DEFENDANTS'
OMNIBUS OPPOSITION AND IN FURTHER SUPPORT OF
PRODUCTS LIABILITY PLAINTIFFS' MOTIONS TO DISMISS
*STRICKLAND*, TO WITHDRAW AS COUNSEL IN *MENDOZA* AND
*FENELON*, AND TO COMPEL DEFENDANTS TO CONDUCT THE
DEPOSITION OF PLAINTIFFS' GENERAL CAUSATION/SPECIFIC
CAUSATION EXPERT AS PREVIOUSLY SCHEDULED AND AGREED UPON**

Products Liability Plaintiffs, ("Plaintiffs"), submit this memorandum in reply to Defendants, ("Defendants"), omnibus opposition to Plaintiffs' motions and in further support of Plaintiffs' motions to dismiss *Strickland*, to withdraw as counsel in *Mendoza* and *Fenelon*, and to compel defendants to conduct the deposition of Plaintiffs' general causation/specific causation expert as previously scheduled and agreed upon.

**INTRODUCTION**

Counsel for Defendants have dedicated a large portion of their opposition papers to suggest that Plaintiffs' counsel have invented some sort of sinister tactical plot to "derail" the Track One process and to place Defendants on an uneven playing field. Defendants' counsel's assertions are unreasonable, unfair, and could not be further from the truth. This flinging of mud

only serves to demonstrate Defendants' lack of substantive support for their legal assertions and the contentious attitude they have exhibited throughout this entire discovery process.

As this Court is well aware, Plaintiffs' counsel have continuously sought to move this litigation ahead by proposing the selection of a Track One group of cases, adhering to the Case Management and Discovery Orders of this Court and making, when necessary, the appropriate motions to compel discovery from Defendants. Plaintiffs' counsel have worked diligently on each and every Track One case, have expended the same, if not more, time, resources and efforts as Defendants' counsel on these cases. There is neither objective, nor subjective evidence that Plaintiffs' counsel have proceeded in any way but in an expeditious manner. Plaintiffs have submitted several alternatives in order to continue this litigation to resolution, including moving ahead on a schedule focused solely on the issue of general causation. This would mean reserving the issue of specific causation for a later date after Defendants have the opportunity to select another Track One case and discovery proceeds in that case.

Plaintiffs' counsel had no alternative but to seek leave to dismiss with prejudice in *Strickland* and withdraw as counsel in *Mendoza* and *Fenelon.* Defendants will incur no prejudice if expert discovery and dispositive motions proceed as scheduled or, in the alternative, if expert discovery and dispositive motions proceed solely on the issue of general causation. As this litigation proceeds, as in other MDL litigations, there may be other cases that further discovery reveals or that other conditions, events, etc., mandate that such other cases in this litigation be dismissed. Plaintiffs submit that perhaps two groups of Track cases should be selected at a time to remedy any potential future situations.

**ARGUMENT**

A.  **Plaintiffs' Counsel Do Not Have Any Underlying Motive in Moving to Dismiss *Strickland* or to Withdraw as Counsel in *Mendoza* and *Fenelon***

Plaintiffs' counsel advised counsel for Defendants of their intention to dismiss *Strickland* with prejudice as soon as possible. At the conclusion of the depositions of Mr. Strickland's physicians in the middle of June 2007, Plaintiffs' counsel performed an extensive review of the medical records, deposition testimony, and scientific information. Thereafter, Plaintiffs' counsel consulted with Plaintiffs Bernard and Cathy Strickland and others concerning the status of the case. Plaintiffs' counsel take their professional responsibilities seriously; it took time to reevaluate the case factually and scientifically, and to consult with the Stricklands concerning the status of the case. Plaintiffs, and not counsel, thereafter made an informed determination to dismiss their case with prejudice. There was no inordinate delay. The process took several weeks during the summer months when individuals usually take vacations and are not always immediately available. Illustrative of this fact, defense counsel need only look to the difficulty of scheduling depositions in this litigation over the past summer months where counsel and/or witnesses were unavailable. Plaintiffs' counsel have no control over the timing of Plaintiffs' final decision to discontinue their case.

With regard to Defendants' assertion that Plaintiffs' counsel did not provide the details of counsel's "irreconcilable differences" with Mr. Mendoza and Ms. Fenelon which forecloses our continued representation of these Plaintiffs, certainly, Defendants cannot expect Plaintiffs' counsel to divulge confidential information that is protected by attorney-client privilege. Indeed, *Mendoza* and *Fenelon* are still active cases, these Plaintiffs are not discontinuing their cases, and Plaintiffs' counsel must honor their professional duty to protect the attorney-client privileges of these Plaintiffs. The discovery efforts in *Mendoza* and *Fenelon* are not wasted and will be

3

utilized in the litigation of these actions, albeit not in the initial group of Track One cases. If the Court deems it necessary and proper to further explore the details concerning these "irreconcilable differences" on an *in camera* basis or in *ex parte* discussion, Plaintiffs' counsel will abide by the Court's decision.

