UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-----------------------------------------------------------x
                                                           :   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                               :
        SALES PRACTICES AND                                :   Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION                      :
                                                           :   Judge Patti B. Saris
-----------------------------------------------------------x
                                                           :   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                  :
                                                           :
        PRODUCTS LIABILITY ACTIONS                         :
                                                           :
-----------------------------------------------------------x
```

**MEMORANDUM IN REPLY TO DEFENDANTS' RESPONSE TO
PRODUCTS LIABILITY PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Products Liability Plaintiffs, ("PL Plaintiffs"), submit this memorandum in reply to the Memorandum of Defendants Pfizer Inc. And Warner-Lambert Company ("Defendants"), submitted in response Plaintiffs' motion to compel discovery.

**PRELIMINARY STATEMENT**

Contrary to the assertions of Defendants, there is no agreement, and there has never been an agreement between the parties, that PL Plaintiffs would limit the disclosure of responsive documents to only the custodial files of 83 individuals. PL Plaintiffs have always sought from defense counsel all responsive documents relating to the safety and efficacy of Neurontin. As late as February 2007, PL Plaintiffs' counsel had still not received responsive documents from even those custodians referenced in Defendants' own Rule 26(a) disclosures. These custodians were in excess of 83 witnesses.  (*See* Letter from PL Plaintiffs' counsel, dated February 23, 2007, annexed hereto as Exhibit A.)  With the Court's April 2007 deadline fast approaching, PL Plaintiffs were still trying to recover responsive documents from the very witnesses Defendants

had disclosed may have information that would pertain to their own claims and defenses according to Rule 26(a) of the Federal Rules of Civil Procedure. On March 23, 2007, defense counsel indicated that they had produced, "or will produce" responsive documents. PL Plaintiffs were essentially left in a position to wait until the end of fact discovery to determine whether Defendants indeed produced all responsive documents; and the record reveals that Defendants have not.

Moreover, PL Plaintiffs submit that during the depositions of Pfizer witnesses Vega, Garrity, Knapp and Hauben, the proper foundation was laid in accordance with Rule 612 of the Federal Rules of Evidence as referenced in the underlying motion. The deponents acknowledged that the documents which were shown to them prior to, and in preparation for their deposition had refreshed their recollection. As demonstrated below, allegations that PL Plaintiffs failed to lay a proper "foundation" regarding these documents is not at issue.

**ARGUMENT**

**A.    PL Plaintiffs Did Not Agree to Limit Disclosure of Responsive
       Documents from Custodial Files of 83 Individuals, and Defendants
       <u>Should Be Ordered to Produce the Custodial File of Lester Reich</u>**

PL Plaintiffs have sought all responsive documents relating to the safety and efficacy of Neurontin; whether the documents were situated within an individual's custodial file is irrelevant to PL Plaintiffs' pursuit of such documents. Throughout this litigation, Defendants have sought to avoid producing all responsive documents based upon arguments of time-constraints, burden and costs. The parties conferred upon the merits of their positions at various times during the pendency of the litigation in the hopes of avoiding unnecessary motion practice. Throughout these conferences, defense counsel were never willing to provide a list of individuals from whom they would seek responsive documents. Instead, PL Plaintiffs, in the absence of a court order

requiring otherwise, had to rely upon defense counsel's good faith efforts to provide responsive documents from an appropriate population of custodians. Defense counsel's efforts have culminated in the production of 83 custodial files. Only based upon the documents produced by Defendants or deposition testimony from a limited group of witnesses (as ordered by the Court), could PL Plaintiffs adequately evaluate the necessity to inquire about additional custodial files and depositions. Now, after the purported end of Defendants' document disclosure (despite additional discovery being produced) and Manfred Hauben's deposition, PL Plaintiffs have demonstrated just cause why responsive documents from Lester Reich's custodial file should be produced.

At no time during the conferences with defense counsel, where the parties in good faith attempted to reduce the amount of custodians from whom Defendants would seek documents, did defense counsel identify Lester Reich's position, his responsibilities pertaining to safety, or his proposal to evaluate the safety of Neurontin in the face of psychiatric adverse events. Had Defendants disclosed such information, PL Plaintiffs would have indeed sought the discovery of Reich's custodial file prior to the Court's discovery end date. PL Plaintiffs will be better able to determine whether Reich has knowledge and information which is crucial to this case and seek his deposition once Reich's custodial file is produced as demanded.

These "meet and confers", whether handled in person or by phone, involved PL Plaintiffs' counsel inquiring of defense counsel as to the identities of persons with knowledge about Neurontin and having to trust defense counsel to disclose the appropriate persons. For instance, when PL Plaintiffs have sought to pursue the custodial files of individual identified in Defendants' Rule 26(a) disclosures or after review of other custodial files, defense counsel have portrayed individuals as having little if any involvement with the issues in this litigation, and has

portrayed certain witnesses as having "no role with respect to Neurontin". (*See* Letter from Defendants' counsel, dated March 23, 2007, annexed hereto as Exhibit B.) Consequently, PL Plaintiffs have relied upon defense counsel's assertions in determining which custodial files to pursue.

