UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | ) ) ) ) | Master File No. 04-10981 |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCMIE LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Patti B. Saris Mag. Judge Leo T. Sorokin |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC. | ) ) ) ) ) | |
| and | ) ) | |
| AETNA, INC. v. PFIZER INC. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY
RELATING TO COMMUNICATIONS BETWEEN DEFENDANTS AND THIRD-
PARTY PAYOR PLAINTIFFS**

728576.1

I.      **Introduction**

Plaintiffs have noticed a deposition and requested documents concerning

misrepresentations made by Defendants to certain third-party payors.  In a fraud case in which

Defendants' misrepresentations are at issue, this topic is unquestionably relevant, and Plaintiffs'

requests for this discovery were timely.  Plaintiffs have amply demonstrated the factual basis for

this discovery, while Defendants have failed to demonstrate undue burden in responding.

Plaintiffs' motion should be granted.

II.     **Argument**

A.      **Plaintiffs' 30(b)(6) Notice of Deposition Concerning TPP Communications is
        Relevant to Plaintiffs' Claims and Defendants Have not Demonstrated that
        the Topics are Unduly Burdensome.**

Defendants seek to avoid producing a 30(b)(6) witness to testify concerning

misrepresentations made by defendants to third-party payors ("TPP Communications") by

claiming that the discovery sought by Plaintiffs is not relevant to the claims at issue in this

litigation.  (*See* Dkt. No. 868 at 3.)  This is incredibly disingenuous, as Defendants have

continuously argued that Plaintiffs need to demonstrate that such communications took place, but

then refuse to allow Plaintiffs to obtain this information in discovery.  Defendants' documents

make clear that third-party payors were very important victims of their fraud.  Therefore,

Plaintiffs must be permitted to obtain this discovery.

Defendants argue that this discovery is not relevant because Plaintiffs have

focused their discovery efforts on the fraudulent communications concerning Neurontin that

were made by Defendants to physicians, rather than to the Plaintiffs themselves.  (Dkt. No. 868

at 3.)  On this point, Defendants state "plaintiffs' 30(b)(6) witnesses have *uniformly* testified that

they are unaware of any fraudulent communications between defendants and plaintiffs."  *Id.* at 7

(emphasis added).  Nevertheless, at least one deponent cited by Defendants for this proposition,

Albert L. Carver, testified to the contrary.  At Mr. Carver's deposition, he testified concerning

statements made by Defendants directly to Kaiser Permanente Health Plan, Inc. ("Kaiser"), one

of the Plaintiffs in this litigation.  (*See* Deposition of Albert L. Carver  ("Carver Deposition") at

292-94.)[1]  In this regard, Mr. Carver testified that Defendants made statements to the Drug

Information Service division of Kaiser concerning the use of Neurontin.  In addition, Kaiser has

produced documents reflecting such communications and supplemented its interrogatory

responses to reflect such communications.  *See* Plaintiffs Kaiser Foundation Health Plan, Inc.

and Kaiser Foundation Hospitals Third Supplemental Response and Objections to Certain of

Defendants' First and Second Set of Interrogatories (attached as Exh. B to the Himmelstein

Declaration).  Mr. Carver also testified that Kaiser relied upon certain of the fraudulent articles

cited by the Plaintiffs in their complaint, as well as a personal communication with the

defendants in making formulary decisions concerning the use of Neurontin.  (*See* Himmelstein

Decl., Exh. A (Carver Dep.) at 495-97.)  Thus, contrary to Defendants' contention, at least one of

the Plaintiffs' 30(b)(6) witnesses has testified concerning the fraudulent statements made by

Defendants directly to Plaintiffs, rather than merely to physicians.

Furthermore, the fact that certain of Plaintiffs' designated 30(b)(6) witnesses

could not identify particular fraudulent statements made by Defendants directly to those

plaintiffs should not limit further discovery into this area of TPP Communications.  Discovery

concerning TPP Communications is essential and highly relevant to the claims in this litigation.

"[R]elevancy is broadly construed at the discovery stage of litigation and a request for discovery

should be considered relevant if there is *any* possibility that the information sought may be

relevant to the subject matter of the action."  *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass.

---

[1] Cited excerpts of the Carver deposition are attached to the accompanying Declaration of Barry R. Himmelstein ("Himmelstein Decl.") as Exhibit A.

1984) (citations omitted) (emphasis added).  As Plaintiffs have previously argued, Plaintiffs have

sufficiently pled that Defendants made such statements directly to the Plaintiffs.  Furthermore,

discovery to date has revealed that third-party payors were the target of Defendants' statements

concerning Neurontin: Defendants' witnesses have testified that third-party payors were the

target of such communications, and Defendants' own documents reflect such communications.

Defendants' claim that discovery concerning these communications is not relevant is utterly

baseless, particularly in light of the fact that Defendants have sought similar discovery from the

Plaintiffs themselves.

Defendants also object to producing a witness to testify concerning TPP

Communications on the basis of undue burden.  (Dkt. No. 868 at 6-7.)  However, nowhere in

Defendants' opposition do they explain how or why producing a witness on these topics would

be unduly burdensome.  Accordingly, Defendants have not provided an adequate basis to claim

that producing a witness to testify concerning these topics would be unduly burdensome.

Plaintiffs respectfully request that the Court order Defendants to produce an adequate witness to

testify concerning TPP Communications.

B.    **Documents Relating to Third-Party Payor Communications Are Relevant
And Were Timely Requested.**

Defendants concede that Plaintiffs made allegations concerning third-party

communications, and requested documents[2] concerning these communications.  As such, the

documents are relevant.  *See Amica Mut. Ins. Co. v. W.C. Bradley Co.*, 217 F.R.D. 79 (D. Mass.

2003) (documents "relating to the claim or defense of any party" should be produced), and

---

[2] Defendants' characterization of Plaintiffs' document requests as having "implicated, as an incidental matter," communications between Defendants and third-party payors is both hard to decipher and inaccurate.  In any case, Defendants cite no authority for the proposition that requests that, "as an incidental matter," implicate relevant topics, need not be answered.

Plaintiffs' request can hardly be called a fishing expedition.[3]

Plaintiffs' opening brief detailed Plaintiffs' attempts to respond to Defendants' ever-shifting justifications for its refusal to produce documents concerning third-party payor communications.  (Dkt. No. 828, at 5-6.)  Having argued that these documents are not relevant, then that they were not requested, Defendants now appear to have settled on a novel variation of a laches argument based not on the Court-ordered schedule for resolving document discovery disputes, but on Plaintiffs' putative obligation to have "pressed" Defendants to fulfill their obligations.  (*See* Dkt. 868, at 10.)

As Defendants acknowledge, the Court-ordered schedule provided for motions to compel concerning document discovery to be filed up to the date that Plaintiffs filed their motion.  This allowed Plaintiffs to conclusively identify this deficiency in Defendants' document production, as well as its significance, and act accordingly.  It would have served no purpose for Plaintiffs to bring this dispute to the Court upon receipt of Defendants' responses to Plaintiffs' document requests, well before the bulk of Defendants' document production even began.  Further, as Plaintiffs explained in their opening brief, Plaintiffs have consistently sought documents relating to third-party communications, including via a prior motion to compel.[4]  Plaintiffs continued to "press" Defendants on these requests, making the latest of these attempts in August of this year.  Defendants appear to be arguing that requests for documents must be made early enough not to create any urgency (for Defendants) as fact discovery draws to a close,

---

[3] The cases cited by Defendants provide useful illustrations, in their contrast to this one, of baseless discovery attempts.  *See McCloskey v. Mueller*, 446 F.3d 262, 271 (not "even the most hazy outline of a viable" claim apparent from complaint); *Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988) (denial of motion to compel discovery not erroneous where concurrent summary judgment papers revealed lack of factual basis for claim).

[4] Defendants acknowledge this prior motion in a footnote, but forge ahead with their argument that Plaintiffs have waited until this "late date" to move for these documents.  (*See* Dkt. No. 868, at 8 n.1.)

but not so long ago that subsequent demands (even those made more than two months before the

end of discovery) are deemed (by Defendants) to be late. Defendants point to no authority

holding that anything other than the applicable rules or the scheduling order should govern

attempts to obtain relevant discovery.

Defendants' burden argument similarly fails. Defendants appear to argue that the

timing of Plaintiffs' motion has somehow created an increased burden. If Defendants are

ordered to produce documents related to third-party payor communications, a reasonable search

for those documents will be required, but such a search would have been required regardless of

the timing of Plaintiffs' motion. Defendants have been aware of the fact discovery cut-off, as

well as the Court's scheduling of final motions concerning document discovery. Having been

well aware of the Court-ordered schedule, Defendants cannot now claim an added burden based

on the time remaining in discovery.[5]

### C. Defendants' Offer to Produce a Witness to Identify Individuals and Databases Concerning TPP Communications Is Too Little, Too Late.

Defendants state that they offered Plaintiffs' a "substantial and reasonable

compromise in an attempt to avoid motion practice." (Dkt. No. 868 at 11.) Defendants'

"compromise" was to not produce a witness to testify concerning Plaintiffs' designated 30(b)(6)

topics, but instead to produce an individual to identify employees responsible for TPP

Communications, as well as any possible databases containing such communications. Plaintiffs

rejected Defendants' proposal as being too little and too late at this late stage of discovery. The

identification of employees and databases without providing more detailed information

concerning the substance and content of TPP Communications is neither a substantial nor a

---

[5] Nor can Defendants seriously blame Plaintiffs for Defendants' decision not to not to systematically collect or review the documents of certain personnel based on the (inaccurate) assessment of Plaintiffs not "pressing" this issue.

reasonable compromise.

Plaintiffs served the deposition notice at issue more than three months ago. Now, on the eve of the close of fact discovery, Defendants have yet to produce a witness to testify concerning Plaintiffs' designated topics. Thus, for Defendants to produce a witness who would merely identify individuals who might have knowledge concerning TPP Communications and databases that may or may not exist is neither a "substantial" nor a "reasonable" compromise. Instead, Defendants should produce a knowledgeable witness on Plaintiffs' designated topics concerning TPP Communications.

## III.    Conclusion

For the foregoing reasons, Plaintiffs' motion to compel certain discovery relating to communications between Defendants and third-party payor plaintiffs should be granted.

Respectfully submitted,


Dated:  September 17, 2007              By:    /s/ Barry R. Himmelstein_____
                                              Barry R. Himmelstein

                                       Barry R. Himmelstein
                                       LIEFF CABRASER HEIMANN &
                                        BERNSTEIN, LLP
                                       Embarcadero Center West
                                       275 Battery Street, 30th Floor
                                       San Francisco, CA 94111-3339

                                       Thomas Greene
                                       GREENE & HOFFMAN
                                       125 Summer Street
                                       Boston, MA 02110


                                       Thomas M. Sobol
                                       HAGENS BERMAN SOBOL SHAPIRO LLP
                                       One Main Street, 4th Floor
                                       Cambridge, MA  02142
                                       Boston, MA 02110

Don Barrett
BARRETT LAW OFFICE
404 Court Square North
P.O. Box 987
Lexington, MS 39095

Daniel Becnel, Jr.
LAW OFFICES OF DANIEL BECNEL, JR.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

James Dugan
DUGAN & BROWNE
650 Poydras St., Suite 2150
New Orleans, LA 70130

*Members of the Class Plaintiffs'*
*Steering Committee*


Gerald Lawrence, Esq.
LOWEY DANNENBERG BEMPORAD &
SELINGER, P.C.
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshocken, PA 19428

Linda P. Nussbaum, Esq.
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022

**Members of the Plaintiffs'**
**Non-Class Steering Committee**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2007, I caused this document to be served on the parties pursuant to Case Management Order #3 by causing it to be filed through the Court's ECF System.

<u>/s/ Daniel E. Seltz</u>
Daniel E. Seltz, Esq.