UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL MARKETING AND SALES PRACTICES ACTIONS | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br>Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

### DECLARATION OF BARRY R. HIMMELSTEIN IN SUPPORT OF SALES AND MARKETING PLAINTIFFS' MOTION TO COMPEL DISCOVERY RELATING TO COMMUNICATIONS BETWEEN DEFENDANTS AND THIRD-PARTY PAYOR PLAINTIFFS

I, BARRY R. HIMMELSTEIN , declare and state:

I am a partner with the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP, co-lead counsel for the Class Plaintiffs in this action. I am a member in good standing of the State Bar of California and I am admitted *pro hac vice* in this action. All statements made herein are based on facts personally known or represented to me, and if called upon, I could testify competently thereto.

1. Attached hereto as Exhibit A is a true and correct copy of excerpts of te deposition of Albert L. Carver.

2. Attached hereto as Exhibit B is a true and correct copy of Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals Third Supplemental Response and Objections to Certain of Defendants' First and Second Set of Interrogatories.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 17th day of September, 2007, at San Francisco, California.

             _____/s/ Barry R. Himmelstein_____
                Barry R. Himmelstein

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 17, 2007, I caused this document to be served on the parties pursuant to Case Management Order #3 by causing it to be filed through the Court's ECF System.

                                        /s/ Daniel E. Seltz
                                        Daniel E. Seltz, Esq.

# EXHIBIT A

291

A. Carver

1
2  Q.  Do you know whether Kaiser is alleging
3 that false statements were made with regard to
4 each of the off-label uses for which it's seeking
5 damages from the defendants?
6       MS. NUSSBAUM:  To the best of your
7 knowledge.
8  A.  I believe so, with reliance upon
9 counsel for the preparation.
10      MS. NUSSBAUM:  Please don't testify as
11 to any discussions with counsel.
12  Q.  Is Kaiser aware of any false
13 statements regarding the use of Neurontin for no
14 susceptive pain?
15      MS. NUSSBAUM:  Are you referring to
16 any particular portion of the Complaint?
17      MR. JAMES:  Actually, let me -- I'll
18 withdraw that question.
19  Q.  Were any statements made by the
20 defendants to Kaiser itself regarding the use of
21 Neurontin?
22  A.  Of course.  I mean, over the -- over
23 the course of the last ten years, there have been
24 numerous interactions between representatives of
25 the defendants and Permanente physicians --

292

A. Carver

1
2  Q.  Actually, I'm not asking about
3 Permanente physicians, just the plaintiffs
4 themselves.
5      Physicians are technically not
6 employed by the plaintiffs, is that right?
7  A.  That's correct.
8      MS. NUSSBAUM:  Well, I think the
9 witness testified yesterday the Permanente
10 physicians write the prescriptions.
11      MR. JAMES:  Right, I understand that.
12  Q.  But have any statements been made by
13 the defendants to the plaintiffs themselves
14 regarding the use of Neurontin?
15      MS. NUSSBAUM:  You want to know
16 whether or not the defendants, Warner-Lambert and
17 Pfizer, either made -
18      MR. JAMES:  Actually, you know --
19      MS. NUSSBAUM:  -- statements to the
20 two plaintiffs in this case?
21      MR. JAMES:  -- the two plaintiffs in
22 this case or their employees.
23  A.  I believe that the defendants have
24 provided information to our Drug Information
25 Service who -- and certainly they are employed by

293

A. Carver

1
2 the plaintiffs.
3  Q.  Aside from information provided to the
4 Drug Information Service, are you aware of any
5 other statements made by the defendants to the
6 plaintiffs regarding the use of Neurontin?
7      MS. NUSSBAUM:  Over this ten-year
8 period?
9      MR. JAMES:  Yes.
10  A.  Not specific interactions or
11 information; no, of course not.
12  Q.  And with regard to information
13 provided by Pfizer regarding the use of Neurontin
14 to the Drug Information Service, which statements
15 are you aware that the defendants made?
16  A.  Specific statements, I cannot attest
17 to.
18      MS. NUSSBAUM:  Well, but can you in
19 general?
20      MR. JAMES:  That's fine.  Actually,
21 that was entirely responsive to my question.
22  Q.  Are you aware of any false statements
23 made by the defendants to the Drug Information
24 Service regarding the use of Neurontin?
25      MS. NUSSBAUM:  You want to know in

294

A. Carver

1
2 general, is he generally aware?
3  Q.  If you understand the question, you
4 can answer.
5  A.  The specific statements, I'm not aware
6 of.  I think that the information that would be
7 provided to the Drug Information Service would be
8 information provided by the defendants' marketing
9 individuals, as well as through information that
10 was generally available through the literature, or
11 in some cases, perhaps studies that the defendants
12 may have written or had written on their behalf.
13      I'm not aware of specific instances to
14 which I could point.
15  Q.  Are you aware generally of any false
16 statements made to the Drug Information Service?
17  A.  Not specific false information, no.
18  Q.  I guess now setting aside the
19 plaintiffs, with regard to Permanente physicians,
20 are you specifically aware of any statements made
21 by the defendants or their agents to Permanente
22 physicians regarding the off-label uses of
23 Neurontin?
24  A.  And by "specific," are you asking me
25 to cite a specific interaction between a

495

A. Carver

1  
2 page 43, and looking, if you would please, at  
3 what's been previously marked as Kaiser-7, and  
4 that is a document that says, "Drug monograph KAIS  
5 004629 through 004637."  
6       Do you have that document in front of  
7 you, sir?  
8    A.   I do.  
9    Q.   Now, with respect to the drug  
10 monograph KAIS Exhibit 77, if you would please  
11 turn to the last page of that document, and that  
12 last page indicates references, is that correct?  
13   A.   That's correct.  
14   Q.   And references a list of the articles  
15 and contacts that were relied upon by Kaiser with  
16 respect to their preparation of the drug  
17 monograph, is that correct?  
18   A.   That's correct.  
19   Q.   And S-7, the last reference on the  
20 page KAIS 004637 indicates the article by  
21 Dr. Kenneth Gorson, is that correct?  
22   A.   That's correct.  
23   Q.   And that is the article that's  
24 referred to in the Complaint on paragraphs 112  
25 through 114 and 115 with respect to the wrongful  

<!-- Page 496 -->
496

A. Carver

1  
2 conduct by these defendants, is that correct?  
3    A.   That's correct.  
4    Q.   I'd also draw your attention, sir, to  
5 reference number 2, also on K 004637, and that  
6 says personal?  
7       MR. JAMES: I'm sorry, which document  
8 are you referring to?  
9       MS. NUSSBAUM: We're still on  
10 Kaiser-7, the last page under references, it says,  
11 "Personal communication, Monica Patel, Pharm.D.,  
12 Parke-Davis, May 1999."  
13      Do you see that?  
14   A.   I see that.  
15   Q.   And does that refer to a personal  
16 communication by a representative of Parke-Davis  
17 in May of 1999 to the plaintiffs here with respect  
18 to Neurontin?  
19   A.   To the plaintiffs or to the  
20 defendants?  
21   Q.   I'm sorry, no, to the plaintiffs, to  
22 Kaiser, does that indicate in the references  
23 that --  
24   A.   Yes, it does. Yes, it does.  
25   Q.   So it indicates to you that Kaiser, in  

497

A. Carver

1  
2 preparation of its drug monograph, relied on a  
3 personal communication by an employee of  
4 Parke-Davis, Monica Patel, is that correct?  
5    A.   That's correct.  
6    Q.   Now, let me draw your attention to  
7 Exhibit 23, which is the article, "Antidepressants  
8 And Anti-herpetic Drugs For Chronic Non-cancer  
9 Pain," written by Drs. Maizels and McCarberg.  
10      Do you see that?  
11   A.   I do.  
12   Q.   Now, with respect to that, sir,  
13 turning you to the next to the last page, Kaiser  
14 003808, and the last paragraph that indicates that  
15 Dr. Maizels is on the speaker bureau for Pfizer,  
16 Inc.  
17      Do you see that?  
18   A.   I do.  
19   Q.   Now, were you aware that Dr. Maizels  
20 was on the speaker bureau for Pfizer, Inc. in or  
21 about 2005 or at any other time?  
22   A.   No, I was not.  
23   Q.   It also indicates that Dr. Maizels is  
24 a paid consultant for Pfizer, do you see that?  
25   A.   Yes, I do.  

498

A. Carver

1  
2    Q.   Now, were you ever aware that  
3 Dr. Maizels was a paid consultant for Pfizer?  
4    A.   Never.  
5    Q.   It also indicates that Dr. McCarberg  
6 is on the speaker bureau for Pfizer, do you see  
7 that?  
8    A.   Yes, I do.  
9    Q.   And were you ever aware that  
10 Dr. McCarberg was a speaker for Pfizer?  
11   A.   Never aware.  
12   Q.   Now, drawing your attention, sir, to  
13 what has previously been marked as Exhibit 17, and  
14 this is the approved minutes, TPMG regional  
15 pharmacy and therapeutics committee. And that is  
16 KAIS 001460 through 001467.  
17      Do you have that document before you?  
18   A.   I do.  
19   Q.   And sir, if you would turn to a page  
20 in the middle, it says 001464 and under Gabapentin  
21 (Neurontin) it says that it's a request to  
22 designate Gabapentin a non-detailable formulary  
23 product.  
24      Do you see that?  
25   A.   I do see that.

# EXHIBIT B

Case 1:04-cv-10981-PBS    Document 880-2    Filed 09/17/2007    Page 7 of 19

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY. v. PFIZER INC.,<br>04 CV 10739 (PBS) | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br>Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin |

**PLAINTIFFS KAISER FOUNDATION HEALTH PLAN, INC. AND KAISER FOUNDATION HOSPITALS THIRD SUPPLEMENTAL RESPONSE AND OBJECTIONS TO CERTAIN OF DEFENDANTS' FIRST AND SECOND SETS OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (hereinafter "Plaintiff" or "Kaiser"), herein supplement its response to certain of Defendants Pfizer Inc. and Warner-Lambert Company's First and Second Sets of Interrogatories as follows:

**PRELIMINARY STATEMENT**

1. Kaiser's responses are subject to all objections as to competence, relevance, materiality, admissibility, privilege, and privacy, and any and all other objections on grounds that would require exclusion of any response herein if such were offered in Court, which objections are reserved and may be interposed at the time of trial.

2. No incidental or implied admissions may be inferred from Plaintiff's responses or objections. Kaiser's response to all or any part of the Interrogatories should not be taken as an admission that: (1) Kaiser accepts or admits the existence of any fact(s) set forth in or assumed by the Interrogatory; or (2) Kaiser has in its possession, custody or control information responsive to that Interrogatory. Kaiser's response to all or any part of any Interrogatory is not intended to be, and shall not be, a waiver by Kaiser of all or any part of its objection(s) to that Interrogatory.

3. Kaiser's responses are based upon information known at this time and are made without prejudice to Kaiser's right to supplement its responses prior to trial or to produce evidence based on subsequently discovered information. Kaiser's responses are based upon, and therefore are limited by, Kaiser's present knowledge and recollection, and consequently, Kaiser reserves the right to make any changes in its responses if it appears at any time that inadvertent errors or omissions have been made.

## **GENERAL OBJECTIONS**

1. Kaiser incorporates each and every general objection set forth below into the responses to each Interrogatory as if they were fully set forth in the response to each Interrogatory. For emphasis, in connection with certain Interrogatories, Kaiser may reiterate a general objection set forth below in the specific response to that Interrogatory. Such reiteration shall in no way be deemed a waiver of other general objections not specifically set forth in connection with any Interrogatory.

2.Kaiser objects to each of the Interrogatories to the extent it is inconsistent with, or seeks to impose obligations in excess of, the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Massachusetts ("Local Rules") or any applicable scheduling order, case management order, or other ruling of the Court.

3.Kaiser objects to the Interrogatories insofar as they seek information that is protected by the attorney-client privilege, the attorney work product doctrine, the physician/patient privilege, the pharmacist/patient privilege, and/or any other applicable privilege or exemption. Kaiser will not produce such information. Any inadvertent disclosure of privileged information is not intended and should not be construed to constitute a waiver, either generally or specifically, with respect to such material or the subject matter thereof.

4.Kaiser objects to the Interrogatories insofar as they seek information that is confidential or private in nature, that is covered by third-party confidentiality agreements or that is insulated from disclosure by federal, state or local law governing disclosure of confidential patient prescription information, including, but not limited to, the provisions of the Health Insurance Portability and Accountability Act of 1996, 29 U.S.C. §§ 1181, et seq. ("HIPAA"), the Federal Privacy Rule governing Standards for Privacy of Individually Identifiable Health Information, 45 CFR Parts 160 and 164, Rule 26 of the Federal Rules of Civil Procedure, or any other applicable privilege, rule or doctrine.

5.Kaiser objects to the Interrogatories insofar as they seek trade secrets, proprietary business information, and/or competitively sensitive information. Kaiser will

not disclose such information until an appropriate protective order limiting access is in place.

6. Kaiser objects to the Interrogatories to the extent they call for production of information which is protected from disclosure by any individual's or Kaiser's right(s) to privacy or seek information protected from disclosure by Section 7216 of the Internal Revenue Code

7. Kaiser objects to each of the Interrogatories as overly broad to the extent it seeks information relating to pharmaceutical products other than Neurontin, or seeks other information having nothing to do with the subject matter of the Complaint on the ground that such requests purport to call for information that is neither relevant to this action nor likely to lead to the discovery of admissible evidence. Plaintiff will only disclose information regarding Neurontin.

8. Kaiser objects to the Interrogatories insofar as they are vague, ambiguous, overly broad, unduly burdensome, oppressive, vexatious, do not specify the information requested with sufficient particularity or seek information not reasonably calculated to lead to the discovery of admissible evidence.

9. Kaiser objects to each of the Interrogatories to the extent it calls for information from persons or entities who are not parties to this action and which information is not now and never has been in the possession, custody, or control of Kaiser.

10. Kaiser objects to each of the Interrogatories to the extent it seeks information which is publicly available or equally available to Defendants and/or already

in Defendants' possession or obtainable from another source that is more convenient, less burdensome, or less expensive.

11. Kaiser objects to these Interrogatories to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

12. Kaiser objects to the Interrogatories to the extent they assume the existence of facts which do not exist or events which did not occur.

13. Kaiser objects to these Interrogatories to the extent they constitute premature contention interrogatories.

14. Kaiser objects to the "Definitions" and "Instructions" in Defendants' Interrogatories to the extent they exceed the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules, or any applicable scheduling order, case management order, or other ruling of the Court. Kaiser also objections to the "Definitions" to the extent they are inconsistent with normal and customary usage.

15. Kaiser objects to the definition of "Person" or "Persons" on the grounds that it is overly broad and unduly burdensome, and purports to call for discovery from third parties over whom Kaiser has no control and to the extent that it exceeds the definition set forth in the Federal Rules of Civil Procedure and the Local Rules.

16. Kaiser objects to the definition of "Plaintiff" or "Kaiser" on the grounds that it is overly broad and unduly burdensome, and purports to call for discovery from persons over whom Kaiser has no control and to the extent that it exceeds the definition set forth in the Federal Rules of Civil Procedure and the Local Rules.

17. Kaiser objects to the Interrogatories to the extent they purport to require Plaintiffs to disclose information concerning any expert or other person or entity retained

by Plaintiff's counsel to assist in the preparation of Plaintiff's case to the extent any such person or entity will not be designated by Plaintiff as a trail witness on the grounds that such disclosure is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

18.  Kaiser reserves until the time of trial all objections as to the relevance or admissibility of any information provided in response to these Interrogatories. The supplying of any information contained herein does not constitute an admission by Plaintiff that such information is relevant or admissible or that any statement or characterization in Defendant's Interrogatory is accurate or complete.

19.  Kaiser's decision, now or in the future, to provide information or documents notwithstanding the objectionable nature of any of the definitions or instructions, or the Request itself, should not be construed as: (a) a stipulation that the material is relevant or admissible, (b) a waiver of Kaiser's general objections or the objections asserted in response to specific document requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

## THIRD SUPPLEMENTAL RESPONSES TO INTERROGATORIES

<u>Interrogatory No. 9, Second set</u>

Identify all studies of Neurontin that you allege were suppressed by defendants.

<u>Response:</u>

Kaiser objects to this Interrogatory on grounds that it is overly broad, unduly burdensome, vague, ambiguous and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. In addition, Kaiser objects to the Interrogatory to the extent it seeks

-6-

discovery information which is equally available to Defendants and/or already in Defendants' possession or obtainable from another source that is more convenient, less burdensome, or less expensive. Kaiser further objects on the grounds that the Interrogatory is premature inasmuch as it purports to call for information that could be uncovered as discovery proceeds.

Without waiver of the foregoing objections, additional studies of Neurontin which Kaiser alleges were suppressed by defendants, include but are not limited to the following: 954-204 on anxiety disorder; Stewart study on dose; 945-82; 945-77, 945-177 on dose response; 945-295 on dose; 945-177 (Eastern European Study) on Epilepsy Monotherapy; Studies 879-201, 879-205, 879-206, 879-207, 879-209 (European studies) on Migraine and/or headache; 945-217 on Migraine and/or headache; Gorson study on Diabetic Peripheral Neuropathy; Reckless study (945-224) on Diabetic Peripheral Neuropathy; 1032-001 study on Postoperative Dental Pain; 1035-001 study on Postoperative Dental Pain; 1032-002 study on Acute Osteoarthritis Pain of the knee; 1032-004 study on Protective effects of gabapentin on Naproxen Sodium induced Upper Gastrointestinal Mucosal Injury; 945-271 study on Post-operative and Posttraumatic pain; Ehrenberg study on Restless leg syndrome.

Interrogatory No. 11, first set:

State whether a representative of Defendants ever made any statement about Neurontin to Plaintiff, and if so, describe in detail the content of those statements, where they were made, who made them and the circumstances under which they were made.

Response:

Kaiser objects to the interrogatory to the extent it seeks discovery of information which is equally available to Defendants and/or already in Defendants possession or obtainable from another source that is more convenient, less burdensome, or less expensive.

Kaiser Supplements its response to this Interrogatory by referring Defendants to the following documents: KAIS-004650; KAIS-003259-68; KAIS-003810-12; KAIS-005569; KAIS-005586; KAIS 042420; KAIS 042543-46; KAIS-042070; KAIS-042550; KAIS-042592; KAIS-042624-25; KAIS 042640; KAIS-042650-51; KAIS-042709-10; KAIS 042893-94; KAIS-042946-47; KAIS-042948-54; KAIS-042997-98; KAIS-043097-99; KAIS-043144; KAIS-043171; KAIS-043173-74; KAIS 043184-5; KAIS-043251; KAIS-043262; KAIS-043284; KAIS-043333-35; KAIS-043339-40; KAIS-043478; KAIS-043530; KAIS-043604; KAIS-043614; KAIS-043617; KAIS-043635; KAIS-043712; KAIS-043727; KAIS-043729; KAIS-043732; KAIS-043761; KAIS-043769; KAIS-043787; KAIS-043797; KAIS-043873-87; KAIS-041215-23; KAIS-041890; KAIS-041904; KAIS-041905; KAIS-041913-14; KAIS-041927; KAIS-041939; KAIS-041957; KAIS-041965; KAIS-041984; KAIS-042015; KAIS-042021-22; KAIS-042026-27; KAIS 042059; KAIS-042060; KAIS-042074; KAIS-042076; KAIS-042080; KAIS-042096-97; KAIS-042098; KAIS-042493; KAIS-042500; KAIS-042508; KAIS-042509; KAIS-042511-12; KAIS-042514; KAIS-042529; KAIS-042536; KAIS-042537; KAIS-042555; KAIS-042559; KAIS-042560; KAIS-042566-67; KAIS-042569; KAIS-042583; KAIS-042593; KAIS-042600; KAIS-042604; KAIS-042607; KAIS-042615; KAIS-042663; KAIS-042992; KAIS-043042-43; KAIS-043119; KAIS-043313-16; KAIS-043456-59; KAIS-043467-68.

Interrogatory No. 12, first set:

State whether providers who prescribed Neurontin to Plaintiff's Members ever made any statement about Neurontin to Plaintiff, and if so, describe in detail the content of those statements, when they were made, who made them, and the circumstances under which they were made.

Response:

Kaiser objects to this Interrogatory on grounds that it is overly broad, unduly burdensome, vague, ambiguous and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Kaiser further objects to this Interrogatory insofar as it seeks protected health information that is insulated from disclosure by federal, state or local law governing the disclosure of confidential patient prescription information, including but not limited to HIPAA.

Kaiser Supplements its response to this Interrogatory by referring Defendants to the following documents: KAIS-000877; KAIS-003823-24; KAIS-003837; KAIS-004665-83, KAIS 004684-99; KAIS-005537; KAIS-005527; KAIS-005543; KAIS-0005548-50; KAIS 005560; KAIS-005578.

Interrogatory No. 13 first set:

State whether Plaintiff or any representative of Plaintiff ever attended any seminars, meetings or events at which the use of Neurontin for any off-label use was discussed and if so, state the name of the person(s) who attended, the dates(s) of the event(s), the location of the event(s), the title of the events(s), and the subject matter discussed.

Response:

Kaiser objects to the interrogatory to the extent it seeks discovery of information which is available to Defendants and/or already in Defendants possession or obtainable

from another source that is more convenient, less burdensome, or less expensive. Kaiser also objects to this Interrogatory on grounds that it is overly broad, unduly burdensome, vague, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence.

Kaiser Supplements its response to this Interrogatory by referring Defendants to the following documents: KAIS-001069A-89; KAIS-001090; KAIS-001092; KAIS-001135-45; KAIS 001234; KAIS-001367; KAIS-003813-44; KAIS-003845-46; KAIS-003856-59; KAIS-005920-21; KAIS-003949-86; KAIS-003987-4020; KAIS-004021-29; KAIS-005489. Kaiser also alerts Defendants to information contained in documents they produced, such as: VOX022590-633; WLC_FRANKLIN_0000041936; VOX037871; MDL_VENDORS_009293-9446; VOX080465-67; VOX080473-83.

Interrogatory No. 15, first set:

State whether you have had any communications with Parke-Davis, Warner-Lambert or Pfizer, including but not limited to online, phoned, mailed or faxed communications, regarding Neurontin, including the dates of any such communications.

Response:

Kaiser objects to the Interrogatory to the extent it seeks discovery of information which is equally available to defendants and/or already in Defendants' possession or obtainable from another source that is more convenient, less burdensome, or less expensive. Kaiser Supplements its response to this Interrogatory by referring Defendants to documents referred to in Interrogatory 11, first set, and the following documents: KAIS-005360; KAIS-005890; KAIS-006273; KAIS-003800-01; KAIS001460-67.

-10-

Dated: September 4, 2007

KAPLAN FOX & KILSHEIMER LLP

By: *Linda P. Nussbaum* (Signed by ALP)

Linda P. Nussbaum
850 Third Avenue, 14th Floor
New York, NY 10022

## CERTIFICATE OF SERVICE

The undersigned certifies that on this date, a true and correct copy of the foregoing Plaintiff Kaiser, Inc.'s Third Supplemental Responses and Objections to Certain of Defendants' Pfizer Inc. and Warner-Lambert Company's First and Second Set of Interrogatories was served on the person below by federal express:

>Matthew B. Rowland, Esq.
>Davis Polk & Wardwell
>450 Lexington Ave.
>New York, NY 10017
>
>Attorney for Defendants

Dated: September 4, 2007          KAPLAN FOX & KILSHEIMER LLP

By: _____
Aviah Cohen Pierson
850 Third Avenue, 14th Floor
New York, NY 10022