UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981 |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY, | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC. | |
| and | |
| AETNA, INC. v. PFIZER INC. | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS OF SPECIFIED CURRENT AND FORMER EMPLOYEES OF DEFENDANTS**

728933.1

**I.      Introduction**

In moving for leave to take twelve additional depositions of certain of Defendants' current and former employees, Plaintiffs identified a discrete number of specific witnesses and the specific testimonial gaps they would likely fill. In response, Defendants do not deny that the topics on which Plaintiffs seek testimony are relevant; instead, they offer their characterization of the witnesses identified by Plaintiffs as unnecessary to Plaintiffs' case, and argue, wrongly, that Plaintiffs' request is belated. However, a careful reading of their opposition makes make clear that Defendants' real position – as expressed during the meet-and-confer – is that Plaintiffs' should not be permitted to depose *even one* additional Pfizer employee, no matter what the merits. Defendants' attempt, through the uncompromising position they have adopted on this motion, to run out the clock on discovery should be rejected, and Plaintiffs should be granted leave to take this limited number of additional depositions.

**II.     Argument**

    **A.     Plaintiffs' Request Is Timely.**

Contrary to Defendants' repetitive protestations, Plaintiffs' motion is neither belated nor untimely. Plaintiffs identified the initial list of 30 deponents on May 1, 2007. Pursuant to Case Management Order No. 5 (Dkt No. 736), depositions were to commence on May 29, 2007. When the Court set the initial limit of 30, it did so on the basis of the facts that were before it at the time, but obviously and necessarily before any deposition discovery had begun. When depositions did begin, the need for a additional depositions became apparent, which is not surprising in a case of this magnitude and complexity.

Plaintiffs provided notice to Defendants on July 3, 2007, before the first deadline for fact discovery had arrived, that additional depositions would likely be necessary. (*See* Dkt. No. 776). Defendants sought, successfully, to defer the issue then, and the parties continued to

conduct depositions throughout the summer. On September 4, 2007, with eight depositions remaining to be taken and a full five weeks remaining in discovery, Plaintiffs again raised the issue of additional depositions with Defendants and provided the list of witnesses to them then.[1] Plaintiffs provided those names on the understanding that Defendants would review the names and determine whether there could be agreement as to at least a handful of the names. Defendants showed no flexibility at that time,[2] refusing to agree even conceptually to a single additional deposition, thus forcing the parties to spend time in presenting the issue to the Court. Plaintiffs, then, raised the issue as it emerged during depositions in July, and again well before the close of fact discovery. Their request is timely.

Far from an unlimited or overly broad request, this is a carefully limited list that raises the total number of depositions from 30 to 42. Defendants' warning about the need to further extend the fact discovery deadline due to these additional depositions is disingenuous, since such extension, if it is even required, will be largely a result of the unyielding position Defendants took on this issue. In any case, Plaintiffs stand ready to devote sufficient resources and work in good faith with the Defendants to schedule and take these additional depositions before October 15, 2007 and without necessitating an amendment to the scheduling order.

B.   **The Proposed Discovery Is Neither Duplicative Nor Cumulative.**

"The deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507

---

[1] Defendants misleadingly imply that plaintiffs identified the twelve individuals for the first time when filing their motion. *See* Dkt. No. 869 at 1 (referring to the twelve witnesses plaintiffs "now identify in this motion.").

[2] Defendants' counterproposal involving the substitution of new witnesses for previously-noticed ones was made known to Plaintiffs for the first time in Defendants' response.

(1947). Defendants do not dispute that Plaintiffs' motion has identified relevant topics. Instead, they offer an unsurprisingly self-serving assessment of the discovery they believe *Plaintiffs* require at this stage of discovery, and pronounce Plaintiffs' request as unnecessary. To the contrary, there is good cause for each of the depositions identified by Plaintiffs.

The Federal Rules provide courts discretion to respond flexibly to the specific and often fluid circumstances in individual cases. With that in mind, Plaintiffs' motion set forth in specific detail the information to which they believe the twelve individuals could testify. Defendants respond to the specific statements of relevance and need with a raft of irrelevant, self-serving, and even incorrect assertions. For example, Defendants state that Plaintiffs seek to depose David Probert merely "because he was a member of the U.S. Neurontin Marketing Team," and that Plaintiffs "had ample opportunity to explore the U.S. Neurontin Marketing Team's relationship with medical marketing vendors." (Dkt. No. 869, at 7-8.) Defendants do not contest the assertion that Mr. Probert worked more closely with the vendors, and thus is in possession of knowledge that the remainder of the Marketing Team lacked. Thus, any such "opportunity" to explore this subject, if it had even existed, would have been with a less knowledgeable witness and would have come at the expense of a topic that was covered.

Similarly, Defendants assert that Plaintiffs have deposed no fewer than 10 participants in Neurontin Review Committee meetings. However, Defendants do not dispute that unlike those other participants, Rady Johnson was the only lawyer. Thus, the number of participants is irrelevant. It is Mr. Johnson's unique role as the backstop to fraud that makes him necessary and relevant.[3] Defendants cite no authority supporting their position that Plaintiffs are entitled to a single deposition from within any given department or committee, especially of such

---

[3] Defendants offer no support for their apparently novel position that Mr. Johnson's status as an attorney amounts to an inherent disqualification from sitting for a deposition.

-3-

large companies as Defendants here.

Equally misplaced is the Defendants' assertion that the testimony of Drusilla Scott, who shepherded the ill-fated neuropathic pain sNDA,[4] could be replaced by Lucy Castro merely because they worked for the same department. Defendants do not deny that Ms. Scott is uniquely capable of testifying about the circumstances surrounding the decision to file an sNDA that Pfizer knew beforehand would be rejected.

With respect to Angelo Crespo, author of countless emails advocating suppression of the truth about Neurontin, Defendants are correct that many of her emails have been put before various witness. However, what Defendants fail to mention is that not one witness admits to understanding, agreeing with, or acting upon the recommendations of Ms. Crespo. If she is the "loose cannon" that Pfizer witnesses claim, then Plaintiffs have no ability to obtain testimony about the true meaning and import of the emails from anyone else but Ms. Crespo. Thus, her testimony is especially necessary.

The same is true of Elizabeth Mutisya. Not one Pfizer employee has admitted to being aware of or monitoring the progress of the foreign clinical trials that Pfizer has suppressed. It is almost laughable that Defendants would mention Leslie Tive and Robert Glanzman, since both have testified that it was not their job to review or compile information about studies that were going on outside of the U.S. Thus, the testimony of Ms. Mutisya would not be duplicative – it would fill an identifiable gap.

Defendants' general recitation of the number of witnesses deposed, the hours spent testifying, and the number of transcript pages generated thus far (*see* Dkt. No. 869 at 4) is

---

[4] Defendants erroneously refer in their opposition to NDAs (New Drug Applications), when there was in fact a single sNDA (Supplemental New Drug Application) which was amended to avoid a rejection by the FDA.

728933.1

both ironic (since Pfizer opposed allowing most of the depositions until ordered otherwise) and avoids the issue – regardless of the length or output of discovery to date, there are still areas of testimony that remain outstanding.  Further, the authority cited by Defendants does not reveal the discovery sought by Plaintiffs to be unnecessary.  *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) affirmed a motion by a third party to quash subpoenas in which the issuing party "hope[d]" the desired deposition testimony would contradict the prior testimony of a party.[5]  Unlike the defendant in *Ameristar Jet Charter*, Plaintiffs have set forth the "new, relevant information" it can obtain through the additional information.  *Id.* at 193.  Finally, Defendants' reference, without analysis, to the lower deposition limit *per defendant* in the *AWP* litigation (*see* Dkt. No. 869, at 4), is egregiously misleading, as it omits the central fact that *AWP* involved 42 defendants.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61 (D. Mass. 2005).

        Plaintiffs have as little interest in conducting unnecessary or inefficient discovery as do Defendants.  The multi-layered fraud at issue in this case spans from 1994 and resulted in a criminal conviction and a $430 million fine.  The marketing of a drug whose annual sales at one point exceeded $2 billion years necessarily involved many parts, and many employees, of the two large defendant companies.  It is the scope of the fraud – not Plaintiffs' desire to add burden or expense to the last days of discovery – that necessitates Plaintiffs' request to exceed the thirty depositions permitted by the Court.

### III.    Conclusion

        For the foregoing reasons, Plaintiffs' motion for leave to take additional depositions should be granted.

---

[5] *Ardolino v. Met. Life. Ins. Co.*, 2001 WL 34563168 (D. Mass. July 2, 2001), an ERISA case, involved written responses to discovery requests, and cited *Ameristar Jet Charter*.

                                            Respectfully submitted,

Dated: September 17, 2007        By:   /s/ Barry R. Himmelstein_____
                                                  Barry R. Himmelstein

Barry R. Himmelstein
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas Greene
GREENE & HOFFMAN
125 Summer Street
Boston, MA 02110

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Boston, MA 02110

Don Barrett
BARRETT LAW OFFICE
404 Court Square North
P.O. Box 987
Lexington, MS 39095

Daniel Becnel, Jr.
LAW OFFICES OF DANIEL BECNEL, JR.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

James Dugan
DUGAN & BROWNE
650 Poydras St., Suite 2150
New Orleans, LA 70130

***Members of the Class Plaintiffs'
Steering Committee***

Gerald Lawrence, Esq.
LOWEY DANNENBERG BEMPORAD &

SELINGER, P.C.
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshocken, PA 19428

Linda P. Nussbaum, Esq.
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022

**Members of the Plaintiffs'
Non-Class Steering Committee**

728933.1

## CERTIFICATE OF SERVICE

     I hereby certify that on September 17, 2007, I caused this document to be served on the parties pursuant to Case Management Order #3 by causing it to be filed through the Court's ECF System.

                                        /s/ Daniel E. Seltz
                                        Daniel E. Seltz, Esq.