# EXHIBIT C

DAVIS & GILBERT LLP
1740 BROADWAY
NEW YORK, NEW YORK 10019
(212) 468-4800

DIRECT DIAL NUMBER
(212) 468-4825
EMAIL ADDRESS
pcorcoran@dglaw.com

MAIN FACSIMILE
(212) 468-4888
PERSONAL FACSIMILE
(212) 974-7037

January 5, 2007

**VIA FACSIMILE & OVERNIGHT MAIL**

Chambers of the Honorable Patti Saris
United States District Judge
United States District Court
For the District of Massachusetts
One Courthouse Way
Boston, MA 02210

> Re:   *In Re: Neurontin Marketing And Sales Practices Litigation*, MDL Docket
> No. 1629, Master Docket No. 04-10981 (D. Mass) (PBS) (LTS)

Dear Judge Saris:

We represent seven non-parties with regard to documents-only subpoenas issued by Plaintiffs in the above-referenced matter (the "Subpoenas"): Cline Davis & Mann, Inc., Sudler & Hennessy, LLC, CommonHealth, Fallon Medica, Adelphi, Inc., The Impact Group, and Current Medical Directions, Inc. (collectively, the "Non-Parties"). Five of the Subpoenas issued from the United States District Court for the Southern District of New York and the other two issued from the United States District Court for the District of New Jersey (the "Issuing Districts").

We respectfully submit this letter to register our timely objections to Discovery Order No. 7 issued on December 20, 2006 by Magistrate Judge Sorokin in the above-referenced matter (the "Order") to the extent that the Order purports to order the Non-Parties to complete production of documents responsive to the Subpoenas by February 1, 2007. A copy of the Order is attached hereto as Exhibit A. The Non-Parties' object to the Order on the grounds that: (1) the United States District Court for the District of Massachusetts is not an Issuing District and therefore lacks jurisdiction over the Non-Parties; and (2) the February 1, 2007 date set in the Order for production of responsive documents by the Non-Parties provides inadequate notice in light of the number of Subpoenas and the volume of documents to be gathered, reviewed and produced.

On November 30, 2006 Plaintiffs moved —not in the Issuing Districts but in the District of Massachusetts under the caption of the MDL proceeding — to compel production by the Non-Parties of documents responsive to the Subpoenas (the "Motion"). By papers dated

DAVIS & GILBERT LLP

Hon. Patti B. Saris
January 5, 2007
Page 2

December 8, 2006, the Non-Parties opposed the Motion on the grounds, *inter alia*, that the Motion was in violation of Rule 45, and that the United States Court for the District of Massachusetts lacks personal jurisdiction over both the Non-Parties and the subject Subpoenas. A copy of the Non-Parties' brief in opposition to the Motion is attached as Exhibit B to this letter for the Court's convenience.

Rule 45 plainly requires that motions to compel related to third-party subpoenas be made to – and any resulting compulsion orders must come from – the district court that issued the subpoena. *See* Fed. R. Civ. Pr. 45(c)(2)(B) (providing for motions to and compulsion orders from "the court by which the subpoena was issued.") This is not a trivial procedural requirement, and is necessary to protect the appellate rights of non-parties in the jurisdictions in which they reside. It also has significant due process implications, as this MDL Court only has jurisdiction over out-of-state non-party subpoena recipients when sitting as a Judge of the District Courts which issued the subpoenas. In the instant case, the Non-Parties were not able to be heard properly on the Motion, as it was not brought in the Issuing Districts, and will be unable to appeal the Order, should they desire to do so, in their respective Circuit Courts. Plaintiffs' Motion to this Court under the MDL caption was clearly improper, as it was not brought in the Issuing Districts. Moreover, Magistrate Judge Sorokin, who was sitting as a Magistrate Judge of the District of Massachusetts in issuing the Order and not as a judge of the Issuing Districts, lacked authority to issue a compulsion order concerning the Subpoenas. Therefore, the Non-Parties respectfully request that the Order be withdrawn as improvidently granted insofar as it sought to compel production by the Non-Parties, who are not subject to the jurisdiction of the United States District Court for the District of Massachusetts.

Additionally, as noted above, the February 1, 2007 date for production by the Non-Parties set forth in the Order is inherently unreasonable. The discovery cut-off date has been the subject of a heated dispute between the parties for over a year and a half. During the August 1, 2005 oral argument on the parties' respective motions regarding the scope of discovery, this Court indicated that any ruling regarding the Discovery motions should guide the parties with respect to the scope of third-party discovery. In accordance with this direction from the Court, as Plaintiffs are well aware, the Non-Parties have been awaiting a final determination of the scope of discovery since the Subpoenas were issued before engaging in the time-consuming and costly process of reviewing and producing documents responsive to the seven Subpoenas. The Non-Parties have taken this position consistently in a good faith effort to avoid incurring unnecessary burden and expense from duplicative reviews and segregation of documents that shifting discovery date cut-offs would have entailed.

On December 18, 2006, just two days before the Order setting February 1, 2007 as the date for production of responsive documents by the Non-Parties, Your Honor granted Plaintiffs permission to file a Third Amended Complaint,, which pleading was filed later on December 18. This order effectively resolved the date range for discovery, thereby alleviating

DAVIS & GILBERT LLP

Hon. Patti B. Saris
January 5, 2007
Page 3

the Non-Parties' concerns regarding the potential for multiplication of their burden and expense in responding to the Subpoenas. Since this recent determination of the discovery cut-off dates, the Non-Parties have been proceeding with collection and review of potentially responsive documents, and intend to prepare the documents for production as expeditiously as possible. The documents to be reviewed and prepared are voluminous. We learned only this week that the United States Attorney for the District of Massachusetts is about to return between 25 and 50 boxes of potentially responsive original documents to one of the Non-Parties, Sudler & Hennessey, which will also have to be reviewed and prepared for production. Even assuming *arguendo* that this Court has jurisdiction to issue a compulsion order to the Non-Parties, a period of less than six weeks as provided in the Order is clearly inadequate to allow the Non-Parties to complete their collection, review and preparation of documents for production.

The Non-Parties are willing, as they have been since the Subpoenas were served, to produce documents responsive to the Subpoenas, subject to the objections raised in their respective Rule 45 letters. We respectfully request that the Order be withdrawn insofar as it purports to compel the Non-Parties to produce documents responsive to the Subpoenas by February 1, 2007 for the jurisdictional reasons outlined above. Of course, in the event that Plaintiffs are not satisfied by the Non-Parties' plans concerning review and production of documents responsive to the Subpoenas as set forth herein, Plaintiffs have the option of bringing motions to compel in the Issuing Districts in accordance with Rule 45, affording the Non-Parties a proper opportunity to be heard and preserving the Non-Parties' appellate rights.

Thank you for your consideration of this matter.

Very truly yours,

Paul F. Corcoran

Enclosures

cc:    Jeff S. Gibson, Esq. (via overnight mail)
       Cheryl Plambeck, Esq. (w/out enclosures)

# EXHIBIT D

DAVIS & GILBERT LLP

1740 BROADWAY

NEW YORK, NEW YORK 10019

(212) 468-4800

DIRECT DIAL NUMBER
(212) 468-4825
EMAIL ADDRESS
pcorcoran@dglaw.com

MAIN FACSIMILE
(212) 468-4888
PERSONAL FACSIMILE
(212) 974-7097

January 16, 2007

**VIA OVERNIGHT MAIL**

Chambers of the Honorable Patti Saris
United States District Judge
United States District Court
For the District of Massachusetts
One Courthouse Way
Boston, MA 02210

Re:    *In Re: Neurontin Marketing And Sales Practices Litigation*, MDL Docket
No. 1629, Master Docket No. 04-10981 (D. Mass) (PBS) (LTS)

Dear Judge Saris:

We represent seven non-parties with regard to documents-only subpoenas issued by Plaintiffs in the above-referenced matter (the "Subpoenas"): Cline Davis & Mann, Inc., Sudler & Hennessy, LLC, CommonHealth, Fallon Medica, Adelphi, Inc., The Impact Group, and Current Medical Directions, Inc. (collectively, the "Non-Parties").

By our letter dated January 5, 2007, we registered our timely objections to Discovery Order No. 7 issued on December 20, 2006 by Magistrate Judge Sorokin in the above-referenced matter (the "Order") to the extent that the Order purports to order the Non-Parties to complete production of documents responsive to the Subpoenas by February 1, 2007. We respectfully submit this letter in response to and to clarify certain inaccuracies in the letter submitted by Plaintiffs to the Court on January 12, 2006, which we received today.

First, the Non-Parties are not appealing the Order under Rule 72 and have not requested *de novo* review. The Non-Parties are simply requesting that the Court withdraw that portion of the Order that purports to compel the Non-Parties to produce documents responsive to the Subpoenas by February 1, 2007 on the grounds that this Court lacks jurisdiction over the Non-Parties. As noted in our January 5, 2007 letter to the Court, the Subpoenas issued out of the District Courts for the Southern District of New York and for the District of New Jersey (the "Issuing Districts"). Plaintiffs did not bring their motion to compel in the Issuing Districts as required by Rule 45, and Magistrate Judge Sorokin was sitting as a judge of the United States District Court for the District of Massachusetts – not of the Issuing Districts – when he issued the Order. Plaintiffs could have brought their motions in the Issuing Districts and requested that the Issuing Districts transfer the motions to Your Honor to decide them sitting as a judge of the

DAVIS & GILBERT LLP

Hon. Patti B. Saris
January 16, 2007
Page 2

Issuing Districts. However, Plaintiffs valued their own convenience over the due process rights and the convenience of the Non-Parties, resulting in the Order and the instant request by the Non-Parties for withdrawal of same to the extent that it addresses the Subpoenas.

Contrary to Plaintiffs' assertions, and as set forth in the Non-Parties' opposition to Plaintiffs' motion to compel, 28 U.S.C. § 1407 does not operate to force non-parties to appear initially in a transferee district (as Plaintiffs attempted to do), or to confer jurisdiction over such non-parties on the transferee district on documents-only subpoenas such as those at issue here. The pertinent part of that statute, 28 U.S.C. § 1407(b), provides only that "[t]he judge or judges to whom such actions are assigned . . . may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions." Even if—contrary to its plain language— § 1407(b) gives a transferee judge the power to compel non-parties to comply with documents-only subpoenas, that judge may only do so while sitting as a judge of the issuing district, subject to the rules and law of that district. (*See* Exhibit B to the January 5 Letter, pp. 8-10)[1]  At most, this statute would permit a transferee court to decide a motion to compel an out-of-district non-party to comply with a documents-only subpoena provided that the motion has been brought properly, in accordance with Rule 45, as a special proceeding in the district in which the subpoena was issued. *See, e.g., In Re Welding Rod Products Liability Litigation*, 406 F. Supp. 2d 1064 (N.D. Cal. 2005) (transferring a motion concerning a non-party subpoena to the MDL-transferee court). Thus, the Non-Parties respectfully request that the Order be withdrawn as improvidently granted insofar as it sought to compel production by the Non-Parties.

Second, even if this Court had personal jurisdiction over the Non-Parties, the February 1, 2007 deadline for production is impossible to meet. Plaintiffs state that they would not object to a reasonable extension of a deadline and are prepared to discuss that issue with counsel for the Non-Parties. Plaintiffs present no reason why this deadline should not be extended. Discovery is ongoing, and the Order sets a September 15, 2007 deadline for fact discovery in "Track One" cases. Plaintiffs have not been and will not be prejudiced if production by the Non-Parties is not completed by February 1. Moreover, Plaintiffs themselves are responsible for much of any purported delay, inasmuch as Plaintiffs failed to take steps to resolve the issue of discovery cut-off dates for over a year after the first of the Subpoenas were issued. For almost a year, Plaintiffs tacitly agreed that the Non-Parties could await the determination of the timeframe for discovery during this time period before conducting a search for responsive documents. Clearly, Plaintiffs' allegation that "most" of the documents "could

---

[1] Plaintiffs cite *In Re Uranium Antitrust Litigation*, 503 F. Supp. 33, 35 (N.D. Ill. 1980), but fail to note that the court in that case held that 28 U.S.C. §1407(b) did not permit it to reach out and assert jurisdiction over an out-of-district non-party, as Plaintiffs seek of this Court. The District Court explained: "Thus, the statute clearly authorizes us as transferee judge to journey to another district to hear a discovery dispute *in that district*, but we may lack the authority to exercise the judicial power of a judge of the other district from our present forum, i.e., reach out, assert jurisdiction, and compel the non-party disputants to the out-of-district controversy to appear initially in this district. It is our judgment that if the district court in which the non-party dispute arises is unwilling (or perceives itself as unable) to transfer the dispute here we cannot compel it to do so."

DAVIS & GILBERT LLP

Hon. Patti B. Saris
January 16, 2007
Page 3

have been produced" is incorrect. The indeterminate <u>scope</u> of the search was the very issue delaying the production of any documents. The time frame for discovery was finally determined only a few weeks ago, and it is unreasonable to expect that the search for and review of documents from a period at least three years longer than originally requested can be completed by February 1.

Plaintiffs' assertion that some of the Non-Parties had no objection to the production of documents from 1994-2001 is simply untrue. The only one of the many objections raised by the Non-Parties to be addressed so far was their concern regarding the burden and expense of piecemeal reviews. This objection was resolved finally on December 18, 2006 when Plaintiffs filed a Third Amended Complaint and the date range for discovery was effectively resolved. The Non-Parties' objections to the Subpoenas as set forth in their respective Rule 45 letters – including, *inter alia*, that the twenty-seven to twenty-eight separate document requests impose an undue burden on the Non-Parties - have never been addressed by this or any court. Notably, Plaintiffs have failed to take any steps to date to resolve the many other objections raised by the Non-Parties, to minimize the burden the Subpoenas impose on the Non-Parties, or to narrow any of the requests in their outrageously overbroad Subpoenas.

Finally, Plaintiffs' complaint concerning any review of their documents by Pfizer prior to production is a red herring. We do not anticipate that Pfizer's review would significantly delay production and this is not a factor in the Non-Parties' determination that, practically speaking, it will be impossible to complete the collection, review and preparation of documents by February 1, 2007. Additionally, Plaintiffs' purported fear that Pfizer would be determining which documents should be produced and which should be withheld is unfounded. The Non-Parties will be conducting their own reviews and making their own determinations regarding responsiveness and privilege issues. To the extent that the Non-Parties permit Pfizer to see documents before production, they will do so out of respect for their client relationships with Pfizer, and to ensure that they are complying with any agreements they may have with Pfizer regarding confidentiality of documents generated in the course of those relationships.

Therefore, for the reasons set forth above and in our January 5, 2007 letter, we respectfully request that the Order be withdrawn, on the grounds that the Magistrate Judge in issuing the Order from the United States District Court for the District of Massachusetts lacked personal jurisdiction over the New York and New Jersey subpoena recipients.

Thank you for your consideration of this matter.

Very truly yours,

Paul F. Corcoran

DAVIS & GILBERT LLP

Hon. Patti B. Saris
January 16, 2007
Page 4


cc:     Jeff S. Gibson, Esq. (via overnight mail)
        Cheryl Plambeck, Esq. (w/out enclosures)

# EXHIBIT E

MDL

# United States District Court
## District of Massachusetts (Boston)
### CIVIL DOCKET FOR CASE #: 1:04-cv-10981-PBS

| | |
|---|---|
| Harden Manufacturing Corporation v. Pfizer, Inc. et al | Date Filed: 05/14/2004 |
| Assigned to: Judge Patti B. Saris | Jury Demand: Both |
| Referred to: Magistrate Judge Leo T. Sorokin | Nature of Suit: 890 Other Statutory |
| Member case: (View Member Case) | Actions |
| related Cases: 1:96-cv-11651-PBS | Jurisdiction: Federal Question |

related Cases:
1:96-cv-11651-PBS
1:04-cv-10958-PBS
1:07-cv-11336-PBS
1:04-cv-10984-PBS
1:05-cv-10797-PBS

Cause: 18:1962 Racketeering (RICO) Act

**Consolidated Plaintiff**

**Brenda Straddeck**                    represented by    **Elizabeth V. Heller**
Goldenberg Heller Antognoli Rowland
Short & Gori, PC
2227 South State Route 157
Edwardsville, IL 62025
618-656-5150
Fax: 618-656-6230
Email: elizabeth@ghalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

**Gary L. Lyman**                       represented by    **Andrew G. Finkelstein**
*as personal respresentative of the*                     Finkelstein & Partners, LLP
*Estate of Joshua James Lyman,*                           436 Robinson Avenue
*deceased*                                                Newburgh, NY 12550
800-634-1212
Fax: 845-562-3492
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eleanor Louise Polimeni**
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY 12550
845-634-1212
Fax: 845-562-3492
Email: epolimeni@lawampm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| | | |
|---|---|---|
| | | the return of additional undeliverable email notices. (Hurley, Virginia) (Entered: 01/16/2007) |
| 01/16/2007 | | Electronic Clerk's Notes for proceedings held before Judge Leo T. Sorokin : Motion Hearing held on 1/16/2007 re 591 MOTION Random Selection of Track One Plaintiffs filed by Pfizer, Inc., 593 Submission Pursuant to Discovery Order No.7 filed by Pfizer, Inc. Attorneys Finkelstein, Rona and Greene for plaintiffs; Attorneys Rouhandeh, MacGregor, Chaffin, Zissu and Muehlberger for defendants. After argument, the Court takes the matters under advisement. (Court Reporter Valerie O'Hara.) (Tyler, Rebecca) (Entered: 01/16/2007) |
| 01/16/2007 | 613 | Letter to Judge Saris from Paul F. Corcoran in response to and to clarify certain inaccuracies in the letter submitted by Plaintiffs to the Court on 1/12/07. (Patch, Christine) (Entered: 01/25/2007) |
| 01/17/2007 | 609 | Magistrate Judge Leo T. Sorokin : DISCOVERY ORDER NO. 8 entered. The Court hereby makes the following rulings and orders on the matters before the Court at the January 16, 2007 Motion Hearing.The Motion for Random Selection (Docket #591) is ALLOWED IN PART AND DENIED IN PART. The parties shall submit a numbered list of all of the Finkelstein Products Liability cases no later than January 24, 2007. The Court will randomly select six cases, then issue an order identifying the cases and setting dates for the parties to make their selections. (Simeone, Maria) (Entered: 01/18/2007) |
| 01/22/2007 | 610 | MOTION for Extension of Time *Joint Motion for Enlargement of Certain Dates Related to Plaintiffs' Motion for Class Certification* by All Plaintiffs.(Sobol, Thomas) (Entered: 01/22/2007) |
| 01/24/2007 | | Motions terminatedas moot: 389 Assented to MOTION for Extension of Time *TO ANSWER, MOVE, OR OTHERWISE RESPOND TO COMPLAINT* filed by Pfizer, Inc.,. (Simeone, Maria) (Entered: 01/24/2007) |
| 01/24/2007 | 611 | STATUS REPORT -- *Submission Pursuant to Discovery Order No. 8* by Pfizer, Inc.. (Chaffin, David) (Entered: 01/24/2007) |
| 01/25/2007 | 612 | NOTICE of Appearance by Lino Humberto Ochoa on behalf of Maria Guadalupe Fonseca, Maria Aranda, Sulema Salinas, Lilia Felici, James Michael Burleson, Jose Garcia (Ochoa, Lino) (Entered: 01/25/2007) |
| 01/25/2007 | | Judge Patti B. Saris : ELECTRONIC ENDORSEMENT re 613 Letter to Judge Saris. "File a motion if relief is requested. I do not accept motions by letter." (Patch, Christine) (Entered: 01/25/2007) |
| 01/25/2007 | | Judge Patti B. Saris : ELECTRONIC ENDORSEMENT re 602 Letter/request (non-motion). "In this session, I require motions and oppositions." (Patch, Christine) (Entered: 01/30/2007) |
| 01/25/2007 | | Judge Patti B. Saris : Electronic ORDER entered granting 610 Motion for Enlargement of Certain Dates Related to Plaintiffs' Motion for Class Certification. "The Hearing on Class Certification is rescheduled to May |

# EXHIBIT F

88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES & PRODUCTS LIABILITY LITIGATION | **SUBPOENA IN A CIVIL CASE**<br>MDL Docket No. 04-MDL-1629<br>Master File No. 04-10981 (D. Mass) |
| TO: Cline Davis & Mann, Inc.<br>220 East 42nd Street<br>New York, New York  10017 | |

___ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |

**X** YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  The deposition will be recorded stenographically and by videotape.    **SEE ATTACHED SCHEDULE A**

| PLACE     **Kaplan Fox & Kilsheimer, LLP**<br>**850 Third Avenue, 14th Floor**<br>**New York, New York  10022** | DATE AND TIME<br>September 3, 2007<br>9:30 a.m. |
|---|---|

___ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

___ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>*(signature)*<br>(Attorney for Coordinated Plaintiffs) | DATE<br>August 13, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Linda Nussbaum, Esq., Kaplan Fox & Kilsheimer, LLP, 850 Third Avenue, 14th Floor, New York, NY 10022, 212.687.1980

(See Rule 45, Federal Rules of Civil Procedure, Parts C&D on Reverse)
[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE 8/13/07 | PLACE 220 E. 42nd St., N.Y., N.Y. - 10017 |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Carol Di Santo, President | Hand Delivered |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Kenneth A. Adams | Clerk |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on  8/13/07
_____
DATE

_____
SIGNATURE OF SERVER

3224 Grand Concourse, Apt A21
ADDRESS OF SERVER

Bronx, N.Y. 10458

---

Rule 45, Federal Rules of Civil Procedure, Parts C&D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is

employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

### DEFINITIONS

1.     The Definitions contained in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts are incorporated herein by reference. Additionally, the following definitions apply to this schedule:"AED" shall mean anti-epileptic drug or all drugs of the anti-epileptic drug class.

2.     "And" includes the word "or" and vice-versa.

3.     "Any" includes the word "all" and vice versa.

4.     "Cline Davis" or "you" shall mean Cline Davis & Mann, Inc., and includes any predecessor or successor in interest, division, office, subsidiary, and affiliate thereof, or any present or former director, officer, partner, executive, trustee, employee, agent, attorney, representative and any other Person acting or purporting to act on its behalf, and includes any and all divisions including the Proworx division.

5.     "CME" shall mean continuing medical education.

6.     "Communication" shall have the meaning set forth in Local Rule 26.5.

7.     "Concerning" shall have the meaning set forth in Local Rule 26.5.

8.     "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure, and Local Rule 26.5, and includes all forms of writings as defined in Rule 1001(1) of the Federal Rules of Evidence, and includes any reduction to tangible form, whether written, recorded, taped, filmed, videotaped or in computer, digital or magnetic memory or storage, of communication, information, or data, including any graphic matter of any kind or

nature, however produced or reproduced, and also includes originals, drafts, and non-identical copies, wherever located.

9.    "Event" shall mean any conference, symposium, seminar, dinner meeting, dinner, meal, advisory board meeting, consultant meeting, speaker bureau, speaker event, speaker training, CME, conference call, teleconference, trip, or weekend getaway attended by physicians.

10.    "Health Strategies Group" means Health Strategies Group, Inc. and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other person acting or purporting to act on its behalf.

11.    "Including" shall mean including, without limitation, the specific matter or documents described.

12.    "Neurontin" shall mean the drug with the chemical name gabapentin, marketed under the name Neurontin, and includes all uses or indications thereof.

13.    "Neurontin litigation" shall mean any state or federal lawsuit, litigation concerning the marketing of Neurontin, including but not limited to United States of America ex rel. David Franklin v. Parke-Davis, division of Warner-Lambert Company, Civil Action No. 96-11651-PBS (United States District Court for the District of Massachusetts), and In re Neurontin Marketing and Sales Practices Litigation, MDL 1629, and all actions transferred or consolidated thereunder.

14.    "Parke-Davis" shall mean Parke-Davis, a division of Warner-Lambert Company, and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other person acting or purporting to act on its behalf.

2

15.    "Person" shall mean any individual, corporation, organization, association, partnership, limited partnership, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

16.    "Pfizer" shall mean Pfizer, Inc. and any of its predecessors or successors in interest divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, employees, agents, attorneys, representatives and any other person acting or purporting to act on its behalf.

17.    "Relating to" shall mean constituting, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, pertaining to, or having any logical or factual connection with the matter identified, in whole or in part.

18.    "Third-party payor" shall mean the Guardian Life Insurance Company of America; Kaiser Foundation Health Plan, Inc.; Kaiser Foundation Hospitals; Aetna, Inc.; Time Insurance Company; John Alden Life Company; Union Security Insurance Company; American Medical Security Life Insurance Company; American Medical Security Group, Inc.; Blue Cross and Blue Shield of Florida, Inc.; Health Options, Inc.; Blue Cross Blue Shield of Massachusetts, Inc.; Blue Cross Blue Shield of Michigan; Blue Care Network, Inc.; Blue Cross Blue Shield of Minnesota; Comprehensive Care Services, Inc.; First Plan of Minnesota; Atrium Health Plan, Inc.; HMO Minnesota; Carefirst, Inc.; Carefirst of Maryland, Inc.; Carefirst Bluecross Blueshield; Willse & Associates, Inc., CFS Health Group, Inc.; Delmarva Health Plan, Inc.; Free State Health Plan, Inc.; Patuxent Medical Group, Inc.; Group Hospitalization and Medical Services, Inc.; Capital Care, Inc.; Capital Area Services, Inc.; BCBSD, Inc.; Empire Healthchoice Assurance, Inc.; Empire Healthchoice HMO, Inc.; Empire Blue Cross HMO; Wellchoice Insurance of New Jersey, Inc.; Empire Healthchoice Assurance, Inc.; Excellus

3

Health Plan, Inc.; EBS Benefit Solutions, Inc.; Federated Mutual Insurance Company; Health

Care Service Corporation; Mutual of Omaha Insurance Company; United of Omaha Life

Insurance Company; United World Life Insurance Company; Exclusive Healthcare, Inc.;

Trustmark Insurance Company; Wisconsin Education Association Council; and Wisconsin

Education Association Insurance Corporation including their predecessors, successors,

subsidiaries (foreign or domestic), divisions, employees agents (including but not limited to

attorneys accountants, consultants, investment advisors or bankers), or pharmacy benefit

managers, all joint ventures, limited or general partnerships or other entities operated or

controlled directly or indirectly by the third-party payors.

19.    "Warner-Lambert" shall mean Warner-Lambert Company and any of its

predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present

or former directors, officers, executives, trustees, employees, agents, attorneys, representatives

and any other person acting or purporting to act on its behalf.

## TIME PERIOD

Unless otherwise expressly indicated, the time period covered is January 1, 1994 to
present.

## SUBJECT MATTERS OF DEPOSITION

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Cline Davis shall designate one or

more officers, directors, managing agents, or other person(s) to testify concerning the following

subject matters:

1.    Cline Davis's document retention policies, including, but not limited to the

retention and destruction of documents at any division, office or document storage facility.

2.    The search for and collection of documents, including but not limited to electronic

information, responsive to plaintiffs' document requests served upon Cline Davis in the

4

Neurontin litigation, including, but not limited to:

      a.     Identification of the persons who preformed such searches;

      b.     Identification of the facilities that were searched; and

      c.     Identification of the employees whose files were searched.

3.     The policies or procedures followed by Cline Davis in producing documents and electronic data in the Neurontin litigation.

4.     Any contract or agreement between Cline Davis and either Warner-Lambert or Pfizer, concerning the furnishing of goods or services by Cline Davis in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin, including but not limited to the negotiation, execution and performance of any such contract or agreement.

5.     Payments made by Cline Davis on behalf of, at the direction of, for, or for the benefit of Pfizer or Warner-Lambert concerning Cline Davis's furnishing of goods or services, in connection with marketing, advertising, promotion, medical education, employee training, physician communication, direct mail, speakers bureau/speakers training, consulting, advisory boards, dissemination of information, strategic services, or management services relating to Neurontin.

6.     The identification of all Cline Davis account group supervisors, account managers, account executives and other employees who worked on the Neurontin account.

7.     The identification of all individuals at Cline Davis who had contact with either Warner-Lambert or Pfizer regarding Neurontin.

8.     The identification of all individuals at Cline Davis who had contact with any third-party payor regarding Neurontin.

9.     The identification of all individuals at Cline Davis who had contact with any

physician regarding Neurontin.

10.    The identification of all individuals at Cline Davis who had contact with any technical or medical writers regarding Neurontin.

11.    The structure, membership, and responsibilities of the Neurontin Extended Disease Team, Epilepsy Disease Team or Extended Neurontin Disease Team.

12.    Any marketing strategies, marketing plans, or strategic marketing plans prepared by Cline Davis for Warner-Lambert or Pfizer relating to Neurontin.

13.    Any information possessed by Cline Davis concerning the promotion of Neurontin for any off-label uses, including but not limited to pain, diabetic peripheral neuropathy, restless leg syndrome, bipolar disorder, social phobia, panic disorder, migraine, monotherapy for epilepsy, and dosages of Neurontin above the FDA-approved maximum.

14.    Any information concerning any event that was coordinated, prepared, managed, arranged, coordinated, sponsored, or hosted by Cline Davis, where Neurontin or AEDs were discussed, including but not limited to the identification of any speakers, sponsors, or third-party attendees of any such event; the preparation, organization or review of any such event; and the selection and recruitment of speakers for such event.

15.    Any analysis, studies, investigations, retrospective reviews, preceptorships, clinical trials, papers, manuscripts, articles, abstracts or letters-to-the-editor prepared or undertaken by Cline Davis or any technical or medical writers working for or retained by Cline Davis, which discuss whether Neurontin provides any medical benefit to patients who take it for any off-label uses, including but not limited to pain, diabetic peripheral neuropathy, restless leg syndrome, bipolar disorder, social phobia, panic disorder, migraine, monotherapy for epilepsy, and dosages of Neurontin above the FDA-approved maximum.

16.    Any information possessed by Cline Davis concerning whether Neurontin provides any medical benefit to patients who take it for any off-label uses, including but not limited to pain, diabetic peripheral neuropathy, restless leg syndrome, bipolar disorder, social

6

phobia, panic disorder, migraine, monotherapy for epilepsy, and dosages of Neurontin above the FDA-approved maximum.

17.    Any information possessed or analysis prepared by Cline Davis concerning the actual, estimated or predicted amount of Neurontin prescriptions written by physicians.

18.    Any information regarding if and how Cline Davis worked with Health Strategies Group in coordinating, planning or otherwise sponsoring any Advisory Board Meetings or any Continuing Medical Education seminars related to or concerning Neurontin including, but not limited to, the Neuropathic Pain Advisory Board Meeting held in Orlando, Florida on March 3-4, 2002 at the Disney Boardwalk Hotel and Resort.

# EXHIBIT G

DAVIS & GILBERT LLP

1740 BROADWAY

NEW YORK, NEW YORK 10019

(212) 468-4800

DIRECT DIAL NUMBER
(212) 468-4825
EMAIL ADDRESS
pcorcoran@dglaw.com

MAIN FACSIMILE
(212) 468-4888
PERSONAL FACSIMILE
(212) 974-7037

September 14, 2007

**VIA FEDERAL EXPRESS**

Chambers of the Honorable Leo T. Sorokin
District Court Magistrate Judge
United States District Court
For the District of Massachusetts
One Courthouse Way, Suite 2300
Boston, MA 02210

Re:    *In Re: Neurontin Marketing And Sales Practices Litigation*, MDL Docket
No. 1629, Master Docket No. 04-10981 (D. Mass) (PBS) (LTS)

Dear Judge Sorokin:

We represent nonparty Cline, Davis & Mann, Inc. (CDM) with regard to a documents-only subpoena ("Document Subpoena") and a Rule 30(b)(6) deposition subpoena ("Deposition Subpoena) issued by Plaintiffs in the above-referenced matter (the "Subpoenas").

The Subpoenas issued from the United States District Court for the Southern District of New York, where CDM is located. As we believe Your Honor is aware from prior motion practice in this matter, CDM objects to the jurisdiction of this Court to issue orders concerning the Subpoenas.

Nevertheless, apparently due to the impending end of the fact discovery period in this matter, Plaintiffs recently filed in this Court a motion to compel production of a Rule 30(b)(6) witness for deposition and to compel production of unspecified additional electronic documents.

CDM has moved the United States District Court for the Southern District of New York – the issuing district for the Subpoenas – for an Order quashing the Deposition Subpoena and for a protective order concerning the Document Subpoena. A copy of CDM's motion papers is enclosed herewith.

These issues are properly pending before the United States District Court for the Southern District of New York. Therefore, CDM respectfully requests that Your Honor stay determination of the most recent motion by Plaintiffs against CDM.

DAVIS & GILBERT LLP

Hon. Leo T. Sorokin
September 14, 2007
Page 2

Without waiving CDM's jurisdictional objections, in the event that this Court does consider Plaintiffs' motion, we respectfully request that the arguments set forth in CDM's motion papers, submitted in the Southern District of New York, be considered in opposition to same.

Plaintiffs have refused to withdraw or narrow their overbroad Rule 30(b)(6) deposition subpoena. In our "meet and confer" telephone conference, we informed Plaintiffs that Ms. Samuels is the only current CDM employee to have worked on CDM's Neurontin Account Team. In a fruitless attempt to accommodate Plaintiffs' needs without incurring undue burden and expense for nonparty CDM, we advised Plaintiffs that we were prepared to produce Ms. Samuels, the person most knowledgeable about the work CDM had done concerning Neurontin, for a deposition instead of a Rule 30(b)(6) witness, but Plaintiffs refused. After filing their motion with this Court, Plaintiffs then subpoenaed Ms. Samuels for a deposition to take place on October 9. Additionally, CDM has produced responsive documents and despite invitations to do so, Plaintiffs have never made any specific follow up requests, have never asked that CDM restore any backup tapes, and have never agreed to pay any of the costs associated with the restoration, retrieval, review and processing of any such documents for production.

Thank you for your consideration of this matter.

Very truly yours,

Paul F. Corcoran

Enclosures

cc:     Jeff S. Gibson, Esq. (via e-mail)
        Linda Nussbaum, Esq. (via e-mail)
        Matthew Rowland, Esq. (via e-mail)
        Cheryl Plambeck, Esq. (w/out enclosures)