UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------------x
                                                            :   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                                :
        SALES PRACTICES AND                                 :   Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION                       :
                                                            :   Judge Patti B. Saris
------------------------------------------------------------x
                                                            :   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                   :
                                                            :
        PRODUCTS LIABILITY ACTIONS                          :
                                                            :
------------------------------------------------------------x
```

**PRODUCTS LIABILITY PLAINTIFFS' MEMORANDUM IN RESPONSE
TO THE COURT'S INVITATION FOR SUGGESTIONS TO AVOID
FUTURE DISMISSALS OR APPLICATIONS FOR WITHDRAWALS IN THE
TRACK ONE CASES, AND IN OPPOSITION TO DEFENDANTS' REQUEST
FOR ENTRY OF A "*LONE PINE*" CASE MANAGEMENT ORDER**

Products Liability Plaintiffs, by their attorneys, Finkelstein & Partners, LLP, hereby (1) request that the Court order Defendants to proceed with their initial selection of the *Alsberge* case as a Track One case, and to select a second Track One case; (2) respond to the Court's invitation, in Discovery Order No. 14, ECF Doc. # 890, to submit suggestions to avoid future voluntary dismissals or applications for leave to withdraw as counsel in the Track One cases, by proposing that counsel will confer separately with each Plaintiff represented by Finkelstein & Partners, and will advise the Court, within 45 days, of those cases, if any, for which counsel anticipate such dismissals or applications; and (3) strenuously oppose Defendants' request for the entry of a "*Lone Pine*" Case Management Order, on the grounds that *Lone Pine* orders are drastic measures which strip plaintiffs of the protections afforded in a summary judgment proceeding, are unduly burdensome and expensive to plaintiffs, have been employed by a limited

number of courts, and are usually reserved for large environmental toxic tort cases and only under specific circumstances which plainly do not exist in the instant litigation.

## FACTUAL BACKGROUND

Defendants' allegations concerning Plaintiffs' counsel's professional misconduct and supposed "failure" to screen certain claims before commencing actions is an unseemly attempt to sling mud at Plaintiffs' counsel and a smokescreen for Defendants' continuing efforts to delay this litigation. At no time has it ever been Plaintiffs' counsel's intent in any way to disrupt or delay the Track One selection process or schedule. Plaintiffs' counsel have proceeded in accordance with all discovery orders issued by this Court, and counsel have diligently provided all required discovery.

As Plaintiffs have maintained time and again, the fact that a Plaintiff may have had a prior psychiatric history does not preclude a finding of proximate cause. Counsel's duties in zealously and faithfully representing Plaintiffs do not permit counsel to seek dismissal of all cases that have confounding factors of prior depression or suicidality.

There are no exigent circumstances in this litigation calling for drastic measures at this time. Defendants have created the false impression that there is intense pressure or undue time constraints for Defendants to select their two Track One cases. But Defendants will have several months to complete depositions of the Plaintiff, the prescriber, and sales representative, if any, in the two cases that Defendants ultimately select. Thereafter, and only after the Court resolves "general causation" dispositive motions regarding *Daubert* and preemption applicable to all products liability cases, will the parties prepare expert disclosure in one individual trial case designated by Defendants.

Furthermore, defense counsel initially advised Plaintiffs' counsel that Defendants intended to select the *Alsberge* case as one of their Track One cases. Plaintiffs' counsel relied on that informal selection in proceeding with the deposition of the prescriber, and this Court should order Defendants to adhere to that initial selection.

The Court's attention is brought to the recent events surrounding Defendants' designation of two replacement Track One cases. Neither case has been sought to be dismissed or otherwise removed from the Track because of the presence of a prior history of depression or suicidality. The chronology of events leading to Plaintiffs' request for removal of these cases from the Track demonstrates that there has been no pattern of misconduct as defense counsel claims.

As a point of reference, the deadline for Defendants' replacement designation was October 10, 2007. *See* Discovery Order No. 14, ECF Doc. # 890. On Thursday, October 4, Defendants' attorneys specifically advised Plaintiffs' counsel that, "As a courtesy, we are writing to inform you that we intend to designate *Ellis* and *Alsberge* as our two new Track One cases." *See* 10/04/2007 email; relevant email exchanges are annexed hereto as Exhibit A. With respect to *Alsberge*, Defendants unilaterally scheduled the deposition of the prescriber for October 9, and demanded that Plaintiffs agree within less than 24 hours to proceed with the deposition on October 9 or else Defendants would seek judicial intervention. Plaintiffs' counsel agreed to appear at the prescriber's deposition in Seattle, Washington, on October 9. Counsel participated in the deposition of the prescriber in reliance on Defendants' counsel's statement that they intended to designate the *Alsberge* case as a Track One replacement case. Importantly, although the facts of the *Alsberge* case include confounding factors of depression and suicidality, Plaintiffs' counsel did not seek to dismiss or otherwise remove *Alsberge* as Defendants' Track One replacement designation. In fact, despite advising Plaintiffs on October 4 of their intended

3

Track One designation, it was Defendants who chose to withdraw their selection of *Alsberge* after Plaintiffs' counsel had already traveled to Seattle, Washington, and appeared at the deposition of the prescriber.

With respect to Defendants' second replacement designation, the *Ellis* case, Plaintiff's counsel did not seek removal of this case from the Track because of confounding factors of suicidality; rather, counsel sought to be relieved because of the lack of cooperation by Plaintiff as reflected in counsel's pending application to the Court. Indeed, less than 24 hours after being informed by Defendants of their intention to choose *Ellis* as a replacement Track One case, Plaintiff's attorneys communicated to defense counsel their intention to be relieved as counsel for Plaintiff via application to the Court. *See* 10/05/2007 email. Despite this communication, defense counsel chose to keep *Ellis* as a replacement Track One case, and five days later, on October 10, defense counsel filed its formal designation with the Court. *See* ECF Doc. # 900.

Noteworthy, on Friday, October 5, defense counsel communicated to Plaintiffs' counsel that Defendants were seeking authorizations for two other cases, *Veraas* and *Wendorf*. *See* 10/05/2007 email. On the next business day, Monday, October 8, Plaintiffs' counsel informed defense counsel that Mr. Veraas was unreachable in the country of Norway, and that Ms. Wendorf wished to discontinue her case. *See* 10/08/2007 email. These communications were made by Plaintiffs' counsel before Defendants' formal designation of replacement cases on October 10. The problems with these cases had nothing to do with the merits of the cases: *Veraas* was a logistical issue, and *Wendorf* was a situation brought about by Plaintiff's direction to counsel that her case be discontinued.

Incredibly, notwithstanding Plaintiffs' good faith explanations regarding these cases, Defendants chose to formally select the very two cases, *Ellis* and *Wendorf*, that Plaintiffs'

4

counsel had already indicated should be removed from the inventory of cases. Defendants offered no explanation as to why *Alsberge* was not formally selected on October 10, even after they specifically communicated to Plaintiffs their intention to designate *Alsberge* and forced Plaintiffs to incur costs to travel to Seattle, Washington, for the prescriber deposition. Plaintiffs respectfully request that this Court order that Defendants proceed with *Alsberge* as one of Defendants' Track One cases, and that Defendants select their second case before the next conference.

Defendants request that the Court, via a *Lone Pine* Case Management Order, require Plaintiffs to provide Defendants with certain information for each case in the MDL through sworn statements of counsel and expert declarations.. *See* Defs.' Case Management Proposal, p. 14. However, the issue of producing documents and information encompassed by Defendants' proposal has already been litigated by the parties and resolved by this Court by way of template discovery afforded to each party as set forth in Discovery Order No. 2. *See* ECF Doc # 393. Later, in Discovery Order No. 6, the Court imposed a deadline of January 15, 2007, for all matters pending before the Court as of November 30, 2006, and, for other cases, the Court allowed sixty days for the production of template discovery following transfer to the MDL. *See* Doc # 550. Plaintiffs have substantially complied, and the parties have been able to resolve deficiencies as evidenced by the fact that Defendants have not heretofore moved the Court to compel any of this disclosure.

A *Lone Pine* order is an extraordinary measure that is not appropriate under the circumstances. *Lone Pine* orders have only been adopted by a limited number of courts . The 2004 *Federal Manual on Complex Litigation*, Fourth Ed., does not even make reference to the 1986 *Lone Pine* decision. *Lone Pine* orders have been criticized for allowing courts "to ignore

existing procedural rules and safeguards" and for lacking "consistency in their use and application, and thus are not equally applied." *See Lone Pine Orders: A Wolf in Sheep's Clothing for Environmental and Toxic Tort Litigation*, 14 J. Land Use & Envtl. Law 53, at 74-75 (1998). *Lone Pine* orders are typically issued by courts because (1) the litigation is a complex toxic tort; (2) there are a large number of "repeat players"; and (3) "the departure of toxic tort cases from normal civil litigation". *Id.* at 59. *Lone Pine* orders have been characterized as unfair, burdensome, prejudicial and expensive, and have been traditionally utilized in toxic torts early in the discovery phase, where there is a high volume of defendants, or where there are governmental opinions against the nature of the claim. *Id.,* at 58. Moreover, *Lone Pine* orders should only be utilized in extraordinary situations as they violate due process by stripping from the plaintiff the procedural protections of the summary judgment process where the burden of proof is on the moving party. *Id.* at 77. Certain procedural safeguards were enacted by the legislature who evidently deemed such essential to protect the rights of the parties. *Id.* at 78.

  A *Lone Pine* order would be inappropriate to this litigation. First, this is not a toxic tort litigation. Second, there are no negative governmental opinions against Plaintiffs' claims. In fact, there is an ongoing inquiry by the FDA as to whether the ingestion of Neurontin may increase the risk of suicide. This inquiry and evaluation by the FDA was no doubt the reason why Defendants amended the Neurontin labeling to include specific references to suicide and suicide attempt in 2005. Third, Defendants' request for such an order is simply untimely, given that the parties have already substantially completed discovery. Fourth, there are no product identification problems. Furthermore, Defendants could have brought motions to dismiss if the template discovery did not demonstrate merit, but have chosen to sit on their hands instead.

Plaintiffs propose to this Court, in an attempt to avoid future potential voluntary dismissals or motions seeking leave to withdrawal, that Plaintiffs' counsel, within 45 days of this Court's order, confer with each Plaintiff to discuss the status of their case for all of the cases in the Finkelstein & Partners MDL case inventory so as to uncover any potential situations where the clients might decide not to proceed with the litigation. Plaintiffs' counsel already continuously confer with their clients during the entire litigation process. But during the 45 days, counsel will confer with each client specifically to discuss the merits and particular facts and circumstances underlying each of their cases. Plaintiffs' counsel will also advise each client of their potential liability for costs if the case is unsuccessful or if they later decide to voluntarily dismiss the case. Plaintiffs' counsel believe that this procedure will allow Plaintiffs to determine whether they wish to continue with their actions and thereby substantially eliminate the potential for some of the problems encountered previously which necessitated the prior motions. Of course, a situation may arise where a Plaintiff subsequently decides that he or she no longer wishes to continue the case. Moreover, although Plaintiffs' counsel may have a good faith belief from the documents and information provided to them by their clients that there is a valid cause of action, counsel are not in a position to fully access the case until the depositions of Plaintiffs and their treating physicians are completed. For instance, information concerning the samples that may have been provided by physicians to Plaintiffs may not have been noted in the medical records. This discovery may only be obtained from testimony provided by the treating physicians during their depositions, or from sample tracking data provided by Defendants commensurate with their obligations to provide case-specific template discovery to Plaintiffs.

**ARGUMENT**

It is clear from Rule 1 of the Federal Rules of Civil Procedure, that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." A district judge exercises broad discretion when supervising the discovery process. *Arzuaga-Perello v. The Shell Company (Puerto Rico)*, 1999 U.S. App. LEXIS 2162 (1st Cir. 1999); *Cruden v. Bank of New York,* 957 F.2d 961, 972 (2d Cir. 1992). The First Circuit has stated that it will intervene concerning the trial court's discretion "'…only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'" *Id.* at *2 (citing to *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 91 (1st Cir. 1996)).

The decision in *Lore v. Lone Pine Corp.*, 1986 N.J. Super. LEXIS 1626 (N.J. Super. 1986), which involved an environmental toxic tort and alleged contamination of water and devaluation of property arising from a landfill, is clearly distinguishable from the cases at bar. In *Lone Pine*, there were 464 defendants who may have participated in the dumping of chemicals and caused the pollution, and the Environmental Protection Agency had prepared a Record of Decision demonstrating that there was no problem with ground water contamination, which was in direct conflict with the allegations in plaintiffs' complaints. Plaintiffs' expert's report had provided no evidence that any contamination was causally related to the landfill, and plaintiffs did not provide discovery supporting their claims inasmuch as treating physicians were unwilling to commit to a causal connection. *Id.* at *3. The court therefore issued a pre-discovery order requiring plaintiffs to provide documentation supporting plaintiffs' alleged injuries and causation. *Id.*

In the instant litigation, although more than one defendant is named, Defendants are linked through a series of shareholder, subsidiary and successor in interest relationships and are all represented by the same law firms. Unlike the *Lone Pine* case, this litigation is a pharmaceutical mass tort litigation where confirmation of the product ingested by each Plaintiff has already been provided to Defendants in the form of responses to interrogatories. Moreover, quite distinguishable from *Lone Pine,* pursuant to the discovery schedule and orders of this Court, Plaintiffs have served upon Defendants expert disclosure including a report by Michael Trimble, M.D., the preeminent authority on the general causation issues involved in this case. In fact, Plaintiffs also have submitted a specific causation report prepared by Dr. Trimble in regard to the Track One *Smith* case. There is no reason to doubt that Dr. Trimble and his opinions in regard to Neurontin, meet, and/or, exceed the standards for expert witnesses as detailed in *Daubert*. Moreover, there is no evidence in the record before this Court that contradicts the allegations posed in Plaintiffs' complaints.

Even courts in large environmental toxic tort cases have decided to employ the more traditional methods for managing such cases rather than issue a *Lone Pine* order. Most recently in *Morgan v. Ford Motor Co.*, 2007 U.S. Dist. LEXIS 36515 (D.N.J. 2007), another environmental toxic tort involving landfill contamination of water, the court denied defendants' motion for a *Lone Pine* order, finding that such an order was not appropriate and that phased discovery would better serve the litigation. The court stated that requiring affidavits from plaintiffs would be "unnecessarily costly" and that plaintiffs "are not required to prove a prima facie case without the benefit of any discovery from defendants." *Id,* at *41. The court instead required that each plaintiff provide a simple statement identifying the "nature and extent of injuries suffered." *Id.* Here, Plaintiffs do not have the benefit of case-specific discovery from

Defendants (i.e., sample data; sales representative/territory representative depositions and responsive custodial file documents).

Likewise, in *In re 2004 Dupont Litig. & In re 1995 Dupont Litig.*, 2006 U.S. Dist. LEXIS 9631 (E.D. Ky. 2006), the court held that a motion for a *Lone Pine* order was premature where defense counsel acknowledged that identical information could be obtained through written discovery which had already been provided by plaintiffs.

Defendants cite to several environmental toxic tort cases to support their request for a *Lone Pine* order. Each of these cases is clearly distinguishable from the litigation before this Court.

1.  *Baker v. Chevron USA, Inc.*, 2007 LEXIS 6601 (S.D. Ohio 2007), involved personal injury and/or property damage claims as a result of exposure to toxic chemicals from a refinery. The magistrate judge initially issued a *Lone Pine* order which required plaintiffs who alleged a personal injury claim to obtain an affidavit from a qualified expert pertaining to "the specific illness allegedly sustained, the date the illness was diagnosed, the name and address of the medical provider who made the diagnosis, the toxic chemical which allegedly caused the illness, the alleged manner of exposure and the date, duration, and dose of exposure." *Id.* at *3. Defendants fail to mention in their moving papers that the magistrate judge had revised the original *Lone Pine* order to eliminate the expert affidavit requirements. *Baker v. Chevron USA, Inc.,* 2006 U.S. Dist. LEXIS 54545 (S.D. Ohio 2006). Instead, plaintiffs were to submit a brochure of information and just identify the physician who would be expected to testify about proximate cause. *Id.* The district judge affirmed the magistrate judge's revision, finding that the revision complied with the Federal Rules of Civil Procedure and permitted the "[d]efendant to obtain the information it needs to effectively rebut [p]laintiffs' claims without imposing undue

burdens on [p]laintiffs." *Baker v. Chevron USA, Inc.*, 2007 LEXIS 6601, at *9, 10 (S.D. Ohio 2007).

The instant case is easily distinguishable from *Baker* because Defendants have been provided with discovery concerning the dates that Plaintiffs ingested Neurontin, copies of the medical records of the treating physicians, as well as authorizations for same. Moreover, Defendants have been apprised of the identity of Dr. Trimble who will serve as a general and specific causation expert in many of these cases. Contrary to Defendants' assertions, *Baker* stands for the proposition that requiring affidavits from Plaintiffs would be unduly burdensome.

2.  *Burns v. Universal Crop Protection Alliance,* 2007 U.S. Dist. LEXIS 71716 (E.D. Ark. 2007), is distinguishable from this litigation because it concerns an environmental tort which resulted in crop damage, not personal injuries. *Burns* involved multiple manufacturers of a herbicide, and the *Lone Pine* order was issued, in part, to identify which defendant's product caused the damage to each of the plaintiffs' crops. Unlike the plaintiffs in *Burns,* in the instant litigation, Plaintiffs have provided Defendants with product identification information through responses to interrogatories concerning the dates that Neurontin was prescribed and ingested.

3.  *Acuna v. Brown & Root Inc.*, 200 F.3d 335 (5th Cir. 2000), is distinguishable as it is an environmental toxic tort case involving more than 1,600 plaintiffs and over 100 uranium mining and processing defendants. The circumstances of that case, where the plaintiffs had provided no product identification or any information concerning their injuries, is distinguishable from this litigation where Defendants have been provided with full discovery pursuant to the orders of this Court.

4.  *Renaud v. Martin Marietta Corp.*, 749 F. Supp. 1545 (D. Colo. 1990), *aff'd*, 972 F.2d 304 (10th Cir. 1992), concerned an environmental toxic tort and contaminated drinking

11

water. Defendants did not make clear in their moving papers that the court in *Renaud* did not issue a *Lone Pine* order or depart from the existing procedural rules, but instead followed the federal rules and utilized summary judgment standards and hearings regarding proximate cause.

5.      *In re Love Canal Actions*, 145 Misc. 2d 1076 (Sup. Ct. Niagara Co. 1989), once again is distinguishable from the litigation at bar because it concerned an environmental toxic tort which focused upon, in part, product identification issues regarding exposure to chemicals from the old Love Canal landfill. In contrast, here, Defendants have been provided with information concerning Plaintiffs' ingestion of Neurontin through responses to interrogatories and authorizations to obtain the medical records.

The only pharmaceutical case cited by Defendants involving a *Lone Pine* order is *In re Rezulin Prods. Liab. Litig.* (MDL No. 1348), 2005 WL 1105067 (S.D.N.Y. May 9, 2005). The fact that a Lone Pine order requiring plaintiffs to produce case specific expert testimony was issued by the court in the *Rezulin* litigation, after defendants' motion to exclude general causation testimony on "silent" liver injury and several motions for summary judgment, speaks volumes to the difference between these litigations. In the instant case, Plaintiffs have served expert disclosure regarding general causation. Expert disclosure regarding specific causation in several Track One cases is scheduled to be exchanged in the early part of next year. There is absolutely no reason to believe that Plaintiffs' general causation testimony will be excluded. Similarly, there is no reason for this Court to take the drastic step of imposing a *Lone Pine* order when discovery is more or less proceeding on schedule.

As discussed above, while Plaintiffs maintain that a thorough review of each case was done prior to commencing the action and that Plaintiffs' counsel have continuously conferred with their clients, counsel will undertake to confer with each of the clients in the Finkelstein &

Partners cases pending in the MDL. It is anticipated that this additional conference with the clients to discuss the facts, circumstances and merits of each case will allow the client to evaluate and determine whether to continue the litigation and thus avoid future potential voluntary dismissals or motions seeking leave to withdrawal. Plaintiffs' counsel, in good faith, believe that further conferring in depth with each client on a case by case basis may eliminate the potential for some of the problems encountered previously which necessitated the prior motions. There is no need for this Court to issue a *Lone Pine* order and depart from the traditional procedural safeguards, such as summary judgment motions. There is no dire need and no undue time constraints which warrant such a severe burden on Plaintiffs and counsel. Any such order would severely prejudice Plaintiffs who would be denied their procedural rights under the summary judgment standards. Moreover, it would be cost prohibitive and would delay this litigation for an inordinate period of time to obtain the affidavits of experts for all cases pending before the MDL. Furthermore, there is no indication that such a drastic departure from the Federal Rules of Civil Procedure and the Federal Manual on Complex Litigation is required. Plaintiffs have already served upon Defendants expert reports regarding general causation and an expert report on specific causation in the *Smith* case. There is no reason to believe that said reports will not pass *Daubert* muster.

## CONCLUSION

Plaintiffs therefore respectfully request that this Court order Defendants to proceed with their initial selection of the *Alsberge* case and to select a second replacement Track One case; approve Plaintiffs' proposal that counsel confer with each client, and advise the Court, within 45 days, of those cases, if any, for which counsel anticipate such voluntary dismissals or applications to withdraw; and deny Defendants request for a *Lone Pine* order in its entirety.

Dated: October 23, 2007

Respectfully submitted,

*Members of Products Liability Plaintiffs' Steering Committee*

By:  **/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY 12550

By:  **/s/ Jack W. London**
Jack W. London, Esquire
Law Offices of Jack W. London
  & Associates
106 E. 6th Street, Suite 700
Austin, TX 78701

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on October 23, 2007.

**/s/ Kenneth B. Fromson**
Kenneth B. Fromson, Esquire