UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:  NEURONTIN MARKETING,        :
        SALES PRACTICES AND          :
        PRODUCTS LIABILITY LITIGATION :
                                     :   MDL Docket No. 1629
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         Master File No. 04-10981
THIS DOCUMENT RELATES TO:            :
                                     :   Judge Patti B. Saris
                                     :
THE GUARDIAN LIFE INSURANCE COMPANY  :   Magistrate Judge Leo T.
OF AMERICA v. PFIZER, INC., and      :   Sorokin
                                     :
AETNA, INC. v. PFIZER, INC.          :
                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL KAISER TO PRODUCE AN
ADEQUATELY PREPARED RULE 30(B)(6) WITNESS AND
FOR ATTORNEYS' FEES AND COSTS PURSUANT TO RULE 37**


DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

## PRELIMINARY STATEMENT

Defendants Pfizer Inc. and Warner-Lambert Company (collectively, "defendants"), by and through their attorneys, submit this memorandum of law in support of their motion to compel Kaiser Foundation Hospitals Inc. and Kaiser Foundation Health Plan, Inc. (collectively, "Kaiser") to produce a witness adequately prepared to testify to Topic 2 of the Rule 30(b)(6) notice of deposition of Kaiser, dated July 5, 2007, and for the attorneys' fees and costs defendants have incurred as a result of Kaiser's repeated failures to prepare its designated witnesses.

The instant motion represents the latest of defendants' long-running efforts to obtain discovery from coordinated plaintiff Kaiser regarding its policies and practices regarding Neurontin. Kaiser has stymied defendants' past efforts by representing—both to defendants and to this Court—that it had provided defendants with the discovery sought or that it would shortly do so. In each instance, Kaiser has failed to honor these representations, and subsequent disclosures have cast serious doubt on whether Kaiser ever had any intention of doing so.

The discovery that defendants seek is of critical importance because it undermines key premises on which plaintiffs' cases rest, namely (1) the premise that no physician informed of the studies that defendants are alleged to have withheld would have prescribed Neurontin for the off-label uses at issue; and (2) the premise that the uses for which Neurontin was prescribed to Kaiser's insureds can be reliably extrapolated from the industry-wide data on which Kaiser and other plaintiffs propose to rely. Defendants believe that the testimony of an adequately prepared witness will show that highly trained Kaiser physicians and pharmacists, fully informed of the allegedly withheld studies, nonetheless adopted policies confirming that Neurontin can be an effective treatment for the off-label uses at issue. As discussed below, for instance, Kaiser has

produced documents to defendants indicating that, in 2002, it undertook a review of the use of antiepileptic drugs, including Neurontin, for the treatment of bipolar disorder. That review, among other things, detailed the results of the two "negative" bipolar disorder studies referenced in the coordinated plaintiffs' complaint. Following the review, however, Kaiser's Ohio-region drug information service, chiefs of neurology, and chiefs of psychiatry each recommended that Neurontin, which was then restricted to neurology, be made available to psychiatry specialists for the treatment of bipolar affective disorder. Defendants are entitled to testimony confirming the substance of this change and to additional testimony exploring the reasons for this change. To date, however, none of Kaiser's Rule 30(b)(6) witnesses has had any knowledge regarding this critical change.

Defendants also believe that the testimony of an adequately prepared witness will establish that Kaiser's distinctive policies and practices concerning Neurontin have materially affected Kaiser's Neurontin utilization. As such, even assuming for sake of argument that reliable estimates of industry-wide Neurontin utilization exist, those estimates could not serve as a reliable proxy for Kaiser's Neurontin utilization.

Defendants have expended significant resources to prepare for multiple Rule 30(b)(6) depositions that have been rendered nugatory by Kaiser's repeated failures to prepare its designated witnesses. Defendants therefore request that the Court grant their motion to compel Kaiser to produce a witness adequately prepared to testify to Topic 2, and for attorneys' fees and costs pursuant to Rule 37.

## STATEMENT OF FACTS

Kaiser—an integrated healthcare provider that administers a health plan with 8.2 million members in nine states and the District of Columbia—is organized into eight regions. Third

Coor. Am. Compl. (Dkt # 583) ¶ 3.  Each of these regions has its own pharmacy and therapeutics committee ("P&T committee"), which formulates restrictions and clinical practice guidelines with regard to prescription drugs, including Neurontin.  *See* Deposition of Albert Carver, taken July 12 & 13, 2007 ("Carver Dep.") at 25 (attached as Exhibit 1 to the Declaration of Rajesh S. James, dated July 27, 2007 (Dkt # 808)).  Several of these regions have undertaken drug utilization evaluations of and adopted drug utilization review initiatives concerning Neurontin.  Declaration of Rajesh S. James, dated Oct. 24, 2007 ("James Decl.") ¶ 17.

The instant motion represents the culmination of defendants' long-running efforts to compel Kaiser to honor its discovery obligations with regard to its non-California regions and with regard to its drug utilization review relating to Neurontin in both its California and non-California regions.  These efforts commenced well over a year ago, following Kaiser's refusal to conduct a thorough search for documents responsive to defendants' document requests in its non-California regions.  *See* Defs.' Mem. Supp. Mot. Compel Disc. Pls. (Dkt # 403) at 10.  On July 27, 2006, defendants moved to compel Kaiser to produce responsive documents from its non-California regions, explaining that Kaiser's proposal to limit its search for responsive documents outside California to Continuing Medical Education Coordinators was "grossly inadequate because documents about Neurontin from Kaiser's offices outside of California are just as relevant as the documents about Neurontin that Kaiser has produced and will produce from California."  Defs.' Mot. Compel Disc. Pls. (Dkt # 402) at 13.

Responding to defendants' motion, Kaiser countered that it "*ha[d]* searched for documents in regions other than California and ha[d] produced responsive documents to Defendants."  Pls.' Opp'n Defs.' Mot. Compel Disc. (Dkt # 422) at 15 (emphasis in original).  In a supporting declaration, Kaiser's counsel stated that Kaiser's "reasonable, good faith" search for

3

responsive documents in these regions had involved, among other things, contacting and requesting documents from the Continuing Medical Educational Coordinators for each of Kaiser's eight regions, the Directors of Pharmacy for each region, and the chairs of each regional P&T committee.  *Id.* at 15–16; Declaration of Justine J. Kaiser, dated Jan. 20, 2006 (Dkt # 422) ¶¶ 5, 6.

As discussed below, these statements were untrue:  No documents from Kaiser's non-California regional P&T committees were produced, and no reasonable, good-faith search for responsive documents from these regions was undertaken.  James Decl. ¶ 17.

On August 17, 2006, this Court affirmed that "Kaiser's obligation to produce is not limited to documents located in California," but in reliance on Kaiser's representations, denied defendants' motion to compel as moot.  Discovery Order No. 4 (Dkt # 445) at 4 ("Kaiser's opposition indicates that in fact it has sought documents from outside California.").

On May 4, 2007, defendants served a notice of deposition of Kaiser pursuant to Rule 30(b)(6), which was ultimately superseded by defendants' second amended notice of deposition, served July 5, 2007.  James Decl. ¶ 4.  Topic 2 of defendants' Rule 30(b)(6) notice called for Kaiser to designate a witness to testify to its "policies and practices concerning Neurontin," including among other things, its "disease management and drug utilization review relating to Neurontin."  Defs.' Second Am. Notice Dep. Kaiser Found. Health Plan., Inc. & Kaiser Found. Hosps. (James Decl. Ex. A) at 8.

At no time did Kaiser move for a protective order or any other relief with respect to Topic 2 of defendants' Rule 30(b)(6) notice.  Instead, Kaiser, on May 14, 2007, expressly conceded that Topic 2 was a "sufficiently narrow" and "appropriate" topic for deposition.  Letter

from Aviah Cohen Pierson to Matthew B. Rowland, dated May 14, 2007, at 1 (James Decl. Ex.

B).

On July 12, 2007, Kaiser produced Albert Carver for deposition as its designee in

response to defendants' Rule 30(b)(6) notice.  James Decl. ¶ 7.

Mr. Carver, however, was not an adequately prepared witness.  With regard to Topic 2 of

defendants' notice, Mr. Carver testified that he had no knowledge regarding restrictions on or

clinical practice guidelines respecting Neurontin that Kaiser had adopted from 1999 to the

present, and that he had not spoken to others or reviewed documents in order to acquire such

knowledge in preparation for his deposition.  *See, e.g.*, Carver Dep. at 181–82, 184, 189–90, 203,

220 (Dkt # 808 Ex. 1).  Mr. Carver was also inadequately prepared to testify about Kaiser's

"drug utilization review relating to Neurontin."  While Mr. Carver was aware that Kaiser's

northern and southern California regions had implemented drug utilization programs relating to

Neurontin ("DRUG" and "DUAT," respectively), he had no knowledge of these programs'

specific objectives, the reports that they generated, or the techniques that they employed to

influence physician prescribing behavior.  *See id.* at 231, 233, 242, 275–82.  Indeed, although

"drug utilization review relating to Neurontin" was among the topics on which Mr. Carver had

been expressly designated to testify, Kaiser's counsel repeatedly objected to defendants'

questions concerning Kaiser's drug utilization review as beyond the scope of the Rule 30(b)(6)

notice.  *See, e.g.*, *id.* at 276–77 ("This witness cannot state as to what DUAT was or was not, or

DRUG was or was not doing, and has stated that he was not a member of these committees.");

*id.* at 280–82.

Mr. Carver also testified that he had no knowledge concerning policies and practices that

Kaiser's non-California regions had adopted with regard to Neurontin, but acknowledged that he

5

would be surprised to discover that no documents from these regions relating to this topic had been produced.  *Id.* at 429–30.

Following Mr. Carver's deposition, defendants' counsel wrote to counsel for Kaiser, explaining that defendants would require a continued Rule 30(b)(6) deposition to further explore Topic 2 with an adequately prepared witness.  *See* Letter from Rajesh S. James to Linda P. Nussbaum, dated Aug. 13, 2007, at 2 (James Decl. Ex. C).  In the same letter, defendants' counsel requested that Kaiser produce documents concerning the consideration or adoption of guidelines relating to Neurontin from its non-California regions—documents whose absence Mr. Carver had deemed surprising.  *Id.* at 1–2.

In an August 16, 2007 letter, Kaiser's counsel responded that its failure to produce these documents from six of its eight regions was "based on the meet-and-confer discussions we had back in 2005," following which "Kaiser agreed to focus the bulk of its document production on the California regions."  Letter from Aviah Cohen Pierson to Rajesh S. James, dated Aug. 16, 2007, at 1 (James Decl. Ex. D).  Kaiser did not respond to defendants' request for a continued Rule 30(b)(6) deposition, but referred defendants to a document that Kaiser's counsel stated "should provide further information regarding the [drug utilization] initiatives, its objectives, as well as the type of drugs they focus on."  *Id.* at 2.

In a letter dated August 20, 2007, defendants' counsel responded that defendants had never "agreed" to permit Kaiser to limit the scope of documents produced from its non-California regions.  Letter from Rajesh S. James to Aviah Cohen Pierson, dated Aug. 20, 2007, at 2 (James Decl. Ex. E).  Defendants' counsel reminded Kaiser that, following the meet-and-confer discussions to which Kaiser's letter referred, defendants had *moved to compel* Kaiser to produce responsive documents from these regions.  *See id.*  Defendants also requested that

Kaiser clarify whether it intended to produce a witness adequately prepared to testify regarding Kaiser's "policies and practices concerning Neurontin," including its "disease management and drug utilization review relating to Neurontin." *Id.*

On August 27, 2007, Kaiser agreed to produce "documents evidencing the consideration or adoption of guidelines in regions other than California." Letter from Aviah Cohen Pierson to Rajesh S. James, dated Aug. 27, 2007, at 2 (James Decl. Ex. F). Kaiser, however, took the position that Mr. Carver—who had professed that he had no knowledge of Kaiser's policies and practices concerning Neurontin from 1999 forward—"gave adequate testimony regarding Kaiser's policies and practices concerning Neurontin" and "was adequately prepared to testify concerning [Kaiser's drug utilization initiatives concerning Neurontin]." *Id.* at 2.

The parties met and conferred with regard to their dispute concerning the continued Rule 30(b)(6) deposition on September 5, 2007. James Decl. ¶ 12. Following the meet-and-confer session, Kaiser agreed to produce a witness prepared to testify to Topic 2 for the period from September 1999 forward, but asked that defendants provide Kaiser with a letter specifying the matters about which defendants intended to inquire so that Kaiser could better prepare its witness. *Id.*

Defendants sent such a letter on the same day. *See* Letter from Rajesh S. James to Aviah Cohen Pierson, dated Sept. 5, 2007 (James Decl. Ex. G). This letter specified examples of the matters about which defendants intended to inquire, and provided citations to pages of the Carver deposition transcript at which defendants had inquired about these matters. The letter stated that matters about which defendants would likely inquire included "restrictions on or clinical practice guidelines respecting Neurontin and gabapentin that Kaiser had adopted from 1999 to the present"; "the reasons that those restrictions or guidelines were adopted and the information on

7

which those adoptions were based"; and "the persons and entities that participated in the consideration of these restrictions or guidelines." *Id.* at 1. Defendants further specified that they would likely ask "how [Kaiser's drug utilization review] programs decide on drugs and . . . classes of drugs on which to focus," "when these programs first took action with regard to Neurontin," "the objectives of these programs with regard to Neurontin," "how these programs assess drug utilization," and "the techniques that these programs use to influence physician prescribing behavior." *Id.* at 1–2.

Given that the deadline for filing motions for consideration at the Court's September 20 hearing was the following day, defendants asked that Kaiser's counsel "promptly confirm that the statements set forth in this letter are consistent with your understanding of our agreements concerning the matters discussed this morning." *Id.* at 2. Kaiser supplied this assurance. *See* Letter from Aviah Cohen Pierson to Rajesh S. James, dated Sept. 6, 2007 (James Decl. Ex. H). And defendants, relying on this assurance, refrained from filing a motion to compel Kaiser to produce an adequately prepared Rule 30(b)(6) witness. James Decl. ¶ 15.

On September 17, 2007, Kaiser designated Dr. Mirta Millares, whom defendants had previously noticed as a fact witness, to serve as Kaiser's Rule 30(b)(6) witness on Topic 2, limited to the period from September 1999 forward. E-Mail Message from Aviah Cohen Pierson to Rajesh S. James, dated Sept. 17, 2007 (James Decl. Ex. I).

On Tuesday, September 25, 2007, one week before that deposition was scheduled to commence, Kaiser produced to defendants 468 pages of documents concerning policies and practices that its six non-California regions had adopted relating to Neurontin. James Decl. ¶ 17. These documents for the first time disclosed that the P&T committees of Kaiser's non-California regions had in fact adopted a variety of policies and practices relating to Neurontin, and that

8

several regions implemented drug utilization review initiatives related to Neurontin.  *Id.*

Defendants' counsel spent several hours reviewing these documents and preparing questions

regarding Kaiser's non-California regions to pose at the continued Rule 30(b)(6) deposition.  *Id.*

Like Mr. Carver, however, Dr. Millares was unprepared to answer questions regarding

Topic 2 of defendants' Rule 30(b)(6) notice.  When presented with the Rule 30(b)(6) notice and

asked whether she was aware that she had been named to provide answers on behalf of Kaiser

concerning Topic 2 of that notice, Dr. Millares answered that she "ha[d] never seen this

document before."  Deposition of Mirta Millares, taken Oct. 2, 2007, at 65 (James Decl. Ex. J).

Asked again whether she understood that she would be providing answers on behalf of Kaiser

with regard to Topic 2, Dr. Millares hesitated, prompting her counsel to answer on her behalf.

*See id.* at 66 ("By counsel, yes.  By counsel, yes, she is aware.").

Dr. Millares, like Mr. Carver, was unprepared to answer even rudimentary questions

concerning Kaiser's drug utilization review relating to Neurontin in California.  When asked

about the objectives of California-region drug utilization review programs relating to Neurontin,

Dr. Millares answered that she knew that "they have some like written-out objectives," but that

she could not state those objectives.  *Id.* at 61.

Dr. Millares later read the goals and objectives of Kaiser's California-region drug

utilization review programs relating to Neurontin from a document presented to her by

defendants' counsel.  *See id.* at 91–92.  She testified, however, that the goals and objectives that

she had recited might not be representative of the goals and objectives of those programs over

the relevant period:

> Q.     You suggested earlier that the goals and objectives of DUAT or DRUG
>        might have evolved over time.  Is that right?

> A.    Goals and objectives of DRUG and DUAT could evolve over time?  Yes.
>
> Q.    Do you know whether they did with regard to gabapentin?
>
> A.    I don't.

*Id.* at 96.

Dr. Millares further testified that she was unaware of the targets that these programs had set with regard to Neurontin utilization, *id.* at 99–100 ("I mean it could be, you know, total number of Neurontin prescriptions or something else."), and that she did not know how these programs monitored their progress toward these targets, *see id.* at 101, 109 ("I don't—I don't do these kind of reports myself, so I really don't know.").

Indeed, although "drug utilization review relating to Neurontin" was a matter on which Dr. Millares had been designated to testify, Kaiser's counsel repeatedly objected to defendants' questions concerning drug utilization review on the ground that Dr. Millares was not a "regular member" of Kaiser's California-region drug utilization action teams.  *See, e.g.*, *id.* at 89.

During a break, Dr. Millares stated that she was unprepared to testify regarding Kaiser's policies and practices relating to Neurontin in its non-California regions.  James Decl. ¶ 19. Defendants' counsel proposed that, rather than protracting the deposition, he would cut it short on the condition that Kaiser agreed to produce a witness adequately prepared to testify to Topic 2.  James Decl. ¶ 20.  Kaiser's counsel agreed to prepare one of the witnesses that defendants had noticed for the following week to testify to Topic 2, but asked that defendants provide a letter specifying the matters about which they intended to inquire to prevent any future "misunderstanding" regarding the topic's scope.  *Id.*

While defendants had already provided Kaiser with such a letter (on September 5, 2007), defendants' counsel agreed to provide a second letter.  That letter, sent the following day,

10

(1) reiterated the examples provided in defendants' letter of September 5, 2007; (2) offered to limit the scope of the continued Rule 30(b)(6) deposition on Topic 2 to Kaiser's non-California regions, except insofar as that topic pertained to "disease management programs and drug utilization review relating to Neurontin"; and (3) requested that the continued deposition not be temporally limited with respect to Kaiser's non-California regions, given that the documents that Kaiser had first produced to defendants in the prior week indicated that Kaiser's non-California regions may have adopted policies and practices relating to Neurontin prior to 1999.  Letter from Rajesh S. James to Linda P. Nussbaum, dated Oct. 3, 2007, at 1–2 (James Decl. Ex. K).

Kaiser responded on October 4, 2007 that the positions stated in defendants' October 3, 2007 letter "were not consistent with [its] understanding of the agreement . . . reached at Mirta Millares' deposition."  Letter from Linda P. Nussbaum to Rajesh S. James, Oct. 4, 2007, at 1 (James Decl. Ex. L).  Instead, the letter asserted, Kaiser had only agreed to prepare a witness to testify on the narrow topic of "changes to the formularies in Kaiser's regions outside of California."  *Id.*  Kaiser acknowledged that it had agreed in September to produce a witness prepared to testify to Topic 2, but insisted that it "[ha]d not agree[d] that such a witness would testify concerning Kaiser's non-California regions."  *Id.* at 1.  Kaiser further refused to prepare a witness to testify to its drug utilization review relating to Neurontin and stated that, in its view, "Dr. Millares adequately testified as to Topic 2."  *Id.*

Defendants and Kaiser met and conferred on the morning of October 9, 2007, but were unable to resolve their differences.  James Decl. ¶ 23.  Following the meet-and-confer discussion, Kaiser reiterated its view that Dr. Millares had been adequately "prepared to testify concerning [Topic 2] for Kaiser's California regions."  Letter from Aviah Cohen Pierson to Rajesh S. James, dated Oct. 9, 2007, at 1 (James Decl. Ex. M).  While Kaiser offered to prepare a witness to

11

testify concerning Topic 2 for Kaiser's non-California regions, Kaiser stated that, in doing so, it would adhere to its own, unreasonably narrow, definition of that topic—a definition according to which Dr. Millares, who lacked rudimentary knowledge of Kaiser's California-region drug utilization review, would be deemed to have been an adequate witness. *Id.* at 1.

On the following day, Kaiser designated Dr. Deborah Kubota, whom defendants had previously noticed for deposition as a fact witness, as its Rule 30(b)(6) representative with regard to Topic 2 for Kaiser's non-California regions. Deposition of Dale Kramer, taken Oct. 10, 2007, at 73–76 (James Decl. Ex. N). Defendants' counsel expressed reservations about the utility of taking such a deposition in the absence of an agreement as to its scope, *see id.* at 74–75, but in the interests of potentially resolving the parties' dispute without recourse to this Court, agreed to depose Dr. Kubota as a Rule 30(b)(6) witness. James Decl. ¶ 25.

On the day for which the deposition had been noticed, however, Kaiser's counsel advised defendants' counsel that Dr. Kubota had become "nervous" about testifying as a Rule 30(b)(6) witness and could no longer testify in that capacity. James Decl. ¶ 26. Kaiser's counsel proposed to substitute Mitchell Cohen, a senior counsel at Kaiser Foundation Health Plan, in Dr. Kubota's place. *See id.*

Defendants agreed to depose Mr. Cohen as Kaiser's Rule 30(b)(6) witness on Topic 2. James Decl. ¶ 27. Mr. Cohen, however, was no better prepared to testify as to Kaiser's policies and practices relating to Neurontin than Mr. Carver or Dr. Millares had been. Indeed, Mr. Cohen's testimony was often flatly at odds with documents that Kaiser had produced to defendants two weeks earlier. Documents that Kaiser produced to defendants on September 25, 2007, for example, indicate that at least five changes were made to Neurontin's classification on Kaiser's Ohio-region formulary between 1994, when it was first added to the formulary with a

restriction to neurology, and 2004, when it was replaced on that formulary by generic gabapentin tablets.[1]  Mr. Cohen, however, testified that only a single change to Neurontin's Ohio-region formulary classification had been made within that ten-year interval: a "January 1998" expansion of Neurontin's restriction to pain management.  Deposition of Mitchell Cohen, taken Oct. 11, 2007 ("Cohen Dep."), at 22 (James Decl. Ex. O).  When presented with the documents evidencing other changes that had been made (and indicating that the change to which he testified had in fact taken place in May 1999), Mr. Cohen testified that he had not reviewed these documents in preparing for his deposition and that he could offer no explanation for the stark divergence between the documents and his testimony.  *Id.* at 22–38.

During a break in the deposition, Kaiser's counsel advised defendants to forego their insistence on an oral Rule 30(b)(6) deposition and to accede to the submission of written questions to Kaiser instead.  James Decl. ¶ 28.  Kaiser's counsel explained that defendants would only obtain a continued oral Rule 30(b)(6) deposition after filing a motion with the Court, that the Court would hear any such motion only at its November hearing; that it might well take an additional month to issue a ruling; and that, by the time Kaiser complied with the Court's ruling, several months would have elapsed.  *Id.*

Shortly after five p.m., defendants' counsel advised Kaiser that he was concluding the deposition, given Mr. Cohen's lack of preparedness.  *See* James Decl. ¶ 29.

---

[1] *See* KAIS-044086 (James Decl. Ex. Q) (restriction expanded, effective January 1, 1998, to "use by or in consultation with Neurology or Susan Arceneaux, M.D. & Christopher Spevak, M.D."); KAIS-044093 (James Decl. Ex. R) (restriction further expanded, effective May 1, 1999, to "use by or in consult with Neurology or Pain Management specialists"); KAIS-044089 (James Decl. Ex. S) (Neurontin 600 mg and 800 mg capsules added to Ohio-region formulary effective March 1, 2000); KAIS-044094 (James Decl. Ex. T) (neuropathic-pain-treatment guidelines adopted, providing that gabapentin "should be reserved for patients failing or intolerant to nortriptyline or desipramine"); KAIS-044091 (James Decl. Ex. V) (restriction further expanded to "use by or in consultation with Neurology, Psychiatry, Pain Management, Ortho, Rheumatology, or with chief/lead approval").

On October 15, 2007, defendants requested that Kaiser produce a witness adequately prepared to testify to Topic 2 on its behalf. Letter from Rajesh S. James to Aviah Cohen Pierson, dated Oct. 15, 2007, at 1 (James Decl. Ex. P). Defendants also asked that Kaiser reimburse them for the attorneys' fees and expenses incurred in taking the Rule 30(b)(6) depositions of Dr. Millares and Mr. Cohen. *Id.* Defendants and Kaiser met and conferred on Tuesday, October 16, 2007, but were unable to reach an agreement with respect to defendants' requests.

## ARGUMENT

Rule 30(b)(6) requires corporate deponents to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to prepare those persons in order that they can answer fully, competely, unevasively, the questions posed as to the relevant subject matters." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432–33 (5th Cir. 2006); *accord Black Horse Lane Assocs., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 302–03 (3d Cir. 2000). The Rule "implicitly requires persons to review all matters known or reasonably available to [the corporation] in preparation for the 30(b)(6) deposition." *Heron Interact, Inc. v. Guidelines, Inc.*, Civil Action No. 05-30290-KPN, 2007 U.S. Dist. LEXIS 50191, at *3 (D. Mass. July 2, 2007) (internal quotation marks omitted).

It is settled, both in this District and in other federal jurisdictions, that "[p]roducing an unprepared witness is tantamount to a failure to appear at a deposition." *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 39 (D. Mass. 2001) (internal quotation marks omitted); *see, e.g.*, *Black Horse Lane*, 228 F.3d at 304 ("[I]f a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it. . . . [T]he purpose behind Rule 30(b)(6) is undoubtedly frustrated in the situation in which a corporate party

produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf.").

Rule 37 of the Federal Rules of Civil Procedure provides courts a broad range of remedies to address such failures to appear. *See Black Horse Lane Assocs.*, 228 F.3d at 303–04 (collecting cases). These remedies include, but are not limited to, dismissal of a party's claims. *See, e.g.*, *Guex v. Allmerica Fin. Life Ins. & Annuity Co.*, 146 F.3d 40, 43 (1st Cir. 1998) (concluding that dismissal was an appropriate remedy where deponent's failure to appear contributed to a "troubling lack of respect for the judicial process"); *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 196–97 (5th Cir. 1993) (awarding defendants costs and fees that it incurred in deposing plaintiff's two unprepared Rule 30(b)(6) witnesses and in ultimately identifying a proper deponent with knowledge of the relevant facts); *cf. Big Top USA, Inc. v. Wittern Group*, 183 F.R.D. 331 (D. Mass. 1998) (Saris, J.) (approving dismissal of plaintiff's complaint against retailer defendants as a result of plaintiff's "produc[tion of] incomplete documents which opposing counsel did not have an opportunity to review before taking the Fed. R. Civ. P. 30(b)(6) depositions").

I.    **The Justifications that Kaiser Has Advanced for Its Repeated Failures to Prepare Its Rule 30(b)(6) Designees Are Untenable**

Relief under Rule 37 is warranted in this case. Kaiser has, on three separate occasions, failed to prepare witnesses on the topics on which it has designated them to testify. The justifications that Kaiser has proffered for these repeated failures are untenable.

*First*, Kaiser has sought to justify its failure to prepare Mr. Carver, and later Dr. Millares, to testify to policies and practices concerning Neurontin adopted by Kaiser's non-California regions by stating that the policies and practices that Kaiser adopted in these regions are beyond

15

the scope of Topic 2 of the Rule 30(b)(6) notice.  *See* Letter from Linda P. Nussbaum to Rajesh S. James, dated Oct. 4, 2007, at 1 (James Decl. Ex. L).  Topic 2, however, calls for testimony regarding "*Kaiser's* policies and practices concerning Neurontin" (emphasis added).  These policies and practices necessarily encompass those adopted in Kaiser's six regions outside California.  Any argument that Topic 2 implicitly excuses Kaiser from providing testimony with regard to six of its eight regions is untenable given that (1) when Kaiser previously sought to refuse defendants discovery relating to its non-California regions, defendants *moved to compel* Kaiser to provide that discovery, *see supra* p. 3; that (2) the Court, in ruling on defendants' motion, affirmed that Kaiser's discovery obligations extend to its non-California regions, *see supra* pp. 3–4; and that (3) the very same letter in which defendants requested additional testimony on Topic 2 is replete with references to policies and practices relating to Neurontin adopted in Kaiser's non-California regions, *see* Letter from Rajesh S. James to Linda P. Nussbaum, dated Aug. 13, 2007, at 2 (James Decl. Ex. C).

*Second*, Kaiser has asserted, without explanation, that Dr. Millares was in fact adequately prepared to testify to Topic 2 for Kaiser's California regions, including its "drug utilization review relating to Neurontin" in those regions.  *See* Letter from Aviah Cohen Pierson to Rajesh S. James, dated Oct. 9, 2007, at 1 (James Decl. Ex. M).  This assertion is untenable in light of Dr. Millares's admissions that she had no knowledge of the objectives of Kaiser's drug utilization review programs relating to Neurontin, the targets that those programs set with regard to Neurontin's utilization, or the reports that those programs generated with regard to Neurontin's utilization.  *See supra* pp. 9–10.

*Third*, Kaiser has sought to downplay its repeated failures to prepare its designated Rule 30(b)(6) witnesses for oral deposition by noting that it has invited defendants to submit written

16

questions instead. This is, however, neither a fair nor adequate exchange. There are numerous

limitations inherent in posing questions in written form, and defendants should not be compelled

to surrender their right to an in-person Rule 30(b)(6) deposition and to accept a plainly

inadequate substitute. First, questions submitted in written format "do not allow for effective

cross-examination because, unlike oral depositions, they do not provide an opportunity to ask

follow-up questions on the basis of [a] deponent's answers." 7 James Wm. Moore, Moore's

Federal Practice, § 31.02[3], at 31-10 (Daniel R. Coquillette et al. eds. 3d ed. 2007). Second,

because the attorney conducting the examination would not pose these questions in person,

counsel would be denied the opportunity to observe the demeanor of a witness who is being

deposed. *See id.* Third, the submission of written questions would enable opposing counsel to

provide answers so carefully tailored that they are uninformative. *Id.*; *cf. Foster-Miller, Inc. v.*

*Babcock & Wilcox Can.*, 210 F.3d 1, 17 (1st Cir. 2000) (affirming award of costs and fees under

Rule 37 where plaintiff, "by asking [defendant] whom *it* wished to testify on behalf of [plaintiff]

for Rule 30(b)(6) purposes (or what testimony *it* wished [plaintiff] to designate as Rule 30(b)(6)

testimony), effectively attempted to shift to [defendant] the onus of identifying who best spoke

for [plaintiff] on the matters in question").

## II.     The Matters About Which Defendants Seek
##         Testimony Are of Critical Importance to This Case

Finally, the matters about which Kaiser's witnesses have been unprepared to testify are of

critical importance to this case for at least two reasons.

*First*, Kaiser, like the other plaintiffs in this action, has alleged that defendants "hired . . .

doctors to relate their positive anecdotal experiences despite knowing that scientific studies (the

results of some of which Defendants had withheld) significantly contradicted and undermined

the doctors' statements." Report and Recommendation (Dkt # 269), at 49. Like the other

plaintiffs, however, Kaiser has eschewed the possibility of eliciting testimony from individual

physicians to determine whether their decisions to prescribe Neurontin to Kaiser's insureds

would have changed had they known of these allegedly withheld studies. Instead, Kaiser and

other plaintiffs propose to demonstrate—through generalized proof that they have yet to unveil—

that *no physician* informed of the allegedly withheld studies would have prescribed Neurontin

for the off-labels uses at issue.

Defendants believe that the testimony of an adequately prepared Rule 30(b)(6) witness

will undermine this key premise of plaintiffs' case by demonstrating that highly trained

physicians and pharmacists, fully informed of the allegedly withheld studies, have nonetheless

concluded that Neurontin can be effective for the off-label uses here at issue.

In 2002, for example, Kaiser undertook a review of the use of antiepileptic drugs,

including Neurontin, for bipolar disorder. In connection with that review, Kaiser prepared a

comprehensive review of the clinical literature, including the two "negative" bipolar disorder

studies referenced in the coordinated plaintiffs' complaint. KAIS-044043 (James Decl. Ex. U).

Following the review, Kaiser's Ohio-region drug information service, chiefs of neurology, and

chiefs of psychiatry each recommended that Neurontin—whose use had previously been

restricted to neurologists and pain specialists—be made available to psychiatry specialists for the

treatment of bipolar disorder. *See* KAIS-044045, KAIS-044060 (James Decl. Ex. U). Kaiser's

Ohio-region P&T committee accepted these recommendations. *See* KAIS-044091 (James Decl.

Ex. V).

Defendants are entitled to testimony confirming the substance of these changes to

Kaiser's policies and practices relating to Neurontin, and to additional testimony exploring the

18

reasons for these changes.  Neither Mr. Carver nor Dr. Millares, however, had any knowledge of the policies and practices of Kaiser's Ohio region relating to Neurontin.  And Mr. Cohen, in reciting the changes to Neurontin's classification on Kaiser's Ohio-region formulary, failed so much as to mention this critical change.  (Even after he was shown documents evidencing this change, Mr. Cohen professed to be unaware that Kaiser's Ohio region had ever expanded its restriction on Neurontin to psychiatry specialists.  *See* Cohen Dep. at 32–36 (James Decl. Ex. O).)

*Second*, Kaiser, like the other third-party payor plaintiffs, has refused to provide defendants information regarding the uses for which physicians prescribed Neurontin to its insureds.  Kaiser has instead claimed that it can derive reliable estimates of industry-wide Neurontin utilization from data compiled by third-party vendors, and that it can employ these estimates, in turn, to derive information pertinent to its own Neurontin utilization.

Testimony regarding Kaiser's drug utilization review relating to Neurontin, both within its California and non-California regions, is critical to defendants' ability to debunk Kaiser's claims.  Notably, documents that Kaiser has produced indicate that its drug utilization review programs created numerous reports regarding Kaiser's own utilization of Neurontin.  *See, e.g.*, KAIS-000032–000037 (James Decl. Ex. W).  These documents suggest that Kaiser's distinctive policies and practices concerning Neurontin have translated into material differences in Neurontin's utilization both among Kaiser regions and among medical centers within the same Kaiser region.  *See, e.g.*, KAIS-000033–000037 (James Decl. Ex. W).  To date, however, none of Kaiser's Rule 30(b)(6) witnesses has been prepared to testify to these reports generated by Kaiser's drug utilization review.  *See, e.g.*, Carver Dep. at 367–69 (Dkt # 808 Ex. 1); Millares Dep. at 109 (James Decl. Ex. J).  Defendants believe that the testimony of a witness adequately

prepared to testify to Kaiser's drug utilization review relating to Neurontin will demonstrate that no meaningful information regarding Kaiser's utilization can be extrapolated from the purported industry-wide statistics on which Kaiser has elected to rely.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motion to compel Kaiser to produce an adequately prepared Rule 30(b)(6) and for attorneys' fees and costs pursuant to Rule 37.

Dated: October 24, 2007

DAVIS POLK & WARDWELL

By:  /s/ James P. Rouhandeh
        James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:  /s/ David B. Chaffin
        David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on October 24, 2007.

/s/David B. Chaffin