# EXHIBIT A

1

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: NEURONTIN                MDL DOCKET NO. 1629
MARKETING, SALES                MASTER FILE NO. 04-10981
PRACTICES AND PRODUCTS          JUDGE PATTI B. SARIS
LIABILITY LITIGATION            MAGISTRATE JUDGE LEO T.
                                SOROKIN

- - - - - - - - - - - - - - -

DARLENE OWENS,                  C.A. NO. 05-11017

    Plaintiff,

V.

PFIZER, INC., et al,

    Defendants.

- - - - - - - - - - - - - - -

            DATE: October 18, 2007

            TIME: 9:05 a.m.


    Videotaped deposition of MICHAEL R. TRIMBLE, M.D., taken by and before JOYCE SILVER, a Certified Shorthand Reporter and Notary Public of the State of New York, held at the office of LANIER LAW FIRM, 126 East 56th Street, New York, New York.

Condensed Copy

**Page 2**

```
 1
 2 APPEARANCES:
 3 Attorneys for Products Liability Plaintiff
 4 FINKELSTEIN & PARTNERS, LLP
     436 Robinson Avenue
 5 Newburgh, New York 12550
     BY: ANDREW G. FINKELSTEIN, ESQ.
 6
     JACK LONDON, ESQ.
 7   3701 Bee Cave
     Suite 200
 8   Austin, Texas 78746
 9
10 Attorneys for Plaintiffs Class
11 THE LANIER LAW FIRM
     6810 FM 1960 West
12 Houston, Texas 77069
     BY: KENNETH S. SOH, ESQ.
13   And
     ROBERT LOONE, ESQ.
14
   Attorneys for Pfizer
15
   SHOOK, HARDY & BACON LLP
16 2555 Grand Boulevard
   Kansas City, Missouri 64108
17 BY: SCOTT W. SAYLER, ESQ.
     And
18   LEIGH RAYMOND, ESQ.
19 WHEELER TRIGG KENNEDY LLP
     1801 California Street
20 Denver, Colorado 80202
     BY: JAMES E. HOOPER, JR., ESQ.
21
   PFIZER INC
22 LEGAL DIVISION
     235 East 42nd Street
23 New York, New York 10017
     BY: VIJAY V. BONDADA, ESQ.
24
25
```

**Page 3**

```
 1
   LAW OFFICES OF STEVEN HILLYARD
 2 345 California Street
   Suite 770
 3 San Francisco, California 94194
   BY: ELANA GOLD - via telephone
 4
   ALSO PRESENT:
 5   LEE BOWRY, Videographer
 6   KEITH ALTMAN, Managing Director Complex
     Litigation, Finkelstein & Partners
 7
     CHARLIE TAYLOR, Ph.D.
 8   CPTaylor Consulting
 9
10
...
25
```

**Page 4**

```
 1
 2              INDEX
 3 WITNESS     DIRECT CROSS REDIRECT RECROSS
 4 MICHAEL R. TRIMBLE, M.D.
 5   BY MR. HOOPER   6
 6
 7          EXHIBITS
 8 NUMBER       DESCRIPTION           PAGE
 9 Trimble-1  Research Report Divalproex,
              Lithium and Suicide Among Medicaid
10            Patients With Bipolar Disorder    7
11 Trimble-2  American Psychiatric Association
              Practice Guidelines for the
12            Treatment of Psychiatric Disorders
              Compendium 2006                  65
13
   Trimble-3  Declaration of Professor Michael
14            Trimble, M.D.                    73
15 Trimble-4  Epilepsy Research entitled, "Seizure
              Frequency and CSF Parameters in
16            Double-blind Placebo Controlled
              Trial of Gabapentin in Patients With
17            Intractable Complex Partial Seizures" 78
18 Trimble-5  Journal of Alternative Complementary
              Medicine, Yoga Asana Sessions Increase
19            Brain Gaba Levels: A Pilot Study  98
20 Trimble-6  Document entitled, "Biological
              Psychiatry Second Edition"      145
21
   Trimble-7  Curriculum Vitae                183
22
   Trimble-8  Document entitled "Professor Michael
23            R. Trimble, M. D. Case list"    204
24
25
```

**Page 5**

 1
 2        THE VIDEOGRAPHER: My name is Lee Bowry
 3 of Veritex Corporate Services. The date today is
 4 October 18, 2007, and the time is approximately
 5 9:05 a.m.
 6        This deposition is being held in the
 7 Lanier law firm located at 126 East 56th Street, New
 8 York, New York. The caption of this case is in re
 9 Neurontin Marketing Sales Practices and Products
10 Liability Litigation in the United States District
11 Court for the District of Massachusetts, MDL Docket
12 No. 1629, Master File No. 04-10981, CA No. 05-11017.
13        The name of the witness is Dr. Michael
14 Robert Trimble. At this time I would like all of the
15 attorneys to identify themselves and the parties they
16 represent, after which our court reporter, Joyce
17 Silver, will swear in Dr. Trimble and we can proceed.
18        MR. FINKELSTEIN: Andrew Finkelstein,
19 Finkelstein and Partners on behalf of the MDL product
20 liability plaintiffs and the Smith family in the
21 Smith versus Pfizer litigation.
22        MR. LONDON: Jack London on behalf of MDL
23 products liability.
24        MR. LOONE: Bob Loone, Lanier Law Firm,
25 plaintiffs.

## Page 202

MICHAEL R. TRIMBLE, M.D.

Q. Did you serve as a clinical investigator in the development of vigabatrin?
A. No.
Q. So when you say the trials that we had, could you explain who "we" is, what you mean by that?
A. The group that I work with at the National Hospital for Neurology have an epilepsy team and the epilepsy team has a number of research interests, one of which is doing drug trials and we did some of the very first clinical drug trials of vigabatrin.
Q. I take it that other colleagues of yours at the Institute or at the National Hospital served as clinical investigators in those vigabatrin clinical trials?
A. That is the case.
Q. And you are aware of a patient who committed suicide while taking vigabatrin in those trials conducted by your colleagues?
A. In those trials.
Q. Are there any other specific instances that you can recall of patients that you're aware of, and I mean in particular patients that were under your care as a physician, who committed suicide while

## Page 203

MICHAEL R. TRIMBLE, M.D.

taking an anti-epileptic drug?
A. Many patients took serious overdoses, but, under my personal supervision, no completed suicides but many people with serious suicide attempts.
Q. I believe you told us earlier you had prescribed gabapentin, I thought, for about 10 patients?
A. Correct.
Q. Have any of your gabapentin patients committed suicide?
A. No.
Q. Have any attempted suicide?
A. No.
Q. The last thing, almost done. We will be done.
MR. FINKELSTEIN: Let me just state. If you don't have that much more to do, we will stay the extra hour and not come back tomorrow.
MR. HOOPER: No, it will be more than that. A few tomorrow.
MR. FINKELSTEIN: I am just saying if you're like winding up --
MR. HOOPER: We will have a little bit

## Page 204

MICHAEL R. TRIMBLE, M.D.

more tomorrow.
MR. SOH: Just to interrupt, though, for flight plans, done by lunch? Late lunch? I am not holding you to anything.
MR. HOOPER: I hope so.
(Trimble-8, Document entitled "Professor Michael R. Trimble, M. D. Case list" is received and marked for identification.)
Q. Professor Trimble, what we have marked as Exhibit 8, I believe, is a list that we were provided entitled, "Professor Michael R. Trimble M.D., Case List." Have you seen this before?
A. No.
Q. Did you provide a list like this perhaps to counsel who may have put it in this form?
A. No.
Q. Any idea where this came from?
A. No.
Q. Would you take a moment to read through the cases listed there and tell me whether you recognize these as legal matters in which you've testified.
A. Thank you.
Q. Do you recognize these as cases that you

## Page 205

MICHAEL R. TRIMBLE, M.D.

testified by trial or deposition?
A. I recognize the names of perhaps four, but I really don't recognize the rest.
Q. Never heard of them?
A. Well, put down like this, no, I can't bring up either a recollection of the name or what the case might have been about.
Q. I believe there are 26 cases listed here. Can you tell me which four you believe you actually recalled testifying in.
A. Well, if I may give you the names of the cases I recall as opposed to whether I recall testifying in them, I accept that I did but, you know, I recall standing up in the courtroom.
    So Garrod, North Devon NHS Primary Care Trust, Queens Bench Division (2006) EWHC 850 (QB) which is Queens Bench. HQ04X03774 (Transcript) 28 April 2006.
Q. All right. What was the Garrod versus North Devon case about?
A. This was about a nurse who because of a depressive disorder recurrent, we would probably call this bipolar disorder, was effectively dismissed from her position on account of her depression.

52 (Pages 202 to 205)

206

MICHAEL R. TRIMBLE, M.D.

Q. Was this a civil case?
A. I believe most of these are civil cases. I saw one which suggested it wasn't, but I may come to that. I don't remember.
   Whitham, this is one, two, three, four, five, six -- eight down.
Q. That's fine. Just identify it by the first word.
A. Whitham.
Q. Did you testify in this case?
A. Yes, this was another nurse.
Q. Discharged nurse or --
A. With an effective or depressive disorder who was sacked or lost her job on account of that.
Q. Okay. Tell me the next case that you recall testifying in.
A. Cullen versus the General Medical Council.
Q. What was that case about?
A. A doctor who had received a diagnosis of dementia and who disputed the diagnosis of dementia, and of course with dementia he would not have been allowed to continue medical practice.
Q. I will come back in a little bit in a

207

MICHAEL R. TRIMBLE, M.D.

moment about your role in these cases. But I would just like get to the other cases that you actually recall testifying in. What is the next one on the list?
A. Phillips and Ors versus Symes and Ors was the next one I remember. You briefly want what that was about?
Q. Yes, what was that case about?
A. This was a case of fraud where a -- let's just say a business man was fraudulently taking money, it was alleged, from his partner who was claiming neurological disability for not being able to remember his business deals.
   MR. HOOPER: Time out. He needs to the tape real quick. We're just a couple of minutes, so go ahead and do this. We need to finish this and be done with this topic.
   THE VIDEOGRAPHER: Going off the record. The time is 5:17 p.m. This is the end of tape seven.
   (A discussion is held off the record.)
   THE VIDEOGRAPHER: We are back on the record. The time is 15:18 p.m. This is the beginning of tape eight.
Q. Professor Trimble, after the Phillips

208

MICHAEL R. TRIMBLE, M.D.

case, what is the next case on this list that you recall testifying in?
A. Yanah versus the General Medical Council.
Q. What was that case about?
A. This, if I recall, was a doctor with neurological disability who, again, was due to loss his medical license.
Q. And the next case you recall testifying in?
A. Multiple Claimants versus the Ministry of Defense.
   MR. FINKELSTEIN: Was that on behalf of multiple or claimants?
Q. What was that case about?
A. I believe -- no, actually that can't be right. I actually cannot recall this case. I'm sorry, I thought it was something else, but the one I was involved with Ministry of Defense never went to court so this cannot be right -- what I was going to say cannot be correct, so I did not remember that.
Q. The ones I have noted here as cases in which you do recall testifying are Garrod?
A. Yes.
Q. Whitham?

209

MICHAEL R. TRIMBLE, M.D.

A. Yes.
Q. Cullen?
A. Yes.
Q. Phillips and Yanah.
A. Yes.
Q. And the rest you do not recall testifying in; is that right?
A. I'm sorry, I don't. No.
Q. Do you know who prepared this list?
A. No.
Q. As you look at the top of it, is professor spelled correctly?
A. Professor, p-r-o-f-e-s-s-o-r.
Q. It is correct?
A. Yeah.
Q. But then there is an M.D. after your name?
A. Yes.
Q. Would you describe yourself --
A. No, I wouldn't.
Q. -- Professor M.D.?
A. No.
Q. In the Garrod case, what was your role in that case?

53 (Pages 206 to 209)

## Page 210

MICHAEL R. TRIMBLE, M.D.

A. Discussing the causality of depression in a plaintiff who lost her job because of depression.
Q. Was she the plaintiff in the lawsuit?
A. Yes.
Q. Was she suing the employing hospital who had discharged her?
A. Correct.
Q. Were you testifying on her behalf or on the hospital's behalf?
A. On her behalf.
Q. What was the general thrust of your opinion in the case?
A. To the best of my recall, she had a depressive illness and was treated and got better, returned to work and was put under a new regime with less staff, hospitals amalgamating and this kind of thing, and under the stress of return to work her depression returned. So it was stress at work causing depression case.
Q. What is it your opinion that she should not have been discharged because of her depression or what was it exactly?
A. Exactly, I can't tell you because this is some time ago, you know. But it was to do with after

## Page 211

MICHAEL R. TRIMBLE, M.D.

she had a depressive illness, she should have and should have been offered a gradual return to work; but the situation was that that paced return to work never occurred, and she was thrown in at the deep end. That was the underlying nature of that particular case.
Q. Were you deposed or did you testify in a trial in that case?
A. There are no mechanisms of deposition in the United Kingdom.
Q. Did you testify at a trial in court?
A. Yes, yes.
Q. Do you recall the name of the counselor or barrister --
A. Oh, the barrister.
Q. -- who produced you as witness in that case?
A. I happened to remember the name of the barrister in that case, Mr. Pugh, P-u-g-h.
Q. Do you remember his first name?
A. Charles.
Q. Is he based at the Inns of Court in London?
A. Yes.

## Page 212

MICHAEL R. TRIMBLE, M.D.

Q. When you testified in that trial was there a court reporter there, similar to Joyce today, transcribing the words of the testimony?
A. Correct, correct.
Q. In the Whitham case, Professor Trimble, what was your role in that case?
A. It was actually very similar because -- I don't quite remember the details, but I think this was the person who had a post-natal depression. So she developed a depression after having babies -- or a baby and it was not a dissimilar story of being treated, getting better, being offered a graded return-to-work program and finding that she was in the deep end and the depression recurring.
Q. You testified at trial in that case?
A. Yes.
Q. Do you recall the name of the barrister who put on you?
A. Mr. Pugh.
Q. Again, the same Charles --
A. Mr. Charles Pugh.
Q. The next case I believe that you testified in is the Cullen case?
A. That's correct.

## Page 213

MICHAEL R. TRIMBLE, M.D.

Q. And what was your role in that case?
A. This is for the General Medical Council.
Q. What is the General Medical Council?
A. There must be an equivalent in this country where the regulatory body that gives doctors licenses to practice gets a warning signal that somebody is not well -- and/or somebody has reported to that body and they are, therefore, obliged to investigate that complaint for the public safety. There must be an equivalent body here.
Q. I'm sure. They are probably state medical agencies. It's the licensing agency for physicians.
A. And so they approached me -- I am one of their official assessors, and they approached me to examine this particular doctor who was an elderly gentleman in his mid-'70s who was said to have dementia and the General Medical Council wanted to know if his mental state was impaired.
Q. Did you testify as an expert witness on behalf of the General Medical Council in that case?
A. Actually, no, because I did not find him to be impaired and so he retained me, if I could put it like that.

```
                                                    214
 1              MICHAEL R. TRIMBLE, M.D.
 2    Q.   So you ended up testifying for him?
 3    A.   So I ended up testifying for him.
 4    Q.   And was he suing to have his license
 5 restored?
 6    A.   Yes, it was a matter of pride, actually,
 7 I think, yes.
 8    Q.   The next case that you recall testifying
 9 in the Phillips case, three down?
10    A.   Oh, yes, yes.
11    Q.   What was your role in the Phillips case?
12         MR. FINKELSTEIN: Just we been going
13 almost an hour and a half and a half. I get that
14 you're going to finish up here? I just hope you're
15 going to finish up with this. I am not saying to
16 stop.
17         MR. HOOPER: For four or five minutes.
18    A.   Mr. Symes was an antique dealer at the
19 high end of the market who was in partnership with
20 somebody else. And over 20 years they built up a
21 very successful business dealing in Greek and
22 Egyptian and other antiques. And his partner died
23 and the family wanted their share of the inheritance.
24 And Mr. Symes claimed that there was no inheritance
25 because there were no antiques.
```

```
                                                    215
 1              MICHAEL R. TRIMBLE, M.D.
 2         The reason I was called in was because
 3 Mr. Enzymes 20 years previously had had a major
 4 cerebral hemorrhage, and when in court it was found
 5 out that Mr. Symes was perjuring himself in the sense
 6 that he not only knew where the antiques literally
 7 were buried, but, also, when he said he had no
 8 knowledge of a lot of dealings, when he was seen to
 9 have perjured himself because evidence was that he
10 and his partner had run the business for 20 years but
11 he was the main business man behind it all. His
12 defense was that he had this stroke which had wiped
13 out his memory and, therefore, he had no memory of
14 these deals. And I was called in as an expert on
15 links between brain injury and memory.
16    Q.   Were you, with the Phillips, I take it,
17 were the plaintiffs suing him?
18    A.   Well, it was --
19    Q.   Phillips and Ors?
20    A.   Yes, I think that's correct. Legally I
21 think it was more muddled than that because the
22 courts -- it was a case of perjury, so.
23    Q.   I see. And the last case that you recall
24 testifying in was the Yanah, Y-a-n-a-h, versus
25 General Medical Council?
```

```
                                                    216
 1              MICHAEL R. TRIMBLE, M.D.
 2    A.   That was another General Medical Council
 3 request to see a doctor who had neurological
 4 handicaps. I don't remember exactly what it was now,
 5 but that was the same kind of thing, whether he
 6 should have a license to practice on the ground of
 7 his neurological disorder, whether that would impair
 8 him.
 9    Q.   Do you have copies of the transcripts of
10 your testimony in these cases, by chance?
11    A.   No, you surprised me -- well, I'm
12 surprised to see this list.
13    Q.   Are there other cases that you have
14 recalled that you testified in, whether in deposition
15 or trial anywhere in the world, within the past four
16 years that are not listed on this list?
17    A.   Yes.
18    Q.   There are. How many?
19    A.   I suppose I go to court about three or
20 four times a year. So, you know, there must be -- I
21 mean I don't know where this list came from or how it
22 was generated and what kind of database is available,
23 but I suppose I go to court three or four times a
24 year.
25    Q.   How long has that been -- for how many
```

```
                                                    217
 1              MICHAEL R. TRIMBLE, M.D.
 2 years have you been going to court three or four
 3 times per year?
 4    A.   Oh, I don't know.
 5    Q.   For the past four years?
 6    A.   Yes, yes.
 7    Q.   Were you asked to provide a list of cases
 8 in which you testified by trial or deposition in the
 9 past four years in connection with your work in this
10 case?
11    A.   No.
12    Q.   All right. We will move on from there
13 for now. Why don't we break.
14         THE VIDEOGRAPHER: Going off the record.
15 The time is 5:32 p.m. This is the end of tape eight
16 and concludes today's portion of this deposition.
17         (Adjourned.)
18
19
20
21
22              J U R A T
23
24         I, MICHAEL R. TRIMBLE, M.D., the witness
25 herein, having read the foregoing testimony of the
```

55 (Pages 214 to 217)

VERITEXT CORPORATE SERVICES (800) 567-8658