UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
                                                            :   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                                :
        SALES PRACTICES AND                                 :   Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION                       :
                                                            :   Judge Patti B. Saris
------------------------------------------------------------x
                                                            :   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                   :
                                                            :
PRODUCTS LIABILITY ACTIONS                                  :
                                                            :
------------------------------------------------------------x

**PRODUCTS LIABILITY PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
<u>DR. BENTSON MCFARLAND'S EXPERT REPORT</u>**

Products Liability Plaintiffs timely served Defendants Pfizer Inc. and Warner-Lambert Company with Plaintiffs' Expert Disclosure concerning Dr. Bentson McFarland.  *See* Expert Disclosure, annexed hereto as Exhibit A.  Attached was the expert's report, annexing a journal article co-authored by Dr. McFarland, together with the expert's Curriculum Vitae.  The expert report states in relevant part:  "The attached article contains all opinions to be expressed and the basis and reasons therefor, as well as the data or other information considered in forming the opinions."  Dr. McFarland's deposition is currently scheduled to be held on Monday and Tuesday, November 5-6.  Defendants have moved to strike Dr. McFarland's expert report pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure and to preclude his expert testimony on the grounds that the expert report fails to comply with the disclosure requirements of Rule 26(a)(2).  Defendants' counsel have advised that they are available for an immediate telephone conference on this motion.  Plaintiffs' counsel are likewise available for an immediate telephone conference with the Court today, Friday, November 2.

A.  **The Journal Article, Incorporated by Reference in the Expert Report, Contains All Opinions to Be Expressed by Dr. McFarland, the Basis and Reasons Therefor, and Identifies the Data or Other Information Considered in Forming His Opinions.**

Dr. McFarland's signed expert report, states in full:

My name is Bentson H. McFarland M.D., PhD. I have been requested by the law firm of Finkelstein & Partners to provide opinions expressed in the attached article entitled "Divalproex, lithium and suicide among Medicaid patients with bipolar disorder" which was published in the Journal of Affective Disorders earlier this year. The attached article contains all opinions to be expressed and the basis and reasons therefor, as well as the data or other information considered in forming the opinions. My qualifications are included in the attached curriculum vitae and the compensation to be paid for my participation in this litigation is at the rate of $300 per hour. I have not testified as an expert at trial or by deposition with the preceding four years.

Rule 26(a)(2)(B) states in relevant part that an expert's report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions." Dr. McFarland's report explicitly states: "The article contains all opinions to be expressed and the basis and reasons therefor." Defendants have cited no authority precluding an expert from incorporating by reference in his signed report, a published, peer reviewed journal article that complies with these requirements.

The substance of the expert's testimony is set forth in the published peer reviewed journal article incorporated by the expert report, which includes the sections: Abstract, Introduction, Methods, Results, Discussion, Role of Funding Source, Conflict of Interest, References, as well as tables (exhibits) used to illustrate the results. The article also includes specific references to the data and information that was considered and relied upon to formulate the bases of the expert's opinions. Defendants should not be heard to object that the expert report incorporating the journal article, which itself sets forth the information required under Rule 26(a)(2)(B), fails to provide adequate expert disclosure.

The expert's opinions relevant to this litigation are clearly set forth in the published, peer reviewed journal article incorporated by reference in the expert's signed report. In the study that was performed and detailed in Dr. McFarland's published journal article, where Medicaid patients with bipolar disorder were treated with mood stabilizers, the expert opined that "risk of suicide completion was significantly (2.6. times) greater among gabapentin users versus lithium users ($p$ less than 0.001)" (p. 4); and that "[t]he present project found that gabapentin use was associated with a greater risk of suicide compared to lithium" (p. 5).

Furthermore, Defendants' position is also unpersuasive in that they have readily acknowledged the substance and opinions set forth in Dr. McFarland's article in a previous expert deposition. Specifically, defense counsel questioned Plaintiffs' expert, Dr. Michael Trimble, on October 18, 2007, regarding the very published article that is the subject of Defendants' present motion:

>  MR. HOOPER:  Can we mark -- this is Exhibit 1, please.
>  (Trimble-1, Research Report Divalproex, Lithium and Suicide Among Medicaid Patients With Bipolar Disorder is received and marked for identification.)
>
>  Q.    Professor Trimble, do you recognize this publication?
>
>  A.    I do.
>
>  Q.    This is sited in your report from in case; is that correct?
>
>  A.    That is correct.
>
>  Q.    This is study by two persons named John  Collins and Benson McFarland?
>
>  A.    That's correct.
>
>  Q.    Entitled, "Research Report Divalproex, Lithium and Suicide Among Medicaid Patients With Bipolar Disorder." Is that correct?
>
>  A.    That is correct.

>    Q.    Published in 2007; is that right?
>
>    A.    That is correct.

[Trimble Dep., 10/18/07., pp. 7-8; excerpts from Dr. Trimble's October 18, 2007 deposition are annexed hereto as Exhibit B.]

* * *

>    Q.    Professor Trimble, would you also mind reading, please, the results section which appears two sections down?
>
>    A.    "Divalproex was the most common moodstabilizer (used by 33 percent of subjects) followed by gabapentin, (32 percent), lithium, (25 percent) and carbamazepine, (3 percent). There were 11 suicide deaths and 79 attempts. Adjusted hazard ratios versus lithium users for suicide attempts were 2.7 for divalproex users statistical value is given a (P less than 0.001), 1.6 for gabapentin users (not significant) and 2.8 for carbamazepine users (not significant). For suicide deaths the adjusted hazard ratios are 1.5 for divalproex users, (not significant), <u>2.6 for gabapentin users (P less than 0.001)</u>, and not available for carbamazepine users." [Emphasis added.]

[Tr., p. 9.)

Indeed, Dr. Trimble's expert disclosure had included the following reference to Dr. McFarland's journal article:

> Of considerable importance is the article by Collins and McFarland (2007). They studied suicide related events in patients taking various medications, including gabapentin, for bipolar disorder. They showed a significant over-representation of patients on gabapentin for suicide deaths. Risk of "suicide completion was significantly (2.6 times) greater among gabapentin users versus lithium users ($p$ less than 0.001)" (Collins, et. al., 2007).

[Trimble Report, p. 19; excerpts from Dr. Trimble's Report are annexed hereto as Exhibit C.]

Not surprisingly, defense counsel questioned Dr. Trimble on various aspects of the subject published journal article by Dr. McFarland and the epidemiological issues surrounding Dr. McFarland's opinions. Clearly, Defendants cannot now reasonably claim that the above referenced opinion regarding gabapentin's link with completed suicide is not relevant to this

litigation or that such an opinion by Dr. McFarland was not readily discernable from his expert disclosure.

The journal article includes specific reference to the data and information that was considered and relied upon to formulate the bases of the experts' opinions. There are obvious, clearly stated references to other published resources in the *References* section. The *Methods* section specifically details the scientific method involved in evaluating 12,662 subjects within the Oregon Medicaid population: "Cox proportional hazard models were used to adjust for demographics, co-morbidity, and concurrent psychotropic medication use" (p. 3).

Further, Defendants' contention that the fact that Dr. McFarland's report "fails to even mention Neurontin" indicates that Dr. McFarland has no opinions to offer in litigation is preposterous inasmuch as it is undeniable that gabapentin is the generic compound for Neurontin, or at the very least, is the bioequivalent of Neurontin.

**B.     Plaintiffs and Dr. McFarland Cannot Produce the Raw Data Used in the Study.**

With respect to defense counsel's October 29, 2007, letter requesting that Plaintiffs provide the raw data and research material from the study set forth in Dr. McFarland's journal article, Plaintiffs' counsel have contacted Dr. McFarland, who has advised that he does not have possession or control of the raw data used in the study; that he never had the raw data in his possession but was simply granted access for the limited purpose of preparing his study; and that the raw data is confidential and in the possession and control of the State of Oregon. Thus, Defendants' request to Plaintiffs and Dr. McFarland to produce the data is futile. Even if Dr. McFarland had possession and control of the data, he would be bound to keep the data confidential and to refuse to produce the data. If Defendants seek access to the data, they must subpoena or request the data from the State of Oregon.

5

## CONCLUSION

In view of the above, it is respectfully submitted that Defendants' Motion for an Order striking the report of Dr. McFarland and precluding his expert testimony should be denied in its entirety. Moreover, given the current schedule ordered by the Court, Defendant should, at the very least, be directed to go forward with Dr. McFarland's deposition on November 5-6.

Dated: November 2, 2007                     Respectfully submitted,

*Members of Products Liability*
*Plaintiffs' Steering Committee*


By:   **/s/ Andrew G. Finkelstein**
         Andrew G. Finkelstein, Esquire
         Finkelstein & Partners, LLP
         436 Robinson Avenue
         Newburgh, NY  12550


By:   **/s/ Jack W. London**
         Jack W. London, Esquire
         Law Offices of Jack W. London
            & Associates
         106 E. 6th Street, Suite 700
         Austin, TX  78701

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on November 2, 2007.

Dated:  November 2, 2007

   **/s/ Andrew G. Finkelstein**
   Andrew G. Finkelstein