UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------------x
                                          :   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,              :
        SALES PRACTICES AND               :   Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION     :
                                          :   Judge Patti B. Saris
-------------------------------------------------------x
                                          :   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                 :
                                          :
        PRODUCTS LIABILITY ACTIONS        :
                                          :
-------------------------------------------------------x
```

**PRODUCTS LIABILITY PLAINTIFFS' MEMORANDUM
IN OPPOSITION TO DEFENDANTS' MOTION FOR AN
ENLARGEMENT OF TIME ALLOTTED FOR THE DEPOSITION OF
PLAINTIFFS' DESIGNATED EXPERT CHERYL D. BLUME, Ph.D.**

Products Liability Plaintiffs timely served Defendants Pfizer Inc. and Warner-Lambert Company with Plaintiffs' Expert Disclosure concerning Cheryl D. Blume, Ph.D., together with the expert's report. *See* Declaration of Lori C. McGroder, Exhibits A and B. Dr. Blume's deposition is currently scheduled to be held on Monday and Tuesday, November 12 and 13, 2007. Defendants have moved by emergency motion for an order extending the duration of Dr. Blume's deposition from two days to a total of five days. *See* ECF Doc. # 938. Plaintiffs oppose the motion on the grounds that: (1) Defendants should abide by the two-business day limitation ordered by this Court in Case Management Order No. 3; (2) the issue of an enlargement of time in which to depose Dr. Blume is not ripe; and (3) Defendants have not provided sufficient justification to demonstrate the need for such an enlargement of time.

**A.      Defendants Should Be Ordered to Follow the Guidelines and Time Limits Imposed by the Court in Case Management Order No. 3 in Regard to Expert Depositions.**

Case Management Order No. 3, ECF Doc. # 62, p. 5, states in pertinent part regarding

depositions:

> Unless otherwise authorized by the Court or stipulated by the parties, depositions shall be limited to two (2) business days of seven (7) hours each by the deposing parties.

Defense counsel participated in the negotiation of CMO-3 and are well aware of the

complexity of the issues involved in this litigation and the time limitations for depositions that

are clearly delineated in that Order.  Moreover, Defendants are also well aware that CMO-3 is

intended to cover the depositions of all witnesses whether parties, third parties or experts; the

Order makes no distinction between the witness type or subject matter.

Defendants' reference to the number of pages (197) and the single-spaced format of Dr.

Blume's expert disclosure, in order to demonstrate the need for an enlargement of time for her

deposition, is unpersuasive.  Custodial files of Defendants' own <u>individual</u> witnesses have been

in excess of 100,000 pages.  Plaintiffs have also deposed Defendants' <u>individual</u> witnesses about

safety and regulatory issues that encompass Defendants' entire New Drug Application:  the NDA

and its appendices span over a decade and include over 300,000 pages.  Dr. Blume's opinions

and the scientific method utilized to form those opinions are not dependent on whether her expert

disclosure was 20 pages or 200 pages.  Consequently, the number of pages of her report should

be of no moment to the Court in its determination on this issue.

The parties and the Court have been well aware of the complex nature of the litigation

and the sheer size of the record production in the case, but the two-business day rule has

remained in place.  All parties have scheduled and taken depositions with the understanding of

the two-business day rule.  In fact, Products Liability Plaintiffs have had to share their

questioning time with two other Plaintiffs' Steering Committees, and thus have not even had two business days to depose each witness; in effect, Product Liability Plaintiffs have only been entitled to one-third of the allotted time or otherwise negotiate with the other Plaintiffs' Steering Committees for the allotment of questioning time. Products Liability Plaintiffs' allotted time at depositions has been further reduced in accommodating defense counsel's requests for several hours at multiple depositions so that defense counsel could inquire of witnesses.

Products Liability Plaintiffs' counsel diligently prepared for depositions with full knowledge of the two-business day limitation. Products Liability Plaintiffs' counsel had to decide what issues to address at depositions and what issues would have to be set aside given the limitations set down by the Court. Defendants should be held to the same time limitations and rules to which Product Liability Plaintiffs have abided. For the Court to do otherwise, would unlevel the playing field at a critical time in the litigation.

Products Liability Plaintiffs have requested from defense counsel that Plaintiffs be given two hours of time at the conclusion of Defendants' deposition of Dr. Blume in order to allow Plaintiffs' counsel to pose questions to the witness; Plaintiffs' counsel has merely sought reciprocity for the same accommodation that was afforded defense counsel. Nevertheless, Plaintiffs would be willing, if the Court maintains the 14-hour, two-business day rule for Dr. Blume's deposition, to reduce our request from two hours to only one hour of time for Products Liability Plaintiffs to question Dr. Blume at the conclusion of Defendants' questioning.

**B.      Defendants' Motion for an Enlargement of Time Is Premature Inasmuch as the Deposition Has Not Commenced and No Testimony Has Been Taken From This Witness.**

In *Malec v. Trustees of Boston College,* 208 F.R.D. 23 (D. Mass. 2002), prior to the commencement of plaintiff's deposition, defendant moved for leave to extend the deposition

from one to two days.  Magistrate Judge Collings ordered that the deposition proceed for the one day as scheduled, and if after that one day of testimony defendants required more time and could not reach an agreement with plaintiff's counsel, then defendants could thereafter seek the intervention of the Court.  *Id.*.

In the instant litigation, similar to *Malec*, Defendants' motion is not ripe inasmuch as not a single question has been posed to the witness.  Defendants should first take the deposition of Dr. Blume for the two scheduled days, and if Defendants thereafter require additional time it will be their burden to demonstrate to this Court just cause for such an enlargement of time.

Because Defendants have indicated their intention to limit their inquiry to whether Neurontin causes suicide or suicide attempts, they have not demonstrated good cause as to why such an inquiry cannot be made within the two business days afforded by the current case management order.  Products Liability Plaintiffs intend to produce Dr. Blume for deposition on all issues of general causation including, *inter alia,* not only whether ingestion of Neurontin contributes to or causes suicidality, but also whether Defendants failed to warn physicians and patients of the risks of suicidality from ingestion of Neurontin, and thereby contributed to or caused the prescription of Neurontin by physicians and the purchase and ingestion of Neurontin by patients, resulting in injuries to and death of patients.  Defendants, on the other hand, have indicated during discussions and in written correspondence that they intend solely to inquire of Dr. Blume concerning the issue of whether Neurontin has the capacity to cause suicidality.  If, indeed, Defendants intend to limit the question solely to that single issue, then Defendants have not demonstrated good cause as to why they need an enlargement of time to depose Dr. Blume.

Defendants have represented to Products Liability Plaintiffs that their interpretation of the current discovery schedule limits expert discovery to *general causation*, a term that Defendants

interpret as "whether plaintiffs can prove that Neurontin is capable of causing suicide or suicide attempts." *See* Defendants' correspondence dated October 25, 2007, annexed as Exhibit A. Defendants further posit that "[a]ll other expert discovery is deferred to a later date." *Id.*; *see also* Defendants' correspondence dated October 9, 2007, annexed as Exhibit B. Plaintiffs, however, have maintained that the term *general causation* pertains to all expert opinions on liability issues that overlap all Products Liability cases in the MDL, as opposed to opinions that pertain to any *individual* case. The Court's current discovery schedule is meant to address all such general causation opinions.[1]

---

[1] This Court, in previous orders, e.g., Discovery Orders No. 7 and No. 13, has previously referred to the term general causation and summary judgment briefing without any limitation advanced by Defendants. In Discovery Order No. 14, the Court indicated that the discovery schedule remained "unchanged", and that this pertained to generic experts, summary judgment and preemption. In fact, if the Court in Discovery Order No. 14 meant to otherwise exclude discovery of expert witnesses with general causation opinions related to Defendants' liability, then it would be expected that the Court would have specifically indicated in the schedule when such expert disclosure would take place. Plaintiffs' interpretation was provided to Defendants in correspondence dated October 10, 2007, annexed as Exhibit C. To accept Defendants' argument would be to accept that there is in fact no discovery schedule at all for any such expert disclosure. Plaintiffs do not believe that the Court's recent Discovery order No. 14 effectively excluded expert disclosure pertaining to Defendants' regulatory or marketing efforts and how these efforts (or lack thereof) were a substantial factor in causing the prescription of Neurontin to all Plaintiffs and their resulting injuries (i.e., general causation). Plaintiffs' understanding of the term general causation is based not only upon this Court's orders, but also upon Judge Saris's Memorandum and Order dated February 23, 2007, ECF Doc. # 646. In her decision, the fraud claims were dismissed (with right to replead), and all other liability claims remained intact in the MDL. Thus, Plaintiffs have appropriately disclosed experts such as Dr. Blume who have opinions on general causation that relate both to Defendants' liability and Neurontin's mechanism of action. In fact, Judge Saris was aware that the parties would be undertaking "discovery in ten pilot cases to vet issues of general and individual causation" Mem. & Order, p. 5. Now, the parties have concluded discovery on general causation, and Plaintiffs have disclosed experts pertaining to same. Furthermore, discovery in the MDL has also been directly aligned with the New York Coordinated Litigation that is being handled by Judge Marcy Friedman in New York. Judge Friedman has never ruled upon the motions to dismiss Plaintiffs' fraud claims, and as such Plaintiffs were obligated to disclose experts who had opinions pertaining to general causation (whether pertaining to liability or to Neurontin's mechanism of action).

At paragraph 4 of Dr. Blume's expert report, she states:

> I have been asked by counsel to provide an opinion on whether Neurontin contributes to mood and behavior disturbances including self-injurious actions and suicide. I have also been asked to evaluate the actions taken by defendants (Warner Lambert Co., Parke-Davis and Pfizer; hereinafter "Pfizer Defendants") with respect to the regulatory and marketing efforts associated with Neurontin (gabapentin). The scientific opinions set forth in this report are true to a reasonable degree of scientific certainty based on the data and information provided to date.

*See* Blume Report, p. 1, Defs.' Ex. B. Indeed, Dr. Blume renders opinions as to *general causation*, including (a) how Defendants' negligent regulatory and marketing efforts contributed to Plaintiffs being prescribed Neurontin, and (b) how Neurontin contributes to suicidality. These opinions overlap all cases as opposed to opinions that pertain to an *individual* case. With the appropriate understanding of the Court's discovery schedule, Products Liability Plaintiffs exchanged Dr. Blume's report and made her available for a deposition within the current discovery schedule. From a practical standpoint, Dr. Blume's opinions include general causation opinions that relate to Defendants' liability (negligence, failure to warn, suppression of information) and how these actions (or inactions by Defendants) are causally related to Plaintiffs being prescribed Neurontin, purchasing and ingesting Neurontin, and thereby suffering injury. Additionally, Dr. Blume renders a general causation opinion as to whether Neurontin contributes to suicidality (the sole issue about which Defendants maintain is appropriate for questioning). Dr. Blume is available to testify as to all of the opinions set forth in her expert disclosure on the scheduled dates of November 12 and 13.

Noteworthy, Product Liability Plaintiffs also exchanged the expert reports of Dr. Charles King and Dr. Dan Brock relating to Defendants' marketing efforts and the causative effect of these marketing efforts upon all Plaintiffs (i.e., general causation). Because these experts did not specifically render an opinion as to "whether plaintiffs can prove that Neurontin is capable of

causing suicide or suicide attempts," *see* Defendants' correspondence dated October 25, 2007,

annexed as Exhibit A, Defendants have refused to take their depositions within the current

discovery schedule. Inasmuch as Defendants have refused to schedule and take the depositions

of Plaintiffs' liability experts, Dr. King and Dr. Brock, who have provided opinions regarding

general causation, but not regarding Neurontin's mechanism of action, it now is at the very least

inconsistent for Defendants to inquire of Dr. Blume about any opinions outside Neurontin's

capacity to cause suicide.[2] Nevertheless, Dr. Blume is available and expected to answer

questions about all opinions in her report.

     As may be readily discerned from Defendants' moving papers, Defendants indicate that

Dr. Blume's report offers a number of opinions on various topics. *See* Defs.' Mem., Preliminary

Statement and Background, p. 2. Defendants have failed to indicate to the Court whether they

have any intention of deposing Dr. Blume on any issue other than that which Defendants have

maintained is the sole issue for questioning, i.e., "whether plaintiffs can prove that Neurontin is

capable of causing suicide or suicide attempts." *See* Defs.' correspondence dated October 10,

2007, annexed as Ex. C. Defendants cannot have it both ways: they cannot limit their

questioning solely to the issue of whether Neurontin can cause suicide, seek five days of

testimony on the limited issue, and then try to advance their argument in the future that they are

entitled to depose Dr. Blume again on the remaining general causation issues that directly relate

to all MDL Plaintiffs. Moreover, if Defendants maintain that Dr. Blume's general causation

opinions that are related to Defendants' liability (i.e., regulatory and marketing efforts) are now

---

[2] The Court should note that Products Liability Plaintiffs have advised Defendants that these
liability experts have been made available for depositions within the Court's discovery schedule,
and that Plaintiffs will not produce these experts again pertaining to any opinions that the
experts have provided in the context of the MDL generic case absent an order of this Court. *See*
Products Liability Plaintiffs' correspondence dated October 26, 2007, annexed as Ex. D.

encompassed by the Court's discovery schedule, then Defendants should finally acknowledge same to the Court and Products Liability Plaintiffs' counsel.  Under either circumstance, Defendants have not demonstrated good cause for an enlargement of time in which to conduct Dr. Blume's deposition.

**C.     Defendants' Request for an Enlargement of Time
To Depose Products Liability Plaintiffs' Expert Witness
Dr. Blume to Five Days Should Be Denied as Excessive.**

In *Canal Barge Co. v. Commonwealth Edison Co.*, 2001 U.S. Dist. LEXIS 10097 (N.D. Ill. 2001), where defendants requested six days for the deposition of plaintiff's witness, instead of the one day provided under Rule 30(b)(6), the Court found the request to be excessive, halved the request and granted three days for deposition, and required defendants to use their time efficiently.

Defendants should be held to the same deposition time constraints under which the parties have been operating pursuant to Case Management Order No. 3.  Before a request for an enlargement of time is considered by this Court, Defendants are obligated at least to depose Dr. Blume for the two days in accordance with the procedures established by this Court.  If Defendants thereafter require additional time, it would then be Defendants' burden to seek the intervention of the Court and demonstrate just cause for any additional time to depose Dr. Blume.

If the Court decides to grant Defendants an enlargement of time in which to conduct the deposition of Dr. Blume at this juncture, Products Liability Plaintiffs submit that their request to enlarge it to five days is excessive.  Moreover, Dr. Blume has indicated to Plaintiffs' counsel that if the Court sees fit to grant Defendants additional time for her deposition, she is unavailable until the week of December 17, 2007.  Dr. Blume has personal conflicts, as well as commitments

in other legal matters with discovery deadlines where she is a consultant in litigation; thus, her deposition cannot be continued on November 14, 15 or 16. If the Court does allow additional days after November 12 and 13, with the understanding that Dr. Blume's deposition would be continued until the week of December 17, then Defendants should still depose Dr. Blume on the days that are already scheduled, and the parties would have to return the week of December 17 to complete her deposition as to non-duplicative testimony. Defendants should still be required to disclose their expert reports on December 3 as to all those issues for which Dr. Blume was deposed on November 12 and 13. To the extent that Dr. Blume's continued deposition during the week of December 17 requires Defendants to supplement their expert reports, then they should do so on or before December 28. Thereafter, Products Liability Plaintiffs could evaluate the supplemented Defendants' expert reports, and depositions of Defendants' experts could also be continued on or before January 11, 2008. The currently scheduled date of January 25, 2008, for motions for summary judgment would remain in effect.

## CONCLUSION

In view of the above, it is respectfully submitted that Defendants' Motion for an Order enlarging the time allotted for the deposition of Products Liability Plaintiffs' expert Dr. Blume should be denied in its entirety, or, in the alternative, Defendants should be directed to take the deposition testimony of Dr. Blume for the two days as presently scheduled and thereafter, if Defendants require additional time for continuation of the deposition, Defendants may move for appropriate relief; or that this Court should find Defendants request to enlarge Dr. Blume's deposition is excessive, order that her deposition proceed as scheduled, and grant a minimum enlargement of time for Dr. Blume's deposition based upon her availability.

Dated:  November 7, 2007                    Respectfully submitted,

                                            ***Members of Products Liability
                                            Plaintiffs' Steering Committee***

                              By:    **/s/ Andrew G. Finkelstein**
                                     Andrew G. Finkelstein, Esquire
                                     Finkelstein & Partners, LLP
                                     436 Robinson Avenue
                                     Newburgh, NY  12550


                              By:    **/s/ Jack W. London**
                                     Jack W. London, Esquire
                                     Law Offices of Jack W. London
                                       & Associates
                                     106 E. 6th Street, Suite 700
                                     Austin, TX  78701


## <u>CERTIFICATE OF SERVICE</u>

        I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on November 7, 2007.

Dated:  November 7, 2007

                                     **/s/ Andrew G. Finkelstein**
                                     Andrew G. Finkelstein