UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:  NEURONTIN MARKETING,             :
        SALES PRACTICES AND              :
        PRODUCTS LIABILITY LITIGATION    :
                                         :   MDL Docket No. 1629
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :   Master File No. 04-10981
THIS DOCUMENT RELATES TO:                :
                                         :   Judge Patti B. Saris
                                         :
THE GUARDIAN LIFE INSURANCE COMPANY      :
OF AMERICA v. PFIZER, INC., and          :   Magistrate Judge Leo T.
                                         :   Sorokin
AETNA, INC. v. PFIZER, INC.              :
                                         :
                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL KAISER TO PRODUCE AN
ADEQUATELY PREPARED RULE 30(B)(6) WITNESS AND
FOR ATTORNEYS' FEES AND COSTS PURSUANT TO RULE 37, AND
IN OPPOSITION TO KAISER'S CROSS-MOTION FOR AN ORDER
UNDER RULES 26(B)(2)(C) AND 26(C)**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

Defendants Pfizer Inc. and Warner-Lambert Company (together, "defendants"), by and through their attorneys, submit this reply memorandum of law in support of their motion to compel Kaiser Foundation Hospitals Inc. and Kaiser Foundation Health Plan, Inc. (together, "Kaiser") to produce a witness adequately prepared to testify to Topic 2 of the Rule 30(b)(6) notice of deposition of Kaiser, dated July 5, 2007 (the "Rule 30(b)(6) Notice"), and for the attorneys' fees and costs defendants have incurred as a result of Kaiser's repeated failures to prepare its designated witnesses. Defendants also submit this memorandum in opposition to Kaiser's cross-motion for an order under Rules 26(b)(2)(C) and 26(c) requiring defendants to submit any further inquiries on Topic 2 through interrogatories or written deposition questions.

## PRELIMINARY STATEMENT

Defendants established the following facts in their opening brief:

- On August 7, 2006, Kaiser averred to the Court that it had undertaken a "reasonable, good faith" search for documents responsive to defendants' discovery requests in its non-California regions. *See* Defs.' Mem. at 3–4 (citing Pls.' Opp'n Defs.' Mot. Compel Disc. (Dkt #422) at 15, and Declaration of Justine J. Kaiser, dated Jan. 20, 2006 (Dkt # 422) ¶¶ 5, 6). In fact, no search had been undertaken, and production of responsive documents from these regions would not begin until late September 2007. *See id.* at 4.

- On July 12, 2007, Kaiser produced Albert Carver as a witness designated to testify on Topic 2 of the Rule 30(b)(6) Notice (concerning Kaiser's "policies and practices concerning Neurontin," including its "drug utilization review relating to Neurontin"). Mr. Carver professed to have no knowledge respecting Neurontin-specific restrictions and clinical practice guidelines that Kaiser had adopted from 1999 to the present. *See id.* at 5. Mr. Carver was also unable to answer rudimentary questions regarding Kaiser's Neurontin-specific drug utilization review. *See id.*

- On September 17, 2007, Kaiser designated Dr. Mirta Millares as a second Rule 30(b)(6) witness on Topic 2. *See id.* at 8. Dr. Millares was likewise incapable of answering rudimentary questions concerning Kaiser's Neurontin-specific drug utilization review. She further disclaimed any knowledge of Neurontin-specific policies and practices that Kaiser had adopted in its six regions outside California. *See id.* at 9–10.

- On October 10, 2007, Kaiser designated a third Rule 30(b)(6) witness, Dr. Deborah Kubota, on Topic 2. Kaiser withdrew this designation on the following day, however,

> after Dr. Kubota apparently became too "nervous" to testify in a Rule 30(b)(6) capacity. *See id.* at 12.

- On the same day, Kaiser designated a fourth Rule 30(b)(6) witness, Mitchell Cohen, to testify to Topic 2 in Kaiser's non-California regions. Mr. Cohen's testimony on this topic was flatly and inexplicably at odds with documents that Kaiser had first produced to defendants two weeks earlier. *See id.* at 12–13.

In opposing defendants' motion, Kaiser does not contest these facts. Kaiser does not even attempt to argue that it has produced a corporate representative who has answered even rudimentary questions concerning Topic 2. *See* Opp. Mem. at 9–10.

Instead, Kaiser argues (1) that its witnesses' gross lack of preparation was a consequence of defendants' "broad and changing interpretation" of Topic 2, not of Kaiser's cavalier attitude toward its discovery obligations; (2) that it should be excused from providing deposition testimony on Topic 2 because Mr. Carver adequately testified to the remaining topics on the Rule 30(b)(6) Notice; and (3) that First Circuit precedent effectively rewards parties that fail to satisfy their obligations under Rule 30(b)(6) by discharging them of those obligations, and requiring their adversaries to submit any further inquiries on noticed topics in the form of written interrogatories.

As set forth below, each of these contentions is without merit. *First*, defendants' interpretation of Topic 2's scope has never changed. Moreover, the rudimentary questions that Kaiser's designated corporate representatives have been thus far unprepared to answer cannot be deemed, under any plausible construction of Topic 2, to be outside that topic's scope. *Second*, contrary to Kaiser's contention, Mr. Carver's testimony was inadequate or uninformative on every noticed topic relating to Neurontin or to this litigation (nineteen of the twenty-three noticed topics). His testimony on these topics supplies no basis on which to deprive defendants of their right to an adequately prepared Rule 30(b)(6) witness on Topic 2. *Third*, contrary to Kaiser's

2

contention, First Circuit precedent does not reward parties that shirk their Rule 30(b)(6) obligations (and prejudice their adversaries) by relieving such parties of their obligation to provide oral deposition testimony.

## ARGUMENT

I. **The Grossly Inadequate Preparation of Kaiser's Rule 30(b)(6) Witness Cannot Be Attributed to Defendants' Allegedly "Broad and Changing Interpretation" of That Topic**

Kaiser insists in its opposition that the grossly inadequate preparation of its Rule 30(b)(6) witnesses is attributable to defendants' allegedly "broad and changing interpretation" of Topic 2. Opp. Mem. at 11. The record, however, establishes that Kaiser's failure to prepare its witnesses is purely a consequence of Kaiser's indifference to its discovery obligations:

*First*, Kaiser's present contentions that Topic 2 is unduly "broad" and "amorphous" are belied by its prior admissions that the same topic was a "sufficiently narrow" and "appropriate" topic for deposition. *See* Letter from Aviah Cohen Pierson to Matthew B. Rowland, dated May 14, 2007, at 1 (attached at Exhibit B to the Declaration of Rajesh S. James, dated Oct. 24, 2007 ("James Decl.")). Kaiser's insistence that it was unable "to predict the information needed" to prepare Dr. Millares and Mr. Cohen for their depositions, Opp. Mem. at 13, is further belied by the fact that defendants sent Kaiser two letters—one preceding each deposition—specifying questions illustrative of those that defendants proposed to ask at Kaiser's continued Rule 30(b)(6) deposition.[1] Indeed, to ensure that Kaiser and defendants shared a common understanding of Topic 2's scope, defendants' September 5 letter asked that Kaiser "promptly

---

[1] *See* Letter from Rajesh S. James to Aviah Cohen Pierson, dated Sept. 5, 2007 (James Decl. Ex. G); letter from Rajesh S. James to Linda P. Nussbaum, dated Oct. 3, 2007, at 1–2 (James Decl. Ex. K) (reiterating the examples provided in defendants' September 5, 2007 letter).

3

confirm that the statements set forth in this letter are consistent with your understanding of our agreements concerning the matters discussed [at a meet-and-confer session] th[at] morning." Letter from Rajesh S. James to Aviah Cohen Pierson, dated Sept. 5, 2007 (James Decl. Ex. G) at 2. Kaiser, rather than voicing any concern regarding Topic 2's breadth, promptly supplied the requested assurance. *See* Letter from Aviah Cohen Pierson to Rajesh S. James, dated Sept. 6, 2007 (James Decl. Ex. H).

*Second*, Kaiser's repeated assertion that the inadequacy of its witnesses' preparation is attributable to defendants' allegedly "changing" interpretation of Topic 2's scope is devoid of merit. Although Kaiser makes no fewer than eight references to defendants' "ever-changing demands,"[2] its twenty-page opposition and four-page supporting declaration cite only two examples of such "changes": Namely, Kaiser insists (1) that defendants specified no time frame for Topic 2, apparently leading Kaiser to conclude that Mr. Carver would not be asked to testify to Kaiser's Neurontin-specific policies or practices over the past eight years, and (2) that defendants, at Dr. Millares's deposition, "for the first time" insisted that "Topic 2 should include testimony concerning Kaiser's non-California regions," testimony that defendants allegedly "had previously not sought." Opp. Mem. at 5, 8.

Both contentions are patently absurd: Defendants' Rule 30(b)(6) notice expressly stated that "[e]ach Topic encompasses the years from 1990 through the present." Rule 30(b)(6) Notice

---

[2] *See* Opp. Mem. at 1 (citing Kaiser's allegedly "good-faith effort [to] meet the Defendants' ever-evolving requests"); *id.* at 2 ("Defendants' broadened request"); *id.* (blaming defendants' "ever-changing demands" for inadequacy of Kaiser's Rule 30(b)(6) testimony); *id.* (asserting that "Kaiser has done everything practicable . . . to meet Defendants' expanding demands"); *id.* at 2–3 (attributing inadequacy of Kaiser's Rule 30(b)(6) testimony to defendants' "failure to communicate their changing expectations"); *id.* at 9 (citing "Defendants' new and increased demands"); *id.* at 11 ("Defendants continually enlarged the interpretation of Topic 2"); *id.* ("Defendant's broad and changing interpretation has made it impracticable, indeed impossible, to prepare a witness to Defendants' satisfaction.").

(James Decl. Ex. A) at 8. In light of this statement, Kaiser's continued insistence that Mr. Carver—who professed ignorance of any and all Neurontin-specific policies and practices from 1999 through the present—was an adequately prepared witness, Opp. Mem. at 3, defies comprehension.

Kaiser's insistence that defendants somehow "agreed" to carve out Kaiser's non-California regions from the scope of Topic 2, Opp. Mem. at 8–9, is no less absurd. As set forth in defendants' opening brief, this contention is untenable given (1) that following the meet-and-confer sessions at which Kaiser alleges that defendants entered into this unwritten "agree[ment]," Opp. Mem. at 9, defendants *moved to compel* Kaiser to produce responsive documents from its non-California regions, (2) that the Court, in ruling on defendants' motion, affirmed that Kaiser's discovery obligations extend to its non-California regions, and (3) that the very same letter in which defendants requested additional testimony on Topic 2 is replete with references to policies and practices relating to Neurontin adopted in Kaiser's non-California regions. *See* Defs.' Mem. at 16.

Moreover, Kaiser's statement that defendants, prior to Dr. Millares' deposition, had not sought testimony concerning Neurontin-specific policies and practices adopted in Kaiser's non-California regions, Opp. Mem. at 8; Nussbaum Decl. ¶ 8, is simply untrue: Defendants asked Mr. Carver about his knowledge of these policies and practices, only to be told that he lacked any "specific" knowledge concerning policies and practices adopted outside California. *See* Carver Dep. at 430. (As Kaiser first produced documents concerning these policies and practices on September 25, 2007—more than two months after Mr. Carver's deposition had concluded—defendants' ability to ask Mr. Carver questions relating to policies and practices adopted in Kaiser's non-California regions was understandably limited.)

5

*Third*, to the extent any questions concerning Topic 2's outer bounds exist, those questions are academic in the context of the pending motion, which concerns questions that go to Topic 2's very core. As Kaiser concedes, its designated witnesses have been unprepared to answer rudimentary questions concerning Kaiser's Neurontin-specific policies and practices. Defendants, even after having taken the depositions of three Rule 30(b)(6) designees, have yet to receive answers to such basic questions as "(1) when was Neurontin added to the formulary in each of Kaiser's non-California regions; (2) what restrictions or guidelines were in place on these formularies with respect to Neurontin; and (3) and what initiatives were in place with respect to Neurontin." Opp. Mem. at 9–10 (noting that these unanswered questions are among the subjects of defendants' present motion). Kaiser's protest that it was unable to "predict" that defendants would pose such elementary questions, Opp. Mem. at 13, rings hollow.

**II.    The Testimony of Mr. Carver Was Inadequate or Uninformative on Nineteen of Twenty-Three Noticed Topics, and His Testimony on These Topics Supplies No Basis for Relieving Kaiser of Its Rule 30(b)(6) Obligations**

Kaiser also argues that the Court should deny defendants' request that Kaiser produce an adequately prepared Rule 30(b)(6) witness on Topic 2, because Mr. Carver testified adequately as to the remaining topics on defendants' Rule 30(b)(6) notice.[3] The argument unfairly attempts to capitalize on defendants' efforts at accommodation—namely, their willingness to limit the scope of a continued Rule 30(b)(6) deposition to Topic 2—erroneously equating it with a concession that Mr. Carver's preparation on the remaining noticed topics was adequate. As

---

[3] *See* Opp. Mem. at 2 (suggesting that defendants' contentions relate only to "*one* out of twenty-three 30(6)(b) [*sic*] topics"); *id.* at 5 (same); Opp. Mem. at 11 ("There is no questions [*sic*] that Kaiser has satisfied Defendants' [*sic*] with respect to the *22* other noticed 30(b)(b) [*sic*] topics."); [ADDITIONAL CITES].

discussed below, Mr. Carver's testimony was inadequate or uninformative on nineteen of the twenty-three noticed topics.

Kaiser designated Mr. Carver to testify as its Rule 30(b)(6) witness on twenty-three topics, of which four (Topics 1, 3, 4, and 21) called for general information concerning Kaiser's business practices and organizational structure.[4] The remaining nineteen topics specifically concerned Neurontin and the factual bases for the allegations set forth in the Third Consolidated Amended Complaint. On each of these topics, Mr. Carver's testimony was inadequate and uninformative, except to the extent that it underscored the lawyer-driven nature of Kaiser's lawsuit and the lack of any evidentiary basis for Kaiser's allegations.

Mr. Carver, for instance, testified that Kaiser has undertaken no analysis to determine whether Neurontin provides a medical benefit to patients who take it for the off-label uses at issue in this litigation (Topic 7); that Kaiser has no basis to believe that the Neurontin prescriptions for which it seeks treble damages were written as a result of off-label promotion (Topic 14); and that Kaiser has no information that any of the alleged off-label promotion of Neurontin was fraudulent (Topic 16). Mr. Carver likewise professed ignorance of the uses of Neurontin for which Kaiser is seeking recovery (Topic 12); the damages that Kaiser seeks from defendants in this action (Topic 18); and the basis on which Kaiser proposes to calculate those damages (same). *See, e.g.*, Carver Dep. at 86–88, 96–98, 138–148, 183–185, 242–248, 252–253, 265–275, 319–328, 461–471. Mr. Carver was also unaware of any evidentiary basis for key allegations of the Third Consolidated Amended Complaint (Topics 15 and 17). *Id.*

---

[4] *See* Kaiser Rule 30(b)(6) Notice (James Decl. Ex. A) Topic 1 ("policies and practices concerning payment or reimbursement of claims for drug prescriptions generally"); *id.* Topic 3 ("names of persons, business units, or entities responsible for supervising or implementing the[se] policies and practices"); *id.* Topic 4 ("record retention policies and systems"); *id.* Topic 21 ("organizational structure").

7

Topic 11, for instance, called for testimony regarding "[a]ny communications that [Kaiser] had with [its] members regarding Neurontin or off-label uses of medications." Mr. Carver, however, professed to be unaware that Kaiser's public website has advised and continues to advise its members that Neurontin is an effective treatment for a number of the off-label uses at issue in this litigation. Carver Dep. at 439–53; *see, e.g.*, Kaiser Permanente, *Anticonvulsants for Restless Legs Syndrome*, http://members.kaiserpermanente.org/kpweb/healthency.do?hwid =ue4969 (last updated, Apr. 10, 2007) ("Gabapentin can help people with restless legs syndrome. It is sometimes used when symptoms are severe and can be used in combination with other drugs."); Kaiser Permanente, *Anticonvulsants for Chronic Low Back Pain*, http://members. kaiserpermanente.org/kpweb/healthency.do?hwid=tn9237 (last updated Feb. 15, 2006) ("The anticonvulsant gabapentin may be your best bet for safely treating chronic pain because it is not used by the body in the same way as many other medicines.")

Mr. Carver's testimony on Topic 22, concerning Kaiser's efforts to identify and produce documents responsive to defendants' document requests, was likewise uninformative. Notably, the principal substantive testimony that Mr. Carver offered on this Topic—that all responsive documents from Kaiser's non-California regions had been identified and produced and that Kaiser's internal pharmacy websites had been searched for responsive documents, Carver Dep. at 46, 428–29—has since proven to be false. *See* Letter from Aviah Cohen Pierson to Rajesh S. James, dated Aug. 16, 2007 (James Decl. Ex. D) at 1.

Any information that Mr. Carver might have been able to supply on these topics was obscured by his counsel's aggressive efforts to reframe questions posed by defendants' counsel, coach Mr. Carver on how to respond to these questions, engage in lengthy speaking objections and colloquies, and answer questions on Mr. Carver's behalf. The following exchange

8

(concerning Topic 8) illustrates both the inadequacy of Mr. Carver's preparation and the extent of his counsel's effort to shape his testimony and supply answers on his behalf:

> Q. Did Kaiser form a conclusion or a view regarding whether Neurontin provides a medical benefit to and may appropriately be prescribed by a physician for patients who take it for the treatment of neuropathic pain?
>
> MS. NUSSBAUM: Objection. I think that Kaiser's view is reflected in the Complaint and is also reflected in their responses in discovery in this action, and that is Kaiser's view.
>
> Q. You can answer.
>
> MS. NUSSBAUM: Are you adopting what's set forth in the complaint and in your previously submitted discovery request and responses?
>
> THE WITNESS: Now we are adopting that view.
>
> Q. And what is that view?
>
> A. The view that's represented in the Complaint.
>
> Q. Do you know what it is?
>
> MS. NUSSBAUM: We can go through the Complaint if you'd like. Let's reread the question.
>
> Q. Without referencing the document or the Complaint itself, do you have any knowledge of what that view is?
>
> MS. NUSSBAUM: Do you want to refresh your recollection?
>
> THE WITNESS: Sure.
>
> MS. NUSSBAUM: You want to repeat the question and he'll go through the Complaint? Take your time.
>
> MR. JAMES: You can reread the question.
>
> (Record read.)
>
> MS. NUSSBAUM: Is there a particular time frame that you have in mind, Mr. James?
>
> MR. JAMES: Well, why don't we find out if they've formed a conclusion at all and we can ask whether that view has changed over time.

9

> [Several minutes elapse as Mr. Carver reviews the complaint.]
>
> Q. Have you found any view?
>
> A. I have not yet, I'm sorry.
>
> Q. Actually, I'll withdraw the question at this point.

Carver Dep. at 459–61.

Although Mr. Carver's inadequate preparation and his counsel's inappropriate conduct might well justify a continued Rule 30(b)(6) deposition on all noticed topics, defendants have sought a continued deposition only on Topic 2—a topic that, as discussed below, *see infra* pp. 14–15, defendants deem critical to their defense.  Mr. Carver's inadequate and uninformative answers on the remaining topics supply no basis either to excuse the inadequacy of his testimony on Topic 2 or to deprive defendants of their right to an adequately prepared Rule 30(b)(6) witness on that topic.

### III.    First Circuit Precedent Does Not Reward Parties that Have Shirked Their Rule 30(b)(6) Obligations by Relieving Them of Those Obligations and Limiting Their Adversaries to Written Discovery

Kaiser also argues that an order requiring a continued Rule 30(b)(6) deposition is improper absent a finding of "bad faith or willful obstruction of the discovery process." Opp. Mem. at 15.  Kaiser further contends that "there has been no bad-faith on the part of Kaiser or its counsel," *id.* at 17, and that defendants' remaining inquiries on Topic 2, which "simply [concern] dates and factual formulary entry" are appropriately addressed through written interrogatories, *id.* at 19.  These arguments are both legally and factually unsound.

*First*, a finding of bad faith or willful obstruction is not a prerequisite to a continued Rule 30(b)(6) deposition.  As the precedents on which Kaiser itself relies make clear, a continued Rule 30(b)(6) deposition is appropriate whenever a party's Rule 30(b)(6) designee is "unable to

answer a specific category of questions listed in the notice of deposition." *E.g.*, *Guy Chem. Co. v. Romaco N.V.*, Civ. A. No. 3:06-96, 2007 U.S. Dist. LEXIS 4287, at *34 (W.D. Pa. Jan. 22, 2007) (finding no "bad faith noncompliance" on the defendant's part, but concluding that the inability of the defendant's Rule 30(b)(6) designee to answer a specific category of questions "justif[ied] ordering a second Rule 30(b)(6) deposition at [the defendant's] expense"), *cited with approval by* Opp. Mem. at 11. *See generally Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 210 F.3d 1, 17 (1st Cir. 2000) (holding that a court does not "abuse its discretion in strictly enforcing Rule 30(b)(6)").

Notably, even courts that have declined to order parties to produce additional Rule 30(b)(6) witnesses have ordered those parties to supplement deficient Rule 30(b)(6) testimony with additional documentary evidence *and deposition testimony*. *See, e.g.*, *Berwind Prop. Group Inc. v. Envtl. Mgmt. Group*, 233 F.R.D. 62, 65, 66 (D. Mass. 2005) (declining to order the defendant to produce a second Rule 30(b)(6) witness given that its first witness "answered most questions on the best corporation information available," but ordering the defendant to "find and make available" an additional, knowledgeable fact witness for deposition), *cited with approval by* Opp. Mem. at 15–16.[5]

*Second*, even if a finding of bad faith or willful obstruction were required, the present record supplies ample support for such a finding. Notably, Kaiser has put defendants through the enormous burden and expense of preparing for and taking depositions of three Rule 30(b)(6) designees, none of whom was prepared to answer even the most rudimentary questions

---

[5] Defendants are willing to allow Kaiser to produce knowledgeable fact witnesses in lieu of a Rule 30(b)(6) witness. Kaiser's failure to produce responsive documents from its non-California regions until two weeks before the discovery cutoff precluded defendants from noticing the depositions of fact witnesses from Kaiser's non-California regions for deposition.

11

concerning Topic 2.  Defs.' Mem. at 5, 8–10, 12–13.  Indeed, Kaiser admits that, even as of November 2, 2007—three weeks after the deposition of Mr. Cohen, and more than three months after the deposition of Mr. Carver—it had not yet compiled the information necessary to prepare a witness on Topic 2.[6]  Nussbaum Decl. (Dkt # 937) ¶¶ 8, 10, 12.

Kaiser's counsel improperly impeded defendants' ability to explore even the limited knowledge of its first Rule 30(b)(6) designee, Mr. Carver, by repeatedly (1) reframing defendants' questions, (2) coaching the witness on how to respond to these questions, and, (3) in several instances, answering questions on the witness's behalf.  *See* Carver Dep. at  91:-93:17, 96:25-97:17, 141:16-142:15, 163:15-164:9, 168:19-169:3, 219:20-220:2, 228:23-229:16, 302:11-303:3, 305:6-13.  Additionally, Kaiser did not produce critical documents concerning its Neurontin-specific policies and practices in non-California regions until two months after Mr. Carver's deposition had concluded.  *See* Defs.' Mem at 3–4.  This is in direct conflict with Kaiser's representation to this Court that it had in fact produced such documents more than *one year* earlier.  *Id.*

Kaiser's deliberate decision to produce its witnesses for deposition first and to compile the information that those witnesses would require to testify adequately weeks or months after those depositions were taken is of a piece with the efforts of Kaiser's counsel to shape the testimony of its Rule 30(b)(6) witnesses.  Indeed, Kaiser never appears to have had any bona fide intention of producing an adequately prepared witness to testify to Topic 2.  Instead, Kaiser

---

[6] Kaiser's counsel, in her declaration, admits that on October 2, 2007, she agreed to prepare a Rule 30(b)(6) witness to testify regarding "(1) changes to the formulary status of Neurontin in Kaiser's non-California regions; and (2) initiatives at these regions related to Neurontin."  Nussbaum Decl. (Dkt # 937) ¶ 8.  To prepare the witness, Kaiser's counsel "interviewed and compiled information from six Kaiser employees at its non-California regions."  *Id.* ¶ 10.  At the same time the declaration also states that, even as of November 2, 2007—*more than three weeks* after the Rule 30(b)(6) deposition had concluded—Kaiser remained in "the process of compiling information" on these subjects.  *Id.* ¶ 12.

apparently planned from the outset to produce witnesses who would respond to each question with either a profession of ignorance or an inaccurate answer. When pressed by defendants to provide adequate testimony on this Topic, Kaiser first produced additional unprepared and unknowledgeable witnesses, and then attempted to remedy this deficiency by having its counsel "make corrections" to the last of these witness's "incomplete or incorrect" testimony. *See* Letter from Aviah Cohen Pierson to Rajesh S. James, Oct. 23, 2007 (attached at Exhibit A to the Declaration of Rajesh S. James, dated November 13, 2007) (stating that Kaiser was in the process of "reviewing the transcript of [Mr. Cohen's] Rule 30(b)(6) deposition" with the intention of "mak[ing] corrections to the transcript" in the following week to the extent Mr. Cohen's responses "were incomplete or incorrect"). Given the inadequacy of Mr. Cohen's testimony, this would appear to involve not the types of corrections contemplated by the Rules, but rather a wholesale revision of the transcript. While defendants' motion to compel has put this process on hold, Kaiser's cross-motion, if granted, would likewise leave Kaiser's counsel free to tailor Kaiser's responses as it sees fit.

*Third*, Kaiser's contention that requiring defendants to submit further inquiries on Topic 2 is appropriate because "what Defendants seek is simply dates and factual formulary entry," Opp. Mem. at 19, is analytically flawed. Kaiser correctly observes that its Rule 30(b)(6) designees to date have proven incapable of supplying rudimentary factual information such as each region's Neurontin-specific clinical practice guidelines and the dates on which those guidelines changed. Kaiser is incorrect, however, to suggest that defendants' inquiries are limited to such basic factual questions. Instead, defendants have repeatedly informed Kaiser that they plan to ask an adequately prepared witness to explain "the reasons that [particular] restrictions or guidelines were adopted and the information on which those adoptions were

13

based." Letter from Rajesh S. James to Aviah Cohen Pierson, dated Sept. 5, 2007 (James Decl. Ex. G) at 1. Because Kaiser's witnesses to date have been generally unable to provide even the most elementary factual information, defendants' ability to ask more probing questions has been frustrated. Given that none of Kaiser's witnesses were able accurately to state the formulary status of Neurontin in Kaiser's non-California regions, for example, it was obviously futile to ask them for the reasons that changes to Neurontin's status on those formularies were made. The fact that Kaiser has to date successfully limited defendants to asking rudimentary questions by failing to adequately prepare its Rule 30(b)(6) witnesses, however, supplies no justification for requiring defendants to limit all further discovery to written interrogatories.

Finally, defendants note that Kaiser's opposition to defendants' motion effectively turns Rule 30(b)(6) on its head. Kaiser's proposal to limit defendants' to written interrogatories not only deprives defendants' of their right to an adequately prepared Rule 30(b)(6) deponent, but effectively rewards Kaiser for its deliberate disregard of its discovery obligations: In June 2007, Kaiser refused to supply defendants with dates for a Rule 30(b)(6) deposition in New York or Boston, stating that it would only supply dates for a California deposition. On June 6, 2007, defendants moved to compel Kaiser to produce a Rule 30(b)(6) witness in New York or Boston, and the Court granted defendants' motion. *See* Defs.' Emergency Mot. Compel (Dkt # 759); Discovery Order No. 12 (Dkt # 771).

Kaiser now seeks to relieve itself not only of the obligation to produce a Rule 30(b)(6) witness for deposition in Boston or New York, but of the obligation to produce an adequately prepared Rule 30(b)(6) witness at any location. The only circumstances that have changed since June are that (1) Kaiser has produced three witnesses incompetent to answer rudimentary questions concerning its policies and practices concerning Neurontin; (2) it has become clear that

14

Kaiser misled defendants and the Court regarding the scope of its search for responsive documents; and (3) Kaiser's counsel has aggressively sought to obstruct defendants' efforts to depose its initial Rule 30(b)(6) witness. Defendants respectfully submit that none of these changed circumstances warrant that Kaiser obtain a more favorable result today than it obtained from this Court in June.

## IV.   The Deposition Testimony That Defendants Seek Is Essential to Their Defense

Finally, defendants again stress that the deposition testimony they seek is essential to their defense for at least two reasons: First, Kaiser has eschewed the possibility of eliciting testimony from individual physicians to determine whether their decisions to prescribe Neurontin to Kaiser's insureds would have changed had they known of the studies that defendants allegedly "suppressed." In the absence of such individual proof, defendants believe that Kaiser can only prevail if it is able to provide compelling evidence that *no physician* informed of the allegedly withheld studies would have prescribed Neurontin for the off-label uses at issue. Defendants further believe that the testimony of an adequately prepared Rule 30(b)(6) witness will undermine this key premise of Kaiser's case by demonstrating that highly trained physicians and pharmacists, fully informed of the allegedly withheld studies, have nonetheless concluded that Neurontin can be effective in treating the off-label uses at issue in this litigation. Kaiser makes no effort to contest the relevance of the testimony sought except to state, in an entirely conclusory manner, that even if Kaiser's regional chiefs of practice concluded that Neurontin could be an effective treatment for an off-label use after being made aware of an allegedly withheld study, that would "not undermine the premise of this RICO action." Opp. Mem. at 12.

Second, defendants require the testimony sought to challenge Kaiser's reliance on industry-wide data to determine Kaiser's Neurontin utilization. While Kaiser contends that

15

Judge Saris has unreservedly endorsed Kaiser's reliance on such data, this contention is inconsistent with Judge Saris's ruling: Judge Saris expressly advised Kaiser that its reliance on industry-wide utilization might ultimately lead to the dismissal of its case: "If you're going to rely on the industrywide data, just understand that if [the defendants] attack it and you don't have anything to counter it with, you may lose." Tr. of Sept. 27, 2006 hearing before Judge Saris (Dkt # 503) at 54. The deposition testimony sought here is an important aspect of defendants' ability to mount such an attack.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motion to compel Kaiser to produce an adequately prepared Rule 30(b)(6) and for attorneys' fees and costs pursuant to Rule 37, and deny Kaiser's cross-motion for an order under Rules 26(b)(2)(C) and 26(c).

Dated: November 13, 2007

DAVIS POLK & WARDWELL

By:  /s/ James P. Rouhandeh
     James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:   /s/ David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company*

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on November 13, 2007.

                                               /s/David B. Chaffin