# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

In re: NEURONTIN MARKETING, SALES PRACTICES,
AND PRODUCTS LIABILITY LITIGATION

---

THIS DOCUMENT RELATES TO:

MDL Docket No. 1629

---

HARDEN MANUFACTURING CORPORATION;
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,
dba BLUECROSS/BLUESHIELD OF LOUISIANA;
INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL
52 HEALTH BENEFITS TRUST; GERALD SMITH; and
LORRAINE KOPA, on behalf of themselves and all others
similarly situated, v. PFIZER INC. and WARNER-LAMBERT
COMPANY.

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

---

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC. and

AETNA, INC. v. PFIZER INC.

---

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In re: NEURONTIN
PRODUCT LIABILITY LITIGATION

Index No. 765000/06

THIS DOCUMENT APPLIES TO:

Hon. Marcy S. Friedman

ALL CASES

---

## DEFENDANTS' AMENDED NOTICE OF 30(b)(6) DEPOSITION OF AETNA, INC.

**PLEASE TAKE NOTICE** that pursuant to Rule 30 of the Federal Rules of Civil Procedure, Defendants Pfizer Inc. and Warner-Lambert Company LLC, by and through their counsel, will take the testimony by deposition upon oral examination, before a person authorized to administer oaths, of Plaintiff Aetna, Inc. ("Aetna").

The deposition of Aetna 30(b)(6) designee Susan Scheid will be taken on July 24 and July 25, 2007, at Benchmark Reporting, 501 Marquette Ave, Ste. 1404, Minneapolis, MN, 55402, 612-338-3376 beginning at 9:00 am. The deposition will be recorded by stenographic means and videotaped by Benchmark Reporting, located at 501 Marquette Ave, Ste. 1404, Minneapolis, MN, 55402. Defendants provide notice to Plaintiffs that such deposition may be used at the time of trial.

The deposition of Aetna 30(b)(6) designee Michael Brodeur will be taken on July 26 and July 27, 2007, at Brown & Gallo Reporting, 1740 Peachtree Street NW, Atlanta, GA, 30309 beginning at 9:00 am. The deposition will be recorded by stenographic means and videotaped by Brown & Gallo Reporting, located at 1740 Peachtree Street NW, Atlanta, GA, 30309. Defendants provide notice to Plaintiffs that such deposition may be used at the time of trial.

Pursuant to Federal Rules of Civil Procedure 30(b)(6), Aetna's designees are to testify to the topics set forth in Schedule A. You are invited to attend and to participate in the manner provided for in the Federal Rules of Civil Procedure.

Dated: July 13, 2007

PFIZER INC., et uno,

By their attorneys,

*[signature]*
Scott W. Sayler

2546100v1

Nicholas P. Mizell
SHOOK, HARDY & BACON, LLP
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Fax: (816) 421-5547

-and-

David B. Chaffin
BBO No. 549245
HARE & CHAFFIN
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of July, 2007, I caused to be served a true and correct copy of the foregoing Amended Notice of 30 (b)(6) Deposition of Aetna, Inc. by email PDF and U.S. Mail, postage prepaid to:

Gerald Lawrence, Esq.
Lowey Dannenberg Bemporad & Selinger, P.C.
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
T: 914-997-0500
F: 914-997-0035

*Attorneys for Plaintiff Aetna, Inc.*

Thomas M. Sobol, Esq.
Hagens Berman Sobol Shapiro, LLP
One Main Street, 4th Floor
Cambridge, MA 02142
T: 617-482-3700
F: 617-482-3003

*Attorneys for Plaintiff Harden Manufacturing
Corporation and Plaintiffs' Liaison Counsel*

Andrew G. Finkelstein, Esq.
Finkelstein & Partners
436 Robinson Avenue
Newburgh, NY 12550
T: 845-562-0203
F: 845-562-3492

Jack W. London, Esq.
Law Offices of Jack London & Associates, P.C.
3701 Bee Caves Road, Suite 200
Austin, TX 78746
T: 512-478-5858
F: 512-479-5934

*Members of the Products Liability Plaintiffs'
Steering Committee*

2546100v1

Ronald J. Aranoff, Esq.
Bernstein, Liebhard & Lifshitz, LLP
10 East 40th Street, 22nd Floor
New York, NY 10016
T: 212-779-1414
F: 212-779-3218

*Attorneys for the Sales and Marketing Plaintiffs*

                                         _____
                                         ATTORNEY FOR DEFENDANTS
                                         PFIZER INC. AND WARNER-LAMBERT
                                         COMPANY LLC

2546100v1

## SCHEDULE A

### DEFINITIONS AND INSTRUCTIONS

1. The definitions contained in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts are incorporated herein by reference. Additionally, the following definitions apply.

2. "Plaintiff" or "Kaiser Hospitals" shall mean Kaiser Foundation Hospitals and any of its past or present trustees, officials, officers, fiduciaries, third-party administrators, representatives, assigns, employees, divisions, departments, directors, executives, predecessors or successors in interest, offices, subsidiaries, and affiliates.

3. "You" or "your" means Kaiser Hospitals.

4. "Pfizer" shall mean defendant Pfizer Inc. and any of its predecessors, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, or employees, including, but not limited to, Warner-Lambert and Parke-Davis, as a division of Warner-Lambert Company.

5. "Warner-Lambert" shall mean Warner-Lambert Company LLC and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, or employees, including, but not limited to, Parke-Davis, as a division of Warner-Lambert Company.

6. "Parke-Davis" shall mean Parke-Davis, a division of Warner-Lambert Company, and any of its predecessors or successors in interest, divisions, offices, subsidiaries, affiliates, and any present or former directors, officers, executives, trustees, or employees.

4

7. "Complaint" shall mean the Third Coordinated Amended Complaint, filed on December 22, 2006 in connection with MDL Docket No. 1629, Civil Action No. 04-10981-PBS, in the United States District Court for the District of Massachusetts.

8. "Action" shall mean the proceeding pending in the United States District Court for the District of Massachusetts captioned *In re Neurontin Marketing, Sales Practices, and Products Liability Litigation*, 04-10981-PBS.

9. "Neurontin" shall mean the drug with the chemical name gabapentin, and shall include both the product marketed under the name Neurontin as well as generic gabapentin.

10. "Third-party payor" shall mean a non-governmental entity that is at risk, pursuant to a contract, policy, or plan providing prescription drug coverage to natural persons, to pay or reimburse the amount or some part of the amount associated with the cost of prescription drugs to those natural persons covered by such contract, policy, or plan.

11. The term "covered individual" shall include the terms "participant," "beneficiary'" and "policy holder," and means persons for whom the Plaintiff provides health care benefits, health insurance coverage, and/or provides prescription drug benefits, including any covered dependents or household covered person of such persons.

12. The term "provider" shall mean any physician, hospital, medical or health professional, pharmacy, or other person or entity that provides medical care.

13. The term "benefit plan" shall mean the written document detailing a covered individual or group's insurance or benefit coverage, and shall include the terms "certificate of coverage," "certificate of insurance," "evidence of coverage," and "summary plan description."

5

14. The term "policy" shall mean the written document issued by a third-party payor to the policy owner, representing the written contract between the third-party payor and the policy owner, and describing the term, coverage, premiums, and deductibles.

15. The term "drug," unless otherwise indicated, shall mean a substance used in the diagnosis, treatment, or prevention of a disease or as a component of a medication, and shall include both prescription and non-prescription drugs.

16. The term "off-label" shall mean prescription, use, or promotion of a drug for indications or at dosages different from those set forth in a drug's labeling.

17. The term "claim" shall mean notification to an insurance company requesting payment of an amount due under the terms of the policy.

18. The term "formulary" shall mean the list of prescription drugs covered under a benefit plan or policy, as well as any written or electronic materials that accompany that list, including but not limited to preferred drug lists, tiered drug lists, information about co-payments, and information about FDA-approved and off-label uses.

19. "DRUGDEX" shall mean the proprietary reference service or product sold, licensed, or marketed by MICROMEDEX under the name DRUGDEX®.

20. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

21. "Any" includes the word "all" and vice-versa.

22. "Communication" shall have the meaning set forth in Local Rule 26.5, and includes the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

23. "Concerning" shall have the meaning set forth in Local Rule 26.5, and includes referring to, describing, evidencing, or constituting.

24. "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure and Local Rule 26.5, and includes all forms of writings as defined in Rule 1001(1) of the Federal Rules of Evidence, and includes any reduction to tangible form, whether written, recorded, taped, filmed, videotaped, or in computer, digital, or magnetic memory or storage, of communication, information, or data, including any graphic matter of any kind or nature, however produced or reproduced, and also includes originals, drafts, and non-identical copies, wherever located. "Document" shall include, but not be limited to, books, contracts, agreements, correspondence, electronic mail (email), computer tapes, discs, magnetic memory, printouts and keypunch cards, memoranda, diaries, notes, reports, bulletins, printed forms, telegraphic communications, pleadings or other legal papers, telexes, telegrams, telecopies, facsimile reproductions (faxes), factual compilations, data compilations, statistical compilations, plans, diagrams, journals, change orders, studies, surveys, sketches, art work, graphics, checks, ledgers, catalogues, brochures, pamphlets, press releases, advertisements, invoices, minutes, photographs, microfilms, microfiche, films, personnel files, quotes, stenographic notes, computer disks, telephone records, schedules, bids, voice recordings, and transcriptions. This definition shall apply to all document in the possession, custody, or control of Kaiser Hospitals or that of its attorneys, agents, employees, officers, directors, or representatives, irrespective of who generated, prepared, or signed the documents.

25. "Meeting" shall mean any formal or informal assembly, convocation, encounter or contemporaneous presence of two or more Persons for any purpose and shall include telephone conferences and calls.

26. "Person" or "Persons" shall mean any individual, corporation, organization, association, partnership, limited partnership, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

27. "Relating to" shall mean concerning.

B. <u>TOPICS</u>

Each Topic encompasses the years from 1990 through the present.

1. Your policies and practices concerning payment or reimbursement of claims for drug prescriptions generally, including: (a) claims processing and payment; (b) plan administration; (c) the use and content of formularies; (d) network contracting; (e) prior authorization; (f) drug utilization review and disease management; (g) academic detailing; and (h) claims for drug prescriptions for an off-label use.

2. Your policies and practices concerning Neurontin, including: (a) payment or reimbursement of claims for Neurontin for off-label uses; (b) payment or reimbursement of claims for Neurontin for particular off-label uses; (c) the inclusion, maintenance, and removal of Neurontin on any formulary used, including any limits on Neurontin's coverage; (d) disease management and drug utilization review relating to Neurontin; (e) prior authorization programs relating to Neurontin; and (f) academic detailing relating to Neurontin.

8

3.  The names of all persons, business units, or entities (including third parties) that were responsible for supervising or implementing the policies and practices discussed in Topics 1 and 2.

4.  Your record retention policies and systems for hard copy and electronic documents relating to the policies and practices discussed in Topics 1 and 2.

5.  Any policies or practices that you had, and any determinations or efforts that you made, not to pay or reimburse for, or to limit payment or reimbursement of, claims for drug prescriptions for off-label uses generally and Neurontin specifically.

6.  Any policies or practices that you had relating to cost containment techniques, including but not limited to academic detailing, drug utilization review, drug limitations or quantity limits, prior authorization, or formulary management for prescription drugs generally and Neurontin specifically.

7.  Any analysis that you or your representatives or agents, including your third-party administrator(s) and pharmacy benefit manager(s), performed regarding whether Neurontin provides a medical benefit to patients who take it at off-label dosages or for pain, post-herpetic neuralgia, restless leg syndrome, diabetic peripheral neuropathy, social phobia, panic disorder, migraine headache, monotherapy for epilepsy, bipolar disorder, or any other off-label uses.

8.  Any conclusions or views that you or your representatives or agents, including your third-party administrator(s) and pharmacy benefit manager(s), have or had regarding whether Neurontin provides a medical benefit to, and may appropriately be prescribed by physicians for, patients who take it at off-label dosages or for pain, post-herpetic neuralgia,

restless leg syndrome, diabetic peripheral neuropathy, social phobia, panic disorder, migraine headache, monotherapy for epilepsy, bipolar disorder, or any other off-label uses.

9. Any information that you have or had regarding whether any of your Members who took Neurontin for an off-label use or at an off-label dosage received or failed to receive any benefit from the drug.

10. Any communications that you had with your third-party administrator(s), your pharmacy benefit manager(s), or any other persons or entities regarding Neurontin.

11. Any communications that you had with your Members regarding Neurontin or off-label uses of medications.

12. Any information that you have regarding what the uses were for Neurontin prescriptions for which you are seeking recovery.

13. Any communications that you or any entity on your behalf had with Defendants regarding Neurontin or other prescription drugs.

14. Any information that you have regarding whether the Neurontin prescriptions for which you are seeking recovery were written as a result of the alleged off-label promotion.

15. Any information that you have regarding whether the alleged off-label promotion of Neurontin was fraudulent.

16. Any information that you have regarding each of the allegations in the Third Coordinated Amended Complaint.

17. When and how you first learned the alleged facts set forth in the Third Coordinated Amended Complaint and any efforts that you undertook, before you learned about these supposed facts, that would have led to their discovery.

18. The damages that you are seeking in this action and the basis for your calculation of those damages.

19. All efforts that you have taken to mitigate your damages, including any new procedures or practices that you adopted.

20. Any information that you have regarding the civil action *United States of America ex rel. David Franklin v. Parke-Davis, et al.*, C.A. No. 96-11651-PBS (D. Mass.) or any government investigation into the off-label use or promotion of Neurontin.

21. Your organizational structure.

22. All efforts that you made to identify and produce documents responsive to each numbered request in the Defendants' First Request for the Production of Documents to Plaintiff Kaiser Foundation Hospitals, dated May 2, 2005, including but not limited to the production of Neurontin prescription drug claims data.

23. Any information that you have regarding the issues raised by Defendants' Second Set of Interrogatories to Plaintiff Kaiser Foundation Hospitals, dated March 13, 2007, and plaintiff's responses thereto, dated April 12, 2007.