# EXHIBIT E

**Mizell, Nick P. (SHB)**

---

**From:** Mizell, Nick P. (SHB)
**Sent:** Thursday, September 06, 2007 1:47 PM
**To:** 'Gerald Lawrence'
**Cc:** Macer, Pam (SHB); 'Rowland, Matthew B.'
**Subject:** Document Production and Designation of Witnesses by Aetna

Gerry, as we discussed at times during the depositions of Aetna's 30(b)(6) designees, there are documents that remain to be produced and designations that remain to be made by Aetna in response to our written discovery and deposition notices. Please confirm today that Aetna will produce the documents and designees outlined below. We will otherwise file an appropriate motion to compel as provided for in Discovery Order 13.

In the first instance, Aetna has yet to designate anyone to testify as to topics 11 or 23 in the 30(b)(6) deposition notice, which relate to communications Aetna had with its Members regarding Neurontin or off-label uses of medication and information regarding the issues raised in Defendants' Second Set of Interrogatories and Aetna's responses thereto. Furthermore, though they were designated to testify on behalf Aetna regarding communications Aetna had with other persons or entities regarding Neurontin and efforts made by Aetna to identify and produce documents responsive to Defendant's First Request for Production of Documents, neither Susan Scheid nor Michael Brodeur were prepared to do so. Aetna needs to prepare and produce a designee or designees in response to these areas of inquiry.

The depositions also highlighted categories and collections of documents that need to be searched and produced in response to our Request for Production of Documents. For example, while the witnesses testified to the regular and substantive use of email, not a single email has been produced by Aetna. The emails of the officers and employees of Aetna Pharmacy Management (APM) and Aetna's Medical Related Products business unit, both inbound and outbound, need to be searched for references to Neurontin, gabapentin, and the off-label use of any other anticonvulsant, and any such emails need to be produced as soon as possible.

Similarly, no production has been made of any documents or records from "Aetnet" (Aetna's intranet) or the external or public websites maintained or controlled by Aetna. Documents currently or previously contained or made available through these sites with any references to Neurontin, gabapentin, or the off-label use of any other anticonvulsant need to be produced.

Aetna has not produced any documents related to correspondence to or from, calls to or from, or newsletters sent to medical providers or members. Any such records or documents regarding Neurontin, gabapentin, or the off-label use of prescription drugs need to be produced. See, e.g., Brodeur deposition at 17-18, 62, 136-37.

Only a few pages of minutes of P&T committee meetings and meeting-related materials have been produced. Please either verify that no other minutes or meeting-related materials refer or relate to Neurontin or gabapentin or produce the remaining minutes and materials that refer or relate to Neurontin or gabapentin. Aetna likewise needs to produce agendas, pre-meeting materials, minutes and correspondence among the members of the PQAC (Pharmacy Quality Advisory Committee) that reference or relate to Neurontin or Gabapentin. See, e.g., Brodeur at 191-192. Relatedly, please produce any hand-written notes or other records of APM employees discussing or related to any consideration of or efforts to manage the anticonvulsant class of drugs. See, e.g., id. at 37, 75.

During his deposition, Brodeur referred to Aetna preparing, updating and using a "drug review" concerning the anticonvulsant class of drugs. Id. at 50. Please produce previous and current versions, both draft and final, of this drug review and any correspondence, records or documents related to, referring to, or considered when developing such drug reviews.

11/13/2007

Brodeur also testified that Aetna subscribed to numerous, and maintained a library of, journals and other periodicals as a reference source for developing its formulary and prescription drug coverage policies. Please produce a list of the print and electronic journals, newsletters, newspapers, magazines, compendia and any other periodicals publications subscribed to or collected by Aetna from 1994 to the present. See, e.g., id. at 26-27, 41, 198.

Please also produce all internal and external, draft and final, Pharmacy Clinical Policy Bulletins and any related FAQ documents that mention Neurontin or gabapentin from 1994 to the present, as well as any hard-copy and electronic files of employees who authored, supplemented or revised these bulletins that refer or relate to Neurontin or gabapentin. Please also produce Aetna's formularies from 1994 to the present. See, e.g., id. at 153, 160, 162.

Please produce position-specific organizational charts for Aetna Pharmacy Management and Medical Related Products from 1994 to the present along with documents that identify persons that held these positions during this time frame. This would include, but not be limited to, the financial, manufacture contracting, pre-certification, clinical program, customer service, communications, account management, formulary development, formulary implementation, claims adjudication, and "Aetna warehouse" business units, groups or divisions, and the current and former members of the P&T committee and its previous functional equivalents. See, e.g., id. at 59, 68, 70, 85-86.

To the extent not already provided, please produce all documents and records related to rebates invoiced or received by Aetna for Neurontin. Please also produce the appendices to Aetna's Universal Pharmacy File Data Dictionary.

Moreover, in numerous responses to our Request of Production of Documents, Aetna stated that it would provide documents in response. In nearly all such instances, however, no such documents have been produced. Please either produce these documents or provide responses describing the efforts undertaken to locate such documents and certifying that no such documents exist. See, e.g., Responses 4-9, 11-13, 14, 16, 17, 19, 20, 21, 22, 25, 27, 33, 35, 38, 39, 40, 42, 49, 53, 66, 74, 75, 76, 79, 82, 83, 85, 88, 89, 91.

Finally, with respect to Aetna's responses to our First Set of Interrogatories, the November 2, 2005 letter of Patrick Murray identified several deficiencies and requested that Aetna provide complete responses. Please provide complete responses and produce the documents referred to in your responses to Interrogatories 2, 3, 9, 10, 11, 13, 15 and 19.

Thank you,

Nick.


Nicholas P. Mizell
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550 (main)
(816) 559-2329 (direct)
(913) 579-2775 (cell)
(816) 421-2708 (fax)

11/13/2007