UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND ) <br> SALES PRACTICES LITIGATION ) <br> _____ ) <br> THIS DOCUMENT RELATES TO: ) <br> _____ ) <br> THE GUARDIAN LIFE INSURANCE ) <br> COMPANY OF AMERICA v. ) <br> PFIZER, INC., and ) <br> ) <br> AETNA, INC. v. PFIZER, INC. ) <br> _____ ) | MDL Docket No. 1629 <br><br> Master File No. 04-10981 <br><br> Judge Patti B. Saris <br><br> Magistrate Judge Leo T. Sorokin |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF KAISER'S CROSS-MOTION FOR AN ORDER UNDER RULES 26(b)(2)(C) AND 26(c)**

Linda P. Nussbaum, Esq.
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, New York 10022
Tel. No.: (212) 687-1980

*Counsel for Kaiser Foundation
Hospitals and Kaiser Foundation
Health Plan, Inc.*

I.  **INTRODUCTION**

Plaintiffs Kaiser Foundation Hospitals and Kaiser Foundation Health Plan, Inc. (together "Kaiser"), by and through their counsel, hereby submit this reply memorandum of law in support of their cross-motion for an order under Rules 26(b)(2)(C) and 26(c) requiring Defendants Pfizer Inc. and Warner-Lambert Company (together "Defendants") to submit any further inquiries on Topic 2 of their twenty-three part 30(b)(6) notice, through interrogatories or written deposition questions.[1]

Defendants' opposition continues the pattern in which they have sought discovery from Kaiser in this action. Enough is never enough. Their desires and demands are moving targets that continue to escalate. Their opposition is replete with new purported "deficiencies" in the testimony of Kaiser's 30(b)(6) witnesses. Defendants now for the first time raise issues concerning Al Carver's two day deposition, which took place over four months ago. In so doing, Defendants attempt to distract the Court from Kaiser's cross-motion, misstate the record and confuse the issues that are relevant to this motion.

Kaiser has in good faith fulfilled its discovery obligations by producing <u>three</u> knowledgeable 30(b)(6) witnesses to testify concerning all of Defendants' noticed topics. These three witnesses (who testified over the course of four days) had both personal knowledge as well as knowledge obtained through preparation by counsel.[2] Kaiser has in good faith produced these witnesses concerning all of Defendants' noticed topics, many of which were extremely broad. Kaiser has also agreed to supplement its 30(b)(6)

---

[1]    To date, Kaiser has produced six witnesses in this action. Each of these witnesses has traveled to New York from California to be deposed in the city of Defendants' choice at their convenience.

[2]    These depositions have been cut short despite the fact that they had originally been scheduled for two days. The start times have also been delayed on account of Defendants' lack of preparedness and the multiple breaks that Defendants took at these depositions so they could get their documents and exhibits in order. Nevertheless, at each deposition, counsel for Kaiser has accommodated these delays.

1

depositions via written interrogatory-style responses.[3] Thus, Kaiser has not only fulfilled its discovery obligations, it has in fact exceeded those obligations. Defendants' complaints are just part of their continued pattern of shifting demands of Kaiser and delay of their own discovery obligations. We note that Defendants' first 30(b)(6) witness with respect to Third Party Payor issues has not yet even been produced despite months of efforts by Plaintiffs.

The relief sought by Defendants for fees and costs is only granted in extremely limited circumstances where courts have found that a party has acted in bad faith, which Defendants cannot show here. Instead, Kaiser has produced knowledgeable 30(b)(6) witnesses and accommodated Defendants where their requests have been reasonable in an attempt to avoid unnecessary motion practice. Kaiser has also supplemented its 30(b)(6) testimony, as it offered to do when Defendants unexpectedly raised these issues at the 30(b)(6) deposition of Mirta Millares, by obtaining information concerning the formulary changes to Neurontin for each of its non-California regions and Neurontin-related initiatives. This supplemental information is attached hereto. *See* Elizabeth F. Villaluz Declaration dated November 16, 2007 (hereinafter "Villaluz Decl.").

Nevertheless, to the extent that this Court deems Kaiser's good faith efforts have not provided Defendants with all the relevant information which they rightfully seek, Kaiser respectfully requests that the Court grant its cross-motion for an order under Rules 26(b)(2)(C) and 26(c) requiring Defendants to submit any further inquires concerning Topic 2 through interrogatories or written deposition questions.

---

[3]     In addition, Kaiser has produced over 20,000 pages of documents and has timely supplemented discovery responses as necessary.

2

II. **KAISER HAS FULFILLED ITS DISCOVERY OBLIGATIONS BY PRODUCING IN GOOD FAITH THREE WITNESSES TO TESTIFY CONCERNING TOPICS THAT WERE WITHIN THE AGREED UPON SCOPE OF DEFENDANTS' 30(B)(6) DEPOSITION NOTICE**

A. **Kaiser's 30(b)(6) Witnesses Had Personal Knowledge and were Adequately Prepared**

Defendants state that Kaiser failed to prepare its witnesses as a result of its "indifference to its discovery obligations." Defendants' Memorandum of Law in Opposition to Kaiser's Cross-Motion for an Order under Rules 26(b)(2)(C) and 26(c) (hereinafter "Defs' Opp. Mem.") at 3. This contention is patently absurd given Kaiser's discovery efforts and the accommodations it has provided to Defendants to date. In fact, as set forth in great detail in Kaiser's cross-motion, the 30(b)(6) witnesses produced by Kaiser were knowledgeable and adequately testified regarding Defendants' noticed topics.[4] Counsel for Kaiser spent many hours preparing these witnesses in person and on the telephone, and their testimony was based on information they learned in preparation for their depositions, as well as based on their own personal knowledge. *See* Kaiser's Memorandum of Law in Support of Cross-Motion for an Order under Rules 26(b)(2)(C) and 26(c) (hereinafter "Kaiser's Cross-Motion Mem.") at 3-4, 7, & 9; *See also* Linda P. Nussbaum Declaration, dated November 2, 2007 (Dkt # 937) at ¶7&10. Mr. Carver and Dr. Millares have both served on Kaiser's P&T Committee. *See* Kaiser's Cross-Motion Mem. at 4 & 6. Together, they possess over forty years experience at Kaiser. *Id.* Such experience is highly relevant to most if not all of the noticed topics.

---

[4] As for Topic 2, Kaiser agreed to produce two additional witnesses to testify concerning this topic, including information that Defendants had previously not asked for. In addition, Kaiser agreed to supplement the witnesses' testimony through written responses. Nevertheless, Defendants' Opposition responds less to the arguments made by Kaiser regarding Topic 2 and instead, focuses on new issues that are inappropriately raised by Defendants at this late stage.

3

### B. Defendants Cannot Raise New "Deficiencies" More Than Four Months After Mr. Carver's Deposition

In their opposition, Defendants for the first time raise various purported "deficiencies" in Mr. Carver's testimony. Mr. Carver is currently Vice President of Pharmacy Strategy and Operations. *See* Kaiser's Cross-Motion Mem. at 4. He testified for two full days, July 12 and 13, 2007, and he was only questioned by one attorney, Rajesh James, counsel for Defendants. Defendants attempt to distract the Court by making entirely baseless and disingenuous arguments. The fact that Defendants raise these issues only now, more than four months after Mr. Carver's deposition, demonstrates not only that their initial grounds for requesting relief are meritless, but that these complaints could not in any event justify the extraordinary relief they seek.

Defendants now state that Mr. Carver's testimony concerning nineteen of its twenty-three topics was "inadequate and uninformative." *See* Defs' Opp. Mem. at 7. It is entirely inappropriate for Defendants to raise these "deficiencies" at this time. Defendants did not raise these concerns at Mr. Carver's deposition, or just after his deposition in follow-up correspondence, or in subsequent meet-and-confers. It is only now, at the eleventh hour and after Kaiser reasonably filed its cross-motion, that Defendants choose to raise these issues. Furthermore, Defendants do so in a way that gives the impression that they did Kaiser a favor by not raising these issues sooner. Defendants state that they did not raise these issues initially as an "effort[] at accommodation". *See* Defs' Opp. Mem. at 6. Clearly, these matters are not ripe for

resolution by the Court and must be viewed as a blatant effort to sandbag an adversary.[5] Since Defendants have raised the issues, we respond as follows.

In the meet-and-confers preceding Mr. Carver's deposition, Kaiser timely objected to most of the topics to which Defendants now claim Mr. Carver did not provide sufficient testimony. Kaiser had objected to these topics on the grounds that they were overly broad, irrelevant and called for expert testimony. *See* Letter from Aviah Cohen Pierson to Matthew B. Rowland dated May 14, 2007 (attached as Exhibit B to the Declaration of Rajesh S. James, dated Oct. 24, 2007 [hereinafter "James Decl."]). Furthermore, at the deposition, Defendants asked questions which were speculative and called for such expert testimony. Given that Mr. Carver is not a lawyer or an expert witness, he did the best he could in responding to these questions. Contrary to Defendants' statements, Mr. Carver adequately testified concerning these topics, to the extent he could.

Defendants state that Mr. Carver "professed ignorance of the uses of Neurontin for which Kaiser is seeking recovery", "the damages that Kaiser seeks from defendants in this action" and the "evidentiary basis for key allegations of the [complaint]". *See* Defs' Opp. Mem. at 7. Defendants unfairly characterized Mr. Carver's testimony regarding the allegations Kaiser made in this lawsuit as well as the damages sought by Kaiser (Topics 12, 14, 15, 16 and 18). While Mr. Carver is not an attorney, or a damages or liability expert, he was generally familiar with the operative complaint and the off-label uses for which Kaiser seeks damages:

Q. Are you familiar with the uses for which Kaiser is seeking damages?

---

[5] This is just the type of behavior that Local Rule 7.1(a)(2) (requiring the parties to meet-and-confer prior to filing a motion) is designed to avoid.

5

> A. Generally; yes.
>
> Q. Can you list those uses? If it would be helpful to have a copy of the Complaint, I can mark the Complaint as an exhibit.
>
> A. Oh, that would be very helpful.
>
> (Kaiser-3 marked for identification.)
>
> Q. Do you recognize this document?
>
> A. Yes, I do.
>
> Q. And what is it?
>
> A. What this represents in my lingo, and perhaps not legal lingo, would be the Complaint against Pfizer regarding Neurontin and its marketing practices and off-label use regarding off-label use and the – the deceit and fraud and all that that occurred in influencing doctors to prescribe Neurontin for indications that were far beyond what it was intended for.

*See* Albert L. Carver Deposition Transcript, taken on July 12 & 13, 2007 (hereinafter "Carver Tr.") at 87:2-20 (attached as Exhibit 1 to the Declaration of Rajesh S. James, dated July 27, 2007 [Dkt #808]).

Mr. Carver also adequately testified concerning whether Neurontin is effective for off-label indications (Topics 7, 8 and 9) and the influence of Defendants in Kaiser's decision making pertaining to Neurontin-related formulary decisions (Topic 15):

> Q. When we last went off the record, we were discussing the P&T Committee's decision in 1997 to expand the restriction of Gabapentin to include RSD, and I believe you had stated that Kaiser today might or would regard that decision as questionable, is that correct?
>
> A. That's correct.
>
> Q. Is it might or would?
>
> A. Would.
>
> Q. Why would that decision be regarded as questionable by Kaiser today?

> A. It would be regarded as questionable because of this, the RSD basically being a collection of various pains that required treatment basically for which I think if we look at the evidence today, there was – there's little evidence that this product would be effective in some of these indications, and I believe that – that in seeking approval for a more general use of Neurontin, that the anesthesiologists were likely influenced by the information that was available in the marketplace regarding the marketing and other activities that had taken place to persuade people of the effectiveness of the use of Neurontin in pain. And so looking back today, I think that a different decision would be made.

*Id.* at 110:8-111:9.

These are just a few examples of the information Mr. Carver provided during his two full days of deposition. He was adequately prepared to testify concerning each of the topics in Defendants' noticed topics. Defendants misstate the record and raise deficiencies that they have never raised before. If Defendants actually believed Mr. Carver was not prepared to testify concerning these additional topics, there is no doubt they would have raised these issues sooner.

### III. DEFENDANTS' BROAD AND CHANGING INTERPRETATION OF TOPIC 2

Defendants also state in their opposition that they did not have a changing perspective of what Topic 2 included. *See* Defs' Opp. Mem. at 4. That is simply not the case. The correspondence between Kaiser and Defendants concerning the scope of the continued 30(b)(6) deposition on Topic 2, as well as Defendants' questions at the continued deposition, reflect that Defendants did have an evolving understanding of the breadth of Topic 2, to which Plaintiffs did not agree. Based on the letters and questions asked at the continued 30(b)(6) depositions, Defendants' changing interpretation pertained to: (1) geographic scope of the topic to include Kaiser's non-California regions; (2) the relevant time period; and (3) matters that were clearly outside the scope of a topic concerning "policies and practices" pertaining to Neurontin.

As to the geographic scope of the topic, counsel for Kaiser were not told until Dr. Millares' deposition that Defendants expected her testimony would include information concerning Kaiser's non-California regions.[6] *See* Kaiser's Cross-Motion Mem. at 7-8 & Nussbaum Decl. at ¶8. As to relevant time period, it was only after Dr. Millares' deposition that Defendants sought certain information prior to 1999. Furthermore, it was only at Dr. Millares' deposition that Kaiser learned that Defendants' interpretation of Topic 2 included information not just about Neurontin, but other drugs as well (which clearly is outside the scope of Topic 2). *See* Kaiser's Cross-Motion Mem. at 7. Finally, in their October 3, 2007 letter, Defendants raised additional information they sought from the designated 30(b)(6) witness. In that letter Defendants stated that they sought testimony concerning "how [the drug utilization programs] have assessed their progress toward their respective objectives and the information on which they have based those assessments." *See* Letter from Rajesh S. James to Linda Nussbaum dated October 3, 2007 (attached as Exhibit K to James Decl.) at 2. This was never discussed, nor was it our understanding that Topic 2 would encompass those issues, as stated in our letter dated October 4, 2007. *See* Letter from Linda P. Nussbaum to Rajesh S. James dated October 4, 2007 (attached as Exhibit L to James Decl.) at 1.

---

[6] In an attempt to further distract the Court, Defendants argue that Kaiser has misrepresented its document collection efforts related to its non-California regions. *See* Defs' Opposition at 1&12. Defendants do so by pointing to Justine Kaiser's declaration dated January 20, 2006. At the time that declaration was submitted, Ms. Kaiser was no longer working at Cohen, Milstein, Hausfeld & Toll, P.L.L.C. (counsel for Kaiser at that time). The information she provided was based on her best recollection at that time as well as her review of attorney work product. In addition, those statements were made several months after the document collection efforts had been undertaken. Nevertheless, since that time, a further review of the documents from Kaiser's non-California regions has been undertaken and production of documents from those regions is substantially complete.

### IV.  CONTINUED 30(B)(6) DEPOSITION IS UNNECESSARY

Defendants' insistence that a <u>fourth</u> Kaiser witness provide 30(b)(6) testimony concerning Topic 2 is wholly unnecessary. As stated in its cross-motion, Kaiser has been diligently requesting information from each of its non-California regions concerning the formulary changes and initiatives related to Neurontin. *See* Kaiser's Cross-Motion Mem. at 9-10 & Nussbaum Decl. at ¶12. To date, Kaiser has obtained information responsive to Defendants' questions concerning changes to the formulary status of Neurontin as well as Neurontin-related initiatives at these regions.[7] *See* Villaluz Decl. at ¶4-36. The information in the attached declaration provides detailed factual information concerning the dates and circumstances surrounding the changes on each region's formularies concerning Neurontin. The declaration also provides details about the dates (if any) that each region implemented Neurontin-related initiatives. This is just the sort of information that Defendants sought at the 30(b)(6) deposition of Mitchell Cohen. Thus, despite the fact that these topics were unexpected, counsel for Kaiser has, as offered, obtained the information. Given that Defendants now have the information they seek by way of further deposition testimony, a fourth 30(b)(6) deposition is not necessary.

In addition, as further argued in Kaiser's cross-motion, Defendants request Kaiser provide a witness (or several witnesses) to provide information by way of oral deposition testimony regarding factual details that are better presented in written form. Rule 30(b)(6) is not "designed to be a memory contest." *Equal Employment Opportunity Comm'n v. Am. Int'l Group*, No. 93 Civ. 6390, 1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994) (denying motion to compel a further 30(b)(6) deposition on facts otherwise

---

[7]  Responsive information pertaining to Neurontin from Kaiser's Mid-Atlantic region has been difficult to obtain because most of the records are not in electronic form. *See* Villaluz Decl. at ¶15.

available within a produced investigative file). Given the nature of the information Defendants seek, and the declaration that is being submitted along with this reply, a continued 30(b)(6) deposition on Topic 2 is wholly unnecessary. However, to the extent that the Court believes further information is needed, Kaiser requests that such information be provided through written responses.

## V.   THE INFORMATION SOUGHT BY DEFENDANTS IS NOT CRUCIAL TO THEIR DEFENSE

Defendants state that the testimony they seek is essential to their defense because it will establish that: (1) Kaiser's "highly trained physicians and pharmacists, fully informed of the allegedly withheld studies" have concluded that Neurontin can be effective for off-label indications; and (2) Kaiser cannot rely on industry-wide data to determine its Neurontin utilization. *See* Defs' Opp. Mem. at 15. This testimony sought by Defendants is not crucial for either of these two reasons (or any other reasons).

First, Defendants imply that Kaiser's physicians (who are not controlled by Kaiser) and pharmacists knew more than other physicians and medical practitioners, but that is simply not the case. Kaiser was just as much a victim of Defendants' fraud as any other plaintiff in these actions. Kaiser knew the same information that had been disseminated about Neurontin by the Defendants. Kaiser physicians were detailed by Defendants. They were subject to the same continuing medical education seminars and publications as other physicians. Thus, Kaiser's determinations were made based on the information, much of it misinformation disseminated by the Defendants, that it knew at the time.

Second, this testimony is not relevant for the determination as to whether Kaiser may rely on the industry-wide data. Kaiser intends to use the industry-wide data and its

10

use of such data has been endorsed previously by Judge Saris. Additional testimony concerning the drug utilization programs that were implemented in Kaiser's various regions does not provide Defendants with information with which to counter this determination.

## CONCLUSION

Kaiser respectfully requests the Court grant Kaiser's request for an Order requiring that any further inquiries on Topic 2 be submitted through written interrogatories or deposition questions.

Respectfully submitted,

Dated: November 16, 2007         By:    /s/ Linda P. Nussbaum
                                        Linda P. Nussbaum, Esq.

                                 Linda P. Nussbaum, Esq.
                                 KAPLAN FOX & KILSHEIMER LLP
                                 850 Third Avenue, 14th Floor
                                 New York, New York 10022
                                 Tel. No.: (212) 687-1980

                                 *Counsel for Kaiser Foundation Hospitals and Kaiser Foundation Health Plan, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3.

ATTORNEY FOR PLAINTIFFS

/s/ Linda P. Nussbaum
LINDA P. NUSSBAUM