# EXHIBIT A



**Finkelstein & PARTNERS**
*Counselors At Law*

A Limited Liability Partnership

(800) 634-1212
Fax: (845) 562-3492
www.lawampm.com

Howard S. Finkelstein, P.C. (NY)
Andrew G. Finkelstein, P.C. (NY & NJ)
George M. Levy (NY)
Kenneth L. Oliver, P.C. (NY)
Joel S. Finkelstein, P.C. (NY, NJ, MA & FL)
Duncan W. Clark (NY)
Ronald Rosenkranz (NY)
Robert J. Camera (NY & NJ)
Joseph P. Rones (NY & FL)
Steven Lim (NY)
George A. Kohl, 2nd (NY & MA)
Eleanor L. Polimeni (NY)
Steven H. Cohen (NY)
Francis Navarra (NY)
Andrew J. Genna, LLM (NY & PA)
Thomas C. Yatto (NY)

Elyssa M. Fried-DeRosa (NY)
Mary Ellen Wright (NY)
Kenneth B. Fromson (NY, NJ & PA)
Joel Bossom (NY)
Nancy Y. Morgan (NY, NJ & PA)
Andrew L. Spitz (NY)
James W. Shuttleworth, III (NY)
Lawrence D. Lissauer (NY)
David E. Gross (NY & NJ)
Terry D. Horner (NY)
Robert F. Mosen (NY)
Julio E. Urrutia (NY)
_____
Debra J. Reissman (NY)
Michael T. McGarry (NY)
Stever P. Shultz (NY & MA)

Victoria Lieb Lightcap (NY & MA)
Ann R. Johnson (NY & CT)
Marshall P. Richer (NY)
Thomas J. Pronti (NY)
Kristina M. Cahill (NY & CT)
Kara L. Campbell (NY & CT)
Arieh Mezoff (NY)
Christopher T. Milliman (NY)
Silvia Fermanian (NY)
Edward M. Steves (NY)
Karen M. Queenan (NY & CT)
Marie M. DuSault (NY)
Glenn W. Kelleher (NY)
Melody A. Gregory (NY & CT)
Gail Schlanger (NY)
Elizabeth A. Wolff (NY & MA)

*Of Counsel*
Jules P. Levine, P.C. (NY & FL)
Michael O. Gittelsohn, P.C. (NY)
Joel A. Reback (NY & Israel)
Sheila Rosenrauch (NY)
Kenneth Cohen (NJ)
Cynthia M. Maurer (NY & NJ)
Raye D. Futerfas (NJ)
Frances M. Bova (NY & NJ)
Kenneth G. Bartlett (CT & NJ)
Ari Kresch (NY & MI)
Gustavo W. Alzugaray (NY & NJ)

*Accredited CLE Provider*

REFER TO OUR FILE #: 200599
October 31, 2007

By Mail and Email

Jim Rouhandeh, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Lori McGroder, Esq.
Shook, Hardy, Bacon, LLP
2555 Grand Blvd.
Kansas City, Missouri 64108

Re:    Neurontin Litigation

Counsel:

Please accept this letter in response to your requests about expert discovery. In particular, this letter pertains to experts Michael Trimble, M.D., Cheryl Blume, Ph.D., and Bentson McFarland, M.D. Additionally, please accept this letter as a request for an update on outstanding discovery issues about which the parties have been conferring.

First, as to Michael Trimble, M.D., we will not produce Dr. Trimble for a deposition absent court order. Additionally, we have been unable to resolve your position that his expert disclosure was deficient. We understand you will be seeking judicial intervention; we will oppose your motion accordingly.

Second, we will not produce Dr. Blume for a deposition outside of the agreed upon dates of November 12th and 13th absent court order. We maintain our position that defense counsel should depose Dr. Blume over the two business days agreed upon by the parties; that plaintiff counsel should be allotted 2 hours of time for re-direct; that should plaintiff counsel not utilize the 2 hours, then defense counsel can utilize the remaining time. At the completion of the two business days, if defense counsel maintains there is good cause to continue the deposition, then the parties can confer on the issue and seek the Court's intervention if necessary.

Third, we stand by our Rule 26 disclosure for Dr. McFarland that the disclosure is not deficient. To the extent you do not depose Dr. McFarland on the agreed upon dates of November 5th and 6th, we will not produce him again absent direction from the Court. His deposition remains scheduled as agreed, and if you do **not** intend to have an attorney present, please confirm same in writing.

Newburgh • Albany • Binghamton • Kingston • Middletown • Monroe • New Windsor • Newark • Port Jervis • Poughkeepsie • Spring Valley • Syracuse • Troy • Utica

436 ROBINSON AVENUE
NEWBURGH, NY 12550

50 PARK PLACE, 10th FLOOR
NEWARK, NJ 07102

Fourth, can you please advise me as to the status of Defendants' production of the **Lester Reich** documents. These documents were the subject of our previous motion in the MDL that was resolved via informal agreement on the eve of the oral argument, and I wrote to you earlier this month seeking an update.

Fifth, can you please advise me as to the status of Defendants' consideration of our request for admissions pertaining to Dr. Atul Pande. Specifically, on October 5, 2007, I wrote to you regarding statements he made at the Third International Conference on Bipolar Disorder, and our intention to seek relief from the Court to serve a request for admissions as to the statements he made at said conference. Since that letter, we conferred via telephone and I provided to you the website address where the audio of Dr. Pande's statements could be found. I have not received any further word from you.

Sixth, please let me know when you are available to confer about compensation/reimbursement to experts as it relates to the parties' depositions. I am informed that defense counsel does not intend to compensate Plaintiffs' experts for their time or preparation for depositions. Plaintiffs take issue with this position and so I would ask that we confer and try to resolve the issue without the necessity of judicial intervention. If Defendants maintain this position, we will have little choice but to file an application for relief.

Seventh, as it pertains to the specific case of *Smith v Pfizer*, I would ask that you confer with me on the number of depositions you intend to pursue. Recently, I was informed that local defense counsel in the case is seeking to depose approximately ten (10) additional fact witnesses. Given our experience with another specific case, *Crone v. Pfizer*, in which Defendants have sought over twenty (20) depositions, we are of the position that the parties should confer about an efficient manner by which to determine a number of witnesses, select and proceed with such depositions.

Finally, with respect to *Smith v. Pfizer*, I would ask that you confer with me as to Defendants' willingness to produce for discovery the identity of the territory manager (sales representative), his/her custodial file, and sales call notes reflecting said territory manager's detailing of the decedent's following healthcare providers:

VA Hospital Pharmacy
1310 24th Ave South
Nashville, TN 37212

Eckerd/Rite Aid
3407 Gallatin Road
Nashville, TN 37216

Eckerd/Rite Aid
700 Gallatin Road
Nashville, TN 37206

Please let me know when you are available to confer on the issues set forth above in the hope that judicial intervention will be unnecessary.

Very truly,

Kenneth B. Fromson

EXHIBIT B

222

1

2                    UNITED STATES DISTRICT COURT

3                      DISTRICT OF MASSACHUSETTS

4     ----------------------------X

5     In re: NEURONTIN MARKETING      MDL Docket No. 1629

6     SALES PRACTICES, AND PRODUCTS   Master File No.

7     LIABILITY LITIGATION            04-10981

8     ----------------------------X

9

10                    VIDEOTAPED DEPOSITION OF

11               MICHAEL ROBERT TRIMBLE, M.D.

12                    New York, New York

13                    October 19, 2007

14                    VOLUME II

15

16

17

18

19

20

21

22    Reported by:
      Bonnie Pruszynski, RMR

23

24

25

223

1
2 STATE OF NEW YORK
3 COUNTY OF NEW YORK
4 ------------------------------x
5 IN RE NEURONTIN PRODUCT
6 LIABILITY LITIGATION      Index Number 765000
7 ------------------------------x
8
9
10
11      VIDEOTAPED DEPOSITION OF
12      MICHAEL ROBERT TRIMBLE, M.D.
13      New York, New York
14      October 19, 2007
15
16
17
18
19
20
21
22
23
24
25

225

1
2 A P P E A R A N C E S:
3 FINKELSTEIN & PARTNERS
   Attorneys for Product Liability Plaintiffs
4      785 Broadway, Third Floor
       Kingston, New York 12401
5 BY:    ANDREW G. FINKELSTEIN, ESQ.
6 JACK LONDON, ESQ.
   Attorneys for Plaintiffs
7      3701 Bee Cave, Suite 200
       Austin, Texas 78746
8 BY:    JACK LONDON, ESQ.
9 THE LANIER LAW FIRM
   Attorneys for Plaintiffs
10      6810 FM 1960 West
        Houston, Texas 77069
11 BY:    KENNETH S. SOH, ESQ.
12 WHEELER TRIGG & KENNEDY, LLP
   Attorneys for Defendant Pfizer, Inc. and the
13 witness
        1801 California Street, Suite 3600
        Denver, Colorado 80202
14 BY:    JAMES E. HOOPER, ESQ.
15
16
   ALSO PRESENT:  Keith Altman, Finkelstein &
17         Partners
           Leigh Raymond, Ph.D., Shook, Hardy
18         and Bacon
19         Charles Taylor, Ph.D.
20         Lee Bowrey, Nationwide Video
21
22
23
24
25

224

1
2
3
4          October 19, 2007
5          9:10 a.m.
6
7
8      Continued deposition of MICHAEL
9 ROBERT TRIMBLE, M.D., held at Lanier Group,
10 126 East 56th Street, New York, New York,
11 before Bonnie Pruszynski, a Notary Public of
12 the State of New York.
13
14
15
16
17
18
19
20
21
22
23
24
25

226

1
2      THE VIDEOGRAPHER:  My name is Lee
3 Bowrey of Veritext Corporate Services.
4      The date today is October 19, 2007,
5 and the time is approximately 9:08 a.m.
6      This deposition is being held in the
7 office of the Lanier Law Firm located at 126
8 East 56th Street, New York, New York.
9      The caption of this case is In Re
10 Neurontin Sales Marketing Practices and
11 Products Liability Litigation in the United
12 States District Court, District of
13 Massachusetts, MDL Docket Number 1629,
14 Master File Number 04-10981, CA number
15 05-11017.
16      The name of the witness is Professor
17 Michael Robert Trimble.
18      This is day two of Professor
19 Trimble's testimony and I would like to
20 remind him that he remains under oath.
21      The court reporter for today is
22 Bonnie Pruszynski.
23      At this time, I would like the
24 attorneys to identify themselves and the
25 parties they represent, after which we can

2 (Pages 223 to 226)

227

1
2    proceed.
3         MR. FINKELSTEIN:  Andrew Finkelstein,
4    Finkelstein and Partners, on behalf of the
5    product liability plaintiffs in the MDL and
6    the Smith family.
7         MR. LONDON:  Jack London on behalf of
8    plaintiff's products liability steering
9    committee.
10        MR. SOH:  Ken Soh, the Lanier Law
11   Firm, for the plaintiffs.
12        MR. ALTMAN:  Keith Altman,
13   non-attorney with Finkelstein & Partners.
14        MR. TAYLOR:  Charles Taylor, Pfizer.
15        MS. RAYMOND:  Leigh Raymond,
16   non-attorney, Shook Hardy and Bacon for
17   Pfizer.
18        MR. HOOPER:  Jim Hooper for Pfizer.
19        Before we get started, I would like
20   to note an objection on the record to the
21   production of the document marked as Exhibit
22   8 yesterday and entitled Professor Michael
23   R. Trimble, M.D. Case List.  Pursuant to
24   Rule 26, I don't think that meets
25   plaintiff's obligations under Rule 26 and

228

1
2    reserve rights to seek appropriate relief
3    under Rule 37.
4    EXAMINATION (Continued)
5    BY MR. HOOPER:
6    Q    Professor Trimble, you have a copy --
7    let me ask you first.
8         You have brought with you a stack of
9    materials to your deposition, I see?
10   A    Correct.
11   Q    May we see those?
12   A    You are welcome to see them.
13   Q    And what are those documents, sir?
14   A    These are the largely, mainly,
15   peer-reviewed papers that I have relied upon in my
16   report.
17        They are also additional
18   peer-reviewed papers that are not in my report,
19   but which helped to confirm my views in my report,
20   and they are here, as an aid memoir, in case you
21   asked me a question that I didn't have a precise
22   answer, that I could refer to them; that's all.
23   Q    Very well.
24        If you could pass those over, we can
25   look through them.  We may have something to ask

229

1
2    on those, maybe not.
3    A    May I keep them with me for the time
4    being?  You are welcome to see them in the break.
5    I might want to look at them within the next hour.
6    Q    Sure, that's fine.
7         Let's look at Exhibit 3.
8    A    Before you start, I have remembered
9    two more people overnight who I have had
10   discussions with.
11   Q    All right.  Who are those?
12   A    Professor -- Professor Bettina
13   Schmitz, S-C-H-M-I-T-Z.
14   Q    And the other?
15   A    Professor Peter Stonier.
16   S-T-O-N-I-E-R.
17   Q    Where is Professor Bettina Schmitz
18   located?
19   A    At the Charite, C-H-A-R-I-T-E.
20   Hospital, Berlin.
21   Q    And what did you discuss with
22   Professor Schmitz.
23   A    Professor Schmitz and I have
24   collaborated on a number of articles and I
25   discussed, in a loose way, whether or not she had

230

1
2    experience with gabapentin and whether she would
3    be surprised if side effects were being reported
4    with this compound.
5    Q    What did she say?
6    A    That she had very little experience
7    with the compound.  She is an epileptologist, by
8    the way, and also a psychiatrist, and that she
9    would not be surprised.
10   Q    Did she comment on -- well,
11   gabapentin is a prescription drug, is it not?
12   A    Yes.
13   Q    All prescription drugs have some
14   adverse effects associated with them?
15   A    We were specifically talking about
16   affect and depression.
17   Q    Did she say she had any patients on
18   gabapentin commit suicide?
19   A    No.
20   Q    Did she say she had any patients on
21   gabapentin attempt suicide?
22   A    Not that I recall.  She very rarely
23   used the compound.
24   Q    And where is Professor Peter Stonier
25   located?

3 (Pages 227 to 230)

315

1
2 to the potential for suicide.
3        Explain, if you would, please, how
4 that risk assessment should be conducted by the
5 clinician.
6     A     This is really part of the mental
7 state, mental state examination of any person that
8 you are dealing with with a psychiatric disorder
9 or a potential for a psychiatric disorder. This
10 is, you know, a common clinical examination.
11    Q     You referred yesterday to some
12 training in medical school about treatment,
13 diagnosis and treatment and care of psychiatric
14 patients. Is that a common clinical risk
15 assessment of the suicide risk of a particular
16 patient, what you are referring to?
17    A     That should be part of any medical
18 student's training.
19    Q     Among, among the newer antiepileptics
20 drugs, are any of them drugs that you, that you in
21 your own medical scientific view are confident are
22 not gabaergic?
23    A     Probably carbamazepine, but I am sure
24 somebody may have an animal model somewhere which
25 suggested a tweak of a modicam, but probably

316

1
2 carbamazepine, probably carbamazepine.
3     Q     You would agree with me that there
4 are patients who have committed suicide while
5 taking carbamazepine; correct?
6        MR. FINKELSTEIN: Objection, lacks
7 foundation.
8     A     I just do not know. I mean, I,
9 personally, have had no patients.
10       The other one, sorry, the other one
11 is levetiractam.
12    Q     Those are compounds?
13    A     Which, as far as we know, have no
14 GABA properties.
15    Q     Let me ask it hypothetically.
16       Well, let me ask you.
17       Are you aware of whether or not any
18 patients anywhere in the world taking levetiractam
19 have committed suicide?
20    A     Sorry, no.
21    Q     Very good. That's fine.
22       I need to look through the stack of
23 the materials there, and we are getting relatively
24 close to the end of the tape. If you want to just
25 take a break, and it won't be long after lunch,

317

1
2 and if you want to plan to --
3        MR. FINKELSTEIN: Yes. So we will
4 take a break for lunch now, you will go
5 through these materials, wind up.
6        THE VIDEOGRAPHER: Going off the
7 record. The time is 12:08 p.m.
8        This is the end of tape three in
9 today's portion of this deposition.
10       (Recess taken.)
11       THE VIDEOGRAPHER: Back on the
12 record.
13       The time is 1:14 p.m. This is the
14 beginning of tape four in today's portion of
15 this deposition.
16       MR. HOOPER: Please mark this as
17 Exhibit 23.
18       (Trimble Exhibit Number 23 marked for
19 identification as of this date.)
20    Q     Professor Trimble, would you please
21 confirm that what's been handed to you, marked as
22 Exhibit 23, is a report that you wrote in 1995,
23 entitled "Psychosis with Gabapentin," and it --
24 and that that was a report for a Warner Lambert
25 Company, Pfizer, at that time can manufacturer of

318

1
2 gabapentin.
3     A     That is correct.
4     Q     Those are all the questions I have.
5        Please take a moment to look through
6 it and tell me whether it appears to be a complete
7 copy of your report?
8     A     I accept this as a complete copy of
9 my report.
10    Q     Very good. That's all the question I
11 have for that one.
12       Thank you.
13       24.
14       (Trimble Exhibit Number 24 marked for
15 identification as of this date.)
16    Q     And, Professor Trimble, if you will
17 can would you please confirm what's been handed to
18 you as Exhibit 24 is a copy of a report you wrote
19 in 1995 entitled -- in 1995 entitled "Behavioral
20 Disturbance with Gabapentin," for the Parke, Davis
21 & Company, which was at that time manufacturer of
22 gabapentin?
23    A     This is correct. And complete.
24    Q     Very good. That is all I have on
25 that one.

25 (Pages 315 to 318)

351

```
1
2  in science it is true that, as time goes on, we
3  gain more knowledge.  You affirmed that; is that
4  right?
5     A    Yes.
6     Q    Is it important when considering an
7  or scientific issue and public health matter to
8  consider then the most recent and latest
9  scientific knowledge?
10    A    It's important to put it into the
11 picture of the knowledge already accumulated, yes.
12       MR. HOOPER:  No further questions.
13       THE VIDEOGRAPHER:  Going off the
14    record.
15          The time is 2:09 p.m.  This is the
16    end of tape four and concludes this
17    deposition.
18          oOo
19    I, MICHAEL ROBERT TRIMBLE, the witness
20 herein, do hereby certify that the foregoing
21 testimony of the pages of this deposition to be a
22 true and correct transcript, subject to the
23 corrections, if any, shown on the attached page.
24    _____
           MICHAEL ROBERT TRIMBLE, M.D.
25 Subscribed and sworn to before me this
```

352

```
1
2  _____day of _____,_____.
3  _____
4       NOTARY PUBLIC
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

353

```
1
2  STATE OF NEW YORK  )      Pg.   of Pgs.
3  COUNTY OF NEW YORK )
4      I wish to make the following changes
5  for the following reasons:
6  PAGE  LINE
7  ____ ____   CHANGE:_____
8          REASON:_____
9  ____ ____   CHANGE:_____
10         REASON:_____
11 ____ ____   CHANGE:_____
12         REASON:_____
13 ____ ____   CHANGE:_____
14         REASON:_____
15 ____ ____   CHANGE:_____
16         REASON:_____
17 ____ ____   CHANGE:_____
18         REASON:_____
19 ____ ____   CHANGE:_____
20         REASON:_____
21 ____ ____   CHANGE:_____
22         REASON:_____
23 ____ ____   CHANGE:_____
24         REASON:_____
25
```

354

```
1
2  ____ ____   CHANGE:_____
3          REASON:_____
4  ____ ____   CHANGE:_____
5          REASON:_____
6  ____ ____   CHANGE:_____
7          REASON:_____
8  ____ ____   CHANGE:_____
9          REASON:_____
10 ____ ____   CHANGE:_____
11         REASON:_____
12 ____ ____   CHANGE:_____
13         REASON:_____
14 ____ ____   CHANGE:_____
15         REASON:_____
16 ____ ____   CHANGE:_____
17         REASON:_____
18 ____ ____   CHANGE:_____
19         REASON:_____
20 ____ ____   CHANGE:_____
21         REASON:_____
22 ____ ____   CHANGE:_____
23         REASON:_____
24
25          _____
           MICHAEL ROBERT TRIMBLE, M.D.
```

34 (Pages 351 to 354)