UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:   NEURONTIN MARKETING,
         SALES PRACTICES AND
         PRODUCTS LIABILITY LITIGATION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

     ALL ACTIONS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

**DEFENDANTS' OPPOSITION TO PRODUCT LIABILITY PLAINTIFFS'
MOTION FOR ORDER IMPOSING SANCTIONS AGAINST
<u>DEFENDANTS PURSUANT TO FED. R. CIV. P. 37(C)</u>**

Defendants Pfizer Inc. and Warner-Lambert Company LLC, on its own behalf and on behalf of its unincorporated division, Parke-Davis (collectively referred to hereinafter as "Defendants"), submit the following opposition to Product Liability Plaintiffs' Motion for Order Imposing Sanctions.  Plaintiffs' motion is nothing more than an attempt to prohibit the Court and the jury (if these cases survive summary judgment) from discovering the truth under the guise of a duty to disclose that does not exist.  Plaintiffs do not, and cannot, argue that they were *unaware* of Dr. McCormick or her relevance in this case.  Indeed, plaintiffs' repeated mischaracterization of Dr. McCormick's work with Neurontin at the FDA forms the foundation for many of plaintiffs' claims.  Plaintiffs, not defendants, should have identified Dr. McCormick in their initial disclosures when they filed these actions.  Instead, plaintiffs ask this Court to preclude an affidavit (obtained in connection with an anticipated motion for summary judgment) from a witness they have long been aware of.

1

Rule 26 and the preclusionary provision of Rule 37 are not tactical devices for parties to exploit when they confront evidence that undermines their claims.  Neither Rule 26 nor Rule 56 requires defendants to disclose a Rule 56 affidavit prior to filing a motion for summary judgment, especially from a witness known to plaintiffs throughout the course of the litigation.  Indeed, defendants tendered the McCormick affidavit to plaintiffs *early* when they chose to use it to cross-examine plaintiffs' expert, Dr. Cheryl Blume.  Plaintiffs also wrongly assert that their document requests required defendants to produce the McCormick affidavit to plaintiffs as soon as defendants obtained it.  Moreover, plaintiffs cannot articulate any prejudice resulting from defendants' disclosure of the McCormick affidavit at Dr. Blume's deposition, other than the fact that it truthfully articulates Dr. McCormick's findings pertaining to Neurontin and exposes plaintiffs' mischaracterization of Dr. McCormick's work on Neurontin – "prejudice" that most certainly does not support preclusion or any other sanction.  Finally, even if plaintiffs could establish true prejudice, the appropriate remedy is not complete preclusion of the affidavit and all testimony of FDA officials, but rather a supplementation of plaintiffs' expert reports and/or the deposition of Dr. McCormick.  Tellingly though, plaintiffs seek neither remedy.

## FACTUAL BACKGROUND

Cynthia McCormick, M.D., was employed by the FDA from 1991 through 2002 as a Medical Review Officer in the Neurology section of the Division of Neuropharmacological Drug Products and as the Director of the Division of Anesthetics, Critical Care, and Addiction Drug Products.  In both capacities, she was a key participant in the FDA's review and ultimate approval of Neurontin as an adjunctive treatment of partial seizures and as a treatment for post-herpetic neuralgia.  Plaintiffs repeatedly have argued to the FDA, this Court, the press and nearly

every witness who has testified to date in this proceeding that, as a result of Dr. McCormick's

clinical review, the FDA knew that Neurontin causes depression that may lead to suicide.  (See

Exhibits A through D).[1]   On March 21, 2005 – before the first of these cases was transferred to

this Court – plaintiffs notified the FDA that they had found "shocking information" in the FDA's

analysis of Neurontin's New Drug Application – citing the following paragraph from Dr.

McCormick's review:

> "Serious adverse events may limit the drug's widespread usefulness.  Depression,
> while it may not be an infrequent occurrence in the epileptic population, may
> become worse and require intervention or ***lead to suicide***, as it has resulted in
> some suicidal attempts during clinical trials."

(Def. Exh. A).  This same paragraph was quoted in an April 21, 2005 *San Francisco Chronicle*

article discussing plaintiffs' counsel's efforts to obtain such a warning.  (Def. Exh. B).  Despite

their knowledge of Dr. McCormick and their affirmative use of her medical review, plaintiffs did

---

[1] For example, in the Track One prescribing physician depositions, plaintiffs' counsel extensively discusses the FDA's Combined Medical-Statistical Review prepared by, among others, Dr. McCormick.  The physicians were questioned whether they were aware of any of the information in the review and whether they "would have liked to know" such information when they were prescribing Neurontin to plaintiffs:

> Q.    Okay.  I'm going to ask you to take a look at page 117.  Now, by the way, this was written, if you look back on page 19, by Cynthia McCormick, MD, clinical reviewer–
> A.    Um-hmm.
> Q.    --for the FDA.
> A.    Okay.
> Q.    Okay?  Would you agree that she would know more about this drug than you would?
> A.    I would hope so, yes.
> 　　　 ***
> Q.    A third and, correct me if I'm reading it wrong, "A third is that depression, while it may not be an infrequent occurrence in the epileptic population, may become worse and require intervention or lead to suicide, as it has resulted in some suicide attempts."  Did I read that correctly?
> A.    You read it correctly.
> Q.    Did you ever see that in a labeling for Neurontin?
> A.    No, not that I recall.
> Q.    Is that information you would have wanted to know before you were prescribing it to depressed patients?
> A.    Sure.

Thomas Maltese, M.D., Tr. 130:3-131:13 (Def. Exh. C).

not identify her as a witness in their initial disclosures pursuant to Rule 26(a) and did not subsequently seek her deposition.

Over two years after plaintiffs learned of Dr. McCormick and began using a document prepared by her, Dr. McCormick executed an affidavit that "accurately reflects [her] actions and conclusions with respect to [her] involvement with the review and approval of Neurontin." (Def. Ex. E) Defendants sought Dr. McCormick's affidavit in connection with an anticipated motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. An examination of the affidavit reveals the reason why Plaintiffs are attempting to prohibit its use – it exposes plaintiffs' mischaracterization of Dr. McCormick's statements. For example, the affidavit makes clear that Dr. McCormick never concluded that the clinical trial data affirmatively established or supported the conclusion that Neurontin increases the risk of or causes depression or suicidal behavior. (Def. Exh. E at ¶ 14) Dr. McCormick also clarified that a single case of suicide in the clinical trials would not have established a causal association between suicide and Neurontin. (Def. Exh. E at ¶ 17) With regard to labeling, she makes clear that the FDA did not believe it would have been appropriate to include suicidal behavior in the warnings, precautions, or contraindications sections of the label due to the relatively low frequency of suicidal adverse events in the clinical trials and high background rate of suicidal behavior in patients with epilepsy. (Def. Exh. E at ¶ 29) Finally, Dr. McCormick attested that "[t]hroughout my career at the FDA, I never concluded that Neurontin increases the risk of or causes depression or suicidal behavior. That remains my belief today." (Def. Exh. E at ¶ 49).

Dr. McCormick executed her affidavit on September 13, 2007. Though defendants' motion for summary judgment on general causation is not due until February 29, 2008,

defendants tendered the McCormick affidavit to plaintiffs on November 13, 2007, during the deposition of one of plaintiffs' experts, Dr. Blume.

## ARGUMENT

**A.    DEFENDANTS HAD NO DUTY TO DISCLOSE A RULE 56 AFFIDAVIT OBTAINED FROM A WITNESS KNOWN TO AND RELIED UPON BY PLAINTIFFS.**

Plaintiffs' request for sanctions is premised upon a fictitious "duty" to disclose. Neither Rule 26 nor Rule 56 required defendants to disclose the affidavit to plaintiffs prior to summary judgment; the affidavit was not responsive to any outstanding document requests; and there was no duty to produce the affidavit before plaintiffs' expert reports were prepared. For these reasons, plaintiffs' motion should be denied.

### 1.    Neither Rule 26 nor Rule 56 Required Disclosure of Dr. McCormick or the McCormick Affidavit.

Federal Rule of Civil Procedure 26(a)'s purpose is to facilitate the discovery process by requiring parties to disclose possible sources of relevant information, thereby enabling other parties to pursue those sources.[2] *See, e.g.,* Fed. R. Civ. P. 26(a) 1993 advisory committee note ("a major purpose of the revision [to impose on parties a duty to disclose without awaiting formal discovery requests] is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information"). The Rule does not require parties to conform their disclosure statements to information obtained or disclosed in the course of discovery. To the contrary, Rule 26(e)(1) requires a party to supplement its disclosures only where the information has <u>not</u> "otherwise been made known" to the other party:

---

[2] Rule 26 was amended effective December 1, 2007. The provisions referenced will be pre-amendment, as they were in effect at the time of this dispute.

A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information *has not otherwise been made known to the other parties during the discovery process or in writing*. (emphasis added)

Fed. R. Civ. P. 26(e)(1); *see also* Fed. R. Civ. P. 26(e) 1993 advisory committee note (no duty to supplement arises if the "supplemental or corrective information has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified at the taking of a deposition or when an expert during a deposition corrects information contained in an earlier report"). Because plaintiffs have known since a very early stage of this litigation of Dr. McCormick and her role at the FDA with respect to Neurontin, Rule 26(a) and (e) provide no support to plaintiffs' argument.

Indeed, the initial obligation to disclose Dr. McCormick lay not with defendants, but with plaintiffs, who failed to include Dr. McCormick in their original Rule 26(a) disclosures or any supplemental disclosure served to date. Plaintiffs have known of Dr. McCormick's role with respect to Neurontin since at least early 2005 and, from an early stage in this case, plaintiffs intended to rely upon Dr. McCormick's medical review to support their claims. This Court should not countenance plaintiffs' attempt to now seek sanctions because *defendants* did not disclose Dr. McCormick to *plaintiffs*. To do so would be to turn Rule 26(a) on its head.

Any obligation defendants have concerning disclosure of Dr. McCormick's affidavit is governed by Federal Rule of Civil Procedure 56 and not by Rule 26(a). Rule 56 provides that a moving party may use an affidavit of a witness to support its motion for summary judgment. The rule does not require that a party disclose the affidavit prior to filing its motion or prior to the close of fact discovery. *See Logsdon v. AT&T Communs. of the Southwest, Inc.*, No. 02-

2519, 2003 U.S. Dist. LEXIS 17885, *14-15 (Dist. Kan. Oct. 6, 2003) (rejecting as "frivolous" plaintiffs' argument that there was no opportunity to "investigate" an affidavit prior to summary judgment, finding that "[t]here is no federal or local rule . . . that requires defendant to disclose this affidavit at any time prior to the filing of its motion for summary judgment"). Instead, the procedure for opposing an affidavit is embodied within Rule 56, which provides that affidavits may be "opposed by depositions, answers to interrogatories, or additional affidavits." Fed. R. Civ. P. 56(e). The method of "investigating" an affidavit is outlined in Rule 56(f), which permits, under certain limited circumstances, "depositions to be taken or discovery to be had" in opposition to a motion for summary judgment. Fed. R. Civ. P. 56(f).

Not only does plaintiffs' proposed disclosure requirement not exist, but applying such a rule to this proceeding would undermine the order and efficiency that Rule 26 and this MDL seek to achieve. Numerous witnesses and documents have been disclosed in this case by plaintiffs throughout the discovery process rather than being identified in Rule 26 disclosures. Significantly, although plaintiffs were relying on Dr. McCormick's medical review to support their case, neither her name nor any FDA witness or documents were identified in plaintiffs' Rule 26 disclosures. Further, plaintiffs have relied on, but failed to identify, a single representative or employee of Pfizer, Warner-Lambert or the FDA, though plaintiffs surely intend to use testimony from some of these witnesses in support of their claims. Likewise, documents relied upon by plaintiffs' experts, including Dr. Cheryl Blume, have repeatedly been disclosed for the first time in expert reports.[3] If the Court were to adopt plaintiffs' position, the

---

[3] Like plaintiffs, had defendants not identified the McCormick Affidavit in the November 15, 2007 Supplemental Disclosure, defendants would have been required to identify and disclose the Affidavit in any expert report that relied upon the Affidavit. Defendants' deadline to serve reports of expert witnesses is December 21, 2007.

Court would invite a flood of motions to preclude documents (including the McCormick medical review) and witnesses, crippling the progression of this case.

### 2. Plaintiffs' Document Requests did not Require Disclosure of the McCormick Affidavit.

Plaintiffs also incorrectly assert that certain of their document requests required defendants to produce the McCormick affidavit to plaintiffs. Despite claiming that the "McCormick Affidavit was clearly responsive to Plaintiffs' discovery demands," Pls. Mem. at 6, out of the hundreds of individual document requests that plaintiffs served on defendants, plaintiffs point to only three overly broad, vague and unduly burdensome requests that do not mention McCormick of the FDA and that these plaintiffs did not even author. Though the products liability plaintiffs did serve a set of document requests in September 2006, they simply copied the requests that the sales and marketing plaintiffs served in March 2005, to which defendants had previously responded and objected in April 2005. *See* Def. Exh. F. The products liability plaintiffs acknowledged in meet and confer sessions that the purpose of serving these duplicate requests was to enable them (i) to use documents previously produced by defendants to the sales and marketing plaintiffs, (ii) to participate in meet and confer sessions to discuss the sales and marketing plaintiffs' discovery requests, and (iii) to join in sales and marketing plaintiffs' motions to compel based on those requests. In fact, the products liability plaintiffs agreed to accept in response to this set of requests the responses and objections previously served by defendants in response to the sales and marketing plaintiffs' earlier requests, *see* Def. Exh. F, and did not seek the production of any documents whatsoever in response to them. Moreover, the fact remains that plaintiffs cannot point to a single request out of the hundreds served by

them or any other plaintiffs in this MDL that calls for the production of documents relating to Dr.

McCormick's medical review.

> **3.     Defendants Had No Duty to Produce a Rule 56 Affidavit Prior to Plaintiffs' Expert Disclosure Deadline.**

Plaintiffs contend that their experts were denied the opportunity to consider the "data"

included in the McCormick affidavit prior to providing their opinions in an expert report.

Likewise, plaintiffs accuse defendants of "ambushing Plaintiffs and producing the Affidavit at

the deposition of Plaintiffs' expert on November 13, 2007."[4]   Yet there exists no rule that

requires the identification and production of documents prior to an opposing party's expert

disclosure deadline or deposition.   Moreover, all "data" on which Dr. McCormick relied in her

affidavit *was* previously produced to plaintiffs and in plaintiffs' possession long before plaintiffs'

deadline for serving expert reports.   Likewise, plaintiffs had every opportunity to depose Dr.

McCormick, but chose not to do so.

Moreover, defendants introduced the McCormick affidavit at Dr. Blume's deposition

only for impeachment and Rule 26(a) expressly exempts from its disclosure requirement such

documents.  *See* Fed. R. Civ. P. 26(a).  Plaintiffs' claim that defendants somehow "ambushed"

Dr. Blume with the affidavit is also unfounded – Rule 26(a) expressly allows such use of

documents for impeachment without prior disclosure.  Moreover, plaintiffs aversion to "surprise"

documents being introduced at a deposition is itself surprising in light of plaintiffs' earlier

submissions concerning the conduct of depositions in this case.  Indeed, defendants requested

---

[4] Plaintiffs assert that defense counsel represented that Dr. McCormick had been identified in a previous Rule 26 disclosure when she in fact had not.  First, it is absolutely the case that Dr. McCormick had "been made known" as a witness in this case, and therefore, disclosure was not required under Rule 26(e).  Moreover, it is no surprise that defense counsel was of the belief that Dr. McCormick had been previously disclosed.  Plaintiffs use her name in every deposition and practically every document that has been filed in support of their case.

that this Court order that the parties disclose deposition exhibits 48 hours prior to depositions to facilitate deposition proceedings.  *See* Doc. # 716 at 9.  Plaintiffs vehemently opposed the request, accusing defendants of seeking an unfair advantage over plaintiffs.  According to plaintiffs, they had a right to candid, spontaneous answers from witnesses, arguing that "the witness should not be given the luxury of having the documents prior to the deposition to enable him to prepare for and tailor his testimony in a manner that is skewed or otherwise biased."  Doc. # 723 at 8.  Plaintiffs evidently feel that only they are entitled to "candid, spontaneous" answers from deponents.

**B.    PLAINTIFFS HAVE SUFFERED NO HARM OR PREJUDICE AS A RESULT OF PLAINTIFFS' RECEIPT OF THE SEPTEMBER 13, 2007 MCCORMICK AFFIDAVIT ON NOVEMBER 13, 2007.**

Even if it is assumed *arguendo* that defendants were required to disclose a Rule 56 affidavit prior to an opposing party's expert deposition, sanctions are inappropriate where plaintiffs have failed to allege any prejudice whatsoever.  A court may enter sanctions pursuant to Rule 37(c) only where "the offending party was not 'substantially justified' in failing to disclose information required by Rule 26(a) or Rule 26(e) and the failure to disclose was not harmless."  *Hipsaver Co., Inc. v. J.T. Posey Co.*, 497 F. Supp. 2d 96, 103 (D. Mass. 2007). Because defendants had no duty to disclose the McCormick affidavit, defendants were "substantially justified" in not tendering it to plaintiffs prior to the Blume deposition.  Moreover, plaintiffs can articulate no harm or prejudice other than plaintiffs' belief that the truthful recitation of Dr. McCormick's medical review as set forth in her affidavit will "harm" their case – clearly not the kind of "harm" the rule was designed to prevent.  Indeed, preventing the Court

and a jury (if any of these cases survives summary judgment) from hearing the truth about Dr. McCormick's medical review would be the real harm in this case.

Finally, even if plaintiffs could articulate appropriate harm, the sanction of precluding Dr. McCormick's testimony is wholly improper.  Rather, the only appropriate remedy would be for plaintiffs to simply amend their expert reports and/or depose Dr. McCormick.  Tellingly, plaintiffs have sought neither remedy.

The cases to which plaintiffs cite do not support sanctions under the circumstances here. Plaintiffs rely on *Hipsaver Co., Inc. v. J.T. Posey Co.*, where the Court prohibited the use of documents and information the plaintiff failed to disclose until *shortly before trial* due to the "surprise and prejudice" suffered by defendants.  497 F. Supp. 2d 96, 103 (D. Mass. 2007). Likewise, the other cases relied on by plaintiffs in support of their preclusion argument were instances where the documents were disclosed shortly before or during trial.  *See, e.g., Klonoski v. Mahlab*, 156 F.3d 255 (1st Cir. 1998) (documents disclosed *during trial* were precluded); *Keytrak Inc. v. Key Register, LLC*, 2004 U.S. Dist. LEXIS 30446 at *8 (N.D. Cal. 2001) (expert reliance document challenged in a motion in limine *shortly before trial* precluded).

Conversely, plaintiffs have not been surprised on the eve of trial, and plaintiffs were never in the dark about Dr. McCormick.  Rather it was plaintiffs who repeatedly shined the spotlight directly upon her.  The fact that plaintiffs chose not to depose Dr. McCormick or obtain an affidavit from her does not preclude the use of her affidavit by defendants for purposes of summary judgment or her testimony at trial, especially where plaintiffs have an opportunity to depose Dr. McCormick or supplement their expert designations.  For these reasons, plaintiffs' request for sanctions must be denied.

Not only do plaintiffs want to preclude defendants from utilizing the affidavit or any further testimony from Dr. McCormick, plaintiffs also request that the Court preclude defendants from utilizing the testimony of *all other individuals* they identified in their supplemental disclosures who "may have information relating to FDA issues pertaining to Neurontin that Defendants may use to support their claims and defense in this action." This request is also baseless. Plaintiffs have not shown that they were previously unaware of any individual whom Defendants identified in their Supplemental Disclosures or that Plaintiffs have been prejudiced in any manner by defendants identifying those individuals now. The overreaching relief that plaintiffs seek betrays their motives for filing the instant motion – they want to muzzle Dr. McCormick and all other FDA officials so that their mischaracterizations of Dr. McCormick's work and the FDA's role with respect to Neurontin can continue unchecked and uncontroverted. Plaintiffs' request should be denied.

<u>**CONCLUSION**</u>

Plaintiffs have been on notice throughout the entirety of this case that Dr. McCormick had information relevant to the proceedings. Indeed, plaintiffs have used Dr. McCormick and her writings at every turn – in depositions, statements to the press, and letters to the FDA – yet have failed to disclose Dr. McCormick or FDA documentation in their Rule 26 disclosures. Now that an affidavit containing Dr. McCormick's truthful statement about the FDA's approval of Neurontin has come to light, plaintiffs have fabricated a duty to disclose where none exists. For the reasons more fully set forth above, defendants Pfizer Inc. and Warner-Lambert Company LLC respectfully ask this Court to deny plaintiffs' motion for order imposing sanctions against defendants and for such additional relief as the Court may deem just and proper.

Dated:  December 11, 2007

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:    /s/ Scott W Sayler_____
        Scott W. Sayler
        Lori R. Schultz

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel:  (816) 474-6550

     -and-

DAVIS POLK & WARDWELL

By:    /s/ James P. Rouhandeh_____
        James P. Rouhandeh

450 Lexington Avenue
New York, NY 10017
Tel:  (212) 450-4000

     -and-

HARE & CHAFFIN

By:    /s/ David B. Chaffin _____
        David B. Chaffin

160 Federal Street
Boston, MA 02110
Tel:  (617) 330-5000

*Attorneys for Defendants Pfizer Inc. and*
*Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 11, 2007.


/s/ David B. Chaffin_____

David B. Chaffin