UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------x
:   MDL Docket No. 1629
In re:   NEURONTIN MARKETING,   :
      SALES PRACTICES AND   :   Master File No. 04-10981
      PRODUCTS LIABILITY LITIGATION   :
:   Judge Patti B. Saris
---------------------------------------------------------x
:   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:   :
:
      ALL ACTIONS   :
:
---------------------------------------------------------x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
PRODUCTS LIABILITY PLAINTIFFS' MOTION FOR SANCTIONS**

Plaintiffs' expert on general causation, Stefan Kruszewski, M.D., was deposed by Defendants on December 6 and 7, 2007. During the second day of the deposition, Defendants' counsel questioned Dr. Kruszewski concerning the McCormick Affidavit. Plaintiffs' counsel objected to the Affidavit and noted that it could have been produced by Defendants prior exchanging the expert's report. Moreover, Defendants failed to provide Dr. Kruszewski with copies of the exhibits referred to in the Affidavit when requested, and have yet to produce copies of the exhibits. *See* Kruszewski Dep., Dec. 7, 2007, excerpts annexed as Ex. A, pp. 23, 24.

**ARGUMENT**

**A    Pursuant to Rule 26, Defendants Were Obligated to Disclose
The McCormick Affidavit Because It Contained Information
That Defendants May Use to Support Their Claims or Defenses.**

Pursuant to Rule 26(a)(1)(B), a party is required to initially disclose, *inter alia*, "all documents, data compilations, and tangible things that are in the possession, custody or control of the party and that the disclosing party may use to support its claims or defenses, unless solely

for impeachment." Further, in reference to Rule 26(a): "A party is required to supplement at appropriate intervals its disclosures . . .if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26 (e)(1).

The McCormick Affidavit reveals new information not contained in any of the documents previously produced by Defendants, concerning the adequacy of the labeling for the drug Neurontin. Because Defendants were in possession of the Affidavit prior to the deadline for Plaintiffs' disclosure of their expert reports on general causation, it would have been appropriate to disclose such critical information prior to this deadline.

Although Defendants claim otherwise, the McCormick Affidavit provides an abundance of additional information "not otherwise been made known to the other parties during the discovery process or in writing." Plaintiffs had never received any prior disclosure from Defendants concerning McCormick's statement that "I never concluded that the clinical trial data affirmatively established or supported the conclusion Neurontin increases the risk of or causes depression or suicidal behavior." McCormick Aff., ¶ 14. Neither were Plaintiffs made aware through the discovery process that, "as part of her ongoing review of the Neurontin adjunctive epilepsy NDA, [McCormick] reviewed Safety Updates submitted periodically by the sponsor," *id.* at ¶ 21; or that throughout the approval process McCormick "recall[ed] Parke-Davis being responsive to all of the FDA's requested recommended labeling changes." *Id.* at ¶ 26.

Further, Plaintiffs were not aware of McCormick's new opinions concerning Neurontin and depression and adverse events, contained in several paragraphs of the Affidavit, including paragraphs 28, 29, 30. Moreover, McCormick makes new proclamations about the FDA's

2

scientific judgment concerning the Neurontin label in 1993, which information was never included in any FDA document previously produced by Defendants.  Clearly, the Affidavit, which includes information critical to Defendants' defense against this action, is a document that should have been disclosed to Plaintiffs earlier, as soon as it was received by Defendants, who were well aware that the fact discovery deadline had passed and that the deadline for Plaintiffs to disclose their expert reports was fast approaching.  Instead, Defendants made a conscious decision to withhold the Affidavit.  And Plaintiffs were never made aware by documents previously produced by Defendants that McCormick, a former FDA employee, is now directly contradicting the statements that she provided in the Neuurontin Clinical Review.

McCormick stated in the Review and Evaluation of Clinical Data for the Neurontin NDA 20-135 that was produced by Plaintiffs to Defendants:

> Less common but more serious events may limit the drug's widespread usefulness. . . **A third is that depression, while it may not be an infrequent occurrence in the epileptic population, may become worse and require intervention or lead to suicide, as it has resulted in some suicidal attempts**. . .
>
> * * *
>
> In its clinical database of 2048 patients, gabapentin has a risk profile that is uncertain, with five groups of import adverse events that have not yet been fully characterized, specifically, seizure exacerbation, carcinogenicity, clinically important depression, renal failure and teratogenicity.  Accumulated long range safety data are limited by the excessive attrition due to apparent lack of sustained efficacy.
>
> * * *
>
> In conclusion NDA is approvable with appropriate and prominent labeling for use in a specific population.

1993 Clinical Review, pp. 117-119, annexed hereto as Exhibit B.

McCormick's statements in her Affidavit, 14 years later, directly contradict the above statement that was included in the clinical review while she was employed by the FDA.  She now

states in her Affidavit concerning her review of the Neurontin NDA 20-235: "I never concluded that the clinical trial data affirmatively established or supported the conclusion Neurontin increases the risk of or causes depression or suicidal behavior." McCormick Aff., ¶ 14.

Defendants' characterization of the McCormick Affidavit as a Rule 56 affidavit is suspect at best. When confronted with objections to the Affidavit during both the depositions of Cheryl Blume on November 13, 2007, and of Dr. Kruszewski on December 7, 2007, Defendants' counsel never advised that the Affidavit was a Rule 56 affidavit. During Dr. Blume's deposition, Defendants' counsel misrepresented that McCormick was disclosed on the Rule 26 disclosure, *see* Plaintiffs' moving papers, Exhibit B; and during Dr. Kruszewski's deposition, counsel in essence did not respond to the objection. *See* Ex. A, Kruszewski Dep., pp. 18, 19. Indeed, it was only after Plaintiffs moved to strike the Affidavit and exclude McCormick's testimony that Defendants sought to characterize the Affidavit as a Rule 56 affidavit.

Moreover, the McCormick Affidavit itself does not indicate that it was being submitted to support a motion for summary judgment. It is not reasonable to believe that such experienced defense counsel would obtain a Rule 56 affidavit from a witness before Plaintiffs' expert reports were served, and months before motions for summary judgment were not due. Rather, it appears that the Affidavit was created to be used by Defendants to ambush Plaintiffs' expert witnesses.

Defendants argue that the McCormick Affidavit did not have to be produced to the Products Liability Plaintiffs because of their agreement to accept the responses and objections previously served by Defendants in response to the Sales and Marketing Plaintiffs' earlier request. That Plaintiffs accepted previously served responses does not relieve Defendants of their continuing duty to supplement their discovery responses under Rule 26. The Affidavit is responsive to the requests which Plaintiffs' detailed in their moving papers.

Further, the individuals noted on Defendants' November 15, 2007 Supplemental Rule 26 Disclosure, as those who "may have information relating to FDA issues pertaining to Neurontin that Defendants may use to support their claims and defenses in this action," should also be excluded from testifying in this action. While Plaintiffs may have become aware of the names of the individuals through documents produced by Defendants, Plaintiffs had no reason to believe that they could not rely on the documents, the FDA review of the NDA for Neurontin, to speak for themselves and provide an accurate picture of the approval process.

Moreover, because Defendants did not include these individuals on their prior Rule 26 Disclosures, there was no reason for Plaintiffs to believe that the FDA documents were flawed, or that an individual who participated in the approval process 14 years earlier would now seek to disparage or add commentary to the documents. It is telling that according to the 2005 *San Francisco Chronicle* article, Defs.' Ex. B, McCormick "did a brief consulting assignment for Pfizer about a year ago." Moreover, the article quotes McCormick as stating in regard to her statements, that "Depression, while it may not be an infrequent occurrence in the epileptic population, may become worse and require intervention or lead to suicide, as it has resulted in some suicidal attempts" she was cited as stating she had deferred to the judgment of much more experienced FDA reviewers who also evaluated Neurontin in 1992. *Id.* It strains credulity that in her present Affidavit, McCormick proclaims to speak on behalf of all of those involved in the approval process for the FDA in 1993.

**B.      Defendants' Non-disclosure of the McCormick
         Affidavit Materially Harmed Plaintiffs.**

Plaintiffs' experts on general causation were not able to review the statements in the McCormick Affidavit prior to preparing their reports. After being provided with a copy of the Affidavit during the depositions, Dr. Blume and Dr. Kruszewski were questioned concerning

5

statements in the Affidavit without the opportunity to review the exhibits referred to in the Affidavit. Plaintiffs have been served with various versions of different documents. Plaintiffs do not know whether the exhibits referred to in the Affidavit are documents from McCormick's personal files, documents produced by Defendants, or new versions of documents that were produced. If the documents were obtained from McCormick's files, the documents may contain additional notes and information not heretofore disclosed to Plaintiffs.

Similar to *Hipsaver Co., Inc. v. J.T. Posey Co.,* 497 F. Supp. 2d 96 (D. Mass. 2007), due to Defendants' non-disclosure of the McCormick Affidavit, Plaintiffs' experts were caused to submit their general causation expert reports based upon incomplete information. As the Court found in *Hipsaver,* the non-disclosure in this case is the type of harm that is contemplated by Rule 37. Defendants throughout this litigation have sought to delay discovery at every turn. This latest attempt by Defendants frustrates the entire discovery schedule, has placed Plaintiffs' experts at an unfair disadvantage that may only be remedied by striking of the Affidavit and excluding any testimony by McCormick and the other newly named individuals on the November 15, 2007 Supplemental Rule 26 Disclosure.

**C.    There Is No Justification for Defendants to Withhold
         And Fail to Disclose the McCormick Affidavit.**

The record demonstrates that Defendants were obligated under Rule 26 to include McCormick as an individual on their Rule 26 Disclosure and to produce her Affidavit prior to Plaintiffs' expert disclosure. The Affidavit contained information which pertained to Defendants' defense against Plaintiffs' failure to warn claims. Defendants' claims that the McCormick Affidavit was a Rule 56 affidavit is suspect at best. Moreover, since Defendants utilized the Affidavit not to support a summary judgment motion, but to ambush expert witnesses, Defendants should be found to have used the Affidavit at their own peril. An affidavit

is not a Rule 56 affidavit until it supports a motion for summary judgment – there are no summary judgment motions pending before this Court. Defendants have not articulated any reasonable explanation for their withholding of the McCormick Affidavit or the newly named individuals on their November 15, 2007 Rule 26 Supplemental Disclosure.

## CONCLUSION

Plaintiffs respectfully request that this Court grant Products Liability Plaintiffs motion and impose sanctions against Defendants, striking the McCormick Affidavit and excluding any subsequent testimony of McCormick, or any of the other individuals newly named on Defendants' November 15, 2007 Supplemental Rule 26(a) disclosure.

Dated: December 14, 2007                    Respectfully submitted,

*Members of Products Liability Plaintiffs' Steering Committee*

By:     **/s/ Andrew G. Finkelstein**
          Andrew G. Finkelstein, Esquire
          Finkelstein & Partners, LLP
          436 Robinson Avenue
          Newburgh, NY  12550

By:     **/s/ Jack W. London**
          Jack W. London, Esquire
          Law Offices of Jack W. London
             & Associates
          106 E. 6th Street, Suite 700
          Austin, TX  78701

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on December 14, 2007.

Dated:  December 14, 2007

   **/s/ Andrew G. Finkelstein**
   Andrew G. Finkelstein