UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) | MDL Docket No. 1629<br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | ) ) ) ) ) | Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin |

**PRODUCTS LIABILITY PLAINTIFFS' REPLY MEMORANDUM
AND IN FURTHER SUPPORT OF MOTION TO ESTABLISH A
<u>PLAINTIFFS' PERSONAL INJURY LITIGATION EXPENSE FUND</u>**

Products Liability Plaintiffs (hereinafter "PL Plaintiffs") submit this memorandum in reply to Pfizer Defendants' opposition and in further support of PL Plaintiffs' motion to establish a Plaintiffs' Personal Injury Litigation Expense Fund.

<u>**DISCUSSION**</u>

PL Plaintiffs' motion to establish a Plaintiffs' Personal Injury Litigation Expense Fund has been filed at the appropriate time in this litigation. PL Plaintiffs have been working on this litigation for more than four years and have expended much time, money and effort in order to arrive at the point when the issues of preemption, general causation and preclusion of experts under *Daubert/Frye*, which relate to all of the cases filed in this MDL and in the New York State Coordinated Litigation, are ripe for consideration by the Court through motion practice.

All of the Personal Injury Plaintiffs' counsel involved in this litigation will ultimately benefit from PL Plaintiffs' efforts in obtaining and reviewing documents, retaining experts, obtaining expert reports and conducting depositions and obtaining deposition testimony. None

of the other Personal Injury Plaintiffs' PL Plaintiffs have opposed the motion. Although Pfizer Defendants state that there has been no settlement negotiations to date, this position may change at any time—after the motion or opposition papers are filed, the *Daubert* hearing is held or the motions are resolved.

Presently there is no assurance that Pfizer Defendants will not enter into settlement negotiations and settle with any of the Personal Injury Plaintiffs' Counsel and insist upon a confidentiality agreement thereby eliminating the PL Plaintiffs' Steering Committee ability to learn of the secret settlement. It is common knowledge to Defendants as well as to PL Plaintiffs' Counsel that pharmaceutical companies generally insist upon complete confidentiality regarding settlements. Included in these agreements are prohibitions from any disclosure to the public or other counsel in the litigation that settlements have been achieved. PL Plaintiffs take issue with Defendants' misleading statements in their opposition papers that there have been no settlements regarding actions in which Plaintiffs have alleged Neurontin and suicidality as they are attempting to use their confidentiality agreements as both a shield and a sword because PL Plaintiffs' counsel are not at liberty to oppose the statement. Accordingly, Defendants are free to mislead this Court without fear of recrimination.

Moreover, it is possible that the actions will be remanded back to the transferor courts prior to any settlement negotiations. The time is ripe for this motion in that the bulk of the common benefit work has been completed. PL Plaintiffs are entitled to assurance that the efforts and expenses of PL Plaintiffs' counsel in developing this litigation to this critical point on behalf of all Personal Injury Plaintiffs be reimbursable. This assurance can only be made through the establishment of the Personal Injury Plaintiffs' Litigation Expense Fund. This Court established a motion schedule in Discovery Order No. 16 (ECF Doc # 941), and PL Plaintiffs have adhered

to that schedule in the filing of their motion. Pfizer Defendants were aware of the dates scheduled for summary judgment motions and had every opportunity to object to the schedule in Discovery Order No. 16 but failed to do so.

**I.    PL PLAINTIFFS' MOTION HAS BEEN
INTERPOSED AT THE APPROPRIATE TIME**

Although Pfizer Defendants allege that this motion is not ripe because there has been no settlement negotiations, such a time may never arrive prior to the trial of the actions before this Court. For example, in *In re Prempro Prods. Liab. Litig.,* MDL 1507, Order No. 6 (E.D. Ark. March 30, 2005), the MDL issued a similar order establishing a common benefit fund in March 2005, and the MDL and State actions are continuing to proceed to trial without settlement almost three years after the issuance of the order. (ECF Doc. # 1130-3.) In *In re PPA,* MDL No. 1407, the MDL established the common benefit fund in June 2002 (ECF Doc. # 1130-2), approximately ten months prior to that Court's April 30, 2003 order (attached hereto as Exhibit A), establishing the schedule for expert depositions, and a year and five months before a November 18, 2003 order (attached hereto as Exhibit B), that the parties mediate before the individual cases were remanded.

**II.    JUDGE FRIEDMAN IN THE NEW YORK COORDINATED LITIGATION
HAS ORDERED THAT DISCOVERY BE COORDINATED WITH
THE MDL, AND PL PLAINTIFFS' STEERING COMMITTEE
REPRESENTS PERSONAL INJURY PLAINTIFFS IN BOTH
THE MDL AND THE NEW YORK COORDINATED LITIGATION**

Numerous MDL have established common benefit funds containing assessment provisions to obtain reimbursement for the work, including the work product, that MDL counsel has performed in document, deposition and expert discovery from plaintiffs in similar actions brought in State courts. All of the following MDLs established a common benefit litigation fund in which there were provisions for assessing State court actions for the time, effort and money

3

expended in discovery and expert disclosure: *In re PPA,* MDL No. 1407, Amended CMO No. 8, (W.D. Wash. June 9, 2002) (ECF Doc. # 1130-2, Exhibit A); *In re Propulsid Prods. Liab. Litig.,* MDL No. 1355, PTO No. 16 (E.D. La. Dec. 26, 2001) (ECF Doc. # 1130-2, Exhibit B); *In re Diet Drugs,* MDL No. 1203, PTO No. 467 (E.D. Pa. Feb. 10, 1999) (ECF Doc. # 1130-3, Exhibit C); *In re Silicone Gel Breast Implants Prods. Liab. Litig.,* MDL No. 926, Order No. 13 (N.D. Ala. July 23, 1993) (ECF Doc. # 1130-3, Exhibit D); *In re Prempro Prods. Liab. Litig.,* MDL 1507, Practice and Procedure Order No. 6 (E.D. Ark. March 30, 2005). (ECF Doc # 1130-3, Exhibit E). The above is ample evidence that courts have chosen not to follow the Fourth Circuit's decision in *In re: Latex Glove Prods. Liab. Litig. In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992). The District Court for the Eastern District of Pennsylvania declined to follow the Fourth Circuit's ruling in *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*, and instead found that an assessment on a state court plaintiff to "to facilitate access to discovery materials produced by the PSC, and in return to compensate the PSC for its work" was appropriate. 2003 U.S. Dist. LEXIS 18118 (E.D. Pa. 2003). If MDL counsel were not to receive reimbursement for their time and expenses from State court counsel, it would frustrate the coordination of discovery which Judge Saris and Judge Friedman have promoted throughout this litigation.

      The PL Plaintiffs' Steering Committee in the MDL includes Andrew Finkelstein, Esq., a member of Finkelstein & Partners, LLP, the law firm that represents most of the Products Liability Plaintiffs in the MDL. Plaintiffs' Liaison Counsel in the New York State Neurontin Litigation includes Kenneth B. Fromson, Esq., a member of the Finkelstein firm that also represents most of the Products Liability Personal Injury Plaintiffs in the New York State

Neurontin Litigation. (*See* Proposed Case Management Order Coordination of Products Liability Cases, dated November 29, 2006, attached hereto as Exhibit C.)

PL Plaintiffs in the MDL and the Products Liability Personal Injury Plaintiffs in the New York State Neurontin Litigation do not object to Judge Friedman consulting with this Court concerning the agreement regarding the assessment on State court cases prior to this Court's issuance of the order. Judge Friedman has previously mandated that the discovery in the State actions be coordinated with the MDL, and recognized the magnitude of the common discovery and expert work required in this litigation and that there would be an assessment for the time and expenses incurred on behalf of all of the State cases. (*See* Exhibit C.). Judge Friedman's order, however, did not provide a mechanism for dividing the cost of the time expenses incurred between the cases in the MDL and the State court cases and did not address the time and expenses incurred prior to the date of the order in question. The instant motion addresses all of these pertinent issues.

Moreover, as discussed in PL Plaintiffs' earlier memorandum, pursuant to the Manual for Complex Litigation, §14.121, nn.488 & 489, at p.188, when attorney fees are awarded under the percentage method under a common benefit fund, 25% has been recognized as the "common benchmark". PL Plaintiffs have requested much less but perhaps slightly more than the other pharmaceutical cases cited in the Manual because although the same amount of work, if not more, was required in this litigation, there are fewer cases involved to absorb the cost.

PL Plaintiffs therefore respectfully request that this Court grant their motion for the establishment of a Personal Injury Litigation Expense Fund and for such and other relief as this Court may deem appropriate.

Dated: February 22, 2008                    Respectfully submitted,

*Members of Products Liability*
*Plaintiffs' Steering Committee*


By:   **/s/ Andrew G. Finkelstein**
      Andrew G. Finkelstein, Esquire
      Finkelstein & Partners, LLP
      436 Robinson Avenue
      Newburgh, NY  12550


By:   **/s/ Jack W. London**
      Jack W. London, Esquire
      Law Offices of Jack W. London
         & Associates
      106 E. 6th Street, Suite 700
      Austin, TX  78701


### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on February 22, 2008.


                    **/s/ Andrew G. Finkelstein**
                    Andrew G. Finkelstein, Esquire

6