Exhibit 26

*2716/1.72*

AO450 - Judgment in a Civil Case

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES J. MANNING, JR. and
SARAH MANNING, individually and
as next friends of their children,
CHARLES J. MANNING, II and
VANESSA A. MANNING,

*ENTERED*
*DEC 3 0 2004*
*U.S. DISTRICT COURT*
*WHEELING, WV 26003*

                    Plaintiffs,           JUDGMENT IN A CIVIL CASE
         vs.                              Civil Action No.    5:02CV71

PFIZER, INC., successor by merger
of Parke-Davis, a division of
Warner-Lambert Company,

                    Defendant.


[ ]   **Jury Verdict.** This action came before the Court for a trial by jury. The issues have
      been tried and the jury has rendered its verdict.

[X]   **Decision by Court.** This action came before the Court.  The issues have been
      considered  and a decision has been rendered.

          IT IS ORDERED, pursuant to Federal Rule of Civil Procedure 58,  that judgment

be entered.   Defendant's motion for summary judgment is granted; plaintiffs' motion for

partial summary judgment on the issue of liability is denied;   it is ORDERED that this civil

action is dismissed and stricken from the docket.

                                    Wally Edgell, Ph. D., Clerk

                              By    *Rita J. Sedosky*
December 30, 2004                   Deputy Clerk


*250*

*12/30/04*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES J. MANNING, JR. and
SARAH MANNING, individually and
as next friends of their children,
CHARLES J. MANNING, II and
VANESSA A. MANNING,

        Plaintiffs,

v.

PFIZER, INC., successor by merger
of Parke-Davis, a division of
Warner-Lambert Company,

        Defendant.

> **ENTERED**
> DEC 3 0 2004
> U.S. DISTRICT COURT
> WHEELING, WV 26003

Civil Action No. 5:02CV71
(STAMP)

MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON LIABILITY AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.   Introduction

On June 5, 2002, the plaintiffs filed the above-styled civil action in this Court alleging that the defendant created and utilized a marketing scheme designed to influence physicians to prescribe the drug Neurontin for "off-label" uses.[1]

On November 5, 2004, the plaintiffs filed a motion for partial summary judgment on the issue of liability. The defendant responded and the plaintiffs replied. The defendant also filed a motion for summary judgment on November 5, 2004, to which the plaintiffs responded and the defendant replied.

---

[1] An "off label" use occurs when a doctor prescribes a drug for a condition that is not contained on the Food and Drug Administration's approved label.

249

These dispositive motions are now fully briefed and ripe for review. After considering the parties' memoranda and the applicable law, this Court finds that the plaintiffs' motion for partial summary judgment should be denied and the defendant's motion for summary judgment should be granted.

## II.  Facts

The plaintiffs allege that Pfizer, Inc. ("Pfizer") instituted a marketing scheme that was designed to influence physicians to improperly prescribe Neurontin, a drug approved by the Food and Drug Administration ("FDA") for the treatment of epilepsy, for off-label conditions, including a range of neuropathic pain conditions. The plaintiffs claim that Pfizer made representations to Dr. Brian Bowyer, plaintiff Charles Manning's physician at The Ohio State University, regarding the use of Neurontin as a pain reliever. The plaintiffs assert that Bowyer prescribed Neurontin to Charles Manning for back pain, and that Charles Manning's use of Neurontin in high doses caused him to suffer seizures, cognitive deficits, and abnormalities of the nervous system. The plaintiffs bring claims against Pfizer under the theories of common law fraud, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and negligence. They seek past and future damages for pain and suffering, annoyance and inconvenience, mental and emotional anguish, loss of enjoyment of

2

life, lost wages, medical expenses, and loss of consortium. They
also seek punitive damages.

In May 2004, Pfizer pled guilty in the United States District
Court for the District of Massachusetts (Case No. 1:04CR10150) to
one count of distributing an unapproved drug, in violation of 21
U.S.C. §§ 331(d), 333(a)(2), and 355(a), between April 1995 and
August 1996. It also pled guilty to one count of misbranding a
drug, in violation of 21 U.S.C. §§ 331(a), 333(a)(2), and
352(f)(1), between April 1995 and August 1996. The factual
allegations of the two-count information include statements
regarding off-label promotion of Neurontin through sales
representatives, medical liaisons, consultants' meetings, and
teleconferences. Three paragraphs of the information reference
conduct related to the Northcentral Customer Business Unit, which
includes Ohio, the state in which Neurontin was prescribed to
Charles Manning.

### III. Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment
is appropriate if "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law." The party seeking summary judgment bears the
initial burden of showing the absence of any genuine issues of

3

material fact. <u>See</u> Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; see also Charbonnages de France v. <u>Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

4

showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial." Celotex, 477 U.S. at 322. Summary
judgment is not appropriate until after the non-moving party has
had sufficient opportunity for discovery. See Oksanen v. Page
Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502
U.S. 1074 (1992). In reviewing the supported underlying facts, all
inferences must be viewed in the light most favorable to the party
opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986).

### III.    Discussion

A.    Plaintiffs' Motion for Partial Summary Judgment on Liability

The plaintiffs argue that summary judgment is appropriate on
the issue of liability because Pfizer has admitted guilt to
engaging in illegal marketing practices with respect to the drug
Neurontin, and this violation amounts to prima facie negligence.
They assert that they can prove through the testimony of their
marketing expert, Richard Shain, that this illegal activity
influenced Charles Manning's doctor in his decision to prescribe
Neurontin for pain. They argue that there is no material evidence
presented by the defendant to counter the presumption of
negligence.

In response, Pfizer argues that the statutory violations
create only a rebuttable presumption of negligence. Pfizer

5

contends that it can effectively counter the plaintiffs' allegations of negligence by showing that Pfizer acted reasonably in attempting to comply with the Federal Drug and Cosmetic Act ("FDCA"). Further, Pfizer contends that a violation of the FDCA does not establish a prima facie showing of negligence under West Virginia Code § 55-7-9 because there is no private right of action under the FDCA.

Pfizer also claims that, even if the rebuttable presumption exists in this case, the FDCA violation is not connected to this litigation because it has no nexus with Charles Manning's doctors. Pfizer asserts that there is nothing in the criminal information that establishes that the defendant's acts of off-label promotion were directed towards, or influenced, Dr. Bowyer or any other physicians at The Ohio State University. On these grounds, Pfizer asserts that summary judgment on the issue of liability is not appropriate.

The plaintiffs argue in reply that Pfizer has failed to sufficiently counter their evidence. They contend that Pfizer has not refuted the fact that Dr. Bowyer received unsolicited information about Neurontin's use for pain. Further, they claim that Pfizer has presented no material counter-evidence to refute the fact that Dr. Bowyer was indirectly influenced by his peers due to Pfizer's illegal marketing practices.

6

"To prevail in a negligence suit, the plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff." Strahlin v. Cleavenger, 603 S.E.2d 197, 205 (W. Va. 2004). The plaintiffs argue that the plea entered by Pfizer establishes a prima facie case of negligence. However, assuming, without deciding, that this is true, the plaintiffs must still prove that by committing the statutory violations admitted to in the plea, the defendant breached a duty to them which caused their injuries. This Court is unconvinced that the plaintiffs have met this burden. Summary judgment is appropriate only if the plaintiffs can prove by a preponderance of the evidence that the conduct to which Pfizer pled guilty was connected to Dr. Bowyer's act of prescribing Neurontin to Charles Manning. As noted by Pfizer in its response, Dr. Bowyer himself denies this connection. Dr. Bowyer stated during his deposition that his decision to prescribe Neurontin to Charles Manning was based upon his own clinical experience as well as the experiences of colleagues, and that it was not based on any information obtained from the defendant. Def.'s Memo. in Opp'n to Pls.' Mot. for Partial Summ. J., Ex. E at 48.

The plaintiffs claim that the evidence suggests that Dr. Bowyer was indirectly influenced by Pfizer's illegal marketing strategy. However, the plaintiffs have failed to show by a

7

preponderance of the evidence that the marketing influences that Dr. Bowyer relied upon originated from illegal actions by Pfizer. The evidence can just as easily be interpreted to suggest that Dr. Bowyer was influenced through proper channels; i.e., other doctors who have gained experience with off-label uses of the drug or who have specifically requested information from Pfizer about off-label uses. See Washington Legal Found. v. Friedman, 13 F. Supp. 2d 51, 58 (D.D.C. 1998)("Dissemination of article reprints and reference texts that would otherwise violate the Guidances are permissible when that distribution is responsive to a physician's inquiry.").

Thus, this Court must conclude that genuine issues of material fact remain with respect to the question of Pfizer's liability. Accordingly, the plaintiffs' motion for partial summary judgment on the issue of liability must be denied.

B.    Defendant's Motion for Summary Judgment

Pfizer argues that summary judgment is appropriate because: (1) the statute of limitations bars all of plaintiffs' claims; and (2) the evidence does not support plaintiffs' claims of negligence, breach of warranty, or fraud. The plaintiffs counter that their claims are not time barred because the nexus between Neurontin and Charles Manning's injuries was not discovered until some time after November 2000. In addition, the plaintiffs argue that there is sufficient evidence in the record to support each of their claims.

8

1.   Statute of Limitations

Pfizer argues that West Virginia's two-year statute of limitations bars each of the plaintiffs' claims. Pfizer asserts that the plaintiffs should have known that Neurontin was responsible for Charles Manning's injuries from the time he suffered his first seizure on September 1, 1997, because on that day doctors told Mr. Manning they were concerned about the high dosage of Neurontin he was taking. Further, Pfizer claims that during that same month Mr. Manning was repeatedly told that Neurontin could be the cause of his seizures.

In response, the plaintiffs concede that they suspected as early as 1997 that Neurontin was the cause of Mr. Manning's seizures. However, they argue that the statute of limitations did not begin to run until after November 2000, when Mr. Manning's treating physician definitively informed them that Neurontin was the cause of Mr. Manning's seizures.

In its reply, Pfizer asserts that the plaintiffs' suspicion in 1997 that Neurontin was the cause of Mr. Manning's seizures triggered the commencement of the statute of limitations period. Pfizer argues that the plaintiffs were not permitted under West Virginia law to wait for the receipt of an expert opinion before filing their complaint.

First, this Court must consider whether this issue is appropriately decided on a motion for summary judgment. The

9

plaintiffs assert that the time of accrual for the statute of limitations is a question of fact that should be left to a jury. However, it appears in this case that the factual circumstances are not in dispute. The plaintiffs concede that they suspected that Neurontin was responsible for Mr. Manning's seizures as early as September 1997. Thus, the underlying issue is a question of law; that is, did the statute of limitations commence at the time the plaintiffs held suspicions that Neurontin was at fault, or did it commence at the time that their suspicions were confirmed by an expert? The United States Court of Appeals for the Fourth Circuit has held that "if resolution of a statute of limitations defense presents a genuine question of material fact, a jury should resolve it. If not, a statute of limitations may be applied as a matter of law." Childers Oil Co. v. Exxon Corp., 960 F.2d 1265, 1273 (4th Cir. 1992). In this case, application of the statute of limitations is based on a question of law and, therefore, it may be appropriately decided on summary judgment.

The plaintiffs have asserted causes of action for negligence, breach of implied warranties, and common law fraud. The accrual of the statute of limitations period for negligence and breach of warranty claims is governed by the following standard:

> In products liability cases, the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence should know (1) that he has been injured, (2) the identity of the maker of the product, and (3) that the product had a causal relation to his injury.

10

Hickman v. Grover, 178 W. Va. 249, 252 (1987). "Where a cause of
action is based . . . on a claim of fraud, the statute of
limitations does not begin to run until the injured person knows,
or by the exercise of reasonable diligence should know, of the
nature of his injury." Childers, 960 F.2d at 1272.

In this case, the plaintiffs acknowledge that they were aware
of the injury and knew the identity of the maker of the product as
early as September 1997. What the parties dispute in this case is
whether the plaintiffs' suspicions that Neurontin had a causal
relationship to Mr. Manning's seizures were sufficient to trigger
the commencement of the statute of limitations period.    The
plaintiffs contend that they were not, and assert that the statute
of limitations period did not commence until they had confirmation
from Dr. O'Donnell of Neurontin's causal relationship. Pfizer, on
the other hand, asserts that if the plaintiffs' contentions were
true, West Virginia law would provide an indefinite period for the
plaintiffs to obtain experts in order to build their case.

In researching this issue, this Court finds Gaither v. City
Hosp., 199 W. Va. 706 (1997), to be particularly instructive.    In
Gaither, the Supreme Court of Appeals of West Virginia noted that
"[t]he discovery rule has its origins in the fact that many times
an injured party is unable to know of the existence of an injury or
its cause."    Id. at 713.  The court in Gaither cited two medical
circumstances in which it felt the discovery rule was applicable:

11

(1) "[i]n a progressive or creeping disease or injury," in which plaintiffs do not realize they are injured; and (2) when plaintiffs realize they are injured, but "have no reason to connect the product with the injury." Id. at 714. The court further noted:

> Our holding in Cart addresses the opposite situation, where a plaintiff does or should reasonably know of the existence of an injury and its cause. In those situations, to take advantage of the discovery rule, a plaintiff must "make a strong showing of fraudulent concealment, inability to comprehend the injury, or other extreme hardship[.]"

Id. at 713 (quoting Cart v. Marcum, 188 W. Va. 241, 245 (1992)).

In analyzing the circumstances of this case, this Court must conclude that the Cart v. Marcum approach is applicable. The plaintiffs cannot claim that they were unaware of the injury or that they had not connected the product to the injury. They have acknowledged that they immediately suspected that Neurontin was responsible for Mr. Manning's first seizure in September 1997. They then sought the opinions of a number of medical professionals, several of whom made statements that confirmed their suspicions. Thus, this does not appear to be the type of case in which they were unable to connect the product and the injury for a significant period of time.

Consequently, it appears that the discovery rule only becomes applicable in this case if the plaintiffs demonstrate "fraudulent concealment, inability to comprehend the injury, or other extreme hardship." Cart, 188 W. Va. at 245 (citations omitted). After

12

considering the record, this Court cannot find that any of these circumstances were present. The plaintiffs make no argument that Pfizer fraudulently concealed the possible effects of the drug. Rather, the plaintiffs rely on the argument that they were uncertain that Neurontin was responsible for Mr. Manning's seizures until Dr. O'Donnell provided his report. However, the plaintiffs admit that they held such strong suspicions of Neurontin's link to Mr. Manning's seizures that they "questioned their doctors," "investigated the drug on the Internet," and "contacted the pharmaceutical company through Dr. Hersey, [and] offered to be subject to investigation by the pharmaceutical company . . ." Pls.' Resp. to Def.'s Mot. for Summ. J. at 9.

Given these facts, the plaintiffs have not demonstrated that they were unable to comprehend the injury. Rather, the plaintiffs were aware of their injury, but waited to file suit until after they obtained the results of an expert. These circumstances do not support application of the discovery rule. If the plaintiffs' argument was accepted, injured parties could always avoid the effect of a statute of limitations by delaying in seeking an expert, or by contacting numerous experts until they receive the opinion they desire.

This Court believes that its conclusion is further supported by statements made by the Fourth Circuit:

> The "discovery rule" tolls a statute of limitations until the plaintiff has, or ought to have, answers to two

13

> questions:  Am I injured?  Who injured me?  At that
> point, the plaintiff has enough information to begin
> investigating his claims.  He may not know enough to win
> a verdict or even file a complaint on that first day, but
> that is why the law gives him a reasonable limitations
> period to investigate.

Childers, 960 F.2d at 1272.

In addition, the Supreme Court of Appeals of West Virginia's
ruling in Jones v. Aburahma, 600 S.E.2d 233 (W. Va. 2004), takes a
similar approach.  In Jones, the court found that the discovery
rule was inapplicable and the statute of limitations began to
accrue at the time of the injury because "Ms. Jones knew that she
had been injured and she suspected that the appellees may have
breached the duty of care owed to her."  Id. at 237 (emphasis
added).  This opinion suggests that suspicion alone is enough to
commence the statute of limitations period for a cause of action.

Accordingly, this Court finds that the discovery rule is
inapplicable in this case, and the statute of limitations began to
accrue at the time of Mr. Manning's first hospitalization for
seizures on September 2, 1997.  Thus, this Court will use this date
to evaluate whether the plaintiffs' claims are time barred.

The defendant has correctly noted that each of the plaintiffs'
claims are governed by West Virginia Code Section 55-2-12, which
states in pertinent part:

> Every personal action for which no limitation is
> otherwise prescribed shall be brought . . . within two-
> years next after the right to bring the same shall have
> accrued if it be for damages for personal injuries.

14

W. Va. Code § 55-2-12; see also Trafalgar House Constr. v. Zmm,
Inc., 211 W. Va. 578, 583 (2002) ("Under West Virginia law, claims
in    tort    for    negligence,    professional    negligence,    and
misrepresentation (fraudulent or negligent) are governed by a two-
year statute of limitation, W. Va. Code § 55-2-12."); Brown v.
Community Moving & Storage, 193 W. Va. 176, 178 n.3 (1995) ("The
two-year statute of limitations period set forth in W. Va. Code
§ 55-2-12 (1959) is applicable to [a] fraud claim . . ."); Taylor
v. Ford Motor Co., 185 W. Va. 518, 522 (1991) ("[W]here a person
suffers personal injuries as a result of a defective product and
seeks to recover damages for these personal injuries based on a
breach of express or implied warranties, the applicable statute of
limitations is the two-year provision contained in W. Va. Code §
55-2-12 . . .").

    This Court has ruled that the statute of limitations began to
accrue on September 2, 1997. The plaintiffs filed their complaint
more than five years later, on June 5, 2002. Thus, the plaintiffs'
complaint was untimely and their claims are time barred.
Accordingly, this Court must conclude that no genuine issue of
material fact exists and that summary judgment is appropriate.

    2.    Causation

    While this Court believes that the plaintiffs' claims must
fail because they are time barred, it will also alternatively
analyze the claims on their merits. The defendant argues that each

                                    15

of the plaintiffs' claims must fail because an essential element is lacking -- causation. The defendant asserts that the plaintiffs have failed to establish to the requisite level of probability or through sufficiently reliable expert testimony that the ingestion of Neurontin actually caused Mr. Manning's injuries.

In response, the plaintiffs argue that "[t]he literature in the Physicians Desk Reference 1997, approved by the Food and Drug Administration, proves that generally Mr. Manning's complaints can be caused by Neurontin." Pls.' Resp. to Def.'s Mot. for Summ. J. at 21. In addition, they cite the findings of their expert, Dr. O'Donnell. Further, the plaintiffs cite the deposition testimony of Drs. Hersey and Kettler, Mr. Manning's treating physician and neurologist, to support specific causation.

In its reply, the defendant points out that the plaintiffs have failed to address the fact that adverse event reports and case reports, including those referenced in the Physicians Desk Reference ("PDR"), are not admissible as evidence of causation. In addition, they argue that Dr. Hersey and Dr. Kettler's opinions are insufficient to establish specific causation because they are based solely on a temporal connection, and because both doctors declined to offer an opinion to the required level of reasonable probability.

"In cases that require medical evidence to establish causation, courts have typically drawn a distinction between

16

'general causation' and 'specific causation.'"   Dunn v. Sandoz
Pharms. Corp., 275 F. Supp. 2d 672, 676 (M.D.N.C. 2003)(citing
Reference Manual on Scientific Evidence 444 (2d. ed. 2000)).
"'General causation' refers to whether X can cause Y . . . .   On
the other hand, 'specific causation' refers to whether X did cause
Y in a given case."  Cavallo v. Star Enter., 892 F.Supp. 756, 774
n.31 (E.D. Va. 1995), aff'd in part, 100 F.3d 1150 (4th Cir. 1996).
"If a plaintiff is not able to establish general causation, it is
unnecessary to consider whether the plaintiff can establish
specific causation."  Dunn, 275 F. Supp. 2d at 676 (citing Raynor
v. Merrell Pharmaceuticals Inc., 104 F.3d 1371, 1376 (D.C. Cir.
1997)).

     In medical product liability cases, proof of causation must be
by expert testimony.  Rohrbough v. Wyeth Laboratories, Inc., 916
F.2d 970, 972 (4th Cir. 1990).   An expert's testimony regarding
probable cause must be in terms of reasonable medical probability.
Id. (citing Hovermale v. Berkeley Springs Moose Lodge No. 1483, 165
W. Va. 689 (1980)).

     This Court will first address whether the plaintiff has proven
general causation in this case; i.e., whether there is sufficient
proof that Neurontin can cause the pseudo seizures suffered by Mr.
Manning.  This Court notes that the plaintiffs in their response
rely on two primary sources to prove general causation: the
information provided in the PDR regarding Neurontin, and the

17

opinions of their expert, Dr. O'Donnell. This Court will address each of these sources in turn.

In Brumbaugh v. Sandoz Pharm. Corp., 77 F. Supp. 2d 1153 (D. Mont. 1999), a federal district court made the following finding:

> Neither case reports nor adverse drug reaction reports contain scientific analysis with the safeguards of a controlled experiment. Their most significant analytical defect is that they don't isolate and investigate the effects of alternative causation agents. They are compilations of reported phenomena. Unlike epidemiological studies, they do not contain a testable and systemic inquiry into the mechanism of causation. As such, they reflect reported data, not scientific methodology. The Daubert court noted this phenomenon was the distinguishing characteristic of scientific evidence.

Id. at 1156 (citing Daubert v. Merrell Dow Pharms., 509 U.S. 579, 593 (1993)). The majority of courts have, on this basis, found these reports to be inadmissible. See, e.g., Soldo v. Sandoz Pharms. Corp., 244 F. Supp. 2d 434, 537 (W.D. Pa. 2003); Pick v. American Med. Sys., 958 F.Supp. 1151, 1161 (E.D. La. 1997); Hall v. Baxter Healthcare Corp., 947 F.Supp. 1387, 1411 (D. Or. 1996). In reviewing the PDR entry for Neurontin, this Court finds that the data cited by the plaintiffs represents a collection of reports of adverse reactions by Neurontin-treated patients with postherpetic neuralgia participating in placebo controlled trials. See Pls.' Resp. to Def.'s Mot. for Summ. J., Ex. 14. This data, in essence, is an analysis of adverse drug reaction reports. Because these reports are inadmissible as proof of general causation, this Court

18

will not consider the PDR data to support the plaintiffs' theory of causation.

Thus, this Court now turns to Dr. O'Donnell's report for proof of general causation. In their response, the plaintiffs admit that "Dr. O'Donnell's opinions on general causation are mainly based on the FDA's findings about adverse events related to Neurontin." Pls.' Resp. to Def.'s Mot. for Summ. J. at 23. While the plaintiffs contend that Dr. O'Donnell's report also cites peer-reviewed medical research, Dr. O'Donnell admitted in his deposition testimony that he has not reviewed any peer-reviewed literature that shows that taking Neurontin at any dosage causes the pseudo seizures reported by Mr. Manning. Def.'s Mot. for Summ. J., Ex. P at 163. Moreover, Dr. O'Donnell admitted during his deposition that he could not cite any literature from the medical or scientific community that supports his opinion of residual toxicity or post traumatic stress disorder from the use of Neurontin. Id. at 165-66. Rather, he explains how he has established causation:

> That [Mr. Manning] had a pseudo seizure that was induced
> by Neurontin I read from the records. So I'm giving an
> opinion with reasonable pharmaceutical certainty that
> it's -- that the events that occur as paroxysms are
> causally related to the Neurontin toxicity in the form of
> a reliving of that traumatic event . . .

Id. at 158. He goes on to explain:

> Neurontin can cause neurological manifestations, tremors,
> shaking legs, and seizure-like disorder as is reported in
> the adverse reactions, and the doctors ruled out other
> causes for [Mr. Manning's] pseudo seizures. So we -- and
> then we have - - as I said, we had the dechallenge [sic]

19

> of lowering the dose, stopping the drug, and the
> condition improved . . . .

Id. at 160 (emphasis added). Based on this analysis, it appears
that Dr. O'Donnell was creating a link between the plaintiffs'
medical records and his knowledge of adverse event reports
regarding Neurontin. He is unable to provide any evidence that the
medical community has established such a link generally.    He
actually admits this fact during his deposition: "Because it's the
first time doesn't mean it's not happening. There's always a first
time." Id. at 160. While this statement may be true, this Court
is unable to accept that general causation has been established
based on his expert testimony.

Under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579
(1993), courts are required to evaluate whether expert testimony
has been subjected to peer review and publication and whether it is
generally accepted in the scientific community. Id. at 593-94.
Dr. O'Donnell has admitted that his opinions do not meet these
standards.   Moreover, anecdotal reports and untested theory have
been found not to provide adequate proof of general causation
because, "[w]hile Daubert does not require absolute precision in
identifying the medical mechanism of injury, there still must be
'sufficiently compelling proof that the agent must have caused the
damage somehow.'"    Brumbaugh, 77 F. Supp. 2d at 1157 (quoting
Kennedy v. Collagen Corp., 161 F.3d 1226, 1230 (9th Cir. 1998)).
Thus, like the Brumbaugh court, this Court must find that the

limited probative worth of Dr. O'Donnell's testimony is outweighed by the substantial probability that it will mislead the jury, and therefore the evidence is inadmissible under Federal Rule of Evidence 403. This Court must also conclude that without his testimony, the plaintiffs are unable to create a genuine issue of material fact with respect to causation.

The defendant has correctly noted that causation is an essential element of each of the plaintiffs' claims. See Kidd v. Mull, 595 S.E.2d 308, 313 (W. Va. 2004)(holding that two of the essential elements in a fraud action are that the fraudulent action was relied on by the plaintiff and that he was damaged because he relied on it); Rohrbough, 916 F.2d at 972 (holding that an essential element of a cause of action for breach of express or implied warranty is "proof that defendant's [product] caused plaintiffs' injuries . . ."); McCoy v. Cohen, 149 W. Va. 197, 214 (1965)("A fundamental legal principle is that negligence to be actionable must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury."). Because this Court has found plaintiffs' evidence of general causation to be inadmissible, this Court must conclude that the plaintiffs have failed to meet their burden. Accordingly, this Court finds that each of the plaintiffs' claims must fail as a matter of law. The defendant, therefore, is also entitled to summary judgment as to the merits of this case.

21

### IV.    Conclusion

Because Pfizer, Inc. has set forth sufficient evidence to demonstrate to this Court that there is an absence of a genuine issue of material fact with respect to all of the claims remaining in this case, the motion for summary judgment of Pfizer, Inc. is hereby GRANTED pursuant to Rule 56(e). The plaintiffs' motion for partial summary judgment on the issue of liability is hereby DENIED. Any other pending motions in this action are hereby DENIED AS MOOT. This civil action is hereby DISMISSED and STRICKEN from the docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit copies of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    April 21, 2004

FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE

I hereby certify that the annexed instrument
is a true and correct copy of the original filed
in my office.
ATTEST: Dr. Wally Edgell
Clerk, U.S. District Court
Northern District of West Virginia

By:

Deputy Clerk

22