# EXHIBIT E

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Tel: 612-349-8500 Fax: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

ANNAMARIE A. DALEY
612-349-8431

January 3, 2008

*Via Facsimile*
Nicholas P. Mizell
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108

Re:   In re: Neurontin Marketing and Sales Practices Litigation

Dear Mr. Mizell,

As you are aware, Pfizer designated Jefferson S. Henderson III as its designee under Rule 30(b)(6) for the deposition that occurred on December 5 and 6, 2007. I am writing to request a meet and confer pursuant to Local Rule 37.1(a) regarding certain issues raised by this deposition.

First, Mr. Henderson testified to the existence of "operating plans" and "business plans" for specific national and regional Third Party Payor accounts, including several Plaintiffs, respectively. *See* Rough Draft of Deposition of Jefferson S. Henderson III, taken December 5 & 6, 2007 ("Henderson Dep.") 79:14-16. Although Mr. Henderson testified that operating and business plans existed for Plaintiffs in past years, these plans are apparently overwritten in Pfizer's systems. *See* Henderson Dep. 179:9-181:20. Plaintiffs request that Pfizer produce these operating and business plans for all named Plaintiffs and any documents regarding the preparation of these plans.

Second, although we do not express a view as the adequacy of his preparation on other topics, Mr. Henderson was not adequately prepared to testify regarding Topic 2, which concerned "communications with Third Party Payors." At the Rule 30(b)(6) deposition, Mr. Henderson testified he had determined that communications between a Kaiser physician and Pfizer would not be "Third Party Payor" communications and therefore he did not prepare to respond to any questions regarding such communications. Additionally, you objected that such communications were outside the scope of the deposition topics:

> Q.   Would -- if a representative was selling Neurontin in Kaiser, would that representative be communicating with Kaiser about Neurontin?
>
> MR. MIZELL: Object to form. Outside the scope.

MP3 20256138.1

ATLANTA · BOSTON · LOS ANGELES · MINNEAPOLIS · NAPLES · SAINT PAUL · WASHINGTON, D.C.

Nicholas P. Mizell
January 3, 2008
Page 2

> A. Again, I think it is very important to understand communicating to Kaiser, which is a third-party payer account, and communicating with Kaiser physicians. What these representatives would be doing, if they were indeed calling on Kaiser doctors, they would be calling on Kaiser doctors, in the same way that sales representatives call on doctors throughout the United States.
>
> Q. So you are saying that if a representative from Pfizer is calling on a Kaiser doctor, that that's not a third-party payer communication?
>
> A. That is correct.

*See* Henderson Dep. at 455:17-456:8. As a result, Mr. Henderson was unable to testify to the types and categories of communications that Pfizer representatives had with Kaiser physicians. *See* Henderson Dep. 456:9-18.

The position that such matters were outside the scope of the deposition topics conflicts with Pfizer's position in this litigation as Pfizer has sought discovery from individual doctors at Kaiser and other Plaintiffs claiming that such information was relevant. Plaintiffs complied with these discovery requests.

The above exchange also demonstrates that Mr. Henderson was not adequately prepared to testify to Topic 1, which pertained to the identification of, and all documents concerning, individuals "who had contacts with Third Party Payors concerning Neurontin."; Topic 3, which concerned communications and related documents between the Health Management division and Third Party Payors; and Topic 9, which sought information regarding "Pfizer's organizational structure used for communications with Third Party Payors."

Additionally, Mr. Henderson was not adequately prepared to testify to Topic 1 as demonstrated by his inability to identify any individuals responsible for communications between Warner Lambert/Parke Davis and Kaiser. *See,* Henderson Dep. at 35:5-17. Mr. Henderson also indicated that he made no effort to determine whether any individuals from Warner Lambert promoted Neurontin to any Third Party Payor. *See* Henderson Dep. at 37:4-38:21.

Similarly, Mr. Henderson testified that he did not examine, or ask anyone else to examine the "HC database," a database which he testified would contain documentation of any communications with Third Party Payors. *See* Henderson Dep. 54:23-56:17. This made it impossible for him to testify to communications between Pfizer and a number of Third Party Payors. *Id.*

It will also be necessary to discuss your instructions to Mr. Henderson not to answer several questions posed during the deposition. Mr. Henderson followed your instructions and refused to answer these questions. *See* Henderson Dep. 41:19-44:4. Since these questions did not seek to invade any privilege, your instructions were improper and Mr. Henderson was required to answer them.

Please immediately provide your availability for a meet and confer on Monday, January 7, 2008.

MP3 20256138.1

Nicholas P. Mizell
January 3, 2008
Page 3

                                    Sincerely,

                                    ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

                                    *Annamarie Daley*

AAD/vo                              Annamarie A. Daley

MP3 20256138.1