## COUNT XXII

### Unlawful Monopolization by Defendants In Violation
### of New Mexico Law on Behalf of Plaintiff HCSC

209.    Plaintiff HCSC incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 208.

210.    As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power.  This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin.  The result of Defendant Pfizer's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

211.    Defendant Pfizer possessed monopoly power in the relevant market.

212.    Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of N.M. Stat. Ann. §§ 57-1-1 *et seq.*

213.    Plaintiff HCSC and its self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct.  Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation.  Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

214.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff is entitled to three times its actual damages sustained, in an amount to be determined at trial,

Word 20113683.1

together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

## COUNT XXIII

### Unlawful Monopolization by Defendants In Violation of New York Law on Behalf of Plaintiffs WellChoice and Excellus

215.    Plaintiffs WellChoice and Excellus incorporate and reavers by reference the averments contained in the preceding paragraphs 1 through 214.

216.    As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power. This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin. The result of Defendant Pfizer's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

217.    Defendant Pfizer possessed monopoly power in the relevant market.

218.    Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of New York General Business Law. N.Y. Gen. Bus. Law § 340 *et seq.*.

219.    Plaintiffs and their self-funded customers have been injured in business or property by reason of Defendants' unlawful conduct. Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation. Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

Word 20113683.1

220.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to three times their actual damages sustained, in an amount to be determined at trial, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

## COUNT XXIV

### Unlawful Monopolization by Defendants In Violation of Oklahoma Law on Behalf of Plaintiff BCBS Oklahoma

221.   Plaintiff BCBS Oklahoma incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 220.

222.   As described above, Defendant Pfizer knowingly and willfully engaged in a course of conduct designed to unlawfully acquire and to unlawfully maintain and extend its monopoly power.  This course of conduct included filing baseless patent infringement lawsuits against potential competitors seeking to manufacture and market generic bioequivalents of Neurontin.  The result of Defendant Pfizer's unlawful conduct was to injure competition in the market for Neurontin or generic bioequivalents of Neurontin.

223.   Defendant Pfizer possessed monopoly power in the relevant market.

224.   Defendant Pfizer intentionally and wrongfully acquired and maintained its monopoly power in the relevant market, unlawfully conspired to monopolize the relevant market and attempted to monopolize the relevant market in violation of the Oklahoma Antitrust Reform Act.  Okla. Stat. tit. 79, § 203.

225.   Plaintiff BCBS Oklahoma has been injured in business or property by reason of Defendants' unlawful conduct.  Their injury consists of paying higher prices for Neurontin or generic bioequivalents of Neurontin than they would have paid in the absence of that violation.

45

Such injury is of the type antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

226.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff is entitled to three times its actual damages sustained, in an amount to be determined at trial, together with all interest accruing thereon and costs of suit, including, but not limited to, attorneys' fees.

**COUNT XXV**

**Unfair and Deceptive Trade Practices by Defendants In Violation of New Jersey Consumer Fraud Act on Behalf of All Plaintiffs**

227.    All Plaintiffs hereby incorporate and reaver by reference the averments contained in the preceding paragraphs 1 through 226.

228.    The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*, (2004) ("NJCFA") is designed to protect consumers such as Plaintiffs and their self-funded employer groups from fraudulent and deceptive practices. The above-described Defendants' acts and practices fall into the types of acts or practices the NJCFA was created to prevent.

229.    Plaintiffs are "persons," within the meaning of N.J. Rev. Stat. § 56:8-1(d).

230.    Defendants are "persons," within the meaning of N.J. Rev. Stat. § 56:8-1(d).

231.    Neurontin and generic bioequivalents of Neurontin are "merchandise," within the meaning of N.J. Rev. Stat. § 56:8-1(c).

232.    Defendants engaged in "sales," within the meaning of N.J. Rev. Stat. § 56:8-1(e).

233.    The marketing and sale of brand name prescription drugs, including Neurontin or generic bioequivalents of Neurontin, to the public at large and the concomitant reimbursement for all or a portion of prescription drugs by Plaintiffs and their self-funded employer groups constitute consumer transactions subject to the NJCFA.

234.    In violation of the NJCFA, the Defendants engaged in unfair, fraudulent, and deceptive acts and practices in connection with the marketing and sale of merchandise, namely the brand name prescription drug Neurontin. N.J.S.A. § 56:8-2.

235.    Defendants have used fraudulent, deceptive, and unconscionable commercial marketing and sales practices for Neurontin or generic bioequivalents of Neurontin and have fraudulently and knowingly concealed, suppressed, misled, and/or omitted material facts from Plaintiffs regarding Neurontin, thereby causing Plaintiffs and their self-funded employer groups to pay substantially higher prices for Neurontin or generic bioequivalents of Neurontin or otherwise suffer damages.

236.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to an award of all damages, including, but not limited to, Plaintiffs' losses, Defendants' ill-gotten profits, treble damages, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiffs in this action.

## COUNT XXVI

### Unfair and Deceptive Trade Practices by Defendants In Violation of the Delaware Consumer Fraud Act on Behalf of Plaintiff CareFirst

237.    Plaintiff ("CareFirst") incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 236.

238.    Defendants have violated the Delaware Consumer Fraud Act, Del. Code tit. 6 §§ 2511 *et seq.* (2004), by intentionally and/or negligently acting, using, or employing deception, fraud, false pretense, false promise, or misrepresentation, and the concealment, suppression, or omission of a material fact, in connection with the sale of merchandise.

239.    Plaintiff CareFirst is a "person," within the meaning of Del. Code tit. 6 § 2511(5).

240.    Defendants are "persons," within the meaning of Del. Code tit. 6 § 2511(5).

Word 20113683.1

241.    Gabapentin prescription drug products are "merchandise" within the meaning of Del. Code tit. 6 § 2511(4).

242.    Defendants engaged in "sales," within the meaning of Del. Code tit. 6 § 2511(6).

243.    Defendants' unlawful practices as herein alleged were gross, oppressive, and aggravated.

244.    As a direct and proximate result of Defendants' unlawful practices, Plaintiff CareFirst has suffered significant losses and costs, and will continue to do so.

245.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff CareFirst is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action, including interest and attorneys' fees.

## COUNT XXVII

### Unfair and Deceptive Trade Practices by Defendants In Violation of the Delaware Uniform Deceptive Trade Practices Act on Behalf of Plaintiff CareFirst

246.    Plaintiff CareFirst incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 245.

247.    Defendants have violated the Delaware Uniform Deceptive Trade Practices Act, Del. Code Ann. tit. 6, §§ 2531 *et seq.* (2004), by willfully, or with reason to know, engaging in deceptive trade practices in the course of their businesses.

248.    Plaintiff CareFirst is a "person," within the meaning of Del. Code Ann. tit. 6, § 2531(5).

249.    Defendants are "persons," within the meaning of Del. Code Ann. tit. 6, § 2531(5).

250.    Defendants have engaged in deceptive trade practices by willfully, or with reason to know, in the course of Defendants' businesses:

48

Word 20113683.1

(a)     Causing likelihood of confusion as to the source, sponsorship, approval, or certification of goods.  Del. Code Ann. tit. 6, § 2532(2).

(b)     Causing likelihood of confusion as to affiliation, connection, or association with or certification by another.  Del. Code Ann. tit. 6, § 2532(3).

(c)     Representing that goods have sponsorship, approval, or characteristics that they do not have, or that a person has sponsorship, approval, status, affiliation, or connection that it does not have.  Del. Code Ann. tit. 6, § 2532(5).

(d)     Engaging in conduct as herein alleged that similarly creates a likelihood of confusion or misunderstanding.  Del. Code Ann. tit. 6, § 2532(12).

251.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff CareFirst has suffered significant losses and costs and will continue to do so.

252.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff CareFirst is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action.

## COUNT XXVIII

### Unfair and Deceptive Trade Practices by Defendants In Violation of the District of Columbia Consumer Protection Procedures Act on Behalf of Plaintiff CareFirst

253.    Plaintiff CareFirst ("CareFirst") incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 252.

254.    Defendants have violated the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.* (2004), by engaging in unlawful trade practices.

255.    Plaintiff CareFirst is a "person," within the meaning of D.C. Code § 28-3901(a)(1).

Word 20113683.1

256.   Defendants are "persons" within the meaning of D.C. Code § 28-3901(a)(1).

257.   Neurontin and generic bioequivalents of Neurontin are "goods or services" within the meaning of D.C. Code § 28-3901(a)(7).

258.   Defendants' acts were "trade practices" within the meaning of D.C. Code § 28-3901(a)(6).

259.   Defendants have engaged in unlawful trade practices, by knowingly, or failing to exercise due care in knowing, that they were:

(a)   Representing that Neurontin had sponsorship or approval that it did not have;

(b)   Representing that Defendants had sponsorship, approval, status, affiliation, connection, qualifications, or license that they did not have; and

(c)   Engaging in a campaign of misrepresentation and misinformation concerning the Neurontin and generic bioequivalents of Neurontin.

260.   As a direct and proximate result of Defendants' unlawful trade practices in the conduct of trade or commerce, Plaintiff CareFirst has suffered significant losses and costs, and will continue to do so.

261.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff CareFirst is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, treble or punitive damages, interest, and reimbursement of all costs attorneys' fees, and expenses incurred by Plaintiff in this action.

Word 20113683.1

## COUNT XXIX

### Unfair and Deceptive Trade Practices by Defendants In Violation of the Florida Deceptive and Unfair Trade Practices Act on Behalf of Plaintiff BCBS Florida

262.    Plaintiff BCBS Florida incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 261.

263.    Defendants have violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* (2003), by knowingly, or with reason to know, engaging in unfair competition, unconscionable acts or practices, and unfair or deceptive acts in the conduct of any trade or commerce.

264.    Defendants' acts were in the conduct of "trade" or "commerce," within of the meaning of Fla. Stat. § 501.203(8).

265.    Defendants' unlawful conduct included, but is not limited to, violations of the following:

        (a)    Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. §§ 41 *et seq.*;

        (b)    The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts;

        (c)    Any law, statute, rule, regulation, or ordinance that proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

266.    As a direct and proximate result of Defendants' unfair competition, unconscionable acts or practices, and unfair or deceptive acts in the conduct of any trade or commerce, Plaintiff BCBS Florida has suffered significant losses and costs and will continue to do so.

Word 20113683.1

51

267.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff BCBS Florida is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action.

## COUNT XXX

### Unfair and Deceptive Trade Practices by Defendants In Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act on Behalf of Plaintiffs HCSC and Trustmark

268.    Plaintiffs HCSC and Trustmark incorporate and reaver by reference the averments contained in the preceding paragraphs 1 through 267.

269.    Defendants have violated the Illinois Consumer Fraud and Deceptive Business Practices Act, § 815 Ill. Comp. Stat. 505/1 *et seq.* (2004), by engaging in the above-described unfair methods of competition and unfair and deceptive trade practices and acts.

270.    Plaintiffs HCSC and Trustmark are "persons," within the meaning of § 815 Ill. Comp. Stat. 505/1(c).

271.    Defendants are "persons," within the meaning of § 815 Ill. Comp. Stat. 505/1(c).

272.    Neurontin and generic bioequivalents of Neurontin are "merchandise," within the meaning of § 815 Ill. Comp. Stat. 505/1(b).

273.    Defendants engaged in "sales," within the meaning of § 815 Ill. Comp. Stat. 505/1(d).

274.    Defendants' acts were in the conduct of "trade" and "commerce," within the meaning of § 815 Ill. Comp. Stat. 505/1(f).

275.    Defendants have engaged in unfair methods of competition and unfair or deceptive acts or practices, knowingly, or failing to exercise due care by:

52

(a) Using or employing fraud, false pretense, false promise, or misrepresentation, in violation of § 815 Ill. Comp. Stat. 505/2;

(b) Concealing, suppressing, or omitting material facts, with the intent that others rely on such concealment, suppression, or omission of such material facts in the conduct of trade or commerce, in violation of § 815 Ill. Comp. Stat. 505/2;

(c) Representing that merchandise had sponsorship or approval that it did not have and representing that Defendants had sponsorship, approval, status, affiliation, connection, qualifications, or license that they did not have, in violation of § 815 Ill. Comp. Stat. 505/2.

276. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs HCSC and Trustmark are entitled to an award of all damages, including, but not limited to, Plaintiffs' losses, Defendants' ill-gotten profits, punitive damages, interest, and reimbursement of all costs, attorneys' fees and expenses incurred by Plaintiffs in this action.

## COUNT XXXI

### Unfair and Deceptive Trade Practices by Defendants In Violation of the Illinois Uniform Deceptive Trade Practices Act on Behalf of Plaintiffs HCSC and Trustmark

277. Plaintiffs HCSC and Trustmark incorporate and reaver by reference the averments contained in the preceding paragraphs 1 through 276.

278. Defendants have violated the Illinois Uniform Deceptive Trade Practices Act, § 815 Ill. Comp. Stat. 510/1 *et seq.*, by engaging in unfair methods of competition and unfair or deceptive acts or practices and deceptive trade practices.

279. HCSC and Trustmark are "persons," within the meaning of § 815 Ill. Comp. Stat. 510/1(5).

280. Defendants are "persons," within the meaning of § 815 Ill. Comp. Stat. 510/1(5).

Word 20113683.1

281.   Defendants have engaged in unfair methods of competition and unfair or deceptive acts or practices, by knowingly, or failing to exercise due care in knowingly:

(a)   Representing that merchandise had sponsorship or approval that it did not have and representing that Defendants had sponsorship, approval, status, affiliation, connection, qualifications, or license that they did not have, in violation of § 815 Ill. Comp. Stat. 510/2(a)(5).

282.   As a direct and proximate result of Defendants' unlawful conduct, HCSC are Trustmark are entitled  to an award of all damages, including, but not limited to, Plaintiffs' losses, Defendants' ill-gotten profits, punitive damages, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiffs in this action.

## COUNT XXXII

**Unfair and Deceptive Trade Practices by Defendants In Violation of the Louisiana Unfair Trade Practices and Consumer Protection Act on Behalf of Plaintiff BCBS Louisiana**

283.   Plaintiff BCBS Louisiana incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 282.

284.   Defendants have violated the Louisiana Unfair Trade Practices and Consumer Protection Act, La. Rev. Stat. §§ 51:1401 *et seq.* (2004), by knowingly, or with reason to know, using or employing unfair methods of competition and unfair or deceptive methods, acts, or practices in the conduct of trade or commerce.

285.   Plaintiff BCBS Louisiana is a "person," within the meaning of La. Rev. Stat. § 51:1402(8).

286.   Defendants are "persons," within the meaning of La. Rev. Stat. § 51:1402(8).

287.   Defendants' acts affected or involved "trade" or "commerce," within the meaning of La. Rev. Stat. § 51:1402(9).

54

288.    The conduct of Defendants as herein alleged was done "knowingly," within the meaning of La. Rev. Stat. § 51:1402(10).

289.    As a direct and proximate result of Defendants' use or employment of unfair methods of competition and unfair or deceptive methods, acts, or practices in the conduct of trade or commerce, Plaintiff BCBS Louisiana has suffered significant losses and costs, and will continue to do so.

290.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff BCBS Louisiana is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, treble damages, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action.

**COUNT XXXIII**

**Unfair and Deceptive Trade Practices by Defendants In Violation of the
Maryland Consumer Protection Act on behalf of Plaintiff CareFirst**

291.    Plaintiff CareFirst incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 290.

292.    Defendants have violated the Maryland Consumer Protection Act, Md. Code Ann. Com. Law §§ 13-101 *et seq.* (2003), by knowingly, or with reason to know, engaging in unfair or deceptive trade practices, within the meaning of Md. Code Ann. Com. Law § 13-101(k).

293.    Plaintiff CareFirst is a "person," within the meaning of Md. Code Ann. Com. Law § 13-101(h), and a "consumer," within the meaning of Md. Code Ann. Com. Law § 13-101(c).

294.    Defendants are "persons," within the meaning of Md. Code Ann. Com. Law § 13-101(h).

295.    Neurontin and generic bioequivalents of Neurontin are "merchandise" within the meaning of Md. Code Ann. Com. Law § 13-101(f).

55

296.    Defendants engaged in "sales," within of the meaning of Md. Code Ann. Com. Law § 13-101(i).

297.    Defendants have engaged in unfair or deceptive trade practices by, knowingly or with reason to know:

(a)    Making false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of various kinds that have the capacity, tendency, or effect of deceiving or misleading consumers;

(b)    Representing that consumer goods have sponsorship, approval, or characteristic that they do not have;

(c)    Representing that Defendants, as merchants, sponsorship, approval, status, affiliation, or connection, that they did not have

(d)    Failing to state a material fact and the failure deceive or tended to deceive;

(e)    Making false or misleading representations of fact that concerned a price in comparison to a price of a competitor or to one's own price at a past or future time;

(f)    Using or employing deception, fraud, false pretense, false premise misrepresentation, or knowing concealment, suppression, or omission of material facts with the intent that a consumer rely on the same in connection with the promotion or sale of any consumer goods.

298.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff CareFirst is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action.

56

Word 20113683.1

## COUNT XXXIV

**Unfair and Deceptive Trade Practices by Defendants In Violation of
Massachusetts' Consumer Protection Act on Behalf of Plaintiff BCBS Massachusetts**

299.   Plaintiff BCBS Massachusetts incorporates and reavers by reference the averments contained in preceding paragraphs 1 through 298.

300.   Defendants have violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2 (2004), by knowingly, or with reason to know, engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

301.   Plaintiff BCBS Massachusetts is a "person" under Chapter 93A, § 1(a) and is entitled to pursue an action under Section 9 of the Massachusetts Consumer Protection Act as a non-profit entity that does not engage in the conduct of trade or commerce.  Mass Gen. Laws ch. 93A, § 9.

302.   Defendants' unlawful conduct directly resulted in increased payments by Plaintiff BCBS Massachusetts for Neurontin or generic bioequivalents of Neurontin.

303.   Defendants' above-described conduct was a willful, flagrant and knowing violation of Section 2 of the Massachusetts Consumer Protection Act.  Mass. Gen. Laws ch. 93A, § 2.  As a result, Plaintiff BCBS Massachusetts is entitled to up to three times the actual damages sustained, in an amount to be proven at trial, as well as reasonable attorneys' fees and costs, against Defendants, jointly and severally.  Mass. Gen. Laws ch. 93A, § 9(3), (3A), (4).

## COUNT XXXV

**Unfair and Deceptive Trade Practices by Defendants In Violation of the
Michigan Consumer Protection Act on Behalf of Plaintiff BCBS Michigan**

304.   Plaintiff BCBS Michigan incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 303.

Word 20113683.1

305.    Defendants have violated the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901 *et seq.* (2004), by engaging in unfair, unconscionable, or deceptive methods, acts or practices in conduct of trade or commerce.

306.    Plaintiff BCBS Michigan is a "person," within the meaning of Mich. Comp. Laws § 445.902(c).

307.    Defendants are "persons," within the meaning of Mich. Comp. Laws § 445.902(c).

308.    Defendants' acts were in the conduct of "trade" or "commerce" within the meaning of Mich. Comp. Laws § 445.902(d).

309.    Defendants have engaged in unfair, unconscionable, or deceptive methods, acts or practices in conduct of trade or commerce, knowingly or with reason to know by:

    (a)    Representing that goods had sponsorship or approval that it did not have and representing that Defendants had sponsorship, approval, status, affiliation, connection, qualifications, or license that they did not have, in violation of Mich. Comp. Laws § 445.903(e);

    (b)    Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer, in violation of in violation of Mich. Comp. Laws § 445.903(s).

310.    As a direct and proximate result of Defendants' unfair or deceptive trade practices, Plaintiff BCBS Michigan has suffered significant losses and costs, and will continue to do so.

311.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff BCBS Michigan is entitled to an award of all damages, including, but not limited to, Plaintiff's losses,

58

Defendants' ill-gotten profits, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action.

## COUNT XXXVI

### Unfair and Deceptive Trade Practices by Defendants In Violation of the Minnesota Uniform Deceptive Trade Practices Act on Behalf of Plaintiffs BCBS Minnesota and Federated Insurance

312.    Plaintiffs BCBS Minnesota and Federated Insurance incorporate and reaver by reference the averments contained in the preceding paragraphs 1 through 311.

313.    Defendants have violated the Minnesota Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43 to .48 (2003), knowingly, or with reason to know, by:

(a)    Engaging in a campaign of misrepresentation and misinformation concerning the Neurontin or generic bioequivalents of Neurontin.

(b)    Representing that goods had sponsorship, characteristics, uses, benefits or approval that they did not have.

(c)    Representing that Defendants had sponsorship, approval, affiliation, connections, qualification, and licensing that they did not have.

(d)    Otherwise creating a likelihood of confusion or of misunderstanding related to Neurontin and generic bioequivalents of Neurontin.

314.    As a direct and proximate result of Defendants' unlawful methods, acts, and practices, Plaintiffs BCBS Minnesota and Federated Insurance have suffered losses and costs, and will continue to do so.

315.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff BCBS Minnesota and Federated Insurance are entitled to an award of all damages, including, but not limited to, Plaintiffs' losses, Defendants' ill-gotten profits, treble damages, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiffs in this action.

59

## COUNT XXXVII

### Unfair and Deceptive Trade Practices by Defendants In Violation of the Minnesota Prevention of Consumer Fraud Act on Behalf of Plaintiff BCBS Minnesota

316.    Plaintiff BCBS Minnesota incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 315.

317.    Defendants have violated the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68 *et seq.* (2003), by knowingly, or with reason to know, engaging in unfair and deceptive practices, fraud, false pretense, false promise, misleading statements, and misrepresentation, with the intent that others rely thereon in connection with the sale of prescription drugs.

318.    Plaintiff BCBS Minnesota is a "person," within the meaning of Minn. Stat. § 325F.68(3).

319.    Defendants are "persons" within the meaning of Minn. Stat. § 325F.68(3).

320.    Neurontin and generic bioequivalents of Neurontin are "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

321.    Defendants have knowingly, or with reason to know, engaged in unfair and deceptive practices, fraud, false pretense, false promise, misleading statements, and misrepresentation, with the intent that others rely thereon in connection with the sale of prescription drugs, in violation of Minn. Stat. § 325F.69(1).

322.    As a direct and proximate result of Defendants' unlawful methods, acts, and practices, BCBS Minnesota has suffered significant losses and costs, and will continue to do so.

323.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff BCBS Minnesota is entitled to an award of all damages, including, but not limited to, Plaintiff's losses,

Word 20113683.1

Defendants' ill-gotten profits, treble damages, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action.

### COUNT XXXVIII

**Unfair and Deceptive Trade Practices by Defendants In Violation of the Nebraska Uniform Deceptive Trade Practices Act on Behalf of Plaintiff Mutual of Omaha**

324. Plaintiff Mutual of Omaha incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 323.

325. Defendants have knowingly and wilfully violated the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301 to -306 (2004).

326. Plaintiff Mutual of Omaha is a "person" within the meaning of Neb. Rev. Stat. § 87-301(5).

327. Defendants are "persons," within the meaning of Neb. Rev. Stat. § 87-301(5).

328. Defendants have violated the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 to -306, in their course of business by:

(a) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

(b) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.

329. As a direct and proximate result of Defendants' deceptive acts and practices in the conduct of trade or commerce, Plaintiff Mutual of Omaha has suffered significant losses and costs, and will continue to do so.

330. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Mutual of Omaha is entitled to disgorgement of Defendants' ill-gotten profits, treble damages,

61

Word 20113683.1

interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action.

**COUNT XXXIX**

**Unfair Methods of Competition and Deceptive Practices by Defendants In Violation of the Nebraska Consumer Protection Act on Behalf of Plaintiff Mutual of Omaha**

331.    Plaintiff Mutual of Omaha incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 330.

332.    Defendants have violated the Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 *et seq*. (2004), by knowingly, or with reason to know, engaging in unfair methods of competition or deceptive acts or practices in the conduct of trade or commerce.

333.    Plaintiff Mutual of Omaha is a "person," within the meaning of Neb. Rev. Stat. § 59-1601(1).

334.    Defendants are "persons," within the meaning of Neb. Rev. Stat. § 59-1601(1).

335.    As a direct and proximate result of Defendants' unfair methods of competition or deceptive acts or practices in the conduct of trade or commerce, Plaintiff Mutual of Omaha has suffered significant losses and costs and will continue to do so.

336.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Mutual of Omaha is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action.

**COUNT XL**

**Unfair and Deceptive Trade Practices by Defendants In Violation of the New Mexico Unfair Practices Act on Behalf of Plaintiff HCSC**

337.    Plaintiff HCSC incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 336.

62

Word 20113683.1

338.    Defendants have violated the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 *et seq.* (2004), by knowingly, or with reason to know, engaging in unfair and deceptive trade practices and unconscionable trade practices in the conduct of trade or commerce.

339.    Plaintiff HCSC is a "person," within the meaning of N.M. Stat. Ann. § 57-12-2(A).

340.    Defendants are "persons," within the meaning of N.M. Stat. Ann. § 57-12-2(A).

341.    Defendants' acts involved "trade" or "commerce," within of the meaning of N.M. Stat. Ann. § 57-12-2(C).

342.    Defendants' acts constituted "unfair or deceptive trade practices," within of the meaning of N.M. Stat. Ann. § 57-12-2(D).

343.    Defendants have engaged in unfair and deceptive trade practices and unconscionable trade practices in the conduct of trade or commerce knowingly, or with reason to know, by:

(a)    Making false or misleading oral or written statements or representations in connection with the sale of goods, in violation of N.M. Stat. Ann. § 57-12-2(D);

(b)    Representing that goods had sponsorship or approval that they did not have and representing that Defendant had sponsorship, approval, status, affiliation, or connection, that they did not have, in violation of N.M. Stat. Ann. § 57-12-2(D)(5);

(c)    Engaging in unconscionable trade practices, by taking advantage of the lack of knowledge of Plaintiffs to a grossly unfair degree in connection with the sale of goods.

Word 20113683.1

344.    As a direct and proximate result of Defendants' deceptive acts and practices in the conduct of business, trade, or commerce, Plaintiff HCSC has suffered significant losses and costs, and will continue to do so.

345.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff HCSC is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, treble damages, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action.

## COUNT XLI

**Unfair and Deceptive Trade Practices by Defendants In Violation of the New York Deceptive Acts and Practices Law on Behalf of Plaintiffs WellChoice and Excellus**

346.    Plaintiffs WellChoice and Excellus incorporate and reavers by reference the averments contained in the preceding paragraphs 1 through 345.

347.    Defendants have violated the New York Deceptive Acts and Practices Law, N.Y. Gen Bus, Law § 349 *et seq.* (2004), by engaging in deceptive acts and practices in the conduct of business, trade, or commerce.

348.    As a direct and proximate result of Defendants' deceptive acts and practices in the conduct of business, trade, or commerce, Plaintiffs have suffered significant losses and costs, and will continue to do so.

349.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to an award of all damages, including, but not limited to, Plaintiffs' losses, Defendants' ill-gotten profits, treble damages, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiffs in this action.

Word 20113683.1

## COUNT XLII

### Unfair and Deceptive Trade Practices by Defendants In Violation of the Oklahoma Consumer Protection Act on Behalf of Plaintiff BCBS Oklahoma

350.    Plaintiff BCBS Oklahoma incorporates and reavers by reference the averments contained in the preceding paragraphs 1 through 349.

351.    Defendants have violated the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751 *et seq.* (2004), by knowingly, or with reason to know, engaging in deceptive and unfair trade practices in the course of Defendants' business.

352.    Plaintiff BCBS Oklahoma is a "person," within the meaning of Okla. Stat. tit. 15 § 752(1).

353.    Defendants are "persons," within the meaning of Okla. Stat. tit. 15 § 752(1).

354.    Neurontin and generic bioequivalents of Neurontin are "merchandise" within the meaning of Okla. Stat. tit. 15 § 752(5).

355.    Defendants acted in connection with "consumer transactions," within of the meaning of Okla. Stat. tit. 15 § 752(2).

356.    Defendants have engaged in deceptive and unfair trade practices, as those terms are defined by Okla. Stat. tit. 15 §§ 752(11)-(12) by knowingly, or with reason to know, and in the course of Defendants' business:

        (a)    Making a false or misleading representation as to the sponsorship, approval, or certification of the subject of a consumer transaction, in violation of Okla. Stat. tit. 15 § 753(2);

        (b)    Making a false or misleading representation as to the affiliation, connection, association with, or certification by another, in violation of Okla. Stat. tit. 15 § 753(3);

(c)    Committing unfair or deceptive trade practices as those terms are defined

by Okla. Stat. tit. 15 §§ 752(11)-(12), in violation of Okla. Stat. tit. 15 § 753(20).

357.    As a direct and proximate result of Defendants' unfair or deceptive trade

practices, BCBS Oklahoma has suffered significant losses and costs, and will continue to do so.

358.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff BCBS

Oklahoma is entitled to an award of all damages, including, but not limited to, Plaintiff's losses,

Defendants' ill-gotten profits, interest, and reimbursement of all costs, attorneys' fees, and

expenses incurred by Plaintiff in this action.

<h3 style="text-align:center">COUNT XLIII</h3>

**Unfair and Deceptive Trade Practices by Defendants In Violation of the Oklahoma
Deceptive Trade Practices Act on Behalf of Plaintiffs BCBS Oklahoma**

359.    Plaintiff BCBS Oklahoma incorporates and reavers by reference the averments

contained in the preceding paragraphs 1 through 358.

360.    Defendants have violated the Oklahoma Deceptive Trade Practices Act, Okla.

Stat. tit. 78, §§ 52 *et seq.* (2004), by knowingly, or with reason to know, engaging in deceptive

trade practices in the course of their businesses.

361.    Plaintiff BCBS Oklahoma is a "person," within the meaning of Okla. Stat. tit. 78,

§ 52(8).

362.    Defendants are "persons," within the meaning of Okla. Stat. tit. 78, § 52(8).

363.    Defendants have engaged in deceptive trade practices by knowingly, or with

reason to know, in the course of Defendants' businesses:

(a)    Making a false representation as to the source, sponsorship, approval, or

certification of goods.

66

Word 20113683.1

(b)     Making a false representation as to affiliation, connection, or association with or certification by another.

364.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff BCBS Oklahoma has suffered significant losses and costs and will continue to do so.

365.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff BCBS Oklahoma is entitled to an award of all damages, including, but not limited to, Plaintiff's losses, Defendants' ill-gotten profits, interest, and reimbursement of all costs, attorneys' fees, and expenses incurred by Plaintiff in this action.

### COUNT XLIV

### Tortious Interference with Business Relationship or Prospective Economic Advantage by Defendants Under State Law on Behalf of All Plaintiffs

366.    Plaintiffs incorporate and reaver by reference the averments contained in the preceding paragraphs 1 through 365.

367.    Plaintiffs had a reasonable and well-founded expectation of prospective economic advantage and access to lower-cost Neurontin or generic bioequivalents of Neurontin based on the expiration or invalidity of patents and a reasonable and well-founded expectation of future business relationships with pharmaceutical benefit management companies and/or pharmacies that would include lower-cost Neurontin or generic bioequivalents of Neurontin.

368.    With knowledge of such expectancy and potential relationships and without justification, Defendants intentionally and tortiously interfered with Plaintiffs' expectation of prospective economic advantage from lower-cost Neurontin or generic bioequivalents of Neurontin and interfered with Plaintiffs' future business relationships with pharmaceutical benefit management companies and/or pharmacies.

Word 20113683.1

369.    Defendants' interference was improper, unfair, deceptive, bad faith, and illegal, and includes, but is not limited to, the conduct described in this Complaint and incorporated herein by reference.

370.    But for Defendants' interference with Plaintiffs' well-founded expectation of prospective economic advantage and business relationships, Plaintiffs would have paid a lower cost for Neurontin and generic bioequivalents of Neurontin. As a direct and proximate cause of Defendants' actions, Plaintiffs have and will pay supra-competitive and inflated prices for Neurontin, have been denied access to a generic bioequivalent of Neurontin, and have been prevented from realizing the benefits of future business relationships related to that expectancy.

371.    Plaintiffs have sustained injury by such unlawful interference and are entitled to receive damages in the amount of the prospective economic benefit and business relationships that Plaintiffs would have realized absent Defendants' conduct, and Plaintiffs further seek to obtain monetary relief for damages and recovery of all additional costs incurred as a result of Defendants' conduct, such as attorney's fees, related legal expenses, reasonable investigative fees, interest, and other relief identified below by pleading, in the alternative, that no adequate remedy at law exists.

COUNT XLV

**Unjust Enrichment by Defendants Under State Law on Behalf of All Plaintiffs**

372.    Plaintiffs incorporate and reaver by reference the averments contained in the preceding paragraphs 1 through 371.

373.    At Plaintiffs' expense, Defendants have received a benefit that under the circumstances would make it unjust for defendants to retain the benefit. Specifically, Defendants have engaged in an illegal and fraudulent scheme to sell Neurontin or generic bioequivalents of Neurontin at supra-competitive or inflated rates, to undermine and illegally interfere with

68

Word 20113683.1

competitors, and to make representations about Neurontin that are false, deceptive, and misleading.

374.    As a direct and proximate cause of Defendants' actions, Plaintiffs have unnecessarily paid supra-competitive or inflated prices for Neurontin and purchased Neurontin for treatments and purposes that, absent Defendants' conduct, Plaintiffs would not have purchased.

375.    But for Defendants' conduct, Plaintiffs would not have conferred a benefit upon Defendants and Defendants would not have been unjustly enriched.    The benefit received by Defendants is directly related to and flows from Plaintiffs' payment of supra-competitive or inflated prices for Neurontin or generic bioequivalents of Neurontin and unnecessary purchase of Neurontin caused by Defendants' false, deceptive, and misleading representations and illegal scheme.

376.    Privity exists between Plaintiffs and Defendants, and Defendants have received money or benefits that Defendants knew and have known does not rightfully belong to them and, in fact, belongs to Plaintiffs.    Restitution and repayment of this money or disgorgement of the unlawful benefits received is necessary to avoid injury to Plaintiffs, is consistent with traditional equitable principles established at law, and will prevent Defendants from retaining money or benefits that they cannot in good conscience retain.

377.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs seek restitution and recovery of all monies and benefits unjustly retained by defendants, the disgorgement of any payments, bonuses, or inequitably obtained funds, and the recovery all additional costs incurred, including, but not limited to, attorneys' fees, reasonable investigative

fees, and other relief identified below by pleading, in the alternative, that no adequate remedy at law exists.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants for the following relief:

   A. A declaration that Defendants have committed the violations alleged herein;

   B. A judgment against Defendants, jointly and severally, for the damages suffered by Plaintiffs and for any additional damages, penalties and other monetary relief provided by applicable law, including treble and/or punitive damages and all interest accruing thereon;

   C. Enjoin Defendants from continuing the illegal activities alleged herein;

   D. Disgorgement of Defendants' unjust enrichment, together with all interest accruing thereon;

   E. Grant Plaintiffs the costs of this suit, including reasonable attorneys' fees and expenses as provided by law; and

   F. Such other and further relief as the Court deems just and proper.

BUDD LARNER

By: _____
   David J. Novack
150 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 379-4800
Facsimile: (973) 379-7734

70

Of Counsel:

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Annamarie A. Daley
Mark Ireland
Sonya C. Seidl
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone:  (612) 349-8500
Facsimile:  (612) 339-4181

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
W. Scott Simmer
Hardy Vieux
1801 K Street, N.W.
Suite 1200
Washington, D.C.  20006
Telephone:  (202) 775-0725
Facsimile:   (202) 223-8604

Dated: November 24, 2004.          Attorneys for Plaintiffs


**JURY DEMAND**

Plaintiffs demand a trial by jury of all issues so triable.

BUDD LARNER

By: _____
          David J. Novack
150 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 379-4800
Facsimile: (973) 379-7734

Of Counsel:

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
W. Scott Simmer
Hardy Vieux

71

1801 K Street, N.W. Suite 1200
Washington, D.C. 20006
Telephone: (202) 775-0725
Facsimile: (202) 223-8604

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Annamarie A. Daley
Mark Ireland
Sonya C. Seidl
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

Attorneys for Plaintiffs

## CERTIFICATION PURSUANT TO R. 4:5-1(b)(2)

I hereby certify that the matter in controversy is not the subject of any other action pending in any other court, or of any pending arbitration proceeding and that no such other action or arbitration proceeding is contemplated. I further certify that there are no other parties who should be joined in the action pursuant to R. 4:28 or who are subject to joinder because of potential liability to any party on the basis of the same transactional facts.

BUDD LARNER

By: _____
David J. Novack
150 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 379-4800
Facsimile: (973) 379-7734

Of Counsel:

72

Word 20113683.1

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Annamarie A. Daley
Mark Ireland
Sonya C. Seidl
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone:  (612) 349-8500
Facsimile:  (612) 339-4181

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
W. Scott Simmer
Hardy Vieux
1801 K Street, N.W.
Suite 1200
Washington, D.C.  20006
Telephone:  (202) 775-0725
Facsimile:  (202) 223-8604

Dated: November 24, 2004.          Attorneys for Plaintiffs