EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELVIN J. CASSIDY and DIANE V. CASSIDY, )
)
    Plaintiffs )
)
-vs- )
) Civil Action No. 821
)
)
ELI LILLY COMPANY, )
)
    Defendant. )

AMBROSE, District Judge.

# OPINION
# and
# ORDER OF COURT

### SYNOPSIS

Plaintiffs offer the testimony of David Healy to establish that Prozac causes suicidal behavior in certain individuals. Defendant contends that Healy's methodology is unreliable under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and therefore inadmissible. I disagree. The Motion in Limine (Docket No. 42) is denied.

### OPINION

Plaintiff Diane Cassidy ("Cassidy") was put on a course of Prozac for weight loss. Shortly thereafter, she was found in a hotel room with a slashed wrist and a near empty bottle of prescription migraine medication. She suffered an intracerebral

1

hemorrhage and endures complications today. Cassidy and her husband-Plaintiff Melvin Cassidy believe that Prozac caused her suicidal behavior.

The Cassidys seek to introduce the testimony of Dr. David Healy for the proposition that Prozac causes suicidal behavior in some people. Healy has the United Kingdom equivalent of both a medical degree and a PhD. in pharmacology. He has published widely on the topic of antidepressants, suicide and selective serotonin reuptake inhibitors ("SSRIs").[1] Thus, he is qualified to offer an opinion on the existence of a causal connection. The question remains, however, whether the methodology Healy used in reaching his conclusions about a causal connection is reliable. Eli Lilly, the manufacturer of Prozac, insists that it is not. I disagree. After careful consideration, I conclude that Healy has employed in the courtroom, "the same level of intellectual rigor" that would characterize the practice of an expert in his field. The Motion in Limine (Docket No. 42) is denied.

## ANALYSIS

### *Daubert Standard*

In Daubert, the Supreme Court held that:

> [f]aced with a proffer of expert scientific testimony, ... the trial court judge must determine at the outset ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

---

[1] Prozac is an SSRI.

Daubert v. Merrell Dow Pharm., Inc. 509 U.S. 579, 592-93 (1992). In the Third Circuit, the trial court's role as a "gatekeeper" announced in Daubert requires proof that: (1) the proffered witness is qualified as an expert; (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must "fit" the facts of the case. In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 741-42 (3d Cir. 1994).

As to the first requirement - qualification - the Third Circuit court has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more general qualifications." Paoli, 35 F.3d at 741. "Rule 702's liberal policy of admissibility extends to the substantive as well as the formal qualification of experts." Id. Thus, an expert can qualify based on a broad range knowledge, skills, of training and experience.

The second inquiry focuses upon methodology. The inquiry into methodology is designed to ensure that an expert's opinions are based upon "'methods and procedures of science' rather than on subjective belief or unsupported speculation." Id. at 742. Reliability is assessed by determining whether: (1) the theory or technique can be tested; (2) the theory or technique has been peer reviewed; (3) there is a high rate of known or potential error; (4) there are standards of control; (5) the theory is "generally accepted"; (6) there is a sufficient relationship between the technique and methods which have been established to be reliable; (7) the expert's qualifications are sufficient; and (8) the method has been put to non-judicial uses. See Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp.2d 584,

3

593-94 (D. N.J. 2002). "Some courts also consider additional factors relevant in determining reliability, including: (I) whether the expert's proposed testimony grows naturally and directly out of research the expert has conducted independent of the litigation ...; (ii) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion...; (iii) whether the expert has adequately accounted for alternative explanations ...; (iv) whether the expert is being as careful as he would be in his professional work outside of the litigation context...; and (v) whether the field of expertise asserted by the expert is known to reach reliable results for the type of opinion proffered by the expert ... ." Magistrini, 180 F. Supp.2d at 594-95 (citations omitted).

Finally, Daubert and Rule 702 require that the expert's testimony "fits" the facts of the case. "'Fit' requires that the proffered testimony must in fact assist the jury, by providing it with relevant information, necessary to a reasoned decision of the case." Id., citing, Paoli, 35 F.3d at 743.

### *HEALY'S METHODOLOGY*

(1) Absence of Epidemiological Studies on Prozac

As a preliminary matter, I want to address an argument that Eli Lilly continually asserts - that any causation methodology which is not based on the results of epidemiological studies and / or randomized controlled clinical trials is necessarily unreliable. I disagree. Certainly any such studies would prove useful in establishing causation, yet they are not mandated. See Forsyth v. Eli Lilly, Civ. No. 95-185 (D. Hawaii) (Opinion and Order dated March 31, 1999) (stating, "the Court observes

that epidemiological studies are not the only means to establish causation. See e.g., Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1314 (9th Cir. 1995) ("One method of proving causation ... is to use statistical evidence."); Kennedy v. Collagen Corp., 161 F.3d 1226, 129 (9th Cir. 1998) (noting that other circuits have found that it is scientifically permissible to reach a conclusion on causation without epidemiological studies); Bendi v. McNeil P.P.C., Inc., 66 F.3d 1378, 1384 (4th Cir. 1995) ("Under the Daubert standard, epidemiological studies are not necessarily required to prove causation, as long as the methodology employed by the expert in reaching his or her conclusion is sound.")").

Moreover, the lack of reference to epidemiological studies and / or randomized controlled clinical trials may be due in part, as Healy suggests, to the fact that Eli Lilly has not conducted any studies or trials designed to explore a causal link between Prozac and suicidal behavior. Apparently nobody has. In the absence of such studies or trials, I will be more flexible in assessing what methodology is reliable. At any rate, I reject Eli Lilly's contention that Healy's methodology is necessarily flawed simply because it is not based solely upon epidemiological studies and / or randomized controlled clinical trials.

(2) Reliance Upon Other Drugs

As stated above, Prozac is an SSRI. Zoloft and Paxil are also SSRIs, manufactured by Eli Lilly's competitors. A significant portion of Healy's causation testimony is based upon extrapolation from data relating to Zoloft and Paxil. Eli Lilly insists that this is inappropriate. I disagree.

5

Significantly, Eli Lilly does not argue that Healy's methodology used in concluding that Paxil and Zoloft are causally connected to suicidal behavior is unreliable. Indeed, Healy relied upon such things as epidemiological studies and controlled clinical trials - the very things Eli Lilly insists are the hallmarks of a reliable methodology.

Nor does Eli Lilly contend that extrapolation itself is a suspect methodology. Any such argument would be unpersuasive. Extrapolation is a methodology commonly used in the scientific arena. See General Electric Co. v. Joiner, 118 S. Ct. 12, 519 (1997) (stating that "[t]rained experts commonly extrapolate from existing data."); Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1320 (9th Cir. 1995) (noting that scientists may extrapolate from existing data provided that they employ scientific principles); and Forsyth v. Eli Lilly and Co., Civ. No. 95-185 (D. Hawaii) (Opinion and Order dated March 31, 1999 p. 9) (stating that "the Court finds that Dr. Healy has legitimately extrapolated from existing data.").

Rather, Eli Lilly urges that Healy has not accounted for the fact that "even small chemical differences between drugs can have large effects on safety profiles." See Docket No. 43, p. 5. Healy does acknowledge that Zoloft, Paxil and Prozac have molecular differences. Yet he explained that these differences do not impact the existence of a causal link between SSRIs and suicidal behavior:

> [t]here are molecular differences between each of the SSRIs that lead to pharmokinetic and pharmodynamic differences between them. These may be of some relevance to the issue of the extent to which any of these agents cause physical dependence and may make some contribution to the frequency with which they cause

6

> agitation and to the malignancy of that process... . The essential point however is that each of these drugs produce a core functional effect in common - the inhibition of serotonin uptake. And it is this action that appears to be primarily responsible for the agitation, suicidality and assorted extrapyramidal effects these drugs cause ... .

Healy Report, p. 33.

The wealth of articles cited by both parties reflects the fact that SSRIs are often treated or discussed as a group. The testimony at the hearing, the experts' depositions and the numerous exhibits make clear that Zoloft, Paxil and Prozac share a vital, common trait - they inhibit the reuptake of serotonin. Because Healy's testimony is that the causal link is derived from the inhibition of serotonin reuptake, I find his extrapolation to be appropriate and reliable. See Tobin v. SmithKline Beecham, Civ. No. 00-25 (D. Wyoming) (Opinion and Order dated May 8, 2001, p. 23) (stating that, despite the recognized differences in the chemical structures, chemical properties and the ability to inhibit the reuptake of serotonin of the various SSRIs, "the plaintiffs have adequately demonstrated that studies and research done concerning SSRIs other than Paxil can be extrapolated in support of the plaintiffs' general theory of causation.").

(3) Published Medical Literature

Healy's expert report and deposition testimony reveal that he also considered studies published in medical literature. Eli Lilly offers several challenges to these studies. Some of the challenges concern the fact that the focus of certain studies were drugs other than Prozac. The appropriateness of Healy's extrapolation from

7

data regarding other SSRIs is resolved above and need not be repeated here. Other challenges focus upon the lack of comparison or control groups, the failure to control for confounding factors of the lack of statistically significant results from the studies. These arguments are unpersuasive.

First, the Jick study entitled "Antidepressants and Suicide" (BMJ 1995), does report a statistically significant risk of suicide for those patients taking Prozac as compared with those patients taking other antidepressants. Indeed, the empirical data reflected that the risk of suicide to subjects exposed to Prozac was more than double the risk to others. I agree with Judge Kay, who stated in Forsyth v. Eli Lilly, Civ. No. 95-185 (D. Hawaii) (Opinion and Order dated January 5, 1998, p. 19-23), that "the methodology, design, sample size, and statistical analysis of the Jick study were scientifically reliable."

Second, the Donovan study, entitled "Deliberate Self-Harm in Antidepressant Drugs: Investigation of a Possible Link" (Br. J. Psychiatry 2000) established a scientifically significant risk. The article, which had a low rate of error, reported that the incident of deliberate self-harm of people on Prozac was several times more than that of people not on antidepressants. I find persuasive Magistrate Judge Beaman's conclusion in Tobin v. SmithKline Beecham, Civ. No. 00-25 (D. Wyoming) (Opinion and Order dated May 8, 2001) that:

> While the defendant disagrees with and criticizes the results reached and the methodology employed by Dr. Donovan and his associates, such concerns are more appropriately addressed through vigorous cross-examination and the presentation of contrary evidence than in the instant Daubert motion.

8

P. 23.

(4) Prozac Clinical Trial Data

Eli Lilly also argues that Healy's reliance upon and interpretation of Prozac clinical trial data is suspect. I need not address this argument, however, in light of Healy's clarification in his Declaration that he did not base his causation argument on this data. See Docket No. 75, Ex. EE, p. 10.

(5) Anecdotal Data

Eli Lilly argues that case reports and spontaneous reports to the FDA cannot form a reliable basis for causation testimony. In response, Healy clarifies that his reference to the FDA reports was for purposes of establishing the frequency of suicidal behavior, nor for purposes of establishing causation. See Docket No. 75, Ex. EE, p. 9.

## *CONCLUSION*

In Kumho Tire Co., Ltd. V. Carmichael, 526 U.S. 137, 141-42, 119 S. Ct. 1167 (1999), the Supreme Court made clear that "the gatekeeping function is a flexible and commonsense undertaking in which the trial judge is granted 'broad latitude' in deciding both how to determine reliability as well as in the ultimate decision of whether the testimony is reliable." Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1243 (10th Cir. 2000). The Daubert decision does not require me to measure each expert by an inflexible set of criteria, but to ensure that an expert's opinion is the product of the same level of intellectual rigor as would be used in his/her practice in the field. See Smith, 214 F.3d at 1243, quoting, Kumho, 526 U.S. at 152. I am convinced

that Healy's testimony was derived from the same intellectual rigor as would be practiced by those in his field. Materials relating to other SSRIs, published medical literature on Prozac, and Healy's own clinical experience, provide a sufficiently reliable methodology upon which to base his opinions concerning the relationship between Prozac and suicidal behavior.

I also find Healy's methodology concerning SSRIs and suicidal behavior to have sufficiently been subjected to peer review and publication. He has published several articles and one book regarding causation. See Healy, "Emergence of Antidepressant Induced Suicidality," Vol. 6, Primary Care Psychiatry 23 (2000); Healy, "Suicide in the Course of Treatment of Depression," 13(1) Journal of Psychopharmacology 94 (1999); Healy, "The Fluoxetine and Suicide Controversy: A Review of the Evidence," 1(3) CNS Drugs 223 (1994); and Healy, "The Antidepressant Era," (Harvard University Press) (1997). Additionally, some of the materials relating to Paxil and Zoloft, upon which Healy relies, were peer-reviewed.

As to a known rate of error, I think this is also a difficult matter to assess when dealing with psychiatry and something as multifactorial as suicide. Nevertheless, both the Donovan and Jick studies have known rates of error.

The issue of "general acceptance" is a bit more difficult to assess. It appears that this issue is hotly debated, both among the proposed experts in this case and those in the field as well. At any rate, given the extensive publication referenced by Healy, I am willing to accept that his theory has attended general acceptance in the relevant scientific community.

10

I am also convinced that Healy's theory and methodology are not the result of litigation. Healy's work in this area predates his expert services.

Finally, I do believe that the proposed testimony "fits" the facts of the case. There is evidence of record which a jury could accept as reasonable, which would suggest that Diane Cassidy suffered from akathisia. Healy's testimony explains how Prozac can cause akathisia and suicidal behavior.

**************************

| | |
|---|---|
| DATE FILED: | MAY 30, 2002 |
| PLAINTIFFS' COUNSEL: | BERK WHITEHEAD CASSOL FELICIANI & KERR<br>ATTN LAWRENCE D KERR ESQ<br>115 N MAIN ST<br>GREENSBURG PA 15601<br><br>ARNOLD A VICKERY ESQ<br>1000 MEMORIAL DR STE 888<br>HOUSTON TX 77024 |
| DEFENDANT'S COUNSEL: | REED SMITH SHAW & MCCLAY<br>ATTN KERRY A KEARNEY ESQ<br>435 SIXTH AVE<br>PITTSBURGH PA 15219-1886<br><br>SHOOK HARDY & BACON<br>ATTN SHARON M WILLIAMS ESQ<br>1200 MAIN ST ONE KANSAS CTY PL<br>KANSAS CITY MO 64105-2118<br><br>SHOOK HARDY & BACON<br>ATTN MICHELLE R MANGRUM ESQ<br>600 14TH ST NW STE 800<br>WASHINGTON DC 20005-2004 |

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELVIN J. CASSIDY and DIANE V. CASSIDY,   )
                                          )
      Plaintiffs                          )
                                          )
-vs-                                      )
                                          )   Civil Action No. 821
                                          )
                                          )
ELI LILLY COMPANY,                        )
                                          )
      Defendant.                          )

AMBROSE, District Judge.

## ORDER OF COURT

AND NOW, this ___ day of May, 2002, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Defendant's Motion in Limine (Docket No. 42) is DENIED.

BY THE COURT:

*[signature]*

Donetta W. Ambrose,
U. S. District Judge

12