UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------------------x
                                              :        MDL Docket No. 1629
In re:   NEURONTIN MARKETING,                 :
         SALES PRACTICES AND                  :        Master File No. 04-10981
         PRODUCTS LIABILITY LITIGATION        :
                                              :        Judge Patti B. Saris
-------------------------------------------------------------x
                                              :        Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                     :
                                              :
ALL PRODUCTS LIABILITY CASES                  :
IDENTIFIED ON EXHIBIT 1 TO THE                :
DECLARATION OF SCOTT W.SAYLER, ESQ.           :
                                              :
-------------------------------------------------------------x
```

**PRODUCTS LIABILITY PLAINTIFFS' RESPONSE TO DEFENDANTS
PFIZER INC. AND WARNER-LAMBERT COMPANY LLC'S
LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

Pursuant to D. Mass. Local Rule 56.1, Products Liability Plaintiffs ("Plaintiffs") hereby respond to Defendants Pfizer Inc. ("Pfizer") and Warner-Lambert Company LLC's ("Warner-Lambert") (collectively "Defendants") Local Rule 56.1 Statement of Material Facts in support of their Motion for Summary Judgment.

Plaintiffs object to Defendants' purported facts to the extent Defendants contend that such purported facts constitute all material facts that need to be tried or otherwise found in order for Defendants to prevail on its motion. Plaintiffs state that Defendants purported facts do not comprise all such material facts, and furthermore contain statements that are not material facts as more fully set-forth below and in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment on Preemption and Daubert.

Defendants' "Statement of Fact" No. 1

1.     Plaintiffs allege that they (or their decedents) attempted or committed suicide, made suicidal gestures, and/or experienced suicidal ideations (with or without physical injury) between the years 2000 and 2005 as a result of Pfizer's failure to warn of an increased risk of suicide-related events with Neurontin® (gabapentin) (hereinafter "Neurontin"). (Declaration of Scott W. Sayler, Esq. ("Sayler Decl."), at Ex. 1.)[1]

Plaintiffs' Response to Statement No. 1

Disputed.  Plaintiffs submit that the statement in paragraph 1 of Defendants' Purported

Facts is incomplete.  Plaintiffs allege that in promoting and selling Neurontin for prescription to,

and purchase and off-label use by Plaintiffs and their decedents, (1) Defendants negligently and,

recklessly failed to exercise due care toward Plaintiffs and their decedents, failed to warn

Plaintiffs and their decedents of the ineffectiveness of and adverse effects caused by using

Neurontin and breached their continuing duty of pharmacovigilance with respect to Plaintiffs and

their decedents, (2) breached express and implied warranties with respect to Plaintiffs and their

decedents, (3) assumed a strict products liability to users and to persons using Neurontin,

including Plaintiffs and their decedents, (4) fraudulently misrepresented material facts

concerning the effectiveness and safety of Neurontin, and (5) employed deceptive acts and

practices for the purpose of inducing medical providers to prescribe Neurontin to Plaintiffs and

their decedents for unapproved off-label uses, thereby causing Plaintiffs and their decedents to

purchase and use Neurontin for off-label uses, suffer suicidal ideations, make suicidal gestures

and/or attempt or commit suicide and to sustain monetary damages.  Summons and Complaint,

*Ronald J. Bulger, Sr., as Administrator of Estate of Susan Bulger, Deceases v. Pfizer, Inc, et. al.*

(07 CA 11426) attached as Exhibit 42 to Declaration of Andrew G. Finkelstein, Esq..  Further

references below to Exhibits attached to the Finkelstein Declaration will hereinafter be referred

---

[1] Defendants Pfizer Inc. and Warner-Lambert Company LLC's Motion for Summary Judgment is directed at the cases listed on Exhibit 1 to the Declaration of Scott W. Sayler, Esq.

to as "Pls.' Ex.___ ."

Defendants' "Statement of Fact" No. 2

2.    On January 15, 1992, Warner-Lambert submitted to FDA an NDA seeking approval to market Neurontin for use as adjunctive therapy in the treatment of partial seizures in patients with epilepsy.  The initially-submitted NDA comprised 250 volumes of safety and efficacy data, including an Integrated Summary of Safety.  (Declaration of Mary Ann Coronel ("Coronel Decl."), at Ex. 1.)

Plaintiffs' Response to Statement No. 2

Undisputed.

Defendants' "Statement of Fact" No. 3

3.    In December 1992, after a careful review of the Neurontin safety data, FDA summarized its clinical data review of the initial NDA submission and multiple safety updates in a comprehensive 113-page report in which FDA evaluated all adverse events from the clinical trials to identify potential safety risks, including the adverse events of depression and suicidality. (Coronel Decl., at Ex. 3.)

Plaintiffs' Response to Statement No. 3

Disputed.    Plaintiffs submit that the statement made in paragraph 3 of Defendants'

Purported Facts is incorrect.  The cited exhibit is a draft report and is a summary wherein FDA

reviewed only 3 of 4 randomized controlled trials submitted to support the proposed efficacy of

Neurontin as adjunctive treatment for the limited population of patients with refractory seizures.

The Division of Neuropharmacological Drug Products Combined Medical- Statistical Review is

a 119 pages document. Pls.' Ex. 15.  It is undisputed that the FDA found that Neurontin use may

cause depression to become worse and require intervention or lead to suicide as it has resulted in

some suicidal attempts in the three clinical trials reviewed. Pls.' Ex. 15 at p. 117.  No FDA

document exists that FDA changed or modified their opinion regarding Neurontin causing

depression to become worse and requiring intervention or leading to suicide.  The Peripheral and

Central Nervous System Drugs Advisory Committee conducted a meeting on December 15, 1992 and voted unanimously that Neurontin was safe and effective **only** for the add-on treatment for intractable partial seizures in adults. Pls.' Ex. 34 at pp. 125-126.

Defendants' "Statement of Fact" No. 4

4.    In the FDA report, Dr. Cynthia McCormick, the FDA Medical Review Officer who was primarily responsible for reviewing the Neurontin clinical safety data, specifically analyzed and discussed suicide-related events in Neurontin patients.  (Coronel Decl., at Ex. 3-4.)

Plaintiffs' Response to Statement No. 4

Disputed.  Plaintiffs submit that the statement made in paragraph 4 of Defendants' Purported Facts is incorrect.  No document exists that Dr. Cynthia McCormick "specifically analyzed" suicide-related events.  Plaintiffs submit that Dr. Cynthia McCormick stated that Neurontin use may cause depression to become worse and require intervention or lead to suicide as it has resulted in some suicidal attempts in the three clinical trials reviewed.  Pls.' Ex. 15 at p. 117.

Defendants' "Statement of Fact" No. 5

5.    Dr. McCormick found no evidence that Neurontin increases the risk of or causes depression or suicidal behavior.  (Sayler Decl., Ex. 2 at ¶¶ 11-21; Coronel Decl., Ex. 5 at 8.) Had she concluded there was an increased risk of these events with Neurontin, Dr. McCormick said, she would have recommended that the drug not be approved or, at a minimum, required that the issue be "prominently noted in a warning in the final approved labeling."  (*Id.* at ¶ 14.)

Plaintiffs' Response to Statement No. 5

Disputed.  Plaintiffs submit that the statement made in paragraph 5 of Defendants' Purported Facts is incorrect.  Plaintiffs submit that the cited document is hearsay, supposition and not in admissible form.  Dr. McCormick found that Neurontin use may cause depression to become worse and require intervention or lead to suicide as it has resulted in some suicidal

attempts in the three clinical trials reviewed. Pls.' Ex. 15 at p. 117. On September 27, 1993, Dr. McCormick did not retract her opinion that Neurontin would cause depression to become worse and require intervention or lead to suicide in her 19 page safety update report. Pls.' Ex. 17 at 0084498. On December 15, 1993, Dr. McCormick did not retract her opinion that Neurontin would cause depression to become worse and require intervention or lead to suicide in an 8 page safety update report. Pls.' Ex. 17 at 00084687. No FDA document exists that FDA changed or modified their opinion that Neurontin causes depression to become worse and will lead to suicide.

Defendants' "Statement of Fact" No. 6

6.    Dr. Russell Katz, Deputy Director of FDA's Division of Neuropharmacological Drug Products, prepared a report as part of his review of the NDA, dated October 11, 1993, in which he noted that one patient committed suicide "after having been off drug for a considerable time" and ten patients [out of 2,048] discontinued the trial due to depression or suicidal ideation. (Coronel Decl., Ex. 6 at 13-14.)

Plaintiffs' Response to Statement No. 6

Undisputed. Plaintiffs do not contest that ten patients discontinued treatment in the adjunctive treatment for refractory seizure trials, an additional seven discontinued due to thinking abnormal, four discontinued due to anxiety, four discontinued due to agitation, four discontinued due to nervousness. Pls.' Ex. 15 at p. 84.

Defendants' "Statement of Fact" No. 7

7.    Dr. Katz further observed that seven of 78 adverse events reported as "serious" involved depression, of which four events were considered either "possibly" or "probably" related to Neurontin. (Coronel Decl., Ex. 6 at 15.)

Plaintiffs' Response to Statement No. 7

Undisputed. Plaintiffs do not contest that seven of 78 adverse events reported as

"serious" involved depression, *additionally* there were six of 78 adverse events reported as "serious" involved overdose, of which two were considered possibly or probably related to Neurontin, and there were two of 78 adverse events reported as "serious" involved suicide attempts and both were considered "possibly" or "probably" related to Neurontin.  Pls.' Ex. 15 at p. 102 and 107.

Defendants' "Statement of Fact" No. 8

8.     Dr. Paul Leber, Director of FDA's Neuropharmacological Division, also prepared a report of the safety and effectiveness of Neurontin, entitled, "Approval Action Memorandum," dated December 13, 1993.  Dr. Leber's findings were consistent with those of Dr. Katz and Dr. McCormick.  (Coronel Decl., at Ex. 7.)

Plaintiffs' Response to Statement No. 8

Disputed.   Plaintiffs submit that the statement made in paragraph 8 of Defendants' Purported Facts is incorrect.  Plaintiffs submit the Purported Facts in paragraph 8 is speculative and not in admissible form.  Plaintiffs do not dispute that Dr. Paul Leber, Director of FDA's Neuropharmacological Division, found Neurontin 'safe for use' *only* when administered under the conditions described by the Divisions proposed draft labeling. Pls.' Ex. 82 at p. 4.   It is further undisputed that Dr. Paul Leber explicitly stated that the Division's conclusions that Neurontin is 'safe for use' is not a warrant that the use of Neurontin is without risk.  *Id*.  The FDA conclusion reflects a judgment by the FDA review team that the risks attributed to the use of Neurontin are reasonably acceptable in light of the benefits that the use of Neurontin is expected to provided when it is administered to the intended population under the condition of use recommended in its approved product labeling.  *Id*.  No document exists wherein the FDA found Neurontin 'safe for use' beyond the labeled population or indication.

Defendants' "Statement of Fact" No. 9

9.    An independent panel of outside experts, FDA's Peripheral and Central Nervous System Drugs Advisory Committee, also evaluated the data on Neurontin.  Dr. McCormick's clinical review was provided to the Committee and she discussed with the Committee the various adverse events reported in the clinical trials, including the suicide-related events, during its December 15, 1992 meeting.  None of the experts at the panel meeting concluded that Neurontin causes or increases the risk of these events and the panel voted unanimously in favor of FDA approval.  (Sayler Decl., Ex. 2 at ¶ 20; Coronel Decl., Ex. 13 at 43, 55, 58-59, 125-26.)

Plaintiffs' Response to Statement No. 9

Disputed.  The FDA Peripheral and Central Nervous System Drugs Advisory Committee

did not separately evaluate Neurontin's effect on suicidality and the unanimous vote was limited

only to whether the sponsor provided evidence in more than one adequate and well-controlled

clinical investigation that Neurontin is safe and effective for the treatment as an add-on for

intractable partial seizures in adults. Pls.' Ex. 34 at pp. 125-126.


Defendants' "Statement of Fact" No. 10

10.    On December 30, 1993, after two years of review, FDA concluded that Neurontin was safe and effective for its intended use and issued an approval letter. FDA approved Neurontin on the condition that the final printed labeling be identical to the draft labeling FDA had reviewed, edited, and approved or the company would be in violation of federal law. (Coronel Decl., at Ex. 8; Sayler Decl., Ex. 2 at ¶ 27.)  The letter stated in pertinent part:

> The final printed labeling (FPL) must be identical to the draft labeling/PPI enclosed as Attachment 1 with this letter.  Marketing the product with FPL that is not identical to the draft labeling may render the product misbranded and an unapproved new drug.

(Coronel Decl., at Ex. 8.)

Plaintiffs' Response to Statement No. 10

Undisputed.

Defendants' "Statement of Fact" No. 11

11.     As of the time of approval in December 1993, FDA found that there was no scientific evidence supporting an increased risk of suicidal behavior and thinking with Neurontin and the agency did not include any such warning in the labeling.  (Sayler Decl., Ex. 2 at ¶¶ 28- 29, Coronel Decl., at Ex. 8.)

Plaintiffs' Response to Statement No. 11

Disputed.  Plaintiffs submit that the statement made in paragraph 11 of Defendants' Purported Facts is incorrect.  Plaintiffs submit the FDA found that Neurontin use may cause depression to become worse and require intervention or lead to suicide as it has resulted in some suicidal attempts in the three clinical trials reviewed.  Pls.' Ex. 15 at p. 117.  No FDA document exists that FDA changed or modified their opinion regarding Neurontin causing depression to become worse and requiring intervention or leading to suicide.

Defendants' "Statement of Fact" No. 12

12.     Dr. McCormick, FDA's principal clinical reviewer for Neurontin has stated:

Given the relatively low frequency of suicidal adverse events reported in the clinical trials and the high background rate of suicidal behavior in patients with epilepsy, the FDA did not believe it would have been appropriate to address suicidal behavior in the warnings, precautions, or contraindications sections. Accordingly, *the FDA's scientific judgment in December 1993 was that there was no reasonable evidence of an association with Neurontin and suicidal behavior or any psychiatric adverse event.  To include a warning or other prominent listing of suicide-related events would have been inconsistent with the clinical trial data and a mischaracterization of the risks associated with Neurontin.*  In addition, such a warning would have had significant potential to impact public health adversely; both by diluting scientifically supported information in the labeling and by improperly discouraging the use of Neurontin.

(Sayler Decl., Ex. 2 at ¶ 29.) (emphasis added).

Plaintiffs' Response to Statement No. 12

Disputed.  Plaintiffs submit that the statement made in paragraph 12 of Defendants' Purported Facts is incorrect.  Plaintiffs object to the cited document as hearsay, supposition and

not in admissible form.  Plaintiffs submit that Dr. McCormick found the epilepsy clinical trial data demonstrated Neurontin use may cause depression to become worse and require intervention or lead to suicide as it has resulted in some suicidal attempts in the three clinical trials reviewed. Pls.' Ex. 15 at p. 117.   On September 27, 1993, Dr. McCormick did not retract her opinion that Neurontin would cause depression to become worse and require intervention or lead to suicide in her 19 page safety update report.  Pls.' Ex. 17 at 0084498.  On December 15, 1993, Dr. McCormick did not retract her opinion that Neurontin would cause depression to become worse and require intervention or lead to suicide in a 8 page safety update report.  Pls.' Ex. 17 at 0084687.  No FDA document exists that FDA changed or modified their opinion regarding Neurontin causing depression to become worse and requiring intervention or leading to suicide.

Defendants' "Statement of Fact" No. 13

13.    During its 1993 review of the draft labeling, FDA removed Warner-Lambert's proposed language from the Mechanism of Action section discussing the effect of Neurontin on certain neurotransmitters in the brain. Specifically, FDA removed the statement: "Gabapentin slightly reduces the release of monoamine neurotransmitters in vitro."  (Coronel Decl., Ex. 1 at Pfizer_LCastro_0039688, Ex. 14, Ex. 15 at WLC_CBU_1 19984, Ex. 16 at WLC_JTurner _000827.)

Plaintiffs' Response to Statement No. 13

Undisputed.

Defendants' "Statement of Fact" No. 14

14.    In August 2001, Pfizer filed a supplemental new drug application for Neurontin ("sNDA") seeking an indication for the management of neuropathic pain. (Coronel Decl., at Ex. 17.)

Plaintiffs' Response to Statement No. 14

Undisputed.

Defendants' "Statement of Fact" No. 15

15.    Though Pfizer ultimately sought approval only for use in treating one type of neuropathic pain, postherpetic neuralgia ("PHN"), the results of the clinical trials also included "confirmatory safety findings in other neuropathic pain conditions."  (Coronel Decl., Ex. 9 at 3.)

Plaintiffs' Response to Statement No. 15

Disputed.  Plaintiffs submit that the statement made in paragraph 15 of Defendants' Purported Facts is incorrect.  PL Plaintiffs submit the safety was evaluated by review of the August 6, 2001 Defendants' Integrated Summary of Safety which included five original completed neuropathic pain studies and the December 20, 2001 Integrated Summary of Safety which included only PHN subjects.  Pls.' Ex. 83 at 17.  PL Plaintiffs submit that no other clinical trials were reviewed by FDA when evaluating safety for PHN patients as no document exists FDA reviewed any other clinical trial related to FDA's PHN review.  PL Plaintiffs submit FDA did not review the epilepsy pediatric trials that resulted in a prominent warning for neuropsychiatric events in the label. Pls.' Ex. 22 at 10.

Defendants' "Statement of Fact" No. 16

16.    Pfizer submitted an Integrated Summary of Safety in August 2001 and a safety update in December 2001.  (Coronel Decl., Ex. 9 at 52-53.)

Plaintiffs' Response to Statement No. 16

Undisputed.

Defendants' "Statement of Fact" No. 17

17.    The FDA clinical reviewer with responsibility for the PHN application, Dr. Sharon Hertz, prepared a report, dated May 24, 2002, detailing her analysis of the clinical data. (Coronel Decl., at Ex. 9.)

Plaintiffs' Response to Statement No. 17

Undisputed.

Defendants' "Statement of Fact" No. 18

18.     Dr. Hertz analyzed all of the adverse events data, including the reports of depression and suicide-related events from the clinical trials in neuropathic pain disorders.  Dr. Hertz found that the incidence of treatment-emergent depression in the neuropathy studies was higher in patients on *placebo* than patients taking Neurontin (2.2% vs. 1.3%).  (Coronel Decl., Ex. 9 at 77.)

Plaintiffs' Response to Statement No. 18

Disputed.  PL Plaintiffs submit that the statement made in paragraph 18 of Defendants' Purported Facts is incorrect.  PL Plaintiffs submit Dr. Hertz did not independently review and make a finding related to the incidence of treatment emergent depression.  PL Plaintiffs do not contest the reported incidence of treatment-emergent depression in the studies examined as described by Defendants.  Plaintiffs submit there were two suicide attempts while on Neurontin treatment requiring discontinuation and zero during placebo treatment. Pls.' Ex. 83 at 71.  While on Neurontin treatment there were no (0.0%) adverse events of treatment emergent depression at 600 mg, there was one (1.2%) treatment emergent depression at 1,200 mg, there were no (0.0%) adverse events of depression at 1800 mg, there were seven (2.0%) treatment emergent depression at 2,400 mg, there were three (1.5%) treatment emergent depression at 3,600 mg. Pls.' Ex. 83 at 73.  PL Plaintiffs submit no document exists indicating that either Dr. Hertz or Dr. McCormick reviewed or considered any of the Defendants clinical trials related to pediatric epilepsy, bipolar, social phobia, anxiety or any other clinical trial conducted unrelated to pain or PHN between the time of the original epilepsy approval and the PHN submission.

Defendants' "Statement of Fact" No. 19

19.     Dr. Hertz noted one incident of intentional overdose, which Pfizer had reported as a suicide attempt. The patient developed somnolence after taking a higher dose of medication, but only the somnolence was attributed to Neurontin, not the overdose.  (Coronel Decl., Ex. 9 at 66.)

Plaintiffs' Response to Statement No. 19

      Disputed.  Plaintiffs submit that the statement made in paragraph 19 of Defendants' Purported Facts is incorrect.  The reported patient, a 36 year old Hispanic woman, intentionally overdosed in a suicide attempt and developed somnolence, requiring hospitalization, after taking 4500 mg of Neurontin.  An attempt to empty her stomach failed.  She received hydration only.  Neurontin therapy was discontinued from the study on Day 28.  Defendants' investigator determined the adverse <u>events</u> of suicide attempt and intentional overdose were definitely related to Neurontin.  Pls.' Ex. 84.

Defendants' "Statement of Fact" No. 20

      20.    Dr. Hertz's analysis of the safety data included a review of the postmarketing experience with Neurontin, in which Dr. Hertz discussed adverse events reported in patients using the drug for off-label uses.  Specifically, Dr. Hertz noted that "[o]f 7655 cases reporting 20,076 [adverse] events, 75% originated in the US, and neuropathic pain was identified as the indication in 1294 cases [i.e., patients]."  (Coronel Decl., Ex. 9 at 14)  Dr. Hertz's report further shows that patients using Neurontin for all off-label indications (including neuropathic pain) comprised 3,084 of the 7,655 cases reporting adverse events, or 40%.  (*Id.* at 15.)

Plaintiffs' Response to Statement No. 20

      Undisputed.  Plaintiffs do not contest Dr. Hertz reviewed the data submitted by Defendants.  Plaintiffs  do contest whether any safety analysis was performed by FDA as <u>no document exists </u>describing FDA analysis of off-label usage of Neurontin.  Plaintiffs submit Dr. Hertz found the postmarketing data <u>limited</u> due to them being mostly voluntary; no accurate denominator was available to determine how these frequencies compare to controlled trials. Pls.' Ex. 83 at 14.  Plaintiffs submit that prior to December 7, 1999, "<u>off-label use of drug</u>" adverse event reports were ***not*** uniformly by the Defendants. *Id.* at 15.

Defendants' "Statement of Fact" No. 21

21.    Based on her review of the safety and efficacy data, Dr. Hertz recommended approval of Neurontin for the management of PHN.  (Coronel Decl., Ex. 9 at last page.)

Plaintiffs' Response to Statement No. 21

Undisputed.  Plaintiffs submit Dr. Hertz recommended approval of Neurontin of dosing to 1,800/mg with little additional benefit from higher dosage for the limited population of  adult sufferers of  Post Herpetic Neuralgia.  Pls.' Ex. 83 at 80.

Defendants' "Statement of Fact" No. 22

22.    Dr. Robert Rappaport, the Deputy Director of FDA's Division of Anesthetic, Critical Care, and Addiction Drug Products ("DACCADP"), concurred with Dr. Hertz's conclusions and also recommended approval.  (Coronel Decl., Ex. 9 at last page.)

Plaintiffs' Response to Statement No. 22

Undisputed.

Defendants' "Statement of Fact" No. 23

23.    Dr. McCormick, who reviewed the original Neurontin NDA and, by this time was the Director of the DACCADP, prepared a report, dated May 22, 2002, "Review and Basis for Approval Action," in which she stated that there had been an adequate demonstration of safety and effectiveness of Neurontin in the treatment of PHN to support approval. (Coronel Decl., Ex. 10 at 3.)

Plaintiffs' Response to Statement No. 23

Undisputed.

Defendants' "Statement of Fact" No. 24

24.    Dr. McCormick did not discuss suicidality in her report because, among other things, "Neurontin had in 2002 been in use throughout the world for nearly a decade and had not given rise to a safety signal involving any psychiatric adverse event or suicidality."  (Coronel Decl., Ex. 10 at 3; Sayler Decl., Ex. 2 at JJ 3 8-39.)

<u>Plaintiffs' Response to Statement No. 24</u>

Disputed.  Plaintiff' submit that the statement made in paragraph 24 of Defendants' Purported Facts is incorrect. Plaintiffs object to the cited document as it is hearsay, supposition and not in admissible form.  The cited statement was written by Defendants' lawyers in 2007 Pls.' Ex. 33at pp. 82-83.  PL Plaintiffs submit <u>no document exists</u> indicated that either Dr. Hertz or Dr. McCormick reviewed or considered any of the Defendants clinical trials related to pediatric epilepsy, bipolar, social phobia, anxiety or any other clinical trial conducted unrelated to pain or PHN between the original epilepsy approval and the PHN submission. Pls.' Ex. 83 at 17.  PL Plaintiffs submit the pediatric epilepsy trials demonstrated a clear association between Neurontin and both psychiatric adverse events and suicidal adverse events.  Pls.' Ex. 22 at 10.

<u>Defendants' "Statement of Fact" No. 25</u>

25.    As it did in 1993, FDA again removed certain proposed language from the Mechanism of Action section when determining the final PHN labeling.  In particular, FDA deleted the following language:

> Gabapentin reduces the stimulated release of noradrenaline, dopamine, and glutamate under certain laboratory conditions. Gabapentin administration to humans increases the total brain content of GABA after a single dose. However, the relevance of these findings to clinical use is not yet clear.

(Sayler Decl., Ex. 2 at ¶¶ 40-41; Coronel Decl., Ex. 11 at 3.)

<u>Plaintiffs' Response to Statement No. 25</u>

Undisputed.

<u>Defendants' "Statement of Fact" No. 26</u>

26.    FDA's decision to remove this language from the prescribing information for physicians reflects the agency's belief that this information was not clinically significant. (Sayler Decl., Ex. 2 at ¶ 41.)

Plaintiffs' Response to Statement No. 26

Disputed.   Plaintiffs submit that the statement made in paragraph 26 of Defendants' Purported Facts is incorrect.  Defendants fail to support their incorrect statement with admissible evidence.  Plaintiffs submit the statement is nothing more than a  question of fact.

Defendants' "Statement of Fact" No. 27

27.   On May 24, 2002, FDA issued an approval letter for the treatment of PHN. FDA conditioned approval on the *verbatim* use of the FDA-approved labeling and warnings, stating that marketing the product with final printed labeling that is not identical to the approved labeling could render the drug misbranded.  (Coronel Decl., at Ex. 12.)

Plaintiffs' Response to Statement No. 27

Undisputed.

Defendants' "Statement of Fact" No. 28

28.   FDA did not require warnings that Neurontin causes or increases the risk of suicide-related events in the May 2002 approved Neurontin labeling.  (Coronel Decl., at Ex. 12.)

Plaintiffs' Response to Statement No. 28

Undisputed.

Defendants' "Statement of Fact" No. 29

29.   The references to suicide-related events from the epilepsy add-on trials contained in the Adverse Reactions section remained unchanged from the initial labeling approved in December 1993.  (Coronel Decl., Ex. 12 at 27-28.)

Plaintiffs' Response to Statement No. 29

Disputed.   Plaintiffs submit that the statement made in paragraph 29 of Defendants' Purported Facts is incorrect.  Plaintiffs submit the cited document is a 2002 label containing only the terms "suicidal" and "suicide gesture".  Plaintiffs submit in 2006, the Neurontin label was revised and the term "suicide attempt" and "suicide" was added. Pls.' Ex. 22 at 21. Plaintiffs do

not contest that the other suicide related precursor events from the epilepsy add-on trials, including "anxiety", "hostility", and "agitation" remained unchanged from the initial labeling approved in December 1993.

Defendants' "Statement of Fact" No. 30

30.    On April 26, 2004, FDA asked Pfizer to perform a comprehensive search, pursuant to specific FDA-mandated protocols, of the Neurontin clinical trial and postmarketing data for cases of suicide and suicide attempt.  (Coronel Decl., at Ex. 18.)

Plaintiffs' Response to Statement No. 30

Disputed.  Plaintiffs submit that the statement made in paragraph 30 of Defendants' Purported Facts is incorrect.  Plaintiffs submit the supporting document is hearsay and not in admissible form.  On April 26, 2004, FDA did not set-forth specific mandated protocols.  Pls.' Ex. 85.

Defendants' "Statement of Fact" No. 31

31.    Pfizer responded to FDA's request by filing two submissions, in September and November 2004, respectively.  (Coronel Decl., at Ex. 19-20.)

Plaintiffs' Response to Statement No. 31

Undisputed.

Defendants' "Statement of Fact" No. 32

32.    The September 2004 submission included the results of the search for cases of suicide and suicide attempts in 92 Phase 2-4 placebo-controlled, non-placebo controlled, and open-label (uncontrolled) Neurontin studies included in the investigational new drug applications ("INDs"), NDAs, and sNDAs, as well as the analysis of postmarketing data.  (Coronel Decl., Ex. 19 at 2.)

Plaintiffs' Response to Statement No. 32

Disputed.  Plaintiffs submit that the statement made in paragraph 32 of Defendants' Purported Facts is incorrect.  Plaintiffs do not dispute that Defendants did search for all reports

containing the characters "suic" or "overdos" and reviewed those reports along with all reports involving a death. Pls.' Ex. 86 at pp. 12-13. Plaintiffs submit that any non-death report that did not contain the text "suic" or "overdos" was not reviewed even though such reports may have used alternate phrases to describe a suicidal event; Plaintiffs submit that Defendants acknowledged that relevant reports could exist that would not contain "suic" or "overdose". *Id*. at p. 13.

Defendants' "Statement of Fact" No. 33

33.     These studies included patients with psychiatric disorders such as bipolar disorder, panic disorder, and social phobia. There were no reports of suicide or suicide attempt in these studies. (Coronel Decl., Ex. 19 at 27.)

Plaintiffs' Response to Statement No. 33

Disputed. Plaintiffs submit that the statement made in paragraph 33 of Defendants' Purported Facts is incorrect. Plaintiffs submit there were 2 cases of completed suicide in Neurontin treated epileptic subjects and no completed suicides in the placebo treated patients. There were 12 cases of suicide attempt in Neurontin treated subjects of which 11 were subjects in the Epilepsy trials and 1 case involved a subject in the neuropathic pain study. There were no cases of suicide attempt in placebo treated patients. Pls.' Ex. 86 at p. 2. There were 14 reports of overdose in the Epilepsy trials and STEPS trials. Pfs.' Ex. 5 at pp. 10 and 34, ¶¶ 44 and 76.

Defendants' "Statement of Fact" No. 34

34.     The November 2004 submission included 55 Phase I Neurontin clinical trials in healthy volunteers and patients. There were no cases of suicide or suicide attempt in any placebo-controlled or non-placebo controlled studies in healthy volunteers or patients. (Coronel Decl., Ex. 20 at 2.)

Plaintiffs' Response to Statement No. 34

Disputed. Plaintiffs submit that the statement made in paragraph 34 of Defendants'

Purported Facts is incorrect.  Plaintiffs do not dispute that Defendants did search for all reports

containing the characters "suic" or "overdos" and reviewed those reports along with all reports

involving a death.  Pls.' Ex. 87 at pp. 4-5.  Plaintiffs submit that any non-death report that did not

contain the text "suic" or "overdos" was not reviewed even though such reports may have used

alternate phrases to describe a suicidal event; Plaintiffs submit that Defendants acknowledged

that relevant reports could exist that would not contain "suic" or "overdose".  *Id.* at p. 5.

Defendants' "Statement of Fact" No. 35

     35.     On October 20, 2005, after a review of the September and November 2004
submissions, the agency asked Pfizer to make "minor labeling changes" to the terminology in the
Adverse Reactions section of the Neurontin label regarding suicide-related events.  (Coronel
Decl., at Ex. 2 1-24.)

Plaintiffs' Response to Statement No. 35

     Disputed.  Plaintiffs submit that the statement made in paragraph 35 of Defendants'

Purported Facts is incorrect.  Plaintiffs submit <u>no evidence</u> exists supporting the Purported Fact

that the request for the changes was based upon a review of Defendants' September and

November 2004 submissions.  Plaintiffs dispute "minor labeling changes" as inferring something

beyond the statutory definition for "minor labeling change" as set-forth at 21. C.F.R. Ch. I (4-1-

06 Edition) § 314.70 (d).  Pls.' Ex. 88 at p. 114.

Defendants' "Statement of Fact" No. 36

     36.     FDA did not find that Neurontin increased the risk of suicide-related events and,
accordingly, did not ask Pfizer to add any warning to the label.  (Coronel Decl., at Ex. 21.)

Plaintiffs' Response to Statement No. 36

     Disputed.  Plaintiffs submit that the statement made in paragraph 36 of Defendants'

Purported Facts is incorrect.   Plaintiffs submit the FDA analysis found patients receiving

Neurontin had approximately twice the risk of suicidal behavior or ideation compared to patients receiving placebo.  Pls.' Ex. 1 at p. 1.  FDA expects to apply broad labeling changes to Neurontin.  *Id*. p 4.

Defendants' "Statement of Fact" No. 37

      37.    FDA asked Pfizer to modify the "Other Adverse Events Observed During All Clinical Trials: Clinical Trials in Adults and Adolescents with Epilepsy" section by changing the terms "suicidal" and "suicide gesture" to "suicide attempt" and "suicide," as infrequent and rare events, respectively.  Similarly, in the subsection entitled "Clinical Trials in Adults With Neuropathic Pain of Various Etiologies," FDA added "suicide attempts" as an infrequent event. Finally, FDA asked that the information in the label reflecting the number of patients exposed to Neurontin in the epilepsy add-on trials be updated to reflect the numbers Pfizer provided with its suicidality analyses in 2004. (Coronel Decl., at Ex. 21.)

Plaintiffs' Response to Statement No. 37

      Undisputed.

Defendants' "Statement of Fact" No. 38

      38.    On November 22, 2005, following additional coordination, FDA directed Pfizer to "proceed with the minor labeling changes pertaining to suicide-related events."  (Coronel Decl., at Ex. 22-24.)

Plaintiffs' Response to Statement No. 38

      Undisputed.  Plaintiffs contest Defendants' use of "minor labeling changes" as inferring something beyond the statutory definition for "minor labeling change" as set-forth at 21. C.F.R. Ch. I (4-1-06 Edition) § 314.70 (d).  Pls.' Ex. 88 at p. 114.

Defendants' "Statement of Fact" No. 39

      39.    On December 21, 2005, Pfizer submitted the minor labeling changes to FDA. (Coronel Decl., at Ex. 25.) On May 3, 2006, FDA issued an approval letter, which stated in relevant part:

      We have completed our review of these applications. These applications are approved, effective on the date of this letter, for use as recommended in the

agreed-upon labeling text.

The final printed labeling (FPL) *must be identical* to the submitted labeling
(package insert submitted December 21, 2005).

(Coronel Decl., at Ex. 26.) (emphasis added).

Plaintiffs' Response to Statement No. 39

Undisputed.  Plaintiffs contest Defendants' use of "minor labeling changes" as inferring

something beyond the statutory definition for "minor labeling change" as set-forth at 21. C.F.R.

Ch. I (4-1-06 Edition) § 314.70 (d).  Pls.' Ex. 88 at p. 114.

Defendants' "Statement of Fact" No. 40

40.    Having considered clinical and postmarketing data relating to suicide-related
events from *all* patient populations – including those patients taking the product for epilepsy,
neuropathic pain, bipolar and other psychiatric indications – FDA once again determined that
Neurontin's label should not include any suicide warning.  (Coronel Decl., at Ex. 19-26.)

Plaintiffs' Response to Statement No. 40

Disputed.  Plaintiffs submit that the statement made in paragraph 40 of Defendants'

Purported Facts is incorrect.  Plaintiffs dispute that the FDA considered all clinical data or any

postmarketing data regarding suicide related events.  No FDA document exists supporting the

statement or describing what the FDA considered.

Defendants' "Statement of Fact" No. 41

41.    After FDA was contacted by the manufacturer of an antiepileptic drug ("AED")
other than Neurontin, FDA asked the manufacturers of eleven AEDs (including Neurontin) to
analyze "possibly suicide-related adverse events" occurring in randomized double-blind,
placebo-controlled trials.  (Sayler Decl., Ex. 3 at 1; Coronel Decl., at Ex. 27.)

Plaintiffs' Response to Statement No. 41

Disputed.  Plaintiffs submit that the statement made in paragraph 41 of Defendants'

Purported Facts is incorrect.  Plaintiffs submit FDA observation of suicidality as a drug-induced

adverse effect in pediatric antidepressant trials formed FDA interest in examining data from placebo-controlled trials of antiepileptic drugs to assess similar effects. Pls.' Ex. 89 at p. 1.

Defendants' "Statement of Fact" No. 42

42.    Using criteria established by FDA, in June 2006 Pfizer submitted data to FDA on 49 clinical trials relating to Neurontin. The data showed no suicidal behavior (i.e., completed suicides, suicide attempts, or preparatory acts) in the Neurontin-treated group, and the tiny numerical difference in the incidence of suicide ideation between the Neurontin and placebo groups (0.039% vs. 0.037%) was not statistically significant. (Coronel Decl., Ex. 28 at 4.)

Plaintiffs' Response to Statement No. 42

Disputed.  Plaintiffs submit that the statement made in paragraph 42 of Defendants' Purported Facts is incorrect.  Plaintiffs contest Defendants' statement drawn from the suicidal behavior data as there is either no event to report or insufficient information to classify the event, and thus no information in the table to make any comparison.  For suicidal ideation there are 2 events out of 5,194 total (0.039%) among the gabapentin treated versus 1 event out of 2,682 total (0.037%) among the placebo treated.  The estimated risk ratio is thus .039/.037 = 1.05.  Using statistical methods for categorical data with small counts of a rare event (Greenland and Rothman, 2008), the 95% confidence interval for the risk ratio ranges from 0.08 to 30. Plaintiffs submit the data presented in the table cannot reasonably exclude the possibility that gabapentin multiplies the risk of suicidal ideation by 30-fold.  Pls.' Ex. 90 at pp. 4-5.

Defendants' "Statement of Fact" No. 43

43.    In January 2008, after analyzing aggregate, pooled data from placebo-controlled trials involving all eleven AEDs, FDA stated that the patients receiving one or more of these eleven AEDs in clinical trials had shown an increased risk of suicidal behavior or thinking. (Sayler Decl., at Ex. 4.)

Plaintiffs' Response to Statement No. 43

Undisputed.  Plaintiffs submit the FDA 2008 alert stated patients receiving antiepileptic

drugs had approximately twice the risk of suicidal behavior or ideation compared to patients receiving placebo. Pls.' Ex. 1.

Defendants' "Statement of Fact" No. 44

44.    FDA reported that all AED patients combined had approximately twice the risk of suicidal behavior or thinking compared to placebo-treated patients (0.43% vs. 0.22%). The agency's determination reportedly was based on an analysis of 27,863 drug-treated patients and 16,029 placebo-treated patients in 199 placebo-controlled clinical trials covering the eleven different AEDs. (Sayler Decl., at Ex. 4.)

Plaintiffs' Response to Statement No. 44

Disputed.  Plaintiffs submit that the statement made in paragraph 44 of Defendants' Purported Facts is incorrect.  Plaintiffs contest Defendants' statement of patients "combined". Plaintiffs submit the FDA 2008 Alert stated patients receiving antiepileptic drugs had approximately twice the risk of suicidal behavior or ideation compared to patients receiving placebo. Pls.' Ex. 1.

Defendants' "Statement of Fact" No. 45

45.    FDA issued an alert advising that patients using AEDs should be closely monitored for suicidality and other unusual changes in behavior. FDA further stated that it would be working with AED manufacturers to include this "new" information in the labeling for these products, and that FDA will discuss these data at an upcoming advisory committee hearing. (Sayler Decl., at Ex. 4.)

Plaintiffs' Response to Statement No. 45

Undisputed.  Plaintiffs submit FDA alert stated symptoms such as anxiety, agitation, hostility, mania and hypomania may be precursors to emerging suicidality.  Plaintiffs submit FDA advised patients, family members and caregivers taking Neurontin to pay close attention to any day-to-day changes in mood, behavior and actions.  Plaintiffs submit suicidality changes can happen very quickly so it is important to be mindful of any sudden differences in behavior. Pls.'

Ex. 1.

Defendants' "Statement of Fact" No. 46

46.    FDA did not conclude that there was a causal relationship between any of the antiepileptic drugs and suicide. In the FDA Alert, the agency stated:  "Posting this information does not mean that FDA has concluded there is a causal relationship between the drug products and the emerging safety issue."  (Sayler Decl., at Ex. 4.)

Plaintiffs' Response to Statement No. 46

Disputed.  Plaintiffs submit that the statement made in paragraph 46 of Defendants' Purported Facts is incorrect.  Plaintiffs do not contest what the FDA Alert language sets-forth as quoted in the statement.  Plaintiffs contest the FDA Alert is not based upon a legal causation standard. Pls.' Ex. 91 at 27-28.

Defendants' "Statement of Fact" No. 47

47.    No clinical or epidemiological evidence establishes an association between Neurontin and suicide-related events.  (Prods. Liab. Plaintiffs' Mem. in Opposition to Defs.' Emergency Mot. to Modify the November 9, 2007 Case Management Order, at 10 (Doc. 1134); Declaration of Scott W. Sayler, Esq. in support of Defs.' Mot. to Exclude the Testimony of Doctors Trimble, Kruszewski and Blume on the Issue of General Causation ("Sayler Daubert Decl."), Ex. 5 at 377:1-381:25, 384:18-385:2; Ex. 6 at 31:23-33:25; Ex. 10 at 2, 8-9, 14-15, 18-19; Ex. 7 at 205:16-206:1.)

Plaintiffs' Response to Statement No. 47

Disputed.  Plaintiffs submits that the statement made in paragraph 47 of Defendants' Purported Facts is incorrect.  Plaintiffs submit that the expert reports provided by Prof. Trimble, Dr. Kruszewski, and Dr. Blume all contain clinical evidence establishing an association between Neurontin and suicide-related events. Pls.' Ex. 5; Pls.' Ex. 77; Pls.' Ex. 68; Pls.' Ex. 92 at p. 50; Pls.' Ex. 93 at p. 81;  Pls.' Ex 94; Pls.' Ex 95;  Pls.' Ex 96; Pls.' Ex 97; Pls.' Ex 98; Pls.' Ex. 99; Pls.' Ex. 100;  Plaintiffs contest all references Defendants cite in support of "Statement of Fact 47" as all pre-date the FDA epidemiological analysis contained in the 2008 FDA alert.  The FDA

alert, with 95% confidence interval, establishes that Neurontin doubles the risk of suicidality as it does not include the risk-ratio null value of one.  Pls.' Ex. 1; Pls.' Ex. 90 at p. 4.

Defendants' "Statement of Fact" No. 48

48.    Neither plaintiffs nor their experts have initiated or conducted any epidemiological testing required to establish an association between Neurontin and suicide-related events.  (Sayler Daubert Decl., Ex. 9 at 35:11-18; Ex. 6 at 121:14-24; Ex. 5 at 97:18-98:2; 67:20-25; 87:10-15; 92:1-12.)

Plaintiffs' Response to Statement No. 48

Disputed.  Plaintiffs submit that the statement made in paragraph 48 of Defendants' Purported Facts is incorrect.  Plaintiffs contest that an epidemiological test is required to establish an association between Neurontin and suicidality.  Defendants fail to cite a document in admissible form requiring Plaintiffs' to initiate or conduct an epidemiological study.

Defendants' "Statement of Fact" No. 49

49.    Other than plaintiffs' hired experts in this litigation, no scientist, scientific or medical organization, or regulatory authority has ever opined or concluded that Neurontin can cause suicide-related events.  (Sayler Daubert Decl., Ex. 9 at 691:7-21.)

Plaintiffs' Response to Statement No. 49

Disputed.  Plaintiffs submit that the statement made in paragraph 49 of Defendants' Purported Facts is incorrect.  Plaintiffs submit FDA has stated patients receiving Neurontin had approximately twice the risk of suicidal behavior or ideation compared to patients receiving placebo.  Pls.' Ex. 1.  Plaintiffs submit Defendants' own scientists recognized suicide-related events associated with Neurontin. Pls.' Ex. 67; Pls.' Ex. 15 at 107; Pls.' Ex. 101 at p. 53; Pls.' Ex. 69; Plaintiffs submit the regulatory authorities including FDA and Health Canada recognized suicide-related events associated with Neurontin. Pls.' Ex. 1; Pls.' Ex. 31.  Plaintiffs submit FDA recognized patients receiving Neurontin had approximately twice the risk of suicidal behavior or

ideation compared to patients receiving placebo. Pls.' Ex. 1.

Dated:  April 4, 2008                              Respectfully submitted,

                                                   *Members of Products Liability*
                                                   *Plaintiffs' Steering Committee*

                              By:    **/s/ Andrew G. Finkelstein**
                                     Andrew G. Finkelstein, Esquire
                                     Finkelstein & Partners, LLP
                                     436 Robinson Avenue
                                     Newburgh, NY  12550

                              By:    **/s/ Jack W. London**
                                     Jack W. London, Esquire
                                     Law Offices of Jack W. London
                                       & Associates
                                     106 E. 6th Street, Suite 700
                                     Austin, TX  78701

<u>**CERTIFICATE OF SERVICE**</u>

        I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on April 4, 2008.

                                     **/s/ Andrew G. Finkelstein**
                                     Andrew G. Finkelstein, Esquire