EXHIBIT 10

5 of 5 DOCUMENTS

Copyright (c) 1997 The Food and Drug Law Institute
Food and Drug Law Journal

1997

52 Food Drug L.J. 7

**LENGTH:** 3764 words

ARTICLE: The Lohr Decision: FDA Perspective and Position

**NAME:** MARGARET JANE PORTER*

**BIO:**

> * Ms. Porter is Chief Counsel, Food and Drug Administration. This article is an updated version of a speech that was presented at FDLI's seminar "After the Lohr Decision: What You Can Learn to Help Reduce Your Organization's Exposure to Product Liability," Washington, DC (Oct. 8, 1996). Beverly Rothstein of the Office of the Chief Counsel contributed substantially to these remarks.

**SUMMARY:**
  ... The most important theme of this article is that the agency's position in *Lohr* and the Court's decision are the logical extensions of the agency's long-standing presumption against preemption in implementing section 521 of the Federal Food, Drug, and Cosmetic Act (FDCA). ... Since the passage of the Medical Device Amendments of 1976 (MDA), it has been the agency's position that the scope of preemption under section 521 should be interpreted narrowly, with a presumption against preemption. ... Even the most thorough regulation of a product such as a critical medical device may fail to identify potential problems presented by the product. ...

**TEXT:**
   [*7]  I appreciate the opportunity to participate in this meeting. Earlier versions of the program were billed as an opportunity to learn how to help reduce manufacturers' product liability exposure. FDA was not interested in providing such advice; the program was revised to offer an opportunity to understand product liability exposure. I am glad to help put the case of *Medtronic v. Lohr* n1 in context from the agency's perspective, and to explain why the agency took the position it did and why the agency regards the Court's holding as an important victory for consumer protection.

   The most important theme of this article is that the agency's position in *Lohr* and the Court's decision are the logical extensions of the agency's long-standing presumption against preemption in implementing section 521 of the Federal Food, Drug, and Cosmetic Act (FDCA). n2 The suggestion, therefore, that *Lohr* represents a significant shift is not reflective of the agency's history and practice. Rather, the *Lohr* decision is an important affirmation of the agency's historical approach. This discussion should be an opportunity for interested parties to identify areas in which more guidance would be helpful as the agency plans its implementation.

   Since the passage of the Medical Device Amendments of 1976 (MDA), n3 it has been the agency's position that the scope of preemption under section 521 should be interpreted narrowly, with a presumption against preemption. This is true particularly when the effect of preemption would be to override a state scheme offering greater consumer protection than that currently afforded under the FDCA. Consequently, FDA's position always has been that state and local requirements are not preempted and may be enforced until FDA establishes specific counterpart requirements applicable to a particular device or class of devices.

   FDA's narrow construction of the preemptive effect of section 521 is reflected in the multiple rulemakings under that section, including part 808, the regulation interpreting section 521 that was issued in 1978, n4 and several regulations granting or denying exemptions from preemption for various state and local requirements. Various portions of these regulations were cited by the Court in *Lohr*. For example, part 808 provides that state or local requirements that

are substantially identical to an FDA requirement are not "different from" the FDA requirement and, therefore, are not preempted. n5 In addition, preemption is limited to instances where there are specific FDA requirements applicable to a particular device or class of devices. Even where the agency has established a detailed, comprehensive scheme regulating a particular kind of device, such as it has with hearing aids, n6 not all facets of state regulation of that device are preempted. Instead, only different or additional state or local requirements of the very [*8] type established by FDA are preempted. Finally, section 521 does not preempt state or local requirements of general applicability that relate either to products other than devices or to unfair trade practices not limited to devices.

Although FDA did not have occasion to address the precise issue of whether section 521 preempts state tort claims before that issue was litigated in private lawsuits, the agency did consider related questions. For example, in March 1984, the agency issued an advisory opinion stating that section 521 does not preempt the application of state law injunctive remedies to IUDs inserted in women prior to the enactment of the MDA. n7 With the provisions of part 808 as a basis, the agency concluded that there was no indication in the legislative history that Congress intended that the section preempt state or local requirements respecting general enforcement, including available legal remedies, or state or local statutes that only incidentally apply to devices. n8 Thus, in 1984 the agency's formal opinion was that rules or requirements established by states to govern the legal remedies available under state judicial systems are not "requirements with respect to a device" within the meaning of section 521. n9

Similarly, in 1980, when responding to an application from the State of California for exemptions from preemption for numerous state requirements applicable to medical devices, the agency stated that penalties and remedies for violations of a state statute are general enforcement requirements, which are not preempted because they are not requirements with respect to a device. n10 Likewise, when responding to a congressional request for an opinion on the preemptive status of another California statute, the agency stated that requirements established by states to govern the contractual obligations of sellers and buyers, and to delineate the legal rights and remedies available to consumers under the state judicial system, are not "requirements with respect to a device" within the meaning of section 521 and, consequently, are not preempted.

Thus, although the agency had not formally expressed its position on the precise issue, it is clear from the views it expressed in many other contexts that it did not believe that state tort claims were preempted under section 521. Indeed, this was the prevailing view in the legal community until the early 1990s; no arguments were put forward that there should be preemption of these claims.

The legislative history of section 521 contains no indication that the section was intended to preempt state tort claims. In fact, it contains no mention of product liability claims. Rather, when discussing the section, Congress focused specifically and exclusively on statutory programs administered by states and localities. n11 Moreover, the procedure Congress created in the statute for states to apply to the agency for exemptions from preemption does not readily encompass state tort claims. The exemption procedure is designed to accommodate state and local legislative and regulatory provisions; it does not logically accommodate judicial rulings in private tort suits.

Another significant indication that Congress did not intend section 521 to preempt state tort claims was its absolute failure to mention -- or even hint at -- such a result. It is clear from the legislative history of the MDA that Congress was well aware of, and indeed discussed at length, ongoing product liability litigation involving medical devices. The legislative history contains numerous references to the Dalkon Shield cases and to litigation involving catheters, artificial heart valves, defibrillators, and pacemakers. [*9] Given the harsh implications of foreclosing all judicial recourse for consumers injured by defective medical devices, FDA does not believe that Congress intended to effect so sweeping a change without even a comment. Rather, the agency believes that Congress intended to restrict preemption to positive enactments (for example, legislation or regulations) that apply to the marketing of medical devices within a state, and did not intend to preempt state tort remedies for injury to individual consumers.

While the agency was addressing the preemptive effect of section 521 on various affirmative state and local requirements, there was a suggestion in certain product liability cases, starting with *Cippolone v. Liggett Group, Inc.*, n12 that preemption provisions in some federal statutes could apply to state tort claims. The underlying principle relied on in *Cippolone* and echoed in a *Lohr* minority opinion was that the phrase "no requirement or prohibition" (as that language appears in the Federal Cigarette Labeling and Advertising Act n13 ) "sweeps broadly and suggests no distinction between positive enactments and common law." n14 Based on the Supreme Court's language in *Cippolone*, courts began to interpret preemption provisions in other federal statutes, including section 521, as preempting state tort claims.

The caselaw regarding preemption under section 521 developed quickly. Some courts narrowed the scope of preemption to areas in which FDA had imposed specific requirements on a specific device, most notably in the context of

litigation involving tampons. n15 Many other courts, however, found broader and broader categories of product liability claims preempted under section 521, until the scope of preemption was extended well beyond what the agency believed could have been intended by the Supreme Court in *Cippolone*. Thus, tort claims were preempted based on FDA's approval of a device, FDA's clearance of a device, use of a device on a patient in a clinical study under an investigational device exemption, and the existence of the general labeling and manufacturing requirements. Indeed, some courts found the mere fact that a product was a device, and therefore subject to regulation by FDA, was enough to shield device manufacturers from all liability to individual consumers. These decisions were inconsistent with FDA's long-standing position on preemption.

The first preemption case under section 521 in which FDA participated was *Talbott v. Bard, Inc*. n16 The defendant in that case previously had pled guilty to conspiring to defraud FDA, to filing false statements with FDA, and to shipping adulterated devices. n17 FDA filed an *amicus* brief with the First Circuit, stating its view that the plaintiffs' claims were not preempted because they were premised on the same deficiencies that gave rise to the federal enforcement action, and, therefore, would not result in the imposition of any requirement that would be in addition to or different from those under federal law. n18 In its decision, the First Circuit interpreted section 521 very broadly, immunizing manufacturers from all tort liability, even in cases where a manufacturer admittedly and intentionally had violated provisions of federal law intended to ensure the safety and efficacy of medical devices. n19

[*10] In December 1994, the U.S. Court of Appeals for the Fourth Circuit invited FDA to file an *amicus* brief in *Duvall v. Bristol-Myers Squibb Co*., n20 a case involving a claim of breach of express warranty in the context of a "510(k)'d" device. n21 The agency filed a brief stating its view that express warranty claims are not preempted under section 521. n22 The agency reasoned that the statutory reference to requirements "with respect to a device" was intended to limit preemption to requirements that specifically target particular medical devices, and did not include generally applicable provisions of state law, such as those in the *Uniform Commercial Code*. In addition, the agency stated that the general requirement that devices be accompanied by a statement of intended use is not a device-specific requirement and, consequently, does not trigger preemption under section 521. n23 The court accepted the agency's view and held that the express warranty claim was not preempted. n24

When the issue of possible preemption of state tort claims under section 521 reached the Supreme Court in *Medtronic v. Lohr*, the agency presented its view that state tort claims generally are not preempted under section 521, a view that is consistent with its longstanding position regarding both the scope of preemption under section 521 and the presumption against preemption. The agency explained that it consistently had construed the term "requirement" to refer to substantive, but not remedial, provisions. n25 According to the agency, a finding of substantial equivalence should not preempt a defective design claim because that finding is not a determination that a particular design is required by the Act. n26 The agency also stated that the good manufacturing practice and labeling provisions under the Act should not preempt a failure to warn or negligent manufacture claim because these are general requirements applicable to all devices, rather than specific requirements applicable to a particular device. n27

The agency's position was adopted by the Supreme Court in *Lohr*. The Court accepted FDA's narrow construction of the scope of section 521, reasoning that a finding of broad preemption would be entirely at odds with Congress' intent in enacting the MDA -- to provide greater public health protection. n28 The Court, like FDA, refused to find that Congress intended section 521 to usher in a sweeping preemption of traditional common law remedies against manufacturers and distributors of defective devices. There was a marked absence of such an intent on the part of legislators who were acutely aware of the high-profile product liability litigation involving medical devices. The Court emphasized the importance of not cavalierly preempting state regulation, particularly in fields traditionally left to the states. n29 The *Lohr* Court also distinguished *Cippolone*, and discussed the intended use of the term "requirement" in section 521. The Court stated that in enacting section 521, Congress was concerned primarily with the problem of specific conflicting state statutes and regulations rather than the general duties enforced by common law actions. n30 Where a regulatory scheme imposed a limited [*11] set of requirements, tort remedies could co-exist. The Court noted that Medtronic's argument would preempt all common law obligations. n31

In *Lohr*, the Supreme Court held that a finding of substantial equivalence does not amount to a specific, federally enforceable design requirement, and consequently does not preempt a negligent design claim. n32 The Court also held that the Act's labeling and manufacturing requirements do not preempt claims alleging failure to warn or negligent manufacture. n33 The Court reasoned that the federal requirements reflect important, but entirely generic, concerns about device regulation and that the state common law requirements were not specifically developed "with respect to" medical devices. Finally, the Court found that section 521 does not deny states the right to provide a traditional damages remedy for violations of common law duties when those duties parallel federal requirements. n34 The Court reasoned

that the presence of a damages remedy does not amount to the additional or different "requirement" necessary to trigger preemption under section 521, but rather merely provides another reason for manufacturers to comply with identical existing requirements under federal law.

FDA's view is that FDA product approval and state tort liability usually operate independently, each providing a significant, yet distinct, layer of consumer protection. FDA regulation of a device cannot anticipate and protect against all safety risks to individual consumers. Even the most thorough regulation of a product such as a critical medical device may fail to identify potential problems presented by the product. Regulation cannot protect against all possible injuries that might result from use of a device over time. Preemption of all such claims would result in the loss of a significant layer of consumer protection, leaving consumers without a remedy for injuries caused by defective medical devices. Moreover, FDA's regulation of devices would have been accorded an entirely different weight in private tort litigation than its counterpart regulation of drugs and biologics. This disparity is neither justified nor appropriate, nor does the agency believe it was intended by Congress when section 521 was enacted.

The fact that most state tort claims are not preempted under section 521 does not mean that there can be no valid defense to these claims on the merits. The existence of the federal scheme will not *automatically* preclude these claims, however, and compliance with FDA regulations and requirements can only help a company in a product liability setting.

**Legal Topics:**

For related research and practice materials, see the following legal topics:
Antitrust & Trade LawConsumer ProtectionTobacco ProductsFederal Cigarette Labeling & Advertising ActTortsProcedurePreemptionExpress PreemptionGovernmentsAgriculture & FoodFederal Food, Drug & Cosmetic Act

**FOOTNOTES:**

n1 *116 S. Ct. 2240 (1996).*

n2 Pub. L. No. 75-717, § 521, 52 Stat. 1040 (1938) (codified as amended *21 U.S.C. § 360k* (1994)).

n3 Pub. L. No. 94-295, 90 Stat. 539 (codified as amended in scattered sections of 21 U.S.C.).

n4 *See* 21 C.F.R. pt. 808 (1996).

n5 *Id.* § 808.1(d).

n6 *21 C.F.R. § 801.420.*

n7 FDA Advisory Opinion to the National Women's Health Network, Dkt. No. 83A-0140/AP (Mar. 8, 1984).

n8 *Id.*

n9 *Id.*

n10 *45 Fed. Reg. 67,321, 67,322* (Oct. 10, 1980).

n11 H. REP. NO. 94-853, at 45-46 (1976).

n12 *505 U.S. 504 (1992).*

n13 Pub. L. No. 89-72, 19 Stat. 282 (1965) (codified at *15 U.S.C. §§ 1331*-41 (1994)).

n14 *Lohr, 116 S. Ct. at 2262; Cippolone, 505 U.S. at 521.*

n15 *See, e.g., Moore v. Kimberly-Clarke Corp., 867 F.2d 243 (5th Cir. 1989)* (regarding *21 C.F.R. § 801.430*, regulation of menstrual tampons).

n16 *63 F.3d 25 (1st Cir. 1995).*

n17 *See Talbott v. Bard, Inc., 848 F. Supp. 287 (D. Mass. 1994).*

n18 *Brief for the United States as Amicus Curiae at 13-14, Talbott v. Bard, Inc., 63 F.3d 25 (1st Cir. 1995).*

n19 *Talbott, 63 F.3d at 26-17.*

n20 *65 F.3d 392 (4th Cir. 1995), vacated and remanded, 116 S. Ct. 2576 (1996).*

n21 *See 21 U.S.C. § 360*(k) (FDCA § 510(k)).

n22 *Brief for the U.S. Food and Drug Admin. as Amicus Curiae, Duvall v. Bristol-Myers Squibb Co., 65 F.3d 392 (4th Cir. 1995)* (No. 94-1520).

n23 *Id.* at 1720.

n24 *Duvall, 65 F.3d at 401.*

n25 *Brief for the United States as Amicus Curiae Supporting Respondents/Cross-Petitioners, Medtronic, Inc. v. Lohr, 116 S. Ct. 2240 (1996) Nos. 95-754, 95-886 (U.S. Mar. 13, 1996), 1996 WL 118035,* at *13.

n26 *Id.* at *6.

n27 *Id.* at *21.

n28 *Lohr, 116 S. Ct. at 2252-53.*

n29 *Id. at 2250.*

n30 *Id. at 2252.*

n31 *Id. at 2251.*

n32 *Id. at 2254-55.*

n33 *Id. at 2258.*

n34 *Id. at 2255.*