UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------------------- x
                                                      :  MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                          :
        SALES PRACTICES AND                           :  Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION                 :
----------------------------------------------------- x  Judge Patti B. Saris
                                                      :
THIS DOCUMENT RELATES TO:                             :  Magistrate Judge Leo T.
                                                      :  Sorokin
        PRODUCTS LIABILITY ACTIONS                    :
                                                      :
                                                      :
                                                      :
----------------------------------------------------- x

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR APPOINTMENT OF INDEPENDENT EXPERTS TO ADVISE THE COURT IN DETERMINING THE ADMISSIBILITY OF PLAINTIFFS' PROFFERED EXPERT TESTIMONY ON GENERAL CAUSATION**

Defendants Pfizer Inc. and Warner-Lambert Company LLC ("Defendants") respectfully submit this memorandum in support of their motion, pursuant to Rule 104(a) of the Federal Rules of Evidence and this Court's inherent authority, for the appointment of a panel of independent scientific experts to advise the Court in its consideration of Defendants' motion to exclude the testimony of Plaintiffs' expert witnesses on general causation, Drs. Trimble, Kruszewski, and Blume. The Court has authority to appoint such experts, and circumstances warrant the exercise of this authority at this critical stage of the proceedings. The motion to exclude raises a potentially dispositive, highly technical issue. A panel of independent scientific experts would assist the Court in organizing, interpreting, and evaluating the parties' submissions and the relevant data and scientific literature, and would provide guidance on the core scientific issues the motion presents. Defendants seek by this motion simply to ensure that the Court has all the resources it needs to reach a decision that reflects real, not junk, science.

### A. The Court Has Inherent Authority to Appoint Independent Experts to Advise the Court on Scientific and Technical Issues.

Federal district courts have inherent authority to appoint independent experts to provide scientific and technical advice. *See* William W. Schwarzer & Joe S. Cecil, *Management of Expert Evidence in Reference Manual on Scientific Evidence* 59 (Federal Judicial Center 2d ed. 2000) ("Supplementing the authority of Rule 706 is the broader inherent authority of the court to appoint experts who are necessary to enable the court to carry out its duties. . . . Although few cases deal with the inherent power of a court to appoint a technical advisor, the power to appoint remains virtually undisputed."); *Reilly v. United States*, 863 F.2d 149, 154 n.4, 156 (1st Cir. 1988) (affirming "the judiciary's inherent power to appoint technical advisors"); *Id.* at 156 (quoting *Ex parte Peterson,* 253 U.S. 300 (1920)) ("[T]he Supreme Court recognized that trial judges in the federal system possessed 'inherent power to provide themselves with appropriate instruments required for the performance of their duties,' including the power to 'appoint persons unconnected with the court to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause.'"); *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000) (stating that "district courts retain inherent authority to appoint technical advisors in appropriate cases").

*Daubert* and its progeny established that trial judges must act as gatekeepers under Federal Rule of Evidence 104(a), admitting expert opinion testimony only if it satisfies the relevance and reliability requirements of the Federal Rules of Evidence:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). In *Daubert*, the Supreme Court identified four non-exclusive indicia of admissible "scientific knowledge" that may assist a trial court in evaluating proffered theories and opinions of scientific expert witnesses. These include (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline. *Id.* at 593-94. In addition to these factors, as detailed in Defendants' motion to exclude the subject experts' testimony, federal district courts have broad latitude to apply other factors to evaluate reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999); *United States v. Monteiro*, 407 F. Supp. 2d 351, 357 (D. Mass. 2006).

In a number of cases in which proffered expert testimony involved complex scientific and technical issues – including, in particular, litigation in which a plaintiff's expert witnesses have claimed that use of a prescription medication caused suicide – courts have appointed independent experts to provide scientific and technical advice on the scientific validity of an expert witness's reasoning, methodology and opinions on general causation. *See e.g. Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1329 (10th Cir. 2004) (court appointed two independent experts to provide advice regarding the methodology and reliability of plaintiffs' expert's opinion that the antidepressant medication Zoloft causes suicide); *Domingo v. T.K.*, 289 F.3d 600, 606 (9th Cir. 2002) (court relied on report of court-appointed expert to determine whether plaintiff's expert's theory of medical causation in malpractice action met reliability requirement of Federal Rule of Evidence 702); *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 441-42 (W.D. Pa. 2003) ("Following the *Daubert* hearing . . . the Court appointed three medical experts who were directed to opine as to whether the methodology or technique employed by the plaintiff's medical experts in opining

that Parlodel® can cause stroke . . . is scientifically reliable."); *Reid v. Albemarle Corp.*, 207 F. Supp. 2d 499, 507 (M.D. La. 2001) ("[T]his expert was appointed solely to assist the court in connection with the question of whether the plaintiff's expert witness was qualified and whether his opinions were based upon scientific methodology properly applied."); *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1392 & n.8, 1394 (D. Ore. 1996) (court appointed four independent experts in silicone breast implant product liability litigation "[i]n view of the complicated scientific and medical issues involved and in an effort to effectively discharge [the court's] role as 'gatekeeper' under *Daubert I*").

      **B.**      **The Determination Whether the Proffered Expert Testimony of Drs. Trimble, Kruszewski, and Blume on General Causation is Admissible Under Rules of Evidence 702 and 703 Raises Numerous Complex Scientific and Technical Issues.**

General causation is an essential element of the personal-injury product liability claims of each Plaintiff in this multi-district litigation. Plaintiffs bear the burden of proving general causation, that Neurontin is capable of causing suicide, attempted suicide, suicide gesture, and suicide ideation (collectively, "suicide-related events") in humans, and specific causation, that Neurontin caused the suicide-related event at issue in each individual case. *See, e.g., Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881 (10th Cir. 2005); *Vanderwerf v. SmithKlineBeecham Corp.*, 529 F. Supp. 2d 1294, 1306 (D. Kan. 2008); *Grimes v. Hoffmann-LaRoche, Inc.*, 907 F. Supp. 33, 38 (D.N.H. 1995); *Wade-Greaux v. Whitehall Labs., Inc.*, 874 F. Supp. 1441, 1448 (D.V.I. 1994). If Plaintiffs fail to adduce admissible scientific evidence of general causation, their claims fail as a matter of law, because "without general causation, there can be no specific causation." *Norris*, 397 F.3d at 881 (absent evidence of general causation, "it follows *a fortiori* that silicone breast implants could not have caused systemic injuries in Plaintiff"); *Vanderwerf,* 529 F. Supp. 2d at 1309 ("Absent a basis to testify on general causation,

4

Dr. Breggin cannot offer testimony on specific causation."); *Miller v. Pfizer, Inc.,* 196 F. Supp. 2d 1095, 1125 (D. Kan. 2002) (granting defendant's motion for summary judgment where the plaintiff's expert's opinion on general causation were found unscientific and inadmissible), *aff'd,* 356 F.3d 1326 (10th Cir. 2004); *Renaud v. Martin Marietta Corp.*, 972 F.2d 304, 308 (10th Cir. 1992) (same); *Vanderwerf,* 529 F. Supp. 2d at 1309 (same) *Grimes,* 907 F. Supp. at 38 (same).

Here, in each of the more than 200 products liability cases before this Court that allege suicide-related injury from use of Neurontin, Plaintiffs have disclosed the opinion testimony of Drs. Trimble, Kruszewski, and Blume as their proof of a general causal relationship between ingestion of Neurontin and suicide-related events. A cursory review of their reports, as well as Plaintiffs' opposition to Defendants' *Daubert* motion, demonstrates that Plaintiffs' experts rely on varied theories and methodologies, all of which raise scientific questions and issues that threaten to confuse the relatively straightforward analysis contemplated by *Daubert*. Technical and scientific knowledge from independent experts in the various scientific fields relevant to Plaintiffs' experts' theories would no doubt help in clarifying the issues and scrutinizing the scientific reliability of Plaintiffs' experts' methodology and reasoning. Because of the centrality and significance of the general causation issue, Defendants respectfully urge the Court to retain and task independent, well-qualified experts to advise the Court on the scientific validity of Plaintiffs' experts' general causation testimony and the methods and reasoning they claim to have applied in reaching their opinions.

Defendants suggest further that independent experts should be tasked to advise the Court on each of the specific technical and scientific issues that may best inform the Court's judgment regarding the admissibility of Plaintiffs' experts' general causation opinions. *See Reilly*, 863 F.2d 149, 159-60 ("We also think that there is much to commend the preformulation of a written

"job description" for the advisor (or in lieu thereof, that the judge deliver comprehensive verbal instructions to the advisor, on the record, in the presence of all counsel). At the conclusion of his stint, the advisor should file an affidavit attesting to his compliance with the job description."). The independent experts' advice might be sought, for example, on subjects such as: (i) whether the opinions of each of Plaintiffs' experts' meet the *Daubert* criteria (testing, peer review, rate of error, general acceptance); (ii) whether Plaintiffs' experts applied the scientifically reliable and valid methodology for establishing causation between use of a drug and suicide-related events; (iii) whether Plaintiffs' experts have interpreted the data and literature that they cite in their reports in a scientifically reliable and valid manner; (iv) whether Plaintiffs' experts' have ignored contrary data in reaching their general causation opinions; and (v) whether, separately from the opinions of Plaintiffs' experts in this litigation, there exists any reliable scientific knowledge or acceptance of Plaintiffs' experts' theories that Neurontin causes suicide-related events. The independent experts could also provide explanations of technical, medical, or scientific terms or concepts used in Plaintiffs' experts' reports, affidavits and testimony.

      **C.    The Court Has Flexibility to Adopt Procedures for the Use of Independent Experts from the Appropriate Scientific Disciplines to Fit the Specific Needs of this Case.**

Independent experts appointed by the Court to assist in its Fed. R. Evid. 104(a) gatekeeper function are not subject to the procedural requirements of Federal Rule of Evidence 706. *See Reilly*, 863 F.2d at 155 ("Throughout its text, Fed .R. Evid. 706 refers not to 'experts' generally, but to a more exclusive class: 'expert witnesses.' Because the plain language of a Civil Rule is the most reliable indicator of its meaning, we are constrained to conclude that the grasp of Rule 706 is confined to court-appointed expert witnesses; the rule does not embrace expert advisors or consultants."); *Reed v. Cleveland Bd. of Educ.*, 607 F.2d 737, 746 (6th Cir. 1979) (same); *Renaud v. Martin Marietta Corp.*, 972 F.2d 304, 308 n. 8 (10th Cir. 1992) (same);

*Reid v. Albemarle Corp.*, 207 F. Supp. 2d 499, 507 (M.D. La. 2001) (same).  The Court thus has flexibility to determine the procedures that would be followed by any technical advisors that it appoints.

Evaluation of the scientific and technical questions presented by the proffered expert testimony of Drs. Trimble, Kruszewski, and Blume and Defendants' motion to exclude their testimony raises concepts, methods, and techniques drawn from multiple scientific disciplines.  Because of the scope of the sources of information and the multiple theories and inferences from variegated literature and data that appear in Plaintiffs' experts' reports, it may be extremely difficult to locate any single independent expert with the requisite training, education, and expertise to thoroughly and accurately address the subject opinions and theories in full.  For that reason, Defendants recommend that the Court appoint a panel of at least three technical advisors comprised of one expert from each of the following disciplines:  (1) <u>epidemiology</u> (the study of the distribution and causes of disease, including adverse effects of medicinal compounds); (2) <u>psychiatry</u> (the field of medicine that studies mental and mood disorders and their symptomatology and sequelae, including suicidality); and (3) <u>neuropsychopharmacology</u> (the field of medical and pharmacological science that studies the effects of medicinal compounds on the brain and neural anatomy).

To facilitate identification and retention of suitable independent experts, Defendants suggest the following selection process.  First, each party would provide the Court with a list and current curricula vitae nominating one to three candidate experts within each discipline.  Second, counsel for the parties would jointly interview the recommended experts to screen candidates for biases or conflicts of interest.  Third, the parties would attempt to agree on a mutually acceptable expert in each field.  If the parties cannot agree, Magistrate Judge Sorokin could interview the

proposed experts by telephone and recommend to the Court one independent expert in each discipline. Fourth, the parties would have an opportunity to file objections to the Magistrate Judge's recommendations before the Court selected the panel. *See Reilly*, 863 F.2d at 159-60 ("We think it advisable in future cases that the parties be notified of the expert's identity before the court makes the appointment, and be given an opportunity to object on grounds such as bias or inexperience.").

Defendants propose the following schedule to allow appointment of independent experts in time for the experts to attend the *Daubert/Frye* hearing presently scheduled for July 19-20, 2008. Each party shall submit its list of proposed experts within 10 days of this Court's Order. Within 20 days of the submission of this Court's Order, the parties shall file a joint report as to the outcome of their efforts to reach an agreement. If no agreement is reached on an expert in a particular field, the Magistrate Judge will make recommendations to the Court within 30 days of this Court's Order.

Defendants suggest further that the panel of technical advisors be supplied with complete copies of the reports, cited references, and deposition transcripts of each of Plaintiffs' experts, along with the *Daubert* briefing, and be tasked by the Court to evaluate and prepare a written report setting forth their answers to specific questions submitted by the Court. The costs of the independent experts' time and services should be shared equally between the parties.

Defendants would also recommend that the Court provide the technical advisors with detailed instructions, as suggested in the accompanying proposed order, regarding: (1) the questions or topics on which the experts are to express opinions; (2) the standards that the experts should apply in answering these questions; (3) the scope of permissible communications between the experts, the Court, the parties, and others whom the experts wish to consult; (4) the

procedures that should be followed for all communications between the experts and others; (5) the scope of materials that the experts may review; (6) the work product expected from the panel; and (7) whether the experts are instructed to keep notes and drafts for future discovery. *See* William W. Schwarzer & Joe S. Cecil, *Management of Expert Evidence in Reference Manual on Scientific Evidence* 61-63 (Federal Judicial Center 2d ed. 2000) (listing procedural issues that should be addressed in court order to appoint independent experts). Contemporaneously with this motion, Defendants are filing as Exhibit A hereto a Proposed Order Appointing Independent Experts that sets forth in detail their recommended instructions to the Court-appointed technical advisors.

## CONCLUSION

Currently pending before this Court is Defendants Pfizer Inc and Warner-Lambert Company LLC's Motion to Exclude the Testimony of Doctors Trimble, Kruszewski, and Blume on the Issue of General Causation, and Product Liability Plaintiffs' Memorandum of Law in Opposition. As explained more fully in Defendants' motion, the proffered expert testimony of Doctors Trimble, Kruszewski, and Blume on general causation is unreliable and falls far short of the admissibility requirements for expert opinion established in Rules 702 and 703 of the Federal Rules of Evidence. Determining whether Plaintiffs' proffered expert opinions on general causation are admissible involves numerous complex scientific and technical issues. Defendants therefore request the Court to appoint a panel of independent technical advisors with expertise in epidemiology, psychiatry, and neuropsychopharmacology to evaluate and advise the Court on whether the methods, reasoning, and opinions expressed by Plaintiffs' experts constitute scientifically valid and reliable knowledge.

Dated:  April 9, 2008

Respectfully submitted,

DAVIS POLK & WARDWELL

By:  /s/ James P. Rouhandeh
     James P. Rouhandeh

450 Lexington Avenue
New York, NY 10017
Tel:  (212) 450-4000

   -and-

SHOOK, HARDY & BACON L.L.P.

By:  /s/ Scott W. Sayler
     Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel:  (816) 474-6550

   -and-

HARE & CHAFFIN

By:  /s/ David B. Chaffin
     David B. Chaffin

160 Federal Street
Boston, MA 02110
Tel:  (617) 330-5000

Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company LLC

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on April 9, 2008.

                                      /s/David B. Chaffin