UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

In re: NEURONTIN MARKETING,
SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

---

THIS DOCUMENT RELATES TO:

PRODUCTS LIABILITY ACTIONS

---

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

## [PROPOSED] ORDER APPOINTING INDEPENDENT EXPERTS

Pursuant to Rule 104(a) of the Federal Rules of Evidence and this Court's inherent authority, *see e.g. Reilly v. United States*, 863 F.2d 149, 154 n.4, 156 (1st Cir. 1988), William W. Schwarzer & Joe S. Cecil, *Management of Expert Evidence in Reference Manual on Scientific Evidence* 59 (Federal Judicial Center 2d ed. 2000), the Court will appoint three independent experts—one epidemiologist, one neuropsychopharmacologist, and one psychiatrist—("the appointees") to advise the Court on scientific issues regarding the admissibility of the expert opinions of Drs. Michael Trimble, Stefan Kruszewski, and Cheryl Blume.

Plaintiffs and Defendants each shall serve and file within ten days of the date of this Order a list naming between one and three potential experts for each of the following disciplines: neuropsychopharmacology, epidemiology, and psychiatry. Counsel shall not have had contact with these potential experts for purposes of this litigation, and shall not have retained the potential experts for any litigation. Counsel for the parties shall jointly interview the named experts and shall attempt to agree on a mutually-acceptable expert in each of the three fields.

The parties shall file within 20 days of this Order a joint report as to the outcome of their efforts to reach an agreement. If no agreement is reached on any or all experts, Magistrate Judge Sorokin will interview the proposed experts in any of the fields as to which agreement was not reached, by telephone, and recommend to the Court, within 30 days of this Order, one independent expert in each field. The parties shall assist Magistrate Judge Sorokin in arranging such telephonic interviews. The parties may file objections to the Magistrate Judge's recommendations within ten days.

Doctors Trimble, Kruszewski, and Blume are Plaintiffs' designated expert witnesses on the issue of general causation (i.e., whether Neurontin is capable of causing suicide, suicide attempt, suicide gesture, or suicidal ideation (collectively "suicide-related events") in humans). Defendants Pfizer Inc. and Warner-Lambert Company LLC ("Defendants") moved to exclude the testimony of Drs. Trimble, Kruszewski, and Blume on the grounds that their general causation theories and methodologies fail to satisfy Rule 702 and *Daubert's* reliability requirement, in that their theories and methodologies: (1) have not been tested; (2) are not generally accepted in the scientific community; (3) have no known error rate and fail to employ proper controls; (4) have not been subject to peer review and publication; (5) ignore contrary data; and (6) were developed entirely within the context of litigation. Defendants' motion also noted that Plaintiffs' experts' theories and methodologies failed to satisfy Rule 702's reliability requirement, i.e., failed to "fit" the facts of the case.[1] *See* Defendants Pfizer Inc. and Warner-Lambert Company LLC's Motion to Exclude the Testimony of Doctors Trimble, Kruszewski

---

[1] Defendants also moved to exclude Drs. Trimble, Kruszewski and Blume's testimony under New York's *Frye* standard because Plaintiffs' experts' theories and methodologies are not generally accepted in the scientific community. This motion was filed on March 14, 2008. Plaintiffs' opposition is due on April 11, 2008, Defendants reply is due on May 2, 2008 and Plaintiffs' Surreply is due on May 9, 2008, to complete the briefing of this motion.

and Blume on the Issue of General Causation (filed March 7, 2008). Plaintiffs opposed Pfizer's motion. *See* Product Liability Plaintiffs' Memorandum of Law in Opposition to Defendants Pfizer Inc. and Warner-Lambert Company LLC's Motion To Exclude the Testimony of Doctors Trimble, Kruszewski and Blume on the Issue of General Causation (filed April 4, 2008).[2] On April 8, 2008, Defendants filed a Motion for Appointment of Independent Experts to Advise the Court in Determining the Admissibility of Plaintiffs' Proffered Expert Testimony on General Causation. Plaintiffs opposed this motion.

After consideration of the motions and briefing described above, the record, and arguments of counsel, this Court concludes that a panel of independent experts would be helpful in determining whether Plaintiffs' experts' theories and methodologies are scientifically reliable and meet the test of Rule 702 and *Daubert*. The fundamental question on which the Court seeks the appointees' advice is whether the methodologies used by Drs. Trimble, Kruszewski, and Blume, and their application of these methodologies to this case, constitute valid, scientifically reliable reasoning in support of their opinions that Neurontin causes suicide. It is the Court's intention that the appointees provide the Court with scientific advice pertaining to the scientific issues raised by the parties' briefing and submissions on the admissibility of Drs. Trimble, Kruszewski, and Blume's testimony. These issues were fully briefed, and the parties were afforded full opportunity to adduce evidence in support of their respective positions. This Court will seek advice from the appointees on the following specific scientific questions:

1. Whether Drs. Trimble, Kruszewski, and Blume's theories that Neurontin causes suicide-related events (i.e. general causation) and their methodologies for determining general causation can be and have been tested.

---

[2] Defendants will file their reply memorandum on April 25, 2008, and Plaintiffs Surreply is due on May 2, 2008, to complete the briefing of the subject motion.

3

2. Whether Drs. Trimble, Kruszewski, and Blume's general causation theories and methodologies are generally accepted in the scientific community.

3. Whether the rate of error in the theories and methodologies of Drs. Trimble, Kruszewski, and Blume can be and has been reliably determined.

4. Whether Drs. Trimble, Kruszewski, and Blume's general causation theories and methodologies have been subject to peer review and publication.

5. Whether Drs. Trimble, Kruszewski, and Blume applied the scientifically reliable and valid methodology for establishing causation between use of a drug and adverse health effects (specifically, between Neurontin and suicide-related events).

6. Whether Drs. Trimble, Kruszewski, and Blume have interpreted and applied the data and literature cited in their reports in a scientifically reliable and valid manner.

7. Whether Drs. Trimble, Kruszewski, and Blume have ignored contrary data in reaching their general causation opinions.

8. Whether, separately from the opinions of Plaintiffs' experts in this litigation, there exists any reliable and relevant scientific knowledge or acceptance of Plaintiffs' experts' theories that Neurontin causes suicide-related events.

The Court requests that the appointees (1) analyze the materials to be submitted to them, as described below, (2) attend the *Daubert/Frye* hearing presently scheduled for June 19-20 at 2:00 p.m. in Courtroom 19, and (3) provide the Court and parties, within eight weeks from the date of the *Daubert/Frye* hearing, a joint written report expressing their scientific consensus as to the answers to each of the questions set forth above.

To the extent that the appointees identify scientific issues, in addition to those referred to in the specific questions that the Court has posed above, that bear on the scientific reliability or unreliability of Drs. Trimble, Kruszewski, and Blume's testimony, they are requested to address and express their opinions on those issues in their report as well.

In reaching their opinions and conclusions regarding Drs. Trimble, Kruszewski, and Blume's methodology and application of that methodology to the facts in this case, the

appointees should apply the following standards. They should identify, apply, and measure Drs. Trimble, Kruszewski, and Blume's methods and reasoning against scientific methodology and reasoning that is generally accepted within the fields of epidemiology, psychopharmacology, and psychiatry, for determining whether a causal relationship exists between a medicine under investigation and an outcome or adverse event. In stating their opinions about the scientific soundness of any aspect of Drs. Trimble, Kruszewski, and Blume's methodology, the appointees should state whether that aspect comports with medical and scientific conventions or principles generally accepted in the fields of epidemiology and psychopharmacology and psychiatry. To the extent that Drs. Trimble, Kruszewski, and Blume's methodology or application of a methodology deviates from methodological conventions or principles generally accepted in those fields, the appointees should identify the applicable conventions or principles and explain the nature of Drs. Trimble, Kruszewski, or Blume's deviation from them.

Regarding materials to be reviewed and analyzed by the appointees, the parties shall jointly provide, to each of the appointees, (1) copies of the parties' previously filed briefs pertaining to the motion to exclude Drs. Trimble, Kruszewski, and Blume's testimony, together with copies of all exhibits cited or referred to in those briefs in the same form and sequence in which they were filed with this Court, (2) the complete Rule 26 Reports of the parties' experts together with the transcripts of each expert's deposition, and (3) the "written direct affidavits" submitted in advance of the *Daubert/Frye* hearing. The transmittal letters accompanying the materials provided to the appointees shall state only that the parties are jointly providing the materials pursuant to this Order. All of the foregoing materials are to be provided to the appointees within 10 days of entry of this Order.

In addition to examining the materials submitted by the parties, as described above, the appointees may examine, jointly or separately, any other medical or scientific literature that they deem relevant and helpful.  Any such publication, along with other evidence of record that they rely on to support statements or conclusions in their joint report, shall be cited in their joint report in the customary manner of scientific citation.  The appointees are authorized and encouraged to communicate with each other in any manner convenient for them.

If the appointees should conclude that it would be helpful to consult with one or more other medical or scientific personnel concerning this matter, they shall first notify the Court of the purpose of the desired consultation and identify the person or persons with whom they wish to consult, so that the presence or absence of any conflict pertaining to any such consultant can be assessed before the communication occurs.  The Court considers it important that all bases for the opinions and advice ultimately expressed by the appointees be open and clear to the parties and the public, and that there be no communication with non-appointed persons that could lend even the appearance of any conflict of interest, improper influence, or other impropriety to the appointees' work.

During the pendency of this action, none of the appointees shall contact, communicate with, or respond to any communication from any party or any party's attorneys, representatives, or expert witnesses in any way or for any purpose without leave of Court.  If such a communication should become necessary or desirable, the Court will supervise the communication, ensure the presence of all parties to the communication, and make appropriate provisions to transcribe or otherwise record any such communication.

If the appointees should have questions regarding any aspect of their work pursuant to this appointment, they are instructed to contact the Court's Courtroom Clerk, Robert Alba, and

notify him of the nature of their inquiry.  For routine or administrative matters that do not affect any party's substantive rights, the Court will respond to the inquiry and notify the parties of any pertinent instructions or information provided to the experts.  For substantive inquiries, the Court will schedule a telephone conference or hearing to resolve the questions.

The joint report of the appointees should be addressed to the Court and endorsed by all three appointees.  The appointees may organize and format their report in the manner they deem best suited for their task.  The appointees are instructed to send a copy of their report by FedEx to Product Liability Plaintiffs' Liaison Counsel, Andrew Finklestein and Jack London and Defendants' counsel Scott W. Sayler and James P. Rouhandeh, at the same time that they submit their report to the Court.  The appointees are further directed to maintain in readily accessible files all documents, written materials, correspondence, notes, calculations, or other information that they receive, review, or create in connection with their appointment.  Those materials will be discoverable by the parties upon completion of the final report.

Upon receipt of the appointees' written report, the Court may elect to conduct an additional hearing concerning the content of the appointees' reports and their evaluation of the scientific reliability of the Plaintiffs' experts' general causation theories and methodologies.  The appointees may be required to attend this hearing to testify regarding their independent evaluation of Drs. Trimble, Kruszewski, and Blume's theories and methodologies in this action.  Specific procedures to be followed in any such hearing will be announced by separate order.

The appointees shall be compensated at the rate of $_____ per hour for work in connection with this appointment.  They also shall be reimbursed for reasonable travel and administrative expenses.  They shall submit to the Court, concomitantly with the submission of their written report, invoices for their fees and expenses.  After the Court has discharged the

appointees from further duties, they shall submit final invoices for all additional fees and expenses. The Court will direct payment. Each party has agreed to and shall bear half of the expenses of this procedure.

    Dated this _____ day of _____, 2008.

                                                    _____
                                                    United States District Judge