UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

In re: NEURONTIN MARKETING,
SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

---

THIS DOCUMENT RELATES TO:

ALL MARKETING AND SALES PRACTICES ACTIONS

---

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

## DECLARATION OF NICHOLAS P. MIZELL

NICHOLAS P. MIZELL declares upon penalty of perjury in accordance with 28 U.S.C. § 1746 as follows:

1. I am an attorney associated with the law firm Shook, Hardy & Bacon, LLP, counsel for Defendants Pfizer Inc. and Warner-Lambert Company in this action.

2. I submit this declaration in support of Defendants' Opposition to the Coordinated Plaintiffs' Motion to Compel Defendants to Produce all Business and Operating Plans Relating to Third Party Payors and to Produce an Adequately Prepared Rule 30(b)(6) Witness, filed on April 9, 2008.

3. Plaintiffs first noticed a 30(b)(6) deposition of the Defendants regarding third-party-payer communication issues on June 11, 2007. (Attached as Exhibit A to the April 4, 2008 Linda P. Nussbaum Declaration ("Nussbaum Decl.")). Though the parties were continuing to confer and correspond regarding an agreed-upon scope for this deposition, Plaintiffs insisted that the deposition go forward in mid-July. The Defendants, therefore, were forced to move the court for a protective order, and the Court directed the parties to continue to meet and confer.

1

4. The parties continued to confer and correspond regarding the scope of this deposition, but unwilling to agree to Defendants' proposals, Plaintiffs filed a Motion to Compel Discovery re: Communication Between Defendants and Third Party Payors.

5. The parties argued the motion before the Court during the September 20, 2007 Motion Hearing. Attached as <u>Exhibit 1</u> is a true and correct copy of the relevant portion of the hearing transcript.

6. On September 27, 2007, the Court ruled on Plaintiffs' motion to compel in Discovery Order 14. Attached as <u>Exhibit 2</u> is a true and correct copy of the Court's Order.

7. On December 3, 2007, Plaintiffs served the Defendants with an amended notice of 30(b)(6) deposition regarding third-party-payer communication issues. (Exhibit B to Nussbaum Decl.). In relevant part, Plaintiffs significantly narrowed the definition of "Third Party Payors" in the deposition notice to mean "the Plaintiffs named in the Coordinated Complaint and the Plaintiffs named in the Class Complaint." (Compare ¶ II.6 in the June 11, 2007 Notice (Exhibit A to Nussbaum Decl.) with ¶ II.6 in the December 3, 2007 Notice (Exhibit B to Nussbaum Decl.)).

8. On December 4, 2007, and consistent with the ruling of the Court in Discovery Order 14, Defendants identified Jeff Henderson as their 30(b)(6) designee and notified Plaintiffs of the subject matters for which he was designated to testify. Attached as <u>Exhibit 3</u> is a true and correct copy of the December 4, 2007 correspondence from Jim Rouhandeh to Ronald Aranoff.

9. Defendants produced Jeff Henderson as their 30(b)(6) designee regarding the topics for which he was designated to testify in the December 4 correspondence for two full days of deposition on December 5 and 6, 2007. Based on his first-hand knowledge, years of relevant experience and personal investigation, Mr. Henderson provided detailed testimony about the

2

many changes in the relevant organizational structure and personnel over a more than seven-year period, the identity of specific individuals and their respective and often changing areas of responsibility, the types of communications they had with third-party payers, and the databases that contained related information. (Exhibit C to Nussbaum Decl.).

10. On January 3, 2008, I received a letter from Plaintiffs' counsel Annamarie Daley requesting a meet and confer regarding issues related to Mr. Henderson's deposition. Included among these issues was Plaintiffs' request that Pfizer produce any operating or business plans for the named third-party-payer plaintiffs. Though Mr. Henderson had testified that the plans would not contain any Neurontin-specific third-party-payer marketing strategies because Pfizer had decided – following its merger with Warner-Lambert – not to promote Neurontin to third-party payers, in a good-faith effort to resolve a discovery issue without motion practice the Defendants agreed to search for and produce any business or operating plans created during the relevant period and containing any references to Neurontin.

11. Ms. Daley's letter also raised an issue concerning an email thread bates stamped Pfizer_SPiron_0015885-86. A true and correct copy of a related document bates stamped Pfizer_SDoft_0024028-0024031 is attached as Exhibit 4.

12. During a meet and confer on February 8, 2008, I advised Ms. Daley that operating or business plans for Aetna and Kaiser had been located and were being reviewed to determine whether they had any references to Neurontin. I also advised Ms. Daley that the Defendants' investigation remained ongoing. On February 13, 2008, I sent a CD to Ms. Daley containing operating and business plans within the relevant period for Aetna and Kaiser that included references to Neurontin. (Exhibit I to Nussbaum Decl.).

3

13. On February 12, 2008, I wrote to Ms. Daley in response to her letter of January 3, 2008, regarding issues related to the Henderson deposition. In a continued good-faith effort to resolve the discovery issues without motion practice, this correspondence included a page-and-line designation of the testimony adopted by Mr. Henderson of former Warner-Lambert employees George Cavic, John Richter, and Christopher Desimone regarding Warner-Lambert's third-party-payer communications, the types of documents created or maintained by Warner-Lambert regarding third-party-payer communications, and the organizational structure of Warner-Lambert involved with these communications. Attached as <u>Exhibit 5</u> is a true and correct copy of this letter.

14. On March 5, 2008, the parties met and conferred and Plaintiffs' counsel requested an additional four hours to continue Mr. Henderson's 30(b)(6) deposition without any limitations as to the scope of the continued examination. And, notwithstanding the provisions of Discovery Order 14 expressly limiting the scope of the deposition to the "marketing or promotion of Neurontin directly to the named Third Party Payers," Plaintiffs sought testimony about any Neurontin-related communications with the physicians that treated the third-party-payer plaintiffs' insureds. In a March 6, 2008 letter to Ms. Nussbaum, I reminded Plaintiffs of the Court's ruling regarding the scope of permissible 30(b)(6) discovery related to third-party-payer communication issues and advised her that the Defendants could not agree to new and additional 30(b)(6) discovery of unlimited scope. (Exhibit M to Nussbaum Decl.).

15. On March 7, 2008, the Coordinated Plaintiffs filed a Motion to Compel Defendants to Produce an Adequately Prepared 30(b)(6) Witness. On March 10, 2008, the parties conferred regarding the motion. Specifically, I advised Plaintiffs that Jeff Henderson was out of the country and not scheduled to return until March 17, and I therefore requested that the motion

4

be set for argument during the April 17 discovery hearing to allow me to confer with Mr. Henderson and potentially obtain a declaration from him about the issues raised in Plaintiffs' motion. Ms. Nussbaum responded that deferring argument until April was not a problem and she also offered to withdraw Plaintiffs' motion. Ms. Nussbaum further stated that she would send me proposed time and scope limitations with respect to Plaintiffs' request for additional 30(b)(6) discovery.

16. I conferred with Mr. Henderson on March 19, 2008, and I continued to confer and correspond with Plaintiffs' counsel regarding their request for additional 30(b)(6) discovery. On March 28, 2008, Plaintiffs requested that the Defendants prepare and produce additional 30(b)(6) designees to testify about:

> 1. Any information that defendants have regarding the marketing or promotion of Neurontin or gabapentin to physicians affiliated with, or who prescribed mediations to insureds of, named Third-Party payors during the class period;
>
> 2. All documents created or possessed by Defendants concerning the marketing or promotion of Neurontin or gabapentin to physicians affiliated with, or who prescribed medications to the insureds of, the Coordinated Plaintiffs or any other named Third-Party Payor; and
>
> 3. Any information that Defendants have regarding the creation and contents of business or operating plans pertaining to the Plaintiffs named in the Coordinated Complaint and the Third-Party Payors named as Plaintiffs in the Class Complaint, including physicians affiliated with any such plaintiff or who prescribed Neurontin or gabapentin to any insured of any such physician.

(Exhibit O to Nussbaum Decl.).

17. On April 2, 2008, I wrote to Ms. Nussbaum and explained that these areas of inquiry concerning communications with treating physicians were well outside Defendants' obligations to prepare and produce a designee regarding communications with the named third-

5

party-payer plaintiffs under Discovery Order 14. Defendants accordingly declined Plaintiffs' request for this new and additional 30(b)(6) discovery.  (Exhibit P to Nussbaum Decl.).

18. Attached as <u>Exhibit 6</u> is a true and correct copy of relevant excerpts from the 30(b)(6) deposition of Jeff Henderson, taken December 5 and 6, 2007.

19. Attached as <u>Exhibit 7</u> is a true and correct copy of relevant excerpts from the deposition of Albert Carver, taken July 12 and 13, 2007.

20. Attached as <u>Exhibit 8</u> is a true and correct copy of the June 4, 2007 correspondence from Aviah Cohen Pierson to Matthew B. Rowland regarding the depositions of Kaiser physicians.

21. Attached as <u>Exhibit 9</u> is a true and correct copy of the relevant portion of the September 27, 2006 hearing transcript.

22. Plaintiffs deposed Defendants' 30(b)(6) designee Laura Kibbe on April 7, 2008 regarding document retention and production issues. Attached as <u>Exhibit 10</u> is a true and correct copy of relevant excerpts from the transcript of this deposition.

23. Attached as <u>Exhibit 11</u> is a true and correct copy of relevant excerpts from the deposition of George Cavic, taken September 26 and 27, 2007.

April 9, 2008

/s/ Nicholas P. Mizell_____

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on April  9, 2008.

/s/ David B. Chaffin_____