Exhibit 5

Case 1:04-cv-10981-PBS   Document 1216-6   Filed 04/09/2008   Page 1 of 7



www.shb.com

February 12, 2008

Nicholas P. Mizell

Annamarie Daley
Robins, Kaplan, Miller & Ciresi, L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

2555 Grand Blvd.
Kansas City
Missouri 64108-2613
816.474.6550
816.421.5547 Fax
nmizell@shb.com

Dear Ms. Daley:

I am writing in response to both your letter of January 3, 2008, and the conversations we have had since that date regarding issues related to the 30(b)(6) deposition of Jeff Henderson.

At the outset, and to appropriately frame this discussion, it is necessary to note that Plaintiffs' Notice of Deposition did not define the scope of the 30(b)(6) designation for this deposition. Instead, in Discovery Order 14, the Court expressly limited the topics for which the Defendants were obligated to prepare and produce a designee. Notably, the Court rejected the imposition of a duty to designate witnesses to testify about *any information regarding the promotion* of Neurontin or *any communications with third-party payers* concerning Neurontin, and limited the area of inquiry to: "The *marketing or promotion* of Neurontin *directly to* the named Third Party Payors."[1]

Thus, with respect to Kaiser, the scope of the 30(b)(6) designation for this deposition included the marketing or promotion of Neurontin directly to Kaiser Foundation Health Plan. While Permanente Medical Group physicians provided health care services to Kaiser Foundation Health Plan members, Discovery Order 14 expressly excluded any communications between Pfizer and these physicians from the scope of this deposition.

In fact, in responses to both deposition and written discovery, Plaintiffs have consistently distinguished the health plan from the physician group with which it contracts for services. *See, e.g.,* Carver Dep. at 434:11-435:3 (MS. NUSSBAUM: "...the relationship between the entities is simply a contractual relationship and nothing more. We've taken that position in front of Justice [*sic*] Saris, we've taken that position in front of Judge Sorokin. That information is publicly available, if you go online, you can research the corporate structures yourself and that's the situation.").[2]

---

[1] As we discussed during the deposition, the scope of the designation was also set forth in the attached December 4, 2006 correspondence of James P. Rouhandeh to Ronald Aranoff.

[2] If Plaintiffs are now taking the position that communications with Permanente Medical Group physicians represent communications with Kaiser Foundation Health Plan,

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.

2818763v1


www.shb.com

Henderson Deposition
February 12, 2008
Page 2

Consistent with this approach, Kaiser Foundation Health Plan's 30(b)(6) designees have not referred to any communications between the Defendants and Permanente Medical Group physicians (i.e., "Kaiser physicians") when asked to identify any Neurontin-related communications between the plaintiff health plan and the Defendants. Accordingly, and notwithstanding the assertions in your letter to the contrary, Defendants were under no obligation to prepare and produce a designee to testify about communications with "Kaiser physicians."

The email thread bates stamped Pfizer_SPiron_0015885 to 0015886 that you have referenced in our conferences since January 3, 2008, does not change this analysis. Of note, this document was produced to plaintiffs well before the deposition of Jeff Henderson, but no questions were asked of him about it.[3] Further, while we have requested that Kaiser produce documents containing Neurontin-related communications with the Defendants, neither the originating email of the thread contained in this document, nor any document like this was ever produced by Kaiser. This naturally leads to the conclusion that Kaiser has taken the position that this document does not relate to marketing or promotional communications between itself and the Defendants. Indeed, the document apparently refers to a display that would be presented to physicians.[4]

Discovery Order 14 also limited the scope of the designation for Jeff Henderson's 30(b)(6) deposition to: "Pfizer's organizational structure used for communications with Third Party Payors including but not limited to the identification of individuals responsible for such communication, the types and categories of such communications, and to identify any databases that may exist containing the contents of such communications." Notably, Jeff Henderson testified in detail about the many changes in the relevant organizational structure and personnel over a more than seven-year period, the identify of specific individuals and their respective and often changing areas of responsibility, the types of communications they had with third-party payers, and the

---

then Plaintiffs would need to acknowledge that their discovery responses have been woefully deficient from the outset of this case, and they would need to provide us with extensive documentary and testimonial discovery from Permanente Medical Group physicians.

[3] Henderson was questioned about another instance in which a proposal to contract with a third-party-payer for Neurontin originated from someone out in the field, but was never agreed to by Pfizer headquarters, and this document appears to relate to a similar event.

[4] Additional documents indicate that this email exchange occurred when Kaiser had a then-existing policy to promote the off-label use of TCA's as a first or second line agent for post-herpetic neuralgia, notwithstanding the FDA's approval of Neurontin for this indication (Pfizer_SDoft_0024028 – 0024031).

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.

2818763v1



www.shb.com

Henderson Deposition
February 12, 2008
Page 3

databases that contained related information. Thus, despite inferences to the contrary in your letter, it is neither fair nor reasonable to assert that Mr. Henderson – a 16-year employee and current Vice President of the business unit that serves as a liaison between Pfizer and third-party payors – was anything but a well-qualified and well-prepared designee who made a conscientious effort to obtain information from other employees and review documents and transcripts in preparation for the deposition. *See, e.g.*, Henderson Dep. at 9:20-13:9; 15:3-16:20; 109:22-110:17.[5]

As part of this preparation work, Jeff Henderson reviewed the deposition testimony of former Warner-Lambert employees George Cavic, John Richter, and Christopher DeSimone. These witnesses were responsible for and testified about the individuals at Warner-Lambert that communicated with third-party payors, the types of documents created or maintained by Warner-Lambert regarding third-party-payor communications, and the organizational structure involved with these communications. Based on this review, and to the extent their testimony relates to the topics for which he was designated, Mr. Henderson affirmatively adopted the deposition testimony of Cavic, Richter and DeSimone as his own in his capacity as a 30(b)(6) designee. *See* Henderson Dep. at 15:3-16:20; 109:22-110:17.

To avoid any confusion, and without waiving any of the objections made during the depositions, a page-and-line designation of the testimony adopted by Henderson is attached. Given the first-hand knowledge and experience that Cavic, Richter and DeSimone had with respect to these events that occurred more than seven years ago, and the fact that this relates to the institutional knowledge of a predecessor entity, Henderson's testimony adequately fulfills the Defendants' 30(b)(6) obligations.

As for your request for Pfizer's operating or business plans related to the named third-party-payor plaintiffs, our diligent search for and review of these documents remains ongoing. To clarify, while your letter referred to these plans being "overwritten in Pfizer's systems," we understand that only such plans created after late 2005 or early 2006, if any, were electronically posted to HCXchange. These documents are outside the discovery period as provided for by the Court. We understand that any such plans within the discovery period would have been manually created and retained in various employees' files. Subject to your agreement to accept the production of this category of documents under the Highly Confidential provisions of the December 16, 2005 Second

---

[5] The suggestion in your letter that Jeff Henderson was not an adequately prepared designee because his preparation did not include a review of HCXchange for communications with the named third-party-payor plaintiffs is unfounded. As Mr. Henderson explained, HCXchange does not contain any information regarding Neurontin-related marketing or promotion because Neurontin is not an actively promoted product. *See* Henderson dep. at 286-289.

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.

2818763v1


www.shb.com

Henderson Deposition
February 12, 2008
Page 4

Stipulated Protective Order (Dkt. # 257), we anticipate producing to you by the end of this week an initial production of plans related to Aetna and Kaiser.

Finally, with respect to the instruction to Mr. Henderson not to answer questions about Lyrica – a drug that is not at issue in this litigation – it is not reasonable for Plaintiffs to impose an obligation on the Defendants to prepare witnesses to testify about drugs other than Neurontin. Further, no harm can be shown from these instructions because the questions were outside the scope of the designation under Discovery Order 14 and Rule 30(b)(6) and they related to events outside the discovery period.

Please contact me at your earliest convenience with any questions.

Sincerely,

Nicholas P. Mizell

NMY:tmg

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.

2818763v1

**From:** Rouhandeh, James P. [rouhandeh@dpw.com]
**Sent:** Tuesday, December 04, 2007 4:04 PM
**To:** Ronald J. Aranoff
**Cc:** Mizell, Nick P. (SHB)

Ron:

Pursuant to Discovery Order 14, Defendants designate and will produce Jeff Henderson for deposition at 9:00 a.m. on December 5 and 6, 2007, here in the New York offices of Davis Polk and Wardwell to testify regarding:

- the marketing or promotion of Neurontin directly to the named Third Party Payors, and
- Pfizer's organizational structure used for communications with Third Party Payors including but not limited to the identification of individuals responsible for such communication, the types and categories of such communications, and to identify any databases that may exist containing the contents of such communications.

Additionally, and in response to plaintiffs' June 11, 2007 Notice of Deposition regarding corporate structure issues, defendants further designate Jeff Henderson as their 30(b)(6) witness regarding:

- the types of documents created or maintained at the Warner-Lambert Health Care Management Unit, and
- Pfizer's due diligence related to alleged off-label marketing with respect to Neurontin during the acquisition by Pfizer of Warner-Lambert and its Parke-Davis division.

We previously provided deposition testimony and related exhibits regarding subject matters 1, 2 and 5 in the Notice of Deposition regarding corporate structure issues, and Pfizer's designee in response to plaintiffs' Notice of Deposition regarding document production issues will testify regarding the types of documents created or maintained at the Warner-Lambert Customer Business Units. Defendants otherwise object to the Notice of Deposition regarding corporate structure issues as overbroad and unduly burdensome.

| George Cavic | John Richter | Christopher DeSimone |
|---|---|---|
| 27:18-34:14 | 45:13-46:17 | 30:7-33:15 |
| 36:2-35:3 | 60:23-62:12 | 44:3-45:14 |
| 42:9-49:19 | 65:14-25 | 48:10-20 |
| 51:8-52:23 | 50:2-51:23 | 123:16-126:21 |
| 57:11-61:20 | 55:1-56:7 | 134:14-135:3 |
| 69:2-73:6 | 66:19-67:12 | 166:21-169:9 |
| 86:22-89:25 | 77:3-19 | 182:7-186:6 |
| 90:25-94:1 | 163:7-168:12 | 227:5-236:10 |
| 95:2-115:18 | 193:15-217:23 | 242:10-244:16 |
| 133:24-134:20 | 348:4-355:4 | 316:10-328:17 |
| 139:11-14 | | 361:10-25 |
| 176:25-179:24 | | 363:11-465:16 |
| 211:12-14 | | 475:1-479:20 |
| 224:11-227:18 | | 481:11-489:6 |
| 305:10-17 | | 497:24-594:5 |
| 333:11-334:9 | | 598:11-607:19 |
| 353:13-359:12 | | 611:21-24 |
| 319:9-11 | | 613:1-11 |
| 397:16-472:17 | | |