UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------- x
:
In re:  NEURONTIN MARKETING, :
SALES PRACTICES AND :
PRODUCTS LIABILITY LITIGATION :
------------------------------------------------- x  MDL Docket No. 1629
:
THIS DOCUMENT RELATES TO: :  Master File No. 04-10981
:
*Bentley v. Pfizer Inc., et al.*, CA No. 05-11997-PBS :  Judge Patti B. Saris
*Bulger v. Pfizer Inc., et al.*, CA No. 07-11426-PBS :
*Dixon v. Pfizer, Inc., et al.*, CA No. 05-11998-PBS :  Magistrate Judge Leo T.
*Dorsey v Pfizer Inc., et al.*, CA No. 05-10639-PBS :  Sorokin
*McGee v. Pfizer, Inc.., et al.*, CA No. 05-12593-PBS :
*Owens v. Pfizer, Inc., et al.*, CA No. 05-11017-PBS :
*Pursey v. Pfizer, Inc., et al.*, CA No. 07-10106-PBS :
*Roberson v. Pfizer, Inc., et al.*, CA No. 05-12001-PBS :
*Shearer v. Pfizer Inc., et al.*, CA No. 07-11428-PBS :
*Smith v. Pfizer Inc., et al.*, CA No 05-11515-PBS :
*Valentine v. Pfizer, Inc., et al.*, CA No. 07-11067-PBS :
*Vercillo v. Pfizer, Inc., et al.*, CA No. 05-11019-PBS :
*Woolum v. Pfizer Inc., et al.*, CA No. 07-10853-PBS :
:
------------------------------------------------- x

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PRODUCT LIABILITY PLAINTIFFS' FRAUD CLAIMS
BASED UPON ALLEGEDLY IMPROPER MARKETING**

Defendants Pfizer Inc. and Warner-Lambert Company LLC respectfully submit this memorandum in support of their motion to dismiss product liability plaintiffs' fraud claims based on allegedly improper off label promotion in the Track One Cases pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1]

---

[1] The Track One cases are: *Bentley*, *Bulger*, *Dixon*, *Dorsey*, *Huberman*, *McGee*, *Owens*, *Pursey*, *Roberson*, *Shearer*, *Smith*, *Valentine*, *Vercillo*, and *Woolum*. This motion is not made in *Huberman* because plaintiff has not asserted a fraud claim in that case.

1

**PRELIMINARY STATEMENT**

On February 23, 2007 this Court granted defendants' motion to dismiss product liability plaintiffs' fraud claims based on allegedly improper marketing practices, concluding that the complaints were "clearly deficient" under Rule 9(b). Mem. & Order, dated Feb. 23, 2007 (Dkt # 646) (the "Order") at 4 (attached hereto as Exhibit A). Specifically, the Court ruled that although the complaints contained numerous allegations regarding off label promotion there was "no allegation that each doctor in the approximately 140 cases met with a medical liaison from Pfizer, attended a conference, or otherwise received the material misrepresentation which she then relied on." *Id.* The dismissal was without prejudice and gave plaintiffs leave to re-plead the fraud allegations after "the opportunity to conduct additional discovery with respect to contacts between Pfizer's sales team and the doctors who prescribed the medication," including the ability to "depose the doctors and evaluate relevant sales documentation." *Id.* In doing so, the Court required that plaintiffs' amended complaints include "specific misrepresentations that the plaintiffs' doctors allegedly relied upon" in order to satisfy the particularity requirement of Rule 9(b) *Id.* at 5.

The amended complaints contain no such allegations. They allege no specific misrepresentations made to plaintiffs' physicians and, therefore, no reliance by plaintiffs' physicians on any such statements. Despite having had the opportunity to depose doctors and sales representatives in the Track One cases, plaintiffs' amended complaints fail to establish the necessary causal link between any statement made by the defendants and plaintiffs' physicians' decision to prescribe Neurontin. Plaintiffs' wholesale failure to comply with Rule 9(b) and this Court's February 23, 2007 Order requires dismissal of plaintiffs' fraud claims based on allegedly improper off-label marketing.

## **PROCEDURAL HISTORY**

In response to defendants' original motion to dismiss plaintiffs' fraud claims, plaintiffs "admit[ted] they did not allege fraud with particularity" as required by Rule 9(b), but asked that the Court excuse this failure, arguing that plaintiffs' prescribing physicians refused to talk to plaintiffs' counsel and that plaintiffs needed more documents before they could take the depositions of the doctors pursuant to subpoena. *Id.* at 2. The Court refused to relax the requirements of Rule 9(b) on the grounds that the information necessary to plead fraud with particularity was within the control of third-parties; namely, plaintiffs' own doctors. Rather than dismissing plaintiffs' claims with prejudice, however, the Court allowed plaintiffs to undertake discovery in pilot cases and then to amend their complaints to re-allege fraud with particularity as required by Rule 9(b).

Following the Court's decision, the parties engaged in discovery in all Track One cases. Over the past year, the parties have deposed twenty-five prescribing physicians and twelve Pfizer territory representatives. On April 7, 2008, plaintiffs filed amended complaints in twelve of the fourteen Track One cases. *See* Dkt Nos. 1201–12. But none of the amended complaints identifies any specific misrepresentations upon which plaintiffs or their physicians allegedly relied. Indeed, despite having had the opportunity to depose twenty-five doctors and numerous sales representatives, plaintiffs remain unable, consistent with their obligations under Rule 11(b)(3), to plead with particularity that their doctors received, much less relied upon, any misrepresentation that defendants allegedly made. Instead, plaintiffs allege:

> Most doctors likely would never have heard of Neurontin but for the off-labeling [sic] marketing efforts of Warner-Lambert and allegedly Pfizer. The inability to prove that Warner-Lambert or Pfizer contacted a doctor directly does not mean that that doctor was not influenced by Warner-Lambert and Pfizer marketing efforts. Pfizer's off-label marketing of Neurontin indirectly

3

> influenced all, or substantially all, doctors prescribing Neurontin in one of two ways. First, a doctor who did not have direct contact with Pfizer most likely was influenced in his prescribing habits by one who did. Second, all, or substantially all, doctors were indirectly affected by Pfizer's suppression of negative or adverse information about Neurontin that would have affected their prescribing habits.

Bentley Am. Compl. (Dkt # 1207) ¶ 236. In short, plaintiffs once again admit their failure to plead fraud with particularity, but attempt to excuse this failure by relying on vague and general allegations of improper off-label marketing.

## ARGUMENT

Each of the twelve amended complaints suffers from the same basic flaw that mandated dismissal of plaintiffs' fraud claims fourteen months ago: Namely, none of the complaints contains any allegation that any plaintiff's doctor "met with a medical liaison from Pfizer, attended a conference, or otherwise received [a] material misrepresentation which she then relied on." Order at 4. Thus, plaintiffs' allegations of fraud remain "clearly deficient," *id.*, and dismissal of these claims is required.

Rather than plead additional facts that address the deficiencies that the Court identified, plaintiffs instead predicate their renewed fraud claims on the very allegations that the Court found were "clearly deficient." Order at 4. The Court, for instance, held that allegations "that Pfizer launched an illegal national campaign to market for off-label uses" fail to satisfy Rule 9(b)'s heightened pleading standards absent any allegation that each plaintiff's doctor received and relied upon a material misrepresentation. *See id.* ("Rule 9(b) does not permit a pure fishing expedition"). Plaintiffs, however, again base their claims on generic references to defendants' alleged "off-label marketing efforts," without alleging that any of their doctors actually received and relied on any misrepresentation. *E.g.*, Bentley Am. Compl. (Dkt # 1207) ¶ 236; s*ee, e.g.*, *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05 C 3004, 2006 U.S. Dist. LEXIS

4

18630, at *12 (N.D. Ill. Apr. 12, 2006) (complaint alleging that defendant made misstatements "'throughout the United States' and 'since FDA approval of the drugs'" failed to plead fraud with particularity because the plaintiff failed to allege "when and where she herself was deceived by the statements she mentions"); *In re Phenylpropanolamine Prods. Liab. Litig.*, MDL No. 1407, 2005 U.S. Dist. LEXIS 37008, at *4–5 (W.D. Wash. Aug. 29, 2005) (complaint alleging that defendant "undertook an advertising campaign that . . . fraudulently sought to create the impression and to convey to the plaintiffs and others on whom the plaintiffs would rely that the use of [the relevant drugs] was safe" failed to satisfy Rule 9(b)'s pleading requirements because plaintiffs "fail[ed] to allege specific facts regarding their reliance upon the alleged misrepresentation, such as where, when and how they became aware of such alleged misrepresentations"). *See generally In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456, Civ. A. No. 01-12257-PBS, 2007 U.S. Dist. LEXIS 26242 (D. Mass. Apr. 2, 2007) ("generalized allegations of widespread violations . . . , standing alone, are insufficient to satisfy Rule 9(b)'s particularity requirements").

Nor can the deficiencies in plaintiffs' allegations of fraud be cured by their speculative assertion that doctors who never received or relied upon any material misstatement from defendants—a category into which each and every one of plaintiffs' doctors apparently falls— "most likely w[ere] influenced in [their] prescribing habits by one[s] who did." *E.g.*, Bentley Am. Compl. (Dkt # 1207) ¶ 236. Such "bald assertions, without specific factual support, do not satisfy Rule 9(b)." *Greebel v. FTP Software*, 182 F.R.D. 370, 374 (D. Mass. 1998) (dismissing fraud claim based on allegations "that unidentified members of [defendant's] management communicated with certain analysts" on whose reports plaintiffs, in turn, relied).[2]

---

[2] Notably, to the extent that plaintiffs seek to base their claims on a "fraud on the market" theory of reliance, that theory is unavailable outside of the securities context. *See, e.g.*, *Summit Prop. Inc. v. Hoechst*

5

Finally, plaintiffs continue to predicate their fraud claims on allegations founded on "information and belief," although the Court plainly held that they may not do so. *See* Order at 3 (explaining that "Courts have refused to relax the requirements of Rule 9(b) when the information necessary to plead with particularity is within the control of a third party"). Indeed, the Court granted plaintiffs leave to amend their complaints with express purpose of allowing plaintiffs an opportunity to depose the relevant third-parties (*i.e.*, their doctors) and, based on this discovery, to "allege fraud with particularity, including specific misrepresentations that the plaintiffs' doctors allegedly relied upon." Order at 4–5. Despite having had the opportunity to depose twenty-five doctors and numerous sales representatives, however, plaintiffs remain unable, consistent with their obligations under Rule 11(b)(3), to plead that their doctors received, much less relied upon, any misrepresentation that defendants allegedly made.[3]

The amended complaints, in sum, each speculate that it is "likely" that plaintiffs' doctors, none of whom received or relied upon any misstatement, were "influenced in [their] prescribing

---

*Celanese*, 214 F.3d 556, 561 (5th Cir. 2000); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1369 (11th Cir. 1997). In any event, plaintiffs have not alleged, and could not allege, facts demonstrating that the market in which Neurontin was sold is an "efficient" market, a necessary predicate to pleading fraud on the market. *See Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1337 (S.D. Fla. 2007) (noting that "there is no prescription drug 'market,' at least as that term is understood in the securities context"); *see also McLaughlin v. Am. Tobacco Co.*, No. 06-4666-cv, 2008 U.S. App. LEXIS 7093, at *17–18 (2d Cir. Apr. 3, 2008) (rejecting application of fraud on the market in the consumer goods context because "the market for consumer goods . . . is anything but efficient").

[3] Plaintiffs also claim that "all, or substantially all, doctors were indirectly affected by Pfizer's suppression of negative or adverse information about Neurontin that would have affected their prescribing habits." *E.g.*, Bentley Am. Compl. (Dkt # 1207) ¶ 326. Plaintiffs' "fraudulent concealment" claims should be dismissed as duplicative of their "failure to warn" claims. It is axiomatic that silence cannot be actionably misleading absent a duty to disclose. *E.g.*, *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1202 (1st Cir. Mass. 1996). The only duty to disclose to which the amended complaints allude is the duty of a manufacturer to warn of a non-obvious risk associated with the normal use of its product about which the manufacturer knows or has reason to know—*i.e.*, the same duty that underpins plaintiffs' strict liability claims. In these circumstances, plaintiffs' fraudulent concealment claims should be dismissed as duplicative of their failure to warn claims. *See, e.g.*, *Waterhouse v. R.J. Reynolds Tobacco Co.*, 270 F. Supp. 2d 678, 685 (D. Md. 2003) (dismissing "claim for fraudulent concealment" as "nothing more than a failure-to-warn claim in different dress"); *Hamner v. BMY Combat Sys.*, 869 F. Supp. 888, 893 (D. Kan. 1994) ( "[A]ny claim plaintiff may have regarding defendants' failure to notify him of a danger associated with the use of their products is properly stated as a claim for a breach of defendants' duty to warn."); *Spangler v. Sears, Roebuck & Co.*, 759 F. Supp. 1337, 1338 (S.D. Ind. 1991) (same).

6

habits by one[s] who did." *E.g.*, Bentley Am. Compl. (Dkt # 1207) ¶ 326.  None of the complaints, however, contains "any details as to who allegedly uttered the misleading statements, to whom they were made, where they were made, when they occurred, and what actions they engendered." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30 (1st Cir. 2004).  As such, the dismissal of plaintiffs' fraud claims is required.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss plaintiffs' fraud claims with prejudice.

Dated:  April 21, 2008                          Respectfully submitted,

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
         James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

SHOOK, HARDY & BACON L.L.P.

By:   /s/ Scott W. Sayler
         Scott W. Sayler

2555 Grand Boulevard
Kansas City, Missouri 64108
(816) 474-6550

- and -

7

        HARE & CHAFFIN

By:   /s/ David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on April 21, 2008.

        /s/ David B. Chaffin