UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
                                                            :   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                                :
        SALES PRACTICES AND                                 :   Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION                       :
                                                            :   Judge Patti B. Saris
------------------------------------------------------------x
                                                            :   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                   :
                                                            :
        PRODUCTS LIABILITY ACTIONS                          :
                                                            :
------------------------------------------------------------x

**PRODUCTS LIABILITY PLAINTIFFS' MEMORANDUM
IN OPPOSITION TO DEFENDANTS' MOTION FOR
APPOINTMENT OF INDEPENDENT EXPERTS**

Products Liability Plaintiffs hereby oppose the motion by Defendants Pfizer Inc. and Warner-Lambert Company for appointment of a panel of independent experts to advise the Court in determining the admissibility of Plaintiffs' proffered expert testimony on general causation.

**PRELIMINARY STATEMENT**

Plaintiffs strenuously object to Defendants' request for the appointment of independent experts. The appointment of an independent panel of experts is an extraordinary, burdensome and expensive measure that is utilized only in extreme circumstances, and rarely in the case of pharmaceutical Multidistrict Litigations. The parties to this litigation have submitted sufficient materials and information for this Court to arrive at a reasoned determination as to whether Plaintiffs' experts sufficiently satisfy the relevance and reliability requirements of the Federal Rules of Evidence and *Daubert*.

Further, Defendants' motion will further stall this litigation and circumvent this Court's February 19, 2008 ruling, which already denied Defendants' request for a discovery extension

for an undetermined period of time, "until thirty days after the relevant data is received from FDA" that related to the January 2008 FDA Alert. (ECF Doc #1125.) (*See* excerpts from February 19, 2008 hearing, annexed hereto as Exhibit A.)

## ARGUMENT

### THE COURT SHOULD DENY DEFENDANTS' MOTION FOR THE APPOINTMENT OF AN EXPERT PANEL

Not only is this Court under no obligation to appoint an expert panel, such an appointment is simply not necessary in this case, and Defendants have not demonstrated otherwise. Defendants' attempt to have a panel appointed at this late juncture makes a mockery of the Court's expert discovery process and briefing schedule as to the issue of general causation.

Plaintiffs do not dispute the Court's "inherent authority to appoint independent experts." (Defs.' Mem. at 2.) However, Plaintiffs dispute that an expert panel is necessary at this late juncture in the litigation: (1) this Court is clearly capable of applying the legal standard of review to Defendants' pending motion to exclude Plaintiffs' expert testimony; (2) Defendants have not adequately addressed the burden to be placed upon the Court should the Court task an independent panel to evaluate general causation; (3) Defendants have not adequately addressed the expenses associated with an independent panel; and (4) Defendants' timing could not be worse, as the time to consider such a panel has long passed by this case. In exercising its discretion, this Court should deny Defendants' motion.

**A. Plaintiffs Have Submitted Well-Prepared and Documented Expert Reports, and This Court Is Experienced and Well Equipped to Handle The Rigors of This Pharmaceutical Products Liability Litigation.**

This Court is fully capable of applying the legal standard of review to the scientific opinions on general causation that are the subject of Defendants' currently pending motion to exclude Plaintiffs' experts from providing testimony. Not only have the parties submitted

detailed briefs and expert narrative reports for the Court's review, but the Court also currently has scheduled a *Daubert/Frye* hearing on June 19 and 20, 2008, wherein the Court will have the opportunity to hear and consider testimony from the experts, make direct inquiry of those experts, and hear argument from counsel.  The Court has all the resources it needs to reach a decision that reflects "real, not junk science."  (Defs.' Mem. at 1.)  This Court is no stranger to the application of *Daubert* to scientific issues, and the general causation issue in this case is not so complex as to warrant the burden, expense, and delay associated with the appointment of and review by a new group of purported experts.

This Court has broad discretion concerning whether an expert should be appointed and is not under "an affirmative obligation to appoint an independent expert."  *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK LTD.,* 326 F.3d 1333, 1348 (11th Cir. 2003); *see Oklahoma Natural Gas Co. v. Mahan & Rowsey, Inc.,* 786 F.2d 1004, 1007(10th Cir. 1986).  In O*klahoma Natural Gas Co.,* a case involving a dispute between the parties over the source of natural gas contained in several wells, the Tenth Circuit found that the district court had "carefully weighed the evidence along with expert testimony and arrived at a logical and permissible conclusion."  *Id.* at 1005.  Although the defendants had argued that court-appointed experts were required because the "district court lacked the expertise to weigh the scientific principles involved", the Court of Appeals found that "[t]he fact that the parties' experts have a divergence of opinion does not require the district court to appoint experts to aid in resolving such conflicts.  We conclude that the district court was in no way obligated to appoint an expert in this case and its failure to do so cannot give rise to error."  *Id*. at 1007.

In *Carranza v. Fraas,* 471 F. Supp. 2d 8 (D.D.C. 2007), the court addressed a malpractice action where plaintiffs requested that the court designate an expert witness pursuant to Fed. R.

3

Evid. 706. The case included evidentiary issues concerning agricultural law and USDA rules and regulations and a *Daubert* challenge to plaintiffs' experts. *Id.* at 10. The court denied plaintiffs' motion, holding that the issues involved were not so complex as to warrant the appointment and that the court "is no stranger to the application of administrative rules and regulations or to the general rigors of litigation". *Id.* The court also emphasized that Rule 706 "allows the court to appoint an expert witness to assist the court, not to assist a party." *Id.* at 11.

Based upon information provided by the Federal Judiciary, it has been found that "[a] better approach is to encourage the parties to present information that is responsive to the concerns of the court, inform the parties of the manner in which their presentations fall short, encourage the development of more useful testimony, and appoint an expert only when no other means is available for reaching a reasoned decision." Joe E. Cecil & Thomas E. Willging, *Court Appointed Experts*, Reference Manual on Scientific Evidence 1st ed., at 571 (Federal Judicial Center 1994). Generally, judges resort to court-appointed experts "after extensive efforts failed to find a means within the adversarial system to gain the information necessary for a reasoned resolution of the dispute. Appointment of an expert was rarely considered until the parties had been given an opportunity and failed to provide such information." *Id.*

Applying the reasoning above to the present case, the upcoming *Daubert* hearing will clearly be an adequate forum and opportunity for the parties to present information that is responsive to the concerns of this Court, if any. There are no facts here demonstrating that the parties' respective briefing documents fall short; and there is nothing to indicate a lack of available means for the Court to reach a well-reasoned decision. This Court has never expressed any need whatsoever for appointment of an independent expert panel, no doubt because the Court is well equipped and qualified to render a determination on the issue of general causation.

Moreover, although Defendants' experts may have a difference of opinion with Plaintiffs' experts, the main impetus of *Daubert* is to make certain that the parties' expert opinions are well grounded in good scientific principles—not to resolve a divergence in opinion.

This Court has previously resolved *Daubert* motions on several issues involving complex scientific disciplines without resorting to the appointment of a single expert, nevermind a panel of experts. For instance, in *Sutera v. Perrier Group of Am.,* 986 F. Supp. 655 (D. Mass. 1997), the Court resolved a *Daubert* challenge to experts regarding complex causation issues. This Court conducted a *Daubert* hearing, considered the written materials submitted with the briefings and rendered an opinion on the issue of whether expert testimony and scientific evidence on causation presented by Plaintiff involving his exposure to benzene, a known carcinogen, in Perrier's bottled water, was reliable. *Id.*

Similarly, in *United States v. Montero,* 2005 U.S. Dist. LEXIS 3962 (D. Mass. 2005), this Court held a six-day evidentiary hearing to resolve a *Daubert* challenge to the scientific principles forming the basis of ballistic evidence and testimony proffered by the Government. Although the Court found some questions concerning the Government's ballistic expert, it did "not find evaluating these questions to be beyond the capability of the average juror. Subject to any limitations the Court places on how the opinion is expressed . . . Extensive cross-examination of the government's experts will surely highlight the alleged shortcomings of this procedure" *Id.* at *19. (citing to *Daubert,* 509 U.S. at 596 ("'vigorous cross examination" is among that 'traditional and appropriate means of attacking shaky but admissible evidence'")); *see also United States v. Montero*, 407 F. Supp. 2d 351 (D. Mass. 2006).

In *United States v. Lowe,* 954 F. Supp. 401 (D. Mass 1996), this Court determined the admissibility of scientific evidence in the complex and cutting edge and advancing field of DNA

analysis and profiling, without the need for an independent expert panel. There were four days of evidentiary hearings at which, it appears from this Court's opinion, every facet of DNA analysis was broached. *Id.* at 403. This Court was clearly able to grasp the complex scientific issues and principles, apply the *Daubert* standards and arrive at a reasoned determination.

Moreover, this Court is no stranger to expert testimony and evidence regarding determinations made by the psychiatric community. In *United States v. Shields*, 2008 U.S. Dist. LEXIS 13837 (D. Mass. 2008), the Court was able to resolve a *Daubert* challenge regarding the reliability of expert testimony and evidence submitted by the Government involving whether the defendant suffered from "a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation is released" *Id.* at *1.

In light of this Court's prior experience in evaluating experts and applying *Daubert* principles to expert opinions, coupled with the parties' submission of expert reports, detailed counsel briefs, and the benefit of a *Daubert* hearing, Defendants have simply not met their burden of demonstrating that a panel of experts should be appointed.

    **B.**    **Appointment of Expert Witnesses Is Burdensome to the Court, Increases Expenses to the Parties, and Should Rarely Be Utilized.**

Appointment of experts pursuant to Fed. R. Evid. 706 is "rare under virtually any circumstances." *Caliendo v. Trump Taj Mahal Assocs.,* 2007 U.S. Dist. LEXIS 23677 (D.N.J. 2007) (citing to Wright & Gold, *Federal Prac. & Proc. Evid.* § 6304, p. 469) (denying plaintiffs' motion to appoint medical expert where it would solely benefit the party who has otherwise failed to gather such evidence). "Appointment of an expert by the court represents a striking departure from the adversarial process of presenting information for the resolution of disputes."

6

Cecil & Willging, *supra* at 571.[1] Such court appointed experts will "undoubtedly remain a rare and extraordinary event, suited only to the most demanding cases." *Id.*

The Reference Manual on Scientific Evidence 2d ed. (Federal Judicial Center 2000), states that the appointment of an expert "increases the burden on the judge, increases the expense to the parties and raises unique problems concerning the presentation of evidence." *Id.* at 61. Based upon interviews with judges who have appointed experts, the Reference Manual indicates that the need to appoint such experts "will be infrequent and will be characterized by evidence that is particularly difficult to comprehend, or by a failure of the adversarial system to provide the information necessary to sort through the conflicting claims and interpretations." *Id.* Use of such "court appointed experts must be grounded in a pre-trial procedure," and "should begin at a pre-trial conference held pursuant to Federal Rule of Civil Procedure 16." *See id.*

Defendants have not adequately identified why the rare and extraordinary task of appointing an expert panel is necessary here, let alone why it should be done at such a late juncture. The parties have adequately disclosed, explained, or otherwise set forth their respective positions on general causation through briefing papers now before this Court and for which a *Daubert* hearing is scheduled to be held in less than two months on June 19 and 20, 2008. There is no indication that the Court will be unable to comprehend the information that forms the bases of Defendants' motion or Plaintiffs' experts' opinions on general causation.

    **C.    Plaintiffs Object to the Appointment of an Expert Panel as This Would Interfere with the Adversarial Process.**

In *Gold v. Dalkon Shield Claimants Trust*, 1998 U.S. Dist. LEXIS 22414 (D. Conn. 1998), the court denied a plaintiff's motion to appoint expert witnesses pursuant to Fed. R. Evid.

---

[1] Cecil and Willging performed a study that included a paper survey to the Federal Judiciary and telephone interviews with Federal Judges who had availed themselves of Fed. R. Evid. Rule 706 to make such expert appointments.

706 based upon various factors including that the Court held "great respect for the adversarial process and would not lightly interfere in its operation," and the circumstances of the case did not "warrant such judicial intervention." *Id.* at *4. Similarly, in *Avatar Techs., Inc. v. Adacom Corp.*, 1986 U.S. Dist. LEXIS 16206 (D. Kan. 1986), the court denied a motion for the appointment of experts finding that it was "unconvinced that the use of such expert will shorten discovery, or lead to a quicker resolution of the case," and that the issues were not so technically complex as to require such an expert. The district court noted that Rule 706 had not be utilized by federal district judges whom "[a]s a group, they remain committed to adversarial responsibility for presenting evidence." 1986 U.S. Dist. LEXIS 16206 at *2 (citing to 3 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 706[01], at 706-12).

Comments from federal judges demonstrate that deference to the parties and commitment to the adversarial process are important factors in determining whether experts should be appointed by the court:

> Many of those who had appointed experts professed commitment to the adversarial process and the ability of juries to assess difficult evidence, and they indicated that they would appoint an expert only where the adversarial process had failed. A related reason for infrequent appointment of experts is deference by the judge to objections by the parties. Several judges alluded to such resistance, one stating "The parties resist, saying that they have their own experts." Similarly, another judge said that generally "the plaintiffs or their attorneys do not want such an expert because it will reduce the value of their case. I don't appoint experts without consent of the parties." Judges who favored other alternatives over the use of court-appointed experts cited deference to the parties as an important consideration.

Cecil & Willging, *supra* at 542.

Here, there has been no failure of the adversarial system to provide the information necessary to sort through the parties' claims and interpretations. As part of the adversarial system for this MDL, the Court has already put in place an adequate protocol for the resolution

of general causation: motion practice and a *Daubert* hearing. This Court is—and always has been—acutely aware of this "critical stage" of the proceedings. (Defs.' Mem. at 1.)

In fact, both this Court and Magistrate Judge Sorokin have presided over this adversarial process since 2005, and at no time prior to Defendants' motion at bar did Defendants ever indicate in any way whatsoever that an independent expert panel was a consideration. This Court and Magistrate Judge Sorokin held monthly conferences, reviewed and approved detailed case management orders, and decided discovery issues that pertain to the very safety issues that form the bases for general causation opinions in this case. In accordance with this Court's schedule, Defendants filed a motion to exclude three of Plaintiffs' experts, and Plaintiffs have filed their opposition to this motion. Reply and sur-reply papers are forthcoming in accordance with the Court's schedule. The adversarial process has been in place and has worked well without interference to date.

    **D.    Defendants' Motion Will Delay This Litigation and Circumvents this Court's February 19, 2008 Decision.**

Defendants' request for court appointed experts will further delay this litigation and circumvents this Court's ruling on February 19, 2008 (*see* Exhibit A, annexed hereto), which already denied Defendants' request for a discovery extension for an undetermined period of time, "until thirty days after the relevant data is received from FDA" related to the January 2008 FDA Alert. (ECF Doc # 1125). New York State experience with medical malpractice panels, which were abolished in 1991, indicates that the panels "delayed the resolution of cases by one or two years." Ellen Relkin, *Some Implications of Daubert and its Potential for Misuse: Misapplication to Environmental Tort Cases and Abuse of Rule 706(a) Court Appointed Experts*, 15 Cardozo L. Rev. 2255, 2269 (1994).

Defendants were well aware of Plaintiffs' theory of this case since Plaintiffs' expert reports were served on October 1, 2007 and October 22, 2007. Defendants failed to even make mention to this Court the possibility that they may request court-appointed experts. Now that Defendants are faced with Plaintiffs' opposition to their *Daubert* and summary judgment motions, and Defendants' own experts are unable to oppose Plaintiffs' experts with any persuasive, reliable opinions, Defendants ask that the Court retain three experts of its own (and Defendants have concurrently sought to retain a new rebuttal expert of their own as well). Defendants are simply unwilling to accept that Plaintiffs' claims are well grounded in substantial scientific principles and methodology, and further confirmed by the FDA's January 2008 Alert regarding anti-epileptic drugs and suicidality. Defendants' proposal for the appointment of a panel of experts is for their own benefit—not for the Court. It has been found that the "initial suggestion to appoint an expert almost always comes from the judge, not the parties." Cecil & Willging, *supra* at 544.

Contrary to Defendants' assertions, the appointment of experts is an extraordinary process which includes selection of independent experts, a rarity in itself when most experts will have some type of association with either the pharmaceutical industry or be colleagues of experts involved in the litigation, or have been involved in litigation previously, and hence conflict of interests will arise. Several federal judges have commented concerning "the difficulty in recruiting unbiased experts with the knowledge demanded in litigation" and several stated that they "doubted that such testimony would be truly neutral, even if the expert was invited to testify by the court." Cecil & Willging, *supra* at 545.

Moreover, the availability of the experts selected, establishment of parameters, the time it would take to ultimately review the materials and expert reports, and obtaining the depositions of

the experts could well delay the resolution of the *Daubert* issue and this litigation for a year if not more. Defendants' motion should be denied.

> **E.  Multidistrict Litigations Involving Pharmaceuticals Have Not Typically Resorted to Court Appointed Experts to Resolve *Daubert* Challenges or FDA Regulations and/or Actions.**

There have been numerous MDL's established to facilitate discovery in various pharmaceutical products liability litigations where it appears that *Daubert* challenges on general causation expert testimony and evidence have been resolved without resorting to the court appointment of experts: (1) MDL 1507 *In re Prempro Prods. Liab. Litig.*; (2) MDL 1596 *In re Zyprexa Prods. Liab. Litig.*; (3) MDL 1657 *In re Vioxx Marketing, Sales Pracs. & Prods. Liab. Litig.*; (4) MDL 1699 *In re Bextra & Celebrex Marketing, Sales Pracs. & Prods. Liab. Litig.*, (5) MDL 1431 *In re Baycol Prods. Liab. Litig.*; (6) MDL 1598 *In re Ephedra Prods. Liab. Litig.*; (7) MDL 1207 *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*; (8) MDL 1407 *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*; (9) MDL 1355 *In re Propulsid Prods. Liab. Litig.*

Plaintiffs submit that the parties have provided ample scientific information, expert reports, expert testimony, and the Court will have the benefit of a *Daubert* hearing to address any inquiries related to Plaintiffs' experts. This Court, like other courts handling MDL pharmaceutical litigations, has the requisite knowledge and expertise in resolving *Daubert* issues within the context of multi-faceted complex scientific disciplines to resolve the underlying motion without resorting to the court appointment of experts.

## CONCLUSION

Plaintiffs therefore respectfully request that this Court deny in its entirety, Defendants' motion for appointment of independent experts to advise the Court in determining the admissibility of Plaintiffs' proffered expert testimony on general causation.

Dated:  April 23, 2008                     Respectfully submitted,

*Members of Products Liability*
*Plaintiffs' Steering Committee*


By:     **/s/ Andrew G. Finkelstein**
          Andrew G. Finkelstein, Esquire
          Finkelstein & Partners, LLP
          436 Robinson Avenue
          Newburgh, NY  12550


By:     **/s/ Jack W. London**
          Jack W. London, Esquire
          Law Offices of Jack W. London
             & Associates
          106 E. 6th Street, Suite 700
          Austin, TX  78701


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on April 23, 2008.

          **/s/ Andrew G. Finkelstein**
          Andrew G. Finkelstein, Esquire