EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE:                                          )
NEURONTIN MARKETING, SALES PRACTICES ) CA No. 04-10981-PBS
AND PRODUCTS LIABILITY LITIGATION    ) Pages 1 - 51
SALES PRACTICES LITIGATION           )

MOTION HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
February 19, 2008, 3:35 p.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210

1  the expert opinions.  I'm not waiting until you get data from
2  the FDA.  We'll all be old and retired.  That isn't to say
3  you can't supplement later on if the data comes in.  But I'm
4  moving, I'm moving on the causation issues in the products
5  cases, and I think at least one piece of that is going to be
6  a significant overlap with yours.  Is that wrong?
7            MR. FINKELSTEIN:  Yes.
8            THE COURT:  All right, so talk to me.
9            MR. FINKELSTEIN:  On behalf of the product
10 liability plaintiffs, your Honor, the Daubert and general
11 causation, the thrust of our claim from the beginning has
12 been exclusively Neurontin's capacity to cause negative mood
13 and behavioral disturbances resulting in suicidality,
14 personal injury cases.
15           THE COURT:  Right.  And so it's the general
16 causation, not specific to each person.
17           MR. FINKELSTEIN:  Yes.
18           THE COURT:  But whether or not in fact --
19           MR. FINKELSTEIN:  The drug has the capacity to do
20 what we allege that it does.
21           THE COURT:  And that's primarily for people with
22 bipolar?  Is that right?
23           MR. FINKELSTEIN:  No, not at all.  Across the
24 entire spectrum of those who have been prescribed it.
25           THE COURT:  Now, so what do you anticipate?  Assume

1  for a minute I allow some supplemental discovery, whether
2  it's requiring you to do a more elaborate expert report or a
3  quick follow-up deposition on the supplemental disclosure,
4  but that can go on parallel with briefing.  I'm not going to
5  wait for the FDA.  But if the FDA finally spills forth, we
6  may end up having to do something new.  I mean, so that's
7  basically -- I'm not precluding you from going forward with
8  the FDA.  It's just I've been through that with the SEC, the
9  FDA, with all these agencies.  Good luck.
10             But assume for a minute that I allow, you know,
11  just two hours apiece follow-on for each of the four experts,
12  probably do it in a day, two days, as far as you're
13  concerned, what is the issue?  Whether or not it's a
14  substantial factor, Neurontin/gabapentin is a substantial
15  factor in causing suicide?  Is that the sole issue?
16             MR. FINKELSTEIN:  Whether it has the capacity to
17  lead to suicide, mood and behavioral disturbances that result
18  in suicidality, correct.
19             THE COURT:  Causation.
20             MR. FINKELSTEIN:  Causation.
21             THE COURT:  A substantial factor in causing
22  possible, possibly but for, depending on how you parse it,
23  causation-wise.
24             MR. FINKELSTEIN:  Right.
25             THE COURT:  So that's the only issue.  All right,

1  deposition again, I don't know where all these people are,
2  could they all fly to a central location?
3          MR. ROUHANDEH:  It would be helpful if they could
4  come to New York and we could do it in New York where they're
5  located and where we're located, and we could do the
6  depositions.  I think the reason we asked to do this after
7  the data is simply, when the data comes down, one side or
8  another, as your Honor --
9          THE COURT:  I'm not waiting.  I've been through
10 this route.  It takes forever.  They will refuse.  They'll
11 say take more.  You'll go to the D.C. Circuit, and then it's
12 just going to be one major hassle, and I'm not waiting.
13         MR. ROUHANDEH:  No, I understand that, your Honor.
14 Your Honor made that clear even at the outset of this.  What
15 I'm saying, I think, is, you also made clear that what's
16 going to happen is, there's going to be another round of
17 something, as long as the Court is prepared for that.  And
18 once the data comes down, there might be another round of
19 briefing, and there could be some additional expert
20 discovery.
21         THE COURT:  Maybe, but --
22         MR. ROUHANDEH:  Maybe, maybe not, but at a minimum,
23 I think we would want the depositions of their experts to
24 answer the question of why they're now relying on this data
25 that was irrelevant, you know, two months before.