UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re: NEURONTIN MARKETING,
SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

ALL PRODUCT LIABILITY ACTIONS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

**REPLY TO PRODUCT LIABILITY PLAINTIFFS'
MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR LEAVE TO SERVE A REBUTTAL EXPERT REPORT**

On April 17, the Court granted the motion of defendants Pfizer Inc. and Warner-Lambert Company for leave to serve a rebuttal expert report. Thereafter, plaintiffs filed a motion for clarification of the Court's ruling on the motion. (Docket # 1231.) Although there is no reason for the Court to reverse its ruling granting defendants' motion, on April 24, plaintiffs filed an opposition to the motion for leave to serve a rebuttal expert report. (Docket # 1237.) This reply is submitted for the Court's consideration only in the event the Court grants plaintiffs' motion for clarification and considers plaintiffs' opposition.

**Argument**

The Court has been asked to resolve the question whether plaintiffs have come forward with legally-sufficient scientific evidence that Neurontin is capable of causing suicide-related events. In claiming that such evidence exists, plaintiffs and their general causation experts rely on the 2008 FDA Alert on anti-epileptic drugs ("AEDs"). Defendants' rebuttal expert is uniquely qualified in biostatistics, the very field of science that plaintiffs' own expert states is

necessary to analyze and understand the data contained in the FDA Alert. Defendants' motion for leave to name a rebuttal expert is designed, therefore, to assist the Court in its consideration of the general causation issue, and, if granted, will cause no delay. Indeed, defendants have not asked for any adjustment whatsoever to the schedule in connection with this motion.

The Alert is, as the Court has recognized, "new." Defendants did not know that the FDA would issue it, and they therefore did not know and could not have known that it would be based on a pooled-data analysis of eleven different AEDs. And defendants did not and could not have known what the pooled data analysis would show, for they had only their own data. Obviously, defendants' experts were in no position to opine on the Alert or the pooled data analysis described in the Alert at the time of their expert reports for the simple and indisputable reason that the Alert did not then exist. Plaintiffs' response is premised almost entirely on the notion that defendants somehow should have predicted the Alert and its contents.

It is ironic that plaintiffs argue that defendants' experts should have anticipated the Alert when plaintiffs' own experts also did not see it coming. None of plaintiffs' experts opined about the Alert or about data pooling before the Alert was issued. Only after it was issued did plaintiffs serve their supplemental expert disclosure relating to the Alert, which, as the Court will recall, led to additional depositions of plaintiffs' three general causation experts. Defendants have already provided to plaintiffs the declaration of Dr. Gibbons and have offered to produce him for deposition. (Declaration of Dr. Robert Gibbons (attached hereto as Exhibit A).)[1] As indicated previously, the deposition of Dr. Gibbons, if plaintiffs choose to depose him, will not disrupt the schedule in any way.

---

[1] *See also* Reply Memorandum in Support of Defendants' Motion to Exclude the Testimony of Drs. Trimble, Kruszewski and Blume on the Issue of General Causation, and Dr. Gibbons' Declaration attached thereto, filed and served on April 25, 2008.

2

The expertise required to make sense of the Alert is biostatistics, as plaintiffs' expert Dr. Blume has acknowledged. (Transcript of Feb. 29, 2008 deposition of Dr. Blume at 20-21, 24, 27-28, 31 (attached hereto as Exhibit B) (testifying she would have to refer questions regarding FDA's analysis in the Alert to biostatisticians).) Dr. Gibbons has this precise expertise and, moreover, is uniquely qualified in psychometric biostatistics – i.e., analysis of pooled data regarding suicide-related events, such as that conducted by FDA here. As such, he is capable of explaining the FDA's analysis, what it means, any limitations it has, and how much of the data and results can be attributed to Neurontin. If defendants had known last year that the FDA was going to issue an alert combining data of eleven different AEDs and that plaintiffs' causation experts all would rely on it, Dr. Gibbons is likely the very expert whom defendants would have identified. But defendants did not know, and therefore did not consider naming Dr. Gibbons at the time their expert designations were due. But after the Alert issued, and encouraged by the Court's acknowledgment at the February 19 hearing that the Alert raised new issues requiring further expert disclosure, defendants went to considerable effort to find an expert who specializes in the very scientific field plaintiffs' own expert (Dr. Blume) testified is relevant and necessary to analyze the Alert. Plaintiffs' opposition is an obvious attempt to prevent the Court from considering the Alert without the benefit of the expertise directly relevant to its consideration.

Plaintiffs will not be prejudiced if Dr. Gibbons is permitted to opine on the Alert. Indeed, their opposition identifies no prejudice. Defendants already have proposed dates for Dr. Gibbons' deposition well in advance of the *Daubert* hearing, and because plaintiffs are already in possession of Dr. Gibbons' declaration, they need not wait to take his deposition.[2] Since plaintiffs' experts recently were deposed regarding their views and opinions on the Alert

---

[2] The Court's order provides for a Rule 26 expert report by Dr. Gibbons no later than May 17, giving plaintiffs a full month to depose him in advance of the evidentiary hearing.

3

(pursuant to permission granted by the Court), there is no need for additional depositions of plaintiffs' experts. Thus, adding Dr. Gibbons to address the Alert and plaintiffs' experts' reliance on it will not disrupt the schedule for the *Daubert* hearing or otherwise delay the case.[3]

### Conclusion

For the foregoing reasons and those previously stated, defendants respectfully request that the Court not disturb its grant of defendants' motion for leave to name Dr. Gibbons as their rebuttal expert.

Dated:  May 2, 2008                           Respectfully submitted,

DAVIS POLK & WARDWELL

By:  /s/James P. Rouhandeh
     James P. Rouhandeh

450 Lexington Avenue
New York, NY 10017
Tel:  (212) 450-4000

SHOOK, HARDY & BACON L.L.P.

By:   /s/Scott W. Sayler
     Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel:  (816) 474-6550

-and-

---

[3]  The only parties at risk of unfair and irreparable prejudice are defendants, who, if plaintiffs had their way, would be denied an opportunity to present critical evidence.

4

HARE & CHAFFIN

By:  /s/David B. Chaffin
     David B. Chaffin

160 Federal Street
Boston, MA 02110
Tel: (617) 330-5000

*Attorneys for Defendants Pfizer Inc. and*
*Warner-Lambert Company LLC*

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on May 2, 2008.

/s/David B. Chaffin
David B. Chaffin