EXHIBIT 13

# Finkelstein & PARTNERS
### Counselors At Law

A Limited Liability Partnership

(800) 634-1212
Fax: (845) 562-3492
www.lawampm.com

Howard S. Finkelstein, P.C. (NY)
Andrew G. Finkelstein, P.C. (NY & NJ)
George M. Levy (NY)
Kenneth L. Oliver, P.C. (NY)
Joel S. Finkelstein, P.C. (NY, NJ, MA & FL)
Duncan W. Clark (NY)
Ronald Rosenkranz (NY)
Robert J. Camera (NY & NJ)
Joseph P. Rones (NY & FL)
Steven Lim (NY)
George A. Kohl, 2nd (NY & MA)
Eleanor L. Polimeni (NY)
Steven H. Cohen (NY)
Francis Navarra (NY)
Andrew J. Genna, LLM (NY & PA)
Thomas C. Yatto (NY)

Elyssa M. Fried-DeRosa (NY)
Mary Ellen Wright (NY)
Kenneth B. Fromson (NY, NJ & PA)
Joel Bossom (NY)
Nancy Y. Morgan (NY, NJ & PA)
Andrew L. Spitz (NY)
James W. Shuttleworth, III (NY)
Lawrence D. Lissauer (NY)
David E. Gross (NY & NJ)
Terry D. Horner (NY)
Robert F. Moson (NY)
Julio E. Urrutia (NY)

Debra J. Reisenman (NY)
Michael T. McGarry (NY)

Steven Lim (NY & MA)
Victoria Lieb Lightcap (NY & MA)
Ann R. Johnson (NY & CT)
Marshall P. Richer (NY)
Thomas J. Pronti (NY)
Kristine M. Cahill (NY & CT)
Kara L. Campbell (NY & CT)
Christopher T. Milliman (NY)
Silvia Fermanian (NY)
Edward M. Steves (NY)
Marie M. DuSault (NY)
Glenn W. Kelleher (NY)
Melody A. Gregory (NY & CT)
Gail Schlanger (NY)
Elizabeth A. Wolff (NY & MA)

*Of Counsel*
Jules P. Levine, P.C. (NY & FL)
Michael O. Gittelsohn, P.C. (NY)
Joel A. Reback (NY & Israel)
Kenneth Cohen (NJ)
Cynthia M. Maurer (NY & NJ)
Raye D. Futerfas (NJ)
Frances M. Bova (NY & NJ)
Kenneth G. Bartlett (CT & NJ)
Ari Kresch (NY & MI)
Gustavo W. Alzugaray (NY & NJ)
Sharon A. Scanlan (NY & CT)
Jeffrey A. Brown, M.D., Esq. (NY & NJ)
Dennis G. Ellis (NY)
John F. Dowd (NY & CT)
Gail Koff, P.C. (NY)

*Accredited CLE Provider*

REFER TO OUR FILE #: 200599

January 7, 2008

Lori McGroder, Esq.
Shook Hardy Bacon, LLP
2555 Grand Blvd.
Kansas City, Missouri 64108

Re:    Neurontin Litigation
       Discovery Issues

Dear Lori:

Let me take this opportunity to address certain discovery issues in the Neurontin litigation.

Post-Deposition Requests of Dr. Cheryl Blume

I am in receipt of your letters of November 29, 2007 and January 3, 2008 regarding the Defendants' requests for discovery related to Dr. Blume's deposition testimony. While I have not responded in writing to your November 29, 2007, the parties have previously conferred via telephone as to the requests and the parties did discuss certain potential resolutions to your requests. In line with the parties' discussion, I have taken steps to provide a response to your requests.

Your January 3 letter states, "produce all references, information and documentation by January 8, or advise me immediately of your position regarding these issues." In response, to your request, please be advised that Plaintiffs' will not "produce all references, information and documentation" by January 8, 2008.

Let me also remind you that the requests in your letter (November 29, 2007) of Dr. Blume are considered continued requests encompassed by your formal deposition notice. Any activities requested of the expert are subject to the federal rules requiring the expert be compensated by the party seeking the discovery: the Pfizer defendants. Consequently, to the extent the expert is to provide responses to your requests, we will be seeking reimbursement from Defendants regarding fees incurred.

As to the information you seek but which Dr. Blume did not answer on the basis of a claim of confidentiality, she indicated her understanding of the confidentiality agreements and also indicated that past requests to disclose such information had been met with denials. Since you do not accept her claim of confidentiality, Dr. Blume consulted with her counsel, Jay Wolfson, Esq., and her counsel has agreed to provide a Declaration in support of Dr. Blume's position. Please be advised that any legal costs incurred by Dr. Blume for such legal

Newburgh • Albany • Binghamton • Kingston • Middletown • Monroe • New Windsor • Newark • Port Jervis • Poughkeepsie • Spring Valley • Syracuse • Troy • Utica

436 ROBINSON AVENUE
NEWBURGH, NY 12550

50 PARK PLACE, 10th FLOOR
NEWARK, NJ 07102

January 7, 2008                                                                                                                  Page 2

consultation are costs that we believe would be borne by defense counsel as part of your obligation to provide compensation to an expert related to a discovery request of that expert.

Let me address your request for "all time records for the Neurontin engagement" and your request to confer with us to discuss an alternative way to obtain an understanding of the time spent on the report. You are aware of the parties' agreement not to provide discovery related to drafts of expert reports. Specifically, our agreement is that "drafts of expert reports are not discoverable" and "drafts of expert reports is a subject about which the parties shall not inquire at depositions of the parties' expert." As I explained during the parties' telephonic conference, our position is that providing discovery to you of "all time records for the Neurontin engagement" would infringe upon the parties' agreement. Your attention is referenced to Dr. Blume's testimony as follows:

> Q. Other than drafting your report, between 2003 and 2007, what work did you perform in connection with your evaluation of the Neurontin, whether Neurontin causes or is related to suicide?
>
> A. Well, everything I did was related to my report relating to suicide and Neurontin use."
> (p.282).

Consequently, your inquiry infringes on the parties agreement: (a) the expert has testified everything done was related to the report; (b) our agreement is that drafts of expert reports is a <u>subject</u> about which the parties shall not inquire; (c) an inquiry as to the subject of how much time was spent on drafting the report is therefore precluded by the stipulation. Additionally, testimony was provided as to the expert's hourly rate of compensation as well as the compensation received each year since being retained for the litigation. Defense counsel has in its possession the information needed to know what time was spent. Nevertheless, as was discussed during the parties' telephonic conference, I am open to conferring with you as to what alternative you believe is appropriate and does not infringe on the parties' agreement. For example, I have attached a sample invoice for you to consider in terms of whether such a format would resolve the issue.

With respect to your statements describing Dr. Blume's testimony as "liberally refer[ring] to her experience with FDA" and your apparent inability to "test the veracity of this claim", I respectfully disagree with manner in which you have set forth the circumstances or her testimony. Notwithstanding any right you may or may not have to further inquiry of Dr. Blume or to the pursuit of the information you seek, your pursuit of the "approved" methodology utilized by Mr. Altman can more easily and appropriately be recovered via other discovery devices, as opposed to Dr. Blume. Indeed, prior to Dr. Blume's deposition, Plaintiffs' counsel made Mr. Altman available for a formal deposition; Mr. Altman was made available for an informal meet-and-confer; Mr. Altman made himself available before Dr. Blume's deposition, and he actually <u>did meet and confer</u> with defense counsel at Dr. Blume's office about his data and the methodology employed.

Without specific references to deposition questions, it is difficult to address the issues about which you are concerned. I thank you for specifically indicating your requests for the "FDA webcast on PRR at page 133, and the Pfizer document . . . on page 311-316 regarding the number necessary for a controlled clinical trial based on the Wardel article." The request was relayed to the expert, and I have attached for you documents received from the expert in response to your inquiry.

I am also in possession of your letter, dated January 3, 2008. The crux of the letter again purportedly seeks to gain information as to the "alleged FDA 'approval' of [Dr. Blume] or Mr. Altman's methods." I refer you to my statements above. Without repeating what I have said above regarding Mr. Altman, I would simply invite you to confer with him again or take his deposition to learn directly from him the methods he has utilized and whether his methods have been "approved" or "validated" by FDA as you seek to determine. Frankly, can you

clarify for me whether this is simply a parsing of words between the parties regarding this language of "approved" or "validated". To the extent you seek some document or writing from the FDA that specifically states, "Mr. Altman's method is approved" or "Mr. Altman's method is validated", this is not my understanding of Dr. Blume's testimony. Rather, Dr. Blume's testimony was that "NDAs have been approved using his database work . . . ." (p.57 as cited in your letter). Thus, his methods utilized were approved or validated by virtue of the approvals.

Discovery of Lester Reich Documents
Lori Schultz provided correspondence, dated November 5, 2007, regarding the issue of responsive documents. She offered to have an additional search performed and I accepted that offer. To date, I have not heard from defense counsel whether an additional search was performed, or whether such a search yielded any responsive documents. Please produce all such responsive documents by January 9, or advise me immediately of your position regarding this issue. It has been two months since her letter.

Deposition of Laura Kibbe
As you know, this deposition has been scheduled and cancelled numerous times by Defendants. Please advise me by January 9 of available dates for her testimony.


I look forward to speaking with you regarding these matters.


Very truly,


Kenneth B. Fromson
845-562-0203 x2755


cc      Jim Rouhandeh (Davis Polk & Wardwell)