# EXHIBIT A

Case 1:04-cv-10981-PBS   Document 1264-2   Filed 05/07/2008   Page 1 of 3

                IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


IN RE:                                      )
NEURONTIN MARKETING, SALES PRACTICES ) CA No. 04-10981-PBS
AND PRODUCTS LIABILITY LITIGATION    ) Pages 1 - 59
SALES PRACTICES LITIGATION )




              BEFORE THE HONORABLE PATTI B. SARIS
                 UNITED STATES DISTRICT JUDGE
                            -and-
                  JUSTICE HELEN E. FREEDMAN
                 NEW YORK SUPREME COURT JUSTICE




                         United States District Court
                         1 Courthouse Way, Courtroom 19
                         Boston, Massachusetts
                         December 11, 2006, 3:10 p.m.




                      LEE A. MARZILLI
                CERTIFIED REALTIME REPORTER
                United States District Court
                1 Courthouse Way, Room 3205
                     Boston, MA  02210
                      (617)345-6787

Page 34

1   issue.
2           THE COURT: You'd be willing to pluck ten cases?
3           MR. FINKELSTEIN: We would to begin --
4           THE COURT: You jointly agreed to that, right?
5           MR. ROUHANDEH: Yes, we did, your Honor.
6           MR. FINKELSTEIN: To make it manageable, Judge.
7           MR. ROUHANDEH: It doesn't solve the problem,
8   though, with what you do with the rest of the cases here,
9   which at some point -- the plaintiffs and defendants have
10  talked about this -- that we presume that yourselves or
11  Judge Sorokin is going to say, well, what about the rest of
12  the case, what's the plan for the rest of the cases? And
13  we've talked about whether there needs to be subsequent
14  tracks or not. In terms of selection of the cases, we also
15  haven't talked about that yet in terms of how they get
16  selected, but --
17          THE COURT: Maybe if you took five and they took
18  five, we litigated them through and got the parameters for a
19  decision tree.
20          MR. FINKELSTEIN: That's what our goal is. We
21  haven't worked out how, that selection process. In fact,
22  we're scheduled to meet tomorrow to talk further on that.
23  But in principle what we are defining is a track one set of
24  cases that don't have let's define the ancillary issues; that
25  we are looking for cases that would be dispositive of all of

Page 35

1   the cases.
2           MR. ROUHANDEH: Your Honor, with respect to that, I
3   think there was something your Honor said about maybe you
4   pick five, you pick five. That's something still we're
5   discussing with our client and need to discuss with the
6   plaintiffs, but there's something going on here which I think
7   is a little bit fishy, which is, you know, if they select
8   cases, we are at a complete loss as to know whether they have
9   talked to any of these doctors and what information they
10  have. So it may be that the Court should pick those cases
11  randomly so that we don't have a situation where they're
12  trying to pick, you know, their best cases.
13          THE COURT: Well, I'm hoping that they pick their
14  best and you take your five best, and then you'd get some
15  decision tree, and prune out the cases that are either going
16  to clearly be winners for them or clearly going to be winners
17  for you, and just create a -- there are too many of these
18  cases to really as a practical matter litigate them all,
19  right?
20          MR. FINKELSTEIN: And, as a practical matter,
21  Judge, that's what happens in all other litigations.
22          MR. ROUHANDEH: Your Honor, with respect to that
23  issue, I think it still doesn't resolve the issues on this
24  motion. I think I would like the opportunity to respond to a
25  couple of things that Mr. Finkelstein said.

Page 36

1           THE COURT: I popped in too quickly, so why don't
2   we give you your chance to argue, and then you can respond.
3           MR. FINKELSTEIN: Well, as it relates to -- I
4   respect your Honor's opinion that we may not rise to the
5   level of 9(b). However, I do feel that we do and
6   respectfully request that you find that, given the reduced
7   standard when it's a third party who the material
8   misrepresentation was made to. We do not have any of the
9   information of what was specifically said to them because
10  it's exclusively in control of the defendant, that the third
11  party being a learned intermediary physician is reluctant to
12  discuss it with us, that we have set forth the who, what,
13  when, and where. What we want to fill in is simply what went
14  to our physician. And our physician, it's not realistic and
15  it's not practical that they would take records of it and/or
16  remember it, and that the defendant has all of that and they
17  owe it to us. They've yet to provide any of that
18  information. The only information that they did provide
19  redacted the names of the doctors. So we do feel that we
20  have satisfied all of the pleading requirements and put them
21  on fair notice of 9(b) and the intent of 9(b), to protect the
22  reputation of the defendants. They've pled out in this
23  case. I don't think their reputation is really at issue.
24          Secondly, to minimize a fishing expedition, this is
25  far from a fishing expedition. We have identified with

Page 37

1   specificity exactly what we are looking for and have a
2   good-faith basis to seek that information, and it will merely
3   confirm exactly what is there.
4           THE COURT: As a matter of automatic disclosure,
5   have you given them all the records that you have about each
6   plaintiff and the doctor that they're talking about?
7           MR. FINKELSTEIN: We are probably 90 percent
8   complete.
9           THE COURT: See, neither of you have done the key
10  thing yet.
11          MR. FINKELSTEIN: Which is why we believe this is
12  premature. We don't think this application should have even
13  been made yet.
14          THE COURT: Well, you're allowed to move to
15  dismiss. If anything, it's two years into the case. I mean,
16  that's usually -- it's a little later than I usually get a
17  motion to dismiss, two years. So I don't know what -- that's
18  why I asked, why is this so late here? I mean, we're almost
19  all the way through the common discovery, right?
20          MR. FINKELSTEIN: No.
21          THE COURT: I mean, with the sales and marketing
22  people, almost everything has been disclosed.
23          MR. FINKELSTEIN: No.
24          THE COURT: Well, then there's a problem because I
25  think it's true in my sales and marketing side. You haven't