UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------------------x
:
In re: NEURONTN MARKETING, SALES :
       PRACTICES AND PRODUCTS : MDL Docket No. 1629
       LIABILITY LITIGATION :
------------------------------------------------------------------------x Master File No. 04-10981
:
THIS DOCUMENT RELATES TO: : Judge Patti B. Saris
:
ALL PRODUCTS LIABILITY CASES : Magistrate Judge Leo T. Sorokin
:
------------------------------------------------------------------------x

**PRODUCTS LIABILITY PLAINTIFFS' MEMORANDUM
IN SUPPORT OF MOTION TO EXCLUDE CERTAIN PORTIONS OF THE
DECLARATION OF DEFENDANTS' REBUTTAL EXPERT, DR. GIBBONS**

Products Liability Plaintiffs hereby move to strike the Declaration of Robert D. Gibbons, Ph.D., Defendants' expert in rebuttal to the FDA Alert, or portions thereof that clearly exceed the Court's Order limiting Defendants to "a rebuttal expert report involving only the FDA alert". Further, pursuant to Rule 37(c)(1) of the Federal Rule of Civil Procedure, Plaintiffs are requesting that this Court strike portions of the Gibbons Declaration, which may be confined to the FDA Alert but are in violation of Rule 26, in that such portions rely upon data and/or information and analyses of same heretofore possessed by Defendants and not properly disclosed to Plaintiffs during the discovery process.

**PRELIMINARY STATEMENT**

Plaintiffs objected to Defendants being granted leave to serve a rebuttal report, and contended that if such a rebuttal was to be permitted, it should have emanated from one of Defendants' already named experts. Nevertheless, the Court granted Defendants leave to serve "a rebuttal expert report involving only the FDA alert." Not only have Defendants taken advantage of the Court's order by violating the mandate that the rebuttal report concern "only the

FDA alert," but Defendants' rebuttal expert's Declaration compounds the error by proffering evidence that Defendants had in their possession but did not disclose to Plaintiffs as obligated under Rule 26. Plaintiffs respectfully submit that this Court either strike Defendants' rebuttal expert's Declaration in its entirety or, in the alternative, that the portions of the report that are contrary to the Court's order and/or pertain to disclosure heretofore not provided by Defendants to Plaintiffs.

## PROCEDURAL HISTORY

On April 10, 2008, Defendants moved for leave to name a rebuttal expert to "address plaintiffs' experts' causation testimony based upon the January 31, 2008 FDA Alert". ECF Doc # 1218 at 1. On April 17, 2008, the Court issued an Electronic Order granting Defendants' motion for leave to name a rebuttal expert. On April 17, 2008, Plaintiffs filed an emergency motion for clarification of the Court's April 17, 2008 Electronic Order. ECF Doc # 1231. Subsequently, on April 24, 2008, Plaintiffs filed a memorandum in opposition to Defendants' motion for leave to serve a rebuttal expert report. ECF Doc # 1237. On April 25, 2008, Defendants filed their reply papers in further support of Defendants' motion to exclude Plaintiffs' experts, which included the Declaration of Dr. Gibbons. ECF Doc. # 1241. (*See* copy of Gibbons. Decl., attached as Ex. A.) On April 28, 2008, Defendants filed a conditional motion for leave to file a reply to Plaintiffs' memorandum in opposition to Defendants motion for leave to serve a rebuttal expert report. ECF Doc # 1247. In the reply papers, Defendants attached the proposed rebuttal opinion of their expert, Dr. Gibbons.[1]

In response to Plaintiffs' emergency motion for clarification, on April 30, 2008, the Court issued a further Electronic Order which states: "I have read plaintiffs' memo, but will still

---

[1] Despite their original motion for leave for which the stated purpose was to "address plaintiffs' experts' causation testimony based upon the January 31, 2008 FDA Alert," ECF Doc. #1218 at 1, Dr. Gibbons offered new opinions and duplicative opinions from previous experts having nothing to do with the subject FDA Alert.

2

permit a rebuttal expert report <u>involving only the FDA alert</u>, which is a key finding in this case. I will also be sending a letter to the FDA asking for its input." (Emphasis added.) On May 2, 2008, the Court issued an Electronic Order granting Defendants motion for leave to file a conditional motion for leave to file a reply. On May 2, 2008, Defendants filed a reply to Plaintiffs' memorandum in opposition to Defendants' motion for leave to serve a rebuttal expert report in which Defendants admitted that Dr. Gibbons is their rebuttal expert and that Plaintiffs have been provided with his Declaration regarding the FDA Alert. ECF Doc. # 1253 at 2, 3.

## ARGUMENT

Defendants have admitted that the Gibbons Declaration, dated April 23, 2008, is in fact the rebuttal opinion for which they sought leave from the Court to serve. ECF Doc. #1247-2 at 3, 4. Although the Court's April 17, 2008 Electronic Order afforded Defendants 30 days to serve a rebuttal opinion, Defendants served Dr. Gibbons' rebuttal opinion on April 25, 2008, and again on April 28, 2008. In fact, as part of Defendants' argument in support of their request seeking leave to serve Dr. Gibbons' rebuttal opinion, Defendants touted that Plaintiffs suffer no prejudice because the opinion had already been served; Defendants' stated that "Plaintiffs will not be prejudiced . . . because plaintiffs are already in possession of Dr. Gibbons' declaration." ECF Doc. # 1247-2, Defs.' Proposed Reply Mem. at 2. Defendants have also included Dr. Gibbons' Declaration as an exhibit to their Reply Memorandum to their pending *Daubert* motion. Thus Plaintiffs submit that Defendants have no further right to serve an additional rebuttal opinion from Dr. Gibbons without further leave of the Court.

Importantly, Plaintiffs have relied on Defendants' representation that the Gibbons Declaration is the actual rebuttal opinion for which the Court granted leave to disclose. First, even a cursory review of the Declaration shows it is meant to be Defendants' Rule 26 expert

3

disclosure: the Declaration includes Dr. Gibbons' qualifications; the documents he reviewed and considered; the previous cases wherein he has offered testimony; his hourly rate of compensation; and his opinions. ECF Doc. #1247-2, Defs.' Proposed Reply Mem. at 8-9.

Second, given that Defendants included the Gibbons rebuttal opinion as part of their *Daubert* Reply Memorandum, Plaintiffs submitted their own Sur-Reply Memorandum addressing the purported rebuttal opinions that Dr. Gibbons proffered. Now, if Defendants serve another rebuttal opinion report, they have the unfair advantage of a second report where they can unfairly respond to Plaintiffs' Sur-Reply Memorandum; thus, Defendants effectively benefit from an unauthorized Sur-Sur-Reply. Plaintiffs submit that Defendants have no further right to serve an additional report or declaration without further leave of the Court.

    **I.**    **The Declaration of Defendants' Rebuttal Witness, Dr. Gibbons, Relies on Data, Information and Analyses That Defendants Possessed During the Discovery Process But Failed to Disclose to Plaintiffs In Violation of Fed. R. Civ. P. 26, and Therefore Should Be Stricken Pursuant to Rule 37(c)(1)**

Pursuant to Rule 37(c)(1) "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Moreover, Rule 26(e)(2) "*Expert Witness* provides: "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's **duty to supplement extends both to information included in the report** and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." *Id.* In *Sheek v. Asia Badger, Inc.,* the First Circuit affirmed the trial court's decision to strike portions of an expert's testimony for failure to comply with the mandates of Rule 26 in regard to the expert disclosure in question. 235 F.3d 687, 693-694 (1st Cir. 2000). In *Lubanski v.*

4

*Coleco Indus., Inc.,* the First Circuit affirmed the trial court's exclusion of plaintiff's rebuttal evidence where the evidence was available to the plaintiff during her case in chief and the testimony that the defendant was seeking to rebut was not unexpected. 929 F.2d 42, 47 (1st Cir. 1991).

As to that portion of the Gibbons rebuttal report that is limited to the FDA Alert, Dr. Gibbons discussed, analyzed and relied upon data that Defendants have always possessed but **never disclosed** to Plaintiffs during the entire pendency of this litigation. Indeed, Defendants' newly appointed rebuttal expert attacks the FDA's methodology in pooling 11 anticonvulsants, and at page 4 of his Declaration, Dr. Gibbons **analyzes Pfizer's clinical trial data relating to Lyrica (Pregabalin)**: Neurontin's new generation drug. The Lyrica (Pregabalin) data to which Gibbons refers has heretofore never been disclosed to Plaintiffs Thus, Plaintiffs are not on equal footing to test Dr. Gibbons' opinions; and such data should be deemed inadmissible and excluded. Specifically, Dr. Gibbons reviews, considers and opines upon the following information related to pregabalin data, all of which should be excluded by this Court:

> Second, it is methodologically appropriate and reliable to look at gabapentin and pregabalin as a group since, unlike the other nine drugs in the FDA's pooled dataset, these two drugs are both alpha 2 delta ligands, and share a similar mechanism of action. The pregabalin data submitted to FDA include a total of 10,888 patients (7609 treated and 3279 controls). The odds ratio for pregabalin was 1.50 (0.356-6.390), $p<0.733$, also indicating an insignificant risk of treatment on suicidality, but also underpowered in and of itself to detect such a difference. The incidence was .092% for pregabalin versus .061% for placebo. Note that these two drugs (gabapentin and pregabalin) account for 43% of the entire FDA database, yet they appear to have a very different risk profile than the other nine drugs. Excluding the gabapentin and pregabalin data, the combined incidence for the other nine drugs is .64% for treated and .32% for control patients, yielding an odds ratio of 2.009 (1.349-2.992), $p<0.001$, which is substantially increased following removal of the two Pfizer products. The combined incidence of suicidality for gabapentin and pregabalin is 0.07% versus .05% on placebo. The odds ratio for the two Pfizer products is 1.397 (0.409 - 4.771), $p<0.763$ which also shows no statistical evidence of an association between suicidality and treatment with these two drugs. Further, the combined analysis provides adequate statistical

power to detect a significant difference. Using a incidence of 0.64% for treated and .32% for control patients derived from the other nine drugs, power of 80% is achieved with sample sizes of 10,983 for treated and 5,492 for control conditions. The data for the two Pfizer products consist of 12,803 trated and 5,9612 control patients, which indicate that we have more than 80% power to detect the difference observed in the other nine drugs for the two Pfizer products. Results of that analysis reveal no increased risk of suicidality (p<0.763) for gabapentin and pregabalin.

These findings indicate that there is clear heterogeneity among the trials that were pooled by FDA in their meta-analysis. These results do not support FDA's statement that the results were "generally consistent" across the drugs," at least not for gabapentin and pregabalin. The data for gabapentin and pregabalin do not show evidence of increased risk of suicidality, whereas the combination of the other nine drugs do. None of these positive findings indicate causal associations between epileptic drugs and suicidality as will be addressed in the following opinions. [*Id.*]

If Defendants—the manufacturers of Lyrica (pregabalin)—choose to rely upon the purported safety of pregabalin as demonstrative of the safety of Neurontin, which is exactly what Gibbons does in his above referenced rebuttal, Plaintiffs are clearly entitled to the very same discovery of pregabalin safety information as was provided to Plaintiffs with respect to Neurontin. Over the span of the past four years, Plaintiffs and their experts have reviewed and analyzed hundreds of thousands of pages pertaining to Neurontin clinical trial data. Plaintiffs and their experts have reviewed the safety issues reflected in Defendants' Neurontin clinical trials, and Plaintiffs' experts have opined upon the safety issues reflected in Defendants' Neurontin clinical trials. Not only have Defendants not provided such discovery pertaining to pregabalin (e.g,, New Drug Application, Research Reports, Adverse Event data, Safety Reviews, Medical Information, Safety Surveillance Documents, etc.) during this litigation, but Defendants have not even provided the very specific, limited pregabalin clinical trial data submitted to the FDA for its suicidality review. It plainly violates Rule 26 disclosure requirements for Defendants to rely upon data never before disclosed in the litigation. Consequently, the Court should exclude from consideration Dr. Gibbons' reference to pregabalin.

6

**II.     Portions of The Declaration of Dr. Gibbons That Do Not Involve the FDA Alert Should Be Stricken by the Court.**

In *Dufresne v. Microsoft Corp.,* the U.S. District Court for the District of Massachusetts excluded a supplemental report of an expert, noting that a party is "not entitled to a 'placeholder' to 'reserve the right' to opine . . . in a later round of expert reports." 2006 U.S. Dist. LEXIS 57423 at *22 (D. Mass. 2006). The Court noted that "the vast majority of support appears to come from materials that were in Plaintiff's possession at the time of the original exchange of the report." *Id.* at *25.

The Court's electronic order, posted to ECF on April 30, 2008, limited Defendants' rebuttal expert to the FDA Alert. Specifically, the Court permitted "a rebuttal expert report involving only the FDA alert, which is a key finding in this case." (Emphasis added.) Defendants sought leave only to serve a rebuttal opinion about the FDA Alert, and consistent with the Order, this Court should strike and exclude all opinions and analyses from the Gibbons' Declaration that do not involve the FDA Alert. In this regard, the Court's attention is referred to specific opinions by Dr. Gibbons that clearly stray from any semblance of involvement with the FDA Alert: Gibbons' "Opinion 3", "Opinion 5", and "Opinion 6" should be excluded. Gibbons Decl. at pp. 6, 8, and 9. These opinions do not pertain to the FDA Alert but simply provide Defendants with an opportunity to provide supplemental or otherwise duplicative expert opinions on the same issues that Defendants' original experts either could have, or previously did opine. Defendants had the information available at the time of their initial expert disclosure.

Gibbons' "Opinion 3" states: "None of the statistical information provided by the plaintiffs experts advances our understanding of the relationship between anti-epileptics and suicidality." *Id.* at 6. Gibbons then goes on to discuss the expert report of Plaintiffs' expert, Cheryl Blume, Ph.D. As a preface to his criticism of Dr. Blume, Dr. Gibbons states: "With the

7

assistance of Mr. Altman, Dr. Blume has provided a series of such analyses in her expert report." *Id.* Clearly, this is not in any way a rebuttal opinion and certainly has nothing to do with the subject FDA Alert. Indeed, Dr. Blume's report was disclosed in this litigation in October 2007, months before the January 2008 FDA Alert was even issued. Dr. Blume's analyses in her previously disclosed report (as well as Defendants' attacks on Mr. Altman's involvement in providing data to Dr. Blume for purposes of her report) has already been the subject of Defendants' deposition of Dr. Blume and Defendants' pending motion to exclude her testimony. Consequently, "Opinion 3" and all statements that comprise the bases for said opinion on pages 6-7 of the Gibbons report should be excluded.

Similarly, Dr. Gibbons' "Opinion 5" states: "There is no epidemiologic evidence that gabapentin is associated with suicide." Gibbons Decl. at p. 8. Dr. Gibbons then goes on to discuss the McFarland Study just as Defendants' previous experts have done in their criticism of Plaintiffs' experts. This has nothing to do with the FDA Alert. Thus "Opinion 5" and all statements that comprise the bases for said opinion on page 8 of the Gibbons report should be excluded.

Finally, "Opinion 6" states: "Spontaneous Reports submitted to FDA do not represent a signal for increased risk of completed suicide for gabapentin." Nowhere is the FDA Alert even referenced at pages 9-10 of the Gibbons report. Defendants' experts have already taken great lengths to argue that spontaneous adverse event reports do not prove general causation. Plaintiffs have similarly argued in this litigation that spontaneous adverse event reports can be evidence supportive of general causation even if they do not prove general causation standing alone. The Gibbons' Declaration provides no opinion that even vaguely represents a rebuttal opinion to any "new" or unforeseen facts or opinions that Defendants previously claimed served

as the basis for their need to have a rebuttal expert. Consequently, "Opinion 6" and all statements that form the bases for such opinion should be excluded.

## CONCLUSION

Plaintiffs respectfully request that the Court strike the Declaration of Dr. Gibbons, Defendants' expert in rebuttal to the FDA Alert, or portions thereof that clearly exceed this Court's Order limiting Defendants to "a rebuttal expert report involving only the FDA alert." Further, Plaintiffs request that the Court strike portions of the Gibbons Declaration, pursuant to Fed. R. Civ. P. 37(c)(1), which may be confined to the FDA Alert but violate Fed. R. Civ. P. 26 in that such portions rely upon data and/or information and analyses thereof heretofore possessed by Defendants and not properly disclosed to Plaintiffs during the discovery process.

Dated: May 8, 2008                                          Respectfully submitted,

*Members of Products Liability
Plaintiffs' Steering Committee*

By:    **/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY  12550

By:    **/s/ Jack W. London**
Jack W. London, Esquire
Law Offices of Jack W. London
  & Associates
106 E. 6th Street, Suite 700
Austin, TX  78701

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on May 8, 2008.

**/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein