UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCT LIABILITY LITIGATION | ) ) ) ) ) | MDL Docket No. 1629<br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO<br><br>PRODUCTS LIABILITY ACTIONS | ) ) ) ) ) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSAL
FOR SCHEDULING TRACK ONE CASES FOR TRIAL AND
REMANDING PLAINTIFFS' DESIGNATED
<u>TRACK ONE CASE TO TENNESSEE FOR TRIAL</u>**

Pfizer Inc. and Warner-Lambert Company ("Defendants) respectfully submit this response to Product Liability Plaintiffs' Proposal for Scheduling Track One Cases for Trial and Remanding Plaintiffs' Designated Track One Case to Tennessee for Trial.

**I.   BACKGROUND**

The parties are in agreement as to the proposed schedule for the two trial work-up cases, *Smith* and *Bulger*. *See* Defendants' Proposed Schedule for Two Trial Work-Up Cases (Docket No. 1265); Product Liability Plaintiffs' Proposal for Scheduling Track One Cases for Trial and Remanding Plaintiffs' Designated Track One Case to Tennessee for Trial (Docket No. 1264). Assuming case-specific full discovery workups are limited to *Smith* and *Bulger* (as contemplated by all of Magistrate Judge Sorokin's previous orders), the parties have agreed to the following proposed dates:

| EVENT | DEADLINE/DATE(S) |
|---|---|
| Fact discovery closes in trial work-up cases | 7/1/08 |
| Plaintiffs' expert reports in two trial work-up cases | 8/7/08 |
| Depositions of plaintiffs' experts completed | 9/22/08 |
| Defendants' expert reports in two trial work-up cases | 10/10/08 |
| Depositions of defendants' experts completed | 11/26/08 |
| Dispositive motions | 12/23/08 |
| Oppositions to dispositive motions | 1/13/09 |
| Replies to dispositive motions | 1/27/09 |
| Sur-replies to dispositive motions | 2/10/09 |

Consistent with the many orders entered by the Court regarding the Track One process, expert discovery and summary judgment in *Bulger* and *Smith* will proceed in this MDL (assuming the Court has not granted summary judgment to defendants on general causation or preemption at some point prior to the completion of this process). At the end of that process, this Court will proceed to try the *Bulger* case and remand the *Smith* case back to the transferor court for trial. Plaintiffs, on the other hand, would turn this orderly, efficient, and fair process on its head through their alternative approaches that would entail the Court sitting in a remote location for weeks on end or trying multiple, different cases at the same time.

## II.    SUMMARY OF ARGUMENT

Since the inception of this litigation, plaintiffs' counsel have argued that they should be permitted to self-select the cases that should be tried and in what order. *See, e.g.,* Plaintiffs' January 9, 2007 submission regarding selection of Track One cases, Docket #599. The Court *rejected* plaintiffs' approach in Discovery Order No. 11. Instead, the Court allowed each party to choose one trial work-up case from the previously-identified group of ten Track One cases. In response to Discovery Order No.

11, plaintiffs chose *Smith v. Pfizer et al.*, No. 05-11515-PBS as their trial work-up case and defendants ultimately chose *Bulger v. Pfizer*, No. 07-11426-PBS.[1]

Plaintiffs now seek yet ***again*** to disrupt the carefully established process for choosing and working up the two Track One trial cases. Instead of allowing the two agreed-upon Track One cases proceed to trial in the usual course, plaintiffs now ask the Court to enter an order somehow *requiring Smith* to be the first case tried. *See* Pls.' Proposal at p. 1 ("Plaintiffs request that . . . *Smith* should be remanded to the original transferor court…for trial, and that *Smith* should be the first case tried."). Or, plaintiffs suggest, the parties and the Court should petition the First and Sixth Circuit Courts for permission and then this Court should travel to Tennessee and preside over what is likely to be at least a four-week trial in *Smith*. Alternatively, plaintiffs ask the Court to disregard the carefully constructed Track One process and ignore the parties' Track One trial work-up selections in favor of consolidating all four District of Massachusetts cases for trial.

At the end of the day, plaintiffs' proposals are simply further attempts to keep any of plaintiffs' weakest cases from being tried ahead of their perceived "strong" case and to further upset the orderly progression of this litigation.[2] The parties and the Court have spent a great deal of time and effort constructing the Track One process. In an effort to

---

[1] Defendants initially chose *Strickland v. Pfizer Inc. et al.* as their trial work-up case; but were forced to re-select after plaintiffs dismissed *Strickland* and *Mendoza* (defendants' other Track One selection), and, following the Court's certification order, a number of additional cases.

[2] Plaintiffs have already had the opportunity to winnow out their weak cases, as they discontinued approximately 20% of their inventory in response to the Court's certification order. Notably, plaintiffs "certified" the Bulger case, notwithstanding their apparent reluctance to take this case to trial.

3

have *Smith* tried first, plaintiffs now suggest that the Track One process be disregarded in favor of various novel and complicated alternatives.

### III. PLAINTIFFS' SUGGESTIONS REGARDING *SMITH* ARE VEILED ATTEMPTS TO DISRUPT THE MDL PROCESS AND THE ESTABLISHED TRACK ONE PROCESS

Plaintiffs propose that the Court travel to Tennessee and preside over the *Smith* trial. In order to accomplish this, plaintiffs suggest that the parties and the Court make an "application" to "the appropriate Judges in the First Circuit and Sixth Circuit" that would "enable this Court to preside over the *Smith* trial in Tennessee." *See* Pls.' Proposal at p. 4. Citing to phone conversations and emails with the operations manager in the Middle District of Tennessee, plaintiffs suggest that the process and procedure for having this Court preside over *Smith* in Tennessee is a simple matter. But it is not simple. Pursuant to 28 U.S.C. 292(d), in order for this Court to preside over *Smith* in the Middle District of Tennessee, the **Chief Justice of the United States Supreme Court** would need to "designate and assign temporarily a district judge of one circuit for service in another circuit." In order for the United States Supreme Court to make such designation, Chief Justice Roberts would need to be provided with a certificate of necessity. There is, of course, no necessity in this instance. Plaintiffs ignore that this trial would take place subject to Tennessee substantive law and subject to the precedent of that district court and circuit. The federal judges in Tennessee are certainly capable of presiding over *Smith*. Accordingly, there is no necessity that would require intervention of this Court, the First and Sixth Circuits, and the United States Supreme Court.

Alternatively, plaintiffs suggest, they are entitled to some sort of order which would state that the *Smith* case shall be the first to trial and the Court should take steps to

4

then coordinate with the District of Tennessee to obtain an expedited trial date for *Smith*. *See* Pls.' Proposal at 6.  In sum, plaintiffs are suggesting procedural gymnastics that are not necessary and not needed under the spirit and purpose of the MDL process, which is designed for the MDL court to handle pretrial proceedings and then remand cases to their original transferor courts for trial.

## IV.     CONSOLIDATION FOR TRIAL IS INAPPROPRIATE

Plaintiffs also propose that, if the Court will not enter an order putting *Smith* ahead of all other cases, the Court should consolidate all four of the District of Massachusetts cases for trial.  This proposal is inconsistent with the Court's carefully-crafted plan for the Track One cases and would rob defendants of their trial work-up selection (*Bulger*).  Plaintiffs' suggestion is improper on many levels.

First, consolidation of the four District of Massachusetts cases is not practical. *Bulger* is far ahead of the other three cases in terms of discovery.  If *Shearer, Dorsey,* and *Huberman* were consolidated with *Bulger*, the schedule on which the parties have agreed would need to be extended.  Because the initial Track One discovery was limited to plaintiffs, prescribers, and sales representatives, the parties have not begun the time-consuming task of collecting a full set of medical records or locating, contacting, and deposing other treating physicians .  Nor have any additional fact witnesses (e.g., law enforcement personnel, medical examiners, co-workers, neighbors, friends, family, etc.) been deposed.  In contrast, this process is well underway in *Bulger.*  The Court's Track One process never envisioned consolidation of multiple cases for trial.

Even if plaintiffs' suggestion were practical (which it is not), consolidation of the cases would still be improper.  Consolidation of cases for trial is governed by Federal

5

Rule of Civil Procedure 42. Consolidation under Rule 42 is not appropriate when individual issues predominate over common issues. *See e..g, Hasman v. G.D. Searle & Co.*, 106 F.R.D. 456, 461 (E.D. Mich. 1985) ("When cases involve some common issues but *individual issues* predominate, consolidation should be denied.") (emphasis in original). "A party moving for consolidation must show that consolidation would promote trial convenience and economy in administration due to factors other than a mere commonality of legal and factual issues." *Fleishman v. Prudential-Bache Sec., Inc.*, 103 F.R.D. 623, 624-25 (E.D. Wis. 1984).

Plaintiffs have failed to meet their burden. They assert that consolidation would result in judicial economy, but they provide little support for this assertion. In fact, consolidation for trial would not result in substantial savings of time because individual issues predominate in these cases. *See Hasman,* 106 F.R.D. at 460 (holding that judicial efficiency would not be served by consolidation because "the unique details of each case would still need to be presented to the jury").

Each of the four Massachusetts cases will rest on its own individualized facts, presented to the jury through dozens of case-specific witnesses and hundreds of pages of medical records and other case-specific materials. Every case is different, each involving a unique medical and social history, different indications for the Neurontin prescription, different dates of initial prescription (hence, different applicable labeling) and durations of usage, and different prescribing doctors and treating doctors. This individualized evidence and these individualized issues will predominate at trial. Moreover, the case-specific facts in each case will affect what is and is not admissible at the non-case-

6

specific level. Consolidation would lead to an inefficient, confusing, and unfairly prejudicial trial.

In order to recover, each plaintiff must prove specific causation, *i.e.,* that his/her injury was caused by Neurontin. In the four District of Massachusetts cases, the medical and social histories of the plaintiffs/decedents are extensive. For instance, in *Bulger*, defendants estimate there will be *a minimum* of thirty witnesses at trial, ranging from prescribing physicians, treating physicians, substance abuse treatment providers, social service providers, police and medical personnel, family members, friends, and others who will help explain the circumstances surrounding Mrs. Bulger's suicide. Given the sheer number of fact-specific witnesses involved in each case, it cannot be considered efficient to consolidate these cases for trial. Likewise, the expert testimony will vary greatly among these four cases. Jurors would then have the burdensome task of sifting through this voluminous and sometimes contradictory testimony to render separate verdicts for each plaintiff.

In addition to proving specific causation, each plaintiff will also have to establish proximate cause, *i.e.,* that his or her prescribing physician would not have prescribed Neurontin if given a different warning. This, too, is a highly case-specific inquiry. Each plaintiff was prescribed Neurontin by different physicians under different circumstances. Different doctors rely on different sources of information when prescribing medication. These differences significantly impact plaintiffs' failure-to-warn claims and "learned intermediary" and other defenses. Given the foregoing, a consolidated trial would require that the jury hear complicated and conflicting testimony regarding complicated medical

histories on four different plaintiffs from at least dozens of prescribing physicians, treating physicians, and other fact witnesses.

Moreover, consolidation of more than one case would prejudice defendants. *Flintkote Co. v. Allis-Chalmers Corp.*, 73 F.R.D. 463, 464-65 (S.D.N.Y. 1977) ("[C]onsolidation should not be ordered if it would prejudice defendant, for consideration of convenience and economy must yield to the interests of justice in a fair and impartial trial."). Juror confusion is a real and likely danger if evidence of the specific facts pertaining to the prescription of Neurontin for Mrs. Bulger, her alleged use of Neurontin, and her alleged injury are considered together with evidence of the other plaintiffs' use of Neurontin and their alleged injuries. In other words, the same jurors determining whether Neurontin caused Mrs. Bulger's injury and/or was the proximate cause of her death would also be presented with considerable evidence completely irrelevant to these issues. Exposure to such evidence (which will include case-specific expert testimony and exhibits) would serve only to confuse the jury.

Juror confusion, in turn, would be prejudical to defendants. To properly defend against Mr. Bulger's claim that his wife's suicide was caused by Neurontin, defendants alternative cause evidence (such as pre-existing medical conditions, substantial substance abuse, and a complicated social history, etc.) must be given fair and full consideration by the jury. This is more difficult when trial is lengthened and jurors must sift through exhibits and testimony highly relevant to one case, but completely irrelevant to the other.

Defendants will also be prejudiced by the presence of three other plaintiffs, each of whom allege Neurontin caused their alleged injury, and the presentation of evidence regarding their injuries and each plaintiff's alleged damages. Knowledge that four

different plaintiff have brought lawsuits alleging that Neurontin caused injury may improperly suggest to jurors in and of itself that Neurontin injured these plaintiffs and that defendants are somehow at fault. As recognized in *Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 790 (E.D. Ga. 1994), where there are multiple plaintiffs in a single trial, there is "tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus, prejudicing defendant with respect to the other plaintiffs' claims."

Jurors will also be improperly influenced by evidence pertaining to four separate cases – each with evidence presented that is wholly irrelevant to the other cases. It is almost certain that evidence deemed admissible in one case would be inadmissible in another. *See Baker v. Waterman S.S. Corp.,* 11 F.R.D. 440, 440-41 (S.D.N.Y. 1951) (denying motion to consolidate despite common questions of law and fact because there was a chance that the jury might be influenced, even subconsciously, by the more serious injuries to one of the plaintiffs after hearing testimony regarding his pain and suffering); *see also Hasman v. G.D. Searle & Co.,* 106 F.R.D. 459 (E.D. Mich. 1985) (denying consolidation of three products liability actions against the same manufacturer by plaintiffs alleging the same injury because consideration of plaintiffs' unique medical and social histories and the different warnings provided to their respective doctors in one trial might result in a verdict that was the product of cumulative confusion and prejudice). This analysis is especially relevant here, given that two of the cases involve allegations of wrongful death. The testimony of family members regarding the loss of the decedent in those two cases may improperly influence the way jurors' decide the other two cases.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court refuse plaintiffs' request to enter an order requiring *Smith* to be tried first or to consolidate the District of Massachusetts cases for trial.

Dated: May 8, 2008                    DAVIS POLK & WARDWELL

By:  /s/ James P. Rouhandeh
     James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

SHOOK, HARDY & BACON L.L.P.

By:  /s/ Scott W. Sayler
     Scott W. Sayler

2555 Grand Boulevard
Kansas City, Missouri 64108
(816) 474-6550

		-and-

HARE & CHAFFIN

By:  /s/ David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company*

### CERTIFICATE OF SERVICE

I hereby certify that this document has been served pursuant to Case Management Order No. 3.

/s/David B. Chaffin

10