UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------x
:
In re: NEURONTIN MARKETING, :
SALES PRACTICES AND :
PRODUCTS LIABILITY LITIGATION :
------------------------------------------------x MDL Docket No. 1629
:
THIS DOCUMENT RELATES TO: : Master File No. 04-10981
:
*Bentley v. Pfizer Inc., et al.*, CA No. 05-11997-PBS : Judge Patti B. Saris
*Bulger v. Pfizer Inc., et al.*, CA No. 07-11426-PBS :
*Dixon v. Pfizer, Inc., et al.*, CA No. 05-11998-PBS : Magistrate Judge Leo T.
*Dorsey v Pfizer Inc., et al.*, CA No. 05-10639-PBS : Sorokin
*McGee v. Pfizer, Inc.., et al.*, CA No. 05-12593-PBS :
*Owens v. Pfizer, Inc., et al.*, CA No. 05-11017-PBS :
*Pursey v. Pfizer, Inc., et al.*, CA No. 07-10106-PBS :
*Roberson v. Pfizer, Inc., et al.*, CA No. 05-12001-PBS :
*Shearer v. Pfizer Inc., et al.*, CA No. 07-11428-PBS :
*Smith v. Pfizer Inc., et al.*, CA No 05-11515-PBS :
*Valentine v. Pfizer, Inc., et al.*, CA No. 07-11067-PBS :
*Vercillo v. Pfizer, Inc., et al.*, CA No. 05-11019-PBS :
*Woolum v. Pfizer Inc., et al.*, CA No. 07-10853-PBS :
:
------------------------------------------------x

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PRODUCT LIABILITY PLAINTIFFS' FRAUD CLAIMS
BASED UPON ALLEGEDLY IMPROPER MARKETING**

Defendants Pfizer Inc. and Warner-Lambert Company LLC respectfully submit this reply memorandum in further support of their motion to dismiss product liability plaintiffs' fraud claims based on allegedly improper off label promotion in the Track One Cases pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1]

---

[1] The Track One cases are: *Bentley*, *Bulger*, *Dixon*, *Dorsey*, *Huberman*, *McGee*, *Owens*, *Pursey*, *Roberson*, *Shearer*, *Smith*, *Valentine*, *Vercillo*, and *Woolum*. Defendants' motion is not made in *Huberman* because plaintiff has not asserted a fraud claim in that case. Furthermore, the plaintiff in *Dorsey* has not sought to amend the fraud allegations that the Court's February 23, 2007 Order found deficient, and the time for such amendments to be made has now passed. *See* Discovery Order No. 19 (Dkt # 1049) at 5.

**ARGUMENT**

Despite having had the opportunity to depose twenty-five doctors and numerous sales representatives, product liability plaintiffs remain unable, consistent with their obligations under Rule 11(b)(3), to plead with particularity that their doctors received, much less relied upon, any misrepresentation that defendants allegedly made. *See generally* Mem. & Order, dated Feb. 23, 2007 (Dkt # 646) (the "Order") at 4, 5 (holding that plaintiffs' amended complaints must set forth the "specific misrepresentations that the plaintiffs' doctors allegedly relied upon" to comply with Rule 9(b)'s requirements). Instead, as set forth below, plaintiffs' fraud claims rest on (1) generic references to defendants' alleged "off-label marketing efforts," unaccompanied by any allegation that plaintiffs' doctors actually received and relied on any misrepresentation, and (2) allegations that remain based on unsubstantiated "information and belief," even though plaintiffs have now had the opportunity to depose their prescribing physicians and evaluate the relevant sales documentation. Plaintiffs have, in addition, amended their complaints to assert fraud-through-silence claims that are not based on allegedly improper marketing practices, but duplicate plaintiffs' strict-liability failure-to-warn claims. Because none of these claims sets forth any "specific representations that the plaintiffs' doctors allegedly relied upon," Order at 5, plaintiffs' fraud claims should be dismissed with prejudice.

**I.      Plaintiffs' Efforts To Re-Litigate the Rule 9(b) Standards Set Forth in the Court's February 23, 2007 Order Are Unavailing**

Plaintiffs neither dispute the content of the Court's February 23, 2007 Order nor contest the failure of their amended complaints to satisfy the requirements set forth therein. Instead, plaintiffs attempt to re-litigate the requirements set forth in the Court's Order. These attempts are unavailing.

As discussed in defendants' opening brief, courts, consistent with this Court's Order, have found that generic references to allegedly improper marketing fail to satisfy Rule 9(b)'s particularity requirements in the absence of any allegation that plaintiffs or their doctors received and relied on a specific misrepresentation. *See* Mem. Supp. Defs.' Mot. Dismiss Prod. Liab. Pls.' Fraud Claims Based Upon Allegedly Improper Mktg. (Dkt # 1233) at 4–5. Moreover, to the extent plaintiffs seek to base their claims on a "fraud on the market" theory of reliance, that theory is unavailable outside of the securities context. *Id.* at 5–6 n.2.

The precedents on which plaintiffs rely, moreover, do not support their arguments. *New England Data Services, Inc. v. Becher*, 829 F.2d 286 (1st Cir. 1987), for instance, underscores the rigor with which the First Circuit has applied Rule 9(b). The *Becher* Court held that Rule 9(b) requires specificity in the pleading of civil RICO claims based on predicate acts of mail and wire fraud. *Id.* at 290. Where, however, details as to when and where the mails or wires were used are "in the exclusive control of the defendant," the First Circuit held that district courts should determine "whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint." *Id.*

*Becher* is thus doubly distinguishable: Here, the information necessary to plead fraud with particularity is not "in the exclusive control of the defendant," *Becher*, 829 F.2d at 290; rather, as this Court previously recognized, it is "in the control of a third party," Order at 3 (explaining that "[c]ourts have refused to relax the requirements of Rule 9(b)" in such circumstances). Moreover, unlike the plaintiffs in *Becher*, product liability plaintiffs have now *had* the opportunity to obtain discovery from the relevant third-parties (*i.e.*, their prescribing

3

physicians). Nonetheless, they remain unable to plead fraud with the requisite particularity. As such, dismissal of plaintiffs' fraud claims with prejudice is required.[2]

## II. Allegations Based on Unsubstantiated Information and Belief Fail To Satisfy the Particularity Requirements of Rule 9(b)

Had the depositions of plaintiffs' prescribing doctors or other discovery taken in these cases yielded any evidence that any one of those doctors had been exposed to, much less relied upon, a misstatement regarding Neurontin, plaintiffs would no doubt have pleaded that fact on knowledge. It is a testament to the deficiency of plaintiffs' marketing-based claims that plaintiffs do not profess to have knowledge of any such misstatement. Seven of the Track One complaints simply offer no allegation whatsoever that plaintiffs or their physicians were exposed to any misstatement, and allegations in the remainder are made, without exception, on "information and belief."

Even if allegations made on "information and belief" were permissible in this context, these pleadings would remain inadequate because plaintiffs' complaints fail to set forth supporting facts on which their beliefs are founded. *See Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985). Five complaints allege, "[u]pon information and belief," that plaintiffs' prescribing doctors "heard directly or otherwise learned indirectly" of a statement that Pfizer Senior Medical Director Dr. Catherine Clarey made on National Public Radio on January 16,

---

[2] Other precedents on which plaintiffs rely are equally inapposite. In *Bhandari v. Bittner*, No. 03-CV-0012E(Sc), 2004 U.S. Dist. LEXIS 29356 (W.D.N.Y. Oct. 5, 2004), the plaintiff both "specified the statements that he contend[ed] were fraudulent" and "indicated where and when such misrepresentations were made and, specifically, the circumstances in which the decedent relied upon such statements." *Id.* at *10–11. The court excused plaintiff from specifying the individual involvement of each defendant in formulating an allegedly fraudulent package insert because this information was "within the exclusive knowledge of the defendants and [the] plaintiff w[ould] be able to obtain this information only through discovery which ha[d] not yet commenced." *Id.* at *10; *see also United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39, 48–49 (D. Mass. 2001) (concluding that relator's complaint and attached disclosure satisfied the particularity requirements of Rule 9(b) by pleading, with regard to eleven occurrences, the "'who, what, when, where, and how' of the alleged fraud").

2003.³ None, however, pleads any factual basis for this belief: Plaintiffs do not profess to know that any of their prescribing doctors actually heard Dr. Clarey's statement or, for that matter, spoke to anyone who did. Absent any supporting detail, the bare allegation, made "on information and belief," that a prescribing doctor "heard . . . or otherwise learned" of Dr. Clarey's statement falls far short of meeting Rule 9(b)'s requirements.

The *Valentine* amended complaint alleges—again "[u]pon information and belief"—that at some unspecified time "prior to Plaintiff's suicide attempt, Bernard Arias, M.D., a psychiatrist, was told by Defendants' sales representative a/k/a Territory Manager 'hush-hush' and 'off-the-record' that Neurontin was safe and effective for [unspecified] indications not approved by the FDA." Valentine Am. Compl. (Dkt # 1205) ¶ 126. Had the deposition testimony that forms the basis for this allegation, *id.* ¶ 127, actually made mention of any representation regarding Neurontin's safety or efficacy, plaintiffs obviously would have alleged it. They do not and cannot.

Plaintiffs' remaining allegations specify no alleged misrepresentations whatsoever. Instead, each concerns deficient allegations of supposed promotion for unspecified off-label uses—again made on "information and belief." Even if off-label promotion were itself privately actionable—and the Court has held that it is not—each of these "information-and-belief"-based allegations is patently inadequate.

Five complaints allege, each on "information and belief," that defendants' sales representatives promoted Neurontin for unspecified off-label uses to one or more of plaintiffs'

---

³ *See* Woolum Am. Compl. (Dkt # 1201) ¶¶ 248–53; Valentine Am. Compl. (Dkt # 1205) ¶¶ 258–63; Roberson Am. Compl. (Dkt # 1206) ¶¶ 259–63; Smith Am. Compl. (Dkt # 1209) ¶¶ 284–89; Bulger Am. Compl. (Dkt # 1211) ¶¶ 270–75.

prescribing physicians. Two of these complaints fail to disclose the facts, if any, on which this "information and belief" is founded. *See* Shearer Am. Compl. (Dkt # 1208) ¶¶ 121, 125; Bulger Am. Compl. (Dkt # 1211) ¶ 121. The three remaining complaints are no less deficient. Each complaint predicates its "information and belief" that Neurontin was promoted to a prescribing physician off-label on an allegation that the physician "was not a neurologist or epileptologist," and the unstated assumption that any contact between defendants' representatives and a physician outside these specialties must involve off-label promotion. Valentine Am. Compl. (Dkt # 1205) ¶ 124; Smith Am. Compl. (Dkt # 1209) ¶¶ 133, 138, 142; Owens Am. Compl. (Dkt # 1212) ¶ 161.

These allegations, however, cannot establish off-label promotion, much less fraud. Plaintiffs do not allege—nor could they allege, consistent with the discovery taken in these cases—that prescribing doctors who were not neurologists or epileptologists did not prescribe Neurontin for its labeled indications. Furthermore, contacts between sales representatives and physicians frequently amount to nothing more than a representative providing the physician with Neurontin samples, often at the physician's own request, and plaintiffs do not and cannot allege otherwise. The mere fact that a contact between a sales representative and a doctor occurred is obviously not enough to state a claim for fraud.

Moreover, even if allegations of off-label promotion alone sufficed to state a claim for common law fraud, plaintiffs' defective allegations based on information and belief would nonetheless fail to plead fraud with the specificity required by Rule 9(b).[4]

---

[4] The *Shearer* complaint additionally alleges that defendants "sponsored and provided funding to" Dr. Keith Edwards, whom defendants listed as an investigator for a double-blind, placebo-controlled trial of Neurontin for the treatment of diabetic peripheral neuropathy. Shearer Am. Compl. (Dkt #1208) ¶ 120. The complaint,

### III. Plaintiffs' Fraud-Through-Silence Claims Should Be Dismissed as Duplicative of Their Strict-Liability Failure-To-Warn Claims

Plaintiffs also have amended their complaints to assert fraud-through-silence claims that rest on the same allegations as their strict-liability failure-to-warn claims and should be dismissed as duplicative of those claims.[5] As discussed in defendants' opening brief, silence cannot be actionably misleading absent a duty to disclose. *See* Dkt # 1233 at 6 n.3; *e.g.*, *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1202 (1st Cir. 1996). But as discussed in defendants' opening brief, the only duty to disclose to which the amended complaints allude is the duty that underpins plaintiffs' strict-liability claims—*i.e.*, the duty of a manufacturer to warn of a non-obvious risk associated with the normal use of its product about which the manufacturer knows or has reason to know.

Indeed, in a telling admission of the duplicative character of their claims, plaintiffs argue that they have adequately pleaded causation with respect to their fraud-through-silence claims by invoking *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806 (5th Cir. 1992), a case that relates exclusively to claims brought under "a failure to warn theory." *Id.* at 808.

In *Hamner v. BMY Combat Systems*, 869 F. Supp. 888 (D. Kan. 1994), the court, confronted with similar circumstances, observed that "[a] comparison of the elements required

---

however, does not allege that defendants made any misrepresentation to Dr. Edwards over the course of the study, or that Dr. Edwards relied on any such misrepresentation. *Id.*

Other allegations—based on multiple layers of wholly unsubstantiated "information-and-belief" pleading—are still more attenuated. *See, e.g.*, Valentine Am. Compl. ¶ 123 (information and belief allegation of promotion to a doctor who, on further information and belief, had contact with plaintiff's own doctor); Owens Am. Compl. (Dkt # 1212) ¶ 156 (prescribing doctor allegedly influenced by another doctor, who attended a consultants' meeting where, on information and belief, someone promoted Neurontin for unspecified off-label uses).

[5] *E.g.*, Bentley Am. Compl. (Dkt # 1207) ¶ 236; Bulger Am. Compl. (Dkt # 1211) ¶ 257; Owens Am. Compl. (Dkt # 1212) ¶ 163; Roberson Am. Compl. (Dkt # 1206) ¶ 246; Shearer Am. Compl. (Dkt # 1208) ¶ 258; Valentine Am. Compl. (Dkt # 1205) ¶ 245.

7

for a fraud through silence claim with those necessary for a breach of duty to warn claim reveals virtually total overlap." *Id.* at 893. The court concluded on this basis that "any claim plaintiff may have regarding defendants' failure to notify him of a danger associated with the use of their products is properly stated as a claim for a breach of defendants' duty to warn," and dismissed the plaintiff's allegations of fraud-through-silence for failure to state an independent claim for relief. *Id.* at 893; *see also Waterhouse v. R.J. Reynolds Tobacco Co.*, 270 F. Supp. 2d 678, 685 (D. Md. 2003); *Spangler v. Sears, Roebuck & Co.*, 759 F. Supp. 1337, 1338 (S.D. Ind. 1991).

Defendants respectfully submit that the same result should obtain in this case.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss plaintiffs' fraud claims with prejudice.

Dated: May 12, 2008                                    Respectfully submitted,

DAVIS POLK & WARDWELL

By:  /s/ James P. Rouhandeh
     James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

SHOOK, HARDY & BACON L.L.P.

By:  /s/ Scott W. Sayler
     Scott W. Sayler

2555 Grand Boulevard
Kansas City, Missouri 64108
(816) 474-6550

- and -

HARE & CHAFFIN

By:  /s/ David B. Chaffin
     David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on May 12, 2008.

                                /s/ David B. Chaffin