UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCT LIABILITY LITIGATION | MDL Docket No. 1629<br>Master File No. 04-10981<br><br>Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

THIS DOCUMENT RELATES TO:

*Jessie Allen, et al v. Pfizer, Inc.*, Case No. 4:07cv74
*Mary Cooper, et al v. Pfizer, Inc.*, Case No. 2:04cv255
*Leroy Anderson, et al v. Pfizer, Inc.*, Case No. 4:04cv275

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO MOTION TO DISMISS

The Plaintiffs submit their Plaintiffs' Memorandum In Support of Their Opposition to Motion to Dismiss, as follows:

#### PLAINTIFFS' THEORY OF LIABILITY AND DAMAGES

1. In 1993, Defendants received FDA approval to market and sell Neurontin for the treatment of epilepsy in certain doses. Despite FDA's limited approval for the use of Neurontin the Defendants engaged in an illegal marketing scheme to push and promote "off-label" uses of the prescription drug Neurontin. "Off-label" is the term describing uses for a drug that are not approved by the U.S. Food and Drug Administration ("FDA"). All uses of Neurontin for treatment of conditions other than epilepsy is "off-label".

2. The United States Attorney for the District of Massachusetts ultimately brought criminal charges against Defendants for this conduct. The attorneys general from the 50 states also commenced litigation against Defendants under the relevant consumer protection statutes of those states. On May 13, 2004, Defendants agreed to plead guilty to federal criminal charges, and at the same time, entered into a settlement agreement with the attorneys general.

3. Defendants' scheme ultimately caused physicians to prescribe Neurontin for the off-label uses that Defendants promoted. Each of the plaintiffs in these actions was prescribed Neurontin for an "off-label" use, i.e. none of the plaintiffs suffer from epilepsy and consequently was not prescribed Neurontin for epilepsy. These plaintiffs were prescribed Neurontin for various medical conditions that Neurontin was not approved to treat such as foot pain, hand pain, back pain, depression, neuropathy, headaches.

4. As a consequence of the Plaintiffs' "off-label" use of Neurontin, the plaintiffs' underlying medical conditions went untreated while they were taking Neurontin. Any purported benefit from "off-label" use of Neurontin can be explained by the placebo effect. The FDA had not granted approval for said "off-label" use and, moreover, there was little – if any – scientific evidence suggesting Neurontin was safe and effective when so used.

5. In addition to Plaintiffs' underlying medical conditions being untreated while taking Neurontin, the Plaintiffs experienced mental and emotional distress upon learning that the FDA had not approved the use of Neurontin for their respective medical

condition. Further the Plaintiffs incurred medical expenses for their purchases of Neurontin.

6. Contrary to Defendants' assertion, punitive damage is relevant in this litigation because Mississippi is a punitive damage State for intentional conduct or even gross negligent conduct.

7. The Complaints allege that "The conduct of the Defendants described above was the proximate cause of injuries to the Plaintiffs, ***including but not limited to*** the following:" [our emphasis]

    a. suicide/attempted suicide and/or suicidal thoughts;
    b. memory loss;
    c. liver failure;
    d. kidney failure;
    e. heart attack;
    f. strokes;
    g. high blood pressure;
    ***h. and other injuries;***    [our emphasis]

The Complaints further state "Plaintiffs request the following relief:

    ii. Compensatory damages against Defendants in an amount deemed appropriate by the trier of fact, including but not limited to, medical, incidental, hospital, and service expenses and loss of earnings and earning capacity, according to proof;

    iii. Punitive or exemplary damages as allowed by law;

    iv. Prejudgment and post judgment interest on all damages as is allowed by law;

  v. Past and future mental and emotional distress, according to proof;

  vi. Restitution of all purchase costs Plaintiffs paid for Neurontin, disgorgement of Defendants' profits, and such other equitable relief as the Court deems just and proper;

  vii. Costs, including but not limited to discretionary Court costs of this cause, and those costs available under the law, as well as expert fees and attorneys' fees and expenses, and costs of this action;

  viii. Loss of enjoyment of life;

  ix. Past, present, and future pain and suffering;

  x. Permanent disability, impairment, and limitation;

  xi. Such other and further relief as the Court deems just and proper.

8. It is fair to say that the language *"including, but not limited to"* and *"and other injuries"* under the damage provision of the Complaints are broad enough to cover the damage theory of the Plaintiffs set forth herein, i.e., "Plaintiffs' underlying medical conditions being untreated while taking Neurontin, the Plaintiffs experienced mental and emotional distress upon learning that the FDA had not approved the use of Neurontin for their respective medical condition. Further the Plaintiffs incurred medical expenses for their purchases of Neurontin."

9. The Plaintiffs may have claimed an array of injuries as the Defendants have pointed out, however, the Plaintiffs may rely only upon damages for untreated underlying medical condition, mental and emotional distress, reimbursement of medical expenses and punitive damages. The Plaintiffs are not required, as the Defendants have suggested, that they have medical records establishing the array of claim injuries.

10. The Plaintiffs' claims are much simpler than the Defendants are suggesting. For example, a plaintiff that is prescribed Neurontin for depression is not saying that the ingestion of Neurontin caused suicidal thoughts, but rather that while taking Neurontin they were not taking a medication that was designed to prevent or inhibit suicidal thoughts. Accordingly there is not a medical record indicating that the plaintiff had suicidal thought due to taking Neurontin, as the Defendants would require the Plaintiffs to have.

11. In sum, these actions are brought to recover actual and compensatory damages, i.e. untreated underlying medical conditions while taking Neurontin, mental and emotional distress, prescription cost and related medicals, and punitive damages against Defendants as a result of Defendants' illegal marketing scheme designed to push and promote "off-label" uses of the prescription drug Neurontin.

## RELEVANT MEDICAL RECORDS UNDER THE THEORY OF LIABILITY AND DAMAGES

12. Based upon the liability theory of this case as described above, the relevant medical records would include pharmacy prescription records, prescribing physician records, and medical records relating to injuries, where applicable. The pharmacy prescription records establish that the Neurontin prescriptions were filled and the pills thereof presumably ingested by the plaintiffs. The prescribing physician records establish that the Neurontin was prescribed to the plaintiffs for an "off-label" use. As aforementioned, FDA approved the marketing and selling Neurontin only for the treatment of epilepsy in certain doses. Medical records establishing injuries from the plaintiffs' ingestion of Neurontin, to the extent available, are relevant, although not

necessary in most instances because the plaintiffs' "off-label" use of Neurontin caused them to not be prescribed medication that was FDA approved for the respective medical conditions and these conditions went effectively untreated.

### REVIEW OF MEDICAL RECORDS PRIOR TO ATTORNEY CERTIFICATION

13. Prior to the execution of the Attorney Certifications, the undersigned law firm reviewed pharmacy records, prescribing physicians records, and all injury records to the extent available. Proof of the undersigned law firm's review of the relevant records is evidenced in the spreadsheet and correspondence submitted to Defendants relating to the pharmacy records, prescribing physicians records, and all injury records to the extent available. The spreadsheet describes the specific "off-label" use for each plaintiff and attached the pharmacy records and prescribing records. The information regarding the "off-label" use was gathered only upon review of the prescribing physician records. The undersigned law firm reviewed and submitted a spreadsheet and/or letters with attached pharmacy records, prescribing physicians' records, and all injury records to the extent available to Defendants, as follows:

### PLAINTIFFS' ATTORNEY CERTIFICATIONS ARE SUFFICIENT UNDER THE THEORY OF LIABILITY AND DAMAGES IN THE CASE

14. The Defendants argue that as to 133 Plaintiffs which include medical records that nevertheless the cases should be dismissed because (1) No reference to alleged injuries; (2) No reference to indication for which prescribed; and (3) Neurontin is effective for the "off-label" use.

As explained above herein, the Plaintiffs' injuries include, "Plaintiffs' underlying medical conditions being untreated while taking Neurontin, the Plaintiffs experienced

mental and emotional distress upon learning that the FDA had not approved the use of Neurontin for their respective medical condition. Further the Plaintiffs incurred medical expenses for their purchases of Neurontin." Under the damage theory of these cases no reference to the array of injuries claimed by Plaintiffs is necessary when the Plaintiffs may choose to pursue only the damages aforesaid.

The records submitted by the Plaintiffs do establish that Neurontin was prescribed to them for an "off-label" use. The Defendants have either not read the records or have chosen to ignore the reference to the "off-label" use. For example, Defendants have indicated that no "off-label" use is provided, but the records show otherwise for the following Plaintiffs:

Villian Allen was prescribed Neurontin for major depressive disorder by. Namica Khanna-Arora, MD;

Teresser Bass was prescribed Neurontin for pain by Donald H. Butts, MD;

Carolyn Bowyer was prescribed Neurontin for pain by R. Deaver Collins, MD;

Jessie Brown was prescribed Neurontin for diabetic neuropathy by Charles W. Campbell, MD;

Thomas Brown was prescribed Neurontin after having a stroke by George Murphy, FNP;

Ruby Crapps was prescribed Neurontin for degenerative arthritis by John M. Beall;

Theodore Crystian was prescribed Neurontin for pain and major depressive disorder by V. A. Medical Center;

Marshall Dillion was prescribed Neurontin for neuropathy by Kent A. Kirshner, MD;

Samuel Ellis, was prescribed Neurontin for pain and jumping in the legs, tremor by C. B. Daniel;

Other Plaintiffs which have records showing "off-label" use is included on Exhibit 1.

Amazingly the Defendants argue that the "off-label" use of Neurontin was effective for treating the conditions of the Plaintiffs. This argument has already gotten them in trouble, but they continue to make the argument. Any perceived benefit of the "off-label" use of Neurontin by the Plaintiffs is the placebo effect at most.

15. The Defendants argue that some Plaintiffs cases should be dismissed because they have submitted only pharmacy records and presumably attorney certification can not be made on pharmacy records alone. The short response to this motion does not permit a plaintiff by plaintiff analysis to verify Defendants' assertion. It is however sufficient to state that in many instances the pharmacy record is sufficient under the theory of liability and damages and in this case. For example, Plaintiff Terry Banks is listed as a Plaintiff with only a pharmacy prescription, but on the face of the pharmacy prescription it indicated that the Neurontin was for pain which is an "off-label" use. Also Plaintiff Doris Johnson only has a pharmacy prescription, but the prescription on it's face indicates that it was prescribed for migraine prevention. Time does not permit the showcasing of other examples.

Likewise there are Plaintiffs whom Defendants claim have only pharmacy records when in fact medical records were reviewed and provided to Defendant. For example,

Plaintiff Gregory Haslett's medical records were also submitted on Gregory Haslett indicating peripheral neuropathy. Plaintiff Janice Primer's medical records were also reviewed and submitted to Defendant. These records indicate that Janice Primer was prescribed Neurontin for back and hand pain. Plaintiff Shirley Sashfais's medical records indicating Neurontin was given for burning in her legs, but Defendant apparently denies receipt of this record.

The Defendants argue further that the attorney certification must include that the Plaintiff actually suffered the injuries they allege and that the injuries were directly caused by their use of Neurontin. The Plaintiffs have previously explained herein their theory of liability and damages and the fact that the Complaint covers the damages aforementioned.

Finally, the Defendants argue that the Plaintiffs' Attorney Certification does not comply with Discovery Order No. 19.

16. On December 18, 2007 the undersigned law firm filed Attorney Certifications for all of the plaintiffs represented by said firm in the above referenced lawsuits. The respective Attorney Certifications for each of the three referenced cases are attached hereto as Exhibit "1" for *Jessie Allen, et al v. Pfizer, Inc.*; Exhibit "2" *Mary Cooper, et al v. Pfizer, Inc.*; and Exhibit "3" to *Leroy Anderson, et al v. Pfizer, Inc.* The Complaint in each of the respective case involves numerous plaintiffs bearing the same case number. In filing the Attorney Certification for each case the single document incorporated an attached list of the all of the plaintiffs affected by the Attorney Certification. The list of plaintiffs that are incorporated on the respective Attorney Certifications are attached as Exhibit "A"

to *Jessie Allen, et al v. Pfizer, Inc.*; Exhibit "A" *Mary Cooper, et al v. Pfizer, Inc.*; and Exhibit "A" to *Leroy Anderson, et al v. Pfizer, Inc.*

17. The Defendant's submission, docket 1155, incorrectly indicated that the undersigned law firm represents additional plaintiffs that Attorney Certifications were not filed. It looks like the Defendant incorrectly duplicated Boone Law Firm's plaintiffs on Defendant's identified-plaintiffs-list and on the not-identified-plaintiffs-list. The only difference in the list is that the plaintiffs' last name is indicated first on the not-identified-plaintiffs list. Alternatively, the Defendant did not appreciate that the Attorney Certification incorporated attached lists of plaintiffs as reflected in Exhibit "A" to *Jessie Allen, et al v. Pfizer, Inc.*; Exhibit "A" *Mary Cooper, et al v. Pfizer, Inc.*; and Exhibit "A" to *Leroy Anderson, et al v. Pfizer, Inc.* The undersigned law firm is not aware of any plaintiffs that do not have an Attorney Certification.

18. In further clarification of the Attorney Certifications, Plaintiffs in the respective cases have prepared individual Attorney Certifications for the plaintiffs in each of the case to be filed upon this Court permission of same.

19. Pretrial Order No. 23 directed that the undersigned law firm by April 9, 2008 indicate by a single document that the plaintiffs included on its original submission constitutes all of its plaintiffs or to submit Motion to Dismiss or Attorney Certification for the additional plaintiffs. The undersigned law firm did not become timely knowledgeable of PTO 23. Further it was clear to the Plaintiffs that this Court required an individual Attorney Certification for each plaintiff notwithstanding that plaintiffs are listed on the same complaint.

20. Further the undersigned law firm has been overwhelmed for the past 30 days in working other aspects of these cases, including submitting medical records relating to 57 plaintiffs in these cases, having previously submitted medical records on behalf of 200 plaintiffs. Also within the past 30 days, the undersigned law firm has also submitted interrogatory responses and responses to document requests on behalf of 239 plaintiffs in these cases.

21. None of the undersigned law firm's plaintiffs have been selected for trial and there is no prejudice to the Defendant.

22. On May 8, 2008, the Plaintiffs file a Motion for Leave to File a Single Page Document Indicating Plaintiffs and/or to file Individual Attorney Certifications

**DISMISSAL OF ACTION IS NOT WARRANTED**

23. The Plaintiffs have not intentionally failed to comply with this Court's discovery order. The Plaintiffs' counsel was not immediate aware of this Court's discovery order because Plaintiffs' firm is not registered with the ECF system in this case and therefore Plaintiff's firm were receiving this Court orders from the Plaintiff Steering Committee which has not been immediately and sometime untimely in light of pending obligations. Plaintiffs' firm is getting registered with the ECF system for direct submission and receipt of documents from the Court. The Plaintiffs' firm has worked almost exclusively on these Neurontin cases for the past two months due to requests that Defendants' counsel have made on Plaintiffs. Plaintiffs had to re-submitted 57 set of records to Defendants that Plaintiffs have a good faith basis to believe had been previously submitted.

24. The response time to this motion does not permit an adequate review of the records to respond plaintiff by plaintiff to the claims made by the Defendants. Plaintiffs request the opportunity to further expound on these issues at the hearing hereon. The Motion herein was filed on Thursday, May 8, 2008 with the response being due on Tuesday, May 13, 2008. The weekend is not a big deal, but is was also Mother's day.

25. It is also obvious that the Defendants have painted a broad brush because there may be a few deficient records.

26. In an effort to cure any deficiencies and to comply with this Court's Oder 23, the Plaintiff filed on May 8, 2008 (prior to Defendant's Motion to Dismiss also filed on May 8, 2008) a Motion for Leave to File a Single Page Document Indicating the Plaintiffs and/or to file Individual Attorney Certification for the Plaintiffs.

27. The conduct of Plaintiffs is not extreme. Dismissal of these actions is not warranted because such a punishment would be too harsh for the alleged misconduct when there are other broad universe of options available, if necessary, to the Court particularly under the mitigating circumstances of this case and moreover because the Defendants are flat wrong in most instances. *Young v. Gordon, 330 F. 3d 76, 81 (1st Cir. 2003).*

28. Not any of the cases for the Plaintiffs herein are set for trial. The Plaintiffs are willing to correct any deficiencies within a reasonable time allowed by the Court. Necessarily, the Defendants will have go through the records submitted by the Plaintiffs and determine if there are really deficiencies versus Defendants' overlooking the content of the records.

29. The Plaintiffs and their attorney alike have had difficulties timely obtaining some records due to pharmacies closing, records not being kept for only a certain period of time, and general non-responsive and some uncooperation by some medical facilities or pharmacies.

WHEREFORE PREMISES CONSIDERED, Plaintiffs request that Defendants' Motion be denied and that Plaintiffs be given a reasonable time to cure any deficiencies.

RESPECTFULLY SUBMITTED, this the 13th day of May, 2008.

/s/ Levi Boone, III