1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3

4     HARDEN MANUFACTURING              )
      CORPORATION,                      )
5                         Plaintiff,    )
                                        )
6                                       ) CA No. 04-10981-PBS
      vs.                               )
7                                       )
                                        )
8     PFIZER, INC., et al,              )
                          Defendants.   )
9

10

      BEFORE:  THE HONORABLE LEO T. SOROKIN, M.J.
11

12

                          STATUS CONFERENCE
13

14

15

            John Joseph Moakley United States Courthouse
16                       Courtroom No. 14
                         One Courthouse Way
17                       Boston, MA 02210
                      Tuesday, May 20, 2008
18                         2:00 P.M.

19

20

21                   Cheryl Dahlstrom, RMR
                    Official Court Reporter
22      John Joseph Moakley United States Courthouse
                  One Courthouse Way, Room 3209
23                     Boston, MA 02210
            Mechanical Steno - Transcript by Computer
24

25

1    APPEARANCES:

2         FINKELSTEIN & PARTNERS, LLP
          By:  Kenneth B. Fromson, Esq.
3         436 Robinson Avenue
          Newburgh, New York 12550
4         On behalf of the Plaintiff.

5         DAVIS, POLK & WARDELL
          By:  James P. Rouhandeh, Esq.
6         450 Lexington Street
          New York, New York 10017
7         - and -
          SHOOK, HARDY & BACON LLP
8         By:  Scott W. Sayler, Esq.
          2555 Grand Boulevard
9         Kansas City, Missouri 64108-2613
          - and
10        HARE & CHAFFIN
          By:  David B. Chaffin, Esq.
11        160 Federal Street
          Boston, Massachusetts 02110-1701
12        On behalf of the Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>P R O C E E D I N G S</u>

1

2      THE CLERK:  Will counsel please identify themselves,

3   slowly, for the record.

4      MR. FROMSON:  On behalf of the products liability

5   plaintiffs, my name is Kenneth Fromson of the law firm

6   Finkelstein & Partners.  Good afternoon, Judge.

7      THE COURT:  Good afternoon.

8      MR. ROUHANDEH:  Good afternoon, your Honor.  Jim

9   Rouhandeh, Davis, Polk & Wardell, on behalf of Pfizer and

02:00 10   Warner-Lambert.

11      MR. SAYLER:  Good afternoon, your Honor.  Scott

12   Sayler, representing the defendants.

13      THE COURT:  Good afternoon.

14      MR. CHAFFIN:  Good afternoon, your Honor.  David

15   Chaffin, Hare & Chaffin, for the defendants.

16      THE COURT:  Good afternoon.  So I think all that's on

17   today is the question of the scheduling of the Track I trials.

18   I think I was clear, but if I'm not, my intention is to address

19   next month the motions that the defendants filed regarding the

02:00 20   Boone and Schwartz plaintiffs.  And I gave a little more time,

21   I think, to one of them to respond to one of the motions filed.

22   And as a result of that, that puts it on schedule for June

23   rather than May.

24      MR. ROUHANDEH:  One clarification, your Honor.  On the

25   order, I believe, the order --- your order addressing that

1    issue, I believe it said that those motions would be taken up

2    next month, on June 20th.  I think the Court -- I think the

3    discovery hearing is the 17th.

4         THE COURT:  Then I meant the 17th, and I will issue a

5    clarifying order.

6         MR. ROUHANDEH:  Thank you, your Honor.

7         MR. FROMSON:  Your Honor, we had filed a motion with

8    respect to Doctor Gibbons in terms of the rebuttal expert

9    report.  We made that motion in a time that is consistent with

02:01 10   this Court's orders; but given the nature of the motion, it was

11   before Judge Saris, we believe.  A portion of that order

12   pertained to a discovery issue, discovery of Lyrica Pregabalin

13   information.  To the extent that the motion pertains to the

14   discovery or lack thereof of that information, we just want to

15   know to whom that motion should be made.

16        THE COURT:  To be honest with you, I didn't carefully

17   look at that motion because, given its nature, which was I do

18   the rebuttal expert and the rebuttal expert pertains to the

19   motion.  It's the summary judgment motion or the Daubert

02:02 20   motion?

21        MR. FROMSON:  Yes.

22        THE COURT:  Both of which are going to be resolved by

23   Judge Saris.  It just seemed to make more sense for her to

24   address that.  I didn't realize there was a discovery issue in

25   that motion.  Has she ruled on that motion?

1          MR. FROMSON:  Not yet.  Frankly, to the extent that

2    there is discovery regarding Lyrica Pregabalin, which is the

3    generic name, that we believe we're entitled to get, we would

4    want to seek leave before this Court to get that discovery if

5    we deem it necessary.  That's what we probably intend to do for

6    next month as well.

7          THE COURT:  All right.  Does that depend upon whether

8    or not --

9          MR. FROMSON:  It would not be dependant on her

02:02 10   decision.

11          THE COURT:  I see.  You want that --

12          MR. FROMSON:  Either way.

13          THE COURT:  -- whether she agrees with your motion on

14   the rebuttal expert or disagrees with that?

15          MR. FROMSON:  That's what we're deliberating over, and

16   that's our position currently.

17          THE COURT:  Well, then, I'm sure that the defendants

18   will disagree, or maybe, but --

19          MR. FROMSON:  It's not that the motion has been made

02:03 20   yet.

21          THE COURT:  I understand.  If it's made, I'll look at

22   it.

23          MR. ROUHANDEH:  Just for the record, your Honor, I

24   want to make clear that we are providing the reliance materials

25   for the expert.  To the extent those are Lyrica materials that

1    the expert relied on, they are being supplied to counsel for

2    the plaintiffs.

3            THE COURT:  This is your rebuttal expert and they're

4    moving to --

5            MR. ROUHANDEH:  Yes.

6            THE COURT:  What are you moving for?

7            MR. FROMSON:  We moved to strike those portions of

8    Doctor Gibbons' expert report which were not confined to the

9    FDA alert, the subject matter about which they were granted

02:03 10    leave.  Secondly, we included in our motion that those portions

11    of the opinion that do pertain to the FDA alert, but which were

12    based upon discovery that was never provided to us, that should

13    be precluded.

14            THE COURT:  I see.  And your position, Mr. Rouhandeh,

15    is you're giving everything he relied upon, whether it related

16    to the alert or didn't relate to the alert?

17            MR. ROUHANDEH:  That's correct, your Honor.

18            THE COURT:  All right.  So in terms of the schedule,

19    it appeared to me that there were two questions.  One is,

02:04 20    what's the schedule governing the discovery on these first

21    cases going to trial?  And that, it appeared to me, you both

22    agreed.  When I compared the dates and events that were set out

23    in your separate filings, they were the same dates for the same

24    events.

25            What seemed to be what the question was on was exactly

1    which cases that schedule applied to and what happens at the

2    end of that schedule, that really what I understand the

3    situation to be is, Mr. Rouhandeh, you're proposing simply that

4    the schedule apply to the case you selected, which is Bulger,

5    and the case they selected, which is Smith.  Do the schedule,

6    have Judge Saris rule on the summary judgment, send Smith off

7    to Tennessee to try and try Bulger here.  They have various

8    permeations of suggestions about what to do, whether Judge

9    Saris goes to Tennessee or not.

02:04 10          MR. ROUHANDEH:  That's correct, your Honor.

11          THE COURT:  Let me ask you this one question.  Putting

12    aside whether Judge Saris goes to Tennessee, which I'm not

13    going to address -- obviously, Judge Saris is going to decide

14    whether she'll go to Tennessee or not.  Should the -- one of

15    the questions that I was thinking about when I looked at it was

16    the rest -- the other Massachusetts cases, which are somewhat a

17    direction from the Court rather than all of you.  But why --

18    should they be on the same schedule in terms of the finishing

19    discovery and individual summary judgment that you all propose

02:05 20    for whatever cases go first?

21          MR. ROUHANDEH:  No, your Honor.  We believe they

22    should not and that they could not be on the same schedule that

23    we are proposing, the parties are jointly proposing.  That

24    would require all fact discovery to be done by July 1.  What

25    that would mean is it couldn't all be done.  It certainly can't

1    be done in any other case other than -- any Massachusetts case

2    other than Bulger.  There's simply not enough time.  We won't

3    even collect all the medical records in those other cases by

4    July 1.  It would require that case to be put back.

5         I think that's in part what's going on here because

6    what the -- if you look at the plaintiffs' three proposals,

7    three alternatives, none of them have Bulger being tried by

8    itself first or second.  And they are, either try the Smith

9    case down in Tennessee if that's their first choice.

02:06 10    THE COURT:  Isn't their first choice try Smith in

11    Tennessee and then try Bulger here?

12         MR. ROUHANDEH:  Their second choice is try Bulger here

13    with -- consolidated --

14         THE COURT:  No.  Their first choice is, if Smith is in

15    Tennessee by Judge Saris, aren't they then suggesting that

16    Bulger be tried here?

17         MR. ROUHANDEH:  I think that they're saying Bulger

18    would be tried here with other cases.

19         THE COURT:  I see.

02:06 20    MR. ROUHANDEH:  I think what's important here is a

21    little bit of background because the plaintiffs have repeatedly

22    argued that they should get to select the trial case.  And we

23    think this is yet another argument in a slightly different

24    form.

25         Going back to January, 2007, they said -- and this was

1    in Docket No. 599.  They said we get to select both trial

2    cases.  That was their proposal.  They said it again on March

3    19, 2007, which was Docket No. 680.  They should get to select

4    the two cases.

5            The Court rejected those arguments and came up with a

6    very carefully designed process that would say, if the summary

7    judgment on the Daubert and general causation is denied, there

8    are two cases -- two trial cases selected, one by each side.

9    And put them on the same track.  Those were -- have always been

02:07 10   on the same track and the same schedule.

11           And even that schedule the plaintiffs disrupted by

12   dismissing the two cases we had selected as part of the ten

13   Track I cases.  They dismissed one of them and sought to

14   withdraw from the other.  And after that they argued -- and

15   this was in Docket No. 861.  They argued that's okay.  That

16   case -- whatever case the defendants now pick should lag behind

17   the Smith case.

18           And so at least three times before they said, you

19   know, they want to have their case and have it go first, either

02:08 20   two cases or one case.  And, usually, you know, three times --

21   three strikes and you're out.  But they're trying again.

22   They're at it again.  Now they're saying don't try Bulger when

23   it's ready because that's what their proposal is.  Wait until

24   Smith is tried.  Even if Bulger is ready to be tried, don't try

25   it.  Wait until the Smith case gets tried first or, they say,

1    try Bulger with three other Massachusetts cases.

2         THE COURT:  Your objection is trying the other three

3    cases -- that the three other cases won't be ready when Bulger

4    is ready and, therefore, it will delay the matter?  Or are

5    there other objections in addition?

6         MR. ROUHANDEH:  There are other objections as well,

7    obviously.  If they're going to seek to consolidate those cases

8    for trial, that is a very significant motion.  They haven't

9    even made a motion.  They stuck it in their sort of submission

02:09 10   on scheduling.  There are a lot of very important issues, a lot

11   of cases which we sort of -- we responded to their proposal the

12   next day and cited a couple of the cases.  But there's a lot of

13   law on whether it's appropriate.

14        We don't think it's appropriate to consolidate the

15   cases for trial.  They're vastly different cases.  The evidence

16   is going to be quite different.  It's going to be a three-ring

17   circus because each plaintiff has got -- plus, they're

18   Massachusetts cases, so a lot of these witnesses are going to

19   show up live.  Doctors relating to each one of the cases;

02:09 20   separate factors to consider with respect to causes of suicide.

21   It really would encumber those cases and not be fair to the

22   defendants and would lead to confusion to the jury.  We really

23   see it at another attempt to say you don't get to try a case.

24   The case you selected, we don't want it tried alone because we

25   want it tried with the other Massachusetts cases.

1          THE COURT:  Is there a benefit in a consolidated trial

2     with multiple juries so that there's a separate jury for each

3     plaintiff but -- and sometimes all the -- all the jurors would

4     be there but sometimes they wouldn't, depending on the nature

5     of the evidence?

6          MR. ROUHANDEH:  Well.

7          THE COURT:  Not particularly sensible?

8          MR. ROUHANDEH:  I still think that it would -- there

9     would be quite a bit of juror confusion and, also, might make

02:10 10   this trial last a lot longer, and it wouldn't get tried even on

11    the schedule we're proposing.  If we were to even select one

12    other case, which is their third alternative proposal, they

13    say, we'll just try it with Shearer.  That's because Shearer

14    happens to be the other case where they're the plaintiffs.

15    They're not the plaintiffs' counsel in Dorsey and Huberman.

16         Even there we think it would complicate it.  It would

17    be unfair to the defendants.  That's not happening with the

18    Smith case.  They want to try that case free and clear.  We

19    don't think it would be fair because there's a lot of law built

02:11 20   up on this in terms of -- if there is any unfairness to the

21    defendants -- and we think there would be in terms of

22    confusion.  Also, just the jury seeing that there are multiple

23    plaintiffs, you know, tends to have juries think, well, there

24    must be a lot of people out there who have committed suicide.

25    There's a lot of law on this area, and we think if the Court is

1    at all considering that, it would be fair to have that fully

2    briefed and argued on a separate schedule.

3         And we also think that the -- that disrupts the whole

4    idea behind the scheduling, which is -- if the idea is -- if

5    our summary judgment and Daubert motions get denied and we're

6    going to go to trial, the idea -- and it was the Court's idea

7    to pick the two cases because we had argued random selection of

8    all the cases.  It was the Court's idea to pick the two cases

9    and have each party pick the case.  I don't know that it's in

02:11 10    any order.  I've always thought the thought behind that was

11    we're probably not going to try -- if we get to any trials,

12    we're probably not going to try all the cases here.  There's

13    going to be some cases tried.

14         THE COURT:  I can try a thousand --

15         MR. ROUHANDEH:  There's not too much of a precedent of

16    that occurring, and it's probably, frankly, not going to occur

17    that every single case is going to get tried.

18         But you certainly can't have a situation where one

19    party is picking all the cases because it's not going to ever

02:12 20    lead to a resolution.

21         THE COURT:  Let me ask you this:  Obviously, if you

22    win your summary judgment motions, all this is moot.  If you

23    win summary judgment motions, the case is over with.  If you

24    lose the summary judgment motions, all right, under your

25    proposal, we do these -- we -- December, thereabouts, the

1   summary judgment motions are filed as to the first two cases.

2   Those motions are resolved.  If those motions succeed, those

3   cases are done.  If those motions don't succeed, then they

4   proceed to trial, one in Tennessee, one here.  Okay.  Then

5   judgment is entered on those two cases.  Then what?

6           MR. ROUHANDEH:  Well, it depends on what the judgment

7   is.  I think there are three scenarios.  We split the two; the

8   plaintiffs win both; we win both.  There's a two-thirds chance

9   that, in effect, one side is going to win both those cases.  I

02:13 10  think that's going to have an effect in terms of willingness to

11  continue down the road.  If we split them --

12          THE COURT:  Two of the three "possibilities" are.

13          MR. ROUHANDEH:  Two of the three possibilities are,

14  not "chances," two of the three possibilities.  If they're

15  split, what that would say to the parties is individual

16  variations with respect to the plaintiffs are important with

17  respect to this issue.

18          And so that's why I say you shouldn't have a situation

19  where they're stacking the deck to only try their case

02:13 20  individually or saddle us with other cases.

21          THE COURT:  If after those two cases -- what you're

22  sort of intimating is, if you lose both of those cases, then

23  that's going to have a significant effect on the possibility --

24  shape the terms of a possible global settlement.  If you win

25  both of those cases, that may inspire the plaintiffs to cease

1   the cases or, if there is a global settlement, that it will be

2   on terms that you would find much more palatable.  If it's a

3   split, there might be a settlement and it will just shape the

4   terms.

5        But what my question is:  It may be that after two

6   cases you're all in the position to evaluate and reach some

7   sort of global settlement.  But it might take more than two

8   before people are -- have enough information about what is

9   going to happen in the individual cases in order to make a

02:14 10   decision.

11        And so that suggests to me we wouldn't want to wake up

12   the day after those judgments enter on those two trials and

13   say, okay, now let's start the discovery process on the rest of

14   the Track I cases.  Should we be thinking about a schedule,

15   even if it's not -- even if the schedule is such that these two

16   cases went first, as you propose, that other ones in Track I

17   are following along the similar schedule but somewhat further

18   behind?

19        MR. ROUHANDEH:  I think that's certainly a

02:15 20   possibility.  It's not something we're prepared to discuss

21   today and haven't discussed with plaintiffs.  I'm not sure what

22   their views with respect to that would be.  It's something,

23   obviously, we'd have to discuss with our clients and discuss

24   with plaintiffs to see if we had a proposal for what happens to

25   the rest of the Track I cases.

1          But what we don't think should happen is, take the

2    Massachusetts cases and put them on the track with the Bulger

3    case because we think it's going to delay resolution of the

4    Bulger case, and we think it's unfair to the defendants because

5    we don't get to select our case then for trial.  And any

6    thought of that would require a consolidation motion fully

7    briefed.

8          But I understand, your Honor.  Yes, maybe -- I'm not

9    saying that what happens in these first two cases will lead to

02:16 10    a settlement.  It may lead to we need to pick 20 more cases and

11    try them.  All sorts of different things could happen.  It

12    doesn't mean that there would be any resolution.  But I think

13    the idea of selecting sample cases --

14          THE COURT:  I can't quote that way back down the road,

15    saying you promised me that the case would settle after those

16    two were done?

17          MR. ROUHANDEH:  No.  You would have to ask him because

18    we think we would prevail on those two cases if we get to them.

19          I think that that's -- the idea is the parties and the

02:16 20    Court is going to learn something from the cases, and they

21    learn more if they're the cases that were selected by the

22    plaintiff and the case selected by the defendant.  Those have

23    proceeded on the same schedule all the way through.  We would

24    propose that they proceed on the same schedule, Bulger and

25    Smith.  It's an agreed-upon schedule.

1       THE COURT:  What's the realistic possibility of

2  knowing enough after trying two cases to reach a global

3  settlement?  I mean, I recognize you're not going to try a

4  thousand or however many products liability cases it is.  I

5  don't think anybody expects that really they're all going to

6  get tried.  Some number are going to get tried, and that's

7  going to lead to some determination about the likelihood of

8  success of various categories of cases.  And, presumably,

9  you're likely to work out some sort of resolution when you have

02:17 10  more information or reach that point.

11       So I guess what's the -- one of the things when I look

12  at this -- I'm not suggesting you should be preparing all

13  thousand cases and they should all be teed up to try one a

14  month or one every two weeks, but whether, at least as to the

15  Track I cases, of which we have about 14, I think -- whether

16  there should be some -- we ought to think about something for

17  all of them that perhaps the first two coming first, perhaps

18  not consolidation.

19       I'll hear from Mr. Fromson about his views.  But

02:17 20  should there be some consideration about which ones follow?  My

21  own judgment is, I'm wondering if two cases will be enough to

22  give all the parties and counsel enough information to figure

23  out how to resolve the rest of the cases.

24       MR. ROUHANDEH:  This is a little bit of a memory test,

25  testing the memory a little bit here.  I do think that the

1   parties on -- the first part I do recall.  The parties are the

2   ones that said let's select ten cases.

3           THE COURT:  They are.

4           MR. ROUHANDEH:  And we do not select cases in New

5   York.  I think that's telling, that the parties thought, select

6   the ten Track I cases.  I believe we were also in agreement

7   that if summary judgment were denied we would have two prepared

8   for trial.

9           At least so far, the parties are indicating that's

02:18 10   what we need to move this litigation along if we ever get to

11   any trials.  I think what your Honor is raising is, what's the

12   contingency plan with respect to the remaining Track I cases.

13   Again, that's just something that I think we would like the

14   opportunity to discuss with our client, discuss with

15   plaintiffs, to see if there's some schedule.  I think it would

16   lag whatever schedule we have now.

17           I do have a very significant concern, which is,

18   there's a lot of work to be done on the two trial cases.  My

19   guess is both parties are going to want to focus their efforts

02:19 20   on those cases as opposed to preparing the next set of cases.

21   I think that that's -- I'm not sure that we're going to be

22   eagerly --

23           THE COURT:  What are you going to do now that summary

24   judgment has been filed?

25           MR. ROUHANDEH:  We've got the Daubert hearing and,

1   hopefully, a summary judgment hearing.  Then there's a lot of

2   stuff going on in the rest of the cases.  We've got to fully

3   discover Bulger and Smith and then get into expert discovery.

4   It's a fairly brisk schedule.  What we would propose is --

5         THE COURT:  When is summary judgment due on the sales

6   and marketing side?  Around January?

7         MR. ROUHANDEH:  I believe it's mid-October.  I believe

8   our brief would be due October 12th, I believe.

9         So what we're saying is, let's do this the way it's

02:19 10   been planned.  Bulger and Smith tracked on the same schedule.

11   Table the issue of which of those cases gets tried first.  That

12   should depend on the various judges' schedules at the time.  If

13   Judge Saris is going to go to Tennessee, it's going to depend

14   on her schedule.  If it's going to get remanded to Tennessee

15   for trial -- whether that Smith case gets tried before Bulger

16   or Bulger before Smith is probably going to depend on the

17   Court's schedule.  I don't think that one judge should wait for

18   the other necessarily.  But there may be a desire to do that.

19   For all I know, the Tennessee judge will want to let -- and let

02:20 20   Judge Saris try the case.  That's an issue we think should be

21   tabled, which of those two cases gets tried first.

22         We also think we would like the opportunity to discuss

23   this issue with the plaintiffs about what happens to the

24   remaining Track I cases.  Just -- and the one thing that we all

25   are in agreement on, at least the parties are in agreement on,

1    is the actual schedule for Bulger and Smith.  We would hope

2    that the Court would adopt that and table the other issues.

3        THE COURT:  I'm not going to order you right now to

4    get into discovery on the rest of the cases and set the same

5    schedule.  I raised it because I was sort of thinking about it

6    when I was looking at your proposals, and I thought it was a

7    good opportunity to see where you were at.

8        It might be a useful thing for all of you to think

9    about and talk about so that maybe next month, especially if

02:21 10   you're all going to be here anyway, we could talk about that

11   further.  I'm not planning on issuing any orders about that,

12   but it just seems to me to be an appropriate issue to think

13   about in terms of what happens at the next stage more than --

14   we're not waiting for the summary judgment decision to decide

15   the schedule, what happens after.

16       Those two, if they lead to resolution of the case,

17   fine.  If they don't, we ought to be on track -- on some track.

18   I'm not sure how fast a track or how slow a track but some

19   track so that others on the Track I cases are coming forward.

02:22 20   So just sort of thinking about it, and I invite you both to

21   talk about it with each other because I think hearing from both

22   lawyers would be helpful on that.

23       MR. ROUHANDEH:  Okay, your Honor.  Thank you.

24       THE COURT:  All right.  Mr. Fromson.

25       MR. FROMSON:  Thank you, Judge.  One of the first

1    questions you asked this afternoon was with respect to the

2    schedule and to which case does the schedule apply in terms of

3    trial.  And so I take issue with any representation by defense

4    counsel that this Court has rejected outright plaintiffs'

5    requests that its trial Track I case go first.

6         I agree that plaintiffs have repeatedly tried to get

7    its case first.  We believe we are entitled to have Smith tried

8    first.  The procedural history of this court has been

9    consistent with a plaintiffs' burden of proof.  Plaintiffs file

02:22 10   their complaint.  Plaintiffs were first required to designate

11   their two cases.  Plaintiffs were then required to designate

12   their first case for trial.  Each time --

13        THE COURT:  Your first point is simply that Smith

14   should be tried before Bulger?

15        MR. FROMSON:  Right.  I understand the issue of

16   Tennessee is not before this Court but for Judge Saris.  And so

17   I just wanted to address that point.  What's interesting and

18   important to note that --

19        THE COURT:  That affects not so much the schedule that

02:23 20   you and the defendants propose --

21        MR. FROMSON:  That's correct.

22        THE COURT:  -- but what happens after the schedule, is

23   the setting of the trial dates.  Really what you're saying is

24   you want the Tennessee trial date because that's where Smith is

25   going to be tried, whoever presides over it, to be set first,

1    have a date, a trial date, that falls first, and then

2    subsequent to that a trial date for Bulger.

3          MR. FROMSON:  Right.  Keep in mind that when we

4    selected Smith, there were no Massachusetts cases from which we

5    even had an opportunity to select a case.  And I don't blame

6    defendants for their tactic, their strategy, but their strategy

7    is to get their case tried first, no different than our intent

8    to get our case tried first.  And so it's interesting that they

9    picked two other cases, Case A and Case B, to go forward with

02:24 10   as their designated cases but then came around to selecting

11   only one of four cases in Boston, which were not available to

12   the plaintiffs.  And then picked the Bulger case -- it's in

13   Boston -- because they want the fast track to trial.

14          I'm not under the impression that it is necessarily a

15   defense case or that it's better or worse than one of the two

16   designated cases they initially chose.  But, clearly, their

17   point is we'll pick a case in Boston because it will put us on

18   the faster track because it won't have to sit on the calendar

19   as another case that goes for remand may have to.

02:24 20          And I appreciate their strategy.  Frankly, whether it

21   was their defense selection or not, the fact remains that this

22   Court has before it four cases, a limited pool of cases, that

23   can easily be consolidated because under the traditional

24   notions of consolidation there are the same parties.

25          THE COURT:  Let me ask you this:  If you go first with

1    Smith, do you -- does it make a difference to you whether

2    Bulger is tried by itself second or tried with the other Mass.

3    cases second?

4         MR. FROMSON:  To be consistent with my argument, your

5    Honor, it makes sense that Bulger get tried with at least one

6    other -- we propose all three other -- here in Boston because

7    of the court's judicial economy.  Again, under traditional

8    notions of consolidation -- there are four cases here, each

9    with similar parties, the main defendant in the case.  I don't

02:25 10   believe any of them involve any generic defendants.  They're

11   all Pfizer cases.  They all involve Neurontin.  They all

12   involve the same generic discovery.

13        This issue -- if you look back in a chronological

14   fashion, this issue of similar cases has already been addressed

15   by the Court and even recognized by the defendants.  Let me

16   give you a practical example.  From the very beginning, defense

17   counsel has stood up in this litigation and has said all of the

18   complaints are virtually identical.  I believe Mr. Rouhandeh's

19   term has been "cookie cutter" for the last three or four years.

02:26 20   They're all cookie-cutter complaints.  That, by its very

21   nature, is an admission that all these cases are substantially

22   similar.

23        Second, this Court even welcomed the opportunity of

24   the defendants to do discovery in ten Track I cases because

25   there were substantial similarities on the facts and

1    circumstances.  Indeed, defense counsel included the issue of

2    at least ten other cases in their Daubert motion because they

3    embrace ten other cases as having substantial similarities of

4    the facts and circumstances.  So when they could use it to

5    their believed advantage, they'll embrace all the cases in

6    saying they're substantial and similar.  There's no confusion

7    there in their mind.

8         And yet there's another -- the motions for fraud.

9    Because all of the complaints were so substantially similar in

02:26 10   their mind, the Court accepted the notion of receiving only one

11   motion to dismiss all of the fraud claims for all of the cases.

12   And so in the past this Court has, in effect, consolidated

13   certain issues.

14        THE COURT:  Let me ask you this, though, on the

15   consolidation.  How does the -- so you're saying that the Court

16   ought to consolidate the Massachusetts cases for trial, at

17   least two of them but really four of them, all four of them,

18   simply because, one, it will be more efficient for Judge Saris

19   to try it once; and, two, it's better for the parties, or at

02:27 20   least the plaintiff, in that the experts are going to be the

21   same in all four cases and it's expensive and their testimony

22   is going to be virtually identical, I take it?

23        MR. FROMSON:  Absolutely, on generic issues of failure

24   to warn and general causation.  They're not going to change

25   week to week.

1          THE COURT:  So why pay them four times?

2          MR. FROMSON:  That's a good point, Judge.

3          THE COURT:  So that's sort of where you're coming

4     from?

5          MR. FROMSON:  Yes.  I also have another reason, your

6     Honor.  Equally important is the fact that if only Bulger is

7     here before this Court come February of 2009 and then it gets

8     dismissed for some reason in March of 2009, either by way of

9     dispositive motion or otherwise, what's the backup plan?

02:28 10    There's nothing, not one case.  What will the Court do?  It's

11    going to say, boy, I wish I would have had another case here.

12    I only had one, Bulger.

13         Now the defendants don't get their defense selection.

14    There's nothing here for the Court to try.  Generic discovery

15    is generally basically over.  Smith will be on the fast track

16    to trial, hopefully.  And everything is going to be moved for

17    remand by plaintiffs.  So without another case, the Court is

18    left with nothing.

19         THE COURT:  This gets into the question of what

02:28 20    happens to the rest of the cases, whether they all get remanded

21    at the conclusion of the general summary judgment and Daubert

22    hearing or whether or not --

23         MR. FROMSON:  We believe, as we have said in the past,

24    if my recollection serves me correctly, once generic discovery

25    is done, this MDL has fulfilled its obligations and should

 1   remand the cases but for those cases that are within the

 2   Court's own jurisdiction for trial.

 3        THE COURT:  Your view is what ought to happen, once

 4   Judge Saris rules on the <u>Daubert</u> and summary judgment motions,

 5   assuming that you prevail on those motions, at that point she

 6   should send all of the -- every one of the products liability

 7   cases back to their home court?  That would leave four cases

 8   here for the Massachusetts cases, and she should proceed to

 9   summary judgment -- specific summary judgment and trial on

02:29 10   those?

11        MR. FROMSON:  If generic discovery is done at that

12   point, the answer would be yes.  And as of now, generic

13   discovery is done absent any motion seeking leave to extend any

14   type of discovery, which may never be done.  But with your

15   explanation, your Honor, yes, assuming discovery is complete,

16   <u>Daubert</u> is decided --

17        THE COURT:  You would say then that the Track I cases,

18   quite possibly your first case designated for trial, would be

19   remanded to the home court at the same time all of the cases

02:29 20   are remanded to the home court depending upon how Judge Saris

21   decides the motion?

22        MR. FROMSON:  That's entirely possible unless the

23   judge accepts the invitation to go to Tennessee pursuant to the

24   United States Code.

25        THE COURT:  What you're really saying is Smith should

1    be remanded -- it can't be sent off to trial until she rules on

2    summary judgment?

3          MR. FROMSON:  I do believe, your Honor, that Judge

4    Saris' position has been not -- I'm not quoting her, obviously.

5    My understanding of the situation is that the Court is not

6    inclined to remand all the cases.  The Court's inclined to hold

7    on to them and try these cases, to put the parties' stronger

8    cases first in the hopes of a global settlement.  So I

9    understand the writing on the wall.

02:30 10          THE COURT:  Okay.

11          MR. FROMSON:  If I may, your Honor?

12          THE COURT:  Go ahead.

13          MR. FROMSON:  With respect to the discovery schedule,

14    my understanding of the federal rules is that the party gets to

15    do ten depositions absent leave of the Court.  There's been no

16    order here granting additional depositions, and there's been no

17    motion formally seeking leave, just as defense counsel

18    indicated we did not make a formal motion seeking

19    consolidation.

02:30 20          And so I don't see this taking much longer, if any

21    time more, than the discovery schedule that's put forth.  And

22    so four cases can be done within this purported discovery

23    schedule.  That's our position.  To the extent the Court wants

24    to entertain any other extensions if other --

25          THE COURT:  So you're saying set the schedule you all

1  agreed upon.  You're saying the schedule is good enough to do

2  -- there's enough time to do Smith and all four Massachusetts

3  cases.  What you really want to see, as you put it, the writing

4  on the wall, is the Smith case out of the box first and the

5  Massachusetts cases lined up for trial preferably consolidated.

6          MR. FROMSON:  That's true, Judge.  I'm sorry.

7          THE COURT:  Go ahead.

8          MR. FROMSON:  There has been substantial work in all

9  of these cases.  Smith, in our position, is just about

02:31 10  trial-ready.  There have been depositions of the plaintiff, the

11  doctor, the sales reps, family members.  Third parties have

12  been deposed.  In Bulger, defendants want to make the

13  representation that Bulger is way ahead of the other three

14  Boston cases.  But what they don't tell you is that's only

15  because they've just recently served the deposition notices to

16  move that case forward quicker.  We're obliged by those

17  deposition notices and working together and coordinating to

18  make those go forward.  However, the other three cases have had

19  discovery.  They've had to have the core discovery that was

02:32 20  done in order --

21          THE COURT:  Have the doctor and the plaintiff and the

22  sales rep been done in all of those cases?

23          MR. FROMSON:  My understanding is yes, with the

24  exception possibly of one physician who had a back condition

25  and, therefore, it was either adjourned or -- I don't know.

1    There has been discovery in those cases.  That's where we stand

2    on it, Judge.

3            THE COURT:  Any thought on the other Track I cases?

4            MR. FROMSON:  No.  I don't have a thought off the top

5    of my head about what should be done with those.  I think those

6    would be consistent with our initial position; that is, they

7    should be remanded when everything else is remanded.

8            THE COURT:  If that position weren't followed?

9            MR. FROMSON:  Then this Court would be holding on to

02:33 10    the case -- all cases.  It will have tried either their cases

11    in Boston or will have tried the Smith case.  There will be at

12    least two trial results.  And then the Court would hope for

13    coordinating a global settlement or remanding everything.

14            THE COURT:  Even ask Judge Saris to go try any of the

15    other ones in addition to Smith?

16            MR. FROMSON:  I would welcome that opportunity if

17    she's willing to do that.  I certainly think that it's

18    obviously for her to decide.

19            THE COURT:  Right.

02:33 20            MR. FROMSON:  I'd welcome the opportunity for the

21    judge, who will at that point have the most experience with the

22    substantive issues, okay, in terms of having addressed the

23    Daubert and general causation issues specifically, to come and

24    try those cases.  I just don't know if Judge Saris wants to

25    start traveling across the country with the rest of counsel.

1          THE COURT:  Okay.  One might be different than 1,000.

2          MR. FROMSON:  Exactly, Judge.

3          THE COURT:  Anything else, Mr. Rouhandeh?

4          MR. ROUHANDEH:  Yes.  Mr. Fromson said that we picked

5     Bulger as a tactical move here.  Obviously, we didn't pick

6     Bulger and would never have had the opportunity to pick the

7     Bulger case if they had not dismissed our first choice, which

8     was the Strickland case.

9          They also say the Bulger case was not even on file

02:34 10   until much later in the game, until 2007.  I believe from

11   discovery they had, the plaintiffs' counsel had documents and

12   records going back to 2005.  They simply waited until what they

13   believed was the last day under the Statute of Limitations to

14   file the case.  But they certainly knew about Bulger and were

15   getting medical records going back close to three years.

16          In terms of the cookie-cutter complaint point, I

17   really feel that's neither here nor there.  The fact that

18   they've pled the cases all the same doesn't mean that the facts

19   aren't different.  That's just they didn't plead the individual

02:34 20   facts of each case.  Obviously, they're different witnesses,

21   different types of evidence that are going to be involved

22   there.

23          And the sort of companion piece to that is, there is a

24   reason to keep these cases together up to the time that Smith

25   is to get tried and sent back, remanded, to Tennessee and until

1    Bulger is going to get tried in this court; and that is, there

2    is still a lot of overlap in terms of the issues, in terms of

3    summary judgment.  In terms of some of the experts, they may

4    overlap as well on specific issues.  I don't think in every

5    case people are going to have a different expert.  A lot of the

6    same experts are going to be used over and over again.  And,

7    certainly, a lot of the issues on summary judgment are going to

8    overlap.

9         So we would think it would be consistent with the

02:35  10    goals of settling up the MDL in the first place to say, when

11    the cases go back, that's when they're absolutely ready for

12    trial, and they're not ready for trial until expert discovery

13    is done and until summary judgment on the remaining issues is

14    resolved.

15         In terms of what happens if the Bulger case goes away,

16    obviously, we've always been concerned that that's what the

17    plaintiffs' goal is.  The plaintiffs' goal is to, one way or

18    the other, have their case tried first.  And if that means

19    dismissing or getting rid of the Bulger case, they may well do

02:36  20    that.

21         I'm a little concerned here that what they're doing is

22    setting up an argument that we're really not that prejudiced

23    because there are some other cases going along with Bulger and

24    being tried at the same time or consolidated with.

25         Certainly, Smith may be dismissed on summary judgment.

1   If Smith is dismissed on summary judgment, then they don't have

2   their case.  I think that issue of what happens to Smith and

3   Bulger, do they actually get to trial, is an issue that brings

4   up the issue your Honor addressed, which is, what happens in

5   the rest of the Track I cases.  That's how we should deal with

6   that issue.  I don't think it's an argument for saying Bulger,

7   our selection --

8         THE COURT:  Careful.  That might suggest that we --

9   you should do all the discovery in all 14 cases right away.

02:37 10        MR. ROUHANDEH:  We have done some discovery in each of

11   them.  I was going to add one point to what your Honor said

12   about the rest of the cases.  It's not that long of a process

13   to complete the discovery.  If we try those two cases, then you

14   could take two more of the Track I cases and get them to trial

15   in probably a six- to nine-month period.

16         THE COURT:  What really needs to be done in each of

17   these cases -- I assume that the standard discovery was done

18   except for the doctor who was injured or back injury or

19   something, that the prescribing physicians, the sales

02:37 20   representative and the plaintiff have been deposed.  So what

21   remains are the expert depositions, right?  But those are --

22   are they really that different than the general expert

23   depositions?

24         MR. ROUHANDEH:  Could be.  It could be -- they are

25   quite different because -- in terms of economic damages, in

1    terms of specific causation.  You have to look at the body of

2    medical records.  So they're different.

3         THE COURT:  To the extent there are sort of two parts

4    to this case, each of these products liability.  One part is

5    it's a big case in terms of all the issues raised that are now

6    pending before Judge Saris; and if she denies summary judgment,

7    to some degree the issues will be revisited at the trial in

8    terms of factual determinations for the jury, right?

9         MR. ROUHANDEH:  I believe all of those issues will be

02:38 10   revisited.

11        THE COURT:  But those -- as a general matter, those

12   don't differ from case to case.  Maybe not all of them apply in

13   every case.  But those aren't going to differ that much from

14   case to case.

15        The second part of the case is a regular old personal

16   injury case.  There's going to be an expert who says this is

17   what -- damages, evaluating the lost wages or whatever the

18   other standard kind of damages are in the case.  But that

19   doesn't, in and of itself, seem that complex, the second part

02:39 20   of the case.

21        MR. ROUHANDEH:  It could actually be quite complex in

22   terms of -- if we're talking about a world in which summary

23   judgment is denied on general causation, then we're talking

24   about specific causation.  It could be quite involved in terms

25   of looking at every event in the person's life, having experts

1    with respect to those risks and looking at those issues.

2        THE COURT:  And did they attempt suicide because of

3    taking Neurontin, either a side effect of Neurontin or the fact

4    that they weren't on another antidepressant?

5        MR. ROUHANDEH:  Or they were a drug addict or some

6    other risk factor that they possessed.

7        THE COURT:  So it might occasion you to get a variety

8    of different experts who might opine that the drug addiction or

9    whatever was the substantial cause of the suicide attempt and

02:39 10   not whatever related to Neurontin?

11        MR. ROUHANDEH:  Yes.  The other thing to be done,

12   which is a very significant issue, is to get the medical

13   records fully discovered in the remaining cases.  That's a huge

14   exercise, even in the remaining Track I cases, to get those

15   done.  And to suggest that Bulger is not really very far ahead

16   of those other cases is really --

17        THE COURT:  Why is that so hard?

18        MR. ROUHANDEH:  Because they're not -- frankly, it's

19   because they're not necessarily in the possession of the

02:40 20   plaintiffs, although we think they should have been before they

21   filed their cases, and they're not in the possession of the

22   defendants.  They're in the possession of multiple different

23   people out there.  Frequently, they have to be subpoenaed.  So

24   you might go to one doctor.  You might say, okay, let me have

25   your medical records.  Those medical records reveal that the

1    person was treated by another doctor and had a hospital stay

2    over here and had a psychiatric evaluation done over there.

3    Suddenly you have four more different places to go to to get

4    all of those medical records.  You end up 30, 40 different

5    sources of these medical records and it's a quite involved

6    process.

7         We've been doing that with Bulger.  We designated on

8    April 11th.  We knew we were going to designate Bulger before

9    April 10th, before April 11th.  We've been moving full speed

02:41 10   ahead before April 11th and since then, which is close to a

11   month and a half, five weeks.  We're moving ahead in full speed

12   in it, and it is far, far ahead of the remaining cases and

13   shouldn't wait for the remaining cases.

14        THE COURT:  But isn't that effort to run down the

15   medical records something that's been going on for -- as to the

16   Track I cases, for some time?

17        MR. ROUHANDEH:  Some of it has, not in the way that

18   you would for a case that you know is going to trial.  So

19   there's been some effort at least to get the medical records

02:41 20   from the prescriber.  Remember, the depositions to be taken

21   were the plaintiff, the prescriber and the sales rep.  So we

22   don't necessarily have to collect all the medical records to

23   take the deposition of the prescriber.  Many of them the

24   prescriber would never have seen -- many of them postdate the

25   initial prescriber and that person has been seeing a doctor --

1  has medical records created since the date the initial

2  prescription was made.

3  So in those cases we haven't collected all the massive

4  medical records, and it's a big undertaking and it would take

5  quite a while.  I think that goes to what happens in the rest

6  of the cases and should there be some schedule in place to

7  figure out what happens to the remaining Track I cases.  I

8  don't think that it's fair to say that we can just layer on

9  some other cases and put them on the same schedule with Bulger

02:42 10  and keep it on track.  In fact --

11  THE COURT:  What depositions need to be taken in these

12  cases?

13  MR. ROUHANDEH:  Well, frequently, you have to take the

14  deposition -- you find something in the medical records.  You

15  want to take the deposition of the person, you know, most

16  knowledge about those medical records.  There are a lot more

17  depositions.  There are a lot of family depositions, a lot of

18  medical depositions, you know, the coroners, all sorts of

19  different depositions to be taken.

02:43 20  I find it ironic that Mr. Fromson argued for 30, 40 --

21  wanted more and more depositions of the defendants.  He wasn't

22  worried about the ten-deposition limit then.  Now he's worried

23  about a ten-deposition limit.  In fairness, most of these cases

24  are going to involve many more than ten depositions in each

25  case.

1          That's why we say Huberman, Dorsey, Shearer, they

2     can't get layered on to Bulger without delaying Bulger, but we

3     think that's what the plaintiffs want.  We think they want to

4     delay Bulger so they can try Shearer -- I mean try Smith.  We

5     should keep them on the same track.

6          THE COURT:  Are you thinking of more depositions in

7     one of these individual cases than the plaintiffs -- or an

8     equivalent number that the plaintiffs took in the overall case?

9          MR. ROUHANDEH:  Are we taking more?

02:43 10          THE COURT:  Are you thinking that there could be 30 or

11     40 depositions in one of these products liability cases?

12          MR. ROUHANDEH:  I doubt we'll take 30.  But in Smith

13     there have been 20, even -- at least 20.

14          THE COURT:  Twenty?  In Smith?

15          MR. FROMSON:  In Smith?

16          MR. ROUHANDEH:  I believe, yeah.  Probably going to be

17     that many in Bulger, if not more.  Maybe I'm hearing he's going

18     to resist that.  Hopefully, we will be able to talk to

19     plaintiffs' counsel and convince him otherwise.  And they're

02:44 20     also not two-day -- 14 hours over two days.  These are --

21     sometimes they're two-hour depositions.

22          THE COURT:  Right.  But, yeah.

23          MR. ROUHANDEH:  The point is that our position is,

24     let's keep this on track the way it's always been planned, to

25     have the two cases on the same track according to the schedule.

 1    And in terms of consolidation, if they still want to pursue

 2    that, that should be done by motion.  In terms of what happens

 3    to the remaining Track I cases, the parties should discuss

 4    that.

 5        But I do think Smith should not be, under any

 6    circumstances, remanded at this point.  We think Judge Saris

 7    and your Honor should decide all the issues that are going to

 8    come up in terms of Smith and Bulger before we ever get to a

 9    trial date, including, obviously, dispositive motions,

02:45 10    including motions in limine, which may affect all of the cases.

11    That's what the MDL is for.  To just take all the cases at this

12    stage, if summary judgment is denied on general causation, just

13    send all the cases out to multiple, multiple federal courts out

14    there, we don't think it's consistent with what the joint panel

15    had in mind of the concept and the MDL.  Then you're going to

16    burden the dockets of as many as 50 federal judges out there at

17    a stage when all that has been decided is the general causation

18    motion.  We think when they're remanded it ought to be for

19    trial.  So that's our position and we would --

02:45 20        THE COURT:  You're saying go right up to the Friday

21    afternoon at 5:00, trial commencing on Monday?  In other words,

22    do the motions in limine and then send it off?

23        MR. ROUHANDEH:  We would say after the next round of

24    dispositive motions --

25        THE COURT:  After summary judgment but before motions

1    in limine?

2          MR. ROUHANDEH:  Well, I don't know.  We'll have to

3    talk about that because there could be motions in limine that

4    we think -- and the parties may agree on this -- motions in

5    limine that might be in common.  There might not be.  That's a

6    good question.

7          But, certainly, the way the schedule is proposed, it

8    would be dispositive motions and then the cases would get

9    remanded.  And those dispositive motions certainly on summary

02:46 10   judgment are ones that we think -- any federal court out there

11   who hasn't had the experience this court has had would benefit

12   from that ruling on summary judgment in the Smith and Bulger

13   cases and that these cases should go up through whatever the

14   schedule is.  I believe we say March of -- actually, in looking

15   at the schedule that the parties proposed, there was some

16   typographical errors in our initial one.  It's better to look

17   at Document 1273.

18          THE COURT:  I have 1264, the plaintiffs'.  It looked

19   like it was the same dates.

02:46 20         MR. ROUHANDEH:  Yes, yes.  The Court could use that

21   one or ours is 1273, which lists the dates.  We would say,

22   after sur-replies to dispositive motions, there would be a

23   hearing, and then at that point if the case -- if Smith is

24   still standing, then it would get remanded.

25          THE COURT:  Okay.

1          MR. ROUHANDEH:  And the Court would set the schedule

2     for trial of Bulger.  Under plaintiffs' proposal, what they're

3     saying is, when you get to that point, you would have already

4     decided now, you know, six months, eight months earlier, that

5     Smith goes first.  So Judge Saris, if she decides not to go to

6     Tennessee, should just sit and wait until the judge in

7     Tennessee has time on her docket, which we all know a case is

8     going to get remanded back to that judge.  It may get tried

9     right away.

02:47 10          THE COURT:  I don't think you have to worry about

11     Judge Saris sitting for eight months waiting.

12          MR. ROUHANDEH:  That's why I'm saying you can't really

13     say try Smith first now because it basically says don't try the

14     case in Massachusetts when it's ready to be tried, the Bulger

15     case.

16          MR. FROMSON:  Briefly, your Honor?

17          MR. ROUHANDEH:  Thank you, your Honor.

18          MR. FROMSON:  The issue that was not addressed, I

19     believe, by defense counsel is what should be done with the

02:48 20     four cases here other than to say, if Bulger is dismissed,

21     there will be only a six- to nine-month lapse until the next

22     case gets tried.  That's not the answer.  Focusing on what

23     would happen to Smith in Tennessee is not really the issue

24     either.

25          It's what should Judge Saris do with the four cases

1   over which she has jurisdiction?  I don't believe Judge Saris,

2   who wants to try cases, essentially, back to back, wants to

3   wait six or nine months for us to ramp up another case if

4   something happens with respect to Bulger.

5        So with that said, that's the issue.  And this Court

6   wants to try cases in Massachusetts, and we are willing to do

7   so.  And you can't just have Bulger sitting out there by itself

8   under any circumstances.

9        THE COURT:  Let me ask you both one quick question.

02:48 10  Suppose that the Massachusetts cases -- suppose the Court

11  decided the Massachusetts cases should proceed through

12  discovery to be ready for trial along with Smith.  You say, Mr.

13  Fromson, that the schedule you propose is sufficient and they

14  all could be done.  Do the individual summary judgments on the

15  schedule that you propose and then they're ready.  Either they

16  get consolidated or they're done back to back or whatever but

17  they're ready.  Am I right?

18       MR. FROMSON:  That's my first argument, your Honor.  I

19  understand that if the Court adds all four cases in Boston to

02:49 20  that schedule that the Court may be inclined to offer some

21  extension of that schedule.

22       THE COURT:  But you would be asking for that schedule?

23       MR. FROMSON:  I would not be asking for that, Judge.

24  But I would understand the Court deliberating over adding four

25  cases to that schedule.

1          THE COURT:  If the Court were adding those cases,

2      would you be asking for the same schedule you're asking for

3      now?

4          MR. FROMSON:  I would, Judge, yes.

5          THE COURT:  You would, okay.

6          MR. FROMSON:  Yes, Judge.  That's exactly what I would

7      do.

8          THE COURT:  Mr. Rouhandeh, I understand what you said,

9      that if the Court were adding those cases to the schedule, you

02:50 10   would ask for a different schedule.  My sense from what you've

11     said is you would either ask for a stretched-out schedule to

12     allow more time to accomplish them all or somewhat staggered

13     schedule that would allow the Smith and Bulger to be ready on

14     this schedule and the other three Massachusetts cases, either

15     one by one or all together, to follow some period of time

16     thereafter.

17         MR. ROUHANDEH:  Yeah.  I think the other Massachusetts

18     cases should be on a separate schedule that we should discuss

19     with the plaintiffs, see if we can come to an agreement and

02:50 20   propose that.  It may not be limited to those cases.  It may be

21     the other Track I cases as well.  I think the issue of what

22     happens with those other cases, those other Massachusetts

23     cases, is really a question that wasn't addressed.

24         THE COURT:  How much more time would you want for them

25     if that's what the Court decided?

1    MR. ROUHANDEH:  I would have to look -- obviously, the

2    schedule is how much more time to do the fact discovery.  After

3    that --

4        THE COURT:  See --

5        MR. ROUHANDEH:  It kind of falls from that.  I would

6    have to go back and look.  I think we've always scheduled three

7    or four months to take a case that's -- where we've only

8    scratched the surface in a Track I case and taken three

9    depositions.  It could take three months to get the medical

02:51 10   records.  Frequently, it does take 90 days to get some of these

11   medical records and to get them completed.  You might not find

12   until the 60th day that you need some records.

13       THE COURT:  Is there anything the Court can do with

14   respect to your efforts to get medical records to speed the

15   process?  It often strikes me that people respond more quickly

16   to an order from a federal judge that says produce something by

17   a date certain than they do a subpoena, which albeit, a

18   subpoena is a command from the court itself, but somehow

19   doesn't carry the same force sometimes as a specific order of

02:52 20   the court.

21       MR. ROUHANDEH:  We certainly would come to the Court

22   if we had those types of problems.  I would just reiterate that

23   it's not always that issue.  It's not always the medical

24   provider who has the issue that they're dragging their feet.

25   It may well be that we don't know until 60 days into it and

1    somebody else --

2        THE COURT:  I understand a part of it is an

3    archeological dig.  You get a medical record and that indicates

4    that in that medical record that there was another medical

5    provider of which you were not aware.  Then you go after that

6    medical record.  You can't go after that medical record until

7    you know of the existence of the provider or the hospital or

8    the like that has the record.  So there's partly a step-by-step

9    process.  But I don't -- is it mostly that or is it partly also

02:52 10    that it's not top priority for the providers?

11        MR. ROUHANDEH:  I think it's both frequently.  Some

12    are very good about it.  You send it to them.  You get the

13    medical record right away.  The parties have agreed and use a

14    vendor to collect those medical records.  You know, it's just

15    that the reality is, in this case and every case, it takes a

16    long time to get a complete set of the medical records.

17        Again, we would just urge that the cases that we've

18    been working on should stay on this schedule and the issue of

19    what happens to the rest of the Massachusetts cases is the same

02:53 20    issue as to what happens to the rest of the Track I cases

21    which, again, we would say the parties should meet or come back

22    to the Court with a proposal.  If the Court is not willing to

23    have those sit and have nothing happen with them until after

24    Smith and Bulger are tried, we understand that.  We would try

25    to come up with a joint schedule.

1          But what we don't want is to use -- for those cases to

2     be used as an excuse to put Bulger behind Smith and to not have

3     -- or to have Bulger tried with those other cases.  That, we

4     don't think, is fair or consistent with the process.

5          THE COURT:  I think, likely, Judge Saris will decide

6     whether or not for trial purposes cases are consolidated

7     because she will be the one trying the cases.  And I would

8     think that she'll want to make -- to be the one making that

9     decision.

02:54 10          My inclination would be not to wait until the

11     conclusion of the filing of all of the sur-replies on the

12     individual summary judgment on Smith and Bulger to turn to what

13     happens in the other Massachusetts cases and to only then set a

14     schedule and start the discovery process.  Whether that means

15     setting a schedule that is exactly the schedule you proposed

16     I'm not so sure because I understand that it was originally --

17     it was agreed to at least in part with respect to two cases.

18     And while Mr. Fromson is prepared to have it apply and do what

19     he needs to do and have it apply to all the Massachusetts cases

02:55 20     and his Smith case, I can understand why a further period of

21     time might be necessary.  I'm not sure whether it makes sense

22     to push it out or leave it the way it is and have further dates

23     following it for the other cases, if you know what I mean.

24          MR. ROUHANDEH:  I do.  And I would just reemphasize,

25     your Honor, that we have two concerns here.  One is, we don't

1   want to have a schedule that we know that we can't live with

2   for other Track I cases.  But the other -- and I can't really

3   emphasize enough -- is we think the effect, whether it's

4   intended or not, to take the other Massachusetts cases, put

5   them on the schedule with Bulger and the possibility that they

6   get tried in connection with Bulger, is a fundamental change

7   and we think an unfair change because it basically says we

8   don't get to try our selection, which it wasn't even our first

9   case because they dismissed that one, to get to try it free and

02:56 10  clear.  We don't think there will ever be an end to this case

11  or a resolution to this case if they get to pick the cases and

12  they get to pick how they're tried and what cases they're tried

13  with.  We want a case.  If we ever get to that point --

14       THE COURT:  That's two questions, really.  One, you

15  don't want your case delayed.  Second, you don't want

16  consolidation.  You want to try that one standing alone, not in

17  conjunction with the others.  That doesn't really go to the

18  question of whether or not we shouldn't be ramping up those

19  cases to follow Smith and Bulger in the event that -- however

02:56 20  Smith and Bulger resolve, that doesn't lead to a resolution of

21  everything.

22       MR. ROUHANDEH:  Right.  Those cases and potentially

23  other Track I cases.  I understand the concern with the

24  Massachusetts cases.  There are other cases that were randomly

25  selected.  I think it's all of the piece.  What happens to the

1    remaining cases?  The other, you know, Shearer, Huberman and

2    Dorsey, they are the other Massachusetts cases.  What happens

3    to the remaining Track I cases?  We hear, your Honor, that it's

4    probably not going to be satisfactory to say nothing happens in

5    those at all until Smith and Bulger are tried and there's a

6    resolution there.  But I think to take those and bring them all

7    the way up full circle and say do all this discovery --

8        THE COURT:  No.  I understand what you're suggesting,

9    what you don't want.  Okay.

02:57 10        MR. FROMSON:  Judge, Mrs. Smith, I believe, is in her

11    80s.  To the extent that there's age preference that needs to

12    be considered, we do not wish that the Smith case gets put off

13    if the Court does put off the discovery schedule.  As they've

14    indicated, they're representing that at least 20 depositions

15    have been done in Smith.  I'm not particularly aware of that

16    fact.  But that case is ready.  That client deserves a day in

17    court.

18        THE COURT:  I'll tell you my own thought.  I have to

19    think about it some more.  I want to set it up so that Smith

02:57 20    and Bulger are ready as soon as they can be ready.  I take it,

21    as soon as they can be ready is on the schedule that you've

22    proposed.  I'm not inclined to at this moment create a shorter

23    schedule.  But the others should come along.  Leave the

24    question of consolidation for trial or not to Judge Saris to

25    decide since she will be presiding over the trials in

1    Massachusetts, which is really what you don't want and what you

2    do want.

3         MR. FROMSON:  I don't agree with Mr. Rouhandeh's

4    representation that there's an absence of the records in the

5    other three cases.

6         THE COURT:  I understand.

7         MR. FROMSON:  They were all on an equal playing field,

8    your Honor, when the deadline hit, when all discovery was

9    supposed to be done and plaintiffs were deposed.  The

02:58 10    third-party vendor was utilized for records.  Everyone had an

11    opportunity to order their records.  To now indicate in some

12    form or fashion that those cases are so far behind, we don't

13    believe that's accurate.

14         THE COURT:  You think they're all equal and there's

15    further to do.  And it might be that they are going to take a

16    little longer if you're doing them all.  Okay.

17         MR. ROUHANDEH:  Your Honor, just one last request.

18    Perhaps the parties could confer and try to come up with a

19    joint proposal as to what to do with the remaining Track I

02:59 20    cases, including the three other Massachusetts cases.  And if

21    we come to an agreement, we'll present it on the briefing

22    schedule for the next hearing.  And if not, we'll brief it in

23    connection to the next hearing in terms of what should the

24    schedule be for the remaining Track I cases.  That will be

25    heard on June 17th.

1      We could do it on a shorter time frame if your Honor

2  would like.  I think the June 17th hearing that -- the briefing

3  for that starts in early June so it's not that far off.

4      MR. FROMSON:  Judge, we have our proposal.  That's

5  what our proposal is.  We conferred over it.  We coordinated

6  over it.  We discussed it at length.  Candidly, we just

7  disagree.  I don't have any other ideas to provide.

8      THE COURT:  If you want to submit a proposal about

9  just -- without a lot of briefing.  I understand the issues and

02:59 10  I understand generally what you want -- but a schedule

11  encompassing this is what you would propose to do to add in

12  something for the other Massachusetts cases and/or to add in

13  the other Track I cases.

14      You would add these dates on at the end of the

15  schedule.  You would push the dates out.  That's fine.  Just do

16  that.  We don't have to wait for the -- think about it.  Talk

17  about it.  When you're ready, just file it.  I'll look at it.

18  You'll know if I've issued something.  I'm not going to issue

19  something today and probably not tomorrow.  And I'll look at

03:00 20  it.

21      You guys will give me a pretty good handle on what

22  you're thinking about, all the concerns.  And you can talk to

23  each other, and, you know, you can submit this -- we both agree

24  on it or this, but one side wants a quicker or slower or what

25  have you.

1          I think that from my perspective it seems to me that

2     cases should be ready, that we should be moving them.  My

3     thought on the Track I cases has always been get them ready for

4     trial and peel them off to go to trial one by one once -- if

5     you settle, you settle.  No need to try any more.  It's just

6     like every other case.  But have them in some fashion ready.

7          They don't necessarily have to be all ready to go on

8     the same day because it's not likely they will be tried on the

9     same day.  But the same point, the other side of having one

03:01 10    ready and then nine months ready the next one and then nine

11    months after that the next one, that's too long.  I think we

12    should stagger them some way so they're ready because that will

13    move the case.

14          MR. ROUHANDEH:  Okay.  Thank you, your Honor.

15          MR. FROMSON:  Thank you, Judge.

16          THE COURT:  Do you want me to wait a certain amount of

17    time before I do something so you have time to submit something

18    or not?

19          MR. ROUHANDEH:  Is it possible to have to the end of

03:02 20    the week?

21          THE COURT:  That's fine.  I'm not unreasonable.

22          MR. ROUHANDEH:  Thank you, your Honor.

23          THE COURT:  Sure.  I won't issue anything before the

24    end of the week.  So file it by the close of business Friday,

25    and then I'll keep this in mind and think about it and then

1    I'll look at that.  Just really a schedule.  You can put a

2    little bit of explanation, but I don't need a long memo or

3    anything.  If you want to submit something in response, just

4    talk to each other about whatever you're submitting, so if you

5    want to do it --

6        MR. ROUHANDEH:  Do it simultaneously if that makes

7    sense.

8        THE COURT:  Simultaneous is fine if that seems

9    sensible.  I mean, do you want it simultaneous or do you want

03:02 10    to respond, like, a day or two later?

11        MR. FROMSON:  I'd like to respond a day later.  How

12    about I can confer with them?  If we reach an agree --

13        THE COURT:  Confer.  Do it together, if it's joint, by

14    Friday.  Is Tuesday enough time?

15        MR. FROMSON:  Absolutely, Judge.  Monday we're off, so

16    Tuesday.

17    (Whereupon, at 3:05 p.m. the hearing concluded.)

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4            I, Cheryl Dahlstrom, RMR, and Official Reporter of the

5    United States District Court, do hereby certify that the

6    foregoing transcript, from Page 1 to Page 50, constitutes, to

7    the best of my skill and ability, a true and accurate

8    transcription of my stenotype notes taken in the matter of

9    Civil Action No. 04-10981, Harden Manufacturing Company vs.

10   Pfizer, Inc., et al.

11

12

13

14

15

16                         /s/ Cheryl Dahlstrom

17                         Cheryl Dahlstrom, RMR

18                         Official Court Reporter

19

20

21

22

23

24

25