[CORRECTED]
EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| ---X | Index No. 765000/2006 |
| | : Hon. Marcy S. Friedman |
| IN RE: NEURONTIN PRODUCT LIABILITY LITIGATION | : IAS Part 57 |
| ---X | |
| THIS DOCUMENT RELATES TO ALL CASES | : **AFFADAVIT OF DR. SANDER GREENLAND** |
| ---X | |

STATE OF CALIFORNIA )
) ss.:_______
COUNTY OF LOS ANGELES )

I, SANDER GREENLAND, Dr.P.H., hereby state under the penalty of perjury the following:

**1. Tasks and Qualifications**

I have been asked by Kenneth Fromson of Finkelstein and Partners LLP to comment further on the proper interpretation of the statistical results presented in the alert from the FDA Center for Drug Evaluation and Research (CDER) dated 1/31/08, regarding suicidality and antiepileptic drugs (hereafter referred to as the "FDA CDER alert"), and on the Declaration of Robert Gibbons, Ph.D. in re the Neurontin Litigation. My qualifications for these tasks are extensive, and were presented in detail in my Expert Report in this matter dated 19 October 2007.

S. G.

**2. The randomized clinical trial data presented by the FDA do not exclude an enormously increased risk of suicidality from gabapentin (Neurontin) versus placebo, and Dr. Gibbons' analysis of the FDA data is filled with technical errors and distortive descriptions that consistently mask the possibility of large gabapentin effects.**

The first opinion offered by Dr. Gibbons (p. 3 of his report) is that the "the randomized clinical trial data analyzed by the FDA do not show an increased risk of suicidality from gabapentin relative to placebo." Dr. Gibbons does not however go on to explain that, because the data in question are so scanty, by any currently accepted statistical criterion the same data cannot exclude any effect in an enormous ranges of possibilities.

To see the problem, note that Dr. Gibbons offers a 95% confidence interval for the gabapentin odds ratio of 0.135 to 7.884. This means that, by Dr. Gibbons own calculation, the data in question are statistically compatible with anything from an 86.5% risk reduction (100 times 1−0.135 = 0.865) to 688.4% risk increase (100 times 7.884−1) from gabapentin relative to placebo. Accepting these numbers at face value and rounding them, and applying them to evaluate risk (which is essentially the same as the odds, due to the low frequency of sucidality), we could legitimately say that the data do not exclude any possibility ranging from a nearly 90% risk reduction to a nearly 700% risk increase due to gabapentin.

S.G.

In phrasing I find disturbingly deceptive, unscientific, and prejudicial, Dr. Gibbons instead describes his results as indicating "that the difference can range from gabapentin being approximately 7 times more protective than placebo to 7 times less protective than placebo." Note that the upper limit of Dr. Gibbons' confidence interval extends *beyond* a 7-fold increase, consistent with severe harm as well as benefit from gabapentin relative to a chemically inert pill (placebo). Instead of admitting this honestly, Dr. Gibbons engages a rhetorical device to describe the upper limit as "7 times less protective than placebo." This is an example of "spin doctoring" the description of an unpleasant fact. Consider that smoking a pack of cigarettes a day for 20 years confers roughly a ten-fold increase in risk of lung cancer relative to not smoking. If he applied his own rhetoric to this setting, Dr. Gibbons would describe this effect by saying that smoking confers "10 times less protection from lung cancer than does not smoking."

In the gabapentin vs. placebo comparison, Dr. Gibbons not only spins the description, but also clips off the upper end of the confidence interval, describing it as 7-fold when in fact it is much closer to 8-fold. The only common-sense, statistically correct, and unpredjuced meaning to assign Dr. Gibbons' upper confidence limit of 7.884 is that it allows for up to a nearly 8-fold potential increase in suicidality risk from gabapentin relative to placebo.

However, Dr. Gibbons confidence interval of 0.135 to 7.884 is invalidly narrow. Even though he claims is the "true confidence interval," there is no such thing as a true confidence interval, only those more or less accurate. Note that Dr. Gibbons never

S.G.

explains how he derived his interval, nor does he even give a citation providing formulas. Note as well that it is considerably narrower than the interval of 0.08 to 30 that I derived using exact statistical methods from the same data (2 cases of suicidality among 5194 gabapentin patients vs. 1 case of suicidality among 2682 placebo control patients). My methods of computation were cited and again can be found on pages 256-257 of Greenland and Rothman (2008).

I have verified my calculations. I have also attempted to replicate Dr. Gibbons' result. I have found that I can replicate his interval only with approximate "likelihood-based" methods; these methods are known to fail badly (give incorrect intervals and statistical tests) when fewer than 4 events are observed per treatment arm. In the present example there are only 2 gabapentin events and only 1 placebo event. In such situations no approximate method can be justified, and exact methods are the standard (see Greenland and Rothman, 2008). Thus, far from being the "true confidence interval," Dr. Gibbons' interval represents an inappropriate application of methods unsuitable for the data at issue, and grossly understates the actual uncertainty left by those data, which is properly captured by the interval of 0.08 to 30 presented in my original declaration.

Dr. Gabapentin also makes several other outright erroneous claims in describing his statistical results, all in favor of exonerating gabapentin in ways unsupported by the data in question or by any sound statistical methodology. At the bottom of page 3 he describes the ratio of 1.033 as "indicating no increased risk of suicidality with gabapentin at a confidence level in excess of 99.9%. This means that the probability of the observed

S. G.

difference between gabapentin and placebo is 99.9% likely due to chance alone." The latter statement is simply false. The number 99.9% refers to the probability of the observed difference *or greater if there were no gabapentin effect*. Whether by oversight or rhetorical intent, Dr. Gibbons left out the crucial qualifiers in italics. The calculation of 99.9% is done assuming that gabapentin has no effect; in other words, it assumes the hypothesis under contention. Just as problematically, it refers to the probability of observing a ratio larger than 1.033 or smaller than 1/1.033 = 0.97; in other words, it is the chance of seeing a ratio outside the narrow interval of 0.97 to 1.033 if the true ratio is 1.00. All the 99.9% touted by Dr, Gibbons shows is that if we assumed that gabapentin is utterly without effect (the true ratio was 1), we would still have a high chance of observing a ratio outside the very narrow interval of 0.97 to 1.033.

By describing the calculation in a falsely abridged manner, Dr. Gibbons attempts to imply that the data provide strong ("99.9%") evidence that there is no harm from gabapentin relative to placebo, when in fact the data at issue provide virtually no evidence one way or the other, as demonstrated by the vast range of even Dr. Gibbons' confidence interval.

**3. Dr. Gibbons comparison of suicide rates in Baldessarini et al. to suicide rates in Collins and Macfarland is epidemiologically unsound and misleading**

At the bottom of page 8 of his report, Dr. Gibbons makes a severe epidemiologic error in comparing suicide rates reported by Baldessarini et al. (2006) to the rates reported in

S.G.

Collins and MacFarland (2008). The rates in Baldessarini et al. are those obtained from a mix of studies, none of which are comparable to the population studied by Collins and MacFarland. As Baldessarini et al. take care to note in the footnote of their table, some their data come from cases of recurrent major depression and schizoaffective disorder, and their data represent a heterogeneous mix across various diagnoses and clinical settings. In contrast, Collins and MacFarland's data are limited to specific Medicaid bipolar diagnoses and are restricted to a specific region and setting. Furthermore, Collins and MacFarland relied on records alone, rather than active surveillance of patients in trials. Thus, their rates are in no way comparable to the rates reported by Baldessarini et al.

The only generally accepted and valid means to evaluate the background rates in the Collins and MacFarland data is via internal comparison of the gabapentin patients in their study to other patients in their study. Examining Table 2 of Collins and MacFarland, we see that all the groups in their study population have very low rate of completed suicide compared to the data in Baldessarini et al. This shows that the apparently low rate of suicide seen in the Collins and MacFarland study for gabapentin users is a property of their entire study population, not just the gabapentin users. In fact, within the Collins and MacFarland study the gabapentin users had by far the highest completed-suicide rate of all the patients studied: a rate 3.50 events reported per 1,000 person-years for gabapentin users, vs. less than 1 per 1,000 person-years for all other patient groups, including 0.90 for divalproex and 0 for carbamazepine.

SG

As Collins and MacFarland note in their discussion, the low rates they observed compared to other studies may wholly or in part reflect under-reporting of events in the Medicaid data they used. Without precise information on the degree of such under-reporting and on the mix of diagnoses among the patients, any difference from rates seen in other studies may reflect nothing more than differences in the suicide reporting rates and the patient diagnostic mix being studied.

**4. Conclusion**

I have again reviewed the FDA alert and in addition the new report by Dr. Gibbons and material cited therein. I find Dr. Gibbons gives a number of calculations and interpretations of statistical results that lack proper foundation and are deceptive in presentation, violating standards of scientific objectivity and fairness in evaluation of results. On close inspection, I find that none of his criticisms of my comments would in any way alter the opinions I have offered to date, including my statistical expert opinion that the comparison of gabapentin and placebo groups based on data in Table 4 of the letter dated 22 June 2006 (from Pfizer's Mary Ann Coronel Evertsz, R.Ph., to Russell G. Katz, M.D. of the FDA) supports no sound statistical inference regarding the relation of gabapentin to suicide, suicidal behavior, or suicidal ideation.

Executed this 16 day of May, 2008, in Topanga, California.

Sander Greenland

Sander Greenland, M.A., M.S., Dr.P.H., C.Stat.

S. /

# CALIFORNIA JURAT

State of California

County of Los Angeles ] SS

Subscribed and sworn to (or affirmed) before me on this 16 day of May, 2008, by Sander Greenland

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(SEAL)

Signature: [signature]

Printed/Typed Name: Philip H Berkner

Commission Number: 1497836

PHILIP H. BERKNER
Commission # 1497836
Notary Public - California
Los Angeles County
My Comm. Expires Jul 1, 2008

Affadavit

Copyright © 2006 MortgageDocs.com. All Rights Reserved.

**4. References**

Baldessarini, R.J., Pompili, M., and Tondo, L. (2006). Suicide in bipolar disorder: risks and management. *CNS Spectrums*, 11, 465–471.

Collins, J.C. and McFarland, B.H. (2008). Divalproex, lithium and suicide among Medicaid patients with bipolar disorder. *Journal of Affective Disorders*, 107, 23-28.

Greenland, S. and Rothman, K.J. Fundamentals of Epidemiologic Data Analysis and Introduction to Categorical Statistics. Chapters 13 and 14 in: Rothman, K. J., Greenland, S., and Lash, T.L. (2008). Modern Epidemiology, 3rd ed. Philadelphia: Lippincott-Williams & Wilkins.