UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
                                                    :     MDL Docket No. 1629
In re:   NEURONTIN MARKETING,                       :
         SALES PRACTICES AND                        :     Master File No. 04-10981
         PRODUCTS LIABILITY LITIGATION              :
                                                    :     Judge Patti B. Saris
---------------------------------------------------------------x
                                                    :     Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                           :
                                                    :
ALL PRODUCTS LIABILITY CASES                        :
                                                    :
---------------------------------------------------------------x

### REPLY MEMORANDUM IN SUPPORT OF PRODUCTS LIABILITY PLAINTIFFS' MOTION TO COMPEL DISCLOSURE, BY A DATE CERTAIN, OF LYRICA (PREGABALIN) INFORMATION AND DOCUMENTS, AND DISCLOSURE CONCERNING DEFENDANTS' PRESENTATIONS TO THE FDA REGARDING THE JANUARY 31, 2008 ALERT

This Reply Memorandum is submitted in reply to Defendants' opposition to Plaintiffs' motion for an order compelling Defendants to produce disclosure relating to: (1) Lyrica (pregabalin) information which formed the basis of Defendants' June 22, 2006 written submission to the FDA regarding Lyrica (pregabalin) and suicidality, which was relied upon by Defendants' rebuttal expert witness, Robert D. Gibbons, Ph.D.; and (2) the in-house work and analyses of Defendants' employee, Christopher Wohlberg, M.D., Ph.D., and other information and documents regarding Defendants' presentations on June 2, 2008 and July 10, 2008, to the FDA regarding the January 31, 2008 FDA Alert.

I.   **PLAINTIFFS ARE ENTITLED TO THE UNDERLYING LYRICA INFORMATION, DATA AND DOCUMENTS THAT FORMED THE BASIS OF DEFENDANTS' EXPERT OPINIONS**.

Defendants exclaim through their expert, Robert D. Gibbons, Ph.D., that their drugs Neurontin and Lyrica are safe drugs with common pharmacological mechanisms of action; that their clinical trials for Lyrica can be used to corroborate their defense that Neurontin use is not associated with an increased risk of suicide.  However, when asked to disclose the very documents and information that culminated in the data upon which their expert admittedly relies, they cry foul.  Their position is nonsensical, and this Court should reject their arguments.

When Defendants were confronted with the FDA's January 2008 Alert on suicidality with anticonvulsants, they similarly sought to recover the underlying information, documents and data that formed the bases of the FDA's ultimate conclusion that 11 drugs, including Neurontin and Lyrica, are associated with an increased risk of suicide.  For example, after having received Plaintiffs' supplemental expert disclosure that cited to the FDA's Alert, Defendants sought to "obtain the data on which" Plaintiffs' experts opinions were based.  ECF Doc. # 1125 at 1.  Defendants argued the following:

> The Alert, which was based on the FDA's review of eleven drugs, including Neurontin, indicated that patients receiving unspecified antiepileptic medications were at a greater risk of suicidal behavior or ideation compared to patients receiving placebo.  The Alert did not include any details about the FDA's analysis or any data regarding the eleven drugs that were the subject of the analysis.  **After learning of the Alert, defendants took immediate steps to obtain the data, but have not yet received it.**  Although defendants do not have most of the data underlying the FDA's analysis, defendants do have the Neurontin-specific data that the FDA analyzed.  These data are devoid of any evidence of an increased risk of suicidal behavior or ideation in Neurontin-treated patients.  As shown below, plaintiffs' experts admitted as much during expert discovery.
>
> Defendants should be allowed to **obtain the underlying data** and to question plaintiffs' experts about these new opinions and the new basis for them.  **Defendants are currently in an impossible position because they have neither the data nor a complete disclosure** as required by Rule 26 regarding how the FDA Alert affects plaintiffs' experts' opinions.  Defendants cannot fairly explore plaintiffs' experts'

2

> new opinions and reliance on the Alert until: (1) plaintiffs fully disclose the new opinions; and (2) **defendants have the opportunity to obtain and analyze all the data on which the Alert is based and cross examine plaintiffs' expert witnesses on the data**; and (3) defendants supplement their expert reports, if necessary, before briefing the *Daubert* and summary judgment motions.  [ECF Doc. # 1125 at 2-3 (emphasis added).

Plaintiffs herein are simply putting forth a similar argument previously posed by Defendants above but with respect to the underlying Lyrica data—which Defendants possess—as opposed to the data in the possession of the FDA which Defendants then sought.

Applying the very same reasoning by Defendants to the present issue, Plaintiffs herein took steps to recover the information by conferring with Defendants, Plaintiffs have specifically targeted the information sought, and Plaintiffs are in an "impossible position" to adequately cross examine and test the veracity of Defendants' expert opinion without having an opportunity to obtain, review and analyze the very information that forms the bases of Defendants' expert opinion.[1]

Defendants mislead the Court with representations that they have provided to Plaintiffs disclosure of what Dr. Gibbons reviewed and considered.  Realistically, Dr. Gibbons has admittedly based his opinions upon a <u>summary</u> of Lyrica data (as opposed to reviewing the underlying documents and data that culminated in the results upon which he relied).  Either Defendants chose only to give him the summary, or he chose only to review and consider the summary.  Either way, Defendants' tactic was pursued at their own peril, because to the extent the underlying data and information is inaccurate and inconsistent with the summary, then Dr. Gibbons relied upon faulty, unreliable information in reaching his opinions.  Defendants cannot

---

[1] Plaintiffs have not sought a postponement of the upcoming July 23, 2008 hearing at which time Plaintiffs will cross-examine Dr. Gibbons; the *Daubert/Frye* issues about which Defendants have challenged Plaintiffs' experts do not preclude Plaintiffs from opposing Defendants' motion as to Plaintiffs' experts' appropriate methodology in reaching their opinions on general causation.  However, recovery of the underlying Lyrica information will provide Plaintiffs the opportunity to oppose at trial Defendants' claims and defenses, as well as to cross-examine Dr. Gibbons or any defense expert who relies upon the 2006 Lyrica summary and/or underlying Lyrica information at trial.

hide behind an opinion, based in part on a summary of information <u>prepared and written by Defendants</u>, and then claim that very information is not discoverable. Defendants' claims and defenses via their Lyrica 2006 summary to the FDA are only as accurate as the underlying information that culminated in the summary. In a similar situation, the U.S. District Court for the District of Massachusetts, in *Dufresne v. Microsoft Corp.,* excluded a supplemental report of an expert noting that a party is "not entitled to a 'placeholder' to 'reserve the right' to opine . . . in a later round of expert reports." 2006 U.S. Dist. LEXIS 57423 at *22 (D. Mass 2006). The Court noted that "the vast majority of support appears to come from materials that were in Plaintiff's possession at the time of the original exchange of report." *Id.* at *25. Plaintiffs are entitled to the underlying information.

## II. DEFENDANTS ARE OBLIGATED UNDER FED. R. CIV. P. 26 TO PROVIDE THE DISCOVERY PLAINTIFFS SEEK HEREIN.

Pursuant to Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure that was in effect before the December 1, 2007 Amendments to the Federal Rules, and is now in Rule 26(a)(1)(ii), as part of the initial disclosures, Defendants were required to disclose "a copy of, or a description by category and location of, all documents, data, compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment."

Rule 26(e) that was in effect before the recent Amendments, mandates that parties to an action supplement and correct their disclosures and responses to discovery demands:

> (e) Supplementation of Disclosures and Responses. A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:

4

(1) A party is under a duty to supplement at **appropriate intervals** its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

(2) A party is under **a duty seasonably to amend** a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. [Emphasis added.][2]

Additionally, Case Management Order No. 3, ECF Doc. # 62, requires that supplementation "be made by the parties no later than 30 days after the  new information is received." This requirement for supplementation is regardless of the discovery deadline of April 30, 2007.

In *Hipsaver Co., Inc. v. J.T. Posey Co.,* this Court made it very clear that Fed. R. Civ. Pro. 37(c) provides a "'self-executing sanction' for failure to make evidentiary disclosures required by the Federal Rules. 497 F. Supp. 2d 96 (D. Mass. 2007). In *Hipsaver,* where the plaintiff failed to disclose documents and information in regard to causation until a short period before the trial, this Court considered a number of factors in its determination that the evidence in question was to be precluded including that:  inadvertency and/or negligence was not substantial justification for non-disclosure; that due to the non-disclosure, the adversary had prepared its expert reports on the basis of incomplete data; and that the history of the litigation has been contentious. *Id.* at 103. Moreover, this Court held that claims that there was no

---

[2] Amended Rule 26(e) provides: (e) Supplementing Disclosures and Responses. (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:  (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not  otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

prejudice to the adverse party because a continuance of the trial had been granted were incorrect and that "the delay and additional expense (not to mention stress) occasioned by Hipsaver's failure to produce the 2006 data are precisely the sort of harm contemplated by the rule". *Id.* at 104. Based upon the above circumstances, in *Hipsaver,* this Court saw fit to grant discovery sanctions and precluded the plaintiff from introducing the non-disclosed evidence at trial and awarded attorney fees pursuant to Fed. R. Civ. P. 37(c). *See also Rosvold v. L.S.M.*, 2007 U.S. Dist. LEXIS 82061 at *3 (E.D. Mich. 2007) (Court precluded party from providing to their experts evidence which was not furnished to adversary as mandated by Fed. R. Civ. P. Rule 26).

In *AVX Corp. v. Cabot Corp.,* where plaintiff had failed to comply with complete Rule 26 initial disclosure requirements by failing to provide a timely supplemental response to the damages interrogatories, *inter alia,* after the deadline for expert reports and dispositive motions had elapsed, the Court noted that the "duty to supplement is a continuing duty" and found it appropriate under the circumstances to strike  the supplemental damage interrogatory response. 2008 U.S. Dist. LEXIS 49293 at *17 (D. Mass. 2008).

Defendants' reliance on the Court's discovery deadline of April 30, 2007, is misplaced. It is undisputed that Defendants have been served with Products Liability Plaintiffs' Requests for Production of Documents and Things related to both Neurontin and Lyrica during this litigation and before the discovery deadline of April 30, 2007.  It is further undisputed that this Court, in Discovery Order No. 6, ECF Doc. # 550, recognized that Lyrica documents were relevant, but based upon the parties submissions at that time, "which addressed the topic generally", the Court was unable to provide "a more specific ruling" as to the scope of Lyrica discovery.  Following Discovery Order No. 6, the parties conferred as to the Lyrica discovery and resolved their dispute.  However, Plaintiffs had no possible way of knowing that a year later, Defendants would

6

retain a rebuttal expert and that the rebuttal expert would rely upon Lyrica data never before disclosed. The April 30, 2007 discovery deadline date upon which Defendants rely is irrelevant because the issue is simply that Plaintiffs had no reason to pursue the discovery they now seek until Defendants relied upon the Lyrica data in support of their claims and defenses.

Now, upon learning of Defendants' claims and defenses that include reliance on Lyrica data to demonstrate the safety of Neurontin, Plaintiffs simply seek the underlying Lyrica data. Further, Plaintiffs' current submission provides specific, targeted requests that correspond to the summary of information that is included in the 2006 Lyrica submission to FDA and upon which Defendants' expert Dr. Gibbons has based his opinions. Consequently, this Court now has before it a submission that addresses the discovery issue in a specific, targeted manner.

Here, it is clear that Defendants had a continuing duty to supplement their Rule 26 disclosures by providing a copy of, or a description by category and location of, all documents, data, compilations, and tangible things relating to Lyrica and Neurontin. At a minimum, Defendants should have supplemented their disclosure to reflect the 2006 Lyrica submission to the FDA and the underlying information that culminated in the submission. Similarly, Defendants should have supplemented their disclosure related to the presentations and underlying documents and information related to Defendants' communication with the FDA about suicidality with anticonvulsants. Plaintiffs have therefore been prejudiced by Defendants' deliberate failure to supplement their disclosure, which was in clear violation of the Federal Rules and Orders of this Court.

## CONCLUSION

Plaintiffs therefore respectfully request that the Court issue an Order compelling Defendants to produce the disclosure detailed in items 1-9 as set forth in Plaintiffs

Memorandum, relating to Lyrica (pregabalin), the materials relating to Defendants' presentations to the FDA regarding the January 31, 2008 FDA Alert, and the remainder of Dr. Wohlberg's files, not heretofore produced, concerning Neurontin, Lyrica or the FDA Alert, on or before August 22, 2008.

Dated:  July 18, 2008                                  Respectfully submitted,

*Members of Products Liability Plaintiffs' Steering Committee*

By:    /s/ **Andrew G. Finkelstein**
       Andrew G. Finkelstein, Esquire
       Finkelstein & Partners, LLP
       436 Robinson Avenue
       Newburgh, NY  12550


By:    /s/ **Jack W. London**
       Jack W. London, Esquire
       Law Offices of Jack W. London
          & Associates
       106 E. 6th Street, Suite 700
       Austin, TX  78701


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on July 18, 2008.


/s/ **Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire