UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION ) ) ) ) ) | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:           )<br>                                                              )<br>     ALL PRODUCTS LIABILITY CASES  )<br>                                                              ) | Magistrate Judge Leo T. Sorokin |

**PRODUCTS LIABILITY PLAINTIFFS' MEMORANDUM IN SUPPORT
OF EMERGENCY MOTION FOR AN ORDER MODIFYING CASE
MANAGEMENT ORDER NO. 3 SO AS TO ALLOW ONE-DAY
DEPOSITIONS OF CASE-SPECIFIC EXPERTS, FOR A PROTECTIVE
ORDER LIMITING THE DEPOSITION OF PLAINTIFFS' SPECIFIC
CAUSATION EXPERT TRIMBLE TO ONE DAY, AND FOR A PROTECTIVE
ORDER PRECLUDING DEFENDANTS FROM TAKING DEPOSITIONS OF
PLAINTIFFS' GENERAL CAUSATION EXPERTS KING AND BROCK**

Products Liability Plaintiffs respectfully submit this Memorandum in support of their emergency motion, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, (1) for an Order modifying Case Management Order No. 3 so as to permit one-day depositions of case-specific experts, absent good cause for a second day; (2) for a Protective Order limiting the deposition of Plaintiffs' specific causation expert, Professor Michael Trimble, M.D., to one day; and (3) for a Protective Order precluding Defendants from taking the depositions of Plaintiffs' general causation experts on sales/marketing practices, Charles King, III, Ph.D., and Dan W. Brock, Ph.D. Plaintiffs are proceeding by Emergency Motion because the videotaped deposition of Professor Trimble has been noticed by Defendants to be taken, in the individual case, *Smith v. Pfizer Inc.*, Case No. 05-11515-PBS, on September 2, 2008, and continued on September 3, 2008, if necessary until completed, and the videotaped deposition of Dr. Brock has been noticed

by Defendants to be taken, in the individual cases, *Bulger v. Pfizer Inc.*, Case No. 07-11426-PBS, and *Smith v. Pfizer Inc.*, Case No. 05-11515-PBS, on September 16, 2008, and September 17, 2008.

## FACTUAL BACKGROUND

**A.    Facts Relating to Motion to Modify Case Management Order No. 3, and for A Protective Order Limiting the Deposition of Professor Trimble to One Day**

Case Management Order No. 3, entered in MDL 1629 *In re Neurontin Marketing and Sales Practices Litigation*, entered on March 18, 2005, (*see* copy attached hereto as Exhibit A), provides that: "Unless otherwise authorized by the Court of stipulated by the parties, depositions shall be limited to two (2) business days of seven (7) hours each by the deposing parties." CMO-3, p. 5.

On May 11, 2005, twenty-one additional actions involving marketing and sales practices, personal injury, and products liability allegations were transferred to MDL 1629. (*See* Conditional Transfer Order (CTO-6), and Order Lifting Stay of Conditional Transfer Order, attached as Ex. B.) All twenty-one cases were commenced by the firm of Finkelstein & Partners, LLP, and each case involves a single individual who had attempted to commit suicide, or who had in fact committed suicide, allegedly as a result of that individual's ingestion of Neurontin. On May 20, 2005, eight similar actions, including one commenced by the Finkelstein firm, were conditionally transferred to MDL 1629. (*See* Conditional Transfer Order (CTO-8), attached as Ex. C.) By an Electronic Order entered on June 10, 2005, Magistrate Judge Sorokin granted Defendants' Motion for entry of Case Management Order No. 4, whereby MDL 1629 would be renamed *In re Neurontin Marketing, Sales Practices and Products Liability Litigation*, and a Products Liability Plaintiffs' Steering Committee was created. (*See* Defendants' Motion, ECF Doc. # 137, and Defendants' Memorandum in Support of Motion, attaching [Proposed] Case

Management Order No. 4 (Relating to Products Liability Litigation), ECF Doc. # 138, attached as Ex. D; 06/10/2005 Electronic Order, attached as Ex. E.)

Discovery Order No. 26 Products Liability Scheduling Order, dated June 20, 2008, ECF Doc. # 1337, (*see* copy attached as Ex. F), provides that depositions of Plaintiffs' experts for the *Bulger* and *Smith* cases be completed by 9/22/08.

On August 20, 2008, Defendants served Plaintiffs with a Notice of Videotaped Deposition of Professor Michael Trimble, M.D., in the *Smith* case, (*see* copy attached as Ex. G), scheduling Dr. Trimble's deposition to be held on September 2, 2008, and continuing on September 3, if necessary until completed.

**B.  Facts Relating to Motion for a Protective Order Precluding Defendants From Taking the Depositions of Plaintiffs' General Causation Experts on Sales/Marketing Practices**

On October 10, 2007, counsel for the parties conferred regarding defense counsel's position that Defendants would only be deposing Plaintiffs' experts pertaining to general causation, and were excluding from the deposition schedule at that time both of Plaintiffs' general causation experts on sales/marketing practices. (*See* Letter from Kenneth Fromson, Esq., to Jim Rouhandeh, Esq., dated October 10, 2007, attached as Ex. H.) Plaintiffs' counsel advised defense counsel in the letter that depositions of all general causations experts, including Plaintiffs' general causation experts on sales/marketing practices, were to go forward at that time pursuant to the disclosure deadlines set by the Court, and that to the extent that Defendants refused to go forward with these depositions, Plaintiffs would oppose any application to have these general causation experts produced after the discovery deadline then in effect by the Court.

On October 22, 2007, Plaintiffs' counsel served defense counsel with Plaintiffs' general causation expert disclosure pertaining to this litigation, including disclosure relating to Dr. Dan

Brock and Dr. Charles King, Plaintiffs' general causation experts on sales/marketing practices. (*See* Letter from Kenneth B. Fromson, Esq., to James P. Rouhandeh, Esq., dated October 22, 2007, (without enclosures), attached as Ex. I.) Plaintiffs' counsel reiterated in the letter that, as previously stated, to the extent that Defendants refused to go forward with these depositions, Plaintiffs would oppose any application to have these general causation experts produced after the discovery deadline then in effect by the Court. Plaintiffs' counsel explained as follows:

> In furtherance of the parties' discussions regarding the Court's directives in this case, Plaintiffs' maintain that all expert reports that do not pertain to an individual case-specific actions are due for disclosure by Plaintiffs. As previously set forth by the Court in Discovery Order #7, the parties were to exchange general causation expert reports by 10/1/07. Thereafter, in Discovery Order #13, the Court extended the exchange date to 10/22/07. Finally, in Discovery Order #14, the Court indicated, "the schedule for experts on general causation and summary judgment briefing remains unchanged."
>
> … Judge Saris, in her opinion on 2/23/07, recognized general causation to include issues related to Plaintiffs' **liability claims** (i.e., negligence, fraud, consumer protection violations) when she dismissed the fraud claims without prejudice and with permission to amend complaints (see Doc #646): "While plaintiffs do allege causation in a conclusory fashion, they admit they did not allege fraud with particularity . . . ." (emphasis added). She goes on to recognize Plaintiffs' entitlement to discovery for purposes of causation and ultimately states, "I understand that the parties have agreed to undertake discovery in ten pilot cases to vet issues of general and individual causation" (Doc #646). (emphasis added).

Notwithstanding Plaintiffs' position, on October 25, 2007, defense counsel responded to Plaintiffs' counsel's October 22, 2007 letter, and advised that Defendants were reserving the right to take the depositions of Dr. King and Dr. Brock, if necessary after the resolution of the summary judgment and *Daubert* motions. (*See* Letter from James P. Rouhandeh, Esq., to Kenneth B. Fromson, Esq., dated October 25, 2007, attached as Ex. J.)

Subsequently, after the deadline for generic discovery and consistent with the Court's scheduling for summary judgment briefing, Defendants filed their motion for summary judgment wherein they argued that Plaintiffs had not demonstrated general causation, including whether

4

Plaintiffs' had raised triable issues related to Plaintiffs' **liability claims**. Defendants' moving papers included argument that they were not negligent for failing to warn the public of Neurontin's dangers. Consistent with the Court's briefing schedule, Plaintiffs' Memorandum submitted in opposition to Defendants' motion for summary judgment, filed on April 4, 2008, specifically referred the Court to the expert reports of Plaintiffs' general causation experts on sales/marketing practices, Dr. Brock and Dr. King. (*See* Excerpt from Plaintiffs' Memorandum, p. 4 n.5, ECF Doc. # 1198, attached as Ex. K.)

On August 15, 2008, defense counsel advised Plaintiffs' counsel that Defendants would be seeking to conduct the depositions of Plaintiffs' general causation experts Dr. Brock and Dr. King, and that Defendants would be scheduling to take the deposition of each of Plaintiffs' experts over a period of two days. Defense counsel have also indicated that they seek to depose Dr. Brock and Dr. King one time, and then to use the experts' deposition testimony in each individual Products Liability case.

On August 21, 2008, Defendants served Plaintiffs with a Notice of Videotaped Deposition *Duces Tecum* of Dan W. Brock, Ph.D., in the *Bulger* and *Smith* cases, (see copy attached as Exhibit L), scheduling Dr. Brock's deposition to be held on September 16, 2008, and September 17. On August 22, 2008, Defendants served Plaintiffs with a Notice of Videotaped Deposition *Duces Tecum* of Kip King III, in the *Bulger* and *Smith* cases, (see copy attached as Exhibit ____), scheduling Dr. King's deposition to be held on September 18, 2008, and September 19. In both notices, Defendants acknowledge that Plaintiffs had designated these "expert[s] to provide testimony related to general causation." (emphasis added).

Dr. Brock has advised Plaintiffs' counsel that he is available for deposition all day on September 16, 2008, but he has a scheduling conflict on September 17. Specifically, he has a

5

prior commitment/meeting with the Harvard Provost and others on the planning of the Harvard Initiative for Global Health. Dr. Brock is the Director of the ethics component of this initiative and thus his presence and participation is crucial. Plaintiffs' expert, Charles King III, has also indicated a scheduling conflict. Plaintiffs' counsel has communicated with Dr. King regarding Defendants' request for his deposition. Similarly, Dr. King is presently in Ontario, Canada, with limited access to communicate with Plaintiffs' counsel, and he has indicated without detail that he is unavailable to provide testimony until October 2008. Consequently, even if the Court allows Dr. Brock and Dr. King's depositions to go forward, Plaintiffs contend that the experts are not available to provide testimony on the dates consistent with Defendants' notice and seek the Court's relief in scheduling the depositions on a future date.

## ARGUMENT

**A.    Case Management Order No. 3 Should Be Modified so as to Allow One-Day Depositions of Case-Specific Experts, and the Deposition of Plaintiffs' Specific Causation Expert Professor Trimble Should be Limited to One Day**

Depositions of case-specific experts should be limited to a duration consistent with Fed.R.Civ.P. 26(d)1: one day of seven hours. Defendants should be required to demonstrate good cause as to why such case-specific expert depositions should be automatically granted a two-day duration. See Fed.R.Civ.P.26(b)1 and 2. In the present case, the Court's Case Management Order No. 3 --- which went into affect prior to Plaintiffs' participation in the MDL --- essentially allows the depositions of case-specific experts to elapse over two days, without any requirement that good cause be demonstrated. Plaintiffs contend that such an allowance in said CMO No. 3 did not take into consideration the duration of Product Liability case-specific experts' depositions when the CMO was approved.

6

Case-specific experts Case Management Order No. 3, entered on March 18, 2005, in the multidistrict litigation, 1629 *In re Neurontin Marketing and Sales Practices Litigation*, limits depositions to two (2) business days. No differentiation was made between experts whose deposition testimony would be used in all cases in the MDL, and case-specific experts.

On May 11, 2005, the Judicial Panel on Multidistrict Litigation transferred to MDL 1629, twenty-one additional actions involving not only marketing and sales practices claims, but also personal injury and products liability claims. Each of the twenty-one actions involved a single individual who had attempted to commit suicide, or who had in fact committed suicide, allegedly as a result of the ingestion of Neurontin. On May 20, 2005, eight similar actions were conditionally transferred to MDL 1629.

In view of the addition of these new products liability cases, on June 10, 2005, Magistrate Judge Sorokin granted Defendants' Motion for entry of Case Management Order No. 4, whereby MDL 1629 would be renamed *In re Neurontin Marketing, Sales Practices and Products Liability Litigation*, and a Products Liability Plaintiffs' Steering Committee was created.

Since that time, almost a hundred cases involving a single individual who had attempted to commit suicide, or who had in fact committed suicide, allegedly as a result of the ingestion of Neurontin, were transferred from other courts to MDL 1629, or were commenced in the District of Massachusetts and transferred to MDL-1629.

Numerous depositions have been taken to date of individuals whose testimony would be relevant to and expected to be used in all cases involving sales and marketing practices claims, including those cases also alleging personal injury and products liability claims, where numerous counsel representing Sales and Marketing Practices Plaintiffs, Products Liability Plaintiffs and various Defendants appeared and participated in the depositions. In contrast, the deposition of a

7

case-specific expert in a Products Liability case, such as the pending Track One cases *Bulger* and *Smith*, would only involve counsel for the Plaintiff in each specific case, and counsel for the Pfizer Defendants. When Case Management Order No. 3, which limited depositions to two (2) business days, was entered, neither the Court nor the parties took into consideration the addition of almost a hundred individual Products Liability Plaintiffs to MDL 1629, whose cases would not be handled in the same way, requiring the creation of separate Products Liability Plaintiffs' Steering Committee, and different schedules for completion of discovery and dispositive motion practice.

Noteworthy, the parties in the Products Liability cases have thus far been unable to resolve costs associated with the fees owed to experts where Defendants will notice a deposition for two days, but the deposition completes in only one day. In such cases, Defendants have not agreed to reimburse Plaintiffs' expert for the second day even though the expert has had to block out an entire two-day span in accordance with Defendants' deposition notice, and the expert has forfeited the second day of earnings that would be gained from the expert's private practice outside of this litigation. While Plaintiffs do not presently seek relief on this specific issue at this time (e.g., reimbursement to Plaintiffs' experts), these circumstances are brought to the Court's attention to further reflect how the current protocol for an automatic 2-day deposition, is not practical.

It is therefore respectfully submitted that Case Management Order No. 3 should be modified to be consistent with Fed.R.Civ.P. 26(d)1 (one day/seven hours) and limit the deposition of a case-specific expert to one business day, absent good cause shown requiring

more time, and that the deposition of Plaintiff Smith's specific causation expert, Professor Trimble, be limited to one day.[1]

**B.    Defendants Should Be Precluded From Taking the Depositions of Plaintiffs' General Causation Experts on Sales/Marketing Practices, Dr. Brock and Dr. King**

As discussed in the letters exchanged between counsel for Products Liability Plaintiffs and Defendants, (attached as Exhibits H, I and J), the parties' dispute centers on the interpretation of the term "general causation" as that term is used by the Court in the Products Liability cases with regard to expert disclosure and depositions of experts. Defendants contend that "general causation" is limited to whether Neurontin is capable of causing suicide or suicide attempt. Plaintiffs, on the other hand, believe that "general causation" includes all conduct by Defendants that generally caused or contributed to personal injuries or deaths of patients who were prescribed and ingested Neurontin, and the patients' resulting damages, including the effects of Defendants' sales and marketing practices in causing or contributing to medical providers prescribing Neurontin to patients, and patients purchasing and ingesting Neurontin. In contrast, "specific causation" involves the question of whether Defendants' conduct actually caused harm and damages to a particular patient.

Certainly, "general causation" in connection with the Sales and Marketing Practices Plaintiffs, includes all conduct by Defendants that caused medical providers to prescribe Neurontin to patients and caused patients to purchase and ingest Neurontin. Products Liability Plaintiffs allege not only that ingestion of Neurontin caused personal injuries and death to

---

[1] Professor Trimble has already been subjected to several depositions as a general causation expert, and there is little need to re-examine the expert regarding his experience and qualifications, or any duplicative testimony from these depositions. Thus, the Court is respectfully requested to consider this fact in determining that Professor Trimble's case-specific deposition in <u>Smith</u> should be limited to one day. Similarly, Defendants have scheduled the deposition of Plaintiffs' expert, Stefan Kruszewski, M.D, in the <u>Bulger</u> case for two days (September 8 and 9, 2008). There, too, Dr. Kruszewski has already been deposed several times as a general causation expert, and his <u>case-specific</u> deposition should similarly be limited to one day.

9

patients, but also that Defendants' sales and marketing practices caused medical providers to prescribe Neurontin to their patients, and caused the patients to purchase and ingest Neurontin.

Here, consistent with the Court's discovery schedule on general causation and expert disclosure, Plaintiffs provided Defendants with all expert disclosure on general causation, including with regard to Plaintiffs' general causation experts on sales and marketing practices (liability claims), Dr. Brock and Dr. King. Plaintiffs provided Defendants with ample opportunity to take the depositions of all Plaintiffs' general causation experts, including Plaintiffs' general causation experts on sales and marketing practices, pursuant to the Court's directives and schedule. Defendants refused to take advantage of the opportunity to depose Dr. Brock and Dr. King pursuant to the Court's schedule for discovery relating to general causation experts and the Court's then schedule as to the timing of summary judgment motions.[2]

Defendants have known since October 2007 that experts Brock and King were general causation experts. The fact that defense counsel have served deposition notices (Exhibits ___ and ___) where they acknowledge both Dr. Brock and King as having been designated by Plaintiffs as "general causation" experts demonstrates unequivocally that Defendants knew since October 2007 that Dr. Brock and King should have been deposed in accordance with the Court's discovery schedule for general causation and summary judgment motion practice. Further, the fact that Defendants have advised that they seek to depose Dr. Brock and Dr. King only one time, in connection with the *Smith* and *Bulger* cases, and then use the experts' deposition testimony in each individual Products Liability case indicates that Defendants were well aware that these two experts are general causation experts whom Defendants had the opportunity to depose prior to making their motion for summary judgment on general causation.

---

[2] Similarly, Defendants affirmatively decided not to take the deposition of Plaintiffs' general causation expert, Sander Greenland, Ph.D.

10

Rule 26(b)(2)(C)(ii) of the Federal Rules of Civil Procedure provides that a court must limit discovery if it determines that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." *See also Alper v. United States*, 190 F.R.D. 281 (D. Mass. 2000) (where plaintiff chose not to depose defendant's medical expert pursuant to discovery timetable, and served expert with subpoena duces tecum after discovery schedule had expired, court allowed defendant's motion in large part, and quashed subpoena to the extent it sought production of documents because it improperly circumvented the discovery schedule).

Because Defendants waived their opportunity to take the depositions of Plaintiffs' two general causation experts on sales and marketing practices (liability claims) in late 2007, Defendants should be precluded from taking these depositions at this time.

Dated: August 25, 2008

Respectfully submitted,

*Members of Products Liability Plaintiffs' Steering Committee*

By:   **/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY 12550

By:   **/s/ Jack W. London**
Jack W. London, Esquire
Law Offices of Jack W. London
   & Associates
106 E. 6th Street, Suite 700
Austin, TX 78701

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on August 25, 2008.

**/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
