# EXHIBIT K

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------x
                                                         :   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                             :
        SALES PRACTICES AND                              :   Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION                    :
                                                         :   Judge Patti B. Saris
---------------------------------------------------------x
                                                         :   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                :
                                                         :
ALL PRODUCTS LIABILITY CASES                             :
IDENTIFIED ON EXHIBIT 1 TO THE                           :
DECLARATION OF SCOTT W. SAYLER, ESQ.                     :
                                                         :
---------------------------------------------------------x

**PRODUCTS LIABILITY PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS PFIZER INC. AND WARNER-LAMBERT
COMPANY LLC'S MOTION FOR SUMMARY JUDGMENT**

*Members of Products Liability
Plaintiffs' Steering Committee*

Andrew G. Finkelstein, Esq.
FINKELSTEIN & PARTNERS, LLP
436 Robinson Avenue
Newburgh, NY  12550

Jack W. London, Esq.
LAW OFFICES OF JACK W. LONDON
  & ASSOCIATES
106 E. 6th Street, Suite 700
Austin, TX  78701

I.  **INTRODUCTION**

Defendants Pfizer Inc. and Warner-Lambert Company LLC (hereinafter "Defendants") have moved for summary judgment premised on three points. First, Defendants seek immunity from tort liability via preemption claiming that the FDA has reviewed, considered, and concluded that the Neurontin label should not include a warning for suicidal behavior. Second, Defendants claim they had no duty to warn of suicide-related events about which they did not know prior to FDA's 2008 Alert regarding suicidality and antiepileptic drugs.[1] Third, Defendants posit that Plaintiffs have not raised a genuine issue of material fact demonstrating that Neurontin has the capacity to contribute to suicidality (i.e., general causation).

This Court should deny Defendants' motion in its entirety because (1) preemption does not apply to Plaintiffs' claims; (2) Defendants knew or should have known about suicide related events and thus had a duty to warn of such events; and (3) Plaintiffs have raised genuine issues of material fact demonstrating that Neurontin has the capacity to contribute to suicidality.

   A.  **Plaintiffs' Claims Are Not Preempted.**

As part of its guilty plea in May 2004, Defendants admitted that the Neurontin label provided inadequate directions for unapproved uses. Pls.' Ex. 2. Furthermore, the company failed to comply with its pharmacovigilance obligations under 21 C.F.R. § 314.80, 21 C.F.R. § 314.70, and 21 C.F.R. § 201. As such, this Court should not even consider preemption to be an issue in this case. If the Court does decide to consider preemption, the state of preemption law

---

[1] On January 31, 2008, the FDA issued a FDA Alert – *Information for Healthcare Professionals: Suicidality and Antiepileptic Drugs*, in which it stated that after analyzing reports of suicidality in 199 clinical studies of eleven drugs, including Neurontin, used to treat epilepsy that: [P]atients receiving antiepileptic drugs had approximately twice the risk of suicidal behavior or ideation (.043%) compared to patients receiving placebo (.022%). The increased risk of suicidal behavior and suicidal ideation was observed as early as one week after starting the antiepleptic drug and continued through 24 weeks. Exhibit 1 to Declaration of Andrew G. Finkelstein. Further references below to Exhibits attached to the Finkelstein Declaration will hereinafter be referred to as "Pls.' Ex. __". The FDA further warned: "All patients who are currently taking or starting on any antiepileptic drug should be closely monitored for notable changes in behavior that could indicate the emergence or worsening of suicidal thoughts or behavior or depression." *Id.*

would still lead to a finding that Plaintiffs' claims are not preempted. The basic analysis of the preemption argument in this case can be summarized as follows:

- There is a "basic presumption against pre-emption" because preemption upsets the balance of power between the federal government and the states as independent sovereigns. *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 439, 125 S. Ct. 1788 (2005). The analysis of preemption of prescription drug claims begins with the strong presumption against preemption. *Caraker v. Sandoz Pharm. Corp.*, 172 F. Supp. 2d 1018 (S.D. Ill. 2001).

- Congress knows how to express its intent to preempt state law claims – as it has done, *inter alia*, with respect to medical devices. *Id.* at 1035. Congress did not expressly preempt any aspect of state law with respect to prescription drugs, and in fact foreclosed preemption absent a "direct and positive conflict";[2]

- Conflict preemption rests on a finding either that (1) it would be impossible for a drug manufacturer to comply with both federal and state law, or (2) requiring compliance with state law would "stand [ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 1031. There is no conflict in this case;

- Because federal regulations expressly give drug manufacturers not only the power but also the duty to "add or strengthen" warnings beyond the FDA-approved labeling without prior approval by the FDA, it is not impossible both to comply with federal labeling requirements and to give adequate warnings under state law. *Id.* at 1033-35; 21 C.F.R. § 314.70;[3] 21 C.F.R. § 201.80(e).[4] "Thus, it is possible for drug manufacturers to strengthen existing warnings or at least to petition for a strengthening of the warnings. The regulations contemplate this exact situation." *Id.* at 1034;

- Because federal regulations relating to safety surveillance and reporting of adverse drug information (*see* 21 C.F.R. § 314.80 (c)) do not require a drug manufacturer to provide to FDA all safety information relating to a drug that may actually be possessed by the drug manufacturer, common sense dictates that the

---

[2] Congress's only express statement on this issue actually forecloses preemption absent a "direct and positive conflict"; "Nothing in the amendments made by this Act to the Federal Food, Drug, and Cosmetic Act shall be construed as invalidating any provision of State law which would be valid in the absence of such amendments unless there is a direct and positive conflict between such amendments and such provision of state law." Federal Food, Drug, and Cosmetic Act, 76 Stat. 779 (1962).
[3] Noteworthy, 21 C.F.R. § 314.70 was amended on April 8, 2004. Prior to that time, and at all times relevant to the issues in this lawsuit, a drug manufacturer could give an additional warning without notifying the FDA beforehand, but had to file a supplement with the FDA "at the time the applicant makes any kind of change." The current version of this section provides that the manufacturer must file its supplement 30 days prior to distributing a drug containing any such change. 69 Fed. Reg. 18728-01, 18764 (2004).
[4] This regulation was set forth in 21 C.F.R. § 201.57(e) until June 30, 2006, at which time it was recodified as 21 C.F.R. § 201.80(e). Most of the case law on preemption of prescription drug cases refers to 21 C.F.R. § 201.57(e).

2

FDA does not possess all the safety information that is enjoyed by the manufacturer. More importantly, the FDA does not dictate to drug manufacturers how to conduct safety surveillance and each manufacturer is left to determine the development and execution of its own safety surveillance procedures (*see* 21 C.F.R. § 314.80(b)). Consequently, a claim that Defendants failed to act upon pharmacovigilance obligations is not preempted.

- Likewise, it can hardly be "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" to hold a drug manufacturer liable under state law for not adding or strengthening a warning when appropriate to do so. *Id.* Federal regulation of prescription drugs is set up to function in exactly this manner, and "[t]he full purpose and objective of the regulations necessarily includes the notion that drug manufacturers must exercise their own judgment in deciding when to strengthen a warning prior to FDA approval." *Caraker*, 172 F. Supp. 2d at 1037

- The FDA's assertion, in its 2006 Preamble to the Final Rule entitled "Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products," 71 Fed. Reg. 3922, 3936 ("Preamble"), sets forth that "'FDA approval of labeling under the [federal Food, Drug and Cosmetic] act . . . preempts conflicting or contrary State law." *Id.* However, the Preamble is contrary to previous FDA policy statements and should not be accorded deference. In addition, the Preamble is predicated upon the FDA having actually considered and come to some conclusion of the question at hand.

- Where the FDA has not made a specific determination that a warning was unsupported by scientific evidence in conflict with a plaintiff's claims, there is no preemption. *In Re: Bextra and Celebrex Marketing Sales Practices and Prods. Liab. Litig.*, 2006 U.S. Dist. LEXIS 63493 (N.D. Cal. 2006).

Applying these principles to this case, Defendants' preemption arguments must fail. First, Defendants maintain that the FDA reviewed and concluded there is no increased risk of suicidal behavior associated with Neurontin. This is wrong as there is no credible evidence that the FDA considered and concluded there was no increased risk of suicide with the use of Neurontin. Even if this Court finds there was such a review, it was done only in the context of the approved indications and does not apply to off-label uses for which Plaintiffs ingested Neurontin.

Second, Plaintiffs' common law negligence and state statutory claims complement and

"parallel" rather than conflict with actions that may be taken by the FDA. In this regard, Defendants failed to act upon their common law and state statutory pharmacovigilance obligations; failed to comply with FDA regulations under 21 C.F.R. §§ 314.80, 314.70 and 201, and the certification signed by Defendants on FDA Form 356h accompanying all submissions to the FDA was inaccurate. There is simply no evidence of a "direct and positive conflict" between Plaintiffs' claims in this case and federal law with respect to the required labeling for Neurontin. Therefore, Defendants' motion for summary judgment should be denied.

    **B.**    **Defendants Failed to Warn Consumers and Medical Providers of a Serious Health Hazard; Defendants Knew or Should Have Known of Reasonable Evidence of an Association of Psychiatric Adverse Events, Iincluding Depression and Suicidality, With Neurontin Use.**

Defendants' labeling for Neurontin is inadequate. Defendants have already pled guilty to the "introduction into interstate commerce of a misbranded drug by reason of the drug being <u>inadequately</u> labeled for off-label uses and for introduction of an unapproved new drug into interstate commerce . . . ." *See* Warner-Lambert guilty plea, Pls.' Ex. 2. Defendants must shoulder responsibility for their unethical, illegal acts, and their failure to take appropriate action to inform patients and physicians about important safety information related to off-label uses for which Defendants admittedly intended physicians to prescribe and patients to ingest Neurontin.[5]

This Court should reject Defendants' argument that they had no duty to warn of suicide risks because they did not know of any such risk until the FDA 2008 Alert. Defendants have possessed evidence since even before their 1992 New Drug Application for Neurontin's epilepsy indication that Neurontin was associated with mood and behavioral disturbances, including

---

[5] The Court's attention is respectfully referenced to Plaintiffs' expert, Dan Brock, Ph.D., who has opined as to the unethical actions taken by Defendants by intentionally marketing and promoting a drug for off-label uses despite the risks of suicidality and lack of efficacy. Pls.' Ex. 3. Plaintiffs' expert, Charles King III, has opined that Defendants' off-label marketing of Neurontin, even in the absence of direct contact by a company sales representative, <u>indirectly</u> influenced all, or substantially, all physicians prescribing Neurontin. Pls.' Ex. 4, at pp. 52-53, ¶¶ 98-103.

4