UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------ x
:
In re: NEURONTIN MARKETING, SALES PRACTICES, :
AND PRODUCTS LIABILITY LITIGATION :
: MDL Docket No. 1629
------------------------------------------------ x
: Master File No. 04-10981
THIS DOCUMENT RELATES TO: :
: Judge Patti B. Saris
------------------------------------------------ x
: Magistrate Judge Leo T.
HARDEN MANUFACTURING CORPORATION; : Sorokin
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, :
dba BLUECROSS/BLUESHIELD OF LOUISIANA; :
INTERNATIONAL UNION OF OPERATING ENGINEERS, :
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and :
LORRAINE KOPA, on behalf of themselves and all others :
similarly situated, v. PFIZER INC. and WARNER-LAMBERT :
COMPANY. :
:
------------------------------------------------ x
:
THE GUARDIAN LIFE INSURANCE COMPANY OF :
AMERICA v. PFIZER INC. and AETNA, INC. v. PFIZER INC. :
:
------------------------------------------------ x

**DECLARATION OF DAVID B. CHAFFIN IN SUPPORT OF DEFENDANTS'
EMERGENCY MOTION FOR SANCTIONS FOR FAILURE TO OBEY COURT
ORDER REQUIRING PLAINTIFFS TO RESPOND TO INTERROGATORIES**

I, David B. Chaffin, declare, under the penalties of perjury, as follows:

1. I am a member of the bar of this Court. I am co-counsel for defendants.

2. I make this declaration in support of the emergency motion of defendants, Pfizer Inc. and Warner-Lambert Company, for sanctions pursuant to Rule 37(b) of the Federal Rules of Civil Procedure based on the failure of Coordinated Plaintiffs, The Guardian Life Insurance Company of America ("Guardian"), Aetna, Inc. ("Aetna"), Kaiser Foundation Hospitals and

Kaiser Foundation Health Plan, Inc. (together, "Kaiser"), and third party payer Class Plaintiffs, Harden Manufacturing Corporation, Louisiana Health Services Indemnity Company, and ASEA/AFSCME Local 52 Health Benefits Trust, to comply with the Court's October 11, 2007 Order requiring them to respond to interrogatories two through eight of defendants' second set of interrogatories (the "Interrogatories").

3. On August 1, 2008, Kaiser, Aetna, and Guardian served nearly identical sets of supplemental responses to the Interrogatories.

4. A true and correct copy of Kaiser's supplemental responses is attached hereto as Exhibit A.

5. A true and correct copy of Aetna's supplemental responses is attached hereto as Exhibit B.

6. A true and correct copy of Guardian's supplemental responses is attached hereto as Exhibit C.

7. The third party payer class plaintiffs representing a purported class of third party payers failed to serve any responses to the interrogatories.

8. With their supplemental responses to the Interrogatories, Kaiser produced one compact disc and Aetna produced two compact discs. The discs contain spreadsheets and databases, described more fully below, that were prepared specifically for the purpose of responding to the Interrogatories.

9. Guardian has yet to produce any such spreadsheets or databases or other data or documentation, despite the fact that its responses refer to such data.

10. On the disc produced by Kaiser are two types of tables or lists. First, Kaiser produced a list (and a summary table) showing the numbers of prescriptions of 21 drugs for

which Kaiser apparently paid reimbursement during various periods, and the amounts paid in reimbursement for these prescriptions. Not provided is any explanation for why data as to the 20 drugs other than Neurontin are provided. Dosage information is not provided. Prescription duration information is not provided. NDC codes are not provided. No information concerning the indications associated with the prescriptions is provided. A true and correct copy of an excerpt from this list is attached hereto as Exhibit D.

11. The second type of lists produced by Kaiser appear to show, for members who were prescribed Neurontin (although this is not expressly stated), the number, if any, of prescriptions of 17 other drugs for which the member sought reimbursement during various periods. Only details are provided (the data are provided on a member-by-member basis). Not provided is any explanation for why data as to these 17 (as opposed to 20, for example) drugs are provided. Dosage information is not provided. Prescription duration information is not provided. NDC codes are not provided. No information concerning the indications associated with the prescriptions is provided. Reimbursement amounts are not provided. A true and correct copy of an excerpt from one of these lists is attached hereto as Exhibit E.

12. On the discs provided by Aetna are three types of lists. The first are lists that show, on a member-by-member basis, for selected members, individual prescriptions for which Aetna paid reimbursement, as well as the amount of the reimbursement. Why information as to these selected members is provided is not explained. These lists cover literally dozens of drugs and medicals supplies, many or most of which have no conceivable relevance to this case, such as antibiotics and diabetes test strips. Dosage information is not provided. Prescription duration information is not provided. No information concerning the indications associated with the prescriptions is provided (other than that which can be readily inferred based on the drug or

supplies, e.g., diabetes strips). A true and correct copy of an excerpt from one of these lists is attached hereto as Exhibit F.

13. The second type of lists produced by Aetna show, for certain selected members, the number of prescriptions of numerous drugs for which reimbursement apparently was paid and the total amount of the reimbursement. Why data as to these members in particular is provided is not explained. The lists cover literally dozens of drugs that have no conceivable relevance to this case, such as Glucotorol XL and Retin-A. Dosage information is not provided. Prescription duration information is not provided. NDC codes are not provided. No information concerning the indications associated with the prescriptions is provided (other than that which can be readily inferred). A true and correct copy of an excerpt from one of these lists is attached hereto as Exhibit G.

14. The third type of lists produced by Aetna show, for certain selected members, the number of prescriptions of numerous drugs. Why data as to these specific members is provided is not explained. The list covers literally dozens of drugs that have no conceivable relevance to this case, such as tetracycline and paregoric liquid. Dosage information is not provided. Prescription duration information is not provided. Cost information is not provided. No information concerning the indications associated with the prescriptions is provided (other than that which can be readily inferred). Notably, Aetna provided no summary data at all, even as to "costs." A true and correct copy of an excerpt from one of these lists is attached hereto as Exhibit H.

15. Plaintiffs served 11 expert reports. I have reviewed them for references to "cheaper and more optimal" alternatives to Neurontin for the relevant off-label uses, and I have found none.

16. Three of the eleven experts whom plaintiffs have identified discuss, in one form or another, a few drugs that are apparently used for some of the same off-label uses as Neurontin. (*See* Docket # 1378 at 3 (disclosing expert reports of Jeffrey S. Barkin, M.D., Douglas C. McCrory, M.D., M.H.Sc., and Thomas L. Perry, M.D., FRCPC).)

17. Dr. Perry opines that opioids like morphine and methadone are more effective than Neurontin for neuropathic and other pain, but he does not opine that they are "more optimal" than Neurontin. In fact, this alleged expert acknowledges the "well known" "disadvantages" of opioids, including "the risk of respiratory depression," somnolence or mental impairment, and confusion/delirium. He also indicates that it is possible, but not proven, that tricyclic antidepressants may be more effective than Neurontin, but acknowledges that they have serious side effects.

18. Dr. McCrory opines that the controlled trials of Neurontin fail "to consistently or convincingly demonstrate that [Neurontin] is effective for migraine prophylaxis." He also says that the effect of Neurontin is "lower than that of other approved or widely used migraine prophylactic drugs." He identifies seven such drugs, acknowledging that two are not "licensed" in the United States. He does not discuss side effects. He does not address relative cost. He does not purport to opine that these other drugs are "cheaper and more optimal" than Neurontin.

19. Dr. Barkin opines that the scientific evidence fails to show that Neurontin has any efficacy over placebo in the treatment of bipolar disorder. While acknowledging that "an ideal mood stabilizer (i.e., a drug that is effective across all phases of bipolar disorder) does not exist, this expert identifies ten drugs that he says have "documented efficacy" in the treatment of aspects of bipolar disorder. He does not discuss side effects or relative cost or express the opinion that these drugs are "cheaper and more optimal" than Neurontin.

SIGNED UNDER THE PENALTIES OF PERJURY
THIS 28TH DAY OF AUGUST, 2008

/s/David B. Chaffin
David B. Chaffin

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on August 28, 2008.

/s/David B. Chaffin
David B. Chaffin