UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                          :
In re:  NEURONTIN MARKETING, SALES PRACTICES,             :
        AND PRODUCTS LIABILITY LITIGATION                 :
                                                          :     MDL Dkt No. 1629
- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                          :     Master File No. 04-10981
THIS DOCUMENT RELATES TO:                                 :
                                                          :     Judge Patti B. Saris
- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                          :     Magistrate Judge Leo T.
HARDEN MANUFACTURING CORPORATION;                         :     Sorokin
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,               :
dba BLUECROSS/BLUESHIELD OF LOUISIANA;                    :
INTERNATIONAL UNION OF OPERATING ENGINEERS,               :
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL              :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and               :
LORRAINE KOPA, on behalf of themselves and all            :
others similarly situated, v. PFIZER INC. and WARNER-     :
LAMBERT COMPANY.                                          :
                                                          :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                          :
THE GUARDIAN LIFE INSURANCE COMPANY OF                    :
AMERICA v. PFIZER INC., and AETNA, INC. v. PFIZER INC.    :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
```

**MEMORANDUM IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION
FOR SANCTIONS FOR FAILURE TO OBEY COURT ORDER REQUIRING
<u>PLAINTIFFS TO RESPOND TO INTERROGATORIES</u>**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

HARE & CHAFFIN
160 Federal Street
Boston, MA 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc.
and Warner-Lambert Company*

Defendants Pfizer Inc. and Warner-Lambert Company submit this memorandum in support of their emergency motion for sanctions pursuant to Rule 37(b) of the Federal Rules of Civil Procedure based on the failure of Coordinated Plaintiffs, The Guardian Life Insurance Company of America ("Guardian"), Aetna, Inc. ("Aetna"), Kaiser Foundation Hospitals and Kaiser Foundation Health Plan, Inc. (together, "Kaiser"), and third party payer Class Plaintiffs, Harden Manufacturing Corporation, Louisiana Health Services Indemnity Company, and ASEA/AFSCME Local 52 Health Benefits Trust to obey the Court's October 11, 2007 Order requiring them to respond to interrogatories two through eight of defendants' second set of interrogatories (the "Interrogatories").

## PRELIMINARY STATEMENT

The Interrogatories, served over 17 months ago, seek information concerning plaintiffs' core claim that there were "cheaper and more optimal" alternatives to Neurontin for the relevant indications.  Twice, the Court has ordered plaintiffs to respond to the Interrogatories.  (Dkt # 771 (Discovery Order No. 12, June 25, 2007 ("June 25, 2007 Order")) at 2–5; Dkt # 902 (Addendum to Discovery Order No. 14, October 11, 2007 ("Oct. 11, 2007 Order")) at 1–2.)  The second order could not be more clear: "Plaintiffs must provide to the Defendants the information sought by the Interrogatories . . . ."  (Oct. 11, 2007 Order at 2.)

Based on plaintiffs' claims that they could not identify the alleged "cheaper and more optimal" alternatives without the assistance of experts—claims that beg the question whether there was a good-faith basis for the relevant allegations in plaintiffs' complaints—the Court granted plaintiffs until the expert disclosure deadline to respond to the Interrogatories.  (Dkt # 902 at 2.)  On August 1, Kaiser, Aetna, and Guardian served nearly identical sets of supplemental responses to the Interrogatories.  (Declaration of David B. Chaffin in Support of Defendants' Emergency Motion for Sanctions for Failure To Obey Court Order Requiring Plaintiffs To Respond to

Interrogatories, Aug. 26, 2008 ("Chaffin Decl.") Exs. A, B, C.) With the supplemental responses, Kaiser and Aetna produced a disc or discs that contain spreadsheets and databases that were prepared specifically for the purpose of responding to the Interrogatories. (Chaffin Decl. ¶ 8.) The third party payer class plaintiffs representing a purported class of third party payers failed to serve any responses to the interrogatories.[1]

 The supplemental responses of the Coordinated Plaintiffs are entirely insufficient, and the complete failure of the class plaintiffs to respond is unacceptable. The "information sought by the Interrogatories" that plaintiffs "must provide," (Oct. 11, 2007 Order at 2) includes, at a bare minimum, the precise identification of the alleged "cheaper and more optimal" alternatives and descriptions of the methods by which these alleged alternatives had been identified by plaintiffs. Accordingly, the supplemental responses should contain at least simple lists of the alleged "cheaper and more optimal" alternatives, along with descriptions of the method by which these alleged alternatives were identified. They do not. They are, in fact, little more than compilations of improper objections; improper referrals to non-responsive masses of data, expert reports, and undefined "prior discovery"; and outright refusals to provide information in contravention of multiple court orders. Despite the passage of 17 months and the entry of two orders, not one of the third party payer plaintiffs has provided even the most basic information the Interrogatories seek.

 Because they had flouted the June 25, 2007 Order, plaintiffs were already on thin ice at this time last year. But the Court took them at their word that they needed expert assistance and gave them many months to obtain such assistance and provide responses. At the same time, the Court made clear that plaintiffs were to provide the information the Interrogatories seek. Plaintiffs have

---

[1] Defendants and Class Plaintiffs have been attempting to reach agreement on a stipulation that would address the ramifications of Class Plaintiffs' complete failure to respond to the Interrogatories. The efforts have not been successful thus far. The efforts will continue. If an agreement is reached, defendants will withdraw this motion as to Class Plaintiffs.

repaid the Court by taking every single day it granted them but ignoring its instructions. As a result, defendants still do not know the basis for and details of plaintiffs' "cheaper and more optimal" theory. Defendants' experts, whose own reports are due soon under the current schedule, cannot even begin to evaluate the theory. The prejudice is immediate and substantial.

Plaintiffs' violation of the Oct. 11, 2007 Order is but the latest chapter in an ongoing saga of evasion. Plaintiffs had every opportunity and a clear obligation to articulate and to produce the basis for their theory. They chose not to avail themselves of these opportunities or to meet their obligations. They should be sanctioned pursuant to Rule 37(b), and the only appropriate sanction, short of dismissal, is preclusion. Because plaintiffs have rendered defendants unable to mount a defense to their theory, it is only fitting that they be precluded from pursuing any claims based on it.

## FACTS AND BACKGROUND

### I.     The Interrogatories, Motions To Compel, and Court Orders

On March 13, 2007, defendants served on each of the Coordinated Plaintiffs and the third party payer Class Plaintiffs a set of eight interrogatories (the "Interrogatories") designed to elicit information concerning a critical allegation by plaintiffs—that there are "cheaper and more optimal" alternatives to Neurontin for the relevant indications. Plaintiffs did not respond to the interrogatories, so defendants were forced to move to compel. (Dkt # 753.) On June 25, 2007, the Court ordered plaintiffs to respond by July 30, 2007. (Dkt # 771.)

At that point, plaintiffs had two, and only two, options—comply with the June 25, 2007 order or move for a stay of the effect of the order. They could not merely file objections, for the filing of objections does not stay a discovery order's effect. Rules for United States Magistrate

Judges, Rule 2. Plaintiffs chose neither proper option. Instead, they filed objections, hoping, undoubtedly, that their contempt would go unnoticed.[2] (Dkt # 794.)

Defendants, however, did notice, and filed a second motion to compel, pointing out plaintiffs' violation of the June 25, 2007 Order. (Dkt # 847.) On October 11, 2007, the Court granted defendants' second motion, ruling that plaintiffs "must provide to the Defendants the information sought by the Interrogatories . . . ." (Dkt # 902 at 2.) The Oct. 11, 2007 Order did contain some good news for plaintiffs: Plaintiffs had represented that they could not identify the "cheaper and more optimal" alternatives without expert assistance, and they urged the Court to permit them not to respond to the interrogatories until the deadline for plaintiffs' expert disclosures. The Court accepted plaintiffs' representations and gave them until the expert disclosure deadline. (Dkt # 902 at 2.)

## II.     The Insufficient Supplemental Responses

On August 1, 2008, the Coordinated Plaintiffs served three nearly identical sets of supplemental responses to the Interrogatories. (Chaffin Decl., Exs. A, B, C.) With them, Kaiser and Aetna produced a disc or discs that contain spreadsheets and databases that were prepared specifically for the purpose of responding to the Interrogatories. (Chaffin Decl. ¶ 8.) Guardian has yet to produce any such spreadsheets or databases or other data or documentation despite the fact that its responses refer to such data. (Chaffin Decl. ¶ 9.)

### A.     The Defects In Form

The supplemental responses are defective in form. Rule 33(b)(3) requires that answers to interrogatories be under oath. The supplemental responses are not under oath. (Chaffin Decl., Exs. A, B, C.)

---

[2]     Judge Saris eventually overruled plaintiffs' objections in their entirety. (Electronic Endorsement, Oct. 3, 2007.)

B.    **The Substantive Deficiencies**

1.    **The Improper Preliminary Statement And General Objections**

Setting the tone for the responses that follow, each set of supplemental responses begins

with the same "Preliminary Statement," three numbered paragraphs of inappropriate qualifications.

There follow, in each set, the same 18 "General Objections," some of which directly conflict with

the Court's orders.  For example, each objects to the Interrogatories

> as overly broad to the extent it seeks information relating to pharmaceutical
> products other than Neurontin, or seeks other information having nothing to do
> with the subject matter of the Complaint on the ground that such requests purport to
> call for information that is neither relevant to this action nor likely to lead to the
> discovery of admissible evidence.  Plaintiff will only disclose information
> regarding Neurontin.

(Chaffin Decl., Ex. A at 3–4, Ex. B at 3, Ex. C at 4.)  Given that the Court has twice ruled that

defendants are entitled to the information the Interrogatories seek and that the Interrogatories

necessarily and properly seek information concerning other pharmaceuticals, this objection is utter

nonsense.  The other general objections are equally flawed.

2.    **The Insufficient Responses To Interrogatory No. 2**

Interrogatory No. 2 provides:

> For each off-label use identified in response to Interrogatory No. 1, state,
> for each calendar year of the proposed Class Period, the name, dosage, NDC
> number, and cost to you of each drug that you contend would have been cheaper
> and more optimal than Neurontin in treating that condition.  Describe how you
> identified these alternative drugs and how you arrived at these figures.

(Chaffin Decl., Ex. A at 6.)  Kaiser's entire supplemental response to this interrogatory is:

> Plaintiff objects to this Interrogatory insofar as it seeks protected health
> information that is insulated from disclosure by federal, state or local law
> governing disclosure of confidential patient prescription information, including,
> but not limited to HIPAA.  In addition, Kaiser objects to this Interrogatory to the
> extent that it calls for expert testimony.  Without waiver of the foregoing objections,
> and subject to its right to supplement this response, Kaiser is producing quarterly
> data detailing its costs for certain less expensive therapeutic alternatives for which
> it paid.  Kaiser has no data, and hence will provide none, for less expensive
> therapeutic alternatives that were available over-the-counter without a prescription

> because Kaiser would not have paid for any non-prescription drug that would have
> been taken. These less expensive alternatives have been identified in discovery
> produced to date and/or in expert reports.

(Chaffin Decl., Ex. A at 6–7.) Aetna and Guardian's supplemental responses to this interrogatory

are identical in substance to Kaiser's, and they differ little in form, although Guardian indicates

that its data is forthcoming. (Chaffin Decl., Ex. B at 6–7, Ex. C at 6–7.) Guardian has still not

produced any data, three weeks later. (Chaffin Decl. ¶ 9.)

These responses are insufficient. First, plaintiffs' objection based on confidentiality is

improper, for the Court previously rejected it. (Dkt # 771 at 2–5.) Second, the objection that the

interrogatory seeks expert testimony not only has no basis in law (for it is perfectly appropriate to

seek expert-based information via an interrogatory), it is inconsistent with plaintiffs'

representations that they needed expert assistance in order to respond to the Interrogatories and

would respond after they had obtained that assistance and with the reference in the responses to

expert reports. Third, plaintiffs' refusal to provide any information concerning over-the-counter

alternatives is improper because, from all that appears, they continue to contend that there are

over-the-counter alternatives.

Overshadowing these flaws is the fundamental failure of the responses to provide the

information the interrogatory seeks. The responses do not identify the alleged "cheaper and more

optimal" alternatives to Neurontin for each of the relevant indications, nor do they, of course,

explain how plaintiffs identified such alleged alternatives. They also do not contain, as to each

such alternative, for each relevant year, the dosage, NDC number, and cost. Nor do they describe

how plaintiffs arrived at such figures (because, of course, the figures are not provided).

Plaintiffs seem to suggest that their vague references to data, expert reports, and "prior

discovery" fill these gaping holes. They are obviously incorrect.

The materials to which plaintiffs refer simply do not contain the information Interrogatory No. 1 seeks. There are literally thousands of references to drugs other than Neurontin in the data and "prior discovery," and defendants have no way of knowing which drugs plaintiffs contend are cheaper and more optimal alternatives to Neurontin, let alone for each of the relevant off-label uses:

1.     On the disc Kaiser produced are two types of tables or lists. First, Kaiser produced a list (and a summary table) showing the numbers of prescriptions of 21 drugs for which Kaiser apparently paid reimbursement during various periods, and the amounts paid in reimbursement for these prescriptions. Not provided is any explanation for why data as to the 20 drugs other than Neurontin are provided. Dosage information is not provided. Prescription duration information is not provided. NDC codes are not provided. No information concerning the indications associated with the prescriptions is provided. The second type of lists appear to show, for members who were prescribed Neurontin (although this is not expressly stated), the number, if any, of prescriptions of 17 other drugs for which the member sought reimbursement during various periods. Only details are provided (the data are provided on a member-by-member basis). Not provided is any explanation for why data as to these 17 (as opposed to 20, for example) drugs are provided. Dosage information is not provided. Prescription duration information is not provided. NDC codes are not provided. No information concerning the indications associated with the rescriptions is provided. Reimbursement amounts are not provided. (Chaffin Decl. ¶¶ 10–11, Exs. D, E.)

2.     On the discs Aetna provided are three types of lists. The first are lists that show, on a member by member basis, for selected members, individual prescriptions for which Aetna paid reimbursement, as well as the amount of the reimbursement. Why information as to these selected members is provided is not explained. These lists cover literally dozens of drugs and medicals supplies, many or most of which have no conceivable relevance to this case, such as antibiotics and

diabetes test strips. Dosage information is not provided. Prescription duration information is not provided. No information concerning the indications associated with the prescriptions is provided (other than that which can be readily inferred based on the drug or supplies, e.g., diabetes strips). The second are lists that show, for certain selected members, the number of prescriptions of numerous drugs for which reimbursement apparently was paid and the total amount of the reimbursement. Why data as to these members in particular is provided is not explained. The lists cover literally dozens of drugs that have no conceivable relevance to this case, such as Glucotorol XL and Retin-A. Dosage information is not provided. Prescription duration information is not provided. NDC codes are not provided. No information concerning the indications associated with the prescriptions is provided (other than that which can be readily inferred). The third are lists that show, for certain selected members, the number of prescriptions of numerous drugs. Why data as to these specific members is provided is not explained. The list covers literally dozens of drugs that have no conceivable relevance to this case, such as tetracycline and paregoric liquid. Dosage information is not provided. Prescription duration information is not provided. Cost information is not provided. No information concerning the indications associated with the prescriptions is provided (other than that which can be readily inferred). Notably, Aetna provided no summary data at all, even as to "costs." (Chaffin Decl. ¶¶ 12–14, Exs. F-H.)

3.     None of the expert reports identify "cheaper and more optimal" alternatives for the relevant off-label uses. Three of the eleven[3] experts whom plaintiffs have identified discuss, in one form or another, a few drugs that are apparently used for some of the same off-label uses as Neurontin. (*See* Chaffin Decl. ¶¶ 15–19.) One opines that opioids like morphine and methadone are more effective than Neurontin for neuropathic and other pain, but he does not opine that they

---

[3]     The Court will note that defendants were forced to examine all eleven reports (some in more detail than others), which nearly fill a box, to determine which of the experts, if any, had spoken about alternatives.

are "more optimal" than Neurontin.[4] (Indeed, none of plaintiffs' experts uses the phrase "cheaper and more optimal.") In fact, this alleged expert acknowledges the "well known" "disadvantages" of opioids, including "the risk of respiratory depression," somnolence or mental impairment, and confusion/delirium. He also indicates that it is possible, but not proven, that tricyclic antidepressants may be more effective than Neurontin, but acknowledges that they have serious side effects. Another opines that the controlled trials of Neurontin fail "to consistently or convincingly demonstrate that [Neurontin] is effective for migraine prophylaxis." He also says that the effect of Neurontin is "lower than that of other approved or widely used migraine prophylactic drugs." He identifies seven such drugs, acknowledging that two are not "licensed" in the United States. He does not discuss side effects. He does not address relative cost. He does not purport to opine that these other drugs are "cheaper and more optimal" than Neurontin. The third opines that the scientific evidence fails to show that Neurontin has any efficacy over placebo in the treatment of bipolar disorder. While acknowledging that "an ideal mood stabilizer" (i.e., a drug that is effective across all phases of bipolar disorder) does not exist, this expert identifies ten drugs that he says have "documented efficacy" in the treatment of aspects of bipolar disorder. He does not discuss side effects or relative cost or express the opinion that these drugs are "cheaper and more optimal" than Neurontin. (Chaffin Decl. ¶¶ 15–19.)

Even if defendants were inclined or required to attempt to extract the information that Interrogatory No. 2 seeks from this mass[5] of spreadsheets, databases, and expert reports, they could not do so. In the first instance, nowhere in this mass is there a clear statement of *plaintiffs'*

---

[4]    One has to wonder whether plaintiffs' evasion is due to reluctance to take the public position that, for example, opiates such as methadone are preferable to Neurontin.

[5]    A document management firm employed by defendants advised defendants' counsel that the contents of the discs produced by plaintiffs, if printed, would generate approximately 400,000 pages.

views as to the identity of the drugs that allegedly are "cheaper and more optimal" alternatives to Neurontin. Nowhere do plaintiffs themselves identify, under oath or otherwise, the drugs that they consider to be cheaper and more optimal. To be sure, plaintiffs' experts have said that certain drugs are more effective than Neurontin for certain indications, but it is not clear (particularly considering side effects, drug interactions and safety issues) that any of these drugs are "more optimal" than Neurontin, much less that they are so for all class members, and the experts do not address cost at all.[6] The experts' opinions are no substitute for sworn statements by plaintiffs, and even if they were, the experts do not reach the actual issue—whether the alternatives are "cheaper and more optimal."

Because plaintiffs nowhere identify the drugs that they consider "cheaper and more optimal" alternatives, also lacking from this mass of spreadsheets, databases, and expert reports is the required description of how plaintiffs identified the alleged alternatives. Nor is there anywhere in this mass of spreadsheets, databases, and expert reports the information as to dosages or, in the case of Kaiser, the NDC codes that Interrogatory No. 2 seeks.

Further, there are inconsistencies between the expert reports and the data that badly confuse the issue. If plaintiffs mean to suggest that the drugs their experts have identified are the "cheaper and more optimal alternatives" (and one would not know this because plaintiffs do not say it), one would expect that the prescription cost and other data plaintiffs have provided would relate only to Neurontin and the drugs the experts have identified. But they do not. Plaintiffs have provided prescription cost and other data for many other drugs, leaving defendants to wonder (because plaintiffs have not said otherwise), whether the other drugs for which cost and other data

---

[6]    To determine whether one drug is cheaper than another, dosage and/or duration data are required. For example, it would not be enough to know only that plaintiffs paid, say, $10 for a single prescription for Neurontin and, say, $15 for a single prescription for methadone. To compare costs, one would also have to know the dosage and/or duration of the two prescriptions. Plaintiffs have not provided dosage and duration data.

are provided also are considered to be "cheaper and more optimal" alternatives to Neurontin. Stated differently, if plaintiffs' position were that the experts have identified the alternatives that are more "optimal," then one would expect the cost and prescription data produced by plaintiffs to relate to these alternatives. It does not. Most of the cost and prescription data cover numerous other drugs than the experts identified, except in the case of Kaiser's second type of lists, which cover many fewer drugs than the experts identified. All this leaves defendants to *guess* at the identities of the drugs that plaintiffs consider "cheaper and more optimal" alternatives—the very task which the Interrogatories were intended to avoid.

In summary, (1) plaintiffs' supplemental responses to Interrogatory No. 2 do not, standing alone, contain the information that Interrogatory No. 2 seeks; (2) plaintiffs' apparent attempt to supply the information via reference to extrinsic materials is improper under Rule 33(d); and (3) even assuming plaintiffs' reliance on the extrinsic materials is permissible, the materials do not contain the information Interrogatory No. 2 seeks, and the information they do contain is incomprehensible and conflicting.

### 3.    The Insufficient Responses To Interrogatory No. 3

Interrogatory No. 3 provides:

> For each of your Members who were prescribed Neurontin, state whether s/he also received one or more of the drugs identified in response to Interrogatory No. 2 and state which drug(s) each such Member received. State the dosage and number of prescriptions filled for each alternative drug prescribed to each such Member. Describe how you arrived at these figures.

(Chaffin Decl., Ex. A at 7.) Kaiser's entire supplemental response to this interrogatory is:

> Plaintiff objects to this Interrogatory insofar as it seeks protected health information that is insulated from disclosure by federal, state or local law governing disclosure of confidential patient prescription information, including, but not limited to HIPAA. In addition, Kaiser objects to this Interrogatory to the extent it calls for expert testimony. Without waiver of the foregoing objections, and subject to its right to supplement this response, Kaiser is producing data pulled from its databases containing prescription information that cross-references Neurontin prescription claims data with prescription claims data for the less

11

expensive prescription drugs that are therapeutic alternatives identified in
Interrogatory No. 2. Kaiser has no data, and hence will provide none, for less
expensive therapeutic alternatives that were available over-the-counter without a
prescription because Kaiser would not have paid for any non-prescription drug that
would have been taken.

(Chaffin Decl., Ex. A at 7.) As with Interrogatory No. 2, Aetna and Guardian's responses are

substantively identical to Kaiser's and very similar in form, and Guardian has not yet produced the

referenced data (although it indicates that its data is forthcoming). (Chaffin Decl., Ex. B at 7, Ex.

C at 7.)

These responses also are insufficient. Indeed, because sufficient responses to Interrogatory

No. 3 obviously depend on sufficient responses to Interrogatory No. 2, the supplemental responses

to Interrogatory No. 3 are deficient based solely on the critical shortcomings in the responses to

Interrogatory No. 2. For example, because plaintiffs failed to identify in response to Interrogatory

No. 2 all of the alleged "cheaper and more optimal" alternatives, they could not and did not

respond fully to Interrogatory No. 3, which seeks prescription data for all members who took

Neurontin and also took one of the alleged alternatives. Further, Interrogatory No. 3 seeks dosage

information, but none was provided. It also seeks descriptions of how plaintiffs arrived at the

various figures they were required to provide. Since they did not provide the figures, they did not

provide the required descriptions. Further, the supplemental responses to Interrogatory No. 3

contain the same improper confidentiality and "expert testimony" objections that appear in the

supplemental response to Interrogatory No. 2. Again, plaintiffs cannot object based on

confidentiality, and they cannot object that the interrogatories seek "expert testimony."

### 4.    The Insufficient Response To Interrogatory No. 4

Interrogatory No. 4 provides:

> For each calendar year of the proposed Class Period, state the number and percentage of your Members who were prescribed Neurontin and who also were prescribed at least one of the drugs identified in response to Interrogatory No. 2. Describe how you arrived at this figure.

(Chaffin Decl., Ex. A at 7.) Kaiser's entire supplemental response to this interrogatory is:

> Plaintiff objects to this Interrogatory insofar as it seeks protected health information that is insulated from disclosure by federal, state or local law governing disclosure of confidential patient prescription information, including, but not limited to HIPAA. Furthermore, to the extent this Interrogatory calls for medical records, Plaintiff objects on the ground that the Court has ruled Kaiser is not required to produce such information. In addition, Kaiser objects to this Interrogatory to the extent it calls for expert testimony. Without waiver of the foregoing objections, and subject to its right to supplement this response, Kaiser responds that based on the information and the data produced in response to Interrogatory No. 3, Defendants are able to calculate the information sought in this Interrogatory. Kaiser has no data, and hence will provide none, for less expensive therapeutic alternatives that were available over-the-counter without a prescription because Kaiser would not have paid for any non-prescription drug that would have been taken.

(Chaffin Decl., Ex. A at 8.) As with Interrogatories Nos. 2 and 3, Aetna and Guardian's responses are substantively identical to Kaiser's and very similar in form, and Guardian has not yet produced the referenced data (although it indicates that its data is forthcoming). (Chaffin Decl., Ex. B at 8, Ex. C at 8.)

With one exception, plaintiffs' responses to Interrogatory No. 4 suffer from the same deficiencies that their responses to Interrogatory No. 3 do, and for the same reasons. (The one exception is that the dosage information that Interrogatory No. 3 seeks and that was not provided is not sought by Interrogatory No. 4.) Further, Interrogatory No. 4 requires percentage data, and it was not provided.

13

### 5.    The Insufficient Response To Interrogatory No. 5

Interrogatory No. 5 provides:

> For each calendar year of the proposed Class Period, state the number and percentage of your Members who were prescribed Neurontin and who also were prescribed any other drug approved or commonly used to treat any aspect of bipolar disorder or depression.

(Chaffin Decl., Ex. A at 8.)  Kaiser's entire supplemental response to this interrogatory is:

> Plaintiff objects to this Interrogatory insofar as it seeks protected health information that is insulated from disclosure by federal, state or local law governing disclosure of confidential patient prescription information, including, but not limited to HIPAA.  Furthermore, to the extent this Interrogatory calls for medical records, Plaintiff objects on the ground that the Court has ruled Kaiser is not required to produce such information.  In addition, Kaiser objects to this Interrogatory to the extent that it calls for expert testimony.  Without waiver of the foregoing objections, and subject to its right to supplement this response, Kaiser responds that based on the information and the data produced in response to Interrogatory No. 3, Defendants are able to calculate the information sought in this Interrogatory.  Kaiser has no data, and hence will provide none, for less expensive therapeutic alternatives that were available over-the-counter without a prescription because Kaiser would not have paid for any non-prescription drug that would have been taken.

(Chaffin Decl., Ex. A at 8.)  Aetna and Guardian's supplemental responses to this interrogatory are virtually identical to Kaiser's, although, again, Guardian indicates that its data is to come. (Chaffin Decl., Ex. B at 8–9, Ex. C at 8–9.)

Plaintiffs' supplemental responses to Interrogatory No. 5 suffer from the same deficiencies that their responses to Interrogatory No. 4 do, and for the same reasons, with the exception that the error based on the failure to identify all of the alleged "cheaper and more optimal" alternatives to Neurontin does not apply.  Specifically, plaintiffs raise improper and inapt objections and improperly decline to provide required information, choosing instead to steer defendants to a mass of data and to invite defendants to fend for themselves.  Moreover, Interrogatory No. 5 called for plaintiffs to identify the drugs that are, in their view, also commonly prescribed for bipolar disorder and depression.  Plaintiffs did not do so.

### 6.   The Insufficient Response To Interrogatory No. 6

Interrogatory No. 6 provides:

> For each calendar year of the proposed Class Period, state the number and percentage of your Members who were prescribed Neurontin and who also were prescribed any other drug approved or commonly used to treat any type of neuropathic pain.

(Chaffin Decl., Ex. A at 9.)  Kaiser's entire supplemental response to this interrogatory is:

> Plaintiff objects to this Interrogatory insofar as it seeks protected health information that is insulated from disclosure by federal, state or local law governing disclosure of confidential patient prescription information, including, but not limited to HIPAA.  Furthermore, to the extent this Interrogatory calls for medical records, Plaintiff objects on the ground that the Court has ruled Kaiser is not required to produce such information.  In addition, Kaiser objects to this Interrogatory to the extent it calls for expert testimony.  Without waiver of the foregoing objections, and subject to its right to supplement this response, Kaiser responds that based on the information and the data produced in response to Interrogatory No. 3, Defendants are able to calculate the information sought in this Interrogatory.  Kaiser has no data, and hence will provide none, for less expensive therapeutic alternatives that were available over-the-counter without a prescription because Kaiser would not have paid for any non-prescription drug that would have been taken.

(Chaffin Decl., Ex. A at 9.)  Aetna and Guardian's supplemental responses to this interrogatory are virtually identical to Kaiser's, although, again, Guardian indicates that its data is to come.

(Chaffin Decl., Ex. B at 9–10, Ex. C at 9–10.)

Plaintiffs' supplemental responses to Interrogatory No. 6 are deficient for the same reasons that the supplemental responses to Interrogatory No. 5 are.  As they do in response to Interrogatory No. 5, plaintiffs raise improper and inapt objections and decline to provide required information, choosing instead to steer defendants to a non-responsive mass of data.  Further, Interrogatory No. 6 required plaintiffs to identify the drugs that are, in their view, also commonly prescribed for neuropathic pain.  Plaintiffs did not provide this information.

### 7.    The Insufficient Response To Interrogatory No. 8[7]

Interrogatory No. 8 provides:

> For each calendar year of the proposed Class Period, state the number and percentage of your Members whom you identified in response to more than one of Interrogatories Nos. 5, 6, and 7.

(Chaffin Decl., Ex. A at 10.)  Kaiser's entire supplemental response to this interrogatory is:

> Plaintiff objects to this Interrogatory insofar as it seeks protected health information that is insulated from disclosure by federal, state or local law governing disclosure of confidential patient prescription information, including, but not limited to HIPAA.  Furthermore, to the extent this Interrogatory calls for medical records, Plaintiff objects on the ground that the Court has ruled Kaiser is not required to produce such information.  In addition, Kaiser objects to this Interrogatory to the extent that it calls for expert testimony.  Without waiver of the foregoing objections, and subject to its right to supplement this response, Kaiser responds that based on the information and the data produced in response to Interrogatory No. 3, Defendants are able to calculate the information sought in this Interrogatory.  Kaiser has no data, and hence will provide none, for less expensive therapeutic alternatives that were available over-the-counter without a prescription because Kaiser would not have paid for any non-prescription drug that would have been taken.

(Chaffin Decl., Ex. A at 10.)  Aetna and Guardian's supplemental responses to this interrogatory

are virtually identical to Kaiser's, although, again, Guardian indicates that its data is to come.

(Chaffin Decl., Ex. B at 10–11, Ex. C at 10–11.)

Plaintiffs' supplemental responses to Interrogatory No. 8 are deficient for the same reasons

that the supplemental responses to Interrogatories Nos. 5 and 6 are (the response to Interrogatory

No. 7 being no longer applicable).

---

[7]    Plaintiffs' supplemental responses to Interrogatory No. 7 are sufficient because each of them indicates therein that it is withdrawing claims based on promotion for epilepsy.

## ARGUMENT

## I.    PLAINTIFFS SHOULD BE SANCTIONED FOR FAILING TO OBEY THE OCTOBER 11, 2007 ORDER

Rule 37(b) provides, in pertinent part:

> If a party . . . fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule . . . , the court in which the action is pending may make such orders in regard to the failure as are just, and among the orders the following:
>
> . . .
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

FED. R. CIV. P. 37(b)(2)(B).[8]  Rule 37(b) "requires two things as conditions precedent to engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated, before the enumerated sanctions can be imposed." *R.W. Int'l Co. v. Welch Foods, Inc.*, 937 F.2d 11, 15 (1st Cir. 1991); *accord Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia*, 248 F.3d 29, 33 (1st Cir. 2001).  Where such a finding is made, a court may impose any of the sanctions set forth in Rule 37(b)(2), including preclusion of evidence and dismissal of claims.  *Ortiz-Lopez*, 248 F.3d at 34; *see also Big Top USA, Inc. v. The Wittern Group*, 183 F.R.D. 331, 338 (D. Mass. 1998) (Saris, J.) ("[T]he sanction of dismissal must be available not merely to penalize egregious conduct, but also to deter such conduct.").  Courts consider various factors in determining the appropriate sanction, including:

> (1) the willfulness or bad faith of the noncomplying party; (2) the prejudice to the opposing party; (3) whether the procedural history indicates "protracted inaction or deliberate delay"; (4) the disregard of earlier warnings of the consequences of the misconduct; and (5) the availability of less draconian factors.

---

[8]    The rule also provides for an award of fees "unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2).

*Big Top USA, Inc.*, 183 F.R.D. at 338 (quoting *In re Selected Somersworth Bank Cases*, 148 F.R.D. 1, 4 (D. Me. 1993)).

The Oct. 11, 2007 Order expressly required plaintiffs to provide all of the information sought by the Interrogatories, and it gave them many months to comply. Notwithstanding this unequivocal, specific directive, and even though they had the luxury of time, plaintiffs failed to provide the information the Interrogatories seek. In fact, they have not come close to doing so. They have not even provided the most basic and critical information the Interrogatories seek—the identity of the alleged "cheaper and more optimal" alternatives to Neurontin for the relevant indications. This information appears nowhere in the supplemental responses themselves or in the mass of data and the reports that have been dumped on defendants, ostensibly, but improperly, pursuant to Rule 33(d). Other information the Interrogatories seek has been withheld, hidden behind improper objections, or buried in a blizzard of prescription documentation. Without more, plaintiffs have "fail[ed] to obey an order to provide . . . discovery," FED. R. CIV. P. 37(b), an order that was both crystal clear and the product of extensive motion practice. Sanctions are required.

The sanctions should be severe, for the five factors noted above weigh heavily against plaintiffs. First, the violations were willful. Given the source and origin of the Oct. 11, 2007 Order, plaintiffs, all sophisticated parties represented by competent counsel, knew exactly what was required of them, and they refused to do it. Most striking, plaintiffs had to know that they at least had to identify the alleged "cheaper and more optimal" alternatives to Neurontin and to explain the basis for this allegation, and yet they failed to do so.

Second, defendants have been prejudiced. They have had to move three times in relation to the Interrogatories. More important, defendants have been denied information that is critical to their defense. Defendants still do not know the basis for or any particulars of the theory, and they still do not have the factual information that they intended to use to prepare a response.

18

Defendants' experts, whose reports are due soon, are hamstrung. How can the experts evaluate a theory that has not been fully articulated? How can they respond to a theory the factual underpinnings of which have been withheld?

Third, there has been "protracted inaction or deliberate delay." Plaintiffs refused to respond to the Interrogatories, forcing defendants to move to compel. Plaintiffs opposed the motion, even though they had put the "cheaper and more optimal" alternatives theory in issue. They lost, and the Court ordered them to respond on July 30, 2007. They did not comply, and they did not seek a stay. Instead, they chose the improper tactic of filing objections, forcing defendants to move again. Plaintiffs opposed again, claiming they needed expert assistance and imploring the Court to give them until the expert disclosure deadline to respond. When that date arrived, plaintiffs again violated the Court's Order by serving wholly inadequate responses or failing entirely to respond, thus precipitating this motion.

Fourth, they have disregarded prior warnings. Twice plaintiffs have been ordered to provide the information the Interrogatories seek. The second order was the product of a motion in which defendants demonstrated that plaintiffs were in contempt of the June 25, 2007 order. Not that they or their able counsel needed it, but plaintiffs were warned.

Finally, less draconian measures will not suffice. Plaintiffs have violated orders relating to a key issue, depriving defendants of information critical to their defense. A slap on the wrist will not do. Plaintiffs have been given more chances than they deserve. They should be precluded from making any argument and pursuing claims based on the "cheaper and more optimal" theory.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court issue an Order, on an emergency basis, precluding all plaintiffs from making any argument or pursuing any claims based on the allegation or theory that there were "cheaper and more optimal" alternatives to Neurontin for the relevant off-label uses and awarding defendants their fees and costs associated with this and defendants' prior motions relating to these requests.

Dated: August 28, 2008

Respectfully submitted,

DAVIS POLK & WARDWELL

By:    /s/James P. Rouhandeh
        James P. Rouhandeh

450 Lexington Avenue
New York, NY 10017
Tel:  (212) 450-4000

-and-

HARE & CHAFFIN

By:    /s/David B. Chaffin
        David B. Chaffin

BBO # 549245
160 Federal Street
Boston, MA 02110
Tel:  (617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on August 28, 2008.

/s/ David B. Chaffin
David B. Chaffin