UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO: 1629<br><br>Master File No. 04-10981<br><br>Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO:<br><br>ALL PRODUCTS LIABILITY ACTIONS | |

---

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR AN ORDER MODIFYING CASE MANAGEMENT ORDER NO. 3, AND FOR A PROTECTIVE ORDER

Defendants Pfizer Inc. and Warner-Lambert Company ("Defendants") submit this opposition to Plaintiffs' emergency motion for an order modifying Case Management Order No. 3 and for a protective order regarding the depositions of Dr. Trimble, Charles King, Ph.D., and Dan Brock, Ph.D. in the above-referenced case. The clear language of Discovery Order No. 26 confirms that the opportunity to depose Dr. Brock and Dr. King for the very first time has not elapsed. Neither of these experts offers any opinions on the general causation issue of whether Neurontin can cause suicidality, but instead opine on alleged marketing activities and ethical obligations. Further, Plaintiffs have not carried their burden of demonstrating how these two depositions will result in any prejudice or harm.

Plaintiffs should not be allowed to avoid CMO No. 3, which since 2005 has governed the time limits for depositions in this litigation. Throughout this litigation Defendants

1

have complied with CMO No. 3 by producing over 30 Pfizer and Warner-Lambert witnesses for deposition, nearly all of which lasted at least two days. As explained below, Defendants may need more than seven hours to depose Plaintiffs' case-specific experts regarding the full nature and extent of their opinions, and should not be denied the opportunity to use the time period under CMO No. 3, if needed. Nor have Defendants overreached in their notices of deposition, requesting continuation to a second day only if needed. Accordingly, Defendants respectfully request the Court deny Plaintiffs' motion in its entirety.

## I.     INTRODUCTION

On July 19, 2007, the Court issued Discovery Order No. 13, which, among other things, set forth deadlines for expert discovery regarding general causation issues. (*See* Discovery Order No. 13 (Doc. #801), Ex. 1). Two months later, on September 27, 2007, the Court issued Discovery Order No. 14, which modified the discovery schedule in response to Plaintiffs' repeated disruptions in the management of the MDL. (*See* Discovery Order No. 14 (Doc. #901), Ex. 2). In Discovery Order No. 14, the Court asked counsel for the parties to jointly propose a new schedule for expert discovery and summary judgment in the two Track One cases designated for trial workup (*Smith,* and a case to be selected by defendants, which was *Bulger*).

Counsel conferred and on October 15, 2007, jointly submitted a proposed schedule that would apply to the two designated trial cases in the event the Court ruled in favor of plaintiffs on general causation and preemption matters. (*See* Joint Proposal Regarding Expert Discovery and Summary Judgment in Two Designated Trial Cases (Doc. #906), Ex. 3). The parties' joint scheduling proposal provides, in pertinent part, that "plaintiffs' **non-general causation experts** would be produced for deposition no later than 75 days after the Court's

ruling on general causation and preemption issues." (Emphasis added). The underlying purpose for not taking the depositions of Plaintiffs' non-general causation experts at that time was because *Daubert* motion deadlines were fast approaching and the opinions and testimony of Dr. King and Dr. Brock were not needed for Defendants' general causation *Daubert* motions.

Plaintiffs ultimately designated the following experts to opine on general causation: Dr. Michael Trimble, Dr. Stefan Kruszewski, and Cheryl Blume, Ph.D. These individuals were deposed as contemplated by the parties' joint scheduling proposal. At that time, Defendants did not seek the depositions of Charles King, III, PhD. or Dan W. Brock Ph.D. because neither expert offered any general causation opinions as to whether Neurontin is capable of causing suicidal thinking and behavior.

Inexplicably, at that time, Plaintiffs "preemptively" sent two letters to counsel for Defendants stating that they insisted that Drs. King and Brock be deposed along with plaintiffs' general-causation experts. Defendants' counsel disputed that the non-general-causation experts needed to be deposed at that time and explained, via letter, as follows:

> For the last several weeks now, you have been engaged in a campaign to require defendants to engage in expert discovery beyond the issue of general causation. The fact is that the Court's orders make clear that expert discovery is limited to the issue of general causation, *i.e.*, whether plaintiffs can prove that Neurontin is capable of causing suicide or suicide attempts. All other expert discovery is deferred to a later date.
>
> The assertion in your letter that Drs. Brock and King are general causation experts is frivolous. You previously referred to them repeatedly as sales and marketing experts and only now have begun calling them general causation experts in a blatant and belated effort to fit their reports within the Court's orders. In fact, Dr. King's report is entitled "Marketing of Neurontin" and the Brock report plainly relates to the alleged ethical obligations of Pfizer. Nowhere in either report does King or Brock express the opinion that Neurontin is capable of causing suicide or suicide attempt. Discovery of such sales and marketing experts is plainly deferred under the Court's orders until after a ruling on the general causation issue.

3

3081504v1

(Letter from James P. Rouhandeh, to Kenneth B. Fromson, dated October 25, 2007, Ex. 4).

Two days later Defendants again advised that "to the extent [Plaintiffs] have identified witnesses who either do not opine on general causation, or do not limit their opinions only to general causation, please be on notice that defendants . . . will not depose these witnesses at this time . . . ." (Letter from Lori McGroder, to Kenneth Fromson, dated October 27, 2007, Ex. 5). The letter further noted that "defendants reserve the right to depose plaintiffs' expert witnesses on non-general causation opinions at a later date subject to the provisions of future scheduling orders."[1]

In March 2008, Defendants filed their *Daubert* motions to exclude the general causation opinion testimony of Drs. Trimble, Kruszewski, and Blume. Defendants' motion was (and still is) premised on the contention that Plaintiffs' experts lack reliable and relevant scientific evidence that Neurontin is capable of causing suicide-related events (i.e., general causation).

On June 19 and 20 and July 23, 2008, the Court held a hearing on whether the general causation opinions of Drs. Blume, Trimble, and Kruszewski should be excluded under Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

On June 20, 2008, the Court entered Discovery Order No. 26, which set forth the expert discovery deadlines in *Bulger* and *Smith*. (*See* Discovery Order No. 26 (Doc. #1337), Ex. 6). Discovery Order No. 26 provides that Defendants have until September 22, 2008, to depose Plaintiffs' experts. Subsequently, Defendants conferred with Plaintiffs regarding the depositions of Dr. King (an economist) and Dr. Brock (a philosopher/ethicist). After Plaintiffs refused to

---

[1] Defendants' letter also reserved the right to later depose Plaintiffs' three general causation experts – Drs. Blume, Kruszewksi, and Trimble – on their non-general causation opinions.

provide deposition dates for Drs. King and Brock, Defendants submitted to Plaintiffs notices of deposition for both Drs. King and Brock in accordance with CMO No. 3 and Discovery Order No. 26. Dr. Brock's deposition is noticed for September 16 and 17, 2008, and Dr. King's deposition is noticed for September 18 and 19, 2008.

## II.     STANDARD FOR ISSUANCE OF A PROTECTIVE ORDER

Federal Rule of Civil Procedure 26(c) provides that the court may, "for good cause shown," issue a protective order "to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." "The burden of persuasion is clearly on the party seeking the protective order, which must demonstrate a particular need for protection, not a broad allegation of harm unsubstantiated by specific examples." *J.T. Baker, Inc. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 86, 89 (D.N.J. 1989) (citations omitted). For a party to show good cause, it must demonstrate "that disclosure will work a clearly defined and serious injury, and that the party resisting disclosure will indeed be harmed by disclosure." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F. Supp. 866, 891 (E.D. Pa. 1981) (internal citations and quotations omitted).

## III.    LAW AND ARGUMENT

### A.     The Court Should Require Plaintiffs to Make Dr. King and Dr. Brock Available for Deposition

Plaintiffs argue that their proposed marketing expert and ethics expert are somehow general causation experts who should have been deposed before the filing of Defendants' *Daubert* motions. This claim has no merit. The Reference Manual on Scientific Evidence explains that "general causation is concerned with whether an agent increases the incidence of disease in a group." *See McCalin v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005) (citing Michael D. Green, D. Michal Freedman, & Leon Gordis, Reference

5

Guide on Epidemiology, in Reference Manual on Scientific Evidence 392 (Federal Judicial Center, 2d ed.2000)). The general causation issue in this matter is whether Neurontin is capable of causing suicide-related events.

Plaintiffs' misguided definition of general causation directly contradicts their own prior statements to the Court. For example, on May 13, 2005, Mr. Finkelstein, responding to the Court's question regarding causation in the Neurontin products liability litigation, stated that "It's a two-step analysis, your Honor. It's, first, generically does it have the capability to [cause suicide]? And then, secondarily, did it do it in this case."[2] (Transcript of Scheduling Conference Before the Honorable Patti B. Saris, U.S. District Judge, p. 24 (May 13, 2005), Ex. 7).

Likewise, at a hearing on February 19, 2008, Mr. Finkelstein acknowledged that the "exclusive" general-causation issue is whether Neurontin is capable of causing suicide-related events:

> Mr. Finkelstein: On behalf of the product liability plaintiffs, your Honor, the *Daubert* and general causation, the thrust of our claim from the beginning has been **exclusively** Neurontin's capacity to cause negative mood and behavioral disturbances resulting in suicidality, personal injury cases."
>
> The Court: Right. And so it's the general causation, not specific to each person.
>
> Mr. Finkelstein: Yes.
>
> The Court: But whether or not in fact –
>
> Mr. Finkelstein: The drug has the capacity to do what we allege that it does.

---

[2] Similarly, at a hearing on January 16, 2007, counsel for Defendants, Jim Rouhandeh, explained to the Court that "I think it's pretty clear that the core issue is general causation . . . ." The Court then asked, "general causation?" Mr. Rouhandeh replied, "being is the product capable of causing suicide, the injury's that alleged . . . . I think both sides would agree the core issue is Neurontin capable of causing this issue." (Transcript of Motion Hearing, at pp. 16-17 (January 16, 2007), Ex. 8). Counsel for Plaintiffs never expressed any disagreement with Defendants' counsel's statements.

3081504v1

(Transcript of Motion Hearing Before The Honorable Patti B. Saris, U.S. District Judge, at p. 6. (February 19, 2008) (emphasis added), Ex. 9).[3]

It is uncontested that neither Dr. King nor Dr. Brock provide any opinions regarding whether Neurontin is capable of causing suicide-related events. Indeed, Dr. King holds a J.D. and a Ph.D. in economics. His report is entitled "Marketing of Neurontin" and offers opinions on only alleged marketing related activities, which has no bearing on whether Neurontin "increases the incidence" of suicidal behavior. The same is true for Dr. Brock, whose education and work background is in philosophy and ethics. Dr. Brock's opinions relate solely to the alleged ethical obligations of Pfizer. Indisputably, neither is qualified with the relevant medical and scientific expertise to offer an opinion on general causation, i.e., whether Neurontin is capable of causing suicide-related events. Hence, their depositions were not taken in advance of the filing of Defendants' *Daubert* motions because their opinions are unrelated to the general causation opinions that the *Daubert* motions seek to exclude.

In sum, the plain language of Discovery Order No. 26 makes clear that Plaintiffs must produce their experts by September 22, 2008, including Drs. King and Brock, neither of whom was required to be deposed before the Court's consideration of *Daubert*. Defendants have fully complied with Discovery Order No. 26 by noticing the depositions of Drs. Brock and King prior to the September 22, 2008 deadline. Plaintiffs' refusal to make these experts available or provide alternative dates is without good cause and in violation of the scheduling order. Accordingly, Plaintiffs' motion for protective order should be denied.

---

[3] On September 20, 2007, Plaintiffs again acknowledged that general causation is whether Neurontin can cause suicidality. Specifically, Mr. Fromson stated that "Discovery regarding general causation is complete. It's actually ripe for review. . . . The issue that's now ripe for review is simple, whether Neurontin has the capacity to contribute to mood and behavioral disturbances particularly to suicidal behavior." (Transcript of Motion Hearing Before the Honorable Leo T. Sorokin, U.S. Magistrate Judge, at p. 19 (September 20, 2007), Ex. 10).

3081504v1

### B. Plaintiffs Have Not Carried Their Burden of Proving That The Depositions of Drs. Brock and King Would Cause Any Prejudice

Plaintiffs' motion fails to demonstrate any harm or unfair prejudice that would result from proceeding with legitimate and important expert discovery. Plaintiffs' motion for protective order makes no mention of how the depositions of Dr. Brock and Dr. King would cause any prejudice or harm. Plaintiffs' failure to identify any prospective harm is not surprising given that the two Track One cases – *Smith* and *Bulger* – are in the non-general causation expert discovery phase, and plaintiffs have always known Defendants would seek the depositions of Drs. King and Brock during this phase pursuant to the plain terms of the Court's orders. This is Defendants' <u>first</u> notice of the depositions of Drs. King and Brock. This is not an effort to get a second bite at the apple.

Plaintiffs state that although Dr. Brock is available for deposition all day on September 16, 2008, he has a scheduling conflict the next day. Plaintiffs also note that Dr. King is not available for deposition until October 2008. Throughout this litigation Defendants have been amenable to resolving any scheduling conflicts and will certainly work with Plaintiffs to find more convenient dates for Dr. King's deposition and, to the extent necessary, a second date for Dr. Brock's deposition.[4] Accordingly, the scheduling conflicts noted by Plaintiffs do not constitute any type of prejudice that would justify issuance of a protective order.

### IV. THE COURT SHOULD NOT MODIFY ITS LONG-STANDING CMO NO. 3 REGARDING DEPOSITION TIME LIMITS

Plaintiffs' motion also seeks to modify Case Management Order No. 3 "so as to permit one-day depositions of case-specific experts, absent good cause for a second day." Case Management Order No. 3 provides as follows: "Unless otherwise authorized by the Court or

---

[4] Although Defendants do not object to postponing Dr. King's deposition beyond the September 22 deadline to October 1-2, Defendants request that the Court similarly extend the October 10 deadline for submission of Defendants' expert reports to October 20, 2008.

stipulated to by the parties, depositions shall be limited to two (2) business days of seven (7) hours each by the deposition parties." (CMO No. 3, at p. 5 (Doc. #62), Ex. 11). Plaintiffs' counsel availed themselves of this Order during more than 30 depositions of Defendants' company witnesses, yet now they conveniently seek to change the rules. Plaintiffs' motion on this issue should be denied. As communicated repeatedly to Plaintiffs' counsel, Defendants intend to make every effort to complete the depositions of plaintiffs' experts in one business day. That said, it would severely prejudice Defendants to *a priori* be limited to one seven-hour day, without knowing the full nature and extent of Plaintiffs' experts' opinions in these fact-intensive cases.

According to Plaintiffs' experts' reports, each expert has extensive and far-reaching opinions. Plaintiffs have designated three experts to opine on the issue of specific causation in *Bulger* and *Smith*. The case-specific facts and related expert opinions in these cases are incredibly detailed and premised on enormous amounts of data. For example, the evidence and materials cited by Plaintiffs' designated case-specific experts in each of *Smith* and *Bulger* include many thousands of pages of deposition testimony, medical records, pharmacy prescription records, articles on Neurontin, articles on suicidal behavior, package inserts, and regulatory materials to and from FDA regarding Neurontin. Likewise, Plaintiffs' case-specific expert reports encompass and discuss the complicated medical histories of both plaintiffs, along with the application of dozens of suicide risk factors and reference to dozens of secondary sources. Defendants are clearly entitled to inquire regarding the full nature and extent of these experts' opinions and materials relied upon. To do so may take longer than seven hours. Accordingly, Defendants should not be deprived of the opportunity for a second day provided under CMO No. 3.

3081504v1

## IV. CONCLUSION

Defendants are entitled to depose Drs. Brock and King, neither of whom is a "general causation" expert, and whose depositions are timely per Discovery Order No. 26. In addition, plaintiffs have clearly failed to carry their burden to justify the entry of a protective order pursuant to Fed. R. Civ. P. 26(c). Indeed, Plaintiffs utterly fail to make any showing that the depositions of Drs. Brock and King would cause them *any* harm whatsoever.

Plaintiffs' request to modify CMO 3's long-standing rule regarding deposition time limits – only after they have availed themselves of the benefit of two-day depositions – should also be denied. Defendants should be afforded with the same opportunity Plaintiffs enjoyed in deposing over 30 Pfizer and Warner-Lambert witnesses. Given the breadth of commentary and opinions expressed by Plaintiffs' experts and the massive amount of material on which they purportedly rely on, revision of CMO No. 3's two-day deposition time limit is neither warranted nor appropriate. For these reasons, Defendants respectfully request that the Court enter an order denying Plaintiffs' requested relief.

Dated: August 28, 2008

Respectfully submitted,

DAVIS POLK & WARDWELL

By: /s/James P. Rouhandeh
     James P. Rouhandeh

450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

SHOOK, HARDY & BACON L.L.P.

By: /s/Scott W. Sayler
     Scott W. Sayler

3081504v1

        2555 Grand Blvd.
        Kansas City, MO 64108-2613
        Tel: (816) 474-6550

        -and-

        HARE & CHAFFIN

        By:   /s/David B. Chaffin
                 David B. Chaffin

        160 Federal Street
        Boston, MA 02110
        Tel: (617) 330-5000

        *Attorneys for Defendants Pfizer Inc. and*
        *Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on August 28, 2008.

        /s/ David B. Chaffin

3081504v1