# EXHIBIT 8

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF MASSACHUSETTS

3

4

5

6    IN RE:                          )  C.A. No. 04-10981-PBS
     NEURONTIN MARKETING AND         )
7    SALES PRACTICES LITIGATION      )  Courtroom No. 14
                                     )  1 Courthouse Way
8                                    )  Boston, MA  02210

9

10                        MOTION HEARING

11                      JANUARY 16, 2007

12                           2 p.m.

13

14

15

16

17          BEFORE THE HONORABLE LEO T. SOROKIN

18             UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24                      VALERIE A. O'HARA

25                    OFFICIAL COURT REPORTER

```
 1   Mr. Rouhandeh?

 2            MR. ROUHANDEH:  Yes, a couple points.  One is

 3   Mr. Finkelstein says that their proposal is to select the

 4   cases that are most likely to help the Court or jury resolve

 5   these matters and not some collateral issues.  The problem

 6   with that is we don't agree on what the collateral issues

 7   are.  I think it's pretty clear that the core issue is

 8   general causation, and we think we're entitled to summary

 9   judgment on general causation without any of these specific

10   cases or any discovery going forward.

11            In fact, that was our initial proposal to

12   Mr. Finkelstein, and it's the plaintiffs who thought --

13            THE COURT:  General causation?

14            MR. ROUHANDEH:  Being is the product capable of

15   causing suicide, the injury that's alleged.  That's a common

16   issue.  Yes, we do agree that it might be helpful for the

17   Court to have the benefit of some discovery in some set of

18   cases in looking at that issue, but that's a core issue

19   that's not really plaintiff specific.  The plaintiffs said,

20   well, you know, if you lose that, we don't want to start the

21   whole litigation over and have no discovery done, so we

22   ended up with this compromise, well, while we're doing

23   expert discovery and doing all these other issues and

24   presenting general causation on a summary judgment motion,

25   we'll be making some progress in cases, in some specific
```

1    subset of cases in the event that there's anything left

2    after the summary judgment motion.

3         So --

4         THE COURT:  To my mind in the event that having

5    the complete record or a fuller record as to eight cases and

6    a complete record as to two just helps provides context and

7    informs the Court on summary judgment as sort of to

8    understand all the issues in presenting.

9         MR. ROUHANDEH:  I agree with that.  I think that

10   is helpful to have some, but I guess my point is in terms of

11   what the core issues are beyond that, that's where it breaks

12   down.  I think both sides would agree the core issue is

13   Neurontin capable of causing this injury?  If it's not, game

14   over, the litigation is over and we prevailed on summary

15   judgment effectively in all of the cases.  Then the next set

16   of questions is really whether or not you're getting any

17   agreement between the parties as to what the sort of core

18   issues are, what the collateral issues are.  Their

19   collateral issue might be our defense in the case as to why

20   there shouldn't be a recovery.

21        THE COURT:  In other words, you don't disagree

22   that the core issue is did Neurontin, if they get over the

23   hump on the big issue, you don't disagree that the core

24   issue is did Neurontin cause it in fact, but what you would

25   argue is whether or not it caused it, in fact, is