# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE:                                          )
NEURONTIN MARKETING, SALES PRACTICES ) CA No. 04-10981-PBS
AND PRODUCTS LIABILITY LITIGATION    ) Pages 1 - 51
SALES PRACTICES LITIGATION           )

MOTION HEARING
BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
February 19, 2008, 3:35 p.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617)345-6787

```
 1   cert.  And all this goes in addition -- now, these are two
 2   separate -- I don't know if you are aware of each other's
 3   cases, maybe just a little bit.  So I want to know whether or
 4   not essentially the Daubert kinds of issues are going to be
 5   the same in both cases because I don't want to decide it in
 6   one case and not another case.  I think it should all be done
 7   in tandem, unless there are different issues, and I don't
 8   feel as if I know the cases well enough to make that
 9   assessment.
10            MR. GREENE:  May I address the Court, your Honor?
11            THE COURT:  Yes.
12            MR. GREENE:  Again, for the sales and marketing
13   plaintiffs.  We filed a joint motion with the defense to
14   extend the plaintiff disclosure in the sales and marketing
15   cases, and the motion was drawn up to ask for the Court to
16   allow disclosure 60 days after you rendered your decision on
17   the renewed class cert motion, which is scheduled for a
18   hearing in April.
19            THE COURT:  Well, let me just stop you.  I saw
20   that, and my first instinct was, when you agree, I agree.
21   But the reason I didn't just write "allowed" was because I am
22   going to be deciding soon Daubert issues in the context of
23   the other case, and if they're the same issues, you're not
24   going to want to be out of that loop.  I'm not going to wait
25   till the FDA -- I may allow some supplemental discovery into
```

1  the expert opinions. I'm not waiting until you get data from
2  the FDA. We'll all be old and retired. That isn't to say
3  you can't supplement later on if the data comes in. But I'm
4  moving, I'm moving on the causation issues in the products
5  cases, and I think at least one piece of that is going to be
6  a significant overlap with yours. Is that wrong?
7           MR. FINKELSTEIN: Yes.
8           THE COURT: All right, so talk to me.
9           MR. FINKELSTEIN: On behalf of the product
10 liability plaintiffs, your Honor, the Daubert and general
11 causation, the thrust of our claim from the beginning has
12 been exclusively Neurontin's capacity to cause negative mood
13 and behavioral disturbances resulting in suicidality,
14 personal injury cases.
15          THE COURT: Right. And so it's the general
16 causation, not specific to each person.
17          MR. FINKELSTEIN: Yes.
18          THE COURT: But whether or not in fact --
19          MR. FINKELSTEIN: The drug has the capacity to do
20 what we allege that it does.
21          THE COURT: And that's primarily for people with
22 bipolar? Is that right?
23          MR. FINKELSTEIN: No, not at all. Across the
24 entire spectrum of those who have been prescribed it.
25          THE COURT: Now, so what do you anticipate? Assume