UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>ALL CLASS ACTIONS | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, d/b/a BLUECROSS/BLUESHIELD OF LOUISIANA; UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>PFIZER INC. and WARNER-LAMBERT COMPANY,<br>        Defendants. | |

**CLASS PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION FOR SANCTIONS FOR FAILURE TO OBEY COURT ORDER REQUIRING <u>PLAINTIFFS TO RESPOND TO INTERROGATORIES</u>**

## I. INTRODUCTION

Class Plaintiffs' failure to provide further responses to Defendants' second set of interrogatories (the "Interrogatories") along with their expert reports was not willful, but inadvertent. After Defendants brought the matter to Class Plaintiffs' attention, Class Plaintiffs informed Defendants that they would abandon the theory of damages to which the Interrogatories relate. The parties agreed on the terms of a stipulation accomplishing this, but Defendants reneged on the agreement and filed their motion for sanctions, requesting the same relief Class Plaintiffs had offered by way of stipulation.

As should be clear from the foregoing, sanctions are as unnecessary as they are inappropriate. The Court should give Defendants what they have asked for, and what Class Plaintiffs offered them voluntarily: an order—pursuant to stipulation, not as a sanction—precluding Class Plaintiffs from pursuing their alternative theory of damages.

## II. STATEMENT OF FACTS

As Defendants note, on "August 11, 2008, plaintiffs served on defendants eleven expert reports, collectively comprising more than 1,300 pages," which "nearly fill a box." Defendants' Emergency Motion for Enlargement of Time for Service of Expert Reports (Dkt. No. 1417) at 1; Memorandum in Support of Defendants' Emergency Motion for Sanctions ("Def. Mem.," Dkt. No. 1420) at 8 n.3. This was a monumental undertaking, requiring the distillation and analysis of hundreds of thousands of pages of documents produced in this litigation. See Dkt. No. 1417 at 2 ("plaintiffs' reports purport to rely on thousands of pages of documents produced by parties to this litigation").

780746.2                                        1

Although Plaintiffs could not be sure of the outcome until this exercise was complete,[1] each of Plaintiffs' indication experts concluded that Neurontin was ineffective in treating the conditions at issue in this litigation.[2] As Defendants also note, each of Plaintiffs' indication experts identified a number of drugs other than Neurontin that *are* effective at treating the conditions at issue, without regard to the relative cost of the medications.  See Declaration of David B. Chaffin in Support of Defendants' Emergency Motion for Sanctions (Dkt. No. 1419), ¶¶ 17 ("Dr. Perry opines that opiods like morphine and methadone are more effective than

---

[1] See Reporter's Transcript of Motion Hearing, February 19, 2008 at 25 ("THE COURT:  But couldn't the reverse be true, that once you are forced to put pen to paper and come up with expert reports, that you'll drop some of the indications because you can't prove they're fraudulent?").

[2] See Report on the Use of Neurontin for Bipolar and Other Mood Disorders, Jeffrey S. Barkin, M.D., at 1 ("[T]he scientific evidence demonstrates quite clearly that gabapentin is ineffective as a treatment of bipolar disorder and should not be used."); Clinical pharmacologic opinion of Dr. Thomas L. Perry, at 1-2 ("Based on a thorough and scientifically valid analysis of all relevant double blind randomized clinical trials (DBRCT), Neurontin is not an effective drug for the treatment of neuropathic pain. . . . Finally, it is my opinion that Neurontin (gabapentin) is completely ineffective for the treatment of non-neuropathic pain."); Expert Report of Brian Alldredge, PharmD, at 1 ("The highest quality evidence failed to establish a dose-related effect (i.e., continued improvement in efficacy) at dosages above 1800 mg/day."); Report on gabapentin (Neurontin) for migraine prophylaxis, Douglas C. McCrory, MD, MHS, at 18 ("In summary, the randomized double-blind, placebo-controlled trials of gabapentin versus placebo, considered together, fail to consistently or convincingly demonstrate that gabapentin is effective for migraine prophylaxis.").

As set forth in Notice of Sales & Marketing Plaintiffs' Provision of Expert Reports and Class Plaintiffs' Notice of Intention to File Expert Reports Under Seal (Dkt. No. 1378), Plaintiffs' expert reports refer to documents designated "confidential" by Defendants and third parties IMS Health, Cline Davis & Mann, Sudler Hennessey, and CME LLC. Id. ¶ 5.  As further set forth therein, Class Plaintiffs are aware of the substantial burdens that would be placed upon the Court by the filing under seal of voluminous expert reports, and accordingly have challenged the producing parties' confidentiality designations so as to permit the reports to be filed publicly. Id.  With respect to the expert reports referred to in this motion (including Dr. Hartman's report, discussed infra), Defendants have offered to meet-and-confer next week, and the third parties have yet to respond to Class Plaintiffs' request.  Inasmuch as the relevant contents of the reports are quoted herein or summarized in Mr. Chaffin's declaration, Class Plaintiffs are not filing the reports under seal (as they would be required to do) in support of their opposition, but will do so promptly if requested by the Court.

Neurontin for neuropathic and other pain"), 18 (Dr. McCrory "identifies seven such drugs" approved or widely used for migraine prophylaxis), 19 (Dr. Barkin "identifies ten drugs that he says have 'documented efficacy' in the treatment of aspects of bipolar disorder").[3]

Class Plaintiffs' failure to provide supplemental responses to Defendants' Second Set of Interrogatories along with their voluminous expert reports was not "willful," as alleged by Defendants (Def. Mem. at 18), but inadvertent.[4] As soon as Defendants brought the matter to Class Plaintiffs' attention,[5] Class Plaintiffs explained that in light of the strength of their experts' opinions that Neurontin was ineffective in treating the conditions at issue, they had abandoned their alternative theory of damages, i.e., that even if Neurontin was minimally effective in treating the conditions at issue, Class Plaintiffs were entitled to recover the difference between what they paid for Neurontin and what they would have paid for other "cheaper and more optimal" medications. See Third Amended Class Action Complaint (Dkt. No. 580), ¶¶ 308-09. As Defendants have repeatedly and consistently stated, it was this allegation to which the Second Set of Interrogatories was directed. See Def. Mem. at 1 ("The Interrogatories, served over 17

---

[3] As Defendants tacitly acknowledge, the last "indication" at issue, dosages of Neurontin over 1800 mg/day, is not "treatable" with alternative medications.

[4] The October 11, 2007 Order (Addendum to Discovery Order No. 14, Dkt. No. 902) required Plaintiffs to provide supplemental responses to the interrogatories "no later than the date on which Plaintiffs' expert disclosures are due" (id. at 2), which, at the time, was February 28, 2008. See Discovery Order No. 14 (Dkt. No. 890). Over the following nine months, the date for Plaintiffs' expert disclosures was extended, initially to August 1, 2008 (see Dkt. No. 1153), and finally to August 11, 2008 (see Electronic Order, August 5, 2008), and Class Plaintiffs simply neglected to re-calendar the date for providing supplemental responses in parallel with the changes to the expert deadline. Class Plaintiffs apologize to the Court and Defendants for this administrative lapse, and intended no disrespect for the Court or its Orders.

[5] Counsel for Defendants first brought the matter to Class Plaintiffs' attention via a letter dated August 13, 2008. Declaration of Barry Himmelstein in Opposition to Defendants' Emergency Motion for Sanctions ("Himmelstein Decl."), Exh. A. The meet-and-confer process, and the agreement reached by the parties, is described more particularly below.

months ago, seek information concerning plaintiffs' core claim that there were 'cheaper and more optimal' alternatives to Neurontin for the relevant indications."), 3 ("defendants still do not know the basis for and details of plaintiffs' 'cheaper and more optimal' theory"), 3 ("On March 13, 2007, defendants served on . . . the third party payer Class Plaintiffs a set of eight interrogatories (the "Interrogatories") designed to elicit information concerning a critical allegation by plaintiffs—that there are 'cheaper and more optimal' alternatives to Neurontin for the relevant indications.").[6]

### III.   THE PARTIES REACHED AN AGREEMENT, AND DEFENDANTS RENEGED ON IT

Class Plaintiffs informed Defendants' counsel that, as indicated in their expert reports, they were no longer pursuing the alternative theory of damages to which the Interrogatories relate. See Himmelstein Decl., Exh. B ("I received your voice mail message of August 20, 2008, in which you indicated that the Class Plaintiffs did not respond to defendants' second set of

---

[6] See also, Def. Mem. at 6 ("The [Coordinated Plaintiffs'] responses do not identify the alleged 'cheaper and more optimal' alternatives to Neurontin for each of the relevant indications, nor do they, of course, explain how plaintiffs identified such alleged alternatives."), 7 ("defendants have no way of knowing which drugs plaintiffs contend are cheaper and more optimal alternatives to Neurontin"), 8 ("None of the expert reports identify 'cheaper and more optimal' alternatives for the relevant off-label uses."), 9 ("none of plaintiffs' experts uses the phrase 'cheaper and more optimal'"), 9-10 ("nowhere in this mass is there a clear statement of *plaintiffs'* views as to the identity of the drugs that allegedly are 'cheaper and more optimal' alternatives to Neurontin"), 10 ("the experts do not reach the actual issue—whether the alternatives are 'cheaper and more optimal'"), 11 ("All of this leaves defendants to guess at the identities of the drugs that plaintiffs consider 'cheaper and more optimal' alternatives—the very task which the Interrogatories were intended to avoid."), 18 (Defendants still do not know the basis for or any particulars of the ["cheaper and more optimal"] theory, and they still do not have the factual information that they intended to use to prepare a response."), 19 ("Plaintiffs opposed the motion [to compel further responses to the Interrogatories], even though they had put the 'cheaper and more optimal' alternatives theory in issue."), 19 (Plaintiffs "should be precluded from making any argument and pursuing claims based on the 'cheaper and more optimal' theory."), 20 (requesting an order "precluding all plaintiffs from making any argument or pursuing any claims based on the allegation or theory that there were 'cheaper and more optimal' alternatives to Neurontin for the relevant off-label uses").

interrogatories because Class Plaintiffs are no longer pursuing the theory that there were cheaper, more effective, alternative drugs that might have been used instead of Neurontin."). Class Plaintiffs had implicitly stated as much in their expert reports.[7] Class Plaintiffs' abandonment of this theory renders the Interrogatories irrelevant, as Defendants implicitly concede. See Part II &

---

[7] Specifically, Plaintiffs' damages expert informed Defendants that *only the Coordinated Plaintiffs* were pursuing this alternative theory of damages:

> I have been asked to calculate damages for these plaintiffs using the same theory of recovery put forward above for the MDL Classes. . . . [A]s discussed above in ¶ 4, the Coordinated Plaintiffs should recover the full amount paid for each Neurontin Rx that was caused by Defendants' fraudulent and unlawful promotion. I understand that the Coordinated Plaintiffs have alleged in their complaints an additional theory of damages (TCAC ¶¶ 173-74) and counsel have informed me that various medical experts have confirmed that other less expensive therapeutic alternatives were available during the relevant time period to treat the indications at issue. . . . Had the Coordinated Plaintiffs and others purchased such alternative treatments absent Defendants' challenged conduct rather than Neurontin, the cost of treatment would have been far less. I address this issue quantitatively for Kaiser below in footnote 16.
>
> * * *
>
> As mentioned in ¶ 24 above, I have calculated and reported damages for the Coordinated Plaintiffs under the same theory of recovery put forward by the MDL Plaintiffs. Had I implemented an alternative theory of recovery allowing the Coordinated Plaintiffs to recover only the amounts paid in excess of the cost of a reasonable set of therapeutic substitutes (costs I have been able to calculate based upon the medical testimony identified in footnote 14 above and information identified by the Coordinated Plaintiffs during discovery), the damages calculated for Kaiser (ex prejudgment interest) would have been at least $89,175,677, implying that Kaiser would have spent at least 91% less than they actually spent on the fraudulently-induced Neurontin prescriptions. [¶] I am able, if asked, . . . to calculate damages to the other coordinated Plaintiffs under this theory.

Declaration of Raymond S. Hartman, Calculation of Damages for the Neurontin MDL Class Plaintiffs and Coordinated Plaintiffs ¶ 24 & n.14, 16.

n.6, supra; see also Def. Mem. at 16 n.16 ("Plaintiffs' supplemental responses to Interrogatory No. 7 are sufficient because each of them indicates that it is withdrawing claims based on promotion for epilepsy.").

At Defendants' request, Class Plaintiffs confirmed that "you are correct that unlike Coordinated Plaintiffs (Aetna, Kaiser, and Guardian), Class Plaintiffs have elected not to pursue a damages model based on the availability of alternative treatments that were cheaper and more effective, as indicated in Dr. Hartman's expert report." Himmelstein Decl., Exh. C. Defendants responded by proposing a stipulation and proposed order that went substantially further, and would have precluded Class Plaintiffs' indication experts from testifying that effective treatments exist for the indications at issue—including FDA-approved treatments identified in their reports—even though Class Plaintiffs were no longer seeking damages based on the availability of less-expensive treatments. See Himmelstein Decl., Exh. D, Stipulation and Proposed Order of Dismissal, at 2 ("Class Plaintiffs are precluded from making any argument that there were cheaper and/*or more effective* alternatives to Neurontin for the relevant off-label uses" (emphasis added)).

Class Plaintiffs were also concerned that although they were no longer advancing a less-expensive-alternative theory of damages, *Defendants* had argued, in opposition to Class Plaintiffs' Renewed Motion for Class Certification, that third party payers are not entitled to recoup the amounts they paid for Neurontin to treat off-label indications for which the trier of fact determines Neurontin is ineffective, and may only recover the difference between the amounts they paid for Neurontin and the amounts they would have paid for drugs their insureds or members would have been prescribed in lieu of Neurontin. See Dkt. No. 1180 at 36-37. Although there is scant authority for this proposition—none of it involving products, like

Neurontin, that were allegedly *worthless*—pending its resolution, Class Plaintiffs were unwilling to enter into the overbroad stipulation proposed by Defendants without an appropriate clarification.

Accordingly, in lieu of entering into the proposed stipulation, Class Plaintiffs offered to provide Defendants with the information they requested, informing them that:

> As we discussed, we think the proposed stipulation goes too far. We will provide, within 30 days, the data requested by the Second Set of Interrogatories for each of the indications that remain in the case, clearly identifying which drugs go with which indications. As to how the drugs were identified (Interrogatory No. 2), the Court has already concluded that this is a matter of expert opinion, and they were identified by our experts. You have our expert reports, and you will be deposing our experts. Should we provide information on any drugs not identified in our expert reports, we will provide an explanation as to how they were identified. We hope this resolves the matter, and trust that you will honor your obligation to meet-and-confer by responding before filing any motion. We are not at an impasse.

Himmelstein Decl., Exh. E.

Upon learning that Class Plaintiffs were willing to provide the information as soon as possible,[8] despite abandoning their "cheaper and more optimal" alternatives theory, Defendants insisted on filing their sanctions motion anyway, seeking an order of preclusion. Himmelstein Decl. ¶ 4. Class Plaintiffs informed Defendants that:

> per our discussion, we have offered to provide you everything you want, but you insist on filing your sanctions motion anyway. This is not a proper use of the meet and confer process, which is required for sanctions motions as well as any other.

---

[8] After conferring with their clients, the third party payer class representatives, class counsel determined that Blue Cross/Blue Shield of Louisiana would require up to 30 days to retrieve the requested information from their database systems, and Harden Manufacturing Corp. would require a similar amount of time to obtain the information from its pharmacy benefits manager. ASEA could also produce the requested information within 30 days. Himmelstein Decl. ¶ 3.

Himmelstein Decl., Exh. F.  See L.R. 37.1(a) ("Before filing any discovery motion, including any motion for sanctions . . . , counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent.").

A short time later, a teleconference took place between Thomas Greene, Mr. Rowland, and myself.  I explained in detail Class Plaintiffs' concerns with the proposed stipulation.  Defense counsel responded to these concerns clearly and unequivocally, stating that Defendants were *not* attempting to preclude Class Plaintiffs' experts from testifying that effective treatments existed for the indications at issue, nor were Defendants attempting to preclude the third party payer class from putting on evidence of what they would have spent, should Defendants prevail in *their* argument that third party payers could only recover the difference in price between what they paid for Neurontin and what they would have paid for other medications.  Himmelstein Decl. ¶ 5; Declaration of Thomas Greene in Opposition to Defendants' Emergency Motion for Sanctions ("Greene Decl.") ¶ 3.  The parties agreed that Class Plaintiffs would draft a revised stipulation reflecting the agreement they had reached on the telephone.  Himmelstein Decl. ¶ 5; Greene Decl. ¶ 3.  See also Himmelstein Decl., Exh. I ("I am sure we will be able to get on paper the understanding that we reached on the phone.").

Defendants insisted that Class Plaintiffs provide the revised stipulation by 8:00 a.m. the following morning, August 28, 2008, and asked that Class Plaintiffs make themselves available prior to 8:00 a.m. to respond to any "questions" Defendants might have concerning the revised stipulation.  Himmelstein Decl., Exh. H.  Class Plaintiffs provided Defendants with the revised stipulation later that same evening, August 27, 2008.  Himmelstein Decl., Exh. I.[9]  After the 8:00

---

[9] In a cover email, Class Plaintiffs explained that:

780746.2                                              8

a.m. deadline passed with no call or email from defense counsel, class counsel called defense counsel, and was informed that Defendants had reversed their position, and were now insisting that Class Plaintiffs agree that they would be unilaterally precluded from putting on any evidence of the costs that would have been incurred by the third party payers should Defendants prevail in their argument.[10]  Himmelstein Decl. ¶ 6.

Defendants filed their motion for sanctions approximately an hour later, despite the fact that Class Plaintiffs had offered to either:  (1) provide the requested information within 30 days, or (2) stipulate to the relief Defendants requested in the motion.  See Def. Mem. at 19-20

---

> The language you proposed was very broad, and somewhat vague. We have tried to make it as precise as possible, rather than dealing with matters in the abstract.  If it does not satisfy you, please propose equally precise revisions, and I am sure we will be able to get on paper the understanding that we reached on the phone.

Himmelstein Decl., Exh. I.  Class Plaintiffs also noted that:

> I do not see how Rule 41(a) applies here.  We are not dismissing any claims, or the complaint.  We are not pursuing one of two damages theories that could be applied to each of our claims, none of which are being dismissed.  There is no such thing as dismissal of a theory.

Id.

[10] Class Plaintiffs explained that should such evidence be necessary, it would not be based on the opinions of their experts as to which medications were "cheaper and more optimal" than Neurontin (i.e., their opinions about what *should* have been prescribed in lieu of Neurontin, or what *could* have been prescribed that was less expensive), it would be based on the IMS market share data for each indication, which shows what was *actually* prescribed for each indication, regardless of the relative cost (e.g., for bipolar, during time period X, Y% of insured patients received lithium at $Z cost, etc.).  The Court has agreed that such aggregate data is the appropriate method of determining damages sustained by the third party payer class, who collectively comprise the private insurance market to which the IMS data relate.  See Memorandum and Order on Plaintiffs' Motion for Class Certification (Dkt. No.831), at 55-57, 63 (approving proof of aggregate damages to third party payer class); see also Certification of Karrie M. Hontz, of IMS Health Incorporated (Dkt. No. 639) (describing compilation and reliability of IMS data).

(arguing that Plaintiffs "should be precluded from making any argument and pursuing claims based on the 'cheaper and more optimal' theory," and requesting "that the Court issue an Order, on an emergency basis, precluding all plaintiffs from making any argument or pursuing any claims based on the allegation or theory that there were 'cheaper and more optimal' alternatives to Neurontin for the relevant off-label uses").

### IV.    SANCTIONS ARE NOT WARRANTED

As set forth above, Class Plaintiffs' failure to provide further responses to the Interrogatories was not deliberate, but inadvertent. See n.4, supra.[11] When this lapse was brought to their attention, Class Plaintiffs offered Defendants exactly the same relief they seek in this motion—a stipulation precluding Class Plaintiffs from pursuing the alternative theory of damages that—as Defendants so ardently maintain—the Interrogatories were "designed" to address. See Part II supra, at 3-4 & n.6. Unwilling to "take yes for an answer," Defendants insisted on filing this motion, despite the command of Local Rule 37.1(a) that "the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent" "[b]efore filing any discovery motion, including any motion for sanctions . . . ." The Court should give Defendants exactly what they have asked for—but no more. See General Ins. Co. of America v. Eastern Consolidated Utilities, Inc., 126 F.3d 215, 220 ("'the sanction must be related to the particular "claim" which was at issue in the order to provide discovery'"), quoting Insurance

---

[11] Class Plaintiffs' oversight, while regrettable, is no greater fault than Defendants' own failures to produce documents and identify witnesses in compliance with the Court's orders, none of which resulted in sanctions. See Plaintiffs' Motion to Compel Compliance With Discovery Order No. 7 and for Sanctions (Dkt. No. 714) (Defendants' failure to produce contents of website in violation of order); Discovery Order No. 11 (Dkt. No. 735), at 1-2 (ordering Defendants to produce contents of website backup tape but denying sanctions); Products Liability Plaintiffs' Motion for Order Imposing Sanctions Against Defendants Pursuant to Fed. R. Civ. P. 37(c) (Dkt. 978) (Defendants' failure to identify Cynthia McCormick as fact witness); Discovery Order No. 18 (Dkt. No. 1032) (order denying sanctions).

Corp. v. Compagnie des Bauxites, 456 U.S. 694, 707 (1982).

Obviously, the purpose of Local Rule 37.1 would be defeated entirely if, after making a successful effort to "narrow the areas of disagreement to the greatest possible extent" (id.), the compromise offered was nonetheless meted out as a *sanction*. Class Plaintiffs have agreed to withdraw their alternative damages theory regarding "cheaper and more optimal" alternatives to Neurontin *voluntarily*. Accordingly, sanctions are neither necessary nor appropriate.

Neither do the five factors identified by Defendants (see Def. Mem. at 17) point toward the imposition of sanctions, whether issue preclusion or monetary. As set forth above, Class Plaintiffs' failure was inadvertent, not willful or in bad faith. Class Plaintiffs acted in good faith in preserving their alternative damages theory pending completion of their experts' reports. See n. 1, supra. By definition, Defendants are *advantaged* by Class Plaintiffs' withdrawal of their alternative damages theory, not prejudiced because they lack the evidence to oppose a theory which Class Plaintiffs have offered to abandon.

Defendants complain that there has been "protracted inaction or deliberate delay," and that Class Plaintiffs "have disregarded prior warnings." Def. Mem. at 19. This is nonsense. The parties had a good faith dispute about whether Class Plaintiffs were entitled to await their experts' opinions before responding to the Interrogatories, and the Court agreed with *Class Plaintiffs*, not Defendants.[12] See Addendum to Discovery Order No. 14 (Dkt. No. 902).

---

[12] As Class Plaintiffs summarized in opposition to Defendants' September 6, 2007 motion to compel (Dkt. No. 847):

> In response to Defendants' motion to compel responses to interrogatories (Dkt. No. 753), Class Plaintiffs offered to "provide a substantive response to Interrogatory No. 2 which will identify less expensive drugs that could have been used to treat the conditions at issue for which Neurontin was prescribed off-label" (Dkt. No. 757 at 1), but objected that they should not be required to

Finally, Defendants argue that "less draconian measures will not suffice." Def. Mem. at 19. As set forth above, Class Plaintiffs offered to stipulate to the relief sought by Defendants in this motion. Sanctions are as unnecessary as they are inappropriate. In their moving papers, Defendants admit—albeit in a footnote—that they chose to abort the meet-and-confer process prematurely and file their sanctions motion, rather than completing it first, as required by Local Rule 37.1(a). See Def. Mem. at 2 n.1. The Court should not encourage disregard for a rule clearly designed to avoid the unnecessary expenditure of scarce judicial resources by awarding sanctions to the party that violated it.

---

provide information concerning the prescription of those drugs to their insureds. On June 25, 2007, the Court overruled these objections, and ordered Plaintiffs to provide further responses by July 30, 2007. Discovery Order No. 12 (Dkt. No. 801).

On July 5, 2007, only ten days after this order was entered, Defendants filed a follow-up motion, seeking to clarify the scope of the required response to Interrogatory No. 2, and the corresponding data production (Dkt. No. 777). Specifically, Defendants sought to require Plaintiffs to provide a complete and comprehensive list of alternative drugs used to treat the off-label conditions at issue. Like the Coordinated Plaintiffs, Class Plaintiffs had objected to this interrogatory – as well as the interrogatories calling for data concerning "any other drug approved or commonly used to treat" the conditions at issue – as prematurely calling for expert testimony. See Dkt. No. 754, Exh. I (original responses to interrogatories no. 2-8); Dkt. No. 852, Exh. A (corrected supplemental responses to interrogatories 2-8).

On July 19, 2007, the Court sustained this objection, and ordered that Plaintiffs are not required to provide this information until they provide Defendants' with their expert reports. See Discovery Order No. 13 (Dkt. No. 801, at 4). Class Plaintiffs join in the Coordinated Plaintiffs' Opposition to Motion to Compel Plaintiffs to Respond to Interrogatories (Dkt No. 862), on the grounds that the instant motion likewise calls for premature expert testimony – an issue addressed by the Court in Discovery Order No. 13, not Discovery Order No. 12.

Class Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion to Compel Third-Party Payor Plaintiffs to Respond to Interrogatories (Dkt. No. 873), at 1-2.

780746.2                                    12

## V.     CONCLUSION

Sanctions are unnecessary and inappropriate.  The Court should give Defendants what they have asked for, and what Class Plaintiffs offered them voluntarily:  an order—pursuant to stipulation, not as a sanction—precluding Class Plaintiffs from pursuing their alternative theory of damages.

                                                            Respectfully submitted,

Dated:  September 4, 2008                    GREENE & HOFFMAN


                                                            By:   /s/ Thomas M. Greene
                                                                     Thomas M. Greene, Esq.

                                                            33 Broad Street, 5th Floor,
                                                            Boston, MA  02109

                                                            LIEFF, CABRASER, HEIMANN
                                                              & BERNSTEIN, LLP


                                                            By:   /s/ Barry R. Himmelstein
                                                                     Barry R. Himmelstein, Esq.

                                                            275 Battery Street, 30th Floor
                                                            San Francisco, CA  94111-3339

BARRETT LAW OFFICE


By: /s/ Don Barrett
    Don Barrett, Esq.

404 Court Square North
P.O. Box 987
Lexington, MS  39095

LAW OFFICES OF DANIEL BECNEL, JR.


By: /s/ Daniel E. Becnel, Jr.
    Daniel E. Becnel, Jr., Esq.

106 W. Seventh Street
P.O. Drawer H
Reserve, LA  70084

DUGAN & BROWNE


By: /s/ James R. Dugan
    James R. Dugan, Esq.

650 Poydras Street, Suite 2150
New Orleans, LA  70130

HAGENS BERMAN SOBOL SHAPIRO LLP


By: /s/ Thomas M. Sobol
    Thomas M. Sobol, Esq.

One Main Street, 4th Floor
Cambridge, MA  02142

Attorneys for Plaintiffs and the Class

**CERTIFICATE OF SERVICE**

  I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on September 3, 2008.

                 /s/  Barry Himmelstein