UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>ALL CLASS ACTIONS | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, d/b/a BLUECROSS/BLUESHIELD OF LOUISIANA; UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>        v.<br><br>PFIZER INC. and WARNER-LAMBERT COMPANY,<br>            Defendants. | |

**COORDINATED PLANTIFFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SANCTIONS and CROSS MOTION TO SANCTION DEFENDANTS**

Coordinated Plaintiffs, The Guardian Life Insurance of America ("Guardian"), Aetna,

Inc. ("Aetna"), Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan, Inc.

(collectively, "Kaiser") submit the following Opposition to Pfizer's and Warner-Lambert's

("Defendants") Emergency Motion for Sanctions for Failure to Obey Court Order Requiring

Plaintiffs to Respond to Interrogatories and Cross Motion for Sanctions; and hereby move fro sanctions of Defendants for their failure to meet and confer pursuant to local rules.

## INTRODUCTION AND BACKGROUND

Kaiser, Guardian and Aetna each served their Supplemental Response and Objections to Defendants' Second Set of Interrogatories on August 1, 2008, ten (10) days before the August 11, 2008 Court ordered deadline. They heard nothing from counsel for Defendants for many weeks.

Nearly one-month later, on August 26, 2008, counsel for Defendants, Matthew Roland, called counsel for Kaiser demanding an immediate on-the-spot meet and confer alleging the interrogatory responses tendered were insufficient and that Defendant's intended to more for sanctions. Linda Nussbaum, counsel for Kaiser, was unavailable to have the impromptu and immediate meet and confer demanded by Roland, because she was running out to a meeting and was then traveling for the next three days during which time she would not have regular telephone or Blackberry access. However, Ms. Nussbaum immediately responded to Mr. Rowland's call with an e-mail sent at 1:39 p.m. on August 26, within minutes of Mr. Rowland's call, which contained an offer to engage in a meet and confer the next available business day on September 2, 2008 between 10 am and 12 pm EST or at 2 pm EST. Counsel for Kaiser also offered the morning of September 3. *See* Nussbaum Decl. at Exh. A. Defendants did not respond.

With complete and utter disregard for the Rules of this Court, Defendants filed the present motion a mere two (2) days after their initial August 26 call, and without further

discussion of meet and confer dates and times proposed by Kaiser and, therefore, without engaging in the required meet and confer.

On August 26, 2008, Defendants also called counsel for Guardian, Mark M. Sandmann, and left a message requesting that he call. Sandmann Decl. ¶ 6. Mr. Sandmann received this message on August 27th and returned the call on August 28, 2008, at which time Defendants unilaterally declared that the call was a meet and confer since Guardian had not provided the data referenced in its responses. Sandmann Decl. ¶ 7. During the course of the less-than-five-minute discussion, Mr. Sandmann informed Defendants that Guardian, a small health plan with limited resources and an outsourced pharmacy administrator (Medco), had to write a new computer program in order to find, pull, and place in a usable format the voluminous amount of data required and that Guardian was diligently attempting to gather the data and information as quickly as possible. Sandmann Decl. ¶ 9. Mr. Sandmann also informed Defendants that he would call Guardian to inquire when the data would be ready and formatted. Sandmann Decl. ¶ 10. Defendants were not interested in having any further discussion to resolve the "dispute". Without even discussing a date that Guardian would be able to provide the data or discussing the possibility that Guardian could provide what they had been able to generate to date and then supplement with remainder, Defendants informed Guardian it was filing a motion for sanctions that very day, which it did. Sandmann Decl. ¶12.

Finally, Defendant certifies in its papers that it left a message with counsel for Aetna on August 26, 2008—which Aetna denies. Lawrence Decl. ¶ 7. Defendants, without waiting the required seven (7) days for a response or making any other effort to communicate with Aetna's counsel, filed their motion only two days after allegedly leaving the message, and before Aetna, whose counsel was traveling during the last week in August, had any opportunity to meet and

3

confer. Lawrence Decl. ¶ 7. Defendants' admission that they filed their motion only two days after allegedly leaving a message with counsel for Aetna and before any conversation or scheduling of a meet and confer could occur is conclusive proof that Defendants did not make a good faith attempt to schedule a meet and confer with respect to Aetna.

Therefore, and as demonstrated herein, Defendants' motion is not only premature, but was filed with blatant disregard for the Local Rules which govern motion practice and discovery disputes in this Court. The Coordinated Plaintiffs are entitled to a denial of the Defendants' Motion and the imposition of sanctions on the Defendants.

## ARGUMENT

### I.   Defendants' Motion for Sanctions is Premature

Local Rule 7.1(a)(2) of the United States District Court for the District of Massachusetts governing general motion practice unequivocally provides that "*[n]o motion* shall be filed unless counsel certify that they have conferred and attempted in good faith to resolve or narrow the issue". L.R. 7.1(a)(2) (emphasis added). Further, Local Rule 37.1 governing discovery disputes provides:

> (a) *Before filing any discovery motions, including any motion for sanctions* or for a protective order, counsel for the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent. It shall be the responsibility of counsel for the moving party to arrange for the conference…

L.R. 37.1 (emphasis added). The Rule further contemplates that the party requesting the conference must give the opposing party seven (7) days merely to respond to a request to confer, fourteen (14) days within which to attend a discovery conference. *See* L.R. 37.1. In the instant case, the Defendants ran roughshod over the Local Rules and filed their motion prior to the expiration of the time allowed for parties to merely schedule a meet and confer.

4

Rule 6(a) of the Fed. R. Civ. P. applies to the computation of time periods allowed by local rules and provides that "[w]hen the period of time…allowed is less than eleven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded from the computation." Therefore, with Saturday, Sunday, and Labor day not being included in the calculation of the observance of the seven day (7) period within which to schedule a meet and confer, each of the Coordinated Plaintiffs had until September 5, 2008 to respond to and schedule any request for a meet and confer. Further, the parties had until September 12, 2008 to conduct a meaningful and legitimate meet and confer. L.R. 37.1(a). As importantly, Defendants were barred from filing any motion for sanctions prior to September 6, 2008 even if they received no responses to their requests for meet and confers. *See, Syrjala v. Total Healthcare-Solutions,* 186 F.R.D. 251 (D. Mass. 1999). Because Defendants' first and only attempt to request a meet and confer with Kaiser, Guardian, and Aetna occurred on August 26, 2008, the Defendants were precluded by the Local Rules from filing their motion until, at the earliest, September 6, 2008. Nonetheless, Defendant filed their motion: (1) a mere two days after making a demand for an immediate meet and confer on Kaiser and receiving proposed dates from Kaiser; (2) filed the very same day they reached Guardian's counsel by phone and unilaterally characterized the conversation as a meet and confer; and (3) filed two days after allegedly leaving a message with counsel for Aetna and having no conversation whatsoever regarding scheduling with Aetna. Therefore, the Defendants motion should be denied for failure to even minimally comply with the Rules of this Court.

Not only did Defendant make no effort to comply with the rules of the Court, Defendants compounded their error by falsely certifying that it complied with the requirements of L.R. 37.1. In their Certification, Defendants admit that counsel for Kaiser responded to request for a meet the same day it was made and, further, that Kaiser offered times the following week, well within

the seven (7) and fourteen (14) day time periods set forth in Local Rule 37.1. (Dkt. No. 1418, at.*4). Defendants, however, chose to ignore proper procedure and filed their Motion for Sanctions anyway. Defendants falsely certified compliance with L.R. 37.1 with respect to Kaiser.

Defendants admit that they filed their motion only two days after allegedly leaving a single message with counsel for Aetna. Defendants admit they never spoke to Aetna or that a meet and confer was scheduled. (Dkt. No. 1418, at *4). Defendants falsely certified L.R. 37.1 compliance with respect to Aetna.

Finally, Defendants state that they had a meet and confer with Guardian despite the fact the substance of the conversation involved Defendants merely informing Guardian that the Defendants' Motion for Sanctions was going to be filed that day. (Dkt. No. 1418, at *4). Defendants made no attempt to investigate whether Guardian could provide summary data, data on a rolling basis, or a date when Guardian would provide the completed, formatted data. The characterization of this singular conversation lasting fewer than five (5) minutes as a meet and confer is a self-serving and willful abandonment of both the purpose and the spirit of the Local Rules. Defendants 37.1 certification was false and misleading with respect to Guardian.

Defendants make the transparent and completely irrelevant assertion that the "emergent nature" of its motion somehow excuses them from adhering to the Rules of this Court. (Dkt. No. 1418, at *4). Such an attempt to excuse its flagrant violation of the Rules has no support in the Federal or Local Rules and renders Defendants motion wholly improper. As importantly, the "emergency," such as it was—and which now has dissipated entirely, since the Court has granted Defendants' motion for an extension of time to file their expert reports—was entirely of Defendants' making. Kaiser, for example, FedEx-ed its supplemental discovery responses on

August 1—ten days *before* those responses were actually due.  Nussbaum Decl. at ¶ 4.  Defendants' counsel in a telephone call on September 9 stated that they read those responses as soon as they received them, on or about August 4, 2008, still a week before they were due.  *See id*. at ¶ 16 .  However, instead of contacting counsel for Kaiser to seek clarification on the production, Defendants sat on those responses for nearly a month and did not contact counsel for Kaiser to express any issues or request any clarification of those responses until August 26, 2008.  Defendants' failure to comply with Local Rules 7.1 & 37.1—and especially their false certification of compliance with those Local Rules—cannot be excused by the alleged "emergent nature" of the motion.

## II.     Coordinated Plaintiffs' Cross Motion for Sanction of Defendants

Indeed, not only should this Court deny Defendants' Motion for Sanctions, it should grant Plaintiffs Cross Motion and sanction Defendants for failure to comply with Local Rules 7.1 & 37.1 and for their false certification of compliance with those Local Rules.

In *Syrjala v. Total Healthcare-Solutions, supra*, a directly analogous situation, Plaintiff's counsel served deposition notices that were received by counsel for the Defendant on either Monday March 29th or Tuesday March 30th.  Counsel for Defendant then left a message for Plaintiff's counsel on March 30st to call and discuss the notices.  The same day, counsel for Defendant faxed to Plaintiff's counsel a one-page letter stating that he was going to file a motion for a protective order if there was no response to the correspondence to discuss the deposition notices.  On April 5th, Defendant filed a motion for a protective order and certified that the parties had conferred and were unable to resolve the dispute.  In response, the Plaintiff filed a motion for sanctions against counsel for Defendant for violation of Local Rule 37.1.  The court

granted the Plaintiff's motion for sanctions finding that the "filing of the motion on April 5th was a violation of Local Rule 37.1 which prohibit[ed] the filing of a motion for a protective order until a period of seven days ha[d] elapsed from the request for a discovery response." *Id.* at 254. The court found that under the Federals Rules governing the computation of time, the protective order should not have been filed prior to April 8th and, further, that the Defendant had falsely certified that a conference had occurred. *Id.* Plaintiffs respectfully request that this Court and do likewise and impose sanctions against the Defendants here.[1]

Here, the Defendants filed their motion only two days after Kaiser offered dates for a meet and confer in response to a message from Defendants. Defendants filed their motion on the on the same day it spoke with counsel for Guardian and unilaterally declared that the conversation was a meet and confer. Finally, Defendants, by their own admission, allegedly left a single message with counsel for Aetna on August 26th and then filed its motion two days later- without even giving Aetna a chance to respond. Such action by the Defendants

Defendants' Motion for Sanctions should be denied, and this Court should instead grant Plaintiffs' Cross Motion for Sanctions based on Defendants' failure to comply with Local Rules 7.1 & 37.1 and their false certification of compliance with those Local Rules.

---

[1] Plaintiffs repeatedly informed Defendants that their Motion for Sanctions was premature and improper, and requested that Defendants withdraw their motion (or even stay it pending Plaintiffs' supplemental production). Nussbaum Decl. at ¶19 (Radice Aug. 28, 2008 letter to Rouhandeh; Radice Sept. 4, 2008 letter to Rowland; Radice Sept. 9, 2008 letter to Rouhandeh). Plaintiffs informed Defendants that Plaintiffs would seek sanctions if Defendants did not withdraw their motion, and yet Defendants refused to withdraw or even stay their motion. Kaiser therefore complied with Local Rules 7.1 & 37.1, even though such compliance may not strictly be necessary for a cross-motion for sanctions. *Cf. Eon-Net LP v. Flagstar Bancorp*, 249 Fed. Appx. 189, 197 (Fed. Cir. 2007) (unpublished) (noting that "a party defending a Rule 11 motion need not comply with Rule 11's safe harbor provisions in filing a cross-motion for sanctions based on the frivolousness of the original motion for sanctions").

### III. Plaintiffs Substantially Complied with Defendants' Discovery Requests, and Are Willing To and Are In the Process of Further Supplementing Their Responses

Defendants' failure to engage in the mandatory meet and confer process is even more egregious where, as here, Defendants' willingness to engage in the required meet and confer would have resulted in a substantial narrowing, if not total elimination, of the issues raised in Defendants' motion. For example, the data produced with Kaiser's responses clearly lists less expensive alternative treatments.[2] Most, if not all, of these treatments correspond very specifically to one of the indications listed in Kaiser's response to Interrogatory No. 1, *e.g.*, lithium carbonate is used as a treatment bipolar disorder, and generally is not used for neuropathic or nociceptive pain, nor for migraines, as anyone involved in this litigation for the past four years should be well aware. In addition, the work files produced with the expert report of Raymond Hartman list the cheaper and more optimal drugs and link those to their indication(s). And, once Defendants' finally agreed on September 9, 2008 to meet with counsel for Kaiser and expressed that they were uncertain which drugs link with which indication, counsel for Kaiser that very same day sent a letter to Defendants more explicitly linking the less expensive alternatives to their indication(s). *See* Nussbaum Decl. Ex. B (Radice Sept. 9, 2008 letter to Rouhandeh). Had Defendants simply been willing to engage in the required meet and confer process, this alleged issue (and most, if not all other issues) could have been resolved without burdening this Court with another motion.

#### a. Kaiser's Production Substantially Complied With Defendants' Requests

Kaiser responded to Defendants' interrogatories on August 1, 2008, ten days before such responses were due. Nussbaum Decl. at ¶ 4. In addition to the written answers to the

---

[2] The term "less expensive alternative treatments" is used here, as in Kaiser's discovery responses, interchangeably with the term " cheaper and more optimal."

9

interrogatories, Kaiser provided voluminous, and readily searchable and manipulable data files containing literally hundreds of thousands of records detailing Kaiser's costs and the number of prescriptions filled for the less expensive alternative drugs, as well as member-level data listing each Kaiser member who was prescribed Neurontin and one of the less expensive alternative drugs. *Id*. at ¶ 5-7. Kaiser provided a Microsoft Excel file listing twenty (20) less expensive therapeutic alternatives, and containing charts and data detailing Kaiser's cost and prescription data for each of these less expensive alternatives within each of Kaiser's eight Regions, broken down by quarter from 1994 thru 2005 (a total of 5,160 lines of data). *Id*. This file is searchable and can be mined by Defendants and their experts in myriad ways to pin point relevant information. *Id*.

Kaiser also produced an even more comprehensive Microsoft Access file. *Id*. That file has one Table with all of the raw data, and eight Queries (broken up by each of Kaiser's eight Regions), which summarize the data. *Id*. The Table has 261,567 unique records for 115,315 Kaiser members. *Id*. It includes the Region, the Year of Prescription, Patients ID, and the less expensive alternative drug that each member was prescribed in that year. *Id*. The Queries break down, by Region, which of the less expensive alternative drugs were prescribed to the 115,315 Kaiser members who were prescribed Neurontin.[3] *Id*. This file too is searchable and can be mined by Defendants and their experts in myriad ways to pin point relevant information.

Kaiser has spent scores of hours searching, programming, and producing the above data. To the extent that certain of the data is not in the format that Defendants prefer, Kaiser remains

---

[3] Defendants have brought to Kaiser's attention that, due to a data error, the Access file lists only seventeen (17) of the twenty (20) less expensive alternative drugs. Though the three drugs not included in the Access file were not heavily used (*e.g*., codine not in a compound only was prescribed twice), Kaiser is re-running the Access file to attempt to include all twenty (20) less expensive alternative drugs.

willing to work with Defendants. Indeed, once Defendants finally agreed to meet and confer with counsel for Kaiser on September 9, 2008, counsel for Kaiser: (1) provided added clarification *on that very same day* concerning the indications for each of the less expensive alternative treatments, *see* Nussbaum Decl. Ex. B (Radice Sept. 9, 2008 letter to Rouhandeh); (2) conferred with their client concerning a supplemental production containing even more information than already produced, Nussbaum Decl. at ¶ 17; and (3) within the next two weeks will produce the additional data (and declaration under oath) that Defendants seek, *id*. at ¶ 18.

Defendants' gamesmanship should not be rewarded. Even though Kaiser made its production on August 1, 200, ten days before that production was due, and Defendants allegedly reviewed that production on August 4, 2008, one week before it was due, Defendants did not seek any clarification of Kaiser's production or raise any question at all with respect to the production until Defendants moved for sanctions nearly a month later. Kaiser's recent production substantially complied with Defendants requests, and Kaiser is taking pains to supplement its production to provide Defendants even more information. If this Court does consider the merits of Defendants' premature Motion for Sanctions, Kaiser respectfully requests that this Court deny Defendants' motion.

### b. Aetna's Production Substantially Complies with Defendants' Requests

Like Kaiser, Aetna responded to Defendants' interrogatories on August 1, 2008, ten days before such responses were due. Lawrence Decl. at ¶ 5. In addition to the written answers to the interrogatories, Aetna also provided voluminous, readily searchable and manipulable data files containing records detailing Aetna's costs and the number of prescriptions filled for the less expensive alternative drugs. *Id*. This electronic data set of information was pulled from Aetna's databases and showed the claim detail (identification of drug, size, quantity, cost, etc.) of all

prescriptions for each person that was prescribed Neurontin. *Id.* This data includes all prescriptions processed for that claimant, including less expensive alternatives to Neurontin. *Id.*

This data is clearly responsive to Defendants' requests, and Coordinated Plaintiffs are taking pains to supplement the prior production to provide Defendants even more information. If this Court does consider the merits of Defendants' premature Motion for Sanctions, we respectfully requests that this Court deny Defendants' motion.

### c. Guardian is providing the data referenced in response to the Interrogatories

Guardian provided it responses to Interrogatories, like Kaiser, on August 1, 2008. Sandmann Decl. ¶ 5. Guardian also informed Defendants that it had written a new software program in order to produce the raw data and then convert the same into an Access database that could be searched and manipulated for the benefit of the Defendants and their expert. Sandmann Decl. ¶ 9. Defendants filed its motion the very day that this information was conveyed to Defendants without even allowing Guardian an opportunity to provide a date certain when the information would be produced.

**CONCLUSION**

Based on the foregoing demonstration of the Defendants' violation of Local Rules 7.1 & 37.1, and Defendants' false certification of compliance with the same, Defendants' Motion for Sanctions should be denied, and Plaintiffs respectfully request that this Court award sanctions against Defendants for their violations of the Local Rules.

Respectfully Submitted,

/s/ Linda P. Nussbaum
John D. Radice
**KAPLAN, FOX & KILSHEIMER, LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
(212) 687-1980
Counsel for Coordinated Plaintiffs
Kaiser Foundation Hospitals and
Kaiser Foundation Health Plan, Inc.

/s/ Mark M. Sandmann
Mark M. Sandmann
**RAWLINGS & ASSOCIATES, PLLC**
One Eden Parkway
LaGrange, KY 40031
(502) 814-2157
Counsel for Coordinated Plaintiff The
Guardian Life Insurance Company of
America

/s/ Gerald Lawrence
Gerald Lawrence
**LOWEY DANNENBERG COHEN &
    HART, P.C.**
One North Broadway, Suite 509
White Plains, NY 10601-2310
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
Counsel for Coordinated Plaintiff
Aetna, Inc.

## **CERTIFICATE OF SERVICE**

      I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on September 11, 2008.

                                                           /s/ Gerald Lawrence
                                                           Gerald Lawrence