UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND ) <br> SALES PRACTICES LITIGATION ) <br> _____ ) <br> THIS DOCUMENT RELATES TO: ) <br> _____ ) <br> THE GUARDIAN LIFE INSURANCE ) <br> COMPANY OF AMERICA v. ) <br> PFIZER, INC., and ) <br> ) <br> AETNA, INC. v. PFIZER, INC. ) <br> _____ ) | MDL Docket No. 1629 <br><br> Master File No. 04-10981 <br><br> Judge Patti B. Saris <br><br> Magistrate Judge Leo T. Sorokin |

## **DECLARATION OF LINDA P. NUSSBAUM**

LINDA P. NUSSBAUM declares under penalty of perjury in accordance with 28 U.S.C. § 1746 as follows:

1. I am a partner with the law firm Kaplan Fox & Kilsheimer LLP, counsel for Plaintiffs Kaiser Foundation Hospitals Inc. and Kaiser Foundation Health Plan, Inc., (together "Kaiser" or "Plaintiffs") in this action.

2. I submit this declaration in support of Plaintiffs' Opposition to Pfizer Inc. and Warner-Lambert Company's (together "Defendants") Motion for Sanctions and in support of Plaintiffs' Cross Motion for Sanctions.

3. I have personal knowledge of the matters stated herein.

4. Kaiser submitted its Fourth Supplemental Responses to Defendants' Second Set of Interrogatories on August 1, 2008. Those responses were due ten days later, on August 11, 2008.

5. Kaiser provided two voluminous, but readily searchable and manipulable data files containing literally hundreds of thousands of records detailing Kaiser's costs

1

and the number of prescriptions filled for the less expensive alternative drugs, as well as member-level data listing each Kaiser member who was prescribed Neurontin and one of the less expensive alternative drugs.

6. Kaiser provided a Microsoft Excel file listing twenty (20) less expensive therapeutic alternatives, and containing charts and data detailing Kaiser's cost and prescription data for each of these less expensive alternatives within each of Kaiser's eight Regions, broken down by quarter from 1994 thru 2005 (a total of 5,160 lines of data).

7. Kaiser also produced a Microsoft Access file. It has one Table with all of the raw data, and eight Queries (broken up by each of Kaiser's eight Regions), which summarize the data. The Table has 261,567 unique records for 115,315 Kaiser members. It includes the Region, the Year of Prescription, Patients ID, and the less expensive alternative drug that each member was prescribed in that year. The Queries break down, by Region, which of the less expensive alternative drugs were prescribed to the 115,315 Kaiser members who were prescribed Neurontin.[1]

8. Counsel for Kaiser was not contacted by Defendants' counsel concerning Kaiser's discovery responses until nearly one month after they were served, on August 26, 2008.

9. On August 26, 2008, Matt Rowland, counsel for Defendants, called my office seeking an immediate meet and confer concerning Defendants' Motion for Sanctions based on a purported failure to respond to Defendants' discovery requests.

---

[1] Defendants have brought to Kaiser's attention that, due to a data error, the Access file lists only seventeen (17) of the twenty (20) less expensive alternative drugs. Though the three drugs not included in the Access file were not heavily used (e.g., codine not in a compound only was prescribed twice), Kaiser is re-running the Access file to attempt to include all twenty (20) less expensive alternative drugs.

10. Because I was running out to a meeting when Mr. Rowland called on August 26, 2008, I informed Mr. Rowland that I could not meet and confer at that instant, and then was to be out of town without reliable cellphone service. I suggested alternate times the next business day once I returned to the office. Mr. Rowland rejected that offer.

11. I also immediately responded to Mr. Rowland's call with an e-mail sent at 1:39 p.m. on August 26, within minutes of Mr. Rowland's call, which contained an offer to engage in a meet and confer the next available business day on September 2, 2008 between 10 am and 12 pm EST or at 2 pm EST, or on the morning of September 3. *See* Ex. A. I never received a response to that offer.

12. Defendants' filed their Motion for Sanctions two days later, on August 28, 2008, without engaging a meet and confer with counsel for Kaiser.

13. Subsequent to Defendants' filing of the Motion for Sanctions, counsel for Kaiser emailed letters to Defendants on August, 28, September 4, 8, & 9, 2008. *See* Ex. B. Those letters, *inter alia*, reiterated Kaiser's offer to meet and confer, sought to clarify issues concerning Defendants' questions about Kaiser's discovery responses, informed Defendants that their Motion for Sanctions was premature, and informed Defendants that Kaiser would make a Cross Motion for Sanctions if Defendants did not withdraw their Motion for Sanctions and allow a meaningful meet and confer process to occur.

14. On September 9, 2008—twelve days *after* Defendants filed their Motion for Sanctions—Defendants first scheduled a meet and confer and Kaiser held a first meet and confer with Defendants.

15. I explained to Defendants that although Kaiser believed that it had already substantially complied with its discovery obligations, Kaiser would be willing to supplement its production further to assist Defendants in understanding the voluminous data produced.

16. Defendants claimed that they had reviewed Kaiser's discovery responses the day that the responses were received, and immediately found those responses wanting. Defendants did not explain why they waited for nearly a month to make any contact with Kaiser's counsel, and then only in the context of a sanctions motion.

17. I conferred with Kaiser on that same day, September 9, 2008, and began the process of additional data collection to further aid in Defendants' counsels' understanding and further supplement Kaiser's discovery responses.

18. Kaiser expects to be able to partially supplement its responses within one week, and expects to be able to completely supplement its responses to deal with all Defendants' concerns—first raised over a month after such responses were served—within two weeks.

19. I again requested during the September 9, 2008 call that Defendants withdraw their premature Motion for Sanctions. Defendants refused to do so.

20. I also requested during the September 9, 2008 call that Defendants stay their premature Motion for Sanctions pending Kaiser's supplemental production. Defendants refused to do so beyond three (3) business days.

21. I discussed with Defendants during the September 9, 2008 call that Kaiser would make a Cross Motion for Sanctions if Defendants did not withdraw or stay their

premature Motion for Sanctions. Defendants would not agree to withdraw or stay their premature Motion for Sanctions beyond three (3) business days.

Dated: New York, New York
       September 10, 2008

_____
Linda P. Nussbaum

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3.

ATTORNEY FOR PLAINTIFFS

/s/ Linda P. Nussbaum
LINDA P. NUSSBAUM

# EXHIBIT A

**From:** Linda P. Nussbaum
**Sent:** Tuesday, August 26, 2008 1:39 PM
**To:** 'mrowland@davispolk.com'
**Subject:** neurontin

Matt

I understand that you want to meet and confer about a discovery response.

I am out of the office through next Tuesday and will not have e mail or telephone access during some of that time.

I can meet and confer on September 2 from 10 am to noon or at 2 pm, or Sept 3 in the morning.

Sincerely
Linda

Linda P. Nussbaum
Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Fax: (212) 687-7714
E mail: lnussbaum@kaplanfox.com

8/28/2008

**EXHIBIT B**



Kaplan Fox & Kilsheimer LLP
850 Third Avenue
New York, NY 10022
phone 212.687.1980
fax 212.687.7714
email mail@kaplanfox.com
www.kaplanfox.com

August 28, 2008

*VIA ELECTRONIC MAIL*

James P. Rouhandeh, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York,, NY 10017

Re:   *In re: Neurontin Marketing, Sales Practices, and Products Liability Litigation*, No. 04-10981-PBS-LTS (D. Mass.)

Dear James:

I write on behalf of the Kaiser Foundation Hospitals and Kaiser Foundation Health Plan, Inc. ("Kasier") in response to Defendants' Emergency Motion for Sanctions filed today in the above case. Defendants' motion is premature as Defendants have not, as required by Local Rule 7.1(a)(2), "conferred and [] attempted in good faith to resolve or narrow the issue." Indeed, your moving papers misrepresent good faith compliance with that Rule.

Kaiser supplemented their responses to Defendants' interrogatories on August 1, 2008. Nearly one month later, on Tuesday, August 26, counsel for Defendants called Linda Nussbaum of this office, counsel for Kaiser, and demanded an *immediate* meet-and-confer concerning those responses. Defendants' counsel's demand of an immediate meet-and-confer is improper in any scenario, but it is especially so where Defendants made no attempt over the past month to schedule a meet-and-confer.

As Ms. Nussbaum explained on Tuesday, she was leaving for a meeting and was unable to meet-and-confer at that very instant, but she attempted to schedule a meet-and-confer in the near future. Defendants' counsel rejected that offer and refused anything other than an immediate meet-and-confer. Ms. Nussbaum followed up that call with an email proposing three separate times for a meet and confer upon her return to the office on September 2. *See* Aug. 28, 2008 Email from Linda Nussbaum to Matt Rowland. Defendants have not responded to that offer, and instead have prematurely and improperly filed a motion for sanctions.

**KAPLAN*FOX***

Defendants' premature motion is especially egregious where, as here, Defendants' willingness to engage in the required meet-and-confer would have resulted in a substantial narrowing, if not total elimination, of the issues raised in Defendants' motion. For example, the data produced with Kaiser's responses clearly lists less expensive alternative treatments. Most if not all of these treatments correspond very specifically to one of the indications listed in Kaiser's response to Interrogatory No. 1, *e.g.*, lithium carbonate is used as a treatment bipolar disorder, and generally is not used for neuropathic or nociceptive pain, nor for migraines. Defendants' motion's main request for "simple lists" linking each alternative treatment to an indication therefore seems redundant of material already produced and therefore unnecessary, *but is nonetheless a request that Kaiser likely would have been willing (and may still be willing) to accommodate* had Defendants simply engaged in the required meet-and-confer process.

Kaiser remains available for a meet-and-confer on September 2, at any time from 10am to noon, or at 2 pm on that same day, or during the morning of September 3. If those times do not work for Defendants, please propose other times. Kaiser stands willing to engage in a meet-and-confer which will narrow or eliminate the issues addressed in Defendants' motion. Additionally, Kaiser requests that Defendants withdraw their premature motion for sanctions, a motion whose only effect will be to waste the parties' and the Court's resources.

Sincerely,

John D. Radice

Enc.
cc: Plaintiffs' Counsel



Kaplan Fox & Kilsheimer LLP
850 Third Avenue
New York, NY 10022
phone 212.687.1980
fax 212.687.7714
email mail@kaplanfox.com
www.kaplanfox.com

September 4, 2008

**VIA ELECTRONIC MAIL**

Matthew B. Roland, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Re:   *In re: Neurontin Marketing, Sales Practices, and Products Liability Litigation*, No. 04-10981-PBS-LTS (D. Mass.)

Dear Matt:

    Defendants' (non)effort to meet and confer was not "foreclosed by counsel for Kaiser," and counsel for Kaiser stands ready to meet and confer to narrow or resolve Defendants' issues concerning Kaiser's discovery responses. Defendants' September 3 letter confirms that Defendants called Linda Nussbaum of this firm on August 26, and then, two days later, filed a motion for sanctions. Defendants did this despite the fact that Ms. Nussbaum offered—on the very same day that Defendants called, August 26—to meet and confer when she returned to the office on September 2.

    Defendants claim that "[g]iven the emergent nature of the motion . . . waiting seven days to confer was not a feasible option." This claim is not well founded. Kaiser FedEx-ed its supplemental discovery responses on August 1—ten days *before* those responses were actually due. Defendants sat on those responses for nearly a month and did not contact counsel for Kaiser to express any issues or request any clarification of those responses until August 26. The "emergency," such as it was, was entirely of Defendants' making; it also has dissipated entirely, now that the court has granted Defendants' motion for an extension of time to file expert reports.

    Defendants' faux-emergency notwithstanding, Local Rule 7.1(a)(2) makes clear that: "*No motion* shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." Local Rule 7.1(a)(2) (emphasis added). Importantly, Local Rule 37.1 provides that opposing counsel in a discovery dispute—Kaiser here—has seven (7) days to respond to a request for a meet and confer,

and fourteen (14) days within which to actually attend the meet and confer. Here, Ms. Nussbaum responded to Defendants' request for a meet and confer on the same day that it was made (August 26), and proposed to meet and confer seven days later (September 2)—well within Local Rule 37.1's time limits. Defendants therefore both failed to comply with Local Rules 7.1 & 37.1, and then compounded their error by falsely certifying compliance with those Local Rules. The District of Massachusetts has held that such conduct itself is sanctionable. *Syrjala v. Total Healthcare Solutions, Inc.*, 186 F.R.D. 251 (D. Mass. 1999) (sanctioning attorneys both for prematurely filing a discovery motion before the time period set forth in Local Rule 37.1 and for falsely certifying compliance with that Local Rule).

Unfortunately, it seems that Defendants have no interest in meeting and conferring concerning Kaiser's discovery requests. Roland Sept. 3, 2008 Letter to Radice at *2 ("If, however, Kaiser seeks merely to argue that its response to the Interrogatories was not deficient, or that it should be allowed to supplement its response (more than thirty days after it was originally served), defendants would not consider this an effort to meet-and-confer on the pending Motion."). Defendants apparently believe that success on a prior motion to compel obviates the need to engage in the meet and confer process mandated by Local Rules 7.1 & 37.1. That is incorrect.

If Defendants do not revisit their position, withdraw their premature motion for sanctions, and agree to a meet and confer on the merits, as required by Local Rules 7.1 & 37.1, Kaiser will vigorously oppose Defendants' motion and will consider filing its own motion for sanctions based on the frivolousness of the original motion for sanctions.[1] Of course, if Kaiser does decide to take that route, Kaiser will first comply with Local Rule 7.1 and Local Rule 37.1, even though compliance may not strictly be necessary for a cross-motion for sanctions. *Cf. Eon-Net LP v. Flagstar Bancorp*, 249 Fed. Appx. 189, 197 (Fed. Cir. 2007) (unpublished) (noting that "a party defending a Rule 11 motion need not comply with Rule 11's safe harbor provisions in filing a cross-motion for sanctions based on the frivolousness of the original motion for sanctions").

This letter writing accomplishes little for either of our clients and does nothing to advance the litigation. As stated above, Kaiser remains ready to participate in a meet and confer on the discovery issues you raise. Please let me know whether Defendants will rethink their position.

Sincerely,

John D. Radice

cc: Plaintiffs' Counsel

---

[1] I understand that Defendants' motion is similarly premature as to the other Coordinated Plaintiffs, Aetna and Guardian, and that those Plaintiffs also are contemplating filing a cross motion for sanctions if Defendants do not withdraw their motion.



Kaplan Fox & Kilsheimer LLP
850 Third Avenue
New York, NY 10022
phone 212.687.1980
fax 212.687.7714
email mail@kaplanfox.com
www.kaplanfox.com

September 8, 2008

*VIA ELECTRONIC MAIL*

Matthew B. Roland, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Re: *In re: Neurontin Marketing, Sales Practices, and Products Liability Litigation*, No. 04-10981-PBS-LTS (D. Mass.)

Dear Matt:

Counsel for Kaiser is not available for a meet and confer today, Monday, September 8, but is available all day tomorrow, Tuesday, September 9. Please let us know what time works for Defendants.

As discussed in my August 28th and September 5th letters, Defendants' Motion for Sanctions is premature and improper under Local Rules 7.1 & 37.1. Please let me know whether Defendants will withdraw their motion, without prejudice to re-file should the parties be unable to reach agreement on the substantive issues during our meet and confer. If Defendants do not withdraw their Motion, Kaiser will make a cross motion for sanctions. Hopefully, this will not be necessary, but if it is we are prepared to discuss this issue too during our meet and confer.

Sincerely,

John D. Radice

cc: Plaintiffs' Counsel



Kaplan Fox & Kilsheimer LLP
850 Third Avenue
New York, NY 10022
phone 212.687.1980
fax 212.687.7714
email mail@kaplanfox.com
www.kaplanfox.com

September 9, 2008

<u>*VIA ELECTRONIC MAIL*</u>

James P. Rouhandeh, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York,, NY 10017

Re:   *In re: Neurontin Marketing, Sales Practices, and Products Liability Litigation*, No. 04-10981-PBS-LTS (D. Mass.)

Dear James:

Today we had our first meet and confer concerning the Motion for Sanctions that Defendants filed on August 28, 2008. Though we believe that Kaiser's interrogatory responses express mailed on August 1, 2008—ten days before they were due on August 11, 2008—substantially or completely respond to Defendants' second set of interrogatories, we are willing to work with you to provide additional information discussed on today's call.

As we discussed, Kaiser produced quarterly data going back to 1994 detailing the cost and number of prescriptions for a list of twenty drugs that were cheaper and more optimal than Neurontin.[1] In addition, Kaiser produced voluminous, but easily searchable and manipulable data showing which Kaiser plan members also took any of the drugs identified as cheaper and more optimal than Neurontin.

You stated that you were unclear as to which of the less expensive therapeutic alternatives correspond to which indication. That linkage appears obvious to us and we believe should be clear to anyone involved in this litigation; that linkage also is explicit in the Work Files produced with Raymond Hartman's expert report. For the sake of completeness, the following chart should resolve any confusion that remains:

---

[1] This letter, like the interrogatory responses, uses the terms "cheaper and more optimal" and "less expensive therapeutic alternatives" interchangeably.

**KAPLAN**_Fox_

| Drug | Indication(s) | | |
|---|---|---|---|
| amitriptyline hydrochloride | | migraine | neuropathic pain |
| capsaicin | | | neuropathic pain |
| carbamazepine | bipolar | | neuropathic pain |
| codeine | | | | nociceptive pain |
| codeine phosphate | | | | nociceptive pain |
| codeine sulfate | | | | nociceptive pain |
| desipramine hydrochloride | | | neuropathic pain |
| dihydrocodeine bitartrate | | | | nociceptive pain |
| hydrocodone bitartrate | | | | nociceptive pain |
| lithium carbonate | bipolar | | |
| metoprolol succinate | | migraine | |
| metoprolol tartrate | | migraine | |
| neurontin | | | |
| nortriptyline hydrochloride | | | neuropathic pain |
| oxycodone hydrochloride | | | | nociceptive pain |
| oxycodone terephthalate | | | | nociceptive pain |
| propranolol hydrochloride | | migraine | |
| timolol | | migraine | |
| timolol maleate | | migraine | |
| valproate sodium | | migraine | |
| valproic acid | bipolar | | |

    We are in the process of conferring with our client and, though we do not believe it necessary, plan to supplement our production further to address the issues raised during our call.

    As you know, we believe that Defendants' motion for sanctions was premature and improperly filed due to non-compliance with Local Rules 7.1 & 37.1. We requested that you withdraw that motion without prejudice, and you declined. We write now to request, as we did during our meet and confer today, that you agree to suspend our response date to that motion for two weeks. By that time you will have our supplemental production, likely obviating the concerns you had. We think it best to avoid burdening the court with a motion whose underlying issues likely can be resolved by the parties. As discussed during our meet and confer today, if you do not agree to withdraw your motion or at least suspend our response date for two weeks, we will file a cross-motion for sanctions against Defendants due to your failure to comply with Local Rules 7.1 & 37.1.

    Please let me know your response shortly, as our opposition currently is due on Thursday.

                                                                  Sincerely,

                                                                  John D. Radice

cc: Plaintiffs' Counsel