# EXHIBIT 4



AlaFile E-Notice

03-CV-2006-001252.00
Judge: HON. JOHNNY HARDWICK

To:  WAHL BRIAN ALEXANDER
bwahl@bradleyarant.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

ALABAMA ASSOCIATED GENERAL CONTRACTORS INC ET AL VS PFIZER INC ET AL
03-CV-2006-001252.00

The following matter was FILED on 4/29/2008 12:56:15 PM

Notice Date:      4/29/2008 12:56:15 PM

MELISSA RITTENOUR
CIRCUIT COURT CLERK
MONTGOMERY COUNTY, ALABAMA
251 S. LAWRENCE STREET
MONTGOMERY, AL 36102

334-832-4950

ELECTRONICALLY FILED
4/29/2008 12:55 PM
CV-2006-001252.00
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
MELISSA RITTENOUR, CLERK

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| ALABAMA ASSOCIATED GENERAL CONTRACTORS SELF-INSURED WORKERS' COMPENSATION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PFIZER, INC., successor in interest to WARNER-LAMBERT COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION NUMBER: CV-06-1252

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

This cause is before the Court on (1) Pfizer, Inc.'s Motion for Summary Judgment as to all remaining claims of the Alabama Self-Insured Worker's Compensation Fund; and (2) Plaintiffs' Motion for Partial Summary Judgment.[1]  The Court heard oral argument on these pending motions on February 21, 2008.  The Parties' respective positions were argued by Philip H. Butler, Esq. for Pfizer, Inc. and Robert R. Riley, Jr., Esq. for the Plaintiffs.

On May 5, 2006, the Alabama Self-Insured Workers' Compensation Fund (hereinafter "The Fund" or "ASIWCF") and its co-Plaintiffs[2] filed their original Complaint against Pfizer, Inc. ("Pfizer").  Thereafter, Plaintiffs filed their First Amended Complaint on October 10, 2006, and their Second Amended Complaint on January 11, 2007.  The Second Amended Complaint is

---

[1] Plaintiffs' did not argue their Motion for Partial Summary Judgment at this Court's February 21, 2008 hearing.  Because the Court has concluded that summary judgment is due Pfizer, Plaintiffs' Motion will be denied as moot.

[2] The Fund's co-Plaintiffs are the Alabama Associated General Contractors Self-Insurance Workers' Compensation Fund, the Automotive Aftermarket Fund, the Alabama Workers' Compensation Self-Insurance Fund, the Alabama Trucking Association Worker's Compensation Self-Insurance Fund, the Association of County Commissioners Self-Insurance Fund and the WorkersFirst Compfund.

now the operative pleading in this matter, and it contains claims by ASIWCF and its co-Plaintiffs against Pfizer for (1) wantonness; and (2) unjust enrichment.[3]

In this action, The Fund and its co-Plaintiffs have alleged that Pfizer improperly marketed and promoted the prescription drug Neurontin to patients and physicians for the purpose of increasing Neurontin's off-label prescription; that The Fund was required to (and did) pay for Neurontin prescriptions written for off-label uses; and that, as a result of Pfizer's allegedly improper promotional campaign, off-label prescriptions were written by physicians (and accordingly paid for by The Fund) which would not have been written otherwise. The Fund and its co-Plaintiffs claim as damages the amounts they have paid for Neurontin which was prescribed for off-label uses resulting from Pfizer's allegedly improper promotional campaign.

Discovery has been underway in this case since 2006, and the time has come for this Court to decide whether a triable issue of fact remains. For the reasons to be discussed the Court has concluded that Pfizer's Motion for Summary Judgment is due to be GRANTED.

## II.     MOTION FOR SUMMARY JUDGMENT STANDARD

A summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ala. R. Civ. P. 56(c)(3). If the movant meets its initial burden, the burden then shifts to the nonmovant to present "substantial evidence" of a genuine issue of material fact. Ex parte Alfa Mut. Gen. Ins. Co., 742 So. 2d 182, 184 (Ala. 1999). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989); see also Ala. Code

---

[3] The Second Amended Complaint also contains a negligence count, see Second Am. Compl., at ¶¶ 92 – 104, but Plaintiffs abandoned that claim on March 6, 2007. See Pls.' Post-Hr'g Br. On Def. Pfizer's Mot. to Dismiss Negligence and Wantonness Claim at 3.

§ 12-21-12(d). In determining whether a genuine issue of material fact exists, the evidence must be viewed in the light most favorable to the nonmovant and all doubts should be resolved in favor of the nonmovant. Jones v. BP Oil Co., 632 So. 2d 435, 436 (Ala. 1993).

### III. UNDISPUTED FACTS

The allegations of Plaintiffs' Second Amended Complaint coupled with the undisputed facts, viewed in a light most favorable to The Fund, are as follows:

#### Case-Specific Facts

The Fund and its co-Plaintiffs are self-insured members of non-incorporated pooling agreements among employers, instituted pursuant to Alabama Code § 25-5-9, under which employers pool their workers' compensation liabilities. Second Am. Compl. at ¶ 10. As a "workers' compensation third-party payor," The Fund pays for work-related medical costs incurred by its members' employees, including the costs of their prescription medications. Id. at ¶¶ 10, 83. It is undisputed, for purposes of Pfizer's Motion, that The Fund has reimbursed pharmacies for Neurontin prescribed off-label to its members' employees for work-related injuries.[4]

The Fund has produced two Rule 30(b)(6) witnesses to testify on its behalf: Freda Bacon and Lynne Sutter. Ms. Bacon is The Fund's Administrator, and Ms. Sutter is the Claims Director for Employers Claim Management ("ECM"), The Fund's third-party administrator responsible for handling claims and deciding whether The Fund should pay for its members' employees medical treatment and prescription medication.

---

[4] Because the Court is assuming that Neurontin was prescribed off-label to The Fund's covered employees, it is not necessary at this time for the Court to take up the thorny issue of the Affidavit of Amy K. Bolt which was discussed at length at the February 21, 2008 hearing.

Based on Sutter's and Bacon's testimony, it is clear that The Fund's covered employees' physicians are responsible for deciding "what medicines are necessary for [the] injured employee" and, so long as an "authorized physician makes the decision that . . . [the] prescription[] is related to the [employee's] injury and [is] medically necessary," The Fund is legally obligated to pay for that prescription. Bacon Dep. at 109, 119; Sutter Dep. at 46; see also Ala. Code § 25-5-77(a) (requiring employers to pay the costs of their employees' reasonable and necessary medical expenses); City of Auburn v. Brown, 638 So. 2d 1339, 1340-41 (Ala. Civ. App. 1993) (holding that an employer cannot dictate the course of treatment for an injured employee if the employee is under the care of an authorized treating physician).

The Fund has never purchased Neurontin directly from Pfizer and there is no evidence of any communication between The Fund or its members' employees' physicians and Pfizer concerning Neurontin. Bacon Dep. at 163. There is no evidence of any relationship at all between Pfizer and The Fund or between Pfizer and any treating physician who has prescribed Neurontin for which The Fund has reimbursed any pharmacy.

The Fund has never communicated with a single physician who prescribed Neurontin off-label to one of its covered employees for the purpose of determining why the physician prescribed Neurontin to that employee. Bacon Dep. at 53-54; 143-44; 162; 173; Sutter Dep. at 50, 66, 69. At no time has The Fund taken any steps "to determine whether any authorized physicians of The Fund have been affected by any Pfizer marketing[.]" Bacon Dep. at 166; see also id. at 147-48, 162 (testifying that The Fund has not asked any of the prescribing physicians "whether they were affected in any way by any Pfizer promotion of the medicine."). The Fund's counsel conceded at the February 21, 2008 hearing that The Fund could not produce even one prescribing physician who would testify that he or she was influenced in any way by Pfizer's

4

allegedly improper marketing campaign to write an off-label Neurontin prescription for one of The Fund's members' employees.

There is no evidence that Neurontin prescribed off-label to any of The Fund's members' employees failed to work as prescribed. There is no evidence that any covered employee suffered any injury as a result of his or her being prescribed Neurontin for an off-label use. The Fund has not contacted any of its members' employees to determine "whether Neurontin was effective or not" to treat their work-related injuries. Sutter Dep. at 70-71; see also Bacon Dep. at 143, 162 (testifying that The Fund has not asked any of its members' "employees whether the medicine worked or not.").

### Off-Label Prescribing

Once a medication is approved by the Food and Drug Administration ("FDA") it can be prescribed by a licensed physician for any use. So called "off label" prescribing of medicines, including Neurontin, is not only permitted, it is a well-accepted and exceedingly common part of medical practice. See Ala. Code § 27-1-10.1 ("Off-label use of an FDA-approved drug is legal when prescribed in a medically appropriate manner and is often necessary to provide needed care. Approximately 50% of cancer drug treatment is for off-label indications. The FDA and the Federal Department of Health and Human Services recognize the wide variety of effective uses of FDA-approved drugs for off-label indications.").

### The 2004 Warner-Lambert Guilty Plea

Marketing medications for off-label uses is a different matter. On June 7, 2004, Warner-Lambert Company LLC[5] ("Warner-Lambert") entered a criminal guilty plea in the U.S. District Court for the District of Massachusetts, in which Warner-Lambert acknowledged that it had

---

[5] Warner-Lambert was acquired by Pfizer after the events giving rise to the guilty plea.

5

promoted Neurontin for off-label uses in violation of certain provisions of the Federal Food, Drug and Cosmetic Act. Specifically, Warner-Lambert pled guilty to two specific misdemeanor violations[6] related to its promotion of Neurontin for off-label use in 1995 and 1996: (1) distributing a drug intended for unapproved uses in violation of 21 U.S.C. §§ 331(d), 333(a)(2), and 355(a); and (2) distributing a drug that was intended for unapproved uses and that lacked adequate direction for such uses in violation of 21 U.S.C. §§ 331(a), 333(a)(2), and 352(f)(1).

In connection with its guilty plea, Warner-Lambert agreed to pay a fine of $240 million. Neither of Warner-Lambert's admitted violations turned on Neurontin being an unsafe or ineffective treatment for any of the off-label uses at issue. The guilty plea related solely to conduct from April 1995 to August 20, 1996.

The conduct which resulted in the criminal plea in federal court in Boston, Massachusetts was described by the federal government in the criminal information as having occurred in "Massachusetts and elsewhere." While many locations are identified in the criminal information and in the guilty plea of Warner-Lambert, none of those locations are Alabama or any place in Alabama. It does not appear that any of the conduct which is the subject of the Warner-Lambert criminal plea related to Alabama.

### The Landefeld Report

In opposition to Pfizer's Motion for Summary Judgment as to The Fund, Plaintiffs offer an Expert Consultant's Report (the "Landefeld Report") filed in another Massachusetts case, United States *ex rel.* Franklin v. Pfizer, Inc., *et al.*, No. 96-11651-PBS-CIV (D. Mass.). The Landefeld Report was executed on January 31, 2003, over three (3) years prior to the filing of the

---

[6] The violations were treated as felonies due to a prior conviction of Warner-Lambert, unrelated to Neurontin, under the same statute.

6

instant matter. On its face, the Landefeld Report does not relate to any physicians or conduct in Alabama. Viewing the report in a light most favorable to The Fund, which Rule 56 requires, the Landefeld Report stands for the following general propositions: (1) Dr. Landefeld and his colleagues are of the opinion that medical literature on the effect of pharmaceutical industry marketing on physician prescribing behavior demonstrates that, as a general matter, pharmaceutical industry marketing influences physician prescribing behavior; (2) Dr. Landefeld and his colleagues are of the opinion that off-label marketing by Warner-Lambert "very likely" purposefully and successfully increased the volume of Neurontin prescribed off-label; (3) Dr. Landefeld and his colleagues are of the opinion that industry-sponsored events attended by nine (9) physicians from states other than Alabama[7] were "very likely" to have been the primary cause of their increased Neurontin prescribing generally and for off-label uses; and (4) Dr. Landefeld and his colleagues are of the opinion that little evidence supports the efficacy of Neurontin for many off-label conditions for which it is listed as being efficacious in DrugDex®.[8]

### III.    ELEMENTS OF REMAINING CLAIMS

The Fund's remaining claims are for wantonness and unjust enrichment. Wantonness requires The Fund to prove Pfizer breached a duty to The Fund, resulting from conscious action which *proximately caused* The Fund's damages. Carter v. Chrysler Corp., 743 So. 2d 456, 463 (Ala. Civ. App. 1998). Unjust enrichment, a *quasi*-contractual claim, requires The Fund to offer proof that Pfizer was *unjustly* enriched at The Fund's expense. Mantiply v. Mantiply, 951 So. 2d 638, 654 (Ala. 2006). While an unjust enrichment claim has no explicit causal element like traditional tort and contract claims, it obviously requires proof of causation (i.e., the enrichment

---

[7] The prescribing physicians identified in the Landefeld Report were from Massachusetts, New York and Connecticut.

[8] DrugDex® is an online directory of referenced drug information covering FDA-approved and investigational prescription and nonprescription drugs utilized by healthcare professionals.

must be "unjust."). See, e.g., Dickinson v. Cosmos Broad. Co., 782 So. 2d 260, 266 (Ala. 2000) ("The essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant **because of** mistake or fraud.") (emphasis added); Opelika Prod. Credit Assoc., Inc. v. Lamb, 361 So. 2d 95, 99 (Ala. 1978) ("The remedy of quasi-contract is founded upon the familiar principle of avoiding unjust enrichment. Where the plaintiff has suffered a detriment, and the defendant has received a benefit **as a result**, it is said that justice demands the repayment by the defendant of the plaintiff's loss. The measure of the defendant's liability is, however, limited to the value of the benefit received, whether or not it is equal to, less than, or greater than the plaintiff's loss. **But in any case, there must be a detriment, and a resulting benefit, and the two must be related**.") (emphasis added); see also Ala. Pattern Jury Instruction 10.10 Quasi Contract Definition ("A quasi contract is an obligation which the law creates in the absence of an express contract or agreement. It arises from the relationship of the parties and is created on principles of unjust enrichment. When because of the acts of the parties, or others, one comes into possession of . . . money, or its equivalent, **under such circumstances that in equity and good conscience he ought not be allowed to retain it and which in justice and fairness belongs to another** the law implies the obligation to pay or deliver it to the one entitled thereto.") (emphasis added).

## IV.   DISCUSSION

Pfizer first argues it is due summary judgment because The Fund has failed to adduce any evidence, much less substantial evidence, that any improper marketing of Pfizer affected or influenced the prescribing behavior of any of The Fund's covered employees' physicians. That is to say, Pfizer takes the position that The Fund has failed to offer proof of causation. Pfizer

also argues that The Fund has failed to offer proof of any cognizable injury, that Alabama law required The Fund to make the reimbursement payments it now seeks to avoid, and that as a purely legal matter, Alabama's doctrine of proximate causation does not allow the type of indirect action The Fund seeks to assert on these facts.

Because Pfizer's primary argument, if accepted, would require entry of summary judgment against The Fund, The Court will address it first.

### Failures of Proof

(A)   Failure of Proof on the Essential Element of Causation:

It is undisputed that Plaintiffs have no evidence at all linking Pfizer's presumed misconduct, resulting in the Warner-Lambert criminal plea in Boston, Massachusetts, to reimbursement for even a single off-label Neurontin prescription for a covered employee in Alabama. The Fund has never even spoken to any prescribing physicians in Alabama about why they prescribed Neurontin to The Fund's covered employees. The Fund gathered no information, by deposition, affidavit or otherwise, which constitutes evidence, much less substantial evidence, that any Neurontin prescription to The Fund's covered employees was caused or influenced by improper behavior on the part of Pfizer. Tellingly, The Fund <u>has not taken a single prescribing physician's deposition</u> in this case, and it has not even discussed this matter with its own covered employees.

Plaintiff has attempted to fill this evidentiary void by borrowing the Landefeld Report which was generated nearly five (5) years ago for use in another matter in another jurisdiction. On its face, the Landefeld Report has nothing to do with the facts of this case. While Mr. Landefeld and his colleagues may feel that Neurontin prescriptions as a whole were "very likely" increased by improper marketing, that general, non-commital assertion by an individual who has

9

not even offered testimony is <u>not</u> substantial evidence of causation. Even if we assume that the Landefeld Report is competent evidence that Pfizer marketing influenced the prescribing behavior of the nine (9) physicians identified within that report, those physicians were from Massachusetts, New York and Connecticut - - <u>not Alabama</u>.

From the time this case was filed in May of 2006 until now, The Fund has failed to establish any connection at all between any Pfizer marketing and any of The Fund's reimbursement payments. At best, The Fund's Landefeld "evidence" is of insufficient weight and quality to allow fair-minded persons in the exercise of impartial judgment to reasonably infer causation in this case. Therefore, Pfizer's Motion for Summary Judgment as to The Fund is due to be GRANTED.

(B)   <u>Failure of Proof on the Essential Element of Injury</u>:

Alabama law requires a plaintiff to establish that it was injured by a defendant's misconduct to recover on a claim for wantonness or unjust enrichment. See <u>Scrushy v. Tucker</u>, 955 So. 2d 988, 1011 (Ala. 2006) (unjust enrichment); <u>Carter v. Chrysler Corp.</u>, 743 So. 2d 456, 463 (Ala. Civ. App. 1998) (wantonness). The Fund argues that it has been injured because it made reimbursement payments for its covered employees' off-label Neurontin prescriptions even though the prescriptions were ineffective to treat the conditions for which they were prescribed. The Fund claims it is not required to come forward with any proof that its covered employees were injured or that Neurontin was unsafe or ineffective in treating them. Indeed, it has no such proof, and it has not even attempted to gather it. Rather, The Fund seems to take the position that Warner-Lambert's 2004 criminal plea is sufficient evidence that The Fund was damaged. See The Fund's Resp. to Pfizer's Motion for Summary Judgment at p. 13. The Fund also appears to take the position that the Landefeld Report demonstrates that The Fund was damaged.

Pfizer claims that The Fund has failed to come forward with any competent evidence that it was damaged either directly or derivatively.

The Fund's contention that the Warner-Lambert criminal plea is evidence that Neurontin was ineffective to treat the off-label uses for which it was prescribed to The Fund's covered employees can be summarily rejected. On its face the criminal plea does not turn on efficacy. The plea relates to <u>improper marketing</u>. In fact, as the Court interprets the criminal plea, Warner-Lambert could have been guilty of violating the referenced federal statutes even if it had been making entirely truthful statements about Neurontin's efficacy for off-label uses. Quite simply, the criminal plea is not evidence that The Fund or its covered employees were injured.

For the same reasons discussed <u>supra</u> with respect to proof of causation, the Landefeld Report is not competent evidence that The Fund or its covered employees were injured in this case. Only one portion of the Landefeld Report even addresses efficacy. That section, by no means conclusive, is simply a summary of Landefeld's and his co-authors' evaluation of various published studies on the effectiveness of Neurontin for various treatments. Viewed in a light most favorable to The Fund, the Landefeld Report's general observations can be interpreted as concluding that there are numerous off-label indications for Neurontin listed in DrugDex® for which there is insufficient scientific support by which to assess Neurontin's efficacy. The Landefeld Report is by no stretch of the imagination proof of injury in this case.

It is undisputed that there is no evidence that Neurontin injured or failed to work for any of The Fund's covered employees. Moreover, The Fund cannot establish a direct injury because it had no relationship or communications with Pfizer, and it has no evidence of any relationship(s) and/or communications between Pfizer and The Fund's covered employees' physicians. The Court has no choice but to conclude that The Fund has failed to adduce any

11

evidence, much less substantial evidence, that it was injured, either directly or derivatively, by any act or omission of Pfizer. For this additional reason, Pfizer's Motion for Summary Judgment is due to be GRANTED. See, e.g., Pfizer, Inc. v. Farsian, 682 So. 2d 405, 407-08 (Ala. 1996) (dismissing a claim brought against a medical device manufacturer, notwithstanding allegations that the manufacturer had engaged in fraudulent marketing and had deceived physicians and patients, because the device had caused no injury).

## Legal Barriers

(C) <u>Alabama's Law of Proximate Cause is a Legal Bar to The Fund's Claims</u>:

The Fund's failure of proof on the essential elements of causation and injury are not the only barriers to the claims it is trying to assert against Pfizer. Alabama's law of proximate cause forecloses a third-party payor ("TPP") claim such as this one. Alabama law will not "undertake to trace back the chain of causes indefinitely" because doing so "would lead to inquiries far beyond human power and wisdom – in fact, infinite in their scope." Birmingham Ry., Light & Power Co. v. Ely, 62 So. 816, 819 (Ala. 1913). It "stops at the first link in the chain of causation, and looks only to the person who is the proximate cause of the injury." Id. Based on this principle, the Alabama Supreme Court has often rejected direct tort actions brought against an alleged tortfeasor who indirectly increased a TPP's costs by injuring the TPP's beneficiary. See, e.g., City of Birmingham v. Crow, 101 So. 2d 264, 265 (Ala. 1958) (holding that the City could not file a direct suit against its employee's tortfeasor for damages the City paid on behalf of the injured employee); City of Birmingham v. Walker, 101 So. 2d 250, 258-59 (Ala. 1958) (affirming the trial court's denial of the City's motion to intervene as a plaintiff in a suit against its employee's tortfeasor because, among other things, "the City ha[d] no relation to the third party who injured the City's employee other than that of contractor with

the injured employee....").[9] Accordingly, and even assuming *arguendo* that there was some sort of connection between Pfizer, The Fund, and the prescribing practices of The Fund's covered employees' physicians, The Fund's claims are still insufficient to survive Pfizer's motion for summary judgment.

Courts outside Alabama confirm that the proximate cause doctrine bars direct tort actions brought by TPPs like The Fund because such entities are too remote. In United Food, for example, the Eleventh Circuit considered the propriety of a union health-care fund's attempt to recover, from tobacco manufacturers, the healthcare-related costs it had incurred when its participants became afflicted with tobacco-related illnesses. See 223 F.3d at 1272, 1273. The TPP-plaintiff's allegations were based – just like The Fund's – on the manufacturers' alleged attempt to mislead the public via advertising campaigns and the concealment of scientific research. Id. at 1272. Citing "Alabama's law of proximate cause," which requires a defendant's misconduct to be the "proximate cause," and not just the "remote cause," of a plaintiff's injuries, the Eleventh Circuit held that the "[p]laintiff's claims must fail." Id. at 1273. Pfizer's Motion for Summary Judgment is, therefore, due to be GRANTED.

(D) Alabama Law Compels The Fund to Pay for Its Covered Employees Off-Label Neurontin:

Alabama's workers' compensation law requires The Fund to cover all of its members' employees' prescription costs – including those written for off-label uses – so long as the prescriptions are written by authorized physicians. Ala. Code § 25-5-77(a) (2000) (requiring employers to pay the costs of their employees' reasonable and necessary medical expenses); see also Ala. Code § 27-1-10.1 (c)(1) (2007) (requiring insurers to provide coverage for the off-label

---

[9] See also City of Birmingham v. Trammell, 101 So. 2d 259, 261-63 (Ala. 1958) (affirming the trial court's denial of the City's motion to intervene as a party plaintiff in a suit against the City's employee's tortfeasor); City of Birmingham v. Jones, 101 So. 2d 263, 263 (Ala. 1958) (same); City of Birmingham v. Tate, 101 So. 2d 263, 264 (Ala. 1958) (same).

13

prescription of pharmaceuticals); City of Auburn v. Brown, 638 So. 2d 1339, 1340-41 (Ala. Civ. App. 1993) (holding that an employer cannot dictate the course of treatment for an injured employee if the employee is under the care of an authorized treating physician); see Sutter Dep. at 45 (confirming that The Fund's pharmacy benefit managers "have to fill" all prescriptions written by "authorized physician[s]").

The Fund is not aware: (1) "of any prescription that The Fund has paid for Neurontin that was not related to . . . a worker's compensation injury that is subject to coverage under the workmen's compensation laws of Alabama"; or (2) of Neurontin ever being prescribed to an injured employee when it was not medically necessary. Sutter Dep. at 49-50, 68. Accordingly, The Fund has not adduced any evidence, much less substantial evidence, that it paid for a single Neurontin prescription that it was not legally obligated to pay for. Were The Fund to prevail in its claims, it would have manipulated its way, by use of civil litigation, around the requirements of Alabama law. For this additional reason, summary judgment is due to be GRANTED. See, e.g., In re Rezulin Prods. Liab. Litig., MDL No. 1348, 05 Civ. 8397 (S.D.N.Y. Nov. 26, 2007) (dismissing TPP's claim for reimbursement costs for prescription medications where undisputed evidence showed that the TPP allegedly was injured only because federal and state law required the TPP to pay for the reimbursements and not because the TPP was deceived).

## V.   CONCLUSION

For the reasons discussed above, it is hereby ORDERED as follows:

1.   Pfizer, Inc.'s Motion for Summary Judgment as to all remaining claims of the Alabama Self-Insured Worker's Compensation Fund is GRANTED;

2.   Plaintiffs' Motion for Partial Summary Judgment is DENIED as MOOT;

3.  Plaintiffs' Motion to Stay Discovery Pending Determination of Defendant Pfizer, Inc.'s Motion for Summary Judgment is DENIED as MOOT.

4.  If Pfizer, Inc. intends to file similar summary judgment motions as to the remaining Plaintiffs, it must do so within fourteen (14) days of this Order.

5.  The Parties are given until May 14, 2008 to report to the Court as to how they foresee this matter proceeding, if at all.

DONE this 25th day of April, 2008.

Johnny Hardwick Jr.
Circuit Court Judge

cc:  Steven A. Martino
     W. Lloyd Copeland
     Frederick T. Kuykendall, III
     Charles H. Dodson
     Joseph David Steadman
     Gregory C. Cook
     Susan S. Nettles
     Robert Renfroe Riley, Jr.
     Kallie Chambers Lunsford
     Robin G. Laurie
     Philip H. Butler
     Brian A. Wahl