UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------x
                                                :
In re: NEURONTIN MARKETING, SALES PRACTICES,    :
       AND PRODUCTS LIABILITY LITIGATION        :
                                                :
------------------------------------------------x  MDL Docket No. 1629
                                                :
THIS DOCUMENT RELATES TO:                       :  Master File No. 04-10981
                                                :
------------------------------------------------x  Judge Patti B. Saris
                                                :
HARDEN MANUFACTURING CORPORATION;               :  Magistrate Judge Leo T.
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,     :  Sorokin
dba BLUECROSS/BLUESHIELD OF LOUISIANA;           :
INTERNATIONAL UNION OF OPERATING ENGINEERS,     :
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL    :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and     :
LORRAINE KOPA, on behalf of themselves and all others :
similarly situated, v. PFIZER INC. and WARNER-LAMBERT :
COMPANY.                                        :
                                                :
------------------------------------------------x
                                                :
THE GUARDIAN LIFE INSURANCE COMPANY OF          :
AMERICA v. PFIZER INC., and AETNA, INC. v. PFIZER INC. :
                                                :
------------------------------------------------x

**JOINT STATUS REPORT ON EMERGENCY MOTION FOR
SANCTIONS FOR FAILURE TO OBEY COURT ORDER
REQUIRING PLAINTIFFS TO RESPOND TO INTERROGATORIES**

Pursuant to the Court's September 15, 2008 Electronic Order, defendants, Pfizer Inc. and

Warner-Lambert Company, and third-party payer class plaintiffs ("Class Plaintiffs")[1] submit this

---

[1]     Harden Manufacturing Corporation, Louisiana Health Services Indemnity
Company, and ASEA/AFSCME Local 52 Health Benefits Trust.

Joint Status Report concerning defendants' Emergency Motion for Sanctions for Failure to Obey Court Order Requiring Plaintiffs to Respond to Interrogatories (Docket No. 1418).[2]

The parties conferred on Thursday, September 18, 2008. The participants were Thomas Greene and Barry Himmelstein, on behalf of Class Plaintiffs, and Matthew Rowland and David Chaffin, on behalf of defendants.

## A.  Class Plaintiffs' Statement Concerning Status Of Dispute

The parties were unable to agree upon the terms of a stipulation which would resolve the sanctions motion. Class Plaintiffs agreed to provide full and complete responses to defendants' second set of interrogatories by October 20, 2008. In addition, Class Plaintiffs agreed that defendants could have until thirty days thereafter, *i.e.*, until November 19, 2008, to provide their expert disclosures, as Defendants had requested in their Emergency Motion for Enlargement of Time Within Which to Provide Expert Disclosures (Dkt. No. 1435).

On Monday, September 22, 2008, Class Plaintiffs provided Defendants with a draft joint report reflecting the foregoing, reminding them of the September 24, 2008 filing deadline. On the afternoon of September 24, Defendants explained that they were unable to comply with the Court's order because they had not finished discussions with the Coordinated Plaintiffs. Class Plaintiffs informed Defendants that they intended to comply with the Court's order, and that if

---

[2]  Defendants and Coordinated Plaintiffs have conferred at length pursuant to the Court's Electronic Order but have been unable, due to, among other things, the number of Coordinated Plaintiffs whose input is required and scheduling conflicts, to prepare a joint status report concerning the status of the dispute between defendants and Coordinated Plaintiffs. Defendants and Coordinated Plaintiffs have agreed on a schedule that would enable them to submit their joint status report no later than the close of business on Friday, September 26, 2008, and respectfully request the Court's indulgence in this regard. Defendants urged Class Plaintiffs to agree to this schedule as well, which would have enabled the parties to submit a single report rather than two, but Class Plaintiffs were unwilling to disobey the Court's order on the assumption that the requested extension would be granted.

Defendants were unable or unwilling to file a joint report with Class Plaintiffs, Class Plaintiffs would file their own report. At 4:45 p.m., Defendants responded to Plaintiffs' two paragraph draft with the five page torrent of argument below.

Unwilling to "take yes for an answer," Defendants press their motion for sanctions, arguing that Class Plaintiffs "intend to circumvent the disclosure required by the interrogatories," in particular, that Class Plaintiffs "are continuing to refuse to identify those alternative drugs that they contend are effective for each of the off-label uses at issue." These statements are false, as is footnote 5 below, in its entirety.

While the parties debated the *relevance* of this information to the damages theory being pursued by Class Plaintiffs, and to the very *different* damages theory that *Defendants have attempted to foist upon Class Plaintiffs* (*i.e.*, Defendants' argument that even if Neurontin is proven to be utterly worthless in treating the indications at issue, third party payor class members cannot get their money back, but can only recover the difference between what they paid for Neurontin and what they would have paid for drugs that would have been prescribed in lieu of Neurontin),[3] Class Plaintiffs stated that they would provide the requested information. Indeed,

---

[3] As Class Plaintiffs explained in their opposition to the sanctions motion, should Defendants prevail in this argument — which they did not even float for the first time until months after the October 11, 2007 Order (Addendum to Discovery Order No. 14, Dkt. No. 902) was issued (*see* Dkt. No. 1180 at 36-37, filed March 14, 2008) — the question would not be what drugs *should* have been prescribed in lieu of Neurontin, in the opinion of Plaintiffs' experts, but what drugs the IMS or similar datasets show were *actually* prescribed to the insured population for the conditions at issue (*e.g.*, for bipolar, during time period X, Y% of insured patients received lithium at $Z cost, etc.). *See* Dkt. No. 1423 at 6-7, 9 n.10. Defendants' insistence that Class Plaintiffs provide initial disclosures on *Defendants'* damages theory is misplaced. *See* Fed. R. Civ. Pro. 23(a)(1)(A) (initial disclosures required to support the *disclosing parties'* claims and defenses). If initial disclosures are required on this theory, they should be required of *Defendants*, who can explain *their* damages theory of what class members would actually have been prescribed in lieu of Neurontin. Nor should Defendants be permitted (...continued)

Class Plaintiffs had expressly offered to compile and provide the requested information to Defendants several weeks ago, but Defendants *refused* the offer. See Declaration of Barry Himmelstein in Opposition to Defendants' Emergency Motion for Sanctions (Dkt. No. 1424), Exh. E.

Defendants are simply unwilling to "take yes for answer." Class Plaintiffs respectfully suggest that this is not what the Court had in mind when it directed the parties to "narrow significantly the issues for resolution by the Court." Electronic Order, Sept. 15, 2008.

Defendants proposal to forestall the provision of their own expert reports until an undetermined date in the future at which they declare satisfaction with Class Plaintiffs' responses is similarly inappropriate. If Defendants are not satisfied with the responses — and Class Plaintiffs have no intention of providing deficient responses — Defendants have shown no hesitancy to seek relief, having moved to extend the expert deadline twice within the last month alone. The schedule should not be dragged out further, with *no* deadline for Defendants to provide their expert reports, based on an assumption of non-compliance. Sensing the failure of this argument, Defendants are no longer satisfied with the 30 days they asked for in their emergency motion (Dkt. No. 1435), and want 60, which is twice as long as they need, by their own account. This is delay for its own sake. On procedure as well as substance, Defendants are unwilling to "take yes for an answer."

Defendants' request that the Court enter an order of preclusion *notwithstanding* Class Plaintiffs' provision of the requested information (item (b) of Defendants' "alternative" proposal, set forth below) is similarly inappropriate. Defendants cannot "have their cake and eat it, too,"

---

(continued...)
to re-open discovery on a damages theory they did not put forward until March 2008 or seek additional discovery on while discovery remained open.

obtaining the requested discovery in full as well as a penalty for the failure to provide it. Whatever concessions Class Plaintiffs offered Defendants in the meet and confer process were, of course, contingent on reaching an agreement which would obviate the need for Class Plaintiffs to respond to the Interrogatories, which obviously has not happened.

**B.      Defendants' Statement Concerning Status Of Dispute**

Defendants' continue to believe that the appropriate remedy for Class Plaintiffs' admitted disobedience with the Court's Order and complete failure to respond to interrogatories two through eight of defendants' second set of interrogatories (the "Interrogatories") is preclusion. That being said, defendants recognize that the Court may be inclined to give Class Plaintiffs another chance. If it is so inclined, defendants would respectfully request that the Court, in addition to requiring Class Plaintiffs to provide the responses that they have agreed to provide, fashion additional relief necessitated by Class Plaintiffs' positions with respect to the relevant claims and issues. This relief is required because—as set forth in detail below—plaintiffs have made clear in the meet and confer that they intend to circumvent the disclosure required by the interrogatories.

The September 18 conference was a wide-ranging discussion concerning Class Plaintiffs' contentions and intentions with respect to the "cheaper and more optimal alternatives" to Neurontin theory and closely related claims. Class Plaintiffs confirmed that which defendants had suspected—these plaintiffs are seeking to benefit from their own noncompliance and are continuing to refuse to identify those alternative drugs that they contend are effective for each of the off-label uses at issue.

After the Court dismissed Coordinated Plaintiffs' complaint because they had failed to allege that Neurontin is ineffective, Coordinated Plaintiffs **and** Class Plaintiffs filed amended

complaints in which they alleged, expressly, that there were "cheaper and more optimal alternatives" to Neurontin for the indications at issue. The second set of interrogatories were served thereafter, seeking information concerning, among other things, the identity of the alleged "cheaper and more optimal alternatives" and the basis for plaintiffs' contentions that such alternatives are "cheaper and more optimal." Plaintiffs' refusal to respond to the interrogatories led to two orders directing plaintiffs to respond in full to the interrogatories. The second order required plaintiffs to serve the responses on August 11, 2008, the deadline for plaintiffs' expert disclosures.

On August 11, 2008, plaintiffs served 11 expert reports. A number of their experts opine that Neurontin is ineffective for the indications at issue. They also go on to discuss some drugs that they believe are effective for the indications.

Class Plaintiffs failed to serve any responses to the Interrogatories on August 11.[4] On August 13, 2008, defendants wrote Class Plaintiffs regarding their failure to respond to the Interrogatories. A week later, Class Plaintiffs indicated that they viewed the interrogatories as irrelevant because they were no longer pursuing the theory that there were "cheaper and more optimal alternatives" to Neurontin. Extensive negotiations ensued, with it eventually becoming clear to defendants that, Class Plaintiffs' representation to the contrary notwithstanding, Class Plaintiffs still intended to argue that there are cheaper and more optimal alternatives to

---

[4] In opposition to the motion for sanctions, Class Plaintiffs claimed that their failure to respond was "inadvertent" and an "administrative" error. This is not what they said when defendants objected to their failure to respond. They said, instead, that the interrogatories were "not relevant" and suggested, therefore, that they did not need to respond. It was far too late for this argument. In any event, as discussed below, the information the interrogatories seek is relevant.

Neurontin. For example, the day before the sanctions motion was filed, Class Plaintiffs insisted that the stipulation the parties were attempting to craft include the following provisions:

> 3. Should Defendants prevail in their argument that third party payors are not entitled to recoup the amounts they paid for Neurontin for any off-label indications for which the trier of fact determines Neurontin is ineffective, and may only recover the difference between the amounts they paid for Neurontin and the amounts they would have paid for drugs their insureds or members would have been prescribed in lieu of Neurontin (see Dkt# 1180 at 36-37), this stipulation shall not preclude Class Plaintiffs from presenting evidence of the latter amounts; and
> 4. This stipulation shall not preclude Class Plaintiffs' expert witnesses from testifying that alternative effective treatments exist for the indications at issue.

It was Class Plaintiffs' insistence on this language that convinced defendants of the need to move.

During the September 18 conference, there was extensive discussion concerning, among other things, the intention behind the language quoted above and Class Plaintiffs' intentions in general with respect with respect to Neurontin's cost and efficacy. Defendants' counsel expressed their concern that Class Plaintiffs were attempting to reserve the right to pursue an alternative measure of damages that also would require them in effect to attempt to prove that there are "cheaper and more optimal alternatives" to Neurontin. Class Plaintiffs represented that they were not. This prompted defendants to ask Class Plaintiffs' counsel, pointedly, whether, if Class Plaintiffs failed to demonstrate the ineffectiveness of Neurontin for a particular indication, Class Plaintiffs would have no claim as to the indication. **Class Plaintiffs confirmed that they would not. In other words, Class Plaintiffs admit that if they cannot demonstrate ineffectiveness of Neurontin as to an indication, Class Plaintiffs will be unable to establish any damages as to that indication.**

7

The parties also discussed how, then, Class Plaintiffs intend to prove damages under the alternative theory expressed in the paragraph that is numbered 3 as quoted above (a theory as to which Class Plaintiffs have provided **no** Rule 26(a)(1)(A)(iii) or 26(a)(2) disclosures). Defendants argued that Class Plaintiffs could not do so absent identifying cheaper and more effective alternatives to Neurontin and that, accordingly, this approach would be functionally equivalent to the "cheaper and more optimal" approach. Defendants argued that the information sought by the interrogatories therefore is relevant. Class Plaintiffs represented that the sole and exclusive source of evidence on which they would rely to identify alternatives is IMS data and expressly represented that they would not offer in this connection any evidence as to "efficacy." Indeed, they represented that the efficacy of such alternatives is irrelevant to either of their theories of damages. In response, defendants asked why it is, then, that plaintiffs' experts opined at length concerning the efficacy of alleged alternatives to Neurontin. Class Plaintiffs said that these opinions would be offered at trial only as "background."

It is clear, therefore, that, absent this Court's intervention, Class Plaintiffs, whichever theory they intend to pursue, would offer evidence that there are cheaper alternatives to Neurontin for the indications at issue, that these alternatives are effective and that Neurontin is not effective. Yet, Class Plaintiffs have made clear that they do not intend to provide defendants with a definitive list of each of the alternative drugs that they contend are effective for each indication. Class Plaintiffs offer distinctions without differences. Class Plaintiffs refuse to respond to the interrogatories insofar as they require them to take a position as to the efficacy of alternatives, but insist on reserving the right to pursue a theory that implies the efficacy of alternatives and to put on evidence of the efficacy of alternatives under the guise of "background."

This should not be permitted. Specifically, defendants respectfully request that the Court issue an order that (a) Class Plaintiffs are precluded from arguing that there are cheaper and more optimal alternatives to Neurontin for the indications at issue; (b) if plaintiffs fail to prove that Neurontin is ineffective for any indication at issue, they are precluded from pursuing any damages related to such indication; and (c) Class Plaintiffs may not argue, or offer any evidence, as to the existence or identity of effective alternatives to Neurontin for the indications at issue. In the alternative, (a) Class plaintiffs should be ordered to provide full and complete answers to the interrogatories, including but not limited to the identification of any drugs that plaintiffs contend are effective for the off-label uses at issue and the basis for such contentions;[5] (b) if plaintiffs fail to prove that Neurontin is ineffective for any indication at issue, they are precluded from pursuing any damages related to such indication;[6] (c) Class Plaintiffs should be required to provide Rule 26(a)(1)(A)(iii) disclosures as to their alternative theory of damages immediately, and (d) discovery should be reopened to permit defendants to explore Class Plaintiffs' alternative theory of damages and the efficacy of allegedly effective alternatives to Neurontin.

As to defendants' emergency motion for an enlargement of the time within which they must provide expert disclosures, defendants are concerned that their view as to what would suffice as "full and complete" responses to the interrogatories differs from Class Plaintiffs', that

---

[5] Class Plaintiffs for the **first time** indicated, in a re-draft of the "joint" status report that they provided at 7:12 this evening, that they are prepared to identify the drugs that they contend are effective alternatives to Neurontin for the indications at issue. At no prior time did Class Plaintiffs indicate that they would do so. In fact, they argued that they had no obligation to do so. Given Class Plaintiffs' new position, they should have no objection to subparagraph (a).

[6] Contrary to the position they took during the conference last week, Class Plaintiffs are backing away from their admission that their claims disappear if they fail to prove the ineffectiveness of Neurontin. If Class Plaintiffs are seeking to recover even if Neurontin is effective, then they surely have to identify not only all drugs that they contend are effective, but also those drugs that they contend are **more** effective and the basis for the contention.

they will be disappointed with Class Plaintiffs' responses and, more important, not be in possession of all of the information their experts require. To make room for the possibility that the "full and complete" responses will not be such, defendants propose that the clock not begin to run on the expert disclosure deadline until there is agreement that any supplemental responses are, indeed, full and complete. In the alternative, defendants would request that the Court set the deadline as the day 60 days from defendants' receipt of the last supplemental responses, if allowed by the Court. This would be only fair in view of (1) the extraordinary amount of time plaintiffs had to prepare their expert reports, (2) the fact that defendants still do not have a great deal of plaintiffs' experts' reliance materials and underlying data, and (3) the fact that, when all is said and done, when plaintiffs supplement, if permitted, they will be over two months late.

Dated: September 24, 2008

DAVIS POLK & WARDWELL

By: /s/James P. Rouhandeh
James P. Rouhandeh

450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

-and-

HARE & CHAFFIN

By: /s/David B. Chaffin
David B. Chaffin

160 Federal Street
Boston, MA 02110
Tel: (617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company LLC*

-and-

10

783379.1

GREENE & HOFFMAN, P.C.

By: /s/Thomas M. Greene
     Thomas M. Greene

33 Broad Street, 5th Floor
Boston, Massachusetts 02109
(617) 261-0040

*Attorneys for Class Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on September 24, 2008.

/s/David B. Chaffin

783379.1