UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                             :
In re:   NEURONTIN MARKETING, SALES PRACTICES,   :
         AND PRODUCTS LIABILITY LITIGATION   :   MDL Docket No. 1629
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x   Master File No. 04-10981
                             :
THIS DOCUMENT RELATES TO:   :   Judge Patti B. Saris
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x   Magistrate Judge Leo T.
                             :   Sorokin
THE GUARDIAN LIFE INSURANCE COMPANY OF   :
AMERICA v. PFIZER INC., and AETNA, INC. v. PFIZER INC.   :
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

**JOINT STATUS REPORT BY DEFENDANTS AND COORDINATED
PLAINTIFFS ON EMERGENCY MOTION FOR
SANCTIONS FOR FAILURE TO OBEY COURT ORDER
REQUIRING PLAINTIFFS TO RESPOND TO INTERROGATORIES**

Pursuant to the Court's Electronic Orders of September 15, 2008 and September 25, 2008,

defendants, Pfizer Inc. and Warner-Lambert Company, and third-party payer plaintiffs Aetna, Inc.

("Aetna"), The Guardian Life Insurance Company of America ("Guardian"), Kaiser Foundation

Hospitals, and Kaiser Foundation Health Plan, Inc. (together, "Kaiser") (collectively,

"Coordinated Plaintiffs") submit this Joint Status Report concerning defendants' Emergency

Motion for Sanctions for Failure to Obey Court Order Requiring Plaintiffs to Respond to

Interrogatories (Dkt # 1418).  For the Court's convenience, a copy of the Interrogatories (as served

on Aetna) is attached hereto as Exhibit D.

The parties conferred on Monday, September 22, 2008.  The participants were Gerry

Lawrence, Linda Nussbaum, Mark Sandmann, and John Radice, on behalf of Coordinated

Plaintiffs, and Matthew Rowland and David Chaffin, on behalf of defendants.

**A.**      **Coordinated Plaintiffs' Statement Concerning Status Of Dispute**

All of the Coordinated Plaintiffs served Supplemental Responses to Defendants' Second

Set of Interrogatories on August, 1, 2008, fully ten days before those responses were due.  The

Court will recall that these supplemental responses were coordinated with the filing of Plaintiffs'

expert disclosures because the clear purpose of the Interrogatories was to inquire into the basis for

Plaintiffs' damages claims and it was anticipated that Plaintiffs' expert reports would largely

satisfy these requests.

As detailed in their opposition to Defendants' Motion for Sanctions, in addition to

producing hundreds of pages of expert disclosures, Kaiser and Aetna produced voluminous, but

easily searchable and manipulable, data as part of their responses.[1]  The data produced far exceeds

the requirements of the disclosures sought by the Interrogatories and permits Defendants and their

experts to consider, analyze and manipulate this source data in any fashion, including performing

whatever calculations they find to be necessary.  Now, while in possession of Plaintiffs' expert

disclosures of damages theories and while in possession of the Plaintiffs' underlying claims data,

Defendants are still unsatisfied – their principal concerns presently being about the semantics and

format of the responses and data.

Defendants admittedly reviewed Plaintiffs' Supplemental Responses on the very day

during the first week of August when the responses were received—which was still a week before

the responses were due—and did not contact Plaintiffs to seek any clarification of Plaintiffs'

responses.  Instead, without engaging in a proper meet-and-confer process (while nonetheless

falsely certifying compliance with this Court's Local Rules concerning meet-and-confers),

---

[1]      Guardian informed Defendants that the data accompanying the responses would be forthcoming,
and Guardian is producing data today, September 26, 2008, and next week.

Defendants moved for sanctions, including preclusion. (Dkt. No. 1418.)  Plaintiffs cross-moved

for sanctions based on Defendants' clear and admitted failure to meet-and-confer before filing

their motion for sanctions, and for Defendants' false certification of compliance with the Local

Rules before filing that motion.  (Dkt. No. 1430.)  Given this Court's sensible desire to see the

issues narrowed, Plaintiffs proposed that all parties withdraw their sanctions motions.  Defendants

refused to do so.  Consequently, Plaintiffs continue to pursue their cross motion for sanctions, for

the reasons identified in that motion.

Pursuant to this Court's order the parties conferred on September 22, 2008, and during that

call Plaintiffs explained certain of their production and responses.  Working in good faith to

resolve this matter, Plaintiffs also agreed, without conceding that their August 1, 2008 responses

were insufficient, to supplement their responses principally by reformatting data already presented,

supplementing a few data fields that were omitted, and adding additional explanatory narrative.

As a further show of good faith, Aetna, Kaiser and Guardian agreed to endeavor to draft a

memorialization of these understandings and each Plaintiff provided emails to Defendants

attempting to describe the agreements reached during the call to supplement their production.

These emails are attached hereto as, respectively, exhibits A, B and C.

Save for one issue concerning Interrogatory Nos. 5 & 6, discussed below, Plaintiffs

believed that they had complied with all of Defendants' requests for supplementation—regardless

of whether those requests exceeded the information requested in the Interrogatories themselves.

Less than six hours before it must be filed, Defendants sent a draft brief purporting to identify

deficiencies in Plaintiffs agreements to supplement their responses.  Defendants never contacted

any of the Plaintiffs to suggest that these statements attempting to memorialize the agreements

were unsatisfactory—despite Plaintiffs' explicit request to not try to create issues where there were

none—but instead Defendants resorted to similar ambush tactics that Defendants employed when

filing their Motion for Sanctions without meeting and conferring.

Despite this substantial effort by Plaintiffs in the name of collegiality to accommodate

Defendants' requests, Defendants below list niggling supposed deficiencies with data, some of

which they have yet to review.  Plaintiffs will address these concerns in turn.

**Interrogatory 2**

Defendants argue that "none of the Coordinated Plaintiffs appear willing to provide the

dosage of [the cheaper and more optimal drugs]."  Yet Plaintiffs' either have or have agreed to

provide *precisely* such information, to the extent Plaintiffs maintain such information.  *See*, *e.g.*,

Ex. B ("Kaiser will produce, and is currently in the process of collecting and formatting, data

concerning NDC codes and, to the extent available, dosage information.").  Aetna already

produced the information on August 1.

The NDC codes that Plaintiffs have and will produce themselves identify the products'

dosage, and Plaintiffs have agreed to provide further information if they have it.  As sophisticated

pharmaceutical companies, Defendants are well aware that all drug products are identified and

reported using a unique, three-segment number, called the National Drug Code (NDC), which is a

universal product identifier for human drugs.  The FDA inputs the full NDC number and the

information submitted as part of the listing process into a database known as the Drug Registration

and Listing System (DRLS).  The NDC identifies the labeler, product, and trade package size.  The

first segment, the labeler code, is assigned by the FDA and identifies the firm that manufactures

(including repackers or relabelers), or distributes (under its own name) the drug.  The second

segment, the product code, identifies a specific strength, dosage form, and formulation for a

particular firm. The third segment, the package code, identifies package sizes and types.

Manufacturers, pharmacies and payers (such as Plaintiffs) universally rely on NDC codes to identify drug products, including the dosage.  Thus, because the NDC codes, which have been provided (or that Plaintiffs have agreed to provide) include the very dosage information requested, it is unclear what more Defendants could pretend to need.  As such, it seems apparent Defendants are more intent in wasting everyone's time with non-issues than actually working productively to resolve their purported issues.

### Interrogatory 3

Defendants complain that Plaintiffs fail to "describe how [they] arrived at [the] figures" requested in this interrogatory.  Yet, on the September 22 call, Plaintiffs explicitly stated that all data produced comes from their own books and records, unless otherwise noted.  *See also*, *e.g.*, Ex. B ("All data produced to date, and all data to be produced in the future, comes from Kaiser's own books and records, unless otherwise noted.").  Plaintiffs cannot fathom how else to answer the part of this Interrogatory concerning how they "arrived" at the data they are producing from their own books and records.  On the September 22, 2008 call, Defendants seemed to indicate that they were satisfied with that response.  Again, Defendants seem to have no interest in resolving these issues *even when Plaintiffs are bending over backwards to provide additional information*, but instead want to engage in ceaseless argument.

### Interrogatory 4

Defendants' objection to this response is entirely disingenuous.  Each Plaintiff has provided or agreed to provide data detailing the prescription claims history for each of their members who were prescribed Neurontin, either alone or with any of the alternative drugs listed in response to Interrogatory No. 2.  Again, this is nothing more than argument for argument's sake by Defendants.

**Interrogatory Nos. 5 & 6**

Interrogatory Nos. 5 & 6 ask Plaintiffs to identify a large and hopelessly amorphous group of all drugs that are "approved or commonly used to treat" any aspect of bipolar disorder or depression (Interrogatory No. 5) and or any type of neuropathic pain (Interrogatory No. 6).  Not only would such a list potentially run into the hundreds and be wholly irrelevant—*e.g.*, Plaintiffs are not suing for the use of Neurontin to treat depression—the request itself is hopelessly vague in that Plaintiffs cannot be expected to define all drugs that are "commonly used" for a certain disease. Does "commonly used" mean, for example, drugs used more than X number of times?  Used by X number of physicians?  Used more than X percent of the time to treat a certain disease?  Having more than X percent of its prescriptions written for a certain disease?  And, of course, what is the proper X in each of the above?

Plaintiffs have produced reams of member-level data detailing which of their members who submitted claims for Neurontin and any of the drugs identified as being cheaper and more optimal in response to Interrogatory No. 2.[2]  Such data is cumbersome to collect, and voluminous. These interrogatories request that Plaintiffs expand this production by an order of magnitude to include an undefined and undefinable group of drugs "commonly used" to treat the above diseases. Ironically, even if *arguendo* Plaintiffs could devise such a list of drugs, *it would be meaningless*. Defendants, as revealed by their own documents produced in discovery, track in great detail all the drugs with which Neurontin competed, and their experts undoubtedly will create and use their own list of drugs that they believe are "commonly used" to treat the above diseases, and will pay no attention to any hypothetical list that Plaintiffs could devise.

---

[2]     Aetna actually went even further and provided data showing all prescription drug claims (for any drug) for each member who submitted a prescription drug claim for Neurontin.

It should be clear that Defendants are not truly interested in working to obtain relevant, responsive information to Interrogatory Nos. 5 and 6.  Instead, Defendants contend that the Plaintiffs should be sanctioned for their inability to divine exactly what "approved and commonly used" drugs were intended, something to date the Defendants themselves have been unwilling to nail down.  Plaintiffs have made it clear they would be willing to revisit and potentially supplement their production if Defendants define a list of "approved and commonly used" drugs to treat bipolar disorder and neuropathic pain, but Defendants have refused to do this.  *See*, *e.g*., Ex. B. ("If Defendants provide a list of drugs 'approved or commonly used to treat any aspect of bipolar disorder or depression,' Kaiser is willing to revisit its response to this Interrogatory and potentially supplement its response.").

Plaintiffs have provided expert disclosures, responses and electronic claims data that far exceed the requirements of the disclosures sought by Defendants' Interrogatories.  The claims data provided permits Defendants and their experts the ability to perform whatever data analysis they find necessary.  Now, having reviewed Plaintiffs' experts' disclosures of damages and the underlying claims data, Defendants still are unsatisfied that they have sufficient information to defend against Plaintiffs' damages analyses.  Plaintiffs have and continue to attempt in good faith to work with Defendants, including agreeing to unnecessarily supplement their responses, yet Defendants curiously seem unwillingly to accept Plaintiffs' cooperation.

**B.**     <u>Defendants' Statement Concerning Status Of Dispute</u>[3]

Almost 45 days after their responses to defendants' Second Set of Interrogatories (the

"Interrogatories") were due, Coordinated Plaintiffs have offered to defendants not responses, but a

proposal as to how they would seek to remedy the deficiencies in the woefully incomplete

responses they previously offered on August 1, 2008.  Coordinated Plaintiffs have provided none

of the information missing from their deficient prior responses.  (*See* Exs. A, B, and C.)

Defendants continue to believe that the appropriate remedy for Coordinated Plaintiffs'

failure to provide full and complete answers to Interrogatories Two through Eight of the

Interrogatories on or before August 11, 2008 is preclusion.  The type and degree of

supplementation that all Coordinated Plaintiffs have agreed to provide confirms the insufficiency

of the August 11 responses.  Guardian, for example, *still* has not provided the data that purportedly

was to comprise its only substantive response.  Moreover, Coordinated Plaintiffs have litigated the

question of whether and how they should respond to the Interrogatories on multiple

occasions—and lost.  Yet now, they are attempting to rewrite all of the Interrogatories and to argue

that they should not have to answer two of them (Nos. 5 & 6) even though they were previously

*ordered* to answer the Interrogatories in full.  Instead, they are attempting to shift to defendants the

burden of answering these two Interrogatories.  Defendants should not be forced to litigate this

issue yet again.

---

[3]     Coordinated Plaintiffs complain that they did not receive defendants' draft of this report until this
morning. They neglect to mention that, although the parties had agreed that each Coordinated Plaintiff would supply
its proposal with respect to supplementation to defendants by mid-afternoon on Wednesday, and defendants then
would weave the proposals together and respond, defendants did not receive Aetna's proposal until late Thursday
afternoon. Defendants generated a draft within hours, burning some late night oil in the process. Coordinated
Plaintiffs' complaint that defendants never contacted them to try to resolve any issues with their responses ignores this
timing and the fact that they have offered no compromise since seeing defendants' first draft of this status report.

That being said, defendants recognize that the Court may be inclined to give Coordinated Plaintiffs another chance.  If it is so inclined, defendants would respectfully request that the Court enter an order requiring Coordinated Plaintiffs to provide the responses that they were ordered to provide,[4] including full and complete answers to Interrogatories Nos. 5 and 6.  The attempt by Coordinated Plaintiffs to whittle away at the Interrogatories as written should be rejected. Defendants should not be required once again to defend their need for answers to the Interrogatories.

Coordinated Plaintiffs make numerous self-serving statements purporting to argue that the information they previously provided was not deficient.[5]  Defendants are prepared to show why that is not the case if the Court would like briefing or argument on that issue.  Simply put, answers to the Interrogatories, including the list of "cheaper and more optimal alternatives," cannot be derived from the information Coordinated Plaintiffs provided on August 1 or even to date. Coordinated Plaintiffs' referral of defendants to unspecified "discovery produced to date" and unnamed expert reports was in August, and still is, nothing more than an impermssible attempt to avoid providing definitive answers to the Interrogatories.  This dispute, therefore, is far from a dispute about, as Coordinated Plaintiffs claim, "semantics and format."  For the purpose of this status report, defendants have put that issue to the side and set forth below the ways in which the Coordinated Plaintiffs proposed supplementation is still inadequate.

---

[4]     It is unclear from Guardian's proposed supplement to its responses whether it will provide NDC numbers as well as names for the "cheaper and more optimal" drugs it will identify in response to Interrogatory No. 2. To the extent that Guardian does not propose to provide NDC numbers, they should be ordered to do so.  Moreover, unlike Aetna and Kaiser, Guardian has not confirmed that their supplemental responses will be under oath.  They should be ordered to provide such verified responses.

[5]     Coordinated Plaintiffs repeatedly claim that they responded to the Interrogatories on August 1, 2008, ten days early.  Not so.  That day, they served the written responses, which purported to steer defendants to unspecified data and unnamed expert reports.  The expert reports were not served until August 11, and the critical back-up for at least one of those reports was not provided until well after August 11.  One is left to wonder how Coordinated Plaintiffs could attempt to rely in responding to the Interrogatories on expert reports that had not even been completed.

**Interrogatory No. 2**

In agreeing to provide a chart[6] listing each of the drugs that they contend is cheaper and more optimal than Neurontin for each of the relevant off-label uses, the Coordinated Plaintiffs are seeking to narrow impermissibly these interrogatories. First, for each of the allegedly "cheaper and more optimal" alternatives, none of the Coordinated Plaintiffs appears willing to provide the dosage of each these drugs. Defendants are entitled to answers that identify the dosage of these purported alternatives so that defendants' experts can opine as to the effectiveness, cost, and side effects at the precise dosage identified. For example, an alternative may not be cheaper than Neurontin at higher doses, and may carry additional side effects at such doses that would render the drug far less optimal than Neurontin.

Coordinated Plaintiffs' discussion concerning Interrogatory No. 2 entirely misses the point. Simply providing prescription dosage data is not enough. Defendants need to know, and Interrogatory No. 2 clearly requires Coordinated Plaintiffs to provide, the dosage at which Coordinated Plaintiffs contend the "cheaper and more optimal alternatives" *are* "cheaper and more optimal." For example, are Coordinated Plaintiffs contending that 1 mg of a particular alleged alternative is "cheaper and more optimal," or some other dose?

Second, rather than describing "how [they] identified these alternative drugs," Coordinated Plaintiffs state that they will "produce additional narrative concerning the identification of these cheaper and more optimal drugs." This statement is too vague to be meaningful. Coordinated Plaintiffs should be ordered, once again, to answer the Interrogatory as written.

---

[6]    Defendants assume that Coordinated Plaintiffs intend to produce not a single chart, but charts, because the Interrogatory requests the information on a year-by-year basis.

**Interrogatory No. 3**

As with Interrogatory No. 2, Aetna is proposing to "produce additional narrative concerning the identification of these cheaper and more optimal drugs" rather than "describ[ing] how [they] arrived at [the] figures" requested in this Interrogatory.   Kaiser and Guardian appear to be ignoring this aspect of the Interrogatory.  Defendants are entitled to the description they requested.  Coordinated Plaintiffs' suggestion that they will simply say that the data comes from their books and records does not suffice.  Coordinated Plaintiffs should be required to identify the books and records from which the data was extracted and the methodology by which it was extracted.  In the alternative, defendants would ask leave to depose each of the Coordinated Plaintiffs on these subjects.

**Interrogatory No. 4**

Rather than answer this Interrogatory, Coordinated Plaintiffs propose three different alternatives, none of which is acceptable or responsive to the request.  Aetna once again says, vaguely that it will provide "additional narrative;" Kaiser will provide the number of its members who were prescribed Neurontin and not any of the allegedly cheaper alternatives, but will not provide the percentage requested by this Interrogatory; and Guardian says that defendants can derive the requested number and percentage even though to date they have not provided defendants with even a glimpse of the data they propose to provide.  None of these responses is satisfactory.

**Interrogatories 5 & 6**

Coordinated Plaintiffs refuse to identify the drugs that are "approved or commonly used to treat" any aspect of bipolar disorder or depression (Interrogatory No. 5) and or any type of neuropathic pain (Interrogatory No. 6).  As argued previously in defendants' memorandum in

support of their first motion to compel (Dkt # 754 at 7), and as the Court has ruled, the requested

information is relevant and should be provided.  (*See* Discovery Order No. 12 (Dkt # 771) at 2–5.)

The objections now raised by Coordinated Plaintiffs, either that they do not have the sought-after

information or that it would be less burdensome for defendants to obtain, are improper and have

been waived because they were never before asserted in any of their objections to the

Interrogatories or any of their briefing before this Court.  Accordingly, defendants request that the

Court once again order Coordinated Plaintiffs to provide full and complete answers to

Interrogatories Nos. 5 and 6 (as well as Nos. 2–4 and 8) by requiring them to provide the list of

drugs they contend are approved or commonly used to treat the conditions at issue, and to then

provide the data requested regarding those drugs, *i.e.*, the number and percentage of their Members

who took any of those drugs and also were prescribed Neurontin.  The interrogatories require

Coordinated Plaintiffs to take a position on this issue.  Defendants are entitled to compare

Coordinated Plaintiffs' definitive list of "cheaper and more optimal alternatives" to the list of

drugs that, to Coordinated Plaintiffs' knowledge or in their opinion or vast experience, are

approved or commonly used to treat the conditions at issue.  Moreover, because some of the

Coordinated Plaintiffs are limiting the prescription data to only those drugs that they contend are

"cheaper and more optimal," if Coordinated Plaintiffs are not required to answer these

interrogatories, defendants will be deprived of a substantial amount of information about other

drugs used to treat the relevant indications.

    One wonders how plaintiffs could have alleged that there are drugs that are cheaper and

better than Neurontin if they have no knowledge as to the drugs that are approved or are commonly

used to treat the relevant off-label uses.[7]  If plaintiffs cannot answer the Interrogatory then they

_____

       [7]      Moreover, Coordinated Plaintiffs' experts discuss not only approved drugs, but also, without

(…continued)

should be required to make a binding judicial admission that there are no other drugs that are

approved or commonly used to treat the relevant off-label uses.

Dated: September 26, 2008                          DAVIS POLK & WARDWELL

                                                  By:    /s/James P. Rouhandeh
                                                         James P. Rouhandeh

                                                  450 Lexington Avenue
                                                  New York, NY 10017
                                                  Tel:  (212) 450-4000

                                                         -and-

                                                  HARE & CHAFFIN

                                                  By:    /s/David B. Chaffin
                                                         David B. Chaffin

                                                  160 Federal Street
                                                  Boston, MA 02110
                                                  Tel:  (617) 330-5000

                                                  *Attorneys for Defendants Pfizer Inc. and
                                                  Warner-Lambert Company LLC*

                                                         -and-

                                                  KAPLAN FOX & KILSHEIMER LLP

                                                  By:    /s/Linda P. Nussbaum
                                                         Linda P. Nussbaum

                                                  850 Third Avenue, 14th Floor
                                                  New York, NY 10022
                                                  Tel: (212) 687-1980

                                                         -and-

                                                  RAWLINGS & ASSOCIATES, PLLC

                                                                              (continued…)

purporting to provide an exhaustive list, some drugs that are commonly used to treat these indications.  Coordinated Plaintiffs cannot be permitted to offer such opinions while simultaneously claiming ignorance with respect to the identity of commonly used drugs.

By:   /s/Mark M. Sandmann
          Mark M. Sandmann, Esq.

325 W. Main Street
Louisville, KY 40202
Tel: (502) 587-1279

       -and-

LOWEY DANNENBERG & COHEN PC

By:   /s/Gerald Lawrence
          Gerald Lawrence, Esq.

The Gateway – 11th Floor
One North Lexington Avenue
White Plains, NY 10601
Tel: (914) 997-0500

*Attorneys for Coordinated Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on September 26, 2008.

/s/David B. Chaffin