# EXHIBIT A

# David Chaffin

| | |
|---|---|
| **From:** | Gerald Lawrence [GLawrence@lowey.com] |
| **Sent:** | Thursday, September 25, 2008 4:52 PM |
| **To:** | John D. Radice; Rowland, Matthew B.; David Chaffin |
| **Cc:** | Mark M. Sandmann; Linda P. Nussbaum |
| **Subject:** | RE: Neurontin |

Aetna's responses are substantially similar to Kaiser's responses, excepting the differences in our prior responses as discussed on our call. Please confirm hat this is acceptable.

Aetna's agreement to supplement its responses is in not way an admission or concession that Aetna's Supplemental Responses to Defendants' Second Set of Interrogatories, served on August 1, 2008, ten days before the deadline for service of those responses, was in any way deficient. Aetna is working with Defendants to reformat, clarify and add granularity to data already produced and will supplement its responses. All data produced to date, and all data to be produced in the future, comes from Aetna's own books and records, unless otherwise noted. Aetna's agreement to search for supplemental data is not an admission or concession that such data exists or is maintained by Aetna. Aetna's supplemental responses will be under oath, and that oath will apply to all previous productions.

Interrogatory No. 2

For each off-label use identified in response to Interrogatory No. 1, state, for each calendar year of the proposed Class Period, the name, dosage, NDC number, and cost to you of each drug that you contend would have been cheaper and more optimal than Neurontin in treating that condition. Describe how you identified these alternative drugs and how you arrived at these figures.

Agreement to Supplement:

Aetna will provide reformat, clarify and add granularity to the already-produced extensive data and chart listing (by indication) cheaper and more optimal drugs than Neurontin. Aetna will also produce additional narrative concerning the identification of these cheaper and more optimal drugs.

Interrogatory No. 3

For each of your Members who were prescribed Neurontin, state whether s/he also received one or more of the drugs identified in response to Interrogatory No. 2 and state which drug(s) each such Member received. State the dosage and number of prescriptions filled for each alternative drug prescribed to each such Member. Describe how you arrived at these figures.

Agreement to Supplement:

Aetna will provide reformat, clarify and add granularity to the already-produced extensive data and chart listing (by indication) cheaper and more optimal drugs than Neurontin. Aetna will also produce additional narrative concerning the identification of these cheaper and more optimal drugs.

Interrogatory No. 4

For each calendar year of the proposed Class Period, state the number and percentage of your Members who were prescribed Neurontin and who also were prescribed at least one of the drugs identified in response to Interrogatory No. 2. Describe how you arrived at this figure.

Agreement to Supplement:

Aetna will provide reformat, clarify and add granularity to the already-produced extensive data. Aetna will also produce additional narrative concerning this response.

Interrogatory No. 5

For each calendar year of the proposed Class Period, state the number and percentage of your Members who were prescribed Neurontin and who also were prescribed any other drug approved or commonly used to treat any aspect of bipolar disorder or depression.

Agreement to Supplement:

Aetna has produced data detailing its members' use of Neurontin and the cheaper and more optimal drugs for bipolar disorder identified in response to Interrogatory No. 2. In addition, Aetna and the Plaintiffs have produced voluminous documents describing drugs used to treat bipolar disorder, and has submitted an expert report specifically concerning the treatment of biopolar disorder (Barkin Report). The research to determine all drugs "approved or commonly used to treat any aspect of bipolar disorder or depression" would be more burdensome to Aetna than it would be to Defendants because Aetna does not maintain a list of all drugs "approved or commonly used to treat any aspect of bipolar disorder or depression." Indeed, Aetna has already produced to Defendants detailed prescription data, pulled from its databases, for each person that was prescribed Neurontin that includes all other prescriptions processed for that claimant, from which this information may be derived. Therefore, Aetna cannot at present supplement its response to this Interrogatory, other than by attempting to reformat the data already produced. If Defendants provide a list of drugs "approved or commonly used to treat any aspect of bipolar disorder or depression," Aetna is willing to revisit its response to this Interrogatory and potentially supplement its response.

Interrogatory No. 6

For each calendar year of the proposed Class Period, state the number and percentage of your Members who were prescribed Neurontin and who also were prescribed any other drug approved or commonly used to treat any type of neuropathic pain.

Agreement to Supplement:

Aetna has produced data detailing its members' use of Neurontin and the cheaper and more optimal drugs for neuropathic pain identified in response to Interrogatory No. 2. In addition, Aetna and Plaintiffs have produced voluminous documents describing drugs used to treat neuropathic pain, and has submitted an expert report concerning the treatment of pain (Perry Report). The research to determine all drugs "approved or commonly used to treat any aspect of neuropathic pain" would be more burdensome to Aetna than it would be to Defendants because Aetna does not maintain a list of all drugs "approved or commonly used to treat any aspect of neuropathic pain." Indeed, Aetna has already produced to Defendants

detailed prescription data, pulled from its databases, for each person that was prescribed Neurontin that includes all other prescriptions processed for that claimant, from which this information may be derived. Therefore, Aetna cannot at present supplement its response to this Interrogatory. If Defendants provide a list of drugs "approved or commonly used to treat any aspect of neuropathic pain," Aetna is willing to revisit its response to this Interrogatory and potentially supplement its response.

Gerald Lawrence
Lowey Dannenberg Cohen & Hart, P.C.
GLawrence@lowey.com

---

**From:** John D. Radice [mailto:jradice@kaplanfox.com]
**Sent:** Wednesday, September 24, 2008 3:12 PM
**To:** 'Rowland, Matthew B.'; Gerald Lawrence; dchaffin@hare-chaffin.com
**Cc:** Mark M. Sandmann; Linda P. Nussbaum
**Subject:** RE: Neurontin

Matt/David--Please find attached Kaiser's responses re Interrogatory Nos. 5 & 6, which completes Kaiser's responses.

Thanks,

John D. Radice
Kaplan Fox & Kilsheimer LLP
850 Third Avenue
14th Floor
New York, NY 10022
Tel: (212) 687-1980
Mobile: (646) 245-8502
Fax: (212) 687-7714
e-mail: jradice@kaplanfox.com

PRIVILEGED ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT.

The information in this transmittal may be privileged and/or confidential. It is intended only for the recipient(s) listed above. If you are neither the intended recipient(s) nor a person responsible for the delivery of this transmittal to the intended recipient(s), you are hereby notified that any distribution or copying of this transmittal is prohibited. If you have received this transmittal in error, please notify Kaplan Fox & Kilsheimer LLP immediately at (212) 687-1980 or by return e-mail. Pursuant to requirements related to practice before the U. S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U. S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

---

**From:** Rowland, Matthew B. [mailto:matthew.rowland@dpw.com]