UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                                  )
**IN RE: NEURONTIN MARKETING, SALES** )
**PRACTICES, AND PRODUCT LIABILITY**   )
**LITIGATION**                                              )
                                                                  )   **MDL Docket No. 1629**
                                                                  )   **Master File No. 04-10981**
_____)

                                                                      **Judge Patti B. Saris**
                                                                      **Mag. Judge Leo T. Sorokin**
**THIS DOCUMENT RELATES TO:**

*Leroy Anderson, et al v. Pfizer, Inc*.         Individual Case No.: 1:05CV-10835-PBS
*Mary Cooper, et al v. Pfizer, Inc*.             Individual Case No.: 1:05-CV-10834-PBS
*Jessie Allen, et al v. Pfizer, Inc*.              Individual Case No.: 1:07-CV-11795-PBS

---

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CLAIMS
OF CERTAIN PLAINTIFFS REPRESENTED BY THE LEVI BOONE LAW
FIRM, P.A. FOR FAILURE TO COMPLY WITH THE COURT'S CERTIFCATION ORDERS**

---

COMES NOW, Plaintiffs, by and through, Attorney, Levi Boone, III, of **Boone Law Firm, P.A.**, and files this *Plaintiffs' Response to Defendants' Motion to Dismiss the Claims of Certain Plaintiffs Represented by the Levi Boone Law Firm, P.A. for Failure to Comply with the Court's Certification Orders* and states:

**A. INTRODUCTION**

1. On June 20, 2008 this Court issued Discovery Order Number 26 ordering Plaintiffs' attorney to complete new attorney certifications on each of Plaintiffs. On August 19, 2008 Plaintiffs submitted attorney certifications for 302 Plaintiffs per the June 20, 2008 Order of the Court.

2. On September 29, 2008, Defendants filed a Motion to Dismiss, citing four specific reasons, among others, that Plaintiffs' claims should be dismissed. First, Defendants allege that no certification was filed for 67 Plaintiffs; 88 Plaintiffs failed to meet the Court's certification requirements because the certifications were based on pharmacy records and a complete

absence of medical records; 9 Plaintiffs' certifications were based on records making no reference to the prescription or use of Neurontin; and 195 Plaintiffs' certifications were based on medical records making no reference to the injuries alleged in plaintiffs' complaints. None of these arguments have any merit.

### B.  DEFENDANT VIOLATED LOCAL RULE 7

3. Defendants' Motion to Dismiss was not filed in good faith.  Defendants failed to confer with Plaintiffs' counsel to resolve any issues before filing the Motion to Dismiss in direct violation of Local Rule 7.  On September 29, 2008, Plaintiffs' counsel invited Defendants to discuss any purported issues, however, Defendants refused.  Many of the alleged issues could have been brought to resolution without the necessity of filing Defendants Motion to Dismiss and subsequent court involvement.  Plaintiffs counsel  invited Defendants to submit a list of Plaintiffs that there were issues with so as to resolve the issues short of litigation, but Defendants  filed their Motion to Dismiss on the same day that Plaintiffs offered to settle the issues.  By filing the Motion to Dismiss Defendants provided no opportunity for resolution in violation of Local Rule 7.

### C.  THE MEDICAL RECORDS OF THE 195 PLAINTIFFS DO MAKE REFERENCE TO THE INJURIES ALLEGED IN THE COMPLAINT

4. The complaints specifically outline damages to include past, present and future pain and suffering; past, preset and future mental and emotional distress and restitution for purchase price. Exhibits 1-3

5. The medical records of the Plaintiffs establish that Neurontin was ineffective for the treatment of their underlying conditions in that the Plaintiffs continued to complain of pain and/or the Plaintiffs received increased dosages of Neurontin.  Accordingly, there is a nexus between the medical records and the complaint's allegations of pain and suffering.  Likewise, there is a nexus between the mental and emotional distress

alleged in the complaint and the Plaintiffs; claim of emotional distress after learning of the off-label use of Neurontin.  Further, the November 9, 2007 Discovery Order does not specifically require a nexus between the medical records and the complaint .

6. Defendants Motion to Dismiss is filled with contentions regarding Plaintiffs proof of injuries or establishing the "off label" use of Neurontin. Defendants' allegations regarding Plaintiffs proof of injuries is without merit.  In the respective complaints filed in *Jessie Allen, Mary Cooper and Leroy Anderson*; Plaintiffs' request relief for compensatory and punitive damages and other relief for injuries proximately caused by the ingestion of Neurontin *including but not limited to* the following:" [our emphasis]

   a. suicide/attempted suicide and/or suicidal thoughts;
   b. memory loss;
   c. liver failure;
   d. kidney failure;
   e. heart attack;
   f. strokes;
   g. high blood pressure;
   h. *and other injuries;*        [our emphasis]

7. It is fair to say that the language *"including, but not limited to"* and *"and other injuries"* under the damage provision of the Complaints are broad enough to cover the alternative damage theories of the Plaintiffs set forth herein, i.e., Plaintiffs' underlying medical conditions being untreated while taking Neurontin, pain and suffering, the mental and emotional distress experienced by Plaintiffs upon learning that the FDA had not approved the use of Neurontin for their respective medical

condition. Notwithstanding the medical expenses incurred for their purchases of Neurontin.

8. The Defendants admit that the Plaintiffs have provided pharmacy and medical records for 195 Plaintiffs, listed on Defendants' Exhibit D. However the Defendants argue that these 195 cases should be dismissed because the medical records, as alleged by Defendants contain "no referenced to alleged injuries.

9. As explained above herein, the Plaintiffs' injuries include, (a) Plaintiffs' underlying medical conditions being untreated while taking Neurontin, (b) the Plaintiffs experienced mental and emotional distress upon learning that the FDA had not approved the use of Neurontin for their respective medical condition, (c) the Plaintiffs incurred medical expenses for their purchases of Neurontin, (d) the Plaintiffs experienced pain and suffering, and (e) the Plaintiffs experienced suicidal thoughts/suicidal attempts.  Under the damage theory of these cases no reference to the array of injuries claimed by Plaintiffs is necessary when the Plaintiffs may choose to pursue only the damages aforesaid.

10. Even where specific injuries where outlined in the complaints, it also lists a category of "other injuries" which may include the pain and suffering, mental and emotional distress and reimbursements for purchase costs of Neurontin.

11. Physicians and patients were not warned by Pfizer that the "off label" use of Neurontin could cause the patients to experience suicide/attempted suicide and/or suicidal thoughts, and other injuries outlined within Plaintiffs' complaints. Accordingly physicians did not generally make a recordation of any causal relationship between patient's ingestion of Neurontin and their experience of

suicide/attempted suicide and/or suicidal thoughts, and other injuries.  Therefore there are not any medical records establishing that the ingestion of Neurontin caused Plaintiffs to experience suicide/attempted suicide and/or suicidal thoughts and/or other injuries because the treating/prescribing physicians were not aware of the relationship of Neurontin and these conditions.  It is a matter of expert testimony connecting the ingestion of Neurontin with suicide/attempted suicide and/or suicidal thoughts and/or other injuries. There may be medical records showing the relief, if any received by the plaintiffs' "off-label" use of Neurontin.

12.  In addition, Plaintiffs suffered prolonged pain and suffering while receiving ineffective treatment for the actual conditions for which Neurontin was prescribed. Plaintiffs' relevant medical records indicate that the Neurontin was not working for the off label use for which it prescribed, therefore the physicians increased the dosage in hopes, to no avail, that the increased dosages would alleviate the conditions for which Neurontin was prescribed and marketed.  This is evidenced by the pharmacy printouts as well as the correlating medical records.  As a consequence, unbeknownst to Plaintiffs or their physicians, plaintiffs' were delayed effective treatment of their medical conditions and spent an unwarranted amount of time and money receiving this ineffective treatment.  It is without question, that Plaintiffs endured prolonged pain and suffering, while blindly receiving this inadequate treatment.

13. Further, the Plaintiffs also experienced mental and emotional distress upon learning that the FDA had not approved the "off label" use of Neurontin for their respective medical condition.  Evidence of a physical symptom is not required to recover for emotional and mental distress when the Defendant's conduct evokes outrage or

revulsion, is done intentionally, or the results are reasonably foreseeable if done unintentionally. *Morrison v. Means,* 680 So.2d 803, 806 (Miss. 1996) (citing *Sears, Roebuck & Co. v. Dvers,* 405 So.2d 898, 902 (Miss. 1981)).  Also "malicious … willful, wanton, grossly careless, indifferent or reckless" conduct perpetrated by the defendant precludes an injury requirement for a claim of intentional infliction of emotional and mental distress to succeed. *Id.* (citing *Leaf River Forest Products, Inc., v. Ferguson*, 662 So.2d 648, 659 (Miss. 1995)).

14. In Mississippi you may obtain punitive damages for malicious willful conduct absent actual injury.  These Plaintiffs will need only to establish that they were prescribed Neurontin for an "off-label" use.  Failure to disclose absence of FDA approval for use of the drug as a pain medicine and failure to disclose that no clinical tests were performed to assess the safety of Neurontin as a pain medicine are willful and wanton acts in disregard for the safety of others.   By Defendants' admission and Order of federal court Defendants were found guilty of federal criminal charges.  In Mississippi Defendants conduct is characterized as actual fraud and willful, malicious misconduct.

15. Plaintiffs have established through the record the proof establishing a relationship between their injuries and the actual fraud, and willful, malicious misconduct.  The statements of the Plaintiffs coupled with the medical records/ pharmacy records establish that Plaintiffs and their physicians were defrauded by Pfizer's marketing scheme which proximately caused their various resulting injuries. The evidence offered by Plaintiffs could convince reasonable jurors that they suffered compensable mental distress.  These Plaintiffs are entitled to compensation for their injuries and

monetary loss including but not limited to reimbursement of their prescription and treatment cost.

16. As stated above, the injuries and damages sustained by Plaintiffs are of the nature where medical recordation may not have occurred. This, however, does not eliminate the plausibility of the injuries, the extent of Plaintiffs injuries or Defendants' liability. Discovery Order 26 makes it clear that the medical proofs are to be considered along with the testimony of the Plaintiffs who have suffered the respective injuries. Further, it is the function of the fact finder to determine whether Plaintiffs have met their burden of going forward and is not the province of the Defendants to weigh the credibility of Plaintiffs' proofs.

17. Plaintiffs have substantially complied with all of this Court's Orders.

### D.  PLAINTIFFS' PURPOSELY DID NOT CERTIFY 61 OF THE 67 PLAINTIFFS LISTED ON DEFENDANTS' EXHIBIT A

18. Had Defendants conferred with Plaintiffs prior to filing the Motion to Dismiss, Defendants would have learned that Plaintiffs purposely did not certify 61 of the 67 Plaintiffs and was preparing Stipulations of Dismissals relating to these Plaintiffs.

19. By letter dated August 21, 2008, opposing counsel was made aware that Stipulation of Dismissals were being prepared for 36 Plaintiffs. 30 of those Plaintiffs were named in Defendants' Exhibit A. These Stipulations of Dismissals were forwarded to opposing counsel on September 29, 2008 for signature. In addition, Stipulations of Dismissals are being prepared for an additional 31 Plaintiffs 30 of whom are listed in Defendant's Exhibit A.  See Plaintiffs' master list exhibit c attached as Exhibit 4.

20. As for the remaining Plaintiffs listed in Defendants' Exhibit A, Plaintiff's counsel attempted to electronically file attorney certifications for these Plaintiffs on August

20, 2008 under <u>Jessie Allen, et al., Pfizer, Inc.</u>.; Individual Case No.: 1:07 –CV-11795-PBS as *Allen v. Pfizer* Attorney Certifications Part 20.  Attorney certifications of these Plaintiffs are covered by separate motion.  Accordingly, Defendants' arguments regarding these 67 Plaintiffs is without merit because it is made prematurely.

### E.  PLAINTIFFS MEDICAL/PHARMACY  RECORDS OF THE NINE (9) PLAINTIFFS ESTABLISH PRESCRIPTION/ "OFF LABEL" USE OF NEURONTIN

21. The Defendants also complain that the medical records of Nine (9) Plaintiffs do not indicate that Neurontin was prescribed or the reason why Neurontin was prescribed to Plaintiffs.  The names of these Plaintiffs are listed in Defendants' Exhibit C.  However, the medical records submitted by the Plaintiffs do either indicate the reason for which Neurontin was prescribed , establish that Neurontin was prescribed for an "off-label" use and/or the injury caused by the ingestion of Neurontin for the "off-label" use.  Defendants have either not read the records or have chosen to ignore the reference to the "off-label use.

22. It is a jury issue whether the medical records submitted by Plaintiffs establish "off label" use.  Plaintiffs are required to present the relevant medical records and pharmacy printouts establishing the prescription, purpose for the Neurontin prescription, with any available documented proof of injury.  It is then the purview of the fact finder to determine whether the proof is adequate.  It is the Plaintiffs' position that they were prescribed Neurontin for the following uses, for example:

> Charlie McClendon- was prescribed Neurontin for the pain indicated in his medical records.  While the prescription is not specifically mentioned in records,

it is a jury question whether the Prescription found in the pharmacy records was prescribed for the condition for which they were being treated.   See Exhibit 5

Maxine Smith- Dr. Vohra prescribed Neurontin for the low back pain she complained of in her office visits.  Again, it is a jury question whether there is a correlation between the complaints found in the medical records and the prescription in the pharmacy records. See Exhibit 6

Emma Clark- Dr. Evans and Dr. Weathersby prescribed Neurontin between the periods of November 29, 2001 and December 19, 2001.  She was prescribed Neurontin on 1/16/02, 2/9/02, 3/27/02, 4/25/02, 6/17/02, 8/16/02, 10/18/02, 12/20/02, 2/22/03.  It is a jury question whether the conditions for which Plaintiff was treated in her medical records and the pharmacy prescriptions are interrelated.  See Exhibit 7

Linda Harveston- Prescribed on 6/5/02.  In a related visit, the medical records indicate that Harveston was being treated for her complaints of back pain.  On 1/28/02, Plaintiff was treated for complaints of continued back pain, and on 1/31/02 filled her prescription of Neurontin.  It becomes a jury question whether the office visit, and the later-filled prescription are interrelated. See Exhibit 8

Henry Landrum- On 11/10/03 Plaintiff was had filled a 90 day supply of Neurontin prescribed by Dr. Ronald Williams.  Plaintiff's pharmacy printout establishes that he was prescribed Neurontin in the following manner:

| Date Prescribed | Amount Prescribed | Dosage |
|---|---|---|
| 9/5/03 | 90 day supply | |
| 5/20/03 | 30 day supply | |
| 5/5/03 | 60 day supply | |

|        |                |         |
|--------|----------------|---------|
| 2/7/03 | 90 day supply  |         |
| 1/7/03 | 40 day supply  | 400 mg  |
| 11/14/04 | 30 day supply |        |

See Exhibit 9

23. Plaintiffs' counsel is forwarding a complete copy of these medical records to counsel opposite for review.

### F. PLAINTIFFS' COUNSEL HAVE CONFERRED WITH THE 88 PLAINTIFFS AND REVIEWED THE LAW AND AVAILABLE MEDICAL RECORDS AND THEREFORE THE ATTORNEY CERTIFICATIONS COMPLY WITH THE COURT'S ORDER

24. The Defendants contend Discovery Order 26, requires that the attorney certifications require proof of something more than evidence of an off-label prescription. For this reason, Defendants purport that 88 of the Plaintiffs certified should be dismissed for not complying with the Court's orders. These Plaintiffs are listed in Defendants Exhibit B. Defendants allege that these 88 Plaintiffs' cases should be dismissed because they submitted only pharmacy records and that presumably attorney certifications can not be made on pharmacy records alone.

25. The Attorney Certifications are not based upon either the pharmacy records or medical records alone. However, in many instances, the pharmacy record is sufficient under the theory of liability and damages and in this case, in that these records establish the "off-label" purpose for Neurontin.

26. Discovery Order 26 required that Plaintiffs' counsel certify that he has conferred with the Plaintiff and that the Plaintiff intends to proceed with the litigation; the conferral occurred after and in response to the Court's certification order of November 9, 2007; and that the Attorney Certification is not based solely on the review of relevant medical records. Seemingly, the emphasis is that counsel has conferred with

Plaintiffs and not just relied upon the proof or lack thereof found in the medical records.

27. Specifically, regarding the medical records submitted, Proof of "off-label" use was established by the medical records/pharmacy records submitted on eight of the Plaintiffs listed in Defendants Exhibit B in Plaintiffs Amended Memorandum of Law in Support of Their Opposition to Motion to Dismiss on June 9, 2008.  These eight Plaintiffs are: Terry Banks, Minnie C. Campbell, Tommy Hardy, Clarence Harris, Doris Johnson, Jackie Lewis; Bridgett Shields, Pam Shields, and Cecil Taylor.  The records previously submitted on these eight plaintiffs are attached as Exhibits 9 through 18.

28. As stated earlier, Plaintiffs' were not afforded an opportunity to resolve any of the issues regarding Plaintiffs.  Since, August 19, 2008, Plaintiffs have forwarded relevant medical records on approximately half of the Plaintiffs listed in Defendants Exhibit B.  Defendants have obviously failed to review any of them.  In addition, there are pending medical records requests for the remaining plaintiffs and Plaintiffs are supplementing these records to the Defendants upon receipt of same.  The undersigned attorney communicated and by agreement with Defendants regarding supplementing the record as the requested medical records were made available have forwarded the same over a period of more than a month, Defendants have accepted the supplements without issue.

29. In addition, though Defendants claim that medical records have not been submitted on the 88 Plaintiffs listed in Exhibit D, Plaintiffs have forwarded relevant medical records on the following Plaintiffs for example:

> Shannon Glass- Prescribed Neurontin for thigh pain and Neurontin was found to be of zero help. These records were originally requested August 31, 2007 (date discarded by facility and changed to August 21, 2008). These records were forwarded to opposing counsel on October 3, 2008. See Exhibit 19
>
> Betsy Lindley-Miller- Prescribed Neurontin for diabetes. Experienced suicidal ideations while on Neurontin. See Exhibit 20
>
> Sherman McDonald- Prescribed Neurontin for depression. These records were submitted to counsel opposite on October 3, 2008.
>
> R. C. Robinson-Neurontin prescribed for peripheral neuropathy. See Exhibit 21
>
> Grace Scott- Prescribed Neurontin for headaches and diabetic neuropathy. Prescription of 600 mg to be taken three to five times daily. See Exhibit 22
>
> Lakeisha Wilson- Prescribed Neurontin for headaches. Neurontin dosage increased and increased due to the situation. See Exhibit 23
>
> Rashedia Young- Neurontin prescribed for chronic headaches. See Exhibit 24
>
> Taylor Williams- Prescribed Neurontin for severe pain in lower extremities. See Exhibit 25
>
> Donna Pierce- Prescribed Neurontin for back pain. Pierce's records were originally requested on May 31, 2007, but were not provided until September 23, 2008. These records were     supplemented to Opposing counsel on October 3, 2008. See Exhibit 26

30. Further, the relevant medical records will be forwarded on the following which reveal:

>  Debra Neal- Prescribed Neurontin for pain in her neck, burning in her right thumb, and numbness in her right limbs. See Exhibit 27
>
>  Eloise Williams- At the time Neurontin was prescribed Neurontin her medical chart indicates she was being treated for pain in the right leg, shoulder pain. See Exhibit 28
>
>  Katherine Warfield- Prescribed neurontin for right sided back pain, posterior lateral thigh pain, Upper right extremity pain, upper thoracic pain, and lower extremity pain; Neurontin dosage was increased as occasioned by the doctor. See Exhibit 29
>
>  Mary Aldridge-Ashford- Prescribed Neurontin for peripheral neuropathy and radiculapathy, which remained unchanged on medications. See Exhibit 30
>
>  Mike Trim- Prescribed Gabapentin for neuropathy of the legs and experienced suicidal thoughts, depression, hallucinations etc, while taking Neurontin. See Exhibit 31
>
>  Elton Mason- Prescribed Neurontin when seen for chief complaints of chest pain, pain due to abdominal aneurysm, sharp burning pain, with depressed effect, dejection and lack of confidence. Exhibit 32
>
>  Deloris Powell-Neurontin prescribed for chronic pain. Experienced fibromyalgia, back pain and depression while on Neurontin. Exhibit 33

31. Finally, Plaintiffs' counsel conferred with the Plaintiffs listed in Defendants' Exhibit B regarding their Neurontin use and prescriptions, and based thereon appropriately executed attorney certifications.

32. Seven of these 88 Plaintiffs have completed a declaration attesting to their prescription of Neurontin, the purpose for which it was prescribed and resulting side effects/injury. These Plaintiffs are Levi Davis, Serboya Delotta, Annie Edwards, Tommie Mills, Eugene Smith, Ronnie Smith, and Joyce Watson. See Exhibits 34 through 40. The review of the pharmacy records coupled with interviews and written communication to these plaintiffs provided sufficient basis for Plaintiffs' attorney to execute attorney certifications pending receipt of their medical records that had been requested.

33. It would not be justifiable to dismiss the cases of these 88 Plaintiffs before trial, when Plaintiffs have made good faith efforts to obtain the relevant medical records from their treating physicians, hospitals and clinics and are currently pending medical requests. Additional medical records requests are coming in daily. In many instances where Plaintiffs' pharmacy records indicate prescriptions by certain treating physicians, the correlating medical records have not been forwarded, though requested, due to the record retention policy of the medical facilities, direct refusal by medical treating facilities, or the records are otherwise purged. Further, in Mississippi even in circumstances where there exists pharmacy records alone, you may obtain punitive damages absent proof of actual injury for malicious willful misconduct.

### G. PLAINTIFFS HAVE SUBSTANTIALLY COMPLIED WITH THE COURT'S CERTIFICATION ORDERS

34. This Court's November 9, 2007 Order regarding discovery, paragraph 5, subsection 8 states that Plaintiffs' counsel shall certify that they have conferred with the individual plaintiff; the plaintiff intends to proceed with the litigation (absent a request for

dismissal); they have reviewed the relevant medical records and allegations of the complaint and plaintiffs counsel believes pursuit of the action is warranted.

35. In compliance with the November 9, 2007 Order, Plaintiffs filed attorney certifications for 391 Plaintiffs on December 18, 2008.

36. On June 20, 2008, the Court issued discovery Order 26 requiring Plaintiffs' counsel certify that he has conferred with the Plaintiff; and that the Plaintiff intends to proceed with the litigation; the conferral occurred after and in response to the Court's certification order of November 9, 2007; and that the Attorney Certification is not based solely on the review of relevant medical records and by filing the certification. In response to Discovery Order 26 Plaintiffs filed attorney certifications for 302 Plaintiffs on August 19, 2008.

37. On September 9, 2008, the Court issued an order requiring Plaintiffs' file a submission organized into a master list which names all of the Plaintiffs represented by Counsel; by individual case number; specifying whether an attorney certification, Stipulation of Dismissal, or withdrawal of counsel has been filed , including the date filed.  By leave of Court, as stated above, Counsel filed its submission pursuant to Court Order by leave of Court granted October 3, 2008.

38. It is obvious that the Defendants have painted a broad brush regarding any misconduct of Plaintiffs because there may be a few deficient records.    The conduct of Plaintiffs is not extreme.  Dismissal of these actions is not warranted because such a punishment would be too harsh for the alleged misconduct when there are other broad universe of options available, if necessary, to the Court particularly under the

mitigating circumstances of this case. *Young v. Gordon,* 330 F. 3d 76, 81 (1st Cir. 2003).

39. The Plaintiffs are willing to correct any deficiencies within a reasonable amount of time allowed by the Court. The Plaintiffs have experienced tremendous difficulties in procuring many of the relevant medical records due to pharmacy closings, record retention and maintenance systems of many medical facilities, and non-responsiveness of some medical facilities and pharmacies,

WHEREFORE PREMISESES CONSIDERED, Plaintiffs request that Defendants' Motion be denied and Plaintiffs be given a reasonable time to cure any deficiencies.

RESPECTFULLY SUBMITTED, this the 14th day of October, 2008.

/s/ Levi Boone, III