UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION ) ) ) ) ) | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:  ) ) PRODUCTS LIABILITY ACTIONS   ) ) | Magistrate Judge Leo T. Sorokin |

**PRODUCTS LIABILITY PLAINTIFFS' POST-HEARING
MEMORANDUM REGARDING DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' FRAUD CAUSES OF ACTION**

Products Liability Plaintiffs respectfully submit this memorandum following the hearing on October 20, 2008, on Defendants' motion to dismiss Plaintiffs' fraud causes of action, at which time the Court directed Plaintiffs to file a submission that more specifically delineates the new fraud allegations incorporated in Plaintiffs' amended complaints.

**A.    Direct Contact With Defendants' Sales Representatives**

Set forth below are the paragraph numbers for the allegations in each of the amended complaints specifying Defendants' suppression of information in conjunction with Defendants' sales representatives, who verbally detailed each Plaintiff's or Plaintiff's decedent's prescribing physician and did not disclose the risks of depression/suicidality.

*Woolum* Am. Compl., ECF Doc. # 1201, ¶¶ 117-120
*McGee* Am. Compl., ECF Doc. # 1202, ¶ 120
*Vercillo* Am. Compl., ECF Doc. # 1203, ¶ 117
*Valentine* Am. Compl., ECF Doc. # 1205, ¶¶ 117-130 (*see* Ex. F [124:10] – [125:11] for context of "hush hush" and "off the record" discussion with Defendants' sales representative)
*Roberson* Am. Compl., ECF Doc. # 1206, ¶¶ 120-121
*Bentley* Am. Compl., ECF Doc. # 1207, ¶ 119
*Shearer* Am. Compl.,ECF Doc. # 1208, ¶¶ 120-125

*Smith* Am. Compl., ECF Doc. # 1209, ¶¶ 128-143
*Bulger* Am. Compl., ECF Doc. # 1211, ¶¶ 120-124
*Owens* Am. Compl., ECF Doc. # 1212, ¶¶ 26, 154-162

Plaintiffs were served with over three million pages of documents that were produced by Defendants in the MDL. The databases produced by Defendants included several million records of information. And four different databases needed to be researched to assemble the information in regard to any one particular physician.

Due to the extraordinary volume of documents, Plaintiffs did not initially discover all of the sales representative call notes for each Plaintiff's or Plaintiff's decedent's physicians. Upon performing further searches of the data and a closer inspection of the documents resulting from the search, Plaintiffs have unearthed additional information concerning Defendants' sales representatives who in fact detailed the prescribing physicians of Plaintiffs or their decedents named in the Track One Cases. Plaintiffs were unable to include this information in the amended complaints, however, and now seek permission from the Court to replead the complaint in each of these cases in order to conform the pleadings to the detail information Plaintiffs now possess, as follows:

*Woolum* - On August 27, 2002, September 9, 2002, October 7, 2002, October 25, 2002, January 6, 2003 and February 6, 2003, prior to Plaintiff's suicide attempt, a sales representative of Defendants detailed, and upon information and belief, promoted Neurontin for off-label, unapproved uses to Plaintiff's prescribing physician Dr. Peter Lautenbach. A sales representative left 600 mg and 300 mg Neurontin samples at Dr. Lautenbach's office on August 27, 2003.

*McGee* - On December 28, 1998, prior to Plaintiff's decedent's suicide, Defendants' sales representative Jamie Sanford detailed, and upon information and belief, promoted Neurontin for off-label, unapproved uses to Plaintiff's decedent's prescribing physician Dr. Constantine Saadeh.

*Vercillo* - On February 2, 1999, March 3, 1999, March 12, 1999, March 17, 1999, April 14, 1999, April 28, 1999, May 5, 1999, May 26, 1999, June 16, 1999, June 30, 1999, July 7, 1999, April 4, 1999, September 15, 1999, September 27, 1999, November 1, 1999, April 10, 2000, May 3, 2000, May 31, 2000, June 20, 2000, July 5, 2000, July 31, 2000,

2

August 21, 2000, August 25, 2000, and September 21, 2000, prior to Plaintiff's suicide attempt, a sales representative of Defendants detailed. and upon information and belief, promoted Neurontin for off-label, unapproved uses to Plaintiff's prescribing physician Dr. James Donovan.  The sales representative left samples of Neurontin at Dr. Donovan's office on February 2, 1999, May 31, 2000, July 5, 2000, July 31, 2000, August 8, 2000, and September 21, 2000.

On February 16, 1999, May 13, 1999, June 3, 1999, June 24, 1999, July 15, 1999, August 12, 1999, November 12, 1999, April 25, 2000, July 7, 2000, July 11, 2000, July 31, 2000, September 1, 2000, and September 20, 2000, prior to Plaintiff's suicide attempt, a sales representative of Defendants detailed, and upon information and belief, promoted Neurontin for off-label, unapproved uses to Plaintiff's prescribing physician Dr. Roger Levine.  The sales representative left 300 mg Neurontin samples at Dr. Levine's office on February 16, 1999, April 25, 2000, and July 11, 2000.

On March 1, 1999, March 15, 1999, March 29, 1999, April 12, 1999, April 26, 1999, May 3, 1999, May 24, 1999, June 14, 1999, August 2, 1999, August 23, 1999, September 13, 1999, November 4, 1999, February 3, 2000, July 7, 2000, and August 1, 2000, prior to Plaintiff's decedent's suicide, a sales representative of Defendants detailed, and upon information and belief, promoted Neurontin for off-label, unapproved uses to Plaintiff's prescribing physician Dr. Thomas Maltese.  The sales representative left 100 mg Neurontin samples at Dr. Maltese's office on August 1, 2000.

On October 26, 1999, prior to Plaintiff's suicide attempt, a sales representative of Defendants detailed, and upon information and belief, promoted Neurontin for off-label, unapproved uses to Plaintiff's prescribing physician Dr. James Mead.

*Pursey* - On April 12, 1999, prior to Plaintiff's decedent's suicide, a sales representative of Defendants detailed, and upon information and belief, promoted Neurontin for off-label, unapproved uses to Plaintiff's decedent's prescribing physician Dr. Antonio Gutierrez.

*Roberson* - On November 11, 2002, prior to Plaintiff's decedent's suicide, Defendants' sales representative Darian Collins detailed, and upon information and belief, promoted Neurontin for off-label, unapproved uses to Plaintiff's decedent's prescribing physician Dr. Richard Burris.

On September 11, 2002, and October 24, 2002, prior to Plaintiff's decedent's suicide , Defendants' sales representative Darian Collins detailed, and upon information and belief, promoted Neurontin for off-label, unapproved uses to Plaintiff's decedent's prescribing physician Dr. Robert Smith.  Further, on October 24, 2002, Collins provided samples of 300 mg Neurontin to Dr. Robert Smith.

*Bentley* - On October 26, 1999, prior to Plaintiff's decedent's suicide, a sales representative of Defendants detailed, and upon information and belief, promoted

3

Neurontin for off-label, unapproved uses to Plaintiff's decedent's physician Dr. Lakshman Rasiah.

***Dixon*** - On June 14, 1995, June 23, 1995, August 14, 1995, August 28, 1995, October 23, 1995, November 7, 1995, November 20, 1995, December 19, 1995, January 12, 1996, February 9, 1996, February 28, 1996, March 20, 1996, March 27, 1996, April 3, 1996, April 9, 1996,  May 3, 1996, May 9, 1996, May 23, 1996,  June 17, 1996, July 17, 1996, August 26, 1996, September 10, 1996, July 25, 1997, May 1, 1998 , and June 18, 1999, prior to Plaintiff's decedent's suicide, a sales representative of Defendants detailed, and upon information and belief, promoted Neurontin for off-label, unapproved uses to Plaintiff's decedent's prescribing physician Dr. Robert Bernstein.

On February 7, 1995, June 19, 1995, August 24, 1995, September 19, 1995, September 28, 1995, October 23, 1995, January 9, 1996, February 9, 1996, March 4, 1996, April 3, 1996, April 9, 1996, June 12, 1996, June 17, 1996, August 26, 1996, September 10, 1996, December 17, 1997, and April 6, 1998, prior to Plaintiff's decedent's suicide, a sales representative of Defendants detailed, and upon information and belief, promoted Neurontin for off-label, unapproved uses to Plaintiff's decedent's prescribing physician Dr. Peter Tanzer.

Furthermore, although *Dorsey* is not a Finkelstein & Partners case, Plaintiffs have unearthed the following information concerning Defendants' sales representatives who detailed that Plaintiff's decedent's physician:

***Dorsey*** - On August 19, 1998, November 5, 1998, December 10, 1998, February 3, 1999, April 23, 1999, May 21, 1999,  May 24, 1999, June 2, 1999, June 3, 1999, June 10, 1999, June 21, 1999, June 30, 1999, July 22, 1999, August 12, 1999, September 24, 1999, October 1, 1999, October 4, 1999, October, 13, 1999, November 2, 1999, November 22, 1999, January 19, 2000, February 17, 1999, May 3, 2000, May 9, 2000, July 17, 2000, August 3, 2000, August 10, 2000, August 29, 2000, September 6, 2000, September 11, 2000, and September 29, 2000, prior to Plaintiff's decedent's suicide, a sales representative of Defendants detailed, and upon information and belief, promoted Neurontin for off-label, unapproved uses to Plaintiff's decedent's prescribing physician, Dr. Alpert.

Plaintiffs will meet/confer with defense counsel to seek their consent to amendment of these complaints for the sole purpose of adding the above paragraphs as allegations to the amended complaints.  Plaintiffs emphasize that they have only discovered the proof of these details by re-analyzing the mass amount of data disclosed by Defendants together with the insight and guidance provided by the Court during the hearing on the motion.

4

**B.     Direct Contact With Defendants' Label**

Defendants suppressed depression/suicidality information in the product labeling; thus, even in the absence of an actual visit and verbal detail from a sales representative, each physician who prescribed Neurontin did so based upon a label in the physician's possession that did not include depression/suicidality information.

In this regard, attached hereto are portions of the prescribing physician's deposition transcript for each Plaintiff or Plaintiff's decedent which demonstrates one or more of the following: (1) the prescribing physician read the label; (2) the information that was suppressed was material; (3) the information that was suppressed would be relied upon by the prescribing physician in terms of warning the patients; and (4) there was direct contact between the prescribing physicians and Defendants' sales representatives.  For the Court's convenience, Plaintiffs have included the topic to which the excerpt refers in bold type at the beginning of each of the excerpted sections.

| | |
|---|---|
| *Woolum* - | Excerpts from Deposition Transcript of Dr. Lautenbach, Ex. A |
| | Excerpts from Deposition Transcript of Dr. Ramirez, Ex. B |
| *McGee* - | Excerpts from Deposition Transcript of Dr. Saadeh, Ex. C |
| *Vercillo* - | Excerpts from Deposition Transcript of Dr. Barley, Ex. D |
| | Excerpts from Deposition Transcript of Dr. Maltese, Ex. E |
| *Valentine* - | Excerpts from Deposition Transcript of Dr. Arias, Ex. F |
| | Excerpts from Deposition Transcript of Dr. Seshandri, Ex. G |
| *Roberson* - | Excerpts from Deposition Transcript of Dr. Burris, Ex. H |
| | Excerpts from Deposition Transcript of Dr. Smith, Ex. I |
| *Bentley* - | Excerpts from Deposition Transcript of Dr. Hartenstein, Ex. J |
| | Excerpts from Deposition Transcript of Dr. Rasiah, Ex. K |
| *Shearer* - | Excerpts from Deposition Transcript of Dr. Sullivan, Ex. L |

*<u>Smith</u>* - Excerpts from Deposition Transcript of Dr. Cato, Ex. M
Excerpts from Deposition Transcript of Nurse Krancer, Ex. N
Excerpts from Deposition Transcript of Dr. Mackey, Ex. O
Excerpts from Deposition Transcript of Dr. McCombs III, Ex. P

*<u>Bulger</u>* - Excerpts from Deposition Transcript of Dr. Crognale, Ex. Q
Excerpts from Deposition Transcript of Dr. Goldman, Ex. R
Excerpts from Deposition Transcript of Dr. Mengel, Ex. S

*<u>Owens</u>* - Excerpts from Deposition Transcript of Dr. Crotwell III, Ex. T

Plaintiffs request that the Court allow further amendment of the pleadings to conform the allegations contained in the Complaints with the additional proof provided by the deposition transcript excerpts noted above.

**C.    General Additional Allegations Regarding Defendants'
         Fraud and as Set Forth in All of the Amended Complaints**

Listed below are the paragraph numbers in each of the amended complaints detailing the additional general allegations concerning Plaintiffs' fraud and suppression claims against Defendants.

*Woolum* Am. Compl., ECF Doc. # 1201, ¶¶ 199-247, 254-267
*McGee* Am. Compl., ECF Doc. # 1202, ¶¶ 209-271
*Vercillo* Am. Compl., ECF Doc. # 1203, ¶¶ 196-258
*Pursey* Am. Compl., ECF Doc. # 1204, ¶¶ 213-275
*Valentine* Am. Compl., ECF Doc. # 1205, ¶¶ 209-257, 264-277
*Roberson* Am. Compl., ECF Doc. # 1206, ¶¶ 210-258, 264-277
*Bentley* Am. Compl., ECF Doc. # 1207, ¶¶ 200-262
*Shearer* Am. Compl., ECF Doc. # 1208, ¶¶ 222- 284
*Smith* Am. Compl., ECF Doc. # 1209, ¶¶ 235-283, 290-303
*Dixon* Am. Compl., ECF Doc. # 1210, ¶¶ 200-262
*Bulger* Am. Compl., ECF Doc. # 1211, ¶¶ 221-269, 276-289
*Owens* Am. Compl., ECF Doc. # 1212, ¶¶ 118-153, 163-175

Dated:  October 29, 2008 Respectfully submitted,

*Members of Products Liability Plaintiffs' Steering Committee*

By: **/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
1279 Route 300, Suite 1111
Newburgh, NY  12551

By: **/s/ Jack W. London**
Jack W. London, Esquire
Law Offices of Jack W. London
 & Associates
106 E. 6th Street, Suite 700
Austin, TX  78701

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on October 29, 2008.

**/s/ Kenneth B. Fromson**
Kenneth B. Fromson, Esquire