UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
: MDL Docket No. 1629
In re: NEURONTIN MARKETING, :
SALES PRACTICES AND : Master File No. 04-10981
PRODUCTS LIABILITY LITIGATION :
: Judge Patti B. Saris
---------------------------------------------------------------x
: Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO: :
:
PRODUCTS LIABILITY ACTIONS :
:
---------------------------------------------------------------x

**PRODUCTS LIABILITY PLAINTIFFS' MEMORANDUM
IN OPPOSITION TO DEFENDANTS' MOTION FOR
LEAVE TO SUPPLEMENT RECORD ON *DAUBERT* AND
SUMMARY JUDGMENT MOTIONS WITH NOVEMBER 2008
SUPPLEMENTAL REPORT OF ROBERT D. GIBBONS Ph.D.**

Products Liability Plaintiffs hereby oppose the motion by Defendants Pfizer Inc. and Warner-Lambert Company for leave to supplement the record on the *Daubert* and summary judgment motions with a new "supplemental" report of Dr. Gibbons.

Despite the Court's unequivocal order that Dr. Gibbons' participation in this case be limited to a rebuttal expert regarding only the FDA Alert on Suicidality and Anticonvulsants ("FDA Alert"), Defendants submit a new expert report from Dr. Gibbons that (a) provides new opinions about gabapentin; (b) based upon Dr. Gibbons' own manufactured, new analysis of gabapentin and general causation in a never-before-disclosed, self-created epidemiologic study; (c) based upon data never made available to Plaintiffs during the generic phase of the MDL discovery, or even provided as of today; and (d) is premised upon data from 2000-2006 that was available to Defendants for over a year before general causation expert disclosure came to a close in the generic phase of this MDL.

## **PRELIMINARY STATEMENT**

Dr. Gibbons' new proposed supplemental report, which pertains to information other than the "FDA Alert", is in direct violation of this Court's Orders and should be rejected. On April 30, 2008, this Court specifically limited Dr. Gibbons' participation in this case to being a rebuttal expert on the "FDA alert". In the Court's electronic order related to Dr. Gibbons' original rebuttal expert report, this Court stated: "I have read plaintiffs' memo, but will still permit a rebuttal expert report <u>involving only the FDA alert</u>, which is a key finding in this case. I will also be sending a letter to the FDA asking for its imput" (*sic*) (emphasis added). Further, on June 20, 2008, during the second day of the *Daubert* hearing, this Court again reiterated its directive that Dr. Gibbons' opinion would be allowed only as to the FDA Alert:

> JUDGE SARIS: Whatever, but with Dr. Gibbons, I gave permission for his report only with respect to the FDA alert. The motion to strike the other portions was well-taken.
>
> MS. McGRODER: He's going to talk about the FDA alert.
>
> JUDGE SARIS: I didn't allow a general report, so the only opinion he's going to be allowed to give is with respect to the FDA alert.
>
> MS. McGRODER: And that's what he's prepared to talk about today.
>
> * * *
>
> JUDGE SARIS: Right now I don't want to take the time, but one thing I'm crystal clear on, at least -- I only read the first one for the second time. One was, of course, three times as long, but at least with respect to the first one, there were at least three opinions in there which were not related to the FDA alert, and the motion to strike is allowed. Only the FDA alert. Let's go.

June 20, 2008 *Daubert* hearing Transcript, pp. 292:18-293:3, 293:19-25 (excerpts attached hereto as Ex. A).

On November 11, 2008, Defendants disclosed the Gibbons "supplemental" report, which includes nineteen (19) itemized paragraphs of "Opinions" (ECF Doc. # 1489, Ex. A):

> Paragraphs 1-10 provide nothing more than a repeat discussion of what his previous rebuttal report set forth in preparation for the *Daubert* hearing or what was discussed at the actual hearing before this Court; there is no basis for a supplemental report related to the FDA Alert.
>
> Paragraph 11 pertains to Plaintiffs' expert Dr. Cheryl Blume and Plaintiffs' counsel employee, Keith Altman. There is no basis for a supplemental report pertaining to Dr. Blume or Mr. Altman.
>
> Paragraph 11-19 set forth Dr. Gibbons' own epidemiological study based upon data and information from years 2000-2006: "In an attempt to better understand if a possible relationship between AEDs and suicide exists, I have initiated a study of a cohort of 131, 178 patients who took gabapentin . . . ." Clearly, this is not a review of the FDA Alert.

Defendants were clearly well aware that this Court was only giving permission for a rebuttal opinion from Dr. Gibbons regarding the FDA Alert. However, with full knowledge of this Court's orders, Defendants attempt again — for a second time — to expand Dr. Gibbons' opinion beyond this Court's orders. There is no excuse for Defendants blatantly defying this Court's orders and now, almost five months after the *Daubert* hearing, requesting leave to supplement the record with an expert report from Dr. Gibbons that does not pertain to the FDA Alert but rather is a new opinion on general causation.

## ARGUMENT

### I. By This Court's Order, Dr. Gibbons' Participation Is Limited to a Rebuttal Expert Regarding the FDA Alert; Dr. Gibbons Should Not Be Allowed to Supplement the Record with a New Report That Includes New Opinions on General Causation and Such Opinions Should Be Precluded From Evidence In Any Individual, Specific Case.

Defendants' application is a veiled attempt to circumvent this Court's order that allowed a rebuttal opinion by Dr. Gibbons solely on the issue of the FDA Alert. This Court's electronic order, posted to ECF on April 30, 2008, limited Defendants' rebuttal expert to the FDA Alert.

3

Specifically, the Court permitted "a rebuttal expert report involving <u>only the FDA alert</u>, which is a key finding in this case." (Emphasis added.)  There are no further rounds of expert reports for <u>general</u> causation in this MDL.  In *Dufresne v. Microsoft Corp.*, Special Master John F. Sweeney excluded a supplemental report of an expert, noting that a party is "not entitled to a 'placeholder' to 'reserve the right' to opine . . . in a later round of expert reports," 2006 U.S. Dist. LEXIS 57423 at *22 (D. Mass. 2006), and that "the vast majority of support appears to come from materials that were in Plaintiff's possession at the time of the original exchange of report." *Id.* at *25.

Here, Dr. Gibbons' original rebuttal disclosure was included in the record for *Daubert* and summary judgment purposes, and Dr. Gibbons provided testimony at the *Daubert* hearing in July 2008.  Defendants should not be allowed at this late date to add Gibbons as an expert on general causation — after the issue of causation has been explored in detail in reports of the initial experts of the parties, extensive briefing submitted by the parties, and several days of testimony and argument before this Court.  Further, Defendants' tactic to disclose this new expert disclosure under the guise of being a <u>case-specific</u> disclosure in the Track 1 cases of *Bulger* and *Smith* is laughable.

Although Defendants have stated that the Gibbons supplemental report was timely served in the pending Track 1 cases of *Smith* and *Bulger*, purportedly in compliance with the Rule 26 disclosure requirements, it is axiomatic that the <u>case-specific</u> discovery period allotted by this Court for *Smith* and *Bulger* was only to concern <u>specific</u> causation issues.  Defendants have no right to provide new <u>general</u> causation opinions at this time.[1]  The disclosure deadline for general

---

[1] In addition to the Gibbons disclosure, Defendants have recently served multiple new "supplemental" expert disclosures from other experts regarding general causation opinions related to Neurontin.  Although not the subject of this present motion, Plaintiffs intend to move to strike portions of such reports that violate the Court's discovery schedule for expert disclosure on general causation.

4

causation opinions, as well as dispositive *Daubert* motions, has elapsed. Defendants' untimely effort to put forth new, manufactured evidence after the close of expert disclosure on general causation effectively prevents Plaintiffs from making their own *Daubert* challenge regarding Dr. Gibbons' purported epidemiology analysis.

Further, if Defendants are allowed to serve new opinions on general causation, but do so under the guise of case-specific discovery schedules, then the parties will likely never complete the resolution on general causation in this MDL. For example, Plaintiffs must now have an opportunity to review the underlying data and information that formed the basis for Dr. Gibbons' new opinions, as well as the data and information that was accessible to Dr. Gibbons but that he may have chose to ignore.[2] Plaintiffs must also have an opportunity to provide this same discovery to Plaintiffs' experts for their own evaluation and potential new opinions about the data or for such experts to provide replies to Dr. Gibbons' new analysis. Ultimately, Plaintiffs would need to make their own application to this Court for leave to include additional expert disclosures in the already massive record on *Daubert* and summary judgment motions. No doubt this would then result in Defendants seeking yet another chance to cure the deficiencies in their previous general causation disclosures. None of these actions can be completed by the current Track 1 case-specific, expert disclosure and deposition deadline of December 23, 2008.

Allowing Defendants to interject a new expert on the issue of general causation at this late stage is an abuse of the process, and against all fairness. Plaintiffs have a right to be assured that the orders of this Court are to be abided and the establishment of discovery schedules are to be adhered to and respected. Plaintiffs should be able to rely on such schedules and have some

---

[2] Defendants' disclosure of the new Gibbons report was received on November, 11, 2008, and Plaintiffs have already provided correspondence seeking the data and information that culminated in the Gibbons disclosure. (Attached hereto as Ex. B.)

expectation that one does not have to re-litigate the issue of general causation *ad infinitum*, and have the rules change at the whim of their adversary.

> **II.     Because Dr. Gibbons' New Opinions are Based Upon Data From Years 2000-2006 that were Available to Defendants Before the Deadline for General Causation Expert Disclosure in 2007, Defendants Should Not Be Allowed to Supplement the Record at This Late Date.**

Pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Moreover, pursuant to Rule 26(e)(2): "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's **duty to supplement extends both to information included in the report** and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." (Emphasis added.)

In *Sheek v. Asia Badger, Inc.,* the First Circuit affirmed the trial court's decision to strike portions of an expert's testimony for failure to comply with the mandates of Rule 26 in regard to the expert disclosure in question. 235 F.3d 687, 693-94 (1st Cir. 2000). In *Lubanski v. Coleco Indus., Inc.,* the First Circuit affirmed the trial court's exclusion of plaintiff's rebuttal evidence where the evidence was available to the plaintiff during her case in chief and the testimony that the defendant was seeking to rebut was not unexpected. 929 F.2d 42, 47 (1st Cir. 1991).

Here, Dr. Gibbons admits that he has performed a new study based upon "data which was collected during fiscal years 2000 through 2006"; therefore, Defendants had the opportunity to originally name Dr. Gibbons as one of their general causation experts, have him perform this purported study, and provide a report regarding general causation prior to the deadline for

6

Defendants' expert disclosure in 2007. ECF Doc. # 1489, Ex. A, p.10 of 15. Defendants have no reasonable basis for having waited until after the close of expert disclosure, and after the *Daubert* and summary judgment motion hearings to disclose Dr. Gibbons' analysis of data. Plaintiffs have argued from the outset of this litigation that Defendants failed in their pharmacovigilance obligations to perform such analyses, yet Defendants never sought fit to act. Even when Defendants sought to have Dr. Gibbons approved as a rebuttal expert in April 2008 — at which time this Court allowed his limited involvement — they still chose not to disclose any such epidemiological study like the one now before the Court.

## CONCLUSION

Plaintiffs respectfully request that this Court deny in its entirety Defendants' motion for leave to supplement the record on the *Daubert* and summary judgment motions with the so-called "supplemental" report of Dr. Gibbons. Dr. Gibbons' report, or portions of the report, clearly exceed this Court's Order that limited Defendants to "a rebuttal expert report involving only the FDA alert".

The Gibbons "supplemental" disclosure should be stricken pursuant to Rule 37(c)(1) of the Federal Rules, because Rule 26 mandates that the data and/or information which formed the bases for Dr. Gibbons' new study and his general causation opinions, which were available to Defendants during their case in chief prior to the *Daubert* and summary judgment motions, was not properly disclosed to Plaintiffs during the discovery process.

If the Court decides to accept for the record and consider Dr. Gibbons' supplemental report with regard to any opinions outside the scope of the FDA Alert, and to consider now his untimely general causation opinion related to his cohort study, Plaintiffs request that a new general causation discovery schedule be established with dates certain for (a) document

production related to all data Dr. Gibbons reviewed and relied upon in reaching his opinions, as well as all underlying data to which Dr. Gibbons had access but may have ignored; (b) Plaintiffs' reply expert reports on general causation; and (c) a new motion schedule for *Daubert* purposes on general causation in this MDL so that Plaintiffs can challenge Dr. Gibbons on this newly disclosed analysis.

Dated: November 14, 2008               Respectfully submitted,

*Members of Products Liability Plaintiffs' Steering Committee*

By:   **/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY  12550

By:   **/s/ Jack W. London**
Jack W. London, Esquire
Law Offices of Jack W. London
 & Associates
106 E. 6th Street, Suite 700
Austin, TX  78701

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on November 14, 2008.

**/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein