UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES ) <br> PRACTICES, AND PRODUCTS LIABILITY ) <br> LITIGATION ) <br> ) <br> ) <br> THIS DOCUMENT RELATES TO: ) <br> ) <br> ALL MARKETING AND ) <br> SALES PRACTICES ACTIONS ) <br> ) | MDL Docket No. 1629 <br> Master File No. 04-10981 <br> Judge Patti B. Saris <br> Mag. Judge Leo T. Sorokin |

**CLASS PLAINTIFFS' MOTION FOR LEAVE TO
SERVE SUPPLEMENTAL EXPERT REPORTS**

Class Plaintiffs request leave to supplement the expert report of Dr. Jeffrey Barkin, Class Plaintiffs' bipolar expert, and to serve the expert report of one additional expert, Dr. Curt Furberg, a public health sciences professor at Wake Forest University. These experts have concluded that Parke-Davis possessed evidence that Neurontin *increased* the risk of suicide and caused a *worsening* of mood, and fraudulently concealed this evidence while making statements to physicians that Neurontin would actually *improve* mood. Dr. Furberg, a nationally and internationally recognized expert on the design, conduct, analysis and monitoring of clinical trials, has reviewed documents from Neurontin's original New Drug Application (NDA) and finds that Parke-Davis knew and suppressed the evidence that Neurontin increased the risk of depression with or without suicidal ideation, a risk specifically highlighted by the FDA in the course of its medical review of Neurontin. Dr. Barkin, who previously reviewed Defendants' marketing efforts and found a pattern of suppression of negative clinical data from the mania and depression trials, now reviews the earlier marketing efforts and finds the same pattern of

suppression with this earlier clinical trial data. In support thereof, the Class Plaintiffs state as follows:

1.   As this Court is aware, the Sales and Marketing Plaintiffs are not the only parties before the Court who are alleging fraud; comparable claims have been raised by the Products Liability Plaintiffs. Their claims include allegations that Defendants suppressed findings based on clinical data that linked Neurontin usage to depression and suicide. Defendants were aware of this evidence as early as 1992, when, as part of Neurontin's NDA for the adjuvant treatment of epilepsy, the FDA conducted a medical-statistical review ("FDA's 1992 Review"). This review, signed by five FDA officials, noted the occurrence of serious mood-related side effects, including clinically significant depression with and without suicidal ideation, in patients receiving Neurontin during pre-approval clinical trials. This evidence of suppression was the focus of the motion-to-dismiss hearing held on October 20, 2008 in the Products Liability cases. At that October 20th hearing, this Court mentioned more than once that there was overlap between the Products Liability Plaintiffs' fraud claims and the Sales and Marketing Plaintiffs fraud claims.

2.   At the October 20th hearing, when counsel for the Class Plaintiffs heard the Court's repeated mention of overlap, it became apparent to counsel that Defendants' suppression of the evidence of a link between Neurontin and treatment-emergent depression and possible suicide—a link which the FDA had only recently found to be genuine—constituted further evidence in support of Class Plaintiffs' fraudulent marketing claims. The information contained in the FDA's 1992 Review provided Defendants' with the first evidence of the lack of Neurontin's beneficial effect on mood. Despite this early evidence, Defendants began marketing Neurontin in November 1995 as an effective mood-stabilizing therapy for bipolar disorder, and

as having beneficial rather than adverse effects on mood.  Remarkably, Defendants not only suppressed the known contradictory evidence, they went so far as to affirmatively deny its existence, even when discussing the very same data that led FDA officials to express concern about the worsening of mood.  The findings of Drs. Furberg and Barkin further substantiate Plaintiffs' claims that Defendants' engaged in fraud beginning in November 1995.

3.      The October 20, 2008 motion-to-dismiss hearing, where the Products Liability Plaintiffs' fraud claims were aired, occurred after the Sales and Marketing Plaintiffs served their expert reports on the Defendants.[1]  The Class Plaintiffs' claims (and their expert reports) have, to date, focused on Defendants' clinical trials relating to the specific indications at issue in the Sales and Marketing Plaintiffs' cases:  pain, migraine, bipolar and dosage above 1800 mg/day.  In contrast, the 1992 FDA Review, which is at the core of the Products Liability Plaintiffs' fraud claims, almost exclusively concerns the results of adjunctive therapy epilepsy trials that Parke-Davis conducted in the late 1980s and early 1990s.  The Sales and Marketing Plaintiffs have not claimed that the Defendants' marketing for adjuvant epilepsy therapy was fraudulent and consequently did not seek an expert review of the hundreds of thousands of pages of documents relating to the epilepsy trials submitted in support of the original NDA.

4.      Immediately subsequent to the October 20th hearing described above and the Court's observation of considerable overlap, counsel for the Class Plaintiffs requested two experts to examine the 1992 FDA Review, the data that the FDA examined in reaching its conclusions and published articles and other materials used by Parke-Davis to promote Neurontin for bipolar and other mood disorders.  Dr. Barkin is the Class Plaintiffs' expert psychiatrist who had previously authored a report that was served on the Defendants.  Based on

---

[1] These reports were originally due on August 1, 2008. With one exception, they were all substantially completed by that date and were ready to be served.  By agreement with Defendants, Class Plaintiffs' reports were served on August 11, 2008.

the additional materials supplied to him, he has written a brief six page supplement to his original report that is attached as <u>Exhibit A</u>.  Dr. Furberg is a public health expert who has literally "written the book" on the proper methods of constructing, conducting, analyzing and reporting clinical trials: <u>Fundamentals of Clinical Trials</u> (1999).[2]   He is eminently qualified to offer a report on the significance of the FDA's findings.  A copy of his proposed expert report is attached as <u>Exhibit B</u>.  Both experts conclude that, in light of the Defendants' efforts to promote Neurontin as an effective treatment for bipolar disorder: (a) there was negative clinical data suggesting the lack of a beneficial effect on mood, and even a worsening; (b) this data directly contradicted and undermined Defendants' claims that Neurontin had beneficial rather than adverse effects on mood; (c) as a result, Defendants should have disclosed this data; and (d) specific marketing statements made by the Defendants beginning in November 1995 not only omitted this negative data—even when discussing the very same trials from which such data was derived—but made contrary statements that were false and misleading.

5.      Permitting the Plaintiffs to serve these reports at this time is neither unfair nor prejudicial to the Defendants.  Only two months have elapsed from the time the Court noted the overlap between the Products Liability fraud claims and the Sales and Marketing Plaintiffs' claims.  Given the complexity of issues involved in this case, Plaintiffs have rapidly developed the proffered expert reports and provided them to the Defendants.  In contrast, Defendants have received multiple extensions and have still not served any of their expert reports on the Sales and Marketing Plaintiffs, despite an original schedule that called for those reports to be served one month after Plaintiffs' reports.  Once Plaintiffs realized the relevance of the FDA's 1992 Review to their case, they moved expeditiously.

---

[2] Dr. Furburg co-authored this volume with Laurence M. Friedman, M.D. and David L. DeMets, Ph. D.  A fourth edition of this treatise will be published shortly.

6. Significantly, the attached reports do not present new material to the Defendants. The significance of the FDA's 1992 Review and whether their findings should have been disclosed are major issues in the Products Liability cases. In fact, Defendants hired the principle FDA reviewer as a consultant to support their position. They have already dealt with the suppression claims in the Products Liability cases and have had experts review the relevant data. Defendants have already formulated and argued their position on the necessity of disclosing the data, most recently at the October 20th hearing. The Defendants have already dealt with these issues in the Products Liability cases and can easily and promptly address these matters when they are examined in light of the Sales and Marketing Plaintiffs Claims. Defendants, of course, would prefer not to deal with the serious issues raised in the FDA's 1992 Review, but there is no unfairness in allowing the Sales and Marketing Plaintiffs to raise issues against which the Defendants are already prepared to defend.

7. Defendants cannot fairly claim prejudice. The Court has set the period from December 15, 2008 through January 31, 2009 for the taking of depositions of both sides' experts in the Sales and Marketing cases. As of the filing of this motion, Defendants have not scheduled a single deposition for this period. Defendants, presumably, already intend to depose Dr. Barkin, whose original report was served on the Defendants more than four months ago. Examining him on the material in the supplemental report will not unduly burden the Defendants or their deposition preparation. Nor, given the resources possessed by the Defendants, should the addition of a deposition of a single additional witness prove too overwhelming for the world's largest drug manufacturer. Indeed, Defendants will have more time to schedule and prepare for the deposition of Plaintiffs' most recent expert than the Plaintiffs will have to prepare to depose any of Defendants' experts. Plaintiffs will not even receive Defendants' expert reports until

December 15th, and will be required to digest those reports and cross examine all of those witnesses in just 46 days (many of which fall within the holiday season).  Defendants will have 49 days to prepare to depose one additional witness.  They can hardly complain that they will have more time than the Sales and Marketing Plaintiffs.

       8.      Finally and most importantly, the fraudulent marketing of Neurontin for bipolar disorder represents the most serious claim raised by the Plaintiffs and the most egregious breach of ethical conduct committed by Defendants.  Patients suffering from mental disorders often face a lifetime of challenges, as well as the stigma associated with their diagnoses.  Effective treatment is critical to avoid serious debilitating, self-destructive and perhaps fatal co-morbidities.  As a result of Defendants' fraud, bipolar patients, and other patients suffering from mood disorders, were prescribed and spent money on an ineffective therapy.  Moreover, these patients were exposed to a drug Defendants knew could actually exacerbate the very conditions and symptoms for which they claimed Neurontin was effective.  This conduct is simply inexcusable.  The attached expert reports further reveal that Defendants continually suppressed evidence that contradicted and undermined their fraudulent marketing claims of Neurontin's beneficial effects on mood from the inception of, and throughout, their extensive marketing campaign.  Defendants were able to profit tremendously as a result of this fraud to the great detriment of patients burdened with these diagnoses.  Plaintiffs should be allowed to present the most complete case possible regarding this fraudulent conduct, especially when the service of the supplemental expert reports will not unduly prejudice the Defendants who will still be able to defend themselves fairly against all of the Class Plaintiffs' claims, even those raised in these most recent expert reports.

WHEREFORE, for the reasons set forth herein, Class Plaintiffs respectfully request that leave be granted to serve upon the Defendants the Supplemental Report on the Use of Neurontin For Bipolar and Other Mood Disorders, by Dr. Jeffrey S. Barkin, and the Expert Report of Curt Daniel Furberg, M.D., Ph.D.

Dated: December 11, 2008

*Members of the Class Plaintiffs' Steering Committee*

By: */s/ Thomas Greene*
Thomas Greene
Greene & Hoffman
33 Broad Street, 5th Floor
Boston, MA 02109

By: */s/ Don Barrett*
Don Barrett
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By: */s/ Barry Himmelstein*
Barry Himmelstein
Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By: */s/ James Dugan*
James Dugan
Dugan & Browne, PLC
650 Poydras Street, Suite 2150
New Orleans, LA 70130

By: */s/ Thomas M. Sobol*
Thomas M. Sobol
Edward Notargiacomo
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142

By:    */s/ Daniel Becnel*
        Daniel Becnel, Jr.
        Law Offices of Daniel Becnel, Jr.
        106 W. Seventh Street
        P.O. Drawer H
        Reserve, LA 70084

## CERTIFICATION PURSUANT TO L.R. 7.1

The undersigned counsel for Class Plaintiffs in the above-referenced matter hereby certifies that, on December 11, 2008, he conferred via telephone with David Chaffin, counsel for Defendants, concerning the foregoing motion, and attempted in good faith to resolve or narrow the issue.

        /s/ Thomas M. Greene
        Thomas M. Greene

CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on December 11, 2008.

                                      /s/Ilyas J. Rona
                                      Ilyas J. Rona