UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                :
In re:  NEURONTIN MARKETING, SALES PRACTICES,    :   MDL Docket No. 1629
        AND PRODUCTS LIABILITY LITIGATION     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Master File No. 04-10981
                :
THIS DOCUMENT RELATES TO:         :   Judge Patti B. Saris
                :
ALL MARKETING AND SALES PRACTICES ACTIONS  :   Magistrate Judge Leo T.
                :   Sorokin
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**OPPOSITION TO CLASS PLAINTIFFS' MOTION FOR LEAVE
TO SERVE SUPPLEMENTAL EXPERT REPORTS**

Defendants Pfizer Inc. and Warner-Lambert Company submit this opposition to Class Plaintiffs' motion for leave to serve supplemental expert reports.

**PRELIMINARY STATEMENT**

Class Plaintiffs' motion should be denied because:

o The supplemental reports are months late;

o Class Plaintiffs do not and cannot justify the delay. The reports address events that allegedly occurred many years ago, and with which Class Plaintiffs have long been familiar, and their claim that they only recently recognized the possibility of asserting fraudulent marketing claims based on these alleged events is not persuasive;

o Given the relatively narrow window for expert depositions and the Court's directive that rebuttal reports may not be served, defendants would be substantially prejudiced if Class Plaintiffs' motion were granted;

o   The opinions expressed in the "supplemental" reports have little to no bearing on Class Plaintiffs' claims.  The most that Class Plaintiffs can say of the opinions is that they are "further support" for their claims, and, in truth, they are not even that; and

o   Class Plaintiffs have repeatedly represented that whether or not Neurontin is associated with an increased risk of depression or suicidal ideation has no relevance to their lawsuit. Their claims are and always have been only that defendants oversold with respect to efficacy, and it is far too late in the day for amendment of these claims.

## ARGUMENT

### CLASS PLAINTIFFS SHOULD NOT BE PERMITTED TO SERVE "SUPPLEMENTAL" REPORTS AT THIS LATE HOUR

Rule 26(e)(1) requires a party to supplement its disclosures "if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," and Rule 26(e)(2) establishes specific supplementation obligations with respect to expert disclosures.  Where a party fails timely to disclose and to supplement with respect to an expert's opinions as required by Rule 26(a)(2)(B) and Rule 26(e), the party typically will be precluded from offering the opinion unless the party demonstrates "substantial justification" for the failure **or** that the failure was "harmless."  FED. R. CIV. P. 37(C)(1).  "'[T]he required sanction in the ordinary case is mandatory preclusion.'"  *Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 191 (1st Cir. 2006) (quoting *Klonski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998)).  Class Plaintiffs are months late, and they have not demonstrated either that they are substantially justified in failing to meet the August 11, 2008 deadline or that their failure was harmless.

A.      **Class Plaintiffs Are Many Months Late**

Class Plaintiffs seek leave to serve a report by a new expert (their twelfth) and a supplemental report by a previously-identified expert.  The deadline for Class Plaintiffs to identify and serve the reports of their experts was August 11, 2008.  (Aug. 5, 2008 Electronic Order Granting Jt. Mot. Ext. Time Service Expert Reports.)[1]  The reports are, therefore, "untimely" (Nov. 25, 2008 Electronic Order Denying Defs.' Mot. Leave To Supplement Record with Supp. Report of Robert D. Gibbons, Ph.D.).  Indeed, where defendants had good faith, albeit unsuccessful, arguments that Dr. Gibbons' new opinions based on his pharmacoepidemiologic study were not untimely because they were developed in response to testimony at last summer's *Daubert* hearing and the deadline for case-specific expert reports had not passed, Class Plaintiffs have no such arguments.  The reports they offer, months late, relate to events of the late 1980s to mid-1990s, are based on documents that Class Plaintiffs have had for many years, and relate to claims and allegations that have been in these proceedings for years.  Thus, the Court's reasons for denying defendants' motion as to Dr. Gibbon apply *a fortiori* to Class Plaintiffs' motion.

B.      **Class Plaintiffs Are Not Substantially Justified**

Class Plaintiffs offer no credible justification for their delay.  As near as defendants can tell, the only excuse that Class Plaintiffs offer is that they did not realize, until they heard the Court's questions concerning the possible overlap between the sales and marketing cases and the products liability cases, that they might offer their "supplemental" reports as "further evidence" in support of their fraud claims.  No other excuse is provided, and this one is insufficient.

---

[1]     Actually, the deadline was August 1, 2008. Class Plaintiffs missed the deadline and asked Defendants for more time; discussions eventually led to the filing on August 4, 2008, of a joint motion to modify the schedule for expert disclosures.  (Dkt # 1372.)  The Court granted this motion on August 5, and Class Plaintiffs served their expert reports, eleven in total, on August 11.

In the first instance, Class Plaintiffs grossly misconstrue the Court's remarks regarding overlap between the sales and marketing and products liability cases. The products liability plaintiffs' and Class Plaintiffs' fraudulent marketing claims do overlap insofar as both require proof that defendants made false statements regarding Neurontin's off-label uses to plaintiffs' prescribing doctors. As such, the fact that none of the Track One products liability plaintiffs' doctors testified that defendants told him that Neurontin was safe or effective for any off-label use not only defeats products liability plaintiffs' fraud claims, but undermines the assumptions underlying Professor Rosenthal's analysis as well. (*Compare* Oct. 20, 2008 Hr'g Tr. (Dkt # 1482) at 28 ("In the cases we are talking about, we do not have testimony of a doctor who says that 'I was told it was safe and effective for a specific off-label use.'"), *with* Class Pls.' Resp. Defs.' Supp. Mem. L. Opp'n Pls.' Second Mot. for Class Certification (Dkt # 1452) at 2 (acknowledging that Professor Rosenthal's analysis rests on "assumptions" that "all detailing to non-neurologists" and the vast majority of detailing to neurologists "was both off-label and fraudulent").) Class Plaintiffs ignore the plain import of the Court's remarks, and instead construe them as an implausible invitation to inject a new theory of liability into their case.

Class Plaintiffs' excuse also is deficient because the bases of the products liability plaintiffs' alleged fraud have been apparent years before the October 20, 2008 hearing at which Class Plaintiffs imply those claims were first "aired." (Class Pls.' Mot. (Dkt # 1503) at 3.) The products liability plaintiffs' fraud claims have been discussed in multiple motions and rulings in these proceedings, including the Court's February 23, 2007 Memorandum and Order by which the claims were dismissed. (Dkt # 646.)

It has been apparent for years that products liability plaintiffs assert that (1) the early data concerning Neurontin suggested an increased risk of depression, (2) in 1992 the FDA (including

Dr. McCormick) concluded that Neurontin increases the risk of depression, and (3) Parke-Davis/Warner-Lambert fraudulently promoted and sold Neurontin without warning of this alleged risk. These assertions are the very ones whose significance Class Plaintiffs claim just to have realized and are, therefore, the allegations that form the basis for the opinions expressed in the "supplemental" opinions. Yet, these exact assertions appear in numerous Finkelstein law firm complaints, including the complaint in *Bulger v. Pfizer Inc., et al.*, Civil Action No. 07-11426, the Track One case that has received so much attention because it, if any case, will be tried first in this Court. (Dkt # 1211, ¶¶ 221–47.) Further, these very assertions were the subject of motion practice in late 2007; in that connection, a declaration by Dr. McCormick, attached to which are the relevant FDA documents, was filed. (Dkt ## 978–980, 987, 999, 1032.)

Class Plaintiffs' claim of a sudden revelation concerning the nature and purported relevance of products liability plaintiffs' claims concerning alleged events in the late 1980s and early 1990s strains credulity. Class Plaintiffs have not met their burden of showing "substantial justification."

## C.   The Late Disclosure Is Not Harmless

Class Plaintiffs' claim that defendants would not be prejudiced is incorrect. On November 4, 2008, Magistrate Judge Sorokin issued a Revised Scheduling Order for the sales and marketing cases. Under it (a) defendants' expert reports must be served **today**, (b) "[a]ll" expert depositions must be completed by January 31, 2009, and (c) no expert rebuttals are permitted. (Dkt # 1488.) Given this schedule and the prohibition on rebuttals, defendants would be prejudiced if Class Plaintiffs were permitted to serve their "supplemental" reports. First, defendants would have no opportunity to respond to the "supplemental" reports. Defendants first learned of the existence of the "supplemental" reports shortly before the close of business on

December 11, and first saw them after the close of business that day.  Even assuming defendants were under some obligation to get to work immediately on responses—which they were not, because leave to serve the reports has not been granted—the responses could not have been completed by today.  And today would have been defendants' last chance to respond because rebuttals are not permitted.

Further, were leave granted, it would result in defendants having to arrange, prepare for, and conduct the deposition of a new expert for the sales and marketing plaintiffs and to broaden the examination of a previously-identified expert to cover areas as to which he has not previously opined.  Under the circumstances, this is far too much to ask.  The parties have only 45 days within which to complete expert depositions.  Plaintiffs served the reports of 11 experts on August 11, and defendants must depose all 11.  Defendants plan to identify ten experts themselves.  It will be difficult enough—particularly given the time of year and the many other critical tasks that must be completed during the 45-day period—to complete the depositions of plaintiffs' 11 experts and the defense experts whom plaintiffs intend to depose by the deadline. It would be unfair, and prejudicial, to require more of defendants.

Class Plaintiffs nevertheless argue that permitting them to serve the "supplemental" reports "is neither unfair nor prejudicial."  (Class Pls.' Mot. (Dkt # 1503) at 4.)  It would not be unfair, they say, because defendants have received "multiple extensions and have still not served any of their expert reports on the Sales and Marketing Plaintiffs . . .."  (*Id.*)  They neglect to mention that **every single "extension" that defendants purportedly "received" was the result of (a) a request by the sales and marketing plaintiffs or some group of them to push back a deadline because they could not meet some other deadline (*see* Dkt # 1372; Aug. 5, 2008 Electronic Order; Dkt # 1472 at 3; Oct. 22, 2008 Electronic Order), and/or (b) in whole or**

**in part, a failure by the sales and marketing plaintiffs or some group of them, to provide either discovery responses or expert reliance materials (Dkt # 1417 at 2 n.1; Dkt # 1435; Dkt # 1440; Sept. 25, 2008 Electronic Order; Oct. 3, 2008 Electronic Order; Dkt # 1472 at 3; Oct. 22, 2008 Electronic Order).**

It would not be prejudicial, they say, because the supplemental reports deal with subjects that are not new and to which defendants could easily respond, and because "as of the filing of this motion, Defendants have not scheduled a single deposition for this period." Defendants cry foul. The fact that the subjects are not new does not show a lack of prejudice; it shows, instead, that Class Plaintiffs are extraordinarily late. And, even assuming defendants could readily respond, which they cannot, this is beside the point; the point is, instead, that defendants would be prejudiced because, as shown above, they would have no opportunity to respond and they would have to squeeze in, and consume precious resources on, another deposition (on subjects that Class Plaintiffs should have raised, if at all, long ago).

Class Plaintiffs' attempt to capitalize on the "fact" that defendants had not scheduled any depositions by the time Class Plaintiffs' motion was filed is, frankly, infuriating. Class Plaintiffs are not correct, for Dr. Rosenthal's deposition had been scheduled. And they are not candid, for they fail to mention that **defendants, per Case Management Order No. 5's requirement that the parties cooperate on the scheduling of depositions, have been attempting for six weeks to agree with Class Plaintiffs' counsel on dates for the depositions of all of Class Plaintiffs' experts. And they fail to mention that defendants made clear weeks ago that they were willing to begin the depositions of Class Plaintiffs' experts before the December 15 deadline for defendants' expert disclosures.** If the Court wishes, defendants will submit a declaration showing that defendants' counsel repeatedly requested that Class Plaintiffs' counsel propose

dates for the depositions and expressly indicated that defendants were prepared to begin the depositions well before today, and showing that Class Plaintiffs told defendants' counsel that dates would be provided, but failed to propose dates for any of the depositions, save one.[2]

## D.     The Reports Are Irrelevant

Nor do Class Plaintiffs offer any compelling "need" for their belatedly proffered expert testimony that would warrant deviating from the rule that late disclosure requires preclusion. *See, e.g.*, *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003).  In fact, nowhere in the motion is there a clear statement of why the reports have even any particular relevance to their claims. Class Plaintiffs assert that (1) Neurontin is wholly ineffective for certain indications, (2) defendants knew it was ineffective for these indications, (3) defendants nevertheless promoted it for these indications, (4) Neurontin was prescribed to the individual class plaintiffs and to the members of the third-party payer class plaintiffs as a result of this promotion, and (5) the individual class plaintiffs and third-party payer class plaintiffs were damaged in that they paid the co-pay or reimbursed for the prescription but received a valueless drug in return.  The opinions in the "supplemental" reports do not bear on these assertions.  Instead, they cover unrelated issues.  For example, the reports address whether the clinical data from the late 1980s and early 1990s indicated that there was an association between Neurontin and depression.  This has nothing to do with Class Plaintiffs' fraud claims for economic damages.  For example, the reports address whether the FDA concluded in 1992 that there was an association between Neurontin and depression.  This has nothing to do with Class Plaintiffs' fraud claims for economic damages.  The reports also address whether a warning of an increased risk of depression should have been given.  This, too, is irrelevant to Class Plaintiffs' claims.  In short,

---

[2]     After recognizing that Class Plaintiffs were attempting to capitalize on their own failure to comply with Case Management Order No. 5, defendants promptly served a notice of deposition covering all of the experts and subpoenas for each expert.

not only do Class Plaintiffs not "need" the "supplemental" reports, but the reports are irrelevant to their claims.

The opinions expressed in the "supplemental" reports would be relevant to Class Plaintiffs' claims (but still extraordinarily late) if Class Plaintiffs had alleged, somewhere, that the alleged fraud of which they complain involved not only suppression of a lack of efficacy, but also suppression of an increased risk of depression (with or without suicidal ideation).  But Class Plaintiffs have never claimed that the fraud they allege involved the latter.  (*See, e.g.*, May 4, 2007 Hr'g Tr. (Dkt # 745) at 78–79 (stating that the products liability plaintiffs' claims that Neurontin "caused depression" have "nothing to do with this lawsuit" and "should have no impact on this case").)  Their claims are and always have been only that defendants oversold with respect to efficacy.  It is far too late in the day for Class Plaintiffs to amend their claims, and they certainly cannot amend through the back-door via "supplemental" expert opinions.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny Class Plaintiffs' motion for leave to serve "supplemental" reports.

Dated: December 15, 2008                      Respectfully submitted,

                                              DAVIS POLK & WARDWELL

                                              By:    /s/James P. Rouhandeh
                                                     James P. Rouhandeh

                                              450 Lexington Avenue
                                              New York, NY 10017
                                              Tel:  (212) 450-4000

                                                     -and-

HARE & CHAFFIN

By:   /s/David B. Chaffin
      David B. Chaffin

BBO # 549245
160 Federal Street
Boston, MA 02110
Tel:  (617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 15, 2008.

/s/ David B. Chaffin
David B. Chaffin