UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
IN RE NEURONTIN MARKETING,              )        MDL Docket No. 1629
SALES PRACTICES AND                     )
PRODUCTS LIABILITY LITIGATION           )        Master File No. 04-10981
_____)
                                        )        Judge Patti B. Saris
THIS DOCUMENT RELATES TO:               )
ALL MARKETING AND                       )        Magistrate Judge Leo T. Sorokin
SALES PRACTICES ACTIONS                 )
_____)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION
TO COMPEL COMPLIANCE WITH AUGUST 2008 SUBPOENA
FOR EXPERT RELIANCE MATERIALS**

I.      INTRODUCTION

Plaintiffs hereby respond to Defendants' Emergency Motion to Compel Compliance with

August 2008 Subpoenas For Expert Reliance Materials ("Defendants' Motion").  Defendants'

Motion is disingenuous and unnecessary.  Defendants represent to the Court that Plaintiffs have

failed to produce, "with only a few narrow exceptions. ...  any of the material requested" related

to Plaintiffs' expert reports.  Defendants' Memorandum in Support at p. 2.  In fact, Plaintiffs

have been responsive to Defendants' subpoenas and have long since produced all of the data and

other backup materials relied upon by Plaintiffs' experts that would allowed Defendants' experts

to understand and recreate any quantitative analysis done by Plaintiffs' experts.  This material

was produced with respect to the five of eleven of Plaintiffs experts that performed quantitative

analyses as part of their expert reports in the case.  The remaining six experts proffered by

Plaintiffs performed no quantitative analyses.  Their expert reports consisted purely of qualitative

analysis of Neurontin's efficacy based on published journal articles relating to Neurontin's

efficacy for various off-label indications as well as Defendants' own internal documents. The materials upon which these experts based their opinions were primarily either publically available or produced by Defendants in this litigation.

Defendants also fail to point out to the Court that the stipulation to which Defendants and Plaintiffs agreed significantly reduces the burden of production with respect to materials responsive to the expert subpoenas at issue. Most significantly the stipulation eliminates the need for production of all lawyer markups or draft reports evidencing lawyers input, all documents already produced in the litigation in discovery all publically available documents upon which the expert has relied, and almost all communications between the experts and lawyers. For many of the experts, especially those that conducted no original quantitative analysis, this eliminates the vast bulk of materials related to their report that were responsive to Defendants' subpoenas. The majority of remaining materials responsive to the subpoenas and not exempt from production by the stipulation, which consist mainly of certain types of drafts, relevant e-mail communications, retention agreements and billing records are being collected and will be produced to Defendants on or before January 2, 2008.

## II.     ARGUMENT

On August 11, 2008 Plaintiffs served on Defendants eleven expert reports covering a range of topics as follows:

1.      David A. Kessler, M.D.:  FDA process and standards for establishing safety and efficacy and FDA approval with respect to Neurontin.

2.      Brian Alldredge, PharmD: Neurontin's lack of efficacy at doses above the FDA approved 1800mg/day;

3.      Jeffrey S. Barkin, M.D.:  Neurontin's lack of efficacy for the treatment of bipolar and other mood disorders;

4.        Kay Dickerson, Ph.D. MA:  Reporting bias evidenced in reports related to Neurontin's efficacy for pain, migraine and bipolar disorder;

5.        John Abramson, M.D.: Defendants' infiltration of the traditional sources of trusted information relied upon by physicians in making prescription decisions;

6.        Kimberly P. McDonough, Pharm. D.:  Ability of Third Party Payors to effectively control or otherwise prevent prescription of Neurontin for off-label conditions;

7.        Douglas C. McCrory, M.D., M.H.Sc.: Neurontin's lack of efficacy for the treatment of migraines;

8.        Thomas L. Perry, M.D. FRCPC; Neurontin's lack of efficacy for the treatment of neuropathic or nociceptive pain;

9.        Nicholas P. Jewell, Ph.D.:  Statistical analysis of Defendants' flagship study investigating Neurontin's use in the treatment of pain associated with diabetic peripheral neuropathy;

10.       Meredith Rosenthal, Ph.D.; Econometric modeling to determine the percentage and number of prescriptions caused by Defendants' false and misleading marketing of Neurontin for various off-label uses; and

11.       Raymond S. Hartman, Ph.D.:  Calculation of damages incurred by the class as a result of Defendants' false and misleading marketing of Neurontin for various off-label uses.

A.        <u>Plaintiffs Have Already Produced All Qualitative Analysis and Data that Exists Related to Plaintiff Expert's Reports</u>

Very shortly after serving Defendants with Plaintiffs' expert reports in August, 2008,

Plaintiffs began providing Defendants with relevant backup material related to the quantitative

analyses undertaken by their experts.  For example, see August 14, 2008 letter from Edward

Notargiacomo to Ted Pulubinski enclosing backup data and materials to the reports of Dr.

Rosenthal and Dr. Hartman.  Declaration of Edward Notargiacomo in Opposition to Defendants'

Emergency Motion to Compel Compliance with August 2008 Subpoenas For Expert Reliance

Materials ("*Notargiacomo Decl.*") at Exhibit 1.  See also e-mail exchange between Ilyas Rona

and Ted Pulubinaki dated August 18, 2008 enclosing data related to reports of Drs. McCrory, Jewell and Perry.  *Notargiacomo Decl*. at Exhibit 2.  Thereafter, as Defendants' experts had questions or issues related to the backup materials provided, Plaintiffs were immediately responsive to Defendants' request for additional information and guidance.  See E-mail exchange between Edward Notargaicomo and Paul Mishkin dated August 27, 2008 and Letter from Edward Notargiacomo to Paul Mishkin dated September 5, 2008 enclosing additional data as well as memorandum outlining information needed to replicate Dr. Rosenthal's analysis. *Notargiacomo Decl*. at Exhibit 3.  On  September 23, 2008 Plaintiffs further supplemented their production of data with respect to Drs. McCrory and Jewel's analyses.  See E-mails from Edward Notargiacomo to Paul Mishkin dated September 23, 2008.  *Notargiacomo Decl.* at Exhibit 4.  Again, when Defendants' experts needed clarification, Plaintiffs provided it.  See e-mail exchange between Edward Notargiacomo and Ted Polubinski dated October 6, 2008 following up on telephone conference related to expert backup data for Dr. Perry.  *Notargiacomo Decl*. at Exhibit 5.

Plaintiffs have fulfilled their obligations with respect to the data and other quantitative information related to the five experts who have conducted quantitative analyses.  As of the date of the last supplement on September 23, 2008, Plaintiffs have provided all of the quantitative material that exists related to Plaintiffs' expert reports, have made themselves available to clarify the contents of those materials and have continually indicated to Defendants on more than one phone conference that everything that exists has been produced. Defendants' continued insistence that there must exist additional preliminary data runs, prior alternate model versions or calculations or interim output does not make it so.

     B.    <u>The Vast Majority of Non-Quantitative Responsive Materials Are Publically Available or Were Produced by Defendants and Are Exempt From Production by Agreement of the Parties</u>

Experts identified in numbered paragraphs 1-6 above undertook a purely qualitative analysis based primarily on a review of publically available medical literature as well as documents that were produced by Defendants in this case.  As part of their report each of Plaintiffs' experts provided a list of the materials upon which they relied in forming their opinions in this case.  See *Notargiacomo Decl.* at Exhibit 6.  A review of the list of reliance materials cited by each expert reveals that the overwhelming majority of them are either publically available documents such as published medical literature or are documents (identified by bates number) that were produced by Defendants in this litigation.

In October of 2008, after Plaintiffs objected to the scope of Defendant's expert subpoenas, the parties negotiated a stipulation that significantly reduced the categories of materials responsive to the subpoenas that were to be produced.  See Exhibit C to Declaration of Edmund Polubinski III, [Docket No. 1587] (the "Stipulation").  Among the categories of documents that were exempt from production or whose production was limited in some fashion, the Stipulation provides that with respect to their expert reports, neither party would be obligated to produce "lawyer markups" – any drafts reports that evidence attorney edits or markups (Stipulation at ¶2), any document previously produced by a party to the litigation that has been identified by bates number (Stipulation at ¶6), and publically available documents that are sufficiently identified to permit their location (Stipulation at ¶7).  These categories constitute the vast bulk of materials relied upon by Plaintiffs' experts.

C.     Any Remaining Category of Responsive Documents Will Be Produced To
Defendants On or Before January 2, 2009

The remaining categories of responsive documents of which Defendants complain consist

primarily of drafts that do not evidence attorney input, communications between experts and

their staff, expert retention agreements and expert billing records.  Plaintiffs are collecting these

materials and will produce the vast majority of this material to Defendants on or before January

2, 2009.  Any items that remain to be produced, as a result of the New Year Holiday, will be

produced early in the week of January 5th and well in advanced of any scheduled deposition.

III.     CONCLUSION

For the reasons stated above, Defendants' Motion should be denied.

Dated: December 29, 2008                              Respectfully Submitted,

By:     **/s/ Thomas M. Sobol**
Thomas M. Sobol
Edward Notargiacomo
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142

*Plaintiffs' Liaison Counsel and Member of the
Class Plaintiffs' Steering Committee*

By:     **/s/Thomas Greene**
Thomas Greene, Esquire
Greene & Hoffman
33 Broad Street, 5th Floor
Boston, MA 02110

By:     **/s/Barry Himmelstein**
Barry Himmelstein, Esquire
Lieff Cabraser Heimann & Bernstein
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By:     **/s/Don Barrett**
Don Barrett, Esquire
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By:     **/s/Daniel Becnel, Jr.**
Daniel Becnel, Jr., Esquire
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

By:     **/s/James Dugan**
James R. Dugan, Esquire
Dugan & Browne, PLC
650 Poydras Street, Suite 2150
New Orleans, LA 70130

*Members of the Class Plaintiffs'*
*Steering Committee*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on December 29, 2008.

/s/ Thomas M. Sobol