# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br>ALL MARKETING AND SALES PRACTICES ACTIONS | Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin |

**PROPOSED REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' EMERGENCY MOTION TO COMPEL COMPLIANCE WITH AUGUST 2008 SUBPOENAS FOR EXPERT RELIANCE MATERIALS**

Defendants Pfizer Inc. and Warner-Lambert Company submit this reply memorandum in further support of their emergency motion to compel compliance with subpoenas that were served in August and that seek the production of documents on which Class Plaintiffs' and Coordinated Plaintiffs' experts relied, or that they considered, in forming their opinions (collectively the "Subpoenas").

**ARGUMENT**

In their opposition, plaintiffs do not dispute that they have failed to produce a wide range of materials that clearly were responsive to the Subpoenas. Nor do they offer any excuse for the lateness of their production or for their ignoring defendants' numerous requests for production over the course of several months.

There is, in fact, no benign excuse for plaintiffs' delay, and as a result defendants have been forced to ask their experts to prepare their experts reports (and defense counsel have been forced to prepare for the 11 depositions that they will take next month) without the vast majority of this material. A number of these materials are and have long been in

the possession of plaintiffs' counsel. Dr. Thomas L. Perry's report provides just one example. Dr. Perry refers in his report to correspondence with plaintiffs' counsel at Greene & Hoffman about the scope of his report, as well as a chart of Neurontin studies that was prepared for him by counsel (*see, e.g.,* Report of Dr. Thomas L. Perry Inc. [sic] (Docket # 1457 at Exhibit L; cited excerpts attached hereto as Exhibit A) at 2, 30); none of that material has yet been produced. Dr. Perry also refers to e-mail correspondence with third parties about the content of the underlying studies that he criticizes (*id.* at 24, 28); no e-mail correspondence of any kind by any of plaintiffs' experts has been produced. Indeed, plaintiffs have not even provided defendants with a copy of Dr. Perry's *curriculum vitae*, even though Dr. Perry writes in his report that he had sent plaintiffs' counsel a copy at the time his report was prepared in August. (*Id.* at 3.)

Instead, plaintiffs contend only that the motion was "unnecessary" because they now purport to agree to provide responsive materials "on or before January 2, 2008." (Opp'n at 1, 2.)[1] Plaintiffs have demonstrated by their actions, however, that the motion was, in fact, essential and that only the real threat of Court intervention finally led them to commit to produce the obviously responsive materials called for by the August Subpoenas. Had plaintiffs wished to avoid motion practice, they could have produced these materials in a timely way, or even simply responded to defendants' December 12 request for a Rule 37.1 conference to resolve the issue short of motion practice.

In view of plaintiffs' history of failing to respond to the Subpoenas, and in view of the eleven expert depositions that will commence on January 8, 2008, and that must be

---

[1] Elsewhere in their Opposition, plaintiffs appear to hedge yet again, indicating that they intend to produce the "vast majority" of responsive materials on or before January 2, but that they may produce additional material "early in the week of January 5[th]" (Opp'n at 6), even though depositions are set to start on January 8 and even though plaintiffs have had over four months to gather this material.

2

completed under the current schedule by January 31, 2008, defendants respectfully ask the Court to enter an order requiring plaintiffs to comply with the Subpoenas fully by January 2, 2008, and providing for such other relief as the Court deems appropriate under the circumstances.

## CONCLUSION

For the foregoing reasons and those previously stated, defendants respectfully request that the Court order plaintiffs to produce all of the materials sought by the Subpoenas on or before January 2, 2009, and no later.

Dated: December 30, 2008

Respectfully submitted,

DAVIS POLK & WARDWELL

By:  /s/James P. Rouhandeh
     James P. Rouhandeh

450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

-and-

HARE & CHAFFIN

By:  /s/David B. Chaffin
     David B. Chaffin

BBO # 549245
160 Federal Street
Boston, MA 02110
Tel: (617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

# EXHIBIT A

**Dr. Thomas L. Perry Inc.**
Clinical Pharmacology, High Blood Pressure, General Internal Medicine
Department of Medicine, University Hospital
2211 Wesbrook Mall, Vancouver, B.C. V6R 2P1, CANADA
office telephone: (604) 822-7134; office fax: (604) 822-7897

August 10, 2008

Thomas M. Greene and Ilyas J. Rona
Greene & Hoffman
33 Broad Street, 5th Floor
Boston, MA 02109

Dear Mr. Greene and Mr. Rona,

**Re: NEURONTIN – expert opinion on efficacy and effectiveness for pain**

## EXECUTIVE SUMMARY

**Based on a thorough and scientifically valid analysis of all relevant double blind randomized clinical trials (DBRCT), Neurontin is not an effective drug for the treatment of neuropathic pain. My thorough review and meta-analysis of available published and unpublished evidence shows that Neurontin (gabapentin) has at best a clinically insignificant average effect on pain scores. The proportion of patients who recognize "improvement" on a Patient Global Impression of Change scale at the end of studies is roughly matched by the proportion of patients who experience adverse events. In the real world, to which the concept of "effectiveness" applies, patients taking Neurontin (gabapentin) should be expected to accrue less benefit and more harm. Thus, in my opinion, Neurontin (gabapentin) has not been demonstrated to be an effective treatment for pain.**

**Therefore, it should be obvious that it was inappropriate to recommend Neurontin (gabapentin) as "first-line" treatment for "neuropathic pain" or any other pain. In addition, my detailed review of evidence showed clearly that alternative analgesics, notably morphine, control pain better than gabapentin. Amitriptyline and other tricyclic antidepressants (TCA) appear from DBRCT comparing them with <u>placebo</u> to have greater benefit than gabapentin; however the direct comparison trials (against gabapentin) are too small and insufficiently well reported to prove whether TCA are better in the real world. In my opinion, the widespread "expert" recommendation of Neurontin (gabapentin) as "first-line"**

treatment was based on commercial, rather than scientific or medical considerations – and derived largely from "experts" who were unaware of the full data from unpublished trials.

Finally, it is my opinion that Neurontin (gabapentin) is completely ineffective for the treatment of non-neuropathic pain. The relatively large acute pain trials I reviewed cast serious doubt on the notion that gabapentin is an efficacious analgesic, as opposed to a soporific drug.

Parke-Davis/Pfizer marketed Neurontin (gabapentin) as an effective drug for the treatment of neuropathic pain through the use of misleading, incomplete or omissive statements. The marketing transcended any reasonable bounds of evidence and succeeded principally by withholding the unpublished data which were well known to Parke-Davis/Pfizer.

Parke-Davis/Pfizer also recommended, through the use of misleading, incomplete or omissive statements, that Neurontin (gabapentin) be used as first-line treatment for neuropathic pain. Parke-Davis/Pfizer crafted an elaborate campaign to "pull the wool over the eyes" of practicing doctors, and no doubt also of patients afflicted by pain. The companies went to great lengths to ensure that their messages were not filtered through the appropriate sieves such as disinterested and competent independent peer review, for reality checking.

It was crucial for the companies to exaggerate the purported benefits of Neurontin, "push the dose", and play down Neurontin's well documented adverse effects in order to maximize off-label use for the much larger populations of patients with other chronic pain conditions who might at least purchase several months worth of the drug – even if they could not be persuaded to renew prescriptions further. It is a sad but all too common reflection on the medical profession that it collaborated so obsequiously in this endeavour.

## FULL CLINICAL PHARMACOLOGIC OPINION

By letter dated March 4, 2008 and subsequent discussions both in Boston (April 1-3, 2008) and by telephone, you requested me to prepare a clinical pharmacological expert opinion on the evidence available from double blind randomized clinical trials regarding the efficacy and effectiveness of the prescription drug gabapentin when used to treat pain. You have also asked me to comment on the marketing of this drug in respect to claims you are making against the Defendant. At your request, I duly signed and returned to you a confidentiality agreement respecting documents you shared with me of which the confidentiality remains under Court protection in the United States.

With your permission, I engaged the assistance of two people to help me complete the large amount of work required to produce my opinion, within the looming deadline of August 1, 2008:

1. Vijaya Musini, M.D., M.Sc., my colleague in the University of British Columbia Department of Anesthesiology, Pharmacology and Therapeutics, is a recognized Canadian expert in critical appraisal of clinical trials and in systematic review. Dr. Musini assisted me in completing a systematic review to the standards of the Cochrane Collaboration, in particular with the meta-analysis using Cochrane RevMan software. She is an experienced member of the Cochrane Hypertension Group. Dr. Musini will send you her CV by email.

2. Kelsey Innes, B.Sc., a graduate of the University of Victoria (mathematics and statistics), who assisted in the critical appraisal and in summarizing some of the clinical trials of gabapentin for pain (mostly unpublished).

I have personally supervised and checked the work of Dr. Musini and Ms. Innes and assume responsibility for the thoroughness and accuracy of all the work reported to you as appendices, and upon which my opinion relies. Dr. Musini and Ms. Innes have each signed and returned to you by fax the confidentiality agreement with respect to documents protected by the U.S. Court.

This is my report, for which I assume full responsibility. It relies on my general scientific and medical education and background, and also on medical scientific reports which I reviewed during my own independent research, as well as on information and reports of which I am otherwise generally aware. I also reviewed specifically the materials you sent me, which are itemized in a number of Appendices at the end of this report.

I reserve the right to supplement or modify this report if new information becomes available to me, or if I have the opportunity to review further reports from published literature, unpublished studies, or other documents relevant to my opinion.

My compensation for this work is at a rate of U.S. $400/hour. I am sending you separately a CV.

The following are the law cases in which I have provided expert witness testimony at trial or during pre-trial Examination for Discovery since 2004:

1. Borglund v. Fraser Valley Health Region et al., Supreme Court of British Columbia, 2006 BCSC 1338, Registry: Vancouver (Civil)

2. Regina v. James Swanney, Supreme Court of British Columbia, 2006 BCSC 1766, Registry: New Westminster (Criminal)

For your convenience and that of the Court, I have prepared an Executive Summary attached to this report, which is based upon the full report, and which includes my answers to your specific questions. The same questions are posed and answers proposed in this complete report, in the context of the approach that I took to answering them.

this. However, had they been aware of Pfizer's concerns about the validity (or even real existence) of this study, I wonder whether they would have chosen to include this study in their systematic review.

4. Two trials included in the Cochrane 2005 review (Dirks 2002 and Pandey 2002) are of doubtful relevance to the questions I was asked to address. Dirks 2002 relates to very brief (4 hour) post-operative assessment of surgical patients for endpoints not shared with and of very doubtful relevance to other studies, whereas Pandey 2002 relates to ventilator-dependent patients with Guillain-Barre syndrome, a very specialized situation also not relevant to the other studies or the questions I sought to answer. (I subsequently identified a large number of other surgical or peri-operative studies which are similarly irrelevant to the outpatient prescribing of gabapentin, which is evidently the basis for the lawsuit in which my opinion is sought.)

5. The Cochrane review is also technically flawed insofar as the Forrest plot figures are mislabeled. This makes it difficult to know what outcomes are being reported, and would lead the lazy or superficial reader to peruse only the Abstract and perhaps accept the conclusions at face value, without troubling to figure out what the mislabeled Forrest plots really mean. Furthermore, the numbers utilized do not always correspond from one figure to another, nor with the real figures available from the full (unpublished) trial reports. The authors conclude "enrichment bias" only for studies that specify exclusion of patients who did not achieve satisfactory pain relief on gabapentin, whereas I conclude at least potential "enrichment bias" for studies (e.g. Backonja 1998, Rowbotham 1998) which excluded patients previously treated with or "hypersensitive" to gabapentin. In my opinion, such exclusions could selectively remove from the randomized population those patients who had failed to receive benefit from, or who experienced toxicity from gabapentin, rather than fairly representing "all comers" presenting for screening. Unfortunately, despite the eminence of its authors, the Cochrane 2005 review is generally too sloppy to be considered reliable, even if one were not aware of the omitted unpublished studies which comprise a very substantial fraction of all patients experimentally exposed to gabapentin in DBRCT.

6. Additional studies have been completed and reported (relatively large unpublished reports and smaller published studies) since completion and publication of the Cochrane review.

When I looked initially at the 2005 Cochrane systematic review in your Boston offices on April 1st, you may recall that I was surprised at the mislabeling of figures and convinced that I could not be looking at the final published Cochrane systematic review. I confirmed that I was by an independent search, and notified the lead author (PJ Wiffen) by email. He subsequently confirmed by return email the mislabeling of figures and indicated his plan to correct this.

I later identified another more recent systematic review of the treatment of painful diabetic neuropathy (Wong MC, Chung JWY, and Wong TKS. Effects of treatment for symptoms of painful diabetic neuropathy: systematic review. BMJ 2007;335:87; doi:10.1136/bmj.39213.565972.AE). However this review did not obviate

```
1    gabapentin.mp. or exp GABAPENTIN/ (2667)
2    randomized clinical trial.mp. (7560)
3    randomised clinical trial.mp. (873)
4    randomized.mp. (359665)
5    randomised.mp. (35941)
6    2 or 3 or 4 or 5 (368424)
7    double blind.mp. (118040)
8    1 and 6 and 7 (229)
9    neuropathic pain.mp. or Neuropathic Pain/ (4843)
10   8 and 9 (40)
11   [from 10 keep 1-66] (0)
12   1 and 6 and 9 (88)
13   from 10 keep 1-40 (40)
```

**Database: MEDLINE and**
**Database: Cochrane database of systematic reviews: Key words : gabapentin, randomized , double blind, neuropathic pain**

**Database: DARE**

**Database: Cochrane CENTRAL**

**Database: International Pharmaceutical Abstracts <1970 to July 2008>**
**Search Strategy:**

```
1    gabapentin.mp. or exp GABAPENTIN/ (540)
2    randomized clinical trial.mp. (440)
3    randomised clinical trial.mp. (40)
4    randomized.mp. (20022)
5    randomised.mp. (1821)
6    2 or 3 or 4 or 5 (21582)
7    double blind.mp. (13775)
8    1 and 6 and 7 (24)
9    from 8 keep 1-24 (24)
```

   The only DBRCTs discovered through a search independent of these techniques are apparently unreported trials, described only in press releases and brief webpage articles on the website (http://www.depomedinc.com/view.cfm/1285/Our-Pipeline) of Depomed Inc. of Menlo Park, CA. I sent e-mail requests for additional details to the company on July 27 and July 29, 2008 for additional details, but these were not responded to. The trials are described briefly below, since there is no information suitable for critical appraisal, summary, nor for meta-analysis, but the failure to publish the results may reflect information which is relevant to my overall conclusions.

operative dental pain; and 1032-002/3 concerning pain from osteoarthritis (see Appendix).

**These unpublished trials concern acute pain. They are not suitable for meta-analysis with the chronic pain trials. However, they are highly relevant to the questions you posed, and fascinating insofar as they show unequivocally and repeatedly that gabapentin is not useful for a variety of types of acute pain.** It is a pity that they were not published soon after their completion and Parke-Davis/Pfizer's internal and confidential reporting of the results during the year 2000.

**Presentation of evidence (Appendices):**

**1. Matrix of studies identified and critically appraised:**

You supplied me on April 1, 2008 with a matrix of studies of which you were aware. I retained the basic structure of the matrix but modified the headings or presentation slightly so as to identify trials in the chronological order in which the trials were conducted. Because of the large numbers of electronic documents to be handled, it became impractical to renumber the studies when we identified 3 more trials on July 26-28, 2008. Therefore the final 3 trials (Study No. 23, 24, 25) in the chronic pain section of the matrix are **not** shown in the appropriate chronological order. The matrix also serves as the reference list for studies reviewed, including the unpublished Parke-Davis/Pfizer studies. **This matrix is labeled: APPENDIX - GABAPENTIN PROJECT Pain Studies Summary Matrix - FINAL – August 8, 2008, Thomas L. Perry, M.D.**

**2. Detailed critical appraisal study summaries:**

This Appendix, GABAPENTIN PROJECT Study detail summaries, presents the basic methodology, outcomes, and statistical or critical appraisals of each study reviewed in detail, along with my observations or conclusions particular to each study.

**3. Meta-analysis summary tables:**

The evidence regarding outcomes from the above hierarchy is extracted from the critical appraisal of each DBRCT (and safety outcomes as appropriate from open RCT) in the form of summary tables presented in the appendix for each study meta-analysed. These are labeled as: **APPENDIX - GABAPENTIN PROJECT Pain Studies Summary Outcomes for Meta-Analysis - FINAL – August 8, 2008 AND July 30, 2008, Thomas L. Perry, M.D.**

**4. Meta-analysis Forrest plot figures:**

Forrest plots, popularized by the Cochrane Collaboration, provide a simple way to summarize large amounts of data in a format that can easily be understood and

important not only in the United States but in any other countries whose governments believe that the interests of their citizens should come first.

I thank again my colleagues Dr. Vijaya Musini and Ms. Kelsey Innes for their hard work in assisting me to meet the Court's deadline for submission of this report. However I am solely responsible for its content.

Sincerely,

*Thomas L. Perry M.D.*

Thomas L. Perry, M.D., FRCPC
Clinical Assistant Professor
Department of Anesthesiology, Pharmacology & Therapeutics and
Department of Medicine
University of British Columbia
Vancouver, B.C. CANADA

File: GABAPENTIN CLINICAL PHARMACOLOGICAL OPINION – FINAL – Thomas L. Perry, M.D. – August 10, 2008