UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCT LIABILITY LITIGATION | ) ) ) ) ) ) ) | MDL Docket No. 1629 Master File No. 04-10981 Judge Patti B. Saris Mag. Judge Leo T. Sorokin |

**THIS DOCUMENT RELATES TO:**

*Leroy Anderson, et al v. Pfizer, Inc.*      Individual Case No.: 1:05CV-10835-PBS
*Mary Cooper, et al v. Pfizer, Inc.*         Individual Case No.: 1:05-CV-10834-PBS
*Jessie Allen, et al v. Pfizer, Inc.*        Individual Case No.: 1:07-CV-11795-PBS

**EXPLANATION OF LEVI BOONE, III PER DECEMBER 24, 2008 ORDER**

COMES NOW, Levi Boone, III, of **Boone Law Firm, P.A.**, and provides his explanation relating to the improper filing of personal data identifier on the public site as required by the December 24, 2008, as follows:

The improper filing of personal data identifier occurred primarily because Plaintiffs' attorney focused too much on getting documents to the Court to try to save the Plaintiffs' cases from being dismissed without giving appropriate attention to the requirement of redaction and/or sealing documents as we should have. More specifically:

1. The Defendant filed a Motion to Dismiss the cases of 359 Plaintiffs. A hearing on the Motion to Dismiss was set for **2:00 pm on December 11, 2008**.

2. In the Motion to Dismiss, the Defendant asserted that the Attorney Certifications filed on behalf of these 359 Plaintiffs did not comply with the Court Order of

1

November 9, 2007 (Doc.# 949) and that the cases should be dismissed. Specifically, the Defendant alleged, among other things, that:

    (a)  That as to 88 Plaintiffs, the attorney <u>relied only upon pharmacy records</u>;

3. As aforesaid, the hearing was set for **December 11, 2008 at 2:00 pm** EST on Defendant's Motion to Dismiss the cases of 359 Plaintiffs. However on **December 11, 2008, at 10:09 am** EST, U. S. Magistrate Judge Sorokin entered an order that allowed the Defendant to file a *Current Status Report* (Doc.# 1499). Plaintiffs' attorney felt compelled to respond to the *Current Status Report* prior to the hearing because the *Current Status Report* indicated, among other things, that the cases of 49 Plaintiffs of the 88 Plaintiffs aforesaid should be dismissed because they had only pharmacy records.

4. Significantly, the original 88 Plaintiffs were reduced to 49 Plaintiffs only because medical records were received by Plaintiffs attorney's office <u>after</u> the Motion to Dismiss that was originally filed September 29, 2008. These records were supplemented to Defendant and resulted in Defendant reducing the pharmacy-only plaintiffs to 49.

5. The Plaintiffs' attorney was particularly concerned about saving the cases of these 49 Plaintiffs because some Plaintiffs' cases had been previously dismissed due to having only pharmacy records. However, *after the dismissals of these cases medical records were received* relating to the "off-label" use of Neurontin and showing resulting injuries. So Plaintiffs' counsel felt compelled to show to the Court the efforts put forth to retrieve the medical records of these 49 Plaintiffs.

2

6. Given the short period of time between the order allowing the Defendant's *Current Status Report* and the scheduled hearing on *December 11, 2008, (10:09 am – 2:00 pm)* Plaintiffs' attorney office focused on hurriedly getting information to Magistrate Judge Sorokin, prior to the hearing, to demonstrate that the 49 Plaintiffs should <u>not</u> be dismissed because the *Plaintiffs had put forth a good faith effort to retrieve their medicals records, but that the medical facilities were not cooperating in producing the records.* Plaintiffs' attorney also filed a *Motion for Additional Time to Submit Certification for 49 Plaintiffs*.

7. The document that could be filed the fastest and easiest for availability to the Magistrate Judge was the numerous *cover letters* requesting the medical records of the plaintiffs.   The *cover letter* to the medical records request was a single page document that indicated the numerous dates that the Plaintiffs' medical records had been requested.  The goal was to show to the Magistrate Judge that these Plaintiffs had diligently tried to retrieve their records and that it was not the Plaintiffs' fault that the records were not produced.  These *cover letters* were being pulled and submitted by Boone Law Firm's staff while Plaintiffs' attorney was further preparing for the hearing on December 11, 2008.  However, too much focus was placed on getting these documents to the Court on December 11, 2008, prior to the hearing, in light of the short period of time, and inappropriate attention was given to watching for personal identifiers data.  Our focus should have been equally on redaction of the social security number and date of birth.

8.  In fact, at the beginning of the hearing at 2:00 pm on December 11, 2008, the Plaintiffs' attorney informed U. S. Magistrate Judge Sorokin that Plaintiffs were

3

attempting to file (as we were speaking) a *Response to Defendant's Current Status Report and a Motion for Extension of Time to File Certification for 49 Plaintiffs*. While Plaintiffs' attorney was participating in the hearing, his office was rushing to file documents to make available to the Court for consideration of 49 Plaintiffs.

9. Plaintiffs' attorney believed that it was imperative to present documents to the Magistrate Judge justifying the absence of additional records for the 49 Plaintiffs particularly because the Magistrate Judge previously ruled (Doc.# 1337) that *"Counsel is reminded that by certifying that counsel has reviewed the "relevant medical records," counsel is not merely certifying that the documents indicate that the plaintiff received an off label prescription for Neurontin.*

10. In Defendant's Motion to Dismiss, the Defendant also alleged that as to 195 Plaintiffs, the medical records relied upon by Plaintiffs' attorney made <u>no reference to the injury alleged in the complaint.</u> Plaintiffs' attorney felt that there was a good chance that the Motion relating to the 195 Plaintiffs would be denied. However, Plaintiffs' had not submitted in their prior response any examples demonstrating that there was in fact a connection between Plaintiffs' medical records and the allegation in the Complaint. Plaintiffs' attorney did not submit records on all of these Plaintiffs, but only a sampling of records were submitted in the event the Plaintiffs' attorney was called upon during the hearing to show the injury in the record. Plaintiffs' attorney submitted the sampling of records to the Court so that the Court would have in-hand the same record during the hearing. The sampling only contained limited personal identifiers that the physician may

have included on the medical charts of these Plaintiffs, such as date of birth and rarely social security numbers.

11. Relating to filings prior to December 11, 2008 by Boone Law Firm, by way of explanation and full perspective, all filings were in response to Motions to Dismiss filed by the Defendant wherein the Defendant referenced data gathered from the main document (Excel Spreadsheet) that contained personal identifier and medical data, which was originally submitted to the Defendant confidentially by traditional mail.

12. In Plaintiffs' attorney prior use of the Excel spreadsheet that contained personal data identifier, the Plaintiffs' attorney <u>closed</u> the cell on the spreadsheet that contained the social security number of Plaintiffs. How the cell on the spreadsheet with the social security number was open when filed with the Court is baffling, except that perhaps the wrong spreadsheet was mistakenly scanned without personal data being noticed.

13. The Defendant also alleged in the Motion to Dismiss that as to 9 Plaintiffs, the medical records relied upon by Plaintiffs' attorney <u>did not show "off-label' use</u>. These allegations by Defendant were wrong and the medical records themselves showed "off-label" use and the records submitted for said purpose even though these records had been previously submitted to Defendant by traditional mail.

14. Plaintiffs' attorney intentions were to help the Plaintiffs. The efforts were to save the Plaintiffs' cases. However, Plaintiffs' attorney focus too much on getting documents to the Court to save the cases from being dismissed and not enough focus was given to restricting disclosure of personal data identifiers. Plaintiffs'

attorney was acting in good faith and in zealous representation of the clients at the time that this mistake was made.

15. As soon as the Clerk office brought the public disclosure issue to Plaintiffs' attorney's attention on December 15, 2008, prior to hearing with Judge Saris, Plaintiffs' attorney began to take action to redact the documents.

16. Boone Law Firm's entire staff has reviewed Local Rule 5.3 and has been provided a copy of same for review prior to electronically filing any future documents. The staff has also reviewed and been instructed on how to file sealed documents pursuant to Local Rule 7.2. Boone Law Firm's staff has reviewed the ECF Administrative Procedures for the United States District Court, District of Massachusetts. The Administrative Procedures also gives instruction relating to prohibited personal identifier data and the filing of sealed documents. Each staff member had gone through the training tutorial for civil cases as provided this Court's web page. In addition to Plaintiffs' attorney, only two support staff members are now designated as electronic filers and any filing must be finally approved by the attorney before filing. In addition to the aforementioned, Attorney Boone has reviewed and become familiar with the entire Local Rules of the U. S. D. C., Dist. of Massachusetts, The Attorney Handbook, ECF Administrative Procedures, and has had numerous consultations with Clerk Sarah Thornton regarding this issue and the filing of documents under seal.

17. Boone Law Firm is willing, ready and able to conduct a full-scale redaction of improper documents and/or to file Motion to Seal the documents. We had already started the redaction process until the restrictions were placed on the file by the

clerk's office.  This error is regretted and actions have been taken at Boone Law

Firm to ensure that it does not occur again.

                                              Respectfully submitted,

                                              BOONE LAW FIRM, P.A.
                                              401 West Sunflower Ave.
                                              Cleveland, MS 38732
                                              662-843-7946 (telephone)
                                               LBoone@BooneLawFirm.com

                                              By:   */s/ Levi Boone, III, Esq.*
                                                      *Attorneys for Plaintiff(s)*


So Certified, this the 31st  day of December, 2008.

                                              ***/s/ Levi Boone, III*_____**___
                                              Levi Boone, III, Esq., MSB# 3686

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 31st  2008.

                                              ***/s/ Levi Boone, III*_____**___
                                              Levi Boone, III, Esq., MSB# 3686