UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x

In re: NEURONTIN MARKETING,
SALES PRACTICES AND PRODUCTS
LIABILITY LITIGATION

------------------------------------------------------------x

THIS DOCUMENT RELATES TO:

PRODUCTS LIABILITY ACTIONS

------------------------------------------------------------x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

## DECLARATION OF DR. J. JOHN MANN

I, J. John Mann, declare:

1. I am a resident of Bronx, New York. I am over 21 years of age. I have personal knowledge of all the facts set forth in this declaration, except where indicated otherwise.

2. I am The Paul Janssen Professor of Translational Neuroscience (in Psychiatry and in Radiology) at Columbia University and Chief of the Department of Molecular Imaging and Neuropathology at the New York State Psychiatric Institute. I am also Director of the NIMH Conte Center for the Neuroscience of Mental Disorders. I am trained in Psychiatry and Internal Medicine, and I have a doctoral degree in Neurochemistry.

3. In addition to my clinical and teaching duties, I conduct research. My current research focus involves the use of functional brain imaging, neurochemistry and molecular genetics to probe the causes of depression and suicide.

4.   I have published over 400 papers and have edited ten books on the subjects of biology and the treatment of mood disorders, suicidal behavior and other psychiatric disorders.

5.   I also run a private medical practice specializing in the treatment of mood disorders and am certified by the American Board of Psychiatry & Neurology.

6.   I am a co-author, with Drs. Robert Gibbons, C. Hendricks Brown and Kwan Hur, of a manuscript entitled "The Relationship Between Antiepileptics and Suicide Attempts" (the "Manuscript"). Dr. Gibbons is the lead author on the Manuscript.

7.   The Manuscript has not been published. It currently is in the peer review process. Needless to say, it may or may not be published.

8.   I received a subpoena from the attorneys for the plaintiffs in this litigation that directs me to appear on February 4, 2009, for a deposition concerning the Manuscript and to produce "all documents" concerning the Manuscript. I am not available on that date and have so advised the attorney for plaintiffs, Mr. Altman.

9.   I have not been named as an expert witness in litigation involving Neurontin, and I do not wish to provide a professional opinion concerning any matter at issue in this litigation. I have had no involvement with any aspect of this litigation, and I have no knowledge concerning the details of plaintiffs' allegations or any expert issues in this litigation. I have never been asked to form, and have not formed, any opinions concerning any of the allegations made by the plaintiffs. I certainly have no knowledge of any facts or events purporting to support any specific claims made by either party in the litigation.

10. I do not wish to be deposed by any party to this litigation. I object both to being asked to testify concerning the unpublished Manuscript and to providing my personal records relating to the Manuscript. The documents I compiled in my work on the Manuscript are the result of my intellectual efforts as a scientist and therefore I consider to be of a confidential nature in terms of intellectual property. In particular, I object to producing or testifying about any communications made between me and the other authors or between the authors and the journal during the confidential peer review process. I additionally object to producing or testifying about any correspondence or communications among the authors of the Manuscript which I also regard as confidential. I have not corresponded or communicated with either of the parties in the litigation about this manuscript.

11. It would be a substantial burden for me to comply with plaintiffs' subpoena as it relates to documents and appearance for deposition. It would take me away from other very pressing work. For example, I have substantial responsibilities and work as a doctor taking care of patients, as an administrator in the academic medical center and as a researcher and teacher.

12. Based on my work with Dr. Gibbons in connection with the preparation of the Manuscript, I believe that, as the lead author, Dr. Gibbons is fully able to testify as to all aspects of the Manuscript, including the design of the study, specific data sets that were analyzed, the methodology utilized to analyze the data, the findings that resulted, and the conclusions that were drawn from the analyses.

13.     I do not have any information or possess any knowledge concerning either the Manuscript or any of the records supporting the Manuscript that is not equally (if not more) available to and within Dr. Gibbons' knowledge.

14.     I do not have any information or possess any knowledge concerning Dr. Gibbons' supplemental expert report submitted in this litigation. In fact, I have never seen his supplemental report.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that I executed this declaration this 21st day of January, 2009 in New York, New York.

_____
J. John Mann, M.D.

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 22, 2009.

                                                     /s/ David B. Chaffin
                                                   David B. Chaffin