**EXHIBIT 14**

Westlaw.
2007 WL 1514564 (S.D.Ill.)

Page 1

For Opinion See 2007 WL 2908894, 2007 WL 4688415, 500 F.Supp.2d 1063, 500 F.Supp.2d 1048

United States District Court, S.D. Illinois.
Jacquelyn GILES, Individually, and as Special Administrator of the Estate of Jeff L. Giles, Deceased, Plaintiff,
v.
WYETH INC., A Delaware Corporation and Its Wholly Owned Subsidiary, Wyeth Pharmaceuticals, Formerly Known as American Home Products Corporation, Defendant.
No. 04-4245 JLF.
January 19, 2007.

Deposition of: Ronald W. Maris, PHD
**Name of Expert: Ronald W. Maris, PHD**
**Area of Expertise:** Health Care-Physicians & Health Professionals >>Psychiatrist
**Case Type:** Products Liability >> Pharmaceuticals
**Case Type:** Wrongful Death >> Adult
**Jurisdiction:** S.D.Ill.
**Representing:** Plaintiff

Appearance of Counsel:Attorneys for the Plaintiff
Plaintiff: Jacquelyn Giles, Individually, and as Special Administrator of the Estate of Jeff L. Giles, Deceased
Vickery & Waldner, LLP
by: Rebecca L. Dumas, Esq.
One Riverway, Suite 1150
Houston, TX 77056
(713) 526-1100.Attorneys for the Defendants
Defendants: Wyeth Inc., A Delaware Corporation and Its Wholly Owned Subsidiary, Wyeth Pharmaceuticals, Formerly Known as American Home Products Corporation
Jones Day
by: Junius C. McElveen, Jr., Esq.
Mae Cheung, Esq.
James E. Callaway, Paralegal
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939.
LOCATION: ... Nelson, Mullins, Riley & Scarborough 1320 Main Street, 17th Floor Columbia, SC 29201

TAKEN BY: ... Counsel for the Defendant

REPORTED BY: ... Roxanne M. Easterwood, RPR

VIDEOGRAPHER: ... Alan Metts

RSA/VERITEXT COURT REPORTING COMPANY

1845 Walnut Street, 15th floor

Philadelphia, Pennylvania 19103

(215) 241-1000 (888) 777-6690

INDEX

Testimony of: RONALD W. MARIS, PhD

BY MR. MCELVEEN ... 5, 250

BY MS. DUMAS ... 237

EXHIBITS

EXHIBIT NUMBER DESCRIPTION MARKED

DEP. EXH. # 1, Notice of Deposition ... 6

DEP. EXH. # 2, Table 18 of PDAC ... 24

DEP. EXH. # 3, Completed Suicides ... 28

DEP. EXH. # 4, Burke deposition ... 81

DEP. EXH. # 5, Maris report ... 92

DEP. EXH. # 6, Psychological autopsy ... 92

DEP. EXH. # 7, Coburn deposition ... 121

DEP. EXH. # 8, Lown deposition volume I ... 122

DEP. EXH. # 9 Lown deposition volume II ... 122

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

DEP. EXH. # 10, Article ... 175

DEP. EXH. # 11, CV ... 209

DEP. EXH. # 12, Suicide and SSRIs ... 214

DEP. EXH. # 13, Article ... 229

DEP. EXH. # 14, Timesheet ... 232

DEP. EXH. # 15, Psychological Autopsy ... 232

DEP. EXH. # 16, Plaintiff's objections ... 237

DEP. EXH. # 17, Article ... 240

DEP. EXH. # 18, Westlaw document ... 249

DEP. EXH. # 19, Beck scale ... 252

PROCEEDINGS

VIDEOGRAPHER: This is the videotaped deposition of Dr. Ronald W. Maris, taken by counsel for the Defendant in the matter of Jacquelyn Giles, Individually and as Special Administrator of the Estate of Jeff L. Giles, deceased, Plaintiff, versus Wyeth, Incorporated, et al, Defendant, being case number 04-4245 JLF, pending in the United States District Court for the Southern District of Illinois.

Today's date is January 19th, 2007. The deposition is being head at Nelson Millins, 1320 Main Street, Columbia, South Carolina. I am Alan Metts, the videographer. The court reporter is Roxanne Easterwood. The time is approximately 8:59 a.m.

And would the court reporter now swear in the witness?

RONALD W. MARIS, PHD, the Deponent, was sworn by Roxanne M. Easterwood, a Notary Public for the State of South Carolina.

VIDEOGRAPHER: And will counsel identify themselves?

MR. MCELVEEN: Yes. For Wyeth, my name is J.C. McElveen from the firm of Jones Day.

MS. DUMAS: For the Plaintiff, B??ky Dumas from Vickery Waldner.

EXAMINATION

BY MR. MCELVEEN:

Q. Dr. Maris, I introduced myself just before the -- the deposition. I'm J.C. McElveen, and I'm representing here today Wyeth, and I'll be asking you a few questions.

Let me ask you this preliminarily: Could you state your name and your office address at the present time, sir?

A. Ronald William Maris, M-A-R-I-S. And I have two offices. I have an office at the University of South Carolina, which is 305 Sloan Building, 911 Pickens Street, Columbia South Carolina 29208. And I have a home office at 9 Poachers Lane, P-A-O-C-H-E-R-S lane, Columbia, South Carolina 29223.

Q. And with respect to your office at the University of South Carolina, are you still active on the faculty at USC?

A. Yes. I officially retired in August of 2001, but I've continued to teach full time, and I have active appointments in psychiatry and family medicine continuing even though I'm officially retired.

Q. And that would be reflected in the USC catalog, you think?

A. Probably -- it may be in the catalog. Certainly it would be in the human resources' computer. Part-time faculty are usually listed as a professor emeritus, so it would probably be listed that way.

Q. Okay. I want to ask you just a couple of preliminary questions, and then we can jump right into the substance of things.

MR. MCELVEEN: The first thing I think I'm gonna do is ask the reporter to mark as Exhibit Number 1 to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

life with a gun, in cases which you have believed that that's always been ego-dystonic behavior, correct?

A. No. No. Many people act in character when they kill themselves.

Q. But living in character and killing yourself because you live on the edge and -- and intentionally committing suicide are two different things, are they not?

A. Sure. That was the -- only one example I gave you, but I can think of many other examples where people have shot themselves and they look kind of like they did when they shot themselves as they did 20 years before. It wasn't any dramatic change. People didn't say. Oh, yeah, they weren't themselves. So yeah, it doesn't -- ego-dystonia is often present in drug cases that I've seen. It's like -- you know, it's almost like an altered stage of consciousness and physiology because of the drug, in my opinion.

MR. MCELVEEN: Okay. Let me mark two items. Let me hand you this, actually, back, which is your copy of the SSRI Psychological Autopsy And Death Investigation.

And I'm gonna ask the reporter to mark the front page of that or a copy of the front page as next in order.

(DEP. EXH. # 13, SSRI Psychological Autopsy & Death Investigation article, marked for identification.)

BY MR. MCELVEEN:

Q. Okay. This is Exhibit Number 13, Doctor, and let me show you that. Actually, why don't you hand me that, because you have the original of that in front of you. And let me ask you to read your --

A. I knew I --

Q. -- your handwriting here. First of all, read what's -- you've -- you've circled the name Kathryn St. Clare with a question mark there?

A. I -- I didn't recognize her because usually Gina Vickery or Jim Adcock do the psych autopsies for me. So I -- I was -- I called him and asked him who she was, and he said she's a psychologist that works sometimes for Andy.

Q. Okay. And so what's that first word before -- oh, just a psychologist who works for Andy?

A. Right.

Q. Oh, and that -- that's your handwriting?

A. Right.

Q. Okay. And so -- and Gina Vickery is -- is Andy's daughter?

A. She's a social worker, and she does some work for Andy.

Q. Okay.

A. Often doing psych autopsies.

Q. Is she -- is she his daughter?

A. Yes.

Q. Okay. Then you've got to AAV. What does that language say?

A. Andy, Arnold Anderson Vickery. Isn't that it?

Q. I think that's right. I've never actually called him on that because my first name is Junius. What -- what does your handwriting there say?

A. We need to have Adcock or your MSW daughter, Gina, do these interviews.

Q. Okay. And was that a comment that you really don't like people who you don't know doing them?

A. Right. I trained Adcock. He was my Ph.D student, so I -- they -- I thought I wrote in the left-hand margin. Let me see. Does yours got it? Incomplete answers and wrong answers.

Q. Right. And -- and you found as you went through this some incomplete and wrong answers?

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

A. I found some incomplete answers that -- that I know Adcock and Gina would have done a more thorough job. It wasn't that they were wrong. Some of them were wrong, but a lot of them were not really probing the way I would like my trained interviewers to probe.

Q. Okay. And we've pointed out I guess one -- one area that was -- was sort of incorrect. Do you on the inside of that have notations about which you consider the incorrect answer or the incomplete answers?

A. Sure. You're gonna have to copy it again.

Q. Right.

MR. MCELVEEN: Are these an -- inside.

MS. CHEUNG: They're all --

MR. MCELVEEN: Okay. Why don't we do that? Why don't -- let's just --

THE WITNESS: It's not every place. It's just a few places. Like I disagreed with the criteria for major depression. I wrote wrong.

BY MR. MCELVEEN:

Q. Okay. We will copy the rest of that at the end of the deposition and just put it in as the next exhibit -- exhibit in order.

But -- but you're saying for purposes of later reviewing that that you've marked inside where you disagreed with the statements and marked that up?

A. Yeah. I put down what I thought were the right answers.

Q. Okay. Okay. Now, let me hand you then --

MR. MCELVEEN: Or let me ask the court reporter to mark another item as an exhibit. Make this -- make the time sheet here 14, and we'll make the rest of the psychological autopsy 15 just for time's sake.

(DEP. EXH. # 14, timesheet, DEP. EXH. # 15, Psychological Autopsy, marked for identification.)

BY MR. MCELVEEN:

Q. And let me show you actually your original of that, Doctor, which is the in -- inside and I guess the outside of your -- of a eight and a half by 14 folder, a manila folder. What is this document?

A. This is a billing record. I was first contacted by Andy Vickery 5/15/06, and then every bit of work I do I put down the -- the activity topic and the date and the number of hours and how much I charge, cumulative total. Actually, before today it was about 35 hours.

Q. Okay. And what -- what would that amount to in dollars?

A. 300 times 35.

Q. 335 per hour?

A. No. $300 times 35 hours.

Q. Oh, okay.

A. It's actually as of the -- the new year gone up to 400 and 500 for testimony, so. But since I contracted with him, it's still 300.

Q. Okay. And then on -- there's a Post-It I guess, or there was a Post-It on the --

A. This is current hours.

Q. Oh, okay. So that's 1/17 --

A. That's recent stuff.

Q. -- 1/18, 1/19?

A. Dep -- deposition preposition -- preparation, and then today we started at 9:00. That's what I'm gonna bill you for.

MR. MCELVEEN: Okay. I'm gonna ask my colleague to actually make a separate copy of that as

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.