UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------- x

In re:   NEURONTIN MARKETING,
         SALES PRACTICES AND
         PRODUCTS LIABILITY LITIGATION

------------------------------------------------- x

THIS DOCUMENT RELATES TO:

*Bulger v. Pfizer Inc., et al., 1:07-cv-11426-PBS*

------------------------------------------------- x

: MDL Docket No. 1629
:
: Master File No. 04-10981
:
: Judge Patti B. Saris
:
: Magistrate Judge Leo T.
: Sorokin
:
:
:
:

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT..................................................1

II.    FACTUAL BACKGROUND .............................................................................2

III.   ARGUMENT ...............................................................................................3

     A.   Plaintiff Has No Admissible Evidence On the Issue of Specific Causation and Therefore Cannot Satisfy His Burden of Proving Proximate Cause.......................3

     B.   Plaintiff's Express Warranty Claim Fails As a Matter of Law Because He Cannot Prove That Any Warranty Was Ever Made Or Relied Upon. ................................4

     C.   Plaintiff's Strict Liability Claim Fails As a Matter of Law Because Massachusetts Does Not Recognize Strict Liability In Tort ...........................................................5

     D.   Plaintiff's Fraud Claim Fails As a Matter of Law...................................................6

          1. Plaintiff has no evidence that defendants misrepresented material facts regarding Neurontin to Mrs. Bulger's physicians...............................................6

          2. Plaintiff has not established the essential element of reliance. ............................9

          3. Plaintiff's indirect fraud-on-the-market theory of reliance is not recognized in Massachusetts. .................................................................................................9

     E.   Plaintiff's Consumer Protection Act Claim Fails As a Matter of Law ................10

          1. Plaintiff provided no notice to defendants of his Ch. 93A claim, rendering his claim insufficient as a matter of law..............................................................11

          2. Plaintiff has no evidence that any alleged deceptive act caused his loss. .........12

IV.    CONCLUSION ...........................................................................................13

3289167v2

Defendants, Pfizer Inc. and Warner-Lambert Company LLC ("defendants"), respectfully submit this memorandum in support of their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, on plaintiff's Amended Complaint.

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff, Ronald Bulger, Sr., seeks to recover damages for the death of his wife Susan Bulger.  He alleges that Mrs. Bulger's use of Neurontin—manufactured by defendants—caused her suicide.  Defendants seek summary judgment on all claims based on plaintiff's inability to prove causation; plaintiff has no admissible expert testimony on the issue of specific causation, which is required in a case such as this involving complex medical issues.

In addition, defendants seek partial summary judgment on plaintiff's claims for breach of warranty, (Second Claim for Relief), strict liability (Third Claim for Relief), fraud (Fourth Claim for Relief), and violation of Massachusetts Regulation of Business Practice and Consumer Protection Act ("Ch. 93A claim") (Fifth Claim for Relief).  Plaintiff's breach of express warranty claim fails because he has no evidence that any warranties were ever made or relied upon.  His strict liability claim is deficient because strict liability tort claims are not cognizable under Massachusetts law.  Plaintiff's fraud claim fails because plaintiff cannot prove that any misrepresentations were made nor that—if they were made—Mrs. Bulger's prescribers relied upon them.  Finally, plaintiff's Ch. 93A claim fails because he did not send the requisite notice prior to filing suit, and he cannot prove that his loss occurred as a result of any alleged unlawful acts by defendants.

3289167v2

## II.    FACTUAL BACKGROUND[1]

Mrs. Bulger was a 39-year old woman with a significant history of mental disorders, health problems, and substance abuse.  Most notably, Mrs. Bulger attempted suicide multiple times before ever ingesting Neurontin. Sayler Decl., Ex. 2 at 878:25-879:3.  In 1978 at age 14, she attempted to cut her own wrists. Sayler Decl., Ex. 8 at 10.  On June 5, 1990, Mrs. Bulger was admitted to the emergency room after she overdosed on pills and cut her wrists. Sayler Decl., Ex. 2 at 984:3-14.  In 1993, she attempted to overdose on Elavil, went into cardiac arrest and required resuscitation. *Id.* at 993:17-994:12.  As a result, she spent four days in a coma. *Id.*  The stated reason for attempting suicide was: "physician became aware of the fact that she was abusing narcotics and was cutting her off from those." *Id.*  At another point she attempted suicide by driving her car off of a cliff.  Sayler Decl., Ex. 2 at 980:24-981:3.

At one time or another, Susan Bulger was described as suffering: bipolar disorder II, borderline personality disorder, anxiety disorder with panic attacks and periods of agoraphobia, post-traumatic stress disorder, depression with suicidal ideation and multiple suicide attempts, rheumatoid arthritis, cervical with associated neck pain, low back pain, psychogenic pain, hepatitis C, and gastro-esophageal reflux disease. Sayler Decl., Ex. 7 at 7-8.

From the time of her diagnosis with rheumatoid arthritis in 1982 until the time of her suicide on August 4, 2004, she suffered from chronic, severe pain, commenting as early as 1993: "this disease has totally taken the life out of me . . . Now I just exist.  I have no desire whatsoever." Sayler Decl., Ex. 3 at 333:17-25, 688:11-19.  By 1998, she had undergone multiple orthopedic operations and replacements and was on disability, but her pain was not relieved. Sayler Decl., Ex. 4 at 200:12-18; Sayler Decl., Ex. 1 at 70:24-71:10.

---

[1] The undisputed, material facts on which defendants rely to support their summary judgment motion are set forth in their Rule 56.1 Statement of Facts filed concurrently with this memorandum.

3289167v2

Mrs. Bulger's life was also fraught with psycho-social stressors, including physical and mental abuse, long-term substance abuse and addiction to cocaine, heroin, Methadone, and OxyContin. Sayler Decl., Ex. 1 at 3:4-8, 99:4-17, 104:14-107:6; Sayler Decl., Ex. 2 at 874:18-875:3, 950:20-951:21.   Plaintiff himself abused heroin and sold his wife's prescription medications. Sayler Decl., Ex. 2 at 886:3-6, 891:3-2, 1006:24-1007:2, 1069:6-17.   Plaintiff's experts conclude that Mr. Bulger sold his wife's prescription medications and that Mrs. Bulger had to "doctor shop" to obtain more medication for him to sell. *Id.* at 1069:6-17, 1083:18-23. Six months before her suicide, Mrs. Bulger was caught buying cocaine on the street. Sayler Decl., Ex. 5 at 27:23-29:17.   According to her sister, Mrs. Bulger was planning on leaving plaintiff.  *Id.* at 75:10-76:3.  Plaintiff overheard this phone conversation and forbade his wife from contact with her sister. *See id.* at 75:22-76:3, 86:13-21.   As a result, Mrs. Bulger never spoke to her sister again—this occurred about four months before her suicide. *Id.* at 75:10-76:3. In addition, in the month prior to her death, Mrs. Bulger reported to her physician, Dr. Goldman, that she was experiencing a flare up of her arthritis and that she had run out of Methadone, but Dr. Goldman refused to give her more. Sayler Decl., Ex. 4 at 138:1-139:24.  Also, the day of her suicide, she refilled her prescription-strength Ibuprofen. Sayler Decl., Ex. 2 at 1007:10-14.  She left no suicide note, but wrote in the dust by her body, "Ron RI." Sayler Decl., Ex. 6 at 35:20-24.

## III.   ARGUMENT

### A.   PLAINTIFF HAS NO ADMISSIBLE EVIDENCE ON THE ISSUE OF SPECIFIC CAUSATION AND THEREFORE CANNOT SATISFY HIS BURDEN OF PROVING PROXIMATE CAUSE.

Under Massachusetts law, plaintiff must prove that Neurontin caused his injuries— regardless of the legal theory on which he relies. *See City of Boston v. Smith & Wesson Corp.*, No. 1999-02590, 2000 WL 1473568, at *4 (Mass. Super. July 13, 2000) ("Proof of a causal relationship between a defendant's action and a plaintiff's injury is essential in every tort.");

3

*Martin v. Burger King Corp.*, No. 964527E, 1998 WL 1181145, *1 (Mass. Super. Oct. 13, 1998) (noting that causation is a necessary element of a products liability claim). Moreover, in a case involving complex medical issues, a plaintiff must prove causation based on admissible expert testimony. *See Case of Canavan*, 733 N.E.2d 1042, 1051 (Mass. 2000) (requiring expert testimony to prove medical causation); *see also Bardige v. Performance Specialists*, No. 0602586, 2007 WL 3012673, at *1 (Mass. Super. Sept. 26, 2007) (noting that expert testimony on defect and proximate cause are ordinarily required in a product liability action).

As set forth in detail in Defendants' Motion to Exclude the Specific Causation Testimony of Doctors Maris and Kruszewski, plaintiff's experts' specific causation opinions are unreliable and inadmissible under Federal Rule of Evidence 702 and *Daubert*. Because plaintiff's experts' opinions are inadmissible, there is no genuine issue of material fact concerning the essential element of proximate causation and summary judgment is therefore proper. *See, e.g., Sutera v. Perrier Group of Am., Inc.*, 986 F. Supp. 655, 668 (D. Mass. 1997) (J., Saris)(granting defense motion for summary judgment after concluding that plaintiffs failed to offer reliable expert evidence of causation).

B.   **PLAINTIFF'S EXPRESS WARRANTY CLAIM FAILS AS A MATTER OF LAW BECAUSE HE CANNOT PROVE THAT ANY WARRANTY WAS EVER MADE OR RELIED UPON.**

Under Massachusetts law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." M.G.L. ch. 106 §2-313 (1). A claim for breach of express warranty thus "requires proof that the defendant promised the plaintiff a specific result that was not achieved." *Kelly v. Wyeth*, No. 20033314F, 2007 WL 1302589 (Mass. Super. Apr. 12, 2007) (citing *Anthony's Pier Four v. Crandall Dry Dock Eng'rs*, 489 N.E.2d 172 (Mass. 1986)). In addition, to succeed on a express warranty claim, a plaintiff

4

"must show reliance on such warranty." *Sprague v. Upjohn,* Civ. A. No. 91-40035-NMG, 1995 WL 376934, at *3 (D. Mass. May 10, 1994) (citing *Roth v. Bay-Stel's Hair Stylists, Inc.*, 470 N.E.2d 137 (Mass. App. Ct. 1984)).

In this case, there is no evidence that defendants made any "affirmation of fact" to Mrs. Bulger. Plaintiff alleges that defendants "expressly warranted to all foreseeable users of this drug, including plaintiff's decedent, that Neurontin was safe and effective for the treatment of chronic pain and depression." Pl. Am. Compl. ¶ 147. As pleaded, plaintiff has no evidence to support this claim. There is no evidence that defendants ever communicated directly with Mrs. Bulger, let alone that defendants "promised [Mrs. Bulger] a specific result that was not achieved." Moreover, plaintiff ignores the learned intermediary doctrine, which requires warnings to doctors, not patients. *See Garside v. Osco Drug, Inc.*, 976 F.2d 77, 80 (1st Cir. 1992) (applying Massachusetts law); *Lareau v. Page*, 840 F. Supp. 920, 932–33 (D. Mass. 1993). And even as to Mrs. Bulger's prescribers, there is no evidence that any express warranty was ever made, nor that any alleged warranty was relied upon. As a result, plaintiff's express warranty claim fails as a matter of law. *See Sprague*, 1995 WL 376934, at *3 (dismissing plaintiff's express warranty claim in a prescription drug case because she failed to establish "either the existence of an express warranty nor any reliance thereon"); *Kelly*, 2007 WL 1302589, at *7 (granting summary judgment on breach of express warranty claim where the prescription drug label did not guarantee that the drug would produce a specific result).

## C.   PLAINTIFF'S STRICT LIABILITY CLAIM FAILS AS A MATTER OF LAW BECAUSE MASSACHUSETTS DOES NOT RECOGNIZE STRICT LIABILITY IN TORT

In addition to his warranty claim, plaintiff asserts a strict liability cause of action. The law is settled in Massachusetts that "there is no strict liability in tort apart from the liability for breach of warranty under the Uniform Commercial Code." *Swartz v. Gen. Motors Corp.*, 378

N.E.2d 61, 62 (Mass. 1978). As a result, plaintiff's strict liability claim is legally insufficient under Massachusetts law and defendants' motion for summary judgment on this claim should be granted.

### D.   PLAINTIFF'S FRAUD CLAIM FAILS AS A MATTER OF LAW

Plaintiff asserts, *inter alia*, a common law fraud claim, alleging that defendants intentionally misrepresented facts regarding Neurontin, which caused Mrs. Bulger's health care providers to prescribe Neurontin to her when they otherwise would not have. Pl. Am. Compl. ¶¶ 159-297. Because plaintiff has no admissible evidence to support these claims, summary judgment should be granted.[2]

#### 1.   *Plaintiff has no evidence that defendants misrepresented material facts regarding Neurontin to Mrs. Bulger's physicians.*

To establish a claim for common law fraud in Massachusetts, a plaintiff must prove: (1) defendant falsely represented a material fact to the victim; (2) for the purpose of inducing the victim to act thereon; and (3) that the victim did rely upon the representation to his detriment. *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 181 (D. Mass. 2003). In order to prove reliance on a misrepresentation, the representation must have "played a substantial part, and so has been a substantial factor, in influencing his decision." *St. Paul Fire & Marine Ins. Co. v. Ellis*, 262 F.3d 53, 62 (1st Cir. 2004) (applying Massachusetts law) (quoting Restatement (Second) of Torts § 546 cmt. b (1976)).

---

[2] The Court directed in its February 23, 2007 Order that plaintiff's Amended Complaint "includ[e] <u>specific misrepresentations</u> that the plaintiffs' doctors allegedly relied upon." *See* Feb. 27, 2007 Memorandum and Order at 5 (emphasis added). The Amended Complaint in this case and others alleged no such allegations, and instead parroted "indirect" reliance claims that resulted from alleged suppression and/or word of mouth. As such, defendants filed a motion to dismiss product liability plaintiffs' fraud claims—including this one—based on allegedly improper off-label promotion in the twelve Track One Cases pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). On October 20, 2008, this Court held a hearing on defendants' motion to dismiss where plaintiff's counsel conceded that there is no evidence of direct reliance by Mrs. Bulger's physicians on any alleged misrepresentations made by defendants. Counsel likewise conceded that no prescribing physician relied upon any purported omissions of truth allegedly concealed by defendants. This motion is still under consideration by the Court.

3289167v2

There is no evidence that defendants made any misrepresentation of material fact regarding Neurontin to Mrs. Bulger's physicians.  In fact, this point was conceded by plaintiff's counsel at the October 20th hearing:

> MR. RICHER: In the cases we are talking about, we do not have testimony of a doctor who says 'I was told it was safe and effective for a specific off-label use.'
>
> * * *
>
> MR. RICHER: Your Honor, there's almost no evidence - this issue is not really implicated in that [Bulger] case. There's little or no evidence of marketing to the doctor in that case.
>
> THE COURT: So, I mean, just so I understand it, so that would fall within the bucket of, there was nobody who walked in the front door.  So that would be a pure product liability case, is that it?
>
> MR. FINKELSTEIN: That's the Bulger case.
>
> * * *
>
> MR. RICHER: Your Honor, the evidence in Bulger is part of the group we discussed in which there is evidence of detailing, off-label detailing, not of the specific content or the statements; and the evidence we have is generally that Dr. Goldman, a physician, was detailed on at least four specific dated occasions. That's the extent that we have. We don't have statements about the nature of those.

Sayler Decl., Ex. 9 at 28, 48-49, 52.

Counsel's concession simply reflects the testimony of Mr. Bulger's health care providers. Dr. Crognale testified that his decision to prescribe Neurontin to Mrs. Bulger was based on his own experience with the drug and his medical training. (56.1 Statement, ¶ 1.)  He could only recall a single visit from one of defendants' sales representative regarding Neurontin during which the side effect of sedation and dosing was discussed, but he could not recall to what indication (*i.e*, on label or off label) this conversation related, or when this visit occurred (other than sometime in the last five years). (56.1 Statement, ¶ 2.)   Dr. Crognale additionally testified that he does not recall any particular studies he relied on in prescribing Neurontin for pain. (56.1

7

Statement, ¶ 4.)  Nor is there any evidence that he attended conferences where Neurontin was discussed.

Dr. Goldman testified that he does not recall ever having a conversation with defendants' sales representatives about Neurontin.  (56.1 Statement, ¶ 6.)  He prescribed Neurontin based on his colleagues' experience and the benefits and risks to particular patients.  (56.1 Statement, ¶ 7.) Similar to Dr. Crognale, Dr. Goldman does not recall reading any articles related to Neurontin sponsored by defendants or attending conferences where Neurontin was discussed.  (56.1 St., ¶ 8.)

Despite pages and pages devoted to vague alleged misrepresentations regarding off label use, *see* Pl. Am. Compl. ¶¶ 159-297, plaintiff has no evidence that defendants made any "misrepresentation of a material fact" to either Dr. Crognale or Dr. Goldman.  Indeed, the Court expressly recognized plaintiffs' lack of evidence of a misrepresentation at the October 20th, 2008 hearing:

> THE COURT: You don't know that these doctors ever talked to anyone from Pfizer or saw anything fraudulent from Pfizer.
>
> MR. RICHER: It's our position that the defendants would have an affirmative duty to communicate this to the medical community generally.
>
> THE COURT: *I think I would be reversed in a millisecond.*

Sayler Decl., Ex. 9 at 44 (emphasis added).  Because plaintiffs have no evidence that any misrepresentation was ever made, and because evidence of a "misrepresentation" is essential to a fraud claim, this claim fails as a matter of law and summary judgment should be granted in defendants' favor.

8

### 2. *Plaintiff has not established the essential element of reliance.*

Plaintiff's fraud claim fails for an additional, independent reason. He has not established reliance, a necessary element of a viable fraud claim. Even assuming *arguendo* that Dr. Crognale—the only prescriber who recalls being visited by one of defendants' sales representatives—was exposed to a misrepresentation, there is no evidence he relied on it. In fact, Dr. Crognale testified that he does <u>not</u> prescribe drugs based on what a sales representative tells him, but rather based on his own experience with the medication and his medical training. (56.1 Statement, ¶¶ 1, 5.) Further, he stated that his decision to prescribe Neurontin to Mrs. Bulger "did not have anything to do with anything any representative of Pfizer, Warner-Lambert or Parke-Davis told [him]." (56.1 Statement, ¶ 3.) Plaintiff has thus failed to establish reliance and his fraud claim accordingly fails as a matter of law. *Russell v. Cooley Dickinson Hosp., Inc.*, 772 N.E.2d 1054, 1066 (Mass. 2002) (affirming summary judgment on fraudulent and negligent misrepresentation claims in favor of defendant hospital where plaintiff did not establish that she took any action or forwent any action in reliance on any statement the defendant made to her agent).

### 3. *Plaintiff's indirect fraud-on-the-market theory of reliance is not recognized in Massachusetts.*

Because plaintiff has no evidence of fraudulent off-label promotion involving Mrs. Bulger's providers, he alleges that the providers were indirectly influenced to prescribe Neurontin by other physicians they interact with and by the medical community in general. *See* Pl. Am. Compl. ¶¶ 257-64 (alleging that defendants' alleged misrepresentations regarding Neurontin "indirectly influenced all, or substantially all, doctors prescribing Neurontin . . ."); *Id.* at ¶ 257. Plaintiff does not identify any factual basis for this assertion and, most importantly, does not establish that any of Mrs. Bulger's doctors actually received any statements from their

9

colleagues that could be attributed to defendants. As the Court noted at the October 20th hearing, this theory has "big problems":

> THE COURT: . . . I've got really big problems with the other seven because, as I understand it, without having read all the complaints, you're basically alleging a fraud on the market; you know, if you throw a feather pillowcase out there, all the feathers scatter, and they must have caught one of them.

Sayler Decl., Ex. 9 at 43. In fact, plaintiff's "fraud on the market" theory is not recognized by Massachusetts courts in the prescription drug context. *See Young v. Deloitte & Touche, LLP*, No. 040807BLS, 2004 WL 2341344, *5 (Mass. Super. Ct. Sept. 20, 2004) (noting that no cases in Massachusetts have held that "Massachusetts common law applies the fraud-on-the-market doctrine to fraud or negligent misrepresentation claims.").[3] As such, plaintiff's attempt to save his fraud claim through a "fraud on the market" theory fails under Massachusetts law.

## E. PLAINTIFF'S CONSUMER PROTECTION ACT CLAIM FAILS AS A MATTER OF LAW

Plaintiff also brings a claim under the Massachusetts Regulation of Business Practice and Consumer Protection Act, M.G.L. ch. 93A, § 2. That statute declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* Plaintiff does not, however, specify in his Amended Complaint whether he is bringing a cause of action under § 9 or § 11 of M.G.L. ch. 93A. As a consumer not engaged in "trade or commerce" with defendants, plaintiff is presumably asserting a claim under § 9.[4]

---

[3] Other courts have consistently rejected the market theory of causation in consumer fraud cases as well, noting that, in contrast to the securities market, purchasing decisions do not occur in a perfect or efficient market. *See, e.g., Summit Properties Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 561 (5th Cir. 2000) (noting that "[n]o court has accepted the use of [the fraud-on-the-market theory] outside of the context of securities fraud"), *cert. denied*, 531 U.S. 1132 (2001); *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177-78 (N.J. Super. Ct. App. Div. 2003); *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 380 (D. N.J. 2004).

[4] As the Massachusetts Supreme Court has explained, Ch. 93A "distinguishes between 'consumer' and 'business' claims, the former actionable under §9, the latter actionable under § 11." *Lantner v. Carson*, 373 N.E.2d 973, 976 (Mass. 1978). That is, "where § 9 affords a private remedy to the individual consumer. . . , an entirely different section, § 11, extends the same remedy to '[a]ny person who engages in the conduct of any trade or commerce.'" *Id.*

3289167v2

Plaintiff's § 9 claim is deficient for at least two reasons. First, plaintiff failed to provide the requisite statutory notice. Second, plaintiff has not proven that any alleged unfair or deceptive practice caused his loss.

**1.      *Plaintiff provided no notice to defendants of his Ch. 93A claim, rendering his claim insufficient as a matter of law.***

To bring a claim under § 9, a plaintiff must first send a "written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive practice relied upon." *Rodi v. Southern New England School of Law*, 389 F.3d 5, 19 (1st Cir. 2004) (citing M.G.L. ch. 93A § 9(3)). A plaintiff must send the Ch. 93A demand no less than thirty days prior to filing suit.[5] As the First Circuit has noted, the Ch. 93A demand "is not merely a procedural nicety, but rather 'a prerequisite to suit,'" *Rodi*, 389 F.3d at 19 (citing *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202 (Mass. 1975)). Failure to send the required demand letter is thus fatal to a § 9 claim. *Roberts v. Crowley*, 583 F. Supp. 2d 413, 420 (D. Mass. 2008) (citing *City of Boston v. Aetna Life Ins. Co.*, 506 N.E.2d 109 (Mass. 1987)).

It is undisputed that plaintiff failed to comply with this "prerequisite to suit." He provided defendants no notice whatsoever of his Ch. 93A claim. In fact, he fails to even allege that he provided the requisite statutory notice. Accordingly, defendants' motion for summary judgment on plaintiff's Ch. 93A claim should be granted. *See, e.g., Spilios v. Cohen*, 647 N.E.2d 1218, 1221 (Mass. App. Ct. 1995) (affirming summary judgment entered in defendant's favor when the plaintiff did not assert compliance with the Ch. 93A demand requirements and failed to satisfy his burden of alleging and proving the timely sending of a demand); *Spring v. Geriatric*

---

Thus, "[w]here a defendant must be engaged in trade or commerce, *i.e.*, acting in the business context, to be liable under either § 9 or § 11, a plaintiff who acts in a business context has a cause of action exclusively under § 11." *Id.*

[5] The demand requirement only applies to defendants who maintain a place of business or keep assets within the Commonwealth, which defendants do. *See* M.G.L. ch. 93A § 9(3); Stevenson Decl., Ex. 1.

3289167v2

*Authority of Holyoke*, 475 N.E.2d 727, 734 (Mass. 1985) (affirming the grant of a motion for judgment notwithstanding the verdict when the plaintiff neither alleged nor produced evidence sufficient that a Ch. 93A demand had been sent).

### 2. *Plaintiff has no evidence that any alleged deceptive act caused his loss.*

The Supreme Judicial Court of Massachusetts has held that "proving a causal connection between a deceptive act and a loss to the consumer is an essential predicate for recovery under our consumer protection statute." *Hershenow v. Enterprise Rent-A-Car Co.*, 840 N.E.2d 526, 528 (Mass. 2006). A plaintiff bringing a § 9 claim must thus "show that there was a causal connection between the deception and the loss." *Swenson v. Yellow Transp., Inc.*, 317 F. Supp. 2d 51, 54 (D. Mass. 2004) (citation omitted).

Plaintiff has produced no evidence that any allege deceptive conduct by defendants caused him any loss. He alleges that defendants engaged in unfair and deceptive practices by inducing physicians to prescribe Neurontin for "off-label uses," and by causing patients, such as Mrs. Bulger to obtain Neurontin for unapproved uses, which caused Mrs. Bulger to commit suicide. Pl. Am. Compl. ¶¶ 299-300. But, as discussed above, there is absolutely no evidence that Mrs. Bulger's prescribers were ever exposed to any alleged "off-label" promotion or other improper marketing by defendants, which caused them to prescribe Neurontin and in turn caused Mrs. Bulger to fill her prescription. As such, alleged "off-label" promotion could not have caused Mrs. Bulger's suicide. Plaintiff's failure to prove a causal connection between the alleged deceptive acts and his loss mandates summary judgment on his Ch. 93A claim. *See, e.g., Brown v. Bank of Am., N.A.*, 457 F. Supp. 2d 82, 89 (D. Mass. 2006) (granting summary judgment because there was no evidence unfair acts caused any loss); *Mass. Farm Bureau Federation, Inc. v. Blue Cross of Mass., Inc.*, 532 N.E.2d 660, 665 (Mass. 1989) (granting entry

of judgment for defendants where there was no causal relationship between alleged unfair acts and the claimed loss).

## IV.   CONCLUSION

As set forth above, all of plaintiff's causes of action fail because he has no evidence on the essential element of causation. In addition, plaintiff's breach of warranty, strict liability fraud and Ch. 93A claims are deficient as a matter of law. Defendants thus respectfully request that this Court grant their summary judgment motion.

Dated: January 23, 2009

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
      James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

SHOOK, HARDY & BACON L.L.P.

By:   /s/ Scott W. Sayler
      Scott W. Sayler

2555 Grand Boulevard
Kansas City, Missouri 64108
(816) 474-6550

-and-

HARE & CHAFFIN

By:   /s/ David B. Chaffin
      David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc and Warner-
Lambert Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 23, 2009.

/s/ David B. Chaffin
David B. Chaffin

14

3289167v2