UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : MDL Docket No. 1629<br>: Master File No. 04-10981 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x  Judge Patti B. Saris

THIS DOCUMENT RELATES TO:     .          : Magistrate Judge Leo T. Sorokin

*Smith v. Pfizer Inc., et al., 1:05-cv-11515-PBS*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.   Introduction and Summary of Argument ........................................................... 1

II.  Factual background ........................................................................................ 2

III. Argument........................................................................................................ 3

    A.    Plaintiff Cannot Establish the Essential Element of Causation.............................. 3

        1. Plaintiff has no evidence that Mr. Smith ingested Neurontin at any time temporally related to his suicide. ........................................................... 4

        2. Plaintiff has no evidence that any allegedly inadequate warnings proximately caused Mr. Smith's suicide........................................................................ 7

        3. Plaintiff has no admissible expert testimony on the issue of specific causation ..................................................................................................... 11

    B.    Plaintiff's Warranty Claims Fail As a Matter of Law........................................... 12

        1. Plaintiff has no evidence that defendants made any express warranties and even assuming such warnings were made, there is no evidence that Mr. Smith relied on them. ........................................................................................ 12

        2. Plaintiff has no evidence to support her implied warranty of fitness claim..... 12

        3. Plaintiff failed to provide required statutory notice of defendants' alleged breach of express and implied warranties........................................................ 13

    C.    Plaintiff's Fraud Claim Fails As a Matter of Law.................................................. 14

        1. Plaintiff has no evidence that defendants misrepresented material facts regarding Neurontin to Mr. Smith's physicians. .............................................. 14

        2. Plaintiff cannot established the essential element of reliance. .......................... 16

        3. Plaintiff's indirect fraud-on-the-market theory of reliance is not recognized in Tennessee.......................................................................................... 17

    D.    Plaintiff's Tennessee Consumer Protection Act Claim Fails As a Matter of Law 18

        1. Wrongful death claims are not cognizable under the TCPA ............................ 18

        2. Plaintiff has failed to prove that defendants' alleged unfair conduct proximately caused her injuries. ................................................................. 18

IV.  Conclusion..................................................................................................... 20

Defendants, Pfizer Inc. and Warner-Lambert Company LLC ("defendants"), respectfully submit this memorandum in support of their motion for summary judgment with respect to all counts of plaintiff's Amended Complaint.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff, Ruth Smith, seeks to recover damages for the death of her husband Richard Smith.   She alleges that Mr. Smith's use of Neurontin caused his suicide.   Defendants seek summary judgment on all counts based upon plaintiff's inability to prove causation on three independent grounds: (1) plaintiff has no evidence that Mr. Smith ingested Neurontin at any time temporally related to his suicide; thus she cannot prove that Neurontin proximately caused Mr. Smith's death; (2) plaintiff has no proof that Mr. Smith's prescribers relied on the Neurontin package insert, or that different warnings would have changed Mr. Smith's prescribers' decision to prescribe Neurontin to him; she therefore cannot prove that any allegedly inadequate warnings proximately caused Mr. Smith's suicide; and (3) plaintiff has no admissible expert testimony on the issue of specific causation.   Plaintiff's failure to prove causation on any of these grounds is dispositive of all of her claims.

In addition, defendants seek partial summary judgment on plaintiff's breach of warranty (Count II), fraud (Count IV) and Tennessee Consumer Protection Act ("TCPA") claims (Count V).   Plaintiff's breach of warranty claims fail because she has no evidence any warranties were ever made or relied upon, and she failed to give the requisite statutory notice.   Her fraud claim is deficient because she cannot prove that any misrepresentations were made—and that if they were made—Mr. Smith's prescribers relied upon them.   Finally, plaintiff's TCPA claim fails because such a claim is not cognizable in a wrongful death case and, even if it were, plaintiff has no evidence to support it.

3256274v7

## II.    FACTUAL BACKGROUND[1]

Mr. Smith committed suicide on May 13, 2004 at 79 years of age.  During his life, he suffered from many well-established suicide risk factors.  For instance, his chronic joint and spine abnormalities caused severe pain and required numerous replacement surgeries. Sayler Decl., Ex. 1 at 23:17-24:2; Sayler Decl. Ex. 12 at 12-14.  This severe, unrelenting, chronic pain continued up until his suicide. Sayler Decl., Ex. 2 at 446:15-19.  In May 2003, after spinal surgery, Mr. Smith stated that he "wished he could die because of pain and lack of sleep." Sayler Decl., Ex. 3 at 607:13-608:18.  He was diagnosed with anxiety and depression and treated with Lexapro, an anti-depressant, for a sub-therapeutic duration. Sayler Decl., Ex. 12 at 17; Sayler Decl., Ex. 1 at 56:13-25, 62:3-6; Sayler Decl., Ex. 3 at 554:10-25, 555:3-8, 586:17-23. Mr. Smith's daughter said that Mr. Smith again contemplated suicide on March 1, 2004.  Sayler Decl., Ex. 7 at 26:9-27:6; Sayler Decl., Ex. 3 at 583:8-584:10.  Doctors twice gave Mr. Smith unheeded referrals for psychological evaluations. Sayler Decl., Ex. 3 at 608:19-22, 670:22-671:19; Sayler Decl., Ex. 5 at 165:21-25; Sayler Decl., Ex. 6 at 17:7-19. Sleep problems came with Mr. Smith's increasing pain and the Smiths began sleeping in separate bedrooms because of his restlessness. Sayler Decl., Ex. 3 at 669:6-13.  Mr. Smith had all of these suicide risk factors before he ever filled a Neurontin prescription.[2]

By April and May of 2004, Mr. Smith described his pain as "excruciating." Sayler Decl., Ex. 2 at 424:10-427:8.  He spent most of the day "lying around" because of pain. Sayler Decl., Ex. 5 at 164:5-10, 165:22-166:2.  Yet, by this time, several surgeons had concluded that he was not a candidate for further surgical intervention. Sayler Decl., Ex. 3 at 676:10-14, 679:4-680:1;

---

[1] The undisputed, material facts on which defendants rely to support their summary judgment motion are set forth in their Rule 56.1 Statement of Facts filed concurrently with this memorandum.

[2] *Infra* § III (A) (1).

Sayler Decl., Ex. 10 at 24:7-18; Sayler Decl., Ex. 2 at 398:5-399:4, 402:19-403:4.   In a

handwritten note, Mr. Smith stated that the doctors had "nothing to offer him" besides steroid

injections, medication, and physical therapy, none of which helped his pain. Sayler Decl., Ex. 2

at 445:9-17, 448:11-20, 450:2-19.   Three days before committing suicide, Mr. Smith told his

dentist and long-time family friend, Dr. Wood, that an end to his pain seemed "hopeless." Sayler

Decl., Ex. 11 at 15:24-16:3.   Mr. Smith told Dr. Wood that he had tried to get second opinions

regarding his back, but that every physician he saw seemed to tune him out after hearing he

already had surgery. *Id.* at 16:4-22. According to Mr. Smith, "It was like they were all protecting

each other." *Id.* Mr. Smith told Dr. Wood that he wished he never had back surgery in the first

place, and that "[n]ow I am almost useless," because he could no longer do things he enjoyed

like cutting the grass. *Id.* at 17:13-23, 19:22-24.   Three days later, Mr. Smith committed suicide.

He left a suicide note that states:

> "<u>Pain has taken over my mind and body!</u> I need back surgery, left and right
> rotator cuffs, right bicep torn, back surgery to correct pain in legs. Forgive me; I
> cannot go on like this.  I cannot have my body, the temple of the Holy Spirit, cut
> on anymore.  I have talked to God all night and he understands."

Sayler Decl., Ex. 2 at 497:4-498:4 (emphasis in original).

## III.   ARGUMENT

### A.   PLAINTIFF CANNOT ESTABLISH THE ESSENTIAL ELEMENT OF CAUSATION

Causation is an essential element of all product liability claims under Tennessee law.

*Pride v. BIC, Corp.*, 54 F. Supp. 2d 757, 763 (E.D. Tenn. 1998).  Plaintiff cannot prove causation

for three reasons: (1) plaintiff has no evidence that Mr. Smith ingested Neurontin at any time

temporally related to his suicide; (2) plaintiff has no proof that Mr. Smith's prescribers relied on

the Neurontin package insert, or that different warnings would have changed Mr. Smith's

3256274v7

prescribers' decision to prescribe Neurontin to him; and (3) plaintiff has no admissible expert testimony on the issue of specific causation.

      **1.**     ***Plaintiff has no evidence that Mr. Smith ingested Neurontin at any time temporally related to his suicide.***

      To succeed on a product liability claim under Tennessee law, a plaintiff must prove both that the product is defective or unreasonably dangerous and that the defective or unreasonably dangerous condition proximately caused the plaintiff's injuries. *King v. Danek Med. Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000); *Richardson v. GlaxoSmithKline*, 412 F. Supp. 2d 863, 868 (W.D. Ten. 2006).   Stated differently, "[a] plaintiff must show that there was something wrong with the product, and trace the plaintiff's injury to the specific defect." *King*, 37 S.W.3d at 435 (internal citations omitted).   It is axiomatic that a plaintiff must have actually been exposed to a product before the plaintiff can "trace his injury" to the allegedly defective product. *Barnes v. Kerr Corp.*, 418 F.3d 583, 589-90 (6th Cir. 2005); *see also Mascarenas v. Miles, Inc.*, 986 F. Supp. 582 (W.D. Mo. 1997) (collecting cases standing for the "rather obvious proposition" that "proof of exposure to the product is an essential element of plaintiff's claims and that without evidence of such exposure plaintiff's claims collapse.").   In a prescription drug case, a plaintiff thus bears the burden of proving actual ingestion of the medication at issue. *Porter v. Whitehall Labs., Inc.*, 791 F. Supp. 1335, 1340-41 (S.D. Ind. 1992); *Stanback v. Parke, Davis & Co.*, 502 F. Supp. 767, 771 (W.D. Va. 1980).   Finally, a plaintiff must offer evidence, rather than conjecture and speculation, to satisfy the burden of proof on the issue of proximate cause; a mere possibility of causation is not enough. *Moon v. Johnston,* 337 S.W.2d 464, 469 (Tenn. Ct. App. 1959); *Morris v. Wal-Mart Stores, Inc.*, 330 F.3d 854, 865 (6th Cir. 2003) (applying Tennessee law).

Plaintiff has adduced no evidence that Mr. Smith ingested Neurontin—which has a half life of 5 to 7 hours[3]—at any time temporally related to his suicide.  Based on this half life, plaintiff's expert, Dr. Maris, testified that there would be no appreciable Neurontin left in an individual's system within twenty-four hours after taking the drug.  (56.1 Statement, ¶ 13)  But no one, including plaintiff, has testified that they observed Mr. Smith take Neurontin on any particular day, nor within any of the four days leading up to his suicide, nor even within the twenty-four hours preceding his suicide. (56.1 Statement, ¶¶ 9, 14)  Plaintiff's other expert, Dr. Trimble, likewise admits he does not know when Mr. Smith last took Neurontin prior to his death.  (56.1 Statement, ¶ 15)  Nor do plaintiff's experts know how many Neurontin pills Mr. Smith may have ingested at any time.  (56.1 Statement, ¶ 16)  In addition, no toxicological screening test was performed that would provide evidence of Neurontin in Mr. Smith's body at the time of his death.  (56.1 Statement, ¶ 17)  In short, plaintiff has offered no direct evidence on the critical issue of ingestion—a fact her own experts acknowledge is impossible.

Rather than producing evidence of product ingestion, plaintiff relies on her belief that Mr. Smith must have taken his medications as prescribed because "that was just the way he did things."  (56.1 Statement, ¶ 10)  In other words, plaintiff speculates that Mr. Smith in fact ingested Neurontin.  It is well-settled that speculative testimony does not create a genuine issue of material fact on the issue of proximate cause.  As the Tennessee Court of Appeals has noted: "[t]estimony of a speculative nature is not evidence, and does not establish proximate cause." *Cupp v. Dixie Cycle Sales, Inc.*, No. 01A01-9401-CV-00492, 1995 WL 247965 (Tenn. Ct. App. Apr. 28, 1995) (citing *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985)); *see also Pointer v. Tenn. Equity Capital Corp.*, No. M199901934-COA-R3CV, 2001 WL

---

[3] A drug's "half life" is the time it takes a medication or drug to be eliminated from blood plasma by one half of its strength.  Sayler Decl., Ex. 15 at 810.

1613893 (Tenn. Ct. App. Dec. 18, 2001) ("It is well settled that '[t]estimony which amounts to mere speculation is not evidence which establishes proximate cause.'"); *Moon*, 337 S.W.2d at 469.

This is especially so in a case such as this where the speculative testimony comes from a plaintiff who has an obvious self-interest in this litigation. *See Cotton v. Wash. Metro. Area Transit Auth.*, No. CIV.A.01-0801, 2004 WL 473658 (D. D.C. Mar. 3, 2004) ("[I]t is settled that such 'self-serving' testimony, standing alone, 'will not protect the non-moving party from summary judgment.'"); *Lehtonen v. Gateway Cos., Inc.*, No. 204-CV-C00625, 2007 WL 2914649 (D. Nev. Sept. 30, 2007) ("'Uncorroborated and self-serving testimony,' without more, will not create a 'genuine issue' of material fact precluding summary judgment."). Plaintiff's unsubstantiated "belief" is not a substitute for admissible evidence of proximate cause.

Not only is plaintiff's naked speculation insufficient to survive summary judgment, but it is contrary to the evidence.   First, Mr. Smith—regarding Neurontin in particular—did not follow his doctors' advice.   Indeed, it is clear from the evidence that Mr. Smith <u>did not</u> take his Neurontin as prescribed.   He was first prescribed Neurontin on May 5, 2003, but there is no evidence that he ever filled this prescription, contrary to his doctors' advice. (56.1 Statement, ¶¶ 1, 2)   A second physician recommended Neurontin on January 5, 2004, but Mr. Smith refused to take it at that time.   (56.1 Statement, ¶ 3)   In addition, the evidence demonstrates that even after filling his Neurontin prescription in March 2004, Mr. Smith did not take the medication according to his doctor's instructions.   Mr. Smith filled his one and only thirty-day prescription for Neurontin on March 9, 2004, nearly two months before his death.   (56.1 Statement, ¶¶ 6, 7)   Had Mr. Smith taken Neurontin as prescribed, the prescription bottle would have been empty by

April 8, 2004, long before his May 13, 2004 death.[4]  (56.1 Statement, ¶ 8) Yet, a bottle of

Neurontin—which Dr. Maris described as "full"—was found on Mr. Smith's dresser after his

death. (56.1 Statement, ¶ 11) On this basis, even Dr. Maris concedes that Mr. Smith did not take

Neurontin as prescribed as he had to have "skipped a few doses."  (56.1 Statement, ¶ 12)

In sum, plaintiff has not met her burden of coming forward with evidence to show

product ingestion at any time temporally related to Mr. Smith's suicide, let alone within 24 hours

of his death.  Plaintiff has no evidence of product ingestion on any particular day, including the

days leading up to Mr. Smith's death.  Plaintiff's "belief" that Mr. Smith took Neurontin is

unsupported by the evidence and insufficient to meet her burden of proof in any event;

speculative, self-serving testimony does not establish proximate cause.   Accordingly, all of

plaintiff's claims fail as a matter of law. *See Barnes*, 418 F.3d at 589-90 (holding that plaintiff

who failed to present evidence of exposure to defendant's product failed to show causation).

### 2.    *Plaintiff has no evidence that any allegedly inadequate warnings proximately caused Mr. Smith's suicide.*

All of plaintiff's claims are premised on an alleged failure to provide adequate warnings

about the risks of Neurontin.[5]  More specifically, each cause of action plaintiff asserts alleges

that defendants either failed to adequately disclose the risks associated with Neurontin or

---

[4] Plaintiff has suggested that Mr. Smith received Neurontin samples from Nurse Pamela Krancer, one of Mr. Smith's Neurontin prescribers.  Plaintiff produced for inspection three boxes of Neurontin samples, which come in the form of blister packs.  None of the blister packs had been pushed out and no pills were missing from the samples.  The boxes of samples produced thus provide no evidence that Mr. Smith ever ingested any samples.  Plaintiff's expert, Dr. Maris, testified that he does not know how many samples Mr. Smith might have ingested (if any at all). (56.1 Statement, ¶ 18)  The fact that Mr. Smith received samples does not create an issue of fact in this case.  To argue that Mr. Smith had access to samples and may have taken them is pure speculation.  Accordingly, under Tennessee law, plaintiff has failed to meet her burden of proof.

[5] To the extent plaintiff attempts to allege claims based on Neurontin's manufacture and design, *see* Pl. Am. Compl. ¶¶ 155, 170, she has no evidence to support them.  Moreover plaintiff's design defect claim is not cognizable in a prescription drug case. *See Pittman*, 890 S.W.2d 425, 428-29 (Tenn. 1994) (recognizing Tennessee's adoption of Restatement (Second) of Torts, § 402A comment k).

misrepresented risks associated with Neurontin.   As such, each is subject to the learned intermediary doctrine. *See, e.g., Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428-31 (Tenn. 1994) (granting summary judgment in favor of drug manufacturer after determining that the learned intermediary doctrine applied); *see also Harden v. Danek Med., Inc.*, 985 S.W.2d 449 (Tenn. 1999) (affirming summary judgment in favor of defendant, including negligence per se claim, on the basis of the learned intermediary doctrine).

Under Tennessee law, prescription drugs are considered "unavoidably unsafe" products and are not defective or unreasonably dangerous if they are accompanied by adequate warnings. *See Pittman*, 890 S.W.2d at 428-29 (Tenn. 1994).  Manufacturers of prescription drugs "have a duty to market and distribute their products in a way that minimizes the risk or danger." *Id.* at 428.  Under the learned intermediary doctrine, a prescription drug manufacturer discharges its duty "by providing the physician with adequate warnings of the risks associated with the use of its drug." *Id.* at 429.  There is no duty to directly warn the patient. *See Laws v. Johnson*, 799 S.W.2d 249, 254 (Tenn. Ct. App. 1990) (explaining that a manufacturer must warn physicians not patients because physicians are in a better position to disclose risks).

Once a plaintiff has established that a product was defective or unreasonably dangerous by virtue of the defendant's failure to warn the physician of a known risk, the plaintiff must establish that the alleged inadequate warning was the legal and proximate cause of the plaintiff's claimed injury; the plaintiff must show that something was wrong with the product and "then trace the plaintiff's injury to the specific defect." *King*, 37 S.W.3d at 435.

Plaintiff has no admissible evidence on the essential element of proximate cause for at least two reasons.  First, there is no evidence that either of Mr. Smith's prescribers, Dr. Edward Mackey and Nurse Practitioner Pamela Krancer, relied on the Neurontin package insert in

- 8 -

prescribing Neurontin for Mr. Smith.[6] Dr. Mackey testified only that he had "probably" reviewed the package insert "a long time" before he prescribed Neurontin for Mr. Smith, but that he typically did not re-review prescription drug labeling on any kind of regular basis. (56.1 Statement, ¶ 5)  Nurse Krancer testified that she "doesn't usually read the entire package insert" and instead relies on books and "blurbs in journals about new medications." (56.1 Statement, ¶ 23)  Because plaintiff has not established that Dr. Mackey and Nurse Krancer relied on the Neurontin label in prescribing the medication to Mr. Smith, she "cannot trace her injury" to defendants' alleged failure to warn.  Plaintiff therefore has no evidence sufficient to satisfy her burden to prove that defendants' alleged failure to warn proximately caused her injuries.  *See Collins v. Danek Med. Inc.*, No. 96-3314, 95-2542, 1999 WL 33537313, at *10 (W.D. Tenn. May 11, 1999) (granting summary judgment based on lack of proximate cause where there was no evidence that healthcare providers relied on the package insert in prescribing a medication); *Watts v. Sofamor*, No. 96 3248, 95-2542, 1999 WL 1866407, at *6 (W.D. Tenn. April 19, 1999) (same).

Second, neither of Mr. Smith's providers testified that different or additional warnings would have changed their decision to prescribe Neurontin to Mr. Smith in 2004.  Dr. Mackey testified that he continues to prescribe Neurontin to this day in spite of the information regarding suicidal events in the product labeling. (56.1 Statement, ¶ 22)  And when specifically asked whether he would have prescribed Neurontin to Mr. Smith based on the information he has today, Dr. Mackey testified only that he would prescribe Lyrica—a medication that was not

---

[6] Plaintiff also includes allegations in her Complaint about Dr. Paul McCombs, III.  *See* Pl. Am. Compl. at ¶¶ 128, 130-34.  Dr. McCombs' records reflect that he wrote a prescription for Neurontin for Mr. Smith on May 5, 2003. (56.1 Statement, ¶ 1)  It is undisputed, however, that Mr. Smith did not fill or take the Neurontin prescribed in 2003. Plaintiff and her experts admit as much. (56.1 Statement, ¶ 2)  Because Mr. Smith did not fill any Neurontin prescriptions written by Dr. McCombs, any allegations regarding Dr. McCombs are irrelevant to plaintiff's claims against defendants.

available in 2004—if Mr. Smith walked into his office today. (56.1 Statement, ¶ 21)   Dr. Mackey's testimony that he would prescribe Lyrica today is <u>not</u> evidence that he would not have prescribed Neurontin to Mr. Smith in 2004 had additional warnings been in place.   Notably, plaintiff did not ask Nurse Krancer whether she would have still prescribed Neurontin to Mr. Smith had a prominent suicide warning been in the 2004 Neurontin label.[7]  Because plaintiff has failed to establish that Mr. Smith's prescribers would *not* have prescribed Neurontin had additional warnings been in place, plaintiff cannot satisfy the essential element of proximate cause and her claims fail as a matter of law.

King v. Danek Med., Inc., 37 S.W. 3d 429 (Tenn. Ct. App. 2001), is instructive on this issue.   There, the plaintiffs alleged that a spinal system device caused injuries, and sued defendants alleging that the device was defective due to inadequate warnings.   The plaintiffs' physicians testified, however, that they relied on their own skill and judgment in deciding to implant the devices into the plaintiffs. Id. at 453.  Noting that that "plaintiffs have not shown that [the physicians'] decisions were influenced by any representations which the defendants made or failed to make," the court held that "the plaintiffs' claims in this regard fail because they have failed to establish that, had additional warnings been given, the plaintiffs would not have sustained their injuries." Id.

As in King, plaintiff here has not established that additional warnings would have changed Mr. Smith's health care providers' decision to prescribe Neurontin.   Accordingly,

---

[7] It is plaintiff's burden to prove that additional warnings would have changed the physician's prescribing decision. Plaintiff did not obtain the testimony required to sustain her claim. Nurse Krancer was asked whether "if it had been brought to her attention that this drug [Neurontin] is associated with increases in depression and suicide," she "would have taken into account that information when prescribing this drug."  In response she stated that she "probably would have thought about [the prescription] a little bit harder." (56.1 Statement, ¶ 24)  She did not testify, however, that she would have changed her decision to prescribe Neurontin for Mr. Smith and, therefore, plaintiff has not met her burden.

plaintiff cannot satisfy her burden on the essential issue of proximate cause and summary judgment is appropriate on all plaintiff's claims. *See Ross v. Sofamor, S.N.C.*, No. 95-2542, 1999 WL 613357 (W.D. Tenn. Mar. 10, 1999) (granting summary judgment because there was no evidence that the manufacturer's failure to warn was the proximate cause of the doctors' decision to use the product); *See King*, 37 S.W.3d at 435 (noting that in all product liability claims, the plaintiff must prove proximate cause).

### 3. *Plaintiff has no admissible expert testimony on the issue of specific causation.*

Causation is an essential element of any Tennessee products liability action. *Pride v. BIC, Corp.*, 54 F. Supp. 2d 757, 763 (E.D. Tenn. 1998). Moreover, in a case involving complex medical issues, a plaintiff must prove causation based on admissible expert testimony. *Sterling v. Velcicol Chem. Corp.*, 855 F.2d 1188, 1200 (6th Cir. 1988) (applying Tennessee substantive law) (the expert must testify to a reasonable medical certainty that exposure caused the injury); *Richardson v. GlaxoSmithKline*, 412 F. Supp. 2d 863, 871 (W.D. Tenn. 2006) (granting manufacturer's motion for summary judgment because expert testimony failed to establish that the antidepressant caused the plaintiff's suicide attempts).

As set forth in detail in Defendants' Motion to Exclude the Specific Causation Testimony of Doctor Maris and Professor Trimble, plaintiff's experts' specific causation opinions are not reliable and are inadmissible under Federal Rule of Evidence 702 and *Daubert*. In addition, Professor Trimble is not even qualified to offer specific causation opinions. Because plaintiff's experts' opinions are inadmissible, there is no genuine issue of material fact concerning the essential element of proximate causation and summary judgment is therefore proper. *See Pride*, 54 F. Supp. 2d at 763 (granting summary judgment because plaintiff failed to offer reliable expert testimony on the issue of product defect and proximate causation).

3256274v7

**B.    PLAINTIFF'S WARRANTY CLAIMS FAIL AS A MATTER OF LAW**

Although plaintiff's failure to prove causation is fatal to each of her claims, plaintiff's express and implied warranty claims are independently deficient under Tennessee law.

### 1. *Plaintiff has no evidence that defendants made any express warranties and even assuming such warnings were made, there is no evidence that Mr. Smith relied on them.*

A claim of breach of express warranty under Tennessee law requires the plaintiff to prove that: (1) the seller made an affirmation of fact intending to induce the plaintiff buyer to purchase the goods; (2) the buyer was in fact induced by the seller's acts; and (3) the affirmation of fact was false regardless of the seller's knowledge of the falsity or intention to create a warranty. *Coffey v. Dowley Manuf., Inc.*, 187 F. Supp. 2d 958, 969 (M.D. Tenn. 2002).

In this case, there is no evidence that defendants made any "affirmation of fact intending to induce" Mr. Smith to purchase Neurontin.   Plaintiff alleges that defendants "expressly warranted to all foreseeable users of this drug, including Plaintiff's decedent, that Neurontin was safe and effective for the treatment of pain and in addition was safe for human consumption in general." Pl. Am. Compl. ¶ 162.  As pleaded, plaintiff has no evidence to support this claim. Moreover, plaintiff ignores the learned intermediary doctrine, which requires warnings to doctors, not patients.  And even as to Mr. Smith's prescribers, there is no evidence that any express warranty was ever made, nor that any alleged warranty was relied upon.  As a result, plaintiff's express warranty claim fails as a matter of law. *See Dunkin v. Syntex Labs., Inc.*, 443 F. Supp. 121, 126 (W.D. Tenn. 1977) (summary judgment granted where no express warranties regarding the safety of a prescription medication were made).

### 2. *Plaintiff has no evidence to support her implied warranty of fitness claim.*

To bring a claim for implied warranty of fitness, plaintiff must prove that: (1) the seller at the time of contracting has reason to know any particular purpose for which the goods are

3256274v7

required; (2) the seller has reason to know that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods; and (3) the good is not fit for the particular purpose for which it was bought. Tenn. Code Ann. § 47-2-315; *Alumax Aluminum Corp. v. Armstrong Ceiling Sys., Inc.*, 744 S.W.2d 907 (Tenn. Ct. App. 1987). Actual reliance by the buyer on the seller's skill and judgment is required. Tenn. Code Ann. § 47-2-315, cmt. 1 ("The buyer, of course must actually be relying on the seller."); *Travelers Indem. Co. v. Indus. Paper & Packaging Corp.*, No. 3:02-CV-491, 2006 WL 3864857, at *10 (E.D. Tenn. Dec. 18, 2006).

Plaintiff has no evidence that Mr. Smith relied on defendants to select or furnish suitable goods for him. Plaintiff pleads that Mr. Smith "relied upon the aforesaid express and implied warranties," but has produced no evidence of any communication from defendants on which Mr. Smith allegedly relied. Pl. Am. Compl. ¶ 163. Moreover, it was Mr. Smith's physicians, not defendants, who selected Neurontin for Mr. Smith. Plaintiff likewise has no evidence that Mr. Smith's prescribers relied on any alleged warranties. Accordingly, summary judgment should be granted on plaintiff's implied warranty claim. *See, e.g., Baker v. Promark Prods. West, Inc.*, 692 S.W.2d 844, 849 (Tenn. Ct. App. 1985) (summary judgment properly granted where plaintiff did not rely on defendant's skill or judgment to furnish suitable goods).

### 3. *Plaintiff failed to provide required statutory notice of defendants' alleged breach of express and implied warranties.*

Under Tennessee law, a plaintiff must "within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Tenn. Code. Ann. § 47-2-607(3)(a). It is undisputed that plaintiff never provided any notice to defendants of any alleged breach of express or implied warranties before filing a lawsuit in federal court. She has thus failed to provide "reasonable notice" as required by Tennessee law and is barred from asserting a breach of warranty claim. *See, e.g., Friedman v. Georgia*

*Showcase Co.*, 183 S.W.2d 9, 27 (Tenn. Ct. App. 1944) (where buyer failed to give notice until lawsuit was filed, buyer was barred from recovering damages from alleged breach).

Because plaintiff cannot satisfy the elements of her express and implied warranty claims and failed to provide required statutory notice, defendants' motion for summary judgment should be granted on these claims.

**C.   PLAINTIFF'S FRAUD CLAIM FAILS AS A MATTER OF LAW**

Plaintiff asserts, *inter alia*, claims for common law fraud, alleging that defendants intentionally misrepresented facts regarding Neurontin and fraudulently suppressed information concerning Neurontin, which caused Mr. Smith's health care providers to prescribe Neurontin to him when they otherwise would not have. Pl. Am. Compl. ¶¶ 173-311. Because she has no admissible evidence to support these claims, summary judgment should also be granted on these claims.[8]

**1.   *Plaintiff has no evidence that defendants misrepresented material facts regarding Neurontin to Mr. Smith's physicians.***

To establish a claim for common law fraud in Tennessee, a plaintiff must prove: (1) an intentional misrepresentation of an existing fact; (2) knowledge of the representation's falsity; and (3) injury to the plaintiff caused by reasonable reliance on the misrepresentation. *Jenkins v. Brown*, No. M2005-02022-COA-R3CV, 2007 WL 4372166, at *13 (Tenn. Ct. App. Dec. 14, 2007) (citing *First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991)).

---

[8] The Court directed in its February 23, 2007 Order that plaintiff's Amended Complaint "includ[e] specific misrepresentations that the plaintiffs' doctors allegedly relied upon." *See* Feb. 27, 2007 Memorandum and Order at 5 (emphasis added). The Amended Complaint in this case and others alleged no such allegations, and, instead, parroted "indirect" reliance claims that resulted from alleged suppression and/or word of mouth. As such, defendants filed a motion to dismiss product liability plaintiffs' fraud claims—including this one—based on allegedly improper off-label promotion in the twelve Track One Cases pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). On October 20, 2008, this Court held a hearing on defendants' motion to dismiss where plaintiff's counsel conceded that there is no evidence of direct reliance by Mr. Smith's physicians on any alleged misrepresentations made by defendants. Counsel likewise conceded that no prescribing physician relied upon any purported omissions of truth allegedly concealed by defendants. This motion is under advisement by the Court.

There is no evidence that defendants made any misrepresentation of material fact regarding Neurontin to Mr. Smith's physicians. In fact, this point was conceded by plaintiff's counsel at the October 20th hearing:

> MR. RICHER: In the cases we are talking about, we do not have testimony of a doctor who says 'I was told it was safe and effective for a specific off-label use.'

Sayler Decl., Ex. 16 at 28.

Counsel's concession simply reflects the testimony of Mr. Smith's health care providers. Dr. Mackey never testified that defendants represented anything to him regarding the safety or efficacy of Neurontin for off-label use. (56.1 Statement, ¶ 19)  Dr. Mackey only has a vague memory of a discussion with a sales representative about an <u>on-label</u> study. *Id.* There is likewise no evidence that defendants made any misrepresentations to Nurse Krancer at any time. Although there is evidence that defendants' sales representatives visited Nurse Krancer, she testified that she does not recall any discussions with sales representatives regarding Neurontin for pain management and testified that any discussions regarding pain involved herpetic pain— one of Neurontin's approved indications. (56.1 Statement, ¶ 25)  In addition, there is no evidence that either Dr. Mackey or Nurse Krancer ever read any articles sponsored by defendants regarding Neurontin.  Dr. Mackey in fact testified that he does not read literature of any kind regarding pain management. (56.1 Statement, ¶ 20)  Nor is there evidence that either of Mr. Smith's prescribers attended conferences where Neurontin was discussed.

Despite pages and pages devoted to vague and unspecified alleged misrepresentations regarding off label use, *see* Pl. Am. Compl. ¶¶ 152-53, 176-311, plaintiff has yet to come forward with any admissible evidence that defendants made any "misrepresentation of a material fact" to either Dr. Mackey or Nurse Krancer—such evidence does not exist.  Indeed, the Court

3256274v7

expressly recognized plaintiffs' lack of evidence of a misrepresentation at the October 20th, 2008 hearing:

> THE COURT: You don't know that these doctors ever talked to anyone from Pfizer or saw anything fraudulent from Pfizer.
>
> MR. RICHER: It's our position that the defendants would have an affirmative duty to communicate this to the medical community generally.
>
> THE COURT: I think I would be reversed in a millisecond. I think that's a wrong statement of fraud law.

Sayler Decl., Ex. 16 at 44.    Because plaintiff has no evidence that any misrepresentation was ever made, and because evidence of a "misrepresentation" is essential to a fraud claim, this claim fails as a matter of law and summary judgment should be granted in defendants' favor. *See Dunkin*, 443 F. Supp. at 125 ("When plaintiffs' complaint alleges that defendants engaged in various promotional activities involving false representations as to the safety of [a prescription drug], a party opposing summary judgment 'may not rest upon the mere allegations or denial of his pleading, but his response . . . must set forth facts showing that there is a genuine issue for trial.'").

### 2.    *Plaintiff cannot established the essential element of reliance.*

Plaintiff's fraud claim fails for an additional, independent reason. She has not established reliance, a necessary element of a viable fraud claim. Even assuming *arguendo* that Mr. Smith's prescribers were exposed to an alleged misrepresentation, there is no evidence that the prescribers relied on it. In fact, Nurse Krancer testified that she does <u>not</u> prescribe drugs based on what a sales representative tells her, but instead educates herself about the medication. (56.1 Statement, ¶ 26) Plaintiff has thus failed to establish reliance and her fraud claim accordingly fails as a matter of law. *See Ross*, No. 95-2542, 1999 WL 613357, at *6 (granting summary

3256274v7

judgment on plaintiff's fraud claim because there was no evidence that plaintiff's physician relied on the manufacturer's representations in deciding to use the device).

### 3.     *Plaintiff's indirect fraud-on-the-market theory of reliance is not recognized in Tennessee.*

Because plaintiff has no evidence of fraudulent off-label promotion involving Mr. Smith's providers, she alleges that the providers were indirectly influenced to prescribe Neurontin by other physicians with which they interact and by the medical community in general. *See* Pl. Am. Compl. ¶¶ 131-34, 136-39, 271. Plaintiff does not identify any factual basis for this assertion and, most importantly, does not establish that any of Mr. Smith's prescribing doctors actually received any statements from their colleagues that could be attributed to defendants. As the Court noted at the October 20th hearing, this theory has "big problems":

> THE COURT: . . . I've got really big problems with the other seven because, as I understand it, without having read all the complaints, you're basically alleging a fraud on the market; you know, if you throw a feather pillowcase out there, all the feathers scatter, and they must have caught one of them.

Sayler Decl., Ex. 16 at 43.

In fact, plaintiff's "fraud on the market" theory is not recognized by Tennessee courts in the prescription drug context.[9] *See In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 403-04 (6th Cir. 1997) (concluding that the Tennessee Supreme Court, if faced with the issue, would require a showing of actual reliance as a condition of recover for common law fraud and rejecting a fraud-on-the-market theory).[10] As such, plaintiff's attempt to save her fraud claim through a "fraud on the market" theory fails under Tennessee law.

---

[9] Of note, Tennessee has not even adopted the federal securities law fraud-on-the-market theory. *Constantine v. Miller Industries, Inc.*, 33 S.W.3d 809, 811 (Tenn. Ct. App. 2000).

[10] Other courts have consistently rejected the market theory of causation in consumer fraud cases as well, noting that in contrast to the securities market, purchasing decisions do not occur in a perfect or efficient market. *See, e.g., Summit Prop.s Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 561 (5th Cir. 2000) (noting that "[n]o court has accepted the use of [the fraud-on-the-market theory] outside of the context of securities fraud"), *cert. denied*, 531

3256274v7

**D.   PLAINTIFF'S TENNESSEE CONSUMER PROTECTION ACT CLAIM FAILS AS A MATTER OF LAW**

Plaintiff also brings a claim under the TCPA, which declares unlawful various unfair or deceptive acts or practices that affect the conduct of trade or business.  Tenn. Code. Ann. § 47-18-104.  It allows any person suffering "an ascertainable loss of money or property, real or personal, or mixed, or any other article, commodity or thing of value wherever situated" to recover actual damages. Tenn. Code. Ann. § 47-8-109.

### 1. *Wrongful death claims are not cognizable under the TCPA .*

Tennessee courts have expressly held that an individual's life is not a "thing of value" the loss of which would support a cause of action under the TCPA. *Kirksey v. Overton Pub, Inc.*, 804 S.W.2d 68, 73 (Tenn. Ct. App. 1990).  In *Kirksey*, the court held that "the General Assembly intended for the Consumer Protection Act to be used by a person claiming damages for an *ascertainable loss of money or property* due to an unfair or deceptive act or practice and <u>not</u> in a wrongful death action," and affirmed the lower court's striking the plaintiff's pleadings on these grounds. *Id.* (emphasis added).  As in *Kirksey*, plaintiff here is attempting to recover not for loss of money or property, but for the value of decedent's life. *See* Pl. Am. Compl. ¶ 314 (alleging that "by reason of Defendants' unfair, deceptive, misleading and fraudulent acts and practices, Plaintiff's decedent sustained injuries and was caused to commit suicide.").  Plaintiff's claim is not cognizable under Tennessee law.

### 2. *Plaintiff has failed to prove that defendants' alleged unfair conduct proximately caused her injuries.*

Even assuming plaintiff's wrongful death claim were legally proper, her TCPA claim would still fail because she has not proven proximate cause.  To recover for damages for

---

U.S. 1132 (2001); *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177-78 (N.J. Super. Ct. App. Div. 2003); *Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364, 380 (D. N.J. 2004).

3256274v7

allegedly unfair or deceptive acts, a plaintiff must show that the defendant's wrongful conduct proximately caused her injuries. *White v. Early*, 211 S.W.3d 723, 741 (Tenn. Ct. App. 2006). In other words, the alleged "unfair or deceptive act or practice must in fact cause the damages of which the plaintiff complains." *Id.* at 743.

Plaintiff has produced no evidence suggesting that any alleged deceptive or unfair conduct by defendants caused her any damages. Plaintiff vaguely pleads that defendants "disseminated information that was deceptive, misleading and false in a material way for the purpose of influencing and inducing physicians and medical providers to prescribed (sic) Neurontin, at excessively high dosages, for unapproved 'off-label' uses, including for treatment of pain, to patient/consumers such as the Plaintiff's decedent." But, as discussed above, there is absolutely *no* evidence that Mr. Smith's prescribers were ever exposed to any alleged "off-label" promotion or other improper marketing by defendants, which caused them to prescribe Neurontin and in turn caused Mr. Smith to fill his prescription. Moreover, even assuming *arguendo* that Dr. Mackey and Nurse Krancer received information regarding "off-label" uses, there is likewise no evidence that they relied on this material in prescribing Neurontin to Mr. Smith. Plaintiff can thus neither prove that Mr. Smith's prescribing physicians received information about "off label" promotion nor that—if such information were received—the prescribers relied on it in prescribing Neurontin to Mr. Smith. As a result, summary judgment should be granted on plaintiff's TCPA claim. *See Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 276 (Tenn. Ct. App. 1999) ("[U]nder the TCPA, plaintiffs must at least allege that they were exposed to the offensive conduct."); *White*, 211 S.W.3d at 743 (granting summary judgment where there was no evidence that the unfair or deceptive acts proximately caused the plaintiffs' damages).

## IV.   CONCLUSION

As set forth above, all of plaintiff's causes of action fail because she has no has evidence on the essential element of causation.  In addition, her warranty, fraud and TCPA claims are independently deficient as a matter of law.  Defendants thus respectfully request that this Court grant their summary judgment motion.

Dated: January 23, 2009

DAVIS POLK & WARDWELL

By:    /s/ James P. Rouhandeh
       James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

SHOOK, HARDY & BACON L.L.P.

By:    /s/ Scott W. Sayler
       Scott W. Sayler

2555 Grand Boulevard
Kansas City, Missouri 64108
(816) 474-6550

-and-

HARE & CHAFFIN

By:    /s/ David B. Chaffin
       David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company*

3256274v7

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 23, 2009.

/s/ David B. Chaffin
David B. Chaffin

3256274v7