UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re: NEURONTIN MARKETING,
      SALES PRACTICES AND
      PRODUCTS LIABILITY LITIGATION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

    *Smith v. Pfizer Inc., et al., 1:05-cv-11515-PBS*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

## DEFENDANTS PFIZER INC. AND WARNER-LAMBERT COMPANY LLC'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS

Defendants Pfizer Inc. and Warner-Lambert Company LLC respectfully submit this Statement of Material Facts in support of their Motion for Summary Judgment pursuant to Local Rule 56.1.[1]

1.    Mr. Smith was first prescribed Neurontin on May 5, 2003. Sayler Decl., Ex. 14.

2.    There is no evidence that Mr. Smith took Neurontin when it was prescribed in 2003. Ruth Smith Dep. 112:113-117:15 (Sayler Decl. Ex. 5); Maris Dep. 536:11-537:20 (Sayler Decl., Ex. 3.)

3.    A second physician suggested Neurontin on January 5, 2004, but Mr. Smith did not take Neurontin at that time.. Maris Dep. 536:11-537:20 (Sayler Decl., Ex. 3.)

4.    On March 9, 2004 visit, Dr. Mackey prescribed Neurontin 300 mg, twice a day for Mr. Smith. Maris Dep. 536:11-17 (Sayler Decl., Ex. 3.)

---

[1] The facts asserted herein are admitted for purposes of Defendants' Motion for Summary Judgment only.

5.  Dr. Mackey testified that he "probably" read the Neurontin package insert "a long time" before he prescribed Neurontin for Mr. Smith, but that he typically did not re-review prescription drug labeling on any kind of regular basis.  Mackey Dep. 79:20-80:1, 81:9-19 (Sayler Decl., Ex. 8.)

6.  Mr. Smith filled his one and only thirty-day prescription for Neurontin on March 9, 2004, nearly two months before his death.  Plaintiff's Response to Defendants' First Set of Interrogatories at No. 14, p. 22 (Sayler Decl., Ex. 9.)

7.  Mrs. Smith herself picked up Mr. Smith's Neurontin prescription from Eckerd's on March 9, 2004. Ruth Smith Dep. 114:2-19, 139:9-141:19 (Sayler Decl., Ex. 5.)

8.  Had Mr. Smith taken the Neurontin prescribed and filled on March 9, 2004 according to his doctor's instructions, the prescription bottle would have been empty by April 8, 2004. Granacher Rpt. at 6 (Sayler Decl., Ex. 12); Jacobs Rpt. at 13 (Sayler Decl., Ex. 13).

9.  Plaintiff testified that she cannot not recall observing Mr. Smith take his Neurontin every time he was supposed to according to the prescription.  Ruth Smith Dep. 143:12-16 (Sayler Decl., Ex. 5.)

10. Plaintiff testified that Mr. Smith took his medications as prescribed because "that was just the way he did things." Ruth Smith Dep. 143:2-16 (Sayler Decl., Ex. 5.)

11. A Neurontin bottle, which plaintiff's expert Dr. Maris described as "full," was found on the dresser of Mr. Smith's bedroom following his death.   Maris Dep. 527:18-528:15 (Sayler Decl., Ex. 3.)

12. Dr. Maris testified that Mr. Smith "skipped a few doses" of Neurontin.   Maris Dep. 540:5-8  (Sayler Decl., Ex. 3.)

13.   Dr. Maris testified that, based on Neurontin's half-life of five to seven hours, there would be no appreciable Neurontin left in an individual's system within twenty-four hours after taking the medication.  Maris. Dep. 549:24-550:16 (Sayler Decl., Ex. 3.)

14.   Dr. Maris testified that no one observed Mr. Smith ingest Neurontin on any of the four days leading up to his suicide, nor on any other particular day.  Maris Dep. 529:14-530:14 (Sayler Decl., Ex. 3.)

15.   Dr. Trimble testified that he does not know when Mr. Smith last took Neurontin prior to his death.  Trimble Dep. 263:9-10 (Sayler Decl., Ex. 2.)

16.   Dr. Maris testified that he did not know how many Neurontin pills Mr. Smith may have ingested at any time.  Maris Dep. 539:12-20 (Sayler Decl., Ex. 3.)

17.   There is no biochemical evidence of Neurontin in Mr. Smith's body at the time of his death because Mr. Smith's blood was not tested for the presence of Neurontin.  Trimble Dep. 268:19-269:13 (Sayler Decl., Ex. 2.)

18.   Dr. Maris testified that he does not know how many samples Mr. Smith might have ingested.  Maris Dep. 539:12-14 (Sayler Decl., Ex. 3.)

19.   Dr. Mackey could state with more than 50, but less than 90, percent certainty that he had a conversation with a sales representative at some point in time about Neurontin.  He testified that this conversation was about a study in an on-label use and that the discussion could have taken place before or after the period he treated Mr. Smith.  Mackey Dep. 76:2-23.  (Sayler Decl., Ex. 8.)

20.   Dr. Mackey testified that he does not read literature of any kind regarding pain management.  Mackey Dep. 74:10-11 (Sayler Decl., Ex. 8.)

21. When asked Dr. Mackey was asked whether he would have prescribed Neurontin to Mr. Smith based on the information he has today, Dr. Mackey testified that he would prescribe Lyrica if Mr. Smith walked into his office today. Mackey Dep. 92:16-93:2 (Sayler Decl., Ex. 8.)

22. Dr. Mackey testified that he continues to prescribe Neurontin to this day in spite of the information regarding suicidal events in the product labeling. Mackey Dep. 83:24-84:13 (Sayler Decl., Ex. 8.)

23. Nurse Krancer testified that she "doesn't usually read the entire package insert" and instead relies on books and "blurbs in journals about new medications." Krancer Dep. 29:2-10 (Sayler Decl., Ex. 10.)

24. Nurse Krancer was asked whether "if it had been brought to her attention that this drug [Neurontin] is associated with increases in depression and suicide," she "would have taken into account that information when prescribing this drug." In response she stated that she "probably would have thought about [the prescription] a little bit harder." Krancer Dep. 15:2-15 (Sayler Decl., Ex. 10.)

25. Nurse Krancer testified that she does not recall any discussions with sales representatives regarding Neurontin for pain management and that any discussions regarding pain involved herpetic pain—one of Neurontin's approved indications. Krancer Dep. 32:15-33:9 (Sayler Decl., Ex. 10.)

26. Nurse Krancer testified that she does not prescribe drugs based on what a sales representative tells her, but instead educates herself about the medication. Krancer Dep. 12:8-16 (Sayler Decl., Ex. 10.)

Dated: January 23, 2009

Respectfully submitted,

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
       James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

SHOOK, HARDY & BACON L.L.P.

By:   /s/ Scott W. Sayler
       Scott W. Sayler

2555 Grand Boulevard
Kansas City, Missouri 64108
(816) 474-6550

- and -

HARE & CHAFFIN

By:   /s/ David B. Chaffin
       David B. Chaffin

160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and
Warner-Lambert Company LLC*

5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on January 23, 2009.

/s/ David B. Chaffin