# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE: NEURONTIN MARKETING, SALES )
PRACTICES AND PRODUCTS LIABILITY  )
LITIGATION                        )
                                  )
                                  )
_____)
                                  )
                                  )
                                  ) CASE NO.
                                  ) 04-10981
THIS DOCUMENT RELATES TO:         )
                                  )
RUTH SMITH, Individually and as   )
Widow for the use and benefit of  )
herself and the next of kin of    )
Richard Smith, deceased.          )
                                  )
05-CV-11515                       )
                                  )

VIDEOTAPED DEPOSITION OF

PAUL R. McCOMBS, III, M.D.

Taken on Behalf of the Plaintiffs

June 8, 2007

## Page 2

```
 1  APPEARANCES:
 2  For the Plaintiff:
 3      MARK LANIER
        DARA HEGAR
 4      PATRICK O'HARA
        Lanier Law Firm
 5      6810 F.M. 1960 West
        Houston, Texas 77069
 6      713.659.5200
        713.659.6416
 7      wml@lanierlawfirm.com
 8      ANDREW G. FINKELSTEIN
        Finkelstein & Partners
 9      436 Robinson Avenue
        Newburgh, New York 12550
10      800.634.1212
        afinkelstein@lawampm.com
11
12  For the Defendant:
13      KENNETH J. FERGUSON
        Clark, Thomas & Winters
14      P.O. Box 1148
        Austin, Texas 78767
15      512.472.8800
        512.474.1129
16      kjf@ctw.com
17
    Also Present: Jason Powers, Videographer
18
```

## Page 3

```
          INDEX
WITNESS: PAUL RAY McCOMBS
      INDEX OF EXAMINATIONS
                    Page/Line
By Mr. Lanier ..................... 6    5
By Mr. Ferguson ................. 15   11
By Mr. Lanier ................... 28    9
By Mr. Ferguson ................. 30    4
By Mr. Lanier ................... 35    7
      INDEX OF EXHIBITS
                    Page/Line
No. 1 ........................... 29   24
No. 2 ........................... 29   25
No. 3 ........................... 34   12
```

## Page 4

The videotaped deposition of PAUL R. McCOMBS, III, M.D., taken on behalf of the Plaintiffs, on the 8th day of June, 2007, in the offices of Howell Allen Clinic, 2011 Murphy Avenue, Suite 401, Nashville, Tennessee, for all purposes under the Federal Rules of Civil Procedure.

The formalities as to notice, caption, certificate, et cetera, are waived. All objections, except as to the form of the questions, are reserved to the hearing.

It is agreed that Elisabeth A. Miller, being a Notary Public and Court Reporter for the State of Tennessee, may swear the witness, and that the reading and signing of the completed deposition by the witness are waived.

\* \* \*

## Page 5

PROCEEDINGS

THE VIDEOGRAPHER: Here begins Volume 1, Videotape No. 1 in the deposition of Dr. Paul R. McCombs, III, in re Neurontin marketing, sales practices and products liability litigation in the U.S. District Court, District of Massachusetts. The Case number is MDL, docket No. 1629. Today's date is June the 8th, 2007. The time on the video monitor is 10:09.

The video operator today is Jason Powers of Vowell & Jennings.

Counsel, please identify yourselves and state whom you represent.

MR. LANIER: My name is Mark Lanier. I'm here representing Ruth Smith and the girls in the loss of Richard Smith. I've got with me Dara Hegar from my office, Patrick O'Hara from my office, and Andrew Finkelstein from his office.

MR. FERGUSON: Ken Ferguson representing Pfizer, Warner-Lambert, Parke-Davis.

THE VIDEOGRAPHER: Thank you. The court reporter today is Elisabeth Miller of Vowell & Jennings.

Would the reporter please swear in the witness.

### Page 14

```
1    associated with a loss of impulse control,
2    associated with a loss of cognitive awareness of
3    things, or -- or increase in depression, would it
4    have changed your prescription habits as far as
5    Mr. Smith?
6         MR. FERGUSON: Object to form.
7         THE WITNESS: Perhaps.
8    BY MR. LANIER:
9    Q.   And by perhaps, would you have considered
10   trying other drugs first?
11   A.   I would go over his medication list and
12   try to pick the best possible choice to alleviate
13   his pain. If I had known it was associated with
14   depression, knowing him, I would be very careful
15   with it --
16   Q.   Yeah. If --
17   A.   -- if I decided to use it.
18   Q.   So if you decided to use it, would you at
19   least have given him some significant warnings and
20   his family and made sure everybody was tuned in to
21   the fact that if his depression seemed to be
22   getting worse, that he needs to contact someone?
23   A.   I would.
24   Q.   Okay.
25        MR. LANIER: I'll pass the witness.
```

### Page 15

```
1         How much time did I use, please?
2         THE WITNESS: You were right at --
3         THE VIDEOGRAPHER: 10 minutes -- 10
4    minutes 30.
5         MR. LANIER: Oh, baby, I've got more
6    time. You better not leave me an opening.
7         THE WITNESS: It's about me.
8         MR. LANIER: Thank you, Doctor.
9         THE WITNESS: You're welcome.
10        E X A M I N A T I O N
11   BY MR. FERGUSON:
12   Q.   Dr. McCombs, let me ask you a little bit
13   about your -- your treatment of -- of Mr. Smith.
14   First of all, Mr. Lanier asked you about whether
15   there had been some contacts with the family
16   regarding any -- any concerns that might give rise
17   to a concern that perhaps Mr. Smith was depressed
18   or was down, correct?
19   A.   Yes, sir.
20   Q.   Okay. And, in particular, let me show you
21   a record -- I'm sure you have it in front of you,
22   but just to save time, I'll hand it to you --
23   dated 5-2-03.
24   A.   I have it right in front of me.
25   Q.   Okay. Yes, sir.
```

### Page 16

```
1         Let me ask you, first of all, you have
2    your chart in front of you?
3    A.   Yes, sir.
4    Q.   Can we make sure that one way or the
5    other, a copy of the chart is attached to the
6    deposition?
7         MR. LANIER: Whatever the doctor
8    says. We don't have any problem. No HIPAA
9    concerns or anything like that. We'll waive.
10        THE WITNESS: Okay.
11        MR. FERGUSON: Okay. And can we
12   stipulate that these -- that his chart is -- are
13   business records of his --
14        MR. LANIER: Absolutely.
15        MR. FERGUSON: --
16   neurosurgical procedures?
17        MR. LANIER: It saves us five minutes
18   of questions of it.
19        MR. FERGUSON: There you go. Thank
20   you.
21   BY MR. FERGUSON:
22   Q.   Okay. On this page, Doctor, the -- the
23   notation on 5-2-03 is in handwriting. Whose
24   handwriting is that in?
25   A.   That would be Becky Hughes.
```

### Page 17

```
1    Q.   Okay. And who is Becky Hughes in the
2    office?
3    A.   Becky Hughes is one of my secretaries.
4    Q.   And is she one of the individuals who
5    would -- who would take calls from patients?
6    A.   Yes.
7    Q.   Okay. And is -- is this some -- these
8    kinds of notes are things that you would look at
9    and consider in terms of -- of what you're seeing
10   with your patients --
11   A.   Yes.
12   Q.   -- what they're reporting?
13        Could you read us that 5-2-03 notation?
14   A.   Yes, sir. 5-2-03, Becky Hughes writes,
15   spoke with patient's daughter, states patient
16   wishes he could die because of pain and
17   depression. Advised to take patient to ER for
18   psych eval -- take patient to ER for psych eval
19   and treatment. TX is treatment.
20        Initial PRM/PK, Pam Krancer, slash BH,
21   Becky Hughes.
22   Q.   And the PRM is you?
23   A.   Yes.
24   Q.   PK is your --
25   A.   Pam Krancer, clinical nurse practitioner.
```