EXHIBIT E

# License Agreement

By signing in the space provided below, Robert D. Gibbons Ph. D. ("Licensee") with an address at 2021 North Mohawk, Chicago, IL 60614, agrees and acknowledges acceptance of the terms of this Agreement for the services as described in Exhibit A attached hereto ("the "Proposal"), and accepts and agrees to be bound by the terms and conditions of this Agreement.

1.   (a)  This Agreement is made as of the 20th day of May 2008 by and between Licensee and PharMetrics, Inc. ("PharMetrics") and shall remain in full force and effect from the date hereof, unless earlier terminated pursuant to Section 1(b) hereof.

(b)  In the event that either party commits a material breach or default in any of the terms or conditions of this Agreement and that party fails to remedy that default or breach within thirty (30) days after receipt of notice of that breach from the other party, the party giving notice may, at its option terminate this Agreement by sending written notice of termination to the other party.  In the case of early termination of PharMetrics by Licensee, as provided above, PharMetrics will proceed in an orderly fashion to terminate any outstanding commitments and to phase-down the work as soon as practicable and shall not be entitled to any compensation for such termination other than for:  (i) fees for services rendered and monies expended by PharMetrics prior to the effective date of termination not yet paid for; and (ii) reasonable non-cancelable obligations incurred for the project by PharMetrics prior to the effective date of termination.  The obligations of the parties under Sections 1, 2, 5, 6, 7 and 8 hereof will survive termination of this Agreement.  Any payment due under this section shall be made within thirty (30) days after termination or as soon as all work is phased down, whichever is later.

(c)  In the event this Agreement is terminated pursuant to Section 1(b), PharMetrics shall retain such sums as may have been paid to it by Licensee under the term of this Agreement to compensate PharMetrics for work performed in accordance with this Agreement.  Licensee shall pay PharMetrics any additional amounts owed, but not yet paid, for authorized work performed.

2.   (a)  PharMetrics represents that it has the right to use and may use third party information when collecting, compiling and maintaining PharMetrics materials that PharMetrics furnishes to Licensee under this Agreement.

(b)  Licensee agrees to indemnify and hold harmless PharMetrics and its Affiliates, employees, directors and agents against and from any claims, proceedings, or investigations arising out of or in connection with Licensee's use of the Deliverables including amounts paid in settlement of claims, proceedings and investigations and agrees to bear all costs and expenses, including reasonable attorneys' fees, incurred in connection with the defense or settlement of any such claim, proceeding or investigation.  For the purposes of this Agreement, "Affiliate" of a party hereto means a company which such party, or its parent, effectively controls, directly or indirectly, through the ownership or control of shares in the company.

3.   (a)  PharMetrics shall provide to Licensee analytic summary file cohort datasets as described in the Proposal, under the terms and conditions of this Agreement (collectively the "Deliverables").  For the purposes of Section 3 hereof, Deliverables includes, but is not limited to, the Proposal and the terms and conditions of this Agreement.

(b) PharMetrics shall provide the Deliverables under this Agreement only as an independent contractor, and nothing contained herein shall be construed to be inconsistent with that relationship or status.  PharMetrics, its employees, contractors, directors and agents shall not be considered employees or agents of Licensee.  This Agreement shall not constitute, create, or in any way be interpreted as, a joint venture, partnership, or business organization of any kind.

4.   Neither Licensee nor PharMetrics shall be liable for delays in performing or any failure to perform any of the terms of this Agreement (other than payment obligations) caused by the effects of fire, strike, war (declared or undeclared), insurrection, government restriction or prohibition, force majeure or other causes reasonably beyond its control and without its fault, but the party failing to perform shall use all reasonable efforts to resume performance of this Agreement as soon as feasible.

5.   <u>License Grant; Use of Information.</u>

Subject to the terms and conditions set forth herein, and the additional terms governing the use of the Deliverables in a legal proceeding attached hereto as Attachment 1, PharMetrics hereby grants to Licensee a non-exclusive, non-transferable, non-sublicensable, perpetual (except to the extent that this Agreement is terminated pursuant to Section 1(b)) license to use the Deliverables solely for Licensee's own use and analyses as further defined in the Permitted Use section of the Proposal.

(a)  Licensee may not use the Deliverables for any other purpose including, but not limited to, modifying, copying, selling, transferring, quoting to, attributing, or distributing in whole or in part, without prior written consent of PharMetrics.  Licensee acknowledges that PharMetrics is the owner of the Deliverables and rights therein, including but not limited to, all intellectual property rights therein, and no right, title or interest in any portion of the Deliverables or any modifications or enhancements thereto shall be conveyed to Licensee by release of such information, except as expressly provided herein.

(b)  Licensee shall not represent or imply to any third party that PharMetrics has provided any review, certification or endorsement of any reports or analyses prepared by Licensee or its clients or customers, or that PharMetrics makes any representation or warranty with respect to data underlying such reports or analyses.

(c)  Notwithstanding anything contained in this Agreement to the contrary, Licensee acknowledges and agrees that PharMetrics is in the business of providing information, materials and data similar to the Deliverables provided hereunder to third parties.  PharMetrics retains the right and nothing shall prevent PharMetrics from using the ideas, concepts, methods, processes, data, know-how, organization, techniques, wording, modules and subroutines developed by PharMetrics as part of its provision of materials to third parties, so long as such work does not incorporate any confidential information of Licensee.

(d)  Licensee may only publish its findings and conclusions related to Licensee analysis of the Deliverables or a portion thereof, that has been approved by PharMetrics, which approval shall not be unreasonably withheld, and includes all appropriate disclaimers.  Licensee shall acknowledge PharMetrics as the source of data from the Deliverables contained in any such publication (attribute:  PharMetrics, Inc., a unit of IMS, Watertown, MA).

6.   <u>Confidentiality</u>

(a)  Licensee shall not, at any time during the term of this Agreement or thereafter, communicate, disclose or provide to any third party, any of the Deliverables, the contents thereof, any information or materials derived therefrom, information relating to current or future PharMetrics business plans, or any other information provided by PharMetrics to Licensee which PharMetrics identifies on or about the time of its disclosure as confidential or which, by the nature or type of information, reasonably should be regarded as confidential information of PharMetrics (collectively "PharMetrics Confidential Information"), except as expressly provided in this Agreement or otherwise expressly authorized by PharMetrics in writing.  PharMetrics shall not, at any time while this Agreement is in effect or thereafter, communicate, disclose or provide to any

third party, any information provided by Licensee to PharMetrics in connection with this Agreement which Licensee identifies on or about the time of its disclosure as confidential or which, by the nature or type of information, reasonably should be regarded as confidential information of Licensee (collectively "Licensee Confidential Information"), except as expressly provided in this Agreement or otherwise expressly authorized by Licensee in writing. Each party hereto agrees to treat the confidential information of the other as confidential, using the same degree of care used by the receiving party to protect the receiving party's own confidential information, but in any event not less than a reasonable degree of care.

(b) This Confidentiality provision does not apply to any information: (i) obtained from an issued or registered patent; (ii) available in the public domain through no fault of the receiving party of such information; (iii) independently developed by or on behalf of the receiving party without reference to the disclosing party's confidential information; or (iv) disclosed to the receiving party without restriction by a third party not having an obligation of confidence with respect to such information. No combination of information will be deemed to be within any of the above exceptions, whether or not the component parts of the combination are within one of the above exceptions, unless the combination itself is within one of the above exceptions.

7.    Limitation of Liabilities and Warranties

(a)  IN NO EVENT SHALL PHARMETRICS BE LIABLE TO LICENSEE FOR ANY LOSS OF DATA, PROFITS, OR FOR ANY SPECIAL, INCIDENTAL, INDIRECT, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE USE OR PERFORMANCE OF THE SERVICES OR THE DELIVERABLES PROVIDED HEREUNDER FOR THIS AGREEMENT, EVEN IF PHARMETRICS HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR LOSSES.

(b) THE DELIVERABLES ARE PROVIDED ON AN "AS IS" BASIS. PHARMETRICS MAKES NO WARRANTIES, GUARANTEES OR REPRESENTATION, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT WITH RESPECT TO THE SERVICES.

(c) PHARMETRICS' LIABILITY ARISING OUT OF THE SUPPLYING OF, OR ANY DELAY OR FAILURE TO SUPPLY, THE DELIVERABLES HEREUNDER OR THEIR USE OR DISPOSITION, WHETHER BASED UPON WARRANTY, CONTRACT, TORT OR OTHERWISE, SHALL NOT EXCEED THE AMOUNTS PAID BY LICENSEE PURSUANT TO THIS AGREEMENT UNDER WHICH SUCH DELIVERABLES WERE PROVIDED TO LICENSEE.

8.    Communications and Payments

(a)  Licensee shall pay to PharMetrics the fees for the Deliverables within thirty (30) days of the invoice date except as otherwise set forth in the

Fees and Payment section of the Proposal. Licensee will also be responsible for paying applicable sales tax on the total amount as defined by operation of law, unless Licensee notifies PharMetrics in writing of Licensee's tax exempt status. In no event shall Licensee deduct or set-off any amount(s) from or against any amount(s) owed to PharMetrics under this Agreement without the prior written consent of PharMetrics. If Licensee fails to timely pay any amount in accordance with the terms of this Agreement, Licensee shall pay, in addition to the invoice amount, interest at the rate of twelve percent (12%) per annum on the unpaid balance beginning thirty-five (35) days form the date of the invoice until such amounts are paid.

(b) Licensee shall pay to PharMetrics reasonable and actual expenses, provided that such expenses are (i) pre-approved by Licensee and (ii) necessary to the performance of the services associated with the Deliverables.

(c) Checks will be made payable to:   "PharMetrics, Inc.", Tax Identification Number:  04-3428516, and sent to the notice address for PharMetrics as follows:  311 Arsenal Street, Watertown, MA  02472.

(d) Any notice required or permitted hereunder shall be in writing and shall be delivered or mailed to the addresses set forth herein.

9.   Miscellaneous

(a) Assignment

Neither party shall have the right to assign this Agreement or any of the rights or obligations hereunder without the prior written consent of the other party, except that (a) PharMetrics may assign this Agreement to a successor or assignee of all or substantially all of its business related to this Agreement, whether by purchase, merger, consolidation or otherwise, and (b) either PharMetrics or Licensee may assign this Agreement to an affiliate or a subsidiary or a successor to that area of its business to which this Agreement is related.

(b) Entire Agreement; Modification

This Agreement constitutes the entire agreement between the parties on the subject matter and supersedes all prior contracts, agreements and understandings relating to the same subject matter between the parties. The parties intend this Agreement to be a complete statement of the terms of their agreement, and no change or modification of any of the provisions of this Agreement shall be effective unless it is in writing and signed by a duly authorized representative of PharMetrics and Licensee.

(c) This Agreement shall be governed by the laws of the Commonwealth of Massachusetts, without regard to its conflict of laws rules.

(d) This Agreement is executed in two counterparts each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, this Agreement has been accepted and agreed by the parties as of the date hereof.  Each individual signing for a corporate entity hereby personally warrants his or her legal authority to bind that entity.

**ROBERT D. GIBBONS PH. D.**

By: _____

Name: Robert D. Gibbons LTD

Title:  President

Date: 5/21/2008_____

**PHARMETRICS, INC.**

By:_____

Name:

Title:

Date:_____

## ATTACHMENT 1

## Additional Terms and Conditions Governing Use of PharMetrics Deliverables in Legal Proceedings

**Permissible Use and Disclosure of PharMetrics Deliverables.** Licensee ("CLIENT") hereby agrees that PHARMETRICS owns all right, title and interest in any data ("Data"), software ("Software"), syndicated reports ("Reports") and other information or Service components supplied to CLIENT by PHARMETRICS collectively referred to herein as deliverables ("Deliverables"), in whatever form provided under the Agreement between Robert D. Gibbons Ph. D. and PHARMETRICS, dated May 20, 2008.

PHARMETRICS grants CLIENT a non-exclusive, non-transferable license to use the Deliverables internally, in conjunction with other information available to CLIENT. CLIENT may disclose the Deliverables to Pfizer and its employees having a need to know for the conduct of CLIENT's investigation. The Deliverables shall not be disclosed or used in legal proceedings unless compelled by court order, provided PHARMETRICS is given reasonable advance written notice for the purpose of obtaining the court's protection with respect to the Deliverables. The Deliverables may only be produced in the Legal Proceeding in connection with a Protective Order, issued by the court ("Protective Order") which limits dissemination of the Deliverables to Qualified Persons as defined in the Protective Order, the terms of which are not inconsistent with the terms set forth in these Terms and Conditions. Production of the Deliverables shall be limited to that portion of the Deliverables that is relevant to the Legal Proceeding, except where the context or applicable rules of civil procedure otherwise specifically requires. Any person or entity receiving the Deliverables in connection with the Legal Proceeding shall only use the Deliverables for purposes directly related to reaching an outcome in the Legal Proceeding. All documents containing the Deliverables shall be marked "CONFIDENTIAL", or marked in such other manner so as to be identified as a document requiring confidential treatment under the terms of the Protective Order.

When PHARMETRICS' Deliverables are used in or as part of a legal proceeding, PHARMETRICS will only act as an objective service provider and not as an expert on behalf of a CLIENT. PHARMETRICS' Deliverables may reflect projections, estimates, forecasts, or other analyses of the Deliverables which are the result of either PHARMETRICS' standard processes or specifications developed or approved by the CLIENT.

PHARMETRICS will not offer testimony or other evidence regarding the interpretation of the results of the Deliverables provided by PHARMETRICS or the services performed by PHARMETRICS in connection with the Legal Proceeding. In addition, PHARMETRICS will not provide any advice or engage in any advocacy with respect to witness testimony or expert analysis of any other party. Also, PHARMETRICS will not provide any opinion as to the relative merits of the CLIENT's or other party's position in a Legal Proceeding.

In no event shall PHARMETRICS be liable for any consequential, special, exemplary, or similar types of damages, including but not limited to third party claims, whether foreseeable or not, arising in connection with the use of PHARMETRICS' Deliverables in the Legal Proceeding, even if PHARMETRICS has been advised of the possibility of such damages. Any reliance on or decision based on PHARMETRICS Deliverables is the sole responsibility of CLIENT and the entity that receives the PHARMETRICS Deliverables in the Legal Proceeding.

CLIENT agrees that 30 days after conclusion of the Legal Proceeding, including appeals, each person or entity having received PHARMETRICS Deliverables shall either (i) return such

PHARMETRICS Deliverables or copies then in their possession to the Law Department of PHARMETRICS located at 660 West Germantown Pike; Plymouth Meeting, PA 19462; or (ii) destroy all such documents or any copies then in their possession and control and provide the Law Department of PHARMETRICS with written attestation of their destruction. This paragraph reference to the conclusion of the Legal Proceeding refers to the period in time immediately following (i) the entry of the final judgement; or (ii) the passage of time in which an appeal may be filed; or (iii) the execution of the parties of the settlement agreement; or (iv) final determination of an appeal.

## EXHIBIT A

### Proposal

**Scope of Work**

PharMetrics will deliver two sets of analytic summary data files for two separate patient cohorts ("Cohort Datasets"). Some patients may be included in both cohorts. Each Cohort Dataset will be comprised of four files. In addition we will provide one drug reference file and one diagnosis reference file, (and one procedure code file if there are HCPCS codes).

Patient selection criteria:

Cohort 1 (Bi-polar Disorder): Using the index-window time frame January 1, 2001 – December 31, 2006 (inclusive) find the first occurrence of bi-polar diagnosis (ICD-9 296.0x, 296.1s, 296.4x-296.8x). This will define the index date for each patient.

Cohort 2 (Gabapentin users): Using the index-window time frame January 1, 2001 – December 31, 2006 (inclusive) find the first claim for gabapentin (GPI?). This will define the index date for each patient.

All patients with an index date will be validated for inclusion. They must have valid enrollment dates, valid gender, valid year of birth, and continuous enrollment in the 12 months prior to the index date (pre-index period) and 12 months after the index date (post-index period). Note that a month will be defined as having 30 days, so that 12 months equal 360 days.

Patients who are aged 65+ at any time during the pre- and post-index period must also be enrolled in a Medicare Advantage plan. Complete claims histories during intervals of continuous enrollment may not be available for individuals aged 65 years or older whose insurance coverage is not Medicare "risk" due to issues of coordination of benefits with traditional Medicare or another payer. Therefore, we will restrict the over 64 population to those who are identified as enrolled in Medicare "risk" plans.

Furthermore, only newly treated/diagnosed patients are of interest. Therefore, cohort 1 patients will be excluded if they have any bi-polar diagnosis during the pre-index period, and cohort 2 patients will be excluded if they have any gabapentin claims during the pre-index period.

Only plans with enrollment, days supplied and no mental health carve-out will be included.

Diagnosis codes used for patient selection or delivered in analytic files will only be selected from claims that are submitted by a clinician involved in the treatment/diagnosis of a patient, or a facility. Consequently, only medical (M), surgical (S), or facility (F)' record types will be considered, and thus 'A' and other record types will be ignored. Record type is not relevant when looking at drug claims used for patient selection or delivered in analytic files (since most have a record type of 'Pharmacy' (P).

**Deliverables and Timeline**

We will create four analytic files for each Cohort Dataset with the same structure. Thus a total of eight analytic files, plus the 2 (or 3) reference files will be delivered. All will be in SAS format.

File 1 will be a patient level file, while files 2, 3, and 4 will be claim-level files. Only claims within the pre- and post-index periods will be included in the claim-level files.

The Cohort Datasets (the "Deliverables" and each a "Deliverable") will contain the following fields:

File 1: Patient File (one record per selected patient):
>               ID
>               Year of birth (at index date)
>               Gender
>               Index Date

File 2: Diagnosis File (one record for every diagnosis in the claims history within the pre- and post-index periods):
>               ID
>               Date of diagnosis
>               Diagnosis code

File 3: Drug File (one record for every drug of interest (AED, anti-depressants, lithium, and Atypical anti-psychotics within the pre- and post-index periods):
>               ID
>               Date of claim
>               NDC code
>               HCPCS code (for injectibles, if necessary)
>               Days Supplied (for NDC only)
>               Quantity Dispensed (for NDC only)

The final selection of drugs of interest will be done in consultation with Licensee.

File 4: Suicide and self-inflicted injury (optional?) (one record for every code of interest within the pre- and post-index periods. Note that these codes are already included in File 2):
>               ID
>               Date of diagnosis
>               Diagnosis code

Timeline
The Cohort Datasets will be delivered to Licensee 10-15 business days upon Licensee's approval of the final drug list.

**Permitted Use**
The Deliverables are being provided by PharMetrics to Dr. Gibbons for the purpose of performing analyses solely for Pfizer Inc. for a project entitled "BP Suicide." Any other use of the Deliverables is strictly prohibited and requires PharMetrics' prior written approval.

**PharMetrics Fee and Payment Schedule**
PharMetrics' licensing fee for the Deliverables described above is $15,000, plus applicable sales tax. PharMetrics will invoice Licensee $15,000, plus applicable sales tax, upon execution of the Agreement.