# EXHIBIT 9

Berklacich, Frank MD (Smith prescriber) 6/7/2007 5:42:00 PM

```
 1    IN THE UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF MASSACHUSETTS
 2
 3    IN RE: NEURONTIN MARKETING, SALES  )
      PRACTICES AND PRODUCTS LIABILITY   )
 4    LITIGATION                         )
                                         )
 5    _____             )
                                         )
 6                                       )
                                         )
                        ) CASE NO.
 7                      ) 04-10981
      THIS DOCUMENT RELATES TO:          )
 8                                       )
      RUTH SMITH, Individually and as    )
 9    Widow for the use and benefit of   )
      herself and the next of kin of     )
10    Richard Smith, deceased.           )
                                         )
11    05-CV-11515                        )
                                         )
12
13
14    VIDEOTAPED DEPOSITION OF
15    FRANK M. BERKLACICH, M.D.
16    Taken on Behalf of the Defendant
17    June 7, 2007
18
19
20
21
22
23
24
25
```

```
 1                    I N D E X
 2    WITNESS: FRANK M. BERKLOCICH
 3              INDEX OF EXAMINATIONS
 4                                     Page/Line
 5    By Mr. Ferguson .................   6   13
 6    By Mr. Lanier ...................  37   12
 7              INDEX OF EXHIBITS
 8                                     Page/Line
 9    No. 1 ...........................  36    8
```

```
 1    APPEARANCES:
 2    For the Plaintiff:
 3         MARK LANIER
           DARA HEGAR
 4         PATRICK O'HARA
           Lanier Law Firm
 5         6810 F.M. 1960 West
           Houston, Texas 77069
 6         713.659.5200
           713.659.6416
 7         wml@lanierlawfirm.com
 8         ANDREW G. FINKELSTEIN
           Finkelstein & Partners
 9         436 Robinson Avenue
           Newburgh, New York 12550
10         800.634.1212
           afinkelstein@lawampm.com
11
12    For the Defendant:
13         KENNETH J. FERGUSON
           Clark, Thomas & Winters
14         P.O. Box 1148
           Austin, Texas 78767
15         512.472.8800
           512.474.1129
16         kjf@ctw.com
17
      Also Present: Sheldon Singh, Videographer
18                  Wesley Henry
```

```
 1
 2        The videotaped deposition of FRANK M.
 3    BERKLACICH, M.D., taken on behalf of the
 4    Defendant, on the 7th day of June, 2007, in the
 5    offices of Tennessee Joint and Spine, 2011 Murphy
 6    Avenue, Suite 309, Nashville, Tennessee, for all
 7    purposes under the Federal Rules of Civil
 8    Procedure.
 9        The formalities as to notice,
10    caption, certificate, et cetera, are waived. All
11    objections, except as to the form of the
12    questions, are reserved to the hearing.
13        It is agreed that Elisabeth A.
14    Miller, being a Notary Public and Court Reporter
15    for the State of Tennessee, may swear the witness,
16    and that the reading and signing of the completed
17    deposition by the witness are waived.
18
19
20
21              . . .
```

Neurontin Track One (Plaintiff / Prescriber / Expert Depos)            Page - - 4

Berklacich, Frank MD (Smith prescriber) 6/7/2007 5:42:00 PM

**41**

1  Q.   What struck me is, in your form itself,
2  you ask people if they've got any change in mood.
3  So I'm assuming that's something that's not
4  unusual for you to see with people who have
5  chronic pain that they're having to deal with day
6  in, day out; is that fair to say?
7  A.   It's much more common with chronic pain
8  than it is acute pain.
9  Q.   And that's what this gentleman had, he had
10 chronic pain, right?
11 A.   Correct.
12 Q.   Now, you didn't have -- we've got, I
13 guess, 56 pages of your chart here -- or your --
14 your records. I didn't see any entries in here
15 that -- that showed you thought or any of your
16 staff thought that Mr. Smith was suicidal in any
17 way. You -- you never had that indication, did
18 you?
19 A.   Well, we don't really deal with that in
20 terms of our questionnaire, because we're not --
21 we're not really equipped to deal with that sort
22 of complaint.
23 Q.   I understand that, sir, but I'm saying
24 if -- if you'd found any reason to think he was
25 suicidal, I would think y'all would have a medical

**42**

1  obligation not just to note it but to try and deal
2  with it; is that right?
3  A.   Yeah, we do -- yeah, we do see that
4  occasionally, and we do --
5  Q.   Okay.
6  A.   -- respond just as you said.
7  Q.   Okay. And you never saw that Mr. Smith,
8  did you?
9  A.   No.
10 Q.   By the same token, when he was seeing you,
11 he was not on the drug Neurontin, was he?
12 A.   Not on the questionnaire did he indicate
13 that -- that he was taking that.
14 Q.   You never prescribed him Neurontin
15 yourself, did you?
16 A.   No.
17 Q.   When you prescribe drugs, is it important
18 to you as a doctor that the drug companies be
19 upfront with you about their drugs and what side
20 effects they might have?
21 A.   Well, the -- the usual information we get
22 is from the PDR, but, you know, sometimes with the
23 newer medication, the drug reps are there. And
24 you're right, we do rely on them to be
25 straightforward about potential side effects and

**43**

1  complications.
2  Q.   I would assume you'd also rely on them
3  to -- to put the right information in the PDR, in
4  their label; is that fair to say?
5  A.   That's fair to say.
6  Q.   By the same token, I guess to the extent
7  the FDA is involved in the label, you hope they're
8  being upfront with the FDA as well, true?
9  A.   Correct.
10 Q.   Is it important that -- when you say PDR,
11 we know what that is in this room, and the jury
12 has probably learned what it is if they didn't
13 know already. It's the Physician's Desk
14 Reference, right?
15 A.   Correct.
16 Q.   It's a bound volume -- actually, depending
17 on how you classify it, several volumes. But
18 it's -- there's a bound volume, big old thick
19 book, that's got every label for every
20 prescription drug that's being sold in America
21 with FDA approval, right?
22 A.   Correct.
23 Q.   In fact, it's got a section with pictures
24 of those drugs where you can look at the pill too,
25 right?

**44**

1  A.   Correct.
2  Q.   And you doctors are able to look in that
3  book if you want to check to see what a drug is
4  indicated for, right?
5  A.   Correct.
6  Q.   And by indications, we mean what the FDA's
7  approved it for; is that right?
8  A.   (Witness nodded head.)
9  Q.   In addition to that, you're able to look
10 in that book and figure out what warnings the drug
11 company is putting out with their drug, right?
12      MR. FERGUSON: Object to form.
13      THE WITNESS: Right.
14 BY MR. LANIER:
15 Q.   Are you able to put out -- are you able to
16 read about what precautions the drug company puts
17 out there?
18      MR. FERGUSON: Same objection.
19      THE WITNESS: They do have notations
20 in there regarding that, as well as --
21 BY MR. LANIER:
22 Q.   Warnings?
23 A.   -- combined drug interaction, drug-drug
24 interaction.
25 Q.   Very good.