# EXHIBIT 14

Hoskins, Sherri (Smith) 10/24/2007 9:11:00 AM

---

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE: NEURONTIN MARKETING, SALES )
PRACTICES AND PRODUCTS LIABILITY )
LITIGATION )
)
_____ )
)
)
) CASE NO.
) 04-10981
THIS DOCUMENT RELATES TO: )
)
RUTH SMITH, Individually and as )
Widow for the use and benefit of )
herself and the next of kin of )
Richard Smith, deceased. )
)
05-CV-11515 )
)
VIDEOTAPED DEPOSITION OF
SHERRI HOSKINS
Taken on Behalf of the Defendant
October 24, 2007

---

**Page 2**

1  APPEARANCES:
2  For the Plaintiff:
3     MAURA C. KOLB
       KENNETH S. SOH
4     Lanier Law Firm
       6810 F.M. 1960 West
5     Houston, Texas 77069
       713.659.5200
6     713.659.6416
       wml@lanierlawfirm.com
7     kss@lanierlawfirm.com
       mck@lanierlawfirm.com
8
9  For the Defendant:
10    KENNETH J. FERGUSON
       Clark, Thomas & Winters
11    P.O. Box 1148
       Austin, Texas 78767
12    512.472.8800
       512.474.1129
13    kjf@ctw.com
14
    Also Present: Amanda Martin, Videographer
15
16
17
18
19
20
21
22
23
24
25

---

**Page 3**

1              I N D E X
2  WITNESS: SHERRI HOSKINS
3          INDEX OF EXAMINATIONS
4              Page/Line
5  By Mr. Ferguson ................. 6   8

---

**Page 4**

2          The videotaped deposition of
3  SHERRI HOSKINS, taken on behalf of the Defendant,
4  on the 24th day of October, 2007, in the John Hood
5  Conference Room of Sheraton Music City Hotel, 777
6  McGavock Pike, Nashville, Tennessee, for all
7  purposes under the Federal Rules of Civil
8  Procedure.
9          The formalities as to notice,
10 caption, certificate, et cetera, are waived. All
11 objections, except as to the form of the
12 questions, are reserved to the hearing.
13         It is agreed that Elisabeth A.
14 Miller, being a Notary Public and Court Reporter
15 for the State of Tennessee, may swear the witness,
16 and that the reading and signing of the completed
17 deposition by the witness are waived.
18
19
20
21         . . .
22
23
24
25

---

**41**

1    MR. FERGUSON: Okay.
2    MS. KOLB: You already asked her if
3    her husband had told her anything about that
4    visit.
5    BY MR. FERGUSON:
6    Q.    Did he? Did Buford tell you anything
7    about that visit?
8    A.    I don't remember.
9    Q.    Okay.
10   A.    I don't really remember anything that went
11   on in that visit.
12   Q.    Okay. Did you talk to Cindy about that
13   visit?
14   A.    You know, I'm -- I'm sure we discussed --
15   discussed it, but it seemed inconsequential, I
16   guess, because I don't remember any specifics.
17   Q.    Were you aware -- well, up until the
18   present time, are you aware that on that visit
19   that they pushed your father up to Dr. Mackey's
20   office in a wheelchair?
21   A.    Do I know that they pushed him in a
22   wheelchair?
23   Q.    Yes, ma'am.
24   A.    Yes.
25   Q.    And how did you become aware of that?

**42**

1    A.    I don't remember exactly how I found out
2    about that, but I do know that.
3    Q.    Okay. And do you know why they used a
4    wheelchair to get him to Dr. Mackey's office?
5    A.    I really don't know.
6    Q.    Did you ever know of him to use a
7    wheelchair any other time, other than this day
8    with Dr. Mackey's office?
9    A.    My dad was never in a wheelchair.
10   Q.    Okay. Other than that day?
11   A.    And I -- I didn't witness that, but I
12   never saw my dad in a wheelchair.
13   Q.    Dr. Mackey in his note said, "The pain has
14   gotten to the point that he is getting around in a
15   wheelchair." That's not correct in your view,
16   correct?
17   A.    That's correct.
18        MS. KOLB: Just to make sure the
19   record -- that's correct that it's not correct?
20        THE WITNESS: That's correct that
21   Dr. Mackey was not correct in his statement.
22        MS. KOLB: I just wanted to make sure
23   it was clear. Thanks.
24   BY MR. FERGUSON:
25   Q.    Other than you're aware that day he was

**43**

1    getting around in a wheelchair?
2         MS. KOLB: Objection, form.
3         THE WITNESS: Could you rephrase
4    that?
5    BY MR. FERGUSON:
6    Q.    Sure.
7    A.    I want to make sure I'm answering you
8    correctly.
9    Q.    Other than that day, you are aware that --
10   that your father utilized a wheelchair to get to
11   Dr. Mackey's office?
12   A.    My understanding is on that day he was
13   rolled in a wheelchair, and that is the only time
14   I remember.
15   Q.    Okay. In the record of Dr. Mackey from
16   March 9 of 2004, he says, "His daughter" -- and
17   Cindy was the one who was present, to your
18   understanding; is that correct?
19   A.    Correct.
20   Q.    Dr. Mackey says, "His daughter raised the
21   concern, though, about whether or not there are
22   some other issues going on, and we are going to go
23   ahead and have him evaluated psychiatrically to
24   make sure there is not a dementia type issue
25   playing into this as well."

**44**

1    First of all, did you read that record in
2    your mother's deposition or as an exhibit to your
3    mother's deposition? Do you recall?
4    A.    I don't know if I read it or not.
5    Q.    Did you have any discussion with Cindy at
6    or around the time frame of March 9 of 2004
7    whether there was some kind of issue of dementia
8    or -- or mental problems with your father?
9    A.    I know I didn't personally because I
10   didn't think that my dad had -- my dad didn't have
11   any mental problems.
12   Q.    Did you ever become aware that Dr. Mackey
13   had said that we are going to go ahead and have
14   him evaluated by a psychiatrist?
15   A.    No.
16   Q.    So you never had a discussion with -- with
17   your mother, with your sisters regarding whether
18   your dad ought to see a psychiatrist in this
19   March 2004 time frame?
20   A.    No.
21   Q.    And you never observed anything in your
22   father, even up until the time of his death, that
23   appeared to be -- be a mental problem, dementia,
24   anything like that?
25   A.    No, I didn't.