EXHIBIT 12

Castro, Lucy (Pfizer)  7/10/2007  9:08:00 AM

---

**1**

```
 1              LUCY CASTRO
 2         UNITED STATES DISTRICT COURT
 3        FOR THE DISTRICT OF MASSACHUSETTS
 4    ----------------------------x
 5    IN RE NEURONTIN MARKETING AND
      SALES PRACTICES LITIGATION
 6
      MDL Docket No. 1629
 7    Master File No., 04-10981
      Judge Patti B. Saris
 8    Magistrate Leo T. Sorokin
      ----------------------------x
 9
10
11        SUPREME COURT OF THE STATE OF NEW YORK
12              COUNTY OF NEW YORK
13
      ----------------------x
14
      IN RE:  NEW YORK NEURONTIN
15    PRODUCTS LIABILITY LITIGATION
16    Case Management
      Index No. 765,000/2006
17    Hon. Marcy S. Friedman
      ----------------------x
18
19
20
                July 10, 2007
21              9:08 a.m.
22
23
24
25
```

**2**

```
 1              LUCY CASTRO
 2
 3         Deposition of LUCY CASTRO MANRIQUE,
 4    taken by Class Plaintiffs, at the offices of
 5    Davis, Polk & Wardwell, 450 Lexington Avenue,
 6    New York, New York, before Brandon Rainoff, a
 7    Federal Certified Realtime Reporter and Notary
 8    Public of the State of New York.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**3**

```
 1              LUCY CASTRO
 2    A P P E A R A N C E S:
 3
 4    FINKELSTEIN & PARTNERS
 5    Attorneys for Product Liability Plaintiffs
 6         785 Broadway, 3rd Floor
 7         Kingston, NY 12401
 8         (800) 634-1212
 9    BY:  KENNETH B. FROMSON, ESQ.
10         KEITH ALTMAN
11
12    ROBINS KAPLAN MILLER & CIRESI
13    Attorneys for Assurance Plaintiffs
14         2800 LaSalle Plaza
15         800 La Salle Avenue
16         Minneapolis, MN 55402
17    BY:  ANNAMARIE DALEY, ESQ.
18
19    COHEN & MALAD, LLP
20    Attorneys for Class Plaintiffs
21         136 N. Delaware Street, Suite 300
22         Post Office Box 627
23         Indianapolis, Indiana 46206-0627
24    BY:  IRWIN B. LEVIN, ESQ.
25         ERIC S. PAVLACK, ESQ.
```

**4**

```
 1              LUCY CASTRO
 2    A P P E A R A N C E S (Continued):
 3
 4    SHOOK, HARDY & BACON, LLP
 5    Attorneys for Pfizer
 6         2555 Grand Blvd.
 7         Kansas City, Missouri 64108-2613
 8    BY:  VINCENT E. GUNTER, ESQ.
 9         TREY ALFORD, ESQ.
10
11    JONES DAY
12    Attorneys for Wyeth
13         222 East 41st Street
14         New York, NY 10017-6702
15         (212) 326-7894
16    BY:  JOSEPH A. STRAZZERI, ESQ.
17         BART GREEN
18
19
20
21
22
23
24
25
```

45

LUCY CASTRO

1

2  whatsoever from Pfizer to the field force or to
3  the public in any manner, way, shape or form
4  that said Neurontin is not FDA approved for
5  general neuropathic pain?
6      A.  I am aware of training internally but
7  nothing to the public.
8      Q.  Thank you.  So if in fact the sales of
9  Neurontin going back to the Warner Lambert-Parke
10  Davis days were increased because of illegal
11  marketing practices, to your knowledge since you
12  have been at Pfizer, there has been nothing done
13  to specifically address those and affirmatively
14  dispel the notion other than as far as you
15  understand it staying within the label as you
16  promote it today, is that fair?
17      MR. GUNTER:  Objection as to the form
18  of that question.
19      MR. LEVIN:  You can answer.
20      A.  Like I stated previously, we did not
21  do a communication externally but we did do
22  training.  We also -- the field force was only
23  allowed to detail to very specific physicians
24  that would be neurologists and epileptologists,
25  and all internal training was on label, again.

46

LUCY CASTRO

1

2      Q.  What were the regulations that Warner
3  Lambert had with regard to detailing?
4      MR. GUNTER:  Objection, that's
5  getting -- calls for speculation.  She never
6  worked for Warner Lambert.
7      A.  I am not aware of what their practices
8  were.
9      Q.  You mentioned the acronym WLF.  What
10  is that?
11      A.  Washington Legal Foundation.
12      Q.  You just mentioned that your field
13  force was only allowed to detail to certain type
14  of physicians, do you recall that?
15      A.  Yes.
16      Q.  What type of physicians?
17      A.  Neurologists, epileptologists.
18      Q.  To your knowledge, then, Pfizer never
19  marketed Neurontin to primary care physicians,
20  is that correct?
21      A.  We did, once we got the PHN
22  indication.
23      Q.  Once you marketed for PHN, you never
24  mentioned general neuropathic pain in any way,
25  correct?

47

LUCY CASTRO

1

2      A.  In terms of promoting for general
3  neuropathic pain?
4      Q.  Yes.
5      A.  No.
6      Q.  Okay.  So I won't see anything that
7  would be directed to the public that mentions
8  anything about general neuropathic pain?
9      MR. GUNTER:  Objection.
10      A.  There are pieces that have disease
11  state information that start with providing
12  context in terms of disease state so that PHN
13  can be understood.  In general my understanding
14  from materials I haven't seen is that
15  neuropathic pain in general is under recognized,
16  under diagnosed, and certainly the lay public
17  doesn't understand it well even to this day.  So
18  our materials gave very brief context and
19  immediately went into PHN.
20      Q.  So it would be your understanding then
21  that the primary focus of the terms that you are
22  aware of would have been PHN and other
23  neuropathic pain for context would just be a
24  minor part of the --
25      A.  Very minor, yes.

48

LUCY CASTRO

1

2      Q.  That would be important to you as a
3  regulator, as somebody involved in the
4  regulatory department, right?
5      A.  Absolutely.
6      Q.  Why would that be important?
7      A.  Like I said, we wanted to make sure we
8  are on label, and in fact that type of approach
9  was precleared with the FDA's DDMAC division.
10      Q.  But let's leave the FDA out of it for
11  a minute.  I just want to know from your
12  standpoint as somebody from regulatory, that
13  would be important to you, the PHN would be the
14  focus of the piece as opposed to pain?
15      A.  Absolutely.
16      Q.  As a person involved in regulatory, if
17  somebody were to come to you and say here is a
18  piece and it was primarily about pain and only a
19  little bit about PHN, what would you tell them?
20      A.  That we couldn't approve that.
21      Q.  Why?
22      A.  Because the focus has to be on label
23  PHN.
24      Q.  Why does the focus have to be on PHN?
25      A.  Because that's the indication