# EXHIBIT A

COPY

```
                IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF MASSACHUSETTS


IN RE:                          )  C.A. No. 04-10981-PBS
NEURONTIN MARKETING AND         )
SALES PRACTICES LITIGATION      )  Courtroom No. 14
                                )  1 Courthouse Way
                                )  Boston, MA  02210


                         AUGUST 1, 2005

                             2 p.m.




               BEFORE THE HONORABLE LEO T. SOROKIN

                  UNITED STATES MAGISTRATE JUDGE






                       VALERIE A. O'HARA

                     OFFICIAL COURT REPORTER
```

```
 1   A P P E A R A N C E S:

 2   For the Plaintiffs:

 3        Finkelstein & Partners, LLP, by ANDREW G. FINKELSTEIN,
     ESQ. and KENNETH B. FROMSON, ESQ., 436 Robinson Avenue,
 4   Newburgh, New York   12550;

 5        Robins, Kaplan, Miller & Ciresi, LLP, by ANNAMARIE A.
     DALEY, ATTORNEY, 2800 LaSalle Plaza, 800 LaSalle Avenue,
 6   Minneapolis, Minnesota   55402-2015;

 7        Greene & Hoffman, P.C., THOMAS M. GREENE, ESQ., 125
     Summer Street, Suite 1410, Boston, Massachusetts   02110;
 8
          Cohen, Milstein, Hausfeld & Toll, P.L.L.C., by LINDA P.
 9   NUSSBAUM, ATTORNEY, 150 East 52nd Street, New York, New York
     10022;
10
          Lowey, Dannenberg, Bemporad & Selinger, P.C., by
11   RICHARD BEMPORAD, ESQ., The Gateway, One North Lexington
     Avenue, White Plains, New York   10601;
12
     For the Defendants:
13
          Davis, Polk & Wardwell, by JAMES P. ROUHANDEH, ESQ.
14   and GLEN ALEXANDER KOPP, ESQ., 450 Lexington Avenue,
     New York, New York   10017;
15
          Hare & Chaffin, by DAVID B. CHAFFIN, ESQ., 160 Federal
16   Street, Boston, Massachusetts   02110-1701;

17

18

19

20

21

22

23

24

25
```

```
 1                        PROCEEDINGS
 2            THE CLERK:  This case is with regard to Neurontin,
 3   Civil Action No. 04-10981 will now be heard before this
 4   Court.  Will counsel please identify themselves for the
 5   record.
 6            THE COURT:  Hold a minute.  Okay.  Go ahead, you
 7   can remind me again who you all are.
 8            MR. FROMSON:  Good afternoon, your Honor.  My name
 9   is Kenneth Fromson here on behalf of the product liability
10   personal injury plaintiffs.  I'm with the law firm of
11   Finkelstein & Partners.
12            THE COURT:  Good afternoon, Mr. Fromson.
13            MR. FINKELSTEIN:  Andrew Finkelstein, Finkelstein
14   & Partners.
15            THE COURT:  Good afternoon, Mr. Finkelstein.
16            MR. GREENE:  Good afternoon, your Honor, Thomas
17   Greene for the class plaintiffs.
18            THE COURT:  Good afternoon, Mr. Greene.
19            MR. BEMPORAD:  Good afternoon, your Honor, Richard
20   Bemporad from Lowey, Dannenberg, Bemporad & Selinger, P.C.
21   We represent Aetna, Inc., and I'll be speaking on behalf of
22   the coordinated plaintiffs.
23            THE COURT:  Okay.
24            MS. NUSSBAUM:  Linda Nussbaum, your Honor.  We
25   represent the coordinated plaintiffs.
```

```
 1  never ruled as to files.  We say, well, what they read into
 2  his order is completely different.  He didn't have the Kibby
 3  affidavit in front of him.  He didn't have what your Honor
 4  has in front of him to address this issue, so I don't think
 5  that he ruled on this issue, and, again, I think coming back
 6  and trying to argue irrelevant disputes from the Franklin
 7  case and to argue from these prior orders I think is an
 8  indication of the weakness of their claims, they're not
 9  focusing on what they should be focusing on, which is what
10  facts they've alleged in there and what they haven't alleged
11  in there, and we don't think they're sufficient under the
12  relevant law and under 26(b)(1) which they cite no
13  authority, and they're not entitled to the massive discovery
14  they're seeking.
15            THE COURT:  Okay.
16            MR. ROUHANDEH:  Thank you.
17            THE COURT:  Thank you.  Requests for admissions,
18  my inclination is Mr. Himmelstein is going to argue that?
19            MR. FINKELSTEIN:  Yes.  As far as I know, he had
20  engaged in some discussion with Mr. Rouhandeh.
21            THE COURT:  Do you know why he's not here today?
22            MR. FINKELSTEIN:  I thought this was the only
23  motion on as he did as well.
24            MR. ROUHANDEH:  On that issue, I discussed with
25  him that we needed to get it resolved by Monday.  I was
```

1   under the impression we were arguing --
2           THE COURT:  I was under the impression if you
3   hadn't resolved it, we would address it today.  My strong
4   inclination on the requests for admissions are basically to
5   order that what I suggested last time because it seemed
6   reasonable, and nobody would really jump up and down and
7   complain about it.  I guess what I'm going to do since
8   Mr. Himmelstein is not here is suggest this:
9           I think what seems to me ought to happen is that
10  the requests for admission ought to be -- that the
11  defendants should not have to respond to those requests now.
12  As I understand it, the requests for admissions that have
13  been propounded seek an admission with respect to every
14  document in the Franklin, 1, that the document is a business
15  record of the defendants; and, 2, it is authentic within the
16  meanings of the rules of evidence.
17          I think that that request multiplied 24,000 or
18  44,000 times, whatever it is, at this stage is overbroad and
19  inefficient, and instead what should happen is those
20  requests the defendants don't have to respond to whether I'm
21  granting a protective order or whether the plaintiffs are
22  going to withdraw them, and at a later stage in this
23  proceeding after a substantial portion of the discovery has
24  been completed, there will come a time in the schedule when
25  the plaintiffs will need to identify those documents that

1  they intend to rely upon, and they will then, it seems to
2  me, produce a list of those documents to the defendants or
3  among the documents and ones they believe that meet the
4  criteria are authentic business records of the defendants,
5  and they will give them to the doctors at which point the
6  defendant will either say yes or no, that, yes, it meets
7  both, it's authentic and a business record or no, it's
8  not.
9  　　　　　　If there's disagreements, if you resolve them all,
10 there won't be need for requests for admission, and if
11 there's disputes about them, then there's going to be
12 disputes about a far smaller number of documents because,
13 first of all, Plaintiffs receive documents beyond the 44,000
14 so they might want admissions with respect to those, and
15 many of these 44,000 may not be relevant at that point as to
16 the ones that are in dispute. If it has to be, if the
17 parties can't reach an agreement, then you can take, my
18 inclination would be that you take deposition discovery just
19 as to those two questions, just as to the documents the
20 defendant didn't agree to. The ones that are in dispute,
21 you're entitled to dispute them, you're entitled to take
22 some discovery on them, especially at that point when you
23 know what documents you want to rely upon.
24 　　　　　　You people had worked out I think a two-day limit
25 on depositions. It would seem to me I would view this as

```
 1   separate, take your two days on a witness now and later, if
 2   you had to, you get to depose that person again with respect
 3   to the documents, then the deposition is only, and that just
 4   goes to the question about the business authentication,
 5   which is I think a little more detail we laid out when we
 6   were here last time.  That would be my inclination as to
 7   suggest it to be done in the absence of an agreed proposal.
 8            Since Mr. Himmelstein is not here, what I'm going
 9   to do is say that I'll tell you that's my tentative view.
10   I'm not going to memorialize that in an order now.
11   Mr. Rouhandeh, from your perspective, is that something
12   you're willing to agree to?
13            MR. ROUHANDEH:  Just one clarification, your
14   Honor, on that issue.  In terms of the two-day deposition,
15   it seems to me it doesn't make any sense to let them depose
16   somebody a second time if they already had those documents
17   at the time they initially deposed someone.  Now, if they
18   say, look, it's going to take more than two days to depose
19   someone for documents, shouldn't they have to try to
20   authenticate documents and go through the business records?
21            THE COURT:  The reason I was thinking about this
22   is this, at least 44,000, because there are 44,000 documents
23   that are referenced in the admissions.
24            MR. ROUHANDEH:  22,000.
25            THE COURT:  If there's 22,000 documents, I suppose
```

1  some of these documents are multiple pages, and there's
2  information on them, there's all sorts of issues that could
3  arise. They might not know at the time they take the
4  depositions about which documents they want to use, and so
5  to the extent they're going to take discovery on it,
6  deposition discovery, they got to do it during the
7  depositions. It's going to inevitably force them, if they
8  prove, to take deposition discovery with respect to
9  documents that they in the end, they're not going to rely
10 on, which is going to put them through a burden, it's going
11 to put Pfizer to a burden, it's going to put you through a
12 burden.
13         It seems to me in my judgment that level of burden
14 is likely to be greater than at the end of the day, not at
15 the very end of the case, but at some further down-the-road
16 point when they focused in on all the discovery which
17 documents they're going to rely upon and you decided which
18 ones there isn't really a real issue about and ones that you
19 identify there is a real issue about in this case, then a
20 much narrower set, and the amount of deposition time likely
21 to be taken to deal with those I would think would be much
22 less because you may say there's an issue about these
23 hundred and they may explain why, and at which time they say
24 we see what you're saying about some of these, and they give
25 up on some percentage of that one hundred because they

1   realize it doesn't make sense or it's not important to
2   them.
3              MR. ROUHANDEH: Your Honor, my only concern is
4   that it may put off to the day when this later point comes
5   along they may have a bigger, it won't be a request to
6   admit, it will be stipulate as to these documents in a row.
7   We are producing more documents before 1998, and that's just
8   simply not how it's done in general litigation. It's really
9   done, you take the deposition of the witness with the
10  documents that you would have.
11             I understand if we later produce a document they
12  didn't have at the time of the deposition, they're
13  inevitable arguments about the documents, do we get to open
14  up the deposition again? That's a separate issue here.
15  They ought to try to authenticate the documents, establish
16  they're business records through the depositions. If they
17  get to the end of the day --
18             THE COURT: Here's what I'm going to do, I
19  understand what you're unhappy with. This is my tentative
20  view. It's not memorialized in any way. Is Mr. Himmelstein
21  the person designated?
22             MR. GREENE: He is, your Honor.
23             THE COURT: You go talk to Mr. Himmelstein. If
24  you guys come to terms about how to come to a different set
25  of terms that seems reasonable about how to resolve the

1   situation, come to an agreement, that's going to be probably
2   fine with me. If you don't reach an agreement by the end of
3   today is Monday, if you don't reach an agreement by a week
4   from today, then you file something that proposes simply
5   what you propose, all right.
6         You want to propose something different, you
7   propose it sounds like that no request for admission and
8   they just do, take in all their depositions now and they
9   will propose either what I've outlined or they'll propose
10  something different, I don't know. I'll think about what
11  you're saying, and they may say they're willing to do that,
12  but then they want two and a half days. I'm not sure.
13        MR. ROUHANDEH: That's fine.
14        THE COURT: Don't file more briefing, just file
15  this is what you propose and you can say, and that's all.
16  That's enough. I understand what the issues are, then I'll
17  take yours or theirs, or I'll make my own up in between.
18        MR. ROUHANDEH: That's fine.
19        MS. NUSSBAUM: Your Honor, I think the concern and
20  why Plaintiffs served these requests earlier rather than
21  later here is because otherwise we have many different
22  constituencies here who are going to be sharing this very
23  limited amount of deposition time of the witnesses in
24  common, and documents that I may need to authenticate or
25  want as business records may be quite different than yours

1  and quite different than yours, and none of us want to spend
2  the bulk of those depositions going through the litany of
3  questions, but, you know, I thought that your suggestion of
4  the two-day deposition of a custodian of records as to when,
5  maybe what we could do is a two-day deposition of a
6  custodian of records now before we start the depositions on
7  the merits because it may be that large groups of these
8  documents, large groups of minutes of regularly health
9  committees and meetings and the like can simply in a
10 custodian-type deposition up front be authenticated.
11          THE COURT:  That's what you can talk to
12 Mr. Himmelstein on.  You're free to propose any sort of
13 reasonable solution whether you want to agree with them or
14 not, either of you.  Mr. Rouhandeh, suppose I agree with you
15 on that principle that it should be done, there shouldn't be
16 two phases, I propose, why shouldn't they at that point,
17 they get through, then it's a question do they do it in the
18 form of admissions, or do they do it in the form of
19 depositions?  Then my question to you is in a sense, since
20 it still comes back to fundamentally the same question,
21 which is a lot of these documents presumably you'd agree are
22 authentic as business records and many of them you'd
23 probably say no, they're not or you don't know.
24          Why isn't it more efficient even though it blows
25 through the limits and the rules, but the fact of the

1  matter, we're efficient here. Why isn't it more efficient
2  and do it as an admissions, most of them, as opposed to
3  doing all of them by deposition?
4            MR. ROUHANDEH: I think they arguably could be
5  done by stipulation, but I thought where we were going at
6  the last hearing was, the defendants would -- and I think
7  this first speaks to the same -- during the depositions, try
8  to establish business records with respect to the documents
9  of the witnesses whose depositions we're going to take. You
10 get to the end of the case, typically what happens is
11 there's a pretrial order that has to be prepared. Both
12 sides will ask the other side to stipulate with respect to
13 authenticity, business records with respect to a host of
14 documents, then this is the piece where it kind of depends
15 on the case.
16           If at that point, you know, there's a bunch of
17 issues in dispute, if it's a small number of issues and the
18 witnesses are going to testify at trial anyway, sometimes it
19 gets wrapped up and it's done at trial. A lot of judges
20 don't want to spend very much time during trial addressing
21 those issues. I think the way that that could be dealt
22 with, they would simply have to seek leave to take
23 depositions related solely to those issues, but they would
24 have to ask for leave. They wouldn't just be able to do it
25 because if they do it to us, again, we could appear and say,

1  well, we still don't know what we want.
2       THE COURT: That's not my understanding what I
3  outlined last time. My understanding what I outlined last
4  time, now maybe it might not have been clear or people might
5  have understood it differently, which is fine, but I'm only
6  saying I've outlined one way to go about it. It strikes me
7  as reasonable. There's clearly other ways to do it. You
8  talk to Mr. Himmelstein, you guys can reach an agreement
9  that is different from what I propose, if it's reasonable,
10 I'll sign it. If you guys don't reach an agreement, then
11 you each can propose competing proposals and I'll review
12 them and I'll decide.
13      My sort of what I'm thinking about, it seems to me
14 I'm thinking about what's reasonable in sort of resolving
15 it, and my gut impression is that I can't believe all of you
16 are going, all of you, I don't mean just the defense
17 counsel, I mean all counsel, are going to have serious
18 disputes of anywhere between 22,000 and 200,000 documents,
19 and to impose upon what I'm guessing is going to be at least
20 10 lawyers at any deposition, but potentially way more, and
21 a witness, this burden of simply going through lots and lots
22 of documents that aren't going to be disputed just seems to
23 be a waste of time, and there's got to be a more efficient
24 way. That's what I'm thinking about.
25      MR. ROUHANDEH: Just as I understand it, the

1   period when they've looked back at documents to say is there
2   anything else, is that prior to the end of discovery?
3   That's the piece I misunderstood from last time.
4              THE COURT:  I'm assuming it's before summary
5   judgment, right, you're going to have a close of discovery
6   date, and then you're going to have a summary judgment brief
7   of schedule.  Either you say discovery goes to here, it's
8   closed and then you have a period of time for them to
9   identify all the documents and you have a period of time to
10  respond, then if there are issues left, you have a window to
11  do this other authentication business record kind of
12  depositions.  To the extent you take them, maybe you move
13  that all back, it's within the discovery period.  I don't
14  know.  That's nomenclature, I think.
15             But it seems to me it's before summary judgment
16  because if they get to summary judgment and summary
17  judgment, they've got to produce records, they've got to
18  have admissible evidence, and I suppose you people think
19  it's after summary judgment, but I think that that process
20  would happen before they file their motions for summary
21  judgment.  They file their motions for summary judgment,
22  whatever is in it, you know, it's agreed, it's a business
23  record and authentic or you guys know that you both disagree
24  about it and any discovery that has been done, and then the
25  Court makes a ruling in summary judgment and its theory in

1  summary judgment, and then you could impanel the jury. I
2  know it wouldn't go exactly like that.
3          MR. ROUHANDEH: I think all that your Honor could
4  be done by amendment to the case management orders in the
5  earlier scheduling requests to admit.
6          THE COURT: That's why I'm suggesting that my
7  tentative view would grant your motion for protective order,
8  they'll withdraw them, one or the other would be done, and
9  you guys can flesh it out or I can flesh it out in an order,
10 and it would be incorporated. I'm a little frankly confused
11 by the case management order. I understand the case
12 management order is more in the nature of like structure as
13 opposed to a schedule, though it sounds like it's a little
14 bit of both.
15         I couldn't care. You can put in the case
16 management order, you can do it in the form of a request. I
17 suggested a little while ago we might need a revised
18 schedule. To the extent that calls for redoing the case
19 management orders, we redo the case management orders, but
20 what I'm thinking is trying to resolve these issues and to
21 the extent it's necessary revise the schedule now to deal
22 with whatever we anticipated we deal with, however you want
23 to do this issue, then we'll get a realistic, workable
24 schedule to work on. That would be my hope and expectation
25 that barring an unforeseen development that would be the

```
 1   schedule we live with.
 2            MR. ROUHANDEH:  That's fine, your Honor, we'll
 3   work on a schedule and confer with Mr. Himmelstein and
 4   hopefully have something agreed upon.
 5            THE COURT:  You had something you wanted to say,
 6   sir?
 7            MR. FROMSON:  Although it may be procedural and
 8   immaterial in nature, we, as the plaintiffs liability
 9   steering committee, were not privy to the negotiations for a
10   two-day deposition, and obviously we would be equally
11   concerned about things in this record during that bulk of
12   time.  In addition, as you referenced, they could have way
13   more attorneys from the various plaintiffs' counsel than the
14   states, so we would probably be seeking an additional day to
15   have those depositions completed, where necessary.  I just
16   didn't want to sit on my hands here today.
17            THE COURT:  I understand that.  The three
18   provisions -- as I read the case management order, the three
19   provisions in the case management order that are at issue, I
20   don't have it in front of me.  Do you all have to go to
21   catch planes or what have you?
22            MR. ROUHANDEH:  We're here until your Honor needs
23   us.
24            THE COURT:  It would be my inclination that I'd
25   rather at least talk about the case management order now.  I
```