UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  : MDL Docket No. 1629

In re:  NEURONTIN MARKETING,                 :
        SALES PRACTICES AND                  : Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x Judge Patti B. Saris
                                                  :

THIS DOCUMENT RELATES TO:            : Magistrate Judge Leo T.
                                                  : Sorokin

*Bulger v. Pfizer Inc., et al.,*                :
Civil Action No. 1:07-cv-11426-PBS      :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Defendants, Pfizer Inc. and Warner-Lambert Company LLC ("defendants"), respectfully submit this reply memorandum in support of their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, on plaintiff's Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiff alleges six claims for relief in his Amended Complaint: negligence, breach of warranty, strict liability, fraud, violation of the Massachusetts Regulation of Business Practice and Consumer Protection Act, and survival. Defendants moved for summary judgment on all of plaintiff's claims on the ground that plaintiff has no admissible expert testimony on the essential element of causation.[1] In addition, defendants moved individually for summary judgment on

---

[1] Plaintiff's suggestion that defendants have not moved for summary judgment on his implied warranty and survival claims, *see* Pl. Opp. at 1, is thus not correct. Although defendants did not individually move for summary judgment on plaintiffs' implied warranty, negligence, or survival claims, plaintiff does not dispute that causation is an essential element of all of his claims. Moreover, plaintiff admits that an implied warranty of merchantability claim is subject to a negligence standard in a prescription drug case, meaning that plaintiff's implied warranty and negligent failure to warn claims are one and the same. Indeed, numerous courts have consolidated claims for breach of implied warranty with claims of negligence. *See, e.g., Kelley v. Eli Lilly & Co.*, 517 F. Supp. 2d 99, 109 (D.D.C. 2007) (interpreting Massachusetts law).

plaintiff's express warranty, strict liability, fraud, and consumer protection act claims. Plaintiff expressly admits that summary judgment should be granted on his express warranty and strict liability claims. *See* Pl. Opp. at 4. Plaintiff does not address defendants' challenge to his consumer protection act claim, apparently conceding summary judgment should also be granted on this cause of action.

Plaintiff's response fails to raise any basis to avoid summary judgment. As defendants' motion to exclude the expert testimony of Drs. Maris and Kruszewski makes clear (Doc. 1648), plaintiff lacks admissible expert testimony that Neurontin caused Mrs. Bulger's suicide. Plaintiff's belatedly submitted expert declarations, which attempt to "patch and repair" significant gaps in the experts' analysis and conclusions, demonstrate as much.[2]

Plaintiff's claim for fraud likewise cannot survive summary judgment. Plaintiff admits he has no evidence that any affirmative representation was ever made (thus conceding a lack of reliance) and improperly turns to a fraud-on-the-market theory—a theory that Massachusetts courts do not apply in the common law fraud context. Lacking an affirmative misrepresentation claim, plaintiff attempts to assert a fraudulent "suppression" claim. This claim is similarly flawed, as plaintiff has no evidence on the essential element of causation. He has neither proven that Mrs. Bulger's physicians based their decisions to prescribe Neurontin on information disclosed by the company let alone information that was not disclosed. Nor does plaintiff have any proof that the prescribing decisions would have been different had the allegedly suppressed information been disclosed. Instead, he alleges a pure omission, which is not actionable in

---

[2] Defendants filed concurrently herewith a separate Motion to Strike the expert declarations of Drs. Maris and Kruszewski.

Massachusetts, and he has no evidence that any "half-truths" were made to Mrs. Bulger's prescribers. Accordingly, the Court should grant summary judgment on plaintiff's fraud claim.

## LAW AND ARGUMENT

## I.   SUMMARY JUDGMENT IS WARRANTED ON ALL PLAINTIFF'S CLAIMS BECAUSE PLAINTIFF LACKS ADMISSIBLE EXPERT EVIDENCE ON THE ISSUE OF SPECIFIC CAUSATION

Plaintiff does not dispute that lack of expert opinion testimony on causation is a fully dispositve defense. And, as discussed in defendants' motion to exclude the expert testimony of Drs. Maris and Kruszewski, plaintiff lacks admissible expert testimony because neither of the experts' case-specific causation opinions satisfies the reliability requirements of *Daubert* and Rule 702. *See* Def. Mot. Exclude (Doc. 1648). Accordingly, summary judgment should be granted on all of plaintiff's claims.

## II.   PLAINTIFF'S FRAUD CLAIMS ARE DEFICIENT WHETHER COUCHED IN TERMS OF AFFIRMATIVE MISREPRESENTATION OR NONDISCLOSURE

### A.   PLAINTIFF HAS NOT RAISED A TRIABLE ISSUE OF FACT ON HIS AFFIRMATIVE FRAUDULENT MISREPRESENTATION CLAIM.

#### 1.   *Plaintiff has no evidence any affirmative misrepresentation was ever made, or that plaintiff's prescribing physicians relied on it.*

Plaintiff concedes that he has no evidence of an affirmative misrepresentation made by defendants to Mrs. Bulger's prescribing physicians.[3] This concession comes as no surprise given similar representations at the October 20, 2008 hearing on defendants' motion to dismiss the fraud claim and given the testimony of Mrs. Bulger's prescribing physicians. *See* Def. Br. at 7. Plaintiff's admission that he has no evidence of an affirmative misrepresentation is fatal to his fraudulent misrepresentation claim.

---

[3] *See* Pl. Opp. at 11 ("In the absence of a specific affirmative misrepresentation by Defendants, Plaintiff raises issues of material facts in dispute as to whether Plaintiff's physicians relied upon Defendants' suppression of depression and suicidality information.") (emphasis added).

This Court has long noted that plaintiff must first plead specific misrepresentations made to Mrs. Bulger's physicians that caused them to prescribe Neurontin to her.  Indeed, on February 23, 2007, the Court dismissed plaintiff's fraud claim based on his failure to plead fraud with particularity as required by Rule 9(b).  Mem. & Order (Doc. 646).  But the Court gave plaintiff another chance and allowed "plaintiff[] to amend his complaint to allege fraud with particularity, including specific misrepresentations that [Mrs. Bulger's] doctors allegedly relied on."  *Id.* (emphasis added); *see also* Oct. 20, 2008 Hr'g Tr. at 30 ("So I need a fraudulent statement, or you don't meet 9(b).  That's the crux of it.").  Plaintiff still has failed to plead fraud with particularity, admitting that he cannot tie any of the allegedly fraudulent misrepresentations to Mrs. Bulger's prescribers.  *See* Def. Br. at 7.  The failure to even plead with particularity a fraudulent misrepresentation related to Mrs. Bulger's prescribers requires dismissal of plaintiff's claim.

Moreover, at the summary judgment stage, plaintiff must do more than merely plead specific misrepresentations on which Mrs. Bulger's prescribers allegedly relied.  "In order to establish such a claim, the plaintiff, at a minimum, must establish that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage."  *Russell v. Cooley Dickinson Hosp., Inc.*, 772 N.E.2d 1054, 1066 (Mass. 2002).

Plaintiff has establish neither (1) that a false representation was made nor (2) that, assuming such a representation was made, Mrs. Bulger's physicians relied on it in prescribing Neurontin to her. After deposing Mrs. Bulger's prescribing physicians, plaintiff's counsel admitted he had no evidence that any affirmative misrepresentation was ever made to the

prescribers.  *See* Def. Br. at 7.  It is axiomatic that if an affirmative misrepresentation was not made, the physicians could not have relied on it.  Indeed, Dr. Crognale—the only prescriber who recalls being visited by one of defendants' sales representatives—testified that he does <u>not</u> prescribe drugs based on what a sales representative tells him, but rather based on his own experience with the medication and his medical training.  Sayler Decl., Ex. 1 at 173:10-20 (Rule 56.1 Statement, ¶¶ 1, 5.)  Further, he stated that his decision to prescribe Neurontin to Mrs. Bulger "did not have anything to do with anything any representative of Pfizer, Warner-Lambert or Parke-Davis told [him]."  Sayler Decl., Ex. 1 at 173:6-17 (Rule 56.1 Statement, ¶ 3.) Plaintiff's failure to establish a false misrepresentation of a material fact on which Mrs. Bulger's prescribers relied mandates summary judgment on his claim for affirmative fraudulent misrepresentation.  *See Russell*, 772 N.E.2d at 1066 (granting summary judgment where plaintiff lacked evidence of reliance).

### 2.  *Plaintiff's fraud-on-the-market theory of reliance fails to save his affirmative fraudulent misrepresentation claim.*

Plaintiff claims that triable issues of fact remain on his fraudulent misrepresentation claim despite admitting he has no evidence any misrepresentation was ever made.  Plaintiff claims that evidence related to the alleged "off-label promotion scheme," and testimony that Mrs. Bulger's prescribers base prescribing decisions on communications with other physicians, coupled with testimony that the doctors read journals (albeit they could not identify which ones), demonstrate that the prescribers "could have" relied on defendants' off-label marketing in prescribing Neurontin to Mrs. Bulger."  *See* Pl. Opp. at 13-15.  As this Court has made clear countless times, allegations of off-label promotion are not a sufficient basis to plead and prove a fraud claim.

- 5 -

Moreover, as noted in defendants' brief, vague allegations about "off-label" conduct—unconnected to Mrs. Bulger's doctors—are also invalid because they amount to nothing more than an attempt to circumvent the requirements of a common law fraud claim by resorting to a federal, securities-based, fraud-on-the-market theory. *See* Def. Br. at 9-10. Notably, Massachusetts has refused to apply the doctrine in the common law fraud context. *Young v. Deloitte & Touche, LLP*, No. 040807BLS, 2004 WL 2341344, at *5 (Mass. Super. Ct. Sept. 20, 2004) (van Gestel, J.) (noting that no cases have held that "Massachusetts common law applies the fraud-on-the-market doctrine to fraud or negligent misrepresentation claims" and dismissing common law fraud and negligent misrepresentation claims predicated on a fraud-on-the-market theory).[4]

Plaintiff cites no Massachusetts authority suggesting that a fraud-on-the-market theory is a viable basis on which to prove a common law fraud claim.[5]   Indeed, this Court previously

---

[4] *See also Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1198 (N.J. 2000) ("Since the Supreme Court accepted fraud on the market in [*Basic Inc. v. Levinson*, 485 U.S. 224 (1998)] . . . no state court with the authority to consider whether *Basic* is persuasive has chosen to apply it to claims arising under its own state's laws."); *Summit Props. Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 561 (5th Cir. 2000)  (noting that "[n]o court has accepted the use of [the fraud-on-the-market theory] outside of the context of securities fraud"), *cert. denied*, 531 U.S. 1132 (2001); *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1363 (11th Cir. 2002) (noting that the Eleventh Circuit has recognized that neither it nor the United States Supreme Court has extended the presumption of reliance outside the context of securities cases because "[t]he securities market presents a wholly different context than a consumer fraud case").

[5] All of plaintiff's legal authority, save a single case, involve sales and marketing or consumer protection act claims, which are distinguishable from a common law fraud claim in a products liability case.  The only products liability case involving a common law fraud claim plaintiff cites, *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602 (E.D. Pa. 2008), is distinguishable.  First, the *Knipe* court applied New Jersey, not Massachusetts, law.  New Jersey recognizes the principle of "indirect reliance" in the off-label context, under which the *Knipe* court permitted a claim to proceed because evidence suggested the prescribing physician "might have" been indirectly influenced by fraudulent promotion. *Id.* at 621-22.  In contrast, in Massachusetts, a claim of "indirect misrepresentation requires that the terms of the alleged misrepresentation . . . be repeated, or its substance communicated . . . to the complaining party in order for an action to lie." *Sebago, Inc. v. Beazer East, Inc*., 18 F. Supp. 2d 70, 86 (D. Mass. 1998) (applying Massachusetts law) (internal quotations omitted).  Here, there is no evidence whatsoever that any misrepresentation was communicated by any means to Mrs. Bulger's prescribers.  Plaintiff's claim thus fails under a theory of "indirect reliance" that is not recognized under Massachusetts law. *See id.* (dismissing fraud claim based on indirect reliance where plaintiff failed to plead that anyone "repeated the terms or substance of the alleged misrepresentation").

recognized that plaintiff's fraud-on-the-market theory has "big problems," *see* Def. Br. at 10.

Plaintiff's attempt to rely on a fraud-on-the-market theory should accordingly be rejected.[6]

### B.    PLAINTIFF HAS NOT RAISED A TRIABLE ISSUE OF FACT ON HIS FRAUDULENT OMISSION CLAIM.

Lacking an affirmative fraudulent misrepresentation claim, plaintiff claims he has raised

a triable issue of fact on a fraudulent omission or "suppression" claim.  Plaintiff alleges that

defendants failed to disclose information regarding "depression/suicidality" in the Neurontin

label (and by failing to send Dear Doctor Letters) and that sales representatives failed to disclose

information regarding depression and suicide.  *See* Pl. Opp. at 8.  None of this evidence creates a

triable issue of fact on plaintiff's fraudulent omission claim, as plaintiff lacks both evidence of

causation and of anything other than bare nondisclosure, which is not actionable in

Massachusetts under these circumstances.[7]

---

[6] Plaintiff also references the opinions of Charles King, a purported "general causation expert," *see* Pl. Opp. at 15-16, but this evidence likewise fails to establish a causal link between an affirmative misrepresentation made to Mrs. Bulger's physicians and their decisions to prescribe Neurontin to her.  Dr. King admitted that he has done no case-specific analysis and has no case-specific conclusions.  McGroder Decl., Ex. 6 at 84:6-14.  He has likewise offered no valid economic or statistical basis for concluding that any particular Neurontin prescription was caused by any particular alleged misrepresentation by defendants.  *Id*. at 124-26.  Thus, Dr. King is not offering any opinion as to whether any of Mrs. Bulger's Neurontin prescriptions were caused by any misrepresentations.  Indeed, he made no effort to learn and is not familiar with any of the facts of the *Bulger* case.  *Id*. at 83:16-23; 85:24-86:4.

[7] Plaintiff also includes a laundry list of information that he claims shows defendants knew Neurontin was associated with "depression/suicidality."  *See* Pl. Opp. at 8-10.  This is the same information that plaintiff relied on as "red flags" to support his general causation case.  As discussed in detail in the general causation *Daubert* briefing, this evidence does not establish an association between Neurontin and suicide or depression, let alone that Neurontin causes such events.  Because this issue has been fully briefed, defendants will not repeat the numerous flaws in plaintiff's reliance on this evidence here and instead incorporate by reference their response to this evidence in the general causation *Daubert* briefing.  *See* Def. Mem. Supp. Mot. Exclude (Doc. 1158); Def. Reply in Supp. Mot. Exclude. (Doc. 1239).  Moreover, in contravention of Local Rule 56.1, plaintiff does not include any of this information in his Separate Statement where he purports to set forth the undisputed facts on which he relies.  Finally, as discussed *infra* II.B.1., because plaintiff cannot establish that Mrs. Bulger's physicians based their decision to prescribe Neurontin on any information from defendants (disclosed or not disclosed), or that the prescribing decisions would have been different if they had received representations that plaintiff believes would be proper, this information is irrelevant to plaintiff's fraudulent omission claim.

1.      *Plaintiff lacks evidence on the essential element of causation.*

Whether couched in terms of affirmative misrepresentation or fraudulent omission, plaintiff must produce evidence that Mrs. Bulger's prescribers relied on information disclosed or that the allegedly omitted information would have affected the prescribing decision. *E.g., Russell*, 772 N.E.2d at 1066 (granting summary judgment where plaintiff lacked evidence of reliance); *Berkshire-Westwood Graphics Group, Inc. v. Davidson*, No. 06-WAD-13, 2007 WL 4119215, at *3 (Mass. App. Ct. Nov. 16, 2007) (finding that nondisclosure was not fraud where plaintiff lacked evidence of reasonable reliance on alleged nondisclosure). In other words, he must show a "causal relationship between the acts or omissions of the defendants and [his] injuries." *Lally v. Volkswagen Aktiengesellschaft*, 698 N.E.2d 28, 42 (Mass. App. Ct. 1998).

At the most fundamental level, plaintiff lacks evidence of a causal connection between defendants' alleged nondisclosure and plaintiff's injury. First, plaintiff has no evidence that Mrs. Bulger's prescribers' decisions were affected by information from defendants. Second, plaintiff has no evidence that the physicians' prescribing decision would have been different had the physicians received the allegedly omitted information.

(a)      *Plaintiff has no evidence that Mrs. Bulger's prescribers relied on any information from defendants.*

Although plaintiff claims that defendants failed to disclose information in the Neurontin label and in visits by territory representatives, there is no evidence that Mrs. Bulger's physicians relied on any information from defendants in prescribing Neurontin to Mrs. Bulger. In fact, the evidence suggests the opposite. Dr. Goldman testified that he could not recall reading the Neurontin label when he prescribed Neurontin for Mrs. Bulger, or whether he had, in fact, ever read the Neurontin label. McGroder Decl., Ex. 2 at 43:17-44:4. Further, Dr. Goldman testified that he does not review the PDR regularly and that "honestly, I don't use it all that much,"

because "it's just not as easy to use."  *Id*. at 43:17-44:4, 17:15-24.  Similarly, although Dr. Crognale testified that he refers to the PDR when prescribing a drug that he has not prescribed before, he never testified that he relies on the PDR in general in prescribing medications, or that he even reviewed the PDR when prescribing Neurontin to Mrs. Bulger, let alone that he relied on the PDR for this purpose.  In fact, Dr. Crognale testified that he does not refer to the PDR annually for drugs he prescribes on a regular basis.[8]  McGroder Decl., Ex. 1 at 16:17-17:17.  In addition, Dr. Crognale testified that he does not make his prescribing decision based on what a pharmaceutical company sales representative tells him.   Sayler Decl., Ex 1 at 171:10-20 (Statement of Fact ¶ 5.)

> *(b)      Plaintiff has no evidence that Mrs. Bulger's physicians'
> prescribing decision would have been different had the allegedly
> omitted information been disclosed.*

Plaintiff similarly lacks evidence that, had defendants disclosed the allegedly omitted information (the alleged risk of depression and suicide) either in the label, or in a visit by a territory representative, Mrs. Bulger's physicians' prescribing decisions would have changed.  In fact, Dr. Crognale testified that he was "not sure" whether he would have prescribed Neurontin to Mrs. Bulger if he had the information he has today, including the FDA Alert.  McGroder Decl., Ex. 1 at 212:4-12.  Plaintiff did not even ask Dr. Goldman if he would have prescribed Neurontin if he had been informed about an alleged increased risk of depression and suicide.  Plaintiff is similarly lacking evidence that Drs. Goldman and Crognale would have treated Mrs. Bulger differently had information about depression and suicide been in the label.[9]  Even if

---

[8] In any event, Dr. Crognale's prescriptions are beside the point.  He stopped treating Mrs. Bulger nearly a year before her death.  During the year leading up to Mrs. Bulger's death, Mrs. Bulger received her prescriptions for Neurontin from Dr. Goldman, who, in fact, changed the prescription on at least one occasion, if not more.

[9] Dr. Goldman was not even sure that he would have warned Mrs. Bulger had he been aware that Neurontin had the capacity to increase the risk of suicide, testifying that he could "not say what [he] would have done." McGroder Decl., Ex. 2 at 191:7-17.

plaintiff had such evidence, it still would not satisfy his burden of proof on the issue of causation because plaintiff has no evidence that different treatment would have prevented Mrs. Bulger's suicide.  Any testimony on this issue would be wholly speculative and insufficient to meet plaintiff's burden at the summary judgment stage.

Instead of coming forward with evidence of a causal connection between allegedly omitted information and Mrs. Bulger's injury, plaintiff relies on a laundry list of information he claims Mrs. Bulger's prescribers would have "wanted to know" in prescribing the medication. *See* Pl. Opp. at 11.  But testimony that the prescribers would have wanted to know additional information does not satisfy plaintiff's burden of proving causation at the summary judgment stage.  *See Nix v. SmithKline Beecham Corp.*, No. CV-06-43-PHX-SMM, 2007 WL 2526402, at *3 (D. Ariz. Sept. 5, 2007).  In *Nix*, much like the case at bar, the prescriber testified that he would liked to have known more about deaths associated with the medication Serevent.  *Id.*  The court found that "merely raising the possibility that [the prescriber] might have acted differently is not enough to satisfy Plaintiffs' burden of proof on causation" because plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.*

Because plaintiff has no evidence that Mrs. Bulger's physicians based their decision to prescribe Neurontin on incomplete information, or that had such information been disclosed it would have affected the prescribers' decisions, he cannot establish the essential element of causation.  He has no evidence that any purported omission caused Mrs. Bulger's suicide, and summary judgment is therefore proper.  *See Lally*, 698 N.E.2d at 42 ("The absolute failure of the plaintiffs in this case to establish a causal relationship between the acts or omissions of the defendants and their injuries, however, renders their claim untenable.").

- 10 -

### 2.    *Plaintiff's suggestion that causation may be presumed is misplaced.*

In a last ditch attempt to save his fraudulent omission claim, plaintiff asks the Court to presume causation (*i.e.*, that Mrs. Bulger's prescribers would have heeded an adequate warning), on the basis of the heeding presumption applicable in the failure to warn context.  *See* Pl. Opp. at 11-12.  Plaintiff's suggestion that causation on his fraud claim may be presumed demonstrates a fundamental misunderstanding of the difference between a failure to warn claim based on the implied warranty of merchantability and a common law fraudulent omission claim.  As the Court has noted, a failure to warn and a fraud claim are "two different causes of action," subject to different standards.  Oct. 20, 2008 Hr'g Tr. at 19.  Indeed, the Court noted that it is "harder to prove fraud" than failure to warn.[10]  *Id.*  Despite the obvious differences between these two causes of action, plaintiff conflates them in his brief, attempting to borrow principles distinct to failure to warn claims to satisfy his burden of proof here.

In particular, plaintiff relies on the heeding presumption in Comment j of Section 402A of the Restatement (Second) of Torts.  *See* Pl. Opp. at 11-12.  Section 402A deals with strict products liability, not fraud.[11]  And Comment j to Section 402A discusses strict liability <u>failure to warn claims</u>, providing that a seller may give an adequate warning to prevent a product from being unreasonably dangerous, and hence, subjecting the manufacturer to strict liability.  Restatement Second of Torts § 402A, Comment j.  The Comment goes on to provide that "[w]here a warning is given, the seller may reasonably assume that it will be read and heeded;

---

[10] In addition, fraud (including reasonable reliance on the alleged misrepresentation or omission that caused injury) must be pleaded with particularity, whereas a failure to warn claim is subject to notice pleading.  *See* Mem. & Order, dated Feb. 23, 2007 (Doc. 646) (noting heightened pleading requirement for plaintiff's fraud claim).

[11] *See* Section 402A Restatement (Second) of Torts, Comment a ("This Section states a special rule applicable to sellers of products.  The rule is one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product.").

and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." *Id.*

Confusingly, plaintiff cites Comment j and asks this Court to presume causation—that Mrs. Bulger's physicians' prescribing decision would have been different had they been adequately warned—for purposes of his fraudulent omission claim.  But, as discussed above, Section 402A applies to strict liability claims.  Plaintiff has not cited a single Massachusetts state or federal case (or any other authority for that matter) holding that Comment j created a presumption or excused a plaintiff from the burden of proving causation as part of a common law fraudulent omission claim.[12]  To the contrary, Massachusetts courts have uniformly applied Comment j to implied warranty of merchantability claims based on a failure to warn.[13]  *See Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909, 922-23 (Mass. 1998) (discussing application of Comment j to an implied warranty of merchantability claim based on a failure to warn); *Gurski v. Wyeth-Ayerst*, 953 F. Supp. 412, 418 (D. Mass. 1997) (same); *Garside v. Osco Drug, Inc.*, 976 F.2d 77, 80-82 (1st Cir. 1992) (same); *Knowlton v. Deseret Med., Inc.*, 930 F.2d 116, 120 (1st Cir. 1991) (same); *Kotler v. Am. Tobacco Co.*, 926 F.2d 1217, 1231-32 (1st Cir. 1990), *vacated on other grounds*, 505 U.S. 1215, (same); *Anderson v. Owens-Illinois, Inc.*, 799

---

[12] *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir. 1992) provides no support for the contention that causation may be presumed in the context of a fraudulent omission claim.  Rather, this court's discussion of Comment j was solely in the context of a strict liability claim for inadequate warning.  *Id.* at 812-14.  Moreover, the court rejected the plaintiff's "contention that causation is presumed, given an inadequate warning, in the context of an unavoidable risk."  *Id.* at 814.

[13] An implied warranty of merchantability claim in Massachusetts is akin to a strict liability claim based on Section 402A.  *See Vassallo*, 696 N.E.2d at 923 (noting that "liability under the implied warranty of merchantability in Massachusetts is 'congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A'").

- 12 -

F.2d 1, 2, 4-5 (1st Cir. 1986) (same); *Lowery v. AIRCO, Inc.*, 725 F. Supp. 82, 84 (D. Mass. 1989) (same).[14]

In short, if plaintiff is to maintain a fraudulent omission claim separate and apart from his implied warranty claim premised on a failure to warn, he must satisfy the elements of a common law fraudulent omission claim.  He cannot have a viable fraudulent omission claim, but simultaneously rely on principles distinct to implied warranty claims to circumvent his burden of establishing a triable issue of material fact on causation—an essential element of a fraudulent omission claim.  His "suppression" claim is either a failure to warn claim and subject to Comment j, or a common law fraudulent omission claim, for which he must prove causation.  It cannot be both.[15]

### 3.   *Plaintiff has no evidence any half-truths were made to Mrs. Bulger's prescribers, and instead relies on bare nondisclosure, which is not actionable absent a duty to disclose.*

In addition to his failure to prove causation, plaintiff relies on bare nondisclosure, rather than "half-truths," further undermining his fraudulent omission claim.  Under Massachusetts law, absent a special relationship of trust (such as a fiduciary relationship), giving rise to duty to disclose, "[s]ilence does not constitute a basis for claiming fraud and misrepresentation, even

---

[14] *See also Evans v. Lorillard Tobacco Co.*, No. 04-2840A, 2007 WL 796175, at *18 (Mass. Super. Ct. Feb. 7, 2007) (discussing Comment j in context of failure to warn claim, but not in context of plaintiff's separate fraud claim); *In re Mass. Asbestos Cases*, 639 F. Supp. 1, 3-4 (D. Mass. 1985) ("Massachusetts generally follows § 402A of the *Restatement (Second) of Torts* on breach of warranty liability.") (emphasis added).

[15] Defendants urge the Court to construe plaintiff's fraudulent omission claim based on information not conveyed to physicians as an implied warranty of merchantability claim based on a failure to warn theory—particularly given plaintiff's reliance on the heeding presumption and his inability to point to anything other than a bare nondisclosure. *See supra* II.B.3. Numerous courts have treated fraud claims based on an alleged failure to warn as nothing more than failure to warn claims. *E.g., Talley v. Danek Med. Inc*., 179 F.3d 154, 162-64 (4th Cir. 1999) (affirming district court decision that treated a fraud claim based on lack of adequate instructions as a failure to warn claim); *Nix*, 2007 WL 2526402 at *1 (treating ten claims, including fraud claim, as failure to warn claims); *Talley v. Danek Med. Inc*., 7 F. Supp. 2d 725, 730 (E.D. Va. 1998) (collecting cases treating various theories of liability, including fraud, as failure to warn claims). Even *Knipe*, on which plaintiff relies, treated fraud claims based on inadequate warnings as failure to warn claims, finding the claims to be subsumed by the New Jersey products liability act and not separately cognizable.  583 F. Supp. 2d at 618.

where a seller may have knowledge of some weakness in the subject of the sale and fails to disclose it. 'Such nondisclosure does not amount to fraud and is not a conventional tort of any kind.'" *Urman v. S. Boston Sav. Bank*, 674 N.E.2d 1078, 1081 (Mass. 1997); *Tragakis v. Angilly*, No. 05-605C, 2006 WL 2848128, at *4 n.7 (Mass. Super. Ct. Sept. 13, 2006) (noting that in Massachusetts the "rule of nonliability for bare nondisclosure has been stated and followed for many years").

A plaintiff may recover for "half-truths" though, if a defendant provides "fragmentary information" intended to deceive. *Kannavos v. Annino*, 247 N.E.2d 708, 711-12 (Mass. 1969); *Gossels v. Fleet Nat'l Bank*, 876 N.E.2d 872, 881-82 (Mass. App. Ct. 2007), *rev'd on other grounds*, SJC-10186, 2009 WL 606549 (Mass. Mar. 12, 2009). In other words, "[a]lthough there may be no duty imposed upon one party to a transaction to speak for the information of the other . . . if he does speak with reference to a given point of information, voluntarily or at the other's request, he is bound to speak honestly and to divulge all the material facts bearing upon the point that lie within his knowledge." *Kannavos*, 247 N.E.2d at 711.

Plaintiff has no evidence of any "half-truths." Instead, plaintiff's only citation to any evidence that could purportedly be construed as a "half-truth" belies that Mrs. Bulger's prescribers were exposed to any half-truth. In the very deposition excerpt on which plaintiff relies to support his fraudulent omission claim, Michele Meager, a sales representative who called on Dr. Goldman, testified that she was not asked about "Neurontin's association with adverse psychiatric experiences by any doctor [she] detailed," and that she accordingly did not "ever advise any doctor about these adverse effects." McGroder Decl., Ex. 4 at 19:13-20:15. It is thus clear that Ms. Meager did not provide any "half-truth" regarding depression or suicide, or other "fragmentary information intending to deceive." Nor has plaintiff pointed to any evidence

- 14 -

that either of Mrs. Bulger's prescribing physicians received any sort of "half-truth."  *See supra*
II.B.1.(a) (noting that plaintiff lacks evidence that the prescribers even read the Neurontin
package insert).

Lacking evidence of a half-truth, plaintiff relies on allegations of "bare nondisclosure,"
which are clearly insufficient under Massachusetts law.[16]  *Holtzman v. Gen. Motors Corp.*, No.
021368, 2002 WL 1923883 (Mass. Super. Ct. July 2, 2002), a products liability case including
claims of fraudulent nondisclosure, is analogous.  In *Holtzman*,

> The Complaint allege[d] that GM knew or should have known that the jacks were
> dangerous, but nonetheless 'took no steps to inform the public or these individuals
> of the likely failure of these jacks,' and 'actively concealed material facts and
> thereby misled consumers because it failed to describe the aforesaid defectiveness
> and dangerousness of its jacks,' and that this 'conduct constituted
> misrepresentations ...' Plaintiffs are said to have 'justifiably relied upon the
> representations.'

*Id*. at *1.  The court concluded that these allegations were akin to a claim for bare nondisclosure
for which there is no liability in Massachusetts.  Accordingly, the court dismissed the plaintiff's
complaint for failure to state a claim under Rule 12(b)(6).  *Id.* at *1-2.

Plaintiff's claims are strikingly similar to the claims at issue in *Holtzman*.  Here, plaintiff
claims that defendants knew that Neurontin was associated with depression and suicide but
suppressed that information by failing to communicate it to physicians (either through labeling or
sales representatives).  Plaintiff's claims, like those in *Holtzman*, allege fraud based on bare
nondisclosure and accordingly fail as a matter of law.

---

[16] As explained in defendants' motion for summary judgment, defendants had no duty to disclose that Neurontin
increases the risk of, or causes, suicide, as this information was not known to defendants at the time Mrs. Bulger was
prescribed Neurontin. Def. Mem. Supp. Summ. J. at 32 (Doc. 1162).  Moreover, to this day, defendants still have no
duty to disclose that Neurontin causes depression because there is no evidence that Neurontin is even associated
with an increased risk of depression—a fact that plaintiff's experts admit and with which FDA agrees.  McGroder
Decl., Ex. 7 at 98:2-20 (admitting that the incidence of depression was higher in patients taking placebo than
patients taking Neurontin in the combined epilepsy and neuropathic pain clinical trials); McGroder Decl., Ex. 8 at
342:7-12 (same); McGroder Decl., Ex. 9 at ¶¶ 46 ("Throughout my career at FDA, I never concluded that Neurontin
increases the risk of or causes depression or suicidal behavior.  This remains my belief today."), 14-15, 21, 28, 36.

**CONCLUSION**

Summary judgment should be granted on all of plaintiff's claims because he lacks admissible expert testimony on the issue of causation.  In addition, plaintiff has failed to raise a triable issue of fact on both his affirmative fraudulent misrepresentation and fraudulent omission claims.  Finally, plaintiff does not oppose defendants' motion as to his express warranty, strict liability, and consumer protection act claims.  Defendants thus respectfully request that this Court grant their motion for summary judgment.

5127495v.1

Dated: March 12, 2009                          Respectfully submitted,


                                               DAVIS POLK & WARDWELL

                                               By:      /s/ James P. Rouhandeh
                                                        James P. Rouhandeh

                                               450 Lexington Avenue
                                               New York, NY 10017
                                               Tel:  (212) 450-4000

                                                        -and-

                                               SHOOK, HARDY & BACON L.L.P.

                                               By:      /s/ Scott W. Sayler
                                                        Scott W. Sayler

                                               2555 Grand Blvd.
                                               Kansas City, MO 64108-2613
                                               Tel:  (816) 474-6550

                                                        -and-

                                               WHITE & WILLIAMS LLP

                                               By:      /s/ David B. Chaffin
                                                        David B. Chaffin

                                               100 Summer Street, 27th Floor
                                               Boston, MA 02110
                                               Tel:  (617) 748-5200

                                               *Attorneys for Defendants Pfizer Inc. and*
                                               *Warner-Lambert Company LLC*

5127495v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 12, 2009.

/s/ David B. Chaffin
David B. Chaffin
