UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:  NEURONTIN MARKETING,
         SALES PRACTICES AND
         PRODUCTS LIABILITY LITIGATION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

*Smith v. Pfizer Inc., et al.,*
Civil Action No. 1:05-cv-11515-PBS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:  MDL Docket No. 1629
:
:  Master File No. 04-10981
:
: Judge Patti B. Saris
:
: Magistrate Judge Leo T. Sorokin
:
:
:
:
:
:

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Defendants, Pfizer Inc. and Warner-Lambert Company LLC ("defendants"), respectfully submit this reply memorandum in support of their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, on plaintiff's Amended Complaint.

**PRELIMINARY STATEMENT**

Plaintiff alleges six claims for relief in her Amended Complaint: negligence, breach of warranty, strict liability, fraud, consumer protection, and punitive damages. Defendants moved for summary judgment on *all* of plaintiff's claims on the ground that plaintiff has no admissible expert testimony on the essential element of causation for three independent reasons: (1) plaintiff has no proof that Mr. Smith's prescribers relied on the Neurontin package insert, or that different warnings would have changed Mr. Smith's prescribers' decision to prescribe Neurontin to him and thus plaintiff cannot prove that any allegedly inadequate warnings proximately caused Mr. Smith's suicide; (2) plaintiff has no evidence that Mr. Smith ingested Neurontin at any time temporally related to his suicide; and (3) plaintiff has no admissible expert testimony on the issue

of specific causation.[1]   In addition, defendants moved for summary judgment on plaintiff's breach of warranty, fraud, and Tennessee Consumer Protection Act claims on additional, independent grounds.   Plaintiff expressly agrees that summary judgment should be granted on her express warranty and Tennessee Consumer Protection Act claims.  Pl. Opp. at 1.  Plaintiff's admission that she cannot prove these claims is also fatal to her fraud claim, which obviously demands a higher level of proof.

Plaintiff's response fails to raise any basis to avoid summary judgment.  First, plaintiff has no evidence that Mr. Smith's prescribers even reviewed the Neurontin label prior to prescribing Neurontin to Mr. Smith, and plaintiff admits that she has no evidence that Mr. Smith's prescribers would have changed their prescribing decisions had different warnings been given, which is the "dispositive question" in products liability cases such as this one.  Second, plaintiff has no admissible evidence that Mr. Smith ingested Neurontin at any time temporally related to his suicide.  Third, and as defendants' motion to exclude the expert testimony of Dr. Maris and Professor Trimble makes clear (Doc. 1629), plaintiff has no admissible expert testimony that Neurontin caused Mr. Smith's suicide.  Plaintiff's belatedly-submitted expert declarations, which attempt to "patch and repair" significant gaps in the experts' analyses and conclusions, demonstrate as much.[2]

Plaintiff's claim for breach of implied warranty is similarly deficient.  Plaintiff has no evidence that defendants made any implied warranty to Mr. Smith, nor that if such a warranty was made, Mr. Smith relied on it.  Moreover, in a prescription drug case, the prescriber stands in

---

[1] Plaintiff's suggestion that defendants have not moved for summary judgment on her negligence, strict liability, and punitive damages claims, Pl. Opp. at 1, is thus not correct.  Plaintiff does not dispute that causation is an essential element of all of her claims.  Moreover, defendants' motion for summary judgment on plaintiff's fraud claim, if granted, would necessarily extinguish plaintiff's derivative claim for punitive damages.  To avoid any doubt on that issue, defendants reserve the right to move on plaintiff's punitive damages request at an appropriate time (for instance after the Court rules on defendants' dispositive motion on plaintiff's fraud claim).

[2] Defendants filed concurrently herewith a separate Motion to Strike the expert declarations.

the shoes of the patient and plaintiff also lacks evidence that Mr. Smith's prescribers relied on any alleged implied warranty.

Plaintiff's claim for fraud likewise cannot survive summary judgment.  Plaintiff has previously admitted she has no evidence any affirmative misrepresentation was ever made (thus conceding a lack of reliance) and provides no evidence of any affirmative misrepresentation in her response.  Instead, plaintiff improperly turns to a fraud-on-the-market theory—a theory which Tennessee courts have expressly refused to apply in the common law fraud context.  Lacking an affirmative misrepresentation claim, plaintiff attempts to assert a fraudulent "suppression" claim.  This claim is similarly flawed, as plaintiff has no evidence on the essential element of causation.  She has neither proven that Mr. Smith's physicians based their decisions to prescribe Neurontin on information disclosed by the company, let alone information that was not disclosed.  Nor does plaintiff have any proof that the prescribing decisions would have been different had the allegedly omitted information been disclosed.  Instead, plaintiff alleges a pure omission, which is not actionable in Tennessee absent a duty to disclose.  Accordingly, the Court should grant summary judgment on plaintiff's fraud claim.

## LAW AND ARGUMENT

## I.   PLAINTIFF CANNOT ESTABLISH THE ESSENTIAL ELEMENT OF CAUSATION

### A.   PLAINTIFF HAS NO EVIDENCE THAT ANY ALLEGEDLY INADEQUATE WARNINGS PROXIMATELY CAUSED MR. SMITH'S SUICIDE.

Plaintiff does not dispute that all of her claims are premised on an alleged failure to provide adequate warnings about the risks of Neurontin, and that each claim is accordingly subject to the learned intermediary doctrine.  *Compare* Def. Br. at 7-8 *with* Pl. Opp. at 4-5.  Nor does plaintiff contest that, under the learned intermediary doctrine, a plaintiff asserting a failure to warn theory must first prove that the product was defective or unreasonably dangerous by

virtue of a defendant's failure to warn the prescribing physician of a known risk, and then establish that the alleged inadequate warning was the legal and proximate cause of plaintiff's claimed injury.  *See id.*  Notably, it is plaintiff's burden to establish proximate cause; the plaintiff must "trace [her] injury to the specific defect" alleged.  *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000); *Barnes v. Kerr Corp.*, 418 F.3d 583, 590 (6th Cir. 2005) (noting that a plaintiff "must establish . . . that the inadequate labeling proximately caused the claimed injury" under Tennessee law); *Jastrebski v. Smith & Nephew Richards, Inc.*, No 02A01-9803-CV-00068, 1999 WL 144935 (Tenn. Ct. App. Mar. 18, 1999) ("[T]he plaintiff must offer proof to establish that the defect or unreasonably dangerous condition was the cause of plaintiff's claimed injury.").

Plaintiff cannot satisfy her burden of proving proximate cause for at least two reasons. First, she has no evidence that Mr. Smith's prescribing health care providers, Dr. Edward Mackey and Nurse Practitioner Pamela Krancer, relied on the Neurontin package insert in prescribing Neurontin to him.  Second, plaintiff has no evidence that different or additional warnings would have changed Mr. Smith's prescribers' decision to prescribe Neurontin to him.

> **1.** ***Plaintiff has no evidence that Mr. Smith's physicians relied on the Neurontin label in prescribing the medication to him.***

Neither Dr. Mackey nor Nurse Krancer testified that they relied on the Neurontin label in prescribing the medication to Mr. Smith.  Summary judgment is warranted on this basis alone. *See Collins v. Danek Med. Inc.*, No. 96-3314, 95-2542, 1999 WL 33537313, at *10 (W.D. Tenn. May 11, 1999) (granting summary judgment based on lack of proximate cause where there was no evidence that healthcare providers relied on the package insert in prescribing a medication); *Watts v. Sofamor, S.N.C.*, No. 96 3248, 95-2542, 1999 WL 1866407, at *6 (W.D. Tenn. Apr. 19, 1999) (same).

- 4 -

Rather than citing affirmative evidence that the prescribers relied on the Neurontin label, plaintiff rests on speculative testimony raising questions about whether the prescribers were even exposed to the label.  For instance, plaintiff notes that Dr. Mackey testified he "probably" read the Neurontin package insert "a long time" before he prescribed Neurontin to Mr. Smith.  Pl. Opp. at 4.  Plaintiff simultaneously ignores that Dr. Mackey testified that he typically does not re-review prescription drug labeling on any kind of regular basis.  *Id.*; Def. Br. at 9.  Regarding Nurse Krancer, plaintiff admits that she "doesn't usually read the entire package insert," but ignores her testimony that she instead relies on books and "blurbs in journals about new medications."  *Compare* Pl. Opp. at 4 *with* Def. Br. at 9.  This speculative testimony is insufficient to satisfy plaintiff's burden of proving proximate cause.  *See Formella v. Ciba-Geigy Corp.*, 300 N.W.2d 356, 358 (Mich. Ct. App. 1980) (plaintiff failed to satisfy burden of proving proximate cause where doctor admitted he read label in 1965, but did not look at the label thereafter, such that inadequate warning could not have been proximate cause of injury from drug prescribed in 1973).[3]

> ### 2. *Plaintiff has no evidence that different warnings would have changed Mr. Smith's health care providers' decision to prescribe Neurontin to him.*

Plaintiff also has no evidence that additional warnings about suicide would have changed the providers' prescribing decisions.  Plaintiff does not dispute this lack of evidence regarding the providers' prescribing decisions.  Nor could she.  Dr. Mackey testified that he "didn't know" whether he would have still prescribed Neurontin to Mr. Smith in 2004,  McGroder Decl., Ex. 2 at 42:17-43:11, but that if Mr. Smith walked into his office today, he would prescribe Lyrica—a medication that was not available in 2004.  Sayler Decl., Ex. 7 at 92:16-93:2 (Statement of Fact ¶

---

[3] *See also Cupp v. Dixie Cycle Sales, Inc.*, No. 01A01-9401-CV-00492, 1995 WL 247965 (Tenn. Ct. App. Apr. 28, 1995) (citing *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985)) ("[t]estimony of a speculative nature is not evidence, and does not establish proximate cause.").

21). Plaintiff did not even ask Nurse Krancer whether she would have prescribed Neurontin to Mr. Smith had she been given additional warnings and therefore has no affirmative evidence whatsoever as to this issue.

Instead of providing evidence regarding the physicians' prescribing decisions, plaintiff focuses on "treatment" and warnings that the prescribers would have communicated had they been provided additional warnings. For example, plaintiff states that Dr. Mackey "probably" would have changed the way he treated Mr. Smith, including providing warnings about certain side effects, and that Nurse Krancer would have "educated" her patients about potential side effects. *See* Pl. Opp. at 4-5. This evidence is insufficient to satisfy plaintiff's burden of proof on the issue of proximate cause.

When analyzing proximate cause in failure to warn cases, the "dispositive question" is whether additional warnings would have changed the prescribing doctor's decision to prescribe the drug to the patient. *Motus v. Pfizer, Inc.*, 196 F. Supp. 2d 986, 997 (C.D. Cal. 2001), *aff'd,* 358 F.3d 659 (9th Cir. 2004).[4] Testimony that a physician would have (1) changed his treatment of a patient or (2) warned a patient simply does not raise a triable issue of fact on proximate cause because whether the changes in treatment or additional warnings to the patient would have prevented the patient from taking the medication and thus prevented the injury is purely speculative. *Vanderwerf v. SmithKlineBeecham Corp.*, 529 F. Supp. 2d 1294, 1313-14, n.23 (D. Kan. 2008) (holding that testimony that physician would have monitored the patient more closely and warned the patient of risks did not raise triable issue of fact where plaintiff had no evidence

---

[4] *See also Ackermann v. Wyeth Pharms.*, 526 F.3d 203, 208 (5th Cir. 2008) ("the plaintiff must show that a proper warning would have changed the decision of the treating physician, *i.e.*, that but for the inadequate warning, the treating physician would not have used or prescribed the product"); *Hall v. Elkins Sinn, Inc.*, Civ. A. No. 02-0684, 2003 WL 25736053 at *4, n.1 (W.D. La. Sept. 29, 2003) (noting that "plaintiffs will be unable to show, as it is their burden . . . that a proper warning would have changed the prescribing decision of the treating physician")

that, given the additional monitoring and warning, the injury would have been avoided).  As the *Vanderwerf* court noted, in a products liability suicide case against a drug manufacturer, "[s]peculation about how this tragedy might have been avoided is absolutely understandable and perhaps inevitable, but plaintiffs cannot escape summary judgment based on speculation."  *Id*. at 1313-14.

Because plaintiff has no evidence that additional warnings would have changed Mr. Smith's health care providers' decision to prescribe Neurontin to him thereby preventing his suicide, plaintiff cannot satisfy her burden on the essential element of proximate cause, and summary judgment is appropriate on all of plaintiff's claims.  *See Ross v. Sofamor, S.N.C.*, No. 95-2542, 1999 WL 613357 (W.D. Tenn. Mar. 10, 1999) (granting summary judgment because there was no evidence that the manufacturer's failure to warn was the proximate cause of the doctors' decision to use the product); *King*, 37 S.W.3d at 453 (holding that "the plaintiffs' claims in this regard fail because they have failed to establish that, had additional warnings been given, the plaintiffs would not have sustained their injuries").

   **B.    PLAINTIFF HAS NO ADMISSIBLE EVIDENCE THAT MR. SMITH INGESTED NEURONTIN AT ANY TIME TEMPORALLY RELATED TO HIS SUICIDE.**

Plaintiff does not dispute that she bears the burden of proving actual ingestion of Neurontin at a time temporally related to Mr. Smith's suicide to succeed on any of her claims. Instead, plaintiff attempts to retract Dr. Maris' deposition testimony regarding the relationship between Neurontin ingestion and elimination from the body and replace that testimony with a declaration, submitted after the fact, that attempts to backfill the obvious problems in plaintiff's case.  *See* Pl. Opp. at 3 (citing declaration).  In addition, plaintiff claims that she has "non-speculative evidence indicating that Mr. Smith was regularly taking Neurontin during the period

- 7 -

of time temporally related to his suicide," yet plaintiff cites to speculative testimony and inadmissible hearsay. *Id.* at 4.

> ### 1. *Plaintiff's attempt to "patch and repair" Dr. Maris' testimony regarding Neurontin elimination from the human body is improper and insufficient to satisfy her burden of proof.*

Plaintiff's submission of a declaration from Dr. Maris attempting to explain the holes in his deposition testimony after the fact is improper. Defendants have filed a separate motion to strike Dr. Maris' declaration and will not repeat the arguments made there again here.

In addition, the expert testimony plaintiff submits—both from Dr. Maris and Professor Trimble—on the issue of a temporal relationship between the last ingestion of Neurontin and continuing adverse effects is speculative. Professor Trimble testified that "if you have a drug which acts on the brain and influences brain chemistry, you may well have an effect which by far outlasts the effect of the amount of the blood, of what's in the blood," but he never stated what time period Neurontin supposedly affects "brain chemistry" nor provided any scientific support for the notion that Neurontin has continuing effects on brain chemistry. Even in Dr. Maris' belated declaration, he provides no guidance on how long Neurontin allegedly effects the brain's neurotransmitters, nor any support for his claim that Neurontin has a continuing effect. This speculative and scientifically unsupported testimony does not help plaintiff satisfy her burden of proving proximate cause.

> ### 2. *Plaintiff has no non-speculative, admissible evidence that Mr. Smith actually ingested Neurontin.*

Plaintiff relies on three pieces of evidence to attempt to create a triable issue of fact on the issue of ingestion: (1) that Mr. Smith had been given samples of Neurontin; (2) Mrs. Smith's testimony that she "just knew" her husband was taking Neurontin; and (3) Mr. Smith's

statements to various individuals regarding how Neurontin made him feel.  None of this evidence establishes that Mr. Smith ingested Neurontin at any time temporally related to his suicide.

First, that Mr. Smith received samples is not evidence that he in fact ingested them. Plaintiff has produced no evidence that Mr. Smith ever took a single Neurontin sample, a fact her own expert acknowledges.  Instead, plaintiff asks this Court to assume that because Mr. Smith had been given samples, he in fact ingested them.  Not only is this assumption rank speculation, but it is also contrary to the evidence.  When plaintiff produced the Neurontin samples in her possession, none of the samples had been opened, no pills had been pushed through the blister packs and no pills were missing—facts defendants noted, *see* Def. Brief at 7, n.4, and plaintiff failed to refute in her response.

Second, as explained in defendants' motion and undisputed by plaintiff, self-serving evidence on the issue of proximate cause, such as Mrs. Smith's testimony that she "knew" Mr. Smith took his Neurontin—even though she did not witness him take it—because that was "just the way he did things," is insufficient to raise a triable issue of fact.  *See* Def. Br. at 5-7.  Plaintiff cites no authority suggesting that speculative testimony from an interested witness satisfies her burden of proof.

Third, plaintiff relies on various statements that Mr. Smith purportedly made to others about Neurontin, which those individuals attempted to convey after Mr. Smith's death.  Not only is this evidence inadmissible hearsay,[5] but plaintiff has mischaracterized it.  For instance, plaintiff references a letter written by Dr. Wood, Mr. Smith's dentist, in which the doctor attempted to summarize a conversation he had with Mr. Smith at the request of Mr. Smith's daughter after Mr. Smith's death.  Yet, contrary to plaintiff's assertion, the letter does not state

---

[5] *See* Fed. R. Evid. 801 (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").

that Mr. Smith said he was "taking Neurontin" three days before his suicide.  *See* plaintiff's Further Statement of Facts ¶ 7 and defendants reply thereto.  Thus, even if the letter were admissible (which it is not because it is pure hearsay), it is not evidence that Mr. Smith ingested Neurontin three days before his suicide.

At bottom, plaintiff has no non-speculative, admissible evidence that Mr. Smith ingested Neurontin at any time temporally related to his suicide—a necessary prerequisite to recovery on all of her claims.

### C.   PLAINTIFF HAS NO ADMISSIBLE EXPERT TESTIMONY ON THE ISSUE OF SPECIFIC CAUSATION.

Plaintiff does not dispute that lack of expert opinion testimony on causation is a fully dispositive defense.  And, as discussed in defendants' motion to exclude the expert testimony of Dr. Maris and Professor Trimble, plaintiff lacks admissible expert testimony because neither of the experts satisfies the reliability requirements of *Daubert* and Rule 702.  *See* Def. Mot. Exclude (Doc. 1629).  Accordingly, summary judgment should be granted on all of plaintiff's claims.

## II.   PLAINTIFF HAS NOT RAISED A TRIABLE ISSUE OF FACT ON HER IMPLIED WARRANTY CLAIM

Defendants moved for summary judgment on plaintiff's implied warranty claim because: (1) plaintiff has no evidence of reliance; and (2) plaintiff failed to give the required statutory notice of an alleged breach.  *See* Def. Br. at 12-14.

### A.   PLAINTIFF HAS NO EVIDENCE ON THE ELEMENT OF RELIANCE.

Plaintiff has failed to provide any evidence on the essential element of reliance and instead relies on inadmissible hearsay and bare allegations—insufficient at the summary judgment stage in any event—that are unsupported by the actual evidence.  Plaintiff claims that: "there is evidence that Mr. Smith, while he was taking Neurontin, had searched the Internet for information concerning Neurontin and found information that Neurontin was extremely

- 10 -

powerful, with numerous side effects." *See* Pl. Opp. at 7.  Plaintiff then states (without citation to the record), "[a]ccordingly, there is evidence that Mr. Smith relied on information disseminated by Defendants concerning the safety and effectiveness of Neurontin for pain, and continued to take Neurontin to treat his pain based upon his reliance upon such information." *See id.*

Not only has plaintiff improperly relied on bare allegations, but she has failed to point to any alleged communication between Mr. Smith and defendants on which Mr. Smith allegedly relied.  Indeed, that Mr. Smith "found information" on the Internet regarding Neurontin's "numerous side effects" is not evidence that this information was authored by defendants.  It is more likely that Mr. Smith may have stumbled across a lawyer advertisement sponsored by plaintiff's counsel's firm.  Moreover, the alleged communication appears in the after-the-fact letter written by Dr. Wood, attempting to summarize his conversation with Mr. Smith, which as discussed previously, is hearsay and, hence, inadmissible.  In addition, Mr. Smith's physicians, not defendants, selected Neurontin for him and there is no evidence the prescribers relied on any implied warranties—facts plaintiff ignores in her response.  Because plaintiff has no evidence on the issue of reliance, summary judgment is proper.  *See, e.g., Baker v. Promark Prods. West, Inc.*, 692  S.W.2d 844, 849 (Tenn. 1985).

### B.     PLAINTIFF FAILED TO GIVE THE REQUISITE STATUTORY NOTICE.

Plaintiff does not dispute that, under Tennessee law, she must "within a reasonable time after [s]he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *See* Tenn. Code Ann. § 47-2-607(3)(a) (2008).  Nor does plaintiff dispute that she failed to provide any notice to defendants prior to filing suit in federal court. Instead, plaintiff attempts to distinguish *Friedman v. Gerogia Showcase Co.*, 183 S.W.2d 9, 27 (Tenn. Ct. App. 1944), on the grounds that the case: (1) involved a sales contract; and (2) "the

- 11 -

plaintiff did not provide notice until at least two years after the alleged breach, when the pleadings were filed in the case." *See* Pl. Opp. at 7.  Neither of these bases is persuasive.

First, that *Friedman* involved a sales contract, is not unexpected.  A breach of implied warranty claim is governed by Tennessee's Uniform Commercial Code and includes as an element reliance by a buyer on a seller.  *See* Tenn. Code Ann. § 47-2-315 (2008); *Alumax Aluminum Corp. v. Armstrong Ceiling Sys., Inc.*, 744 S.W.2d 907, 910 (Tenn. Ct. App. 1987). Moreover, plaintiff does not dispute that statutory notice is required for breach of implied warranty claims.

Second, *Friedman* is on all fours with this case.  As in *Friedman*, plaintiff here failed to provide any notice of the breach before filing suit.  That the plaintiff in *Friedman* waited two years to file suit, while plaintiff in the instant case waited one year, is not a meaningful distinction given the policy considerations underlying the notice requirement, which include, among other things, affording the seller an opportunity to arm himself for litigation; allowing the seller to close the book on goods which have been sold in the past; and giving the seller immunity against stale claims.  *White and Summers*, Uniform Commercial Code § 11-10 at 421.

It is undisputed that plaintiff provided no notice of any alleged breach of implied warranty prior to filing suit.  Accordingly, plaintiff is barred from pursuing her claim.  *See* Tenn. Code Ann. § 47-2-607(3)(a).[6]

---

[6] *See also Wilcox v. Hillcrest Mem'l Park*, 696 S.W.2d 423, 424 (Tex. Ct. App. 1985) ("It would be untenable to allow a buyer . . . to recover damages for breach of warranty from a remote seller or manufacturer who was never even made aware that the product in question was defective and who, consequently, never had an opportunity to remedy the defect to the buyer's satisfaction before litigation was commenced.").

## III.   PLAINTIFF'S FRAUD CLAIMS ARE DEFICIENT WHETHER COUCHED IN TERMS OF AFFIRMATIVE MISREPRESENTATION OR "SUPPRESSION"

### A.   PLAINTIFF HAS NOT RAISED A TRIABLE ISSUE OF FACT ON HER AFFIRMATIVE FRAUDULENT MISREPRESENTATION CLAIM.

#### 1.   *Plaintiff has no evidence any affirmative misrepresentation was ever made, or that plaintiff's prescribing physicians relied on it.*

Plaintiff concedes that she has no evidence of an affirmative misrepresentation made by defendants to Mr. Smith's prescribing physicians.[7]  This concession comes as no surprise given similar representations at the October 20, 2008 hearing on defendants' motion to dismiss the fraud claim and given the testimony of Mr. Smith's prescribing physicians.  *See* Def. Br. at 14-15.  Plaintiff's admission that she has no evidence of an affirmative misrepresentation is fatal to her fraudulent misrepresentation claim.

This Court has long noted that plaintiff must first plead specific misrepresentations made to Mr. Smith's physicians that caused them to prescribe Neurontin to him.  Indeed, on February 23, 2007, the Court dismissed plaintiff's fraud claim based on her failure to plead fraud with particularity as required by Rule 9(b).  Mem. & Order (Doc. 646).  But the Court gave plaintiff another chance and allowed "plaintiff[] to amend [her] complaint to allege fraud with particularity, including <u>specific misrepresentations that [Mr. Smith's] doctors allegedly relied on</u>"  *Id.* (emphasis added); *see also* Oct. 20, 2008 Hr'g Tr. at 30 ("So I need a fraudulent statement, or you don't meet 9(b).  That's the crux of it.").  Plaintiff still has failed to plead fraud with particularity, admitting that she cannot tie any of the allegedly fraudulent misrepresentations to Mr. Smith's prescribers.  *See* Def. Br. at 14-15.  The failure to even plead

---

[7]  Pl. Opp. at 14 ("Consequently, even <u>in the absence of a specific affirmative misrepresentation by Defendants,</u> Plaintiff raises issues of material facts in dispute as to whether Plaintiff's prescribing medical providers relied upon Defendants' suppression of depression and suicidality information.")  (emphasis added).

with particularity a fraudulent misrepresentation related to Mr. Smith's prescribers requires dismissal of plaintiff's claim.

Moreover, at the summary judgment stage, plaintiff must do more than merely plead specific misrepresentations on which Mr. Smith's prescribers allegedly relied.   Rather, to succeed at the summary judgment stage, plaintiff must prove *inter alia* that an intentional misrepresentation with regard to a material fact was made, and that the plaintiff reasonably relied on the misrepresentation and suffered damages.  *Ross*, 1999 WL 613357 at * 6.

Plaintiff has established neither (1) that a false representation was made nor, (2) that, assuming such a representation was made, Mr. Smith's physicians relied on it in prescribing Neurontin to him. After deposing Mr. Smith's prescribing physicians, plaintiff's counsel admitted he had no evidence that any affirmative misrepresentation was ever made to the prescribers.  *See* Def. Br. at 14, n.8.  It is axiomatic that if an affirmative misrepresentation was not made, the physicians could not have relied on it.  Indeed, Nurse Krancer testified that she does <u>not</u> prescribe drugs based on what a sales representative tells her, but instead educates herself about the medication.  Sayler Decl., Ex. 9 at 12:8-16 (56.1 Statement, ¶ 26).  Plaintiff's failure to establish a false misrepresentation of a material fact on which Mr. Smith's prescribers relied mandates summary judgment on her claim for affirmative fraudulent misrepresentation. *See Ross*, 1999 WL 613357 at *6 (granting summary judgment where plaintiff lacked evidence of reliance).

### 2.    *Plaintiff's fraud-on-the-market theory of reliance is flawed.*

Plaintiff claims that triable issues of fact remain on her fraudulent misrepresentation claim despite admitting she has no evidence any misrepresentation was ever made.  Plaintiff claims that evidence related to the alleged "off-label promotion scheme," the fact that Mr. Smith's prescribers were detailed, and testimony that Mr. Smith's prescribers base prescribing

decisions on communications with other physicians, coupled with testimony that the physicians read journals (albeit Dr. Mackey testified he did not read pain literature), demonstrate that the prescribers "could have" relied on defendants' off-label marketing in prescribing Neurontin to Mr. Smith.  *See* Pl. Opp. at 15-16.  As this Court has made clear countless times, allegations of off-label promotion are not a sufficient basis to plead and prove a fraud claim.

Moreover, as noted in defendant's brief, vague allegations about "off-label" conduct— unconnected to Mr. Smith's doctors—are also invalid because they amount to nothing more than an attempt to circumvent the requirements of a common law fraud claim by resorting to a federal, securities-based, fraud-on-the-market theory.  *See* Def. Br. at 17.  Notably, Tennessee has not even adopted the federal securities law fraud-on-the-market theory, let alone accepted the doctrine in the common law fraud context.  *See Constantine v. Miller Indus., Inc.*, 33 S.W.3d 809, 811 (Tenn. Ct. App. 2000) (noting that Tennessee has not adopted the federal securities law fraud-on-the-market theory); *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 403-04 (6th Cir. 1997) (concluding that the Tennessee Supreme Court, if faced with the issue, would require a showing of actual reliance as a condition of recovery for common law fraud and rejecting a fraud-on-the-market theory).[8]

Plaintiff cites no Tennessee authority suggesting that a fraud-on-the-market theory is a viable basis on which to prove a common law fraud claim.[9]  Indeed, this Court recognized that

---

[8] *See also Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1198 (N.J. 2000) ("Since the Supreme Court accepted fraud on the market in [*Basic Inc. v. Levinson*, 485 U.S. 224 (1998)] . . . no state court with the authority to consider whether *Basic* is persuasive has chosen to apply it to claims arising under its own state's laws."); *Summit Props. Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 561 (5th Cir. 2000)  (noting that "[n]o court has accepted the use of [the fraud-on-the-market theory] outside of the context of securities fraud"), *cert. denied*, 531 U.S. 1132 (2001); *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1363 (11th Cir. 2002) (noting that the Eleventh Circuit has recognized that neither it nor the United States Supreme Court has extended the presumption of reliance outside the context of securities cases because "[t]he securities market presents a wholly different context than a consumer fraud case").

[9] All of plaintiff's legal authority, save a single case, involve sales and marketing or consumer protection act claims, which are distinguishable from a common law fraud claim in a products liability case.  The only products liability

- 15 -

plaintiff's fraud-on-the-market theory has "big problems," Def. Br. at 17.  Plaintiff's attempt to rely on a fraud-on-the-market theory should accordingly be rejected.[10]

**B.    PLAINTIFF HAS NOT RAISED A TRIABLE ISSUE OF FACT ON HER FRAUDULENT OMISSION CLAIM.**

Lacking an affirmative fraudulent misrepresentation claim, plaintiff claims she has raised a triable issue of fact on a fraudulent omission or "suppression" claim.  Plaintiff alleges that defendants failed to disclose information regarding "depression/suicidality" in the Neurontin label (and by failing to send Dear Doctor Letters) and that sales representatives failed to disclose information regarding depression and suicide.  Pl. Opp. at 8.  None of this evidence creates a triable issue of fact on plaintiff's fraudulent omission claim.[11]

---

case involving a common law fraud claim plaintiff cites, *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602 (E.D. Pa. 2008), is distinguishable. First, the *Knipe* court applied New Jersey, not Tennessee, law. New Jersey recognizes the principle of "indirect reliance" in the off-label context, under which the *Knipe* court permitted a claim to proceed because evidence suggested the prescribing physician "might have" been indirectly influenced by fraudulent promotion. *Id.* at 621-22. No such comparable principle is recognized in Tennessee. In fact, Tennessee courts have not adopted the Restatement (Second) of Torts § 310, which provides for "third party fraud." *Carter v. Danek Med., Inc.*, No. CIV. 96-3243-G, 1999 WL 33537317 at *5 (W.D. Tenn. June 3, 1999).

[10] Plaintiff also references the opinions of Charles King, a purported "general causation expert," Pl. Opp. at 18-19, but this evidence likewise fails to establish a causal link between an affirmative misrepresentation made to Mr. Smith's physicians and their decisions to prescribe Neurontin to him. Dr. King admitted that he has done no case-specific analysis and has no case-specific conclusions. McGroder Decl., Ex. 10 at 84:6-14. He has likewise offered no valid economic or statistical basis for concluding that any particular Neurontin prescription was caused by any particular alleged misrepresentation by defendants. *Id.* at 124-26. Thus, Dr. King is not offering any opinion as to whether any of Mr. Smith's Neurontin prescriptions were caused by any misrepresentations. Indeed, he made no effort to learn and is not familiar with any of the facts of the *Smith* case. *Id.* at 83:16-23; 85:24-86:4.

[11] Plaintiff also includes a laundry list of information that she claims shows defendants knew Neurontin was associated with "depression/suicidality." *See* Pl. Opp. at 11-13  This is the same information that plaintiff relied on as "red flags" to support her general causation case. As discussed in detail in the general causation *Daubert* briefing, this evidence does not establish an association between Neurontin and suicide or depression, let alone that Neurontin causes such events. Because this issue has been fully briefed, defendants will not repeat the numerous flaws in plaintiff's reliance on this evidence here and instead incorporate by reference their response to this evidence in the general causation *Daubert* briefing. *See* Def. Mem. Supp. Mot. Exclude (Doc. 1158); Def. Reply in Supp. Mot. Exclude (Doc. 1239). Moreover, in contravention of Local Rule 56.1, plaintiff does not include any of this information in her Separate Statement where she purports to set forth the undisputed facts on which she relies. Finally, as discussed *infra* II.A.1., because plaintiff cannot establish that Mr. Smith's physicians based their decision to prescribe Neurontin on any information from defendants (disclosed or not disclosed), or that the prescribing decisions would have been different if they had received representations that plaintiff believes would be proper, this information is irrelevant to plaintiff's fraudulent omission claim.

### 1.    *Plaintiff lacks evidence on the essential element of causation.*

Whether couched in terms of affirmative misrepresentation or fraudulent omission, plaintiff must produce evidence that Mr. Smith's prescribers relied on information that was disclosed or that the allegedly omitted information would have affected the prescribing decision. *Ross*, 1999 WL 613357, at *6 (requiring evidence of reliance on information disclosed or not disclosed).   In other words, a plaintiff must show a causal relationship between the allegedly suppressed information and the plaintiff's injuries.   *See id.* (noting that plaintiff failed to show that any representations made or not made about a medical device "proximately caused plaintiff's injury"); *Cf. Garrett v. Mazda Motors of Am.*, 844 S.W.2d 178 (Tenn. Ct. App. 1992) (affirming judgment in favor of plaintiff because *inter alia* a causal connection existed between the alleged concealment and plaintiff's injury).

At the most fundamental level, plaintiff lacks evidence of a causal connection between defendants' alleged nondisclosure and plaintiff's injury.   First, plaintiff has no evidence that Mr. Smith's physicians based their decision to prescribe Neurontin to him on any information from defendants.[12]   As noted above, plaintiff has failed to produce evidence that Mr. Smith's providers even reviewed the Neurontin label prior to prescribing Neurontin to Mr. Smith, let alone that the physicians relied on it for this purpose.   *See supra* I.A.1.   In addition, Nurse Krancer testified that she does <u>not</u> prescribe drugs based on what a sales representative tells her.   Sayler Decl., Ex. 9 at 12:8-16 (56.1 Statement, ¶ 26).

Second, plaintiff lacks evidence that, had defendants disclosed the allegedly omitted information (the alleged risk of depression and suicide) either in the label, or in a visit by a

---

[12]   Plaintiff includes allegations about Dr. McCombs, presumably in support of her fraudulent omission claim. However, as set forth in defendants' motion for summary judgment, Def. Br. at 9, n.6, Dr. McCombs prescribed Neurontin for Mr. Smith in 2003, and it is undisputed that Mr. Smith did not fill or take the Neurontin prescribed at this time.

territory representative, Mr. Smith's physicians' prescribing decisions would have changed. In fact, Dr. Mackey testified that he "didn't know" whether he would have prescribed Neurontin to Mr. Smith if he had the known that Neurontin increases the risk of depression and suicide. McGroder Decl., Ex. 2 at 42:17-43:11. Moreover, as discussed above, plaintiff did not even ask Nurse Krancer if she would have prescribed Neurontin if she had been informed about an alleged increased risk of depression and suicide.

Instead of coming forward with evidence of a causal connection between allegedly omitted information and Mr. Smith's injury, plaintiff relies on a laundry list of information she claims Mr. Smith's prescribers "wanted to know" in prescribing the medication. *See* Pl. Opp. at 14. But testimony that the prescribers wanted to know additional information does not satisfy plaintiff's burden of proving causation at the summary judgment stage. *See Nix v. SmithKline Beecham Corp.*, No. CV-06-43-PHX-SMM, 2007 WL 2526402, at *3 (D. Ariz. Sept. 5, 2007). In *Nix*, much like the case at bar, the prescriber testified that he would have liked to have known more about deaths associated with the medication Serevent. *Id.* The court found that "merely raising the possibility that [the prescriber] might have acted differently is not enough to satisfy Plaintiffs' burden of proof on causation" because plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Because plaintiff has no evidence that Mr. Smith's physicians based their decision to prescribe Neurontin on incomplete information, or that had such information been disclosed, it would have affected the prescribers' decisions, she cannot establish the essential element of causation. She has no evidence that any purported omission caused Mr. Smith's suicide, and summary judgment is therefore proper. *See Ross*, 1999 WL 613357, at *6 (granting summary

- 18 -

judgment because plaintiff had no evidence of reliance and also noting that plaintiff likewise failed her burden of proving proximate cause).

2.       *Plaintiff's suggestion that causation may be presumed is misplaced.*

In a last ditch attempt to save her fraudulent omission claim, plaintiff asks the Court to presume causation (*i.e.*, that Mr. Smith's prescribers would have heeded an adequate warning), on the basis of the heeding presumption applicable in the failure to warn context. *See* Pl. Opp. at 14-15. In particular, plaintiff relies on the heeding presumption in Comment j of Section 402A of the Restatement (Second) of Torts.[13] Plaintiff cites no Tennessee authority, however, applying the heeding presumption in the context of a strict liability failure to warn claim. Given that Tennessee courts have not even applied the heeding presumption in Comment j to failure to warn claims, the Court should reject plaintiff's reliance on the presumption in the context of her fraud claim.[14]

---

[13] *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir. 1992) on which plaintiff relies likewise provides no support for the contention that causation may be presumed in the context of a fraudulent omission claim. Rather, this court's discussion of Comment j was solely in the context of a strict liability claim for inadequate warning. *Id.* at 812-14. Moreover, the court rejected plaintiff's "contention that causation is presumed, given an inadequate warning, in the context of an unavoidable risk." *Id.* at 814.

[14] Plaintiff's suggestion that causation on her fraud claim may be presumed on the basis of Comment j demonstrates a fundamental misunderstanding of the difference between a failure to warn claim based on strict liability and a common law fraudulent suppression claim. As the Court has noted, a failure to warn and a fraud claim are "two different causes of action," subject to different standards. Oct. 20, 2008 Hr'g Tr. at 19. Indeed, the Court noted that it is "harder to prove fraud" than failure to warn. *Id.*

Moreover, Section 402A deals with strict products liability, not fraud. *See* Section 402A Restatement (Second) of Torts, Comment a ("This Section states a special rule applicable to sellers of products. The rule is one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product."). And Comment j to Section 402A discusses strict liability <u>failure to warn claims</u>, providing that a seller may give an adequate warning to prevent a product from being unreasonably dangerous, and hence, subjecting the manufacturer to strict liability. Restatement Second of Torts § 402A, Comment j. The Comment goes on to provide that "[w]here a warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." *Id.* Plaintiff has not cited a single Tennessee state or federal case (or any other authority for that matter) holding that Comment j applies to common law fraudulent omission claims.

**3.** *Plaintiff relies on a mere failure to disclose, which is not actionable absent a duty to disclose.*

In addition to her failure to prove causation, plaintiff cannot make out a fraud claim based on a pure omission because she cannot establish a duty to disclose. Tennessee courts have recognized that in the absence of a special relationship (such as a fiduciary relationship) giving rise to a duty to disclose, fraud by concealment or suppression of the truth requires "something more than mere silence, or a mere failure to disclose known facts . . . . Concealment in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act or intention." *J.O. House v. J.K. Edmondson*, No. W2005-00092-COA-R3-CV, 2006 WL 1328810 (Tenn. Ct. App. May 16, 2006) (quoting *Patten v. Standard Oil Co. of La.*, 55 S.W.2d 759, 761 (Tenn. 1933)).

Plaintiff has no evidence that defendants "with[eld] information asked for, or ma[de] use of some device to mislead," causing Mr. Smith's physicians to prescribe Neurontin to him. Instead, plaintiff relies on a "mere failure to disclose" which is not actionable absent a special duty.[15] Accordingly, plaintiff's claim based on defendants' alleged failure to disclose facts fails as a matter of law.

## CONCLUSION

Summary judgment should be granted on all of plaintiff's claims because she lacks necessary evidence on the essential element of causation. In addition, plaintiff has failed to raise

---

[15] As explained in defendants' motion for summary judgment, defendants had no duty to disclose that Neurontin increases the risk of, or causes, suicide, as this information was not known to defendants at the time Mr. Smith was prescribed Neurontin. Def. Mem. Supp. Summ. J. at 32 (Doc. 1162). Moreover, to this day, defendants still have no duty to disclose that Neurontin causes depression because there is no evidence that Neurontin is even associated with an increased risk of depression—a fact that plaintiff's experts admit and with which FDA agrees. McGroder Decl., Ex. 1 at 98:2-20 (admitting that the incidence of depression was higher in patients taking placebo than patients taking Neurontin in the combined epilepsy and neuropathic pain clinical trials); McGroder Decl., Ex. 11 at 342:7-12 (same); McGroder Decl., Ex. 12 at ¶¶ 46 ("Throughout my career at FDA, I never concluded that Neurontin increases the risk of or causes depression or suicidal behavior. This remains my belief today."), 14-15, 21, 28, 36.

a triable issue of fact on her claims for breach of implied warranty and fraud, including both her affirmative fraudulent misrepresentation and fraudulent omission claims.  Finally, plaintiff does not oppose defendants' motion as to her express warranty and Tennessee Consumer Protection Act claims.  Defendants thus respectfully request that this Court grant their motion for summary judgment.

Dated: March 12, 2009                    Respectfully submitted,


DAVIS POLK & WARDWELL

By:      /s/ James P. Rouhandeh
         James P. Rouhandeh

450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

         -and-

SHOOK, HARDY & BACON L.L.P.

By:      /s/ Scott W. Sayler
         Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel: (816) 474-6550

         -and-

WHITE & WILLIAMS

By:      /s/ David B. Chafffin
         David B. Chaffin

100 Summer Street, 27th Floor
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company LLC*

5127283v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 12, 2009.

/s/David B. Chaffin
David B. Chaffin

5127283v.1