UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------ x
In re: NEURONTIN MARKETING,
SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION
------------------------------------------------ x

THIS DOCUMENT RELATES TO:

*Bulger v. Pfizer Inc., et al.*, 1:07-cv-11426-PBS
*Smith v. Pfizer Inc., et al.*, 1:05-cv-11515-PBS

------------------------------------------------ x

: MDL Docket No. 1629
:
: Master File No. 04-10981
:
: Judge Patti B. Saris
:
: Magistrate Judge Leo T. Sorokin

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE UNTIMELY SUPPLEMENTAL DECLARATIONS OF STEFAN P. KRUSZEWSKI AND RONALD W. MARIS

Defendants, Pfizer Inc. and Warner-Lambert Company LLC ("defendants"), respectfully submit this memorandum in support of their motion to strike the declarations of Stefan P. Kruszewski and Ronald W. Maris filed in support of the responses to defendants' motions for summary judgment in the *Smith* and *Bulger* cases.

In their declarations, Drs. Kruszewski and Maris contradict their expert reports and the testimony they gave during their depositions. These reversals of field are unavailing, because summary judgment should be granted even if the newly-minted positions were to be considered. Moreover, the declarations should be stricken because the federal rules, as confirmed in this Circuit, do not permit attempts to avoid summary judgment through untimely modifications to expert opinions and mandate that such declarations be stricken.

1

## I. KRUSZEWSKI AND MARIS' UNTIMELY DECLARATIONS ARE AN IMPROPER ATTEMPT TO CORRECT DEFICIENCIES IN THEIR PREVIOUS EXPERT REPORTS AND DEPOSITION TESTIMONY

During the depositions of plaintiffs' experts, Dr. Stefan P. Kruszewski and Ronald W. Maris, and in Defendants' Motion to Exclude the Specific Causation Testimony of Maris and Kruszewski (Doc. 1648), defendants revealed obvious deficiencies in the experts' methodologies. For instance, defendants demonstrated that the experts failed to consider and rule out alternative causes of the decedents' suicides and based their opinions on nothing more than temporality. Now, plaintiffs seek to correct these deficiencies through untimely declarations that attempt to correct deficiencies in, and fundamentally recast, their expert reports and deposition testimony. *See* Docs. 1669 and 1673 (Maris declarations) and Doc. 1670 (Kruszewski declaration).

The federal courts are clear that untimely production of new analyses and opinions cannot be used to fix problems in initial reports and contradict expert testimony. *See, e.g., Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997) ("District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case.").[1] Nor do courts permit plaintiffs to rebut a summary judgment motion by relying on an expert affidavit that differs from an earlier Rule 26 report. *Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 603 (S.D. Tex. 2001) ("A subsequent expert affidavit submitted to rebut a summary judgment motion may be excluded if it differs from an earlier Rule 26 report."). Indeed, courts routinely strike expert declarations filed in opposition to summary judgment that contain new opinions not disclosed in a Rule 26 report or that contradict deposition testimony. *See, e.g., Baker v. Indian Prairie Cmty. Unit*, No. 96-C-3927, 1999 WL

---

[1] *See also Beller v. United States*, 221 F.R.D. 689, 691-95 (D. N.M. 2003) (supplemental reports cannot be used to buttress opinions or "shore up problems" in opinions contained in initial reports).

2

988799, at *2-*3 (N.D. Ill. Oct. 27, 1999) ("The Court will not allow [Plaintiffs] to ambush Defendants with new expert testimony after the expert disclosure deadline and after they filed for summary judgment.").[2]  To allow a plaintiff to submit new untimely and contradictory expert opinions after the close of discovery in an attempt to defeat summary judgment makes a mockery of the summary judgment process.  *See Biechell v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

The Kruszewski and Maris declarations are not only offered out of time, but are a classic attempt to "shore up problems" contained in their initial reports and depositions, and to try to re-write the record.  Plaintiffs' expert reports in *Smith* and *Bulger* were due on August 7, 2008.  *See* Discovery Order No. 26 (Doc. 1337).  Drs. Kruszewski and Maris were then deposed on their opinions, including those set forth in the reports in the *Smith* case on September 29-October 1, 2008 (Maris) and in the *Bulger* case on October 20 and 22, 2008 (Maris) and October 15-16, 2008. (Kruszewski).  Notably, Dr. Maris showed up at his deposition with a new report on general causation and additional case-specific opinions—none of which had previously been disclosed.  *See* Def. Mot. Exclude at 13-14 (Doc. 1648).  In addition, Dr. Maris re-wrote portions of his report throughout the deposition to make corrections based on the cross-examination.  Apparently still not satisfied with these opinions, Drs. Kruszewski and Maris have now drafted declarations containing additional and different opinions, which plaintiffs produced for the very

---

[2] *See also Penland v. BIC Corp.*, 796 F. Supp. 877, 881 (W.D.N.C. 1992) (striking expert declarations filed in opposition to summary judgment because they "contained purported expert opinion not previously disclosed . . . as required by Federal Rules of Civil Procedure"); *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532 (7th Cir. 1999) ("[A] plaintiff cannot create an issue of material fact merely by manufacturing a conflict in his own testimony by submitting an affidavit that contradicts an earlier deposition and, in turn, defeat a defendant's motion for summary judgment.") (internal citations omitted).

first time when they served their responses to defendants' summary judgment motions. These declarations—served more than 6 months after plaintiffs' experts' Rule 26 reports were due and well after defendants filed their case-specific dispositive motions—are clearly untimely and should be disallowed on this basis alone.

The declarations of Drs. Maris and Kruszewski also directly contradict their expert reports and deposition testimony, and are offered in a last ditch attempt to patch and repair obvious deficiencies in their methodologies and opinions which defendants moved to exclude as unreliable. For instance, Dr. Maris testified under oath regarding the differential diagnosis methodology that:

> First of all, I don't have the same model that you are assuming, which is the differential diagnosis model, where you rule out alternatives.
>
> My theory is, as you know, is that I rule them in, and I talk about them actually contributing to make her part of a vulnerable minority of patients.
>
> . . .
>
> And that by ruling them in, then Neurontin becomes an additional substantive proximate risk factor, not the only factor.
>
> <u>So I am not ruling these things out. I never tried to rule them out</u>.
>
> I'm saying that there was a combination of effects and risk factors that made her suicidal, and which Neurontin was one of them.

McGroder Decl., Ex. 1 at 1253:4-23 (emphasis added). Yet, in his newly-submitted declaration, Dr. Maris directly contradicts his sworn deposition testimony, stating "The Defense has totally mischaracterized my theory of suicide as I have ruled in and rule[d] out certain risk factors. For example, <u>I both "rule in" and "rule out" non-Neurontin suicide risk factors</u>." Maris *Smith* Decl., at 3 (emphasis added) (Doc. 1673); Maris *Bulger* Decl., at 3 (emphasis added) (Doc. 1669).

Dr. Kruszewski's declaration is no different. In his expert report, Dr. Kruszewski purports to list Susan Bulger's suicide risk factors in an effort to determine what he believes was

4

the substantial contributing factor in her death, never once mentioning suicide attempt as a possible factor:

> I examined the issues that increased Mrs. Bulger's risk of suicide: her history of purported emotional trauma as a youngster, absent or negative parenting, foster care, placement of her son in foster care, substance abuse, rheumatoid arthritis, other medical problems, chronic pain, marital problems, financial problems; depression, anxiety and posttraumatic stress; mixed reports, including previous specific adverse reports from the use of Neurontin and the re-prescription and continuing use of Neurontin in a patient with a psychiatric history . . . . After careful review and consideration, I am able to conclude that Mrs. Bulger had many risks for suicide and many protective features against suicide, but that she was one of the susceptible minority of individuals (particularly, but not exclusively, because of her history of documented premorbid adverse effects from Neurontin and the documented ability of Neurontin to precipitate suicidal thinking and suicidal behaviors in certain individuals) where Neurontin was a significant contributing factor in her suicide. I am able to conclude that Mrs. Bulger's ingestion of Neurontin was a substantial contributing factor to her suicidal behavior and completed suicide.

McGroder Decl., Ex. 2 at 12. In Dr. Kruszewski's newly-submitted declaration, however, he attempts to re-write the record, now stating that he "considered these [suicide] attempts in [his] estimation of the risk factors for suicide." Kruszewski Decl. at 28-29 (Doc. 1670). But it gets worse. Dr. Kruszewski not only tries to correct his failure to consider Mrs. Bulger's prior suicide attempts, but attempts for the first time to rule them out as a possible explanation of her suicide based on a new legal theory and new evidence. He reasons that "the fact that Mrs. Bulger did not attempt to hurt herself in the period from 1998-2004 is significant, because her risk would have been much lower in 2004 than it was in 1998-2000" based on a paper published in the British Medical Journal, which he never cited in his expert report or mentioned during his deposition in this case. Kruszewski Decl. at 2, 29 (Doc. 1670).

Plaintiffs' experts' attempt to change the summary judgment record with new and contradictory statements about their methodologies and opinions is a transparent and improper attempt to backfill and patch and repair the obvious flaws in their methodologies that warrants

5

exclusion, particularly since it comes so late.  Such gamesmanship should not be allowed.  *See Phillips v. Emerson Electric Co.*, Civ. No. 02-179-P-C, 2003 WL 21011349, at *4 (D. Me. May 5, 2003) (striking plaintiff's new expert opinions: "it is not permissible for Plaintiff to interject new expert opinions . . . in opposition to a summary judgment motion when Plaintiff had an obligation to provide these opinions in the context of discovery, prior to the summary judgment deadline . . . .").

## II. EXCLUSION OF PLAINTIFFS' EXPERTS' IMPROPER AND UNTIMELY DECLARATIONS IS MANDATORY UNDER FEDERAL RULES OF CIVIL PROCEDURE 26 AND 37.

The First Circuit has held that the directives of Rule 26 are mandatory, as the Rule "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule." *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998).  "Rule 37(c)(1) enforces Rule 26(a) by providing that '[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence . . . any witness or information not so disclosed.'" *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) (quoting Fed. R. Civ. P. 37(c)(1)).  Under Rule 37(c)(2), if a party fails to supplement an expert's opinion under Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion."  "This is a 'self-executing sanction for failure to make a disclosure required by Rule 26(a) . . . .'" *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29, 33 (1st Cir. 2001) (quoting Fed. R. Civ. P. 37, advisory committee notes).  Thus, "the required sanction in the ordinary case is mandatory preclusion" of the undisclosed opinions. *Klonoski*, 156 F.3d at 269.[3]

---

[3] *See also Samos Imex Corp. v. Nextel Co.*, 194 F.3d 301, 305 (1st Cir. 1999) (citing Rule 37(c) for the proposition that "as amended, the civil procedure rules make clear that exclusion of evidence [such as an expert's testimony] is a standard sanction for a violation of the duty of disclosure under Rule 26(a)"); *Sears Roebuck & Co. v. Goldstone & Sudalter*, 128 F.3d 10, 18 n.7 (1st Cir. 1997) (affirming the district court's exclusion of expert testimony under Rule

6

The First Circuit has explained that "expert preclusion order[s] . . . fall[] in the heartland of case management decisions – the area where a trial judge has the remorseless responsibility, evenhandedly and efficiently, to govern, monitor, and police the progress of an endless line of cases through court." *Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 191 (1st Cir. 2005). In *Primus v. United States*, the court stated that "[t]he adoption of Rule 37(c)(1) in 1993 gave teeth to a significantly broadened duty to comply with case management orders." 389 F.3d 231, 234 (1st Cir. 2004). Likewise, the court has explained that

> [o]ur view of the effect of this rule is well stated in *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998), where we declared that it 'clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches . . . , and the required sanction in the ordinary case is mandatory preclusion.'

*Gagnon*, 437 F.3d at 191.

These untimely declarations are neither substantially justified nor harmless. To the contrary, admission of the declarations would substantially prejudice defendants, who drafted their motions to exclude based on the record as it existed at the time the motion was filed. Defendants could not have anticipated that plaintiffs' experts would submit new declarations attempting to change their opinions and their methodologies after the fact. Nor should defendants be expected to anticipate eleventh hour attempts to rewrite the record. "The purpose of the expert disclosure rules is 'to facilitate a 'fair contest with the basic issues and facts disclosed to the fullest practical extent.'" *Poulis-Minott*, 388 F.3d at 358 (quoting *Thibeault v. Square D. Co.*, 960 F.2d 239, 244 (1st Cir. 1992)). Thus, Rules 26(a) and 37(c)(1) "seek to prevent the unfair tactical advantage that can be gained" by failing to fully disclose an expert's opinions. *Id.* Certainly plaintiffs have attempted to gain a tactical advantage by failing to

---

37(c) because the proffering party failed to disclose the expert's identity in the beginning of the litigation); *Thibeault v. Square D. Co.*, 960 F.2d 239, 245 (1st Cir. 1992) (affirming the trial court's preclusion at trial of plaintiff's expert testimony for failure to supplement interrogatories concerning expert's proposed testimony).

7

disclose their experts' new and untimely opinions until after defendants' motions for summary judgment were filed. Accordingly, the Court should strike the declarations under Rule 37.

### III. PLAINTIFFS' EXPERT DECLARATIONS WERE FILED IN AN ATTEMPT TO CIRCUMVENT THE COURT'S PAGE LIMITATIONS

Local Rules of this Court specifically provide a 20-page limit on briefs. *See* Local Rule 7.1.[4] Notwithstanding, plaintiffs filed the declarations of Kruszewski and Maris, totaling 39 pages. The declarations are nothing but a blatant attempt to circumvent the limitations imposed by Local Rule 7.1 and should be separately stricken on this basis.

In addition to improperly offering new, 180-degree different opinions, the declarations purport to offer additional legal analysis and critique arguments in defendants' summary judgment motion. Indeed, Dr. Kruszewski summarizes the bases on which he believes defendants moved to exclude his opinions, and then proceeds to respond to defendants' summary judgment motion in line-by-line fashion, pointing out alleged "errors" in defendants' brief, in essence offering legal argument. *See generally* Kruszewski Decl. Dr. Maris similarly attempts to respond to defendants' arguments in the motion, suggesting for instance that defendants' motion to exclude his opinion about "general causation is totally unfounded," even though general causation expert reports were due in October 2007, more than eleven months before Dr. Maris came on the scene with a brand new general causation "model."

Plaintiffs' submission of additional "argument" from their experts that attempt to elucidate supposed "errors" in defendants' legal briefing is a transparent effort by plaintiffs to exceed the page limitation by three-fold, and should be rejected on this basis as well. Indeed, such attempts have been disfavored by this Court in this case in the past. *See* Electronic Order

---

[4] "*Length of Memoranda.* Memoranda supporting or opposing allowance of motions shall not, without leave of court, exceed twenty (20) pages, double-spaced." Local Rule 7.1(b)(4).

8

3365902v1

Denying Motion for Leave to File an Oversized Reply Memorandum of Law in Support of Motion for Class Certification (Feb. 27, 2007). The Court should similarly strike the declarations of Drs. Kruszewski and Maris as an improper attempt to circumvent the Local Rules of this Court.

Dated: March 12, 2009                      Respectfully submitted,

                                          DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
       James P. Rouhandeh

450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

      -and-

SHOOK, HARDY & BACON L.L.P.

By:   /s/ Scott W. Sayler
       Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel: (816) 474-6550

      -and-

WHITE & WILLIAMS

By:   /s/ David B. Chaffin
       David B. Chaffin

100 Summer Street, 27th Floor
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company LLC*

## **CERTIFICATE OF SERVICE**

 I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 12, 2009.

               /s/ David B. Chaffin
               David B. Chaffin