UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------------------------------x
:   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                           :
       SALES PRACTICES AND                                  :   Master File No. 04-10981
       PRODUCTS LIABILITY LITIGATION             :
:   Judge Patti B. Saris
----------------------------------------------------------------x
:   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                           :
:
*Bulger v. Pfizer Inc.*, 1:07-11426-PBS                  :
:
----------------------------------------------------------------x

**PLAINTIFF'S SUR-REPLY MEMORANDUM IN FURTHER
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ronald J. Bulger, Sr., respectfully submits this sur-reply memorandum in further opposition to the motion for summary judgment by Defendants Pfizer Inc. and Warner-Lambert.

**I.  PLAINTIFF HAS SUFFICIENT ADMISSIBLE EVIDENCE ON THE ISSUE OF SPECIFIC CAUSATION**

Plaintiff respectfully refers the Court to the arguments set forth in Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, ECF Doc. # 1674 at 3-4, in Plaintiff's Memorandum in Opposition to Defendants' Motion to Exclude Plaintiff's Experts, Dr. Maris and Dr. Kruszewski, ECF Doc. # 1667, and in Plaintiff's Sur-Reply Memorandum in Further Opposition to Defendants' Motion to Exclude Plaintiff's Experts, filed herewith.

**II. WHETHER BECAUSE OF DEFENDANTS' SUPPRESSION OF DEPRESSION/-SUICIDALITY INFORMATION, OR BECAUSE OF DEFENDANTS' AFFIRMATIVE MISREPRESENTATIONS, PLAINTIFF HAS RAISED TRIABLE ISSUES OF FACT REGARDING DEFENDANTS' FRAUD**

    **A. Defendants Have Failed to Rebut Plaintiff's Argument That Because of Defendants' Acts of Suppression, Plaintiff Cannot Offer Evidence of Affirmative Misrepresentations or Reliance.**

In Plaintiff's earlier Memorandum, Plaintiff fully explained why, because of Defendant's suppression of important information concerning Neurontin and Suicidality, Plaintiff cannot offer evidence of an affirmative misrepresentation made by Defendants to Mrs. Bulger's prescribing physicians, or evidence that such prescribing physicians relied on it:

> In the absence of a specific affirmative misrepresentation by Defendants, Plaintiff raises issues of material facts in dispute as to whether Plaintiff's physicians relied upon Defendants' <u>suppression</u> of depression and suicidality information. Because the concept of suppression involves the omission of an affirmative representation, it is axiomatic that Plaintiffs cannot point to one. Indeed, neither Ms. Bulger nor her prescribers had the benefit of depression/suicidality information on which to rely, because Defendants suppressed or concealed such information in the first place.

Pl.'s Mem. Opp. at 11, ECF Doc. # 1674.

In their Reply Memorandum, Defendants merely reiterate the argument made in the initial moving Memorandum, but do not attempt to rebut the logic of Plaintiff's argument repeated above, *see* Defs.' Reply Mem. at 3-5, although Defendants do address the issue of suppression later in their Memorandum in arguing that Plaintiff has not raised a triable issue of fact on his fraudulent "omission" claim. *See* Defs.' Reply Mem. at 7.

    **B. Plaintiff Is Not Alleging a Securities-Based Fraud on the Market Argument to Support Her Theory of Reliance**

Defendants misconstrue Plaintiff's theory of reliance in arguing that Plaintiff's theory is allegedly based upon a federal, securities-based, fraud-on-the-market theory, and that this theory is flawed and should be rejected. Defs.' Reply Mem. at 5-7.

Plaintiff did not base his reliance on a securities-based fraud on the market theory. That is Defendants' characterization of Plaintiff's theory. Plaintiff did, however, base his theory of reliance in part on the opinion of his marketing expert, Charles King III, Ph.D., who explained in his expert report how Defendants' extensive marketing of Neurontin for off-label uses influenced healthcare providers, such as Mrs. Bulger's medical prescribers, and how suppression of negative or adverse information about Neurontin would have affected their prescribing habits, even in the absence of a specific affirmative misrepresentation. *See* Pl.'s Mem. Opp. at 15-16.

Defendants attempt to dismiss Dr. King's opinion on the grounds that he is not offering any specific opinion as to whether any of Mrs. Bulger's Neurontin prescriptions were caused by any misrepresentation. *See* Defs.' Reply Mem. at 7 n.6. However, the effect of Defendants' suppression is such that, as Dr. King opined:

> First, **a doctor who did not have direct contact with Pfizer most likely was influenced in his prescribing habits by one who did.** Second, all, or substantively all, doctors were indirectly affected by Pfizer's **suppression of negative or adverse information about Neurontin that would have affected their prescribing habits**.  [Emphasis added.]

Pl.'s Mem. Opp. at 19. Thus, Plaintiff need not offer an expert opinion specifically as to whether any of Mrs. Bulger's prescriptions were caused by any misrepresentation.

### C. Plaintiff Has Raised a Triable Issue of Fact on His Fraudulent <u>Suppression</u> <u>Claim</u>.[1]

---

[1] At the outset, Defendants argue that, "Plaintiff also includes a laundry list of information he claims shows defendants knew Neurontin was associated with 'depression/suicidality.' See Pl. Opp. at 8-10." Defs.' Reply Mem. at 7 n.7, ECF Doc. # 1708. Defendants also assert that, "Moreover, in contravention of Local Rule 56.1, plaintiff does not include any of this information in his separate Statement where he purports to set forth the undisputed facts on which she relies." Id. at. 16. However, in his Memorandum in Opposition at 7-10, ECF Doc. # 1674, Plaintiff did specifically refer to supporting documentation immediately each of these allegations. Thus, Defendants are merely faulting Plaintiff for not having performed the simple word processing task of copying and pasting each of these allegations with references to supporting documentation, from Plaintiff's Memorandum in Opposition, to Plaintiff's Local Rule 56.1 Statement. Defendants do not and cannot argue that they had no opportunity to address Plaintiff's further allegations and are prejudiced by this alleged contravention of Local Rule 56.1. In any event, Defendants admit that this issue has been fully briefed in the general causation Daubert briefing. Defs.' Reply Mem. at 7, n.7.

1. **There is sufficient evidence on the element of causation.**

In *Forst v. SmithKline Beecham Corp.*, 2009 U.S. Dist. LEXIS 19415 (E.D. Wis. Mar. 11, 2009), the court recently explained:

> Though GSK made no direct representations to the plaintiffs, the plaintiffs based their decisions regarding Paxil on the information and advice of Dr. Todd. (G. Forst Dep., at 268:13-15). This information, in turn, was based upon GSK representations. Therefore, a genuine issue of material fact exists regarding whether Dr. Todd and the plaintiffs relied upon GSK's alleged misrepresentations.

*Id.* at *29.

Similarly, here, there is no question that Mrs. Bulger based her decision regarding Neurontin at least in part on the information and advice of her medical providers. To the extent that Defendants not merely omitted, but suppressed important information concerning Neurontin and suicidality that should have been provided to Mrs. Bulger's medical providers, and that Mrs. Bulger relied on the advice of her medical providers in taking the Neurontin, the information suppressed by Defendants so as not to be accessible to Mrs. Smith's medical providers may also be deemed to have been suppressed as to Mrs. Bulger.

---

Plaintiff is filing, as an exhibit to the Sur-Reply Declaration of Andrew G. Finkelstein, Esq., a [Proposed] Amended Plaintiff's Responses to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts and Plaintiffs' Further Statement of Material Facts, adding these further allegations with appropriate references to documentation supporting each allegation, as previously set forth in Plaintiff's earlier Memorandum, and with such documentation filed as exhibits to the Finkelstein Sur-Reply Declaration, pursuant to Local Rule 56.1. Plaintiff respectfully requests that the Court accept the proposed Amended 56.1 Statement, if the Court deems it necessary. See Schubert v. Nissan Motor Corp., 148 F.3d 25, 28 (1st Cir. 1998) (where in response to defendant's motion, plaintiffs argued without citation to the record, district court was not satisfied and issued order requiring plaintiffs to comply with Local Rule 56.1, and explicitly address causation and show what admissible evidence will be offered to support plaintiff's theory of causation); Richards v. City of Lowell, 472 F. Supp. 2d at 56 ("The Rule does not dictate a particular format that an opposing party must follow in order to demonstrate which asserted facts are in dispute"); Crabowski v. Bank of Boston, 997 F. Supp. 1111 (D. Mass. 1997) (where only one of many plaintiffs filed a Local Rule 56.1 Statement formally disputing the facts submitted by defendant in its motion for summary judgment, and other plaintiffs relied on their own statements of fact made in support of their own summary judgment motions to dispute defendant's statement, this Court held that under the circumstances the Court would decline to deem defendant's facts to be admitted pursuant to Local Rule 56.1).

With regard to Defendants' argument that Plaintiff has no evidence that Mrs. Bulger's physicians' prescribing decision would have been different had the allegedly omitted/suppressed information been disclosed, the decision in *Forst* is again instructive:

> GSK asserts that the plaintiffs fail to show that Dr. Todd would have refrained from prescribing Paxil if given a different warning, which the plaintiffs must do to sustain their claims. GSK points to Dr. Todd's testimony that his decision to prescribe Paxil to Mr. Forst was appropriate. However, when all the evidence is viewed in the light most favorable to the plaintiffs, a reasonable jury could conclude that Dr. Todd would not have prescribed Paxil if warned about increased suicidality. There is evidence in the record showing that Dr. Todd made changes to his prescribing habits after learning new information about the suicide risks of SSRI's like Paxil:
>
> * * *
>
> . . . Finally, GSK repeatedly notes that Dr. Todd testified that he would not have changed his decision to prescribe Paxil to Mr. Forst. ... However, when the cited testimony is reviewed, the statements are less conclusive than GSK asserts. Dr. Todd responds only that he "doubts" information about Paxil's increased risk of suicidality would have changed his behavior and that he "doesn't know" whether he would want to change his behavior after viewing information about Paxil's suicide risk. ... Thus, a genuine issue of fact exists regarding whether Dr. Todd would have prescribed Paxil if given warnings about risks of increased suicidality in patients."

*Id.* at *20-23.

Defendants cite *Nix v. SmithKline Beecham Corp.*, 2007 U.S. Dist. LEXIS 65860 (D. Ariz. Sept. 5, 2007), where plaintiff's prescribing physician testified that he "would have liked to have known more" about deaths associated with the drug Serevant, and the court held that "merely raising the possibility that [the prescriber] might have acted differently is not enough to satisfy Plaintiffs' burden of proof on causation." Id. at *9. The court in *Nix*, however, also refused to credit the prescriber's testimony that generally the lack of accurate information about potential side effects makes it difficult to perform a risk-benefit analysis. *Id.*

As previously discussed in Plaintiff's initial Memorandum in Opposition, Susan Bulger's prescribers, Dr. Crognale and Dr. Goldman, testified about the material information suppressed by Defendants in terms of its role in their prescribing practices; and both physicians, in discussing their prescribing practices and risk/benefit analyses for prescribing a drug to Ms. Bulger, wanted to know certain specific information. Pl.'s Mem. Opp., at 10-11.

In discussing the causal connection issue and the learned intermediary doctrine in *Forst v. SmithKline Beecham Corp*, the court held that "a jury could weigh Dr. Todd's statements that he was unable to do a proper risk/benefit analysis at the time he prescribed Paxil to Mr. Forst in concluding that his decision to prescribe would have changed." 2009 U.S. Dist. LEXIS 19415 at *21. As previously discussed by Plaintiff:

> Defendants' actions resulted in preventing Susan Bulger and her prescribing physician(s) from being able to fully assess the risk-benefit analysis for the underlying off-label condition for which Neurontin was prescribed to Susan Bulger, and from being able to fully monitor changes in Susan Bulger's mood and behavior caused by Neurontin. Consequently, Susan Bulger ingested Neurontin, and Neurontin was a substantial factor in her suicide.

Pl.'s Mem. Opp. at 7, ECF Doc. # 1674. Similarly, as the court held in *Forst*, the jury here should be permitted to weigh Dr. Mackey's testimony concerning the need to disclose all relevant information concerning the risks of Neurontin and suicidality in determining whether Dr. Crognale's and Dr. Goldman's decisions to prescribe Neurontin to Mrs. Bulger would have changed.

### 2. Defendants have cited no Massachusetts legal authority that the heeding presumption is not relevant to the issue of fraudulent suppression.

Defendants argue that Plaintiff should not be permitted to rely on the heeding presumption in the context of his fraud claim. Defs.' Reply Mem. at 19. It is noteworthy, however, that although Defendants cite a number of cases where Massachusetts courts have

6

applied the heeding presumption to implied warranty of merchantability claims based on a failure to warn, Defendants have not cited any Massachusetts authority specifically rejecting application of the heeding presumption in the context of a fraud claim.

> **3.  Plaintiff need not offer evidence that any half-truths were made to Mrs. Bulger's prescribers, because Plaintiff relies not on bare nondisclosure, but on fraudulent suppression.**

Defendants allege that Plaintiff relies on "bare nondisclosure, that under Massachusetts law, absent a special relationship of trust (such as a fiduciary relationship), giving rise to a duty to disclose, mere silence or nondisclosure does not amount to fraud, although a plaintiff may recover for "half-truths" if a defendant provides "fragmentary information" intended to deceive. Defs.' Reply Mem. at 13-14.

Defendants' straw man argument concerning "half-truths" should be ignored inasmuch as Plaintiff has already previously stated that, "In the absence of a specific affirmative misrepresentation by Defendants, Plaintiff raises issues of material facts in dispute as to whether Plaintiff's physicians relied upon Defendants' suppression of depression and suicidality information." Pl.'s Mem. Opp. at 11.

Moreover, it is axiomatic that manufacturers of ethical drugs, such as Defendants here, have a duty to disclose, and not suppress, information concerning the safety and risks of using their drugs. That is the basis for all drug and pharmaceutical failure to warn claims. No fiduciary or special relationship need be demonstrated in order for the Court to find that Defendants owed prescribing physicians and their patients a duty to disclose information concerning Defendants' ethical drug Neurontin and suicidality.

Defendants quote from *Holtzman v. General Motors Corp.*, No. 021368, 15 Mass. L. Rep. 15, 2002 Mass. Super. LEXIS 249, 2002 WL 1923883 (Mass. Super. Ct. July 2, 2002),

7

where the court noted that, among other things, the Complaint alleged that GM "actively concealed material facts and thereby misled consumers because it failed to describe the aforesaid defectiveness and dangerous of its jacks," and the court held that the "Complaint, at least as it is currently pleaded, fails to state a claim. *See Swinton v. Whitinsville Sav. Bank*, 311 Mass. 677, 678-79, 42 N.E.2d 808 (1942) (no liability in fraud for bare nondisclosure)." *Holtzman*, 2002 Mass. Super. LEXIS at *2-3.  Defendants argue that "Plaintiff's claims are strikingly similar to the claims at issue in *Holtzman*, and that "Plaintiff's claims, like those in *Holtzman*, allege fraud based on bare nondisclosure and accordingly fail as a matter of law." Defs.' Reply Mem. at 15.

However, Defendants ignore the well-established authority, as exemplified by decisions of the Massachusetts Supreme Judicial Court, that under Massachusetts law:  "Fraud may lie in suppression or concealment," *see* Pl.'s Mem. Opp., at 5-6, and Judge Richard G. Stearns' recognition that:  "'Fraud is a generic term" which includes "suppression of truth." *In re Lupron Mktg. & Sales Practices Litig.*, 2004 U.S. Dist. LEXIS 18512 at *11 (D. Mass. 2004) ; *see also In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 181 (D. Mass.); Pl.'s Mem. Opp. at 6-7.

**CONCLUSION**

In view of the above, it is respectfully requested that this Court deny Defendants' motion for summary judgment on all Plaintiff's claims, made on the grounds that Plaintiff allegedly lacks admissible expert evidence on the issue of specific causation, and Defendants' motion for summary judgment on Plaintiff's fraud claims.

Dated:  March 23, 2009                                    Respectfully submitted,

                                            Finkelstein & Partners, LLP
                                            *Attorneys for Plaintiff Ronald J. Bulger, Sr.*

By:  **/s/ Andrew G. Finkelstein**
       Andrew G. Finkelstein, Esquire
       Finkelstein & Partners, LLP
       1279 Route 300, P.O. Box 1111
       Newburgh, NY  12551

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on March 23, 2009.

                                            **/s/ Andrew G. Finkelstein**
                                            Andrew G. Finkelstein, Esquire