EXHIBIT A

# *In Re* Neurontin Sales, Marketing and Products Liability Litigation

# Smith v. Pfizer
# Bulger v. Pfizer

Plaintiffs' Opposition to Defendants Motions In Limine to Preclude Plaintiffs' Experts

Oral Argument
March 31, 2009

# Defendants' Motion to Exclude Experts Should Be Denied

# Experts Qualified with Specialized Knowledge Who Applied Same Rigor as in Professional Practice





Dr. Michael Trimble    Dr. Ron Maris    Dr. Stefan Kruszewski

# Plaintiffs' Experts Use Generally Accepted, Reliable Methods



# Experts' Method Satisfies *Daubert*

- Dr. Maris
  - Performed a Psychological Autopsy
    - Analyzed statistically significant suicide risk factors and protective factors
    - Considered and Accounted for alternative causes (e.g., "rule in" and "rule out").
  - Bradford Hill

- Dr. Kruszewski
  - Differential Diagnosis
  - Bradford Hill as "Guidepost"
  - Naranjo Adverse Drug Reaction Probability Scale

- Dr. Trimble
  - Differential Diagnosis
  - Mechanism of Action on Brain's chemistry

# Experts' Methods Satisfy *Daubert*

- Dr. Maris's Psychological Autopsy is Generally Accepted.
  - ***Routhier v. Keenan* (Mass. Super. Ct. 2008).**
  - *Giles v. Wyeth* (S.D. Ill. 2007)
  - *Blanchard v. Eli Lilly* (D. Vt. 2002)
  - *Miller v. Pfizer* (D. Kansas 1999)
  - *Cloud v. Pfizer* (D. Arizona 2001)

# Experts' Methods Satisfy *Daubert: Psychological Autopsy*

- "Maris is a well-recognized expert in the field of suicidology."

Allan Routhier v. Timothy G. Keenan, M.D.

Opinion No.: 104937, Docket Number: 04-1359

SUPERIOR COURT OF MASSACHUSETTS, AT WORCESTER

25 Mass. L. Rep. 50; 2008 Mass. Super. LEXIS 372

Keenan argues that Maris is unqualified to give his expert opinion on general causation because: (1) his Ph.D is in social psychology rather than a relevant scientific or medical discipline; and, (2) he is not an expert on Wellbutrin because his prior research, teaching and publications do not concern the drug. This court finds [*11] Maris's "education training, experience and familiarity with the subject matter of the testimony" sufficient to qualify him to testify as to the issues of general and specific causation. *Richardson, 423 Mass. at 183*. In addition to his Ph.D. in social psychology, Maris is a well-recognized expert in the field of suicidology. Maris became a certified suicidologist following five years of post-doctoral study at the Johns Hopkins University Medical School. Since 1962, he has reviewed thousands of suicide case studies and conducted extensive epidemiological research on suicide and its causes. He is currently a distinguished professor emeritus and adjunct professor of psychiatry and family medicine at the University of South Carolina School of Medicine. He has published several books on the subject of suicide and his work has appeared in numerous peer-reviewed publications. Although Maris's experience with Wellbutrin may be limited, the record demonstrates his substantial familiarity with antidepressants as a class and his knowledge of the relevant scientific and medical literature. Based on his knowledge, skill, experience, training, and education, Maris is qualified to give his expert [*12] opinion as to whether Wellbutrin can cause suicide and whether it was the cause of Diane's suicide. See *Richardson, 423 Mass. at 183*.

# *Psychological Autopsy Satisfies Daubert*

---

Allan Routhier v. Timothy G. Keenan, M.D.

Opinion No.: 104937, Docket Number: 04-1359

SUPERIOR COURT OF MASSACHUSETTS, AT WORCESTER

25 Mass. L. Rep. 50; 2008 Mass. Super. LEXIS 372

---

Maris bases his opinion that Diane's suicide was caused by Wellbutrin on the results of a "psychological autopsy" he conducted in an attempt to reconstruct her psychological life, thoughts, feelings and relevant environmental factors in the weeks preceding her death. A number of courts have held that a psychological autopsy is a generally accepted methodology for determining the cause of a suicide. *Blanchard v. Eli Lilly & Co.*, 207 F.Sup.2d 308, 313 n.2 (D.Vt. 2002); *Cloud v. Pfizer, Inc.*, 198 F.Sup.2d 1118, 1135 (D.Ariz. 2001); *Herrin v. Treon*, 459 F.Sup.2d 525, 545 (N.D.Tex. 2006); *Yanco v. United States*, 45 Fed. Cl. 782, 787 (Fed. Cl. 2000). Maris reviewed the depositions of Diane's friends, family and Keenan, the Massachusetts State Police incident reports, Diane's autopsy, toxicological laboratory reports, literature on Wellbutrin and its side effects, Marks's expert report and photos of Diane's death scene and autopsy. Maris also analyzed fifteen suicide risk factors and ten protective factors his research has identified as statistically significant. Maris noted that Dianne only had one risk factor (, presence [*18] of guns in the household), nine out of ten protective factors, and no history of suicide in her family.⁹ Maris also found that Diane had ingested three Wellbutrin tablets, and that she experienced side effects consistent with Wellbutrin use, including: nausea, insomnia, irritability, anxiety, akathisia and CNS stimulation. Maris's expert opinion on the issue of specific causation is the product of a sound methodology and a thorough analysis of the available relevant information. Therefore, Maris's expert opinion is reliable and must be admitted under *Daubert*-Lanigan. *Lanigan*, 419 Mass. at 26.

## *Psychological Autopsy Satisfies Daubert*

- In both SMITH and BULGER cases, Dr. Maris employs a Psychological Autopsy.
  - Dr. Maris reviewed medical records, depositions of family, friends, and physicians, police investigations, etc.
  - Dr. Maris applied statistically significant risk factors and protective factors.

## *Psychological Autopsy Satisfies Daubert: Differential Diagnosis*

- Dr. Maris considered and accounted for statistically significant Risk and Protective Factors such as:
  - Depressive, mental, affective disorders
  - Alcoholism, drug, or substance abuse
  - Suicidal Ideation
  - History of suicide attempts
  - Isolation, loss of social support
  - Hopelessness, cognitive rigidity
  - Lethal methods to attempts (overdose vs. firearms)
  - Age, Gender
  - Unemployment
  - Marital or sexual problems
  - Stress, Negative Life events
  - Physical Illness
  - Anger, Aggression, impulsivity

## *Psychological Autopsy Satisfies Daubert: Differential Diagnosis*

- Dr. Maris opines in the SMITH case that Mr. Smith "probably had only 7 of 15 known suicide risk factors, and 3 of those were induced by Neurontin.  That is, he had about a 5 on a 10 point suicide risk scale or 48% overlap with known suicide traits.  Richard was a low moderate suicide risk, absent gabapentin ingestion."  (ECF Doc 1633-26 at 24).
  1. Depression, mental, affective disorder
  2. Suicide ideation, talk, preparation
  3. Hopelessness, cognitive rigidity

## *Psychological Autopsy Satisfies Daubert: Differential Diagnosis*

- Dr. Maris opines in the BULGER case that Mrs. Bulger "had 12 of 15 known suicide risk factors, and four of those were probably induced or made worse by Neurontin. That is, she had about an 8 on a 10 point suicide risk scale or 80% overlap with known suicide traits. Susan Bulger was a high moderate suicide risk, absent gabapentin ingestion." (ECF Doc 1636-18 at 29).

1. Depressive, mental, affective disorder
2. Suicide Ideation, talk, preparation
3. Hopelessness, cognitive rigidity
4. Anger, Aggression, impulsivity, irritability

# Experts' Methods Satisfy *Daubert*

- Plaintiffs' experts applied a Differential Diagnosis
    - A "standard scientific medical technique, widely used in medicine, of identifying a medical 'cause'. . . ." *Baker v. Dalkon Shield Claimants Trust* (1st Cir. 1998).

# Experts' Methods Satisfy *Daubert*

- Differential Diagnosis does <u>Not</u> Require An Expert to "Rule In" or "Rule Out" <u>All</u> Causes.
    - Proximate Cause only requires Neurontin to be **A** substantial factor (not the only factor).
    - *Smith v. Pfizer* (D. Kansas 2001). "Defendants' claim that [the expert] has failed to account for other potential causes factors goes to the weight and credibility of the opinion, not its admissibility."
    - Giles v. Wyeth (S.D. Illinois 2007)(recognizing "combination of factors generally cause one to commit suicide")
    - *Anello v. Shaw Indus, Inc.* (D.Mass 2000).

# Experts' Methods Satisfy *Daubert*: *Dr. Kruszewski*

- Differential Diagnosis

- Naranjo Probability Scale

- Bradford Hill Guideposts

# Experts' Methods Satisfy *Daubert*: *Naranjo Probability Scale*

| Question | Yes | No | Do Not Know | Score |
|---|---|---|---|---|
| 1. Are there previous conclusive reports on this reaction? | +1 | 0 | 0 | |
| 2. Did the adverse event appear after the suspected drug was administered? | +2 | -1 | 0 | |
| 3. Did the adverse reaction improve when the drug was discontinued or a specific antagonist was administered? | +1 | 0 | 0 | |
| 4. Did the adverse reactions appear when the drug was readministered? | +2 | -1 | 0 | |
| 5. Are there alternative causes (other than the drug) that could on their own have caused the reaction? | -1 | +2 | 0 | |
| 6. Did the reaction reappear when a placebo was given? | -1 | +1 | 0 | |
| 7. Was the drug detected in the blood (or other fluids) in concentrations known to be toxic? | +1 | 0 | 0 | |
| 8. Was the reaction more severe when the dose was increased, or less severe when the dose was decreased? | +1 | 0 | 0 | |
| 9. Did the patient have a similar reaction to the same or similar drugs in any previous exposure? | +1 | 0 | 0 | |
| 10. Was the adverse event confirmed by any objective evidence? | +1 | 0 | 0 | |

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3280-07T1

ANDREW MCCARRELL,

　Plaintiff-Respondent,

v.

HOFFMAN-LA ROCHE, INC., and
ROCHE LABORATORIES, INC.,

　Defendants-Appellants.

Appellate Court supported the trial judge's decision that Naranjo was "accepted and scientifically-validated method of evaluating causation."

McCarrell v. Hoffman-La Roche, Inc., et al (App. NJ 2009)

# Experts' Methods Satisfy *Daubert:*

Defendants, in the course of their own clinical trials, utilize a causality assessment that emphasizes Temporality and Differential Diagnosis

ECF Doc 1668-19

II. Assessment of Causality

The following criteria (based on: Karch, F.E. and Lasagna, L., JAMA 234, 1236-1241, 1975) are to be used for the assessment of the causal relationship to the test medication:

For classification, <u>all</u> criteria of one of the following categories must be met:

**Definite**

A reaction that follows a reasonable temporal sequence from administration of the drug <u>or</u> in which the drug level has been established in body fluids or tissues.

Improvement or disappearance on stopping or reducing the dosage (dechallenge)

Reappearance of the reaction on repeated exposure (rechallenge).

**Probable**

A reaction that follows a reasonable temporal sequence from administration of the drug.

Confirmation of finding by dechallenge.

The reaction cannot be reasonably explained by the known characteristics of the patient's clinical state or other modes of therapy administered to the patient.

**Possible**

Plausible temporal sequence.

The adverse event might have been produced by the patient's clinical state (basic illness, concomitant illness) or other modes of therapy administered to the patient.

**Remote**

Any reaction not meeting the criteria above.

Current state-of-the-art indicates that a relationship is extremely unlikely.

Rechallenge is negative.

**Unclear**

It is not possible to assign the reaction to any of the above categories.

# Experts' Methods Satisfy *Daubert*: *Dr. Trimble*

- Differential Diagnosis
  - Considered and Accounted (e.g., "ruled in" and "ruled out") risk factors and protective factors.

- Mechanism of Action Leads to Impulsive, Aggressive Suicidal Acts

# *In Re* Neurontin Sales, Marketing and Products Liability Litigation

Oral Argument
March 31, 2009