UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>ALL MARKETING AND SALES PRACTICES ACTIONS | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

COUNTY OF DURHAM        )
                                      :  ss.
STATE OF NORTH CAROLINA )

## AFFIDAVIT OF DOUGLAS C. McCRORY, MD, MHS

I, Douglas C. McCrory, being duly sworn on oath, depose and state as follows:

1. I submitted an Expert Report in this case on August 11, 2008 ("My Expert Report"). I was deposed in this case on January 29 – 30, 2009.

2. I have reviewed the Defendants' motion for summary judgment and supporting memorandum. The supporting memorandum mischaracterizes my opinion regarding the question of whether Neurontin is ineffective for migraine and headache by taking several quotations from my deposition testimony out of context. My Expert Report and analysis uses careful language and a methodologically rigorous analysis to characterize the evidence regarding Neurontin's effectiveness for migraine, the only headache diagnosis for which Neurontin is commonly used clinically. It is written in language that would be understood by the medical and health policy communities, and the words must be construed in those contexts, and not in a manner that ignores those contexts.

3. In plain language, My Expert Report shows that Neurontin is ineffective for migraine prevention. Defendants have mischaracterized this conclusion by taking certain words

out of context. The question of whether a medical intervention is "effective" involves evaluating statistically the evidence against the null hypothesis, which is the hypothesis that the drug is no more effective than placebo, i.e. "ineffective." The evidence is considered as to whether or not it is strong enough to refute the null hypothesis. Thus, if the statistical test fails to reject the null hypothesis, then one would conclude that the intervention is no better than placebo, or "ineffective." In the case of Neurontin and migraine, there is a good deal of high quality DBPCRT evidence that fails to show that Neurontin is effective. Thus, my conclusion is that Neurontin is "ineffective" because there is insufficient evidence to the contrary, despite numerous opportunities to demonstrate otherwise.

4. Defendants also take out of context my deposition testimony to the effect that I did not "set out" to prove gabapentin is ineffective in treating migraine in "all patients." This is misleading for two reasons. First, use of the phrase "set out" means whether I started my review with bias (i.e., with the goal of proving Neurontin ineffective *before* I reviewed any of the evidence). In fact, the opposite is true. I started my review with an open mind, if anything with a prior belief that Neurontin was effective. I only reached an opinion as to Neurontin's inefficacy after reviewing all of the DBPCRT evidence, hence my response "No, by no means." It was not my testimony that by the end of my review, I was unable to prove Neurontin's inefficacy.

5. Second, Defendants' question about whether or not I could prove that Neurontin is ineffective "in all patients" is patently ridiculous. Conclusions about efficacy and inefficacy focus on a review of aggregated data from groups of patients, not individual patients. Defendants are using a straw man argument that sets out an impossible standard. By this standard, no medication or even an inert placebo could ever be proven ineffective, since even an inert placebo by its very nature is capable of producing a placebo effect. A placebo is nevertheless ineffective, but it would be impossible to demand proof that it was ineffective "in

2

all patients."

6. Defendants also argue that my opinion is limited to only one aspect of migraine treatment—i.e. prophylaxis—and thus they argue that I do not offer an opinion as to whether Neurontin is effective for acute treatment of episodic headache attacks or so-called acute treatment. My opinion is that Neurontin is ineffective for acute migraine treatment for several reasons. Neurontin is not used for acute treatment of migraine in clinical practice. No one has even hypothesized that it could be effective for acute treatment, nor has it been tested in this role. Accordingly, it is unnecessary and impossible for me to review evidence that does not exist in order to determine whether the null hypothesis that Neurontin is ineffective for acute migraine treatment has been overcome. Migraine prevention is the only headache indication with any evidence on which to base a reliable conclusion regarding the efficacy/inefficacy of Neurontin, and it is the only therapeutic strategy for which Neurontin is used.

7. Finally, Defendants distort the significance of my estimate that only three to five percent of migraine sufferers take preventative drugs. In so doing, Defendants inappropriately minimize the significance of the relationship between the diagnosis of migraine and prescriptions for preventative drug therapy. Before there is a prescription, there must be a diagnosis. Because many migraine sufferers seldom consult a physician for their migraines, they are unlikely to be diagnosed as needing prescriptions for preventative medications. Therefore, the proportion of patients who take a preventive medication is much higher among patients who consult a physician than in the public at large. Thus, my estimate had no bearing on what percentage of Neurontin prescriptions for people suffering from migraine were prescriptions for prophylaxis rather than acute treatment.

SIGNED UNDER THE PAIN AND PENALTIES OF PERJURY THIS 3rd DAY OF ~~MARCH~~ April 2009.

*Douglas C McCrory*
Douglas C. McCrory, MD, MHS

# Oath or Affirmation

STATE OF NORTH CAROLINA

COUNTY OF __Alamance__

Sworn to (or affirmed) and subscribed before me this day by __Douglas C McCrory__,
<br>Name of principal

regarding the contents of the foregoing document: __Affidavit of Douglas C McCory__.
<br>Name or description of attached document

I certify that:

☐ I have personal knowledge of the identity of the principal(s)

☒ I have seen satisfactory evidence of the principal's identity, by a current state or federal identification with the principal's photograph in the form of a __NCDL__.
<br>type of identification

☐ A credible witness, _____, has sworn or affirmed to me the
<br>name of credible witness
identity of the principal, and that he or she is not a named party to the foregoing document, and has no interest in the transaction.

Date: __April 3, 2009__

(Official Seal)

__Amy D Brown__
<br>Notary Public

__Amy D Brown__
<br>Typed or Printed Notary Name

My commission expires: __June 22 2010__