UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:   NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br>Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO:<br><br>PRODUCTS LIABILITY ACTIONS | |

**DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS' EMERGENCY MOTION TO COMPEL THE DEPOSITION OF DR. KWAN HUR**

Defendants Pfizer Inc and Warner-Lambert Company LLC respectfully submit this memorandum in response to the Products Liability Plaintiffs' Emergency Motion for an Order compelling the Defendants to produce Dr. Kwan Hur for deposition.

**PRELIMINARY STATEMENT**

As Plaintiffs acknowledge, on January 29, 2009, this Court granted Defendants' motion for a protective order prohibiting Plaintiffs from seeking the depositions of Dr. Hur and two other co-authors of Defendants' expert, Dr. Robert Gibbons. Specifically, the Court ordered: "The motion for a protective order is ALLOWED. The other three authors [Drs. Brown, Mann, and Hur] are not experts in this case. However, plaintiffs may seek leave after Gibbons's deposition to take the other three authors' depositions, *if warranted and necessary*." 1/29/09 Electronic Order (emphasis added). As the Court properly ruled, after considering Defendants' motion and Plaintiffs' 18-page opposition, Dr. Hur has not been designated as an expert in this litigation and should not be subjected to the burden of a deposition absent a showing, after the completion of Dr. Gibbons' deposition, that his testimony is nevertheless necessary.

Plaintiffs' motion repeatedly misrepresents Dr. Gibbons' deposition testimony and completely fails to satisfy the Court's requirement of necessity. In fact, Plaintiffs' counsel did

- 1 -

not ask Dr. Gibbons a single substantive question that he was unable to answer and to which only Dr. Hur could respond.  Although Defendants do not believe Dr. Hur's deposition is warranted or necessary, they do not oppose, in the interest of conserving the Court's and the parties' resources, a two-hour deposition of Dr. Hur that is limited to the methodology he employed in connection with the unpublished manuscript he co-authored with Dr. Gibbons and any related assistance to Dr. Gibbons on which he relied in his expert report.

## RELEVANT FACTS

As set forth in more detail in Defendants' brief in support of their motion for a protective order [Docket # 1619], Dr. Hur, a biostatistician, is, along with two others, a co-author of an unpublished manuscript, of which Dr. Gibbons is the lead author, that Dr. Gibbons referenced in and provided with his expert report.  Dr. Hur also provided certain computer programming assistance in connection with data on which Dr. Gibbons relied in his expert report.  As Dr. Hur confirmed in a sworn declaration submitted in support of Defendants' motion for a protective order, he has not been named as an expert witness in this litigation; has no knowledge of Plaintiffs' allegations in this litigation; has not been asked to form, and has not formed, any opinions about those allegations; does not wish to provide a professional opinion or be deposed in this litigation; and believes that Dr. Gibbons is fully able to testify as to all aspects of the unpublished manuscript, including what data were analyzed, how the data were analyzed, and what findings resulted from the analyses.  (Hur Dec. [Docket # 1623] ¶¶ 10-15.)

In their attempt to show that, notwithstanding Dr. Gibbons' knowledge of and ability to testify about Dr. Hur's work and about all of the data and analyses on which Dr. Gibbons relies for his expert opinion, they need to depose Dr. Hur, Plaintiffs repeatedly misstate Dr. Gibbons' deposition testimony.  For example, Plaintiffs cite page 210 of the deposition transcript in support of their contention that "Dr. Hur provided crucial expert work product including (a) programming the underlying database for Dr. Gibbons' analysis, (b) extracting the data which formed the very basis for Dr. Gibbons' analysis, and (c) reviewing the results of Dr. Gibbons' reports."  (Pls.' Mem. at 2.)  The testimony Plaintiffs cite, however, relates exclusively to

Dr. Hendricks Brown and to the unpublished manuscript, of which he was also a co-author; it does not reference and has nothing to do with Dr. Hur or with Dr. Gibbons' expert report. (Gibbons Tr., attached hereto as Exhibit A, at 209:18-210:18.)  Further, Dr. Gibbons expressly testified, in response to the deposition questions referenced by Plaintiffs, that Dr. Hur did not "extract data," which is exactly opposite Plaintiffs' representation in their brief.  (Gibbons Tr. at 209:15-17 ("[Dr. Hur] wasn't extracting the data.  He would just – he would develop and run the SAS [Statistical Analysis System] code to perform [the] analysis.").)

Plaintiffs also claim that "Dr. Gibbons testified that he did *not* check Dr. Hur's work." (Pls.' Mem. at 4.)  But none of the testimony they cite supports their assertion; indeed, much of the testimony directly contradicts it.  Dr. Gibbons unequivocally testified that he, in fact, "checked" Dr. Hur's work, replicating in full Dr. Hur's database analyses:

> Q. Did you on your own perform any of the analyses yourself either as a check on Dr. Hur or as two people working in parallel to see if he replicated the results?
> A. Both of those seem to me to be the same thing, yes.
> Q. All right.  And you did?
> A. Yes.
> Q. And did you do all of those or just selective ones?
> A. I did everything in Table 1.
> Q. To replicate what Dr. Hur had already done in Table 1?
> A. To replicate that the summary statistics that led to the statistical analyses were done correctly.

(Gibbons Tr. at 207:9-24; *see also id.* at 531:12-15 (testifying that he "replicated the results of those SAS programs independently.  So I can testify to their validity.").)  Further, Dr. Gibbons testified that he worked together with Dr. Hur to conduct validity checks:

> Q. Did you do the validity checks of the data?
> A. I worked with Dr. Hur.  We went through and screened the data, made sure that we were getting consistent results.  I don't remember all of those analyses.  Those were done some time ago.
> Q. Was any record[] kept of those analyses?
> A. Not to my knowledge.
> Q. Would Dr. Hur be in a better position to talk about what kind of validity checks were run upon the data?
> Q. I don't think so.

(Gibbons Tr. at 811:16-812:5.)

Plaintiffs also erroneously state that "Dr. Gibbons could not answer questions about" a purported programming error "and testified that Dr. Hur would have to answer them." (Pls.' Mem. at 5.) Again, the very testimony Plaintiffs cite refutes their representation of the record:

> Q. Would Dr. Hur be in a better position to discuss these SAS programs than you?
> A. You know, it depends on what part of the programs that you are describing. As I have testified, Dr. Hur had the primary role of writing those programs. Authors are always, you know, closest to their code, but everything that's in the code is based on – on direction that Dr. Hur received from me. So I should be, you know, in reasonably good stead to – stead – I am not sure that's even a word. I should be able to – to review them with you, if you would like.

(Gibbons Tr. at 533:18-534:6.)[1]  The second excerpt Plaintiffs cite is merely a request by Plaintiffs' counsel for Dr. Gibbons to identify a specific statistical analysis program that was used to extract data for his analysis. Dr. Gibbons agreed to contact Dr. Hur to obtain the information and to promptly "forward it on." (Gibbons Tr. at 888:21-889:21.) Plaintiffs do not and cannot cite any testimony by Dr. Gibbons that "Dr. Hur would have to answer" any of Plaintiffs' counsel's questions or that Dr. Gibbons could not obtain and provide the requested information himself.

## ARGUMENT

### I. PLAINTIFFS' MOTION FAILS TO ESTABLISH THAT DR. HUR'S DEPOSITION IS WARRANTED AND NECESSARY

Consistent with this Court's Order, Plaintiffs should be permitted to depose Dr. Hur only if Dr. Gibbons is incapable of testifying about facts on which he relies in his expert report and about which only Dr. Hur could testify. After three days of deposing Dr. Gibbons, Plaintiffs have not identified any such facts. To the contrary, Dr. Gibbons has responded to every substantive question Plaintiffs' counsel has asked about his report and the data and analyses on

---

[1] Dr. Gibbons testified that any error would not affect his opinions (Gibbons Tr. at 760:22-763:20), and corrected the error in his March 2009 supplement, which, in fact, did not change the conclusions based on the statistical analyses.

which he relies. Indeed, Dr. Gibbons' deposition testimony confirms that, as lead author of the unpublished manuscript and the only author of his expert report, he is fully equipped to answer all questions about both the manuscript and his report. Plaintiffs have not shown otherwise. In some instances, Dr. Gibbons agreed to obtain and provide information in response to questions seeking specific details about the data and methodology on which he has relied, but he has always indicated that such information is available to him and can be readily conveyed by him. Plaintiffs' contention to the contrary notwithstanding, Dr. Gibbons has never testified that only Dr. Hur could respond to a question or provide the requested information.

The cases on which Plaintiffs rely do not support their position. In *Herman v. Marine Midland Bank*, 207 F.R.D. 26 (W.D.N.Y. 2002), the court held that a co-author of the plaintiff's expert's *expert report* was properly subject to deposition where the co-author had "spent 16.75 more hours on the expert report than [the designated expert] did" and had billed a greater amount for his services than the expert himself. *Id.* at 30-31. The court ruled that "[u]nder these circumstances, the fruits of [the expert and co-author's firm's] labor is indivisible and defendant is entitled to explore what [the co-author] did." *Id.* at 31. Plaintiffs do not and cannot assert that Dr. Hur co-authored Dr. Gibbons' expert report or that the assistance he provided came anywhere close to, much less surpassed, the scope and amount of work performed by Dr. Gibbons himself. Similarly, in *Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 WL 1456538 (D. Md. Mar. 19, 1999), the court held only that the defendants were entitled to the disclosure of the plaintiff's expert's "underlying analysis" and to depose the expert, not the assistant, on what his "assistant did." *Id.* at 10-11. Here, of course, Defendants have already disclosed, and Dr. Gibbons has testified extensively about, this information. Finally, as Plaintiffs acknowledge, the court in *Dura Automotive Systems of Indiana v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002), recognized that an expert's assistants "normally . . . need not themselves testify." *Id.* at 612. The court found that the assistants in that case should have been designated as experts and been subject to deposition because they had provided independent expert opinions on which the plaintiff's designated expert relied and about which he was not competent, on his own, to

- 5 -

opine. *Id.* at 614-15.  By contrast, Dr. Hur has not provided any expert opinion in this case, much less one that is beyond the expertise of Dr. Gibbons.

## II. DEFENDANTS WILL NOT OPPOSE A TWO-HOUR DEPOSITION OF DR. HUR, TO BE LIMITED IN SCOPE TO HIS METHODOLOGY

Although Plaintiffs have not established that Dr. Hur's deposition is necessary and warranted, Defendants are willing to resolve the issue by not objecting to a two-hour deposition of Dr. Hur that is limited to the methodology he employed in connection with the unpublished manuscript he co-authored with Dr. Gibbons and any related assistance to Dr. Gibbons on which Dr. Gibbons relied in his expert report.  Based on guidance from Judge Saris, the parties have recently agreed to a similar two-hour time limit for other expert-related depositions that are to be restricted to specific areas of examination.  Limiting the scope of the deposition to the methodology Dr. Hur employed in connection with the unpublished manuscript and related assistance to Dr. Gibbons on which Dr. Gibbons relied in his report is also appropriate and supported by Plaintiffs' own authority.  *See Dura Auto. Sys. of Ind.*, 285 F. 3d at 613 ("The opposing party can depose [an expert's assistants] in order to make sure they performed their tasks competently . . . .").  Plaintiffs contend that they need to depose Dr. Hur because he "participated in designing the methodology employed, the designing and coding of the programs utilized, execution of the programs, reviewing or verification of results, and actual writing of the [unpublished manuscript]."  (Pls.' Mem. at 7.)  Dr. Gibbons' testimony, of course, makes clear that this is not accurate and that all of the analyses on which Dr. Gibbons relied were based on his own design, done at his direction and under his supervision, and were painstakingly reviewed and verified by him.[2]  In any case, any deposition of Dr. Hur should be limited to his

---

[2] For example, Dr. Gibbons testified:

> . . . I have worked with Dr. Hur, and I know that all of the analyses that were conducted in – relating to either the gabapentin cohort or the bipolar cohort were all done under my direction.
>
> He didn't initiate these analyses.  He didn't design those analyses.  He helped in the writing of the SAS code to implement the analyses that I envisioned and oversaw, and to make sure that they were accurate, I went through the painstaking task of writing the Fortran programs to reproduce the results.  So I don't think that he has anything to add

methodology.

With respect to Plaintiffs' overbroad document request (Pls.' Mem. at 7), Plaintiffs are only entitled to Dr. Hur's work product that was considered by Dr. Gibbons.  *See* Rule 26(a)(2)(B).  Dr. Gibbons has already produced to Plaintiffs everything that Dr. Gibbons considered for the opinions rendered by him in this litigation.  His extensive production to Plaintiffs includes, among other things, multiple databases, computer programs, and data files, documents describing those programs and files, spreadsheets and results tables, billing invoices related to his expert work, the check he wrote to Dr. Hur, email correspondence with Defendants' counsel, and correspondence concerning his unpublished manuscript.

## CONCLUSION

For the foregoing reasons, Defendants submit that this Court's Order protects Dr. Hur from deposition absent a showing of necessity, which Plaintiffs have not made.  However, in the spirit of cooperation and in the interest of conserving judicial and party resources, Defendants will agree to a two-hour deposition of Dr. Hur, under the conditions set forth above.

Dated:  April 22, 2009            Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By:     /s/ Mark S. Cheffo
        Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

        -and-

---

above and beyond what I have told you and what questions I can answer for you.

(Gibbons Tr. at 728:17-729:5.)

- 8 -

        SHOOK, HARDY & BACON L.L.P.

        By:    /s/ Scott W. Sayler
                Scott W. Sayler

        2555 Grand Blvd.
        Kansas City, MO 64108-2613
        Tel:  (816) 474-6550

            -and-

        WHITE AND WILLIAMS LLP

        By:    /s/ David B. Chaffin
                David B. Chaffin

        BBO # 549245
        100 Summer Street, Suite 2707
        Boston, MA 02110
        Tel:  (617) 748-5200

        *Attorneys for Defendants Pfizer Inc and*
        *Warner-Lambert Company LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on April 22, 2009.

/s/ David B. Chaffin
David B. Chaffin
