# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE:                                          )
NEURONTIN MARKETING, SALES PRACTICES ) CA No. 04-10981-PBS
AND PRODUCTS LIABILITY LITIGATION    ) Pages 107 - 360

DAUBERT HEARING - DAY TWO

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE
and
JUSTICE MARCY S. FRIEDMAN
NEW YORK SUPREME COURT

United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
June 20, 2008, 9:10 a.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617)345-6787

1    and self-injurious behavior.

2            JUDGE SARIS:  And suicidal is suicidal attempts,
3    completions?

4            THE WITNESS:  Yes.

5            JUDGE SARIS:  And suicidal ideation?

6            THE WITNESS:  Yes.

7            JUDGE SARIS:  And self-injurious means, would that
8    be like cutting?

9            THE WITNESS:  Yes.  FDA defines a series of
10   self-injurious behaviors.  It would include that as well,
11   yes.

12           JUDGE SARIS:  So you've taken whatever the FDA has
13   said?

14           THE WITNESS:  How FDA has coded the database.

15           JUDGE SARIS:  So assuming for a minute --

16           MR. BARNES:  A couple of points.  I'll just proffer
17   what my concern is.  Dr. Blume is using a method, as she has
18   described it up here, where Mr. Altman has been -- this
19   method, this approach has been specifically excluded in a
20   prior case as being unreliable on issues of --

21           JUDGE SARIS:  No offense to him.  Isn't it like
22   asking my secretary, "Take everything from the reports that
23   says suicide or self-injury, and, like, type it in"?  I mean,
24   no offense to him, but, I mean, isn't that what we're talking
25   about?

Page 156

1          MR. BARNES:  Not at all.  Not at all.  Not at all.
2  And let me tell you -- let me just --
3          MR. FINKELSTEIN:  We submitted this, your Honor.
4          JUDGE SARIS:  Well, let me ask you.  Is that your
5  understanding of what it is?
6          THE WITNESS:  The FDA adverse event database is a
7  huge database that requires filtering across its various
8  hierarchy terms.  My understanding is that Mr. Altman has
9  developed a method, has a method to filter those, and that's
10 what he does.  There is no subjective interpretation.  We use
11 the terms as FDA defines them.
12         MR. BARNES:  Your Honor, I'll make a proffer here.
13 Even under the method -- and I'll show you in the
14 pharmacovigilance document -- all this -- assume this is in
15 fact what they are purporting it to be.  All it is is
16 evidence of a signal.  It is explicitly prohibited to be
17 considered on issues of causation by the very document they
18 cite, the pharmacovigilance document in 2005, and I can show
19 it to you.
20         JUDGE SARIS:  Maybe.  I just wanted to understand
21 your point about Altman.
22         MR. BARNES:  The point about Mr. Altman is that --
23         JUDGE SARIS:  I got the whole thing now, okay.
24         MR. BARNES:  I will give you a cite on this point
25 that I think is important.  It's In Re:  Meridia Products

1  Liability Litigation, 328 F. Supp. 791, and the Court held
2  after a similar hearing, "Even readers with only a casual
3  understanding of statistics can recognize that this evidence
4  does not speak to the issue of causation, and therefore
5  cannot create a genuine issue of causation --"
6          JUDGE SARIS:  Excuse me.  That's a legal argument.
7  We'll get to that.  I just want factually I understand the
8  dispute, so why don't we just move on.
9          MR. BARNES:  Okay.
10         JUSTICE FRIEDMAN:  I would like to ask Dr. Blume a
11 question.  Are you currently involved in obtaining approvals
12 for pharmaceutical products from the FDA?
13         THE WITNESS:  Absolutely.  Our last approval was in
14 February of this year.
15         JUSTICE FRIEDMAN:  And this was not for -- it had
16 nothing to do with any litigation?
17         THE WITNESS:  No.  Eighty percent of our practice
18 is devoted to working with pharmaceutical companies with FDA.
19         JUSTICE FRIEDMAN:  And when you submit these
20 approvals, you are working with FDA directives or regulations
21 that tell you what you have to submit, correct?
22         THE WITNESS:  Yes.
23         JUSTICE FRIEDMAN:  But you are not making findings
24 of causation, are you?
25         THE WITNESS:  As I noted earlier, our Code of