UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
              :  MDL Docket No. 1629

In re:  NEURONTIN MARKETING, SALES     :
        PRACTICES AND PRODUCTS     :  Master File No. 04-10981
        LIABILITY LITIGATION        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x  Judge Patti B. Saris
              :

THIS DOCUMENT RELATES TO:       :  Magistrate Judge Leo T.
              :  Sorokin

*Bulger v. Pfizer Inc., et al.*      :
*Case No. 05-cv-11515-PBS*      :
              :
              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION TO STRIKE LATE-FILED RULE 26 DISCLOSURES AND INTERROGATORY RESPONSES, COMPEL COMPLIANCE WITH THE COURT'S APRIL 9, 2009 SCHEDULING ORDER, RULE 26 AND RULE 16, AND FOR A PRE-TRIAL CONFERENCE

Defendants Pfizer Inc and Warner-Lambert Company LLC respectfully submit this Memorandum of Law in Support of Emergency Motion to Strike Late Filed Rule 26 Disclosures and Interrogatory Responses, Compel Compliance with the Court's April 9, 2009 Scheduling Order, Rule 26 and Rule 16, and for a Pre-Trial Conference.

### PRELIMINARY STATEMENT

On March 31, 2009, following oral argument on Defendants' motions for summary judgment in this action, Plaintiff's counsel advised this Court that Plaintiff wanted an immediate trial of this case. (3/31/09 Tr. at 88:24-25.) When asked by the Court, "Do you want to set up a trial right now on Bulger," Plaintiff's counsel responded: "Absolutely." (*Id.* at 89:5-8.) Plaintiff's counsel added: "Judge, I will say this: We have forty trial attorneys. You set the date, we'll be ready to go." (*Id.* at 90:3-5.) When advised that the Court had emergency duty in August, Plaintiff's counsel represented that a trial would last maybe two or three weeks. (*Id.* at 90:9.) In response to the Plaintiff's representations, and the procedural posture of the case, the Court proposed July 27 as a trial date, "assuming it's three weeks." (*Id.* at 91:17.)

On April 6, 2009, Defendants submitted their proposed pre-trial order, suggesting a trial date in November.  [1735.]   Noting the complexity of the decedent's medical history, the large number of fact witnesses deposed, the 20 experts designated by the parties, the hundreds of thousands of pages of documents produced in discovery, and the over 2000 documents made exhibits to depositions, Defendants suggested that a November trial date would allow the parties to review the voluminous discovery record in this matter and narrow down the exhibits, live witnesses, and depositions that the parties would actually need for trial.  [1735 at 2-4.]

Plaintiff strenuously opposed Defendants' proposal and requested either a June 15 or July 27 trial date, with pre-trial witness and exhibit designations to be made on May 15, 2009 and objections served two weeks later, on May 29.   Plaintiff stated: "Whether the trial is scheduled to begin on June 15 or July 27, 2009, the parties will have reasonable time to meet the pre-trial disclosure requirements of Fed. R. Civ. P. 26(a)(3), as well as to pose objections to their adversaries disclosures."  [1737 at 2.]  Plaintiff added that he "appreciate[s] the scope of issues to be litigated at trial, and clearly both parties and the Court are cognizant of the volume of documents/exhibits and witness testimony to be presented."  [*Id.*]

On April 9, 2009, this Court issued its pre-trial order, setting forth the following schedule.   On May 22, 2009, the parties were to exchange lists of witnesses, designation of deposition testimony and a list of exhibits.  On the same date, the parties were to serve requests for admission as to the authenticity of documents.   Objections to exhibits and deposition testimony, deposition counter-designations, motions in limine, proposed jury instructions, questionnaire, voir dire, joint pre-trial memorandum and trial brief are due on June 22. Objections to counter-designations are due on July 8 and the final pre-trial hearing is scheduled for July 20.  In light of the schedule, the Court no doubt expected the parties to comply with the letter and spirit of the order, and also took Plaintiff at his word when he said the case was trial ready and could be tried in 2 to 3 weeks.

Pursuant to the Court's order, the parties exchanged pre-trial designations on May 22, 2009.  Heedless of his representations to the Court, the rules, and the Court's order, Plaintiff

designated the following:

(1) 41 witnesses (at over 120 estimated hours of direct) that Plaintiff expects to call, as well as an additional 14 "may call witnesses." (Exh. A.)[1] Based on the Court's trial schedule, Plaintiff's direct case through live witnesses, without cross-examination, would take 6 weeks.

(2) Deposition testimony from over 65 witnesses, at almost 70 hours of testimony time. After eliminating overlap with Plaintiff's live witnesses, Plaintiff's direct case through live witnesses and deposition testimony would take over 175 hours, or 43 days of trial. Even without considering cross-examination or Defendants' case, Plaintiff now estimates (in contrast to his March representations to this Court), that trial of this case will take almost *9 weeks*.

(3) Over 3,500 exhibits (not including medical records or scientific literature),[2] including over 47,000 pages of documents and 10 voluminous databases in their entirety.

(4) A subset of over 1,100 exhibits that were the subject of Plaintiff's requests for admissions, which were not limited to authenticity but sought several other admissions and included *de facto* interrogatories and requests for production.

On May 22, 2009, Plaintiff also served upon Defendants "Plaintiff's Further Supplemental Disclosure Statement and Plaintiff's Further Supplemental Response to Defendants' First Set of Interrogatories." In his supplemental disclosure, Plaintiff identified several fact witnesses not previously disclosed as persons that Plaintiff might rely upon in support of his claims and who have not been deposed in this action, as well as two new expert witnesses. In his supplemental responses to interrogatories, Plaintiff extensively expanded upon his prior interrogatory responses and provided a newly minted theory of compensatory damages.

---

[1] "Exh." refers to the Exhibits attached to the Declaration of Mark S. Cheffo, dated May 28, 2009.

[2] The parties agreed that they would separately list medical records and medical literature, and thereafter attempt to consolidate them and eliminate duplicates. An agreed upon range of exhibit numbers was reserved for these exhibits.

Not only do Plaintiff's designations deprive Defendants of fair notice of the evidence that Plaintiff will seek to introduce at trial, they are calculated to divert Defendant's resources from trial preparation, and would unreasonably and impractically tax this Court's resources in the pre-trial phase of this case. Indeed, several things are apparent from Plaintiff's designations and discovery supplementations. First, Plaintiff's eleventh hour supplements to his interrogatories and disclosures are inconsistent with his counsel's representations to the Court in March that this case was ready to be tried immediately, and inconsistent with the letter and spirit of this Court's April 9 Order. Second, there is no way that the trial contemplated by Plaintiff's witness designations could be completed within 3 weeks, as Plaintiff represented. Third, Plaintiff's voluminous designations of witnesses, deposition testimony and, in particular, exhibits, make clear that Plaintiff has made no effort to narrow the voluminous discovery into a manageable proffer for trial. To the contrary, Plaintiff designated almost *every document* ever made an exhibit to a motion, expert report, or deposition by this Plaintiff or a plaintiff in any other Neurontin litigation. By way of example, Plaintiff's designations include the complaint in this action, the transcript of the *Daubert* hearing, biographies of plaintiff and defense counsel, depositions notices, handwritten notes with plaintiff counsel's phone numbers, and reports of experts not designated in this case.

Rule 26 and Rule 16 plainly contemplate a narrowing of the issues, facts, witnesses and evidence as trial approaches so as to provide both sides with fair notice of the evidence that is reasonably probable to be introduced at trial and to reduce the number of evidentiary disputes for the Court to rule upon. Overly broad designations, designations that encompass virtually the entirety of the discovery in the litigation and associated litigation, frustrate the intent of the Federal Rules. They also make it impossible for the Court to resolve thousands of disputes in a three-hour pre-trial hearing. In this case, Plaintiff's designations do not reflect any considered evaluation of the evidence that Plaintiff will actually seek to present at trial. Instead, one of two things must be true. Either this case was not "trial-ready" as represented to the Court by Plaintiff's counsel in March and April. Or, Plaintiff has grossly over-designated in an attempt to

sandbag Defendants and force Defendants to spend countless hours evaluating and reviewing every document ever marked as an exhibit at deposition, and more.

In addition, this Court recently entered an order granting in part and denying in part Defendants' motion to dismiss fraud allegations pursuant to Federal Rules of Civil Procedure Rules 9(b) and 12(b)(6).  In its order, the Court dismissed all claims for fraud, whether by alleged affirmative misrepresentation or by omission, to the extent they were predicated upon national marketing.  The Court's recent ruling significantly impacts the contours of this litigation and the scope of evidence that will be relevant at trial.  Defendants are prepared to review their pre-trial designations and remove any that pertain only to national marketing and ask that Plaintiff be directed to do the same.

Accordingly, for all the reasons discussed below, Defendants respectfully ask that this motion be granted, so that the facts, witnesses, evidence and legal issues for trial are sufficiently narrowed to allow the parties to prepare for trial.

## ARGUMENT

### I.    Plaintiff's Belated Rule 26 Disclosures And Interrogatory Responses Should Be Stricken

Plaintiff's attempt to unveil an unpled, undisclosed theory of damages on the eve of trial, together with his identification of new witnesses (including experts) and documents, violates the letter and purpose of the Federal Rules of Civil Procedure, and must be stricken.  The Federal Rules regarding discovery aim "to narrow and clarify the basic issues between the parties, and [serve] as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues."  *Hickman v. Taylor*, 329 U.S. 495, 501 (1947).  The goal is to replace "a game of blind man's buff [with] a fair contest with the basic issues and facts disclosed to the fullest practicable extent."  *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).

Accordingly, "a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party."  Fed. R.

Civ. P. 26(a)(1)(A)(iii).  In addition, parties are required to provide the name, address and telephone number "of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i).  The disclosing party has an affirmative duty to update such disclosures:

> A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e)(1).  Absent justification, failure to supplement warrants exclusion of the evidence.  *See Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004).

In this case, Plaintiff has supplemented his discovery responses to, among other things, present a never disclosed theory of damages, identify two new expert witnesses (without providing a report for either) and identify several additional fact witness.  For example, through interrogatories, Plaintiff was asked to "[p]rovide a computation of any category of damages claimed by Plaintiff."  In January 2008, Plaintiff provided the following response:

> Plaintiff claims damages for wrongful death.  The total amount and full extent of the plaintiff's damages including insurer paid expenses has not yet been fully determined.  Plaintiff claims damages for past medical expenses, past and future total lost earnings, conscious pain and suffering, loss of consortium, including society, guidance, companionship, sexual relations; loss of society to the children of the decedent, including instruction, moral training and superintendence of education.  Plaintiff reserves the right to claim any additional damages that may arise/or become known.

(Exh. B, Plaintiff's answer to Interrogatory No. 19.)

Fifteen months later, on May 22, 2009, the deadline for exchanging trial exhibit and witness lists, Plaintiff supplemented his response to add the following

> (a)  The replacement costs for household services rendered by the decedent for her husband, son and her infant daughter, see valuation set forth in Expectancy

- 6 -

Data, "The Dollar Value of Day: 2007 Dollar Valuation", based upon 2003-2007 time-diary data from the U.S. Department of Labor's Bureau of Labor Statistics' American Time Use Survey (ATUS), including but not limited to, page 56, Table 38, and American Time Use Survey (ATUS). The Court will be requested to take judicial notice of same.

(b)  The estimated costs of a college education for the years 2017-2021, consisting of $393,112.00 for a four year private institution; $166,204.00 for a four year public institution, and $37,085.00 for a two year community college; and veterinary school, the cost of which on information and belief exceeds the cost of college tuition.

(c) The loss of income resulting from Ron, Jr. dropping out of school as a result of his mother's suicide. See "The Big Payoff: Educational Attainment and Synthetic Estimates of Work-Life Earnings" Issued July 2002 by the U.S. Census Bureau, including but not limited to Figure 1 indicating a differential of approximately $19,000 per year for a full and part-time workers not high school graduates and full-time workers with an Associate's degree; approximately $33,000 per year for a full and part-time workers not high school graduates and full-time workers with an Bachelor's degree in 1999 dollars; and Figure 2 indicating a differential of approximately $1,100,000.00 over a 40 year work life between high school dropouts and workers with a Bachelor's degree. The Court will be requested to take judicial notice of same.

(d) The lifetime loss of the decedent's social security disability of approximately $11,000.00.

(e) The costs of pre-school and camp for decedent's infant daughter in the amount of $6,330.00 for the time period from August 29, 2002 through August 27, 2004, and continuing.

(Exh. C, Plaintiff's supplemental answer to Interrogatory No. 19.)[3]

By virtue of its sheer lateness, Plaintiff's supplemental interrogatory answer is prejudicial to Defendants.  Moreover, it is inconsistent with responses given by Plaintiff and his son in deposition.  Significantly, given that there is no evidence that the decedent had any significant earning potential, Plaintiff has constructed a brand new theory of damages based upon the alleged reduced earning potential of his son, and seeks to recover over $1 million just for this component of damages.  Plaintiff alleges that, as a result of his mother's death, his son dropped out of high school and seeks to recover the difference in earnings between a high-school drop-

---

[3] A copy of Plaintiff's supplemental interrogatory responses, with the new responses highlighted, is attached hereto as Exh. C.

out and various levels of college education.  In addition to the fact that Defendants had no opportunity to test or challenge this theory, when deposed in May 2008, Ron Bulger, Jr. testified that he graduated from high school and was planning on attending college:

> Q.  Did you graduate from high school?
>
> A.  Yes.  That's the one thing my mom wanted.
>
> Q.  What high school did you graduate from?
>
> A.  Peabody High School.
>
> Q.  In what year was that?
>
> A.  2005.
>
> . . . .
>
> Q.  Have you taken any college courses?
>
> A.  Not yet.
>
> Q.  Do you plan to do that?
>
> A.  Yes.

(Exh. D, R. Bulger, Jr. Dep. at 28-29.)  Plaintiff's new damage theory cannot be reconciled with the foregoing testimony, and Defendants would be significantly prejudiced if Plaintiff were allowed to present his theory to the jury.

Plaintiff has also identified as a potential witness Howard Freedman, President, Financial Aid Consulting.  (Exh. E, Supp. Discl. at 7.)[4]  Mr. Freedman is the author of "Projected College Costs . . . ," an attachment to Plaintiff's supplemental disclosures.  Mr. Freedman appears to be a late-disclosed expert on damages; however, no report or any other Rule 26 compliant disclosure was ever provided for him in compliance with the Court's order requiring Plaintiff's case-specific expert reports by August 2008.

Plaintiff's disclosure of a new theory of damages after the close of discovery and two months prior to trial is improper.  As Magistrate Judge Bowler recently explained in a decision

---

[4] A copy of Plaintiff's supplemental disclosure, with the new disclosures highlighted, is attached hereto as Exh. E.

excluding late disclosed damages information, "[s]upplementing the computation of damages or providing the calculation for the first time after the close of fact and expert discovery . . . is not timely." *AVX Corp. v. Cabot Corp.*, 251 F.R.D. 70, 76 (D. Mass. 2008), *adopted*, 252 F.R.D. 70 (D. Mass. 2008) (Stearns, J.) (overruling plaintiff's objection and adopting order in full). As in *AVX*, Plaintiff's disclosure of damages information after fact and expert discovery has ended "leaves [Defendants] without the means to explore and challenge the basis of" the new information. *AVX*, 251 F.R.D. at 78. Here, as there, Plaintiff cannot show that his failure to disclose the information during discovery was harmless or substantially justified. Indeed, given Plaintiff's representation to the Court in March that this case was ready for trial, there can be no explanation whatever for Plaintiff's failure. Therefore, exclusion of the new damages theory and all evidence related to it is required under Rule 37(c)(1). *See AVX*, 251 F.R.D. at 78 ("As explained repeatedly by the First Circuit, 'the required sanction in the ordinary case is mandatory preclusion.'" (quoting *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998))); *see also Nat'l Fire Prot. Ass'n v. Int'l Code Council, Inc.*, No. Civ.A.03-10848 DPW, 2006 WL 839501, at *30 (D. Mass. Mar. 29, 2006) (precluding damages information never provided in discovery responses or Rule 26(a) disclosures).

Indeed, neither the supplemental disclosure requirements of Rule 26(e) nor the pre-trial disclosure provisions of Rule 26(a)(3) "turn [a party's] duty to supplement their initial damages disclosures into an opportunity and even a right to hold back their real damages theories and computations until nearly the eve of trial." *Barlow v. Gen. Motors Corp.*, 595 F. Supp. 2d 929, 935, 938 (S.D. Ind. 2009) (excluding belated damages disclosures and awarding monetary sanctions); *see also id.* at 935-36 ("Rule 26(e) was intended to ensure prompt disclosure of new information, not to allow parties to spring late surprises on their opponents under the guise of a 'supplement' to earlier disclosures."); *AVX*, 251 F.R.D. at 80 n.13 (recognizing that late disclosure is most prejudicial "on the eve of trial"); *Wilson v. Pope*, No. 96 C 5818, 1997 WL 403684, at *8 (N.D. Ill. July 14, 1997) (granting motion to exclude at trial evidence of damages not disclosed during discovery, noting that "[d]efendants have obviously been denied the

opportunity to conduct discovery on this belatedly disclosed information and to prepare a defense").

Plaintiff's belated supplementations are not limited to damages. Plaintiff also lists David Egilman, Clinical Associate Professor at Brown University, as a witness. (Exh. E, Supp. Discl. at 8.) Prof. Egilman does not have knowledge of any relevant facts in this litigation. He is a professional expert witness, described by one court as so "clear[ly] . . . motivated by his personal agenda and by his animosity, bias, prejudice, hostility and vindictiveness" that he was "not a credible witness." *Ballinger v. Brush Wellman, Inc.*, No. 96-CV-2532, slip op. at 1-2 (Colo. Dist. Ct. June 22, 2001), *aff'd in part, vacated in part*, No. 01CA1982 (Colo. Ct. App. Sept. 5, 2002) (attached as Exh. F). He was recently sanctioned by Judge Weinstein, who found that Egilman conspired with a reporter and an attorney to deliberately violate the court's protective order. *See In Re Zyprexa Injunction*, 474 F. Supp. 2d 385, 395 (E.D.N.Y. 2007).

In addition to Dr. Egilman, Plaintiff identified a host of fact witnesses who were not previously disclosed and have not been deposed in this litigation, including: Michael Cennami, Susan Murphy, Fran Pacillo, Kelly Gates, Becky Baker-Warry, Matt Fleming, Richard Evans, and nine representatives of the Peabody Police Department and Peabody Fire Department. Plaintiff also identified, for the first time, certified bills from the Peabody YMCA showing payments and dates for preschool and camp for R. B.; "The Dollar Value of a Day," Time Diary Analysis, 2007 Dollar Valuation, Expectancy Data, Economic Demographers; American Time Use Survey (ATUS); Projected College Costs for Selected Colleges in Massachusetts 2017-2021 by Howard Freedman, President, Financial Aid Consulting; and the Big Payoff; Educational Attainment and Synthetic Estimates of Work-Life Earnings. (Exh. E, Supp. Discl. at 2-3, 19.) On April 21 and May 8, 2009, Plaintiff also supplemented his Rule 26 disclosures to identify documents that clearly existed but were not produced in discovery, including family photographs; funeral records; a letter from Children's Friend & Family Services dated 3/24/09; a birth certificate for R. B.; a health report form regarding R. B.; a record regarding R. B. from Pediatric Associates of Greater Sales Pediatric Associates of Greater Salem; and school records

of R. B.  (Exhs. G & H.)  These disclosures were also after the close of discovery, untimely and unjustified.

For the reasons discussed above, Plaintiff's late disclosures are improper and should be stricken.  *See, e.g.*, *Macaulay v. Anas*, 321 F.3d 45, 51-53 (1st Cir. 2003) (affirming order precluding plaintiff from offering at trial an expert theory first disclosed less than two months before trial); *Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 202-03 (1st Cir. 1996) (affirming exclusion of expert witnesses announced after the deadline for designating experts and on the eve of trial); *Morris v. Hockemeier*, No. 05-0362-CV-W-FJG, 2007 WL 1040670, at *1-*2 (W.D. Mo. Apr. 3, 2007) (granting motion to strike fact witness included in plaintiff's Rule 26(a)(3) pre-trial witness list but never disclosed in his Rule 26 disclosures or discovery responses).  However, even that remedy is insufficient to cure the prejudice to Defendants.  Had Plaintiff timely designated all fact witnesses and evidence known to him, Defendants would have conducted additional depositions or other discovery and developed additional facts relevant to the trial of this case.[5]  They have been denied that opportunity.

Accordingly, all newly identified witnesses and documents should be stricken and Plaintiff should be precluded from presenting any evidence to the jury in support of his new damages theory.  At the same time, because Defendants have also been deprived of an opportunity to depose fact witnesses who may have provided information relevant to the defense of the case, they should be allowed, at their election, to depose newly identified witnesses on a reasonable schedule and designate such deposition testimony for trial.[6]

---

[5] During a "meet and confer," Plaintiff's counsel offered to request a week adjournment for depositions.  However, given Plaintiff's failure to make a timely disclosure, Defendants should not be put in the untenable position of being forced to conduct discovery on new issues or of new witnesses within a week and to do so while they are already fully engaged in trial preparations.  Moreover, Plaintiff's failure to disclose has a cascading effect.  Previously undisclosed fact witnesses would likely have identified additional avenues of discovery and expert opinions might have been influenced by additional facts about the decedent, reopening discovery on multiple levels.

[6] Only if Defendants elect to designate such deposition testimony, should Plaintiff be permitted to counter-designate testimony.  Such relief is required to address and mitigate Plaintiff's failure to timely disclose witnesses known to him.

II.     **Plaintiff Should Be Required To Comply With Rules 16 And 26(A)(3), As Well As This Court's April 9, 2009 Order, By Providing Meaningful And Realistic Designations Of Witnesses And Exhibits**

While Federal Rule of Civil Procedure 26 generally permits broad discovery, the Federal Rules, as implemented by local rules and court orders, also contain provisions to ensure that the parties winnow down the voluminous discovery obtained in the course of a litigation to a manageable evidentiary record for trial, and provide fair notice to the other side of the evidence that they will seek to introduce at trial.  Thus, Rule 26(a)(3) requires pre-trial disclosures of witnesses, deposition designations and exhibits, while Rule 16 governs the final pre-trial conference and entry of the final pre-trial order.

As the First Circuit has observed, "[t]he truth-seeking function of our adversarial system of justice is disserved when the boundaries of a suit remain ill-defined and litigants are exposed to the vicissitudes of trial by ambush."  *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995).  To avoid such a result, "[t]he pre-trial order is an indispensable mechanism in the district court.  Its purpose is to determine which of the claims pleaded will actually be tried.  The claims, issues, and evidence are limited by the order and the course of the trial is thereby narrowed to expedite the proceeding."  *Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir. 1982).  Accordingly,

> "Rule 16(e) instructs judges to enter pre-trial orders to define the scope of issues at trial.  We have said that the district court should construe such orders narrowly because a "'failure to adhere to such a rule would bring back the days of trial by ambush and discourage timely preparation by the parties for trial.'"

*Riquelme* Valdes *v. Leisure Res. Group, Inc.*, 810 F.2d 1345, 1357 (5th Cir. 1987) (citation omitted).

In contrast to Plaintiff, Defendants have carefully reviewed the discovery material in this action and attempted to limit their designations in a way that would provide fair notice to Plaintiff of the evidence that Defendants are likely to introduce at trial.  For example, Defendants designated fewer than 600 exhibits (not including medical records and medical literature).  They have designated 40 live witnesses, consisting primarily of decedent's family, friends, heath care

- 12 -

providers and Defendants' experts.  The longest examination of a witness is estimated to take 4 hours on direct, while the total estimated time is a little over 43 hours.  Defendants have designated 43 witnesses by deposition, but many of these overlap with Defendants' live witness designations and have been identified in case a witness is unavailable.  When the overlap with the live witnesses is eliminated, Defendants have designated an additional 17 witnesses by deposition, for a total estimated time of fewer than 12 hours.[7]

To say that Plaintiff has taken a "kitchen-sink" approach to his pre-trial designations would be to underestimate the breadth of his designations by several orders of magnitude.  That Plaintiff has not made any meaningful attempt to identify the evidence that he will or is reasonably likely to use at trial is made clear from the fact that he has designated almost every document that he or any other plaintiff in Neurontin litigation has ever made an exhibit to any motion, expert report or deposition, including documents such as deposition notices, attorney biographies, deposition transcripts, discovery responses, pleadings, Daubert briefing, reliance lists considered by experts, and even federal statutes. [8]

As another example of Plaintiff's overly broad designations, Plaintiff has identified the following voluminous *databases* as trial exhibits:  Phoenix database, ARISG database, Betsy, CMMS, NDC, Merlin, Sherlock, Verispan, ADE Data for Cheryl Blume, Sales Data for Kip King, FDA Database, IMS Data and RR Database.  Obviously, Plaintiff does not intend to introduce these entire databases as evidence at trial.  Nor could the jury give meaningful consideration to an entire database as evidence.  Instead, Plaintiff seeks to avoid his disclosure obligations and create supplemental expert reports never before produced under the guise of

---

[7]  A number of Defendants' designations were made conditionally and in anticipation of the need to rebut evidence that Defendants would object to during Plaintiff's case, such as marketing evidence. Defendants are prepared to reduce their number of designations even further based upon this Court's May 26 Order dismissing fraud claims based on national advertising. *See infra* Section IV.

[8]  Plaintiff's exhibit list includes over 403 exhibits with Bates numbers, but nothing in the description column.  There is no way to tell what these exhibits are without individually pulling up a copy of each document– a task to which Defendants have not put Plaintiff.  There are also a number of entries with cryptic descriptions, no Bates number and "MISC" as the source.  Plaintiff's counsel has advised defense counsel that he is continuing to collect copies of Plaintiff's exhibits to serve on defense counsel.

creating summaries for trial.

Indeed, when Defendants' counsel advised Plaintiff's counsel of their objection to the designation of entire databases as exhibits, Plaintiff's counsel made plain his intent to continue to generate expert reports and summaries based upon his designations of the databases. As a result, Defendant's counsel wrote Plaintiff's counsel on May 22, 2009:

> We had previously proposed that the May 22, 2009 exhibit designation deadline applies only to exhibits that will be offered into evidence ("evidentiary exhibits") and not to demonstrative aids. "Demonstrative aids" refers to charts, summaries or other demonstrative aids used as pedagogical devices to clarify or simplify information for the jury, but which are not themselves evidence. Any evidentiary exhibits upon which such documents are based must be designated by May 22, 2009. We further proposed that to the extent the parties intend to offer any demonstrative aids into evidence, whether pursuant to FRE 1006 or otherwise, they must be exchanged by July 8, 2009 and all evidentiary exhibits upon which they are based must have been designated by May 22, 2009.

> While there was general agreement on this proposal, we continue to disagree regarding the scope of what is being proposed. We believe that the purpose of the exhibit designation is to give fair notice to the opposing party of the exhibits that will actually be used at trial, a goal that is not served by an overly broad designation or the inclusion of items such as databases, which would never be introduced at trial and could not be presented in their entirety to the jury. Instead, to the extent there are specific records from the databases you intend to use, or your experts have prepared summaries of the databases, those should be designated on May 22.

> You stated your belief that you could designate the entire database as an exhibit and generate summaries never before produced in discovery on July 8. We disagree. None of our agreements regarding exchange of exhibit designations alters the party's discovery obligations, including their obligations to disclose reports and opinions of their experts under Rule 26. There is a profound difference between a summary such as a chronology, which simply provides a graphic depiction of information that both sides are already on notice of through discovery, and a summary that represents previously undisclosed expert analysis of voluminous data. The latter is not permitted by our agreements which, as noted, do not alter our Rule 26 obligations.

(Exh. I at 3-4.) Plaintiff's counsel agreed that defense counsel's letter accurately described their disagreement. (Exh. J at 2.)

Plaintiff's overly broad designations are contrary to the intent of Rules 16 and 26 and represent an impermissible trial by ambush tactic. *See, e.g.*, *El-Bakly v. Autozone, Inc.*, No. 04 C

2767, 2008 WL 1774962, at *1 (N.D. Ill. Apr. 16, 2008) (noting that plaintiff's designation of his entire document production on his exhibit list "[did] not comply with [the] mandate" that each party "designate the specific exhibits anticipated for use at trial" in order to "narrow[] the universe of relevant and admissible materials as exhibits in advance of trial"; excluding all documents in plaintiff's production that were not separately designated as exhibits); *see also Rutherford v. United States*, No. 07cv47-L, 2008 U.S. Dist. LEXIS 92155, at *2-*3 (S.D. Cal. Nov. 13, 2008) (rejecting joint proposed pre-trial order where, *inter alia*, "[i]t appear[ed] that the parties [had] included every document in the case as an exhibit" instead of identifying "only those documents [the parties] intend to introduce at trial").

Accordingly, Plaintiff's pre-trial designations should be stricken and Plaintiff should be required to re-designate his witnesses, deposition designations and exhibits in accordance with this Court's April 9, 2009 Order, Rule 26, Rule 16 and Local Rule 16.5(f). Plaintiff should be ordered to designate only those witnesses and exhibits that he will call or introduce at trial, or which he may, with reasonable probability, seek to introduce at trial. Defendants should be allowed 30 days following receipt of such revised designations to object or counter-designate, as originally provided in this Court's April 9, 2009 order.

## III.   Plaintiff's Requests For Admission Should Be Stricken

Fact discovery in this case ended on July 1, 2008. In its April 9, 2009, this Court created a limited exception to the discovery cut-off and allowed the parties to serve Requests for Admission regarding authenticity.

Plaintiff served requests for admission regarding over 1,100 documents on May 22.[9] Such requests were not limited to authenticity, but far exceeded the scope of this Court's April 9, 2009. For each document, Plaintiff asked Defendants to admit:

(1) "that such document is admissible under the Federal Rules of Evidence,"

---

[9] During a "meet and confer," Plaintiff's counsel advised defense counsel of his intent to supplement this list and seek even more admissions at some future date regarding an undisclosed number of additional documents.

(2) "that such document is an admission of Defendants as defined by Federal Rules of Evidence 801(d)(2),"

(3) "that such document is a 'record of regularly conducted activity' as that term is defined by Federal Rules of Evidence 803(6)," and

(4) "that such document is the final version of the document."

(Exh. K at 3.)[10]

For any document whose authenticity was not admitted, or where Defendants refused to provide any of the other requested admissions, Plaintiff demanded "a detailed explanation of the basis for your position."  Plaintiff also sought the following information:

(1) Identification by Bates Number of the most complete or final version of the document which still exists (if not admitted to be final).

(2) Identification by Bates Number of any other document which must be read in conjunction with the identified document in order to understand the context of the identified document.

(3) Identification by Bates Number of any other document which modifies or changes the content of the identified document.

(4) Identification by Bates Number of any other document that was attached to the identified document.

(*Id.* at 4.)   Plaintiff's requests for admission and interrogatories served after the close of discovery exceed what is permitted by this Court's April 9 order and are calculated to impose an unreasonable burden on Defendants as they attempt to prepare for trial.  Such requests should be stricken.

---

[10] Defendants proposed that the parties stipulate to the authenticity of the following categories of documents:  medical records; final approved labeling; draft labeling exchanged with FDA; communications between FDA and Pfizer/Warner-Lambert; NDA submissions to FDA; FDA reports and reviews; FDA contact reports; Pfizer/Warner-Lambert generated and produced internal documents, such as emails, memos, minutes, presentations, reports, etc.; Advisory Committee briefing documents, submissions and transcripts; and communications between counsel for Neurontin plaintiffs and the FDA. (Exh. L.)  Although no stipulation has yet been reached, the parties have agreed to continue to confer in an attempt to reach agreement.

**IV.     The Parties Should Be Directed To Narrow Their Designations In Conformance
        With This Court's May 26 Order Regarding Fraud Claims**

On May 26, 2009, this Court entered an order granting in part and denying in part
Defendants' motion to dismiss fraud allegations pursuant to Federal Rules of Civil Procedure
9(b) and 12(b)(6).  In its order, the Court granted "the motion to dismiss all fraud claims alleging
affirmative misrepresentations or a suppression of information as a part of a national marketing
campaign because there is no allegation of reliance on specific statements or
misrepresentations."  (Mem. and Order [1790] at 29.)  As to the instant lawsuit, the Court
granted the motion and dismissed all fraud claims based on alleged affirmative
misrepresentations.  (*Id.* at 33.)   While the Court denied the motion as to claims of
misrepresentation by concealment, it provided that even concealment claims were dismissed "to
the extent they are premised on the claim of fraudulent omissions in the national advertising and
marketing campaign."  (*Id.*)

As a result of this Court's May 26 order, evidence related to national advertising,
marketing and promotion (whether for off-label use or otherwise) is no longer relevant to any
issue in this lawsuit.  *See, e.g., In re Norplant Contraceptive Prods. Liab. Litig.*, No. MDL 1038,
1997 WL 81092, at *1 (E.D. Tex. Feb. 21, 1997) (excluding evidence of marketing and
promotional materials, as well as internal correspondence, correspondence with public relations
firms and correspondence with the FDA all regarding the same, where there was no evidence that
plaintiff's' prescribers were actually exposed to such evidence); *In re Seroquel Prods. Liab.
Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 WL 223140, at *4-*5 (M.D. Fla. Jan. 30, 2009)
(excluding letters from FDA's Division of Drug Marketing, Advertising and Communications
regarding Seroquel and another of defendant's medications since "[p]laintiffs have not shown
that their prescribing physicians were exposed to the promotional materials" at issue in the
letters).

A large part of what Plaintiff has designated as exhibits pertains only to national
marketing.  For example, Plaintiff's exhibit list for trial includes evidence relating to speaker

bureau presentations, continuing medical education presentations, consultants' meetings, advisory board meetings and teleconferences regarding Neurontin which are unconnected to the decedent's prescribing physicians.  Likewise, Plaintiff has designated numerous witnesses by deposition whose testimony pertains only to national marketing and is not relevant to the specific issues in this case, including:  Mark Brown, Suzanne Carrington, Clare Cheng, Suzanne Doft, Helen Duda-Racki, Allison Fannon, Bruce Fleischman, David Franklin, Christine Grogan, Jill Kerrick Walker, John Knoop, John Marino, Tamela Martin, Michele Meager, Avanish Mishra, Bina O'Brien, Jennifer Samuels, Martin Teicher, Leslie Tive, Adrian Vega and Margaret Yoder.

Defendants have also conditionally designated marketing evidence that they might seek to introduce in opposition to Plaintiff's case, in the event that Defendant's objections to such evidence were overruled.  Defendants believe that this Court's recent order has sufficiently clarified the issue that they are prepared to revise their designations to remove such exhibits and witnesses; provided that Plaintiff is directed to do likewise.  By this process, the parties should be able to significantly narrow the issues to be tried, evidence to be presented and disputes for this Court to resolve.

## V.    Request For Conference

Resolution of the issues raised by this motion have implications for the remaining tasks that need to be completed prior to trial.  In addition, there may be other areas of dispute or uncertainty that could be clarified through a pre-trial conference with the Court.  Defendants, therefore, request that the Court hold a pre-trial conference at its earliest convenience so that these matters can be discussed with the Court and the parties can prepare for trial in an efficient manner.  A preliminary pre-trial conference will also aid in narrowing the remaining issues to be decided at the final pre-trial conference.

## CONCLUSION

For the foregoing reasons, Defendants ask that the Court grant this emergency motion and enter an order (1) striking Plaintiffs' supplemental disclosures, (2) directing Plaintiff to revise his pre-trial designations and limit such designations to testimony and evidence that he will actually introduce at trial or which he may, with reasonable probability, introduce at trial, (3) striking Plaintiff's request for admissions, (4) directing the parties to revise their pre-trial designations to remove any evidence related only to national marketing, and (5) scheduling a conference to resolve any other outstanding issues.

Dated: May 29, 2009                         Respectfully submitted,

                                            SKADDEN, ARPS, SLATE,
                                              MEAGHER & FLOM LLP

                                            By:    /s/ Mark S. Cheffo
                                                   Mark S. Cheffo

                                            Four Times Square
                                            New York, NY 10036
                                            Tel:  (212) 735-3000

                                                   -and-

                                            SHOOK, HARDY & BACON L.L.P.

                                            By:    /s/ Scott W. Sayler
                                                   Scott W. Sayler

                                            2555 Grand Blvd.
                                            Kansas City, MO 64108-2613
                                            Tel:  (816) 474-6550

                                                   -and-

WHITE AND WILLIAMS LLP

By:     /s/ David B. Chaffin
        David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on May 29, 2009.

/s/ David B. Chaffin
David B. Chaffin