UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:  NEURONTIN MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

PRODUCTS LIABILITY ACTIONS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

## DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S ORDER DENYING MOTION TO COMPEL DISCOVERY OF KEITH ALTMAN AND DR. CHERYL BLUME

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), Defendants Pfizer Inc and Warner-Lambert Company LLC (together, "Pfizer"), by counsel, hereby object to Magistrate Judge Sorokin's May 14, 2009 Electronic Order denying its motion to compel discovery of Keith Altman and Cheryl Blume, Ph.D, and respectfully ask that the Court set aside Magistrate Judge Sorokin's Order and issue an Order granting the requested discovery.

### PRELIMINARY STATEMENT

As this Court is aware, Plaintiffs have proffered Dr. Cheryl Blume as an expert in general causation, failure to warn, pharmaceutical labeling, and pharmacology in this case.  Dr. Blume issued a massive 207-page expert report.  ("Blume Report").  [1197-4.]  At her deposition, it became apparent that in preparing her report, Dr. Blume relied upon autonomous, in-depth, substantive data analysis conducted by, and key summary charts created by, Mr. Keith Altman, an employee of Finklestein & Partners – Plaintiffs' counsel.  Mr. Altman generated these analyses and tables while then serving as an "adverse event analyst" for Plaintiffs' counsel.  In this capacity, Mr. Altman provided Plaintiffs' experts, primarily Dr. Blume, with the statistical information and analyses on which they based their expert opinions and reports.  More

particularly, Mr. Altman designed and conducted queries of the Adverse Event Reporting System ("AERS") database and analyzed and summarized the AERS data that formed the basis of Dr. Blume's opinions on Neurontin post-marketing adverse events.  Thus, because Mr. Altman's work was not of a ministerial or clerical nature, but instead crucial to the formulation of Dr. Blume's opinions, discovery on Mr. Altman's work – and in turn Dr. Blume's analysis and reliance upon that work – is critical to Pfizer's understanding of the basis for Dr. Blume's opinions.

Importantly, Dr. Blume's deposition testimony reveals that she has next to no understanding of the methodologies that Mr. Altman utilized in generating and analyzing the data upon which she relied.  At her deposition, Dr. Blume could not answer substantive questions about Mr. Altman's work, and conceded her ignorance of Mr. Altman's methods and her failure to validate his work and methodologies.  Indeed, Dr. Blume blindly relied on her past experiences in working with Mr. Altman as validation of his purported expertise and the reliability of his work.  Such blind reliance is plainly insufficient to ground Dr. Blume's expert opinions, and Pfizer has requested discovery so that it may have an opportunity to fully explore Mr. Altman's work and the bases for Dr. Blume's opinions in this case.

Plaintiffs have refused to make Mr. Altman available for deposition and have similarly shielded from discovery the documents related to his work and his communications with Dr. Blume from discovery.  Discovery of these materials – and a supplemental deposition of Dr. Blume to understand how she used such materials – is plainly warranted under Rule 26. Accordingly, on April 29, 2009, Pfizer moved to compel discovery from Mr. Altman and Dr. Blume [1767].  Yet, contrary to settled discovery principles, Magistrate Judge Sorokin issued a one-sentence Electronic Order on May 14 denying this discovery on the ground that "the time for discovery into the grounds of this expert has long passed."  Thus, it appears that the Court addressed the portion of Pfizer's motion directed to Dr. Blume, but no reference was made in Magistrate Judge Sorokin's Order specifically pertaining to Mr. Altman.

This Court has wide discretion to modify discovery deadlines to permit the requested discovery. Such flexibility is especially necessary where, as here, Mr. Altman's role in the litigation has gradually but significantly expanded over the last year and a half. Indeed, in January 2008, Mr. Altman was providing behind-the-scenes substantive analysis and support to Dr. Blume. By April, he had issued his own 41-paragraph declaration in this case setting forth sworn testimony on numerous factual assertions about the expert opinions and reliance materials at issue. And on December 10, 2008, just months ago, after graduating from an online law school program and obtaining admission to the California bar, Mr. Altman applied for – and was granted – status as co-counsel of record in this action [1498], yet has continued to create and file, in support of Plaintiffs' experts' opinions, dozens of pages of additional charts and data analyses that Plaintiffs' experts are relying on but cannot verify.

In stark contrast to his one-line denial of Pfizer's motion to compel, on April 24, Magistrate Judge Sorokin ordered discovery of independent biostatistician Dr. Kwan Hur in response to Plaintiffs' emergency motion. (*See* 4/24/2009 Electronic Order.) Dr. Hur co-authored an unpublished manuscript of which defense expert Dr. Robert Gibbons is the lead author and which Dr. Gibbons referenced in and provided with his expert report. Dr. Hur also provided certain computer programming assistance in connection with data on which Dr. Gibbons relied in his expert report. Unlike Dr. Blume, however, Dr. Gibbons supervised and was intimately familiar with Dr. Hur's work, and was able to respond meaningfully to questions about Dr. Hur's work. Dr. Hur's deposition was held on May 21, where he was questioned by Mr. Altman regarding assistance he provided to Dr. Gibbons. And while Mr. Altman's work and correspondence with Dr. Blume in this case remains cloaked in secrecy, Magistrate Judge Sorokin ordered that methodology-related correspondence between Hur and Gibbons be disclosed by defendants. (*See* 5/20/2009 Electronic Order.) Pfizer has produced those documents to Plaintiffs.

For the reasons discussed below, Magistrate Judge Sorokin's Order denying discovery from Mr. Altman and additional discovery from Dr. Blume is clearly erroneous and contrary to law, and should be set aside.

## ARGUMENT

### Magistrate Judge Sorokin's Order Denying Pfizer Full and Complete Discovery Of All Material Considered By Dr. Blume In Forming Her Opinions Is Clearly Erroneous And Contrary To Law

A district court is empowered to reconsider a non-dispositive ruling of a magistrate judge "where it has been shown that the . . . order is clearly erroneous or contrary to law." *United States v. Bruck*, 152 F.3d 40, 43 (1st Cir. 1998) (quoting 28 U.S.C. § 636(b)(1)(A)); *United States v. Garcia*, 983 F.2d 1160, 1166 (1st Cir. 1993). Such a ruling is clearly erroneous "when although there is evidence to support it, the reviewing court [on the entire evidence] is left with the definite and firm conviction that a mistake has been committed." *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 32 (1st Cir. 2008).

Magistrate Judge Sorokin's Order denying discovery of Mr. Altman and Dr. Blume – stripping Pfizer of its right to discovery into "any nonprivileged matter that is relevant to any party's claim or defense" – is clearly erroneous and contrary to law. Fed R. Civ. P. 26(b)(1). It flies in the face of the long-established principle that "the Federal Rules of Civil Procedure are to be construed liberally in favor of discovery," *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000), and the notion that the Rules require disclosure of all documents "considered by [an expert] witness in forming the opinions." *Stephens v. Trust For Pub. Land*, 475 F. Supp. 2d 1299, 1306 (N.D. Ga. 2007). This, of course, encompasses any "data or other information" considered by an expert witness, including all "documents and information disclosed to a testifying expert in connection with his testimony." *Id*. Indeed, in moving to compel Dr. Hur's deposition, Plaintiffs acknowledged that where an expert is substantially assisted in creating a report, and the methodology and analysis underlying the expert report are exclusively within the assistant's cognizance, a party is entitled to depose the person who aided the expert. (*See* Pls.' Mem. In Support of Mot. to Compel [1764] at 5-7.) It is fundamental that a party "cannot properly cross-

4

examine [an expert] without first understanding how his assistant manipulated the data." *Id.*; *see also Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 U.S. Dist. LEXIS 21100, at *18 (D. Md. Mar. 19, 1999), *aff'd sub nom. Johnson v. Circuit City Stores, Inc.*, 203 F.3d 821 (4th Cir. 2000); *see also Dura Auto Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *Long Term Capita. Holdings v. United States*, No. 01-CV-1290, 2003 WL 21269586, at *3 (D. Conn. May 6, 2003).   While Magistrate Judge Sorokin based his May 14 Order entirely on timeliness grounds, the Court has wide discretion to grant discovery, court-imposed deadlines notwithstanding.   *See, e.g.*, *Parkin v. Tilton*, No. 07-1869, 2009 WL 55962, at *1-*2 (E.D. Cal. Jan. 7, 2009) (extending discovery deadline even where request was untimely and movant had not conducted any discovery and could not provide a good excuse for his failure because "the Court favors decisions on the merits"); *Hamilton v. Arnold*, No. 97-40035, 2000 WL 1373671, at *2 (D. Mass. Sept. 20, 2000) (ordering extension of discovery deadline for limited purpose).

Despite these well-settled principles, Pfizer has not enjoyed a full and fair opportunity to depose Dr. Blume on the basis of her opinions, and has had no opportunity for discovery from Mr. Altman even though it became apparent at Dr. Blume's deposition that much of the data analysis of adverse event reports contained within her report was prepared by Mr. Altman.  (*See* Blume Tr., attached hereto as Exh. A, at 50:9-54:5.)   Indeed, Dr. Blume confirmed that the manipulation and analysis of those adverse event reports (as opposed to mere "extract[ion]" or "pull[ing]" of data) was conducted by Mr. Altman.  (*See, e.g.*, Blume Tr. at 18:10-19:2, 47:22-49:16, 50:16-51:6, 53:20-54:10, 86:20-24, 91:21-92:12, 102:17-21.)   Dr. Blume's testimony further established that, absent Mr. Altman's underlying analysis, she would have been able to support few, if any, of the opinions she has offered.   Mr. Altman, for example, not Dr. Blume, prepared 21 adverse event charts that appear on pages 69-75, 116-118, 120-128, 194-195 of her report [1197-4].   (Blume Tr. at 50:16:51:6, 53:20-54:10, 86:20-24, 91:21-92:12, 102:17-21).  Dr. Blume admitted that she had relied on Mr. Altman's analyses even though she could not verify their accuracy or testify about his methodology.  (*Id.* at 50:16:51:6, 56:9-23, 69:3-15, 70:9-71:13, 73:8-15, 86:20-87:8, 91:21-92:4, 97:18-98:2, 102:17-24.)   Indeed, Dr. Blume stated

that she "would not be able to completely validate what [Mr. Altman] does" (*id.* at 65:14-66:24), and does not "know if there is [sic] any errors" in his work.  (*Id.* at 67:1-25.)

Similarly, although Plaintiffs have argued that Mr. Altman served but a "ministerial" function [1778 at 7-14], Mr. Altman himself admits that his role in providing data analysis and other assistance to Dr. Blume in the formulation of her opinions has been ongoing and highly substantive, not ministerial.  (*See, e.g.*, April 2008 Altman Decl. [1197-144], attached hereto as Exh. B, ¶¶ 24, 32, 38, 40.)  Despite her admission of reliance upon Mr. Altman's work in the forming of her opinions, Dr. Blume could not meaningfully respond in her deposition to questions about Mr. Altman's methodology.  Dr. Blume also conceded that she had relied on Mr. Altman's adverse event analyses even though he is an employee of a firm with a significant financial interest in the litigation.  (*See* Blume Tr. at 15:3-20, 49:17-50:15, 599:15-22, 601:14-15, 602:20-603:23.)  Dr. Blume also testified that she had "no idea how [Altman is] compensated" (*id.* at 59:11-19), or how his financial interest might have affected the objectivity of the analyses he conducted and upon which she relied.  (*Id.* at 59:21-60:5.)

Despite her lack of knowledge about Mr. Altman's methodologies, Dr. Blume admittedly based her confidence in his work on past collaboration and working relationships, arguing that she has used Mr. Altman's work product for prior FDA submissions.  Nevertheless, Dr. Blume has even rebuked Pfizer's efforts to question her on those past experiences, claiming that every one of them is shielded by confidentiality agreements.  (*Id.* at 20:16-23:14; 57:17-24; 391:11-16.) Mr. Altman similarly held out this purportedly confidential work as the basis for his expertise and the reliability of his analysis throughout his April 2008 Declaration.  (Altman Decl. ¶¶ 10, 17, 32.)  This claim of confidentiality, of course, is insufficient to block discovery as to matters considered by Dr. Blume in formulating her opinions.  *See Norfin, Inc. v. IBM*, 74 F.R.D. 529, 531-32 (D. Colo. 1977) (holding that plaintiff could not shield from discovery expert's prior relevant experience with claims of confidentiality); *Herman v. Marine Midland Bank*, 207 F.R.D. 26, 31 (W.D.N.Y. 2002) (collecting cases and explaining that as to materials considered by a testifying expert, Rule 26's disclosure requirement trumps any privilege claim).

In their papers opposing Pfizer's motion before Magistrate Judge Sorokin, Plaintiffs made much of the fact that in January 2008, Pfizer's counsel declined to depose Mr. Altman because he was a "non-testifying witness." [1778 at 16-17.] At that time, however, he *was* a non-testifying witness. However, Plaintiffs fail *even once* to mention the fact that Mr. Altman subsequently voluntarily *testified* before this Court by submitting his 41-paragraph Declaration on April 3, 2008, in which he made numerous factual assertions about the expert opinions and reliance materials at issue. [1197-144] The declaration spells out, at great length, Mr. Altman's purported qualifications in the areas of adverse event analysis and pharmacovigilance (*see* Altman Decl. ¶¶ 1-12), trumpets his work and qualification as an expert on similar issues in other litigation (*id.* ¶ 13), argues for the reliability and credibility of his methodology (*id.* ¶¶ 10-11, 15-16, 28-32, 36, 39, 40), characterizes and defends the opinions of Dr. Blume (*id.* ¶¶ 18, 24, 27, 33), and opines in detail on the reports and testimony of Defendants' experts (*id.* ¶¶ 37-38). Thus, discovery from Mr. Altman and a supplemental deposition from Dr. Blume are essential to Pfizer's full and fair opportunity for discovery in this case.

Finally, plaintiffs have argued that Pfizer's motion to compel the discovery is somehow untimely. However, as demonstrated above, Pfizer has understandably struggled over the course of this litigation to comprehend exactly what role Mr. Altman serves. He has morphed from Dr. Blume's right-hand man (in and of itself sufficient to compel discovery), to testifying witness, to counsel-of-record, and, in view of the above, Pfizer had no choice but to designate him as a trial witness on May 22. Throughout this litigation, Mr. Altman has performed extensive compilations and analyses of statistical data; he has provided sworn statements in support of the opinions of Plaintiff's witnesses; and he has relied on his own alleged "expertise" in challenging the scientific conclusions of Pfizer's experts. Accordingly, the Court should exercise its discretion to order discovery, deadlines notwithstanding. *See Parkin*, 2990 WL 55962 at *1-*2; *Hamilton*, 2000 WL 1373671 at *2. Plaintiffs should be required to produce Mr. Altman for deposition. Prior to that, Plaintiffs should produce all documents relevant to the work Mr. Altman performed that was considered by Dr. Blume, including all letters, e-mails, notes,

calendars, and any other documents reflecting communications between Mr. Altman and Dr. Blume relating to the Neurontin litigation; all of Mr. Altman's underlying data, protocols, programs and outputs for analyses regarding Neurontin adverse events, including, but not limited to, analyses of the AERS database and Pfizer's ARISg database; all documents related to Dr. Blume's prior FDA experience with Mr. Altman, which is the basis for her assumption of reliability of his methods and data; all billing records of Dr. Blume and any billing records of Mr. Altman; and all of Dr. Blume's e-mails, written correspondence or other documented communications related to Neurontin.[1]

Plaintiffs should then be ordered to produce Dr. Blume for deposition. Not only should Pfizer be given an opportunity to depose Dr. Blume on any issues discovered during Mr. Altman's deposition, Dr. Blume should be ordered to testify about her prior collaborations with Mr. Altman that led her to assume the reliability of his methods and data analysis, upon which she relies for her opinions in this case. If Dr. Blume is not willing, for reasons of confidentiality or otherwise, to testify fully about the bases of her opinions, Plaintiffs should withdraw her as an expert in this case.[2]

---

[1] By letter dated April 14, 2009, Pfizer requested that Plaintiffs produce the above listed documents. (*See* 4/14/09 letter, attached hereto as Exh. C.) Plaintiffs refused to do so.

[2] In Plaintiffs' List of Witnesses to be Presented at Trial, they represent that they expect to call Dr. Blume for **two days** of testimony.

## CONCLUSION

For all of the foregoing reasons, the Court should set aside Magistrate Judge Sorokin's Order denying discovery of Keith Altman and Dr. Cheryl Blume, and issue an Order requiring Plaintiffs to (1) produce all documents related to Dr. Blume's opinions, including documents related to Mr. Altman's work and communications with Dr. Blume, (2) make Mr. Altman available for deposition, (3) make Dr. Blume available for a supplemental deposition following the deposition of Mr. Altman, and (4) direct Dr. Blume to respond to questions about her prior collaborations with Mr. Altman.

Dated:  May 29, 2009                          Respectfully submitted,

                                              SKADDEN, ARPS, SLATE,
                                                MEAGHER & FLOM LLP

                                              By:     /s/ Mark S. Cheffo
                                                      Mark S. Cheffo

                                              Four Times Square
                                              New York, NY 10036
                                              Tel:  (212) 735-3000

                                                      -and-

                                              SHOOK, HARDY & BACON L.L.P.

                                              By:     /s/ Scott W. Sayler
                                                      Scott W. Sayler

                                              2555 Grand Blvd.
                                              Kansas City, MO 64108-2613
                                              Tel:  (816) 474-6550

                                                      -and-

WHITE AND WILLIAMS LLP

By:     /s/ David B. Chaffin
        David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 330-5000

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on May 29, 2009.

/s/ David B. Chaffin_____
David B. Chaffin