UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------------------------------x
In re:  NEURONTIN MARKETING,
        SALES PRACTICES AND
        PRODUCTS LIABILITY LITIGATION
----------------------------------------------------------------x

THIS DOCUMENT RELATES TO:

*Bulger v. Pfizer Inc.*, 1:07-cv-11426-PBS
----------------------------------------------------------------x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STRIKE PLAINTIFF'S RULE 26 DISCLOSURES AND INTERROGATORY RESPONSES, COMPEL COMPLIANCE WITH THE COURT'S APRIL 9, 2009 SCHEDULING ORDER, RULE 26 AND RULE 16, AND FOR A PRE-TRIAL CONFERENCE

Plaintiff, by his attorneys, Finkelstein & Partners, LLP, hereby oppose Defendants' emergency motion to strike Plaintiff's supplements to his Rule 26 disclosures and interrogatories, pre-trial designations and exhibits, requests for admission, and designations regarding Defendants' illegal off-label promotion of Neurontin. *See* ECF Doc. ## 1798, 1799, 1801, 1816. The Court should deny Defendants' motion because (1) Plaintiff's designations regarding Defendants' off-label promotion are relevant to elements of liability in this case, *inter alia,* Plaintiff's claims of negligence, failure to warn, and negligent pharmacovigilance; (2) Plaintiff's exhibit list was timely served, numbered and assembled in a manner consistent with this Court's Pre-Trial Order (April, 9, 2009), and Defendants knew of the number of documents that Plaintiff would designate and the exhibit list to be used as a "master list" for all MDL generic exhibits and future Neurontin trials; (3) Plaintiff's witness list and testimony designations are reasonable in view of all of the potential witnesses; there is no order from this

Court or statutory authority that limits the time designations for such witnesses; (4) Plaintiff's request for admissions as to the authenticity of documents was timely served and consistent with Fed. R, Civ. P. 36; and (5) Plaintiff's supplemental Rule 26 disclosures and interrogatories are factual, they do not disclose experts or set forth expert opinions, and they were served on a timely basis pursuant to Fed. R. Civ. P. 26. Plaintiff submits that this motion should be heard before the Honorable Patti B. Saris, U.S.D.J., because it pertains to evidentiary and critical trial related issues about which Judge Saris has personal knowledge.

## PRELIMINARY STATEMENT

Defendants' motion to preclude all evidence of Defendants' off-label promotion of Neurontin is premature and should be the subject of Defendants' motion *in limine* due June 22, 2009.[1] Alternatively, this Court should not allow Defendants the ability to subsequently file a motion *in limine* on any of the issues presented in this motion. Not only do Defendants seek to circumvent this Court's order which limits the number of motions *in limine*, but Defendants' real purpose is to avoid trial on July 27, 2009. Defendants have exaggerated their claims in support of this motion, to make much ado about nothing in order to postpone the trial date for this case. In fact, Defendants' own exhibit list, witness list, and testimony designations are deficient and defective; yet, Plaintiff is still ready to begin trial on July 27, 2009.

---

[1] Plaintiff anticipates that his opposition to this issue alone would require the twenty-page limit afforded the parties by this Court's April 9, 2009 Pre-Trial Order. By making this motion to the Court with multiple issues, Defendants have effectively prevented Plaintiff the opportunity to have 20 pages to address solely the issue of marketing evidence.

2

**ARGUMENT**

I.  **PLAINTIFF'S DESIGNATION OF EXHIBITS OF DEFENDANTS' OFF-LABEL PROMOTION OF NEURONTIN IS PROPER BECAUSE SUCH EVIDENCE IS RELEVANT TO PLAINTIFF'S CLAIMS THAT DEFENDANTS WERE NEGLIGENT AND BREACHED THEIR DUTY OF CARE, INCLUDING PERFORMING ADEQUATE PHARMACOVIGILANCE**

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Moore's Fed. Rules Pamphlet 2009, Fed. R. Evid. 401. Plaintiff's list of exhibits relating to off-label marketing are relevant to his negligence, failure-to-warn, and negligent pharmacovigilance claims against Defendants. *See* ECF Doc. # 1790 at 33.

Judge Saris, in her May 26, 2009 Order, succinctly described the heightened duty to warn that a pharmaceutical manufacturer bears when it engages in off-label marketing of a drug:

> Based on the reasoning of this caselaw, the Court concludes that a manufacturer of a pharmaceutical has a duty to disclose to physicians and patients material facts about the risks of the drug, <u>particularly when it is engaged in off-label marketing</u> for uses not approved by the FDA, if it knows that the plaintiff and/or his prescriber does not know or cannot reasonably discover the undisclosed facts. [ECF Doc. # 1790 at 25 (emphasis added).]

The manufacturer's <u>knowledge</u> of off-label use with its drug is inextricably intertwined with a manufacturer's duty to disclose material facts about risks with the drug. While off-label prescribing by physicians is not itself improper, a manufacturer with knowledge of both extensive off-label use and material facts about risks inherent with taking the drug (e.g., depression and suicide), has a duty to take action. Defendants were on notice both of the risks of depression and of the substantial off-label use of Neurontin. Plaintiff's exhibit list of marketing documents demonstrate notice and is consistent with the Court's Pre-Trial Order. In sum, the exhibits are probative of Defendants' negligence without regard to fraud.

First, Plaintiff's list of marketing exhibits is relevant to his proof that Defendants had a regulatory duty to create, establish and execute a pharmacovigilance plan to evaluate and analyze suicide and depression adverse events. Defendants were on notice of risks since at least 1992. The FDA stated at that time: "Less common but more serious events <u>may limit the drug's widespread usefulness</u> …. [D]epression, while it may not be an infrequent occurrence in the epileptic population, may become worse and require intervention or lead to suicide, as it has resulted in some suicidal attempts." ECF Doc. # 1790 at 4-5 (emphasis added).

Defendants knew of Neurontin's subsequent <u>widespread</u> off-label use. Sales of Neurontin for off-label uses were at approximately 90% before Susan Bulger's death. *See* ECF Doc. # 1790 at 8. Central to Plaintiff's cause of action is to establish when the duty to take action through warning and enhanced pharmacovigilance arose. Plaintiff intends to prove that duty arose when the off-label use of Neurontin substantially increased. Plaintiff intends to use the listed marketing exhibits to establish when Defendants should have undertaken to create a pharmacovigilance plan. Defendants' negligent actions continued at least through 2004 (when Susan Bulger died) when Pfizer Defendants (not just Parke-Davis and Warner-Lambert entities) failed to recognize and fully disclose suicide risks with Neurontin, and instead sought to compare Neurontin as safer than competing drugs which did have specific warnings related to suicide. Declaration of Andrew G. Finkelstein, Ex. 1 at 27; *see* ECF Doc. # 1790 (5/26/09) at 8.

Second, not only did Defendants know of the widespread off-label use of Neurontin— indeed they engaged in off-label promotion—Defendants were on notice that patients using Neurontin for off-label uses were at risk. Separate and apart from the FDA's concern in 1992, the risk was confirmed by Defendants' pharmacovigilance witness, Manfred Hauben, whose internal Pfizer documents included the following salient language:

> With the post marketing use of gabapentin in patients other than with epilepsy, it is important to identify whether these new populations may be particularly susceptible to specific adverse drug effects, both labeled and unlabeled, and to identify conditions under which specific adverse events may be more likely to occur in these new patient populations. [Finkelstein Decl., Ex. 2.]

It is axiomatic that Defendants had a duty to apply this knowledge about Neurontin's off-label usage to research the risks of suicidality, which Defendants negligently chose not to undertake. Instead of researching and investigating the safety of Neurontin when used in off-label populations that were particularly susceptible to specific adverse drug effects, Defendants negligently promoted Neurontin for off-label uses not approved by the FDA including unapproved "pain" uses: the indication for which Susan Bulger was prescribed Neurontin. *Id.* at 5. Not until 2006 did Defendants' own Risk Management Strategy Department implement a purported investigation of suicidality (e.g., the Gabapentin Data Capture Aid). *See* Finkelstein Decl., Ex. 3. In sum, central to Plaintiff's cause of action is to establish when the duty to take action through warning and enhanced pharmacovigilance arose. Plaintiff intends to prove that the duty arose with known substantial increase of off-label use of Neurontin and Defendants knew of the population at risk.[2] Defendants knowledge is established through Plaintiff's list of exhibits.

Applying the language and reasoning of this Court, for purposes of Plaintiff's negligence claims, Plaintiff shall pursue at trial the foundational evidence that Defendants "engaged in off-label marketing" and thus had a "particular[]" "duty to disclose to physicians and patients material facts about the risks of [neurontin]." *See* ECF Doc. # 1790 at 25. Defendants were

---

[2] The pattern jury instructions for Massachusetts regarding Defendants' post-sale duty to warn of risks associated with Neurontin recognize the importance of demonstrating through records whether Defendants know of "the general population of users and consumers" and whether "customer records may identify the population to whom warnings should be provided. Individual names and address are not necessarily required. Records may indicate classes of product users, or geographically limited markets." MA Superior Court Civil Jury Instructions, 2nd Ed. 2008 § 11-45. Defendants' marketing records establish notice of the off-label population and geographic markets for off-label use about which Defendants were on notice.

5

negligent and breached their duty of care to both Susan Bulger by failing to adequately warn about the increased risk of suicidality with Neurontin ingestion, <u>particularly</u> where Defendants had knowledge of the substantial off-label use with Neurontin.  Defendants' knowledge of substantial off-label use and subsequent failure to warn of suicidality proximately caused Susan Bulger to commit suicide.

Defendants' actions in seeking to preclude all evidence related to national marketing blatantly disregards that such exhibits and witness designations are probative of matters other than fraud.  Defendants seek to expand improperly upon this Court's decision of May 26, 2009, ECF Doc. # 1790, relating to the Court's limitation of evidence on Defendants' national marketing campaign and Plaintiff's fraudulent concealment claims.  Motions *in limine* are not ripe until June 22, 2009, in accordance with this Court's Pre-Trial Order of April 9, 2009, and so Defendants' actions here are premature.

Defendants' knowledge of off-label use via Plaintiff's list of marketing exhibits (and witness designations) is inextricably intertwined with the elements of Plaintiff's negligence claims.  Therefore, Plaintiff's list of exhibits and witness designations are appropriate.

**II.   PLAINTIFF'S TIMELY SERVED EXHIBIT LIST, WITNESS LIST AND TESTIMONY DESIGNATIONS ARE CONSISTENT WITH THE REQUIREMENTS OF THE FEDERAL RULES, THIS COURT'S LOCAL RULES, AND THE COURT'S PRE-TRIAL ORDER; THE DISCLOSURE IS APPROPRIATE GIVEN THE MAGNITUDE OF THE LITIGATION AND THE ANTICIPATED SUBSTANTIVE TESTIMONY.**

Defendants cry out over the volume of Plaintiff's exhibit list, yet Defendants' own list of generic exhibits totals more than 85,000 pages, almost twice the total of Plaintiff's 47,000 pages (cited by Defendants at page 3 of their current memorandum).  ECF Doc. # 1799.  Defendants' own witness list includes names previously undisclosed and for whom Defendants still have not provided supplemental Rule 26 disclosures.  Unlike Defendants, Plaintiff embraces the task of

reviewing his disclosures and stand by his representation that the parties to this litigation have the ability to present this case for trial as currently scheduled. Plaintiff's disclosures are consistent with the Federal Rules and all orders in this MDL. Defendants' motion should be denied and the trial date of this action should not be disturbed.

### A.     Plaintiff's List of Exhibits Is Consistent With Requirements of Law.

In accordance with this Court's April 9, 2009 Order, Plaintiff disclosed a "list of exhibits". Plaintiff's exhibit list is consistent with Fed. R. Civ. P. 26(a)(3)A(iii), which requires a party to identify "each document or other exhibit . . . identifying those items the party expects to offer and those it may offer if the need arises." Moore's Fed. R. Civ. P., Rule 26 (2009). Moreover, Plaintiff's exhibit list also fulfills the requirements of Massachusetts District Court Local Rule 43.1 "Trial" at (b)3(b), which sets forth that a party cannot introduce direct evidence at trial "other than those exhibits already . . . furnished to the other parties before trial commences." Plaintiff's actions in providing a list of exhibits, albeit voluminous, is consistent with his rights and the requirements under the Federal Rules, Local Rules, and this Court's order of April 9, 2009. As the Court is well aware, this MDL has already proceeded for over four years—in such litigation a high volume of exhibits is not unexpected.

Defendants were well aware of the parties' anticipation of thousands of exhibits in this litigation. Specifically, in their correspondence of May 22, 2009, defense counsel reaches "Areas of Agreement" including that Plaintiff's exhibits could be as much as 5,000 in volume, and Plaintiff's "case-specific" exhibits could be as much as 100 in volume. Finkelstein Decl., Ex. 4. In fact, the parties agreed to additional volumes of exhibits including a range of over 1,500 published medical articles and 100 medical record exhibits. Defendants reserved a range of 3,000 exhibits with a caveat that "Defendants are not precluded from going above 9999, but

do not think they will need to." *Id.* In light of this "area of agreement" between the parties, it is disingenuous for Defendants to claim surprise by the volume of Plaintiff's exhibit list.

It is also disingenuous for Defendants to claim surprise by the manner in which Plaintiff provided detailed electronic disclosure of the exhibits and to claim prejudice in reviewing Plaintiff's disclosures. First, Defendants agreed to an exhibit numbering scheme that was in excess of 9,999 exhibits. Second, Defendants' own disclosure is rife with deficiencies (whether intentional or by mistake remains to be seen). Defendants simply do not want to go to trial on July 27, 2009, and so cherry-pick and exaggerate certain issues with Plaintiff's disclosure so as to angle for an adjournment.

It is axiomatic that in a case of this magnitude, each party may have curable errors in their disclosures, but such curable errors do not prejudice the parties from preparing for trial on July 27, 2009. Although Defendants claim to have "carefully reviewed the discovery materials . . . to provide fair notice to Plaintiff," their disclosures are clearly not free of deficiencies, nor do they provide such fair notice. *See* Defs.' Mem. at 12, ECF Doc. #1799. Plaintiff will properly address these issues in their objections on June 22, 2009.

Exemplary of Defendants' own disclosure deficiencies is the fact that in a single exhibit (Ex. 7049) on Defendants' list, there were included as many as 239 separate documents totaling 24,124 pages. None of the individual 239 documents were described so as to give "fair notice". In another single exhibit (Ex. 7050), Defendants included 74 separate documents; each document is apparently a single MedWatch Report (a summary report of a side effect complaint with Neurontin). Again, Defendants limit the total number of their exhibits by grouping 74 separate potential exhibits into a single exhibit. It is unfair for Defendants to boast about the smaller number of exhibits on their list when they simply hide hundreds of exhibits by labeling them as a

single exhibit. Moreover, these pages are not Bates-numbered; Plaintiff cannot verify that these documents have ever been produced to Plaintiff through the course of discovery in this litigation. Indeed, documents that have never been produced or supplemented as part of Defendants' own disclosure obligations should not be allowed into evidence. Defendants simply added documents at will without any notice that they were newly disclosed versus previously disclosed (but not Bates numbered). Whether these actions are intentional remains to be seen, but Plaintiff does not want to adjourn the trial because of these deficiencies.

Defendants' "fair notice" to Plaintiff has clearly failed in yet another example of their purported "careful review" of their exhibit list. Defendants misidentified all of their case-specific exhibits (e.g., the documents are simply not what they say they are). By example, Plaintiff read Defendants' description of Susan Bulger's pharmacy records from Caremark Pharmacy (Ex. 200) only to learn that the exhibit was in fact State Police Department records from the Commonwealth of Massachusetts. Similarly, Plaintiff read Defendants' description of the Peabody Fire Department Records (Ex. 204) only to learn that the actual exhibit was a civil legal complaint involving Susan Bulger, separate from this Neurontin litigation.[3]

Lastly, Defendants claim to have "conditionally designated marketing evidence that they might seek to introduce in opposition to Plaintiff's case." Defs.' Mem. at 18, ECF Doc. # 1799. However, there is no disclosed method by which Plaintiff is on "fair notice" as to which documents these are: there is no index provided or label affixed to any such document. Consequently, Plaintiff has no way of knowing which documents are "conditional" and which

---

[3]Although Defendants criticize Plaintiff for having a certain number of exhibits without a "description" of the exhibit, Plaintiff's exhibits are described by Bates number and Defendants can simply review the document as they were provided to Defendants. In contrast, many of Defendants' descriptions are simply false—either intentionally or by mistake—and so Plaintiff cannot rely on any of their descriptions at all. In either case, both parties are expected to review the actual exhibits and so neither party can truly claim a prejudice that requires the Court's intervention.

9

are not. These examples are just a few that reflect Defendants' errors. In sum, Defendants who live in their glass house should not throw stones.

### B. Defendants Know the Exhibit List Reflects Plaintiff's Goal to Have a Master List of Exhibits for All MDL Generic Exhibits and Future Neurontin Trials.

Plaintiff conferred with Defendants over the scope of Plaintiff's exhibit list and the anticipated Bates-number/exhibit bannering for trial. Plaintiff advised Defendants, in numerous discussions and via e-mail, of his intention to have an efficient, methodical one-time collection of generic exhibits that would be usable, not only for this *Bulger* case, but for Neurontin trials in the future. Finkelstein Decl., Ex. 5. Plaintiff's exhibit list meets that goal and avoids unnecessary, duplicative work and Bates-numbering/exhibit bannering in future cases.

As part of this disclosure process relating to exhibits for trial, Plaintiff advised Defendants that he did not have to raise an objection to any exhibit on Plaintiff's List of Exhibits; Plaintiff was willing to agree that all objections would be reserved by Defendants. Instead, Plaintiff proposed to Defendants during their discussions that Defendants could indicate objections solely as to those exhibits for which Plaintiff requested admissions per Rule 36; this is a subset of exhibits and reflected those documents most likely to be utilized on Plaintiff's direct case in the *Bulger* trial. Given that the Court's Pre-Trial Order (April 9, 2009) identified two separate categories of disclosure—a list of exhibits, and a separate category for which there should be requests for admissions—Plaintiff has acted within the Court's order by having the master list of exhibits along with a smaller subset of exhibits for which Plaintiff seeks admissions. Defendants rejected the proposal.

### C. Plaintiff's Witness List and Testimony Designations Were Reasonable in Light of the Number of Potential Witnesses and the Substantive Testimony Expected in This Case.

Fed. R. Civ. P. 26(3)(A)(i) mandates that a party is to identify witnesses "the party expects to present and those it may call if the need arises" and, under 26(A) (ii), "the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition." Moreover, Rule 26(B) indicates that: "(B) Time for Pretrial Disclosures; Objections. Unless the court orders otherwise, these disclosures must be made at least 30 days before trial." Plaintiff's witness list and testimony designations were timely served in relation to this Court's April 9, 2009 pre-trial order and are reasonable in view of all of the potential witnesses in this case. There is no order from this Court or statutory authority that limits the time designations for such witnesses. Plaintiff designated testimony from witnesses that he intends to present at trial and did so with an eye to avoiding being precluded at trial because such testimony was not so designated. Plaintiff is mindful of the Court's judicial economy and availability to preside over a lengthy trial. If the Court determines that there are constraints upon the testimony to be designated, Plaintiff will comply. There was no need for Defendants' instant motion because this Court scheduled June 22, 2009, as the deadline for the parties to submit their objections to the pre-trial disclosures. This is further evidence that this motion is just a ploy by Defendants to disrupt the trial date.

Defendants disclosed for the first time Alan Brenner, M.D., and Carol Rocca Veronicas as witnesses in this case. Moreover, Defendants' claim of "fair notice" is once again belied by their own testimony designations where they have not stated which witnesses will appear live and which will appear by videotape deposition testimony. Specifically, Defendants' list at least 22 "live" witnesses that may appear "live or by videotape". Finkelstein Decl., Ex. 6. This is not

11

consistent with the Federal Rules or this Court's order requiring affirmative designations. Plaintiff has a right to know which witnesses Defendants expect to call live and which witnesses Defendants expect to affirmatively present by deposition. In contrast to Defendants' lack of fair notice, Plaintiff made such affirmative representations in his witness designations and Plaintiff remains ready to begin trial on July 27, 2009.

Defendants misrepresent the anticipated substantive testimony of Plaintiff's witnesses in an attempt to have this Court strike or otherwise limit the testimony of such witnesses. For example, Defendants blindly assert that Plaintiff's witness list is too long and that designations should be limited particularly where Plaintiff has designated witnesses "whose testimony pertains only to national marketing." Defs.' Mem. at 18, ECF Doc. # 1799. Defendants then seek to strike such witnesses as Pfizer's own Leslie Tive and Adrian Vega, even though these witnesses had provided testimony about the safety of Neurontin and Defendants' responses to inquiries about suicide.

Leslie Tive, who has a Ph.D. in biopsychology with a specialization in Neuropharmacology, and who was Medical Director, Team Leader for Neurontin, acknowledged at her deposition that low serotonin negatively effects mood and was associated with depression. Finkelstein Decl., Ex. 7 at 300. Adrian Vega holds a Pharm.D., and is employed in Defendants' Medical Communications Department handling responses to medical inquiries about Neurontin including suicide. Finkelstein Decl., Ex. 8, at 373: 17-374:20; 385:18–24; 387:25-388:9. Defendants' blanket statement at page 18 of their memorandum that Plaintiff designated witnesses who pertain only to national marketing is in fact a falsehood. ECF Doc. # 1799 at 18. Tive and Vega demonstrate how designated witnesses provided testimony on issues of general causation and failure-to-warn theories—not national marketing. To the extent the parties have

objections to designated witnesses and testimony, the Court has afforded each the opportunity to state their objections on June 22, 2009. Defendants' argument here is not only incorrect, but is premature.

### D. Plaintiff's Request for Admissions Was Timely Served and Consistent With Fed. R. Civ. P. 36 and This Court's Pre-Trial Order.

Pursuant to Fed. R. Civ. P. 36(a)(1):

A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:

> (A) facts, the application of law to fact, or opinions about either; and
>
> (B) the genuineness of any described documents

In *Bouchard v. United States,* the U.S. District Court overruled the plaintiff's objections to requests for admission which pertained to "to the authenticity of the records, the manner in which they had been created or retained as records of regularly conducted business activities under Federal Rule of Evidence 803(6), and whether the public records met the criteria for admission under Federal Rule of Evidence 803(8)." 241 F.R.D. 72, 74 (D. Me. 2007). The court found that the requests to admit appropriately requested admissions, "that the documents are authentic and that they are admissible under exceptions to the rule against hearsay. Whether the documents are otherwise admissible remains an issue to be resolved at trial." *Id.* at 77.

The April 9, 2009 Pre-Trial Order of this Court, although it set a deadline for requests for admissions for authentication of documents, did not provide a deadline for the parties to narrow down any dispute regarding the admissibility of documents. From a practical standpoint and in an effort to assist in streamlining the process for inevitable rulings on admissibility, Plaintiff utilized the request to admit to find out where there may be agreement between the parties regarding admissibility and as a mechanism to ascertain whether the documents qualify under

exceptions to the rule against hearsay. The requests for admissions are appropriate and will narrow the issues in dispute in regard to admissibility and inevitably expedite the overall process. As a practical matter, if the parties do not resolve admissibility issues now, then the parties have no schedule in place to resolve such admissibility issues prior to trial.

### III. PLAINTIFF'S SUPPLEMENTAL RULE 26 DISCLOSURES AND INTERROGATORIES WERE SERVED ON A TIMELY BASIS PURSUANT TO FED. R. CIV. P. 26.

Fed. R. Civ. P. 26(B) "Time for Pretrial Disclosures; Objections" states: "[U]nless the court orders otherwise, these disclosures must be made at least 30 days before trial." Here, Plaintiff supplemented his Rule 26 disclosures more than 60 days before trial, and also did so within 30 days of learning of the information (which is consistent with the Court's CMO # 3). Defendants do not point to any order of this Court or statutory authority or regulation which prevents Plaintiff from supplementing his Rules 26 Disclosures and Interrogatories. Defendants' motion to strike Plaintiff's supplemental disclosures should be denied.

#### A. Plaintiff Timely Disclosed All Fact Witnesses, Including Dr. Egilman and Howard Freedman, and Plaintiff Has Not Pled New Theories of Damages in His Supplemental Interrogatory Responses.

As noted above, Fed. R. Civ. P. 26 does not preclude supplements to interrogatories or Rule 26 disclosure for witnesses and Plaintiff's disclosures are timely under the Federal Rules, this Court's Local Rules, as well as this MDL's case management and pre-trial orders. Defendants simply want an adjournment of the trial and will take any step towards an adjournment so as to frustrate the resolution of this case.

Contrary to Defendants' assertions, Dr. David Egilman is not being offered as an expert witness in this case. He is the Administrator of the Estate of Susan Bulger, as of May 28, 2009. He has no expert opinions to provide in this case. Plaintiff would have been remiss in his

obligations not to disclose Dr. Egilman as a fact witness after learning that an application for his appointment had been made before the disclosure deadline of May 22, 2009.[4] Disclosure of Dr. Egilman does not prejudice Defendants and surely does not require an adjournment of trial.

As to disclosure of witness Howard Freedman, he too has no expert opinions to provide in this case. He is a fact witness. Mr. Freedman has prepared a publication entitled *Projected Costs for Selected Colleges in Massachusetts 2017-2011*. Defs.' Mem. at 8, Defs.' Ex. 8, ECF Doc. # 1799. The publication utilized data produced by the College Board and statistical information gathered from other government entities. *Id.* Mr. Freedman will authenticate that the information contained in the document is from his compilation of statistics extracted from reports of governmental entities. The document in question was just recently received by Plaintiff. Mr. Freedman will not be asked to express opinions.

In terms of the Interrogatory supplement on Plaintiff's damages, Plaintiff has not put forward any new theory of damages. To the contrary, Plaintiff merely quantified the economic loss by referencing U.S. Government Labor statistics, *The Dollar Value of Day: 2007 Dollar Valuation* for which he will request that this Court take judicial notice at the time of trial. The publication was recently received by Plaintiff and thus, the Rule 26 Supplemental Disclosure was timely. That Plaintiff would timely supplement his Rule 26 disclosures with additional information concerning quantification of the damages that Plaintiff sustained due to Susan Bulger's death should be no surprise to Defendants. Defendants tacitly admit in their moving papers that Plaintiff's January 2008 discovery responses included a statement whereby they were informed that Plaintiff's claims included loss of society to the children, "including **instruction**, moral training and superintendence of **education**." ECF Doc. # 1799 at 6. Plaintiff specifically

---

[4] The parties have conferred and Defendants will not assent to an amendment of the caption to reflect Dr. Egilman as the Administrator. Plaintiff anticipates an application to the Court seeking an amendment to the caption.

15

reserved the right to supplement the responses. *Id.* Information based on statistics and information from governmental sources, rather than opinion testimony from an expert, is admissible independent from expert testimony.

As to the remaining small number of additional fact witnesses in Plaintiff's supplemental Rule 26 disclosure (e.g., friends and acquaintances in Massachusetts), Defendants have ample time to depose these individuals "at their election" (if the Court allows) prior to trial on July 27, 2009. Plaintiff also agrees to voluntarily withdraw from his supplemental interrogatory response the loss of income resulting from Ronald J. Bulger, Jr. dropping out of high school. ECF Doc. # 1799 at 6; Defs.' Ex. C (Plaintiff's supplemental answer to Interrogatories No. 19(c)).

## CONCLUSION

For the foregoing reasons, Plaintiff requests that Defendants' motion be denied in its entirety and that Defendants' thinly veiled attempt at an adjournment of the July 27, 2009 trial be denied.

Dated: June 5, 2009

          **/s/ Andrew G. Finkelstein**
          Andrew G. Finkelstein
          Finkelstein & Partners, LLP
          1279 Route 300, P.O. Box 1111
          Newburgh, NY  12551
          (800) 634-1212
          *Attorneys for Plaintiff Ronald G. Bulger, Sr.*

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on June 5, 2009.

Dated: June 5, 2009

          **/s/ Andrew G. Finkelstein**
          Andrew G. Finkelstein