UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x | : | MDL Docket No. 1629 |
| In re:  NEURONTIN MARKETING, SALES<br>PRACTICES AND PRODUCTS<br>LIABILITY LITIGATION | :<br>:<br>: | Master File No. 04-10981 |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x | : | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | :<br>: | Magistrate Judge Leo T.<br>Sorokin |
| *Bulger v. Pfizer Inc., et al.*<br>Case No. 1:07-cv-11426-PBS | :<br>:<br>:<br>:<br>: | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Defendants Pfizer Inc and Warner-Lambert Company LLC hereby oppose Plaintiff's Emergency Motion for Leave to File an Amended Complaint to change the Plaintiff in this action.

## PRELIMINARY STATEMENT

On May 28, 2009, with discovery closed and the trial of this action scheduled for July 27, 2009, Plaintiff's counsel contacted defense counsel to notify Defendants that Plaintiff would be filing a motion to replace Ron Bulger, Sr., with David Egilman as the administrator of the estate of Susan Bulger.  This was on the heels of Plaintiff's improper designation of over 3,500 trial exhibits, disclosure of numerous previously undisclosed witnesses, and designation of 9 weeks of direct exam testimony.  Of course, as Plaintiff's motion to amend his Complaint, filed a week later, makes clear, Plaintiff seeks to do much more than merely make a pro forma, technical correction to the caption on the eve of trial.  Plaintiff seeks to amend the Complaint to remove Ron Bulger, Sr., the Decedent's husband, as the Plaintiff, and substitute in his stead a person who has no connection to the Decedent or her family, who is a professional witness in product liability litigation, and who has been sanctioned by courts for violations of protective orders.

Prior to receiving the May 28th call seeking consent to the instant motion, Defendants were given no notice that Mr. Bulger intended to resign as administrator of his wife's estate, much less that he had actually done so on May 15 (*see* Pl.'s Mem. at 2), a week before the parties were due to, and did, exchange trial designations in accordance with this Court's pretrial order. Nor did Plaintiff disclose that proceedings had been initiated to substitute Prof. Egilman as administrator. Defendants were given no notice of such developments or proceedings even though: Ron Bulger has been the Plaintiff in this action since its initiation; the claims being pursued in this lawsuit are essentially the only assets of the estate; Plaintiff knew Defendants were preparing designations and otherwise preparing for trial under the understanding and belief that Mr. Bulger would continue as Plaintiff; and Plaintiff had many opportunities to provide notice to Defendant during any of many informal communications between counsel over the last two months.

Plaintiff has never provided any explanation for this highly suspect, and stealthy, eleventh hour change in administrator and party. Nor has Plaintiff provided any justification for turning into an emergency motion an issue – a request to name a new plaintiff to prosecute this action after the close of discovery and after the parties have exchanged their designations of trial evidence – for which he alone is responsible. Indeed, waiting until after such designations to notify Defendants of Mr. Bulger's resignation as administrator, and then filing an "emergency" request to change the Plaintiff, is yet additional, and significant, evidence of improper trial by ambush tactics.[1]

At the very least, the substitution of a twice-sanctioned, and unrelated, professional witness in place of the Decedent's spouse as the plaintiff and administrator of the estate on the eve of trial is highly irregular and prejudicial, and raises any number of questions about the

---

[1] Defendants have addressed Plaintiff's improper and untimely designations of documents and witnesses in their Emergency Motion to Strike Late Filed Rule 26 Disclosures and Interrogatory Responses, Compel Compliance with the Court's April 9, 2009 Scheduling Order, Rule 26 and Rule 16, and for a Pre-Trial Conference [1816].

reasons for and propriety of such a substitution and any Rule 15 amendment. For example, what were the circumstances that led Ron Bulger to resign as administrator? What prompted Mr. Bulger to resign now after over four years as administrator? Why was David Egilman chosen as an administrator over the Decedent's adult son, surviving sisters, or any other relatives or friends? What sort of tactical advantage does Plaintiff hope to achieve? Why did Plaintiff wait until after the May 22nd trial designation exchange date to inform Defendants that he had resigned as administrator of the estate on May 15? What role would Prof. Egilman have in the trial of this action? What knowledge does he have about the claims and defenses in this lawsuit?

Defendants are also concerned, in view of his prior history of willful violations of protective orders, that Prof. Egilman will be given access to confidential documents produced by Defendants pursuant to the Stipulated Protective Order. Given these many unanswered questions, which raise numerous evidentiary and procedural issues that could significantly impact any trial proceeding, Plaintiff cannot support his assertion that his requested "substitution is merely formal and in no way alters the known facts and issues . . . [or] the defendants' ability to defend" the action. (Pl.'s Mem. at 6.)[2]

For all of these reasons and as set forth in more detail below, Defendants respectfully request that the Court deny Plaintiff's motion for leave to amend. Alternatively, the Court should defer ruling on Plaintiff's motion and permit discovery and, if necessary, an evidentiary hearing, on the circumstances that led to Ron Bulger's withdrawal as administrator of the estate and Prof. Egilman's shotgun appointment.

---

[2] Plaintiff's reliance on *Thomas v. Mitchell-Bradford Chemical Co.*, 582 F. Supp. 1373 (E.D.N.Y. 1984), is misplaced. There, the plaintiff, the daughter of the decedent, upon learning that she had been inadvertently named as administrator of the estate, merely sought to substitute as plaintiff the decedent's spouse, who was the actual executrix. *See id.* at 1374-75. The court allowed amendment because the "error [was] an honest one," amendment was sought during the course of pretrial discovery, and there was no evidence of dilatory tactics, undue delay, bad faith, or prejudice to defendants. *Id.* at 1376. Here, by contrast, Plaintiff points to no error, much less an inadvertent technical one involving the substitution of another family member. Instead, he seeks to substitute, on the eve of trial, an entirely new party, with no relation to the Decedent but with strong financial ties to Plaintiff's counsel as an expert witness. *See infra* Part II.B-C.

3

## ARGUMENT

### I. THIS COURT SHOULD DENY PLAINTIFF'S MOTION TO AMEND

The law is clear that "leave to amend may properly be denied for a variety of reasons including 'undue delay, bad faith or dilatory motive on the part of the movant,'" or "'undue prejudice to the opposing party by virtue of allowance of the amendment.'" *See, e.g., Glaros v. Perse*, 628 F.2d 679, 687 (1st Cir. 1980) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In addition, as the First Circuit has explained:

> Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend. Particularly disfavored are motions to amend whose timing prejudices the opposing party by "requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy. . . ."

*Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (quoting *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52-53 (1st Cir. 1998)).

Each of the reasons identified in *Glaros* and *Steir* warrants denial of Plaintiff's motion here where, among other things:

- Plaintiff waited until after discovery closed and after the exchange of pretrial designations before notifying Defendants of his resignation as administrator and intention to move to change the plaintiff;

- Plaintiff's requested amendment involves the wholly unexplained and suspect insertion into this action, as the prosecuting Plaintiff, of a professional witness, with no known connection to the Bulger family, who has never been deposed in this litigation and who has been sanctioned twice for willfully violating court orders in other personal injury actions; and

- Plaintiff's motion raises numerous unanswered questions and evidentiary and procedural issues that bear on the claims and defenses, and any trial proceedings, in this action, and

4

would require discovery of, among others, Ron Bulger, other members of the Bulger family, and Prof. Egilman.

Courts have regularly denied motions for leave to amend under similar circumstances. *See, e.g., Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166-67 (10th Cir. 2009) (in *qui tam* action, affirming denial of relator's motion to amend complaint to add co-relator or to substitute relators because "[t]he motion for leave to amend was made after the close of a long discovery period and after [defendant] had filed a motion for summary judgment," and "[a]t a minimum, . . . would have required the reopening of discovery regarding [the proposed co-relator's] jurisdictional eligibility to be a relator," and thus "would have unduly prejudiced [defendant]"); *see also LaRocca v. Borden, Inc.*, 276 F.3d 22, 32 (1st Cir. 2002) (affirming denial of motion to amend where plaintiffs did not seek leave until after the close of discovery and after rulings on motions for summary judgment); *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798, 806 (1st Cir. 1987) (affirming same where plaintiff sought leave after motion for summary judgment was under advisement and where "discovery would have to be reopened after the accumulation of an extensive and expensive record"); *Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1, 4-5 (1st Cir. 1983) (affirming same where plaintiff sought leave to amend on eve of trial and where, even if additional claims would not have required further discovery, they "may well have affected defendants' planned trial strategy and tactics" and "would likely have required additional time to prepare for trial"); *Rozen v. Fulton*, No. 08-11590, 2008 WL 5244315, at *2 (E.D. Mich. Dec. 16, 2008), *adopted*, Dkt. 39, slip op. at 1 (E.D. Mich. Jan. 13, 2009) ("A defendant is significantly prejudiced when a plaintiff seeks to amend his complaint after the close of discovery and the filing of dispositive motions.") (denying motion as to amendments that would require "significant discovery" and granting as to others only on the condition of "an extension of discovery and other deadlines").

## II.   ALTERNATIVELY, THE COURT SHOULD DEFER RULING ON PLAINTIFF'S MOTION PENDING FURTHER DISCOVERY ON THE ISSUES IT RAISES

Plaintiff's motion should be denied for the reasons discussed above.  If the Court is not inclined to deny the motion outright, however, it should, at a minimum, defer ruling and permit Defendants to obtain discovery on the issues it raises, including those identified below.

### A.   Questions Raised by Ron Bulger's Resignation as Administrator

Wrongful death actions must be prosecuted by a properly appointed administrator of a decedent's estate, who acts on behalf of all of the beneficiaries and the estate.  *See Hallett v. Town of Wrentham*, 499 N.E.2d 1189, 1192 (Mass. 1986).  Until recently, this role had been performed by Ron Bulger, Sr., the Decedent's spouse.  The reasons for Mr. Bulger's resignation – for which Plaintiff has offered absolutely no explanation – will undoubtedly be relevant to the issues in this lawsuit (which seeks to recover for the loss of Mrs. Bulger's service and society to her surviving spouse and children) and to the propriety of any Rule 15 amendment, and should, therefore, be subject to discovery before any ruling on Plaintiff's motion.

Moreover, after participating in discovery, including depositions, in this action, Plaintiff should not be permitted to simply disappear, only to be replaced by another party, of whom Defendants never had notice, much less the opportunity to depose or obtain discovery from.

### B.   Questions Regarding Prof. Egilman's Appointment

The substitution of Prof. Egilman, who, to Defendants' knowledge, has no connection to the Bulgers, raises many additional questions.  Prof. Egilman is a Clinical Associate Professor at Brown University, and a career witness in personal injury tort litigation.  Over the last two decades, Prof. Egilman has offered purported expert testimony for plaintiffs in a large variety of toxic tort and product liability cases, including asbestos, beryllium exposure, radiation poisoning, pharmaceuticals, and breast implants.[3]  Dr. Egilman's only prior involvement in this litigation

---

[3]  *See, e.g., In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 395 (E.D.N.Y. 2007) (pharmaceutical litigation); *Berger v. Amchem Prods.*, 13 Misc. 3d 335, 340-41 (N.Y. Sup. Ct. 2006) (asbestos litigation); *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 717 (E.D. Tenn. 2001) (beryllium oxide exposure); *Hall v. Babcock & Wilcox Co.*, 69 F. Supp. 2d 716, 720 (W.D. Pa. 1999) (radiation poisoning); *Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909, 917 (Mass. 1998) (breast implants); *Dunn v. Owens-Corning Fiberglass*, 774 F. Supp. 929, 936 (D.V.I. 1991) (asbestos litigation).

was to help coach Plaintiff's expert Dr. Kruszewski before the *Daubert* hearing. (*See* Kruszewski Dep., Exh. A to Cheffo Decl., at 84:14-92:15.) Then, on May 22, 2009, Plaintiff unexpectedly designated him a witness in this action. (*See* Pl.'s List of Witnesses to Be Presented at Trial [1801-1].)

Beyond the one-page form appointing Prof. Egilman as the new administrator, Plaintiff's motion offers no evidence of the information presented to the probate court. Defendants should be permitted to obtain discovery to explore the numerous significant issues this appointment raises. For example, why was Prof. Egilman selected to be the administrator of the estate? If, for some reason, Ron Bulger, Sr., could no longer serve as administrator of the estate, why not the Decedent's adult son? Why not one of the Decedent's two surviving sisters? Why not Plaintiff's mother (the grandmother of the minor child)? Why not a guardian *ad litem* appointed for the minor child? Given that one of the beneficiaries is a minor child, it seems strikingly odd that relatives of the minor child would be bypassed in favor of someone who has no relationship with the family, but who may have financial ties with Plaintiff's attorneys.[4]

Indeed, there is a question as to the validity of Prof. Egilman's appointment as administrator of Decedent's estate. The probate code provides for administration by a non-relative only when there are no next-of-kin or a guardian for a next-of-kin available and willing to serve. *See* Mass. Gen. Laws ch. 93, § 1 (West 2009). Under such circumstances, a suitable person may be appointed. Here, whether Prof. Egilman is a "suitable person" under Mass. Gen. Laws ch. 193, § 2, that is, whether he has "the capacity and the will to discharge the duties in [this] case with fidelity and efficiency," is questionable. *Grossman v. Grossman*, 179 N.E.2d 900, 902 (Mass. 1962).

---

[4] The Lanier Law Firm is co-counsel in the *Smith* case pending before this court and Defendants have been advised that counsel Mark Lanier will be participating in the trial of this case. The Lanier Law Firm previously retained Mr. Egilman as a witness in the *In re Zyprexa* litigation and later terminated his consultancy upon learning of his breach of the protective order there. *See infra* Part II.C.

Prof. Egilman represented to the probate court that he was a "friend" of Decedent (*see* Ex. 3 to Finkelstein Decl. [1821-3]), perhaps to demonstrate his suitability as administrator, even though there is no evidence that he ever even met her. In fact, it would be quite remarkable if a nationally known toxic-tort plaintiffs' witness had just *coincidentally* befriended a woman whose estate would later become the plaintiff in the first Neurontin suit to be tried in litigation involving plaintiffs' lawyers with ties to the expert. Prof. Egilman's lack of personal knowledge or interest in the facts of this litigation or of Decedent's life generally (as well as his willful violations of court orders in other litigation (*see infra* section C)), calls his "suitability" into serious doubt.

Further, the proposed substitution of Prof. Egilman for Mr. Bulger smacks of litigation tactics intended to gain improper advantage in the trial of this action. Indeed, it is likely that Plaintiff is trying to recast this case to keep Mr. Bulger from the jury and replace him with a seasoned testifier, unencumbered by the facts of this case.[5] Neither the Court nor Defendants should be subject to such gamesmanship. For these reasons, Defendants should be permitted to conduct discovery to determine whether Prof. Egilman's appointment as an administrator was proper and whether amendment of the Complaint should be allowed.

## C.   Concerns Raised by Prof. Egilman's Past Conduct in Litigation

Defendants are also concerned that if Prof. Egilman is substituted as the plaintiff in this action, he will be given access to Pfizer's confidential documents. Prof. Egilman has twice been sanctioned for violations of protective orders in cases where he purported to offer expert testimony. First, a Colorado court found that Prof. Egilman "knowingly, intentionally, deliberately, and willfully" violated a protective order by posting certain "scurrilous and inflammatory statements" on his website, which were "grossly inappropriate" and placed at "risk

---

[5] As Defendants set forth in more detail in their motion for summary judgment in this action, the evidence shows that Decedent's life was fraught with psycho-social stressors, including physical and mental abuse by her husband and long-term substance abuse and addiction. The evidence also shows that Mr. Bulger himself abused drugs, and Plaintiff's own experts concluded that Mr. Bulger sold his wife's prescription medications and that Decedent was pressured by Mr. Bulger to "doctor shop" to obtain more medication for him to sell. (*See* Mem. in Support of Defs.' Mot. for Summ. J. [1638] at 3.)

the fairness of the trial." *Ballinger v. Brush Wellman, Inc.*, No. 96-CV-2532, slip op. at 1-2 (Colo. Dist. Ct. June 22, 2001), *aff'd in part, vacated in part*, No. 01CA1982 (Colo. Ct. App. Sept. 5, 2002) [1801-6]. The court stated that Prof. Egilman was so "clear[ly] . . . motivated by his personal agenda and by his animosity, bias, prejudice, hostility and vindictiveness" that he was "not a credible witness." *Id.* The court held that his statements went "so far beyond the bounds of legitimate disagreement as to cast great doubt on his legitimacy and integrity as a witness," and sanctioned Prof. Egilman by barring him from testifying in that case or in any other before the Colorado court. *Id.*[6]

Second, and more recently, Judge Weinstein sanctioned Prof. Egilman in the *In re Zyprexa* litigation for conspiring with a reporter and an attorney to violate a protective order by publicly disseminating confidential documents of defendant Eli Lilly. *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 395 (E.D.N.Y. 2007). In that action, Prof. Egilman had been retained to give expert testimony by the Lanier Law Firm, who, as noted above, are expected to be involved in the trial of this action. *Id.* at 399. Judge Weinstein found that Prof. Egilman,

> in violation of his legal obligations . . . deliberately violated this court's protective order and published sealed documents, intending that they be widely distributed. . . . Egilman . . . took particular pains to deny Lilly an opportunity to prevent the breach; they made the documents public before Lilly could move to preclude their release, after they had in effect assured Lilly that it had time to protect itself in court before any release would occur.

*Id.* at 395. Judge Weinstein enjoined Prof. Egilman from further dissemination of the confidential documents subject to protective order. *Id.* at 429-430. Although Prof. Egilman pleaded the Fifth Amendment privilege against self-incrimination in response to Judge Weinstein's inquiry, Prof. Egilman later admitted that he had violated the protective order by, among other things, releasing an incomplete, one-sided set of confidential documents to the

---

[6] Although the Colorado Court of Appeals vacated the portion of court's order barring future testimony from Prof. Egilman because Prof. Egilman had not been provided with notice sufficient to satisfy due process, the court otherwise affirmed the decision below. *See Egilman v. District Court*, No. 01CA1982 (Colo. Ct. App. Sept. 5, 2002) [1801-6].

media, and paid $100,000 to a charity to settle contempt charges threatened by Eli Lilly.[7] (*See* Egilman Stip. & Decl., Exh. B to Cheffo Decl.)

This is Plaintiff's hand-picked administrator, who Plaintiff wants to infuse into this litigation at this late date, under the guise of a Rule 15 amendment. Based on the foregoing, Pfizer objects to Prof. Egilman's appearance in this action and requests that he not be permitted access to any documents designated "Confidential" by Pfizer.

## CONCLUSION

For all the foregoing reasons, Defendants request that the Court deny Plaintiff's motion for leave to amend to change Plaintiff. Alternatively, Defendants request that the Court defer ruling on Plaintiff's motion until such time as discovery and, if necessary, an evidentiary hearing, can be conducted on the issues raised by this motion, including those set forth above. Defendants further request that they be given an opportunity to supplement their response to Plaintiff's motion after such discovery.

Dated: June 8, 2009

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By:   /s/ Mark S. Cheffo
      Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

-and-

---

[7] The Lanier Law Firm terminated Prof. Egilman's consultancy upon learning of his violation. *See In re Zyprexa*, 474 F. Supp. 2d at 403. Given this history, it seems all the more strange that Plaintiff's counsel believed he would be a suitable administrator of the Decedent's estate.

SHOOK, HARDY & BACON L.L.P.

By:     /s/ Scott W. Sayler
        Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel:  (816) 474-6550

        -and-

WHITE AND WILLIAMS LLP

By:     /s/ David B. Chaffin
        David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on June 8, 2009.

/s/ David B. Chaffin_____
David B. Chaffin