UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
                                                    :    MDL Docket No.: 1629
In re:   NEURONTIN MARKETING,                       :
         SALES PRACTICES AND                        :    Master File No.: 04-10981
         PRODUCTS LIABILITY LITIGATION              :
                                                    :    Judge Patti B. Saris
---------------------------------------------------------------x
                                                    :    Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                           :
                                                    :
*ALL PRODUCTS LIABILITY CASES*                      :
                                                    :
---------------------------------------------------------------x

**JOINT STATUS REPORT ON PRODUCTS LIABILITY ACTIONS OTHER THAN**
**_SMITH_ AND _BULGER_, PURSUANT TO THE COURT'S ORDER OF MAY 28, 2009**

Pursuant to the Court's Electronic Order dated May 28 2009, the undersigned counsel for the Products Liability Plaintiffs and Defendants Pfizer Inc. and Warner-Lambert Company LLC hereby submit the following report:  (1) summarizing the present status of the individual actions other than *Smith* and *Bulger*; and (2) stating the parties' respective proposals for bringing all of these actions to judgment; (3) whether mediation is appropriate; and (4) Plaintiffs' request that the Court provide Products Liability Plaintiffs with a decision on their motion for the establishment of a common benefit fund, and such other and further relief as is just and proper.

**I.      STATUS OF INDIVIDUAL ACTIONS**

There are currently approximately 146 products liability actions pending before the Court, including the *Smith* and *Bulger* actions, involving a total of approximately 577 plaintiffs.  Pursuant to various orders, this Court established a procedure for the orderly sequencing of discovery that allowed for the development of discovery applicable to all

products liability cases in this MDL, full discovery in two cases identified to be tried first, and preliminary discovery in 12 other cases selected randomly and by the parties an designated as Track One cases.

Discovery has now been substantially completed in the two trial work-up cases, *Bulger* and *Smith*. *Bulger*, which was filed in Massachusetts, is scheduled for trial before this Court on July 27, 2008. Pre-trial proceedings with respect to *Smith*, a Tennessee action, are also complete.

The other 12 Track One cases are: *Shearer* (D. Mass.), *Dorsey* (D. Mass.), *Huberman* (D. Mass.), *Bentley* (S.D.N.Y.), *Dixon* (S.D.N.Y.), *McGee* (S.D.N.Y.), *Roberson* (S.D.N.Y.), *Valentine* (M.D. Fla.), *Woolum* (M.D. Fla), *Vercillo* (N.D.N.Y.), *Owens* (S.D. Ala.), and *Pursey* (W.D. Wash.). In these actions, the parties have completed discovery of the plaintiffs, their prescribers, and the relevant sales representatives. The remaining work to be done prior to trial relates primarily to specific causation, i.e., medical discovery and discovery of specific causation experts, as well as any motion for summary judgment directed at specific causation and other case-specific issues, and *Daubert* challenges to specific causation experts.

II.     **PARTIES' PROPOSALS AND SCHEDULES FOR BRINGING THE CASES TO JUDGMENT**

    A.     **Plaintiffs' Proposal**

        **PLAINTIFFS' REQUEST FOR ISSUANCE BY THIS COURT OF A SUGGESTION OF REMAND OF CASES THAT PERTAIN TO CLAIMS OF SUICIDALITY FILED SOLELY AGAINST THE PFIZER DEFENDANTS**

Products Liability Plaintiffs (hereinafter "Plaintiffs"), by and through their counsel, Finkelstein & Partners, LLP, request an order granting the issuance of a Suggestion of Remand of cases that pertain only to claims of suicidality filed solely

against Pfizer Inc., Parke-Davis, a division of Warner-Lambert Company and Warner-Lambert Company LLC, Warner-Lambert Company and Warner-Lambert Company LLC (hereinafter "Pfizer Defendants"), to their respective transferor courts pursuant to 28 U.S.C. § 1407 and Rule 7.6(c)(ii) of the Rules for the Judicial Panel on Multidistrict Litigation, for the completion of case-specific pretrial discovery and trial.

At the outset it should be noted that there has been no case specific discovery, i.e., of prescribing physicians, drug manufacturer sales representative, performed in any case other than the Track 1 cases, and there has been no discovery at all performed in regard to cases filed against the generic gabapentin manufacturing defendants, i.e., Teva Pharmaceuticals USA, Inc., Teva Pharmaceuticals LTD, Teva Pharmaceuticals USA, as subsidiary of Teva Pharmaceuticals Industries, LTD and Ivax Pharmaceuticals, Inc.  In order to more fully inform the Court of the factual basis for this request, following the issuance of the Court's May 28, 2009 Order, the Products Liability Steering Committee reached out to *pro se* plaintiffs and attorneys representing plaintiffs in the MDL via e-mail or regular mail to determine among other things whether their respective cases included non-Pfizer defendants and whether the case involved claims of suicidality. While we have yet to receive responses from every attorney or *pro se* plaintiff, we can advise the Court as follows to date:

Of the 445 cases in the MDL with respect to which we received responses from counsel/plaintiffs, eighteen cases include non-Pfizer defendants, and five cases do not involve suicidality.  (See list attached as Exhibit A)

In support of the request for issuance of a Suggestion of Remand of cases that pertain only to claims of suicidality filed solely against Pfizer Defendants, Plaintiffs state the following:

On October 26, 2004, the Judicial Panel on Multidistrict Litigation (hereinafter "JPML") established MDL 1629, *In re Neurontin Marketing and Sales Practices Litigation*, finding that that 27 actions that were pending in sixteen districts "involve[d] common questions of fact, and that centralization under Section 1407 in the District of Massachusetts [would] serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions are purported class actions involving allegations that common defendants have engaged in the illegal promotion and sale of the drug Neurontin for 'off-label' use. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification matters), and conserve the resources of the parties, their counsel and the judiciary." *In re Neurontin Marketing and Sales Practices Litigation*, 342 F. Supp. 2d 1350, 1351 (J.P.M.L. 1004). The JPML stated that the actions were being transferred to the Honorable Patti B. Saris for "coordinated or consolidated pretrial proceedings with the actions pending there." *Id.* at 1352. On April 13, 2005, the JPML issued a conditional transfer order transferring products liability actions to MDL 1629 finding that the actions involved "questions of fact which are common to the actions previously transferred to the District of Massachusetts and assigned to Judge Saris". (See Exhibit B)

As to actions against the Pfizer Defendants, common issue discovery is complete in this MDL, with the exception of pending motion practice in relation to Defendants'

general causation expert, Dr. Robert Gibbons. Other than the "Track One" cases where case-specific discovery has proceeded and resulted in the parties' selection of the *Bulger* and *Smith* cases for trial, no case-specific discovery in cases that pertain only to claims of suicidality filed solely against Pfizer Defendants is being conducted. Because common issue discovery in cases that pertain only to claims of suicidality filed solely against Pfizer Defendants is complete, this Court, in the proper exercise of its discretion, should issue a Suggestion of Remand now that allows Plaintiffs to move for remand before the JPML under the JPML Rule 7.6(c).

Moreover, remand is warranted because the resolution of non-common, case specific issues should be determined by the transferor courts, who will in fact ultimately try these cases which pertain only to claims of suicidality which were filed solely against Pfizer Defendants. Furthermore, the Plaintiffs' Steering Committee ("PSC") is not presently engaging in any additional common discovery or other coordinated pretrial proceedings in regard to these cases which pertain only to claims of suicidality which were filed solely against Pfizer Defendants. At this stage of these proceedings the only PSC involvement appears to be limited to motion practice regarding defendants' general causation expert Dr. Gibbons. Finkelstein & Partners, LLP is presently in preparing for the trial of the *Bulger* case scheduled to begin on July 27, 2009.

However, in the first instance, it is not clear what role the PSC envisions for itself in litigating the remaining individual cases which pertain only to claims of suicidality filed solely against Pfizer Defendants, especially since, Plaintiffs submit, PSC will not be involved as an entity in the case specific discovery or actual trial aspect of any case—

because each of the law firms who represent the particular plaintiffs have a right to litigate their cases against the defendants on their own behalf.

Although only the JPML can order a case remanded to its transferor court, the JPML gives the judgment of the transferee court great weight as to when remand is appropriate.  *See In re Nat'l Century fin. Enter., Inc. Fin. Inv. Litig.,* 2004 U.S. Dist. LEXIS 10605, at *5 (S.D. Ohio Mar. 25, 2004); *In re Roberts,* 178 F.3d 181, 184 (3d Cir. 1999).  The JPML gives such weight to the recommendation of the transferee court because the transferee court manages the coordinated cases on a day-to-day basis and can thus best determine when remand is appropriate.  *In re Brand Name Prescription Drugs Antitrust Litig.,* 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003); *In re Zyprexa Prods. Liab. Litig.,* No. MDL 1596, 04-CV-1615, 2004 U.S. Dist. LEXIS 24541, at *9 (E.D.N.Y. Dec. 3, 2004); *In re IBM Peripheral EDP Devices Antitrust Litig.,* 407 F. Supp. 254, 256 (J.P.M.L. 1976) ("We are ... clearly cognizant of the special vantage point that the transferee judge has with respect to the conduct of  Section 1407 proceedings.  In his supervisory role, he is in a unique position to determine how the litigation can best proceed to insure the maximum efficiency for all parties and the judiciary.").  "The transferee court should consider when remand will best serve the expeditious disposition of the litigation."  Manual for Complex Litigation (Fourth) at § 20.133 (2004).

While "[t]he statutory power to order a remand under [28 U.S.C.] § 1407(a) from the transferee district to the transferor district lines in the Panel, not the transferee district judge," *In re Roberts,* 178 F.3d 181, 185 (3d Cir. 100), "the Panel is greatly influenced by the transferee judge's suggestion that remand is appropriate."  *In re "Dalkon Shield" IUD Prods. Liab. Litig.,* 453 F. Supp. 108, 110 (J.P.M.L. 1978).  Panel rules require that

any motion for remand made to the Panel include whether the movant has requested a suggestion of remand from the presiding District Court.  *See* J.P.M.L. Rule 7.6(d)(i)(A).  Plaintiffs therefore request that this Court find that pretrial proceedings have run their course in regard to cases which pertain only to claims of suicidality filed solely against Pfizer Defendants.

Remand poses no threat of conflicting rulings or duplicate discovery, since all that is left in regard to non-common case-specific discovery in cases which pertain only to claims of suicidality which were filed solely against Pfizer Defendants is fact specific to each case.  Furthermore, remand under 28 U.S.C. § 1407 is mandatory when a case has not been terminated during the pendency of the MDL and the coordinated or consolidated pretrial proceedings have concluded.  *See United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.,* 498 F. Supp. 2d 25, 37 (D.D.C. 2007).  As for coordinated discovery, other than the motion practice in relation to Defendants' general causation expert Dr. Gibbons, Plaintiffs have nothing further to add to the discovery already spearheaded by the PSC in regard to cases that pertain only to claims of suicidality filed solely against Pfizer Defendants.  Defendants have made no further requests for information from Plaintiffs.  There is nothing further to be gained by the coordinated discovery process.  Since there are no common discovery or other coordinated pretrial proceedings remaining in cases that pertain only to claims of suicidality filed solely against Pfizer Defendants, and only case-specific issues are outstanding, nothing remains to be litigated in this Court that is authorized by 28 U.S.C. § 1407, and such cases that pertain only to claims of suicidality filed solely against Pfizer Defendants should be remanded.

### B.     Defendants' Proposal

Defendants submit that remanding all cases at one time, before any case-specific discovery, as Plaintiffs suggest, would wreak havoc on the judicial system by flooding courts around the country with over 500 Neurontin cases requiring substantial work-up. The Arkansas and Mississippi cases alone, each of which consists of over 200 plaintiffs, would burden the federal courts in those states with their own min-MDLs. Plaintiffs understood and agreed to the MDL process as an appropriate means for centralizing early case discovery, yet they now act as if it were a surprise that the actions should remain before this Court to complete such discovery. Defendants submit that limiting remand at this time to the Track One cases would best serve the interest of judicial efficiency and goals of the MDL statute.

Accordingly, Defendants propose that, after the conclusion of the *Bulger* trial, the Court remand only the non-District of Massachusetts Track One cases (including *Smith*) to the relevant transferor courts for further proceedings, and seek an order suggesting remand only as to those cases.[1] The transferor courts are best suited to decide issues of specific causation and challenges to related expert testimony, as such matters directly impact how the case before them will be tried. (*See* 3/31/09 Hr'g Tr. At 86 (Court noting that "issues of specific causation might well go back to the home turf").) Likewise, transferor courts are in the best position to address novel issues of state law and decide dispositive motions.

---

[1] Whether to remand a case is committed to the discretion of the Judicial Panel on Multidistrict Litigation. However, the Panel accords great deference to the suggestion of the transferee court that remand is appropriate. *See In Re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F.Supp. 2d 1372, 1376 (J.P.M.L. 2003).

As to the remaining, non-Track One cases, Defendants submit that the Court should establish an orderly procedure for sequencing discovery in the cases to bring them to the same stage as the Track One cases before remanding them to the transferor courts. As an initial matter, simultaneously remanding nearly 150 actions (including two cases that each have over 200 plaintiffs) with no case specific discovery completed would not fulfill the purpose of efficient and coordinated pretrial proceedings that is the goal of the MDL statute. Courts have made clear that remand is not required after completion of generic discovery *See In re Wilson*, 451 F.3d 161, 170 (3d Cir, 2006). Rather, in determining when remand should be suggested, "[t]he transferee court should consider when remand will best serve the expeditious disposition of the litigation." Manual for Complex Litigation (Fourth) §20.133 (2004).

Simultaneous remand of 150 cases will not serve this goal, but will lead to inefficiency and the unnecessary expenditure of resources. Instead, cases should be grouped so a to allow for the orderly sequencing of discovery and remand. Within each group of cases, as with the Track One cases, the following discovery should be completed: written discovery to the plaintiff, deposition of the plaintiff and prescribing physicians(s), and depositions of any sales representatives. This will allow the parties to develop fundamental information about each case prior to remand, including when and why Neurontin was prescribed to the plaintiff or decedent, basic information about the plaintiff or decedent's medical history, and what information was provided to the prescribing physicians by Pfizer sales representatives. On the basis of such information, the parties can evaluate what additional discovery is required, as well as whether they want to attempt to resolve the case before incurring additional expense. Following

completion of such preliminary discovery, the case should be remanded. Any remaining discovery, such as depositions of additional healthcare providers or family and friends of the plaintiff or decedent, will be largely local in nature and best supervised by the transferor court. Remanding the cases in groups of ten (or more) will allow for a systematic process that allows the transferor courts to incorporate the cases into their local dockets in an orderly manner.

Accordingly, Defendants ask that the Court create random groups of the remaining cases, with twenty to thirty plaintiffs in each group, and establish sequential deadlines for completion of preliminary discovery as to each group within a five-month period, assuming selection of the first group by July 1, 2009.

Defendants believe that mediation is premature at this time. Finally, Defendants submit that Plaintiffs' request to establish a common benefit fund is premature and should be denied at this time.

### III. PLAINTIFFS' REQUEST THAT THIS COURT PROVIDE A DECISION REGARDING THEIR MOTION TO ESTABLISH A PLAINTIFFS' PERSONAL INJURY LITIGATION EXPENSE FUND

Finally, Plaintiffs request that the Court provide Products Liability Plaintiffs with a decision on their motion for the establishment of a common benefit fund.

On February 14, 2009, Products Liability Plaintiffs filed a motion to establish a Plaintiffs' personal injury litigation expense fund. ECF Doc. # 1129. After briefing was completed, oral argument of the motion was held on February 26, 2008, before Magistrate Judge Leo T. Sorokin. The Electronic Clerk's Notes of February 26, 2008, for proceedings regarding Plaintiffs' motion for a personal injury litigation expense fund, indicate that "the Court takes the matters under advisement." Now that the Court has

determined common issues in the MDL, i.e., general causation, which inured to the benefit of all plaintiffs who have a case pertaining to claims regarding suicidality pending in this MDL, a decision regarding Plaintiffs' motion for the establishment of a Personal Injury Litigation Expense Fund is required at this juncture. Plaintiffs respectfully request that this Court provide the parties with its determination concerning the Personal Injury Litigation Expense Fund Motion, ECF Doc. # 1129.

## IV.     MEDIATION

In response to this Courts' request, Plaintiffs are amenable to mediation; however, defense counsel have indicated that the belief that at this point mediation would be premature.

Dated:  June 12, 2009

Respectfully submitted,

*Members of Products Liability Plaintiffs' Steering Committee*

By:     **/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
1279 Route 300, P.O. Box 1111
Newburgh, NY  12551
Tel.:  (800) 634-1212

By:     **/s/ Jack W. London**
Jack W. London, Esquire
Law Offices of Jack W. London
  & Associates
3701 Bee Cave Road, Suite 200
Austin-Westlake, TX 78746
Tel: (512) 478-5858

        **SKADDEN, ARPS, SLATE**
         **MEAGHER & FLOM, LLP**

By:    **/s/ Mark S. Cheffo**
      Mark S. Cheffo, Esquire
      Four Times Square
      New York, NY  10036
      Tel:  (212) 735-3000

      -and-

      **SHOOK, HARDY & BACON L.L.P.**

By:    **/s/ Scott W. Sayler**
      Scott W. Sayler, Esquire
      2555 Grand Blvd.
      Kansas City, MO 64108-2613
      Tel:  (816) 474-6550

      -and-

      **WHITE AND WILLIAMS LLP**

By:    **/s/ David B. Chaffin**
      David B. Chaffin, Esquire
      BBO #  549245
      100 Summer Street, Suite 2707
      Boston, MA  02110
      Tel:  (617) 330-5000

*Attorneys for Defendant Pfizer Inc and Warner-Lambert Company LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on June 12, 2009.

      **/s/ Andrew G. Finkelstein**
      Andrew G. Finkelstein, Esquire

**EXHIBIT A**

Cases that do not claim suicidality:
Felici vs. Pfizer, 06-CV-10689-PBS – Garcia & Karam LLP
James Michael Burleson v. Pfizer, 06-11583-PBS – Garcia & Karam LLP
Dorsey v. Pfizer, 05-10639-PBS – Perry Krumsiek & Jack, LLP
Hyman vs. Pfizer, 04-10729 – Lovelace Law Firm PA
Lynch vs. Pfizer, 07-11280 – pro se

Cases that include non-Pfizer defendants:
Aranda vs. Pfizer, 06-CV-10310-PBS – Garcia & Karam LLP (non-Pfizer defendants: Andrew W. Wallace and Marcos A. Tovar)
Felici vs. Pfizer, 06-CV-11775-PBS – Garcia & Karam LLP (non-Pfizer defendants: Andrew W. Wallace and Marcos A. Tovar)
Felici vs. Pfizer, 06-CV-10689-PBS – Garcia & Karam LLP (non-Pfizer defendants: Andrew W. Wallace and Marcos A. Tovar)
Burleson v. Pfizer, 06-11583-PBS – Garcia & Karam LLP (non-Pfizer defendants: Andrew W. Wallace and Marcos A. Tovar)
Fonseca vs. Pfizer, 06-CV-10311-PBS – Garcia & Karam LLP (non-Pfizer defendants: Andrew W. Wallace and Marcos A. Tovar)
Salinas v. Pfizer, 06-CV-10687-PBS – Garcia & Karam LLP (non-Pfizer defendants: Andrew W. Wallace and Marcos A. Tovar)
Burroughs vs. Pfizer, 05-CV-11260-PBS – Cross, Poole, Goldasich & Fischer LLC (non-Pfizer defendants: Rite Aid Headquarters Corporation, Rite Aid of Alabama and Rite Aid 7028)
Hairfield vs. Pfizer, 08-CV-10930 – Pogust, Braslow & Millrood, LLC (non-Pfizer defendants: Teva Pharmaceuticals USA, Inc.)
Newberry vs. Pfizer, 07-CV-11499 – Pogust, Braslow & Millrood, LLC (non-Pfizer defendants: Teva Pharmaceuticals LTD, Teva Pharmaceuticals USA, as subsidiary of Teva Pharmaceuticals Industries, LTD and Ivax Pharmaceuticals Inc.)
Blackwell vs. Pfizer, 06-CV-11397 – Finkelstein & Partners, LLP (non-Pfizer defendants: Teva Pharmaceuticals USA, Inc.)
Young vs. Pfizer, 06-CV-11446 – Finkelstein & Partners, LLP (non-Pfizer defendants: Teva Pharmaceuticals USA, Inc.)
Farris vs. Pfizer, 06-CV-12063– Finkelstein & Partners, LLP (non-Pfizer defendants: Teva Pharmaceuticals USA, Inc.)
Ramsey vs. Pfizer, 06-CV-12212 – Finkelstein & Partners, LLP (non-Pfizer defendants: Teva Pharmaceuticals USA, Inc.)
Briggs vs. Pfizer, 06-CV-10327 – Finkelstein & Partners, LLP (non-Pfizer defendants: Teva Pharmaceuticals USA, Inc.)
Monsue vs. Pfizer, 08-CV-11533 – Finkelstein & Partners, LLP (non-Pfizer defendants: Novartis Pharmaceuticals Corporation, Sandoz Inc. and Eon Labs, Inc.)
Samuels vs. Pfizer, 08-CV-10958 – Finkelstein & Partners, LLP (non-Pfizer defendants: Teva Pharmaceuticals USA, Inc.)
Morrow vs. Pfizer, 08-CV-11706 – Finkelstein & Partners, LLP (non-Pfizer defendants: Teva Pharmaceuticals USA, Inc.)
McLendon vs. Pfizer, 08-CV-12034 – Finkelstein & Partners, LLP (non-Pfizer defendants: Teva Pharmaceuticals USA, Inc. and Ivax Pharmaceuticals)