# EXHIBIT B

Westlaw.

H.R. REP. 98-857(I)                                                                                    Page 1
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)

**2647 P.L. 98-417, DRUG PRICE COMPETITION AND PATENT TERM
RESTORATION ACT
SEE PAGE 98 STAT. 1585
SENATE REPORT (JUDICIARY COMMITTEE) NO. 98-547, JUNE 26,
1984 (TO ACCOMPANY S. 1538)
HOUSE REPORT (ENERGY AND COMMERCE COMMITTEE) NO. 98-857(I),
JUNE 21, 1984 (TO ACCOMPANY H.R. 3605)
HOUSE REPORT (JUDICIARY COMMITTEE) NO. 98-857(II), AUG. 1,
1984 (TO ACCOMPANY H.R. 3605)
CONG. RECORD VOL. 130 (1984)
DATES OF CONSIDERATION AND PASSAGE
SENATE JUNE 29, AUGUST 10, SEPTEMBER 12, 1984
HOUSE SEPTEMBER 6, 1984
S. 1538 WAS PASSED IN LIEU OF THE HOUSE BILL AFTER AMENDING
ITS LANGUAGE TO CONTAIN THE TEXT OF THE HOUSE BILL.  THE
HOUSE REPORT (PART I, THIS PAGE, AND PART II, PAGE 2686)
AND A RELATED REPORT (PAGE 2721) ARE SET OUT.

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED MATERIAL.  EACH
COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

HOUSE REPORT NO. 98-857(I)
JUNE 21, 1984

*1 THE COMMITTEE ON ENERGY AND COMMERCE, TO WHOM WAS REFERRED THE BILL  (H.R.
3605) TO AMEND THE FEDERAL FOOD, DRUG, AND COSMETIC ACT TO AUTHORIZE AN ABBREVI-
ATED NEW DRUG APPLICATION UNDER SECTION 505 OF THAT ACT FOR GENERIC NEW DRUGS
EQUIVALENT TO APPROVED NEW DRUGS, HAVING CONSIDERED THE SAME, REPORT FAVORABLY
THEREON WITH AMENDMENTS AND RECOMMEND THAT THE BILL AS AMENDED DO PASS.

*          *          *          *

*14 PURPOSE AND SUMMARY

TITLE I

THE PURPOSE OF TITLE I OF THE BILL IS TO MAKE AVAILABLE MORE LOW COST GENERIC
DRUGS BY ESTABLISHING A GENERIC DRUG APPROVAL PROCEDURE FOR PIONEER DRUGS FIRST
APPROVED AFTER 1962.  UNDER CURRENT LAW, THERE IS A GENERIC DRUG APPROVAL PROCED-
URE FOR PIONEER DRUGS APPROVED BEFORE 1962, BUT NOT FOR PIONEER DRUGS APPROVED
AFTER 1962.

TITLE I OF THE BILL GENERALLY EXTENDS THE PROCEDURES USED TO APPROVE GENERIC
COPIES OF PRE-62 DRUGS TO POST-62 DRUGS.  GENERIC COPIES *15 **2648 OF ANY DRUGS
MAY BE APPROVED IF THE GENERIC IS THE SAME AS THE ORIGINAL DRUG OR SO SIMILAR THAT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                                    Page 2
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

FDA HAS DETERMINED THE DIFFERENCES DO NOT REQUIRE SAFETY AND EFFECTIVENESS TEST-
ING.

   TITLE I ALSO REQUIRES PATENT OWNERS TO SUBMIT INFORMATION TO FDA REGARDING PRO-
DUCE AND USE PATENTS THAT COVER APPROVED DRUGS.  GENERIC COPIES OF THESE DRUGS MAY
BE APPROVED WHEN THE PATENTS EXPIRE UNLESS THE GENERIC COMPANY CERTIFIES THAT THE
PATENT IS INVALID OR WILL NOT BE INFRINGED.  IN SUCH CASES, THE GENERIC COMPANY
MUST NOTIFY THE PATENT OWNER ABOUT ITS CERTIFICATION AND APPROVAL OF THE GENERIC
DRUG MAY NOT BE MADE EFFECTIVE UNTIL THE COURT DECIDES THE SUIT FOR PATENT IN-
FRINGEMENT OR A PERIOD OF 18 MONTHS, WHICHEVER OCCURS FIRST.  NOTIFICATION MUST BE
GIVEN WHEN THE GENERIC HAS SUBMITTED AN ANDA WITH BIOEQUIVALENCE DATA.

   IN ADDITION, TITLE I AFFORDS FOUR YEARS OF EXCLUSIVE MARKET LIFE TO DRUGS WHICH
MAY NOT BE PATENTED AND WHICH ARE APPROVED FOR THE FIRST TIME AFTER ENACTMENT OF
THE BILL.  FURTHER, DRUGS WHICH WERE APPROVED FOR THE FIRST TIME BETWEEN 1982 AND
THE DATE OF ENACTMENT RECEIVED TEN YEARS OF EXCLUSIVE MARKET LIFE.

                                    TITLE II

   THE PURPOSE OF TITLE II OF THE BILL IS TO CREATE A NEW INCENTIVE FOR INCREASED
EXPENDITURES FOR RESEARCH AND DEVELOPMENT OF CERTAIN PRODUCTS WHICH ARE SUBJECT TO
PREMARKET GOVERNMENT APPROVAL.  THE INCENTIVE IS THE RESTORATION OF SOME OF THE
TIME LOST ON PATENT LIFE WHILE THE PRODUCT IS AWAITING PRE-MARKET APPROVAL.  UNDER
CURRENT LAW, A PATENT CONTINUES TO RUN WHILE THE MAKER OF THE PRODUCT IS TESTING
AND AWAITING APPROVAL TO MARKET IT.

   TITLE II OF H.R. 3605 PROVIDES FOR ONE EXTENSION OF THE EARLIEST PATENT ON CER-
TAIN PRODUCTS SUBJECT TO PRE-MARKET APPROVAL.  THE EXTENSION WOULD BE FOR A PERIOD
EQUAL TO:  (1) HALF OF THE TIME REQUIRED TO TEST THE PRODUCT FOR SAFETY (AND EF-
FECTIVENESS IN SOME CASES); AND (2) ALL OF THE TIME REQUIRED FOR THE AGENCY TO AP-
PROVE MARKETING OF THE PRODUCT.  THESE PRODUCTS INCLUDE: HUMAN DRUGS, ANIMAL
DRUGS, MEDICAL DEVICES, AND FOOD AND COLOR ADDITIVES.

   TITLE II PLACES SEVERAL LIMITS ON THE PERIOD OF PATENT EXTENSION. FIRST, THE
PERIOD OF EXTENSION MAY NOT EXCEED TWO YEARS FOR PRODUCTS EITHER CURRENTLY BEING
TESTED OR AWAITING APPROVAL.  FOR ALL OTHER PRODUCTS, THE PERIOD OF EXTENSION MAY
NOT EXCEED FIVE YEARS.  SECOND, THE PERIOD OF PATENT EXTENSION WHEN ADDED TO THE
PATENT TIME LEFT AFTER APPROVAL OF THE PRODUCT MAY NOT EXCEED FOURTEEN YEARS.
THIRD, ANY TIME THAT THE PRODUCT'S MANUFACTURER DID NOT ACT WITH DUE DILIGENCE
DURING THE REGULATORY REVIEW PERIOD WOULD BE SUBTRACTED.

   FINALLY, TITLE II PROVIDES THAT IT IS NOT AN ACT OF PATENT INFRINGEMENT FOR A
GENERIC DRUG MAKER TO IMPORT OR TO TEST A PATENTED DRUG IN PREPARATION FOR SEEKING
FDA APPROVAL IF MARKETING OF THE DRUG WOULD OCCUR AFTER EXPIRATION OF THE PATENT.

                                    HEARINGS

   THE COMMITTEE'S SUBCOMMITTEE ON HEALTH AND THE ENVIRONMENT HELD ONE DAY OF HEAR-
INGS ON H.R. 3605, THE DRUG PRICE COMPETITION ACT, ON JULY 15, 1983. TESTIMONY WAS
RECEIVED FROM 15 WITNESSES, **16 **2649** REPRESENTING NINE ORGANIZATIONS, WITH ADDI-

                © 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                 Page 3
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

TIONAL MATERIAL SUBMITTED BY TWO INDIVIDUALS AND ORGANIZATIONS.

### COMMITTEE CONSIDERATION

ON AUGUST 2, 1983, THE COMMITTEE'S SUBCOMMITTEE ON HEALTH AND THE ENVIRONMENT MET IN OPEN SESSION AND ORDERED FAVORABLY REPORTED H.R. 3605 WITHOUT AMENDMENT BY VOICE VOTE. ON JUNE 12, 1984, THE COMMITTEE MET IN OPEN SESSION ON H.R. 3605, AMENDED THE BILL, AND ORDERED IT FAVORABLY REPORTED BY A VOICE VOTE. THE TITLE OF THE BILL, AS AMENDED, IS THE 'DRUG PRICE COMPETITION AND PATENT TERM RESTORATION ACT OF 1984.'

### BACKGROUND AND NEED FOR THE LEGISLATION

### TITLE I-- ABBREVIATED NEW DRUG APPLICATIONS

PRIOR TO 1962, THE FEDERAL FOOD, DRUG AND COSMETIC ACT (FFDCA) REQUIRED THAT ALL DRUGS BE APPROVED AS SAFE BEFORE THEY COULD BE MARKETED. THE 1962 AMENDMENTS REQUIRED THAT ALL NEW DRUGS, GENERIC AND PIONEER, MUST BE APPROVED AS SAFE AND EFFECTIVE PRIOR TO MARKETING.

AS A RESULT OF THE 1962 AMENDMENTS, FDA DID TWO THINGS REGARDING PRE-1962 DRUGS. FIRST, THE AGENCY CREATED THE DRUG EFFICACY STUDY (DESI) TO DETERMINE IF ALL PRE-1962 DRUGS WERE EFFECTIVE. SECOND, FDA ESTABLISHED A POLICY PERMITTING THE APPROVAL OF A GENERIC DRUG EQUIVALENT TO A SAFE AND EFFECTIVE PRE-1962 PIONEER DRUG.

AS A RESULT OF THE 1962 AMENDMENTS, THE MANUFACTURER OF A PIONEER DRUG MUST CONDUCT TESTS ON HUMANS THAT SHOW THE PRODUCT TO BE SAFE AND EFFECTIVE AND SUBMIT THE RESULTS IN A NEW DRUG APPLICATION (NDA). A MANUFACTURER OF A GENERIC DRUG MUST CONDUCT TESTS THAT SHOW THE GENERIC DRUG IS THE SAME AS THE PIONEER DRUG AND THAT IT WILL BE PROPERLY MANUFACTURED AND LABELED. THIS INFORMATION IS SUBMITTED IN AN ABBREVIATED NEW DRUG APPLICATION (ANDA).

THE ONLY DIFFERENCE BETWEEN A NDA AND AN ANDA IS THAT THE GENERIC MANUFACTURER IS NOT REQUIRED TO CONDUCT HUMAN CLINICAL TRIALS. FDA CONSIDERS SUCH RETESTING TO BE UNNECESSARY AND WASTEFUL BECAUSE THE DRUG HAS ALREADY BEEN DETERMINED TO BE SAFE AND EFFECTIVE. MOREOVER, SUCH RETESTING IS UNETHICAL BECAUSE IT REQUIRES THAT SOME SICK PATIENTS TAKE PLACEBOS AND BE DENIED TREATMENT KNOWN TO BE EFFECTIVE.

THE FDA ALLOWS THIS ANDA PROCEDURE ONLY FOR PIONEER DRUGS APPROVED BEFORE 1962. THERE IS NO ANDA PROCEDURE FOR APPROVING GENERIC EQUIVALENTS OF PIONEER DRUGS APPROVED AFTER 1962. WHILE THE FDA HAS BEEN CONSIDERING SINCE 1978 AN EXTENSION OF THE PRE-1962 ANDA POLICY TO POST-1962 DRUGS, IT HAS NOT EXTENDED THE REGULATION. BECAUSE OF THE AGENCY'S FAILURE TO ACT, TITLE I OF H.R. 3605 IS NECESSARY TO ESTABLISH A POST-1962 ANDA POLICY.

SOME HAVE SUGGESTED THAT 'PAPER NDAS' BE USED TO APPROVE GENERIC EQUIVALENTS OF PIONEER DRUGS APPROVED AFTER 1962. UNDER THE PAPER NDA PROCEDURE, THE GENERIC MANUFACTURER MAY SUBMIT SCIENTIFIC REPORTS, INSTEAD OF CLINICAL TRIALS, TO SUPPORT FINDINGS OF SAFETY AND EFFICACY. THIS PROCEDURE IS INADEQUATE, HOWEVER, BECAUSE

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

FDA ESTIMATES THAT SATISFACTORY REPORTS ARE NOT AVAILABLE FOR 85 PERCENT OF ALL
POST-1962 DRUGS.

**\*17 \*\*2650** CURRENTLY, THERE ARE APPROXIMATELY 150 DRUGS APPROVED AFTER 1962 THAT
ARE OFF PATENT AND FOR WHICH THERE IS NO GENERIC EQUIVALENT. ALL OF THESE DRUGS
COULD BE APPROVED IN GENERIC FORM IF THERE WAS A PROCEDURE. EACH YEAR, MORE PION-
EER DRUGS GO OFF PATENT AND BECOME AVAILABLE FOR APPROVAL AS GENERICS.

AMONG THE DRUGS AVAILABLE OR SOON TO BE AVAILABLE FOR GENERIC APPROVAL ARE FIVE
BEST SELLERS: VALIUM, MOTRIN, INDERAL, DYAZIDE, AND LASIX. DYAZIDE, FOR EXAMPLE,
IS THE MOST WIDELY USED DIURETIC FOR THE TREATMENT OF HIGH BLOOD PRESSURE. ITS
PATENT EXPIRED IN 1981. VALIUM IS A POPULAR TRANQUILIZER WHOSE PATENT EXPIRES IN
1985. ANOTHER DRUG WHOSE PATENT HAS EXPIRED IS INDOCIN, AN ANTI-INFLAMMATORY DRUG
USED IN THE TREATMENT OF ARTHRITIS THAT IS THE TENTH HIGHEST SELLING DRUG IN THE
UNITED STATES.

THE AVAILABILITY OF GENERIC VERSIONS OF PIONEER DRUGS APPROVED AFTER 1962 WOULD
SAVE AMERICAN CONSUMERS $920 MILLION OVER THE NEXT 12 YEARS. OLDER AMERICANS, IN
PARTICULAR, WOULD BENEFIT BECAUSE THEY USE ALMOST 25 PERCENT OF ALL PRESCRIPTION
DRUGS.

MOREOVER, THE LACK OF GENERICS FOR POST-1962 PIONEER DRUGS WILL COST FEDERAL AND
STATE GOVERNMENTS MILLIONS OF DOLLARS. FOR THE DRUG METRONIDAZOLE, PURCHASED BY
THE DEPARTMENT OF DEFENSE, THE TAXPAYERS SAVED APPROXIMATELY $1.2 MILLION IN ONE
YEAR AS A RESULT OF THE AVAILABILITY OF A LOWER PRICED GENERIC VERSION. FEDERAL
AND STATE GOVERNMENTS WILL BE DENIED COMPARABLE SAVINGS ON DRUGS APPROVED AFTER
1962 BECAUSE OF THE LACK OF AN APPROVAL PROCEDURE.

### TITLE II-- PATENT TERM RESTORATION

PATENTS ARE DESIGNED TO PROMOTE INNOVATION BY PROVIDING THE RIGHT TO EXCLUDE
OTHERS FROM MAKING, USING, OR SELLING AN INVENTION. THEY ENABLE INNOVATORS TO OB-
TAIN GREATER PROFITS THAN COULD HAVE BEEN OBTAINED IF DIRECT COMPETITION EXISTED.
THESE PROFITS ACT AS INCENTIVES FOR INNOVATIVE ACTIVITIES.

ALTHOUGH THE PATENT TERM IN THE UNITED STATES IS 17 YEARS, THE PERIOD DURING THE
PATENT TERM IN WHICH PRODUCTS ARE MARKETED (THE EFFECTIVE PATENT TERM) IS USUALLY
LESS THAN 17 YEARS BECAUSE PATENTS OFTEN ARE OBTAINED BEFORE PRODUCTS ARE READY TO
BE MARKETED.

EFFECTIVE PATENT TERMS ARE INFLUENCED BY MANY FACTORS, INCLUDING FEDERAL PRE-
MARKETING AND PREMANUFACTURING REGULATIONS. THE PRODUCTS COVERED BY THESE REGULA-
TIONS INCLUDE PHARMACEUTICALS, MEDICAL DEVICES, FOOD ADDITIVES, AND COLOR ADDIT-
IVES. PHARMACEUTICALS FOR INSTANCE CANNOT BE MARKETED IN THE UNITED STATES UNTIL
THEY HAVE BEEN APPROVED BY THE FOOD AND DRUG ADMINISTRATION (FDA). TO OBTAIN SUCH
APPROVAL, DRUGS MUST UNDERGO EXTENSIVE TESTING TO PROVE THEY ARE BOTH SAFE AND EF-
FECTIVE. ALL THESE PRODUCTS ARE SUBJECT TO DIFFERENT REGULATIONS THAT HAVE HAD
VARYING IMPACTS ON EFFECTIVE PATENT TERMS.

IN TESTIMONY BEFORE SEVERAL CONGRESSIONAL COMMITTEES, REPRESENTATIVES FROM THE
PHARMACEUTICAL FIRMS THAT ARE HEAVILY INVOLVED IN BASIC RESEARCH AND RELY UPON
PATENTS, CLAIMED THAT THE AVERAGE EFFECTIVE PATENT TERM OF DRUGS HAS DECLINED.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

THEY ARGUED THAT A CONTINUATION OF THE DECLINE WOULD RESULT IN DECREASED EXPENDIT-
URES FOR RESEARCH AND DEVELOPMENT AND, EVENTUALLY, IN A DECLINE IN THE INTRODUC-
TION OF NEW DRUGS.

**\*18 \*\*2651** AS COMPENSATION FOR THE LOSS OF PATENT TERM DUE TO GOVERNMENT REVIEW,
THE RESEARCH INTENSIVE FIRMS ARGUED FOR PATENT TERM EXTENSION LEGISLATION.  THEY
STATED THAT THE LEGISLATION WOULD CREATE A SIGNIFICANT, NEW INCENTIVE WHICH WOULD
RESULT IN INCREASED EXPENDITURES FOR RESEARCH AND DEVELOPMENT, AND ULTIMATELY IN
MORE INNOVATIVE DRUGS.

### COMMITTEE OVERSIGHT FINDINGS

PURSUANT TO CLAUSE 2(1)(3)(A) OF RULE XI OF THE RULES OF THE HOUSE OF REPRESENT-
ATIVES, THE COMMITTEE REPORTS THAT OVERSIGHT OF THE FOOD AND DRUG ADMINISTRATION
AND THE FEDERAL FOOD, DRUG, AND COSMETIC ACT WAS CONDUCTED BY THE SUBCOMMITTEE ON
HEALTH AND THE ENVIRONMENT.  A HEARING WAS HELD ON JULY 15, 1983.  THE FINDINGS OF
THE COMMITTEE'S OVERSIGHT ACTIVITIES HAVE BEEN INCORPORATED INTO THE LEGISLATION
AND ARE DISCUSSED IN THOSE PORTIONS OF THIS REPORT ENTITLED 'BACKGROUND AND NEED
FOR THE LEGISLATION' AND 'SECTION-BY-SECTION ANALYSIS.'

### COMMITTEE ON GOVERNMENT OPERATIONS

PURSUANT TO CLAUSE 2(1)(3)(D) OF RULE XI OF THE RULES OF THE HOUSE OF REPRESENT-
ATIVES, NO OVERSIGHT FINDINGS HAVE BEEN SUBMITTED TO THE COMMITTEE BY THE COMMIT-
TEE ON GOVERNMENT OPERATIONS.

### COMMITTEE COST ESTIMATE

IN COMPLIANCE WITH CLAUSE 7(A) OF RULE XIII OF THE RULES OF THE HOUSE OF REPRES-
ENTATIVES, THE COMMITTEE BELIEVES THAT THE COSTS, IF ANY, INCURRED IN CARRYING OUT
H.R. 3605 WILL BE OFFSET BY SAVINGS TO THE FEDERAL GOVERNMENT. IN TESTIFYING BE-
FORE THE COMMITTEE'S SUBCOMMITTEE ON HEALTH AND THE ENVIRONMENT, OFFICIALS FROM
THE FOOD AND DRUG ADMINISTRATION ESTIMATED THAT ANY GREATER WORKLOAD RESULTING
FROM THE APPROVAL OF GENERIC DRUGS UNDER TITLE I WOULD BE ABSORBED INITIALLY.
LATER, THE OFFICIALS ESTIMATED, SOME ADDITIONAL STAFF MIGHT BE REQUIRED TO PROCESS
GENERIC DRUG APPLICATIONS.  THIS ADDITIONAL STAFF COULD COST UP TO $1.1 MILLION.
THE ACTUAL COST TO THE FEDERAL GOVERNMENT CANNOT BE ESTIMATED BECAUSE IT IS UN-
KNOWN HOW MUCH ADDITIONAL STAFF, IF ANY, MIGHT BE HIRED.

ENACTMENT OF THE LEGISLATION, HOWEVER, WILL RESULT IN SIGNIFICANT COST SAVINGS
TO THE FEDERAL GOVERNMENT.  UNLIKE THE COSTS OF H.R. 3605, THESE SAVINGS ARE CER-
TAIN.  THE FEDERAL GOVERNMENT SPENT ABOUT $2.4 BILLION FOR DRUGS IN 1983.  MANY OF
THESE DRUGS WILL BE AVAILABLE AS LOW COST GENERIC AFTER ENACTMENT OF H.R. 3605.
FOR EXAMPLE, THE DEPARTMENT OF DEFENSE SAVED APPROXIMATELY $1.2 MILLION IN ONE
YEAR WHEN A LOWER PRICED GENERIC VERSION OF METRONIDAZOLE BECAME AVAILABLE.

### CONGRESSIONAL BUDGET OFFICE ESTIMATE

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                                          Page 6
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

PURSUANT TO CLAUSES 2(1)(3)(B) AND (C) OF RULE XI OF THE RULES OF THE HOUSE OF REPRESENTATIVES, THE COMMITTEE SETS FORTH THE FOLLOWING LETTER AND COST ESTIMATE PREPARED BY THE CONGRESSIONAL BUDGET OFFICE WITH RESPECT TO THE REPORTED BILL:

**\*19 \*\*2652** U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
WASHINGTON, DC, JUNE 19, 1984
HON. JOHN D. DINGELL,
CHAIRMAN, COMMITTEE ON ENERGY AND COMMERCE,
HOUSE OF REPRESENTATIVES, WASHINGTON, DC.

DEAR MR. CHAIRMAN: THE CONGRESSIONAL BUDGET OFFICE HAS REVIEWED H.R. 3605, THE DRUG PRICE COMPETITION AND PATENT TERM RESTORATION ACT OF 1984, AS ORDERED REPORTED BY THE HOUSE COMMITTEE ON ENERGY AND COMMERCE ON JUNE 12, 1984.

TITLE I OF THIS BILL WOULD ALLOW DRUG MANUFACTURERS TO USE AN ABBREVIATED NEW DRUG APPLICATION (ANDA) WHEN SEEKING APPROVAL TO MAKE GENERIC COPIES OF DRUGS THAT WERE APPROVED BY THE FOOD AND DRUG ADMINISTRATION (FDA) AFTER 1962. AN ESTIMATED 150 DRUG PRODUCTS APPROVED AFTER 1962 ARE CURRENTLY OFF PATENT AND WOULD BECOME AVAILABLE FOR GENERIC COPY USING THE ANDA PROCEDURE PROPOSED IN THIS BILL.

THE FDA ESTIMATES THAT THE ENACTMENT OF H.R. 3605 WOULD AT LEAST TRIPLE THE WORKLOAD OF THE DIVISION RESPONSIBLE FOR APPROVING ANDAS. CURRENTLY, THIS DIVISION REVIEWS ANDAS FOR GENERIC COPIES OF PRE-1962 APPROVED DRUG PRODUCTS. THE WORKLOAD WOULD INCREASE AS SEVERAL MANUFACTURERS FILE AN ANDA FOR EACH DRUG PRODUCT THAT BECOMES AVAILABLE FOR GENERIC COPY. BECAUSE THEY WOULD BE REVIEWING INFORMATION ON NEW DRUGS, THE FDA BELIEVES IT WOULD TAKE THEM A YEAR TO PROCESS EACH OF THE NEW APPLICATIONS. THIS IS ABOUT THREE MONTHS LONGER ON AVERAGE THAN IT CURRENTLY TAKES TO PROCESS A PRE-1962 ANDA. DR. MARVIN SEIFE, DIRECTOR OF FDA'S DIVISION OF GENERIC DRUG MONOGRAPHS, TESTIFIED BEFORE THE SUBCOMMITTEE ON HEALTH AND THE ENVIRONMENT THAT A GREATER WORKLOAD COULD AT FIRST BE ABSORBED, BUT MAY LATER REQUIRE ADDITIONAL OFFICE SPACE AND 15 NEW FDA EMPLOYEES. ASSUMING AN AVERAGE FULL-TIME EQUIVALENT POSITION PLUS OVERHEAD AND FRINGE BENEFITS IS $70,000, THE POTENTIAL COST TO THE FDA OF IMPLEMENTING THIS LEGISLATION COULD BE ABOUT $1.1 MILLION. THE ACTUAL COST TO THE FEDERAL GOVERNMENT WOULD DEPEND ON THE EXTENT TO WHICH THE FDA WOULD EXPAND TO ACCOMMODATE THE INCREASED WORKLOAD.

ENACTMENT OF THIS LEGISLATION COULD ALSO RESULT IN SAVINGS TO BOTH THE FEDERAL AND STATE AND LOCAL GOVERNMENTS. IN FISCAL YEAR 1983, THE FEDERAL GOVERNMENT SPENT APPROXIMATELY $2.4 BILLION FOR DRUGS IN THE MEDICAID PROGRAM, AND IN VETERAN AND MILITARY HOSPITALS. DATA ON DRUG COSTS IN THE MEDICARE PROGRAM ARE UNAVAILABLE. IF THE FEDERAL GOVERNMENT IS CURRENTLY PURCHASING THESE 150 COPIABLE DRUG PRODUCTS AT HIGHER, BRAND NAME PRICES, SAVINGS MAY RESULT IF LOWER PRICED, GENERIC COPIES OF THESE DRUGS ARE SUBSTITUTED.

IT IS DIFFICULT TO KNOW IN ADVANCE WHICH OF THE AVAILABLE 150 DRUG PRODUCTS MANUFACTURERS WOULD CHOOSE TO COPY. IT IS ALSO DIFFICULT TO ESTIMATE THE PRICE AT WHICH THESE GENERIC COPIES WOULD BE SOLD. GENERIC VERSIONS OF TEN POPULAR DRUG PRODUCTS SHOW THEIR PRICE TO BE ON AVERAGE 50 PERCENT LESS THAN THEIR BRAND NAME EQUIVALENT. THE DOLLAR AMOUNT OF THE FEDERAL GOVERNMENT CURRENTLY SPENT ON THESE 150 BRAND NAME DRUG PRODUCTS IS UNKNOWN.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL 37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

   TITLE II OF THIS BILL WOULD EXTEND THE AMOUNT OF TIME FOR WHICH CERTAIN PATENTS ARE ISSUED TO INCLUDE SOME OR ALL OF THE TIME REQUIRED**2653 *20 FOR A MANUFAC- TURER TO TEST A PRODUCT FOR SAFETY AND EFFICACY AND TO RECEIVE MARKETING APPROVAL. PRODUCTS AFFECTED BY THIS LEGISLATION WOULD BE DRUGS, MEDICAL DEVICES, AND FOOD AND COLOR ADDITIVES.  MANUFACTURERS MUST SHOW DUE DILIGENCE IN THEIR PRODUCT TEST- ING OR THIS AMOUNT OF TIME WILL BE SUBTRACTED FROM THE TOTAL LIFE OF THE PATENT. THIS PROVISION WOULD PLACE AN ADDITIONAL BURDEN ON THE FDA.  THEY WOULD BE RE- SPONSIBLE FOR KEEPING TRACK OF A MANUFACTURER'S PRODUCT TESTING TIME AND FOR DE- TERMINING THEIR DILIGENCE IN COMPLETING THE TESTING.  THESE COSTS, HOWEVER, WOULD BE NEGLIGIBLE.
   ENACTMENT OF THIS BILL COULD RESULT IN INCREASED PERSONNEL COSTS TO THE FEDERAL GOVERNMENT OF APPROXIMATELY $1.1 MILLION.  THE BILL, HOWEVER, DOES NOT SPECIFIC- ALLY AUTHORIZE ADDITIONAL APPROPRIATIONS FOR THE FDA.  THIS BILL MAY ALSO RESULT IN SAVINGS IF CHEAPER, GENERIC DRUGS ARE MADE AVAILABLE FOR PURCHASE BY THE FEDER- AL GOVERNMENT.  THESE SAVINGS WOULD OCCUR IN VARIOUS PROGRAMS THROUGHOUT THE BUDGET SUCH AS MEDICARE, MEDICAID, AND THE VETERANS ADMINISTRATION.  HOWEVER, THE MAGNITUDE OF THESE SAVINGS IS UNKNOWN.
   PLEASE CALL ME IF I CAN BE OF ADDITIONAL ASSISTANCE, OR YOUR STAFF MAY WISH TO CONTACT CARMELA PENA (226-2820) OF OUR BUDGET ANALYSIS DIVISION FOR FURTHER DE- TAILS ON THIS ESTIMATE.
   SINCERELY,
   ERIC HANUSHEK
   (FOR RUDOLPH G. PENNER, DIRECTOR).

                    INFLATIONARY IMPACT STATEMENT

   PURSUANT TO CLAUSE 2(1)(4) OF RULE XI OF THE RULES OF THE HOUSE OF REPRESENTAT- IVES, THE COMMITTEE MAKES THE FOLLOWING STATEMENT WITH REGARD TO THE INFLATIONARY IMPACT OF THE REPORTED BILL:
   THE COMMITTEE BELIEVES THAT ENACTMENT OF H.R. 3605 WILL NOT HAVE AN INFLATIONARY IMPACT UPON THE ECONOMY.  IN FACT, TITLE I OF THE BILL WILL HAVE A DEFLATIONARY EFFECT BECAUSE IT MAKES AVAILABLE LOWER PRICED GENERIC VERSIONS OF DRUGS.  SUCH GENERIC DRUGS ARE THREE TO FIFTEEN TIMES LESS COSTLY THAN THEIR BRAND NAME COUNTER-PARTS.  THE ESTIMATED $1 BILLION COST SAVINGS TO CONSUMERS AS A RESULT OF TITLE I'S GENERIC DRUG APPROVAL PROCEDURE WILL HAVE A DEFLATIONARY EFFECT UPON THE NATIONAL ECONOMY.  WHILE TITLE II OF THE BILL PROVIDES FOR A LIMITED EXTENSION OF THE PATENTS ON CERTAIN PRODUCTS, THE COMMITTEE BELIEVES THAT THE ADDITIONAL PATENT TERM WILL ACT AS A SPUR TO DEVELOP INNOVATIVE AND, ULTIMATELY, LESS COSTLY TREAT- MENTS FOR DISEASES.

                    SECTION-BY-SECTION ANALYSIS

                 TITLE I-- DRUG PRICE COMPETITION ACT

                          SECTION 101

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                                     Page 8
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

SECTION 101 AMENDS SECTION 505 OF THE FEDERAL FOOD, DRUG AND COSMETIC ACT
(FFDCA) [FN1]  TO ESTABLISH A NEW SUBSECTION (J) PROVIDING FOR THE APPROVAL OF AB-
BREVIATED NEW DRUG APPLICATIONS (ANDA).  PAR GRAPH (1) OF SECTION (J) SETS FORTH
THE INFORMATION WHICH MUST BE INCLUDED IN AN ANDA.

*21 **2654 ANDA'S FOR DRUGS WHICH ARE THE SAME

IN THE CASE OF DRUGS WHICH ARE THE SAME AS THE LISTED DRUG, THE FOCUS OF THE
BILL IS TO PROVIDE THE FOOD AND DRUG ADMINISTRATION (FDA) WITH SUFFICIENT INFORMA-
TION TO ASSURE THAT THE GENERIC DRUG IS THE SAME AS THE LISTED DRUG [FN2] THAT HAS
PREVIOUSLY BEEN DETERMINED TO BE SAFE AND EFFECTIVE.  SOME HAVE SUGGESTED THAT A
GENERIC DRUG MUST BE IDENTICAL IN ALL RESPECTS TO THE LISTED DRUG INSTEAD OF THE
SAME.  THE REGULATIONS THAT PERMIT ANDA'S FOR PRE-1962 PIONEER DRUGS MAKE NO SUCH
DISTINCTION.  [FN3]  IN REJECTING THE USE OF THE TERM IDENTICAL, THE FDA REGULA-
TION COMMENTS THAT 'IDENTICAL MEANS A PRODUCT THAT IS THE SAME IN DOSAGE FORM,
STRENGTH, AND ROUTE OF ADMINISTRATION, CONTAINS THE SAME ACTIVE INGREDIENT, AND IS
RECOMMENDED FOR USE UNDER THE SAME CONDITIONS OF USE.'  [FN4]  THE COMMITTEE HAS
ADOPTED THE FDA'S POLICY OF UTILIZING THE TERM 'SAME' EXCEPT THAT THE BILL PERMITS
AN ANDA TO BE APPROVED FOR LESS THAN ALL OF THE INDICATIONS FOR WHICH THE LISTED
DRUG HAS BEEN APPROVED AS EXPLAINED BELOW.

FIRST, AN ANDA MUST INCLUDE SUFFICIENT INFORMATION TO SHOW THAT THE CONDITIONS
OF USE FOR WHICH THE APPLICANT IS SEEKING APPROVAL ARE THE SAME AS THOSE THAT HAVE
BEEN PREVIOUSLY APPROVED FOR THE LISTED DRUG. THE APPLICANT NEED NOT SEEK APPROVAL
FOR ALL OF THE INDICATIONS FOR WHICH THE LISTED DRUG HAS BEEN APPROVED.  FOR EX-
AMPLE, IF THE LISTED DRUG HAS BEEN APPROVED FOR HYPERTENSION AND ANGINA PECTORIS,
AND IF THE INDICATION FOR HYPERTENSION IS PROTECTED BY PATENT, THEN THE APPLICANT
COULD SEEK APPROVAL FOR ONLY THE ANGINA PECTORIS INDICATION.

WHILE THE FDA'S CURRENT REGULATIONS FOR CONSIDERING ANDA'S FOR PIONEER DRUGS AP-
PROVED BEFORE 1962 PERMIT AN APPLICANT TO PETITION FOR APPROVAL FOR AN INDICATION
OTHER THAN THAT WHICH HAS BEEN APPROVED FOR THE PIONEER DRUG, SECTION 101 OF THE
BILL OVERTURNS THAT POLICY.  [FN5]  THUS, AN ANDA MAY NOT BE CONSIDERED FOR A CON-
DITION OF USE THAT HAS NOT BEEN PREVIOUSLY APPROVED FOR THE LISTED DRUG.

AN ANDA MUST ALSO CONTAIN SUFFICIENT INFORMATION TO SHOW THAT THE ACTIVE IN-
GREDIENTS OF THE GENERIC DRUG ARE THE SAME AS THOSE OF THE LISTED DRUG.  IF THE
LISTED DRUG HAS ONE ACTIVE INGREDIENT, THEN THE ACTIVE INGREDIENT OF THE GENERIC
MUST BE THE SAME.  IF THE LISTED DRUG HAS MORE THAN ONE ACTIVE INGREDIENT, THEN
SUFFICIENT INFORMATION MUST BE INCLUDED TO SHOW THAT ALL OF THE ACTIVE INGREDIENTS
IN THE GENERIC DRUG ARE THE SAME.

IN ADDITION, AN ANDA MUST CONTAIN SUFFICIENT INFORMATION TO SHOW THAT THE ROUTE
OF ADMINISTRATION, THE DOSAGE FORM AND THE STRENGTH OF THE GENERIC DRUG ARE THE
SAME AS THOSE OF THE LISTED DRUG.

FURTHER, AN ANDA MUST INCLUDE SUFFICIENT INFORMATION TO SHOW THAT THE GENERIC
DRUG IS BIOEQUIVALENT TO THE LISTED DRUG.

*22 **2655 FIFTH, AN ANDA MUST CONTAIN ADEQUATE INFORMATION TO SHOW THAT THE

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                        Page 9
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)

PROPOSED LABELING FOR THE GENERIC DRUG IS THE SAME AS THAT OF THE LISTED DRUG.
THE COMMITTEE RECOGNIZES THAT THE PROPOSED LABELING FOR THE GENERIC DRUG MAY NOT
BE EXACTLY THE SAME.  FOR EXAMPLE, THE NAME AND ADDRESS OF THE MANUFACTURERS WOULD
VARY AS MIGHT THE EXPIRATION DATES FOR THE TWO PRODUCTS.  ANOTHER EXAMPLE IS THAT
ONE COLOR IS USED IN THE COATING OF THE LISTED DRUG AND ANOTHER COLOR IS USED IN
THAT OF THE GENERIC DRUG.  THE FDA MIGHT REQUIRE THE LISTED DRUG MAKER TO SPECIFY
THE COLOR IN ITS LABEL.  THE GENERIC MANUFACTURER, WHICH HAS USED A DIFFERENT COL-
OR, WOULD HAVE TO SPECIFY A DIFFERENT COLOR IN ITS LABEL.

     SIXTH, AN ANDA MUST INCLUDE A LIST OF ALL THE COMPONENTS OF THE GENERIC DRUG, A
DESCRIPTION OF THE COMPOSITION OF THE GENERIC DRUG, A DESCRIPTION OF THE METHODS
AND CONTROLS USED IN THE MANUFACTURE, PROCESSING AND PACKING OF THE GENERIC DRUG,
SAMPLES OF THE GENERIC DRUG AND ITS COMPONENTS, AND SPECIMENS OF THE PROPOSED LA-
BELING.

     SEVENTH, AN ANDA MUST INCLUDE A CERTIFICATION BY THE APPLICANT REGARDING THE
STATUS OF CERTAIN PATENTS APPLICABLE TO THE LISTED DRUG IF THE PATENT INFORMATION
HAS BEEN SUBMITTED UNDER SECTION 505(B) OR (C).  WITH RESPECT TO ALL PRODUCT PAT-
ENTS WHICH CLAIM THE LISTED DRUG AND ALL USE PATENTS WHICH CLAIM AN INDICATION FOR
THE DRUG FOR WHICH THE APPLICANT IS SEEKING APPROVAL (HEREAFTER DESCRIBED AS A
CONTROLLING USE PATENT), THE APPLICANT MUST CERTIFY, IN HIS OPINION AND TO THE
BEST OF HIS KNOWLEDGE, AS TO ONE OF FOUR CIRCUMSTANCES.

     THE APPLICANT MAY CERTIFY THAT THE PATENT INFORMATION REQUIRED UNDER  SECTIONS
505(B) AND (C) HAS NOT BEEN SUBMITTED IF THAT IS THE CASE.  IF APPROPRIATE, THE
APPLICANT MAY CERTIFY THAT ONE OR MORE OF THE PRODUCT OR CONTROLLING USE PATENTS
PROVIDED HAVE EXPIRED.  THIRD, THE APPLICANT MAY CERTIFY WHEN APPROPRIATE THAT ONE
OR MORE OF THE PRODUCT OR CONTROLLING USE PATENTS WILL EXPIRE AT SOME SPECIFIED
DATE IN THE FUTURE.  WHEN THE APPLICANT MAKES THESE CERTIFICATIONS, IT MUST RELY
UPON THE PATENT INFORMATION SUPPLIED TO THE FDA.  LAST, AN APPLICANT MAY CERTIFY
IF APPLICABLE THAT ONE OR MORE OF THE PRODUCT OR CONTROLLING USE PATENTS ARE IN-
VALID OR WILL NOT BE INFRINGED.

     THE COMMITTEE RECOGNIZES THAT IN SOME INSTANCES AN APPLICANT WILL HAVE TO MAKE
MULTIPLE CERTIFICATIONS WITH RESPECT TO PRODUCT OR CONTROLLING USE PATENTS.  FOR
EXAMPLE, IF THE PRODUCT PATENT HAS EXPIRED AND A VALID CONTROLLING USE PATENT WILL
NOT EXPIRE FOR THREE YEARS, THEN THE APPLICANT MUST CERTIFY THAT ONE PATENT HAS
EXPIRED AND THE OTHER WILL EXPIRE IN THREE YEARS. THE COMMITTEE INTENDS THAT THE
APPLICANT MAKE THE APPROPRIATE CERTIFICATION FOR EACH PRODUCT AND CONTROLLING USE
PATENT.

     EIGHTH, IF THERE ARE INDICATIONS WHICH ARE CLAIMED BY ANY USE PATENT AND FOR
WHICH THE APPLICANT IS NOT SEEKING APPROVAL, THEN AN ANDA MUST STATE THAT THE AP-
PLICANT IS NOT SEEKING APPROVAL FOR THOSE INDICATIONS WHICH ARE CLAIMED BY SUCH
USE PATENT.  FOR EXAMPLE, THE LISTED DRUG MAY BE APPROVED FOR TWO INDICATIONS.  IF
THE APPLICANT IS SEEKING APPROVAL ONLY FOR INDICATION NO. 1, AND NOT INDICATION
NO. 2 BECAUSE IT IS PROTECTED BY A USE PATENT, THEN THE APPLICANT MUST MAKE THE
APPROPRIATE CERTIFICATION AND A STATEMENT EXPLAINING THAT IT IS NOT SEEKING AP-
PROVAL FOR INDICATION NO. 2.

     FINALLY, THE COMMITTEE INTENDS THAT AN ANDA CONTAIN ANY INFORMATION AVAILABLE TO

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                                    Page 10
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

THE APPLICANT REGARDING REPORTS OF ADVERSE EFFECTS**2656 *23 NOT REFLECTED IN THE
LABELING, AN ENVIRONMENTAL IMPACT ANALYSIS PURSUANT TO FDA REGULATIONS, STATEMENTS
REGARDING THE PROTECTION OF HUMAN SUBJECTS IN CLINICAL INVESTIGATIONS AS REQUIRED
BY FDA REGULATIONS, AND A STATEMENT REGARDING COMPLIANCE WITH GOOD LABORATORY
PRACTICES IN NON-CLINICAL INVESTIGATIONS AS REQUIRED BY FDA REGULATIONS.  [FN6]

### ANDA'S FOR DRUGS WHICH ARE DIFFERENT

PARAGRAPH (2)(C) PROHIBITS ANY PERSON FROM SUBMITTING AN ANDA FOR A GENERIC DRUG
WHICH DIFFERS FROM THE LISTED DRUG UNLESS THE CHANGE IS PERMITTED BY THE STATUTE
AND THE FDA HAS GRANTED A PETITION REQUESTING THE CHANGE.

IF AN APPLICANT WISHES TO VARY THE ROUTE OF ADMINISTRATION, DOSAGE FORM OR
STRENGTH OF THE GENERIC DRUG FROM THE LISTED DRUG, IT MUST FIRST PETITION THE FDA
FOR PERMISSION TO FILE AN ANDA FOR THE DIFFERING GENERIC DRUG.  IN ADDITION, AN
APPLICANT MAY REQUEST TO VARY ONE OF THE ACTIVE INGREDIENTS IN THE GENERIC DRUG
FROM THE LISTED DRUG WHEN THE LISTED DRUG IS A COMBINATION PRODUCT.  THE REMAINING
ACTIVE INGREDIENTS OF THE GENERIC DRUG MUST BE THE SAME AS THE OTHER ACTIVE IN-
GREDIENTS OF THE LISTED DRUG.

THESE ARE THE ONLY CHANGES FROM THE LISTED DRUG FOR WHICH AN APPLICANT MAY PETI-
TION.  AS IS EXPLAINED IN THE ANDA REGULATIONS FOR PRE-1962 DRUGS, THE COMMITTEE
GENERALLY EXPECTS THAT APPROVAL OF PETITIONS WILL 'ORDINARILY BE LIMITED TO DOSAGE
FORMS FOR THE SAME ROUTE OF ADMINISTRATION OR TO CLOSELY RELATED INGREDIENTS.'
[FN7]  IF THE FDA GRANTS A PETITION FOR A CHANGE FROM THE LISTED DRUG, THE FDA MAY
REQUIRE SUCH ADDITIONAL INFORMATION IN THE ANDA REGARDING THE CHANGE AS IT DEEMS
NECESSARY.

THE FDA MUST APPROVE A PETITION TO SUBMIT AN ANDA FOR A DIFFERING GENERIC DRUG
UNLESS CLINICAL STUDIES ARE NEEDED TO SHOW THE SAFETY AND EFFECTIVENESS OF THE
CHANGE.  IN REVIEWING A PETITION TO CHANGE ONE OF THE ACTIVE INGREDIENTS IN A COM-
BINATION PRODUCT, THE COMMITTEE DOES NOT INTEND TO CHANGE THE FDA'S CURRENT POLICY
REGARDING THE EVALUATION OF THE SAFETY AND EFFECTIVENESS OF COMBINATION PRODUCTS.
IF THE FDA FINDS THAT SAFETY AND EFFECTIVENESS TESTING OF THE ACTIVE INGREDIENTS
OF THE DRUG, INDIVIDUALLY OR IN COMBINATION, IS REQUIRED, THEN THE FDA MUST DENY
THE PETITION.

THE FDA MUST EITHER APPROVE OR DISAPPROVE A PETITION WITHIN 90 DAYS OF ITS SUB-
MISSION.  AS IS THE CASE UNDER THE CURRENT REGULATIONS, 'THERE IS NO LEGAL RE-
QUIREMENT THAT THE HEARING OPPORTUNITY PROVIDED BY SECTION 505(C) BE MADE AVAIL-
ABLE TO ANDA APPLICANTS WHO DISAGREE WITH AN ADVERSE AGENCY DECISION' ON WHETHER
CLINICAL STUDIES ARE NEEDED TO SHOW THE SAFETY AND EFFECTIVENESS OF THE DIFFERING
GENERIC DRUG.  [FN8]  'APPROPRIATE REVIEW OF SUCH DECISIONS MAY BE HAD . . . UNDER
THE APPLICABLE STANDARD-- THAT APPLICABLE TO ADMINISTRATIVE DECISIONMAKING GENER-
ALLY-- WHICH IS WHETHER THE AGENCY'S DECISION IS ARBITRARY, CAPRICIOUS, AN ABUSE
OF DISCRETION, OR OTHERWISE NOT IN ACCORDANCE WITH LAW (5 U.S.C. 706(2)(A)).'
[FN9]  IF THE FDA *24 **2657 DOES NOT APPROVE A PETITION, THEN AN ANDA MAY NOT BE
FILED FOR A GENERIC DRUG THAT VARIES FROM THE LISTED DRUG.

AN ANDA FOR A DRUG WHICH DIFFERS FROM THE LISTED DRUG AND FOR WHICH A PETITION

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

HAS BEEN APPROVED BY THE FDA MUST CONTAIN SUCH ADDITIONAL INFORMATION REGARDING
THE DIFFERENCE AS THE FDA MAY REQUIRE WHEN IT GRANTED THE PETITION. FOR EXAMPLE,
IF THE ROUTE OF ADMINISTRATION OF THE GENERIC DRUG DIFFERS FROM THAT OF THE LISTED
DRUG, THEN THE FDA MAY REQUIRE SUCH ADDITIONAL INFORMATION ON THAT CHANGE AS IT
DEEMS NECESSARY.

  IF THE FDA APPROVES A PETITION PERMITTING AN APPLICANT TO VARY ONE OF THE ACTIVE
INGREDIENTS OF A GENERIC DRUG FROM THOSE OF THE LISTED COMBINATION DRUG, THE ANDA
MUST CONTAIN SUFFICIENT INFORMATION TO SHOW THAT THE ACTIVE INGREDIENTS OF THE
GENERIC DRUG (INCLUDING THE VARYING ACTIVE INGREDIENT) ARE OF THE SAME PHARMACOLO-
GICAL OR THERAPEUTIC CLASS AS THOSE OF THE LISTED DRUG. IN ADDITION, THE DIFFERING
GENERIC DRUG MUST BE EXPECTED TO HAVE THE SAME THERAPEUTIC EFFECT WHEN ADMIN-
ISTERED TO PATIENTS FOR AN APPROVED CONDITION OF USE.

  AN EXAMPLE OF SUCH A CHANGE IN ONE OF THE ACTIVE INGREDIENTS THAT THE FDA MIGHT
FIND ACCEPTABLE IS THE SUBSTITUTION OF ACETAMINOPHEN FOR ASPIRIN IN A COMBINATION
PRODUCT. ANOTHER EXAMPLE MIGHT BE THE SUBSTITUTION OF ONE ANTIHISTAMINE FOR AN-
OTHER. THE ACTIVE INGREDIENT, WHICH THE APPLICANT WISHES TO VARY AND WHICH THE
FDA HAS GRANTED A PETITION, MUST HAVE BEEN APPROVED FOR SAFETY AND EFFECTIVENESS
OR MUST NOT BE WITHIN THE REQUIREMENTS OF SECTION 201(P) OF FFDCA. [FN10]

                CERTIFICATION OF INVALIDITY OF NONINFRINGEMENT OF A PATENT

  WHEN AN APPLICANT CERTIFIES THAT ANY PRODUCT OR CONTROLLING USE PATENT IS INVAL-
ID OR WILL NOT BE INFRINGED, PARAGRAPH (2)(B) REQUIRES THAT IT MUST GIVE NOTICE OF
SUCH CERTIFICATION TO EITHER THE OWNER OF THE PATENT OR THE REPRESENTATIVE OF THE
PATENT OWNER THAT WAS DESIGNATED WHEN THE PATENT INFORMATION WAS SUBMITTED UNDER
SECTION 505(B) OR (C) OF THE FFDCA. THE FDA MAY, BY REGULATION, ESTABLISH A PRO-
CEDURE FOR DESIGNATING IN THE NDA THE REPRESENTATIVE OF THE PATENT OWNER. IN AD-
DITION, NOTICE OF THE CERTIFICATION MUST BE GIVEN TO THE HOLDER OF THE APPROVED
NEW DRUG APPLICATION (NDA) FOR THE DRUG WHICH IS CLAIMED BY A PRODUCT PATENT OR
THE USE OF WHICH IS CLAIMED BY A USE PATENT.

  THIS NOTICE MUST BE GIVEN SIMULTANEOUSLY WITH THE SUBMISSION OF AN ANDA. THE
COMMITTEE DOES NOT INTEND THAT APPLICANTS BE PERMITTED TO CIRCUMVENT THIS NOTICE
REQUIREMENT BY FILING SHAM ANDA'S OR ANDA'S WHICH ARE SUBSTANTIALLY INCOMPLETE.
THE COMMITTEE INTENDS THAT THE APPLICANT MUST HAVE MADE A GOOD FAITH EFFORT TO
MEET THE REQUIREMENTS SET FORTH IN PARAGRAPH (2)(A) REGARDING THE CONTENTS OF AN
ANDA.

  WHILE THE COMMITTEE DOES NOT INTEND THAT FAILURE TO INCLUDE A MINOR PIECE OF IN-
FORMATION IN AN ANDA VITIATES THE EFFECTIVENESS OF THE NOTICE REQUIRED UNDER PARA-
GRAPH (2)(B), AN ANDA MUST INCLUDE **25 **2658 THE RESULTS OF ANY REQUIRED
BIOAVAILABILITY OR BIOEQUIVALENCE TESTS. FAILURE TO INCLUDE THE RESULTS OF SUCH
TESTS WHEN REQUIRED WILL VOID THE EFFECTIVENESS OF ANY NOTICE UNDER PARAGRAPH
(2)(B). NOTICE MUST THEN BE GIVEN AGAIN WHEN AN ANDA WITH ANY REQUIRED BIOAVAIL-
ABILITY OR BIOEQUIVALENCE DATA IS SUBMITTED TO THE FDA.

  WHEN THE APPLICANT GIVES NOTICE OF THE CERTIFICATION OF PATENT INVALIDITY OR
NON-INFRINGEMENT, THE NOTICE MUST STATE THAT AN ANDA HAS BEEN SUBMITTED TO OBTAIN

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                                    Page 12
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)

APPROVAL OF THE DRUG TO ENGAGE IN THE COMMERCIAL MANUFACTURE, USE OR SALE OF THE
GENERIC DRUG BEFORE THE EXPIRATION OF THE PATENT WHICH HAS BEEN CERTIFIED AS IN-
VALID OR NON-INFRINGED.

IF AN ANDA IS AMENDED AFTER SUBMISSION TO INCLUDE A CERTIFICATION THAT A PRODUCT
PATENT OR CONTROLLING USE PATENT IS INVALID OR NOT INFRINGED, THEN THE NOTICE OF
SUCH CERTIFICATION MUST BE GIVEN TO THE APPROPRIATE PARTIES WHEN THE AMENDED AP-
PLICATION IS SUBMITTED.

### GROUNDS FOR DISAPPROVAL OF AN ANDA

PARAGRAPH (3) PROVIDES THAT THE FDA SHALL APPROVE AN ANDA EXCEPT IN ONE OF THE
FOLLOWING CIRCUMSTANCES.

FIRST, THE FDA SHALL NOT APPROVE AN ANDA IF THE METHODS USED IN, OR THE FACILIT-
IES AND CONTROLS USED FOR, THE MANUFACTURE, PROCESSING AND PACKING OF THE GENERIC
DRUG ARE INADEQUATE TO ASSURE AND PRESERVE ITS IDENTITY, STRENGTH, QUALITY AND
PURITY.

SECOND, AN ANDA SHALL NOT BE APPROVED IF IT DOES NOT CONTAIN ADEQUATE INFORMA-
TION TO SHOW THAT EACH OF THE CONDITIONS FOR USE FOR THE GENERIC DRUG HAVE BEEN
PREVIOUSLY APPROVED FOR THE LISTED DRUG.  IF AN ANDA INCLUDES A CONDITION FOR USE
FOR WHICH THE LISTED DRUG HAS NOT BEEN APPROVED, THEN THE GENERIC DRUG MAY NOT BE
APPROVED.

THIRD, AN ANDA MUST BE DISAPPROVED IF THE ACTIVE INGREDIENT OF THE GENERIC DRUG
IS NOT THE SAME AS THAT OF THE LISTED DRUG AND THE LISTED DRUG HAS ONLY ONE ACTIVE
INGREDIENT.  AN ANDA MUST ALSO BE DISAPPROVED IF ANY OF THE ACTIVE INGREDIENTS IN
THE GENERIC DRUG ARE NOT THE SAME AS THOSE OF THE LISTED DRUG UNLESS A PETITION
REGARDING A CHANGE IN ONE OF THE ACTIVE INGREDIENTS HAS BEEN GRANTED.  IF THE LIS-
TED DRUG IS A COMBINATION PRODUCT AND A PETITION PERMITTING A CHANGE IN ONE OF THE
ACTIVE INGREDIENTS IN THE GENERIC DRUG HAS BEEN GRANTED, THEN THE ANDA MUST BE
DISAPPROVED IF THE OTHER ACTIVE INGREDIENTS OF THE GENERIC DRUG ARE NOT THE SAME
AS THOSE OF THE LISTED DRUG.  FURTHER, ANDA MUST BE DISAPPROVED IN SUCH A CIRCUM-
STANCE IF THE DIFFERENT ACTIVE INGREDIENT IN THE GENERIC DRUG IS NOT A LISTED DRUG
OR IF THE DIFFERENT ACTIVE INGREDIENT IS A DRUG WITHIN THE REQUIREMENTS OF SECTION
201(P) OF THE FFDCA.

FOURTH, AN ANDA FOR A DRUG WHICH IS THE SAME MUST BE DISAPPROVED IF IT DOES NOT
SHOW THAT THE ROUTE OF ADMINISTRATION, DOSAGE FORM, OR STRENGTH OF THE GENERIC
DRUG ARE ALL THE SAME AS THOSE OF THE LISTED DRUG.  IF THE ROUTE OF ADMINISTRA-
TION, DOSAGE FORM, OR STRENGTH OF THE GENERIC DRUG DIFFERS FROM THAT OF THE LISTED
DRUG, AN ANDA MUST BE DISAPPROVED IF NO PETITION REGARDING THE CHANGE WAS GRANTED.

FIFTH, AN ANDA MUST BE DISAPPROVED IF THE GENERIC DRUG DIFFERS FROM THE LISTED
DRUG AND A PETITION REGARDING THE CHANGE HAS BEEN *26 **2659 GRANTED, BUT THE ANDA
DOES NOT CONTAIN ALL OF THE ADDITIONAL INFORMATION THAT THE FDA REQUIRED IN GRANT-
ING THE PETITION.

A SIXTH GROUND REQUIRING DISAPPROVAL OF AN ANDA FOR A GENERIC DRUG WHOSE ACTIVE
INGREDIENTS ARE THE SAME AS THOSE OF THE LISTED DRUG IS THAT THERE IS UNSUFFICIENT
INFORMATION TO SHOW THAT THE GENERIC DRUG IS BIOEQUIVALENT TO THE LISTED DRUG.  IF

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                                    Page 13
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)

A PETITION REGARDING A CHANGE IN ONE OF THE ACTIVE INGREDIENTS IN A COMBINATION
GENERIC DRUG HAS BEEN GRANTED, THEN THE ANDA MUST BE DISAPPROVED IF THE APPLICA-
TION FAILS TO SHOW THAT THE ACTIVE INGREDIENTS OF THE GENERIC DRUG ARE OF THE SAME
PHARMACOLOGICAL OR THERAPEUTIC CLASS AS THOSE OF THE LISTED DRUG.  IN ADDITION,
SUCH AN ANDA MUST BE DISAPPROVED IF IT FAILS TO SHOW THAT THE DIFFERING GENERIC
COMBINATION DRUG CAN BE EXPECTED TO HAVE THE SAME THERAPEUTIC EFFECT AS THE LISTED
COMBINATION PRODUCT WHEN ADMINISTERED TO PATIENTS FOR AN APPROVED CONDITION OF
USE.

   SEVENTH, AN ANDA MUST ALSO BE DISAPPROVED IF IT FAILS TO SHOW THAT THE PROPOSED
LABELING FOR THE GENERIC DRUG IS THE SAME AS THAT OF THE LISTED DRUG. CHANGES IN
THE PROPOSED LABELING DUE TO THE FACT THAT THE GENERIC DRUG IS PRODUCED OR DIS-
TRIBUTED BY A DIFFERENT MANUFACTURER ARE NOT A GROUNDS FOR DISAPPROVAL.  SIMIL-
ARLY, CHANGES IN THE PROPOSED LABELING OF THE GENERIC DRUG BECAUSE A PETITION RE-
GARDING A CHANGE HAS BEEN GRANTED IS NOT A GROUNDS FOR DISAPPROVAL.

   EIGHTH, AN ANDA MUST BE DISAPPROVED IF IT OR ANY OTHER INFORMATION BEFORE THE
FDA SHOWS THAT THE INACTIVE INGREDIENTS OF THE GENERIC DRUG ARE UNSAFE FOR USE UN-
DER THE CONDITIONS PRESCRIBED, RECOMMENDED, OR SUGGESTED IN THE PROPOSED LABELING
FOR THE GENERIC DRUG.  AN ANDA MUST ALSO BE DISAPPROVED IF THE COMPOSITION OF THE
GENERIC DRUG IS UNSAFE UNDER APPROVED CONDITIONS OF USE. FOR EXAMPLE, THE COMPOSI-
TION OF THE GENERIC DRUG MIGHT BE UNSAFE BECAUSE OF THE TYPE OR QUANTITY OF THE
INACTIVE INGREDIENT INCLUDED OR BECAUSE OF THE MANNER IN WHICH THE INACTIVE IN-
GREDIENT WAS INCLUDED.

   NINTH, AN ANDA MAY NOT BE APPROVED IF THE APPROVAL OF THE LISTED DRUG HAS BEEN
WITHDRAWN OR SUSPENDED FOR REASONS OF SAFETY OR EFFECTIVENESS UNDER SECTION
505(E)(1)-(4) OF THE FFDCA.  [FN11]  THE ANDA MAY ALSO NOT BE APPROVED IF THE FDA
DETERMINES THAT THE LISTED DRUG HAS BEEN VOLUNTARILY WITHDRAWN FROM THE MARKET FOR
SAFETY OR EFFECTIVENESS REASONS.  THE COMMITTEE RECOGNIZES THAT THE MAKER OF A
LISTED DRUG MIGHT WITHDRAW IT FROM THE MARKET WITHOUT SPECIFYING THE REASON OR
WITHOUT ARTICULATING SAFETY OR EFFECTIVENESS CONCERNS.  FOR THIS REASON, THE COM-
MITTEE AUTHORIZED THE FDA TO EXAMINE WHETHER SAFETY OR EFFECTIVENESS CONCERNS WERE
ONE OF THE REASONS FOR THE VOLUNTARY WITHDRAWAL OF THE DRUG FROM THE MARKET.  IF
THE FDA SO FINDS, THEN AN ANDA FOR A GENERIC VERSION OF THAT DRUG MAY NOT BE AP-
PROVED.

   TENTH, AN ANDA MAY NOT BE APPROVED IF IT DOES NOT MEET ANY OF THE REQUIREMENTS
SET FORTH IN PARAGRAPH (2)(A).  FOR EXAMPLE, AN ANDA THAT DOES NOT CONTAIN THE
CERTIFICATIONS REGARDING PATENTS REQUIRED IN PARAGRAPH (A)(A)(VII) CANNOT BE AP-
PROVED.

   LAST, AN ANDA MAY NOT BE APPROVED IF IT CONTAINS ANY UNTRUE STATEMENT OF MATERI-
AL FACT.  [FN12]

                    *27 **2660 APPROVAL OF AN ANDA

   PARAGRAPH (4)(A) REQUIRES THE FDA TO APPROVE OR DISAPPROVE AN ANDA WITHIN 180
DAYS OF INITIAL RECEIPT OF THE APPLICATION.  THE COMMITTEE RECOGNIZES THAT EXTEN-
SIONS MAY BE NECESSARY SO THE BILL PERMITS EXTENSIONS OF THIS PERIOD FOR SO LONG

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL 37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

AS THE APPLICANT AND THE FDA MAY AGREE UPON.

### EFFECTIVENESS OF AN ANDA APPROVAL

THE COMMITTEE RECOGNIZES THAT SOME ANDA'S WILL BE SUBMITTED AND READY FOR AP-PROVAL BEFORE THE PATENT ON THE LISTED DRUG HAS EXPIRED. TO DEAL WITH THIS SITU-ATION AND TO ASSURE THAT THE FDA CONCERNS ITSELF SOLELY WITH THE SAFETY AND EF-FECTIVENESS OF THE GENERIC DRUG, PARAGRAPH (4)(B) PERMITS THE FDA TO APPROVE AN ANDA BUT MAKE THE APPROVAL EFFECTIVE AT SOME LATER DATE WHEN APPROPRIATE.

IF THE APPLICANT CERTIFIED IN AN ANDA THAT NO PATENT INFORMATION WAS SUPPLIED OR THAT THE RELEVANT PATENTS HAVE EXPIRED, THEN THE APPROVAL OF THE ANDA MAY BE MADE EFFECTIVE IMMEDIATELY.  IF THE APPLICANT CERTIFIED BASED UPON THE SUBMITTED PATENT INFORMATION THAT THE PATENT OR PATENTS WOULD EXPIRE IN ONE YEAR, THEN AN ANDA MAY BE APPROVED AND THE APPROVAL MADE EFFECTIVE IN ONE YEAR.

IF THE APPLICANT CERTIFIED THAT ONE OR MORE OF THE PRODUCT OR CONTROLLING USE PATENTS WERE INVALID OR NOT INFRINGED, THEN APPROVAL OF THE ANDA MAY BE MADE EF-FECTIVE IMMEDIATELY EXCEPT IN THE FOLLOWING SITUATION.  IF WITHIN 45 DAYS AFTER NOTICE OF THE CERTIFICATION OF INVALIDITY OR NON-INFRINGEMENT IS RECEIVED, AN AC-TION FOR PATENT INFRINGEMENT REGARDING ONE OR MORE OF THE PATENTS SUBJECT TO THE CERTIFICATION IS BROUGHT, [FN13]  THEN APPROVAL OF THE ANDA MAY NOT BE MADE EF-FECTIVE IMMEDIATELY.  INSTEAD, APPROVAL OF THE ANDA MAY NOT BE MADE EFFECTIVE UN-TIL 18 MONTHS AFTER THE NOTICE OF THE CERTIFICATION WAS PROVIDED UNLESS A DISTRICT COURT HAS DECIDED A CASE FOR PATENT INFRINGEMENT EARLIER.  ONCE EITHER OF THESE EVENTS OCCURS AND THE APPROVAL OF THE ANDA BECOMES EFFECTIVE, THEN THE FDA HAS DISCHARGED ITS STATUTORY RESPONSIBILITY WITH RESPECT TO MAKING THE APPROVAL OF THE GENERIC DRUG EFFECTIVE.

EACH PARTY TO THE ACTION HAS AN AFFIRMATIVE DUTY TO REASONABLY COOPERATE IN EX-PEDITING THE ACTION.  IF THE PLAINTIFF BREACHES THAT DUTY, THE COURT MAY SHORTEN THE 18 MONTH PERIOD AS IT DEEMS APPROPRIATE.  IF THE DEFENDANT BREACHES THAT DUTY, THE COURT MAY EXTEND THE 18 MONTH PERIOD AS IT DEEMS APPROPRIATE.

IF THE COURT DECIDES THAT THE PATENT IS INVALID OR NOT INFRINGED BEFORE THE EX-PIRATION OF THE 18 MONTH PERIOD (OR SUCH SHORTER OR LONGER PERIOD AS THE COURT DE-CIDES), THEN THE APPROVAL MAY BE MADE EFFECTIVE ON THE DATE OF THE COURT DECISION. IF THE COURT DECIDES THAT THE PATENT IS VALID OR INFRINGED BEFORE THE EXPIRATION OF THE 18 MONTH PERIOD, THEN THE APPROVAL MAY BE MADE EFFECTIVE ON SUCH DATA AS THE COURT ORDERS.  THE COMMITTEE WISHES TO EMPHASIZE THAT THE COURT MAY NOT ORDER AN ANDA APPROVED UNDER THIS PROVISION. *28 **2661 THESE ARE TIMES WHEN APPROVAL OF AN ANDA MAY BE MADE EFFECTIVE IF THE FDA HAS APPROVED THE ANDA.

THIS ADDITIONAL REMEDY PERMITS THE COMMENCEMENT OF A LEGAL ACTION FOR PATENT IN-FRINGEMENT BEFORE THE GENERIC DRUG MAKER HAS BEGUN MARKETING.  THE COMMITTEE BE-LIEVES THIS PROCEDURE FAIRLY BALANCES THE RIGHTS OF A PATENT OWNER TO PREVENT OTH-ERS FROM MAKING, USING, OR SELLING ITS PATENTED PRODUCT AND THE RIGHTS OF THIRD PARTIES TO CONTEST THE VALIDITY OF A PATENT OR TO MARKET A PRODUCT WHICH THEY BE-LIEVE IS NOT CLAIMED BY THE PATENT.

THE PROVISIONS OF THIS BILL RELATING TO THE LITIGATION OF DISPUTES INVOLVING

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                                        Page 15
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

PATENT VALIDITY AND INFRINGEMENT ARE NOT INTENDED TO MODIFY EXISTING PATENT LAW
WITH RESPECT TO THE BURDEN OF PROOF AND THE NATURE OF THE PROOF TO BE CONSIDERED
BY THE COURTS IN DETERMINING WHETHER A PATENT IS VALID OR INFRINGED.

   CONCERN HAS BEEN EXPRESSED THAT PERMITTING AN APPLICANT TO MARKET ITS DRUG AT
THE CONCLUSION OF THE 18 MONTH PERIOD AND POSSIBLY BEFORE THE RESOLUTION OF THE
PATENT INFRINGEMENT SUIT OVERTURNS THE STATUTORY PRESUMPTION OF A PATENT'S VALID-
ITY.  ON THE CONTRARY, THE COMMITTEE INTENDS THAT A PATENT WOULD HAVE THE SAME
STATUTORY PRESUMPTION OF VALIDITY AS IS AFFORDED UNDER CURRENT LAW.

   IN MOST INSTANCES, AN ANDA WILL CONTAIN MULTIPLE CERTIFICATIONS. THE FDA SHOULD
MAKE APPROVAL OF THE ANDA EFFECTIVE UPON THE LAST CERTIFICATION. FOR EXAMPLE, IF
AN ANDA CONTAINS A CERTIFICATION THAT A PRODUCT PATENT IS EXPIRED AND A CON-
TROLLING USE PATENT WILL EXPIRE IN THREE YEARS, THEN THE FDA MUST MAKE APPROVAL OF
THE ANDA EFFECTIVE IN THREE YEARS.  IN THE CASE WHERE THE PATENT CERTIFICATION IS
AMENDED IN AN ANDA TO ALLEGE INVALIDITY OR NON-INFRINGEMENT OF A PATENT, THE FDA
MAY NOT MAKE THE APPROVAL EFFECTIVE WITHIN THE 45 DAY PERIOD THAT AN ACTION FOR
PATENT INFRINGEMENT MAY BE BROUGHT.

   NO ACTION FOR A DECLARATORY JUDGMENT REGARDING THE PATENT AT ISSUE MAY BE
BROUGHT BEFORE THE EXPIRATION OF THE 45 DAY PERIOD COMMENCING WITH THE PROVISION
OF NOTICE OF THE CERTIFICATION OF PATENT INVALIDITY OR NON-INFRINGEMENT.  ANY SUIT
FOR DECLARATORY JUDGMENT AFTER THE 45 DAY PERIOD MUST BE BROUGHT IN THE JUDICIAL
DISTRICT WHERE THE DEFENDANT HAS ITS PRINCIPAL OF BUSINESS OR A REGULAR AND ESTAB-
LISHED PLACE OF BUSINESS.

            SUBSEQUENT ANDA'S CERTIFYING PATENT INVALIDITY OR NONINFRINGEMENT

   IF AN ANDA CERTIFYING PATENT INVALIDITY OR NON-INFRINGEMENT IS FILED SUBSEQUENT
TO AN ANDA FOR THE SAME LISTED DRUG THAT HAS MADE THE SAME CERTIFICATION OF IN-
VALIDITY OR NON-INFRINGEMENT, PARAGRAPH (4)(B)(IV) PROVIDES THAT THE APPROVAL OF
THE SUBSEQUENT ANDA MAY NOT BE MADE EFFECTIVE SOONER THAN 180 DAYS AFTER THE PRE-
VIOUS APPLICANT HAS BEGUN COMMERCIAL MARKETING, OR THE DATE ON WHICH THE COURT
HOLDS THE PATENT INVALID OR NOT INFRINGED, WHICHEVER OCCURS FIRST.  IN THE EVENT
OF MULTIPLE ANDA'S CERTIFYING PATENT INVALIDITY OR NON-INFRINGEMENT, THE COURTS
SHOULD EMPLOY THE EXISTING RULES FOR MULTIDISTRICT LITIGATION, WHEN APPROPRIATE,
TO AVOID HARDSHIP ON THE PARTIES AND WITNESSES AND TO PROMOTE THE JUST AND EFFI-
CIENT CONDUCT OF THE PATENT INFRINGEMENT ACTIONS.  [FN14]

                  *29 **2662 DISAPPROVAL OF AN ANDA

   IF THE FDA DECIDES TO DISAPPROVE AN ANDA, PARAGRAPH (4)(C) PROVIDES THAT THE FDA
MUST GIVE THE APPLICANT NOTICE OF THE OPPORTUNITY FOR A HEARING ON THE ISSUE OF
THE APPROVABILITY OF THE ANDA.  TO AVAIL ITSELF OF THIS HEARING, THE APPLICANT
MUST SUBMIT A WRITTEN REQUEST WITHIN 30 DAYS OF THE NOTICE.  IF A HEARING IS RE-
QUESTED, IT MUST BEGIN NOT LATER THAN 120 DAYS AFTER THE NOTICE. HOWEVER, THE
HEARING MAY BE HELD LATER IF BOTH THE APPLICANT AND THE FDA AGREE.  THE HEARING
SHALL BE CONDUCTED ON AN EXPEDITED BASIS.  THE FDA'S ORDER REGARDING THE HEARING

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                          Page 16
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

SHALL BE ISSUED WITHIN 90 DAYS AFTER THE DATE FOR FILING FINAL BRIEFS.

### TRANSITION RULE

PARAGRAPH (4)(D)(I) PROVIDES THAT THE FDA MAY NOT MAKE EFFECTIVE THE APPROVAL OF
AN ANDA FOR A DRUG INCLUDING AN ACTIVE INGREDIENT (INCLUDING ANY ESTER OR SALT OF
THE ACTIVE INGREDIENT) WHICH WAS APPROVED FOR THE FIRST TIME IN AN NDA BETWEEN
JANUARY 1, 1982 AND THE DATE OF ENACTMENT OF THIS BILL UNTIL 10 YEARS AFTER THE
DATE OF APPROVAL OF THE NDA.  FOR EXAMPLE, IF ACTIVE INGREDIENT X WAS APPROVED IN
A DRUG FOR THE FIRST TIME IN 1983, WHEN THE APPROVAL OF AN ANDA FOR A DRUG CON-
TAINING ACTIVE INGREDIENT X COULD NOT BE MADE EFFECTIVE UNTIL 1993.

### UNPATENTABLE DRUGS

IF THE ACTIVE INGREDIENT (INCLUDING ANY ESTER OR SALT OF THE ACTIVE INGREDIENT)
OF A DRUG IS APPROVED FOR THE FIRST TIME IN AN NDA AFTER THE ENACTMENT OF THIS
BILL, THEN PARAGRAPH (4)(D)(II) PROVIDES THAT THE FDA MAY NOT MAKE THE APPROVAL OF
AN ANDA FOR A DRUG WHICH CONTAINS THE SAME ACTIVE INGREDIENT EFFECTIVE UNTIL FOUR
YEARS AFTER THE APPROVAL OF THE NDA IF THE FOLLOWING CONDITIONS ARE MET.
FIRST, THE HOLDER OF THE NDA MUST CERTIFY THAT NO PATENT HAS EVER BEEN ISSUED TO
ANY PERSON FOR SUCH DRUG, OR FOR A METHOD OF USING SUCH DRUG.  SECOND, THE HOLDER
MUST CERTIFY THAT IT CANNOT RECEIVE A PATENT FOR SUCH DRUG OR FOR A METHOD USING
SUCH DRUG FOR ANY KNOWN THERAPEUTIC PURPOSE.  IN DETERMINING WHETHER A DRUG MEETS
THESE TWO PATENT STIPULATIONS, THE FDA MAY RELY UPON THE CERTIFICATIONS OF THE NDA
HOLDER.
IF THE FDA DETERMINES AT ANY TIME DURING THE FOUR YEAR PERIOD THAT AN ADEQUATE
SUPPLY OF THE DRUG WILL NOT BE AVAILABLE, IT MAY MAKE THE APPROVAL OF AN ANDA EF-
FECTIVE BEFORE THE EXPIRATION OF THE FOUR YEAR PERIOD.  THE FDA MAY ALSO MAKE THE
APPROVAL OF AN ANDA FOR SUCH DRUG EFFECTIVE BEFORE THE FOUR YEAR PERIOD IF THE
HOLDER OF THE NDA CONSENTS.

### WITHDRAWAL OR SUSPENSION OF LISTED DRUG'S APPROVAL

PARAGRAPH (5) PROVIDES THAT THE APPROVAL OF AN ANDA IS WITHDRAWN OR SUSPENDED IF
APPROVAL OF THE LISTED VERSION OF THE GENERIC DRUG HAS BEEN WITHDRAWN OR SUSPENDED
FOR SAFETY OR EFFECTIVENESS REASONS AS SET FORTH IN SECTION 505(E)(1)-(4) OF THE
FFDCA.  THE APPROVAL OF AN ANDA IS ALSO WITHDRAWN OR SUSPENDED IF IT REFERS TO A
DRUG WHOSE APPROVAL IS WITHDRAWN OR SUSPENDED UNDER SECTION 505(J)(5) OF THE FFD-
CA.  IN ADDITION, THE APPROVAL OF AN ANDA IS WITHDRAWN OR SUSPENDED IF THE FDA DE-
TERMINES THAT THE LISTED **30 **2663 DRUG HAS BEEN VOLUNTARILY WITHDRAWN FROM SALE
DUE TO SAFETY OR EFFECTIVENESS CONCERNS.
THE COMMITTEE RECOGNIZES THAT THE MAKER OF A LISTED DRUG MIGHT WITHDRAW IT FROM
THE MARKET WITHOUT SPECIFYING THE REASON OR WITHOUT ARTICULATING SAFETY OR EFFECT-
IVENESS CONCERNS.  FOR THIS REASON, THE COMMITTEE AUTHORIZED THE FDA TO EXAMINE
WHETHER SAFETY OR EFFECTIVENESS CONCERNS WERE ONE OF THE REASONS FOR THE VOLUNTARY
WITHDRAWAL OF THE DRUGS FROM THE MARKET.  IF THE FDA SO FINDS, THEN THE APPROVAL

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                                    Page 17
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

OF AN ANDA FOR A GENERIC VERSION OF THAT DRUG MUST BE WITHDRAWN OR SUSPENDED.

THE ANDA MUST BE WITHDRAWN OR SUSPENDED FROM SALE FOR THE SAME PERIOD AS THE AP-
PROVAL OF THE DRUG TO WHICH IT REFERS HAS BEEN WITHDRAWN OR SUSPENDED.  WHEN THE
LISTED DRUG HAS BEEN VOLUNTARILY WITHDRAWN FROM THE MARKET AND THE FDA HAS DETERM-
INED THAT THE LISTED DRUG WAS WITHDRAWN DUE TO SAFETY OR EFFECTIVENESS REASONS,
THEN THE APPROVAL OF THE ANDA MUST BE WITHDRAWN UNTIL SUCH TIME AS THE FDA DETERM-
INES THAT THE LISTED DRUG WAS NOT WITHDRAWN FROM SALE FOR SAFETY OR EFFECTIVENESS
REASONS.

### LISTINGS OF DRUGS

WITHIN 60 DAYS AFTER ENACTMENT OF THIS BILL, PARAGRAPH (6) REQUIRES THE FDA TO
PUBLISH AND TO MAKE AVAILABLE A LIST OF DRUGS ELIGIBLE FOR CONSIDERATION IN AN AN-
DA.  THE LIST MUST INCLUDE THE OFFICIAL AND PROPRIETARY NAME OF EACH DRUG THAT HAS
BEEN APPROVED FOR SAFETY AND EFFECTIVENESS PRIOR TO THE DATE OF ENACTMENT OF THE
BILL.  THE LIST MUST BE IN ALPHABETICAL ORDER.  IF THE DRUG WAS APPROVED AFTER
1981, THE LIST MUST INCLUDE THE DATE OF APPROVAL OF THE DRUG AND THE NDA NUMBER.
THIRD, THE LIST MUST SPECIFY WHETHER IN VITRO OR IN VIVO BIOEQUIVALENCE STUDIES,
OR BOTH, ARE REQUIRED FOR ANDA'S.

AT 30-DAY INTERVALS, THE FDA MUST UPDATE THE LIST TO INCLUDE DRUGS THAT HAVE
BEEN APPROVED FOR SAFETY AND EFFECTIVENESS AFTER ENACTMENT OF H.R. 3605 AND DRUGS
APPROVED IN ANDA'S UNDER THIS SUBSECTION.  IN ADDITION, THE FDA MUST INTEGRATE IN-
TO THE LIST PATENT INFORMATION SUBMITTED UNDER SECTIONS 505(B) AND (C) OF THE FFD-
CA AS IT BECOMES AVAILABLE.

A DRUG APPROVED FOR SAFETY AND EFFECTIVENESS UNDER SECTION 505(C) OR UNDER SUB-
SECTION (J) SHALL BE CONSIDERED AS PUBLISHED AND THUS ELIGIBLE FOR APPROVAL IN AN
ANDA ON THE DATE OF ITS APPROVAL OR THE DATE OF ENACTMENT, WHICHEVER IS LATER.

PARAGRAPH (6)(C) PROVIDES A DRUG MAY NOT BE LISTED AS ELIGIBLE FOR CONSIDERATION
IN AN ANDA IF THE APPROVAL OF THE PIONEER DRUG IS WITHDRAWN OR SUSPENDED FOR
SAFETY OR EFFECTIVENESS REASONS AS SET FORTH IN SECTION 505(E)(1)-(4) OF THE FFDCA
OR IF APPROVAL OF THE GENERIC DRUG WAS WITHDRAWN OR SUSPENDED UNDER SECTION
505(J)(5) OF THE FFDCA. IN ADDITION, A DRUG MAY NOT BE LISTED IF THE FDA DETERM-
INES THAT THE DRUG HAS BEEN VOLUNTARILY WITHDRAWN FROM SALE DUE TO SAFETY OR EF-
FECTIVENESS CONCERNS.  IF SUCH A DRUG HAS ALREADY BEEN LISTED, THEN IT MUST BE IM-
MEDIATELY REMOVED FROM THE LIST.

THE COMMITTEE RECOGNIZES THAT THE MAKER OF A LISTED DRUG MIGHT WITHDRAW IT FROM
THE MARKET WITHOUT SPECIFYING THE REASON OF WITHOUT ARTICULATING SAFETY OR EFFECT-
IVENESS CONCERNS.  FOR THIS REASON, THE COMMITTEE AUTHORIZED THE FDA TO EXAMINE
WHETHER SAFETY OR EFFECTIVENESS CONCERNS WERE ONE OF THE REASONS FOR THE VOLUNTARY
WITHDRAWAL OF THE DRUGS FROM THE MARKET.  IF THE FDA SO FINDS, THEN **\*31 \*\*2664** THE
DRUG MAY NOT BE LISTED.  PERSONS ADVERSELY AFFECTED BY THIS DECISION MAY SEEK JU-
DICIAL REVIEW UNDER TITLE 5 OF THE UNITED STATES CODE.

A DRUG MAY NOT BE LISTED AS LONG AS ITS APPROVAL IS WITHDRAWN OR SUSPENDED.  IF
THE DRUG HAS BEEN VOLUNTARILY WITHDRAWN FROM THE MARKET, THEN THE DRUG MAY NOT BE
LISTED UNTIL THE FDA DETERMINES THAT THE DRUG WAS NOT WITHDRAWN FROM SALE FOR

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                     Page 18
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

SAFETY OR EFFECTIVENESS REASONS.  A NOTICE REGARDING THE REMOVAL OF ANY DRUG FROM
THE LIST MUST BE PUBLISHED IN THE FEDERAL REGISTER.

BIOAVAILABILITY AND BIOEQUIVALENCE STUDIES

   AS USED IN THIS BILL, THE TERM 'BIOAVAILABILITY' MEANS THE RATE AND EXTENT TO
WHICH THE ACTIVE INGREDIENT OR THERAPEUTIC INGREDIENT IS ABSORBED FROM A DRUG AND
BECOMES AVAILABLE AT THE SITE OF DRUG ACTION. [FN15]
   A DRUG SHALL BE CONSIDERED BIOEQUIVALENT TO A LISTED DRUG IF THE RATE AND EXTENT
OF ABSORPTION OF THE GENERIC DRUG DO NOT SHOW A SIGNIFICANT DIFFERENCE FROM THE
RATE AND EXTENT OF ABSORPTION OF THE LISTED DRUG WHEN ADMINISTERED AT THE SAME
MOLAR DOSE OF THE THERAPEUTIC INGREDIENT UNDER SIMILAR EXPERIMENTAL CONDITIONS IN
EITHER A SINGLE DOSE OR MULTIPLE DOSES.  A GENERIC DRUG SHALL ALSO BE CONSIDERED
TO BE BIOEQUIVALENT TO A LISTED DRUG IF THE EXTENT OF ABSORPTION OF THE GENERIC
DRUG DOES NOT SHOW A SIGNIFICANT DIFFERENCE FROM THE EXTENT OF ABSORPTION OF THE
LISTED DRUG WHEN ADMINISTERED AT THE SAME MOLAR DOSE OF THE THERAPEUTIC INGREDIENT
UNDER SIMILAR EXPERIMENTAL CONDITIONS IN EITHER A SINGLE DOSE OR MULTIPLE DOSES
AND THE DIFFERENCE FROM THE LISTED DRUG IN THE RATE OF ABSORPTION OF THE GENERIC
DRUG IS INTENTIONAL, IS REFLECTED IN THE PROPOSED LABELING, IS NOT ESSENTIAL TO
THE ATTAINMENT OF EFFECTIVE BODY DRUG CONCENTRATIONS ON CHRONIC USE, AND IS CON-
SIDERED MEDICALLY INSIGNIFICANT FOR THE DRUG.  [FN16]

SECTION 102

   SECTION 102 OF THE BILL REQUIRES THAT CERTAIN PATENT INFORMATION BE FILED WITH
ALL NEW NDA'S AND WITH ALL NDA'S PREVIOUSLY FILED BUT NOT YET APPROVED.  PENDING
AND FUTURE NDA'S MAY NOT BE APPROVED UNLESS THEY CONTAIN THE APPROPRIATE PATENT
INFORMATION.  THE FDA SHALL PUBLISH THE PATENT INFORMATION UPON APPROVAL OF THE
NDA.
   THIS SECTION ALSO REQUIRES THAT ANY PREVIOUSLY APPROVED NDA BE AMENDED WITHIN 30
DAYS OF ENACTMENT OF THIS BILL TO INCLUDE CERTAIN PATENT INFORMATION.  THE FDA
SHALL PUBLISH THE PATENT INFORMATION UPON ITS SUBMISSION.  AN NDA MAY BE REVOKED
IF THE PATENT INFORMATION AVAILABLE IS ADVISABLE AND IS NOT FILED WITHIN 30 DAYS
AFTER RECEIPT OF A WRITTEN NOTICE FROM THE FDA SPECIFYING THE FAILURE TO PROVIDE
THE PATENT INFORMATION.
   THE PATENT INFORMATION TO BE FILED INCLUDES THE PATENT NUMBER AND THE EXPIRATION
DATE OF ANY PATENT WHICH CLAIMS THE DRUG IN THE NDA OR WHICH CLAIMS A METHOD OF
USING SUCH DRUG WITH RESPECT TO WHICH A CLAIM OF PATENT INFRINGEMENT COULD REASON-
ABLY BE ASSERTED **32 **2665 IF A PERSON NOT LICENSED BY THE OWNER ENGAGED IN THE
MANUFACTURE, SALE OR USE OF THE DRUG. PATENTS WHICH CLAIM A METHOD OF MANUFACTUR-
ING SUCH DRUG ARE NOT REQUIRED TO BE SUBMITTED.
   FINALLY, SECTION 102 MAKES A NUMBER OF TECHNICAL CHANGES.

SECTION 103

   SECTION 103 AMENDS SECTION 505(B) OF THE FFDCA TO REQUIRE AN APPLICANT FILING A

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                                    Page 19
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**


PAPER NDA'S FOR A LISTED DRUG UNDER SECTION 505(J)(6) TO MAKE THE SAME CERTIFICA-
TIONS REGARDING PATENTS AS MANDATED IN THE FILING OF ANDA'S UNDER NEW SUBSECTION
(J) OF THE FFDCA.  IN ADDITION, THE FDA MUST MAKE APPROVALS FOR SUCH PAPER NDA'S
EFFECTIVE UNDER THE SAME CONDITIONS THAT APPLY TO ANDA'S SUBMITTED UNDER SUBSEC-
TION (J).  FINALLY, SECTION 103 APPLIES THE 10 YEAR TRANSITION RULE AND THE 4 YEAR
UNPATENTABLE SUBSTANCES RULE TO PAPER NDA'S.


                                        PAPER NDA'S

   PAPER NDA'S ARE DEFINED AS ANY APPLICATION SUBMITTED UNDER SECTION 505(B) OF THE
FFDCA IN WHICH THE INVESTIGATIONS RELIED UPON BY THE APPLICANT TO SHOW SAFETY AND
EFFECTIVENESS WERE NOT CONDUCTED BY OR FOR THE APPLICANT AND THE APPLICANT HAS NOT
OBTAINED A RIGHT OF REFERENCE OR USE FROM THE PERSON WHO CONDUCTED THE STUDIES OR
FOR WHOM THE STUDIES WERE CONDUCTED.

                   PATENT CERTIFICATIONS IN PAPER NDA'S FOR LISTED DRUGS

   WHEN A PAPER NDA'S IS SUBMITTED FOR A LISTED DRUG UNDER SECTION 505(J)(6), IT
MUST INCLUDE A CERTIFICATION BY THE APPLICANT REGARDING THE STATUS OF CERTAIN PAT-
ENTS APPLICABLE TO THE LISTED DRUG IF SUCH INFORMATION HAS BEEN PROVIDED TO THE
FDA.  WITH RESPECT TO ALL PRODUCT PATENTS WHICH CLAIM THE LISTED DRUG AND ALL USE
PATENTS WHICH CLAIM AN INDICATION FOR THE DRUG FOR WHICH THE APPLICANT IS SEEKING
APPROVAL (HEREAFTER DESCRIBED AS A CONTROLLING USE PATENT), THE APPLICANT MUST
CERTIFY, IN HIS OPINION AND TO THE BEST OF HIS KNOWLEDGE, AS TO ONE OF FOUR CIR-
CUMSTANCES.
   FIRST, THE APPLICANT MAY CERTIFY THAT THE PATENT INFORMATION REQUIRED UNDER
SECTIONS 505(B) AND (C) HAS NOT BEEN SUBMITTED IF THAT IS THE CASE.  SECOND, IF
APPROPRIATE, THE APPLICANT MAY CERTIFY THAT ONE OR MORE OF THE PRODUCT OR CON-
TROLLING USE PATENTS WILL EXPIRE AT SOME SPECIFIED DATE IN THE FUTURE.  WHEN THE
APPLICANT MAKES THESE CERTIFICATIONS, IT MUST RELY UPON THE PATENT INFORMATION
SUPPLIED TO THE FDA.  LAST, AN APPLICANT MAY CERTIFY IF APPLICABLE THAT ONE OR
MORE OF THE PRODUCT OR CONTROLLING USE PATENTS ARE INVALID OR WILL NOT BE IN-
FRINGED.
   THE COMMITTEE RECOGNIZES THAT IN SOME INSTANCES AN APPLICANT WILL HAVE TO MAKE
MULTIPLE CERTIFICATIONS WITH RESPECT TO PRODUCT AND CONTROLLING USE PATENTS.  FOR
EXAMPLE, IF THE PRODUCT PATENT HAS EXPIRED AND VALID CONTROLLING USE PATENT WILL
NOT EXPIRE FOR THREE YEARS, THEN THE APPLICANT MUST CERTIFY THAT ONE PATENT HAS
EXPIRED AND THE OTHER WILL EXPIRE IN THREE YEARS.  THE COMMITTEE INTENDS THAT THE
APPLICANT MAKE THE APPROPRIATE CERTIFICATION FOR EACH PRODUCT AND CONTROLLING USE
PATENT.
   **\*33 \*\*2666** EVERY PAPER NDA FOR A LISTED DRUG MUST ALSO STATE, WHEN APPLICABLE,
THAT THE APPLICANT IS NOT SEEKING APPROVAL FOR AN INDICATION WHICH IS CLAIMED BY
ANY USE PATENT FOR WHICH IT HAS NOT MADE A CERTIFICATION.  FOR EXAMPLE, THE LISTED
DRUG MAY BE APPROVED FOR TWO INDICATIONS.  IF THE APPLICANT IS SEEKING APPROVAL
ONLY FOR INDICATION NO. 1, AND NOT INDICATION NO. 2 BECAUSE IT IS PROTECTED BY A


© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                    Page 20
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

USE PATENT, THEN THE APPLICANT MUST MAKE THE APPROPRIATE CERTIFICATIONS AND A
STATEMENT EXPLAINING THAT IT IS NOT SEEKING APPROVAL FOR INDICATION NO. 2.

### CERTIFICATION OF INVALIDITY OR NONINFRINGEMENT OF A PATENT

WHEN AN APPLICANT CERTIFIES THAT ANY PRODUCT OR CONTROLLING USE PATENT IS INVAL-
ID OR WILL NOT BE INFRINGED, SECTION 505(B)(3) REQUIRES THAT IT MUST GIVE NOTICE
OF SUCH CERTIFICATION TO EITHER THE OWNER OF THE PATENT OR THE REPRESENTATIVE OF
THE PATENT OWNER THAT WAS SO DESIGNATED WHEN THE PATENT INFORMATION WAS SUBMITTED
UNDER SECTION 505(B) OR (C) OF THE FFDCA.  THE FDA MAY, BY REGULATION, ESTABLISH A
PROCEDURE FOR DESIGNATING IN THE NDA THE REPRESENTATIVE OF THE PATENT OWNER.  IN
ADDITION, NOTICE OF THE CERTIFICATION MUST BE GIVEN TO THE HOLDER OF THE APPROVED
NEW DRUG APPLICATION (NDA) FOR THE DRUG WHICH IS CLAIMED BY THE PRODUCT PATENT OR
THE USE OF WHICH IS CLAIMED BY THE USE PATENT.

THIS NOTICE MUST BE GIVEN SIMULTANEOUSLY WITH THE SUBMISSION OF A PAPER NDA.
THE COMMITTEE DOES NOT INTEND THAT APPLICANTS BE PERMITTED TO CIRCUMVENT THIS NO-
TICE REQUIREMENT BY FILING SHAM PAPER NDA'S OR PAPER NDA'S WHICH ARE SUBSTANTIALLY
INCOMPLETE.  THE COMMITTEE INTENDS THAT THE APPLICANT MUST HAVE MADE A GOOD FAITH
EFFORT TO MEET THE REQUIREMENTS REGARDING THE CONTENTS OF A PAPER NDA AS SET FORTH
IN SECTION 505(B) OF FFDCA.

WHEN THE APPLICANT GIVES NOTICE OF THE CERTIFICATION OF INVALIDITY OR NON-
INFRINGEMENT, THE NOTICE MUST STATE THAT A PAPER NDA HAS BEEN SUBMITTED TO OBTAIN
APPROVAL OF THE DRUG TO ENGAGE IN THE COMMERCIAL MANUFACTURE, USE OF SALE OF THE
GENERIC DRUG BEFORE THE EXPIRATION OF THE PATENT WHICH HAS BEEN CERTIFIED AS IN-
VALID OR NON-INFRINGED.

IF A PAPER NDA IS AMENDED AFTER SUBMISSION TO INCLUDE A CERTIFICATION THAT A
PRODUCT PATENT OR CONTROLLING USE PATENT IS INVALID, THEN THE NOTICE OF SUCH CER-
TIFICATION MUST BE GIVEN TO THE APPROPRIATE PARTIES WHEN THE AMENDED APPLICATION
IS SUBMITTED.

### EFFECTIVENESS OF APPROVAL OF A PAPER NDA FOR A LISTED DRUG

THE COMMITTEE RECOGNIZES THAT SOME PAPER NDA'S FOR LISTED DRUGS WILL BE SUBMIT-
TED AND READY FOR APPROVAL BEFORE THE PATENT ON THE LISTED DRUG HAS EXPIRED.  TO
DEAL WITH THIS SITUATION AND TO ASSURE THAT THE FDA CONCERNS ITSELF SOLELY WITH
THE SAFETY AND EFFECTIVENESS OF THE GENERIC DRUG, SECTION 505(C)(3) REQUIRES THE
FDA TO APPROVE A PAPER NDA BUT MAKE THE APPROVAL EFFECTIVE AT SOME LATER DATE WHEN
APPROPRIATE.

IF THE APPLICANT CERTIFIED IN THE PAPER NDA THAT NO PATENT INFORMATION WAS SUP-
PLIED OR THAT THE RELEVANT PATENTS HAVE EXPIRED, THEN THE APPROVAL OF THE PAPER
NDA MAY BE MADE EFFECTIVE IMMEDIATELY. IF THE APPLICANT CERTIFIED BASED UPON THE
SUBMITTED PATENT INFORMATION THAT THE PATENT WOULD EXPIRE IN ONE YEAR, THEN THE
**\*34 \*\*2667** PAPER NDA MAY BE APPROVED AND THE APPROVAL MADE EFFECTIVE IN ONE YEAR.

IF THE APPLICANT CERTIFIED THAT ONE OR MORE OF THE PRODUCT OF CONTROLLING USE
PATENTS WERE INVALID OR NOT INFRINGED, THEN APPROVAL OF THE PAPER NDA MAY BE MADE

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

EFFECTIVE IMMEDIATELY EXCEPT IN THE FOLLOWING SITUATION.  IF WITHIN 45 DAYS AFTER
NOTICE OF THE CERTIFICATION OF INVALIDITY OR NON-INFRINGEMENT IS RECEIVED, AN AC-
TION FOR PATENT INFRINGEMENT REGARDING ONE OR MORE OF THE PATENT SUBJECT TO THE
CERTIFICATION IS BROUGHT, [FN17] THEN APPROVAL OF THE PAPER NDA MAY NOT BE MADE
EFFECTIVE IMMEDIATELY.  INSTEAD, APPROVAL OF THE PAPER NDA MAY NOT BE MADE EFFECT-
IVE UNTIL 18 MONTHS AFTER THE NOTICE OF THE CERTIFICATION WAS PROVIDED.

   EACH PARTY TO THE ACTION HAS AN AFFIRMATIVE DUTY TO REASONABLY COOPERATE IN EX-
PEDITING THE ACTION.  IF THE PLAINTIFF BREACHES THAT DUTY, THE COURT MAY SHORTEN
THE 18 MONTH PERIOD AS IT DEEMS APPROPRIATE.  IF THE DEFENDANT BREACHES THAT DUTY,
THE COURT MAY EXTEND THE 18-MONTH PERIOD AS IT DEEMS APPROPRIATE.

   IF THE COURT DECIDES THAT THE PATENT IS INVALID OR NOT INFRINGED BEFORE THE EX-
PIRATION OF THE 18-MONTH PERIOD (OR SUCH SHORTER OR LONGER PERIOD AS THE COURT DE-
CIDES), THEN THE APPROVAL MAY BE MADE EFFECTIVE ON THE DATE OF THE COURT DECISION.
IF THE COURT DECIDES THAT THE PATENT INVALID OR INFRINGED BEFORE THE EXPIRATION OF
THE 18 MONTH PERIOD, THEN THE APPROVAL MAY BE MADE EFFECTIVE ON SUCH DATE AS THE
COURT ORDERS.  THE COMMITTEE WANTS TO EMPHASIZE THAT THE COURT MAY NOT ORDER THE
PAPER NDA APPROVED.  THESE ARE TIMES WHEN THE APPROVAL OF A PAPER NDA MAY BE MADE
EFFECTIVE IF THE FDA HAS COMPLETED ITS REVIEW OF THE PAPER NDA.

   NO ACTION FOR A DECLARATORY JUDGMENT REGARDING THE PATENT AT ISSUE MAY BE
BROUGHT BEFORE THE EXPIRATION OF THE 45 DAY PERIOD COMMENCING WITH THE PROVISION
OF NOTICE OF THE CERTIFICATION OF PATENT INVALIDITY OR NON-INFRINGEMENT.  AFTER
THE 45 DAY PERIOD, ANY SUIT FOR DECLARATORY JUDGMENT REGARDING THE PATENT AT ISSUE
MUST BE BROUGHT IN THE JUDICIAL DISTRICT WHERE THE DEFENDANT HAS ITS PRINCIPAL
PLACE OF BUSINESS OR A REGULAR AND ESTABLISHED PLACE OF BUSINESS.

                               TRANSITION RULE

   SECTION 505(C)(3)(D)(I) PROVIDES THAT THE FDA MAY NOT MAKE EFFECTIVE THE APPROV-
AL OF A PAPER NDA FOR A DRUG WHICH CONTAINS AN ACTIVE INGREDIENT (INCLUDING ANY
ESTER OR SALT OF THE ACTIVE INGREDIENT) WHICH WAS APPROVED FOR THE FIRST TIME IN
AN NDA BETWEEN JANUARY 1, 1982 AND THE DATE OF ENACTMENT OF THIS BILL UNTIL 10
YEARS AFTER THE DATE OF APPROVAL OF THE NDA.  FOR EXAMPLE, IF ACTIVE INGREDIENT X
WAS APPROVED IN A DRUG FOR THE FIRST TIME IN 1983, THEN THE APPROVAL OF A PAPER
NDA FOR A DRUG CONTAINING ACTIVE INGREDIENT X COULD NOT BE MADE EFFECTIVE UNTIL
1993.

                              UNPATENTABLE DRUGS

   IF THE ACTIVE INGREDIENT (INCLUDING ANY ESTER OR SALT OF THE ACTIVE INGREDIENT)
OF A DRUG IS APPROVED FOR THE FIRST TIME IN AN NDA AFTER *35 **2668 THE ENACTMENT
OF THIS BILL, THEN SECTION 505(C)(3)(D)(II) PROVIDES THAT THE FDA MAY NOT MAKE THE
APPROVAL OF A PAPER NDA FOR A DRUG WHICH CONTAINS THAT ACTIVE INGREDIENT EFFECTIVE
UNTIL FOUR YEARS AFTER THE APPROVAL OF THE NDA IF THE FOLLOWING CONDITIONS ARE
MET.

   THE HOLDER OF THE NDA MUST CERTIFY THAT NO PATENT HAS EVER BEEN ISSUED TO ANY

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

PERSON FOR SUCH DRUG OR FOR A METHOD OF USING SUCH DRUG. FURTHER, THE HOLDER MUST
CERTIFY THAT HE CANNOT RECEIVE A PATENT FOR SUCH DRUG OR FOR A METHOD USING SUCH
DRUG FOR ANY KNOWN THERAPEUTIC PURPOSE.

   IF THE FDA DETERMINES AT ANY TIME DURING THE FOUR YEAR PERIOD THAT AN ADEQUATE
SUPPLY OF THE DRUG WILL NOT BE AVAILABLE, IT MAY MAKE THE APPROVAL OF A PAPER NDA
EFFECTIVE BEFORE THE EXPIRATION OF THE FOUR YEAR PERIOD.  THE FDA MAY ALSO MAKE
THE APPROVAL OF A PAPER NDA FOR THE DRUG EFFECTIVE BEFORE THE FOUR YEAR PERIOD IF
THE HOLDER OF THE NDA CONSENTS.


                              SECTION 104


   SECTION 104 AMENDS SECTION 505 OF THE FFDCA TO ADD A NEW SUBSECTION  (1).  THIS
NEW SUBSECTION PROVIDES THAT SAFETY AND EFFECTIVENESS INFORMATION THAT HAS BEEN
SUBMITTED IN AN NDA AND WHICH HAS NOT BEEN PREVIOUSLY DISCLOSED TO THE PUBLIC
SHALL BE MADE AVAILABLE TO THE PUBLIC UPON REQUEST UNDER THE FOLLOWING CIRCUM-
STANCES UNLESS EXTRAORDINARY CIRCUMSTANCES ARE SHOWN.

   FIRST, THE SAFETY AND EFFECTIVENESS INFORMATION AND DATA SHALL BE DISCLOSED UPON
REQUEST IF THE NDA HAS BEEN ABANDONED.  SECOND, SUCH INFORMATION AND DATA SHALL BE
MADE AVAILABLE UPON REQUEST IF THE FDA HAS DETERMINED THAT THE NDA IF NOT APPROV-
ABLE AND ALL LEGAL APPEALS HAVE BEEN EXHAUSTED.  THIRD, THE DATA AND INFORMATION
SHALL BE RELEASED UPON REQUEST IF THE APPROVAL OF THE NDA UNDER SECTION 505(C) OF
THE FFDCA HAS BEEN WITHDRAWN AND ALL LEGAL APPEALS HAVE BEEN EXHAUSTED. FOURTH,
SUCH INFORMATION AND DATA SHALL BE RELEASED UPON REQUEST IF THE FDA HAS DETERMINED
THAT THE DRUG WHICH IS THE SUBJECT OF THE NDA IS NOT A NEW DRUG.

   THESE CONDITIONS UNDER WHICH SUCH SAFETY AND EFFECTIVENESS DATA SHALL BE RE-
LEASED UPON REQUEST, UNLESS EXTRAORDINARY CIRCUMSTANCES ARE SHOWN, ARE MERELY A
RESTATEMENT OF THE CURRENT REGULATION.  THE COMMITTEE INTENDS THAT ALL TERMS IN
NEW SECTION 505(1) BE GIVEN THE SAME MEANING THAT THEY HAVE IN THE REGULATION.
[FN18]  IT IS NOT THE INTENT OF THE COMMITTEE TO ALTER THE RIGHTS OF THE PUBLIC
UNDER THE FREEDOM OF INFORMATION ACT.

   THE COMMITTEE DOES INTEND, HOWEVER, TO CLARIFY THE INTERPRETATION OF 21 C.F.R.
314.14(F)(5).  [FN19]  IN THIS CIRCUMSTANCE, SAFETY AND EFFECTIVENESSDATA
*36 **2669 AND INFORMATION MAY BE RELEASED UPON THE EFFECTIVE DATE OF THE FIRST
APPROVAL OF AN ANDA FOR SUCH DRUG UNDER NEW SUBSECTION (J) OF SECTION 505 OF THE
FFDCA.  FURTHER, THE INFORMATION AND DATA MAY BE RELEASED ON THE DATE UPON WHICH
AN APPROVAL OF AN ANDA COULD BE MADE EFFECTIVE IF AN ANDA HAD BEEN SUBMITTED.  THE
COMMITTEE RECOGNIZES THAT AN ANDA MAY NOT BE SUBMITTED FOR ALL DRUGS THAT ARE ELI-
GIBLE FOR APPROVAL AS GENERICS.  TO DEAL WITH THAT POSSIBILITY, THE COMMITTEE IN-
TENDS TO MAKE AVAILABLE THIS DATA WHEN THE APPROVAL OF AN ANDA WOULD HAVE BECOME
EFFECTIVE.

   THE COMMITTEE DOES NOT INTEND THAT ANY SAFETY AND EFFECTIVENESS DATA AND INFORM-
ATION BE RELEASED PURSUANT TO THIS SECTION DURING THE 30 DAY PERIOD AFTER ENACT-
MENT OF THIS BILL WHEN PATENT INFORMATION MUST BE SUBMITTED UNDER SECTION 505(B)
OR (C).  OTHERWISE, ANDA'S FILED DURING THAT PERIOD COULD BE APPROVED EFFECTIVE
IMMEDIATELY, THUS ALLOWING FOR THE DISCLOSURE OF SAFETY AND EFFECTIVENESS INFORMA-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

TION AND DATA FOR THOSE DRUGS.

   THE COMMITTEE ALSO DOES NOT INTEND THAT SAFETY AND EFFECTIVENESS DATA AND IN-
FORMATION BE RELEASED UNDER THIS SECTION IF AN ANDA CHALLENGING THE VALIDITY OF A
PATENT IS APPROVED BEFORE THERE HAS BEEN A COURT DECISION HOLDING THE PATENT IN-
VALID AND IF THE NDA HOLDER BRINGS AN ACTION TO RESTRAIN THE DISCLOSURE.

   FINALLY, EXCEPT AS PROVIDED IN THIS SECTION, THE COMMITTEE DOES NOT INTEND TO
CHANGE OTHER REGULATIONS REGARDING FREEDOM OF INFORMATION ACT REQUESTS, TRADE
SECRETS, AND CONFIDENTIALITY OF IND, NDA AND MASTER FILE SAFETY AND EFFECTIVENESS
INFORMATION AND DATA.

   SECTION 104 ALSO ADDS A NEW SUBSECTION (M) TO SECTION 505 OF THE FFDCA.  THIS
PROVISION CLARIFIES THAT ANY REFERENCE TO PATENT INFORMATION IN SECTION 505 AP-
PLIES ONLY TO PATENTS ISSUED BY THE PATENT AND TRADEMARK OFFICE OF THE DEPARTMENT
OF COMMERCE.  IT DOES NOT INCLUDE ANY PATENTS ISSUED BY FOREIGN GOVERNMENTS.

                                SECTION 105

   SECTION 105(A) OF THE BILL REQUIRES THE FDA TO PROMULGATE SUCH REGULATIONS AS
ARE NECESSARY TO IMPLEMENT NEW SUBSECTION (J).  THESE REGULATIONS MUST BE PROMUL-
GATED IN ACCORDANCE WITH THE INFORMAL RULEMAKING REQUIREMENTS OF TITLE 5 OF THE
U.S.C. AND NOT LATER THAN ONE YEAR AFTER ENACTMENT OF THIS BILL.

   SECTION 105(B) OF THE BILL ESTABLISHES AN INTERIM PROCEDURE FOR APPROVING ANDA'S
FOR POST-1962 DRUGS UNTIL THE FINAL IMPLEMENTING REGULATIONS ARE PROMULGATED.
DURING THE PERIOD AFTER ENACTMENT OF THIS BILL AND UNTIL THE PROMULGATION OF REGU-
LATIONS BY THE FDA, ANDA'S FOR LISTED POST-1962 DRUGS MAY BE SUBMITTED IN ACCORD-
ANCE WITH THE CURRENT REGULATIONS APPLICABLE TO PRE-1962 PIONEER DRUGS.

   TO THE EXTENT THAT THERE ARE INCONSISTENCIES BETWEEN THE CURRENT REGULATIONS AND
THIS ACT, THE FDA SHALL FOLLOW THIS ACT.  UNDER NO CIRCUMSTANCES MAY THE FDA AP-
PROVE AN ANDA OR PAPER NDA UNDER THIS INTERIM PROCEDURE FOR A DRUG THAT IS ELI-
GIBLE FOR FOUR OR TEN YEARS OF MARKET EXCLUSIVITY EXCEPT IN ACCORDANCE WITH THOSE
PROVISIONS.

                        **\*37 \*\*2670** SECTION 106

   SECTION 106 OF THE BILL AMENDS SECTION 2201 OF TITLE 28 TO INSERT A CROSS REFER-
ENCE TO EXPLAIN THAT A SUIT FOR DECLARATORY JUDGMENT REGARDING A PATENT MAY NOT BE
BROUGHT UNDER CERTAIN CIRCUMSTANCES SET FORTH IN SECTION 505 OF THE FFDCA.

                    TITLE II-- PATENT TERM RESTORATION ACT

                           SECTION 201 OF THE BILL

   SECTION 201 ADDS A NEW SECTION 156 TO TITLE 35 OF THE U.S.C.  THE PATENT LAW.
IT IS ENTITLED 'EXTENSION OF PATENT TERM.'  THE NEW SECTION PROVIDES FOR THE EX-
TENSION OF THE NORMAL 17 YEAR TERM OF A PRODUCT, USE, OR PROCESS PATENT IF A
PRODUCT WHICH IS THE SUBJECT OF THE PATENT IS REQUIRED BY FEDERAL LAW TO BE AP-
PROVED BEFORE IT IS COMMERCIALLY MARKETED.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

SECTION 156(A)

CONDITIONS FOR EXTENSION APPLICABLE TO ALL PATENTS

THE TERM OF A PATENT WHICH CLAIMS A PRODUCT, A METHOD OF USING A PRODUCT, OR A
METHOD OF MANUFACTURING A PRODUCT SHALL BE EXTENDED ONE TIME FROM ITS ORIGINAL EX-
PIRATION DATE IF THE CONDITIONS DESCRIBED IN SECTION 156(A) ARE MET.  THE TERM
'CLAIMS' WAS SELECTED BECAUSE IT IS THE TERM USED IN THE PATENT LAW TO DESCRIBE
THE INVENTION WHICH THE PATENT OWNER OR ITS ASSIGNEE MAY PREVENT OTHERS FROM MAK-
ING, USING OR SELLING DURING THE SEVENTEEN YEAR TERM OF THE PATENT.  FOR INSTANCE,
IN THE CASE OF A PRODUCT PATENT WHICH 'CLAIMS' A BROAD GENUS OF COMPOUNDS, THE
PATENT OWNER COULD PREVENT OTHERS FROM MAKING, USING OR SELLING ANY COMPOUND WHICH
IS A SPECIES OF THAT GENUS.
SIX OF THE EIGHT CONDITIONS DESCRIBED IN THE NUMBERED PARAGRAPHS UNDER  SECTION
156(A) ARE APPLICABLE TO ALL PATENTS TO BE EXTENDED. THEY ARE FOUND IN PARAGRAPHS
(1)-(3) AND (6)-(8).
PARAGRAPH (1) REQUIRES THE PATENT TO BE IN FORCE AT THE TIME AN APPLICATION FOR
ITS EXTENSION IS SUBMITTED TO THE COMMISSIONER OF PATENTS AND TRADEMARKS. PARA-
GRAPH (2) ALLOWS EXTENSION ONLY IF THE TERM OF THE PATENT HAS NOT BEEN EXTENDED
PREVIOUSLY.  AND PARAGRAPH (3) REQUIRES THE APPLICATION FOR EXTENSION TO BE SUB-
MITTED BY THE OWNER OF RECORD OF THE PATENT, OR ITS AGENT, IN ACCORDANCE WITH THE
REQUIREMENTS OF SECTION 156(D).
PARAGRAPHS (6) AND (7) DESCRIBE TWO CONDITIONS WHICH MUST BE MET BY THE PRODUCT
WHICH IS CLAIMED IN THE PRODUCT PATENT TO BE EXTENDED, OR THE USE OR MANUFACTURE
OF WHICH IS CLAIMED IN THE USE OR PROCESS PATENT TO BE EXTENDED. FIRST, THE
PRODUCT MUST HAVE BEEN SUBJECTED TO A REGULATORY REVIEW PERIOD UNDER AN APPLICABLE
FEDERAL LAW, AND APPROVED, BEFORE THE PRODUCT WAS ALLOWED TO BE COMMERCIALLY MAR-
KETED.  (THE PRODUCT WHICH CAN BE THE SUBJECT OF A PATENT EXTENSION IS HEREAFTER
REFERRED TO AS THE 'APPROVED PRODUCT.') SECOND, WITH ONE EXCEPTION, THE APPROVED
PRODUCT MUST HAVE BEEN APPROVED FOR COMMERCIAL MARKETING FOR THE FIRST TIME.  THE
EXCEPTION INVOLVES AN APPROVED PRODUCT MADE UNDER A PATENTED PROCESS WHICH PRIMAR-
ILY USES RECOMBINANT DNA TECHNOLOGY. SUCH AN APPROVED PRODUCT COULD HAVE RECEIVED
ITS SECOND APPROVAL FOR COMMERCIAL **38 **2671 MARKETING, BUT IT MUST BE THE FIRST
TIME A PRODUCT MADE BY THE CLAIMED PROCESS HAS BEEN APPROVED.
THE COMMITTEE'S BILL REQUIRES EXTENSIONS TO BE BASED ON THE FIRST APPROVAL OF A
PRODUCT BECAUSE THE ONLY EVIDENCE AVAILABLE TO CONGRESS SHOWING THAT PATENT TIME
HAS BEEN LOST IS DATA ON SO-CALLED CLASS I, NEW CHEMICAL ENTITY DRUGS. THESE DRUGS
HAD BEEN APPROVED BY THE FOOD AND DRUG ADMINISTRATION (FDA) FOR THE FIRST TIME.
AN EXCEPTION WAS ALLOWED FOR PRODUCTS MADE THROUGH RECOMBINANT DNA BECAUSE THIS
INNOVATIVE, NEW TECHNIQUE IS BEING EMPLOYED TO IMPROVE ALREADY APPROVED DRUGS.
PARAGRAPH (8) ADDRESSES THE CIRCUMSTANCES WHERE TWO DIFFERENT APPROVED PRODUCTS
ARE THE SUBJECT OF THE SAME PATENT.  AN EXTENSION WOULD BE GRANTED ONLY FOR THE
FIRST APPROVED PRODUCT WHICH HAS BEEN THE SUBJECT OF A REGULATORY REVIEW PERIOD.

CONDITIONS OF EXTENSION APPLICABLE TO PRODUCT AND USE PATENTS

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                              Page 25
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

PARAGRAPH (4) OF SECTION 156(A) DESCRIBES CONDITIONS WHICH ARE APPLICABLE TO
PRODUCT AND USE PATENTS ONLY.

PARAGRAPH (4)(A) PERMITS SUCH A PATENT TO BE EXTENDED IF TWO REQUIREMENTS ARE
MET.  THE FIRST IS THAT THE APPROVED PRODUCT IS NOT CLAIMED IN ANOTHER PRODUCT
PATENT WHICH HAS BEEN EXTENDED OR WHICH AS AN EARLIER ISSUANCE DATE.  THE SECOND
IS THAT THE APPROVED PRODUCT AND THE USE FOR WHICH THE PRODUCT IS APPROVED ARE NOT
IDENTICALLY DISCLOSED OR DESCRIBED IN ANOTHER PRODUCT OR USE PATENT WHICH HAS BEEN
EXTENDED OR WHICH HAS AN EARLIER ISSUANCE DATE.  THE PHRASE 'IDENTICALLY DISCLOSED
OR DESCRIBED' IS INTENDED TO HAVE THE SAME MEANING WHICH IT HAS UNDER CURRENT PAT-
ENT LAW.  [FN20]

THE POLICY WHICH THE COMMITTEE SEEKS TO IMPLEMENT IN PARAGRAPH (4)(A) IS, IN
BRIEF, THAT THE FIRST PATENT (1) WHICH CLAIMS THE APPROVED PRODUCT, IN THE SENSE
THAT THE APPROVED PRODUCT WOULD INFRINGE A CLAIM OF THAT PATENT, OR (2) WHICH
FULLY DISCLOSES THAT PRODUCT AND ITS APPROVED USE, IS THE PATENT WHICH SHOULD BE
REWARDED WITH AN EXTENSION.  FOR EXAMPLE, IF THE APPROVED PRODUCT IS THE SUBJECT
OF SEVERAL PATENTS AS A RESULT OF FILING CONTINUATION, CONTINUATION-IN-PART, DIVI-
SIONAL OR OTHERWISE RELATED PATENT APPLICATIONS, EACH OF WHICH DISCLOSES THE AP-
PROVED PRODUCT AND ITS APPROVED USE, THEN ONLY THE EARLIEST ISSUED PATENT IS ELI-
GIBLE FOR AN EXTENSION.

PARAGRAPH (4)(B) IS AN EXCEPTION TO THE RULE IN PARAGRAPH (4)(A) FOR CERTAIN
PRODUCT PATENTS.  IF TWO CONDITIONS ARE MET, A PRODUCT PATENT CAN BE EXTENDED EVEN
THOUGH THE APPROVED PRODUCT IS ALSO CLAIMED IN ANOTHER PRODUCT PATENT WHICH HAS
BEEN EXTENDED OR WHICH HAS AN EARLIER ISSUANCE DATE.  FIRST, THE PRODUCT PATENT
WHICH WAS ISSUED EARLIER OR PREVIOUSLY EXTENDED CANNOT IDENTICALLY DISCLOSE OR DE-
SCRIBE THE APPROVED PRODUCT.  SECOND, THE HOLDER OF EACH OF THE TWO PRODUCT PAT-
ENTS MUST NEVER HAVE BEEN AND MUST NEVER BECOME THE HOLDER OF THE OTHER PATENT.
IN THIS PARAGRAPH, THE TERM 'HOLDER' IS ANY PERSON WHO OWNS THE PATENT OR IS AN
EXCLUSIVE LICENSEE OF THE OWNER.  THIS EXCEPTION WAS INCLUDED TO PREVENT AN EARLI-
ER ISSUED PATENT WHICH CLAIMS A BROAD GENUS OF COMPOUNDS FROM BLOCKING THE POS-
SIBLE EXTENSION OF A LATER ISSUED PATENT CLAIMING A **39 **2672 SPECIFIC MEMBER OF
THAT GENUS WHERE NEITHER PATENT HOLDER HAD A CHOICE AS TO WHICH PATENT TO EXTEND.

CONDITIONS OF EXTENSION APPLICABLE TO PROCESS PATENTS

PARAGRAPH (5) OF SECTION 156(A) DESCRIBES CONDITIONS WHICH ARE APPLICABLE TO
PROCESS PATENTS ONLY.

PARAGRAPH (5)(A) PERMITS A PROCESS PATENT, WHICH DOES NOT PRIMARILY UTILIZE RE-
COMBINANT DNA IN THE MANUFACTURE OF THE APPROVED PRODUCT, TO BE EXTENDED IF TWO
CONDITIONS ARE MET.  FIRST, THERE CAN NOT BE ANY ISSUED PRODUCT PATENT WHICH
CLAIMS THE APPROVED PRODUCT OR ANY ISSUED USE PATENT WHICH CLAIMS A METHOD OF US-
ING THE APPROVED PRODUCT FOR ANY KNOWN THERAPEUTIC USE.  AND, SECOND, THERE CAN
NOT BE AN EARLIER ISSUED PROCESS PATENT, WHICH DOES NOT PRIMARILY UTILIZE RECOM-
BINANT DNA AND WHICH CLAIMS A METHOD OF MANUFACTURING THE APPROVED PRODUCT.

PARAGRAPH (5)(B) PERMITS A PROCESS PATENT, WHICH PRIMARILY UTILIZES RECOMBINANT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**


DNA IN THE MANUFACTURE OF THE APPROVED PRODUCT, TO BE EXTENDED IF SEVERAL CONDI-
TIONS ARE MET.  FIRST, THE HOLDER OF THE PROCESS PATENT CAN NOT HOLD A PRODUCT
PATENT CLAIMING THE APPROVED PRODUCT OR A USE PATENT CLAIMING A METHOD OF USING
THE APPROVED PRODUCT.  SECOND, THERE CAN NOT BE AN OWNERSHIP OR CONTROL INTEREST,
EITHER DIRECTLY OR INDIRECTLY, BETWEEN THE HOLDER OF THE PROCESS PATENT AND THE
HOLDER OF ANY PRODUCT PATENT CLAIMING THE APPROVED PRODUCT OR THE HOLDER OF ANY
USE PATENT CLAIMING A METHOD OF USING THE APPROVED PRODUCT.  THIRD, THERE CAN NOT
BE ANY EARLIER ISSUED PROCESS PATENT WHICH CLAIMS A METHOD OF MANUFACTURING THE
APPROVED PRODUCT BY PRIMARILY UTILIZING RECOMBINANT DNA.

THE COMMITTEE'S BILL ESTABLISHES SEPARATE RULES FOR PROCESS PATENTS WHICH DO NOT
USE RECOMBINANT DNA BECAUSE THE DISCOVERY OF SUCH A NEW PROCESS FOR MAKING AN EX-
ISTING PRODUCT DOES NOT WARRANT THE SAME REWARD OF PATENT EXTENSION AS DOES THE
DISCOVERY OF A NEW PRODUCT.  AN EXTENSION FOR THE PROCESS PATENT IS APPROPRIATE
ONLY WHEN THERE ARE NO PRODUCT OR USE PATENTS.  ON THE OTHER HAND, WHEN RECOMBIN-
ANT DNA TECHNOLOGY IS THE ESSENTIAL AND PREDOMINANT TECHNIQUE USED IN MAKING AN
IMPROVED VERSION OF AN EXISTING PRODUCT, THE COMMITTEE BELIEVES THAT THIS NEW AND
IMPORTANT INNOVATION SHOULD BE REWARDED.

SECTION 156(B)


RIGHTS TO BE EXTENDED


EXCEPT FOR THE LIMITATIONS DESCRIBED BELOW WITH RESPECT TO THE SCOPE OF THE PAT-
ENT CLAIMS, ALL PROVISIONS OF THE PATENT LAW APPLY TO THE PATENT DURING THE PERIOD
OF EXTENSION.  THE LIMITATIONS ARE AS FOLLOWS:  (1) WHEN A PRODUCT PATENT CLAIMING
THE APPROVED PRODUCT IS EXTENDED, THE HOLDER'S RIGHTS ARE LIMITED TO ANY USE OF
THE APPROVED PRODUCT WHICH WAS APPROVED BEFORE THE EXPIRATION OF THE EXTENDED TERM
OF THE PATENT UNDER THE PROVISION OF LAW UNDER WHICH THE APPLICABLE REGULATORY RE-
VIEW PERIOD OCCURRED.

(2) WHEN A USE PATENT CLAIMING A METHOD OF USING THE APPROVED PRODUCT IS EXTEN-
DED, THE HOLDER'S RIGHTS ARE LIMITED TO ANY USE OF THE APPROVED PRODUCT WHICH:
(1) IS CLAIMED IN THE USE PATENT, AND (B) WAS APPROVED BEFORE THE EXPIRATION OF
THE EXTENDED TERM OF THE **\*40 \*\*2673** PATENT UNDER THE PROVISION OF LAW UNDER WHICH
THE APPLICABLE REGULATORY REVIEW PERIOD OCCURRED.

(3) WHEN A PROCESS PATENT CLAIMING A METHOD OF MANUFACTURING THE APPROVED
PRODUCT IS EXTENDED, THE HOLDER'S RIGHTS ARE LIMITED TO THE METHOD OF MANUFACTUR-
ING WHICH:  (A) IS CLAIMED IN THE PROCESS PATENT, AND (B) IS USED TO MAKE THE AP-
PROVED PRODUCT.

SECTION 156(C)


PERIOD OF EXTENSION


SECTION 156(C) SPECIFIES THE RULES BY WHICH THE LENGTH OF THE PERIOD OF EXTEN-
SION IS DETERMINED.  THE CALCULATION MADE UNDER THESE RULES IS FURTHER LIMITED BY

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

THE REQUIREMENTS OF SECTION 156(G)(4).

UNDER SECTION 156(C), THE LENGTH OF THE EXTENSION IS BASED ON THE LENGTH OF THE
REGULATORY REVIEW PERIOD IN WHICH THE APPROVED PRODUCT WAS APPROVED. THE DEFINI-
TION OF THE VARIOUS REGULATORY REVIEW PERIODS IS IN SECTIONS 156(G)(1)-(3). ALL
REGULATORY REVIEW PERIODS ARE DIVIDED INTO A TESTING PHASE AND AN AGENCY APPROVAL
PHASE.

THE REGULATORY REVIEW PERIOD WHICH OCCURS AFTER THE PATENT TO BE EXTENDED WAS
ISSUED IS ELIGIBLE TO BE COUNTED TOWARDS EXTENSION IN ACCORDANCE WITH THE FOLLOW-
ING CALCULATION. FIRST, EACH PHASE OF THE REGULATORY REVIEW PERIOD IS REDUCED BY
ANY TIME THAT THE APPLICANT FOR EXTENSION DID NOT ACT WITH DUE DILIGENCE DURING
THAT PHASE. (THE DETERMINATION OF LACK OF DUE DILIGENCE IS MADE UNDER SECTION
156(D).) SECOND, AFTER ANY SUCH REDUCTION, ONE-HALF OF THE TIME REMAINING IN THE
TESTING PHASE WOULD BE ADDED TO THE TIME REMAINING IN THE APPROVAL PHASE TO COM-
PRISE THE TOTAL PERIOD ELIGIBLE FOR EXTENSION. THIRD, ALL OF THE ELIGIBLE PERIOD
CAN BE COUNTED UNLESS TO DO SO WOULD RESULT IN A TOTAL REMAINING PATENT TERM OF
MORE THAN FOURTEEN YEARS. FOR EXAMPLE, IF AN APPROVED DRUG PRODUCT WHICH IS ELI-
GIBLE FOR FIVE YEARS OF EXTENSION HAD TEN YEARS OF ORIGINAL PATENT TERM LEFT AT
THE END OF ITS REGULATORY REVIEW PERIOD, THEN ONLY FOUR OF THE FIVE YEARS COULD BE
COUNTED TOWARDS EXTENSION.

THE ADDITIONAL LIMITATION ON THE PERIOD OF EXTENSION IS FOUND IN SECTION
156(G)(4). THAT SECTION PROVIDES DIFFERENT MAXIMUM PERIODS OF EXTENSION DEPENDING
ON WHETHER THE APPROVED PRODUCT WAS DEVELOPED BEFORE OR AFTER THE DATE OF ENACT-
MENT.

UNDER THAT SECTION, THE TOTAL PERIOD OF REGULATORY REVIEW WHICH CAN BE COUNTED
TOWARDS EXTENSION WOULD NOT EXCEED FIVE YEARS WHEN: (1) THE PATENT TO BE EXTENDED
WAS ISSUED AFTER THE DATE OF ENACTMENT OF THIS BILL; OR (2) THE PATENT WAS ISSUED
BEFORE THE DATE OF ENACTMENT, BUT THE APPROVED PRODUCT'S REGULATORY REVIEW PERIOD
HAD NOT BEGUN ON THE DATE OF ENACTMENT. THE TOTAL PERIOD OF ELIGIBLE REGULATORY
REVIEW WOULD NOT EXCEED TWO YEARS WHEN: (1) THE PATENT TO BE EXTENDED WAS ISSUED
BEFORE THE DATE OF ENACTMENT; AND (2) THE APPROVED PRODUCT'S REGULATORY REVIEW
PERIOD HAD BEGUN BEFORE THE DATE OF ENACTMENT BUT THE PRODUCT HAD NOT BEEN AP-
PROVED BY THAT DATE. IF ANY ACTION WAS TAKEN BEFORE THE DATE OF ENACTMENT WHICH
INITIATED THE TESTING PHASE OF THE REGULATORY REVIEW PERIOD, THEN THE APPLICANT
WOULD NOT BE ELIGIBLE FOR THE FIVE YEAR RULE BY DISCONTINUING ACTIVITY AND THEN
INITIATING A NEW REGULATORY REVIEW PERIOD AFTER THE DATE OF ENACTMENT.

**\*41 \*\*2674** THE COMMITTEE ESTABLISHED DIFFERENT MAXIMUM PERIODS OF EXTENSION TO
PROVIDE GREATER INCENTIVE FOR FUTURE INNOVATIONS. BY EXTENDING PATENTS FOR UP TO
FIVE YEARS FOR PRODUCTS DEVELOPED IN THE FUTURE, AND BY PROVIDING FOR UP TO FOUR-
TEEN YEARS OF MARKET EXCLUSIVITY, THE COMMITTEE EXPECTS THAT RESEARCH INTENSIVE
COMPANIES WILL HAVE THE NECESSARY INCENTIVE TO INCREASE THEIR RESEARCH AND DEVEL-
OPMENT ACTIVITIES.

SECTION 156(D)

APPLICATION FOR EXTENSION

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**


    TO OBTAIN AN EXTENSION, THE PATENT OWNER OR ITS AGENT WOULD SUBMIT AN APPLICA-
TION TO THE COMMISSIONER OF PATENTS AND TRADEMARKS WITHIN 60 DAYS OF APPROVAL OF
THE APPROVED PRODUCT.  THE APPLICATION WOULD CONTAIN THE INFORMATION DESCRIBED IN
SUBPARAGRAPHS (A)-(G) OF SECTION 156(D)(1).  THE APPLICANT WOULD BE SUBJECT TO ANY
DISCLOSURE REQUIREMENTS PRESCRIBED BY THE COMMISSIONER.  THE COMMITTEE EXPECTS
THAT THOSE REQUIREMENTS WOULD SUBJECT THE APPLICANT TO AT LEAST THE SAME DUTY OF
DISCLOSURE, AND THE PENALTIES AND LOSS OF RIGHTS FOR VIOLATION OF THE DUTY OF DIS-
CLOSURE, WHICH GOVERNS ALL PATENT APPLICATION PROCEEDINGS BEFORE THE PATENTS AND
TRADEMARKS OFFICE.
    WITHIN 60 DAYS OF THE SUBMISSION OF AN APPLICATION, THE COMMISSIONER WOULD NOTI-
FY THE SECRETARY OF HEALTH AND HUMAN SERVICES, OR THE SECRETARY OF AGRICULTURE, AS
APPROPRIATE, TO REVIEW THE DATES CONTAINED IN THE APPLICATION FOR THE REGULATORY
REVIEW PERIOD.  WITHIN 30 DAYS, THE APPROPRIATE SECRETARY WOULD MAKE A DETERMINA-
TION AS TO THOSE DATES, NOTIFY THE COMMISSIONER OF THEM, AND PUBLISH THEM IN THE
FEDERAL REGISTER.

            DETERMINATION OF DUE DILIGENCE (SECTION 156(D)(2)(B))

    THE COMMITTEE'S BILL PROVIDES A DEFINITION OF DUE DILIGENCE AT SECTION
156(D)(3).  IT IS 'THAT DEGREE OF ATTENTION, CONTINUOUS DIRECTED EFFORT, AND
TIMELINESS AS MAY REASONABLY BE EXPECTED FROM, AND ARE ORDINARILY EXERCISED BY, A
PERSON DURING A REGULATORY REVIEW PERIOD.'
    A PETITION MAY BE SUBMITTED BY ANY INTERESTED PERSON TO THE APPROPRIATE SECRET-
ARY REQUESTING A DETERMINATION OF WHETHER THE APPLICANT FOR EXTENSION ACTED WITH
DUE DILIGENCE DURING THE REGULATORY REVIEW PERIOD OF THE APPROVED PRODUCT.  THE
PETITION MUST BE SUBMITTED WITHIN 180 DAYS OF THE PUBLICATION BY THE SECRETARY OF
A DETERMINATION OF THE REGULATORY REVIEW PERIOD AND MUST STATE CLAIM THAT THE AP-
PLICANT DID NOT ACT WITH DUE DILIGENCE DURING SOME PART OF THE REGULATORY REVIEW
PERIOD.  IF THE SECRETARY CONCLUDES FROM THE INFORMATION IN THE PETITION THAT
THERE IS REASON TO BELIEVE THAT THE APPLICANT FAILED TO ACT WITH DUE DILIGENCE AT
SOME POINT IN THE REGULATORY REVIEW PERIOD, THEN THE SECRETARY WOULD MAKE, WITHIN
90 DAYS OF THE RECEIPT OF THE PETITION AND IN ACCORDANCE WITH REGULATIONS, A DE-
TERMINATION OF WHETHER THE APPLICANT ACTED WITH DUE DILIGENCE.  THE SECRETARY OF
HHS IS PROHIBITED FROM DELEGATING THE AUTHORITY TO MAKE THE DETERMINATION TO ANY
OFFICE BELOW THAT OF THE COMMISSIONER OF FDA.
    WHILE THE BILL PLACES THE BURDEN ON THE PETITIONER TO MAKE THE NECESSARY SHOW-
ING, THE COMMITTEE RECOGNIZES THAT THE INFORMATION *42 **2675 NEEDED TO MAKE A FI-
NAL DETERMINATION OF DUE DILIGENCE IS NOT AVAILABLE TO THE PETITIONER.  TO MEET
THIS BURDEN OF PROOF, THE PETITIONER NEED NOT SHOW CONCLUSIVELY THAT THERE WAS A
LACK OF DUE DILIGENCE.  INSTEAD, THE PETITIONER NEED ONLY ALLEGE SUFFICIENT FACTS
TO MERIT AN INVESTIGATION BY THE SECRETARY. FOR EXAMPLE, IT WOULD BE SUFFICIENT
FOR THE PETITIONER TO DEMONSTRATE THAT HUMAN CLINICAL TRIALS DID NOT BEGIN FOR AN
UNREASONABLY LONG PERIOD OF TIME AFTER THE FDA GRANTED PERMISSION TO BEGIN THOSE
TRIALS OR THAT THE TRIALS TOOK AN UNREASONABLY LONG PERIOD OF TIME.  IN THOSE


© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

EVENTS, THE SECRETARY WOULD DETERMINE WHETHER THE DELAY WAS CAUSED BY A LACK OF
DUE DILIGENCE ON THE PART OF THE APPLICANT.

AFTER MAKING THE DETERMINATION, THE SECRETARY WOULD NOTIFY THE COMMISSIONER OF
PATENTS AND TRADEMARKS AND PUBLISH IT IN THE FEDERAL REGISTER.  ANY INTERESTED
PERSON COULD REQUEST AN INFORMAL HEARING WITHIN 60 DAYS OF PUBLICATION OF THE DE-
TERMINATION.  IF A TIMELY REQUEST IS MADE, THE SECRETARY MUST HOLD SUCH A HEARING
WITHIN 30 DAYS, GIVE NOTICE OF THE HEARING TO THE PATENT OWNER AND ANY INTERESTED
PERSON, AND PROVIDE SUCH PERSONS WITH AN OPPORTUNITY TO PARTICIPATE. WITHIN 30
DAYS OF THE HEARING, THE SECRETARY MUST AFFIRM OR REVISE THE DETERMINATION, NOTIFY
THE COMMISSIONER OF PATENTS, AND PUBLISH IT IN THE FEDERAL REGISTER.

THE COMMITTEE ESTABLISHED A SYSTEM FOR REVIEW OF DUE DILIGENCE THAT REQUIRES THE
MINIMAL AMOUNT OF FEDERAL AGENCY PERSONNEL TIME.  THE GOAL OF THE SYSTEM IS TO AS-
SURE THAT OBVIOUS DELAYS DURING REGULATORY REVIEW, SUCH AS A PROLONGED PERIOD WHEN
HUMAN CLINICAL TRIALS ON A DRUG PRODUCT ARE NOT BEING CONDUCTED, ARE NOT COUNTED
TOWARDS PATENT EXTENSION.  THE SYSTEM IS NOT INTENDED TO CAUSE A REVIEW OF EVERY
ACTION, BUT TO IDENTIFY SIGNIFICANT PERIODS OF TIME WHEN THE LOSS OF PATENT TERM
RESULTED SOLELY FROM THE APPLICANT'S FAILURE TO PURSUE APPROVAL.  DELAYS CAUSED BY
THE TEMPORARY UNAVAILABILITY OF NECESSARY TESTING FACILITIES, OR A SCIENTIFIC DIS-
PUTE INVOLVING TESTS REQUIRED FOR APPROVAL OR THE INTERPRETATION OF THOSE TESTS,
ARE EXAMPLES OF DELAYS WHICH CAN REASONABLY BE EXPECTED TO OCCUR AND WOULD NOT BE
A BASIS FOR FINDING A LACK OF DUE DILIGENCE.

SECTION 156(E)

DETERMINATION ON PATENT EXTENSION OF THE COMMISSIONER OF PATENTS AND TRADEMARKS

THE COMMISSIONER WOULD MAKE THE FINAL DETERMINATION THAT A PATENT IS ELIGIBLE
FOR EXTENSION UNDER SECTION 156(A), THAT THE REQUIREMENTS OF SECTION 156(D) HAVE
BEEN MET, AND THAT THE PERIOD OF EXTENSION WILL BE THE PERIOD PRESCRIBED IN SEC-
TION 156(C).  ONCE THESE FINDINGS ARE MADE, THE COMMISSIONER WOULD BE REQUIRED TO
ISSUE A CERTIFICATE OF EXTENSION TO THE APPLICANT.  THE CERTIFICATE WOULD BE RE-
CORDED IN THE OFFICIAL FILE OF THE PATENT AND BE CONSIDERED A PART OF THE ORIGINAL
PATENT.

THE COMMISSIONER'S DECISION REGARDING A PATENT'S ELIGIBILITY FOR EXTENSION UNDER
THE RULES OF SECTION 156(A) MAY BE BASED SOLELY ON THE INFORMATION CONTAINED IN
THE APPLICATION.  THE BURDEN IS ON THE APPLICANT TO SHOW THAT ALL PATENTS WHICH
ARE RELEVANT TO THE ELIGIBILITY DETERMINATION HAVE BEEN CONSIDERED AND DO NOT PRE-
VENT THE REQUESTED EXTENSION.

**\*43 \*\*2676** WHILE THE COMMISSIONER WOULD BE RESPONSIBLE FOR EVALUATING THE AP-
PLICANT'S DETERMINATION REGARDING THE PATENTS LISTED IN THE APPLICATION, THE COM-
MITTEE EXPECTS THAT MOST REVIEWS WOULD BE MINISTERIAL IN NATURE.  SINCE THE AP-
PLICANT IS UNDER A DUTY TO DISCLOSE ALL RELEVANT INFORMATION (SEE SECTION
156(D)(4)), THE APPLICATION SHOULD BE SO WELL DOCUMENTED THAT A SUBSTANTIVE REVIEW
BY THE COMMISSIONER WOULD USUALLY NOT BE NECESSARY.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**


### EXPIRATION OF A PATENT PENDING EXTENSION (SECTION 156(E)(2))

IT IS POSSIBLE THAT THE ORIGINAL TERM OF THE PATENT FOR WHICH EXTENSION IS
SOUGHT COULD EXPIRE BEFORE A FINAL DECISION BY THE COMMISSIONER TO ISSUE A CERTI-
FICATE OF EXTENSION.  THIS MIGHT OCCUR, FOR INSTANCE, BECAUSE THE DETERMINATION OF
DUE DILIGENCE BY THE SECRETARY OF HHS OR AGRICULTURE HAS NOT BEEN COMPLETED.

IN SUCH CIRCUMSTANCES, THE COMMISSIONER IS REQUIRED TO DETERMINE WHETHER THE
PATENT IS ELIGIBLE FOR EXTENSION UNDER SECTION 156(A), AND IF IT IS, TO ISSUE A
CERTIFICATE OF EXTENSION FOR A PERIOD OF UP TO ONE YEAR.  THE LENGTH OF THIS IN-
TERIM EXTENSION IS DISCRETIONARY WITH THE COMMISSIONER, BUT IS INTENDED TO PROVIDE
TIME FOR THE COMPLETION OF ANY OUTSTANDING REQUIREMENTS.  IF THE COMMISSIONER DE-
TERMINED THAT SUBSEQUENT INTERIM EXTENSIONS WERE NECESSARY, AND CONSISTENT WITH
THE OBJECTIVES OF SECTION 156(E)(2), THEY COULD BE GRANTED AS WELL.  IN NO EVENT
COULD THESE INTERIM EXTENSIONS BE LONGER THAN THE MAXIMUM PERIOD OF EXTENSION TO
WHICH THE APPLICANT IS THOUGHT TO BE ELIGIBLE.

### SECTION 156(F)

### DEFINITIONS

THE TERM 'PRODUCT' IS DEFINED IN SUBSECTION (F)(1) TO INCLUDE DRUG PRODUCTS AND
MEDICAL DEVICES, FOOD ADDITIVES AND COLOR ADDITIVES SUBJECT TO REGULATION UNDER
THE FEDERAL FOOD, DRUG, AND COSMETIC ACT.

THE TERM 'DRUG PRODUCT' IS DEFINED IN SUBSECTION (F)(2) TO MEAN THE ACTIVE IN-
GREDIENT OF A NEW DRUG, ANTIBIOTIC DRUG, NEW ANIMAL DRUG, OR HUMAN OR VETERINARY
BIOLOGICAL PRODUCT (AS THOSE TERMS ARE USED IN THE FEDERAL FOOD, DRUG, AND COSMET-
IC ACT, THE PUBLIC HEALTH SERVICE ACT AND THE VIRUS-SERUM-TOXIN ACT), INCLUDING
ANY SALT OR ESTER OF THE ACTIVE INGREDIENT, AS A SINGLE ENTITY OR IN COMBINATION
WITH ANOTHER ACTIVE INGREDIENT.  THE HUMAN DRUGS INCLUDED IN THIS DEFINITION ARE
BOTH PRESCRIPTION AND OVER-THE-COUNTER DRUGS.

THE TERM 'MAJOR HEALTH OR ENVIRONMENTAL EFFECTS TEST' IS DEFINED IN SUBSECTION
(F)(3) TO MEAN A TEST WHICH IS REASONABLY RELATED TO THE EVALUATION OF THE HEALTH
OR ENVIRONMENTAL EFFECTS OF A PRODUCT, WHICH REQUIRES AT LEAST SIX MONTHS TO CON-
DUCT, AND THE DATA FROM WHICH IS SUBMITTED TO RECEIVE PERMISSION FOR COMMERCIAL
MARKETING OR USE. PERIODS OF ANALYSIS OR EVALUATION OF TEST RESULTS ARE NOT TO BE
INCLUDED IN DETERMINING IF THE CONDUCT OF A TEST REQUIRED AT LEAST SIX MONTHS.

THE TERM 'INFORMAL HEARING' IS DEFINED IN SUBSECTION (F)(5) TO HAVE THE SAME
MEANING AS 'PRESCRIBED FOR SUCH TERM BY SECTION 201(Y) OF THE FEDERAL FOOD, DRUG,
AND COSMETIC ACT.'

THE TERM 'PATENT' IS DEFINED IN SUBSECTION (F)(6) TO MEAN 'A PATENT ISSUED BY
THE UNITED STATES PATENT AND TRADEMARK OFFICE.

**\*44 \*\*2677** SECTION 156(G)

### DEFINITION OF REGULATORY REVIEW PERIOD

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

THE 'REGULATORY REVIEW PERIOD' DIFFERS FOR EACH PRODUCT THAT CAN BE THE SUBJECT
OF PATENT EXTENSION, BUT IN ALL CASES IT IS CONSIDERED TO HAVE A TESTING PHASE AND
AN AGENCY APPROVAL PHASE.

IN SECTIONS 156(G)(1)-(3) OF THE TERM 'INITIALLY SUBMITTED' IS USED TO DESCRIBE
THE POINT IN TIME WHEN THE TESTING PHASE IS CONSIDERED TO BE COMPLETED AND THE
AGENCY APPROVAL PHASE TO HAVE BEGUN.  THIS TERM IS USED INSTEAD OF THE TERM
'FILED,' BECAUSE AN APPLICATION IS OFTEN NOT CONSIDERED TO BE FILED, EVEN THOUGH
AGENCY REVIEW HAS BEGUN, UNTIL THE AGENCY HAS DETERMINED THAT NO OTHER INFORMATION
IS NEEDED AND A DECISION ON THE APPLICATION CAN BE MADE.  FOR PURPOSES OF DETER-
MINING THE REGULATORY REVIEW PERIOD AND ITS COMPONENT PERIODS, AN APPLICATION FOR
AGENCY REVIEW IS CONSIDERED TO BE 'INITIALLY SUBMITTED' IF THE APPLICANT HAS MADE
A DELIBERATE EFFORT TO SUBMIT AN APPLICATION CONTAINING ALL INFORMATION NECESSARY
FOR AGENCY REVIEW TO BEGIN.  THE COMMITTEE RECOGNIZES THAT THE AGENCY RECEIVING
THE APPLICATION MIGHT DECIDE IT NEEDS ADDITIONAL INFORMATION OR OTHER CHANGES IN
THE APPLICATION.  AS LONG AS THE APPLICATION WAS COMPLETE ENOUGH SO THAT AGENCY
ACTION COULD BE COMMENCED, IT WOULD BE CONSIDERED TO BE 'INITIALLY SUBMITTED'.

DRUG PRODUCTS (SECTION 156(G)(1)

THE REGULATORY REVIEW PERIOD FOR DRUG PRODUCTS IS THE SUM OF THE PERIODS:   (1)
BEGINNING WHEN AN EXEMPTION UNDER 505(I), 507(D), OR 512(J) WAS GRANTED OR AUTHOR-
ITY TO PREPARE AN EXPERIMENTAL DRUG PRODUCT UNDER THE VIRUS-SERUM-TOXIN ACT WAS
GRANTED AND ENDING WHEN WITH THE INITIAL SUBMISSION OF AN APPLICATION FOR APPROVAL
UNDER SECTION 351 OF THE PUBLIC HEALTH SERVICE ACT, 505, 507, 512 OF THE FEDERAL
FOOD, DRUG, AND COSMETIC ACT, OR THE VIRUS-SERUM-TOXIN ACT; AND (2) BEGINNING WHEN
AN APPLICATION FOR APPROVAL WAS INITIALLY SUBMITTED UNDER SECTION 351 OF THE PHS,
505, 507, 512 OF THE FFDCA OR THE VIRUS-SERUM-TOXIN ACT AND ENDING WHEN THE AP-
PLICATION WAS APPROVED.

FOOD AND COLOR ADDITIVES (SECTION 156(G)(2))

THE REGULATORY REVIEW PERIOD FOR FOOD AND COLOR ADDITIVES IS THE SUM OF THE
PERIODS:  (1) BEGINNING WHEN A MAJOR HEALTH OR ENVIRONMENTAL EFFECTS TEST FOR A
FOOD OR COLOR ADDITIVE WAS INITIATED AND ENDING WHEN A PETITION REQUESTING THE IS-
SUANCE OF A REGULATION FOR USE OF THE ADDITIVE WAS INITIALLY SUBMITTED; AND (2)
BEGINNING WHEN A PETITION FOR THE ISSUANCE OF A REGULATION WAS INITIALLY SUBMITTED
AND ENDING WHEN THE REGULATION BECAME EFFECTIVE.

IF PERMISSION FOR COMMERCIAL MARKETING WAS DELAYED BECAUSE OBJECTIONS WERE FILED
TO THE REGULATION, OR IF SUCH PERMISSION WAS INITIALLY GRANTED AND LATER REVOKED
BEFORE ACTUAL MARKETING BEGAN BECAUSE OBJECTIONS WERE FILED TO THE REGULATION,
THEN THE PERIOD DESCRIBED IN (2) ABOVE WOULD END WHEN THE OBJECTIONS WERE RESOLVED
AND COMMERCIAL MARKETING WAS PERMITTED.

MEDICAL DEVICES (SECTION 156(G)(3))

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

THE REGULATORY REVIEW PERIOD FOR MEDICAL DEVICES IS THE SUM OF THE PERIODS:
(1) BEGINNING WHEN HUMAN CLINICAL INVESTIGATIONS ARE **\*45** **\*\*2678** COMMENCED AND END-
ING WHEN AN APPLICATION FOR APPROVAL WAS INITIALLY SUBMITTED; AND (2) BEGINNING
WHEN AN APPLICATION FOR APPROVAL WAS INITIALLY SUBMITTED AND ENDING WHEN THE AP-
PLICATION WAS APPROVED, OR BEGINNING WHEN A NOTICE OF COMPLETION OF A PRODUCT DE-
VELOPMENT PROTOCOL WAS INITIALLY SUBMITTED AND ENDING WHEN THE PROTOCOL WAS DE-
CLARED COMPLETED.

LIMITATIONS ON THE REGULATORY REVIEW PERIOD (SECTION 156(G)(4))

A DISCUSSION OF THIS SECTION IS CONTAINED IN THE EARLIER SECTION 156(C) ENTITLED
'PERIOD OF EXTENSION'.

SECTION 156(H)

FEES FOR APPLICATIONS

THE COMMISSIONER OF PATENTS AND TRADEMARKS IS AUTHORIZED TO ESTABLISH SUCH FEES
AS HE DETERMINES APPROPRIATE TO COVER THE ENTIRE COST OF THE PATENTS AND TRADE-
MARKS OFFICE OF RECEIVING AND ACTING UPON APPLICATIONS FOR PATENT EXTENSIONS.

SECTION 202 OF THE BILL

SECTION 202 CREATES A NEW SECTION 271(E) IN TITLE 35 OF THE U.S.C. THE PATENT
LAW.

PATENT INFRINGEMENT (SECTION 271(E))

SECTION 271(E)(1) PROVIDES THAT IT SHALL NOT BE AN ACT OF INFRINGEMENT TO MAKE,
USE, OR SELL A PATENTED INVENTION SOLELY FOR USES REASONABLY RELATED TO THE DEVEL-
OPMENT AND SUBMISSION OF INFORMATION UNDER A FEDERAL LAW WHICH REGULATES THE AP-
PROVAL OF DRUGS.  THIS SECTION DOES NOT PERMIT THE COMMERCIAL SALE OF A PATENTED
DRUG BY THE PARTY USING THE DRUG TO DEVELOP SUCH INFORMATION, BUT IT DOES PERMIT
THE COMMERCIAL SALE OF RESEARCH QUANTITIES OF ACTIVE INGREDIENTS TO SUCH PARTY.
THE INFORMATION WHICH CAN BE DEVELOPED UNDER THIS PROVISION IS THE TYPE WHICH IS
REQUIRED TO OBTAIN APPROVAL OF THE DRUG.  A PARTY WHICH DEVELOPS SUCH INFORMATION,
BUT DECIDES NOT TO SUBMIT AN APPLICATION FOR APPROVAL, IS PROTECTED AS LONG AS THE
DEVELOPMENT WAS DONE TO DETERMINE WHETHER OR NOT AN APPLICATION FOR APPROVAL WOULD
BE SOUGHT.
SECTION 271(E)(2) PROVIDES THAT IT SHALL BE AN ACT OF PATENT INFRINGEMENT TO
SUBMIT AN ANDA FOR A DRUG (1) WHICH IS CLAIMED IN A VALID PRODUCT PATENT, OR (2) A
USE OF WHICH IS CLAIMED IN A VALID USE PATENT, IF THE PURPOSE OF SUBMITTING THE
ANDA IS TO GET APPROVAL OF THE ANDA WITH AN EFFECTIVE DATE PRIOR TO THE EXPIRATION
OF SUCH PATENTS.
THE PURPOSE OF SECTIONS 271(E)(1) AND (2) IS TO ESTABLISH THAT EXPERIMENTATION
WITH A PATENTED DRUG PRODUCT, WHEN THE PURPOSE IS TO PREPARE FOR COMMERCIAL ACTIV-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

ITY WHICH WILL BEGIN AFTER A VALID PATENT EXPIRES, IS NOT A PATENT INFRINGEMENT.
SINCE THE COMMITTEE'S SUBCOMMITTEE ON HEALTH AND THE ENVIRONMENT BEGAN CONSIDERA-
TION OF THIS BILL, THE COURT OF APPEALS FOR THE FEDERAL CIRCUIT HELD THAT THIS
TYPE OF EXPERIMENTATION IS INFRINGEMENT.

IN ROCHE PRODUCTS, INC. V. BOLAR PHARMACEUTICAL CO., INC.-- F.2D-- (FED. CIR.,
APRIL 23, 1984), THE COURT OF APPEALS FOR THE FEDERAL CIRCUIT HELD THAT THE EXPER-
IMENTAL USE OF A DRUG PRODUCT PRIOR TO THE **46 **2679 EXPIRATION DATE OF A PATENT
CLAIMING THAT DRUG PRODUCT CONSTITUTES PATENT INFRINGEMENT, EVEN THOUGH THE ONLY
PURPOSE OF THE EXPERIMENTS IS TO SEEK FDA APPROVAL FOR THE COMMERCIAL SALE OF THE
DRUG AFTER THE PATENT EXPIRES.  IT IS THE COMMITTEE'S VIEW THAT EXPERIMENTAL
ACTIVITY DOES NOT HAVE ANY ADVERSE ECONOMIC IMPACT ON THE PATENT OWNER'S EXCLUSIV-
ITY DURING THE LIFE OF A PATENT, BUT PREVENTION OF SUCH ACTIVITY WOULD EXTEND THE
PATENT OWNER'S COMMERCIAL EXCLUSIVITY BEYOND THE PATENT EXPIRATION DATE.

ARTICLE 1, SECTION 8, CLAUSE 8 OF THE CONSTITUTION EMPOWERS CONGRESS TO GRANT
EXCLUSIVE RIGHTS TO AN INVENTOR FOR A LIMITED TIME. THAT LIMITED TIME SHOULD BE A
DEFINITE TIME AND, THEREAFTER, IMMEDIATE COMPETITION SHOULD BE ENCOURAGED.  FOR
THAT REASON, TITLE I OF THE BILL PERMITS THE FILING OF ABBREVIATED NEW DRUG AP-
PLICATIONS BEFORE A PATENT EXPIRES AND CONTEMPLATES THAT THE EFFECTIVE APPROVAL
DATE WILL BE THE EXPIRATION DATE OF THE VALID PATENT COVERING THE ORIGINAL
PRODUCT. OTHER SECTIONS OF TITLE II PERMIT THE EXTENSION OF THE TERM OF A PATENT
FOR A DEFINITE TIME PROVIDED CERTAIN CONDITIONS ARE MET.  THERE SHOULD BE NO OTHER
DIRECT OR INDIRECT METHOD OF EXTENDING PATENT TERM.

REMEDIES FOR PATENT INFRINGEMENT (SECTION 271(C)(3)-(4))

IN AN INFRINGEMENT ACTION PURSUANT TO THIS SECTION, NO INJUNCTIVE OR OTHER RE-
LIEF COULD BE GRANTED TO PROHIBIT THE ACTIVITY WHICH IS PERMITTED BY SECTION
271(E)(1).

THE COMMITTEE EXPECTS THAT INFRINGEMENT ACTIONS PURSUANT TO THIS SECTION WILL
ONLY BE BROUGHT IN THE INSTANCE DESCRIBED IN SECTION 271(E)(2), WHERE A PARTY SUB-
MITTING AN ABBREVIATED NEW DRUG APPLICATION UNDER TITLE I OF THIS BILL CERTIFIES
THAT A PATENT IS INVALID OR NON-INFRINGED AND GIVES THE REQUIRED NOTICE OF THAT
CERTIFICATION TO THE PATENT OWNER.  IN THE EVENT THE PATENT IS FOUND TO BE VALID
AND INFRINGED, SO THAT THE ACT OF INFRINGEMENT DESCRIBED IN SECTION 271(E)(2) HAS
OCCURRED, THE REMEDIES AVAILABLE TO THE COURT ARE THREE-FOLD.

IF THE INFRINGING PARTY HAS NOT BEGUN COMMERCIAL MARKETING OF THE DRUG, INJUNCT-
IVE RELIEF MAY BE GRANTED TO PREVENT ANY COMMERCIAL ACTIVITY WITH THE DRUG AND THE
FDA WOULD BE MANDATED TO MAKE THE EFFECTIVE DATE OF ANY APPROVED ANDA NOT EARLIER
THAN THE EXPIRATION DATE OF THE INFRINGED PATENT.  THE INJUNCTION COULD NOT PRO-
HIBIT THE INFRINGING PARTY FROM USING THEIR INFORMATION CONTAINED IN THE APPLICA-
TION TO SUPPORT THE APPROVAL OF THE APPLICATION AT THE LATER EFFECTIVE DATE.  IN
THE CASE WHERE THE ANDA HAD NOT BEEN APPROVED, THE ORDER WOULD MANDATE THE EFFECT-
IVE DATE OF ANY APPROVAL TO BE NOT EARLIER THAN THE EXPIRATION DATE OF THE IN-
FRINGED PATENT.  IN THE CASE WHERE AN ANDA HAD BEEN APPROVED, THE ORDER WOULD MAN-
DATE A CHANGE IN THE EFFECTIVE DATE.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**


IF THE INFRINGING PARTY HAS BEGUN COMMERCIAL MARKETING OF THE DRUG, DAMAGES AND
OTHER MONETARY RELIEF AND INJUNCTIVE RELIEF MAY BE AWARDED FOR THE INFRINGEMENT
AND TO PREVENT FURTHER INFRINGEMENT.  IN ADDITION, THE FDA WOULD BE MANDATED TO
CHANGE THE EFFECTIVE DATE OF THE APPROVED ANDA TO THE EXPIRATION DATE OF THE IN-
FRINGED PATENT.

*47 **2680 SECTION 203 OF THE BILL

SECTION 203 ADDS A NEW PROVISIONS TO SECTION 282 OF TITLE 35, UNITED STATES
CODE.

DEFENSES TO PATENT INFRINGEMENT (SECTION 282)

THE NEW PROVISION IN SECTION 282 PROVIDES THAT AN IMPROPER GRANT OF PATENT EX-
TENSION, OR ANY PORTION THEREOF, BECAUSE OF A MATERIAL FAILURE BY THE APPLICANT OR
BY THE COMMISSIONER OF PATENTS AND TRADEMARKS TO COMPLY WITH THE REQUIREMENTS OF
SECTION 156, IS A DEFENSE IN ANY ACTION INVOLVING THE INFRINGEMENT OF THE PATENT
DURING THE PATENT EXTENSION. ANY FAILURE BY THE APPLICANT TO COMPLY WITH THE RE-
QUIREMENTS OF SECTION 156 WOULD BE CONSIDERED MATERIAL ONLY IF THE FAILURE WOULD
HAVE CHANGES THE DECISION TO GRANT THE EXTENSION OR THE LENGTH OF THE EXTENSION.
ANY FAILURE BY THE COMMISSIONER TO COMPLY WITH THE REQUIREMENTS OF SECTION 156
WOULD BE CONSIDERED MATERIAL UNLESS THE COMMISSIONER FAILED TO MEET A TIME DEAD-
LINE.
UNDER THIS PROVISION, A COURT WHICH FOUND SOME PORTION OF THE EXTENSION TO BE
IMPROPERLY GRANTED WOULD NOT INVALIDATE THE ENTIRE PATENT EXTENSION.  FOR EXAMPLE,
IF THE COMMISSIONER MADE A MATHEMATICAL ERROR THAT RESULTED IN A FIVE YEAR EXTEN-
SION INSTEAD OF THE FOUR YEAR EXTENSION TO WHICH THE APPLICANT WAS ENTITLED, THE
COURT WOULD INVALIDATE ONLY THAT PORTION OF THE PATENT EXTENSION IMPROPERLY GRAN-
TED.
IMPLICIT IN SECTION 156 IS A DIRECTIVE TO THE COMMISSIONER TO CORRECT ANY FAIL-
URE ON HIS PART THAT RESULTED IN THE FUNDING OF INVALIDITY OF A PATENT EXTENSION
OR ANY PORTION OF IT.  THE NEW PROVISION DOES NOT CREATE ANY CAUSE OF ACTION UNDER
THE TORT CLAIMS ACT AGAINST THAT COMMISSIONER OR ANY PATENTS AND TRADEMARKS OFFICE
EMPLOYEE INVOLVED WITH THE EXTENSION.
IN AN ACTION INVOLVING THIS NEW PROVISION, THE DETERMINATION REGARDING DUE DILI-
GENCE MADE UNDER SECTION 156(D)(2) IS NOT SUBJECT TO REVIEW.

AGENCY VIEWS

AGENCY COMMENTS WERE SUBMITTED BY THE FOOD AND DRUG ADMINISTRATION DURING THE
JULY 15, 1983, HEARING OF THE SUBCOMMITTEE ON HEALTH AND THE ENVIRONMENT.

*           *           *           *

*71 **2681 MINORITY VIEWS OF MR. BLILEY

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

INTRODUCTION

   H.R. 3605, AS REPORTED BY THE COMMITTEE, IS A BILL DESCRIBED BY ITS PROPONENTS
AS HAVING SOMETHING FOR EVERYONE-- RESTORATION OF PATENT TERMS FOR PRODUCTS SUB-
JECT TO ELABORATE PREMARKET APPROVAL REQUIREMENTS TO PROVIDE INCENTIVES FOR PHAR-
MACEUTICAL RESEARCH AND FACILITATION OF APPROVAL OF GENERIC DRUGS BY THE FOOD AND
DRUG ADMINISTRATION UNDER ABBREVIATED APPLICATION PROCEDURES TO INCREASE DRUG
PRICE COMPETITION. THE OBJECTIVES OF THIS LEGISLATION ARE SALUTARY AND HAVE THE
SUPPORT OF ALL INTERESTED PARTIES.  IN MY VIEW, HOWEVER, THE LEGISLATION FAILS TO
ACHIEVE A PROPER BALANCE BETWEEN THESE TWO OBJECTIVES.
   INSTEAD OF PROVIDING AN APPROPRIATE PATENT TERM FOR PHARMACEUTICALS BY RESTORING
THE TIME DEVOTED TO PERIODS OF 'REGULATORY REVIEW,' THE BILL STRICTLY LIMITS THE
TYPES OF PATENTS ELIGIBLE FOR TERM RESTORATION AND THE CONDITIONS AND LENGTH OF
THE RESTORATION PERIOD.  IN SHORT, THE PATENT TERM RESTORATION PROVISIONS OF THIS
BILL ARE LARGELY ILLUSORY. MOREOVER, THE BILL WOULD OVERRULE A DECISION OF THE
HIGHEST PATENT COURT IN THIS COUNTRY AND THEREBY ALLOW GENERIC DRUG COMPANIES TO
USE A PATENTED PRODUCT DURING THE TERM OF THE PATENT.  THIS IS A SUBSTANTIAL DI-
MINUTION OF THE RIGHTS CURRENTLY HELD BY THE OWNER OF THE PATENT AND HAS SERIOUS
CONSTITUTIONAL AND POLICY IMPLICATIONS WHICH HAVE NOT BEEN CONSIDERED BY THE COM-
MITTEE.  THE PATENT PROVISIONS OF THIS BILL ALSO ENCOURAGE PATENT 'JUMPING' AND
LITIGATION OVER THE VALIDITY OF PATENTS.
   THE ABBREVIATED NEW DRUG APPLICATION (ANDA) PROVISIONS OF THIS BILL ARE EQUALLY
TROUBLESOME.  FOR EXAMPLE, THE BILL HAS SUBSTANTIAL ADVERSE EFFECTS ON THE RE-
SOURCES AND LEGAL AUTHORITY OF THE FOOD AND DRUG ADMINISTRATION, WHICH HAS EX-
PRESSED SOME OF ITS CONCERNS ABOUT THE BILL IN A DOCUMENT ENTITLED 'TECHNICAL COM-
MENTS ON JUNE 2 DISCUSSION DRAFT ANDA/PATENT TERM RESTORATION LEGISLATION,'
LARGELY TO NO AVAIL.  MANY MEMBERS OF THE CONGRESS AND VARIOUS PRESTIGIOUS ACADEM-
IC AND STUDY GROUPS HAVE EXPLORED RECENTLY THE NEED FOR FASTER APPROVALS OF INNOV-
ATIVE AND MEDICALLY NECESSARY NEW DRUGS.  THE NEED TO ACCELERATE THE APPROVAL OF
NEW DRUGS HAS BEEN ACKNOWLEDGED BY NEARLY EVERYONE, INCLUDING THE FDA.  IT IS AS-
TONISHING, IN LIGHT OF THE WIDELY HELD VIEW THAT THE NEW DRUG APPROVAL PROCESS
TAKES TOO LONG, THAT THE COMMITTEE REPORTED H.R. 3605, WHICH IMPOSES SUBSTANTIAL
NEW ADMINISTRATIVE AND RESOURCE BURDENS ON THE FDA WHICH WILL ALMOST CERTAINLY
HAVE THE EFFECT OF FORCING FDA TO DIVERT RESOURCES FROM THE REVIEW AND APPROVAL OF
NEW THEREPEUTIC ENTITIES TO THE REVIEW AND APPROVAL OF COPIES OF ALREADY-AVAILABLE
DRUGS.
   I AM DEEPLY CONCERNED THAT IN ITS HASTE TO REPORT THIS LENGTHY AND COMPLEX BILL,
THE COMMITTEE HAS FAILED TO CONSIDER FULLY AND ADEQUATELY ITS EFFECTS-- INTENDED
AND UNINTENDED, DESIRABLE AND UNDESIRABLE-- IN *72 EITHER HEARINGS OR MARKUP.
H.R. 3605 IS A SIGNIFICANT PIECE OF LEGISLATION WITH IMPORTANT IMPLICATIONS FOR
CONSUMERS, RESEARCH-**2682 BASED PHARMACEUTICAL COMPANIES, GENERIC DRUG COMPANIES
AND FOR THE FDA.  IN POINT OF FACT, HOWEVER, THE COMMITTEE HAS REPORTED A HIGHLY
SIGNIFICANT AND LENGTHY BILL WITHOUT ANY HEARINGS HAVING BEEN HELD ON IT IN EITHER
THE HEALTH SUBCOMMITTEE OR IN THE FULL COMMITTEE. IT IS NO ANSWER TO SAY THAT THE
BILL IS THE RESULT OF LENGTHY NEGOTIATIONS BETWEEN THE BRANDNAME AND GENERIC DRUG

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**


INDUSTRY TRADE ASSOCIATIONS.  MANY SIGNIFICANT INTERESTS, INCLUDING THE HIGHLY IN-
NOVATIVE AND RESEARCH-ORIENTED PHARMACEUTICAL FIRMS HAVE SERIOUS RESERVATIONS
ABOUT THE BILL AS REPORTED AS APPARENTLY, DOES THE FDA.
   H.R. 3605 IS AN ADMIRABLE BEGINNING TO THE PROCESS OF STRIKING AN APPROPRIATE
BALANCE AMONG A VARIETY OF COMPETING AND IMPORTANT POLICY OBJECTIVES.  THERE IS
AMPLE TIME FOR, AND A COMPELLING NEED TO, CONSIDER, REVISE AND IMPROVE UPON THE
BILL.  IN MY VIEW, THE BILL SHOULD BE RETURNED TO THE HEALTH SUBCOMMITTEE FOR FUR-
THER HEARINGS AND AMENDMENT, RATHER THAN BEING REPORTED IN HASTE BY THIS COMMIT-
TEE. FURTHER, BECAUSE THIS COMMITTEE LACKS EXPERTISE IN PATENT MATTERS, THE COM-
MITTEE IS NOT QUALIFIED TO EVALUATE THE PATENT PROVISIONS OF H.R. 3605.  WE DO
THIS INSTITUTION A DISSERVICE BY HASTILY REPORTING ON THE VERY DAY OF INTRODUC-
TION, A COMPLEX BILL OUTSIDE THE EXPERTISE OF THE COMMITTEE AFTER A 'MARKUP' THAT
LASTED BARELY THIRTY MINUTES.
   IN THE NEXT SECTIONS OF MY VIEWS, I DESCRIBE IN GREATER DETAIL THE SIGNIFICANT
AREAS IN WHICH THIS BILL IS DEFICIENT.

                    I. TITLE I-- ABBREVIATED NEW DRUG APPLICATIONS

                          A. LIMITS ON FDA AUTHORITY

   BOTH THE RESEARCH-BASED PHARMACEUTICAL COMPANIES WHICH FAVOR AMENDMENTS TO  H.R.
3605 AND THE FDA ITSELF HAVE IDENTIFIED WAYS IN WHICH THE BILL UNWISELY RESTRICTS
FDA'S AUTHORITY TO ENSURE THAT ALL DRUGS ARE DEMONSTRATED TO BE SAFE AND EFFECT-
IVE.
   FIRST, THE BILL EXPRESSLY PROHIBITS FDA FROM REQUESTING DATA ON THE SAFETY OR
EFFICACY OF CERTAIN GENERIC DRUGS, EVEN WHERE SUCH DATA ARE NEEDED TO FULFILL THE
FDA'S PUBLIC HEALTH RESPONSIBILITIES.  ALTHOUGH ONE WOULD NOT ANTICIPATE THAT FDA
WOULD NEED TO RESORT TO THIS AUTHORITY VERY OFTEN, I BELIEVE IT IS A FUNDAMENTAL
MISTAKE TO DEPRIVE THE FDA OF THE AUTHORITY SIMPLY BECAUSE IT IS ASSUMED THAT IT
WILL NEED TO EXERCISE IT ONLY RARELY.
   SECOND, IT HAS BEEN THE LONGSTANDING POLICY OF FDA TO REQUIRE THAT PERSONS SEEK-
ING TO MARKET DRUGS COMBINING TWO OR MORE ACTIVE INGREDIENTS DEMONSTRATE THAT THE
COMBINATION ITSELF, AS OPPOSED TO THE ACTIVE INGREDIENTS INDIVIDUALLY, BE SHOWN TO
BE SAFE AND EFFECTIVE. FDA'S AUTHORITY TO REQUIRE THIS PROOF HAS BEEN UPHELD BY
THE COURTS. WITHOUT EXPLANATION OR HEARING, H.R. 3605 WOULD OVERRULE THIS POLICY
AND LIMIT FDA'S CONSIDERATION OF SAFETY AND EFFICACY TO THE INDIVIDUAL ACTIVE IN-
GREDIENTS OF COMBINATION DRUGS.  I DO NOT BELIEVE THAT THE CONGRESS SHOULD PROVIDE
FOR THE APPROVAL OF NEW COMBINATIONS OF DRUGS WITHOUT REQUIRING THE APPLICANT TO
DEMONSTRATE THAT THE COMBINATION IS SAFE AND EFFECTIVE.  THE PUBLIC HEALTH SHOULD
NOT BE COMPROMISED IN THIS FASHION.

                      *73 **2683 B. RESOURCE IMPLICATIONS

   THE REVIEW AND APPROVAL BY FDA OF NEW PHARMACEUTICALS-- OFTEN INNOVATIVE AND
HIGHLY DESIRABLE DEVELOPMENTS ESSENTIAL TO THE HEALTH OF OUR CITIZENS-- IS PERHAPS

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

THE MOST IMPORTANT FUNCTION THAT THE CONGRESS HAS GIVEN TO THE FDA. THE AMERICAN
PEOPLE AND THE MEMBERS OF THE CONGRESS RIGHTLY EXPECT THAT THIS FUNCTION BE PER-
FORMED COMPETENTLY AND EXPEDITIOUSLY.  NEW DRUGS ARE OFTEN INEXPENSIVE WAYS TO
CURE LIFE-THREATENING OR DEBILITATING DISEASES. UNNECESSARY DELAY IN MAKING THESE
DRUGS AVAILABLE TO PHYSICIANS HAS BEEN A CONTINUING CONCERN TO ME, MANY OTHER MEM-
BERS OF THE CONGRESS, TO THE FDA, TO THE MEDICAL COMMUNITY AND OTHERS.  THE SO-
CALLED 'DRUG LAG' AND THE NEED TO EXPEDITE DRUG APPROVALS HAS BEEN WIDELY STUDIED
AND RECOMMENDATIONS FOR IMPROVEMENTS ABOUND.  INDEED, FDA IS IN THE MIDST OF RE-
VISING ITS REGULATIONS AND PROCEDURES FOR NEW DRUG APPROVALS.

   ASTONISHINGLY, THEN, THE COMMITTEE HAS REPORTED A BILL WHICH IS LIKELY TO REDUCE
FDA'S ABILITY TO IMPROVE ITS NEW DRUG APPROVAL PROCEDURES AND ITS TIMELINESS IN
ACTING ON NEW DRUG APPLICATIONS.  FDA HAS EXPRESSED CONCERN IN ITS 'TECHNICAL COM-
MENTS' THAT THE BILL REPORTED BY THE COMMITTEE WILL RESULT IN A 'SUBSTANTIAL IN-
CREASE IN WORK LOAD DURING THE FIRST FEW YEARS IMMEDIATELY FOLLOWING ENACTMENT.'
IT IS OBVIOUS THAT THIS INCREASE IN WORKLOAD WILL OBLIGATE FDA TO REALLOCATE PER-
SONNEL FROM NEW DRUG REVIEW TO ANDA REVIEW. BECAUSE THE BILL ALSO CONTAINS TIME
LIMITS ON FDA'S ACTIONS ON ANDAS WHICH ARE FAR MORE RESTRICTIVE THAN THOSE FOR
NDAS, [FN21]  THIS PROBLEM WILL BE FURTHER EXACERBATED.  IT IS APPARENTLY THE COM-
MITTEE'S VIEW THAT REVIEW OF ANDAS IS A MORE IMPORTANT PRIORITY FOR FDA THAN NDAS.
I TAKE STRONG EXCEPTION TO THAT JUDGMENT.

   AS FDA HAS SUGGESTED, A PHASE-IN OF ELIGIBILITY OF ANDAS WOULD AMELIORATE MUCH
OF ITS WORKLOAD BURDEN WHILE SIMULTANEOUSLY MAKING AVAILABLE IMMEDIATELY FOR ANDA
TREATMENT SIX OF THE DRUGS THAT ARE AMONG THE TOP SELLING PRESCRIPTION DRUG
PRODUCTS.  I URGE THE MEMBERS OF THE HOUSE TO CONSIDER THIS IDEA AMONG OTHERS AS A
WAY TO GREATLY IMPROVE UPON THIS BILL.

                          C. DISCLOSURE OF PROPRIETARY DATA

   THE BILL REPORTED BY THE COMMITTEE PROVIDES FOR THE PUBLIC DISCLOSURE OF ALL OF
THE EXTENSIVE AND COSTLY RESEARCH DATA GENERATED BY RESEARCH-ORIENTED PHARMACEUT-
ICAL COMPANIES, EVEN THOUGH THOSE SAFETY AND EFFECTIVENESS DATA MAY BE OF SIGNI-
FICANT VALUE TO FOREIGN COMPETITORS OR MAY RETAIN PROPRIETARY VALUE IN THE UNITED
STATES. THESE DATA MAY WELL RETAIN COMMERCIAL VALUE, EVEN WHEN FDA NO LONGER RE-
QUIRES AN APPLICANT TO SUBMIT THEM FOR APPROVAL OF A DRUG (I.E., WHEN AN ANDA MAY
BE FILED WITH FDA, THE FULL DATA ARE NOT NEEDED).  THE DATA MAY STILL BE VALUABLE,
FOR EXAMPLE, BECAUSE IN MANY FOREIGN COUNTRIES ALL OR A PORTION OF THESE DATA ARE
NEEDED TO OBTAIN APPROVAL.  THESE DATA WILL BE VALUABLE PARTICULARLY IN THOSE
COUNTRIES WHICH DO NOT RECOGNIZE U.S. PATENTS. BY PROVIDING FOR THE *74 **2684 RE-
LEASE OF THESE DATA, THE BILL HANDS TO FOREIGN COMPETITORS OF U.S. DRUG FIRMS, FOR
THE MERE PRICE OF PHOTOCOPYING CHARGES, DATA WHICH COST MANY MILLIONS OF DOLLARS
TO OBTAIN AND WHICH CAN BE USED TO OBTAIN APPROVAL TO MARKET DRUGS IN COMPETITION
WITH THE OWNER AND GENERATOR OF THE DATA.  THIS PROVISION OF H.R. 3605 IS HARDLY
THE WAY TO PROTECT AND IMPROVE THE COMPETITIVENESS OF AMERICA'S PHARMACEUTICAL IN-
DUSTRY.

   IT SHOULD ALSO BE NOTED THAT THIS PROVISION OF H.R. 3605 HAS SIGNIFICANT RE-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**


SOURCE IMPLICATIONS FOR FDA.  UNDER THE FREEDOM OF INFORMATION ACT, FDA IS OBLIG-
ATED TO RESPOND TO REQUESTS FOR DOCUMENTS IN ITS FILES, INCLUDING THE VOLUMINOUS
SAFETY AND EFFECTIVENESS DATA MADE AVAILABLE BY THE BILL, ORDINARILY WITHIN TEN
DAYS.  SINCE THE ENACTMENT OF THE FOI ACT, FDA HAS CONSISTENTLY RECEIVED MORE RE-
QUESTS FOR DOCUMENTS THAN VIRTUALLY ANY OTHER FEDERAL AGENCY. IN 1983, FDA RE-
CEIVED OVER 39,000 FOI REQUESTS.  ONE HUNDRED TWENTY-FIVE 'FULL TIME EQUIVALENTS,'
MANY HIGHLY TRAINED SCIENTISTS AND DOCTORS, WERE REQUIRED TO PROCESS THESE RE-
QUESTS.  UNDER H.R. 3605, OVER TWENTY YEARS OF SAFETY AND EFFECTIVENESS DATA AND
INFORMATION WILL, IMMEDIATELY UPON ENACTMENT, BE AVAILABLE FOR DISCLOSURE.  IF FDA
WERE TO RECEIVE REQUESTS FOR EVEN A MODEST PART OF THOSE DATA, THE WORKLOAD AND
RESOURCE BURDENS WOULD BE STAGGERING.  I FAIL TO SEE HOW THE PUBLIC BENEFITS BY
HAVING FDA BE FORCED TO DIVERT SCARCE TECHNICAL PERSONNEL AND RESOURCES TO PRO-
CESSING FDA REQUESTS AND ANDAS, AT THE EXPENSE OF NEW DRUG APPLICATIONS AND OTHER
IMPORTANT PUBLIC HEALTH FUNCTIONS.

                    II.  TITLE II-- PATENT TERM RESTORATION

   H.R. 3605 CONTAINS MANY SIGNIFICANT REVISIONS TO OUR PATENT LAWS. RATHER THAN
RESTORING PATENT TERMS LOST DURING EXTENSIVE REGULATORY REVIEW PERIODS, THESE RE-
VISIONS ELIMINATE MANY OF THE SIGNIFICANT RIGHTS WHICH CURRENTLY ACCRUE TO THE
PATENT OWNER.  MOREOVER, THE PATENT TERM RESTORATION PROVISIONS ARE SO RESTRICTIVE
THAT THEIR EFFECT MAY WELL BE LARGELY ILLUSORY.  INNOVATION IS NOT ENCOURAGED BY
THESE PATENT PROVISIONS.

                       A. LOSS OF PATENT RIGHTS

   I AM ADVISED THAT IT HAS LONG BEEN ACCEPTED THAT TO USE, SELL OR MAKE A PATENTED
PRODUCT DURING THE LIFE OF THE PATENT CONSTITUTES PATENT INFRINGEMENT.  THIS AS-
PECT OF THE RIGHTS ACCRUING TO THE PATENT OWNER WAS RECENTLY REAFFIRMED IN THE
CONTEXT OF GENERIC DRUGS IN THE SO-CALLED BOLAR CASE.  THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT HELD, CONSISTENT WITH PRIOR LAW, THAT A GENERIC
DRUG COMPANY MAY NOT FORMULATE AND TEST ITS VERSION OF ANOTHER COMPANY'S PATENTED
DRUG UNTIL THE PATENT TERM EXPIRES.  THE BOLAR DECISION IS SOUND LAW AND SHOULD BE
RETAINED.
   H.R. 3605, HOWEVER, WOULD OVERRULE BOLAR AND THEREBY PERMIT A GENERIC DRUG COM-
PANY TO ENGAGE IN ACTS WHICH HERETOFORE WOULD HAVE CONSTITUTED PATENT INFRINGE-
MENT.  IT IS EXTREMELY DOUBTFUL THAT IT IS SOUND POLICY IN A BILL DESIGNED TO RE-
STORE PATENT LIFE, TO DRAMATICALLY CUT BACK ON EXISTING PATENT RIGHTS.
   I AM ALSO CONCERNED THAT THE CONSTITUTIONAL IMPLICATIONS OF THIS PROVISION OF
H.R. 3605 HAVE NOT BEEN CONSIDERED.  BY OVERRULING BOLAR, THE BILL RETROSPECTIVELY
DEPRIVES THE PATENT HOLDER OF VALUABLE *75 **2685 RIGHTS. PATENT RIGHTS REPRESENT
BOTH A CONTRACTUAL RIGHT BETWEEN THE PATENT HOLDER AND THE U.S. GOVERNMENT AND A
RECOGNIZED PROPERTY RIGHT.  THE CONSTITUTION PREVENTS THE GOVERNMENT FROM IMPAIR-
ING THE RIGHTS OF CONTRACT AND FROM 'TAKING' OR DEPRIVING ONE OF A PROPERTY RIGHT
WITHOUT JUST COMPENSATION.  BY OVERRULING BOLAR FOR PATENTS ALREADY ISSUED, H.R.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**


3605 VIOLATES THESE IMPORTANT PROTECTIONS FOUND IN OUR CONSTITUTION.

### B. RESTRICTIONS ON PATENT TERM RESTORATION

UNDER H.R. 3605, MOST PATENTS WILL NOT BE ELIGIBLE FOR RESTORATION, EVEN THOUGH
THEY MAY COVER PRODUCTS OR METHODS OF USE, FORMULATION OR ADMINISTRATION, OF IN-
NOVATIVE DRUGS WHICH REQUIRED MANY YEARS AND GREAT EXPENSE TO RESEARCH AND DEVELOP
AND EVEN THOUGH MANY YEARS MAY HAVE BEEN DEVOTED TO SECURING AN APPROVAL TO MARKET
FROM THE FDA.  THE BILL THUS FAILS TO ACHIEVE ONE OF ITS PRINCIPAL PURPOSES:  TO
ENSURE THAT SUFFICIENT INCENTIVES EXIST FOR INNOVATION.

A FEW EXAMPLES OF THE RESTRICTIVE APPROACH TO PATENT TERM RESTORATION WILL
DEMONSTRATE THE INADEQUACIES OF H.R. 3605.

UNDER PRESENT LAW, A PATENT CAN BE OBTAINED CONTAINING A BROAD CLAIM (GENUS)
COVERING MANY COMPOUNDS.  IT IS DIFFICULT AND REQUIRES A LARGE INVESTMENT BY THE
INNOVATOR, BUT IS STILL POSSIBLE SUBSEQUENTLY TO OBTAIN A PATENT FOR SPECIFIC
CLAIMS (SPECIES) ON A FEW SPECIFIC COMPOUNDS ENCOMPASSED WITHIN THE GENUS.  UNDER
THE BILL, SHOULD A PATENT HOLDER OBTAIN A PATENT WITH SPECIES CLAIMS COVERED BY A
PREVIOUSLY-ISSUED GENUS PATENT, THE PATENT HOLDER COULD NOT OBTAIN RESTORATION OF
THE TERM OF THE SPECIES PATENT.

IN ADDITION, UNDER PRESENT LAW, THE PATENT OFFICE CAN REQUIRE THAT THE CLAIMS IN
A PATENT APPLICATION BE DIVIDED AND PROSECUTED IN SEPARATE PATENTS.  UNDER THE
BILL, THE FIRST ISSUED PATENT OF THE SERIES WOULD BE THE ONLY PATENT TERM ENTITLED
TO RESTORATION, AND SUBSEQUENTLY ISSUED PATENTS OF THE SERIES WOULD BE PRECLUDED
FROM RESTORATION.  ACCORDINGLY, UNLESS AN FDA APPROVED PRODUCT IS CLAIMED WITHIN
THE FIRST ISSUED PATENT OF THE SERIES, RESTORATION OF A PATENT TERM COVERING THE
PRODUCT WOULD NOT BE AVAILABLE.  DURING THE PATENT APPLICATION PROCESS, IT IS IM-
POSSIBLE TO KNOW WHICH DRUG OR DRUGS WILL ULTIMATELY BE SUCCESSFULLY TESTED AND
MARKETED.  THEREFORE, A PATENT HOLDER IS BEING DENIED THE BENEFIT OF PATENT TERM
RESTORATION DUE TO CIRCUMSTANCES BEYOND ITS CONTROL.

ANOTHER EXCEPTION TO PATENT TERM RESTORATION ENCOMPASSED BY H.R. 3605 WOULD OC-
CUR WHERE ONE PATENT COVERS TWO FDA APPROVED DRUGS.  ANY CLAIMS IN THE PATENT COV-
ERING THE SECOND FDA APPROVED DRUG COULD NOT BE RESTORED. ACCORDINGLY, ONLY ONE
RESTORATION IS AVAILABLE PER PATENT EVEN THOUGH A COMPANY MAY HAVE EXPENDED CON-
SIDERABLE RESOURCES IN DEVELOPING EACH FDA APPROVED PRODUCT.

THE BILL ALSO LIMITS AVAILABILITY OF PATENT TERM RESTORATION FOR METHOD OF MANU-
FACTURING PATENTS (NOT USING DNA TECHNOLOGY), INCLUDING THE LIMITATION THAT NO
OTHER TYPE OF PATENT HAS BEEN OR 'MAY BE ISSUED FOR ANY KNOWN THERAPEUTIC PUR-
POSES' CLAIMING THE METHOD OF USING THE PRODUCT.

BY EXCLUDING SO MANY PATENTS FROM ELIGIBILITY FOR TERM RESTORATION AND BY MAKING
THE ELIGIBILITY FOR RESTORATION OF SOME PATENTS TURN ON CIRCUMSTANCES BEYOND THE
CONTROL OF THE INNOVATOR, THE BILL FALLS WELL SHORT OF PROVIDING THE INCENTIVES
FOR INNOVATION THAT IT *76 **2686 PURPORTS TO ACHIEVE.  IT IS NOT NECESSARY, OR
COURSE, THAT EVERY PATENT BE ELIGIBLE FOR EXTENSION IN ORDER FOR REASONABLE IN-
CENTIVES TO INNOVATE TO EXIST.  RATHER, THE BILL SHOULD PROVIDE FOR PATENT TERM
RESTORATION FOR ALL SIGNIFICANT INNOVATIONS, BE THEY IN DISCOVERING NEW CHEMICAL

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                          Page 40
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

ENTITIES, NEW DOSAGE FORMS, NEW USES OR SPECIES OF SUBSTANCES PREVIOUSLY COVERED
BY BROAD GENUS PATENTS.  THE RESTRICTIVE ELIGIBILITY PROVISIONS OF H.R. 3605 MAKE
PATENT TERM RESTORATION A HAPHAZARD AND INFREQUENT EVENT.  INNOVATION IS NOT EN-
COURAGED WHEN THE PROSPECT OF MEANINGFUL PATENT LIFE IS LEFT TO CHANCE AND HAPPEN-
STANCE AND WHEN MOST INNOVATIONS COVERED BY PATENTS WILL NOT BE ELIGIBLE FOR TERM
RESTORATION.
    H.R. 3605 ALSO MAKES OTHER SIGNIFICANT CHANGES TO OUR PATENT LAWS WHICH NEITHER
I NOR THIS COMMITTEE HAVE HAD TIME TO LEARN ABOUT OR CONSIDER.

                          III.   CONCLUSION

    IT IS DISTRESSING AND REGRETTABLE THAT THIS COMMITTEE HAS REPORTED A COMPLEX,
LENGTHY AND HIGHLY SIGNIFICANT PIECE OF LEGISLATION WITHOUT HOLDING HEARINGS IN
EITHER THE HEALTH SUBCOMMITTEE OR IN THE FULL COMMITTEE AND AFTER WHAT CAN ONLY BE
DESCRIBED AS A PRO FORMA MARKUP. IT IS EQUALLY DISTRESSING THAT THIS COMMITTEE RE-
PORTED A CONTROVERSIAL BILL WHICH CHANGES SIGNIFICANTLY OUR PATENT LAWS, AN AREA
WHICH ESCAPES EVEN THE BROAD JURISDICTION OF THIS COMMITTEE.
    I SHARE WITH OTHER MEMBERS THE DESIRE TO RESTORE PATENT LIFE LOST DURING PERIODS
OF REGULATORY REVIEW AND THE DESIRE TO FACILITATE THE APPROVAL OF GENERIC DRUGS.
I OBJECT, HOWEVER, TO THE PRECIPITOUS AND SUPERFICIAL CONSIDERATION OF THE BILL BY
THE COMMITTEE AND TO ITS FAILURE TO PROVIDE FOR AND CONSIDER, THE VIEWS OF ALL
PARTIES AFFECTED BY THE LEGISLATION.
    THOMAS J. BLILEY, JR.

    FN1   21 U.S.C. 355.

    FN2   THE TERM 'LISTED DRUG' IS EXPLAINED IN PARAGRAPH (6) OF NEW SECTION 505(J)
OF THE FFDCA.  GENERALLY, A LISTED DRUG INCLUDES ANY DRUG THAT HAS BEEN APPROVED
FOR SAFETY AND EFFECTIVENESS OR THAT HAS BEEN APPROVED UNDER NEW SUBSECTION (J).

    FN3   48 FED.REG. 2751(1983).

    FN4   ID. AT 2753.

    FN5   ID. AT 2755. 21 C.F.R. 314.2(C) PROVIDES IN PART: 'A PROSPECTIVE APPLICANT
MAY SEEK A DETERMINATION OF THE SUITABILITY OF AN ABBREVIATED NEW DRUG APPLICATION
FOR A PRODUCT THAT THE APPLICANT BELIEVES SIMILAR OR RELATED TO A DRUG PRODUCT
THAT HAS BEEN DECLARED TO BE SUITABLE FOR AN ABBREVIATED NEW DRUG APPLICATION . .
. '

    FN6   ID. AT 2756.  SEE 21 CFR 314.2(F)(4), (5), (6), (7), AND (8).

    FN7   ID. AT 2755.  SEE 21 CFR 314.2(C).

    FN8   ID. AT 2752.

    FN9   ID.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                                      Page 41

H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)

**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**

FN10   21 U.S.C. 321(P).  FOR EXAMPLE, A DRUG MARKETED PRIOR TO 1938 AND UN-
CHANGED IS A 'GRANDFATHERED DRUG' AND THUS NOT WITHIN THE SCOPE OF THE DEFINITION
OF 'NEW DRUG' SET FORTH IN SECTION 201(P) OF THE FFDCA.  ANOTHER EXAMPLE OF A DRUG
OUTSIDE THE SCOPE OF SECTION 201(P) IS A PRODUCT THAT IS GENERALLY RECOGNIZED AS
SAFE AND EFFECTIVE AND THAT HAS BEEN USED TO A MATERIAL EXTENT OR FOR A MATERIAL
TIME.

FN11   21 U.S.C. 352(E)(1)-(4).

FN12   SEE UNTRUE STATEMENTS IN APPLICATION, 21 C.F.R. 314.12(1982).

FN13   THE COMMITTEE RECOGNIZES THAT, IN CERTAIN INSTANCES, THE PATENT OWNER MAY
AGREE WITH THE CERTIFICATION OF THE APPLICANT.  FOR EXAMPLE, WHEN THE APPLICANT
CERTIFIES THAT PATENT NO. 1 IS INVALID AND PATENT NO. 2 IS NOT INFRINGED, THE PAT-
ENT OWNER MAY AGREE WITH THE CERTIFICATION REGARDING PATENT NO. 2.  THEN AN ACTION
FOR PATENT INFRINGEMENT NEED ONLY BE BROUGHT WITH RESPECT TO PATENT NO. 1.

FN14   28 U.S.C. 1407.

FN15   SEE DEFINITION OF BIOAVAILABILITY, 21 C.F.R. 320.1(A)(1982).

FN16   SEE DEFINITION OF BIOEQUIVALENT DRUG PRODUCTS, 21 C.F.R. 320.1(E)(1982).

FN17   THE COMMITTEE RECOGNIZES THAT IN CERTAIN INSTANCES, THE PATENT OWNER MAY
AGREE WITH THE CERTIFICATION OF THE APPLICANT.  FOR EXAMPLE, WHEN THE APPLICANT
CERTIFIES THAT PATENT NO. 1 IS INVALID AND PATENT NO. 2 IS NOT INFRINGED, THE PAT-
ENT OWNER MAY AGREE WITH THE CERTIFICATION REGARDING PATENT NO. 2.  THEN AN ACTION
FOR PATENT INFRINGEMENT NEED ONLY BE BROUGHT WITH RESPECT TO PATENT NO. 1.

FN18   SEE CONFIDENTIALITY OF DATA AND INFORMATION IN A NEW DRUG APPLICA-
TION  (NDA) FILE, 21 C.F.R. 314.14(F)(1)-(4)(1982).

FN19   21 C.F.R. 314.14(F)(5) PROVIDES: '(5) A FINAL DETERMINATION HAS BEEN MADE
THAT THE DRUG MAY BE MARKETED WITHOUT SUBMISSION OF SUCH SAFETY AND/OR EFFECTIVE-
NESS DATA AND INFORMATION.' THE COMMITTEE WAS CONCERNED THAT THIS PROVISION OF THE
REGULATION MIGHT BE INTERPRETED AS PERMITTING THE DISCLOSURE OF SUCH INFORMATION
AND DATA UPON ENACTMENT OF THIS BILL.  THIS IS BECAUSE ALL DRUGS APPROVED FOR
SAFETY AND EFFECTIVENESS PRIOR TO ENACTMENT OF THIS BILL ARE DEEMED LISTED AND
THUS ELIGIBLE FOR CONSIDERATION IN AN ANDA UPON ENACTMENT OF THE BILL. THE COMMIT-
TEE WISHED TO AVOID ANY POSSIBILITY THAT LISTING OF A DRUG UNDER THIS BILL WOULD
BE DEEMED A FINAL DETERMINATION THAT THE DRUG COULD BE APPROVED WITHOUT THE SUB-
MISSION OF SAFETY AND EFFECTIVENESS INFORMATION.

FN20   THE PHRASE 'IDENTICALLY DISCLOSED OR DESCRIBED' IS USED IN 35 U.S.C. 103
TO SET FORTH THE CONDITIONS OF 35 U.S.C. 102.

FN21   UNDER CURRENT LAW, THE 180-DAY TIME PERIOD FOR ACTING ON AN NDA DOES NOT
BEGIN UNTIL THE NDA IS 'FILED,' I.E., IS NEARLY READY TO BE APPROVED BY

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

H.R. REP. 98-857(I)                                                                                          Page 42
H.R. REP. 98-857(I), H.R. Rep. No. 857(I), 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 2647, 1984 WL
37416 (Leg.Hist.)
**(Cite as: H.R. REP. 98-857(I), 1984 U.S.C.C.A.N. 2647)**


FDA.  UNDER H.R. 3605 THE 180-DAY TIME PERIOD FOR ACTING ON AN ANDA BEGINS WHEN
THE ANDA IS SUBMITTED.  A SUBSTANTIAL TIME MAY PASS BETWEEN 'SUBMISSION' AND 'FIL-
ING' WHILE THE APPLICATION IS BROUGHT INTO CONFORMITY WITH FDA'S CRITERIA FOR AP-
PROVAL.

(Note:  1.  PORTIONS OF THE SENATE, HOUSE AND CONFERENCE REPORTS, WHICH ARE
DUPLICATIVE OR ARE DEEMED TO BE UNNECESSARY TO THE INTERPRETATION OF THE LAWS,
ARE OMITTED.  OMITTED MATERIAL IS INDICATED BY FIVE ASTERISKS:  *****.
        2.  TO RETRIEVE REPORTS ON A PUBLIC LAW, RUN A TOPIC FIELD SEARCH
USING THE PUBLIC LAW NUMBER, e.g., TO(99-495))

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.