# EXHIBIT H

**Page 1**

```
 1    IN THE UNITED STATES DISTRICT COURT
 2       DISTRICT OF MASSACHUSETTS
 3   IN RE: NEURONTIN          )
 4   MARKETING SALES PRACTICES  )
 5   & PRODUCT LIABILITY       )
 6   LITIGATION,               )
 7                        ) MDL DOCKET
 8   BULGER vs. PFIZER, et al.,  ) No. 1629
 9                        ) MASTER FILE
10   SMITH vs. PFIZER, et al.,  ) No. 04-10981
11   05-CV-11515-PBS          )
12      SUPERIOR COURT OF THE STATE OF CALIFORN
13            CITY OF LAKE
14   NICOLETTE CRONE, et al.,   )
15         Plaintiffs,  )
16      vs.        ) CV 400432
17   PFIZER, INC., et al.,     )
18         Defendants.  ) .
19          2/4/09  Job No.: 183060
20          9:16 a.m.
21       The videotaped deposition of ROBERT D.
22   GIBBONS, Ph.D., resumed pursuant to adjournment at
23   Suite 533, 506 West Harrison Street, Chicago,
24   Illinois.
```

**Page 2**

```
 1   PRESENT:
 2      LAW OFFICES OF JACK LONDON,
 3      (3701 Bee Cave, Suite 200,
 4      Austin, Texas 78746,
 5      512-478-5858), by:
 6      MR. JACK LONDON,
 7      jlondon@texas.net,
 8          -and-
 9      FINKELSTEIN & PARTNERS, LLP,
10      (463 Robinson Avenue,
11      Newburgh, New York 12550,
12      800-634-1212), by:
13      MR. KEITH L. ALTMAN,
14      kaltman@lawampmml.com,
15          -and-
16      THE LANIER LAW FIRM,
17      (6810 FM 1960 West,
18      Houston, Texas 77069,
19      713-659-5200), by:
20      MR. KENNETH S. SOH,
21      kss@lanierlawfirm.com,
22          appeared on behalf of the Plaintiffs;
23
24
```

**Page 3**

```
 1   PRESENT: (Continued)
 2      SHOOK, HARDY & BACON, L.L.P.,
 3      (2555 Grand Boulevard,
 4      Kansas City, Missouri 6108-2613,
 5      816-474-6550), by:
 6      MS. LORI CONNORS McGRODER,
 7      lmcgroder@shb.com,
 8          appeared on behalf of the Defendants;
 9
10      LAW OFFICES OF STEVEN D. HILLYARD, PC,
11      (345 California Street, Suite 1770,
12      San Francisco, California 94104,
13      415-334-6880), by:
14      MR. GERHARD O. WINKLER,
15          appeared telephonically on behalf of
16          Defendant Raymond D. Jennings, M.D.
17
18   VIDEOTAPED BY:
19      MR. JAMES PIERDZIOCH, Veritext Chicago
20      Reporting Company.
21
22
23   REPORTED BY: ANDREA L. CARTER,
24      Illinois CSR No. 84-3722.
```

**Page 4**

```
 1       THE VIDEOGRAPHER: My name is James Pierdzi[
 2   of Veritext. The date today is February 4th, 2009,
 3   and the time is 9:16 a.m. This deposition is being
 4   held at the Holiday Inn located at 506 West Harrison
 5   Street in Chicago, Illinois.
 6       The captions for this case are Neurontin
 7   Marketing Sales Practices and Products Liability
 8   Litigation in the United States District Court,
 9   District of Massachusetts, and Nicolette Crone, et
10   al. versus Pfizer Incorporated, et al. in the
11   Superior Court of the State of California for the
12   County of Lake.
13       This is the day two deposition of Robert
14   Gibbons, Ph.D. At this time the attorneys will
15   please identify themselves for the record.
16       MR. ALTMAN: Keith Altman on behalf of
17   Nicolette Crone and the Crone plaintiffs.
18       MR. LONDON: Jack London on behalf of the MDL
19   product liability plaintiffs. Also here but out of
20   the room for a moment is Ken Soh also with the
21   plaintiffs' product liability MDL group.
22       MS. McGRODER: Lori McGroder on behalf of
23   Pfizer.
24       MR. WINKLER: Gary Winkler on behalf of
```

**341**

1  MS. McGRODER: Okay. The deposition is over.
2  We are out. You want more time. We are not going
3  to do this. We are not going to pull this game. We
4  are not doing this.
5  MR. LONDON: You are the one pulling the game.
6  MR. ALTMAN: I'm asking him whether -- it says
7  I have produced all materials requested by
8  plaintiffs in their letter of November 12, 2008.
9  MS. McGRODER: Do not answer any more
10  questions. We are finished for today.
11  BY MR. ALTMAN:
12  Q. Are you abiding by her --
13  MR. ALTMAN: Let's call the judge.
14  MS. McGRODER: Call the judge.
15  MR. ALTMAN: You are going to be here -- you
16  are going to miss your flight.
17  MS. McGRODER: You said you are not done
18  anyway. We are going to come back.
19  MR. ALTMAN: Are you going to stipulate that we
20  come back?
21  MS. McGRODER: Not right now.
22  MR. ALTMAN: Then let's call the judge.
23  MS. McGRODER: Go ahead.
24  Let me explain my --

**342**

1  MR. ALTMAN: No, I don't want to hear your
2  position. We are calling --
3  MS. McGRODER: Well, I'm going to explain my
4  position for the record.
5  MR. ALTMAN: We are calling the judge. You
6  have already terminated --
7  MS. McGRODER: For the record --
8  MR. ALTMAN: I'm sorry. You terminated the
9  deposition.
10  MS. McGRODER: For the record --
11  MR. ALTMAN: Lori, did you -- Lori, did you
12  terminate the deposition?
13  MS. McGRODER: -- his declaration says: "I
14  have also produced all materials requested by
15  plaintiffs in their letter of November 12, 2008 on
16  which my co-authors and I relied in preparing the
17  manuscript."
18  The bulk of materials with one exception
19  today are not items on which Dr. Gibbons and his
20  co-authors relied in preparing the manuscript. So
21  for you to insinuate that Mr. Gibbons has been
22  misleading or has been untruthful is improper and
23  inappropriate, and I won't allow it.
24  MR. ALTMAN: It is not a true statement.

**343**

1  MS. McGRODER: It is -- your -- you are -- you
2  are assuming and insinuating, and it's misleading
3  and improper, and I won't allow it.
4  MR. LONDON: Well, we know we don't have the
5  sensitivity analyses. We know we don't have --
6  MS. McGRODER: The sensitivity analyses were
7  not used in preparing the manuscript. They were
8  done after the fact.
9  MR. ALTMAN: Are you kidding? Lori, are you
10  serious? He says he used -- he prepared it in
11  preparing a defense for peer-reviewed publication.
12  You can't seriously stand there and say that the
13  sensitivity analysis have nothing to do with his
14  manuscript.
15  MS. McGRODER: Well, look, did we say we are
16  going to give you the sensitivity analysis? Yes, we
17  did --
18  MR. ALTMAN: No, but you have not --
19  MS. McGRODER: -- he did not -- he did not --
20  he did not prepare the sensitivity analysis and
21  relied on them in preparing his manuscript. His
22  manuscript was submitted on September -- in
23  September of 2008. Those sensitivity analyses were
24  not done before the manuscript was prepared. So a

**344**

1  fortiori his statement is not untrue.
2  MR. LONDON: A fortiori.
3  MS. McGRODER: His statement is not untrue.
4  MR. LONDON: No, his statement --
5  MR. ALTMAN: Lori, I am sure the judge will
6  truly appreciate --
7  MS. McGRODER: You know what, I think this
8  is -- this is a legal argument, and I will not allow
9  him to answer questions where you are telling him
10  that he is lying. It's not --
11  MR. ALTMAN: I didn't suggest that he was
12  lying. What I suggest is it's not a true statement.
13  That does not mean he lied. I never suggested that
14  he lied.
15  MS. McGRODER: There is no difference.
16  MR. ALTMAN: There is a difference.
17  MS. McGRODER: No, there's not.
18  MR. ALTMAN: Yes, there is a difference. There
19  are statements that could be made that are not
20  truthful --
21  MS. McGRODER: Keith, you can ask him a
22  legitimate question --
23  MR. ALTMAN: Lori --
24  MS. McGRODER: -- in this deposition, and we

**696**

1  will conclude it for today. He is not answering
2  that question. That question is improper, and I
3  won't allow him to answer it. If you want to ask a
4  legitimate question, we can continue.
5      MR. LONDON: Well, you are not the judge of a
6  legitimate question. You don't get to call that
7  shot. The rules for that, Lori --
8      MS. McGRODER: You can -- you can criticize my
9  characterization, but he is not answering that
10  question.
11  BY MR. ALTMAN:
12      Q.   Fine. Dr. Gibbons, would you please go
13  in Exhibit 2 to point 3.
14          Would you please read that for the
15  record.
16      MS. McGRODER: Objection, asked and answered.
17  We did this yesterday.
18      MR. ALTMAN: Good, we are going to do it again.
19  BY THE WITNESS:
20      A.   "Plaintiffs demand all documents
21  associated" --
22      Q.   I'm sorry?
23      A.   -- "with retention of Dr. Gibbons by the
24  defendants."

**697**

1      Q.   I'm sorry. On the second page. We are
2  talking about the study now, the bipolar study.
3      A.   "Plaintiffs demand all documents and
4  underlying data that pertain to the aforementioned
5  study, Gibbons, et al. (2008)."
6      Q.   Was there anything in that sentence that
7  says the word relied upon?
8      MS. McGRODER: I object to this question. He's
9  never even seen -- he has never even seen this
10  letter --
11      MR. ALTMAN: Lori --
12      MS. McGRODER: -- this is legal --
13      MR. ALTMAN: Lori, stop coaching the witness.
14      MS. McGRODER: It's not about --
15      MR. ALTMAN: Lori, you are coaching the
16  witness. I have asked him a simple question.
17  BY MR. ALTMAN:
18      Q.   Does the word relied upon exist anywhere
19  in point 3?
20      MR. ALTMAN: The man can read --
21      MS. McGRODER: And I --
22      MR. ALTMAN: -- he is a biostatistician.
23      MS. McGRODER: And I object to you --
24      MR. ALTMAN: That's nice.

**698**

1      MS. McGRODER: -- asking him questions about
2  legal communications --
3      MR. ALTMAN: Lori --
4      MS. McGRODER: -- between you and me.
5      MR. ALTMAN: -- that's fine. He put in his
6  declaration that he complied --
7      MS. McGRODER: I didn't say he couldn't answer
8  the question. Stop your argument and let him answer
9  it. I'm putting my objection on the record.
10      MR. ALTMAN: That's fine. Your objection is
11  noted.
12      MS. McGRODER: If you can answer the
13  question --
14      MR. ALTMAN: Now stop.
15      MS. McGRODER: -- I can make the objection, and
16  he can answer that question.
17  BY MR. ALTMAN:
18      Q.   Dr. Gibbons, does the word relied upon
19  exist anywhere in there?
20      THE COURT REPORTER: Wait one second.
21      MR. LONDON: Are you worn out?
22      THE COURT REPORTER: Okay. Go ahead.
23  BY THE WITNESS:
24      A.   The word relied upon does not exist in

**699**

1  sentence -- in bullet No. 3 on page 2 of Exhibit 2.
2          However, in answering your question, I
3  believe I did a very reasonable job of giving you
4  materials. I know I have not given the raw data
5  files and all of the SAS files, and I understand
6  that there may be a SAS file or two that maybe
7  didn't make it into it, and I apologize for that.
8          It wasn't my intention to do that. I
9  didn't try to trip you up in any way. If you had
10  asked for it prior to this, I would have, you know,
11  made sure that it was there. You could have said to
12  opposing counsel, you know, we are trying to
13  recreate the cmed dataset, and I can't find it in
14  here. Could Dr. Gibbons go back and see if that's
15  being created in another file, and I certainly would
16  have done that, and I would have given it to you.
17          I relied upon the -- and I know that word
18  isn't in here, but I'm just trying to be as honest
19  with you as I can -- the SAS output to build the
20  paper. The paper was submitted. The reference to
21  that paper is the paper that was submitted for
22  publication. It's a part of my academic work. I
23  have been doing further sensitivity analyses, and I
24  will use those -- those antiepileptic data hopefully

Page 735

```
1     IN THE UNITED STATES DISTRICT COURT
2         DISTRICT OF MASSACHUSETTS
3   IN RE; NEURONTIN              )
4   MARKETING SALES PRACTICES     )
5   & PRODUCT LIABILITY           )
6   LITIGATION,                   )
7                                 ) MDL DOCKET
8   BULGER vs. PFIZER, et al.,    ) No. 1629
9                                 ) MASTER FILE
10  SMITH vs. PFIZER, et al.,     ) No. 04-10981
11  05-CV-11515-PBS               )
12      SUPERIOR COURT OF THE STATE OF CALIFORNIA
13              CITY OF LAKE
14  NICOLETTE CRONE, et al.,      )
15          Plaintiffs,           )
16      vs.                       ) CV 400432
17  PFIZER, INC., et al.,         )
18          Defendants.           )
19      3/5/09   Job No.: 191803
20      9:09 a.m.
21      The videotaped deposition of ROBERT D.
22  GIBBONS, Ph.D., Volume III resumed pursuant to
23  adjournment at Suite 2800, 333 West Wacker Drive,
24  Chicago, Illinois.
```

Page 736

```
1   PRESENT:
2       LAW OFFICES OF JACK LONDON,
3       (3701 Bee Cave, Suite 200,
4       Austin, Texas 78746,
5       512-478-5858), by:
6       MR. JACK LONDON,
7       jlondon@texas.net,
8           -and-
9       FINKELSTEIN & PARTNERS, LLP,
10      (463 Robinson Avenue,
11      Newburgh, New York 12550,
12      800-634-1212), by:
13      MR. KEITH L. ALTMAN,
14      kaltman@lawampmmt.com,
15          -and-
16      THE LANIER LAW FIRM,
17      (6810 FM 1960 West,
18      Houston, Texas 77069,
19      713-659-5200), by:
20      MR. KENNETH S. SOH,
21      kss@lanierlawfirm.com,
22          appeared on behalf of the Plaintiffs;
23
24
```

Page 737

```
1   PRESENT: (Continued)
2       SHOOK, HARDY & BACON, L.L.P.,
3       (2555 Grand Boulevard,
4       Kansas City, Missouri 6108-2613,
5       816-474-6550), by:
6       MS. LORI CONNORS McGRODER,
7       lmcgroder@shb.com,
8           appeared on behalf of the Defendants;
9
10      LAW OFFICES OF STEVEN D. HILLYARD, PC,
11      (345 California Street, Suite 1770,
12      San Francisco, California 94104,
13      415-334-6880), by:
14      MS. ELANA GOLD,
15          appeared telephonically on behalf of
16      Defendant Raymond D. Jennings, M.D.
17
18  VIDEOTAPED BY:
19      MR. NICK PAGE, Veritext Chicago
20      Reporting Company.
21
22
23  REPORTED BY: ANDREA L. CARTER,
24      Illinois CSR No. 84-3722.
```

Page 738

```
1       THE VIDEOGRAPHER: My name is Nick Page in
2   association with Veritext National Court
3   Reporting Services. The date today is March 5,
4   2009, and the time is 9:09 a.m.
5       This deposition is being held in the
6   offices of Mandell Menkes, LLC, located at 333
7   West Wacker Drive, Chicago, Illinois. The
8   caption of the case is In Re: Neurontin
9   Marketing and Sales Practices and Product
10  Liability Litigation, Bulger versus Pfizer, et
11  al, Smith versus Pfizer, et al., 05-CV-11515-PBS,
12  MDL Docket No. 1629, Master File No. 04-10981,
13  and in the Superior Court of the State of
14  California, City of Lake, Nicolette Crone, et
15  al., plaintiffs versus Pfizer Incorporated, et
16  al, defendants, No. CV 400432.
17      The name of the witness is Robert
18  Gibbons. This is Volume III. At this time will
19  the attorneys please identify themselves and the
20  parties they represent.
21      MR. ALTMAN: Keith Altman, Finklestein &
22  Partners. I'll be asking questions on behalf of
23  the Crone plaintiffs.
24      MR. LONDON: Jack London, I represent Bulger
```

Gibbons, Robert D PhD (Defense Expert)  3/5/2009 9:09:00 AM

**Page 971**

1  Q. Well, the November 30th bill — I'm
2  not quibbling with you — doesn't say anything
3  about reports, does it?
4  A. Please understand, you know, I'm a
5  university professor. I'm not too good at
6  providing really good descriptions of what I do
7  on these bills, and — and in the past, not by
8  any of the lawyers sitting at this table, I have
9  been counseled in prior litigations in different
10  areas that having exquisitely detailed bills may
11  not be the best plan for litigation-related work.
12  So I haven't been very, very detailed in what I
13  have described in the work and haven't had too
14  many objections.
15  Q. Well, did Ms. McGroder or someone call
16  you after the November bill and say does this
17  include your work on the final report?
18  A. No, I've received no calls from
19  anybody regarding whether any — any other
20  details about my bills.
21  Q. All right. Did Ms. McGroder call you
22  after the October 18th bill and ask whether that
23  would be enough to cover you through the filing
24  of the final report?

**Page 972**

1  MS. McGRODER: Object to form.
2  BY THE WITNESS:
3  A. I never had a conversation with
4  Ms. McGroder regarding my — the contents of my
5  bills or whether I would be billing on any — any
6  area.
7  BY MR. LONDON:
8  Q. These bills or any of the other bills
9  in that exhibit, is that what you are saying?
10  You have submitted them. They have
11  been paid. You have never discussed them with
12  Ms. McGroder?
13  A. That's correct.
14  Q. Okay. Moving forward, the next bill
15  that I find that appears to not have an asterisk
16  is dated September 2, 2008.
17  Do you see that?
18  MS. McGRODER: Did you already talk about
19  the October 5?
20  MR. LONDON: I thought I did.
21  MS. McGRODER: I might have just missed it.
22  MR. LONDON: Okay. We will talk about
23  October 5.
24  THE WITNESS: You are trying to help him

**Page 973**

1  out?
2  MS. McGRODER: Sorry. As soon as I said if,
3  I thought.
4  MR. LONDON: She wants — she want you to
5  come off looking good.
6  BY MR. LONDON:
7  Q. What's the subject of your October 5
8  bill?
9  A. Oh, no, not the October 5 bill.
10  Q. I mean, you charged them $20,000 for
11  40 hours on October 5?
12  A. How could you miss that, Mr. London?
13  Q. It didn't seem like much money, and
14  then you charged them $16,000 13 days later.
15  Apart from that, what do I know about
16  those bills and what you did?
17  A. This was in support of the work on the
18  analysis of the gabapentin cohort, thinking about
19  analyses, performing analyses, reviewing, redoing
20  analyses, a variety of different things.
21  Q. But there's no way — and you told me
22  earlier that you couldn't look at any of your
23  computer screens and reproduce these dates, and
24  now you are telling me there's no way we can look

**Page 974**

1  at time records or e-mails or anything and
2  reproduce what was done on these dates. Is that
3  true?
4  MS. McGRODER: Well, object to form to the
5  extent it misstates his testimony.
6  BY THE WITNESS:
7  A. I don't keep such records, and so, no,
8  I never had them. So there's no way to reproduce
9  them.
10  BY MR. LONDON:
11  Q. And even though you don't keep such
12  records, you are also saying as far as you know
13  there are no such records whether kept by you or
14  anyone else?
15  MS. McGRODER: Object to form.
16  BY THE WITNESS:
17  A. That's correct.
18  BY MR. LONDON:
19  Q. The next bill — unless Ms. McGroder
20  has others that I missed — going further back in
21  time, further toward the front of the document is
22  dated September 2nd, 2008, 80901.
23  Do you see that?
24  A. Which one? I'm sorry.