UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br>Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO:<br><br>*Bulger v. Pfizer Inc., et al.*<br>Case No. 1:07-cv-11426-PBS | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
*IN LIMINE* TO EXCLUDE EVIDENCE OF POST-INCIDENT
REGULATORY ACTIONS, LABELING, AND PATIENT INFORMATION GUIDES**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") respectfully submit this memorandum of law in support of their motion *in limine*, pursuant to Federal Rules of Evidence 401, 402, 403, and 407, to exclude all evidence of and references to Food and Drug Administration ("FDA") regulatory actions related to Neurontin, including labeling, labeling changes, and patient information guides for Neurontin, that were issued after Susan Bulger's death in August 2004. This evidence is irrelevant to the present action because it has no bearing on the issue of the adequacy of Neurontin's warnings at the time it was prescribed to and taken by Mrs. Bulger between 2002 and 2004. Moreover, any marginal probative value of subsequent labeling and patient information guides is far outweighed by the likelihood that they would unfairly prejudice defendants and mislead and confuse the jury. Additionally, this evidence is barred by Rule 407, which prohibits the introduction of such subsequent remedial measures for the purpose of demonstrating liability. Accordingly, all such evidence must be excluded.

## ARGUMENT

I.  **Neurontin's Post-Incident Labeling And Patient Information Guides Are Irrelevant To This Action**

In his pretrial exhibit designations, Plaintiff has included the FDA's April 2009 labeling for Neurontin and documents surrounding this revised label. The April 2009 labeling includes an additional warning about an increased risk of suicidal behavior and ideation based on the FDA's 2008 pooled analyses of data for eleven different antiepileptic drugs. (*See* Exh. A, April 2009 Neurontin Label, at 10.) Evidence about this current label and new warning, issued five years after Mrs. Bulger's death in August 2004, is inadmissible because it is irrelevant to any of Plaintiff's remaining claims. *See Pendleton v. City of Haverhill*, 156 F.3d 57, 64 (1st Cir. 1998) (evidence that is not relevant is not admissible). Plaintiff's claims concern, and challenge, only the adequacy of the warnings at the time Neurontin was prescribed to and taken by Mrs. Bulger (between May 2002 and August 2004).

The FDA's current labeling requirements for Neurontin are not probative of the adequacy of Neurontin's warnings at the time it was prescribed to and ingested by Decedent. Indeed, it is axiomatic that one is not liable for failing to warn of alleged risks that it did not know, and could not have known, through the exercise of reasonable care. *See Anderson v. Owens-Illinois, Inc.*, 799 F.2d 1, 2 (1st Cir. 1986); *see also Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909, 923-24 (Mass. 1998) (rejecting a hindsight analysis of adequacy of warning in products liability cases). Further, evidence of subsequent precautionary measures by a manufacturer "in no way supports an inference that the initial version of the product was defective." *Werner v. Upjohn Co.*, 628 F.2d 848, 857 (4th Cir. 1980).

In addition, evidence of post-2004 labeling and regulatory action does not bear on the issue of causation. As this Court has recognized, "the decision by the FDA to require warnings on a drug label, without more, does not suffice to establish causation" because "the FDA often uses a different standard than a court does to evaluate evidence of causation in a products liability action." (Mem. & Order [1775] at 38-39, May 5, 2009.) Indeed, the FDA may "err on

2

the side of caution," *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1201 (11th Cir. 2002), and take action "upon a lesser showing of harm to the public than the . . . standard used to assess tort liability." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005); *accord Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 991 (8th Cir. 2001) (observing that FDA conclusions are based on a "different standard than the causation standard at issue" in a personal injury action and recognizing that FDA regulatory "balancing" and warnings are "irrelevant in determining the threshold question [of causation]"). Accordingly, this evidence must be excluded as irrelevant.

## II. Neurontin's Post-Incident Labeling And Patient Information Guides Will Mislead The Jury And Unfairly Prejudice Defendants

Evidence of post-2004 regulatory actions, labeling, and patient information guides should also be excluded under Rule 403. "Rule 403 requires the Court to determine whether the jurors will give the testimony more weight than they should, or use it for improper purposes, and whether the likelihood of such prejudice outweighs the evidence's probative value." *United States v. Buchanan*, 964 F. Supp. 533, 535 (D. Mass. 1997) (footnote omitted); *see also Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 504 F.3d 189, 205-06 (1st Cir. 2007) ("[E]ven where the evidence may shed light on the disputed issues, the district judge can find the 'untoward effects of the proffered evidence' to be so weighty that the evidence should be excluded." (citation omitted)).

"At best, subsequent remedial measures are considered marginally probative of prior negligence." *Keller v. United States*, 38 F.3d 16, 31 (1st Cir. 1994). At the same time, evidence of subsequent remedial measures "distracts the jury from the relevant time frame for its inquiry, i.e., whether the product was defective *at the time of manufacture and sale.*" *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1523 (1st Cir. 1991); *accord Grenada Steel Indus., Inc. v. Ala. Oxygen Co.*, 695 F.2d 883, 888 (5th Cir. 1983). The new labeling for Neurontin could not have been seen or relied upon by Mrs. Bulger's doctors in connection with their prescribing it to her, and thus, any discussion of it would distract from the real issues in this case. Further, the jury

3

might be misled to believe that Neurontin's subsequent labeling changes constitute an admission by Defendants that the prior label was inadequate. *See Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 763 (5th Cir. 1989); *see also Lindsay v. Ortho Pharm. Corp.*, 637 F.2d 87, 94 (2d Cir. 1980) ("In view of the control over label terminology exercisable by the FDA, we question whether a change in language should be construed as a voluntary admission by the manufacturer." (citation omitted)).

Moreover, such evidence would cause unfair prejudice to Defendants, because it has an "'undue tendency to suggest [a] decision on an improper basis.'" *Buchanan*, 964 F. Supp. at 535 n.2 (alteration in original; citation omitted). Specifically, the jury could be led to improperly infer medical causation on the basis of the later warning label. Indeed, in *Lindsay*, the Second Circuit concluded that the admission of subsequent labeling changes was "sufficiently damaging to the defendant that the case should be retried in its entirety, *including the medical issue of causal relation*." *Lindsay*, 637 F.2d at 94 (emphasis added). Because these serious dangers of prejudice and jury confusion substantially outweigh any marginal probative value of post-2004 regulatory action or labeling, such evidence must be excluded.

### III. Neurontin's Post-Incident Labeling And Patient Information Guides Are Inadmissible As Subsequent Remedial Measures

Neurontin's 2009 warning label and patient information guides issued after Mrs. Bulger's death are also inadmissible to show liability under Rule 407, which governs evidence of subsequent remedial measures. The Rule provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent remedial measures is not admissible to prove negligence . . . or a need for a warning or instruction.

Fed. R. Evid. 407; *see also Cameron v. Otto Bock Orthopedic Indus., Inc.*, 43 F.3d 14, 17 (1st Cir. 1994) (affirming exclusion, under Rule 407, of "Dear Customer" letters sent by manufacturer of prosthetic leg components that "[a]rguably . . . , if sent earlier, would have prevented [plaintiff's] accident"). Federal courts of appeals have repeatedly held that Rule 407

4

precludes admission of evidence of subsequent changes to a prescription drug's labeling to prove that a prior warning was inadequate. *See, e.g.*, *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 270 n.10 (5th Cir. 2002); *Lindsay*, 637 F.2d at 94; *Werner*, 628 F.2d at 854; *see also Gray v. Hoffman-La Roche, Inc.*, 82 F. App'x 639, 646 (10th Cir. 2003) (finding that a post-incident patient informed consent form in pharmaceutical products liability suit "fit[] squarely within the category of evidence Rule 407 bars"). For instance, in *Stahl*, the plaintiff alleged that he had contracted hepatitis from the defendant's medication, and he proffered a package insert that had been revised after his injury to include further warning about such liver conditions. *See Stahl*, 283 F.3d at 259-60, 270 n.10. The Fifth Circuit held that "[s]uch evidence . . . cannot be considered in evaluating whether the [prior] warning was adequate." *Id.* at 270 n.10; *accord Gerber v. Hoffman-La Roche, Inc.*, 392 F. Supp. 2d 907, 919 (S.D. Tex. 2005). The same result is required here.

Plaintiff cannot obtain admission of this evidence for any alternate purpose permitted by Rule 407. As established above, post-incident labeling changes are not relevant to show causation. Nor may Plaintiff offer this evidence to demonstrate feasibility of a different warning, as feasibility is not disputed here. *See* Fed. R. Evid. 407 ("This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving . . . feasibility of precautionary measures, *if controverted* . . . ." (emphasis added)); *Cameron*, 43 F.3d at 17 (noting that subsequent remedial measures are inadmissible under Rule 407 where feasibility was not in dispute).[1]

---

[1] Plaintiff may argue that Rule 407 poses no bar to evidence of post-incident label changes because the label-change decision was made by the FDA, not by Defendants. This argument was squarely rejected by the Fourth Circuit in *Werner*, on the basis that the FDA "also relies on voluntary compliance and compromise in determining the content of warnings and advertising for prescription drugs." *Werner*, 628 F.2d at 859. Moreover, even if such evidence is not inadmissible under Rule 407, it should nevertheless "be excluded under Fed. R. Evid. 403," where, as here, "its probative value is outweighed by the unfair prejudice that could result." *Raymond*, 938 F.2d at 1524; *see also id.* at 1523 (affirming exclusion of subsequent remedial measures and citing Rule 407's purpose "to avoid unfairly prejudicing the defendant").

5

## **CONCLUSION**

For the foregoing reasons, this Court should exclude all references to and evidence related to the FDA's regulatory actions, labeling, and patient information guides for Neurontin after Mrs. Bulger's death in August 2004.

Dated: June 22, 2009                              Respectfully submitted,

                                                  SKADDEN, ARPS, SLATE,
                                                    MEAGHER & FLOM LLP

                                                  By:    /s/ Mark S. Cheffo
                                                                Mark S. Cheffo

                                                  Four Times Square
                                                  New York, NY 10036
                                                  Tel:  (212) 735-3000

                                                            -and-

                                                  BOIES, SCHILLER & FLEXNER LLP

                                                  By:    /s/ William S. Ohlemeyer
                                                                 William S. Ohlemeyer

                                                  333 Main Street
                                                  Armonk, NY 10504
                                                  Tel: (914) 749-8200

                                                            -and-

                                                  SHOOK, HARDY & BACON L.L.P.

                                                By:    /s/ Scott W. Sayler
                                                                 Scott W. Sayler

                                                  2555 Grand Blvd.
                                                  Kansas City, MO 64108-2613
                                                  Tel:  (816) 474-6550

                                                            -and-

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on June 22, 2009.

/s/ David B. Chaffin
David B. Chaffin