UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
                                                            :   MDL Docket No.: 1629
In re:  NEURONTIN MARKETING,                                :
        SALES PRACTICES AND                                 :   Master File No.: 04-10981
        PRODUCTS LIABILITY LITIGATION                       :
                                                            :   Judge Patti B. Saris
------------------------------------------------------------x
                                                            :   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                   :
                                                            :
*Bulger v. Pfizer Inc.,* 1:07-11426-PBS                     :
                                                            :
------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE
TO PRECLUDE ANY EVIDENCE PROFERRED BY DEFENDANTS AT
TRIAL THAT ANY DRUG OTHER THAN NEURONTIN CAUSED OR WAS
ASSOCIATED WITH PLAINTIFF'S DECEDENT SUSAN BULGER'S SUICIDE**

Plaintiff RONALD J. BULGER, SR., (hereinafter "Plaintiff"), as Administrator of the Estate of Susan Bulger, deceased, by and through his attorneys, The Lanier Law Firm, P.L.L.C. and Finkelstein & Partners, LLP, respectfully requests that the Court preclude any evidence, testimony, comments, documents, references to or inferences, proffered by Defendants PFIZER INC. and WARNER-LAMBERT COMPANY LLC, (hereinafter "Defendants"), at trial, that any other medication and/or drug that Plaintiff's decedent Susan Bulger ingested prior to her suicide, other than the drug Neurontin at issue in this case, caused or was associated with suicide, on the grounds that such evidence and testimony is unreliable, irrelevant, highly prejudicial, and will confuse, mislead and inflame the jury.

As demonstrated below, such evidence must be excluded under Fed. R. Evid. 401, 402 and 403, as irrelevant and inadmissible, and because their probative values are outweighed by the

risk of undue prejudice, confusion of issues, misleading the jury, undue delay, and waste of time. Further, the admission of such evidence is precluded by Fed. R. Evid. 702 as unreliable.

**ARGUMENT**

Plaintiff anticipates that Defendants will offer testimony and argue at trial that Plaintiff's decedent Susan Bulger's ingestion of medications and drugs other than Neurontin caused, contributed to or were associated with her suicide. This evidence does not satisfy the relevance requirements of Fed. R. Evid. 401, would create unfair prejudice and is therefore inadmissible under Fed. R. Evid. 403. Such evidence is also not sufficiently reliable to meet the standards for expert testimony as provided by Fed. R. Evid. 702.

The Federal Rules of Evidence provide the proper standard for the admission of expert scientific testimony in a federal trial. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 585 (1993), and its progeny. Fed. R. Evid. 702 assigns to the trial judge the responsibility for ensuring that an expert's testimony as to scientific, technical or other specialized knowledge both rests on a reliable foundation and is relevant to the issue at hand. *McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 422-23 (D. Mass. 2008). To fulfill this gatekeeping role, the trial judge must determine whether the expert possesses some specialized knowledge such that his or her testimony will be helpful to the trier of fact, and, if so, whether that knowledge arises from reliable principles and methods applied in a reliable manner. *Id.* at 423.

Fed. R. Evid. 702, which governs the admissibility of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, *and* (3) the witness has applied the principles and methods reliably to the facts of the case.

Thus, pursuant to Fed. R. Evid. 702, there are primarily three requirements: (1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). Here, Plaintiff does not challenge the qualifications of Defendants' proffered expert witnesses; rather Plaintiff asserts that the proffered or otherwise anticipated testimony is irrelevant and is not the product of reliable principles and methods. *See McGovern*, 584 F. Supp. 2d at 423.

Plaintiff objects to the potential testimony and evidence that the drugs Plaintiff's decedent took other than Neurontin caused her suicide because Defendants have provided absolutely no reliable, scientific evidence or expert disclosure of any kind to support such a conclusion. In addition to disputing a plaintiff's affirmative showing of causation, a defendant may present evidence showing that some other cause accounts for the injury. *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248, 252 (1st Cir. 1998). "Of course, a claim of alternative causation is not a free ticket to admission of evidence; an alternative causation theory could be incoherent or irrational, or the evidence supporting it inadmissible." *Id*.

To be admissible, evidence must be relevant. Fed. R. Evid. 401; *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d at 252. Relevant evidence is defined as evidence which may tend to prove or disprove a material fact that is of consequence to the determination of the action. Fed. R. Evid. 401. Further, Fed. R. Evid. 403 provides that "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." At issue here is whether Neurontin caused or contributed to Plaintiff's

decedent's suicide; evidence or testimony about other drugs will confuse, mislead and inflame the jury, unduly prejudicing Plaintiff's case, and therefore should be excluded.

**A.     Anthony J. Rothschild, M.D.'s Report and Testimony.**

Dr. Rothschild, a certified specialist in psychiatry, provided an expert report for Defendants wherein he opines that there is no reliable scientific evidence to support the conclusion that Neurontin causes or contributes to suicidal ideation or behavior.[1]  He indicates that there are no published epidemiological studies and no placebo controlled randomized trials or controlled studies that show or even hint at an association between Neurontin and suicide.  Ex. A at 29.  Dr. Rothschild bases his opinion on his own clinical experience, education and training in psychiatry and the use of Neurontin in patients with bipolar disorder, anxiety, social phobia and chronic pain, as well as the literature and materials that he reviewed and referenced in his report.  Ex. A at 37.  Clearly, Dr. Rothschild did not employ any reliable method or principle to conclude that any other drug caused or is associated with suicide.

At his deposition on January 15, 2008, Dr. Rothschild testified that there is no evidence that a pharmacological agent can transition a non-suicidal person to becoming suicidal.[2]  He indicated that "that is not the accepted opinion of the medical and scientific community…"  Ex. B, Jan. 15, 2008 Dep. at 68:2-25.  Further, when Dr. Rothschild was deposed on December 4, 2008, and was asked if there is any drug that he is aware of that can cause or contribute to suicide, his response was "No."  Ex. B, Dec. 4, 2008 Dep. at 33:24-34:2.  Thus, Dr. Rothschild has essentially testified that there is no reliable medical or scientific evidence that any drug can lead to suicide.  He must therefore be precluded from testifying that any of the other drugs that Plaintiff's decedent took caused or contributed to her suicide.

---

[1] *See* Rothschild December 19, 2007 Report, p. 2, attached to Declaration of Andrew G. Finkelstein as Exhibit A.

[2] *See* Rothschild January 15, 2008 Dep., pp. 65-68, and December 4, 2008 Dep., pp. 33-36, Finkelstein Decl. Ex. B.

4

**B.      Douglas G. Jacobs, M.D.'s Report and Testimony.**

Similarly, Defendants' expert psychiatrist Dr. Douglas Jacobs also opines, based upon his education, training, experience and review of the literature, that it is not generally accepted in the scientific or medical community that Neurontin is associated with, or that it can cause or contribute to, suicidality.[3]  At his deposition on January 23, 2008, Dr. Jacobs testified that he has not seen evidence that any drug can cause any psychiatric adverse event.[4]  Ex. D, Jan. 23, 2008 Dep. at 8:20-25.  He further attested that he has reviewed a number of medications, and has spent close to 35 years in the field of suicide, and that he has not seen any evidence that any medication causes suicide, suicide attempts or suicide ideation.  Ex. D, Jan. 23, 2008 Dep. at 12:5-13.

At his continued deposition, Dr. Jacobs again confirmed his opinion that he does not believe that a drug can cause suicide.  Ex. D, Dec. 2, 2008 Dep. at 42:16-43:1.  Finally, Dr. Jacobs testified that he has appeared in matters involving the drugs Accutane, Wellbutrin, Prozac and Zoloft (i.e., serotonergic drugs) and has never provided testimony or opinion in any case wherein he concluded that a drug did, in fact, contribute to or cause suicide.  Ex. D, Jan. 15, 2009 Dep. at 68:14-69:15.

**C.      Gerard Sanacora, M.D.'s Report and  Testimony.**

Again, Dr. Gerard Sanacora, a psychiatrist and neuropsychopharmacologist, provided a defense report wherein he opines that there is no scientific evidence to suggest that the risk of suicide is increased in patients using Gabapentin, and that, absent an association between Gabapentin use and suicidality, it is not possible to draw the conclusion that Gabapentin is

---

[3] *See* Jacobs Dec. 20, 2007 Report, pp. 2-3, Finkelstein Decl., Ex. C.

[4] *See* Jacobs Jan. 23, 2008 Dep., pp. 8, 12, Dec. 2, 2008 Dep., pp. 41-44, and Jan. 15, 2009 Dep., pp. 68-71, Finkelstein Decl. Ex. D.

causally associate with suicidal behavior.[5]  Dr. Sanacora bases his opinion upon information gained through his medical and scientific education and training, his "professional familiarity with the medical and scientific literature germane to the subject matter," his discussions with colleagues and his research and clinical experience.  Ex. E. at 1.  Additionally, at his deposition on January 18, 2008, Dr. Sanacora attested that there is no reliable scientific evidence that Neurontin has any affect on any aspect of brain function that causes depression or suicidal behavior.[6]  Ex. F at 183:10-14.

Dr. Sanacora also was unable at his deposition to explain a biologically plausible way that SSRI drugs (i.e., serotonergic drugs) could cause suicidality, and testified that he was "on the fence" as to whether SSRI had the capacity to cause suicidality.  Ex. F at 84:2-22.  Dr. Sanacora explained that he was "not convinced" of a known mechanism of action with SSRI drugs leading to suicidality.  Ex. F at 85:11-22.

The trial court has broad discretion in determining issues of admissibility of expert testimony and scientific evidence.  *Baker v. Dallon Shield Claimants* Trust, 156 F.3d at 251.  It is apparent that Defendants' experts have provided sworn testimony and executed written reports wherein they do not find that any drug causes, contributes to or is associated with suicide.  To permit any of Defendants' experts to testify or to offer evidence or to even infer that any of the other drugs that decedent took led to her suicide would not be reliable, as none of the experts has ever promulgated such a causal connection, nor have they provided the scientific validity for this theory.  If permitted to proffer this testimony or evidence, their opinions would be based on subjective belief or unsupported speculation, which renders it inadmissible under the Federal Rules of Evidence.  *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3rd Cir. 1994).

---

[5] *See* Sanacora Dec. 20, 2007 Report, p. 2, Finkelstein Decl., Ex. E.

[6] *See* Sanacora Jan. 18, 2008 Dep., pp. 181-184, Finkelstein Decl., Ex. F.

Clearly, an expert cannot establish that a fact is generally accepted merely by saying so. *McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d at 425, *citing Grimes v. Hoffmann-La Roche, Inc.*, 907 F. Supp. 33, 38 (D.N.H. 1995).

Significantly, if such testimony is permitted by the Court, Plaintiff will be unduly prejudiced. Plaintiff's experts are prepared to testify that the drug Neurontin causes suicide and caused Susan Bulger to commit suicide. Plaintiff's experts would be severely prejudiced if compelled to refute unsubstantiated testimony that drugs other than Neurontin cause suicide, especially when all of Defendants' experts have testified that no drug can cause suicide, and the exchange of discovery is complete. *See* Finkelstein Decl., Exs. A-F.

## **CONCLUSION**

Plaintiff therefore respectfully requests an order prohibiting Defendants from arguing or offering testimony, evidence, comments, references to or inferences that Plaintiff's decedent Susan Bulger's ingestion of medications and drugs other than Neurontin caused or was associated with or contributed to her suicide.

Dated: June 22, 2009                                                  Respectfully submitted,

By:     **/s/ W. Mark Lanier**
    W. Mark Lanier, Esquire
    THE LANIER LAW FIRM, P.L.L.C.
    126 East 56th Street, 6th Floor
    New York, NY  10022

By:     **/s/ Andrew G. Finkelstein**
    Andrew G. Finkelstein, Esquire
    FINKELSTEIN & PARTNERS, LLP
    1279 Route 300, P.O. Box 1111
    Newburgh, NY  12551

*Attorneys for Plaintiff Ronald J. Bulger, Sr.*

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on June 22, 2009.

                                            **/s/ Andrew G. Finkelstein**
                                              Andrew G. Finkelstein, Esquire