UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| | Magistrate Judge Leo T. Sorokin |
| *Bulger v. Pfizer Inc., et al.* Case No. 1:07-cv-11426-PBS | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF DAN BROCK

Defendants, Pfizer Inc and Warner-Lambert Company LLC (collectively "Pfizer"), respectfully submit this memorandum in support of their motion to exclude the testimony of Dan Brock.

### INTRODUCTION

Plaintiff has designated Dan Brock, Ph.D., a professor of philosophy and self-described "philosopher," as a purported expert in "ethics" to offer "ethical assessments" and "moral judgment" about the FDA's and Pfizer's conduct with respect to Neurontin based on nothing more than a review of a limited set of documents selected by Plaintiff's counsel and an assumption that all of Plaintiff's allegations are true. As discussed below, this is not proper expert testimony, or even proper lay testimony for that matter. Accordingly, Pfizer requests that the Court exclude Professor Brock from testifying in this matter.

Professor Brock's testimony is improper and should be excluded for several reasons. First, Professor Brock's ethics opinions are wholly irrelevant under Federal Rule of Evidence 702, because "ethics" is not a proper subject for expert testimony. To the extent Professor Brock is being proffered on issues of ethical or legal duties or other opinions as to what the FDA or pharmaceutical companies "should do," his testimony invades the province of the Court and creates a danger of excessive confusion as to the legal standards to be applied in a products

liability case such as this. Plaintiff simply cannot use Professor Brock to circumvent the province of this Court and to impose on the jury his personal definitions of the FDA's and Pfizer's legal obligations. Only this Court can instruct the jury on Pfizer's legal duties. Nor can Plaintiff invade the province of the jury by using Professor Brock to speculate about Pfizer's motives or intentions or to opine that Pfizer violated its legal obligations. Therefore, Professor Brock's opinions in this regard are irrelevant to this action and do not fit the issues to be determined in this case.

Second, Professor Brock's testimony does not satisfy the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Professor Brock has a bachelor's degree in economics and a Ph.D. in philosophy. He has received no medical training, has never prescribed a medication, and has no training in the design, development, manufacture, scientific research, marketing, or labeling of drugs. Likewise, he has no experience or expertise in the regulations or industry standards governing the design, development, manufacture, research, marketing, or labeling of drugs. Professor Brock is not qualified to testify regarding subject matters such as FDA regulations, standards of conduct within the pharmaceutical industry or the adequacy of pharmaceutical labeling. Further, his testimony is pure conjecture derived from an unscientific, unreliable "methodology."

Essentially, Plaintiff seeks to use Professor Brock as a "super-fact witnesses"; that is, to act as a document prop to put documents which speak for themselves and about which he has no personal knowledge in front of the jury, to summarize Plaintiff's allegations and arguments, to draw conclusions about Pfizer's motives, to express his ethical judgments about Pfizer's alleged conduct, and to make other argumentative statements in support of Plaintiff's allegations. However, Professor Brock is neither a fact witness nor an expert. He is another advocate in the room whom Plaintiff seeks to present from the witness box rather than the attorney's podium. For all the reasons discussed below, the Federal Rules do not permit such testimony and it should be excluded.

## ARGUMENT

### I. PROFESSOR BROCK'S OPINIONS ARE IRRELEVANT AND UNFAIRLY PREJUDICIAL

#### A. Professor Brock's Testimony Invades The Province Of This Court And The Jury And Is Irrelevant To The Disputed Issues In This Case

Through the testimony of Professor Brock, Plaintiff seeks to usurp this Court's function of instructing the jury regarding the relevant legal duty. However, it is beyond doubt that expert witnesses may not testify as to issues of domestic law. As the First Circuit has explained:

> It is black-letter law that "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony, and we now join them as to the general rule.[1] . . . .
>
> In our legal system, purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge. Accordingly, expert testimony on such purely legal issues is rarely admissible. As the Second Circuit has noted, "The danger is that the jury may think that the 'expert' in the particular branch of the law knows more than the judge – surely an impermissible inference in our system of law."

*Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (citations omitted) (footnote added); *see also Pelletier v. Main St. Textiles, LP*, 470 F.3d 48, 54 (1st Cir. 2006) ("[I]t is the judge's role, not a witness's, to instruct the jury on the law.").[2]

Accordingly, testimony on issues of law will not provide useful and proper assistance to the trier of fact and, therefore, is not admissible under Rule 702. *See Nieves-Villanueva*, 133

---

[1] Citing *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-14 (D.C. Cir. 1997); *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 197-98 (5th Cir. 1996); *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994); *Aguilar v. Int'l Longshoreman's Union Local #10*, 966 F.2d 443, 447 (9th Cir. 1992); *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988) (en banc); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977).

[2] *Accord Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) ("[I]t is the responsibility – and the duty – of the court to state to the jury the meaning and applicability of the appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law."); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("The Advisory Committee notes [to Federal Rule of Evidence 704] make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is [Rule 704] intended to allow a witness to give *legal* conclusions.").

F.3d at 100. "This is because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial." *Id.* "'Each courtroom comes equipped with a "legal expert," called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.'" *Id.* (citation omitted).

Plaintiff cannot avoid this prohibition against legal experts by characterizing Professor Brock as an "ethics" expert. Professor Brock's opinion as to Pfizer's ethical duty is not relevant to any issue in this case. The relevant question in this case is whether Pfizer breached an established legal duty to Plaintiff. *See In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *9 (E.D. Pa. Feb. 1, 2001). Plaintiff's attempt to cast Professor Brock in the role of "ethics" expert does not cure the problem recognized by the First Circuit in *Nieves-Villanueva*, it **compounds** it. Not only does Professor Brock purport to instruct the jury as to Pfizer's duty, he intends to do so in a way wholly untethered by the applicable legal standards. *See id.* at *18 (excluding testimony from an expert regarding a manufacturer's duty to warn that was contrary to the learned intermediary doctrine and observing that the testimony did not constitute "an 'expert' opinion, but rather a personal opinion about what standards [the proposed expert] believes should apply to pharmaceutical company conduct").

Indeed, ethics testimony similar to that proposed by Professor Brock has been excluded in several prescription medication MDL litigations. For example, in *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004), the court excluded the opinions of ethics experts, explaining:

> The principal issues here are whether the defendants breached their legal duties to the plaintiffs in the manufacturing, labeling and marketing of Rezulin and, if so, whether any such breaches were proximate causes of injury. While the defendants may be liable in the court of public opinion, or before a divine authority for any ethical lapses, expert opinion as to the ethical character of their actions simply is not relevant to these lawsuits.

*Id.* at 544. The court further rejected the plaintiffs' argument that the opinions were relevant to the applicable negligence standard, noting that such an argument "disregards the principle that expert opinions that would encroach on the role of the trial judge in instructing the jury as to the

applicable law are inadmissible." *Id.* at 544 n.6. The court likewise excluded the testimony of another expert "concerning the rights of patients or the duties of pharmaceutical companies" because such opinions "embrace[d] ultimate questions of law outside the province of an expert." *Id.* at 557; *see also In re Baycol*, 532 F. Supp. 2d at 1067 (excluding the testimony of a proposed expert on the issue of whether the defendant acted ethically, finding that the expert opinion was nothing more than a "legal argument that does not qualify as expert testimony under Rule 702"); *In re Diet Drugs*, 2001 WL 454586, at *18 (excluding testimony of proposed expert's personal belief as to scope of the defendant's duty to warn).[3]

In addition to impermissibly usurping the role of the court to instruct the jury as to Pfizer's legal duty, "ethics" testimony, such Professor Brock's opinions in this case, is inflicted with numerous other infirmities that render it inadmissible. As numerous courts have observed, such evidence is personal, subjective, standardless, and has no place in a court of law. *See Harnett v. Ulett*, 466 F.2d 113, 118 (8th Cir. 1972) (excluding ethics expert testimony because "it invaded the province of the jury," had "no clear cut standards," and it "was the expression of personal opinion rather than that of an expert"); *see also In re Baycol*, 532 F. Supp. 2d at 1053 (holding that "[p]ersonal views on corporate ethics and morality are not expert opinions"); *In re Rezulin*, 309 F. Supp. 2d at 543 (excluding ethics testimony on the grounds that it was "based on [the proposed experts'] personal, subjective views"). Rule 702's reliability requirement demands that the expert's opinion be based on the methods and procedures of science, rather than on subjective belief or unsupported speculation; as explained by the Supreme Court, scientific validity ensures evidentiary reliability. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993); *see also Sutera v. Perrier Group of Am. Inc.*, 986 F. Supp. 655, 661 (D. Mass. 1997).

---

[3] *Cf. Dibella v. Hopkins*, No. 01 Civ. 11779(DC), 2002 WL 31427362, at *3 (S.D.N.Y. Oct. 30, 2002) (excluding expert on business ethics and noting that "expert testimony 'must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it'" (citation omitted)).

Indeed, in a striking illustration as to why courts routinely exclude ethics testimony due to its inherently subjective nature, Professor Brock could not articulate what the FDA's ethical duty to the public might be and how the FDA might fulfill this duty:

> Q: You testified earlier that until very recently the FDA was failing in its ethical obligation to the public with respect to Neurontin. What were you referring to when you said "until very recently?"
>
> A: To the steps they took this, I guess this past summer to provide an indication on, I guess it's on the – this is post my, all post my – but to provide an indication to physicians about this risk.
>
> Q: When you say "this risk," to what are you referring?
>
> A: The risk of suicidal ideation, behavior, and completed suicide. I don't remember what exactly their phrasing was. As I say, that step was taken substantially after I prepared my report.
>
> Q: Is it your opinion today that the FDA has now fulfilled its ethical duties?
>
> A: I think that's a very difficult question. I don't have a clear answer to that. It has certainly taken a step in the right direction in my view.
>
> Q: What else would the FDA need to do to fulfill its ethical duty to the public with respect to Neurontin?
>
> A: I'm not sure. I don't – I'm not an expert with regard to exactly what steps the FDA should take. ***Among other things, that's a matter of law on which I'm not an expert.***

(Exh. A, Brock Dep. at 118:24-120:5 (emphasis added).)

Further, just as any testimony by Professor Brock regarding Defendants' duty invades a realm occupied solely by this Court, his speculations about Defendants' state of mind, intentions, and motivations[4] impermissibly usurp the role of the jury. *See In re Rezulin*, 309 F. Supp. 2d at 546. Simply put, "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *Id.* at 547; *see also In re Baycol*, 532 F. Supp. 2d at 1067 ("Bayer's motives as to how it proceeded with evaluating Baycol's toxicity, and its reactions to its toxicologists's warnings are issues that can be decided by the jury, without expert

---

[4] Exh. B, Brock Report, at 3-4 (speculating about what Defendants knew or understood at given times); *id.* at 5, 9, 13 (speculating about Defendants' motivations in marketing Neurontin).

assistance."); *In re Diet Drugs*, 2001 WL 454586, at *7 ("[T]estimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury.").

Ultimately, such testimony is simply not helpful to the trier of fact. As the *Rezulin* court explained:

> At their core, however, the witnesses' opinions regarding ethical standards for reporting or analyzing clinical trial data or conducting clinical trials articulate nothing save for the principle that research sponsors should be honest. Even if charitably viewed as a "standard," the testimony nevertheless is "so vague as to be unhelpful to a fact-finder."

309 F. Supp. 2d at 543 (footnote omitted) (citation omitted). The testimony Professor Brock would offer is analytically indistinguishable from the cases discussed above. Testimony about ethics would serve no purpose but to invade both the province of this Court in defining Defendants' duties as a matter of law and the province of the jury as to whether Defendants fulfilled their legal obligations, and does not "fit" the issues of this case. Accordingly, such testimony must be excluded.

### B.     Professor Brock's Opinions are Inadmissible Under Rule 403

As discussed above, such testimony is wholly lacking in probative value and is irrelevant to the determination of any issue in this case. Instead, such testimony is clearly calculated to induce the jury to render a verdict on an emotional and improper basis. Professor Brock admitted at his deposition that he was unfamiliar with the plaintiff in this case and that his purpose in this litigation is to testify as to Defendants' "badness":

> Q:   You said, you previously testified the last page are your notes from yesterday's meeting?
>
> A:   Yes. Goals of the deposition. I was informed about the multi-district litigation, track one, and I guess the two other cases which I guess are Bulger and Smith. That was the first time I had heard of Bulger and Smith.
>
> Issues of general causation, and then issues of badness. Badness referring to what I might testify with regard to, but not general causation. And then three big issues.

> Q: So your goal would be to testify to badness?
>
> A: Badness was an abbreviation for the ethical evaluation. I take it unethical behavior could loosely be characterized as bad. . . .

(Exh. A at 146:14-147:6.)

Any tangential relevance that Plaintiff might conjure up for such testimony is outweighed by the risk that Plaintiff will "confuse the trier [of fact] by introducing the 'expert['s]' opinions and rhetoric concerning ethics as alternative and improper grounds for decision on bases other than the pertinent legal standards." *See In re Rezulin*, 309 F. Supp. 2d at 545. The proper question before the jury is whether Defendants fulfilled their *legal duties*, not "ethical duties." The distinction between purported "ethical duties" and the controlling legal duties the jury must address will likely be lost on the jury. Thus, Professor Brock's testimony should also be excluded under Rule 403.

## II. PROFESSOR BROCK IS NOT QUALIFIED TO RENDER THE OPINIONS FOR WHICH HE HAS BEEN DESIGNATED AND HAS NOT UNDERTAKEN ANY RELIABLE METHODOLOGY TO SUPPORT HIS OPINIONS

Plaintiff cannot avoid the problems inherent in Professor Brock's opinions discussed above by seeking to characterize them as opinions on the relevant standard of care and Defendants' compliance with that standard. Initially, a review of Professor Brock's report makes clear that his opinions are not tied to any industry or government standard, but his own personal and subjective philosophy about what is ethical. Under similar circumstances, the *Rezulin* court unequivocally rejected an essentially identical argument. *See* 309 F. Supp. 2d at 558 (rejecting argument that the testimony "merely set[] forth the 'standards of conduct within the medical community,'" noting that the expert's opinions on patient rights were "at best thinly-disguised legal or quasi-legal principles").

Moreover, Professor Brock patently lacks any qualifications that would allow him to opine on the relevant standard of care in this case. Throughout his report, Professor Brock offers opinions regarding subjects that even he concedes are beyond his area of expertise: drug labeling and regulatory conduct; the risks and benefits of Neurontin; and decisions made by

prescribing physicians. (Exh. B at 12-13.) These opinions should be precluded because they are speculative and unreliable.

### A. Professor Brock Does Not Have The Expertise To Opine On The Adequacy Of Defendants' Labeling And Regulatory Conduct

Throughout his report Professor Brock criticizes Defendants for not warning physicians and patients about depression and suicidal behavior. (Exh. B at 3-4.) He similarly offers opinions regarding Defendants' adherence to legal regulations. (*Id.* at 6-7, 11-13.) Professor Brock also offers opinions regarding the appropriateness of the FDA's decisions in approving Neurontin and criticizes the agency for not fulfilling its obligations. (*Id.* at 5, 10-13.) Professor Brock goes even further by making statements about Neurontin's pharmacological properties and effects on neurotransmitters. (*Id.* at 11.) According to Professor Brock, the FDA and Pfizer had a duty to monitor and warn about Neurontin's risks given the medication's effects on neurotransmitters like GABA, serotonin, and "neuropinephrine [sic]." (*Id.*)

FDA practices and procedures concerning product warnings, "Dear Doctor" letters, and agency investigations are governed by extensive regulations that Professor Brock admits are outside his expertise. Indeed, Professor Brock conceded at his deposition that he has no expertise in interpreting FDA regulatory guidelines and regulations:

> Q: Do you consider yourself an expert in FDA regulations regarding the development or marketing of pharmaceutical products?
>
> A: No.

(Exh. A at 71:11-14.) Likewise, Professor Brock admitted that he has no expertise or experience with drug development, testing, safety surveillance, adverse event monitoring, or label drafting and evaluation. (*Id.* at 66:8-72:5.)

Professor Brock is not a physician, and thus has no expertise in the medical specialties that would qualify a witness to testify about the accuracy and appropriateness of warning labels, the medical significance of adverse-event data, or the mechanism of action and risks of Neurontin. Accordingly, these opinions should be precluded. *See In re Diet Drugs*, 2001 WL

454586, at *9-10 (excluding the failure-to-warn opinions of purported medical ethics expert because although the proposed expert was a clinical physician with extensive post-doctoral education in clinical medical ethics, he had no expertise in the applicable legal standards or the process of determining a label's content).

### B. Professor Brock Lacks The Expertise To Opine Upon The Risks And Benefits Of Neurontin

Throughout his report, Professor Brock offers opinions regarding Neurontin's efficacy, risk, and risk-benefit ratio. (Exh. B at 3, 4, 10-13.) Professor Brock also offers opinions regarding Neurontin's efficacy for treating various disorders, including whether Neurontin was an appropriate treatment for patients with neuropathic pain, anxiety, bipolar disorder, epilepsy, etc. (*Id*. at 5-7, 9, 12-13.) It is inappropriate for Professor Brock to offer these opinions, which relate to material issues of dispute in this litigation, as Professor Brock is not a physician, has never treated a patient, has never prescribed a medication, and has no medical or pharmacological training or experience whatsoever. (Exh. A at 66:8-24.) Such testimony is entirely speculative in light of Professor Brock's admitted lack of expertise in this area, and it is inadmissible under Rule 702. *See In re Rezulin*, 309 F. Supp. 2d at 558-59.

### C. Professor Brock Lacks The Expertise To Opine About Decisions Made By Prescribing Physicians

Professor Brock speculates as to why physicians prescribed Neurontin, positing that Defendants' "illegal and unethical promotion of Neurontin for non-approved uses" influenced the behavior of prescribing physicians because these promotional efforts "typically and deliberately diverted patients from alternative treatments whose safety and efficacy had been established, and thereby led to their use of non-optimal treatments with fewer expected benefits for their condition." (Exh. B at 13.)

This testimony should be excluded. As an initial matter, Professor Brock's testimony is simply a variant on Plaintiff's fraud-on-the-market theory, which this Court has rejected. (*See* Mem. & Order [1790] at 26-29, May 26, 2009.) Accordingly, his testimony is irrelevant and

should be excluded.[5] In addition, Professor Brock's opinions regarding Defendants' influence over physicians' prescribing practices is in part speculation about Defendants' state of mind, intentions, and motivations. As discussed *supra*, testimony pertaining to corporate intent is inadmissible and not a proper subject for expert testimony. *See In re Rezulin*, 309 F. Supp. 2d at 546.

Moreover, Professor Brock is not qualified to render opinions regarding what does or does not influence a physician in prescribing drugs for her patients. As the *In re Rezulin* court noted when ruling to exclude similar expert testimony, the clear import of Professor Brock's opinions is that physicians would not have prescribed Neurontin had Pfizer provided different information to physicians. Both the *Rezulin* and *Diet Drugs* courts found that similar testimony was beyond the scope of the witnesses' expertise and inherently speculative. *See In re Rezulin*, 309 F. Supp. 2d at 557 (excluding as speculative expert's testimony as to whether physicians would have prescribed Rezulin if different information about Rezulin had been available); *In re Diet Drugs*, 2001 WL 454586, at *18 (ruling that expert was "not qualified to opine on what decisions would have been made by the numerous physicians who prescribed diet drugs had they been provided with different labeling information" and reasoning that "his surmising as to what physicians would do with different information is purely speculative and not based on scientific knowledge").

In addition to Professor Brock's opinions being speculative, he is even less qualified than the experts who were excluded by the *Rezulin* and *Diet Drug* courts. The excluded experts in those cases were at least physicians who had treated patients and had experience with prescribing medications. Professor Brock, on the other hand, is neither a physician nor a clinician. He has never treated a patient, let alone prescribed a medication or made a risk-benefit assessment for prescribing a medication. (Exh. A at 66:8-24.) Professor Brock admitted at his deposition that

---

[5] *See* Defendants' Motion *in Limine* to Exclude Evidence of Marketing or Advertising Materials and Conduct, David Franklin and the *Franklin* Litigation, and Other Claims or Actions.

there "is no end" to the factors a physician could consider in deciding whether to prescribe a given drug, such as continuing medical education courses, insurance company formularies, and the safety profile of the drug. (*Id.* at 179:12-180:21.) Simply put, Professor Brock is not qualified to testify to issues regarding the risks and benefits of Neurontin, and his testimony should be excluded under Rule 702.

### D. Professor Brock Did Not Employ Any Reasonable Methodology In Rendering His Opinions

"[E]xpert testimony that is merely speculation or pure conjecture based on the expert's impressions of the . . . evidence must be excluded as not based on any reliable methodology or scientific principle." *In re Baycol*, 532 F. Supp. 2d at 1053. At no point did Professor Brock resort to any reasoned methodology in arriving at his opinions. Rather, his "methodology" consisted of simply reviewing a set of documents, which were entirely selected and provided by Plaintiff's counsel, and then thinking about how an "ethical" company would act:

> Q: Can you please describe the process you employed for gathering information to formulate the opinions expressed in your report?
>
> A: Well, most of it was gathered for me. Those two large binders of materials came from [plaintiff's proposed expert] Kip King. I think [Plaintiff's counsel] Andrew Finkelstein sent me a few other things including some of the expert reports that I did rely on. But – and I probably saw either one or two articles in the literature, I couldn't tell you which, or reports in the press. But mainly I relied on materials that were provided to me.
>
> Q: Were the materials provided to you by King and Finkelstein in response to requests from you?
>
> A: I think not.

(Exh. A at 75:5-75:20.) Professor Brock did not perform any factual investigation into whether Defendants engaged in any improper conduct; rather, he simply assumed that the improper conduct occurred for the purposes of his expert report, then assessed the ethics of the purported conduct. (*Id.* at 85:16-86:21.) Professor Brock did not review the testimony of any current or former employees of Defendants in preparing his report. (*Id.* at 77:6-10.) Professor Brock did

not review the testimony of any physician that has been deposed in this litigation or who prescribed Neurontin to any plaintiff in this litigation. (*Id.* at 77:11-21.) Professor Brock did not review the testimony of any current or former employees of the third-party payor plaintiffs. (*Id.* at 77:22-78:1.) In fact, Professor Brock did not review a single deposition transcript, interview any witness involved in this litigation, or review any additional documents that were not provided to him by Plaintiff's counsel. (*Id.* at 78:13-81:5.) Professor Brock had not even heard of Plaintiff until the day before his deposition:

      Q:     Did you review any of the complaints filed by the plaintiffs in those cases?

      A:     In the Bulger and – no, I hadn't heard of those cases until yesterday.

(*Id.* at 80:14-17.)

As courts have repeatedly held, expert testimony may not be used to simply parrot the Plaintiff's allegations. An expert who simply accepts information provided to him by an interested party, and conducts no independent investigation, has not employed a reasonable methodology and his testimony cannot satisfy *Daubert*. *See TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993); *American Key Corp. v. Cole Nat. Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985); *Coral Way, L.L.C. v. Jones*, No. 05-21934, 2006 WL 5556004, at *1 (N.D. Fla. Oct. 17, 2006); *Total Containment, Inc. v. Dayco Prods., Inc.*, No. Civ. A. 1997-CV-6013, 2001 WL 1167506, at *6 (E.D. Pa. Sept. 6, 2001); *Otis v. Doctor's Assocs., Inc.*, No. 94 C 4227, 1998 WL 673595, at *4 (N.D. Ill. Sept. 14, 1998). So, too, Professor Brock's opinions lack a reliable foundation and must be excluded.

## CONCLUSION

Professor Brock will attempt to offer opinions both as to the nature of the FDA's and Defendants' legal duties to Plaintiff, and as to whether the FDA and Defendants fulfilled those duties. The former is a province of the Court, and the latter of the jury. Accordingly, Defendants request that the Court enter an order barring all testimony from Professor Brock at the trial of this case.

Dated: June 22, 2009                            Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

-and-

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
    William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

-and-

SHOOK, HARDY & BACON L.L.P.

By: /s/ Scott W. Sayler
    Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel: (816) 474-6550

-and-

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on June 22, 2009.

/s/ David B. Chaffin
David B. Chaffin