UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :  MDL Docket No. 1629

In re:  NEURONTIN MARKETING,         :
       SALES PRACTICES AND        :  Master File No. 04-10981
       PRODUCTS LIABILITY LITIGATION  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x  Judge Patti B. Saris
                            :

THIS DOCUMENT RELATES TO:         :  Magistrate Judge Leo T.
                            :  Sorokin

*Bulger v. Pfizer Inc., et al., 1:07-cv-11426-PBS*  :
                            :
                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' TRIAL BRIEF

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") respectfully submit this Trial Brief for the Court's consideration and in further support of their proposed jury instructions.[1]

## ARGUMENT

**I.    Plaintiff's Remaining Claims Are Subsumed By His Failure-To-Warn Claim**

By virtue of this Court's orders on May 26 and June 1, the only claim remaining in this case is failure to warn of the alleged risk of suicidality.  On May 26, this Court dismissed "all fraud claims alleging affirmative misrepresentations or a suppression of information as a part of a national marketing campaign" and allowed only claims of misrepresentation by concealment of material information about the side effects of Neurontin.  (Mem. & Order [1790] at 29, 33,

---

[1] Many issues in this action have previously been briefed for this Court.  Defendants incorporate by reference their prior Mot. for Summ. J. (*Bulger*) [1637]; Mot. to Exclude the Specific Causation Testimony of Doctors William Maris and Stefan Kruszekski (*Bulger*) [1634]; Mot. for Summ. J. (MDL) [1161]; Mot. to Exclude the Testimony of Doctors Trimble, Kruszewski and Blume on the Issue of General Causation (MDL) [1157]; Defs.' Mot. to Dismiss the Personal Injury Pls.' Claims Based Upon Allegedly Improper Marketing (MDL) [363]; Defs.' Mot. to Dismiss Product Liability Pls.' Fraud Claims Based Upon Allegedly Improper Marketing (Track One Cases) [1232], together with all memoranda of law filed in support of such motions.

May 26, 2009.)  On June 1, 2009, this Court dismissed Plaintiff's claims for express warranty, strict liability, and violation of Massachusetts' consumer protection statute, leaving only his claims for negligence, breach of implied warranty, and fraud by omission.  (*See* 6/1/09 Electronic Order; *see also* Tr. of Hr'g at 7, Mar. 31, 2009 (counsel for Plaintiff agreeing that his only remaining claims were for negligence, implied warranty, and fraud).)

Because Plaintiff's warranty and fraud by omission claims are subsumed by his negligent failure-to-warn claim, a single failure-to-warn instruction is warranted.  In product liability actions like this, courts regularly treat claims for breach of implied warranty and negligence under Massachusetts law as a single claim for negligent failure to warn.  *See Sprague v. Upjohn Co.*, No. 91-40035, 1995 WL 376934, at *3-4 (D. Mass. May 10, 1994) (finding that Massachusetts and First Circuit authority in drug product liability actions directed the court to treat breach of implied warranty and negligence claims "as a consolidated, single claim of negligent failure to warn"); *Kelley v. Eli Lilly & Co.*, 517 F. Supp. 2d 99, 110 (D.D.C. 2007) (same, applying Massachusetts law); *see also Hoffman v. Houghton Chem. Corp.*, 751 N.E.2d 848, 859 (Mass. 2001) (holding that theories of negligent failure to warn and failure to warn as a breach of warranty "are to be judged by the same standard:  the reasonableness of the defendant's actions in the circumstances"); Restatement (Third) of Torts § 2 cmt. n (1998) ("[T]wo or more factually identical failure-to-warn claims should not be submitted to the trier of fact in the same case under different doctrinal labels.").

Consistent with this authority, Plaintiff's omission claim is also subsumed by his failure-to-warn claim for purposes of instructing the jury on liability.  It is well settled that an omission cannot be actionably misleading absent a duty to disclose.  *See, e.g.*, *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1202 (1st Cir. 1996).  The only duty to disclose implicated by a fraudulent omission or concealment claim here is the duty of a manufacturer to warn of a non-obvious risk associated with the normal use of its product about which the manufacturer knows or has reason to know – the same duty that underpins Plaintiff's negligent failure-to-warn claim.  FDA regulations in effect in 2004 required that manufacturers warn only of serious hazards when there

2

was reasonable evidence of an association between such hazard and the drug. *See* 21 C.F.R. § 201.57(e) (2004). Regardless of the theory asserted by Plaintiff, the manufacturer's duty is the same. Although the Court did not dismiss Plaintiff's fraud claim on this ground, it recognized that courts have repeatedly found fraudulent concealment claims duplicative of failure-to-warn claims in actions just like this. (*See* Mem. & Order [1790] at 32-33, May 26, 2009.)

Separate instructions on negligent failure to warn and fraudulent omission, like separate instructions on negligence and breach of implied warranty, would unnecessarily confuse the jury and could lead to inconsistent results. *See, e.g.*, *Massachusetts Superior Court Civil Practice Jury Instructions* § 11.1 (2d ed. 2008) (Introduction, Judicial Commentary) ("The trial judge should always consider whether it is necessary to charge on both negligence and breach of warranty theories. . . . Charging on both theories creates the possibility of inconsistent verdicts." (citing *Hayes v. Ariens Co.*, 462 N.E.2d 273, 275-76 (Mass. 1984) (reversing and remanding for new trial where jury found defendant negligent but found for defendant on breach of implied warranty claim))).

As observed by this Court, Plaintiff's claim for fraudulent omission differs from his failure to warn claim in that it has the ***additional*** element of scienter. In other words, Plaintiff would have to prove everything that he must to establish his failure to warn claim: (1) that Neurontin can cause suicide; (2) that Pfizer knew or should have known of the risk of suicide prior to 2004; and (3) that Neurontin caused Susan Bulger's suicide; but he would have to establish the additional element that Pfizer acted not only negligently, but with intent. (*See* Mem. & Order [1790] at 31-32, May 26, 2009.) In short, there is no circumstance, for example, under which a jury could properly find Defendants not liable for failure to warn but liable for fraudulent concealment. The additional element of scienter, would not make Pfizer *more* liable for compensatory damages. Instead, it would be relevant, if at all, only on the issue of punitive damages.[2]

---

[2] To the extent the Court nevertheless determines to provide a separate instruction on fraud by omission or fraudulent concealment, Plaintiff must prove each of the elements of a fraudulent
*(cont'd)*

## II.      Plaintiff Bears the Burden of Proving Medical Causation

### A.      Plaintiff Must Prove That Neurontin Was a "But-For" Cause of Mrs. Bulger's Suicide

As this Court has recognized, Plaintiff cannot prevail unless he can prove medical causation.  To do so, he must establish both general causation, that is, that Neurontin is capable of causing suicide, and specific causation, that is, that Neurontin caused Mrs. Bulger's suicide. (*See* Mem. & Order [1775] at 6, May 5, 2009.)

In order to meet his burden of proof on medical causation, Plaintiff must prove that Neurontin was a "but-for" cause of Mrs. Bulger's suicide, and not merely, as Plaintiff has argued, that Neurontin was a contributing factor in her death.  *See, e.g.*, *Reinhardt v. Gulf Ins. Co.*, 489 F.3d 405, 412 (1st Cir. 2007) ("Under Massachusetts law, a plaintiff seeking to establish causation must show that the 'defendant's conduct was a but-for cause of [its] injury, and that [the] defendant's conduct was a 'substantial legal factor' in bringing about the alleged harm to [the] plaintiff.'" (alterations in original) (quoting *Jorgensen v. Mass. Port Auth.*, 905 F.2d 515, 524 (1st Cir. 1990))).  As Massachusetts' highest court recently recognized, where, as here, the conduct of only one defendant or set of related defendants is at issue, "[t]he proper test" for causation is "whether that conduct was the but-for cause."  *Matsuyama v. Birnbaum*, 890 N.E.2d 819, 842 (Mass. 2008); *see also Or v. Edwards*, 818 N.E.2d 163, 171 & n.16 (Mass. App. Ct. 2004) (applying "but-for," rather than "substantial causative factor," formulation of factual cause

_____
*(cont'd from previous page)*

misrepresentation claim, that is: "that the 'defendant [1] made a false representation of a material fact [2] with knowledge of its falsity [3] for the purpose of inducing the plaintiff to act thereon, [4] and the plaintiff relied upon the representation as true and [5] acted upon it to his damage.'"  *Roadmaster Indus. Inc. v. Columbia Mfg. Co.*, 893 F. Supp. 1162, 1176 (D. Mass. 1995) (quoting *Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F. Supp. 1188, 1199 (D. Mass. 1990)).  In addition, "[o]ver and above the elements of fraudulent misrepresentation, in order to establish fraudulent concealment, a plaintiff must prove that the defendant took affirmative steps to conceal defects or to prevent the plaintiff from acquiring knowledge of the defects."  *Id.* at 1179; *accord JSB Indus., Inc. v. Nexus Payroll Servs., Inc.*, 463 F. Supp. 2d 103, 107 (D. Mass. 2006).  "[F]ailure to disclose any nonapparent defect, without more, is not actionable on this theory."  *Roadmaster Indus.*, 893 F. Supp. at 1179.  As established below, because Plaintiff cannot establish that Pfizer had or should have had the knowledge sufficient to even trigger a duty to warn, he certainly cannot prove intentional concealment of safety information.

to negligence claim involving single set of defendants); *Baghdady v. Lubin & Meyer, P.C.*, 770 N.E.2d 513, 517 (Mass. Ct. App. 2002) (affirming "but-for" causation instruction in negligence action).

A causal connection between Neurontin and Mrs. Bulger's suicide "'cannot be left to the jury's conjecture or speculation'; that is, 'it is not enough to show the mere *possibility* of a causal connection; the *probability* of such a connection must be shown.'" *Reinhardt*, 489 F.3d at 412 (quoting *Jorgensen*, 905 F.2d at 524); *accord O'Connor v. SmithKline Bio-Science Labs., Inc.*, 631 N.E.2d 1018, 1020 (Mass. App. Ct. 1994).   To make such a showing, Plaintiff must "'introduce evidence from which reasonable men may conclude that it is more probable that [the suicide] was caused by [Neurontin] than that it was not.'" *Mullins v. Pine Manor College*, 449 N.E.2d 331, 339 (Mass. 1983) (quoting *Carey v. Gen. Motors Corp.*, 387 N.E.2d 583, 585-86 (1979) (citing Restatement (Second) of Torts § 433B cmt. b (1965))).

### B.  Plaintiff Must Establish General Causation

Plaintiff cannot prevail at trial unless he can make a threshold showing, through expert evidence, that "Neurontin is capable of causing suicide-related events."  (Mem. & Order [1775] at 6, May 5, 2009); *see also Held v. Bail*, 547 N.E.2d 336, 338 (Mass. App. Ct. 1989) ("[I]f the causation question involves questions of medical science or technology, the jury requires the assistance of expert testimony.").  Pfizer has previously briefed the issue of general causation in detail, and incorporates those arguments herein.  (*See* Mem. in Supp. of Defs.' Mot. to Exclude [1158]; Mem. in Supp. of Defs.' Mot. for Summ. J. [1162].)  As Pfizer has argued and will establish at trial, Plaintiff cannot satisfy his burden to prove general causation because the experts on which he relies have employed flawed methodologies in reaching their conclusions and because the overwhelming weight of reliable, epidemiologic evidence shows *no association* between Neurontin and suicide-related events.

Plaintiff's experts rely not upon controlled clinical trials to support their opinions, but upon anecdotal adverse event data, which numerous courts have recognized cannot establish

causation.[3]   Likewise, evidence of the FDA's 2008 Alert and meta-analysis of data on antiepileptic drugs (AEDs), and any post-2004 regulatory action relating to Neurontin's labeling, proves neither causation nor failure to warn.   Initially, "the decision by the FDA to require warnings on a drug label, without more, does not suffice to establish causation" because "the FDA often uses a different standard than a court does to evaluate evidence of causation in a products liability action."   (*Id.* at 39); *see also Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 991 (8th Cir. 2001) (finding FDA regulatory "balancing" and warnings "irrelevant in determining the threshold question of [causation]").   Moreover, the FDA Alert is not based on specific conclusions about Neurontin specifically, but rather on analysis of pooled or combined placebo-controlled clinical trial data for eleven different AEDs.   The "pooled" data set that produced those figures is comprised of the aggregated data for eleven different drugs with different pharmacologic properties, chemical structures, mechanisms of action and safety profiles. Significantly, the FDA pooled data is inconsistent with Neurontin specific data.[4]

### C.   Plaintiff Must Establish Specific Causation

Even if Plaintiff could satisfy his burden of proof on general causation, he cannot prevail at trial unless he can also prove, through expert testimony, that it is more probable than not that Neurontin, rather than any of Mrs. Bulger's many preexisting suicide risk factors, caused her suicide.   This issue too has been presented to the Court, and Pfizer incorporates herein its prior briefing.   (*See* Mem. in Supp. of Mot. to Exclude [1635].)   As with Plaintiff's experts on general causation, and independent of this Court's *Daubert* analysis, the many critical flaws in the methodology and credibility of Plaintiff's specific causation experts preclude a finding of causation under Massachusetts law.   Among other things, Plaintiff's experts, Drs. Ronald William Maris and Stefan Kruszewski – neither of whom had ever opined that Neurontin could

---

[3] *See* Memorandum of Law in Support of Defendants' Motion to Exclude Anecdotal Adverse Event Reports, filed concurrently.

[4] The Court has acknowledged that Pfizer's expert, Dr. Robert Gibbons, "has presented a powerful critique of the [FDA meta-analysis]," Plaintiff's primary evidence on causation.   (Mem. & Order [1775] at 45, May 5, 2009.)

cause, and did cause, a suicide before being hired as experts in this litigation – failed to consider, much less investigate, many of Mrs. Bulger's suicide risk factors, including her prior suicide attempts, and failed to provide any objective criteria for differentiating a Neurontin-induced suicide from one by someone not taking Neurontin.

### III.    Pfizer Had No Duty To Warn of Information It Did Not Know and Could Not Have Known at the Time Mrs. Bulger Was Prescribed and Took Neurontin

Plaintiff's claims also fail on the independent ground that Pfizer had no duty to warn, at the time that Mrs. Bulger was prescribed and took Neurontin (between May 2002 and August 2004), of information about an alleged risk of suicidal events that Pfizer neither knew nor was capable of knowing.  It is axiomatic that a defendant cannot be liable for failing to warn of alleged risks that it did not know, and could not have known, through the exercise of reasonable care.  *See, e.g.*, *Anderson v. Owens-Illinois, Inc.*, 799 F.2d 1, 2 (1st Cir. 1986) (duty to warn extends only to such dangers or defects about which a manufacturer either actually knew or about which it reasonably should have known, based on the state of medical and scientific knowledge in the field at the time period relevant to the claim); *accord Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909, 922-23 (Mass. 1998).

As this Court has observed, "[t]he 'gold standard' for determining the relationship between a drug and a health outcome is a randomized, double-blind, placebo-controlled clinical trial."  (Mem. & Order [1775] at 11-12, May 5, 2009.)  Here, it is undisputed that the controlled clinical data for Neurontin fail to show a statistically significant increased risk of suicidal events.  (*See id.* at 48.)  In fact, Plaintiff and his experts have repeatedly admitted that the Neurontin-specific clinical trial data show *no statistically significant increased risk of*, or association with, suicide-related events.  Plaintiff's experts, like the FDA, rely on the *pooled* meta-analysis of clinical trial data for eleven different AEDs, which resulted in the 2008 FDA Alert and, ultimately, the 2008 revised class-wide AED warnings on suicidal events.  But Pfizer obviously did not possess such data on other AEDs, from which both the FDA and Plaintiff's experts have extrapolated (*see id.* at 57-58), prior to the FDA Alert, much less in 2004, at the time Neurontin

was last prescribed to and taken by Mrs. Bulger.  Indeed, Plaintiff's claims pre-date, by many years, the FDA Alert and meta-analysis, on which Plaintiff's experts' opinions, and the revised FDA warning, are based.  Plaintiff's experts cannot point to any other epidemiological study in support of their opinions that Neurontin can cause suicide, or any reliable scientific evidence of causation that existed, and should have been known to Pfizer, at the time period relevant to this action.  (*See* Mem. & Order [1775] at 31-40, May 5, 2009.)

Plaintiff cannot, in the undisputed absence of any evidence of an association in the controlled clinical trial data for Neurontin, or any other controlled epidemiological data pre-dating the FDA's 2008 meta-analysis, rely on mere cherry-picked anecdotal evidence, such as case reports and adverse event reports, to satisfy his burden to show that Pfizer had knowledge triggering a duty to warn about suicide.  As this Court recognized in its *Daubert* ruling on general causation, such evidence cannot, on its own, establish an association between a drug and a side effect, much less demonstrate a causal relationship, because there is no control group. (*See* Mem. & Order [1775] at 39, 79-80, 89, May 5, 2009; *see also* Letter from Russell Katz, M.D., Food and Drug Administration, to Andrew G. Finkelstein, dated Apr. 12, 2005 (responding to Plaintiff's counsel's letter providing "MedWatch forms of patients whom [Mr. Finkelstein] state[d] committed suicide while being treated with Neurontin" and emphasizing that, "in the absence of an appropriate control group, it will be difficult, if not impossible, to assess the role of any other factors that might explain these events, such as concomitant medications"); E-mail from Donald Dobbs, Food and Drug Administration to Alexander Ruggieri, M.D., dated Apr. 1, 2008 ("[T]he agency does not believe that spontaneous post-marketing reports can be interpreted appropriately in this situation.  Patients taking these drugs have a high background rate of suicidal thoughts/behaviors, and it is not possible to tell from AERS reports, whether the drug caused them.  In the agency's view, the only way to establish whether or not the drugs are responsible for suicidality is to analyze controlled trial data.").)

In sum, Pfizer cannot be held liable for failing to warn Mrs. Bulger's prescribing doctors

of a risk of suicide when the evidence on which Plaintiff relies to support his arguments on causation did not become available until many years later.

## IV.    Plaintiff Cannot Establish Proximate or Legal Causation

To the extent that Pfizer had a duty to warn regarding the alleged risks of suicidality, Massachusetts has adopted the learned intermediary doctrine, which provides that a manufacturer's duty to provide an adequate warning runs to the prescribing physician, not to the patient. *See Knowlton v. Deseret Med.l, Inc.*, 930 F.2d 116, 120 n.2 (1st Cir. 1991); *MacDonald v. Ortho Pharm. Corp.*, 475 N.E.2d 65, 69 (Mass. 1985). In addition, Massachusetts courts apply a rebuttable heeding presumption, that is, a presumption that a physician would have heeded an adequate warning if it had been given. *See Garside v. Osco Drug, Inc.*, 976 F.2d 77, 81 (1st Cir. 1992). The presumption operates as follows:

> (1) the plaintiff carries the initial burden of producing sufficient evidence that the defendant manufacturer failed to warn of a non-obvious risk about which the manufacturer knew or should have known; (2) assuming the plaintiff raises a triable issue on this question, a rebuttable presumption arises that the physician would have heeded an adequate warning; (3) defendant must then come forward with sufficient evidence to rebut that presumption; and (4) once the presumption is rebutted, plaintiff must produce sufficient evidence to create a triable issue on the question of causation.

*Id.* (citations omitted). "'[H]eed' in this context means only that the learned intermediary would have incorporated the 'additional' risk into his decisional calculus. The burden remains on the plaintiff to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff." *Thomas v. Hoffman-LaRoche, Inc.,* 949 F.2d 806, 814 (5th Cir. 1992) (footnotes omitted); *see also Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1021 (10th Cir. 2001) (explaining that the prescribing physician only "heed[s]" warnings in the sense of considering them while deciding how to prescribe the product and whether or not to tell the patient about the risk and that it is unrealistic to presume physicians would "heed" any warning either in the sense of never using the product or that they would automatically tell every patient about every risk).

As established above, Pfizer had no duty to warn of an alleged risk of suicidality, and

thus Plaintiff has failed to raise a rebuttable presumption that either of Mrs. Bulger's prescribing doctors, Dr. Crognale or Dr. Goldman, would have heeded an adequate warning. However, it is well settled that, even where a heeding presumption is applied, a prescription drug manufacturer's alleged failure to warn cannot be the proximate cause of injury unless a different warning would have changed the physician's decision to prescribe the drug. *See, e.g.*, *Thomas*, 949 F.2d at 812 ("[T]he plaintiff must establish that an adequate warning would have convinced the treating physician not to prescribe the product for the plaintiff."); *Wheat v. Pfizer, Inc.*, 31 F.3d 340, 343 (5th Cir. 1994) (holding that plaintiff must show "that 'a proper warning would have changed the decision of the treating physician, *i.e.*, that but for the inadequate warning, the treating physician would not have used or prescribed the product'" (quoting *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991))); *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1003-04 (4th Cir. 1992) (affirming summary judgment where prescribing physician testified that a different warning would not have changed his decision to prescribe an intrauterine device); *Plummer v. Lederle Labs.*, 819 F.2d 349, 358-59 (2d Cir. 1987) (finding no proximate cause in the absence of evidence that different warning would have caused the physician to act differently); *Nix v. SmithKline Beecham Corporation*, No. CV-06-43-PHX-SMM, 2007 WL 2526402, at *3 (D. Ariz. Sept. 5, 2007) (same); *Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 370 (N.D. Ill. 1998) (to prove causation, there must be evidence "to show that [the] physician would not have prescribed [the medication] if the defendants had provided adequate warnings"); *In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 711 (E.D. Tex. 1997) (noting that to prove causation, there must be evidence "that a different warning would have changed the decision of the treating physicians"), *aff'd*, 165 F.3d 374 (5th Cir. 1999); *Windham v. Wyeth Labs., Inc.*, 786 F. Supp. 607, 612 (S.D. Miss. 1992) (same); *Vaughn v. G.D. Searle & Co.*, 536 P.2d 1247, 1250-51 (Or. 1975) (same).

Here, Plaintiff has no evidence that an additional warning would have prevented Mrs. Bulger's prescribers from prescribing Neurontin to her. As the evidence at trial will show, when Dr. Crognale was asked if he did the right thing in prescribing Neurontin to Mrs. Bulger, he

responded that she appeared to have benefited from Neurontin.  When asked whether a more recent alert from the FDA would cause him to warn patients about this class of medications and suicidality, Dr. Crognale said he was not sure.  Dr. Goldman was not asked if he would prescribe Neurontin again knowing what he knows now, but when asked whether he would have warned Mrs. Bulger had he been aware that Neurontin had the alleged capacity to increase the risk of suicidality, he testified that that one piece of information was not all that would have informed his decision and, therefore, he could not say.  As the testimony of Drs. Goldman and Crognale confirm, Plaintiff will not be able to satisfy his burden on proximate causation.

## V.    Punitive Damages

### A.    The Standard Governing Punitive Damages

It is well settled that "[p]unitive damages are not favored in Massachusetts," *Pine v. Rust*, 535 N.E.2d 1247, 1249 (Mass. 1989), and that the issue may not be presented to the jury where there is no admissible evidence of sufficiently reprehensible conduct.  *See Dartt v. Browning-Ferris Indus., Inc.*, 691 N.E.2d 526, 536-37 (Mass. 1998); *see also Goodrow* v. *Lane Bryant, Inc.*, 732 N.E.2d 289, 299 (Mass. 2000); *accord Smith v. Bell Atl.*, 829 N.E.2d 228, 245 (Mass. App. Ct. 2005).  Under Massachusetts' wrongful death statute, punitive damages are available only where a plaintiff can show that "the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant . . . ."  Mass. Gen. Laws Ann. ch. 229, § 2 (West 2000).[5]  Plaintiff cannot meet this standard because he has no evidence of malicious, willful, wanton, or reckless conduct.

To the extent that the Massachusetts wrongful death statute permits the imposition of punitive damages upon a showing of only "gross negligence," *see* Mass. Gen. Laws Ann. ch. 229,

---

[5] The law is clear that Plaintiff cannot seek punitive damages in connection with his fraud by omission claim because punitive damages are not available under Massachusetts law for claims of common law fraud.  *See Computer Sys. Eng'g, Inc. v. Quantel Corp.*, 740 F.2d 59, 70 (1st Cir. 1984) (citing *City of Lowell v. Mass. Bonding & Ins. Co.*, 47 N.E.2d 265, 269 (Mass. 1943)); *accord Ne. Data Sys., Inc. v. McDonnell Douglas Comp. Sys. Co.*, No. 83-1179, 1991 WL 254421, at *1 (D. Mass. Nov. 29, 1991), *aff'd*, 986 F.2d 607 (1st Cir. 1993).  Accordingly, punitive damages are available only to the extent allowed by the wrongful death statute.

§ 2, the statute does not meet constitutional due process requirements.  While the Supreme Judicial Court has never expressly addressed this issue, it has cautioned that awarding punitive damages "absent evidence of heightened culpability would very likely constitute an 'arbitrary or irrational deprivation[] of property,' and thus would be constitutionally impermissible." *Goodrow*, 732 N.E.2d at 299 (quoting *TXO Prod. Corp.* v. *Alliance Res. Corp.*, 509 U.S. 443, 467 (1993) (Kennedy, J., concurring)); *Smith*, 829 N.E.2d at 245 ("To support an award of punitive damages, there must be more than neglect or even inconsiderate behavior.  A high degree of culpability is required.").  Indeed, the U.S. Supreme Court has reversed a punitive damages award based on the ground that the gross negligence standard was too vague.  *See Milwaukee Etc. R.R. Co. v. Arms*, 91 U.S. 489, 493-95 (1875) (holding that to impose punitive damages, "there must have been some wilful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences"); *see also Smith v. Wade*, 461 U.S. 30, 72 (1983) (Rehnquist, J., dissenting) ("The Court [in *Arms*] regarded 'gross negligence' as too imprecise and ill-defined a standard to support the extraordinary remedy of punitive damages.").  Accordingly, because due process requirements prohibit the imposition of punitive damages for gross negligence, Plaintiff could only recover punitive damages on a showing of "malicious, willful, wanton or reckless conduct," Mass. Gen. Laws Ann. ch. 229, § 2, of which there is no evidence here.

Even if the Constitution did permit recovery of punitive damages for gross negligence, Plaintiff cannot satisfy that standard either.  Under Massachusetts law, gross negligence is

> negligence that is:  "substantially and appreciably higher in magnitude than ordinary negligence.  It is materially more want of care than constitutes simple inadvertence.  It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care.  It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected.  It is a heedless and palpable violation of legal duty respecting the rights of others."

*O'Neil v. Electrolux Home Prods., Inc.*, No. 06-10433, 2008 WL 2066948, at *9 (D. Mass. May 14, 2008) (quoting *Altman v. Aronson*, 121 N.E. 505, 506(Mass. 1919)).  Where the evidence is

"insufficient to support . . . ordinary negligence claims, it follows that the evidence cannot support the claim for punitive damages because more than ordinary negligence is required." *Coughlin v. Titus & Bean Graphics, Inc.*, 767 N.E.2d 106, 113 (Mass. App. Ct. 2002).

In *O'Neil*, for example, a wrongful death action in which the plaintiff's two-year-old child was killed in a riding lawnmower back-over accident, the court granted the defendant manufacturers' motion for summary judgment on punitive damages, finding evidence of accident reports and negligent design and warning alone insufficient to establish the "level of 'the absence of slight diligence, or the want of even scant care,'" necessary to allow a punitive damages claim to proceed. *O'Neil*, 2008 WL 2066948, at *10 (citation omitted). The court explained:

> The Plaintiffs have failed to adduce evidence that the Defendants thought there was a high degree of likelihood that a back-over accident would occur. The Defendants knew of at least 29 serious injuries caused by lawnmower blade contact at the time the O'Neil Tractor was manufactured. This number rose to 35 or 40 at the end of 2004. Based on these numbers, 11 accidents occurred between 2002 and 2004 or in the worse scenario, about 5 accidents per year. The Defendants manufactured around 700,000 lawnmowers annually and included numerous warnings about the risks of operation around children on all of their lawnmowers. . . . Even if the Defendants were negligent in designing their Tractor and providing adequate warnings, the Tractor did include user safety systems and the evidence indicates the Defendants were researching the possibility of adding child safety systems. They did not violate the ANSI industry standards nor were they required to follow these voluntary standards. In addition, they provided numerous warnings against the use of the Tractor around children.

*Id.* at *9; *see also Merrell Dow Pharms., Inc. v. Havner*, 907 S.W.2d 535, 563 (Tex. App. 1995) (reversing punitive damages verdict in drug product liability action under gross negligence standard where the "evidence that [defendant] knew and consciously disregarded the risk of birth defects caused by Bendectin exposure" included, *inter alia*, adverse event reports, alleged falsification of study data, and a no contest plea to an indictment for falsifying data regarding another drug, finding "[t]his evidence . . . too weak to support the conclusion that Merrell Dow was consciously indifferent" to the alleged risk of birth defects), *rev'd on other grounds*, 953 S.W.2d 706, 730 (Tex. 1997) (reversing compensatory verdict and entering judgment for defendant, finding "no scientifically reliable evidence to support the verdict"). Plaintiff's proffer

is similarly deficient here where, as set forth above, Pfizer's warnings have always complied with FDA requirements and Plaintiff has no credible evidence of a duty to warn of suicide, much less a grossly negligent, malicious or intentional failure to do so, at the time period relevant to this action or at any other time.

Further, Supreme Court precedent requires that a plaintiff establish eligibility for punitive damages under the Massachusetts wrongful death statute by clear and convincing evidence. "[T]he clear and convincing standard of proof[] is an important check against unwarranted imposition of punitive damages." *Honda Motor Co. v. Oberg*, 512 U.S. 415, 433 (1994); *see also Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 n.11 (1991) ("There is much to be said in favor of a State's requiring, as many do, a standard of 'clear and convincing evidence' or, even, 'beyond a reasonable doubt,' as in the criminal context." (citations omitted)).   Although the *Haslip* Court held that the "clear and convincing evidence" standard was not constitutionally required in that case, the Court's holding was qualified in light of the numerous "procedural and substantive protections" of Alabama law. *Haslip*, 499 U.S. at 23 n.11.   Among the protections provided by Alabama law were that punitive damages could be imposed only for "deceit or willful fraud," *id.* at 7, a much higher showing than the mere "gross negligence" that would permit an award under the Massachusetts wrongful death statute.   Mass. Gen. Laws Ann. ch. 229, § 2.   Indeed, as argued above, the gross negligence standard would itself be an unconstitutional basis for imposing punitive damages. *See, e.g.*, *Goodrow*, 732 N.E.2d at 299.   Thus, to award punitive damages under the Massachusetts wrongful death statute, clear and convincing evidence is constitutionally required.

### B.   The Jury Must Be Instructed Consistent With the Supreme Court's Dictates in *Campbell* and *Philip Morris*

For the reasons discussed above, Pfizer submits that the evidence in this case will not support submission of punitive damages to the jury.   If, however, the jury is instructed on punitive damages, those instructions must comport with U.S. Supreme Court precedent.

In *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), the

United States Supreme Court held that, as a matter of due process, "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *Campbell*, 538 U.S. at 422-23. The Court explained that "[a] defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.* at 423. Moreover, the Court stated that "[d]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis." *Id.*

In *Campbell*, the Supreme Court held unconstitutional the lower court's punishment of twenty years of various dissimilar conduct by the defendant, explaining that courts are not permitted "to expand the scope of the case so that a defendant may be punished for any malfeasance." *Id.* at 424. Punishment based on dissimilar conduct "creates the possibility of multiple punitive damages awards for the same conduct" since "nonparties are not bound by the judgment some other plaintiff obtains." *Id.* at 423. A punitive damages award based on conduct unrelated to the plaintiff's harm enters the "zone of arbitrariness" that violates due process. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996).

Later, the Supreme Court explicitly clarified that due process "forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties . . . , i.e., injury that it inflicts upon those who are, essentially, strangers to the litigation." *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007); *see also Campbell*, 538 U.S. at 423 ("Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis . . . ."). To allow punitive damages to be based upon harm to non-parties would violate due process by denying the defendant "'an opportunity to present every available defense.'" *Philip Morris*, 549 U.S. at 353 (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)).

The Supreme Court further explained that "to permit punishment for injuring a nonparty victim would add a near standardless dimension to the punitive damages equation," magnifying the due process risks of "arbitrariness, uncertainty and lack of notice," *Id.* at 354. Finally, the

Court stated, there is "no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others." *Id.* The Court "made clear that the potential harm at issue was harm potentially caused *the plaintiff*." *Id.* (emphasis in original). Thus, in *Philip Morris*, the Supreme Court held that the jury must be correctly instructed according to the standards stated by the Supreme Court to assure that the jury is not imposing punishment for conduct unrelated to the injury to Plaintiff. *See id.*

## <u>CONCLUSION</u>

Defendants respectfully request that the Court consider this memorandum in further support of their proposed jury instructions and other trial submissions and arguments.

Dated: June 22, 2009                            Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By:      /s/ Mark S. Cheffo
         Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

          -and-

BOIES, SCHILLER & FLEXNER LLP

By:      /s/ William S. Ohlemeyer
         William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

          -and-

SHOOK, HARDY & BACON L.L.P.

By:     /s/ Scott W. Sayler
        Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel:  (816) 474-6550

        -and-

WHITE AND WILLIAMS LLP

By:     /s/ David B. Chaffin
        David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on June 22, 2009.

        /s/ David B. Chaffin
        David B. Chaffin