UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re: NEURONTIN MARKETING,
       SALES PRACTICES AND
       PRODUCTS LIABILITY LITIGATION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

*Bulger v. Pfizer Inc., et al.*
Case No. 1:07-cv-11426-PBS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE ALL EVIDENCE OF OR REFERENCES
TO WARNER-LAMBERT COMPANY LLC'S GUILTY PLEA OR ANY
<u>RELATED GOVERNMENT INVESTIGATIONS OR AGREEMENTS</u>**

  Pursuant to Federal Rules of Evidence 402, 403, and 404, Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum of law in support of their accompanying motion *in limine* to exclude at trial any and all evidence of or reference by Plaintiff or his counsel before the jury of Warner-Lambert Company LLC's guilty plea dated May 13, 2004, any negotiation, settlement, or agreement between Pfizer and/or Warner-Lambert and any government entity arising out of the guilty plea, or any related government finding or investigation of the marketing of Neurontin in violation of the Food, Drug, and Cosmetic Act, and the fact of any such investigation (collectively, the "Plea").

**PRELIMINARY STATEMENT**

  Plaintiff seeks to put before the jury a guilty plea and related documents and evidence that have no relevance whatsoever to the issues to be decided in this products liability case. The Plea relates to specific violations of pharmaceutical marketing law that took place over ten years ago and several years before Decedent, Susan Bulger, was first prescribed Neurontin, in 1999. None of the conduct at issue in the Plea remotely involved or reached Mrs. Bulger or her

prescribing doctors. In fact, the Plea has nothing to do with *any* of the questions for the jury to decide in this case: whether Neurontin causes suicidal behavior; whether, at the time Neurontin was prescribed to Mrs. Bulger, Neurontin's label should have warned physicians of a risk of suicidal behavior; and whether Mrs. Bulger's decision to take her own life resulted from her use of Neurontin or from one of her many other well-accepted suicide risk factors. The only conceivable reason Plaintiff would seek to place the Plea before the jury is to invite the jury to decide the case based not on the facts and the law at issue, but instead on a visceral reaction to the unrelated conduct by Warner-Lambert that is the subject of the Plea.

Evidence related to the Plea and the underlying government investigation is inadmissible for three related reasons. First, the Plea is wholly irrelevant to the claims in this case and should be excluded on that ground alone under Rule 401 of the Federal Rules of Evidence. Second, the unfair prejudice and undue delay that evidence of or references to the Plea would inevitably generate far outweigh its non-existent probative value and require its exclusion under Rule 403. Third, given the lack of relevance of the Plea to Plaintiff's claims, the only plausible reason that Plaintiff might have for introducing it would be as improper character evidence to attempt to establish that Pfizer is a "bad actor." Rule 404(b) flatly prohibits this.

Accordingly, as set forth in greater detail below, the Court should preclude Plaintiff from introducing or otherwise referencing the Plea before the jury.

### THE PLEA

In May 2004, Warner-Lambert pleaded guilty to two strict-liability violations under the Food, Drug, and Cosmetic Act ("FDCA") related to its marketing of Neurontin between April 1995 and August 1996. Both violations involved the marketing of Neurontin for uses for which it had not been approved by the FDA (so-called "off-label uses"): one violation of distributing an unapproved drug in violation of 21 U.S.C. §§ 331(d), 333(a)(2) and 355(a), and one violation of misbranding a drug in violation of 21 U.S.C. §§ 331(a), 333(a)(2) and 352(f)(1).[1]

---

[1] Although the specific violations to which Warner-Lambert pleaded guilty were misdemeanors, the conduct was elevated to felony status because of a previous agreement between Warner-Lambert and
*(cont'd)*

In the course of the plea hearing, Warner-Lambert acknowledged that the facts set forth in an Information dated May 13, 2004 were factually accurate. Significantly, the Information outlined and described *specific instances* in 1995 and 1996 in which Warner-Lambert's marketing activities violated the relevant provisions of the FDCA. For example, the Information identifies a particular "teleconference . . . in which [a] Medical Director promoted off-label uses of Neurontin to the doctors participating in the teleconference." (Exh. A, Information ¶ 36.) Because the Information is limited to the specific instances set forth therein, Warner-Lambert's acknowledgment of the truth of the facts contained in the Information is equally limited to those specific instances. Warner-Lambert has denied, and Pfizer continues to deny, the existence of any intentional nationwide scheme to promote Neurontin for off-label use, a fact that is consistent with the scope of the guilty plea and accompanying Information. Likewise, Warner-Lambert's plea of guilty to conduct described in the Information did not imply in any way that the conduct at issue continued beyond 1996, much less after its merger with Pfizer in 2000.[2] Finally, neither the guilty plea nor the Information addressed issues related to Neurontin's safety or the adequacy of the warnings in Neurontin's labeling, the issues that will actually be before the jury in this trial.

Plaintiff's recently served pretrial disclosures include exhibits, deposition designations, and witness designations relating to the Plea and Information. These include, but are not limited

---

*(cont'd from previous page)*
the government in an unrelated matter years earlier. A copy of the Plea and Information are attached as Exhibit A to the accompanying Declaration of Mark S. Cheffo.

[2] Although a Sentencing Memorandum submitted by the government at the time of the plea agreement describes a somewhat wider range of conduct extending through 1999, Warner-Lambert has never admitted to having engaged in any of the conduct described in the Sentencing Memorandum beyond that detailed in the Information. In addition to all of the reasons set forth in this motion, which apply with equal or greater weight to the Sentencing Memorandum, the Sentencing Memorandum itself is also inadmissible on hearsay grounds because it is nothing more than a series of allegations by the government regarding conduct that Warner-Lambert never admitted to having engaged in. *See, e.g.*, *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 825 (8th Cir. 2003) (refusing to consider, on a motion to dismiss, in a civil case, a sentencing memorandum prepared by the government in a previous criminal action against a subsidiary of defendant because "[t]he government's sentencing memorandum is a position paper offered here by the [plaintiffs] for the truth of the matters asserted therein, which the defendants dispute").

to, Plaintiff's designation of the following documents as trial exhibits: the guilty plea, dated June 7, 2004; the Information, dated May 13, 2004; the Sentencing Memorandum of the United States, dated June 2, 2004; and the Corporate Integrity Agreement between the Office of Inspector General of the Department of Health and Human Services and Pfizer Inc, dated May 11, 2004.

## ARGUMENT

### I.     The Plea Is Irrelevant To Plaintiff's Claims

The Plea is irrelevant to the current dispute and, therefore, inadmissible. Evidence is relevant only if it makes the existence of a fact of consequence to the determination of an action more or less probable. *See* Fed. R. Evid. 401; *see also* 2 *Weinstein's Federal Evidence* § 401.04[2][a] (Joseph M. McLaughlin gen. ed. 2d ed. 2007) ("Relevance is not inherent in any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case."). "Evidence which is not relevant is not admissible." Fed. R. Evid. 402; *see also Bates v. Shearson Lehman Bros., Inc.*, 42 F.3d 79, 83 (1st Cir. 1994) ("A trial court has appreciable flexibility in admitting or excluding evidence on relevancy grounds."). It is also well settled that, "[w]hether or not a fact is of consequence" to the determination of an action "is determined not by the Rules of Evidence but by substantive law." 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 401[03], at 401-19 (1988); *see also Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988). The substantive law at issue here is Massachusetts law governing failure-to-warn and fraud by omission claims in product liability actions like this one.[3]

#### A.     The Plea Is Irrelevant To Plaintiff's Failure-To-Warn Claim

The Plea is not relevant to Plaintiff's negligent failure-to-warn claim under Massachusetts law.[4] That claim raises the following issues for the jury: (1) whether Neurontin

---

[3] By Order dated June 1, 2009, this Court dismissed Plaintiff's claims for express warranty, strict liability, and violation of Massachusetts' consumer protection statute, leaving only his claims for negligence, breach of implied warranty, and fraud by omission. (*See* Electronic Order re: [1637], June 1, 2009.)

[4] As set forth in its Trial Brief, Pfizer submits that, to the extent Plaintiff purports to assert a
*(cont'd)*

4

is capable of causing suicidal behavior (general causation) and whether Pfizer knew or should have known of this alleged risk; (2) whether Mrs. Bulger's suicide resulted from Neurontin, as opposed to one or more of the many suicide risk factors from which she suffered (specific causation); and (3) whether an alleged inadequate warning in Neurontin's labeling proximately caused Mrs. Bulger's suicide (legal causation). *See, e.g.*, *Anderson v. Owens-Ill., Inc.*, 799 F.2d 1, 2 (1st Cir. 1986) (holding that the duty to warn extends only to such dangers or defects about which a manufacturer either actually knew or about which it reasonably should have known, based on the state of medical and scientific knowledge at the time); *Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909, 923 (Mass. 1998) (holding that a manufacturer will not be held liable "for failure to warn or provide instructions about risks that were not reasonably foreseeable at the time of sale or could not have been discovered by way of reasonable testing prior to marketing the product"); *see also* Mem. & Order [1775] at 6, May 5, 2009 ("In order to prevail in a pharmaceutical personal injury case, a plaintiff must establish two types of causation: general and specific."). The Plea is completely irrelevant to each of these substantive inquiries.

It is indisputable that the Plea does not address issues regarding Neurontin's safety, much less whether it is capable of causing suicide, whether Defendants had such knowledge, whether its labeling contained adequate warnings on suicide, or what caused Mrs. Bulger to take her own life. Rather, as described above, the Plea involves a limited number of strict-liability violations relating to the *marketing* of Neurontin. Furthermore, Plaintiff has not alleged or established any connection between Mrs. Bulger or her prescribing doctors and any of the events described in the

---

*(cont'd from previous page)*
separate implied warranty claim, that claim is subsumed by, and should be treated together with, Plaintiff's negligence claim under Massachusetts law. *See, e.g.*, *Hoffman v. Houghton Chem. Corp.*, 751 N.E.2d 848, 859 (Mass. 2001) (under Massachusetts law, theories of negligent failure to warn and failure to warn as a breach of warranty "are to be judged by the same standard: the reasonableness of the defendant's actions in the circumstances"); *accord Sprague v. Upjohn Co.*, No. 91-40035, 1995 WL 376934, at *3 (D. Mass. May 10, 1994) (in drug product liability action governed by Massachusetts law, treating breach of implied warranty and negligence claims "as a consolidated, single claim of negligent failure to warn"); *Kelley v. Eli Lilly & Co.*, 517 F. Supp. 2d 99, 110 (D.D.C. 2007) (same, applying Massachusetts law).

guilty plea or Information or that are at issue in any of the related documents or investigations encompassed within the broader category of Plea defined above. This is unsurprising, considering that the events relevant to the Plea took place in 1995 and 1996, more than three years before Decedent was first prescribed Neurontin in December 1999 (for approximately two months) and nearly five years before she was prescribed Neurontin again, in May 2002.

### B. The Plea Is Irrelevant To Plaintiff's Fraudulent Concealment Claim

The Plea is similarly irrelevant to Plaintiff's fraudulent concealment claim, which this Court has held is the only aspect of Plaintiff's fraud claim that may proceed. By Memorandum and Order on May 26, 2009 (the "May 26 Order"), this Court granted Defendants' "motion to dismiss all fraud claims alleging affirmative misrepresentations or a suppression of information as part of a national marketing campaign because there is no allegation of reliance on specific statements or misrepresentations." (Mem. & Order [1790] at 29.) As to the instant lawsuit, the Court granted the motion and dismissed all fraud claims based on alleged affirmative misrepresentations. (*Id.* at 33.) While the Court denied the motion as to claims of misrepresentation by concealment, it provided that even concealment claims were dismissed "to the extent they are premised on the claim of fraudulent omissions in the national advertising and marketing campaign." (*Id.*) As a result, evidence related to national advertising, marketing, and promotion (whether for off-label use or otherwise), including the Plea, is not relevant to any issue in this lawsuit.[5]

This Court has also repeatedly recognized that off-label promotion – the subject of the Plea – does not constitute fraud, much less the narrow fraud by omission claim that the Court allowed to proceed. (*See, e.g.*, Mem. & Order [1780] at 37-38, May 13, 2009 (denying class certification and holding that consumer plaintiffs must establish that "defendants' *fraudulent* marketing, not simply their off-label marketing, caused the prescriptions written for the putative class members")); *see also In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 92 n.6

---

[5] Defendants have separately moved *in limine* to exclude evidence of Defendants' marketing and promotional activities. Defendants incorporate that motion herein by reference.

6

(D. Mass 2007) (Saris, J.) ("While off-label marketing is illegal, there is no private right of action to enforce it. To succeed on their claims, plaintiffs must prove that defendants' representations were false, along with all other elements of their claims." (citation omitted)). Just as Plaintiff may not, under this Court's May 26 Order, rely on generalized evidence of off-label or fraudulent marketing to satisfy his burden to prove fraud, he should not be permitted to use the Plea as a proxy for evidence of fraud that does not exist in this case.

Here, as this Court has found, there is no evidence that Defendants made any affirmative misrepresentation of material fact regarding Neurontin to Mrs. Bulger's prescribing physicians, much less that those doctors were the target of, or relied on, any statement at issue in the Plea. (Mem. & Order [1790] at 29, 33.) Moreover, as established above, nothing in the Plea is relevant to Neurontin's safety or any alleged intentional concealment of material information about its side effects, the only basis for a fraud claim under this Court's May 26 Order. (*See id.* at 33.) Accordingly, the Plea should be excluded as irrelevant to Plaintiff's fraud claim.

## II.     The Probative Value Of The Plea Is Substantially Outweighed By The Danger Of Unfair Prejudice And Undue Delay

In light of the Plea's non-existent probative value, and the certainty of unfair prejudice to Pfizer and undue delay were the Plea to be disclosed to the jury, Rule 403 mandates preclusion of reference to or introduction of the Plea.

Rule 403 prohibits the introduction of evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also Williams v. Drake*, 146 F.3d 44, 48 (1st Cir. 1998) ("Rule 403 allows the exclusion of evidence which, though relevant, carries unwanted baggage, such as unfair prejudice or potential juror confusion."). "'Unfair prejudice' within [this] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Fed. R. Evid. 403 advisory committee's note); *accord United States v. Buchanan*, 964 F. Supp. 533, 535 n.2

(D. Mass. 1997). Such a result is precisely the risk the introduction of the Plea would pose in the instant case. The introduction of evidence that Warner-Lambert pleaded guilty to violations of the FDCA in the marketing of Neurontin – notwithstanding the irrelevance of those violations to the facts and claims in the instant dispute – would almost certainly increase the likelihood that a jury in this case would reach a decision based not on the facts properly before them, but on the basis of the guilty plea. Evidence of the related investigation, Sentencing Memorandum, and agreements with the government that Plaintiff seeks to introduce will have the same effect.

Indeed, the First Circuit has cautioned that the danger of unfair prejudice is especially severe in the case of "evidence of a judicial determination of prior illegal conduct on the part of the defendant," because "'[t]he deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught is a tendency which cannot fail to operate with any jury.'" *Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449, 459 (1st Cir. 1963) (quoting 1 John H. Wigmore, *Wigmore on Evidence* § 57 (3d ed. 1940)) (affirming, in civil antitrust action, trial court's exclusion of antitrust decree, findings, and opinion in prior government case); *see also Williams*, 146 F.3d at 48 (affirming, in related civil suit, the exclusion of a guilty plea previously entered by plaintiff before a prison disciplinary board); *Gil-DeRebollo v. Miami Heat Ass'ns*, 137 F.3d 56, 64 (1st Cir. 1998) (approving trial court's exclusion of conviction from plaintiff's subsequent civil action because, "admission of [defendant's] criminal conviction would have allowed the jury to substitute the judgment reached in the criminal proceeding for its own"); *Diaz v. Cianci*, 737 F.2d 138, 139-40 (1st Cir. 1984) (affirming exclusion, in related civil suit, of evidence of plaintiff's conviction for assaulting police officer during the same event because of danger of unfair prejudice).

The use to which Plaintiff seeks to put the Plea is graphically illustrated by the deposition of Martin Teicher, general counsel of Pfizer Consumer Healthcare, which Plaintiff has designated in significant part in his pretrial deposition designations. In the designated portions of the testimony, the plaintiff's attorney repeatedly questions Mr. Teicher about Pfizer's

marketing practices, attempting to impugn Pfizer's character on that basis. For example, after questioning Mr. Teicher on Warner-Lambert's 2004 guilty plea, counsel asked: "Does an ethical company do this kind of stuff that you have admitted to doing?" (Exh. B, Teicher Dep., at 132:11-13.) Counsel also inquired whether Mr. Teicher understood the difference between a drug company and a "drug pusher" and asked specifically,

> [W]ould you agree with me a drug pusher is someone who is selling a drug illegally? . . . Your company did that, didn't it?

(*Id.* at 58:23-25, 59:6.) These suggestions that Warner-Lambert's guilty plea make the company "unethical," "imprudent," and a "drug pusher," are the very definition of unfair prejudice.

In addition to the risk of unfair prejudice, the introduction of the Plea will lead to a "trial within a trial" and waste both the Court's and the jury's time. To respond and place the guilty plea and related facts and documents in proper context, Defendants would need to present opposing expert testimony and other evidence. The amount of time necessary to cover areas of evidence implicated by the Plea would risk leaving the impression with jurors that Pfizer is on trial for its promotion of Neurontin, a completely irrelevant subject in this case, rather than for an alleged safety risk associated with Neurontin. Furthermore, if the guilty plea is introduced, Pfizer would need to explain that the conduct at issue constituted a misdemeanor violation, but was elevated to felony status as a result of Warner-Lambert's previous conduct in an unrelated matter years earlier. The introduction of the guilty plea would thus place before the jury not one, but two violations of the FDCA that have absolutely no relevance to the instant dispute.

Even setting aside the irreversible, unfair prejudice that Pfizer would suffer were the Plea to be introduced, the only way to avoid this irrelevant, time-consuming "trial within a trial" and properly focus the jury on Plaintiff's product liability claim is to exclude all evidence of the Plea.

### III.  The Plea Is Improper Character Propensity Evidence

The Plea should also be excluded under Rule 404(b) as improper character propensity evidence. As the First Circuit has explained:

> To admit evidence of prior bad acts, a trial court must find that the evidence passes two tests. First, the evidence must have "special relevance" to an issue in

9

> the case such as intent or knowledge, and must not include "bad character or propensity as a necessary link in the inferential chain." Second, under Rule 403, evidence that is specially relevant may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

*United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000) (quoting *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996)); *see also United States v. Gilbert*, 229 F.3d 15, 20-21 (1st Cir. 2000). As demonstrated above, the Plea is irrelevant to this dispute and will cause unfair prejudice and undue delay. Because neither Mrs. Bulger nor her prescribing doctors were subject to the conduct described in the Plea, the only possible use of the Plea is to show a propensity for improper conduct, which is specifically precluded by Rule 404(b). *See Gilbert*, 229 F.3d at 24. While Rule 404(b) allows the introduction of other crimes, wrongs, or acts for certain purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," Fed. R. Evid. 404(b), Plaintiff has not identified and cannot identify such a purpose for introducing the Plea in the instant personal injury action.

To the extent Plaintiff attempts to argue that the Plea is evidence of a general motive to make money, such a generic motive does not satisfy Rule 404(b)'s separate purpose requirement. *See, e.g.*, *Jankins v. TDC Mgmt. Corp., Inc.*, 21 F.3d 436, 441 (D.C. Cir. 1994) (holding prior conduct evidence proffered to demonstrate, *inter alia*, greed, inadmissible under Rule 404(b) because it was "only a shade less general than a claim that [defendant] was a bad man"). Moreover, the Plea addresses only strict liability violations and, therefore, has no relevance to Warner-Lambert's intent or motive.[6]

---

[6] The Plea is also inadmissible as impeachment evidence. First, as discussed above, the guilty plea was limited to certain violations of the FDCA's labeling and promotional provisions. The Plea is not relevant to impeach by contradiction in the absence of witness testimony inconsistent with the specific admissions contained in the Plea. *See* Fed. R. Evid. 613; *United States v. Perez-Perez*, 72 F.3d 224, 227 (1st Cir. 1995). Thus, the Plaintiff would first have to elicit testimony on an irrelevant subject, obtain inconsistent testimony, and then offer the Plea as impeachment. The relevancy requirements may not be circumvented so easily.

Moreover, because the Plea did not involve a crime of dishonesty or false statement, such as perjury, it cannot be offered under Rule 609 to show the alleged propensity of a witness to testify truthfully. *See* Fed. R. Evid. at 609(a)(2); *United States v. Meserve*, 271 F.3d 314, 328 (1st Cir. 2001) ("To be admissible under Rule 609(a)(2), a prior conviction must involve 'some element of deceit, untruthfulness, or falsification which would tend to show that an accused would be likely to testify
*(cont'd)*

## IV. Evidence Of The Plea Should Not Be Admitted On The Issue of Punitive Damages Because The Conduct At Issue In The Plea Shares No Nexus With Plaintiff's Injuries

Plaintiff should not be allowed to manufacturer "relevance" arguments for evidence of the Plea by arguing that such evidence is relevant to the issue of punitive damages.[7] In *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), the United States Supreme Court held that, as a matter of due process, "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *Campbell*, 538 U.S. at 422-23. The Court explained that "[a] defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.* at 423. Moreover, the Court stated that "[d]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis." *Id.*

In *Campbell*, the Supreme Court held unconstitutional the lower court's punishment of twenty years of various dissimilar conduct by the defendant, explaining that courts are not permitted "to expand the scope of the case so that a defendant may be punished for any malfeasance." *Id.* at 424. Punishment based on dissimilar conduct "creates the possibility of multiple punitive damages awards for the same conduct" since "nonparties are not bound by the judgment some other plaintiff obtains." *Id.* at 423. A punitive damages award based on conduct unrelated to the plaintiff's harm enters the "zone of arbitrariness" that violates due process. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996).

Later, the Supreme Court explicitly clarified that due process "forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties . . . , i.e.,

---

*(cont'd from previous page)*
untruthfully' . . . ." (citation omitted)). In any event, a corporate plea to a crime cannot be offered as evidence of an employee's propensity to testify truthfully. *See Walden v. Ga.-Pac. Corp.*, 126 F.3d 506, 523-24 (3d Cir. 1997).

[7] As set forth in Pfizer's concurrently filed Trial Brief, punitive damages are not available to Plaintiff because he has not established, and cannot establish, the requisite threshold showing of egregious conduct.

11

injury that it inflicts upon those who are, essentially, strangers to the litigation." *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007); *see also Campbell*, 538 U.S. at 423 ("Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis . . . ."). First, to allow punitive damages to be based upon harm to non-parties would violate due process by denying the defendant "'an opportunity to present every available defense.'" *Philip Morris*, 549 U.S. at 353 (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)). In any trial, the ability of a defendant to present evidence showing, for example, that the other parties' injuries were not caused by its product, is impossible. *See id.* at 353-54. That is especially true in this case where the Court has limited each side to 21 hours to present evidence.

The Supreme Court further explained that "to permit punishment for injuring a nonparty victim would add a near standardless dimension to the punitive damages equation," magnifying the due process risks of "arbitrariness, uncertainty and lack of notice." *Id.* at 354. Finally, the Court stated, there is "no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others." *Id.* The Court "made clear that the potential harm at issue was harm potentially caused the plaintiff." *Id.*

The Plea is further objectionable because it involves conduct in other states. The introduction of such evidence would also contravene the holding in *Campbell* that, as a matter of due process, state sovereignty and comity, punitive damages may not be based on a defendant's conduct in other states. *See Campbell*, 538 U.S. at 422. The Court explained that "[a] basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction." *Id.* Therefore, the Court concluded both that a jury "may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred" and that a State has no "legitimate concern in imposing punitive damages to punish a defendant for *unlawful* acts committed outside of the State's jurisdiction." *Id.* at 421-22 (emphasis added).

Punishment that serves no legitimate State interest and adjudication of conduct occurring outside the State and affecting persons not before the court offend due process. *Id.*[8] Consequently, as a matter of constitutional due process, evidence of unrelated cases involving Pfizer in other states may not be considered for purposes of punitive damages and should be excluded.

Plaintiff cannot avoid the dictates of *BMW*, *Campbell* and *Philip Morris* by arguing that the evidence is offered on the issue of reprehensibility.[9] The Supreme Court in *Campbell* made clear that dissimilar conduct has no place in the analysis of a defendant's reprehensibility for purposes of punitive damages and should be excluded as irrelevant. *See Campbell*, 538 U.S. at 422-23. Under the Supreme Court's punitive damages jurisprudence, only evidence of conduct that is similar to the conduct that resulted in harm to the plaintiff may have any relevance to establishing the reprehensibility of a defendant's conduct toward the plaintiff. *See id.* at 423-24. Dissimilar conduct cannot be used to show repeated misconduct or "recidivism" on the part of a defendant. As the Supreme Court stated in *Campbell*, if punitive damages are to be justified on the grounds that the defendant is a "recidivist," "courts must ensure the conduct in question *replicates* the prior transgressions." *Id.* at 423 (emphasis added).

For the reasons discussed above, the Plea involved specific instances of off-label marketing that preceded Mrs. Bulger's first Neurontin prescription by several years and have no relation to her claim. To allow Plaintiff to introduce evidence of the Plea on the issue of "reprehensibility" does not satisfy *Campbell*'s requirement that the conduct replicate the conduct directed at the plaintiff. *See IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 313-14

---

[8] In *White v. Ford Motor Co.*, 312 F.3d 998 (9th Cir. 2002), the Ninth Circuit explained the federalism concerns that prohibit punishment even of unlawful out-of-state conduct. *See id.* at 1014, 1017-18. Because "the difference in how [states] penalize . . . tortious conduct expresses significantly different policy choices," the federalism concerns of *BMW* apply with equal force to the punishment and deterrence of unlawful out-of-state conduct. *Id.* at 1018. Thus, "'a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' . . . conduct in other States,'" whether the extraterritorial conduct is lawful or not." *Id.* (alteration in original, footnote omitted, quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572 (1996)).

[9] Reprehensibility is one of the three guideposts adopted by the Supreme Court for determining whether a punitive award is grossly excessive and unconstitutional. *See BMW*, 517 U.S. at 575; *Campbell*, 538 U.S. at 418.

(4th Cir. 2003) (holding that evidence that the defendant engaged in a scheme to put the plaintiff out of business could not support a punitive damage award under *Campbell*, when the conduct alleged was independent of the acts upon which liability was based); *Stroud v. Abington Mem. Hosp.*, 546 F. Supp. 2d 238, 259 (E.D. Pa. 2008) (allegations of a cover-up, which were independent of the basis for imposing liability on the defendant, could not support punitive damages); *Estate of Embry v. GEO Transp. of Ind., Inc.*, 478 F. Supp. 2d 914, 923 (E.D. Ky. 2007) (excluding evidence of dissimilar out-of-state conduct because it lacked any proximate relationship with the in-state harm and thus served "no deterrent purpose"); *Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp. 2d 1303, 1324 (S.D. Fla. 2004) (applying *Campbell* and holding that prior allegations of sexual harassment made against company employee involved dissimilar conduct and were irrelevant to determination of a punitive damages award against company), *aff'd*, 183 F. App'x 872 (11th Cir. 2006). Accordingly, *Campbell* and *Philip Morris* require exclusion of the Plea.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their motion in limine to exclude any evidence of or reference to the Plea at trial.

Dated: June 22, 2009                          Respectfully submitted,

                                                          SKADDEN, ARPS, SLATE,
                                                              MEAGHER & FLOM LLP

                                                      By: /s/ Mark S. Cheffo
                                                                 Mark S. Cheffo

                                                           Four Times Square
                                                           New York, NY 10036
                                                           Tel:  (212) 735-3000

                                                                     -and-

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
    William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

-and-

SHOOK, HARDY & BACON L.L.P.

By: /s/ Scott W. Sayler
    Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel:  (816) 474-6550

-and-

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
    David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on June 22, 2009.

/s/ David B. Chaffin
David B. Chaffin