UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------------x
```
In re: NEURONTIN MARKETING, SALES
PRACTICES, AND PRODUCTS LIABILITY
LITIGATION                                          MDL Docket No. 1629
```
------------------------------------------------------------x
```
THIS DOCUMENT RELATES TO:                    Master File No. 04-10981

*Bulger  vs. Pfizer, et al., 1:07-cv-11426-PBS*        Judge Patti B. Saris

```
------------------------------------------------------------x
```

PLAINTIFF'S REQUEST TO CHARGE NO. 1
§ 1.20 Burden of Proof

The standard of proof in a civil case is that a plaintiff must prove his case by a

preponderance of the evidence. A matter has been proved by a preponderance of the

evidence if you determine, after you have weighed all of the evidence that that matter is

more probably true than not true.

PLAINTIFF'S REQUEST TO CHARGE NO. 2

§ 11.1 Introduction

The plaintiff claims that the defendants are responsible for Susan Bulger's death because the defendants were negligent and/or that they breached an implied warranty of merchantability and/or made intentional or negligent misrepresentations in marketing the product Neurontin and/or fraudulently concealed information that defendants knew or should have known about the risk of suicide in the population of patients who took the drug off-label, that is, without the Food and Drug Administration, or FDA, having approved Neurontin for the medical condition for which their doctor prescribed it.

The plaintiff, in other words, proceeds under five independent theories of law, negligence, breach of warranty, intentional misrepresentation or negligent misrepresentation and fraudulent concealment. I will explain each.

PLAINTIFF'S REQUEST TO CHARGE NO. 3
Negligence: Violation of a criminal statute

The law forbids drug manufacturers from marketing prescription drugs for purposes not approved by the FDA and forbids drug manufacturers from misbranding drugs by not providing adequate instructions for the use of such drugs. Violation of these laws is some evidence of negligence.

You are instructed that defendant Warner-Lambert has plead guilty to the felony of distribution of an unapproved new drug by introducing Neurontin for use in the treatment of neuropathic pain, bipolar disorder, as monotherapy for epilepsy, and other unapproved uses, when no approval by the FDA was in effect for these uses, in violation of federal law.

You are instructed that defendant Warner-Lambert has plead guilty to the felony of misbranding Neurontin by introducing quantities of Neurontin into commerce in Puerto Rico, Massachusetts, and elsewhere for use in the treatment of neuropathic pain, bipolar disorder, as monotherapy for epilepsy, and other unapproved uses, and which was misbranded in that Neurontin's labeling lacked adequate directions for such uses, in violation of federal law.

PLAINTIFF'S REQUEST TO CHARGE NO. 4
§ 11.2.8 Violation of Safety Standards

Violation of a safety statute or regulation is some evidence of negligence. The violation in and of itself does not mean that the defendants were negligent, but it is some evidence of negligence which you may consider along with all of the other evidence on that point. It is, of course, for you to decide whether there was a such a violation in this case.

FDA regulations enacted by the legislature may be relevant

  - on the issue of due care or lack thereof;

  - as proof that the drug manufacturer knew or should have known of its obligations to the public in the safe marketing of its product;

  - as reflective of industry custom and practice; and

  - as a basis for examination or cross-examination of expert witnesses.

In that regard, the Code of Federal Regulations provide that:

 "[T]he labeling shall be revised to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug: a causal relationship need not have been proved." 21 C.F.R. § 201.57(e); and

that drug manufacturers "shall promptly review all adverse drug experience information obtained from any source" and "shall also develop written procedures for the surveillance, receipt, evaluation, and reporting of post marketing adverse drug experiences to the FDA" 21 C.F.R. § 314.80.


In this case, plaintiff alleges that defendants knew or should have known about post marketing adverse drug experiences relating to psychobiologic adverse events, including suicidality, particularly those reported with off-label use of Neurontin. Plaintiff claims

that defendants not only had the duty to develop written procedures for such adverse drug experiences, but they should have evaluated and taken action in response to such psychobiologic adverse drug experiences reported with Neurontin.

If you find that defendants violated either or both of the above regulations, that violation is some evidence of negligence.

PLAINTIFF'S REQUEST TO CHARGE NO. 5
§ 11.2 Negligence

Negligence generally is the failure to exercise that degree of care which a reasonable

person, or in this case, drug manufacturer, would exercise in the circumstances.

Negligence in its ordinary sense is the failure of a responsible person, either by omission

or by action, to exercise that degree of care, vigilance and forethought which, in the

discharge of the duty then resting on him, a person of ordinary caution and prudence

ought to exercise under the particular circumstances. In this case you are asked to

consider whether the defendants exercised that degree of care which an ordinary,

reasonably prudent drug manufacturer would have exercised in like circumstances.

PLAINTIFF'S REQUEST TO CHARGE NO. 6
§ 11.2.2 Duty – Manufacturer

The defendants are held to that standard of care which the ordinary, reasonably prudent

drug manufacturer would have exercised in like circumstances.

PLAINTIFF'S REQUEST TO CHARGE NO. 7

§ 11.4 State of the Art

A drug manufacturer has an obligation to warn and provide instructions about risks that were reasonably foreseeable at the time of marketing or that could have been discovered by reasonable testing prior to marketing the product. A drug manufacturer will be held to the standard of knowledge of an expert in the appropriate field and has a continuing duty to warn consumers of risks discovered following the marketing of the product.

PLAINTIFF'S REQUEST TO CHARGE NO. 8
§ 11.2.4 Duty to Warn

A manufacturer's duty to exercise reasonable care includes a duty to give adequate warnings and instructions regarding the nature and extent of dangers which will or may arise from the use or foreseeable misuse of the product about which the manufacturer knows or should known. When considering the extent and nature of the manufacturer's duty of care, the jury should take into account knowledge and proficiency that the manufacturer had or could be expected to have regarding the use of the product.

(a) Adequate Warning

The manufacturer has a duty to warn or instruct users of its product of the foreseeable dangers involved in the product's normal and intended use.

A product is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer, and the omission of the instructions or warnings renders the product not reasonably safe for the uses for which it was marketed.

(d) Warning heeded

The plaintiff is entitled to a presumption that, had the decedent and/or her prescribing physicians been given a warning they would have heeded it.

PLAINTIFF'S REQUEST TO CHARGE NO. 9

§ 11.2.7 Duty to Foreseeable User

The manufacturer's duty of reasonable care extends to the purchaser of the product and

also extends to all others whose use of the product was foreseeable.

PLAINTIFF'S REQUEST TO CHARGE NO. 10
Proximate Cause

Proximate cause means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary case would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event. The defendants' conduct was the legal cause of the decedent's injuries and death if it was a substantial factor in bringing it about. It does not matter whether other concurrent causes contributed to decedent's injuries and death so long as you find that defendants' conduct was a substantial factor. "Substantial" is used here in its ordinary sense and requires no further elaboration.

PLAINTIFF'S REQUEST TO CHARGE NO. 11
§ 11.3 Breach of Warranty

Massachusetts law implies a warranty, or promise, by the manufacturer that the goods are fit for the ordinary purposes for which such goods are used. The manufacturer warrants that its product is fit for ordinary purposes, which include both those uses which the manufacturer intended and those uses and misuses which are reasonably foreseeable. If a product is in a defective condition and thus unreasonably dangerous, then it is not fit for the product's ordinary purposes, and the merchant has breached the warranty.

PLAINTIFF'S REQUEST TO CHARGE NO. 12
§ 11.3.1 Elements

In order to prevail on the claim that the defendants breached the implied warranty of

merchantability, the plaintiff has the burden of proving four elements of the claim. The

plaintiff must prove each element by a preponderance of the evidence.

First, the plaintiff must prove that the defendants manufactured and sold the product in

question.

Second, the plaintiff must prove that, at the time of the decedent's injury and death, she

was a person whom the manufacturer might reasonably have expected to use, consume or

be affected by the product in a manner that the defendants intended or reasonably could

have foreseen.

Third, the plaintiff must prove that a defective condition rendering the product

unreasonably dangerous existed at the time the product left the hands of the defendants,

so that the product was not reasonably suitable for the ordinary uses for which goods of

that kind and description were sold. A product may be defective by the failure of the

manufacturer to provided adequate warnings at the time of marketing as I state below.

Fourth, the plaintiff must prove that the defective condition which existed at the time of

marketing of the product was a cause of Susan Bulger's injuries and death.

(d) Adequate Warning

A failure by a manufacturer or vendor to give an adequate warning regarding reasonably

foreseeable risks constitutes a breach of the implied warranty of merchantability. In order

to prevent the product from being unreasonably dangerous, the manufacturer may be

required to give directions or warnings as to its use. Even if a product is properly

designed, it is unreasonably dangerous and, therefore, defective when the foreseeable

risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings.

A product is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer, and the omission of the instructions or warnings renders the product not reasonably safe.

The adequacy of the warning is measured by the warning that would be given at the time of marketing by an ordinarily prudent vendor. A vendor has an obligation to warn and provide instructions about risks that were reasonably foreseeable at the time of marketing or that could have been discovered by reasonable testing prior to marketing the product. A vendor will be held to the standard of knowledge of an expert in the appropriate field and has a continuing duty to warn consumers of risks discovered following the marketing of the product.

(e) Post marketing duty to warn

Under certain circumstances, a product seller has a duty to warn users of a risk or hazard in a product discovered after marketing. A post marketing duty to warn rests on different considerations than does the manufacturer's duty to warn at the time it markets the product. Once a manufacturer markets a product and thereby releases it into the stream of commerce, it is ordinarily more difficult for the manufacturer to communicate dangers or risks in the product to users once the manufacturer has lost control over the product.

The law recognizes that warnings about risks discovered after marketing are sometimes necessary to prevent significant harm to persons or property. But an unlimited post marketing duty to warn would impose unacceptable burdens on product manufacturers. If

every post marketing improvement in a product design were to give rise to a duty to warn users of the risks of continuing to use the existing design, the burden on product sellers would be unacceptably great. On the other hand, where a post marketing warning may prevent serious harm, the law is much more likely to require a post marketing warning, So in formulating the rules concerning liability for post marketing failure to warn, the law tries to accommodate these concerns.

I will start by reading you the basic rule: "One engaged in the business of marketing or otherwise distributing products is subject to liability for harm to persons or property caused by the seller's failure to provide a warning after the time of marketing or distribution of a product if a reasonable person in the seller's position would provide such a warning."

The focus in the rule is on what a reasonably prudent drug manufacturer would have done. In this case, it is for you to decide whether a reasonable drug manufacturer in the defendant's position would have provided a warning, or would have provided a warning in a different fashion, or would have used different words to communicate the risks, or would have disseminated the warning differently under the circumstances of this case.

*Factors*

In determining what a reasonable manufacturer would have done, the law provides specific factors to consider. The rule states as follows: "A reasonable person in the seller's position would provide a warning after the time of marketing if:

1. the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and

2.  those to whom a warning might be provided can be identified and can reasonably
    be assumed to be unaware of the risk of harm; and

3.  a warning can be effectively communicated to and acted on by those to whom a
    warning might be provided; and

4.  the risk of harm is sufficiently great to justify the burden of providing a warning."

Those are the four factors that you should consider in deciding whether the defendant
manufacturer had a post marketing duty to warn in this case. If all four factors are
present, then the manufacturer has a duty to issue post marketing warnings. If one of
those four factors is absent, then the manufacturer is under no duty to issue a post
marketing warning.

Let me now explain each of these four elements of proof that the plaintiff must meet:

First, plaintiff must prove that the defendants knew or reasonably should have known that
the product, Neurontin, posed a substantial risk of harm to persons or property.

A duty to warn after the time of marketing cannot arise unless the product seller knows,
or in the exercise of reasonable care should have known, of the product-related risk that
causes plaintiff's harm. The seller may have known or should have known of the risk at
the time of marketing, in which case failure to warn may cause the product to be
defective at time of marketing. But even if the product is not defective at the time of
marketing because no reasonable seller would have known of the risk, knowledge of the
risk may come after marketing and may give rise to a duty to warn at that time.

For a post marketing duty to warn to arise, there must be reasonable evidence of an
association of a serious hazard with a drug: a causal relationship need not have been
proved.

Second, plaintiff must prove that those to whom the warning might be provided can be identified, and can reasonably be assumed to be unaware of the risk of harm.

In some situations there may be a problem identifying those to whom a post marketing warning might be provided. When products are originally sold or distributed, most often the seller accompanies the product, together with its packaging, with whatever warnings are appropriate. When knowledge of product-related risk is available to the seller only after marketing, it may be difficult for the seller to determine who, in the general population of product users and consumers, is in a position to respond to warnings effectively. In some instances, customer records may identify the population to whom warnings should be provided. Individual names and addresses are not necessarily required. Records may indicate classes of product users, or geographically limited markets. But when no such records are available, the seller's inability to identify those for whom warnings would be useful may properly prevent a post marketing duty to warn from arising. If the plaintiff is a "member of a universe too diffuse and too large" for the manufacturer or seller to identify, a post marketing warning is not required.

Furthermore, it must reasonably appear that those to whom a warning might be provided are unaware of the risk. Similarly, even if knowledge of the risk reasonably becomes available to the seller only after the original marketing, if users and consumers are at the time generally aware of the risk, a post marketing warning is not required.

Third, plaintiff must prove a warning can be effectively communicated to and acted on by those to whom a warning might be provided.

For a post marketing duty to warn to arise, the seller must reasonably be able to communicate the warning to those identified as appropriate recipients. When original

customer sales records indicate which individuals are probably using the product in question, direct communication of a warning may be feasible. When direct communication is not feasible, it may be necessary to utilize the public media to disseminate information regarding risks of substantial harm. As the group to whom warnings might be provided increases is size, costs of communicating warnings may increase and their effectiveness may decrease.

Those to whom such warnings are provided must be in a position to reduce or prevent product-caused harm.

Fourth, plaintiff must prove that the risk of harm is sufficiently great to justify the burden of providing a warning.

A post marketing warning is required only when the risk of harm is sufficiently great to justify undertaking a post marketing warning program. Again, for a post marketing duty to warn to arise, the risk of harm must be substantial. Because post marketing increases in knowledge of risks are to some extent inevitable, no duty arises after the time of sale to issue warnings regarding product-related accidents that occur infrequently and are not likely to cause substantial harm. But a post marketing duty to warn may apply to an infrequently occurring risk that is likely to cause substantial harm.

Thus you must determine whether a reasonable manufacturer would have provided post marketing warnings, and if so, what those warnings would have stated and how they would have been communicated. The test again is what a reasonable *drug* manufacturer would have done under the circumstances. The test of reasonableness is determined by reference to the four factors that I have explained to you.

PLAINTIFF'S REQUEST TO CHARGE NO. 13
§ 11.3.3 Foreseeable Use

The plaintiff also must prove that at the time of the decedent's death she was using the

product in a manner that the manufacturer intended or reasonably could have foreseen.

The manufacturer is obliged to take into account both the use of the product as intended

and the foreseeable ways in which the product may be misused. Stated differently, the

manufacturer is obliged to anticipate the environment in which its product will be used,

and it must design and warn against the reasonably foreseeable risks attending the

product's use in that setting.

PLAINTIFF'S REQUEST TO CHARGE NO. 14
§ 11.3.4 Defect – Causation

In this action for breach of warranty, the plaintiff also has the burden to prove by a fair

preponderance of the evidence that the product defect or unreasonably dangerous

condition, which was present at the time that the product left the possession of the

defendants, caused or enhanced the decedent's injuries and death. This is the same

definition and instruction of causation I have given to you above.

PLAINTIFF'S REQUEST TO CHARGE NO. 15
§ 20.1 Intentional Misrepresentation – Elements

In this case, the plaintiff claims that the defendant misrepresented an important fact concerning the risks of suicidality associated with the use of the drug Neurontin in the population of patients taking the drug off label, that is, for medical conditions for which the FDA had not approved Neurontin, and as a result, Susan Bulger took the drug and committed suicide, which the plaintiff says she would not have done if she or her prescribing physicians had known the true state of affairs. The defendant denies that it represented any important fact to Susan Bulger or to her prescribing physicians.

The plaintiff may recover money damages from the defendants for intentional misrepresentation if and only if he proves the following by a fair preponderance of the credible evidence:

1. that the defendant made a false statement to the plaintiff's decedent, and that this statement concerned some fact that a reasonable person should consider important to the decision that the decedent was about to make;

2. that when the defendants made the statement, the defendants either knew that the statement was false, or recklessly made the statement by willfully disregarding its truth or falsity.

3. that the defendants made the false statement with the intention that consumers such as  Susan Bulger would rely on that statement in making their decisions;

4. that in making her decision to take the drug, Susan Bulger did in fact rely on the defendants' statement as true, and that her reliance was reasonable under the circumstances.

5.   that Susan Bulger suffered injury and death as a result of relying on the

defendants' false statement.

If the plaintiff proves these five things by a preponderance of the credible evidence, your

verdict will be for the plaintiff, and you must then go on to determine the amount of

money damages to be awarded to the plaintiff. If the plaintiff has failed to prove any one

of these five things, then you verdict must be for the defendants on this cause of action.

PLAINTIFF'S REQUEST TO CHARGE NO. 16

§ 20.2 Negligent Misrepresentation – Elements

In this case, the plaintiff claims that the defendants negligently misrepresented an important fact the risks of suicidality associated with the use of the drug Neurontin in the population of patients taking the drug off label, that is, for medical conditions for which the FDA had not approved Neurontin, and as a result, Susan Bulger took the drug and committed suicide, which the plaintiff says she would not have done if she or her prescribing physicians had known the true state of affairs. The defendant denies that it represented any important fact to Susan Bulger or to her prescribing physicians. The plaintiff may recover money damages from the defendants for negligent misrepresentation if and only if he proves the following by a fair preponderance of the credible evidence:

1. that the defendant made a false statement to the plaintiff's decedent, and that this statement concerned some fact that a reasonable person should consider important to the decision that the decedent was about to make;

2. that when the defendants made the statement, the defendants negligently failed to determine if it was true or false. The defendants acted negligently if they made a statement about an important fact without using the amount of care a reasonable person would use in these circumstances to see that what they said was true.

3. that the defendant made the false statement with the intention that consumers such as  Susan Bulger would rely on that statement in making their decisions;

4.   that in making her decision to take the drug, Susan Bulger did in fact rely on the
     defendants' statement as true, and that her reliance was reasonable under the
     circumstances.

5.   that Susan Bulger suffered injury and death as a result of relying on the
     defendant's false statement.

If the plaintiff proves these five things by a preponderance of the credible evidence, your
verdict will be for the plaintiff, and you must then go on to determine the amount of
money damages to be awarded to the plaintiff. If the plaintiff has failed to prove any one
of these five things, then your verdict must be for the defendants, and you need not
consider the issue of damages on this cause of action.

PLAINTIFF'S REQUEST TO CHARGE NO. 17
Fraudulent Concealment of Material Facts

In this case, the plaintiff claims that the defendants fraudulently concealed or suppressed

material information by failing to disclose important facts concerning risks of suicidality

associated with the use of the drug Neurontin in the population of patients taking the drug

off label, that is, for medical conditions for which the FDA had not approved Neurontin.

A drug manufacturer has a duty to disclose to physicians and patients material facts about

the risks of the drug, particularly when it is engaged in off-label marketing for uses not

approved by the FDA, if it knows that the plaintiff and/or his prescriber does not know or

cannot reasonably discover the undisclosed facts. If you find by a preponderance of the

credible evidence that the defendants fraudulently concealed material  facts about the

risks of Neurontin, your verdict will be for the plaintiff, and you must then go on to

determine the amount of money damages to be awarded to the plaintiff.

PLAINTIFF'S REQUEST TO CHARGE NO. 18
Successor Liability

It is the law in Massachusetts that a company which purchases the assets of another company is liable for the liabilities of the seller corporation when (1) the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) the transaction amounts to a consolidation or merger of the purchaser and seller corporations and/or (3) the purchaser corporation is a continuation of the seller corporation. In this cases it is admitted by the Defendants that Parke-Davis is an operating division of Warner-Lambert which was acquired by Pfizer in 2000, and that Pfizer is the sole member of Warner-Lambert Company LLC, which is the successor to Warner Lambert Company. Therefore, you will find that Pfizer is legally responsible for any and alls acts and/or omissions of any or all of the other defendants.

PLAINTIFF'S REQUEST TO CHARGE NO. 19
§ 20.3.3 Plaintiff as Member of Limited Group of Persons

It is not required that the plaintiff's decedent was identified or known to the defendants as an individual when the Neurontin labeling information and/or package insert was supplied. It is enough that the defendants intended the information to reach and influence either a particular person or persons known to them, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. The plaintiff must prove that the defendants supplied the Neurontin labeling information and/or package inserts for repetition to a certain group or class of persons and that the decedent falls within such group or class, even though the defendants had never heard of the decedent by name when the information was given.

PLAINTIFF'S REQUEST TO CHARGE NO. 20
§ 3.1 Preliminary Instruction – Wrongful Death Statute

A wrongful death action, such as this one, is a tort action brought by the administrator of

the decedent's estate. Here the plaintiff the administrator of the estate of Susan Bulger.

The plaintiff has brought this action to recover damages for the benefit of the decedent's

next of kin caused by the decedent's death.

PLAINTIFF'S REQUEST TO CHARGE NO. 21
§ 3.5 Compensatory Damages – Death

I now turn to the subject of damages. You will only reach the issue of damages if you find that the defendants are liable on one or more of the plaintiff's claims, and that the defendants' conduct was a proximate cause of the decedent's injuries and death. If you find that the plaintiff is entitled to damages, then as with all the other elements, the plaintiff bears the burden of proving his damages by a fair preponderance of the evidence. The purpose of the law in awarding damages is to reasonably and fairly compensate for the losses incurred because of another's negligent or intentional conduct. Recovery for wrongful death represents damages to the survivors for the loss of value of the decedent's life.

There is no special formula under the law to assess the plaintiff's damages.

It is your obligation to assess what is fair, adequate, and just, based on the evidence presented to you. You must use your wisdom and judgment to translate into dollars and cents the amount which will fully, fairly, and reasonably compensate the next of kin for the death of the decedent.

In determining the amount of damages which the plaintiff is entitled to recover, there are certain types of loss and expenses which you should take into consideration.

PLAINTIFF'S REQUEST TO CHARGE NO. 22
§ 3.6 Fair Monetary Value of the Decedent to the Beneficiaries

Under the wrongful death statute, the surviving spouse and children of the deceased are entitled to recover the fair monetary of the decedent to them, including, but not limited to, compensation for the loss of reasonably expected "net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent" that Susan Bulger would have given had she lived. The next of kin are entitled to recover the value of any loss of services which the decedent regularly performed, although the services were gratuitous.

You shall not award damages for grief, anguish, and bereavement.

In calculating damages you should take into consideration the life expectancies of decedent and her beneficiaries. Susan Bulger was, at the time of her death 39 years old and, according to the life expectancy tables, had a life expectancy of 80.9 years. Her husband was then 45 years old and had a life expectancy of 76.8 years. The children were 5 and 17 years old and had life expectancies, respectively, of 80 and 74.5 years. Life expectancy tables are simply statistical averages. A person might live longer or die sooner than the time indicated by those tables. The figures I just mentioned are not controlling but may be considered by you.

As I stated before, it is the economic value of Susan Bulger to her children and surviving spouse that you must decide. That proof is incapable of exact proof. Taking into account all of the factors that I have discussed, you must use you own common sense and judgment based on the evidence in determining the amount of economic loss suffered by Susan Bulger's children and surviving spouse.

PLAINTIFF'S REQUEST TO CHARGE NO. 23
§ 3.12 Conscious Pain and Suffering

The next area of damages to consider is conscious pain and suffering of the decedent prior to death. The estate of the decedent is entitled to recover for the conscious pain and suffering sustained by the decedent as a result of defendant's negligence.

The plaintiff must prove by a fair preponderance of the evidence that the decedent sustained conscious pain and suffering as a result of the defendant's conduct.

Pain and suffering are of two types: physical pain and suffering, and mental pain and suffering. For physical pain and suffering, you are to consider the areas of the body in which you find the decedent was physically injured. You are to take into account the past pain and suffering endured by the decedent from the time she first ingested Neurontin until the date of death.

Mental pain and suffering includes any and all nervous shock, anxiety, embarrassment, or mental anguish resulting from ingesting Neurontin. Again, you should take into account mental suffering from the time the decedent first ingested Neurontin until the date of death.

Taking into consideration the nature of the injury, you are to determine what would be a fair and reasonable figure concerning conscious pain and suffering prior to death. The plaintiff is entitled to full compensation for any reduction in Susan Bulger's  enjoyment of life which you conclude resulted from ingesting Neurontin.

To arrive at a monetary figure for the decedent's pain and suffering, you must use your own good sense, background, and experience in determining what would be a fair and reasonable figure to compensate for the physical and mental suffering such as you find has been proved by the evidence.

PLAINTIFF'S REQUEST TO CHARGE NO. 24
§ 3.13 Allocation of Damages

On the special verdict form, you must make a separate determination which respect to the

fair value of the decedent to each of the next of kin.

PLAINTIFF'S REQUEST TO CHARGE NO. 25
§ 3.15 Malicious, Willful, Wanton, and Reckless Conduct – Punitive Damages

The administrator has alleged that the defendants caused the decedent's injuries and death by malicious, willful, wanton, and reckless conduct. The administrator has the burden of proving malicious, willful, wanton, and reckless conduct by a preponderance of the evidence. When you are determining whether the defendants' conduct was malicious, willful, wanton, or reckless, remember the instructions on causation which I gave you earlier.

The defendants have acted maliciously, wantonly, willfully, or recklessly only when the defendants inflict injury intentionally or are so utterly indifferent to the rights of others that the defendants act as if such rights did not exist. The injury is then a willful and not a negligent wrong.

If you determine that the decedent's death was a result of the defendants' malicious, willful, wanton, or reckless conduct, then the statute allows you to award punitive damages to the plaintiff.

Punitive damages are to be awarded in addition to the compensatory damages on which I instructed you earlier. Punitive damages are awarded to punish the defendants and to deter future wrongdoing, not to compensate particular harmed individuals.

In determining the amount of a punitive damage award, if any, you should consider:

1. the character and nature of the defendants' conduct;

2. the defendants' wealth, in order to determine what amount of money is needed to punish the defendants' conduct and to deter any future acts;

3. the actual harm suffered by the plaintiff; and

4.  the magnitude of any potential harm to other victims if similar future behavior is

not deterred.

Dated: June 22, 2009

s/ *Kenneth B. Fromson*_____
Kenneth B. Fromson, Esq.
Finkelstein & Partners, LLP
Attorneys for Plaintiff
1279 Route 300, PO Box 1111
Newburgh, NY 12551

s/ *Jack W. London*_____
Jack W. London, Esq.
Jack W. London and Associates, P.C.
3701 Bee Cave Rd., Suite 200
Austin, TX 78746

s/ *W. Mark Lanier*_____
W. Mark Lanier
The Lanier Law Firm, PLLC
126 East 56th Street, 6th Floor
New York, NY 10022

TO: Skadden, Arps, Slate, Meagher & Flom LLP
     Four Times Square
     New York, N.Y. 10036

     Shook, Hardy & Bacon
     2555 Grand Blvd
     Kansas City, MO  64108-2613

     Davis Polk & Wardwell
     450 Lexington Avenue
     New York, NY  10017

     Williams & White
     100 Summer St, Suite 2707
     Boston, MA  02110