UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:   NEURONTIN MARKETING,
         SALES PRACTICES AND
         PRODUCTS LIABILITY LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:


*Bulger v. Pfizer Inc., et al.*
Case No. 1:07-cv-11426-PBS

 

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:   MDL Docket No. 1629

:   Master File No. 04-10981

:   Judge Patti B. Saris

:   Magistrate Judge Leo T.
:   Sorokin

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF MARKETING OR
ADVERTISING MATERIALS AND CONDUCT, DAVID FRANKLIN AND
THE *FRANKLIN* LITIGATION, AND OTHER CLAIMS OR ACTIONS**

Pursuant to the Federal Rules of Evidence, Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") respectfully submit this memorandum of law in support of their motion *in limine* to exclude evidence of, and reference to:  (1) any marketing, advertising, or promotional materials or conduct concerning Neurontin (whether for off-label use or otherwise); (2) any testimony of David Franklin or evidence of, or reference to, the separate and unrelated *qui tam* action styled *United States ex rel. Franklin v. Parke-Davis, Division of Warner-Lambert Company, & Pfizer Inc.*, No. 1:96-CV-11651-PBS (D. Mass filed Aug. 13, 1996) (the "*Franklin* litigation" or "*Franklin*"); or (3) any other claims, actions, or legal proceedings related to Neurontin or other Pfizer products.

**PRELIMINARY STATEMENT**

In this product liability action, Plaintiff seeks to introduce at trial voluminous and wide-ranging testimonial and documentary evidence relating to Pfizer's marketing and advertising of Neurontin and to other legal actions and claims involving Neurontin.  This evidence should be excluded on multiple grounds, including because its irrelevance to Plaintiff's failure-to-warn

claims and the fact that its introduction would be highly prejudicial would confuse the issues for the jury, and would unnecessarily and substantially broaden the scope of this trial.[1]

This Court recently dismissed Plaintiff's claims of fraudulent misrepresentation, and upheld Plaintiff's fraudulent concealment claim only to the extent that it is not based on evidence regarding Pfizer's national advertising and marketing campaign. (*See* Mem. & Order [1790] at 33, May 26, 2009.)  Likewise, this Court has also repeatedly recognized that off-label promotion does not constitute fraud, much less the narrow fraud by omission claim that the Court allowed to proceed. (*See, e.g.*, Mem. & Order [1780] at 37-38, May 13, 2009); *In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 92 n.6 (D. Mass 2007).)  The Court's rulings confirm that evidence and testimony regarding national advertising and marketing of Neurontin is wholly irrelevant to Plaintiff's claims and should be excluded.

None of Plaintiff's marketing evidence or evidence about other legal proceedings bears any connection to Decedent, Susan Bulger, or the actions of her prescribing physicians.  None of it relates in any way to the issues for the jury to decide at Plaintiff's trial:  whether Neurontin causes suicidal behavior; whether Neurontin's label should have warned doctors of a risk of suicidal behavior; and whether Mrs. Bulger's decision to take her own life resulted from her use of Neurontin or from one of her many other well-accepted risk factors for suicide.  The evidence that is the subject of this Motion would serve only to influence the jury to reach the wholly irrelevant, but highly prejudicial, conclusion that Pfizer engaged in improper marketing and is a "bad actor."[2]  The Rules and the case law mandate that all such evidence be excluded.

---

[1] On June 9, 2009, this Court ordered that each side is limited to 21 hours for direct, cross, re-direct and re-cross.  The presentation of voluminous evidence pertaining to the marketing of Neurontin to physicians other than Susan Bulger's prescribers is inconsistent with such parameters.  Although the Court denied Pfizer's motion for an order directing the parties to remove marketing witnesses and exhibits in light of this Court's May 26 Order dismissing fraud claims to the extent they are premised on national marketing, Pfizer sets forth in this memorandum additional reasons why such evidence should be excluded.

[2] As this Court is aware, Warner-Lambert pleaded guilty in 2004 to strict liability violations of the Federal Food, Drug, and Cosmetic Act relating to specific instances of marketing of Neurontin for off-label uses in 1995 and 1996, several years before Mrs. Bulger was ever prescribed Neurontin.  The guilty plea and related evidence are subject to a separate motion *in limine*, filed concurrently herewith, and incorporated herein by reference.

## ARGUMENT

**I.   EVIDENCE OF PFIZER'S MARKETING OR ADVERTISING OF NEURONTIN SHOULD BE EXCLUDED AS IRRELEVANT AND UNDULY PREJUDICIAL**

### A.   Marketing Evidence Is Irrelevant

A substantial part of what Plaintiff has designated as trial exhibits pertains only to national (and in some cases, foreign) marketing and advertising activities that are unrelated to the facts and issues in this case.  For example, Plaintiff's exhibit list includes evidence relating to: speaker bureau presentations; continuing medical education presentations; consultants' meetings; advisory board meetings; teleconferences; Pfizer's involvement in the publication of clinical trial and study results; correspondence with the FDA regarding promotional pieces; and internal communications regarding the marketing and promotion of Neurontin, all of which are completely unconnected to the decisions of Mrs. Bulger's doctors to prescribe Neurontin to her. Likewise, Plaintiff has designated numerous witnesses, live and by deposition, whose testimony pertains only to national marketing and is not relevant to the issues in this case, including:  David Franklin (plaintiff-relator in *Franklin*), Suzanne Doft, Helen Duda-Racki, Bruce Fleischman, John Knoop, John Marino, Michele Meager, Avanish Mishra, and Martin Teicher.

Under Massachusetts' "learned intermediary rule," a prescription drug manufacturer fulfills its duty to warn "where it has adequately informed the prescribing physician of any associated risks."  *Haughton v. Hill Labs, Inc.*, No. 06-11217, 2007 WL 2484889, at *2 (D. Mass. Aug. 30, 2007).  As this Court has already found in dismissing Plaintiff's fraudulent misrepresentation claim, and allowing only Plaintiff's failure-to-warn and fraudulent omission claims not based on national marketing to proceed, Plaintiff has not even alleged, much less proffered evidence, that Mrs. Bulger's prescribing physicians, Drs. Crognale and Goldman, relied upon any marketing materials or statements by Defendants concerning Neurontin in making their prescribing decisions in Mrs. Bulger's case.  (*See* Mem. & Order [1790] at 29-30.) Rather, both doctors testified that when prescribing medications for patients, they rely on their medical training and experience with medications, conversations with other physicians, and

consideration of the specific patient.  (*See* Goldman Dep., Exh. A, at 35:7-36:7; Crognale Dep., Exh. B, at 38:16-40:2, 173:6-17.)

Advertising and promotional statements that those physicians never heard or saw are thus completely irrelevant to the question of whether Pfizer's labeling for Neurontin adequately warned of its known risks and whether any additional suicide warning would have changed their decisions to prescribe Neurontin to Mrs. Bulger.  *See, e.g.*, *In re Norplant Contraceptive Prods. Liab. Litig.*, No. MDL 1038, 1997 WL 81092, at \*1 (E.D. Tex. Feb. 21, 1997) (observing that a determination of whether a physician was adequately warned involves a consideration of "all materials to which the physician *was actually exposed*, including patient materials . . . as well as advertisements *actually seen* by the physician" and excluding evidence of marketing and promotional materials and correspondence where there was no evidence that plaintiff's prescribers were exposed to such evidence (emphasis added)); *see also In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 WL 223140, at \*4-5 (M.D. Fla. Jan. 30, 2009) (excluding letters from FDA's Division of Drug Marketing, Advertising and Communications ("DDMAC") because "plaintiffs [had] not shown that their prescribing physicians were exposed to the promotional materials" at issue in the letters), *aff'd*, 601 F. Supp. 2d 1313 (M.D. Fla. 2009); *Miller v. Pfizer, Inc.*, 196 F. Supp. 2d 1095, 1122-23 (D. Kan. 2002) (granting summary judgment because plaintiff provided no evidence that plaintiff's physician relied on representations by manufacturer), *aff'd*, 356 F.3d 1326 (10th Cir. 2004); *Alexander v. Smith & Nephew, P.L.C.*, 90 F. Supp. 2d 1225, 1235 (N.D. Ok. 2000) (same); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, No. MDL 1014, 1995 WL 273597, at \*12 n.13 (E.D. Pa. Feb. 22, 1995) (holding that plaintiff bears the burden of showing that defendant promoted or marketed its device to a particular physician and that such promotion caused the doctor to use the device). Marketing evidence is similarly irrelevant to the questions of whether Neurontin is scientifically capable of inducing suicidal behavior, whether Pfizer knew or should have known about such a risk at the time Neurontin was prescribed to Mrs. Bulger from 2002 to 2004, and whether Mrs. Bulger's suicide was caused by Neurontin.

Nor is such evidence relevant to Plaintiff's fraud by omission claim.  As this Court has recognized, off-label marketing, even if it occurred, is not itself fraudulent.  As the Court has stated:  "While off-label marketing is illegal, there is no private right of action to enforce it.  To succeed on their claims, plaintiffs must prove that defendants' representations were false, along with all other elements of their claims."  *In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 92 n.6 (D. Mass 2007) (Saris, J.) (citation omitted); *see also* Mem. & Order [1780] at 37-38 (holding that consumer plaintiffs must establish that "defendants' *fraudulent* marketing, not simply their off-label marketing, caused the prescriptions written for the putative class members").  And, as noted above, this Court has also held that Plaintiff's claims of fraudulent omission cannot be based upon omissions from national marketing.  (Mem. & Order [1790] at 34.)

Plaintiff may argue that off-label marketing is relevant to the issue of duty.  However, those courts that have recognized a duty to warn of risks associated with off-label use have done so based upon the *foreseeability* of the off-label use, not whether the drug was *marketed* for off-label uses.  *See McNeil v. Wyeth*, 462 F.3d 364, 369 (5th Cir. 2006); *Woodbury v. Janssen Pharm., Inc.*, No. 93 C 7118, 1997 WL 201571, at *9 (N.D. Ill. Apr. 10, 1997); *cf. Knowlton v. Deseret Med., Inc.*, 930 F.2d 116, 122-23 (1st Cir. 1991) (applying Massachusetts law and holding that manufacturer of medical device had duty to warn where there was evidence that it was aware of off-label use of product); *see also Peterson v. Parke Davis & Co.*, 705 P.2d 1001, 1003 (Colo. App. 1985) (holding that drug manufacturer was not liable for physician's unforeseeable misuse of product).  In other words, the duty derives from a manufacturer's duty to warn of risks associated with foreseeable misuses of a product.  *See Knowlton*, 930 F.2d at 120 ("Under Massachusetts law, '[t]he implied warranty of fitness includes uses which are reasonably foreseeable but does not include unforeseeable misuses of a product.'" (citation omitted)).  In this case, Pfizer admits that it was aware that Neurontin was being prescribed off-label, including for general neuropathic pain.  Pfizer does not contend that the prescription of Neurontin to treat Susan Bulger's pain was unforeseeable or that it constituted a misuse of the

product. To the contrary, Pfizer has consistently maintained in this litigation that physicians were entitled to exercise their independent medical judgment and prescribe Neurontin for off-label uses. Pfizer argues that there was no duty to warn of the risk of suicide not because *off-label uses* were unforeseeable, but because the *risk* was unforeseeable. That is, Pfizer argues that there was no duty to warn because there was not at the time of Mrs. Bulger's death (and is not to this day) any reliable evidence establishing a causal association between Neurontin and suicide. This is true regardless of whether Neurontin was prescribed for a labeled or off-label use.

Accordingly, because the foreseeability of off-label use is not at issue in this litigation, Plaintiff's proffered evidence in support of his allegations regarding Defendants' marketing of Neurontin for off-label use is not probative of any relevant and material fact. Plaintiff cannot introduce otherwise irrelevant evidence to prove an issue that has no bearing on the outcome of this case. *See, e.g.*, *Turner v. Allstate Ins. Co*., 902 F.2d 1208, 1212-13 (6th Cir. 1990) (ruling inadmissible evidence offered to show a party's good faith when the issue of good faith was not disputed).

> **B.** **Any Probative Value Of Marketing Evidence Is Substantially Outweighed By Its Potential For Unfair Prejudice, Confusion Of The Issues, And Waste Of Time**

Even if marketing evidence had some marginal relevance for a permissible purpose, which it does not, it should be excluded pursuant to Rule 403 because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, [and] misleading the jury" and by undue delay and waste of time. Fed. R. Evid. 403. Specifically, because it is clear that marketing materials played no causal role in this case, their introduction would serve only to encourage a jury to base its decision not on the facts properly before it but on the basis of inflammatory allegations against Pfizer that are unrelated to the issues in this case. This is precisely the sort of prejudice at which Rule 403 is aimed.

Further, the introduction of marketing evidence will substantially, and unnecessarily, prolong this trial and doubtlessly transform this product liability case into a trial about the

irrelevant but complex regulatory regime regarding prescription drug promotion.  To respond to the types of attacks Pfizer anticipates Plaintiff will attempt through marketing evidence, Pfizer would need to present responsive evidence.  In the case of unimplemented marketing activities, for example, Pfizer would need to waste valuable trial time eliciting evidence that makes clear that they were never implemented and never affected any prescription decision, much less those at issue in the case.  Jurors will likely become confused and may be misled into thinking that Pfizer is on trial for its promotion of Neurontin, rather than for an alleged failure to warn of a safety risk.  Letters issued by DDMAC, though unrelated to the claims at issue here, may further distract the jurors from the real issues at trial by focusing needlessly on Pfizer's promotional activity.  The Court should not permit this irrelevant, time-consuming "trial within a trial" and should instead focus the jury on Plaintiff's claim for failure to warn by excluding marketing evidence.

> **C.**    **Marketing Evidence Constitutes Impermissible Character Propensity Evidence And Should Therefore Be Excluded Under Rule 404(b)**

Given the lack of relevance of marketing evidence to this case, the only conceivable use for which Plaintiff would seek to have it admitted would be to attempt to impugn Pfizer's character, in violation of Rule 404(b).  Plaintiff will seek to portray Pfizer as a "bad actor" in the most general sense by trying to convince a jury that Pfizer has illegally, fraudulently, or otherwise improperly promoted Neurontin.  As the First Circuit has explained:

> To admit evidence of prior bad acts, a trial court must find that the evidence passes two tests.  First, the evidence must have "special relevance" to an issue in the case such as intent or knowledge, and must not include "bad character or propensity as a necessary link in the inferential chain."  Second, under Rule 403, evidence that is specially relevant may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

*United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000) (quoting *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996)); *see also United States v. Gilbert*, 229 F.3d 15, 20-21 (1st Cir. 2000).  As established above, Plaintiff cannot meet either of these requirements because marketing evidence is irrelevant to this dispute and will cause unfair prejudice and

undue delay.  While Rule 404(b) allows the introduction of other crimes, wrongs, or acts for certain purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," no such alternate reason has or could be proffered in the instant case.[3]  The only possible use of marketing evidence is specifically precluded by Rule 404(b):  to invite the jury to base a finding of liability on Pfizer's alleged character rather than on the merits of Plaintiff's product liability allegations.

### D.    Plaintiff's Marketing Expert Should Similarly Be Excluded

This Court's dismissal of Plaintiff's fraud claim based on affirmative representations or "a suppression of information as a part of a national marketing campaign" (Mem & Order [1790] at 29), also mandates exclusion of any evidence or testimony related to Plaintiff's marketing expert, economist Charles King, III, Ph.D.  Plaintiff has designated Prof. King to testify that Pfizer caused physicians to prescribe Neurontin to patients for off-label uses through allegedly illegal marketing and promotional efforts.  Prof. King has admitted that he would not opine that any particular prescription resulted from any alleged improper promotion, (*see* King Dep., Exh. C, at 126:17-23), but rather that his opinion is that Pfizer's alleged improper marketing efforts "*indirectly influenced* all, or substantially, all physicians prescribing of Neurontin."  (King

---

[3] To the extent Plaintiff attempts to argue that marketing evidence is offered as evidence of a general motive to make money, such a generic motive does not satisfy Rule 404(b)'s separate purpose requirement. "[T]he analysis required under Fed. R. Evid. 404(b) must be more than merely inquiring if an exception is applicable and then automatically allowing in all evidence that seemingly fits into the exception. . . .  The Court therefore views its role as one of a 'gate-keeper' similar to the non-involved role that judges have with respect to expert witnesses."  *United States v. Gerard*, 926 F. Supp. 1351, 1358 (N.D. Ill. 1996), *aff'd*, 129 F.3d 119 (7th Cir. 1997) (table decision).  Thus, to escape the "absolute bar" of Rule 404(b), the proponent must show "special" relevance that connects the evidence to a specific, disputed consequential fact in the litigation by an evidential theory that does not rely on any inference about the defendant's propensity or character.  *See United States v. Arias-Montoya*, 967 F.2d 708, 709-11 (1st Cir. 1992); *see also Varoudakis,* 233 F.3d at 125 n.11 (reversing conviction for admission of prior bad acts and cautioning that Rule 404(b)'s "exceptions must not swallow the rule").  When offered only to show bad character of the defendant, even if that character might be characterized as a "motive," the evidence is inadmissible.  *See, e.g., Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 441 (D.C. Cir. 1994) (holding that prior conduct evidence proffered to demonstrate, *inter alia*, greed, inadmissible under Rule 404(b) because it was "only a shade less general than a claim that [the defendant] was a bad man").  In this case, evidence of certain promotional activities years before Mrs. Bulger was ever prescribed Neurontin could never be probative of any of the elements that Plaintiff must prove and the exceptions listed in Rule 404(b) cannot be used as an end-run around the general prohibition against character evidence.

Report, Exh. D, ¶ 5 (emphasis added)).   As Prof. King cannot point to any evidence that Mrs. Bulger's prescribing physicians were influenced by any alleged improper promotion, his opinion is nothing more than a "fraud-on-the-market" theory, which this Court has soundly rejected (*see* Mem & Order [1790]at 29), and should be excluded.

## II.   EVIDENCE FROM THE *FRANKLIN* LITIGATION AND OTHER CLAIMS, ACTIONS, OR LEGAL PROCEEDINGS SHOULD BE EXCLUDED

### A.   Evidence From The *Franklin* Litigation Should Be Excluded

Pfizer moves to exclude from evidence any reference to or evidence from the False Claims Act *qui tam* action, *United States ex rel. Franklin v. Parke-Davis, Division of Warner-Lambert Company, and Pfizer Inc.*, No. 96-CV-11651-PBS (D. Mass filed Aug. 13, 1996), by David Franklin, a former medical liaison of Warner-Lambert.[4]   The Complaint in *Franklin* alleged that Warner-Lambert promoted Neurontin for off-label uses, which caused the submission to Medicaid of Neurontin prescriptions that were ineligible for reimbursement.   Thus, *Franklin* was concerned with the issue of off-label promotion of Neurontin, which, for the reasons discussed above, is irrelevant to any issue in this litigation.

Moreover, the evidence that Plaintiff seeks to introduce from the *Franklin* litigation is independently objectionable.   As just one example, Plaintiff has designated as an exhibit in this trial Mr. Franklin's unsworn Disclosure of Information, filed as Exhibit 3 to the Information in *Franklin* (the "Disclosure"), which purports to, among other things, describe certain remarks attributed by Mr. Franklin to John Ford, a former Parke Davis employee.   According to the Disclosure, Mr. Franklin purported to record remarks made by Mr. Ford, Sales Director of the Northeast Customer Business Unit ("CBU"), in a meeting in Farmington, Connecticut, on April 22, 1996 (the "Meeting").   Mr. Ford allegedly said:

> I want you out there every day selling Neurontin.   Look this isn't just me, its come down from Morris Plains that Neurontin is more profitable than Accupril so

---

[4] In his pretrial disclosures, Plaintiff has listed David Franklin as a live witness at trial, as well as Mr. Franklin's and other *Franklin* witnesses' deposition testimony, and other evidence from the *Franklin* litigation, as testimonial and documentary evidence for trial.

we need to focus on Neurontin . . . .  We all know Neurontin's not growing for adjunctive therapy, besides that is not where the money is.  Pain management, now that's money.  Monotherapy, that's money.  We don't want to share these patients with everybody, we want them on Neurontin only.  We want their whole drug budget, not a quarter, not half, the whole thing. . . .  We can't wait for them to ask, we need to get out there and tell them up front.  Dinner programs, CME programs, consultantships all work great but don't forget the one-on-one.  That's where we need to be holding their hand and whispering in their ear, Neurontin for pain, Neurontin for monotherapy, Neurontin for bipolar, Neurontin for everything.  I don't want to see a single patient coming off Neurontin until they have been up to at least 4800 mg/day.  I don't want to hear that safety crap either, have you tried Neurontin, every one of you should take one just to see there is nothing, it's a great drug.

(Disclosure of Information by Relator David P. Franklin Pursuant to 31 U.S.C. § 3730b(2), *Franklin*, No. 96-CV-11651-PBS (D. Mass filed Aug. 13, 1996), Ex. E, at 11 (alteration in original).)  Other than Mr. Franklin's self-interested characterization of and testimony about his Disclosure, there is no evidence that Mr. Ford said anything of the sort and the Disclosure should be excluded on multiple grounds.

First, as an out-of-court statement that Plaintiff seeks to introduce to prove the truth of the matter asserted – *i.e.*, that the Disclosure accurately records Ford's statement at the Meeting – the Disclosure is hearsay.[5]  The Disclosure, and the alleged statement by Ford, fails to qualify for any established exception to the hearsay rule, including the residual exception – the only conceivable exception to which Plaintiff might appeal.  *See* Fed. R. Evid. 807.  It is well settled that "[t]he residual exception is to be used sparingly, in exceptional circumstances."  *Kosilek v. Maloney*, 221 F. Supp. 2d 156, 172 n.9 (D. Mass. 2002); *see also Doe v. United States,* 976 F.2d 1071, 1074 (7th Cir. 1992).  No such circumstances warrant the admission of the Disclosure in this case; not only does the Disclosure not possess any circumstantial guarantees of trustworthiness, it is affirmatively untrustworthy on its face.  The Disclosure is an unsworn

---

[5] In the event that Plaintiff seeks to introduce the alleged remarks by John Ford for their truth, it would be doubly inadmissible.  Evidence containing multiple levels of hearsay deserves special scrutiny, under which the court must separately examine each level of hearsay to determine whether it falls within an exception to the hearsay rule.  *See* Fed. R. Evid. 805; *Pakizegi v. First Nat'l Bank of Boston,* 831 F. Supp. 901, 909 (D. Mass. 1993), *aff'd*, 56 F.3d 59 (1st Cir. 1995) (table).

statement by Mr. Franklin, filed along with his Complaint in *Franklin*. The alleged Ford statement was neither excerpted from the transcript of the Meeting, nor produced on the basis of any notes that Mr. Franklin took. Rather, it was based on Mr. Franklin's unaided recollection of what was said in the Meeting several months after it took place.

Moreover, Mr. Franklin wrote the Disclosure in the context of the *Franklin* litigation, a litigation he initiated and through which he stood to gain millions of dollars. As a result, he had every incentive to shade Mr. Ford's purported language in the most damning way possible. *See, e.g.*, *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1257-58 (9th Cir. 1984) (holding, in the analogous context of the business records exception, that a document prepared in the context of litigation lacks sufficient indicia of reliability to be admissible). Following similar logic, courts have concluded unequivocally that complaints and the charges and allegations they contain are inadmissible hearsay. *See Century "21" Shows v. Owens,* 400 F.2d 603, 609-10 (8th Cir. 1968) (affirming exclusion of petitions from prior proceeding involving plaintiff); *T.I. Constr. Co. Inc. v. Kiewit E. Co.*, No. 91-2638, 1992 U.S. Dist. LEXIS 19213, at *16 (E.D. Pa. Dec. 10, 1992) (finding that allegations in complaint made in a separate case were hearsay); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 499 (D. Del. 2005) ("Because the allegations in the complaint are a pleading of a party unrelated to the instant litigation, the Court cannot accept them for the truth of the matters they assert."); *In re Brand Name Prescription Drugs Antitrust Litig.*, MDL No. 997, 1997 U.S. Dist. LEXIS 5307, at *19 (N.D. Ill. Apr. 8, 1997) (holding complaint filed in separate case inadmissible).[6]

Plaintiff has also designated other depositions from the *Franklin* litigation. In addition to addressing the irrelevant issue of national marketing and alleged off-label promotion, such testimony constitutes inadmissible hearsay. *See*, *e.g.*, *Finn v. Consol. Rail Corp.*, 782 F.2d 13,

---

[6] Mr. Franklin's deposition testimony is even more unreliable and inappropriate under the residual hearsay exception than the Disclosure itself. In his deposition testimony dated September 13, 2000, Mr. Franklin testified that he recalled the Meeting and believed that John Ford used the words, "I don't want to hear that safety crap." *See* Franklin Dep. (Sept. 13, 2000), Exh. F, at 227:22-228:22. Only two months later, Mr. Franklin testified that he was "not sure" if Mr. Ford was even present at the Meeting. *See* Franklin Dep. (Nov. 21, 2000), Exh. G, at 36:5-15, Nov. 21, 2000.

15-16 (1st Cir. 1986) (deposition testimony "plainly hearsay under [Rule] 801").   The *Franklin* depositions are not admissible as former testimony under Federal Rule of Evidence 804(b)(1), which extends only to

> [t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and a similar motive to develop the testimony by direct, cross or redirect examination.

Fed. R. Evid. 804(b)(1); *see also United States v. Bartelho*, 129 F.3d 663, 670 (1st Cir. 1997) (holding that proponent of the evidence "must satisfy both requirements of [804(b)(1)]: unavailability and similar motive and opportunity to develop the challenged testimony"). Because this product liability action is completely distinct from Mr. Franklin's False Claims Act case – with differing issues and elements – Pfizer did not have a sufficiently similar motive and opportunity to develop deposition testimony.

In assessing similarity of motive under Rule 804(b)(1), the Court must consider whether the party resisting the offered testimony at a pending proceeding had, during the prior proceeding, an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue.  *See Bartelho*, 129 F.3d at 671.  The nature of the two proceedings – what is at stake, the applicable burden of proof, and, to a lesser extent, the cross examination at the prior proceeding, both what was undertaken and what was available but foregone – inform the determination.  *See United States v. DiNapoli*, 8 F.3d 909, 912-15 (2d Cir. 1993).  "This requirement 'operates to screen out those statements, which although made under oath, were not subject to the scrutiny of a party interested in thoroughly testing [their] validity.'"  *See United States v. Jackson*, 335 F. 3d 170, 177 (2d Cir. 2003) (quoting *United States v. Pizarro*, 717 F.2d 336, 349 (7th Cir. 1983)).

The only question in the *qui tam* action was whether Warner-Lambert promoted Neurontin off-label and whether such off-label promotion caused the submission to Medicaid of Neurontin prescriptions that were ineligible for reimbursement.   Consequently, Warner-

Lambert's motive in cross examining the *Franklin* witnesses was merely to demonstrate that it did not encourage off-label promotion of Neurontin.  That question is wholly irrelevant to the instant case.  To the extent that testimony from *Franklin* is offered on the safety and efficacy of Neurontin, it fails to satisfy the requirement of Rule 804(b)(1).  Because Warner-Lambert lacked a sufficiently similar motive and opportunity to cross examine witnesses in the *qui tam* action on issues relevant to the instant action, such testimony in that case is not admissible here under the former testimony exception to the hearsay rule.

### B.        Evidence of Other Lawsuits Should Be Excluded

To the extent that Plaintiff seeks to advise the jury, through argument or evidence, that other Neurontin lawsuits have been filed against Pfizer, such evidence is wholly irrelevant and could only be offered to induce the juror to render a verdict on an improper basis.  Indeed, courts have recognized that, even when other claims and lawsuits have been proffered on the issue of notice, the prejudicial value of the evidence outweighs any probative value.  *See, e.g.*, *CPC Int'l v. Northbrook Excess & Surplus Ins. Co.*, 144 F.3d 35, 45 (1st Cir. 1998) (in environmental insurance action, affirming exclusion of evidence of prior judicial findings of environmental contamination by defendant because of the danger that such evidence could "lead to a decision based on emotion or a desire to punish"); *Kinan v. City of Brockton*, 876 F.2d 1029, 1034-35 (1st Cir. 1989) (affirming exclusion of evidence of two previous civil rights cases filed against defendant because their remote relevancy was outweighed by the potential for prejudice); *McLeod v. Parsons Corp.*, 73 F. App'x 846, 853-54 (6th Cir. 2003) (affirming trial court's decision to exclude as irrelevant evidence of other unrelated lawsuits against defendant); *Barnes v. Koppers, Inc.*, No. 3:03CV60-P-D, 2006 WL 940279, at *3 (N.D. Miss. Apr. 11, 2006) (holding that "evidence of other lawsuits, claims, and injuries" even in same area was "irrelevant to this case and therefore inadmissible"); *Grant Thornton, LLP v. FDIC*, No. 1:00-655, 2007 WL 518421, at *1 (S.D.W. Va. Feb. 13, 2007) ("Allowing evidence of other litigation [against plaintiff] would not only cause the issues of the current case to be delayed . . . but would confuse the issues by introducing twelve additional fact situations which would have to be dealt with

individually before a decision on the merits of the current case could be reached.").

In this case, no conceivable argument for the relevance of such evidence can be offered by Plaintiff.  No similar Neurontin case has been tried, and no determination of causation has been made in any such litigation.  Even if there were a verdict, the plaintiffs or decedents in other Neurontin lawsuits differ significantly from Mrs. Bulger in myriad ways, including dose and duration of use of Neurontin, health and mental health history, concurrent medications, other risk factors for suicide, alleged injuries and, perhaps most importantly, the prescribing physicians' knowledge, decision-making, and directions to the patient.

The fact that other lawsuits have been filed, or claims have been made, against Pfizer means, at most, that others have made allegations against Pfizer.  Allegations, however, are not evidence, and, if offered to prove the truth of the matter asserted – generic causation or failure to warn – are hearsay for which there is no exception.  *See, e.g.*, *Olson v. Ford Motor Co.*, 410 F. Supp. 2d 855, 861 (D.N.D. 2006); *Boston Beverage Corp. v. Turner*, 81 B.R. 738, 747 (D. Mass. 1987).  In fact, even if another lawsuit is tried and the jury finds for the plaintiff, the jury verdict is inadmissible hearsay.  *See* Fed. R. Evid. 803(22) (hearsay exception for judgments in other cases applies only to criminal felony cases).  As a result, courts have been unwilling to admit judgments from previous cases.  *See, e.g.*, *Greycas, Inc. v. Proud,* 826 F.2d 1560, 1567 (7th Cir. 1987); *Colonial Refrigerated Transp., Inc. v. Mitchell,* 403 F.2d 541, 551 (5th Cir. 1968).

Evidence of claims or lawsuits regarding other Pfizer products has even less probative value (if any), is similarly prejudicial, and would be offered only to show that Pfizer is a bad actor – an improper reason that similarly endangers the integrity of the trial.  *See, e.g.*, *Johnson v. Ford Motor Co.*, 988 F.2d 573, 581 (5th Cir. 1993) (affirming exclusion of evidence of claims involving other lines of cars and other defects because probative value was outweighed by danger of prejudice); *Brooks v. Chrysler Corp.*, 786 F.2d 1191, 1198-99 (D.C. Cir. 1986) (excluding evidence of other claims involving similar products because of possibility that the requisite rebuttal would divert juror attention from plaintiff's claim); *Uitts v. Gen. Motors Corp.,*

411 F. Supp. 1380, 1383 (E.D. Pa. 1974) (same), *aff'd*, 513 F.2d 626 (3d Cir. 1975) (table).

### III.    EVIDENCE OF OTHER CLAIMS OR ACTIONS SHOULD NOT BE ADMITTED ON THE ISSUE OF PUNITIVE DAMAGES BECAUSE IT SHARES NO NEXUS WITH PLAINTIFF'S INJURIES

Plaintiff should not be allowed to manufacturer "relevance" arguments for evidence of off-label marketing, other litigation, or claims involving other products by arguing that such evidence is relevant to the issue of punitive damages.[7]  In *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), the United States Supreme Court held that, as a matter of due process, "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."  *Id.* at 422-23.  The Court explained that "[a] defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business."  *Id.* at 423.  Moreover, the Court stated that "[d]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis."  *Id.*

In *Campbell*, the Supreme Court held unconstitutional the lower court's punishment of twenty years of various dissimilar conduct by the defendant, explaining that courts are not permitted "to expand the scope of the case so that a defendant may be punished for any malfeasance."  *Id.* at 424.  Punishment based on dissimilar conduct "creates the possibility of multiple punitive damages awards for the same conduct" since "nonparties are not bound by the judgment some other plaintiff obtains."  *Id.* at 423.  A punitive damages award based on conduct unrelated to the plaintiff's harm enters the "zone of arbitrariness" that violates due process.  *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996).

Later, the Supreme Court explicitly clarified that due process "forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties . . . , i.e.,

---

[7] As set forth in Pfizer's concurrently filed Trial Brief, punitive damages are not available to Plaintiff because he has not established, and cannot establish, the requisite threshold showing of egregious conduct.

injury that it inflicts upon those who are, essentially, strangers to the litigation." *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007); *see also Campbell*, 538 U.S. at 423 ("Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis . . . ."). First, to allow punitive damages to be based upon harm to nonparties would violate due process by denying the defendant "'an opportunity to present every available defense.'" *Philip Morris*, 549 U.S. at 353 (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)). In any trial, the ability of a defendant to present evidence showing, for example, that the other parties' injuries were not caused by its product, is impossible. *See id.* at 353-54. That is especially true in this case where the Court has limited each side to 21 hours to present evidence.

The Supreme Court further explained that "to permit punishment for injuring a nonparty victim would add a near standardless dimension to the punitive damages equation," magnifying the due process risks of "arbitrariness, uncertainty and lack of notice." *Id.* at 354. Finally, the Court stated, there is "no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others." *Id.* The Court "made clear that the potential harm at issue was harm potentially caused *the plaintiff*." *Id.*

The evidence that Plaintiff seeks to introduce is further objectionable because it involves conduct in other states. The introduction of such evidence would also contravene the holding in *Campbell* that, as a matter of due process, state sovereignty and comity, punitive damages may not be based on a defendant's conduct in other states. *See Campbell*, 538 U.S. at 422. The Court explained that "[a] basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction." *Id.* Therefore, the Court concluded both that a jury "may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred" and that a State has no "legitimate concern in imposing punitive damages to punish a defendant for *unlawful* acts committed outside of the State's jurisdiction." *Id.* at 421-22

16

(emphasis added).   Punishment that serves no legitimate State interest and adjudication of conduct occurring outside the State and affecting persons not before the court offend due process. *Id.*[8]   Consequently, as a matter of constitutional due process, evidence of unrelated cases involving Pfizer in other states may not be considered for purposes of punitive damages and should be excluded.

Plaintiff cannot avoid the dictates of *BMW*, *Campbell* and *Philip Morris* by arguing that the evidence is offered on the issue of reprehensibility.[9]   The Supreme Court in *Campbell* made clear that dissimilar conduct has no place in the analysis of a defendant's reprehensibility for purposes of punitive damages and should be excluded as irrelevant.   *See Campbell*, 538 U.S. at 422-23.   Under the Supreme Court's punitive damages jurisprudence, only evidence of conduct that is similar to the conduct that resulted in harm to the plaintiff may have any relevance to establishing the reprehensibility of a defendant's conduct toward the plaintiff.   *See id.* at 423-24. Dissimilar conduct cannot be used to show repeated misconduct or "recidivism" on the part of a defendant.   As the Supreme Court stated in *Campbell*, if punitive damages are to be justified on the grounds that the defendant is a "recidivist," "courts must ensure the conduct in question *replicates* the prior transgressions."   *Id.* at 423 (emphasis added).

In this case, there is no evidence that Defendants marketed the off-label use of Neurontin to Susan Bulger's physicians.   (*See* Mem. & Order [1790] at 29-30 (dismissing claims based

---

[8] In *White v. Ford Motor Co.*, 312 F.3d 998 (9th Cir. 2002), the Ninth Circuit explained the federalism concerns that prohibit punishment of even unlawful out-of-state conduct.   *See id.* at 1014, 1017-18.   Because "the difference in how [states] penalize . . . tortious conduct expresses significantly different policy choices," the federalism concerns of *BMW* apply with equal force to the punishment and deterrence of unlawful out-of-state conduct.   *Id.* at 1018.   Thus, "'a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' . . . conduct in other States,' whether the extraterritorial conduct is lawful or not."   *Id.* (alteration in original, footnote omitted, quoting *BMW*, 517 U.S. at 572).   In addition to violating Pfizer's due process rights, imposing punitive damages based on Pfizer's conduct in other states would impermissibly encroach upon those states' sovereign interest in regulating conduct within their borders, in violation of the Commerce Clause and the Full Faith and Credit Clause.   *See BMW*, 517 U.S. at 571-72 & n.16; *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 228 (S.D. Fla. 2002).

[9] Reprehensibility is one of the three guideposts adopted by the Supreme Court for determining whether a punitive award is grossly excessive and unconstitutional.   *See BMW*, 517 U.S. at 575; *Campbell*, 538 U.S. at 418.

17

upon alleged affirmative misrepresentations and noting that "[n]one of the remaining complaints [including *Bulger*], . . . contain comparable allegations of specific affirmative misrepresentations made by sales representatives to prescribing physicians upon which the doctors relied").)  Thus, liability in this case must be based, if at all, only on the alleged failure to warn Mrs. Bulger's physicians of the risk of suicide.  To allow Plaintiff to introduce evidence of national marketing on the issue of "reprehensibility" does not satisfy *Campbell*'s requirement that the conduct replicate the conduct directed at the plaintiff.  *See IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 313-14 (4th Cir. 2003) (holding that evidence that the defendant engaged in a scheme to put the plaintiff out of business could not support a punitive damage award under *Campbell* when the conduct alleged was independent of the acts upon which liability was based); *Stroud v. Abington Mem. Hosp.*, 546 F. Supp. 2d 238, 259 (E.D. Pa. 2008) (allegations of a cover-up, which were independent of the basis for imposing liability on the defendant, could not support punitive damages); *Estate of Embry v. GEO Transp. of Ind., Inc.*, 478 F. Supp. 2d 914, 923 (E.D. Ky. 2007) (excluding evidence of dissimilar out-of-state conduct because it lacked any proximate relationship with the in-state harm and thus served "no deterrent purpose"); *Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp. 2d 1303, 1324 (S.D. Fla. 2004) (applying *Campbell* and holding that prior allegations of sexual harassment made against company employee involved dissimilar conduct and were irrelevant to determination of a punitive damages award against company), *aff'd*, 183 F. App'x 872 (11th Cir. 2006).

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court exclude at trial:   (1) any and all evidence relating to Pfizer's marketing of Neurontin, including the testimony and opinions of Plaintiff's marketing expert, Prof. King; (2) David Franklin's live or deposition testimony and any reference or evidence from the *Franklin* litigation, including Mr. Franklin's Disclosure; and (3) any reference to or evidence of other claims, actions, or legal proceedings involving Neurontin or any other Pfizer product.

Dated: June 22, 2009                     Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By:      /s/ Mark S. Cheffo
         Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

         -and-

BOIES, SCHILLER & FLEXNER LLP

By:      /s/ William S. Ohlemeyer
         William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

         -and-

SHOOK, HARDY & BACON L.L.P.

By:      /s/ Scott W. Sayler
         Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel:  (816) 474-6550

         -and-

WHITE AND WILLIAMS LLP

By:     /s/ David B. Chaffin
        David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on June 22, 2009.

/s/ David B. Chaffin_____
David B. Chaffin

20