# EXHIBIT A

```
                                                                Page 1
 1              UNITED STATES DISTRICT COURT

 2             FOR THE DISTRICT OF MASSACHUSETTS

 3                  MDL Docket No. 1629

 4                  Master File No. 04-10981

 5   ***********************************

 6   IN RE:  NEURONTIN MARKETING, SALES

 7           PRACTICES AND PRODUCTS

 8           LIABILITY LITIGATION

 9   ***********************************

10   THIS DOCUMENT RELATES TO:

11   RONALD J. BULGER, SR., as Administrator

12   of the Estate of Susan Bulger, Deceased

13   ***********************************

14

15   VIDEOTAPED DEPOSITION OF RICHARD S. GOLDMAN, MD

16

17                   Held At:
                  Hare & Chaffin
18               160 Federal Street
             Boston, Massachusetts 02110
19
                  April 22nd, 2008
20                    9:07 AM

21

22   Reported By:  Maureen O'Connor Pollard, RPR, CLR

23
     Videographer:  William Slater
24
```

Page 2

```
 1   APPEARANCES:
 2   FOR THE PLAINTIFF:
 3       BY:  ANDREW G. FINKELSTEIN, ESQ.
 4            FINKELSTEIN & PARTNERS
 5            436 Robinson Avenue
 6            Newburgh, New York 12550
 7            800-634-1212
 8            fink33@mac.com
 9
10   FOR THE DEFENDANTS:
11       BY:  DAVID B. CHAFFIN, ESQ.
12            HARE & CHAFFIN
13            160 Federal Street
14            Boston, Massachusetts 02110
15            617-330-5000
16            dchaffin@hare-chaffin.com
17
18
19
20
21
22
23
24
```

Page 3

```
         INDEX

EXAMINATION                           PAGE
RICHARD S. GOLDMAN, MD
  BY MR. CHAFFIN                         5
  BY MR. FINKELSTEIN                   172
  BY MR. CHAFFIN                       214
  BY MR. FINKELSTEIN                   223

         EXHIBITS

NO.      DESCRIPTION                  PAGE
Ex. 1    Documents Bates
         000376-25AMD-00001 through
         00122.............................   4
Ex. 2    Certification of pharmacy
         records, Bates
         000376-13EAP-00001 through
         00003.............................   4
Ex. 3    Medicine Shoppe records, Bates
         000376-10TMS-00001 through
         00011.............................   4
Ex. 4    Dr. Goldman's curriculum vitae..    4
Ex. 5    Documents titled Division of
         Neuropharmacological Drug
         Products, Combined
         Medical-Statistical Review......  179
Ex. 6    Four page document from FDA
         website.......................... 184
```

Page 4

```
 1              P R O C E E D I N G S
 2
 3       RICHARD S. GOLDMAN, MD,
 4   having been satisfactorily identified by photo
 5   identification, being first duly sworn, was
 6   examined and testified as follows:
 7          (Whereupon, Goldman Exhibits Number 1
 8           through 4 were marked for
 9           identification.)
10          THE VIDEOGRAPHER:  My name is Bill
11   Slater of Veritext.  Today's date is April 22,
12   2008.  The time on the video screen is 9:07
13   a.m..
14          This deposition is being held at the
15   offices of Hare & Chaffin located at 160 Federal
16   Street, Boston, Massachusetts.
17          The caption in this case is In Re:
18   Neurontin Marketing, Sales Practices and
19   Products Liability Litigation, United States
20   District Court, District of Massachusetts, MDL
21   Docket Number 1629.
22          The name of the witness is Dr. Richard
23   Goldman.
24          At this time will the attorneys
```

Page 5

```
 1   identify themselves and the parties they
 2   represent, after which the court reporter,
 3   Maureen Pollard of Veritext, will swear in the
 4   witness and we can proceed?
 5          MR. FINKELSTEIN:  Andrew Finkelstein,
 6   Finkelstein & Partners, on behalf of the Estate
 7   of Susan Bulger.
 8          MR. CHAFFIN:  Good morning.  David
 9   Chaffin on behalf of the Defendants.
10
11       RICHARD S. GOLDMAN, MD,
12   having been satisfactorily identified by photo
13   identification, being first duly sworn, was
14   examined and testified as follows:
15          DIRECT EXAMINATION
16          BY MR. CHAFFIN:
17       Q.  Good morning, Dr. Goldman.
18       A.  Good morning.
19       Q.  Thank you for coming in.
20       A.  Sure.
21       Q.  Doctor, have you ever had your
22   deposition taken before?
23       A.  Yes, I have.
24       Q.  You have.  Okay.  So you know how the
```

Page 34

1   Q.  But you continue to prescribe it?
2   A.  I have patients that are on Neurontin,
3   yes.
4   Q.  Do you use informed consent forms,
5   Doctor?
6   A.  Not specifically to my knowledge, no.
7   Q.  Would it be fair to say that you don't
8   discuss every single potential side effect or
9   side effect of a drug when you prescribe it for
10  patients?
11  A.  I think it's impossible to describe
12  every side effect of every drug with every
13  patient.
14  Q.  And do you discuss side effects,
15  though?
16  A.  Yes, I do.
17  Q.  How do you -- what do you do?  What's
18  your general practice?
19  A.  Again you'd have to ask me
20  specifically about a particular drug.
21  Q.  Let's try Vicodin.
22  A.  I usually --
23      MR. FINKELSTEIN:  Objection.
24  A.  I usually would counsel someone

Page 35

1   that -- not to take it when they're going to
2   drive, if they've never taken it before take it
3   at home, it may make them sleepy, it may make
4   them confused, depending on the age of the
5   patient, and it could make them nauseous.
6       BY MR. CHAFFIN:
7   Q.  Would it be fair to say that when you
8   prescribe a drug for a patient the first time
9   that you would analyze, take into account the
10  available information to determine whether the
11  benefits of the drug outweigh the risk?
12  A.  I would say that my practice is
13  usually that that would be the case.  I would
14  make a decision, I would not put a patient on a
15  medication unless I felt that the benefit of the
16  medication outweighed the risk.  But I can't
17  comment specifically about every drug and every
18  prescription I've ever written.
19  Q.  And what sort of information do you
20  take into account when you make that analysis
21  that you've just described?
22  A.  Twenty plus years of clinical
23  experience is probably the number one thing.  My
24  specific knowledge of the drug specifically in

Page 36

1   terms of other patients that have been on it and
2   side effects or problems, benefits, things that
3   I have read in journals or summaries or things
4   that I have heard from other physicians in terms
5   of benefits, concerns, whatever.
6   Q.  Anything else?
7   A.  That's all I can think of.
8   Q.  One of the things you'll take into
9   account, though, is the particular circumstances
10  of the patient for whom you're prescribing the
11  drug, though, correct?
12  A.  Well, I always make a decision if I'm
13  going to prescribe a drug for a particular
14  patient, it's specific for that particular
15  patient.
16  Q.  It's fair to say, though, that every
17  time you prescribe a drug for a patient, you do
18  that only after satisfying yourself that the
19  potential benefits outweigh the potential risks?
20  A.  When you say "every time," I can't say
21  that.  I would hope, and I assume that every
22  time that I prescribe a drug I have made that
23  assessment, but it's a broad statement.
24  Q.  And if -- in situations where the

Page 37

1   risks begin to outweigh the potential benefits,
2   what do you do, if anything?
3   A.  You'd have to give me a specific
4   situation.  But if the risk of a drug or the
5   problems with a drug became -- were -- I either
6   wouldn't prescribe it if I felt the risk was too
7   high initially, or if a patient was having a
8   problem with a medication either initially or
9   ongoing I would reassess and either adjust the
10  dosage, stop the medication, it's hard to say.
11  Q.  Now, you began --
12  A.  Excuse me one second.
13  Q.  I'm sorry.  Do you want to take it?
14  We can take a break any time you want.
15  A.  No, it wasn't.  My PDA has a mind of
16  its own sometimes.
17  Q.  You were aware, Doctor, in September
18  of 2003 that all prescription drugs bear some
19  risk, would that be fair to say?
20  A.  I would say that's probably a fair
21  statement.
22  Q.  And with some drugs, some of those
23  risks can be very serious, correct?
24  A.  I suppose that's a fair statement.