EXHIBIT H

Gibbons, Robert (Defense Expert) 2/4/2009 9:16:00 AM

**Page 1**

```
 1    IN THE UNITED STATES DISTRICT COURT
 2        DISTRICT OF MASSACHUSETTS
 3  IN RE: NEURONTIN           )
 4  MARKETING SALES PRACTICES  )
 5  & PRODUCT LIABILITY        )
 6  LITIGATION,                )
 7                 ) MDL DOCKET
 8  BULGER vs. PFIZER, et al., ) No. 1629
 9                 ) MASTER FILE
10  SMITH vs. PFIZER, et al.,  ) No. 04-10981
11  05-CV-11515-PBS            )
12     SUPERIOR COURT OF THE STATE OF CALIFORN
13            CITY OF LAKE
14  NICOLETTE CRONE, et al.,   )
15        Plaintiffs,          )
16        vs.                  ) CV 400432
17  PFIZER, INC., et al.,      )
18        Defendants.          )
19        2/4/09 Job No.: 183060
20        9:16 a.m.
21        The videotaped deposition of ROBERT D.
22  GIBBONS, Ph.D., resumed pursuant to adjournment at
23  Suite 533, 506 West Harrison Street, Chicago,
24  Illinois.
```

**Page 2**

```
 1  PRESENT:
 2    LAW OFFICES OF JACK LONDON,
 3    (3701 Bee Cave, Suite 200,
 4    Austin, Texas 78746,
 5    512-478-5858), by:
 6    MR. JACK LONDON,
 7    jlondon@texas.net,
 8        -and-
 9    FINKELSTEIN & PARTNERS, LLP,
10    (463 Robinson Avenue,
11    Newburgh, New York 12550,
12    800-634-1212), by:
13    MR. KEITH L. ALTMAN,
14    kaltman@lawampmml.com,
15        -and-
16    THE LANIER LAW FIRM,
17    (6810 FM 1960 West,
18    Houston, Texas 77069,
19    713-659-5200), by:
20    MR. KENNETH S. SOH,
21    kss@lanierlawfirm.com,
22        appeared on behalf of the Plaintiffs;
23
24
```

**Page 3**

```
 1  PRESENT: (Continued)
 2    SHOOK, HARDY & BACON, L.L.P.,
 3    (2555 Grand Boulevard,
 4    Kansas City, Missouri 6108-2613,
 5    816-474-6550), by:
 6    MS. LORI CONNORS McGRODER,
 7    lmcgroder@shb.com,
 8        appeared on behalf of the Defendants;
 9
10    LAW OFFICES OF STEVEN D. HILLYARD, PC,
11    (345 California Street, Suite 1770,
12    San Francisco, California 94104,
13    415-334-6880), by:
14    MR. GERHARD O. WINKLER,
15        appeared telephonically on behalf of
16        Defendant Raymond D. Jennings, M.D.
17
18  VIDEOTAPED BY:
19    MR. JAMES PIERDZIOCH, Veritext Chicago
20    Reporting Company.
21
22
23  REPORTED BY: ANDREA L. CARTER,
24    Illinois CSR No. 84-3722.
```

**Page 4**

```
 1        THE VIDEOGRAPHER: My name is James Pierdzic
 2  of Veritext. The date today is February 4th, 2009,
 3  and the time is 9:16 a.m. This deposition is being
 4  held at the Holiday Inn located at 506 West Harrison
 5  Street in Chicago, Illinois.
 6        The captions for this case are Neurontin
 7  Marketing Sales Practices and Products Liability
 8  Litigation in the United States District Court,
 9  District of Massachusetts, and Nicolette Crone, et
10  al. versus Pfizer Incorporated, et al. in the
11  Superior Court of the State of California for the
12  County of Lake.
13        This is the day two deposition of Robert
14  Gibbons, Ph.D. At this time the attorneys will
15  please identify themselves for the record.
16        MR. ALTMAN: Keith Altman on behalf of
17  Nicolette Crone and the Crone plaintiffs.
18        MR. LONDON: Jack London on behalf of the MDL
19  product liability plaintiffs. Also here but out of
20  the room for a moment is Ken Soh also with the
21  plaintiffs' product liability MDL group.
22        MS. McGRODER: Lori McGroder on behalf of
23  Pfizer.
24        MR. WINKLER: Gary Winkler on behalf of
```

### Page 341

1  MS. McGRODER: Okay. The deposition is over.
2  We are out. You want more time. We are not going
3  to do this. We are not going to pull this game. We
4  are not doing this.
5  MR. LONDON: You are the one pulling the game.
6  MR. ALTMAN: I'm asking him whether -- it says
7  I have produced all materials requested by
8  plaintiffs in their letter of November 12, 2008.
9  MS. McGRODER: Do not answer any more
10 questions. We are finished for today.
11 BY MR. ALTMAN:
12 Q.  Are you abiding by her --
13 MR. ALTMAN: Let's call the judge.
14 MS. McGRODER: Call the judge.
15 MR. ALTMAN: You are going to be here -- you
16 are going to miss your flight.
17 MS. McGRODER: You said you are not done
18 anyway. We are going to come back.
19 MR. ALTMAN: Are you going to stipulate that we
20 come back?
21 MS. McGRODER: Not right now.
22 MR. ALTMAN: Then let's call the judge.
23 MS. McGRODER: Go ahead.
24     Let me explain my --

### Page 342

1  MR. ALTMAN: No, I don't want to hear your
2  position. We are calling --
3  MS. McGRODER: Well, I'm going to explain my
4  position for the record.
5  MR. ALTMAN: We are calling the judge. You
6  have already terminated --
7  MS. McGRODER: For the record --
8  MR. ALTMAN: I'm sorry. You terminated the
9  deposition.
10 MS. McGRODER: For the record --
11 MR. ALTMAN: Lori, did you -- Lori, did you
12 terminate the deposition?
13 MS. McGRODER: -- his declaration says: "I
14 have also produced all materials requested by
15 plaintiffs in their letter of November 12, 2008 on
16 which my co-authors and I relied in preparing the
17 manuscript."
18     The bulk of materials with one exception
19 today are not items on which Dr. Gibbons and his
20 co-authors relied in preparing the manuscript. So
21 for you to insinuate that Mr. Gibbons has been
22 misleading or has been untruthful is improper and
23 inappropriate, and I won't allow it.
24 MR. ALTMAN: It is not a true statement.

### Page 343

1  MS. McGRODER: It is -- your -- you are -- you
2  are assuming and insinuating, and it's misleading
3  and improper, and I won't allow it.
4  MR. LONDON: Well, we know we don't have the
5  sensitivity analyses. We know we don't have --
6  MS. McGRODER: The sensitivity analyses were
7  not used in preparing the manuscript. They were
8  done after the fact.
9  MR. ALTMAN: Are you kidding? Lori, are you
10 serious? He says he used -- he prepared it in
11 preparing a defense for peer-reviewed publication.
12 You can't seriously stand there and say that the
13 sensitivity analysis have nothing to do with his
14 manuscript.
15 MS. McGRODER: Well, look, did we say we are
16 going to give you the sensitivity analysis? Yes, we
17 did --
18 MR. ALTMAN: No, but you have not --
19 MS. McGRODER: -- he did not -- he did not --
20 he did not prepare the sensitivity analysis and
21 relied on them in preparing his manuscript. His
22 manuscript was submitted on September -- in
23 September of 2008. Those sensitivity analyses were
24 not done before the manuscript was prepared. So a

### Page 344

1  fortiori his statement is not untrue.
2  MR. LONDON: A fortiori.
3  MS. McGRODER: His statement is not untrue.
4  MR. LONDON: No, his statement --
5  MR. ALTMAN: Lori, I am sure the judge will
6  truly appreciate --
7  MS. McGRODER: You know what, I think this
8  is -- this is a legal argument, and I will not allow
9  him to answer questions where you are telling him
10 that he is lying. It's not --
11 MR. ALTMAN: I didn't suggest that he was
12 lying. What I suggest is it's not a true statement.
13 That does not mean he lied. I never suggested that
14 he lied.
15 MS. McGRODER: There is no difference.
16 MR. ALTMAN: There is a difference.
17 MS. McGRODER: No, there's not.
18 MR. ALTMAN: Yes, there is a difference. There
19 are statements that could be made that are not
20 truthful --
21 MS. McGRODER: Keith, you can ask him a
22 legitimate question --
23 MR. ALTMAN: Lori --
24 MS. McGRODER: -- in this deposition, and we

696

1 will conclude it for today. He is not answering
2 that question. That question is improper, and I
3 won't allow him to answer it. If you want to ask a
4 legitimate question, we can continue.
5     MR. LONDON: Well, you are not the judge of a
6 legitimate question. You don't get to call that
7 shot. The rules for that, Lori --
8     MS. McGRODER: You can -- you can criticize my
9 characterization, but he is not answering that
10 question.
11 BY MR. ALTMAN:
12     Q.  Fine. Dr. Gibbons, would you please go
13 in Exhibit 2 to point 3.
14     Would you please read that for the
15 record.
16     MS. McGRODER: Objection, asked and answered.
17 We did this yesterday.
18     MR. ALTMAN: Good, we are going to do it again.
19 BY THE WITNESS:
20     A.  "Plaintiffs demand all documents
21 associated" --
22     Q.  I'm sorry?
23     A.  -- "with retention of Dr. Gibbons by the
24 defendants."

697

1     Q.  I'm sorry. On the second page. We are
2 talking about the study now, the bipolar study.
3     A.  "Plaintiffs demand all documents and
4 underlying data that pertain to the aforementioned
5 study, Gibbons, et al. (2008)."
6     Q.  Was there anything in that sentence that
7 says the word relied upon?
8     MS. McGRODER: I object to this question. He's
9 never even seen -- he has never even seen this
10 letter --
11     MR. ALTMAN: Lori --
12     MS. McGRODER: -- this is legal --
13     MR. ALTMAN: Lori, stop coaching the witness.
14     MS. McGRODER: It's not about --
15     MR. ALTMAN: Lori, you are coaching the
16 witness. I have asked him a simple question.
17 BY MR. ALTMAN:
18     Q.  Does the word relied upon exist anywhere
19 in point 3?
20     MR. ALTMAN: The man can read --
21     MS. McGRODER: And I --
22     MR. ALTMAN: -- he is a biostatistician.
23     MS. McGRODER: And I object to you --
24     MR. ALTMAN: That's nice.

698

1     MS. McGRODER: -- asking him questions about
2 legal communications --
3     MR. ALTMAN: Lori --
4     MS. McGRODER: -- between you and me.
5     MR. ALTMAN: -- that's fine. He put in his
6 declaration that he complied --
7     MS. McGRODER: I didn't say he couldn't answer
8 the question. Stop your argument and let him answer
9 it. I'm putting my objection on the record.
10     MR. ALTMAN: That's fine. Your objection is
11 noted.
12     MS. McGRODER: If you can answer the
13 question --
14     MR. ALTMAN: Now stop.
15     MS. McGRODER: -- I can make the objection, and
16 he can answer that question.
17 BY MR. ALTMAN:
18     Q.  Dr. Gibbons, does the word relied upon
19 exist anywhere in there?
20     THE COURT REPORTER: Wait one second.
21     MR. LONDON: Are you worn out?
22     THE COURT REPORTER: Okay. Go ahead.
23 BY THE WITNESS:
24     A.  The word relied upon does not exist in

699

1 sentence -- in bullet No. 3 on page 2 of Exhibit 2.
2     However, in answering your question, I
3 believe I did a very reasonable job of giving you
4 materials. I know I have not given the raw data
5 files and all of the SAS files, and I understand
6 that there may be a SAS file or two that maybe
7 didn't make it into it, and I apologize for that.
8     It wasn't my intention to do that. I
9 didn't try to trip you up in any way. If you had
10 asked for it prior to this, I would have, you know,
11 made sure that it was there. You could have said to
12 opposing counsel, you know, we are trying to
13 recreate the cmed dataset, and I can't find it in
14 here. Could Dr. Gibbons go back and see if that's
15 being created in another file, and I certainly would
16 have done that, and I would have given it to you.
17     I relied upon the -- and I know that word
18 isn't in here, but I'm just trying to be as honest
19 with you as I can -- the SAS output to build the
20 paper. The paper was submitted. The reference to
21 that paper is the paper that was submitted for
22 publication. It's a part of my academic work. I
23 have been doing further sensitivity analyses, and I
24 will use those -- those antiepileptic data hopefully

Gibbons, Robert D PhD (Defense Expert) 3/5/2009 9:09:00 AM

Page 735

```
 1    IN THE UNITED STATES DISTRICT COURT
 2          DISTRICT OF MASSACHUSETTS
 3   IN RE: NEURONTIN            )
 4   MARKETING SALES PRACTICES    )
 5   & PRODUCT LIABILITY          )
 6   LITIGATION.                  )
 7                                ) MDL DOCKET
 8   BULGER vs. PFIZER, et al.,   ) No. 1629
 9                                ) MASTER FILE
10   SMITH vs. PFIZER, et al.,    ) No. 04-10981
11   05-CV-11515-PBS              )
12      SUPERIOR COURT OF THE STATE OF CALIFORNIA
13              CITY OF LAKE
14   NICOLETTE CRONE, et al.,     )
15         Plaintiffs,            )
16         vs.                    ) CV 400432
17   PFIZER, INC., et al.,        )
18         Defendants.            )
19         3/5/09  Job No.: 191803
20         9:09 a.m.
21         The videotaped deposition of ROBERT D.
22   GIBBONS, Ph.D., Volume III resumed pursuant to
23   adjournment at Suite 2800, 333 West Wacker Drive,
24   Chicago, Illinois.
```

Page 736

```
 1   PRESENT:
 2       LAW OFFICES OF JACK LONDON,
 3       (3701 Bee Cave, Suite 200,
 4       Austin, Texas 78746,
 5       512-478-5858), by:
 6       MR. JACK LONDON,
 7       jlondon@texas.net,
 8         -and-
 9       FINKELSTEIN & PARTNERS, LLP,
10       (463 Robinson Avenue,
11       Newburgh, New York 12550,
12       800-634-1212), by:
13       MR. KEITH L. ALTMAN,
14       kaltman@lawampmmt.com,
15         -and-
16       THE LANIER LAW FIRM,
17       (6810 FM 1960 West,
18       Houston, Texas 77069,
19       713-659-5200), by:
20       MR. KENNETH S. SOH,
21       kss@lanierlawfirm.com,
22         appeared on behalf of the Plaintiffs;
```

Page 737

```
 1   PRESENT: (Continued)
 2       SHOOK, HARDY & BACON, L.L.P.,
 3       (2555 Grand Boulevard,
 4       Kansas City, Missouri 6108-2613,
 5       816-474-6550), by:
 6       MS. LORI CONNORS McGRODER,
 7       lmcgroder@shb.com,
 8         appeared on behalf of the Defendants;
 9
10       LAW OFFICES OF STEVEN D. HILLYARD, PC,
11       (345 California Street, Suite 1770,
12       San Francisco, California 94104,
13       415-334-6880), by:
14       MS. ELANA GOLD,
15         appeared telephonically on behalf of
16         Defendant Raymond D. Jennings, M.D.
17
18   VIDEOTAPED BY:
19       MR. NICK PAGE, Veritext Chicago
20       Reporting Company.
21
22
23   REPORTED BY: ANDREA L. CARTER,
24       Illinois CSR No. 84-3722.
```

Page 738

```
 1       THE VIDEOGRAPHER: My name is Nick Page in
 2   association with Veritext National Court
 3   Reporting Services. The date today is March 5,
 4   2009, and the time is 9:09 a.m.
 5       This deposition is being held in the
 6   offices of Mandell Menkes, LLC, located at 333
 7   West Wacker Drive, Chicago, Illinois. The
 8   caption of the case is In Re: Neurontin
 9   Marketing and Sales Practices and Product
10   Liability Litigation, Bulger versus Pfizer, et
11   al, Smith versus Pfizer, et al., 05-CV-11515-PBS,
12   MDL Docket No. 1629, Master File No. 04-10981,
13   and in the Superior Court of the State of
14   California, City of Lake, Nicolette Crone, et
15   al., plaintiffs versus Pfizer Incorporated, et
16   al, defendants, No. CV 400432.
17       The name of the witness is Robert
18   Gibbons. This is Volume III. At this time will
19   the attorneys please identify themselves and the
20   parties they represent.
21       MR. ALTMAN: Keith Altman, Finkelstein &
22   Partners. I'll be asking questions on behalf of
23   the Crone plaintiffs.
24       MR. LONDON: Jack London, I represent Bulger
```

Gibbons, Robert D PhD (Defense Expert) 3/5/2009 9:09:00 AM

---

**Page 971**

1  Q. Well, the November 30th bill — I'm
2  not quibbling with you — doesn't say anything
3  about reports, does it?
4  A. Please understand, you know, I'm a
5  university professor. I'm not too good at
6  providing really good descriptions of what I do
7  on these bills, and — and in the past, not by
8  any of the lawyers sitting at this table, I have
9  been counseled in prior litigations in different
10 areas that having exquisitely detailed bills may
11 not be the best plan for litigation-related work.
12 So I haven't been very, very detailed in what I
13 have described in the work and haven't had too
14 many objections.
15 Q. Well, did Ms. McGroder or someone call
16 you after the November bill and say does this
17 include your work on the final report?
18 A. No, I've received no calls from
19 anybody regarding whether any — any other
20 details about my bills.
21 Q. All right. Did Ms. McGroder call you
22 after the October 18th bill and ask whether that
23 would be enough to cover you through the filing
24 of the final report?

**Page 972**

1  MS. McGRODER: Object to form.
2  BY THE WITNESS:
3  A. I never had a conversation with
4  Ms. McGroder regarding my — the contents of my
5  bills or whether I would be billing on any — any
6  area.
7  BY MR. LONDON:
8  Q. These bills or any of the other bills
9  in that exhibit, is that what you are saying?
10 You have submitted them. They have
11 been paid. You have never discussed them with
12 Ms. McGroder?
13 A. That's correct.
14 Q. Okay. Moving forward, the next bill
15 that I find that appears to not have an asterisk
16 is dated September 2, 2008.
17 Do you see that?
18 MS. McGRODER: Did you already talk about
19 the October 5?
20 MR. LONDON: I thought I did.
21 MS. McGRODER: I might have just missed it.
22 MR. LONDON: Okay. We will talk about
23 October 5.
24 THE WITNESS: You are trying to help him

**Page 973**

1  out?
2  MS. McGRODER: Sorry. As soon as I said if,
3  I thought.
4  MR. LONDON: She wants — she want you to
5  come off looking good.
6  BY MR. LONDON:
7  Q. What's the subject of your October 5
8  bill?
9  A. Oh, no, not the October 5 bill.
10 Q. I mean, you charged them $20,000 for
11 40 hours on October 5?
12 A. How could you miss that, Mr. London?
13 Q. It didn't seem like much money, and
14 then you charged them $16,000 13 days later.
15 Apart from that, what do I know about
16 those bills and what you did?
17 A. This was in support of the work on the
18 analysis of the gabapentin cohort, thinking about
19 analyses, performing analyses, reviewing, redoing
20 analyses, a variety of different things.
21 Q. But there's no way — and you told me
22 earlier that you couldn't look at any of your
23 computer screens and reproduce these dates, and
24 now you are telling me there's no way we can look

**Page 974**

1  at time records or e-mails or anything and
2  reproduce what was done on these dates. Is that
3  true?
4  MS. McGRODER: Well, object to form to the
5  extent it misstates his testimony.
6  BY THE WITNESS:
7  A. I don't keep such records, and so, no,
8  I never had them. So there's no way to reproduce
9  them.
10 BY MR. LONDON:
11 Q. And even though you don't keep such
12 records, you are also saying as far as you know
13 there are no such records whether kept by you or
14 anyone else?
15 MS. McGRODER: Object to form.
16 BY THE WITNESS:
17 A. That's correct.
18 BY MR. LONDON:
19 Q. The next bill — unless Ms. McGroder
20 has others that I missed — going further back in
21 time, further toward the front of the document is
22 dated September 2nd, 2008, 80901.
23 Do you see that?
24 A. Which one? I'm sorry.