```
 1                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
 2

 3    _____

 4    IN RE:  NEURONTIN MARKETING,
      SALES PRACTICES AND PRODUCTS
 5    LIABILITY LITIGATION,              Civil Action
                                         No. 04-10981-PBS
 6
                                         June 22, 2009, 3:00 p.m.
 7    _____

 8

 9

10           PARTIAL TRANSCRIPT OF MOTION HEARING

11           BEFORE THE HONORABLE PATTI B. SARIS

12               UNITED STATES DISTRICT COURT

13             JOHN J. MOAKLEY U.S. COURTHOUSE

14                     1 COURTHOUSE WAY

15                    BOSTON, MA   02210

16

17

18

19
                       DEBRA M. JOYCE, RMR, CRR
20                     Official Court Reporter
                   John J. Moakley U.S. Courthouse
21                  1 Courthouse Way, Room 5204
                         Boston, MA  02210
22                         617-737-4410

23

24

25
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:

 3   W. MARK LANIER, ESQ
     Lanier Law Office
 4   6810 FM 1960 Road W
     Houston, TX 77069
 5   713-659-5200

 6   ANDREW G. FINKELSTEIN, ESQ.
     Finkelstein & Partners, LLP.
 7   436 Robinson Avenue
     Newburgh, New York  12550
 8
     THOMAS M. GREENE, ESQ.
 9   Greene & Hoffman, P.C.
     33 Broad Street
10   5th Floor
     Boston , MA 02109
11   617-261-0040

12
     FOR THE DEFENDANTS:
13
     DAVID B. CHAFFIN, ESQ.
14   Hare & Chaffin
     160 Federal Street, 23rd Floor
15   Boston, MA  02110-1701

16   WILLIAM S. OHLEMEYER, ESQ.
     Boies, Schiller & Flexner LLP
17   333 Main Street
     Armonk , NY 10504
18   914-749-8440

19   MARK S. CHEFFO, ESQ.
     Skadden, Arps, Slate, Meagher & Flom LLP
20   Four Times Square
     New York , NY 10036
21   212-735-3000

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2              (The following proceedings were held in open
 3    court before the Honorable Patti B. Saris, United States
 4    District Judge, United States District Court, District of
 5    Massachusetts, at the John J. Moakley United States Courthouse,
 6    1 Courthouse Way, Boston, Massachusetts, on June 22, 2009.)
 7              (The sealed portion of this hearing has been removed
 8    and is under a separate cover.)
 9              *   *   *   *   *   *   *   *   *   *
10              THE COURT:  Just for the record, I've reopened the
11    hearing.  What's your name from Bloomberg?
12              Fordland (phon.).
13              This is what this was about.  There's basically a new
14    witness that has come to light, at least one, possibly another,
15    but really one, which has some -- which -- who has relevant
16    information late disclosed, late found, and she is scared about
17    being identified, and that is why I have not put it on the
18    public record out of concerns at this point, preliminary
19    concerns for her safety, or for her at least concerns about
20    being confronted, shall we say.  And that's all I'm going to
21    say at this point.
22              And I've allowed a deposition to be taken, and then
23    counsel will come back to me to tell me what to do next,
24    whether it supports, A, further investigation; or, B,
25    continuance of the trial; or, C, just battle of briefs what to
```

1    do with it.

2            So that's what -- that's the gist of it.

3            Now, we can go forward now with the public record.

4            MR. FINKELSTEIN:  Your Honor, as Mr. Lanier said, this

5    was sprung on us.  We timely disclosed friends and neighbors

6    related to our Rule 26 and supplemented that timely.

7            If I may, on very similar issues, just on the other

8    side of the fence, and defense counsel, because we put them on

9    notice, made an application to your Honor, and your Honor has

03:23 10   ruled that we cannot call these witnesses.  And now, because it

11   seems to be on the other side of the fence, I feel it's highly

12   prejudicial to the plaintiffs.

13           THE COURT:  It may be, but I'm just not there yet.

14   They say they just learned it.  So they just found out about

15   it, that's a different situation than you.

16           Now, whether or not it's admissible, whether or not it

17   supports a continuance of the trial, I don't know, but we're

18   going to take a deposition within a week.

19           MR. LANIER:  We'll take that deposition, your Honor,

03:23 20   and then we'll come back to you with whatever we think we need

21   to do as far as either designations or continuances, or life

22   may be fine.  We'll just see.

23           MR. CHEFFO:  Thank you very much, your Honor.

24           THE COURT:  So at this point --

25           MR. CHEFFO:  May I introduce -- this is William

```
 1   Ohlemeyer from Boies Schiller; he'll also be involved in trying
 2   the case.
 3              THE COURT:  You'll be trying the case.
 4              MR. OHLEMEYER:  Yes.
 5              THE COURT:  How long -- when I say how long a trial,
 6   let me just talk to you, since I have you here, about
 7   scheduling.  I've denied both sides', quote-unquote, emergency
 8   motions to continue.  That having been said, I'm a little
 9   concerned and I want you all -- we've all urged some -- you
10   want a little bit more time, you've looked -- I have vacation
11   the week of -- the third week in August, what's the week, the
12   17th, so that's one of the issues going on here.  One thought I
13   had, since this is an incredibly important case, whether or not
14   you all felt, assuming I could find a jury, that we could go --
15   if we had to go a little bit over it whether we would jump a
16   week.  In other words, that we would go for three weeks and
17   then to the extent we were done, we were not done yet, go into
18   the following week.  So I want you to think about scripting it
19   that way.
20              MR. OHLEMEYER:  I will say, your Honor, we've been
21   working -- you know, I appreciate --
22              THE COURT:  I know you have vacations, too.  I planned
23   my vacation around the time period you gave me.  So while
24   you're quite eager to put it off, my whole family scheduled the
25   week around it, that's why I'm a little reluctant to scram down
```

1   the end of August --
2           MR. OHLEMEYER:  I think with the guidance you've given
3   us, we've worked very hard and today is a day we've basically
4   completed most of our exchanges, to pare down the witnesses --
5           THE COURT:  It's going to go forward on that date, the
6   issue is whether I need more time.
7           MR. OHLEMEYER:  I think we're comfortable we can meet
8   your time deadlines as you've given them to us.  I think -- I
9   think that is our operating assumption, that we can do that and
03:25 10  will do that, and I think that's probably preferable to what
11  happens sometimes when you let a jury go for a week and
12  anything happens --
13          THE COURT:  One possibility I might do is talk to
14  Mr. Alba about maybe -- here's the issue for me is -- I gave
15  the date you chose on the timetable you chose.  I essentially,
16  as I usually do, carved off three days, one to impanel, do
17  openings and closings, arguments and instructions, and then I
18  usually give at least a day for deliberations.  So I took
19  three -- quite transparent how I did this.  I took three days
03:26 20  off the top and then I divide it by two, it wasn't rocket
21  science, on a 9:00 to 1:00 day.
22          On the other hand, this is the first of a major trial
23  involving major scientific issues, and we have two sets of
24  experts, one having to do with the basic causation issue, and
25  one having to do with the basic suicide issue, Dr. Maris.

1          So I think the facts -- I don't know why you named a
2    gazillion people.  The facts should take very little time at
3    all.  It's really about the experts.  And so the question is
4    whether you can fairly air it, or whether I should carve out a
5    few afternoons.  That's sort of what I'm trying to think about.
6          So what I need you to do is a good faith effort to
7    scrub down your exhibits and to give me what you really do need
8    to teach the science in a way that the jury can understand.  I
9    didn't think you did that before, that's why I gave you a very
03:27 10  easy one word "denied."  I need you to really scrub it down.
11   What is it you need to do to teach the science?
12         MR. LANIER:  Your Honor, if I might, I tried three
13   Vioxx cases through conclusion.  It will be difficult to teach
14   this science to the jury, although it does help, your 9:00 to
15   1:00, because people can get maybe two or three good ideas a
16   day to learn them, but not much more.  We can do that within
17   the time frame that you have.  If we have to add an afternoon
18   here or there, that's fine.  We're trying to scrub it down.
19         The continuance ultimately came about because I was
03:27 20  stepping in and I wanted to try this case and, unfortunately,
21   I've got commitments in Guatemala that I cannot change that
22   have been long-standing, so I may not be the one to get to try
23   the case because I'm going to have to be gone three critical
24   days.
25         THE COURT:  It just was an issue that, unfortunately,

1   no one raised to me.  I'm not willing -- we all planned around
2   this.
3          MR. LANIER:  And I'm not fussing that.  I'm just
4   explaining to the Court that we are still trying to figure out
5   exactly how we are going to try it, but in the process we are
6   committing to the Court and we will pare down exhibits and try
7   to make it --
8          THE COURT:  I know this case now, I know this case, so
9   if I see a good faith effort and there's a need for an extra
10  two or three hours on either side, I'm not going to play that
11  game.  It's an extremely important trial.  I'll try to carve
12  off an afternoon here and there.  But what I think -- once I
13  push it off a little, I lose -- I mean, I value my family time,
14  I'm assuming you all value yours.  I can't --
15         MR. OHLEMEYER:  If I may, your Honor, an afternoon or
16  two I think is preferable than a hiatus that can present and
17  inject all sorts of issues in the case.
18         THE COURT:  I am worried about that.  It's not the end
19  of the world.  I am worried once I do that, I start losing
20  available jurors.  We want a smart jury, a good jury.  I'm
21  hoping to not just be down to six, I'd try to get it up to ten,
22  I think it's a better decision-making entity.
23         MR. LANIER:  To alert the Court, I would ask -- one of
24  the considerations we're having is could we try this case with
25  me being gone three days?

```
 1                    THE COURT:  I don't care, leave.
 2                    MR. LANIER:  But it would help us to know if we're
 3        going to add afternoons we wouldn't add them during the three
 4        afternoons I'm gone.
 5                    THE COURT:  I'm trying to work around your schedule.
 6        What I'm not willing to do is buck the system so I lose my
 7        vacation.  People planned around this for a very long time,
 8        Guatemala came out of the blue.
 9                    MR. LANIER:  I came out of the blue and with me came
03:29 10  Guatemala and I apologize to the Court for even suggesting it,
11        but I appreciate the indulgences that you are making.
12                    THE COURT:  What I really want is a good faith
13        effort to boil this down, no new witnesses except if it's newly
14        discovered.  People have been around a while, we're not adding.
15        We're not going to have a thousand documents.  You've got to
16        use editorial judgment here.
17                    So the question I really have is if I think, for
18        example, that it will take Trimble two of the days to put it on
19        and to cross him -- and he's a serious and important witness --
03:30 20                   MR. LANIER:  Yes.
21                    THE COURT:  -- so I don't want to -- at the end of the
22        day, the standard is the interest of justice.  So I want to be
23        able to fully air the science, and you have, who, Gibbons
24        and --
25                    MR. CHEFFO:  We have a number of witnesses.  If I
```

1  could add, maybe highlight, the good news is we have been
2  working cooperatively.  I think the lists and the number of
3  exhibits have been significantly cut, and I think today, as
4  Mr. Ohlymeyer suggested, we are exchanging -- there's probably
5  still some work to be done, but I think where we were some time
6  ago, I think we've made some significant progress, both sides
7  have.
8            THE COURT:  So what's a great issue, you might have
9  those thousands of summer associates ready and willing to do,
10 so what happens in a wrongful death suit?  Is the husband
11 considered a plaintiff for purposes of admissions of a party
12 opponent?
13           And the second issue is, what if he's no longer
14 considered a plaintiff?  Does he know that and does he have a
15 right to challenge that?
16           MR. OHLEMEYER:  There's also a surprising amount of
17 law on whether an admission made by a party opponent remains --
18 is treated as such when he or she is no longer a party
19 opponent.
20           THE COURT:  Don't you think just all those unemployed
21 kids would be loving to research this issue, a summer
22 associate?  As I've heard it play out, I've been thinking about
23 all these legal questions, and it actually may end up being
24 quite significant.  So I think that's at least that issue -- I
25 am unlikely to get out an opinion on Maris, <u>Daubert</u> hearing,

 1  where I understand the primary challenge isn't so much the
 2  methodology as to how it's applied, but I don't know I'm going
 3  to be able to write that. I've tried to catch up with you on
 4  almost everything else. I know I have your thing outstanding,
 5  but that's -- it's realistically not going to happen before
 6  this trial. I'm going to hopefully get to it in August before
 7  the law clerk who handles this leaves, but at this point, I'm
 8  totally focused on the product liability case.
 9       And Judge Sorokin is going to be meeting with you all
03:32 10  to try and come up with schedules for all the other ones, but
11  what I was hoping is we'd have a couple of bellwether trials,
12  this one, maybe Smith in Tennessee --
13       MR. FINKELSTEIN: Smith is ready to go.
14       THE COURT: And is there another one in Massachusetts
15  that I could just do so it wasn't just one trial?
16       MR. FINKELSTEIN: There is. The name escapes me.
17       MR. CHEFFO: Shearer.
18       MR. FINKELSTEIN: Right, Shearer. As a practical
19  matter, I can't ship Smith down until I've written Daubert
03:33 20  hearings on Maris and Kruszewski -- whatever his name is,
21  particularly Maris, I think. Because his is the one where -- I
22  think -- what was his name --
23       MR. CHEFFO: Kruszewski.
24       THE COURT: Kruszewski was following more tried and
25  true methodologies, his was peer reviewed but it wasn't

1   standard in the field.  I think I should write that before I
2   send it to Tennessee is the thing.
3           I'm not planning on doing all the summary judgment
4   motions here on individual causation.  I'll send those back to
5   the home courts.
6           So, in other words, there was a really hotly contested
7   issue on whether or not Mr. Smith actually did ingest the
8   Neurontin.  That's a fact dispute that I think I took the two
9   key cases but I'm not going to do for all 150.  We'll send
10  those back.
11          So has Judge Sorokin given you a schedule yet for
12  doing that all?
13          MR. CHEFFO:  In fact, we're meeting with him tomorrow
14  at 1:00.
15          THE COURT:  Perfect, because I think we need to get
16  that all ready.  And what I'd like do is we'll do this trial;
17  and then we'll do another Massachusetts trial, ideally, as soon
18  as I get that thing written; I'll send down Smith and create a
19  settlement mechanism to see if the others can -- depending on
20  what happens on these.
21          Is the other Massachusetts case something picked by
22  either plaintiff or defendant?
23          MR. FINKELSTEIN:  No, it wasn't, your Honor said I
24  want all Massachusetts cases added to the ten selected --
25          THE COURT:  So how many Massachusetts cases are there?

```
 1              MR. CHAFFIN:  Four.
 2              THE COURT:  Think about it.  You're all caught up in
 3   Bulger.  Think about whether those four cases -- it makes sense
 4   to try two of them, maybe Smith to another jurisdiction, get
 5   people how to think about it.
 6              MR. FINKELSTEIN:  Of the four, two of them my firm
 7   represents, the other two other counsel represents, and I don't
 8   believe the other two relate to suicidality.
 9              THE COURT:  What are they about?
10              MR. FINKELSTEIN:  I think one was fractures.  I'm not
11   involved in it so I'm not certain.
12              MR. CHAFFIN:  One, your Honor, the woman, Mrs. Dorsey
13   alleges that Neurontin caused her to feel kind of out of it and
14   to lose her balance and blackout.
15              The other one, Mr. Huberman, I'm not sure exactly what
16   his claims are.  He's -- I think he alleges that Neurontin made
17   him not quite feel himself for some extended period of time.
18   But he's alive and well and with us.
19              THE COURT:  So the other one was a suicide case?
20              MR. FINKELSTEIN:  Yes.
21              THE COURT:  So that strikes me, as I'm hearing this,
22   maybe the one who just felt out of it, maybe depression, get
23   some compensation for, but the other one, there should be a
24   serious -- if you're telling it correctly, a completely
25   different Daubert issue, right, where it makes you fall.  We
```

```
 1  haven't heard that before, right?
 2          MR. CHAFFIN:  They're very different, your Honor.  The
 3  science case that you saw last summer wouldn't be implicated.
 4          THE COURT:  Wouldn't be relevant.
 5          MR. CHAFFIN:  No.
 6          THE COURT:  So let's not use that as one of the
 7  guidepost cases.  Let's just use these two suicide cases and
 8  maybe you can start the discovery on that; talk to Judge
 9  Sorokin.
10          MR. FINKELSTEIN:  Sure.  Shearer we've already done a
11  substantial amount of depositions, we've already deposed the
12  treating doctor, the plaintiff.  We have more to do.
13          THE COURT:  When is our pretrial motion on this?
14          MR. FINKELSTEIN:  July 20th.
15          MR. CHEFFO:  Well, the pretrial motion is actually
16  being filed today.
17          THE COURT:  Motions in limine.
18          MR. CHEFFO:  Everything is today.
19          THE COURT:  And then the oppositions, and I see you on
20  the 20th.
21          How much time have I allocated?
22          MR. CHEFFO:  I think it's only two hours.
23          THE CLERK:  I'm sorry?
24          THE COURT:  How many are you planning on filing?
25          MR. FINKELSTEIN:  You limited it to 10.
```

```
 1              MR. CHEFFO:  Ten apiece, and we have a joint pretrial
 2     order that's being filed today.
 3              THE COURT:  You know what it will be like, I'm
 4     assuming, those interrogatories we used to deliver to people 30
 5     and they all had subparts B, C --
 6              MR. CHEFFO:  You also gave page limits.
 7              THE COURT:  Did I give font limits?
 8              MR. LANIER:  You left the font loophole.
 9              MR. CHEFFO:  It's on microfiche.
10              THE COURT:  So as of right now, we're still talking
11     the 27th, and the only reason I came in was because of that
12     emergency motion.  But just to let you know, if I see a good
13     faith plan and there's a need for a few extra hours, I could
14     clear out afternoons -- because I really want to get it tried
15     correctly but what I want to force you to do is really take it
16     seriously, editing it down to a real case.  Okay?
17              MR. LANIER:  Will do.
18              MR. CHEFFO:  Thank you, your Honor.
19              (Court adjourned at 3:36 p.m.)
20                          - - - - - - - - - - - -
21                              CERTIFICATION
22         I certify that the foregoing is a correct transcript
23     of the record of proceedings in the above-entitled matter to
24     the best of my skill and ability.
25
```

```
 1
 2
 3   /s/Debra M. Joyce                July 1, 2009
     Debra M. Joyce, RMR, CRR        Date
 4   Official Court Reporter
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```