UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------------x
                                                                 :   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                                     :
        SALES PRACTICES AND                                      :   Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION                            :
                                                                 :   Judge Patti B. Saris
-----------------------------------------------------------------x
                                                                 :   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                        :
                                                                 :
*Egilman v. Pfizer Inc.*, 1:07-cv-11426-PBS                      :
                                                                 :
-----------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE*  TO EXCLUDE THE TESTIMONY
OF DECEDENT'S MINOR DAUGHTER, FAMILY PHOTOGRAPHS
AND MEMORABILIA, AND POST-MORTEM PHOTOGRAPHS**

Plaintiff David Egilman (hereinafter "Plaintiff"), as Administrator of the Estate of Susan Bulger, deceased, by and through his attorneys, The Lanier Law Firm, P.L.L.C. and Finkelstein & Partners, LLP, respectfully requests that this Court deny Defendants' motion *in limine* to exclude the testimony of Plaintiff's decedent's minor daughter, family photographs and memorabilia, and post-mortem photographs in its entirety because such information is relevant to various salient issues in this litigation, including Susan Bulger's minor child's claim for loss of parental consortium and the manner of Susan Bulger's death, to which a fact witness has testified to the contrary. Fed. R. Evid. 401.  Moreover, pursuant to Fed. R. Evid. 403, the probative value of  such testimony and photographs provides information that is critical to Plaintiff's case in chief, Plaintiff would be severely prejudiced if same is not presented to a jury, and the admission of such evidence outweighs alleged unfair prejudice, if any, to Defendants.

**ARGUMENT**

To be admissible, evidence must be relevant. Fed. R. Evid. 401; *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248,252 (1st Cir. 1998). Relevant evidence is defined as evidence which may tend to prove or disprove a material fact that is of consequence to the determination of the action.. Fed. R. Evid. 401. Further, the Federal Rules of Evidence provide that "relevant evidence <u>may</u> be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." (emphasis added) Fed. R. Evid. 403. The First Circuit has held that "the admitted evidence must not only be prejudicial, but be unfairly prejudicial, and not only outweigh relevance but substantially outweigh relevance." *United States v. Rivera,* 83 F.3d 542, 545 (1st Cir, 1996). The First Circuit also stated that "where the reviewing court finds the balancing close, Rule 403 tilts the balance in favor of admission." *Id.*

I. **The Testimony of Susan Bulger's Minor Daughter And Family Photographs Are Relevant and Necessary To Prove Plaintiff's Claim For Damages For Loss Of Parental Consortium and Susan Bulger's Minor Daughter is A Witness Who Was At The House During The Suicide.**

   A. **The testimony of Susan Bulger's minor daughter is relevant for loss of parental consortium claim.**

The Supreme Court in Massachusetts has "recognized that a minor child has a strong interest in her parent's society and that a child has a right to recover for loss of a parent's society resulting from a defendant's negligence." *Barbosa v. Hopper Feeds, Inc.,* 404 Mass. 610, 618 (1989) (citing to *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 510, 516 (1980)). To recover for a claim of loss of parental consortium under the law in Massachusetts a child is required to demonstrate " *a* reasonable expectancy of a dependent relationship with the injured parent" *Angelini v. OMD Corp.,* 410 Mass. 653, 662 (1991). "The dependent relationship has to

do with the child's 'dependence on the injured parent for management of the child's needs and for emotional guidance and support rather than economic dependence on the injured parent.'" [citations omitted] *Gottlin v. Graves*, 40 Mass. App. Ct. 155, 161(App. Ct. 1996) "While there is no requirement that a child must be living in the injured parent's household to recover for loss of parental society, the plaintiff carries the burden of proving the existence, and impairment, of a dependency relationship between the child and parent in a loss of consortium claim." *Id.*

Even though Defendants' examination before trial of Susan Bulger's minor daughter was not at all thorough or probing on the issue, her minor daughter had provided insight into the closeness of the relationship that she had with her mother simply by noting simple memories such as:

> Q. Tell me what kind of things you remember.
>
> A. She would take a shower every day, she would wear perfume. That's it Finkelstein Decl., Ex. A at 28:3-6.

Susan Bulger's minor daughter also remembered traveling to her mother's place of employment:

> Q. Do you know if your mom ever had a job?
>
> A. Yeah.
>
> Q. You think she did?
>
> A. Yeah.
>
> Q. Do you remember her having a job, or did someone tell you that she had a job?
>
> A. I remember her having a job.
>
> Q. What job do you remember her having?
>
> A. I can't remember.
>
> Q. Do you remember what kind of work she did?
>
> A. I think she did -- I forget.

> Q. Do you remember going to where she worked?
>
> A. Yeah.
>
> Q. What did the place look like?
>
> A. Well, it smelled nice, it -- that's all I can remember. Finkelstein Decl., Ex. A at 30:21-31:15

Further, Susan Bulger's daughter also recalled taking trips with her mother:

> Q. Did your mother drive a car, do you know?
>
> A. Yes.
>
> Q. Do you remember her driving you places?
>
> A. Yeah.
>
> Q. Like where?
>
> A. The movie store, Wal*Mart, Toys R Us, Hallmark, the lake, Water Country, Canobie Lake, the YMCA.
>
> Q. Now, do you remember your mom taking you to all of those places?
>
> A. Yeah.
>
> Q. What lake did she take you to, do you know?
>
> A. I don't know the name. Finkelstein Decl., Ex.   at 29:9-24.

Susan Bulger's minor daughter will also provide testimony concerning how she still remembers her mother and visits her grave on a regular basis:

> Q. Have you been out to your mother's -- is your mother buried in a grave, do you know?
>
> A. Yes.
>
> Q. Have you been out there?
>
> A. Yes.

Q. How often do you go out there?

A. Like on Mother's Day, Christmas, Valentine's day, and school vacation. Finkelstein Decl., Ex. A at 36:9-16.

Defendants' never asked Susan Bulger's minor child concerning issues such as: what did her mother teach her, the activities in which they participated, her conversations with her mother, guidance, lessons, etc.  Plaintiff requires the minor's testimony in order to meet his burden to adequately assert his claim for damages pertaining to the minor child's loss of parental consortium.  Children at age five often have very good memories and memories may be tested on cross-examination by the Defendants.  Plaintiff will be severally prejudiced if he is not permitted to proffer the testimony of this minor child which is extremely probative on the issues of damages and greatly outweighs any prejudice which potentially might be experienced by Defendants.  Moreover, the family photographs and memorabilia which demonstrate insight into the familial relationship should also be admitted into evidence as the photographs likewise serve to provide evidence in regard to the loss of parental consortium claim.  Susan Bulger's minor child should therefore be allowed to testify and the photographs and memorabilia should be admitted as well because both are probative of the mother and daughter relationship and outweigh any alleged prejudice to Defendants.

**B.    Susan Bulger's minor daughter was a witness at the scene of the suicide and any discrepancies or contrary statements go to the weight of the evidence not the admissibility**.

Minors are allowed to testify in Massachusetts and whether there is conflicting evidence in regard to the minor's testimony goes to the weight of the evidence and not its admissibility. *See Baker v. Davis*, 299 Mass. 345 (1938) (Supreme court noted in the motor vehicle pedestrian case, that the case consisted principally of the testimony of the minor plaintiff, defendant, and that the minor plaintiff's statement conflicted with his answers to interrogatories); *McGovern v.*

*Thomas*, 317 Mass 740 (1945) (where minor plaintiff testified on his own behalf in motor vehicle accident pedestrian case and his testimony may have been inaccurate but there was other evidence for jury's consideration - - Adult female's testimony was also in conflict).

Susan Bulger's minor daughter was a witness who was at the scene on the day of her mother's suicide as demonstrated by her testimony:

Q. Do you know where your mom died?

A. Yes.

Q. Where did she die?

A. In our cellar.

Q. And did someone tell you that that's where she died?

A. No.

Q. Why do you think that's where she died?

A. Because I was there.

Q. What do you remember about that?

A. I remember my dad rushing upstairs, I remember the police, the ambulance and the firemen coming, and I remember getting to ride -- getting a ride in the ambulance car.

Q. Were you upstairs when he came rushing upstairs, your dad?

A. No.

Q. Where were you?

A. Downstairs.

Q. Did you see your mom?

A. Yes.

Q. Tell me what you remember about seeing your mom.

  A. I can't remember anything.

  Q. When the ambulance came, did they take your mom in the ambulance?

  A. Yes.

  Q. Do you remember seeing her put into the ambulance?

  A. Yeah.  Finkelstein Decl., Ex. A  at p. 32:17-33:23.

Defendants' point to testimony that is contrary to the testimony of Susan Bulger's minor child however, Defendants will have the opportunity to cross-examine the witness and a jury will therefore have the ability to weigh the evidence and there is no valid reason to deny the admissibility of the minor's testimony, Moreover, Defendants' examination of Susan Bulger's minor child was brief, barely touched the surface and does not in any way demonstrate that she would be an unreliable.  The testimony is highly probative as to many factual matters in this case, since Defendants recently have disclosed a new witness who alleges new facts concerning the time immediately prior to Susan Bulger's death and it is important that the jury hear from all of the witnesses, including the minor daughter who was present in the home on the date of the suicide.  The probative value of the minor child's testimony far outweighs any potential for prejudice to Defendants.

  **II.**  **The Post-Mortem Photographs Are Relevant To The Cause Of Death And To Rebut Any Testimony That Susan Bulger Did Not Commit Suicide.**

  In *United States v. Sampson,* the District Court of Massachusetts, in reference to the admissibility of post-mortem photographs stated:

> Appellate courts have generally held that when the photographs are probative of a relevant fact, even if not necessarily a disputed one, admission of gruesome photographs under Rule 403 is not reversible error. As the Tenth Circuit has said, "gruesomeness alone does not make photographs inadmissible. 335 F. Supp 166, 178(D.C. Mass 2004)  (citing to " *United States v. Naranjo,* 710 F.2d 1465, 1468 (10th Cir. 1983); *see, e.g., United States v, Ortiz,* 315 F.3d 873, 897 (8th Cir. 2002) (in capital case, admission of graphic photos of bloody corpse not abuse of discretion, as they corroborated testimony regarding victim's murder and

established that it was heinous and depraved);*United States v. Rezaq,* 328 U.S. App. D.S. 297, 134 F. 3d 1121, 1138 (D.C. Cir. 1998) (autopsy photographs relevant to determination of "force and violence" in hijacking case and corroboration of government theory regarding systematic executions); *United States v. Cruz-Kuilan,* 75 F.3d 59, 61 (1st Cir. 1996) (lacerations on victim's head corroborated government theory regarding stray bullets); *United States v. Treas-Wilson,* 3 F.3d 1406, 1410 (10th Cir. 1993) (autopsy and crime scene photographs, though graphic, were relevant to determination of defendant's intent or state of mind); *United States v. De Parias,* 805 F.2d 1447, 1453-54 (11th Cir. 1986) (photograph of badly decomposed body of kidnapping victim admissible to show identity and cause of death), *overruled on other grounds by, United States v. Kaplan,* 171 F. 3d 1351 (11th Cir. 1999); *United States v. Holmes,* 632 F.2d 167, 169 (1st Cir. 1980 (color photograph of victim helpful in illustrating medical examiner's testimony regarding sequence of wounds); *United States v. McRae,* 593 F.2d 700, 707(5th Cir. 1979) (photograph showing victim's head wounds had bearing on defense of accident)").

Linda Landry, Plaintiff's decedent's sister, testified that she did not believe that Susan Bulger committed suicide, and instead accused Ronald Bulger, Sr., of foul play in Susan's death:

Q. But when she's dead she can't be with her children, can she?

MR. CHAFFIN: Objection.

A. That's a very rude thing to say. You know, I think he killed her, if you want the honest to God's truth there, pal. All right?

Q. I'm sorry, ma'am. I didn't hear what you said.

A. I said, you know what, your remark was just very rude. And I think he killed her, for your information, because she would never hang herself. He probably did it for money.

Q. Oh, wait a minute, are you saying that he killed her?

A. I just, to my -- I would believe he did, for money.  Finkelstein Decl., Ex. B at 72:18-73:9

Plaintiff requires the post-mortem photographs to rebut the assertions posed by Linda Landry's testimony.  Dr. Maris testified that the manner in which Susan Bulger hung herself indicates the intentionality of her act:

> Q. Well, to be fair, I mean, Susan Bulger didn't -- she didn't hang herself from a noose suspended from the ceiling. In other words, she didn't -- she didn't take a chair and jump off the chair and hang herself, right?
>
> A. That's true. And nobody does.
>
> Q. Nobody does?
>
> A. Almost nobody. You'd be surprised. In fact, I think the medical examiner consultant said that it's more like an execution, like a hangman's execution where you actually free-fall and break the neck. Almost nobody does that. Everybody kneels.
>
> Q. Okay.
>
> A. Let's say 95 percent.
>
>  Finkelstein Decl., Ex. C at 973:22-974:11

Moreover, the photographs, although not gruesome compared to the photographs described in the caselaw cited above, are extremely relevant in this case to demonstrate that Susan Bulger indeed did commit suicide.  The photograph in question demonstrates the intentional nature of the suicide (height from floor to ceiling and the fact that Susan Bulger had to bend her knees to hang herself) and goes to Susan Bulger's state of mind at the time of the suicide.  Furthermore, the probative value of the photographs rebut Linda Landry's assertion and demonstrate Susan Bulger's state of mind; the evidence substantially outweighs any potential unfair prejudice to Defendants.

## CONCLUSION

Plaintiff respectfully requests that this Court deny Defendants' motion *in limine* to exclude the testimony of Plaintiff's decedent's minor daughter, family photographs and memorabilia, and post-mortem photographs its entirety because such information is relevant to various salient issues in this litigation, including the Susan Bulger's minor child's claim for loss of parental consortium, the manner of death and the probative value of this evidence far

outweighs and potential prejudice to Defendants.

Dated: July 8, 2009                                    Respectfully submitted,


By:    **/s/ W. Mark Lanier**
         W. Mark Lanier, Esquire
         THE LANIER LAW FIRM, P.L.L.C.
         126 East 56th Street, 6th Floor
         New York, NY  10022


By:    **/s/ Andrew G. Finkelstein**
         Andrew G. Finkelstein, Esquire
         Finkelstein & Partners, LLP
         1279 Route 300, P.O. Box 1111
         Newburgh, NY  12551

         *Attorneys for Plaintiff David S. Egilman*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on July 8, 2009.

            **/s/ Andrew G. Finkelstein**
              Andrew G.