UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| | Magistrate Judge Leo T. Sorokin |
| *Bulger v. Pfizer Inc., et al.* Case No. 1:07-cv-11426-PBS | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION IN LIMINE
TO PRECLUDE MISCELLANEOUS SUBJECTS FROM EVIDENCE AT TRIAL**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") hereby respond to Plaintiff's motion *in limine* to exclude certain miscellaneous subjects from evidence at trial. Pfizer has grouped several subjects on which it asserts the same response.[1]

**(1) That a verdict for Plaintiff will adversely impact pharmaceutical companies' incentive/ability to develop new medications. (Pl. Mem. at 2-3.)**

**(2) Any comment or inference, evidence, testimony, or documents tending to suggest in any way that an award of damages in this case will adversely affect the ability of any member of the jury to purchase, or have available medications in the future, or affect the cost thereof, or have any adverse effect on the medical or health products available to individuals or industries in the United States or worldwide. (Pl. Mem. at 3.)**

**(4) That this case or any other Neurontin products liability case may cause an increase in the cost of purchasing or maintaining insurance. (Pl. Mem. at 3.)**

**(5) That this case or any other Neurontin product liability case may cause an increase in the cost of purchasing medications for the public. (Pl. Mem. at 3.)**

Pfizer opposes Plaintiff's motion as to the foregoing subjects because such evidence is relevant to Plaintiff's claim for punitive damages. Specifically, Pfizer must be permitted to introduce evidence that a punitive damages award greater than that reasonably necessary to deter

---

[1] The numbering of the issues below corresponds to that set forth in Plaintiff's motion.

the conduct allegedly giving rise to liability and warranting punitive damages may lead to over-deterrence, inhibit Pfizer's development of new medications to improve public health, and increase healthcare costs.

The Supreme Court has made clear that due process requires that punitive damages awards be reasonable, and in all events no greater than the amount necessary to punish and deter the conduct at issue. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419-20 (2003) (reversing punitive damages award where "a more modest punishment for this reprehensible conduct could have satisfied the State's legitimate objectives" of punishment and deterrence); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 584 (1996) ("The [punitive damages] sanction imposed in this case cannot be justified on the ground that it was necessary to deter future misconduct without considering whether less drastic remedies could be expected to achieve that goal."). Consistent with this authority, Pfizer must be allowed to present evidence on the issue of deterrence, including evidence that an unreasonably large punitive damages award would stifle product innovation and increase healthcare costs.

The cases on which Plaintiff relies do not support exclusion of such evidence on the issue of punitive damages on prejudice or other grounds. None of the cases involved claims for punitive damages, much less evidence that an unreasonably large punitive damages award could deter product development. Indeed, the court in *Norman v. Gloria Farms, Inc.*, 668 So. 2d 1016 (Fla. Dist. Ct. App. 1996), found that defendants' closing argument about a "punitive effect on landowners in general" if the jury were to find defendant liable for injuries sustained by plaintiff while hunting on defendant's land was improper because *"no punitive damages were being claimed."* *Id.* at 1021 (emphasis added). Where punitive damages *are* at issue, evidence on issues of punishment and deterrence, including the potential impact on innovation and the broader community, are highly probative. *See, e.g.*, *Jiminez v. Chrysler Corp.*, 74 F. Supp. 2d 548, 577 (D.S.C. 1999) (observing that, "[i]n a sense, the jury, on the punitive damages issue, truly is the conscience of the community, because it is charged with responsibility for determining the reprehensibility of conduct and what the appropriate punishment and deterrent

2

may be," and distinguishing the "conscience of the community" reference in *Westbrook v. General Tire & Rubber Co.,* 754 F.2d 1233 (5th Cir. 1985), cited by Plaintiff here, as not involving a punitive damages claim), *rev'd on other grounds*, 269 F.3d 439 (4th Cir. 2001).

To the extent the Court grants Pfizer's conditional motion to bifurcate Plaintiff's punitive damages claim [1903], Pfizer does not oppose Plaintiff's motion to exclude evidence of the foregoing subjects during the compensatory phase of trial.

### (6) Any comment, evidence, testimony, inference or document mentioning medical conditions of Plaintiff's decedent's family that are unrelated to the injuries at issue in this lawsuit. (Pl. Mem. at 4.)

Pfizer opposes Plaintiff's motion to the extent it purports to exclude evidence of Susan Bulger's family history of mental health problems, substance abuse, and chemical addiction because such evidence is highly relevant to the central issues of Mrs. Bulger's health and risk factors for suicide, including her history of neglect and abuse as a child and her own history of mental health disease and substance abuse. Pfizer also opposes Plaintiff's motion to the extent it purports to exclude evidence of Ronald Bulger, Sr.'s use of and dependence on prescription or illegal narcotics. Such evidence is relevant to Mrs. Bulger's history of substance abuse and to her marital and family problems, all of which are risk factors for suicide. Plaintiff will have ample opportunity to present his own expert testimony on these issues and to cross examine Pfizer's witnesses. Pfizer incorporates by reference herein its concurrently filed opposition to Plaintiff's Motion in Limine to Preclude Any Mention at Trial by Defendants of Bad Acts of Plaintiff's Decedent and her Family and the Medical History of Plaintiff's Decedent's Family.

### (7) Any comment, inference, evidence, testimony, or document tending to suggest in any way that an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law. (Pl. Mem. at 4.)

The constitutionality or legality of a punitive damages award concerns a legal argument that is not the proper subject of a motion *in limine*. Pfizer will present such argument to the Court, not the jury.

3

**(9) That Plaintiff's attorneys and their law firms primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation or that plaintiff's firm implemented a national advertising campaign for Neurontin cases. (Pl. Mem. at 4.)**

Pfizer agrees that arguments or evidence tending to characterize or malign the parties' respective counsel are irrelevant and improper and should be excluded. However, Pfizer opposes Plaintiff's motion to exclude evidence that Plaintiff's counsel implemented a national advertising campaign for Neurontin cases. As Pfizer's experts have opined, the national advertising campaign injected bias into the adverse reporting system for Neurontin, on which Plaintiff's experts have heavily relied, and is directly relevant to the issues of duty to warn and general causation. (*See, e.g.*, Exh. A, Report of Sheila Weiss Smith, Ph.D., FISPE, at 14, 15-22.) Indeed, Plaintiff's own expert, Cheryl Blume, Ph.D., conceded that attorney advertising for Neurontin litigation could have stimulated adverse event reports (*see* Exh. B, Blume Dep., at 201:1-202:1), and Keith Altman, who prepared the adverse event analyses on which Dr. Blume relied for her opinions, has averred that "Dr. Blume . . . always requested that I confine analyses to data before the 3rd quarter of 2003 for signal detection purposes. [Dr. Blume] clearly recognized that [a notoriety] bias was possible after that point in time . . . ." (Exh. C, Declaration of Keith Altman, ¶ 24.) Plaintiff will, of course, be able to proffer expert testimony on the effect, if any, of the advertising campaign on the adverse reporting system, and to cross-examine Pfizer's experts on the issue.

In addition, there is conflicting evidence as to whether Susan Bulger had been taking Neurontin in the days before her suicide and whether she took it the night of her suicide, as Ronald Bulger, Sr., has claimed. Evidence that Mr. Bulger was exposed to advertising for Neurontin litigation before he reported to the police that Mrs. Bulger had taken Neurontin the night of her suicide is thus relevant to the critical issue of specific causation and to Mr. Bulger's credibility and motivation in identifying Neurontin to the police. Here too, Plaintiff will be free to proffer his own testimony about Mr. Bulger's exposure to such advertising, minimizing any potential prejudice.

4

> **(11) Any comment, evidence, testimony, inference or documents mentioning that: (a) state products liability law frustrates the FDA's protective regime; (b) state tort law undercuts the FDA's mission to provide only scientifically valid warnings; (c) state warning defect or failure-to-warn laws pressure drug manufacturers to add unsubstantiated, false, or invalid warnings in order to avoid lawsuits; or (d) too many warnings of serious injuries will dilute the effectiveness of warnings generally. (Pl. Mem. at 5.)**

Pfizer does not intend to make legal arguments to the jury. It does, however, intend to, and should be permitted to, present expert testimony on whether or not it would have been reasonable for it to warn, at the time that Mrs. Bulger was prescribed Neurontin, that Neurontin can increase the risk of suicide. This testimony will, among other things, address why a company should not warn of risks in the absence of sufficient scientific and medical evidence and why over-warning about risks in the prescription drug context is a problem. *Wyeth v. Levine*, 129 S. Ct. 1187 (2009), on which Plaintiff relies, stands for the proposition that FDA approval does not create an absolute legal defense to a failure-to-warn claim. It does not support a finding that a defendant should be prohibited from presenting, and juries from considering, factors proffered by a competent expert that would make it reasonable or unreasonable for a manufacturer to warn of a particular risk.

> **(3) References that this case or other Neurontin products liability litigation cases may have a negative impact on the stock price of Pfizer Inc or any other publicly traded pharmaceutical manufacturer. (Pl. Mem. at 3.)**
>
> **(8) Any mention of the purported "litigation crises," "lawsuit crisis," "lawsuit abuse," or similar terms or phrases. (Pl. Mem. at 3.)**
>
> **(10) Any comment or personal anecdote from any witness or lawyer for Defendants about themselves, or family members who have used Neurontin. (Pl. Mem. at 5.)**

Pfizer does not oppose Plaintiff's motion as to the foregoing subjects.

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that the Court deny Plaintiff's motion to exclude evidence regarding the subjects enumerated above as 1, 2, 4, 5, 6, 9, and 11.

Dated: July 8, 2009

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
  Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

-and-

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
  William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

-and-

SHOOK, HARDY & BACON L.L.P.

By: /s/ Scott W. Sayler
  Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel: (816) 474-6550

-and-

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
    David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 8, 2009.

/s/ David B. Chaffin
David B. Chaffin