UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
: MDL Docket No.: 1629
In re:  NEURONTIN MARKETING, :
        SALES PRACTICES AND : Master File No.: 04-10981
        PRODUCTS LIABILITY LITIGATION :
: Judge Patti B. Saris
---------------------------------------------------------------x
: Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO: :
:
*Egilman v. Pfizer Inc.,* 1:07-11426-PBS :
:
---------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' CONDITIONAL MOTION FOR
<u>BIFURCATED TRIAL OF PUNITIVE DAMAGES CLAIM</u>**

Plaintiff DAVID S. EGILMAN, (hereinafter "Plaintiff"), as Administrator of the Estate of Susan Bulger, deceased, by and through his attorneys, The Lanier Law Firm, P.L.L.C. and Finkelstein & Partners, LLP, respectfully requests that the Court deny in its entirety Defendants' conditional motion to bifurcate the trial of Plaintiff's punitive damages claim on the grounds that the evidence on liability for compensatory damages and punitive damages are inextricably intertwined, and bifurcation would do nothing more than make certain that two duplicative trials would have to be held where in fact, one would be sufficient.

<u>**INTRODUCTION**</u>

Defendants' marketing and advertising materials and conduct, documents from the *Franklin* Litigation, and Defendants' Guilty Plea are relevant to both the issue of Defendants' liability and compensatory damages for the injuries sustained by Plaintiff's decedent and to the issue as to whether Defendants' actions were the result of intentional conduct and gross negligence which entitles Plaintiff to punitive damages. Although Plaintiff does not intend to

reargue his oppositions to Defendants' motions to exclude the marketing documents, Guilty Plea etc., in this motion, from prior rulings from the Court, it is clear that these very documents that Defendants seek to exclude are critical to the issues of liability for compensatory damage in this case and will significantly overlap with issues regarding punitive damages.  In the Court's May 26, 2009 Memorandum and Order, Judge Patti B. Saris succinctly defined the heightened duty that inures to a pharmaceutical manufacturer once it engages in the illegal promotion a drug for off-label uses:

> Based on the reasoning of this caselaw, the Court concludes that a manufacturer of a pharmaceutical has a duty to disclose to physicians and patients material facts about the risks of the drug, particularly when it is engaged in off-label marketing for uses not approved by the FDA, if it knows that the plaintiff and/or his prescriber does not know or cannot reasonably discover the undisclosed facts.

ECF Doc. # 1790 at 25.

Plaintiff alleges that Defendants were negligent and breached their duty of care to the decedent, Susan Bulger, by failing to adequately warn of her increased risk of suicide caused by her ingestion of the drug Neurontin for uses not approved by the FDA.  "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Moore's Fed. Rules Pamphlet 2009, Fed. R. Evid. 401.  Clearly, that Defendants owe a particular duty of care to consumers and their prescribers because of their illegal promotion of Neurontin for such off-label uses not approved by the FDA is highly relevant to the liability issues in this case.  Defendants' national marketing documents, the Guilty Plea and Information and David Franklin and the *Franklin* Litigation, etc., go to the heart of the matter that Defendants, when they illegally promoted Neurontin for off-label uses not approved by the FDA

to consumers, owed a duty of care to off-label users and prescribers such as Plaintiff's decedent Susan Bulger and her prescribers, who did not know of Neurontin's undisclosed risks, etc.

Defendants knew of the risks that Neurontin could cause adverse mood and behavior changes and increased risk for suicidality. Rather than conduct adequate clinical trials for Neurontin for these off-label uses and make the appropriate applications to the FDA for approval for such indications, Defendants instead chose to intentionally embark on an illegal marketing scheme for the off-label promotion of their drug Neurontin; such action is at the heart of Defendants' breach of their duty of care. That in making such decisions to implement an elaborate plan to circumvent the FDA approval process and breach their duty of care to prescribing physicians and consumers of Neurontin, Defendants were motivated by profits or the bottom line, is part and parcel of the negligence issue. This is undeniably evidence that demonstrates Defendants breached their standard of care (negligence). But it is also evidence of Defendants' reckless indifference for public safety (outrageous conduct). It is virtually impossible to separate the evidence of Defendants' negligence from the evidence of their outrageous conduct. Therefore, Defendants' proposed bifurcation would not serve any useful purpose but would simply waste judicial resources and double the time required for trial of this action because Plaintiff rightly would be entitled to present such evidence during both a liability and compensatory damages phase and a punitive damages phase of the trial. Defendants' proposal would extend the length of trial, and cause the Court, the jurors, and the attorneys to listen and respond to duplicative evidence.

As will be discussed below, virtually every piece of Plaintiff's liability evidence for compensatory damages would have to be introduced yet again in the punitive damages phase. Bifurcation of punitive damages is therefore inappropriate in cases such as this where the

3

evidence of liability for compensatory damages and punitive damages are inextricably intertwined and thus the same evidence would unquestionably have to be introduced again in the punitive damages phase, thus defeating the purpose and policies behind bifurcation. If the policy behind Fed. R. Civ. P. 42(b) is to be followed, there should be no bifurcation of this trial.

## ARGUMENT

The First Circuit has stated that "[w]hile we have in the past approved separate trials of liability and damages issues, under some circumstances even these issues may be interwoven to the point that separate trials should not be held." *Franchi Constr. Co. v. Combined Ins. Co.*, 580 F.2d 1,8 (1st Cir. 1978) (citations omitted). The "United States Supreme Court has held that issues may not be separated for the purpose of a new trial unless 'it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.'" *Id.* at 7 (citations omitted). Further, although the "concerns advanced by the trial judge are undoubtedly important, they should not control the decision to conduct separate trials before different juries if the issues to be so tried are not separate and distinct." *Id.* The "decision of whether to isolate the punitive damages phase of the trial is within the sound discretion of the trial court." *Thorne v. Welk Inv., Inc.* 197 F.3d 1205 (8th Cir. 1999) (Court of Appeals reaffirmed the district court's "refusal to bifurcate the punitive damages aspect of the case"); *see also Abbott Labs. v. Selfcare, Inc.,* 2000 U.S. Dist. 15263 (D. Mass. Sep. 29, 2000) (district court noted that educating two separate juries on the complexity of the issues in the case would "prove far more taxing for the litigants and the court than conducting a single, albeit longer, jury trial").

In *Data Gen. Corp. v. Grumman Sys. Support Corp.,* a patent infringement case where the district court was asked to bifurcate the liability and damages portions of the case for trial, the court reminded counsel that the Advisory Committee Notes to the 1966 amendment of Fed.

R. Civ. P. 42(b) stated that bifurcation "is not to be routinely ordered" and found it would not "allow bifurcation in a case in which the parties demand trial by jury, the liability portion of the trial will likely be long and complex, and there is a distinct possibility that issues of damages and liability will overlap.  In the interest of fairness to the parties and judicial economy, the case should be tried as a whole to the same jury.."  795 F. Supp. 501, 503 (D. Mass. 1992).

In *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.,* a declaratory judgment action where defendants had asserted a counterclaim for bad faith and punitive damages, the district court denied plaintiff's motion to bifurcate, stating that "[b]ifurcation is the exception to the general rule that disputes should be resolved in a single proceeding" and noting that "[f]ederal courts have long adhered to the rule that bifurcation would be ordered only in exceptional cases because '[t]he piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course.'"  2008 U.S. Dist. LEXIS 91496, *5-6 (S.D. Ohio Nov. 3, 2008) (citing to Wright & Miller, *Federal Practice and Procedure* § 2388, at 474(2nd Ed. 1999).  The district court, in the "interests of judicial economy" ultimately found that plaintiff "would not be unfairly prejudiced . . . by . . . proceeding with all the claims at once, including Defendants bad faith counterclaim," and that "bifurcating the bad-faith claim, which may result in two separate trials could result in a significant hardship to both parties."  *Id.* at *9.

"Intentional or reckless behavior may be highly probative of elements of negligence or defective design cases.  The failure to report adverse actions to the FDA — whether accidental or intentional —would be probative of a failure to warn. And intentional or reckless behavior is often relevant to showing conduct below the reasonable standard of care necessary to make out a case of negligence."  *In re Diet Drugs Prods. Liab. Litig.,* 369 F.3d 293, 312 (3d Cir. 2004), *cert. denied,* 543 U.S. 960 (2004).  The Third Circuit recognized:

5

> Intentional conduct and even intentional risk-taking is analyzed under negligence rules unless the defendant has a purpose to invade the plaintiff's interests or a certainty that such an invasion will occur. . . .The defendant who intentionally takes a risk may or may not be negligent; negligence will depend upon the seriousness of the risk and the reasons for taking it. . . . In spite of the fact that it is conduct and risk, not mental state that determines negligence, the defendant's state of mind is not necessarily irrelevant in a negligence case. The defendant's knowledge of facts that make a given act risky (as distinct from his attitude is frequently important on the negligence issue. [*Id.* (citing to Dan B. Dobbs, The Law of Torts § 116 (2001)).]

## POINT I

## PLAINTIFF'S PUNITIVE DAMAGES CLAIM IS <u>INSEPARABLE FROM HIS COMMON LAW CLAIMS</u>

Here, Defendants' knowledge from the Clinical Review and various signals that demonstrated an association between the ingestion of Neurontin and adverse mood and behavioral changes and an increased risk for suicidality reveal that Defendants had the ability to amend the Neurontin labeling to provide adequate warnings of such risks. Defendants' suppression of the same information supports Plaintiff's requests for liability as to both compensatory damages and punitive damages. The information is inherently intertwined and one is inseparable from the other. Therefore, the threshold element for bifurcation, that the issues be "distinct and separable", cannot be met. Bifurcation of Plaintiff's claims between a liability for compensatory damages phase and a punitive damages phase would severely prejudice the logical flow of the evidence intended to be used and would require unnecessary duplicative proofs. Moreover, it would prejudice Plaintiff by instilling a sterile atmosphere into his factual presentation of the evidence and prevent him from presenting evidence on the critical issue of Defendants' breach of duty of care.

6

## POINT II

### THE PREJUDICE TO PLAINTIFF FROM A BIFURCATED TRIAL WOULD FAR OUTWEIGH ANY PREJUDICE TO DEFENDANTS

The elimination of Plaintiff's ability to present evidence regarding the plans and motivations of Defendants' for circumventing the FDA regulations and breaching their statutory and common law duty to Plaintiff for financial gain during the trial would essentially deny Plaintiff the ability to prove an essential element of his case and would easily obscure the magnitude of the case and the significance of the jury's decision. Moreover, Defendants are seeking to exclude very strong evidence of fault during the liability phase of the trial on the ground that such evidence might cause prejudice. However, negligence is a "fault-based" theory of liability, and motive of evidence of intentional and outrageous conduct is "very strong evidence of fault" that rightly should be admissible in relation to Defendants' liability.

*See In re: Diet Drugs Prods. Liab. Litig.,* 369 F.3d at 311-12 (Third Circuit reversed district court holding that "very strong evidence" of fault should be diluted so as not to arouse the jury to award punitive damages).

Additionally, because Plaintiff submits that Defendants' motivation for breaching their duty of care and circumventing the FDA approval process was motivated in part by financial gain, Defendants' financial gain, increase in worth, etc., would be relevant both to the liability and punitive damages in this case. Therefore, Defendants would not be prejudiced by the trial of these issues together, and any alleged prejudice would not outweigh the prejudice that would be suffered by Plaintiff.

## POINT III

### BIFURCATION WOULD NOT SERVE THE PURPOSES OF CONVENIENCE, AVOIDING DELAY OR THE ENDS OF JUSTICE

Defendants' proposal of a bifurcated trial ignores the reality that the marketing documents, Guilty Plea and *Franklin* documents, etc., are necessary for Plaintiff's case on the issue of liability. A bifurcated trial would further lengthen the anticipated time it would take to

7

conduct this trial.  It would be a virtual impossible to conduct the trial in a two-week period as established by the Court if the issues of liability for compensatory damages and punitive damages are bifurcated.  It would entail the re-introduction, re-description and reconsideration of all of the evidence proffered in the first trial on liability in the second trial on punitive damages. In both of trials, the experts would have to return.  That Defendants knew, or should have performed adequate pharmacovigilance and should have known that Neurontin caused suicide, and failed to warn due a profit motive, is relevant to both the liability and punitive damages claims.  Corporate witnesses would have to return to provide testimony relative to Defendants' conduct in breaching their duty of care and for the punitive damages.  The jury would be subject to an essentially instant replay of what they have already heard.  Therefore, in this case, bifurcation would lengthen the trial, may cause confusion and mislead the jury and would not serve the convenience or ends of justice.  Bifurcation would make the trial of this action unmanageable and inefficient and cause it to go off schedule and would cause Plaintiff to relitigate the claim twice for no justifiable reason.

**CONCLUSION**

Plaintiff therefore respectfully requests that the Court deny Defendants' conditional motion to bifurcate the trial of Plaintiff's punitive damages claim in its entirety on the grounds that the evidence on liability for compensatory damages and punitive damages are inextricably intertwined, and bifurcation would do nothing more than make certain that two duplicative trials would have to be held where in fact, one would be sufficient.

Dated: July 8, 2009                                             Respectfully submitted,


By:     **/s/ W. Mark Lanier**
          W. Mark Lanier, Esquire
          THE LANIER LAW FIRM, P.L.L.C.
          126 East 56th Street, 6th Floor
          New York, NY  10022


By:     **/s/ Andrew G. Finkelstein**
          Andrew G. Finkelstein, Esquire
          Finkelstein & Partners, LLP
          1279 Route 300, P.O. Box 1111
          Newburgh, NY  12551

          *Attorneys for Plaintiff David S. Egilman*


**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on July 8, 2009.

           **/s/ Andrew G. Finkelstein**
             Andrew G. Finkelstein