UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
: MDL Docket No. 1629
In re:  NEURONTIN MARKETING,       :
       SALES PRACTICES AND        : Master File No. 04-10981
       PRODUCTS LIABILITY LITIGATION :
: Judge Patti B. Saris
------------------------------------------------------------x
: Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:          :
:
*Egilman v. Pfizer Inc.*, 1:07-cv-11426-PBS  :
:
------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF MARKETING OR
ADVERTISING MATERIALS AND CONDUCT, DAVID FRANKLIN AND
THE *FRANKLIN* LITIGATION, AND OTHER CLAIMS OR ACTIONS**

Plaintiff David S. Egilman., (hereinafter "Plaintiff"), as Administrator of the Estate of Susan Bulger, Deceased, by and through his attorneys, The Lanier Law Firm, P.L.L.C. and Finkelstein & Partners, LLP, respectfully requests that this Court deny in its entirety Defendants' Motion *in Limine* to exclude evidence of marketing or advertising materials and conduct, David Franklin and the *Franklin* litigation, and other claims or actions on the grounds that: (1) on June 5, 2009, this Court denied Defendants' motion, *inter alia,* to exclude the marketing documents, ECF Doc. # 1816, and this motion *in limine* is nothing more than Defendants' attempt to obtain a second bite of the apple; (2) pursuant to Fed. R. Evid. 401, such information is relevant to various salient issues in this litigation, including Defendants' negligence, failure-to-warn, and suppression, and recklessness in not demonstrating the safety of Neurontin in off-label populations to whom the company had notice were using Neurontin; (3) Plaintiff does not intend to use the subject material as evidence of prior bad acts (which is not an issue since these are not

**prior** bad acts but Defendants' acts that form the facts and circumstances of this very litigation), but to demonstrate Defendants' negligence in knowingly and recklessly promoting Neurontin to off-label populations without performing the adequate pharmacovigilance to ascertain whether Neurontin was safe for such uses; and (4) the probative value of the evidence at issue greatly outweighs any potential unfair prejudice to Defendants.

## INTRODUCTION

On June 5, 2009, this Court issued an electronic order relating to Defendants' motion to, *inter alia*, exclude national marketing documents from evidence, and stated the following: "[t]he request to remove evidence related to national marketing is denied." Defendants' motion *in limine* to exclude the national marketing documents is merely an attempt to gain a second bite of the apple and should not be considered by this Court.

## ARGUMENT

### POINT I

**PLAINTIFF'S USE OF NATIONAL MARKETING OR ADVERTISING OF DEFENDANTS' OFF-LABEL PROMOTION OF NEURONTIN IS PROPER BECAUSE SUCH EVIDENCE IS RELEVANT TO PLAINTIFF'S CLAIMS THAT DEFENDANTS BREACHED THEIR DUTY OF CARE, INCLUDING PERFORMING ADEQUATE PHARMACOVIGILANCE, AND PUNITIVE DAMAGES**

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Moore's Fed. Rules Pamphlet 2009, Fed. R. Evid. 401. Defendants' national marketing documents relating to off-label marketing are admissible at trial to the extent they are relevant to Plaintiff's negligence, failure-to-warn, and negligent pharmacovigilance claims against Defendants. *See* ECF Doc. # 1790 at 33.

Judge Patti B. Saris, in her May 26, 2009 Order, succinctly described the heightened duty

to warn that a pharmaceutical manufacturer bears when it engages in off-label marketing of a drug:

> Based on the reasoning of this caselaw, the Court concludes that a manufacturer of a pharmaceutical has a duty to disclose to physicians and patients material facts about the risks of the drug, <u>particularly when it is engaged in off-label marketing</u> for uses not approved by the FDA, if it knows that the plaintiff and/or his prescriber does not know or cannot reasonably discover the undisclosed facts.

ECF Doc. # 1790 at 25 (emphasis added).

The manufacturer's <u>knowledge</u> of off-label use with its drug is inextricably intertwined with a manufacturer's duty to disclose material facts about risks with the drug. While off-label prescribing by physicians is not itself improper, a manufacturer with knowledge of both extensive off-label use and material facts about risks inherent with taking the drug (e.g., depression and suicide), has a duty to take action. As explained below, Defendants were on notice both of the risks of depression and of the substantial off-label use of Neurontin. Defendants' national marketing documents are probative of Defendants' negligence.

First, Defendants' marketing documents are relevant to Plaintiff's proof that Defendants had a regulatory duty to create, establish and execute a pharmacovigilance plan to evaluate and analyze suicide and depression adverse events. Defendants were on notice of risks since at least 1992. The FDA stated at that time: "Less common but more serious events <u>may limit the drug's widespread usefulness</u> . . . [D]epression, while it may not be an infrequent occurrence in the epileptic population, may become worse and require intervention or lead to suicide, as it has resulted in some suicidal attempts." ECF Doc. # 1790 at 4-5 (emphasis added).

Defendants knew of Neurontin's subsequent <u>widespread</u> off-label use. Sales of Neurontin for off-label uses were at approximately 90% before Susan Bulger's death. *See* ECF Doc. # 1790 at 8. Central to Plaintiff's cause of action is to establish when the duty to take

3

action through warning and enhanced pharmacovigilance arose. Plaintiff intends to prove that duty arose when the off-label use of Neurontin substantially increased. Plaintiff intends to use the national marketing documents to establish when Defendants should have undertaken to create a pharmacovigilance plan. Defendants' negligent actions continued at least through 2004 (when Susan Bulger died) when Pfizer Defendants (not just Parke-Davis and Warner-Lambert entities) failed to recognize and fully disclose suicide risks with Neurontin and, instead, sought to compare Neurontin as safer than competing drugs which did have specific warnings related to suicide. *See* Declaration of Andrew G. Finkelstein, Ex. A at 27; ECF Doc. # 1790 at 8.

Second, not only did Defendants know of the widespread off-label use of Neurontin — indeed they engaged in off-label promotion — Defendants were on notice that patients using Neurontin for off-label uses were at risk. Separate and apart from the FDA's concern in 1992, the risk was confirmed by Defendants' pharmacovigilance witness, Manfred Hauben, whose internal Pfizer documents included the following salient language:

> With the post marketing use of gabapentin in patients other than with epilepsy, it is important to identify whether these new populations may be particularly susceptible to specific adverse drug effects, both labeled and unlabeled, and to identify conditions under which specific adverse events may be more likely to occur in these new patient populations.

Finkelstein Decl., Ex. B.

It is axiomatic that Defendants had a duty to apply this knowledge about Neurontin's off-label usage to research the risks of suicidality, which Defendants negligently chose not to undertake. Instead of researching and investigating the safety of Neurontin when used in off-label populations that were particularly susceptible to specific adverse drug effects, Defendants negligently promoted Neurontin for off-label uses not approved by the FDA including unapproved "pain" and "bipolar" uses, the indications for which Susan Bulger was prescribed

4

Neurontin.  *Id.* at 5.  *See* Finkelstein Decl. Ex. C.  Not until 2006 did Defendants' own Risk Management Strategy Department implement a purported investigation of suicidality (e.g., the Gabapentin Data Capture Aid).  *See* Finkelstein Decl. Ex. D.  In sum, central to Plaintiff's cause of action is to establish when the duty to take action through warning and enhanced pharmacovigilance arose.  Plaintiff intends to prove that the duty arose with known substantial increase of off-label use of Neurontin.  Defendants knowledge is established through the national marketing documents.

Applying the language and reasoning of this Court, for purposes of Plaintiff's negligence claims, Plaintiff shall pursue at trial the foundational evidence that Defendants "engaged in off-label marketing" and thus had a "particular[]" "duty to disclose to physicians and patients material facts about the risks of [Neurontin]."  *See* ECF Doc. # 1790 at 25.  Defendants were negligent and breached their duty of care to Susan Bulger by failing to adequately warn about the increased risk of suicidality with Neurontin ingestion, <u>particularly</u> where Defendants had knowledge of the substantial off-label use with Neurontin.  Defendants' knowledge of substantial off-label use and subsequent failure to warn of suicidality proximately caused Susan Bulger to commit suicide.

Defendants' actions in seeking to preclude all evidence related to national marketing blatantly disregards that such documents and witness designations are probative of matters other than fraud.  Defendants seek to expand improperly upon this Court's decision of May 26, 2009, ECF Doc. # 1790, relating the Court's limitation of evidence on Defendants' national marketing campaign and Plaintiff's fraudulent concealment claims.  The cases cited by Defendants are quite distinguishable from the situation here where Plaintiff will proffer national marketing evidence to demonstrate Defendants' breach of duty and negligence.  *In re Norplant Contraceptive Prods.*

5

*Liab.. Litig.*, 1997 U.S. Dist. LEXIS 11091 (E.D. Tex. Feb. 21, 1997), involved FDA approved direct-to-consumer advertising and the issue of dilution of the warning, not a manufacturer's use of a marketing campaign for off-label uses to circumvent the FDA approval process and failure to provide adequate warnings regarding the risk of suicide.  *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 WL 223140 (M.D. Fla. Jan. 30, 2009), plaintiff was going to utilize the promotional materials in regard to their claims of omission and misrepresentation. In *Miller v. Pfizer*, 196 F. Supp. 2d 1095 (D. Kan. 2002), Defendants' citation refers to a plaintiff's assertion that a physician had subliminally received the manufacturer's fraudulent marketing message, and the court granted defendants' summary judgment on their fraud based claims.  But, here, Plaintiff's is not utilizing the documents to demonstrate fraud or dilution of the warning in this case, but is utilizing the documents to demonstrate Defendants' intentional breach of their common law and statutory duty of care.

   Moreover, Plaintiff's decedent's prescribing physicians testified that in discussing their prescribing practices and risk/benefit analyses for prescribing a drug wanted to know about (a) Neurontin's mechanism of action and Neurontin's effect on neurochemistry (seorotonin); (b) suicide attempts during clinical trials; (c) depression adverse events during clinical trials and (d) that patients taking Neurontin may suffer mood and behavioral disturbances.  ECF Doc # 1636. Defendants' actions, in breaching their duty of care, and in  failing to perform adequate pharmacovigilance which inevitably led to their failure to warn that the ingestion of Neurontin causes adverse mood and behavior changes and increases the risk for suicidality, resulted in preventing Susan Bulger and her prescribing physician(s) from being able to fully assess the risk-benefit analysis for the underlying off-label condition for which Neurontin was prescribed to her, and from being able to fully monitor changes in her mood and behavior caused by Neurontin.

**POINT II**

**PLAINTIFF'S USE OF DEFENDANTS' NATIONAL MARKETING
AND ADVERTISING FOR THE OFF-LABEL PROMOTION OF NEURONTIN
IS PROPER BECAUSE SUCH EVIDENCE IS RELEVANT TO DEFENDANTS',
INCLUDING PFIZER'S, INTENTIONAL AND RECKLESS PROMOTION OF
THEIR DRUG NEURONTIN TO OFF-LABEL POPULATIONS WITHOUT
PERFORMING THE ADEQUATE PHARMACOVIGILANCE TO
<u>ASCERTAIN WHETHER NEURONTIN WAS SAFE FOR SUCH USES</u>**

Defendants argue that the marketing evidence is not relevant to the question of "whether Pfizer knew or should have known about such a risk at the time Neurontin was prescribed to Mrs. Bulger." Defs. Mem., ECF Doc. # 1913 at 4. What is perfectly clear is that Defendants were negligent and reckless in knowingly not performing adequate pharmacovigilance to ascertain whether the drug was safe for the off-label uses by the population for which they were promoting the drug off-label. Plaintiff requires the national marketing documents to demonstrate that Defendants were negligent and reckless when they knowingly disregarded the safety of the off-label population taking Neurontin while promoting Neurontin for off-label uses.

Moreover, Pfizer itself is complicit in this failure and perpetuated the breach of duty and negligence when they took control of the manufacture of Neurontin. An April 1, 2003 e-mail by Defendants' employee John Marino demonstrates that after Pfizer took control of Neurontin, Pfizer was well aware that Neurontin was only approved for epilepsy yet boasted of sales well in excess of that which was anticipated (an in excess of the adjunctive epileptic drug market place) and noted that there were "lots of legal problems." Finkelstein Decl., Ex. E. The e-mail demonstrates that Pfizer, instead of performing the required pharmacovigilance so that it could apply for FDA approval for the off-label indications, knowingly sat on their hands and sought to just continue to reap the profits from the illegal off-label marketing boon.

Moreover, in December 2000, although Pfizer Defendants were concerned with legal challenges in regard to prior off-label practices to illegally promote Neurontin and were going to refrain from same, Pfizer knowingly did nothing to ascertain the risks of the Neurontin to off-label users — they failed to evince any concern regarding the safety of the drug which had not been properly tested or approved by the FDA for these off-label uses.  Finkelstein Decl., Ex. F.  Further, contrary to Defendants' assertions that "the risk was unforeseeable," the attached chart, entitled "Percentage of Serious Reports For Suicide and Self injurious Behavior" prepared by Plaintiff from data extracted from the Neurontin Adverse Event Database, indicates that as of June 30, 1999, there were indications that there was an increased risk for suicide for off-label indications.[1]  Finkelstein Decl., Ex. G.  Defendants' duty of care was to ascertain the risks, the risks were apparent, but Defendants simply made an intentional decision to sit on their hands and not perform the adequate pharmacovigilance.  The marketing documents demonstrate the negligence of Defendants, both Warner-Lambert and Pfizer, and their reckless disregard for the safety of the off-label population to whom they were either actively promoting the drug illegally or sitting idle and reaping the benefits of the off-label promotion, without performing the required pharmacovigilance to assess the risks to this population.

---

[1] Although Defendants' memorandum cites to case law insinuating that Defendants' could not have known of the risks  (ECF Doc #1913 at 6) this Court recognized that Plaintiffs sufficiently countered that misplaced argument in their opposition (ECF Doc # 1197) briefing to Defendants' *Daubert* and Summary Judgment briefing, the Court noted in its decision at pp. 81-89 and further  stated that: In fact, when hired by Warner Lambert to investigate the relationship between gabapentin and behavioral disturbances in the mid-1990s, Dr. Trimble (now one of Plaintiffs' experts) advised the company that one of the strongest associations with anticonvulsant drugs generally was to depression. (Trimble Rep. 29; see Michael Trimble, Psychosis with Gabapentin (Neurontin), May 20, 1995) (Pls.' Ex. 17.))  ECF Doc # 1775 at 21.

## POINT III

**THE NATIONAL MARKETING DOCUMENTS ARE RELEVANT TO SALIENT ISSUES IN THIS CASE AND PLAINTIFF WILL BE SEVERELY PREJUDICED IF THE DOCUMENTS ARE EXCLUDED; THE PROBATIVE VALUE OF THE DOCUMENTS SUBSTANTIALLY OUTWEIGHS ANY POTENTIAL FOR UNFAIR PREJUDICE, WILL NOT CONFUSE THE ISSUES OR WASTE THE COURT'S TIME, AND PLAINTIFF DOES NOT SEEK TO INTRODUCE SAME AS EVIDENCE OF DEFENDANTS' BAD ACTS — THE NATIONAL MARKETING DOCUMENTS ARE NOT PRIOR ACTS FROM ANOTHER LITIGATION BUT DEFENDANTS' ACTS FORM THE FACTS AND CIRCUMSTANCES OF THEIR NEGLIGENCE IN THIS LITIGATION**

To be admissible, evidence must be relevant. Fed. R. Evid. 401; *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248,252 (1st Cir. 1998). Relevant evidence is defined as evidence which may tend to prove or disprove a material fact that is of consequence to the determination of the action.. Fed. R. Evid. 401. Further, the Federal Rules of Evidence provide that "relevant evidence <u>may</u> be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403 (emphasis added). Plaintiff is not seeking that the marketing documents be admitted under Fed. R. Evid. 404(b), to prove conformity with **prior** bad acts, but instead for a wholly permissible purpose: to prove Defendants' breach of duty, negligence and their intentional disregard for the safety of off-label users of Neurontin. *See Flebotte v. Dow Jones & Co. Inc.,* 2001 U.S. Dist. LEXIS 1525, *5 (D. Mass. Jan. 24, 2001). The court remarked that the admission of any relevant evidence "carries a danger of prejudice." *Id.* at *4. The First Circuit has held that "the admitted evidence must not only be prejudicial, but be unfairly prejudicial, and not only outweigh relevance but substantially outweigh relevance." *United States v. Rivera,* 83 F.3d 542, 545 (1st Cir, 1996). The First Circuit also stated that "where the reviewing court finds the balancing close, Rule 403 tilts the balance in favor of admission." *Id.*

Initially, to make it perfectly clear, the facts are what the **facts are in this case** — these are not allegations or prior bad acts from an unrelated prior case or drug litigation — Defendants pled guilty to illegally promoting Neurontin for off-label uses, **they intentionally failed to perform the adequate pharmacovigilance even though they were aware of the risks for the off label uses which relegated Neurontin unsafe for off label uses in this litigation.** It is rather troubling that Defendants allege that Plaintiffs will utilize the marketing materials to encourage jurors to base their decision on "inflammatory allegations against Pfizer." Plaintiff does not seek to utilize the national marketing documents to show that Defendants have a propensity for any **prior** bad acts. Defendants are playing with words and being cavalier in their terminology and not accepting any responsibility for their illegal actions which is the cause and at the **forefront in this litigation**. Plaintiff is going to utilize the marketing documents, part of the very facts and circumstances which formed this litigation, to demonstrate Defendant' breach of the duty of care and negligence. Unfair prejudice does not mean "no prejudice" at all, as noted in *Flebotte, supra.*

As explored in detail above, Plaintiff seeks to introduce the national marketing documents for salient issues in this case, Defendants' breach of their duty of care and their negligence and knowing and reckless disregard for the safety of the off-label population to whom Defendants marketed the drugs without performing the requisite pharmacovigilance or receiving FDA approval. These issues are critical in this case and Plaintiff will be severely prejudiced if he is not permitted to introduce this evidence to prove his claims. Defendants did not perform adequate pharmacovigilance for theses drugs to ascertain the safety for off-label users. Both of these facts go to proving Defendants' breach of duty of care and negligence. Defendants can, and probably will, claim that any evidence that Plaintiff's desires to proffer in this case will be

10

prejudicial. But admitting the national marketing documents for the proper purpose — to demonstrate negligence and duty, will not cause Defendants to receive unfair prejudice for the actions that they intentionally took in relation to off-label uses of Neurontin.

On the other hand, the probative values of these documents substantially outweigh any potential prejudice to Defendants. Plaintiff will suffer severe prejudice if he is unable to utilize the national documents to show Defendants' negligence and breach of duty of care. The parties have already been advised by this Court to make their trial designations in accordance with the approximate three-week time period allotted for this trial. Plaintiff has complied with this Court's order and has included designations that include national marketing documents; therefore, the admission of these documents will not lengthen or affect the time period allotted by this Court for the trial of this action. Plaintiff's claim for the breach of duty and his negligence claim is fairly straightforward, and Plaintiff's use of the national marketing documents will not confuse the jury.

## POINT IV

### PLAINTIFF'S MARKETING EXPERT PROVIDES EXPERT TESTIMONY IN REGARD TO DEFENDANTS' RECKLESS BREACH OF THEIR DUTY OF CARE THROUGH DEFENDANTS' INTENTIONAL FAILURE TO PERFORM PHARMACOVIGILANCE AND <u>DEFENDANTS' INTENTIONAL OFF-LABEL MARKETING</u>

Plaintiff's marketing expert Dr. Charles King, III, provides expert testimony relevant to Defendants' breach of their duty of care to perform adequate pharmacovigilance and Defendants' actions to just reap the benefits of illegally promoting Neurontin for off-label uses. Dr. King provides expert opinions regarding the fact that Defendants' breach of their duty of care was intentional, that they had a plan, had a motive and had the opportunity to avoid their duty of care. Dr. King opined regarding Defendants' marketing for off-label uses:

> Warner-Lambert estimated that the "ultimate" sales potential for Neurontin over the life of its patent was on $500 million because of the limited adjunctive use for which it had been approved. To expand the market for Neurontin, Warner-Lambert developed a "publication strategy." Its goal was "to disseminate the information [about Neurontin's potential use for psychiatric disorders, including bipolar and mood and anxiety disorders] as widely as possible through the world's medical literature" as a means of generating excitement in the market and stimulating off-label prescriptions despite the lack of FDA approval. Warner-Lambert calculated that this strategy would avoid the costly and time-consuming clinical trials required for FDA approval.

Finkelstein Decl., Ex. H at 11.

Dr. King opines concerning the insidious details of how Defendants were well aware that they were thwarting the FDA approval process and intentionally breaching of their duty of care in the promotion of Neurontin for off-label uses:

> In the case of Neurontin, it was crucial for Warner-Lambert and allegedly Pfizer to maintain that these expenditures were for education, not promotion, so that it could evade legal constraints on its marketing activities.

Finkelstein Decl., Ex. H at 24.

Dr. King further opined concerning Defendants' intentional breach of their duty of care to off-label users:

> After evaluating the potential markets for other clinical uses, such as treatment of bipolar disorder, painful diabetic neuralgia, and chronic pain, Warner-Lambert calculated that seeking FDA approval would not be worthwhile because of the expense of clinical trials, the short remaining patent life for Neurontin, and potential adverse impact on the sales of a new drug that Warner-Lambert was developing. Warner-Lambert decided to promote off-label uses of Neuron tin even though off-label promotion is expressly prohibited by the FDA.

*Id.* at 29

Further, Dr. King opined in regard to Defendants' failure to adequately disclose to physicians the risks from the ingestion of Neurontin for an off label use:

> Warner-Lambert and Pfizer allegedly promoted off-label uses of Neurontin by making false claims about its uses and efficacy. Warner-Lambert and Pfizer allegedly failed to disclose or omitted information about Neurontin's lack of

12

efficacy and its side effects. Both of these actions would have affected the prescribing habits of physicians.

*Id.* at 24, 25.

Dr. King's expert opinions, like the national marketing documents, are relevant to Defendants' intentional failure to perform adequate pharmacovigilance and their marketing Neurontin for off-label uses without consideration of the risks of depression and suicidality in the off-label user population. Dr. King's opinion should be admitted for the same reasons as articulated above for the national marketing documents. Plaintiff requires Dr. King's opinion to prove Defendants' negligence, breach of duty and their intentional and reckless disregard for the health and safety of Neurontin off-label users, because Defendants made a conscious decision not to perform the required pharmacovigilance for the off-label uses. Dr. King's opinion provides evidence of Defendants' elaborate plan, motive and opportunity, and its probative value substantially outweighs any potential for unfair prejudice to Defendants.

## POINT V

### EVIDENCE FROM THE FRANKLIN LITIGATION IS RELEVANT TO DEFENDANTS' DUTY OF CARE AND SERVE TO PROVIDE NOTICE THAT DEFENDANTS WERE WELL AWARE THAT NEURONTIN WAS BEING UTILIZED FOR OFF-LABEL POPULATIONS

Similar to the national marketing documents, evidence from the *Franklin* litigation will be utilized by Plaintiff to demonstrate that Defendants breached their duty of care and notice. As described in detail above, the manufacturer's <u>knowledge</u> of off-label use with its drug is inextricably intertwined with a manufacturer's duty to disclose material facts about risks with the drug. While off-label prescribing by physicians is not itself improper, a manufacturer with knowledge of both extensive off-label use and material facts about risks inherent with taking the drug (e.g., depression and suicide), has a duty to take action. As explained in depth above,

13

Defendants were on notice both of the risks of depression and of the substantial off-label use of Neurontin. Defendants' national marketing documents are probative of Defendants' negligence.

Defendants point to Plaintiff's designation of a statement by Franklin in which he quotes a statement made by Mr. Ford, a Sales Director of the Northeast Customer Business Unit instructing other Defendant employees to utilize various marketing techniques to promote Neurontin. Defs.' Mem., ECF Doc. # 1913 at 10. Pursuant to Fed. R. Evid. 801.5, Plaintiff will use the statement not to prove the truth of the matter asserted as suggested by Defendants, but for the fact that Defendants had notice or knowledge that the drug was to be used off-label and thus, combined with their knowledge of the inherent risks of taking the drug, Defendants had a duty to perform adequate pharmacovigilance. *See United States v. Emmons,* 24 F.3d 1210, 1216-17 (10th Cir. 1994) (a map found in defendant's home demonstrated that he had knowledge of where marijuana plants were situated on the property he owned).

Moreover, the statement in question by Defendants' agent Mr. Ford that "I don't want to hear that safety crap either, have you tried Neurontin, every one of you should take one just to see there is nothing, its just a great drug," is sought to be admitted not for the truth of the matter asserted, but to demonstrate that Defendants had notice that Neurontin was not safe for the off-label uses. *See Worsham v. A.H. Robins Co.,* 734 F.2d 676, 687 (11th Cir. 1984) (complaint letters were admissible because were not admitted to demonstrate that the produce had caused the injury but that defendants had notice that there product was potentially dangerous). That Defendants alleged that Mr. Franklin later made a contrary statement does not go to the admissibility of the statement but rather goes to the weight of the evidence to be attached by a finder of fact. Further, the statement is a prior inconsistent statement in accordance with Fed. R. Evid. 801.6[3], because Defendants claim to be unaware that there were any safety concerns

14

regarding Neurontin, Defs.' Mem., ECF Doc. # 1913 at 6, whereas the statement by their agent, Mr. Ford, clearly demonstrates that some within the corporation were aware of "safety crap" and had concerns.

Plaintiff requires the documents and testimony, etc., from the *Franklin* litigation to demonstrates Defendants' negligence, breach of duty and their intentional and reckless disregard for the health and safety of Neurontin off-label users because they made a conscious decision not to perform the required pharmacovigilance for the off-label uses. These documents and testimony will show that Defendants were well aware that there were safety concerns for the use of Neurontin to the off-label population and provide evidence of Defendants' reckless indifference in their breach of their duty of care for which the probative value substantially outweighs any potential for unfair prejudice to Defendants.

## POINT VI

### EVIDENCE OF OTHER LAWSUITS DEMONSTRATES THAT EVEN THOUGH DEFENDANTS HAD AMPLE NOTICE OF SAFETY CONCERNS WITH NEURONTIN, THEY FAILED TO TAKE ADEQUATE MEASURE TO PERFORM THE NECESSARY PHARMACOVIGILANCE, PROVIDE THE OFF-LABEL USE POPULATION WITH WARNINGS REGARDING THE RISKS OF SUICIDALITY AND INSTEAD CONTINUED TO <u>PERPETUATE THE BREACH OF THEIR DUTY OF CARE</u>

The cases to which Defendants cite in regard to support the exclusion of other lawsuits, are inapposite and do not apply in this case — they reference instances where the facts and circumstances of the lawsuits are not related to the case at hand or improperly based on prior unrelated lawsuits. In direct contrast, in this situation, the lawsuits in question all emanate from the same breach of Defendants' duty of care.

Moreover, Defendants' negligence in each case flows from the same facts and circumstances in regard to the issue of Defendants' breach of care. The fact that Defendants

received additional knowledge from the filing of lawsuits that there were safety concerns and instead chose to sit on their hands rather than perform the required pharamacovigilance is further evidence of their reckless disregard for the safety of the off-label population.  It was the FDA who performed their meta-analyses and mandated a new 2009 Neurontin label which provided off-label users with the information concerning the increased risk for suicide and that users should be monitored.  Other lawsuits provide evidence of Defendants' reckless indifference in their breach of their duty of care for which the probative value substantially outweighs any potential for unfair prejudice to Defendants.

### POINT VII

### DEFENDANTS' BREACH OF THEIR DUTY OF CARE AND THEIR RECKLESS INDIFFERENCE TO THE SAFETY OF OFF-LABEL USERS OF NEURONTIN AS DEMONSTRATED BY THE NATIONAL MARKETING DOCUMENTS AND TESTIMONY, ETC., ARE PROPERLY EVIDENCE FOR THE ISSUE OF PUNITIVE DAMAGES

Once again, Defendants are citing to case law which is inapposite and does not apply in this case — they reference instances where the facts and circumstances of the lawsuits are not related to the case at hand or  improperly based on prior unrelated lawsuits.  In direct contrast, in this situation, the other claims and lawsuits in question all emanate from the same breach of Defendants' duty of care and will be utilized to demonstrate notice — not punishment. Moreover, as noted in detail above, what is perfectly clear, is that Defendants were negligent and reckless in knowingly not performing adequate pharmacovigilance to ascertain whether the drug was safe for the off-label uses by the population for which they were promoting the drug off-label, and their breach, which is demonstrated by the national marketing documents, harmed and caused the death of Susan Bulger.

Pursuant to Mass. Gen. Laws ch. 229 §.2, "a plaintiff in a wrongful death action may recover 'punitive damages in an amount of not less than five thousand dollars in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant." The Supreme Judicial Court of Massachusetts has defined willful, wanton or reckless conduct to be 'intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another.'" *O'Neil v. Electrolux Home Prods*, 2008 U.S. Dist. LEXIS 39998 at *23 (D. Mass. May 14, 2008) (citing to *Manning v. Nobile,* 411 Mass. 382, 387-388 (1991)) . The highest state court in Massachusetts, in regard to what it defines as gross negligence in comparison with regular negligence has stated:

> substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence.

*Id.* (citing to *Altman v. Aronson,* 231 Mass. 588, 591-92 (1919)

Plaintiff requires the national marketing documents to demonstrate that Defendants were malicious, willful, wanton or reckless when they knowingly disregarded the safety of Susan Bulger, an off-label user, to risks, **about which Defendants were aware but did not warn,** and thereby intentionally breached their duty of care in promoting Neurontin for such an off-label use rather than performing pharmacovigilance. Defendants' intentional and reckless conduct is intertwined and directly related, and not independent, with their breach of their duty of care for

17

which Plaintiff claims that Defendants are liable for the injuries and death sustained by Susan Bulger in this case. Plaintiff is using the national marketing documents or other litigations as evidence to demonstrate that Defendants had knowledge of the risks of increased suicidality and that, instead of performing the pharmacovigilance required, intentionally breached their duty of care by sitting on their hands and not warning Susan Bulger, not any non-party as suggested by Defendants, Defs. Mem., ECF Doc. # 1913 at 16, and her prescribers of such risks. This is the conduct that is reprehensible and for which punitive damages should be considered.

## CONCLUSION

Plaintiff respectfully requests that this Court deny Defendants' Motion *in Limine* to exclude evidence of marketing or advertising materials and conduct, David Franklin and the *Franklin* litigation, and other claims or actions as these materials are relevant to Defendants' knowledge of the risks of Neurontin, duty of care, negligent and reckless disregard and punitive damages and their probative value greatly outweighs any alleged prejudice to Defendants by the admission of these documents into evidence.

Dated: July 8, 2009                                        Respectfully submitted,


By:     **/s/ W. Mark Lanier**
         W. Mark Lanier, Esquire
         THE LANIER LAW FIRM, P.L.L.C.
         126 East 56th Street, 6th Floor
         New York, NY  10022




By:     **/s/ Andrew G. Finkelstein**
         Andrew G. Finkelstein, Esquire

        Finkelstein & Partners, LLP
        1279 Route 300, P.O. Box 1111
        Newburgh, NY  12551

        A*ttorneys for Plaintiff David S. Egilman*

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on July 8, 2009.

         /s/ **Andrew G. Finkelstein**
         Andrew G. Finkelstein