UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : MDL Docket No. 1629 : : Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | : Judge Patti B. Saris : : Magistrate Judge Leo T. Sorokin |
| *Bulger v. Pfizer Inc, et al.* Case No. 1:07-cv-11426-PBS | : : : |

---

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE THE TESTIMONY OF ALL DEFENDANTS' EXPERT WITNESSES OTHER THAN DR. GIBBONS CONCERNING THE FDA ALERT AND RELATED FDA SUBJECTS OR, IN THE ALTERNATIVE, TO PRECLUDE THE TESTIMONY OF DR. GIBBONS**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") respectfully submit this memorandum in opposition to Plaintiff's motion *in limine* to preclude "the testimony of all defendants' expert witnesses other than Dr. Gibbons concerning the FDA Alert and related FDA subjects or, in the alternative, to preclude the testimony of Dr. Gibbons."

**INTRODUCTION**

Plaintiff's motion is yet another attempt to re-write history by asking the Court—for the fourth time[1]—to exclude any defense witness who provides testimony putting the FDA Alert into

---

[1] As Plaintiff notes, in addition to the instant motion, he has filed separate motions concerning Dr. Gibbons to (1) "strike him as an expert for lying;" (2) "strike his November 2008 report and manuscript [served pursuant to a Court-imposed deadline following a *joint request* for extension of deadlines in *Bulger*] for untimeliness and for discovery abuse;" and (3) "strike his testimony as unreliable under Fed. R. Evid. 702 and 703 and *Daubert*." (Pl. Mem. at 3-4.) Plaintiff's repeated attempts to exclude Dr. Gibbons, a learned biostatistician who—unlike any of Plaintiff's experts—has performed a pharmacoepidemiologic study analyzing the relationship between Neurontin (and the antiepileptic drugs ("AEDs") studied in the Alert) and suicidality illustrates Plaintiff's desperation to keep Dr. Gibbons' powerful and persuasive analysis from the jury. Just last week, Magistrate Sorokin denied two of Plaintiff's motions to strike Dr. Gibbons, finding that "plaintiff has not established a basis to warrant striking either Gibbons Report as a sanction," and denying Plaintiff's other motion to strike Dr. Gibbons' reports "for the same reason." (July 1, 2009 Order on Pending Discovery Motions [1929] at 1.)

proper context. In the most recent attack, Plaintiff argues that because Pfizer represented that Dr. Gibbons, the only defense biostatistician who has rendered an opinion on the Alert and FDA's subsequent analysis, was "uniquely qualified" to opine about the Alert and the statistical analyses underpinning it, that was necessarily an admission that none of Pfizer's other experts, including Drs. Arrowsmith, Ruggieri and Weiss Smith, are qualified to address the Alert in any respect whatsoever. But Plaintiff offers no evidence to support this argument. In fact, Plaintiff cites testimony from Pfizer's witnesses, suggesting that the witnesses are in fact qualified to comment generally on the FDA Alert.

Inexplicitly, Plaintiff also accuses Pfizer of making "misrepresentations" to the Court by arguing—contrary to his *Daubert* argument—that Drs. Arrowsmith, Ruggieri and Weiss Smith, were in fact capable of and qualified to address the Alert, obviating the need for a rebuttal witness. Thus, Plaintiff claims that Pfizer lied to the Court when it sought leave to name Dr. Gibbons as a rebuttal expert and that the Court should accordingly reconsider its Order allowing Dr. Gibbons and strike him as an expert witness. Plaintiff's melodramatic allegations notwithstanding, this argument not only glosses over the disparate areas of expertise of Pfizer's witnesses, but also ignores the differences between the opinions of the experts, which Plaintiff, again lacking any evidence, refers to as "almost identical" and hence, "cumulative." Dr. Gibbons, for instance, is the only defense expert who performed biostatistical calculations analyzing the data underlying the Alert and meta-analysis—one of the express bases on which Pfizer sought leave to name him as a rebuttal expert. On the other hand, Drs. Arrowsmith, Ruggieri and Weiss Smith, none of whom are biostatisticians, offer no such statistical calculations, but instead comment on the FDA Alert and subsequent events as it relates to their opinions in the instant case.

Finally, Plaintiff claims that he was "surprised" when Drs. Arrowsmith, Ruggieri and Weiss Smith offered opinions about the FDA Alert in November 2008. But that these experts authored reports in November 2008 containing supplemental opinions is not surprising, nor does it violate this Court's scheduling orders as Plaintiff claims. The reports were timely served on

November 10, 2008, in accordance with the Court-imposed deadline for service of expert reports in *Bulger v. Pfizer* pursuant to a *joint* request for extension of deadlines.

## ARGUMENT

I. **The Fact That Dr. Gibbons Is Uniquely Qualified To Address The Statistical Underpinnings Of The FDA Alert Does Not Mean That Pfizer's Other Experts Are Unqualified To Opine Generally On The Alert**

Plaintiff has offered no evidence whatsoever that Drs. Arrowsmith, Ruggieri and Weiss Smith are not qualified to opine on the FDA Alert. Instead, Plaintiff argues that because Pfizer previously stated that Dr. Gibbons was "uniquely qualified to opine on plaintiffs' experts' reliance on the Alert, as well as FDA's analysis and methodology and their scientific reliability" (Pl. Mem. at 2), none of Pfizer's other experts are qualified to opine about the FDA Alert in any capacity whatsoever. This argument strains logic.

Despite Plaintiff's suggestion, Pfizer has never even hinted that any of its experts are unqualified to generally address the Alert and how it may or may not impact their opinions in the *Bulger* case. Moreover, the fact that Dr. Gibbons—a biostatistician with experience performing complex mathematical calculations—is uniquely qualified to opine about the statistical analyses underlying the Alert does not mean that Drs. Arrowsmith, Ruggieri and Weiss Smith are not qualified to opine about other aspects of the Alert.

Not only does Plaintiff offer nothing other than flawed logic to support his *Daubert* argument, but the deposition testimony cited by Plaintiff unequivocally demonstrates that these experts are in fact qualified to generally address the Alert. (*See* Pl. Mem. at 4-9.) This testimony is confirmed by a review of the experts' respective credentials and experience. While none of them are biostatisticians, capable of performing odds ratio and risk difference calculations to scrutinize the FDA Alert and meta-analysis, each is qualified to give the opinions he or she provided:

- Dr. Arrowsmith is board-certified physician specializing in internal medicine. She has eleven years of experience with the FDA, previously serving as a Medical Review Officer in two different divisions at FDA. In this capacity, she

participated in various FDA epidemiologic investigations. (*See* Exh. A, Supplemental Report of Dr. Janet Arrowsmith-Lowe, at 1.)

- Dr. Ruggieri is an M.D. and epidemiologist with a Masters in Public Health. Over the past 20 years, he has gained substantial clinical, computational, pharmacovigilance and pharmacoepidemiology experience. (*See* Exh. B, Supplemental Report of Dr. Alexander Ruggieri, at 1-2.)

- Dr. Weiss Smith is a Professor in the School of Pharmacy and Epidemiology and Preventative Medicine, School of Medicine at the University of Maryland. She is also currently serving as a visiting scientist at the National Institutes of Health. As an epidemiologist, she has served as a voting member on a number of advisory committees where epidemiologic expertise was needed. As she has previously testified, however, unlike Dr. Gibbons, she is not a biostatistician. (*See* Exh. C, Weiss Smith Dep., at 63.)

Because Drs. Arrowsmith, Ruggieri and Weiss Smith are qualified to opine about the FDA Alert as it relates to their opinions in the instant case, Plaintiff's Rule 702 challenge should be rejected.

## II. Pfizer Made No Misrepresentations To The Court When It Sought Leave To Name Dr. Gibbons As A Rebuttal Witness

Plaintiff has not pointed, and cannot point, to any statement by Pfizer regarding Drs. Arrowsmith, Ruggieri and Weiss Smith's qualifications to address the FDA Alert that would make Pfizer's representation that Dr. Gibbons, as a biostatistician with experience analyzing prior FDA meta-analyses, was "uniquely qualified" a "misrepresentation." Instead, Pfizer argued in its request for leave that it was entitled to identify a rebuttal expert to counter new and unforeseen testimony—namely Plaintiff's experts' reliance on the newly released FDA Alert. Pfizer also noted that it should be entitled to name a rebuttal expert capable of analyzing the data underlying the FDA Alert (which at that time had not yet been released). It was Pfizer's right under the Federal Rules to choose the most qualified expert to opine about this new testimony (offered after the applicable deadlines) and Pfizer chose—with the Court's blessing—Dr. Gibbons.

Not only has Plaintiff failed to identify any "misrepresentation," but his argument ignores the different areas of expertise of Plaintiff's experts and the very facts that make Dr. Gibbons

uniquely qualified. As Pfizer noted in its initial motion for leave to name a rebuttal expert, Dr. Gibbons is uniquely qualified to opine on the FDA Alert and data underlying it because:

> He has a Ph.D. in biostatics, has taught biostatics for the past twenty-seven years, and has authored numerous peer-reviewed publications in the field of biostatistics. Not only is he a learned biostatistician, but he is also an expert in psychometrics, or the quantification of behavioral and psychiatric characteristics, and has analyzed and quantified suicide events in the context of FDA's review of antidepressant medications for risk of suicide. Indeed, Dr. Gibbons served on the FDA Advisory Committee that considered suicide risk with antidepressant medications.

(Defs.' Mem. [1218] at 10.) None of Pfizer's other experts possess the same qualifications in biostatistics and none have offered biostatistical calculations. Nor have they provided testimony responding to Plaintiff's statistical expert, Dr. Greenland. Instead, they offer opinions regarding how the FDA Alert and subsequent events further support their opinions in the *Bulger* case.

In sum, Plaintiff has offered no evidence that Pfizer made any "misrepresentations" about its experts.

### III.  The Opinions of Drs. Arrowsmith, Ruggieri, And Weiss Smith Are Not Cumulative

In yet another attempt to preclude testimony regarding the FDA Alert, Plaintiff claims that the testimony of Drs. Arrowsmith, Ruggieri, and Weiss Smith is "almost identical" to Dr. Gibbons' opinions, and hence cumulative. (Pl. Mem. at 3.) The experts' November reports are far from "identical" to Dr. Gibbons' reports. Most importantly, Drs. Arrowsmith, Ruggieri, and Weiss Smith do not offer biostatistical calculations, including, for instance, odds ratio and risk difference calculations for Neurontin and other AEDs.

The experts' reports differ in other ways as well. For instance, while Dr. Arrowsmith commented generally on FDA's methodology in her November 2008 report, she performed no mathematical calculations and focused on the issue of warnings from the perspective of a clinician in the field—something that Dr. Gibbons, as a non-medical doctor, did not do. Dr. Arrowsmith, unlike Dr. Gibbons, also commented on Dr. Blume's declaration—submitted by Plaintiff well after the general causation deadline and in the middle of the *Daubert* briefing

process. Dr. Ruggeri commented generally on meta-analysis as a methodology and, unlike Dr. Gibbons, responded to Plaintiff's experts' suggestion that Pfizer somehow missed a "safety signal" and should have included additional warnings in Neurontin's label. He also responded to the late-filed declarations of Dr. Blume and of Mr. Keith Altman, an expert, fact witness, and lawyer for Plaintiff. Finally, Dr. Weiss Smith commented on the flaws in the FDA's analysis, and in the methodologies of Dr. Blume and Mr. Altman, but as a non-biostatistician, did not perform any odds ratio or similar calculations. Accordingly, Plaintiff cannot support his contention that the opinions of Drs. Arrowsmith, Ruggieri, and Weiss Smith about the FDA Alert are "nearly identical" to Dr. Gibbons' opinions and thus "cumulative."

IV.  **The Expert Reports Of Drs. Arrowsmith, Ruggieri, And Weiss Smith Were Timely**

In their final attempt to exclude the opinions of Drs. Arrowsmith, Ruggieri and Weiss Smith, Plaintiff argues that their November 2008 reports are untimely. Conveniently missing from Plaintiff's motion are the deadlines applicable to expert reports in the instant case. Pursuant to Discovery Order No. 26 [1337], Plaintiff's expert reports in *Bulger* were due on August 7, 2008. The parties then filed a joint request for extension of the deadlines [1434], which Judge Sorokin granted on September 17, 2008, extending *inter alia*, the deadlines for service of Defendants' expert disclosures to November 10, 2008. The supplemental reports of Drs. Arrowsmith, Ruggieri and Weiss Smith were served on November 10, 2008, in accordance with the Court's order, which Plaintiff jointly sought. Thus, Plaintiff's claim that he was "surprised" (Pl. Mem. at 3), when he received supplemental reports from Defendants' experts setting forth additional grounds supporting their opinions in the instant case lacks merit.

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion should be denied.

Dated: July 8, 2009

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
  Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

-and-

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
  William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

-and-

SHOOK, HARDY & BACON L.L.P.

By: /s/ Scott W. Sayler
  Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel: (816) 474-6550

-and-

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
    David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 8, 2009.

/s/ David B. Chaffin
David B. Chaffin