UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br>Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO: | |
| *Bulger v. Pfizer Inc., et al.*<br>Case No. 1:07-cv-11426-PBS | |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE EVIDENCE THAT ANY DRUG OTHER THAN NEURONTIN CAUSED OR WAS ASSOCIATED WITH SUSAN BULGER'S SUICIDE

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") hereby oppose Plaintiff's motion *in limine* to preclude evidence that any drug other than Neurontin caused or was associated with Susan Bulger's suicide and request that the Court deny the motion.

### PRELIMINARY STATEMENT

This Court should deny Plaintiff's sweeping request to exclude at trial any "testimony, evidence, comments, references to or inferences that . . . Susan Bulger's ingestion of medications and drugs other than Neurontin caused or was associated with or contributed to her suicide." (Pl.'s Mem. at 7.) Evidence about Mrs. Bulger's use, misuse, and abuse of various drugs is critically relevant to the issue of specific causation. It is the subject of reliable testimony by Pfizer's experts and a proper and necessary area of examination of Plaintiff's experts.

The cherry-picked expert testimony on which Plaintiff relies does not support the broad exclusion he seeks. That Pfizer's experts have not subscribed to Plaintiff's theory that Neurontin or other medications can cause suicide does not render irrelevant, unreliable, or unduly prejudicial those experts' testimony about, and other evidence of, Mrs. Bulger's history of use and abuse of prescription and illegal drugs. Whether and how such use and abuse may have affected her mental and physical health and wellbeing, increased her risk for suicidal behavior,

and, ultimately, caused her suicide, are all critical issues of fact that Pfizer must be permitted to present to the jury. The Court should also allow Pfizer to explore and demonstrate inconsistencies in Plaintiff's causation experts' testimony and opinions with respect to other drugs Mrs. Bulger was prescribed or was taking. Plaintiff will have ample opportunity to address such evidence through his own experts and through cross-examination of Pfizer's experts.

## ARGUMENT

### I. PFIZER MUST BE PERMITTED TO PRESENT EVIDENCE ABOUT MRS. BULGER'S USE OF OTHER DRUGS ON THE ISSUE OF SPECIFIC CAUSATION

Evidence of and expert testimony about Mrs. Bulger's use of prescription and illegal drugs are central to the key issue of specific causation. For example, as Plaintiff's own expert reports confirm, Mrs. Bulger's history of polysubstance abuse and addiction was one of a number of suicide risk factors in her life. (*See, e.g.*, Exh. A, Maris Report, at 8, 26, 27; Exh. B, Kruszewski Report, at 8 & Exhibit O.) Pfizer's specific causation experts, Drs. Douglas Jacobs and Anthony Rothschild, have identified Mrs. Bulger's long and complicated psychiatric and substance abuse history, and noncompliance with substance abuse treatment, as primary suicide risk factors, and have documented that her "anxiety over access to narcotics" was a stressor at the time of her 1993 massive intentional overdose of antidepressants and a "repeated issue[] . . . present at the time of [her] August 4, 2004 suicide." (Exh. C, Jacobs Report, at 8-9, 10-11; *see also id.* at 13 (noting that the evidence "offers a reasonable probability that at the end of her life, Susan Bulger had run out of Methadone, had been using benzodiazepines and that the possibility of withdrawal would be likely"); *id.* at 17-18 (noting that in the month before Mrs. Bulger's death, "[t]here was much discussion [with Dr. Richard Goldman's office] about methadone; she was concerned about whether or not she was going to have enough"); Exh. D, Rothschild Report, at 10-14, 20-21, 28.) Dr. Rothschild has opined, for example, that it is

> reasonable to conclude that Susan Bulger was withdrawing from opiates at the time of her suicide on August 4, 2004. She had been prescribed both Oxycontin and Methadone by Dr. Goldman and should not have been out of either one of these medications at the time of her suicide. However, Ronald Bulger, Sr. did not

2

have either Oxycontin or Methadone to turn over to the police after Ms. Bulger's suicide. Ms. Bulger had either been using more Oxycontin and Methadone than she was supposed to have been taking or she and/or her husband had been selling the medications. In either case, it is likely that she did not have a sufficient supply of Oxycontin and Methadone and was likely experiencing drug withdrawal.

(Rothschild Report at 20-21.)

There is also evidence that Mrs. Bulger was once again using illegal drugs, namely cocaine, at the time of her death. (*See* Jacobs Report at 18, 27; Rothschild Report at 14.) Indeed, as both experts have noted, "Ron Bulger told the police on the evening of her suicide that his first thought when Susan Bulger was not in her room was that she 'was off on a bender.'" (Jacobs Report at 18; Rothschild Report at 14.) Although Plaintiff's expert, Dr. Kruszewski, found evidence that Mrs. Bulger may have been buying and using cocaine in the months before her death "at best ambiguous and confusing" (2/19/09 Kruszewski Decl. [1670] at 29-32), his own report indicates that if there were reliable evidence of "recent re-utilization of illicit [drugs]," it may "account [for] or explain Mrs. Bulger's precipitous decision to commit suicide." (Kruszewski Report at 11.) Dr. Kruszewski's observation confirms the significance of recently discovered and disclosed evidence of admissions by Mr. Bulger that Mrs. Bulger was using crack cocaine the day before her suicide and that the couple were arguing about or over drugs the night before and day of her suicide.[1]

In addition, the opinion of Plaintiff's expert, Dr. Maris, includes assumptions made about "suicide protective factors." (Maris Report at 29.) For example, he assumes that Mrs. Bulger's depression was being treated by medication. Evidence that that Mrs. Bulger was not taking the antidepressant Effexor as prescribed by Dr. Goldman at the time of her death (*see* Rothschild Report at 20) undermines the foundation of Dr. Maris's opinions. As Dr. Rothschild has opined, "[n]ot taking the Effexor as prescribed could have caused a relapse of Ms. Bulger's depression

---

[1] Pfizer also incorporates herein by reference its Opposition to Plaintiff's Motion *In Limine* to Preclude Any Mention by Defendants at Trial of Bad Acts of Plaintiff's Decedent and Her Family and the Medical History of Plaintiff's Decedent's Family.

which would have increased her risk for suicide." (*Id.*; *see also* Jacobs Report at 17 (noting that Dr. Goldman "testified that when Susan Bulger ran out of Effexor she 'felt lousy'").)

Evidence about Mrs. Bulger's use, misuse, or abuse of other drugs during the time period before her death is thus highly relevant to the following, among other, disputed issues of fact that bear directly on specific causation and the reliability of Plaintiff's experts' opinions:

- whether Mrs. Bulger was struggling with addiction to one or more prescription or illegal drugs at the time of her suicide and whether such addiction caused or contributed to her suicide;

- whether Mrs. Bulger was experiencing withdrawal from one or more prescription or illegal drugs at the time of her suicide and whether the withdrawal caused or contributed to her suicide;

- whether Mrs. Bulger's failure to take certain medicines as prescribed, including antidepressants, caused or contributed to her suicide; and

- whether Mrs. Bulger's failure to take certain medicines as prescribed supports a finding that she failed to take Neurontin as prescribed.

Plaintiff's motion provides no basis for finding that evidence and expert testimony about Mrs. Bulger's use of other drugs is irrelevant to, or unreliable or unduly prejudicial on, any of the foregoing issues. Here, as in *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248 (1st Cir. 1998), this evidence is critical to "scientific explanation[s] directly pertinent to the central issue in the case, namely, [specific causation]." *Id.* at 253 (vacating jury verdict and ordering new trial, holding district court erred in barring defendant from offering expert testimony of an alternative cause of plaintiff's pelvic inflammatory disease and infertility). Where, as here, evidence is significantly probative on a central issue in dispute, the risk of prejudice cannot outweigh the relevance of the evidence. In any event, as in *Baker*, the risk of prejudice or confusion of the jury is de minimis because Plaintiff's counsel will be able to cross-examine Defendants' experts on these issues. *See id.* at 254. Plaintiff's motion should, therefore, be denied to the extent it would preclude Pfizer from introducing such evidence.

4

II. **PFIZER SHOULD BE ALLOWED TO ADDRESS INCONSISTENCIES IN PLAINTIFF'S EXPERTS' OPINIONS WITH RESPECT TO OTHER DRUGS**

Pfizer should also be permitted to present evidence about other drugs that Mrs. Bulger was taking during the relevant time period to address inconsistencies, biases, and other methodological failings in Plaintiff's experts' causation opinions. It is Plaintiff, not Pfizer, who bears the burden of proving both general and specific causation. And it is Plaintiff, not Pfizer, who contends that Neurontin and other antiepileptic drugs ("AEDs") are GABAergic, that this increases the risk of suicide, and that there should be classwide treatment of AEDs with respect to this alleged increased risk. Plaintiff cannot, therefore, exclude evidence of, and questioning of *Plaintiff's experts* regarding their failure to exclude alternative causes implicated by their opinions, merely because Pfizer's experts do not embrace Plaintiff's theory of general causation or proposed mechanism of action.

For the same reason, Pfizer should be allowed to impeach Plaintiff's experts' testimony about their opinions and methodologies by exploring their own prior testimony in other cases that other drugs that Mrs. Bulger was taking can and did cause suicide. For example, in *Giles v. Wyeth*, 500 F. Supp. 2d 1048 (S.D. Ill. 2007), Dr. Maris opined that the antidepressant Effexor was the "scale-tipper" and "just-noticeable difference maker" for the decedent's suicide. *Id.* at 1062. Yet when asked at his deposition in this case to explain how he ruled out *Mrs. Bulger's* use of Effexor as the cause of her suicide, he was completely unable to reconcile the two opinions and could only disavow his opinion in *Giles* that Effexor caused the decedent's suicide, testifying that the jury there rejected it as "wrong." (Exh. E, Maris Dep., at 913:16-918:4.) Pfizer should be permitted to cross-examine Dr. Maris about the inconsistency of his opinion in this case with that in *Giles* to further establish the unreliable, litigation-driven nature of his causation opinions.

5

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that the Court deny Plaintiff's motion to exclude evidence that any drug other than Neurontin caused or was associated with Susan Bulger's suicide.

Dated: July 8, 2009

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

-and-

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
    William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

-and-

SHOOK, HARDY & BACON L.L.P.

By: /s/ Scott W. Sayler
    Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel: (816) 474-6550

-and-

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
      David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 8, 2009.

/s/ David B. Chaffin
David B. Chaffin