UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
:
In re:   NEURONTIN MARKETING,         :   MDL Docket No. 1629
        SALES PRACTICES AND         :
        PRODUCTS LIABILITY LITIGATION   :   Master File No. 04-10981
------------------------------------------------------------x
:
THIS DOCUMENT RELATES TO:            :   Judge Patti B. Saris
:
*Egilman v. Pfizer Inc.*, 1:07-cv-11426-PBS, and   :   Magistrate Judge Leo T. Sorokin
:
ALL PRODUCTS LIABILITY ACTIONS        :
:
------------------------------------------------------------x

### PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE'S
### ORDER DENYING MOTIONS TO STRIKE DR. ROBERT GIBBONS FOR CAUSE

      Products Liability Plaintiffs and Plaintiff David Egilman (hereinafter "Plaintiff"), as Administrator of the Estate of Susan Bulger, deceased, by and through their attorneys, The Lanier Law Firm, P.L.L.C. and Finkelstein & Partners, LLP, pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), hereby object to Magistrate Judge Leo T. Sorokin's July 1, 2009 Electronically Filed Order, Document #1929, denying their Motions to Strike Dr. Robert Gibbons for cause. Plaintiffs respectfully ask that the Court set aside Magistrate Judge Sorokin's Order and issue an Order striking Dr. Gibbons as a witness for cause.

### INTRODUCTION

      Plaintiffs are mindful of the Court's workload and that this Court will hear, beginning on July 13, 2009, our Motion in *Limine* to Strike Dr. Gibbons, pursuant to *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 469 (1993). ECF Doc. #'s 1875, 1876, and 1877-17. Plaintiffs incorporate herein their Motions to Strike Dr. Gibbons and accompanying

memoranda and exhibits, ECF Doc. #'s 1807, 1808, 1809-1 to 1809-17, and 1817, and the Plaintiffs' Reply to Defendants' Opposition, and the exhibits thereto. ECF Doc. #'s 1923 and 1924-1 to 1924-9.

For clarity, the reports referred to herein are Dr. Gibbons's pharmacoepidemiology studies. He performed one study, the 'bipolar' cohort, in September 2008, disclosed it in November 2008, changed it in March 2009, and disclosed the changes in May 2009. He performed another study, the 'gabapentin' cohort, dated November 5, 2008, disclosed it on November 12, 2008, changed it dated March 2009, and disclosed it April 2009.

## ARGUMENT

**I.    Magistrate Sorokin's Order Failed To Articulate The Standard Which He Applied In Arriving At His Determination, Failed To Consider The Untimeliness Of Gibbons's Several Reports And That Said Reports Went Beyond The Scope Of Judge Saris's Order, And Failed to Consider Gibbons's Non-Disclosure And Refusal To Be Deposed On Expert Work Not Disclosed Until June 2009**

A district court can revise an order when a timely objection has been filed, in accordance with Fed. R. Civ. P. 72, and it has been shown that the magistrate's order is "clearly erroneous or contrary to law." *See Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1,4 (1st Cir. 1999). Because Magistrate Sorokin's Order did not address the substance of Plaintiffs' motions but, rather, collectively dismissed multiple admitted violations by Dr. Gibbons and defense counsel with the summary statement that "Plaintiff has not established a basis to warrant striking either Gibbons Report as a sanction," Plaintiffs must object to the order and ask this Court to re-hear the motions. ECF Doc. # 1929.  In particular, Plaintiffs would show that:

   a. The Magistrate did not set out the standard by which he assessed the evidence supporting Plaintiffs' motion, nor is it possible to determine how he applied any standard that was employed.

b. The Magistrate did not articulate his application of the legal standard (abuse of discretion, plain error, or some other standard) by which he evaluated the evidence in support of the motions or the applicable law.

c. The Magistrate did not schedule the motions on a hearing agenda. Instead, in the course of a scheduled hearing on June 23, 2009 on the mechanics of how to remand all other cases in the MDL to their originating trial courts, he raised the Gibbons motions on his *sua sponte*, and at a time when none of Plaintiffs' counsel who were intimately involved in the Gibbons' discovery matters were present. Moreover, Magistrate Sorokin declined to reschedule the matter for a full hearing with both sides present and prepared.

d. The Magistrate did not address Plaintiffs' objection that Dr. Gibbons's reports were untimely and beyond this Court's orders limiting Dr. Gibbons's testimony to the FDA alert. Judge Saris, speaking from the bench in hearings on July 6 and July 8, 2009, expressed concern that there were no Court orders limiting Dr. Gibbons' discovery dates or setting a filing date for a *Daubert* motion and also that the parties neglected to bring this fact to the Court's attention. However, her concern was echoed by Plaintiffs and formed a basis for their underlying motions which the Magistrate did not adequately address.

Judge Saris expressly limited Dr. Gibbons to the FDA Safety Alert twice: (1) On April 30, 2008, she ordered that she would allow a rebuttal expert but "will still permit a rebuttal expert involving only the FDA alert…" and, (2) from the bench during the *Daubert* hearing, in which she ordered:

> JUDGE SARIS:  Whatever, but with Dr. Gibbons, I gave permission for his report only with respect to the FDA alert.  The motion to strike the other portions was well-taken.
>
> MS. McGRODER:  He's going to talk about the FDA alert.
>
> JUDGE SARIS:  I didn't allow a general report, so the only opinion he's going to be allowed to give is with respect to the FDA alert.

Declaration of Andrew G. Finkelstein, Esq., Ex. A, at 292:18-293:1.

As was urged in the underlying motions, not only did Dr. Gibbons's pharmacoepidemiology reports violate Judge Saris's orders, but each time Plaintiffs attempted to complete discovery of Dr. Gibbons's pharmacoepidemiology opinions, he either changed them, added to them, or admitted that he had withheld his underlying work, rendering each deposition effort a total or partial waste of time.  The exhibits to the underlying motion detail these events.

Instead of Plaintiffs completing discovery by deposing Dr. Gibbons in February 2009, he withheld his Fortran computer program, his sensitivity analyses, and certain other underlying data that were not supplied until ten days *after* the deposition.  When his 'completing' deposition was resumed in March 2009, Dr. Gibbons admitted that he had changed his underlying statistical tables, had withheld the programs necessary to read a new 'Supermix' program, and other documents.  Afterward, instead of merely disclosing those items, he completely changed his two reports without leave of Court.  Dr. Gibbons changed his gabapentin report on March 19 but could not be deposed on it until he got back from Bali in late April, at which time it was learned that he also had changed his bipolar report on March 15 and not disclosed it at all.  That report was disclosed in May 2009 but the underlying work was withheld until June 2009 and, in either event, Dr. Gibbons has refused to be deposed on it.

In sum, each time Plaintiffs were perched to complete discovery of Dr. Gibbons and file a *Daubert* motion, he and the defense changed his reports, disclosed previously-withheld material, and forced Plaintiffs to start over.

In the middle of this, Plaintiffs submitted a *Daubert* motion to the Court to exclude the testimony of defense expert Weiss-Smith and were told from the Bench to not submit *Daubert* motions until pre-trial. On April 7 the Court ordered that motions in *limine* be filed on June 22, to which Plaintiffs complied by filing, *inter alia,* a *Daubert* motion for the exclusion of Dr. Gibbons' testimony. The *Daubert* motion to exclude Dr. Gibbons could have been scheduled by this Court earlier if Defendants had disclosed Dr. Gibbons under the existing Scheduling Order or complied with this Court's orders of April 30, 2008 and the Bench order during the June 2008 *Daubert* hearing, and if Defendants had complied with Rule 26.

The Magistrate's brief ruling did not address or resolve this dispute and, respectfully, Plaintiffs must ask this Court to address it.

**II.     Magistrate Sorokin Failed To Consider The Egregious Conduct Of Defendants' In Their Persistent Withholding Of Discovery And Other Discovery Violations In His Determination.**

While it is impossible to tell from his order what the Magistrate considered or what legal standard he applied, it appears that he accepted, without question, Defendants' argument that at the end of the day, Plaintiffs had gotten all the discovery from Dr. Gibbons that they had sought so there was no real harm. That is not the test to determine whether a witness who makes false statements and withholds discovery may nevertheless testify. The Magistrate entered the order despite the defense having withheld: Dr. Gibbons's data bases for six months; his computer programs for several months after disclosure of his first reports in November 2008; Dr.

5

Gibbons's revised reports and his emails until after his depositions; and his sensitivity analyses until after his depositions, among other discovery violations.

Whether that is how the Magistrate formulated his decision or whether he decided on some other unstated basis, the facts are undisputed:

(1) Dr. Gibbons has refused to submit to deposition regarding the bipolar report dated March 15, 2009. That report was disclosed May 7, 2009, and defense counsel have refused to let him be deposed about it;

(2) Judge Sorokin was misled twice regarding Dr. Gibbons and twice entered orders based on the false information.

    a. Judge Sorokin quashed Dr. Hur's January 2009 deposition based on the false representation that Dr. Hur had no knowledge of Dr. Gibbons's gabapentin report when in fact Dr. Hur had written the programs for and done some data analysis on that report.

    b. On May 20 he ordered that Dr. Hur could be deposed but "accepted as true defendants' representation that all documents underlying Dr. Hur's methodology have already been produced to the plaintiffs." Dr. Hur admitted at the deposition that he had not disclosed the programs for the sensitivity analysis; defense counsel sent those by email on June 6, two weeks after Dr. Hur's deposition, but refused to let Dr. Gibbons be deposed on them.

(3) Neither the defense nor Dr. Gibbons sought leave of Court to change or disclose his gabapentin pharmacoepidemiology report of March 19, 2009 nor his bipolar pharmacoepidemiology report of March 15, 2009. Both reports were vastly different in substantive ways from the report submitted November 12, 2008. The November 8 report

was itself a violation of this Court's April 30, 2008 Electronic Order that limited Dr. Gibbons's testimony to rebuttal of the FDA Safety Alert and statistical analysis. None of those reports were timely under this Court's scheduling order and no leave of Court was sought or given to continually change and replace the reports each time Dr. Gibbons admitted in a deposition session that he had failed to address a substantive flaw or failed to disclose underlying data, as he did;

(4)     The defense and Dr. Gibbons made serious substantive false statements of fact that, combined with the on-going withholding of Dr. Gibbons' underlying scientific data, made it extraordinarily difficult to prepare for trial as to the gabapentin cohort report and impossible as to the bipolar cohort report. Dr.. Gibbons's misrepresentations included that (a) he had disclosed all of his underlying data when he knew that he had not; (b) that Dr. Hur had not done any work on the gabapentin report when in truth Dr. Hur had performed all the computer programming, a misrepresentation made successfully to induce the same Magistrate to quash Dr. Hur's deposition; and (c) that there were no emails with substantive information in them when in truth Dr. Gibbons had hundreds of pages of emails, some of which contained notes sent by defense counsel the night before his deposition, letters rejecting the bipolar cohort manuscript by a peer-reviewed journal, and spreadsheets of data sent by defense counsel that Dr. Gibbons used to formulate his statistical analysis of the FDA Safety Alert. These were not inconsequential misrepresentations.

**III.    Pursuant to Fed. R. Civ. P. Rule 37(c) (1), Due To Dr. Gibbons' Intentional Failure Provide Disclosure In A Timely Manner As Required By Rule 26(e), For His Misrepresentation to Magistrate Sorokin on May 20, 2009 That All Documentation Had Been Disclosed, And For His Provision of False Testimony, Dr. Gibbons's Expert Opinions And Testimony Should Be Excluded From This Litigation.**

Plaintiffs incorporate herein their Reply to Defendants' Opposition to their Motions to Strike Dr. Gibbons for Cause. ECF Doc. #'s 1923 and 1924-1 to 1924-9.  The Motions and the Reply implicate two of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 26 and Fed. R. Civ. P. 37.  Rule 26(e) provides that a party must supplement its disclosure if the disclosure is incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A).  With respect to experts, a party's duty to supplement information included in the report and given during the expert's deposition must be done by the time pretrial disclosures are due or as ordered by the Court.  Fed. R. Civ. P. 26(e)(2). In this case the Court ordered that all general causation expert witnesses were to have been identified, and reports disclosed on December 3, 2007, not November 2008 or March or May 2009. *See* Discovery Order No. 13, ECF Doc. # 801 at 3.  Dr. Gibbons did not comply with that schedule by filing his first report (apart from the FDA report) almost one year late, in November 2008, and by filing altered reports in April 2009 and May 2009.  He also did not timely disclose the underlying data, as set out in the Motions and Reply and, briefly, hereinafter.

Fed. R. Civ. P. 37 (c )(1) provides that if a party's fails to provide information as required by Rule 26 (e) that party is precluded from using that information or witness at trial.  *Ortiz-Lopez v. Sociedad Espanola De Auxilio Mutuo*, 248 F.3d 29, 33 (1st Cir. 2001).  This is a self-executing rule, not one to be applied based on judicial discretion, by a balancing of interests, or by any other subjective legal standard:  If information is withheld, it is not allowed at trial. *See, e.g., Pena-Crespo v. Commonwealth of Puerto Rico*, 408 F.3d 10, 13 (1st Cir. 2005).  Under Fed. R. Civ. P. 37(c)(1), a party who without substantial justification fails to disclose information required by Rule 26(a) is not permitted to use as evidence any witness or information not so disclosed**.** , unless such failure is harmless  *Lohnes v. Level 3 Communs., Inc.*, 272 F.3d 49, 60  (1st Cir. 2001).  According to the United States Court of Appeals for the First Circuit, Rule 37

8

(c)(1) "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion." *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998).

Because of Defendants' misrepresentation to Judge Sorokin on May 20, 2009 that all underlying documentation had already been disclosed, Dr. Hur did not produce at his deposition the sensitivity analyses of the bipolar report.

And, as to material that was eventually disclosed, none of it was disclosed in a timely manner. This includes:

– SAS files not included on the disk of Dr. Gibbons work that defense counsel disclosed in November 2008;

– the FORTRAN programs necessary to review Dr. Gibbons' analyses;

– The ASCII files necessary to read Dr. Gibbons' work product;

– SAS output files necessary to execute the programs;

– Supermix analyses and the output files for Supermix; and

–Sensitivity analyses; Dr. Gibbons testified on March 5 that he had conducted the sensitivity analysis before the February 3-4 deposition, which meant that above material had not been disclosed in a timely manner that would have enabled plaintiffs' counsel to use same in the deposition. Other sensitivity analyses were not disclosed until June 9, 2009, a month after the late disclosure of the bipolar report of March, 2009.

These failures to timely disclose and Dr. Gibbons's utterly false declaration to the Magistrate that Dr. Hur had no knowledge of the gabapentin report, when Dr. Hur had actually written the computer programs and had performed data analysis for that report had real-world and tangible consequences for Plaintiffs: By Defendants' getting Judge Sorokin to quash Dr.

Hur's deposition by use of his false declaration, in combination with not disclosing Dr. Hur's programs and Dr. Gibbons' Fortran programs, Plaintiffs were foreclosed from discovering and deposing Dr. Gibbons and Dr. Hur about (among other things) a programming error that misallocated some 10,000 patients in the gabapentin report alone. Plaintiffs cannot ask questions about that which has been concealed by false statements. Plaintiffs cannot depose a technical witness on the substance of his technical work when he withholds his technical data.

Some very good proof of this is that on February 3, 2009, Dr. Gibbons testified that he doesn't keep emails and that he and defense counsel did not send anything of significance to each other by email. Defense counsel McGroder, sitting next to him, didn't flinch.

As a consequence of this blatantly false testimony, Plaintiffs did not know, could not inquire into, and to this day have been unfairly deprived of asking Dr. Gibbons about the contents of communications that were in his emails, the existence of which first came to light in April 2009. (On April 23, 2009, Defendants sent approximately 1000 pages of Dr. Gibbons' emails and communications, the very thing he said did not exist). Accordingly, neither in the February nor in the March, 2009 deposition sessions could the Plaintiffs ask Dr. Gibbons about:

– the criticisms of Dr. Gibbons by other statisticians about his methods of calculating patient years, accounting for (or failing to account for) confounding factors, and procedural omissions in his reports;

– why Ms. McGroder had to explain to Dr. Gibbons, in e-mails, how to read the columns of patients in the excel spreadsheet she provided to him listing the numbers of patients in trials that Pfizer had sent to the FDA;

– notes sent to Dr. Gibbons the night before his deposition by Ms. McGroder, who was sitting next to him when he said there were no emails..

In fact, the very night before the deposition, Ms. McGroder sent Dr. Gibbons an email attaching pages of notes for Dr. Gibbons to review. However, Plaintiffs took Dr. Gibbons

testimony at its face value, believed that there were no communications of substance in the emails, and did not press him for the contents of something that he said did not exist.

## CONCLUSION

The Court will recall the very first encounter with Dr. Gibbons, which took place at the *Daubert* hearing in June 2008.  He began to testify about opinions and to refer to slides that were different than his pre-hearing reports, to which Plaintiffs objected.

>MR. LONDON:  Not one thing he said today was in his report.
>
>MS. McGRODER:  Well, your Honor –
>
>MR. LONDON:  Excuse me.  May I finish?  I know you like to -- everything he has said today he has come in and told you for the first time after reading the statistical review.  Nothing that was in the report you authorized him to write has been said by him today.  ***He has come in and given his spin to the FDA's numbers, and we're hearing it for the first time.***
>
>JUDGE SARIS:  Is that correct?
>
>***MS. McGRODER:  Well, your Honor, yes, it is  correct.***  They submitted the FDA statistical review to you as soon as it came out last week, and every single one of their experts who has been in here for the last day and a half has used that FDA statistical review, including these very odds ratio charts to support their opinions about causation in this case.  And so Dr. Gibbons got the review last week and conducted his analysis on it.  As I said, we'd be happy to submit a supplemental report, but we thought your Honors wanted to hear from the witness today what this meta-analysis is about.
>
>**JUDGE SARIS:  *It's a little unfair.  I can't expect them to cross-examine him.  They can't do it.  That's unfair.***

Finkelstein Decl., Ex. A, 315:2-25.

Neither Dr. Gibbons nor the Defendants learned from the second chance that the Court gave them to conduct expert preparation and discovery in consonance with the Federal Rules of Civil Procedure or the scheduling orders.  Apart from the serious question whether either report, the bipolar report or the gabapentin report, is legally relevant evidence in a case in which the

deceased was not bipolar and had few, if any, of the medical diagnoses Dr. Gibbons studied in his gabapentin report, the manner of gamesmanship in hiding the ball and changing the playing field during the game has no place in this litigation.

Accordingly, Plaintiffs object to the Order denying the Motions to Strike Dr. Gibbons for Cause and pray this Court reverse the Magistrate's Orders and enter an Order Striking Dr. Gibbons for cause.

Dated:  July 10 , 2009                           Respectfully submitted,

By:     **/s/ W. Mark Lanier**
W. Mark Lanier, Esquire
THE LANIER LAW FIRM, P.L.L.C.
126 East 56th Street, 6th Floor
New York, NY  10022

By:     **/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
1279 Route 300, P.O. Box 1111
Newburgh, NY  12551

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on  July 10, 2009.

Dated:  July 10, 2009

**/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein