UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| *Bulger v. Pfizer Inc., et al., Case No. 07-11426-PBS* | Magistrate Judge Leo T. Sorokin |

### DEFENDANTS' OBJECTIONS TO PLAINTIFF'S
### PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

Defendants, Pfizer Inc ("Pfizer") and Warner-Lambert Company LLC ("Warner-Lambert") (collectively, "Defendants"), by and through their undersigned counsel, hereby object to Plaintiff's proposed jury instructions and verdict form for the reasons stated below.  In addition to any objections stated below, Defendants reserve their right to contend at trial that certain instructions should not be given because the evidence admitted does not warrant submitting some or all of the issues to the jury and without waiver of their right to assert additional objections in light of the record developed at trial, rulings by this Court, or other subsequent developments.

### OBJECTIONS

1.      Defendants object to Plaintiff's Request to Charge No. 1 (Burden of Proof) only to the extent that Defendants' proposed instruction provides a fuller explanation of the "preponderance of the evidence" standard.  Defendants respectfully submit that their Proposed Instruction No. 9 will provide greater guidance to the jury.

2.      Defendants object to Plaintiff's Request to Charge No. 2 on the grounds that it purports to instruct the jury that Plaintiffs are proceeding in this action under "five independent theories of law."  Initially, by virtue of this Court's prior orders, only three causes of action remain in this action:  negligence, breach of implied warranty, and fraud by omission.  (*See*

6/1/09 Electronic Order; *see also* Tr. of Hr'g at 7, Mar. 31, 2009 (counsel for Plaintiff agreeing that his only remaining claims were for negligence, implied warranty, and fraud)).  With respect to Plaintiff's fraud claim, this Court dismissed "all fraud claims alleging affirmative misrepresentations or a suppression of information as a part of a national marketing campaign" and allowed only claims of misrepresentation by concealment of material information about the side effects of Neurontin.  (Mem. & Order [1790] at 29, 33, May 26, 2009.)

As a result, Plaintiff's remaining causes of action are not, as characterized by Plaintiff, "independent."  Each cause of action depends upon Defendants' alleged failure to provide adequate warnings with Neurontin.  To recover under any theory, Plaintiff will have to prove (1) that Neurontin can cause suicide (general causation);[1] (2) that there was reasonable evidence of an association between suicide and Neurontin prior to August 2004;[2] (3) that Mrs. Bulger's suicide resulted from Neurontin, as opposed to one or more of the many suicide risk factors from which she suffered (specific causation);[3] and (4) that an alleged inadequate warning in Neurontin's labeling proximately caused Mrs. Bulger's suicide (legal causation).[4]

It is well established that, in failure to warn cases such as this, breach of implied warranty

---

[1] *See* Mem. & Order [1775] at 6, May 5, 2009; *see also In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1171-72 (N.D. Cal. 2007); *In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 401-02 (S.D.N.Y. 2005); *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 830 (E.D. Tex. 2002); *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1224 (D. Colo. 1998).

[2] *See* 21 C.F.R. § 201.57(e) (2004); *see also Anderson v. Owens-Ill., Inc.*, 799 F.2d 1, 2 (1st Cir. 1986) (holding that "the duty to warn extends only to such dangers . . . or defects about which a manufacturer either actually knew or about which it reasonably should have known", based on the state of medical and scientific knowledge at the time); *Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909, 923 (Mass. 1998) (holding that a manufacturer will not be held liable "for failure to warn or provide instructions about risks that were not reasonably foreseeable at the time of sale or could not have been discovered by way of reasonable testing prior to marketing the product").

[3] *See In re Bextra*, 524 F. Supp. 2d at 1172; *In re Rezulin*, 369 F. Supp. 2d at 402; *In re Breast Implant Litig.*, 11 F. Supp. 2d at 1224.

[4] *Jorgensen v. Mass. Port Auth.*, 905 F.2d 515, 522-23 (1st Cir. 1990).

and negligence are co-extensive under Massachusetts law. *See Sprague v. Upjohn Co.*, No. 91-40035, 1995 WL 376934, at *3-4 (D. Mass. May 10, 1994) (finding that Massachusetts and First Circuit authority in drug product liability actions directed the court to treat breach of implied warranty and negligence claims "as a consolidated, single claim of negligent failure to warn"); *Kelley v. Eli Lilly & Co.*, 517 F. Supp. 2d 99, 110 (D.D.C. 2007) (same, applying Massachusetts law); *see also Hoffman v. Houghton Chem. Corp.*, 751 N.E.2d 848, 859 (Mass. 2001) (holding that theories of negligent failure to warn and failure to warn as a breach of warranty "are to be judged by the same standard:  the reasonableness of the defendant's actions in the circumstances").

Likewise, for purpose of instructing the jury on liability, Plaintiff's omission claim is also subsumed by his failure-to-warn claim.  It is well settled that an omission cannot be actionably misleading absent a duty to disclose.  *See, e.g.*, *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1202 (1st Cir. 1996).  The only duty to disclose implicated by a fraudulent omission or concealment claim here is the duty of a manufacturer to warn of a non-obvious risk associated with the normal use of its product about which the manufacturer knows or has reason to know – the same duty that underpins Plaintiff's negligent failure-to-warn claim.  Regardless of the theory asserted by Plaintiff, the manufacturer's duty is the same.  Although the Court did not dismiss Plaintiff's fraud claim on this ground, it recognized that courts have repeatedly found fraudulent concealment claims duplicative of failure-to-warn claims in actions just like this. (*See* Mem. & Order [1790] at 32-33, May 26, 2009.)

As observed by this Court, Plaintiff's claim for fraudulent omission differs from his failure-to-warn claim in that it has the ***additional*** element of scienter.  In other words, Plaintiff would have to prove everything that he must to establish his failure to warn; but he would have to establish the additional element that Pfizer acted not only negligently, but with intent. (*See* Mem. & Order [1790] at 31-32, May 26, 2009.)  In short, there is no circumstance under which a jury could properly find Defendants not liable for negligent failure to warn but liable for

3

fraudulent concealment.  The additional element of scienter, would not make Pfizer *more* liable for compensatory damages.  Instead, it would be relevant, if at all, only on the issue of punitive damages.

Plaintiff's proposal that the jury be instructed five different ways on what is essentially the same claim – failure to warn – will unnecessarily confuse the jury and could lead to inconsistent results.  As both courts and commentators have stated, "two or more factually identical failure-to-warn claims should not be submitted to the trier of fact in the same case under different doctrinal labels."   Restatement (Third) of Torts § 2 cmt. n (1998); *see also* Massachusetts Superior Court Civil Practice Jury Instructions § 11.1 (2d ed. 2008) (Introduction, Judicial Commentary) ("The trial judge should always consider whether it is necessary to charge on both negligence and breach of warranty theories. . . .  Charging on both theories creates the possibility of inconsistent verdicts.") (citing *Hayes v. Ariens Co.*, 462 N.E.2d 273, 275-76 (Mass. 1984) (reversing and remanding for new trial where jury found defendant negligent but found for defendant on breach of implied warranty claim)).

For this reason, Defendants further object to Plaintiff's Request to Charge Nos. 5 (Negligence), 8 (Duty to Warn), 11 (Breach of warranty), 12 (Elements of Breach of Warranty), 14 (Defect), 15 (Intentional Misrepresentation), 16 (Negligent Misrepresentation), and 17 (Fraudulent Concealment of Material Facts).  Defendants also object to Questions Nos. 3 through 14 of Plaintiff's proposed verdict form because they ask the jury to decide the questions of whether Defendants provided adequate warnings with Neurontin and whether any alleged failure to provide adequate warnings proximately caused Susan Bulger's death.  The jury should not be asked to make the same factual determinations under several different rubrics.

Defendant also objects to Plaintiff's Request to Charge No. 2 on the ground that it is argumentative, unbalanced in favor of Plaintiff, and fails to give a simple and concise description of both Plaintiff's and Defendants' contentions in this lawsuit.  In contrast, Defendants' proposed introductory instruction (Proposed Instruction No. 1), gives a brief and balanced description of

the claims and defenses in this litigation, and leaves it to the attorneys to argue their clients' case.

Defendants further object to the description of off-label use in Plaintiff's Requested Charge No 2. Plaintiff's reference to off-label use in the instruction and statement that the use for which it was prescribed to Susan Bulger lacked FDA approval is clearly an attempt to interject the issue of off-label marketing in this litigation. For the reasons set forth in Defendants' Motion in Limine to Exclude Evidence of Marketing or Advertising Materials and Conduct, David Franklin and the Franklin Litigation, and Other Claims or Actions [1912] and Defendants' Motion in Limine to Exclude all Evidence of or References to Warner-Lambert Company LLC's Guilty Plea or Any Related Government Investigations or Agreements [1896], off-label marketing is not relevant to any issue in this litigation. This Court dismissed all fraud claims alleging either affirmative misrepresentations or concealment based upon any alleged national marketing campaign. (Mem. & Order [1790] at 29.) This Court has also repeatedly recognized that off-label promotion does not constitute fraud, much less the narrow fraud by omission claim that the Court allowed to proceed. (*See, e.g.*, Mem. & Order [1780] at 37-38, May 13, 2009; *see also In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 92 & n.6 (D. Mass 2007)). Here, as this Court has found, there is no evidence that Defendants made any affirmative misrepresentation of material fact regarding Neurontin to Mrs. Bulger's prescribing physicians, much less that those doctors were the target of, or relied on, any alleged off-label marketing. (Mem. & Order [1790] at 29, 33.)

The jury will certainly hear evidence of the indications for which Neurontin was approved, and that Neurontin was prescribed to Susan Bulger for an indication other than one of the FDA approved ones. Accordingly, the jury should be instructed that it is permissible for doctors to prescribe drugs for off-label uses, as in Defendants' Proposed Instruction No. 20. But off-label use should not be made the focus of the instructions by inclusion in the introductory instructions and any instruction should correctly reflect both the law and the limited relevance of off-label prescribing in this case.

5

3.      Defendants object to Plaintiff's Request to Charge No. 3 ("Negligence:  Violation of a criminal statute") and Plaintiff's Request to Charge No. 4 (Violation of Safety Standards) on the grounds that they are misleading and incorrect statement of the law for several reasons.  First, Plaintiff's Request No. 3 purports to instruct the jury on the doctrine of negligence per se, which is not recognized in Massachusetts.  *See Berish v. Bornstein*, 770 N.E.2d 961, 979 (Mass. 2002).  Second, Plaintiff's Proposed Instruction No. 3 is based upon Warner Lambert's guilty plea in May 2004 to two narrow and specific violations involving the marketing of Neurontin between April 1995 and August 1996, years before Mrs. Bulger was ever prescribed Neurontin.  For the reasons set forth in Defendants' Motion in Limine to Exclude all Evidence of or References to Warner-Lambert Company LLC's Guilty Plea or Any Related Government Investigations or Agreements [1896], the plea is wholly irrelevant to any issue in this litigation.[5]

Plaintiff's Request to Charge No. 4 purports to be based upon Massachusetts Superior Court Civil Practice Jury Instructions § 11.2.8; but adds additional materials that render the proposed instruction inaccurate.  First, the instructions refer to FDA regulations, but not the regulations that were in effect in 2004.  Second, the instruction misleadingly suggests to the jury that they should accept Plaintiff's interpretation of the regulations.

More importantly, in the context of this case, instructing a jury that they may consider a "violation" of a safety statute as evidence of negligence is inappropriate.  There has been no determination by the FDA that Defendants violated the Food Drug and Cosmetic Act ("FDCA") or any FDA regulation by not including a suicide warning on the Neurontin label in 2004 or earlier.  To the contrary, the FDA specifically considered data on suicide and did not require that

---

[5] Not only is the plea irrelevant, violation of FDA regulations prohibiting off-label marketing could not, in any event, support negligence per se, even if that theory was recognized in Massachusetts. *See Iacangelo v. Georgetown Univ.*, 595 F. Supp. 2d 87, 92 (D.D.C. 2009).  The fact that a drug may not be approved for a certain indication does not mean that it is unsafe for that indication or that its labeling is inadequate.  *Cf. id.* at 92 n.3; *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001) ("[T]he 'FDA itself recogniz[es] the value and propriety of off-label use[.]'") (citation omitted).

the Neurontin label include a suicide warning.  It is, therefore, incorrect to suggest to the jury that Defendants violated any statutes or regulations regarding the provision of adequate warnings or monitoring and reporting of adverse event data.

Likewise, it would not be productive to ask the jury to determine *whether* there was a violation of any relevant regulation.  To do so would simply interject another redundant instruction, creating the potential for jury confusion and inconsistency.   As discussed above, under any of the remaining causes of action in this case, the jury will be asked to determine whether the Neurontin label was adequate or whether the available scientific evidence required Defendants to warn of the risk of suicide or suicidal behavior.  The jury would have to answer the same question to determine whether there was a violation of FDA regulations.  For the reasons discussed above, the jury should not be asked to make the same factual determination under different theories.  For example, in *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549 (D.C. Cir. 1993), the court held that the jury should not have been instructed regarding negligence per se when the relevant standard established no more than a duty to use reasonable care.  Providing an additional instruction on the effect of compliance with the relevant regulation added nothing to what the jury was already being asked to determine under ordinary common law negligence principles.  *See id.* at 558; *accord Ridge v. Cessna Aircraft Co.*, 117 F.3d 126, 131 (4th Cir. 1997).

Defendants agree that it is appropriate to instruct the jury as to any relevant regulations and that the jury may consider such regulations in determining whether Defendants acted reasonably, but the relevant regulations are those in effect in 2004.[6]  Further, any instructions should be balanced.   The jury may consider Defendant's compliance with regulations as evidence that they were not negligent and that Neurontin's label was adequate.  *See Morgan v.*

---

[6] *See* Defendants' Motion in Limine to Exclude Evidence of Post-Incident Regulatory Actions, Labeling, and Patient Information Guides [1869].

*Lab. Corp. of Am.*, 844 N.E.2d 689, 695 (Mass. App. Ct. 2006). The jury is, therefore, entitled to consider the FDA's repeated approval of the Neurontin label as evidence that the label was adequate and the jury should be so instructed. (*See* Defendants' Proposed Instruction No. 21.)

4. Defendants object to Plaintiff's Request to Charge No. 5 (Negligence), No. 6 (Duty – Manufacturer), No. 7 (State of the Art), No. 8 (Duty to Warn), and No. 9 (Foreseeable User) on the grounds that they are too general to provide meaningful guidance to the jury in this case. In comparison, Defendants' Proposed Instruction No. 15 accurately instructs the jury on general concepts of negligence, but provides sufficient explanation to make them specifically relevant to this lawsuit.

Defendants further object to Plaintiff's statement of the heeding presumption (Request No. 8) as oversimplified and misleading. "'[H]eed' in this context means only that the learned intermediary would have incorporated the 'additional' risk into his decisional calculus. The burden remains on the plaintiff to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff." *Thomas v. Hoffman-LaRoche, Inc.,* 949 F.2d 806, 814 (5th Cir. 1992) (footnotes omitted); *see also Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1021 (10th Cir. 2001) (explaining that the prescribing physician only "heed[s]" warnings in the sense of considering them while deciding how to prescribe the product and whether or not to tell the patient about the risk and that it is unrealistic to presume physicians would "heed" any warning either in the sense of never using the product or that they would automatically tell every patient about every risk). The burden remains on the Plaintiff to demonstrate that the additional non-disclosed risk would have changed the treating physician's decision to prescribe the product for the plaintiff, and the jury should be so instructed. The jury should also be instructed that the heeding presumption can be rebutted and, if the evidence shows that Susan Bulger's physicians would have prescribed Neurontin for her even if the Plaintiff's preferred warnings had been given, the jury should find for the Defendants. *See Garside v. Osco Drug, Inc.*, 976 F.2d 77, 81 (1st Cir. 1992); *Kelley v.*

*Eli Lilly & Co.*, 517 F. Supp. 2d 99, 106 (D.D.C. 2007) (applying Massachusetts law). Accordingly, Defendants request that their Proposed Instruction No. 15 be given.

In addition, Plaintiff's proposed negligence instruction is deficient because it fails to instruct the jury on the learned intermediary doctrine (*see* Defendants' Proposed Instruction No. 16), the relevant time period at issue (*see* Defendants' Proposed Instruction No. 17), that a manufacturer is not required to make a product that is perfectly safe (*see* Defendants' Proposed Instruction No. 18), and that the jury may not infer negligence from the fact of injury alone (*see* Defendants' Proposed Instruction No. 19).

Defendants further object to Plaintiff's proposed State of the Art Instruction (No. 7) on the grounds that it fails to instruct the jury that Defendants' conduct must be judged in light of the medical and scientific evidence available at the relevant time.  *See Anderson v. Owens-Illinois, Inc.*, 799 F.2d 1, 2 (1st Cir. 1986).  Defendants' proposed instruction on failure to warn includes an accurate state of the art instruction.  (*See* Proposed Instruction No. 15 (text accompanying nn. 30 & 31).)

5.      Defendants object to Plaintiff's Request to Charge No. 10 (Proximate Cause) on the ground that it is too general to provide meaningful guidance to the jury in this case. Defendant's Proposed Instruction No. 23 accurately states the relevant legal principles in a way that will help the jury apply abstract legal concepts to the facts of this case.  In addition, the circumstances of this case require that the jury be instructed regarding Plaintiff's burden to prove both general and specific factual causation (as well as proximate cause) and Plaintiff's burden to show that, had his proposed warning been given, Susan Bulger's physicians would not have prescribed Neurontin to her, a necessary (but not sufficient) component of Plaintiff's causation burden.  (*See* Defendants' Proposed Instructions Nos. 24 and 25.)

6.      Defendants object to Plaintiff's proposed instructions on breach of warranty – Request to Charge No. 11 ("Breach of Warranty"), No. 12 ("Elements"), No. 13 (Foreseeable Use), and No. 14 (Defect – Causation) – for the reasons stated in Paragraph 2 above.  As

discussed above, in a failure to warn case, negligence and breach of implied warranty are congruent under Massachusetts law and separate instructions should not be given.  For this reasons, Defendants also object to Questions Nos.  7 and 8 of Plaintiff's proposed verdict form.

Defendants further object to Plaintiff's proposed instruction on any "post marketing duty to warn" on the grounds that it is not relevant to any issue in this litigation.  This is not a case involving a durable good or prescription product where the risk involves an adverse effect with a latency period such that there is a significant discrepancy between the time of sale and the time when the risk at issue should have been discovered, if at all.[7]  In this case, the jury should simply be instructed that it must determine whether Neurontin was adequately labeled when it was prescribed to Susan Bulger between 2002 and August 2004, based upon the medical and scientific evidence available at that time.  To provide additional instructions to the jury based upon any alleged post-sale duty to warn will only create confusion.[8]  Further, Plaintiff's proposed instruction also impermissibly suggests to the jury that Defendants owed a duty to warn Susan Bulger directly, contrary to the learned intermediary doctrine.

7.        Defendants object to Plaintiff's Request to Charge No. 15 ("Intentional Misrepresentation – Elements"), Plaintiff's Request To Charge No. 16 ("Negligent Misrepresentation – Elements"), and Plaintiff's Request To Charge No. 19 ("Plaintiff as Member of Limited Group of Persons")[9] for the reasons stated in Paragraph 2 above.  This Court has dismissed Plaintiff's claims based upon alleged affirmative misrepresentations.   No such

---

[7] For example, in *Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909 (Mass. 1998), the alleged risk was rupture and autoimmune disease associated with breast implants.  The risks at issue did not become manifest until 15 years after implant surgery was performed.  *See id.* at 912-13.

[8] To the extent Plaintiff's Request to Charge No. 7 also incorporates an instruction on post-sale duty to warn, Defendants also object to it on this ground.

[9] Plaintiff has submitted his Request to Charge No. 19 as if it was some free-standing instruction, untied to any cause of action.  What Plaintiff proposes is part of the Massachusetts pattern jury instructions on intentional misrepresentation.

instructions should be given. For this reason, Defendants also object to Questions Nos. 9 through 12 of Plaintiff's proposed verdict form.

8. Defendants object to Plaintiff's Request to Charge No. 17 ("Fraudulent Concealment of Material Facts") for the reasons stated in Paragraph 2 above. In fact, Plaintiff's Request No. 17 illustrates why a separate instruction on fraudulent concealment should not be given. Plaintiff essentially asks that the jury should be instructed to impose liability for failure to warn of the risk of suicidality, without providing complete and accurate instructions regarding the scope of the Defendants' duty, the elements of Plaintiff's claim and Plaintiff's burden of proof. No instruction on fraudulent concealment should be given. To the extent one is, it should provide complete instructions on the elements of such a claim in accordance with Massachusetts law. (*See* Defendants' Proposed Instruction No. 22.) For this reason, Defendants also object to Questions Nos. 13 and 14 of Plaintiff's proposed verdict form.

Defendants further object to Plaintiff's Request No. 17 to the extent it purports to instruct the jury regarding the duty of a manufacturer who has engaged in off-label marketing. For the reasons stated in Defendants' Motion in Limine to Exclude Evidence of Marketing Or Advertising Materials And Conduct, David Franklin and the Franklin Litigation, and Other Claims or Actions [1912], off-label marketing is not relevant to any issue in this litigation. Plaintiff's proposed instruction incorrectly suggests that off-label marketing gives rise to some heightened duty on the part of a manufacturer. However, those courts that have recognized a duty to warn of risks associated with off-label use have done so based upon the *foreseeability* of the off-label use, not whether the drug was *marketed* for off-label uses. *See McNeil v. Wyeth*, 462 F.3d 364, 369 (5th Cir. 2006); *Woodbury v. Janssen Pharm., Inc.*, No. 93 C 7118, 1997 WL 201571, at *9 (N.D. Ill. Apr. 10, 1997); *cf. Knowlton v. Deseret Med., Inc.*, 930 F.2d 116, 122-23 (1st Cir. 1991) (applying Massachusetts law and holding that manufacturer of medical device had duty to warn where there was evidence that it was aware of off-label use of product); *see also Peterson v. Parke Davis & Co.*, 705 P.2d 1001, 1003 (Colo. Ct. App. 1985) (holding that

11

drug manufacturer was not liable for physician's unforeseeable misuse of product).  In other words, the duty derives from a manufacturer's duty to warn of risks associated with foreseeable misuses of a product.  *See Knowlton*, 930 F.2d at 120 ("Under Massachusetts law, '[t]he implied warranty of fitness includes uses which are reasonably foreseeable but does not include unforeseeable misuses of a product.'" (citation omitted)).  Thus, while the jury should be instructed regarding foreseeability, any additional instruction tied to off-label marketing would be incorrect.

9.    Defendants object to Plaintiff's Request To Charge No. 21 ("Compensatory Damages – Death") only to the extent that it fails to include a cautionary instruction that the jury should not interpret the fact that the court is giving instructions about the plaintiff's damages as an indication that the Court believes that the Plaintiff should prevail.  Such cautionary instructions are routinely given.  *See* Draft First Circuit Pattern Jury Instructions (Civil) No. 7.1; *see also* Fifth Circuit Pattern Jury Instructions No. 15.1 (2006); Third Circuit Pattern Jury Instructions No. 4.8.1; Eleventh Circuit Pattern Jury Instructions No. 7.1; 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 106.02 (5th ed. 2000).

10.    Defendants object to Plaintiff's Request to Charge No. 22 to the extent it purports to instruct the jury that "Susan Bulger was, at the time of her death 39 years old and, according to the life expectancy tables, had a life expectancy of 80.9 years.  Her husband was then 45 years old and had a life expectancy of 76.8 years.  The children were 5 and 17 years old and had life expectancies, respectively, of 80 and 74.5 years.  Life expectancy tables are simply statistical averages.  A person might live longer or die sooner than the time indicated by those tables. The figures I just mentioned are not controlling but may be considered by you."  The life expectancy of Susan Bulger and her surviving beneficiaries is a factual matter as to which Plaintiff bears the burden of proof.  Both the accuracy of Plaintiff's proffered tables, as well as their application to

Susan Bulger and her beneficiaries, is in dispute.  It is improper to include such matters, which are contested, in instructions to the jury.

Defendants further object to Plaintiff's Request No. 22 to the extent it seeks an instruction that "the economic value of Susan Bulger to her children and surviving spouse . . . is incapable of exact proof.  Taking into account all of the factors that I have discussed, you must use you own common sense and judgment based on the evidence in determining the amount of economic loss suffered by Susan Bulger's children and surviving spouse."  To the extent that Plaintiff seeks damages for the economic value of Susan Bulger's services to her family or her lost earning potential, those items are quantifiable and could be supported by appropriate evidence, including competent expert testimony.  The fact that Plaintiff has not designated an expert to testify about such elements of Plaintiff's damages does not mean that the jury should be allowed to speculate.  *See Litra v. Mount Wash. Coop. Bank*, No. 2006-01-CV-003588, 2008 WL 383637, at *1 (Jan. 31, 2008) ("It is well established that a party seeking damages bears the burden of proving entitlement to them and must not leave them to speculation.  While it is true that a plaintiff need not prove damages with mathematical exactness, damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty.") (citations and internal quotation marks omitted).

11.    Defendants object to Plaintiff's Request to Charge No. 23 ("Conscious Pain and Suffering") on the grounds that it fails to restrict the jury's consideration of this element of damages to the pain and suffering experienced by the decedent commencing with the impact of the fatal injury.  *See Gage v. City of Westfield*, 532 N.E.2d 62, 71 (Mass. App. Ct. 1988).  Instead, Plaintiff's Request to Charge erroneously instructs the jury to consider any alleged damages "from the time the decedent first ingested Neurontin until the date of death."  Defendants' Proposed Instruction No. 29 correctly states Massachusetts law as to this element of damages.  For this reasons, Defendants further object to Plaintiff's requested verdict Question No. 18, which states:  "What amount of money, if any, would fairly and reasonably compensate

13

the Estate of Susan Bulger for Susan Bulger's pain and suffering, disability and loss of enjoyment of life?"  Instead the jury should be asked:  "What amount of money, if any, would fairly and reasonably compensate the Estate of Susan Bulger for any conscious pain and suffering experienced by Susan Bulger commencing with the impact of the fatal injury?"

12.    Defendants object to Plaintiff's Request To Charge No. 25 ("Malicious, Willful, Wanton, and Reckless Conduct – Punitive Damages") on the following grounds.  First, for the reasons stated in Defendants' proposed charge, Defendants contend that clear and convincing evidence is constitutionally required to support an award of punitive damages.  (*See* Defendant's Proposed Instructions Nos. 30 & 33; *see also* Defendant's Trial Brief [1894] at 14.)  Second, the factors to be considered by a jury have been limited by the United States Supreme Court in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996).  Due process requires that the jury be adequately instructed and not allowed to consider matters which the Supreme Court has held cannot constitutionally support an award of punitive damages.  *See Philip Morris*, 549 U.S. at 354.  Accordingly, with respect to punitive damages, Defendants ask that the jury be instructed consistent with Defendant's Proposed Instructions Nos. 30 through 36.

13.    Defendants object to Plaintiff's proposed verdict question No. 1 because the answer is implied in the question.  Defendants further object to it on the grounds that it suggests that there was a duty to warn Susan Bulger directly.  Instead, the jury should be asked:  "Did Defendants negligently fail to adequately warn Susan Bulger's prescribing physicians of the risks of taking Neurontin?"  If the answer to the question is "No," the jury should be instructed to sign the verdict form without answering any other questions.

14.    Defendants object to Plaintiff's Request to Charge No. 20 and proposed verdict form questions Nos. 15 through 17 on the grounds that a wrongful death action is prosecuted on behalf of the estate, although the jury may be asked to propose an allocation of the award among the beneficiaries, but limited to the fair monetary value of the decedent to the beneficiaries.  *See*

14

*Burt v. Meyer*, 508 N.E.2d 598, 602 (Mass. 1987).[10]   Any other recovery is on behalf of the estate.  *See* Mass. Gen. Laws Ann. ch. 229, § 6; *Burt*, 508 N.E.2d at 600.  Accordingly the jury should be asked:  "What amount of money, if any, do you find should be awarded to the Estate of Susan Bulger as the fair monetary value of the decedent?"  By the next question, the jury should be asked to allocate any amount awarded among the beneficiaries of the estate.  In addition, the last sentence of Request to Charge No. 20 is not an accurate statement of the law.

15.     Plaintiff's proposed Question No. 20 should refer to the Estate of Susan Bulger, rather than the plaintiff.

### CONCLUSION

For all the foregoing reasons, Defendants ask that Plaintiff's Requested Charges to the jury not be given and that the jury be instructed in accordance with Defendants' Proposed Instructions.

Dated: July 16, 2009                        Respectfully submitted,

                                               SKADDEN, ARPS, SLATE,
                                                 MEAGHER & FLOM LLP

                                        By:      /s/ Mark S. Cheffo
                                                 Mark S. Cheffo

                                        Four Times Square
                                        New York, NY 10036
                                        Tel:  (212) 735-3000

                                            -and-

---

[10] *See also* Mass. Gen. Laws Ann. ch. 229, § 2 (West 2000 & Supp. 2009) ("Damages under this section shall be recovered in an action of tort by the executor or administrator of the deceased"); *Hallett v. Town of Wrentham*, 499 N.E.2d 1189, 1192, 1193 (Mass. 1986) ("The executor or administrator presents all claims by the designated beneficiaries for damages flowing from the wrongful death. . . .  [T]he wrongful death act, G.L. c. 229, § 2, provides the exclusive action for the recovery of the damages it encompasses by the designated beneficiaries. The [beneficiaries] may not maintain a separate action for loss of consortium."); *O'Rourke v. Sullivan*, 35 N.E.2d 259, 260-61 (Mass. 1941) ("The widow and children of the intestate, although they would be entitled to any sum recovered on account of the cause of action for death, could not be parties thereto.").

BOIES, SCHILLER & FLEXNER LLP

By:    /s/ William S. Ohlemeyer
       William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

               -and-

SHOOK, HARDY & BACON L.L.P.

By:    /s/ Scott W. Sayler
       Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel:  (816) 474-6550

               -and-

WHITE AND WILLIAMS LLP

By:    /s/ David B. Chaffin
       David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 16, 2009.

                    /s/ David B. Chaffin
                    David B. Chaffin

16