# EXHIBIT 3

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                    DISTRICT OF MASSACHUSETTS

 3    IN RE; NEURONTIN                    )

 4    MARKETING SALES PRACTICES           )

 5    & PRODUCT LIABILITY                 )

 6    LITIGATION,                         )

 7                                        ) MDL DOCKET

 8    BULGER vs. PFIZER, et al.,          ) No. 1629

 9                                        ) MASTER FILE

10    SMITH vs. PFIZER, et al.,           ) No. 04-10981

11    05-CV-11515-PBS                     )

12         SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                       CITY OF LAKE

14    NICOLETTE CRONE, et al.,            )

15               Plaintiffs,              )

16          vs.                           ) CV 400432

17    PFIZER, INC., et al.,               )

18               Defendants.              )

19            2/4/09   Job No.: 183060

20            9:16 a.m.

21         The videotaped deposition of ROBERT D.

22    GIBBONS, Ph.D., resumed pursuant to adjournment at

23    Suite 533, 506 West Harrison Street, Chicago,

24    Illinois.
```

Page 697

1   Q.  I'm sorry.  On the second page.  We are
2   talking about the study now, the bipolar study.
3   A.  "Plaintiffs demand all documents and
4   underlying data that pertain to the aforementioned
5   study, Gibbons, et al. (2008)."
6   Q.  Was there anything in that sentence that
7   says the word relied upon?
8   MS. McGRODER:  I object to this question.  He's
9   never even seen -- he has never even seen this
10  letter --
11  MR. ALTMAN:  Lori --
12  MS. McGRODER:  -- this is legal --
13  MR. ALTMAN:  Lori, stop coaching the witness.
14  MS. McGRODER:  It's not about --
15  MR. ALTMAN:  Lori, you are coaching the
16  witness.  I have asked him a simple question.
17  BY MR. ALTMAN:
18  Q.  Does the word relied upon exist anywhere
19  in point 3?
20  MR. ALTMAN:  The man can read --
21  MS. McGRODER:  And I --
22  MR. ALTMAN:  -- he is a biostatistician.
23  MS. McGRODER:  And I object to you --
24  MR. ALTMAN:  That's nice.

Page 698

1   MS. McGRODER:  -- asking him questions about
2   legal communications --
3   MR. ALTMAN:  Lori --
4   MS. McGRODER:  -- between you and me.
5   MR. ALTMAN:  -- that's fine.  He put in his
6   declaration that he complied --
7   MS. McGRODER:  I didn't say he couldn't answer
8   the question.  Stop your argument and let him answer
9   it.  I'm putting my objection on the record.
10  MR. ALTMAN:  That's fine.  Your objection is
11  noted.
12  MS. McGRODER:  If you can answer the
13  question --
14  MR. ALTMAN:  Now stop.
15  MS. McGRODER:  -- I can make the objection, and
16  he can answer that question.
17  BY MR. ALTMAN:
18  Q.  Dr. Gibbons, does the word relied upon
19  exist anywhere in there?
20  THE COURT REPORTER:  Wait one second.
21  MR. LONDON:  Are you worn out?
22  THE COURT REPORTER:  Okay.  Go ahead.
23  BY THE WITNESS:
24  A.  The word relied upon does not exist in

Page 699

1   sentence -- in bullet No. 3 on page 2 of Exhibit 2.
2   However, in answering your question, I
3   believe I did a very reasonable job of giving you
4   materials.  I know I have not given the raw data
5   files and all of the SAS files, and I understand
6   that there may be a SAS file or two that maybe
7   didn't make it into it, and I apologize for that.
8   It wasn't my intention to do that.  I
9   didn't try to trip you up in any way.  If you had
10  asked for it prior to this, I would have, you know,
11  made sure that it was there.  You could have said to
12  opposing counsel, you know, we are trying to
13  recreate the cmed dataset, and I can't find it in
14  here.  Could Dr. Gibbons go back and see if that's
15  being created in another file, and I certainly would
16  have done that, and I would have given it to you.
17  I relied upon the -- and I know that word
18  isn't in here, but I'm just trying to be as honest
19  with you as I can -- the SAS output to build the
20  paper.  The paper was submitted.  The reference to
21  that paper is the paper that was submitted for
22  publication.  It's a part of my academic work.  I
23  have been doing further sensitivity analyses, and I
24  will use those -- those antiepileptic data hopefully

Page 700

1   for the next ten years as an example of how to do
2   the pharmacoepidemiologic work, and I hope that I
3   will continue to evolve and revise the methodology
4   to a point where we can use it in a wide variety of
5   applications.
6   And I really -- I mean, I feel like I did
7   a yeoman's job of giving you all of the data in the
8   files.  I could have made it far more obscure, and
9   I -- you know, this is a complicated project.  It's
10  big dataset, and the SAS files are pretty
11  complicated, but, you know, I tried hard not to --
12  to make it difficult for you.
13  And the Fortran code and associated work
14  was done for my own edification to make sure that
15  the SAS files which formed the basis of the results
16  that went into the paper and went into my expert
17  report were simply done for my own reassurance that
18  what was done by myself and my colleague was -- was
19  accurate.
20  BY MR. ALTMAN:
21  Q.  Dr. Gibbons, I'm not suggesting that you
22  intentionally withheld anything.
23  MS. McGRODER:  No, you are suggesting that he
24  lied.