UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | : : : : | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | : : : | Judge Patti B. Saris |
| *Bulger v. Pfizer Inc., et al.*<br>Case No. 1:07-cv-11426-PBS | : : : : : : | Magistrate Judge Leo T. Sorokin |

**DEFENDANTS' BENCH MEMORANDUM ON THE**
**ADMISSIBILITY OF STATEMENTS BY RONALD BULGER, SR.**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") respectfully submit this bench memorandum regarding the admissibility at trial of out-of-court statements of Ronald Bulger, Sr., the former plaintiff in this action. As Susan Bulger's husband, with undisputed knowledge of her mental and physical health, use of Neurontin, use of other drugs and medications, and the events and circumstances surrounding her suicide, Mr. Bulger is a key witness. In addition, as administrator of Mrs. Bulger's estate and the prosecuting plaintiff until just weeks ago, and as a continuing beneficiary of her estate, Mr. Bulger remains a real party in interest. His out-of-court statements are relevant to multiple disputed issues, including specific causation and damages. As set forth in more detail below, these statements should be admitted as party admissions. However, to the extent the Court determines that Mr. Bulger's statements are not party admissions, they should be admitted under several exceptions to the hearsay rules, for purposes of impeachment, and as the subject of testimony by Pfizer's experts.

<u>**ARGUMENT**</u>

**I.     MR. BULGER'S STATEMENTS ARE PARTY ADMISSIONS**

Under Federal Rule of Evidence 801(d)(2)(A), an out-of-court statement is not hearsay if it is a party's statement and is offered against the party. Fed. R. Evid. 801(d)(2)(A). The

Advisory Committee Notes recognize that "[a]dmissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system," and that "[t]he freedom which admissions have enjoyed from technical demands searching for an assurance of trustworthiness in some against-interest circumstance . . . calls for generous treatment of this avenue to admissibility." Fed. R. Evid. 801(d)(2), advisory committee note.

This action was filed almost two years ago by Mr. Bulger, as the administrator of his deceased wife's estate, and prosecuted by him until he was replaced as administrator and plaintiff on the eve of trial by professional witness David Egilman. As this Court has already recognized, any statements made by Mr. Bulger while he was acting as the administrator of the estate and plaintiff in this action are admissible as party admissions.[1] Indeed, the law is clear that substitution of Mr. Egilman as the administrator and nominal plaintiff does not suddenly convert Mr. Bulger's admissions into hearsay. *See, e.g.*, *Webb v. Martin*, 364 F.2d 229, 232 (3d Cir. 1966) (affirming admission of statements of decedent against defendant administrator of decedent's estate, holding, "[t]he fact that [decedent] ha[d] died does not affect the admissibility of his testimony since the Administrator is his successor in interest and as such the admission is admissible against him"); *Baptist v. Bankers Indem. Ins. Co.*, 377 F.2d 211, 215-17, 220 (2d Cir. 1967) (affirming ruling that accident report and testimony by subrogor were admissible against subrogee in action against insurance company, noting that "admissions of the transferor in analogous circumstances have always been admissible against the transferee"); *Krebs Pigment & Chem. Co. v. Sheridan*, 79 F.2d 479, 480 (3d Cir. 1935) (affirming finding that statements of insurer of plaintiff's cargo were admissible by defendant barge owner against plaintiff because insurer was true party in interest); *United States ex rel. Milam v. Regents of the Univ. of Cal.*,

---

[1] For example, while still a party to this action, Mr. Bulger told one of his neighbors that he hated his wife, that she was using cocaine in the days leading up to her death, and that they had argued about her cocaine use. He also told her that he heard a noise and was aware that Mrs. Bulger was committing suicide, but did nothing to stop her. He also said that Mrs. Bulger was not using Neurontin for six months prior to her death.

912 F. Supp. 868, 880 (D. Md. 1995) (report prepared by government office was admission admissible against relator in qui tam action because government was real party in interest).

It is also well settled that "[a] substituted party is placed in the same position as the original party to the action, assuming the burdens and receiving any benefits." *Nelson Cabinets, Inc. v. Peiffer*, 542 N.W.2d 570, 572 (Iowa 1995); *accord Hunsaker v. Ky. Dep't of Transp.*, 239 S.W.3d 68, 70 (Ky. 2007).   Under this rule too, Plaintiff should not be permitted, through his last-minute substitution of parties, to exclude Mr. Bulger's admissions at trial.

## II.    MR. BULGER'S STATEMENTS ARE ADMISSIBLE BECAUSE HE REMAINS A REAL PARTY IN INTEREST

In addition, notwithstanding his purported waiver, Mr. Bulger continues to be a beneficiary of Mrs. Bulger's estate and, therefore, a real party in interest.   There are several reasons why his recent purported waiver does not change his status as a beneficiary.   First, an interest in an estate cannot be disclaimed after it has been encumbered or where the beneficiary has accepted the benefits of his potential inheritance.   *See* Mass. Gen. Laws Ann. ch. 191A, § 8(1)(4) (West Supp. 2009).   Here, there is uncontroverted evidence that Mr. Bulger has already borrowed against his interest in the estate's wrongful death action.   (*See, e.g.*, Exhs. A and E to Cheffo Decl. annexed to Mot. to File Supp. Mem. [2000-2].)   Courts have consistently held that encumbrance of an interest, as appears to have occurred here, constitutes acceptance of the benefits of the estate.   *See, e.g., Cassel v. Kolb* (*In re Kolb*), 326 F.3d 1030, 1039 (9th Cir. 2003); *Badouh v. Hale*, 22 S.W.3d 392, 397 (Tex. 2000) ("[W]e conclude that pledging property to secure a loan is an exercise of dominion and control for purposes of the disclaimer statute."). Having borrowed against his potential recovery in this case, Mr. Bulger cannot simply claim that he waives his right to such recovery.

In addition, Mr. Bulger is barred from disclaiming his interest in the estate to the extent that he is currently insolvent.   *See* Mass. Gen. Laws Ann. ch. 191A, § 8 (West Supp. 2009) ("The right to disclaim an interest in property shall be barred by . . . insolvency of the beneficiary at the time of attempted disclaimer").   Again, there is uncontroverted evidence that Mr. Bulger is

insolvent.  Mr. Bulger previously filed for bankruptcy in February 2008 (*see* Exh. F to Cheffo Decl. annexed to Mot. to File Supp. Mem. [2000-2]), and he is currently under an eviction notice for failure to pay association fees at the mobile home park where he resides (*see* Exh. G to same).[2]

Accordingly, Mr. Bulger cannot entirely disclaim his interest in the estate by simply signing an undated "waiver" document, which he may denounce later, or claiming that he will not seek any money.  To the extent he has encumbered his inheritance or to the extent his inheritance must be used to pay his creditors, he has an interest in the outcome of this litigation and continues to be a real party in interest.[3]  As such, his statements are admissible as party admissions.  *See, e.g.*, *Barber v. Ruth*, 7 F.3d 636, 646 (7th Cir. 1993) ("Beneficiaries to an estate are generally deemed to be the real parties in interest in litigation affecting that estate." (citation omitted)); *Roberts v. City of Troy*, 773 F.2d 720, 726 (6th Cir. 1985) ("[C]ourts have recognized 'the established principle that admissions by the beneficial party or real party in interest . . . are admissible in evidence against the nominal plaintiff representing his interests.'"

---

[2] It also appears that Mr. Bulger's disclaimer was untimely.  Massachusetts law provides that "[a] disclaimer shall be executed and filed . . . not later than nine months after the event determining that the beneficiary is finally ascertained as the beneficiary of such interest and that such interest is indefeasibly vested."  Mass. Gen. Laws Ann. ch. 191A, § 3 (West Supp. 2009).  Mr. Bulger's interest in the current suit vested at the moment of Mrs. Bulger's death in August 2004.  *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts 948 (5th ed. 1984).

[3] Significantly, in response to Defendants' Supplemental Memorandum in Support of its Motion in Limine To Exclude Any Argument Based Upon How Any Recovery Will Be Used [2000], Plaintiff did not deny that Mr. Bulger has obtained a loan against his interest in the estate's recovery or that Mr. Bulger is insolvent.  Plaintiff also concedes that distribution of the estate (including to Mr. Bulger's creditors) is a matter for the probate court.  (*See* Pl. Opp. [2026].)  *See also Marshall v. Marshall*, 547 U.S. 293, 308, 312 (2006) (explaining that the probate exception operates as an exception "to otherwise proper federal jurisdiction," and bars federal courts from, among other things, "endeavoring to dispose of property that is in the custody of a state probate court"); *Groman v. Cola*, No. 07 CV 2635, 2007 WL 3340922, at *3 (S.D.N.Y. Nov. 7, 2007) (probate exception is "'too well established a feature of our federal system to be lightly discarded'" (citation omitted)).  "[P]roceedings to resolve disputes over the administration of a decedent's estate . . . are . . . *in rem* in character," for "they are fights over a property or a person in the court's control."  *Struck v. Cook County Pub. Guardian*, 508 F.3d 858, 859-60 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 2091 (2008).

(second alteration in original) (quoting *A.N. Deringer, Inc. v. United States*, 287 F. Supp. 1016, 1023 n.6 (Cust. Ct. 1968))).

## III.   SUSAN BULGER'S STATEMENTS REGARDING RONALD BULGER'S VERBAL ABUSE OF HER ARE ADMISSIBLE NON-HEARSAY

One of the statements that Plaintiff seeks to exclude in this action is Ronald Bulger's statement that he wished Susan Bulger were dead and thought that their minor daughter was not his child.  In fact, this is a statement by Susan Bulger.  She reported to the Department of Social Service that, in April 1998, Ronald Bulger "told her he thought the baby she was carrying wasn't his and that he wished she were dead."  (*See* Finkelstein Decl. [1901], Ex. G.)  Susan Bulger's statement is non-hearsay.  The law is clear that statements by the decedent in a wrongful death action are considered party admissions.  *See Estate of Shafer v. Comm'r*, 749 F.2d 1216, 1220 (6th Cir. 1984); *Phillips v. Grady County Bd. of County Comm'rs*, 92 F. App'x 692, 693-94, 696 (10th Cir. 2004); *Webb v. Martin*, 364 F.2d 229, 229, 230-31 (3d Cir. 1966); *Schroeder v. de Bertolo*, 942 F. Supp. 72, 78 (D.P.R. 1996).  Ronald Bulger's statement is also not hearsay because it is not offered for the truth of the matter asserted.  Whether Mr. Bulger really hated his wife and doubted the paternity of his child is not the point.  What matters is that he said it.  Susan Bulger's statement is evidence of an operative fact − psychological and verbal abuse by her husband − that contributed to Susan Bulger's risk factors for suicide.  *See, e.g.*, *United States v. Castro-Lara*, 970 F.2d 976, 981 (1st Cir. 1992) ("The hearsay rule does not pertain to statements adduced merely to show that they were made or that they had some effect on the future actions of a listener."); *accord United States v. Cruz-Diaz*, 550 F.3d 169, 176 (1st Cir. 2008) ("Out-of-court statements offered not to prove the truth of the matter asserted but merely to show context – such as a statement offered for the limited purpose of showing what effect the statement had on the listener – are not hearsay.").  To the extent Mrs. Bulger reported other examples of verbal abuse to her medical providers, they would also be admissible as non-hearsay.

## IV.   RONALD BULGER'S STATEMENTS ARE ADMISSIBLE UNDER EXCEPTIONS TO THE HEARSAY RULE

### A.   Mr. Bulger's Statements to Mrs. Bulger's Medical Providers Are Admissible

Rule 803(4) provides a hearsay exception for "[s]tatements made for purposes of medical diagnosis or treatment." Fed. R. Evid. 803(4). It includes statements describing medical history and past symptoms. *See id.* In this case, several of the statements at issue were made by Mr. Bulger to Susan Bulger's medical providers and describe her past history of drug abuse, mental illness and suicide attempts. For example, in July 2002, Mr. Bulger told Susan Bulger's treating physician that he was concerned about her depression, which seemed to be getting worse since April. Rule 803(4) is not limited to statements by the plaintiff, but also includes statements made by family members to medical providers for the purpose of facilitating diagnosis or treatment. *See Bucci v. Essex Ins. Co.*, 393 F.3d 285, 298 (1st Cir. 2005); *Danaipour v. McLarey*, 386 F.3d 289, 297 (1st Cir. 2004); *Ziolkowski v. Novartis Consumer Health, Inc.*, No. 01 CV10324(EFH), 2005 WL 3173221 (D. Mass. Oct. 18, 2005).

### B.   Mr. Bulger's Statements Should Be Admitted As Statements Against Interest And Under The Residual Exception To The Hearsay Rule

Under Rule 804(b)(3),

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Fed. R. Evid. 804(b)(3). Here, many of Ronald Bulger's out-of-court statements, such as those about selling drugs, including Mrs. Bulger's prescription medicines, and using illegal drugs, are also admissible as statements against interest under Rule 804(b)(3). All of these statements are either so far contrary to Mr. Bulger's claims and pecuniary interest in the instant litigation and/or would subject him to criminal liability, that it is clear that a reasonable person in his position would not have made them were they not true. *See United States v. Barone*, 114 F.3d 1284, 1295 (1st Cir. 1997) (recognizing the reliability of statements against interest).

6

Under the facts of this case, such statements should be admitted without regard to Mr. Bulger's availability at trial.  Mr. Bulger was a party in this action, both the nominal plaintiff and a real party in interest, until a few weeks ago.  As such, his out-of-court statements, including those made prior to this lawsuit, were fully admissible as party admissions. Defendants have conducted discovery and prepared for trial with the expectation that such statements would be admissible.  On the eve of trial, Plaintiff and his attorney have manipulated Mr. Bulger's status for tactical advantage, including in an attempt to render his damaging statements inadmissible.  Under such circumstances, Rule 807 permits the admission of such statements.

Rule 807 provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807.  As the First Circuit explained in *United States v. Sposito*, 106 F.3d 1042 (1st Cir. 1997), the residual exception is intended, *inter alia*, to "[t]o provide sufficient flexibility to permit the courts to deal with new and unanticipated situations" and "[t]o facilitate the basic purpose of the Federal Rules of Evidence; truth ascertainment and fair adjudication of controversies."  *Id.* at 1048 (applying residual exception set forth in former Fed. R. Evid. 804(b)(5), which was replaced by Rule 807 (citation omitted)); *accord United States v. Valdez-Soto*, 31 F.3d 1467, 1471 (9th Cir. 1994) ("[The residual exception] exists to provide courts with flexibility in admitting statements traditionally regarded as hearsay but not falling within any of the conventional exceptions.").

In this case, Mr. Bulger's out-of-court statements possess sufficient indicia of reliability to permit their admission under Rule 807.  Nearly all of the statements at issue were made against his interest and with no motive to lie.  Many such statements corroborate one another

and/or are corroborated by other evidence.  And they are highly probative of material facts, including Susan Bulger's use of Neurontin and other drugs and the cause and circumstances of her suicide.  In addition, their admission would further the interests of justice by neutralizing Plaintiff's eleventh hour machinations intended to prevent the jury from hearing relevant evidence that would have been clearly admissible only one month ago.  Admission of the evidence would plainly serve the objectives of the residual exception.  *See, e.g.*, *Limone v. United States*, 497 F. Supp. 2d 143, 162 n.31 (D. Mass. 2007) (in Federal Tort Claims action, admitting statements of former FBI agents against government both as party admissions and under Rule 807).  Here, as in *Limone*, such statements by Mr. Bulger are "more probative on the point for which they are offered than any other evidence which the proponent can procure through reasonable efforts, and . . . admission [would be] in keeping with the purposes of the rules of evidence."  *Id.* at 163; *see also Valdez-Soto*, 31 F.3d at 1473 (admission under residual exception of post-arrest hearsay statements to FBI agents was "far from an abuse of discretion," citing multiple indicia of trustworthiness); *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 213 F. Supp. 2d 331, 344 (S.D.N.Y. 2002) (admitting under Rule 807 attorney notes of meeting with witness who was directly involved in the transaction at issue, finding the notes were reliable evidence of "crucial" relevance and that "the interests of justice" would not be served by their exclusion), *vacated on other grounds*, 89 F. App'x 287 (2d Cir. 2004); *United States v. Santos*, 65 F. Supp. 2d 802, 823-24 (N.D. Ill. 1999) (in political corruption action, admission of hearsay letter under Rule 807 "further[ed] the interests of justice" because it was highly probative on several key issues and would assist the jury in understanding background facts).

### C.   Several of Mr. Bulger's Statements Should Be Admitted as Excited Utterances or Statements of Mental or Emotional Condition

Regardless of Mr. Bulger's availability at trial, his statement to Susan Bulger's sister, Linda Landry, on the morning after Mrs. Bulger's suicide, that "he did not know what he could do now because he didn't have [Susan's] pills to sell, he was going to lose the house," is

admissible under the hearsay exceptions for excited utterances, or "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[4]  Fed. R. Evid. 803(2); *see also United States v. Shoup*, 476 F.3d 38, 41-43 (1st Cir. 2007) (affirming admission of 911 call under Rule 803(2)); *United States v. Cruz*, 156 F.3d 22, 30 (1st Cir. 1998) (affirming admission as excited utterances of hearsay statements by victim about beatings by defendant where statements were made after victim's arrival at women's shelter, hours after beating).  The statement is also admissible under the hearsay exceptions for statements of then existing state of mind or emotional condition.  *See* Fed. R. Evid. 803(3).

## V.    PFIZER SHOULD BE PERMITTED TO IMPEACH MR. BULGER WITH PRIOR INCONSISTENT STATEMENTS EVEN IF PLAINTIFF CHOOSES NOT TO CALL HIM

Pfizer is also entitled to impeach Mr. Bulger with prior inconsistent statements, including in the instance that Pfizer must call Mr. Bulger in its case-in-chief because Plaintiff does not, for tactical reasons, call him in his.  It is well settled that "[t]he Federal Rules of Evidence permit a party to impeach its own witness."  *United States v. Richardson*, 421 F.3d 17, 40 (1st Cir. 2005); *see* Fed. R. Evid. 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness.").   In addition, "'[i]mpeachment under Rule 607 is not limited to occasions where the party calling the witness is surprised or misled by the testimony.'"  *United States v. Frappier*, 807 F.2d 257, 259 (1st Cir. 1986) (alteration in original) (quoting *Robinson v. Watts Detective Agency*, 685 F.2d 729, 740 (1st Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983)). Here, it is beyond dispute that Mr. Bulger is a critical fact witness with relevant knowledge about many of the core issues in this case, including Mrs. Bulger's use of Neurontin, her mental and physical health, her past suicide attempts and other risk factors for suicide, and the circumstances

---

[4] In addition, Plaintiff has already argued to this Court that Mr. Bulger's statements to the police on the night of his wife's suicide are admissible as excited utterances.  In addition to the statement that Plaintiff seeks to rely upon, Mr. Bulger also told the police that his wife suffered from severe depression and bipolar disorder; that she had attempted suicide several times; and that, when he did not find her in her bedroom, he thought she was "off on a bender."

surrounding her suicide.  Accordingly, Mr. Bulger can be properly impeached with his prior inconsistent statements.

## VI.   PFIZER'S EXPERTS SHOULD BE PERMITTED TO TESTIFY ABOUT MR. BULGER'S STATEMENTS ON WHICH THEY REASONABLY RELIED

Even if the Court does not find Mr. Bulger's statements to be party opponent admissions or admissible under the hearsay exceptions identified above, they remain the proper subject of testimony by Pfizer's specific causation experts.  As the First Circuit has explained, under Rule 703, "an expert is entitled to rely on facts and/or data which have not been admitted into evidence if the expert's reliance on those facts or data is reasonable," with "reasonableness . . . measured against the facts or data upon which experts in the particular field normally rely." *Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 544 (1st Cir. 1988).  Here, it is undisputed that in evaluating the cause of a suicide, experts regularly rely on statements by family members of the decedent about the decedent and the circumstances surrounding the suicide.  Indeed, both of Plaintiff's specific causation experts have relied on such statements, including statements by Mr. Bulger, in formulating their opinions.

It is also well established both that "Rule 703 expressly contemplates the use of hearsay evidence by experts," *Viking Yacht Co. v. Composites One LLC*, 613 F. Supp. 2d 637, 645 n.11 (D.N.J. 2009), and that "a court also has discretion under Rule 703 to provide the jury in some circumstances with the 'facts or data' underlying an expert's opinion."  *United States v. Milkiewicz*, 470 F.3d 390, 397-98 (1st Cir. 2006).  Specifically, Rule 703 provides that otherwise inadmissible facts or data on which an expert relies for his opinion may be disclosed where, as here, "their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."  Fed. R. Evid. 703; *see also United States v. Garcia*, 447 F.3d 1327, 1336-37 (11th Cir. 2006) (affirming admission of expert testimony concerning informant's hearsay statements about drug traffickers' code language); *Stevens v. Cessna Aircraft Co.*, 634 F. Supp. 137, 142-43 (E.D. Pa. 1986) (in wrongful death products liability action, admitting expert testimony about hearsay statements from individuals interviewed as part of expert's

investigation of the deceased pilot's background, where statements described "stress that might well have hampered [the deceased's] performance as a pilot" and were of the type "relied upon by those evaluating the fitness of pilots"), *aff'd mem.*, 806 F.2d 252 (3d Cir. 1986).

Here, for example, Pfizer's experts' consideration of statements by Mr. Bulger about the circumstances surrounding Mrs. Bulger's suicide, including her use of crack cocaine in the days before her suicide, and the fact that he and Mrs. Bulger argued over drugs the night before and day of her suicide, carries profound probative value in evaluating the experts' opinions that other events in Mrs. Bulger's life, and not her ingestion of Neurontin, led her to commit suicide. In contrast, the potential for unfair prejudice to Plaintiff of allowing Pfizer's experts to testify about these facts is minimal. Plaintiff's counsel will have not only the opportunity to cross-examine Pfizer's experts about their reliance on Mr. Bulger's statements but also the ability to call Mr. Bulger and examine him on the facts implicated by the statements attributed to him and on the statements themselves. *See, e.g.*, *Brennan v. Reinhart Inst. Foods*, 211 F.3d 449, 450-52 (8th Cir. 2000) (affirming admission, through expert testimony, of hearsay statements of plaintiff's physicians to show "the factual basis of the expert's opinion," finding defense counsel had adequate opportunity to cross-examine the expert on the physicians' statements); *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 443 (D. Del. 2007) (denying motion to exclude hearsay evidence on which defendants' damages experts relied, noting that plaintiff's counsel would be able "'through cross examination to explore and expose any weaknesses in the underpinnings of the expert's opinion'" (quoting *Int'l Adhesive Coating Co.*, 851 F.2d at 544)). In addition, Plaintiff has already submitted a new report from his forensic expert, Dr. Roh, in response to the additional evidence of Mrs. Bulger's use of cocaine, and has indicated that he intends to provide supplemental reports from his specific causation experts, Drs. Maris and Kruszewski, based on the statements attributed to Mr. Bulger by his neighbor.

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that the Court admit Mr. Bulger's out-of-court statements as party admissions.   To the extent the Court determines that Mr. Bulger's statements are not party admissions, Pfizer requests that the statements be admitted pursuant to the exceptions set forth above.

Dated: July 22, 2009                              Respectfully submitted,

                                                  SKADDEN, ARPS, SLATE,
                                                  MEAGHER & FLOM LLP

                                                  By: /s/ Mark S. Cheffo
                                                      Mark S. Cheffo

                                                  Four Times Square
                                                  New York, NY 10036
                                                  Tel:  (212) 735-3000

                                                      -and-

                                                  BOIES, SCHILLER & FLEXNER LLP

                                                  By: /s/ William S. Ohlemeyer
                                                      William S. Ohlemeyer

                                                  333 Main Street
                                                  Armonk, NY 10504
                                                  Tel: (914) 749-8200

                                                      -and-

                                                  SHOOK, HARDY & BACON L.L.P.

                                                  By: /s/ Scott W. Sayler
                                                      Scott W. Sayler

                                                  2555 Grand Blvd.
                                                  Kansas City, MO 64108-2613
                                                  Tel:  (816) 474-6550

                                                      -and-

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
      David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 22, 2009.

/s/ David B. Chaffin
David B. Chaffin