# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : MDL Docket No. 1629 <br> : <br> : Master File No. 04-10981 <br> : |
| THIS DOCUMENT RELATES TO: | : <br> : Judge Patti B. Saris <br> : |
| *Bulger v. Pfizer Inc.*, Case No. 1:07-cv-11426-PBS | : Magistrate Judge Leo T. Sorokin |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN CONNECTION WITH
*DAUBERT* HEARING REGARDING DR. ROBERT GIBBONS**

Defendants Pfizer Inc and Warner-Lambert Company LLC (together, "Pfizer" or "Defendants"), by counsel, respectfully submit this Supplemental Memorandum in Connection with the Court's *Daubert* Hearing Regarding Dr. Robert Gibbons.

At the *Daubert* hearing held on July 21 and 23, 2009, the Court ruled that Dr. Gibbons would be permitted to testify at trial with respect to his analysis of the FDA Alert and meta-analysis and his study of 11 AEDs in a bi-polar population. The Court expressed concern, however, whether Dr. Gibbons' separate gabapentin study passes muster under *Daubert*. More particularly, the Court questioned whether, with respect to the gabapentin study: (1) the absence of a person-time sensitivity analysis rendered the methodology of that study unreliable, and (2) whether Dr. Gibbons should have controlled for time that study subjects were off drug in the year following gabapentin therapy.

Defendants respectfully seek leave to file this short Supplemental Memorandum on these two important issues. As set forth at the hearing and below, neither of these issues render Dr. Gibbons' methodology unreliable or warrant exclusion of the study under *Daubert*.

1. Dr. Greenland conceded that the methodology employed by Dr. Gibbons in his gabapentin study was "basically similar" to the published article and "that's not the issue. It's the conclusions." [Greenland 7/21/09 Daubert Test. at 52.20-25].

2. The same statistical methodology that Dr. Gibbons employed in the gabapentin study has been published in the peer reviewed scientific literature, including a VA study Dr. Gibbons published. [Gibbons 7/23/09 Daubert Test. at 31.3-32.17]

3. Sensitivity analyses are not part of Dr. Gibbons' primary analysis in the gabapentin study, but were used to test whether adjustments to the primary analysis change the conclusions of his study. [Gibbons 7/23/09 Daubert Test. at 24.20-25] Dr. Gibbons performed six sensitivity analyses for the gabapentin study, and all of those analyses confirmed his primary gabapentin findings. [Gibbons 7/23/09 Daubert Test. at 23.1-4]

4. Dr. Gibbons did not perform a person-time analysis for the gabapentin study because "you can't do it in the gabapentin study." [Gibbons 7/23/09 Daubert Test. at 23.5-11] Dr. Gibbons clearly explained why such an analysis could be done in his AED study in the bi-polar cohort (i.e., index date in that study is a medical diagnosis). [Gibbons 7/23/09 Daubert Test. at 24.2-30.23]

5. With regard to Dr. Gibbons' gabapentin study design which takes into consideration a period of one year after initiation of gabapentin treatment, regardless of whether a patient went off the drug during that period, Dr. Greenland acknowledged that Dr. Gibbons "did a sensitivity analysis that went as far as, I suppose, he thought he could with what he had, but one could do more." [Greenland Dep. Test. 7/21/09 at 56.18-20 [1]] Dr. Greenland further testified that "I would have liked to have seen him do that to address my concerns in more depth." [Greenland Dep. Test. 7/21/09 at 57.15-16] In response to this Court's questioning Dr. Greenland testified as follows on this point:

---

[1] At the request of the Court, Defendants are filing separately herewith the transcript of Dr. Greenland's July 21, 2009, deposition in this matter.

2

> **THE COURT:** Is failure to make that correlation unreasonable when you do an epidemiological study?
>
> **DR. GREENLAND:** Let's say that it undermines, it further undermines *any conclusions* that one *might attempt to draw* about the effect of gabapentin. [*Id.* at 59.10-14] (Emphasis added)

\*   \*   \*

> **THE COURT:** In your view, is it critical to do this person time logistic regression analysis?
>
> **DR. GREENLAND:** I think it helps. I mean, the paper looks better to me than the expert report. That's the way I put it.
>
> **THE COURT:** You know, it's not . . . . just a question of "looks better." I have this gatekeeper role. I just want to know, is it junk science if you don't do it?
>
> **DR. GREENLAND:** Right. Well –
>
> **THE COURT:** I mean, just putting it as bluntly as you can, is it unreliable if you don't do it?
>
> **Dr. GREENLAND:** It reduces . . . It's less reliable if you don't do it, less reliable. [*Id.* at 88.15-89.7]

6. Dr. Greenland did no independent analysis of the Pharmetrics data to confirm that this additional sensitivity analysis would have undermined Dr. Gibbons' primary conclusions in the gabapentin study [Greenland 7/21/09 Daubert Test. at 87.11-17; 90.5-12 "I don't have the time to do that"; Greenland Dep. at 18.4-14]

7. Dr. Greenland acknowledges that Dr. Gibbons' gabapentin study supports the hypothesis that gabapentin does not increase the risk of suicide attempts. [Greenland Dep. at 105.23-106.10]

8. Dr. Greenland acknowledges that Dr. Gibbons' gabapentin study supports the hypothesis that gabapentin does not increase the risk of suicidal thinking and behavior in psychiatric patients. [Greenland Dep. at 106.20-109.11]

9. Dr. Greenland's bottom line opinion regarding the studies that Dr. Gibbons did was succinctly drawn out by this Court.

> **THE COURT: So what you're saying is, there's nothing that was wrong with what [Dr. Gibbons] did.  It's how he's stating the conclusions he draws from it?**

3

**DR. GREENLAND: Yes.**

[Greenland 7/21/09 Daubert Test. at 66.9-12] (Emphasis added).

As more fully set forth in Defendants' previously filed Opposition and at this Court's *Daubert* hearing, Dr. Gibbons' gabapentin study is valid and reliable and satisfies all aspects of Rule 702 and *Daubert*. It is not inadmissible "junk science," and Dr. Greenland rightfully declined to characterize it as such. While Dr. Greenland takes issue with the strength of the conclusions drawn by Dr. Gibbons, disputes between well-credentialed expert witnesses are properly the basis for cross-examination at trial, and do not form the basis of exclusion under *Daubert*. For the foregoing reasons, Pfizer respectfully requests that Plaintiff's motion *in limine* to preclude the testimony of Dr. Gibbons be denied in all respects, and Dr. Gibbons' opinions based on his gabapentin study are admissible.

Dated: July 24, 2009

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

-and-

BOIES, SCHILLER & FLEXNER LLP

By:/s/ William S. Ohlemeyer
    William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

-and-

SHOOK, HARDY & BACON L.L.P.

By:/s/ Scott W. Sayler
    Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel: (816) 474-6550

-and-

WHITE AND WILLIAMS LLP

By:/s/ David B. Chaffin
    David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 24, 2009.

/s/ David B. Chaffin
David B. Chaffin