UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                               :

In re:   NEURONTIN MARKETING,           :   MDL Docket No. 1629
        SALES PRACTICES AND             :
        PRODUCTS LIABILITY LITIGATION   :   Master File No. 04-10981

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :   Judge Patti B. Saris

THIS DOCUMENT RELATES TO:               :
                                         :   Magistrate Judge Leo T.

*Bulger v. Pfizer Inc., et al.*            :   Sorokin
Case No. 1:07-cv-11426-PBS              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' BENCH MEMORANDUM OF LAW REGARDING EVIDENCE OF WARNER LAMBERT'S CRIMINAL PLEA AND MARKETING EVIDENCE

       Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer")
respectfully submit this supplemental memorandum regarding the evidence of Warner Lambert's
criminal plea to certain conduct that occurred in 1995 to 1996, as well as evidence of national
marketing.

       The Supreme Court has made clear that liability cannot be imposed based upon conduct
that did not cause harm to the Plaintiff.  To punish a defendant based upon harm to persons "not
before the court . . . would amount to a taking of 'property' from the defendant without due
process."  *Philip Morris USA v. Williams*, 549 U.S. 346, 349 (2007).  A review of Plaintiff's
demonstrative exhibits for use in counsel's opening statement makes clear the Plaintiff intends to
do precisely what the Supreme Court has forbidden.  Plaintiff seeks to ask the jury to hold
Defendants liable not for the harm allegedly caused to Plaintiff, but for alleged off-label
marketing.  Out of 52 slides, Plaintiff has only 17 that are about the decedent, Susan Bulger, in
this case, and those are mostly limited to a series of slides devoted to an analogy Plaintiff
apparently intends to rely upon rather than a description of the evidence in the case.  Plaintiff has
no demonstrative exhibits on the complex issue of causation, an issue on which Plaintiff bears
the burden of proof.  Instead, Plaintiff has 31 slides directed at his allegations of off-label

marketing.

Plaintiff's demonstrative exhibits make manifest the prejudice that will result to Defendants if Plaintiff's reliance on evidence of off-label marketing and, in particular, Warner Lambert's criminal plea, is not curtailed.  This Court has previously dismissed any claims based upon alleged affirmative misrepresentations, national marketing or fraud-on-the-market.  (Mem. & Order [1790] at 28, 33, May 26, 2009.)  Having previously determined that national marketing was not causally related to the Plaintiff's claims in this action, introduction of the criminal plea − which concerns specific conduct in 1995 and 1996, years before Neurontin was ever prescribed to Susan Bulger − cannot be reconciled with the Supreme Court's repeated admonishments regarding the due process concerns raised by evidence of other conduct.  Such due process concerns cannot be erased with undefined and generic notions of intent and duty.  Due process demands a much more specific nexus to the claims and injury in this lawsuit.  The Supreme Court has made clear that courts should not countenance desultory attempts to find a relevance hook that only obscures the real − and impermissible − purpose for which such evidence is offered:  to induce the jury to punish a defendant for conduct that is not before them.[1]

## ARGUMENT

### I.   Introduction Of The Criminal Plea Is Irreconcilable With The Supreme Court's Decisions In *Campbell* And *Philip Morris* And Will Result In A Violation Of Defendants' Due Process Rights

On May 26, 2009, this Court entered an order by which it dismissed the following claims.  First, the Court dismissed any fraud claims by Plaintiff herein based upon affirmative misrepresentations.  (Mem. & Order [1790] at 33, May 26, 2009 ("The motions to dismiss the fraud claims are **ALLOWED** with respect to all claims of affirmative fraudulent misrepresentations with the exception of the Valentine Complaint.").)  In reaching this conclusion, the Court found that

---

[1] All of the arguments set forth herein apply both to evidence of the criminal plea, as well as evidence of national marketing.  However, as the potential for prejudice is heightened with the criminal plea, so are the due process concerns.  The memorandum, therefore, focuses on the criminal plea.

> [n]one of the remaining complaints [including *Bulger*] . . . contain . . . allegations [comparable to those in *Valentine*] of specific affirmative misrepresentations made by sales representatives to prescribing physicians upon which the doctors relied. Since plaintiffs had the opportunity to conduct discovery, amended complaint allegations about affirmative misrepresentations based solely on information and belief are inappropriate.

*Id.* at 29-30.[2]

Second, this Court held that Plaintiff could not recover for alleged fraudulent concealment to the extent such claim is "premised on the claim of fraudulent omissions in the national advertising and marketing campaign." *Id.* at 33. In reaching this conclusion, the Court specifically rejected plaintiffs' argument "that any doctor who prescribed Neurontin, even without direct contact with defendants was 'most likely influenced' in her prescribing habits by a doctor who was in contact with defendants." *Id.* at 27. The Court recognized that plaintiffs were advancing a "fraud on the market" theory, which has never been recognized outside the securities fraud context. *See id.* at 28. Accordingly, the Court dismissed "all fraud claims alleging . . . a suppression of information as part of a national marketing campaign because there is no allegation of reliance on specific statements or misrepresentations." *Id.* at 29.

This Court's rulings denying Pfizer's motions *in limine* seeking exclusion of evidence of off-label marketing and Warner-Lambert's criminal plea have the practical effect of nullifying this Court's prior substantive ruling in its May 26 Order. Plaintiff will be permitted to introduce evidence of off-label marketing even though his claims based upon off-label marketing and national advertising have been dismissed. In short, the Court has determined that the jury may hear evidence of conduct that this Court has already held was not a proximate cause of the decedent's death, conduct which cannot form the basis of a cause of action against Pfizer.

The Supreme Court's recent decisions make plain that it would be improper and a denial

---

[2] Indeed, both of Mrs. Bulger's treating physicians denied that Pfizer sales representatives had promoted the off-label uses of the drug to them. They testified that when prescribing medications for patients, they rely on their medical training and experience with medications, conversations with other physicians, and consideration of the specific patient. (*See* Goldman Dep. [1914-1] at 35:7-36:7; Crognale Dep. [1914-2] at 38:16-40:2, 173:6-17.)

of Pfizer's due process rights for the jury to impose *punitive* damages based upon the conduct that was the subject of the plea.  If the plea cannot support *punitive* damages, the jury certainly cannot award compensatory damages based upon such conduct.  In *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), the Supreme Court held, unequivocally, that punitive damages can be imposed only for conduct that *caused harm to the plaintiff*.  As the Court stated: "[T]he Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation." *Id.* at 353; *see also State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 424 (2003) ("The reprehensibility guidepost does not permit courts to expand the scope of the case so that a defendant may be punished for any malfeasance, which in this case extended for a 20-year period.").

The potential for jury confusion and prejudice to the Defendants created by this state of affairs is enormous.  There is simply no way for a jury to understand that, notwithstanding the days of testimony they will have heard about off-label marketing and the criminal plea, they cannot hold Pfizer liable for such conduct, but can consider such evidence only on the nebulous issues of duty and intent.  Juries simply cannot be expected "'to perform humanly impossible feats of mental dexterity.'"  *United States v. Basciano*, No. 05-CR-060, 2007 WL 3124622, at *3 (E.D.N.Y. Oct. 23, 2007) (quoting *United States v. McDermott*, 245 F.3d 133, 139-40 (2d Cir. 2001)).

All of the concerns expressed by the Supreme Court in *Philip Morris* and *Campbell* are present here.  First, there is the very real risk that the jury will impose liability based upon conduct for which Defendants have already been punished.  *See Campbell*, 538 U.S. at 423. Second, allowing liability to be imposed based upon conduct that did not cause harm to the plaintiff is too standardless and arbitrary to comport with due process.  *See Philip Morris*, 549

U.S. at 354.[3]  Finally, requiring a defendant to defend against not only the plaintiff's case, but causally unconnected conduct stretching over a lengthy period of years imposes an impossible burden on a defendant, effectively depriving it of an opportunity to present a full and complete defense.  *See id.* at 353-54

Moreover, it is a longstanding tenet of the law that a jury may not impose liability based upon the perceived character of the defendant or based upon a belief that a defendant had a propensity to act a certain way.  Thus, the Federal Rules exclude character and propensity evidence.  *See* Fed. R. Evid. 404.  Again, the Supreme Court has explained that this issue transcends concerns of relevance and prejudice; it implicates fundamental due process rights of a defendant:

> A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business.  Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis . . . .

*Campbell*, 538 U.S. at 423.

The due process concerns are magnified here where the evidence sought to be excluded is a criminal plea.  The First Circuit has acknowledged the enormous potential for prejudice in these circumstances.

> [E]vidence of a judicial determination of prior illegal conduct on the part of the defendant cannot help but have a great emotive impact on a jury.  As Wigmore states: 'The deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught is a tendency which cannot fail to operate with any jury, in or but of court.'

*See Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449, 459 (1st Cir. 1963).  Where, as here, the jury is unlikely to understand the limited scope of the plea, the risk is even greater.

Warner-Lambert pleaded guilty to two strict-liability, misdemeanor violations under the

---

[3] *Accord BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996).

Food, Drug, and Cosmetic Act ("FDCA") related to its marketing of Neurontin between April 1995 and August 1996.  Off-label marketing, outside of certain safe harbors created by the Food and Drug Administration ("FDA"), constitutes a violation of the FDCA, 21 U.S.C. §§ 301 to 399a, regardless of (1) the efficacy of the drug, (2) the safety of the drug,[4] or (3) the truth or falsity of any statements made by the manufacturer to the physician.[5]  The plea is not evidence that Warner-Lambert acted fraudulently or intentionally,[6] that Neurontin is unsafe, or that the Neurontin label should have had a suicide warning.[7]

The labeling question in the instant action is whether the Neurontin label in 2004 was inadequate because it did not contain a warning against suicidal behavior − a question not addressed by the plea at all.  In fact, after the plea was entered, the FDA approved a revised Neurontin label *without a suicide warning*.  There can be no more potent evidence that the plea had nothing to do with the presence or absence of a suicide warning.  But this distinction will be lost on the jury if it is permitted to hear witness after witness be questioned about document after document regarding off-label marketing and the plea.  In *Campbell*, the Supreme Court rejected the plaintiffs' attempt to equate the insurer's handling of first-party claims with its settlement practices with respect to third-party claims.  *See Campbell*, 538 U.S. at 423-24.  The proffered nexus between off-label marketing and the adequacy of the label in this case is even more tenuous.

---

[4] *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001) ("[T]he 'FDA itself recogniz[es] the value and propriety of off-label use[.]'") (citation omitted).

[5] *See In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 92 & n.6 (D. Mass. 2007); Mem. & Order [1780], at 37-38 (D. Mass. May 13, 2009).

[6] In its summary of the elements of the counts, the court that accepted the plea specifically noted that scienter was not an element.  (Tr. of 6/7/04 Waiver, Change of Plea and Sentencing Hr'g at 10:4-9.)

[7] Although the specific violations to which Warner-Lambert pleaded guilty were misdemeanors, the conduct was elevated to felony status because of a previous agreement between Warner-Lambert and the government in an unrelated matter years earlier.  (*Id.* at 6:22-7:15.)  There is no conceivable relevance to the amount paid by Warner-Lambert and Plaintiff and his attorneys should not be allowed to disclose that amount to the jury.

That the evidence is being offered in this case for an improper purpose is evident. For example, in his opposition to Defendants' motion in limine seeking exclusion of the plea, Plaintiff reveals his intent to mislead the jury by suggesting that Warner Lambert was found guilty of failing to include a suicide warning on its label. (*See* Section III below.) And, the fact that Plaintiff's lead witness is not anyone who can testify to Susan Bulger's medical history or the circumstances and causes of her death, but someone who worked at Parke-Davis *for four months in 1996* speaks volumes of Plaintiff's strategy of misdirection. The concern here is not merely a question of relevance and prejudice (although those questions are substantial in themselves); to allow the jury to impose liability based upon conduct that did not cause the injury to Plaintiff (which is exactly what Plaintiff is trying to do) will result in a denial of Defendants' due process rights.

## II.    The Plea Is Not Relevant To Any Issue The Jury Will Be Asked To Decide

### A.    The Plea Is Not Relevant To Intent

The Court has stated that evidence of off-label marketing is relevant to two issues: duty and intent. Upon careful scrutiny, neither supports the admissibility of the evidence. The slender reed providing the rationale for admission of the evidence cannot withstand the weight of the extreme prejudice posed by the evidence, especially the prejudice presented by the criminal plea.

Initially, as discussed above, the misdemeanors to which Warner-Lambert pled guilty were strict-liability crimes. No inference of intentional conduct can be drawn from the plea. Moreover, the fact that the plea was based on conduct occurring between 1995 and 1996 renders it too remote to be probative of any alleged intent on the part of Defendants in 2002 through 2004.

Moreover, courts, including the Supreme Court, have rejected attempts to justify introduction of prejudicial evidence of alleged conduct that did not cause harm to plaintiff on the grounds that it was evidence of intent. For example, in *State Farm*, the Supreme Court rejected the plaintiffs' argument that the evidence at issue went to motive. *See State Farm*, 538 U.S. at

422.  The plaintiffs argued that the evidence was probative of a general scheme to reduce the amount of money paid to claimants, both as a result of first-party and third-party claims.  *See id.* at 423-24.  Liability should have been imposed only for the conduct that harmed the plaintiffs. The trial court committed error when it allowed the plaintiffs to use the case "as a platform to expose, and punish, the perceived deficiencies of State Farm's operations throughout the country."  *Id.* at 420.

Likewise, Federal Rule of Evidence 404(b) does not create such a gaping exception as to render the rule a hollow pronouncement.  Indeed, courts have repeatedly held that Federal Rule of Evidence 404(b) does not permit evidence of prior alleged bad acts in order to show *generalized intent* to commit the act at issue in the litigation.  *See, e.g.*, *Fisher v. Am. Gen'l Fin. Co.*, 52 Fed. App'x 601, 606-07 & n.3 (4th Cir. 2002) (per curiam) (evidence that defendant's employees routinely fabricated personal property descriptions on loan applications was relevant only of a generalized intent to commit dishonest acts and, therefore, inadmissible under Fed. R. Evid. 404(b); *Crawford v. Yellow Cab Co.*, 572 F. Supp. 1205, 1208-09 (N.D. Ill. 1983) (rejecting argument that evidence of other bad acts was admissible to prove that the defendant's actions were "consistent with its corporate practice and policy of indifference to the duty to safely entrust vehicles").

As the Third Circuit has explained, "a proponent's incantation of the proper uses of [Rule 404(b) evidence] . . . does not magically transform inadmissible evidence into admissible evidence."  *See Becker v. ARCO Chem. Co.*, 207 F.3d 176, 191 (3d Cir. 2000) (citation omitted). Rather, the relevance of the evidence must be established by linking logical inferences to the specific facts at issue in the lawsuit.  At no point can one of the links be that the defendant had the propensity to act a certain way.  *See id.*  Here, the evidence is not proffered to show a causal nexus to Plaintiff's injury − this Court has already held that there is none.  The evidence is offered only to show propensity, which Rule 404 (as well as the Supreme Court's decision in *Campbell*) does not allow.

Allowing Plaintiff to introduce evidence of off-label marketing is connected to the

Plaintiff's claim only through his allegation that the Defendants were motivated by profit to conceal the risks of Neurontin.  However, evidence that Warner Lambert pled guilty to two misdemeanor counts of off-label marketing (a strict liability offense) for conduct that occurred in 1995 and 1996 is not evidence of a specific intent  to conceal any health risks of Neurontin in 2002 and 2004.  Plaintiff's argument really is that Defendants were motivated to increase sales of Neurontin.  Initially, that Neurontin was a profitable drug is not disputed and, therefore, the purported probative value of the evidence is slight.  More importantly, a profit motive is too generalized an intent to justify the introduction of evidence of other conduct.  *See, e.g.*, *Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 440-41 (D.C. Cir. 1994) (holding that prior conduct evidence proffered to demonstrate, *inter alia*, "'greed,'" inadmissible under Fed. R. Evid. 404(b) because it was "only a shade less general than a claim that [the defendant] was a bad man").  In any event, any argument based upon an alleged motive to increase sales of Neurontin is not dependent upon proof that marketing was off-label.  Whether Defendants' marketing of Neurontin was within the regulatory safe harbors by which the FDA permits drug manufacturers to discuss research on off label uses with physicians is a complex and tangential issue that is not relevant to any issue in this lawsuit, including intent.

### B.      The Plea Is Not Relevant To Duty

The scope of a defendant's duty is an issue of law reserved to the Court.  *See Leavitt v. Brockton Hosp.*, 907 N.E.2d 213, 215 (2009).  To that extent, the jury need not hear any evidence on duty.

The only factual question that the jury will be asked to decide relevant to the issue of duty is whether, in 2002 and 2004, there was sufficient scientific evidence of an association between suicidal behavior and Neurontin to require a warning.  *See* 21 C.F.R. § 201.57(e) (2004).  The plea and off-label marketing will not assist the jury in answering this question.  Whether there was a duty in 2004 to include a suicide warning on the Neurontin label in this case does not arise by virtue of off-label marketing.  If the proof at trial demonstrates that there was insufficient evidence to support a suicide warning, even if the drug was being marketed off label,

it would not create a duty to warn.

In other cases, a jury might be asked to decide if it was foreseeable to a manufacturer that a drug would be prescribed off-label. However, the jury will not be asked to decide that question here because it is not in dispute. In other words, awareness of off-label use can, in appropriate cases, *negate* a misuse defense, but no such defense has been raised in the instant action. *See Knowlton v. Deseret Med., Inc.*, 930 F.2d 116, 119-23 (1st Cir. 1991); *McNeil v. Wyeth*, 462 F.3d 364, 369-70 (5th Cir. 2006); *Woodbury v. Janssen Pharmaceutica, Inc.*, No. 93 C 7118, 1997 WL 201571, at *8-9 (N.D. Ill. Apr. 10, 1997); *see also Peterson v. Parke Davis & Co.*, 705 P.2d 1001, 1003 (Colo. Ct. App. 1985) (holding that question of whether drug manufacturer was insulated from liability by physician's unforeseeable misuse of product was properly submitted to jury).

Pfizer does not contend that the prescription of Neurontin to treat Susan Bulger's pain was unforeseeable or that it constituted a misuse of the product. And Pfizer admits that it was aware in 2002 that Neurontin was being prescribed for off-label uses. Prejudicial evidence, especially where the evidence pertains to alleged prior bad acts of the defendant, cannot be introduced where the only conceivable relevance of the evidence (here, foreseeability of off-label use) is to negate a defense that has not been raised.

As the Supreme Court explained in *Philip Morris*, given the risk of unfairness, it is the trial court's responsibility to make sure that the jury answers "the right question, not the wrong one." 549 U.S. at 355. Here, the right questions are whether the Neurontin label should have contained a suicide warning and whether the absence of a warning caused the decedent's death. The plea and off-label marketing evidence will not help the jury answer those questions. Instead, Plaintiff hopes that the jury will be confused by such evidence so that it answers the wrong question. The only way to make sure that the jury answers the right question is to exclude the evidence.[8]

---

[8] *See United States v. Solorio-Soto*, 300 Fed. App'x 487, 488 (9th Cir. 2008) (holding that limiting instruction that prior bad acts evidence of similar crimes could only be used to show whether

*(cont'd)*

### III.    If the Plea Is Admitted, Plaintiff Should Be Precluded from Making Inaccurate and Improper Arguments About the Plea

For the reasons set forth above and in its motion in limine, Pfizer submits that the plea and related evidence should be excluded in its entirety at trial.  If, however, the Court allows the Plaintiff to introduce the plea, it should preclude Plaintiff from making improper arguments and characterizations about the plea.

The confusion that Plaintiff seeks to create is apparent from the arguments made by Plaintiff in opposition to Pfizer's motion to exclude the plea.  Plaintiff argued that the plea is evidence that the Neurontin label in 2004 lacked adequate directions for use.  (Pl. Opp. [1958] at 2-3.)[9]  Plaintiff's argument completely distorts the plea.  As the Information alleged, under the FDCA, a drug that is marketed off-label is considered misbranded because the label does not contain directions for use for the unapproved indications.  (Information [1900-1] ¶ 6.)  Although a separate count, the misbranding count of the Information still pertains only to off-label marketing within a specified time frame.  The plea, therefore, was not an admission that the label failed to disclose all risks for which there was reasonable scientific evidence or that the label should have contained a suicide warning.[10]  Plaintiff should not be allowed to grossly misrepresent the plea to the jury.

## CONCLUSION

For these reasons, the plea, as well as evidence of national marketing, should be excluded.

_____
*(cont'd from previous page)*
charged offense was committed "knowingly" was insufficient to cure prejudice).

[9] That Plaintiff intends to use the plea to support this patently impermissible argument is further confirmed by the Plaintiff's requested jury instruction, which would tell the jury that they must conclude that the label was inadequate based upon Warner-Lambert's plea.

[10] The Information is limited to the specific instances set forth therein.  Warner-Lambert's acknowledgement of the truth of the facts contained in the Information is equally limited to those specific instances.  Warner-Lambert has denied, and Pfizer continues to deny, the existence of any intentional nationwide scheme to promote Neurontin for off-label use, a fact that is consistent with the scope of the guilty plea and accompanying Information.

Dated: July 27, 2009                    Respectfully submitted,

                                        SKADDEN, ARPS, SLATE,
                                          MEAGHER & FLOM LLP

                                        By:      /s/ Mark S. Cheffo
                                                 Mark S. Cheffo

                                        Four Times Square
                                        New York, NY 10036
                                        Tel:  (212) 735-3000

                                                 -and-

                                        BOIES, SCHILLER & FLEXNER LLP

                                        By:      /s/ William S. Ohlemeyer
                                                 William S. Ohlemeyer

                                        333 Main Street
                                        Armonk, NY 10504
                                        Tel: (914) 749-8200

                                                 -and-

                                        SHOOK, HARDY & BACON L.L.P.

                                        By:      /s/ Scott W. Sayler
                                                 Scott W. Sayler

                                        2555 Grand Blvd.
                                        Kansas City, MO 64108-2613
                                        Tel:  (816) 474-6550

                                                 -and-

WHITE AND WILLIAMS LLP

By:    /s/ David B. Chaffin
        David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

*Attorneys for Defendants Pfizer Inc and*
*Warner-Lambert Company LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 27, 2009.

    /s/ David B. Chaffin
    David B. Chaffin