UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------x
:
In re:  NEURONTIN MARKETING, SALES          : MDL Docket No. 1629
          PRACTICES AND PRODUCTS            :
          LIABILITY LITIGATION              : Master File No. 04-10981
---------------------------------------------------------x
                                            : Judge Patti B. Saris
THIS DOCUMENT RELATES TO:                   :
                                            : Magistrate Judge Leo T.
ALL ACTIONS                                 : Sorokin
                                            :
                                            :
                                            :

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO VACATE RESTRAINING ORDER**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") respectfully submit this memorandum in support of their motion to vacate the restraining order prohibiting any contact by Pfizer or any investigator for Pfizer with non-party witness David Franklin.

**PRELIMINARY STATEMENT**

In issuing the restraining, or "stay-away," order on July 29, 2009, this Court recognized that it had heard only one side of the story – Mr. Franklin's – and that Pfizer could submit papers to clarify the record and move to vacate the order.  (*See* 7/29/09 Hr'g Tr. [2052] at 15-17.)  An accurate statement of the facts, as set forth in the accompanying Declaration of James F. Danforth, confirms that a restraining order involving Mr. Franklin is unwarranted and unnecessary.

As this Court is aware, both Plaintiffs and Defendants have routinely used investigators in this litigation.  Pfizer certainly did not, as Mr. Franklin told this Court, "send[] a thug to [his] home to wave at the window at [his] eight-year-old daughter."  (7/29/09 Hr'g Tr. [2052] at 13:16-17.)  Mr. Danforth is a 54-year-old former police officer and an experienced and highly regarded licensed professional detective and investigator.  On the afternoon of Monday, July 27,

he made a brief and unobtrusive attempt to contact Mr. Franklin simply to determine whether he was available to speak with counsel for Defendants. Mr. Danforth did not know, and had no basis to know, that Mr. Franklin was represented by counsel in connection with this personal injury litigation, which comes years after the separate Neurontin qui tam litigation in which he was a party. Mr. Danforth properly identified himself to Mr. Franklin's wife as a detective who was working with counsel for Pfizer in the case of *Bulger v. Pfizer*, and promptly left Mr. Franklin's property after his wife indicated that neither she nor Mr. Franklin would speak with him and that he should leave. (*See* Exh. A, Danforth Decl., at ¶¶ 12, 17.)

As Mr. Danforth's Declaration establishes, the facts surrounding his brief contact with Mr. Franklin and his wife are not as Mr. Franklin represented them before this Court. Nor was Mr. Franklin's claimed reaction of fear reasonable based on the facts. Rather, it appears that Mr. Franklin's exaggerated account was calculated to inflame the jury against, and attract negative media attention to, Pfizer. Indeed, as soon as they had dismissed the *Bulger* case on July 29, Plaintiff's lawyers began giving interviews to the press about Mr. Franklin's testimony about Mr. Danforth, undoubtedly to distract the media from the fact that Plaintiff had just dismissed the case with prejudice after only one day, and to divert questions about who paid the minor Plaintiff and why Ronald Bulger, Jr.'s claims were dismissed by Plaintiff David Egilman without any payment to him.

The corrected record confirms that a restraining order against Pfizer and Mr. Danforth, based solely on Mr. Franklin's inaccurate representation of the facts and unfounded claims of fear for his family, is not warranted and is likely only to unfairly impact the reputation and livelihood of Mr. Danforth. Moreover, the order is unnecessary. Although Pfizer believes Mr. Danforth had the right to determine whether Mr. Franklin was available and to ask to speak with him based on his reasonable understanding that he was not represented by counsel in this litigation, Pfizer will, consistent with this Court's guidance, contact Mr. Franklin only through the counsel he subsequently designated (Thomas Greene), and Mr. Danforth will not attempt to contact Mr. Franklin or his family.

**RELEVANT FACTS**

On July 20, 2009, counsel for Plaintiff in *Bulger* indicated that Mr. Franklin, a non-party, may be called as a live witness at trial the following week.  (*See* 7/20/09 Hr'g Tr. [2032] at 11:16-18.)  In an effort to identify Mr. Franklin's contact information and determine, before the start of trial, whether he was available to testify, Pfizer retained the services of Mr. Danforth, a licensed private detective.

Mr. Danforth is a graduate of Merrimack College in Andover and a former U.S. Marine. He served as a federal agent and a detective and officer in the Fort Lauderdale Police Department before becoming a licensed detective and private investigator in Massachusetts 1994.  (Danforth Decl. ¶¶ 3-5.)  He has served as a consultant and provided expert testimony in civil and criminal cases.  (*Id.* ¶ 5.)  Mr. Danforth has never been the subject of any sanction, reprimand, censure, investigation, or charge in connection with his work as a private investigator, and has never before been the subject of a restraining order.  (*Id.* ¶ 6.)  He has never, to his knowledge, been described as having a threatening, intimidating, or menacing appearance or demeanor.  (*Id.* ¶ 7.)

Mr. Danforth went to Mr. Franklin's home in the afternoon on July 27 after he was unable to confirm, through searches of publicly available records, a business or home telephone number for him.  (*Id.* ¶¶ 9-17.)  Mr. Danforth had also been unable to confirm Mr. Franklin's address or contact him by telephoning Ann Laquerre, a Massachusetts attorney whom Mr. Danforth believed was possibly, and who indeed is, Mr. Franklin's wife.  (*Id.* ¶¶ 11-13.)  Mr. Danforth had told Ms. Laquerre over the phone that he was a private detective working for several law firms representing Pfizer in connection with a federal case and that he was trying to locate a possible witness named David Franklin.  (*Id.*)  During two telephone conversations with Mr. Danforth, Ms. Laquerre never confirmed that Mr. Franklin was her husband, never advised Mr. Danforth that Mr. Franklin was represented by counsel, and never told Mr. Danforth that she had given Mr. Franklin the message and that Mr. Franklin did not want to speak to him.  (*Id.*)

When he attempted to contact Mr. Franklin at his home, Mr. Danforth was wearing typical workday professional clothing.  (*Id.* ¶ 15.)  When he arrived at the house, Mr. Danforth

parked on the street, in a large space between the driveway to Mr. Franklin's house and the house next to it, and made sure that his car was *not* blocking either driveway. (*Id.* ¶ 14.) After confirming with a neighbor who was standing outside that he had found the correct address for Mr. Franklin, Mr. Danforth walked to the front door of the Franklin residence, rang the doorbell, presented his business card through the window to Ms. Laquerre, and indicated, through the door, that he was there to speak with Mr. Franklin, if he was available. (*Id.* ¶ 17.) Ms. Laquerre responded that she had called the police. Mr. Danforth then left his business card in the door, returned to his car, stood outside his car briefly to call David Chaffin, counsel for Defendants, and then drove away. (*Id.* ¶¶ 17-18.) When Mr. Danforth encountered a police car driving towards Mr. Franklin's street, he waved the car down, provided identification and his business card to the officer, and explained that he was a detective and private investigator and had been trying to speak with Mr. Franklin at his house. (*Id.* ¶ 18.) The officer called Mr. Danforth a short time later, after speaking with Mr. Franklin or his wife, and Mr. Danforth advised the officer that he would have no further contact with Mr. Franklin, and should it become necessary to contact Mr. Franklin in the future, he would contact the officer or one of his colleagues to accompany him. (*Id.*) Mr. Danforth did not make any further attempt to contact Mr. Franklin and will not attempt to contact him or anyone in his family in the future. (*Id.* ¶¶ 18, 20.)

Mr. Danforth has attested:

> I take my work and reputation as a meticulous, reliable, and law-abiding licensed private detective and investigator very seriously and am very concerned about the entry of a restraining order by this Court in connection with my attempt to contact David Franklin. I was stunned to read what Mr. Franklin said about my conduct and interaction with Ann Laquerre. I do not feel that I did anything improper or unusual in my attempt to contact Mr. Franklin. I acted professionally at all times and followed the normal standards and procedures that I use in attempting to contact any witness. I never acted hostilely or with malice. I never threatened or harassed Ms. Laquerre, Mr. Franklin, or anyone in their family. I never told Ms. Laquerre that I knew everything there was to know about her or her family or that I knew the location of their daughter in college. What I told Ms. Laquerre is that I knew that she and Mr. Franklin had resided in the same household and that they shared business interests, in the hope of gaining her cooperation.

(*Id.* ¶ 2.)

## ARGUMENT

### THE RESTRAINING ORDER SHOULD BE VACATED BECAUSE IT IS UNWARRANTED AND UNNECESSARY AND WILL CAUSE UNDUE REPUTATIONAL HARM TO THE INVESTIGATOR

As set forth in Mr. Danforth's Declaration, his brief, non-threatening attempt to speak with Mr. Franklin during the afternoon of July 27, does not warrant the broad restraining order this Court imposed against Pfizer.

Mr. Franklin is a non-party whom Plaintiff in *Bulger* indicated, a week before the start of trial, may appear as his first live witness at trial. Pfizer had no knowledge or reason to believe that Mr. Franklin was represented by counsel in connection with *Bulger* or with the Neurontin personal injury litigation in general. Massachusetts' Rules of Professional Conduct do not prohibit counsel in a matter, or their agents, from communicating with non-party witnesses who are not known to be represented by an attorney in the matter. *See* Mass. R. Prof. C. 4.2, 4.3. The Comments to Rule 4.2 expressly provide that the Rule applies only to communications with a person "who is represented by counsel *concerning the matter to which the communication relates*," and that it "does not prohibit communication with a represented person . . . *concerning matters outside the representation*." Mass. R. Prof. C. 4.2, Comments [1], [3] (emphasis added).

That Mr. Franklin was represented by counsel as the plaintiff-relator in a False Claims Act qui tam action against Pfizer filed more than a decade ago certainly did not put Pfizer on notice that Mr. Franklin was, or believed he was, represented by counsel in any Neurontin-related proceeding, no matter how remote in time or subject matter from the qui tam case. There is still no evidence he is represented in this litigation. Mr. Franklin himself testified that he was subpoenaed as a non-party to appear at trial in *Bulger*. (*See* 7/28/09 Hr'g Tr. [2051] at 94:22.) Mr. Danforth's effort to speak with Mr. Franklin, which included his disclosure to Mr. Franklin's wife, the only person with whom he had contact, that he was an investigator working for law firms representing Pfizer in the *Bulger* action, was thus plainly appropriate under the rules.

5

This Court has recognized that the parties in this litigation should be permitted to employ private detectives and investigators to investigate and speak with non-party witness. Indeed, counsel for Plaintiff in *Bulger* sought and received the Court's permission to contact and investigate even fact witnesses who had been subject to intimidation by Ronald Bulger, Sr., which led to a restraining order against him. (*See, e.g.*, 7/08/09 Hr'g Tr. [1981] at 24:11-17 ("Mr. Soh [counsel for Plaintiff]: Will our investigator be able to talk to investigate [facts related to the non-party witnesses.] The Court: Yes. . . . You can have your investigator investigate whatever you want now."); *see also id.* at 19:24-20:1 ("The Court: . . . Then you both can discuss this with Mr. Bulger and get your own private eye to do whatever investigation they think is appropriate.").)[1] *Cf. Clark v. Beverly Health*, 797 N.E.2d 905, 910 (Mass. 2003) ("Courts have long recognized that informal interviews are an exceptionally efficient means for the meaningful gathering of facts."). Plaintiff provided no reason for finding that the Court's approval of investigator contact with non-party witnesses should not extend to Mr. Franklin. In fact, although Mr. Franklin professed shock and outrage before the jury that there had been an effort to contact him as a witness in the Neurontin litigation, he told the Court the next day that he had told his lawyer that he would "talk to anybody." (*See* 7/29/09 Hr'g Tr. [2052] at 16:20-17:3.)

Mr. Danforth's sworn declaration confirms that he followed standard protocols in attempting to contact Mr. Franklin, that he did not engage in the hostile and threatening conduct of which he has been accused, and that Mr. Franklin's professed fear was not rational. To retain this restraining order would unjustly credit Mr. Franklin's exaggerated, inaccurate, and damaging account of Mr. Danforth's actions and unfairly impact Mr. Danforth's reputation and career as an honest and highly professional and competent private detective and investigator. If it would be

---

[1] The Court also indicated that it was not inclined to admit testimony by those witnesses about the alleged acts of intimidation by Mr. Bulger or persons acting on his behalf (*see* 7/8/09 Hr'g Tr. at 16:11-21:5), and counsel for Plaintiff specifically sought clarification on and agreed with this. (*See id.* at 20:13-14 ("Mr. Oliver: I don't think it would be appropriate for us to raise the protection issue or any of that . . . .").) That Plaintiff proceeded to lead off his case against Pfizer with testimony from Mr. Franklin about alleged witness intimidation thus seems more than a little disingenuous.

helpful for the Court, Mr. Danforth is available and willing to appear and testify at the Court's convenience.

Moreover, Pfizer has agreed that it will not directly contact, or attempt to contact, Mr. Franklin or any member of his family in the future. Rather, pursuant to Mr. Franklin's request in Court, Pfizer will contact counsel Thomas Greene, who represented Mr. Franklin in connection with the qui tam action. Accordingly, a restraining order prohibiting direct contact by Pfizer or any representative of Pfizer with Mr. Franklin is unnecessary.

## **CONCLUSION**

For all the foregoing reasons, Pfizer respectfully requests that this Court vacate the restraining order prohibiting any contact by Pfizer or any investigator with Mr. Franklin.

Dated: August 9, 2009

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

    -and-

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
    William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

    -and-

        SHOOK, HARDY & BACON L.L.P.

        By: /s/ Scott W. Sayler
            Scott W. Sayler

        2555 Grand Blvd.
        Kansas City, MO 64108-2613
        Tel:  (816) 474-6550

          -and-

        WHITE AND WILLIAMS LLP

        By: /s/ David B. Chaffin
            David B. Chaffin

        BBO # 549245
        100 Summer Street, Suite 2707
        Boston, MA 02110
        Tel:  (617) 748-5200

        Attorneys for Defendants Pfizer Inc and
        Warner-Lambert Company LLC

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on August 10, 2009.

        /s/ David B. Chaffin
        David B. Chaffin