Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 <br><br> Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | Judge Patti B. Saris <br><br> Magistrate Judge Leo T. Sorokin |

## DECLARATION OF JAMES F. DANFORTH

I, James F. Danforth, declare as follows:

1. I am a private investigator and detective based in Wenham, Massachusetts. I have provided investigative services on behalf of counsel for Defendants in this litigation. The following statements are within my personal knowledge and, if sworn as a witness, I could and would testify competently thereto.

2. I take my work and reputation as a meticulous, reliable, and law-abiding licensed private detective and investigator very seriously and am very concerned about the entry of a restraining order by this Court in connection with my attempt to contact David Franklin. I was stunned to read what Mr. Franklin said about my conduct and interaction with Ann Laquerre. I do not feel that I did anything improper or unusual in my attempt to contact Mr. Franklin. I acted professionally at all times and followed the normal standards and procedures that I use in attempting to contact any witness. I never acted hostilely or with malice. I never threatened or harassed Ms. Laquerre, Mr. Franklin, or anyone in their family. I never told Ms. Laquerre that I knew everything there was to know about her or her family or that I knew the location of their daughter in college. What I told Ms. Laquerre is that I knew that she and Mr. Franklin had resided in the same household and that they shared business interests, in the hope of gaining her cooperation.

3.	I am 54 years old. I have a Bachelor of Science degree from Merrimack College in Andover, Massachusetts, and served as a captain in the U.S. Marine Corps, from which I received an honorable discharge in 1979. From 1979 to 1983, I was a federal agent for the Department of Defense. I received a number of awards in connection with my service as a Marine and federal agent, including the National Defense Service Medal, U.S. Expeditionary Forces Medals, a Navy Commendation Medal, and a Presidential Unit Citation.

4.	From 1983 to 1994, I was a detective and officer in the Fort Lauderdale Police Department. As an officer, I developed and implemented the Community Policing concept in Fort Lauderdale and received promotional assignments as well as numerous departmental and civilian letters of commendation and appreciation. I retired as a police detective and officer after I was injured in the line of duty.

5.	From 1994 to the present, I have worked as a licensed detective and private investigator for, and managed all detectives employed by, Central Investigative Services. Private detective work and investigation is a profession regulated by Massachusetts state law. As a detective and investigator, I conduct professional investigations in all areas of civil and criminal law and coordinate surveillance operations, with a particular adherence to the laws governing private detectives and investigators and to safety and security protocols and objectives. I have also provided expert testimony and consultation as both an investigator and a traffic accident reconstructionist. I am a member of a number of professional associations, including the Licensed Private Detectives Association of Massachusetts, Intelnet Investigative Association, National Association of Professional Accident Reconstructionists, and the Fraternal Order of Police. A copy of my CV is attached as Exhibit 1.

6.	I have never been the subject of any sanction, reprimand, censure, investigation, or charge in connection with my work as a private investigator or otherwise. To the contrary, my work has consistently earned praise and approval from clients, law enforcement officers, and judicial officers. I have never before been the subject of a restraining order.

7.To my knowledge, I have never been described as having a threatening, intimidating, or menacing physical appearance or demeanor. I am approximately 5 feet 9 inches tall and weigh 205 pounds. I have short brown hair. I am clean shaven and when I am working as an investigator, my manner of dress is always professional casual or business casual clothing. A current photograph of myself is attached as Exhibit 2.

8.During the week of July 20, 2009, I was asked by counsel for Defendants to assist with locating a potential witness, David P. Franklin. It has been my experience as a detective and private investigator that parties in litigation regularly retain investigators to serve papers, interview non-party witnesses, and determine the availability of witnesses.

9.Mr. Franklin's current home and business telephone numbers and addresses were not readily identifiable from the searches of publicly available documents I conducted. Instead, I found one potential telephone contact number and several potential addresses based on publicly available records.

10.After advising counsel for Defendants that I had not been able to confirm Mr. Franklin's current address and contact information, but that I had identified several possible addresses, I attempted to confirm his address by trying the telephone number and addresses I had identified. I also understood that if I were able to contact Mr. Franklin, I was permitted to ask him if he would be willing to speak with the attorneys for Defendants.

11.At approximately 9:30 a.m. on Monday, July 27, 2009, I called the listed telephone number for Ann M. Laquerre. This number is listed on the website of the Massachusetts Board of Bar Overseers. Ann M. Laquerre is a Massachusetts attorney whom my public records search indicated shared addresses and business ownership interests with David P. Franklin, and whom I thought may be Mr. Franklin's spouse, former spouse, or relative, and may know his current location. Since the phone number was publicly listed on the Massachusetts Board of Bar Overseers (*see* Exhibit 3), it was my understanding that it was a business number, not a cellular phone number. When I called the number, I reached an answering machine or

voicemail message by Ms. Laquerre. I left a message providing my name and telephone number and identifying myself as a detective. I stated that I was looking for a witness in connection with a federal case and asked Ms. Laquerre to please return my call and that I would provide further details upon hearing from her.

12. At approximately 10:00 a.m. the same morning, Ms. Laquerre returned my call. I apologized for disturbing Ms. Laquerre and told her that I was a private detective working for several law firms representing Pfizer in connection with a federal lawsuit, *Bulger v. Pfizer*, and was trying to locate a possible witness named David Franklin. Ms. Laquerre responded that she had nothing to say to me and hung up.

13. Because Ms. Laquerre was the only connection I had to Mr. Franklin at this time, and having no idea as to why Ms. Laquerre terminated our conversation, I called her back approximately thirty minutes later. I told Ms. Laquerre that I was very sorry for bothering her but that I was trying to locate and speak with Mr. Franklin and that she was the only contact I had for him. At this time, Ms. Laquerre acknowledged that she knew Mr. Franklin and stated that she would try to pass on my message asking him to contact me, but she could not guarantee she would be able to reach him so she would not make any promises. Ms. Laquerre never indicated what her relationship was with Mr. Franklin and I never knew if they were married, divorced, or otherwise related. Before terminating our conversation, I apologized for any inconvenience I may be causing Ms. Laquerre and I stated that if I did not hear back from Mr. Franklin, then I would need to try to locate him at the addresses I had identified, and that if that meant inconveniencing her further, then I was very sorry.

14. After waiting several hours without hearing from Mr. Franklin, and without having any other means to contact him, I continued my diligence by driving to one of the addresses I had identified as the possible residence of Mr. Franklin. I arrived around 3:15 p.m. in the afternoon and parked my car in the street, in an area that bordered on solid land lying between the driveway of 12 Andrea Drive and the-next door neighbor's driveway. There was ample space between the two driveways and I made sure that my car was not blocking either

4

driveway. It has never been my practice, in the course of my investigative work, to block a person's driveway.

15. I was dressed professionally, wearing a blue blazer, khaki slacks, and a blue sports shirt. I accessorized with penny loafers and a pair of thin-framed sport sunglasses, which I later removed from my face when I approached the home. Mr. Franklin's characterization of my appearance is simply not accurate.

16. After exiting my car, I observed a gray BMW parked in the driveway of the residence, parked facing the third garage bay door. I could not observe the license plate and I wanted to try to verify the residence before I attempted contact, so I walked down the neighbor's driveway, along the property line until I reached a point adjacent to the rear of the parked vehicle. Looking through the large Hemlock trees lining the property line, I verified that it was a vehicle registered to one of the business addresses for Mr. Franklin.

17. As I walked back up to the street, I saw a woman standing outside of her home, two houses further down the street, past 12 Andrea, speaking with her landscaping workers. I walked over to the woman's driveway and asked this woman if she could tell me where David Franklin lived. The woman pointed back down the street and stated that, "Oh David, that is his house over there, the other yellow house." I then walked back to that house and down the driveway to the front door. I rang the doorbell and retrieved a business card from my wallet. I heard voices inside and a woman came to the door but did not open it. I held up my business card to the window next to the door. The woman looked at the card and told me, through the window, that she had nothing to say to me. I recognized her voice as the woman I had spoken with on the telephone, Ms. Laquerre, and told her that I was there to speak with Mr. Franklin, if he was available. Ms. Laquerre responded that she had called the police. I left my business card in the front door and walked back to my car.

18. After leaving Mr. Franklin's residence, I stood outside my car briefly in order to call one of the counsel for Defendants, David Chaffin. I advised Mr. Chaffin that I had attempted to contact Mr. Franklin at his home but had been unsuccessful. After driving out

of the immediate neighborhood and upon reaching a point two streets away, I saw a police patrol car headed towards Mr. Franklin's street. I immediately flagged the patrol car down, provided my identification to the officer, who stayed in his car, and explained that I was a private detective and had been trying to contact Mr. Franklin at his house. The officer confirmed that he was responding to a call from Ms. Laquerre at that residence. I gave the officer my card and offered to provide any additional information he might require. Approximately twenty minutes later, the officer called me and said that he had spoken to Mr. Franklin at the house, that Mr. Franklin told him he was a witness in a federal case in which he was planning to testify the next day. I told the officer that under the circumstances, I would have no further contact with Mr. Franklin and should it become necessary to contact Mr. Franklin in the future, I would be happy to contact the officer or one of his colleagues to accompany me. I did not make any further attempt to contact Mr. Franklin.

19. It is my belief that the facts relating to my attempt to contact Mr. Franklin have been greatly distorted to create a false impression. I was not hired to intimidate anyone. Mr. Franklin's account of the events turns a routine contact into something it was not.

20. I understand that the Court has directed that any communications with Mr. Franklin be done through Mr. Franklin's counsel. I will certainly adhere to that order.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 9, 2009

                                                                       James F. Danforth

Exhibit 1

# JAMES F. DANFORTH

## PROFESSIONAL EXPERIENCE

**CENTRAL INVESTIGATIVE SERVICES**                               1994 - Present

**Private Investigator / Detective:**    Conduct professional investigations in all areas of civil and criminal law.  Coordinate surveillance operations with specific adherence to safety and security.  Offer expert testimony and consultation as both an Investigator and Traffic Accident Reconstructionist.  Manage all detective operatives employed by Central Investigative Services, while maintaining professional licensing and certifications.

**FORT LAUDERDALE POLICE DEPARTMENT**                            1983 – 1994

**Detective / Officer:**    Conducted criminal investigations related to; homicide, aggravated battery, sexual battery, robbery, burglary, fraud, auto theft and traffic homicide.  Responsibilities included many special undercover assignments in narcotics and street crime units.  Developed and implemented the Community Policing concept in Fort Lauderdale.  Member departmental Special Weapons Assault Team.  Received promotional assignments as well as more than 50 departmental and civilian letters of commendation and appreciation.

**NAVAL INTELIGENCE**                                             1979 – 1983

**Federal Agent:**    Conducted criminal felony investigations and counter intelligence operations for the Department of Defense (DOD).  Responsible for all narcotics investigations in the Tri-State area of New York, New Jersey and Connecticut.  Analyzed multi-national corporations for fraud and contract irregularities.  Coordinated the joint efforts of federal, state and local law enforcement agencies during investigations.

**JOINT ANTI-TERRORIST TASK FORCE**                               1980 – 1983

**Special Agent – (Team Leader) Central Intelligence Agency:**    Responsible for hostage threat analysis, establishment of protective service details for senior military and civilian authorities in NATO, following the hostage taking and terrorist threats of these people in 1980.  Planned, coordinated and participated in the successful operations to rescue American hostages held by various international terrorist organizations including the rescue of General Dozier in 1981.  Assisted foreign intelligence agencies in their development, training and coordination of anti-terrorist efforts.  Received Navy commendation for participation in hostage rescue operations

## COURT EXPERIENCE

**Certified Expert:**  Broward County Courthouse, 17th Circuit Court   Florida
Lowell Superior Court, Middlesex County   Massachusetts
Lawrence Superior Court, Essex County   Massachusetts
Dedham Superior Court, Norfolk County   Massachusetts

**Certified Expert:**  United States Federal Courts   Florida, New York

Offered Expert Testimony in Criminal Investigations and Intelligence Operations.

## EDUCATION

BS Degree, Business Administration, Marketing   Merrimack College, Andover, MA  1972 – 1976

| SPONSORING AGENCIES | LAW ENFORCEMENT |
|---|---|
| Naval Intelligence | Federal Agents Basic School |
| New York City Police Department | Organized Crime |
| | Hostage Negotiation |
| | Vessel Identification & Smuggling Techniques |
| U.S. Treasury Department | Federal Law Enforcement Training Center |
| | Certified Federal Firearms Instructor |
| | Federal Unarmed Self-Defense Instructor |
| Naval Intelligence | Internal Security Counter Intelligence |
| Drug Enforcement Administration | Narcotics |
| Central Intelligence Agency | Terrorism |
| Criminal Justice Institute, Florida | Organized Crime |
| | Criminal Law |
| | Narcotics Enforcement |
| | Designer Drugs |
| | Tactical Police Driving |
| Institute of Police Technology and Management | Tactical Police Survival |
| Fort Lauderdale Police Department | Police Weaponry |
| | SWAT Operations |
| | Domestic Violence & Substance Abuse |
| | T.E.A.M. Leader / Facilitator |
| | Child Abuse |
| | Tough Communication for Tough Situations |
| | Code Enforcement |
| Licensed Private Detective Association | Surveillance |
| | Urban and Suburban Gangs of the 90's |
| | Investigating the Internet |
| | Accessing Public Records |
| | Continuing Education Seminar's 1995 - 2000 |
| Instructional Shooting Inc. | NRA Basic Pistol Marksmanship |
| | NRA Advanced Pistol Marksmanship |

## TRAFFIC ACCIDENT INVESTIGATION

| | |
|---|---|
| Fort Lauderdale Police Department | Police Law Institute |
| Criminal Justice Institute, Florida | At Scene Traffic Accident Investigation |
| | Advanced Traffic Accident Investigation |
| | Traffic Homicide Investigation |
| | Advanced Traffic Homicide Investigation |
| | Traffic Accident Reconstruction |
| Fort Lauderdale Police Department | D.U.I. Instruction |
| | Advanced D.U.I. Instructor Certification |
| Institute of Police Technology and Management | Investigation of Motorcycle Accidents |
| | Investigation of Pedestrian Accidents |
| | Computer Diagramming for Accident Reconstruction |
| Visual Statements | Computer Aided Design for Accident Reconstruction |

## ACCIDENT RECONSTRUCTION CERTIFICATION

Institute of Police Technology and Management     University of Florida
Criminal Justice Institute, Broward County, Florida
National Association of Accident Reconstruction Professionals

## MILITARY EXPERIENCE

Captain, United States Marine Corps          Honorable Discharge          1979

## AWARDS

National Defense Service Medal, Good Conduct Medal, U.S. Expeditionary Forces Medals, Navy Commendation Medal, Presidential Unit Citation

## PROFESSIONAL ASSOCIATIONS

Licensed Private Detectives Association of Massachusetts, Intelnet Investigative Association, National Association of Professional Accident Reconstructionists, International Association Accident Reconstruction Specialists, Fraternal Order of Police, United States Marine Corps League, Federal Firearms and Unarmed Self-Defense Instructor, Eagle Scout, Boy Scouts of America

## PUBLIC OFFICE

Commissioner, Beverly Municipal Airport, Beverly, Massachusetts
President, St. Vasilios Greek Orthodox Church

## PUBLICATIONS

Published a working handbook entitled "Fraud, The Handbook", a compilation of fraud indicators associated with various types of insurance related claims.

Exhibit 2



Exhibit 3

The BBOWEB database lookup by Last+F* name.

http://massbbo.org/bbolookup.php

New York City Map Portal   Arduino   erratica   Google Maps   Apple   Wikipedia   News▾   Popular▾   mac tips   My Delicious   gmail

# Massachusetts Board of Bar Overseers
## of the Supreme Judicial Court
99 High Street
Boston, Ma. 02110
### Attorney Status Report



### Ann M. Laquerre

617-512-4194
PO Box 134

Hopkinton MA 01748

Admitted to the bar on 1998-12-16
Current status is Active

Full office addresses listed for active status attorneys only.

This attorney has certified that he or she does not carry malpractice insurance because the attorney is solely employed either as a government lawyer or by an organizational client (such as a corporation).

This attorney has no record of public discipline.

Data as of 2009-08-07

**Click HERE to SEARCH AGAIN!**

**or HERE to return to the main page.**