UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ------------------------------------------------- x<br>NEURONTIN MARKETING, SALES PRACTICES, AND<br>PRODUCTS LIABILITY LITIGATION<br><br>------------------------------------------------- x<br>THIS DOCUMENT RELATES TO:<br><br><br>------------------------------------------------- x<br>HARDEN MANUFACTURING CORPORATION;<br>LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,<br>dba BLUECROSS/BLUESHIELD OF LOUISIANA;<br>INTERNATIONAL UNION OF OPERATING ENGINEERS,<br>LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL<br>52 HEALTH BENEFITS TRUST; GERALD SMITH; and<br>LORRAINE KOPA, on behalf of themselves and all others<br>similarly situated, v. PFIZER INC. and WARNER-LAMBERT<br>COMPANY.<br><br><br>------------------------------------------------- x<br>THE GUARDIAN LIFE INSURANCE COMPANY OF<br>AMERICA v. PFIZER INC. and<br>AETNA, INC. v. PFIZER INC.<br><br><br><br>------------------------------------------------- x | : MDL Docket No. 1629<br>:<br>: Master File No. 04-10981<br>:<br>:<br>: Judge Patti B. Saris<br>:<br>: Magistrate Judge Leo T.<br>: Sorokin |

**MEMORANDUM OF LAW IN OPPOSITION TO CLASS PLAINTIFFS' MOTION FOR
LEAVE TO FILE REPLY MEMORANDUM AND IN SUPPORT OF DEFENDANTS'
CROSS-MOTION FOR LEAVE TO FILE SURREPLY MEMORANDUM**

On June 18, 2009, Defendants submitted and served their memorandum in opposition to Plaintiffs' motion for reconsideration of this Court's order denying Plaintiffs' renewed motion for class certification. (Dkt. 1856-2.) More than six weeks later, on August 3, 2009, Plaintiffs have requested leave to file a 26-page reply memorandum. (Dkt. 2049 ("Pl. Mot. for Leave").) The proposed reply memorandum is defective in several respects, and Plaintiffs' request for leave to file it should therefore be denied.

# ARGUMENT

## I. The Proposed Reply Memorandum Is Untimely

There is no justification for Plaintiffs' six-week delay in seeking leave to file their proposed reply. Motions for reconsideration are "'not encouraged'" to begin with,[1] and courts plainly do not contemplate protracted and repetitive rounds of briefing in connection with such motions – which, by definition, address matters that have already been briefed and ruled upon.

Plaintiffs filed their motion for reconsideration on May 28, 2009. Defendants were prepared to file their opposition two weeks later, on the June 11, 2009, deadline. But on the afternoon of the due date for Defendants' opposition, Plaintiffs filed an "Errata" brief, ostensibly to correct various errors in their motion. (Dkt. 1827.) In reality, Plaintiffs' "Errata" brief added five pages of new argument without leave of Court. (*See id.*) This forced Defendants to request a one-week deadline extension in order to address these new arguments. (Dkt. 1829.) Defendants filed their opposition a week later, on June 18, 2009. (Dkt. 1856-2.) Thus, Defendants required only two weeks to respond to Plaintiffs' motion, but were forced to spend a third week redrafting their opposition in light of Plaintiffs' untimely "Errata" brief.

Plaintiffs have unilaterally arrogated more than *triple* the time allowed for nonmovants to file opposition briefs. *See* D. Mass. Local R. 7.1(b)(2) (opposition briefs must be filed "within fourteen (14) days after service of the motion"). Had Plaintiffs asked the Court up front to allow them more than six weeks in which to prepare and file a reply, they would have been hard pressed to justify their need for so much time. Plaintiffs apparently concluded that it is easier to ask for forgiveness than permission; the Court should grant neither.

## II. The Proposed "Reply" Memorandum Improperly Raises New Arguments and Seeks to Belatedly Cure Defects in Plaintiffs' Opening Brief

Rather than responding to new points raised in Defendants' opposition, Plaintiffs treat

---

[1] *See, e.g.*, *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 386 (S.D. Ill. 2008) (citation omitted).

their proposed "reply" as a do-over of their original brief.  They devote page after page of their proposed reply to self-indulgent rhetoric, including an introduction that reads like a political stump speech on health care reform, and lengthy block quotes that pointlessly direct the Court's attention to "words etched in stone on the courthouse walls."  (Dkt. 2049-2 ("Proposed Reply") at 1-3.)  And they argue that reconsideration is warranted based on purportedly "recent" (and inapposite) district court decisions decided long before Plaintiffs filed their opening brief, but which their opening brief does not discuss.  (*Id.* at 6, 9, 12.)[2]

Moreover, as Plaintiffs themselves concede, the primary purpose of their proposed reply is to attempt to correct deficiencies in their opening brief.  Plaintiffs purportedly "seek leave to reply to Defendants' argument that Plaintiffs do not meet the standard for reconsideration."  (Pl. Mot. for Leave at 2.)  But it was Plaintiffs' burden in the first instance to satisfy the stringent standards for reconsideration – "'an extraordinary remedy which should be used sparingly.'"  *Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006) (citation omitted).  Far from satisfying these standards, Plaintiffs' opening brief did not even address them.  (Dkt. 1928 ("Opp. to Reconsid. Mot.") § I.)  That Defendants' opposition brief pointed out this glaring deficiency is not grounds for filing a 26-page reply.  The purpose of a reply brief is to respond to points raised in the opposition, not to belatedly attempt to cure defects in the opening brief.  As one court explained:

> There will be instances, of course, when a movant should not be permitted to cure by way of reply what is in fact a defective motion . . . .  When this is the case the nonmovant can oppose the granting of leave and the court can deny permission to reply.

*Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 240 (N.D. Tex. 1991); *see also, e.g.*, *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 249 F.R.D. 530, 536 (N.D. Ill. 2008) ("Reply briefs are for replying, not for raising new arguments or arguments that could

---

[2] *See Robinson v. Fountainhead Title Group Corp.*, 257 F.R.D. 92 (D. Md. 2009) (decided April 21, 2009); *Spencer v. Hartford Fin. Servs. Group, Inc.*, 256 F.R.D. 284 (D. Conn. 2009) (decided March 10, 2009).

have been advanced in the opening brief."). The grounds for a party's motion must be stated up front, not reserved for reply. For this reason, arguments raised in reply briefs before a district court are waived for purposes of appeal.[3]

### III.   Plaintiffs Should Not Be Permitted To File A Reply Brief To Rehash Their Prior Arguments In Support Of Class Certification[4]

In addition to attempting to cure deficiencies in their opening brief, Plaintiffs devote substantial portions of the proposed reply to rehashing arguments that have already been made time and time again. Plaintiffs have plainly reached the "pound on the table" stage of legal argument, routinely employed by parties who have neither the law nor the facts on their side. While this style of argument is rarely instructive or helpful, it is particularly inappropriate in a *reply* brief (which cannot be filed as of right) in support of a motion for *reconsideration* (an extraordinary remedy to be used sparingly) of an order denying Plaintiffs' *renewed* motion for class certification. Plaintiffs have had ample opportunity to brief their class certification arguments, and should not be permitted to burden the Court with 26 pages of additional briefing on issues that have been repeatedly addressed.

Plaintiffs continue to seek to evade the effect of this Court's ruling that they cannot rely upon a fraud-on-the-market theory to establish causation. However Plaintiffs may re-cast their causation theory, it amounts to the same thing and cannot overcome the need for individual proof. As this Court explained, specifically with respect to the bipolar subclass that Plaintiffs' motion for reconsideration is directed at:

> [M]any doctors were not detailed, and even if they were, the plaintiffs would have

---

[3] *See Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("[T]he non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat th[ese] argument[s] as waived."); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (noting that issues are waived for appeal "when they are raised for the first time in motions requesting reconsideration or in replies to responses").

[4] A full discussion of Plaintiffs' arguments and authorities is beyond the scope of this brief. Should the Court permit Plaintiffs to file their defective reply, Defendants request leave to provide further analysis in a surreply brief. *See* Section II, *infra*.

> to demonstrate doctor-by-doctor that defendants' fraudulent misrepresentations or omissions during the off-label promotion caused the doctor to prescribe the medication. The model, while persuasive in the aggregate, cannot provide a shortcut for the indication-specific Consumer subclasses.

*In re Neurontin Mktg., Sales Practices, & Prods. Liab. Litig.*, 257 F.R.D. 315, 331 (D. Mass. 2009).

Unwilling to come to grips with this Court's analysis, Plaintiffs' proposed reply brief devotes page after page to a recapitulation of their argument that no reasonable physician would have prescribed Neurontin for bipolar disorder. Plaintiffs apparently believe that, if they can convince the Court that they will ultimately prevail on the merits of this action, the Court will grant class certification. While Pfizer has and will continue to respond in the appropriate contexts to Plaintiffs' merits-based arguments, they miss the point of class certification. While class certification issues "may inevitably overlap with some critical assessment regarding the merits of the case,"[5] a court's role is not to decide who will ultimately prevail in the litigation, but the extent to which reaching the end result will require consideration of individual issues. As one court has explained: "'[T]he preliminary inquiry into the merits [for class certification] is a more limited one, that has as its focus not the substantive strength or weakness of the plaintiffs' claims but rather whether the path that will need to be taken to decide the merits renders the case suitable for class treatment." *Humphrey v. Int'l Paper*, No. 02 C 4147, 2003 WL 22111093, at *3 (N.D. Ill. Sept. 11, 2003); *see also In re New Motor Vehicles Can. Export Antitrust Litig.*, 522 F.3d 6, 25 (1st Cir. 2008) (observing that "a district court must formulate some prediction as to how specific issues will play out") (citation omitted).

Thus, this Court properly considered, and rejected, Plaintiffs' reliance on a fraud-on-the-market theory, as that theory directly impacted the issue of whether individual evidence of causation would be required. *See New Motor Vehicles*, 522 F.3d at 25. However, now that it has been determined that the factfinder will need to hear and consider individual evidence about the

---

[5] *In re New Motor Vehicles Can. Export Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008).

factors that influenced each physician's decision to prescribe Neurontin, Plaintiffs cannot manufacture predominance simply by insisting that they will ultimately prevail on the issue of causation. In arguing that individual doctor testimony would be "unnecessary" and "fruitless" (Proposed Reply at 17), Plaintiffs apparently hope the Court will forget their prior concessions that "not all physicians who wrote Neurontin prescriptions for bipolar or other mood disorders were detailed" and that "***Defendants have the right to call individual physicians to testify that they prescribed Neurontin to treat bipolar based on something other than [the alleged] fraud.***" (Dkt. 1796 at 25 (emphasis added).) The fact that Plaintiffs believe they will be able to offer expert testimony that might convince a factfinder to disbelieve the individual testimony of a physician does not change the predominance calculus. An individual inquiry is still required. Throughout their opposition, Defendants explained why Plaintiffs' binding admissions are fatal to their motion. (Opp. to Reconsid. Mot. at 3, 14, 17-18). Unable to articulate any response, Plaintiffs' so-called "reply" simply ignores the issue.

Plaintiffs may disagree with psychiatrists' decisions to prescribe the drug for bipolar or mood disorders, but as discussed in Defendants' opposition – and ignored by Plaintiffs – this is ***not*** a medical malpractice case, and Plaintiffs cannot establish classwide causation based on what some hypothetical reasonable physician would have done. (Opp. to Reconsid. Mot. at 10.) Plaintiffs repeat their oft-stated mantra that "*there are no other factors* [besides fraud] that any minimally competent physician could have relied upon in writing a Neurontin prescription to treat bipolar and other mood disorders" and that any physician who did so "would violate the Hippocratic Oath." (Proposed Reply at 3.) But Plaintiffs fail to address the undisputed testimony of their own bipolar expert, who, despite disputing Neurontin's efficacy, prescribes Neurontin as adjunctive medicine for two of his bipolar patients. (Opp. to Reconsid. Mot. at 9-10; Barkin Dep. at 204:21-207:22, Ex. 1 to 6/18/09 Decl. of Mark Cheffo.) Plaintiffs' baseless theory thus explicitly depends upon the notion that their own bipolar expert is not a "minimally competent physician." Plaintiffs do not and cannot explain away this testimony, which vividly illustrates the extent to which their argument rests on absurdly oversimplified assumptions

regarding doctors' decision-making.[6]

While Plaintiffs rely upon inapposite cases,[7] two recent on-point decisions confirm that class certification was properly denied in this case. In *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, Master File No. 2:06-cv-5774 (SRC), 2009 WL 2043604 (D.N.J. July 10, 2009), the court rejected the plaintiffs' argument that they could prove causation in an off-label marketing case through expert testimony and a statistical analysis of the defendants' data. *See id.* at *23-25. Holding that the plaintiffs could "not prove causation by way of generalized allegations and aggregate proof," *id.* at *25, the court explained that "a court

---

[6] Plaintiffs distinguish their own authorities by pointing out that, in each of the cases they cite, "consumers would not have known about the existence of the product or service absent the fraudulent scheme." (Proposed Reply at 11.) Here, Neurontin is an FDA-approved drug belonging to the anticonvulsant drug class, from which psychiatrists routinely prescribe drugs to treat psychiatric disorders. *See Neurontin*, 257 F.R.D. at 330. Moreover, according to the very data on which Plaintiffs rely, physicians in all specialty categories that Plaintiffs define, including psychiatrists, prescribed Neurontin for its labeled indications. (*See, e.g.*, 1/15/08 Report of Michael C. Keeley, Ph.D. ("Keeley Report") ¶ 37, Ex. 29 to 5/20/09 Declaration of James P. Muehlberger ("Muehlberger Decl.").) Psychiatrists were plainly aware of Neurontin's existence regardless of the allegedly fraudulent marketing.

[7] None of Plaintiffs' newly-cited authorities involved the decisions of learned intermediaries who may have based their decisions on a variety of factors unrelated to marketing. In *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) – the case Plaintiffs describe as their "foremost" authority (Proposed Reply at 7) – the plaintiffs' claims did not even require proof of reliance, and the plaintiffs "d[id] not allege that, but for the alleged misrepresentations, they would not have purchased [the defendant's products]." *Id.* at 74. Underscoring the fundamental difference between *In re Mercedes-Benz* and this case, the same court later dismissed an off-label marketing putative class action after rejecting the plaintiffs' argument that they could prove classwide causation through expert testimony and a statistical analysis of the defendants' data. *See In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, Master File No. 2:06-cv-5774 (SRC), 2009 WL 2043604, *23-25 (D.N.J. July 10, 2009).

Plaintiffs' remaining "recent" authorities involved alleged financial misrepresentations and price inflation, which this Court has repeatedly distinguished from Plaintiffs' off-label marketing claims. *See Neurontin*, 257 F.R.D. at 323-24, 327 n.7. *Spencer v. Hartford Financial Services Group, Inc.*, 256 F.R.D. 284 (D. Conn. 2009), involved substantially "uniform" written "financial representation[s]" sent to each class member, making the case more analogous to actions alleging "'reliance on a financial representation' [which had been] declared appropriate for class certification" than to "the consumer fraud class found inappropriate for certification in *McLaughlin* [*v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008)]." *Spencer*, 256 F.R.D. at 302-03. Likewise, *Kohen v. Pacific Investment Management Co.*, No. 08-1075, 2009 WL 1919013 (7th Cir. July 7, 2009) (to be published in F.3d), was a price-inflation class action brought by investors who claimed that the defendant investment firm had cornered the futures market in ten-year U.S. Treasury notes in violation of the Commodities Exchange Act. *See id.* at *1. And in *Robinson v. Fountainhead Title Group Corp.*, 257 F.R.D. 92 (D. Md. 2009), the plaintiff homeowners claimed that the defendants engaged in a scheme to charge them additional fees through a sham entity as part of an illegal kickback scheme. *See id.* at 94-95; *see also Robinson v. Fountainhead Title Group Corp.*, 252 F.R.D. 275, 278 (D. Md. 2008).

or jury would have to determine whether each prescribing physician received fraudulent marketing information from the [d]efendants and whether each physician was influenced to prescribe the Subject Drugs on account of [defendants'] conduct."  *Id.* at \*26; *see also Pennsylvania Employees Benefit Trust Fund v. Astrazeneca Pharmaceuticals LP*, No. 6:09-cv-5003-Orl-22DAB, 2009 WL 2231686, at \*5 (M.D. Fla. July 20, 2009) (noting the court's "serious concerns about the difficulties inherent in determining, on a transaction-by-transaction basis, whether and to what extent, Defendants' unlawful conduct caused each Seroquel prescription to be written by [plaintiff's] members' physicians").

Plaintiffs' desire to restate their prior arguments with greater vehemence and rhetorical excess is insufficient justification to permit additional briefing almost three months after this Court denied class certification.

## IV.   The Proposed Reply Memorandum Is Impermissibly Overlength

This Court's rules provide that "[m]emoranda supporting or opposing allowance of motions shall not, without leave of court, exceed twenty (20) pages, double-spaced."  D. Mass. Local R. 7.1(b)(4).  Plaintiffs' proposed reply is 26 pages long, substantially exceeding the limits applicable even to original memoranda.  Plaintiffs' motion for leave does not acknowledge this, does not request leave to file an overlength brief, and does not even attempt to explain why – during six weeks of drafting – they could not have edited their bloated reply memorandum to conform with this Court's page limits.

Despite drafting their opposition brief in less than half the time, Defendants' opposition is only slightly more than 22 pages long, and Defendants properly requested and obtained leave of Court for the extra page length.  (Dkt. 1856-1.)  Defendants' extra pages were necessitated by Plaintiffs' overlength 31-page opening brief and by the additional five pages of argument in Plaintiffs' "Errata" brief.  Plaintiffs' proposed reply seeks to increase their total page count to ***over 60 pages*** – an absurdly disproportionate and unwarranted amount of briefing in connection

with a reconsideration motion, especially given the fact that Plaintiffs had already devoted five briefs and 160 pages[8] to the issue of class certification when the Court denied certification for the second time.

Like their "Errata" brief, Plaintiffs' proposed reply ignores the Court's page limits and seeks to obscure the weaknesses in their position through endless repetition and sheer volume of paper. This filibustering should not be indulged any further.

## V.   CROSS-MOTION FOR LEAVE TO FILE SURREPLY MEMORANDUM

Should the Court permit Plaintiffs to file their proposed reply, Defendants request leave to file a surreply memorandum of equal length. While Plaintiffs took six weeks to file their proposed reply, Defendants propose to file their surreply memorandum within just three weeks, on or before August 26, 2009.

Previously, when this Court has permitted the movant to file a reply brief, the Court has typically also permitted the opposing party to file a surreply. (*See, e.g.*, Dkt. 1153, 1488.) Moreover, as discussed above, Plaintiffs' proposed reply attempts to belatedly satisfy the standards applicable to their motion for reconsideration, which their opening brief failed to even address. When the moving party raises new arguments in a reply brief, "[t]he Court can either disregard the argument or allow [the opposing party] the opportunity to respond." *Smith v. Wynfield Dev. Co.*, 451 F. Supp. 2d 1327, 1339 (N.D. Ga. 2006).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Leave to File Reply Memorandum. Alternatively, the Court should grant Defendants' Cross-Motion for Leave to File a Surreply Memorandum of equal length (26 pages) on or before August 26, 2009.

---

[8] Dkts. 206, 678, 1018, 1184, 1453.

Dated:  August 13, 2009

                              Respectfully submitted,

                              SKADDEN, ARPS, SLATE,
                                MEAGHER & FLOM LLP

                              By:    /s/ Mark S. Cheffo
                                        Mark S. Cheffo

                              Four Times Square
                              New York, NY 10036
                              Tel:  (212) 735-3000

                                  -and-

                              SHOOK, HARDY & BACON L.L.P.

                              By:    /s/ Scott W. Sayler
                                        Scott W. Sayler

                              2555 Grand Blvd.
                              Kansas City, MO 64108-2613
                              Tel:  (816) 474-6550

                                  -and-
                              WHITE AND WILLIAMS LLP

                              By:    /s/ David B. Chaffin
                                        David B. Chaffin

                              BBO # 549245
                              100 Summer Street, Suite 2707
                              Boston, MA 02110
                              Tel:  (617) 748-5200

                              *Attorneys for Defendants Pfizer Inc and*
                              *Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on August 13, 2009.

                                                    /s/ David B. Chaffin
                                                    David B. Chaffin