UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------------x
                                        :

In re:   NEURONTIN MARKETING,
           SALES PRACTICES AND
           PRODUCTS LIABILITY LITIGATION

------------------------------------------------------------------x

THIS DOCUMENT RELATES TO:

TERESA DRINKWINE, Individually and as Trustee
For The Next of Kin of MICHAEL DRINKWINE,
Decedent,

                Plaintiff,

            - against –

PFIZER INC., PARKE-DAVIS, a division of
Warner-Lambert Company and Warner-Lambert
Company LLC, WARNER-LAMBERT COMPANY,
WARNER-LAMBERT COMPANY LLC and
TEVA PHARMACEUTICALS USA, INC.,

              Defendants.

------------------------------------------------------------------x

AND RELATED CASES (SEE APPENDIX)

------------------------------------------------------------------x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

**PRODUCTS LIABILITY PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S MOTION TO DISMISS**

Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
1279 Route 300
P.O. Box 1111
Newburgh, NY  12551

Jack W. London, Esquire
Law Offices of Jack W. London
   & Associates
106 E. 6th Street, Suite 700
Austin, TX  78701

*Members of Products Liability
Plaintiffs' Steering Committee*

## PRELIMINARY STATEMENT

Defendant, Teva Pharmaceuticals USA, Inc., the manufacturer of the generic drug gabapentin (brand name Neurontin) ingested by Plaintiff, has mischaracterized the allegations in Plaintiff's Complaint by suggesting that "it would be <u>impossible</u> for a generic manufacturer, such as Teva, to comply with both federal and state law," and that Plaintiff's claims conflict with FDA regulations. Defendant has not contested that Plaintiff has articulated valid causes of action. Therefore, Plaintiff's opposition will address solely the preemption issue. Plaintiff's allegations, as detailed below, may be read to state sufficient causes of action that would not conflict with the FDA regulations and would not be preempted, including:

(1)     Defendant negligently and recklessly failed in its duty to warn by not changing the label for gabapentin to warn physicians and patients prescribed the drug of new hazards or elevated risk associations that were discovered concerning gabapentin through the monitoring of post-marketing adverse events. 21 C.F.R. § 314.97; *see Stacel v. Teva Pharms., USA*, 620 F. Supp. 2d 899, 903 (N.D. Ill. 2009).

(2)     Defendant negligently and recklessly failed in its duty to warn by not submitting the **appropriate application to the FDA** for approval to make a post-approval label change based on **new hazards or elevated risk associations that were discovered** concerning gabapentin through the monitoring of postmarketing adverse events. Plaintiff's claim is not preempted because Defendant has the obligation to make such an application; therefore, the state law claim does not add to any federal requirements already imposed upon the manufacturer.

(3)     Defendant negligently and recklessly failed in its duty to warn because it did not establish adequate protocols for postmarketing reporting of adverse events, which inevitably leads to the failure to discover risks that reasonably should have been discovered and reported to the FDA and should have served as the basis for their application to the FDA for the approval for a label change to warn of the risks. As in item (1) above, this claim does not conflict or add to any federal requirements already imposed upon the Defendant manufacturer.

Moreover, there is a strong indication in the United States Supreme Court decision in *Riegel v. Medtronic, Inc.*, 128 S. Ct. 999 (2008), that the Court there are parallel state law claims that do not add to federal requirements. In *Farm Raised Salmon Cases*, 175 P.3d 1170 (Cal. 2008), the Supreme Court of California has similarly considered the issue of parallel state law claims in the context of the FDCA and the California Sherman Food, Drug, and Cosmetic Law (Health & Saf. Code § 109875) as to the regulation of color additives to food, and held that such claims are not preempted. Plaintiff here is asserting parallel state law claims as discussed in the U.S. Supreme Court decision in *Riegel*, and the California Supreme Court decision in *Farm Raised Salmon Cases* that would not be preempted.

Plaintiff requests that Court deem the causes of actions alleged in Plaintiff's Complaint as consistent with the U.S. Supreme Court decision in *Wyeth v. Levine*, 129 S. Ct. 1187 (Mar. 4, 2009).[1] Moreover, several District Court decisions filed after the *Levine* decision have denied preemption to generic manufacturers, including two preemption motions filed by the same defendant, Teva, in this action.[2]

Generally, courts deciding the question of preemption in pharmaceutical litigation have a well-developed record to review and analyze before making the appropriate application of the law in determining whether or not a plaintiff's state law claims are preempted. Plaintiff respectfully requests that Defendant's back-door preemption motion through a motion for judgment on the pleadings should be the only "bite at the preemption apple" that Defendant is allowed in this case.

---

[1] The U.S. Supreme Court further vacated the judgment in *Colacicco v. Apotex*, 129 S. Ct. 1578 (2009) (regarding appeal of the decision regarding a preemption motion filed by a generic manufacturer of a drug), and remanded the case back to the Third Circuit for further consideration in light of their decision in *Wyeth v. Levine*. The Third Circuit vacated their judgment in *Colacicco* and remanded the matter to the District Court for the Eastern District of Pennsylvania for "further proceedings consistent with the Supreme Court's decision."

[2] *Stacel v. Teva Pharms., USA,* 620 F. Supp. 2d at 903 (court denied Teva's motion for preemption for its generic drug Minocycline where Teva alleged it "cannot comply with the FDCA's labeling requirements and the labeling requirements of Illinois state law, or that Illinois tort law would frustrate purpose and intent of Congress." *Schrock w. Wyeth*, 601 F. Supp. 2d 1262 (W.D. Okla. 2009) (court denied preemption motions of generic manufacturers Pliva, Barr, Actavis and Actavis-Elizabeth, finding, in line with the U.S. Supreme Court's decision in *Wyeth v. Levine*, that Congress clearly "did not intend the preempt state-law failure-to-warn actions"); *Kellogg v. Wyeth,* 612 F. Supp. 2d 421 (D. Vt. 2009) (denied Teva's motion for summary judgment finding, in line with U.S. Supreme Court's decision in *Wyeth v. Levine,* that 21 C.F.R. § 314.70 obligates "brand and generic manufactures alike to revise a label to add or strengthen a warning in the light of newly acquired information.").

The U.S. Supreme Court has stated that a preemption analysis must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Wyeth v. Levine,* 129 S. Ct. at 1194-95 (citations omitted).  The Supreme Court noted that "[a]s it enlarged the FDA's powers to 'protect the public health' and 'assure the safety, effectiveness, and reliability of  drugs,' Congress took care to preserve state law.  The 1962 amendments added a saving clause, indicating that a provision of state law would only be invalidated upon a 'direct and positive conflict' with the FDCA. § 202."  129 S. Ct. at 1196 (citation omitted).  The Court further expressed that the intent of Congress to preserve state law causes of action as to prescription drugs was demonstrated by the fact that "when Congress enacted an express pre-emption provision for medical devices in 1976, *see* § 521, 90 Stat. 574 (codified at 21 U.S.C. § 360k(a)), it declined to enact such a provision for prescription drugs." 129 S. Ct. at 1196.

Defendant's burden of proof regarding preemption is extremely high as there is a "basic presumption against pre-emption" because preemption upsets the balance of power between the federal government and the states as independent sovereigns.  *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 439 (2005).[3]  Here, Plaintiff's Complaint sufficiently alleges causes of action for the types of claims that would not conflict with the FDA regulations, and as to which Defendant would not be able to meet its heavy burden and thus would not be subject to preemption.

## FACTUAL BACKGROUND AND CAUSES
## OF ACTION ALLEGED IN PLAINTIFF'S COMPLAINT

Plaintiff alleges in this negligence/strict liability pharmaceutical action that Plaintiff's decedent suffered injury and death caused by his ingestion of gabapentin manufactured by Defendant Teva; and that Plaintiff's decedent's injuries and death were caused by or contributed

---

[3] The Supreme Court has emphasized:  "[I]n areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest."  *Id.* (citations omitted). An analysis of preemption begins with the purpose of Congress and "starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana,* 451 U.S. 725, 746 (1981).  When a claim of preemption is asserted, the claim must overcome this presumption. *Rice v. Santa Fe Elev. Corp.,* 331 U.S. 218 (1947).  It must be assumed that Congress did not intend to preempt state law addressing traditional areas of state concern, such as public health and safety. *Id.* at 230.

to by the negligence, recklessness, gross negligence, wantonness, willfulness, and conscious and callous disregard of Defendant whose conduct was the proximate cause of the decedent's injuries and death.   Several valid causes of action have been asserted against Teva, including:   Sixth Cause of Action for Negligence; Seventh Cause of Action for Breach of Warranty; Eighth Cause of Action for Strict Products Liability; a Cause of Action for General Damages; and a Cause of Action for Wrongful Death.   *See* Complaint, Declaration of Andrew G. Finkelstein, Ex. A.

Contrary to Defendant's assertion in its moving papers, Plaintiff's Complaint sufficiently alleges and states causes of action that clearly do not implicate preemption.   In the general allegations section of the Complaint ¶ 134, Plaintiff alleges that, in regard to Defendant Teva:

> Pursuant to 21 C.F.R. § 314.70, manufacturers, such as defendant Teva, who have received approval for a generic drug pursuant to the ANDA process, are allowed to amend a drug's labeling without receiving FDA prior approval in order to, inter alia, add or strengthen a contraindication, warning, precaution, or adverse reaction; add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product; and delete false, misleading, or unsupported indications for use or claims for effectiveness.   Moreover, manufacturers such as defendant **Teva, may apply to the FDA for approval to amend a drug's labeling, subsequent to receiving the initial ANDA approval, to strengthen a contradiction, warning, precaution, etc**.

As noted above, although Plaintiff believes that pursuant to 21 C.F.R. § 314.70, generic manufacturers are allowed to amend a label without prior FDA approval, such manufacturers may also apply to the FDA for approval.

Plaintiff further alleges in the Complaint ¶¶ 135-137 that a sophisticated manufacturer such as Defendant Teva had knowledge that the FDA only had approved Neurontin and gabapentin for use as adjunctive therapy for epilepsy, had knowledge that the Clinical Review for the brand name drug (Neurontin) had warned of the increased risk for suicide, and had constructive knowledge of the depth and breadth of the off-label use of Neurontin yet negligently and recklessly failed to take the requisite action to properly warn of the increased risk for suicide or make the proper application, which resulted in the injury and death of Plaintiff's decedent:

> 135.   A Press Release posted on the internet site of defendant Teva's parent, Teva Pharmaceuticals Industries Ltd., on October 8, 2004, demonstrates that defendant Teva was well aware that Neurontin was a $1.7 billion dollar drug for just the twelve-month period ending in June 2004.   It is reasonable to assume that a sophisticated manufacturer such as defendant Teva also was well aware that the due to the sheer

volume of recorded sales of Neurontin, and that the brand name drug was being promoted and prescribed for off-label uses and for uses other than the sole use that was approved by the FDA, namely, for treatment for epilepsy.

136.    That defendant Teva was aware of the studies, off-label usage, etc., and did not change the label, and/or failed to apply to the FDA to change the label subsequent to receiving approval of the ANDA for gabapentin, to caution against same demonstrates that defendant Teva was a willing beneficiary of, and indirectly participated in, and continued to perpetuate the fraudulent, negligent and reckless conduct as alleged herein.

137.    The drugs Neurontin and gabapentin were ineffective in the treatment of the causes and symptoms of plaintiff's decedent's pain and nerve damage and plaintiff's decedent sustained injury and death by reason of this reliance upon Neurontin and gabapentin to be effective in the treatment as prescribed by plaintiff's decedent's physicians of such pain and nerve damage.

Further, in the general allegations of the Complaint ¶¶ 147-150, Plaintiff alleges that Defendants, including Teva, breached their duty of care in failing to perform their ongoing duty of pharmacovigilance in regard to Neurontin and gabapentin:

147.    Moreover, defendants have an ongoing duty of pharmacovigilance. As part of this duty, defendants are required to continually monitor, test, and analyze data regarding the safety, efficacy, and prescribing practices of their marketed drugs, including Neurontin and gabapentin. Defendants continually receive reports from their own clinical trials, practicing physicians, individual patients and regulatory authorities concerning adverse events that occur in patients taking Neurontin and gabapentin and defendants' other marketed drugs. Furthermore, defendants continue to conduct clinical trials for their marketed drugs long after the drug is approved for use. Defendants have a continuing duty to inform doctors, regulatory agencies, and the public of new safety and efficacy information they learn, or should have learned, about their marketed drugs once that information becomes available to defendants, whether through defendants' clinical trials, other outside sources or pharmacovigilance activities. Specifically, when defendants learn, or should have learned, of new safety information associated with their marketed drugs, they have a duty to promptly disseminate that data to the public. Defendants also have a continuing duty to monitor epidemiology and pharmacovigilance data regarding their marketed drugs and promptly report any safety concerns that arise through epidemiologic study or data.

148.    Defendants were further negligent and breached this continuing duty of pharmacovigilance with respect to plaintiff's decedent. Defendants, through clinical trials and other adverse event reports, learned that there was a serious problem of suicidality associated with Neurontin and gabapentin use and failed to inform doctors, regulatory agencies and the public of this risk. Defendants had the means and the resources to perform their pharmacovigilance duties for the entire time Neurontin and gabapentin have been on the market in the United States.

149.    Defendants failed to comply with the FDA postmarketing reporting requirements under 21 C.F.R. § 314.80(c) by, inter alia, failing to report each adverse drug experience concerning Neurontin and gabapentin that is both serious and unexpected, whether foreign or domestic, as soon as possible but in no case later than 15 calendar days after initial receipt of the information by defendants, failing to promptly investigate all adverse drug experiences concerning Neurontin and gabapentin that are the

subject of these postmarketing 15-day Alert reports, failing to submit follow up reports within 15 calendar days of receipt of new information or as requested by FDA, and, if additional information was not obtainable, failing to maintain records of the unsuccessful steps taken to seek additional information.

150. Defendants' failure to perform adequate pharmacovigilance and failure to comply with the postmarketing requirements of FDA regulations is evidence of defendants' negligence and constitutes negligence per se.

In the Sixth Cause of Action of the Complaint ¶¶ 247-254, Plaintiff alleges that

Defendant Teva was negligent in:

248. That at all times hereinafter mentioned, defendant Teva was under a duty to exercise reasonable care in the design and development of gabapentin, in particular, by adopting the statements, studies, labeling and representations of the brand name manufacturer of Neurontin, in the advertising, marketing and promoting of gabapentin, both directly and indirectly, to ensure that gabapentin was not used in the treatment of conditions such as pain and nerve damage it was not effective and to ensure that gabapentin was not used in a manner or to treat conditions where defendant Teva knew or should have known that the user could sustain injuries and harm from the drug.

249. That defendant Teva negligently, recklessly, grossly negligently, wantonly and willfully displayed a morally culpable and conscious disregard of the rights of others in that they failed to exercise reasonable care and failed to fulfill the above-stated duty by the manner that defendant Teva, by adopting the statements, studies, labeling and representations of the brand name manufacturer of Neurontin, directly and indirectly, advertised, marketed and promoted gabapentin for the treatment of pain and nerve damage, even though gabapentin had not been scientifically determined to be safe for such use and even though gabapentin was, in fact, not reasonably safe for such use, and furthermore, defendant Teva failed to adequately warn of the risk of suicide or aggressive, self-destructive behavior of which defendant Teva knew or should have known about.

250. That defendant Teva was further negligent, reckless, grossly negligent, wanton and willfully displayed a morally culpable and conscious disregard of the rights of others by manufacturing, distributing, selling, advertising, marketing and promoting gabapentin even though such drug was not safe or effective for any purpose because it caused or influenced persons using the drug for any purpose to engage in self- destructive behavior including committing suicide and by failing to adequately warn the public of such risks.

251. The aforesaid incident and the injuries and death sustained by plaintiff's decedent were caused by or were contributed to by the negligence, recklessness, gross negligence, wantonness, willfulness, and conscious and callous disregard of the safety of the public, including plaintiff's decedent, on the part of defendant Teva, by adopting the statements, studies, labeling and representations of the brand name manufacturer of Neurontin, in the design, manufacture, distribution, advertising, marketing and promoting of gabapentin as being safe and effective in the treatment of pain and nerve damage, and by inducing the public, including plaintiff's decedent, to believe that gabapentin was effective in the treatment of the causes and symptoms of pain and nerve damage.

Plaintiff further alleges a cause for breach of warranty in the Seventh Cause of Action in the Complaint and allegations for a strict products liability against Teva in the Eighth Cause of action in the Complaint ¶¶ 264-266, as follows:

> 264.   That at all times hereinafter mentioned, the drug gabapentin was not suited for the treatment of pain and nerve damage, and was not safe and effective for the treatment of pain and nerve damage, even though defendant Teva directly and indirectly advertised, marketed and promoted gabapentin for such use.

> 265.   That at all times hereinafter mentioned, the drug gabapentin was not safe and was not suited for the purposes for which defendant Teva, directly and indirectly, advertised, marketed and promoted the drug at the time defendant Teva designed, manufactured, distributed and sold the drug and placed the drug in the stream of commerce.

> 266.   That at all times hereinafter mentioned, upon information and belief, defendant Teva assumed a strict products liability to users and to persons using gabapentin, including plaintiff's decedent , who sustained injuries, harm and damages by reason of the use of gabapentin for purposes directly and indirectly advertised, marketed, and promoted by defendant Teva, including for the treatment of pain and nerve damage.

## ARGUMENT

The First Circuit has stated that a complaint should not be dismissed under Fed. R. Civ. P. Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Judge v. City of Lowell,* 160 F.3d 67, 72 (1st Cir. 1998) (citing to *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  When a court considers the merits of a motion to dismiss for failure to state a claim, "the complaint is construed in the light most favorable to the pleader and all allegations therein are taken as true."  *Nollet v. Justices of the Trial Court of the Commonwealth of Massachusetts,* 83 F. Supp. 2d 204, 207 (1st Cir. 2000) (citing to *Hirshon v. King & Spaulding,* 467 U.S. 69, 73 (1984)).  "[T]he court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice may be taken."  83 F. Supp. 2d at 208.  "The issue is not whether the plaintiff will ultimately prevail at trial.  Rather, the appropriate inquiry is whether the plaintiff is entitled to offer evidence in support of his claims." *Pierce v. Runyon,* 857 F. Supp. 129, 131 (D. Mass. 1994).  Moreover, a court is required to consider only the allegations of the complaint to determine "if under any theory they are

sufficient to state a cause of action in accordance with the law, a motion to dismiss the complaint must be denied." *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir. 1987); *see Conley v. Gibson,* 355 U.S. at 45-46 (complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). For a 12(b)(6) dismissal, the court must follow the "liberal pleading requirements of Rule 8(a) of the Federal Rules of Procedure." *Nollet v. Justices of the Trial Court of the Commonwealth of Massachusetts,* 83 F. Supp. 2d 204, 208 (D. Mass. 2000). "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted**."** *Drucker v. Sullivan,* 334 F. Supp. 861, 864 (D. Mass. 1971).

**I.    THE RECENT U.S. SUPREME COURT DECISION IN WYETH V. LEVINE AND OTHER CASELAW DEMONSTRATE THAT PLAINTIFF'S COMPLAINT ASSERTS A VALID CAUSE OF ACTION AND THAT DEFENDANT TEVA BREACHED ITS DUTY OF CARE IN FAILING TO CHANGE THE LABEL FOR ITS DRUG GABAPENTIN TO WARN OF THE INCREASED RISK OF SUICIDE**

In *Wyeth v. Levine*, Defendant essentially made the same argument that Teva asserts here: "Wyeth makes two separate pre-emption arguments: first, that it would have been impossible for it to comply with the state-law duty to modify Phenergan's labeling without violating federal law, *see Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982), and second, that recognition of Levine's state tort action creates an unacceptable 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Wyeth v. Levine*, 129 Sup. Ct. at 1212. In denying Wyeth's motion for preemption*,* the U.S. Supreme Court made several key determinations, including that a manufacturer of a drug has the ultimate responsibility for the contents of its label, noting that:

> In 1962, Congress amended the FDCA and shifted the burden of proof from the FDA to the manufacturer. Before 1962, the agency had to prove harm to keep a drug out of the market, but the amendments required the manufacturer to demonstrate that its drug was "safe for use under the conditions prescribed, recommended, or suggested in the proposed labeling" before it could distribute the drug. §§ 102(d)104(b), 76 Stat. 781, 784. In addition, the amendments required the manufacturer to prove the drug's effectiveness by introducing "substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the proposed labeling." § 102(d), *id.* at 781.

129 Sup. Ct. at 1195.

Further, the U.S. Supreme Court dispelled Wyeth's assertions that it would be "impossible for it to comply with both the state-law duties underlying those claims and its federal labeling duties":

> The FDA's premarket approval of a new drug application includes the approval of the exact text in the proposed label. *See* 21 U.S.C. § 355; 21 CFR § 314.105(b) (2008). Generally speaking, a manufacturer may only change a drug label after the FDA approves a supplemental application. There is, however, an FDA regulation that permits a manufacturer to make certain changes to its label before receiving the agency's approval. Among other things, this "changes being effected" (CBE) regulation provides that if a manufacturer is changing a label to "add or strengthen a contraindication, warning, precaution, or adverse reaction" or to "add or strengthen an instruction about dosage and administration that is intended to increase the safe use of the drug product," it may make the labeling change upon filing its supplemental application with the FDA; it need not wait for FDA approval. §§ 314.70(c)(6)(iii)(A), (C).

129 Sup. Ct. at 1196.

Wyeth had stated that part of its argument included that: "CBE regulation is not implicated in this case because a 2008 amendment provides that a manufacturer may only change its label 'to reflect newly acquired information.' 73 Fed. Reg. 49603, 49609." But the U.S. Supreme Court noted that the new information may include a "new analysis" of prior known data:

> As the FDA explained in its notice of the final rule, "'newly acquired information'" is not limited to new data, but also encompasses "new analyses of previously submitted data." *Id.*, at 49604. The rule accounts for the fact that risk information accumulates over time and that the same data may take on a different meaning in light of subsequent developments: "[I]f the sponsor submits adverse event information to FDA, and then later conducts a new analysis of data showing risks of a different type or of greater severity or frequency than did reports previously submitted to FDA, the sponsor meets the requirement for 'newly acquired information.'" *Id.*, at 49607; *see also id.*, at 49606.

129 Sup. Ct. at 1197.

The Court also rejected assertions that a manufacturer's decision to change a label would conflict with FDA regulations and result in a misbranding charge:

> The FDCA does not provide that a drug is misbranded simply because the manufacturer has altered an FDA-approved label; instead, the misbranding provision focuses on the substance of the label and, among other things, proscribes labels that fail to include "adequate warnings." 21 U.S.C. § 352(f). Moreover, because the statute contemplates that federal juries will resolve most misbranding claims, the FDA's belief that a drug is misbranded is not conclusive. *See* §§ 331, 332, 334(a)-(b). And the very idea that the

> FDA would bring an enforcement action against a manufacturer for strengthening a warning pursuant to the CBE regulation is difficult to accept -- neither Wyeth nor the United States has identified a case in which the FDA has done so.

129 Sup. Ct. at 1197.

The U.S. Supreme Court reiterated that the labeling of a drug remains the responsibility of the manufacturer regardless of the many amendments to the FDCA and FDA regulations:

> Yet through many amendments to the FDCA and to FDA regulations, it has remained a central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times. It is charged both with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market. *See, e.g.*, 21 CFR § 201.80(e) (requiring a manufacturer to revise its label "to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug"); § 314.80(b) (placing responsibility for postmarketing surveillance on the manufacturer); 73 Fed. Reg. 49605 ("Manufacturers continue to have a responsibility under Federal law . . . to maintain their labeling and update the labeling with new safety information").

129 Sup. Ct. at 1197-98.

Moreover, the Court noted that although the FDA could reject a supplemental application to change the content of a manufacturer's change of a drug label, a proponent of preemption would have to provide "clear evidence" that this rejection would have occurred:

> Of course, the FDA retains authority to reject labeling changes made pursuant to the CBE regulation in its review of the manufacturer's supplemental application, just as it retains such authority in reviewing all supplemental applications. But absent clear evidence that the FDA would not have approved a change to Phenergan's label, we will not conclude that it was impossible for Wyeth to comply with both federal and state requirements.

129 Sup. Ct. at 1198.

Additionally, the U.S. Supreme Court stated that "[i]mpossibility pre-emption is a demanding defense" and that "[t]he CBE regulation permitted Wyeth to unilaterally strengthen its warning, and the mere fact that the FDA approved Phenergan's label does not establish that it would have prohibited such a change." *Id.* at 1199.

In regard to Wyeth's argument that denying preemption would frustrate the purpose of Congress concerning the FDCA regulatory scheme, the U.S. Supreme Court found " no merit in this argument, which relies on an untenable interpretation of congressional intent and an overbroad view of an agency's power to pre-empt state law." *Id.* The Court dismissed the

manufacturer's argument and determined that the assertion that the FDCA was both a "floor and a ceiling" for the regulation of drugs was contrary to the intent of Congress, finding that:

> Congress did not provide a federal remedy for consumers harmed by unsafe or ineffective drugs in the 1938 statute or in any subsequent amendment. Evidently, it determined that widely available state rights of action provided appropriate relief for injured consumers. It may also have recognized that state-law remedies further consumer protection by motivating manufacturers to produce safe and effective drugs and to give adequate warnings.

*Id.* at 1199-1200.

The U.S. Supreme Court also found that the FDA 2006 Preamble and United States' amicus brief "does not merit deference." *Id.* at 1201, 1203. The Court made clear that "Congress has repeatedly declined to pre-empt state law, and the FDA's recently adopted position that state tort suits interfere with its statutory mandate is entitled to no weight." *Id.* at 1204. After its decision in *Wyeth v. Levine*, the Court vacated the judgment in *Colacicco v. Apotex, Inc.,* 129 S. Ct. 1578 (2009) (regarding appeal of decision regarding preemption motion filed by a generic manufacturer of a drug), and remanded the case back to the Third Circuit for further consideration in light of their decision in *Wyeth v. Levine*. The Third Circuit then vacated their judgment in *Colacicco* and remanded the matter to the District Court for the Eastern District of Pennsylvania for "further proceedings consistent with the Supreme Court's decision." Def. Brief, ECF Doc. # 1835, at p. 13 n.6. In its moving papers, Teva failed to apprise this Court that the U.S. District Court for the Eastern District of Pennsylvania rejected Defendants' request to "re-enter its Order granting their Motion to Dismiss"; allowed plaintiff to file a motion for reconsideration on claims which the court previously dismissed on preemption grounds and ordered that discovery on preemption issues proceed. *See* Order, Finkelstein Decl., Ex. B.

Moreover, although Defendant Teva cites to the amicus curiae brief filed by the FDA in *Colacicco*, Teva admits that the FDA withdrew the brief "to conduct an analysis of its position on preemption issues in light of *Levine*." ECF Doc. # 1835, pp. 13-14 n.6. The FDA prior statements and amicus briefs cited by Defendant in support of its position should not considered because, by Teva's own admission, subsequent to the U.S. Supreme Court's decision in *Wyeth v.*

*Levine*, the FDA's position on the issue of generic drugs being allowed to utilize the CBE to make a change in the labeling of the risks for ingestion of gabapentin is presently unknown.

After the U.S. Supreme Court decision in *Wyeth v, Levine,* several District Courts have denied preemption motions regarding generic drugs, two of which were filed by Defendant Teva. In *Stacel v, Teva Pharms. USA,* the District Court for the Northern District of Illinois denied Teva's motion that the plaintiff's state law causes of action were preempted by the FDCA requirements for the labeling of the generic drug minocycle because it would conflict with FDA regulations and frustrate Congressional intent.  620 F. Supp. 2d at 902.  The court found that although *Wyeth v. Levine* concerned a brand-name drug, parts of that Supreme Court decision were applicable to a preemption analysis for a generic drug.  *Id.* at 904.  It noted that the 1982 amendments to the FDCA that expressly stated that state law causes of action would not be preempted except where there was a "direct and positive conflict."  *Id.*  Moreover, the court noted that *Wyeth v. Levine* made it clear that even after a host of additional amendments to the FDCA, "the manufacturer bears responsibility for the content of its label at all times."  *Id.* (citations omitted).  The court also noted the process by which a generic manufacturer obtains FDA approval for a generic drug through an Abbreviated New Drug Application:

> In 1984, Congress adopted the Drug Price Competition and Patent Term Restoration Act, known also as the Hatch-Waxman Act.  Pursuant to this bill, the FDA implemented an abbreviated new drug application procedure ("ANDA") for manufacturers who produce a generic of a reference-listed drug that has already completed the NDA process.  *See* 57 Fed. Reg. 17950, 17951 (describing Hatch-Waxman Act).  ANDA drugs must (1) be "the same as" a reference-listed drug that was already approved by the FDA with respect to active ingredients, route of administration, dosage form, strength and conditions of use recommended in the labeling; or (2) include changes from a reference-listed drug if the FDA has approved a petition from a prospective applicant permitting the submission of an ANDA for the changed drug product.  *See* 21 U.S.C. § 355(j).  One of the benefits to manufacturers who opt for the ANDA procedure is that they are required only to conduct "bioequivalency" studies that establish that the generic and the reference-listed drug are pharmaceutically equivalent; the ANDA procedure does not require the safety and effectiveness tests that are necessary under the NDA procedure.  The underlying presumption is that so long as the drug is shown to be pharmaceutically equivalent to an existing reference-listed drug, and so long as it is used in the same manner as the reference-listed drug, FDA approval can be assumed without requiring duplication of previously-performed studies.  As part of the ANDA application, a manufacturer must show that the labeling of the generic and reference-listed drug will be the same.  *See* § 355(j)(2)(A)(v) [requiring "information to show that the labeling proposed for the new drug is the same as the labeling approved for the listed drug . . ."].

620 F. Supp. 2d at 904-05.

The District Court held that the CBE regulations that allow brand-name manufacturers to add warnings of risks to the labeling for their drugs apply to generic drug manufacturers, and that the reasoning of the Supreme Court in *Wyeth v. Levine* was on point in regard to generic drugs:

> The CBE regulations appear at 21 C.F.R. § 314.70(c)(6)(iii), which is located in Subpart B of Part 314. Subpart B is generally applicable to *new* applications, whereas, Subpart C is applicable to *generic* (or, "abbreviated") applications. *Compare* 314 C.F.R. Subpart B (titled "Applications") *with* Subpart C (titled "Abbreviated Applications"). However, section 314.97, which is located within Subpart C, states that "The applicant shall comply with the requirements of §§ 314.70 and 314.71 regarding the submission of supplemental applications and other changes to an approved abbreviated application." § 314.97. In other words, the regulations affecting generic drug applications state explicitly that the CBE provisions apply to generic drug manufacturers just as they do to name-brand manufacturers.

620 F. Supp. 2d at 905.

The District Court noted that the FDA statement prohibiting generic manufacturers from utilizing the CBE process to change the label to warn of risks, which was included in a footnote in the January 18, 2008 Preamble, conflicted with the plain language of the regulations, and that the U.S. Supreme Court had held that the Preamble did not merit any deference. *Id.* at 906. In denying Teva's motion for preemption, the court, *inter alia,* pointed out that the purpose of allowing generic drug manufacturers the ability to submit an Abbreviated New Drug Application and streamline the approval process "was to be achieved by permitting manufacturers to forego duplicative clinical trials. It was *not* to be achieved by permitting manufacturers to engage in negligent activities." *Id.* at 907 (citations omitted). Furthermore, the court noted:

> Although Congress intended for ANDA applicants to submit identical labeling to the FDA when seeking ANDA approval--*see* 21 U.S.C. § 355(j)(2)(A)(v)--the statute is silent as to the manufacturer's obligation after the ANDA is granted. But 21 C.F.R. § 314.97 is not silent--it states that generic drug manufacturers are obligated to comply with the same CBE provisions as brand-listed manufacturers are.

620 F. Supp. 2d at 907.

Likewise, in the wake of *Wyeth v. Levine,* the District Court of Vermont in *Kellogg v. Wyeth* denied the defendants' motion for certification of an interlocutory appeal of the denial of a motion for preemption of the plaintiff's failure to warn claims filed by Teva and three other

generic drug manufacturers for metoclopramide, the generic form of the brand name drug Reglan.  612 F. Supp. 2d 437 (D. Vt. 2009).  The court noted that the *Levine* decision was broad and reduced "substantially the grounds for difference of opinion" regarding preemption.  *Id.* at 439.  The court further analyzed pertinent sections of the Supreme Court's decision:

> Given that Congress could and did insert an express preemption provision when it amended the FDCA in 1976 to provide for the safety and effectiveness of medical devices, it is telling that Congress did not make any express preemption provision when it amended the FDCA in 1984 to authorize abbreviated new drug applications.  Evidently, in the Congressional view, creating a streamlined process for generic drugs to reach the market did not preclude their manufacturers' duty to ensure the safety and effectiveness of their products.

> FDA's own regulations bear this out.  As this Court wrote in its earlier opinion, 21 C.F.R. § 314.97 requires an ANDA applicant to comply with the requirements of §§ 314.70 and 314.71 for NDAs.  (Op. & Order 8.)  Section 314.70 includes the CBE provisions.  *See* 21 C.F.R. § 314.70(c)(6).  The plain language of FDA's regulations communicates the obligation borne by name brand and generic manufacturers alike to revise a label to add or strengthen a warning in the light of newly acquired information.  *See id.* § 314.70(c)(6)(iii)(A).  This makes sense in light of the fact that brand name manufacturers may elect to manufacture and distribute a generic version of their own brand name drug--as Wyeth has done with Reglan--once the brand name drug loses patent protection.  According to the defendants' logic, the same company that would have a duty to strengthen a warning or add a contraindication to its label as an NDA holder could argue that as a manufacturer of the generic form it escaped that same duty.

612 F. Supp. 2d at 441.

In *Schrock w. Wyeth Inc.,* the District Court denied preemption motions of generic manufacturers Pliva, Barr, Actavis and Actavis-Elizabeth, finding that in line with the U.S. Supreme Court's decision in *Wyeth v. Levine*, Congress clearly "did not intend to preempt state-law failure-to-warn actions."  601 F. Supp. 2d 1262, 1265 (W.D. Okla. 2009).  The court noted that "[u]nless the prescription drug manufacturer makes a clear evidentiary showing that the FDA would not have approved a change to the label, a court may not conclude that it was impossible for the prescription drug manufacturer to comply with both federal and state requirements."  *Id* at 1264-65.

Here, Plaintiff's Complaint ¶¶ 136, 249, 250 (and comparable paragraphs as noted above in the subsequent causes of action), sufficiently pleads and alleges that Defendant failed in its **duty to warn** individuals such as Plaintiff's decedent and his prescribing physicians concerning

the increased risks of suicide and for adverse mood and behavioral changes from the ingestion of its drug gabapentin.  It was the duty of Defendant as a manufacturer of a generic drug, pursuant to 21 C.F.R. § 314.97, which requires an ANDA applicant to comply with the requirements of § 314.70, to make the appropriate label change once it learned of credible scientific information suggesting new hazards or associations, and pursuant to 21 C.F.R. § 314.70(c)(2)(i) (allows for changes in labeling to be made prior to FDA approval under circumstances to "add or strengthen a contraindication, warning, precaution, or adverse reaction") (§ 314.70(c)(6)(iii)(A)) and § 201.57(e)) (the labeling shall be revised to include a warning as soon  as there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved).  Even though Teva is a generic manufacturer, based on the reasoning of the U.S. Supreme Court in *Wyeth v. Levine* and the cases and regulations cited above, Plaintiff's claims do not conflict with the FDA regulations and should not be preempted.

Further, even if this Court decides that generic manufacturers are required to seek prior approval for a label change to provide the appropriate warnings, Plaintiff's Complaint should not be dismissed.  As detailed below, Plaintiff has sufficiently alleged in the Complaint ¶¶ 134, 136 (and comparable paragraphs as noted above in the subsequent causes of action), that Defendant Teva failed to make the **appropriate application to the FDA to receive prior approval** for such a label change in the instant action.  Such a claim does not conflict with any of the FDA Regulations or impede the power of the FDA to regulate pharmaceuticals.  If anything, such a claim supports the FDA regulations and objectives.

## II.  GENERIC MANUFACTURERS ARE OBLIGATED TO PROPERLY REPORT ADVERSE EVENTS BASED ON APPROPRIATE SCIENTIFIC EVIDENCE AND TO APPLY TO THE FDA FOR A LABELING CHANGE WHEN CIRCUMSTANCES SO DICTATE

As noted by the District Court in *Caraker v. Sandoz Pharms. Corp*., 172 F. Supp. 2d 1018 (S.D. Ill. 2001), a pharmaceutical manufacturer may be found liable if it does not **"at least request FDA approval of an additional warning"** where appropriate:

> Until 1965, the FDA regulations applicable to drugs prohibited companies from adding warnings or other information without prior approval.  These regulations were

amended in 1965, allowing labeling changes related to safety to be "placed into effect at the earliest possible time," the goal of which was for drug manufacturers "to enable prompt adoption of such changes."  30 Fed.Reg. 993 (1965).  **Liability, irrespective of the Food, Drug, and Cosmetic Act ("FDCA"), may attach if drug manufacturers do not at least request FDA approval of an additional warning as soon as new hazards or elevated risk associations are discovered.  These options for conveying additional risk information are not prohibited but encouraged.  Because there is no indication that Congress and the FDA have attempted to impede what the FDA has referred to as the "sophisticat[ed] and complex [ ] private tort litigation in the United States,"** this Court is right to interpret the FDA standards as minimum ones and to find that drug manufacturers still have a duty to timely disclose new known risks to learned intermediaries, especially because any other interpretation would run contrary to what appears to be an intent to preserve these tort remedies.

172 F. Supp. 2d at 1034-35 (emphasis added).

The FDA does not prohibit generic manufacturers from seeking FDA approval for a label change.  The FDA Abbreviated New Drug Application Final Rule, 57 Fed. Reg. 17950, in regard to §314.93 -- Petition To Request a Change from a Listed Drug, paragraph # 20, expressly states that a generic manufacturer may apply to the FDA for a labeling change:  "[a]n ANDA applicant who believes that the labeling for a proposed drug product should differ from that approved for the reference listed drug should contact FDA to discuss whether labeling for both generic and listed drugs should be revised."  57 Fed. Reg. 17950 (1992), Finkelstein Decl., Ex. C.

Moreover, the FDA stated in its *amicus* brief submitted to the United States Court of Appeals for the Third Circuit in *Colacicco v. Apotex, Inc.*, No. 06-3107:

> If a generic drug manufacturer believes that new safety information should be added to the label for its drug, it is directed to contact FDA with "adequate supporting information."  57 Fed. Reg. at 17,961.  The agency will consider this information and determine whether the labeling for both the generic drug and the innovator drug should be revised.  *Id.*

Brief for Government in Third Circuit Appeal of *Colacicco v. Apotex, Inc.*, Finkelstein Decl., Ex. D at pp. 7-8.

All of the pertinent regulations clearly leads one to believe that seeking prior FDA approval of a label change would in no way undermine the authority of the FDA.  Plaintiff has sufficiently alleged in the Complaint ¶¶ 134, 136 (and comparable paragraphs as noted above in the subsequent causes of action), that Defendant Teva's failure to warn claims may be based upon Defendant's inaction, once on notice of valid scientific risk concerning gabapentin, and that

at the very least, Defendant was negligent and reckless because it should have made the appropriate application to the FDA.

## III.   PLAINTIFF HAS SUFFICIENTLY ALLEGED THAT DEFENDANT VIOLATED FDA REGULATIONS, AND SUCH PARALLEL CLAIMS UNDER STATE LAW ARE NOT PREEMPTED

Plaintiff alleges that Defendant Teva failed to perform post-marketing pharmacovigilance and thus violated FDA regulations. The violations of FDA regulations "parallel" or supplement Plaintiff's common-law claims of negligence and/or state statutory law claims. Since these claims are parallel and do not impose different or additional requirements to FDA regulations, the claims pose no conflict, would not affect the FDA's enforcement of federal law, and thus no preemption is warranted. The U.S. Supreme Court has recognized even in the context of much stricter medical device litigation that a State can provide a "damages remedy for claims premised on a violation of FDA regulations; and that the state duties in such a case "parallel," rather than add to, federal requirements. *Riegel v. Medtronic, Inc.*, 128 S. Ct. 999, 1011 (citing *Lohr,* 518 U.S. at 495); *see also id.* at 513 (O'Connor, J., concurring in part and dissenting in part) (*Lohr* involved a private state law negligence action against a manufacturer based upon a defective medical device). The Supreme Court in *Riegel* was responding to Petitioners-Plaintiffs' Brief that provided a detailed explanation of their assertion of a parallel claim:

> The Riegels' inadequate warning claim similarly seeks to enforce duties parallel to the MDA's general labeling rules. New York common law requires a manufacturer to provide "adequate warnings regarding use of its product." 86 N.Y. Jur. 2d, Products. Liab. § 51 (2007). 'Liability may be premised upon the complete absence of warnings as to a particular hazard, or upon the inclusions of warnings [that] are insufficient.' *El Sheikh v. Chem-Tainer Indus., Inc.,* 2006 WL 623464, at *4 (N.Y. Sup. Ct. Mar. 13, 2006); *see Cooley v. Carter-Wallace Inc.,* 478 N.Y.S.2d 375, 377 (N.Y. App. Div. 1984) ("warnings must clearly alert the user to avoid certain (unsafe) uses of the product which would appear to be normal and reasonable," and "to be adequate, the warnings must be commensurate with the risk involved in the ordinary use of the product") (citations omitted). A manufacturer may also incur liability for failing to warn of dangers that came to its attention after the product was manufactured or sold, through advancements in the state of the art or through reports of incidents involving dangers that warrant additional warnings. *See Cover v. Cohen,* 461 N.E.2d 864, 871 (N.Y. 1984).

*See* Petitioners-Plaintiffs' Brief in *Riegel v. Medtronic, Inc.*, Finkelstein Decl., Ex. E, at p. 41.

In *Farm Raised Salmon Cases*, the Supreme Court of California similarly considered the issue of parallel state law claims in the context of the FDCA and the California Sherman Food, Drug, and Cosmetic Law (Health & Saf. Code, § 109875), as to the regulation of color additives to food, and held that such claims are not preempted.  175 P.3d 1170 (2008).  The Supreme Court reversed the Court of Appeals' holding that the federal regulation involved did not preempt the sate law action because plaintiffs did not "seek to 'enforce[], or to restrain violations' of the FDCA . . . Rather, plaintiffs' claims for deceptive marketing of food products are predicated on state laws establishing independent state disclosure requirements 'identical to' the disclosure requirements imposed by the FDCA . . ."  175 P.3d at 1183.  The Supreme Court noted that, "If Congress intended to permit states to enact identical laws on the one hand, but precludes states from providing private remedies for violations on those laws on the other hand, 'its failure even to hint at it is spectacularly odd.'"  *Id.* at 1178 (citing to *Lohr*, 518 U.S. at 491).

Here, as detailed in the Complaint, including ¶¶ 147-150, 248-254, 264-266, Plaintiff alleges that Defendant Teva failed in its pharmacovigilance obligations regarding gabapentin and thus failed to adequately warn Plaintiff's decedent and his physician of all the risks of the drug gabapentin.  At least 46 states have enacted statutes regarding the misbranding of drugs, including Minnesota, where Plaintiff's decedent resided.  *See* Listing of 46 State misbranding statutes, Finkelstein Decl., Ex. F.  Plaintiff will base this claim, in part, on Defendant's failure to comply with the Minnesota Misbranding statute, Minn. Stat. § 151.36.  Plaintiff is not seeking to enforce the FDA regulations, but instead asserts claims premised on state common-law negligence and/or state statutory law.  Defendant's failure to comply with the Minnesota Misbranding statute and common-law negligence duty runs parallel with its failure to comply with FDA regulations.  21 C.F.R. §§ 314.80, 314.70(c) and 201.57(e).

Plaintiff specifically claims that Defendant Teva failed in its pharmacovigilance obligations related to gabapentin, including Defendant's **failure to develop written procedures for the surveillance, receipt, evaluation, and reporting of postmarketing adverse drug experiences to FDA**.  *See* 21 C.F.R. § 314.80.  Plaintiff alleges that had Defendant been vigilant

in its duty to perform post-marketing evaluation, Defendant would have discovered reasonable evidence of an association of a serious hazard with gabapentin. *See* 21 C.F.R. § 201.57(e). Defendant's drug would thus be misbranded under the Minnesota Misbranding Statute.

### A.    FDA Regulations Violated by Defendant

#### 1.    Plaintiff Alleges Defendant Violated 21 C.F.R. § 314.80(e) – Safety Surveillance, which states in relevant part:

(b) *Review of adverse drug experiences.* Each applicant having an approved application under 314.50 or, in the case of a 505(b)(2) application, an effective approved application, shall promptly review all adverse drug experience information obtained or otherwise received by the applicant from any source, foreign or domestic . . . . Any person subject to the reporting requirements under paragraph (c) of this section **shall also develop written procedures for the surveillance, receipt, evaluation, and reporting of postmarketing adverse drug experiences to FDA.**" [Emphasis added.]

#### 2.    Defendant Violated 21 C.F.R. § 201.57(e) – Revising the Label, which pertains updating labeling, and states in relevant part:

(e) Warnings. Under this section heading, the **labeling shall describe serious adverse reactions and potential safety hazards, limitations in use imposed by them,** and steps that should be taken if they occur. **The labeling shall be revised to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved.** A specific warning relating to a use not provided for under the ``Indications and Usage'' section of the labeling may be required by the Food and Drug Administration **if the drug is commonly prescribed for a disease or condition, and there is lack of substantial evidence of effectiveness for that disease or condition, and such usage is associated with serious risk or hazard**. [Emphasis added.]

#### 3.    Defendant Violated 21 C.F.R. § 314.70(c)(2)(i), which allows changes in labeling to be made prior to FDA approval under circumstances to "add or strengthen a contraindication, warning, precaution, or adverse reaction".

Plaintiff sufficiently alleges in her Complaint that Defendant Teva has failed in its pre- and post-marketing pharmacovigilance obligations. Her common-law negligence should not be preempted. With regard to Defendant's negligent breach of its common-law duty to monitor pre- and post-approval of adverse events of its drug gabapentin, the U.S. Supreme Court determined an analogous issue in *Medtronic, Inc. v. Lohr*, 518 U.S. 470, which concerned the issue of preemption in light of the amendments to the federal regulations regarding medical devices:

Nothing in § 360k denies Florida the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements . . . . The presence of a damages remedy does not amount to the additional or different "requirement" that is necessary under the statute; rather, it merely provides

another reason for manufacturers to comply with identical existing "requirements" under federal law.

518 U.S. at 495.  There is no evidence that Plaintiff's common-law claims based on Defendant's violations of parallel federal regulation impose requirements in excess of FDA requirements. There is no reason to believe that such parallel common-law claims would burden or interfere with the FDCA regulatory scheme.  Thus, the issue of preemption should not apply to Plaintiff's sufficiently pleaded common-law claims based on negligence and/or strict products liability, which parallel Defendant's violation of pharmacovigilance requirements imposed by the FDA.[4]

Plaintiff therefore respectfully requests that this Court deny Defendant's motion for judgment on the pleadings in its entirety, and that if this Court does not find that the allegations included in Plaintiff's Complaint are sufficient to state causes of action that will sustain a preemption challenge by Defendant, Plaintiff requests leave to amend the Complaint.

Dated:  August 28, 2009

Respectfully submitted,

*Members of Products Liability*
*Plaintiffs' Steering Committee*

By:     **/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
1279 Route 300
P.O. Box 1111
Newburgh, NY  12551

By:     **/s/ Jack W. London**
Jack W. London, Esquire
Law Offices of Jack W. London
   & Associates
106 E. 6th Street, Suite 700
Austin, TX  78701

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on August 28, 2009.

**/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire

---

[4] *See also Leipart v. Guardian Indus., Inc.*, 234 F.3d 1063 (9th Cir. 2000) (plaintiffs' common-law claims for strict and negligence-based product liability for design, manufacture, and distribution were not preempted by the federal Consumer Product Safety Act.).

# APPENDIX

## CASES PENDING IN THE NEURONTIN MDL NO. 1629
## NAMING TEVA PHARMACEUTICALS USA, INC. AS A DEFENDANT

| ORIGINAL CASE | TEVA'S RESPONSE | TRANSFER TO MDL |
|---|---|---|
| *Blackwell v. Pfizer Inc., et al.*, No. 2:06-cv-2295-BWK (E. D. Pa. filed Jun 1, 2006). | Motion to dismiss filed June 12, 2006. | Transferred to this MDL by CTO-25 (July 17, 2006), No. 1:06-cv-11397-PBS. |
| *Briggs v. Pfizer Inc., et al.*, No. 1:06-cv-15451-JSR (S.D.N.Y filed Dec. 26, 2006). | Motion to dismiss filed March, 12, 2007; Stipulation Adjourn Teva's Motion to Dismiss entered Feb. 28, 2008. | Transferred to this MDL by CTO-36 (Jan. 31, 2007), No. 1:07-cv-10327-PBS. |
| *Farris v. Pfizer Inc., et al.*, No. 0:06-cv-03975-ADM-JSM (D. Minn. filed Oct. 5, 2006). | Stipulations to extend Teva's time to answer entered Feb. 15, 2007 and Feb. 28, 2008. | Transferred to this MDL by CTO-36 (Oct. 24, 2006), No. 1:06-cv-12063-PBS. |
| *Hairfield v. Pfizer Inc., et al.*, No. 2:08-cv-01998-JCJ (E. D. Pa. filed April 2, 2008). | Answer filed June 6, 2008. | Transferred to this MDL by CTO-53 (May 7, 2008), No. 1:08-cv-10930-PBS. |
| *McLendon v. Pfizer Inc., et al.*, No. 1:08-cv-07843-JSR (S.D.N.Y. filed Sept. 9, 2008). | Stipulation to extend Teva's time to answer entered Jan. 9, 2009. | Transferred to this MDL by CTO-59 (Dec. 8, 2008), No. 1:08-cv-12034-PBS. |
| *Morrow v. Pfizer Inc., et al.*, No. 3:08-cv-00071-SA-SAA (N. D. Miss. filed July 2, 2008). | Stipulation to extend Teva's time to answer entered Oct. 16, 2008. | Transferred to this MDL by CTO-58 (Oct. 6, 2008), No. 1:08-cv-11706-PBS. |
| *Newberry v. Pfizer Inc., et al.*, No. 1:07-cv-00110-WLS (M. D. Ga. filed July 7, 2007) (summons issued as to Teva on Oct. 12, 2007). | Answer filed Dec. 14, 2007. | Transferred to this MDL by CTO-46 (July 24, 2007), No. 1:07-cv-11499-PBS. |
| *Ramsey v. Pfizer Inc., et al.*, No. 2:06-cv-04718-MK (E. D. Pa. filed Oct. 20, 2006). | Motion to Dismiss filed Oct. 27, 2007. | Transferred to this MDL by CTO-34 (Nov. 17, 2006), No. 1:06-cv-12212-PBS. |
| *Samuels v. Pfizer Inc., et al.*, No. 1:08-cv-00980-BEL (D. Md. filed April 17, 2008). | Stipulation to extend Teva's time to answer entered June 6, 2008. | Transferred to this MDL by CTO-53 (May 7, 2008), No. 1:08-cv-10958-PBS. |