```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MASSACHUSETTS
 2

 3      _____

 4      IN RE:  NEURONTIN MARKETING,
        SALES PRACTICES AND PRODUCTS
 5      LIABILITY LITIGATION,                    Civil Action
                                                 No. 04-10981-PBS
 6
                                                 July 27, 2009
 7      _____

 8

 9

10           TRANSCRIPT OF MOTIONS HEARING, JURY TRIAL DAY 1

11              BEFORE THE HONORABLE PATTI B. SARIS

12                 UNITED STATES DISTRICT COURT

13             JOHN J. MOAKLEY U.S. COURTHOUSE

14                    1 COURTHOUSE WAY

15                   BOSTON, MA   02210

16

17

18

19

20

21
                        DEBRA M. JOYCE, RMR, CRR
22                      Official Court Reporter
                     John J. Moakley U.S. Courthouse
23                   1 Courthouse Way, Room 5204
                          Boston, MA  02210
24                        617-737-4410

25
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:

 3   W. MARK LANIER, ESQ.
     DARA HEGAR, ESQ.
 4   ROBERT LEONE, ESQ.
     Lanier Law Office
 5   6810 FM 1960 Road W
     Houston, TX 77069
 6   713-659-5200

 7   ANDREW G. FINKELSTEIN, ESQ.
     KENNETH B. FROMSON, ESQ.
 8   Finkelstein & Partners, LLP.
     436 Robinson Avenue
 9   Newburgh, New York  12550

10   JACK W. LONDON, ESQ.
     Jack W. London & Associates, P.C.
11   3710 Bee Cave Road, Suite 200
     Austin, TX  78746

12   FOR THE DEFENDANTS:

13

14   WILLIAM S. OHLEMEYER, ESQ.
     Boies, Schiller & Flexner LLP
15   333 Main Street
     Armonk, NY 10504
16   914-749-8440

17   DAVID B. CHAFFIN, ESQ.
     Hare & Chaffin
18   160 Federal Street, 23rd Floor
     Boston, MA  02110-1701

19

20   CHARLES P. GOODELL, JR.
     RICHARD M. BARNES, ESQ.
21   Goodell, DeVries, Leech & Dann, LLP
     One South Street, 20th Floor
22   Baltimore, MD  21202

23

     MARK S. CHEFFO, ESQ.
24   Skadden, Arps, Slate, Meagher & Flom LLP
     Four Times Square
25   New York, NY 10036
     212-735-3000
```

```
 1                    P R O C E E D I N G S

 2              (The following proceedings were held in open

 3   court before the Honorable Patti B. Saris, United States

 4   District Judge, United States District Court, District of

 5   Massachusetts, at the John J. Moakley United States Courthouse,

 6   1 Courthouse Way, Boston, Massachusetts, on July 27, 2009.)

 7              *   *   *   *   *   *   *   *   *   *

 8              THE CLERK:  All rise for the jury.

 9              (Jury left the courtroom.)

10              JUDGE SARIS:  Did you all want to take a break and

11   then come back and discuss your issues?  I know you've been

12   going straight as well.

13              MR. OHLEMEYER:  That would be great.

14              JUDGE SARIS:  Let's -- what would you say, 15 minutes?

15              MR. OHLEMEYER:  That's fine.  Thank you.  So maybe

16   five past three.

17              (Recess taken.)

18              JUDGE SARIS:  We already have a problem.  So Mr. Alba

19   met with the jury, and the Chinese woman does not understand

20   English.

21              THE CLERK:  Juror number eight.

22              THE COURT:  So we told her to come in tomorrow, and if

23   that is true, I will similarly strike her and go with nine

24   jurors.  So I just wanted to report that.  I will do that first

25   thing before we come out tomorrow morning.
```

02:50 (line 10)
03:17 (line 20)

1          So it is true I did not explicitly ask can you

2     understand English, but I am quite sure, based on what she told

3     Robert and his impression, that this is the case.

4          Okay.  What are the issues for tomorrow?

5          MR. CHEFFO:  Your Honor, I'm going to try to get right

6     to the point here.  You have made several things abundantly

7     clear.  You've made clear that while you've made some

8     generalized rulings, the tone and the emphasis of how things

9     come into this courtroom, it's going to be very important.

03:18 10         We got this morning a stack of exhibits -- you'll

11    recall that the plaintiffs didn't want to exchange, you

12    required both sides exchange -- we got a stack at 8:30 that the

13    plaintiffs were apparently thinking about using in their

14    opening.

15         We've had a chance, in between everything else --

16         JUDGE SARIS:  Demonstratives or exhibits?

17         MR. CHEFFO:  Demonstratives.  This is just some -- may

18    I --

19         JUDGE SARIS:  Yes.  Robert --

03:18 20         MR. CHEFFO:  This is, to some extent, just a sampling,

21    your Honor.  And what it says is a few things.  It says that,

22    apparently, the plaintiffs, in my view, your Honor, didn't

23    really understand the message very well.  "Neurontin snake

24    oil" --

25         JUDGE SARIS:  Let me ask a basic thing.  Were you

         1   planning on using these things?

         2           MR. LANIER:  Your Honor, a couple of these I had told

         3   Mr. Chaffin I'd be glad to negotiate with him on.

         4           JUDGE SARIS:  No --

         5           MR. LANIER:  Our intention would be, if the Court

         6   would let us, to use them.

         7           JUDGE SARIS:  Let me just say this -- what do you

         8   understand an opening statement to be?

         9           MR. LANIER:  Your Honor, the opening statement is what

03:19   10   I say what the evidence is going to be.  So, for example, with

        11   snake oil --

        12           JUDGE SARIS:  That's just inflammatory.  You're not

        13   going to use a picture of snake oil.  I don't want to be

        14   there -- you know, piles of money.  This is a preview of what

        15   the evidence will be.  And this is inflammatory.

        16           MR. LANIER:  And that's fine, your Honor.  The snake

        17   oil perspective, the reason we have that is because --

        18           JUDGE SARIS:  This is -- I would have declared a

        19   mistrial on some of this.  A picture -- where are you from?

03:19   20           MR. LANIER:  I'm from Texas; I'm licensed in New York.

        21           JUDGE SARIS:  I'm sure the judges down there wouldn't

        22   allow it.

        23           MR. LANIER:  I use stuff like this in New Jersey, New

        24   York, Texas.

        25           JUDGE SARIS:  A picture of a little girl against a big

```
 1  building --
 2          MR. LANIER:  Yes --
 3          THE COURT:  No, no.
 4          MR. LANIER:  I would be glad to change it however you
 5  like, your Honor.  I would like you to know at least some of
 6  the reasoning behind it.
 7          For example, the snake oil, what David Franklin says
 8  is that he was given a slide of the snake oil salesman that he
 9  was required to show to doctors when he was talking to them
10  about how Neurontin was a cure-all and that the slide would
11  change as they added new diseases.  The running joke at Pfizer
12  was that you are supposed to say to the doctor before you show
13  him the snake oil slide I feel like --
14          THE COURT:  Excuse me.  Whose word is "snake oil"?
15          MR. LANIER:  It's Pfizer, Warner-Lambert, whoever the
16  entity was.
17          JUDGE SARIS:  Then just say that, Warner-Lambert
18  itself referred to it as snake oil, that is fine.
19          MR. LANIER:  The pitch is a snake oil pitch.
20          JUDGE:  Fine.  If that's evidence, you can use it, but
21  that's different from a big picture a can of snake oil.
22          MR. LANIER:  All right, I'll take the picture out.  I
23  just didn't want you to think I made that up.
24          JUDGE SARIS:  Bring it down a couple of notches.
25          MR. LANIER:  I'll be glad to.
```

```
 1          JUDGE SARIS:  I don't want to go through this one by
 2    one.
 3          MR. CHAFFIN:  I think the fourth page of this
 4    document, we think they didn't give us a copy, it's a box, it's
 5    kind of like a circus box, it's got playing cards, ties, eggs,
 6    rubber balls.  This is not a game, your Honor.
 7          JUDGE SARIS:  Pfizer worked hard to cover its tracks
 8    and you have a giant -- this is showmanship.  I -- this is --
 9    let me say, this is a trial.  If Pfizer's or Warner-Lambert's
10    employees referred to it as snake oil, of course you can put
11    that in opening statement, but you cannot have incendiary and
12    inflammatory slides.
13          MR. LANIER:  In fairness, your Honor, if I could at
14    least alert you, so you don't think I'm a goofball up here.  We
15    have sought the very slides that had the snake oil that
16    originally were in the possession of the defendants, but those
17    slides have long since been destroyed, so we don't know what
18    the slide looked that had the snake oil on it.
19          The same concept, these were also their words, that
20    they tried to cover their footsteps.
21          JUDGE SARIS:  Then use their quote with their words.
22          MR. LANIER:  Without a picture.
23          JUDGE SARIS:  Without a picture.  But not a giant --
24    not a picture of a beautiful little girl against a big, giant
25    apartment building.  This is an opening statement.  Maybe we're
```

1    really conservative up here, but that means a preview of the

2    evidence that you expect to introduce, not an effort to inflame

3    the jury before they've even heard anything.

4         MR. LANIER:  And I understand where you are coming

5    from, your Honor, and all I was looking do was --

6         JUDGE SARIS:  This is like a law school exam question,

7    like, what's permissible?  Anyway, no.  Okay.

8         MR. LANIER:  Fair enough, your Honor.

9         JUDGE SARIS:  In fact, I haven't seen one yet I'd

03:23 10   allow.

11        MR. LANIER:  They only pulled out the ones, I guess,

12   they had a fuss with.

13        MR. CHEFFO:  I have five folders.  I assume Mr. Lanier

14   will take the Court's guidance and be very conservative.

15        We have David Franklin, he worked for four months back

16   in 1996.  It's interesting, it says "David Franklin," with a

17   little sign, to the Pfizer building.  Of course, he never

18   worked for Pfizer, so it's absolutely misleading.  There's

19   nothing about Warner-Lambert, and it talks about he's selling

03:23 20   it to pediatricians for ADD.  Now, your Honor made some rulings

21   with respect to marketing, we're not here to argue that, we

22   understand that, but I think, again, tone and emphasis.

23        You said very clearly that it has to be tethered to

24   this case.  This is not a fraud on the market case.

25        There's another slide in here that talks about

1    boondoggle in Atlanta.  You specifically said no Boca

2    vacations.

3              You have to understand this ties in to Mr. Franklin as

4    well.  He is scheduled to testify for about three hours

5    tomorrow.  He worked for --

6              JUDGE SARIS:  I'm not sure -- wait, let's just back up

7    for one moment here.  I did not say you couldn't bring up the

8    fact that there were boondoggle trips.  It had to be tied to

9    market Neurontin.  But that's different from a giant picture of

03:24  10   a castle or a human being -- Pfizer worked hard to cover its

11   tracks and a big, giant foot.

12             MR. LANIER:  And I'll pull that out.  The castle is

13   actually the Chateau Elan in Atlanta where the meeting was.  I

14   don't call it a boondoggle.

15             JUDGE SARIS:  I don't feel as strongly about -- a lot

16   of the stuff is preposterous, frankly.  It's undermining my

17   confidence that you're going to curb your enthusiasm in front

18   of this jury.

19             MR. LANIER:  Your Honor, I will try my hardest to keep

03:24  20   you from getting upset with me.

21             JUDGE SARIS:  I don't want to -- I don't know you, you

22   have hardly shown up at all.

23             MR. LANIER:  That's true.

24             JUDGE SARIS:  Okay.  And I have a certain friendly

25   style, I rule but I don't want to make this a harsh place.

1          This isn't the kind of stuff we allow here, and I

2     don't know who local counsel who knows me, but I'll give you a

3     lot of latitude, I have already, in some of my rulings if it's

4     relevant but not inflammatory.

5          MR. LANIER:  Okay.  I will work -- I can give you a

6     list of federal judges that have never been upset with me that

7     you can check on.  I don't want you upset with me.  I'll work

8     hard to please you, your Honor, but some of the material and

9     some of the deeds that went on are inflammatory.

03:25 10          THE COURT:  They may be.  And that's why I said, if

11     they're Warner-Lambert's words, snake oil, fair game.

12          MR. LANIER:  Okay.

13          JUDGE SARIS:  But that's different from a giant can of

14     snake oil.  Part of me sort of thinks I should just let you do

15     it all because I think the juries up here won't respond well to

16     it.  It just -- you're objecting, so --

17          MR. CHEFFO:  I'd rather not take that chance, your

18     Honor.  There's like a million of these.  A dark hand holding

19     $20, it says "Pfizer paid" -- we understand what he can say.

03:26 20     If he thinks he can get the evidence in, the jury will hold him

21     accountable, but you can't have, like, the web of -- it just

22     goes on and on.

23          JUDGE SARIS:  You've sold me.  At first I was thinking

24     what is it, like a little chart of how many sales there are of

25     Neurontin?  Oh, no.  So I got it.

 1         What's the next issue?

 2         MR. CHEFFO:  The next issue, and we either take it up

 3   today or tomorrow morning, but it goes really to the issue of

 4   Mr. Franklin.  Okay.  Now, again, we're not getting into the

 5   minutia of specific rulings, but it's critically important, I

 6   think, for your Honor -- and I actually do have a bench memo I

 7   think would be instructive for the Court, it's very short.  It

 8   really goes to the issues that Mr. Franklin, again, was there

 9   at Warner-Lambert, not Pfizer, between, I believe, March and

03:27 10   July 1996.  That's it.

11         So all of these exhibits that I expect -- they haven't

12   exchanged them, I just want to preview, tomorrow morning at

13   8:30, I have the man scheduled to testify for at least three

14   hours.  You asked, I think, Mr. Altman specifically --

15         JUDGE SARIS:  Mr. Franklin is the first up?

16         MR. LANIER:  Yes, your Honor.

17         MR. CHEFFO:  And you asked Mr. Altman last week,

18   you're going to tie this to 2000, 2004, again, he said

19   emphatically yes.

03:27 20         JUDGE SARIS:  How are you -- I already permitted

21   Dr. Franklin to testify because it involves a course of conduct

22   which goes to corporate intent and the amount of profit

23   involved.  And I said to some extent the time limits are the

24   things that are going to tether your time, but you had also

25   made a proffer you would carry the off-label marketing and the

1    improper conduct through the time of her taking the Neurontin.

2         MR. FINKELSTEIN:  We will.  Not necessarily through

3    Dr. Franklin.

4         MR. CHEFFO:  Again, these are very good lawyers,

5    maybe, but what I've seen today, it concerns me that they're

6    going to try and use Mr. Franklin as a sounding board.  If he

7    has personal knowledge of something when he was at

8    Warner-Lambert, we'll object to that in the normal course, it's

9    objectionable.  What they can't do is, basically, here's a

03:28 10  document for 2003, here's something you never saw before.

11         THE COURT:  No, of course he can't.

12         MR. CHEFFO:  He's been designated for three and a

13   half, four hours; we'll see what exhibits they have for

14   tomorrow.  Again, I think -- we're previewing it.

15         THE COURT:  All right.

16         MR. CHEFFO:  The other quick issue --

17         JUDGE SARIS:  Franklin, how long do you think he'll be

18   on?

19         MR. LANIER:  What I told Mr. Ohlymeyer earlier is I'd

03:28 20  put him on for about two hours, which means he'd have about an

21   hour and a half tomorrow, about 30 minutes from us the next

22   morning.  And I asked how long the cross would be --

23         JUDGE SARIS:  And you're limiting it to what he

24   personally knows.

25         MR. LANIER:  Absolutely.  It's King that carries it

1    forward, your Honor.

2              MR. CHEFFO:  Okay.

3              THE COURT:  Who's the next witness?

4              MR. LANIER:  Your Honor, after him, my hope is to put

5    on, depending on how long their cross takes, my hope is to put

6    on the deposition of Robert Glanzman, and then the deposition

7    of Leslie Tive, the next life witness we have is Thursday,

8    Dr. Trimble coming in from London.

9              JUDGE SARIS:  What about these depositions, have I

03:29 10    ruled on objections?  What's going on with those?

11             MR. CHEFFO:  You have not.

12             MR. OHLEMEYER:  No, your Honor.

13             MR. LONDON:  I believe the designations have not

14    received objections.

15             MR. CHEFFO:  They told me this morning what the

16    depositions were.

17             JUDGE SARIS:  Understand I am not ATM justice.  You

18    don't spit in the objection and I spit out the ruling.  I sit

19    and I read it and I think about it.

03:29 20             So the issue is have you given him --

21             MR. FINKLESTEIN:  Your Honor, I've been corresponding

22    today via e-mail with defense counsel.  I'm confident we can

23    get to you through e-mail this afternoon and evening the

24    objections.  The parties have already jointly prepared the

25    objections --

```
 1          JUDGE SARIS:  When you say this evening --

 2          MR. FINKLESTEIN:  If I had access to the document, I'd

 3     e-mail it right now.

 4          THE COURT:  As a practical matter, let's just get past

 5     this.  If you say this evening, I will not have it, which means

 6     I'm in with all of you tomorrow, and I think I have an

 7     afternoon full, which means I don't rule on it -- let's just

 8     talk practically speaking.  Even assuming I'm going to give you

 9     my evening hours again -- I know you're all working that way --
03:30 10   it means I don't get the ruling to you until Wednesday morning.

11     That's probably too late.  You see, that's my problem.

12          MR. FINKLESTEIN:  Your Honor, given the 48-hour time

13     frame, if we would have given it to you this morning, you still

14     wouldn't get it until Wednesday.

15          JUDGE SARIS:  I'd do it right now.

16          MR. FINKLESTEIN:  I'm not putting defense counsel on

17     the spot --

18          MR. LANIER:  That's my problem.  The videos that we

19     intend to play are Glanzman and Tive.
03:31 20        JUDGE SARIS:  Excuse me.  You see this long list,

21     2:00, 3:00, 4:00, 4:15, 4:30?

22          MR. LANIER:  Your Honor, we will find a live witness

23     to put on the stand Wednesday when we finish with David

24     Franklin so that we give you those with plenty of time for you

25     to rule on them.  The reason I put those out, your Honor,
```

1    because I thought I might need filler, I don't know how long,

2    and I do need to get Trimble off and on the stand on Thursday.

3         JUDGE SARIS:  How long do you think Franklin is going

4    to be on cross?

5         MR. CHEFFO:  Probably, I would say, between 30 and 45

6    minutes is my best estimate, depending on your Honor's rulings

7    tomorrow.

8         THE COURT:  Who might another live witness be?

9         MR. LANIER:  Your Honor, I'll have to go through our

03:31 10   schedule and see who we can bring in.  Our next witness is

11   Trimble, Dr. Trimble is available Thursday.

12        THE COURT:  I'm happy to take deposition in the

13   interim, my issue is ruling on objections in time for you to

14   able to edit.

15        MR. LANIER:  I understand.

16        THE COURT:  We'll do what we can do.

17        MR. LANIER:  I thought that had been dealt with.  It's

18   my fault for not seeing that it actually wasn't.  My apologies

19   to the Court.

03:32 20        MR. CHEFFO:  To be clear, I just got it this morning,

21   but we're going to work together.  We'll limit the amount of

22   objections.  If we can get you something you can take a look at

23   tomorrow and then use the depositions -- we're going to work

24   and try to do that, sometimes it's hard.

25        JUDGE SARIS:  Right.  My concern is, just understand

1    that I'm doing other things in the afternoon.  I've made it

2    much lighter for the first two weeks in August, but the reason

3    I'm not going into the afternoons this week is because I'm very

4    heavily booked.

5         Go ahead.

6         MR. CHEFFO:  I just had two other things, before I

7    forget -- I gave a copy to counsel.  The only other thing

8    that's worth taking a minute or two, because it is

9    evidentiary --

03:33 10         JUDGE SARIS:  Is this just relitigating what we talked

11    about before?

12         MR. CHEFFO:  No, I don't think so, your Honor.

13         THE COURT:  If it is, I'm not going to read it.

14         MR. CHEFFO:  Fair enough, your Honor.

15         MR. FINKELSTEIN:  It was just handed to us, so we

16    can't comment on it.

17         JUDGE SARIS:  Yes, it is a reargument.

18         MR. CHEFFO:  I don't think it is, your Honor.  I think

19    it basically talks about -- it puts in context -- it takes in

03:33 20    context your Honor's rulings but talks about some of the

21    exhibits we got this morning.

22         JUDGE SARIS:  I'll have to read it.  I haven't looked

23    at it.

24         MR. CHEFFO:  The only, really, other point, I guess,

25    I'd like to make is they've given us exhibits, I'm not sure

1    they intend to use it as a demonstrative or as an exhibit,

2    because it was DDMAC letters.  They're letters that come --

3    there's a division of the FDA called DDMAC, and I can probably

4    give you the acronym, but it's basically they monitor the

5    marketing and advertising for products, pharmaceutical

6    advertising.  And they sometimes will give warning letters or

7    violations, depending on where things are in marketing if they

8    find that there's some technical violation or something more

9    serious.

03:34  10    And the Seroquel court that we talked to you about the

11    other day addressed a lot of these issues.  It specifically

12    addressed the DDMAC letters in the context of Seroquel, this is

13    the January 2009 decision.  What the court said was violations,

14    DDMAC violations of FDCA, the Food, Drug and Cosmetic Act, that

15    in the abstract are not going to be admissible because there's

16    no private right of action, unless, again, you can tether it.

17    So if you can show that a doctor went to a symposium or read or

18    saw something -- so basically the courts just haven't allowed,

19    at least the Seroquel court, and I think others, allowed this

03:34  20    evidence of violation out there to come in.

21    JUDGE SARIS:  What do you plan on doing?  I don't

22    understand.

23    MR. LANIER:  Your Honor, there are two letters we were

24    looking at sending forward.  Letters that do pertain to

25    Neurontin, letters dated from the 2001 to 2002 era that say you

1    are giving out false information.  You're trying to act like

2    you have a knowledge of how the drug works when you don't know

3    how the drug works.  You're making false claims for the drug.

4            THE COURT:  I'll have to read them.

5            MR. FINKELSTEIN:  They relate to mechanism of action,

6    right to the heart of what this is about.

7            JUDGE SARIS:  I'll have to read them.

8            Who makes this finding?

9            MR. FINKELSTEIN:  The FDA.

03:35 10         JUDGE SARIS:  Is it after an administrative hearing?

11           MR. LANIER:  No, it's the Division of Drug Marketing

12   Advertising and Communications.

13           JUDGE SARIS:  Is there a way of appealing it?

14           MR. LANIER:  Absolutely there is, your Honor, and drug

15   companies have the ability to write back, argue and fuss about

16   it and do whatever they might wish to do.

17           MR. CHEFFO:  It's not quite that simple.  It's

18   basically they write you a letter after the fact and they say

19   we thought -- I don't mean to demean it -- it could be we

03:35 20   thought your font size was improper, or it may be --

21           THE COURT:  Let me read it.

22           MR. CHEFFO:  Absolutely.

23           THE COURT:  Okay.  What else, anything?

24           MR. CHEFFO:  In the same -- I have copies, if you

25   would like it -- the Court addressed the issue of ghostwriting

```
 1    and plagiarism, essentially didn't say you couldn't reference
 2    the fact that you used a separate consultant to write, that was
 3    fair game, but you couldn't use -- and in fairness, and the
 4    plaintiffs agreed to this in the context of a motion in limine,
 5    but the Court ordered that you couldn't use plagiarism or
 6    ghostwritings because those terms were inflammatory.  I raise
 7    that -- that's fairly minute, I agree, your Honor, but that was
 8    one of the slides that Mr. Lanier handed us this morning and
 9    said "ghostwriting" on there.  So I think consistent with the
10    Seroquel decision that should be something that should guide
11    the court.
12              MR. LANIER:  I will take out any such reference to
13    ghostwriting.  I will reference the fact instead that Pfizer
14    was writing the articles and then hiring doctors for the
15    doctors to put their names on.
16              THE COURT:  I'm not going to micromanage this that
17    way.
18              Anything from your end?
19              MR. FINKELSTEIN:  Yes, your Honor.  Very broad topic.
20    One is the general concept that they put forth that
21    Neurontin -- and I'm referring specifically to one of their
22    slides -- Neurontin has an excellent overall safety profile.
23    It's just completely misleading to the jury when we're talking
24    about -- the profile was only for the epileptic population.  If
25    they want to say things through their studies as it relates to
```

```
  1    the epileptic population, that's fine.  But this jury is going
  2    to have a hard time understanding on-label/off-label, and when
  3    they set forth potentially misleading statements of the overall
  4    -- as if it safely profiled the off-label population, which was
  5    not tested, versus the on-label population, which was tested.
  6    It just takes us down a path that this jury isn't going to be
  7    able to understand.
  8              JUDGE SARIS:  Isn't that Gibbons and -- I forget some
  9    of the other ones --
03:37 10           MR. FINKELSTEIN:  We have doctors that will testify to
  11   that in any population.
  12             JUDGE SARIS:  That's overruled.
  13             Anything else?
  14             MR. FINKELSTEIN:  Yes, specifically --
  15             JUDGE SARIS:  I got the deposition on Friday, right,
  16   or Thursday?
  17             MR. FINKELSTEIN:  Yes.
  18             JUDGE SARIS:  I haven't read it yet.
  19             MR. FINKELSTEIN:  Specifically an evidentiary issue on
03:38 20   one of their documents they're making reference to an e-mail
  21   that purportedly comes from the FDA but it is an e-mail that we
  22   never received any of the authenticity, it's straight hearsay.
  23             MR. OHLEMEYER:  What's that to?
  24             MR. FINKELSTEIN:  To Ruggieri.
  25             JUDGE SARIS:  So you're not going to use it.
```

1          MR. OHLEMEYER:  I'm not going to use it tomorrow,

2     correct.

3          JUDGE SARIS:  So given the fact that I've just

4     microscripted what I normally do at 8:30, quarter of nine, do

5     you all want to meet early?

6          MR. CHEFFO:  The only reason we haven't received --

7     again, depending on your Honor's schedule, we haven't received

8     the exhibit for Mr. Franklin yet, that wasn't required to be

9     exchanged until 8:30.

03:38 10          JUDGE SARIS:  You need to exchange, you won't need me.

11     I'll be available at quarter of nine, but I won't hold up the

12     openings statements.  I think we need to get that going, it's

13     an hour apiece and then the hook.

14          MR. LANIER:  That will be fine.

15          MR. OHLEMEYER:  Are you going to bring the juror in

16     tomorrow morning?

17          JUDGE SARIS:  Yes, I need to --

18          MR. OHLEMEYER:  Do you need us for that?

19          JUDGE SARIS:  In general I do it with counsel present.

03:39 20          MR. CHEFFO:  What time would you like, 8:40?

21          JUDGE SARIS:  As soon as she gets here, 9:00, I'll

22     probably excuse her if she can't understand English.  I think

23     it's a bit -- I didn't really focus on it until I saw you all

24     standing.  I think it's a bit intimidating for someone to have

25     12 lawyers hovering.  So what might make sense is to have one

1    from each side, because it's a little scary.

2            MR. OHLEMEYER:  Sure.

3            JUDGE SARIS:  So see you tomorrow.  I know you won't

4    have a nice night, but do your best.

5            (Court adjourned at 3:38 p.m.)

6                    - - - - - - - - - - - -

7                        CERTIFICATION

8          I certify that the foregoing is a correct transcript

9    of the record of proceedings in the above-entitled matter to

10   the best of my skill and ability.

11

12

13

14   /s/Debra M. Joyce_____          September 11, 2009_____
     Debra M. Joyce, RMR, CRR          Date
15   Official Court Reporter

16

17

18

19

20

21

22

23

24

25