UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------- x
:
In re:   NEURONTIN MARKETING, SALES PRACTICES,  :
         AND PRODUCTS LIABILITY LITIGATION      :
                                                :
------------------------------------------------------------- x   MDL Docket No. 1629
                                                :
THIS DOCUMENT RELATES TO:                       :   Master File No. 04-10981
                                                :
ALL CLASS ACTIONS                               :   Judge Patti B. Saris
                                                :
------------------------------------------------------------- x   Magistrate Judge Leo T.
                                                :   Sorokin
HARDEN MANUFACTURING CORPORATION;               :
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,     :
dba BLUECROSS/BLUESHIELD OF LOUISIANA;          :   **Leave to File Granted on**
INTERNATIONAL UNION OF OPERATING ENGINEERS,     :   **September 11, 2009**
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL    :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and     :
LORRAINE KOPA, on behalf of themselves and all others :
similarly situated, v. PFIZER INC. and WARNER-LAMBERT :
COMPANY.                                        :
                                                :
------------------------------------------------------------- x

**DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL
AUTHORITY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

*Clark v. Pfizer Inc.*, No. 1819 (Pa. Ct. of Common Pleas, Phila. Co., June 29, 2007) is not persuasive authority with regard to the certification issues at bar. In an apparent effort to create the impression that *Clark* and this case are the same, plaintiffs assert that the Court "certified a class composed of all persons who purchased Neurontin for any off-label use from 1995 to the present." Plaintiffs' Notice (Dkt # 779) at 2. The class certified in *Clark*, however, is limited to Pennsylvania consumers, i.e., persons who purchased Neurontin in Pennsylvania solely for personal, family, or household purposes. *Clark*, slip op. at 14, 23. Here, by contrast, plaintiffs seek to certify a nationwide class of all individuals and entities, including third party payers, who

paid for Neurontin for off-label uses.  Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (Dkt # 206), at 9.

Moreover, the impression that *Clark* addressed issues similar to those before this Court is not well-founded for at least four reasons.  First, the *Clark* opinion simply fails to address what has been identified as the key issue presented by plaintiffs' motion:  whether a class may be certified when an indispensable element of each of plaintiffs' asserted claims—causation—cannot be resolved without individual, fact-intensive inquiries.  Second, the claims asserted in *Clark* are different than the claims that plaintiffs have asserted here.  Third, *Clark* was decided on the basis of class certification standards incompatible with those applicable to plaintiffs' motion.  Fourth, the facts upon which the *Clark* Court based its ruling cannot be reconciled with the record before this Court.

First, the *Clark* opinion simply does not speak to a central issue presented by plaintiffs' motion for class certification.  The opinion contains no analysis or explanation of how plaintiffs can prove on a class-wide basis that allegedly false statements caused plaintiffs' physicians to prescribe Neurontin.  By contrast, the only other opinion to address a motion to certify a class asserting claims for economic losses relating to the off-label use of Neurontin, *Santullo v. Pfizer, Inc.*, No. D-0101-CV-200301377, 2005 WL 4255513 (N.M. Dist. Dec. 9, 2005), squarely addresses this key issue.  The *Santullo* Court, applying similar class certification standards, refused to certify a class asserting claims of common law fraud, unfair or deceptive trade practices, and unjust enrichment, all of which have been brought in this action.  *See id.* at *6 (concluding that "individual issues would predominate over any common issues of the class" because the resolution of individual class members' claims would require, among other things, consideration of whether class members' physicians were exposed to the promotional activities

at issue and whether Neurontin was prescribed based on those representations). For these reasons, *Santullo* is far more pertinent and persuasive authority.[1]

Second, in contrast to *Santullo*, three of the four claims asserted in *Clark* -- claims for "negligence," "negligence per se," and "breach of express warranty,"-- bear no resemblance to the claims asserted here. *Clark*, slip op. at 1. The fourth claim asserted in *Clark*, for "misrepresentation," is predicated on the theory that defendants, because of their alleged "position of superiority," owed certain disclosure obligations to each class member. *See* Complaint, No. 1819, *Clark v. Pfizer Inc.*, ¶¶ 45, 46 (Pa. Ct. of Common Pleas, Phila. Co., June 18, 2004). That theory has been rejected in this case. *See* Report & Recommendation (Dkt # 269) at 50, *adopted in relevant part*, *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 433 F. Supp. 2d 172, 186 (D. Mass. 2006).

Third, the *Clark* opinion declared that a plaintiff's burden on class certification "is not a heavy" one, *Clark*, slip op. at 5; that the plaintiff need only assert a "colorable claim" that the elements of the Pennsylvania class action rule have been satisfied, *id.* at 3; and that "[t]he weight and credibility of the evidence" are immaterial, *id.* at 3. By contrast, the First Circuit has held that "[t]ough questions at [the] class-certification stage must be faced and squarely decided, if necessary by holding evidentiary hearings and choosing between competing perspectives." *In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1, 6 (1st Cir. 2005) (emendations and internal quotation marks omitted). Likewise, the *Clark* opinion does not specify the elements of the plaintiffs' claims or explain how those elements can be proven on a class-wide basis. Indeed, the opinion

---

[1] This same issue of causation was very recently addressed, albeit not in the class certification context, by a New York appellate court in another case involving Neurontin. *See Baron v. Pfizer, Inc.*, No. 501904, slip op. at 4 (N.Y. App. Div. 3d Dep't July 5, 2007) (attached as Ex. A to Defendants' Notice of Supplemental Authority (Dkt # 782)) (affirming dismissal of plaintiff's fraud, consumer protection and unjust enrichment claims, explaining that the "plaintiff ma[de] only conclusory allegations that defendant's deceptive acts played a role in her use of Neurontin, without alleging that her physician's decision to prescribe the drug was influenced by defendant").

contains no analysis of the predominance requirement whatsoever except to "adopt[] and incorporate[] its analysis of commonality and conclude[] that the requirement of predominance has been satisfied." *Clark*, slip op. at 20.  In sharp contrast, the First Circuit has required district courts to "conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class" and has stressed that the predominance requirement of Rule 23(b)(3), "although reminiscent of the commonality requirement of Rule 23(a), is 'far more demanding.'" *Polymedica*, 432 F.3d at 4 n.5 & 5–6 (other internal quotation marks omitted).

       Finally, the *Clark* Court stated, that "there has never been a randomized controlled study (RCT) which demonstrated effectiveness [of Neurontin or generic gabapentin] for off-label uses." *Clark*, slip op. at 14.  This and other statements in *Clark* simply cannot be squared with the evidentiary record before this Court.  *See, e.g.*, Expert Report of Dr. Andrew E. Slaby at 8–13 (attached to the Declaration of Matthew B. Rowland, dated Dec. 22, 2006 (Dkt # 586) ("Rowland Decl.") at Ex. 24); Expert Report of Dr. Shawn Bird at 2 (Rowland Decl. Ex. 21); Expert Report of Dr. Samuel Potolicchio at 2–4 (Rowland Decl. Ex. 22); Expert Report of Dr. Alan Rapoport at 4 (Rowland Decl. Ex. 23).  These experts identify and rely upon literally dozens of randomized controlled studies demonstrating Neurontin's effectiveness for various off-label uses.

Dated: July 12, 2007

                              DAVIS POLK & WARDWELL

                              By:   /s/ James P. Rouhandeh
                                        James P. Rouhandeh

                              450 Lexington Avenue
                              New York, New York 10017
                              (212) 450-4000

                                    - and -

                              HARE & CHAFFIN

                              By:   /s/ David B. Chaffin
                                        David B. Chaffin

                              160 Federal Street
                              Boston, MA 02110
                              (617) 330-5000

                              *Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

## **CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on September 11, 2009.

                                          /s/ David B. Chaffin
                                          David B. Chaffin