UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 <br><br> Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: <br><br> *Bulger v. Pfizer Inc., et al.*, 1:07-cv-11426-PBS <br> *Smith v. Pfizer Inc., et al.*, 1:05-cv-11515-PBS | Judge Patti B. Saris <br><br> Magistrate Judge Leo T. Sorokin <br><br> **Leave to File Granted on September 11, 2009** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE UNTIMELY SUPPLEMENTAL DECLARATIONS OF STEFAN P. KRUSZEWSKI AND RONALD W. MARIS.**

Plaintiffs do not dispute that their experts' declarations are out of time and in contravention of Rule 26 and this Court's orders. Instead, plaintiffs suggest that the declarations are "rebuttal declarations," necessary to correct inaccuracies in defendants' motions to exclude. This suggestion is not only inaccurate, but begs the question—*i.e.*, if defendants mischaracterized testimony, why have plaintiffs not merely directed the Court to the deposition testimony that was allegedly mischaracterized, rather than submit all new declarations? The reason is simple: plaintiffs' experts' declarations are much more than an attempt to explain inaccuracies. They are a blatant attempt to backfill and rewrite the record after the fact. Plaintiffs' attempt to shore up their experts' flawed methodology via untimely declarations is improper and should not be allowed.

**I.      Plaintiffs' Experts' Declarations Are Not Proper "Rebuttal" Testimony.**

Plaintiffs claim that their expert declarations are proper "rebuttal," but cite no authority whatsoever suggesting that expert declarations—which contradict prior reports and sworn

testimony—offered in response to a motion to exclude (and on which a summary judgment motion is based) are proper rebuttal.  "The principal objective of rebuttal is to permit a litigant to counter new, unforeseen facts brought out in the other side's case." *Faigin v. Kelly*, 184 F.3d 67, 85 (1st Cir. 1999).  Plaintiffs do not contend that new or unforeseen facts were brought out in defendants' motions to exclude plaintiffs' experts.  Nor could they.  Defendants' motions were based on the reports and deposition testimony of plaintiffs' own experts and how the reports and testimony related to the experts' methodologies.   Thus, to the extent plaintiffs' experts attempt to rebut anything, they are either rebutting their own reports and testimony or defendants' legal argument.  Neither of these constitutes "new, unforeseen facts" and neither is appropriate rebuttal.

Moreover, the law is clear that plaintiffs cannot "rebut" a summary judgment motion by relying on an expert declaration that differs from an earlier Rule 26(a) report. *Brumley v. Pfizer Inc.*, 200 F.R.D. 596 (S.D. Tex. 2001), is analogous.  In *Brumley*, the plaintiffs' expert executed an affidavit containing a previously, undisclosed opinion in response to the defendants' motion for summary judgment. *Id.* at 598.  Noting that "[a] subsequent expert affidavit submitted to rebut a summary judgment motion may be excluded if it differs from an earlier Rule 26 report," which the Rule requires to be "detailed and complete" in order to "avoid the disclosure of sketchy and vague expert information," the court concluded that the affidavit was materially different from the expert's Rule 26 report and struck the affidavit as untimely. *Id.* at 603-04.  As in *Brumley*, plaintiffs have ignored Rule 26 by submitting untimely expert declarations containing new and different opinions, *see* II. *infra*, bearing on the experts' methodology in response to defendants' motions to exclude.[1]  Accordingly, the declarations should be stricken.

---

[1] Plaintiffs admittedly ignore Rule 26, but suggest that they should be excused from doing so because the Court previously permitted a report from Dr. Gibbons, a rebuttal witness.  Plaintiffs' tactics in response to defendants'

**II.     The Declarations Are An Improper, After-the-Fact Attempt to Correct Deficiencies in the Experts' Prior Reports and Deposition Testimony.**

Plaintiffs suggest that defendants have been "intellectually dishonest" in filing their motion to strike. Plaintiffs err. A review of plaintiffs' experts' reports and deposition testimony alongside the experts' new declarations demonstrates that plaintiffs have improperly attempted to fix the flaws in their experts' methodologies to avoid summary judgment. Defendants offered two examples of this back-filling in their motion. Plaintiffs' attempt to explain away the 180-degree change in their experts' opinions is unavailing.

First, defendants demonstrated that when Dr. Maris was specifically asked about his methodology in the *Bulger* case and whether he ruled out risk factors pertinent to Mrs. Bulger, he specifically disavowed use of the differential diagnosis method, which requires an expert to rule out possible alternative causes. Mot. to Strike at 4 ("First of all, I don't have the same model that you are assuming, which is the differential diagnosis model, where you rule out alternatives."). Defendants further demonstrated that this testimony was contrary to Dr. Maris' declaration where he claimed that the defendants' mischaracterized his "theory of suicide" because "he both rule[d] in and ruled out non-Neurontin suicide risk factors." *Id.*

Ignoring Dr. Maris' explicit testimony about his methodology, plaintiffs cite to an earlier portion of Dr. Maris' deposition where he was asked whether he "rule[d] out <u>and/or</u> account[ed] for alternative explanations for Mrs. Bulger's suicide," to which Dr. Maris responded, "I think I did. . . . I certainly considered them all under risk factors." Pl. Opp. at 4 (emphasis added). This

---

motions are not comparable to the Court's allowance of Dr. Gibbons. First, defendants properly followed Rule 26 and sought leave, which plaintiffs have never once attempted to do. Moreover, plaintiffs easily could have complied with Rule 26 by updating the experts' reliance lists or supplementing their reports. Instead, plaintiffs attempted to change the record after the close of expert discovery and the *Daubert* motions were fully submitted. In violation of Rule 26 and the Court's scheduling orders, plaintiffs have continued on the course they began with the *Daubert* briefing on general causation, refusing to stand by the record and attempting to "repair" it with new and different opinions contained in untimely and improper declarations.

- 3 -

excerpt neither demonstrates that Dr. Maris "ruled out" Mrs. Bulger's risk factors (as opposed to considering them), nor that Dr. Maris conducted a differential diagnosis.  It thus does not show, as plaintiffs suggest, that Dr. Maris' declaration is consistent with his prior deposition testimony.  If anything, it highlights the contradictions between the two, as plaintiffs still have not shown and cannot show that Dr. Maris ruled out the possible alternative explanations of Mrs. Bulger's suicide in order to arrive at Neurontin as the most likely cause.[2]

Second, defendants established that Dr. Kruszewski did not in fact include Mrs. Bulger's prior suicide attempts on his list of suicide risk factors in his report, Def. Mot. at 4-5, a fact Dr. Kruszewski has repeatedly admitted:

> Q.  Doctor, show me in your report where you listed prior suicide attempts as a risk factor that increased Mrs. Bulger's risk for suicide.
>
> A.  I don't believe that I did.

Ex. A at 422:11-17.[3]  Defendants additionally demonstrated that—contrary to his deposition testimony—Dr. Kruszewski now claims to have "considered these [suicide] attempts in [his] estimation of the risk factors for suicide."  Def. Mot. at 5.

---

[2] Defendants also noted that Dr. Maris produced new general and specific causation opinions for the first time at his deposition.  Def. Mot. at 3.  In response, plaintiffs address only Dr. Maris' general causation suicide model, conceding that they do not intend to rely on this model, and simultaneously ignore Dr. Maris' new specific causation opinions and the perpetual handwritten revisions he made to his report throughout his deposition.  In addition, plaintiffs argue that although Dr. Maris was not disclosed as a general causation expert, "he may testify" on the issue of general causation.  This issue was raised not in defendants' motion to strike, but in defendants' motion to exclude.  Moreover, plaintiffs cite no legal authority in support of their contention that it is "axiomatic" that an expert may testify on general causation when, contrary to this Court's orders, he was not timely disclosed as an expert on this issue.

[3] *See also* Exhibit A at 418:2-419:11:

> Q. Doctor, what I see is missing from this list of issues that increased her risk of suicide is any mention of prior suicide attempts, correct?
> A. I believe I did not include that here.
> Q. And you did not include suicidal ideation, correct?
> A. I did not include that here.
> Q. And you did not include suicide intent?
> A. Suicide intent?

In response, plaintiffs again cite to the same paragraph in Dr. Kruszewski's report to which they have referred before. Notably, it is <u>not</u> the paragraph discussing Mrs. Bulger's risk factors, but rather discusses "various commentary about the vicissitudes of the life of Mrs. Bulger" and only states that "conflicted evidence also exists about [Mrs. Bulger's] suicide history." This paragraph is not evidence that Dr. Kruszewski included Mrs. Bulger's prior suicide attempts as a risk factor in his differential diagnosis. Indeed, Dr. Kruszewski admitted that prior suicide attempts did not make it on his list of risk factors because he was not even sure that Mrs. Bulger's attempts (which include driving her car off a cliff and overdosing to the point of cardiac arrest, rendering herself comatose for four days) were actually suicide attempts:

> Q. But you didn't list prior suicide attempts as an issue that increased Mrs. Bulger's risk for suicide, correct?
>
> A. That is correct, because I was not convinced from the information that I had available and some of the information that I just cited that, in fact, those attempts at hurting herself and driving her car off the cliff represented suicide attempts.

Exhibit A at 424:8-19. Thus, despite plaintiffs' suggestion otherwise, Dr. Kruszewski clearly and repeatedly expressed his opinion that he did not include Mrs. Bulger's prior suicide attempts on his list of risk factors for his differential diagnosis in both his original report and his deposition—a fact which plaintiffs try to rewrite using Dr. Kruszewski's new declaration in response to defendants' motion to exclude.[4]

---

> Q. Correct.
> A. I did not include that in that paragraph.
> Q. And you did not include suicidal planning, correct?
> A. That's correct, I did not include suicidal planning in that paragraph
> Q. And just so we're clear, that paragraph that you're referring to is the paragraph that identifies the issues that increased Mrs. Bulger's risk of suicide, correct?
> A. That's correct, or it provides protective factors against her suicide in the latter part of the paragraph.

[4] Plaintiffs also claim that defendants "place their credibility at issue in this case," by stating that Dr. Kruszewski testified that it was just "a matter of chance" that Mrs. Bulger was not successful in her prior suicide attempts. Pl. Opp. at 3. As an initial matter, Dr. Kruszewski's testimony on cross-examination that whether Mrs. Bulger's prior

Moreover, not only has Dr. Kruszewski purported to include "prior suicide attempts" on his list of risk factors for Mrs. Bulger in his new declaration, but he relies on a new legal theory to justify his discounting of Mrs. Bulger's suicide history based on a never before disclosed journal article. Plaintiffs argue only that their delay in producing this article is "substantially justified," citing *Watson v. Electrolux Outdoor Prof. Prods., Inc*., No. 04-11782-DPW, 2006 U.S. Dist. LEXIS 54386 (D. Mass. Aug 4, 2006), in which the expert produced a new opinion eight days after obtaining new information and prior to the expert's deposition in that case. *Id*. at * 21. Not only is this case distinguishable on the facts[5]—the article at issue here was published on November 18, 2008 and plaintiffs waited until February 23, 2008 (more than three months), after Dr. Kruszewski's deposition and defendants' motion to exclude, to disclose it—but plaintiffs ignore that Dr. Kruszewski attempts to use the article to form new opinions that contradict his prior report. For example, while Dr. Kruszewski previously testified that he did not even list suicide attempt on his risk factors because of the conflicted evidence, he now claims, confusingly, that Mrs. Bulger's risk of suicide was <u>decreased</u> because of her prior attempts. Kruszewski Decl. at 2, ¶ 4 (Doc. 1670). This is a wholly new and different opinion.

---

suicide attempt was successful was "a matter of chance" is not evidence that Dr. Kruszewski considered the prior suicide attempts in his differential diagnosis. Further, this issue was not raised in defendants' motion to strike; it was raised in defendants' motion to exclude. Plaintiffs' attempt to respond to defendants' motion to exclude through their opposition to defendants' motion to strike is improper. Moreover, defendants' assertion regarding Dr. Kruszewski's testimony is confirmed by the record: "Q. Well, the one [suicide attempt] in 1993, she came about as close to dying as is humanly possible, correct? A. Yes. Q. And it was only a matter of chance that Ron Bulger happened to find her and call the EMTs, correct? A. I'll accept that." Ex. A at 510:11-18. The excerpt cited by plaintiffs does not even address Mrs. Bulger's prior suicide attempts and is inapposite.

[5] *Diomed, Inc. v. Angiodynamics Inc*., 450 F. Supp. 2d 130 (D. Mass. 2006), is equally distinguishable and in fact supports exclusion. In *Diomed*, the court found that the expert's failure to include the new theory in his initial report "may have resulted from a misunderstanding with respect to discovery requests made by Diomed." *Id.* at 137. The court then concluded that defendants had not shown adequate prejudice because they were alerted of the new theory regarding damages at the expert's deposition and "the issue of damages [was] not pertinent to the pending motions for summary judgment." *Id.* In contrast, here plaintiffs' experts have proffered new, contradictory opinions offered for the first time in an attempt to avoid defendants' dispositive motions.

Plaintiffs suggest that Dr. Kruszewski's reliance on new literature, coupled with both experts' changed opinions (such as Dr. Kruszewski's belated attempt to include suicide attempt as a risk factor for Mrs. Bulger, and Dr. Maris' suggestion that his methodology includes "ruling out" risk factors) is "harmless." This suggestion is incorrect, given that defendants filed their motions to exclude based on the record as it existed at that time and could not have anticipated wholesale revisions to plaintiffs' experts' opinions attempting to fix their unreliable methodologies. Defendants appropriately considered the record "closed" at the time they filed their motions to exclude. Indeed, in a nearly identical situation, the court in *Baker v. Indian Prairie Cmty. Unit*, No. 96 C 3927, 1999 WL 988799 (N.D. Ill. Oct. 27, 1999), concluded before striking the experts' untimely declarations:

> Defendants were entitled to assume that [plaintiff's experts'] reports were complete. Defendants are now unfairly prejudiced by the [plaintiffs'] reliance on new and untimely expert opinions in response to summary judgment. . . . One of the primary goals of the federal civil discovery rules and Rule 26(a) is to 'eliminate surprise.' The Court will not allow the [plaintiffs] to ambush Defendants with new expert opinions after the expert opinion disclosure deadline and after they filed for summary judgment.

*Id.* *3. The Court should likewise strike plaintiffs' prejudicial, after-the-fact expert declarations.[6]

---

[6] Defendants also noted that the Drs. Maris' and Kruszewski's declarations were an attempt to do an end-run around the applicable page limitation, as plaintiffs attempted to address defendants' arguments not in their opposition brief (which is subject to a page limitation), but rather in line-by-line fashion in the experts' declarations. In response, plaintiffs admit that the declarations rebut the motions to exclude, *see* Pl. Opp. at 9, but claim that defendants' replies were too long, citing Discovery Order No. 2, which provides a briefing schedule and guidelines for discovery motions, not dispositive motions, such as motions to exclude. Thus, contrary to plaintiffs' contention, defendants' replies were not subject to a seven-page limitation. Moreover, plaintiffs' suggestion that their experts' declarations were too long because of the length of defendants' replies is nonsensical. The declarations were submitted in response to defendants' motions to exclude. It was defendants that were forced to reply to an overly voluminous submission (including 48 pages of expert declarations in addition to the opposition briefs), not plaintiffs.

- 7 -

Dated: March 27, 2009                     Respectfully submitted,

 

DAVIS POLK & WARDWELL

By:     /s/ James P. Rouhandeh
       James P. Rouhandeh

450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

    -and-

SHOOK, HARDY & BACON L.L.P.

By:     /s/ Scott W. Sayler
       Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel: (816) 474-6550

    -and-

WHITE & WILLIAMS

By:     /s/ David B. Chaffin
       David B. Chaffin

100 Summer Street, 27th Floor
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company LLC*

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on September 11, 2009.

/s/ David B. Chaffin
David B. Chaffin