# EXHIBIT B



LEXISNEXIS® FILE & SERVE
24984646
E-SERVICE

May 1 2009
5:35PM

Theodore M. Lieverman, Esq.
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

[Additional counsel on signature page]

*Counsel for the Individual Consumer Class*

| | |
|---|---|
| IN RE VIOXX LITIGATION | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>ATLANTIC COUNTY |
| ELAINE KLEINMAN,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>MERCK & CO., INC.,<br><br>　　　　　Defendant. | Case Code No. 619<br><br>Docket No. ATL-L-3954-04-MT |
| RONALD MARTIN,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>MERCK & CO., INC.,<br><br>　　　　　Defendant. | Docket No. ATL-L-24-05-MT<br><br>**MEMORANDUM OF LAW IN<br>SUPPORT OF INDIVIDUAL<br>CONSUMER PLAINTIFFS'<br>MOTION FOR RECONSIDERATION<br>OF THE COURT'S DENIAL OF<br>CLASS CERTIFICATION** |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ 1

STATEMENT OF THE CASE ................................................................................... 2

ARGUMENT ................................................................................................................ 3

I.    RECONSIDERATION OF THE COURT'S ORDER OF
      MARCH 17, 2009 IS APPROPRIATE ......................................................... 3

II.   PLAINTIFFS CAN PROVE A CASUAL NEXUS BY
      CLASS-WIDE EVIDENCE ........................................................................... 4

      A.    The Court Erred by Applying an Inappropriately
            High Standard of Causation ............................................................. 5

      B.    The Court Erroneously Applied a Reliance Standard
            to Plaintiffs' CFA Claims ................................................................ 7

      C.    The Court's Decision, Which Would Bar Virtually All
            Consumer Class Actions, Is Inconsistent with the
            Purpose and Policy of the CFA ..................................................... 11

      D.    The Supreme Court's Decision In *Local 68 Welfare Fund*
            Addressed Factors Not Present Here and Does Not
            Preclude Class Certification .......................................................... 12

      E.    The Court's Rationale Misapplies the Naproxen Comparison ........... 16

      F.    Plaintiffs Kleinman and Martin Are Typical of the Class Members ........... 17

III.  THE COURT ERRED IN HOLDING THAT UNJUST ENRICHMENT
      CANNOT APPLY TO THIS CLAIM, OR THAT CLASS CERTIFICATION
      IS UNWARRANTED ..................................................................................... 18

IV.   THE CLASS IS ENTITLED TO A FORUM IN WHICH
      TO PRESENT THEIR CLAIMS ................................................................. 20

CONCLUSION .......................................................................................................... 23

M012A48991

# INTRODUCTION

Elaine Kleinman and Ronald Martin ("Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion for Reconsideration of the Court's Decision and Order filed March 17, 2009, in the above-captioned matters.  Plaintiffs sought certification of a nationwide class of individual consumer end-users[1] who purchased Vioxx, a prescription drug for pain relief manufactured by Merck & Co., Inc. ("Merck" or "Defendant").  The Court denied class certification, finding that the causal nexus element of Plaintiffs' claim under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq*. ("Consumer Fraud Act" or "CFA") could not be proved with class-wide evidence, so that there was not sufficient predominance to satisfy N.J. Rule 4:32-1(b)(3).[2]

This Court's ruling elevated the CFA's causal nexus element to the same level of proof required in a common law fraud case and, in the process, changed the CFA from one of the strongest consumer statutes in the nation to one of the weakest.  By focusing on the actions of individual consumers rather than on the Defendant's misconduct, the Court has made any class action lawsuit for consumer fraud virtually impossible.  This result is antithetical to the legislature's enactment of the CFA and to the numerous Supreme Court and Appellate Division decisions that stress the Act's broad application.  By the same token, the Court's conclusions regarding the lack of typicality and the possibility of inconsistent results are not supported by precedent but are instead contrary to settled law.  Plaintiffs respectfully believe that reconsideration of the decision is needed to give proper application to the CFA and to New Jersey's well-established policy favoring consumer class actions.

---

[1] For ease of reference, individual consumer end-users are referred to here as "consumers."  It is recognized that third-party payors may be "consumers" under the CFA, but they are not included in any discussion of consumer purchasers here.

[2] Throughout, "Slip op." refers to this Court's decision of March 17, 2009, denying class certification.  "Pl. br." refers to Plaintiffs' opening brief in support of their motion for class certification, filed on or about May 15, 2008.

## STATEMENT OF THE CASE

Plaintiffs filed their renewed Motion for Class Certification on or about May 15, 2008, which Defendant opposed. The Court held oral argument on December 5, 2008, and issued its decision and order denying class certification on March 17, 2009.

In its decision, the Court found that the requirements of numerosity and commonality were satisfied. Slip op. at 6-7. Examining whether common issues predominated over individual issues, the Court concluded that Plaintiffs could prove unlawful conduct on a class-wide basis by showing that Merck knowingly omitted to disclose the cardiovascular ("CV") risks, and that this conduct was "centrally orchestrated." *Id.* at 9-10. As to ascertainable loss, the Court found that "[t]he question of how damages can fairly be proven is a difficult one, but probably not an insurmountable one." *Id.* at 12.

However, the Court concluded that the causal nexus issue created an "insurmountable barrier" to a class action because the decisions by doctors to prescribe Vioxx relied on a "host of individualized factors," including the patient's risk factors, whether other drugs were effective, and how different doctors react to medical warnings "depending on the patient's condition and medical history." *Id.* at 13. "An individualized determination would be required for each plaintiff to determine if the concealment of the CV risk information had a causal relationship on the decision made as to whether or not the patient used Vioxx." *Id.*

The Court further found that the Plaintiffs' expert reports "reveal the individualized nature of the issues." *Id.* at 14. The comparison of Vioxx to naproxen by Dr. Rosenthal as a cheaper drug with the same therapeutic characteristics cannot be done, said the Court, without an individualized inquiry. "What the class members were willing to pay for Vioxx, or naproxen, or any other drug of this category, depends on a multitude of factors including levels of insurance coverage and a subjective determination of effectiveness." *Id.* at 14. Among the individualized consideration would be the fact that some Plaintiffs "may have used naproxen and numerous other NSAIDs with relief of pain before using Vioxx. Some may have gotten significant pain

M012A48593

relief." *Id.*

On Plaintiffs' claim of unjust enrichment, the Court denied class certification because disgorgement of profits is a punitive form of damages, and New Jersey law does not allow recovery in this type of claim. *Id.* at 15.

The Court also concluded that the named Plaintiffs were not typical of the Class because their use of Vioxx and other drugs, and their experience with those drugs were different, both from each other and from other class members. *Id.* at 16.[3] One reason for this is that Plaintiff Kleinman's doctor, Dr. Solomon, would still prescribe Vioxx today if it were available. *Id.*

Finally, the Court concluded that a class action was not a superior means of adjudicating this case because of manageability issues due to the lack of predominance. *Id.* at 17.  Moreover, the Court noted inconsistent results in CFA claims before this Court concerning Vioxx, citing two cases. *Id.*  The Court believed that it would be unfair to Merck "to certify a class and allow a jury to reach a uniform determination of liability where results could vary from plaintiff to plaintiff." *Id.*

At Plaintiffs' request, the Court granted until May 1, 2009, in which to file any motion for reconsideration.  This motion follows.

## ARGUMENT

I.   **RECONSIDERATION OF THE COURT'S ORDER OF MARCH 17, 2009 IS APPROPRIATE.**

Under N.J. Rule 4:49-2, a motion for reconsideration or rehearing lies as to "matters ... which counsel believes the court has overlooked or as to which it has erred." *Id.*  The courts have allowed such motions where a decision is based on plainly incorrect reasoning, the failure to appreciate the significance of probative evidence, or new evidence. *See Cummings v. Bahr*, 295 N.J. Super. 374, 384 (App. Div. 1996).  Reconsideration "is a matter within the sound

---

[3] The decision actually says "class representatives," which is presumably a typographical error.  Named plaintiffs must be typical of the class members.

M012A48994

discretion of the Court, to be exercised in the interest of justice." *Id.  See Casino Reinvestment Development Authority v. Teller*, 384 N.J. Super. 408, 413 (App. Div. 2006).

Here, Plaintiffs respectfully argue that the Court's view of the causal nexus requirement of the New Jersey Consumer Fraud Act is in conflict with well-established precedent of the Supreme Court and the Appellate Division favoring class adjudication of consumer claims.  As described in detail below, this Court's interpretation of the causal nexus requirement will serve as a virtual bar to all future consumer fraud class actions in New Jersey.  While the Court clearly saw itself as following the Supreme Court's decision in *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372 (2007), it failed to appreciate the distinctions between that case and this one as to the points raised by the Supreme Court in its rationale.  Plaintiffs respectfully submit that the Court's rationale and reasoning is in error, and should be reconsidered in light of the discussion and authority cited below.

## II.     PLAINTIFFS CAN PROVE A CAUSAL NEXUS BY CLASS-WIDE EVIDENCE

The CFA "was intended to be one of the strongest consumer protection laws in the nation." *New Mea Const. Corp. v. Harper*, 203 N.J. Super. 486, 501-02 (App. Div. 1985).[4]  As the Supreme Court just reaffirmed, "[T]he history of the Act demonstrates a strong and consistent pattern of expanding the rights of consumers and protecting them from a wide variety of marketplace tactics and practices deemed to be unconscionable." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 547 (2009).

In order to sustain a claim under the Consumer Fraud Act, a plaintiff must prove: (1) unlawful conduct by the defendant; (2) ascertainable loss by the plaintiff; and (3) a causal relationship between defendant's unlawful conduct and plaintiff's ascertainable loss.  Slip op. at 8-9; *Local 68 Welfare Fund*, 192 N.J. at 389; *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J.

---

[4] *Accord, Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15 (1994); *Lemelledo v. Beneficial Mgt. Corp. of America*, 150 N.J. 255, 268 (1997) ("strong and sweeping legislative remedial purpose apparent in the CFA"); *Wozniak v. Pennella*, 373 N.J. Super. 445, 458 (App. Div. 2004) (same).

464, 473 (1988). The Court was satisfied that Plaintiffs here had sufficiently demonstrated that they could prove the first two elements by class-wide evidence, such that the common issues would predominate over any individual issues. However, the Court concluded that the causal nexus could not be shown with common proof. This conclusion was erroneous.

> **A.    The Court Erred By Applying an Inappropriately High Standard of Causation.**

In finding that no class-wide common proof could show the necessary causal nexus, the Court erred in assuming a higher standard of proof than is actually required under the CFA. The causal nexus of the CFA is not the same as proximate cause in a common law tort action. The Supreme Court has pointed out that under the CFA, reliance is replaced by ascertainable loss. *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 246 (2005). Thus, causal nexus cannot be the same thing as reliance:

> The distinction between proof of reliance and proof of causation can be best explained in the context of this case. If plaintiffs succeed in proving that Mass Mutual withheld material information with the intent that consumers would rely on it in purchasing Mass Mutual's policy, the purchase of the policy by a person who was shown the literature would be sufficient to establish *prima facie* proof of causation. *Varacallo v. Mass Mutual Life Ins. Co.*, 332 N.J. Super. 31, 49 (App. Div. 2000).

In another case, the Appellate Division distinguished the burden of proof in a CFA case from a common law claim:

> To establish a cause of action for consumer fraud, a plaintiff need show only that a defendant engaged in a practice unlawful under the CFA that resulted in an "ascertainable loss of moneys or property, real or personal." N.J.S.A. 56:8-19. In contrast, to establish a cause of action for negligence, a plaintiff must prove breach of a duty of care and actual damages sustained as a proximate cause of the breach. *Muise v. GPU, Inc.*, 371 N.J. Super. 13, 34-35 (App. Div. 2004).

Thus, proof of a causal nexus requires Plaintiffs only to demonstrate that the harm (ascertainable loss) is related to the defendant's unlawful conduct, and not some other event or the conduct of some other party.

M012A48996

> **Example**: Store A advertises a ring as 24k gold, selling it to Purchaser B for the fair market value price of $100. In fact, the Store knows that the ring is really only 18k gold, for which the fair market price was - until that day - only $80. However, that morning, South Africa suddenly flooded the world gold market, resulting in a large devaluation of gold. The true fair market value of the ring is now only $10. Although B paid $100 for a ring that is really only worth $10, the Store had nothing to do with the worldwide fall in gold prices. The ascertainable loss due to the Store's misrepresentation is $20, because there is no causal nexus between the Store's misrepresentation and the 90% drop in gold prices.

In this case, as the Court noted, Plaintiffs allege (and the evidence shows) that consumers received something different from and less than what Merck had promised. Slip op. at 10-12. That ascertainable loss is clearly related to the misrepresentations and omissions (what was promised) since that was the whole point of Merck's marketing scheme. There was no intervening natural calamity, malintentioned actor or other causal agent. Consumers' loss arose from Merck's violation of the CFA, and that is enough to satisfy the Act.

Plaintiffs' class certification briefing offered three different theories to explain the causal nexus between Merck's conduct and Plaintiffs' loss:

(a)   Defendant engaged in a uniform and overarching scheme of misrepresentations and/or omissions, which could not help but affect every sale or prescription of Vioxx. *Varacallo*, 332 N.J. Super. at 48; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528-29 (3d Cir. 2004). *See* Pl. br. at 27-28.

(b)   Defendant's misrepresentations and omissions allowed Vioxx to remain on the market despite its inherent health dangers. Expert opinion, as demonstrated in the declarations of Dr. Rosenthal and Dr. Abramson, is evidence that Vioxx would have been removed from the market years earlier and/or virtually no doctors would have prescribed it had Defendant told the truth about the problems. Had the risks been made known in 1999, it is very likely that Vioxx would never have been released. *See* Pl. br. 29.

M012A48997

(c)    Evidence shows that Merck set a launch price for Vioxx in excess of what the price otherwise would have been but for Merck's wrongful omissions and disclosures. This premium price was set across the board without relation to any individual response or conduct by Class members.[5] *See* Pl. br. at 30-32.

Each of these theories satisfies the properly applied test for a causal relationship. The point for class certification is not which of the above methods is the best, but that each of them relies on class-wide proofs to show a causal nexus. Any exploration of what individual class members believed or did in response to Merck's conduct has nothing to do with the causal relationship element.

### B.    The Court Erroneously Applied a Reliance Standard to Plaintiffs' CFA Claims.

The Court correctly stated that reliance is not an element of a CFA violation, *see* slip op. at 11. However, the Court inadvertently applied a reliance-based test by concluding that "[a]n individualized determination would be required for each plaintiff to determine if the concealment of the CV risk information had a causal relationship on the decision made as to whether or not the patient used Vioxx." Slip op. at 13. In essence, the Court's holding would require each Class member to answer the question, "If I had known the CV risks of Vioxx, would I still have taken it?" That is nothing more than imposing a reliance test. It requires the Class member to show that if he/she had known the truth, then he/she would not have taken the drug - that is, that the patient relied on the misrepresentations or omissions of the defendant. This analysis is exactly what the New Jersey appellate courts have said is *not* required under the CFA.

At common law, "the maker of a fraudulent misrepresentation is subject to liability for pecuniary loss suffered by one who justifiably relies upon the truth of the matter misrepresented,

---

[5] As noted in the opening brief, Plaintiffs' argument about the use of the misrepresentations and omissions to establish a premium price is one of three theories to show a causal relationship; it is not asserted to establish ascertainable loss. Pl. br. at 33-35.

M012A48998

if his reliance is a substantial factor in determining the course of conduct that results in his loss." Restatement (Second) Torts § 546 (1977). Reliance "is established by showing that the defendant's actions and representations induced the plaintiff to act or to refrain from action." 37 C.J.S. Fraud § 51; *see also* 37 Am. Jur. 2d Fraud and Deceit § 239. However, if - as the New Jersey courts have uniformly stated - reliance is not an element of a CFA claim, then it is not necessary to show that the defendant's misrepresentations induced the plaintiff to do (or not do) anything.

This Court's analysis of the CFA's causal nexus requirement cannot be correct because, if strictly followed, it would preclude virtually any class action under the CFA.

> **Example**: Company A sells a drug called "Ajax" for one dollar per tablet, and advertises that Ajax is the most advanced and powerful painkiller available in the world. In reality, Ajax is nothing more than sugar pills, which consumers could buy at the candy counter for a penny each. A has clearly misrepresented its product and violated the CFA. The loss is certainly ascertainable, the difference between $1 and 1¢.[6] This must be so even if one or more consumers honestly believed Ajax was terrific - they are still paying for sugar pills worth 1¢.

However, under the Court's theory, there could never be a certified class of purchasers because each class member would have to show a causal relationship between the misrepresentation and the decision to purchase Ajax. If some class members reported that - due to the placebo effect[7] -

---

[6] *See Desiano v. Warner Lambert*, 326 F.3d 339 (2d Cir. 2003). As described by this Court, "[I]f the plaintiff had paid substantially more for a drug falsely advertised as safer than Drug A when it was really identical to Drug A and just sold under a different name, there would be direct losses to the "person" or entity paying for the drug as a result of the false ads even if no person was actually injured by the drug." *International Union of Operating Engineers Local Union No. 68 v. Merck & Co., Inc.*, Docket No. ATL-L-3015-04-MT, 2004 WL 3767338, at *6 (N.J. Super. L. July 8, 2004).

[7] A placebo is generally "any therapy or component of therapy that is deliberately used for its non-specific psychological or psychophysiological effect, or that is used for its presumed effect, but is without specific activity for the condition being treated." A. K. Shapiro & L.A. Morris, *The Placebo Effect in Medical and Psychological Therapies*, in A.E. Bergin and S. Garfield, Handbook of Psychotherapy and Behavioral Change, 369-410 (2d ed. 1978). According to an often cited study, placebos "have a high degree of therapeutic effectiveness in treating subjective responses, decided improvement . . . being produced in 35.2 +-2.2% of cases." H.K. Beecher, *The Powerful Placebo*, 159 JAMA 1602-06 (1955). A recent meta-

M012A48699

the sugar pills gave them pain relief and that they were happy with Ajax, this Court's ruling would preclude any class-wide finding of a causal nexus. Denying a class under this hypothetical would make the CFA a nullity, yet this Court's current decision would require such an outcome.

Rather than adopting a construction of the CFA that virtually prohibits class actions, the Court should be guided by Judge Debevoise's just-released decision in *In re Mercedes-Benz Tele Aid Contract Litig.*, C.A. No. 07-2720(DRD), 2009 WL 1101241 (D. N.J. Apr. 24, 2009). In that case, a group of purchasers of Mercedes cars alleged that the automobile company sold its cars with an optional subscription-based emergency response system ("Tele Aid") that used an analog signal to provide roadside assistance. Mercedes never told customers that the analog system would become obsolete in 2008, and that subscribers would be required to pay extra for a digital upgrade. Plaintiffs alleged that Mercedes made knowing omissions in violation of the CFA.

Judge Debevoise certified a nationwide class of consumers for their claims under the CFA and under New Jersey common law for unjust enrichment. The Court rejected the defendants' views of causation, instead relying on *Varacallo* and stating as follows:

> Plaintiffs simply claim that they did not get what they paid for - that because of Mercedes's alleged wrongdoing, they did not know that the Tele Aid systems in their automobiles would become useless long before the vehicles aged to such a degree that they were no longer drivable. Therefore, Plaintiffs will not need to prove at trial that each individual class member relied on Mercedes statements relating to Tele Aid when purchasing their vehicles. To the contrary, Plaintiffs can establish the necessary "causal nexus"

---

analysis of 114 different trial studies cast doubt on the overall magnitude of the placebo effect but did find "a significant difference between placebo and no treatment in trials with continuous subjective outcomes and in trials involving the treatment of pain." A. Hrobjartsson, P.C. Gotzsche, *Is the Placebo Powerless?  An Analysis of Clinical Trials Comparing Placebo With No Treatment*, 344 NEJM, No. 21, 1594 (May 24, 2001).

The particularly strong presence of a placebo effect in pain medication demonstrates why a "subjective determination of effectiveness," *see* slip op. at 14, should play no role here in determining the relationship between defendant's misconduct and the ascertainable loss.

-9-

M012A49000

between their ascertainable loss and the alleged misrepresentations simply by proving with respect to the class as a whole that, had Mercedes disclosed the existence of the FCC rule change and the fact that analog service would no longer be available after 2007, that disclosure would have effectively warned potential purchasers of vehicles equipped with analog-only Tele Aid systems that those systems would soon be rendered obsolete. *Id.*, 2009 WL 1101241, at *31.

Judge Debevoise further found the unjust enrichment claims viable and certifiable for nationwide class treatment. *Id.* at *12-13, 29. This decision addresses issues virtually identical to those in the instant case and provides an example of a class certification decision that fully addresses the predominance issue on causal nexus but is also faithful to New Jersey's liberal construction of the CFA and the class action rules in consumer cases.[8]

The decision in *Tele Aid* is not an anomaly, but is consistent with other recent federal court decisions that have analyzed the causal nexus element and - even after *Local 68 Welfare Fund* - certified consumer classes with CFA claims. *See Kalow & Springut, LLP v. Commence Corp.*, C.A. No. 07-3442(FLW), 2009 U.S. LEXIS 320, at *11-12 (D. N.J. Jan. 6, 2009); *In re Ford Motor Co. E-350 Van Products Liability Litig. (No. II)*, C.A. No. 03-4558(HAA), 2008 U.S. Dist. LEXIS 73690, at *85-88 (D. N.J. Sept. 3, 2008); *see also Estate of Knoster v. Ford Motor Co.*, C.A. No. 01-3168(MLC), 2008 U.S. Dist. LEXIS 103342, at *27-29 (D. N.J. Dec. 22, 2008) (summary judgment denied). These decisions all demonstrate that the individualized beliefs or opinions of consumers play no part in assessing the causal nexus element.

---

[8] The *Tele Aid* decision also contains an extensive discussion on choice of law, where the Court applied New Jersey law to the claims of all members of the nationwide class, based largely on the facts that Mercedes was located in New Jersey and the marketing plan that included all of the alleged omissions originated in New Jersey. Id. at *9-25. Judge Debevoise's detailed analysis of New Jersey's test for choice of law largely parallels the rationale of this Court in holding that New Jersey law applies to the consumer Vioxx claims, and provides further support for that conclusion.

M012A49001

**C.    The Court's Decision, Which Would Bar Virtually All Consumer Class Actions, Is Inconsistent with the Purpose and Policy of the CFA.**

The Court's decision to require individual proof of reliance in support of class certification is fundamentally at odds with the policies underlying the CFA because it rewards egregious misconduct by merchants.  This is plainly not what the CFA is intends: "[t]he statute cannot be constructed to allow an offending merchant to benefit from his own deception." *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 14 (2004).  *See Laufer v. United States Life Insurance Co.*, 385 N.J. Super. 172, 187 (App. Div. 2006) ("we decline to construe the 'ascertainable loss' prerequisite for maintenance of a private action in a manner that would significantly undermine the availability of class actions to remedy violations of the Consumer Fraud Act.").  Court actions which seek to narrow the scope of the CFA and reduce the universe of people entitled to relief are plainly disfavored.  *Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267, 276 (App. Div. 2007), *aff'd*, 197 N.J. 543 (2009); *Cox*, 138 N.J. at 22.

As noted above, the CFA was intended to be one of the strongest consumer laws in the country.  *See supra* at 4.  Its remedies in private actions are "not only to make whole the victim's loss, but also to punish the wrongdoer and to deter others from engaging in similar fraudulent practices." *Furst*, 182 N.J. at 12; *accord, Cox*, 138 N.J. at 21; *Lettenmaier v. Lube Connection, Inc.*, 162 N.J. 134, 139 (1999).  Moreover, consumer class actions are supposed to particularly favored for class action treatment.[9]  The Court's analysis in this case, however, would render the

---

[9] *See, e.g., Strawn v. Canuso*, 140 N.J. 43, 68 (1995); *In re Cadillac V8-6-4 Class Action*, 93 N.J. 412, 435 (1983); *Riley v. New Rapids Carpet Center*, 61 N.J. 218, 228 (1972); *Muise*, 371 N.J. Super. at 35; *Delgozzo v. Kenny*, 266 N.J. Super. 169, 179-180 (App. Div. 1993).  See also *Kugler v. Romain*, 58 N.J. 522, 537 (1971) ("giving the consumer rights and remedies which he must assert individually in the courts would provide little therapy for the overall public aspect of the problem."); *Varacallo*, 332 N.J. Super. at 44 ("For nearly thirty years, our highest court has instructed trial courts to liberally allow class actions involving allegations of consumer fraud." ).  The predominance requirement "is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (U.S. 1997); *In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 314 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999); *In re Buspirone Patent Litig.*, 210 F.R.D. 43, 58 (S.D.N.Y. 2002).

M012A49002

CFA ineffective, because it would allow defendants to focus on the hapless plaintiff rather than their own misconduct and, in the bargain, essentially eliminate class actions.

A CFA case is supposed to focus on the misrepresentations or unconscionable conduct of the seller, not on the myriad reactions of the consumers. Here, it should not matter what consumers would have done if they had known the truth about Vioxx. The point is that they *were not given the truth at the time of purchase* and therefore were denied the opportunity to make a free choice in the marketplace. *See Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 471 (App. Div. 2001) (CFA not only aimed at con men, but "designed to promote the disclosure of relevant information to enable the consumer to make intelligent decisions in the selection of products and service."). The CFA cannot deter such misconduct if it no longer applies to the most egregious cases.

> **D.      The Supreme Court's Decision In *Local 68 Welfare Fund* Addressed Factors Not Present Here and Does Not Preclude Class Certification.**

The Court found that its conclusion on the issue of causal nexus was dictated by the Supreme Court's decision in *Local 68 Welfare Fund. See* slip op. at 13. However, the Supreme Court's decision addresses a crucially different issue. In that case, the Local 68 Welfare Fund brought a CFA claim on behalf of a nationwide class of third-party payors. However, the third-party payors did not seek to show a causal relationship between Merck's conduct and sales. Instead, they argued that Merck's misrepresentations and omissions of material fact about Vioxx caused the Pharmacy and Therapeutics committees ("P&T committees") of the third-party payors and their pharmaceutical benefit managers ("PBM") to give Vioxx favorable status on their formularies. As the Court understood the Local 68 Welfare Fund's argument:

> if defendant had disclosed the adverse information about which it
> was aware concerning the safety and efficacy of the drug, plaintiff
> and the other class members either would not have authorized its
> inclusion in their formularies or would have placed it in a tier that
> would have discouraged consumers from purchasing it and,
> therefore, would have reduced the amounts that third-party payors
> authorized for reimbursement of the drug's cost to plan members.
> *Id.*, 192 N.J. at 381.

-12-

M012A49003

This Court had certified a nationwide class; the Appellate Division accepted Defendant's interlocutory appeal and affirmed. The Supreme Court also accepted interlocutory review but reversed. The Supreme Court found a lack of predominance because:

> each third-party payor, relying on PBMs and P&T Committees, made individualized decisions concerning the benefits that would be available to its members for whom Vioxx was prescribed. The evidence about separately created formularies, different types of tier systems, and individualized requirements for approval or reimbursement imposed on various plans' members and, to some extent, their prescribing physicians, are significant. That evidence convinces us that the commonality of defendant's behavior is but a small piece of the required proofs. Standing alone, that evidence suggests that the common fact questions surrounding what defendant knew and what it did would not predominate. *Id.* at 390-91.

A careful review of the Supreme Court's decision in *Local 68 Welfare Fund* shows that it should not be given a wider application than the Court apparently intended. The Supreme Court understood that it was dealing with sophisticated entities making formulary decisions on advice from medical or pharmacology experts. Moreover, the third-party payors alleged that these committees were misled by individual presentations by Merck and therefore gave favorable placement to Vioxx on their formularies. Thus, the issue of causation was related not to purchases, but to placement on the formularies, and involved different plans with different plan designs, different results of Vioxx placement, and different effects on how Vioxx was ultimately purchased or paid for. The Supreme Court concluded that a wide variety of factors may have played a role in making formulary decisions, only one of which might have been the relative safety of Vioxx.

Here, the class consists of individual consumers who purchased Vioxx after their doctors prescribed it. There are no allegations about Merck influencing formulary placements; this is a straightforward case in which consumers brought a product that the seller did not honestly or fully represent. Plaintiffs here have not alleged any individual reliance on misrepresentations or omissions, but instead allege that the entire marketing program for Vioxx - including direct-to-

-13-

M0124A9004

consumer advertising, detailing, and other ads and education targeting doctors - was a uniform, overarching scheme of misinformation and omissions about the drug's significant cardiovascular risks.  Every purchase and every prescription of Vioxx took place within the shadow of these misrepresentations and omissions.  It is well established that defendants' misrepresentations of material facts are "unlawful even if no person was in fact misled or deceived thereby." *Cox*, 138 N.J. at 17; *Zorba Contractors, Inc. V. Housing Auth., City of Newark*, 362 N.J. Super. 124, 139 (App. Div. 2003); *Skeer v. EMK Motors, Inc.*, 187 N.J. Super. 465, 470 (App. Div. 1982). Therefore, whether the consumers or the doctors were themselves misled (or considered themselves to be misled) is irrelevant to the issue of causal nexus.  *Varacallo*, 332 N.J. Super. at 49.

Nothing in the *Local 68 Welfare Fund* opinion expressly or impliedly overrules the decisions in *Varacallo*, *Delgozzo*, or *In re Cadillac*.  To the contrary, the Supreme Court cited those cases as good law throughout, and this Court relied on these decisions in its March 17 decision.

Moreover, unlike the third-party payors, the individual consumers have no other means of vindicating their rights.  They are *precisely* the group that the Supreme Court has held should be especially protected through a class action.  *Local 68 Welfare Fund*, 192 N.J. at 384; *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 104 (2007) ( the class action helps to "equalize adversaries," a purpose that is "even more compelling when the proposed class consists of people with small claims.").  *See also Kugler v. Romain*, 58 N.J. at 538 (class action is a "simple, inexpensive solution" to "accomplish the greatest possible good for the greatest possible number of consumers who have common problems and complaints *vis-à-vis* the seller.").  It is fundamentally inconsistent to say that class actions are favored to remedy consumer fraud, but then adopt a standard that so individualizes the element of causation that class actions are essentially impossible.

Nor was the decision in *Local 68 Welfare Fund* meant to constrain the intended broad

-14-

M012A49005

scope of the CFA, which the Supreme Court has since reaffirmed:

> When confronted, as we are here, with a plaintiff who asserts that she was the victim of an overcharge which itself is small in amount, and who seeks recovery for herself and on behalf of others with "nominal" claims, we cannot overlook the reality that, without the remedy that the CFA affords, all of those wrongs might go unvindicated. *Bosland*, 197 N.J. at 561, *citing Local 68 Welfare Fund*, 192 N.J. at 382-85.

The importance that the Supreme Court gave to protecting individual rights through class actions is amply demonstrated in *Iliadis*, where the Court approved a class that contained 72,000 hourly employees in 185 different job classifications working for 44 Wal-Mart stores, one Wal-Mart Supercenter, and nine Sam's Clubs in New Jersey. *Id.*, 191 N.J. at 96-97.  The Court found that the common questions of fact and law predominated, notwithstanding the possible existence of individual questions such as whether particular employees voluntarily missed breaks and whether employees working off-the-clock expected compensation. *Id.* at 112.  It makes no legal sense to recognize the predominance of issues in a complicated employment case but deny it in a CFA case which is supposed to be particularly appropriate for class treatment.

The Supreme Court again made clear its adherence to a broad interpretation of the CFA in *Bosland*, in which the Court held that a automobile purchaser who discovered she had been overcharged $20 for the registration fee stated a claim under the CFA.  Defendants argued that the plaintiff had a duty to demand repayment prior to suit.  The Supreme Court rejected that argument, stating, "Reading the causal nexus requirement as defendant suggests would add to it the notion that a loss that is ascertainable is not caused by the merchant's offending act if it might have been remedied by the consumer through means other than the one that the CFA creates." *Id.*, 197 N.J. at 560.

Finally, there is some indication that the Supreme Court in *Local 68 Welfare Fund* was concerned about causation and ascertainable loss particularly in the context of a requested nationwide class action. *See* 192 N.J. at 388, 391.  To the extent the nationwide reach of a class action concerned the Supreme Court, it can be addressed by limiting the class to New Jersey

-15-

M012A49006

residents only.

E.    **This Court's Rationale Misapplies The Naproxen Comparison**

The Court further erred by concluding that class-wide evidence cannot show why naproxen is the appropriate substitute for Vioxx.  Slip op. at 14.  With respect, the Court misapprehends Plaintiff's argument, which has to do with ascertainable loss, not causation.  The issue is not whether each Class member would have taken naproxen if Vioxx was unavailable. Instead, Plaintiffs presented a reliable method of measuring the loss.  As Dr. Abramson stated in his declaration, naproxen has the same therapeutic characteristics as Vioxx.  See Abramson Declaration at 5, submitted May 15, 2008 in support of Plaintiffs' Motion for Class Certification. Dr. Rosenthal used the price of naproxen as a yardstick to show how to measure the harm to the Class: "Thus, the price of naproxen could be taken to represent the value the Class would attach to Vioxx absent the alleged deception undertaken by Merck - that is, the value of Vioxx in light of its true safety and efficacy limitations."  Rosenthal Decl. at 13, submitted May 15, 2008 in support of Plaintiffs' Motion for Class Certification.[10]

At trial, of course, the jury could decide that the ascertainable loss is not properly measured against naproxen, but against aspirin or some other pain reliever.  The point is that Class members did not receive the benefit promised by Merck, and that loss can be ascertained by comparing Vioxx to other pain drugs with similar characteristics but without the safety misrepresentations and omissions.  The comparative price of the non-Vioxx pain reliever is not a hypothetical price, but the actual price of a comparative medication.  The comparison of the Vioxx price to naproxen yields a number which fully meets the requirements of ascertainable loss, in that it is "quantifiable or measurable," *Thiedemann*, 182 N.J. at 248; *Bosland*, 396 N.J. Super. at 277, and provides a reasonable estimate of the loss.

---

[10] "Another way of thinking about the naproxen price as a yardstick for the true benefit of Vioxx is the following: had Class members understood that there was an equally effective (and possibly safer) product at naproxen's price they would not have been willing to pay more than that amount for Vioxx." *Id.*

-16-

M012A49007

**F.      Plaintiffs Kleinman and Martin are Typical of the Class Members**

The Court further erred in finding that Plaintiffs Kleinman and Martin were not typical of the Class. Slip op. at 15-16. The Court did not find anything unusual about either Plaintiff's situation, but found that there were "multiple differences" in their medical histories and that they "received a different benefit from the drug." *Id.* However, requiring this level of particularity in order to show a causal nexus insures that no individual in the country would ever meet the typicality requirement because every patient has a different medical history.

This is not the standard for typicality in New Jersey. "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Laufer*, 385 N.J. Super. at 181 (plaintiffs with CFA claim found typical) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir.1994)); *see Cartiglia v. Johnson & Johnson Co.*, Docket No. MID-L-2754-01, 2002 WL 1009473, at *12 (N.J. Super. L. Apr. 24, 2002). Class action law is uniform that the focus of the typicality inquiry must be on the defendants' behavior, not that of the plaintiffs. *Prudential Sales Practices*, 148 F.3d at 311; *In re Sumitomo Copper Litig.*, 194 F.R.D. 480, 482 (S.D.N.Y. 2000); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995). A plaintiff's claims will be typical of those of the class where all claims arise from the defendant's overarching scheme. *In re Synthroid Marketing Litig.*, 188 F.R.D. 295, 299 (N.D. Ill. 1999); *Baby Neal*, 43 F.3d at 58; *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992); *In re Prudential Sec. Inc. Ltd. Partnerships*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 511 (S.D.N.Y. 1996).

Although the named Plaintiffs may have slightly different medical histories - as one would expect - they share the key characteristics with the Class to demonstrate typicality: they were prescribed Vioxx by a doctor and paid some or all of the purchase price for the drug.[11] As

---

[11] Although not essential to a determination of this motion, the Court's description of Ms. Kleinman's is contradicted in certain respects by the record. Although the Court stated that Ms.

-17-

M012A49008

described in the initial papers, and as the Court seems to accept, *see* slip op. at 9-10, these

transactions all took place within the overarching and uniform scheme of misrepresentations and

omissions by Defendant.  This is more than enough to show typicality.

**III.   THE COURT ERRED IN HOLDING THAT UNJUST ENRICHMENT CANNOT APPLY TO THIS CLAIM, OR THAT CLASS CERTIFICATION IS UNWARRANTED**

The Court denied class certification on Plaintiffs' unjust enrichment claims, declaring

that New Jersey does not allow a recovery for this type of claim, and that disgorgement of profits

is a punitive form of damages.  Slip op. at 15.  The Court does not cite any authority for these

conclusions, which are, with respect, incorrect and unrelated to class certification.

As the Court notes, New Jersey recognizes a claim for unjust enrichment.  Slip op. at 15.

A plaintiff must show both "that defendant received a benefit and that retention of that benefit

without payment would be unjust. . . .  The unjust enrichment doctrine requires that plaintiff

show that it expected remuneration from the defendant at the time it performed or conferred a

_____

Kleinman did not see any Vioxx advertising, slip op. at 3, she in fact saw 12 different televison
and print ads during the time she took Vioxx.  *See* Declaration of David J. Cohen, May 15, 2008,
Ex. 85, submitted with Plaintiffs' Renewed Motion for Class Certification.  In her deposition,
defense counsel asked about only three of these ads.  Kleinman Dep. at 121-133, attached to
Lieverman Decl. as Ex. 1, submitted herewith.  She did not see the ads until after she began
taking the drug.  *Id.* at 87-88, 120.  She considered these ads to be important sources of
information about Vioxx risks, and paid attention to them for health-related warnings.  *Id.* at 86.
None of the ads she saw disclosed any cardiovascular risks associated with Vioxx.  *Id.* at 106.

Kleinman was at "high risk" for cardiovascular events.  *Id.* at 50-57, 103-104.  She did
not require Vioxx for its purported GI benefits, and could have taken aspirin for her pain.  *Id.* at
106.

As for her doctor, the Court did not consider Dr. Solomon's clear bias in favor of Merck.
Dr. Solomon did not believe that Vioxx posed CV risks, and did not think there was any basis for
taking Vioxx off the market.  Solomon Dep. at 106, 125-32, attached to Lieverman Decl. as Ex.
2.  When Vioxx was on the market, Solomon prescribed Vioxx for Kleinman every time she
visited his office, although it was not adequately managing her pain and he knew of her CV
risks.  *Id.* at 82-111.  Solomon received at least $150,000 from Merck over the years for lectures
and other activities.  *Id.* at 111-113, 133-34.  The Court is correct that the class would not be
well-served by Dr. Solomon's testimony, but Ms. Kleinman was not well-served by his
allegiance to Vioxx and Merck.  Plaintiffs have no intention of relying on Dr. Solomon's
testimony for their case.  To the contrary, Dr. Solomon is an example of how Defendant's
conduct pervaded and affected the medical community with its overarching scheme.

M012A49009

benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994) (citations omitted). *Accord, Iliadis*, 191 N.J. at 110. *See* Restatement of Restitution § 1, cmt (e) (1937).

Courts have recognized that "state claims of unjust enrichment 'are universally recognized causes of action that are materially the same throughout the United States.'"[12] Restitution "serves to deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits honestly in the first instance, and *even though the plaintiff may have suffered no demonstrable losses.*" *Scrushy v. Tucker*, 955 So. 2d 988 (Ala. 2006) (emphasis added) (quoting *Schock v. Nash*, 732 A.2d 217, 232-33 (Del. 1999). This is consistent with the theory of unjust enrichment, which looks to the enrichment of the defendant rather than the damages to the plaintiff.

The remedy for unjust enrichment is restitution and is measured as the value of the benefit that the defendant unjustly retains. *See* Restatement § 1; D. Dobbs, *Handbook of the Laws of Remedies: Damages - Equity - Restitution* 623-24 (1973). *See Cheminova America Corp. v. Corker*, 779 So. 2d 1175 (Ala. 2000) (national class of consumers certified to bring unjust enrichment claims arising out of product recall of medical skin cream as unsafe). As the District of New Jersey has ruled, "The critical inquiry is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D. N.J. 2004).

As the citations above note, the remedy for unjust enrichment is restitution, which by

---

[12] *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) (citing *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998)); *In re Warfarin Sodium*, 391 F.3d at 529-30 (affirming certification of nationwide settlement class including unjust enrichment claims); *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003) (certifying nationwide class of unjust enrichment claimants); *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612-13 (D.S.D. 2004); *Blue Cross/Blue Shield of Alabama v. Wyeth Pharms., Inc.*, No. CIV. A. 2003-6046-RSV, 2006 WL 1241019, at *11 (Ala. Cir. Ct. Feb. 27, 2006) (certifying nationwide class of third-party payor unjust enrichment claimants); *In re Pennsylvania Baycol Third-Party Payor Litig.*, No. 1874 Sept. Term 2001, 2005 WL 852135, at *6-7 (Phila. C.C.P. Apr. 4, 2005) (same).

M012A49010

definition is not punitive.  Restatement (First) Restitution, chapt. 8, top. 2, at 595-96 (1937);[13]

*Engelke v. Athle-Tech Computer Systems, Inc.*, 982 So. 2d 3, 9  (Fla. App. 2 Dist. 2008); *Tele*

*Aid*, 2009 WL 1101241, at *13.  Defendants have not cited any law to the contrary.

Even if restitution could somehow be deemed a punitive remedy, it has no effect on class

certification.  The only issue is whether the elements of unjust enrichment can be shown on a

class-wide basis.  As to the scope of New Jersey's common law claim of unjust enrichment, that

is a matter for summary judgment or judgment on the pleadings, not for class certification.  So

long as unjust enrichment can be proved or disproved based on class-wide issues of proof, the

common issues predominate and class certification should have been granted.

## IV.     THE CLASS IS ENTITLED TO A FORUM IN WHICH TO PRESENT THEIR CLAIMS

This Court candidly recognized that in the absence of a certified class, individual

consumers will likely have no avenue for relief.  Slip op. at 17.  This contravenes basic concepts

of adjudication.  "[I]t is a general and indisputable rule, that where there is a legal right, there is

also a legal remedy by suit or action at law. . . ."  *Marbury v. Madison*, 1 Cranch 137, 163 (1803)

(quoting 3 Blackstone's Commentaries 23, 109).  A complex case is not an unmanageable one.

As one court noted, "[w]e are not assessing whether this class action will create significant

management problems, but instead determining whether it will create relatively more

management problems than any of the alternatives (including, most notably, 600,000 separate

lawsuits by the class members)."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004).

Moreover, "the nature of our judicial system mandates that our courts provide a forum

---

[13] "Actions for restitution have for their primary purpose taking from the defendant and restoring to the plaintiff something to which the plaintiff is entitled, or if this is not done, causing the defendant to pay the plaintiff an amount which will restore the plaintiff to the position in which he was before the defendant received the benefit.  If the value of what was received and what was lost were always equal, there would be no substantial problem as to the amount of recovery, *since actions of restitution are not punitive*.  In fact, however, the plaintiff frequently has lost more than the defendant has gained, and sometimes the defendant has gained more than the plaintiff has lost."  *Id.* (emphasis added).

-20-

M012A49011

for the redress of injuries, and they should not shirk this responsibility because of conjecture" regarding a case's perceived complexity. *NASDAQ*, 169 F.R.D. at 528 (quoting *In re Sugar*, 73 F.R.D. at 356). As Judge Young observed in approving the $75 million settlement in *Relafen*, "One thing is clear beyond peradventure - were it not for the class action procedures prescribed under Rule 23, not a single consumer would ever have received a dime . . . ." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 84 (D. Mass. 2004).

This does not mean that every conceivable case of consumer loss must be certified to proceed as a class action. However, it does mean that in light of the importance placed in affording a remedy to the injured, courts should be wary of interpreting statutes in such a way as to make the adjudication of the claims impossible and to thus nullify the scope and effect of remedial statutes.

As a further reason for not finding a class action as superior, the Court noted inconsistent results in CFA claims before this Court concerning Vioxx, citing two cases. Slip op. at 17. The problem with this reasoning is that it would bar any class action in any conceivable circumstance. Class actions by definition involve large numbers of class members. If every member of a large class filed a separate claim which was heard by a different jury, the law of averages guarantees that there would be inconsistent outcomes in even the most airtight case.[14] Defendants did not cite a single case in which a class was not certified on this ground - only cases involving collateral estoppel.

Indeed, *it is precisely because of the likelihood of inconsistent results over large populations that classes are certified.* "The use of a class action in this case would avoid duplicative lawsuits with potentially inconsistent results, and is a superior procedure to other

---

[14] Moreover, as the Court is aware, the Vioxx cases tried in New Jersey all claimed serious physical injuries in addition to the CFA claims. The trials overwhelmingly focused on the elements of a personal injury case, and the damage calculations (and plaintiff-side jury awards) were almost exclusively related to personal injuries. It seems to be an undue stretch to extrapolate those outcomes to what a jury might do faced with a CFA claim for economic damages only.

M012A49012

available methods for the fair and effective adjudication of the controversy." *Laufer v. United States Life Insurance Co. in the City of New York*, Docket No. BER-L-9082-04, 2005 WL 1869211, at *14 (N.J. Super. L. Aug. 8, 2005) (certifying New Jersey class under CFA), *aff'd*, 385 N.J. Super. 172, 187 (App. Div. 2006).

Plaintiffs have met the tests for showing all elements of their claims by class-wide evidence. Their case falls squarely within that group of disputes that New Jersey particular favors for class-wide treatment. This Court's decision denying class certification unfortunately runs contrary to these precedents and should be modified to certify the requested consumer class.

M012A4901 3

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that the motion for reconsideration be granted and that the Court certify the class pursuant to Rule 4:32-1.

Dated: May 1, 2009

                                                /s/ Theodore M. Lieverman

Theodore M. Lieverman
Jeffrey L. Kodroff
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-6300

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA 02142
(617) 482-3700

Steve W. Berman
Craig Spiegel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292

*Counsel for the Individual Consumer Class*

David J. Cohen
SALTZ MONGELUZZI BARRETT & BENDESKY
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
(215) 496-8282

Christopher M. Cosley
LAW OFFICE OF CHRISTOPHER M. COSLEY
1931 Rohlwing Road, Suite C
Rolling Meadows, Illinois 60008
(847) 394-3200

*Additional Counsel for the*
*Individual Consumer Plaintiffs*

-23-

M012A49014