# **EXHIBIT C**



FILED
MAR 17 2009
Carol E. Higbee, P.J.Cv.

Mar 17 2009
1:52PM

24247601

## NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE COMMITTEE ON OPINIONS

## SUPERIOR COURT OF NEW JERSEY
### COUNTIES OF
### ATLANTIC AND CAPE MAY

**CAROL E. HIGBEE, P.J.Cv.**

1201 Bacharach Boulevard
Atlantic City, NJ 08401-4527
(609) 343-2190

### MEMORANDUM OF DECISION ON MOTION
Pursuant to Rule 1:6-2(f)

| | |
|---|---|
| *CASE:* | Kleinman v. Merck & Co., Inc.; Martin v. Merck & Co., Inc. |
| *DOCKET #:* | ATL-L-3954-04, ATL-L-24-05 |
| *DATE:* | March 17, 2009 |
| *MOTION:* | Class Certification on behalf of Individual Consumer Plaintiffs |
| *ATTORNEYS:* | **Plaintiffs –** Theodore M. Lieverman; Jeffrey L. Kodroff; Steve W. Berman; Craig R. Spiegel; Thomas M. Sobol; Elizabeth A. Fegan; David J. Cohen; Christoper M. Cosley |
| | **Defendants –** John H. Beisner; Diane P. Sullivan; Elliot M. Gardner; Christina S. Keddie; Jessica D. Miller; Nina H. Ramos |

Having carefully reviewed the papers submitted and any response received, I have ruled on the above Motion as follows:

The plaintiffs Elaine Kleinman and Ronald Martin submitted a renewed motion for class certification on May 15, 2008. Plaintiffs bring claims under the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to -181, and for common law unjust enrichment. The class would include any individual consumer of Vioxx, excluding third-party payors, and seeks compensation for economic harm, rather then personal injury.

*"The Judiciary of New Jersey is an equal Opportunity/Affirmative Action Employer"*

## I. Background

At issue in this matter is whether Merck was aware of the cardiovascular ("CV") risks and failed to disclose knowledge of this risk during the period that Vioxx was on the market, from June 1, 1999 to October 1, 2004. Plaintiffs allege the existence of internal memorandums and other documents indicating that Merck was aware of the CV risks as early as 1996, that Merck engaged in a uniform deceptive marketing campaign to hide evidence of the CV risks, and that Merck's clinical studies, specifically the VIGOR study, were designed to minimize the evidence of CV risks in order to demonstrate the safety of the drug.

The results of the VIGOR study were published in 2000 in The New England Journal of Medicine. Plaintiffs claim the journal article misrepresented the results of the VIGOR study and the safety of Vioxx, specifically by forwarding the hypothesis that the CV results were a result of cardio protective nature of naproxen, the comparator drug, and participants were not taking aspirin. Plaintiffs focus on this article and its subsequent republication to the medical community to demonstrate the misrepresentations and omissions made by Merck.

Additionally, plaintiffs allege that Merck trained its sales force to avoid answering questions about Vioxx's CV risks, and point to documents ranging from October 1999 to February 2001 which show the intent to mislead or misdirect questions from doctors about CV risks.

Finally, the plaintiffs also note that the direct to consumer advertising campaign further mislead consumers because it failed to identify the CV risks. Rather, the "common theme" in the advertisements was safety and effectiveness. Plaintiffs argue these advertisements demonstrate the commonality and uniformity of the marketing of Vioxx.

M010F57196

The first representative of the class is Elaine Kleinman, who indicated she used Vioxx at various points over the course of three years. Ms. Kleinman took Vioxx at the recommendation of her doctor and did not see any advertising for Vioxx. She stated that Tylenol and Aleve were as effective in relieving her pain. After Vioxx was withdrawn from the market, her doctor recommended Tylenol for her pain. However, her doctor has testified that, if available, he would continue to prescribe this drug to his patients.

The second representative of the class is Ronald Martin, who indicated he took Vioxx intermittently between 1999 and July 2004. He testified that Vioxx did not relieve his back pain, and he continued to take hydrocodone at the same time for his back pain. At other times, he took Vioxx for pains related to surgery or other illnesses. Mr. Martin did see advertisements for Vioxx, and did ask his physician for a prescription for Vioxx, but he stated he did not do so because of the advertisements he saw. Mr. Martin has also used Bextra, Celebrex, and prescription strength ibuprofen for his pain.

The class definition the plaintiffs propose is:

> All individual consumers in the United States (other than consumers in California) who from June 1, 1999 to October 1, 2004, inclusive paid some or all of the purchase price for the prescription drug Vioxx, manufactured by defendant Merck & Co., Inc. "Individual consumers" means those individual end-users who paid for all or any part of a prescription of Vioxx and does not include third-party payors. Excluded from the Class are (i) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors, assigns, and employees, and (ii) the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

[Pl.'s Mot. Class Cert. 1.]

Although the class proposed is nationwide, plaintiffs would exclude California, because of a pending class action certification there. Plaintiffs seek to apply New Jersey substantive law to the class. However, if the Court declines to apply New Jersey law to a nationwide class, the

plaintiffs propose a class of New Jersey consumers only. Plaintiffs allege that a trial can focus on the decision to develop Vioxx, the knowledge of the CV dangers, and the sales and marketing scheme that relied on common misrepresentations and omissions. Plaintiffs seek to have a jury determine liability based on these common facts and to assess the amount of aggregate liability. The individual damages portion of the trial would be conducted by a master appointed by the Court. A Special Master would approve individual claims under a calculation formulated by the plaintiff's experts and approved by the jury.

Defendant asserts three reasons for the denial of the motion: (1) a governmental interest analysis points to substantive issues with the law of the other fifty states, which render the class unmanageable; (2) even if a New Jersey only class is certified, there is no way to resolve claims based on common factual proof because an overwhelming number of individual factual proofs would be required; and (3) a class action is not a superior mechanism for resolving claims. Defendant focuses on the challenges of applying New Jersey law to the entire class as a primary reason for the denial, but argues that even the alternative New Jersey only class cannot be granted because of the highly individualized circumstances in which the plaintiffs were prescribed Vioxx. Defendant points to the fact that each potential class member took the drug for a different reason, paid a different amount for the drugs, and would have made different decisions about continuing to take the drug had the CV risk information been revealed earlier. Defendant argues these individualized issues present themselves in the histories of the class representatives themselves, making their claims not typical of the potential plaintiffs claims. Further, the defendant argues that the theory of ascertainable loss and causation forwarded by the plaintiffs is identical to the fraud on the market theory rejected as inapplicable to the CFA in International Union of Operating Engineers Local 68 Welfare Fund v. Merck & Co. (*Local 68*),

192 N.J. 389 (2007). Defendant also asserts a class action is not a superior mechanism of adjudicating these claims because of the settlement already reached in Vioxx litigation.

## II.   Standards for Certification

New Jersey Court Rule 4:32-1 governs the certification of a class action in New Jersey. The rule must be liberally construed, particularly in cases involving consumer fraud. In re Cadillac V8-6-4, 93 N.J. 412, 435 (1983). A request for class action certification should be granted "'unless there is a clear showing that it is inappropriate or improper.'" Delgozzo v. Kenny, 266 N.J. Super. 169, 180 (App. Div. 1993) (quoting Lusky v. Capasso Bros., 118 N.J. Super. 369, 373 (App. Div. 1972)).

Despite this deference, a trial court must undertake a "'rigorous analysis'" to determine if the requirements of the rule are met. Carroll v. Cellco Partnership, 313 N.J. Super. 499, 495 (App. Div. 1998) (citation omitted). "Although class certification may not be denied based on the *factual* merits of a complaint, some preliminary analysis of the legal theory on which the action is based is required." Fink v. Ricoh Corp., 365 N.J. Super. 520, 538 (Law Div. 2003) (emphasis added); accord Delgozzo, supra, 266 N.J. Super. at 180-181 (stating a court must not "make a preliminary determination of the merits of the underlying claims"). "'The court is bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that the plaintiff may be altogether unable to prove his allegations.'" Delgozzo, supra, 255 N.J. Super. at 181 (quoting Blackie v. Barrack, 524 F.2d 891, 901 n. 7 (9th Cir. 1975), certif. denied, 429 U.S. 816)). The legal analysis undertaken by the court must extend "beyond the pleadings," in that "'a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful

M010F57199

determination of the certification issue.'" Carroll, supra, 313 N.J. Super. at 495 (quoting Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996)).

There are several prerequisites to maintaining a class action. Part (a) of R. 4:32-1 states that a class action can be maintained only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, one of the requirements of Part (b) of the rule must also be met. Plaintiffs submit that they satisfy the conditions of (b)(3), which specifically requires the court to find that:

> the questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factors pertinent to the findings include:
>
> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability in concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.
>
> [R. 4:32-1(b)(3).]

Plaintiffs assert that all of the requirements of R. 4:32-1 have been established. The numerosity requirement specifically requires the class to be so numerous that joinder would be impracticable. R. 4:32-1(a)(1). Merck does not challenge the numerosity requirement. The numbers of the class are unknown, but are estimated to be around 20 million people in the United States. Certainly, this is a sufficiently large number to satisfy the requirement.

The Court recognizes the existence of common questions of law or fact, as required by R. 4:32-1(a)(2). Multiple common questions exist, including whether Merck disseminated false or misleading statements related to the safety of Vioxx, whether Merck knowingly omitted material

information related to the safety and efficacy of the drug, and whether Merck's representations and conduct had the capacity to mislead consumers about the safety of Vioxx. Pl.'s Mot. Class Cert. 11. Merck does not challenge the existence of these common questions of law or fact.

Merck does vigorously challenge the predominance, typicality, and superiority requirements. The Court addresses these issues in turn below.

### i. Predominance

Questions of law or fact common to the members of the class must predominate over any questions affecting individual members. R. 4:32-1(b)(3). In this matter, Merck asserts that individualized issues overwhelm the existence of any common issues. Specifically, Merck notes the varying reasons for the prescription of Vioxx, the differing amounts paid for the drug, and the different prescription decisions that patients and doctors may have made if more risk information was revealed.

Plaintiffs bear the burden of establishing that the predominance requirements are met. In re Cadillac, supra, 93 N.J. at 426. The predominance inquiry focuses on "whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 108 (2007) (citation omitted). The Iliadis Court further enumerated the requirements for a finding of predominance.

> First, the number and, more important, the significance of common questions must be considered. *Second, a court must decide whether the "benefit from the determination in a class action [of common questions] outweighs the problems of individual actions."* Third, predominance requires, at a minimum, "a common nucleus of operative facts."
>
> Notably, predominance does not require the absence of individual issues or that the common issues dispose of the entire dispute. Individual questions of law or fact may remain following resolution of the common questions. Predominance does not require that all issues be identical among class members or that each class member be affected in precisely the same manner.

7

[Iliadis, supra, 191 N.J. at 108-109 (emphasis added) (citations omitted).]

Individualized questions, therefore, do not alone require rejection of a class certification request. However, the benefit of a class action must outweigh the problems of an unmanageable amount of mini-trials that may result after a uniform determination of common questions, such as liability. Steering Committee v. Exxon Mobil Corp., 461 F.3d 598, 602 (5th Cir. 2006).

In assessing predominance, the New Jersey Supreme Court required "an evaluation of the legal issues and the proof needed to establish them," and "a close analysis of the facts and law [rather] than by recourse to reported decisions." In re Cadillac, supra, 93 N.J. at 430, 435. Assuming I adopt plaintiff's argument that the New Jersey law should apply to a nationwide class, I now examine whether common facts predominate under the requirements set forth in Iliadis.

### a. Consumer Fraud Act

The Consumer Fraud Act makes unlawful:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise..., whether or not any person has in fact been misled, deceived or damaged thereby....
>
> [N.J.S.A. 56:8-2.]

The Consumer Fraud Act allows:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act...[to] bring an action....
>
> [N.J.S.A. 56:8-19.]

To state a CFA claim, a plaintiff must therefore allege "three elements: (1) unlawful conduct...; (2) an ascertainable loss...; and (3) a causal relationship between the defendants'

8

unlawful conduct and the plaintiffs ascertainable loss." New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12 (App. Div. 2003), certif. denied., 178 N.J. 249 (2003). The first requirement, unlawful conduct, can be grouped "into three…categories: affirmative acts, knowing omissions, and regulatory violations." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). "A practice can be unlawful even if no person was in fact mislead or deceived thereby." Ibid. It is only the "capacity to mislead" that it significant. Ibid. Additionally, when "the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud." Id. at 17-18. However, if the consumer fraud alleged is an affirmative act, intent is not required. Id. at 18.

To establish unlawful conduct, the plaintiffs allege that Merck "engaged in a uniform campaign of misrepresentation and omissions that violated the Consumer Fraud Act and was common to all individual consumers." Pl.'s Mot. Class Cert. 18. Specifically, plaintiffs allege that Merck knew of the risks of Vioxx and that Vioxx was not superior to other NSAIDs already on the market, but "devised and carried out an elaborate marketing campaign to misrepresent or conceal these facts…." Ibid. The Court accepts that the plaintiffs would indeed be able to produce evidence that Merck knew of the risks of Vioxx at the time of the product launch, that Merck intended to omit or to misrepresent these facts, and over time continued to misrepresent the risks so that plaintiffs can establish unlawful conduct. Defendant argues, however, that this showing cannot be made on a uniform basis. Defendant asserts that Merck's knowledge of Vioxx changed over the period in question. Defendant specifically points to the VIGOR study, which was not completed till after 1999, and asserts they could not warn patients of the results of that study prior to its completion. However, the plaintiffs present evidence that directly contradicts this point—specifically, that Merck had internal knowledge long before VIGOR was

completed of the risks and effects of Vioxx, and uniformly withheld this knowledge over the period in question. Accordingly, this is not a reason to deny class certification.

Defendant also argues that the representations of Merck changed over the period in question. Plaintiffs respond that the slight variations in representations made over the course of the period would not change the common issues presented, and the effects would not vary among the class members. In our Local 68 opinion, this Court found that any variations in marketing did not render the misrepresentations inconsistent. ATL-L-3015-03 (Law Div. Nov. 8, 2004) (slip op. at 13). The opinion of this Court is unchanged. There may have been slight changes to the marketing and representations made over the course of the class period, but these changes do not render the class uncertifiable. The Court should be "willing to look past minor variations among a defendant's misrepresentations, particularly with respect to a centrally-orchestrated fraudulent scheme, where '[t]he center of gravity of the fraud transcends the specific details of [the] ... communications.'" In re Neurontin Marketing & Sale Practices Litig., 244 F.R.D. 89, 109 (D. Mass. 2007) (quoting In re Am. Cont'l Corp./Lincoln Sav. and Loan Sec. Litig., 140 F.R.D. 425, 431 (D. Ariz. 1992)). In this instance, the plaintiffs assert they can prove that the misrepresentations made by Merck were indeed centrally orchestrated. That is that the omission in question—the CV risks—was consistent over the relevant period and part of a continuing fraud. Whether Merck's conduct fell under the title of consumer is a common question that could be resolved in a class action.

Ascertainable loss is the second requirement of the CFA. An ascertainable loss occurs when the plaintiffs receive "something less than, and different from, what they reasonably expected in view of defendant's presentations." Miller v. American Family Publishers, 284 N.J. Super. 67, 90-91 (Ch. Div. 1995). Ascertainable loss requires "a private plaintiff [to] produce

M010F57204

evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005). A loss can be demonstrated by expert proof of a loss in value or "out of pocket expenses…." Romano v. Galaxy Toyota, 399 N.J. Super. 470, 479 (App. Div. 2007). The evidence must not be hypothetical or illusory; rather, it must be quantifiable or measurable. Thiedemann, supra, 183 N.J. at 248. However, the precise amount of damages need not be known as long as the damages are measurable. Talalai v. Cooper Tire & Rubber Co., 360 N.J. Super. 547, 564 (Law. Div. 2001).

In addition to ascertainable loss, the plaintiffs must also make a showing of a causal nexus between the loss itself and the unlawful conduct. Gross v. Johnson & Johnson, 303 N.J. Super. 335, 345 (Law Div. 1997). A causal nexus is not reliance, as required by common law fraud. Varacello v. Mass. Mutual Life Insurance Co., 332 N.J. Super. 31, 48 (App. Div. 2000). If the harm suffered was not the result of the defendant's unlawful conduct, the plaintiff is not entitled to damages. Cox, supra, 138 N.J. at 23. The unlawful conduct does not have to be the sole cause of the harm, however. Varacello, supra, 332 N.J. Super. at 48. While ascertainable loss does not have to be specifically calculated at this point in the litigation, and unlawful conduct does not need to be the sole cause of loss, plaintiff must still demonstrate an ability to establish both elements on a class wide basis.

The plaintiffs first method of demonstrating ascertainable loss is based on the purchase price of Vioxx. This theory of recovery asserts that "Merck sold to the class a drug that was not only less than what was promised, but a drug that was actively dangerous to a significant portion of the class…," and therefore, defendant should refund the entire purchase price. Pl.'s Mot. Class Cert. 23. The defendant asserts that this theory does not demonstrate that the plaintiffs

11

actually suffered a loss from the defendants conduct; rather, it just articulates what damages would be available, if an ascertainable loss was shown.

In Romano v. Galaxy Toyota, the court examined a damages award under the CFA. The court found that the correct measure of damages was not the entire purchase price of the product in question (an automobile), but rather, the difference between the value of the product as represented and the actual value of the product received. Supra, 399 N.J. Super. at 483-484. Romano recognized that the damages granted in a fraud case seek to "make 'an injured party whole,' and…are designed to fairly and reasonably compensate the injured party for the damages or losses proximately caused by the alleged consumer fraud." Id. at 483 (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11 (2004)). The reward of the entire price in that case went beyond what was required to fairly compensate the plaintiff because he plaintiff received a benefit from the transaction (an automobile). Ibid. A fair calculation of damages for each consumer presents a problem in this action, but an individualized calculation of damages alone does not always merit denial of class status. If the damages in question "differ *in degree*," this difference should not act as a bar to certification; however, if the damages differ in type, then the differences may act as a bar. Delgozzo, supra, 266 N.J. Super. at 187 (quoting In re Asbestos School Litigation, 104 F.R.D. 422, 430 (E.D.Pa. 1984)) (emphasis added). The question of how damages can fairly be proven is a difficult one, but probably not an insurmountable one. The issue of causal nexus between the loss sustained by each member of the class and the consumer fraud, however, creates an insurmountable barrier to a class action.

The plaintiffs present two theories of causation which would provide a nexus between Merck's unlawful conduct and the class members purchase of the drug. First, plaintiffs argue

that Merck's withholding of information with the intent that consumers would rely on it is prima facie proof of causation. The plaintiffs rely on <u>Varacello</u> for this theory, which stated:

> If the plaintiffs succeed in proving that [the defendant] withheld material information with the intent that consumers would rely on it in purchasing [the defendant's] policy, the purchase of the policy by a person who was shown the literature would be sufficient to establish prima facie proof of causation.
>
> [<u>Supra</u>, 332 <u>N.J. Super</u>. at 49.]

Although <u>Varacello</u> does indeed establish an instance in which there may be prima facie causation, the plaintiffs in <u>Local 68</u> were subject to the same allegations of misrepresentation as alleged in this matter, but the Supreme Court there did not find prima facie proof of causation. The Court found there was no evidence that the plaintiffs "reacted in a uniform or even similar manner" to the representations of Merck. <u>Supra</u>, 192 <u>N.J.</u> at 390. Rather, the plaintiffs made individualized decisions "concerning the benefits that would be available to its members for whom Vioxx was prescribed." <u>Id.</u> at 391.

The same applies to the purchase of Vioxx by each consumer. The decision of whether to prescribe a medication is made upon a host of individualized factors, including other risk factors the plaintiffs possessed and whether other drugs were effective in relieving the plaintiffs pain. Doctors react to medical warnings differently depending on the patient's condition and medical history. An individualized determination would be required for each plaintiff to determine if the concealment of the CV risk information had a causal relationship on the decision made as to whether or not the patient used Vioxx. Taking into consideration these individualized issues, "the commonality of defendant's behavior is but a small piece of the required proofs." <u>Local 68</u>, <u>supra</u>, 192 <u>N.J.</u> at 391. In this context, as in <u>Local 68</u>, application of a prima facie causation would not be supported by the record. This does not mean there must be proof of

13

reliance, but there still must be a "nexus" and in order to fairly determine if a nexus exists for an individual, numerous factors must be considered that differ from consumer to consumer.

The very expert that the plaintiffs rely on reveals the individualized nature of the issues. Dr. Rosenthal asserts that Vioxx can be compare to naproxen because naproxen is a product with "the same therapeutic characteristics" as Vioxx, or alternatively that "had Class members understood there was an equally effective (and possibly safer) product at naproxen's price they would not have been willing to pay more than that amount for Vioxx." Rosenthal Declaration, 13. Neither one of these statements can be demonstrated on a class wide basis without specific information on each consumer. An examination into what "therapeutic characteristics" naproxen has for potential plaintiffs is an individualized inquiry. What the class members were willing to pay for Vioxx, or naproxen, or any other drug of this category, depends on a multitude of factors including levels of insurance coverage and a subjective determination of effectiveness. For these potential plaintiffs to obtain a recovery of damages on these grounds, a jury would need to consider facts applicable to each plaintiff. Some plaintiffs may have never used another painkiller other than Vioxx. Other may have used naproxen and numerous other NSAIDs without relief of pain before using Vioxx. Some may have gotten significant pain relief. The individual proofs required to show a causal nexus preclude a class action.

### b. Unjust enrichment

Plaintiffs also advance a claim for unjust enrichment. Plaintiffs state that they "will show, using the same evidence used to prove the CFA violation, that Merck acted unjustly through its overarching scheme [of] misrepresentations and omissions about the safety and efficacy of Vioxx." Pl.'s Mot. Class Cert. 37. As in the CFA claim, defendant asserts that an

14

M01OF57208

unjust enrichment claim cannot be made on a class wide basis, because individualized issues overwhelm common issues and therefore predominance does not exist.

The intention of an unjust enrichment cause of action is to receive a "disgorgement" of the profits retained by the defendant. Unjust enrichment "involves a two part test: plaintiff must show both that the defendant received a benefit, and that the retention of the benefit without payment would be unjust." Russell-Stanley Corp. v. Plant Industries Inc., 250 N.J. Super. 478, 510 (Ch. Div. 1991). Retention without payment is unjust if, had "the true facts [been] known to the plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 109 (App. Div. 1966).

Disgorgement of profits is a punitive, not a compensatory, form of damages. There is no law in New Jersey that allows such a recovery in this type of claim.

### ii. Typicality

R. 4:32-1 requires the claims of the representatives to be "typical of the claims or defenses of the class." In re Cadillac, supra, 93 N.J. at 425. The representatives' claims must have the same "'essential characteristics common to the claims of the class.'" Ibid (quoting 3B Moore's Federal Practice ¶ 23.06-2 (1982)).

Plaintiffs allege that Kleinman and Martin's claims are typical of the class, because plaintiffs will have to prove the same course of conduct as other class members. The defendant asserts in response that the individualized issues of the representatives claims demonstrate that common issues do not predominate.

There are multiple differences presented in the histories of the representatives. Ms. Kleinman found that Aleve and Tylenol were as effective as Vioxx. Ms. Kleinman's physician indicated that he would still prescribe Vioxx if it was available, and he himself continued to take

it after it was withdrawn from the market. Mr. Martin found that Vioxx was not always effective and he took hydrocodone at the same time for his pain.

These representatives received a different benefit from the drug. Further, Ms. Kleinman's doctor may have chosen to continue to prescribe the drug, even knowing of the CV risks. From this brief examination of their histories, it is apparent that these plaintiffs may not be typical of many of class representatives. Some doctors believe they were deceived by Merck and would have not prescribed the drug if they knew its true risk factors The patients of these doctors would not be well served by the testimony of Ms. Kleinman's doctor. Although each plaintiff took Vioxx and paid some price for the drug, the similarities between the two plaintiff end there.

### iii. Superiority

To grant certification, the Court must find "that a class action is superior to other available methods" of adjudication. R. 4:32-1(b)(3). A court must consider, in doing so, "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class," and "the difficulties likely to be encountered in the management of a class action." R. 4:32-1(b)(3). The New Jersey Supreme Court has provided additional requirements for a finding of superiority. The superiority requirement "demands (1) an informed consideration of alternative methods of adjudication of each issue, (2) a comparison of the fairness to all whose interests may be involved between such alternative methods and a class action, and (3) a comparison of the efficiency of adjudication of each method." Iliadis, supra, 191 N.J. at 114-115.

Manageability is a significant issue in considering the superiority of a class action. Id. at 117. Denial of class status may be merited if there are "serious difficulties with respect to

M010F57210

notification and opt-out procedures," or if there are issues with "divergent or various governing law." Id. at 119. The reasons for denial cannot be "mere speculation of complications that may arise." Ibid. The potential problems with opt-out procedures and notice that defendant points to are ambiguous and speculative, and are accordingly not a reason for denial of certification.

The New Jersey Supreme Court has recognized that a class action may be the only form of resolution for some claims, and failure to grant a class action may sound a "death knell" for the claims of the individuals in those instances. Id. at 117. In this matter, there may not be an alternative, superior form of resolution for these claims, considering the small size of the damages alleged for each member of the class. This decision may indeed be a death knell to the claims of most individual consumers. However, the Court cannot find that a class action is a superior form of resolution, either. The lack of predominance creates manageability issues. Establishing a "causal nexus" examination would require individualized inquiries into the plaintiffs histories and backgrounds. Even if a New Jersey-only class is granted, problems with individualized issues of proof would be unmanageable.

There have been inconsistent outcomes in previous litigation of CFA claims in Vioxx cases. The defendant points out that that a CFA claim was rejected in Doherty v. Merck. ATL-L-0638-05-MT (Law Div. March 29, 2007) (slip op. at 1). Additionally, Boyd v. Merck was summarily dismissed when the plaintiff testified that he would still take Vioxx, knowing of the risks. ATL-L-1615-03-MT (Law Div. Jan. 30, 2006) (slip op. at 1). These inconsistent outcomes demonstrate that it would be unfair to Merck to certify a class and allow a jury to reach a uniform determination of liability where results could vary from plaintiff to plaintiff. For all these reasons, the Court cannot find that a class action is a superior mechanism for adjudication of these claims.

### III.    Choice of Law

Despite the issues presented with choice of law in Local 68, the New Jersey Supreme Court declined to find choice of law as the "lynchpin for class certification." Supra, 192 N.J. at 388. Rather, in that decision, the Court choose to "analyz[e] more generally the assertions about predominance and superiority." Ibid. The Court specifically expressed "no view" about the Appellate Division's choice of law analysis. Id. at 388 n. 3.

This decision also does not focus on choice of law, though extensively briefed, as the reason for denial of the certification. An examination into the requirements of the CFA demonstrates that an overwhelming number of individualized issues predominate. The lack of predominance, of common issues and need for the jury to consider multiple individual factors in order to find a causal nexus under the CFA and the issues discussed in the superiority assessment provide a sufficient basis for denial of the request for class certification.

_____
CAROL E. HIGBEE, P.J.Cv.

M010F57212