UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEURONTIN MARKETING, SALES | ) | |
| PRACTICES, AND PRODUCTS LIABILITY | ) | MDL Docket No. 1629 |
| LITIGATION | ) | Master File No. 04-10981 |
| | ) | Judge Patti B. Saris |
| | ) | Mag. Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | **Leave to file granted on** |
| ALL MARKETING AND | ) | **September 11, 2009** |
| SALES PRACTICES ACTIONS | ) | |
| | ) | |

**REPLY TO DEFENDANTS' OPPOSITION TO CLASS PLAINTIFFS'
MOTION FOR LEAVE TO SERVE SUPPLEMENTAL EXPERT REPORTS**

The proposed expert reports of Dr. Barkin and Dr. Furberg are highly relevant to Class

Plaintiffs' fraudulent marketing claims that Defendants marketed Neurontin as effective for

bipolar and other mood disorders while suppressing evidence that it was ineffective.  Moreover,

they directly support the certification of both consumer and third-party payer classes beginning

in November 1995.  Defendants overstated procedural hurdles and arguments of prejudice are

not persuasive and should be set aside.


I.      THE PROFFERED REPORTS ARE HIGHLY RELEVANT TO CLASS PLAINTIFFS'
        CLAIMS

The proffered reports of Dr. Barkin and Dr. Furberg ("Expert Reports") establish that

Defendants, beginning in November 1995, suppressed negative material evidence from their

marketing claims that Neurontin was an effective drug for the treatment of bipolar and other

mood disorders.  The Expert Reports demonstrate that Class Plaintiffs' do not seek damages for

the mere off-label marketing of Neurontin, but rather for the fraudulent marketing of Neurontin,

beginning in November 1995.

The Expert Reports do not represent "a new theory of liability," as Defendants inaccurately claim (See Opposition To Class Plaintiffs' Motion For Leave To Serve Supplemental Expert Reports ("Opposition"), Docket No. 1517), rather they are consistent with Class Plaintiffs' claim that Defendants continually suppressed evidence of Neurontin's inefficacy. The suppression of evidence of lack of efficacy was the hallmark of Defendants' fraudulent marketing of Neurontin for bipolar and other mood disorders from the very beginning of their deceitful marketing campaign.[1]

In his proposed report, Dr. Furberg opines that "[t]he off-label promotion of a drug when the Sponsor conceals evidence that directly contradicts the promotional claims is fraud on the medical and scientific communities and the patients they treat."[2]  Amongst Dr. Furberg's conclusions is the finding that Defendants made statements to physicians of Neurontin's beneficial effects on mood while failing to disclose critical data that "contradicted claims of beneficial effects on mood."[3]  Specifically, Dr. Furberg reviews an article authored by Defendants ("Dimond Article") and finds that the article makes "unsubstantiated claims" including that Neurontin is free from adverse effects on mental functioning, "a false claim

---

[1] In their opposition, Defendants draw a distinction between mood data obtained from multiple epilepsy trials and mood data obtained from bipolar trials.  This distinction is not one to which Defendants adhere.  Defendants have based promotional claims that Neurontin was an effective therapy for mood disorders on mood data obtained from epilepsy trials.  Defendants' employees even authored a journal article, based on mood data from the epilepsy trials, entitled "Effect of Gabapentin (Neurontin®) on Mood and Well-Being in Patients with Epilepsy," in which they claimed that their findings "suggest a *beneficial effect* of gabapentin on mood" and "support gabapentin's *lack of adverse effects on mental functioning*."  See Dimond KR, Pande AC, LaMoreaux L, Pierce MW. Effect of Gabapentin (Neurontin) on Mood and Well-Being in Patients with Epilepsy. *Prog Neuropsychopharmacol Biol Psychiatry* 1996;20:407-17 attached as Exhibit 1 (emphasis added).  Defendants now claim that the suppression of mood data obtained from epilepsy trials, which contradict these claims of efficacy, is not relevant to Class Plaintiffs' claims that Defendants suppressed evidence of Neurontin's inefficacy.

[2] Class Plaintiffs' Motion For Leave to Serve Supplemental Expert Reports, Exhibit B (Docket No. 1503-3), Expert Report of Curt Daniel Furberg, M.D., Ph.D. ("Furberg Report") at 18.

[3] Id. at 8.

directly contradicted by the FDA's medical review."[4]  Finally, Dr. Furberg states that Defendants "engaged in the fraudulent off-label promotion of gabapentin for indications, including bipolar and other mood disorders, even when there was no evidence of treatment benefit and *despite the existence of evidence of treatment worsening*."[5]  Dr. Furberg's expert report fully supports Class Plaintiffs' fraud claims that Defendants marketed Neurontin beginning in November 1995 as an effective therapy for mood disorders while suppressing evidence that it was actually ineffective.

Similarly, Dr. Barkin states quite clearly in his introduction that: "documents reviewed in the course of preparing this supplemental report bolster my core opinions that gabapentin is an ineffective medication for the treatment of mood disorders that was misleadingly marketed as effective by Defendants who *continually* suppressed negative evidence."[6]  Dr. Barkin opines that once "Defendants decided to market gabapentin as an effective treatment for mood disorders, including bipolar disorder, what was a safety signal noted in the epilepsy trials, became evidence that contradicted their marketing message."[7]  After reviewing Defendants' documents related to promotional teleconferences that commenced in November 1995, Dr. Barkin concludes that the negative evidence of Neurontin's effect on mood, contained in the FDA's 1992 review, was not disclosed.   He also reviews the Dimond Article concluding "that the FDA's finding were omitted misleading the reader to believe that gabapentin had both a beneficial effect on mood and was free of adverse effects on mood."[8]  In his conclusion, Dr. Barkin states that the FDA's

---

[4] Id. at 17.

[5] Id. at 19 (emphasis added).

[6] Class Plaintiffs' Motion For Leave to Serve Supplemental Expert Reports, Exhibit A (Docket No. 1503-2), Supplemental Report On The Use of Neurontin For Bipolar And Other Mood Disorders ("Barkin Report") at 1 (emphasis added).

[7] Id. at 2.

[8] Id. at 5.

3

medical review "provide[s] early evidence of gabapentin's lack of beneficial, and possible worsening, effect on mood,"[9] evidence which Dr. Barkin repeatedly recounts as suppressed from promotional materials.   Finally, Dr. Barkin writes that:

> The suppression of the FDA's medical review, the safety signal contained therein and the underlying data concerning effect on mood, allowed the company to promote gabapentin as an effective and safe treatment for mood disorders, based solely on anecdotal reports and free from the impairment on sales that disclosure of this negative data would have created.[10]

The foregoing demonstrates that the Expert Reports have direct relevance to the Class Plaintiffs' fraud claims and the certification of bipolar and other mood disorders classes.

## II.   DEFENDANTS' PROCEDURAL ARGUMENTS LACK MERIT

Defendants argue that where a party has proffered expert testimony after the original date set for the disclosure of expert testimony, the "required sanction in the ordinary course is mandatory preclusion,"  citing Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 191 (1st Cir. 2006).  Defendants overstate the holding in Gagnon.  Gagnon, indeed, makes it clear that preclusion cannot be invoked merely because a party fails to meet a deadline, 437 F.3d at 197-199[11]; the Court must first find that the delay was "substantially unjustified" and that the late disclosure was not "harmless."  This Court has discretion in making such findings, but several factors, other than tardiness, must be considered.  Among them:

---

[9] Id.

[10] Id.

[11] Even though the First Circuit agreed that the plaintiffs in Gagnon were not substantially justified in filing their experts' reports after the Court's deadline, and that the late disclosure might not be harmless under the circumstances, it still vacated the District Court's preclusion order given the severity of the sanction and the ability of the Defendants to respond to the Plaintiffs' late disclosure.  437 F.3d at 198.

> the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects.  Surprise and prejudice are important integers in this calculation.  So too is an assessment of what the late disclosure portends for the court's docket.

Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003).  In making these determinations, a Court

must always keep in mind that "preclusion of expert testimony is a grave step, not to be

undertaken lightly."  Primus v. United States, 389 F.3d 231, 234-35 (1st Cir. 2004); Thibeault v.

Square D Co., 960 F.2d 239, 247 (1st Cir. 1992).

   **A.    Defendants Omit Critical Facts Supporting Plaintiffs' Justification For
          Seeking Leave To File Supplemental Reports**

   Defendants' arguments relating to lack of timeliness and justification are

defective.  Defendants attempt to draw an inapposite parallel between Class Plaintiffs'

current efforts to supplement their expert opinions for their case-in-chief with their own

unsuccessful attempt to supplement the Daubert and summary judgment records in the

Products Liability actions.  (See Motion for Leave to Supplement Record on Daubert and

Summary Judgment Motions with November 2008 Supplemental Expert Report of

Robert D. Gibbons, PhD, ("Gibbons Motion"), Docket No. 1489).  Putting aside that

Defendants did not seem so concerned about timeliness when they filed their motion to

supplement their expert opinions, Class Plaintiffs' pending motion is thoroughly

distinguishable based on a variety of factors that Defendants fail to mention.   First,

Defendants in the Products Liability action sought to supplement the record in relation to

a Daubert motion after the motion had been fully briefed and oral argument heard.   Here,

no Daubert motions have even been filed.  Class Plaintiffs are merely seeking to

supplement the expert testimony in support of their case-in-chief.  To the extent that all of

the Class Plaintiffs' expert reports are part of the record for the pending motion for class

certification, it is noteworthy that none of them (except for the report of Dr. Conti), were prepared prior to the Court's hearings on class certification.  Additionally, motions for summary judgment in this case are not due until March 2, 2009, further rendering the comparison to the Gibbons Motion inappropriate, since a summary judgment motion in the Products Liability actions has already been fully briefed.

Second, the supplemental report of Dr. Gibbons was proffered in the Products Liability actions <u>well after both sides</u> had served their expert reports, and <u>after both sides</u> had conducted expert discovery and depositions.  Here, disclosure of the supplemental Expert Reports was made prior to Defendants' disclosure of their expert reports, and no deposition has been conducted <u>by either side</u> on a final expert report (again with the exception of Dr. Conti).

Finally, Defendants do not even accurately summarize the outcome of the Gibbons Motion.  While it is true that the Court denied the Gibbons Motion, Defendants, incredibly, leave out the most relevant part of the order, which stated: "the Court will <u>permit</u> defendant to introduce the study at trial. Accordingly, the Court will <u>permit</u> expert discovery on the report."  (<u>See</u> Electronic Order dated December 2, 2008) (emphasis added).  Rather than mandating a denial of Class Plaintiffs' motion, the Court's order on the Gibbons motion actually supports allowance of this instant motion.

Defendants' argument for lack of justification is similarly unavailing.  The argument that Class Plaintiffs lack "credible justification for delay" is based entirely on the supposition that Class Plaintiffs have known or should have known of Neurontin's association with depression for "years."  Even if Class Plaintiffs should have known prior to the October hearing that the fraud claims of Products Liability plaintiffs were

analogous to those of Sales and Marketing plaintiffs, until July 2008, there was simply no independent, scientific evidence upon which Class Plaintiffs could have relied to make that determination.  While it is correct that Class Plaintiffs were aware of <u>allegations</u> of the connection between suicide and depression since anecdotes of suicide first became publicized, the earliest possible time when Class Plaintiffs could have been aware of a <u>demonstrated association</u> was in July 2008 when FDA's Advisory Committee found that one existed—only two weeks before Dr. Barkin's original report was completed.

### B.      Defendants' Claim of Prejudice Rings Hollow

Defendants cannot credibly claim to be genuinely surprised by evidence that has already been hotly litigated in the Products Liability actions.  (<u>See</u> Class Plaintiffs' Motion For Leave To Serve Supplemental Reports, Docket No. 1503 ¶6.)  Nor can Defendants' suggestion that the burden of additional discovery will be insurmountable be taken seriously.  (<u>Id.</u>, ¶7).  Defendants argue that they have been deprived of the opportunity to address the supplemental reports of Dr. Barkin and Dr. Furberg in their own expert reports that were served two days ago.  Given the narrow scope of these supplemental expert reports,[12] Class Plaintiffs believe the case can go forward with expert discovery as planned and would have no objection to Defendants serving a narrowly-tailored report in response to the Expert Reports within 30 days from allowance of this motion. Moreover, if Defendants need to identify a new expert for this purpose, Class Plaintiffs would agree to waive any opportunity to depose such expert.

---

[12] Dr. Barkin's proposed supplemental report is a mere six pages, a small fraction of *any* of the expert reports served by either side.

III.     DEFENDANTS  AGREE THAT THE COURT SHOULD RESOLVE THESE
         CASES ON THEIR MERITS BY ALLOWING THE COURT AND THE FACT
         FINDER TO HEAR THE MOST RELEVANT EXPERT TESTIMONY

Defendants themselves have set forth the most important reason why the Class

Plaintiffs should be allowed to serve the supplemental Expert Reports.  As they stated in

a reply memorandum filed in the MDL only yesterday, "[t]he ultimate goal of discovery

and the justice system is to ascertain the truth.  This is defendants' goal as well…"  (See

Reply Memorandum in Support of Motion for Leave to Supplement Record on Daubert

and Summary Judgment Motions with November 2008 Supplemental Expert Report of

Robert D. Gibbons Ph.D. (Docket No. 1518) at 3-4).  Granting leave to serve the Expert

Reports will allow the best evidence and the most complete record to be put before the

trier of fact in order to determine whether consumer and TPP classes were victimized by

a pervasive fraud.  For the reasons described above, Defendants will have the full ability

to present a defense with their best and most complete evidence.  Whether the Class

Plaintiffs win or lose, the interests of the justice system will be best served if this motion

is allowed.


                                         CONCLUSION

For the reasons set forth herein, Class Plaintiffs respectfully request that the Court grant

leave to serve upon the Defendants the Supplemental Report on the Use of Neurontin For

Bipolar and Other Mood Disorders, by Dr. Jeffrey S. Barkin, and the Expert Report of Curt

Daniel Furberg, M.D., Ph.D.

Dated: September 11, 2009

*Members of the Class Plaintiffs' Steering Committee*

By:  /s/ Thomas Greene
Thomas Greene
Greene LLP
33 Broad Street, 5th Floor
Boston, MA 02109

By:  /s/ Don Barrett
Don Barrett
Barrett Law Office
404 Court Square North
P.O. Box 987
Lexington, MS 39095

By:  /s/ Barry Himmelstein
Barry Himmelstein
Lieff Cabraser Heimann &
Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

By:  /s/ James Dugan
James Dugan
Dugan & Browne, PLC
650 Poydras Street, Suite 2150
New Orleans, LA 70130

By:  /s/ Thomas M. Sobol
Thomas M. Sobol
Edward Notargiacomo
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA, 02142

By:  /s/ Daniel Becnel
Daniel Becnel, Jr.
Law Offices of Daniel Becnel, Jr.
106 W. Seventh Street
P.O. Drawer H
Reserve, LA 70084

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on September 11, 2009.

/s/Ilyas J. Rona
Ilyas J. Rona