UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
: MDL Docket No. 1629
In re:  NEURONTIN MARKETING, :
        SALES PRACTICES AND : Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION :
: Judge Patti B. Saris
------------------------------------------------------------x
: Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO: :
:
PRODUCTS LIABILITY ACTIONS :
:
------------------------------------------------------------x

**PRODUCT LIABILITY PLAINTIFFS' MEMORANDUM
IN SUPPORT OF EMERGENCY MOTION TO RE-OPEN DISCOVERY**

    Products Liability Plaintiffs, (hereinafter "Plaintiffs"), pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, hereby move, by emergency motion, for an order reopening discovery to facilitate obtaining discovery of Defendants Pfizer Inc., Warner-Lambert Company LLC, Parke-Davis and Warner-Lambert Company (hereinafter "Pfizer Defendants"), relating to information and documents concerning Neurontin that are responsive to Plaintiffs' discovery requests up until the April 23, 2009 change in the label for Neurontin regarding Suicidality, and Pfizer Defendants' recent August 2009 settlement with the United States Department of Justice regarding the off-label marketing of several Pfizer drugs and resulting $2.8 billion fine.

**FACTUAL BACKGROUND**

    The Court's Discovery Order No. 12, ECF Doc. # 771, mandated that paper discovery be concluded by April 30, 2007, and that fact discovery be closed on July 14, 2007. It was also agreed that Plaintiffs' discovery of Pfizer Defendants in the MDL would be utilized as discovery for the cases filed in the *In re Neurontin Products Liability Litigation* in New York State court.

See Proposed Case Management Order in the New York State Neurontin Litigation , attached as Exhibit A to the Declaration of Andrew G. Finkelstein.  Pursuant to Discovery Order No. 7, Pfizer Defendants were to produce documents and information responsive to Plaintiffs' demands for same up until the date of the last injury sustained by any of the Plaintiffs, i.e., May 31, 2004.  ECF Doc # 582.  Since the issuance of that discovery order, there have been additional complaints filed by Plaintiffs claiming injuries to Plaintiffs' decedents that occurred subsequent to the May 31, 2004 cut-off date for disclosure of documents and information.  Specifically, on May 28, 2008, Finkelstein & Partners, LLP filed an action, *Monsue v. Pfizer Inc.,* N.Y. County Index No. 08-11533, in the *In re Neurontin Products Liability Litigation*.  The *Monsue* action, which was removed to the U.S. District Court for the Southern District of New York and transferred to the Neurontin MDL before this Court, concerned a Plaintiff's decedent who committed suicide due to her ingestion of Neurontin on May 29, 2007.  *See* Complaint, Finkelstein Decl., Ex. B.

Moreover, on December 16, 2008, the FDA advised Pfizer that "based on new safety information regarding the risk of suicidal thoughts or behaviors with AEDs, a Risk Evaluation and Mitigation Strategy (RES) (including a Medication Guide) is required for Neurontin."  *See* Letter from FDA to Pfizer, dated April 23, 2009, Finkelstein Decl., Ex. C.  On March 17, 2009, the FDA informed Pfizer that the "Medication Guide should be comprehensive and should include all risk information reflective of your labeling that is necessary for patient's safe and effective use of Neurontin."  *Id.*  Consequently, the FDA-mandated 2009 Neurontin label and patient information guide contain some of the warnings that Plaintiff has advocated, and which Defendants should have provided for their drug Neurontin prior to Plaintiff's decedent's suicide.  The pertinent information from the new 2009 Neurontin Label is as follows:

> **WARNINGS**
> **Suicidal Behavior and Ideation**
> Antiepileptic drugs (AEDs), including Neurontin, increase the risk of suicidal thoughts or behavior in patients taking these drugs for any indication. Patients treated with any AED for any indication should be monitored for the emergence or worsening of depression, suicidal thoughts or behavior, and/or any unusual changes in mood or behavior.

*See* new 2009 Neurontin Label, Finkelstein Decl., Ex. D.

Furthermore, on August 31, 2009, Pfizer executed a settlement agreement with the Department of Justice regarding illegal off-label marketing of several drugs including Bextra and Lyrica. *See* Settlement Agreement, Finkelstein Decl., Ex. E. Page 5 of the Settlement Agreement, in regard to Pfizer's illegal off-labeling marketing of the drug Lyrica and its relationship with Neurontin, states the following:

> 4) Lyrica: During the period September 1, 2005, through October 31, 2008, Pfizer: (a) illegally promoted the sale and use of Lyrica for a variety of off-label conditions (including chronic pain, neuropathic pain, perioperative pain, and migraine), in violation of the FDCA, 21 U.S.C. §331, et seq., and which were not medically-accepted indications as defined by 42 U.S.C. § 1396r-8(k)(6) for which the United States and state Medicaid programs provided coverage for Lyrica; **(b) made or disseminated unsubstantiated and/or false representations or statements about the safety and efficacy of Lyrica, including claims that it was superior to Neurontin and its generic equivalent, gabapentin;** and (c) offered and paid illegal remuneration to health care professionals to induce them to promote and prescribe Lyrica, in violation of the Federal Anti-Kickback Statute, 42 U.S.C. § 1320-7b(b). As a result of the foregoing conduct, Pfizer knowingly caused false or fraudulent claims for Lyrica to be submitted to, or caused purchases by, Medicaid, Medicare and the other Federal Health Care Programs. [Emphasis added.]

## ARGUMENT

A District Judge exercises broad discretion when supervising the discovery process. *Arzuaga-Perello v. Shell Co. (Puerto Rico)*, 1999 U.S. App. LEXIS 2162 (1st Cir. Feb. 4, 1999); *Cruden v. Bank of New York,* 957 F.2d 961, 972 (2d Cir. 1992). The First Circuit has acknowledged that "it will intervene concerning the trial court's discretion "'…only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong

and resulted in substantial prejudice to the aggrieved party.'" *Arzuaga-Perello* at *2 (citing to *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 91 (1st Cir. 1996)). The First Circuit "review[s] a district court's decision to modify a pretrial scheduling order under an abuse of discretion standard." *Vulcan Tools of Puerto Rico v. Makita USA, Inc.,* 23 F.3d 564, 565, (1st Cir. 1994). It is well settled that "pretrial orders are to be liberally construed." *Id.* Pursuant to the Federal Rules of Civil Procedure, courts may allow the modification of a discovery schedule "upon a showing of good cause, Fed. R. Civ. P. 16(b), with 'good cause' being liberally construed." *Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.,* 233 F.R.D. 338, 342 (S.D.N.Y. 2005) (citing to 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1522.1 (1990)) ("good cause" demonstrated where deposition in last week of discovery disclosed importance of another witness and discovery deadline had elapsed). In *Vulcan Tools*, the First Circuit affirmed the district court's decision to reopen discovery and its consideration of dispositive motions, finding that the court "could have concluded that the "good cause" Makita demonstrated for extending the discovery deadline was also good cause for lifting the deadline for filing dispositive motions." 23 F.3d at 566.

In *Wedgewood Limited Partnership I v. Township of Liberty, Ohio,* the district court found good cause and granted defendant's motion to re-open discovery after dispositive motions had been filed where the plaintiff failed to timely produce requested documents. 2008 U.S. Dist. LEXIS 108695 (S.D. Ohio Apr. 24, 2009).

In *Federal Ins. Co v. Imperial Int'l, Inc.,* where plaintiff's counsel only recently learned of information which was "in fact substantial and warrants further discovery" on the last day of discovery, the district court granted their motion to re-open discovery. 1993 U.S. Dist. LEXIS 9051, at *4 (E.D. Pa. June 30, 1993).

Similarly, in *O'Neal v. Smithkline Beecham Corp. d/b/a Glaxosmithkline,* 2007 U.S. Dist. LEXIS 53684 (E.D. Cal. July 25, 2007), the district court granted defendant's motion to amend a pre-trial scheduling order to re-open discovery in order to obtain a deposition. Defendants contended that they were not aware that the particular family therapist had pertinent information until late in the discovery process and were unable to schedule the deposition prior to the close of discovery. *Id*. at *2. The court noted that good cause may be established by demonstrating:

> 1) that [he or she] was diligent in assisting the court in creating a workable Rule 16 order; (2) that [his or her] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [his or her] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [he or she] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [he or she] could not comply with the order.

*Id.* at *5-6 (citations omitted).

      **1.**    **The April 2009 Label Change for Neurontin Is Relevant and Material to the Issues of This Litigation and Plaintiffs Require That Discovery of Pfizer Defendants Be Re-opened to Obtain Documents and Information Up Until The Date That the Label Was Changed.**

Judge Saris has made clear in her prior orders that the FDA Alert and the findings of the FDA were critically significant to this litigation. On April 28, 2008, well after the close of paper, fact and expert discovery, Judge Saris issued an electronic order which allowed Pfizer Defendants to serve a rebuttal expert concerning the FDA Alert, and Judge Saris also stated that she would "be sending a letter to the FDA for its input." The April 2009 label change for Neurontin is of similar critical significance, and Plaintiffs are requesting that discovery of Pfizer Defendants be re-opened to obtain documents and information so that Plaintiffs are fully apprised of the process and events leading up to the label change. As this Court is well aware, all of the information regarding the FDA Alert, label change, etc., was not available and was "reasonably unforeseen or anticipated" at the time of the initial Rule 16 scheduling order and as

5

of the deadlines for the close of discovery. Moreover, the label change, and all of the mechanics, processes, involvement of certain individuals etc., are of crucial significance to Plaintiffs' cases. Although not exhaustive, discovery of such information is relevant to Defendants' knowledge of the risks of depression and suicidal behavior associated with Neurontin as well as the feasibility of issuing a label that warns for off-label uses, which Pfizer Defendants had previously denied they were able to do in regard to Neurontin.

> **2. Discovery of Pfizer Defendants Should Be Re-Opened for Documents and Information Up Until the Date of Pfizer's Settlement Agreement With the Department of Justice for the Off-label Marketing of Other Drugs Including Lyrica, Which Noted That Pfizer Sales Representatives Told Physicians That Lyrica Was Better for Off-label Uses Than Neurontin.**

Judge Saris, in her May 26, 2009 Order, succinctly described the heightened duty to warn that a pharmaceutical manufacturer bears when it engages in off-label marketing of a drug:

> Based on the reasoning of this caselaw, the Court concludes that a manufacturer of a pharmaceutical has a duty to disclose to physicians and patients material facts about the risks of the drug, **particularly when it is engaged in off-label marketing** for uses not approved by the FDA, if it knows that the plaintiff and/or his prescriber does not know or cannot reasonably discover the undisclosed facts.

ECF Doc. # 1790, at 25 (emphasis added).

The manufacturer's **knowledge** of off-label use with its drug is inextricably intertwined with a manufacturer's duty to disclose material facts about risks with the drug. While off-label prescribing by physicians is not itself improper, a manufacturer with knowledge of both extensive off-label use and material facts about risks inherent with taking the drug (e.g., depression and suicide), has a duty to take action. The Settlement Agreement demonstrates that Pfizer Defendants' sales representatives advised physicians that Lyrica was better than Neurontin for off-label uses. Implicit in such statements is that Pfizer was well aware that Neurontin was being extensively prescribed for these off-label uses. The Agreement also provides evidence of a

6

pattern of off-label marketing by Pfizer regarding Neurontin, Lyrica, Bextra and a host of various other drugs. Such information is crucial to Plaintiffs' prosecution of Neurontin cases. Information concerning the Settlement Agreement was not available, and it was reasonably unforeseen or unanticipated prior to the close of discovery that Pfizer Defendants were utilizing a comparison of Neurontin for off-label uses in order to market the drug Lyrica or illegally market other drugs off-label. Plaintiffs are therefore requesting that this Court re-open discovery from the Pfizer Defendants regarding documents and information concerning Neurontin and Lyrica that are responsive to Plaintiffs' discovery demands, up until the date of the Settlement Agreement.

**3.    Plaintiffs Request That This Court Re-Open Discovery of Information and Documents of Pfizer Defendants in Relation to Neurontin That Are Responsive to Plaintiffs' Requests Up Until the Date of the Last Date That a Plaintiff or Plaintiff's Decedent in This MDL Sustained an Injury From the Ingestion of Neurontin, Namely, May 29, 2007.**

Since the passing of the deadline for discovery from Pfizer Defendants in this litigation, there have been several cases filed that concern Plaintiffs who were injured after the May 2004 date which served as the cutoff date for the responsive documents and information disclosed by Defendants. The *Monsue* case concerned a Plaintiff's decedent who committed suicide due to her ingestion of Neurontin on May 29, 2007. Consequently, even if the Court does not re-open discovery through the time periods of March 2009 or August 2009 (as set forth above), Plaintiffs request that this Court re-open discovery so that Pfizer Defendants disclose documents and information concerning Neurontin that are responsive through May 29, 2007. The disclosure should not affect the discovery and/or remand of other cases, where, for the most part, Plaintiffs or their decedents were injured prior to the prior May 31, 2004 cut-off date.

7

> **4.  There Is Good Cause for Re-Opening Discovery and Extending the Cut-Off Date for Responsive Documents and Information, Plaintiffs Have Been Diligent in Their Discovery Efforts Throughout the Course of This Litigation, the Critical Discovery Required Could Not Have Been Reasonably Anticipated Prior to the Discovery Deadline, Plaintiffs Have a Right to Such Discovery, and Defendants Will Not Be Prejudiced by Re-Opening of Discovery.**

Plaintiffs, as outlined above, have provided the Court with three scenarios that demonstrate good cause for re-opening the discovery process.  Moreover, Plaintiffs were diligent in their efforts to assist this Court in creating a Rule 16 order, have complied with the deadlines instituted or have moved for the appropriate extensions.  Just as Judge Saris recognized, after the close of discovery that the FDA Alert and subsequent actions were critical to this litigation, the April 2009 label change, and the recent actions of the Department of Justice that uncovered Pfizer's own improper off-label promotion are of equal import in this litigation.  There is no way that Plaintiffs could have reasonably anticipated these two occurrences to obtain discovery prior to the deadlines established by this Court—these events occurred after the deadlines.  Plaintiffs have a right to documents and information which are of such critical significance to this case.

Moreover, the discovery of this information will in no way delay this litigation because in the MDL, the parties have been given a year (through September 15, 2010) to complete case-specific discovery as per this Court's Order, dated July 24, 2009.  ECF Doc. # 2045.  As such, this Court has already committed to retaining jurisdiction over the MDL for at least another year and is best suited to address these general issues of discovery during this time period.  As such, disclosure may be provided by Pfizer Defendants during this time period.  The re-opening of discovery should not cause any undue prejudice to Pfizer Defendants, who would have been mandated to provide such discovery had the events occurred prior to the close of discovery.

Precedent exists in other MDLs where general discovery has continued despite the fact that individual trials have taken place. For example, in *In re Prempro Prods. Liab. Litig.,* E.D. Ark. Docket No. 4:03-CV-1507-WRW, under the auspices of Judge William R. Wilson, general discovery has continued while at the same time cases have been scheduled for trial and have been tried.

> **5.     Plaintiffs Submit That Defendants Have Attempted to Amend and Supplement Their Disclosures on General Discovery, After the Close of Discovery, to Suit Their Own Ends—When Defendants Desire to Correct Information which Is Favorable to Their Claims and Defenses—But Have Failed to Supplement as Mandated by Rule 26 When Information Arises and Should Be Disclosed That Is Critical to Plaintiffs' Prosecution of Their Claims.**

On September 10, 2009, Pfizer Defendants served Plaintiffs with an Amended Rule 26 Disclosure (a general discovery disclosure). Finkelstein Decl., Ex. F. A comparison with the information contained in Pfizer Defendants' Amended Rule 26 Disclosure with that of their December 2008 Rule 26 Disclosure, Finkelstein Decl., Ex. G, indicates that Pfizer Defendants have added a new witness, namely, Phil Arena of Drug Safety and Risk Management. Certainly this Court will find it would be unjust for Pfizer Defendants to be allowed to amend their Rule 26 disclosure to include information that is advantageous to their strategic position and their claims and defenses while at the same time allow Pfizer Defendants to fail to meet their Rule 26 mandated obligations to supplement and to provide discovery when new relevant and information critical to the very core of this litigation arises. Obviously, Phil Arena, who was employed for Pfizer Defendants, was known and the information he possessed was ascertainable to Defendants prior to the deadline for the close of general discovery, but for some unknown reason Defendants failed to include this witness on the original Rule 26 Disclosure. Such blatant

self-serving manipulation of the Federal Rules of Civil Procedure to facilitate an advantage in a litigation should not be allowed by this Court or any Federal Court.

Moreover, on September 10, 2009, Pfizer Defendants wrote a letter to the Court's Clerk Robert Alba, advising that their expert, Dr. Robert Gibbons, had performed yet another new, never before disclosed "sensitivity analysis" regarding his expert opinions. Finkelstein Decl., Ex. H. The Court should note that Plaintiffs are requesting the opening of discovery of events and occurrences which could not be reasonably foreseen before the close of discovery—Dr. Gibbons, on the other hand, had every opportunity to perform such an analysis prior to the close of expert discovery and the *Daubert* hearings but failed to do so. Once again, when Pfizer Defendants believe it is advantageous and of strategic import to amend their disclosures—when it inures to their benefit, claims or defenses—they amend their disclosures. This purported new analysis is a blatant and direct violation of the Court's directions that no more expert disclosure would be countenanced.

**6. Plaintiffs Submit a Proposed Request for Discovery of Documents Tailored To Resolve the Outstanding Discovery Owed by Defendants, and for Which The Court Is Requested to Grant Leave to Serve on Defendants.**

Discovery Order 6, ECF Doc. # 550, sets forth that "the parties shall not serve additional interrogatories or requests for the production of documents (excluding the template discovery in the products liability actions) absent a motion supported by good cause." Given the Court's Order and the above-referenced discovery sought by Plaintiffs, it is respectfully requested that the Court grant leave to Plaintiffs to serve on Pfizer Defendants the [Proposed] Requests for Production, Finkelstein Decl., Ex. I (Exhibits to [Proposed] Requests for Production omitted). The [Proposed] Requests for Production is tailored to efficiently resolve both the discovery deficiencies Plaintiffs claim as well as the new discovery issues Plaintiffs seek in light of the

2009 labeling revision to Neurontin and Pfizer Defendants' recent $2 billion fine assessed by the U.S. Department of Justice.

## CONCLUSION

Plaintiffs therefore respectfully requests that this Court grant their emergency motion for an order (a) reopening discovery to facilitate Plaintiffs' obtaining discovery of Pfizer Defendants in relation to information and documents concerning Neurontin that are responsive to Plaintiffs' discovery requests up until the April 23, 2009 change in the label for Neurontin, and Pfizer Defendants' recent August 2009 settlement with the U.S. Department of Justice regarding their off-label marketing, and (b) granting leave to serve Plaintiffs' Request for Documents, and such other relief that this Court finds just.

Dated:  September 14, 2009                                         Respectfully submitted,

*Members of Products Liability
Plaintiffs' Steering Committee*


By:     **/s/ Andrew G. Finkelstein**
         Andrew G. Finkelstein, Esquire
         Finkelstein & Partners, LLP
         1279 Route 300, P.O. Box 1111
         Newburgh, NY  12551


By:     **/s/ Jack W. London**
         Jack W. London, Esquire
         Law Offices of Jack W. London
            & Associates
         3701 Bee Cave Rd., Suite 200
         Austin, TX  78746

## **CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on September 14, 2009.

Dated: September 14, 2009

                                        **/s/ Andrew G. Finkelstein**
                                          Andrew G. Finkelstein, Esquire