# EXHIBIT A

```
                                                                    1
 1                   IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MASSACHUSETTS
 2

 3

 4    IN RE:                                   )
                                               ) CA No. 04-10981-PBS
 5    NEURONTIN MARKETING, SALES PRACTICES,) Pages 1 - 98
      AND PRODUCTS LIABILITY LITIGATION        )
 6

 7

 8

 9                              MOTION HEARING

10                BEFORE THE HONORABLE PATTI B. SARIS
                       UNITED STATES DISTRICT JUDGE
11

12

13

14
                                  United States District Court
15                                1 Courthouse Way, Courtroom 19
                                  Boston, Massachusetts
16                                September 18, 2009, 2:40 p.m.

17

18

19

20

21

22
                             LEE A. MARZILLI
23                        OFFICIAL COURT REPORTER
                        United States District Court
24                       1 Courthouse Way, Room 7200
                             Boston, MA  02210
25                            (617)345-6787
```

1  were particularly vigilant like Kaiser, and they had all
2  these little restrictions, for the most part, it fell under
3  the radar screen.  Basically Guardian, I'm told, just
4  allowed every drug that was written off-label to be
5  reimbursed.  Some 30 percent -- that was in Dr. Bell's
6  declaration -- 30 percent say "no off-label," but they never
7  check.  There are only a few of these companies that
8  actually made an effort to restrict, right?
9            MR. CHEFFO:  Well, I think that makes the point,
10 and that's where there's a difference between the class
11 plaintiffs and the third parties because by saying we would
12 have done something different I think is incon- --
13           THE COURT:  No, but the point is, I think that
14 what I had assumed in the class certification motion is that
15 many, many of these places were like Kaiser, and that a lot
16 of the restrictions were put in place for off-label, and it
17 turns out that's not true for the vast majority.
18           MR. CHEFFO:  Well, I'm not sure that --
19           THE COURT:  So marketing directly to the doctors
20 is quite effective because you'd never actually pick it up.
21 The formulary committee would never understand it.
22           MR. CHEFFO:  I don't think that that's accurate.
23 I think the record does show that there's very significant
24 amongst the funds different characteristics.  And the point
25 is, they have an opportunity to change.  You know, we all

61

1  companies.  I mean, they're not in the business of just
2  paying for medicines that hurt people or don't work.
3          THE COURT:  I mean, that's an argument for a jury.
4  But, anyway, let me just get to Kaiser because you've been
5  partly quiet.  So it's your turn now.  I've just got to get
6  through everybody to get you out of here.
7          MS. NUSSBAUM:  Yes, and I'm going to try to hit a
8  few things very quickly.  First, there are two different
9  issues that have just been raised by Mr. Cheffo.  One is the
10 causation issue, which I am prepared to talk about.  The
11 second is the cheaper and more optimal issue, and that is,
12 as your Honor said earlier today, a difference between the
13 class cases and the coordinated classes.  We pled that
14 cheaper and more effective is the standard.  This Court has
15 held us to that standard.  That has been in our complaint
16 since the very beginning, so we need not prove inefficacy.
17 We think the class has proven it, and that's fine.  But we
18 have a lower standard here.
19         But let me start with the causation issue --
20         THE COURT:  You start with causation because I
21 don't totally understand -- I understand their damages model
22 because theirs is quite straightforward:  "It's snake oil.
23 We shouldn't have to pay a penny for it," okay.  And so it's
24 easy, it gets around some of the issues that you have.
25         MS. NUSSBAUM:  But we have both.  We have the

85

1  If anything, this has reinforced it's person by person,
2  doctor by doctor.  And even if you survive summary judgment,
3  which I'm thinking about, it would be doctor by doctor,
4  person by person.
5           You have now dramatically refined your case, and
6  you're asking me to reconsider about third-party payors and
7  bipolar.  I have a refined understanding of the case just
8  working through these summary judgment documents.  You
9  improperly assumed I would have read all the summary
10 judgment motions in the context of the class cert.  You must
11 think I have no other cases.  Just Sobol alone keeps me busy
12 on the AWP case a huge chunk of my time.  I don't go out of
13 my way to read other motions.  However, now that I've read
14 them, I understand the case better.  So, you know, I think
15 we should have another oral argument only on TPPs and
16 bipolar.  I will not be reconsidering about individuals.  If
17 anything, this completely reinforced my individual by
18 individual issue.
19          On TPPs, I do think there are different categories
20 of TPPs, but as I'm understanding it, the vast majority
21 didn't have anything like the sophistication of a Kaiser.
22 But I need that addressed.  Dr. Bell referred to a lot of
23 restrictions that were eventually put in place, but I
24 couldn't tell what kinds of third-party players those were.
25 I found him persuasive that each drug had to be placed on a

93

1           MR. CHEFFO:  But that's what the whole case is
2  going to be about, so unless we figure out --
3           THE COURT:  But at this point there may be enough
4  evidence to get a fact question on a fraud --
5           MR. CHEFFO:  As to --
6           THE COURT:  -- on the effectiveness, whether it's
7  no better than snake oil, for example, in bipolar, a fact
8  question on a fraud -- if you disagree, fine -- I mean, you
9  have great scientists -- a fact question on whether or not
10 it caused damage to the third-party payor.  And then you
11 have a problem, and I understand that, is the measure that
12 once people knew it dropped 30 percent, or is it one for
13 one?  I understand that there be will a damage problem.
14          MR. CHEFFO:  It's an advisory ruling, though, your
15 Honor.  I mean, if there's a fraud in the air, you're
16 adopting a kind of fraud on the market --
17          THE COURT:  Fraud on the market has got a problem.
18 I understand the legal problem.  I view the class issue as a
19 very close question, not on the individuals where it's not
20 close at all, but on the third-party payor one, I think it's
21 a very -- but at least when you're going -- can't Aetna,
22 can't they sue and say, you know, "We were reimbursing for
23 snake oil"?
24          MR. CHEFFO:  They can if they say, "Here's the
25 fifty prescriptions that we think that you --"