# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ----------------------------------------x<br>In re: NEURONTIN MARKETING<br>SALES PRACTICES AND PRODUCTS<br>LIABILITY LITIGATION<br>----------------------------------------<br>THIS DOCUMENT RELATES TO:<br><br>TERESA DRINKWINE, Individually and as Trustee for The Next of Kin of MICHAEL DRINKWINE, Decedent,<br><br>Plaintiff,<br><br>-against-<br><br>PFIZER INC., PARKE-DAVIS, a division of Warner-Lambert Company and Warner-Lambert Company LLC, WARNER-LAMBERT COMPANY, WARNER-LAMBERT COMPANY LLC, and TEVA PHARMACEUTICALS USA, INC.,<br><br>Defendants.<br>----------------------------------------<br><br>AND RELATED CASES (SEE EXHIBIT A)<br>---------------------------------------- | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br><br>Judge Patti B. Saris<br><br><br>Magistrate Judge Leo T. Sorokin<br><br>**Leave to file granted: October 13, 2009** |

# REPLY MEMORANDUM IN FURTHER SUPPORT OF
# TEVA PHARMACEUTICALS USA, INC.'S
# <u>MOTION TO DISMISS THE COMPLAINT</u>

In the instant Motion, Teva Pharmaceuticals USA, Inc. ("Teva") requests that this Court grant Teva's Motion to Dismiss the Complaint in the above-captioned action as to it on the grounds of Fed. R. Civ. P. 12(b)(6).[1]

First, as a matter of law, Plaintiff's Complaint fails to satisfy the basic pleading requirements necessary to state a claim for relief.  Plaintiff's Opposition to Teva's Motion to Dismiss (hereinafter "Opposition" or "Opp.") is premised on the faulty presumption that Plaintiff's claims "may be read" to state sufficient causes of action that would not conflict with FDA regulations, and thus, would not be preempted.  (Opp. 1).  The Supreme Court expressly and undeniably rejected such standard in *Ashcroft v. Iqbal*, 556 U.S. ___,129 S.Ct. 1937 (2009) ("*Iqbal*"), providing that a complaint must state a plausible claim for relief in order to survive a motion to dismiss, and that such claims must be pleaded in the complaint.

In an attempt to plead a cause of action that does not conflict with FDA regulations (which would be preempted), Plaintiff has recast her causes of action in her Opposition by asserting that Teva either learned or should have learned of elevated risks related to its gabapentin product through post-marketing surveillance, and that Teva should then have either changed the label accordingly, or at least applied to the FDA for approval to change the label accordingly.  To the extent that Plaintiff's claims are premised on Teva's actual awareness of elevated risk, Plaintiff has not pleaded adequate facts to support such claims.  A complaint containing "labels and conclusions," and/or a "formulaic recitation of the elements of a cause of action" will not suffice to overcome a motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[1] As set forth in Teva's moving papers, Teva is named as a Defendant in other matters pending in the Neurontin Multidistrict litigation, Docket No. 1629 (*see* Ex. A).  Thus, where Teva has not yet answered a complaint, as is the case with the above-captioned matter, Teva filed its moving papers and the instant reply brief as a 12(b)(6) motion. Where Teva has already answered the complaint, Teva has requested that its moving papers and this reply brief be treated as a motion under Fed. R. Civ. P. 12(c), for judgment on the pleadings.

544, 555 (2007). To the extent that Plaintiff's claims are premised on Teva's failure to learn about elevated risks due to inadequate post-marketing protocols, such claims fail under the preemption doctrine. As explained at length in Teva's moving papers,[2] Plaintiff's claims that Teva was obliged to either change the label or apply to the FDA for approval to change the label are similarly preempted.

Furthermore, Plaintiff's Opposition to Teva's moving papers adds nothing new to the question of whether claims against generic manufacturers are preempted. For instance, in applying the Supreme Court's recent decision in *Wyeth v. Levine*, No. 06-1249, 2009 WL 529172 (March 4, 2009), Plaintiff fails to address the critical distinctions between the obligations of branded and generic manufacturers, which are key to the generic manufacturer preemption argument, and ignores the fact that the Supreme Court was not presented with, and did not decide, issues pertaining to a generic manufacturer. Teva recognizes that certain courts have upheld state failure to warn claims brought against generic manufacturers, however, Teva's moving papers and the instant reply brief elaborate the reasons why these opinions are less persuasive than the cases finding generic preemption.

Moreover, in further attempt to evade Teva's preemption argument, Plaintiff alleges, in her Opposition, a violation of the Minnesota Misbranding statute, Minn. Stat. § 151.36. (Opp. 18). Such allegations are procedurally futile as they were not pleaded in the Complaint. Plaintiff also asserts that her causes of action under state common law are not preempted because Teva's violations of FDA regulations "parallel" or supplement Plaintiff's common-law claims of negligence and/or state statutory law claims. (Opp. 2, 17-18). In reaching such conclusion, Plaintiff has misconstrued the application of the *Riegel v. Medtronic, Inc.*, 128 S. Ct. 999 (2008)

---

[2] *See* Teva's Motion to Dismiss at pp. 9-14, discussing federal laws and regulations requiring generic manufacturers
*(Footnote continued on following page)*

and *Farm Raised Salmon Cases,* 175 P.3d 1170 (Cal. 2008) cases and has asserted a private cause of action, which is wholly unsubstantiated under law and FDA regulations. Such contentions have no bearing upon Teva's preemption argument.

## ARGUMENT

**I.  PLAINTIFF'S COMPLAINT DOES NOT PLEAD SUFFICIENT FACTS TO STATE A CAUSE OF ACTION AGAINST TEVA**

Contrary to Plaintiff's assertion that the Complaint states valid causes of action (Opp. 2), the Complaint does little more than state broad – and legally incorrect – requirements under federal laws and FDA regulations without alleging facts indicating that Teva failed, in any way, to perform the requirements of a generic manufacturer under the FDCA.[3] (*See e.g.,* Opp. 17). Plaintiff's assertion that she is entitled to an "assumption of truth" standard and that her claims "may be read" to state sufficient causes of action (Opp. 1) is mistaken.[4] Under the Federal Rule of Civil Procedure 8(a), a pleading that states a claim for relief must contain: (1) "a short and plain statement of the claim showing that the pleader is entitled to relief" and (2) "a demand for the relief sought . . . ." Fed. R. Civ. P. 8(a). The Supreme Court has held that where a pleading fails to provide the grounds allegedly entitling the plaintiff to relief, the pleading should be dismissed. *Twombly*, 550 U.S. at 555.[5]

---

to conform the labeling of their drug products to that of the counterpart branded drug products.

[3] Accordingly, Plaintiff, through her counsel, is in violation of Federal Rule of Civil Procedure 11(b)(3) (requiring that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery").

[4] In addition, Plaintiff erroneously asserts that because Teva has filed a Motion to Dismiss along with the instant Reply brief, Teva may not later file a Motion for Summary Judgment (*see* Opp. 2 stating that Teva's "back-door preemption motion through a motion for judgment on the pleadings should be the only 'bite at the preemption apple' that [Teva] [sic] is allowed in this case.") Such is not the case. Under Federal Rule of Civil Procedure 56, Teva may later file a Motion for Summary Judgment.

[5] Since the Supreme Court decided *Twombly*, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" first enunciated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (emphasis added), has no longer been the standard for measuring the adequacy of a complaint.

3

The Supreme Court recently provided that "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [and] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). The Supreme Court went on to state that ". . . a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950 (citing *Twombly*, 550 U.S. at 556). With respect to the second principle – plausibility – the Supreme Court explained that more is needed "than an unadorned, the-defendant-unlawfully- harmed-me accusation." *Id* at 1949, 1950; *Twombly*, 550 U.S. at 555.

Given the *Iqbal* and *Twombly* pleading standard, Plaintiff's attempts to reframe the causes of action alleged in her Complaint are simply unavailing. Plaintiff alleges that Teva <u>knew</u> of "new hazards or elevated risks associations" concerning gabapentin through post-market monitoring or, in the alternative, that Teva <u>should have</u> learned about such hazards and elevated risks and failed to do so because it did not establish adequate post-marketing protocols. (Opp. 1, 4-5; Compl. ¶¶ 135-137). Based on that construct, Plaintiff then alleges that Teva should have changed the label accordingly, or at least applied to the FDA for approval to change the label accordingly. Teva's moving papers address Plaintiff's latter contention, and the fact that such claims are preempted,[6] and thus, Teva will address Plaintiff's former contention in this reply.

Plaintiff's contention that Teva knew of elevated risks associated with its gabapentin product is based on unsupported presumptions of Teva's awareness as a "sophisticated manufacturer." (Opp. 4-5, Compl. ¶¶ 135-137). Alternatively, Plaintiff seems to presume that Teva had inadequate protocols in place for post-marketing surveillance. (*See* Opp. 1, 5). Such presumptions include no supporting factual allegations, and thus, such allegations fail to satisfy

---

[6] *See* Teva's Motion to Dismiss at pp. 9-14.

4

the *Iqbal* pleading standards.  Further, the underlying premise of these claims is based on an overstatement of Teva's post-marketing responsibilities:  Plaintiff incorrectly asserts that generic and branded manufacturers have the exact same post-marketing surveillance obligations, including monitoring epidemiology and pharmacovigilance data as well as post-marketing literature.[7]  (*See* Opp. 5-7, Compl. ¶¶ 147-150).  To the extent that Plaintiff seeks to hold Teva to the greater surveillance obligations imposed on branded manufacturers, such a claim would be preempted as being in conflict with FDA regulations.

Plaintiff also alleges that Teva breached its duty to exercise reasonable care in the design and development of gabapentin by "adopting the statements, studies, labeling and representations of the brand name manufacturer of Neurontin . . . ." (Opp. 5, 6, Compl. ¶¶ 247-252).  Not only is Plaintiff's Complaint devoid of any factual allegations supporting such claims, but a proponent of a generic drug is only obliged to conduct so-called "bioequivalency" studies to establish that its dosage formulation of the generic product has the same safety and efficacy profile as the relevant reference-listed drug.  21 U.S.C. § 355(j).  Again, to the extent that Plaintiff seeks to hold Teva to the greater clinical study obligations imposed on branded manufacturers, such a claim would be preempted as being in conflict with FDA regulations.

In an attempt to elude the force of these arguments, Plaintiff points to the *Levine* case as though it is dispositive of the issue of generic preemption.  That issue, however, was not before, or decided by, the Supreme Court.  Plaintiff completely disregards the fact that the issues before the Supreme Court involved a <u>branded</u> pharmaceutical product – not a <u>generic</u> pharmaceutical product, as in this case.  Instead, Plaintiff references inapplicable facts and policy-driven language from *Levine*, concerning a *branded* manufacturer's obligation to strengthen warnings

---

[7]  Plaintiff provides no factual basis, either in the Complaint or Opposition papers, suggesting that Teva failed to
*(Footnote continued on following page)*

through the CBE provision.  (Opp. 9-10).  Teva recognizes that some courts have ruled against generic preemption, but submits that these cases are not persuasive.[8]  Teva's moving brief (at 17-19) identifies the numerous recent federal decisions finding in favor of generic preemption,[9] and also explains why *Levine* does not apply to cases involving generic manufacturers.  In these federal decisions, the district court found that it was impossible for the generic manufacturer to comply with state law commanding stronger labeling, while also complying with federal requirements of the Hatch-Waxman Amendments and FDA implementing regulations, including without limitation §§ 314.70(c), 314.94 and 314.150(b)(10).  These federal decisions continue to hold the same force and effect after *Levine* and support Teva's Motion to Dismiss on generic preemption grounds.

## II.     PLAINTIFF'S FURTHER ATTEMPTS AT EVADING PREEMPTION FAIL UNDER *IQBAL* PLEADING STANDARDS AND UNDER THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION AND FEDERAL LAW

In a further attempt to salvage her causes of action against Teva, Plaintiff, for the first time, alleges in her Opposition a violation of the Minnesota Misbranding statute, Minn. Stat. § 151.36.[10]  (Opp.  18).  Plaintiff's Complaint makes no reference, direct or indirect, to the Minnesota Misbranding statute.  Under *Iqbal* and *Twombly*, Plaintiff may not now plead additional allegations in her Opposition in an attempt to salvage her deficient causes of action

---

monitor post-market adverse events for its gabapentin product.

[8]  Teva has previously addressed this point at length in its moving papers, and thus, notes only that *Stacel v. Teva Pharmaceuticals USA, Inc.*, No. 08-C-1143, 2009 WL 703274 (N.D. Ill. March 16, 2009), which itself recognizes the conflict in the district courts on this issue, *id.* at *6, adds nothing new to the dispute.  Similar to other cases cited in Plaintiff's Opposition, (*see e.g., Shrock v. Wyeth*, No. CIV-08-453-M, 2009 WL 635415 (W.D. Okla. March 11, 2009)), the *Stacel* court fails to reconcile its interpretation of the regulations with the express stricture of the Hatch-Waxman Amendments that the generic label conform to the label for its reference-listed drug.

[9]  *See e.g., Morris v. Wyeth*, *et al.*, No. 1:07-cv-00176, 2009 WL 736200 (W. D. Ky. March 4, 2009), *appeal docketed*, No 1:07-CV-176-R (6th Cir. March 4, 2009).

[10]  For reasons that are not clear, Plaintiff's Opposition attaches a list of 46 State misbranding statutes (Finkelsein Aff., Ex. F to Opp.).  Plaintiff's Complaint, however, made no mention of any misbranding statute, and more specifically, did not reference Minnesota Misbranding statute, Minn. Stat. § 151.36.

asserted in the Complaint. Plaintiff also asserts that her causes of action under state common law are not preempted because Teva's violations of FDA regulations "parallel" or supplement Plaintiff's common-law claims of negligence and/or state statutory law claims. (Opp. 2, 17-18). In reaching this conclusion, Plaintiff has misconstrued the applicability of the *Riegel v. Medtronic, Inc.*, 128 S. Ct. 999 (2008) and *Farm Raised Salmon Cases,* 175 P.3d 1170 (Cal. 2008) cases, thereby asserting a private right of action. Unlike plaintiffs in the *Riegel*[11] and *Farm Raised Salmon* cases, here, Plaintiff seeks to enforce violations of the FDCA, under the guise of state law claims. Plaintiff may not step into the shoes of the FDA and/or a State Attorney General and assert a right to seek enforcement of FDA regulations. Further, Congress did not intend to create a private right of action under the FDCA, and it is impermissible to attempt to enforce the FDCA through a private action, as the FDA alone is empowered to enforce its regulations. *See In re PepsiCo, Inc., Bottled Water Marketing and Sales Practices Litigation*, 588 F.Supp.2d 527 (S.D.N.Y. 2008) (holding that the FDCA does not provide a private right of action). Plaintiff has not demonstrated in either her Complaint or in her Opposition that the Minnesota Misbranding statute and/or Plaintiff's state common-law negligence and/or state statutory law claims contain *identical* regulations to those federal regulations that Plaintiff seeks to enforce (*e.g*., 21 C.F.R. §§ 314.80, 314.70(c) and 201.57(e)).[12] Moreover, Plaintiff's Complaint makes no reference, direct or indirect, to the Minnesota Misbranding statute. Plaintiff may not now plead alternative or additional allegations in her Opposition.

---

[11] The court in *Riegel* only addressed the effect of the Medical Device Amendments on claims premised on violations of FDA regulations and did not address the extent to which tort claims are preempted by the FDCA.

[12] *See Farm Raised Salmon Cases,* 175 P.3d at 119 (holding that because the California Sherman Food, Drug, and Cosmetic Law ("Sherman Law") explicitly incorporates "[a]ll [sic] food labeling regulations and any amendments to those regulations adopted pursuant to [FDCA] as 'the food labeling regulations of this state'" the provisions at issue were not preempted by the equivalent provisions of the FDCA.)

## **CONCLUSION**

For all of the foregoing reasons, Teva respectfully requests that its Motion to Dismiss be granted in all respects.

Dated: October 14, 2009                                        Respectfully submitted,


/s/ U. Gwyn Williams
U. Gwyn Williams (BBO # 565181)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109-2881
T: 617.570.1000
F: 617-523.1231
gwilliams@goodwinprocter.com

*Counsel for Teva Pharmaceuticals USA, Inc.*

8

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 14, 2009.

                                                    /s/ U. Gwyn Williams