UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>ALL SALES & MARKETING ACTIONS | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**CLASS PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF
SUPPLEMENTAL AUTHORITY IN SUPPORT OF SUMMARY JUDGMENT
AND IN OPPOSITION TO CLASS PLAINTIFFS' MOTION FOR
<u>RECONSIDERATION OF CLASS CERTIFICATION DENIAL</u>**

843255.1

I. *LIPITOR* **SUPPORTS, RATHER THAN UNDERMINES, CLASS PLAINTIFFS' MOTION FOR RECONSIDERATION**

Defendants' latest filing only serves to further illustrate why this case is fundamentally different from the "off-label" and other drug promotion cases in which motions to dismiss or for summary judgment have been granted, or class certification has been denied. The critical distinction—and the central thrust of Class Plaintiffs' motion for reconsideration—is that in each of the cases relied upon by Defendants, including the most recent, *Southern Ill. Laborers' and Employers Health and Welfare Fund v. Pfizer, Inc.*, 2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) ("*Lipitor*"), the drug or medical device was approved by the federal Food and Drug Administration ("FDA") as an effective treatment for the condition at issue, requiring prescribing physicians to balance the drug's efficacy against its side effect profile and other treatment options. The thrust of Defendants' argument—and the Court's May 13, 2009 decision—is that this "balancing act" may be different for each patient and prescribing physician, depending on such factors as the patient's susceptibility to the known (or undisclosed) side effects; the severity of the condition; and the available therapeutic alternatives. Accordingly, with respect to drugs and medical devices whose efficacy has been established, individual inquiry may be required to determine whether a physician would have declined to prescribe it if the allegedly concealed side effects had been known or the drug's efficacy relative to therapeutic alternatives had not been overstated. *Lipitor*, whose efficacy in reducing LDL cholesterol is firmly established, is merely another one of these cases.

Neurontin, on the other hand, has been repeatedly proven to be *in*effective—*i.e.*, to have *no clinical value whatsoever*—in treating bipolar and other mood disorders. Doctors do not prescribe drugs at random. For example, no doctor would consider prescribing chemotherapy to treat a bee sting, or a cholesterol-reducing agent to treat the H1N1 flu virus, regardless of its

843255.1                                -1-

efficacy in reducing cholesterol.  Accordingly, it was unnecessary—indeed, *impossible*—for prescribing physicians to balance Neurontin's proven (or suspected) efficacy in treating bipolar and other mood disorders against its side effect profile and therapeutic alternatives.  There was simply no reason for any physician to even *consider* prescribing Neurontin for bipolar and other mood disorders—aside from Defendants' false and misleading representations regarding Neurontin's purported efficacy in treating those conditions—and no corresponding need for individual inquiry.  The Court clearly apprehended this dichotomy at the recent summary judgment hearing:  "I understand [Class Plaintiffs'] damages model because theirs is quite straightforward:  'It's snake oil.  We shouldn't have to pay a penny for it,' okay.  And so it's easy . . . ."  Transcript of Sept. 18, 2009 Summary Judgment Hearing, at 60:20-24.

This distinction was drawn in *Lipitor* itself, in which the Court summarized:  "[t]he first theory of causation is that the alleged overpayment for patients' cholesterol treatment was *caused* by Defendant's fraudulent misrepresentations to physicians regarding the efficacy and safety of Lipitor *as compared to alternative cholesterol therapies*."  *Id*. at *5 (second emphasis added).[1]  The Court rejected this theory for reasons that are simply inapplicable here:

> The Court finds that Plaintiffs have not adequately alleged causation even if the Court assumes arguendo that under certain circumstances an allegation of reliance is unnecessary.  Plaintiffs in their briefing state that "no independent factors account for Plaintiffs' injury," but *their Complaint does not contain allegations that support this legal conclusion*.

*Id*. at *6 n.13 (emphasis added).  Here, by contrast, Class Plaintiffs have not only alleged, but have provided abundant evidence that "no independent factors" account for the millions of Neurontin prescriptions written to treat bipolar and other mood disorders—conditions for which

---

[1] The second and third causation theories, involving misrepresentations to "pharmacy benefit decision makers" and to third party payors directly (*see id*. at *6) are not being pursued by Class Plaintiffs.

Neurontin had already been proven ineffective—including: (1) four double-blind, placebo-controlled trials, two of them conducted by Defendants, proving Neurontin ineffective; (2) the opinions of Plaintiffs' experts, Drs. Barkin and Abramson, who have reviewed the available scentific evidence; (3) admissions by Defendants' scientific personnel that Neurontin is ineffective to treat bipolar and other mood disorders, despite their sustained, collective effort to prove otherwise; (4) the FDA's combined medical-statistical review, conducted as part of Defendants' 1992 New Drug Application; and (5) admissions by Defendants' director of clinical research and others that there is no scientific rationale supporting the use of Neurontin to treat bipolar and other mood disorders, because Neurontin has a "different mechanism of action than mood-stabilizing anti-epileptics,"[2] and Defendants' projection that its market share would remain at 0% in the absence of a misleading off-label marketing campaign. *See* Class Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 1754) at 13-15; Class Plaintiffs' Motion for Reconsideration of Order Denying Renewed Motion for Class Certification (Dkt. No. 1796) at 15-18, 22-23. Accordingly, *Lipitor* supports, rather than undermines, Class Plaintiffs' motion for reconsideration.

## II. THE FIRST CIRCUIT'S RECENT AFFIRMANCE OF THE CLASS JUDGMENT IN *AWP* SUPPORTS CLASS PLAINTIFFS' MOTION FOR RECONSIDERATION

Class Plaintiffs have their own recent authority to toss into the mix—the First Circuit's September 23, 2009 opinion approving this Court's use of aggregate, class-wide damages in the "AWP" litigation, *In re Pharm. Ind. Avg. Wholesale Price Litig.*, --- F.3d ---, 2009 WL 3019691 (1st Cir. Sept. 23, 2009) ("*AWP*"):

> AstraZeneca's third challenge to the entry of a class-wide judgment is that the district court awarded aggregate damages "without *any* individualized determination of damages as to a

---
[2] Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment, at 27.

843255.1                                                         -3-

> single class member (including the named plaintiffs)," thereby violating AstraZeneca's "fundamental right" to defend against each class member's claim of injury and damages. In support of its argument that a "rough estimate" of damages is insufficient, AstraZeneca cites *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6, 28 (1st Cir.2008), and *McLaughlin*, 522 F.3d 215, for the proposition that the plaintiffs should have been required to prove that each class member was harmed by AstraZeneca's pricing practices. Requiring such proof, the company argues, ensures that AstraZeneca will pay damages reflective of its actual liability.
>
> * * *
>
> The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself. *See, e.g.*, 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 10.5, at 483-86 (4th ed. 2002) ("Aggregate computation of class monetary relief is lawful and proper. Courts have not required absolute precision as to damages.... Challenges that such aggregate proof affects substantive law and otherwise violates the defendant's due process or jury trial rights to contest each member's claim individually, will not withstand analysis.... Just as an adverse decision against the class in the defendant's favor will be binding against the entire class in the aggregate without any rights of individual class members to litigate the common issues individually, so, too, an aggregate monetary liability award for the class will be binding on the defendant without offending due process." (footnotes omitted)). There is nothing about this case to suggest a contrary conclusion. Thus, to the extent that AstraZeneca argues that the district court's decision to use an aggregate damages methodology violated Rule 23 or the company's due process rights, AstraZeneca's challenge fails in the starting gate.

*Id*. at *37 (emphasis in original).  *See also, id*. at *35 ("it is equally obvious that class-action litigation often requires the district court to extrapolate from the class representatives to the entire class; for example, the district court employed just this kind of analysis . . . when it applied the 'discovery rule' to determine when the statute of limitations should cut off the plaintiffs' claims, but did not make specific findings as to each class member.").

In *AWP*, the First Circuit endorsed Class Plaintiffs' central argument, *i.e*., that because there was no reason for psychiatrists to believe that Neurontin would be effective in treating

843255.1                                             -4-

bipolar and other mood disorders aside from Defendants' fraudulent promotional efforts, individual causation issues do not predominate or defeat class certification:

> Nor are we persuaded that this case has individualized circumstances similar to those at issue in *McLaughlin v. American Tobacco Co*., 522 F.3d 215 (2d Cir.2008), where the Second Circuit cast doubt on the use of common proof to establish reliance and causation among a class of smokers who had purchased "light" cigarettes over a thirty-seven year period. In that case, the Second Circuit expressed its concern that the *class-member consumers may have chosen the product for a variety of reasons, such as personal preference, unrelated to the alleged misrepresentations* implied in the term "light." *Id*. at 225-26 ("[E]ach plaintiff in this case could have elected to purchase light cigarettes for any number of reasons, including a preference for the taste and a feeling that smoking Lights was 'cool.' "). Here, however, we harbor no such concerns about intractably payor-specific issues.

*Id*. at *36 (emphasis added).  *See also* Transcript of Apr. 16, 2008 Class Certification Hearing at 28:13-20 ("THE COURT:  It's proof.  You would say it's not enough.  You know, it's called circumstantial evidence.  I mean, you may say it's not enough, and *maybe it needs Dr. Rosenthal to gild it and to rule out other things, like, you know, that some other drug didn't go off the market; thereby, you know, there isn't some other factor causing the fraud*.  It's proof.  You would say it's not enough, so that's a good position for you to take, but it is something.") (emphasis added).

After over five years of litigation, Defendants remain unable to proffer *any plausible reason* psychiatrists would prescribe Neurontin to treat bipolar and other mood disorders, aside from the false and misleading information concerning its efficacy so widely disseminated by Defendants.  Indeed, the Court has already found that "no plausible, non-fraudulent reason existed for defendants to detail psychiatrists." *In re Neurontin Marketing, Sales Practices and Prods. Liab. Litig*., 257 F.R.D. 315, 331 (D. Mass. 2009).  An inescapable corollary of this finding is that psychiatrists had no plausible reason to *prescribe* Neurontin for bipolar, *except* as

a result of Defendants' fraudulent promotion.  Accordingly, class certification is appropriate.  *AWP*, 2009 WL 3019691 at 36.

### III. ONCE FRAUD IS PROVEN, DAMAGES CAN BE AWARDED ON ANY REASONABLE BASIS

At the recent summary judgment hearing, the Court noted that "assuming you can prove a fraud, you don't have to be as precise in your damage model."  Transcript of Sept. 18, 2009 Summary Judgment Hearing, at 78:23-24.[3]  Indeed, the Supreme Court has long held that once the *fact* of injury is shown, a relaxed standard for the *measure* of damages then applies.  "The most elementary conceptions of justice and public policy require that the wrongdoer bear the risk of the uncertainty which his own wrong has created."  *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264-65 (1946).  In *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931), the Supreme Court upheld a jury verdict under the Sherman Act, stating, "It is true that there was uncertainty as to the extent of damage, but there was none as to the fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage, and the measure of proof necessary to enable the jury to fix the amount."  The Court went on to say that "uncertain damages" are precluded only where they are "not the certain result of the wrong," but no such rule applies "to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount...." *Id.*  Put another way, "If the damage is certain, the fact that its extent is uncertain does not prevent a recovery." *Id.* at 566.

The First Circuit, citing *Story Parchment*, has stated that "there is a clear distinction

---

[3] Although the authority for this point is not new, at the summary judgment hearing, the Court appeared to be requesting authorities in support of this proposition. *See* Transcript of Sept. 18, 2009 Summary Judgment Hearing, at 83:5-9 ("THE COURT:  Isn't there some line of cases, once you've committed a fraud -- assuming, I mean, the jury would have to find that – your damages don't have to be so precise?  I mean, they have to not be speculative, but they don't have to be –").

between the relatively high measure of proof necessary to establish that a plaintiff has sustained some damage and the relatively low measure of proof necessary to enable the jury to fix the amount." *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 200 (1st Cir. 1996) (internal quotation omitted). The plaintiff need only "produce evidence from which the jury can make a just and reasonable inference." *Id.*; *see also U.C. Castings Co. v. Knight*, 754 F.2d 1363, 1373 (7th Cir. 1985) ("[O]nly a reasonable basis of computation is required for the submission of damages to the jury.") (quoting *Hannigan v. Sears Roebuck & Co.*, 410 F.2d 285, 293 (7th Cir. 1969), *cert. denied*, 392 U.S. 902 (1969)). The *Story Parchment/Bigelow* principle has often been applied to fraud cases. *See, e.g.*, *City of Chicago v. Reliable Truck Parts Co., Inc.*, 822 F. Supp. 1288, 1294 (N.D. Ill. 1993) (once the fact of injury is shown, the jury may estimate damages on "any reasonable basis").

Dated: October 15, 2009                                    Respectfully Submitted,

                              By:    */s/ Thomas Greene*
                                       Thomas Greene
                                       Greene, LLP
                                       33 Broad Street, 5th Floor
                                       Boston, MA 02109

                              By:    */s/ Barry Himmelstein*
                                       Barry Himmelstein
                                       Lieff Cabraser Heimann &
                                         Bernstein, LLP
                                       Embarcadero Center West
                                     275 Battery Street, 30th Floor
                                     San Francisco, CA 94111-3339

                              By:    */s/ Thomas M. Sobol*
                                     Thomas M. Sobol
                                     Hagens Berman Sobol Shapiro LLP
                                     One Main Street, 4th Floor

-8-

        Cambridge, MA  02142
        Boston, MA 02110

By: */s/ Don Barrett*
   Don Barrett
   Barrett Law Office
   404 Court Square North
   P.O. Box 987
   Lexington, MS 39095

By: */s/ Daniel Becnel*
   Daniel Becnel, Jr.
   Law Offices of Daniel Becnel, Jr.
   106 W. Seventh Street
   P.O. Drawer H
   Reserve, LA 70084

By: */s/ James Dugan*
   James Dugan
   Dugan & Browne
   650 Poydras St., Suite 2150
   New Orleans, LA 70130

***Members of the Class Plaintiffs'***
***Steering Committee***

843255.1

## **<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on October 15, 2009.

*/s/ Barry Himmelstein*
Barry Himmelstein
