UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
: MDL Docket No. 1629
In re:  NEURONTIN MARKETING, :
        SALES PRACTICES AND : Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION :
: Judge Patti B. Saris
---------------------------------------------------------------x
: Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO: :
:
TERESA DRINKWINE, Individually and as Trustee : **LEAVE TO FILE GRANTED**
For The Next of Kin of MICHAEL DRINKWINE, : **ON OCTOBER 13, 2009**
Decedent, :
:
                    Plaintiff, :
:
            - against – :
:
PFIZER INC., PARKE-DAVIS, a division of :
Warner-Lambert Company and Warner-Lambert :
Company LLC, WARNER-LAMBERT COMPANY,:
WARNER-LAMBERT COMPANY LLC and :
TEVA PHARMACEUTICALS USA, INC., :
:
                    Defendants. :
---------------------------------------------------------------x

**PRODUCTS LIABILITY PLAINTIFFS' SUR-REPLY MEMORANDUM IN
FURTHER OPPOSITION TO DEFENDANT TEVA PHARMACEUTICALS
USA, INC.'s MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS**

| | |
|---|---|
| Andrew G. Finkelstein, Esquire | Jack W. London, Esquire |
| Finkelstein & Partners, LLP | Law Offices of Jack W. London |
| 1279 Route 300 |   & Associates |
| P.O. Box 1111 | 3701 Bee Cave Rd., Suite 200 |
| Newburgh, NY  12551 | Austin, TX  78746 |

*Members of Products Liability
Plaintiffs' Steering Committee*

**PRELIMINARY STATEMENT**

Defendant Teva Pharmaceuticals USA, Inc.'s motion to dismiss or for judgment on the pleadings on the grounds of preemption should be denied in its entirety for several reasons. Teva blatantly alleges in their reply papers that generic and branded manufacturers do not have the same post-marketing surveillance obligations, but fails to provide any support whatsoever for this incorrect assertion. Plaintiff has pleaded sufficient factual allegations that Teva was negligent and failed to adequately warn Plaintiff's decedent and his prescribing physicians of the increased risk for suicide from the ingestion of gabapentin, negligently breached their duty to act reasonably, and failed to comply with various federal regulations. This Court should accept Plaintiff's allegations as true. *See Gray v. Evercore Testructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008). Moreover, Plaintiff requests that if this Court does not find that Plaintiff's causes of action have not been pleaded with sufficient factual allegations, then Plaintiff should be allowed to amend her complaint to replead her complaint with further particularity.

**ARGUMENT**

**I.   TEVA IS SUBJECT TO THE SAME POST-MARKETING PHARMACOVIGILANCE REQUIREMENTS AS THE BRAND-NAME MANUFACTURER OF THE DRUG GABAPENTIN.**

The United States District Court for the District of New Hampshire, in *Bartlett v. Mutual Pharm. Co., Inc.*, U.S. Dist. LEXIS 90528 (D.N.H. Sept. 30, 2009), recently denied a motion for preemption by a generic drug manufacturer that posed arguments similar to those asserted by Teva here. *See* copy *of Barlett* opinion, annexed hereto as Ex. A. The court found that federal regulations did not make a generic manufacturer's compliance with state law impossible or that the plaintiffs' failure to warn claims would frustrate the congressional purpose of the Hatch-Waxman amendments to the Food, Drug, and Cosmetic Act. *Id.* at *76-85. The court further specifically stated, *inter alia*, the following:

> FDA rules enacted to carry out the Hatch-Waxman Amendments specifically require that ANDA [Abbreviated New Drug Application] holders adhere to the agency's rules on "the reporting and recording of adverse drug experiences," 21 C.F.R. § 314.98(a), which include, among other things, a

1

mandate for "written procedures for the surveillance, receipt, evaluation, and reporting of postmarketing adverse drug experiences to FDA." *Id*. § 314.80(b).

*Id*. at *81. Moreover, the court found that generic manufacturers have the same duty in regard to post-approval labeling changes and are subject to the same post-marketing pharmacovigilance requirements as the innovator/brand-name drug manufacturer:

> At the outset, the defendants do not identify anything in the statutory or regulatory provisions on manufacturing changes, *21 U.S.C. § 356a* and *21 C.F.R. § 314.70*, requiring that manufacturers justify heightened warnings with the results of their own clinical trials. Those provisions, in fact, contain no such requirement. *See 21 U.S.C. §§ 356a(d)(3)(A)*, *21 C.F.R. § 314.70(c)(3)*. And another FDA rule, as discussed in Part II.B.5, *supra*, requires that "labeling shall be revised to include a warning as soon as there is reasonable evidence of a serious hazard with a drug; a causal relationship need not have been proved." *21 C.F.R. § 201.80(e)*. If anything, then, the regulatory scheme actually contemplates that manufacturers add warnings to their labels without conducting clinical trials; it in no way makes those trials a prerequisite to such additions. So the premise of the defendants' argument is defective.

*Id*. The court found that there was valid basis for drawing a distinction between requiring a generic manufacturer to have the same label as the innovator drug's label prior to approval of their ANDA, and a generic manufacturer making an application for a label change post-approval:

> During that latter period, "[t]he applicant shall comply with the requirements of *§§ 314.70* and *314.71* regarding the submission of supplemental applications and other changes to an [ANDA]," *21 C.F.R. § 314.97*, or, as this remark puts it, "if an ANDA holder believes that new safety information should be added, it should provide adequate supporting information to FDA, and FDA will determine whether the labeling for the generic and listed drugs should be revised." *57 Fed. Reg. at 17961*. That is precisely the process set forth by *21 C.F.R. § 314.70(c)(6)(iii)*.

*Id*. at *65-66.

In their reply, Teva has provided no support for their allegations that a generic manufacturer does not have to comply with these above-mentioned statutory provisions post-approval. Further, as noted in Plaintiffs' opposition papers, the majority of federal courts that have determined this issue post *Wyeth v. Levine*, 129 S. Ct. 1187 (2009), have found arguments similar to the arguments posed by Teva in the instant motion unavailing and have denied the generic manufacturers' motions to dismiss based on preemption. ECF Doc. # 2066 at pp. 2-3.

## II. PLAINTIFF HAS PLEADED SUFFICIENT FACTS AGAINST TEVA TO STATE THE CAUSES OF ACTION ALLEGED IN THE COMPLAINT.

Plaintiff has alleged that gabapentin is the generic version of Neurontin, a drug originally approved by the FDA; the generic version at issue was approved on October 8, 2004. ECF Doc. # 2067-2 at p. 22, ¶¶ 130, 131, 132. Plaintiff Teresa Drinkwine alleges in the general allegations of the Complaint ¶¶ 147-150, that following this approval, Teva breached their duty of care in failing to perform their ongoing duty of pharmacovigilance in regard to gabapentin as required by FDA regulations; and that had Teva done so, Teva would have learned that there was a risk of suicidality which would have compelled them, in accordance with FDA regulations, to warn physicians about such a suicide risk. ECF Doc. # 2067-2 at pp. 25-26. These allegations mirror those that formed the basis for the denial of the generic manufacturer's motion for dismissal based on preemption in *Bartlett*, which was decided on September 30, 2009, after the decision in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009). 2009 U.S. Dist. LEXIS 90528 at *5.

In *Iqbal,* the U.S. Supreme Court's decision focused on whether the complaint pleaded sufficient facts to state a claim for **purposeful** and unlawful discrimination and whether the government officials, each through their own individual actions, based on notions of race, religion or national origin, had violated the Constitution. *Id.* at 1951-1952. The case before this Court is clearly distinguishable from *Iqbal*, in that Plaintiff need not plead or prove the intent of Teva, a corporation, as an element of either her negligence or products liability claim. Plaintiff simply has to plead and subsequently prove that Teva was obligated to comply with FDA regulations to warn or the increased risk for suicide for the ingestion of gabapentin for unapproved uses and breached their duty of care by failing to so warn. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.* at 1949 (citations omitted). Unlike in *Iqbal,* the fact that Teva negligently failed to perform adequate pharmacovigilance and thereby breached their duty to warn of the risks does not require any proof that Teva's breach was intentional; there is no **purposeful** element involved in the claim. The purpose of Teva's

breach is not a prerequisite for sustaining Plaintiff's claim against Teva. Plaintiff has pleaded sufficient factual allegations to sustain her claims against Teva.

First, Teva's negligence starts with the initial decision to submit an ANDA for gabapentin, when Teva knew or should have known that the majority of use for gabapentin at the time was for off-label indications (i.e., unapproved by FDA), and Teva did not know whether the product was safe or effective for such off-label indications. This pre-submission decision by Teva is not subject to any preemptive protection under the law as it is based on common law negligence—there are no FDA regulations that apply to such pre-submission decisions. This decision to submit an ANDA by Teva is nothing more than reckless conduct and a breach of their duty of care to Plaintiff's decedent, which is governed under common law theories of negligence—not subject to any possible claims of preemption.

Moreover, it is standard practice within the pharmaceutical industry to obtain all of the pertinent documents concerning the innovator drug from the FDA through the submission of a Freedom of Information Act request, as well as a publicly available documents, before a manufacturer begins preparing submission of an ANDA for FDA approval. The documents and information that would be the subject of such a FOIA request would include the clinical reviews, advisory committee transcripts and post marketing safety data. Common sense dictates that Teva had (or should have had) this information in their possession prior to submission of their ANDA for gabapentin to the FDA. This Court has already found in resolving a *Daubert* challenge that several of Plaintiff's experts who relied on similar information in forming their expert opinions concerning an association between gabapentin and suicide, including Dr. Blume, should be permitted testify on general causation in this litigation. Further, Plaintiff has pleaded in the alternative that if Teva did not have such information in their possession, then they were negligent in that they breached their ongoing duty of pharmacovigilance:

> 147.    Moreover, defendants have an ongoing duty of pharmacovigilance. As part of this duty, defendants are required to continually monitor, test, and analyze data regarding the safety, efficacy, and prescribing practices of their marketed drugs, including Neurontin and gabapentin. Defendants continually receive reports from their own clinical trials, practicing physicians, individual

4

>patients and regulatory authorities concerning adverse events that occur in patients taking Neurontin and gabapentin and defendants' other marketed drugs. Furthermore, defendants continue to conduct clinical trials for their marketed drugs long after the drug is approved for use. Defendants have a continuing duty to inform doctors, regulatory agencies, and the public of new safety and efficacy information they learn**, or should have learned**, about their marketed drugs once that information becomes available to defendants, whether through defendants' clinical trials, other outside sources or pharmacovigilance activities. Specifically, when defendants learn, or **should have learned**, of new safety information associated with their marketed drugs, they have a duty to promptly disseminate that data to the public. Defendants also have a continuing duty to monitor epidemiology and pharmacovigilance data regarding their marketed drugs and promptly report any safety concerns that arise through epidemiologic study or data.

As noted in Plaintiff's Memorandum in Opposition, Teva was aware that the majority of the use of gabapentin was in populations other than for which gabapentin had been tested. ECF Doc. # 2067-2, pp. 23-24 at ¶¶ 135-136. Further, Teva knew that the drug had not been approved by the FDA or properly tested for the off-label indications. *Id.* Moreover, this Court already has found that there was scientific literature including peer-reviewed animal studies available which indicated that gabapentin decreases the release of monoamines, *In re Neurontin Marketing, Sales Practices, & Prods. Liab. Litig.*, 612 F. Supp. 2d 116, 149 (D. Mass. 2009); that it is uncontroverted that "the decrease of serotonin and other monoamines in the brain is deleterious to mood including depression and aggression is supported by the literature, "*id.* at 150; and that "[a]n association between low levels of serotonin in the brain and suicide is also well documented, appearing in peer-reviewed literature spanning several decades." *Id.* at 151.

Furthermore, contrary to Teva's protestations otherwise, Teva was well aware and had ample knowledge that gabapentin caused adverse mood and behavioral changes but failed to apply to the FDA to make the requisite label changes to warn of the increase of the risks for suicide for all uses, including off-labels uses that were not approved by the FDA. The 1993 FDA Clinical Review for Neurontin, which was publicly available from the FDA through a FOIA request, noted in regard to gabapentin: "The report identified five 'serious events,' including depression, which could 'limit the drug's widespread usefulness,' and stated, "depression, while it may be not an infrequent occurrence in the epileptic population, may

5

become worse and require intervention or lead to suicide, as it has resulted in some suicide attempts." *Id.* at 150. Additionally, a 8.5.2005 Teva Gabapentin leaflet, approved by the Israeli Minister of Health, under the Postmarketing and other Experience Sections for the treatment of Neuropathic Pain, stated that common possible side effects included abnormal thinking., and that there were reports that patients on gabapentin had experienced mood and behavioral disturbances. *See* www.health.gov.il/units//pharmacy/trufot/alonim/1191.PDF.

## CONCLUSION

Plaintiff respectfully requests that this Court deny Defendant Teva's motion to dismiss or for judgment on the pleadings in its entirety, and that if this Court does not find that the allegations included in Plaintiff's Complaint are sufficient to state causes of action that will sustain a preemption challenge by Teva, Plaintiff should be granted leave to amend the Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

Dated:  October 26, 2009                             Respectfully submitted,

*Members of Products Liability
Plaintiffs' Steering Committee*


By:      **/s/ Andrew G. Finkelstein**
         Andrew G. Finkelstein, Esquire
         Finkelstein & Partners, LLP
         1279 Route 300
         P.O. Box 1111
         Newburgh, NY  12551


By:      **/s/ Jack W. London**
         Jack W. London, Esquire
         Law Offices of Jack W. London
            & Associates
         3701 Bee Cave Rd., Suite 200
         Austin, TX  78746

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on October 26, 2009.

   **/s/ Andrew G. Finkelstein**
   Andrew G. Finkelstein, Esquire

6