**EXHIBIT 1**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| | Magistrate Judge Leo T. Sorokin |
| HARDEN MANUFACTURING CORPORATION; LOUISIANA HEALTH SERVICE INDEMNITY COMPANY, dba BLUECROSS/BLUESHIELD OF LOUISIANA; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST; GERALD SMITH; and LORRAINE KOPA, on behalf of themselves and all others similarly situated, v. PFIZER INC. and WARNER-LAMBERT COMPANY. | **UNREDACTED VERSION FILED UNDER SEAL** |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC. and AETNA, INC. v. PFIZER INC. | |

**PROPOSED SURREPLY TO COORDINATED AND CLASS PLAINTIFFS' PROPOSED TRIAL PLANS**

## TABLE OF CONTENTS

Page

INTRODUCTION ..........................................................................................................................1

ARGUMENT..................................................................................................................................2

I.    Trial Should Not Be Scheduled Until After the Court Has Decided Defendants' Pending Motion for Summary Judgment..................................................................2

II.    Plaintiffs Expanded the Summary Judgment Record in Ways that Entitle Defendants to Additional Discovery ......................................................................3

III.    The Court Should Establish a Briefing Schedule for Daubert Motions Before Setting a Trial Date...................................................................................................6

IV.    Plaintiffs' Proposal for a Joint Trial of Multiple TPPs' Claims Should Be Rejected .........7

V.    The Coordinated Plaintiffs' Alternate Proposal for a Kaiser-Only Trial Should Be Rejected ..................................................................................................................9

## **INTRODUCTION**

As discussed in Defendants' Response [2133], the vague and amorphous "trial plan" presented by the Coordinated Plaintiffs, and endorsed by the Class Plaintiffs, is no plan at all. Coordinated Plaintiffs simply list the substantive elements of their causes of actions, state in notice-pleading terms the general allegations they intend to prove, and identify generic categories of evidence they plan to introduce. In Reply [2149], Plaintiffs state that they will "stand by their earlier briefing" on all substantive issues and "will defer to the well-placed discretion of the Court on how best to manage the litigation before it." (Reply at 1.)

But the Court has clearly recognized that, notwithstanding the parties' prior briefing, fundamental questions remain regarding what an actual trial would "look like" and, in particular, regarding whether – and if so, how – an aggregate model could be used to establish essential elements of Plaintiffs' claims. (9/18/09 Hearing Tr. at 87:6-8, 91:3-6, 96:21.) Accordingly, in requesting a proposed trial plan, the Court specifically directed Coordinated Plaintiffs to explain in detail how they propose to prove and quantify any alleged damages for each relevant off-label indication, and Coordinated Plaintiffs assured the Court that they would do so. (*Id.* at 96:20-97:5.) More generally, the Court was plainly requesting a detailed, fulsome trial protocol and schedule so that the Court could determine whether or not these claims are actually ready for trial. The Court was not requesting content-free assurances and an arbitrary schedule of pre-trial deadlines that ignores the substantive issues that must be addressed prior to any trial. By resting on their prior briefs and deferring to the Court, Plaintiffs have abdicated their responsibility and asked the Court to do the heavy lifting for them. This was Plaintiffs' opportunity to demonstrate to the Court's satisfaction that their claims are trial-ready. Plaintiffs inability to respond to the Court's direct questions demonstrates exactly the opposite.

Raising further red flags, the Coordinated Plaintiffs state that "Kaiser is in the best position to effectively prepare for a February 2010 trial." (Reply at 8 (emphasis added).) This statement flies in the face of Plaintiffs' repeated assurances that all parties – including all three Coordinated TPPs and ASEA – can prepare for a joint trial by February 2008. (Reply at 1.)

Plaintiffs' suggestion that Aetna and ASEA would have difficulty preparing for a February 2010 trial reveals that trial preparation will present many more challenges than they acknowledge.

Moreover, Plaintiffs have proposed a modified pre-trial schedule that would culminate in a trial date of February 22, 2010 – just four weeks before the *Shearer* trial begins on March 23, 2010. (Reply at 9.) Yet, despite their failure to provide any details regarding what a trial would actually "look like," and despite the fact that this would quite possibly be the first trial of its kind in the history of American jurisprudence, Plaintiffs ask this Court to take it on faith that the entire trial could be completed in exactly four weeks with absolutely no margin for error. The serious scheduling challenges presented by the recent *Bulger* trial suggest that this is highly unrealistic.

## ARGUMENT

### I. Trial Should Not Be Scheduled Until After the Court Has Decided Defendants' Pending Motion for Summary Judgment

Plaintiffs do not dispute that a trial in this action would not only be the first such trial involving Neurontin, but would be one of the first trials by any TPP seeking to recover under such a theory. Such cases are routinely dismissed as a matter of law long before trial. (*See* Response at 3-4 & n.1.) The only case Plaintiffs cite to suggest that a trial of their claims would not be completely unprecedented is *In re Zyprexa Products Liability Litigation*, 493 F. Supp. 2d 571 (E.D.N.Y. 2007) (appeal pending) (Reply at 1 n.1). But the *Zyprexa* decision is inapposite because it was based on the court's determination that "[b]oiled down, this is an overpricing claim," *i.e.*, "pricing of the drug at more than it would have sold for had the truth been known." *Id.* at 574, 576. The present case "does not involve price inflation," *In re Neurontin Mktg., Sales Practices, & Prods. Liab. Litig.*, 257 F.R.D. 315, 324 (D. Mass. 2009), and the TPPs have repeatedly disavowed any such claim. On-point cases not based on price-inflation theories require that TPPs plead and present evidence of specific fraudulent transactions. Plaintiffs have failed to produce any such evidence and have denied Defendants the opportunity to depose

individual prescribing physicians.[1]

Plaintiffs utterly misconstrue the significance of recently submitted medical records and deposition testimony demonstrating that a suicidal bipolar patient was successfully treated with Neurontin at an in-patient psychiatric facility in 2007. [2123]. (Reply at 4-5.) Defendants do not contend that the Four Winds-Saratoga medical records, in and of themselves, prove that Neurontin is effective in treating bipolar disorder. These records instead demonstrate that Neurontin continues to be prescribed to bipolar patients for comorbid conditions many years after the allegedly suppressed studies and Plaintiffs' well-publicized allegations have been known to the medical community. Plaintiffs' trial plan fails to explain how their aggregate model could possibly weed out such non-fraudulent prescriptions.

In sum, fundamental questions remain regarding whether – and if so, how – an aggregate model could be used to establish essential elements of Plaintiffs' claims. (9/18/09 Hearing Tr. at 87:6-8, 91:3-6, 96:21.) No trial should proceed until these issues are resolved. The Court's ruling on the pending summary judgment motion will be critical to the parties' preparation for trial, if there even remains a need for trial.

## II. Plaintiffs Expanded the Summary Judgment Record in Ways that Entitle Defendants to Additional Discovery

Plaintiffs state that they "do not object to the deposition of any new witness that appears on the witness list of either party." (Reply at 2.) But their so-called trial plan does not identify the witnesses they intend to proffer, making it impossible for Defendants or the Court to determine how many new depositions will be required. Suffice it to say, that number will not be

---

[1] Plaintiffs argue that Defendants were not deprived of individual-doctor discovery because they deposed five Kaiser-affiliated PMG doctors. (Reply at 2 n.2.) These doctors were deposed because they played a role on Kaiser's P&T Committees regarding formulary placement issues (Dr. Chandler and Dr. Dea) or in its drug utilization review efforts (Dr. Danesh) or had actually published an article endorsing off-label Neurontin use (Dr. Maizels and Dr. McCarberg). Although some general questions regarding Neurontin prescription practices were asked, none of these doctors was deposed in his or her capacity as a prescribing physician. Indeed, Kaiser refused to provide any discovery regarding these doctors' patients or any other Kaiser insureds, so Defendants could not ask about the circumstances that may have led these doctors to write any of the Neurontin prescriptions for which Kaiser seeks reimbursement. Plaintiffs' suggestion that these five depositions somehow satisfy Defendants' need for prescribing doctor testimony is absurd.

small. For example, Plaintiffs do not dispute that Defendants are entitled to depose the following witnesses: *Joshua Peteet* of Greylock McKinnon Associates; *David Campen*, M.D. [1848], a member of Kaiser Permanent's Northern California Region's P&T Committee; *Dale D. Daniel, M.D.*, Chair of Kaiser Permanente Southern California Regional P&T Committee [1849]; *Nicholas Weider, D.O.* [1847], a member of Kaiser Permanent Southern California Region's Drug Utilization Action Team; and *Calvin Togashi, Pharm.D.* [1750], Senior Manager, Information Office for Kaiser Permanente's Pharmacy Analytical Services.

In addition, Defendants would need to re-depose various witnesses who have recently submitted declarations that dramatically differ from their deposition testimony. Plaintiffs dispute Defendants' entitlement to these depositions. (Reply at 2.) But, while the need for further depositions directly impacts Plaintiffs' trial plan, this is not a discovery motion. The issue of whether to compel particular witnesses to appear for deposition is not presently before this Court, and would need to be addressed in subsequent motion practice long before any trial could be held. For present purposes, Defendants briefly address Plaintiffs' arguments below.





Defendants are also entitled to re-depose Plaintiffs' experts Brian K. Alldredge, Pharm. D., and Douglas C. McCrory, M.D. Defendants have explained precisely how these experts' recent declarations contradict their own expert reports and deposition testimony. (Response at 7-8.) To briefly summarize:





Rather than offering any substantive response, Plaintiffs argue in purely conclusory terms that the recent declarations merely "clarif[ied]" these experts' prior reports and testimony. (Reply at 3-4.) Defendants submit that an expert's presentation of entirely new opinions goes far beyond mere "clarif[ication]," and that Defendants are clearly entitled to pre-trial depositions regarding these new and previously undisclosed opinions.

### III. The Court Should Establish a Briefing Schedule for Daubert Motions Before Setting a Trial Date

Despite this Court's request for a detailed trial plan, Plaintiffs have steadfastly refused to address the limitations of their experts' aggregate models, or to explain precisely how they propose to prove or quantify their alleged damages. They simply refer the Court to their prior briefing (Reply at 7 & n.7), which, if adequate, would have obviated any need for a trial plan.

As discussed in Defendants' Response, Section III, a number of questions remain regarding Plaintiffs' proposed aggregate model that require thorough briefing and argument under *Daubert*. Most notably, this Court recently reiterated that "[Prof. Rosenthal] can't tell what's due to the fraud." (9/18/09 Hearing Tr. 79:10-12). In other words, because "Professor Rosenthal's analysis does not take into account any other factors that may have led doctors to prescribe Neurontin for off-label indications," she cannot identify or quantify the number of prescriptions allegedly written because of fraudulent promotion. *Neurontin*, 257 F.R.D. at 330. Nor can Prof. Rosenthal's aggregate model address the issue of whether Neurontin was efficacious for any particular plaintiff. Likewise, neither Dr. Conti nor Dr. Hartman provide a method for ascertaining on an aggregate basis the number of prescriptions allegedly due to fraud. (Conti Dep. at 432; 8/11/08 Hartman Decl. at 3). Further, Dr. Conti's and Dr. Hartman's analyses raise other *Daubert* issues identified in Defendants' Response. Plaintiffs' trial plans and Reply brief all but ignore these issues.

Plaintiffs' briefly reply to Defendants' argument that Dr. Hartman's damages calculations

are not complete, and claim that calculating Aetna's and Guardian's damages under their "cheaper, more optimal drugs" theory is an easily-performed exercise of arithmetic (Reply at 5-6) – begging the question of why he did not perform this exercise before submitting his report, prior to the close of expert discovery. Plaintiffs' argument assumes that they can unilaterally select which drugs to use for comparison, without offering expert testimony that doctors would have actually substituted the alternative drugs. Likewise, Class Plaintiffs ignore the fact that Dr. Hartman has not calculated ASEA's purported damages. Plaintiffs make repeated reference to what they intend to show at trial, with few citations to the existing record, confirming that additional trial preparation and discovery on these issues is needed.

In the product liability actions, resolution of Defendants' *Daubert* motions took several months. (*See* Response at 11-12.) Plaintiffs' proposed pre-trial schedule contemplates that all motions *in limine*, including *Daubert* motions, will be filed exactly ***one month*** before trial, that oppositions will be filed just ***17 days*** before trial, and that there will be ***no*** *Daubert* hearings. (Reply at 9.) Given Plaintiffs' inability to respond to the Court's direct inquiries or to Defendants' arguments, their assumption that these complex questions can be resolved on the briefs and in such a short time frame is highly unrealistic.

### IV.   Plaintiffs' Proposal for a Joint Trial of Multiple TPPs' Claims Should Be Rejected

As discussed in Defendants' Response, Section VI, the Court has explicitly recognized that each TPP's claim is unique and that a joint trial of multiple TPPs' claims would be highly problematic for the following reasons:

- Evaluating each named TPP's claim requires consideration of numerous company-specific issues. (9/18/09 Hearing Tr. 6:24-7:9.)

- TPPs generally, and the named TPP plaintiffs in particular, had very different "philosophies" regarding reimbursement for off-label prescriptions. (*Id.* at 41:6-20.)

- TPPs' claims must be evaluated "individual company by individual company" because the Court and jury would need to "understand what happened at each company." (*Id.* at 4:20-21, 5:20-23, 6:3-6, 40:20-21.)

- If the Court were to hold a preliminary trial, its inclination would be to address "one TPP and all the indications." (*Id.* at 90:25; *see also id.* at 89:5-6.)

- A jury could easily be confused and overwhelmed by a joint trial of multiple TPPs' claims, particularly if the trial also involved multiple indications. (*Id.* at 87:25-88:7.)

The Court specifically instructed Plaintiffs to think carefully about these issues when submitting their proposed trial plan. Plaintiffs have not done so, and their Reply continues to ignore the Court's clearly stated concerns.

The Coordinated Plaintiffs state in wholly conclusory terms that "the number of unique witnesses to be called by Aetna will be very few, and the amount of additional trial time required by these witnesses is outweighed by the efficiencies gained by a joint trial." (Reply at 7-8.) Coordinated Plaintiffs do not identify the Aetna witnesses they propose to call, nor do they provide even an approximate number; they merely ask the Court to assume that the number will be "few" – whatever that may mean. Likewise, Class Plaintiffs merely offer the conclusory statement that, because ASEA "had no direct dealing with Defendants concerning Neurontin, and did not manage its own formulary, its inclusion in a trial will have little impact on its complexity or duration." (*Id.* at 8.)

Plaintiffs ignore the more fundamental problem, which goes far beyond the mere number of witnesses or volume of documents. Kaiser and Aetna each purport to "rely on individual evidence to prove their reliance and damages theories" and claim that they will prove reliance "in the specific context of their own managed care model." (*Id.* at 3, 7.) And ASEA relies on theories of liability and damages that are fundamentally different from those asserted by Kaiser or Aetna.[2] A joint trial would not only require the jury to consider an enormous amount of documentary evidence and witness testimony, but to also separately evaluate the evidence based

---

[2] Unlike the Class TPPs, the Coordinated TPPs do not allege that Neurontin was ineffective for their insureds. *See In re Neurontin Mktg. & Sales Practices Litig.*, 433 F. Supp. 2d 172, 185 (D. Mass. 2006). Instead, the Coordinated TPPs argued "that they sustained an economic injury because Defendants' fraudulent activities caused Plaintiffs to pay for Neurontin prescriptions at excessive doses and instead of cheaper alternatives." *See id.* at 186; *see also* Coordinated Plaintiffs' Memorandum of Law in Opposition to Summary Judgment [1744] at 18.

on the different company-specific policies and the different theories of liability and damages presented by each TPP plaintiff. The Court told Plaintiffs to directly address the trial management issues and the serious risk of jury confusion that a joint trial would present. Plaintiffs' offhand dismissal of the Court's concerns is no answer, and should be rejected.

V. **The Coordinated Plaintiffs' Alternate Proposal for a Kaiser-Only Trial Should Be Rejected**

As discussed in Defendants' Response, Section V, the Coordinated Plaintiffs' alternate proposal for a Kaiser-only trial makes no sense given the Court's stated reasons for suggesting an initial trial – *i.e.*, to provide the Court an opportunity to "sit and listen and understand" the factual, legal, and management issues likely to occur in any subsequent trials and to "get some findings" that would guide the Court's and the parties' approach to any subsequent trials (9/18/09 Hearing Tr. 86:5-91:10) – because Plaintiffs have asserted that Kaiser is the most atypical of the named TPPs and that Guardian is the least atypical.

In their Reply – without comment or explanation – Plaintiffs have now dropped all reference to Guardian's inclusion in any joint trial. (*See* Reply, § IV.) And Plaintiffs fail to explain why Kaiser's claims would be more suitable for a single-TPP trial than any of the other named TPPs. Plaintiffs' only argument for a Kaiser-only trial is that "Kaiser is in the best position *to effectively prepare* for a February 2010 trial." (Reply at 8 (emphasis added).) This statement flies in the face of every one of Plaintiffs' preceding statements. Despite their failure to provide any specifics as to how a trial would precede, Plaintiffs have repeatedly assured the Court that all parties – including all Coordinated TPPs and ASEA – can prepare for a joint trial by February 2008, and that Defendants' arguments to the contrary are "close to frivolous." (Reply at 1.) Plaintiffs have further argued that Aetna will present "few" unique witnesses and that ASEA will have "little impact" on the complexity or duration of trial. (Reply at 7-8.) If true, this would mean that Aetna and ASEA have very little individualized trial preparation to conduct.

Plaintiffs' positions are irreconcilable, and clearly reveal that their proposed trial plan is based on an unstated tactical agenda that belies their representations to this Court. Plaintiffs'

suggestion that Aetna and ASEA would have difficulty preparing for a February 2010 trial reveals that trial preparation will present many more challenges than they acknowledge. Moreover, Plaintiffs' admission that Aetna's and ASEA's claims will require a great deal of individualized trial preparation confirms that a joint trial of their claims would involve a correspondingly large volume of individualized evidence that would overwhelm and confuse the jury.

Defendants maintain that no single TPP's claims as to any indications should be tried until the Court has ruled on summary judgment, *Daubert* challenges, and the many other pre-trial matters discussed in Defendants' Response. But even if the Court decides to hold an initial trial involving a single TPP, the selection of that TPP should be driven by the Court's stated reasons discussed above, which Plaintiffs continue to ignore. It should not be driven by Plaintiffs' unstated agenda or by which TPP claims to be "in the best position" to hastily prepare for an unreasonably early, arbitrarily-chosen trial date.

Defendants reiterate their request that the Court schedule a hearing on the issues raised herein and in Plaintiffs' proposed trial plans.

Dated: November 2, 2009

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By:   /s/ Mark S. Cheffo
       Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

-and-

WHITE AND WILLIAMS LLP

By:   /s/ David B. Chaffin
      David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on November 2, 2009.

/s/ David B. Chaffin
David B. Chaffin