# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 <br><br> Master File No. 04-10981 <br><br> Judge Patti B. Saris <br><br> Magistrate Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO: <br><br> *Shearer v. Pfizer Inc., et al.* <br> Case No. 1:07-cv-11428-PBS | |

**PROPOSED REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S ORDER DENYING MOTION TO RESTRICT COMMUNICATIONS WITH TREATING PHYSICIANS AND IMPOSE SANCTIONS AGAINST DR. DAVID EGILMAN**

Plaintiff's Response [2165] to Defendants' Objection [2146] fails to address Defendants' substantive arguments and instead cites select portions of the hearing transcript that – when read in context – do not support Plaintiff's position. To the contrary, the hearing transcript confirms that Defendants' Objection should be sustained, particularly because the Magistrate Judge did not address the serious matter of Dr. Egilman's material alteration of the internal document that he sent to Dr. Catapano-Friedman.

Plaintiff argues that the Court should disregard Dr. Catapano-Friedman's recent deposition testimony explaining that she interpreted Dr. Egilman's letter as an attempt to "influence [her] testimony" and that she felt "[i]nsulted" by it. (Objection at 3 (citing 10/23/09 Deposition of Lisa Catapano-Friedman, M.D., at 96:1-4, 99:18-20).) Dr. Catapano-Friedman's deposition occurred after the Magistrate Judge's ruling, and thus could not be considered below. The relevant testimony does not raise new issues, but instead confirms the central premise of Defendants' motion: that Dr. Egilman's letter could only be regarded as an improper attempt to influence the testimony of non-party treating doctors. Nothing prevents the Court from considering this testimony.

## **ARGUMENT**

I. **The Hearing Transcript Confirms that the Magistrate Judge's Ruling Is Clearly Erroneous and Contrary to Law**

Rather than directly addressing Defendants' arguments, Plaintiff's Response quotes select portions of the hearing transcript[1] and suggests that these quotations somehow foreclose review by this Court. Read as a whole, the transcript reveals that the Magistrate Judge's denial of Defendants' motion was clearly erroneous or contrary to law in several respects.

First, Plaintiff incorrectly contends that the Magistrate Judge "determined that . . . Dr. Egilman's contact with Plaintiff's decedent's physician, Dr. Catapano-Friedman . . . was proper." (Pl. Response at 5-6.) The Magistrate Judge made no such determination. To the contrary, in portions of the transcript that Plaintiff failed to submit or address, the Magistrate Judge appeared to recognize that Dr. Egilman's conduct was problematic, but was concerned that it would be difficult to fashion appropriate relief.

> THE COURT: I'm not so much worried about what my authority is, but if I were to exercise that authority with respect to him, what rule would I define because whatever I did to him would essentially whatever boundaries that I drew that either limited what he did or said he can't go beyond is in some sense a boundary that you're suggesting everybody or he is or should be living with and so the question is exactly what boundary in the interaction between investigators, experts, lawyers, putting aside professional responsibility, obligations on all lawyers, should govern their interactions with the witnesses and how would I craft that rule and what would it say?

(10/5/09 Hearing Tr. 57:4-15.) Any perceived difficulty of fashioning appropriate relief should not have prevented the Magistrate Judge – and does not prevent this Court – from addressing Dr. Egilman's misconduct and ensuring the integrity of these proceedings. As discussed in Defendants' Objection, given the record of abuse, this Court can enter an order that is specific to

---

[1] The Magistrate Judge addressed Defendants' motion at pages 48-71 of the October 5, 2009, hearing transcript. Plaintiffs have submitted only select portions of that discussion. Accordingly, Defendants submit the entire discussion as Exhibit A to the accompanying Proposed Declaration of Mark Cheffo.

Dr. Egilman and does not interfere with appropriate, non-abusive communications with potential fact witnesses by others.

Second, the Magistrate Judge erroneously suggested that Defendants' purported ability to cross-examine Dr. Egilman regarding his inappropriate contacts with treating doctors would be an adequate remedy.

> THE COURT: And so was it wise, does it expose him to cross examination? Does it – there's a whole range of potential choose it, hard for me to think about. I know those are strategic issues.

(10/5/09 Hearing Tr. at 51:12-15.)  Initially, there is no basis for the Magistrate Judge's presumption that Defendants will be able to cross-examine Dr. Egilman in front of the jury.  Dr. Egilman's relationship to Plaintiff remains unclear.  He is merely a consultant who has not been and may never be designated as a testifying expert.  More importantly, the significance of Dr. Egilman's misconduct is not its impact on any opinions or testimony *he* may offer, but rather, its calculated and potentially insidious influence on the testimony of non-party treating doctors like Dr. Catapano-Friedman.  Fortunately, Dr. Catapano-Friedman was not swayed by Dr. Egilman's lobbying efforts.  But if she had been, the jury would have been deprived of the opportunity to hear the testimony of a key fact witness untainted by Dr. Egilman's improper influence.  Cross-examining Dr. Egilman would not have cured the prejudice to Defendants or restored integrity to these proceedings.

Third, the Magistrate Judge incorrectly focused on Plaintiff's *post-hoc* attempts to contest the confidentiality of the internal email that Dr. Egilman sent to Dr. Catapano-Friedman.[2] Regardless of this Court's ultimate determination regarding the document's confidentiality, the salient and undisputed fact remains that Dr. Egilman has admitted having serious concerns about the document's confidentiality even after discussing the issue with counsel for Plaintiff and for

---

[2] Plaintiff incorrectly contends that the Magistrate Judge "determined that the document at issue was not a confidential document . . . ." (Pl. Response at 5.) The Magistrate Judge made no such determination, and Plaintiff's counsel pointed to the confidentiality of the document in writing just three days before Dr. Egilman sent the document to Dr. Catapano-Friedman. (9/17/09 Cheffo Decl. [2095] ¶¶ 5-6.)

the sales and marketing plaintiffs.  Indeed, Dr. Egilman claims that he redacted portions of the document "out of an abundance of caution" ***regarding its confidentiality*** because other documents containing the redacted portions had been designated confidential.  (9/28/09 Egilman Decl. ¶ 7.)  Nevertheless, Dr. Egilman chose to send the document to a non-party despite having signed the Protective Order, despite having repeatedly been sanctioned for violating protective orders in prior cases, and despite having testified under oath that he would seek guidance from this Court before disclosing documents whose status under the Protective Order was unclear.  (Egilman Dep. at 153:3-4, 154:7-19.)  If Plaintiff or Dr. Egilman wished to contest the document's confidentiality, the Protective Order provides clear mechanisms for doing so.  The proper procedure was not to unilaterally alter the document, send it to a non-party, and only then try to show that its confidentiality had somehow been lost.

Fourth, the Magistrate Judge simply failed to address the serious matter of Dr. Egilman's material alteration of the internal email before sending it to Dr. Catapano-Friedman.  Defendants repeatedly raised this issue before the Magistrate Judge during oral argument, (*see* 10/5/09 Hearing Tr. at 53:22-54:12, 62:18-21), and Plaintiff made no effort to explain this indefensible conduct.  Yet the Magistrate Judge gave the issue no apparent consideration.

**II.     This Court Should Consider Dr. Catapano-Friedman's Deposition Testimony**

Defendants' Objection cites and quotes from seven lines of Dr. Catapano-Friedman's deposition transcript, in which Dr. Catapano-Friedman explained that she interpreted Dr. Egilman's letter as an attempt to "influence [her] testimony" and that she felt "[i]nsulted" by it.  (Objection at 3 (citing 10/23/09 Deposition of Lisa Catapano-Friedman, M.D., at 96:1-4, 99:18-20).)  Plaintiff argues that, because Dr. Catapano-Friedman's deposition was taken after the Magistrate Judge's ruling on the underlying motion, and thus could not be considered by the Magistrate Judge, this Court should ignore it.

However, Plaintiff's only authority confirms that her argument is incorrect.  Plaintiff cites an order in which this Court stated that it "'will not consider any objections which raise ***new issues*** not put before the Magistrate Judge in the original briefing.'"  (Pl. Resp. at 6 (citation

4

omitted).)  The portions of Dr. Catapano-Friedman's testimony cited by Defendants do not raise "new issues."  They are instead offered as evidence that directly confirms the central premise of Defendants' motion: that Dr. Egilman's letter could only be regarded as an improper attempt to influence the testimony of non-party treating doctors.

Having argued that the Court should not consider the seven lines of testimony cited by Defendants, Plaintiff nevertheless cites much more extensively to Dr. Catapano-Friedman's testimony, which she claims "reveals that she has financial ties with the pharmaceutical industry."  (Pl. Response at 7-10.)  Defendants agree that this line of deposition questions by Plaintiff's counsel should be considered, because it demonstrates the insidious nature of Dr. Egilman's tactics far more vividly than any legal brief could do.  For example, Plaintiff's counsel asked the following questions:

> Q. Ma'am, you – you have very close ties to the pharmaceutical industry, don't you?
>
> Q. [Research funded by Pfizer is c]ertainly something you'd enjoy doing again, isn't it?
>
> Q. You have received money from pharmaceutical companies for doing testing of their drugs, right?
>
> Q. And that's not the limit of your ties to pharmaceutical companies?  Your ties run a lot deeper, don't they?
>
> Q. Well, ma-am, you're supposed to be answering these questions.  I can ask them.
>
> Q. You receive money from pharmaceutical companies, either directly as money or in the form of gifts, don't you?
>
> Q. Oh, you know.  You know what I mean, don't you?

(10/23/09 Deposition of Lisa Catapano-Friedman, M.D., attached as Exhibit B to 11/5/09 Finkelstein Decl. [2167], at 111:13-14, 113:2-3, 113:8-9, 113:14-16, 113:19-20, 114:10-12, 114:17.)

These questions to a non-party fact witness, in a hostile, bullying tone, are the logical endpoint of Dr. Egilman's tactics.  Having improperly sought to indoctrinate a non-party witness

5

to Plaintiff's side of the case, and been rebuffed, Plaintiff instead engages in wholesale character assassination – engaging in aggressive cross-examination and insinuating that any treating doctor unreceptive to Dr. Egilman's overtures must by definition be biased in favor of the pharmaceutical industry. Defendants maintain that non-party witnesses should be treated with respect and professionalism, not with cynical lobbying efforts followed by insults and abuse when those efforts prove unsuccessful.

### III.    Plaintiff's "Goose-Gander" Argument Is Factually and Legally Baseless

With no legal or evidentiary support, Plaintiff argues that "Defendants regularly make contact with a Plaintiff and her decedent's physicians through their sales representatives and . . . if this Court restricts Plaintiff[] and/or her agents' contact with the physicians, Defendants should face reciprocal restrictions in regard to any of Defendants' agents, including their sales representatives." (Pl. Resp. at 5.)

Initially, Plaintiff has presented no evidence that Defendants' sales representatives have contacted her personally. And to the extent that sales representatives continue to contact the treating doctors of products liability plaintiffs or their decedents, Plaintiff has made no showing that any such contacts relate in any way to this litigation. To the contrary, Plaintiff's argument explicitly addresses sales calls occurring "in the course of [Defendants'] business," not in anticipation of litigation. (10/5/09 Hearing Tr. at 71:11-12.) Plaintiff cites no authority that could support a blanket restriction on sales calls to treating doctors that have nothing to do with this case.

Contrary to Plaintiff's characterizations, there is nothing "reciprocal" about the restrictions she proposes. As repeatedly stated, Defendants have not requested a blanket restriction on all contacts with treating doctors by Plaintiff's counsel and their agents. Defendants have only sought to prevent improper contacts designed to influence treating doctors' testimony, have done so based on a clear record of such improper contacts by Dr. Egilman, and have cited authority providing for relief in these circumstances. (Objection at 18-20.) By contrast, Plaintiff has not made, and clearly cannot make, any record of improper contacts by

Defendants, has explicitly requested a blanket restriction on all contacts by Defendants' sales representatives, and has cited no authority that could support such a blanket restriction.

Plaintiff's argument is purely rhetorical and plainly designed to deflect attention from Dr. Egilman's misconduct.  The argument has no merit and should be rejected.

## CONCLUSION

For all the foregoing reasons, the Court should set aside Magistrate Judge Sorokin's Order denying Pfizer's motion and issue an Order finding that Dr. Egilman's communications with these treating doctors were improper, directing him to refrain from similar communications with treating doctors in the future, and imposing appropriate sanctions against Dr. Egilman based on his violation of this Court's Protective Order.

Dated: November 10, 2009    Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
     Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

   -and-

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
     William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

   -and-

SHOOK, HARDY & BACON L.L.P.

By: /s/ Scott W. Sayler
    Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel:  (816) 474-6550

   -and-

WHITE AND WILLIAMS LLP

By:   /s/ David B. Chaffin
     David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on November 10, 2009.

        /s/ David B. Chaffin
        David B. Chaffin