UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
                                                       :    MDL Docket No. 1629
In re:   NEURONTIN MARKETING,          :
           SALES PRACTICES AND                :    Master File No. 04-10981
           PRODUCTS LIABILITY LITIGATION   :
                                                       :    Judge Patti B. Saris
------------------------------------------------------------x
                                                       :    Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:              :
                                                       :
PRODUCTS LIABILITY ACTIONS           :
                                                        :
------------------------------------------------------------x

**PRODUCTS LIABILITY PLAINTIFFS' MEMORANDUM
IN OPPOSITION TO DEFENDANTS' MOTION FOR
<u>CLARIFICATION OF THIS COURT'S OCTOBER 14, 2009 ORDER</u>**

      Products Liability Plaintiffs submit this memorandum in opposition to Defendants Pfizer Inc. and Warner-Lambert Company LLC's Motion for Clarification, a thinly-veiled attempt to obtain a second bite at the apple. Defendants simply do not want to produce discoverable, relevant <u>custodial file</u> documents regarding the "efficacy or side effects of Neurontin" that pertain to depression and suicidal behavior, because to do so would reflect further upon Defendants' negligent and reckless conduct.

      After Magistrate Judge Sorokin issued his October 14, 2009 order, the parties conferred; Plaintiffs offered to discuss, identify and limit the number of Defendants' witnesses for which custodial file documents could be disclosed. However, Defendants rejected the offer and left Plaintiffs with a "wait and see" approach as to what Defendants would disclose by the Court's 45 day timetable. Then, on the eve of the production deadline, Defendants claim to seek clarification where none is needed. They have not even complied with the Court's deadline by producing those documents they admittedly are willing to produce.

I. **Defendants' Request for Clarification is an Improper, Untimely, Poorly Veiled Attempt at Re-argument Designed to Deprive Plaintiffs of their Rightful Discovery.**

Defendants had a full and fair hearing before Magistrate Judge Sorokin on the issues set forth in Plaintiffs' motion for discovery (ECF Doc. # 2089). The October 14, 2009 order provided that Defendants produce the delineated discovery within 45 days of the order:

> However, to the extent defendants possess documents, up to the date of the Bextra settlement, regarding the efficacy or side effects of Neurontin not previously produced, they shall produce the documents within forty-five days.

ECF Doc. # 2125 at p.3.

Defendants made no objection to Magistrate Judge's Sorokin's October 14, 2009 order within the requisite time 10-day time period pursuant to Rule 2(b) of the Rules for United States Magistrate Judges in the District of Massachusetts,[1] nor did they seek to renew or reargue their position with new evidence.

Contrary to Defendants' assertions in their so-called motion for "clarification", Plaintiffs' requests are not overly broad — Plaintiffs attached the specific discovery requests to their underlying motion at Exhibit I (ECF Doc. # 2091-10). These specific requests were the subject of oral argument at the hearing preceding the Court's order. Importantly, the discovery requests specifically called for the production of custodial files and oral argument before Magistrate Judge Sorokin and included reference to both Plaintiffs' requests and Defendants' argument against this production. Therefore, Magistrate Judge Sorokin was clearly cognizant that custodial files were at issue and would be part of the discovery that he ordered Defendants to produce:

> MR. FROMSON: So there were discussions about discovery deficiencies plaintiffs believe should have been resolved by defendants during 2008 during the *Daubert* hearings that involve why aren't we being provided with discovery

---

[1] Please note that effective December 1, 2009, the rule will be amended to read 14 days of being served, instead of 10 days, for the time in which to file objections to such Magistrate Judge Orders.

2

leading up to your submissions to the FDA on suicidality. To put it in a practical perspective, you know, if there's a document that they actually provide on their letterhead to the FDA, there are underlying documents that formed the basis of these. There are underlying internal emails and communications and meetings and **therefore custodial file documents**. **None of that has been provided.** What has been provided essentially are the formal submissions—

THE COURT: So--

MR. FROMSON: --and some very limited internal documents. Now then their expert comes along and renders opinions based upon data and evaluations of the data he has himself done but which is inconsistent with the data in the formal document, all right? The formal document was presented to the FDA in July by a gentleman named Dr. Wohlberg. Dr. Wohlberg essentially presents information A, B, and C while defendant's expert, Dr. Gibbons, presents issues E, F, and G. So we don't have any of the internal information that Dr. Wohlberg presented to the FDA and, frankly, I think it was just a few moments ago Mr. Cheffo told me that, and if I misquote him, but basically he advised that he'd be willing to provide certain custodial file responsive documents from Dr. Wohlberg. So in part there is a recognition that there is some discovery here that should be given.

Declaration of Andrew G. Finkelstein, Exhibit 1 at pp. 8:16-9:19, (emphasis added).

## II.    Defendants Speculate as to Burden and Costs.

Next, Defendants' untimely and gratuitous submission of a Declaration related to costs and burden should be rejected by the Court. Inasmuch as Defendants had every opportunity to provide such documentation during the underlying motion and argument, they cannot now provide such a declaration in a request for clarification. Nevertheless, should the Court even entertain the declaration, Plaintiffs must be afforded an opportunity for discovery as to the truth, veracity, and accuracy of the assertions by Ronke Ekwensi. His claims are patently absurd.

Even at first glance, Mr. Ekwensi's declaration is not persuasive as to purported costs or burden. Defendants admit they stopped marketing Neurontin by 2004; any comparison to witness production pre-2004 is inapposite since post-2004 files should be dramatically smaller, particularly in terms of whatever documents exist regarding safety/efficacy. Accordingly, the document production is quite targeted at this point and document acquisition is definitely not

substantial, certainly not on the order of Mr. Ekwensi's gratuitous estimation. Thus, if it is true that Defendants were not: (a) marketing Neurontin during the period in question; and (b) performing additional clinical trials or in vitro studies (since the drug Neurontin was at that point generic and Defendants' dedication and focus from that point on was on Lyrica), then Defendants' assertion as to burden regarding production of such documents is neither persuasive nor tenable, because there should not be the voluminous amount of documents in existence to which Mr. Ekwensi refers.

The Court's attention is further respectfully referred to the Declaration of Keith L. Altman, Esq., wherein Mr. Altman rebuts Defendants' gratuitous, speculative statements as to burden and costs submitted by Defendants' Ronke Ekwensi. Mr. Altman points out several inaccurate representations by Mr. Ekwensi. For example, Mr. Ekwensi describes past custodial files as being 650,000 pages on average, yet Mr. Altman indicates that few custodial files exceeded 50,000 pages. Mr. Ekwensi also fails to disclose to the Court that the parties' use of keyword searches (i.e., terms designed to specifically recover the documents regarding safety and efficacy) makes the efforts of searching documents efficient and without undue burden.

**III. Defendants' Strategic Decision to Concede Dr. Wohlberg's Documents as Discoverable Does Not Satisfy Defendants' Obligation to Provide Discovery Consistent with the Court's October 14, 2009 Order.**

At the oral argument on October 5, 2009, regarding Plaintiffs' motion to compel discovery, Defendants conceded that Dr. Wohlberg's custodial file documents were discoverable. Indeed, Dr. Wohlberg spoke on behalf of Defendants at the FDA's Advisory Committee Hearing in July 2008, and opposed the FDA's decision that Neurontin, like other anticonvulsants increased the risk of suicidality. Defendants now seek to limit the disclosure of custodial file documents solely to Dr. Wohlberg, as if that would satisfy their obligations to

4

provide discoverable material regarding Neurontin and suicidality known to Defendants' employees.  Defendants' position was already argued before this Court on October 5, 2009, and their position was rejected by the Court's order of October 14, 2009.

A prominent question currently in the litigation is:  "*Why is there a substantive difference between Defendants' regulatory brief on suicidality submitted to FDA, as put forward by Dr. Wohlberg at the FDA advisory committee hearing in July 2008, and the opinions of Defendants' litigation expert on epidemiology, Robert Gibbons?*"  Plaintiffs have always sought the underlying documents that formed the bases of Defendants' regulatory brief, including the names of the individuals who were responsible for the development of the briefing materials, as well as their responsive custodial file documents.  However, Defendants are unwilling to identify those individuals and simply offered the file documents of Dr. Wohlberg, who is not a statistician, and did not alone draft Defendants' regulatory brief.  In fact, Plaintiffs do not know the extent to which Dr. Wohlberg authored the brief at all.  In any event, this unilateral limitation on discovery by Defendants is typical of their tactics of providing little if anything, without court order.  Now, when confronted with an order, Defendants seek to avoid disclosure again.

Defendants' apparent willingness to disclose some of their final, formal regulatory submissions to FDA does not meet their burden or satisfy Plaintiffs' right to discovery.[2]  As to burden, the documents proposed by Defendants are in electronic format; the Court should not allow itself to be misled to believe that Defendants are partaking in an elaborate production effort to meet with their obligations.  In terms of what Defendants say they are willing to

---

[2] In their memorandum seeking clarification (ECF Doc. # 2177), Defendants offer to produce "recent and post-production portions of the Neurontin Investigational New Drug Application(s) ("IND"), and New Drug Application(s) ("NDA"), which will include correspondence with the FDA, Summaries of Clinical Safety, Annual Reports, and Investigator Brochures."

provide, the discovery involves the mere electronic transfer from one hard-drive to another, followed by disclosure to Plaintiffs.

Moreover, as with a jury's review of evidence at trial, it is not the volume of evidence but the weight to be afforded to it. Here, Defendants' desire to avoid producing emails/documents from **custodial files** is clear — not because of purported burden or cost — but because historically it has been within such documents that their own employees have admitted improper, illegal behavior as to off-label promotion and where Plaintiffs have uncovered Defendants' negligent conduct regarding Neurontin and suicidal behavior. Defendants' employees, in unfettered e-mails and internal correspondence, frequently make admissions against interests and acknowledge (or fail to take notice of) risks associated with Neurontin that were not disclosed to the FDA or to the public.

## CONCLUSION

In view of the above, it is respectfully submitted that Defendants' Motion for clarification should be denied and that Defendants should be ordered to provide the discovery as detailed in Magistrate Judge Sorokin's October 14, 1009 order.

Dated: November 30, 2009                          Respectfully submitted,

*Members of Products Liability*
*Plaintiffs' Steering Committee*

By:     /s/ **Andrew G. Finkelstein**
        Andrew G. Finkelstein, Esquire
        Finkelstein & Partners, LLP
        436 Robinson Avenue
        Newburgh, NY  12550

By:   **/s/ Jack W. London**
Jack W. London, Esquire
Law Offices of Jack W. London
  &amp; Associates
3701 Bee Cave Road, Suite 200
Austin, TX 78746

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on November 30, 2009.

Dated: November 30, 2009

  **/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein