# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
HARDEN MANUFACTURING CORPORATION . CIVIL ACTION NO. 04-10981-PBS
     Plaintiff                    .
                                  . BOSTON, MASSACHUSETTS
          v.                      . OCTOBER 5, 2009
                                  .
PFIZER, INC., et al               .
     Defendants                   .
. . . . . . . . . . . . . . . . . .
```

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

Kenneth B. Fromson, Esquire
Keith Altman, Esquire
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY 12550
800-634-1212

Ken So, Esquire
Lanier Law


David Chaffin, Esquire
White and Williams LLP
100 Summer Street
Suite 2707
Boston, MA 02110-1701
617-748-5200
chaffind@whiteandwilliams.com

Mark S. Cheffo, Esquire
Catherine Armstrong, Esquire
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY 10036
212-735-3000
mark.cheffo@skadden.com


*MARYANN V. YOUNG*
**Certified Court Transcriber**
**Wrentham, MA  02093**
**(508) 384-2003**

7

1  you probably had wind of it.  I mean at any rate you certainly
2  got wind of it in April or March.
3            MR. FROMSON:  Of course.  We had wind of the issues
4  since approximately January of 2008 when the FDA came out with
5  the alert--
6            THE COURT:  The alert, right.
7            MR. FROMSON:  --and had the advisory committee
8  hearing in July of `08, but what has happened since then is
9  that during that timeframe I, myself, did confer with defense
10 counsel other than Mr. Cheffo about our request for discovery
11 supplement--
12           THE COURT:  Before the label change or after?
13           MR. FROMSON:  Before the label change.  There were
14 discussions.  This is not something that just arose.
15           THE COURT:  Right.
16           MR. FROMSON:  So there were discussions about
17 discovery deficiencies plaintiffs believe should have been
18 resolved by defendants during 2008 during the *Daubert* hearings
19 that involve why aren't we being provided with discovery
20 leading up to your submissions to the FDA on suicidally.  To
21 put it in a practical perspective, you know, if there's a
22 document that they actually provide on their letterhead to the
23 FDA, there are underlying documents that formed the basis of
24 these.  There are underlying internal emails and communications
25 and meetings and therefore custodial file documents.  None of

8

1  that has been provided.
2         What has been provided essentially are the formal
3  submissions--
4         THE COURT:  So--
5         MR. FROMSON:  --and some very limited internal
6  documents.  Now then their expert comes along and renders
7  opinions based upon data and evaluations of the data he has
8  himself done bust which is inconsistent with the data in the
9  formal document, all right?  The formal document was presented
10 to the FDA in July by a gentleman named Dr. Wahlberg.  Dr.
11 Wahlberg essentially presents information A, B, and C while
12 defendant's expert, Dr. Gibbons, presents issues E, F, and G.
13 So we don't have any of the internal information that Dr.
14 Wahlberg presented to the FDA and, frankly, I think it was just
15 a few moments ago Mr. Cheffo told me that, and if I misquote
16 him, but basically he advised that he'd be willing to provide
17 certain custodial file responsive documents from Dr. Wahlberg.
18 So in part there is a recognition that there is some discovery
19 here that should be given.
20        THE COURT:  But suppose – yep?
21        MR. CHEFFO:  If I may, okay.  I'll characterize I did
22 say that, but I'll, maybe I can just characterize my side of
23 the story and Mr. Fromson will give his presentation.
24        MR. FROMSON:  So there is a willingness now to
25 provide some portion of Dr. Wahlberg's documents.