UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:  NEURONTIN MARKETING, SALES
          PRACTICES AND PRODUCTS
          LIABILITY LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

THIS DOCUMENT RELATES TO:

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC., 04 CV 10739 (PBS)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T.
Sorokin

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 4

I.      Plaintiff's Choice Of Forum Is Not Entitled To Deference ................................. 4

II.     The Interests Of Justice And Efficiency Favor Transfer ..................................... 6

        A.      California Has a Greater Interest in Resolving Local Controversies in its
                Courts................................................................................................................. 6

        B.      California Has Greater Familiarity with the Applicable Law.............................. 8

III.    The Convenience Of Witnesses Favors Transfer ............................................... 9

IV.     Kaiser Will Not Be Prejudiced by Transfer ...................................................... 17

        CONCLUSION................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*In re Actimmune Marketing Litigation*, 614 F. Supp. 2d 1037 (N.D. Cal. 2009) .................... 14

*Altamont Pharm., Inc. v. Abbott Laboratories*, Nos. 94 C 6282, et al., 2002 U.S. Dist. LEXIS 759 (N.D. Ill. Jan. 18, 2002).................................................................................... 18

*In re Aredia & Zometa Products Liability Litigation*, No. 3:06-MD-1760, 2008 U.S. Dist. LEXIS 17906 (M.D. Tenn. Mar. 6, 2008) .............................................................. 18

*Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001) ............................................................ 13

*Atari v. United Parcel Serv., Inc.*, 211 F. Supp. 2d 360 (D. Mass. 2002) ....................6, 7, 8, 15

*Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392 (E.D. Pa. 2006) ..................... 9

*Beland v. U.S. Department of Transport*, No. Civ. 00-328, 2001 WL 274849 (D.N.H. Feb. 14, 2001)........................................................................................................................ 15

*Berenson v. National Finance Services*, LLC, 319 F. Supp. 2d 1 (D.D.C. 2004) ..................... 9

*Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2 (D. Mass. 1987) .......................................... 5, 8

*Coady v. Ashcraft & Gerel*, 223 F.3d 1 (1st Cir. 2000)............................................................ 1

*Commercial Solvents Corp. v. Liberty Mutual Insurance Co.*, 371 F. Supp. 247 (S.D.N.Y. 1974)........................................................................................................................ 17

*Dean v. Eli Lilly & Co.*, Civil Action No. 06-1375, 2007 U.S. Dist. LEXIS 39603 (D.D.C. June 1, 2007) .......................................................................................................... 4, 5

*Deputy v. Long-Term Disability Plan of Sponsor Aventis Pharmaceuticals*, No. C02-2010, 2002 WL 31655328 (N.D. Cal. Nov. 21, 2002) ...................................................... 10

*Dubois v. Moore*, 821 F. Supp. 792 (D. Mass. 1993)................................................................ 8

*Engel v. CBS, Inc.*, 886 F. Supp. 728 (C.D. Cal. 1995)............................................................ 8

*In re Enron Corp. Sec., Deriv. & "ERISA" Litigation*, Nos. H-04-0324, H-03-3393, H-05-3031, 2007 U.S. Dist. LEXIS 91141 (S.D. Tex. Dec. 10, 2007) .................................. 18

*F.A.I. Electronics Corp. v. Chambers*, 944 F. Supp. 77 (D. Mass. 1996)........................... 2, 15

*First Marblehead Corp. v. House*, 473 F.3d 1 (1st Cir. 2006) .................................................. 8

*Foster v. Litton Industrial, Inc.*, 431 F. Supp. 86 (S.D.N.Y. 1977) ......................................... 19

*George v. Kraft Foods Global, Inc.*, No. 06-cv-798, 2007 U.S. Dist. LEXIS 18650
(S.D. Ill. Mar. 16, 2007) ............................................................................................. 15

*In re Genentech*, 566 F.3d 1338 (Fed. Cir. 2009) .................................................................. 17

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ............................................................. 2, 7, 15

*Handigran v. Travis & Natalie, Inc.*, 379 F. Supp. 2d 83 (D. Mass. 2005) ........................... 17

*Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364 (D.N.J. 2004) ...................................................... 10

*Howe v. Goldcorp Investment, Ltd.*, 946 F.2d 944 (1st Cir. 1991) ........................................... 2

*Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093 (N.D. Cal. 2006) ........................ 1

*Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*, 585 F. Supp. 2d
1339 (M.D. Fla. 2008) ............................................................................................. 13, 14

*Island View Residential Treatment Center v. Kaiser Permanente*, No. 1:09-cv-3, 2009
WL 2614682 (D. Utah Aug. 21, 2009) ......................................................................... 4

*Italian Colors Restaurant v. American Express Co.*, No. C 03-3179, 2003 WL
22682482 (N.D. Cal. Nov. 10, 2003).......................................................................... 16

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000).................................................. 1

*Kaufmann v. Prudential Insurance Co. of America*, ___ F. Supp. 2d ___, 2009 WL
3600375 (D. Mass. Nov. 3, 2009) ................................................................................. 2

*Lagor v. Eli Lilly & Co.*, Civil Action No. 06-1967, 2007 U.S. Dist. LEXIS 43703
(D.D.C. June 18, 2007).......................................................................................... 10, 17

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)................... 17, 19

*Masonite Corp. v. Jeld-Wen, Inc.*, No. 2:06cv184, 2007 U.S. Dist. LEXIS 15131 (S.D.
Miss. Mar. 2, 2007).................................................................................................... 15

*McDevitt & St. Co. v. Fidelity & Deposit Co. of Md.*, 737 F. Supp. 351 (W.D.N.C.
1990) ......................................................................................................................... 17

*McEvily v. Sunbeam-Oster Co.*, 878 F. Supp. 337 (D.R.I. 1994) ........................................ 2, 9

*Morson v. Kreindler & Kreindler, LLP*, No. 09-10199-RGS, 2009 WL 2032395 (D.
Mass. July 10, 2009) .................................................................................................... 1

*Multibene Ingredients Oy, Ltd. v. Sturm Foods, Inc.*, ___ F. Supp. 2d ___, 2009 WL
3150039 (D. Me. Sept. 30, 2009) ................................................................. 17

*In re Norplant Contraceptive Products Liability Litigation*, 946 F. Supp. 3
(E.D. Tex. 1996) ................................................................................................ 19

*Pa. Employees Benefit Trust Fund v. AstraZeneca Pharms. LP*, No. 6:09-cv-5003,
2009 WL 2231686 (M.D. Fla. July 20, 2009) ................................................. 14

*In re Pharmaceutical Industry Average Wholesale Price Litigation*, 230 F.R.D. 61 (D.
Mass. 2005) ........................................................................................................ 8

*Princess House, Inc. v. Lindsey*, 136 F.R.D. 16 (D. Mass. 1991) ................................ 9

*Rowles v. Hammermill Paper Co.*, 689 F. Supp. 494 (E.D. Pa. 1988) ....................... 6

*S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175,
2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) ............................................... 14

*S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175,
ECF No. 29 (S.D.N.Y. Nov. 6, 2009) ............................................................ 14

*Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152 (S.D. Cal. 2005) ......................... 6, 10, 15

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-
5774, 2009 WL 2043604 (D.N.J. July 10, 2009) ......................................... 14

*Schwilm v. Holbrook*, 661 F.2d 12 (3d Cir. 1981) ................................................... 17

*Smith v. Pfizer (In re Neurontin Marketing, Sales Practices & Products Liability
Litigation)*, No. 1:05-cv-11515-PBS (D. Mass. Aug. 14, 2009) ....................... 9

*Southern States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip.*, 241 F.R.D.
85 (D. Mass 2007) .............................................................................................. 8

*In re St. Jude Medical, Inc.*, 522 F.3d 836 (8th Cir. 2008) ...................................... 13

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ................................. 1

*Sturm v. Consolidated Rail Corp.*, Civil Action No. 90-4251, 1990 U.S. Dist. LEXIS
11816 (E.D. Pa. Sept. 5, 1990) ......................................................................... 6

*Sub-Micron System, Inc. v. Sub-Micron Surfacing, Inc.*, No. 93 C 3295, 1993 WL
524273 (N.D. Ill. Dec. 10, 1993) ...................................................................... 9

*In re TJX Cos. Retail Sec. Breach Litigation*, 246 F.R.D. 389 (D. Mass. 2007) ...................... 13

*TransAmerica v. Trans-American Leasing*, 670 F. Supp. 1089 (D. Mass. 1987).......................5

*Triune Steel Erectors, Inc. v. Shappert Engineering Co.*, Case No. 91 C 20178, 1991
    U.S. Dist. LEXIS 20515 (N.D. Ill. Oct. 2, 1991) ....................................................6

*U.S. ex rel. Ondis v. City of Woonsocket, R.I.*, 480 F. Supp. 2d 434 (D. Mass. 2007)...............4

*In re Union Pacific R.R. Co. Employment Practices Litigation*, 314 F. Supp. 2d 1383
    (J.P.M.L. 2004)..........................................................................................................19

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) .............................................................9

*Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766 (C.D. Cal. 2006)........................................7

*In re Vioxx Products Liability Litigation*, 522 F. Supp. 2d 799 (E.D. La. 2007).....................18

*In re Vioxx Products Liability Litigation*, 478 F. Supp. 2d 897 (E.D. La. 2007).....................18

*Vista HealthPlan, Inc. v. Amgen, Inc.*, No. CV 07-3711, 2007 WL 4144893 (C.D. Cal.
    Nov. 13, 2007)................................................................................................passim

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004).............................................................16

*W. Marine Products, Inc. v. Dolphinite*, No. 04-10251-PBS, 2005 WL 1000259 (D.
    Mass. Mar. 23, 2005) ................................................................................................10

*Wellons v. Numerica Sav. Bank, FSB*, 749 F. Supp. 336 (D. Mass. 1990)...........................6, 8

*White v. SmithKline Beecham Corp.*, Civil Action No. 06-3025, 2007 WL 1237952
    (E.D. Pa. Apr. 26, 2007) ...........................................................................................5

*Zeevi v. America Home Products Corp.*, No. 99-CV-20277, 2002 WL 92902 (E.D. Pa.
    Jan. 24, 2002) ..........................................................................................................18

## STATUTES

28 U.S.C. § 1404 ..........................................................................................................1

28 U.S.C. § 1407 ........................................................................................................18

Cal. Bus. & Prof. Code § 17200...................................................................................8

Fed. R. Civ. P. 45(c)(3)(A)(ii)...................................................................................14

**OTHER AUTHORITIES**

15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 3d* (2007)............ 4

Restatement (Second) of Conflict of Laws § 148(1) (1971)...................................................... 8

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:   MDL Docket No. 1629
In re:  NEURONTIN MARKETING, SALES :
        PRACTICES AND PRODUCTS :   Master File No. 04-10981
        LIABILITY LITIGATION :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Judge Patti B. Saris
:
THIS DOCUMENT RELATES TO: :
                   :   Magistrate Judge Leo T.
THE GUARDIAN LIFE INSURANCE COMPANY OF :   Sorokin
AMERICA v. PFIZER INC., 04 CV 10739 (PBS) :
:
:
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
## TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404

      Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") submit this memorandum in support of their Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404.

### INTRODUCTION

      "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Three principal concerns govern a district court's analysis of a motion to transfer: (1) the convenience of the witnesses; (2) the convenience of the parties; and (3) the interests of justice. *See Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000). In deciding a transfer motion, a district court must make "an 'individualized, case-by-case consideration of convenience and fairness.'" *Morson v. Kreindler & Kreindler, LLP*, No. 09-10199-RGS, 2009 WL 2032395, at *2 (D. Mass. July 10, 2009) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *accord Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)). Courts may consider a number of factors in evaluating the guiding concerns of convenience and justice, including: the location of evidence, the familiarity of the forum with the governing law,

the availability of compulsory process, the plaintiff's choice of forum, and the difference in costs of litigation in each forum. *See, e.g.*, *Kaufmann v. Prudential Ins. Co. of Am.*, ___ F. Supp. 2d ___, 2009 WL 3600375, at *2 (D. Mass. Nov. 3, 2009) (citing *Howe v. Goldcorp Inv., Ltd.*, 946 F.2d 944, 951 (1st Cir. 1991)); *F.A.I. Electronics Corp. v. Chambers*, 944 F. Supp. 77, 80-81 (D. Mass. 1996) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *McEvily v. Sunbeam-Oster Co.*, 878 F. Supp. 337, 344-45 (D.R.I. 1994).

As discussed more fully before, each of these factors favors transfer of this case to California. Significantly, California has a substantial interest in this litigation, while Massachusetts has little, if any interest. Kaiser Foundation Health Plan, Inc. ("Kaiser Health Plan") is a California corporation, licensed under section 1340 of the California Health and Safety Code (Exh. A at 1), with its headquarters located in Oakland, California. (Third Coordinated Amended Complaint ("Compl.") ¶ 7.) As of December 2004, it had 8.2 million members in nine states and the District of Columbia. Approximately two-thirds of its members (6 million) are located in California. (*Id.*). It owns and operates in-house pharmacies in the states where its members reside, including California. (*Id.*) Kaiser Health Plan is divided into two regions in California, Northern and Southern, each with its own formulary management personnel and P&T Committee. (Oct. 2, 2007 Millares Depo. at 17:22-25, 30:11-13, attached as Exh. B.) The Northern Region is headquartered in Kaiser Health Plan's Oakland offices, while the Southern Region has Regional Administrative Offices in Downey, California (between Los Angeles and Santa Ana.)

Kaiser Foundation Hospitals is a California corporation which owns and operates thirty hospitals in California, Oregon and Hawaii. (*Id.* ¶ 8.) For example, Kaiser has medical facilities in the following California cities: Fremont, Fresno, Hayward, Oakland, Redwood City, Richmond, Roseville, Sacramento, San Francisco, San Jose, San Rafael, Santa Clara, Santa Rosa, Sotckton, Turlock, Vallejo and Walnut Creek. (Exh. C.)

Plaintiff seeks to recover in this litigation for payments made for Neurontin prescriptions based upon alleged fraudulent marketing to either its participating physicians, the vast majority

of whom are located in California, members of its P&T committees, who were also located in California, or other Kaiser employees and decision makers located in California.

While most of the transactions at issue occurred in California, giving California a substantial interest in this litigation, Massachusetts has no comparable interest.  Pfizer is not a Massachusetts corporation and none of Kaiser's claims arise out of a transaction that occurred in Massachusetts.  There is no nexus to Massachusetts whatever in this litigation.  Indeed, Kaiser abruptly ceased operations in Massachusetts in 1999.  Having previously abandoned the State, Kaiser should not be allowed to burden the citizens of Massachusetts with lengthy jury duty.

As would be expected in a case where the relevant transactions occurred in California, many key witnesses are located in California.  As a result, not only are there numerous non-party witnesses outside the subpoena power of this Court, even witnesses willing to appear voluntarily would be greatly inconvenienced by a forum located approximately 2,500 miles away from their place of residence.  As courts have repeatedly held, this factor weighs heavily in favor of transfer.

Indeed, availing itself of section 1404 in another case, Kaiser previously sought transfer of an action to California, its home state, arguing that Utah had no significant interest in the transactions at issue in that lawsuit and that all the relevant witnesses were located in California. As Kaiser then argued:

> The factual circumstances and basic legal issues alleged in the Complaint have little, if any, connection to the State of Utah, or the District of Utah.  All of the individual Plaintiffs reside in the Northern District of California, and all of the evidence regarding the disputed coverage decisions, claims for benefits and appeals, are located in [Kaiser's] Northern California offices.   Thus, judicial efficiency, and the convenience of the parties and witnesses, weigh heavily in favor of a change of venue to the Northern District of California, the district best-suited to adjudicate the dispute.

(*Island View Residential Treatment Center v. Kaiser Permanente, et al.*, No. 1:09-cv-3-CW, Defendant's Memorandum in Support of Motion for Change of Venue, at 2 (D. Utah Feb. 27, 2009, attached as Exh. D.)  Kaiser further argued:  "[V]enue can only be appropriate where the alleged breach of the plan occurs – either where the decision was made to deny benefits or where

3

benefits of the plan are to be received." (*Id.* at 3.)[1]  The court agreed and granted Kaiser's motion to transfer.  *See Island View Residential Treatment Center v. Kaiser Permanente*, No. 1:09-cv-3, 2009 WL 2614682, at *3-4 (D. Utah Aug. 21, 2009).  Kaiser cannot have it both ways, seeking transfer to a venue where the transactions occurred and the witnesses are located when it is a defendant, while availing itself of an inconvenient forum when it is a plaintiff.

Accordingly, as demonstrated below, in the interest of justice and for the convenience of the parties and witnesses, the Court should transfer this action to a federal district court in California.

## ARGUMENT

### I.   Plaintiff's Choice Of Forum Is Not Entitled To Deference

The deference ordinarily afforded to a plaintiff's choice of forum does not apply in this case for several reasons.  First, Kaiser's choice of Massachusetts "is not significant" because Kaiser is not a Massachusetts resident.  *See U.S. ex rel. Ondis v. City of Woonsocket, R.I.*, 480 F. Supp. 2d 434, 436 (D. Mass. 2007) (holding that plaintiff's choice of venue should be given less weight because "plaintiff is a nonresident of the chosen forum") (quoting 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3848 at 134-39 (2007)).  Kaiser is licensed under California law, its headquarters are located in California and approximately two-thirds of its members reside in California.  None of its members reside in Massachusetts.  Moreover, "[d]eference to the plaintiff's forum choice diminishes further when the defendant seeks transfer to a forum where the plaintiff resides."  *Dean v. Eli Lilly & Co.*, Civil Action No. 06-1375, 2007 U.S. Dist. LEXIS 39603, at *7 (D.D.C. June 1, 2007).

Second, "[w]here [as here] the operative facts of the case have no material connection

---

[1] Kaiser also argued that the location of the parties' attorney was immaterial to a motion to transfer venue, stating:  "Plaintiffs have relied heavily upon the concept that 'plaintiffs choice of counsel' is located in Utah as a basis for forum selection.  Convenience of counsel is immaterial or should not be considered as a factor in determining whether transfer is proper under 28 U.S.C. § 1404(a)."  (*Island View Residential Treatment Center v. Kaiser Permanente, et al.*, No. 1:09-cv-3-CW, Defendant's Reply Memorandum in Support of Motion for Change of Venue, at 3 (D. Utah Feb. 27, 2009, attached as Exh. E.)

with this district, plaintiff's choice of forum carries less weight" and is "not dispositive." *Brant Point Corp. v. Poetzsch,* 671 F. Supp. 2, 5 (D. Mass. 1987); *TransAmerica v. Trans-American Leasing*, 670 F. Supp. 1089, 1093 (D. Mass. 1987).   As one court explained in another case involving a third-party payor seeking to recover for off-label prescriptions:

> [T]he Court finds that Plaintiff's choice of forum is entitled to less deference because California is not Plaintiff's domicile and Plaintiff has no contact with this district. Some of the operative facts allegedly took place in California, including the decisions made by [the defendant] to improperly promote and market off-label uses of [the drugs at issue].   More significant facts, however, took place in Florida, including the alleged calls and visits from [the defendant's] sales representatives to local physicians, the writing and filling of prescriptions, and the reimbursements by [the plaintiff] to its members.   Furthermore, [the defendant's] activities in Florida are substantially connected to Plaintiff's specific claims because the issues of whether Plaintiff and its members were subjected to unlawful marketing, the extent of Plaintiff's injuries, and causation all center around [the defendant's] sale of [drugs] in Florida.

*Vista HealthPlan, Inc. v. Amgen, Inc.*, No. CV 07-3711, 2007 WL 4144893, at *4 (C.D. Cal. Nov. 13, 2007).   In *Vista HealthPlan*, the plaintiff had filed suit where the defendant was headquartered.   Here, there is even less justification for the Plaintiff's choice of forum, given that Pfizer is a Delaware corporation headquartered in New York.

Kaiser does not and cannot identify any connection between its claims and Massachusetts.   Instead, as established in more detail below, the operative facts involve alleged conduct and injuries primarily in California, where the vast majority of prescriptions for Neurontin for which Kaiser seeks a refund were written and the medicines purchased, and where alleged statements to prescribing physicians were made, and where alleged statements would have been received by members of Kaiser's P&T Committees, or Kaiser employees.   *See, e.g., Dean*, 2007 U.S. Dist. LEXIS 39603, at *9 (transferring personal injury action against pharmaceutical manufacturer to Massachusetts, noting that "the plaintiffs' claims arose in Massachusetts because the alleged prescription, purchase, and exposure to DES occurred in that state"); *White v. SmithKline Beecham Corp.*, Civil Action No. 06-3025, 2007 WL 1237952, at *2-4, *7 (E.D. Pa. Apr. 26, 2007) (transferring claims from defendant pharmaceutical company's home state to the forum where the drug at issue "was marketed and prescribed" and where the

alleged injury occurred, even though some decisions regarding the drug were made in the transferor forum).

Accordingly, Kaiser's choice of the District of Massachusetts is entitled to minimal deference, at best, and certainly does not outweigh the many factors favoring transfer of this action to California.

## II.   The Interests Of Justice And Efficiency Favor Transfer

### A.   California Has a Greater Interest in Resolving Local Controversies in its Courts

California's interest in resolving local controversies in its courts also favors transfer.  *See Atari v. United Parcel Serv., Inc.*, 211 F. Supp. 2d 360, 365 (D. Mass. 2002) (noting that the potential transferee jurisdiction "has a clear interest in trying and resolving the case in a local forum"); *accord Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1167 (S.D. Cal. 2005) (finding that the district in which the alleged conduct had occurred "would have a strong interest" in the action and that "it would not be an undue burden for jurors in that district to decide [the] case"); *Sturm v. Consol. Rail Corp.*, Civil Action No. 90-4251, 1990 U.S. Dist. LEXIS 11816, at *7 (E.D. Pa. Sept. 5, 1990) (noting that "the great importance attached by the courts to local decision-making militates in favor of transfer").   Courts have repeatedly emphasized that the interest of justice is "served by a transfer to the district where . . . a local jury can decide the ramifications of the actions at issue in [the] case." *Triune Steel Erectors, Inc. v. Shappert Eng'g Co.*, Case No. 91 C 20178, 1991 U.S. Dist. LEXIS 20515, at *9 (N.D. Ill. Oct. 2, 1991); *see also Rowles v. Hammermill Paper Co.*, 689 F. Supp. 494, 497 (E.D. Pa. 1988) ("Where feasible, matters of local interest should be decided by local juries . . . .").

Here, California citizens have a strong interest in resolving this action because the alleged wrongful conduct and injuries occurred there.  *See Wellons v. Numerica Sav. Bank, FSB*, 749 F. Supp. 336, 337 (D. Mass. 1990) (finding the fact that "New Hampshire [was] the state where the cause of action arose" to "weigh heavily" in favor of transfer).  Again, in a case involving similar claims, the *Vista HealthPlan* court explained:

> Given that a large percentage of the witnesses likely reside in the various plaintiffs' respective states, and that many of the operative facts allegedly giving rise to [the plaintiff's] claims – such as the prescription of the drugs at issue to members of Plaintiff's health benefit plans, the purchases of and reimbursements for those prescriptions medicines, any representations made by [the defendant] to the prescribing physicians and/or reliance upon such representations – occurred in the plaintiffs' home states, including Florida, the Court concludes that this factor weighs in favor of transfer.

*Vista HealthPlan*, 2007 WL 4144893, at *8.  In this case, Kaiser has previously admitted that California has the most significant interest in this lawsuit.  Early in this litigation, in opposition to a discovery motion by Defendants, Kaiser stated:  "Kaiser has reasonably focused its [document collection] efforts in California because that is the location most likely to contain the information Defendants seek.  Kaiser is headquartered in California, and most of its members and drug utilization are in California."  (Plaintiffs' Opposition to Defendants' Motion to Compel Discovery [422] at 15 (footnote omitted).  As Kaiser argued then, "the bulk of relevant information" is located in California.  (*Id.* at 15.)

Likewise, Massachusetts jurors should not be burdened with applying foreign law and making decisions about events that occurred outside their state.  *See Atari*, 211 F. Supp. 2d at 365 (observing that "fairness suggests that jury duty should fall on [the] citizens" of the state where the incident lying at the heart of the civil action occurred); *see also Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 783 (C.D. Cal. 2006) ("'Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation.'") (quoting *Gulf Oil*, 330 U.S. at 508-09).  The burden that would be imposed on Massachusetts citizens is especially great given that the trial is expected to last several weeks.

The burden being asked of Massachusetts residents is all the more unfair in light of Kaiser's decision to exit the Northeast region over ten years ago.  On June 18, 1999, Kaiser issued a press release announcing that it would be terminating all of its operations in the Northeast region, namely in New York, Connecticut, Vermont, and Massachusetts, abandoning 35 offices serving over 575,000 patients.  (*Kaiser Permanente Leaving Northeast*, Associated Press Online, June 19, 1999, attached as Exh. F.)  At the time, Kaiser had been covering about

79,000 members in Massachusetts, 5,600 of whom were senior citizens enrolled in Kaiser's Medicare health maintenance organization.   (*Attorney General Warns Kaiser Permanente*, Boston Globe, August 13, 1999, attached as Exh. G.)  Attorney General Thomas Reilly criticized Kaiser for not giving Massachusetts adequate notice about its withdrawal from the market.  (*Id.*) Having previously abandoned its clients in Massachusetts, Kaiser should not now be allowed to return, hat in hand, to ask that the good citizens of Massachusetts spend several weeks on a jury to hear a case with no nexus to Massachusetts.

### B.       California Has Greater Familiarity with the Applicable Law

Kaiser seeks to recover under the laws of various state consumer protection statutes, including the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  (Compl. ¶¶ 356-362.)[2]  This factor also favors transfer of this action to California.  *See Atari*, 211 F. Supp. 2d at 365 (finding that "the case should be transferred to the forum whose law will govern the case"); *Dubois v. Moore*, 821 F. Supp. 792, 793 (D. Mass. 1993) (transferring a case to New Hampshire under § 1404(a) partially because "New Hampshire law will govern the dispute"); *Wellons*, 749 F. Supp. at 337 (finding the fact that "New Hampshire law will undoubtedly govern the issues in this case" to "weigh heavily" in favor of transfer); *Brant Point*, 671 F. Supp. at 5 (noting that transfer is appropriate because it is preferable that North Carolina law be "construed by a federal court sitting in that state, rather than by a court unfamiliar with North Carolina law"); *accord Engel v. CBS, Inc.*, 886 F. Supp. 728, 733 (C.D. Cal. 1995) ("'[T]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems . . . in law foreign to itself.'") (ellipses in original) (quoting *Van Dusen*

---

[2] In cases involving alleged misrepresentations, Massachusetts generally applies the law of the state where the representations were made, received and acted upon by the plaintiff.  *See First Marblehead Corp. v. House*, 473 F.3d 1, 9 (1st Cir. 2006); *Southern States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip.*, 241 F.R.D. 85, 93 (D Mass 2007); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 82-83 (D. Mass. 2005); *see also* Restatement (Second) of Conflict of Laws § 148(1) (1971).  Accordingly, the law of other jurisdictions may apply to Kaiser's claims to recover for prescriptions written in states other than California; however, none of those states are Massachusetts. And the vast majority of prescriptions at issue, approximately two-thirds, were written in California.

*v. Barrack*, 376 U.S. 612, 645 (1964)).[3]

The preference for allowing local federal courts to construe applicable state law is particularly strong where, as here, an action includes claims under state consumer protection laws. These statutes reflect complex policy choices by state legislators balancing the interests of businesses and consumers within each state. *See, e.g., Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006) ("States have a strong interest in applying their own consumer protection laws to their citizens."); *see also Berenson v. Nat'l Fin. Servs.*, LLC, 319 F. Supp. 2d 1, 4-5 (D.D.C. 2004) (transferring state consumer protection claims because, *inter alia*, "[c]learly, this Court's Massachusetts colleagues have greater familiarity with Massachusetts law and therefore superior capability to accurately apply Massachusetts law"); *Sub-Micron Sys., Inc. v. Sub-Micron Surfacing, Inc.*, No. 93 C 3295, 1993 WL 524273, at *11 (N.D. Ill. Dec. 10, 1993) (transferring action from Illinois to New Jersey; noting that "familiarity with New Jersey law is especially helpful in interpreting state statutes such as the New Jersey Consumer Fraud Act that reflect and are designed to implement the state's consumer protection policy").

## III.    The Convenience Of Witnesses Favors Transfer

The convenience of essential witnesses weighs heavily in favor of a transfer of this action to a California forum. Courts have emphasized that "[c]onvenience of the expected witnesses is '[p]robably the most important factor, and the factor most frequently mentioned'" when deciding a motion to transfer under § 1404(a). *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991); *accord Vista HealthPlan*, 2007 WL 4144893, at *4; *McEvily*, 878 F. Supp. at 344-45.

Accordingly, courts have granted motions to transfer where, as here, non-party "witnesses with firsthand knowledge relevant and material to plaintiffs' allegations" were

---

[3] For example, in *Smith v. Pfizer (In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.)*, No. 1:05-cv-11515-PBS, Dkt. 10 (D. Mass. Aug. 14, 2009), this Court reserved ruling on certain issues raised by the Defendants' motion for summary judgment, noting that the issues involved questions of Tennessee law and were "best left for the transferor court in Tennessee to resolve." *Id.* at 2.

located in the transferee forum.  *Saleh*, 361 F. Supp. 2d at 1167; *see also W. Marine Prods., Inc. v. Dolphinite*, No. 04-10251-PBS, 2005 WL 1000259, at *1 (D. Mass. Mar. 23, 2005) (transferring venue when most of the witnesses were located in Florida); *Deputy v. Long-Term Disability Plan of Sponsor Aventis Pharmaceuticals*, No. C02-2010, 2002 WL 31655328, at *3-4 (N.D. Cal. Nov. 21, 2002) (granting motion to transfer to plaintiff's home state of Texas where plaintiff's allegations would potentially require testimony from the plaintiff's "treating doctors and other medical professionals" located in Texas); *Lagor v. Eli Lilly & Co.*, Civil Action No. 06-1967, 2007 U.S. Dist. LEXIS 43703, at *12-14, *20 (D.D.C. June 18, 2007) (granting motion to transfer personal injury action to Rhode Island where "the resolution of [the central] issues" would require testimony from plaintiff's physicians and pharmacy in Rhode Island); *cf. Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364, 367-68, 377-78 (D.N.J. 2004) (determining that Pennsylvania law applied to plaintiffs' claims that defendant deceptively marketed its prescription drugs, noting that "the most important aspects of the transaction underlying th[e] lawsuit [were] the decisions of the physician and the relationship between doctor and patient, all of which occurred in Pennsylvania").

As demonstrated below, the primary sources of relevant testimony in this case are non-party witnesses in Kaiser's home state of California.  For example, the parties have listed the following persons on their lists of witnesses for trial:[4]

| Southern California (Central District, within 100 miles of Los Angeles or Santa Ana) | |
|---|---|
| Dr. Mark Buchfuhrer (listed by Pfizer)<br>Advisor to the RLS Foundation. | Downey |
| Albert Carver (listed by both)<br>Kaiser Foundation Health Plan, Vice President of Pharmacy<br>Strategy and Operations in California. | Downey |

---

[4] Addresses have not been provided by Kaiser for all of the listed witnesses.  The location indicated is based either upon deposition testimony or information and belief after performing reasonable internet searches.

| | |
|---|---|
| David Chandler, M.D. (listed by Pfizer)<br>General psychiatrist with Southern California Permanente Medical Group ("SCPMG") and Chief of Psychiatry since 1990. | Santa Ana |
| Mitchell Danesh, M.D. (listed by Pfizer) | Woodland Hills |
| Dale Daniel, M.D. (listed by both)<br>Employed by Southern California Permanente Medical Group.  Chair of Kaiser's Southern California Regional P&T Committee. | Riverside |
| Dr. Gerner (listed by Pfizer)<br>Member of the Gabapentin Bipolar Disorder Study Group. | Los Angeles |
| Joel Hyatt, M.D. (listed by Kaiser)<br>Employed by Permanente Medical Group.  Co-Chair of Kaiser Permanente's Southern California Regional Drug Utilization Action Team. | Los Angeles |
| Dr. Deborah Kubota (listed by Pfizer)<br>Formulary pharmacist with Kaiser Foundation Hospitals. | Downey |
| Morris Maizel, M.D. (listed by Pfizer)<br>Physician with SCPMG. | Woodland Hills |
| Bruce McCarberg, M.D. (listed by Pfizer)<br>Family physician with SCPMG. | Escondido |
| Mirta Millares (listed by both)<br>Kaiser Foundation Hospitals, Manager of Drug Information Services and Pharmacy Outcomes Research. | Downey |
| Dr. Charles Phillips (listed by Pfizer)<br>Physician practicing in California. | Bakersfield |
| Rodney St. John (Listed by Kaiser)<br>Manager of Kaiser Permanente's national Pharmaceutical Contracting Department, former Project manager for Kaiser Permanent's Southern California Regional Drug Utilization Action Team. | Downey |
| Nicholas Weider, D.O. (listed by Pfizer)<br>Member of Kaiser's Southern California Region's Drug Utilization Action Team. | Panorama City |

11

| Northern California (Northern District) ((w/i 100 miles of Oakland or San Francisco) | |
|---|---|
| Andrew E. Bertagnolli, Ph.D. (listed by Pfizer)<br>Pain management consultant with Kaiser Permanente. | Oakland |
| Ambrose, Carrejo  (listed by Kaiser)<br>National Pharmaceutical Contracting Leader, Kaiser<br>Permanent's Pharmaceutical and Strategic Purchasing<br>Department. | Oakland |
| David Campen, M.D.  (listed by both)<br>Employed by the Permanente Medical Group.  Member of<br>Kaiser's Northern California Regional P&T Committee.<br>Member of Kaiser Permanante's Drug Utilization Group. | Oakland |
| Mitchell S. Y. Cohen (listed by Pfizer)<br>Senior Counsel to Kaiser. | Oakland |
| Robin Dea, M.D. (listed by both)<br>Employed by Permanente Medical Group.  Chair of the<br>Chiefs of Psychiatry for the Northern California Permanente<br>Medical Group (NCPMG). | Redwood City |
| Dale Kramer (listed by both)<br>Retired.  Formerly Director  of  Pharmacy  Contracting  for<br>Kaiser Foundation Hospitals. | Danville |
| Vicki Travis (listed by Pfizer) | San Jose |

The witnesses listed above are key witnesses for both sides.  They include members of Kaiser's P&T Committees, Drug Utilization Action Teams and other Kaiser employees or contractors who were responsible for formulary placement and drug utilization decisions.  The list includes one researcher involved in one of the efficacy studies at issue in this litigation.  It also includes two non-party witnesses knowledgeable about Kaiser's business practices.

The witnesses identified by Pfizer also include Kaiser physicians who prescribed Neurontin.  In addition to those physicians listed by name, Pfizer has indicated its intent to call other physicians who prescribed Neurontin to Kaiser insureds, as well as Kaiser insureds who used Neurontin.  By separate motion [2181], Pfizer has sought an order requiring Kaiser to provide it with the names and last known addresses of such persons.  Testimony from physicians who prescribed Neurontin, as well as patients who used it, is clearly relevant and important to the

issues in this case.  As one court has explained when granting a motion to transfer another case where a third-party payor sought to recover from a pharmaceutical manufacturer for alleged off-label prescriptions:

> [I]n order to show causation, Plaintiff will have to prove, for each prescription for which it seeks a refund, that the prescription was for an off-label use, and that the prescribing physician based his or her decision to prescribe for an off-label use on a communication from [the defendant], rather than his or her clinical experience, training and independent medical judgment.  Such proof will necessarily require testimony by the prescribing doctors located in Florida.  Plaintiff argues that it can prove off-label use of the drugs via an examination of drug-identification and diagnosis codes in the records.  ***However, even if Plaintiff can adequately support causation with such proof, [the defendant] will still require physician testimony to defend itself from Plaintiff's claims.***  As [the defendant] points out, if "testimony indicates that the physician acted independently of any statement from or action by [the defendant], [Plaintiff] certainly could not seek a refund from [the defendant] for the prescription."

*Vista HealthPlan*, 2007 WL 4144893, at *6 (emphasis added); *see also In re St. Jude Med., Inc.*, 522 F.3d 836, 840 (8th Cir. 2008) (noting that even if state law permitted plaintiffs to rely on aggregate proof of causation, defendants could not be precluded from presenting individual evidence "negating a plaintiff's direct or circumstantial showing of causation"); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 443 (5th Cir. 2001) (noting that aggregate proof should not be permitted where it would "deprive[] [ opposing parties of] the right to a full and fair opportunity to litigate their claims"); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 396 (D. Mass. 2007) (holding that defendants would have the right to introduce individualized evidence at trial to rebut the plaintiffs' evidence of reliance).

In cases involving third-party payors ("TPPs"), courts have repeatedly recognized the relevance of individual physician testimony.  For example, in *Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*, 585 F. Supp. 2d 1339 (M.D. Fla. 2008), TPPs sought to recover under RICO and the New Jersey Consumer Fraud Act ("NJCFA") for alleged off-label marketing of Seroquel, contending that they would have paid for cheaper alternative drugs absent the defendants' alleged fraud.  Dismissing the plaintiffs' claims, the court explained:

> [I]n the context of this case, establishing that Plaintiffs' injuries were caused by

13

> Defendants' misconduct would require an inquiry into the specifics of each
> doctor-patient relationship implicated by the lawsuit.   In other words, each
> physician who prescribed Seroquel to an individual consumer or health and
> welfare fund member would have to be questioned as to whether his or her
> independent medical judgment was influenced by Defendants' misrepresentations,
> and to what extent.

*Id.* at 1344; *see also In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1052 (N.D. Cal. 2009);

*S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175, 2009 WL

3151807, at *6-7 (S.D.N.Y. Sept. 30, 2009);[5] *Pa. Employees Benefit Trust Fund v. AstraZeneca*

*Pharms. LP*, No. 6:09-cv-5003, 2009 WL 2231686, at *6 (M.D. Fla. July 20, 2009); *In re*

*Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL

2043604, at *15 (D.N.J. July 10, 2009).

Testimony from Kaiser physicians regarding why they prescribed Neurontin, their

clinical observations regarding Neurontin and its efficacy for their patients, and whether they

would have prescribed one of the self-selected alternative drugs identified by Plaintiff is clearly

relevant and admissible evidence, as is testimony from Kaiser insureds regarding their

experience while taking Neurontin.

Significantly, almost all of the witnesses listed above are non-parties.   In its recently filed

witness list, Kaiser made the following statement:

> Witnesses employed by Southern California Permanente Medical Group,
> Northwest Permanente Medical Group or The Permanente Medical Group are not
> under the control of Kaiser **and cannot be compelled to participate in trial**.

(Plaintiff's List of Witnesses to Be Presented at Trial [2179] at 1 n.1.)  The location of non-party

witnesses is of particular concern because non-parties located more than 100 miles from the

forum district are not subject to a subpoena to compel their appearance.  *See* Fed. R. Civ. P.

45(c)(3)(A)(ii).

---

[5] Although the court in *Southern Illinois* allowed leave to amend when it dismissed the insufficient complaint, 2009 WL 3151807, at *7, the plaintiffs voluntarily dismissed their claims with prejudice.  *See* Joint Stipulation and Order of Dismissal with Prejudice, *S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175, ECF No. 29 (S.D.N.Y. Nov. 6, 2009).  The dismissal was not the result of a settlement.

For example, in *Vista HealthPlan*, the plaintiff argued that "'if administrators or trustees [were] necessary to prove elements of its case, then Plaintiff [would] be sure to call them at trial,' thus ensuring their availability for cross-examination." *Vista HealthPlan*, 2007 WL 4144893, at *6. Plaintiff further argued that the testimony of fact witnesses could be preserved for trial. *See id.* Rejecting the plaintiff's arguments, the court explained:

> [D]espite this assertion, Plaintiff cannot force unwilling fact witnesses to appear for trial. While a party can compel the testimony of its employees at trial, for non-party witnesses, the court's subpoena power extends only to areas anywhere within the district and/or one hundred miles of the place of trial. Because the fact witnesses are outside the geographic reach of this district's subpoena power, [the defendant] may not have access to these witnesses at trial. If the case is transferred, the Southern District of Florida will have subpoena power over the witnesses who reside within that district.

*Id.*; *see also F.A.I. Electronics*, 944 F. Supp. at 80-81 (noting that lack of compulsory process weighs in favor of transfer); *see also Saleh*, 361 F. Supp. 2d at 1164 ("[T]he convenience of nonparty witnesses is more important than party witnesses.").

Indeed, as the Supreme Court has recognized, "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to [the] court, jury or most litigants." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947). As courts have repeatedly recognized, "limiting [the defendant] to 'recorded' testimony from non-party witnesses while Plaintiff benefits from live testimony would be 'manifestly unfair.'" *Vista HealthPlan*, 2007 WL 4144893, at *6; *see also Atari*, 211 F. Supp. 2d at 363 (noting that few witnesses "would be subject to process in Massachusetts, and thus would be available only through deposition testimony"); *Masonite Corp. v. Jeld-Wen, Inc.*, No. 2:06cv184, 2007 U.S. Dist. LEXIS 15131, at *8 (S.D. Miss. Mar. 2, 2007) ("[A] party should not be required to try his case with depositions rather than live witnesses. This is especially true when the qualitative value of the witnesses' testimony is high.") (citation and internal quotation marks omitted); *Beland v. U.S. Dep't of Transp.*, No. Civ. 00-328, 2001 WL 274849, at *3 (D.N.H. Feb. 14, 2001) ("[E]nsuring the presence of live witness testimony better serves the interest of justice."); *see also George v. Kraft Foods Global,*

15

*Inc.*, No. 06-cv-798, 2007 U.S. Dist. LEXIS 18650, at *28 (S.D. Ill. Mar. 16, 2007) ("The Court is unwilling to set up a situation in which Defendants 'cannot compel personal attendance [of witnesses at trial] and may be forced to try their case[] on deposition.'") (alterations in original; citations omitted).[6]

As the chart above shows, many of the key fact witnesses to be called in this case are not within the subpoena power of this Court, but are located within 100 miles of either the Central District of California or the Northern District of California.  And, as to all witnesses located in California, either venue would clearly be far more convenient than a court located 2,500 miles away.  *See Vista HealthPlan*, 2007 WL 4144893, at *6 ("[E]ven if the fact witnesses such as prescribing physicians agree to travel to California voluntarily, they will still be inconvenienced by having to travel to California, and so will their patients back in Florida.").  As the Fifth Circuit has observed:

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.  Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

*In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004); *see also Italian Colors Restaurant v. American Express Co.*, No. C 03-3179, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) ("Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions.").  Other than expert witnesses, there are few key witnesses located in Massachusetts.  A fact witness scheduled for only 30 minutes of testimony would be required to block out at least two days of time in order to fly across the country.

---

[6] The unfairness that would result to Pfizer is heightened here, where a number of the witnesses have not been deposed and this Court has limited the number of additional depositions that can be taken between now and trial.

Accordingly, the convenience of both party and non-party witnesses requires transfer of this action to California.  *See Handigran v. Travis & Natalie, Inc.*, 379 F. Supp. 2d 83, 84 (D. Mass. 2005) (finding that a § 1404(a) transfer was appropriate where "witnesses all reside in Rhode Island"); *Multibene Ingredients Oy, Ltd. v. Sturm Foods, Inc.*, ___ F. Supp. 2d ___, 2009 WL 3150039, at *2 (D. Me. Sept. 30, 2009) (finding that transfer was appropriate where there was "no evidence that any potential witnesses are located in Maine, or even more generally, in the Northeast") (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)); *see also Lagor*, 2007 U.S. Dist. LEXIS 43703, at *13-14 (noting that the fact that there were "no essential non-party witnesses in the District of Columbia" further favored transfer).

## IV.   Kaiser Will Not Be Prejudiced by Transfer

Motions to change venue pursuant to section 1404(a) are not subject to specific time constraints and cannot be foreclosed by waiver.  *See, e.g.*, *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir. 1981) (observing that section 1404(a) "does not include a time limitation"); *McDevitt & St. Co. v. Fidelity & Deposit Co. of Md.*, 737 F. Supp. 351, 355-56 (W.D.N.C. 1990) (noting that "section 1404(a) does not require a party to make a motion to transfer within a specified period of time after the filing of the cause of action"); *Commercial Solvents Corp. v. Liberty Mut. Ins. Co.*, 371 F. Supp. 247, 251 (S.D.N.Y. 1974) ("A motion pursuant to F.R.C.P. 12(b) must be made within a specified time period.   No such timeliness requirement is expressed in § 1404(a).").

Where, as here, a case is filed in an MDL, there is no reason to seek a transfer prior to completion of pre-trial proceedings.  Indeed, had Pfizer sought a transfer earlier, it would have simply caused unnecessary delay.  An earlier transfer motion would have resulted in this case being transferred to California pursuant to section 1404, then transferred by the Judicial Panel on Multidistrict Litigation to this Court, and then remanded by the Judicial Panel to the California transferor court pursuant to *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).  In short, there was no reason to seek a transfer before this case was set for trial.

Several courts have recognized that waiting until after pretrial proceedings in the MDL

transferee court to file a section 1404(a) motion is preferable and more convenient for both parties.  For example in *In re Vioxx Products Liability Litigation*, 478 F. Supp. 2d 897 (E.D. La. 2007), the defendant stipulated that the plaintiffs could file their claims directly in the MDL transferee court, provided that the cases would later be transferred to more convenient venues for trial pursuant to section 1404(a).  *See id.* at 903-04.  The MDL court endorsed this approach as promoting judicial efficiency, explaining:  "Under traditional MDL practice, the majority of cases are filed in, or removed to, federal courts across the country and then transferred to the MDL court by the Judicial Panel on Multidistrict Litigation."  *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 812 (E.D. La. 2007) (citing 28 U.S.C. § 1407).  The court commended the defendant for "avoid[ing] the expense and delay associated with plaintiffs filing in local federal courts around the country after the creation of an MDL and waiting for the Panel to transfer these 'tag-a-long' actions to this district."  *Id.* (quoting *In re Vioxx*, 478 F. Supp. 2d at 904).

In other cases where the plaintiffs have filed their lawsuit directly in the MDL court, courts have considered and granted section 1404 motions to transfer at the conclusion of pretrial proceedings.  *See, e.g.*, *In re Aredia & Zometa Products Liability Litig.*, No. 3:06-MD-1760, 2008 U.S. Dist. LEXIS 17906, at *16-17 (M.D. Tenn. Mar. 6, 2008) (granting section 1404(a) motion to transfer cases originally filed in MDL court following consolidated discovery, even though the cases had been set for trial, because there were more convenient fora elsewhere); *In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, Nos. H-04-0324, H-03-3393, H-05-3031, 2007 U.S. Dist. LEXIS 91141 (S.D. Tex. Dec. 10, 2007) (granting section 1404(a) motion to transfer two case filed with the MDL court after the pretrial proceedings were completed); *Zeevi v. Am. Home Products Corp.*, No. 99-CV-20277, 2002 WL 92902 (E.D. Pa. Jan. 24, 2002) (transferring case filed in MDL court pursuant to section 1404(a) at the close of discovery); *Altamont Pharm., Inc. v. Abbott Labs.*, Nos. 94 C 6282, et al., 2002 U.S. Dist. LEXIS 759 (N.D. Ill. Jan. 18, 2002) (same).

The Judicial Panel also has indicated that it may prove more efficient to consolidate cases for pretrial proceedings before motions to transfer under section 1404(a) are ruled upon.  *See In*

*re Union Pacific R.R. Co. Employment Practices Litig.*, 314 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) ("In light of the fact that Section 1404 motions are pending in multiple federal districts and additional tag-along actions may be filed, Section 1407 is the more efficient method of congregating these related actions for pretrial proceedings at the present time.").

Indeed, any delay engendered by a transfer at this time is the result of Kaiser filing this action in an inconvenient forum, not Pfizer's appropriate request for a transfer.  At least one district court has admonished plaintiffs who "file[] directly in [the MDL] transferee court rather than in what would otherwise be a more appropriate venue."  *In re Norplant Contraceptive Prods. Liability Litig.*, 946 F. Supp. 3, 3 (E.D. Tex. 1996).  As the court explained, "[t]his direct filing strategy not only bypasses the multidistrict litigation statute providing for transfer and later remand, but also threatens to burden this court with unnecessary transfer decisions under 28 U.S.C. § 1404(a)."  *Id.* (footnotes omitted).

Transfer of this case to California would result in no more prejudice to Kaiser than an ordinary remand to a transferor court, and would have been the required result had Kaiser originally filed in California.  As the Supreme Court made clear in *Lexecon*, the purpose of 28 U.S.C. § 1407 was to permit consolidation of actions *for pre-trial proceedings only* – not to permit a series of trials before a single court otherwise unconnected to the transactions at issue. *See Lexecon*, 523 U.S. at 35.  As the *Norplant* court observed:

> If a party avoids the need for an MDL transfer order by filing directly in this court, the court is unable to rely on § 1407 for the efficient remand of such case to the proper venue after pretrial proceedings are concluded.  Instead, the court is forced to engage in the more burdensome task of relying on 28 U.S.C. § 1404(a) in evaluating the need for a change in venue.

*Norplant*, 946 F. Supp. at 4.[7]  Accordingly, Kaiser can claim no prejudice from being transferred

---

[7] For this reason, relative court congestion is not a significant factor for consideration.  Because pretrial proceedings have been conducted as part of an MDL, the time from filing to trial is not particularly relevant.  This case stands in exactly the same position as a case originally filed in a convenient jurisdiction and subject to remand pursuant *Lexecon*.  Further, issues of court congestion can be addressed by, for example, transferring this action to Santa Ana, rather than Los Angeles.  In any event, docket congestion is only one factor for the court to consider.  Transfer is still appropriate where, as here, the other factors so clearly point to another forum. *See Foster v. Litton Indus., Inc.*, 431 F. Supp. 86, 88 (S.D.N.Y. 1977).

to a court where it should have filed this action in the first place.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this action be transferred to the Central District of California or, alternatively, the Northern District of California.

Dated: December 4, 2009               Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By:      /s/ Mark S. Cheffo
         Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

         -and-

SHOOK, HARDY & BACON L.L.P.

By:      /s/ Scott W. Sayler
         Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel:  (816) 474-6550

         -and-

WHITE AND WILLIAMS LLP

By:    /s/ David B. Chaffin
        David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 330-5000

*Attorneys for Defendants Pfizer Inc and*
*Warner-Lambert Company*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 4, 2009.

/s/ David B. Chaffin
David B. Chaffin