# EXHIBIT A

TERRY M. PLANT (Bar No. 2610)
H. JUSTIN HITT (Bar No. 8762)
PLANT, CHRISTENSEN & KANELL
136 East South Temple, Suite 1700
Salt Lake City, Utah 84111
Telephone: (801) 363-7611
Facsimile: (801) 531-9747 (fax)
Email: tplant@pckutah.com
        jhitt@pckutah.com

THOMAS M. FREEMAN (Cal. Bar No. 109309)
MARION'S INN
Admitted Pro Hac Vice
1611 Telegraph Avenue, Suite 707
Oakland, California 94612-2145
Telephone: (510) 451-6770
Facsimile: (510) 451-1711
Email: tmf@marionsinn.com

Attorneys for Defendant Kaiser Foundation
Health Plan, Inc., erroneously sued as Kaiser
Permanente and Kaiser Permanente Traditional
Plan for Small Business

# UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ISLAND VIEW RESIDENTIAL TREATMENT CENTER, and Anna L., Thomas L., and Andrew L. | ) ) ) Civil No. 1:09-cv-3-'CW |
| Plaintiffs, | ) ) DECLARATION OF CARLENE ) VALENTINE IN SUPPORT OF ) DEFENDANT'S MOTION FOR CHANGE ) OF VENUE (28 U.S.C. § 1404(a)) |
| v. | ) ) Date: |
| KAISER PERMANENTE, and KAISER PERMANENTE TRADITIONAL PLAN FOR SMALL BUSINESS | ) Time: ) Judge: Hon. Clark Waddoups ) Ctrm: TBA ) |
| Defendant. | ) ) Accompanying Documents: Notice of ) Motion; Motion; Memorandum; Request for ) Judicial Notice; Declaration of Maria Borje-Bonkowski |

## DECLARATION OF CARLENE VALENTINE

I, Carlene Valentine, declare:

1.    I am currently a Senior Claims Examiner for Kaiser Foundation Health Plan, Inc.

("Health Plan") in Oakland, California.  I am responsible for handling and settling medical

malpractice cases, provider disputes, and other special assignments.   Prior to this position, I was a Senior Compliance Analyst responsible for drafting group and individual plan agreements as well as document submissions to Health Plan's state regulator.   Prior to that, I worked as a paralegal in the Labor and Employment law section of Health Plan's legal department for approximately six years.  I am familiar with Health Plan's claims review process, as well as Health Plan's organizational structure.

2.      Health Plan is a non-profit California health plan licensed under the Knox-Keene Health Care Service Plan Act ("Knox-Keene Act"), Cal. Health & Saf. Code § 1340 *et seq.*

3.      Health Plan's corporate headquarters are located at 1 Kaiser Plaza, Oakland, CA, 94612.  Health Plan operates in nine states (California, Colorado, Georgia, Hawaii, Maryland, Ohio, Oregon, Virginia, and Washington) and the District of Columbia.  Health Plan does not conduct any business in, or have any connection to, the State of Utah.

4.      As part of my duties, from my office in Oakland, California I undertook an investigation of the claim for benefits brought by Thomas L., Anna L., and Andrew L., in connection with Andrew L.'s care for various mental health issues at a Utah residential treatment facility.

5.      Based on my investigation, I reviewed the membership history of Thomas L., Anna L., and Andrew L.  A true copy of the membership history is attached as Exhibit A.  The membership history shows that:

> a) Thomas L. is a subscriber of a group membership agreement between Health Plan and Lamothe Cleaners. The agreement in effect during the operative time period alleged in the complaint, is a Small Business Plan.
>
> b) Thomas L.'s spouse Anna L., and son Andrew L., are members of the same plan.
>
> c) Thomas L., Anna L., and Andrew L., all reside Northern California and were residents of Antioch, California at the time of the events alleged in the complaint.

VALENTINE DECL.
CIVIL NO. 1:09-cv-3-'CW

6.      All of the events and actions surrounding the care of Andrew L. at Health Plan's California facilities, as well as his claim for benefits, and appeal of coverage decisions, occurred in Northern California.  The employees of Health Plan who participated in those decisions are located in Northern California.

7.      The foregoing is within my personal knowledge.  If called as a witness, I can and will competently testify to the same.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: February 19, 2009                         *Carlene Valentine*

                                                                  Carlene Valentine

# EXHIBIT B

CONFIDENTIAL

Page 1

1                    UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MASSACHUSETTS
2
                                    :
3   IN RE NEURONTIN MARKETING      : MDL DOCKET NO. 1629
    AND SALES PRACTICES and        :    Master File No.
4   PRODUCTS LIABILITY             :       04-10981
    LITIGATION                     : Judge Patti B. Saris
5                                  : Magistrate Leo T.
                                    :     Sorokin
6                                  :
    -------------------------- X
7
    -------------------------- X
8   SUPREME COURT OF THE STATE     : Case Management
    OF NEW YORK                    : Index No. 765,000/2006
9   COUNTY OF NEW YORK             : Hon. Marcy S. Friedman
    -------------------------- :
10  IN RE: NEW YORK NEURONTIN      :
    PRODUCTS LIABILITY             :      DEPOSITION UPON ORAL
11  LITIGATION                     :        EXAMINATION OF
                                    :         MIRTA MILLARES
12                                 :       AS INDIVIDUAL AND
                                    :        30(B)(6) WITNESS
13  -------------------------- X --------------------
14              CONTAINS CONFIDENTIAL INFORMATION
15        TRANSCRIPT of testimony as taken by and before
16  MARK SCHAFFER, a Certified Shorthand Reporter and
17  Notary Public of the States of New Jersey and New
18  York, at the offices of Kaplan, Fox & Kilsheimer,
19  P.C., 805 Third Avenue, New York, New York 10022 on
20  Tuesday, October 2, 2007, commencing at 9:11 in the
21  forenoon.
22
23          REPORTING SERVICES ARRANGED THROUGH:
             VERITEXT CORPORATE SERVICES, INC.
24             25B Vreeland Road, Suite 301
             Florham Park, New Jersey 07932
25     Phone:  (800) 567-8658   Fax:  (973) 410-1313

CONFIDENTIAL

---

Page 2

1  A P P E A R A N C E S
2
3
  KAPLAN, FOX & KILSHEIMER, P.C.,
4  BY:  LINDA NUSSBAUM, ESQ.
   805 Third Avenue
5  New York, New York 10022
   lnussbaum@kaplanfox.com
6  Attorneys for Kaiser Foundation Health Plans, the
   Coordinated Plaintiffs and the Witness.
7
8
9  DAVIS, POLK & WARDWELL
   BY:  RAJESH JAMES, ESQ.
10 450 Lexington Avenue
   New York, New York  10017
11 212-450-4384
   rajesh.james@dpw.com
12 Attorneys for Defendants Pfizer, Inc.
   and Warner-Lambert Company
13
14
15 ALSO PRESENT:   ADAM M. RAFSKY, Paralegal
                   JAMES ROBERTS, Videographer
16
17
18
19
20
21
22
23
24
25

---

Page 3

1            I N D E X
2
3  Witness                    Page
4
5  M I R T A   M I L L A R E S      9
6
   DIRECT EXAMINATION BY MR. JAMES        9
7
8  CONTINUED DIRECT EXAMINATION BY MR. JAMES  54
9
   CONTINUED DIRECT EXAMINATION BY MR. JAMES  86
10
11 CONTINUED DIRECT EXAMINATION BY MR. JAMES  121
12
13
14
15
16
17         E X H I B I T S
18
19 Description                Page
20
21
   E-Mail Chain dated 1/17/2000 bearing      27
22 Bates stamps KAIS 005386 through KAIS
   005388 marked Millares-1
23
24 Mid Atlantic State Region Formulary       29
   Process Reference Guide marked Millares-2
25

---

Page 4

1         E X H I B I T S (Continued)
2
3  Description                Page
4
   E-mail dated 7/25/2000 Bearing Bates      47
5  stamps KAIS 005441 through KAIS 005443
   marked Millares-3
6
7  Formulary Update dated March, 2005 marked  51
   Millares-4
8
9  Article Titled Improving Appropriate      58
   Prescription Drug Use to Best Practice:
10 Supporting Evidence-based Drug Use
   bearing Bates stamps KAIS 003368 through
11 KAIS 003375 marked Millares-5
12
   Deposition Notice marked Millares-6       63
13
14 30(b)(6)deposition notice marked          64
   Millares-7
15
16 Gabapentin Formulary History marked       67
   Millares-8
17
18 P&T Review dated September, 1997 marked    68
   Millares-9
19
20 Document Titled Modafinil marked          74
   Millares-10
21
22 Drug Monograph of Neurontin dated June,    74
   1999 marked Millares-11
23
24 Drug Monograph for gabapentin dated       78
   September, 1999 marked Millares-12
25

---

Page 5

1         E X H I B I T S (Continued)
2
3  Description                Page
4
   SCPMG Regional Pharmacy and Therapeutics  81
5  Committee Meeting Minutes dated September
   14, 1999 marked Millares-13
6
7  Drug Monograph For Topiramate dated       83
   March, 2002 marked Millares-14
8
9  Formulary Update dated June 2002 marked    84
   Millares-15
10
11 Executive Summary marked Millares-16      85
12
   Meeting Minutes dated June 26, 2002       87
13 marked Millares-17
14
15 KPSC DUAT Executive Score Card dated      90
   January-September, 2004 marked Exhibit 18
16
17 SCPMG Chiefs of Psychiatry and Addiction  90
   Medicine Meeting dated July 24, 2004
18 Synopsis of Pharmacy's Issues marked
   Millares-19
19
   Document marked Millares-20         103
20
21 DUAT Video Conference on Successful      106
   Practices dated March 12, 2003 marked
22 Millares-21
23
   fifth Annual Region Wide Drug Utilization  111
24 Action Team Off Site Minutes dated March
   4, 2004 marked Millares-22
25

---

2 (Pages 2 to 5)

Page 10

1    A.  Manager, Drug Information Services and
2  Pharmacy Outcomes Research.
3    Q.  Have you been deposed before?
4    A.  Yes.
5    Q.  You may already know these rules, but I'll
6  review them in any case.
7        I need verbal answers, because the court
8  reporter can't take, you know, nonverbal gestures such
9  as nods or other gestures.  Wait until my question is
10 finished and I'll do my best to wait until your answer
11 is completed before I launch into my next question.
12       We can take breaks after a pending question
13 is answered; and if you realize that any answer you
14 have given me is incomplete or incorrect, please let
15 me know.
16       Your lawyer may object to a way that I
17 answer -- that I ask a question.  You can still answer
18 unless she instructs you not to.  You can ask me to
19 rephrase a question if you don't understand it, and we
20 can ask the court reporter to read back a question if
21 you need to hear it again.
22       The relevant period, unless specified, is
23 1994 to present.  If at any time you need greater
24 specificity, please let me know and I'll clarify my
25 question.

Page 11

1        Have you ever given prior testimony on any
2  matter in court, in legislative hearings, by affidavit
3  or through other legal proceedings?
4    A.  Have I ever given testimony in court before?
5    Q.  Yes.
6    A.  I didn't understand the rest of the question.
7    Q.  I guess the full list is in court, in
8  legislative hearings, by affidavit or --
9    A.  Or, okay.
10   Q.  Yes.
11   A.  Yes.
12   Q.  Can you describe those circumstances?
13   A.  I gave testimony in court in a case that
14 involved Kaiser Permanente versus Abbott Laboratories.
15   Q.  And what was -- about how long ago was that?
16   A.  Three years ago.  Give or take.  I don't
17 recall precisely.
18   Q.  Was Kaiser the plaintiff in that case?
19   A.  Yes.
20   Q.  And what was the general subject matter of
21 that case?
22   A.  Basically Abbott Laboratories illegally paid
23 off a generic manufacturer to keep their generic off
24 the market, and Kaiser Permanente was seeking, you
25 know, whatever it's called, was -- well, was -- was

Page 12

1  complaining about that basically, uh-huh.
2    Q.  Has that lawsuit -- lawsuit been resolved?
3    A.  I don't really know.  I think it keeps going
4  on and on, yeah.
5    Q.  Could you walk me through your education,
6  beginning with your -- starting post secondary school,
7  with your college degree.
8    A.  Sure.  Let's see.  Undergraduate at
9  University of South Florida, as well as San Francisco
10 State University.  Received my Doctor of Pharmacy
11 degree from the University of California at San
12 Francisco School of Pharmacy in 1983; postgraduate, 12
13 month residency, also at UC San Francisco, completed
14 in '84; and a second year postgraduate residency in
15 drug information practice completed in 1985.
16   Q.  What was your undergraduate major at
17 University of South Florida and UCSF?
18   A.  It was Premed, Pre Pharmacy.  Sciences.
19   Q.  How many years is a -- is a DPharm (sic)
20 degree?
21   A.  PharmD?
22   Q.  Right.  Sorry.
23   A.  The PharmD degree itself is four years.
24   Q.  And how does that differ from the degree
25 that, you know, you might ordinarily find a pharmacist

Page 13

1  at -- you know, a dispensing pharmacy would have?
2    A.  I think in this day and age, a lot of people
3  have a doctor of pharmacy degree, pharmacists.  It's
4  basically more clinically oriented.
5    Q.  And did you have any particular focus in your
6  studies, you know, when you received your PharmD?
7    A.  I did postgraduate -- post PharmD training in
8  drug information practice.
9    Q.  How is this drug information practice
10 different from other types of pharmacy practice?
11   A.  Drug information specialty focuses on
12 learning about critical analysis of the literature,
13 how to find information, via various resources, and
14 that kind of thing.
15   Q.  And after you completed your second residency
16 in 1984, what was the first -- or what was your next
17 step?
18   A.  I'm sorry.  You said I completed my second
19 residency in '84.  It was '85.
20   Q.  '85.  Sorry.  And what was your next step
21 at that point?
22   A.  I took my first job at the University of
23 Southern California School of Pharmacy as assistant
24 professor of clinical pharmacy, with a practice site
25 at the Kenneth Norris Cancer Hospital.

CONFIDENTIAL

Page 14

1     Q.  What does your work at the cancer hospital
2 involve?
3     A.  Everything that a pharmacist would do in a
4 hospital setting: Reviewing orders, dispensing
5 medications, checking medications, providing
6 consultations.
7     Q.  What subjects did you teach as an assistant
8 professor?
9     A.  Primarily drug information related topics and
10 some, at that time, oncology topics.
11     Q.  Oncology topics?
12     A.  Uh-huh.
13     Q.  How long were you in that role?
14     A.  Three years.
15     Q.  So that takes us up to 1988. Is that -- is
16 that right?
17     A.  Yes.
18     Q.  Did you publish any papers during those three
19 years?
20     A.  I can't recall if I have any publications
21 during those three years.
22     Q.  In 1988, where did you go to next?
23     A.  1988, I went to Kaiser Permanente.
24     Q.  And in what role were you when you first
25 joined Kaiser Permanente?

Page 15

1     A.  I was a Drug Information Specialist.
2     Q.  And what are the responsibilities of that
3 role?
4     A.  I worked in our Drug Information Services
5 Department. There is many, many, many task and duties
6 that encompass that job; primarily formulary
7 management, inquiry consultation services,
8 publications, that sort of thing.
9     Q.  Are the responsibilities you had in 1988
10 similar to the responsibilities that someone in the
11 same role would have today?
12     A.  Approximately, generally.
13     Q.  And how long were you in the role of Drug
14 Information Specialist?
15     A.  Until 1996, I believe.
16     Q.  I forgot to ask you. While you were a Drug
17 Information Specialist, to whom did you report?
18     A.  I believe -- Let's see. My first -- I think
19 my direct boss at the time was Steven Grey.
20     Q.  And what was his role?
21     A.  I don't remember what his title was at the
22 time.
23     Q.  Were there other Drug Information Specialists
24 employed by Kaiser during this interval?
25     A.  Yes.

Page 16

1     Q.  Approximately how many?
2     A.  In -- When I first began in 1988, there was
3 one. Over the years, additional pharmacists were
4 added to the staff.
5     Q.  So that by 1996, we got to ...
6     A.  I don't recall. I would just be guessing. I
7 don't have a year-by-year analysis of that.
8     Q.  And in 1996, what role did you take?
9     A.  I became supervisor of the department.
10     Q.  And approximately how many people reported to
11 you in that capacity?
12     A.  Again, I don't recall specifically how many
13 at that time.
14     Q.  And how long were you in the role of -- of
15 supervisor of that department?
16     A.  It -- It became supervisor of Southern
17 California, and then supervisor for the California
18 regions shortly thereafter, maybe the next year; and
19 then I became manager of the department in 1999.
20     Q.  What's the distinction between supervisor of
21 the department and manager of the department?
22     A.  A manager has more responsibility in terms
23 of, one, the budget; and, two, the vision of the
24 department, overall goals and objectives and vision,
25 basically.

Page 17

1     Q.  Are there presently supervisors that report
2 to you?
3     A.  Yes.
4     Q.  How many supervisors are they -- are there?
5     A.  Four.
6     Q.  And how are their responsibilities allocated?
7     A.  I have different sections of the department,
8 and, therefore, I've divvied up different sections of
9 the department to different -- each of the
10 supervisors.
11     Q.  And how have you done that divvying up?
12     A.  Okay. I have one supervisor who oversees
13 our -- primarily our telephone consultation service,
14 our recalls -- recalls and shortages coverage,
15 medication safety issues, and our student and resident
16 rotations.
17     Q.  What's the name of that supervisor?
18     A.  Ken James.
19     I have another supervisor who oversees our KP
20 HealthConnect Clinical Content Team, Marcia Ding.
21     Q.  Marcia Ding?
22     A.  Uh-huh. I have another supervisor -- I have
23 two supervisors who oversee the formulary management
24 process. One is located in Southern California and
25 the other is located in northern California.

5 (Pages 14 to 17)

# EXHIBIT C

*Member Service Call Center: 1-800-464-4000 (TTY 1-800-777-1370) 7 a.m. to 7 p.m., seven days a week (except holidays)*

**E O C 1**

- Many Plan Facilities have a Member Services Department (refer to *Your Guidebook* for locations in your area)

| City | Street address |
|---|---|
| Fremont | Medical Center: 39400 Paseo Padre Parkway |
| Fresno | Medical Center: 7300 North Fresno Street |
| Hayward | Medical Center: 27400 Hesperian Boulevard |
| Oakland | Medical Center: 280 West MacArthur Boulevard |
| Redwood City | Medical Center: 1150 Veterans Boulevard |
| Richmond | Medical Center: 901 Nevin Avenue |
| Roseville | Medical Center: 1600 Eureka Road<br>Additional Plan Medical Offices: 1001 Riverside Avenue |
| Sacramento | Medical Centers:<br>2025 Morse Avenue<br>6600 Bruceville Road<br>Additional Plan Medical Offices:<br>1650 Response Road<br>2345 Fair Oaks Boulevard |
| San Francisco | Medical Center: 2425 Geary Boulevard |
| San Jose | Medical Center: 250 Hospital Parkway (Santa Teresa Center) |
| San Rafael | Medical Center: 99 Montecillo Road<br>Additional Plan Medical Offices: 1540 5th Avenue |
| Santa Clara | Medical Center: 900 Kiely Boulevard |
| Santa Rosa | Medical Center: 401 Bicentennial Way<br>Additional Plan Medical Offices: 3925 Old Redwood Highway |
| South San Francisco | Medical Center: 1200 El Camino Real |
| Stockton | Plan Hospital: 525 West Acacia Street (Dameron Hospital)<br>Plan Medical Office: 7373 West Lane |
| Turlock | Plan Hospital: 825 Delbon Avenue (Emanuel Medical Center) |
| Vallejo | Medical Center: 975 Sereno Drive |

| City | Street address |
|---|---|
| Walnut Creek | Medical Center: 1425 South Main Street<br>Additional Plan Medical Offices: 320 Lennon Lane<br>Emergency Care is also available at Mount Diablo Medical Center: at 2540 East Street, Concord, which is a Plan Hospital only for Emergency Care |

**Plan Medical Offices in other cities**

| City | Street address |
|---|---|
| Alameda | 2417 Central Avenue |
| Antioch | 3400 Delta Fair Boulevard |
| | 5601 Deer Valley Road |
| Campbell | 220 East Hacienda Avenue |
| Clovis | 2071 Herndon Avenue |
| Daly City | 395 Hickey Boulevard |
| Davis | 1955 Cowell Boulevard |
| Elk Grove | 9201 Big Horn Boulevard |
| Fairfield | 1550 Gateway Boulevard |
| Folsom | 2155 Iron Point Road |
| Gilroy | 7520 Arroyo Circle |
| Livermore | 3000 Las Positas Road |
| Manteca | 1721 West Yosemite Avenue |
| Martinez | 200 Muir Road |
| Milpitas | 770 East Calaveras Boulevard |
| Modesto | 4125 Bangs Avenue<br>Please refer to *Your Guidebook* for other Plan Providers in Stanislaus County |
| Mountain View | 555 Castro Street |
| Napa | 3285 Claremont Way |
| Novato | 97 San Marin Drive |
| Oakhurst | 40595 Westlake Drive |
| Petaluma | 3900 Lakeville Highway |
| Pleasanton | 7601 Stoneridge Drive |
| Rancho Cordova | 10725 International Drive |
| Rohnert Park | 5900 State Farm Drive |
| San Bruno | 901 El Camino Real |
| Selma | 2651 Highland Avenue |
| Union City | 3553 Whipple Road |
| Vacaville | 3700 Vaca Valley Parkway |

## *Your Guidebook*

Plan Medical Offices and Plan Hospitals for your area are listed in greater detail in *Your Guidebook to Kaiser Permanente Services (Your Guidebook)*. *Your Guidebook* describes the types of covered Services that are available from each Plan Facility in your area, because some

Purchaser ID: 50303  Kaiser Permanente for Small Businesses  $15 Copayment Plan
Contract: 1  Version: 4  *EOC* # 1  Effective: 2/1/05–1/31/06
Date: December 3, 2004

Exhibit A

Page 13

# EXHIBIT D

TERRY M. PLANT (Bar No. 2610)
H. JUSTIN HITT (Bar No. 8762)
PLANT, CHRISTENSEN & KANELL
136 East South Temple, Suite 1700
Salt Lake City, Utah  84111
Telephone: (801) 363-7611
Facsimile: (801) 531-9747 (fax)
Email: tplant@pckutah.com
        jhitt@pckutah.com

THOMAS M. FREEMAN (Cal. Bar No. 109309)
MARION'S INN
Admitted Pro Hac Vice
1611 Telegraph Avenue, Suite 707
Oakland, California 94612-2145
Telephone:  (510) 451-6770
Facsimile:  (510) 451-1711
Email: tmf@marionsinn.com

Attorneys for Defendant Kaiser Foundation
Health Plan, Inc., erroneously sued as Kaiser
Permanente and Kaiser Permanente Traditional
Plan for Small Business

## UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ISLAND VIEW RESIDENTIAL TREATMENT CENTER, and Anna L., Thomas L., and Andrew L., <br><br> Plaintiffs, <br><br> v. <br><br> KAISER PERMANENTE, and KAISER PERMANENTE TRADITIONAL PLAN FOR SMALL BUSINESS <br><br> Defendant. | Civil No. 1:09-cv-3-CW <br><br> DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR CHANGE OF VENUE (28 U.S.C. §§ 1404(a)) <br><br> Date: <br> Time: <br> Judge: Hon. Clark Waddoups <br> Ctrm:  TBA <br><br> Accompanying Documents: Notice of Motion; Motion; Declaration of Carlene Valentine; Declaration of Maria Borje-Bonkowski; Request for Judicial Notice |

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   THE NORTHERN DISTRICT OF CALIFORNIA IS BEST-SUITED TO
       ADJUDICATE THIS DISPUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

# TABLE OF AUTHORITIES

## CASES

*Brown Schools, Inc. v. Florida Power Corp.*, 806 F. Supp. 146, 151 (W.D. Texas 1992) . . . . . . 3

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) . . . . . . . 3

*Helder v. Hitachi Power Tools*, 764 F. Supp. 93 (E. D. Mich 1991)  . . . . . . . . . . . . . . . . . . . . 3,4

*Jon N. v. Blue Cross Blue Shield of Mass., Inc.*, 2008 U.S. Dist. LEXIS 35464
   (D. Utah Apr. 29, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Star Stone Quarries, Inc. v Garland*, 300 F Supp 2d 1177 (D.C. Utah, 2003) . . . . . . . . . . . . . . 2

## STATUTES and REGULATIONS

**California**

**Health & Safety Code** § 1340 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Federal**

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 1132(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## INDEX OF EXHIBITS

DECLARATION OF MARIA BORJE-BONKOWSKI

    Exhibit A:    2005 Group Membership Agreement for Lamothe Cleaners

    Exhibit B:    2006 Group Membership Agreement for Lamothe Cleaners

DECLARATION OF CARLENE VALENTINE

    Exhibit A:    Membership history of Thomas L., Anna L., and Andrew L.

REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF THOMAS M. FREEMAN

    Exhibit 1:    http://kepler.sos.ca.gov/list.html

    Exhibit 2:    http://dmhc.ca.gov/library/reports/licensing/licensed.pdf.  Page 16

    Exhibit 3:    Order of November 25, 2008, *Walter B., Amy B., Meghan G ., and Island View Residential Treatment Center. v. Kaiser Foundation Health Plan, Inc.* [1:08-cv-00074]

## I.      INTRODUCTION

This is a coverage action in which Plaintiffs seek recovery of expenses incurred in a Utah residential treatment facility for an out-of-state minor.  Plaintiffs Thomas L.,  Anna L., and Andrew L. ("Andrew L.") residents of Antioch, California, and Island View Residential Treatment Center L.L.C. ("Island View") of Davis County, Utah, have sued Kaiser Foundation Health Plan, Inc. ("Health Plan"), erroneously sued as Kaiser Permanente and Kaiser Permanente Traditional Plan for Small Business.

Plaintiffs' allege that Health Plan improperly denied coverage for the costs of Andrew L.'s in-patient care at Island View under the terms of a group membership agreement for the provision of health care services. (Complaint ¶¶ 51-56).  Plaintiffs seek judgment for their unpaid expenses and interest, as well as statutory claims for attorneys' fees and costs, pursuant to 29 U.S.C. § 1132(g).

In the interest of justice, and for the convenience of the parties and witnesses, Health Plan now moves pursuant to 28 U.S.C. § 1404(a) to transfer venue of this proceeding to the United States District Court for the Northern District of California.

## II.     STATEMENT OF FACTS

Health Plan is a non-profit California health maintenance organization licensed under the Knox-Keene Health Care Service Plan Act ("Knox-Keene Act"), Cal. Health & Saf. Code § 1340 *et seq.* (See Request for Judicial Notice, ¶ 2)  Health Plan arranges to furnish health care services to its subscribers and their dependents in accordance with the terms of written medical and hospital service agreements entered into between Health Plan and the subscribers, their employers, and other organizations. (Borje-Bonkowski Decl. ¶¶ 2 & Exhs. A & B.)

Health Plan is a California corporation, with its primary place of business located at 1 Kaiser Plaza, Oakland, CA, 94612. (See Request for Judicial Notice, ¶ 1)  Health Plan operates in nine states (California, Colorado, Georgia, Hawaii, Maryland, Ohio, Oregon, Virginia, and

Washington) and the District of Columbia. (Valentine Decl. ¶ 3)  Health Plan does conduct any business in, or have any connection to, the State of Utah. (*Id.*)

Thomas L. became a Health Plan subscriber by virtue of a group membership agreement between his employer, Lamothe Cleaners, and Health Plan. (Complaint ¶ 3)  Andrew L. became a Health Plan member by way of his father's subscription.  (*Id.*)  Thomas L., Anna L,. and Andrew L. all reside in Antioch, California. (*Id.* at ¶ 1).  During 2004-2006, Andrew L. allegedly suffered from various mental health disorders requiring medical treatment.  (*Id.* at ¶¶ 11-16).  On November 10, 2005, Thomas L. and Anna L. enrolled Andrew L. in Island View, a residential in-patient care facility in Davis County, Utah. (*Id.* at ¶ 24 ).  Thomas L. and Anna L. claim to have incurred expenses in connection with Andrew L.'s treatment. (*Id.* at ¶ 48 ).

### III.   THE NORTHERN DISTRICT OF CALIFORNIA IS BEST-SUITED TO ADJUDICATE THIS DISPUTE

The factual circumstances and basic legal issues alleged in the Complaint have little, if any, connection to the State of Utah, or the District of Utah.  Plaintiffs allege breach of a health services agreement and various unspecified provisions of California law. (Complaint ¶ 44, 52)  The witnesses and evidence necessary to adjudicate this dispute over coverage for health benefits are all located in the Northern District of California. (Valentine Decl. ¶ 5)  All of the individual Plaintiffs reside in the Northern District of California, and all of the evidence regarding the disputed coverage decisions, claims for benefits and appeals, are located in Health Plan's Northern California offices. (*Id.*)  Thus, judicial efficiency, and the convenience of the parties and witnesses, weigh heavily in favor of a change of venue to the Northern District of California, the district best-suited to adjudicate the dispute. (*See Star Stone Quarries, Inc. v Garland*, 300 F Supp 2d 1177 (D.C. Utah, 2003) [Utah district court granted defendants' motion to transfer matter to district court in Georgia, even though Utah court had jurisdiction over matter, where majority of witnesses and evidence were located in Georgia, and property that was subject of

contract was located in Georgia].

This Court previously has rejected Island View's arguments for venue in the District of Utah in two analogous ERISA actions.  In *Jon N. v. Blue Cross Blue Shield of Mass., Inc.*, 2008 U.S. Dist. LEXIS 35464 (D. Utah Apr. 29, 2008)  Island View pursued similar claims against a Massachusetts health insurance company for the treatment of a minor from Massachusetts whose parents attempted to assign benefits to Island View, despite a non-assignment provision in their agreement.  The Court found Island View lacked standing based on the lack of a valid assignment and granted the defendant health insurer's motion to dismiss. (*Id.* at 6-7).  The Court reasoned that since "Island View is not a proper party to this ERISA action and it is the only party with ties to Utah" (*Id.* at 9), it would be "fundamentally unfair to proceed with the case in Utah when there are no ties to this State." (*Id.*)  Here, the situation is exactly the same.  Island View is not a proper plaintiff in this action, and it would be unfair to proceed in Utah when the venue best-suited for adjudication of the dispute between the individual plaintiffs and Health Plan is the Northern District of California.

Similarly, in *Walter B., Amy B., Meghan G ., and Island View Residential Treatment Center. v. Kaiser Foundation Health Plan.*, [1:08-cv-00074] (See Request for Judicial Notice, ¶ 3 and Ex. 3 ), Island View pursued virtually identical ERISA based claims against Health Plan with respect to the treatment of another Northern California  subscriber's dependant child at Island View's facility.  Judge David Sam dismissed Island View's claims for lack of standing and granted Health Plan's motion for change of venue. (*Id.*)  Here, just as in *Meghan G.*, Island View simply has no standing to assert claims under a Health Plan member's policy agreement.

Furthermore, venue can only be appropriate where the alleged breach of the plan occurs--either where the decision was made to deny benefits or where benefits of the plan are to be received. *(See Brown Schools, Inc. v. Florida Power Corp.*, 806 F. Supp. 146, 151 (W.D. Texas 1992) (An assignee stands in the shoes of the assignor. Therefore, the breach occurs at the place where the policy holder resides and would have received benefits.))  In *Helder v. Hitachi*

*Power Tools*, 764 F. Supp. 93 (E. D. Mich 1991), the court states that "[t]he alleged breach took place either where the decision concerning plaintiff's request was made ... or where the benefits or summary plan description was to be received by [the subscriber] plaintiff." (*Id.* at 95.)

Since Island View is not a proper party to this ERISA action, and no other party has any connections to Utah, the court should transfer this case to the Northern District Of California under 28 U.S.C. § 1404(a).  Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

**IV.    CONCLUSION**

On the basis of the foregoing, and in the interests of justice and the convenience of the parties and witnesses pursuant to 1404(a), Title 28, United States Code, Defendant respectfully requests that this Court transfer this action to the Northern District of California.

Respectfully submitted,

PLANT, CHRISTENSEN & KANELL

Dated: February 27, 2009          By:_____

H. Justin Hitt

Attorneys for Kaiser Foundation
Health Plan, Inc.

MARION'S INN

*Thomas M. Freeman*  Digitally signed by Thomas M. Freeman
                     DN: cn=Thomas M. Freeman, o=Marion's
                     Inn, ou, email=tmf@marionsinn.com,
                     c=US
                     Date: 2009.02.26 17:55:14 -08'00'

Dated: February 26, 2009          By _____

Thomas M. Freeman

Attorneys for Kaiser Foundation
Health Plan, Inc.

# EXHIBIT E

TERRY M. PLANT (Bar No. 2610)
H. JUSTIN HITT (Bar No. 8762)
PLANT, CHRISTENSEN & KANELL
136 East South Temple, Suite 1700
Salt Lake City, Utah 84111
Telephone: (801) 363-7611
Facsimile: (801) 531-9747 (fax)
Email: tplant@pckutah.com
Email: jhitt@pckutah.com

THOMAS M. FREEMAN (Cal. Bar No. 109309)
MARION'S INN
Admitted Pro Hac Vice
1611 Telegraph Avenue, Suite 707
Oakland, California 94612-2145
Telephone:  (510) 451-6770
Facsimile:  (510) 451-1711
Email: tmf@marionsinn.com

Attorneys for Defendant Kaiser Foundation
Health Plan, Inc., erroneously sued as Kaiser
Permanente and Kaiser Permanente Traditional
Plan for Small Business

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ISLAND VIEW RESIDENTIAL TREATMENT CENTER, and Anna L., Thomas L., and Andrew L., | Civil No. 1:09-cv-3-TS |
| Plaintiffs, | DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CHANGE OF VENUE (28 U.S.C. §§ 1404(a)) |
| v. | |
| KAISER PERMANENTE, and KAISER PERMANENTE TRADITIONAL PLAN FOR SMALL BUSINESS | Date:  TBA<br>Time:  TBA<br>Judge: Hon. Clark Waddoups<br>Ctrm:  TBA |
| Defendants. | |

## I.   INTRODUCTION

Title 28 United States Code Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). As discussed in Defendant Kaiser Foundation Health Plan, Inc.'s ("KFHP") original motion, the witnesses and evidence necessary to adjudicate this dispute over coverage for health benefits are all located in the Northern District of California. (Valentine Decl. ¶ 5.) All of the individual Plaintiffs reside in the Northern District of California, and all of the evidence regarding the disputed coverage decisions, claims for benefits and appeals, are located in Health Plan's Northern California offices. (*Id.*) Thus, judicial efficiency, and the convenience of the parties and witnesses, weigh heavily in favor of a change of venue to the Northern District of California, the district best-suited to adjudicate the dispute. (*See Star Stone Quarries, Inc. v Garland*, 300 F Supp 2d 1177 (D Utah 2003).)

## II.   THERE ARE NO REMAINING CONNECTIONS TO UTAH AS PLAINTIFFS HAVE CONCEDED THAT ISLAND VIEW'S CLAIMS SHOULD BE DISMISSED

As discussed in KFHP's original motion and its motion to dismiss, Plaintiff Island View Residential Treatment Center ("Island View") lacks standing to bring a claim against KFHP in this action. Accordingly, Island View is not a proper plaintiff in this case and should be dismissed. Island View is the only party located in Utah. Because Island View is not a proper party to this ERISA action, and no other party has any connections to Utah, the court should transfer this case to the Northern District of California under 28 U.S.C. § 1404(a).

///

///

///

///

III.   **INCONVENIENCE TO ISLAND VIEW'S COUNSEL IS NOT SUFFICIENT GROUNDS FOR THE CASE TO REMAIN IN UTAH**

It is clear from *Jon N. v. Blue Cross Blue Shield of Mass., Inc.*, 2008 U.S. Dist. LEXIS 35464 (D. Utah Apr. 29, 2008), that the law firm retained by Plaintiffs has unsuccessfully attempted to bring ERISA cases in the district court in Utah on behalf of Island View in the past, although no parties other than Island View and its attorneys were located in Utah. (*See also* The Hon. David Sam's signed Order of November 25, 2008, in the matter of *Walter B., Amy B., Meghan G., and Island View Residential Treatment Center. v. Kaiser Foundation Health Plan, Inc.* [1:08-cv-00074], attached as Ex. 2 to the Decl. of Thomas M. Freeman and the Request for Judicial Notice in Support of Defendant's Motion to Dismiss.)   Plaintiffs have relied heavily upon the concept that "plaintiffs choice of counsel" is located in Utah as a basis for forum selection.   Convenience of counsel is immaterial or should not be considered as factor in determining whether transfer is proper under 28 U.S.C. § 1404(a). *Chicago, R. I. & P. R. Co. v. Igoe*, 220 F.2d 299, 303 (7th Cir. 1955) [§ 1404(a) does not provide that the convenience of counsel is a factor to be considered]; *Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043, 1047 (3rd Cir. 1972) [the convenience of counsel is not a factor to be considered]; *Revson v. Claire's Stores, Inc.*, 120 F. Supp. 2d 322, 328 (S.D.N.Y. 2000) ["In all the circumstances, it seems relatively clear that this action has been brought in New York for the convenience of counsel rather than because it was more convenient for the litigants and witnesses. The interests of those companies and individuals would be served better by a trial in Florida than by one in New York."].   The fact that Plaintiffs' counsel resides in Utah is not a legitimate reason to deny KFHP's motion to transfer.

IV.   **PLAINTIFFS' ARGUMENTS AGAINST TRANSFER ARE RED HERRINGS THAT SHOULD BE DISREGARDED**

As discussed in *Jon N.*, venue is appropriate where the alleged breach of the plan

occurs--either where the decision was made to deny benefits or where benefits of the plan are to be received. An assignee stands in the shoes of the assignor. Therefore, the breach occurs at the place where the policy holder resides and would have received benefits. *See Brown Schools, Inc. v. Florida Power Corp.*, 806 F. Supp. 146, 151 (W.D. Texas 1992); *Helder v. Hitachi Power Tools*, 764 F. Supp. 93 (E. D. Mich 1991).[1]   As in *Jon N.*, these cases support a finding that the breach alleged by Plaintiffs occurred in California, where the Health Plan subscriber, Walter B., and his dependent step-daughter member, Meghan G. live and would have received benefits. Plaintiffs argument that the district court in Utah is an appropriate venue because KFHP "reasonably contemplated that Kaiser will be doing business in the State of Utah" is unsupported by any facts. Furthermore, this argument  is not relevant to the issue of *convenience,* that is the basis for Defendant's motion . (Plaintiffs' Opp. at 3.)

Plaintiffs also fail in their attempt to dismiss KFHP's proof that the evidence and relevant witnesses are all located in the Northern District of California.  Plaintiffs' only response is an unsupported contention that "the nature of ERISA cases" will not necessitate discovery except with regard to witnesses that are in Utah regarding care and treatment. Plaintiffs' argument is insufficient to controvert the evidence offered by KFHP that the documentary evidence, witnesses and proper parties are all located in northern California.

The case law relied upon by Plaintiffs is readily distinguishable from the instant case.  In *Brightway Adolescent Hospital v. Haw. Mgmt. Alliance, Ass'n*, 139 F.Supp.2d 1220, 1225-26 (D. Utah 2001), the court decided not to transfer venue when the treatment facility, a named and proper plaintiff, was no longer in operation and had limited resources.  Such are not the facts in this case.  Judge Sam, the author of the *Brightway* decision, recognized this factual distinction and the inapplicability of *Brightway*, when he ordered the transfer of *Walter B., Amy B., Meghan G ., and Island View Residential Treatment Center. v. Kaiser Foundation Health Plan, Inc.*

---

[1]      Plaintiffs apparently seek to avoid the direct impact of this holding by avoiding any express allegation of assignment of benefits from the individual plaintiffs to Island View in their complaint.  Island View fails, however, to allege an alternative basis for a claim against KFHP.

[1:08-cv-00074].  Even a cursory review of the complaint in that case demonstrates it is virtually identical to the facts here.  Transfer of the action is therefore appropriate.

Similarly, the facts in *Briesch v. Automobile Club of So. Cal.*, 40 F.Supp.2d 1318, 1322 (D. Utah 1999) are readily distinguishable and therefore compel a different result.  In *Briesch* venue was not transferred because the defendant failed to provide supporting affidavits or other evidence demonstrating the inconvenience of the Utah forum.  Here, in contrast, KFHP has provided supporting declarations and exhibits from Maria Borje-Bonkowski and Carlene Valentine as evidence demonstrating the inconvenience to the parties and witnesses if this case is litigated in Utah.  Accordingly, transfer of this action to the Northern District of California is warranted and supported.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## V.    CONCLUSION

On the basis of the foregoing, and in the interests of justice and the convenience of the parties and witnesses pursuant to 1404(a), Title 28, United States Code, Defendant respectfully requests that this Court transfer this action to the Northern District of California.

Respectfully submitted,

PLANT, CHRISTENSEN & KANELL

Dated: March 24, 2009                 By: _____

H. Justin Hitt

Attorneys for Kaiser Foundation
Health Plan, Inc.

MARION'S INN

Dated: March 24, 2009                 By _____

Thomas M. Freeman

Attorneys for Kaiser Foundation
Health Plan, Inc.

# EXHIBIT F

*Kaiser Permanente Leaving Northeast Associated Press Online June 19, 1999; Saturday*

Copyright 1999 Associated Press
All Rights Reserved
Associated Press Online

**June** 19, 1999; Saturday 11:20 Eastern Time

**SECTION:** Financial pages

**LENGTH:** 356 words

**HEADLINE: Kaiser Permanente Leaving Northeast**

**BYLINE:** JENNIFER JORDAN

**DATELINE:** LATHAM, N.Y.

**BODY:**
After losing $90 million in the Northeast in 1998, the big HMO Kaiser Permanente has decided to pull out of the region by year's end.

The California-based health maintenance organization has been discontinuing operations in other places around the country as the entire HMO industry struggles with rising health care costs.

Friday's announcement means the company will abandon 35 offices serving 575,000 patients in New York, Connecticut, Massachusetts, and Vermont . The HMO employs 600 doctors and health providers and about 3,600 administrative employees in the region.

An extremely competitive market is to blame, according to Kaiser.

"It's difficult to have rates actually cover the costs when you're locked in with other organizations of the same size," said spokesman Tim Riley.

HMOs all over the country have been shedding Kaiser's clinic-based model around which the industry was originally formed. California-based Kaiser is one of the last HMOs to still maintain clinics that directly employ doctors.

Most HMOs in the Northeast operate under a more loosely drawn network of independent doctors who contract with the HMO.

The trade organization New York Health Plan Association said that costly mandates in New York took their toll on Kaiser and said the decision "should not raise any concern about the health of the managed care industry."

However, Kaiser is losing money overall and raising its rates to try and restore its financial health. Kaiser is a non-profit corporation, but competes with many for-profit companies.

In Connecticut last year, the company lost more money than any other HMO in the state. In February, the company announced it would lay off 109 workers in New York as four offices were closed.

Earlier this month, the company said it intended to sell all its North Carolina operations, with 120,000 patients. It is also sold its Dallas-Fort Worth operation with 130,000 members

Case 1:04-cv-10981-PBS   Document 2195-2   Filed 12/04/09   Page 31 of 33

Companies that now contract with the HMO include General Electric and grocery chain Price Chopper.

# EXHIBIT G

*Attorney general warns Kaiser Permanente;BUSINESS REGION BRIEFS The Boston Globe August 13, 1999, Friday*

Copyright 1999 Globe Newspaper Company
The Boston Globe

**August** 13, 1999, Friday ,City Edition

**SECTION:** ECONOMY; Pg. C5

**LENGTH:** 318 words

**HEADLINE: Attorney general warns Kaiser Permanente;**
BUSINESS REGION BRIEFS

**BYLINE:** By Ale Pham

**BODY:**

Attorney General Thomas F. Reilly served notice to Kaiser Permanente yesterday that he will be closely watching the California health insurer's Jan. 1 exit from the Bay State. In June, Kaiser announced plans to pull out of five states, including Massachusetts, where it covers about 79,000 members, 5,600 of them senior citizens enrolled in Kaiser's Medicare health maintenance organization. The move has angered consumer advocates because it will leave seniors in Western Massachusetts, where Kaiser has a big presence, with no HMO options. While it is unlikely that Reilly can force Kaiser to continue to do business in the state, he made it clear that he could make their departure uncomfortable. In a letter obtained by The Boston Globe, Reilly accused Kaiser of not giving Massachusetts adequate notice about its withdrawal from the market. If held to the letter of the law, Kaiser could be forced to remain in the state's small group and individual health insurance market for a year beyond their scheduled departure date. Kaiser maintained it has complied with all laws. "We believe that we are in compliance in every way," said Beverly Hayon, national spokeswoman for Oakland-based Kaiser, which covers more than 8 million people in 17 states. "We will certainly work with the attorney general's office and cooperate to answer any questions they may have." Other issues Reilly intends to address, according to the letter, include the proposed transfer of Kaiser's Massachusetts business to Health New England. Because Kaiser is a nonprofit company and Health New England is a for-profit firm, the attorney general has the duty to protect the charitable assets of a nonprofit. In addition, Reilly said he will look at the antitrust implications of Kaiser's proposal to hand its business over to Health New England, to make sure competition will remain vital once Kaiser leaves the market.

**LOAD-DATE:** August 13, 1999