UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ------------------------------------------------- x<br>NEURONTIN MARKETING, SALES PRACTICES, AND<br>PRODUCTS LIABILITY LITIGATION<br><br>------------------------------------------------- x<br>THIS DOCUMENT RELATES TO:<br><br><br><br>------------------------------------------------- x<br>HARDEN MANUFACTURING CORPORATION;<br>LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,<br>dba BLUECROSS/BLUESHIELD OF LOUISIANA;<br>INTERNATIONAL UNION OF OPERATING ENGINEERS,<br>LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL<br>52 HEALTH BENEFITS TRUST; GERALD SMITH; and<br>LORRAINE KOPA, on behalf of themselves and all others<br>similarly situated, v. PFIZER INC. and WARNER-LAMBERT<br>COMPANY.<br><br>------------------------------------------------- x<br>THE GUARDIAN LIFE INSURANCE COMPANY OF<br>AMERICA v. PFIZER INC. and<br>AETNA, INC. v. PFIZER INC.<br><br>------------------------------------------------- x | :  MDL Docket No. 1629<br>:<br>:  Master File No. 04-10981<br>:<br>:  Judge Patti B. Saris<br>:<br>:  Magistrate Judge Leo T.<br>:  Sorokin<br>: |

**DEFENDANTS' NOTICE OF SUPPLEMENTAL
AUTHORITY IN SUPPORT OF SUMMARY JUDGMENT**

Defendants respectfully submit for the Court's consideration the following recent decision that bears upon Defendants' pending motion for summary judgment: *Hood, ex rel. Mississippi v. Eli Lilly & Co.* (In re Zyprexa Prods. Liab. Litig.), ___ F. Supp. 2d ___, 2009 WL 4260857, at *3 (E.D.N.Y. Dec. 1, 2009) (Weinstein, J.). A copy of the decision is attached as Exhibit A.

**INTRODUCTION**

In *Hood*, Judge Weinstein dismissed almost all of the claims asserted by the State of Mississippi, in its capacity as a third-party payor ("TPP") of medical services. Noting that "statistical evidence relating to the population of patients who received Zyprexa in Mississippi"

was "[c]rucial to Mississippi's claims," *id.* at *3, Judge Weinstein held that aggregate proof could not be used to establish reliance, loss causation or injury with respect to almost all of the State's claims.

This decision, coming from one of the leading judicial proponents of the use of aggregate proof, is significant for the instant litigation in several respects:

*First*, Judge Weinstein recognized that claims by a TPP are the functional equivalent of a class action. If aggregate proof could not be used to establish the claims of individual consumers (as this Court has held), then it could not be used to support the aggregation of such claims by a single TPP.

*Second*, Judge Weinstein recognized that almost every court to have considered the issue (including numerous appellate courts) has held that individual proof was required to establish reliance, loss causation and injury. The only possible exceptions to this rule are price inflation cases (a theory not alleged here) where a substantial record based upon discovery of actual individual transactions supported the validity of the reliance presumption (a record that does not exist here). Even as to this exception, Judge Weinstein acknowledged that there was substantial doubt of its viability.

*Third*, Judge Weinstein found that any attempt to predicate punitive damages on aggregate proof presented significant constitutional concerns.

*Finally*, Judge Weinstein recognized that where the ability to use aggregate proof is a pivotal issue in the case, it should be decided prior to trial. Having dismissed all of the State's claims except those predicated on a theory of price inflation, he stayed the litigation even as to this last remaining claim. As he stated: "[T]here is little point in allowing the present litigation to proceed while review of a pivotal issue is pending and the result is in doubt." *Id.* at *62.

Applied to the instant action, Judge Weinstein's careful analysis compels the conclusion that Defendants' motion for summary judgment should be granted. At the very least, it makes clear that this threshold issue must be decided before this action is tried. The Parties must know the extent to which aggregate proof can be used at trial. Not only do the Parties need the benefit

of this Court's guidance on this question, the issue is so central to the Plaintiff's claim, and such a departure from the majority rule favoring individual proof of reliance, loss causation and injury, that Plaintiffs should not be allowed to proceed on this theory until after it has been certified to the First Circuit for review.

## DISCUSSION

### I. The Overwhelming Majority of Courts Have Held that Aggregate Proof Cannot Be Used to Establish Reliance, Loss Causation and Injury

Judge Weinstein began his legal analysis with a discussion of what he characterized as the Individualized Proof Rule, the majority rule that requires individual evidence of reliance, loss causation and injury. Significantly, as an initial matter, Judge Weinstein recognized that the State's claims were an attempt to aggregate thousands of individual claims arising out of different transactions, functionally no different than a class action. As the court explained:

> Conceptually and structurally . . . the State's suit is predicated on numerous acts of fraud and other delicts alleged to have affected a statewide population of prescribing physicians and patients. In effect, Mississippi's individual claim is structured on the foundation of many thousands of conceptually separate claims, coordinated and aggregated by the State for purposes of recovering a portion of its overall Zyprexa-related costs through its Medicaid reimbursement program. The court will refer to an individual claim structured in this way as a *"structural" class action*.

*Hood*, 2009 WL 4260857, at *35 (emphasis in original).

In other words, if the TPPs' individual policyholders could not bring a class action based upon aggregate proof of reliance, causation and injury, then neither can a TPP rely upon aggregate proof to support its claims. Thus, the reasons that lead this Court to conclude that a consumer class action cannot be certified[1] also preclude the use of aggregate evidence by the TPPs. Indeed, Judge Weinstein cited with approval this Court's class certification decision, stating:

> *In re Neurontin Marketing, Sales Practices, and Liab. Litig.*, 257 F.R.D. 315, 322-27 (D. Mass. 2009), concerned a class action on behalf of patients and

---

[1] *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315 (D. Mass. 2009).

third-party payors against the manufacturer of Neurontin, an epilepsy drug. It was alleged that the defendant improperly marketed Neurontin for off-label uses. *After a thoughtful and thorough discussion of the significance of McLaughlin, St. Jude, and related Individualized Proof Rule cases, class certification was denied on predominance grounds because individualized issues of reliance and causation overwhelmed common questions. The court considered but rejected the use of statistical evidence provided by Dr. Rosenthal – the same expert relied upon by the Third-Party Payors and Mississippi in the Zyprexa cases.*

*Id.* at *47 (citations omitted, emphasis added).

So, too, in the case before it, Judge Weinstein concluded that the court was bound to follow the Individualized Proof Rule, stating: "The Individualized Proof Rule, in general, bars the use of generalized or aggregate proof outside of the securities fraud context to establish reliance, loss causation, or injury." *Id.* at *54. As the court explained:

> Despite this court's view to the contrary, appellate class action decisions have held that issues of reliance, loss-causation, and injury are inappropriate for aggregation, due to the need to prove these elements on an individualized basis for each victim or injured party.
>
> Recent attempts to overcome the individualized proof requirement through expert analyses using advance statistical methods have been rejected by some intermediate courts of appeal, notably by the Court of Appeals for the Second Circuit in *McLaughlin* . . . and in several subsequent decisions relying on *McLaughlin*.
>
> Together, this large body of case law constitutes a now widely held view of aggregate litigation, particularly in the products liability or fraud context, that statistical proof is in most instances insufficient to show reliance, loss-causation, or injury on the part of individual class members or claimants.

*Id.* at *35-36 (citations omitted). In support of this statement, Judge Weinstein cited the following decisions:

- *In re St. Jude Med., Inc.*, 522 F.3d 836 (8th Cir. 2008),
- *Fotta v. Trustees of United Mine Workers of Am.*, 319 F.3d 612 (3d Cir. 2003),
- *Doe v. Chao*, 306 F.3d 170 (4th Cir. 2002),
- *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545 (5th Cir. 2003),
- *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006),
- *Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004), and

- *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330 (11th Cir. 2006).

*Hood*, 2009 WL 4260857, at *35-43.

Judge Weinstein next discussed Second Circuit precedent, noting that "the Court of Appeals . . . has largely rejected the use of aggregate proof to show reliance, loss causation, or injury in mass tort cases." *Id.* at 44. Discussing *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.*, 344 F.3d 211 (2d Cir. 2003), *Empire Healthchoice, Inc. v. Philip Morris USA Inc.*, 393 F.3d 312 (2d Cir. 2004), and *In re Simon II Litigation*, 407 F.3d 125 (2d Cir. 2005),[2] Judge Weinstein concluded:

> These decisions, together with *McLaughlin*, suggest that the Court of Appeals for the Second Circuit's skepticism about the utility of aggregate proof, and in particular statistical evidence, in obtaining justice for large numbers of mulcted individuals applies across-the-board to all types of cases not involving securities fraud. These decisions in effect rejected any fluid recovery theory to avoid the problems posed by the need for individualized proof of damages.

*Hood*, 2009 WL 4260857, at *46.

Except for one narrow claim not asserted in the instant action (*see* Part II, *infra*), Judge Weinstein made clear that all of the State's claims were subject to the "Individualized Proof Rule." *Id.* at *35. Significantly, in support of its aggregate model, Mississippi relied upon expert analysis from Dr. Abramson (one of Plaintiffs' experts in this case) "that Lilly's alleged misconduct would have 'had a substantial effect on the prescribing behavior of doctors'" and that Lilly's conduct increased the number of Zyprexa prescriptions written. *Id.* at *57 (citation omitted). In addition, Mississippi also offered testimony from Dr. Rosenthal (the lynchpin of Plaintiffs' aggregate model in this case) "estimat[ing] 'the number of prescriptions that were caused by Lilly's allegedly illegal promotion of Zyprexa for unapproved uses.'" *Id.* (citation omitted). Rejecting both, Judge Weinstein held:

---

[2] *See Hood*, 2009 WL 4260857, at *44-47.

>      Under the Individualized Proof Rule, neither expert's resulting conclusions may
> be used to establish reliance.
>
>      . . . .
>
>      In order for the State to recover damages under its [product liability]
> theory, each prescribing decision and each patient's injuries would have to be
> considered individually. The many summary judgment motions already decided
> by the court . . . demonstrate that each case is fact-specific, making categorization
> almost impossible. In the absence of such individualized showings, the [product
> liability] claim cannot survive summary judgment.

*Id.*

Judge Weinstein applied the same reasoning to the State's claims seeking to recover the cost of prescriptions that the State contended were not medically necessary. Judge Weinstein's reasons for rejecting aggregate proof of this claim apply with equal force to Plaintiffs' arguments that the Neurontin prescriptions for which they seek to recover would not have been prescribed absent alleged fraudulent marketing. *See id.* at *59-61. Judge Weinstein expressly held that whether alternative medications were less effective (the theory asserted by the Coordinated TPPs in this case) had to be established with patient/physician specific evidence:

>      Several of the criteria for "medical necessity" are context-sensitive, rather
> than one-size-fits-all. Because each patient presents a unique set of symptoms
> and indications, and each patient may respond differently to any given medication,
> it requires a highly specific, individual analysis to determine, for example,
> whether there exists for a given patient another "effective and more conservative
> or substantially less costly treatment." "Due to the illnesses' heterogeneity,
> different people respond differently to different psychotropic drugs. Which drug
> will work best for a new patient is often unknown until he or she tries it; thus
> clinical decision-making about psychotropic medications almost inevitably is
> based on "trial and error."

*Id.* at *59. Accordingly, Mississippi's reliance upon aggregate proof to support its claims based upon the alleged availability of cheaper, alternative recoveries was barred regardless of whether it was premised on unjust enrichment or violation of Mississippi's consumer protection statute. *See id.* at *57-59.

Judge Weinstein also dismissed Mississippi's common law fraud claims based upon allegedly fraudulent, off-label marketing. Once again, the State advanced theories similar to

those relied upon by the Plaintiffs here.  For example, the State argued that Lilly implemented a marketing plan based upon promotion of off-label uses, that it trained its sales force to convince physicians to prescribe Zyprexa for mood disturbances, that it misrepresented Zyprexa's safety and efficacy, and that it suppressed negative information about Zyprexa.  *See id.* at *61.  Dismissing such claims to the extent they were not based upon a price inflation theory, Judge Weinstein stated:

> All of the theories advanced under both claims have in common that they require a showing of reliance on Lilly's acts or omissions across the heterogeneous population of Mississippi patients and prescribing physicians, either in deciding to purchase Zyprexa at the market price, or in deciding to administer Zyprexa at all. They are subject to the Individualized Proof Rule regarding proof of reliance by aggregate evidence.

*Id.* at *62.  For the same reason, the TPPs' attempt to aggregate disparate transactions cannot withstand scrutiny.  Absent transaction specific evidence (of which there is none), these claims must be dismissed.

## II. The Narrow and Doubtful Exception Recognized by Judge Weinstein Does Not Apply to Plaintiffs' Claims

Judge Weinstein noted that one appellate court had approved the use of aggregate proof: *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 582 F.3d 156 (1st Cir. 2009). *See Hood*, 2009 WL 4260857, at *47-48.  Judge Weinstein's analysis of the First Circuit's decision makes clear that it is inapplicable to the instant litigation.  Significantly, the First Circuit noted that the defendants were provided ample opportunity to depose TPPs other than the named plaintiff and, nonetheless, could not marshal specific evidence establishing variations in class member knowledge or expectations.  *See Hood*, 2009 WL 4260857, at *49 (citing *In re AWP*, 582 F.3d at 196.)  The First Circuit further observed that the voluminous record developed showed "strikingly consistent" evidence as to the TPPs.  *See Hood*, 2009 WL 4260857, at *49 (quoting *In re AWP*, 582 F.3d at 196-97.)  Reconciling *In re AWP* with the majority Individualized Proof Rule, Judge Weinstein explained:  "The Court of Appeals for the First Circuit emphasized that factual inquiries into the circumstances that might have differentiated

class members had revealed little significant difference between them." *Hood*, 2009 WL 4260857, at *51.

In contrast to *In re AWP*, this Court does not have an extensive record demonstrating consistency among the prescribing physicians.[3] Instead, the testimony of prescribing physicians has only highlighted individual variations and contradicted the assumptions made by Plaintiffs' experts. *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 330 (D. Mass. 2009).

Analyzing the record before him in *Zyprexa*, Judge Weinstein concluded that use of the aggregate model could not be extended beyond the narrow price inflation theory described by him in his class certification opinion. *See Hood*, 2009 WL 4260857, at *52-53. As the court stated:

> The Third-Party Payors certification decision found that the Individualized Proof Rule did not apply where aggregate proof was used to establish an inflated price and resulting damages. An inflated price is paid by, and is detrimental to, *all* market participants, regardless of their knowledge or individual circumstances, obviating the need for separate proof with respect to each individual participant.

*Id.* at *54. Even as to the limited purpose for which Judge Weinstein permitted the use of aggregate evidence by the *Zyprexa* class plaintiffs, he noted that there was doubt as to its legal viability: "[I]n light of the majority of the Courts of Appeals' hostility to the use of aggregate proof, as demonstrated in *McLaughlin* and other decisions . . . , there is some doubt concerning the appellate court's willingness to accept statistical evidence of the kind that is necessary to the success of the Third-Party Payors' claims." *Id.* at *54. Given such doubt, Judge Weinstein stayed the litigation until the Second Circuit decided this "pivotal issue." *Id.* at *62.

In addition, Judge Weinstein acknowledged that he was essentially permitting the plaintiffs to proceed on a fraud-on the-market theory as to their price inflation claim when he

---

[3] For purpose of comparing the *AWP* class action to the "structural" class action represented by the TPPs' aggregate claims in this case, the absent class members in *In re AWP* occupy the position held by the prescribing physicians here. It is the third-party reliance of the prescribing physicians upon which the TPPs' claims are based.

reasoned that he was allowing a "*Basic*-style presumption of reliance" as to that theory. *Id.* at *52. In contrast, this Court has expressly rejected any fraud-on-the-market theory. *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 112 (D. Mass. 2009).

Moreover, the Coordinated and Class TPPs have repeatedly disavowed any price inflation claim. (Dkt. 101, Joint Mem. of Class and Coordinated Pls. in Opp. to Defs. Mot. to Dismiss at 13 ("Plaintiffs advance no such 'price inflation' theory here."); Dkt. 1184, Reply Mem. in Supp. of Renewed Mot. for Class Cert. at 20 n.27 ("Plaintiffs advance no such theory" regarding a purported "'effect on pricing of the marketing campaign in which defendant engaged.'"); *see also In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 324 (D. Mass. 2009) (observing that the present case "does not involve price inflation."); *id.* at 326 n.7 ("Judge Weinstein, in an opinion [*Zyprexa*] published after *McLaughlin*, permitted a presumption of exposure and reliance akin to the fraud-on-the-market theory in a pharmaceutical price inflation case. As the instant case does not involve price inflation, that opinion has no direct bearing on the Court's decision.") (citation omitted).)

Accordingly, the only theory that Judge Weinstein believed was even potentially subject to aggregate proof is not asserted in this action.

### III.     Plaintiffs' Use of Aggregate Evidence to Support Treble and Punitive Damages Raises Constitutional Concerns

Judge Weinstein also found that the use of aggregate proof to support non-compensatory damages (in that case, punitive damages) raised substantial due process concerns. As the Court stated: "In its punitive aspects, serious constitutional and other questions about the utilization of the structural class action for punitive purposes are implicated. The scale of the potential recovery sought by Mississippi may implicate the constitutional limitations on excessive fines and punitive damages." *Hood*, 2009 WL 4260857, at *65. Plaintiffs in this case seek treble damages, that is, three times the cost of all Neurontin prescriptions paid for by them. Here, as in *Hood*, Plaintiffs should not be permitted to use the legal system for a "slash-and-burn-style of litigation" that threatens significant harm both to these defendants and the industry. *Id.* at *66.

**CONCLUSION**

For all of these reasons, Defendants respectfully submit that the *Hood (Zyprexa)* decision provides additional support for summary judgment. Defendants ask that their motion for summary judgment be granted.

Dated: December 7, 2009

        Respectfully submitted,

        SKADDEN, ARPS, SLATE,
         MEAGHER & FLOM LLP

        By:   /s/ Mark S. Cheffo
              Mark S. Cheffo

        Four Times Square
        New York, NY 10036
        Tel: (212) 735-3000

           -and-

        SHOOK, HARDY & BACON L.L.P.

        By:   /s/ Scott W. Sayler
              Scott W. Sayler

        2555 Grand Blvd.
        Kansas City, MO 64108-2613
        Tel: (816) 474-6550

           -and-
        WHITE AND WILLIAMS LLP

        By:   /s/ David B. Chaffin
              David B. Chaffin

        BBO # 549245
        100 Summer Street, Suite 2707
        Boston, MA 02110
        Tel: (617) 748-5200

        *Attorneys for Defendants Pfizer Inc and*
        *Warner-Lambert Company LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 7, 2009.

                                                      /s/ David B. Chaffin
                                                      David B. Chaffin