UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**PLAINTIFF KAISER'S OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL IDENTIFICATION OF NAMES
<u>AND ADDRESSES OF POTENTIAL TRIAL WITNESSES</u>**

849522.1

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................................................... 1

II. THE MOTION IS TIME-BARRED AND PROCEDURALLY IMPROPER, AND DEFENDANTS' UNIDENTIFIED WITNESSES SHOULD BE STRICKEN............................................................................................ 2

    A. Defendants Effectively Seek To Reopen Fact Discovery That Closed Over Two Years Ago ............................................................................ 2

    B. The Motion Is Not A Proper Motion To Compel ........................................ 3

    C. Defendants' Unnamed Witnesses Should Be Stricken ................................ 4

III. KAISER PRODUCED ITS LIST OF NEURONTIN-PRESCRIBING PHYSICIANS IN APRIL 2007 ................................................................................... 5

IV. TESTIMONY FROM KAISER INSUREDS REGARDING THEIR EXPERIENCE WHILE TAKING NEURONTIN IS NOT RELEVANT AND ADMISSIBLE EVIDENCE ON THE ISSUE OF EFFICACY ................... 7

V. CONCLUSION........................................................................................................... 11

## TABLE OF AUTHORITIES

Page

### Cases

*Breffka & Henke GmbH & Co. v. M/V Glorious Success*,
No. CIV. A. 01-10599, 2002 WL 31415624 (S.D.N.Y. Oct. 28, 2002) .................................. 3

*Braumbaugh v. Sandoz Pharm. Corp.*,
77 F. Supp. 2d 1153 (D. Mont. 1999) ................................................................................... 10

*Casey v. Ohio Med. Prods.*,
877 F. Supp. 1380 (N.D. Cal. 1995) ..................................................................................... 10

*Davidson v. Citizens Gas & Coke Utility*,
238 F.R.D. 234 (S.D. Ind. 2006) ............................................................................................. 3

*Dellinger v. Pfizer, Inc.*,
No. CIV. A. 03-95, 2006 WL 826302 (W.D.N.C. Feb. 14, 2006) ....................................... 10

*Dellinger v. Pfizer, Inc.*,
No. CIV.A. 03-95, 2006 WL 2057654 (W.D.N.C. July 19, 2006) ......................................... 8

*Dynamic Movers, Inc. v. Paul Arpin Van Lines, Inc.*,
956 F. Supp. 836 (E.D. Wis. 1997) ........................................................................................ 3

*Flynn v. Health Advocate, Inc.*,
No. CIV. A. 03-3764, 2005 WL 288989 (E.D. Pa. Feb. 8, 2005) .......................................... 3

*Gault v. Nabisco Biscuit Co.*,
184 F.R.D. 620 (D. Nev. 1999) .............................................................................................. 3

*Glastetter v. Novartis Pharms., Corp.*,
107 F. Supp. 2d. 1015 (E.D. Mo. 2002) ................................................................................. 9

*Jones v. United States*,
933 F. Supp. 894 (N.D. Cal. 1999) ....................................................................................... 10

*Jones v. United States*,
127 F.3d 1154 (9th Cir. 1997) .............................................................................................. 10

*Jones v. United States*,
524 U.S. 946 (1998) .............................................................................................................. 10

*Majewski v. Automatic Data Processing, Inc.*,
274 F.3d 1106 (6th Cir. 2001) ................................................................................................ 3

*McClain v. Metabolife Int'l, Inc.*,
401 F.3d 1233 (11th Cir. 2005) .............................................................................................. 9

*Nelson v. Am. Home Products*,
92 F. Supp. 2d 954 (W.D. Mo. 2000) ..................................................................................... 9

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Northernwestern Memorial Hosptial. v. Ashcroft*,
  362 F.3d (7th Cir. 2004) .................................................................................................. 10

*Rider v. Sandoz Pharm. Corp.*,
  295 F.3d 1194 (11th Cir. 2002) ......................................................................................... 9

*Soldo v. Sandoz Pharm.*,
  244 F. Supp. 2d. 434 (W.D. Pa. 2003) ............................................................................... 9

### Rules

Federal Rules of Civil Procedure
  Rule 26(b)(2) ................................................................................................................... 10
  Rule 23(b)(2)(C) ........................................................................................................... 2, 6
  Rule 26(b)(2)(C) ............................................................................................................... 6
  Rule 37 ............................................................................................................................. 3
  Rule 37(a) ........................................................................................................................ 3
  Rule 37(a)(3)(B) .............................................................................................................. 4

U.S.D.C., D. Mass.
  Local Rule 37.1 ................................................................................................................ 4

### Treatises

8B WRIGHT & MILLER, FED. PRAC. & PROC. 2D
  § 2285 (2005) ................................................................................................................... 3

849522.1

I.  **INTRODUCTION**

By the artifice of a motion to compel responses to non-existent discovery requests, Defendants effectively seek to reopen fact discovery—which closed over two years ago—on the eve of trial, disrupting the schedule recently set by the Court. Accordingly, the motion is both time-barred and procedurally improper, and should be denied on these grounds alone.

The motion purports to seek lists of physicians that were produced to Defendants over two and-a-half years ago. Accordingly, this portion of the motion should also be denied as moot.

Finally, the motion seeks a permit for a fishing expedition to secure "testimony from Kaiser insureds regarding their experience while taking Neurontin." As Plaintiffs[1] and their experts have repeatedly explained throughout this litigation, the experience of individual patients is *scientifically meaningless* in determining whether a drug is effective in treating a particular condition. Indeed, Defendants themselves successfully argued that such testimony is inadmissible under *Daubert* in other Neurontin litigation. It is no more relevant or admissible here.

When it last faced a similar issue, the Court found the minimal relevance of such evidence, if any, to be outweighed by the invasion of the privacy of Kaiser's insureds. The calculus is even easier here, where the requested discovery comes two years after the fact discovery cutoff, and would inevitably disrupt the remaining schedule for bringing the first of these actions to trial—actions which have been pending for almost six years. Accordingly, Defendants' motion should be denied on the merits as well.

---

[1] Plaintiffs are Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser."). Kaiser Foundation Health Plan, Inc. is the parent company of the following companies and has brought this lawsuit on behalf of itself and its subsidiaries: Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio.

## II. THE MOTION IS TIME-BARRED AND PROCEDURALLY IMPROPER, AND DEFENDANTS' UNIDENTIFIED WITNESSES SHOULD BE STRICKEN

### A. Defendants Effectively Seek To Reopen Fact Discovery That Closed Over Two Years Ago

Fact discovery in this case closed over two years ago. Discovery Order No. 13, entered July 19, 2007 (Dkt. No. 801), set the fact discovery cutoff at October 15, 2007, and expressly provided that "[m]otions to compel arising out of the document discovery, if any, must be filed no later than the filing deadlines set for the September 20, 2007 Discovery Hearing" [Sept. 6, 2007]. *Id.* at 2, 5. Several such motions were filed, and the cutoff was extended by one additional month, until November 15, 2007, for the parties to complete the additional discovery ordered. *See* Discovery Order No. 14 (Dkt. No. 890), at 5. Accordingly, fact discovery in this case has been closed for over two years. By this motion, Defendants effectively seek to reopen it on the eve of trial, by the artifice of a "Motion to Compel" responses to non-existent discovery requests.

The identification of adversary-affiliated witnesses that may be helpful to one's cause at trial is one of the principal functions of discovery, not a task to be undertaken two years after its close,[2] with barely two months remaining before trial (including the year-end holidays), during which time the parties will be fully engaged in meeting the several deadlines set by the Court in its November 12, 2009 Procedural Order (Dkt. No. 2172). The motion should be denied on this ground alone. *See* Fed. R. Civ. P. 23(b)(2)(C) ("the court must limit the frequency or extent of

---

[2] Defendants blithely state that "the information is not sought for purposes of discovery, but so that relevant fact witnesses can be contacted in order to secure their attendance at trial." Motion at 2 n.1. That *is* one of the principal purposes of discovery, as every lawyer knows.

discovery otherwise allowed by these rules . . . if it determines that: . . . (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action").[3]

### B. The Motion Is Not A Proper Motion To Compel

While it purports to be a "Motion to Compel," Defendants' motion is untethered to any discovery request or failure to respond thereto, and thus fails to meet the most basic requirement of a motion to compel discovery. Rule 37 of the Federal Rules of Civil Procedure expressly provides that a "motion to compel" may only

> be made if:
>
> (i) a deponent fails to answer a question asked under Rules 30 or 31;
>
> (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
>
> (iii) a party fails to answer an interrogatory submitted under Rule 33, or

---

[3] Courts routinely deny motions to compel filed after the discovery cutoff after long periods during which the discovery could have been had without disrupting the schedule. *See, e.g., Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 621 (D. Nev. 1999) (denying motion to compel filed 76 days after the discovery deadline and 136 days after receipt of the opposing party's responses); *Flynn v. Health Advocate, Inc.*, No. CIV. A. 03-3764, 2005 WL 288989, at *8 (E.D. Pa. Feb. 8, 2005) ("Many courts have stated that Motions to Compel filed after the discovery deadline are untimely.") (citing cases); *Breffka & Henke GmbH & Co. v. M/V Glorious Success*, No. CIV.A. 01-10599, 2002 WL 31415624, at *3 (S.D.N.Y. Oct. 28, 2002) (refusing to compel depositions and noting that courts should not compel discovery when parties have "slept on their rights"); *Davidson v. Citizens Gas & Coke Utility*, 238 F.R.D. 234 (S.D. Ind. 2006) (holding that 14-month delay in filing motion to compel was, "alone," sufficient reason to deny the motion); *Dynamic Movers, Inc. v. Paul Arpin Van Lines, Inc.*, 956 F. Supp. 836, 839-40 (E.D. Wis. 1997) (finding untimely a motion to compel filed four and a half months after discovery responses were served). *See also Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1114 (6th Cir. 2001) ("Where the full period for pretrial discovery has run its course, a party should generally be precluded from reopening discovery months after it has closed in a last-ditch attempt to salvage a deficient claim or defense."); 8B WRIGHT & MILLER, FED. PRAC. & PROC. 2D § 2285 (2005) (stating that courts will often deny Rule 37(a) motions where "the moving party delayed too long.").

> (iv) a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

Fed. R. Civ. P. 37(a)(3)(B). *See also* Local Rule 37.1 ("[t]he memorandum shall state with particularity . . . [e]ach interrogatory, deposition question, request for production, request for admission or other discovery matter raising an issue to be decided by the court, and the response thereto"). Defendants' motion satisfies none of these prerequisites. It is merely an attempt to reopen fact discovery, two years after it has closed, by the artifice of "moving to compel" responses to unidentified and non-existent discovery requests.[4] Accordingly, the motion is insufficient and procedurally improper, and should be denied on this ground alone.

### C. Defendants' Unnamed Witnesses Should Be Stricken

The Court's November 12, 2009 Procedural Order (Dkt. No. 2172) provides that the parties shall file their "list[s] of trial witnesses" on November 23, 2009, and that the parties will have one month thereafter, until December 22, 2009, to depose "[a]ny witnesses identified <u>for the first time</u> in summary judgment papers or on the witness list . . . ." *Id.* at 1 (emphasis in original). While Kaiser identified each of its trial witnesses by name (*see* Plaintiff's List of Witnesses To be Presented At Trial, Dkt. No. 2179), Defendants' list purports to "identify" (*see* Defendants' Expected Trial Witness List, Dkt. No. 2180, at 1) unnamed "Kaiser insureds who were prescribed Neurontin between March 1995 and December 2004" (no. 49), unnamed "Physicians who prescribed Neurontin to Kaiser insureds between March 1995 and December 2004" (no. 51), unnamed "Kaiser insureds who were prescribed gabapentin after December 2004" (no. 52), and unnamed "Physicians who prescribed gabapentin to Kaiser insureds after

---

[4] Even if such requests had been timely-served, the deadline for moving to compel with regard to written fact discovery expired even earlier, on September 6, 2007. *See* Discovery Order No. 13 (Dkt. No. 801) at 2, 5.

December 2004" (no. 53). By this motion, Defendants seek to launch a fishing expedition to identify witnesses fitting these descriptions. This is not a proper designation of witnesses for trial; it is a "wish list" of *types* of witnesses. Kaiser might as well have listed unnamed "current or former employees of Pfizer or its predecessors who will testify concerning Defendants' fraudulent marketing efforts," and then filed a motion to compel production of employee lists, promising to fill in the names of these witnesses at some later, unspecified date. Defendants' witness designations nos. 49 and 51-53 are equally improper, and should be stricken.

The Procedural Order required the parties to identify their trial witnesses by November 23, so that the depositions of any previously unidentified witnesses could be completed by December 22 (followed promptly by motions *in limine*, due January 8, 2010). *Id.* at 2-3. The unnamed witnesses Defendants propose to identify at later date—after their fishing expedition has been completed—clearly fall into this category, yet only thirteen days remain to complete these depositions. Defendants' motion, if granted, would likely disrupt by months the schedule carefully set by the Court. The motion should be denied, and Defendants' patently insufficient designations of unnamed witnesses should be stricken.

### III. KAISER PRODUCED ITS LIST OF NEURONTIN-PRESCRIBING PHYSICIANS IN APRIL 2007

Defendants seek an order compelling Kaiser to produce a list of all physicians who prescribed Neurontin to Kaiser insureds.[5] Kaiser provided these lists to Defendants in April 2007. Accordingly, this portion of Defendants' motion is moot.

---

[5] Defendants' motion to compel uses the shorthand "Kaiser physicians." Kaiser Foundation Hospitals and Kaiser Foundation Health Plans, plaintiffs in this action, are non-profit, charitable organizations that do not employ the treating physicians at issue in this motion. Instead, Kaiser contracts for medical services from one of the regional Permanente Medical Groups ("PMG"), which employ treating physicians that serve Kaiser's insureds. Neither the PMGs nor the treating physicians are parties to this action.

On April 11, 2007, Kaiser produced to Defendants two CD-ROMs containing lists of its physicians who prescribed Neurontin to its insureds.[6] Each list was clearly labeled "Neurontin Providers," and was included in the production as follows:

- KAIS040152-40658: provider lists for all regions post-1998 and for the California regions pre-1998;

- KAIS040659-40666: provider lists for Kaiser's Colorado, Georgia, and Ohio regions pre-1998; and

- KAIS040713: provider list for Kaiser's mid-Atlantic region pre-1998.

*See* Declaration of Elana Katcher in Support of Kaiser's Opposition to Defendants' Motion to Compel Identification of Names and Addresses of Potential Trial Witnesses ("Katcher Decl."), ¶¶ 2-4, Exh. A (cover letter to defense counsel transmitting CD-ROMs), Exh. B (sample printouts of physician lists). As **Defendants have been in possession of the physician lists they now purport to seek for over two and-a-half years**, this portion of the motion should be denied as moot. *See also* Fed. R. Civ. P. 26(b)(2)(C) ("the court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative").[7]

---

[6] In Discovery Order No. 4 (Dkt. No. 445), Magistrate Judge Sorokin ordered, *inter alia*, that "Kaiser shall produce to defendants a list of Kaiser doctors that have prescribed Neurontin for the off-label uses at issue in this case." *Id.* at 4. While Plaintiffs, including Kaiser, appealed from other aspects of this order, they did not appeal from this portion (*see* Dkt. No. 462).

[7] Should Defendants find any purported defect in these lists, it was incumbent on them to file a timely and legitimate motion to compel further responses, not wait until the eve of trial to pursue the matter. *See* Fed. R. Civ. P. 23(b)(2)(C) ("the court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that: . . . (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action").

## IV. TESTIMONY FROM KAISER INSUREDS REGARDING THEIR EXPERIENCE WHILE TAKING NEURONTIN IS NOT RELEVANT AND ADMISSIBLE EVIDENCE ON THE ISSUE OF EFFICACY

Defendants also seek the identification of Kaiser insureds who have been prescribed Neurontin. Defendants belatedly seek this discovery, disguised as a motion to compel, in order to secure "testimony from Kaiser insureds regarding their experience while taking Neurontin," which Defendants argue "is clearly relevant and admissible evidence." Motion at 6. It is neither. As Plaintiffs and their experts have explained several times throughout this litigation, the testimony of individual patients concerning their subjective impressions of their "experience while taking Neurontin" is *not* relevant on the issue of whether Neurontin is effective to treat any of the off-label conditions at issue. *See, e.g.*, Plaintiffs' Objections to Discovery Order No. 4 (Dkt. No. 462), at 11-14; Class Plaintiffs' Surreply Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 1859), at 14-16; Plaintiffs' Joint Reply in Support of Proposed Trial Plan (Dkt. No. 2149), at 4-5.

As Plaintiffs' and their experts (including Dr. David Kessler, a former head of the FDA) have explained, whether or not Neurontin is effective in treating the off-label indications at issue is a *scientific* question that simply cannot be determined through the subjective impressions of individual patients—let alone patients "cherry-picked" by Defendants—who may get better for a variety of reasons having nothing to do with the drug (*e.g.*, the placebo effect or spontaneous remission). *See* Declaration of Ilyas Rona in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 1761), Exh. 021 (Barkin Report) at 6; Exh. 023 (Abramson Report) ¶¶ 22-23; Exh. 163 (Perry Report) at 5-6; Exh. 365 (Alldredge Report) at 1; Ex. 374 (Kessler Report) ¶¶ 14-15. The principal value of such individual "case reports" is that they may lead to *controlled trials*, in which the efficacy or inefficacy of a drug can be established by having sufficiently large treatment and control groups of patients that other factors *besides* the drug can

be ruled out statistically. As one of Plaintiffs' experts, Dr. Douglas McCrory, explained: "efficacy requires analyzing data between a treatment and control group, and looking at the aggregated data and statistics." Surreply Declaration of Barry Himmelstein in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 1860), Exh. C (McCrory Depo.) at 177. Accordingly, one cannot "evaluate efficacy under that definition in an individual patient." *Id.* As Dr. McCrory further explained:

> [Y]ou use a medicine in a patient, you observe a response afterward, and the response may be better or worse. But you don't have the certainty that there's a causal relationship between the medicine and the patient's response in an individual case. That's why we do controlled trials."

*Id.* at 179-80.

In personal injury litigation concerning Neurontin, *Dellinger v. Pfizer, Inc.*, No. CIV. A. 03-95, 2006 WL 2057654 (W.D.N.C. July 19, 2006), Pfizer prevailed in a *Daubert* motion to exclude the very type of anecdotal evidence they seek to discover and present here. In that case, the plaintiff, who was prescribed Neurontin for pain, argued that it caused his pancreatitis, supported by an expert who based his causation opinion on individual case reports and anecdotal data instead of properly designed and controlled trials or studies. Pfizer successfully argued, as numerous courts have held, that anecdotal data and individual case histories do *not* provide scientific evidence of causation admissible under *Daubert*:

> Keys' opinion is based primarily on eleven (11) abstract cases which deem gabapentin as the principle cause of injury. However, Keys himself concedes that case reports are not scientific proof of causation. . . . . Furthermore, courts have found case reports to be merely anecdotal accounts of observations in particular individuals which are not controlled tests, frequently lack analyses and often make little attempt to screen out alternative causes for a patient's condition.

\* \* \*

> . . . The abstract cases relied upon by Keys have not been tested
> or subject to peer review and lack a known potential rate of error.
> The abstract reports simply describe reported drug cases without
> comparing them to the general population or a control group.
> Moreover, the reports fail to isolate potential alternative causes and
> neglect to investigate or explain the mechanism of causation.
>
> * * *
>
> In conclusion, without objective sources such as clinical studies or
> medical literature that are subject to factors set out in *Daubert* such
> as testing, peer review, and publication, Keys' opinion fails to
> offer reliable methodologies that support the hypothesis that
> Neurontin is generally capable of causing Plaintiffs injuries.
> Furthermore, adverse case reports, along with other sources
> included in Keys' report, neglect to prove a general level of
> acceptance among the relevant professional community. In fact,
> none of Keys' sources, independently or collectively, establish a
> causal link between Neurontin and pneumonia or pancreatitis. As
> a result, Keys' expert opinion fails to satisfy the four factors of
> reliability set out in *Daubert*.

*Id.* at *9-*11 (citations omitted).[8] Accordingly, Defendants' proposed fishing expedition to secure "testimony from Kaiser insureds regarding their experience while taking Neurontin" is clearly *not* "relevant and admissible evidence" (Motion at 6) on the issue of efficacy.[9]

---

[8] In support of its argument, Pfizer cited—and the court credited (*see id.* at *9)—a raft of cases for the proposition that individual case reports do not provide admissible evidence of causation:

> *See Soldo*, 244 F. Supp. 2d at 537 ("the great weight of authority --
> and the most current authority -- squarely rejects the use of
> [adverse drug events] and case reports for the purpose of
> establishing general causation"); *Nelson*, 92 F. Supp. 2d at 969
> ("reports themselves do not contain a testable and systemic inquiry
> into the mechanism of causation ... they do not demonstrate a
> causal link sufficient for admission to a finder of fact in court"). . .
> . *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir.
> 2005) ("Uncontrolled anecdotal information offers one of the least
> reliable sources to justify opinions about both general and
> individual causation"); *Rider*, 295 F.3d at 1199 (case reports
> "reflect only reported data, not scientific methodology");
> *Glastetter v. Novartis Pharms. Corp.*, 107 F. Supp. 2d 1015, 1030
> (E.D. Mo. 2000) ("a number of courts have concluded that case
> reports are not a scientifically reliable basis for a causation opinion
> .... Such case reports are not reliable, because normally, such

Even assuming, *arguendo*, that the hypothesized testimony from unidentified witnesses had some minimal relevance, when the Court last confronted the issue, in ruling on Plaintiffs' Objections to Discovery Order No. 4, the Court "conclude[d] that the burden, expense and invasion of privacy of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(2)." Electronic Order, Sept. 27, 2006. The calculus is even easier here, where the requested discovery comes two years after the fact discovery cutoff, and would inevitably disrupt the remaining schedule for bringing the first of these actions to trial—actions which have been pending for almost six years.[10]

---

reports 'record nothing more than a temporal association between an exposure and a particular occurrence'"); *Brumbaugh v. Sandoz Pharm. Corp.*, 77 F. Supp. 2d 1153, 1157 (D. Mont. 1999) ("anecdotal reports are not generally accepted as reliable scientific evidence to establish causation"); *Jones v. United States*, 933 F. Supp. 894, 899 (N.D. Cal. 1996) ("anecdotal case reports ... are not derived through the scientific method"), *aff'd*, 127 F.3d 1154 (9th Cir. 1997), *cert. denied*, 524 U.S. 946 (1998); *Casey v. Ohio Med. Prods.*, 877 F. Supp. 1380, 1385 (N.D. Cal. 1995) ("case reports are not reliable scientific evidence of causation, because they simply describe reported phenomena without comparison to the rate at which the phenomena occur in the general population or in a defined control group; do not isolate and exclude potentially alternative causes; and do not investigate or explain the mechanism of causation").

Defendants' Memorandum of Law in Support of Defendants' Motion to Exclude Testimony By Christopher Keeys, *Dellinger v. Pfizer Inc.*, 2006 WL 826302, *8-9 (W.D.N.C. Feb. 14, 2006).

[9] As the foregoing discussion and authorities make plain, the testimony Defendants propose to elicit from unnamed physicians concerning "their clinical observations regarding Neurontin and its efficacy for their patients" (Motion at 6) is equally irrelevant and inadmissible under *Daubert*.

[10] In a footnote, Defendants argue that "[t]he scope of this pre-trial motion is much narrower than the previous discovery motions that this Court considered," because "the earlier discovery motion [402] sought medical records, in addition to the identity of patients and physicians," and because "Pfizer would accept a list of 75 to 100 randomly selected patients and physicians." This is no less an invasion of privacy, especially where, as here, one of the conditions for which Neurontin was most frequently prescribed was bipolar disorder, which carries the social stigma of a serious psychiatric condition. *See, e.g., Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 929 (7th Cir. 2004) (denying government's request for production of redacted medical

V.  **CONCLUSION**

Because Defendants effectively seek to reopen fact discovery, which has been closed for over two years, and which would inevitably disrupt the impending trial; because Defendants have had the physician lists they purport to seek for over two and-a-half years; and because the testimony of individual patients concerning their subjective impressions of Neurontin's efficacy is neither relevant nor admissible on the issue, the motion should be denied.

Dated: December 9, 2009                Respectfully submitted,

                                       By:    /s/ Linda P. Nussbaum
                                              Linda P. Nussbaum

                                       KAPLAN FOX & KILSHEIMER LLP
                                       Linda P. Nussbaum, Esq.
                                       850 Third Avenue, 14th Floor
                                       New York, New York 10022

                                       *Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

                                       Thomas Greene
                                       GREENE, LLP
                                       33 Broad Street, 5th Floor
                                       Boston, MA 02109

                                       Barry Himmelstein
                                       LIEFF CABRASER HEIMANN &
                                         BERNSTEIN, LLP
                                       Embarcadero Center West
                                       275 Battery Street, 30th Floor
                                       San Francisco, CA 94111-3339

---

records of 45 patients because of the invasion of privacy that would result from the possible disclosure of their identities).

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

*Of Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 9, 2009.

*/s/ Elana Katcher*
Elana Katcher

849522.1                                    -13-