UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**PLAINTIFF KAISER'S OPPOSITION TO DEFENDANTS'**
<u>**EMERGENCY MOTION TO COMPEL DEPOSITIONS OF KAISER WITNESSES**</u>

851239.1

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. DEFENDANTS ARE NOT ENTITLED TO DEPOSE DR. WIEDER, BECAUSE KAISER HAS NOT DESIGNATED HIM AS A TRIAL WITNESS ............................................................................................................. 2

III. DRS. CAMPEN, CARREJO, AND JONES WERE IDENTIFIED IN DOCUMENTS AND DEPOSITIONS PRIOR TO THE DISCOVERY CUTOFF ................................................................................................................ 4

    A. Documents and Deposition Testimony Concerning Kaiser's P&T Committees ........................................................................................ 5

    B. Documents and Deposition Testimony Concerning Kaiser's Regional Drug Utilization Groups' Efforts to Curtail Neurontin Usage ....................................................................................................... 6

    C. Documents and Deposition Testimony Concerning Dr. Campen ............... 7

    D. Documents and Deposition Testimony Concerning Dr. Carrejo ............... 8

    E. Documents and Deposition Testimony Concerning Dr. Jones .................. 9

IV. CONCLUSION ..................................................................................................... 10

I.  **INTRODUCTION**

Defendants' motion is not well taken. The clear intent and only plausible interpretation of the Court's November 12, 2009 Procedural Order (Dkt. No. 2172, the "Order" or "Procedural Order") is to allow for certain limited depositions of witnesses designated for trial *by the opposing party*, so that their testimony can be met at trial. Under that order, defendants are not entitled to depose Drs. Wieder, Campen, Carrejo, and Jones. They may not depose Dr. Wieder, because, *inter alia*, Pfizer, not Kaiser,[1] has designated him as a trial witness. Defendants' transparent effort to re-open discovery by the artifice of naming an individual that they failed to depose during discovery and now wish to depose as a trial witness should be summarily rejected.

Drs. Campen, Carrejo, and Jones do appear on Kaiser's witness list; however, each was sufficiently identified, under the standard articulated in the Order, in documents produced by Kaiser, and the deposition testimony of Kaiser-affiliated witnesses, as members of committees involved in Kaiser's efforts to reduce inappropriate Neurontin usage by Permanente Medical Group ("PMG") physicians.[2] Thus, each of these proposed deponents fall outside of the parameters clearly drawn by this Court in its Procedural Order. Defendants' contention that these individuals were not identified as potential witnesses during discovery is inaccurate and should be rejected. Defendants have taken over a dozen depositions of Kaiser employees and

---

[1] Plaintiffs are Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser."). Kaiser Foundation Health Plan, Inc. is the parent company of the following companies and has brought this lawsuit on behalf of itself and its subsidiaries: Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio.

[2] Kaiser Foundation Hospitals and Kaiser Foundation Health Plans, plaintiffs in this action, are non-profit, charitable organizations that do not employ the treating physicians at issue in this motion. Instead, Kaiser contracts for medical services with regional Permanente Medical Groups ("PMG"), which employ treating physicians that care for Kaiser's members. Neither the PMGs nor the treating physicians are parties to this action.

PMG physicians during discovery. Defendants were well aware of the existence of these witnesses and could have sought their depositions at that time. Defendants' motion to take their depositions should be denied, as expressly required by the Court's Procedural Order.

## II. DEFENDANTS ARE NOT ENTITLED TO DEPOSE DR. WIEDER, BECAUSE KAISER HAS NOT DESIGNATED HIM AS A TRIAL WITNESS

The Court's Procedural Order setting forth the schedule leading up to the Kaiser trial provides, in pertinent part, that:

> [T]he list of trial witnesses and the expected amount of time for direct examination shall be filed on November 23, 2009.
>
> The Court denies Pfizer's request to re-depose witnesses. Any witnesses identified <u>for the first time</u> in summary judgment papers or on the witness list may be deposed by December 22, 2009. <u>Any witness on the list who was already identified in a court filing, document or deposition prior to the discovery deadline but not deposed may not be deposed during this time period.</u>

*Id.* ¶¶ 3-4 (second emphasis added).

The obvious intent—and only plausible reading—of the Court's Order is to allow for the limited deposition of witnesses designated for trial ***by the opposing party*** who were not identified prior to the discovery cutoff, *i.e.*, "witnesses identified for the first time in summary judgment papers or on the witness list" (*id.*), and *not* to re-open discovery. With respect to Dr. Wieder, Defendants seek to turn this Order on its head, as it is Defendants, not Kaiser, that have designated Dr. Wieder as a trial witness.

With respect to the other witnesses who defendants seek to depose, they were all clearly identified in documents and depositions during the discovery period. Defendants could have sought their deposition then. Instead they sought, and received over a dozen Kaiser and PMG depositions including testimony on the very subjects for which they claim to need these witnesses. Discovery should not now be reopened.

Given the demanding and tightly sequenced pretrial schedule ordered by the Court, the Order *expressly precludes* the taking of these requested depositions. Any witness on the list who was already identified in a court filing, document or deposition prior to the discovery deadline but not deposed may not be deposed now. Defendants have no need to depose Dr. Wieder to meet his testimony at trial, because Kaiser will *not* be offering his testimony at trial. Defendants instead seek to use the Order as an opportunity to re-open discovery by the artifice of naming as a trial witness an individual that they wish to depose.

Defendants argue that Dr. Wieder should be deposed because Kaiser has offered his declaration in opposition to Defendants' motion for summary judgment, pointing to the section of the Order permitting the deposition of "any witnesses identified for the first time in summary judgment papers or on the witness list . . . ." *Id.* ¶ 4. Read in context, the phrase "any witnesses" in this sentence clearly refers to "any witnesses" included on the opposing party's "list of trial witnesses" in the preceding paragraph, as well as to "[a]ny witness *on the list*" — the first five words of the following sentence. *Id.* (emphasis added). Read in context, "identified for the first time in summary judgment papers or on the witness list" means *not* "already identified in a court filing, document or deposition prior to the discovery deadline . . . ." *Id.* Accordingly, the Court's Procedural Order authorizes limited additional discovery *for trial*, not for the purpose of supporting or opposing Defendants' motion for summary judgment. As Kaiser has not designated Dr. Wieder as a trial witness, the Order gives Defendants no basis to depose him.[3]

---

[3] In addition, Dr. Wieder was identified in documents produced in this action as a regional champion of Kaiser's Drug Utilization Action Team's ("DUAT") neuropathic pain initiative, a principle goal of which was to reduce off-label Neurontin usage. *See* Section III.B. below for a more complete discussions of the significance of DUAT in this litigation. *See also* Katcher Decl. Exh. P.

### III. DRS. CAMPEN, CARREJO, AND JONES WERE IDENTIFIED IN DOCUMENTS AND DEPOSITIONS PRIOR TO THE DISCOVERY CUTOFF

The Court's Procedural Order expressly precludes the deposition of "[a]ny witness on the list who was already identified in a court filing, document or deposition prior to the discovery deadline. . ." *Id.* The obvious intent of this provision is *not* to give parties who neglected to depose identifiable witnesses during discovery a second bite at the apple on the eve of trial. In documents produced to Defendants by Kaiser during discovery, Drs. Campen, Carrejo, and Jones were each clearly identified as participants in Kaiser's Neurontin "re-education" campaign. These documents alone are more than sufficient to have put Defendants on notice that these individuals were potential trial witnesses.

In addition, documents produced to Defendants by Kaiser, as well as the testimony of Kaiser-affiliated witnesses Defendants *did* depose, clearly: (1) identified Dr. Campen as a member of the Northern California Permanente Medical Group's ("TPMG") Pharmacy and Therapeutics Committee; (2) identified Dr. Carrejo as a member of the TPMG P&T Committee; and (3) identified Dr. Jones as the chair of the Northwest PMG's Regional Formulary and Therapeutics Committee, in addition to being the author of documents in the region's effort to curtail Neurontin usage.

The details of this information, which was in Defendants' possession well before the discovery cutoff, are presented below, in the following order: (1) discussion of Kaiser's P&T Committees generally; (2) discussion of Kaiser's efforts to curtail Neurontin usage generally; and (3) discussion of the documents and deposition testimony provided to Defendants during discovery detailing the involvement of Drs. Campen, Carrejo, and Jones in those committees. Under the Court's Procedural Order, Defendants' decision not to depose these clearly identified

Kaiser witnesses during discovery, in the face of the information that they possessed, expressly precludes their deposition "during this time period." *Id.* ¶ 4.

### A. Documents and Deposition Testimony Concerning Kaiser's P&T Committees

Defendants cannot have been surprised by the inclusion of members of Kaiser's formulary (Pharmacy & Therapeutics, or "P&T") committees on Kaiser's trial witness list, and in fact, during discovery, they deposed individuals about such committees and their minutes and efforts. The minutes of the Kaiser P&T Committees at issue here were included in Kaiser's document production, and those minutes identified each Committee's respective members. *See* Katcher Decl. Exh. A (selected minutes of the TPMG Regional P&T Committee & Formulary Subcommittee); Katcher Decl. Exh. B (selected minutes of the Northwest PMG's Regional Formulary and Therapeutics Committee). Many of these minutes were marked as exhibits at Kaiser depositions that Defendants took. The time for deposing those individuals has long since passed.

During discovery, defendants did depose a voting member of Kaiser's Southern California Regional P&T Committee. Albert Carver, Kaiser's then Vice President of Pharmacy Strategy and Operations, was questioned extensively about the structure and role of Kaiser's Regional P&T Committees.[4,5]

---

[4] Mr. Carver is listed on Plaintiffs' List of Witnesses To Be Presented At Trial (Dkt. No. 2179) (No. 17) as providing "testimony describing Kaiser's business and corporate structure." *Id.*

[5] Mr. Carver clearly explained their importance:

> **Q.** And does the P&T committee determine what drugs are placed on the formulary?
>
> **A.** They do.
>
>       \*     \*     \*
>
> **Q.** What factors does the P&T committee consider in deciding whether or not to put a drug on the formulary?

In addition, Defendants twice deposed Kaiser's Mirta Millares, Pharm.D., a nonvoting member of both the Northern and Southern California PMG Regional P&T Committees. *See, e.g.* Katcher Decl. Exh. D at 61 ("Pharmacy and Therapeutics Committees exist to provide a mechanism for critical evaluation of evidence regarding pharmaceutical agents and for evaluation of that evidence and making decisions and recommendations about formulary status of drugs, their appropriate use within an organization. They deal with medication safety issues. They deal with efficacy issues and utilization issues, among many other things related to pharmaceuticals.").

As set forth above, Defendants received the opportunity to depose members of Kaiser's P&T Committees, and did so several times. Many P&T Committee minutes and documents were marked as exhibits at those depositions. Defendants were thus on actual as well as constructive notice of the existence and roles of Drs. Campen, Carrejo and Jones. Under the Court's Procedural Order, Defendants may not now take these depositions. Procedural Order ¶ 4.

### B. Documents and Deposition Testimony Concerning Kaiser's Regional Drug Utilization Groups' Efforts to Curtail Neurontin Usage

Kaiser leadership commissioned a project in its two California regions to "improve clinical outcomes, provide the most appropriate care for members, and improve cost effectiveness." *See* Katcher Decl. Exh. E at KAIS-003368. The project resulted in the formation of the Southern California Regional Drug Utilization Action Team ("DUAT") and Northern California Regional Drug Utilization Group ("DRUG"). *Id.* at KAIS-003369. These groups

> A.   They consider the safety of the product. They – if information is available they consider what therapeutic advantage a particular product would have relative to other products that are already on the formulary. That they would consider the effectiveness of a product, relative to other products on the formulary. And when other considerations are about equal, they also are mindful of the cost of a particular agent.

Katcher Decl. Exh. C at 68-72 (Carver Tr.) (selected pages).

conducted a series of initiatives designed to manage the utilization of certain classes of drugs, based on criteria including high cost, wide variation of utilization, and availability of less expensive and equally effective alternatives. *See id.* at KAIS-003371.

Defendants have long been on notice that both DRUG and DUAT conducted initiatives that focused on the inappropriate utilization of Neurontin. Key documents from the DRUG initiative are annexed as Exhibit F to the Katcher Declaration, and many more documents pertaining to DUAT's initiative were produced in this action and marked by Defendants at depositions of Kaiser witnesses that they took during the discovery period. In addition, Defendants devoted an entire deposition to a Kaiser witness whose only relevant role in this litigation is as an employee who worked as a Regional DUAT Project Manager. *See* Katcher Decl. Exh. G (St. John Tr.). The documents marked at the St. John deposition show a steep decline in Neurontin usage as a result of DUAT's initiative. *See* Katcher Decl. Exh. H at KAIS-003842. Questioning during the St. John deposition shows that the defendants were aware that DRUG conducted a similar initiative. *See e.g.* Katcher Decl. Exh. G at 51-61; 87-88. Documents produced in this action show that the DRUG initiative also led to a decline in Neurontin utilization. *See e.g.* Katcher Decl. Exh. I at KAIS-001413. The minutes of the DRUG meetings discussing the Neurontin initiative were produced in this action, and identified all members. Katcher Decl. Exh. I. In short, the witnesses that defendants now seek to depose were clearly identified by documents and testimony taken before the discovery cutoff. Further, defendants deposed other Kaiser witnesses with respect to these issues and documents.

### C. Documents and Deposition Testimony Concerning Dr. Campen

Dr. Campen has been a member of the TPMG P&T Committee is identified as such by meeting minutes produced in this action and by the deposition testimony that defendants took of Dr. Robin Dea. *See* Katcher Decl. Exh. K at KAIS-044021 (identifying Campen as Northern

California Regional Permanente Medical Group Formulary Subcommittee Chair); Katcher Decl. Exh. A (TPMG P&T Committee and Formulary Subcommittee meeting minutes identifying Campen as a member); Katcher Decl. Exh. J at 82 (Dea Tr.) (selected pages).

Dr. Campen is also identified as a member of the Northern California Regional Drug Utilization Group ("DRUG") in that group's meeting minutes, including minutes specifically discussing the group's gabapentin initiative. Katcher Decl. Exh. I. Notice of Dr. Campen's personal role in that initiative was also provided by TPMG P&T Committee meeting minutes in which Dr. Campen reports to the Committee on its status and activities. *See* Exh. A at KAIS-000138 ("Neurontin Initiative: . . . Dr. Campen reported that as of Monday the Chiefs of Neurology supported the use of a TCA over Neurontin for the treatment of peripheral neuropathy and they are willing to speak to this locally. Dr. Campen encouraged the Committee to attend the "Pharmaceutical Management of Chronic Pain" videoconference on October 11 by Permanente Medicine Today."). The documents and deposition testimony produced during discovery are more than sufficient to establish that Dr. Campen "was already identified in a . . . document or deposition prior to the discovery cutoff" (Procedural Order ¶ 4). Thus, his deposition may not be taken. *Id.*

**D.      Documents and Deposition Testimony Concerning Dr. Carrejo**

Ambrose Carrejo, Pharm.D., worked with Dale Kramer, Kaiser Foundation Hospital's former Director of Pharmacy Contracting. During his deposition, Mr. Kramer identified Dr. Carrejo as his assistant, and described Carrejo's responsibilities as substantially similar to his own. Katcher Decl. Exh. L at 21-22 (Kramer Tr.) (selected pages). In addition, like Dr. Campen, the meeting minutes produced from DRUG and the TPMG P&T Committee identify Dr. Carrejo as a member of each of those groups. *See* Katcher Decl. Exh. I; Katcher Decl. Exh. A. At her deposition, Dr. Dea identified Dr. Carrejo as someone who works with the TPMG

P&T Committee, and as someone who would be responsible for presenting information about drug usage to the Chiefs of Psychiatry. *See* Katcher Decl. Exh. J at 101-02 (Dea Tr.) (selected pages). Dr. Carrejo reported to the TPMG P&T Committee on the status of the region's Neurontin initiative. *See* Katcher Decl. A at KAIS_000138 ("Neurontin Initiative: Dr. Carrejo reported that Neurontin is currently used for many off-label indications with little evidence to support its use. Currently, the drug purchase expenditure for Neurontin is $1 million dollars a month.").

Kaiser also produced email communications in which Dr. Carrejo specifically discusses DRUG's gabapentin initiative. *See, e.g.* Katcher Decl. Exh. M. Because Dr. Carrejo was clearly identified as a potential witness in documents and deposition testimony provided to Defendants during discovery, under the Court's Procedural Order, they may not now depose him. Procedural Order ¶ 4.

### E.   Documents and Deposition Testimony Concerning Dr. Jones

Dr. Jones is the current chair of Northwest Permanente Medical Group's Regional Formulary and Therapeutics Committee, and was identified as such by Mirta Millares at her deposition, as well as by the minutes of that Committee's meetings which have been produced. *See* Katcher Decl. Exh. D at 153-54 (Millares Tr.) (selected pages); Katcher Decl. Exh. B (minutes identifying Jones as a member and later as chair of the Formulary & Therapeutics Committee). In addition, documents produced in this action identify Dr. Jones as the author of documents in the Northwest Region's efforts to decrease gabapentin utilization after news of Defendants' fraudulent marketing campaign began to surface. Katcher Decl. Exh. N. This initiative resulted in a 38% decrease in Neurontin utilization in the Northwest Region. Katcher Decl. Exh. O. As the following excerpts of documents written by Dr. Jones demonstrate, Defendants were clearly placed on notice that Dr. Jones was a potential key witness in this case:

> Based on a systematic review of the published randomized controlled trials of gabapentin for various therapeutic indications other than epilepsy, it is concluded that **gabapentin is not first-line therapy for anything...**

Katcher Decl. Exh. N at KAIS-04442 (emphasis in original).

> This is the third installment in a series of communications about Gabapentin (NEURONTIN). It is a different focus from most pharmacy communications. We usually focus on the clinical evidence as primary mode of education but I think you will find this socioeconomic information quite shocking and enlightening. Medicines should be judged on their own merits and not on the behavior of their sponsoring company. Unfortunately in this case the company's marketing practices call into question the reliability of the very information we would like to analyze.

Katcher Decl. Exh. N at KAIS-044438.

> For all who prescribe or care for patients taking Gabapentin/Neurontin please read on. The critical question: are we and our patients getting their moneys worth with this drug? Some shocking info to follow...

Katcher Decl. Exh. N at KAIS-044446. Because Dr. Jones was clearly identified as a potential witness in documents and deposition testimony provided in discovery, Defendants may not now depose him. Procedural Order ¶ 4.

## IV.   CONCLUSION

Because Kaiser has not designated Dr. Wieder as a trial witness, Defendants may not now depose him. Because Kaiser produced documents and provided deposition testimony during

discovery identifying Drs. Campen, Carrejo, and Jones as potential witnesses, Defendants may not now depose them. Accordingly, the motion should be denied.

Dated: December 16, 2009                                Respectfully submitted,

                                                        By:     /s/ Linda P. Nussbaum
                                                                Linda P. Nussbaum

                                                        KAPLAN FOX & KILSHEIMER LLP
                                                        Linda P. Nussbaum, Esq.
                                                        850 Third Avenue, 14th Floor
                                                        New York, New York 10022

                                                        *Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

*Of Counsel*:

Thomas Greene
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

851239.1                                -11-

-12-

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 16, 2009.

*/s/ Elana Katcher*
Elana Katcher
