UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**MEMORANDUM IN SUPPORT OF PLAINTIFF KAISER'S
EMERGENCY MOTION TO COMPEL DEPOSITION OF CAROL JANNEY**

FACTUAL & PROCEDURAL BACKGROUND

In August 2008, Sales and Marketing Plaintiffs' served an expert report prepared by Dr. Kay Dickersin which found instances of bias, deception, and unethical conduct in *all twenty-one (21)* of the studies conducted by Defendants in the off-label uses at issue in this case. In December 2008, more than a year after the discovery deadline, Defendants responded to the Dickersin Report with the Declaration and Expert Report of Elizabeth A. Field ("Field Report," attached as Exhibit 1 to Declaration of Ilyas J. Rona in Support of Plaintiff Kaiser's Emergency Motion to Compel Deposition Testimony of Carol Janney ("Rona Decl.")). Dr. Field reached an opposite conclusion, finding that "there is no evidence of misconduct on the part of the defendants with regard to Neurontin publications or evidence that they misled the biomedical community regarding the efficacy of Neurontin for these off-label indications." Rather than basing her opinions on the factual record as it stood at the close of discovery, Dr. Field obtained and attached to her report six declarations of people who were involved in some way in the studies and are still loyal to Pfizer. Not surprisingly, all six of the declarants claim that Defendants did nothing wrong. While all of the US-based declarants are listed on Defendants' trial witness list, Plaintiffs are only seeking to depose one of them, the only Field declarant who is a former employee of Parke-Davis—Carol Janney.

Carol Janney is a former biostatistician employed by Parke-Davis. She worked on study 945-209, a placebo-controlled double-blind trial comparing Neurontin to placebo in patients with bipolar disorder. The results of the study were a disaster for Defendants. Neurontin subjects actually fared worse than placebo subjects by a statistically significant margin.

It is Plaintiffs' position that Defendants kept a tight lid on the existence of 945-209 and its negative results, and delayed publication of the results as long as possible, to minimize the

damage that would be inflicted on sales.  This is supported by the evidentiary record amassed in this case, including most importantly the deposition testimony of study 945-209's lead investigator, Dr. Atul Pande.  Dr. Pande was involved in all aspects of study 945-209 and was the lead author of the publication.  It is for this reason that 945-209 is referred to as the "Pande study," even by Defendants' expert Dr. Field.  Because Plaintiffs were initially limited to only thirty (30) depositions of current and former Pfizer employees,[1] Plaintiffs chose to depose Dr. Pande as the person most knowledgeable about study 945-209.

As a result of Pande's deposition, the following facts were made unmistakably clear:

- **April 1998**: the results of the study 945-209 might have been available for analysis ("Pande Dep." attached as Exhibit 2 to Rona Decl. at 198)

- **June 1998**: Dr. Pande knew the preliminary results of his study (Exhibit 2 to Rona Decl., Pande Dep. at 195)

- **July 1998**: Dr. Pande signed a written summary of the complete study results (Exhibit 2 to Rona Decl., Pande Dep. at 333)

- **July 1999**: a manuscript of his study's results was submitted for publication (Exhibit 3 to Rona Decl., at Document 1-6)

- **October 2000**: the study results were published in a journal of extremely limited circulation (455 subscribers) (Id.)

According to Dr. Pande's testimony, there is a one year gap (July 1998 – July 1999) between when the final results were summarized and when the study was submitted for publication.  Defendants have not been able to explain this gap.  Rather than seeking an explanation for the gap from Dr. Pande, which would have opened him up to further deposition, Defendants will attempt at trial to bypass Dr. Pande's testimony altogether (Dr. Pande is not listed on Pfizer's witness list) and claim the absence of such a gap using Ms. Janney's post-

---

[1] Case Management Order No. 5 [Docket No. 736], ¶ II.B.  On July 3, 2007, Plaintiffs' general request to take 8-10 additional depositions was denied.  (Discovery Order No. 13 [Docket No. 801], at 2).  The Court subsequently authorized Plaintiffs to take 4 additional depositions.(Discover Order No. 14 [Docket No. 890], ¶ 5).

discovery deadline testimony that "the complete study results were finalized in March 1999," nine months later than Dr. Pande's testimony indicates that the results were fully analyzed.

This is classic form of sandbagging, as no Pfizer witness and no Pfizer documents support such testimony, and Defendants waited until after the discovery deadline to deploy it.  At trial, Dr. Field will rely on Ms. Janney's recent testimony, which Plaintiffs have not had the opportunity to cross-examine ahead of trial.  Accordingly, Plaintiffs served a subpoena on Carol Janney on December 9, 2009.  Defendants have objected to the deposition, and Ms. Janney has filed a motion to quash in the Western District of Pennsylvania.   (Exhibit 3 to Rona Decl., Motion to Quash Subpoena Duces Tecum, filed in the Western District of Pennsylvania).

## ARGUMENT

**I.  PURSUANT TO 28 U.S.C. § 1407(b), THIS COURT HAS THE SAME POWER AS THE WESTERN DISTRICT OF PENNSYLVANIA TO REQUIRE MS. JANNEY TO APPEAR AT A DEPOSITION**

Despite frequent confusion, it is crystal clear in multidistrict litigation that the Court to which the action has been assigned has the power to order non-parties to appear at depositions. The statutory authority is quite clear: "The judge or judges to whom such actions are assigned… may exercise the powers of a district judge *in any district f*or the purpose of conducting *pretrial depositions* in such coordinated or consolidated pretrial proceedings."  28 U.S.C. § 1407(b). Accordingly, a judge presiding over an MDL case may "enforce, modify, or quash a subpoena directed to an extra-district nonparty," and "hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district" where discovery is being conducted.  See In re Neurontin Mktg, Sales Practices, and Prods. Liab. Litig., 245 F.R.D. 55, 58 (D. Mass. 2007) (quoting U.S. *ex rel.* Pogue v. Diabetes Treatment Ctrs of Am., Inc., 444 F.3d 462, 468-469 (6th Cir. 2006).  In fact, this Court has already ruled on this precise issue once

before, *in this very litigation*, finding that it had jurisdiction over the enforcement of a non-party subpoena issued on a medical marketing firm located in New York.  See Neurontin, 245 F.R.D. at 58-59.  The outcome in this case should be no different.  Any decision whether to enforce or quash the subpoena may be made by this Court.  Given this Court's familiarity with the issues, and its central role in managing this case ahead of a trial that is less than three months away, this Court rather than a court in another jurisdiction is best situated to rule on this issue.

**II.    PLAINTIFFS ARE ENTITLED TO DEPOSE MS. JANNEY BECAUSE SHE IS THE ONLY CONTESTED DEPONENT WHOSE OUT-OF-COURT HEARSAY DECLARATION MADE AFTER THE DISCOVERY DEADLINE IS RELIED UPON BY A TESTIFYING EXPERT**

The issue before the Court is whether a party has a right to depose a person who, after the discovery deadline, submits a declaration that is relied on by a testifying expert, especially where the declaration attempts to contradict the well-developed factual record.  Plaintiffs believe that in such circumstances, a deposition of the person is warranted.  In fact, this situation very much distinguishes Carol Janney from the Kaiser witnesses whose depositions were sought by Pfizer but for the most part denied by this Court.  Unlike those witnesses, Carol Janney is the only witness: (1) whose signed declaration is attached to and specifically relied upon by a testifying expert; and (2) whose signed declaration makes statements that contradict and are otherwise unsupported by the factual record.

**A.    Plaintiffs Had No Reason to Depose Ms. Janney Until Her Declaration Was Belatedly Prepared and Relied Upon by a Testifying Expert**

With respect to bipolar and other mood disorders, much of the upcoming trial will focus on *when* Parke-Davis knew that the results of the "Pande study" were negative, and why it took the company more than two years to publish these disappointing results.  The results of the study

were clearly negative; Neurontin in fact performed worse than placebo.  It cannot be disputed that the company knew by no later than July 1998, when Dr. Pande, the study's lead investigator, wrote a letter to study investigators informing them of the results.  (Exhibit 4 to Rona Decl., Exhibit 18 to the Deposition of Atul Pande).  This was confirmed with the testimony of Dr. Pande himself, who testified during his deposition that "the initial analysis of the study would have been known in 1998, maybe in the June time frame."  (Exhibit 2 to Rona Decl., Pande Dep. at 195).  One month later, Atul Pande wrote the letter to investigators, and according to his testimony the letter "summarizes the results from the 945-209 study."  (Exhibit 2 to Rona Decl., Pande Dep. at 333).

     Given this testimony of the study's lead investigator, there had been no reason—prior to December 2008—to depose any other employees on this point, especially more junior employees such as Ms. Janney.  This situation quickly changed in December 2008, however, when Defendants attempted to change the factual record using the report of Dr. Elizabeth Field.  Dr. Field opines that Defendants did *not* delay publication of the results of the Pande study.  Even through Dr. Pande was the most logical person to offer statements about the handling of his namesake study, Dr. Pande's testimony had already created an unexplained 12-month gap.  Changing his testimony would have required an explanation and would have opened Dr. Pande to another deposition.  Instead, Defendants chose to make an end-run around Dr. Pande's testimony, and sought new testimony from Carol Janney, one of Dr. Pande's subordinates, claiming that the analysis of the Pande study was not complete until 9 months after Dr. Pande had testified that they were complete.  Because the discovery deadline had lapsed, Defendants obviously recognized the Plaintiffs would not be able to depose Ms. Janney.

As a result of this newly-created testimony, Dr. Elizabeth Field was able to reach the conclusion that "no effort was undertaken to delay or suppress the publication and dissemination of the study results." (Exhibit 1 to Rona Decl., Field Report at 19). Dr. Field's reliance on Ms. Janney is explicit:

> Carol Janney…stated in a declaration (attached as Appendix F) that analysis of the Pande study was performed "in an efficient and timely fashion" that "enhanced the scientific quality of the research" and expedited dissemination to the study group and submission to the journal. She states that "no one at Parke-Davis/Warner-Lambert attempted to delay publishing the bipolar disorder data or acted improperly in any manner."

(Exhibit 1 to Rona Decl., Field Report at 20 (citing Janney declaration, Exhibit F to Field Report, at 2-3)). Plaintiffs should have an opportunity to put Ms. Janney's hearsay statements to the test, prior to her testimony at trial.

### B. Ms. Janney's Declaration Is a Naked Attempt to Alter the Well-Established Factual Record Concerning When the Results of the Pande Study Were Known

A deposition of Ms. Janney is particularly necessary because her declaration is at odds with or directly contradicts the testimony of Dr. Pande and the rest of the evidentiary record that had been compiled prior to the discovery deadline. Ms. Janney's declaration is troubling for several reasons. First, Ms. Janney's declaration makes no reference to when the randomization code for the study was broken, a conspicuous omission given the fact that Ms. Janney would have been the person that broke the code. Importantly, Dr. Pande testified that the code was broken in April 1998. (Exhibit 2 to Rona Decl., Pande Dep. at 198). Second, Ms. Janney's declaration similarly makes no reference to the July 1998 letter to the investigators, which summarized the negative results of the failed trial. Pande Dep. at 333. This is another curious oversight because, as lead statistician, a letter containing a statistical analysis would have required her approval. Third, and most significantly, Ms. Janney states in her declaration that

7

"[t]he complete study results and analyses were finalized in March 1999." (Exhibit 1 to Rona Decl., Appendix F to Field Report at 1). The letter to the investigators, which Dr. Pande testified "summarizes the results" of the study, is itself the proof that the complete results of the study were available in July 1998. (Exhibit 2 to Rona Decl., Pande Dep. at 333).

Barring a deposition, Plaintiffs will not be able to discover the factual basis (if any) for Ms. Janney's testimony, and thus Dr. Field's conclusions, and why there is a major discrepancy between Janney's testimony and that of Dr. Pande, the study's lead investigator. If one of them is lying or mistaken, shouldn't this be known before trial?

### III. PLAINTIFFS HAVE OFFERED TO ACCOMMODATE MS. JANNEY'S HEALTH CONCERNS, BUT SUCH OFFERS HAVE BEEN REBUFFED BY PFIZER AND HER COUNSEL

As final grounds for seeking to quash the deposition, Ms. Janney through her counsel has stated that she is starting a 12-week course of chemotherapy beginning December 17th, and thus she is concerned she will be unable to participate in a deposition or collect the documents called for by the subpoena. Plaintiffs are sympathetic to Ms. Janney's plight, and have offered to accommodate her to mitigate her health concerns by dispensing with the requirement to collect documents altogether, limiting the overall duration of the deposition, and allowing Ms. Janney as many breaks as she needs. Ms. Janney's counsel rejected such offers. Plaintiffs also proposed a compromise whereby they would not seek Ms. Janney's deposition testimony if Pfizer would agree to remove her from the witness list. Pfizer's counsel refused. In fact, Pfizer's counsel has indicated that notwithstanding her chemotherapy, they intend to call her as a witness in March. Ms. Janney's counsel has indicated that, notwithstanding her chemotherapy, she will appear at trial if called by Pfizer out of "loyalty" to her former employer.

8

As a final accommodation, Plaintiffs have offered not to depose Ms. Janney unless and until she is certain to travel to Boston to appear at trial, at which point Plaintiffs would like the opportunity to depose her, either in Pittsburgh one week before her scheduled testimony, or in Boston, a day or two prior to her scheduled testimony. In the event there is a deposition, Plaintiffs will continue to accommodate Ms. Janney with as many breaks as she should need.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request an order compelling Carol Janney to appear at a deposition no less than one week prior to her appearance at trial, or face preclusion as a witness.

Dated: December 17, 2009                    Respectfully submitted,


                                            By:   */s/ Linda P. Nussbaum*
                                                  Linda P. Nussbaum

                                            KAPLAN FOX & KILSHEIMER LLP
                                            Linda P. Nussbaum, Esq.
                                            850 Third Avenue, 14th Floor
                                            New York, New York 10022

                                            *Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

                                            Thomas M. Greene
                                            GREENE LLP
                                            33 Broad Street, 5th Floor
                                            Boston, MA 02109

>Barry Himmelstein
>LIEFF CABRASER HEIMANN &
>  BERNSTEIN, LLP
>Embarcadero Center West
>275 Battery Street, 30th Floor
>San Francisco, CA 94111-3339
>
>Thomas M. Sobol
>HAGENS BERMAN SOBOL
>  SHAPIRO LLP
>55 Cambridge Parkway, Suite 301
>Cambridge, MA 02142
>
>*Of Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on December 17, 2009.  Additionally, I served Carol Janney's counsel by email at the following address:

>John H. Williams, Jr.
>600 Grant Street, 44th Floor
>Pittsburgh, PA 15219
>Phone: (412) 566-6000
>JWilliams@eckertseamans.com

>>*/s/ Elana Katcher*
>>Elana Katcher

## CERTIFICATION PURSUANT TO L.R. 7.1

I hereby certify that during December 14 – 17, 2009, I conferred with John H. Williams, Jr., counsel for Ms. Carol Janney, and Thomas E. Fox, counsel for Defendants, via several telephonic conversations and email messages concerning the foregoing motion, but was unable to resolve or even narrow the areas of disagreement.

>>*/s/ Ilyas J. Rona*
>>Ilyas J. Rona
>>GREENE LLP
>>33 Broad Street, 5th Floor
>>Boston, MA 02109