# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br>Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | |

---

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
### MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") submit this reply memorandum in support of their Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404.

### ARGUMENT

In their opposition to Pfizer's motion to transfer, Plaintiffs do not deny that (1) both Kaiser plaintiffs are California corporations, (2) Kaiser does not insure any citizens of Massachusetts and, in fact, abruptly ceased operations in Massachusetts in 1999, over the objections of the State's Attorney General, (3) the vast majority of prescriptions for which Kaiser seeks to recover in this action were written in California, (4) none of the prescriptions for which Kaiser seeks to recover were written in Massachusetts, (5) Pfizer is not a Massachusetts corporation, (6) numerous fact witnesses are located in California, (7) Kaiser asserts claims arising under California law, and (8) none of the claims asserted by Kaiser are governed by Massachusetts law.

Given the facts presented here – where there is such an overwhelming nexus to a particular State based upon where the transactions at issue occurred, where the witnesses were located, and the law that will be applied and, conversely, there is no nexus to the State where the

action is pending – that transfer is appropriate seems clear. Indeed, under similar circumstances, where Kaiser was the defendant rather than the plaintiff, Kaiser insisted that litigation be transferred to California. *See* Defendant's Memorandum in Support of Motion for Change of Venue at 2, *Island View Residential Treatment Ctr. v. Kaiser Permanente*, No. 1:09-cv-3-CW (D. Utah Feb. 27, 2009) (attached as Ex. D to Pfizer's Motion) (arguing that "[t]he factual circumstances and basic legal issues alleged in the Complaint have little, if any, connection to the" State or District where the action was filed).

Plaintiffs argue that whether to transfer this action is discretionary with this Court (Pls.' Opp. [2256] at 1 n.1); however, as the First Circuit has made clear, a court's discretion under 28 U.S.C. § 1404 is not unlimited. *See Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000). In this case, none of the factors identified by Plaintiffs are relevant considerations under section 1404, and the cases upon which they rely are both inapposite and mischaracterized. Essentially, Plaintiffs' arguments confuse the issue of consolidation for pre-trial purposes (which is the *only* purpose of multidistrict litigation) with the question of where the action should be tried. Transfer of this action will not interfere with this Court's ability to continue to supervise coordinated pre-trial proceedings, but it will ensure that the case is tried by a court and heard by jurors in a State that actually has a nexus to the transactions at issue and where the majority of witnesses are located.

I.      **Pfizer's Motion To Transfer Venue Was Timely Filed**

As explained in Pfizer's opening memorandum, motions to change venue pursuant to section 1404(a) are not subject to specific time constraints and cannot be foreclosed by waiver. *See, e.g.*, *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir. 1981); *McDevitt & Street Co. v. Fid. & Deposit Co. of Md.*, 737 F. Supp. 351, 355-56 (W.D.N.C. 1990); *Commercial Solvents Corp. v. Liberty Mut. Ins. Co.*, 371 F. Supp. 247, 251 (S.D.N.Y. 1974). Especially in the context of multidistrict litigation, the appropriate time to move for a transfer of venue is at the conclusion of pretrial procedures. There is little to be gained from seeking an earlier transfer to another district, only to have the case transferred again pursuant to section 1407 to the MDL court. Thus,

MDL courts have repeatedly considered and granted motions to transfer at the conclusion of pretrial proceedings.[1]  In contrast, none of the cases the Plaintiffs rely upon to support their "timeliness" arguments involved multidistrict litigation.

Plaintiffs mischaracterize the proceedings to date when they suggest that there has been some sort of meaningful selection process to identify a "bellwether" case that would have compelled Defendants to raise their objection to venue earlier.  To be sure, no such process has occurred.  The Court indicated, on short notice, its desire to try a Third Party Payor case in February and asked the Plaintiffs to submit a trial plan.  Pfizer opposed both the proposed trial date and Plaintiffs' suggestion that the trial include all of the Coordinated Third Party Payors or, in the alternative, Kaiser.  Initially, Pfizer argued that trial was premature because pretrial proceedings have not been concluded.  Significantly, the Court has not ruled on Pfizer's pending motion for summary judgment.  Likewise, at the time, the Court had not established a schedule for *Daubert* motions.  Even under the current schedule, the time allotted for *Daubert* motions is extremely compressed and contemplates consideration of such motions along with other motions *in limine*.  As the recent decision by Judge Weinstein in *Hood, ex rel. Mississippi v. Eli Lilly & Co.* (In re Zyprexa Products Liability Litigation), ___ F. Supp. 2d ___, 2009 WL 4260857 (E.D.N.Y. Dec. 1, 2009), makes clear, Plaintiffs' assertion that they can establish reliance, loss causation and injury based solely upon an aggregate model is contrary to the overwhelming weight of authority.  At the very least, it is a threshold issue of such profound importance that it should be decided by this Court prior to trial and certified to the First Circuit for appellate review.

Accordingly, as it was Pfizer's position that pretrial proceedings have not been concluded, there was no reason for it to seek a change of venue at that time.  Likewise, Pfizer

---

[1] *See, e.g., In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760, 2008 U.S. Dist. LEXIS 17906, at *16-17 (M.D. Tenn. Mar. 6, 2008); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. H-04-0324, 2007 U.S. Dist. LEXIS 91141 (S.D. Tex. Dec. 10, 2007); *Zeevi v. Am. Home Prods. Corp.*, No. 99-CV-20277, 2002 WL 92902 (E.D. Pa. Jan. 24, 2002); *Altamont Pharmacy, Inc. v. Abbott Labs.*, No. 94 C 6282, 2002 WL 69495 (N.D. Ill. Jan. 18, 2002).

opposed the selection of Kaiser as the first case to be tried. Kaiser attempts to anoint itself a "bellwether," but as Kaiser, the other third-party payors and even this Court have acknowledged, Kaiser's claims are the *least* typical of the claims asserted by the third-party payors. (*See, e.g.*, 9/18/09 Hr'g Tr. at 41:6-20.) Whether a trial of Kaiser's claims will provide relevant information for the guidance of the Court or the parties in future cases, therefore, cannot be determined at this point.[2]

Until this Court's order of November 12, 2009, it was unknown to Pfizer whether there would be a trial in February and who the plaintiff in such trial would be. Upon receipt of this Court's order, Pfizer began analyzing the witnesses that would potentially be called in a trial of Kaiser's claims, and it was apparent that many witnesses were located in California. Significantly, when Kaiser filed its witness list on November 23, 2009, it stated, for the first time, its position that Permanente physicians are not within its control and cannot be compelled to appear for trial in Massachusetts. (*See* Pls.' List of Witnesses to Be Presented at Trial [2179] at 1 n.2.) Shortly thereafter, Pfizer filed its motion to transfer venue, which is well grounded in the relevant 1404 factors.

**II.   Because Multidistrict Litigation Is For Pretrial Purposes Only, The Pending Multidistrict Litigation Before This Court Does Not Trump The Section 1404 Factors, All Of Which Favor Transfer To California**

As the Supreme Court made clear in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), 28 U.S.C. § 1407 "limits a transferee court's authority to the conduct of 'coordinated or consolidated' proceedings and to those that are 'pretrial.'" *Lexecon*, 523 U.S. at 33-34. That multidistrict litigation proceedings authorized by section 1407 are limited to pretrial proceedings is compelled by the statutory directive that the Judicial Panel "remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course." *Lexecon*, 523 U.S. at 34. Likewise, the Supreme Court noted legislative

---

[2] For this reason, this case stands in marked contrast to the *Vioxx* litigation (discussed in Pls.' Opp. at 8 n.8), where the parties participated in a joint selection process to identify several bellwether plaintiffs, and there is no indication that the defendants sought transfer pursuant to section 1404.

4

history that supported its conclusion that the purpose of the multidistrict statute affects only pretrial proceedings, and not the place of trial. *Id.* at 39-40; *see also id.* at 40 ("Both the House and the Senate Reports stated that Congress would have to amend the statute if it determined that multidistrict litigation cases should be consolidated for trial.").

Plaintiffs advocate the blatant circumvention of both Congressional intent when enacting 28 U.S.C. § 1407 and the Supreme Court's interpretation of that statute in *Lexecon* when they argue that plaintiffs can avoid the clear and unequivocal holding of *Lexecon* simply by filing their complaint with the MDL court, notwithstanding the fact that the MDL court resides in a jurisdiction that otherwise has no nexus with the plaintiffs' claims. As the Court presiding over the *Norplant* MDL observed, the practice of direct-filing with the MDL court solely to avoid *Lexecon* is improper:

> In some instances, Norplant lawsuits that are subject to MDL 1038 jurisdiction are being filed directly in this transferee court rather than in what would otherwise be a more appropriate venue. This direct filing strategy not only bypasses the multidistrict litigation statute providing for transfer and later remand, but also threatens to burden this court with unnecessary transfer decisions under 28 U.S.C. § 1404(a).
>
> Transfers under 28 U.S.C. § 1407(a) are done "for the convenience of parties and witnesses and . . . [to] . . . promote the just and efficient conduct of such actions." Section 1407(a) also provides that "[e]ach action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated. . . ." If a party avoids the need for an MDL transfer order by filing directly in this court, the court is unable to rely on § 1407 for the efficient remand of such case to the proper venue after pretrial proceedings are concluded. Instead, the court is forced to engage in the more burdensome task of relying on 28 U.S.C. § 1404(a) in evaluating the need for a change of venue.

*In re Norplant Contraceptive Prods. Liab. Litig.*, 946 F. Supp. 3, 3-4 (E.D. Tex. 1996) (alteration and ellipses in original); *cf. also In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 141 (E.D. La. 2002).

In short, because the MDL statute specifically contemplates that cases will be tried by courts other than the MDL court, the MDL court's greater familiarity with the issues is not a relevant consideration under section 1404. As one court has explained:

>Much of defendants' opposition to transfer stems from the fact that this court served as the MDL transferee court. First, defendants argue that the interest of justice would be better served if this court retains these cases because this court's extensive history and experience during the pre-trial phase of these cases will facilitate further proceedings. That this court has more experience with all of the MDL 997 cases than any other court at this stage of this complex litigation is obvious. Yet this court's familiarity with the cases up until this point does not dictate that it must hold on to the cases until their completion. Such a result is contrary to the requirement that the MDL Panel remand cases that had been transferred for consolidated pre-trial proceedings once those proceedings were completed. This court's role as MDL transferee was to oversee coordinated or consolidated pretrial proceedings. The court's obligations as the MDL transferee court have now been fulfilled. The court has no doubt the courts that subsequently preside over these cases will do so judiciously and competently.

*Altamont Pharmacy*, 2002 WL 69495, at *4.[3]

### III. Plaintiffs Have Not Identified Any Factors Supporting A Massachusetts Venue

#### A. Plaintiffs' Characterization Of This Case As A "National" Case Does Not Justify Blatant Disregard Of The Relevant 1404 Factors

An important factor to be considered under section 1404 is which State has the greater interest in the controversy. *See Atari v. United Parcel Serv., Inc.*, 211 F. Supp. 2d 360, 365 (D. Mass. 2002); *Wellons v. Numerica Sav. Bank, FSB*, 749 F. Supp. 336, 337 (D. Mass. 1990); *Vista HealthPlan, Inc. v. Amgen, Inc.*, No. CV 07-3711, 2007 WL 4144893, at *8 (C.D. Cal. Nov. 13, 2007). In this case, Kaiser has previously admitted that California has the most significant interest in this lawsuit. (*See* Pls' Opp. to Defs.' Mot. to Compel Discovery [422] at 15.)

Kaiser cannot deny the substantial interest that California has in this dispute. And it has not identified any legitimate interest of Massachusetts in its claims. Its only response to this factor, which obviously weighs in favor of transfer, is that its case is "national." First, for the reasons discussed above, Kaiser's attempt to characterize this case as a "bellwether" case should be rejected. Second, the only authority cited by Kaiser for its "nationwide" argument is

---

[3] Plaintiffs rely upon *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978), to support their argument that related actions should be tried by the same judge. (Pls.' Opp. at 8.) In *Factors*, however, the conduct that the plaintiffs sought to enjoin was occurring in New York. *See Factors*, 579 F.2d at 217. New York, therefore, had a significant nexus with the lawsuit.

6

*Berenson v. National Financial Services, LLC*, 319 F. Supp. 2d 1 (D.D.C. 2004). (Pls.' Opp. at 9 n.9.)[4] However, *Berenson* does not even remotely support Kaiser's argument that this Court can disregard the relevant 1404 factors in so called "national" cases. To the contrary, *Berenson* supports Pfizer's motion to transfer. In *Berenson*, the plaintiff opposed transfer on the grounds that deference should be given to its choice of forum. The court noted that a plaintiffs' choice of forum is given less weight in a national class action. *See Berenson*, 319 F. Supp. 2d at 3.[5] Having dispensed with this factor, the court went on to consider the other section 1404 factors. Significantly, the largest percentage of the defendants' clients (the putative class members) resided in Massachusetts, while only a small percentage resided in the plaintiff's chosen forum. *See id.* In addition, the claims arose in Massachusetts. *See id.* at 4. Further, most of the key witnesses and documents were located in Massachusetts. *See id.* In short, *Berenson* does not stand for the proposition that 1404 factors may be disregarded in "national" cases. Instead, the *Berenson* court undertook a careful analysis of the relevant factors and concluded that Massachusetts had the stronger interest in the dispute. A similar analysis of the factors in this case can lead only to the conclusion that this action should be transferred to California.[6]

The *Berenson* court further noted that the greater familiarity of Massachusetts courts with Massachusetts law also favored transfer. As the court explained:

> The most significant of these considerations in this case is the ability of the court to interpret and apply the local law applicable to this litigation. While both forums are equally capable of addressing the federal EFTA claim, the plaintiffs have also asserted claims pursuant to the Massachusetts Truth-in-Savings Law, the Massachusetts Consumer and Business Protection Act, and common law

---

[4] In fact, as a regional insurer providing services in only nine states and the District of Columbia, Kaiser's claims have even less national scope than the claims of Guardian or Aetna, who provide services to a more geographically diverse population.

[5] Similarly, courts have held that the plaintiff's choice of forum is not entitled to deference where, as here, the plaintiff is not a resident of the forum. *See United States ex rel. Ondis v. City of Woonsocket*, 480 F. Supp. 2d 434, 436 (D. Mass. 2007).

[6] Not only should this case be tried by a California court before a California jury, transfer to California would also facilitate the ability of the California citizens, who have a much greater interest in this trial than residents of Massachusetts, to monitor, and even attend, proceedings than if the trial took place in a court almost 3,000 miles and three time zones away.

> claims of intentional misrepresentation, negligent misrepresentation, breach of fiduciary duty, and breach of contract, which will all presumably require application of the law of Massachusetts . . . . Clearly, this Court's Massachusetts colleagues have greater familiarity with Massachusetts law and therefore superior capability to accurately apply Massachusetts law than would this Court.

*Id.* at 4-5. So, too, in this case, both this Court and federal courts in California can be presumed to be equally experienced in applying federal RICO law, but California courts have greater experience with California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, as well as Plaintiffs' unjust enrichment claim under California common law. Indeed, California case law interpreting California's Unfair Competition Law, which differs in significant respects from Massachusetts' consumer protection statute, as well as statutes in other states, is complex. The California Supreme Court's decision in *In re Tobacco II Cases*, 207 P.3d 20 (2009), only serves to illustrate the difficulties of applying the statute, and did not decide every issue arising under the statute. And, notwithstanding this Court's prior MDL experience involving the laws of other States, it has acknowledged that questions of State law are best decided by courts sitting in the relevant State. For example, in *Smith v. Pfizer, Inc.* (In re Neurontin Marketing, Sales Practices & Products Liability Litigation), No. 1:05-cv-11515-PBS, Dkt. 10 (D. Mass. Aug. 14, 2009), this Court reserved ruling on certain issues raised by the Defendants' motion for summary judgment, noting that the issues involved questions of Tennessee law and were "best left for the transferor court in Tennessee to resolve." *Id.* at 2.

### B. The Convenience Of Guardian And Aetna Is Irrelevant

Unable to argue that Kaiser will be inconvenienced by a trial in California, where its corporate headquarters are, Kaiser argues that this Court should consider the convenience of Guardian and Aetna, who are located on the East Coast. However, Guardian and Aetna are not parties to the upcoming trial and no Guardian or Aetna employees are listed as witnesses.[7] To

---

[7] Guardian and Aetna filed separate lawsuits: No. 04-10739 and No. 04-10958. Upon creation of the MDL, this Court consolidated them for pretrial purposes only. (Corrected Case Management Order [15] ¶ 2 (Dec. 16, 2004).) The Court's order made clear that consolidation did "not constitute a determination that the actions . . . should be consolidated for trial." (*Id.* ¶ 4.) Kaiser joined this action by virtue of an amendment to the consolidated complaint. Kaiser could not, by that procedural expedient, effectuate a consolidation for trial, and, indeed, this Court has not ordered a consolidated trial. In any

the extent that Guardian and Aetna are allowed any participation at the upcoming trial, it can only be as amici curiae. As such, their only role would be to provide input to the Court on matters of law. They could not be permitted to appear in front of or address the jury. *See United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991); *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 82 (D.N.J. 1993). Attorneys for Guardian and Pfizer are perfectly capable of monitoring the proceedings from their local offices and submitting whatever amicus briefs on legal issues that the trial court might allow. In any event, Kaiser concedes that the location of attorneys – *even for the parties* – is not a relevant factor under section 1404. *See* Defendant's Reply Memorandum in Support of Motion for Change of Venue at 3, *Island View Residential Treatment Ctr. v. Kaiser Permanente*, No. 1:09-cv-3-CW (D. Utah Mar. 24, 2009, attached as Exh. E to Pfizer's Motion.)

### C.  The Convenience Of Witnesses Clearly Favors Transfer To California

Kaiser cannot dispute that many fact witnesses in this case reside in California. Instead it makes the nonsense argument that because witnesses in Central California cannot be subpoenaed to the Northern District and witnesses in Northern California cannot be subpoenaed to the Central District, that the location of the numerous witnesses in California should be ignored. However, California is a far more convenient forum for all of the California witnesses, and compulsory process will be available there for many more witnesses.

Kaiser states that it will provide live testimony at trial, but that refers only to those witnesses that Kaiser intends to call. Kaiser has not agreed to make witnesses available to Pfizer and, instead, has contended that Permanente physicians cannot be compelled to attend a trial in Massachusetts. (*See* Pls.' List of Witnesses to Be Presented at Trial [2179] at 1 n.2.) Central California witnesses listed by Pfizer, but not Kaiser, include Dr. Mark Buchfuhrer, David Chandler, M.D., Mitchell Danesh, M.D., Dr. Gerner, Dr. Deborha Kubota, Morris Maizel, M.D.,

---

event, this Court has the authority to sever actions for purpose of effectuating transfer. *See, e.g.*, *Cain v. N.Y. State Bd. of Elections*, 630 F. Supp. 221, 225 (E.D.N.Y. 1986); *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1545 (10th Cir. 1996); *Toro Co. v. Alsop*, 565 F.2d 998, 999-1000 (8th Cir. 1977).

Bruce McCarber, M.D., Dr. Charles Philips, and Nicholas Weider, D.O. Transfer of this action to Central District of California would enable Pfizer to compel their attendance at trial. And Pfizer stands a better chance of obtaining the voluntary appearance of witnesses in Northern California if they are not required to fly across the country to appear. Pfizer also continues to seek to identify physicians and patients who are available to testify live at trial.

In contrast, Kaiser has not identified a single witness subject to subpoena by a Massachusetts court that they desire to call and who will be unavailable to them in California. They identify only two witnesses: Lloyd Knapp, who is listed by both Kaiser and Pfizer as a trial witness, and Carol Janney, a former Pfizer employee who is outside the subpoena range of this Court. The residence of witnesses who are outside the subpoena power of this Court, as well as courts in California, is not a relevant factor. And Kaiser cannot point to a single Kaiser witness who will be inconvenienced by attending trial in California. Thus, while Kaiser cannot claim any prejudice from transfer, denial of transfer would impede Pfizer's ability to call witnesses live to trial.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this action be transferred to the Central District of California or, alternatively, the Northern District of California.

Dated: December 21, 2009            Respectfully submitted,

                                                   SKADDEN, ARPS, SLATE,
                                                    MEAGHER & FLOM LLP

                                                  By:    /s/ Mark S. Cheffo
                                                         Mark S. Cheffo

                                                  Four Times Square
                                                New York, NY 10036
                                                Tel: (212) 735-3000

                                                      -and-

SHOOK, HARDY & BACON L.L.P.

By: /s/ Scott W. Sayler
     Scott W. Sayler

2555 Grand Blvd.
Kansas City, MO 64108-2613
Tel: (816) 474-6550

-and-

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
     David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 21, 2009.

/s/ David B. Chaffin
David B. Chaffin

11