UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**PLAINTIFF KAISER'S [CORRECTED] OPPOSITION TO DEFENDANTS'
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**[1]

---

[1] This filing corrects several typographical errors and citations in Dkt. No. 2256. There are no substantive changes.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     THE "INTEREST OF JUSTICE" REQUIRES THAT THE ACTION BE
        TRIED IN THIS DISTRICT .................................................................................... 1

        A.      Defendants Have "Sandbagged" the Court With Their Motion ............... 2

        B.      The Court's Familiarity With The Case, Which Cannot Be
                Duplicated In Another District, Strongly Militates Against Transfer ........ 5

        C.      This Case Is National, Not Local, In Scope ................................................ 9

        D.      This Court Can Correctly Apply California Law ...................................... 10

        E.      Defendants Are Judge Shopping and Seeking to Delay the Trial ............ 11

III.    THE CONVENIENCE OF PARTIES AND WITNESSES DOES NOT
        FAVOR TRANSFER ............................................................................................. 12

        A.      Boston Is A Far More Convenient Forum Than San Francisco or
                Los Angeles for Pfizer, Aetna, and Guardian and Their Witnesses ........ 12

        B.      Kaiser Will Produce Affiliated Witnesses At Trial ................................. 13

IV.     CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allflex USA, Inc. v. Avid Identification Sys., Inc.*,
  No. CIV.A. 06-1109, 2007 WL 2701331 (C.D. Cal. Jan. 11, 2007) .......................................... 2

*Altamont Pharm., Inc. v. Abbot Labs.*,
  No. 94-6282, 2002 U.S. Dist. LEXIS 759 (N.D. Ill. Jan. 18, 2002).......................................... 8

*Berenson v. Nat'l Fin. Servs, LLC*,
  319 F. Supp.2d 1 (D.D.C. 2004).......................................... 10

*Betts v. Atwood Equity Co-op. Exchange, Inc.*,
  No. Civ.A. 88-4292, 1990 WL 92495 (D. Kan. Jun. 13, 1990)................................................ 11

*Boateng v. Gen. Dynamics Corp.*,
  460 F. Supp. 2d 270 (D. Mass. 2006) .......................................... 1

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
  928 F.2d 1509 (10th Cir. 1991) .......................................... 12

*Codex Corp. v. Milgo Elec. Corp.*,
  553 F.2d 735 (1st Cir. 1977).......................................... 1

*E. & J. Gallo Winery v. F.&P. S.p.A.*,
  899 F. Supp. 465 (E.D. Cal. 1994) .......................................... 1,13

*Ergo Licensing, LLC v. Cardinal Health, Inc.*,
  No.Civ.A. 08-259, 2009 WL 2021926 (D. Me. July 13, 2009)................................................ 11

*Factors Etc., Inc. v. Pro Arts, Inc.*,
  579 F.2d 215 (2d Cir. 1975) .......................................... 8

*FTC v. Multinet Marketing, LLC.*,
  959 F. Supp. 394 (N.D. Tex. 1997) .......................................... 5

*In re Aredia & Zometa Prods. Liab. Litig.*,
  No. 06-1760, 2008 U.S. Dist. LEXIS 17906 (M.D. Tenn. Mar. 6, 2008) .................................. 7

*In re Criminal Contempt Proceedings Against Crawford*,
  133 F. Supp. 2d 249 (W.D.N.Y. 2001).......................................... 12

*In re Enron Corp. Sec., Deriv.. & ERISA Litig.*,
  No. 04-0324, 2007 U.S. Dist. LEXIS 91141 (S.D. Tex. Dec. 10, 2007)..................................... 7

*In re Flight Transp. Corp. Secs. Litig.*,
  764 F.2d 515 (8th Cir.1985) .......................................... 12

*In re Neurontin Mktg. and Sales Practices Litig.*,
  342 F. Supp. 2d 1350 (J.P.M.L. 2004).......................................... 6,9

**TABLE OF AUTHORITIES**
**(continued)**

Page

*In re Neurontin Mktg., Sales Practices, and Prods. Liab. Litig.*,
    433 F. Supp. 2d 172 (D. Mass. 2006) ................................................................... 11

*In re Pharm. Ind. Average Wholesale Price Litig.*,
    252 F.R.D. 83 (D. Mass. 2008) ............................................................................ 10

*In re Pharm. Ind. Average Wholesale Price Litig.*,
    478 F. Supp. 2d 164 (D. Mass. 2007) ................................................................... 10

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) .......................................................... 11

*In re Vioxx Prods. Liab. Litig.*,
    --- F. Supp. 2d ---, 2009 WL 2408884 (E.D. La. Aug. 3, 2009) ............................ 8

*Lexecon, Inc. v. Milberg, Weiss, Bershad, Hynes & Lerach*,
    523 U.S. 26 (1998) ................................................................................................ 7

*Mattel, Inc. v. Robarb's, Inc.*,
    139 F. Supp. 2d 487 (S.D.N.Y. 2001) .................................................................... 6

*Mohamed v. Mazda Motor Corp.*,
    90 F.Supp.2d 757, 760 (E.D. Tex. 2000) .............................................................. 12

*N2 Consulting, LLC v. Engineered Fastener Co.*,
    No. Civ.A. 02-308, 2002 WL 31246770, at *2 (N.D. Tex. Oct. 2, 2002) ................ 5

*Pirone v. Macmillan, Inc.*,
    894 F.2d 579 (2d. Cir. 1990) ................................................................................ 8

*Posven, C.A. v. Liberty Mut. Ins. Co.*,
    303 F. Supp. 2d 391 (S.D.N.Y. 2004) .................................................................... 11

*Sony Computer Entm't Am. Inc. v. Am. Medic. Response, Inc.*,
    No. Civ.A. 03-276, 2007 WL 781969 (N.D. Cal. Mar. 13, 2007) ........................... 2

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ................................................................................................ 1

*U.S. v. Balsiger*,
    644 F. Supp. 2d 1101 (E.D. Wisc. 2009) ............................................................... 6

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) .............................................................................................. 1

*Williams Advanced Materials, Inc. v. Target Tech. Co., LLC*,
    No. CIV.A. 03-276, 2007 WL 2245886 (W.D.N.Y. Aug. 1, 2007) ......................... 11

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Zeevi v. Am. Home Prods. Corp.*, 2002 WL 92902 (E.D. Pa. Jan. 24, 2002) ................................ 8


**Other Authorities**

Advisory Committee Note, 1966 Amendments, Fed. R. Crim. P. 21(b) ........................................ 6

Cal. Bus. & Prof. Code § 17200, *et seq* ..................................................................................... 10


MANUAL FOR COMPLEX LITIGATION, FOURTH ............................................................................. 7

*Wright & Miller Fed. Prac. & Proc.* § 3847 ............................................................................... 1

## I.  INTRODUCTION

Kaiser was stunned to receive Defendants' §1404 Motion to Transfer Venue on the eve of trial and some five years after this case was filed.  Kaiser requests that this Court exercise its discretion to deny Defendants' motion and to award Kaiser the costs of this opposition in that the motion is frivolous, tactical and without merit.[2]

## II.  THE "INTEREST OF JUSTICE" REQUIRES THAT THE ACTION BE TRIED IN THIS DISTRICT

Under § 1404(a), an action may be transferred for the convenience of parties and witnesses "in the interest of justice."  *Id.*  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  In this multidistrict litigation proceeding, both the "interest of justice" and "fairness" require that the Kaiser action be tried in this district, by the only judge familiar with the preceding 8 years of related litigation, and more than 5 years of this specific litigation.

Accordingly, in considering the "convenience of parties and witnesses," the Court must not only consider the convenience to Kaiser and Pfizer, but also the convenience to Guardian and Aetna who, pursuant to the Procedural Order, will be affected by the trial, and were encouraged

---

[2]  "The decision to transfer a case pursuant to § 1404(a) is a matter within the discretion of the district court."  *Boateng v. Gen. Dynamics Corp.*, 460 F. Supp. 2d 270, 275 (D. Mass. 2006) (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977)).  A motion made under § 1404(a) is "peculiarly one for the exercise of judgment by those in daily proximity to these delicate problems of trial litigation."  Wright & Miller, *Fed. Prac. & Proc.* § 3847 (quotation omitted).  *See also, E. & J. Gallo Winery v. F.&P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) (§ 1404(a) factors are "in the inherently broad discretion of the Court, allowing the Court to consider the particular facts of each case").  Accordingly, the Court retains discretion to deny transfer where, as here, it would frustrate the Court's considered and considerable efforts to efficiently manage this constellation of litigation.

to participate in it. *See* Procedural Order (Dkt. No. 2172) ¶ 9. Guardian, like Pfizer, is headquartered in New York City, and Aetna is headquartered in Hartford, Connecticut. Both of these cities are far closer to Boston than they are to San Francisco or Los Angeles. Accordingly, the District of Massachusetts is a far more convenient forum than the Northern or Central Districts of California for three of the four parties to the Coordinated Complaint, as well as their affiliated witnesses. *See, e.g., Sony Computer Entm't Am. Inc. v. Am. Med. Response, Inc.*, No. Civ.A. 06-06603, 2007 WL 781969, at *7 (N.D. Cal. Mar. 13, 2007) ("While Defendant's choice of forum is the Eastern District of Texas, it does not reside there so its preference is weighed less heavily."); *Allflex USA, Inc. v. Avid Identification Sys., Inc.*, No. Civ.A. 06-1109, 2007 WL 2701331, at *20 (C.D. Cal. Jan. 11, 2007) (denying motion to transfer; noting that where transfer is appropriate, "Courts favor transferring a case to the district where the *defendant* resides when the plaintiff does not reside in the district in which it brought the action.") (emphasis added).

### A.   Defendants Have "Sandbagged" the Court With Their Motion

At the September 18, 2009 hearing on Defendants' motion for summary judgment, the Court expressed its desire and intention to hold a trial of the claims of one or more of the Coordinated (*i.e.*, non-class) Plaintiffs, and ordered the parties to submit their respective plans for a "bellwether" TPP trial,[3] giving Plaintiffs two weeks to submit a proposal, and Defendants two weeks to respond. *See* Transcript of Sept. 18, 2009 Motion Hearing ("MSJ Transcript"), at 86:5-98:3. In Defendants' own words, the Court's "stated objectives" in requesting the parties' trial plans and holding a trial were to "provide the Court an opportunity to 'sit and listen and understand' the factual, legal, and management issues likely to occur in any subsequent trials and to 'get some findings' that would guide the parties' approach to any subsequent trials."

---

[3] *See* Transcript of Sept. 18, 2009 Motion Hearing, at 89:5-6 ("Why don't I do one TPP first, my own little bellwether TPP case").

Response to Coordinated and Class Plaintiffs' Proposed Trial Plans (Dkt. No. 2133) at 19-20. At no time during that hearing, where the court specifically suggested a trial of the Kaiser case, did Defendants raise a venue issue or possible §1404(a) transfer motion.

On October 2, 2009, the Coordinated Plaintiffs proposed a trial of all three Coordinated Plaintiffs, or, in the alternative, a Kaiser-only trial. *See* Coordinated Plaintiffs' Proposed Trial Plan (Dkt. No. 2118). The Class Plaintiffs proposed a trial of the claims of Kaiser and one of the class plaintiffs, ASEA. *See* Class Plaintiffs' Proposed Trial Plan (Dkt. No. 2119).

On October 19, 2009, Defendants responded at length to Plaintiffs' trial proposals, including a section entitled "The Coordinated Plaintiffs' Alternate Proposal for a Kaiser-Only Trial Should Be Rejected." Nowhere in Defendants' 20-page filing, which was specifically requested by the Court, did Defendants disclose that if the Court elected to hold a Kaiser-only trial—as the Court had already indicated was likely[4]—they would seek to utterly frustrate the Court's stated objectives by moving to transfer venue to California. *See* Response to Coordinated and Class Plaintiffs' Proposed Trial Plans (Dkt. No. 2133).

On October 29, 2009, Plaintiffs filed their Joint Reply In Support of Proposed Trial Plan (Dkt. No. 2149), again proposing "a joint trial on all indications by Kaiser and one or two additional plaintiffs," but that "[s]hould the Court prefer the trial of a single Coordinated Plaintiff, Kaiser is in the best position to effectively prepare for a February 2010 trial," as requested by the Court, and proposed a schedule leading up to a February 22, 2010 trial date. *Id.* at 7-9.

---

[4] *See* Transcript of Sept. 18, 2009 Motion Hearing, at 86:14-18 ("I actually thought one neat little one [trial] would be Kaiser just because it's most at this point -- but I'm not wedded to this because it's unique, and they were most proactive, and they actually had communications with Pfizer"), 90:25 ("I was thinking one TPP and all the indications really soon").

On November 2, 2009, Defendants filed a Proposed Surreply to Coordinated and Class Plaintiffs' Proposed Trial Plans (Dkt. No. 2156-1).  Again, Defendants acknowledged "the Court's stated reasons for suggesting an initial trial — *i.e.*, to provide the Court an opportunity to 'sit and listen and understand' the factual, legal, and management issues likely to occur in any subsequent trials and to 'get some findings' that would guide the Court's and the parties' approach to any subsequent trials," and that "if the Court decides to hold an initial trial involving a single TPP, the selection of that TPP should be driven by the Court's stated reasons . . . ." *Id.* at 9, 10 (citing MSJ Transcript at 86:5-91:10).  Nowhere in the 30-pages of "trial plan" briefing put in by Defendants did they disclose that if the Court ordered a Kaiser-only trial, Defendants would seek to completely frustrate the Court's "stated reasons for suggesting an initial trial" by moving to transfer venue.

On November 12, 2009, after nearly two months of oral and written discussion of the issue, the Court issued its Procedural Order (Dkt. No. 2172), setting a Kaiser-only trial for February 22, 2010, with an aggressive but reasonable schedule leading up to the trial.  Of particular note, the Procedural Order provides that:

> the Court will issue special jury instructions on fact issues so that the findings will have preclusive effect on subsequent litigation. . . . Counsel shall explore options for resolving all cross-cutting issues through the Kaiser trial.

*Id.* ¶ 9.  The parties filed their trial witness lists on November 23, 2009, as ordered.  *See id.* ¶ 3; Plaintiff's List of Witnesses To Be Presented At Trial (Dkt. No. 2179, "Kaiser's Witness List"); Defendants' Expected Trial Witness List (Dkt. No. 2180, "Defendants' Witness List").  Pursuant to the Procedural Order, the parties immediately began identifying and scheduling the depositions of newly-identified trial witnesses.  *See* Procedural Order ¶ 4.

On December 4, 2009, some two and a half months after the Court had ordered the

parties to assist it in identifying an appropriate Coordinated Plaintiff for a "bellwether trial" *in*

*the District of Massachusetts*;[5] after 30 pages of briefing and two live discussions with the Court

on the issue; three weeks after the Court had set a Kaiser-only "bellwether" trial and five years

after Kaiser began litigating its case, Defendants sought to completely frustrate the Court's

"stated objectives" by "sandbagging" Kaiser and the Court with the instant motion to transfer

venue.[6]

**B.      The Court's Familiarity With The Case, Which Cannot Be Duplicated In
            Another District, Strongly Militates Against Transfer**

There is no question that this Court is most familiar with the factual and legal issues in

this litigation.  Five years ago, in assigning this multidistrict litigation proceeding to this Court,

the JPML found that:

> centralization under Section 1407 in the District of Massachusetts
> will serve the convenience of the parties and witnesses and
> promote the just and efficient conduct of the litigation. . . .
>
> In concluding that the District of Massachusetts is an appropriate
> forum for this docket, we note that i) the district is where a False
> Claims Act *qui tam* action predicated on the same facts as those at
> issue in the MDL-1629 actions had been pending for eight years
> and had proceeded to a very advanced stage before being settled;
> and ii) the judge assigned to the constituent MDL-1629
> Massachusetts actions is the same judge who presided over the *qui*

---

[5] No other interpretation of the colloquy with the Court is even remotely plausible.  *See* MSJ
Transcript at 86:5-98:21.

[6] *See, e.g.*, *N2 Consulting, LLC v. Engineered Fastener Co.*, No. CIV A. 02-0308, 2002 WL
31246770, at *2 (N.D. Tex. Oct. 2, 2002) (in denying convenience transfer as creating a
"substantial possibility of undue delay," court noted missed opportunities to alert the Court to
venue, stating, "[s]ignificantly, venue is not even mentioned as a contested issue in the joint
status report.") (citing *FTC v. Multinet Mktg., LLC.*, 959 F. Supp. 394, 395-96 (N.D. Tex. 1997)
("denying motion to transfer venue where defendant failed to raise issue in answer or joint status
report and where 'change in venue now is likely to upset the discovery and trial schedule and
waste judicial resources'")).

> *tam* action and is thus already thoroughly familiar with the issues
> of fact and law raised in the MDL-1629 actions.

*In re Neurontin Marketing and Sales Practices Litig.*, 342 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2004).

What was true then is doubly true now. This Court has presided over litigation presenting the same factual and legal issues presented in a Kaiser trial for *nearly fourteen years*. The Kaiser case, which was brought in this Court, has been pending for five years. The familiarity gained by the Court with the voluminous factual record and cutting-edge legal issues presented by this case cannot be duplicated by a transfer to any other district, and there is no reasonable possibility that a new, randomly selected judge in another district will be prepared to try this case any time soon—even if they have sufficient room in their trial calendar. This strongly militates against transfer. *See, e.g.*, *Mattel, Inc. v. Robarb's, Inc.*, 139 F. Supp. 2d 487, 490-91 (S.D.N.Y. 2001) (denying convenience transfer close to trial, stating "[a]lthough the defendants raise compelling grounds for transfer, the late timing of this motion creates concerns of judicial economy that outweigh considerations of inconvenience and expense to the defendants," because "[t]ransferring the case at this juncture would unnecessarily require another court to become familiar with this action."); *U.S. v. Balsiger*, 644 F. Supp. 2d 1101, 1126-1127 (E.D. Wisc. 2009) (applying identical standard under Fed. R. Crim. P. 21(b),[7] denying convenience transfer where the trial judge and magistrate judge had grown "very familiar with this multi-defendant complex fraud case and have unique knowledge of the case given their involvement in the litigation for the past two years.").

These considerations, which may justify denial of transfer in an *ordinary* case, are greatly magnified in multidistrict litigation proceedings, where the wrongs sought to be redressed are

---

[7] *See* Advisory Committee Note, 1966 Amendments, Fed. R. Crim. P. 21(b) (§ 1404(a) "stat[es] a similar standard for civil cases").

more often than not national in character, as they are in this case.  As the authoritative MANUAL FOR COMPLEX LITIGATION, FOURTH explains, the recommended practice is for the MDL judge to try the case, even if they have to go out of their way to do so:

> For cases transferred to a court by the MDL Panel, the initial question is whether the transferee court has authority to conduct trials of the cases at all.  The Supreme Court ruled in *Lexecon*[8] that a transferee court did not have the authority to transfer cases from another district to itself by ruling on a pretrial motion for change of venue.  *Nothing in that decision, however, precludes the transferee judge from presiding over cases that litigants filed in the transferee district originally*, that transferor courts transferred by ruling on motions change venue, or that the parties consented to have tried in the transferee district.  Section 20.132 discusses these and other practices relating to the trial of cases in transferee courts.
>
> \*　　　\*　　　\*
>
> [T]he policy reasons for the pre-1998 [pre-*Lexecon*] practice remain (1) during the often protracted time of the section 1407 assignment, the transferee judge gains a solid understanding of the case, and it makes sense for trial to be conducted by the judge with the greatest understanding of the litigation; (2) the transferee judge may already be trying the constituent centralized action(s), and there may be efficiencies in adjudicating related actions or portions thereof in one trial; and (3) the transferee judge, if empowered to try the centralized actions, may have a greater ability to facilitate a global settlement.

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, FOURTH ("MCL 4th," or the "Manual"), § 22.93 at 463, § 20.132 at 223 (citations omitted, emphasis added).

In "conduct[ing] a bellwether trial of a centralized action or actions originally filed in the transferee district" (MCL 4th § 20.132 at 224), this MDL transferee Court is following the policy prescription for the federal judiciary.[9]  Indeed, the MCL 4th recommends that if this option is

---

[8] *Lexecon, Inc. v. Milberg, Weiss, Bershad, Hynes & Lerach*, 523 U.S. 26 (1998).

[9] Of the cases cited by Defendants where an action filed in an MDL transferee court by a non-resident plaintiff was subsequently transferred, *none* involved the transfer of so-called "bellwether" cases for trial.  *See In re Aredia & Zometa Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 17906 (M.D. Tenn. Mar. 6, 2008) (no indication transferred action considered a particularly significant or "bellwether" case); *In re Enron Corp. Sec., Deriv.. & ERISA Litig.*,

unavailable to an MDL transferee court, the Court go so far as to ask "the plaintiffs in an action transferred for pretrial from another district . . .. to dismiss their action and refile the action in the transferee district," or even play a game of judicial ping-pong, "remand[ing] to the originating transferor court at the end of section 1407 pretrial proceedings," and then having "the transferor court . . . transfer the action, pursuant to 28 U.S.C. § 1404 or 1406, back to the transferee court for trial by the transferee judge . . . ." *Id.* at 224-25.  This strong preference for having related actions tried by the same judge is a more than sufficient reason for denying transfer.  *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1975) *overruled on other grounds by Pirone v. Macmillan, Inc.*, 894 F.2d 579 (2d. Cir. 1990) (holding that the district court did not abuse its discretion in denying convenience transfer, despite fact no party resided in the forum state, where "two additional lawsuits . . . presenting the identical issue for resolution were pending in the Southern District of New York.  Efficient and responsible judicial administration dictated that these three cases be tried before the same forum.").

   As the Manual makes clear, when determining whether the "interest of justice" would be served or hindered by the transfer of a case *away* from an MDL court for a "bellwether" trial— instead of *to* that court, as the Manual strongly recommends—the Court must consider the

---

2007 U.S. Dist. LEXIS 91141 (S.D. Tex. Dec. 10, 2007) (same); *Zeevi v. Am. Home Prods. Corp.*, 2002 WL 92902 (E.D. Pa. Jan. 24, 2002) (same); *Altamont Pharm., Inc. v. Abbot Labs.*, 2002 U.S. Dist. LEXIS 759, at *14 (N.D. Ill. Jan. 18, 2002) (transfer of cases brought by two plaintiffs who opted out of certified class).  In the *Vioxx Products Liability Litigation*, the first six trials were conducted by the MDL transferee judge in the District of New Orleans, despite the fact that neither the plaintiffs nor the defendant were residents of that state.  *See In re Vioxx Prods. Liab. Litig.*, --- F. Supp. 2d ---, 2009 WL 2408884, at *2 (E.D. La. Aug. 3, 2009) ("One of this Court's first priorities was to assist the parties in selecting and preparing certain test cases to proceed as bellwether trials.  In total, the Court conducted six Vioxx bellwether trials.  The first of the bellwether trials took place in Houston, Texas, while this Court was displaced following Hurricane Katrina.  The five subsequent bellwether trials took place in New Orleans, Louisiana.").  Accordingly, the Vioxx Court's comments re direct filing in that district did not affect the Court's management of the actions, which proceeded as recommended by the Manual.

impact of the proposed transfer on the *entire proceeding*, not merely the individual case proposed for transfer.  It is beyond question that if transfer is granted, the Court will be unable to hold the "bellwether" trial it has unequivocally stated that it requires as the "next step" in the efficient management of this litigation—which is nearly six years old already—for many months.  Accordingly, the transfer of the Kaiser action would not only delay the resolution of this litigation as between Defendants and Kaiser; it would delay the resolution of *all* of the other individual TPP cases waiting in the wings to be tried, and potentially the Court's resolution of the class certification issue—*i.e.*, *the entire "Marketing and Sales Practices" portion of the MDL*, comprised of dozens of cases.  Accordingly, the "interest of justice" requires that Kaiser's claims be tried in this district, before the judge to whom all of the cases were assigned by the JPML to "promote the just and efficient conduct of the litigation."  *In re Neurontin*, 342 F. Supp. 2d at 1351.

 **C.**  <u>**This Case Is National, Not Local, In Scope**</u>

  Defendants argue that California has a greater interest in resolving this "local controversy" than Massachusetts, because Kaiser does business primarily in California, and does none in Massachusetts.  This is not a local controversy.

  This "multidistrict litigation proceeding," as the title suggests, is national in scope, and includes cases transferred here from district courts around the country.  As set forth above, the Court intends the upcoming trial to "resolv[e] all cross-cutting issues," and intends to give this jury's findings on fact issues "preclusive effect in subsequent litigation."  Procedural Order ¶ 9.  Accordingly, just as the residence of a class representative seeking to represent a national class may be given less weight in a § 1404(a) motion than the residence of a plaintiff in

an individual action,[10] the residence of Kaiser, which has volunteered to take the laboring oar in

trying a "bellwether" case intended to resolve them all, is less important than continuity of

judicial oversight in this fourteen year old battle that has generated a "storeroom" full of

documents at the Courthouse with no single fact yet found.

Defendants' argument that it is unfair to burden twelve citizens of this state to sit through

56 hours of testimony for the benefit of Kaiser is absurd.  These jurors will not only be deciding

Kaiser's claims, they will, pursuant to this Court's Procedural Order, be making factual

determinations that at the minimum will have a substantial impact on, and at the maximum be

outcome determinative of, the claims of many other TPPs, including those serving the citizens of

Massachusetts.  Disregarding legal fiction, the average California juror has no greater personal or

theoretical interest in the outcome of this case than the average Massachusetts juror.

> **D.    This Court Can Correctly Apply California Law**

Defendants imply that this Court is incapable of correctly applying California law.  This

Court has repeatedly analyzed and applied California law in the pharmaceutical fraud context,

including California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, the

same California statute sued under by Kaiser.  *See, e.g., In re Pharm. Ind. Average Wholesale

Price Litig.*, 252 F.R.D. 83, 95, 99 (D. Mass. 2008) (applying Cal. Bus. & Prof. Code § 17200, *et

seq.*); *In re Pharm. Ind. Average Wholesale Price Litig.*, 478 F. Supp. 2d 164 (D. Mass. 2007)

(applying California *qui tam* statute).  Indeed, little more than a year ago, this Court analyzed

"cutting edge" issues of reliance under the statute.  *See In re Pharm.*, 252 F.R.D. at 99 (noting,

with respect to whether proof of reliance is required under the statute, that "the caselaw in

California is in a state of flux," and "[t]he Supreme Court of California granted review and has

---

[10] *See, e.g., Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1,3 (D.D.C. 2004) (citing cases).

not yet issued its decision").[11]   Accordingly, this Court is already familiar with, and well-equipped to apply, the California law at issue in this case.  Indeed, if the case were transferred to California, it is unlikely that a randomly selected judge would have as much experience as this Court applying California's Unfair Competition Law to allegations of pharmaceutical fraud, and even less likely that experience would be of such recent vintage.

In any event, "[a] forum's familiarity with the governing law . . . is one of the least important factors in determining a motion to transfer . . . ."  *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004).  Of course, Kaiser's RICO claim is a creature of federal, not state law, and, unlike a California district court, this Court has already worked through many of the legal issues it presents in this particular case.  *See, e.g., In re Neurontin Marketing, Sales Practices, and Prods. Liab. Litig.*, 433 F. Supp. 2d 172, 177-84 (D. Mass. 2006) (determining sufficiency of RICO enterprises plead by Plaintiffs).  *See also Ergo Licensing, LLC v. Cardinal Health, Inc.*, No. Civ. A. 08-259, 2009 WL 2021926, at *9 (D. Me. July 13, 2009) (denying motion for transfer where either transferor or transferee court would be applying federal law).

## E.   Defendants Are Judge Shopping and Seeking to Delay the Trial

Defendants are obviously unhappy with the Court's recent decisions and seek what they perceive as a more hospitable forum.  Such purpose is improper, and a further ground to deny the motion.  *See Williams Advanced Materials, Inc. v. Target Tech. Co., LLC*, No. Civ.A 03-276, 2007 WL 2245886, at *6 (W.D.N.Y. Aug. 1, 2007) ("The purpose of § 1404(a) is not to allow judge-shopping by litigants."); *see Betts v. Atwood Equity Co-op. Exchange, Inc.*, No. Civ. A.

---

[11] The California Supreme Court issued its decision in *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009).

88-4292-R, 1990 WL 92495, at *1 (D. Kan. Jun. 13, 1990) (same); *In re Criminal Contempt Proceedings Against Crawford*, 133 F. Supp.2d 249, 266 (W.D.N.Y. 2001) (same).

Defendants' motion is also a transparent attempt to delay the trial, another more than sufficient reason to deny the motion. *See Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 760 (E.D.Tex. 2000) ("If a litigant resisting transfer successfully shows the Section 1404(a) transfer motion is a dilatory tactic, . . . .then the litigant moving for transfer has failed to show "reasonable promptness" in bringing his transfer motion.").

## III.   THE CONVENIENCE OF PARTIES AND WITNESSES DOES NOT FAVOR TRANSFER

### A.   Boston Is A Far More Convenient Forum Than San Francisco or Los Angeles for Pfizer, Aetna, and Guardian and Their Witnesses

Kaiser joined as plaintiffs in an amended complaint filed by The Guardian Life Insurance Company of America ("Guardian") and Aetna, Inc. ("Aetna"), which filed actions in this district. *See* First Coordinated Amended Complaint (Dkt. No. 29); Third Coordinated Amended Complaint (Dkt. No. 583). As the Court explained in *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509 (10th Cir. 1991):

> Section 1404(a) only authorizes the transfer of an entire action, not individual claims. A court acting under § 1404(a) may not transfer part of a case for one purpose while maintaining jurisdiction for another purpose; the section "contemplates a plenary transfer" of the entire case.

*Id.* at 1518-19 (quoting *In re Flight Transp. Corp. Secs. Litig.*, 764 F.2d 515, 516 (8th Cir.1985)) (other citations omitted).

Accordingly, in considering the "convenience of parties and witnesses," the Court must not only consider the convenience to Kaiser and Pfizer, but also the convenience to Guardian and Aetna who, pursuant to the Procedural Order, will be affected by the trial and were encouraged to participate in it. *See* Procedural Order ¶ 9. Guardian, like Pfizer, is headquartered in New

York City, and Aetna is headquartered in Hartford, Connecticut.  Both of these cities are far

closer to Boston than they are to San Francisco or Los Angeles.  Accordingly, the District of

Massachusetts is a far more convenient forum than the Northern or Central Districts of California

for three of the four parties to the Coordinated Complaint, as well as their affiliated witnesses.

### B.     Kaiser Will Produce Affiliated Witnesses At Trial

Kaiser's Southern California affiliated-witnesses are outside the reach of the subpoena

power for trial in the Northern District of California, and Kaiser's Northern California-affiliated

witnesses are outside of the reach of the subpoena power for trial in the Central District of

California.  Accordingly, Defendants cannot compel the attendance of many of the non-party

witnesses they might seek in either district.  *See E. & J. Gallo Winery v. F.&P. S.p.A.*, 899 F.

Supp. 465, 467  (E.D. Cal. 1994) (denying transfer from E.D. Cal. to C.D. Cal., where "[t]here

are also at least three other distributor/broker witnesses for defendant who are in neither the

Eastern or Central Districts, but in San Francisco, New York, and Wisconsin").  However,

numerous key witnesses affiliated with *both* regions will provide live testimony at a trial in *this*

district as set forth in the Plaintiffs' Witness Statement filed with this Court.  At Defendants'

insistence, the depositions of the majority of the Kaiser witnesses in this action took place in

New York.

In contrast to the attendance of a large number and broad spectrum of Kaiser-affiliated

witnesses, Pfizer, the world's largest pharmaceutical company, with it headquarters a relatively

short distance away, will produce at trial only one current employee with no discernable job title,

and a former biostatistician involved in one of the many studies at issue in the case, whom

Plaintiffs have not yet been able to depose.[12]

---

[12] Lloyd Knapp, described as having "been with Warner-Lambert and then Pfizer for over 30 years, 15 of which he has been involve in Neurontin-related matters;" and Carol Janney,

In light of the gross disparity between the number of Kaiser-affiliated witnesses willing to attend trial in Boston, and Pfizer's extreme reticence to put any of its current or former employees on the stand to face a jury while being cross-examined concerning their behavior, Defendants' complaint that they are being unfairly compelled to try the case on deposition testimony rings hollow.

## IV.   **CONCLUSION**

For the reasons set forth herein, Kaiser respectfully requests that the motion be denied in its entirety and that it be awarded the costs of opposing this motion.

Dated:  December 21, 2009                           Respectfully submitted,


                                                   By:   */s/ Linda P. Nussbaum*
                                                         Linda P. Nussbaum

                                                   KAPLAN FOX & KILSHEIMER LLP
                                                   Linda P. Nussbaum, Esq.
                                                   850 Third Avenue, 14th Floor
                                                   New York, New York 10022

                                                   *Attorneys for Plaintiffs Kaiser Foundation
                                                   Health Plan, Inc. and Kaiser Foundation
                                                   Hospitals*

*Of Counsel*:

Thomas Greene
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

---

described as "formerly a biostatistician at Parke-Davis" who will testify concerning the Pande study.  *See* Defendants' Witness List, Nos. 42, 45.  Kaiser's Emergency Motion to Compel Deposition of Carol Janney (Dkt. No. 2250) was filed on Dec. 17, 2009.

Barry Himmelstein
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 21, 2009.

<u>/s/  Elana Katcher</u>
Elana Katcher