UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------x
                                                :  MDL Docket No. 1629
In re:  NEURONTIN MARKETING, SALES              :
        PRACTICES AND PRODUCTS                  :  Master File No. 04-10981
        LIABILITY LITIGATION                    :
                                                :
------------------------------------------------x  Judge Patti B. Saris
                                                :
THIS DOCUMENT RELATES TO:                       :  Magistrate Judge Leo T.
                                                :  Sorokin
THE GUARDIAN LIFE INSURANCE COMPANY OF          :
AMERICA v. PFIZER INC., 04 CV 10739 (PBS)       :
                                                :
                                                :
                                                :
------------------------------------------------x

**DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S ORDER DENYING
MOTION TO COMPEL IDENTIFICATION OF NAMES AND ADDRESSES
<u>OF POTENTIAL TRIAL WITNESSES</u>**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ........................................................................................................................ 1

MAGISTRATE JUDGE SOROKIN'S ORDER DENYING PFIZER'S MOTION TO
COMPEL IS CLEARLY ERRONEOUS AND CONTRARY TO LAW ............................ 1

I.    Kaiser Should Be Compelled to Provide the Addresses of Physicians Who
Prescribed Neurontin and the Names and Addresses of Kaiser Insureds Who Took
Neurontin ................................................................................................................... 2

II.   Kaiser's Prior Limited Disclosure of Witness Information Is Insufficient ............... 8

III.  Kaiser's Remaining Arguments Must Be Rejected .................................................. 9

     A.    Kaiser's Request to Strike Witness Designations ......................................... 10

     B.    Kaiser's Request for Evidentiary Rulings ..................................................... 11

CONCLUSION .................................................................................................................... 14

# **TABLE OF AUTHORITIES**

Cases                                                                                                           Page

*In re Actimmune Marketing Litigation*, 614 F. Supp. 2d 1037 (N.D. Cal. 2009) .......................... 7

*Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001) ............................................................. 6, 13

*Hernando v. Hamamoto*, No. 07-00620, 2008 WL 1912445 (D. Haw. Apr. 29, 2008) ................. 9

*Hood, ex rel. Mississippi v. Eli Lilly & Co. (In re Zyprexa Products Liability Litigation)*,
   ___ F. Supp. 2d ___, 2009 WL 4260857 (E.D.N.Y. Dec. 1, 2009) .................................... 6, 7

*Iacobucci v. Boulter*, 193 F.3d 14 (1st Cir. 1999) ...................................................................... 12

*In re Inman*, No. 05-73169, 2007 WL 781940 (Bankr. N.D. Ohio Mar. 12, 2007) ..................... 10

*Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*, 585 F. Supp. 2d
   1339 (M.D. Fla. 2008) .............................................................................................................. 7

*Jaffee v. Redmond*, 518 U.S. 1 (1996) .......................................................................................... 3

*Jochims v. Isuzu Motors, Ltd.*, 151 F.R.D. 338 (S.D. Iowa 1993) ................................................. 1

*In re Neurontin Marketing & Sales Practices Litigation*, 244 F.R.D. 89 (D. Mass. 2007) .......... 11

*In re Neurontin Marketing, Sales Practices & Products Liability Litigation*, 257 F.R.D.
   315 (D. Mass. 2009) .................................................................................................................. 4

*Pennsylvania Employees Benefit Trust Fund v. AstraZeneca Pharms. LP*, No. 6:09-cv-
   5003, 2009 WL 2231686 (M.D. Fla. July 20, 2009) ................................................................ 7

*Phillips v. Raymond Corp.*, 213 F.R.D. 521 (N.D. Ill. 2003) ....................................................... 1

*Southern Illinois Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08
   CV 5175, 2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) ......................................................... 7

*Southern Illinois Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08
   CV 5175 (S.D.N.Y. Nov. 6, 2009) ........................................................................................... 7

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774,
   2009 WL 2043604 (D.N.J. July 10, 2009) ............................................................................... 7

*In re St. Jude Medical, Inc.*, 522 F.3d 836 (8th Cir. 2008) ...................................................... 6, 13

*In re TJX Cos. Retail Sec. Breach Litigation*, 246 F.R.D. 389 (D. Mass. 2007) ..................... 6, 13

*United States v. Bruck*, 152 F.3d 40 (1st Cir. 1998) ..................................................................... 1

*United States v. Garcia*, 983 F.2d 1160 (1st Cir. 1993) ............................................................... 1

*United States v. Nixon*, 418 U.S. 683 (1974)..................................................................................3

*VLT, Inc. v. Lucent Techs., Inc.*, No. Civ. A. 00-11049-PBS, 2003 WL 151399 (D. Mass. Jan. 21, 2003)..............................................................................................................1, 2

*Vista Healthplan, Inc. v. Amgen, Inc.*, No. CV 07-3711, 2007 WL 4144893 (C.D. Cal. Nov. 13, 2007) ............................................................................................................6, 13

*Williamson v. Horizon Lines LLC*, 248 F.R.D. 79 (D. Me. 2008).................................................1

*Woodland v. Viacom, Inc.*, 569 F. Supp. 2d 83 (D.D.C. 2008) .....................................................9

**STATUTES AND RULES**

28 U.S.C. § 636(b)(1)(A) ................................................................................................................1

Fed. R. Civ. P. 72(a)........................................................................................................................1

D. Mass. Rule 7.1(A)(2) (2009)....................................................................................................10

D. Mass. Rule 7.1(B)(2) (2009)......................................................................................................9

**MISCELLANEOUS**

12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3069 (2d ed. 1997) .................1

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), Defendants Pfizer Inc and Warner-Lambert Company LLC (together, "Pfizer"), by counsel, hereby object to Magistrate Judge Sorokin's December 14, 2009 Order denying Pfizer's motion [2181] to compel Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser") to identify the last known addresses of physicians who prescribed Neurontin to Kaiser insureds, as well as the names and last known addresses of patients who took Neurontin.  For the reasons discussed below, Pfizer respectfully asks that the Court set aside the Magistrate Judge's Order and grant the requested relief.

## ARGUMENT

### MAGISTRATE JUDGE SOROKIN'S ORDER DENYING PFIZER'S MOTION TO COMPEL IS CLEARLY ERRONEOUS AND CONTRARY TO LAW

A district court may reconsider a non-dispositive ruling of a magistrate judge "'where it has been shown that the . . . order is clearly erroneous or contrary to law.'" *United States v. Bruck*, 152 F.3d 40, 43 (1st Cir. 1998) (quoting 28 U.S.C. § 636(b)(1)(A)); *accord United States v. Garcia*, 983 F.2d 1160, 1166 (1st Cir. 1993).  "The 'clearly erroneous' standard" applies to factual findings, whereas "the more lenient 'contrary to law' standard" applies to legal conclusions.  *Jochims v. Isuzu Motors, Ltd.*, 151 F.R.D. 338, 340 (S.D. Iowa 1993) (citation omitted); *accord Williamson v. Horizon Lines LLC*, 248 F.R.D. 79, 82 (D. Me. 2008).

The Court "should not be hamstrung by the clearly erroneous standard."  12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3069, at 355 (2d ed. 1997).  "[I]t would turn the jurisprudential system on its head to ascribe irrevocable finality (akin to that of a final judgment) to any unreviewed discovery or evidentiary rulings by a Magistrate Judge."  *Phillips v. Raymond Corp.*, 213 F.R.D. 521, 525 (N.D. Ill. 2003).  Here, the Magistrate Judge did not issue a written order, made no fact findings, and simply denied Pfizer's motion without explanation.  Courts grant less deference to magistrate judges' rulings in these circumstances.  For example, in *VLT, Inc. v. Lucent Techs., Inc.*, No. Civ. A. 00-11049-PBS, 2003 WL 151399 (D. Mass. Jan. 21, 2003) (Saris, J.), this Court reviewed a magistrate judge's ruling that a defendant's production of

1

privileged documents was not "inadvertent" within the meaning of a stipulated protective order. *Id.* at *1-2. Because the magistrate judge "did not make fact-findings regarding different categories of documents," the Court reviewed the "full record before [it]" and found that the magistrate's ruling as to certain documents was "clearly erroneous." *Id.* at *4. The record in this case supports the same result.

I. **Kaiser Should Be Compelled to Provide the Addresses of Physicians Who Prescribed Neurontin and the Names and Addresses of Kaiser Insureds Who Took Neurontin**

On November 16, 2009, counsel for Kaiser and Pfizer conferred by telephone regarding the trial of this matter scheduled for February 22, 2010, and the exchange of witness lists, exhibits lists and deposition designations prior to trial. At that time, counsel for Pfizer advised Kaiser's counsel of its intent to list as potential trial witnesses a few Kaiser insureds who were prescribed Neurontin, as well as physicians who prescribed Neurontin to Kaiser insureds. Pfizer's counsel asked that Kaiser provide it with the names[1] and addresses of all such persons so that the attendance of relevant witnesses could be obtained for trial. Although such information is within the exclusive control of Kaiser, counsel for Kaiser declined to provide such information.[2]

As the Supreme Court has repeatedly observed, it is a fundamental and ancient principle

---

[1] As discussed in Section II, below, Pfizer's counsel was unaware during these discussions that Kaiser had already provided lists of the names of doctors who prescribed Neurontin to Kaiser insureds. Despite having already produced this information, Kaiser's counsel vehemently objected to Pfizer's request and represented that Kaiser had won a discovery motion protecting that information. In any event, Kaiser's prior disclosure is insufficient because Pfizer requires the prescribing doctors' current or last known addresses in order to subpoena them for trial.

[2] The scope of this pre-trial motion is much narrower than the previous discovery motions that this Court considered. First, the information is not sought for purposes of discovery, but so that relevant fact witnesses can be contacted in order to secure their attendance at trial. In addition, the earlier discovery motion [402] sought medical records, in addition to the identity of patients and physicians. In contrast, the information sought at this juncture would impose little burden on Kaiser. To reduce the burden even further, on a November 23, 2009 conference call, counsel for Pfizer indicated that Pfizer would accept a list of 75 to 100 randomly selected patients and physicians. Counsel for Pfizer also stated that it would work to reduce any burden on patients by reaching agreement with Plaintiff on a protocol for communicating with them. A HIPAA-compliant protective order is already in place and, therefore, there are no legitimate privacy concerns.

of law that the public and the parties are entitled to every man's evidence. *See Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) ("For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence." (citations and internal quotation marks omitted) (alteration in original)); *United States v. Nixon*, 418 U.S. 683, 710 (1974) ("Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."). Yet, in this case, Plaintiff seeks to obscure the actual clinical experience of treating physicians behind a statistical model and, thereby, deprive the jury of the opportunity to hear every man's evidence.

Pfizer will show that Plaintiff's statistical model fails to do even what it purports to do; that is, correlate Neurontin sales to alleged off-label promotion. But, putting aside even this initial hurdle, Plaintiff has yet to make any attempt to show how its statistical model enables it to prove how many prescriptions were caused by *fraudulent* promotion, how many prescriptions were *ineffective* for the patients for whom they were prescribed, how many physicians would or would not have prescribed Neurontin in the absence of the alleged off-label marketing and how many physicians would or would not have prescribed one of the alleged "cheaper, more optimal" drugs identified by Plaintiff.

Indeed, as this Court has observed, whenever Pfizer has been able to depose individual physicians in this litigation, their testimony has not supported the unrealistic assumptions that underlie Plaintiff's statistical model. For example, this Court observed at the summary judgment hearing:

> I've been living with this case a long time – I've said, "Show me the doctor," you know, "Where's the doctor who says that he wouldn't have done it otherwise? Get me a doctor." And, you know, your doctors have all said it wrongly. They just said, "I wasn't detailed."

(9/18/09 Hearing Tr. at 19:6-16.) The Court further noted:

> Well, did you ask them point-blank, "Had you known that bipolar is no better than a placebo, and it hasn't been approved, and it has these depressive side effects, and there's now a little black box, would you have done it differently?"

3

I've not seen one doctor who said he would have done it differently.

(*Id.* at 20:21-21:1.)  Similarly, the jury has the right to hear from Kaiser's doctors and Pfizer has the right to present them in its defense.

Likewise, in its decision on class certification, the Court noted that Professor Rosenthal's aggregate approach might have "some surface appeal," but "the record in this case demonstrates why the use of spending on fraudulent off-label detailing as a means to ascertain the number of prescriptions subject to the fraud is flawed." *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 330 (D. Mass. 2009).  As the Court explained:

> Significantly, the testimony of the prescribing physicians for the bipolar/mood disorder, nociceptive pain (non-neurologist), and neuropathic pain (non-neurologist) subclass representatives indicates that only one of them, Dr. Gregory A. Rogers, was ever detailed by defendants about Neurontin. And Dr. Rogers testified that all of the Neurontin detailing of his office was with respect to ***on-label*** uses for the drug.

*Id.* (emphasis added).  In support of this statement, the Court cited the following physician testimony:

- "Dep. of Jerrold Gray ('Gray Dep.'), Ex. 14, Docket No. 1175 (containing no evidence that Dr. Gray, the primary care physician for bipolar/mood disorder class representative Wityk, was ever detailed by defendants about Neurontin);"

- "Dep. of John Arness ('Arness Dep.'), at 65-66, Ex. 18, Docket No. 1175 (containing affirmative testimony from Dr. Arness, the only psychiatrist who treated bipolar/mood disorder class representative Varnam and who was deposed, that he was never detailed by defendants about Neurontin and never requested information from defendants about Neurontin);"

- "Dep. of Thaddeus Poe ('Poe Dep.'), Ex. 4, Docket No. 1175 (containing no evidence that Dr. Poe, family doctor for neuropathic pain subclass representative Smith, was ever detailed by defendants about Neurontin (or ever prescribed Neurontin for Smith)."

*Id.*  The Court also noted that "[t]he deposition testimony of the doctors for the bipolar/mood disorder class representatives shows that their decisions to prescribe Neurontin resulted from a wide variety of influences unrelated to the three components of defendants' alleged fraud."  *Id.*  As the Court explained:

> Dr. Gray, primary care physician for bipolar/mood disorder class representative

4

> Wityk, testified that the main reason he prescribed Neurontin for Wityk was that Wityk's prior physician had prescribed Neurontin and Wityk was unwilling to change medication. (Gray Dep. at 50; *see also id.* at 101-102 (explaining that Wityk ceased taking Neurontin for a four or five month period of time because she could no longer afford it with her insurance coverage).) Dr. Arness, psychiatrist for bipolar/mood disorder class representative Varnam, testified that he prescribed Neurontin because of information he had learned about Neurontin from fellow doctors, because of his personal experience in successfully using the drug with other patients, because anticonvulsants like Neurontin were "widely known and widely accepted as a treatment for bipolar disorder," and because Neurontin had a relatively benign set of side effects. (Arness Dep. at 23-25, 62-64.)

*Id.*

Just as Pfizer was clearly entitled to depose the physicians who treated the proposed class representatives, Pfizer should be allowed to introduce at trial similar testimony from Kaiser physicians who prescribed Neurontin, as well as Pfizer insureds who were treated with Neurontin. Towards this end, Pfizer asked Plaintiff to provide it with the names and addresses of such potential trial witnesses. Plaintiff cannot refuse to provide such information based upon its assertion that it will prove its case by use of statistical model.[3] Regardless of the strategic decisions made by Plaintiff regarding its own evidence, Plaintiff cannot dictate the manner in which Pfizer tries its case. As one court has explained in another case where a third-party payor sought to recover from a pharmaceutical manufacturer for alleged off-label prescriptions:

> [I]n order to show causation, Plaintiff will have to prove, for each prescription for which it seeks a refund, that the prescription was for an off-label use, and that the prescribing physician based his or her decision to prescribe for an off-label use on a communication from [the defendant], rather than his or her clinical experience, training and independent medical judgment. Such proof will necessarily require testimony by the prescribing doctors located in Florida. Plaintiff argues that it can prove off-label use of the drugs via an examination of drug-identification and diagnosis codes in the records. ***However, even if Plaintiff can adequately***

---

[3] In fact, when it suits Kaiser's purposes, it does rely upon testimony from its self-selected physicians. For example, in response to the Court's inquiry at the summary judgment hearing regarding the lack of corroborating physician testimony, counsel for Kaiser indicated that they had submitted affidavits from four Kaiser physicians. (9/18/09 Hearing Tr. at 28:2-3.) In other words, Kaiser believes that physician testimony is relevant *only* when it comes from its hand-picked witnesses and supports its theory and that only Kaiser should have access to such evidence. Kaiser's reliance on these self-selected doctors has opened the door to Pfizer's request for a random list of prescribers.

> ***support causation with such proof, [the defendant] will still require physician testimony to defend itself from Plaintiff's claims.*** As [the defendant] points out, if "testimony indicates that the physician acted independently of any statement from or action by [the defendant], [Plaintiff] certainly could not seek a refund from [the defendant] for the prescription."

*Vista Healthplan, Inc. v. Amgen, Inc.*, No. CV 07-3711, 2007 WL 4144893, at *6 (C.D. Cal. Nov. 13, 2007) (emphasis added); *see also In re St. Jude Med., Inc.*, 522 F.3d 836, 840 (8th Cir. 2008) (noting that even if state law permitted plaintiffs to rely on aggregate proof of causation, defendants could not be precluded from presenting individual evidence "negating a plaintiff's direct or circumstantial showing of causation"); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 443 (5th Cir. 2001) (noting that aggregate proof should not be permitted where it would "deprive[] [opposing parties of] the right to a full and fair opportunity to litigate their claims"); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 396 (D. Mass. 2007) (holding that defendants would have the right to introduce individualized evidence at trial to rebut the plaintiffs' evidence of reliance).

In cases involving third-party payors ("TPPs"), courts have repeatedly recognized the relevance of individual physician testimony. Most recently, in *Hood, ex rel. Mississippi v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, ___ F. Supp. 2d ___, 2009 WL 4260857, at *3 (E.D.N.Y. Dec. 1, 2009), Judge Weinstein dismissed almost all of the claims asserted by the State of Mississippi, in its capacity as a third-party payor of medical services.[4] Judge Weinstein recognized that claims by a TPP are the functional equivalent of a class action, *see id.* at *35, and that almost every court to have considered the issue (including numerous appellate courts) has held that individual proof was required to establish reliance, loss causation and injury. As the court explained:

> Despite this court's view to the contrary, appellate class action decisions have held that issues of reliance, loss-causation, and injury are inappropriate for aggregation, due to the need to prove these elements on an individualized basis for each victim or injured party.

---

[4] Judge Weinstein's decision in *Hood* is discussed more fully in Pfizer's Notice of Supplemental Authority in Support of Summary Judgment [2205].

6

> Recent attempts to overcome the individualized proof requirement through expert analyses using advance statistical methods have been rejected by some intermediate courts of appeal, notably by the Court of Appeals for the Second Circuit in *McLaughlin* . . . and in several subsequent decisions relying on *McLaughlin*.
>
> Together, this large body of case law constitutes a now widely held view of aggregate litigation, particularly in the products liability or fraud context, that statistical proof is in most instances insufficient to show reliance, loss-causation, or injury on the part of individual class members or claimants.

*Id.* at *35-36 (citations omitted).

Likewise, in *Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*, 585 F. Supp. 2d 1339 (M.D. Fla. 2008), TPPs sought to recover under RICO and the New Jersey Consumer Fraud Act ("NJCFA") for alleged off-label marketing of Seroquel, contending that they would have paid for cheaper alternative drugs absent the defendants' alleged fraud. Dismissing the plaintiffs' claims, the court explained:

> [I]n the context of this case, establishing that Plaintiffs' injuries were caused by Defendants' misconduct would require an inquiry into the specifics of each doctor-patient relationship implicated by the lawsuit. In other words, each physician who prescribed Seroquel to an individual consumer or health and welfare fund member would have to be questioned as to whether his or her independent medical judgment was influenced by Defendants' misrepresentations, and to what extent.

*Id.* at 1344; *see also In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1052 (N.D. Cal. 2009); *S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175, 2009 WL 3151807, at *6-7 (S.D.N.Y. Sept. 30, 2009);[5] *Pa. Employees Benefit Trust Fund v. AstraZeneca Pharms. LP*, No. 6:09-cv-5003, 2009 WL 2231686, at *6 (M.D. Fla. July 20, 2009); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL 2043604, at *15 (D.N.J. July 10, 2009).

Testimony from Kaiser physicians regarding why they prescribed Neurontin, their

---

[5] Although the court in *Southern Illinois* allowed leave to amend when it dismissed the insufficient complaint, 2009 WL 3151807, at *7, the plaintiffs voluntarily dismissed their claims with prejudice. *See* Joint Stipulation and Order of Dismissal with Prejudice, *S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175 (S.D.N.Y. Nov. 6, 2009). The dismissal was not the result of a settlement.

7

clinical observations regarding Neurontin and its efficacy for their patients, and whether they would have prescribed one of the self-selected alternative drugs identified by Plaintiff is clearly relevant and admissible evidence, as is testimony from Kaiser insureds regarding their experience while taking Neurontin. Plaintiff should, therefore, be required to provide to Pfizer the names and addresses of these potential trial witnesses. Indeed, precluding Pfizer from calling key witnesses in defense of its case is so fundamentally unfair as to result in a denial of Pfizer's due process rights.

## II.    Kaiser's Prior Limited Disclosure of Witness Information Is Insufficient

Before filing this motion, Pfizer's counsel had two telephone conferences with Kaiser's counsel during which Pfizer specifically requested the information sought by this motion, emphasizing that it was doing so in a good faith attempt to resolve the issue without unnecessary motion practice. During a conference call on November 16, 2009, Pfizer requested, *inter alia*, that Kaiser identify physicians who had prescribed Neurontin to Kaiser insureds. Kaiser's counsel vehemently objected, representing that Kaiser had won a discovery motion protecting that information. During a second conference call on November 23, 2009, Pfizer reiterated its request and further indicated that it would accept a list of 75 to 100 randomly selected physicians. Kaiser's counsel again categorically objected. Pfizer's motion followed.

In its opposition brief, Kaiser belatedly revealed that it has already produced the names of physicians who prescribed Neurontin to Kaiser insureds. (Pl. Opp. [2220] at 5-6.) Kaiser does not deny that it was aware of this prior disclosure during the pre-motion conference calls. Yet, for strategic reasons best known to themselves, Kaiser's counsel chose to wait until Pfizer filed its motion before revealing this information in its opposition brief. Pfizer acknowledges its own inadvertent oversight, but submits that if Kaiser had been more forthright during the parties' meet-and-confer sessions, this issue could have been at least partially resolved without the need for motion practice.

Whatever its intended purpose, Kaiser's gamesmanship succeeds only in pulling the rug from under its own arguments. First, Kaiser argues that Pfizer's motion to compel is improper

8

because it is untethered to any discovery request. (Pl. Opp. at 3.) To the contrary, while Pfizer maintains that this is not a discovery motion, Kaiser's own arguments reveal that this motion relates directly to material previously produced pursuant to a discovery order. Second, Kaiser argues that Pfizer's request for information regarding prescribing doctors is "moot." (Pl. Opp. at 5.) This is simply incorrect. Kaiser previously disclosed only the names of prescribing doctors. Pfizer also requested and now seeks to compel Kaiser to identify their addresses. Having previously identified these doctors by name, Kaiser cannot offer any argument or authority for why their addresses should not also be disclosed. Kaiser instead argues that Pfizer should have requested this information years ago (Pl. Opp. at 6 n.7), but this too is incorrect because Pfizer requires the doctors' *current* (or last known) addresses so that it can subpoena them as trial witnesses.

Likewise, having already provided the names of all prescribing doctors, there is no legitimate basis for Kaiser to refuse to provide the names of 75-100 randomly selected patients. As discussed above, Kaiser's purported privacy concerns are meritless, given that Pfizer's counsel has stated that it would work with Kaiser to reduce any burden on patients by negotiating a protocol for communicating with them, and given that a HIPAA-compliant protective order is already in place.

### III.   Kaiser's Remaining Arguments Must Be Rejected

Having erroneously accused Pfizer of filing a "procedurally defective" motion, Kaiser cast procedure to the winds by requesting affirmative relief in its opposition brief without having filed any motion of its own. The only legitimate purpose of an opposition brief is to attempt to show "why the motion should not be granted." D. Mass. R. 7.1(B)(2) (2009). A party seeking affirmative relief must file an appropriate motion, rather than simply requesting un-moved-for relief in an opposition brief.[6] Moreover Kaiser has not made any good faith effort to resolve its

---

[6] *See, e.g., Woodland v. Viacom, Inc.*, 569 F. Supp. 2d 83, 85 (D.D.C. 2008) ("An opposition brief is not the proper vehicle by which to request judgment as a matter of law. Only an appropriate motion seeking such relief, in accordance with the Federal Rules, will serve this purpose."); *Hernando v. Hamamoto*, No. 07-00620, 2008 WL 1912445, *2 n.4 (D. Haw. Apr. 29, 2008) ("[A]n opposition to a

9

requests between the parties before involving the Court, and has not providing the required certificate of consultation.[7] Accordingly, the Magistrate Judge correctly declined to address Kaiser's improper requests for affirmative relief.

However, to the extent that the Magistrate Judge considered Kaiser's arguments as grounds for denying Pfizer's motion, this was clearly erroneous and contrary to law. For the reasons discussed below, Kaiser's arguments have no merit and do not support the denial of Pfizer's motion.

### A.   Kaiser's Request to Strike Witness Designations

Kaiser asked the Magistrate Judge to strike Pfizer's designation of certain trial witnesses on the grounds that they are not specifically designated by name. (Pl. Opp. at 4-5). Beyond the fact that Kaiser has not moved for this relief or given Pfizer any indication that it planned to do so, this request was meritless. In their lists of trial witnesses, both parties expressly reserved the right to supplement and/or amend their lists in certain circumstances, including: if additional witnesses were discovered after the list was filed; if additional witnesses were required for purposes of rebuttal or impeachment; and if otherwise permitted by the Court. (Defendant's Expected Trial Witness List [2180] at 1-2; Plaintiffs' List of Witnesses to Be Presented at Trial [2179] at 1-2.)

Moreover, Kaiser's request to strike witness designations based on lack of specificity is strikingly disingenuous given its refusal to provide witness names and information within its exclusive control. The parties held a series of conference calls regarding Pfizer's trial witness list before the list was filed on November 23, 2009, and there is every indication that Kaiser

---

motion to dismiss is not the appropriate forum for amending a complaint."); *In re Inman*, No. 05-73169, 2007 WL 781940, at *3 (Bankr. N.D. Ohio Mar. 12, 2007) ("While these factors [regarding setting aside entry of default] have been addressed to some extent in Defendant's opposition, the court cannot skip the filing of appropriate motions seeking affirmative relief in accordance with the applicable rules and binding case law.").

[7] "No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." D. Mass. R. 7.1(A)(2) (2009).

knew during this time period that Pfizer was unaware that the names of prescribing doctors had previously been disclosed. Rather than objecting to the lack of specificity or revealing that it had previously disclosed lists of Neurontin prescribers, Kaiser simply allowed the deadline for filing witness lists to expire and now argues that designations of "unnamed" prescribers should be stricken. Having knowingly allowed the November 23, 2009, deadline to pass without objecting to Pfizer's witness designations based on lack of specificity, and having knowingly allowed Pfizer to file a motion to compel disclosure of names that Kaiser had already produced, Kaiser's purported concerns with "disrupt[ion]" of the Court's pre-trial schedule (Pl. Opp. at 5) cannot be taken seriously and should be rejected.

### B.     Kaiser's Request for Evidentiary Rulings

Kaiser argues that the testimony of its insureds is irrelevant and inadmissible on the issue of efficacy because anecdotal case reports do not prove that a drug is effective. (Pl. Opp. at 7-10.) Kaiser's argument is fatally flawed for a number of reasons.

First, Kaiser's argument presupposes that Neurontin is ineffective in all patients for the relevant off-label uses. However, Kaiser has not even alleged, let alone established, any such thing.[8] In opposing summary judgment, Kaiser emphasized that the issue of "whether Neurontin is ineffective for the treatment of the medical indications at issue . . . is not the standard that the Coordinated Plaintiffs have pled, nor to which this Court has held them." (Coord. TPP's Mem. in Opp. to Summ. J. [1744] at 18.) Moreover, even if Kaiser had alleged that Neurontin is ineffective for the relevant off-label uses, it would bear the burden of proving that allegation. *See In re Neurontin Marketing & Sales Practices Litigation*, 244 F.R.D. 89, 104 (D. Mass. 2007) ("[Class Plaintiffs] will be required to prove . . . that they were injured (*i.e.*, suffered economic loss) by virtue of the Neurontin's inefficacy for [off-label] condition[s]."). As set forth in Defendants' pending summary judgment motion, Kaiser cannot satisfy this burden because its

---

[8] Nor can Kaiser establish that any given prescription of Neurontin for an off-label use was caused by a fraudulent misstatement.

own experts concede there is legitimate scientific evidence of Neurontin's efficacy, and Kaiser continues to encourage Neurontin's use for the relevant off-label indications. (Reply Mem. in Supp. of Summ. J. [1785] at 22-30.)  Some examples of Kaiser's current guidelines recognizing or endorsing Neurontin's use for relevant off-label indications are provided in Defendants' Rule 56.1 Statement of Undisputed Material Facts [1693] at ¶¶ 80-87.  But even if the Court were to determine that there are triable issues of fact as to efficacy, Kaiser is not entitled to the exclusion of otherwise relevant evidence based solely on its hope that the jury will decide this issue in its favor.

Second, even though Kaiser has undertaken the burden of proving that every single off-label Neurontin prescription to its insureds caused economic injury, Kaiser argues that case reports showing that its insureds benefited from the drug are irrelevant and inadmissible. Kaiser's argument ignores the applicable evidentiary standard.  To be relevant, evidence does not need to be independently dispositive of disputed issues.  Rather, evidence is "relevant" if it has "'any tendency to make the existence'" of any material fact "'more probable or less probable than it would be without the evidence.'"  *Iacobucci v. Boulter*, 193 F.3d 14, 20 (1st Cir. 1999). Even though Pfizer does not have the burden of proving efficacy, it will present expert testimony – including the testimony of Shawn J. Bird, M.D., Gary J. Brenner, M.D., Ph.D., Michael J. McLean, M.D., Ph.D., Alan M. Rapoport, M.D., Robert Gibbons, Ph.D., Anthony Rothschild, M.D., and Andrew E. Slaby, M.D., Ph.D., M.P.H. – and other scientific evidence demonstrating that Neurontin can be and has been effective in treating the relevant off-label indications.  To date, Kaiser has not moved to exclude any of these experts.  Particularly against the background of Pfizer's expert testimony and other scientific evidence of efficacy, the testimony of individual Kaiser insureds is plainly relevant to the question of whether those insureds benefited from the drug.

Third, individual insureds' experiences with Neurontin are highly relevant to the issue of whether Kaiser's proposed alternative drugs are more optimal than Neurontin in treating the relevant off-label conditions.  Kaiser has provided the Court with no expert report that explains

how Kaiser purports to show, on an aggregate basis, whether any prescriptions that physicians might have prescribed were both cheaper and more optimal than Neurontin.  As Pfizer has previously argued, this cannot be determined on an aggregate basis because individual Kaiser insureds may not have been candidates for the proposed alternative drugs due to various patient-specific factors, including: idiosyncratic susceptibility to side effects and other risks, interactions with concomitant drugs, severity of symptoms, and whether the patient had already tried the alternative drugs without success.  (Reply Mem. in Supp. of Summ. J. [1785] at 28-29.)  For example, Pfizer's expert Dr. Alan M. Rapoport explains that "[b]ecause treating [any patient] is a highly individualized process, the optimal treatment will differ from one patient to the next.  No one drug or list of drugs can therefore be said to be superior to gabapentin for all patients."  (Rapoport Report at 6, Exhibit 51 to James Decl. [1692].)  Accordingly, patients' individual experiences with Neurontin and proposed alternative drugs are highly relevant to the issue of economic injury.

Fourth, the fact that Kaiser and its experts believe they are capable of addressing these issues in the aggregate (which Pfizer disputes) does not prevent Pfizer from presenting individualized evidence negating essential elements of Kaiser's claims.  *See, e.g., Vista Healthplan, Inc.*, 2007 WL 4144893, at \*6; *In re St. Jude Med., Inc.*, 522 F.3d at 840; *Arnold v. Garlock, Inc.*, 278 F.3d at 443; *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. at 396.

Kaiser's reliance on *Daubert* motions in cases addressing expert causation testimony proffered by plaintiffs is misplaced.  (Pl. Opp. at 8-10.)  In the cases Kaiser cites, the plaintiffs had the burden of proving general causation and relied solely upon anecdotal reports to meet their burden.  Here, Kaiser has the burden of proving economic injury.  Having chosen to pursue its claims on an aggregate basis – without presenting any individualized evidence regarding even one prescription written by a single doctor to a single Kaiser insured – Kaiser has undertaken the heavy burden of proving either (1) that Neurontin is categorically ineffective for all patients, or (2) that cheaper alternative drugs are categorically as effective or more effective with fewer side effects than Neurontin for all patients.  Because Kaiser's claims depend upon such absolute

positions, a single example of Neurontin's positive benefits is logically sufficient to defeat those claims. Thus, the individual experiences of Kaiser insureds are not merely relevant, but likely fatal to the extreme positions Kaiser has undertaken the burden to prove.

For all of these reasons, the testimony of prescribing doctors and Kaiser insureds is highly relevant to this case.

## **CONCLUSION**

For all the foregoing reasons, the Court should set aside Magistrate Judge Sorokin's Order denying Pfizer's motion and issue an Order compelling Kaiser to identify the last known addresses of physicians who prescribed Neurontin to Kaiser insureds, as well as the names and last known addresses of patients who took Neurontin.

Dated: December 23, 2009   Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By:   /s/ Mark S. Cheffo
        Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

-and-

WHITE AND WILLIAMS LLP

By:   /s/ David B. Chaffin
        David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 330-5000

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company*

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 23, 2009.

                                                  /s/ David B. Chaffin  
                                                  David B. Chaffin