UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re:  NEURONTIN MARKETING, SALES PRACTICES,
        AND PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC., 04 CV 10739 (PBS)

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE ALL EVIDENCE OF OR
<u>REFERENCES TO CONDUCT UNRELATED TO NEURONTIN</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .....................................................................................................................3

I.   The August 2009 Settlement Represents A Compromise Of Disputed Claims,
     Inadmissible Under Rule 408 ..................................................................................3

II.  The August 2009 Settlement and Pharmacia Plea Are Not Relevant To Any Issue
     In This Litigation And Contain Inadmissible Hearsay ............................................4

     A.   Allegations Made In Litigation Involving Other Products Are Irrelevant
          and Inadmissible Hearsay ..............................................................................4

     B.   The Evidence Should Be Excluded As Unfairly Prejudicial .........................5

III. Introduction Of The Criminal Plea Is Irreconcilable With The Supreme Court's
     Decisions In *Campbell* And *Philip Morris* And Will Result In A Violation Of
     Defendants' Due Process Rights .............................................................................8

IV.  The August 2009 Settlement and Pharmacia Plea Constitute Improper Character
     Propensity Evidence ............................................................................................11

V.   The August 2009 Settlement And Pharmacia Plea Are Not Admissible As
     Impeachment Evidence ........................................................................................13

VI.  Evidence Of The Plea Cannot Be Admitted On The Issue of Punitive Damages ............13

CONCLUSION ...............................................................................................................17

## TABLE OF AUTHORITIES

### CASES

*BMW of N. America, Inc. v. Gore*, 517 U.S. 559 (1996)..................................................9

*Barnes v. Koppers, Inc.*, No. 3:03CU60-P-D, 2006 WL. 940279
    (N.D. Miss. Apr. 11, 2006) .......................................................................5

*Becker v. ARCO Chemical Co.*, 207 F.3d 176 (3d Cir. 2000)........................................12

*Boston Beverage Corp. v. Turner*, 81 B.R. 738 (D. Mass. 1987)....................................4

*Colonial Refrigerated Transport, Inc. v. Mitchell*, 403 F.2d 541 (5th Cir. 1968)..........4

*Cosgrove v. Merrell Dow Pharms., Inc.*, 788 P.2d 1293 (Idaho 1989) ...........................5

*Coursen v. A.H. Robins Co.*, 764 F.2d 1329 (9th Cir. 1985)..........................................5

*Crawford v. Yellow Cab Co.*, 572 F. Supp. 1205 (N.D. Ill. 1983) ...............................12

*Derderian v. Polaroid Corp.*, 121 F.R.D. 9 (D. Mass. 1988) ........................................3

*Diaz v. Cianci*, 737 F.2d 138 (1st Cir. 1984)..................................................................7

*Durham v. Vinson*, 602 S.E.2d 760 (S.C. 2004)............................................................16

*Estate of Embry v. GEO Transport of Indiana, Inc.*, 478 F. Supp. 2d 914 (E.D. Ky. 2007) ........16

*Fisher v. Am. Gen. Fin. Co.*,  52 F. App'x 601 (4th Cir. 2002) .....................................12

*Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3d Cir.  1991) ...................................10

*Gil de Rebollo v. Miami Heat Ass'ns*, 137 F.3d 56 (1st Cir. 1998)................................7

*Gober v. Ralphs Grocery Co.*,  40 Cal. Rptr. 3d 92 (Ct. App. 2006) ...........................16

*Golt v. Phillips*, 517 A.2d 328 (Md. 1986)....................................................................14

*Grant Thornton, LLP v. FDIC*, Nos. 1:00-655, 2007 WL. 518421
    (S.D.W. Va. Feb. 13, 2007) .....................................................................6

*Greycas Inc. v. Proud*, 826 F.2d 1560 (7th Cir. 1987) .................................................4

*Guild v. GMC*, 53 F. Supp. 2d 363 (W.D.N.Y. 1999) ..................................................4

*Holdgrafer v. Unocal Corp.*, 73 Cal. Rptr. 3d 216 (Ct. App. 2008)..............................16

*IGEN International, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303 (4th Cir. 2003) ...............16

*International Shoe Machine Corp. v. United Shoe Machine Corp.*,
    315 F.2d 449 (1st Cir. 1963) ........................................................................6

*Jankins v. TDC Management Corp.*, 21 F.3d 436 (D.C. Cir. 1994) ...............................12

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003) ........................14

*Ky. Farm Bureau Mutual Insurance Co. v. Rodgers*, 179 S.W.3d 815 (Ky. 2005) ...................16

*Lanham v. Whitfield*, 805 F.2d 970 (11th Cir. 1986)......................................5

*Lexy v. Remington Arms Co.*, 836 F.2d 1104 (8th Cir. 1988) ........................5

*Lindsey v. Normet*, 405 U.S. 56 (1972)..................................................6

*Madrid v. Perot Sys. Corp.*, 30 Cal. Rptr. 3d 210 (Ct. App. 2005) ............................14

*McInnis v. A.M.F., Inc.*, 765 F.2d 240 (1st Cir. 1985)..............................................3, 4

*McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227 (Ct. App. 2006) ............................14

*McLeod v. Parsons Corp.*, 73 F. App'x 846, 853-54 (6th Cir. 2003) ............................5

*McKinnon v. Skil Corp.*, 638 F.2d 270 (1st Cir. 1981) ....................................4

*Melchior v. New Line Products, Inc.*, 131 Cal. Rptr. 2d 347 (Ct. App. 2003)............................14

*In re Neurontin Marketing & Sales Practices Litigation*,
    433 F. Supp. 2d 172 (D. Mass. June 12,  2006).............................................7

*Olson v. Ford Motor Co.*, 481 F.3d 619 (8th Cir. 2007)...................................................5

*Payphone v. Brooks Fiber Commc'ns of R.I.*, 126 F. Supp. 2d 175 (D.R.I. 2001).....................14

*Pedroza v. Lomas Automobile Mall, Inc., No. CIV 07-0591*,
    2009 WL. 1300944 (D.N.M. Apr. 2, 2009) .................................................16

*Philip Morris USA v. Williams*, 549 U.S. 346 (2007).........................................*passim*

*Richardson v. Tricom Pictures & Products, Inc.*, 334 F. Supp. 2d 1303 (S.D. Fla. 2004),
    *aff'd*, 183 F. App'x 872 (11th Cir. 2006)........................................................16

*Saldana Sanchez v. Vega Sosa*, 175 F.3d 35 (1st Cir. 1999)........................................................10

*Shugart v. OEA, Inc.*, No. A099649, 2005 WL. 1503812 (Cal. Ct. App. June 27, 2005) ............15

*Smith v. Jones, Gregg, Creehan & Gerace, LLP*, 2:08-c 2008 WL. 5129916
    (W.D. Pa. Dec. 5, 2008)............................................................................................................7

*State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003)..............*passim*

*Stroud v. Abington Mem'l Hospital*, 546 F. Supp. 2d 238 (E.D. Pa. 2008)..................................16

*United States v. Gilbert*, 229 F.3d 15 (1st Cir. 2000) ............................................................11, 12

*United States v. Nascimento*, 491 F.3d 25 (1st Cir. 2007) ...........................................................7

*United States v. Perez-Perez*, 72 F.3d 224 (1st Cir. 1995)..........................................................13

*United States v. Solorio-Soto*, 300 F. App'x 487 (9th Cir. 2008) ................................................11

*United States v. Varoudakis*, 233 F.3d 113 (1st Cir. 2000)........................................................11

*Utz v. Johnson*, No. Civ.A. 04-CV-0437, 2004 WL. 2812050 (E.D. Pa. Dec. 8, 2004)..............16

*Walden v. Georgia-Pacific Corp.*, 126 F.3d 506 (3d Cir. 1997) .................................................13

*Williams v. Drake*, 146 F.3d 44 (1st Cir. 1998)......................................................................6, 7

*Wohlwend  v. Edwards*, 796 N.E.2d 781 (Ind. Ct. App. 2003) ...................................................16

*Wolf v. Procter & Gamble Co.*, 555 F. Supp. 613 (D.N.J. 1982)...................................................4

*In re XE Services Alien Tort Litigation*, ___ F. Supp. 2d ___,
    2009 WL. 3415129 (E.D. Va. Oct. 21, 2009)........................................................................14

## STATUTES AND RULES

Cal. Bus. & Prof. Code §§ 17200, et seq....................................................................................13

Fed. R. Evid. 401 ........................................................................................................................1

Fed. R. Evid. 402 ........................................................................................................................1

Fed. R. Evid. 403 ........................................................................................................................1

iv

Fed. R. Evid. 404 ........................................................................................................... 1, 12

Fed. R. Evid. 408 ............................................................................................................. 3, 4

Fed. R. Evid. 613 ............................................................................................................... 13

Pursuant to Federal Rules of Evidence 401, 402, 403, and 404, Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum of law in support of their accompanying motion *in limine* to exclude at trial any and all evidence of or reference by Plaintiffs or their counsel before the jury to conduct unrelated to Neurontin, including (i) an August 31, 2009 settlement among Pfizer, the United States Department of Justice, and certain other government agencies (collectively, the "Government"), pursuant to which Pfizer and the Government agreed to settle certain qui tam actions against Pfizer involving drugs other than Neurontin (the "August 2009 Settlement") and (ii) a plea agreement between the Government and Pharmacia & Upjohn Company, Inc. (a company that is not a party to this litigation) involving the drug Bextra (the "Pharmacia Plea"), as well as any related government finding or investigation in connection with the August 2009 Settlement or Pharmacia Plea.

## PRELIMINARY STATEMENT

On August 31, 2009, Pfizer entered into a Settlement Agreement (the "August 2009 Settlement") with the United States Department of Justice, and certain other government agencies (collectively, the "Government"), pursuant to which Pfizer and the Government agreed to settle certain *qui tam* actions against Pfizer which involved the following drugs and time periods:  (1) Bextra (February 1, 2002 through April 30, 2005); (2) Geodon (January 1, 2001 through December 31, 2007); (3) Zyvox (January 1, 2001 through February 28, 2008); (4) Lyrica (September 1, 2005 through October 31, 2008).[1]  The August 2009 Settlement also resolved claims arising out of allegations that Pfizer paid illegal remuneration to health care professionals in connection with the drugs Aricept, Celebrex, Lipitor, Norvasc, Relpax, Viagra, Zithromax, Zoloft and Zyrtec.  (August 2009 Settlement at 3-5.)

Neither the August 2009 Settlement nor the Pharmacia Plea involved Neurontin and none

---

[1] A copy of the August 2009 Settlement is attached as Exhibit A to the accompanying Declaration of Mark S. Cheffo.

of the Defendants in this case pled guilty to any charges in connection with the settlement or related investigations.  The only guilty plea entered in connection with the settlement was by a Pfizer subsidiary, Pharmacia & Upjohn Company, Inc., to one count of violating federal law involving the promotion of the drug Bextra.  (August 2009 Settlement at 2; Pharmacia Plea.)[2]

The Supreme Court has made clear that liability cannot be imposed based upon conduct that did not cause harm to the Plaintiff.  To punish a defendant based upon harm to persons "not before the court . . . would amount to a taking of 'property' from the defendant without due process."  *Philip Morris USA v. Williams*, 549 U.S. 346, 349 (2007).  The only conceivable reason Plaintiffs would seek to place the August 2009 Settlement or Pharmacia Plea before the jury is to invite the jury to decide the case based not on the facts and the law at issue, but instead on a visceral reaction to conduct that is wholly irrelevant to the issues in this litigation.  The Supreme Court has made clear that courts should not countenance desultory attempts to find a relevance hook that only obscures the real − and impermissible − purpose for which such evidence is offered:  to induce the jury to punish a defendant for conduct that is not before them.

Evidence related to the August 2009 Settlement and Pharmacia Plea, as well as any related litigation or government investigation, is inadmissible for several reasons.  First, introduction of the August 2009 Settlement is precluded by Federal Rule of Evidence 408.  Second, introduction of the August 2009 Settlement and Pharmacia Plea would violate Pfizer's due process rights.  Third, the August 2009 Settlement and Pharmacia Plea are wholly irrelevant to the claims in this case and should be excluded on that ground alone under Rules 401 and 402 of the Federal Rules of Evidence.  Fourth, the unfair prejudice and undue delay that evidence of or references to the August 2009 Settlement or Pharmacia Plea would inevitably generate far outweigh their non-existent probative value and require its exclusion under Rule 403.  Finally, given the lack of relevance of the Plea to Plaintiffs' claims, the only plausible reason that Plaintiffs might have for introducing it would be as improper character evidence to attempt to

---

[2] A copy of the Pharmacia Plea is attached as Exhibit B to the accompanying Declaration of Mark S. Cheffo.

establish that Pfizer is a "bad actor."  Rule 404(b) flatly prohibits this.

Accordingly, as set forth in greater detail below, the Court should preclude Plaintiffs from introducing or otherwise referencing the August 2009 Settlement or Pharmacia Plea before the jury.

## ARGUMENT

### I.   The August 2009 Settlement Represents A Compromise Of Disputed Claims, Inadmissible Under Rule 408

The August 2009 Settlement makes clear that it is a "compromise of disputed claims" and not an admission of facts or liability by Pfizer.  (August 2009 Settlement at 5-6.)[3]  As such, the August 2009 Settlement is inadmissible under Federal Rule of Evidence 408, which precludes the admission of any agreement of compromise, or offer to compromise, to prove liability for the claim that is the subject of the compromise.

> The exclusion of evidence of settlement offers is justifiable on two grounds.  First, the rule illustrates Congress' desire to promote a public policy favoring the compromise and settlement of claims by insulating potential litigants from later being penalized in court for their attempts to first resolve their dispute out of court.  Second, such evidence is of questionable relevance on the issue of liability or the value of a claim, since settlement may well reflect a desire for peaceful dispute resolution, rather than the litigants' perceptions of the strength or weakness of their relative positions.

*McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247 (1st Cir. 1985).  Significantly, the First Circuit has made clear that Rule 408 applies to completed offers of settlement arising out of other transactions with other parties.  *See id.*  No plausible argument could be advanced for admitting a settlement involving other drugs, when it is clear that evidence of a settlement involving Neurontin would be inadmissible.  "[T]he relevance of the settlement to the validity of the claim cannot logically be considered stronger in the former instance than in the latter."  *Id.*[4]

---

[3] The only admissions made in connection with the August 2009 Settlement Agreement are those related to the Pharmacia Plea regarding Bextra and certain admissions regarding the antibacterial agent Zyvox.  Such provisions of the Settlement Agreement are independently inadmissible for the additional reasons set forth in this memorandum.

[4] Rule 408 also precludes any admissions of fact made in connection with a settlement.  *See* Fed. R. Evid. 408(a)(2); *Derderian v. Polaroid Corp.*, 121 F.R.D. 9, 11 (D. Mass. 1988).  Thus, the limited
*(cont'd)*

In this case, the only purpose for which Plaintiffs seek to offer the August 2009 Settlement is to show that Pfizer engaged in off-label marketing of other drugs. In other words, Plaintiffs seek to offer the evidence precisely for the purpose prohibited by Rule 408. Because the August 2009 Settlement does not involve Neurontin, Plaintiffs cannot conceivably bring the evidence within one of the exceptions provided in Rule 408. Admission of a settlement agreement in violation of Rule 408 constitutes prejudicial error warranting a new trial. *See McInnis*, 765 F.2d at 246-47; *see also id.* at 252 ("[I]t is doubtful that any instructions, no matter how clear and comprehensive, could eradicate the prejudice engendered by the admission of the release in this case.").

## II.     The August 2009 Settlement and Pharmacia Plea Are Not Relevant To Any Issue In This Litigation And Contain Inadmissible Hearsay

### A.     Allegations Made In Litigation Involving Other Products Are Irrelevant and Inadmissible Hearsay

Recognizing that allegations made in other lawsuits are just that – allegations – courts routinely exclude such evidence. First, allegations made in other litigation (even if recited as background in a settlement agreement) constitute inadmissible hearsay. The only purpose for which such evidence could be offered would be to prove the truth of the matter asserted (that Pfizer or its subsidiaries engaged in the conduct alleged) and, therefore are hearsay for which there is no exception. *See McKinnon v. Skil Corp.*, 638 F.2d 270, 278 (1st Cir. 1981); *see also Boston Beverage Corp. v. Turner*, 81 B.R. 738, 747 (D. Mass. 1987) (pleadings from other cases were hearsay if offered to prove the truth of the allegations contained therein); *Guild v. GMC*, 53 F. Supp. 2d 363, 368 (W.D.N.Y. 1999) (finding customer complaints to be inadmissible hearsay); *Wolf v. Procter & Gamble Co.*, 555 F. Supp. 613, 620 (D.N.J. 1982) (even assuming relevance, consumer complaints to manufacturer were inadmissible hearsay).[5]

---

*(cont'd from previous page)*

admissions contained within the August 2009 Settlement (*see supra* note 3) are expressly included within Rule 408's prohibition.

[5] In fact, even if another lawsuit is tried and the jury finds for the plaintiff, the jury verdict is inadmissible hearsay. *See Greycas Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987); *Colonial*
*(cont'd)*

Accordingly, references to other litigation involving Neurontin would be inadmissible. Evidence of or reference to legal proceedings involving pharmaceutical products **other than Neurontin** is even further removed from the facts of the present case and must be excluded. *See, e.g., Lexy v. Remington Arms Co.*, 836 F.2d 1104, 1109 (8th Cir. 1988). Such evidence serves only to impugn Pfizer's character, without consideration of the merits of the other litigation. *See Cosgrove v. Merrell Dow Pharms., Inc.*, 788 P.2d 1293, 1296 (Idaho 1989) (upholding exclusion of evidence regarding pharmaceutical company's other products, offered to show a habit of fraud or deceit, since it was not probative or relevant to the issues before the court and jury in the case); *McLeod v. Parsons Corp.*, 73 F. App'x 846, 853-54 (6th Cir. 2003) (affirming trial court's decision to exclude as irrelevant evidence of other unrelated lawsuits against defendant); *Barnes v. Koppers, Inc.*, No. 3:03CU60-P-D, 2006 WL 940279, at *3 (N.D. Miss. Apr. 11, 2006) (holding that "evidence of other lawsuits, claims, and injuries" even in same area was "irrelevant to this case and therefore inadmissible").

### B.      The Evidence Should Be Excluded As Unfairly Prejudicial

Evidence of allegations concerning other products could not be admitted without affording Pfizer an opportunity to rebut it, which would inevitably lead to mini-trials on irrelevant transactions and jury confusion. *See Olson v. Ford Motor Co.*, 481 F.3d 619, 624 (8th Cir. 2007) ("No judge wants to see one trial turn into several . . . ."); *Lanham v. Whitfield*, 805 F.2d 970, 972 (11th Cir. 1986) (holding that trial court properly refused to admit evidence of unrelated litigation under Federal Rule of Evidence 403 because the probative value, if any, of such evidence was outweighed by the fact that it would create "considerable" prejudice for the defendant and could result in "confusion of the issues" and "mislead[] the jury"); *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1334 (9th Cir. 1985) (affirming trial court's exclusion of evidence on collateral issues on the grounds that any relevance was outweighed by the risk that the jury would be confused and distracted from the main issues), *corrected*, 773 F.2d 1049 (9th Cir. 1985)

*(cont'd from previous page)*
*Refrigerated Transp., Inc. v. Mitchell,* 403 F.2d 541, 551 (5th Cir. 1968).

(correcting typographical error); *Grant Thornton, LLP v. FDIC*, Nos. 1:00-655 et al., 2007 WL 518421, at *1 (S.D.W. Va. Feb. 13, 2007) ("Allowing evidence of other litigation [against plaintiff] would not only cause the issues of the current case to be delayed . . . but would confuse the issues by introducing twelve additional fact situations which would have to be dealt with individually before a decision on the merits of the current case could be reached. ").

Indeed, where, as here, the evidence that can be presented by the parties is time restricted, there is no way for Pfizer to meaningfully rebut allegations wholly unrelated to Neurontin without compromising its ability to defend against Plaintiffs' Neurontin claims. The federal investigation was lengthy (over five years) and complex. There is simply no way to adequately address the issues related to the August 2009 Settlement and Pharmacia Plea in a way that would be both fair and would not overwhelm the jury. As a result, the admission of such evidence would result in a denial of Pfizer's due process right to defend itself. *See Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("'Due process requires that there be an opportunity to present every available defense.'" (citation omitted)).

Further, any tangential relevance that Plaintiffs may attempt to conjure up for introducing a criminal plea made by a company that is not a party to the instant lawsuit, concerning a product other than Neurontin, is greatly outweighed by the potential for prejudice and juror confusion. *See Williams v. Drake*, 146 F.3d 44, 48 (1st Cir. 1998). The introduction of the Pharmacia Plea – notwithstanding the irrelevance of those violations to the facts and claims in the instant dispute – would almost certainly increase the likelihood that a jury in this case would reach a decision based not on the facts properly before them, but on the basis of the guilty plea. The First Circuit has acknowledged the enormous potential for prejudice in these circumstances.

> [E]vidence of a judicial determination of prior illegal conduct on the part of the defendant cannot help but have a great emotive impact on a jury. As Wigmore states: "'The deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught is a tendency which cannot fail to operate with any jury, in or [out] of court.'"

*See Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449, 459 (1st Cir. 1963)

(citation omitted).  Where, as here, the jury is unlikely to understand the limited scope of the plea, the risk is even greater; *see also Williams*, 146 F.3d at 48 (affirming, in related civil suit, the exclusion of a guilty plea previously entered by plaintiff before a prison disciplinary board); *Gil de Rebollo v. Miami Heat Ass'ns*, 137 F.3d 56, 64 (1st Cir. 1998) (approving trial court's exclusion of conviction from plaintiff's subsequent civil action because, "admission of [defendant's] criminal conviction would have allowed the jury to substitute the judgment reached in the criminal proceeding for its own"); *Diaz v. Cianci*, 737 F.2d 138, 139-40 (1st Cir. 1984) (affirming exclusion, in related civil suit, of evidence of plaintiff's conviction for assaulting police officer during the same event because of danger of unfair prejudice).

Here, the potential for juror confusion and prejudice is profound.  First, as previously noted, the plea concerns a product other than Neurontin.  Second, the party entering into the plea agreement is a not a defendant in this litigation.  Its only connection with Warner-Lambert is that both companies were acquired at some point by Pfizer.

Plaintiffs cannot "cure" the lack of nexus between its claims and the plea by arguing that the evidence is offered to show a pattern under RICO.  The First Circuit has consistently held that there must be a nexus between the racketeering acts that constitute a "pattern" *and the alleged enterprise at issue*.  *See United States v. Nascimento*, 491 F.3d 25, 45 (1st Cir. 2007) ("The word 'through' implies a nexus between these racketeering acts and the enterprise.")  Such a nexus exists only where a plaintiff shows that a defendant was "able to commit the predicate racketeering acts either by means or as a result of his involvement with the enterprise."  *Id.* Alleged acts of wrongdoing which are not shown to bear a requisite relation to "the enterprise" at the base of the RICO allegations are irrelevant to whether there was a pattern of RICO activity. *Id.*; *see also Smith v. Jones, Gregg, Creehan & Gerace, LLP*, 2:08-cv-365, 2008 WL 5129916, at *6 (W.D. Pa. Dec. 5, 2008) (holding that the plaintiff must show "a specific nexus between the alleged predicate acts and the control of the alleged RICO enterprise").  The enterprise allegations that this Court previously allowed to survive dismissal were specific to Neurontin. *See In re Neurontin Mktg. & Sales Practices Litig.*, 433 F. Supp. 2d 172, 183 (D. Mass. June 12,

2006) (finding that Plaintiffs had sufficiently pled an association-in-fact with individual medical marketing firms because of allegations that "Defendants formulated 'tactical plans' with the marketing firms to promote Neurontin on an ongoing basis"). Evidence of a plea by a different corporation involving a different drug cannot possibly be relevant to whether Plaintiffs can satisfy their burden of proof as to RICO's pattern element with respect to the predicate acts and enterprise at alleged here.

In *Bulger*, this Court held that Warner-Lambert's plea was admissible on the issue of intent. While Pfizer respectfully disagrees with the Court's ruling, it has no application to the Pharmacia Plea which does not even concern Neurontin.[6] Indeed, courts, including the Supreme Court, have rejected attempts to justify introduction of prejudicial evidence of alleged conduct that did not cause harm to plaintiff on the grounds that it was evidence of intent. For example, in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), the Supreme Court rejected the plaintiffs' argument that the evidence at issue went to motive. *See id.* at 422. The plaintiffs argued that the evidence was probative of a general scheme to reduce the amount of money paid to claimants, both as a result of first-party and third-party claims. *See id.* at 423-24. Observing that liability should have been imposed only for the conduct that harmed the plaintiffs, the Supreme Court held that the trial court committed error when it allowed the plaintiffs to use the case "as a platform to expose, and punish, the perceived deficiencies of State Farm's operations throughout the country." *Id.* at 420; *see also infra* Section III.

### III. Introduction Of The Criminal Plea Is Irreconcilable With The Supreme Court's Decisions In *Campbell* And *Philip Morris* And Will Result In A Violation Of Defendants' Due Process Rights

Introduction of a Settlement and a criminal plea that are wholly unrelated to Neurontin would also violate dictates of the Supreme Court's decisions in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007) and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S.

---

[6] Pfizer has separately moved to exclude the Warner-Lambert plea by separate motion. In the event that such motion is denied, allowing the introduction of the August 2009 Settlement and Pharmacia Plea would result in an unconscionable degree of prejudice.

408 (2003).  The Supreme Court has made plain that it would be improper and a denial of Pfizer's due process rights for the jury to impose *punitive* damages based upon unrelated conduct.  If such evidence cannot support *punitive* damages, the jury certainly cannot award compensatory damages (or treble damages) based upon such conduct.

In *Philip Morris*, the Supreme Court held, unequivocally, that punitive damages can be imposed only for conduct that *caused harm to the plaintiff*.  As the Court stated:  "[T]he Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation."  549 U.S. at 353; *see also Campbell*, 538 U.S. at 424 ("The reprehensibility guidepost does not permit courts to expand the scope of the case so that a defendant may be punished for any malfeasance, which in this case extended for a 20-year period.").

Thus, in *Campbell*, the Supreme Court held unconstitutional the Utah court's punishment of twenty years of various dissimilar conduct by the defendant, explaining that courts are not permitted "to expand the scope of the case so that a defendant may be punished for any malfeasance." *Id.* at 424.  Punishment based on dissimilar conduct "creates the possibility of multiple punitive damages awards for the same conduct" since "nonparties are not bound by the judgment some other plaintiff obtains."  *Id.* at 422-23.  Further, in *Philip Morris*, the court explained that to allow punitive damages to be based upon harm to non-parties would violate due process by denying the defendant "'an opportunity to present every available defense.'"  *Philip Morris*, 549 U.S. at 353-54 (citation omitted).

The Supreme Court further explained that "to permit punishment for injuring a nonparty victim would add a near standardless dimension to the punitive damages equation," magnifying the due process "risks of arbitrariness, uncertainty and lack of notice."  *Id.* at 354; *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) (observing that a punitive damages award based on conduct unrelated to the plaintiff's harm enters the "zone of arbitrariness" that violates due process).

All of the concerns expressed by the Supreme Court in *Philip Morris* and *Campbell* are present here.  First, there is the very real risk that the jury will impose liability based upon conduct for which Defendants have already been punished.  Second, allowing liability to be imposed based upon conduct that did not cause harm to Plaintiffs is too standardless and arbitrary to comport with due process.  Finally, requiring a defendant to defend against not only the plaintiff's case, but causally unconnected conduct stretching over a lengthy period of years imposes an impossible burden on a defendant, effectively depriving it of an opportunity to present a full and complete defense.  This is especially true in this case where the Court has limited each side to 28 hours to present evidence.

Moreover, it is a longstanding tenet of the law that a jury may not impose liability based upon the perceived character of the defendant or based upon a belief that a defendant had a propensity to act a certain way.  Accordingly, the Federal Rules exclude character and propensity evidence.  *See infra* section IV.   Again, the Supreme Court has explained that this issue transcends concerns of relevance and prejudice; it implicates fundamental due process rights of a defendant:

> A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business.  Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis . . . .

*Campbell*, 538 U.S. at 423.  The due process concerns are magnified here where the evidence sought to be excluded is a criminal plea.

All of the Supreme Court's concerns about the imposition of punitive damages based upon conduct that did not cause harm to the plaintiff apply with even greater force to Plaintiffs' claims for compensatory damages.  Indeed, it is hornbook law that compensatory damages must be based upon the harm caused to the plaintiff and not others.  *See Saldana Sanchez v. Vega Sosa*, 175 F.3d 35, 36 (1st Cir. 1999).  Moreover, because Plaintiffs seek automatic treble damages under RICO, the due process concerns expressed by the Supreme Court in *Campbell* and *Philip Morris* are directly implicated.  *See Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir.

1991).

As the Supreme Court explained in *Philip Morris*, given the risk of unfairness, it is the trial court's responsibility to make sure that the jury answers "the right question, not the wrong one." *Philip Morris*, 549 U.S. at 355. Here, the jury will be asked to decide whether Kaiser paid too much for Neurontin prescriptions as a result of fraudulent misrepresentations made to Kaiser or its prescribing physicians. The August 2009 Settlement and Pharmacia Plea will not help the jury answer those questions. Instead, Plaintiffs hope that the jury will be confused by such evidence so that it answers the wrong question. The only way to make sure that the jury answers the right question is to exclude the evidence. *See United States v. Solorio-Soto*, 300 F. App'x 487, 488 (9th Cir. 2008) (holding that limiting instruction that prior bad acts evidence of similar crimes could only be used to show whether charged offense was committed "knowingly" was insufficient to cure prejudice).

## IV.   The August 2009 Settlement and Pharmacia Plea Constitute Improper Character Propensity Evidence

The August 2009 Settlement and Pharmacia Plea should also be excluded under Rule 404(b) as improper character propensity evidence. Given that the Settlement and Pharmacia Plea do not even concern Neurontin, none of the exceptions to the prohibition against evidence of prior bad acts apply in this case. As the First Circuit has explained:

> To admit evidence of prior bad acts, a trial court must find that the evidence passes two tests. First, the evidence must have "special relevance" to an issue in the case such as intent or knowledge, and must not include "bad character or propensity as a necessary link in the inferential chain." Second, under Rule 403, evidence that is specially relevant may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

*United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000) (quoting *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996)); *see also United States v. Gilbert*, 229 F.3d 15, 20-21 (1st Cir. 2000). As demonstrated above, the Plea is irrelevant to this dispute and will cause unfair prejudice. Because the Plea has no relevance to Neurontin, the only possible use of the Plea is to show a propensity for improper conduct, which is specifically precluded by Rule

11

404(b).  *See Gilbert*, 229 F.3d at 24.

Plaintiffs may try to fit the plea within one of Rule 404(b)'s exceptions, most likely intent. However, courts have made clear that the exceptions must be narrowly construed so that the prohibition against character evidence is not reduced to a hollow pronouncement.  For example, courts have repeatedly held that Federal Rule of Evidence 404(b) does not permit evidence of prior alleged bad acts in order to show *generalized intent* to commit the act at issue in the litigation.  *See, e.g.*, *Fisher v. Am. Gen. Fin. Co.*, 52 F. App'x 601, 606-07 & n.3 (4th Cir. 2002) (per curiam) (evidence that defendant's employees routinely fabricated personal property descriptions on loan applications was relevant only of a generalized intent to commit dishonest acts and, therefore, inadmissible under Fed. R. Evid. 404(b)); *Crawford v. Yellow Cab Co.*, 572 F. Supp. 1205, 1208-09 (N.D. Ill. 1983) (rejecting argument that evidence of other bad acts was admissible to prove that the defendant's actions were "consistent with its corporate practice and policy of indifference to the duty to safely entrust vehicles").  Likewise, courts have held that a profit motive is too generalized an intent to justify the introduction of evidence of other conduct. *See, e.g.*, *Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 440-41 (D.C. Cir. 1994) (holding that prior conduct evidence proffered to demonstrate, *inter alia*, "'greed,'" inadmissible under Fed. R. Evid. 404(b) because it was "only a shade less general than a claim that [the defendant] was a bad man").

As the Third Circuit has explained, "a proponent's incantation of the proper uses of [Rule 404(b) evidence] . . . does not magically transform inadmissible evidence into admissible evidence."  *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 191 (3d Cir. 2000) (citation omitted). Rather, the relevance of the evidence must be established by linking logical inferences to the specific facts at issue in the lawsuit.  At no point can one of the links be that the defendant had the propensity to act a certain way.  *See id.*  Here, the evidence is not proffered to show a causal nexus to Plaintiffs' claimed injury.  The evidence is offered only to show propensity, which Rule 404 (as well as the Supreme Court's decision in *Campbell*) does not allow.

## V. The August 2009 Settlement And Pharmacia Plea Are Not Admissible As Impeachment Evidence

The August 2009 Settlement and Pharmacia Plea are also inadmissible as impeachment evidence. First, Federal Rule of Evidence 609 authorizes the use of a witness' prior conviction only to attack the individual witness' credibility. "[I]t is axiomatic that *it is only the testifying witness' own prior convictions* that should be admissible on cross examination to impeach his credibility." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 523 (3d Cir. 1997) (emphasis added). Thus, "Rule 609 does not permit corporate convictions to be used to impeach the credibility of employee witnesses who were not directly connected to the underlying criminal act." *Id.* at 524. As the Third Circuit explained in *Walden*:

> Criminal acts are relevant to a witness' credibility only if that witness actually participated in the criminal conduct. It strains logic to argue that an employee's credibility is properly brought into question by the mere fact that he or she is presently employed by a corporation that in some unrelated manner was guilty of dishonest acts, no matter how egregious.

*Id.* at 523-24. Any proposed use of the Pharmacia Plea as impeachment is especially strained here, where the pleading defendant is not a even a party to this action.

Second, the August 2009 Settlement and Pharmacia Plea are not relevant to impeach by contradiction in the absence of witness testimony inconsistent with the specific admissions contained in the Plea. *See* Fed. R. Evid. 613; *see also United States v. Perez-Perez*, 72 F.3d 224, 227 (1st Cir. 1995). Thus, the Plaintiffs would first have to elicit testimony on an irrelevant subject, obtain inconsistent testimony, and then offer the Plea as impeachment. The relevancy requirements may not be circumvented so easily.

## VI. Evidence Of The Plea Cannot Be Admitted On The Issue of Punitive Damages

Plaintiffs should not be allowed to manufacturer "relevance" arguments for evidence of the Plea by arguing that such evidence is relevant to the issue of punitive damages. Punitive damages are not available under either RICO or California's Unfair Competition Law ("UCL").[7]

---

[7] Cal. Bus. & Prof. Code §§ 17200, et seq. (West 2009).

*See In re XE Servs. Alien Tort Litig.*, ___ F. Supp. 2d ___, 2009 WL 3415129, at *21 (E.D. Va. Oct. 21, 2009) (observing that treble damages are the exclusive remedy under RICO, punitive damages are not available); *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) (holding that punitive damages are not available under California's UCL).[8]   Thus, Plaintiffs cannot avoid the dictates of *Campbell* and *Philip Morris* by arguing that the evidence is offered on the issue of reprehensibility.   Because punitive damages are not available and RICO treble damages are not subject to the jury's discretion, reprehensibility is not relevant to any issue that the jury will be asked to decide.

Moreover, the Supreme Court in *Campbell* made clear that dissimilar conduct has no place in the analysis of a defendant's reprehensibility for purposes of punitive damages and should be excluded as irrelevant.   *See Campbell*, 538 U.S. at 422-23.   Under the Supreme Court's punitive damages jurisprudence, only evidence of conduct that is similar to the conduct that resulted in harm to the plaintiff may have any relevance to establishing the reprehensibility of a defendant's conduct toward the plaintiff.   *See id*. at 423-24.   Dissimilar conduct cannot be

---

[8]  Nor does Plaintiffs' unjust enrichment claim provide a basis for recovering punitive damages. California courts have repeatedly held that unjust enrichment is not a separate cause of action under California law.  *See, e.g.*, *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 254 (Ct. App. 2006); *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Ct. App. 2003).   Likewise, California courts have also made clear that plaintiffs cannot avoid the restrictions on recovery under the UCL by re-characterizing their claim as one for unjust enrichment.  *See Madrid v. Perot Sys. Corp.*, 30 Cal. Rptr. 3d 210, 221 (Ct. App. 2005).

Plaintiffs also cannot recover punitive damages under any other state consumer protection statute that they have pled.   Initially, not all such statutes permit recovery of punitive damages.  *See, e.g.*, *Golt v. Phillips*, 517 A.2d 328, 333 (Md. 1986).   Second, the only two Kaiser entities that are plaintiffs in this action are Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals.   Kaiser has included a footnote in its recent filings that "Kaiser Foundations Health Plain, Inc. is the parent company of the following companies and has brought this lawsuit on behalf of itself and its subsidiaries:   Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio."   (Pl. List of Witnesses To Be Presented at Trial [2179] at 1 n.1.) However, the law is clear that a parent corporation may not sue to recover damages to its subsidiaries. *See, e.g.*, *Payphone v. Brooks Fiber Commc'ns of R.I.*, 126 F. Supp. 2d 175, 179 (D.R.I. 2001).   Thus, Kaiser lacks standing to recover either compensatory or punitive damages for its subsidiaries in other jurisdictions.   Finally, Prof. Hartman has not calculated state-by-state damages for any Kaiser entity.   As a result, there would be no way to satisfy *Campbell*'s proportionality requirement.  *See Campbell*, 538 U.S. at 425.

used to show repeated misconduct or "recidivism" on the part of a defendant.  As the Supreme Court stated in *Campbell*, if punitive damages are to be justified on the grounds that the defendant is a "recidivist," "courts must ensure the conduct in question *replicates* the prior transgressions."  *Id.* at 423 (emphasis added).

To allow Plaintiffs to introduce evidence of the Pharmacia Plea on the issue of "reprehensibility" does not satisfy *Campbell*'s requirement that the conduct replicate the conduct directed at the plaintiff.  Plaintiffs are attempting to construct a daisy-chain of purported relevance indistinguishable from that rejected by the Supreme Court in *Campbell*.  There, the plaintiffs argued that the evidence of other conduct was probative of a general scheme to reduce the amount of money paid to claimants, both as a result of first party and third party claims.  *See id.* at 423-24.  Holding that liability should have been imposed only for the conduct that harmed the plaintiffs, the Supreme Court explained that the trial court committed error when it allowed the plaintiffs to use the case "as a platform to expose, and punish, the perceived deficiencies of State Farm's operations throughout the country."  *Id.* at 420.

For example, in *Shugart v. OEA, Inc.*, No. A099649, 2005 WL 1503812 (Cal. Ct. App. June 27, 2005), which involved a workplace explosion, the plaintiff sought to introduce evidence "that in 1994 defendant had been indicted on, and subsequently pled guilty to, six federal felony counts relating to 'two explosions involving explosive materials which injured several [of defendant's] employees.'"  *Id.* at *16 (alteration in original).  While noting that the plaintiff's vague description may have created the illusion of similarity, the court held that evidence of such prior incidents must be excluded under *Campbell*.  *See id.* at *16-17.  "To introduce evidence of the hazardous waste infractions during the proceedings at which the amount of punitive damages was set would have been to invite the jury to punish defendant for actions that 'bore no relation to the [plaintiff's] harm', in violation of due process."  *Id.* at *17 (alteration in original) (citation omitted).

Numerous other courts have similarly rejected attempts by plaintiffs to link evidence of other conduct through claims of relevance that did not satisfy the stringent dictates of *Campbell*.

15

*See, e.g.*, *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 313-14 (4th Cir. 2003) (holding that evidence that the defendant engaged in a scheme to put the plaintiff out of business could not support a punitive damage award under *Campbell* when the conduct alleged was independent of the acts upon which liability was based); *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 259 (E.D. Pa. 2008) (allegations of a cover-up, which were independent of the basis for imposing liability on the defendant, could not support punitive damages); *Estate of Embry v. GEO Transp. of Indiana, Inc.*, 478 F. Supp. 2d 914, 922-23 (E.D. Ky. 2007) (excluding evidence of dissimilar out-of-state conduct because it lacked any proximate relationship with the in-state harm and thus served "no deterrent purpose"); *Utz v. Johnson*, No. Civ.A. 04-CV-0437, 2004 WL 2812050, at *3 (E.D. Pa. Dec. 8, 2004) (excluding evidence of prior acts of verbal abuse in case alleging physical assault); *Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp. 2d 1303, 1324 (S.D. Fla. 2004) (applying *Campbell* and holding that prior allegations of sexual harassment made against company employee involved dissimilar conduct and were irrelevant to determination of a punitive damages award against company), *aff'd*, 183 F. App'x 872 (11th Cir. 2006); *Holdgrafer v. Unocal Corp.*, 73 Cal. Rptr. 3d 216, 233-35 (Ct. App. 2008) (evidence of other oil spills, which occurred under dissimilar circumstances, were inadmissible under *Campbell*); *Ky. Farm Bureau Mut. Ins. Co. v. Rodgers*, 179 S.W.3d 815, 819-20 (Ky. 2005) (holding that evidence of an insurance company's handling of another case was inadmissible under *Campbell*); *Durham v. Vinson*, 602 S.E.2d 760, 766-67 (S.C. 2004) (ordering new trial where court admitted in a malpractice action evidence that physician prescribed valium to plaintiff's daughter with instructions that she share them with other family members).

In addition, much of the conduct that is at issue in the August 2009 Settlement and Pharmacia Plea occurred *after* the time during which Plaintiffs allege its injuries occurred and, therefore, is inadmissible under *Campbell*. *See Pedroza v. Lomas Auto Mall, Inc.*, No. CIV 07-0591, 2009 WL 1300944, at *5 (D.N.M. Apr. 2, 2009); *Gober v. Ralphs Grocery Co.*, 40 Cal. Rptr. 3d 92, 106 (Ct. App. 2006); *see also Campbell*, 538 U.S. at 410 (holding that "courts must ensure the conduct in question replicates the ***prior*** transgressions" (emphasis added)); *Wohlwend*

*v. Edwards*, 796 N.E.2d 781, 787 (Ind. Ct. App. 2003).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their

motion in limine to exclude any evidence of or reference to the Plea at trial.

Dated: January 8, 2010                    Respectfully submitted,

                                          SKADDEN, ARPS, SLATE, MEAGHER
                                            & FLOM LLP

                                          By:     /s/ Mark S. Cheffo
                                                  Mark S. Cheffo

                                          Four Times Square
                                          New York, NY 10036
                                          Tel:  (212) 735-3000

                                          SKADDEN, ARPS, SLATE, MEAGHER
                                            & FLOM LLP

                                          By:     /s/ Raoul D. Kennedy
                                                  Raoul D. Kennedy

                                          Four Embarcadero Center
                                          San Francisco CA 94111
                                          Tel:  (415) 984-6400

                                                  -and-

                                          WHEELER TRIGG O'DONNELL LLP

                                          By:     /s/ James E. Hooper
                                                  James E. Hooper

                                          1801 California Street
                                          Suite 3600
                                          Denver, CO 80202-2617
                                          Tel:  (303) 244-1800

                                                  -and-

17

WHITE AND WILLIAMS LLP

By:    /s/ David B. Chaffin
       David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 8, 2010.

/s/ David B. Chaffin
David B. Chaffin

18