UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | |
| | Judge Patti B. Saris |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | |
| | Magistrate Judge Leo T. Sorokin |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE ALL EVIDENCE OF OR REFERENCES
TO WARNER-LAMBERT COMPANY LLC'S GUILTY PLEA OR ANY
RELATED GOVERNMENT INVESTIGATIONS OR AGREEMENTS**

Pursuant to Federal Rules of Evidence 401, 402, 403, and 404, Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum of law in support of their accompanying motion *in limine* to exclude at trial any and all evidence of, or reference by Plaintiffs or their counsel before the jury to, Warner-Lambert Company LLC's guilty plea dated May 13, 2004, any negotiation, settlement, or agreement between Pfizer and/or Warner-Lambert and any government entity arising out of the guilty plea, or any related government finding concerning, or investigation of, the marketing of Neurontin in violation of the Federal Food, Drug, and Cosmetic Act, 29 U.S.C. §§ 301-399a, and the fact of any such investigation (collectively, the "Plea").

**PRELIMINARY STATEMENT**

Plaintiffs seek to put before the jury a guilty plea and related documents and evidence that have no relevance whatsoever to the issues to be decided in this case. The Plea related to specific incidents of off-label promotion through certain representatives and events in discrete locations within the United States, and was concerned solely with conduct that occurred between April 1995 and August 1996. The Department of Justice did not charge Warner-Lambert with disseminating any false or misleading information about Neurontin. As a result, the Plea has nothing to do with the questions for the jury to decide in this case – more specifically, whether

Kaiser paid for prescriptions as the result of fraudulent marketing and whether any Kaiser insureds received any benefit from their Neurontin prescriptions.

The Supreme Court has made clear that liability cannot be imposed based upon conduct that did not cause harm to the plaintiff. To punish a defendant based upon harm to persons "not before the court . . . would amount to a taking of 'property' from the defendant without due process." *Philip Morris USA v. Williams*, 549 U.S. 346, 349 (2007). The only conceivable reason Plaintiffs would seek to place the Plea before the jury is to invite the jury to decide the case based not on the facts and the law at issue, but instead on a visceral reaction to the unrelated conduct by Warner-Lambert that is the subject of the Plea. The Supreme Court has made clear that courts should not countenance desultory attempts to find a relevance hook that only obscures the real – and impermissible – purpose for which such evidence is offered: to induce the jury to punish a defendant for conduct that is not before them.

Evidence related to the Plea and the underlying government investigation is inadmissible for four related reasons. First, introduction of the Plea would violate Pfizer's due process rights. Second, the Plea is wholly irrelevant to the claims in this case and should be excluded on that ground alone under Rules 401 and 402 of the Federal Rules of Evidence. Third, the unfair prejudice and undue delay that evidence of or references to the Plea would inevitably generate far outweigh its non-existent probative value and require its exclusion under Rule 403. Fourth, given the lack of relevance of the Plea to Plaintiffs' claims, the only plausible reason that Plaintiffs might have for introducing it would be as improper character evidence to attempt to establish that Pfizer is a "bad actor." Rule 404(b) flatly prohibits this.

Accordingly, as set forth in greater detail below, the Court should preclude Plaintiffs from introducing or otherwise referencing the Plea before the jury.

## THE PLEA

In May 2004, Warner-Lambert pleaded guilty to two strict-liability, misdemeanor violations under the Federal Food, Drug, and Cosmetic Act, 29 U.S.C. §§ 301-399a (the

"FDCA"), related to its marketing of Neurontin between April 1995 and August 1996.[1] Off-label marketing, outside of certain safe harbors created by the Food and Drug Administration ("FDA"), constitutes a violation of the FDCA, regardless of (1) the efficacy of the drug, (2) the safety of the drug,[2] or (3) the truth or falsity of any statements made by the manufacturer to the physician.[3] Accordingly, the Plea is not evidence that Warner-Lambert acted fraudulently or intentionally, or that Neurontin is not efficacious. Indeed, in its summary of the elements of the counts, the court that accepted the Plea specifically noted that scienter was not an element. (Tr. of 6/7/04 Waiver, Change of Plea and Sentencing Hr'g at 10:4-9.)[4]

In the course of the Plea hearing, Warner-Lambert acknowledged that the facts set forth in an Information dated May 13, 2004 were factually accurate. Significantly, the Information outlined and described *specific instances* in 1995 and 1996 in which Warner-Lambert's marketing activities violated the relevant provisions of the FDCA. For example, the Information identifies a particular "teleconference . . . in which [a] Medical Director promoted off-label uses of Neurontin to the doctors participating in the teleconference." (Exh. A, Information ¶ 36.) Because the Information is limited to the specific instances set forth therein, Warner-Lambert's acknowledgment of the truth of the facts contained in the Information is equally limited to those specific instances. Warner-Lambert denied, and Pfizer continues to deny, the existence of any intentional nationwide scheme to promote Neurontin for off-label use, a fact that is consistent

---

[1] A copy of the Plea and Information are attached as Exhibit A to the accompanying Declaration of Mark S. Cheffo.

[2] *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001) ("[T]he 'FDA itself recogniz[es] the value and propriety of off-label use[.]'") (citation omitted).

[3] *See In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 92 & n.6 (D. Mass. Aug. 29, 2007); *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 329 (D. Mass. May 13, 2009).

[4] Although the specific violations to which Warner-Lambert pleaded guilty were misdemeanors, the conduct was elevated to felony status because of a previous agreement between Warner-Lambert and the government in an unrelated matter years earlier. (Tr. of 6/7/04 Waiver, Change of Plea and Sentencing Hr'g at 6:22-7:15.) There is no conceivable relevance to the amount paid as a fine by Warner-Lambert, and Plaintiffs and their attorneys should not be allowed to disclose that amount to the jury.

3

with the scope of the guilty Plea and accompanying Information. Likewise, Warner-Lambert's Plea of guilty to conduct described in the Information did not imply in any way that the conduct at issue continued beyond 1996, much less after its merger with Pfizer in 2000.[5] Finally, neither the guilty Plea nor the Information addressed issues related to Neurontin's efficacy.

## ARGUMENT

### I. Introduction Of The Criminal Plea Is Irreconcilable With The Supreme Court's Decisions In *Campbell* And *Philip Morris* And Will Result In A Violation Of Defendants' Due Process Rights

As this Court has recognized, off-label marketing, even if it occurred, is not itself fraudulent. As the Court has stated: "While off-label marketing is illegal, there is no private right of action to enforce it. To succeed on their claims, plaintiffs must prove that defendants' representations were false, along with all other elements of their claims." *In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 92 n.6 (D. Mass. Aug. 29, 2007) ("*Neurontin I*") (citation omitted); *see also In re Neurontin Mktg. & Sales Practices Litig.*, 257 F.R.D. 315, 329 (D. Mass. May 13, 2009) (*Neurontin II*) (holding that consumer plaintiffs must establish that "defendants' *fraudulent* marketing, not simply their off-label marketing, caused the prescriptions written for the putative class members").

This Court has also recognized that Plaintiffs' recovery cannot be based on a "fraud on the market" theory, which has never been recognized outside the securities fraud context. *See Neurontin II*, 257 F.R.D. at 326-27; *see also In re Neurontin Mktg., Sales Practices & Prods.*

---

[5] Although a Sentencing Memorandum submitted by the government at the time of the Plea agreement describes a somewhat wider range of conduct extending through 1999, Warner-Lambert has never admitted to having engaged in any of the conduct described in the Sentencing Memorandum beyond that detailed in the Information. In addition to all of the reasons set forth in this motion, which apply with equal or greater weight to the Sentencing Memorandum, the Sentencing Memorandum itself is also inadmissible on hearsay grounds, because it is nothing more than a series of allegations by the government regarding conduct that Warner-Lambert never admitted to having engaged in. *See, e.g., Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 829-30 (8th Cir. 2003) (refusing to consider, on a motion to dismiss, in a civil case, a sentencing memorandum prepared by the government in a previous criminal action against a subsidiary of defendant because "[t]he government's sentencing memorandum is a position paper offered here by the [plaintiffs] for the truth of the matters asserted therein, which the defendants dispute").

*Liab. Litig.*, 618 F. Supp. 2d 96, 111 (D. Mass. May 26, 2009) (*Neurontin III*) (observing that "'no court has ever adopted a "fraud on the market" type theory outside the securities fraud context, and the majority of courts which have had occasion to extend the theory to common law fraud cases have expressly declined to do so.'") (citation omitted). Thus, Plaintiffs can only recover in this action to the extent it can show that alleged misrepresentations either to it or its prescribing physicians caused it to pay for prescriptions (or pay more for the prescriptions) than it would have absent the alleged fraud. It cannot recover based upon representations allegedly made to the community or market at large.

Moreover, recent decisions of the Supreme Court make plain that it would be improper and a denial of Pfizer's due process rights for the jury to impose *punitive* damages based upon the conduct that was the subject of the Plea. If the Plea cannot support *punitive* damages, the jury certainly cannot award compensatory damages (or treble damages) based upon such conduct. In *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), the Supreme Court held, unequivocally, that punitive damages can be imposed only for conduct that *caused harm to the plaintiff*. As the Court stated: "[T]he Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation." *Id.* at 353; *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 424 (2003) ("The reprehensibility guidepost does not permit courts to expand the scope of the case so that a defendant may be punished for any malfeasance, which in this case extended for a 20-year period.").

Thus, in *Campbell*, the Supreme Court held unconstitutional the Utah courts' punishment of twenty years of various dissimilar conduct by the defendant, explaining that courts are not permitted "to expand the scope of the case so that a defendant may be punished for any malfeasance." *Id.* at 424. Punishment based on dissimilar conduct "creates the possibility of multiple punitive damages awards for the same conduct," since "nonparties are not bound by the judgment some other plaintiff obtains." *Id.* at 422-23. Further, in *Philip Morris*, the Court

explained that to allow punitive damages to be based upon harm to non-parties would violate due process by denying the defendant "'an opportunity to present every available defense.'" *Philip Morris*, 549 U.S. at 353-54 (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)).

The Supreme Court further explained that "to permit punishment for injuring a nonparty victim would add a near standardless dimension to the punitive damages equation," magnifying the due process "risks of arbitrariness, uncertainty and lack of notice." *Philip Morris*, 549 U.S. at 354; *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) (observing that a punitive damages award based on conduct unrelated to the plaintiff's harm enters the "zone of arbitrariness" that violates due process).

All of the concerns expressed by the Supreme Court in *Philip Morris* and *Campbell* are present here. First, there is the very real risk that the jury will impose liability based upon conduct for which Defendants have already been punished. Second, allowing liability to be imposed based upon conduct that did not cause harm to Plaintiffs is too standardless and arbitrary to comport with due process. Finally, requiring a defendant to defend against not only the plaintiff's case, but causally unconnected conduct stretching over a lengthy period of years imposes an impossible burden on a defendant, effectively depriving it of an opportunity to present a full and complete defense. This is especially true in this case where the Court has limited each side to 28 hours to present evidence.

Moreover, it is a longstanding tenet of the law that a jury may not impose liability based upon the perceived character of the defendant or based upon a belief that a defendant had a propensity to act a certain way. Thus, the Federal Rules exclude character and propensity evidence. *See infra* Section III. Again, the Supreme Court has explained that this issue transcends concerns of relevance and prejudice; it implicates fundamental due process rights of a defendant:

> A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis . . . .

6

*Campbell*, 538 U.S. at 423.

The due process concerns are magnified here where the evidence sought to be excluded is a criminal plea. The First Circuit has acknowledged the enormous potential for prejudice in these circumstances.

> [E]vidence of a judicial determination of prior illegal conduct on the part of the defendant cannot help but have a great emotive impact on a jury. As Wigmore states: "The deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught is a tendency which cannot fail to operate with any jury, in or [out] of court."

*Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449, 459 (1st Cir. 1963) (citation omitted). Where, as here, the jury is unlikely to understand the limited scope of the plea, the risk is even greater.

All of the Supreme Court's concerns about the imposition of punitive damages based upon conduct that did not cause harm to the Plaintiffs apply with even greater force to Plaintiffs' claims for compensatory damages. Indeed, it is hornbook law that compensatory damages must be based upon the harm caused to the plaintiff and not others. *See Saldana Sanchez v. Vega Sosa*, 175 F.3d 35, 36 (1st Cir. 1999). Moreover, because Plaintiffs seek automatic treble damages under RICO, the due process concerns expressed by the Supreme Court in *Campbell* and *Philip Morris* are directly implicated. *See Genty v. Resolution Trust Corp.*, 937 F.2d 899, 913-14 (3d Cir. 1991).

## II.     The Plea Is Irrelevant To Plaintiffs' Claims And Unfairly Prejudicial

Evidence that Warner Lambert admitted to certain discrete instances of off-label marketing within a narrow time frame over ten years ago are not relevant to any of Plaintiffs' claims in this litigation. First, as discussed above, Plaintiffs cannot recover for off-label marketing; rather, Plaintiffs must show that *fraudulent* representations caused it to overpay for Neurontin prescription. The Plea is wholly unrelated to any allegations of fraud. Nor is the Plea

7

related to the question of efficacy.[6]

Pfizer recognizes that, in the *Bulger* action, this Court held that the Plea was admissible on the issue of intent. However, as discussed above, the misdemeanors to which Warner-Lambert pled guilty were strict-liability crimes. As a result, no inference of intentional conduct can be drawn from the Plea.

Moreover, courts, including the Supreme Court, have rejected attempts to justify introduction of prejudicial evidence of alleged conduct that did not cause harm to plaintiff on the grounds that it was evidence of intent. For example, in *Campbell*, the Supreme Court rejected the plaintiffs' argument that the evidence at issue went to motive. *See Campbell*, 538 U.S. at 422. The plaintiffs argued that the evidence was probative of a general scheme to reduce the amount of money paid to claimants, both as a result of first-party and third-party claims. *See id.* at 423-24. Observing that liability should have been imposed only for the conduct that harmed the plaintiffs, the Supreme Court held that the trial court committed error when it allowed the plaintiffs to use the case "as a platform to expose, and punish, the perceived deficiencies of State Farm's operations throughout the country." *Id.* at 420.

As the Supreme Court explained in *Philip Morris*, given the risk of unfairness, it is the trial court's responsibility to make sure that the jury answers "the right question, not the wrong one." *Philip Morris*, 549 U.S. at 355. Here, the jury will be asked to decide whether Kaiser paid too much for Neurontin prescriptions as a result of fraudulent misrepresentations made to Kaiser or its prescribing physicians. The Plea will not help the jury answer those questions. Instead, Plaintiffs hope that the jury will be confused by such evidence so that it answers the wrong

---

[6] Plaintiffs cannot "cure" the lack of nexus between its claims and the plea by arguing that the evidence is offered to show a pattern under RICO. "[I]n order for a *pattern* of racketeering activity to cause injury, the predicate acts constituting racketeering activity must themselves proximately cause the injury." *In re XE Servs. Alien Tort Litig.*, ___ F. Supp. 2d ___, 2009 WL 3415129, at *20 (E.D. Va. Oct. 21, 2009) (emphasis added). Violation of the FDCA is not a predicate act under RICO. Instead, Plaintiffs are required to show mail or wire fraud. Because the Plea is not evidence of fraud, it is not evidence of a pattern of fraud. *See Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991) (observing that RICO requires a pattern of *predicate* acts, that is, one of the criminal violations identified in the RICO statute).

question. The only way to make sure that the jury answers the right question is to exclude the evidence. *See, e.g., United States v. Solorio-Soto*, 300 F. App'x 487, 488 (9th Cir. 2008) (holding that limiting instruction that prior bad acts evidence of similar crimes could only be used to show whether charged offense was committed "knowingly" was insufficient to cure prejudice).

Even if the Plea has some tangential relevance to the issues in this lawsuit, any probative value would be outweighed by the risk of unfair prejudice or juror confusion. Accordingly, the plea should be excluded pursuant to Federal Rule of Evidence 403. *See Williams v. Drake*, 146 F.3d 44, 47-48 (1st Cir. 1998). The introduction of evidence that Warner-Lambert pleaded guilty to violations of the FDCA in the marketing of Neurontin – notwithstanding the irrelevance of those violations to the facts and claims in the instant dispute – would almost certainly increase the likelihood that a jury in this case would reach a decision based not on the facts properly before them, but on the basis of the guilty plea.

Indeed, the First Circuit has cautioned that the danger of unfair prejudice is especially severe in the case of "evidence of a judicial determination of prior illegal conduct on the part of the defendant," because "'[t]he deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught, is a tendency which cannot fail to operate with any jury.'" *Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449, 459 (1st Cir. 1963) (citation omitted, affirming, in civil antitrust action, trial court's exclusion of antitrust decree, findings, and opinion in prior government case); *Williams*, 146 F.3d at 48 (affirming, in related civil suit, the exclusion of a guilty plea previously entered by plaintiff before a prison disciplinary board); *Gil de Rebollo v. Miami Heat Ass'ns*, 137 F.3d 56, 64 (1st Cir. 1998) (approving trial court's exclusion of conviction from plaintiff's subsequent civil action because, "admission of [defendant's] criminal conviction would have allowed the jury to substitute the judgment reached in the criminal proceeding for its own"); *Diaz v. Cianci*, 737 F.2d 138, 139-40 (1st Cir. 1984) (affirming exclusion, in related civil suit, of evidence of plaintiff's conviction for assaulting police officer

9

during the same event because of danger of unfair prejudice).

### III. The Plea Is Improper Character Propensity Evidence

The Plea should also be excluded under Rule 404(b) as improper character propensity evidence. As the First Circuit has explained:

> To admit evidence of prior bad acts, a trial court must find that the evidence passes two tests. First, the evidence must have "special relevance" to an issue in the case such as intent or knowledge, and must not include "bad character or propensity as a necessary link in the inferential chain." Second, under Rule 403, evidence that is specially relevant may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

*United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000) (quoting *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996)); *see also United States v. Gilbert*, 229 F.3d 15, 20-21 (1st Cir. 2000). As demonstrated above, the Plea is irrelevant to this dispute and will cause unfair prejudice. Because the Plea is not relevant to Kaiser's claims, the only possible use of the Plea is to show a propensity for improper conduct, which is specifically precluded by Rule 404(b). *See Gilbert*, 229 F.3d at 24.

Plaintiffs may try to fit the Plea within one of Rule 404(b)'s exceptions, most likely intent. However, courts have made clear that the exceptions must be narrowly construed so that the prohibition against character evidence is not reduced to a hollow pronouncement. For example, courts have repeatedly held that Federal Rule of Evidence 404(b) does not permit evidence of prior alleged bad acts in order to show *generalized intent* to commit the act at issue in the litigation. *See, e.g., Fisher v. Am. Gen. Fin. Co.*, 52 F. App'x 601, 606-07 & n.3 (4th Cir. 2002) (per curiam) (evidence that defendant's employees routinely fabricated personal property descriptions on loan applications was relevant only of a generalized intent to commit dishonest acts and, therefore, inadmissible under Fed. R. Evid. 404(b)); *Crawford v. Yellow Cab Co.*, 572 F. Supp. 1205, 1208-09 (N.D. Ill. 1983) (rejecting argument that evidence of other bad acts was admissible to prove that the defendant's actions were "consistent with its corporate practice and policy of indifference to the duty to safely entrust vehicles"). Likewise, courts have held that a profit motive is too generalized an intent to justify the introduction of evidence of other conduct.

*See, e.g., Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 440-41 (D.C. Cir. 1994) (holding that prior conduct evidence proffered to demonstrate, *inter alia*, "greed," inadmissible under Fed. R. Evid. 404(b) because it was "only a shade less general than a claim that [the defendant] was a bad man").

As the Third Circuit has explained, "'a proponent's incantation of the proper uses of [Rule 404(b) evidence] . . . does not magically transform inadmissible evidence into admissible evidence.'" *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 191 (3d Cir. 2000) (citation omitted). Rather, the relevance of the evidence must be established by linking logical inferences to the specific facts at issue in the lawsuit. At no point can one of the links be that the defendant had the propensity to act a certain way. *See id.* Here, the evidence is not proffered to show a causal nexus to Plaintiffs' claimed injury. The evidence is offered only to show propensity, which Rule 404 (as well as the Supreme Court's decision in *Campbell*) does not allow.

## IV. The Plea Is Not Admissible As Impeachment Evidence

The Plea is also inadmissible as impeachment evidence. First, Federal Rule of Evidence 609 authorizes the use of a witness' prior conviction only to attack the individual witness' credibility. "[I]t is axiomatic that *it is only the testifying witness' own prior convictions* that should be admissible on cross examination to impeach his credibility." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 523 (3d Cir. 1997) (emphasis added). Thus, "Rule 609 does not permit corporate convictions to be used to impeach the credibility of employee witnesses who were not directly connected to the underlying criminal act." *Id.* at 524. As the Third Circuit explained in *Walden*:

> Criminal acts are relevant to a witness' credibility only if that witness actually participated in the criminal conduct. It strains logic to argue that an employee's credibility is properly brought into question by the mere fact that he or she is presently employed by a corporation that in some unrelated manner was guilty of dishonest acts, no matter how egregious.

*Id.* at 523-24.

Second, as discussed above, the guilty Plea was limited to certain strict liability violations of the FDCA's labeling and promotional provisions. The Plea is not relevant to impeach by

11

contradiction in the absence of witness testimony inconsistent with the specific admissions contained in the Plea. *See* Fed. R. Evid. 613; *see also United States v. Perez-Perez*, 72 F.3d 224, 227 (1st Cir. 1995). Thus, the Plaintiffs would first have to elicit testimony on an irrelevant subject, obtain inconsistent testimony, and then offer the Plea as impeachment. The relevancy requirements may not be circumvented so easily.

Moreover, because the Plea did not involve a crime of dishonesty or false statement, such as perjury, it cannot be offered under Rule 609 to show the alleged propensity of a witness to testify truthfully. *See* Fed. R. Evid. 609(a)(2); *see also United States v. Meserve*, 271 F.3d 314, 328 (1st Cir. 2001) ("To be admissible under Rule 609(a)(2), a prior conviction must involve 'some element of deceit, untruthfulness, or falsification which would tend to show that an accused would be likely to testify untruthfully'" (citation omitted).

## V.   Evidence Of The Plea Cannot Be Admitted On The Issue of Punitive Damages

Plaintiffs should not be allowed to manufacturer "relevance" arguments for evidence of the Plea by arguing that such evidence is relevant to the issue of punitive damages. Punitive damages are not available under either RICO or California's Unfair Competition Law ("UCL").[7] *See In re XE Servs. Alien Tort Litig.*, ___ F. Supp. 2d ___, 2009 WL 3415129, at *21 (E.D. Va. Oct. 21, 2009) (observing that treble damages are the exclusive remedy under RICO, punitive damages are not available); *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) (holding that punitive damages are not available under California's UCL).[8]  Thus,

---

[7] Cal. Bus. & Prof. Code §§ 17200, et seq. (West 2009).

[8] Nor does Plaintiffs' unjust enrichment claim provide a basis for recovering punitive damages. California courts have repeatedly held that unjust enrichment is not a separate cause of action under California law. *See, e.g., McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 254 (Ct. App. 2006); *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Ct. App. 2003). Likewise, California courts have also made clear that plaintiffs cannot avoid the restrictions on recovery under the UCL by re-characterizing their claim as one for unjust enrichment. *See Madrid v. Perot Sys. Corp.*, 30 Cal. Rptr. 3d 210, 221 (Ct. App. 2005).

Plaintiffs also cannot recover punitive damages under any other state consumer protection statute that they have pled. Initially, not all such statutes permit recovery of punitive damages. *See, e.g., Golt v. Phillips*, 517 A.2d 328, 333 (Md. 1986). Second, the only two Kaiser entities that are plaintiffs in this action are Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals. Kaiser has included a footnote in its recent filings that "Kaiser Foundations Health Plain, Inc. is the parent company of the

*(cont'd)*

Plaintiffs cannot avoid the dictates of *Campbell* and *Philip Morris* by arguing that the evidence is offered on the issue of reprehensibility. Because punitive damages are not available and RICO treble damages are not subject to the jury's discretion, reprehensibility is not relevant to any issue that the jury will be asked to decide.

Moreover, the Supreme Court in *Campbell* made clear that dissimilar conduct has no place in the analysis of a defendant's reprehensibility for purposes of punitive damages and should be excluded as irrelevant. *See Campbell*, 538 U.S. at 422-23. Under the Supreme Court's punitive damages jurisprudence, only evidence of conduct that is similar to the conduct that resulted in harm to the plaintiff may have any relevance to establishing the reprehensibility of a defendant's conduct toward the plaintiff. *See id.* at 423-24. Dissimilar conduct cannot be used to show repeated misconduct or "recidivism" on the part of a defendant. As the Supreme Court stated in *Campbell*, if punitive damages are to be justified on the grounds that the defendant is a "recidivist," "courts must ensure the conduct in question *replicates* the prior transgressions." *Id.* at 423 (emphasis added).

For the reasons discussed above, the Plea involved specific instances of off-label marketing, not claims of fraud. To allow Plaintiffs to introduce evidence of the Plea on the issue of "reprehensibility" does not satisfy *Campbell*'s requirement that the conduct replicate the conduct directed at the plaintiff. *See IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 313-14 (4th Cir. 2003); *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 259 (E.D. Pa. 2008); *Estate of Embry v. GEO Transp. of Indiana, Inc.*, 478 F. Supp. 2d 914, 922-23 (E.D. Ky.

---

*(cont'd from previous page)*
following companies and has brought this lawsuit on behalf of itself and its subsidiaries: Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio." (Pl. List of Witnesses To Be Presented at Trial [2179] at 1 n.1.) However, the law is clear that a parent corporation may not sue to recover damages to its subsidiaries. *See, e.g., Payphone v. Brooks Fiber Commc'ns of R.I.*, 126 F. Supp. 2d 175, 179 (D.R.I. 2001). Thus, Kaiser lacks standing to recover either compensatory or punitive damages for its subsidiaries in other jurisdictions. Finally, Prof. Hartman has not calculated state-by-state damages for any Kaiser entity. As a result, there would be no way to satisfy *Campbell*'s proportionality requirement. *See Campbell*, 538 U.S. at 425.

2007); *Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp. 2d 1303, 1324 (S.D. Fla. 2004), *aff'd*, 183 F. App'x 872 (11th Cir. 2006). Accordingly, *Campbell* and *Philip Morris* require exclusion of the Plea.

### CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their motion in limine to exclude any evidence of or reference to the Plea at trial.

Dated: January 8, 2010                    Respectfully submitted,

                                                       SKADDEN, ARPS, SLATE, MEAGHER
                                                         &FLOM LLP

                                                     By:     /s/ Mark S. Cheffo
                                                               Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

SKADDEN, ARPS, SLATE, MEAGHER
 &FLOM LLP

By:     /s/ Raoul D. Kennedy
        Raoul D. Kennedy

Four Embarcadero Center
San Francisco, CA 94111
Tel: (415) 984-6400

-and-

WHEELER TRIGG O'DONNELL LLP

By:     /s/ James E. Hooper
        James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800

-and-

14

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 8, 2010.

/s/ David B. Chaffin
David B. Chaffin