UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin<br>**<u>UNREDACTED VERSION</u>**<br>**<u>FILED UNDER SEAL</u>** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE THE TESTIMONY OF RAYMOND S. HARTMAN**

Pursuant to Federal Rules of Evidence 401, 402, 403, 702 and 703, Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") respectfully submit this Memorandum in Support of Defendant's Motion in Limine to Exclude the Testimony of Raymond S. Hartman.

**PRELIMINARY STATEMENT**

Plaintiffs offer the opinion of Dr. Hartman to support the damages sought by them in this litigation. Dr. Hartman did not perform any independent econometric analysis of the issue of causation in this case. Instead, he merely attempts to monetize Prof. Rosenthal's conclusions. Dr. Hartman's "damages" analysis should be excluded for several reasons.

First, Dr. Hartman's opinions depend entirely upon Prof. Rosenthal's flawed model for its key input: the quantity of Neurontin prescriptions that Prof. Rosenthal claims were written as a result of improper promotion. As demonstrated in Pfizer's separate motion to exclude the testimony of Prof. Rosenthal, her calculation of that quantity is unreliable. Accordingly, Dr. Hartman's calculation of damages is similarly without basis.

Second, Dr. Hartman's analysis is independently excludable because, like Prof. Rosenthal's model, it depends on assumptions that find no support in the record. Dr. Hartman offers two different estimates of Kaiser's damages. The first assumes that Kaiser is entitled to

recover the entire amount that it paid for any off-label Neurontin prescriptions. The second assumes that Kaiser would instead have paid for cheaper, alternative medicines from a short, self-selected list created by Kaiser. Neither is supportable. In addition, Dr. Hartman attempts to extrapolate national data to Kaiser without any reasonable basis for doing so.

Dr. Hartman has also included in his calculations prescriptions paid for by entities that are not parties to this litigation. As a result, he has significantly overstated Plaintiffs' damages.

Accordingly, for the reasons discussed below, Dr. Hartman's testimony is unreliable and should be excluded.

## ARGUMENT

**I.     Dr. Hartman's Analysis Should Be Excluded Because It Depends Entirely On The Results Of Prof. Rosenthal's Flawed And Inadmissible Model**

The critical input to Dr. Hartman's purported "damages" calculation is the number of Neurontin and gabapentin prescriptions that Prof. Rosenthal's flawed model generates. [REDACTED]

Because Dr. Hartman's analysis depends on Prof. Rosenthal's model for its input, and because that model is fundamentally flawed, Dr. Hartman's analysis is unreliable and should be excluded. (*See* Def. Mem. in Support of M. to Exclude Testimony of Meredith Rosenthal ("Rosenthal Mem.").)

**II.    Dr. Hartman Unreasonably Extrapolates National Data to Kaiser and Cannot Reliably Disaggregate Between Indications**

Like Prof. Rosenthal, Dr. Hartman has made no attempt to conduct a Kaiser-specific analysis. [REDACTED]

2



<sup>1</sup> However, as explained in Pfizer's memorandum in support of its motion to exclude Prof. Rosenthal's testimony, she does not and cannot calculate the number of prescriptions caused by alleged fraudulent representations. (Rosenthal Mem. at 7-10.) Putting aside the numerous other flaws in her methodology, all she even attempts to do is to calculate the number of prescriptions allegedly due to off-label promotion. The titles and column headings for Dr. Hartman's charts are, therefore, highly misleading.

<sup>2</sup>

<sup>3</sup>

<sup>4</sup> A copy of Dr. Grabowski's Report is attached as an exhibit to Defendants' Motion in Limine to Exclude the Testimony of Meredith Rosenthal.

3

 In other words, Dr. Hartman overstates Kaiser's bipolar prescriptions by a factor of four. Even without treble damages, such a gross overstatement of damages could never pass *Daubert*[5] muster. *See United States ex rel. Loughren v. UnumProvident Corp.*, 604 F. Supp. 2d 259, 268-69 (D. Mass. 2009) (Saris, J.). The fact that Plaintiffs seek treble damages renders their reliance on Dr. Hartman's flawed analysis unconscionable. Plaintiffs do not seek to recover just the purchase price of every Neurontin bipolar prescription that they paid for – they seek to recover *12 times* the cost of every Neurontin bipolar prescription. Plaintiffs' reliance upon a wholly unreliable and grossly overstated damages request offends due process. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 834 (Ill. 2005).

Plaintiffs cannot overcome this fatal flaw in Dr. Hartman's calculations by nakedly asserting that Dr. Hartman's calculations across all off-label uses are accurate. First, any such assertion is rank speculation. If Dr. Hartman's bipolar utilization is overstated by a factor of four, it is equally likely that use of national data overstates *all* of Kaiser's alleged off-label prescriptions. As noted above, ▇▇▇ Second, this Court has made clear that Plaintiffs must be able to disaggregate between indications. (Exh. H, 9/18/09 Hr'g Tr. 96:20-97:5.) Plaintiffs' proof with respect to efficacy and fraud is not the same across indications and they cannot meet their burden of proof with respect to neuropathic pain with migraine evidence.

---

[5] *Daubert v. Merrell Dow Pharms.*, 506 U.S. 579 (1993).

Plaintiffs may rely upon *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946) to support their sophistic entreaty that the Court ignore the gaping holes in Dr. Hartman's analysis. But *Bigelow*, a 1946 antitrust case, does not make *Daubert* irrelevant. *See Intimate Bookshop, Inc. v. Barnes & Noble, Inc.*, No. 98 Civ. 5564, 2003 WL 22251312, at *4 (S.D.N.Y. Sept. 30, 2003). Initially, as courts have repeatedly held, *Bigelow* does not support a "relaxed" burden on the issue of causation. *See Hare v. Potter*, 549 F. Supp. 2d 688, 695-96 (E.D. Pa. 2007). And, as discussed above, the key input in Dr. Hartman's calculation, the causation variable, is derived from Prof. Rosenthal's flawed analysis. Second, *Bigelow* did not address a situation where direct evidence actually existed and was available, but was ignored by the plaintiff and his experts. Third, *Bigelow* does not discuss the use of aggregate proof at all and certainly not in the manner proposed by Plaintiffs here. Fourth, *Bigelow* does not allow Plaintiffs to recover damages for prescriptions not attributable to the wrongful conduct. *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000). *Intimate Bookshop*, 2003 WL 22251312, at *7; *Computer Access Tech. Corp. v. Catalyst Enters., Inc.*, 273 F. Supp. 2d 1063, 1076 (N.D. Cal. 2003). Here, neither Prof. Rosenthal nor Dr. Hartman isolate the prescriptions allegedly caused by fraud. Finally, even under *Bigelow*, "there is a distinction between proof which allows the jury to make a 'just and reasonable inference' of damages and proof which only provides a basis for 'pure speculation or guesswork.'" *Wallace Motor Sales, Inc. v. Am. Motors Sales Corp.*, 780 F.2d 1049, 1062 (1st Cir. 1985) (quoting *Bigelow*, 327 U.S. at 264); *accord Intimate Bookshop*, 2003 WL 22251312, at *8 (observing that the plaintiff's "survey and damages models [were] impermissibly fraught with assumptions and speculation"). Here, Dr. Hartman's analysis depends upon far too many unproven assumptions to permit a "just and reasonable inference" of the amount of damages.

### III. Dr. Hartman's "But For" Assumptions Are Groundless

#### A. Dr. Hartman's First Damage Calculation Incorrectly Assumes That TPPs Are Entitled To Recover The Full Purchase Price For All Prescriptions Plaintiffs Attribute To The Alleged Wrongful Conduct

Apart from the inaccuracy of his main input and his baseless extrapolation from non-Kaiser data, Dr. Hartman's analysis is excludable because it rests on additional unsupported and counterfactual assumptions. Dr. Hartman's damages model assumes, simplistically, that Plaintiffs are entitled to the entire amount they paid for off-label Neurontin prescriptions, even if Kaiser's policyholders benefited from the medication, and even if Kaiser would otherwise have paid more for a different medication.

Dr. Hartman's assumptions that Neurontin would not have been prescribed and that Plaintiffs' are entitled to recover the entire price paid for a Neurontin prescription is not founded in any kind of economic analysis or a review of the factual record in this case. [REDACTED] As a result, he has made assumptions contrary to common sense, economic principles and the law. A plaintiff claiming that it paid for a prescription drug as a result of improper marketing cannot recover damages if the drug effectively treated the condition for which the drug was prescribed. *See Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364, 380 (D.N.J. 2004); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 68 (S.D.N.Y. 2002).

Neither Prof. Rosenthal nor Dr. Hartman make any allowance in their calculations for Neurontin prescriptions that provided effective treatment for the patients to whom they were given. Their aggregate models must, therefore, assume that Neurontin was ineffective in every patient for whom it was described. Such assumption is not supported by the record. As discussed in Pfizer's memorandum in support of its motion to exclude Dr. Rosenthal's testimony, gabapentin is still on Kaiser's formulary and both Kaiser's experts and Kaiser Permanente

physicians testified that they continue to prescribe it for off-label uses in some patients. (Rosenthal Mem. at 5.)

More glaringly, Dr. Hartman's own actions belie his assumption that Neurontin is never effective for any off-label use. ████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

Not only does Dr. Hartman include prescriptions where Neurontin effectively treated the conditions for which it was prescribed, his first damages calculation also fails to consider the cost of alternative drugs that might have been prescribed instead of Neurontin. As a result, Dr. Hartman would award the full purchase price of Neurontin notwithstanding the fact that, even assuming Neurontin would not have been prescribed, Kaiser would have paid for some other medicine. As a result, Dr. Hartman's first damages calculation incorrectly assumes that there would not have been any offsetting costs to Kaiser in the "but for" world. ████████
████████████████████████████████████████████████████████████████

### B. Dr. Hartman's Second Damages Calculation Ignores The Individual Nature Of Prescribing Decisions

Recognizing the difficulty of proving for every patient (1) that Neurontin was not effective and (2) that they would not have paid as much or more for another drug, Kaiser has never pled that Neurontin was absolutely ineffective. As this Court observed when ruling on Defendants' first motion to dismiss: "[A] direct allegation that Neurontin was not effective for Coordinated Plaintiffs' insured patients does not appear anywhere else in the complaint, nor is one associated with any other causes of action." *In re Neurontin Mktg., Sales Practices & Prods.*

*Liab. Litig.*, 433 F. Supp. 2d 172, 185 (D. Mass. June 12, 2006). Accordingly, in opposing Pfizer's motion for summary judgment, Kaiser contended:

> This Court has ruled on two prior occasions that Coordinated Plaintiffs need not prove that Neurontin is ineffective. The Coordinated Plaintiffs are not required to prove "that plaintiffs 'were injured (i.e., suffered economic loss) by virtue of . . . Neurontin's inefficacy for that condition.'". . . Instead, this Court granted Coordinated Plaintiffs leave to plead allegations in support of the proposition that "they sustained an economic injury because Defendants' fraudulent activities caused Plaintiffs to pay for Neurontin prescriptions at excessive doses and instead of cheaper alternatives."

(Coordinated Plaintiffs' Opp. to Pfizer's M. for Sum J. [1744] at 18.)

Kaiser relied upon *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003), in order to survive dismissal. However, *Desiano* held only that the plaintiffs in that case had sufficiently *pled* a claim, and its analysis of their alternative drugs argument boiled down to an overpricing theory because it posited a falsely marketed drug that was *in all respects identical* to a cheaper existing drug, except for the higher price. *See id.* at 349-50. *Desiano* does not address the sufficiency of evidence that would have to be offered in support of such a claim.

As Judge Weinstein recently held, whether an alternative drug is as effective and safe as another in drug is an inherently individual, patient-specific issue. *See Hood ex rel. Mississippi v. Eli Lilly & Co.* (In re Zyprexa Prods. Liab. Litig.), ___ F. Supp. 2d ___, 2009 WL 4260857, at *59-61 (E.D.N.Y. Dec. 1, 2009):

> Several of the criteria for "medical necessity" are context-sensitive, rather than one-size-fits-all. Because each patient presents a unique set of symptoms and indications, and each patient may respond differently to any given medication, it requires a highly specific, individual analysis to determine, for example, whether there exists for a given patient another "effective and more conservative or substantially less costly treatment." "Due to the illnesses' heterogeneity, different people respond differently to different psychotropic drugs. Which drug will work best for a new patient is often unknown until he or she tries it; thus clinical decision-making about psychotropic medications almost inevitably is based on "trial and error."

*Id.* at *59 (citation omitted). Accordingly, Mississippi's reliance upon aggregate proof to support its claims based upon the alleged availability of cheaper, alternative recoveries was

8

barred regardless of whether it was premised on unjust enrichment or violation of Mississippi's consumer protection statute. *See id.* at *57-59.

In this case, Dr. Hartman's consideration of Kaiser's cheaper, more optimal theory does not reflect considered economic analysis, but is a virtual afterthought. He addresses this theory in a footnote, in the most conclusory terms possible, and does not claim to have thoroughly analyzed it. ████████████████████████████████████████████████████████████████████████████████

Further, Dr. Hartman undertook no independent analysis of the comparables used for his analysis – the so-called "cheaper alternative" drugs. ████████████████████████████████████████████████████████████████████████████████████████████████████████████ but he did not ask or do anything to validate the accuracy of this extremely important input to his calculations. Courts have repeatedly held that a sufficient factual basis for an expert's opinion is lacking where an expert simply assumes the facts alleged by the plaintiffs and other persons and conducts no independent investigation to support his opinion. "[A]n expert must vouchsafe the reliability of the data on which he relies and explain how the cumulation of that data was consistent with standards of the expert's profession." *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 25 (1st Cir. 1999).

For example, in *American Key Corp. v. Cole National Corp.*, 762 F.2d 1569 (11th Cir. 1985), the court affirmed summary judgment in favor of the defendant, finding that the affidavits submitted by the plaintiffs failed to create a genuine issue of fact. In that case, the plaintiff offered the affidavit of its president and major stockholder, which contained inadmissible opinion testimony that the witness was not competent to give. *See id.* at 1579-80. The defects in the evidence were not cured by hiring an expert to repeat the plaintiff's inadmissible lay opinions. As the court explained:

> Neither does Dr. Henry's affidavit create a material issue of disputed fact with respect to the relevant market or any other issue in this cause. The "facts" in that affidavit are based entirely on DeWeese's inadmissible lay testimony. Henry spot checked DeWeese's extract, but did nothing to verify the "facts" submitted to him by DeWeese.

*Id.* at 1580.[6] Here, Kaiser has not provided the Court with any expert report that explains how it can be determined on an aggregate basis: (1) whether physicians would have prescribed a drug other than Neurontin, (2) what other drug they would have prescribed, (3) whether any drug that might have been prescribed was cheaper than Neurontin, and (4) whether any drug that might have been prescribed was more efficacious and presented fewer side effects for the patient to whom it was prescribed.

A similar argument was made by the plaintiffs in *In re Vioxx Class Cases*, ___ Cal. Rptr. 3d ___, 2009 WL 4806197 (Ct. App. Dec. 15, 2009), and rejected by the California Court of Appeals. There, the plaintiffs argued that they were entitled to recover the difference between the cost of Vioxx and generic naproxen, regardless of whether their physicians would have actually prescribed naproxen. *See id.* at *3. Rejecting this argument, "[t]he trial court found that the decision to prescribe Vioxx is an individual decision made by a physician in reliance on many different factors, which vary from patient to patient." *Id.* at *10. Affirming, the California court of appeals held:

> Even if plaintiffs establish, class-wide, that Merck misrepresented the cardiovascular risks of Vioxx in a manner that was likely to deceive plaintiffs and their prescribing physicians, no plaintiff would be able to recover without first identifying a proper comparator drug, the cost of which would provide the actual value to the patient of the Vioxx received. As . . . the issue of a proper

---

[6] *See also TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993) (excluding the testimony of an expert who did nothing to verify the data upon which he relied); *Coral Way, L.L.C. v. Jones*, No. 05-21934-CIV, 2006 WL 5556004, at *1 (N.D. Fla. Oct. 17, 2006) (excluding expert testimony that simply assumed the truth of the plaintiff's allegations); *Total Containment, Inc. v. Dayco Prods., Inc.*, No. Civ. A. 1997-CV-6013, 2001 WL 1167506, at *6 (E.D. Pa. Sept. 6, 2001) (excluding testimony of expert who simply relied upon information supplied by the plaintiff's executives, without undertaking any independent verification); *Otis v. Doctor's Assocs., Inc.*, No. 94 C 4227, 1998 WL 673595, at *4 (N.D. Ill. Sept. 14, 1998) (excluding expert testimony where expert simply accepted projected sales estimates without "perform[ing] any independent analysis of the reliability or factual accuracy of the figures").

> comparator was a patient-specific issue, incorporating the patient's medical history, treatment needs, and drug interactions, the trial court properly concluded that restitution could not be calculated on a class-wide basis.

*Id.* at *11. The court of appeals also explained the difficulties that would be faced by a TPP that attempted to pursue such a claim.

> [T]here were some TPPs who would *only* pay for Vioxx if the patient had a history of gastrointestinal disease or had first tried two traditional NSAIDs without success. While these TPPs may or may not have a claim against Merck, it clearly cannot be based on the theory which plaintiffs seek to pursue, because, for these TPPs, *every penny* they paid for Vioxx was paid for a patient for whom a traditional NSAID was *not* a viable medical option.

*Id.* at *9 (emphasis in original). Kaiser had and continues to have similar formulary restrictions or guidelines with respect to gabapentin. Where its alternative drugs had already been tried unsuccessfully with a patient, or were not viable options for a patient due to risks of addiction or other contraindications, there is no basis for Kaiser to recover damages based upon the price of such drugs.

Further, the relevant question is not what theoretically *could* have been prescribed, but what physicians *would* have prescribed, because that's what Kaiser would have paid for in the "but for" world. And there is no reason to assume that physicians would have selected from Kaiser's list of mostly generic drugs rather than a newer branded drug. In fact, [REDACTED]

11

██ (*See id.* at 443:21-444:17.) In any event, what a physician would have prescribed, if anything, in place of Neurontin is an individual issue nowhere accounted for in Dr. Hartman's calculations.

Moreover, Dr. Hartman's unquestioned acceptance of his instructions from counsel leads him to make patently contradictory assumptions. Significantly, for purposes of determining the number of prescriptions allegedly caused by off-label promotion, he exports national data to his Kaiser calculations, without any regard for the differences between Kaiser and other TPPs. In doing so, he grossly overstates the number of prescriptions paid for by Kaiser for bipolar (and potentially for other indications). (*See supra* section II). ████████ This permits him to calculate damages based upon Kaiser's self-selected list of mostly generic and inexpensive drugs, thereby inflating the price differential. Such result-oriented selection of operating assumptions is anathema to *Daubert*.

## IV. Dr. Hartman Includes Damages For Entities That Are Not Parties To This Litigation

The only two Kaiser entities that are plaintiffs in this action are Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals. Nonetheless, Kaiser has included a footnote in its recent filings that "Kaiser Foundation Health Plan, Inc. is the parent company of the following companies and has brought this lawsuit on behalf of itself and its subsidiaries: Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio." (Pl. List of Witnesses To Be Presented at Trial [2179] at 1 n.1.)

However, as courts have repeatedly held, a parent corporation has no standing to recover damages sustained by a subsidiary. *See, e.g., PayPhone LLC v. Brooks Fiber Commc'ns of R.I.*, 126 F. Supp. 2d 175, 179 (D.R.I. 2001) ("The First Circuit has adopted the rule that a corporation

may not pierce its own veil . . . ."); *Resolution Trust Corp. v. Fleischer*, 848 F. Supp. 917, 923 (D. Kan. 1994) (holding that parent corporation who is sole shareholder does not have a right to sue for losses suffered by a subsidiary; direct injury must be shown). A corporation cannot, on the one hand, insist that corporate structure be respected when it is a defendant, but pierce the corporate veil when it is a plaintiff. *See United Cont'l Tuna Corp. v. United States*, 550 F.2d 569, 573 (9th Cir. 1977).

Dr. Hartman's report is based upon "nationwide" Kaiser prescriptions and does not segregate and subtract the prescriptions paid for by Kaiser subsidiaries that are not parties to this litigation. In doing so, he has overstated that Plaintiffs' damages.

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that the Court exclude the testimony of Dr. Hartman.

Dated: January 8, 2010                            Respectfully submitted,

                                                          SKADDEN, ARPS, SLATE, MEAGHER
                                                                           & FLOM LLP

                                                          By:   /s/ Mark S. Cheffo
                                                                  Mark S. Cheffo

                                                          Four Times Square
                                                          New York, NY 10036
                                                          Tel:  (212) 735-3000

                                                          SKADDEN, ARPS, SLATE, MEAGHER
                                                          & FLOM LLP

                                                          By:   /s/ Raoul D. Kennedy
                                                                 Raoul D. Kennedy

                                                          Four Embarcadero Center
                                                          San Francisco CA 94111
                                                          Tel:  (415) 984-6400

                                                                     -and-

WHEELER TRIGG O'DONNELL LLP

By: /s/ James E. Hooper
James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800

-and-

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 8, 2010.

/s/ David B. Chaffin
David B. Chaffin