# EXHIBIT H

```
                                         1
         IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS

 IN RE:                              )
                                     ) CA No. 04-10981-PBS
 NEURONTIN MARKETING, SALES PRACTICES,) Pages 1 - 98
 AND PRODUCTS LIABILITY LITIGATION    )


                MOTION HEARING
      BEFORE THE HONORABLE PATTI B. SARIS
          UNITED STATES DISTRICT JUDGE



                     United States District Court
                     1 Courthouse Way, Courtroom 19
                     Boston, Massachusetts
                     September 18, 2009, 2:40 p.m.




              LEE A. MARZILLI
           OFFICIAL COURT REPORTER
         United States District Court
          1 Courthouse Way, Room 7200
              Boston, MA  02210
                (617)345-6787
```

```
                                         2
 1   APPEARANCES:
 2
     FOR THE PLAINTIFFS:
 3
        BARRY R. HIMMELSTEIN, ESQ., Lieff, Gabraser, Heifmann &
 4   Bernstein, LLP, Embarcadero Center West, 275 Battery Street,
     30th Floor, San Francisco, California, 94111-3339.
 5
        THOMAS M. SOBOL, ESQ., Hagens Berman Sobol Shapiro, LLP,
 6   55 Cambridge Parkway, Suite 301, Cambridge, Massachusetts,
     02142.
 7
        THOMAS M. GREENE, ESQ., Greene, LLP,
 8   33 Broad Street, 5th Floor, Boston, Massachusetts,02109.
 9      LINDA P. NUSSBAUM, ESQ., Kaplan, Fox & Kilsheimer, LLP,
     850 Third Avenue, New York, New York, 10022.
10
        GERALD LAWRENCE, ESQ., Lowey Dannenberg Cohen & Hart,
11   P.C., One North Broadway, White Plains, New York,
     10601-2310.
12
        MARK M. SANDMANN, ESQ., Rawlings & Associates,
13   One Eden Parkway, LaGrange, Kentucky, 40031-1800.
14      W. SCOTT SIMMER, ESQ., Blank Rome, LLP,
     Watergate, 600 New Hampshire Avenue, N.W., Washington, D.C.,
15   20037.
16
     FOR THE DEFENDANTS:
17
        DAVID B. CHAFFIN, ESQ., White and Williams, LLP,
18   100 Summer Street, Suite 2707, Boston, Massachusetts, 02110.
19      MARK S. CHEFFO, ESQ. and DAVID S. WEINRAUB, ESQ.,
     Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times
20   Square, New York, New York, 10036.
21
22
23
24
25
```

```
                                         3
 1              P R O C E E D I N G S
 2       THE CLERK:  In Re: Neurontin Marketing, Sales
 3   Practices, and Products Liability Litigation, Civil Action
 4   No. 04-10981, will now be heard before this Court.  Will
 5   counsel please identify themselves for the record.
 6       MR. SOBOL:  Good afternoon, your Honor.  Tom Sobol
 7   for the class plaintiffs.
 8       MR. GREENE:  Tom.
 9       MR. HIMMELSTEIN:  Good afternoon.
10       MR. LAWRENCE:  Good afternoon, your Honor.  Gerald
11   Lawrence on behalf of Aetna.
12       MS. NUSSBAUM:  Good afternoon, your Honor.  Linda
13   Nussbaum on behalf of the Kaiser plaintiffs.
14       MR. SANDMANN:  Good afternoon, your Honor.  Mark
15   Sandmann on behalf of the coordinated plaintiff Guardian.
16       MR. SIMMER:  Your Honor, Scott Simmer on behalf of
17   the Assurant plaintiffs.
18       MR. CHAFFIN:  Good afternoon, your Honor.  David
19   Chaffin for the defendants.
20       MR. CHEFFO:  Good afternoon.  Mark Cheffo for
21   Pfizer.
22       MR. WEINRAUB:  Good afternoon, your Honor.  David
23   Weinraub for defendants.
24       THE COURT:  Good.  So today we will not be arguing
25   the motion for reconsideration on the class.  That's
```

```
                                         4
 1   something I will have argument on but not today.  Today is
 2   the summary judgment matter, and there's enough there for me
 3   to have read.  But I have skimmed through the motion for
 4   reconsideration just to understand the context in which this
 5   is arising.  I thought we should, unless you had already
 6   agreed on a schedule, that we should start with the
 7   coordinated plaintiffs, unless one person was going to argue
 8   for the entire group of plaintiffs.  I learned an enormous
 9   amount from this, and one thing I did learn is, you actually
10   have some different views on things, so it's not, you know,
11   all for one and one for all on how you approach issues; for
12   example, damages.  So how do you want to do it?
13       MR. HIMMELSTEIN:  Your Honor, we had agreed
14   amongst ourselves that the class plaintiffs would take the
15   lead in the argument, if that's all right with the Court.
16       THE COURT:  I don't know.  I don't want an
17   argument on the class cert.
18       MR. HIMMELSTEIN:  No, your Honor.  This will be on
19   the summary judgment as set forth in the briefs.
20       THE COURT:  But here's my problem:  I think I need
21   to do this company by company and plaintiff by plaintiff.  I
22   think it's very fact-specific, and I think we're just -- so
23   I'm happy to have some common argument on proof of
24   ineffectiveness, but on the companies, are you prepared, for
25   example, to deal with Guardian and Aetna?
```

Page 93

1  MR. CHEFFO: But that's what the whole case is
2  going to be about, so unless we figure out --
3  THE COURT: But at this point there may be enough
4  evidence to get a fact question on a fraud --
5  MR. CHEFFO: As to --
6  THE COURT: -- on the effectiveness, whether it's
7  no better than snake oil, for example, in bipolar, a fact
8  question on a fraud -- if you disagree, fine -- I mean, you
9  have great scientists -- a fact question on whether or not
10 it caused damage to the third-party payor. And then you
11 have a problem, and I understand that, is the measure that
12 once people knew it dropped 30 percent, or is it one for
13 one? I understand that there be will a damage problem.
14 MR. CHEFFO: It's an advisory ruling, though, your
15 Honor. I mean, if there's a fraud in the air, you're
16 adopting a kind of fraud on the market --
17 THE COURT: Fraud on the market has got a problem.
18 I understand the legal problem. I view the class issue as a
19 very close question, not on the individuals where it's not
20 close at all, but on the third-party payor one, I think it's
21 a very -- but at least when you're going -- can't Aetna,
22 can't they sue and say, you know, "We were reimbursing for
23 snake oil"?
24 MR. CHEFFO: They can if they say, "Here's the
25 fifty prescriptions that we think that you --"

Page 94

1  THE COURT: But they don't have to go doctor to
2  doctor.
3  MR. CHEFFO: Of course they do, your Honor.
4  THE COURT: I know, and that may be the difference
5  we're disagreeing on. I mean, it may be just that simple,
6  but I don't know that I want to spend the next six months
7  writing the summary judgment. So I will think about that
8  issue which is under advisement, but in the meantime what I
9  want is a trial plan. I want to know how to think about
10 this. I have problems with the -- for example, you're
11 claiming the 1,800, that anything over 1,800 is a fraud,
12 right? I'm looking across you. So there are some areas
13 where how are you going to figure out -- you can figure out
14 in bipolar that virtually all, but how about some of these
15 other areas which the class has dropped, how are you going
16 to prove what your damages are for that? How many of them
17 were actually for pain? How do you know?
18 MS. NUSSBAUM: I think it's in the aggregate, your
19 Honor. I think --
20 THE COURT: No, no, no. No, we can't. We're
21 going to do it indication by indication, so that is an issue
22 for you, so --
23 MS. NUSSBAUM: There is evidence in the record
24 with respect to that, I mean, just as --
25 THE COURT: Like, if I said to a jury, "Okay, you

Page 95

1  find bipolar is a fraud." This is what I want you to think
2  about in the trial, bipolar is a fraud. I mean, that's the
3  one that really is the strongest one. Can you then say --
4  and even if I bought the aggregate model, 99 percent of the
5  bipolar prescriptions are fraudulently induced, how are you
6  going to come up with a number for how many were actually
7  bipolar?
8  MR. HIMMELSTEIN: Your Honor, if I may?
9  THE COURT: No, let me just ask her. So she needs
10 to figure out, how are you actually going to say that?
11 MS. NUSSBAUM: Well, your Honor, I think that
12 there's two ways. The first is, we have some internal
13 documents that I think address that point. You have
14 internal documents of the defendants that address the point
15 of the sale of this drug and what percentage of the drug is
16 for each indication, and we would do it in the aggregate.
17 THE COURT: You can do it in the aggregate, but
18 then ten percent of what, you know, this is what we lost
19 based on bipolar. But if they say there was no fraud in
20 pain or no fraud in nociceptive indications, then you've got
21 to carve that out.
22 MS. NUSSBAUM: That's correct.
23 THE COURT: So you have to come up with a theory,
24 but right now, if all I've got is fraud and proximate -- you
25 know, there's enough for material misrepresentation, enough

Page 96

1  for scienter, and enough for causing some damage, that
2  you're right, they are going to have to come up with a
3  reliable damage model that can carve it out indication by
4  indication. I agree with that.
5  MR. CHEFFO: And the only thing I would just say
6  on that, I think that what we would add, you know, I think
7  their whole theory of the case is different. So the
8  discovery that if they're talking about documents -- and I'm
9  not sure if they're produced, nor am I saying that there was
10 documents that should have been produced -- but, again, if
11 this theory has morphed a bit, you know, if a doctor
12 prescribes 55 percent or 90 percent of Medicaid patients,
13 and he goes and he reads this and he says there's efficacy,
14 and he also prescribes for -- he's also a member of the
15 Kaiser plan, and that's why he prescribes for bipolar. Now,
16 you know, they've made this argument that it's
17 inefficacious, but, again, if we're going to have that level
18 of these were the duped, we're going to need discovery to
19 know did that doctor --
20 THE COURT: I don't know. I simply know this: I
21 want you to think about what it would look like and how you
22 would do it because his very good point is that even if I
23 disagree with him on the aggregate thing, I mean, you'd have
24 to come up with -- if the jury said there was fraud in
25 bipolar but no fraud in pain, you need to come up with a

97

realistic way of thinking about that from all your third-party payors. You can't say in the aggregate there was fraud in bipolar, so we get every single indication of --

**MS. NUSSBAUM:** We will do that, your Honor. I believe that --

**THE COURT:** You're sitting here dying over here.

**MR. HIMMELSTEIN:** The reports are in.

**THE COURT:** What?

**MR. HIMMELSTEIN:** Dr. Hartman has calculated that it's based on the NDTI data, which he says --

**THE COURT:** Well, maybe there is. I'm just simply saying you have to think about it. I don't know. Okay, so --

**MR. HIMMELSTEIN:** There's nothing new to do there is what I'm saying. It's done.

**THE COURT:** When can you do these proposed trial --

**MR. SOBOL:** October 2, your Honor? Two weeks?

**MR. LAWRENCE:** That's fine with us, your Honor.

**THE COURT:** Do you want to respond, or do you want to do it right away?

**MR. CHEFFO:** Yes, I think if they can do a -- because normally I like to be cooperative. I just fundamentally don't see how you would have a trial, so I

98

think if they can give it in two weeks, if we could have two weeks to respond or even ten days.

**THE COURT:** Fine, fine. We're on for you in March, right?

**MR. CHEFFO:** I think March 27 or 29, right?

**THE CLERK:** 29th.

**MR. CHEFFO:** The only thing, I think there's something with the holidays or something in there, so you may want to look at that, but we're generally --

**THE COURT:** Somebody was upset about private school vacation week, so I try to be accommodating all around.

**MR. CHEFFO:** At this point, you know what, there's too many players. We're on for March 29, and we'll assume it is. If we have any problems, we'll come back to you.

**THE COURT:** Okay, great. Thank you. What did you say, Robert?

**THE CLERK:** Passover.

**THE COURT:** Maybe it was Passover?

**MR. CHEFFO:** That's what I thought, it was one of the high holy days.

**THE COURT:** Now, off the record for a minute.

**MR. SOBOL:** Did you want to set up a class certification hearing today or no?

**THE COURT:** You can set it up off the record.

99

(Discussion off the record.)
(Adjourned, 4:41 p.m.)

100

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS ) ss.
CITY OF BOSTON )

    I, Lee A. Marzilli, Official Federal Court Reporter, do hereby certify that the foregoing transcript, Pages 1 through 98 inclusive, was recorded by me stenographically at the time and place aforesaid in Civil Action No. 04-10981-PBS, In Re: Neurontin Marketing, Sales Practices, and Product Liability Litigation, and thereafter by me reduced to typewriting and is a true and accurate record of the proceedings.

    In witness whereof I have hereunto set my hand this 30th day of September, 2009.


/s/ Lee A. Marzilli
_____
LEE A. MARZILLI, CRR
OFFICIAL FEDERAL COURT REPORTER