UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Magistrate Judge Leo T. Sorokin |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF
AND CHARTS PREPARED BY JOSHUA PETEET**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") respectfully submit this memorandum of law in support of their motion in limine to exclude at trial the testimony of and charts prepared by Joshua Peteet.

**PRELIMINARY STATEMENT**

Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser") seek to have Mr. Peteet, an associate at Greylock McKinnon Associates, testify for the ostensible purpose of introducing a series of line graphs summarizing "the contents of voluminous writings . . . which cannot be conveniently examined in court" pursuant to Federal Rule of Evidence 1006. (Exh. A, Peteet Decl. ¶ 1.)  The "voluminous writings" purportedly summarized by Mr. Peteet come from databases regarding call notes of detailing visits, as well as certain datasets from IMS Health Inc. regarding Pfizer's expenditures on detailing. (*Id.* ¶ 2.)

Kaiser claims that Mr. Peteet will testify as an authenticating witness, rather than as an expert. (*See* Exh. B, Email from Plaintiffs' counsel Edward Notargiacomo to Defendants' counsel Katherine Armstrong, dated December 21, 2009; Exh. C, Peteet Dep. at 17:6-9.)  But the only asserted relevance of Mr. Peteet's testimony and charts is to demonstrate an allegedly high correlation among various types of off-label promotion, and to further demonstrate an alleged causal relationship between those types of promotion and off-label prescribing of Neurontin. More particularly, Plaintiffs argue that Mr. Peteet's testimony and charts support an inference

that allegedly misleading publications and peer-to-peer marketing have a measurable causal impact on off-label Neurontin prescribing.[1]  The asserted relevance of Mr. Peteet's testimony and charts thus depends on interpretations and opinions that would require expert causation testimony.  Because these charts and data have never been so construed by any expert, Mr. Peteet's charts are not only irrelevant, but meaningless.

No expert has endorsed Plaintiffs' counsels' interpretation of Mr. Peteet's charts. Mr. Peteet repeatedly acknowledged that he is not an expert, and that even in his lay opinion, his charts do not demonstrate causation.  "I mean, I think the impact of publication on sales is a causal question, and these charts don't present causal analysis."  (Peteet Dep. at 154:22-25; *see also id.* at 116:7-14, 140:2-13.)  Mr. Peteet further testified that no expert has reached any causation opinions based on his charts or the data summarized therein.  (*Id.* at 116:25-117:7, 141:15-142:6.)

Beyond being unable to testify as to causation, Mr. Peteet does not even claim that his charts or the underlying data show any correlation between detailing expenditure and off-label promotion generally.  (*Id.* at 149:15-150:4.)  Nor does he claim that his charts show any correlation between different types of alleged off-label promotion.  He simply attempted to show a correlation between certain IMS data, as manipulated per Plaintiffs' counsel's instructions, and call notes containing various keywords that were arbitrarily selected by Plaintiffs' counsel.  (*Id.* at 83:16-84:9, 87:16-88:10.)  Mr. Peteet had only the vaguest understanding of how these keywords might relate to off-label promotion (*id.* at 89:10-95:14), and he readily conceded that these keywords could have appeared in call notes that do not reflect any off-label promotion and that do not even reflect sales calls about Neurontin (*id.* at 91:9-17, 95:6-9, 95:21-96:12).  Indeed, most of the call notes in the database that he analyzed did not mention any specific drugs.  (*Id.* at 96:2-12, 103:13-23.).  Moreover, many of the call notes specifically mentioned drugs other than Neurontin – including Celexa, Zoloft, Lexapro, Relpax, and Aricept – but Plaintiffs' counsel

---

[1] *See* Class Pls. Mem. Opp. Summ. J. [1754] at 30-32; Class Pls. Mot. Recons. Order Denying Class Certification [1796] at 13 n.7; Pl.'s List of Witnesses to Be Presented at Trial [2179] at 5.

instructed Mr. Peteet not to make any effort to exclude from his analysis call notes referring to these other unrelated drugs.  (*Id.* at 98:2-103:3.)   Likewise, Plaintiffs' counsel instructed Mr. Peteet to make no effort to remove from his analysis any call notes that, on qualitative review, showed no connection to off-label promotion of Neurontin.  (*Id.* at 103:24-104:11.)

Thus, while ***Plaintiffs' counsel*** argue that Mr. Peteet's charts shows that detailing is correlated with other types of off-label promotion, neither Mr. Peteet nor any expert witness has given any such testimony.   Likewise, while ***Plaintiffs' counsel*** argue that this purported correlation demonstrates that misleading peer-to-peer marketing and publications have a measurable impact on off-label Neurontin prescribing, neither Mr. Peteet nor any expert witness has given any such testimony.  To the contrary, Plaintiffs' causation expert, Professor Meredith Rosenthal, acknowledges that she is "unable to account systematically for these influences on prescribing," and thus cannot even opine that publication or peer-to-peer marketing had any "independent effect on prescribing" generally, let alone on prescribing to Kaiser's insureds in particular.  (8/11/08 Rosenthal Decl. ¶ 53; *see also* 1/14/09 Rosenthal Dep. at 985:9-986:10, 989:13-991:3, 995:9-13.)[2]

While Mr. Peteet is supposedly being proffered as an authenticating witness under Rule 1006, he is in fact being utilized like an expert, or more precisely, as a vehicle through which Plaintiffs' counsel seek to introduce their own inadmissible non-expert opinions regarding what the data shows.  Mr. Peteet's testimony and charts should be excluded because they do not qualify for admission as data summaries under Rule 1006, and because they are irrelevant and unduly prejudicial.

---

[2] Professor Rosenthal's August 11, 2008, declaration and excerpts from her January 2009 deposition are attached as exhibits to Defendants' concurrently filed Motion *in Limine* to Exclude the Testimony of Meredith Rosenthal.

## ARGUMENT

**I.     Mr. Peteet's Proposed Testimony And Graphs Should Be Excluded As Constituting Undisclosed Expert Testimony**

Mr. Peteet's proposed testimony and graphs should be excluded because they constitute undisclosed expert testimony and cannot be properly admitted in the guise of a summary of data under Rule 1006.  Mr. Peteet's graphs are not summaries of data; they are instead the product of a carefully selected process crafted by Plaintiffs' counsel to obtain high correlation coefficients between manipulated data and arbitrary keywords, which Plaintiffs' counsel seeks to use to demonstrate a causal relationship that no expert has endorsed.

"Charts admitted under Rule 1006 are explicitly intended to reflect the contents of the documents they summarize and typically are substitutes in evidence for the voluminous originals." *United States v. Milkiewicz*, 470 F.3d 390, 398 (1st Cir. 2006).  "Consequently, they must fairly represent the underlying documents and be '"accurate and nonprejudicial."'" *Id.* (quoting *United States v. Bray*, 139 F.3d 1104, 1111 (6th Cir. 2008)).  "Care must be taken to insure that summaries accurately reflect the contents of the underlying documents and do not . . . unfairly emphasize part of the proponent's proof or create the impression that disputed facts have been conclusively established or that inferences have been directly proved." *United States v. Drougas*, 748 F.2d 8, 25 (1st Cir. 1984).

Mr. Peteet's graphs fall far short of this mandate.  They do not "fairly represent" the underlying data and, rather than serving as "substitutes in evidence," they have been specifically crafted for the purpose of demonstrating causation.  In his deposition, Mr. Peteet in fact states that Plaintiffs' counsel's purpose in having him make these graphs was to "link" or "make the connection between" detailing and alleged off-label marketing. (Peteet Dep, at 46:10-47:9.)  Any such causal "link" would have to be supported by expert testimony, not by a chart introduced through a non-expert authenticating witness.

"Courts have cautioned that Rule 1006 is 'not a back-door vehicle for the introduction of evidence which is otherwise admissible.'" *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir.

2007) (quoting *Peat, Inc. v. Vanguard Research Inc.*, 378 F.3d 1154, 1160 (11th Cir. 2004).  In *Eichorn*, the court held that the plaintiffs' proposed evidence was "subject to the rules governing opinion testimony" as their expert's calculations "included several assumptions, inferences, and projections . . . which represent . . . opinion, rather than the underlying information." *Id.*  The same result is dictated here.

Given the methodology used to create the graphs, it is clear that these graphs are not a simple compilation of voluminous records or data, but rather serve as biased and highly misleading interpretations of data, and, as such, they should be excluded.  *See State Office Sys., Inc. v. Olivetti Corp.*, 762 F.2d 843, 845-46 (10th Cir. 1985) (exhibits held not admissible as summaries under Rule 1006, but rather as opinion testimony as they were, in part, "interpretations of past data" and therefore not a "simple compilation of voluminous records"); *Gomez v. Great Lakes Steel Div. Nat'l Steel Corp.*, 803 F.2d 250, 258 (6th Cir. 1986) (exhibit purporting to be summary improperly admitted because it was not a "simple compilation of voluminous records").

Likewise, Mr. Peteet's graphs and corresponding testimony could only be received pursuant to Federal Rule of Evidence 702, and are not admissible under Rule 1006.  Rule 1006 does not permit Mr. Peteet to express expert-like opinions – or act as the vehicle for Plaintiffs' counsels' opinions – regarding any correlation or causal link between alleged off-label promotion and off-label prescribing of Neurontin.

## II.     Mr. Peteet's Proposed Testimony And Graphs Should Be Excluded As Irrelevant And Unduly Prejudicial

In the absence of expert causation testimony, Mr. Peteet's charts are utterly irrelevant and inadmissible.  Standing alone, evidence that certain keywords such as "left," "speak," and "prog" appear in call notes regarding detailing visits that may or may not have involved Neurontin and that may or may not have involved off-label promotion has no tendency to make the existence of any consequential fact "more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Any conceivable probative value would be substantially outweighed by the

danger that the jury would draw the precise causal inference Plaintiffs advocate, but which would be entirely speculative in the absence of expert causation testimony.  Rule 403 prohibits the introduction of evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403; *see also Williams v. Drake*, 146 F.3d 44, 48 (1st Cir. 1998) ("Rule 403 allows the exclusion of evidence which, though relevant, carries unwanted baggage, such as unfair prejudice or potential juror confusion.").  "Before submitting summaries or charts for a jury's inspection, the court must find that there is sufficient factual basis for admitting them and that possible prejudice or confusion does not outweigh their usefulness."  *Drougas*, 748 F.2d at 25. Likewise, Mr. Peteet's graphs and corresponding testimony could only be received pursuant to Federal Rule of Evidence 702, and are not admissible under Rule 1006.  Rule 1006 does not permit Mr. Peteet to express expert-like opinions – or act as the vehicle for Plaintiffs' counsels' opinions – regarding any correlation or causal link between alleged off-label promotion and off-label prescribing of Neurontin.

In light of the graphs' non-existent probative value, and the substantial likelihood of unfair prejudice to Pfizer were they to be disclosed to the jury, Rule 403 mandates preclusion of these graphs.

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that the Court expressly prohibit Mr. Peteet's testimony in its entirety.  Pfizer additionally requests that this court exclude the graphs he has prepared.

Dated: January 8, 2010                    Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:      /s/ Mark S. Cheffo
          Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:      /s/ Raoul D. Kennedy
          Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel:  (415) 984-6400

              -and-

WHEELER TRIGG O'DONNELL LLP

By:      /s/ James E. Hooper
          James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel:  (303) 244-1800

              -and-

WHITE AND WILLIAMS LLP

By:     /s/ David B. Chaffin
        David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 8, 2010.

/s/ David B. Chaffin
David B. Chaffin