UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:   NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981 |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris |
| | Magistrate Judge Leo T. Sorokin |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE THE
TESTIMONY OF DAVID FRANKLIN AND RELATED EVIDENCE**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum of law in support of their accompanying motion *in limine* to exclude at trial the testimony of David Franklin and certain related evidence.

**PRELIMINARY STATEMENT**

David Franklin was employed by Parke-Davis for four months in 1996 as a medical liaison in the Northeast Customer Business Unit ("CBU"). During that time, he met with physicians exclusively within the northeast region. Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser") do not operate in any of the states where Mr. Franklin worked as a medical liaison. Mr. Franklin has no first-hand knowledge regarding the activities of medical liaisons outside the Northeast CBU, and is thus not competent to testify about those activities. Moreover, Mr. Franklin's testimony about the activities of medical liaisons in northeastern states would be irrelevant because there is no showing that medical liaisons in states where Kaiser operates acted in a substantially similar fashion. To the contrary, he claims that in 1996, the manager of the West CBU – where Kaiser's members overwhelmingly reside – strongly criticized the conduct Mr. Franklin describes and stated that the West CBU's medical liaison program did not engage in any such conduct.

Because the only testimony Mr. Franklin is arguably competent to give is irrelevant and unduly prejudicial, his testimony should be excluded in its entirety. At a minimum, any

testimony should be limited to Mr. Franklin's personal knowledge and present recollections. Thus, he should be precluded from offering expert opinions or from testifying on the basis of prior out-of-court statements. Similarly, Plaintiffs should not be allowed to use Mr. Franklin as a vehicle for introducing inadmissible hearsay.

## **ARGUMENT**

I.  **The Only Marketing Practices Mr. Franklin Is Even Arguably Competent To Testify About Are Irrelevant And Unduly Prejudicial**

During the four months in 1996 that Mr. Franklin was employed by Parke-Davis, he worked as a medical liaison in the Northeast Customer Business Unit ("CBU"), which covered the states of Maine, New Hampshire, Vermont, Connecticut, Rhode Island, Massachusetts, Pennsylvania and parts of New York and New Jersey. (Exh. A, 12/18/09 Franklin Dep. at 122:23-128:4.) Mr. Franklin did not visit doctors in any other states. (*Id.* at 125:18-126:13.) Nor did he "ever meet with any third-party payers, like managed care facilities or hospitals or insurance companies." (*Id.* at 82:1-4.) About 85% of Mr. Franklin's calls to physicians occurred within the state of Massachusetts. (*Id.* at 124:1-9, 126:7-10.)

Kaiser does not operate in any of the states where Mr. Franklin worked as a medical liaison. Kaiser Foundation Health Plan, Inc., is a California corporation with its headquarters located in Oakland, California, and with members located in nine states[1] and the District of Columbia. (Third Coordinated Amended Complaint ("Compl.") ¶ 7.) Kaiser Foundation Hospitals is a California corporation that owns and operates thirty hospitals in California, Oregon and Hawaii. (*Id.* ¶ 8.) None of these states are part of the Northeast CBU where Mr. Franklin worked. The vast majority of Kaiser's members are instead located in states within the West CBU, which includes, *inter alia*, California, Washington, and Oregon. (*Id.* ¶ 7; 12/18/09 Franklin Dep. at 207:9-208:4.)

Because Mr. Franklin was not involved in and did not observe any marketing activity that

---

[1] The nine states are California, Colorado, Georgia, Maryland, Virginia, Oregon, Washington, Hawaii, and Ohio. (Compl. ¶ 7.)

2

occurred in the states where Kaiser operates, he is not competent to testify about any such marketing activity. Likewise, Mr. Franklin is not competent to testify about any marketing activity that occurred within the Northeast CBU except to the extent that he personally observed such activity during his four-month tenure as a medical liaison in 1996. A party may not offer witness testimony on any matter unless the party introduces evidence "sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Personal knowledge is a "threshold criterion for any witness to testify in district court," *Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1211 (7th Cir. 1993), and the proponent of the testimony has the burden of proving that this standard has been satisfied. *See Moyer v. Dunn County*, 691 F. Supp. 164, 168 (W.D. Wis. 1988); *see also United States v. Sorrentino*, 726 F.2d 876, 886-87 (1st Cir. 1984) (affirming exclusion of witness testimony under Rule 602 where witness purported to "testify to transactions of which his personal knowledge was . . . tenuous and for which no factual foundation had been laid"). Because Mr. Franklin "could not have actually perceived or observed" marketing practices that occurred in any states outside the Northeast CBU, or during any time period outside his four-month tenure in 1996, he is not competent to testify about any such matters. *Hallquist v. Local 276, Plumbers & Pipefitters Union*, 843 F.2d 18, 24 (1st Cir. 1988).

The only testimony Mr. Franklin is even arguably competent to provide – regarding the activities of medical liaisons in the Northeast CBU between April 1 and August 1, 1996 – is irrelevant, and its admission would be unduly prejudicial. *See* Fed. R. Evid. 401, 402 & 403. Evidence of conduct and transactions not directly related to Kaiser's claims is inadmissible absent a showing of substantial similarity. *See Cameron v. Otto Bock Orthopedic Indus., Inc.*, 43 F.3d 14, 16 (1st Cir. 1994) ("[R]eports of other incidents would be probative evidence . . . only if the incidents occurred under circumstances substantially similar to those surrounding [plaintiff's] accident."); *accord Perez-Trujillo v. Volvo Car Corp. (Sweden)*, 137 F.3d 50, 54 n.7 (1st Cir.

3

1998).[2]

Mr. Franklin's testimony not only fails to support, but precludes any showing of substantial similarity. Mr. Franklin explained that "each CBU had [its own] president or vice president that had responsibility for that business unit." (12/18/09 Franklin Dep. at 105:6-8.) Mr. Franklin is not sure that all CBUs had their own medical liaison program, but to the extent they did, each program was run by a different person. (*Id.* at 104:6-105:17.) Mr. Franklin admits that he "didn't have exposure to the entirety of Parke-Davis's medical liaison program," and that his only exposure was to the Northeast CBU's program between April 1 and August 1, 1996. (*Id.* at 145:15-24.) Mr. Franklin further acknowledges that there were significant differences of opinion between different CBUs regarding how the medical liaison program should be run. (*See id.* at 114:9-117:11.) In particular, he claims that the man in charge of the Western CBU – where Kaiser's members overwhelmingly reside – told him that the Northeast CBU "was being too aggressive and crossing the line" with respect to its medical liaison program, and that the West CBU "***was not doing the kinds of things*** that [Mr. Franklin's] CBU was doing." (*Id.* at 114:18-115:2 (emphasis added); *see also id.* at 115:14-116:6, 135:23-136:8.)

Because no showing of substantial similarity can be made, Mr. Franklin's proposed testimony is irrelevant and inadmissible. Moreover, any minimal probative value that such unrelated transactions and alleged misconduct could conceivably possess would be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

---

[2] *See also, e.g., Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 468-71 (E.D. La. 2007) (requiring a high degree of similarity as a predicate to the admissibility of evidence regarding other insurance claims); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 381 (8th Cir. 1992) (requiring evidence of substantial similarity); *Piacenti v. Gen. Motors Corp.*, 173 F.R.D. 221, 225 (N.D. Ill. 1997) (noting that "allowing discovery of [product] models that are not substantially similar to the model at issue is truly the equivalent of comparing apples and oranges"); *Rider v. Caterpillar Tractor*, No. 86-2381-S, 1989 WL 106820, at *1-2 (D. Kan. Aug. 4, 1989) (excluding discovery of product models that were not substantially similar); *McLeod v. Parsons Corp.*, 73 F. App'x 846, 853-54 (6th Cir. 2003) (affirming trial court's exclusion of other unrelated lawsuits against defendant); *Barnes ex rel. Estate of Barnes v. Koppers, Inc.*, No. 3:03CV60-P-D, 2006 WL 940279, at *3 (N.D. Miss. Apr. 11, 2006) (holding that "evidence of other lawsuits, claims, and injuries" even in same area was "irrelevant to this case and therefore inadmissible").

4

Fed. R. Evid. 403; *see, e.g., Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1351, 1356-57 (5th Cir. 1983) (affirming exclusion of evidence regarding allegedly similar transactions, gleaned from other lawsuits against defendant, under Rule 403). Accordingly, Mr. Franklin's testimony should be excluded in its entirety.

## II.     Mr. Franklin May Not Offer Expert Opinions

Because Mr. Franklin has been designated as a fact witness in this action, any opinion testimony at trial is limited by Rule 701. To be admissible, lay opinion must be "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Accordingly, Rule 701 bars Mr. Franklin from offering testimony (a) about subjects about which he lacks knowledge, such as Defendants' marketing practices after the term of his employment and in states outside the Northeast CBU, (b) that gives unhelpful speculation about the motives of other persons, or (c) that requires expertise on FDA regulatory matters or drug efficacy, subject matters as to which Mr. Franklin has not been designated as an expert.

First, Mr. Franklin may not offer speculative testimony on what Defendants' marketing practices might have been after the time of his employment by Parke-Davis or in other divisions of the company (including the Western CBU), because such testimony would run afoul of Rule 701 as lay opinion not "rationally based on the perception of the witness." It is well settled that all witness opinion must "be grounded in observation or other first-hand personal experience" and may "not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991); *see also Swajian v. Gen. Motors Corp.*, 916 F.2d 31, 36 (1st Cir. 1990). Courts have therefore excluded testimony that, like Mr. Franklin's, opines about matters beyond the witness's personal knowledge, because such testimony would violate Rule 701, and because it is also "speculative in nature and violates the requirements of Federal Rule of Evidence 403." *Autoforge, Inc. v. Am. Axle & Mfg., Inc.*, No. 02-1265, 2008 WL 65603, at *11 (W.D. Pa. Jan. 4,

5

2008); *see also Schieber v. City of Phila.*, No. 98-6848, 2000 WL 1843246, at *11, *12-13 (E.D. Pa. Dec. 13, 2000) (excluding lay opinion in a document not based on "first-hand knowledge" because the document's "proffered use outside the context for which it was prepared will likely cause a jury unnecessary confusion and misapprehension of what is factual and what is speculative"). All such unfounded testimony by Mr. Franklin should therefore be prohibited.

Second, Mr. Franklin may not offer his speculations about the motives, intent, or state of mind of other persons. Such conclusory speculations about the intent or motives of others are not helpful to the jury and are therefore inadmissible – especially where, as here, they are not based on personal knowledge. *See Visser*, 924 F.2d at 659 (rejecting affidavits that, without personal knowledge, purported to state the defendant's motives for his actions); *Adams v. United States*, No. CV-03-49, 2009 WL 1085490, at *3 (D. Idaho Apr. 20, 2009) (excluding testimony regarding chemical corporation's intent where witness had "no inside information about [the corporation's] intent, and no special expertise in the operations of large chemical companies"). "[Testimony] as to the knowledge, motivations, intent, state of mind, or purposes of [a pharmaceutical company or] its employees . . . is not a proper subject for expert or even lay testimony." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009). Indeed, Rule 701 was designed for the very purpose of barring such testimony, "which would merely tell the jury what result to reach." Fed. R. Evid. 704 advisory committee's note; *see also United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) ("When the issue is a party's knowledge, which is perhaps a more easily fathomed state of mind than, for example, intent or motivation, we suspect that in most instances a proffered lay opinion will not meet the requirements of Rule 701.").

Third, because Kaiser has designated Mr. Franklin as a fact witness, and not an expert witness, any opinion testimony is limited to those not requiring specialized knowledge or expertise. *See* Fed. R. Evid. 701(c). For instance, Mr. Franklin may not offer opinion testimony about whether Defendants' actions constituted violations of FDA marketing regulations because he lacks any expertise or specialized knowledge on such matters. Indeed, Mr. Franklin admitted

at deposition that all of his testimony in that regard was given "in retrospect," based on things he learned later from unnamed sources, which does not satisfy the personal knowledge requirement. (*See, e.g.*, Exh. B, 9/12/00 Franklin Dep. at 157:16-160:10.) Likewise, Mr. Franklin has not been designated as an expert on efficacy of pharmaceutical products, so he should not be permitted to testify as to whether statements allegedly made to physicians about efficacy were true or false.

### III. Any Testimony By Mr. Franklin Must Be Based on His Own Memory, Not Hearsay

Assuming, arguendo, that Mr. Franklin could give any testimony in this case, Rule 602 requires that Mr. Franklin's testimony be based upon his memory, and not his prior out-of-court statements. *See Unterreiner*, 8 F.3d at 1211; *see also* 27 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6023 (2d ed. 2007) ("A witness who perceived events in the past will not be permitted to testify if she lacks present recollection of that perception."). For example, Mr. Franklin's prior affidavits and his Disclosure of Information in the *qui tam* litigation are inadmissible hearsay.[3] Kaiser cannot evade the prohibition against hearsay evidence by simply having Mr. Franklin read those documents into the record. *See Rush v. Ill. Cent. R.R.*, 399 F.3d 705, 718-19 (6th Cir. 2005).[4] Nor can Kaiser "offer a previously given

---

[3] In addition to being out-of-court statements, Mr. Franklin's prior affidavit and disclosure regurgitate the allegations made by Mr. Franklin in prior litigation brought by him as relator. Courts have concluded unequivocally that complaints and the charges and allegations they contain are inadmissible hearsay. *See Century '21' Shows v. Owens*, 400 F.2d 603, 609-10 (8th Cir. 1968); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 499 (D. Del. 2005); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, MDL No. 997, 1997 U.S. Dist. LEXIS 5307, at *18-19 (N.D. Ill. Apr. 7, 1997); *T.I. Constr. Co v. Kiewit E. Co.*, No. 91-2638, 1992 U.S. Dist. LEXIS 19213, at *16 (E.D. Pa. Dec. 9, 1992).

[4] As the Sixth Circuit explained in *Rush*, "otherwise inadmissible evidence [cannot be] introduced to the jury through the guise of refreshing a witness's recollection." 399 F.3d at 717. The court in *Rush* made clear the correct procedure for using an out-of-court statement to refresh recollection. First, it must be established that the witness does not have a present memory of the event. Second, the witness may be asked to *silently* review his prior statement. If the prior statement *refreshes* the witness's recollection, he can then be asked non-leading questions, to be answered based upon his refreshed recollection. It is not permissible for the attorney to read from the inadmissible out-of-court statement, followed by a leading questions. *See id.* at 716-18. Nor is it permissible for a witness to read from his out-of-court statement. "Rule 612 requires a witness whose memory has been refreshed to testify from his present recollection, rather than to merely restate the contents of the writing." *Id.* at 718.

7

statement to substitute for a witness's testimony under the guise of 'refreshing recollection,'" and "[t]he evil of this practice . . . is no less when an attorney can read the statement in the presence of the jury and thereby substitute his spoken word for the written document." *Goings v. United States*, 377 F.2d 753, 760 (8th Cir. 1967); *see also United States v. Faulkner*, 538 F.2d 724, 727 (6th Cir. 1976) ("[S]ome caution must be exercised to insure that the document is not used to put words into the mouth of the witness."). This Court should therefore limit Mr. Franklin's trial testimony to those facts for which he can demonstrate personal knowledge and as to which he can testify to from current recollection.

### IV. Hearsay Evidence From The Franklin Litigation Should Be Excluded

Pfizer anticipates that Kaiser may seek to introduce as an exhibit in this trial hearsay evidence from the *Franklin* litigation, including Mr. Franklin's unsworn Disclosure of Information (the "Disclosure"), which purports to, among other things, describe certain remarks attributed by Mr. Franklin to John Ford, a former Parke-Davis employee. According to the Disclosure, Mr. Franklin purported to record remarks made by Mr. Ford, Sales Director of the Northeast CBU, in a meeting in Farmington, Connecticut, on April 22, 1996 (the "Meeting"). Mr. Ford allegedly said:

> I want you out there every day selling Neurontin. Look this isn't just me, its come down from Morris Plains that Neurontin is more profitable than Accupril so we need to focus on Neurontin . . . . We all know Neurontin's not growing for adjunctive therapy, besides that is not where the money is. Pain management, now that's money. Monotherapy, that's money. We don't want to share these patients with everybody, we want them on Neurontin only. We want their whole drug budget, not a quarter, not half, the whole thing. . . . We can't wait for them to ask, we need to get out there and tell them up front. Dinner programs, CME programs, consultantships all work great but don't forget the one-on-one. That's where we need to be holding their hand and whispering in their ear, Neurontin for pain, Neurontin for monotherapy, Neurontin for bipolar, Neurontin for everything. I don't want to see a single patient coming off Neurontin until they have been up to at least 4800 mg/day. I don't want to hear that safety crap either, have you tried Neurontin, every one of you should take one just to see there is nothing, it's a great drug.

(Exh. C, Disclosure of Information by Relator David P. Franklin Pursuant to 31 U.S.C. § 3730b(2), *Franklin*, No. 96-CV-11651-PBS (D. Mass. filed Aug. 13, 1996), at 11 (alteration in

original).) Other than Mr. Franklin's self-interested characterization of and testimony about his Disclosure, there is no evidence that Mr. Ford said anything of the sort and the Disclosure should be excluded on multiple grounds.

First, as an out-of-court statement that Kaiser seeks to introduce to prove the truth of the matter asserted – *i.e.*, that the Disclosure accurately records Ford's statement at the Meeting – the Disclosure is hearsay.[5] The Disclosure, and the alleged statement by Ford, fails to qualify for any established exception to the hearsay rule, including the residual exception – the only conceivable exception to which Kaiser might appeal. *See* Fed. R. Evid. 807. It is well settled that "[t]he residual exception is to be used sparingly, in exceptional circumstances." *Kosilek v. Maloney*, 221 F. Supp. 2d 156, 172 n.9 (D. Mass. 2002); *accord Doe v. United States*, 976 F.2d 1071, 1074 (7th Cir. 1992). No such circumstances warrant the admission of the Disclosure in this case; not only does the Disclosure not possess any circumstantial guarantees of trustworthiness, it is affirmatively untrustworthy on its face. The Disclosure is an unsworn statement by Mr. Franklin, filed along with his Complaint in *Franklin*. The alleged Ford statement was neither excerpted from the transcript of the Meeting, nor produced on the basis of any notes that Mr. Franklin took. Rather, it was based on Mr. Franklin's unaided recollection of what was said in the Meeting several months after it took place.

Moreover, Mr. Franklin wrote the Disclosure in the context of the *Franklin* litigation, a litigation he initiated and through which he stood to gain millions of dollars. As a result, he had every incentive to shade Mr. Ford's purported language in the most damning way possible. *See, e.g., Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1257-58 (9th Cir. 1984) (holding, in the analogous context of the business records exception, that a document prepared in the context of litigation lacks sufficient indicia of reliability to be admissible). Following similar logic, courts

---

[5] In the event that Kaiser seeks to introduce the alleged remarks by John Ford for their truth, it would be doubly inadmissible. Evidence containing multiple levels of hearsay deserves special scrutiny, under which the court must separately examine each level of hearsay to determine whether it falls within an exception to the hearsay rule. *See* Fed. R. Evid. 805; *Pakizegi v. First Nat'l Bank of Boston*, 831 F. Supp. 901, 909 (D. Mass. 1993), *aff'd*, 56 F.3d 59 (1st Cir. 1995) (table).

9

have concluded unequivocally that complaints and the charges and allegations they contain are inadmissible hearsay. *See Century "21" Shows,* 400 F.2d at 609-10 (affirming exclusion of petitions from prior proceeding involving plaintiff); *T.I. Constr. Co.*, 1992 U.S. Dist. LEXIS 19213, at *16 (finding that allegations in complaint made in a separate case were hearsay); *Tracinda Corp.*, 362 F. Supp. 2d at 499 ("Because the allegations in the complaint are a pleading of a party unrelated to the instant litigation, the Court cannot accept them for the truth of the matters they assert."); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1997 U.S. Dist. LEXIS 5307, at *18-19 (holding complaint filed in separate case inadmissible).[6]

Plaintiffs should not be allowed to use Mr. Franklin as a vehicle for funneling inadmissible hearsay into evidence. As discussed above, Mr. Franklin can only testify based upon his personal knowledge and present recollection. The *Franklin* Complaint, Disclosure, other court papers, and Mr. Franklin's after-the-fact recording of statements attributed to others are inadmissible hearsay and should be excluded.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their motion in limine to exclude the testimony of David Franklin and related evidence, as described herein, at trial.

---

[6] Mr. Franklin's deposition testimony is even more unreliable and inappropriate under the residual hearsay exception than the Disclosure itself. In his deposition testimony dated September 13, 2000, Mr. Franklin testified that he recalled the Meeting and believed that John Ford used the words, "I don't want to hear that safety crap." (*See* Exh. D, 9/13/00 Franklin Dep. at 227:22-228:22.) Only two months later, Mr. Franklin testified that he was "not sure" if Mr. Ford was even present at the Meeting. (*See* Exh. E, 11/21/00 Franklin Dep. at 36:5-15.)

Dated: January 8, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Mark S. Cheffo
        Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Raoul D. Kennedy
        Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400

-and-

WHEELER TRIGG O'DONNELL LLP

By:   /s/ James E. Hooper
        James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800

-and-

WHITE AND WILLIAMS LLP

By:   /s/ David B. Chaffin
       David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 8, 2010.

/s/ David B. Chaffin
David B. Chaffin