**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**MEMORANDUM IN SUPPORT OF KAISER'S MOTION *IN LIMINE* TO EXCLUDE DR. ARROWSMITH-LOWE'S TESTIMONY ON FOREIGN REGULATORY ACTIONS AND ABSENCE OF U.S. REGULATORY ACTIONS**

## TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITEIS .......... ii

I. INTRODUCTION .......... 1

II. FACTS .......... 2

III. ARGUMENT .......... 3

A. Evidence of Actions by Foreign Regulatory Agencies Should Be Excluded .......... 3

B. Testimony of FDA's Absence of Action Should Be Excluded .......... 5

IV. CONCLUSION .......... 6

# TABLE OF AUTHORITIES

Page

**Cases**

*In re Seroquel Prods. Liability Litig.*,
601 F. Supp. 2d 1313 (M.D. Fla. 2009) ..... 4

*Wyeth v. Levine*,
129 S. Ct. 1187 (2009) ..... 5

**Other Authorities**

Fed. R. Evid. 401 ..... 3

Fed. R. Evid. 402. ..... 1, 3

Fed. R. Evid. 403. ..... 1, 4

# I. **INTRODUCTION**

Defendants Pfizer, Inc. and Warner-Lambert Company LLC ("Defendants") seek to introduce evidence regarding the approval by foreign regulatory agencies of Neurontin to treat pain and the FDA's failure to request measures that would have undermined Defendants' off-label marketing tactics. Neither type of evidence is relevant in this case, and the prejudice to Plaintiffs[1] of introducing either piece of evidence would substantially outweigh the evidence's probative value. *See* Fed. R. Evid. 402, 403.

Defendants seek to offer the testimony of Janet Arrowsmith-Lowe, M.D. regarding the treatment of Neurontin by federal agencies in the United Kingdom, Germany, Spain, Italy, Australia, Russia, and the Netherlands. Such testimony would require Plaintiffs to introduce evidence regarding the regulatory schemes and decision-making processes of seven different countries, in addition to the United States, in order to show the jury why Defendants' marketing practices violated United States law. Introducing evidence regarding these seven countries would confuse the jury about which testimony related to which countries' regulatory structure. Moreover, Kaiser should not be expected to prepare expert witnesses on the regulatory schemes of the seven countries at issue and would need time to address the far-reaching scope of testimony to which Defendants seek to open the door.

Dr. Arrowsmith-Lowe also discusses actions that the United States Food and Drug Administration ("FDA") *arguably could* have taken to regulate the off-label marketing and use of Neurontin at length in her report. This testimony is hearsay, not

---

[1] Plaintiffs are Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser"). Kaiser Foundation Health Plan, Inc. is the parent company of the following companies and has brought this lawsuit on behalf of itself and its subsidiaries: Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio.

probative, and prejudicial. First, it assumes that the FDA had the resources to learn about all of the relevant facts surrounding Neurontin's off-label marketing and use and to investigate these matters fully. This assumption is clearly not true, or the FDA would have halted the Defendants' off-label marketing practices long before they paid a substantial criminal fine. Second, it will likely confuse the jury by implying that absence of action on the FDA's part means the FDA condoned that practice. Absence of action does not mean the FDA approved of Defendants' practices. As a result, Dr. Arrowsmith-Lowe's report and testimony should be excluded to the extent it addresses actions by foreign regulatory agencies or the absence of action by the FDA.

## II. FACTS

Defendants seek to call Dr. Janet Arrowsmith-Lowe, a physician specializing in internal medicine who previously worked at the FDA, to testify regarding the FDA's approval process. In arguing that Neurontin can effectively treat pain other than post-herpetic neuralgia, Arrowsmith-Lowe states that "Neurontin has been approved more broadly for safe and effective treatment of neuropathic pain in numerous other countries, including the United Kingdom, Germany, Spain, Italy, Australia, Russia, and the Netherlands." Expert Report of Janet Arrowsmith-Lowe, M.D. (Dkt. # 1786-16) at 5 ("Arrowsmith-Lowe Initial Report").

Dr. Arrowsmith-Lowe also refers at length to actions the FDA could have taken in a section entitled "The FDA Regulation of Off-Label Uses of Drugs." She argues that the FDA "*could have* requested that Pfizer include in the Neurontin labeling a specific warning regarding any perceived inefficacy associated with off-label uses." Arrowsmith-Lowe Initial Report at 9 (emphasis added). She also argues that the FDA *could have*

requested a statement in the indications section of the label explaining that there was no data supporting Neurontin's off-label use or requested that Defendants issue a public health alert to inform the medical community that Neurontin was not effective for off-label use. *Id.* Dr. Arrowsmith-Lowe's Supplemental Report also refers to *the failure* of United States or international agencies to find that Defendants violated scientific principles: "[m]y review of documents related to the clinical evaluation of Neurontin reveals no evidence of violation of U.S. regulatory or international research standards for clinical trials. Also, *I can find no evidence that FDA or any other regulatory body found* violations of regulatory or scientific principles." Supp. Report of Janet Arrowsmith, M.D. at 3 (Attached as Exhibit A) (emphasis added).

## III. ARGUMENT

### A. Evidence of Actions by Foreign Regulatory Agencies Should Be Excluded

Dr. Arrowsmith-Lowe's testimony regarding the actions of foreign regulatory bodies is both irrelevant and more prejudicial than probative. The Federal Rules of Evidence state that "[e]vidence which is not relevant is not admissible" and define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401, 402. Testimony about the actions taken by foreign regulatory bodies is not relevant to actions taken under the regulatory regime of the United States. For example, Dr. Arrowsmith-Lowe would testify about the regulatory regime of Russia and its approval of Neurontin to treat neuropathic pain. Arrowsmith-Lowe Initial Report at 5. Russia's different standards

have no bearing on whether Defendants improperly marketed Neurontin in the United States.

Likewise, the proffered testimony would be more prejudicial than probative. Rule 403 of the Federal Rules of Evidence provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *See* Fed. R. Evid. 403. In a case directly on point, the court held that introduction of evidence on three foreign regulatory regimes would be more prejudicial than probative in a products liability action. *See In re Seroquel Prods. Liability Litig.*, 601 F. Supp. 2d 1313, 1318-19 (M.D. Fla. 2009). In *Seroquel*, the court recognized that "[t]o admit evidence about the foreign regulators' actions regarding Seroquel without providing context concerning the regulatory schemes and decision-making process involved would strip the jury of any framework within which to evaluate the meaning of that evidence." *Id.* at 1318. The court also recognized the distractions that evidence of other regulatory regimes would present: "allowing AstraZeneca to introduce this evidence would result in a series of 'mini-trials' regarding the grounds for the decisions and regulatory schemes of the three foreign countries involved." *Id.* Here, Defendants seek to present testimony of the actions by seven foreign regulatory bodies. In addition, Kaiser should not be expected to prepare experts to discuss these regulatory regimes, and "[a]bsent such background and context, a jury might be more inclined to abdicate its responsibilities and defer to the . . . decisions of three foreign regulators." *Id.* This confusion would be severely prejudicial to Plaintiffs.

Defendants would not suffer any loss of probative information. Holding that the actions taken by foreign regulatory bodies are inadmissible would not prevent Defendants

from introducing evidence regarding the information submitted to the foreign regulators. *Id.* For example, a clinical trial performed in the United Kingdom would still be admissible, even if it was submitted to the United Kingdom's regulatory authorities. As a result, the Defendants would only be precluded from introducing evidence of the decisions and actions taken by foreign regulatory bodies.

**B. Testimony on FDA's Absence of Action Should Be Excluded**

Dr. Arrowsmith-Lowe's testimony that the FDA could have taken certain actions to regulate off-label use of Neurontin would likewise be more prejudicial than probative. It assumes that the FDA had sufficient resources for surveillance of pharmaceutical companies' off-label marketing practices. If that were the case, the FDA would have taken action against Defendants prior to the criminal action that preceded the instant case. The Supreme Court has recently held that "[t]he FDA has limited resources to monitor the 11,000 drugs on the market, and manufacturers have superior access to information about their drugs, especially in the postmarketing phase as new risks emerge." *Wyeth v. Levine*, 129 S. Ct. 1187, 1202 (2009); *see also id.* at 1202 n. 11 (reporting three recent studies that have concluded that the FDA lacks sufficient resources to monitor drugs after their initial approval).

Introducing such evidence would also confuse the jury by implying that absence of action on the FDA's part means the FDA condoned that practice. The FDA's inaction could be based on any number of factors, many of which have nothing to do with the tacit approval of the Defendants' practices. As a result, Dr. Arrowsmith-Lowe's report and testimony should be excluded to the extent it discusses or otherwise refers to the absence of action by the FDA.

## IV. CONCLUSION

For the reasons stated herein, the Court should exclude Dr. Arrowsmith-Lowe's testimony regarding the decisions and actions of foreign regulatory bodies and the absence of action by the FDA.

Dated: January 8, 2010

Respectfully submitted,

By: */s/ Linda P. Nussbaum*
Linda P. Nussbaum

KAPLAN FOX & KILSHEIMER LLP
Linda P. Nussbaum
850 Third Avenue, 14th Floor
New York, New York 10022

*Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

*Of Counsel*

Thomas Greene
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 8 2010.

/s/ *Elana Katcher*
Elana Katcher