**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No.  1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**MEMORANDUM IN SUPPORT OF KAISER'S MOTION *IN LIMINE*
TO EXCLUDE HEARSAY TESTIMONY OF DRS. FIELD AND ROTHSCHILD**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  FACTS ............................................................................................................... 1

III. ARGUMENT ..................................................................................................... 4

  A.  The Testimony at Issue is Hearsay ........................................................ 4

  B.  Rule 703 Does Not Justify the Introduction of the Statements............................. 5

    1.  The Statements At Issue Are Not Subjects of Reasonable Reliance ................. 6

    2.  The Statements' Probative Value Does Not Substantially
        Outweigh their Prejudicial Value.................................................... 10

IV.  CONCLUSION................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**    **Page**

*Almonte v. Nat'l Union Fire Ins. Co.,*
 787 F.2d 763 (1st Cir. 1986)..................................................................... 6

*Berczyk v. Emerson Tool Co.,*
 291 F. Supp. 2d 1004 (D. Minn. 2003)..................................................... 7

*Crowe v. Marchand,*
 506 F.3d 13 (1st Cir. 2007)....................................................................... 8

*Dep't of Youth Serv. v. Juvenile,*
 398 Mass. 516 (1986)............................................................................... 10

*Fiorentino v. Rio Mar Assocs., LP,*
 381 F.Supp. 2d 43 (D. P.R. 2005)............................................................ 11

*In re Three Mile Island Litig.,*
 193 F.3d 613 (3d Cir. 1999)....................................................................... 9

*Montgomery County v. Microvote Corp.,*
 320 F.3d 440 (3d Cir. 2003)....................................................................... 9

*Plourde v. Gladstone,*
 190 F. Supp. 2d 708 (D. Vt. 2002)............................................................ 9

*Ricciardi v. The Children's Hosp. Med. Ctr.,*
 811 F.2d 18 (1st Cir. 1987)....................................................................... 6

*Trepel v. Roadway Express, Inc.,*
 194 F.3d 708 (6th Cir. 1999) ..................................................................... 9

*Turner v. Burlington Northern Santa Fe R.R. Co.,*
 338 F.3d 1058 (9th Cir. 2003) ............................................................. 6, 10

*United States v. Mejia,*
 545 F.3d 179 (2d Cir. 2008)................................................................... 7, 8

*United States v. Pagan-Santini,*
 451 F.3d 258 (1st Cir. 2006).................................................................... 5

*United States v. Vigneau,*
 187 F.3d 70 (1st Cir. 1999)....................................................................... 4

*Univ. of R.I. v. A.W. Chesterton Co.,*
   2 F.3d 1200 (1st Cir. 1993) ........................................................................ 6

**Rules**

Fed. R. Evid. 403 ..................................................................................... 11

Fed. R. Evid. 702 ....................................................................................... 5

Fed. R. Evid. 703 ................................................................................. passim

Fed. R. Evid. 801 ....................................................................................... 4

Fed. R. Evid. 801(c) ................................................................................... 5

Fed. R. Evid. 803(6) ................................................................................... 4

Fed. R. Evid. 803(8) ................................................................................... 4

Fed. R. Evid. 803(18) ................................................................................. 4

Fed. R. Evid. 804(b)(3) ............................................................................... 4

**Other Authorities**

4 Jack B. Weinstein & Margaret A. Berger,
   Weinstein's Federal Evidence § 703.05 (2d ed. 2003) ............................... 10

## I.    **INTRODUCTION**

Defendants Pfizer, Inc. and Warner-Lambert Company LLC ("Defendants") are

seeking to enter out-of-court statements from the designers of studies on Neurontin

through their experts in an attempt to give excessive weight to the designers' self-serving

statements.  These declarations are classic hearsay, out-of-court statements offered for the

truth of the matter asserted, which have no indicia of reliability.  Rule 703 of the Federal

Rules of Evidence allows experts to rely upon inadmissible evidence, such as hearsay,

only if the evidence is of the type reasonably relied upon by experts in that field – as

opposed to a mere repetition of an out-of-court statement.  If an expert satisfies this

hurdle to reliance, the inadmissible evidence may only be disclosed to the jury if its

probative value in evaluating the expert's opinion *substantially outweighs* its prejudicial

effect.  The proposed testimony fails both tests.  The statements are pure hearsay and are

not of the type reasonably relied upon by experts.  Similarly, their probative value, as

unreliable hearsay, does not substantially outweigh their prejudicial effect.  For these

reasons, Kaiser's[1] motion to exclude should be granted.

## II.    **FACTS**

Defendants intend to offer the testimony of Elizabeth A. Field, Ph.D., a

neuroscientist who is the founder and president of a medical communications agency.

Dr. Field is an expert witness who prepared a report in response to the reports of Kay

Dickersin, Ph.D. and Dr. John Abramson.  Drs. Dickersin and Abramson had focused on

the pattern of flawed studies on Neurontin's use for off-label purposes and the

---

[1] Plaintiffs are Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser").  Kaiser Foundation Health Plan, Inc. is the parent company of the following companies and has brought this lawsuit on behalf of itself and its subsidiaries:  Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio.

Defendants' suppression of studies showing the drug's ineffectiveness.  Rather than respond to their analysis directly, Section VI of Dr. Field's report consists of a compilation of statements from the designers or authors of the studies in question.  *See* Decl. and Expert Report of Elizabeth A. Field, Ph.D. 12-22 (Dec. 15, 2008) (Dkt. # 1786-12) ("Field Report").

 Each of the six researchers quoted makes broad characterizations about his or her study that require further clarification.  *See, e.g.*, Field Report at 14 (Statement from Miroslav Backonja) ("[I]nclusion of patients who experienced these central nervous system adverse effects in the original efficacy analysis did not account for the overall efficacy seen in the trial."); *id.* at 16 (Statement of Kenneth Gorson) ("[I]n other randomized controlled trials, Neurontin was shown to be statistically superior to placebo in the treatment of neuropathic pain from diabetes when used in higher doses."); *id.* at 17-18 (Statement of Eduard Vieta) ("I believe that the published manuscript accurately reflects the study's results"); *id.* at 20 (Statement of Robert Gerner) ("The data from the gabapentin bipolar disorder study were timely and appropriately collected, evaluated, and submitted for publication."); *id.* (Statement of Carol Janney) (arguing that the Pande study was performed "in an efficient and timely fashion."); *id.* at 22 (Statement of Ninan Mathew) ("The controlled, clinical trial we completed was of the quality and scientific rigor the Food and Drug Administration demands when considering the approval of a new drug based upon two controlled, scientifically valid studies demonstrating efficacy.").

 In addition, the declarations from these researchers are self-serving, as many of the declarants are concerned about their reputations given the public disclosures

regarding Defendants' conduct.  This self-serving motivation is best exemplified by Eduard Vieta's statement that the lawsuit against Pfizer "was a challenge to my integrity as a clinician and author.  I make this declaration to respond to that challenge." *Id.* at 17. In addition to defending their reputation, many of the researchers have received funding from Pfizer or other pharmaceutical companies and do not want to alienate a potential source for future funding. *See, e.g., id.* at 15 (quoting the portion of Dr. Backonja's declaration that indicates he has "previously and continue[s] to participate in studies with various pharmaceutical companies.").  Similarly, Carol Janney, one of the scientists who Dr. Field quotes in her report, worked as a "biostatistician in the clinical research department at Parke-Davis" and Dr. Mathew was "compensated by Parke-Davis for [his] work on the study." *Id.* at 20, 22.  These examples reflect the many biases that have motivated the researchers to prepare the declarations quoted by Dr. Field.

As with Dr. Field, the Defendants seek to call Anthony J. Rothschild, M.D, to repeat out-of-court statements.  Dr. Rothschild is a psychiatrist who was retained as a rebuttal expert witness to comment on the reports of Drs. Curt Furberg and Jeffrey Barkin.  In response to Dr. Furberg's discussion of the FDA's concerns regarding Neurontin, Dr. Rothschild quotes at length from an affidavit issued by Dr. Cynthia McCormick, the FDA reviewer of Neurontin's new drug application. *See* Rule 26 Expert Report Submitted by Anthony J. Rothschild, M.D. at 16, 24 (Mar. 18, 2009) (attached as Exhibit A).  The statements by Dr. McCormick reflect a portion of her view on the extent to which Neurontin may increase the risk of depression, but they only reflect part of her view.  To introduce this excerpt without further clarification from Dr. McCormick would be misleading to the jury and prejudicial to Plaintiffs.  Dr. Rothschild also refers to Dr.

3

Vieta's declaration and its explanation for excluding patients from Dr. Vieta's analysis. *Id.* at 23. Dr. Rothschild's reference to Dr. Vieta's out-of-court declaration would further mislead the jury and prejudice the Plaintiffs.

## III.   ARGUMENT

### A.   The Testimony at Issue is Hearsay

The statements at issue are classic hearsay, out-of-court statements being offered for the truth of the matter asserted. *See* Fed. R. Evid. 801 (defining hearsay). The hearsay rule is designed to minimize the prejudice of having to respond to out-of-court statements without being able to cross-examine the declarant. *See, e.g., United States v. Vigneau*, 187 F.3d 70, 77 (1st Cir. 1999) ("[T]he drafters [of the Federal Rules of Evidence] chose to retain the hearsay rule, and any trial lawyer who has tried to cross-examine a witness whose story depends on the hearsay statements of others understands why.").

None of the exceptions to the hearsay rule would justify admission of these statements. The statements cited by Drs. Field and Rothschild are affidavits created for the purposes of this litigation, rather than records made in the regular course of business, for a government agency, or as part of a published periodical, so they do not satisfy the elements for the business record, public record, or learned treatise exceptions. *Cf.* Fed. R. Evid. 803(6), 803(8), 803(18). Similarly, they cannot be classified as "statements against interest" because they are not contrary to the declarant's interests. *Cf.* Fed. R. Evid. 804(b)(3). Rather, the researchers' self-serving motives are exemplified by Dr. Vieta's statement that the lawsuit against Pfizer "was a challenge to my integrity as a clinician and author. I make this declaration to respond to that challenge." Field Report at 17. The statements of Dr. McCormick cited by Dr. Rothschild are also an attempt to explain

her actions in the FDA's approval of Neurontin, and such an explanation is not contrary to her own interests.  *See* Ex. A at 16.

Similarly, the residual hearsay exception identified in Rule 807 of the Federal Rules of Evidence requires "equivalent circumstantial guarantees of trustworthiness" that are not present when a declarant's motives in making a statement could be self-serving. *Cf. United States v. Pagan-Santini*, 451 F.3d 258, 264 (1st Cir. 2006) (affirming introduction of hearsay under residual exception when "[t]he person to whom [the declarant] made the statements was someone to whom he would have had no interest in making admissions").  As described above, the researchers were motivated, at least in part, by the desire to respond to what they perceived as a challenge to their integrity and by the desire not to jeopardize the potential for future funding from pharmaceutical companies.  *See, e.g.*, Field Report at 15, 17.  Because no exception supports the introduction of the hearsay statements at issue, they are inadmissible.[2]

### B.     Rule 703 Does Not Justify the Introduction of the Statements

Rule 703 of the Federal Rules of Evidence governs an expert's reliance on inadmissible evidence and the rules for introducing such evidence to the jury through an expert.  It provides as follows:

> The facts or data in the particular case upon which an
> expert bases an opinion or inference may be those
> perceived by or made known to the expert at or before the
> hearing.  If of a type reasonably relied upon by experts in
> the particular field in forming opinions or inferences upon
> the subject, the facts or data need not be admissible in

---

[2] To the extent that the declarants testify at trial, make similar statements during their testimony, and are subject to cross-examination, the statements made at trial would not be hearsay. *See* Fed. R. Evid. 801(c). Nonetheless, an expert could not simply repeat the statements to the jury without analyzing the statements using their expertise. *See* Fed. R. Evid. 702, 703. To the extent that the declarants will not testify at trial or the Defendants seek to offer testimony by reading declarations without giving Plaintiffs an opportunity to cross-examine the witnesses, the statements remain inadmissible hearsay and their introduction into evidence would be prejudicial.

> evidence in order for the opinion or inference to be
> admitted.  Facts or data that are otherwise inadmissible
> shall not be disclosed to the jury by the proponent of the
> opinion or inference unless the court determines that their
> probative value in assisting the jury to evaluate the expert's
> opinion substantially outweighs their prejudicial effect.

Rule 703 requires courts to ask two questions: first, are the facts of a type reasonably relied on by experts in the particular field, and second, is the prejudicial effect of the underlying data substantially outweighed by its probative value.  *See Turner v. Burlington Northern Santa Fe R.R. Co.*, 338 F.3d 1058, 1061-62 (9th Cir. 2003) (affirming district court's decision to exclude expert's testimony on a lab report without foundational testimony from the laboratory that did the testing).

### 1.    The Statements At Issue Are Not Subjects of Reasonable Reliance

The first question is whether the evidence is of the type typically relied upon by experts of that particular field.  "'This part of the rule is designed to prevent enlarging the category of permissible data to break down the rules of exclusion unduly.'"  *Ricciardi v. The Children's Hosp. Med. Ctr.*, 811 F.2d 18, 25 (1st Cir. 1987) (*quoting Almonte v. Nat'l Union Fire Ins. Co.*, 787 F.2d 763, 770 (1st Cir. 1986)) (affirming district court's exclusion of expert's reliance on note in medical file made by resident who was not at the surgery and who could not recall where he learned the information included in the note). Trial courts must give "careful consideration" before allowing experts to rely on inadmissible evidence.  *Univ. of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200, 1218 (1st Cir. 1993) (affirming exclusion of expert testimony).

Courts have frequently held that experts may not merely repeat a statement constituting inadmissible hearsay; because experts must analyze data, an expert's reliance

solely on out-of-court statements has been considered unreasonable and an inadequate

basis for their opinions. "The expert may not . . . simply transmit that hearsay to the jury.

Instead, the expert must form his own opinions by applying his extensive experience and

a reliable methodology to the inadmissible materials. Otherwise, the expert is simply

repeating hearsay evidence without applying any expertise whatsoever." *United States v.*

*Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (internal quotations omitted) (vacating

defendants' convictions because the government had introduced through an expert

otherwise inadmissible hearsay statements made by other law enforcement officers,

obtained from intercepted telephone conversations, and read in news articles); *see also*

*Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1015 (D. Minn. 2003) ("While we

accept that an expert can rely on evidence that is not otherwise admissible, so long as it is

of a type that experts in the same field would rely upon . . . we seriously doubt that an

engineering, and safety expert, would place great reliance on pure hearsay, and not

investigate the matter to his, or her, full satisfaction.").

     In this case, Dr. Field is engaging in precisely this type of repetition without

analysis. Section VI of Dr. Field's report consists largely of her attempts to respond to

Plaintiffs' experts by repeating claims contained in the researchers' declarations. For

example, Dr. Field's "analysis" of Dr. Gorson's study consists of a recounting of

Abramson's and Dickersin's conclusions regarding Defendants' conduct, a statement that

"[t]hese allegations are not supported by the evidence" and repetition of Dr. Gorson's

declaration. Field Report at 15. Similarly, her "analysis" of Dr. Backonja's study

includes the repetition of eight paragraphs of Dr. Backonja's declaration. *Id.* at 14-15.

After quoting these eight paragraphs, she moves on to the next expert without providing

any further comment. *Id.* at 15. Her discussion of Dr. Vieta's study contains quotations of ten paragraphs from Dr. Vieta's declaration, with no substantive analysis of the statements made in the declaration. *Id.* at 17-18. Dr. Field's report contains similar conclusory statements and quotations for each of the researchers who provided declarations. Similarly, Dr. Rothschild quotes at length from Dr. McCormick's affidavit, after which he moves on to a different point, without analyzing Dr. McCormick's statements. Ex. A at 16. Dr. Rothschild also accepts Dr. Vieta's statements regarding his study as true, despite their self-serving motivation. *Id.* at 23. Without any analysis, Drs. Field and Rothschild are "simply repeating hearsay evidence without applying any expertise whatsoever" and thus, such testimony should be excluded. *See Mejia*, 545 F.3d at 197.

The cases in which reliance on hearsay has been deemed permissible involved a much greater depth of analysis than exhibited by Drs. Field and Rothschild. *See Crowe v. Marchand*, 506 F.3d 13, 18 (1st Cir. 2007) (holding that a doctor's reliance on a medical file's report regarding an x-ray rather than the x-ray itself was reasonable when the doctor used information in the report to analyze the circumstances). Under Rule 703, a doctor can analyze a report about an x-ray and base an opinion on facts contained in the report. *See id.* In this case, however, Drs. Field and Rothschild are assuming that self-serving or incomplete statements made by researchers are true and repeating them to the court without analysis. This approach merely uses an expert as a mouthpiece and it is well established that "Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury. In such a case, Rule 703 is simply

inapplicable and the usual rules regulating the admissibility of evidence control."

*Plourde v. Gladstone*, 190 F. Supp. 2d 708, 720 (D. Vt. 2002) (*quoting Trepel v.
Roadway Express, Inc.*, 194 F.3d 708, 719, 721-22 (6th Cir. 1999)) (excluding a
toxicologist's testimony in reliance on doctors' medical opinions because the expert's
"opinion really amounts to nothing more than inadmissible 'hearsay in disguise' under
Rule 703."). As a result, the statements at issue should be excluded.

Courts have also excluded testimony where the sole basis for the expert's opinion
is a portion of materials containing hearsay gathered by a party's attorneys. *See
Montgomery County v. Microvote Corp.*, 320 F.3d 440, 449 (3d Cir. 2003) (affirming
district court's exclusion of expert testimony that was based on reports compiled by a
party's sales director and a sampling of audit tapes selected by defendant's attorney); *In
re Three Mile Island Litig.*, 193 F.3d 613, 698 (3d Cir. 1999) (upholding district court's
exclusion of expert testimony where the sole basis for the testimony was summaries
prepared by party's attorney). This analysis focuses on the reliability of the materials on
which the expert bases his or her opinion. *Montgomery County*, 320 F.3d at 449. Dr.
Field and Dr. Rothschild are relying on self-serving declarations that were motivated, at
least in part, by a desire to respond to challenges to their integrity and with the
knowledge that their research may be funded by Pfizer again in the future. Field Report
at 15, 17. Dr. Rothschild is also relying on only a portion of Dr. McCormick's
statements. As a result, their reliance on biased or incomplete information is unreliable
and is an improper basis for their opinions.

2.      **The Statements' Probative Value Does Not Substantially**
**Outweigh their Prejudicial Value**

If the court nonetheless believes that Drs. Field and Rothschild are relying on

statements of the type typically reasonably relied upon by experts in their fields, the court

must prevent the jury from hearing about the contents of these statements unless it finds

that their probative value substantially outweighs their prejudicial value.  The importance

of this analysis is highlighted by the history of Rule 703.  After this rule was initially

passed, it was typically used to introduce inadmissible evidence, such as hearsay, through

the back door.  *See, e.g., Dep't of Youth Serv. v. Juvenile*, 398 Mass. 516, 531 (1986)

(describing Rule 703, prior to the 2000 revisions, and noting that some cases "allow the

expert, on his direct examination, to describe this inadmissible data to the factfinder.

That is what is known as a back door and no matter how many limiting instructions you

may have, it is an ominously large door.").  In 2000, the rule was revised to add the last

sentence to ensure that inadmissible testimony was not regularly presented to juries.

The revised rule creates a presumption against disclosing inadmissible bases for

expert opinions to the jury.  *See Turner*, 338 F.3d at 1062 (*quoting* 4 Jack B. Weinstein &

Margaret A. Berger, Weinstein's Federal Evidence § 703.05 (2d ed. 2003) ("The

amendment provides a presumption against disclosure to the jury of information used as

the basis of an expert's opinion and not admissible for any substantive purpose, when that

information is offered by the proponent of the expert.")).  In other words, evidence that is

otherwise "inadmissible will be kept out unless the court determines that any potential

prejudice is substantially outweighed by the probative value." *Id.*  This standard is not a

mere balancing test, where the probative value of the statement is weighed against the

prejudicial value; rather, there is a presumption favoring the exclusion of such testimony,

which can only be rebutted if the probative value *substantially outweighs* the prejudicial value. This standard imposes the reverse presumption of Rule 403, which excludes evidence only if its probative value is substantially outweighed by its prejudicial value. *See* Fed. R. Evid. 403. The probative value does not substantially outweigh the prejudicial value here.

The probative value of the statements relied upon by Drs. Field and Rothschild is minimal. Courts have viewed inadmissible hearsay evidence as untrustworthy and thus, of limited probative value. *See, e.g.*, *Fiorentino v. Rio Mar Assocs., LP*, 381 F.Supp. 2d 43, 48 (D. P.R. 2005) (excluding expert's testimony because it was based on two statements that were "both inadmissible hearsay and thus, not trustworthy" and because "an expert should not be permitted to give an opinion that is based on conjecture or speculation from an insufficient evidentiary foundation."). In this case, because the statements at issue are self-serving or incomplete, they are particularly unreliable. Field Report at 15, 17. Moreover, the type of probative value contemplated by Rule 703 is the statement's value in assisting the jury in understanding the expert's opinion. *See* Fed. R. Evid. 703. To the extent that Dr. Field is qualified to testify about medical publishing and her opinions as to the reasonableness of Defendants' publishing strategy, she does not need to repeat the testimony of the researchers for the jury to understand her opinion. Similarly, a jury would understand Dr. Rothschild's interpretation of the FDA's practice with respect to having five officials sign a statistical review without extensive quotations from Dr. McCormick's affidavit.

The prejudice to Kaiser if these statements were introduced would be significant. The extensive commentary quoted by Dr. Field contains numerous broad

characterizations that juries could easily misunderstand, as does Dr. Rothschild's discussion of Dr. Vieta's declaration.  For example, Dr. Field quotes Dr. Vieta's statement that "Pfizer statisticians may have assisted me in executing certain statistical analyses that I specifically requested, but Pfizer was not otherwise involved in drafting the manuscript." Field Report at 17.  Hearing Dr. Field quote only this excerpt would render the jury unable to determine what the statistical analyses entailed and the full extent of Pfizer's involvement.  Similarly, Dr. Field quotes Dr. Gorson's statement that in other trials, Neurontin was shown to be superior to the placebo when used in higher doses, but there is no citation to these other studies.  *Id.* at 16.  If the jury heard this statement, they could be misled into believing that such studies do exist, that there were no flaws in those studies, and that there are no contrary studies.  Dr. Rothschild's quotation of Dr. McCormick would also give the jury an incomplete picture of her views, as well as the FDA's views, on the extent to which Neurontin could lead to depression.  As a result, neither Dr. Field nor Dr. Rothschild has met the high standard for allowing the jury to hear these out-of-court statements.

## IV.    CONCLUSION

For the reasons stated herein, the testimony of Dr. Field and Dr. Rothschild should be excluded to the extent they quote or refer to out-of-court statements.

Dated:  January 8, 2010          Respectfully submitted,

By:    */s/ Linda P. Nussbaum*
       Linda P. Nussbaum

KAPLAN FOX & KILSHEIMER LLP
Linda P. Nussbaum, Esq.
850 Third Avenue, 14th Floor
New York, New York 10022

*Attorneys for Plaintiffs Kaiser Foundation Health*
*Plan, Inc. and Kaiser Foundation Hospitals*

*Of Counsel*

Thomas Greene
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 8, 2010.

/s/  Elana Katcher
Elana Katcher