UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS)<br><br>and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**PLAINTIFF KAISER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF CHARLES PHILLIPS, M.D. <u>AS IRRELEVANT, PREJUDICIAL AND INFLAMMATORY</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.   INTRODUCTION ....................................................................................................... 1

II.  STATEMENT OF FACTS .......................................................................................... 2

III. ARGUMENT ............................................................................................................... 5

   A. Dr. Phillips' Proposed Topic of Testimony is Not a Proper Subject for Expert Testimony ........................................................................................................ 5

   B. Dr. Phillips Can Offer No Testimony That Is Relevant To Any Claim Or Defense At Issue, And Defendants Are Improperly Attempting To Inflame The Passions Of The Jury Against Kaiser .............................................................. 6

IV.  CONCLUSION ............................................................................................................ 8

## TABLE OF AUTHORITIES

**Cases**

*Andrews v. Metro North Commuter R.R. Co.,*
  882 F.2d 705, 708 (2d Cir. 1989) .................................................................................. 5

*Ed Peters Jewelry Co. v. C & J Jewelry Co.,*
  124 F.3d 252 (1st Cir. 1997) ......................................................................................... 5

*Old Chief v. United States,*
  519 U.S. 172 (1997) ...................................................................................................... 8

*Simpson v. Spencer,*
  372 F.Supp. 2d 140 (D. Mass. 2005) ............................................................................ 7

*United States v. Cruz,*
  981 F.2d 659 (2d Cir. 1992) .......................................................................................... 5

*United States v. Diaz,*
  300 F.3d 66 (1st Cir. 2002) ........................................................................................... 5

*United States v. Fredette,*
  315 F.3d 1235 (10th Cir. 2003) ..................................................................................... 6

*United States v. Moccia,*
  681 F.2d 61 (1st Cir. 1982) ........................................................................................... 7

*United States v. Sepúlveda,*
  15 F.3d 1161 (1st Cir. 1993) ......................................................................................... 6

*Wartsila NSD North Am., Inc. v. Hill Int'l, Inc.,*
  342 F. Supp. 2d 267 (D.N.J. 2004) ............................................................................... 6

**Other Authorities**

Fed. R. Evid. 401. ................................................................................................................ 6

Fed. R. Evid. 402. ................................................................................................................ 6

Fed. R. Evid. 403 ............................................................................................................ 2, 7

Fed. R. Evid. 404(b) ........................................................................................................... 2

Rule 702 .............................................................................................................................. 5

I.  **INTRODUCTION**

Defendants' Expected Trial Witness List (Dkt. No. 2180, "Defs. Witness List") includes Dr. Charles Phillips, a third-party physician designated as a witness by Defendants to testify "about the operations and business practices of Kaiser" (Defs. Witness List, No. 49). Dr. Phillips has indulged a bizarre and continuous fixation on Kaiser, reflected in a series of inflammatory public statements about Kaiser over several years. Dr. Phillips should be precluded from offering any testimony at trial for at least three independently valid reasons. *First*, as explained in the separately filed Motion *in Limine* To Exclude Testimony That Neurontin Is Effective Based on Clinical Experience, Dr. Phillips was not designated as an expert witness until a year after such disclosures were required. *Second*, the proposed topic of Dr. Phillips' testimony is neither relevant to this case nor necessary to assist the trier of fact. *Third*, if Dr. Phillips' testimony had any probative value, which it does not, any such value would be severely outweighed by its prejudicial nature.

Dr. Phillips is most notable as a contributor to the website www.kaiserpapers.org, which is unaffiliated with the plaintiffs in this action, and which contains links on its opening page to such inflammatory topics as "The Kaiser Death Watch;" "Murders by Nurses/Caregivers;" "Medical Serial Killers;" and the "Writings of Dr. Charles Phillips."[1] Dr. Phillips admits lacking any expertise in Neurontin – and in fact testified that he prepared for his December 16, 2009 deposition in part by conducting a google search for the term "Neurontin" – and lacks any

---

[1]  Pages 32-34 of the transcript of the deposition of Charles Phillips, dated December 16, 2009, annexed as Exhibit A to the Declaration of Elana Katcher. *See also* www.kaiserpapers.org.

affiliation with the plaintiffs in this action, aside from an 18-month stint working as an hourly-rate contract physician in the emergency room of a Kaiser facility in Fresno, California.[2,3]

Since that time, Dr. Phillips has authored a series of articles and internet publications accusing Kaiser of the most callous depravities towards its insureds. Dr. Phillips has also served as a paid professional witness against Kaiser on at least 30 occasions, according to his own admission. The type of testimony Dr. Phillips can provide has no place in this action. His brief and tangential experience as a third party physician at a Kaiser facility over a decade ago hardly qualifies him to testify in an expert or in a fact capacity as to the "operations and business practices of Kaiser," and his views of Kaiser – whose practices he has compared to that of the Khmer Rouge[4] – heavily imply that his only utility to defendants is as a "smear witness" and thus must fail any reasonable interpretation of Federal Rules of Evidence 403 and 404(b).

## II.  STATEMENT OF FACTS

Dr. Phillips worked as an hourly-rate physician in the emergency room of a Kaiser medical facility in Fresno, California from September of 1997 to March of 1999. (Katcher Decl. Exh. A at 43). He became disenchanted with Kaiser after losing that position, and spent the next decade writing and testifying about managed care, generally, and Kaiser, specifically in the most inflammatory, sensationalized language available. For example, at his December 16, 2009 deposition in this matter, Dr. Phillips admitted to authoring the following parade of horribles:

❖ In 2000, Dr. Phillips wrote an article entitled "The Killing Fields: The Ongoing Slaughter in the Offices, Clinics, Gurneys and Beds of Managed Care." In the

---

[2] *Id.* at 22-23.

[3] He has also testified that he had worked "very briefly" in a second Kaiser-affiliated emergency room in the 1970s. *See* page 102-03 of the transcript of the deposition of Charles Phillips, dated December 16, 2009, annexed as Exhibit A to the Declaration of Elana Katcher.

[4] Katcher Decl. Exh. A at 58-59.

article he wrote: "My topic tonight is The New Killing Fields. No, not a horror story out of Southeast Asia, but rather the ongoing slaughter in the offices, clinics, and gurneys, and beds of Managed Care. This is not a gun-to the head assassination of [the] uncooperative, it is the slow vitamin-deficiency-like poisoning caused by acts of omission perpetrated to the – on the cooperative. The new killing is being wrought on those very patients who suspended their general disbelief of advertising and got hooked for one more year by slogans like 'in the hands of doctors' – *the Kaiser system.*" Katcher Decl. Exh. A at 56-57 (emphasis added).

- ❖ In 2006, Dr. Phillips co-authored a book called "Kaiser Permanente, The Unauthorized Tour and Document Summary," in which he asserts the opinion that Kaiser promotes pediatricians to adult critical and cancer care positions because, according to Dr. Phillips, pediatricians will focus more on immunizations and less on intensive care, thus generating cost savings for Kaiser. Katcher Decl. Exh. A at 61, 67-69.

- ❖ In an article entitled "Talk about Chutzpah," Dr. Phillips wrote that "Kaiser does not really worry about missing a cancer because they have developed a fast-track into hospice and are comfortable with the concept of duty to die." In the same article, he wrote, "[o]ne reason of the many reasons Kaiser fails to diagnose some early cancer – some cancer early is that they also have the chutzpah to change the generally medically accepted value for normal on tests results so as not to find illness." Katcher Decl. Exh. A at 72-73.

- ❖ When asked at his deposition whether he believes HMOs are guilty of mass murder, Dr. Phillips testified that "when you withhold care to people, change lab values, abnormals, split pills, you are slowly going to be killing them one-on-one. . . . [w]hether it's mass because 100 – 10,000 doctors do it each day is up to you to decide." Katcher Decl. Exh. A at 74-75.

- ❖ In January 2001, Dr. Phillips wrote a letter to an online college newspaper in which warned that young physicians must sell their souls to entities such as the Permanente Medical Group to lower their massive debt, and in turn become "Kaiserized." These young doctors then participate in murder: "[I]n the slow process of withholding medicine in ways they don't even understand people are killed and these doctors get a home." Katcher Decl. Exh. A at 78-79.

Dr. Phillips has estimated that he has been paid to testify against Kaiser in approximately 30 malpractice actions; approximately ten of those occasions have been since 2005, and has testified that as a general rule, Kaiser meets the industry standard of care for treatment only about one-third of the time. Katcher Decl. Exh. A at 82-85. Ironically, Dr. Phillips also admits that his own medical license was revoked in 2003 for acts of gross negligence and incompetence. *Id.* at 86.

Defendants claim that Dr. Phillips has not been retained as an expert. However, upon receipt of his subpoena to testify at his December 16, 2009 deposition, Dr. Phillips promptly forwarded to Kaiser his standard terms of appearance, including a request for a $500/hr fee with a $2000 minimum fee. Defendants concede that they intend to pay Dr. Phillips for his testimony.[5]

---

[5] *See* Katcher Decl. Exh. A at 36-41; Katcher Decl. Exh. B.

### III.   ARGUMENT

### A.   Dr. Phillips' Proposed Topic of Testimony Is Not a Proper Subject for Expert Testimony.

Dr. Phillips' testimony has no relevance to the claims or defenses at issue in this case. As the First Circuit and courts have similarly held, "expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002) (citations omitted); *see also, e.g., Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 259 (1st Cir. 1997) (holding that trial court "must perform its gatekeeping function, by assessing whether the testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue'") (quoting Rule 702). Rule 702 itself states that expert testimony is permissible if such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue . . ." The topic about which Pfizer wishes to elicit opinion testimony from Dr. Phillips – "the operation and business practices of Kaiser" – is hopelessly vague, but in any case, has no bearing on any fact at issue in this case.

Even if Kaiser's "operation and business practices" were relevant to this case, this topic would not be a proper subject of expert testimony because jurors need no assistance in understanding it. There is nothing esoteric or difficult to understand about what Kaiser does. *See, e.g., United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992) (expert testimony needed only if matter has "esoteric aspects reasonably perceived as beyond the ken of the jury"); *Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (expert testimony "must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help.").

853007.2

-5-

Courts do not hesitate to let jurors apply their own common sense understanding to issues and arguments presented by parties. *See, e.g., United States v. Fredette*, 315 F.3d 1235, 1240 (10th Cir. 2003) (refusing to admit teaching expert testimony on operation of rebate programs that a "reasonable juror would intuitively understand"); *Wartsila NSD North Am., Inc. v. Hill Int'l, Inc.*, 342 F. Supp. 2d 267, 283 and n.9 (D.N.J. 2004) (expert testimony not required to establish whether consultant had breached duty to client; determination did not require specialized knowledge or a sophisticated understanding of the working of the client's business).

Further, even if Kaiser's operations were of a technical nature requiring expert explanation, Dr. Phillips, employed briefly as an emergency physician in a Kaiser facility over ten years ago, in no way possesses the "specialized knowledge," let alone any knowledge, that would assist the jury in understanding this topic. *See, e.g., United States v. Sepúlveda*, 15 F.3d 1161, 1183 (1st Cir. 1993) (trial judge must determine whether it is "reasonably likely that the expert possesses specialized knowledge which will assist the trier better to understand a fact in issue.").

**B.     Dr. Phillips Can Offer No Testimony That Is Relevant To Any Claim Or Defense At Issue, And Defendants Are Improperly Attempting To Inflame The Passions Of The Jury Against Kaiser.**

The Federal Rules of Evidence state that "[e]vidence which is not relevant is not admissible" and define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401, 402.

This case is about Defendants' fraudulent off-label marketing of Neurontin, and whether or not that campaign caused Kaiser economic harm. Dr. Phillips has admitted that he can offer no relevant testimony concerning Neurontin, and his brief stint as an hourly-rate emergency

room physician in a Kaiser facility over a decade ago is of no reference. Dr. Phillips has never sat on a PMG P&T Committee; has no experience in Kaiser's administrative offices; and in short has no experience from which to testify about Kaiser's policies and practices with respect to formulary selection, drug utilization, or any other issue remotely probative of an issue in this case.. Dr. Phillips' testimony as a fact witness is clearly thus irrelevant to his designated topic – the business practices and operations of Kaiser.

Rule 403 of the Federal Rules of Evidence provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *See* Fed. R. Evid. 403. "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee Notes to Fed. R. Evid. 403. Proving the truth of Dr. Phillips allegations would amount to a side show on managed care practices, designed to inflame the passions of a jury on a subject completely unrelated to off-label marketing of pharmaceuticals. In addition, even if Dr. Phillips' allegations were true – which Kaiser emphatically denies and would vigorously contest at trial – such testimony amounts to character evidence based on prior conduct and is clearly inadmissible under Federal Rule of Evidence 404(b). *See United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982) ("While logically relevant, 'propensity' or 'bad character' evidence is deemed to carry an unacceptable risk that the jury will convict … simply because a bad person deserves punishment."). *See also Simpson v. Spencer*, 372 F. Supp. 2d 140, 149 (D. Mass. 2005) ("Under the federal rule, the trial judge may exclude relevant evidence simply because it wastes time.").

Rule 403 requires the trial court to consider "evidentiary alternatives." In assessing the probative value and the prejudicial effect of a given piece of evidence, this Court must consider

whether other evidence is available to prove the point, and specifically whether the alternative evidence is less prejudicial than the evidence proffered. *Old Chief v. United States*, 519 U.S. 172 (1997). Proffered evidence cannot be viewed in isolation, because that would

> leave the party offering evidence with the option to structure a trial in whatever way would produce the maximum unfair prejudice consistent with relevance. He could choose the available alternative carrying the greatest threat of improper influence, despite the availability of less prejudicial but equally probative evidence. The worst he would have to fear would be a ruling sustaining a Rule 403 objection, and if that occurred, he could simply fall back to offering substitute evidence. This would be a strange rule.

There are less inflammatory means of introducing evidence about the "operations and business practices of Kaiser." *See* Defendants' Expected Witness List at p. 8. There are numerous current and former employees of Kaiser that are qualified to testify, and are currently slated to testify, concerning the operations and business practices of Kaiser, including several members of Kaiser's Drug Information Services, members of PMG P&T Committees, and participants in Kaiser's drug utilization efforts. Defendants can elicit any legitimate, relevant testimony about Kaiser's operations and business practices through these witnesses, or the prior deposition testimony of other Kaiser witnesses, without subjecting Kaiser or this Court to an inflammatory and improper sideshow.

## IV.  CONCLUSION

For the foregoing reasons, Kaiser's motion to exclude the testimony of Dr. Charles Phillips should be granted.

Dated: January 8, 2010                                       Respectfully submitted,

                    By:    */s/ Linda P. Nussbaum*
                             Linda P. Nussbaum

KAPLAN FOX & KILSHEIMER LLP
Linda P. Nussbaum, Esq.
850 Third Avenue, 14th Floor
New York, New York 10022

*Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

Thomas Greene
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

*Of Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 8, 2010.

/s/ *Elana Katcher*
Elana Katcher