UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**MEMORANDUM IN SUPPORT OF KAISER'S MOTION *IN LIMINE* TO STRIKE NON-REBUTTAL TESTIMONY OF DR. ROTHSCHILD**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  FACTS ................................................................................................................... 2

III. ARGUMENT ......................................................................................................... 6

   A. Dr. Rothschild is a Rebuttal Expert ................................................................ 6

   B. Rebuttal Experts' Testimony Is Limited in Scope .......................................... 7

   C. Dr. Rothschild's Report Goes Beyond the Scope of the
      Plaintiffs' Supplemental Reports ..................................................................... 8

   D. The Court Should Exclude Dr. Rothschild's Testimony to the Extent ......... 10

IV.  CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                         **Page**

*Akeva L.L.C. v. Mizuno Corp.*,
   212 F.R.D. 306 (M.D.N.C. 2002) .................................................................................. 8

*Boston Gas Co. v. Century Indemnity Co.*,
   529 F.3d 8 (1st Cir. 2008) ............................................................................................ 8

*Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*,
   79 F.3d 182 (1st Cir. 1996) .......................................................................................... 7

*Ebbert v. Nassau Co.*,
   No. 05-5445, 2008 U.S. Dist. LEXIS 74213 (E.D.N.Y. Sept. 26, 2008) ...................... 8

*Esposito v. Home Depot USA, Inc.*,
   No. Civ. A. 08-2115, 2009 WL 51126607 (1st Cir. Dec. 30, 2009) ............................ 10

*Gagnon v. Teledyne Princeton, Inc.*,
   437 F.3d 188 (1st Cir. 2006) ........................................................................................ 10

*Lidle v. Cirrus Design Corp.*,
   No. 08-1253, 2009 U.S. Dist. LEXIS 118850 (S.D.N.Y. Dec. 18, 2009) .................... 8

*Lindner v. Meadow Gold Dairies, Inc.*,
   249 F.R.D. 625 (D. Haw. 2008) .................................................................................. 8

*Lohnes v. Level 3 Commc'ns, Inc.*,
   272 F.3d 49 (1st Cir. 2001) .......................................................................................... 10, 11

*Musser v. Gentiva Health Serv.*,
   356 F.3d 751 (7th Cir. 2004) ....................................................................................... 11

*Presstek, Inc. v. Creo, Inc.*,
   No. 05-65, 2007 U.S. Dist. LEXIS 24170 (D.N.H. Mar. 30, 2007) ............................ 10

**Rules**

Fed. R. Civ. Proc. 26(a)(2)(B) ............................................................................................ 7

Fed. R. Civ. Proc. 26(a)(2)(C) ............................................................................................ 6

Fed. R. Civ. Proc. 26(a)(2)(C)(ii) ....................................................................................... 1, 6, 7

Fed. R. Civ. Proc. 37(c)(1) ................................................................................................. 10

## I.     **INTRODUCTION**

Defendants Pfizer, Inc. and Warner-Lambert Company LLC ("Defendants") seek to offer testimony from Anthony J. Rothschild, M.D. Defendants disclosed Dr. Rothschild as a rebuttal expert witness to the December 10, 2008 supplemental report of Dr. Jeffrey S. Barkin, M.D. and the December 9, 2008 report Curt Daniel Furberg, M.D., Ph.D. (collectively, the "Plaintiffs' Supplemental Reports").[1] As a rebuttal expert, his testimony may be offered "solely to contradict or rebut evidence on the same subject matter" as the Plaintiffs' Supplemental Reports. *See* Rule 26(a)(2)(C)(ii). Plaintiffs' Supplemental Reports address the known link between the use of Neurontin and treatment-worsening depression, focusing on (i) data presented to the FDA in 1992 suggesting that Neurontin could actually *worsen* a patient's depression and (ii) whether Defendants improperly marketed Neurontin as a drug that could lessen depression and improve mood, without disclosing contradictory data suggesting no such benefits. In stark contrast, Dr. Rothschild's report goes well beyond the scope of Plaintiffs' Supplemental Reports, opining on a laundry list of unrelated topics, including Neurontin's use for bipolar disorder and anxiety disorders generally, the frequency of Neurontin's off-label use, and side effects other than depression. Because those portions of Dr. Rothschild's report that are not responding to Plaintiffs' Supplemental Reports are untimely and prejudicial, and Defendants have not offered a substantial justification for disclosing Dr. Rothschild after the deadline for serving initial expert reports, the Court

---

[1] Plaintiffs are Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser"). Kaiser Foundation Health Plan, Inc. is the parent company of the following companies and has brought this lawsuit on behalf of itself and its subsidiaries: Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio.

1

should strike Dr. Rothschild's report and testimony to the extent it does not serve as a true rebuttal to the Plaintiffs' Supplemental Reports.

## II.    FACTS

On August 11, 2008, Plaintiffs served their expert disclosures and reports. *See* Class Pls.' Mot. For Leave (Dkt. #1503) at 3 n.1. After the Court observed the considerable overlap between Plaintiffs' case and that of the Products Liability Plaintiffs, who allege that the Defendants suppressed evidence that Neurontin could lead to depression, the Plaintiffs reviewed evidence from the FDA's 1992 review of Neurontin's New Drug Application, which suggested that Neurontin could increase the risk of depression in patients. *Id.* at 2-5. On December 11, 2008, the Plaintiffs filed a motion for leave to serve the Plaintiffs' Supplemental Reports, which emphasized that the proffered reports only addressed the known risk of depression associated with Neurontin. *Id.*

Originally, Defendants' expert reports were due on September 15, 2008. *See* Dkt. # 1417 at 2. On August 26, 2008, Defendants moved for a 30-day extension (October 15, 2008), which was granted. *Id.*; Electronic Order dated Sept. 3, 2008. As grounds for the motion, Defendants recognized that they "will need to respond to Dr. Barkin, who addresses the use of Neurontin for bipolar and other mood disorders." Dkt. # 1417 at 4. Defendants requested another extension on September 17, 2008 (Dkt. # 1435), and this request extended the deadline until December 15, 2008. *See* Electronic Order dated Oct. 22, 2008 ("Defendants shall have until December 15, 2008 to file their expert report. No further continuances.").

On December 15, 2008, the Defendants served their expert disclosures, which disclosed ten expert witnesses and referred to three additional expert witnesses whose reports had already been produced, but did not disclose Dr. Rothschild. *See* Letter from James P. Rouhandeh to Thomas M. Greene (Dec. 15, 2008) (attached as Exhibit A). Defendants did disclose Andrew E. Slaby, M.D., Ph.D., M.P.H., who specifically states his purpose "to respond to Dr. Barkin's report." *Id.* The Defendants filed an opposition to the Plaintiffs' motion for leave to file supplemental reports on the same day. *See* Defs.' Opp. to Mot. To Leave (Dkt. # 1517). On December 17, 2008, the Plaintiffs sought leave to file a reply, in which Plaintiffs stated that they "would have no objection to Defendants serving a narrowly-tailored report in response to [the Plaintiffs' Supplemental Reports]. Moreover, if Defendants need to identify a new expert for this purpose, Class Plaintiffs would agree to waive any opportunity to depose such expert." *See* Ex. A to Mot. For Leave to File Reply (Dkt. # 1525) at 7.

On January 6, 2009, the Court granted Plaintiffs' motion for leave to serve supplemental expert reports, holding that "[a]ll existing discovery deadlines shall be in effect. However, counsel may have additional time to *address these two supplemental reports*. After conferring, counsel shall propose a timetable." Electronic Order dated Jan. 6, 2009 (emphasis added). On January 27, 2009, the parties' filed a proposed timetable in which the parties agreed that the deposition of Dr. Furberg would take place on March 11-12, 2009, and that "service of defendants' expert disclosures in response to supplemental expert reports" would take place on March 18, 2009. Proposed Timetable for Addressing Supplemental Expert Reports (Dkt. # 1646) at 2. The parties further stated that they were not proposing "any other changes to the discovery schedule." *Id.*

3

On February 5, 2009, the Court issued an electronic endorsement granting the parties' proposed schedule. On March 18, 2009, the Defendants served Plaintiffs with the expert disclosure and report of Dr. Rothschild "[p]ursuant to Fed. R. Civ. P. 26(a)(2)(B), the parties' "Proposed Timetable for Addressing Supplemental Expert Reports" (Dckt. #1646), and the Court's February 5, 2009 electronic endorsement granting same." *See* Letter from James P. Rouhandeh to Thomas M. Sobol (Mar. 18, 2009) (attached as Exhibit B).

Plaintiffs' Supplemental Reports address two very narrow issues: (i) was there a known risk of mood-worsening associated with Neurontin, as evidenced by data presented to the FDA in 1992; and (ii) whether Defendants improperly marketed Neurontin as being beneficial for mood by failing to disclose the contradictory data. *See* Supp. Report of Jeffrey S. Barkin, M.D. (Dec. 10, 2008) (Dkt #1503-2) ("Barkin Supp. Report"); Expert Report of Curt Daniel Furberg, M.D., Ph.D. (Dec. 9, 2008) (Dkt # 1503-3) ("Furberg Report"). Aside from the introduction and conclusion, Barkin's supplemental report only has two headings. The first, entitled "Early Evidence of Gabapentin's Effect on Mood Available to Defendants," discusses the data submitted to the FDA with Neurontin's New Drug Application that suggested Neurontin could increase a patient's risk of depression. Barkin Report at 1-2. The second heading is entitled "Defendants' Marketing of Neurontin Omitted Material Evidence of Neurontin's Effect on Mood" and discusses Defendants' failure to disclose or research the potential risk of depression identified in the NDA data. *Id.* at 2-5. Dr. Furberg's report focuses on the same topics. Furberg Report at 9-19. As a result, Drs. Barkin and Furberg narrowly

4

tailored the Plaintiffs' Supplemental Reports to the risk of depression associated with Neurontin.

In stark contrast, Defendants' expert, Dr. Rothschild, opines on a much broader array of topics in his report. For example, Rothschild discusses bipolar disorder generally, something which was already covered by Dr. Slaby in his two prior reports. Rule 26 Expert Report of Anthony J. Rothschild, M.D. (Mar. 18, 2009) at 4-5 (attached as Exhibit C). Dr. Rothschild then explains that "physicians prescribe Neurontin for a wide range of patients" and describes its use in treating bipolar disorders and anxiety disorders. *Id.* at 5-11. In fact, Dr. Rothschild reveals the broad sweep of his section on the "Use of Neurontin in Bipolar Disorder" in the very first sentence, where he states: "The Plaintiffs in this case are asserting that Neurontin has no role in the treatment of bipolar disorder. I disagree." *Id.* at 7. Rothschild then proceeds to conduct a broad review of the literature that is non-responsive to Plaintiffs' Supplemental Reports and is duplicative of Dr. Slaby's two prior reports, covering a discussion of Neurontin's general use not only in treating bipolar disorder, but also anxiety and panic disorder. *Id.* at 7-11. Dr. Rothschild next suggests that Neurontin presents only minimal side-effects, but makes no mention whatsoever of depression or suicidality, which represent the entire focus of Drs. Barkin and Furberg's supplemental reports. *Id.* at 12-13. Most tellingly, Dr. Rothschild makes no effort to conceal his attempt to rebut the conclusions reached in Dr. Barkin's initial report in a section entitled "Dr. Jeffrey Barkin Expert Report (July 25, 2008)." *Id.* at 22-24. Not surprisingly, this section makes no mention of and in no way relates to the opinions contained in Dr. Barkin's supplemental report.

A neutral reading of Dr. Rothschild reveals that – on its face – only twelve (12) of the 23 pages of substantive discussion in Dr. Rothschild's report even purport to address the substance of Plaintiffs' Supplemental Reports. *Id.* at 13-21, 24-26. The remainder of his substantive discussions (*i.e.*, pages 4-13 and 22-24) make no mention of treatment-worsening of mood or suicidality and go well beyond the scope of Plaintiffs' Supplemental Reports.

### III.  ARGUMENT

Under the guise of responding to the expert report of Dr. Furberg and the supplemental report of Dr. Barkin, Dr. Rothschild takes on Dr. Barkin's original report, offering opinions that are untimely, and duplicating the opinions of Defendants' timely designated bipolar expert, Dr. Slaby. Accordingly, Dr. Rothschild's testimony should be limited only to the extent that he was permitted by the Court to serve a rebuttal report.

#### A.  **Dr. Rothschild is a Rebuttal Expert**

The Federal Rules of Civil Procedure distinguish expert witnesses from rebuttal witnesses, whose testimony "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)." *See* Fed. R. Civ. Proc. 26(a)(2)(C)(ii). Parties are obligated to make their expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. Proc. 26(a)(2)(C). In this case, the Court ordered that Defendants disclose their expert witnesses by December 15, 2008. *See* Revised Scheduling Order (Dkt. # 1488) at 1. On December 15, 2008, Defendants disclosed ten expert witnesses (and had previously disclosed three additional experts), but did not disclose Dr. Rothschild. Ex. A at 1. At that time, Plaintiffs had filed their motion for leave to serve supplemental reports, but the Court had not ruled on the

issue. Had Defendants intended Dr. Rothschild to act as more than a rebuttal witness, they would have served his report on December 15, 2008; otherwise, they would have been unable to call Dr. Rothschild at all if the Court denied Plaintiffs' motion.

Both the Court and the parties' proposed timetable contemplated that the filing of any additional expert reports would be rebuttal reports. The Court's January 6, 2009 Order stated that "[a]ll existing discovery deadlines shall be in effect" but allowed Defendants "additional time to address these two supplemental reports." The parties' proposed timetable called for "[s]ervice of defendants' expert disclosures **in response to supplemental expert reports.**" Proposed Timetable (Dkt. #1646) at 2 (emphasis added). Defendants' own cover letter to Dr. Rothschild's report indicated that it was being produced pursuant to Rule 26(a)(2)(B), the parties' proposed timetable, and the Court's February 5, 2009 electronic endorsement of the parties' proposed timetable. Ex. B at 1. Rule 26(a)(2)(B) merely requires the production of an expert report to accompany an expert disclosure. *See* Fed. R. Civ. Proc. 26(a)(2)(B). Because the proposed timetable and electronic endorsement only contemplate rebuttal testimony by experts, the scope of Dr. Rothschild's report and testimony is limited to that of a rebuttal witness.

### B.   Rebuttal Experts' Testimony Is Limited in Scope

Rule 26(a)(2)(C)(ii) articulates the scope of a rebuttal expert's testimony as being "solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)." *See* Fed. R. Civ. P. 26(a)(2)(C)(ii). Courts have consistently held that rebuttal experts' reports and testimony should be limited to the scope of the experts who they are rebutting. *See, e.g., Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 202 (1st Cir. 1996) (affirming district

court's exclusion of testimony of two experts because "neither witness could properly be characterized as a 'rebuttal' witness within the meaning of Rule 26(a)(2)(C), and thus both should have been disclosed previously."); *Lidle v. Cirrus Design Corp.*, No. 08-1253, 2009 U.S. Dist. LEXIS 118850, at *17 (S.D.N.Y. Dec. 18, 2009) (holding that an expert's report that went beyond the scope of appropriate rebuttal "does not qualify as a reply or rebuttal report."); *Ebbert v. Nassau Co.*, No. 05-5445, 2008 U.S. Dist. LEXIS 74213, at *13-14 (E.D.N.Y. Sept. 26, 2008) (striking rebuttal expert report containing material that should have been in initial report); *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Haw. 2008) (holding that expert reports "are proper rebuttal reports if they contradict or rebut the subject matter" of the reports they are rebutting and striking portions of rebuttal reports that were beyond the scope of rebuttal); *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 309-10 (M.D.N.C. 2002) (rejecting expert rebuttal testimony because the testimony was not supplemental under Rule 26(e) and was not disclosed in accordance with the court-ordered discovery plan); *see also Boston Gas Co. v. Century Indemnity Co.*, 529 F.3d 8, 24-25 (1st Cir. 2008) (affirming exclusion of expert report that was produced after the deadline for producing expert reports). This extensive case law shows that rebuttal experts must limit the scope of their testimony to the expert witnesses they're rebutting.

### C. Dr. Rothschild's Report Goes Beyond the Scope of the Plaintiffs' Supplemental Reports

Dr. Rothschild's report goes well beyond the scope of the Plaintiffs' Supplemental Reports. Plaintiffs' Supplemental Reports address the question of whether there was known data suggesting that Neurontin might lead to worsening of depression and, worse, an increased level of suicidality, and whether this known data should have

been disclosed when Defendants were making claims that Neurontin could help patients with mood disorders. *See* Barkin Report at 1-5; Furberg Report at 9-19. The only two headings in Dr. Barkin's report other than the introduction and conclusion focus on these two points. Ex. Barkin Report at 1-5. Dr. Furberg's report similarly addresses these same topics regarding the risk of depression associated with Neurontin. Furberg Report at 9-19. As a result, Drs. Barkin and Furberg narrowly tailored their reports to the risk of depression associated with Neurontin.

Dr. Rothschild, on the other hand, goes well beyond this potentially increased risk of depression. Rather than focusing on the issues raised in the Plaintiffs' Supplemental Reports, Rothschild diverges into much broader topics. For example, Rothschild claims that "[t]he Plaintiffs in this case are asserting that Neurontin has *no role* in the treatment of bipolar disorder," an assertion that was not made in the Plaintiffs' Supplemental Reports, and discusses the beneficial effects of Neurontin. Ex. C at 7 (emphasis added). Similarly, Rothschild opines on the frequency of off-label prescriptions in psychiatry, the use of Neurontin in anxiety orders, and a wide variety of potential side effects in medications like Neurontin. *Id.* at 6, 10-13. Moreover, although Dr. Rothschild was offered to rebut Dr. Barkin's supplemental report, he also discusses Dr. Barkin's initial report at length without connecting the portions of Dr. Barkin's initial report that he addresses to Dr. Barkin's supplemental report. *Id.* at 22-24. The broad nature of Rothschild's report, quite simply, goes beyond the permissible scope of a rebuttal expert report.

9

### D. The Court Should Exclude Dr. Rothschild's Testimony to the Extent It Is Untimely

Because Dr. Rothschild goes beyond the scope of the witnesses he is rebutting, the portion of his report that addresses topics unrelated to the Plaintiffs' Supplemental Reports is untimely. Untimely disclosures are subject to the penalties of Rule 37(c)(1) of the Federal Rules of Civil Procedure. *See Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001) (affirming district court's exclusion of late-filed expert report while noting that "Rule 37(c)(1) traditionally has been invoked to bar expert testimony at trial."). Rule 37(c)(1) states that, if a party fails to provide required information, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Proc. 37(c)(1). As clearly indicated by this rule, "[t]he First Circuit has recognized that 'the required sanction in the ordinary case [for a late disclosure violation of Rule 37] is mandatory preclusion.'" *Presstek, Inc. v. Creo, Inc.*, No. 05-65, 2007 U.S. Dist. LEXIS 24170, at *16 (D.N.H. Mar. 30, 2007) (*quoting Lohnes*, 272 F.3d at 60).

Rule 37(c)(1) allows a party to overcome the presumptive exclusion of the late-disclosed expert testimony if the party was substantially justified in its actions or the late disclosure was harmless. Fed. R. Civ. Proc. 37(c)(1); *Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188 (1st Cir. 2006) (holding that district court did not abuse its discretion in ruling that missed deadline was not substantially justified).[2] The Defendants satisfy neither test in this case. The Defendants were not substantially justified in serving

---

[2] The First Circuit recently held that when the exclusion of an expert report amounted to an effective dismissal of the claims because the party cannot present a viable case without the expert, a "more robust" analysis is required. *Esposito v. Home Depot USA, Inc.*, No. Civ. A. 08-2115, 2009 WL 51126607, at *6 (1st Cir. Dec. 30, 2009). In this case, Defendants have disclosed thirteen additional experts, including Dr. Slaby, who would testify as to the subject matters that should be excluded from Dr. Rothschild's report and testimony. *See* Ex. A at 1. As a result, the "more robust" analysis is not appropriate here.

Rothschild's report late. The cover letter they provided with Rothschild's report provides no reason why his report goes beyond the scope of the Plaintiffs' Supplemental Reports; it merely notes that it is being produced pursuant to the proposed timetable and electronic endorsement of the timetable, which require that the late-served report be a rebuttal report. Ex. B at 1. The discovery order clearly required that Defendants' expert disclosures be produced by December 15, 2008, and Defendants have no substantial justification for failing to do so, even after the multiple extensions they received from the original September 15, 2008 deadline. Rather, Defendants appear to be using Dr. Rothschild to supplement the flawed report of Dr. Slaby on bipolar disorder. Calling a new expert to improve upon a flawed expert's report does not justify a late disclosure.

The Defendants' delay was not harmless. In their reply brief to the motion to leave, Plaintiffs offered not to depose the rebuttal expert – and indeed, Plaintiffs have not deposed Dr. Rothschild. Rather than accept this concession, Defendants have gamed the system, by allowing Rothschild to opine on a broader set of topics than a rebuttal witness would normally be permitted. Had Dr. Rothschild been disclosed on December 15, 2008, Plaintiffs could have deposed him on the subjects other than those addressed in the Plaintiffs' Supplemental Reports. Being deprived of the opportunity to depose an expert on the topics at issue has been considered a form of prejudice, as has losing the opportunity to challenge an expert's credentials and conduct other expert-related discovery. *Lohnes*, 272 F.3d at 60; *Musser v. Gentiva Health Serv.*, 356 F.3d 751, 759 (7th Cir. 2004) (affirming district court's holding of harm when witness was only deposed as a lay witness prior to a late disclosure of the witness as an expert). Moreover, if the Court permits Dr. Rothschild to testify as to his untimely conclusions, Defendants

11

would have a second chance at presenting expert testimony on bipolar disorder and Plaintiffs would not receive a comparable opportunity to supplement their expert's analyses. Accordingly, the Court should impose the ordinary sanction of precluding the witness's testimony that is beyond the scope of the Plaintiffs' Supplemental Reports.

## IV.   CONCLUSION

For the reasons stated herein, the testimony of Dr. Rothschild should be excluded to the extent it is not responsive to and goes beyond the scope of Dr. Barkin's supplemental report or Dr. Furberg's report.

Dated: January 8, 2010

Respectfully submitted,

By:   */s/ Linda P. Nussbaum*
        Linda P. Nussbaum

KAPLAN FOX & KILSHEIMER LLP
Linda P. Nussbaum, Esq.
850 Third Avenue, 14th Floor
New York, New York 10022

*Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

*Of Counsel*

Thomas Greene
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 8, 2010.

*/s/ Elana Katcher*
Elana Katcher
