UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------x
                                   :     MDL Docket No. 1629

In re:  NEURONTIN MARKETING,    :

        SALES PRACTICES AND      :     Master File No. 04-10981

        PRODUCTS LIABILITY LITIGATION   :

                                   :     Judge Patti B. Saris

-------------------------------------------------------------x

                                   :     Magistrate Judge Leo T. Sorokin

THIS DOCUMENT RELATES TO:      :

                                   :

ALL PRODUCTS LIABILITY ACTIONS   :

                                   :

-------------------------------------------------------------x

### MEMORANDUM IN SUPPORT OF PRODUCTS LIABILITY PLAINTIFFS' MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT OF ROBERT D. GIBBONS, Ph.D., DATED JANUARY 5, 2010

Products Liability Plaintiffs move this Court for an Order striking the January 5, 2010 Supplemental Expert Report of Robert D. Gibbons, Ph.D, served by Defendants Pfizer Inc. and Warner-Lambert Company LLC. *See* Report, annexed as Exhibit A to the Declaration of Andrew G. Finkelstein, Esq.

### PRELIMINARY STATEMENT

At the pre-trial hearing on July 20, 2009, the Court placed Defendants on notice regarding the supplemental reports of Dr. Gibbons that were already served at that time: "I gave an inch and you took a mile." *See infra.* Dr. Gibbons is a bio-statistical witness who was hired by Defendants as a general causation defense expert several months after the ending date set by the scheduling order for defense experts to be identified. Dr. Gibbons was granted permission to appear out-of-time by Judge Patti B. Saris for the limited purpose of providing expert testimony concerning the Food and Drug Administration's Safety Alert of January 31, 2008, in which the FDA announced that Neurontin and ten other anti-epileptic drugs had been determined in a meta-

analysis of random controlled trials to double the rate of suicides and suicide attempts over placebo. Dr. Gibbons criticized the FDA's methods and conclusions, largely on his premise that the odds ratio for Neurontin was out of line with the odds ratio for two of the other eleven subject anti-epileptic drugs, lamotrigine and topiramate.

Subsequently, Dr. Gibbons went far beyond the scope of work that Judge Saris had limited him to opine upon in this litigation by performing two so-called pharmacoepidemiology studies that Defendants disclosed, without seeking leave of this Court, in November 2008, almost a year after Defendants' expert disclosure deadline. The first study, the "bipolar study," which Dr. Gibbons relied upon in his November 2008 report, was submitted for publication and rejected. The second study, or "gabapentin study," which was a second supplemental expert report Dr. Gibbons disclosed in this litigation, relied on his "bipolar" study. (Most of the citations in this study were to Dr. Gibbons and papers he had previously written.) On November 25, 2008, this Court recognized the impropriety of Defendants' disclosure of Dr. Gibbons' supplemental expert report and its relationship to his Study and Article when the Court described the disclosure as "**<u>untimely and beyond the scope of this Court's order</u>**." Electronic Order, entered Nov. 25, 2008 (emphasis added). Both studies were derived from a patient claims database purchased from PharMetrics covering 131,178 gabapentin claims, 47,918 of which involved bipolar patients. The bipolar study supposedly compared suicide attempts among bipolar patients during one year before and one year after they first took any of the eleven anti-epileptic drugs. The gabapentin study supposedly compared suicide attempts patients among patients with any of several psychiatric or pain conditions during one year before and one year after first taking Neurontin. Dr. Gibbons changed these reports repeatedly after his depositions were conducted and right up until May 7, 2009.

At the pre-trial conference in the *Bulger v. Pfizer Inc.* case, the Court expressed its concern regarding Dr. Gibbons' repeated submission of expert reports beyond the scope of the Court's order that the expert report be limited to the FDA Alert:

> THE COURT: Well, yes, I will do that, but certainly at the end, by the end I will, but -- Do you want, just going through your list, I'll get -- I think I should go back to plaintiffs at this point. Dr. Gibbons, a very difficult issue. I just am not prepared to rule on that. I was starting to read stuff over the weekend. But the one question I wanted you to help me with because I didn't have a red line, and I wasn't going to sit yesterday and do this. What are the differences between the three reports, the November, March, and May? I feel, I'll tell you my initial instinct is, yes, I think it's fair game for Gibbons to criticize the FDA and perhaps even do some of his own work, but I thought November would be the end of it, and then I see March, and then I see May. I feel like I gave an inch and you took a mile. That's what sort of the concern I have. What was May all about?
>
> MR. BARNES: The scenario would be November and March.
>
> THE COURT: And what's May? I saw a report in May.
>
> MR. BARNES: It's May of 2008, which was before the first –

Finkelstein Decl., Ex. B at 42, 43.

Moreover, the Court stated its concern that there were inconsistent statements in the various supplemental and the expert reports which were submitted by Dr. Gibbons. Further, the Court made it clear to both parties that it was not satisfied that Dr. Gibbons was permitted to change and submit supplemental reports without bringing it to the attention of the Court sooner:

> THE COURT: I know, but he can't say one thing in one place and one in another. So one thing I'm going to be asking him is, he says in the paper -- I put a big square under the star -- "possible." And he says in the other one "clear evidence" or words to that effect. So what I'm worried about is -- I'm really worried about it. You can definitely refer in your opening to him, you know, this world-renowned awarded biostatistician who refutes the FDA's findings and explained lamotrigine and Topiramate and why they're disproportionate, and why if you carve those out, there's no differential. But I am worried that I've got so many iterations of what his opinion is -- I have to tell you I hate doing this at the last minute like this. And I was really looking hard to find fault with one or the other so I could rule with that, but actually there's fault on both sides; that I didn't hear about it till two weeks ago and that you kept changing it. So I think it's a pox on both your

3

houses, but it leaves me with a bind in trying to figure out what the right thing to do is.

Finkelstein Decl., Ex. B at 45-46.

Moreover, from the Court's admonitions at the July 20, 2009 pre-trial conference, Defendants were clearly on notice that the Court was hesitant to admit the supplemental reports that were submitted and before the Court at that late date:

> MR. ALTMAN:   Your Honor, one of the issues is whether Dr. Gibbons' supplemental report exceeds the scope of the Court's order in the first place, which has never been clear.  Your Honor said that --
>
> THE COURT:  I allowed that November report, and so to the extent there's new stuff in the March, that may go beyond it.  But it looked when I was reading it as if all he did was -- it wasn't new as much as a sensitivity analysis.

Finkelstein Decl., Ex. B at 48.

On January 8, 2010, Defendants served yet another supplemental report by their expert Dr. Gibbons (Finkelstein Decl., Ex. A), that clearly exceeds the Court's order which limited this expert to critiquing the FDA Alert.

## ARGUMENT

Rule 26 of the Federal Rules of Civil Procedure requires timely disclosure of the data or other information considered by expert witnesses as well as a complete statement of opinions, the bases, and reasons for them.  Fed. R. Civ. P. 26(a)(2).  The duty to supplement expert disclosures extends both to data and to information given in the expert's deposition.  Rule 26 (e) (2).  The failure to supplement requires exclusion of the evidence by the self-executing provisions of Rule 37( c)(1).  Rule 37 was promulgated to be "self-executing" in order to produce a strong inducement for disclosure of documents and information.  Fed. R. Civ. P. 37 Advisory Comm. Note (1993).  It is the law of the First Circuit that where a party has proffered expert testimony after the original date set for the disclosure of expert testimony, the "required

4

sanction in the ordinary course is mandatory preclusion," *Gagnon v. Teledyne Princeton, Inc.,* 437 F.3d 188, 191 (1st Cir. 2006).  In *Dufresne v. Microsoft Corp.*, Special Master John F. Sweeney excluded a supplemental report of an expert, noting that a party is "not entitled to a 'placeholder' to 'reserve the right' to opine . . . in a later round of expert reports."  No. 02-11778-RCL, 2006 U.S. Dist. LEXIS 57423 at *22 (D. Mass. Apr. 28, 2006).  Special Master Sweeney noted that "the vast majority of support appears to come from materials that were in PL Plaintiff's possession at the time of the original exchange of report."  *Id.* at *25.  In *Sheek v. Asia Badger, Inc.,* the First Circuit affirmed the trial court's decision to strike portions of an expert's testimony for failure to comply with the mandates of Rule 26 in regard to the expert disclosure in question. 235 F.3d 687, 693-94 (1st Cir. 2000).  In *Lubanski v. Coleco Indus., Inc.,* the First Circuit affirmed the trial court's exclusion of plaintiff's rebuttal evidence where the evidence was available to the plaintiff during her case in chief and the testimony that the defendant was seeking to rebut was not unexpected.  929 F.2d 42, 47 (1st Cir. 1991).

At the pre-trial hearing on July 20, 2009, the Court placed Defendants on notice regarding the supplemental reports of Dr. Gibbons which were already served at that time:  "I gave an inch and you took a mile."  However, Defendants have failed to take heed of the Court's admonitions and again have provided another supplemental expert report by Dr. Gibbons on general causation.  The time for expert disclosure on general causation has long since lapsed, more than two years after the original deadline in December 2007.  Moreover, all of the opinions set forth in this new supplemental report by Dr. Gibbons are based on data that was available to Defendants at the time of Dr. Gibbons' original disclosure — which itself was supplemented on several occasions with new opinions on general causation without requesting leave from the Court.

There is no justification for Defendants' flagrant disregard for the discovery process or the admonitions of the Court. Plaintiffs therefore request that the Court strike Dr. Gibbons' January 2010 Supplemental Report.

Dated: January 14, 2010                           Respectfully submitted,

                                                  ***Members of Products Liability***
                                                  ***Plaintiffs' Steering Committee***


                                      By:     **/s/ Andrew G. Finkelstein**
                                              Andrew G. Finkelstein, Esquire
                                              Finkelstein & Partners, LLP
                                              1279 Route 300, P.O. Box 1111
                                              Newburgh, NY  12551


                                      By:     **/s/ Jack W. London**
                                              Jack W. London, Esquire
                                              Law Offices of Jack W. London
                                                & Associates
                                              3701 Bee Cave Road, Suite 200
                                              Austin, TX  78746


## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on January 14, 2010.


Dated:  January 14, 2010


                                           **/s/ Andrew G. Finkelstein**
                                           Andrew G. Finkelstein