UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin<br><br>**UNREDACTED VERSION FILED UNDER SEAL** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
EMERGENCY MOTION FOR CONTINUED DEPOSITION OF
NICHOLAS WIEDER AND ADDITIONAL RELIEF**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum of law in support of their Emergency Motion for Continued Deposition of Nicholas Wieder and Additional Relief.

**PRELIMINARY STATEMENT**

In opposition to Pfizer's motion for summary judgment, Kaiser offered a declaration from Dr. Nicholas Wieder in which he stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Exh. A, Wieder Decl. ¶ 8.)

He further stated: "Had I known at that time that Neurontin was no more effective and did not have a better safety profile than existing, less expensive treatments for reflex sympathetic dystrophy and neuropathic pain, I would not have recommended that the [sic] expansion of the formulary status of Neurontin in 1997 or again in 1999." (*Id.* ¶ 9.)   This Court specifically relied upon Dr. Wieder's declaration in denying Pfizer's motion for summary judgment as to Kaiser. (Mem. & Order [2309] at 8.)

On November 12, 2009, this Court entered a Procedural Order, setting this case for trial on February 22, 2010 and permitting the deposition of any person identified as a witness for the first time in summary judgment papers. (Procedural Order [2172] ¶ 4.)  Pursuant to this Court's

order, Pfizer sought the deposition of Dr. Wieder and promptly noticed his deposition for December 18, 2009.[1]  Kaiser refused to produce Dr. Wieder for deposition, making the wholly untenable argument that Pfizer was not entitled to depose him because Kaiser had not listed him as a trial witness,[2] forcing Pfizer to move to compel Dr. Wieder's deposition.[3]  On December 17, 2009, the Court granted Pfizer's motion as to Dr. Wieder.  (December 17, 2009 docket entry.)

After causing unjustified delay in scheduling of Dr. Wieder's deposition, Kaiser refused to make him available until January 12, 2010, due to a pre-planned vacation.  When Pfizer was finally able to deposed Dr. Wieder, the obstructionist tactics of Kaiser's counsel prevented Pfizer from taking a full and fair deposition of Dr. Wieder.  In particular, counsel for Pfizer sought to question Dr. Wieder regarding websites maintained by Kaiser and on which it provides information to its members about various drugs and medical conditions.

More specifically, Kaiser's website contains information articles written by Healthwise, a not-for-profit organization focused solely on "developing consumer health content to help people make health decisions." (Exhibit G.) In 1999, Kaiser partnered with Healthwise to develop information to educate Kaiser's members about various diseases and conditions and the drugs and other therapies available to treat them.  (Exhibit F.)  As a result of this partnership, Kaiser's website, which purports to provide its members with interactive tools and other resources so that its members can live healthier lives (Exhibit D), contains numerous articles where it recommends the use of anticonvulsants, including Neurontin and gabapentin, for treatment of chronic pain, cancer pain, and other conditions.  (Exhibits C & D.)

For example, if a Kaiser member clicked on the "Drugs and natural medicines" link of the Health and Wellness tab on Kaiser's site, he or she would be taken to a Kaiser Permanente

---

[1] Exhibit A [2244-2] to Def. Mem. in Support of Emergency M. to Compel Depositions of Kaiser Witnesses [2244].

[2] Exhibit G [2244-8] to Def. Mem. in Support of Emergency M. to Compel Depositions of Kaiser Witnesses [2244].

[3] Def. Emergency M. To Compel Depositions Of Kaiser Witnesses [2243].

page that reads: "Look up prescription and nonprescription drugs, vitamins, herbs, and other dietary supplements, including how to use them, side effects, interactions, and more." (Exhibit D)   A click on this page takes a Kaiser patient-subscriber to Kaiser's "drug encyclopedia," where patients can find information on medications. (*Id.*)  Someone who clicked on "Pain Originating From a Nerve" under "Conditions: P" in the Drug Encyclopedia would be taken to a page that reads as follows:

> **Drugs for managing Pain Originating From a Nerve**
> Please click on a drug name to see more information
> - Gabapentin Oral
> - Neurontin Oral

(*Id.*)  These are the ***only*** two drugs listed in Kaiser's Drug Encyclopedia under "Pain Originating from a Nerve."

But when Pfizer's counsel sought to question Dr. Wieder on these statements made on Kaiser's website to its members to assist them in making healthcare decisions – statements wholly inconsistent with the positions taken by Kaiser in this litigation – Kaiser's counsel refused to allow the witness to even look at Kaiser's website on a computer screen connected to the internet and instructed him not to answer questions about articles that appeared on Kaiser's website.  Counsel's motivations in taking the unprecedented and unsupportable step of directing his client not to even gaze at the Kaiser's publicly available website are as transparent as they are troubling.  The allegations made by Kaiser to this Court regarding the inefficacy of Neurontin – allegations that it hopes to repeat in front of a jury far removed from its patient base – are irreconcilable with the physician-authored articles on its website encouraging Kaiser's 9 million members to discuss with their physicians the use of Neurontin or gabapentin for the treatment of various conditions including chronic pain.  In short, Kaiser tells this Court one thing and its doctors and patients another.[4]  Faced with the prospect of a Kaiser board-certified physician

---

[4] Pfizer has filed this motion under seal in order to comply with the Protective Order in this action. However, the matters discussed in this motion are plainly not proprietary and there is no legitimate reason for Kaiser to designate them "Confidential."  Pfizer sought Kaiser's consent to publicly file this motion, rather than partially under seal, but Kaiser refused. ██████████████████████

*(cont'd)*

specializing in pain management having to admit that Kaiser is either misleading this Court or misleading its patients, Kaiser's counsel's sought to cut-off this line of questioning.



The actions of Kaiser's counsel in instructing Dr. Wieder not to answer questions was wholly improper and, as a result, Pfizer should be allowed to resume Dr. Wieder's deposition at Kaiser's cost and in a location convenient for Pfizer's counsel. In addition, Dr. Wieder's declaration should be stricken.

## ARGUMENT

### I.     Plaintiffs Should Be Ordered To Produce Dr. Wieder For A Continued Deposition To Respond To Questions That He Was Improperly Instructed Not To Answer



_____
*(cont'd from previous page)*

[5] Excerpts from the rough transcript of Dr. Wieder's deposition are attached as Exhibit B to the Declaration of Mark. S. Cheffo.







The discomfiture of Kaiser's attorneys is, perhaps, understandable given that Kaiser's website contains numerous statements that directly contradict the allegations being asserted by Kaiser in this lawsuit.   Notwithstanding efforts by counsel for Kaiser to obstruct Pfizer's questioning of the witness, Pfizer's counsel showed Dr. Wieder printouts previously obtained from Kaiser's website where Kaiser recommended the use of anticonvulsants, including Neurontin and gabapentin, for treatment of chronic pain, neuropathic pain and other syndromes.





the articles do not appear on Healthwise's website, but Kaiser's.  These are not links to a completely different website; each click takes the reader to another page within Kaiser's website.   Kaiser clearly chose to put the information ▓ on its website and to provide that information to its patient-subscribers.  Indeed, any Kaiser patient clicking on the "Health & Wellness" tab on the Kaiser website is greeted with the following message:  "Live healthy.  Discover information, interactive tools, and other resources to help you live healthier." (Exhibit D.)  Under the same tab, they are directed to Kaiser's "Health Encyclopedia," where they can "[r]esearch health conditions for information on prevention, treatment options, and more."  (*Id.*)

█████████

Kaiser teamed up with Healthwise in 1999 "to help 8.5 million Kaiser Permanente members make better health decisions."  (Exhibit F.)   Announcing their partnership, Kaiser stated:  "'The results of our pilot demonstrated that providing Healthwise self-care information increased member satisfaction, improved member access to Kaiser Permanente services and increased member confidence in making medical decisions. . . .   With that kind of success, it made good sense to integrate the Healthwise information into all our member health education initiatives."  (*Id.*)  Kaiser Permanente members are provided with the Healthwise handbook, a special edition reviewed by over 300 Kaiser Permanente physicians and staff and customized for Kaiser members.   (*Id.*)   A Kaiser member who clicks on the "How this information was developed" link at the end of a Healthwise article is directed to another article on the Kaiser website entitled, "Healthwise helps you make better health decisions."  (Exhibit E.)  The article includes stories titled "Patricia used the Healthwise Knowledgebase to save her own life" and "World-class heart doctor Robert Kloner, MD, PhD, is in your corner."  (*Id.*)  Kaiser patient-subscribers are told that "Robert Kloner is one of 295 experts who review Healthwise information *for accuracy and currency*.  He helps us help you make better health decisions on heart-related issues."  (*Id.*, emphasis added.)  Healthwise reports that its information is:

- **Evidence-based**:  Unifies the best medical science to be used in combination with clinical expertise and patients' personal preferences.

- **Reviewed by experts**:   Ensures high-quality, credible consumer health content.

- **Referenced**:  Identifies gold-standard medical textbooks and journals that are the basis of our content.

- **Up to date**:  Keeps pace with changes in medical science.

(Exhibit G.)  The article on Anticonvulsants for Chronic Pain, for example, was reviewed by no less than five physicians:  the author, two editors, a primary medical reviewer and a specialist medical reviewer.  (Exhibit D.)

████████████████████████████████████████████████









Due to the objections and instructions not to answer interposed by Kaiser's counsel, Pfizer was precluded from fully exploring this topic with Dr. Wieder at this deposition. It was clearly improper for Kaiser's counsel to instruct Dr. Wieder not to respond to questions. Federal Rule of Civil Procedure 30 provides:

> An objection at the time of the examination – whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition – must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2). The rules do not permit an attorney to instruct a witness not to answer on the ground that the attorney thinks his opponent's questions are "silly," as Kaiser's counsel did here.[7] "None of the reasons given by counsel . . . for instructing the witness not to answer

---



[7] Research has found no cases where a court held that it was proper to instruct a witness not to look at an internet site or to answer questions about an internet site.

fall within the category where an answer would cause some serious harm, i.e. the answer would reveal trade secrets, privileged material, or other confidential material." *Paparelli v. Prudential Ins. Co. of Am.*, 108 F.R.D. 727, 731 (D. Mass. 1985); *see also Calzaturficio S.C.A.R.P.A. S.P.A., v. Fabiano Shoe Co.*, 201 F.R.D. 33, 40 (D. Mass. 2001) (noting that counsel was not entitled to instruct a witness not to answer questions).   Kaiser's counsel did not interpose a privilege objection to any of the questions, nor did he raise any issues regarding trade secrets or confidentiality.   Pfizer does not believe the its questions called for confidential information (*see* note 4), but even it they had, it still be insufficient reason to instruct a witness not to answer where this Court has already entered a protective order governing the discovery of proprietary information.   In any event, Counsel's remedy under the rule was to seek an immediate protective order, not to resort to self help. *See Paparelli*, 108 F.R.D. at 731; *Calzaturficio*, 201 F.R.D. at 40.

Counsel's wholly improper instructions to the witness precluded Pfizer's counsel from thoroughly questioning Dr. Wieder on inconsistencies between the public statements on Kaiser's websites and its allegations in this litigation.   Pfizer's opportunity to depose the witness was further impaired when the witness left immediately after Kaiser's counsel concluded his questions (which consumed almost 90 minutes of deposition time) and Pfizer's counsel was not permitted to ask even ten minutes of follow-up questions.   (Wieder Dep. at 523:18-524:24.)   It is no answer for Kaiser to invoke the seven-hour limitation on depositions when Kaiser's counsel impeded Pfizer's attorney from asking questions and obtaining direct answers from the witness, deposition time was taken up discussing wholly improper objections by counsel, Kaiser's attorneys made numerous speaking objections (*e.g.*, Wieder Dep. at 39:5-13, 41-5-9, 51:20-22, 99:18-100:12), and the witness provided rambling and non-responsive testimony (*e.g.*, *id.* at 405:13-408:16).   Rule 30 provides that "[t]he court *must* allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination."   Fed. R. Civ. P.  30(d)(1)(emphasis added).   Here, fairness requires that Pfizer be allowed additional time to complete its examination of Dr. Wieder.

It would not be a sufficient remedy for Kaiser to concede authenticity of articles appearing at specific web addresses (URLs) now.  Pfizer also sought to question Dr. Wieder about the content of such websites.  Accordingly, Pfizer seeks the following relief:

(1)     Plaintiffs should be required to produce Dr. Wieder for an additional two hours for the continuation of his deposition.

(2)     Kaiser should be required to reimburse Pfizer for expenses and attorneys' fees incurred in connection with the continued deposition of Dr. Wieder.

(3)     The continued deposition of Dr. Wieder should take place in New York or Boston. With respect to the location of the deposition, reimbursement of costs is insufficient remedy.  Given that the need to continue the deposition was caused solely by the conduct of Kaiser's counsel, Pfizer's attorneys should not have to spend nearly two days traveling to and from California while Pfizer's counsel are preparing for trial.

(4)     Kaiser should be required to identify for Pfizer's counsel the URLs of all websites through which Kaiser provides information to its members and provide counsel for Pfizer access to the password protected portions of those websites.  For example, Pfizer's counsel is aware of the website kaiserpermante.org (or kp.org), but they may be others.  Some articles are available to the public; others appear only as an abstract and direct the viewer to log-in to read the complete articles. There is no legitimate reason not to provide Pfizer's counsel with access to medical articles published on Kaiser's website.[8]

(5)     ██████████████████████████████████████

_____

[8] Pfizer is not, by this motion, seeking any personal information about Kaiser patients or Kaiser financial information.



(6)            Kaiser should be directed to take steps to preserve the content on its

websites as it existed on January 11, 2010, before making any alterations.

## II.    The Declaration Of Dr. Wieder Submitted By Kaiser In Opposition To Summary Judgment Should Be Stricken

In his declaration, offered by Kaiser in opposition to Pfizer's motion for summary

judgment, Dr. Wieder declared under penalty of perjury as follows:







---

[9] In fact, one wonders why the P&T Committee was soliciting the "personal opinions" of treating physicians when Kaiser has taken the position in this lawsuit that these types of decisions can only be based upon the existence of double-blind, randomized clinical trials and that no consideration should be given to clinician experience.





## **CONCLUSION**

For all of the forgoing reasons, Pfizer requests that this Court issue an order granting the relief sought in Pfizer's motion:

Dated: January 18, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:    /s/ Mark S. Cheffo
        Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:    /s/ Raoul D. Kennedy
        Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel:  (415) 984-6400

-and-

WHEELER TRIGG O'DONNELL LLP

By:    <u>/s/ James E. Hooper</u>
        James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel:  (303) 244-1800

-and-

WHITE AND WILLIAMS LLP

By:    <u>/s/ David B. Chaffin</u>
        David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 18, 2010.

<u>/s/ David B. Chaffin</u>
David B. Chaffin