UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin<br><br>**UNREDACTED VERSION**<br>**FILED UNDER SEAL** |

### DEFENDANTS' OPPOSITION TO KAISER'S MOTION IN LIMINE TO EXCLUDE DR. ARROWSMITH-LOWE'S TESTIMONY ON FOREIGN REGULATORY ACTIONS AND ABSENCE OF U.S. REGULATORY ACTIONS

Defendants, Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum of law in opposition to Plaintiffs' motion in limine to exclude Dr. Arrowsmith-Lowe's testimony about foreign regulatory actions regarding Neurontin and the "absence of action by the FDA."

### PRELIMINARY STATEMENT

Kaiser challenges two discrete portions of Dr. Arrowsmith-Lowe's proposed testimony. First, Kaiser argues that testimony regarding foreign regulatory approval of Neurontin for pertinent off-label conditions is irrelevant and unduly prejudicial. To the contrary, it is undisputed that foreign regulatory approval is relevant to the issue of causation because it can generate "word of mouth" that can prompt American doctors to prescribe Neurontin off-label for reasons unrelated to any fraudulent marketing. Kaiser's strawman arguments do not even address the issue of causation, let alone explain how this evidence could be deemed irrelevant to this essential element of Kaiser's claims.

Second, Kaiser challenges Dr. Arrowsmith-Lowe's proposed testimony that, by 2002, the FDA had explicitly recognized that Neurontin was widely used off-label, and could have taken various remedial actions if it believed that Neurontin was ineffective for these uses, but that the

FDA took no such actions. Again, Kaiser's strawman arguments ignore the real import of this evidence, which is to rebut Kaiser's own misleading argument that FDA-approved drugs are presumed ineffective for off-label uses, and to rebut Kaiser's own inflammatory rhetoric comparing the off-label use of FDA-approved drugs to "snake oil."

## ARGUMENT

I.  **Evidence of Foreign Regulatory Approval of Neurontin Is Relevant and Admissible to Rebut Causation**

The relevance of foreign regulatory approval of Neurontin for pertinent off-label indications is beyond any serious dispute, having already been recognized by this Court and conceded by Plaintiffs' causation expert and Plaintiffs' counsel. Under Federal Rule of Evidence ("FRE") 402, "[a]ll relevant evidence is admissible" unless restricted by another rule. Fed. R. Evid. 402. Evidence is "relevant" if it has "'any tendency to make the existence'" of any material fact "'more probable or less probable than it would be without the evidence.'" *Iacobucci v. Boulter*, 193 F.3d 14, 20 (1st Cir. 1999) (quoting Fed. R. Evid. 401). The evidence in question easily satisfies this standard.



Indeed, as this Court has recognized, Prof. Rosenthal did not account for any variables at all except promotional expenditure. *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 330-31 (D. Mass. 2009). (*See also* Mem. Supp. Defs. Mot. to Exclude Test. of Rosenthal [2317] at §§ I.A, II.A.)

Assuming *arguendo* that Prof. Rosenthal's failure to account for variables other than promotional expenditure does not render her opinions inadmissible, Pfizer would plainly be entitled to cross-examine Prof. Rosenthal regarding foreign regulatory approvals that she admits are a potential cause of off-label Neurontin prescriptions, but which her model fails to take into account.[1]

Further, regardless of the admissibility of Prof. Rosenthal's testimony, Pfizer is entitled to introduce other evidence to rebut Plaintiffs' theory of causation, including evidence of factors other than promotion that can influence prescribing decisions. This Court and Class Plaintiffs' counsel – who are also of-counsel to Kaiser – have likewise recognized that foreign regulatory approval is highly relevant because it can generate "word of mouth" that can prompt American doctors to prescribe Neurontin off-label for reasons unrelated to any fraudulent marketing.

> THE COURT: And also wasn't for some of that, in Europe, it was approved for some indications that weren't approved here, so there could have been word of mouth? I mean, it was harder for that, right?
>
> MR. HIMMELSTEIN: Yes.
>
> THE COURT: That's why you dropped everything in your class cert petition except bipolar?
>
> MR. HIMMELSTEIN: Well, we thought that was our strongest claim.
>
> THE COURT: Yes.

(9/18/09 Hearing Tr. [2114] at 81:5-14.)

Kaiser attacks a strawman by suggesting that evidence of foreign regulatory approval could relate only to "whether Defendants improperly marketed Neurontin in the United States." (Pl. Mem. at 4.) Initially, it bears noting that the FDA itself considered these foreign approvals to be "Relevant Information" when it considered and ultimately approved Neurontin for the

---

[1] *See, e.g., United States v. Dube*, 520 F.2d 250, 252 & n.1 (1st Cir. 1975) ("expert testimony is not conclusive … and it may be rebutted in various ways," *e.g.*, by "'showing the incorrectness or inadequacy of the factual assumptions upon which the opinion is based'" (citations omitted)); *Standard Oil Co. v. Moore*, 251 F.2d 188, 222 (9th Cir. 1957) ("Wide latitude in cross-examination [of experts] should be allowed.").

3

management of postherpetic neuralgia in adults.[2] While Pfizer denies that it engaged in the widespread off-label marketing suggested by Plaintiffs, it has never suggested that foreign regulatory approvals demonstrate that Pfizer's marketing complied with FDA regulations.[3] Nor has Pfizer ever suggested that foreign regulatory approvals demonstrate Neurontin's efficacy under the standard required for FDA approval for on-label indications.[4] Instead, as Kaiser well knows, Pfizer is proffering this evidence to defeat the essential element of causation. Pfizer emphasized the impact of this evidence on causation throughout its Federal Rule of Civil Procedure 56.1 statements,[5] and the Court specifically discussed this issue during the summary judgment hearing (9/18/09 Hearing Tr. [2114] at 81:5-14). Yet, in speciously arguing that this evidence is irrelevant to any issue in the case, Kaiser does not even mention causation. Kaiser's inability to respond to Pfizer's actual arguments clearly demonstrates that this motion is meritless.

Kaiser's reliance on *In re Seroquel Products Liability Litigation*, 601 F. Supp. 2d 1313 (M.D. Fla. 2009), is misplaced. In *Seroquel*, the products liability plaintiffs sought to introduce

---

[2] Sharon Hertz, M.D., *Review and Evaluation of Clinical Data*, at § 1.4, FDA Ctr. For Drug Evaluation and Research (May 24, 2002) (Cheffo Decl., Exh. B).

[3] The issue for liability purposes is not whether Pfizer complied with FDA regulations, but whether "defendants' representations were false." *See In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 92 & n.6 (D. Mass 2007) (holding that there is no private right of action for "off-label marketing" that allegedly violates federal law).

[4] Any suggestion that the efficacy issues in this case are governed by the same standard required for FDA approval for on-label indications, and any attempt to shift the burden of proof to Pfizer to demonstrate Neurontin's efficacy for the relevant off-label uses under that standard, must be rejected. Beyond the fact that no private right of action exists, the FDA itself recognizes that drugs can be effective in some patients even where evidence sufficient for FDA approval does not exist, and permits physicians to prescribe drugs off-label because it advances an important public policy. *See* 21 U.S.C. § 396 ("Nothing in this chapter shall be construed to limit or interfere with the authority of a health care practitioner to prescribe or administer any legally marketed device to a patient for any condition or disease within a legitimate health care practitioner-patient relationship."); *see also Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 692 (2d Cir. 1994) ("[T]he FDA permits doctors to prescribe drugs for 'off-label' uses."); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001) ("[T]he 'FDA itself recogniz[es] the value and propriety of off-label use.'" (citation omitted)).

[5] *See* Defs. Resp. to Coord. TPP Pls. Counterstatement of Disp. and Undisp. Facts [1789] at ¶ 39; Defs. Resp. to Class Statement of Disp. and Undisp. Mat. Facts [1787] at ¶¶ 37, 171, 205, 618, 697, 779-805.

4

evidence regarding various foreign regulatory actions in order to demonstrate the defendant's alleged "knowledge and scienter" regarding the drug's potentially dangerous side effects. *See id.* at 1316. But the foreign regulatory actions were based on the same adverse event data already known to the defendant and the FDA. *See id.* at 1314-16. Because the defendant did not challenge the admissibility of the adverse event data itself, the court agreed with the defendant's argument that foreign regulators' interpretation of that same data "'adds nothing to the question of notice.'" *Id.* at 1315 (citation omitted). And while the *Seroquel* plaintiffs insisted that they were not seeking to introduce evidence of foreign regulatory or legal standards, *see id.* at 1316, the only thing foreign regulators' interpretations of the adverse event data could show would be the application of "foreign legal standards" to that data. *Id.*

This case is not remotely comparable. Here, evidence of foreign regulatory approval is not cumulative because Pfizer is not offering it as evidence of otherwise admissible underlying data. Pfizer is instead offering this evidence to rebut causation in light of the undisputed fact that foreign regulatory approval can have an impact on American doctors' prescribing behavior that is wholly distinct from the impact of the underlying data itself. ███████████████████████████████████████████████████████████████████████████████████████████████; 9/18/09 Hearing Tr. [2114] at 81:5-14.) Accordingly, Pfizer's ability to "introduce[e] evidence regarding the information submitted to the foreign regulators" (Pl. Mem. at 4-5) would not suffice. Nor does relevance depend upon the particular standards applied by foreign regulators, because Pfizer is not offering this evidence to demonstrate the proper interpretation of otherwise admissible underlying data. Regardless of *why* foreign regulators approved Neurontin for relevant off-label uses, the simple *fact* that they did so rebuts causation because it is undisputed that foreign regulatory approval can influence American doctors' prescribing decisions.

Kaiser's FRE 403 arguments must also be rejected. As the First Circuit has repeatedly held, "all relevant evidence is in some sense prejudicial because it leads the jury to find a material fact more or less likely." *United States v. Jimenez*, 507 F.3d 13, 18 (1st Cir. 2007); *see also, e.g., Faigin v. Kelly*, 184 F.3d 67, 82 (1st Cir. 1999) ("To be sure, the evidence was

5

prejudicial in the sense that it hurt [plaintiff's] chances of prevailing at trial. But that kind of prejudice is not a basis for judicial exclusion of probative evidence. . . . The question is one of *unfair* prejudice – and we see none here." (citation omitted)). "[T]he Rule 403 analysis is confined to 'unfair' prejudice, and the scales do not tip in favor of exclusion unless the probative value is 'substantially outweighed.'" *Jimenez*, 507 F.3d at 18 (quoting the rule).

Like Kaiser's relevance arguments, Kaiser's FRE 403 arguments address the wrong issue: "[whether] Defendants' marketing practices violated United States law." (Pl. Mem. at 1.) As discussed above, this strawman argument ignores the real import of this evidence, which goes to causation, not to the legality of Pfizer's alleged marketing practices. Likewise, Kaiser argues that, if evidence of foreign regulatory approvals is introduced, Kaiser would be "require[d] . . . to introduce evidence regarding the regulatory schemes and decision-making processes of seven different countries, in addition to the United States." (*Id.*) In reality, there would be no need to introduce evidence regarding foreign regulators' "decision-making processes" because it is undisputed that the simple fact these approvals occurred can influence American doctors' prescribing decisions.

For all of these reasons, Kaiser's motion to exclude evidence regarding foreign regulatory approval of Neurontin should be denied.

## II. Evidence Regarding Actions the FDA Could Have Taken Is Admissible to Rebut the Argument That FDA-Approved Drugs Are Presumed Ineffective for Off-Label Uses

Kaiser challenges Dr. Arrowsmith-Lowe's proposed testimony regarding certain clearly-defined regulatory powers of the FDA. Kaiser does not dispute Dr. Arrowsmith-Lowe's extensive expertise regarding these regulatory powers, which she acquired during her "11 years of experience with the [FDA]." (12/12/08 Arrowsmith-Lowe Report at 1.) Instead, Kaiser argues that this testimony is "hearsay, not probative, and prejudicial." (Pl. Mem. at 1-2.)

Beyond this conclusory statement, Kaiser never explains why this testimony is purportedly "hearsay" or "not probative," nor does Kaiser cite any authority for excluding the evidence on these grounds. Accordingly, the Court should reject these arguments just as

summarily as Kaiser raised and then dropped them.[6] The only objection Kaiser even attempts to support – with two paragraphs of argument and one inapposite legal citation – is that the evidence would be "more prejudicial than probative." (Pl. Mem. at 5.) This argument must also be rejected because it mischaracterizes Dr. Arrowsmith-Lowe's report and ignores the real reason Pfizer seeks to introduce her testimony on this issue.

Throughout this litigation, Plaintiffs have incorrectly argued that FDA-approved drugs are presumed ineffective for off-label uses in the absence of positive double-blind randomized controlled trials that would support a finding of efficacy for those uses under the FDA standards governing on-label indications. Indeed, Class Plaintiffs explicitly cited "the FDA's comments, reviews, and rejections" as "evidence that Neurontin is ineffective" for the relevant off-label uses (Class Mem. Opp. Summ. J. [1754] at 12-13), and Kaiser adopted "all" Class Plaintiffs' arguments in its own briefing (Coord. Mem. Opp. Summ. J. [1744] at 1). Plaintiffs have gone so far as to argue that, in the absence of such "gold-standard" scientific evidence, the off-label use of FDA-approved drugs is comparable to "snake oil."[7] Plaintiffs clearly intend to present this highly prejudicial rhetoric and misleading argument to the jury through their attorneys' arguments and questions posed during direct and cross-examination. The challenged portion of Dr. Arrowsmith-Lowe's testimony is admissible to respond to Plaintiffs' inflammatory rhetoric and to rebut Plaintiffs' argument that FDA-approved drugs are presumed ineffective for off-label uses.

For example, Dr. Arrowsmith-Lowe cites regulations providing that, "'[i]f there is a common belief that the drug may be effective for a certain use or if there is a common use of the drug for a condition,'" but the "'preponderance of evidence'" fails to show efficacy or safety for that condition, the FDA may direct the manufacturer to change the product labeling to state that

---

[6] *See, e.g., United States v. City of North Adams, Mass.*, 777 F. Supp. 61, 65 n.4 (D. Mass. 1991) (stating that "the Court will not provide extensive discussion with regard to conclusory and unsupported objections").

[7] *See, e.g.*, 9/18/09 Hearing Tr. [2114] at 61:25-62:2.

7

there is a lack of evidence demonstrating safety or efficacy. (12/12/08 Arrowsmith-Lowe Report at 9 (quoting 21 C.F.R. §§ 201.57(e) (2005) & 201.57(c)(2)(ii) (2006).)[8] Dr. Arrowsmith-Lowe further cites undisputed evidence demonstrating that, by May 2002, the FDA had specifically found that "[Neurontin] has gained a reputation through off-label use for the treatment of neuropathic pain." (Cynthia G. McCormick, M.D., *Division Director Review and Basis for Approval Action*, at 1, FDA Ctr. For Drug Evaluation and Research (May 22, 2002) (Cheffo Decl., Exh. C), cited in 12/12/08 Arrowsmith-Lowe Report, at Exhibit C.)[9] In addition, the FDA had explicitly recognized that "Neurontin has been approved for the management of neuropathic pain in 34 countries." (Sharon Hertz, M.D., *Review and Evaluation of Clinical Data*, at § 1.4, FDA Ctr. For Drug Evaluation and Research (May 24, 2002) (Cheffo Decl., Exh. B).)

Based on the FDA's express regulatory authority and explicit finding that Neurontin is commonly believed to be effective for off-label use, and commonly used off-label, the FDA could have directed Pfizer to take certain actions if the FDA determined or presumed that there was *no* evidence of efficacy, including: (1) changing the product label to include specific warnings; (2) changing the product label to indicate the purported lack of evidence supporting safety or efficacy for off-label uses; or (3) issuing a public health alert or dear doctor letter to inform the medical community of the purported lack of efficacy evidence. (12/12/08 Arrowsmith-Lowe Report at 9.) "Nevertheless, the FDA took no such action in connection with

---

[8] Any hearsay challenge to Dr. Arrowsmith-Lowe's citation of these regulations would be utterly specious. Matters asserted in the form of federal regulations are law, not hearsay.

[9] Any hearsay challenge to Dr. Arrowsmith-Lowe's reliance on this document must be rejected. Beyond the fact that expert opinions may be based on hearsay of a type reasonably relied upon by experts in the relevant field, *see* Fed. R. Evid. 703, this document falls squarely within the public records exception to the hearsay rule, *see* Fed. R. Evid. 803(8). Dr. McCormick's *Division Director Review and Basis for Approval Action* qualifies for admission in its entirety because, on its face, it is a public agency record "setting forth . . . the activities of the office or agency." Fed. R. Evid. 803(8)(A). Moreover, Dr. McCormick's specific observation and fact finding that Neurontin "has gained a reputation through off-label use for the treatment of neuropathic pain" is independently admissible because it sets forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report," Fed. R. Evid. 803(8)(B), and "factual findings resulting from an investigation made pursuant to authority granted by law," Fed. R. Evid. 803(8)(C).

the 2002 approval for post-herpetic neuralgia and, to date, has not requested any such remedial measures." (*Id.*)

Contrary to Kaiser's strawman arguments, Pfizer does not cite this evidence to show that the FDA approved of Pfizer's alleged marketing practices. Indeed, Pfizer's marketing practices are completely irrelevant to this issue. The FDA's authority to take the actions discussed by Dr. Arrowsmith-Lowe is triggered by agency findings regarding "common belief[s]" about and "common use[s]" of drugs, without regard to how the drugs are marketed. *See* 21 C.F.R. §§ 201.57(e) (2005) & 201.57(c)(2)(ii) (2006). Likewise, Kaiser's argument and single inapposite authority holding that "[t]he FDA has limited resources" (Pl. Mem. at 5 (citing *Wyeth v. Levine*, 129 S. Ct. 1187, 1202 (2009))) are completely beside the point because the FDA ***actually found*** that Neurontin "has gained a reputation through off-label use for the treatment of neuropathic pain."[10] Without expending any additional "resources," that finding alone gave the FDA the authority to take any of the actions discussed by Dr. Arrowsmith-Lowe.

While there is ample scientific evidence of Neurontin's efficacy for relevant off-label conditions – as repeatedly recognized by Kaiser's own website, witnesses, and P&T Committees – Pfizer does not suggest that the FDA has made any such determination. The evidence is instead relevant to show that, contrary to Plaintiffs' repeated arguments, the FDA has never determined and does not presume that Neurontin is *ineffective* for treating off-label conditions. The FDA expressly recognized that Neurontin is widely used off-label, but declined to take any of the remedial actions it was explicitly authorized to take if it considered Neurontin ineffective or unsafe for these off-label conditions. This flatly refutes Plaintiffs' argument that FDA-approved drugs are presumed ineffective for off-label uses in the absence of scientific evidence that would satisfy FDA standards for approval for on-label indications.

This evidence is not "more prejudicial than probative." To the contrary, the evidence is

---

[10] Cynthia G. McCormick, M.D., *Division Director Review and Basis for Approval Action*, at 1, FDA Ctr. For Drug Evaluation and Research (May 22, 2002) (Cheffo Decl., Exh. C). In addition, the FDA has long been aware that Neurontin is commonly used for other off-label conditions.

9

necessary to rebut Plaintiffs' own prejudicial and inflammatory comparisons between off-label drug use and "snake oil," and to rebut Plaintiffs' legally invalid argument that Neurontin is presumed ineffective for off-label uses.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny the Plaintiffs' motion in limine to exclude testimony on foreign regulatory actions and absence of regulatory action by the FDA.

Dated: January 22, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:  /s/ Mark S. Cheffo
     Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

-and-

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:  /s/ Raoul D. Kennedy
     Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400

-and-

WHEELER TRIGG O'DONNELL LLP

By: /s/ James E. Hooper
James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800

-and-

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 22, 2010.

/s/ David B. Chaffin
David B. Chaffin

11