UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No.  1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS)<br><br>and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin<br><br>**REDACTED VERSION** |

**PLAINTIFF KAISER'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE PLAINTIFFS FROM
PRESENTING THE LIVE TESTIMONY OF PERMANENTE PHYSICIANS UNLESS
AND UNTIL PLAINTIFFS MAKE PERMANENTE PHYSICIANS
<u>AVAILABLE TO DEFENDANTS FOR LIVE TESTIMONY</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

I. INTRODUCTION ................................................................................................................. 1

II ARGUMENT ........................................................................................................................ 4

    A. The Physicians Employed by The Permanente Medical Groups Are Not
       Subject To The Control Of The Plaintiffs In This Action .................................................. 4

    B. The Availability Of Videotaped Testimony Is An Adequate Substitute For
       Live Testimony .................................................................................................................. 7

III. CONCLUSION..................................................................................................................... 8

## TABLE OF AUTHORITIES

PAGE

**Cases**

*Aalberg v. Plan 4 College, Inc.,*
No. CIV. A. 09-1393, 2009 WL 3698039 (M.D. Fla. Nov. 4, 2009) ........................................ 8

*De Modena v. Kaiser Foundation Health Plan, Inc.,*
743 F.2d 1388 (9th Cir. 1984) ................................................................................................... 6

*Ivy Soc'y Sports Group, Inc. v. Baloncesto Superior Nacional,*
No. CIV. A. 08 Civ. 8106, 2009 WL 2252116 (Jul. 28, 2009 S.D.N.Y.).................................. 8

*Johnsen, Fretty & Co. v. Lands South, LLC,*
526 F. Supp. 2d 307 (D. Conn. 2007)....................................................................................... 8

*R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc.,*
945 F.2d 269 (9th Cir. 1991) .................................................................................................... 1

*Reigel v. Kaiser Foundation Health Plan of North Carolina, Inc.,*
859 F. Supp. 963 (E.D.N.C. 1994) ....................................................................................... 2, 6

*Richter Cornbrooks Gribble Inc. v. BBH Design, P.A.,*
No. CIV. A.09-1711, 2009 WL 5108863 (Dec. 17, 2009) ....................................................... 8

*Symbol Techs, Inc. v. Metrologic Instruments,*
450 F. Supp.2d 676 (E.D. Tex. 2006)....................................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 45(c)(3)(A)(ii) .......................................................................................................... 1

## I.   **INTRODUCTION**

Federal Rule of Civil Procedure 45 is unambiguous.  This Court has no power to compel a person "who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person" to testify at trial. Fed. R. Civ. P. 45(c)(3)(A)(ii).  Both Plaintiffs and Defendants must live within the confines of this Rule, which is an unavoidable hurdle for all litigants in complex cases where the wrongdoing and impact affect a large number of actors located across the country.   Both Plaintiffs and Defendants anticipated that reality during discovery and procured videotaped deposition testimony of the witnesses each anticipated relying on at trial.

Defendants cite no authority for the unprecedented relief sought.  The general rule is that a party who calls a witness for live testimony must make *that witness* available to their adversary as well or face preclusion.  *R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc.*, 945 F.2d 269, 272-73 (9th Cir. 1991).  The Kaiser Plaintiffs[1] intend to adhere to that rule.  There is no corresponding rule that a party who calls a witness employed by a nonparty entity must make every other employee of that entity available for live testimony as well.  Such a rule would be unworkable and unfair, and its eleventh-hour imposition here would give Defendants a weapon to effectively gut the Kaiser Plaintiffs' case.

---

[1]  Plaintiffs are Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "the Kaiser Plaintiffs"). Kaiser Foundation Health Plan, Inc. is the parent company of the following companies and has brought this lawsuit on behalf of itself and its subsidiaries: Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio.

Defendants do not and cannot provide evidence that the witnesses at issue are under the Kaiser Plaintiffs' control.  As discussed below, the relationship between the Kaiser Plaintiffs and the Permanente Medical Groups ( the "PMGs") is a contractual one, and each entity maintains full authority over its own work force and operations. The three entities that are commonly grouped under the trade name "Kaiser Permanente" are bound together only "by virtue of a common goal of providing quality health care services and a contractual agreement to work together toward this common goal." *Reigel v. Kaiser Foundation Health Plan of North Carolina, Inc.*, 859 F. Supp. 963, 966 (E.D.N.C. 1994).

The Kaiser Plaintiffs exercise no authority over the PMG physicians, and cannot compel any of them to fly to Boston to testify. In building its own witness list, the Kaiser Plaintiffs confined their selection to those physicians who agreed months in advance to put their clinical practices on hold for the estimated three-day period of time that must be set aside to travel and testify at trial.  Any of the physicians could have refused, and in fact, Dr. Wieder has indicated to both parties that he would be very reluctant to make that accommodation for Kaiser. *See* Pages 14-15 of the Final Transcript of the Deposition of Nicolas Wieder, M.D., taken on January 12, 2010, annexed as Exhibit A to the Declaration of Elana Katcher, dated January 22, 2010.

Defendants fail to make any showing of unique prejudice here.  ***First,*** Defendants have their own relationships with several of the PMG physicians on their witness list, which they have effectively leveraged for their own benefit in the past.

# REDACTED

Dr Maizels is extensively referenced in a Pfizer employee's "self-assessment form" under the category of "maintenance

and further development of Neurontin and pregabelin supporters, including pain specialists."
Katcher Decl. Exh. C at Pfizer_THylan_0003544. This employee claimed to have cultivated a
relationship with Dr. Maizels, prepared him for a neuropathic pain presentation, assisted him
with the creation of an external research proposal, and worked with him on site visits and study
monitoring. *Id.* **Second,** Defendants incorrectly claim that "a number of the [defendant
designated] witnesses have not been deposed." In fact, Defendants have deposed Drs. Wieder,
Chandler, Danesh, Maizels, and McCarberg. Only Dr. Bertagnolli remains undeposed, but
Defendants never sought his deposition at any time during this litigation. Nor do Defendants
now specify what testimony they expect to receive from this undeposed witness, or why it is
proper to demand a nonparty witness fly across the country for a fishing expedition. **Third,** the
"prejudice" suffered by Defendants is directly paralleled by the prejudice suffered by the Kaiser
Plaintiffs, which have listed several employees of the medical marketing firms that Defendants
contracted with to assist in their fraudulent marketing campaign.[2] The testimony of these
witnesses is key to establishing the RICO conspiracy at issue here. Defendants have been an
extremely lucrative client for these firms, and the Kaiser Plaintiffs have very little hope of
obtaining their voluntary agreement to appear in Boston to testify against their client and thus
expect to make do with their deposition testimony. It would be inequitable to hold the Kaiser
Plaintiffs responsible for producing third-party witnesses listed on Defendants' witness list while
not requiring Defendants to leverage their own relationships to compel the appearance of the
third-party vendors listed on the Kaiser Plaintiffs' witness list.

---

[2] These witnesses include Clare Cheng, Bina O'Brien, Jennifer Samuels, Connor Smith, Stephen
Valerio, and Michael Vinegra. *See* Dkt. No. 2179.

## II.   ARGUMENT

### A.   The Physicians Employed By The Permanente Medical Groups Are Not Subject To The Control Of The Plaintiffs In This Action

Kaiser Foundation Health Plan, Inc. ("Health Plan") is a non-profit corporation which is licensed as a health care service plan and regulated by the California Department of Managed Health Care.   Health Plan enrolls members in individual and group health care plans, and, provides hospital and medical services for its members through contracts with the PMGs and Kaiser Foundation Hospitals ("Hospitals").   Zatkin Decl. ¶ 3.   Hospitals is a non-profit corporation which owns and operates hospitals in California and other states.   It owns and operates hospitals in California and other states.   Hospitals provides or arranges for hospital services for Health Plan. Zatkin Decl. ¶ 5.

# REDACTED

# REDACTED

Indeed, when pressed on this point by Defendants at his recent deposition, Dr. Wieder, one of the witnesses at issue here, indicated that a request from the Kaiser Plaintiffs would not serve as sufficient inducement for his testimony:

> **Q.**   If Kaiser asks you to come to Boston to testify at trial, would you do that?
>
> **A.**   I don't know.
>
> **Q.**   What would be the factors that would weigh into your decision?
>
> **A.**   Probably personal.
>
> **Q.**   To the extent that they, you know paid for you to come and worked around your schedule, would you do it?
>
> **A.**   I don't know.  This has been a big burden clinically I'm not an administrative physician so I have patients that I can't just tell them come back when I'm available.  I have to double book my schedule for each day that I'm here.  So its . . . a big hassle.  So I would have to see personally do I want my staff and myself to take that stress.  It would depend on that and my own personal schedule.

Katcher Decl. Exh. A at 14-15.

Defendants cite no case law in which the Health Plan or the Hospitals were found to control a PMG employee for purposes of compelling nonparty testimony, and the Kaiser Plaintiffs' own search has turned up no such precedent.  To the contrary, courts that have analyzed the relationship between the parties have found that PMG Physicians are not the employees of the Kaiser Plaintiffs, and that there is no control relationship between the entities.

In 1994, a physician formerly employed by The Carolina Permanente Medical Group, P.A. brought suit against both her former employer and the Kaiser Foundation Health Plan of North Carolina under the Americans with Disabilities Act. *Reigel,* 859 F.Supp. at 963. The Health Plan moved for summary judgment on the grounds that it "is a separate and distinct entity from the Medical Group and never acted as plaintiff's employer" and "plaintiff has at no time enjoyed a contractual relationship with the Health Plan." *Reigel* 859 F.Supp. at 966. The court granted summary judgment, holding that

> the Medical Group and the Health Plan were, at all times relevant hereto, separate and distinct entities, related only by virtue of a common goal of providing quality health care services and a contractual agreement to work together toward this common goal. The two entities at all time had distinct corporate offices, were managed and directed by different corporate boards and officers, and did not commingle or share responsibilities with respect to the management decisions of each other. The mere fact that, by virtue of the contractual arrangement between the Medical Group and the Health Plan, the two entities share a common trade name, "Kaiser Permanente," as well as legal resources and counsel does nothing to blur the distinction that exists with respect to the legal independence of identity of the two corporations.

*Id.* at 966.

In 1984, the Ninth Circuit analyzed the relationship between the Health Plan, the Hospitals, and the regional PMGs, and found that these entities are independent from each other. *See De Modena v. Kaiser Foundation Health Plan, Inc.*, 743 F.2d 1388 (9th Cir. 1984). In *De Modena*, retail pharmacies brought an antitrust suit against each of these entities pertaining to Kaiser's provision of pharmaceuticals to its members. *De Modena*, 743 F.2d at 1390. The district court granted summary judgment in favor of the Health Plan and the Hospitals, finding that these entities could not be held liable under the Robinson-Patman Act because each fell within an exception to that Act created by the Nonprofit Institutions Act. *Id.* at 1390. The plaintiffs appealed, arguing among other things that the Health Plan and the Hospitals are "not

really non-profit because they are controlled by Permanente Medical Groups, which are for-profit corporations consisting of doctors who provide medical care for members." *Id.* at 1391. The Ninth Circuit disagreed:

> The [Health Plans] pay the Medical Groups an agreed upon amount per member per month, and this amount does not vary with the volume of service the group provides to the membership. This fact greatly limits the amount of control the Medical Groups can exercise over the [Health Plans] *That the [Health Plans] and Kaiser Hospitals must fulfill their need for certain medical services by contracting with doctors who seek a profit does not make the [Health Plans] and Kaiser Hospitals themselves for profit organizations.* (Emphasis Added)

*Id.* at 1391.

Thus, there is no legal basis for the relief demanded by Defendants here.

## B.    The Availability Of Videotaped Testimony Is An Adequate Substitute For Live Testimony

The only case law cited by Defendants in support of the novel and extraordinary relief they request do not pertain to motions to exclude trial testimony, but pertain to motions to transfer made prior to the taking of discovery. The concentration of witnesses in a single location may well be a factor to consider in an early motion to transfer. However, in a complex case that has been brought to the eve of trial, where witnesses are located all over the country and where the parties have each procured videotaped deposition testimony in anticipation of its use at trial, much more of a showing of prejudice than has been offered here is required to justify transfer. Defendants have proffered a 59 item expected witness list, including placeholders for an unlimited number of "Kaiser insureds who were prescribed Neurontin between March 1995 and December 2004;" "[p]hysicians who prescribed Neurontin to Kaiser insureds between March 1995 and December 2004;" and "Kaiser insureds who were prescribed gabapentin after December 2004." *See* Dkt. No. 2180 at 8-9. Defendants cannot have any true intention of

-7-

calling each of these witnesses live in the time allotted. Under such circumstances, Defendants'
previously obtained videotaped deposition testimony should be deemed an adequate substitute
for live testimony of California-based nonparty witnesses. *See, e.g., Richter Cornbrooks Gribble
Inc. v. BBH Design, P.A.*, No. CIV. A.09-1711, 2009 WL 5108863, at *2 n8 (Dec. 17, 2009)
("That the non-party witnesses in North Carolina would be beyond the subpoena power of this
Court does not favor transfer because BBH has failed to show that video depositions or another
alternative to live testimony would be insufficient").[3]

## III.   CONCLUSION

For the reasons set forth above, Defendants' motion *in limine* to preclude the Kaiser
Plaintiffs from presenting the live testimony of PMG physicians unless and until the Kaiser
Plaintiffs make PMG physicians available to defendants for live testimony should be denied.

Dated: January 22, 2010                         Respectfully submitted,

                                                /s/ Linda P. Nussbaum_____
                                                Linda P. Nussbaum
                                                KAPLAN FOX & KILSEHIMER LLP
                                                850 Third Avenue, 14th Floor
                                                New York, New York 10022

                                                *Attorneys for Plaintiffs Kaiser Foundation
                                                Health Plan, Inc. and Kaiser Foundation
                                                Hospitals*

---

[3] *See also Aalberg v. Plan 4 College, Inc.*, No. CIV. A. 09-1393, 2009 WL 3698039, at *4 (M.D.
Fla. Nov. 4, 2009) (location of unwilling witnesses neutral where movant "has not shown that
these witnesses cannot be effectively presented by depositions"); *Ivy Soc'y Sports Group, Inc. v.
Baloncesto Superior Nacional*, No. CIV. A. 08 Civ. 8106, 2009 WL 2252116, at *8 (Jul. 28,
2009 S.D.N.Y.) (where the parties "do not explain that a deposition could not substitute for the
live testimony of the inconvenienced witness" the location of unwilling witnesses is neutral
factor in a transfer analysis) (citing cases); *Symbol Techs, Inc. v. Metrologic Instruments*, 450 F.
Supp. 2d 676, 678-79 (E.D. Tex. 2006) (because witnesses were likely to be scattered,
videotaped deposition is assumed to be an adequate substitute for compelled live testimony for
transfer analysis); *Johnsen, Fretty & Co. v. Lands South, LLC*, 526 F. Supp. 2d 307, 314 (D.
Conn. 2007) ("non-party witnesses who cannot be compelled to testify by subpoena can appear
at trial through a videotaped deposition").

*Of Counsel*:

Thomas Greene
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served

pursuant to Case Management Order #3 on January 22, 2010.

/s/  Elana Katcher
Elana Katcher