UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | |
| | Judge Patti B. Saris |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Magistrate Judge Leo T. Sorokin |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE*
TO EXCLUDE HEARSAY TESTIMONY OF DRS. FIELD AND ROTHSCHILD**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") respectfully submit this memorandum of law in opposition to Plaintiffs' motion *in limine* to exclude at trial any hearsay testimony of Drs. Field and Rothschild.

**PRELIMINARY STATEMENT**

Kaiser criticizes rebuttal experts Dr. Elizabeth Field and Dr. Anthony Rothschild for basing their opinions on, *inter alia*, the statements of witnesses with first-hand knowledge of the underlying facts. By contrast, Kaiser's own experts did not speak to any of the knowledgeable witnesses, and instead improperly speculate regarding both the underlying facts and these witnesses' purported thoughts and motivations. Likewise, Kaiser chose not to depose any of these witnesses, whose identities Kaiser has known for years.

Where experts lack first-hand knowledge of the facts on which their opinions are based, they not only can, but must, rely on the statements of witnesses who have such first-hand knowledge. Dr. Field's and Dr. Rothschild's consideration of these statements was perfectly appropriate under Federal Rule of Evidence ("FRE") 703, which permits experts to base their opinions on hearsay "of a type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703. Moreover, Dr. Field's and Dr. Rothschild's reports and proffered testimony demonstrate that Kaiser's experts' unfounded factual assumptions are directly contradicted by available information that Kaiser's experts failed to consider, which is one of the principal and

legitimate purposes of rebuttal expert testimony.

Kaiser's only basis for challenging Dr. Field's and Dr. Rothschild's consideration of these witness statements is to attack the credibility of the declarants. Beyond the fact that these credibility attacks are unsubstantiated – given Kaiser's failure to depose any of the declarants – no authority supports the exclusion of evidence based upon such credibility attacks. Sworn statements by witnesses with first-hand knowledge of the relevant facts are a "type" of evidence reasonably relied upon by experts in the relevant field – as Kaiser's own expert, Dr. Abramson, has acknowledged. At most, Kaiser's credibility arguments raise a classic jury question that merely goes to the weight – not the admissibility – of expert opinions based thereon.

In addition, while Pfizer does not intend to have Drs. Field and Rothschild simply recite these witness statements into the record without analysis, the statements may be disclosed to the jury – not for their truth, but to enable the jury to properly evaluate the parties' competing expert testimony.

## ARGUMENT

### I.   Kaiser's Motion Flies in the Face of FRE 702 and *Daubert*

The central premise of Kaiser's motion is that experts who offer opinions about the manner in which particular clinical studies were conducted and reported must not consider any statements made by the studies' designers, researchers, and authors – the only witnesses with first-hand knowledge of the relevant facts – and should instead base their opinions on rank speculation regarding the relevant facts, including the thoughts and motivations of, and purported influences on, the witnesses in question.

The law is precisely the opposite. As discussed more fully in Pfizer's motions *in limine* to exclude the opinion testimony of Dr. John Abramson [2308] and Dr. Kay Dickersin [2305], expert witnesses cannot base their opinions on their own view of facts as to which they have no first-hand knowledge. Thus, in *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004), the court held that "[p]laintiffs' experts are unqualified . . . to testify about the *facts* [regarding what scientific information the defendant did or did not disclose] because they

lack first-hand knowledge," *id.* at 549. Thus, the *Rezulin* court precluded the plaintiffs' experts from testifying that the defendant took a drug off the market for safety reasons and that the defendant had "'buried'" certain lab results. *Id.* at 546-47, 549-50. Such testimony merely presents arguments regarding the meaning of documents "which, if admissible, plaintiffs' counsel may present directly to the fact-finder while arguing his or her view as to their significance." *Id.* at 550.

Likewise, courts have repeatedly held that experts may not speculate regarding the thoughts or motivations of corporations, their employees, or other witnesses. It is well settled that "[t]he question of intent is a classic jury question and not one for experts." *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 WL 876900, at *9 (E.D. Pa. June 20, 2000). Opinion testimony regarding "the intent, motives or states of mind of corporations, regulatory agencies and others ha[s] no basis in any relevant body of knowledge or expertise." *Rezulin*, 309 F. Supp. 2d at 546.[1] Indeed, on these very grounds, the *Rezulin* court precluded Kaiser's expert Dr. Curt Furberg from giving precisely the sort of testimony he offers here. *See* 309 F. Supp. 2d at 542-43 & n.32, 545-46 & nn.37, 38 & 40, 549 & n.56, 556-58 & n.102.

As this ample authority demonstrates, experts must go to the source to find out what the facts are. Yet Kaiser absurdly suggests that its experts' utter failure to do so is a strength, while Pfizer's experts' consideration of statements made by witnesses with first-hand knowledge of the facts is a weakness. This argument not only defies controlling law and common sense, but also ignores contrary admissions by Kaiser's own expert. Dr. Abramson not only concedes that Dr. Field appropriately considered the witness statements Kaiser now challenges, but further concedes that her opinions, based on those very statements, successfully rebutted his own

---

[1] *See also, e.g., In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (precluding expert "from testifying as to the knowledge, motivations, intent, state of mind, or purposes of Merck, its employees, the FDA, or FDA officials" because "[t]his is not a proper subject for expert or even lay testimony"); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1067 (D. Minn. 2007) (expert's criticisms of drug manufacturer's conduct "d[id] not qualify as expert testimony under Rule 702" because, *inter alia*, "Bayer's motives as to how it proceeded with evaluating Baycol's toxicity, and its reactions to its toxicologist's warnings, are issues that can be decided by the jury, without expert assistance").

speculative assumptions about the studies in question.

> [Dr. Field] pointed out on a number of occasions, that I had assumed that there was a certain process that went on between the writer of an article and the drug company, and I think – in some of those instances I think that *she was correct about those particulars . . . I think I had made assumptions that perhaps the link is not there. So I would bow to her on some of those comments that she made about my report . . . .*

(Abramson Dep. [2310-3] at 136:23-137:20 (emphasis added).)

## II.   The Witness Statements Are Not Offered For Their Truth

Initially, six of the seven declarants discussed in Kaiser's motion are expected to give live testimony at trial (time permitting),[2] which – as Kaiser concedes – moots any hearsay objection. (Pl. Mem. [2338] at 5 n.2 ("To the extent that the declarants testify at trial, . . . the statements made at trial would not be hearsay.").) Moreover, to the extent Drs. Field and Rothschild testify about statements they relied upon in forming their expert opinions, such statements are not hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

Courts have held that when an expert testifies about a statement underlying his opinion, "it is offered not for the truth of the statement but to show how the expert arrived at the opinion, and therefore is not considered hearsay." *Richie v. Mullin*, 417 F.3d 1117, 1126 n.1 (10th Cir. 2005); *see also United States v. Hermanek*, 47 F. App'x 439, 443 (9th Cir. 2002) (holding that the statements underlying the expert's testimony were not offered for the truth of the matter asserted but rather for the purpose of evaluating the expert's expertise and, therefore, the statements were not hearsay).

---

[2] Pfizer has listed the following declarants as trial witnesses: Dr. Backonja, Dr. Gorson, Dr. Gerner, Dr. Janney, and Dr. Mathew. (Defs.' Expected Trial Witness List [2180] at 7-8.) Kaiser has listed Dr. McCormick as a trial witness. (Pl.'s List of Witnesses to Be Presented at Trial [2179] at 12.)

4

### III. FRE 703 Permits Introduction of the Statements

#### A. Experts Who Lack First-Hand Knowledge of the Relevant Facts Can and Must Reasonably Rely Upon Witnesses Who Have Such Knowledge

FRE 703 expressly permits Drs. Field and Rothschild to base their opinions on the witness statements in question. As the First Circuit has explained, under FRE 703, "an expert is entitled to rely on facts and/or data which have not been admitted into evidence if the expert's reliance on those facts or data is reasonable," with "reasonableness . . . measured against the facts or data upon which experts in the particular field normally rely." *Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 544 (1st Cir. 1988).[3] Reliance on hearsay is permitted because the expert's "validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes." Fed. R. Evid. 703 advisory committee's note. Moreover, "if an expert avers that his testimony is based on a type of data on which experts reasonably rely, that is generally enough to survive the Rule 703 inquiry." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 747 (3d Cir. 1994); *see also, e.g., Greenwood Utils. Comm'n v. Miss. Power Co.*, 751 F.2d 1484, 1495 (5th Cir. 1985) ("[D]eference ought to be accorded to the expert's view that experts in his field reasonably rely on such sources of information.").

As discussed above, when experts lack personal knowledge of the facts on which their opinions are based, they not only can, but must, reasonably rely on witnesses who have such first-hand knowledge. (*See* Section I, *supra.*) Indeed, Kaiser's own expert, Dr. Abramson, concedes that Dr. Field reasonably relied upon the witness statements in question, and that her opinions, based on those very statements, successfully rebutted his own speculative assumptions about the underlying facts. (Abramson Dep. [2310-3] at 136:23-137:20.) Thus, Kaiser's own expert recognizes these witness statements to be hearsay "of a type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703.

---

[3] *See also, e.g., First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996) ("Experts may rely on hearsay evidence in forming their opinions."); *Viking Yacht Co. v. Composites One LLC*, 613 F. Supp. 2d 637, 645 n.11 (D.N.J. 2009) ("Rule 703 expressly contemplates the use of hearsay evidence by experts.").

5

Kaiser does not dispute that the declarants in question have direct, first-hand knowledge of the relevant facts. Nor does Kaiser even attempt to argue that there is something inherently unreliable about out-of-court statements by knowledgeable witnesses. Instead, with respect to six of the seven declarants,[4] Kaiser's argument is based entirely on its counsel's credibility attacks. Kaiser argues that "Dr. Field and Dr. Rothschild are relying on self-serving declarations that were motivated, at least in part, by a desire to respond to challenges to their integrity and with the knowledge that their research may be funded by Pfizer again in the future." (Pl. Mem. [2338] at 9.)

Initially, this argument is purely conclusory. Kaiser chose not to depose any of these declarants, whose identifies have been known to Kaiser for years. Thus, Kaiser has no idea what "motivated" these declarants' statements. Moreover, no authority supports Kaiser's argument that, simply because these declarants "have received funding from Pfizer or other pharmaceutical companies" for their work (Pl. Mem. [2338] at 3), Pfizer's experts cannot base their opinions on anything these declarants say. If this were the law, experts would be categorically precluded from basing their opinions on any information obtained from a party's employees, affiliates, or anyone else who had ever received any type of "funding" from that party – even if there were no other witnesses with first-hand knowledge of the relevant facts. Likewise, no authority supports Kaiser's argument that a declarant's interest in his "reputation[]" and "integrity" precludes experts from relying on anything that declarant says. (*Id.* at 2-3.) Were this the law, plaintiffs' counsel could strategically preclude expert reliance on any declarant they chose simply by making reckless and unfounded personal attacks against that declarant in their pleadings (or their motions *in limine*).

---

[4] Kaiser does not challenge Dr. Cynthia McCormick's credibility. Instead, Kaiser argues in purely conclusory terms that her affidavit merely "reflect[s] a portion of her view" and that it would be "misleading" to permit Dr. Rothschild to testify based on the affidavit. (Pl. Mem. [2338] at 3; *see also id.* at 9.) Kaiser fails to explain what information is purportedly missing from Dr. McCormick's affidavit or how any unspecified omission renders her affidavit misleading. Kaiser's vague, conclusory argument does not affect even the weight, let alone the admissibility, of this evidence.

Kaiser does not and cannot cite any authority excluding evidence under FRE 703 based solely on counsels' conclusory arguments regarding witness credibility. The issue for the Court is whether the *"type"* of hearsay evidence is "reasonably relied upon by experts in the particular field." Fed. R. Evid. 703 (emphasis added).[5] The word "type" describes categories of evidence that are not witness-specific, such as "interviews," "research articles," "hospital records," etc.[6] By contrast, challenges to the credibility of particular declarants are inherently witness-specific, which is why such challenges are resolved by juries one witness at a time. "Where an evidentiary conflict turns on witness credibility, the jury decides whom to believe." *United States v. Ayala-Garcia*, 574 F.3d 5, 11 (1st Cir. 2009). That a lawyer strategically attacks the credibility of several different declarants does not mean their statements can be collectively treated as falling within or without some arbitrary and undefineable "type" of evidence.

Counsel's credibility challenges regarding particular declarants present a classic jury question, *see id.*, which goes to the weight – not admissibility – of expert opinions based thereon. Indeed, in *Davison v. Eldorado Resorts LLC*, No. 3:05-CV-0021-BES RAM, 2006 WL 587587 (D. Nev. Mar. 10, 2006), the court admitted the plaintiff's expert's testimony even though the expert's report "reli[ed] on an out of court interview *with [p]laintiff*," *id.* at *4 (emphasis added). Though the plaintiff was hardly a disinterested witness in her own lawsuit, the court held that

> [t]he effect of [the expert's] opinion being based on [p]laintiff's out of court statements should . . . be for the trier of fact to determine. . . .
>
> . . . .

---

[5] *See also, e.g., United States v. Arias*, 678 F.2d 1202, 1206 (4th Cir. 1982) ("Under F.R.E. Rule 703, however, an expert may base his testimony upon the type of hearsay he would normally rely upon in the course of his work.").

[6] *See, e.g., Crowe v. Marchand*, 506 F.3d 13, 17 (1st Cir. 2007) (holding that expert's reliance on "x-ray and MRI reports" "was plainly justified"); *Manocchio v. Moran*, 919 F.2d 770, 780 (1st Cir. 1990) (holding that it was "reasonable" for medical examiner to rely on "hospital records" and a "police report"); *United States v. Lawson*, 653 F.2d 299, 302 (7th Cir. 1981) (holding that "staff reports" and "interviews with other physicians" were "clearly of the type that psychiatrists would rely upon"); *Katt v. City of New York*, 151 F. Supp. 2d 313, 357 (S.D.N.Y. 2001) (holding that "interviews," "commission reports, research articles, scholarly journals, books, and newspaper reports" were "data . . . of a type reasonably relied upon by experts in various disciplines of social science").

7

> The court will not turn what is essentially a credibility determination on a key issue of fact into [a] question of admissibility.

*Id.* at *5-6. Likewise, as the First Circuit has recognized, "the district court's gatekeeping function ought not to be confused with the jury's responsibility to separate wheat from chaff." *Crowe*, 506 F.3d at 18.

Kaiser's authorities are easily distinguishable. In *Ricciardi v. Children's Hospital Medical Center*, 811 F.2d 18 (1st Cir. 1987), the issue was not credibility, but competence. The hearsay evidence in question was a note entered into a medical chart by a doctor "who . . . did not have personal knowledge of the event [described in the note] and could not recall the source of the information." *Id.* at 20. Here, it is undisputed that the witnesses have first-hand knowledge of the relevant facts. In *University of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200 (1st Cir. 1993), the expert relied on unspecified statements made in interviews with "undisclosed" declarants, and the party proffering this expert testimony refused to disclose the particular factual basis for the testimony despite the court's specific request for an explanation, *id.* at 1218-19. Here, Kaiser challenges Drs. Field and Rothschild for doing precisely what the expert in *A.W. Chesterton Co.* failed to do: specifically identify the information relied upon and the sources for that information. In *Almonte v. National Union Fire Insurance Co.*, 787 F.2d 763 (1st Cir. 1986), the First Circuit's holding directly supports Pfizer's position. The First Circuit affirmed the admission of expert testimony after concluding that it was "perfectly reasonable" for the defendant's expert to conduct an interview with the plaintiff's former business partner regarding the cause of a fire allegedly set by plaintiff. *Id.* at 769-70. The *Almonte* declarant's statements were clearly susceptible to credibility attacks – given that he had terminated his partnership with plaintiff because "he didn't like the way things were being run," *id.* at 769 (internal quotation marks omitted) – but this did not mean that the expert could not reasonably rely on his statements.[7]

---

[7] The First Circuit held that the expert's testimony regarding the declarant's statement was problematic on completely unrelated grounds, but objection on those unrelated grounds was waived. *Id.* at 770.

8

Nor do Kaiser's authorities support the argument that an expert cannot rely on witness statements provided to a party's attorney. In *Montgomery County v. Microvote Corp.*, 320 F.3d 440 (3d Cir. 2003), the expert had relied on a "sampling" of data selected by counsel and on a report by a witness with no first-hand knowledge of the underlying data, *id.* at 448-49. And in *In re TMI Litigation*, 193 F.3d 613 (3d Cir. 1999), the expert relied on "summaries," made by "employees of [t]rial [p]laintiffs' counsel," of otherwise available medical data, *id.* at 697-68. Here, Pfizer's experts did not review incomplete summaries or samples of underlying data created by counsel; they reviewed complete statements made by witnesses with first-hand knowledge of the facts. That Kaiser purports to dispute these witnesses' statements – despite having chosen not to depose any of the witnesses – does not make the statements incomplete or unreliable. Indeed, Kaiser's desperate attempt to manufacture inconsistencies between these witness statements and the testimony of other witnesses with first-hand knowledge has failed.[8]

### B. Kaiser's Argument that Drs. Field and Rothschild Simply Recite Hearsay Without Analysis Is Without Merit

Pfizer wholeheartedly agrees that expert testimony cannot serve merely as the conduit for introducing inadmissible hearsay without accompanying analysis, and Pfizer has no intention of having Drs. Field or Rothschild simply recite the contents of witness declarations into the record at trial. But Kaiser's argument that these experts' reports do any such thing is a mischaracterization that does not survive scrutiny.

#### 1. Kaiser's Criticisms of Dr. Field's Report Are Invalid

Kaiser's criticisms of Dr. Field's 30-page expert report focus on just 5 pages that contain, *inter alia*, quotations from the declarations of Drs. Backonja, Gorson, and Vieta. (*See* Pl. Mem. [2338] at 7-8 (citing Field Report [2252-2] at 14-18).) Kaiser erroneously claims that Dr. Field

---

[8] When Kaiser tried to manufacture inconsistencies between Ms. Janney's declaration and Dr. Pande's deposition testimony, Pfizer demonstrated that these witnesses' accounts of the facts were perfectly consistent. (*See* Defs.' Mem. Opp. Kaiser Mot. Compel Dep. of Janney [2264] at Section III.) Kaiser's motion to compel an untimely, 11th-hour deposition of Ms. Janney based on these purported inconsistencies was denied. (*See* 12/22/09 Electronic Order Denying Mot. Compel.)

merely repeats these witnesses' statements "[w]ithout any analysis." (*Id.* at 8.) Kaiser ignores the fact that Dr. Field's discussion of the Backonja, Gorson, and Vieta studies is preceded by introductory language placing the studies in the context of a broader analysis that rebuts certain unfounded speculative assumptions made by Kaiser experts Dr. Dickersin and Dr. Abramson. Identifying assumptions made by the other side's experts for which there is insufficient factual support is one of the principal, and perfectly legitimate, purposes of rebuttal expert testimony.[9]

As Dr. Field explains, these Kaiser experts "focus solely on alleged circumstances in the development of a few company-sponsored publications in isolation," and ignore a "vast body of literature" supporting off-label Neurontin use. (Field Report [2252-1] at 12.) Dr. Field further explains that, without talking to any of the people involved, these Kaiser experts made certain assumptions "regarding the roles played during the publication process by authors, sponsor, and journal[s]." (*Id.*) Dr. Field determined that Kaiser's expert's assumptions regarding the "roles played" by these witnesses were not only unsupported by any evidence, but were "contradicted" by the witnesses themselves. (*Id.* at 12-13.) **Dr. Abramson admits that Dr. Field is right**. (Abramson Dep. [2310-3] at 136:23-137:20.)

Likewise, Dr. Field's discussion of the particular studies provides substantial analysis, based only in part on these witnesses' statements. Discussing the Gorson and Vieta studies, Dr. Field cited Dr. Gorson's and Dr. Vieta's declarations along with numerous other bates-stamped documents to demonstrate the lack of factual support for speculative assumptions made by Kaiser's experts. (Field Report [2252-2] at 15-19.) Discussing the Backonja study, Dr. Field

---

[9] *See, e.g., Minebea Co. v. Papst*, No. Civ. A. 97-0590, 2005 WL 1459704, at *6 (D.D.C. June 21, 2005) (rebuttal expert's testimony "identify[ing] areas where [plaintiff's expert's] assumptions are at odds with the real world facts" and "identify[ing] critical assumptions" made by plaintiff's expert "would be of assistance to the jury"); *KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 692 (M.D. Ala. 2000) (defendant's rebuttal expert could criticize plaintiff's expert's report on the grounds that "it [was] not tied to any 'real world' events" and that it "implicitly assume[d] or ignore[d] [certain] facts"); *1st Source Bank v. First Res. Fed. Credit Union*, 167 F.R.D. 61, 65 (N.D. Ind. 1996) (defendant's "rebuttal expert . . . may criticize [plaintiff's expert's] theories and calculations without offering alternatives" by, for example, explaining that plaintiff's expert had "fail[ed] to take into consideration certain factors" and had made certain assumptions that "nothing in the record" supported).

responds to Kaiser's experts' opinion that the study is misleading because of the potential "'unblinding' of the patients to the drug they were taking." (*Id.* at 13.) Based on her own expertise in the design and conduct of clinical trials (*see id.* at 2), Dr. Field explains that "[u]nblinding is a danger in every controlled trial where the active drug causes noticeable side effects at a higher rate than placebo or causes different side effects than another drug being compared" (*id* at 13.). Dr. Field also notes that the potential unblinding was fully disclosed in the research report and published article for this study, and that this disclosure did not prevent the study's publication in "one of the most highly-respected medical journals in the world." (*Id.*) Having provided this context, Dr. Field then quotes the declaration of Dr. Backonja – who has first-hand knowledge of the facts regarding the design, conduct, and publication of this study – as additional evidence supporting her opinions. (*Id.* at 13-14.)

### 2. Kaiser's Criticisms of Dr. Rothschild's Report Are Invalid

Kaiser's principal criticism of Dr. Rothschild is that he relies on an affidavit by Dr. McCormick that does not contain the totality of the statements Dr. McCormick has made on the subject of Neurontin. (Pl. Mem. [2338] at 3, 8.) But the thrust of Dr. McCormick's affidavit is that her prior statements about Neurontin cannot be construed in the way Kaiser expert Dr. Furberg construes them, because Dr. McCormick "never concluded" that Neurontin increases suicidaility. (Rothschild Report [2339-2] at 16 (quoting 9/13/07 McCormick affidavit).) Even Kaiser does not suggest that Dr. McCormick has any bias in this matter. Instead, Kaiser asks this Court to rule that Dr. Furberg can base his opinions on a blatant mischaracterization of Dr. McCormick's prior statements, but that Pfizer's rebuttal expert cannot even consider an affidavit in which Dr. McCormick explains precisely how Dr. Furberg's interpretations mischaracterize what she actually said. This argument is absurd on its face and unsupported by any authority.

Kaiser also criticizes Dr. Rothschild's very brief reference to Dr. Vieta's declaration. (Rothschild Report [2339-2] at 23:14-18.) The point of this reference was to demonstrate that Dr. Barkin's opinions about the Vieta study are based on unfounded factual assumptions.

11

Dr. Barkin had not spoken to Dr. Vieta, but made assumptions and implications about the Vieta study that are contradicted not just by Dr. Vieta's declaration, but also by information on a publicly available website. (*Id.* at 12-23.) Dr. Rothschild did not cite this evidence "[w]ithout any analysis," as Kaiser claims. (Pl. Mem. [2338] at 8.) He performed an independent review of the manuscript regarding the Vieta study "and f[ou]nd nothing improper with their methodology" (Rothschild Report [2339-2] at 23:20-23.)

In sum, the opinions of Drs. Dickersin and Abramson, and at least part of Dr. Barkin's opinions, are inadmissible because they are based solely on a review of documents produced in this case and on speculative assumptions regarding facts as to which these experts have no first-hand knowledge. However, should the Court permit these experts to testify despite their application of a palpably unreliable methodology to speculative factual assumptions, Pfizer would certainly be entitled to present rebuttal expert testimony to demonstrate the lack of any factual basis for their opinions.

### C. The Statements' Probative Value Substantially Outweighs Any Prejudicial Effect

Not only may Drs. Field and Rothschild rely on out-of-court statements in forming their opinions, but such statements may be disclosed to the jury under FRE 703. FRE 703 provides that otherwise inadmissible facts or data on which experts rely for their opinions may be disclosed where, as here, "their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703; *see also United States v. Garcia*, 447 F.3d 1327, 1336-37 (11th Cir. 2006) (affirming admission of expert testimony concerning informant's hearsay statements about drug traffickers' code language); *Stevens v. Cessna Aircraft Co.*, 634 F. Supp. 137, 142-43 (E.D. Pa.) (in wrongful death products liability action, admitting expert testimony about hearsay statements from individuals interviewed as part of expert's investigation of the deceased pilot's background, where statements described "stress that might well have hampered [the deceased's] performance as a pilot" and were of the type "relied upon by those evaluating the fitness of pilots"), *aff'd mem.*,

806 F.2d 252 (3d Cir. 1986).

An expert may "'testify about facts and data outside of the record for the limited purpose of exposing the factual basis of the expert's opinion.'" *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 955 (8th Cir. 2000) (quoting *Brennan v. Reinhart Institutional Foods*, 211 F.3d 449, 451 (8th Cir. 2000)) (holding that because the hearsay statements were not admitted for their truth, but rather only to inform the jury of the factual basis of the expert's opinion, the statements were properly admitted).

Indeed, courts have consistently held that hearsay may be disclosed to the jury for the purpose of evaluating an expert's opinion. *See Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 703 (7th Cir. 2008) (holding that expert must lay out the basis for his conclusions as "the factfinder would be unable to evaluate the soundness of his conclusion without hearing the evidence he relied on" (citation omitted)), *cert. denied*, 130 S. Ct. 458 (2009); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317, 2005 WL 5955699, at *6 (S.D. Fla. Feb. 2, 2005) (holding that "the jury would be unable to evaluate the [e]xperts' opinions if the [c]ourt did not allow disclosure of the Uetikon Letter" as it was "an important factor in the [e]xperts' analysis"); *Sanchez v. Brokop*, 398 F. Supp. 2d 1177, 1192-93 (D.N.M. 2005) (holding that it was necessary for the jury to hear the statements expert relied on in forming opinion in order to properly evaluate it); *Katt*, 151 F. Supp. 2d at 356 n.36 (holding that admission of testimony regarding content of interviews expert relied upon was necessary for the jury to understand the basis of his opinion).

Furthermore, Kaiser will have the opportunity to cross-examine Pfizer's experts about their reliance on these statements. *See, e.g., Brennan*, 211 F.3d at 450-52 (affirming admission, through expert testimony, of hearsay statements of plaintiff's physicians to show "the factual basis of the expert's opinion," finding defense counsel had adequate opportunity to cross-examine the expert on the physicians' statements); *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 443 (D. Del. 2007) (denying motion to exclude hearsay evidence on which defendants' damages experts relied, noting that plaintiff's counsel would be able

13

"'through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion'" (quoting *Int'l Adhesive*, 851 F.2d at 544)).

The statements Dr. Field relied upon should be disclosed to the jury so that they may properly evaluate not only her opinion, but those of Plaintiffs' experts as well. Additionally, as with Dr. Field, the jury would not be able to competently evaluate Dr. Rothschild's opinion were Dr. McCormick's statements not disclosed. As previously mentioned, part of Dr. Rothschild's opinion is that Drs. Furberg and Barkin mischaracterize the FDA's purported "conclusion[s]" regarding Neurontin, allegedly relying on statements Dr. McCormick made. Were Dr. McCormick's statements regarding the safety and efficacy of Neurontin, the jury would be left with the task of evaluating the opinions of competing experts without a sufficient basis to adequately do so.

While the probative value of these statements is great, any danger of prejudice here is minimal because these statements relate directly to the experts' opinions. Furthermore, any prejudice "will be minimized by a thorough cross-examination of the [e]xperts, by [Kaiser's] ability to call its own witnesses . . . and by a limiting instruction from the [c]ourt." *Terazosin*, 2005 WL 5955699, at *6.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiffs' motion *in limine* to exclude at trial any hearsay testimony of Drs. Field and Rothschild.

Dated: January 22, 2010    Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:   /s/ Mark S. Cheffo
      Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:    /s/ Raoul D. Kennedy
       Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400

-and-

WHEELER TRIGG O'DONNELL LLP

By:    /s/ James E. Hooper
       James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800

-and-

WHITE AND WILLIAMS LLP

By:    /s/ David B. Chaffin
       David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 22, 2010.

/s/ David B. Chaffin
David B. Chaffin