UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Magistrate Judge Leo T. Sorokin |

**DEFENDANTS' OPPOSITION TO KAISER'S MOTION *IN LIMINE*
TO STRIKE NON-REBUTTAL TESTIMONY OF DR. ROTHSCHILD**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") respectfully submit this memorandum of law in opposition to the motion *in limine* to exclude at trial the purported "non-rebuttal" testimony of Dr. Anthony J. Rothschild, made by Plaintiffs herein, Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser").

**PRELIMINARY STATEMENT**

Pfizer retained Dr. Anthony J. Rothschild in this case to rebut the opinions in the expert report of Dr. Curt Daniel Furberg and the supplemental expert report of Dr. Jeffrey S. Barkin. As an initial matter, Dr. Furberg was not identified by Kaiser or any of the Coordinated Third-Party Payors ("TPPs") pursuant to Federal Rule of Civil Procedure 26, within the time frames provided by this Court. Likewise, Kaiser did not seek to supplement the declaration submitted by Dr. Barkin. As the documents referenced in Kaiser's motion make clear, it was the *Class Plaintiffs* who moved for leave to file an additional expert report and to supplement Dr. Barkin's report. (*See* Class Pls. Mot. for Leave to Serve Supplemental Expert Reports [1503]; *see also* Pl. Mem. in Supp. of Kaiser's Mot. *in Limine* to Strike Non-Rebuttal Test. of Dr. Rothschild [2345] at 2 (citing *Class Plaintiffs*' motion).)

When Pfizer received Kaiser's proposed witness list, and noted Kaiser's intent to call Dr. Furberg, Pfizer listed Dr. Rothschild. At the same time, Pfizer has separately moved to

exclude the testimony of Dr. Furberg on the grounds that he was not designated as a witness by Kaiser. (*See* Defs. Mot. *in Limine* to Exclude the Test. of Dr. Rena Conti and Dr. Curt Furberg [2311] and supporting Mem. [2312].) Pfizer has not sought exclusion of Dr. Barkin, since his original report was designated by Kaiser; however, Pfizer does object to any testimony by Dr. Barkin beyond his original report, dated July 25, 2008. In the event that this Court grant's Pfizer's motion to exclude Dr. Furberg and restricts Dr. Barkin to the opinions expressed in his original report, there will be no need for Pfizer to call Dr. Rothschild and Kaiser's motion will be moot.

Otherwise, the matters addressed in Dr. Rothschild's report constitute proper rebuttal to the opinions expressed by Dr. Furberg and the supplemental opinions of Dr. Barkin. Kaiser seeks to offer the opinion testimony of Dr. Furberg and Dr. Barkin on the alleged link between Neurontin and depression, as well as other issues. Kaiser has excised a few passages of Dr. Rothschild's report and, taking them out of context, argues that they are beyond the scope of rebuttal. Similarly, Kaiser has ignored relevant portions of Dr. Furberg's and Dr. Barkin's reports.

In fact, the allegedly improper opinions in Dr. Rothschild's report were entirely within the valid scope of rebuttal. For example, Kaiser's primary claim concerns Dr. Rothschild's opinion that Neurontin was an effective treatment of depressive symptoms of bipolar disorder. This opinion is plainly within the scope of rebuttal. First, both Dr. Furberg and Dr. Barkin addressed the issue of efficacy in their reports. Second, Dr. Rothschild's opinions regarding the efficacy of Neurontin to treat mood disorders contradicts the claims of Dr. Furberg and Dr. Barkin that Neurontin actually causes depression. Kaiser's remaining claims that Dr. Rothschild's opinions exceeded their proper scope are similarly meritless. Accordingly, Kaiser's motion should be denied.

## ARGUMENT

### I. Dr. Rothschild's Report Stated Proper Rebuttal Opinions

Kaiser does not dispute that Pfizer timely proffered Dr. Rothschild's report to rebut the

2

supplemental report of Dr. Barkin and the report of Dr. Furberg. Kaiser's only basis for striking Dr. Rothschild's report and testimony is its claim that the opinions stated in his report were not within the scope of rebuttal. "'The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party.'" *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (citation omitted); *accord United States v. Clotida*, 892 F.2d 1098, 1107 (1st Cir. 1989); *see also* Fed. R. Civ. P. 26(a)(2)(C)(ii) (rebuttal expert testimony is that which is offered "solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)"). The essence of Kaiser's quarrel is thus not with the body of Dr. Rothschild's report, which offers a direct, pound-for-pound rebuttal of claims by Dr. Barkin and Dr. Furberg. (*See* Rothschild Report [2346-4] at 15:22-26:12.) Instead, Kaiser primarily takes issue with Dr. Rothschild's discussion of preliminary and background matters (*see id.* at 4:15-15:21), where Kaiser alleges that he exceeded the proper scope of rebuttal with respect to a handful of topics. Kaiser's arguments are without merit.

Kaiser's main complaint is that Dr. Rothschild improperly opined on Neurontin's efficacy in treating bipolar and other mood disorders – issues they claim were not addressed by the reports of Dr. Barkin and Dr. Furberg. According to Kaiser, the reports of Dr. Barkin and Dr. Furberg addressed only the narrow issues of whether Neurontin can cause depression and suicidality and whether Pfizer improperly failed to disclose these facts while marketing Neurontin for treatment of mood disorders. (Pl. Mem. [2345] at 8-9.)

Initially, the scope of the supplemental report of Dr. Barkin and the report of Dr. Furberg was far broader than Kaiser would have the Court believe, as both reports reached issues of Neurontin's effectiveness in treating bipolar and other mood disorders. For instance, Dr. Furberg's report stated he had been retained to offer expert testimony on whether the claimed link between Neurontin and depression was "relevant to the promotion and use of gabapentin in patients with *bipolar and other mood disorders*" and whether these "findings contradict and/or undermine promotional claims of gabapentin's *beneficial effects on mood*." (Cheffo Decl. Exh. A (Furberg Report) at 7 (emphasis added).) His report later claimed that Pfizer "engaged in the

fraudulent off-label promotion of gabapentin for indications, including bipolar and other mood disorders, even when there was no evidence of treatment benefit and despite the existence of evidence of treatment worsening." (*Id.* at 19.) Similarly, Dr. Furberg opines that "[a] thorough review of the clinical trial evidence regarding the effect of gabapentin in bipolar disorder by Dr. Jeffrey Barkin concluded appropriately that the drug has no documented benefit." (*Id.* at 18.)

Likewise, Dr. Barkin opined that "documents reviewed in the course of preparing this supplement report bolster my core opinions that gabapentin is an *ineffective medication for the treatment of mood disorders*." (Cheffo Decl. Exh. B (Barkin Supplemental Report) at 1 (emphasis added).) Dr. Barkin's supplemental report also criticized a Pfizer marketing document that stated that "well noted patient reports of improved mood and decreased anxiety from epilepsy trials suggest Neurontin® may be effective in the treatment of acute mania and prophylaxis of bipolar disorder." (*Id.* at 3.) Thus, both Dr. Furberg and Dr. Barkin (in his supplemental report) placed the efficacy of Neurontin for bipolar and other mood disorders at issue.

Second, Kaiser's motion is premised on the argument that Dr. Rothschild cannot rebut the opinions of Dr. Furberg and Dr. Barkin that Neurontin causes depression by discussing evidence that Neurontin has the *opposite* effect. Kaiser's argument defies logic. Dr. Rothschild's report properly rebutted the opinions of Dr. Barkin and Dr. Furberg with respect to Neurontin's alleged link to depression and inefficacy in treating bipolar disorder. His report opined that "there is a substantial body of medical literature that suggests that Neurontin may have *beneficial* effects on depressive symptoms of bipolar disorder." (Rothschild Report [2346-4] at 4:7-8.) Dr. Rothschild also rebutted the claims of Dr. Barkin and Dr. Furberg that Neurontin was ineffective for treating other mood disorders by noting that psychiatrists frequently employed Neurontin as an effective treatment for social phobia and panic disorder. (*Id.* at 10:15-11:25; *cf.* Pl. Mem. [2345] at 9 (arguing that Dr. Rothschild's opinions on "use of Neurontin in anxiety disorders" were not within the scope of rebuttal).) Dr. Rothschild thus properly rebutted Kaiser's claims that Neurontin is ineffective in treating bipolar and other mood

disorders, as well as that Neurontin could cause depression.

Kaiser's remaining objections to Dr. Rothschild's preliminary discussion are similarly without merit. As an initial matter, each of Dr. Rothschild's allegedly improper opinions was necessary to set the foundation for his refutation of the claims of Dr. Barkin and Dr. Furberg in the body of his report, as to which Kaiser offers no objections. The context in which Dr. Rothschild's opinions are offered is important and he is entitled to explain it. For example, Kaiser argues that Dr. Rothschild improperly opined about the "wide variety of potential side-effects in medications like Neurontin." (Pl. Mem. [2345] at 9.) This itself is a grave mischaracterization of Dr. Rothschild's opinion, which simply stated that Neurontin is a medication with remarkably few side effects, contrary to Dr. Barkin's and Dr. Furberg's claims of a link between Neurontin and depression. (Rothschild Report [2346-4] at 12:1-13:7.) More importantly, this is not a personal injury action where the issue before the Court is whether Neurontin caused a particular person to attempt or commit suicide. Indeed, Pfizer submits that the issue of suicide is irrelevant and should be excluded in its entirety. However, the only conceivable relevance that Kaiser might offer for it would be the extent to which any alleged association with suicide would have affected Kaiser's formulary decisions or the prescribing decisions of its physicians. Any argument Kaiser might make for the relevance of Dr. Furberg's and Dr. Barkin's opinions on this issue necessarily requires a comparison to the potential side effects of alternative drugs that might be prescribed instead of Neurontin. As a result, it was proper rebuttal testimony for Dr. Rothschild to address this issue.

Kaiser also takes issue with Dr. Rothschild's specific rebuttal of claims in Dr. Barkin's initial report (Pl. Mem. [2345] at 9), but Dr. Barkin himself brought his initial report within the scope of rebuttal by claiming that "documents reviewed in the course of preparing this supplement report *bolster my core opinions* that gabapentin is an ineffective medication for the treatment of mood disorders" (Cheffo Decl. Exh. B (Barkin Supplemental Report) at 1 (emphasis added)). Finally, Kaiser finds fault in Dr. Rothschild's opinions concerning the "frequency of off-label prescriptions in psychiatry." (Pl. Mem. [2345] at 9.) But Dr. Rothschild's opinions that

off-label prescriptions by psychiatrists were an unremarkable, common practice (*see* Rothschild Report [2346-4] at 6:20-7:7) explained and counteracted Dr. Furberg's claims about the seriousness of using medications off-label indications (*see* Cheffo Decl. Exh. A (Furberg Report) at 10 (claiming that patients have a right "to be informed if the drug is prescribed off-label and what this means in terms of lack of documented benefit and harm")). Because all of the opinions in Dr. Rothschild's report were offered "to contradict or rebut evidence on the same subject matter" in the supplemental report of Dr. Barkin and the report of Dr. Furberg, *see* Fed. R. Civ. P. 26(a)(2)(C)(ii), Kaiser's motion should be denied.

## II. Kaiser's Designation Of Dr. Furberg And Its Reliance On The Supplementation Of Dr. Barkin's Report Are In Violation Of Rule 26

Kaiser argues that Rule 26 requires exclusion of Dr. Rothschild's report because it was not timely designated. For the reasons discussed above, Kaiser is wrong. Pfizer properly designated Dr. Rothschild's report, and his opinions constitute proper rebuttal testimony. Pfizer has complied with its obligations under Rule 26.

It is, in fact, Kaiser that has violated Rule 26. As set forth in Defendants' Motion *in Limine* to Exclude the Testimony of Dr. Rena Conti and Dr. Curt Furberg [2311] and supporting Memorandum [2312], Kaiser never designated Dr. Furberg as an expert witness until it served its trial witness list on November 23, 2009. Likewise, Kaiser did not seek to supplement Dr. Barkin's initial report and did not join in the Class Plaintiffs' motion to supplement.

Each of the arguments set forth in Section III.D of Kaiser's brief should, therefore, be applied against Kaiser (not Pfizer). Kaiser states: "As clearly indicated by [Rule 37], '[t]he First Circuit has recognized that "the required sanction in the ordinary case [for a late disclosure violation of Rule 37] is mandatory preclusion."'" (Pl. Mem. [2345] at 10 (citation omitted).) Thus, according to the very position asserted by Kaiser, Dr. Furberg's testimony must be excluded and Dr. Barkin's testimony restricted to the opinions expressed in his initial report. Pfizer acknowledges that Dr. Rothschild was designated as an expert to rebut the opinions expressed by Dr. Furberg and the supplemental opinions of Dr. Barkin. Accordingly, if

Dr. Furberg's testimony is excluded, and Dr. Barkin's testimony restricted to his initial report, there would be no need for Pfizer to call Dr. Rothschild and Kaiser's motion would be rendered moot.

At the same time, Kaiser's claims of prejudice should be rejected. For the reasons discussed above, Dr. Rothschild's report did not exceed the scope of proper rebuttal. At most, he simply provided context for his rebuttal of claims by Kaiser's experts that Neurontin caused depression. Nor can Kaiser claim surprise from an untimely disclosure, as Kaiser does not dispute that his rebuttal report was timely. Further, Kaiser's claim that it was "deprived of the opportunity to depose [Dr. Rothschild] on the topics at issue" is not to be credited (Pl. Mem. [2345] at 11), because Kaiser ignored its opportunity to depose Dr. Rothschild with respect to *all* of his opinions. In fact, Kaiser elected not to depose *any* of Pfizer's experts (except for economist Dr. Keeley) at *any* time, and its assertion that things would somehow have been different if it had received an earlier disclosure of Dr. Rothschild's opinions is without support.

In comparison, Pfizer did choose to depose the experts designated by both the Class Plaintiffs and the Coordinated TPPs in this action. Kaiser's implicit assertion that Pfizer should have simply assumed that it was joining in the Class Plaintiffs' motion to supplement must be rejected. Throughout this litigation, Kaiser has repeatedly emphasized the distinctions between its theories of liability, injury and damages, and those of the Class Plaintiffs. Pfizer had no reason to simply assume that any expert disclosed by the Class Plaintiffs might also be called by Kaiser. For example, Kaiser has not produced any evidence linking Dr. Furberg's or Dr. Barkin's opinions regarding suicide risk to its formulary decisions, the basis upon which this Court distinguished Kaiser's claims from other TPPs and allowed it to survive summary judgment. (Mem. & Order [2309] at 5-8.) In contrast, the Class Plaintiffs emphasized the claims of the individual consumer plaintiffs in their motion to supplement. (*See* Class Pls. Mot. [1503] at 6.) Thus, while Pfizer has a valid claim of prejudice, such that Kaiser should be precluded from relying on Dr. Furberg's report or Dr. Barkin's supplemental report, Kaiser cannot demonstrate any prejudice that it will suffer if Dr. Rothschild is allowed to testify regarding the

7

matters discussed in his timely disclosed report.

## CONCLUSION

In the event that the Court grants Pfizer's motion to exclude the testimony of Dr. Furberg and similarly restricts the testimony of Dr. Barkin to the opinions expressed in his original report, Pfizer agrees that it would have no need to call Dr. Rothschild, rendering Kaiser's motion moot. If, however, such testimony is permitted, Kaiser's motion should be denied for the reasons set forth above.

Dated: January 22, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:  /s/ Mark S. Cheffo
     Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:  /s/ Raoul D. Kennedy
     Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400

-and-

WHEELER TRIGG O'DONNELL LLP

By:  /s/ James E. Hooper
     James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800

-and-

8

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 22, 2010.

/s/ David B. Chaffin
David B. Chaffin

9