## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:   NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris |
| | Magistrate Judge Leo T. Sorokin |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS'
### MOTION TO EXCLUDE DR. CHARLES PHILLIPS

Defendants Pfizer Inc and Warner-Lambert Company LLC (together, "Pfizer" or "Defendants"), by counsel, respectfully submit this opposition to Plaintiffs' Motion *In Limine* to Preclude the Testimony of Dr. Charles Phillips.

### PRELIMINARY STATEMENT

On November 23, 2009, Pfizer filed its Expected Trial Witness List. [2180]  Included among those expected witnesses is Dr. Charles Phillips, a California-based physician who Pfizer designated to testify regarding the "operation and business practices of Kaiser." (*Id.* at 8.) Dr. Phillips is a graduate of Northwestern Medical School and a practicing generalist who, over the course of his career, has worked for, or consulted, numerous domestic and foreign medical organizations, including Kaiser. (Phillips Dep. at 130:23-131:21; 132:20-133:14; 133:20-134:6, Exh. A to Cheffo Decl.)  Further, Dr. Phillips has spent over a decade researching and studying the business practices of Kaiser. (*Id.* at 138:22-139:14.)  While Dr. Phillips is sharply critical of many aspects of Kaiser's operations, including its practices pertaining to prescription drugs, this is certainly not a basis to exclude his testimony in this case.

Initially, Plaintiffs request that Dr. Phillips be excluded because he "was not designated as an expert witness until a year after such disclosures were required."  (Pl. Mem. [2341] at 1.)

Dr. Phillips was not, in fact, designated as a retained expert by Pfizer, and he has prepared no expert disclosure, and thus his disclosure was not untimely.[1]   Plaintiffs further claim that Dr. Phillips' testimony about the business and operations of the Kaiser health care organization is irrelevant and unhelpful.   Plaintiffs do not, however, offer any explanation for their argument that testimony about their business operations might be irrelevant to a lawsuit founded upon a claim to recover monies spent on Neurontin prescriptions.   As Dr. Phillips' deposition made clear, his testimony will touch upon a number of relevant subjects, including the relationship between prescribing doctors and the Kaiser plan, and Kaiser's continuing recognition and recommendation of Neurontin. (*See* Phillips Dep. at 177:16-178:2.)   Plaintiffs further claim that Dr. Phillips has no specialized knowledge regarding Kaiser's business operations, a fact belied by their own briefing.   Finally, Plaintiffs request that this Court exercise its discretion to exclude any relevant evidence from Dr. Phillips because of the purported prejudicial nature of opinions wholly unrelated to his testimony in this case.   In each instance, Plaintiffs' arguments are unavailing.

## ARGUMENT

**I.      The Disclosure of Dr. Phillips Was Not Untimely**

Initially, Pfizer was not untimely in disclosing Dr. Phillips.   Dr. Phillips is not a retained expert, and therefore Pfizer was not obligated to include him in their disclosure of retained experts.   *See Sprague v. Liberty Mut. Ins. Co.*, 177 F.R.D. 78, 80 (D.N.H 1998) ("Since plaintiff's non-retained experts were not the subject of the scheduling order under Rule 26(a)(2)(C), they had to be disclosed 90 days before the ready for trial date."); *Adams v. J. Meyers Builders, Inc.*, No. 08-CV-425, 2009 WL 4348675, at *4 (D.N.H. Dec. 2, 2009) ("But the court rejects Myers's similar challenge to Zwicker's testimony, because no Rule 26(a)(2)(B) report was required of him as a non-retained expert.").   As noted above, Dr. Phillips worked for

---

[1] See separately filed Memorandum in Opposition to Plaintiffs' Motion *in Limine* to Exclude Testimony of Pfizer's Non-Retained Witnesses.

Kaiser, in the emergency room of a Kaiser hospital, for approximately 18 months in 1997-1999. (Phillips Dep. at 43:10-25.)   Since then, as Plaintiffs concede, he has devoted substantial amounts of time to researching and investigating Kaiser's medical and business operations. (Pl. Mem. at 2.)   Indeed, Dr. Phillips' investigative interest in Kaiser's medical and business operations was triggered by events he witnessed while working there. (Phillips Dep. at 44:10-20.)

In sum, Dr. Phillips possesses a wealth of knowledge about Kaiser operations, knowledge he gained through first-hand experience as a Kaiser physician and also as an independent investigator of Kaiser's operations.   Pfizer has not funded any of this research or investigation. Nor has Pfizer provided funding to Dr. Phillips for an expert report or compensated him for preparation for his testimony in this case. (Phillips Dep. at 38:21-39:10.)   Dr. Phillips possesses first-hand knowledge of the medical and business operations of Kaiser as well as specialized knowledge born of years of research and investigation, conducted independently of this litigation. Although he may be called on to offer opinion testimony based upon that research and investigation, Dr. Phillips has not been retained as an expert witness.

## II.   Dr. Phillips' Testimony Is Both Relevant And Admissible Pursuant To Rules 401, 402 And 702

Plaintiffs argue that Dr. Phillips does not possess any specialized expertise or knowledge which qualifies him to offer testimony about "the operation and business practices of Kaiser." (Pl. Mem. at 5.)   Plaintiffs acknowledge that Dr. Phillips worked "in the emergency room of a Kaiser medical facility in Fresno, California from September of 1997 to March of 1999. (*Id.* at 2.)   Further, Plaintiffs concede that Dr. Phillips has "spent [a] decade writing and testifying about managed care, generally, and Kaiser, specifically . . . ." (*Id.*)   Plaintiffs likewise concede that Dr. Phillips has been an expert witness regarding Kaiser's medical and business practices on "at least 30 occasions." (*Id.*)   As a result,  Plaintiffs do not seriously contest his intimate familiarity with the Kaiser organization.   Instead, they argue that "[t]here is nothing esoteric or difficult to understand about what Kaiser does." (*Id.* at 5.)   However, as Dr. Phillips' testimony makes clear,

there are many aspects of Kaiser's operations that are in fact carefully cloaked in secrecy and not publicly acknowledged.

The cases relied upon by Plaintiffs are inapposite. For instance, *United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992), stands only for the unremarkable and uncontested proposition that a party cannot offer an expert witness who serves merely to bolster the testimony of fact witnesses. Further, the Second Circuit's decision in *Cruz* was specifically directed to expert testimony regarding drug trafficking activities, a fact carefully excised from Plaintiffs' citation. *Id.* ("Our ruling in no way retreats from the proposition 'that the operations of narcotics dealers are a proper subject for expert testimony under Fed. R. Evid. 702.' We hold only that the operations in question must have esoteric aspects reasonably perceived as beyond the ken of the jury and that expert testimony cannot be used solely to bolster the credibility of the government's fact-witnesses by mirroring their version of events.") (citation omitted). In this case, Dr. Phillips will not be testifying about simple, obvious components of Kaiser's operations, and his testimony will not be used merely to bolster the testimony of fact witnesses.

The other cases cited by Plaintiffs are equally inapt, stating simply that an expert witness cannot speak *for* fact witnesses, *see Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989), or that an expert is not always required where a juror can "utilize[e] his or her general knowledge to determine the presence of a breach" of duty. *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 342 F. Supp.2d 267, 283 n.9 (D.N.J. 2004). Plaintiffs' unavailing claims that "[t]here is nothing esoteric or difficult to understand about what Kaiser does" aside, Plaintiffs make no effort to connect the non-expert and non-esoteric testimony in the cases they cite with Dr. Phillips' analysis of Kaiser's sprawling, complex organization of a medical doctors, facilities and plans involving over 8.6 million members and over 181,000 employees.[2]

---

[2] See Fast Facts about Kaiser Permenente, available at
http://xnet.kp.org/newscenter/aboutkp/fastfacts.html

Plaintiffs also seek to exclude Dr. Phillips from testifying on the basis that his testimony is irrelevant. (Pl. Mem. at 1, 5.)  However, during his deposition, Dr. Phillips – in spite of Plaintiffs' repeated solicitation of testimony and opinions on unrelated and irrelevant issues, including the number of times Dr. Phillips has been married – offered numerous examples of the kind of specialized, relevant knowledge that he brings to the case, knowledge based both on his personal experience in a Kaiser hospital and on his extensive research on Kaiser entities.  For instance, Dr. Phillips testified about the pill-splitting practices he witnessed – and disagreed with – while working as a Kaiser physician.   (Phillips Dep. at 26:24-27:5.)   Dr. Phillips also discoursed at length on the complex arrangements by which the ostensibly non-profit Kaiser organization is in actuality a vehicle for substantial profits. (*See* Phillips Dep. at 143:23-145:23; 172:14-22.)   He also described the relationship between the doctors who operate within the Kaiser system and the "plan" at large, testimony which is plainly relevant and probative to any suit that, like Plaintiffs', hinges on the prescription and purchasing decisions of those very same doctors and that very same health organization.   (*Id.* at 176:11-178:2.)   Finally, Dr. Phillips testified regarding Plaintiffs' policy of promoting pill-splitting and their continued approval, and recommendation, of Neurontin.  (*Id.* at 185:20-187:18.)  In each case, Dr. Phillips testimony is relevant to the issues in this case.

## III.    Dr. Phillips' Testimony Is Not Prejudicial Or Inflammatory And Should Not Be Excluded Pursuant To Rule 403

Plaintiffs' argument that Dr. Phillips' testimony should be excluded wholesale consists of what they characterize as a  "parade of horribles" authored by Dr. Phillips. (Pl. Mem. at 3-4.) Plaintiffs also assert that allowing Dr. Phillips' testimony in this case "would amount to a side show on managed care practices, designed to inflame the passions of [the] jury." *Id.* at 7.   But none of the articles or opinions cited by Plaintiffs are actually before this Court, nor does Pfizer plan on soliciting any inflammatory testimony regarding their subject matter.  Further, Plaintiffs are well within their rights to object to any ***singular*** opinion or article that is offered into evidence, a fact which eliminates the need for a broad exclusion of Dr. Phillips' testimony.

Plaintiffs reject this individualized approach, and instead prefer to paint Dr. Phillips' potential testimony with a broad brush.   Indeed, Plaintiffs appear to believe that *any* testimony by Dr. Phillips, on *any* subject matter, is inherently inflammatory and prejudicial, as evidenced by their reference to "the 'Writings of Dr. Charles Phillips'" as an "inflammatory topic."  (Pl. Mem. at 1.)   In the end, Plaintiffs base their motion to exclude on nothing more than a speculative fear of Dr. Phillips' possible testimony.   Such speculation is not grounds for exclusion, however.   Tellingly, Plaintiffs do not suggest that the topics on which Pfizer plans to offer Dr. Phillips' testimony – the corporate structure of Kaiser as a profit-making "non-profit" entity, for instance, including, but not limited to, the interaction between the plan and its prescribing doctors – are themselves inflammatory or prejudicial.   Instead, they look to out-of-court statements and unrelated documents uttered and authored by Dr. Phillips and claim that those are somehow general grounds for exclusion.   In doing so, they gloss over the fundamental requirement that, in order for any part of Dr. Phillips' testimony to be unfairly prejudicial, those opinions or writings must actually be proffered as evidence.   As of the date of Plaintiffs' motion, the only reason any of those writings have entered the record is Plaintiffs' inclusion of them here, and solicitation of commentary regarding them at deposition.[3]

Finally, Plaintiffs suggest that this Court take "evidentiary alternatives" into account, (Pl. Mem. at 7), and that there exist any number of witnesses who are "qualified to testify . . . concerning the operations and business practices of Kaiser."  (Pl. Mem. at 8.)   In doing so, Plaintiffs rely on *Old Chief v. United States*, 519 U.S. 172 (1997).   But *Old Chief* does not stand for the proposition that a court should confront any possible prejudice by excluding a witness wholesale, nor does it suggest that a court should force a party to replace any potentially prejudicial testimony with a substitute.   Indeed, *Old Chief* stands only for the limited proposition that a less prejudicial "evidentiary alternative" must be used when "the point at issue is a defendant's legal status."  *Id.*, 519 U.S. at 190.   In other words, when a court can choose between

---

[3] These same criticisms apply to Plaintiffs' arguments regarding Rule 404(b).

two vehicles for presenting an objective fact, it must choose the less prejudicial vehicle. As Justice O'Connor noted in dissent, the decision rested on the determination that "there [was] no real difference between the 'evidentiary significance'" of the two records at issue. *Id.* Replacing Dr. Phillips' testimony is not like swapping one record for another. Indeed, Plaintiffs ignore the fundamental fact that Dr. Phillips testimony is unique, the result of years of study of the business operations of the Kaiser organization.

Further, even if Rule 403 does require a court to look to evidentiary alternatives to prejudicial evidence, it can only consider alternative evidence that "go[es] to the same point" as the identified prejudicial evidence. 2 Weinstein's Federal Evidence § 403.02 (2009); *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) (same). Plaintiffs have not identified any specific prejudicial evidence, nor have they identified any alternative evidence that "goes to the same point" as that offered by Dr. Phillips. *Id.* Plaintiffs themselves refer to Dr. Phillips' proposed topic of testimony – "the operation and business practices of Kaiser" – as "hopelessly vague." (Pl. Mem. at 5.) They offer no explanation of how Dr. Phillips' can be both "hopelessly vague" and yet allow them to now suggest evidentiary alternatives that "go[] to the same point." 2 Weinstein's Federal Evidence § 403.02. In sum, although former Kaiser employees might be able to provide some testimony about Kaiser operations, that testimony does not overlap the testimony of Dr. Phillips, nor is it informed by Dr. Phillips' unique perspective on the issues before this Court.

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that Plaintiffs' motion to exclude Dr. Charles Phillips be denied.

Dated: January 22, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Mark S. Cheffo
       Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Raoul D. Kennedy
       Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel:  (415) 984-6400

-and-

WHEELER TRIGG O'DONNELL LLP

By:   /s/ James E. Hooper
       James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel:  (303) 244-1800

-and-

8

WHITE AND WILLIAMS LLP

By:     /s/ David B. Chaffin
        David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel:  (617) 748-5200

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 22, 2010.

/s/ David B. Chaffin
David B. Chaffin

9