1

```
            UNITED STATES DISTRICT COURT
            DISTRICT OF MASSACHUSETTS
            MDL Docket No. 1629/Master File No. 04-10981

------------------------------X

IN RE: NEURONTIN MARKETING       MDL Docket No. 1629

SALES PRACTICES, AND PRODUCTS    Master File No.

LIABILITY LITIGATION             04-10981

------------------------------X


       VIDEOTAPED DEPOSITION OF ALBERT CARVER

                New York, New York

                  July 12, 2007










Reported by:
Amy A. Rivera, CSR, RPR
```

**Page 42**

A. Carver

Q. Does Kaiser have a website?
A. Yes, we do.
Q. And how long has Kaiser had this website?
A. For several years. I'm sorry. I don't know the exact year in which the website was launched.
Q. Who creates or decides its content?
A. The content of the website generally is under the health plan leadership.
Q. And how often is the content of the website changed?
A. Not frequently enough. I don't know the schedule of changing the website, but it's been a fairly stable website in terms of the types of content. But I can't tell you the frequency of updating or editing specific components of the website.
Q. Can Kaiser access its old web pages?
A. I'm not sure that I understand that question.
Q. I guess to the extent there was material posted on the website in the past which is no longer visible on the website, does Kaiser

**Page 43**

A. Carver

have access to an archive of that sort of information?
A. I believe we would have, yes.
Q. Have responsive documents been produced from the website?
MS. NUSSBAUM: That is a legal question and I don't think that, you know, the witness is a lawyer. If you want to ask him about the document production here, you know, in general he's a 30(b)(6) witness. He is prepared to respond to that.
Q. In response to the defendant's request for production of documents, was the website then passed -- web pages searched?
A. Could I ask a question of clarification? What do you mean by "website"?
Q. You indicated that Kaiser has a website; correct?
A. I did.
Q. And which website were you referring to?
A. I was referring to a website that's a public website, and from your line of questioning, I'm not sure that that's what you were -- I'm now

**Page 44**

A. Carver

confused as to what you are meaning by the "website."
Q. In addition to the public website, does Kaiser maintain internal websites?
A. Yes, we do.
Q. So then I guess returning to the question, I guess first were documents that are either currently visible on Kaiser's website or otherwise were previously posted to that website during the relevant period searched in response for -- to the defendant's requests for productions of documents?
A. I believe they were.
Q. What's the basis for that belief?
A. The basis for the belief is that your request for documents and information came to our legal counsel. I believe that --
MS. NUSSBAUM: I would ask you not to give any specific advice or discussion that you had with counsel with respect to their request.
Q. Does anyone at Kaiser have knowledge of whether the public website, including its previously posted content, was searched except information derived from Kaiser's legal counsel?

**Page 45**

A. Carver

A. I do not know whether or not previous versions of publicly-available information on the website were searched or not.
Q. But the currently available website was -- public website was searched?
MS. NUSSBAUM: To the best of your knowledge.
A. To the best of my knowledge, all the information has been provided from all of our current public -- all of our current sources of information.
Q. And that's information you obtained from legal counsel, is that right?
MS. NUSSBAUM: I'm unclear now, when you say that's information that you obtained from your legal counsel, would you rephrase that question?
MR. JAMES: In stating that the public website has been searched, does he have any basis for that belief other than information from legal counsel?
Q. Is there anyone at Kaiser, other than Kaiser's legal counsel, who would know whether information relating to Kaiser's public website

```
                                                                  210
 1
 2              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
 3         MDL Docket No. 1629/Master File No. 04-10981

 4

 5  ------------------------------X

 6  IN RE: NEURONTIN MARKETING       MDL Docket No. 1629

 7  SALES PRACTICES, AND PRODUCTS    Master File No.

 8  LIABILITY LITIGATION             04-10981

 9  ------------------------------X

10

11     VIDEOTAPED DEPOSITION OF ALBERT L. CARVER

12                 New York, New York

13                  July 13, 2007

14

15

16

17

18

19

20

21  Reported by:
    Amy A. Rivera, CSR, RPR
22

23

24

25
```

**Page 439**

A. Carver

2  MS. NUSSBAUM: If you know.
3  A. I do not know.
4  Q. Is this something that keeps you awake
5  at night?
6  A. It is not.
7  (Kaiser-22 marked nor identification.)
8  Q. Have you had a chance to review this
9  document?
10 A. I have.
11 Q. Is this -- whose website is this? If
12 you look at the upper right-hand corner --
13     MS. NUSSBAUM: If you know.
14 A. I don't know.
15     MS. NUSSBAUM: Does counsel want to
16 represent where this document came from?
17 A. I've never seen the document, so I
18 really do not know.
19 Q. Have you heard of the website
20 kaiserpermanente.org?
21 A. Yes, I have.
22 Q. And whose website is that?
23     MS. NUSSBAUM: If you know.
24 A. I don't know the legal owner of it.
25 Q. Do you know who maintains this

**Page 440**

A. Carver

2  website?
3  A. I don't.
4  Q. Does -- do the plaintiffs have a
5  separate public website you know which is not
6  kaiserpermanente.org?
7  A. I do not believe so. Are you talking
8  about a public website?
9  Q. Yes.
10 A. That's to the public, external?
11 Q. Exactly.
12 A. I believe there's just one website.
13 Q. And it's kaiserper.org?
14 A. Yes, kp.org.
15 Q. Do you know if the two are equivalent?
16     MS. NUSSBAUM: The witness testified
17 he doesn't know what website this is and he didn't
18 know where you got this document, what he's aware
19 of is kp.org.
20 Q. Are you aware of a site called kp.org,
21 but not a site called kaiserper.org?
22 A. Yes, from a technical issue I don't
23 know what it's called.
24 Q. The logo in the upper left-hand corner
25 of this document, is that the logo, the Permanente

**Page 441**

A. Carver

2  Medical Group's logo, or is it a logo associated
3  with some other Kaiser entity, or you know,
4  something that you've never seen before?
5  A. No, this a logo for Kaiser Permanente,
6  the umbrella organization.
7  Q. So for both the plaintiffs and the
8  Permanente Medical Group, is that correct?
9  A. That's correct. I cannot tell from
10 this logo that's been used whether or not this is
11 part of the Permanente Medical Group context or
12 not. But certainly the logo up there belongs to
13 the umbrella, I guess, branding of our
14 organization.
15 Q. If I were to represent to you that my
16 colleague seated here had printed this document
17 from the worldwide web from this address in the
18 upper right-hand corner, would you have any reason
19 to doubt that?
20 A. No, I wouldn't. If you're asserting
21 that, I wouldn't doubt it.
22 Q. If this were a publicly accessible
23 document at an address called
24 kaiserpermanente.org, would you be concerned about
25 the content of this document?

**Page 442**

A. Carver

2      MS. NUSSBAUM: Objection. It calls
3  for his personal speculation. As to whether or
4  not he'd be concerned about the document, I'm not
5  going to let him answer that. I don't know what
6  that means.
7  Q. You can answer the question, if you
8  understand it.
9      MS. NUSSBAUM: What does "concern"
10 mean?
11 Q. If you have a comment as to the
12 meaning of the word concern, you're free to answer
13 the question?
14     MS. NUSSBAUM: Why don't you define it
15 using of the word concern. I'm not going to have
16 him answer the question until you articulate a
17 question that can be answered.
18 Q. Do you understand what the term
19 "concern" means?
20 A. Could we reask the question, please?
21     MR. JAMES: Could you read back the
22 question?
23     (Record read.)
24     MS. NUSSBAUM: I ask you to define the
25 term concern as you're using it --

447

A. Carver

```
 1                A. Carver
 2   supervise the content of the remainder of the
 3   website?
 4       A.   I'm sorry, I do not know.
 5       Q.   Do you know who does manage the
 6   content of the plaintiff's public website?
 7            MS. NUSSBAUM: Are you referring to
 8   the kp.org website, and you want to know who
 9   manages the content of that website, if he knows?
10            MR. JAMES: Yes.
11       A.   There is a manager that's responsible,
12   her name is not coming to my mind at this second,
13   but I'm be happy to provide it to you as soon as
14   it does, or through counsel.  There is a manager
15   of the -- of this particular website.
16       Q.   Would you personally feel compelled to
17   take some action if you learned that Permanente
18   Group's public website was advising visitors that,
19   "People who took Gabapentin for chronic pain said
20   they felt one-third less pain while they were
21   taking Gabapentin"?
22            MS. NUSSBAUM: Objection.  I'm going
23   to ask the witness not to answer that.
24       Q.   You can answer.
25            MS. NUSSBAUM: No, first of all, it's
```

448

```
 1                A. Carver
 2   an unintelligible question.
 3            Second of all, it's a question that
 4   calls for the witness' personal opinion, which is
 5   totally irrelevant in the action.
 6            Third, we have not been able to
 7   identify whose website this is.
 8            Fourth, we have not been able to
 9   identify this is a small piece of something, what
10   this is, who it's available to, what its purpose
11   is.  I think that your question is highly
12   misleading and I will not have the witness answer
13   it.  I don't think it's capable of being answered
14   and it would simply be speculation and
15   hypothetical.
16            MR. JAMES: Are you directing the
17   witness not to answer the question?
18            MS. NUSSBAUM: I think that there's
19   not a question that's capable of being answered
20   without speculation, a hypothetical question and
21   having to do with his personal feelings about
22   something which is totally irrelevant in this
23   action.
24       Q.   Do you understand that questions
25   relating to the witness' personal feelings are a
```

449

```
 1                A. Carver
 2   basis for counsel directing the witness not to
 3   answer?
 4            MS. NUSSBAUM: I didn't say that.  You
 5   want to ask a question that's capable of being
 6   answered, we will see if that's possible.  You
 7   want to identify this document and not give a
 8   misleading few pages of something that there's no
 9   testimony as to where it comes from or who
10   contained the content or anything else, then I'm
11   happy to address appropriate questions.  The
12   witness has been answering questions now for two
13   full days.
14            MR. JAMES: To be clear, you're not
15   asserting the attorney-client privilege over the
16   response?
17            MS. NUSSBAUM: Excuse me?
18            MR. JAMES: Attorney-client privilege
19   is not in any way implicated by my question, is
20   that correct?
21            MS. NUSSBAUM: I don't even understand
22   your question, so how can I know whether or not it
23   implicates attorney-client privilege?  I have no
24   idea if it's written by attorneys or supervised by
25   attorneys or anything else.  The present question
```

450

```
 1                A. Carver
 2   is not capable of being answered.  Do you want to
 3   ask a question that's capable of being answered,
 4   you know, he'll attempt to answer it as he's been
 5   doing for two full days here.
 6       Q.   If you turn to the second page of the
 7   document, do you have any familiarity with who
 8   Shannon Erstadt is, at the bottom?
 9       A.   I'm sorry, I do not.
10       Q.   Actually at this point, flipping over
11   to the third page, do you have any understanding
12   of what the company Healthwise, Incorporated is?
13       A.   I do from personal experience in that
14   Healthwise is in the business of producing general
15   health information.  I was a recipient of the
16   Healthwise -- a document called the Healthwise
17   Handbook at my home a few years ago, and it had
18   information regarding just a number of simple
19   little things regarding medical conditions and
20   their management, so, it was really intended --
21   the document that I received, which actually was a
22   booklet, was intended to be, to assist individual
23   patients or members -manage really minor
24   conditions such as if you have a cough or if you
25   have a sore throat or something of that -- that
```