UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:   NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No.  1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO
EXCLUDE THE TESTIOMONY OF DAVID FRANKLIN AND RELATED EVIDENCE**

# Table of Contents

I.  DAVID FRANKLIN HAS PERSONAL KNOWLEDGE OF UNLAWFUL MARKETING PRACTICES UTILIZED BY THE DEFENDANTS THAT ARE RELEVANT TO THE ISSUES IN THIS ACTION ................................................................................................... 1

II.  DR. FRANKLIN WILL NOT PRESENT EXPERT OPINION ............................................. 5

III. DR. FRANKLIN'S RECORDINGS AND RECOLLECTIONS OF STATEMENTS EXHORTING PARKE-DAVIS EMPLOYEES TO ENGAGE IN UNLAWFUL MARKETING IS NOT INADMISSIBLE HEARSAY ......................................................... 7

## Table of Authorities

**Cases**

Bradley v. Philips Chemical Co., Inc., 484 F. Supp. 2d 604 (S.D. Tex.  2007) ........................... 6

Cuddy v. Wal-Mart Super Center, Inc., 993 F. Supp. 962 (W.D. Va. 1998)................................ 7

United States v. Gonzalez-Maldonado, 115 F.3d 9 (1st Cir. 1997)............................................... 4

**Rules**

Fed. R. Evid. 701 ........................................................................................................................ 5

Fed. R. Evid. 702 ........................................................................................................................ 5

Fed. R. Evid. 801 ..................................................................................................................... 7, 8

Fed. R. Evid. 803(5)................................................................................................................. 8, 9

David Franklin requires little introduction to this Court.  The Court, of course, not only presided over his *qui tam* action, which exposed Defendants' off-label marketing of Neurontin, but it has heard him testify before it and has found his testimony sufficiently credible to enter restraining orders against the Defendants.  Perhaps because they know that Dr. Franklin is a credible witness, Defendants have moved *in limine* to preclude him from taking the stand in this action.  Dr. Franklin appears on Kaiser's witness list and Kaiser[1] intends to call him to the stand at the upcoming trial.

Defendants' grounds for their *in limine* motion are for the most part a lengthier version of the arguments they previously made to preclude Dr. Franklin's testimony in their Motion In Limine To Exclude Evidence of Marketing or Advertising Materials and Conduct, David Franklin and the Franklin Litigation, and Other Claims or Actions (Docket No. 1912) in this MDL just prior to the <u>Bulger</u> trial.[2]  The Court denied the motion outright at the final pretrial conference in <u>Bulger</u> and it should also take the same action in this case.

<u>ARGUMENT</u>

I.    **DAVID FRANKLIN HAS PERSONAL KNOWLEDGE OF UNLAWFUL MARKETING PRACTICES UTILIZED BY THE DEFENDANTS THAT ARE RELEVANT TO THE ISSUES IN THIS ACTION**

Defendants argue that because Dr. Franklin was only employed in Parke-Davis's Northeast Customer Business Unit ("NECBU"), and none of the Kaiser Plans operate in any of the states within the NECBU, Dr. Franklin could not possess any relevant information regarding

---

[1] "Kaiser" refers to Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals.  Kaiser Foundation Health Plan, Inc. is the parent company of the following companies and has brought this lawsuit on behalf of itself and its subsidiaries: Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio.

[2] <u>Bulger v. Pfizer, Inc., et al.</u>, C.A. No. 07-11426-PBS (D. Mass.).

how Kaiser could have been harmed by unlawful practices Dr. Franklin witnessed.  Defendants'
argument makes it appear that the illegal conduct uncovered in the <u>Franklin</u> litigation was merely
the unauthorized conduct of a couple of Massachusetts miscreants.  Defendants, however, did not
pay a $430 million criminal fine or plead to a criminal offense due to renegade representatives
off on a frolic; the company was penalized because Dr. Franklin blew the whistle on a national
campaign of unlawful marketing.  To the extent Dr. Franklin has knowledge of a national
campaign and Kaiser has evidence that it was the victim of the same campaign, Dr. Franklin's
testimony is admissible.

Although Dr. Franklin did not work in any territory where Kaiser operated health centers,
he has made it clear that he was trained by Parke-Davis to engage in the illegal conduct at issue
in training courses that all Parke-Davis medical representatives and sales representatives
attended, not just NECBU employees.  This is clear from the Disclosure he filed in 1996 at the
commencement of his *qui tam* case, attached as Exhibit C to the Declaration of Mark S. Cheffo
in Support of Defendants' Motion *in Limine* to Exclude the Testimony of David Franklin and
Related Evidence (the "Disclosure").  He received formal training as a Medical Liaison at Parke-
Davis's Ann Arbor Michigan facility.  It was in Ann Arbor—in the midst of *national* training—
that Parke-Davis superiors turned off the video camera that was recording the formal training
session and then explained how medical liaisons could avoid FDA rules that prohibited the
liaisons from riding along with sales representatives during "cold calls," that the liaisons were
expected to sell drugs, and that they were expected to say anything necessary to convince a
physician to prescribe Parke-Davis's medications for his or her patients.  Disclosure at 8-9, 31.
During formal national liaison training, Dr. Franklin was also schooled in how to avoid putting

anything on paper that would evidence improper off-label presentations in promotional circumstances.  Disclosure at 30-31.

Moreover, Dr. Franklin did not just undergo national medical liaison training.  Since most of Parke-Davis medical liaisons were former sale representatives, his superiors recommended that he also receive sales training.  Dr. Franklin attended a course at corporate headquarters where he learned the sales techniques Parke-Davis employed throughout the entire country. Disclosure at 17.  Thus, Dr. Franklin is qualified to testify how Parke-Davis expected its sales force and its medical liaisons across the country to promote Neurontin.  Evidence of how Parke-Davis trained its sales force and its medical liaisons is probative of the messages Defendants intended to deliver to prescribing physicians, and Dr. Franklin is qualified to provide this testimony.

Dr. Franklin's personal knowledge goes beyond the fact that Parke-Davis expected its employees to promote off-label.  Dr. Franklin also has extensive knowledge that Parke-Davis knew that its off-label claims for Neurontin were false and misleading—the core of Kaiser's RICO and California Business & Professions Code §17200 claims.  Dr. Franklin disclosed that false information regarding clinical trials was routinely given to physicians and negative information about the drug's effectiveness for bipolar disorder and neuropathic pain was suppressed.  Disclosure at 21-28.  As the Court recognized in the Bulger products liability case, this evidence is relevant to, and admissible on, the issue of corporate intent.  Intent to deceive, of course, is a material element of Kaiser's fraud claims.

Additionally, Kaiser contends that Defendants disseminated their key messages concerning the off-label use of Neurontin through a series of marketing tactics, such as consultants' meetings, speakers' bureaus, peer-to-peer marketing, and various disguised

payments to physicians.  Dr. Franklin can testify from his personal knowledge how each of these programs worked and explain to the jury how they were designed to influence physicians prescribing habits.

It is immaterial that Dr. Franklin did not participate or witness these tactics in the CBUs where Kaiser operated its health centers.  Kaiser will present evidence that the tactics described by Dr. Franklin were conducted in accordance with marketing strategies and marketing plans that were formulated at Parke-Davis's corporate headquarters.  Pursuant to these strategies, all of the CBUs, not just the NECBU, held events and executed tactics comparable to those which Dr. Franklin either witnessed or participated.

Defendants contend that Dr. Franklin's own deposition testimony establishes that in some of the states where Kaiser operates medical liaisons did not engage in the unlawful manner that was consistent with Dr. Franklin's training.  Inconsistencies in a witness's testimony are not a basis for barring the witness from testifying.  Cross-examination, not preclusion, is the proper way to confront a witness whose testimony is inconsistent.  If Dr. Franklin has made contradictory statements in his depositions, they should impeach him with them.  Credibility is not a basis for barring a witness.  If a witness is competent to testify—and Kaiser has established that Dr. Franklin is competent—whether a witness is credible can only be decided by the trier of fact.  United States v. Gonzalez-Maldonado, 115 F.3d 9, 15-16 (1st Cir. 1997).  Defendants cannot preclude a witness from taking the stand merely because they believe his testimony is inconsistent.

Alternatively, if the conduct described by Dr. Franklin was never performed where Kaiser operated, Defendants could present witnesses who were employed in the West CBU and other CBUs to establish that regardless of the national scope of Parke-Davis's marketing

campaigns, certain regions ignored their instructions from headquarters.  Curiously, however,

Defendants have failed to designate on their witness list a single individual who worked in any of

the CBUs in which Kaiser operates.   Indeed, if the Court grants the Defendants' motion, the jury

will be deprived of hearing from any witness with personal knowledge how Parke Davis's

national marketing plans were actually implemented on the physicians who made prescribing

decisions.

In his Disclosure Dr. Franklin stated "Parke-Davis' scheme was deliberate company

policy, formulated at a high corporate level and was not the result of rogue or aberrant regional

employees."  Disclosure at 6.  Dr. Franklin should be able to testify about the evidence of which

he has personal knowledge that supports that conclusion.

## II.    DR. FRANKLIN WILL NOT PRESENT EXPERT OPINION

Kaiser has not designated Dr. Franklin as an expert and it does not intend to seek expert

opinion under Rule 702 from him.   To the extent Kaiser seeks to elicit opinion testimony from

Dr. Franklin, its admissibility will depend upon a straight forward application of Fed. R. Evid.

701.  Consequently, Kaiser does not understand the need to speculate upon the types of opinion

Dr. Franklin might be permitted to state *in limine.*  In the event Kaiser seeks his opinion on the

stand on a questionable issue, the matter is best addressed by a timely objection.  The Court can

then rule based upon a full record and in context.  There is no compelling reason to provide

Defendants with an advisory opinion on admissible opinions.

One point raised by Defendants, however, must be addressed.  Defendants seek to bar Dr.

Franklin from delivering any testimony regarding Parke-Davis's compliance with FDA

marketing rules since Dr. Franklin is not a designated expert on the FDA.  But individuals who

work in a highly regulated industry are frequently permitted to testify about their (and their

company's) understanding of the rules governing their industry.   A witness does not have to

have a legal degree to testify about the specialized rules and regulations if the witness in fact is required to deal with those rules and regulations on a daily basis and has personal experience with them.  See e.g., Bradley v. Philips Chemical Co., Inc., 484 F. Supp. 2d 604, 616, n. 34 (S.D. Tex.  2007) (risk manager with years of experience issuing workers' compensation policies and complying with state regulations affecting such policies could give lay opinion under Rule 701 regarding the construction of the workers' compensation policy at issue and related state regulations).

Thus, Dr. Franklin can testify about his understanding of the FDA marketing rules while he was at Parke-Davis, and how the company understood the regulatory requirements.  From his personal observations (or from admissions made to him by Defendants' officers and employees), Dr. Franklin can also testify whether Parke-Davis complied with its understanding of the applicable rules.  He can also testify about conduct he observed that would allow the jury to determine for itself whether Parke-Davis conducted its marketing of Neurontin in compliance with the applicable FDA rules.[3]   Similarly, from his personal knowledge regarding what Parke-Davis knew and did not know about Neurontin's use for off-label indications (or from admissions made to him by corporate employees), Dr. Franklin can testify whether the company knew its representations concerning the drug's off-label uses were truthful or not.

---

[3] Frankly, given that Defendant Warner-Lambert pled guilty to felony violations of distributing a drug for uses unapproved by the FDA and for distributing misbranded drugs, it's impossible for Defendants to contend that they did operate in compliance with the FDA's marketing rules.

III.   **DR. FRANKLIN'S RECORDINGS AND RECOLLECTIONS OF STATEMENTS EXHORTING PARKE-DAVIS EMPLOYEES TO ENGAGE IN UNLAWFUL MARKETING IS NOT INADMISSIBLE HEARSAY**

Dr. Franklin attached to his Disclosure[4] verbatim transcripts of conversations among Parke-Davis employees that were routinely recorded and preserved on the company's Aspen voice-mail system.  Dr. Franklin also produced for the Defendants in the <u>Franklin</u> litigation the tape from which the transcripts were made.  The recordings (and the resulting transcripts) capture a number of conversations between members of the NECBU discussing how medical liaisons could be used by the sales force to increase Neurontin sales, particularly for unapproved uses.  Kaiser has placed the tapes and the transcripts on its witness list and may play excerpts at trial.[5]

Defendants contend that the tapes constitute inadmissible hearsay.  The tapes, however, are comprised exclusively of statements from persons who were employees of the Defendants at the time the conversations were recorded.  The tapes clearly constitute admissions of a party opponent, and are not considered hearsay pursuant to Fed. R. Evid. 801 (d)(2).  <u>Cuddy v. Wal-Mart Super Center, Inc.</u>, 993 F. Supp. 962, 967 (W.D. Va. 1998) (tape recording of conversation with a corporate employee constituted an admission of a party opponent under Fed. R. Evid. 801(d)(2)(D) and could not be excluded as hearsay).

Dr. Franklin's disclosure also memorialized statements Park-Davis employees made when the Plaintiff was present, but which were not recorded on the Aspen voice-mail system.

---

[4] Defendants also seek a ruling that Dr. Franklin's Disclosure and the complaint in his civil action are inadmissible hearsay. Neither document is on Kaiser's exhibit list, and Kaiser does not anticipate that it will seek to have those documents admitted.

[5] Kaiser has not made a final decision if portions of the recordings or the transcripts will be played (or read) to the jury.  The entire tape is quite lengthy, so only selected excerpts would be played/read.

Defendants are particularly concerned about statements made by the NECBU's Sales Director, John Ford, when he told members of the CBU that:

> I want you out there every day selling Neurontin.  Look this isn't just me, it's come down from Morris Plains [headquarters of Warner-Lambert, Parke-Davis's corporate parent] that Neurontin is more profitable than Accupril so we need to focus on Neurontin. . . We all know Neurontin is not growing for adjunctive therapy, besides that's not where the money is.  Pain management, now that's money.  Monotherapy, that's money.  We don't want to share these patients with everybody. . . That's where we need to be, holding their hand and whispering in their ear, Neurontin for pain, Neurontin for monotherapy, Neurontin for bipolar, Neurontin for everything. . . I don't want to see a single patient coming off Neurontin before they've been up at least 4800mg/day.  I don't want to hear that safety crap either…

Disclosure at 11.[6]

As this statement (and the other statements recorded in the Disclosure) was made by a Parke-Davis employee, it also qualifies as an admission of a party opponent, and cannot be excluded as hearsay under Rule 801(d)(2).  Defendants, however, assert that Dr. Franklin may only testify about the Ford statement (and any other statements in the Disclosure) based on his current memory at the time he is called to the stand.  That is not necessarily true.

Dr. Franklin's memorialization of the statement in his Disclosure likely qualifies as Recorded Recollection under Rule 803(5).  If Dr. Franklin is unable to recall the matter sufficiently and fully, Kaiser may read the statement into the record if Dr. Franklin establishes that he recorded the Ford Statement in the Disclosure when the matter was fresh in his mind and it was made to correctly reflect his knowledge.  There can be no doubt that the quotations included within the Disclosure were created to reflect Dr. Franklin's knowledge correctly; a *qui tam* disclosure is intended to be a correct statement of all material facts known by a Relator.  It is also clear that the matter was fresh in the Relator's memory when the Disclosure was drafted.

---

[6] Kaiser has not made a final decision if it will inquire about the Ford Statement in the course of Dr. Franklin's testimony.

The Disclosure was compiled in the summer of 1996, only weeks after the actual events occurred.  The Court, of course, cannot make a definitive determination if memorialization of the Ford Statement and the other quotations referenced in the Disclosure qualify for the Recorded Recollection exception to the hearsay rule until the witness has testified and the Court can determine that Kaiser has provided the necessary factual predicate for admission.  Consequently, the Court cannot issue a blanket order at this time that the Ford Statement cannot be read to the jury.  It should defer decision until it can determine whether Rule 803(5) is applicable.

Nor can Defendants prohibit Kaiser's counsel from attempting to refresh Dr. Franklin's recollection, if necessary, by reviewing the document.   Kaiser's counsel realizes there are limitations on how a witness's memory can be refreshed, but there is no basis to believe that Kaiser's counsel will not comply with the proper procedures for refreshing memory or that the Court will be unable to monitor the situation if the witness cannot clearly recall the statements. Again, there is no reason for the Court to make an *in limine* ruling when the matter can be easily and completely addressed at the time the issue arises in the course of a trial.

<u>CONCLUSION</u>

For the reasons stated above, the Court should deny all aspects of Defendants' Motion to Exclude the Testimony of David Franklin and Related Matters.

Dated:  January 22, 2010

Respectfully submitted,

By:   */s/ Linda P. Nussbaum*
      Linda P. Nussbaum

KAPLAN FOX & KILSHEIMER LLP
Linda P. Nussbaum, Esq.
850 Third Avenue, 14th Floor
New York, New York 10022

*Attorneys for Plaintiffs Kaiser Foundation*
*Health Plan, Inc. and Kaiser Foundation*
*Hospitals*

Thomas M. Greene
GREENE LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

*Of Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management #3 on January 22, 2010.

      */s/ Elana Katcher*
      Elana Katcher