UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF
DR. RENA CONTI AND DR. CURT FURBERG**

## PRELIMINARY STATEMENT

Defendants' hyper-technical motion to exclude to the testimony of Dr. Rena Conti and Dr. Curt Furberg elevates form over substance and should be denied. Dr. Conti and Dr. Furberg were timely disclosed as experts. Indeed, Defendants have been aware of their status as experts and their opinions for more than two years in Dr. Conti's case, and a year in Dr. Furberg's. Defendants received reports from each expert containing the opinions they intend to express at trial, and all other material required by Rule 26(a)(2)(B), and took three days of depositions of these experts. Defendants can show no prejudice from Dr. Conti's and Dr. Furberg's completely unsurprising inclusion on Kaiser's witness list for trial.

## FACTUAL BACKGROUND

Dr. Rena Conti is an instructor of Health Economics at the University of Chicago and an Academic Affiliate of Greylock McKinnon Associates, a consulting and litigation support firm. (Revised Declaration of Rena Conti, Ph.D. (Dkt. No. 1142) ¶ 1.) She received her Ph.D. from Harvard University. (*Id.* ¶ 4.) Dr. Conti has submitted three declarations in this case, on December 19, 2007, which was revised and re-submitted on February 21, 2008 (Dkt. No. 1142), and another in rebuttal to an expert retained by Defendants on March 28, 2008. (Exh. A to the accompanying Declaration of Elana Katcher ("Decl.").) Dr. Conti was deposed over two days on February 12 and 13, 2008.

In her expert declarations, Dr. Conti explained and analyzed the primary sources of prescribing data that can be and are used to quantify off-label prescriptions for and prescribers of Neurontin. She explained what information can be gleaned from these data sets, including the number of Neurontin uses for both on- and off-label uses, by physician specialty and by daily dose, and how that information is obtained. Her report presented, both in the report and in a

series of graphs, the explosion in Neurontin prescription-writing over various periods covering Defendants' fraud, for each of the off-label uses at issue.

Dr. Curt Furberg is currently Professor of Public Health Sciences and Senior Advisor to the Dean for Health Services Research and Health Policy at Wake Forest University School of Medicine. (*See* Expert Report of Curt Daniel Furberg, M.D., Ph.D. (Decl. Exh. B) ¶ 4.) He is a medical doctor admitted to practice in Sweden and received his medical training and Ph.D. equivalent at the University of Umea in Sweden. He has more than three decades of expertise and experience in the areas of epidemiology and clinical trial design, conduct, monitoring, interpretation, and reporting. (*Id.* ¶ 5.) Among other relevant experience, he has served as Principal Investigator or Scientific Project Officer on a large number of clinical trials, and has served or is serving on the Data Safety Monitoring Committee for over fifty clinical trials. (*Id.* ¶ 5.) Dr. Furberg is the author or co-author of approximately 370 peer-reviewed articles and 60 book chapters on topics including epidemiology, clinical trials, non-steroidal anti-inflammatory drugs, hormone replacement therapy, lipid disorders, and hypertension. (*Id.* ¶ 14.)

Only months ago, the court in the Fosamax litigation found that Dr. Furberg, due to his "extensive experience as a clinical trial investigator" was qualified to offer testimony "about the utility and limitations of clinical trials with respect to obtaining information about drug efficacy and safety." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 194 (S.D.N.Y. 2009). The Court also held that Dr. Furberg's "review of the published data from Merck's clinical trials and his experience in the field qualify him to interpret that data as it relates to the efficacy and safety of Fosamax treatment." *Id.*

Dr. Furberg's report was the subject of a motion seeking leave to submit his report after the initial deadline for expert reports. The Court granted that motion on January 6, 2009. Dr.

Furberg signed his report on December 9, 2008, and he was deposed on March 9, 2009. In his expert report, using the safety data in an FDA review, Dr. Furberg assessed Neurontin's association with increased risks of depression, with and without suicidal ideation. He opines as to those findings' relevance to the use and promotion of Neurontin for patients with bipolar disorder and examines promotional claims of Neurontin's effect on mood in light of the findings. He concludes that Defendants did not pursue the safety signal provided by the FDA review, noting a "failure" by Defendants "to disseminate openly the evidence that gabapentin may cause depression with and without suicidal ideation." (Furberg Report ¶ 32.) He also reviewed a key publication purportedly on Neurontin's effect on the mood and well-being in epilepsy patients, finding that it "does not have any valid data on mood or well-being." (*Id.* ¶ 35.)

## ARGUMENT

### I. Defendants Have Known of Dr. Conti's and Dr. Furberg's Testimony and Had Full Discovery of Their Opinions and Their Bases.

It is simply not true that Pfizer had no notice of Dr. Conti's and Dr. Furberg's role as experts for Kaiser here. Dr. Conti's first declaration was filed on December 19, 2007. Defendants spent two days deposing her over February 12-13, 2008. Less than a week after her deposition concluded, at a hearing on February 19, 2008, counsel for the Coordinated Plaintiffs, after reminding the Court that the Coordinated Plaintiffs "have the same five claims" as the Class, added, "**We have the same experts as the Class,** your Honor." (Transcript of February 19, 2008 hearing, p. 20-21 (emphasis added).) Defense counsel attended that hearing, but Defendants did not insist on a formalistic designation of Dr. Conti by the Coordinated Plaintiffs at that time, nor should they have, because none was necessary.

Dr. Furberg submitted his report well after the February 2008 hearing, and Pfizer then deposed him. As the Court knows, for efficiency's sake, the many plaintiffs in this consolidated

litigation have proceeded largely in tandem throughout the discovery period. There was no need for Kaiser, among the several Coordinated Plaintiffs, to go through the exercise, as Defendants appear to argue, of joining a motion for leave to submit Dr. Furberg's report in the middle of discovery which the Coordinated and Class Plaintiffs had conducted cooperatively.

## II.  Defendants Have Demonstrated No Prejudice.

The reports of Dr. Conti and Dr. Furberg were timely served, and so there has been no violation of Rule 26's disclosure requirements. Defendants cite no authority for the interpretation of Rules 26 and 37 they press on the Court, where a party violates Rule 26(a)(2) even if the opposing party receives all of the information required by Rule 26(a)(2) and has a full opportunity to conduct discovery.[1] Even if Defendants' interpretation was correct, however, Defendants must show prejudice stemming from their technical complaint about the labeling of Dr. Conti's and Dr. Furberg's reports. *See* FED. R. CIV. P. 37(c)(1) (providing for preclusion of non-disclosed information "unless the failure was substantially justified or harmless").[2] Defendants cannot demonstrate prejudice.

---

[1] Each of the cases cited by Pfizer on expert preclusion involve instances in which disclosure was not made until after the deadline or was otherwise deficient in the first place; none involved the later designation of an expert whose identity and opinions had been previously disclosed to the complaining party. *See, e.g., Adams v. J. Myers Builders, Inc.*, 2009 U.S. Dist. LEXIS 113855, at *14-23 (D.N.H. Dec. 2, 2009) (deficient expert report); *Santiago-Diaz v. Laboratorio Clinico y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006) (expert disclosures made seven months late); *Primus v. United States*, 389 F.3d 231 (1st Cir. 2004) (expert designated three months after deadline); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R.*, 248 F.3d 29, 35 (1st Cir. 2001) (deficient expert report); *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43 (1st Cir. 2002) (affirming dismissal for failure to comply with scheduling order). In *Poulis-Minott v. Smith*, 388 F.3d 354 (1st Cir. 2004), the First Circuit affirmed the lower court's decision to largely *allow* late-filed expert affidavits. Defendants' other cited authority did not involve experts.

[2] The Advisory Committee emphasized that testing for actual prejudice or harmlessness allows courts to "avoid unduly harsh penalties in a variety of situations," specifically naming two situations analogous to the one complained about by Pfizer here: "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties" or "the

With full notice of their status as experts, Defendants conducted full discovery on both Dr. Conti and Dr. Furberg. Dr. Conti submitted her first declaration on December 19, 2007, and her two-day deposition followed in February 2008. After she submitted a revised declaration, Defendants served a declaration in response to Dr. Conti's revised declaration, and Dr. Conti submitted a declaration in rebuttal to Defendants' expert on March 28, 2008. Similarly, Dr. Furberg was deposed for a full day after Defendants received his report. Thus, both expert's opinions have been fully vetted and explored, subject to cross-examination by Defendants and in Dr. Conti's case, challenged in a written declaration from an expert retained by Defendants. There can be no prejudice under these circumstances. The First Circuit has reminded courts reviewing preclusion motions to focus on the core issue of whether the expert opinions offered have been disclosed and tested. In *Poulis-Minott v. Smith*, 388 F.3d 354 (1st Cir. 2004), one party, having already provided expert designations "that included the opinions the experts would express," *id.* at 358, served additional expert affidavits late. In affirming the denial of a motion to exclude the late-filed expert affidavits, the Court stated that the issue is "whether any new information was included in the expert affidavits that was not included in the 'complete statement of all opinions to be expressed,' as required by Rule 26(a)." *Id.* at 359 (quoting Fed. R. Civ. P. 26). The portions that were already known (as all of Dr. Conti's and Dr. Furberg's are here) were admissible.

Defendants focus on artificial distinctions between the Class Plaintiffs and Kaiser, but do not demonstrate how those distinctions lead to any prejudice. They do not show how they suffer prejudice from the Class Plaintiffs, rather than Kaiser, making the motion to add Dr. Furberg as a witness, or from Dr. Conti's declarations having been styled as submitted in support of class

---

failure to list as a trial witness a person so listed by another party . . . ." FED. R. CIV. P. 37, advisory committee's note to 1993 amendments.

certification. The sources of data that Dr. Conti describes and analyzes are national in scope and do not exclude Kaiser. There is also nothing in Dr. Furberg's report that is in any way related to class certification issues. Instead, he performs the same assessment that the *Fosamax* court found he was qualified to provide in that case: an interpretation of the data as they relate to Neurontin's safety and efficacy. *See In re Fosamax*, 645 F. Supp. 2d at 194.

The full opportunity Pfizer had to conduct discovery of the bases for Dr. Conti's and Dr. Furberg's opinions stands in stark contrast to the prejudice Kaiser faces if Pfizer's non-retained experts, disclosed for the first on November 23, 2009, are permitted to testify at trial. There is, of course, considerable tension between Defendants' position with respect to Dr. Conti and Dr. Furberg and its position with respect to the many non-retained experts from whom they intend to elicit opinion testimony at trial. As Kaiser detailed in its brief in support of its motion to exclude this testimony (*see* Dkt. No. 2351), Kaiser has no idea what Pfizer's putative experts will offer opinions about, no idea as to their qualifications, the data and information relied on in reaching their opinions, and no way of deposing them before trial to discover any of this. Defendants face none of these problems with Dr. Conti and Dr. Furberg, and face no prejudice through their testimony.

For these reasons, there has been no violation of Kaiser's disclosure obligations under Rule 26(a)(2). Even if the Court finds that the two reports originally being associated with the Class Plaintiffs is significant, as the First Circuit has stated, preclusion "is not a strictly mechanical exercise." *Esposito v. Home Depot U.S.A., Inc.*, 2009 WL 5126607, at *5 (1st Cir. Dec. 30, 2009) (denying motion for exclusion based on late disclosure) (quotation omitted). Instead, courts look to several factors, including, among others, the history of the litigation, the justification for the allegedly late disclosure, and the opponent's ability to overcome any adverse

effects associated with the late disclosure. *Id.* Each of these factors weighs in Kaiser's here. The history of the litigation, in which the Class and the Coordinated Plaintiffs have prosecuted this case together in the interest of efficiency, has put Pfizer on notice that the Coordinated Plaintiffs' experts and the Class Plaintiffs' experts were the same. The disclosures were not late, but were submitted in a timely fashion in connection to class certification (Dr. Conti) or after receiving leave to file (Dr. Furberg). Finally, Pfizer has suffered no adverse effects associated with these experts, having had opportunity to conduct full discovery.

### III.     The Testimony of Both Dr. Conti and Dr. Furberg is Admissible.

Defendants devote two pro forma paragraphs, made up of wholly conclusory statements, to the substance of the opinions offered by Dr. Conti and Dr. Furberg. Both experts' opinions are admissible.

Dr. Conti has compiled and analyzed a large amount of data concerning Neurontin prescriptions over the relevant time period. Her declaration, which explained how these data are collected and where they are from, took the raw data from the data sets Dr. Conti described, and depicted the explosive growth in Neurontin sales for each of the off-label uses at issue, along with prescribing data by physician specialty. This information will undoubtedly assist the trier of fact to understand, at a minimum, the chronology in this case. In a hearing in which Dr. Conti's declaration was discussed, the Court described Dr. Conti's charts as "pretty darn powerful" circumstantial evidence. Apr. 16, 2008 Transcript at 28:2.

Similarly, Dr. Furberg's report interprets a complicated set of documents – materials reviewed by the FDA in 1992 concerning gabapentin's association with increased risk of depression. Dr. Furberg will testify that these risks were known as early as 1992, that Defendants did not pursue this safety signal and instead marketed Neurontin to the especially vulnerable patient population of individuals suffering from bipolar disorder. His opinions are

based on his review of relevant data from the FDA review and from a published study. Just as in the *Fosamax* litigation, Dr. Furberg is qualified to interpret that data as it relates to the efficacy and safety of" Neurontin. *In re Fosamax*, 645 F. Supp. at 194. Dr. Furberg is qualified to provide this testimony, which will assist the trier of fact.

## CONCLUSION

For the foregoing reasons, Defendants' motion to exclude the expert testimony of Dr. Rena Conti and Dr. Curt Furberg should be denied.

Dated: January 22, 2010                     Respectfully submitted,

                                            By:   /s/ Linda P. Nussbaum
                                                  Linda P. Nussbaum

                                            KAPLAN FOX & KILSHEIMER LLP
                                            Linda P. Nussbaum, Esq.
                                            850 Third Avenue, 14th Floor
                                            New York, NY 10022

                                            *Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

Thomas Greene
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142

*Of Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 22, 2010.

*/s/  Elana Katcher*
Elana Katcher
