UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No.  1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS)<br><br>and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**PLAINTIFF KAISER'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ALL EVIDENCE OF OR REFERENCES TO WARNER-LAMBERT COMPANY LLC'S GUILTY PLEA OR ANY RELATED GOVERNMENT INVESTIGATIONS OR AGREEMENTS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .............................................................................................................. 1

II.   FACTUAL STATEMENT ................................................................................................. 2

III.  ARGUMENT.................................................................................................................... 5

    A.    The Warner-Lambert Guilty Plea Is Higly Probative, Relevant
        Evidence Under Rules 401 and 402. ................................................................ 6

    B.    The Warner-Lambert Guilty Plea Concerns Facts At Issue In This
        Case and Thus Is Not Subject To Exclusion Under Rule 404(b) ................. 10

    C.    Admission of the Guilty Plea and Related Evidence Would Neither
        Unfairly Prejudice Defendants Nor Violate Defendants' Due Process
        Rights ............................................................................................................ 13

IV.   CONCLUSION................................................................................................................ 15

i

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Alaniz v. Zamora-Quezada,*
 No. CIV. A 07-40325, 2009 WL 4895247 (5th Cir. Dec. 21, 2009) ......................................... 15

*Ando v. Woodberry,*
 168 N.E.2d 520 (N.Y. 1960) ................................................................................................... 14

*Bardin v. DaimlerChrysler Corp.,*
 136 Cal. App. 4th 1255 (2006) ................................................................................................. 9

*Buller v. Sutter Health,*
 160 Cal. App. 4th 981 (2008) ................................................................................................... 7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
 20 Cal. 4th 163 (1999) .............................................................................................................. 8

*Chicago Title Ins. Corp. v. Magnuson,*
 487 F.3d 985 (6th Cir. 2007) .................................................................................................. 14

*Green v. United States,*
 176 F.2d 541 (1st Cir. 1949) ................................................................................................... 12

*Huddleston v. United States,*
 485 U.S. 681 (1988) ............................................................................................................ 5, 11

*In re Neurontin Mktg., Sales Practices and Prods. Liab. Litig.,*
 433 F. Supp. 2d 172  (D. Mass. 2006) ...................................................................................... 9

*Kasky v. Nike, Inc.,*
 27 Cal. 4th 939 (2002) .............................................................................................................. 8

*Manser v. Sierra Foothills Public Utility District,*
 No. CIV. A 09-1250, 2008 WL 5114619 (E.D. Cal. Dec. 4, 2008) .......................................... 8

*McElwain v. Harris,*
 No. CIV. A 05-93, 2006 WL 931920 (D.N.H. Apr. 6, 2006) ................................................... 7

*Miller v. Holzmann,*
 563 F. Supp. 2d 54 (D.D.C. 2008) .................................................................................... 1, 10

*New Jersey v. T.L.O.,*
 469 U.S. 325 (1985) .................................................................................................................. 6

*Pastoria v. Nationwide Ins.*,
   112 Cal. App. 4th 1490 (2d Dist. 2003)...................................................................... 9

*People ex rel. Lockyer v. Fremont Life Ins. Co.*,
   104 Cal. App. 4th 508 (2002) ..................................................................................... 7

*Philip Morris USA v. Williams*,
   549 U.S. 346 (2007)................................................................................................... 14

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
   17 Cal. 4th 553 (1998), *overruled on other grounds*,
   *Californians for Disability Rights v. Mervyn's LLC,* 39 Cal. 4th 223 (2006)............................ 7

*United States v. Adames*,
   56 F.3d 737 (7th Cir. 1995) ................................................................................ 12, 13

*United States v. Akinrinade*,
   61 F.3d 1279 (7th Cir. 1995) ..................................................................................... 12

*United States v. Andreas*,
   216 F.3d 645 (7th Cir. 2000) ........................................................................... 2, 10, 11

*United States v. Burnett*,
   579 F.3d 129 (1st Cir. 2009) .................................................................................. 6, 8

*United States v. Currier*,
   821 F.2d 52 (1st Cir. 1987)........................................................................................ 12

*United States v. Ramirez*,
   45 F.3d 1096 (7th Cir. 1995) ............................................................................... 11, 12

*United States v. Rodriguez-Estrada*,
   877 F.2d 153 (1st Cir. 1989)............................................................................... 12, 13

*United States v. Serang*,
   156 F.3d 910 (9th Cir. 1998) ..................................................................................... 13

*United States v. Warren*,
   25 F.3d 890 (9th Cir. 1994) ....................................................................................... 11

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
   No. CIV. A 05-02067, 2009 WL 4282124 (E.D. Cal. Nov. 25, 2009)....................................... 8

*Webb v. Smart Document Solutions, LLC*,
   499 F.3d 1078 (9th Cir. 2007) ................................................................................ 7, 8

*White v. Ford Motor Co.*,
   500 F.3d 963 (9th Cir. 2007) ..................................................................................... 14

**Statutes**

21 U.S.C. § 331 ................................................................................................................. 1

CAL. BUS. & PROF. CODE § 17200 ..................................................................................... 7

**Rules**

Fed. R. Evid.
    Rule 401 ...................................................................................................................... 6

    Rule 402 ...................................................................................................................... 6

**Other Authorities**

Fed. R. Evid. 401 Advisory Committee's Note ...................................................................... 6

*Charles T. McCormick, McCormick on Evidence* (3d ed. 1984) ........................................... 6

## I.   **INTRODUCTION**

In 2004, Defendant Warner-Lambert pled guilty to violating the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331, *et seq.*, by distributing an unapproved new drug and distributing a misbranded drug; entered into a voluntary compliance agreement with the State Attorneys General; and paid $430 million in fines and penalties, as a result of Defendants' unlawful off-label promotion and sale of Neurontin.   The current action arises out of *the same off-label marketing campaign* that gave rise to the 2004 guilty plea, and seeks to recover Kaiser's excessive payments for Neurontin and the amounts by which Defendants were unjustly enriched through the profits reaped by that same campaign.   The fact of the guilty plea, the admissions made in connection with the plea agreement, the surrounding investigation, and the gravity of the conduct, as indicated by the amount paid in fines and penalties, are thus all highly probative evidence of the unlawful marketing conspiracy at issue here, specifically, how it arose, what motivated the conspiracy, and how the alleged conspiracy functioned.   *See, e.g., Miller v. Holzmann*, 563 F. Supp. 2d 54, 82 (D.D.C. 2008) (finding plea agreement and underlying fact statement relevant to show *how* an unlawful conspiracy functioned).

In addition, exclusion of reference to the investigation and guilty plea will frustrate Kaiser's ability to tell its own causation story.   As Defendants are well aware, Kaiser submitted evidence at summary judgment and will rely at trial on evidence that once word of the investigation began to surface in the press, Kaiser's various drug utilization groups took steps to correct the misinformation.   These campaigns resulted in a decrease in Neurontin utilization in the regions in which such campaigns were held.   This Court cited that evidence of that in its recent summary judgment opinion, and it will clearly be an important part of the presentation Kaiser intends to make at trial.   *See* Memorandum and Order, dated January 8, 2010 at 6-7 (Dkt.

No. 2309). Discussion of the investigation and subsequent plea are integral to the story of those counter-education campaigns: they are referenced all over the documents and are expected to be an important part of the testimony of Kaiser's key causation witnesses. Kaiser will be deprived of the fair opportunity to tell its story if it must dance around these core events, and the jury will be left confused by the obvious gaps in its narrative. That is a result that is improper under the Federal Rules. *See, e.g. United States v. Andreas*, 216 F.3d 645, 665 (7th Cir. 2000) (evidence of "other acts" must be admitted where those facts" are so intricately interwoven with the facts of the charged crime that to omit the evidence relating to it would lead to confusion or leave an unexplainable gap in the narrative of the crime").

## II.   FACTUAL STATEMENT

A brief reminder of the factual contours of the conspiracy that Kaiser alleges and seeks to prove at trial is in order. Kaiser alleges that shortly after receiving FDA approval to market Neurontin, Parke-Davis, the pharmaceutical drug division of Defendant Warner-Lambert, predicted lifetime sales of $500 million for the drug, which had only been approved for treating epilepsy in combination with more established medications. (TCAC ¶¶ 1, 16, 19).[1]   While company officials recognized the market for Neurontin's approved use was limited, its marketing department realized that if Neurontin could be expanded into other, more lucrative markets, such as a pain or psychiatric indications, its potential sales would be substantially greater. (TCAC ¶¶ 2, 21-26, 28-29).   There were two obstacles to achieving such a sales expansion. First, Neurontin was not approved for these uses, and thus, Parke-Davis could not legally promote use of Neurontin for unapproved indications. (TCAC ¶¶ 15-17, 25-26). Second, as Parke-Davis's market assessments recognized, there was no scientific rationale for Neurontin to be effective for

---

[1] Paragraph references to the Third Coordinated Amended Complaint will be referenced as "TCAC ¶ _" in this brief.

these uses (and indeed, an early clinical trial in Europe had demonstrated that Neurontin was not effective for migraine patients).  (TCAC ¶¶ 22-26, 28, 30-33).  Kaiser's lawsuit arises out of the unlawful and fraudulent conduct Defendants engaged in to overcome these obstacles.

Kaiser alleges that Parke-Davis recognized that it could not openly promote Neurontin for the off-label indications at issue in this case.  Instead, it paid for numerous events – such as "consultants" meetings, continuing medical "education" seminars and "advisory" boards – that to outward appearance looked like the type of independent programs where non-approved uses of pharmaceutical drugs could legitimately be discussed.  (TCAC ¶¶ 34, 55-66).  For example, the Jupiter Beach "consultants meeting" was an example of a meeting sponsored and produced by Parke-Davis and its co-conspirators, at which attendees "were delivered a hard hitting message about Neurontin."   The event was produced by a vendor co-conspirator, but Defendants controlled all aspects of the presentation, selected the physician speakers, picked the topics, and previewed the content to ensure they were acceptable.  Parke-Davis paid all expenses related to Jupiter Beach, including payments to and expenses of the attending neurologists.  (TCAC ¶¶ 52, 55).  Defendants carefully controlled the content of these events, ensuring that Neurontin was depicted as a drug of choice for its unapproved uses and ensuring that no negative information was disseminated.  (TCAC ¶¶ 34, 45, 52-53).  While the physicians attending these events were told they were receiving scientific information delivered by objective experts, they were actually being presented an infomercial.  (TCAC ¶¶ 45, 52-53).

Kaiser also alleges that Defendants' fraudulently circumvented this prohibition by training medical liaisons – technical employees of Defendants who were supposed to provide balanced scientific information to doctors – to market off-label and solicit interest in off-label uses.  (TCAC ¶ 36).  The medical liaisons were trained to cold call physicians and sell them on

the safety, efficacy and usefulness of Neurontin for off-label uses. *Id.* This sales effort involved numerous material misrepresentations, including the status of the medical liaisons. *Id.*

Defendants' fraudulent off-label marketing campaign was wildly successful. By 2003, Neurontin was generating more than $2.2 billion in *annual revenue* for Defendants, more than four times the revenue Parke-Davis had estimated for the entire life-cycle of the drug. (TCAC ¶¶ 18-19). More than 90% of this revenue was for off-label uses. (TCAC ¶ 18).

On May 13, 2004, Defendant Warner-Lambert entered a plea agreement with the United States Department of Justice. In the agreement, Warner-Lambert "expressly and unequivocally admit[ted] that it committed the crimes charged in the [accompanying] Information" and "agree[d] that the facts set forth in the Information are true."[2] Among other things, Warner-Lambert admitted that during the relevant period it conducted marketing evaluations and created strategic plans for the marketing of Neurontin for the off-label indications at issue in the case, including "quarterly and annual goals, objectives, strategies, and tactics for increasing sales of the Unapproved Uses of the drug. The marketing plans budgeted for and funded these tactics." Information ¶¶ 11-13. Warner-Lambert conceded that from June of 1995 through August 20, 1996, it "promoted the sale and use of Neurontin" for off-label conditions. Information ¶ 19. It admitted extensive efforts to detail physicians for off-label indications, including pain. Information ¶¶ 20-22 ("the main message of certain sales pitches . . . given by 10 of 50 [Warner-Lambert] sales representatives . . . in a two month period, was for off-label uses of Neurontin," specifically, pain). Warner-Lambert admitted using its "medical liaisons" to promote off-label indications, including an episode where a Warner-Lambert Medical Director sent the following

---

[2] The relevant plea agreement and information were annexed as Exhibit A to the Declaration of Mark Cheffo, which was filed in connection with Defendant's opening brief. *See* Dkt. No. 2303-2. In this brief, paragraph references to the information will be cited as "Information ¶ _" and page references to the plea agreement will be cited as "Information ¶ _"

voice mail message to all liaisons in its business unit" : "When we get out there, we want to kick some ass, we want to sell Neurontin on pain. All right? And monotherapy and everything that we can talk about, that's what we want to do." Information ¶¶ 23-24. Finally, Warner-Lambert conceded to organizing "advisory board" and "consultants'" meetings, including the Juniper Beach conference, to convince high prescribers of Neurontin and similar drugs to prescribe the drug for off-label uses, including pain. Information ¶¶ 25-32. Despite Defendants' argument to the contrary, there was nothing "sporadic" about these incidents. In fact, a memorandum cited in the Information quotes a Warner-Lambert goal of conducting "twice weekly Pain Teleconferences moderated by key Neuro Consultants," with a goal of "250 Physicians Participants quarterly." Information ¶ 33.   Kaiser will present evidence that during all these incidents, Defendants were well aware that there was no evidence for the efficacy of Neurontin for pain, or any other off-label indication at issue.

## III.   **ARGUMENT**

Defendants understandably would like to see this highly persuasive and probative evidence excluded.   However, their argument that this evidence has "no relevance whatsoever to the issues to be decided in this case" is not credible. To the contrary, the Rules of Evidence cited all support admission:

> Rules 401 and 402 establish the broad principle that relevant evidence –
> evidence that makes the existence of any fact at issue more or less probable –
> is admissible unless the Rules provide otherwise. Rule 403 allows the trial
> judge to exclude relevant evidence if, among other things, "its probative
> value is substantially outweighed by the danger of unfair prejudice." Rules
> 404 through 412 . . . [g]enerally . . . do not flatly prohibit the introduction of
> such evidence but instead limit the purpose for which it may be introduced.

*Huddleston v. United States*, 485 U.S. 681, 687 (1988)

A.     **The Warner-Lambert Guilty Plea Is Higly Probative, Relevant Evidence Under Rules 401 and 402.**

Federal Rule of Evidence 401 defines "relevant evidence" as evidence "having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added.)

Federal Rule of Evidence 402 states: "All *relevant evidence* is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402 (emphasis added).

The United States Supreme Court has held that the definition of relevancy adopted in Rule 401 is an expansive one, and for evidence to be relevant under this definition it "need not conclusively prove the ultimate fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985). Even if the proposition for which it is offered still seems improbable after the evidence is considered, the proffered evidence is not necessarily irrelevant. Charles T. McCormick, *McCormick on Evidence*, at 543 (3d ed. 1984). To be relevant evidence need only be a brick, not a wall. *Id.* Thus, "each specific item of evidence offered need not be sufficient to prove the case standing by itself before it is admissible," but must simply have "some bearing on a matter of consequence to the case." *United States v. Burnett*, 579 F.3d 129, 132 (1st Cir. 2009). In addition, this broad definition allows background evidence to be "universally offered and admitted as an aid to understanding." Fed. R. Evid. 401 Advisory Committee's Note. *See also McElwain v.*

*Harris*, No. CIV. A 05-93, 2006 WL 931920, at *2 (D.N.H. Apr. 6, 2006) ("The standard for admissibility under Rule 401 is a liberal one, and background evidence is generally relevant.") (internal citations omitted).

The guilty plea, and the facts admitted thereunder, go to the heart of this case. *First,* the same unlawful off-label marketing campaign that is the subject of the guilty plea forms the basis of Kaiser's claim under California's Unfair Competition Law ("UCL"), which broadly prohibits any "unlawful, unfair or fraudulent" business act or practices. CAL. BUS. & PROF. CODE § 17200. Because the UCL is written in the disjunctive, a business act or practice need only meet one of the three criteria – unlawful, unfair, *or* fraudulent – to be considered unfair competition under the UCL. *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 986 (2008) (citations omitted). Kaiser intends to pursue its claims under all three prongs of the statute. The "unlawful" prong reaches any practice that is forbidden by law. *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 559-60 (1998), *overruled on other grounds, Californians for Disability Rights v. Mervyn's LLC,* 39 Cal. 4th 223 (2006). The UCL "is a broad statute designed to remedy violations of other laws, both state and federal." *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007); *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508 (2002) ("[V]irtually any state, federal, or local law can serve as the predicate" for a Section 17200 claim) (internal quotations omitted).

The Ninth Circuit has analyzed whether a federal court may entertain a claim under the unlawful prong of the UCL, where the underlying federal statute lacks a private right of action. *Webb*, 499 F.3d at 1083. The Court concluded that a federal court will possess subject matter over such a claim as long as the plaintiffs invoked diversity jurisdiction in bringing their claim

into federal court. *Id.*[3] As a recent case explained "the State of California has provided that any unlawful business practices, including violations of laws for which there is no direct private right of action, may be redressed by private action under the UCL; it is not necessary that the predicate law provide for private civil enforcement." *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, No. CIV. A 05-02067, 2009 WL 4282124, at *6 (E.D. Cal. Nov. 25, 2009). Thus, "[a] plaintiff may bring an unfair business practices action even when 'the conduct alleged to constitute unfair competition violates a statute for which there is no private right of action.'" *Manser v. Sierra Foothills Public Utility District*, No. CIV. A 09-1250, 2008 WL 5114619, *7 (E.D. Cal. Dec. 4, 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002)).

To recover under the "unlawful" prong of the UCL, Kaiser must prove that the marketing of Neurontin was unlawful.[4] Warner-Lambert's guilty plea admits just that and is thus highly probative, relevant evidence of Kaiser's claim. The fact that the plea only addresses a portion of the relevant time period and does not by itself prove Kaiser's claim is of no moment under the Rules of Evidence. *Burnett*, 579 F.3d at 132 ("each specific item of evidence offered need not be sufficient to prove the case standing by itself before it is admissible").[5]

---

[3] Kaiser has invoked both diversity and federal question jurisdiction in bringing this action. TCAC ¶ 12.

[4] Defendants cite to two of this Court's class certification opinions that suggest that the class plaintiffs must prove that defendants' representations were false in order to succeed on their claims. *See* Def. Br. at 4. The class did not move for certification for claims brought under the UCL and thus, the Court has never had the opportunity to address the precedent set forth here.

[5] In addition, the conduct outlined in the Information certainly meets the UCL's unfairness prong. There are two tests of whether an act is "unfair." First, conduct is unfair if it "threatens an incipient violation of a [] law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999). The alternative test for unfairness is to assess whether the "[p]ractice offends an established public policy" or "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the "gravity of the harm to the victim

***Second***, Kaiser has alleged that each of the RICO enterprises alleged in its complaint were joined together by "the common purpose of promoting Neurontin for off-label uses and earning profits therefrom." *See, e.g.,* TCAC ¶ 247. This Court has held that this allegation was adequately alleged and sufficient under RICO. *In re Neurontin Mktg., Sales Practices and Prods. Liab. Litig.*, 433 F. Supp. 2d 172 (D. Mass. 2006). The guilty plea and the admissions embodied in the accompanying Information are direct evidence of this common purpose. For example, the complaint alleges that defendants and vendors joined together to promote Neurontin for unapproved uses at various events, including a consultants' meetings and advisory boards. In the Information, the DOJ alleged that Warner-Lambert indeed used these meetings to promote Neurontin for off-label uses to physician attendees, as part of a deliberately planned market strategy. *See* Information ¶¶ 25-32. These allegations are tracked in Kaiser's complaint, in the section detailing the conspiracy between Defendants and its vendor co-conspirators, which helped organize the conferences referenced in the Information. *See, e.g.,* TCAC ¶ 52. In its plea agreement, Warner-Lambert agreed that the facts set forth in the Information are true. These facts are thus highly probative evidence that the organizers of these events shared the common purpose alleged in the complaint and admitted by Warner-Lambert in the Information.

***Third***, evidence of the investigation and guilty plea is relevant to Kaiser's own causation story. Kaiser submitted evidence at summary judgment and will rely at trial on evidence that once word of the investigation began to surface in the press, Kaiser's various drug

---

outweighs the utility of the defendant's conduct." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1268-69 (2006). Omissions can be unfair under either test. *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1498 (2d Dist. 2003). Here, the plea agreement and Information admit conduct that clearly violated both established public policy and the spirit of the law, as demonstrated by the steep fines and penalties levied against Warner-Lambert. Kaiser will show that these violations continued throughout the relevant period and led directly to harm by Kaiser.

utilization groups took steps to correct the misinformation. *See* Memorandum and Order, dated January 8, 2010 at 6-7 (Dkt. No. 2309). This Court cited that evidence in its recent summary judgment opinion, and both sides are well aware that Kaiser's causation case will hinge on being able to effectively tell the story of the genesis and results of that campaign. Discussion of the investigation and subsequent plea are integral to the story of those counter-education campaigns: they are referenced all over Kaiser's key causation documents and are expected to be an important part of the testimony of Kaiser's key causation witnesses. Kaiser will be unfairly prejudiced if this story is censored, and the jury will be left confused by the obvious gaps in its narrative.

*Fourth*, the plea agreement and the facts admitted in the Information are direct evidence of unlawful marketing conspiracy at issue here, specifically, how it arose, what motivated the conspiracy, and how the alleged conspiracy functioned. *See, e.g., Holzmann*, 563 F. Supp. 2d at 82 (finding plea agreement and underlying fact statement relevant to show *how* an unlawful conspiracy functioned); *Andreas*, 216 F.3d at 665 (admitting evidence of an uncharged conspiracy, which "provided the blueprint for and motivating force" behind the scheme to be tried). The motivation behind the off-label marketing campaign – the admitted marketing plans and assessments that showed a deliberate attempt to develop the market for off-label indications – is the same motivation that fueled the fraudulent misrepresentations and omissions that Kaiser alleges were deliberately made within that campaign. The admitted fact of one, thus makes the fact of the other more likely.

**B.**     **The Warner-Lambert Guilty Plea Concerns Facts At Issue In This Case and Thus Is Not Subject To Exclusion Under Rule 404(b).**

Evidence that is admissible for purposes other than proving criminal propensity is not barred by Rule 404(b), and the United States Supreme Court has held that in drafting the Rule,

"Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence." *Huddleston*, 485 U.S. at 689.

The evidence of Warner-Lambert's illegal off-label marketing of Neurontin is not "other crimes" evidence, but is evidence of facts that are very much at issue in this case. Kaiser claims that it was a victim of a massive marketing push by defendants that was both off-label and fraudulent. The same events and mechanisms by which Defendants marketed Neurontin off-label are the same events and mechanisms by which Defendants defrauded its customers, including Kaiser. "Evidence should not be [considered] 'other crimes' evidence when 'the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994). *See also Andreas*, 216 F.3d at 665 ("'Other crimes or acts' does not include those acts that are part and parcel of the charged crime itself; they simply are not 'other'").

The Seventh Circuit has explored in detail the issue of when evidence concerns "other crimes" for the purposes of Rule 404(b). In *United States v. Ramirez*, defendants were convicted of conspiracy with intent to distribute cocaine. 45 F.3d 1096 (7th Cir. 1995). On appeal, one of the defendants challenged the evidence concerning a gun and marijuana that was found in his apartment during a search incident to his arrest as inadmissible under Rules 403 and 404(b). *Ramirez,* 45 F.3d at 1101-02. The trial court had admitted this evidence under the theory that the evidence was "intricately related" to the events that led to the defendant's arrest and indictment. *Id.* at 1102.

In affirming the trial court, the Seventh Circuit held that under the "intricately related" doctrine, evidence is admissible if it meets any of three conditions: (1) it is necessary to provide

the jury with a complete story of the crime on trial; (2) if the absence of the evidence would create a chronological or conceptual void in the story of the crime; or (3) if the evidence is so blended or connected that it "it incidentally involves, explains the circumstances surrounding, or tends to prove any element, the charged crime." *Ramirez*, 45 F.3d at 1102 (citing cases). *See also United States v. Akinrinade*, 61 F.3d 1279, 1285-86 (7th Cir. 1995) (same). Thus, the Seventh Circuit held that "evidence concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of 'other acts' within the meaning of [Rule 404(b)]." *Ramirez*, 45 F.3d at 1102 (citing cases).

In *Ramirez*, the Seventh Circuit found that the evidence was relevant to defendant's claim that he was an innocent bystander rather than a member of a conspiracy. *Ramirez*, 45 F.3d at 1102. Thus, "the evidence about the marijuana gave the jury a more, not less, accurate picture of the circumstances surrounding Salvador's arrest and the charged crime." *Id.* at 1103. Thus, the Seven Circuit found Rule 404(b) inapplicable: "This was not the introduction of evidence *concerning acts wholly unrelated to the case which the prohibition of character evidence contained in [Rule 404(b)] is designed to prevent.*" *Id.* at 1103 (emphasis added). *See also United States v. Adames,* 56 F.3d 737, 742 (7th Cir. 1995) ("Other crimes or acts done to further the goals of [a] conspiracy are not subject to Rule 404(b) analysis").

The First Circuit takes a similar view. "[E]vidence of other criminal acts [is] admissible . . . when [it is] so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged." *United States v. Currier*, 821 F.2d 52, 55 (1st Cir. 1987) (quoting *Green v. United States*, 176 F.2d 541, 543 (1st Cir. 1949)). *United States v. Rodriguez-Estrada*, 877 F.2d 153, 156 (1st Cir. 1989) ("We have said before, and today reaffirm, that extrinsic offense

evidence which is "inextricably intertwined" with the crimes charged is often admissible under Rule 404(b)") (citing cases). "When, as in this case, the linked incident occurs close in time, and is highly relevant, to the charged conduct, the argument for admissibility is powerful." *Rodriguez-Estrada*, 877 F.2d at 156.

Similarly, the Ninth Circuit admits evidence of other acts "inextricably intertwined" with the underlying offense under Rule 404(b) if one of two conditions are met: (1) the other act "constitutes part of the transaction that serves as a basis" for the wrong at issue; or (2) the evidence of the other act was necessary to offer "a coherent and comprehensible story" regarding the conduct at issue. *United States v. Serang*, 156 F.3d 910, 915 (9th Cir. 1998). Under this standard, other act evidence "may be relevant in conspiracy cases to show the background and development of the conspiracy." *Serang*, 156 F.3d at 915.

Under any of these standards, the evidence here is certainly not of the type subject to exclusion under Rule 404(b).

### C. Admission of the Guilty Plea and Related Evidence Would Neither Unfairly Prejudice Defendants Nor Violate Defendants' Due Process Rights.

The is nothing unfair about allowing the jury to hear the details of guilty plea that Defendants' voluntarily entered and that is highly probative to the issues in this case. "By design, all evidence is meant to be prejudicial; it is only *unfair* prejudice that must be avoided." *Rodriguez-Estrada*, 877 F.2d at 156 (citing cases). *See also Adames,* 56 F.3d at 742 ("all probative evidence is prejudicial to the party against whom it is introduced"). Evidence "is unfairly prejudicial if it arouses a sense of horror or otherwise produces an emotional response that would cause the jury to base its decision on something other than the evidence."

Defendants will have ample opportunity to explain the difference between off-label and fraudulent marketing in their opening and closing arguments, as well as in their proposed jury instructions. This is sufficient to negate any claim of unfair prejudice here. As Judge Fuld held in upholding the admissibility of guilty pleas: "To the claim that the jury will be unduly prejudiced by the introduction of a plea of guilt despite the opportunity to explain it away, we content ourselves with the statement that [t]his underestimates the intelligence of jurors." *Ando v. Woodberry*, 168 N.E.2d 520, 524 (N.Y. 1960).

Defendants' lengthy discussion of *Philip Morris USA v. Williams* and *State Farm Mut. Auto. Ins. Co. v. Campbell* is a red herring. These cases do not support a rule of exclusion that defendants demand here. As the Supreme Court took pains to note in *Williams*, "Philip Morris . . . does not deny that a plaintiff may show harm to others in order to demonstrate reprehensibility. Nor do we." *Philip Morris USA v. Williams*, 549 U.S. 346, 354 (2007). Instead, these cases implicate the Court's responsibility for issuing proper jury instructions for punitive damages determinations. *See, e.g. White v. Ford Motor Co.*, 500 F.3d 963, 972-73 (9th Cir. 2007) (ordering new trial where judge failed to give proper "harm to nonparties" jury instruction). As the Sixth Circuit has succinctly explained, the Supreme Court's rule is that juries may consider harm to others "[w]hen assessing whether the defendant's behavior was sufficiently reprehensible to support an award of punitive damages," however, juries may not consider harm to others when assessing the amount of damages awarded. *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 1000 (6th Cir. 2007) (interpreting *Williams* and *Campbell*). *See also White*, 500 F.3d at 972 ("Where there is a significant risk that jurors will misapprehend the distinction, the court must upon request protect against that risk by 'avoid[ing] procedure that unnecessarily deprives juries of proper legal guidance'") (quoting *Philip Morris USA v.*

-14-

*Williams*, 549 U.S. 346, 355 (2007)); *Alaniz v. Zamora-Quezada*, No. CIV. A 07-40325, 2009 WL 4895247, at *11 (5th Cir. Dec. 21, 2009) (where proper jury instructions are issued, "a constitutional violation does not occur simply because evidence of harm to nonparties is admitted"). Thus, Defendants can address any concerns it has over the potential application of this evidence to damages at the time it submits its proposed jury instructions.

## IV.   **CONCLUSION**

For the reasons set forth above, Defendants' motion *in limine* to exclude all evidence of or references to Warner-Lambert Company LLC's guilty plea or any related government investigations or agreements should be denied.

Dated:  January 22, 2010

Respectfully submitted,

By:   */s/ Linda P. Nussbaum*
         Linda P. Nussbaum

KAPLAN FOX & KILSHEIMER LLP
Linda P. Nussbaum, Esq.
850 Third Avenue, 14th Floor
New York, New York 10022

*Attorneys for Plaintiffs Kaiser Foundation
Health Plan, Inc. and Kaiser Foundation
Hospitals*

*Of Counsel*:

Thomas Greene
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 22, 2010.

/s/  Elana Katcher
Elana Katcher