UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No.  1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**KAISER'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE OF OR REFERENCES TO CONDUCT UNRELATED TO NEURONTIN[1]**

---

[1] Kaiser does not concede that the information Pfizer attempts to exclude through their motion is in fact "unrelated to Neurontin."

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTS ............................................................................................................... 1

    A.   Off Label Marketing Settlement ....................................................... 1

    B.   Pharmacia Guilty Plea ....................................................................... 3

III.   ARGUMENT .................................................................................................... 4

    A.   The Off Label Settlement and Plea Agreement Are Relevant to Kaiser's Claims (Rule 401, Rule 402) ................................................................................. 4

        1.   Pfizer has a pattern and practice of marketing drugs for off label purposes... 5

    B.   The Probative Value Outweighs Any Prejudice to Defendants (Rule 403) ........ 6

    C.   The Off Label Settlement and Plea Agreement Do Not Constitute Improper Character Evidence (Rule 404(b)) .............................................................................. 8

    D.   The Off Label Settlement and Plea Agreement are not Inadmissible under Rule 408 ...................................................................................................................... 9

    E.   The Off Label Settlement and Plea Agreement Are Admissions, Not Hearsay 10

    F.   Introduction of the Plea Agreement Does Not Violate Defendants' Due Process Rights ............................................................................................................. 10

    G.   The Off Label Settlement and Plea Agreement May Be Properly Admitted as Impeachment Evidence ................................................................................. 11

IV.    CONCLUSION ............................................................................................... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adames*, 56 F.3d at 742 ..................................................................................................6

*Bartholomew v. Unum Life Insurance Co. of America*, 588 F. Supp. 2d
    1262 (W.D. Wash. 2008) ...........................................................................................10

*Carlsen v. Javurek*, 526 F.2d 202 (8th Cir. S.D. 1975) ......................................................10

*Davis v. Wakelee*, 156 U.S. 680, 15 S. Ct. 555, 39 L. Ed. 578 (1895) ...............................6

*Huddleston*, 485 U.S. at 689 ..............................................................................................8

*Johnson v. Hugo's Skateway*, 974 F.2d 1408 (4th Cir. 1992)...........................................10

*Miller v. Holtzmann*, 563 F. Supp. 2d 54 (D.D.C. 2008)....................................................8

*Newby v. Enron corp.*, 491 F. Supp. 2d 690 (S.D. Tex. 2007) .......................................6, 7

*RSBI Aerospace, Inc. v. Affiliated FM Insurance Co.*, 49 F.3d 399 (8th
    Cir. 1995)...............................................................................................................6, 7

*Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. Ill. 1995) .......................................................12

*United States v Bennett*, 101 A.F.T.R.2d 2525 *(2008, DC Hawaii)* ..................................12

*United States v. Burnett*, 579 F.3d 129 (1st Cir. 2009)........................................................4

*United States v. Decicco*, 370 F.3d 206 (1st Cir. 2004)......................................................8

*United States v. Frankhauser*, 80 F.3d 641 (1st Cir. 1996) .................................................9

*United States v. Gilbert*, 668 F.2d 94 (2d Cir. 1981).........................................................10

*United States v. Hudson*, 970 F.2d 948 (1st Cir. Me. 1992)..............................................11

*United States v. Landrau-Lopez*, 444 F.3d 19 (1st Cir. P.R. 2006) .....................................8

*United States v. Riley*, 684 F.2d 542 (8th Cir. Iowa 1982)................................................10

*United States v. Rodriguez-Estrada*, 877 F.2d 153 (1st Cir. 1989) .....................................6

*United States v. Warren, Number Civ.A.7:04 CR 00021*, 2005 U.S. Dist.
    LEXIS 9269 ...............................................................................................................9

*United States v. Washington*, 434 F.3d 7 (1st Cir. 2006)......................................................8

## STATE CASES

*Ando v. Woodberry*, 168 N.E.2d 520 (N.Y. 1960)...............................................................6

## FEDERAL STATUTES

21 U.S.C. §§ 331(a) .............................................................................................................3

21 U.S.C. §§ 333(a)(2).........................................................................................................3

21 U.S.C. §§ 352(f)(1) .........................................................................................................3

Fed.R.Evid. 401 ...................................................................................................................4

Fed.R.Evid. 402 ................................................................................................................4, 5

Fed.R.Evid. 404(b)...............................................................................................................8

Fed.R.Evid. 408 .................................................................................................................12

Fed.R.Evid. 408 ...................................................................................................................9

Fed.R.Evid. 609(a).............................................................................................................12

Fed. R. Evid. 801(d)(2) ......................................................................................................10

Fed.R.Evid. 803(22)...........................................................................................................12

## I.      INTRODUCTION

On January 8, 2010, Defendants Pfizer, Inc. and Warner-Lambert Company LLC

("Defendants") moved to exclude at trial any and all evidence of or reference to (i) the August

2009 Settlement with the United States Department of Justice and other government agencies,

and ("Off Label Marketing Settlement") (ii) a plea agreement between the Government and

Pharmacia & Upjohn Company, Inc. relating to the drug Bextra ("Pharmacia guilty plea").

Kaiser now opposes.

Upon information and belief, including statements made in Pfizer's answer to the class

complaint, Pfizer will assert that it does not engage in off-label marketing.  The Off Label

Marketing Settlement and related Pharmacia Guilty Plea are relevant evidence of (i) Pfizer's

pattern and practice of marketing pharmaceuticals for off-label purposes, and (ii) Pfizer's

previous and contemporaneous use of the marketing tactics Kaiser alleges Pfizer used to further

its conspiracy with respect to Neurontin.  The information is relevant, and is not barred by any

Rules of Evidence or case law.  Plaintiffs are within their rights to use this evidence to establish

their case, contradict testimony of Pfizer witnesses, and refute contentions put forward in certain

Pfizer exhibits.[2]

## II.     FACTS

### A.      Off Label Marketing Settlement

In August of 2009, Pfizer Inc. ("Pfizer") entered into a settlement agreement with the

United States that resolved claims related to thirteen different drugs.[3]  Pfizer agreed to pay $1

billion, plus interest, and the United States agreed to release certain claims against Pfizer.[4]

---

[2] The parties have exchanged exhibit lists and are in the process of reviewing the enumerated documents.
[3] *See* Settlement Agreement, attached to the Declaration of Linda P. Nussbaum in Support of Kaiser's Response to
Defendants' Motion *in Limine* to Exclude All Evidence of Or References to Conduct Unrelated to Neurontin
(hereinafter "Nussbaum Decl.") as Exhibit 1 at p. 1.
[4] Exhibit 1 at p. 6, ¶ 1; p. 9, ¶ 2.

The settlement resolved, in part, the United States' claims that (i) Pfizer marketed four drugs for unapproved indications and doses and (ii) Pfizer paid health care professionals to induce them to promote and prescribe the same four drugs. [5]  The drugs in question were Bextra, Geodon, Zyvox, and Lyrica.[6]  Pfizer acknowledged in the settlement agreement that at all relevant times, Pfizer developed, manufactured, distributed, marketed and sold Bextra, Geodon, Zyvox, and Lyrica in the United States.[7]

"Pfizer expressly denies the allegations of the United States and the Relators as set forth herein… and denies it engaged in any wrongful conduct in connection with the Covered Conduct *except* as to: 1) such admissions as Pharmacia makes in connection with any guilty plea and as provided herein; and 2) the facts set forth in Attachment A as to Zyvox."[8]  Attachment A states, in part,

- "This statement reflects facts as to which Pfizer and the United States agree are true and accurate." [9]

- "Pfizer did not provide adequate guidance to its sales force regarding what statements were permissible … and what promotional statements were not permitted." ¶ 8.

- "As a result, Pfizer's sales personnel thereafter continued to make claims to physicians that Zyvox was superior to [another drug] for certain patients… which included that claim that Zyvox would have a higher cure rate, and would save more lives, despite the fact that these claims were inconsistent with … Zyvox's approved label, and which were inconsistent with the manner in which Pfizer, after the receipt of [a] Warning Letter, agreed to present the clinical data cited by the FDA." ¶ 9.

---

[5] Exhibit 1 at pp. 3-4, ¶¶ (1)-(4).  The settlement also resolved certain alleged kickbacks related to the drugs Aricept, Celebrex, Lipitor, Norvasc, Relpax, Viagra, Zithromax, Zoloft, and Zyrtec.
[6] *Id.*
[7] Exhibit 1 at p. 1, ¶ A.
[8] Exhibit 1 at p. 5-6, ¶H (emphasis added).
[9] Attachment A to the Settlement Agreement, attached as Exhibit 2 to the Nussbaum Decl.

### B.    Pharmacia Guilty Plea

Pfizer acquired Pharmacia (including Pharmacia & Upjohn Company, Inc., Pharmacia & Upjohn LLC, Pharmacia & Upjohn Company, and Pharmacia Corporation) in April 2003.[10] Prior to April 2003, Pfizer jointly promoted the drug Bextra with Pfizer.[11]

In August of 2009, in conjunction with the Off-Label Settlement by Pfizer, Pharmacia agreed to plead guilty to a one count Information charging Pharmacia with Introduction into Interstate Commerce of a Misbranded Drug (21 U.S.C. §§ 331(a) , 333(a)(2) and 352(f)(1)).  The information charged, "[Pharmacia] with intent to defraud and mislead, did introduce ... into interstate commerce… quantities of Bextra…. which was intended for use for the treatment of acute pain, surgical pain, other unapproved uses, and at unapproved dosages….".  Pharmacia stated, "Pharmacia expressly and unequivocally admits that it knowingly, intentionally and willfully committed the crime charged in the attached Information and is in fact guilty of the offense, and agrees that it will not make any statement inconsistent with this explicit admission."[12]

The information is replete with details about the promotion of Bextra for off-label purposes, including:

- Bextra was promoted off label for general acute pain (¶¶ 23-32);

- Bextra was promoted off label for surgical pain (¶¶ 39-51); and

- Bextra was promoted off label for prevention of deep vein thrombosis (¶¶ 52-54).

The information is also replete with details about Pfizer's use of particular marketing tactics that Kaiser alleges Pfizer used to wrongfully promote Neurontin:

---

[10] *See* Letter regarding Pharmacia Plea Agreement, attached as Exhibit 3 to Nussbaum Decl.; Pharmacia Criminal Information, attached as Exhibit 4 to the Nussbaum Decl., at ¶1.
[11] Exhibit 4 at ¶ 2.
[12] Exhibit 3 at p. 1.

- Pharmacia promoted Bextra for unapproved uses through remuneration to physicians and purported physician consulting arrangements (¶¶ 33-38);

- Pharmacia sales representatives promoted Bextra by telling physicians Bextra was safer and more effective than Vioxx when Pharmacia knew there were no studies confirming superior efficacy and that Bextra was not approved to treat acute pain.  (¶ 55-58);

- Pharmacia used purportedly independent Continuing Medical Education to Promote Bextra for unapproved uses and dosages (¶¶ 69-72);

- Bextra was promoted off-label by distributing samples for unapproved uses/doses (¶¶ 64-68); and

- Bextra was promoted for unapproved uses and dosages by supporting and drafting publications (¶¶ 73-75).

These marketing activities allegedly occurred both before and after Pfizer acquired Pharmacia in 2003.

## III.   ARGUMENT

### A.   The Off Label Settlement and Plea Agreement Are Relevant to Kaiser's Claims (Rule 401, Rule 402)

Relevant evidence is any "evidence having any tendency to make the existence of any fact that is of consequence to the determination o the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.  "[A]ll relevant evidence is admissible, except as otherwise provided…". Fed.R.Evid. 402. As the First Circuit has stated, "each specific item of evidence offered need not be sufficient to prove the case standing by itself before it is admissible," but must simply have "some bearing on a matter of consequence to the case." *United States v. Burnett*, 579 F.3d 129, 132 (1st Cir. 2009).

The Off Label Marketing Settlement and Pharmacia Guilty Plea are relevant for two distinct yet related reasons. First, they provide evidence that Defendant Pfizer has a history of promoting drugs for off-label and unproven purposes. Second, they provide evidence that Pfizer previously used the same improper marketing techniques Kaiser claims Pfizer used to carry out its conspiracy with respect to Neurontin.

### 1. Pfizer has a pattern and practice of marketing drugs for off label purposes

Kaiser alleges that Pfizer marketed Neurontin for off-label and unproven purposes. Pfizer denies that it marketed Neurontin for off-label purposes. *See*, *e.g.*, Defendants' Answer to Third Amended Class Action Complaint, dated January 12, 2007, [Dkt. No. 603]. Unless Pfizer is willing to stipulate that they marketed Neurontin for off-label purposes, Kaiser is entitled to offer evidence in support of this allegation.

The Off Label Settlement Agreement and Guilty Plea provide evidence that Pfizer has repeatedly engaged in marketing prescription drugs for off-label purposes. *See* Fact Section, p. 2-5, *supra*. These documents at minimum suggest, if not establish, that Pfizer has unlawfully marketed at least four drugs – aside from Neurontin – for off-label purposes. These documents establish Defendants' knowledge of off-label use and the Defendant's common use of the strategy of off-label promotion of its products during the relevant time period. This pattern of behavior has the requisite tendency to make it more likely that Pfizer marketed Neurontin for off-label purposes. *See* Fed.R.Evid. 402.

The Off Label Settlement and Guilty Plea also provide evidence that Pfizer used the same tactics to market other drugs as Kaiser alleges Pfizer used to further its conspiracy to market Neurontin. Specifically, Pfizer/Pharmacia promoted Bextra for unapproved uses and doses by compensating physicians through consulting arrangements, utilizing seemingly independent

5

CMEs, providing remuneration to physicians through consulting arrangements; distributing samples for unapproved uses/doses; and engaging in a publication program. See Fact Section, p. 2-5 *supra*. These are the same techniques that Kaiser claims Pfizer used to effectuate its conspiracy with regards to Neurontin. *See generally*, Third Coordinated Amended Complaint, dated December 22, 1006, [583].

### B.   The Probative Value Outweighs Any Prejudice to Defendants (Rule 403)

"By design, all evidence is meant to be prejudicial; it is only *unfair* prejudice that must be avoided." *United States v. Rodriguez-Estrada*, 877 F.2d 153, 156 (1st Cir. 1989) (citing cases). Evidence "is unfairly prejudicial if it arouses a sense of horror or otherwise produces an emotional response that would cause the jury to base its decision on something other than the evidence." *Adames*, 56 F.3d at 742. "To the claim that the jury will be unduly prejudiced by the introduction of a plea of guilt despite the opportunity to explain it away, we content ourselves with the statement that this underestimates the intelligence of jurors." *Ando v. Woodberry*, 168 N.E.2d 520, 524 (N.Y. 1960).

> Where a party assumes a certain legal position in a proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*Davis v. Wakelee*, 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 (1895). Courts have admitted even non-parties' guilty pleas against civil defendants. *See e.g. RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401, 403 (8th Cir. 1995) (non-party employee's guilty plea and accompanying sworn statement were admissible against defendant in subsequent civil case); *Newby v. Enron corp.*, 491 F. Supp. 2d 690, 703 (S.D. Tex. 2007) (non-party's guilty plea was admissible against defendants in subsequent civil case).

Any prejudice that may result from the introduction of evidence related to the Off Label

Settlement and Pharmacia Guilty Plea is related to Kaiser's allegations that Pfizer engaged in

off-label, illegal, and conspiratorial marketing of pharmaceuticals, the very allegations that form

the heart of Kaiser's case.  Any prejudice is therefore not undue.  Kaiser is not attempting to shoe

horn an unrelated criminal plea and investigation into this matter in order to make Pfizer look

like "bad actor" (Pfizer's instance to the contrary notwithstanding, *see* Pfizer memo at 2.)

Instead, Kaiser seeks to introduce evidence of a settlement and plea that involve strikingly

similar actions taken by Pfizer with respect to other prescription drugs during the same time

period.[13]

Pfizer should not be allowed to assume a contrary position, that it did not engage in these

off-label practices.  Kaiser should be allowed to introduce evidence of the Pharmacia Guilty

Plea  to show that Pfizer has continued to engage in similar, if not identical, activities with regard

to Neurontin.  Pfizer was well-aware of what it was buying when it purchased Pharmacia and it

continued to profit from the misconduct involved in the Plea which mirrors the conduct in this

case.

Pfizer's claim that "[t]here is simply no way to adequately address the issues related to

the August 2009 Settlement and Pharmacia Plea in a way that would be both fair and would not

overwhelm the jury" is not genuine.  Pfizer Memo at 6.  Pfizer could easily (i) stipulate to the

fact that they engaged in off-label marketing of Neurontin (in which case this evidence may well

become unnecessary), (ii) tell the jury that they paid $1 billion so that they would no longer have

to deal with the hassle of ongoing litigation with the Federal Government, (iii) tell the jury that

---

[13] The guilty please was entered by Pharmacia in 2009.  Pfizer marketed Bextra with Pharmacia as a joint venture
prior to acquiring Pharmacia outright in 2003.  To the extent that Pfizer maintains the guilty plea of a non-party is
not admissible, they are mistaken.  *See e.g. RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401, 403
(8th Cir. 1995) (admitting non party's guilty plea); *Newby v. Enron corp.*, 491 F. Supp. 2d 690, 703 (S.D. Tex. 2007)
(admitting non-party's guilty plea).

they didn't market any drugs off label, or (iv) tell the jury that Kaiser has misconstrued the settlement. Pfizer may also ask the Court to redact these documents, or give a limiting instruction to the jury. *Miller v. Holtzmann*, 563 F. Supp. 2d 54, 82 (D.D.C. 2008). Pfizer is free to give the jury any explanation it desires; but the lack of a compelling explanation for why they entered Pfizer and Pharmacia entered into settlement agreements and guilty pleas is not a sufficient reason to prevent Kaiser from introducing the evidence.

Defendants cannot claim undue prejudice when the prejudice results from Defendants' action that are directly related to the claims in the case simply because they think it will be tricky to explain away a previous related transgression to a jury.

### C.   The Off Label Settlement and Plea Agreement Do Not Constitute Improper Character Evidence (Rule 404(b))

Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person...", but may "be admissible for other purposes." Fed.R.Evid. 404(b). "Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence." *Huddleston*, 485 U.S. at 689.

To make this determination under Rule 404(b), courts in the First Circuit conduct a two step admissibility analysis: "first, a court must determine whether the evidence in question has any special relevance exclusive of defendant's character or propensity; and second, notwithstanding its special relevance, whether the evidence meets the standard set forth in Fed. R. Evid. 403." *United States v. Landrau-Lopez*, 444 F.3d 19, 23 (1st Cir. P.R. 2006), quoting *United States v. Decicco*, 370 F.3d 206, 211 (1st Cir. 2004); *see United States v. Washington*, 434 F.3d 7, 12 (1st Cir. 2006), remanded on other grounds by *United States v. Washington*, 434 F.3d 7 (1st Cir. Me. 2006).

8

The First Circuit generally considers two factors when deciding whether the evidence offered presents the required special relevance: "the remoteness in time of the other act and the degree of resemblance to the crime charged." *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996). Here, the prior acts described in the Off Label Settlement and Plea Agreement occurred within the same time frame and are factually similar to the alleged activities in this case.

Having already established the factual similarities and that those similarities are more probative than prejudicial, Kaiser now addresses time frame. The marketing activities described in the Settlement Agreement span from January 1, 2001 through October 31, 2008.[14] The Third Coordinated Amended Complaint, dated December 22, 2006, [583], describes the relevant time period as December 30, 1993 through the present. The time frames are therefore sufficiently similar. These prior and contemporaneous acts do, in fact, present a significant probative value.

### D.     The Off Label Settlement and Plea Agreement are not Inadmissible under Rule 408

Rule 408 only prohibits the introduction of statements from settlement agreements to prove liability for the underlying claim, not the use of such documents to show evidence of previous allegations of similar behavior. To the extent that the Off Label Settlement and Plea Agreement contain facts relating to Pfizer's off-label marketing strategy, Kaiser seeks to introduce them as admissible "evidence of unqualified factual assertions." Fed.R.Evid. 408, Notes of Committee on the Judiciary, House Report No. 93-650; Notes of Committee on the Judiciary, Senate Report No. 93-1277; *see also United States v. Warren*, No. Civ.A.7:04 CR 00021, 2005 U.S. Dist. LEXIS 9269, 2005 WL 1164195, at *3 (W.D. Va. May 17, 2005) (district court ruled the document admitted for purpose other than proof of liability, meeting exception to

---

[14] *See* Settlement Agreement at p. 3-5.

9

general rule); *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (SEC consent decree admissible to show that defendant was aware of SEC reporting requirements); *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1413 (4th Cir. 1992), remanded on other grounds by *Johnson v. Hugo's Skateway*, 974 F.2d 1408 (4th Cir. Va. 1992) (Rule 408 applicable to a consent order, which could be admitted for limited purpose of showing motive and intent).

### E.     The Off Label Settlement and Plea Agreement Are Admissions, Not Hearsay

Where evidence is not being presented to prove the truth of the matter, it is by definition not hearsay. *See United States v. Riley*, 684 F.2d 542 (8th Cir. Iowa 1982) (guilty plea constitutes admission, and as such is admissible in defendant's federal prosecution); *Carlsen v. Javurek*, 526 F.2d 202 (8th Cir. S.D. 1975) (in suit for wrongful death of plaintiff's wife allegedly resulting from negligent selection and administration of drug, evidence that plaintiff had pled guilty to assault charge against his wife may be admissible as admission of party to lawsuit under Rule 801(d)(2)); *Bartholomew v. Unum Life Ins. Co. of Am.*, 588 F. Supp. 2d 1262 (W.D. Wash. 2008) (settlement agreement was not admissible as evidence of liability, but as admission of party opponent under Fed. R. Evid. 801(d)(2); admissible and relevant to extent that it demonstrated that concerns had historically been raised regarding administrator's claims-handling practice).

### F.     Introduction of the Plea Agreement Does Not Violate Defendants' Due Process Rights

Defendants' assert that introduction of the Guilty Plea will violate their due process rights, and specifically state that "The Supreme Court has made plan that it would be improper and a denial of Pfizer's due process rights for the jury to impose *punitive* damages based on unrelated conduct." Pfizer Mem. at 9. Pfizer goes on to say, "[i]f such evidence cannot support *punitive* damages, the jury certainly cannot award compensatory damages (or treble damages)

10

based upon such conduct." Defendants' also express concern that it will have to "defend against not only the plaintiff's case, but against" the conduct alleged in the Settlement Agreement and Guilty Plea as well.

First, particularly in light of the restrictions on the length of the trial, Kaiser will not spend time trying to prove that Pfizer is guilty of acts that have already been resolved in previous settlements. If Kaiser is not trying to prove Defendants' guilt as to these other matters, Defendants' will not have to defend against them. There is, therefore, no risk of prolonged mini trials.

Second, Kaiser has never indicated that they intend to introduce evidence of past settlements and guilty pleas as a basis for seeking punitive or multiple damages. Kaiser does not intend to use the Off Label Settlement and Guilty Plea for such a purpose. If Defendants' concern is that a jury may so loathe Pfizer upon hearing about its $1 billion dollar settlement that they could not help but impose punitive damages, Defendants are free to suggest a limiting jury instruction. Of course, if juries are truly so easily swayed there is not much hope for our judicial system.

### G.   The Off Label Settlement and Plea Agreement May Be Properly Admitted as Impeachment Evidence

Even if the Court rules that Kaiser may not offer the Off Label Settlement and Plea Agreement for the purposes outlined above, at a minimum Kaiser seeks to utilize these documents for the more limited purpose of impeachment.

> Impeachment evidence, in contrast, is admitted not for the truth of the matter asserted but solely for the fact that the witness' trial testimony is less believable if he has made inconsistent statements about the matter on earlier occasions.

*United States v. Hudson*, 970 F.2d 948, 956 (1st Cir. Me. 1992), *aff'd by United States v. Hudson*, 1995 U.S. App. LEXIS 27674 (1st Cir. Me. Sept. 29, 1995).

Rule 609 allows for the use of the Plea for the purposes of attacking the character for truthfulness of a witness (other than the accused) where the prior act involved dishonesty, such as in the false representations involved in the Pharmacia Plea. Fed.R.Evid. 609(a). Meanwhile, Rule 408 only prohibits certain uses of this evidence, and describes "permissible purposes include proving a witness's bias or prejudice" and "negating a contention of undue delay." Fed.R.Evid. 408. Finally, Rule 803 allows for the use of a final judgment, such as a plea of guilt, to prove any fact essential to sustain that judgment. Fed.R.Evid. 803(22).

In this instance, the underlying facts involved in the Off Label Settlement and Plea Agreement are essential to Kaiser's case. Here, it is alleged that Pfizer has engaged in just the same sort of behavior as described in these documents. *See Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. Ill. 1995) (Ponzi scheme mastermind's plea agreement admissible under Rule 803(22) in SEC's civil suit against him and his corporations, charging violations of federal securities laws). Likewise, Pfizer cannot now claim that it has no engaged in off-label marketing, by seeking to show evidence which tends to refute that claim. *See United States v Bennett* (2008, DC Hawaii) 101 AFTR 2d 2525 (defendant testified to good faith belief that tax laws did not require filing tax return or paying taxes; evidence of felony convictions of defendant's tax advisor and associates was not inadmissible under Rule 803(22) since government was entitled to impeach using convictions to show defendant held no such good faith belief).

## IV.   CONCLUSION

For the reasons stated herein, the Defendants' Motion in Limine to Exclude All Evidence of or Reference to Conduct Unrelated to Neurontin should be DENIED.

Dated:  January 22, 2010                         Respectfully submitted,

By:    */s/ Linda P. Nussbaum*
        Linda P. Nussbaum

KAPLAN FOX & KILSHEIMER LLP
Linda P. Nussbaum, Esq.
850 Third Avenue, 14th Floor
New York, New York 10022

*Attorneys for Plaintiffs Kaiser Foundation*
*Health Plan, Inc. and Kaiser Foundation*
*Hospitals*

*Of Counsel*

Thomas Greene
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served

pursuant to Case Management Order #3 on January 22, 2010.

/s/  Elana Katcher
Elana Katcher

14