UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING AND ) <br> SALES PRACTICES LITIGATION        ) <br> _____) <br> THIS DOCUMENT RELATES TO:     ) <br> _____) <br> THE GUARDIAN LIFE INSURANCE    ) <br> COMPANY OF AMERICA             ) <br>   v. PFIZER, INC.,             ) <br> 04 CV 10739 (PBS)              ) <br> _____) | MDL Docket No. 1629 <br><br> Master File No. 04-10981 <br><br> Judge Patti B. Saris <br><br> Magistrate Judge Leo T. Sorokin |

### DECLARATION OF AMBROSE CARREJO, PHARM. D.

I, Ambrose Carrejo, Pharm. D., declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

1. I am the National Pharmaceutical Contracting Leader for Kaiser's Pharmaceutical Contracting Department, and have held that position from 2008 to present. Prior to that time, from 1999 to 2006, I was the Drug Use Manager Northern California. As part of my duties, I helped collect the data included on the chart on KAIS—001107. I am familiar with Kaiser's record keeping and data collection practices and procedures.

2. I submit this declaration in support of Plaintiffs' Opposition to Defendants' Motion In Limine To Exclude The Testimony Of Raymond S. Hartman.

3. I have personal knowledge of the matters stated herein.

4. I understand that Defendants have characterized the chart on KAIS—001107 as the result of an "extensive survey [by Kaiser] to determine its own drug utilization." I disagree with that characterization.

1

5. The data represented in KAIS—001107 was collected in late 2001 (and covers approximately 6 months preceding its collection), and represents a subset of Kaiser patients in the Northern California region who were prescribed Neurontin. The data only includes patients: (a) from the Northern California region; (b) who had never taken Neurontin before for any indication; (c) the diagnosis was picked up during an incomplete data collection based on ICD-9 codes, and (d) the patient filled the prescription within twenty-four hours of the prescription being written. That is, the data does not include, among others, any refill prescription, nor any prescriptions filled outside the twenty-four hour window.

6. When collecting this data, we were focused on the paucity of Neurontin on-label epilepsy usage, and not on the presence of bipolar usage (or usage for other indications).

7. We only collected data for ICD-9 code 296.7 (bipolar disorder, unspecified), and did not collect data for ICD-9 code 296.4 (bipolar affective disorder, manic), ICD-9 code 296.5 (bipolar affective disorder, depressed), ICD-9 code 296.6 (bipolar affective disorder, mixed state (psychiatry)), nor any other ICD-9 codes that might be associated with bipolar disorder. Because our data collection, among other things, focused on only one of several possible ICD-9 codes, the collection (and the 4% figure in KAIS—001107) does not accurately represent, and instead substantially understates, the percentage of Kaiser members who were prescribed and taking Neurontin for bipolar disorder at that time.

8. Given the limitations of our data collection, I would not characterize the data represented in KAIS—001107 as an "extensive survey [by Kaiser] to determine its own drug utilization."

Executed on: January 21, 2010

_____
Ambrose Carrejo, Pharm. D.