# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin<br><br>**UNREDACTED VERSION FILED UNDER SEAL** |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION FOR CONTINUED DEPOSITION OF NICHOLAS WIEDER AND ADDITIONAL RELIEF

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum of law in support of their Emergency Motion for Continued Deposition of Nicholas Wieder and Additional Relief.

### PRELIMINARY STATEMENT

Pfizer brought the instant motion so that it could complete the deposition of Dr. Nicolas Wieder after he was repeatedly instructed not to answer several questions during his deposition on January 12, 2010. ████████████████████████████████████████████████████
████████████████████████████████████████████████████
█[1]█████████████████████████████████████████████████

---

[1] Simultaneous with its motion for relief, Pfizer filed a motion to unseal. Pfizer filed its motion for relief partially under seal in order to comply with the Protective Order in this action. However, a review of this motion and Kaiser's response makes clear that neither this motion nor Dr. Wieder's testimony concerns any proprietary, confidential information of Kaiser. And Kaiser has not identified any information that requires that the material filed with Pfizer's motion be sealed.

Kaiser has compounded its abuse of the Protective Order by filing its response and supporting papers under seal. Pfizer has separately filed its Opposition to Kaiser's Motion to File Documents Under Seal. As discussed therein, knowing that Pfizer objected to the confidentiality of this material, Kaiser has not identified any legitimate trade secret or proprietary information that requires confidentiality. The Protective Order is intended to protect legitimate proprietary information. It is not intended to shield Kaiser from public scrutiny of the inconsistencies taken by it in this litigation and in the ordinary course of its business. ████████████████████████████████████████████████████

*(cont'd)*

██ But the Federal Rules and the law in this district could not be more clear. Absent the disclosure of privilege information or some other immediate harm that would result from answering a question, attorneys are not permitted to instruct witnesses not to answer. Unable to offer any legitimate justification for the actions of its counsel, Kaiser instead attempts to deflect attention from its blatant violation of the Federal Rules. Kaiser's tactics should not be countenanced.

 As noted in Pfizer's opening memorandum, Kaiser's website contains multiple references endorsing the use of Neurontin or gabapentin for off-label uses, including treatment of chronic, neuropathic pain. Such statements are irreconcilable with the positions taken by Kaiser in this lawsuit that Neurontin lacks any efficacy for such uses.[2] It does not matter whether such articles were created by Kaiser or a third-party vendor. **THEY ARE ON KAISER'S WEBSITE.** No one forced Kaiser to put them there. ██

## ARGUMENT

I.  **Pfizer Was Denied A Full and Fair Opportunity To Depose Dr. Wieder**

Federal Rule of Civil Procedure 30 provides that objections shall be noted on the record, but that the examination still proceeds. Objections must be stated in a nonargumentative and

---

*(cont'd from previous page)*
██

[2] Pfizer contends that the statements on Kaiser's website are inconsistent with the positions taken by Kaiser in this litigation, not that they are misleading. ██

2

nonsuggestive manner. Attorneys can instruct a witness not to answer "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). Kaiser has not identified any privilege or court-ordered limitation on the deposition that supports the conduct of its counsel in instructing Dr. Wieder not to answer. Nor did it make any motion under Rule 30(d)(3). Plaintiffs' argument ▮▮▮ has been flatly rejected by the courts. *See Paparelli v. Prudential Ins. Co. of Am.*, 108 F.R.D. 727, 731 (D. Mass. 1985); *Calzaturficio S.C.A.R.P.A. S.P.A., v. Fabiano Shoe Co.*, 201 F.R.D. 33, 40 (D. Mass. 2001). Unable to justify their patent rule violation, Kaiser's remaining arguments are both unavailing.

*First*, this is not just about authenticity and any belated attempt by Plaintiff to stipulate as to authenticity (which it did not do at the time and to date has not offered any unequivocal offer to stipulate) does not cure the harm suffered by Pfizer. ▮▮▮ The website at issue is a consolidated website for both the Health Plan and the Permanente Medical Groups. Patients are, for example, able to select physicians from the website and to contact their physicians via the website. ▮▮▮

3



*Third,* 

Pfizer is seeking simply to complete discovery that this Court has already held Pfizer is entitled to obtain. This Court's Procedural Order of November 12, 2009 [2172], unequivocally allowed Pfizer to depose any witness who had been identified for the first time in opposition to summary judgment. Pursuant to such order, Dr. Wieder's deposition was noticed for December 18, 2009, and then delayed for three weeks as Plaintiffs first refused to produce the witness based upon an untenable reading of this Court's order and then asked Defendants to consent to a postponement while Dr. Wieder took a vacation ▮▮▮.

The questioning sought by Pfizer was directly relevant to the declaration given by Dr. Wieder. Kaiser offered Dr. Wieder's declaration to support its causation theory, which is basically "Had we known in 1995 through 2002 what we learned in 2002, we would have changed our behavior." Kaiser's continued recommendation of gabapentin as an effective treatment for pain and other uses on its website gives the lie to this argument. Having relied upon Dr. Wieder to support causation, Kaiser cannot prevent Pfizer from exposing the inconsistencies in Kaiser's arguments through Dr. Wieder.



That Kaiser's website continues to endorse

4

Neurontin for off-label uses ████████████████████████████ is even more powerful evidence that Kaiser's allegations in this lawsuit cannot be reconciled with the actions taken by Kaiser in the ordinary course of its business.

████████████████████████████████████████████████████████

- ████████████████████████████████████████
████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████ That Kaiser's counsel engaged in such improper behavior in 2007 is hardly reason to permit it again.

*Fourth,* ███████████████████████████████████

███ In its opening memorandum, Pfizer cited only a few examples of the constant, improper objections that impeded its counsel's ability to conduct an efficient deposition of Dr. Wieder in the time permitted. These examples were in addition to the disruption caused by counsel's improper instructions not to answer and the interference with Pfizer's counsel's orderly questioning of the witness caused by such objections. Space does not permit Pfizer to reproduce all of counsel's improper objections here. Attached to the declaration of Supplemental Declaration of Mark S. Cheffo as Exhibit I are excerpts from the deposition, highlighted to show where improper speaking objections were made and the deposition was interrupted by counsel.

*Finally,* Kaiser cannot invoke the inconvenience to its witness as grounds for denying the motion when the need to resume the deposition is attributed solely to the improper objections by Kaiser's counsel.

**II.** ███████████████████████████████████

In its opening memorandum, Pfizer explained the significance of the questions that it sought to ask Dr. Wieder but was precluded from doing so. As discussed above, counsel for Pfizer sought to explore the inconsistencies between Kaiser's public statements to its members and the positions taken by Kaiser in this litigation. ███████████████

███████████████████████████████████████████████

6



[3] To be sure, Pfizer is not asserting that the statements on Kaiser's website are misleading – ███. It is Pfizer's position that the allegations of inefficacy made by Kaiser in *this lawsuit* are false, as demonstrated by its contradictory public admissions.

[4] First, the health articles on Kaiser's website were not inserted there surreptitiously through Healthwise adware. Kaiser actively contracted with Healthwise to provide it with content for its website. Second, these are not links to a wholly separate website. Instead, Kaiser's members are directed to articles on Kaiser's website with the Kaiser Permanente logo prominently displayed at the top of each page.

And, as noted in Pfizer's opening brief, Kaiser openly touted its collaboration with Healthwise in 1999 and indicated that its physicians would be involved in actively reviewing the material provided by Healthwise. (Cheffo Decl. Exh. F.) Likewise, according to a 2004 Kaiser press release, Kaiser "showcase[d] [its] online health programs" in order to encourage enrollment. (Cheffo Supp. Decl. Exh. J.) Promoting its website, Kaiser states that it features "online drug and medical encyclopedias *reviewed and approved by Kaiser Permanente*

---

[3] And the fact that the articles are accompanied by a disclaimer telling people to consult their physician does not make Kaiser's statements any less inconsistent with its allegations in this lawsuit. Moreover, as pointed out in Pfizer's opening memorandum, imbedded within the disclaimer in each article is a "How this information was developed" link which takes readers to an article telling Kaiser members to trust information from Healthwise. (Cheffo Decl. Exh. E.)

[4] ███

*physicians*." (*Id.*, emphasis added.)  Another Kaiser press release tells people to "[c]lick to kaiserpermanente.org for physician-approved health information." (Cheffo Supp. Decl. Exh. K.) "Kaiser invite[d] everyone – members and nonmembers alike – to access trustworthy, up-to-date, physician-approved health information by visiting [its] redesigned Web site . . . ." (*Id.*) And Kaiser represents on its website that the material provided by Healthwise is both accurate and current. (Cheffo Decl. Exh. E.)



In fact, each of the Health Encyclopedia articles attached to Pfizer's opening memorandum was updated after ▮▮▮▮. (Cheffo Decl. Exh. C.)  Thus, the articles were actively reviewed and the statements about Neurontin's efficacy included in more recent iterations.  The articles remain on Kaiser's website today. ▮▮▮▮[5]

### III. Dr. Wieder's Declaration Should Be Stricken

Kaiser's attempt to reconcile Dr. Wieder's deposition testimony with his prior declaration is as incoherent as Dr. Wieder's explanations. ▮▮▮▮

---

[5] ▮▮▮▮



**IV. Pfizer Properly Met And Conferred Prior To Filing Its Motion**

But the "meet

and confer" process began at the deposition, when Pfizer's counsel repeatedly advised Kaiser's counsel that he believed counsel's instructions not to answer were improper. The Friday following the deposition, Pfizer's counsel had a detailed conference by phone with Kaiser's counsel, during which he laid out the grounds for this motion and the relief that would be sought. Kaiser's counsel asked until 5:00 p.m. the following Monday to reply. Pfizer's counsel agreed to a noon deadline. Over the weekend, Pfizer's counsel continued to confer with Kaiser's counsel by phone and email. Pfizer agreed that it would not file this motion before 5:00 p.m. Monday, as originally requested. Three days was more than enough for Kaiser to respond to Pfizer's counsel. ███

███ The urgency of this motion was created by the trial date sought by Plaintiffs and their dilatory tactics in making Dr. Wieder available for deposition.

At no time on Friday January 15, 2010 or the following weekend did Kaiser's counsel indicate that there was room for agreement on these motions. Likewise, nothing in Kaiser's response suggests that this was a matter on which agreement was likely. The purpose of the "meet and confer" requirement is to avoid the Court having to hear motions that could be resolved by negotiation. It is not meant to enable one side to delay its opponent from timely seeking relief. Here, Kaiser attempted to use the "meet and confer" requirement as a stalling tactic and improperly invoked the specter of sanctions ███ solely for intimidation.

## CONCLUSION

For all of the forgoing reasons, Pfizer requests that this Court issue an order granting the relief sought in Pfizer's motion. ███

10

Dated: January 24, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:  /s/ Mark S. Cheffo
     Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:  /s/ Raoul D. Kennedy
     Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400

-and-

WHEELER TRIGG O'DONNELL LLP

By:  /s/ James E. Hooper
     James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800

-and-

11

WHITE AND WILLIAMS LLP

By:  /s/ David B. Chaffin
     David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 24, 2010.

/s/ David B. Chaffin
David B. Chaffin