# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris |
| | Magistrate Judge Leo T. Sorokin |

**PROPOSED REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE ALL
EVIDENCE OF OR REFERENCES TO CONDUCT UNRELATED TO NEURONTIN**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this reply memorandum of law in further support of their Motion *In Limine* to Exclude All Evidence of or References to Conduct Unrelated to Neurontin [2298]. Kaiser's opposition brief confirms that the August 2009 Settlement and Pharmacia Plea are inadmissible under numerous rules of evidence, have no legitimate bearing on any issues in this case, and are instead being offered for transparently improper purposes.

## ARGUMENT

**I.  The August 2009 Settlement Represents A Compromise Of Disputed Claims, Inadmissible Under Rule 408**

Kaiser argues that Federal Rule of Evidence ("FRE") 408 does not apply to the August 2009 Settlement because Kaiser seeks to introduce the August 2009 Settlement as "'evidence of unqualified factual assertions.'" (Pl. Opp. [2416] at 9.) This argument must be rejected. Initially, while Kaiser quotes legislative history from the 1974 amendments to FRE 408 (*see id.* (quoting Notes of Committee on the Judiciary, House Report No. 93-650; Notes of Committee on the Judiciary, Senate Report No. 93-1277)), the plain and unambiguous language of the current rule provides that "statements made in compromise negotiations" cannot be admitted for impeachment purposes in a subsequent civil case. Fed. R. Evid. 408(a)(2). As the advisory committee's note explains:

> The amendment prohibits the use of statements made in settlement negotiations when offered to impeach by prior inconsistent statement or through contradiction. Such broad impeachment would tend to swallow the exclusionary rule and would impair the public policy of promoting settlements.

Fed. R. Evid. 408, advisory committee's note to 2006 amendment.[1]

Moreover, the August 2009 Settlement makes clear that, apart from narrow factual admissions with no relevance to this case (*see* Section II.A, *infra*), it is merely a "compromise of disputed claims" and "not an admission of facts or liability by Pfizer." (August 2009 Settlement at 5-6.) Accordingly, the August 2009 Settlement is inadmissible to prove that Pfizer actually engaged in the conduct of which it was accused in the underlying *qui tam* actions. *See* Fed. R. Evid. 408.

Kaiser makes vague references to the use of prior settlements for "purpose[s] other than proof of liability" (Pl. Opp. [2416] at 9), but Kaiser does not identify any such "purpose[s]" as to which the August 2009 Settlement would be probative. Kaiser seeks to introduce the settlement to show that Pfizer committed the conduct alleged, that is, as proof of liability, which is prohibited by Rule 408. The few authorities Kaiser cites are all distinguishable. Kaiser cites two cases in which evidence of a *prior* consent decree was admitted under FRE 404(b) as evidence that the defendants' *subsequent* violations of securities law were committed with intent and with knowledge of SEC reporting requirements. *See United States v. Warren*, No. 7:04-CR-00021, 2005 WL 1164195, at *2-4 (W.D. Va. 2005); *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981). Likewise, Kaiser cites *Johnson v. Hugo's Skateway*, 974 F.2d 1408 (4th Cir. 1992), in which evidence of the defendant's failure to comply with a *prior* consent decree resolving racial discrimination claims was admitted to show that its *subsequent* conduct was motivated by racial animus. *See id.* at 1413. Here, Pfizer entered into the August 2009 Settlement years after the

---

[1] Moreover, Kaiser's attempt to use a corporation's admission of discrete and specific instances of conduct as evidence of an overarching "pattern and practice" that cuts across different product lines, time periods, and geographical regions, would violate the principles underlying FRE 408 by creating a powerful disincentive against entering into any such settlements in the first place. *See, e.g., McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247 (1st Cir. 1985).

2

conduct alleged in this case. No authority supports Kaiser's suggestion that the August 2009 Settlement could retroactively demonstrate Pfizer's intent or knowledge of FDA regulations during earlier time periods.

II. **The August 2009 Settlement And Pharmacia Plea Are Not Relevant To Any Issue In This Litigation And Contain Inadmissible Hearsay**

   A. **The August 2009 Settlement's Narrow Factual Admissions Regarding Zyvox Are Irrelevant And Unduly Prejudicial**

All of Pfizer's statements made in connection with the August 2009 Settlement are inadmissible under FRE 408 for the reasons discussed above. Moreover, Kaiser's arguments must be rejected for the independent reason that Pfizer's only factual admissions in the August 2009 Settlement are irrelevant because they concern unrelated claims and transactions as to which no showing of substantial similarity has been made. *See Cameron v. Otto Bock Orthopedic Indus., Inc.*, 43 F.3d 14, 16 (1st Cir. 1994) ("[R]eports of other incidents would be probative evidence . . . only if the incidents occurred under circumstances substantially similar to those surrounding [plaintiff's] accident."); *accord Perez-Trujillo v. Volvo Car Corp. (Sweden)*, 137 F.3d 50, 54 n.13 (1st Cir. 1998).

Kaiser concedes that Pfizer's only admissions in connection with the August 2009 Settlement concerned certain specific facts regarding the drug Zyvox. (Pl. Opp. [2416] at 2-3.) These admitted facts are set forth in Attachment A to the August 2009 Settlement. (*See* Attachment A [2300-2], pp. 48-49].) By taking certain quotations from Attachment A out of context, Kaiser misleadingly suggests that Pfizer made sweeping admissions regarding an overall "pattern and practice" of off-label marketing. (Pl. Opp. [2416] at 1; *see also id.* at 2-3.) Initially, Kaiser's "pattern and practice" argument must be rejected because it ignores First Circuit authority holding that "pattern" evidence is irrelevant in RICO cases unless there is a nexus between the racketeering acts that constitute a "pattern" *and the alleged enterprise at issue.* (*See* Section II.C, *infra*.)

Moreover, Pfizer did not even admit that it marketed Zyvox for any off-label indications, let alone that it engaged in off-label marketing remotely similar to that alleged by Kaiser.

3

Instead, Pfizer's narrow factual admissions concerned its response to an FDA warning letter in which the FDA expressed concerns that a particular journal advertisement contained misleading and unsubstantiated claims regarding the superiority of Zyvox for on-label indications. (*See* Attachment A [2300-2], pp. 48-49] ¶¶ 2-4.) The FDA also alleged that certain words used in the journal advertisement by implication "broadened" Zyvox's on-label indications. (*Id.* at ¶ 3.) But Pfizer "did not believe" – **and has never admitted** – that the journal advertisement made any such misleading and unsubstantiated claims. (*Id.* ¶ 6.) The only conduct Pfizer admitted as to Zyvox was that it "did not provide adequate guidance to its sales force" in response to the FDA's concerns, and that two Pfizer employees may have knowingly encouraged marketing activities inconsistent with the FDA's concerns. (*Id.* ¶¶ 8-10.)

Kaiser's claims are completely dissimilar. Whereas Kaiser asserts that Pfizer marketed Neurontin for unapproved uses for which there is purportedly no scientific evidence of efficacy, Pfizer's narrow admissions in the August 2009 Settlement do not even show that Pfizer marketed Zyvox off-label, let alone that it did so without scientific evidence of efficacy. Likewise, Kaiser does not allege that Pfizer failed to "provide adequate guidance to its sales force" in response to FDA concerns that Pfizer disagreed with. Instead, Kaiser makes the dramatically different claim that Pfizer purportedly engaged in a nationwide fraudulent marketing campaign regarding off-label conditions for which Pfizer purportedly knew Neurontin was ineffective or inferior to cheaper, alternative drugs.

B.  **The Pharmacia Plea Is Not Evidence of Any Conduct By Pfizer**

Kaiser's argument that the Pharmacia Plea is admissible to prove that *Pfizer* engaged in the misconduct alleged in the underlying criminal information is utterly specious. Kaiser concedes that the Pharmacia Plea was entered into by Pharmacia alone. (Pl. Opp. [2416] at 3-4.) Yet Kaiser grossly mischaracterizes the Pharmacia Plea by claiming that it resolved allegations "about Pfizer's use of particular marketing tactics." (*Id.* at 3.) Every single one of the allegations Kaiser cites was made against "**PHARMACIA**," not Pfizer. (*See* Information [2300-3 at pp. 14-34] at ¶¶ 33-38, 55-58, 64-75, *cited in* Pl. Opp. [2416] at 4.) Kaiser's

4

arguments that Pharmacia's admissions and plea can be imputed to Pfizer are based entirely on its assertions that (1) Pfizer and Pharmacia jointly promoted Bextra prior to April 2003, (2) Pfizer acquired Pharmacia in April 2003, (3) the marketing activities for which Pharmacia pled guilty continued after April 2003. (Pl. Opp. [2416] at 3, 4.) Likewise, without a shred of supporting evidence Kaiser argues that "Pfizer was well aware of what it was buying when it purchased Pharmacia and it continued to profit from the misconduct involved in the Plea . . . ." (*Id.* at 7.) Pharmacia Plea [2300-3] at ¶ 15 (emphasis added). Kaiser's guilt-by-association innuendo is unsupported by any authority.

Kaiser cites two cases for the proposition that a non-party's prior guilty plea may be admitted against defendants in a civil case. (Pl. Opp. [2416] at 6 & 7 n.7 (citing *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399 (8th Cir. 1995); *In re Enron Sec., Derivative & "ERISA" Litig.*, 491 F. Supp. 2d 690 (S.D. Tex. 2007).) Both cases were decided under FRE 803(22), which provides that final judgments entered upon a guilty plea are not hearsay when offered "to prove any fact *essential to sustain the judgment*." Fed. R. Evid. 803(22) (emphasis added). Neither case remotely supports admission here, because in both cases, the facts "essential to sustain the judgment" on the guilty pleas did not concern unrelated transactions. Instead, those essential facts concerned the precise transactions at issue in the subsequent civil suits. In *RSBI Aerospace*, an employee's guilty plea to arson was admitted to show that a fire loss was excluded by the insurance policy under which the plaintiff sought to recover. *See* 49 F.3d at 400-01. Likewise, in *In re Enron*, the plaintiffs claimed that defendant Merrill Lynch had aided and abetted its co-defendant Enron in allegedly committing securities fraud. *See* 491 F. Supp. 2d at 691. The court held that Enron employees' guilty pleas were admissible against Merrill Lynch because those guilty pleas admitted the *very same* fraudulent conduct that Merrill Lynch allegedly aided and abetted. *See id.* at 703-04.

Kaiser's argument is completely different. Kaiser seeks to admit the Pharmacia Plea to show that Pfizer engaged in the alleged conduct Pharmacia was charged with. No authority supports this argument. Because no purported facts regarding Pfizer's marketing of Bextra were

5

"essential to sustain the judgment" against Pharmacia, FRE 803(22) does not apply. *See, e.g., SEC v. Aragon Capital Mgmt., LLC,* No. 07-cv-919, 2009 WL 4277244, at *7 (S.D.N.Y. Nov. 24, 2009) (holding that son's allocution as to insider trading was not admissible against his father in a subsequent civil proceeding because it concerned a fact that was not "'essential to sustain the judgment'" against the son).

Even if the Pharmacia Plea was not inadmissible hearsay as to Pfizer, it would be inadmissible under FRE 403. Indeed, even when the actual defendant in a civil case previously pled guilty in connection with transactions unrelated to the lawsuit, the prejudicial value of the guilty plea substantially outweighs any minimal probative value.

> [B]ecause the criminal information, plea and allocution related to a single act of mail fraud with regard to another Wymer customer, whose transactions are not at issue in this case, any probative value is outweighed by its patent prejudicial effect and potential for confusing and misleading the jury. Accordingly, I grant Refco's request to exclude any reference to the criminal information, plea or allocution relating to Goodman.

*FDIC v. Refco Group, Ltd.,* 184 F.R.D. 623, 628-29 (D. Colo. 1999). Here, because the Pharmacia Plea concerns unrelated transactions involving a different corporation, the probative value is non-existent, and the prejudicial value profound.

Moreover, even in unusual circumstances – not present here – in which a non-party's guilty plea is admissible against a party to a lawsuit, Kaiser's own authority recognizes that the guilty plea is not conclusive with respect to the all the alleged facts on which it is based. Rather, the party against whom the plea is offered has the right to rebut the underlying allegations. *See In re Enron,* 491 F. Supp. 2d at 704 (holding that non-parties' guilty pleas "cannot preclude Merrill Lynch's right to a full and fair opportunity to litigate" the underlying facts). Here, except as to those matters specifically admitted by Pharmacia in the plea, Pfizer would be entitled as a matter of law, and required as a practical matter, to introduce evidence regarding the alleged facts underlying the Pharmacia Plea, which would inevitably lead to unnecessary mini-trials and cause significant jury confusion.

### C. The Evidence Should Be Excluded As Unfairly Prejudicial

Kaiser argues that the August 2009 Settlement and Pharmacia Plea are relevant to show that "Pfizer has a pattern and practice of marketing drugs for off-label purposes." (Pl. Opp. [2416] at 5.) As discussed above, these documents show no such thing. Moreover, in cavalierly stating that Pfizer would suffer no undue prejudice from the introduction of this inadmissible evidence (*see id.* at 6-8), Kaiser ignores First Circuit authority cited in Pfizer's opening brief. The First Circuit has consistently held that the admission of "pattern" evidence in a RICO case requires a nexus between the racketeering acts that constitute a "pattern" *and the alleged enterprise at issue. See United States v. Nascimento*, 491 F.3d 25, 45 (1st Cir. 2007) ("The word 'through' implies a nexus between these racketeering acts and the enterprise."). The enterprise allegations that this Court previously allowed to survive dismissal were specific to Neurontin. *See In re Neurontin Mktg. & Sales Practices Litig.*, 433 F. Supp. 2d 172, 183 (D. Mass. 2006). Evidence of a plea by a different corporation involving a different drug cannot possibly be relevant to whether Plaintiffs can satisfy their burden of proof as to RICO's pattern element with respect to the predicate acts and enterprise at alleged here.

### III. Introduction Of The Pharmacia Plea Is Irreconcilable With The Supreme Court's Decisions In *Campbell* And *Philip Morris* And Would Result In A Violation Of Defendants' Due Process Rights

As discussed in Pfizer's opening brief, introducing a Settlement and criminal plea that are unrelated to Neurontin and have no bearing on the facts of this case would violate the dictates of the Supreme Court by inviting the jury to impose liability and punish Pfizer for unrelated alleged conduct that caused no harm to Kaiser. *See Philip Morris USA v. Williams*, 549 U.S. 346 (2007); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). Plaintiffs' response attempts, unsuccessfully, to address only one of the concerns expressed by the Supreme Court and does not confront the fundamental unassailable principle established in *Philips Morris*: It is a violation of due process to impose liability for punitive damages (and by extension liability for compensatory damages) on the basis of conduct that did not cause the plaintiff's injury. Where, as here, Plaintiffs seek to recover under a statute that provides for automatic trebling of

7

compensatory damages, the concerns expressed by the Supreme Court are heightened.

Kaiser's only response is that it is "not trying to prove Defendants' guilt as to these other matters," and that as a result, "Defendants will not have to defend against them." (Pl. Opp. [2416] at 11.) Kaiser misses the point entirely. The fact that Kaiser *presuppose* that Pfizer is guilty of the conduct alleged in the other actions makes the due process violation *worse*. Kaiser clearly wishes to present these documents to the jury as a *fait accompli*, and invite the jury to assume Pfizer's guilt and impose liability based upon unrelated conduct for which Pfizer will have no real opportunity to defend itself. Due process does not allow the stratagem Plaintiffs seek to employ.

Moreover, Kaiser admits that it does not seek to offer the August 2009 Settlement or Pharmacia Plea "as a basis for seeking punitive or multiple damages" (Pl. Mem. [2416] at 11) and, therefore, concedes that the evidence does not fall within *Campbell*'s limited reprehensibility exception for substantially identical conduct. Consequently, Kaiser cannot offer any legitimate and constitutional purpose for the evidence, which must be excluded.

### IV. The August 2009 Settlement and Pharmacia Plea Constitute Improper Character Propensity Evidence

Kaiser argues that evidence of alleged prior bad acts is admissible under FRE 404(b) where the proponent demonstrates that the evidence has "special relevance exclusive of defendant's character or propensity." (Pl. Opp. [2416] at 8.) Kaiser argues in conclusory terms that the August 2009 Settlement and Pharmacia Plea have such "special relevance" because they are "factually similar to the alleged activities in this case." (*Id.* at 9.) For the reasons discussed sections II.A and II.B above, Kaiser's attempt to establish relevance based upon broad and sweeping generalizations must be rejected.

Moreover, courts have made clear that the exceptions provided for in FRE 404(b) must be narrowly construed so that the exceptions do not swallow the rule. Whichever exception is invoked by the plaintiffs, courts have made clear that the evidence cannot be admitted under any circumstances where the real purpose is to show liability by propensity to act in a certain way.

8

*See Becker v. ARCO Chem. Co.*, 207 F.3d 176, 191 (3d Cir. 2000). Here, the arguments that Kaiser advances for admission of the evidence are the very definition of improper propensity evidence. For example, Kaiser alleges: "This pattern of behavior has the requisite tendency to make it more likely that Pfizer marketed Neurontin for off-label purposes." (Pl. Mem. [2416] at 5.) In other words, Plaintiffs seek to introduce the evidence to show that Pfizer has a propensity to act in a certain way and, therefore, the jury should find that it engaged in the alleged conduct here. FRE 404(b) absolutely precludes introduction of the evidence for this purpose.

V.  **The August 2009 Settlement And Pharmacia Plea Are Not Admissible As Impeachment Evidence**

Kaiser argues that the Pharmacia Plea is admissible to impeach "the character for truthfulness of a witness." (Pl. Opp. [2416] at 12 (citing Fed. R. Evid. 609(a)).) But Kaiser's argument that *Pharmacia's* plea can be introduced to impeach the credibility of *Pfizer* or any *Pfizer* employee ignores the rule that one person's conviction cannot be introduced to impeach another person's testimony on the stand. *See United States v. Lipps*, 659 F.2d 960, 962 (9th Cir. 1981) ("[Rule 609] does not authorize the introduction of a defendant's prior convictions to impeach another witness.").[2] Likewise, "Rule 609 does not permit *corporate* convictions to be used to impeach the credibility of *employee* witnesses who were not directly connected to the underlying criminal act." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 524 (3d Cir. 1997) (emphasis added). Kaiser cites no contrary authority that would permit introduction of one corporation's plea to impeach another corporation's employee witnesses.

Likewise, Kaiser's attempt to use the August 2009 Settlement for impeachment evidence flies in the face of FRE 408's express prohibition against the use of "conduct or statements made in compromise negotiations" in order "to impeach through a prior inconsistent statement or

---

[2] *See also, e.g., United States v. Dweck*, 913 F.2d 365 (7th Cir. 1990) ("Rule 609 . . . applies only when a *prior conviction of the witness testifying* is brought out on cross-examination."); 4 *Weinstein's Federal Evidence* § 609.02 (2d. ed. 2009) ("Rule 609 does not authorize the introduction of a witness's prior convictions to impeach another witness."); 3 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 6:50 (3d ed. 2009) (similar).

9

contradiction." Fed. R. Evid. 408(a)(2).[3]

Even putting aside these express prohibitions against introducing the Pharmacia Plea or the August 2009 Settlement for impeachment purposes, Kaiser's arguments would still have no merit because Kaiser purportedly seeks to impeach credibility with respect to matters not at issue in this litigation. Impeachment is not a backdoor entry for irrelevant evidence. For example, Kaiser argues that "Pfizer should not be allowed to assume a contrary position, that it did not engage in these off-label practices." (Pl. Opp. [2416] at 7.) But Pfizer has taken no position in this case regarding its marketing of drugs other than Neurontin, because the marketing of other drugs is irrelevant. *See* Section II.A, *supra*. The Federal Rules of Evidence do not permit Kaiser to manufacture relevance in the guise of impeachment evidence by seeking to elicit testimony on an irrelevant subject in order to offer the Plea as impeachment.

Moreover, because the August 2009 Settlement and the Pharmacia Plea do not support Kaiser's various conclusory assertions regarding Pfizer's marketing of unrelated drugs, Kaiser could only prove such conduct through extrinsic evidence. But as the First Circuit has repeatedly held, "a party is barred from impeaching a witness on a collateral matter through the use of extrinsic evidence." *United States v. Lipscomb*, 539 F.3d 32, 39 (1st Cir. 2008), *cert. denied*, 129 S. Ct. 963 (2009); *see also, e.g.*, *United States v. Cruz-Rodriguez*, 541 F.3d 19, 30 (1st Cir. 2008) ("'It is well established that a party may not present extrinsic evidence to impeach a witness by contradiction on a collateral matter.'" (citation omitted)), *cert. denied*, 129 S. Ct. 1017.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their motion in limine to exclude any evidence of or reference to the Pharmacia Plea at trial.

---

[3] *See also, e.g.*, *Cosgrove ex rel. Winfree v. Merrell Dow Pharms., Inc.*, 788 P.2d 1293, 1296 (Idaho 1989) (upholding exclusion of evidence regarding pharmaceutical company's other products, offered to show a habit of fraud or deceit, since it was not probative or relevant to the issues before the court and jury in the case); *McLeod v. Parsons Corp.*, 73 F. App'x 846, 853-54 (6th Cir. 2003) (affirming trial court's decision to exclude as irrelevant evidence of other unrelated lawsuits against defendant).

10

Dated: January 26, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By: /s/ Raoul D. Kennedy
    Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400

-and-

WHEELER TRIGG O'DONNELL LLP

By: /s/ James E. Hooper
    James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800

-and-

11

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 26, 2010.

/s/ David B. Chaffin
David B. Chaffin