## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING,<br>SALES PRACTICES, AND<br>PRODUCTS LIABILITY<br>LITIGATION | MDL Docket No.  1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE<br>COMPANY OF AMERICA v. PFIZER INC., 04<br>CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958<br>(PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

## KAISER'S OPPOSITION TO DEFENDANTS' MOTION FOR CONTINUED DEPOSITION OF DR. NICOLAS WIEDER AND ADDITIONAL RELIEF

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  FACTS ......................................................................................................... 3

III. ARGUMENT ................................................................................................ 6

   A.  Continuing the Deposition of Dr. Wieder Would Give Defendants A Second
   Bite at the Discovery Apple ..................................................................................... 6

      1.  Defendants Already Exceeded the Time To Which They Were Entitled ....... 7

      2.  Defendants Fully Examined Dr. Wieder ........................................................ 8

      3.  Continuing the Deposition Would be Unduly Burdensome and Would Raise
      Issues That Defendants Have Had Ample Opportunity to Address ................... 10

   B.  Defendants Should Not Receive Additional Discovery .................................... 12

   C.  No Court Order is Necessary to Preserve Documents ..................................... 13

   D.  The Court Should Not Strike Dr. Wieder's Declaration .................................. 13

   E.  Healthwise Episode Demonstrates the Breadth of Pfizer's Fraud .................... 15

IV.  CONCLUSION ............................................................................................ 16

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Reigel v. Kaiser Foundation Health Plan of North Carolina, Inc.*, 859 F. Supp.
  963 (E.D.N.C. 1994) ......................................................................................................8

### **FEDERAL STATUTES**

Fed. R. Civ. P. 26(b)(2)(C) ......................................................................................6, 10

Fed. R. Civ. P. 30(d)(1)..................................................................................................6

Fed. R. Civ. P. 30(d)(3)(A) ............................................................................................9

## I.   INTRODUCTION

On January 18, 2010, Defendants Pfizer, Inc. and Warner-Lambert Company LLC ("Defendants" or "Pfizer") moved for a continued deposition of Dr. Nicolas Wieder and "additional relief."[1]  Kaiser[2] opposes Defendants' transparent attempt to circumvent the Court's rules and discovery guidelines.  More specifically, Plaintiffs oppose this motion for the following reasons:

- *Pfizer seeks "emergency" relief for an issue that first arose over two years ago in this litigation.*  The information Pfizer seeks relates to the authenticity of materials on Kaiser's website, which was discussed on July 12-13, 2007 in the deposition of Albert Carver, Kaiser's 30(b)(6) representative.  The "emergency" is the byproduct of Pfizer's failure to seek discovery on these websites prior to the discovery deadline.

- *Pfizer seeks more time to depose a witness who they have already questioned for longer than the court-ordered seven hours.*  Defendants exceeded the seven-hour limit, but Plaintiffs twice allowed them to ask additional questions.  Pfizer failed to reserve a portion of its allotted time for re-direct examination, as has been the practice throughout this litigation.  Dr. Wieder should not be punished for Pfizer's inefficient use of time.

---

[1] On January 18, 2010, Defendants also filed a Motion "To Unseal Motion For Continued Deposition Of Nicholas Wieder And Additional Relief by Pfizer, Inc."  That motion was not styled as an "emergency" motion and Kaiser intends to file its reply within the standard 14-day response period.

[2] Plaintiffs are Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser").  Kaiser Foundation Health Plan, Inc. is the parent company of the following companies and has brought this lawsuit on behalf of itself and its subsidiaries:  Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio.

- ***Pfizer seeks to reconvene the deposition of a witness located 3,000 miles away from the attorneys in this case to address a ministerial matter regarding the authenticity of website materials, when the attorneys could resolve the matter in short order.*** The only issue about which Pfizer was unable to question the witness involved the authenticity of materials that Pfizer claimed appeared on Kaiser's website. Dr. Wieder testified that he has never seen the materials that Pfizer sought to authenticate. Kaiser's counsel offered to authenticate those materials that actually appeared on the website, but Pfizer has nonetheless filed this motion.

- ***Pfizer seeks Kaiser to identify all of Kaiser's websites and to give it passwords to access the portions of the website where patients schedule appointments, although Pfizer knew about these materials over two and one half years ago, discovery closed over two years ago, and trial is one month away.*** Pfizer should have served discovery requests for this information while discovery was still pending. Plaintiffs should not suffer due to Defendants' delay.

- ***Pfizer seeks to have "stricken" a truthful declaration even though the declarant's extensive deposition testimony confirms the statements made in his declaration.*** Dr. Wieder provided a declaration in response to Pfizer's motion for summary judgment, stating that he previously recommended that the P&T Committee remove formulary restrictions and guidelines and would not have made the recommendation had he known about Pfizer's misconduct. Dr. Wieder's testimony repeated these statements and explained their meaning in more depth.

- ***Pfizer filed its motions prematurely.*** Defendants rushed the "meet and confer" process and ignored Plaintiffs' requests to confer after the holiday weekend. As a result,

Defendants filed this "emergency" motion and memorandum under seal and filed a

separate motion to unseal these documents. A proper "meet and confer" process should

have been undertaken.

- ***Pfizer's rant about the Healthwise materials is the pinnacle of hypocrisy – Pfizer***
  ***condones its own use of misleading statements but criticizes the Healthwise's repetition***
  ***of those same statements.*** Pfizer quotes extensively from Dr. Wieder's testimony that

  the materials drafted by Healthwise and available on Kaiser's website contained

  misleading claims about Neurontin. These claims resulted from Pfizer's misconduct.

The Court should not allow Defendants to take several more bites at the discovery apple, and

Defendants should be sanctioned for bringing the motion.

## II.    FACTS

This motion centers on Pfizer's desire to elicit more testimony regarding the authenticity

of materials from Kaiser's website. Defendants have known about Kaiser's website at least since

July 12-13, 2007, when they deposed Albert Carver, Kaiser's 30(b)(6) witness. Defendants

asked Carver numerous questions about Kaiser's websites, both about those sections available to

the public and internal sections requiring a password. Ex. A, Carver Dep. 44:4-14; 441:15-20;

447:16-21. Defendants also knew that the website posted materials on Neurontin, as they asked

Carver if he would "feel compelled to take some action if [he] learned that Permanente Group's

public website was advising visitors that, 'People who took Gabapentin for chronic pain said

they felt one-third less pain while they were taking Gabapentin?" Ex. A, Carver Dep. 447:16-21.

Despite knowing about Kaiser's public website and password-protected website, Defendants did

not pursue any discovery seeking their URLs or a username and password.

More than two years later, Defendants sought to depose Dr. Nicolas Wieder, a physician

specializing in pain medicine, presumably because Plaintiffs had attached a declaration of Dr.

Wieder as part of its response to Defendants' motion for summary judgment. The declaration

simply stated (1) that Dr. Wieder had recommended removal of all formulary restrictions and

guidelines for Neurontin, (2) that Dr. Wieder's belief was that the P&T Committee adopted his

recommendation, and (3) that Dr. Wieder would not have recommended the expansion of

Neurontin's formulary status had he known the truth about Neurontin's efficacy and safety.

Wieder Decl. ¶¶ 8-9. On January 8, 2010, the Court denied Defendants' motion for summary

judgment with respect to Kaiser, citing to the portion of Dr. Wieder's declaration that indicated

he would not have recommended expansion of Neurontin's formulary status, but also citing to

other authorities, including the declaration of Dr. Dale Daniel, the Chairperson of Kaiser's

Southern California P&T Committee. *See* Mem. & Order [Dkt. # 2309] at 7-8. Although

Plaintiffs did not include Dr. Wieder on their witness list, Defendants moved to compel his

deposition, and the Court allowed a deposition of Dr. Wieder consistent with Rule 30(d)(1) of

the Federal Rules of Civil Procedure. *See* December 17, 2009 docket entry.

On January 12, 2010, Defendants deposed Dr. Wieder. Because the Court ordered a

seven-hour deposition, Plaintiffs believed that they should receive an equal amount of time as the

Defendants, giving them three-and-one-half hours each to depose Dr. Wieder. Ex. B, Wieder

Dep. 385:23-386:9. Instead, Defendants deposed Dr. Wieder, over Plaintiffs' objection, for the

entire seven hours (not sharing any time with Plaintiffs), and even for several minutes beyond

that limit.[3] Plaintiffs suggested that Defendants reserve a portion of their time for follow-up

questions, but Defendants did not do so, even though such reservations have been the parties'

practice throughout this litigation. *Id.* at 386:10-14.

---

[3] The witness began answering Pfizer's questions around 9:00 am. Pfizer's initial round of questioning was not
complete until about 6:30 pm. The deposition did not conclude until just before 8:00 pm.

During the deposition, Defendants' counsel referred to materials regarding Neurontin he claimed were posted on Kaiser's website ("Healthwise materials"). Dr. Wieder testified that he has never seen them before. Ex. B, Wieder Dep. 340:23 – 341:2; 341:13-19. Dr. Wieder is not an employee of Kaiser, and therefore, would have no authority to speak about the website or the Healthwise materials. *Id.* at 20:4-14. Plaintiffs' counsel allowed Defendants' counsel to ask a lengthy series of questions about the Healthwise materials. *Id.* at 345:4 – 363:16.

Nonetheless, Plaintiffs' counsel took issue with (1) Defendants' attempt to use the internet for a demonstration as a form of authentication and (2) Defendants' attempt to authenticate materials that would easily be authenticated through counsel. Plaintiffs' counsel clearly stated his concerns by noting that "[i]f there's something you want to do with him on the record with a document in front of him that he can read, you can do that, which you already have. If you're concerned about a foundational issue about what appears in the website today, you can speak to the lawyers. You don't need him to do it." Ex. B, Wieder Dep. 337:24 – 338:5. In response to Defendants' counsel's request to stipulate to the document's authenticity, Plaintiff's counsel further said that "[i]f it's on the web, I'll stipulate with you, but I don't know whether it is, and I'm not doing stipulations today." *Id.* at 339:1-4. In other words, Plaintiffs' counsel was willing to stipulate to the authenticity of any materials actually on the website, but he did not want to engage in the demonstration of authenticating documents by navigating the website. After this exchange, Defendants had a full and fair opportunity to ask any questions they wanted about the Healthwise materials or other information printed out from Kaiser's website.

## III.   ARGUMENT

### A.   Continuing the Deposition of Dr. Wieder Would Give Defendants A Second Bite at the Discovery Apple

Pfizer seeks to reconvene the deposition of a witness who they have already questioned for longer than the court-ordered seven hours and who is located 3,000 miles away from the attorneys in this case – all to address a ministerial matter regarding the authenticity of website materials, which the attorneys could resolve in short order.

Rule 30(d)(1) of the Federal Rules of Civil Procedure limits depositions to 1 day of 7 hours, but states that the "court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstances impedes or delays the examination." Fed. R. Civ. P. 30(d)(1).  Courts may not provide additional time if to do so would violate Rule 26(b)(C), which requires courts to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," or that "the party seeking discovery has had ample opportunity to obtain . . . by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C).  Defendants' motion attempts to circumvent the "1 day, 7 hour" rule even though they had an opportunity to examine Dr. Wieder fully with respect to all information about which he is capable of testifying, the parties can agree upon the authenticity of these documents without the need to depose Dr. Wieder for two more hours, and the Defendants have had ample opportunity to seek discovery authenticating the materials on Kaiser's website.[4]

---

[4] Defendants appear to be relying on Rule 30(d)(1) to seek their proposed relief rather than Rule 37.  *See* Def.'s Mem. of Law in Support of Defendants' Emergency Mot. for Continued Dep. of Nicholas (sic) Wieder and Additional Relief ("Mem.") at 14; Def.'s Emergency Mot. For Continued Dep. of Nicholas (sic) Wieder and Additional Relief ("Mot.") (silent on basis for relief).  To the extent that Defendants claim that Rule 37 justifies their proposed relief, despite their opportunity to ask Dr. Wieder about any materials printed off the Kaiser website, Plaintiffs' actions were substantially justified and harmless to Defendants.

### 1.    Defendants Already Exceeded the Time To Which They Were Entitled

Barring stipulation or court order, Rule 30(d)(1) generally limits the duration of depositions to "1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). The court order granting Defendants' motion to depose Dr. Wieder did not alter this seven-hour limit. *See* December 17, 2009 docket entry. Given that both Plaintiffs and Defendants had questions for Dr. Wieder, Plaintiffs sought to split the seven hours evenly between the parties, with each side deposing Dr. Wieder for 3.5 hours, but Defendants insisted on using all seven hours. Ex. B, Wieder Dep. 385:23-386:9 ("The plaintiff's position is that [the seven hours] should be split in half, three and a half hours each. As [an] accommodation to counsel for Pfizer, the plaintiffs have been permitting the questioning to go after three and a half hours."). Moreover, Plaintiffs' counsel advised Defendants' counsel that he should reserve some of that time "if they want any opportunity to undertake a redirect after we have questioned the witness." *Id.* at 386:10-14. The practice throughout this litigation has been to reserve a portion of a party's time for re-direct examination. *See, e.g.*, Deposition of Robert Glanzman, August 2, 2007, at 487:14 – 488:10 (Plaintiff and Defendant agreeing as to the custom of reserving time in this litigation).[5] Defendants' counsel never reserved that time. Indeed, Defendants asked questions beyond the seven hour mark, but Plaintiffs agreed to allow Defendants to ask an additional five minutes of questions (and then an additional two questions after the five minutes had expired). *See* Ex. B, Wieder Dep. 446:17 – 447:14; 454:13 – 455:15 (allowing two more questions after noting that Defendants' counsel had exceeded the five minutes, exceeded the seven-hour limit, and exceeded

---

[5] [Counsel for Plaintiff]: As it has been the custom and practice in all of these depositions, the defendants have reserved the right to a portion, a small portion of the total of 14 hours for direct examination, and we have reserved that right here consistent with that practice, and allocated two hours for that. ...
 [Counsel for Defendant]: Join in [Counsel for Plaintiffs]'s statement with respect to the time allotment and the reservation of rights.

the 3.5 hours that would be half of the allotted time). Largely due to Defendants' continuing past

these several benchmarks, Dr. Wieder's deposition lasted from just after 9:00 a.m. to almost 8:00

p.m. In short, Defendants have already used more than their allotted time.

Defendants' argument that Kaiser made improper speaking objections and that the

witness impeded the examination lack merit. Defendants claim that Pfizer could not use its time

because "Kaiser's attorneys made numerous speaking objections." Mem. at 14. However, their

first three citations for this proposition comprise a total of 16 lines of a single page of deposition

testimony, and the fourth citation contains less than a page of discussions among counsel. *See*

Mem. at 14 (citing Wieder Dep. at 39:5-13, 41:5-9, 51:20-22, and 99:18-100:12). Plaintiffs'

objections, which were completely permissible, caused no delay in Defendants' deposition of Dr.

Wieder. Defendants also claim that the witness rambled and provided non-responsive testimony.

Mem. at 14. While Dr. Wieder was merely trying to answer Defendants' questions, Defendants'

counsel chose, rather than to narrow his questions or provide guidance to the witness, to make

comments like "I'm not going to interrupt you, Doctor." Ex. B, Wieder Dep. 407:11. Counsel

thus encouraged Dr. Wieder to continue speaking rather than narrowing his questions.

Defendants got exactly the deposition they wanted and used more time than they were entitled to

use. As a result, their motion should be denied.

### 2.    Defendants Fully Examined Dr. Wieder

Defendants claim that Plaintiffs' counsel "precluded Pfizer's counsel from thoroughly

questioning Dr. Wieder on inconsistencies between the public statements on Kaiser's websites

and its allegations in this litigation." Mem. at 14. This assertion lacks merit. First, Dr. Wieder

lacks any knowledge about the Healthwise materials. When asked at his deposition, Dr. Wieder

testified that he had never seen the Healthwise materials. Ex. B, Wieder Dep. 340:23 – 341:2;

341:13-19. Further, Dr. Wieder could not even remember his username or password to enter the

system. *Id.* at 340:11-15. Although Dr. Wieder provides physician services to Kaiser members, he is not an employee of Kaiser. *Id.* at 20:4-14.[6] Thus, he has no authority to speak about the website or the Healthwise materials. Defendants have no special reason to seek his testimony on these materials.

Defendants nonetheless examined Dr. Wieder about the Healthwise materials. *See* Ex. B, Wieder Dep. at 345:4 – 363:16. Defendants' counsel spent over twenty minutes showing Dr. Wieder the Healthwise materials. *Id.* Dr. Wieder did not have specific knowledge of the issues addressed in the Healthwise materials, so Defendants' counsel chose to focus his questions on whether the materials were misleading. *Id.* Defendants' counsel then moved on to a different topic of his own volition rather than based on an objection by Plaintiffs' counsel. *Id.* at 363:17. Accordingly, Defendants' counsel had the opportunity to ask a full series of questions about the documents, which were limited largely because Dr. Wieder had not seen any of them.

Defendants nonetheless argue that Plaintiffs obstructed their deposition by raising issues with (1) Defendants' attempt to use the internet for a demonstration as a form of authentication and (2) Defendants' attempt to authenticate materials that would easily be authenticated through counsel. The Federal Rules of Civil Procedure clearly allow counsel to limit a deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). Plaintiffs' counsel had concerns about whether Defendants' counsel's demonstration on a computer would accurately represent the materials posted on Kaiser's website and, rather than wasting the Court's time with a motion and suspended deposition, proposed a procedure that would enable

---

[6] The Permanente Medical Group for which Dr. Wieder's partnership provides contractual services is separate and distinct from the Plaintiffs in this action. *See Reigel v. Kaiser Foundation Health Plan of North Carolina, Inc.*, 859 F.Supp. 963, 964 (E.D.N.C. 1994); Pls.' Opp. to Defs.' Mot. To Preclude Plaintiffs from Presenting Live Testimony of Permanente Physicians (also filed today).

9

Defendants to ask any and all questions they wanted, the parties to agree as to authenticity, and

not waste the witness's time that could be used treating patients. *See* Ex. B, Wieder Dep. 337:24

– 339:4.  Plaintiffs' counsel even agreed to stipulate to the authenticity of documents from

Kaiser's website, once those materials had been verified. *Id.* at 339:1-4.  Defendants proceeded

to ask any and all questions they wanted regarding Healthwise materials printed from the

website.  As a result, no additional testimony is necessary.[7]

### 3. Continuing the Deposition Would be Unduly Burdensome and Would Raise Issues That Defendants Have Had Ample Opportunity to Address

Continuing the deposition of Dr. Wieder would violate the precepts of Rule 26(b)(2)(C)

of the Federal Rules of Civil Procedure.  Rule 26(b)(2)(C) provides that:

> On motion or its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i)       the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii)      the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii)     the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties, resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).  Defendants' proposed continuation of Dr. Wieder's deposition

would violate all three prongs of this test.  First, the discovery sought is both cumulative and far

more burdensome than the alternatives.  The discovery sought – two additional hours of

deposing Dr. Wieder – would be cumulative and duplicative because Defendants already asked

---

[7] To the extent that the Court is inclined to grant Defendants additional time to depose Dr. Wieder because of this issue, Plaintiffs ask the Court to limit the deposition to questions regarding materials available on Kaiser's website. Defendants' motion does not limit how it would use its two hours of new testimony, yet again revealing their attempt to circumvent the discovery rules. Def.'s Mem. at 15.

Dr. Wieder extensive questions about the Healthwise materials. *See* Ex. B, Wieder Dep. 345:4 –
363:16. The only limitations on Defendants' testimony regarded the authenticity of the
materials, and Plaintiffs' counsel has already stated that "[i]f it's on the web, I'll stipulate with
you, but I don't know whether it is, and I'm not doing stipulations today." *Id.* at 339:1-4.
Stipulating as to the documents' authenticity would obviate the need to depose Dr. Wieder
further.

Second, the Defendants have had ample opportunity to raise questions about the
Healthwise materials. Defendants have known about the Healthwise materials since at least July
12-13, 2007, when they deposed Albert Carver, Kaiser's 30(b)(6) witness, and asked him if he
would "feel compelled to take some action if [he] learned that Permanente Group's public
website was advising visitors that, 'People who took Gabapentin for chronic pain said they felt
one-third less pain while they were taking Gabapentin?" Ex. A, Carver Dep. 447:16-21. This
question shows that Defendants were aware (1) that Kaiser's website makes materials available
to the public on its website and (2) that materials regarding Neurontin use were included on the
website. Fact discovery closed on October 15, 2007, and was extended for specific topics
through November 15, 2007. *See* Docket # 801, 890. Defendants had ample opportunity – while
discovery was still ongoing – to seek discovery on the process by which Healthwise materials
appear on Kaiser's website and who at Kaiser had responsibility for maintaining the website.
Instead, Defendants seek to re-depose a witness who has never before seen the Healthwise
materials less than one month before trial.

Third, the expense of the proposed continuation of the deposition would far outweigh the
likely benefit. The proposed continuation would yield no likely benefits, as Dr. Wieder has
never seen the Healthwise materials and he has no specific knowledge of the materials. Ex. B,

Wieder Dep. 340:23 – 341:2; 341:13-19.  On the other hand, the expense of having attorneys in

New York and Boston depose a witness from California, who has a vibrant medical practice that

does not allow him to leave for extended periods of time, would impose a significant burden and

expense on Dr. Wieder and the parties.  As a result, a continued deposition would not be

appropriate.

## B.     Defendants Should Not Receive Additional Discovery

Pfizer seeks Kaiser to identify all of Kaiser's websites and to give it passwords to access

the portions of the website where patients schedule appointments and communicate with their

personal physician, although Pfizer knew about these materials over two and one half years ago,

discovery closed over two years ago, and trial is one month away.

More specifically, Defendants seek (1) the identification of the URLs of all websites

through which Kaiser provides information to its members, (2) a password to access additional

portions of the websites, and (3) access to information made available to its physicians.  Mem. at

15-16.  Defendants knew about these websites at least as early as July 12, 2007, when it deposed

Kaiser's 30(b)(6) witness, Albert Carver.  Defendants' counsel asked in-depth questions about

Kaiser's websites available to the public as well as its internal websites.  Counsel's questions

reflected knowledge that Kaiser maintains internal websites: "Q. In addition to the public

website, does Kaiser maintain internal websites?  A. Yes, we do."  Ex. A, Carver Dep. 44:4-6.

Counsel also asked "were documents that are either currently visible on Kaiser's website or

otherwise were previously posted to that website during the relevant period searched in response

for – to the defendant's requests for productions of documents?" and Carver responded "I believe

they were."  Id. at 44:7-14.  Defense counsel also asked, in reference to materials printed from

Kaiser's website, "[i]f I were to represent to you that my colleague seated here had printed this

document from the worldwide web from this address in the upper right-hand corner, would you

have reason to doubt that?" and Carver responded "No, I wouldn't." *Id.* at 441:15-20. These questions show that Defendants knew that Kaiser posted materials on its website, both available to the public and internally before the close of discovery in this case. Rather than seek responses to interrogatories while discovery was open, Defendants seek to discover new information on the eve of trial. As such, their request for "additional relief" of new discovery should be denied.

### C.      No Court Order is Necessary to Preserve Documents

Pfizer also seeks a court order "to preserve the content on [Kaiser's] websites as it existed on January 11, 2010, before making any alterations." Mem. at 16. No Court order is necessary for Kaiser to preserve documents in accordance with its legal obligations. Kaiser raises two further points regarding the preservation of documents.

First, Healthwise has final editorial control over the Healthwise materials, so the process for altering the contents of the materials is more complicated than Defendants represent. *See* Ex. D, Decl. of Donald W. Kemper at ¶ 4 (stating that Healthwise has final editorial control over materials it generates).

Second, to the extent that the Court deems an order necessary to "preserve the content on its websites," it should be clear that Kaiser is only obligated to maintain a printed copy of any portions of the website that are altered. Requiring Plaintiffs not to alter the website at all would potentially expose viewers to misrepresentations about Neurontin that could harm the public and line Pfizer's pockets with further ill-gotten gains.

### D.      The Court Should Not Strike Dr. Wieder's Declaration

Pfizer seeks to have "stricken" a truthful declaration even though the declarant's extensive deposition testimony confirms the statements made in his declaration. Defendants argue that Dr. Wieder's declaration differs from his testimony in two ways: by suggesting that he played an "important role in the P&T committee" when he did not and by stating that the P&T

13

Committee removed all formulary restrictions and guidelines when they in fact maintained

guidelines on using the drug. Mem. at 16, 19. Both of these arguments drastically misstate the

facts.

First, Dr. Wieder accurately portrayed his level of input to the P&T Committee. Wieder

stated in his declaration that:

> In or around September 1997, as a practicing pain specialist, I
> recommended expansion of the formulary restrictions to include
> prescribing by pain clinic physicians for the treatment of reflex
> sympathetic dystrophy. I am informed and believe that the P&T
> Committee adopted this recommendation. In or around September 1999, I
> recommended removal of all formulary restrictions and guidelines for
> Neurontin. I am informed and believed that in or around September 1999,
> the P&T Committee adopted this recommendation."

Wieder Decl. at ¶ 8. Dr. Wieder's testimony reveals his declaration accurately portrayed his role

in recommending broader use of Neurontin. For example, in 1997, Dr. Wieder received a

general request for input and he provided a recommendation by e-mail. Dr. Wieder testified that

while the Committee would likely not expand the formulary based only on his recommendation,

he was the only specialist "who was fellowship trained at the time, so [he] thinks [his]

recommendation would have had some weight." Ex. B, Wieder Dep. 274:18-25. This language

is completely consistent with his statement that "as a practicing pain specialist," he

recommended broadening the availability of Neurontin on the formulary. The September 1999

expansion involved the same process. *Id.* at 285:13-24. Again, this language is completely

consistent with Dr. Wieder's declaration.

Second, Defendants are simply playing word games with Dr. Wieder's statement on

formulary guidelines. Dr. Wieder clearly indicated that when he stated in his declaration that he

recommended removal of formulary restrictions and guidelines, he was referring to the removal

of guidelines on which doctors may prescribe Neurontin, not of general guidelines for how to use

medications. *See* Ex. B, Wieder Dep. 412:25 – 413:17 ("[M]y understanding when I signed it was that there are certain guidelines for formulary restrictions. It was the guidelines related to formulary restrictions, not clinical guidelines about how to use medications . . . That was my reading."). Quite simply, Dr. Wieder's testimony is consistent with his declaration.

Moreover, Dr. Wieder's testimony on the portion of his declaration on which the Court relied in ruling on summary judgment is also consistent. The Court relied in part upon Dr. Wieder's statement that he would not have made the same recommendation had he known the truth about Neurontin. *See* Mem. & Order [Dkt. # 2309] at 7-8. Dr. Wieder repeated that testimony at his deposition. When asked whether he would have made the same recommendations, Dr. Wieder said "I would absolutely not have had I known what I know now." Ex. B, Wieder Dep. 522:12-25. This testimony further shows the consistency of Dr. Wieder's declaration and testimony.

### E. Healthwise Episode Demonstrates the Breadth of Pfizer's Fraud

Pfizer's rant about the Healthwise materials is the pinnacle of hypocrisy – Pfizer condones its own use of misleading statements but criticizes the Healthwise materials' repetition of those same statements.

Plaintiffs maintain a website that provides information to patients on a wide variety of health care related topics. The website contains articles from several sources, including Healthwise, HealthMedia, EatingWell, and First DataBank. *See* Ex. C, Decl. of David McWaters at ¶ 3. The majority of health care information provided on Kaiser's website is not written by Kaiser. *Id.* Kaiser posts these materials alongside disclaimers, which state that "[t]he information provided on this Web site is not a substitute for the advice of your personal physician or other qualified health care professional . . . Never disregard professional medical advice or delay in seeking it because of something you have read on this Web site." *Id.* at ¶ 6.

When pharmaceutical companies inappropriately report information, sometimes misleading information appears in the articles undetected. *Id.* at ¶ 8. Healthwise is one the leading medical information providers whose materials are posted on Kaiser's website. *Id.* at ¶ 3. Healthwise, a wholly independent entity from Kaiser, licenses certain materials to Kaiser, along with its other clients, including the top ten U.S. health plans, the major disease management companies, the most visited health portals, and hundreds of hospitals and physician groups. *See* Ex. D, Decl. of Donald W. Kemper at ¶¶ 2, 5. Healthwise maintains final editorial control over the materials it generates. *Id.* at ¶4. These materials included articles on the off-label use of Neurontin. *See* Ex. C, Decl. of David McWaters at ¶ 4.

Healthwise and Kaiser have both represented that they cannot always detect misinformation that was inappropriately reported by pharmaceutical companies. *See* Ex. C, Decl. of David McWaters at ¶ 8; Ex. D, Decl. of Donald W. Kemper at ¶ 9. Pfizer's spreading of misinformation about Neurontin appears to have resulted in the misstatements in the Healthwise materials. Pfizer, who has denied the misleading nature of these materials throughout this litigation, now seeks to gain further testimony regarding the misleading nature of the same statements. Pfizer's argument is hypocritical and the Court should see through their rhetoric.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Emergency Motion for Continued Deposition of Nicolas Wieder and Additional Relief should be DENIED.

Dated: January 22, 2010                    Respectfully submitted,


                                    By:      */s/ Linda P. Nussbaum*
                                            Linda P. Nussbaum

KAPLAN FOX & KILSHEIMER LLP
Linda P. Nussbaum, Esq.
850 Third Avenue, 14th Floor
New York, New York 10022

*Attorneys for Plaintiffs Kaiser Foundation
Health Plan, Inc. and Kaiser Foundation
Hospitals*

*Of Counsel*

Thomas Greene
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 22, 2010.

/s/ Elana Katcher
Elana Katcher

18