UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin<br><br>**LEAVE TO FILE GRANTED ON JANUARY 29, 2010** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' EMERGENCY MOTION FOR CONTINUED
DEPOSITION OF NICHOLAS WIEDER AND ADDITIONAL RELIEF**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum of law in support of their Emergency Motion for Continued Deposition of Nicholas Wieder and Additional Relief.

**PRELIMINARY STATEMENT**

Pfizer brought the instant motion so that it could complete the deposition of Dr. Nicolas Wieder after he was repeatedly instructed not to answer several questions during his deposition on January 12, 2010. Kaiser does not claim that the questions called for privileged information or for confidential information for which the protective order would provide insufficient protection.[1] Kaiser asserts only that, in the opinion of its attorneys, the questions were a waste of

---

[1] Simultaneous with its motion for relief, Pfizer filed a motion to unseal. Pfizer filed its motion for relief partially under seal in order to comply with the Protective Order in this action. However, a review of this motion and Kaiser's response makes clear that neither this motion nor Dr. Wieder's testimony concerns any proprietary, confidential information of Kaiser. And Kaiser has not identified any information that requires that the material filed with Pfizer's motion be sealed.

Kaiser has compounded its abuse of the Protective Order by filing its response and supporting papers under seal. Pfizer has separately filed its Opposition to Kaiser's Motion to File Documents Under Seal. As discussed therein, knowing that Pfizer objected to the confidentiality of this material, Kaiser has not identified any legitimate trade secret or proprietary information that requires confidentiality. The Protective Order is intended to protect legitimate proprietary information. It is not intended to shield Kaiser from public scrutiny of the inconsistencies taken by it in this litigation and in the ordinary course of its business. Kaiser's abuse of the Protective Order is especially outrageous in light of its request that

*(cont'd)*

time. But the Federal Rules and the law in this district could not be more clear. Absent the disclosure of privilege information or some other immediate harm that would result from answering a question, attorneys are not permitted to instruct witnesses not to answer. Unable to offer any legitimate justification for the actions of its counsel, Kaiser instead attempts to deflect attention from its blatant violation of the Federal Rules. Kaiser's tactics should not be countenanced.

Nor can Kaiser's feeble suggestion that it is not responsible for the content of its website be taken seriously. As noted in Pfizer's opening memorandum, Kaiser's website contains multiple references endorsing the use of Neurontin or gabapentin for off-label uses, including treatment of chronic, neuropathic pain. Such statements are irreconcilable with the positions taken by Kaiser in this lawsuit that Neurontin lacks any efficacy for such uses.[2] It does not matter whether such articles were created by Kaiser or a third-party vendor. **THEY ARE ON KAISER'S WEBSITE.** No one forced Kaiser to put them there. And Kaiser's claim that in 2010 – almost eight years after Kaiser's DUAT initiative was undertaken in response to news reports about Neurontin and almost four years after the First Amended Coordinated Complaint [31] was filed in this action – it is incapable of policing the accuracy of statements regarding Neurontin on its own website is absurd.

## ARGUMENT

### I. Pfizer Was Denied A Full and Fair Opportunity To Depose Dr. Wieder

Federal Rule of Civil Procedure 30 provides that objections shall be noted on the record, but that the examination still proceeds. Objections must be stated in a nonargumentative and

---

*(cont'd from previous page)*
Pfizer be sanctioned for bringing a motion made necessary by its Counsel's improper objections.

[2] Pfizer contends that the statements on Kaiser's website are inconsistent with the positions taken by Kaiser in this litigation, not that they are misleading. It was a Kaiser Permanente physician – not Pfizer – that accused Kaiser of misleading its members. For Kaiser to accuse Pfizer of hypocrisy only demonstrates Kaiser's own duplicity. The American Heritage Dictionary (on-line edition) defines hypocrisy as "[t]he practice of professing beliefs, feelings, or virtues that one does not hold or possess; falseness." Kaiser's advocacy of a different litigation position than it takes in the ordinary course of its business fits the definition, not Pfizer's conduct in pointing out the inconsistency.

nonsuggestive manner. Attorneys can instruct a witness not to answer "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). Kaiser has not identified any privilege or court-ordered limitation on the deposition that supports the conduct of its counsel in instructing Dr. Wieder not to answer. Nor did it make any motion under Rule 30(d)(3). Plaintiffs' argument that an attorney is authorized by Rule 30(d)(3)(A) to engage in self-help and instruct a witness not to answer anytime the attorney believes the questions are unreasonable has been flatly rejected by the courts. *See Paparelli v. Prudential Ins. Co. of Am.*, 108 F.R.D. 727, 731 (D. Mass. 1985); *Calzaturficio S.C.A.R.P.A. S.P.A., v. Fabiano Shoe Co.*, 201 F.R.D. 33, 40 (D. Mass. 2001). Unable to justify their patent rule violation, Kaiser's remaining arguments are both unavailing.

*First*, this is not just about authenticity and any belated attempt by Plaintiff to stipulate as to authenticity (which it did not do at the time and to date has not offered any unequivocal offer to stipulate) does not cure the harm suffered by Pfizer. Pfizer's counsel sought to ask certain foundational questions, but those would have been followed by additional questioning once the foundation was laid. That Pfizer's counsel never even got past the foundational questions is due to Kaiser's obstructionist tactics.

*Second*, the asserted lack of knowledge of Dr. Wieder about the website does not excuse counsel's improper objections. One of the reasons why Pfizer's counsel wanted to question the witness with an operating internet was to explore those parts of the website that the witness was familiar with, such as the physician portal that Dr. Wieder referred to. But Pfizer's counsel was prevented from exploring the scope of Dr. Wieder's knowledge about Kaiser's website. Further, Kaiser's attempt to differentiate itself from Permanente physicians on the grounds that they are not technically its employees must be rejected. The website at issue is a consolidated website for both the Health Plan and the Permanente Medical Groups. Patients are, for example, able to select physicians from the website and to contact their physicians via the website. Dr. Wieder testified that he was familiar with the website and encouraged patients to use it. (Wieder Dep. at 305:24-306:5, Cheffo Supp. Decl. Exh. H.) To access the website, Pfizer's counsel asked how

3

Dr. Wieder would do so and typed in the URL (kp.org) provided by Dr. Wieder. (*Id.* at 336:15-337:9, Cheffo Decl. Exh. B.) Finally, Pfizer sought to question Dr. Wieder regarding the ***content*** of the website, something his testimony made clear he was perfectly capable of addressing (Cheffo Decl. Exh. B), not the administration of the website.

*Third*, Kaiser mischaracterizes Pfizer's motion as an attempt to obtain new discovery. Pfizer is seeking simply to complete discovery that this Court has already held Pfizer is entitled to obtain. This Court's Procedural Order of November 12, 2009 [2172], unequivocally allowed Pfizer to depose any witness who had been identified for the first time in opposition to summary judgment. Pursuant to such order, Dr. Wieder's deposition was noticed for December 18, 2009, and then delayed for three weeks as Plaintiffs first refused to produce the witness based upon an untenable reading of this Court's order and then asked Defendants to consent to a postponement while Dr. Wieder took a vacation (during which he read Dr. Abramson's 122-page report in order to prepare for his deposition).

The questioning sought by Pfizer was directly relevant to the declaration given by Dr. Wieder. Kaiser offered Dr. Wieder's declaration to support its causation theory, which is basically "Had we known in 1995 through 2002 what we learned in 2002, we would have changed our behavior." Kaiser's continued recommendation of gabapentin as an effective treatment for pain and other uses on its website gives the lie to this argument. Having relied upon Dr. Wieder to support causation, Kaiser cannot prevent Pfizer from exposing the inconsistencies in Kaiser's arguments through Dr. Wieder.

Kaiser's suggestion that the questions concerned matters covered in prior depositions should be similarly rejected. Initially, Pfizer's questions were directed at what is on Kaiser's website today, in 2010, not in 2005 or in 2007. Kaiser notes that in 2007, Dr. Carver was asked:

> Would you personally feel compelled to take some action if you learned that Permanente Group's public website was advising visitors that "People who took Gapapentin for chronic pain said they felt one-third less pain while they were taking Gabapentin?

(Carver Dep. at 447:16-21, Exh. A to Pl. Opp.) That Kaiser's website continues to endorse

4

Neurontin for off-label uses over two years after Mr. Carver was asked this question is even more powerful evidence that Kaiser's allegations in this lawsuit cannot be reconciled with the actions taken by Kaiser in the ordinary course of its business.

It is, frankly, incredible that Kaiser would select this particular piece of testimony to support its arguments, in light of the fact that Dr. Carver was instructed not to answer by a two-page speaking objection. What followed the question above was not an answer, but the following:

> [Kaiser's counsel]: Objection. I'm going to ask the witness not to answer that.
>
> [Pfizer's counsel]: You can answer.
>
> [Kaiser's counsel]: No, first of all, it's an unintelligible question. Second of all, it's a question that calls for the witness' personal opinion, which is totally irrelevant in the action. Third, we have not been able to identify whose website this is. Fourth, we have not been able to identify this is a small piece of something, what this is, who it's available to, what its purpose is. I think that your question is highly misleading and I will not have the witness answer it. I don't think it's capable of being answered and it would simply be speculation and hypothetical.
>
> [Pfizer's counsel]: Are you directing the witness not to answer the question?
>
> [Kaiser's counsel]: I think that there's not a question that's capable of being answered without speculation, a hypothetical question and having to do with his personal feelings about something which is totally irrelevant in this action.
>
> [Pfizer's counsel]: Do you understand that questions relating to the witness' personal feelings are a basis for counsel directing the witness not to answer?
>
> [Kaiser's counsel]: I didn't say that. You want to ask a question that's capable of being answered, we will see if that's possible. You want to identify this document and not give a misleading few pages of something that there's no testimony as to where it comes from or who a contained the content or anything else, then I'm happy to address appropriate questions. The witness has been answering questions now for two full days.
>
> [Pfizer's counsel]: To be clear, you're not asserting the attorney-client privilege over the response? . . . Attorney-client privilege is not in any way implicated by my question, is that correct?

5

> [Kaiser's counsel]: I don't even understand your question, so how can I know whether or not it implicates attorney-client privilege? I have no idea if it's written by attorneys or supervised by attorneys or anything else. The present question is not capable of being answered.

(*Id.* at 447:22-450:2.) That Kaiser's counsel engaged in such improper behavior in 2007 is hardly reason to permit it again.

*Fourth*, Kaiser's argument regarding the length of the deposition is a complete red herring. In its opening memorandum, Pfizer cited only a few examples of the constant, improper objections that impeded its counsel's ability to conduct an efficient deposition of Dr. Wieder in the time permitted. These examples were in addition to the disruption caused by counsel's improper instructions not to answer and the interference with Pfizer's counsel's orderly questioning of the witness caused by such objections. Space does not permit Pfizer to reproduce all of counsel's improper objections here. Attached to the declaration of Supplemental Declaration of Mark S. Cheffo as Exhibit I are excerpts from the deposition, highlighted to show where improper speaking objections were made and the deposition was interrupted by counsel.

*Finally*, Kaiser cannot invoke the inconvenience to its witness as grounds for denying the motion when the need to resume the deposition is attributed solely to the improper objections by Kaiser's counsel.

## II. Kaiser's Attempt To Disavow Responsibility For The Content Of Its Website Constitutes A Frank Admission That Such Statements Are Irreconcilable With Its Positions In This Lawsuit

In its opening memorandum, Pfizer explained the significance of the questions that it sought to ask Dr. Wieder but was precluded from doing so. As discussed above, counsel for Pfizer sought to explore the inconsistencies between Kaiser's public statements to its members and the positions taken by Kaiser in this litigation. That Dr. Wieder repeatedly characterized Kaiser's website as "misleading" demonstrates the extent of the contradiction.

Kaiser's attempt to blame Pfizer for its website content is an admission that it is impossible to reconcile Kaiser's public statements about the efficacy of Neurontin for off-label uses with its lawsuit allegations. If there was an explanation for how both can be truthful, Kaiser

6

certainly would have offered it.[3] To be sure, Pfizer is not asserting that the statements on Kaiser's website are misleading – that accusation (one that Kaiser appears to agree with) came from a Kaiser Permanente physician. It is Pfizer's position that the allegations of inefficacy made by Kaiser in *this lawsuit* are false, as demonstrated by its contradictory public admissions.

And Kaiser's suggestion that it is powerless to control the content on its website is absurd on its face.[4] First, the health articles on Kaiser's website were not inserted there surreptitiously through Healthwise adware. Kaiser actively contracted with Healthwise to provide it with content for its website. Second, these are not links to a wholly separate website. Instead, Kaiser's members are directed to articles on Kaiser's website with the Kaiser Permanente logo prominently displayed at the top of each page. As Dr. Wieder testified: "[N]o one would be reasonably – would  reasonably think that it wasn't a Kaiser document." (Wieder Dep. at 351:20-21, Cheffo Decl. Exh. B.) Kaiser's suggestion that it has no responsibility for statements regarding Neurontin's efficacy that were made on Kaiser's behalf, on Kaiser's own website, to Kaiser's members, and with Kaiser's full knowledge, is ironic to say the least.

And, as noted in Pfizer's opening brief, Kaiser openly touted its collaboration with Healthwise in 1999 and indicated that its physicians would be involved in actively reviewing the material provided by Healthwise. (Cheffo Decl. Exh. F.) Likewise, according to a 2004 Kaiser press release, Kaiser "showcase[d] [its] online health programs" in order to encourage enrollment. (Cheffo Supp. Decl. Exh. J.) Promoting its website, Kaiser states that it features "online drug and medical encyclopedias *reviewed and approved by Kaiser Permanente*

---

[3] And the fact that the articles are accompanied by a disclaimer telling people to consult their physician does not make Kaiser's statements any less inconsistent with its allegations in this lawsuit. Moreover, as pointed out in Pfizer's opening memorandum, imbedded within the disclaimer in each article is a "How this information was developed" link which takes readers to an article telling Kaiser members to trust information from Healthwise. (Cheffo Decl. Exh. E.)

[4] Kaiser submits the declarations of Donald W. Kemper, Chief Executive Officer of Healthwise, and David S. McWaters, Practice Leader for Quality & Compliance in Kaiser Permanente's Internet Service Group to support its arguments. The statements made by Mr. Kemper and Mr. McWaters cannot be taken at face value. Pfizer should be permitted to depose them and cross-examine them on their assertions.

*physicians.*" (*Id.*, emphasis added.) Another Kaiser press release tells people to "[c]lick to kaiserpermanente.org for physician-approved health information." (Cheffo Supp. Decl. Exh. K.) "Kaiser invite[d] everyone – members and nonmembers alike – to access trustworthy, up-to-date, physician-approved health information by visiting [its] redesigned Web site . . . ." (*Id.*) And Kaiser represents on its website that the material provided by Healthwise is both accurate and current. (Cheffo Decl. Exh. E.)

Kaiser's claim that it is incapable of detecting statements about Neurontin efficacy on its website that it alleges are false almost eight years after it implemented its DUAT initiative in response to media reports and four years after the First Amended Coordinated Complaint class action complaint was filed in this action simply cannot be credited. Kaiser knows what it is alleging in this lawsuit and is perfectly capable of reviewing its website for inconsistencies. Indeed, as Kaiser points out, Pfizer's counsel attempted to ask Dr. Carver two years ago what Kaiser would do about any such inconsistencies, a question Dr. Carver was prevented from answering. In fact, each of the Health Encyclopedia articles attached to Pfizer's opening memorandum was updated after Dr. Carver's deposition. (Cheffo Decl. Exh. C.) Thus, the articles were actively reviewed and the statements about Neurontin's efficacy included in more recent iterations. The articles remain on Kaiser's website today. Notwithstanding the fact that Dr. Wieder testified that he still has patients on Neurontin for pain, Kaiser does not in its response indicate that it has undertaken any action to communicate with physicians, take down or amend the articles on its website or implement any other action to correct what it describes as "misstatements." (Pl. Mem. at 16.).[5]

### III.   Dr. Wieder's Declaration Should Be Stricken

Kaiser's attempt to reconcile Dr. Wieder's deposition testimony with his prior declaration is as incoherent as Dr. Wieder's explanations. First, the clear implication of Dr. Wieder's

---

[5] Neither Mr. Kemper nor Mr. McWaters stated in their declaration that they agreed with Dr. Wieder's characterization of the articles at issue as "misleading." Nor do the identify any corrective action or review they are taking.

8

declaration was that he played a pivotal role in formulary decisions made by the P&T Committee. He stated that he recommended formulary expansion in 1997 and that the P&T Committee adopted his recommendation. Similarly, he stated that he recommended removal of restrictions in 1997 and that the P&T Committee adopted his recommendation. (Cheffo Decl. Exh. A.) His deposition testimony, which was quoted at length in Pfizer's opening memorandum, makes clear that Dr. Wieder's role was tangential at best. He never presented to the P&T Committee and had no knowledge of their decision-making process. All he did was respond to e-mail inquiries directed to several physicians. (Def. Mem. at 17-19.)

Second, Dr. Wieder stated unequivocally in his deposition that "[i]n or a around September 1999, I recommended removal of all formulary restrictions and guidelines for Neurontin." (Wieder Decl. ¶ 8.) During his deposition, confronted with conflicting documents showing that the P&T Committee did not remove guidelines, but added them, Dr. Wieder sought to rationalize this sworn statement, as Kaiser does now. Kaiser states: "Dr. Wieder clearly indicated that when he stated in his declaration that he recommended removal of formulary restrictions and guidelines, he was referring to the removal of guidelines on which doctors may prescribe Neurontin, not of general guidelines for how to use medications." (Pl. Opp. at 14-15.) In other words, Kaiser argues that Dr. Wieder intended the word "guidelines" to mean the exact same thing as "restrictions." This explanation makes no sense. It would not only render the word "guidelines" redundant, it is inconsistent with the way Kaiser uses the word "guidelines," which refers to its recommendations for how to use medication. (*See* Chiefs of Neurology Meeting, June 17, 1999. Exh. L to Cheffo Supp. Decl)

Moreover, this explanation contradicts the first explanation that Dr. Wieder offered, where he attempted to insert an imaginary comma in his declaration, in order to suggest that he recommended *adding* guidelines. (Wieder Decl. at 409:21-411:16, Cheffo Decl. Exh. B.) It is Kaiser and Dr. Wieder who are playing word games, not Pfizer.

### IV. Pfizer Properly Met And Conferred Prior To Filing Its Motion

Kaiser also argues that "Defendants rushed the "meet and confer" process. But the "meet

9

and confer" process began at the deposition, when Pfizer's counsel repeatedly advised Kaiser's counsel that he believed counsel's instructions not to answer were improper. The Friday following the deposition, Pfizer's counsel had a detailed conference by phone with Kaiser's counsel, during which he laid out the grounds for this motion and the relief that would be sought. Kaiser's counsel asked until 5:00 p.m. the following Monday to reply. Pfizer's counsel agreed to a noon deadline. Over the weekend, Pfizer's counsel continued to confer with Kaiser's counsel by phone and email. Pfizer agreed that it would not file this motion before 5:00 p.m. Monday, as originally requested. Three days was more than enough for Kaiser to respond to Pfizer's counsel. Kaiser should not be heard to complain about the fact that discussions took place over a holiday weekend. The urgency of this motion was created by the trial date sought by Plaintiffs and their dilatory tactics in making Dr. Wieder available for deposition.

At no time on Friday January 15, 2010 or the following weekend did Kaiser's counsel indicate that there was room for agreement on these motions. Likewise, nothing in Kaiser's response suggests that this was a matter on which agreement was likely. The purpose of the "meet and confer" requirement is to avoid the Court having to hear motions that could be resolved by negotiation. It is not meant to enable one side to delay its opponent from timely seeking relief. Here, Kaiser attempted to use the "meet and confer" requirement as a stalling tactic and improperly invoked the specter of sanctions (reiterated in its opposition) solely for intimidation.

## CONCLUSION

For all of the forgoing reasons, Pfizer requests that this Court issue an order granting the relief sought in Pfizer's motion. Pfizer further requests that Kaiser's request for sanctions be denied.


Dated: January 29, 2010                    Respectfully submitted,

                                                   SKADDEN, ARPS, SLATE, MEAGHER
                                                     & FLOM LLP

                                                  By:    /s/ Mark S. Cheffo
                                                           Mark S. Cheffo

                                                 Four Times Square
                                                 New York, NY 10036
                                                 Tel: (212) 735-3000

                                               SKADDEN, ARPS, SLATE, MEAGHER
                                                 & FLOM LLP

                                               By:    /s/ Raoul D. Kennedy
                                                           Raoul D. Kennedy

                                               Four Embarcadero Center
                                               San Francisco CA 94111
                                               Tel: (415) 984-6400

                                                       -and-

                                               WHEELER TRIGG O'DONNELL LLP

                                               By:    /s/ James E. Hooper
                                                           James E. Hooper

                                               1801 California Street
                                               Suite 3600
                                               Denver, CO 80202-2617
                                               Tel: (303) 244-1800

                                                       -and-

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
     David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on January 29, 2010.

/s/ David B. Chaffin
David B. Chaffin