# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | )<br>)MDL Docket No. 1629<br>)<br>)Judge Patti B. Saris<br>)Magistrate Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO:<br><br>IRENE BARLOW<br>1:05CV175SS Western District of Texas | )<br>)<br>)<br>)Civil Action No. 04-10981<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANTS PFIZER, INC., AND WARNER LAMBERT COMPANY LLC,  PARKE-DAVIS, A Division of Warner Lambert Company, and WARNER LAMBERT COMPANY

This motion is brought by Irene Barlow.  Defendants were served Interrogatories and Requests for Production on October 28, 2009, and received two extensions, but have produced no documents or information, even such basic information as the names of the sales representatives who had contact with Mrs. Barlow's prescribing doctors.

Mrs. Barlow is a middle-age homemaker who has suffered from bipolar disorder for some years.  She was put on Neurontin in 1999-2000, during the Warner-Lambert era, by her psychiatrist and was first given Neurontin out of samples that had been left at her psychiatrist's office.  She continued on Neurontin for over a year and attempted suicide twice, the second time with a gunshot to her own chest.

The Defendants know all this.  She has provided complete discovery to them and furnished all her medical records, supplementing them as recently as January, 2010.  The

1

Defendants have given her absolutely nothing with respect to her case-specific "core" discovery in this MDL. Mrs. Barlow simply seeks from Defendants the same "core" discovery that was provided to the other Plaintiffs over which this Court governed discovery; nothing more, nothing less.

## I.     Discovery Sought by This Motion

Mrs. Barlow seeks an order compelling the defendants simply to produce to her at Defendants' expense the same discovery that has been produced by Defendants at its expense in the other MDL and New York product liability cases. A short-hand description of what is sought is:

a.   Sales representative discovery, including their identity, last known contact information and employment information, their custodial files, their call notes, the literature and communications they had with the prescribing doctors and their roles in arranging for conferences and engagements involving Neurontin.

   See Interrogatory 1 and Requests for Production 3,4,5, 6,8, 21,22, 35-44.

b.   Prescribing doctor relations, including Dear Doctor letters, communications to and from the prescribing doctors such as medical information requests, retaining and paying the doctors as opinion leaders, thought leaders, speakers, and similar programs, and inviting the doctors to programs.

   See Interrogatories 3-5, 7, 8, and Requests for Production 2,9,11,13, 21, 26-28, 34.

c.   Programs such as Continuing Medical Education (CME) and seminars in the region in which the prescribing doctors practiced, were invited, attended, or were exposed.

   See interrogatory 4, Requests for Production 10 and 32.

d.   Information regarding Mrs. Barlow herself, such as medical records that Defendants may have obtained from some source other than Mrs. Barlow and MedWatch reports of her medical condition[1].

---

[1] This request was made because Pfizer counsel, before Mrs. Barlow was removed to this MDL, used an invalid state court subpoena for a case that had been terminated by removal to this court to obtain her medical records from various medical providers without disclosing the procedure or the records to Mrs. Barlow's counsel, a grossly improper proceeding that was uncovered when Mrs. Barlow's counsel, unaware of the ploy, set out to obtain some records from some of the providers and were advised that they already had been obtained. Mrs. Barlow does not know what the Defense has; she only knows what she has sent them. This is not an instance in which continuing to give the defense the benefit of the doubt is attractive.

See Interrogatory 8 and Requests for Production 1, 14, 20, 30, 31.

These exact documents and information have been produced in other litigation. For example, in one case, *Young v. Pfizer*, Index 402186/06 (Supreme Court State of New York, Orange County)[2], Defendants produced at a minimum the following:

1. Spreadsheets of CME in New York from 1996-1998 and again from 2001-2002;

2. Excel spreadsheets of doctors who attended meetings between 1994-2000, including their names, addresses, affiliations, the event date and location and similar spreadsheets for a later period;

3. An excel spreadsheet of payments to speakers in that region between 1995-2000 and a similar spreadsheet for 2001 – 2002.

In another instance, Defendants produced custodial files of a sales representative that contained emails concerning relations with speakers, regional business plans, slideshows, training materials, and the like.

## II.    Defendant's Responses do not Comply with the Federal Rules of Civil Procedure and are Not Meritorious

Defendants sought two extensions by agreement and they were granted[3]. However, when written responses were filed, the Defendants did nothing more than file a litany of generic numbered objections. Defendants listed thirteen objections to every single interrogatory and request, including such obviously bad-faith objections as that the identity of the sales representatives was not relevant and not likely to lead to relevant discovery and that the

---

[2] The *Young* case is currently included as one case within the Coordinated New York Litigation regarding Neurontin, and which is handled by the Honorable Marcy Friedman, in the Supreme Court, State of New York.
[3] On January 21, 2010, Plaintiff agreed that if Defendant would identify the sales representatives within two weeks and would produce other documents thereafter, Plaintiff would delay this motion. The two weeks has come and gone without Defendants identifying anyone or otherwise producing any information or documents.

information was privileged and proprietary, all despite the order of this Court to depose the sales

representatives and despite the existence of confidentiality orders both in the MDL and in Mrs.

Barlow's case in the transferring court, the Western District of Texas.

Defendants also asserted three responses that make clear their intention to obstruct

discovery and contest every single stage of the litigation.  First, after incorporating all thirteen

objections to every Interrogatory and Request, Defendants referred Mrs. Barlow to huge

categories of non-specific data, such as 'the Merlin/Pfenix Database', the 'CMS/CMSS

Database,' and 'the myriad of marketing documents.[4]  Second, Defendants said that subject to all

its objections, it would either provide some documents or make them available, without actually

doing so, without saying when it would do so, and without indicating in any way that it would

produce what was sought as opposed to what Defendants might limit the production to be after

they parsed it out as narrowly as possible.  Finally, Defendants suggested that if Mrs. Barlow

would pay Pfizer and, presumably, Skadden Arps or Shook Hardy and Bacon, to go look for

documents and to reproduce them, it might someday undertake some inquiry into discovery.

Pfizer neither asserted that the discovery sought violated Rule 26 (b) (2) nor undertook any effort

to demonstrate that the proportionality of burden between a company that earned several billion

dollars pursuant to an admittedly-criminal scheme and a patient from whom it profited not only

at her financial expense but at her health should in some way be shifted to her.  See *Zubulake v*

*UBS Warburg, LLC* ,  217 FRD 309 (S.D.N.Y. 2003).

Defendants' non-responsive discovery did not end at that point, however.  For the vast

---

[4] None of Mrs. Barlow's prescribing doctors names appear anywhere in the 'myriad of marketing documents' nor in any of the several million pages of Pfizer Warner Lambert historical documents produced to the MDL Steering Committee. As to the referenced databases, Mrs. Barlow acknowledges that data from these databases have been provided to the Plaintiffs' Steering Committee . However, the data in these databases is separate and distinct from the case-specific, sales representative custodial file documents that have always been provided to other Plaintiffs in this MDL, until now. Consequently, any reference to such data by Defendants would be misleading and a sleight of hand tactic.

majority of its responses, after asserting numerically the thirteen catch-everything rote objections and one or more of the above no-position positions, in many of the responses the Defendant continued the Sudoku game by referring Mrs. Barlow in one response to a different numbered response. For example, in Response to Request for Production 11 (seeking documents by which any of Mrs. Barlow's prescribers contacted Warner-Lambert to request Neurontin information), the defendants asserted all 13 rote objections and, without producing any documents, also referred Mrs. Barlow to its responses to Requests 2,3,4, 5, 8, 13 and 14 without actually describing what portion of the objections in Requests 2,3,4,5, 8, 13, or 14 it was relying on.

In sum, Defendants' posture is to make discovery impossible, expensive, and unintelligible, regardless of this Court's scheduling orders. Defendants' responses do not in a single instance comply with Rule 34 (b)(2) that obligates a party objecting to a Request to "specify the part and permit inspection of the rest."

### III.   Authorities.

Rule 37 (a) (3) provides that a party may obtain compulsion of discovery when, as here, an opposing party fails to make a disclosure as required by Rule 26 (a) or fails to respond to interrogatories or requests for discovery. That the defense has failed to comply with its duty to disclose during the five years in which Mrs. Barlow has been seeking her day in court is evident from its own first Rule 26 disclosure in which it stated that persons with knowledge of relevant facts would include its sales representatives who had contact with Mrs. Barlow's prescribers, a statement Defendants made in April 2005 without actually naming anyone. Moreover, Pfizer knew during the very period that Mrs. Barlow was being soaked with Neurontin that the Warner-Lambert sales representatives, their files, and their conduct were the subject of actual and

potential litigation.   In a Pfizer memorandum dated December 7, 2000 (right between Mrs.

Barlow's two suicide attempts), its senior vice president in charge of regulatory affairs set out at

length how things were going to change from the Warner-Lambert practices of phony medical

inquiries and illegal detailing because of the pending civil suit (*Franklin v Warner Lambert*) and

grand jury investigation concerning off-label promotion.[5]   Instead of burying the documents

such as the sales representative files and records to make them difficult to find, the defendants

should have segregated them and put them at the top of the drawer because of the absolute

certainty that they would be called for in litigation, as they are.   An attempt to shift the burden of

looking for them and disclosing them has already been rebuffed by Judge Friedman in the

companion, coordinated New York litigation.[6]

Similar attempts to shift the cost of discovery of such records are not given favor when the

party that has custody and control of the records makes their location so difficult as to equal

spoliation of them.  See *Maggette v. BL Development Co.*, 2009 WL 4346062, (N.D. Miss.

2009):

> "A party has a duty to preserve evidence relevant to litigation when the party has
> notice of the litigation or when it should have known that the evidence may be
> relevant to future litigation. *Zubulake v. UBS Warburg, LLC,* 220 F.R.D. 212,
> 216 (S.D.N.Y.2003).   Spoliation is the "destruction or significant alteration of
> evidence, or the failure to preserve property for another's use as evidence in a
> pending or reasonably foreseeable litigation." *Alcoa,* 244 F.R.D. at 339 (quoting
> *Zubulake,* 220 F.R.D. at 216). A party's preservation obligations are as follows:
>
> FN2. See *Zubulake v. UBS Warburg, LLC,* 217 F.R.D. 309 (S.D.N.Y.2003);
> *Zubulake v. UBS Warburg, LLC,* 230 F.R.D. 290 (S.D.N.Y.2003); *Zubulake v.
> UBS Warburg, LLC,* 216 F.R.D. 280 (S.D.N.Y.2003); *Zubulake v. UBS
> Warburg, LLC,* 220 F.R.D. 212 (S.D.N.Y.2003); and *Zubulake v. UBS Warburg,*

---

[5] Memo, Feczko to PPG US Medical Personnel and Memo, Katen, Executive VP to Fecsko, attached hereto.
[6] In the coordinated New York Litigation, the Court is engaged in its own "Track One" Discovery involving 5 cases.
Defendants, as they are doing here, sought to depart from the parties' longstanding discovery protocol of Defendants
providing sales representative custodial files at their own cost. Judge Friedman rejected their conduct and held that
Pfizer should continue to bear the costs of the production.

<u>LLC,</u> 229 F.R.D. 422 (S.D.N.Y.2004). These decisions have been addressed and further developed in numerous cases since they were decided. They and their progeny make clear that a lackadaisical approach to preservation and production of electronic documents is simply unacceptable in today's litigation world.

*2 "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents. As a general rule, that litigation hold does not apply to inaccessible backup tapes (e.g., those typically maintained solely for the purpose of disaster recovery), which may continue to be recycled on the schedule set forth in the company's policy. On the other hand, if backup tapes are accessible (i.e., actively used for information retrieval), then such tapes *would* likely be subject to the litigation hold." *Id.* (quoting , Zubulake, 220 F.R.D. at 218). There is however, an exception this rule. If a party can identify where particular relevant documents are stored on backup tapes or systems, then the backup tapes or systems storing these key documents should be preserved if the information is not otherwise available. Zubulake, 220 F.R.D. at 218."

Mrs. Barlow does not know, of course, what steps Pfizer took to put a litigation hold on the Warner-Lambert sales representative documents. All she knows is that Pfizer wanted Warner-Lambert badly enough to buy the whole company and that, by 2003, Pfizer had profited immensely from sales of Neurontin taken over from Warner-Lambert[7]. There is nothing in that to bring to mind a good reason to shift to her the cost of doing what the law requires any litigant to do, much less one that profits so well from crime as is the case here.

## IV.   Conclusion

Mrs. Barlow seeks only the core discovery she described above and in the named Interrogatories and Requests for Production. (In conference she specifically agreed, and restates here, that she does not at this time seek any management-level records as such, nor advertising, net worth, or expert witness material, and she abates the Interrogatories and Requests to the extent that they seek such items now).

---

[7] Memo, Marino to Neurontin team, April 1, 2003, attached. Sales of Neurontin in 2000 were expected to be around $1Billion. Pfizer was pleased to learn that by 2003 sales were expected to reach $10 Billion after 2000. "Pfizer's 2.2mm shareholders should be grateful..."

It is impossible to obtain such discovery except by Court order and impossible to comply with Magistrate Judge Sorokin's scheduling orders and discovery directives without such discovery.  Accordingly, Mrs. Barlow prays the Court enter its order compelling discovery as set out above.

Respectfully submitted,

LAW OFFICES OF JACK W LONDON
3701 Bee Cave Rd., Suite 200
Austin, TX 78746
512-478-5858 (telephone)
512-479-5934 (facsimile)

By: _____
     Jack W. London
     State Bar No. 12512500

WRIGHT & GREENHILL, P.C.
221 West 6th Street, Suite 1800
Austin, TX 78701
512-476-4600 (telephone)
512-476-5382 (facisimile)

By: _____ with Permission
     Archie Carl Pierce
     State Bar No. 15991500

ATTORNEYS FOR PLAINTIFF
IRENE BARLOW

CERTIFICATE OF GOOD FAITH

I hereby certify that I have conferred in good faith with counsel for Defendants concerning the issues presented in this motion and the parties have been unable to resolve the issues without the intervention of this Court.

Dated:  February 8, 2010

By: _____
      Jack W. London

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served as required by Case Management Order Number 3 on the 8th day of February, 2010.

By: _____
      Jack W. London