UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' EMERGENCY MOTION TO COMPEL
DEPOSITIONS OF DAVID S. MCWATERS AND DONALD W. KEMPER**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum of law in support of their Emergency Motion to Compel Deposition of David S. McWaters and Donald W. Kemper.

**PRELIMINARY STATEMENT**

Kaiser operates a website under its own name ("www.kp.org" or "www.kaiserpermanente.org") that publishes medical information, which directly contradicts Kaiser's position in this litigation about Neurontin's efficacy. Specifically, this website provides information to its members about various drugs and medical conditions. The website contains articles written by Healthwise, a not-for-profit organization focused solely on "developing consumer health content to help people make health decisions." (1/18/2010 Cheffo Decl. Exh. G [2371-7].) In 1999, Kaiser partnered with Healthwise to develop information to educate Kaiser's members about various diseases and conditions along with the drugs and other therapies available to treat them. (2/5/2010 Cheffo Decl. Exh. E [2472-5].) As a result of this partnership, Kaiser's website, which purports to provide its members with interactive tools and other resources so that its members can live healthier lives (2/5/2010 Cheffo Decl. Exh. D [2472-4].), contains numerous articles where it recommends the use of anticonvulsants, including Neurontin and gabapentin, for treatment of chronic pain, cancer pain, hot flashes and other conditions. (2/5/2010 Cheffo Decl. Exhs. C [2472-3] and D [2472-4].)

For example, if a Kaiser member clicked on the "Drugs and natural medicines" link of the Health and Wellness tab on Kaiser's site, he or she would be taken to a Kaiser Permanente page that reads: "Look up prescription and nonprescription drugs, vitamins, herbs, and other dietary supplements, including how to use them, side effects, interactions, and more." (2/5/2010 Cheffo Decl. Exh. D [2472-4].) A click on this page takes a Kaiser patient-subscriber to Kaiser's "drug encyclopedia," where patients can find information on medications. (*Id.*) Someone who clicked on "Pain Originating From a Nerve" under "Conditions: P" in the Drug Encyclopedia would be taken to a page that reads as follows:

**Drugs for managing Pain Originating From a Nerve**
Please click on a drug name to see more information
- Gabapentin Oral
- Neurontin Oral

(*Id.*) These are the *only* two drugs listed in Kaiser's Drug Encyclopedia under "Pain Originating from a Nerve."

In sharp contrast, Kaiser alleges in this lawsuit that Neurontin is ineffective for the above use, as well as other off-label uses for which it is promoted in Kaiser's website. The allegations made by Kaiser to this Court regarding the inefficacy of Neurontin – allegations that it hopes to repeat in front of a jury far removed from its patient base – are simply irreconcilable with the physician-authored articles on its website encouraging Kaiser's 8.6 million members to discuss with their physicians the use of Neurontin or gabapentin for the treatment of various conditions including chronic pain. In short, Kaiser intends to tell the jury one thing and its doctors and patients another.

Pfizer previously has called the Court's attention to this contradiction in its Motion for Continued Deposition of Nicholas Wieder, filed on January 18, 2010.[1] [2372] Along with its

---

[1] Pfizer argued that Kaiser's obstructionist tactics during Dr. Wieder's initial deposition prevented full and fair questioning regarding, among other topics, websites maintained by Kaiser on which it provides information to its members about various drugs and medical conditions. [2444] Specifically, when Pfizer's counsel had sought to question Dr. Wieder on these statements made on Kaiser's website to its members to assist them in making healthcare decisions – statements wholly inconsistent with the positions taken by Kaiser in this litigation – Kaiser's counsel refused to allow the
*(cont'd)*

2

opposition to Pfizer's motion, Kaiser attached declarations from its Practice Leader for Quality & Compliance in Kaiser Permanente's Internet Service Group, McWaters, and the Chief Executive Officer of Healthwise, Kemper, despite the fact that Kaiser had not previously identified either of these fact witnesses as having information potentially relevant to this litigation. Relying on these declarations, Kaiser attempted to establish that it had no control over the particular portions of its website that undermined its litigation strategy. Specifically, McWaters claimed, "[t]he majority of health care information provided on Kaiser's website is not written by Kaiser," "[s]ome of the Healthwise materials discuss the off-label use of Neurontin," and "Kaiser does not exercise editorial control over the materials generated by Healthwise." (McWaters Decl. [2443-4] at ¶¶ 3-5.) Similarly, Kemper stated, "Kaiser licenses certain Healthwise materials [and] those materials are then posted on Kaiser's website." (Kemper Decl. [2443-5] at ¶ 3.) Conspicuously absent from both McWaters and Kemper's wholly generic declarations are specific statements regarding the information in Kaiser's website concerning Neurontin. For example, nowhere in their declarations do they say that the information is inaccurate.

In fact, contrary to Kaiser's position, it touted its collaboration with Healthwise in 1999 and indicated that its physicians would be involved in actively reviewing the material provided by Healthwise. (2/5/2010 Cheffo Decl. Exh. E [2472-5].) Likewise, according to a 2004 Kaiser press release, Kaiser "showcase[d] [its] online health programs" in order to encourage enrollment. (*Id.* Exh. F [2472-6].) Promoting its website, Kaiser stated that it features "online drug and medical encyclopedias *reviewed and approved by Kaiser Permanente physicians.*" (*Id.* (emphasis added).) Another Kaiser press release told people to "[c]lick to kaiserpermanente.org for physician-approved health information." (*Id.* Exh. G [2472-7].) "Kaiser invite[d] everyone – members and nonmembers alike – to access trustworthy, up-to-date, physician-approved health

---

*(cont'd from previous page)*
witness to even look at Kaiser's website on a computer screen connected to the internet and instructed him not to answer questions. This motion was denied by an electronic order on January 29, 2010. Pfizer filed objections to the magistrate's order on February 5, 2010 [2471].

information by visiting [its] redesigned Web site . . . ." (*Id.*) And Kaiser represented on its website that the materials provided by Healthwise were both accurate and current. (*Id.* Exh. G [2472-7].)

Due to the fact that its website undermines fundamental allegations that go to the heart of Kaiser's claims, there is a special need for Pfizer to depose McWaters and Kemper, who were not identified prior to the close of fact discovery even though Kaiser seems to think – based on its reliance on their declarations as the basis for its argument – that they possess relevant knowledge regarding the content of Kaiser's website.

## ARGUMENT

The Court should allow Pfizer to depose and cross-examine McWaters and Kemper – who Kaiser relies upon but failed to disclose – to rebut Kaiser's incredible claim that it lacks control over the contents of its own website. Even today, Kaiser continues to include factual representations about off-label uses of Neurontin on its website that directly contradict its position in this litigation about the drug's efficacy. When confronted with this inconsistency in a previous discovery dispute, Kaiser failed to proffer an explanation as to how its public statements about Neurontin were not inconsistent with the positions it has taken in this lawsuit; instead, Kaiser attempted to distance itself from the content of its own website. (*See* Pl.'s Opposition to Mot. for Continued Depo. of Wieder [2443-1] at 15-16.) Presumably, Kaiser and its fact witnesses will brazen out this position at trial. Because Kaiser has placed control over its website in controversy and has presented declarations of McWaters and Kemper to support this position, fairness dictates that Pfizer should be afforded the opportunity depose and cross-examine these two supporting witnesses – whose identities were only recently made known – regarding the disputed and material factual issue.

In previous briefs, Kaiser has mischaracterized and drawn unwarranted assumptions from the limited information currently available from McWaters and Kemper. For example, after citing to their declarations, Kaiser has argued that "Pfizer's spreading of misinformation about Neurontin appears to have resulted in the misstatements in the Healthwise materials."

4

(Pl.'s Opposition to Mot. for Continued Depo. of Wieder [2443-1] at 16.) This allegation, however, was not supported by the generic statements in the attached declarations. While Kemper generally observed that "it is not always possible to detect information that has been inappropriately reported or otherwise not disclosed by pharmaceutical companies" (Kemper Decl. [2443-5] at ¶ 9); he did not assert that Healthwise's information regarding Neurontin was somehow inaccurate or that Pfizer "inappropriately reported" anything. At best, Kemper's statement is ambiguous and begs a follow-up question. Likewise, Kaiser has used McWater's statement that "Kaiser does not exercise editorial control over the materials generated by Healthwise" in a way that implied Kaiser has no control over the content that appears on its website (McWaters Decl. [2443-4] at ¶ 5.). This suggestion – that Kaiser is powerless to control the content on its website – is absurd on its face and logically could not have been what McWaters meant to convey.[2] In order to prevent Kaiser's further misuse and mischaracterization of McWaters and Kemper's broad statements at trial, Pfizer must be permitted to depose them about their assertions. Otherwise, Kaiser should be precluded from taking the position at trial that it does not exercise control over the content on its own website.

It is anticipated that Kaiser will respond to this motion by arguing that, despite that fact that McWater and Kemper have relevant information, Pfizer should not be allowed to depose them because they have not been designated to testify at trial. Were the Court to adopt this position, however, it would unfairly reward Kaiser's failure to disclose the identity of witnesses with potentially relevant information.

Regardless of whether Kaiser actually intends to present the testimony of McWaters and

---

[2] First, the health articles on Kaiser's website were not inserted there surreptitiously through Healthwise adware. Kaiser actively contracted with Healthwise to provide it with content for its website. Second, these are not links to a wholly separate website. Instead, Kaiser's members are directed to articles on Kaiser's website with the Kaiser Permanente logo prominently displayed at the top of each page. As Dr. Wieder testified: "[N]o one would be reasonably – would reasonably think that it wasn't a Kaiser document." (Wieder Dep. at 351:20-21, 2/5/2010 Cheffo Decl. Exh. B [2472-2].) Kaiser's suggestion that it has no responsibility for statements regarding Neurontin's efficacy that were made on Kaiser's behalf, on Kaiser's own website, to Kaiser's members, and with Kaiser's full knowledge, is ironic to say the least.

Kemper as affirmative proof at trial, it certainly will argue – in response to documentary evidence showing that Kaiser (the website operator) disagrees with Kaiser (the civil plaintiff) about Neurontin's efficacy for certain off-label uses – that it lacked control over the content that appears on its website. Even if these witness and their statements do not surface at trial, they undeniably supplied information that formed the basis of Kaiser's position that an independent third-party has been posting purported misinformation on its website, and it is simply helpless to stop it. (*See* Pl.'s Opposition to Mot. for Continued Depo. of Wieder [2443-1] at 15-16.) Because Kaiser relied on this information from McWaters and Kemper in its opposition to Pfizer's discovery motion, it must have previously been aware that they had potentially relevant information, and yet it failed to identify these witnesses until after the close of fact discovery and only when the relevant information these witnesses possessed became expedient for Kaiser's purposes. Therefore, Pfizer should be permitted to depose these witnesses, who indisputably posses vital information about this material issue that will be in dispute at trial and whose identities were only recently made available.

As Pfizer has maintained throughout this litigation, the procedural orders of this Court and the Federal Rules of Civil Procedure cannot be reasonably construed to permit parties to ignore their disclosure obligations, rely on a previously undisclosed witness's declaration in opposition to a discovery motion, and then unilaterally block the opposing party's right to depose the late-disclosed witness by strategically declining to call him at trial. In order to prevent such unfair litigation tactics in this case, Pfizer must be allowed to stand on equal footing with its adversary by deposing McWaters and Kemper.

## CONCLUSION

For all of the forgoing reasons, Pfizer requests that this Court issue an order granting the relief sought in Pfizer's motion:

Dated: February 9, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:   /s/ Mark S. Cheffo
      Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:   /s/ Raoul D. Kennedy
      Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400

-and-

WHEELER TRIGG O'DONNELL LLP

By:   /s/ James E. Hooper
      James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800

-and-

7

WHITE AND WILLIAMS LLP

By: /s/ David B. Chaffin
David B. Chaffin

BBO # 549245
100 Summer Street, Suite 2707
Boston, MA 02110
Tel: (617) 748-5200

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on February 9, 2010.

/s/ David B. Chaffin
David B. Chaffin