# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
In Re:                                                              Case Management
NEURONTIN PRODUCT LIABILITY                                         Index No. 765,000/2006
PRODUCT LIABILITY LITIGATION
                                                                    Hon. Marcy S. Friedman
------------------------------------------------------------------x
THIS DOCUMENT APPLIES TO ALL CASES
------------------------------------------------------------------x

## AFFIDAVIT OF KEITH ALTMAN

1. I am over 18 years old, and I reside in the State of New York. I am competent to provide the testimony set forth herein. I am giving this information based on my personal knowledge, and I affirm the following under the penalties of perjury.

2. I am an attorney admitted to practice law in the State of California. I am also admitted *pro hac vice* in the Neurontin Products Liability MDL, in the United States District Court of Massachusetts, MDL No. 1629.

3. I participated in the discussions involving the production agreement in this litigation, dated November 29, 2004, and which is the subject of the instant matter before this Court. At the time, I was not licensed as an attorney. I was employed by Finkelstein & Partners and had a support role to Plaintiff's counsel Kenneth Fromson. During the negotiations with Defendants, they were represented by attorneys James Murray and Jim Rouhundeh of Davis, Polk & Wardwell.

4. At that time, the parties' agreement was to apply to all existing and future Neurontin cases, and to the greatest extent possible there would be one uniform production in all jurisdictions. This is further reflected in the agreement to the extent that cases venued in state courts of New York and California, as well as federal cases, were included in the agreement.

5. All documents in discovery were to be produced in electronic format in the Neurontin litigation with the requesting party only bearing the costs of the media on which responsive materials were placed (e.g., a disk or hard drive).

6. With respect to materials in hard copy (paper documents), any materials which the producing party would copy to allow the requesting party to inspect would be scanned by the producing party. For example, custodial files for which the producing party would not make the original files available for review would be scanned at the producing party's expense.

7. Any documents which only existed in hard copy and could be made available for review without the necessity of copying and for which the producing party had

collected prior to the commencement of the litigation were to be reviewed by the requesting party. Following the review, the requesting party would be responsible for the costs of scanning/copying any materials the requesting party chose to obtain from the review. For example, Plaintiffs paid the costs of scanning Defendants' New Drug Application for Neurontin which was already maintained by Pfizer in the routine course of business before the litigation began. Plaintiffs also paid the costs of scanning certain files that Plaintiffs inspected in Pfizer's facility in Michigan.

8. Throughout the litigation, I have been the individual that has received and processed the discovery materials produced by Defendants on behalf of the Products Liability Plaintiffs in both New York and the MDL. In that capacity, I have had responsibility for taking the materials and preparing them for use and inspection by the Plaintiffs. I have also extensively consulted and coordinated with the MDL Sales and Marketing Plaintiffs counsel on production issues.

9. During the time of the majority of the document production, through at least 2006, Defendants produced materials to Products Liability Plaintiffs under the New York case of Young v. Pfizer (Supreme Court, Orange County). At no time until the current dispute has the producing party sought the requesting party to bear any of the costs associated with the production of responsive materials, virtually all of which have been produced electronically.

10. In fact, in the spirit of the agreement, Plaintiffs scanned more than 500,000 pages of documents at their own expense and provided copies to defendants at no cost. First, as set forth above, the New Drug Application was maintained by Pfizer in a New York office which I personally visited on several occasions. Because these materials were available for review prior to the litigation, Plaintiffs took responsibility for any scanning costs associated with these materials. Second, on another occasion, Plaintiffs traveled to Defendants archive facility in Detroit, Michigan to review the clinical trial master files for Neurontin Once again, because these materials had already been collected and were available for review without copying, Plaintiffs bore the cost of scanning these materials.

11. As to the current dispute, Defendants have in no way provided meaningful evidence of a burden or cost associated with the production of case specific materials. As a result, Plaintiffs have had no opportunity to review any possible burden to assess how such burden, if any, may be minimized while still preserving the utility of the information.

Keith L. Altman

Sworn to before me   10/15/09

Eleanor L. Polimeni

**ELEANOR L. POLIMENI**
Notary Public, State of New York
Qualified in Westchester County
Commission Expires December 31, 2009