# EXHIBIT 2

# Transcript of the Testimony of
## Sander Greenland, Dr.P.H.

**Date Taken:** July 21, 2009
**Volume:** I

**Case:**
In Re: Neurontin Marketing, Sales Practices and Products Liability Liti
v.
Neurontin Products Liability

Reported By: Maureen O'Connor Pollard, RPR, CLR, CSR

O'Connor Pollard Reporting, Inc.
Phone:508-528-2950
Fax:508-528-3927
www.opreporting.com

Case 1:04-cv-10981-PBS   Document 2485-3   Filed 02/11/10   Page 3 of 3

In Re: Neurontin Marketing, Sales Practices and Products Liability Liti v. Neurontin Products Liability
Sander Greenland, Dr.P.H. - July 21, 2009

Page 118

1  Q. And you don't criticize Dr. Gibbons
2  for that, do you?
3  A. No.
4  Q. We agree on that?
5  A. Yes.
6  Q. And if Dr. Gibbons on deposition,
7  which you reviewed, advised counsel, Mr. Altman,
8  that the same limitations that were stated in
9  his published paper on the anti-epileptic drugs
10 applied to the gabapentin study of his
11 supplemental report, would you agree with his
12 statement?
13 A. Yes.
14 Q. You would not be critical of
15 Dr. Gibbons for accepting the limitations of his
16 paper to his gabapentin study, would you?
17 A. I would not be.
18 Q. And so did you see that in his
19 deposition where he actually accepted the
20 limitations?
21 A. Yes.
22 Q. And that's appropriate, isn't it?
23 A. Yes.
24    MR. BARNES: Okay. Counsel, you may

Page 119

1  ask your two questions.
2     MR. ALTMAN: If you need a couple
3  questions on redirect.
4     CROSS EXAMINATION
5     BY MR. ALTMAN:
6  Q. A question that Mr. Barnes just asked
7  you about the limitations; there are limitations
8  in his published paper that are not listed in
9  the gabapentin expert report, correct?
10 A. Correct.
11 Q. Would the reader have any way to know
12 that those limitations apply by reading the
13 gabapentin expert report if they weren't there?
14    MR. BARNES: Objection.
15 A. Answer?
16    MR. BARNES: You may answer.
17 A. Not that I could see if they only had
18 that report.
19    BY MR. ALTMAN:
20 Q. Okay. If according to the data
21 purchased by Dr. Gibbons from PharMetrics he did
22 not purchase all of the drugs taken by each
23 individual in his cohort, is there any way that
24 Dr. Gibbons could have adjusted for the drugs

Page 120

1  that he didn't purchase?
2  A. Not that I see.
3  Q. And my last question is; if you had
4  taken the PharMetrics database yourself, is
5  there any analysis that you could have done with
6  the PharMetrics database that would allow you to
7  conclude that the data establishes that there's
8  no increased risk of suicidality?
9     MR. BARNES: Objection.
10 A. No.
11    BY MR. ALTMAN:
12 Q. Is there anything you could have done
13 with the PharMetrics database that would allow
14 you to conclude that the data demonstrates that
15 there is a protective effect of gabapentin for
16 suicidality?
17    MR. BARNES: Objection.
18 A. No.
19    MR. ALTMAN: That's all I have.
20    REDIRECT EXAMINATION
21    BY MR. BARNES:
22 Q. Okay. Doctor, you don't know whether
23 or not Dr. Gibbons purchased all of the drugs
24 each patient were on or not, do you? You don't

Page 121

1  know if what he -- in other words, you have no
2  information whether or not Dr. Gibbons did or
3  did not purchase all the medications, the list
4  of all the medications that each patient was on,
5  do you?
6     MR. ALTMAN: Objection. Misstates his
7  testimony.
8  A. I think what I said was that based on
9  the materials that I was given and I've seen,
10 the exhibit that we've referred to and all that,
11 it appeared that he got only a very small subset
12 of the drugs the patients would have been on,
13 could have been on, likely that they had.
14    BY MR. BARNES:
15 Q. What do you say "likely" for? What do
16 you base likely?
17 A. For example, pain medications aren't
18 listed, and pain medications are very commonly
19 prescribed. There are a hundred thousand
20 people, there must be a lot of them on pain
21 medication.
22 Q. Are you saying that pain medications
23 are associated with suicidal behavior and
24 thinking?

Electronically signed by Maureen Pollard (301-060-750-3584)                    0974bd75-0bcf-4b1c-a378-a0204a4470ab