```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| **IN RE NEURONTIN MARKETING** **AND SALES PRACTICES LITIGATION** | ) ) ) MDL NO. 1629 ) |
| **THIS DOCUMENT RELATES TO:** THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER, INC., et al., and AETNA, INC. v. PFIZER, INC., et al. | ) ) CIVIL ACTION NO. 04-cv-10981-PBS ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## MEMORANDUM AND ORDER

February 12, 2010

Saris, U.S.D.J.

Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals ("Kaiser") submitted five Daubert motions in limine to exclude the testimony of the efficacy experts presented by defendant Pfizer, Inc.[1]  See Daubert v. Merrell Dow Pharms.,

---

[1] These motions include: (1) Motion in Limine to Exclude Testimony of Dr. Alan Rapoport (Dkt. No. 2379); (2) Motion in Limine to Exclude Testimony of Dr. Shawn Bird (Dkt. No. 2381); (3) Motion in Limine to Exclude Testimony of Dr. Gary Brenner (Dkt. No. 2383); (4) Motion in Limine to Exclude Testimony of Dr. Andrew Slaby (Dkt. No. 2385); (5) Motion in Limine to Exclude Testimony of Dr. Michael McLean (Dkt. No. 2387).

Inc., 509 U.S. 579 (1993).  Plaintiffs' central argument is that defendant's experts fail to follow a reliable scientific methodology because they do not address in their expert reports the available double-blind, randomized, controlled trials ("DBRCT") pertaining to the use of Neurontin for certain off-label indications, including migraine, neuropathic pain, bipolar disorder, and dosages over 1800 mg per day.

DBRCTs are the "gold standard" of scientific evidence.  See David H. Kaye & David A. Freedman, Reference Guide on Statistics, in Federal Judicial Center, Reference Manual on Scientific Evidence 91-92, 338 (2d ed. 2000) (stating that "controlled experiments are ideal for ascertaining causation" and "inferences based on well-executed randomized experiments are more secure than inferences based on observational studies").  Experts must accord appropriate weights to different levels of evidence, i.e. a randomized, controlled trial, as the "gold standard" of evidence, must be accorded greater weight than observational, non-controlled studies or case reports.  See id. at 93 ("Inferences based on well-executed randomized experiments are more secure than inferences based on observational studies."); see also Norris v. Baxter Healthcare Corp., 397 F.3d 878, 882 (10th Cir. 2005) ("While the presence of epidemiology [as opposed to anecdotal evidence] does not necessarily end the inquiry, where epidemiology is available, it cannot be ignored."); In re Bextra & Celebrex Mktg. Sales Practices & Prods. Liab. Litig.,

2

524 F. Supp. 2d 1166, 1175-76, 1179 (N.D. Cal. 2007) (holding that experts may not "cherry-pick[]" observational studies to support a conclusion that is contradicted by randomized controlled trials, meta-analyses of such trials, and meta-analyses of observational studies and excluding an expert who "ignores the vast majority of the evidence in favor of the few studies that support her conclusion"); Casey v. Ohio Med. Prods., 877 F. Supp. 1380, 1385 (N.D. Cal. 1995) (holding that, while case reports may provide anecdotal support, they are no substitute for controlled studies or trials).  Plaintiffs are persuasive in their argument that an expert who does not give appropriate weight to DBRCTs in rendering an opinion on a drug's effectiveness or who ignores negative DBRCTs flunks the Daubert test of reliability.

Unfortunately, plaintiffs filed their complex motions only a month before trial; oppositions came in two weeks later.  Plaintiffs did not depose the defendant's experts.  Based on the expert reports alone, the Court cannot determine whether the experts ignored the DBRCTs or failed to give them appropriate weight.  With trial starting on February 22, 2010, it is now too late to hold full-blown Daubert hearings on each of the experts and too late to permit or require supplementation of expert reports regarding DBRCTs.  At trial, the Court will not permit an expert to give an expert opinion that a drug is effective in treating a disease to a reasonable degree of scientific certainty

unless he has considered and given appropriate weight to <u>all</u> available DBRCTs.  Clinical experience alone will not suffice as a reliable scientific methodology in assessing the efficacy of a drug, although it may be relevant on other issues (like causation of damages).  Pfizer bears the burden under <u>Daubert</u> of establishing that its experts' opinions are based on a reasonable methodology.

## CONCLUSION

The Court **DENIES** without prejudice plaintiffs' motions in limine to exclude the testimony of defendant's efficacy experts (Dkt. Nos. 2379, 2381, 2383, 2385, and 2387).

/s/ Patti B. Saris

PATTI B. SARIS
United States District Judge