UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | : MDL Docket No. 1629<br>:<br>: Master File No. 04-10981<br>: |
| THIS DOCUMENT RELATES TO: | : Judge Patti B. Saris |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | :<br>: Magistrate Judge Leo T. Sorokin |

## DEFENDANTS' SPECIAL REQUESTS FOR JURY INSTRUCTIONS

Defendants, Pfizer Inc ("Pfizer") and Warner-Lambert Company LLC ("Warner-Lambert") (collectively, "Defendants"), pursuant to this Court's Procedural Order of November 12, 2009 [2172], hereby propose that the instructions identified or set forth in the attachments hereto be given to the jury before and following the trial of this matter. Defendants submit these proposed instructions without waiver of their right to contend at trial that certain instructions should not be given because the evidence admitted does not warrant submitting some or all of the issues to the jury and without waiver of its right to request additional or modified instructions in light of the record developed at trial, rulings by this Court, or other subsequent developments.

Defendants renew their request for a jury trial as to all matters triable as a matter for right before a jury. In addition, as to those matters as to which there may not be a right to a jury trial (more specifically, Plaintiffs' claim under California's Unfair Competition Law ("UCL")), Pfizer requests that the jury be asked to sit as an advisory jury and answer special interrogatories as to Plaintiffs' UCL claim. *See* Fed. R. Civ. P. 39(c)(1); *see also Cambridge Plating Co. v. NAPCO, Inc.*, 890 F. Supp. 55, 59-60 (D. Mass. 1995), *aff'd, in part*, *vacated in part*, 85 F.3d 752 (1st Cir. 1996) (using advisory jury on claim asserted under Massachusetts General Laws ch. 93A); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 62 (N.D.N.Y. 2005) (jury, in an advisory capacity, addressed the threshold inequitable conduct questions of materiality and intent to deceive); *Echometer Co. v. Lufkin Indus., Inc.*, No. Civ. A. 7:00-cv-0101-N, 2004 WL

575954, at *1-2 (N.D. Tex. Mar. 22, 2004) (giving substantial weight to the jury's advisory verdict on inequitable conduct).  The value of the consensus decision making process inherent in the jury system has been repeatedly recognized by courts.  *See Lirette v. Shiva Corp.*, 27 F. Supp. 2d 268, 271 n.3 (D. Mass. 1998) ("Our juries are the ultimate realization of our people working together, under law, to do justice."); *Mass. Eye & Ear Infirmary v. QLT, Inc*. 495 F. Supp. 2d 188, 198 (D. Mass. 2007) ("The right to trial by jury is not a mere formality in civil cases[,] . . . it is direct democracy at work."), *aff'd in part, vacated in part on other grounds*, 552 F.3d 47 (1st Cir. 2009).   Where, as here, the Court is required to empanel a jury in order to decide Plaintiffs' RICO and other legal claims, the opportunity to obtain the jury's advice on Plaintiffs' UCL claims should not be passed up.   Accordingly, Defendants' include proposed instructions regarding Plaintiffs' UCL claims.

Plaintiffs also seek to recover under the consumer protection statutes of various states. The Third Amended Complaint does not indicate which Plaintiff is seeking to recovery under which State's statutes; presumably Kaiser Foundation Health Plan seeks to invoke the statutes where its subsidiaries – Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio − operate. However, it is well established that a parent company may not recover for damages to a subsidiary.  *See, e.g.*, *PayPhone v. Brooks Fiber Commc'ns of R.I.*, 126 F. Supp. 2d 175, 179 (D.R.I. 2001); *Resolution Trust Corp. v. Fleischer*, 848 F. Supp. 917, 923 (D. Kan. 1994); *United Cont'l Tuna Corp. v. United States*, 550 F.2d 569, 573 (9th Cir. 1977).   Kaiser, therefore, has no standing to assert the consumer protection statute of any state other than California.

Additionally, even if Plaintiffs were not barred from asserting claims for damages on behalf of their subsidiaries, they would still lack standing to recover under several of the relevant consumer protection statutes.  Plaintiffs cannot assert claims under the law of Georgia, Hawaii, Maryland, or Ohio, because those jurisdictions do not allow corporations to assert consumer protection claims.  *See Blue Cross & Blue Shield of Ga., Inc. v. Kell***,** 488 S.E.2d 735, 740 (Ga.

Ct. App. 1997); *Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.*, 114 P.3d 929, 941 (Haw. Ct. App. 2005); *Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 692 (D. Md. 2001); *Watkins & Son Pet Supplies v. Iams Co.*, 107 F. Supp. 2d 883, 893 (S.D. Ohio 1999), *aff'd*, 254 F.3d 607 (6th Cir. 2001).   Nor may Plaintiffs bring claims under the consumer protection statutes of Oregon or the District of Columbia, which are limited to claims by consumers.  *See Wheeler v. Montgomery*, No. 06-214-KI, 2007 WL 894562, at *6 (D. Or. Mar. 21, 2007) (sua sponte dismissing the plaintiffs' claim, observing that "[t]he Act is inapplicable to the situation at hand, a commercial transaction, and cannot form a basis for plaintiffs' recovery"); *Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1179-80 (D. Or. 1998) (rejecting claims under Oregon Unlawful Trade Practices Act by union health funds seeking recovery of monies spent on participants), *aff'd*, 185 F.3d 957 (9th Cir. 1999); *Shaw v. Marriott Int'l, Inc.*, 570 F. Supp. 2d 78, 83 (D.D.C. 2008) (dismissing claims brought by non-consumers).  Accordingly, without conceding the standing of Plaintiffs to assert claims on behalf of their subsidiaries, Defendants conditionally propose jury instructions only as to the consumer protection statutes of Colorado, Virginia, and Washington.[1]

Dated: February 15, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:   /s/ Mark S. Cheffo
      Mark S. Cheffo
      /s/ Katherine F. Arthur
      Katherine F. Arthur

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Email:  Mark.Cheffo@skadden.com
Email:  Katherine.Arthur@skadden.com

---

[1] Defendants reserve their right to argue that Plaintiffs cannot meet any consumer nexus requirement of these statutes as well.

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:    /s/ Raoul D. Kennedy
       Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel:  (415) 984-6400
Email:Raoul.Kennedy@skadden.com

WHEELER TRIGG O'DONNELL LLP

By:  /s/ James E. Hooper
     James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel:  (303) 244-1800
Email:  hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on February 15, 2010.

        /s/ Mark S. Cheffo
        Mark S. Cheffo

4

## PROPOSED INSTRUCTION 1

## PRELIMINARY INSTRUCTIONS:  GENERAL INSTRUCTIONS[2]

Ladies and Gentlemen of the jury:

Now that we are about to begin the trial of this case, I will briefly tell you something about the case, the order of events during the trial, and your duties as jurors.

The parties who bring a lawsuit are called the plaintiffs.  In this case the plaintiffs are Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals.  The party against whom the suit is brought is called the defendant.  In this case the defendants are Pfizer Inc and Warner-Lambert Company LLC.  This lawsuit concerned the drug Neurontin, which was developed and marketed by the defendants.   Neurontin was approved by the federal Food and Drug Administration – the FDA – to treat seizures and a type of pain associated with shingles, known as post-herpetic neuralgia, a form of neuropathic pain.  The plaintiffs allege that defendants fraudulently marketed the drug Neurontin for certain other uses not approved by the Food and Drug Administration (or FDA), known as off-label uses).  The plaintiffs allege that defendants' conduct violated the Racketeer Influenced and Corrupt Organizations Act.  As I will further instruct you, to establish a racketeering violation, the plaintiffs must prove a number of essential elements:  That an enterprise existed, that the defendants knowingly and willfully conducted or participated in the conduct of that enterprise, that defendants did so through a pattern of racketeering activity and that, by reason thereof, the plaintiffs were injured in their business or property.

The plaintiffs allege that the defendants marketed Neurontin as a treatment for all types of neuropathic pain, not just pain associated with shingles, as well as another type of pain called nociceptive pain, migraine headaches, and bipolar disorder.  The plaintiffs also allege that the

---

[2] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 101.01 (5th ed. 2000) (modified); 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 70.01 (4th ed. 1987) (modified).

defendants promoted Neurontin at doses above the level (1800 mg/day) approved by the FDA. Plaintiffs further allege that defendants misrepresented the effectiveness of Neurontin as a treatment for these off-label conditions or at doses above 1800 mg/day.  Plaintiffs allege that defendants' conduct injured the plaintiffs because it caused Kaiser physicians to prescribe Neurontin when the doctors would otherwise have prescribed other, less expensive drugs.

The defendants deny the plaintiffs' allegations except admit that certain specific incidents of off-label marketing of Neurontin did occur many years ago.  Defendants allege that the off-label prescribing of medicines, particularly anti-seizure drugs, has long been a common practice and that the improper marketing activities did not cause Kaiser's doctors to prescribe Neurontin instead of other less expensive drugs.  The defendants also allege that the scientific evidence indicates that Neurontin is effective in treating some patients for the conditions at issue.

It will be your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You will hear the evidence, decide what the facts are, and then apply those facts to the law I give to you.  That is how you will reach your verdict.  In doing so you must follow the law whether you agree with it or not.  The evidence will consist of the testimony of witnesses, documents and other things received into evidence as exhibits, and any facts on which the lawyers agree or which I may instruct you to accept.  You should not take anything I may say or do during the trial as indicating what I think of the believability or significance of the evidence or what your verdict should be.[3]

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be governed by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all of the evidence, follow the law as I give it to you, and reach a just verdict, regardless of the consequences.

---

[3] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 1.01 (1997) (modified with description of allegations).

**PROPOSED INSTRUCTION 2**

**<u>PRELIMINARY INSTRUCTIONS:  JUROR NOTE TAKING</u>**[4]

I am going to permit you to take notes in this case, and the courtroom deputy has distributed pencils and pads for your use.  I want to give you a couple of warnings about taking notes, however.  First of all, do not allow your note-taking to distract you from listening carefully to the testimony that is being presented.  If you would prefer not to take notes at all but simply to listen, please feel free to do so.  Please remember also from some of your grade-school experiences that not everything you write down is necessarily what was said.  Thus, when you return to the jury room to discuss the case, do not assume simply because something appears in somebody's notes that it necessarily took place in court.  Instead, it is your collective memory that must control as you deliberate upon the verdict.  Please take your notes to the jury room at every recess.  I will have the courtroom deputy collect them at the end of each day and place them in the vault.  They will then be returned to you the next morning.  When the case is over, your notes will be destroyed.  These steps are in line with my earlier instruction to you that it is important that you not discuss the case with anyone or permit anyone to discuss it with you.

---

[4] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 1.08 (1997).

3

**PROPOSED INSTRUCTION 3**

<u>**PRELIMINARY INSTRUCTIONS:  JUDGE'S QUESTIONS TO WITNESSES**</u>[5]

During the trial, I may sometimes ask a witness questions. Please do not assume that I have any opinion about the subject matter of my questions.

---

[5] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 101.30 (5th ed. 2000); 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 70.13 (4th ed. 1987) (modified).

**PROPOSED INSTRUCTION 4**

**RULES FOR JURORS**[6]

You will not be required to remain together while the Court is in recess.  To insure fairness, it is important that you obey the following instructions with reference to the recesses of the Court:

First, do not talk among yourselves about this case, similar medicines, the medical conditions at issue, or the pharmaceutical industry or about anyone involved with the case, until the end of the case when you go to the jury room to decide on your verdict.

Second, do not talk with anyone else about this case, similar medicines, the medical conditions at issue, or the pharmaceutical industry, or about anyone who has anything to do with the case, until the trial has ended and you have been discharged as jurors.  "Anyone else" includes members of your family and your friends.  You may tell them that you are a juror, but do not tell them anything about the case until after you have been discharged by me.

Third, do not let anyone talk to you about the case or about anyone who has anything to do with it.  If someone should try to talk to you, please report it to me immediately.

Fourth, during the trial, do not talk with or speak to any of the parties, lawyers or witnesses involved in this case – you should not even pass the time of day with any of them.  It is important not only that you do justice in this case, but that you also give the appearance of doing justice.  If a person from one side of the lawsuit sees you talking to a person from the other side – even if it is simply to pass the time of day – an unwarranted and unnecessary suspicion about your fairness might be aroused.  If any lawyer, party or witness does not speak to you when you pass in the hall, ride the elevator or the like, it is because they are not supposed to talk or visit with you.

Fifth, do not read any news stories or articles about the case, similar medicines, mental

---

[6] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 1.07 (1997) (modified).

disorders, suicide, or the pharmaceutical industry or about anyone involved with the case, or listen to any radio or television reports about the case or about anyone involved with it.  If a newspaper headline or a radio or television statement catches your attention, do not read, listen, or view the matter any further.  Media accounts may be inaccurate and may contain matters that are not proper evidence for your consideration. You must base your verdict solely on what is brought out as evidence here in open court.

Sixth, do not do any research, such as consulting dictionaries, other reference materials, or the internet, and do not make any investigation about the case on your own.  For example, if you have friends or acquaintances who are physicians or scientists, do not ask them any questions about any of the medical or scientific issues in this case.  Do not attempt to research any of the issues in this case, the court, the parties, the attorneys or the witnesses on the internet or from any other source of information.  You should be guided solely by the evidence presented in the courtroom.

Seventh, if you need to communicate with me simply give a signed note to the [court security officer] to give to me.

Finally, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

**PROPOSED INSTRUCTION 5**

**PRELIMINARY INSTRUCTIONS:  ORDER OF TRIAL**[7]

The case will proceed in the following order:

First, an attorney for the plaintiffs will make an opening statement outlining what the attorneys for the plaintiffs expect the evidence to show.  Then an attorney for the defendants will make an opening statement outlining what the attorneys for the defendants expect the evidence to show.  What the attorneys say in their opening statements is not evidence, but is simply to provide you with summaries of what the attorneys expect the evidence to show.

Next, the plaintiffs will introduce evidence in support of their claim. The defendants' attorneys may cross-examine the plaintiffs' witnesses.  At the conclusion of the plaintiffs' case, the defendants may introduce evidence, and the plaintiffs' attorneys may cross-examine the defendants' witnesses. The plaintiffs may then introduce further evidence, called rebuttal evidence.

After all the evidence has been presented, the attorneys for the parties will make their closing arguments, telling you what they think the evidence has shown and what inferences they contend you should draw from the evidence.  What the attorneys say in closing argument, just as what they say in opening statements, is not evidence.  The plaintiffs have the right to give both the first closing argument and the last closing argument.

Next, I will instruct you on the law that you must apply in reaching your verdict.  Then you will go to the jury room and deliberate to reach a verdict.

---

[7] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 101.02 (5th ed. 2000) (modified); 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 70.02 (4th ed. 1987) (modified).

**PROPOSED INSTRUCTION 6**

**PRELIMINARY INSTRUCTIONS:  EVIDENCE IN THE CASE[8]**

Since you will be called upon to decide the facts of this case, you should give careful attention to the testimony and evidence presented for your consideration.  Evidence includes the testimony of witnesses, documents and other things received as exhibits, and any facts that have been stipulated – that is, formally agreed to by the parties.

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence.  Then it may be necessary for me to talk with the lawyers out of the hearing of the jury, either by having a bench conference here while the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, and to avoid confusion and error.  We will, of course, do what we can to keep the number and length of these conferences to a minimum.

Certain things are not evidence.  I will list those things for you now:  (1) Statements, arguments, questions and comments by lawyers representing the parties in the case are not evidence.  (2) Objections are not evidence.  Lawyers have a duty to their client to object when they believe something is improper under the rules of evidence.  You should not be influenced by the objection.  If I sustain an objection, you must ignore the question or exhibit and must not try to guess what the answer might have been or the exhibit might have contained.  If I overrule the objection, the evidence will be admitted, but do not give it special attention because of the

---

[8] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 101.40 (5th ed. 2000) (modified); 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 70.03 (4th ed. 1987) (modified).

objection.  (3) Testimony that I strike from the record, or tell you to disregard, is not evidence and must not be considered.[9]

Also, anything you may have seen or heard outside the courtroom is not evidence, and you must entirely disregard it and must not discuss it with each other.  Therefore, you must not read, listen to, or view any media discussion, newspaper article, television or radio broadcast, or participate in or listen to any discussion by family, friends or others about this case, pain and anti-seizure medicines, the medical conditions at issue, the pharmaceutical industry, or anyone involved in this case. You also must not discuss among yourselves your own experience or any experience of any other person with any medicine, the medical conditions at issue, or any pharmaceutical company.[10]

Furthermore, a particular item of evidence is sometimes received for a limited purpose only.  That is, it can be used by you only for a particular purpose, and not for any other purpose. I will tell you when that occurs and instruct you on the purposes for which the item can and cannot be used.[11]

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of an eyewitness that the witness saw something. Circumstantial evidence is indirect evidence, that is proof of a fact or facts from which you could draw the inference, by reason and common sense, that another fact exists, even though it has not been proven directly.  You are entitled to consider both kinds of evidence.  The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.[12]

---

[9] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 1.05 (1997) (modified).

[10] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 101.19 (5th ed. 2000) (modified).

[11] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 1.05.

[12] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 3.05 (1997).

You also may hear testimony in the form of what we call "depositions."  Depositions are proceedings that occurred before the trial.  They are proceedings in which witnesses give testimony outside the courtroom, but under oath before a court reporter, with attorneys for each party who attends the deposition being entitled to ask questions.  Testimony from a deposition may be read to you or may be played for you on a screen from video.  Deposition testimony is to be treated just like any testimony you may hear from witnesses who appear here in this courtroom.  You should consider deposition testimony subject to the same instructions that apply to witnesses who appear live and testify here in court.[13]

You must listen to and consider all the evidence in the entire case, and deliberate with other jurors at the close of the case, before reaching any conclusions about the issues in the case. Therefore, you must keep an open mind until after all the evidence has been presented and you have conducted your deliberations as a jury at the end of the case.

---

[13] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 102.23 (5th ed. 2000) (modified); 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 73.02 (4th ed. 1987) (modified).

## PROPOSED INSTRUCTION 7

## <u>PROVINCE OF COURT AND JURY</u>

Now that you have heard the evidence, it becomes my duty to instruct you on the law that governs this case.

It is your duty to find the facts from all the evidence admitted in this case. To those facts you must apply the law as I give it to you. The determination of the law is my duty as the presiding judge in this court. It is your duty to apply the law exactly as I give it to you, whether you agree with it or not. You must not be influenced by any personal likes or dislikes, prejudices or sympathy. That means that you must decide the case solely on the evidence before you and according to the law. You will recall that you took an oath promising to do so at the beginning of the case. In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions, or into anything I may have said or done, any suggestions by me as to what verdict you should return – that is a matter entirely for you to decide.[14]

The parties' attorneys [may refer/have referred] to some of the rules of law in their arguments. If, however, any difference appears to you between the law as stated by an attorney and the law as stated by me, you are of course to be governed by my instructions.[15]

---

[14] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 3.01 (1997).

[15] 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 71.01 (4th ed. 1987) (simplified).

**PROPOSED INSTRUCTION 8**

**ALL PERSONS EQUAL UNDER THE LAW**[16]

Do not let bias, prejudice or sympathy play any part in your deliberations.  The parties in this case are corporations.  A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations, are equal before the law and must be treated as equals in a court of justice.  You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.

---

[16] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 103.12 (5th ed. 2000) (modified).

**PROPOSED INSTRUCTION 9**

**<u>PREPONDERANCE OF EVIDENCE</u>**

The standard of proof in a civil case is that the plaintiffs must prove their case by a preponderance of the evidence.  To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence means such evidence, as, when considered and compared with that opposed to it, has more convincing force, and produces the belief that what is sought to be proved is more likely true than not true.  The burden of proof has not been carried if, after considering all of the evidence, it is necessary to speculate, guess, or imagine that one or more of the necessary facts is true.[17]

---

[17] *United States v. Patriarca*, 912 F. Supp. 596, 610 (D. Mass. 1995); *cf.* Cal. Jury Instr.– Civ. 2.60 (Fall 2009) ("'Preponderance of the evidence' means evidence that has more convincing force than that opposed to it.  If the evidence is so evenly balanced that you are unable to say that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it.").

13

## PROPOSED INSTRUCTION 10

### EVIDENCE, STIPULATIONS, JUDICIAL NOTICE, AND EVIDENTIARY RULINGS

The evidence from which you are to decide what the facts are consists of sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness; the exhibits that have been received into evidence; and any facts to which the lawyers have agreed or stipulated.  A stipulation means simply that the plaintiff and the defendants accept the truth of a particular proposition or fact.  Since there is no disagreement, there is no need for evidence apart from the stipulation.  You must accept the stipulation as fact even though nothing more was said about it one way or the other.[18]  Also, I have taken judicial notice of certain facts or events.  When I have declared that I will take judicial notice of some fact or event, you must, unless otherwise instructed, accept my declaration as evidence and regard as proven the fact or event which has been judicially noticed.[19]

Although you may consider only the evidence presented in the case, you are not limited in considering that evidence to the bald statements made by the witnesses or contained in the documents.  In other words, you are not limited solely to what you see and hear as the witnesses testify.  You are permitted to draw from facts that you find to have been proven such reasonable inferences as you believe are justified in the light of common sense and personal experience.[20]

---

[18] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 3.04 (1997) (modified).

[19] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 103.30 (5th ed. 2000).

[20] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 3.04 (1997).

**PROPOSED INSTRUCTION 11**

**DEMONSTRATIVE EVIDENCE AND AIDS**[21]

Certain charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents that are in evidence in the case.  These charts or summaries are not themselves evidence or proof of any facts.  If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

In other words, the charts or summaries are used only as a matter of convenience.  To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

---

[21] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 104.50 (5th ed. 2000).

15

**PROPOSED INSTRUCTION 12**

<u>**CREDIBILITY AND NUMBER OF WITNESSES**</u>

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe everything a witness says or only part of it or none of it.  In deciding what to believe, you may consider a number of factors, including the following:  (1) the witness's ability to see or hear or know the things the witness testifies to; (2) the quality of the witness's memory; (3) the witness's manner while testifying; (4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice; (5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence; and (6) how reasonable the witness's testimony is when considered in the light of other evidence which you believe.[22]

Also, you have heard evidence that before testifying at this trial, certain witnesses made a statement concerning the same subject matter as his/her testimony in this trial.  You may consider that earlier statement to help you decide how much of the witness's testimony to believe.  If you find that the prior statement was not consistent with the witness's testimony at this trial, then you should decide whether that affects the believability of witness's testimony at this trial.[23]

Whether a party has met its burden of proof does not depend upon the number of witnesses it has called or upon the number of exhibits it has offered, but instead upon the nature and quality of the evidence presented.[24]

---

[22] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 1.06 (1997).

[23] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 2.02 (1997).

[24] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 3.06 (1997) (modified).

16

## PROPOSED INSTRUCTION 13

## <u>OPINION TESTIMONY</u>

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists for "expert witnesses."  An expert witness has special knowledge or experience that allows the witness to give an opinion.  You may accept or reject such testimony.  In weighing the testimony, you should consider the factors that generally bear upon the credibility of a witness as well as the expert witness's education and experience, the soundness of the reasons given for the opinion and all other evidence in the case.

Remember that you alone decide how much of a witness's testimony to believe, and how much weight it should be given.[25]  If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.[26]

---

[25] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 104.40 (5th ed. 2000); Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 2.06 (1997) (modified).

[26] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 104.40 (5th ed. 2000).

17

**PROPOSED INSTRUCTION 14**

<u>**CORPORATE EMPLOYEES AND AGENTS**[27]</u>

A corporation can act only through natural persons who are its agents or employees.  In general, a person who is an agent or employee of a corporation may bind the corporation only by acts and declarations made by that person while acting within the scope of the authority delegated to that person by the corporation, or within that person's duties as an employee of the corporation.

---

[27] 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 71.09 (4th ed. 1987) (simplified).

## PROPOSED INSTRUCTION 15

## <u>RICO ELEMENTS</u>

The plaintiffs have brought claims against the defendants for alleged violations of the Racketeer Influenced and Corrupt Organizations Act, commonly referred to as RICO.  The plaintiffs must establish by a preponderance of the evidence every element of a RICO claim.  You should consider each and every element of a RICO cause of action only in the precise way that I will define them in these instructions.  You must avoid confusing any of the elements of a RICO claim with your prior conceptions of the meaning of the terms that are used to describe the elements of a RICO claim.[28]

To establish that the defendant has violated RICO, the plaintiffs must prove each of the following five elements by a preponderance of the evidence:

(1)     That an enterprise existed;

(2)     That the defendants knowingly and willfully conducted or participated in the conduct of that enterprise;

(3)     though a pattern of

(4)     racketeering activity;[29] and

(5)     that, by reason thereof, the plaintiffs were injured in their business or property.[30]

---

[28] Fifth Circuit Pattern Jury Instructions – Civil § 8.1 (2006).

[29] 18 U.S.C. § 1962(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, (1985); *Libertad v. Welch*, 53 F.3d 428, 441 (1st Cir. 1995); *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196, 203 (D. Mass. 2004) (Saris, J.).

[30] 18 U.S.C. § 1964(c).

**PROPOSED INSTRUCTION 16**

**ENTERPRISE – ASSOCIATION-IN-FACT**

For purpose of RICO, an enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct.  The defendants are not themselves the "enterprise" under RICO.  The plaintiffs must prove the existence of an enterprise that has its own structure[31] and is distinct from the defendants themselves.[32]  Although RICO does not require any formal organization, the plaintiffs must prove that the enterprise existed in some coherent and cohesive form.[33]  To find that an enterprise existed, you must find that the alleged enterprise had an ongoing organization, formal or informal, and that its various associates functioned as a continuing unit for a common purpose.[34]  This means that although individuals may come and go, the enterprise must continue in an essentially unchanged form during substantially the entire period alleged in the lawsuit.[35]

"Common purpose" does not mean commonality of motive; it means coordinated activity in pursuit of a common objective.  As a result, similarity of goals and methods does not suffice to show that an enterprise exists; what is necessary is evidence of systemic linkage, such as overlapping leadership, structural or financial ties, or continuing coordination.[36]  In determined whether the plaintiffs have proven the existence of an enterprise, you may consider the following factors:

---

[31] *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009).

[32] *Libertad v. Welch*, 53 F.3d 428, 442 (1st Cir. 1995).

[33] *United States v. Nascimento*, 491 F.3d 25, 32 (1st Cir. 2007).

[34] *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Libertad v. Welch*, 53 F.3d 428, 441 (1st Cir. 1995); *see also* Ronald W. Eades, Jury Instructions in Commercial Litigation § 13.05.1 (2d ed. 2009); *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196, 204 (D. Mass. 2004) (Saris, J.).

[35] *United States v. Patrick*, 248 F.3d 11, 17 (1st Cir. 2001).

[36] *Libertad v. Welch*, 53 F.3d 428, 443 (1st Cir. 1995); *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 173 (D. Mass. 2003).

(1)     whether the associates have a common purpose;

(2)     whether there is systematic linkage, such as overlapping leadership, structured or financial ties or continuing coordination;

(3)     whether there is a common communication network for sharing information on a regular basis;

(4)     whether the associates hold meetings and sessions where important discussions take place;

(5)     whether the associates wear common colors, signs or insignia to make the group identifiable; and

(6)     whether the group conducted common training and instruction.[37]

Also, the enterprise element is different from the racketeering activity element.  Although the proof to establish these elements may overlap, proof that the defendants engaged in alleged racketeering activities with the assistance of other persons or entities does not establish the existence of an enterprise.  Rather, the enterprise must be an entity separate and apart from the pattern of racketeering activity in which it engages.[38]  An enterprise is chiefly distinguished from the pattern of racketeering activity by the fact that it possesses some goal or purpose more pervasive and more enduring than the instant gratification that can accrue from the successful completion of each particular wrongful act alleged.[39]

In this case, Plaintiffs allege that the defendants formed enterprises with various medical marketing firms with the goal and purpose of promoting Neurontin for uses for which it was not proven to be safe, medically efficacious, effective or useful.  The separate enterprises alleged by

---

[37] *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196, 203-04 (D. Mass. 2004) (Saris, J.); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 182 (D. Mass. 2003) (Saris, J.).

[38] *United States v. Turkette*, 452 U.S. 576, 583 (1981); *United States v. Cianci*, 378 F.3d 71, 81-82 (1st Cir. 2004); *United States v. Patrick*, 248 F.3d 11, 17 (1st Cir. 2001).

[39] *United States v. Nascimento*, 491 F.3d 25, 32 (1st Cir. 2007).

plaintiffs are the following:

(1)     the Cline Davis enterprise:

(2)     the Thompson Physicians World enterprise,

(3)     the Sudler & Hennessey enterprise,

(4)     the Medical Education Programs, Ltd. enterprise,

(5)     the Medical Educations Systems enterprise,

(6)     the Healthcare Communications Group enterprise,

(7)     the AMM/Adelphi enterprise.[40]

---

[40] *In re Neurontin Mktg., Sales Practices, & Products Liab. Litig.*, 433 F. Supp. 2d 172, 183 (D. Mass. 2006) (Saris, J.); Third Am. Coord. Compl. ¶ 177, ¶¶ 244-344.

## PROPOSED INSTRUCTION 17

### RACKETEERING ACTIVITY

If you find that plaintiffs have proven the existence of an enterprise, as I have defined that term, by a preponderance of the evidence, then you must determine whether plaintiffs have proven that the defendants knowingly and willfully conducted or participated in the conduct of that enterprise though a pattern of racketeering activity.

In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," a defendant must have some part in directing those affairs. A defendant is not liable under that RICO provision unless it participated in the operation or management of the enterprise itself.[41]

Two or more RICO predicate acts form a pattern if they are (1) related and (2) amount to or pose a threat of continued criminal activity.[42] Predicate acts are related for RICO purposes if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.[43] Continuity of the pattern of racketeering may be shown by either a series of related predicates extending over a substantial period of time, or a pattern of more limited duration where the racketeering acts pose a threat of continuing racketeering activity into the future.[44] An act is not transformed into a pattern of racketeering activity simply because it is implemented in several steps and involves a number of acts of communication.[45]

---

[41] *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).

[42] *United States v. Cianci*, 378 F.3d 71, 88 (1st Cir. 2004).

[43] *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989); *United States v. Cianci*, 378 F.3d 71, 88 (1st Cir. 2004); *Libertad v. Welch*, 53 F.3d 428, 444 (1st Cir. 1995).

[44] *United States v. Cianci*, 378 F.3d 71, 89 (1st Cir. 2004); *Libertad v. Welch*, 53 F.3d 428, 445 (1st Cir. 1995).

[45] *Bowdoin Constr. Corp. v. R.I. Hosp. Trust Nat'l Bank, N.A.*, 869 F. Supp. 1004, 1010-11 (D. Mass. 1994) (Saris, J.), *aff'd, Schultz v. R.I. Hosp. Trust Nat'l Bank, N.A.*, 94 F.3d 721 (1st Cir. 1996).

## PROPOSED INSTRUCTION 18

### MAIL AND WIRE FRAUD, 18 U.S.C. §§ 1341 AND 1343[46]

The predicate racketeering acts alleged by Plaintiffs are violations of federal statute that prohibit mail or wire fraud.

In order to prove mail or wire fraud, the plaintiffs must prove the following by a preponderance of the evidence:

First, a scheme to defraud or to obtain money or property by means of false or fraudulent pretenses;

Second, the defendant's knowing and willful participation in this scheme with the intent to defraud or to obtain money or property by means of false or fraudulent pretenses; and

Third, the use of the United States mail or interstate wire communications in furtherance of this scheme.

A scheme includes any plan, pattern or course of action.  The term "defraud" means to deprive another of something of value by means of deception or cheating.  A scheme to defraud is ordinarily accompanied by a desire or purpose to bring about some gain or benefit to oneself or some other person or by a desire or purpose to cause some loss to some person.  It includes a scheme to deprive another of the intangible right of honest services.

The term "false or fraudulent pretenses" means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth and that were made with the intent to defraud.  They include actual, direct false statements as well as half-truths and the knowing concealment of facts.

A "material" fact or matter is one that has a natural tendency to influence or be capable of influencing the decisionmaker to whom it was addressed.

---

[46] Pattern Criminal Jury Instructions for the District Courts of the First Circuit §§ 4.12, 4.13 (1997) (modified).

A defendant acts "knowingly" if it was conscious and aware of its actions, realized what it was doing or what was happening around it, and did not act because of ignorance, mistake or accident.  An act or failure to act is "willful" if done voluntarily and intentionally, and with the specific intent to do something the law forbids, or with specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.  Thus, if the defendants acted in good faith, they cannot be guilty of mail or wire fraud.  The burden to prove intent, as with all other elements, rests with the plaintiffs.

To act with "intent to defraud" means to act willfully and with the specific intent to deceive or cheat for the purpose of either causing some financial loss to another or bringing about some financial gain to oneself.  Thus, if the defendants acted in good faith, they cannot be guilty of mail or wire fraud.  The burden to prove intent, as with all other elements, rests with the plaintiffs.

Intent or knowledge may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind.  In determining what the defendants knew or intended at a particular time, you may consider any statements made or acts done or omitted by the defendants and all other facts and circumstances received in evidence that may aid in your determination of the defendants' knowledge or intent.  You may infer, but you certainly are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.  It is entirely up to you, however, to decide what facts are proven by the evidence received during this trial.

Also, there must be a connection between the racketeering acts that constitute a "pattern" and the alleged enterprise at issue.  Such a connection exists only if the plaintiffs show that the defendant was able to commit the predicate racketeering acts either by means or as a result of his involvement with the enterprise.  Alleged acts of wrongdoing which are not shown to bear a requisite relation to the enterprise are irrelevant to whether there was a pattern of RICO

activity.[47]  In other words, the question before you is not whether the defendants engaged in mail or wire fraud, but whether they engaged in a pattern of mail or wire fraud through the conduct of the enterprises found by you to exist.[48]

---

[47] *United States v. Nascimento*, 491 F.3d 25, 45-46 (1st Cir. 2007)

[48] *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985) (observing that "the essence of the [RICO] violation is the commission of those [predicate] acts in connection with the conduct of an enterprise"); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006).

## PROPOSED INSTRUCTION 19

## OFF-LABEL USE

In determining whether the plaintiffs have proven predicate acts of mail or wire fraud by a preponderance of the evidence, you are cautioned that they must prove acts of fraud, as I have defined that for you, and not merely off-label marketing.  The FDA specifically permits doctors to prescribe drugs for "off-label" use.  In other words, doctors are allowed to prescribe a drug for uses for which it has not been approved by the FDA.  A medical doctor is permitted to prescribe a medication for any indication if it is that doctor's medical judgment that doing so is in the best interests of the patient.[49]  Sometimes a drug is prescribed for a specific unlabeled use so often that doctors consider it a common practice.[50]  Even the fact that a drug is marketed for an off-label use does not mean that the marketing was fraudulent if the statements about the drug were truthful or made in good faith.[51]

You are also instructed that not all information disseminated about off-label uses of a drug is considered off-label promotion or marketing.  The FDA has recognized the need among health care professionals for peer review and dissemination of the latest significant scientific data and information on drugs in scientific journals.  As a result, information on unlabeled uses may be disseminated through the submission of original research to peer-reviewed publications.

---

[49] *See* 21 U.S.C. § 396 ("Nothing in [the Federal Food, Drug and Cosmetic Act] shall be construed to limit or interfere with the authority of a health care practitioner to prescribe or administer any legally marketed device to a patient for any condition or disease within a legitimate health care practitioner-patient relationship."); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001) ("[T]he 'FDA itself recogniz[es] the value and propriety of off-label use[.]'") (citation omitted); *see also Sita v. Danek Med., Inc.*, 43 F. Supp. 2d 245, 262-63 n.13 (E.D.N.Y. 1999); *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 692 (2d Cir. 1994).

[50] 

https://members.kaiserpermanente.org/kpweb/healthency.do?hwid=stu3083&sectionId=stu3083-sec&contextId=tn9511

[51] *In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 92 n.6 (D. Mass 2007) (Saris., J.); *see also* Mail and Wire Fraud Instruction, *supra*.

Pharmaceutical companies are also allowed to provide financial, logistical, and technical support for independent scientific or educational activity where off-labeled uses of a drug are discussed, so long as the content is controlled in content and format by the program provider and characterized by balance, objectivity, scientific rigor, and appropriate disclosure of financial support or conflicts of interests.

The FDA also allows companies to disseminate information on unlabeled uses in response to unsolicited requests for scientific information from health care professionals. Scientific departments within regulated companies generally maintain a large body of information on their products.   When health care professionals request such information, companies are allowed to provide responsive, nonpromotional, balanced, scientific information, which may include information on unapproved uses.   Companies may also disseminate independently prepared educational materials that contain product information.[52]

---

[52] *Citizen Petition Regarding the Food and Drug Administration's Policy on Promotion of Unapproved Uses of Approved Drugs and Devices*; Notice; Request for Comments, 59 Fed. Reg. 59820-01, 1994 WL 645925 (Nov. 18, 1994).

**PROPOSED INSTRUCTION 20**

**RICO CAUSATION**

In order to recover under RICO, the plaintiffs are required to show that the predicate acts alleged were both (1) a "but for" cause of their alleged injuries and (2) the proximate cause of their injuries.[53]

In order to show that the alleged predicate acts were a "but for" cause of their alleged injuries, the plaintiffs must prove that their injuries would not have occurred "but for" the alleged violations of RICO.[54]

Plaintiffs must also prove proximate cause by a preponderance of the evidence. Proximate cause requires some direct relation between the injury claimed and the injurious conduct alleged.  A link that is too remote, purely contingent, or indirect is insufficient.[55]  If the plaintiffs' injuries depend upon the contingent and independent actions of other persons, then the harm is not sufficiently direct and is not the proximate cause of the injuries claimed by the plaintiffs.[56]

In this case, the evidence that Plaintiffs will present to support their claims may vary based upon the off-label use at issue.  As a result, you will be asked to separately determine whether Plaintiffs have met their burden of proof of all of the elements of their claim, including causation, for each off-label use at issue.

---

[53] *Hemi Group, LLC v. City of New York*, ___ S. Ct. ___, 2010 WL 246151, at *5 (U.S. Jan. 25, 2010); *Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 268 (1992).

[54] *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 836 (1st Cir. 1990).

[55] *Hemi Group, LLC v. City of New York*, ___ S. Ct. ___, 2010 WL 246151, at *5 (U.S. Jan. 25, 2010).

[56] *Hemi Group, LLC v. City of New York*, ___ S. Ct. ___, 2010 WL 246151, at *9 (U.S. Jan. 25, 2010); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457-58 (2006); *Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 267-72 (1992).

**PROPOSED INSTRUCTION 21**

**RICO DAMAGES**

I now turn to the subject of damages.  You will only reach the issue of damages if you find that the defendants violated RICO and that such violation was a proximate cause of the plaintiffs' injuries.  You should not interpret the fact that I have given instructions about the plaintiffs' damages as an indication in any way that I believe that the plaintiffs should, or should not, win this case.  Consider damages only if necessary.  If the plaintiffs have proven their claim against the defendants by a preponderance of the evidence, you must determine the damages to which the plaintiffs are entitled.  It is your task first to decide whether the defendants are liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendants are liable and that the plaintiffs are entitled to recover money from the defendants.[57]

If you find that that the defendants' conduct of the affairs of the enterprise through the pattern of racketeering activity directly resulted in injury to the plaintiffs, then you must award damages to the plaintiffs.  In considering the issue of damages, if any, with respect to the RICO claims, you must assess the amount you find justified by a preponderance of the evidence as full, just and reasonable compensation for all of the damages to the plaintiffs in their business or property.  Damages may not be based on speculation because it is only actual damages (what the law calls compensatory damages) that you are to determine.[58]

In this case, the plaintiffs seek to recover the amount that they paid for Neurontin prescriptions that they allege that they would not have paid for absent the defendants' alleged RICO violations.  Thus, in order to recover, the plaintiffs must prove the difference between the

---

[57]*See* Fifth Circuit Pattern Jury Instructions No. 15.1 (2006); *see also* 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 106.02 (5th ed. 2000) (modified).

[58] *Cf.* Fifth Circuit Pattern Jury Instructions No. 8.1 (2006); Eleventh Circuit Pattern Jury Instructions: Civil Cases § 5.1 (2005).

amount that they paid for Neurontin prescriptions caused by the RICO violations found by you, if any,  and the amount that they would have paid for alternative drugs that would have provided at least the same benefit to the patients for who they would have been prescribed.  An alternative drug provides the same benefit at Neurontin if it as least as effective for the patient for whom it is prescribed, is as well tolerated by patient, with no more serious side effects than Neurontin.[59]

You must determine damages separately for each enterprise found by you and each off-label use at issue in this litigation.[60]

---

[59]   In *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003), the Second Circuit allowed the plaintiffs to survive a motion to dismiss by positing the a hypothetical where a defendant's drug was marketed as an advancement (safe, more effective) over alternatives that were "exactly as safe and effective" as the new drug.  *See id.* at 349-50.  This Court commented on the *Desiano* hypothetical when it denied Defendants' motion for summary judgment as to Kaiser, while granting it as to the other Coordinated TPPs.  *See In re Neurontin Mktg. & Sales Practices Litig.*, ___F. Supp. 2d___, 2010 WL 53568, at *11-*13 (D. Mass. Jan. 8, 2010).  The theory on which the plaintiffs' claims survived summary judgment means that they can recover only for those prescriptions caused by a RICO violation and which provided no additional benefit to patients over the plaintiffs' alternative drugs, either in terms of efficacy or toleration or side effects.

[60]   *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985) (observing that "the essence of the [RICO] violation is the commission of those [predicate] acts in connection with the conduct of an enterprise"); *accord Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006); *see also Interpool Ltd. v. Patterson*, No. 89 Civ. 8501, 1994 WL 665850, at *2 (S.D.N.Y. Nov. 28, 1994) (where the jury "made a separate finding as to the existence and amount of each type of damage sustained with respect to the activities of each alleged enterprise"); Fifth Circuit Pattern Jury Instructions – Civil, Suggested RICO Jury Interrogatories (2006).

## PROPOSED INSTRUCTION 22

## <u>RICO STATUTE OF LIMITATIONS</u>

A plaintiff seeking to recover under RICO must file suit within four years of the date when the plaintiff knew or should have known of its injury.  Discovery of the injury is what starts the clock, not discovery of the other elements of the plaintiffs' RICO claim or the occurrence of the last predicate act.[61]  In this case, the plaintiffs filed suit on February 1, 2005.  If the plaintiffs had actual knowledge of their alleged injuries prior to February 1, 2001, or sufficient facts regarding their alleged injuries were available to them to provoke a reasonable person in the plaintiffs' circumstances to inquire or investigate further prior to February 1, 2001, then their claims would be barred by the statute of limitations.  Plaintiffs are charged with the knowledge that an objective observer reasonably ought to have expected them to have.  If such an observer, aware of the depth of the information available and of the breadth of that information's circulation, would reasonably have expected someone in a potential plaintiffs' position to begin its inquiry, then the duty to inquire is triggered.[62]

[Plaintiffs allege that the running of the statute of limitations was suspended by the defendant's fraudulent concealment of their claim.[63]  This allegation requires the plaintiffs to prove (1) that the defendant, relying on the statute of limitations, acted to conceal facts related to its misconduct and (2) that the plaintiff failed to discover the misconduct despite acting with due

---

[61] *Rotella v. Wood*, 528 U.S. 549, 553, 555 (2000); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187-88 (1997); *Hodas v. Sherburne, Powers & Needham, P.C.*, 938 F. Supp. 60, 63 (D. Mass. 1996), *aff'd*, 114 F.3d 1169 (1st Cir. 1997).

[62] Rakes v. United States, 442 F.3d 7, 20 (1st Cir. 2006);

[63] The bracketed language is submitted conditionally; however, Defendants object to the issue of fraudulent concealment to the jury.  If, under the discovery rule, Plaintiffs failed to act with reasonable diligence, they cannot avoid a limitations bar by asserting fraudulent concealment.  As the First Circuit has stated:  "[A] plaintiff whose argument for delayed accrual under the discovery rule has failed because she has not diligently investigated her claim will never be able to successfully argue that the statute of limitations has been tolled under a fraudulent concealment theory." *Rakes v. United States*, 442 F.3d 7, 26 (1st Cir. 2006).

diligence.  If you find that plaintiffs were on notice of fact sufficient to trigger their duty of inquiry and that they failed to act with reasonable diligence, the statute of limitations still bars the plaintiffs' claims notwithstanding their allegations of fraudulent concealment.[64]  In addition, the mere assertion that fraud underlies a claim is insufficient to stop the statute of limitations from running.  Rather, there must be an effort to conceal the facts that might lead one to suspect anything.[65]]

---

[64] *Rakes v. United States*, 442 F.3d 7, 26 (1st Cir. 2006).

[65] *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-95 (1997); *Rakes v. United States*, 352 F. Supp. 2d 47, 82 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006); *Hodas v. Sherburne, Powers & Needham, P.C.*, 938 F. Supp. 60, 63 (D. Mass. 1996), *aff'd*, 114 F.3d 1169 (1st Cir. 1997).

## PROPOSED INSTRUCTION 23

## CALIFORNIA UNFAIR COMPETITION LAW

As to Neurontin prescriptions written in California, Plaintiffs also seek to recover under a California statute, known as the California Unfair Competition Law, that prohibits fraudulent business practices.  A business practice is "fraudulent" if "members of the public are likely deceived."[66]  In considering whether a representation was likely to mislead, you are to consider the audience to whom the misrepresentation was directed.  In this case, you are to consider whether a sophisticated insurer, with substantial resources and the ability to conduct its own research, was likely to be misled.[67]

The statute permits a person who has suffered injury in fact and has lost money or property as a result of the fraudulent business practice to recover, as restitution, any money or property that may have been acquired by means of such fraudulent business practice.  In order to recover under this statute, the plaintiffs must prove that they relied upon the defendants' alleged misrepresentations or nondisclosures.  Reliance is proven by showing that the defendants' misrepresentation or nondisclosure was an immediate cause of conduct by the plaintiffs that led to their injuries.  To show that the defendants' alleged misrepresentations were an immediate cause of their conduct, the plaintiffs must show that, in all reasonable probability, they would not have engaged in the conduct that caused their injury in the absence of the defendants' misrepresentations.

A plaintiff who seeks to recover under this statute based upon a defendant's failure to disclose information must show that the defendant was under a duty to disclose.  A failure to disclose a fact that one has no affirmative duty to disclose does not give rise to a violation of the

---

[66] Cal. Bus. & Prof. Code §§ 17200, 17203 & 17204 (West 2008); *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009); *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003).

[67] *See In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 97 (Cal. Ct. App. 2009).

statute.[68]

While the plaintiffs must show that the defendants' alleged misrepresentations were an immediate cause of the their injury-producing conduct, the plaintiffs need not demonstrate they were the only cause. It is not necessary that the plaintiffs' reliance upon the truth of the alleged fraudulent misrepresentations be the sole or even the predominant or decisive factor influencing their conduct. It is enough that the representations played a substantial part, and so had been a substantial factor, in influencing their decisions.

If you find that the plaintiffs have proven a violation of California's Unfair Competition Law, then you must determine the amount to be awarded the plaintiffs as restitution. In this case, restitution means the difference between the amount that they paid for Neurontin prescriptions in California caused by the defendants' violation of California's Unfair Competition Law, if any, and the amount that they would have paid for alternative drugs that would have provided at least the same benefit to the patients for who they would have been prescribed. An alternative drug provides the same benefit at Neurontin if it as least as effective for the patient for whom it is prescribed, is as well tolerated by patient, with no more serious side effects than Neurontin.[69]

---

[68] *Buller v. Sutter Health*, 74 Cal. Rptr. 3d 47, 52 (Cal. App. 2008).

[69] *See In Re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 100-01 (Cal. App. 2009).

**PROPOSED INSTRUCTION 24**

**CALIFORNIA UNFAIR COMPETITION LAW:  STATUTE OF LIMITATIONS**

A plaintiff seeking to recover under California's Unfair Competition Law must file suit within four years of when its cause of action accrued.[70]  A cause of action accrues and the statute of limitation begins to run when a suit may be maintained.  Ordinarily this is when the wrongful act is done and the obligation or the liability arises, but it does not accrue until the party owning it is entitled to begin and prosecute an action thereon.  In other words, a cause of action accrues upon the occurrence of the last element essential to the cause of action.[71]  In this case, plaintiffs' action accrued when they first sustained injury.  Because the injuries alleged by plaintiffs' in this action first occurred more than four years before suit was filed, the plaintiffs' claims are barred unless they can show that the defendants did or said something that caused the plaintiffs to delay filing the lawsuit.  In order to establish the right to proceed, the plaintiffs must prove all of the following:

(1)     That the defendants said or did something that caused the plaintiffs to believe that it would not be necessary to file a lawsuit;

(2)     That the plaintiffs relied on the defendant's conduct and therefore did not file the lawsuit within the time otherwise required;

(3)     That a reasonable person in the plaintiffs' position would have relied on the defendants' conduct;

(4)     That after the limitation period had expired, the defendants' representations by words or conduct proved to not be true; and

(5)     That the plaintiffs' proceeded diligently to file suit once they discovered the actual facts.

---

[70] Cal. Bus. & Prof. Code § 17208; *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 117 Cal. Rptr. 331, 335 (Ct. App. 2002).

[71] *Howard Jarvis Taxpayers Assoc. v. La Habra*, 23 P.2d 601, 604 (Cal. 2001).

36

It is not necessary that the defendants have acted in bad faith or intended to mislead the plaintiffs.[72]

---

[72] Judicial Council Of California Civil Jury Instructions No. 456.

## PROPOSED INSTRUCTION 25

## <u>COLORADO CONSUMER PROTECTION ACT</u>

As to Neurontin prescriptions written in Colorado, Plaintiffs also seek to recover damages under the Colorado Consumer Protection Act.  In order to recover under this statute, Plaintiffs must prove, by a preponderance of the evidence:

    (1)     that the defendant engaged in an unfair or deceptive trade practice;

    (2)     that the challenged practice occurred in the course of defendant's business, vocation, or occupation;

    (3)     that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;

    (4)     that the plaintiff suffered injury in fact to a legally protected interest; and

    (5)     that the challenged practice caused the plaintiff's injury.

A deceptive trade practice requires a false statement of fact that either induces the recipient to act or has the capacity to deceive the recipient.  A false representation must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers.

Plaintiffs must also show that the defendant acted "knowingly"; that is, that the defendant made a misrepresentation with knowledge of its untruth, or recklessly and willfully without regard to its consequences, and with an intent to mislead and deceive the plaintiff.[73]

---

[73] *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-48 (Colo. 2003).

## PROPOSED INSTRUCTION 26

## <u>COLORADO CONSUMER PROTECTION ACT:  STATUTE OF LIMITATIONS</u>

A plaintiff seeking to recover under the Colorado Consumer Protection Act must file suit "within three years after the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred or within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice."[74]   The limitations period may be extended for one year "if the plaintiff proves that failure to timely commence the action was caused by the defendant engaging in conduct calculated to induce the plaintiff to refrain from or postpone the commencement of the action."[75]

---

[74] Colo. Rev. Stat. Ann. § 6-1-115 (1992); *Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274, 281 (Colo. App. 1993); *Cahill v. Am. Family Mut. Ins. Co.*, No. 07-cv-01910, 2009 WL 973565, at *8 (D. Colo. Apr 9, 2009).

[75] Colo. Rev. Stat. Ann. § 6-1-115 (1992).

**PROPOSED INSTRUCTION 27**

**VIRGINIA CONSUMER PROTECTION ACT**

As to Neurontin prescriptions written in Virginia, Plaintiffs also seek to recover damages under the Virginia Consumer Protection Act.  To prevail on a claim under the Virginia Consumer Protection Act, the plaintiffs must prove (1) fraud, (2) by a supplier, (3) in a consumer transaction.[76]  To prove fraud, the plaintiffs must prove that the defendants intentionally and knowingly made a false or fraudulent representation of a material fact with the intent to mislead.[77]  Plaintiffs may only prove misrepresentation by nondisclosure by showing that the defendants made a knowing and deliberate decision not to disclose a material fact.[78]  The plaintiffs must prove that the defendants acted with an intent to deceive or otherwise mislead; that is, with fraudulent intent, as to a material fact on which the plaintiffs relied to their detriment and which resulted in measurable damages.  In order for a claimant to recover for a violation of the Virginia Consumer Protection Act, the plaintiffs' loss must be the result of, that is caused by, the violation.[79]

---

[76] *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 456 (E.D. Va. 2009).

[77] *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 717 (Va. 2001); *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 346 (Va. 1988).

[78] *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 718 (Va. 2001).

[79] *Cooper v. GGGR Invs., LLC*, 334 B.R. 179, 188 (E.D. Va. 2005); *Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712, 722 (E.D. Va. 2005); *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 346 (Va. 1988).

**PROPOSED INSTRUCTION 28**

**VIRGINIA CONSUMER PROTECTION ACT:  STATUTE OF LIMITATIONS**

A plaintiff seeking to recover under the Virginia Consumer Protection Act must file suit within two years from when the misrepresentation, deception or fraud is "discovered or by the exercise of due diligence reasonably should have been discovered."[80]  The burden is on the plaintiffs to prove that, despite the exercise of due diligence, they could not have discovered the fraud.  *Schmidt*, 661 S.E.2d at 839.  In other words, Defendants do not need to show the lack of due diligence.  *Id.*

---

[80] Va. Code Ann. § 59.1-204.1(A) (West 2001 & Supp. 2009); *id.* § 8.01-249(1) (West 2001 & Supp. 2009); *see also Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 299 (4th Cir. 2003); *Schmidt v. Household Fin. Corp.*, 661 S.E.2d 834, 838-39 (Va. 2008).

## PROPOSED INSTRUCTION 29

## <u>WASHINGTON CONSUMER PROTECTION ACT</u>

As to Neurontin prescriptions written in Washington, Plaintiffs also seek to recover damages under the Washington Consumer Protection Act.  To prevail on a claim under the Washington Consumer Protection Act, Plaintiffs must show: "(1) an unfair or deceptive practice; (2) in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the party in his business or property; and (5) which injury is causally linked to the unfair or deceptive act."[81]  To prove deception, the plaintiffs must show that the defendants misrepresented something of a material importance.[82]  The plaintiffs must also demonstrate a causal link between the alleged misrepresentation and their injury.  In other words, the plaintiffs must establish that "but for" the defendants' unfair or deceptive practice, the plaintiffs would not suffered an injury.[83]

---

[81] *Shields v. Enter. Leasing Co.*, 161 P.3d 1068, 1074 (Wash. Ct. App. 2007); 6A Wash. Prac., *Wash. Pattern Jury Instr. Civ.*, WPI 310.04 & 310.07 (5th ed. 2009).

[82] *Hiner v. Bridgestone/Firestone, Inc.*, 959 P.2d 1158, 1163 (Wash. Ct. App. 1998), *rev'd on other grounds*, 978 P.2d 505 (Wash. 1999).

[83] *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 22 (Wash. 2007).

**PROPOSED INSTRUCTION 30**

**WASHINGTON CONSUMER PROTECTION ACT:  STATUTE OF LIMITATIONS**

A plaintiff seeking to recover under the Washington Consumer Protection Act must file suit "within four years after the cause of action accrues."[84]  An action accrues upon discovery of the facts constituting the fraud.  "Knowledge will be inferred if the party in due diligence could have discovered the fraud."[85]

---

[84] Wash. Rev. Code Ann. § 19.86.120 (West 1999).

[85] *Reeves v. Teuscher*, 881 F.2d 1495, 1501 (9th Cir. 1989).

## PROPOSED INSTRUCTION 31

## <u>DUTY TO DELIBERATE</u>

I come now to the last part of the instructions, the rules for your deliberations.  When you retire you will discuss the case with the other jurors to reach agreement if you can do so.  You shall permit your foreperson to preside over your deliberations, and your foreperson will speak for you here in court.  Your verdict must be unanimous.[86]

Your verdict must be based solely on the evidence and on the law as I have given it to you in these instructions.  However, nothing that I have said or done is intended to suggest what your verdict should be – that is entirely for you to decide.[87]

Each of you must decide the case for yourself, but you should do so only after considering all the evidence, discussing it fully with the other jurors, and listening to the views of the other jurors.  Do not be afraid to change your opinion if you think you are wrong.[88]  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.[89]

When you retire to the jury room to deliberate, you may take with you these instructions and the exhibits that the Court has admitted into evidence.  You will also be given a verdict form.  The verdict form is simply the written notice of the decision that you reach in this case.  After you have reached unanimous agreement on a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the jury officer outside your door that you are

---

[86] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 6.01 (1997).

[87] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 6.02 (1997).

[88] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 6.03  (1997).

[89] 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* §§ 106.01 & 103.50 (4th ed. 1987) (modified).

ready to return to the courtroom.  After you return to the courtroom, your foreperson will deliver the completed verdict form as directed in open court.[90]

   If it becomes necessary during your deliberations to communicate with me, you may send a note through the jury officer signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me on anything concerning the case except by a signed writing, and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.  If you send out a question, I will consult with the parties as promptly as possible before answering it, which may take some time.  You may continue with your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.[91]

   After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

---

[90] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 6.04 (1997).

[91] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 6.05 (1997).

45