Moreover, Defendants incorrectly allege that Plaintiffs' counsel failed to explain why "obvious weaknesses" in the *Strickland* case were not uncovered sooner. First , in multidistrict litigations involving a large number of individual plaintiffs, there will always be strong cases and weak cases. The fact that a plaintiff's case may be "weak" does not mean that the case is not viable or that the plaintiff does not have a legally valid claim. That a plaintiff may have a prior psychiatric history by no means demonstrates that the plaintiff could never have viable causes of action. After all, it was Defendants who admitted in their guilty plea in the *Franklin qui tam* action that they marketed Neurontin off label for a host of conditions, including bipolar disorder and for pain. It was reasonably foreseeable that their illegal, off-label marketing targeted and inevitably caused such vulnerable patients to be prescribed and to ingest Neurontin – a drug without proven efficacy – thus placing them at risk of injury. The fact that a plaintiff has a prior psychiatric history does not preclude a finding of proximate cause, and Defendants' assertions to the contrary lack expert proof and opinion.

Plaintiffs incorporate by reference herein, all of the arguments opposing the imposition of sanctions, costs, and/or conditions as set forth in Plaintiffs' memorandum previously submitted in opposition to Defendants' motion to enforce and modify Discovery Orders No. 7, 8, 11 and 13, and to strike the *Smith* case from the Track One cases. *See* ECF Doc. # 861.

B.  **Expert Disclosure, Depositions and Dispositive Motions on the Issue of General Causation May Proceed Without Expert Testimony Related To Specific Causation Within the Context of Any Particular Case**

Defendants are incorrect in their assertion that the expert depositions on general causation require that the Track One cases go forth so that their experts may testify as to consideration of "alternative causes". Experts on "general causation" can render an opinion on Neurontin's capacity to contribute to suicidal behavior without rendering an "individual causation" opinion about a specific plaintiff's case. As the Court noted in Discovery Order No. 8: "The parties agree that a core issue for summary judgment in the Products Liability cases is whether Neurontin can cause the symptoms or effects of which Plaintiffs complain. Individual discovery in the Track One cases is not necessary for resolution of this issue." *See* Discovery Order No. 8, ECF Doc. # 609, p. 1. The very premise of determining general causation is to do so for the benefit of the entire MDL litigation. Defendants are conflating the issues of general and specific causation. Moreover, Defendants are not precluded from using the information they have gained in any Track One case, such as *Strickland*, *Mendoza* or *Fenelon*, and including reference to same in their own expert's "general causation" report.

Other MDL's, including the recent *In re Viagra Prods. Liab. Litig.*, have concluded that an initial resolution on the issue of general causation is consistent with the Manual for Complex Litigation § 11.422 (4th ed. 2004), which recommends the use of phased, sequenced, or focused discovery where targeted information might provide the foundation for resolution of a dispositive motion." *See In re Viagra Prods. Liab. Litig.*, Scheduling Order Relating to Phase I of Discovery, pp. 1-2, ECF Doc. # 861, Exhibit B; *see also In re: Hanford Nuclear Reservation Litig., Jaros, v. E.I. Dupont De Nemours & Co.*, 292 F.3d 1124 (9th Cir. 2002) (Court divided discovery into several phases, and in Phase II, Court directed parties to proceed with general

5

causation and deferred specific causation for a subsequent time.) Plaintiffs submit that it would be appropriate and consistent with the Manual for Complex Litigation to proceed with expert disclosure and dispositive motions solely on the issue of general causation.

Defendants misleadingly point to the Reference Manual on Scientific Evidence 2d edition (2000) at 375, for the proposition that Track One, case-specific, fact discovery must be completed prior to resolving the issue of general causation because it involves an analysis of alternative causes in particular cases. The section to which Defendants' counsel refer is actually the Reference Guide on Epidemiology, Section V: "Is an Exposure a Cause of the Disease?" This section concerns determining alternative explanations for causal associations in epidemiological studies. The reference does not in any way demonstrate that the resolution of general causation requires determining the issue of specific causation in individual cases.

Defendants' experts should be equipped well enough to explore, if necessary, confounding factors in their testimony, based upon medical literature, case studies, their knowledge or any other materials necessary to support their theory on the issue of general causation. If general causation was inseparable from specific causation, as Defendants suggest, since each case is entirely unique and different in terms of facts, case-specific discovery would have to be completed in all 90 of the individual actions, not just in the ten Track One cases, before taking the depositions of Plaintiffs' general causation experts; this would truly undermine the purpose of the formation of the MDL in the first instance.

**CONCLUSION**

In view of the above, Plaintiffs respectfully request that this Court issue an order granting their motions to dismiss with prejudice *Strickland*, to withdraw as counsel in *Mendoza* and *Fenelon*, and to compel Defendants to conduct the deposition of Plaintiffs' general causation/specific causation expert as previously scheduled and agreed upon.

Dated: September 17, 2007               Respectfully submitted,

*Members of Products Liability
Plaintiffs' Steering Committee*


By:     **/s/ Andrew G. Finkelstein**
          Andrew G. Finkelstein, Esquire
          Finkelstein & Partners, LLP
          436 Robinson Avenue
          Newburgh, NY  12550


By:     **/s/ Jack W. London**
          Jack W. London, Esquire
          Law Offices of Jack W. London
             & Associates
          106 E. 6th Street, Suite 700
          Austin, TX  78701


**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on September 17, 2007.

Dated:  September 17, 2007

          **/s/ Andrew G. Finkelstein**
          Andrew G. Finkelstein