While one could argue that PL Plaintiffs' counsel relied upon defense counsel's assertions at PL Plaintiffs' own risk (i.e,, let the buyer beware mentality), PL Plaintiffs' counsel should be able to believe that defense counsel is being forthright during the "meet and confer" process. In any event, Manfred Hauben's deposition was conducted after the Court's discovery end date and at that time, Hauben identified Lester Reich and Reich's purported report regarding an analysis of Neurontin safety issues. It is axiomatic that these circumstances demonstrate good cause for the discovery PL Plaintiffs seek.

**B.     PL Plaintiffs Laid a Proper Foundation For Seeking Documents Which Were Provided to Pfizer Witnesses Prior to, and in Preparation for Their Deposition Testimony, and Defense Counsel's <u>Selection of the Documents Does Not Justify Withholding Same</u>**

Defendants' argument that PL Plaintiffs failed to lay the proper foundation concerning the documents utilized to prepare and refresh the recollection of defense witnesses is without merit. The bottom line is that even in the absence of proper foundation (and PL Plaintiffs maintain that a proper foundation was set forth in the questions posed), defense counsel would never have allowed the documents to be disclosed anyway. A case in point is the excerpt below from Lloyd Knapp's deposition:

> Q.     Okay. What did you do to prepare for today's deposition?
> A.     I had several meetings with my attorneys. I reviewed documents that seemed would be appropriate to review for this meeting. And that was about it.
> \* \* \*
> Q.     And you said you reviewed documents as appropriate. Do you recall what documents you reviewed?
>             MR. SAYLER: Objection. Privileged. I instruct you not to answer.

4

> MR. NOTARGIACOMO: His recollection of what documents he reviewed for preparation for this deposition is privileged?
> MR. SAYLER: Yes. The documents given to him were all selected by counsel. Reflect our mental impressions and work product.

ECF Doc # 845 Exhibit K, p. 161.  Mr. Knapp's testimony on June 27, 2007, further demonstrated that his recollection was refreshed by documents that were provided to him by counsel in preparation for his deposition:

> Q. Did your review of documents provided to you by counsel refresh your recollection as to any of your knowledge regarding the labeling history of Neurontin?
> A. Certainly.
> Q. How much time did you spend reviewing those types of documents that actually refreshed your recollection of the labeling history of Neurontin? Just focusing on those…
> A. Oh, I see. I see. It probably would be included in that estimate of five to ten hours.

ECF Doc # 845, Exhibit K, pp. 423-425.

Mr. Sayler's objection referenced above clearly demonstrates that defense counsel had no intention of providing the documents; allegations that PL Plaintiffs failed to lay a proper "foundation" regarding these documents is not an issue.

PL Plaintiffs firmly believe that the documents used to refresh the deponent's recollection prior to the deposition were not created by counsel, and that justice will be best served by ordering that Defendants produce these documents.  The fact that defense counsel may have selected the documents, as Mr. Sayler suggests, does not justify the withholding of such material. In *In re Atlantic Financial Mgmt. Sec. Litig.,* 121 F,.R.D. 141, 143 (D. Mass 1988), where counsel argued that their choice of material shown to a deponent to refresh his recollection prior to the deposition was work product that should be protected, the court ordered the material produced, finding that:

> The minimal exposure of the attorney's mental process that would occur in this case if defendant [the deponent] revealed the deposition transcripts and

5

documents that he used to refresh his recollection does not justify withholding information that is essential to plaintiffs' effective examination of the witness.

Moreover, as noted in the underlying motion, PL Plaintiffs, as well as those plaintiffs who filed their causes of action in the New York State Neurontin Coordinated Litigation, under New York law, have a right to the disclosure of the documents/information in question. Under New York law, Defendants waive their right to any privileges concerning documents utilized to refresh the recollection of deponents prior to the deposition. It is in the interest of justice – as well as judicial economy – that Defendants be ordered to produce such information; otherwise, PL Plaintiffs will be deprived of their rights, and PL Plaintiffs' counsel would also be required to raise the issue in an identical, duplicative application in the New York Coordinated Litigation.

## CONCLUSION

In view of the above, PL Plaintiffs submit that the completion of the fact discovery process has yielded information, enumerated in the underlying motion, that has not been adequately disclosed by Defendants. PL Plaintiffs require this information to successfully prosecute their claims and would be severely prejudiced if not provided with the opportunity to discover same. PL Plaintiffs therefore respectfully request that this Court issue an order granting Plaintiffs' motion to compel discovery.

Dated: September 17, 2007      Respectfully submitted,

*Members of Products Liability*
*Plaintiffs' Steering Committee*

By:   **/s/ Andrew G. Finkelstein**
        Andrew G. Finkelstein, Esquire
        Finkelstein & Partners, LLP
        436 Robinson Avenue
        Newburgh, NY  12550

6

By: **/s/ Jack W. London**
Jack W. London, Esquire
Law Offices of Jack W. London
 & Associates
106 E. 6th Street, Suite 700
Austin, TX 78701

## **CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on September 17, 2007.

Dated: September 17, 2007

**/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein