UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:   NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin |

## DEFENDANTS' TRIAL BRIEF

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this Trial Brief for the Court's consideration and in further support of their proposed jury instructions.  Defendants incorporate by reference Defendants' Statement of the Evidence set forth in the parties' Joint Pre-Trial Memorandum submitted pursuant to Local Rule 16.5.[1]

## ARGUMENT

### I.      Absent Injury And Causation, Plaintiffs Lack Standing To Sue

As set forth more fully below, injury and causation are essential elements of each of Plaintiffs' actionable claims.[2]  Indeed, an "'injury in fact'" and "a 'causal connection between the injury and the conduct complained of'" are threshold constitutional requirements of federal jurisdiction over cases and controversies.  *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st

---

[1] The legal issues in this action have been extensively briefed.  Defendants incorporate by reference their prior briefs submitted to the Court, including Defendants' Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure, together with supporting memoranda [1689, 1691, 1785, 2205]; Defendants Motion in Limine to Exclude the Testimony of Meredith Rosenthal and supporting memoranda [2316, 2317, 2439-2], Defendants' Motion in Limine to Exclude the Testimony of Raymond S. Hartman and supporting memoranda [2319, 2320, 2439-2], and all other motions and memoranda listed by Defendants' in the Joint Pre-Trial Memorandum.  Defendants also incorporate their Special Requests for Jury Instructions and all authorities cited therein.

[2] *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (holding that a RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation"); Cal. Bus. & Prof. Code § 17204 (West 2008) (requiring proof that plaintiff "lost money or property as a result of the unfair competition").

Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).     And, as the Supreme Court recently reiterated, RICO standing requires evidence of a direct injury proximately caused by the alleged RICO violation.  *See Hemi Group, LLC v. City of New York*, ___ S. Ct. ____, 2010 WL 246151, at *5 (Jan. 25, 2010).  Concomitant with the constitutional requirement of causation, Plaintiffs must show reliance to establish standing to sue under the Racketeer Influenced and Corrupt Organizations Act ("RICO") [3] and California's Unfair Competition Law,[4] for, as recently observed by the California Supreme Court, "there is no doubt that reliance is the causal mechanism of fraud."  *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009); *see also Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2144 (2008) (observing that, under RICO, "[i]n most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation").

For the reasons discussed *infra* in section II.C, Plaintiffs will be unable to prove a sufficiently direct injury to establish either Article III or RICO standing.

## II.     Plaintiffs Have The Burden Of Proving All Elements Required By RICO

### A.     Plaintiffs Must Prove a RICO Enterprise

In order to prevail at trial, Plaintiffs must first prove the existence of a RICO enterprise. This Court has previously dismissed all of Plaintiffs' alleged enterprises save for a few, unrelated sub-enterprises, comprised of Pfizer and individual medical marketing firms.[5]   Plaintiffs rely upon an "association-in-fact" theory of enterprise, which requires "evidence of an ongoing

---

[3] 18 U.S.C. §§ 1961, *et seq.*

[4] Cal. Bus. & Prof. Code §§ 17200, *et seq.*  Plaintiffs also seek to recover under various other state laws.  As discussed, *infra*, Defendants deny that Plaintiffs has standing to assert claims on behalf of their subsidiaries in states other than California.  Regardless, Plaintiffs cannot establish injury and causation under any theory without evidence of reliance.  *See, e.g.*, *Cooper v. GGGR Invs., LLC*, 334 B.R. 179, 188 (E.D. Va. 2005) ("[O]f course, this causal connection cannot exist without the consumer's reliance on the misrepresentation.")

[5] These consist of the Cline Davis Sub-Enterprise, the Physicians' World Sub-Enterprise, the Sudler & Hennessey Sub-Enterprise, the MEDED/MEDCON Sub-Enterprise, the MES Sub-Enterprise, the HCC Sub-Enterprise, the AMM/Adelphi Sub-Enterprise, and the Publication/Marketing/Physician Sub-Enterprise.  *See In re Neurontin Mktg., Sales Practices & Prods.*, 433 F. Supp. 2d 172, 183 (D. Mass. 2006); Third Am. Coord. Compl. ¶ 177, ¶¶ 244-344.

organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The plaintiffs must prove the existence of an enterprise that has its own structure and is distinct from the defendants themselves. *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009); *Libertad v. Welch*, 53 F.3d 428, 442 (1st Cir. 1995). Although RICO does not require any formal organization, the plaintiffs must prove that the enterprise existed in some coherent and cohesive form. *See United States v. Nascimento*, 491 F.3d 25, 32 (1st Cir. 2007). Plaintiffs must establish the existence of "some sort of framework for making or carrying out decisions." *United States v. Pelullo*, 964 F.2d 193, 211 (3d Cir. 1992).

Additionally, the members of an association-in-fact must be shown to share a "common purpose." *See Turkette*, 452 U.S. at 583. A "similarity of goals and methods does not suffice to show that an enterprise exists." *Libertad*, 53 F.3d at 443. Plaintiffs must do more than simply prove that each alleged enterprise actively sought to mislead physicians to prescribe Neurontin for off-label uses. Rather, they must prove that Pfizer and the individual medical marketing firms formed "tactical plans" through regular communication. *See Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993) (plaintiffs must "show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact").

Plaintiffs must also present evidence of a systematic linkage among the components of the alleged enterprise, "such as overlapping, leadership, structural or financial ties, or continuing coordination." *Welch*, 53 F.3d at 443. Plaintiffs must prove the associated groups "constitute a larger unit, over and above their separate structures and operations." *Id.* at 442.

Also, the enterprise element is different from the racketeering activity element. Although the proof to establish these elements may overlap, proof that the defendants engaged in alleged racketeering activities with the assistance of other persons or entities does not establish the existence of an enterprise. Rather, the enterprise must be an entity separate and apart from the pattern of racketeering activity in which it engages. *United States v. Turkette*, 452 U.S. 576, 583 (1981); *United States v. Cianci*, 378 F.3d 71, 81-82 (1st Cir. 2004); *United States v. Patrick*, 248

F.3d 11, 17 (1st Cir. 2001).   An enterprise is chiefly distinguished from the pattern of racketeering activity by the fact that it possesses some goal or purpose more pervasive and more enduring than the instant gratification that can accrue from the successful completion of each particular wrongful act alleged.  *United States v. Nascimento*, 491 F.3d 25, 32 (1st Cir. 2007).

### B.      Plaintiffs Must Prove a Pattern of Racketeering Activity

To prove a pattern of racketeering activity, Plaintiffs must first present evidence of two or more predicate acts, such as mail fraud or wire fraud, that are related and that amount to, or pose, a threat of continued activity.  *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Plaintiffs must prove that predicate acts "'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"  *Id.* at 240 (citation omitted).  To prove predicate acts of mail or wire fraud, Plaintiffs must show "(1) a scheme to defraud based on false pretenses; (2) the defendant's knowing and willing participation in the scheme with the specific intent to defraud; and (3) the use of interstate mail or wire communications in furtherance of the scheme." *Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 9-10 (1st Cir. 2007).   Generally, a failure to disclose is actionable only where there is a duty to disclose or where an affirmative, true statement "is made misleading by a significant omission."  *See Bonilla v. Volvo Car Corp.*, 150 F.3d 62, 69-70 (1st Cir. 1998).  Although the First Circuit has suggested that a defendant's failure to disclose may be actionable as mail fraud without a duty to disclose if the defendant knows and intends that the plaintiff will be deceived by his silence, *id.* at 70, it is nevertheless well-established that "[a] defendant's failure to disclose information, without more, cannot make out a violation of the mail and wire fraud statutes."  *Sanchez*, 492 F.3d at 10.

Plaintiffs must further demonstrate a nexus between the predicate acts that constitute a pattern and the alleged enterprise at issue.  Such a nexus exists only if a plaintiff shows that the defendant was "able to commit the predicate racketeering acts either by means of or as a result of his involvement with the enterprise."  *United States v. Nascimento*, 491 F.3d 25, 45 (1st Cir. 2007) (citing *United States v. Marino*, 277 F.3d 11, 27 (1st Cir. 2002)).   Alleged acts of

4

wrongdoing which are not shown to bear a requisite relation to the alleged enterprise are irrelevant as to whether there was a pattern of racketeering activity. *Id.*

### C. Plaintiffs Must Prove a Direct Causal Relation Between Pfizer's Alleged Conduct and Their Harm

RICO causation requires evidence of both "but for" causation and proximate cause. *Hemi Group*, 2010 WL 246151, at *5; *see also In re Neurontin Mktg. & Sales Practices. Litig.*, ___ F. Supp. 2d ___, 2010 WL 53568, at *8 (D. Mass. Jan. 8, 2010). The former requires Plaintiffs to prove that their injuries would not have occurred "but for" the alleged RICO violations. *See Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 836 (1st Cir. 1990). The latter, proximate cause, requires "'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Group*, 2010 WL 246151, at *5. "A link that is too remote, purely contingent, or indirect is insufficient." *Id.* (internal quotation marks and citation omitted).

Initially, "a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud cannot prevail "without showing that someone relied on the defendant's misrepresentations." *In re Neurontin*, 2010 WL 53568, at *8. Plaintiffs have alleged two theories of reliance: (1) that Plaintiffs themselves "relied on a misrepresentation or omission" that caused them damages; or (2) that prescribing physicians wrote off-label Neurontin prescriptions in reliance on Pfizer's misrepresentations. Regarding the second, this Court has held that Plaintiffs cannot prove the reliance of prescribing physicians through aggregate evidence, such as the proffered testimony of Prof. Rosenthal. *In re Neurontin*, 2010 WL 53568, at *10 ("Plaintiffs cannot rely solely on Prof. Rosenthal's report as the silver bullet to establish causation."). Indeed, "trial courts have almost uniformly held that in a misrepresentation action involving fraudulent marketing of direct claims to doctors, a plaintiff TPP or class must prove through *individualized evidence* that the misrepresentation caused specific physicians, TPPs, or consumers to rely on the fraud, and *cannot rely on aggregate or statistical proof*." *Id.* at *9 (emphasis added).

Plaintiffs survived summary judgment based upon their allegations of direct reliance. *See Id.* at *11. However, even under their "direct reliance" theory, Plaintiffs cannot recover absent

evidence that they paid more for prescriptions than they would have in their hypothetical "but for" world.  To prove "but for" causation, therefore, Plaintiffs must prove for each off-label prescription included in their damages estimate that, in lieu of Neurontin, physicians would have prescribed an alternative drug that was (1) less expensive than Neurontin, (2) as effective as Neurontin, and (3) as well tolerated that specific patient, with no greater side effects than Neurontin.  *See id.* at \*13 (holding that Plaintiffs have the burden of proving "that Neurontin was ineffective for the off-label indications" or "that there were 'cheaper and more optimal' alternatives to Neurontin" for a given indication (citation omitted)); *see also Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, No. 06-3044, 2008 WL 5413105, at \*8 (D.N.J. Dec. 23, 2008) (holding that RICO claims fail absent proof "that Defendants' drug was on some level 'inferior and therefore "worth less" than what Plaintiffs paid for it'" (citation omitted)).[6]

However, as the Supreme Court recently reiterated in *Hemi Group*, "but for" causation is not enough – Plaintiffs must prove proximate cause.  And Plaintiffs cannot prove a direct relation where "[m]ultiple steps . . . separate the alleged fraud from the asserted injury," 2010 WL 246151, at \*9, for "'[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step.'"  *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 271-72 (1992) (citations omitted); *see also Hemi Group*, 2010 WL 246151, at \*6 (holding that a "theory of causation [that] requires us to move well beyond the first step . . . cannot meet RICO's direct relationship requirement").  Nor may Plaintiffs prove a direct injury with a theory of causation that depends on "separate actions carried out by separate parties."  *Hemi Group*, 2010 WL 246151, at \*7 (emphasis omitted).

Here, Plaintiffs' "direct reliance" theory cannot be divorced from the actions of individual physicians.  That is, even if Plaintiffs could prove that they expanded formulary

---

[6] These are necessary, but not sufficient, elements of Plaintiffs' claims.  For example, Pfizer does not agree that, where a patient received a benefit from Neurontin, Plaintiffs are entitled to recover for that prescription merely because the patient might also have benefited from a cheaper drug.  Nonetheless, as Plaintiffs have framed their claim, they must, at the least, offer evidence that supports their cheaper, alternative theory.

access to Neurontin on reliance upon on alleged misrepresentations by Pfizer, Plaintiffs would still have to show that, as a result, prescribing physicians wrote off-label Neurontin prescriptions that would not have been reimbursed by Plaintiffs but for the alleged misrepresentations. *See In re Rezulin Prod. Liab. Litig.*, 210 F.R.D. 61, 67 (S.D.N.Y. 2002) (requiring TPPs to prove that "each doctor's decision to prescribe [the medication] would have been different had defendants issued what would have been proper [representations]").

Thus, Plaintiffs' theory of causation still depends on the actions of separate parties. Accordingly, courts have recognized that RICO claims by TPPs, just like those presented by Plaintiffs here, lack direct causation precisely because they implicate the independent actions and circumstances of the prescribing physician and the patient:

> [I]n the context of this case, establishing that Plaintiffs' injuries were caused by Defendants' misconduct would *require an inquiry into the specifics of each doctor-patient relationship implicated by the lawsuit*. In other words, each physician who prescribed [the medication at issue] to an individual consumer or health and welfare fund member would have to be questioned as to whether his or her independent medical judgment was influenced by Defendants' misrepresentations, and to what extent. Furthermore, . . . this individualized inquiry would likely have to be conducted with regard to *each consumer purchase transaction or third-party reimbursement payment made over the last approximately ten years*. This is precisely the type of "intricate, uncertain inquir[y]" the *Holmes* Court sought to prevent.

*Ironworkers Local Union No. 68 v. AstraZeneca Pharms. LP*, 585 F. Supp. 2d 1339, 1344 (M.D. Fla. 2008) (emphasis added) (citation omitted).[7]

Moreover, as in *Ironworkers*, Plaintiffs' theory of causation is "even further attenuated" because "they continued to pay for [Neurontin] even after Defendants' alleged misconduct was uncovered."  585 F. Supp. 2d at 1345.  In fact, these theories of causation are so attenuated and speculative that they fail not only to establish causation under RICO, but also to establish Article III standing.  *See So. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08

---

[7] *Accord, e.g.*, *Southeast Laborers Health & Welfare Fund v. Bayer*, 655 F. Supp. 2d 1270, 1281 (S.D. Fla. 2009); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1053 (N.D. Cal. 2009); *Janssen*, 2008 WL 5413105, at *9; *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 484 F. Supp. 2d 973, 984 (D. Minn. 2007).

CV 5175, 2009 WL 3151807, at *6-7 (S.D.N.Y. Sept. 30, 2009) (finding that claims by TPP against Pfizer seeking reimbursement for money paid on Lipitor failed to establish either RICO causation or Article III standing).

Finally, Plaintiffs may not circumvent the direct relationship requirement by claiming that the harms from Pfizer's alleged scheme were foreseeable or intended.  In *Hemi Group*, the Supreme Court expressly rejected the suggestion that "RICO's proximate cause requirement turn[s] on foreseeability, rather than on the existence of a sufficiently 'direct relationship' between the fraud and the harm."  *Hemi Group*, 2010 WL 246151, at *7.  Thus, even where the harm is "'a consequence that [the defendant] intended, indeed desired; and it falls well within the set of risks that Congress sought to prevent,'" there is no proximate causation *unless the plaintiff can prove a direct relationship.  Id.* at *7 (citation omitted); *see also Southeast Laborers Health & Welfare Fund v. Bayer*, 655 F. Supp. 2d 1270, 1283 (S.D. Fla. 2009) ("Cases where there is specific intent to drive a market up or down are not exempt from RICO's proximate cause analysis – nor do they escape the policy considerations inherent in such proximate cause analysis.").  Nor can Plaintiffs evade the direct relation requirement through claims "that the fraudulent scheme embraced all those indirectly harmed by the alleged conduct," because this would reduce the direct injury requirement to a "mere pleading rule."  *Hemi Group*, 2010 WL 246151, at *8.

Beyond the fact that Plaintiffs cannot show direct injury, for the reasons set forth in Defendants' Motion in Limine to Exclude the Testimony of Meredith Rosenthal and supporting memoranda [2316, 2317, 2439-2], Plaintiffs' evidence of causation relies upon expert testimony that fails to meet the dictates of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993) and, therefore, cannot satisfy the Plaintiffs' burden of proof.   Plaintiffs assert that they can rely upon Prof. Rosenthal plus other evidence.  (Pl. Mem. in Opp. to M. to Exclude Rosenthal & Hartman [2419] at 2.)[8]  The problem is that there is no way to put the different

---

[8] Defendants do not agree that aggregate evidence can satisfy any part of Plaintiffs' burden of proof, whether such aggregate evidence takes the form of Prof. Rosenthal's statistical model or the results

*(cont'd)*

pieces together.  Kaiser asserts that, after its DUAT initiative, Neurontin utilization went down by 34 percent.  But Prof. Rosenthal does not consider that statistic at all and she certainly did not perform any kind of causation analysis for it.

The evidence will show that the DUAT Initiative did not represent a change in either Kaiser's formulary restrictions or prescribing guidelines.  When formulary restrictions were removed for Neurontin, Kaiser's guidelines recommended Neurontin as a second line treatment for neuropathic pain, the same recommendation as in the DUAT initiative.  Moreover, as this statistic was neither relied upon nor addressed by any of Kaiser's experts it has not been subject to any admissible causation analysis.  Thus, Plaintiffs' experts cannot exclude alternative causes for this reduction, including whether it represents anything more than physicians bowing to pressure from Kaiser to cut costs.  It does not necessitate the conclusion that prior prescriptions were proximately caused by fraudulent promotion to unknown physicians

Finally, even if Plaintiffs could meet their burden of proof with Prof. Rosenthal's testimony "plus" other evidence, the only "plus" they have offered is the DUAT Initiative.  The evidence at trial will show that the DUAT initiative was limited to neuropathic pain.  As a result, it cannot satisfy Plaintiffs' burden as to any other condition.  Plaintiffs have proffered no comparable evidence for any of the other conditions at issue.

## III. Plaintiffs Have The Burden Of Proving All Elements Required By California's UCL

### A. The UCL Applies Only To Claims Arising In California

Under Massachusetts choice-of-law principles, the UCL governs Plaintiffs' claims only to the extent that they relate to alleged misrepresentations relied on by Kaiser P&T Committees or physicians in California.  Massachusetts applies a "functional approach" to choice-of-law questions, which is "explicitly guided by the Restatement (Second) of Conflict of Laws (1971)."

_____

*(cont'd from previous page)*
of Plaintiffs' DUAT initiative.  Instead, the material, operative fact necessary to make Plaintiffs' claim is whether each individual physician prescribed Neurontin off-label because of fraudulent representations made to them about Neurontin by Defendants.  This can only be determined on a physician and patient specific basis.

*Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 74 (1st Cir. 2006) (citations omitted).  "Section 148 of the Restatement spells out the choice of law analysis for misrepresentation claims, indicating that the law of the state where the representations were made, received, and relied upon should govern unless another state has a closer connection to the parties or the occurrence."  *First Marblehead Corp. v. House*, 473 F.3d 1, 9 (1st Cir. 2006); *see* Restatement (Second) of Conflict of Laws § 148(1) (1971).  Thus, "[u]nder the choice of law rules in Massachusetts for fraud and misrepresentation, the law of the state in which a plaintiff took action in reliance on a defendant's representations applies."  *S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 93 (D. Mass 2007).[9]  Moreover, "because state consumer protection laws are intended to protect consumers," the laws of the home states will govern the actions of consumers in those states.  *Southern States Police*, 241 F.R.D. at 93.  Accordingly, under Massachusetts' choice-of-law principles, California consumer protection law applies only to alleged misrepresentations relied upon in California by Kaiser P&T Committees and physicians.

In addition, California law specifically prohibits applying the UCL to conduct taking place outside of California.  California's "presumption against the extraterritorial application of its statutes" is well established.  *Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005).  California courts have repeatedly held that the UCL does not apply to conduct occurring outside of California.  *See id.* (dismissing UCL claims of Canadian firm against California competitor because "the specific misconduct identified . . . occurred in Chicago, Illinois – clearly outside the purview of the UCL"); *Van Slyke v. Capital One Bank*, No. C 07-00671, 2007 WL 3343943, at *14 (N.D. Cal. Nov. 7, 2007) ("California courts have been highly critical of attempts to apply the [UCL] outside California borders for transactions that do not affect California residents and did not take place within the state.").  Indeed, applying the

---

[9] *See also In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 82-83 (D. Mass. 2005) (Saris, J.) (holding that under section 148, the "most significant factor is where the plaintiff acted in reliance on a defendant's representation").

UCL to conduct outside California, such as the activities of Kaiser entities or regional committees and prescribing physicians in other states, would not only offend California's presumption against extraterritoriality, but would also violate due process protections. *See Tidenberg v. Bidz.com, Inc.*, No. CV08-5553, 2009 WL 605249, at *4-5 (C.D. Cal. Mar. 4, 2009); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822 (1985). Thus, the jury should be instructed to apply the UCL only to Plaintiffs' claims concerning prescriptions written in California.

### B.     Plaintiffs Must Prove that Representations by Pfizer Were "Likely to Deceive" a Reasonable TPP

The UCL permits recovery for Plaintiffs who have lost money or property as a result of an unlawful, unfair, or fraudulent act or practice. *See* Cal. Bus. & Prof. Code §§ 17200, 17204 (West 2008); *see also In re Tobacco II*, 207 P.3d at 29-30.[10] To recover under the "fraudulent" prong of the UCL, the plaintiff must show that the allegedly wrongful practice is one by which "'members of the public are likely to be deceived.'" *In re Tobacco II*, 207 P.3d at 29 (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002)). But if, as here, the audience targeted by the alleged wrongful conduct bears, on average, a higher level of sophistication than the general consuming public, whether the representation in question is "deceptive" is measured against its likelihood to deceive that more sophisticated group.[11] Thus, Plaintiffs must show "that it is probable that a significant portion . . . of *targeted consumers*, acting reasonably in the

---

[10] Plaintiffs cannot avoid their burden of proof as to any of their UCL claims by describing their claim as one for unjust enrichment. California courts have repeatedly held that unjust enrichment is not a separate cause of action under California law. *See, e.g., McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 254 (Ct. App. 2006); *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Ct. App. 2003). Likewise, California courts have also made clear that plaintiffs cannot avoid the restrictions on recovery under the UCL by re-characterizing their claim as one for unjust enrichment. *See Madrid v. Perot Sys. Corp.*, 30 Cal. Rptr. 3d 210, 221 (Ct. App. 2005).

[11] *Compare, e.g., Chern v. Bank of America*, 544 P.2d 1310, 1316 (Cal. 1976) (finding that practice of quoting a per annum rate of interest computed on the basis of a 360-day year was likely to deceive a bank's potential customers), *with South Bay Chevrolet v. General Motors Acceptance Corp.*, 85 Cal. Rptr. 2d 301, 314 (1999) (finding similar method to calculate interest on loans to automobile dealerships not a fraudulent practice because auto dealership was financially sophisticated).

circumstances, could be misled." *Lavie v. Proctor & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Ct. App. 2003) (emphasis added); *see also In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 97 (Ct. App. 2009) (affirming denial of certification to class of TPPs and noting that "in considering whether the representation was likely to mislead, we consider the audience to whom the misrepresentation was directed").

Here, Kaiser asserts that it directly relied upon alleged misrepresentations in making formulary decisions.  As Kaiser is one of the largest health maintenance organizations in the country, the factfinder may find that the conduct alleged by Plaintiffs was "likely to deceive" only if "it is probable that a significant portion of the . . . targeted consumers" – sophisticated third party payors such as Kaiser – "acting reasonably in the circumstances, could be misled." *Lavie*, 129 Cal. Rptr. 2d at 495.  Indeed, the California Court of Appeal has stated as much with respect to similar UCL claims by TPPs, observing that "[w]hether an individual patient or physician was likely to be misled by [the manufacturer's] representations is a completely different inquiry from whether a sophisticated P&T committee, with substantial resources and the ability to conduct its own research, was likely to be misled." *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d at 97.

### C.     Plaintiffs Must Prove Actual Reliance

California voters drastically limited the scope of the UCL in 2004 through Proposition 64, a referendum that required UCL claimants to prove a loss of money or property "as a result of" an unfair, unlawful, or fraudulent practice.  *See* Cal. Bus. & Prof. Code § 17204; *see also Californians for Disability Rights v. Mervyn's, LLC*, 138 P.3d 207, 209-10 (Cal. 2006) (summarizing the abuses of section 17200 that led to Proposition 64's passage and the effect of its passage on UCL claims).  The California Supreme Court has recently concluded that this new phrase "as a result of" "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases*, 207 P.3d at 39 (observing that "because it is clear that the overriding purpose of Proposition 64 was to impose limits on private enforcement actions under the UCL, we must construe the phrase 'as a result of'

in light of this intention to limit such actions").  Indeed, the phrase "as a result of" requires proof of causation, and "there is no doubt that reliance is the causal mechanism of fraud." *Id.*

To prove actual reliance, a plaintiff must generally show "that but-for the defendant's fraudulent conduct, 'the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.'" *In re Actimmune Mktg. Litig.*, No. C 08-02376, 2009 WL 3740648, at *8 (N.D. Cal. Nov. 6, 2009) ("*Actimmune II*") (dismissing UCL claims by TPPs seeking reimbursement for monies paid for defendant's prescription medication (quoting *In re Tobacco II*, 207 P.3d at 39)).  Courts have recently recognized that proof of actual reliance in this specific context requires a showing that "doctors relied upon the information they received about [the medication] when deciding to prescribe" it.  *Actimmune II* at *11.  Specifically, Plaintiffs must show "some link connecting the doctors' alleged beliefs that [the medication] was efficacious . . . to some fraudulent representation or omission made by [Pfizer]." *Id.*  Proof that "doctors were exposed generally to the marketing" of the medication by the defendant is insufficient to show actual reliance. *Id.*  Nor can Plaintiffs prove actual reliance on a representation where, as here, the testimony of the targeted parties shows that the representations of the defendant were not a factor in their decision-making.  *See Princess Cruise Lines, Ltd. v. Superior Court*, 101 Cal. Rptr. 3d 323, 329 (Ct. App. 2009) (holding that where plaintiff testified that she would have paid for defendant's service "whatever it cost," "there was *no reliance*, i.e., the [plaintiffs] would have [paid for the service] without reference to anything petitioner said or did"), *review denied*, No. S178842 (Cal. Feb. 3, 2010); *cf. In re Neurontin*, 2010 WL 53568, at *10 (observing that there is "no evidence has been presented of any doctor who states that she relied on a misrepresentation or omission in prescribing Neurontin for an off-label indication").

Plaintiffs may not dispense with the "actual reliance" requirement by resorting to the language in *In re Tobacco II* that a plaintiff is "not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign."  207 P.3d at 40-41.  As an initial matter, even if this exception, developed in the

13

context of cigarette advertising cases, were applicable, it would only eliminate the need to prove reliance on *specific* misrepresentations; it would not excuse proof of actual reliance generally. Indeed, even in the cases cited by the *In re Tobacco II* court in support of this exception, "the plaintiffs testified that their decision to begin smoking was influenced and reinforced by cigarette advertising." *Id.* at 40 (citing *Boeken v. Philip Morris, Inc.*, 26 Cal. Rptr. 3d 638, 655 (Ct. App. 2005); *Whiteley v. Philip Morris, Inc.*, 11 Cal. Rptr. 3d 807, 843 (Ct. App. 2004)). Here, however, no physician has testified that her decision to prescribe Neurontin was influenced by Pfizer's marketing, and many have specifically disclaimed reliance, citing their own clinical experience and other sources as the basis for their prescriptions. In addition, Kaiser's own internal documents contradict its claims of direct reliance. Moreover, there is no indication that this exception would even be applicable here. Indeed, the *Actimmune II* court questioned the applicability of this exception under similar circumstances, because "defendants' seven year effort to market Actimmune to approximately 7,000 pulmonologists and 200,000 individuals suffering from IPF pales in comparison to the decades-long, national, ubiquitous advertising campaigns embarked upon by cigarette manufacturers." *Actimmune II*, at *13.

Finally, Plaintiffs cannot prove reliance through the theory that Pfizer "'saturated' the market for information regarding [Neurontin]." *See id.* at *14. Indeed, the "'saturation' argument is nothing more than a repackaging of the 'fraud on the market' theory," *id.*, which this Court has repeatedly rejected, *see In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 111-12 (D. Mass. 2009); *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 323-24 (D. Mass. 2009), along with all other similar attempts to make aggregate proof of reliance. *See In re Neurontin*, 2010 WL 53568, at *9. "Fraud on the market" is no more appropriate for UCL claims than it is for RICO claims. *See In re Actimmune*, 614 F. Supp. 2d at 1054 ("The court will not let plaintiffs escape their burden to plead and prove the element of reliance by using a market-based fraud theory to handwave the requirement that there be a connection between the misdeed complained of and the loss suffered under state law."); *see also Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 439, 440 (C.D. Cal. 2007).

### D.     Plaintiffs Cannot Recover Under the UCL's "Unlawful" Prong

Although, as established above, Plaintiffs' UCL claims are steeped in allegations of fraud, Plaintiffs have recently suggested that they may also attempt to recover under the "unlawful" prong of the UCL by proving that Pfizer violated FDA regulations by engaging in off-label promotion of Neurontin.[12]  This attempt fails for two reasons.

*First*, any attempt to bring a claim seeking recovery for alleged off-label promotion, even if couched as a UCL claim, is precluded by the FDCA, which does not provide a private right of action.  *See* 21 U.S.C. § 337(a); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2008) (dismissing UCL claims by TPPs seeking to recover for off-label promotion because "plaintiffs may not use other federal statutes or state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FDCA"); *accord In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 06-5774, 2009 WL 2043604, at *10 (D.N.J. July 10, 2009).  Indeed, because section 337 of the FDCA provides that "all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States," a state is without power to enact a statute that permits parties other than the United States to bring proceedings to enforce the FDCA.  21 U.S.C. § 337(a).  *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 351-52 (2001) (holding state-law claims of fraud on the FDA impliedly preempted by § 337); *Fraker v. KFC Corp.*, No. 06-CV-01284, 2007 WL 1296571, at *4 (S.D. Cal. Apr. 30, 2007) ("[T]o the extent Plaintiff contends that alleged violations of the FDCA . . . give rise to viable [UCL] claims, such claims are impliedly preempted by the FDCA.").  Accordingly, Plaintiffs' purported claims under the "unlawful" prong of the UCL are barred.

*Second*, Plaintiffs cannot prove an injury for claims of unlawful off-label promotion as such.  The "unlawful" prong of the UCL would only useful to Plaintiffs to the extent that they

---

[12] Plaintiffs' Mem. in Opp. to Defendants' Motion *in Limine* to Exclude All Evidence of or References to Warner-Lambert Company LLC's Guilty Plea or Any Related Government Investigations or Agreements [2415] at 7-8.

would seek to recover for *non-fraudulent* off-label promotion.  However, that purported unlawful conduct by Pfizer would not be actionable, as it would not have caused Plaintiffs a loss of money or property.  *See* Cal. Bus. & Prof. Code §§ 17200, 17204.  Plaintiffs do not allege that they were injured because prescriptions were off-label.  Kaiser admits that it routinely pays for off-label prescriptions and issues guideline specifically approving off-label prescriptions.  Indeed, many of the alternative drugs proposed by Kaiser are, or were during the relevant time frame, off label for the conditions at issue.  In short, Pfizer's theory of causation and damages cannot be divorced from its allegations that prescriptions were written as the result of fraudulent promotion.  Thus, Plaintiffs may only attempt recover for off-label promotion that is fraudulent under the fraudulent prong of the UCL, and they may not proceed independently under the unlawful prong of the UCL.  *See In re Epogen*, 590 F. Supp. 2d at 1289-90.[13]

## IV.  Plaintiffs' Claims Under the Laws of Other Jurisdictions Require Similar Proof

### A.     Plaintiffs Lack Standing To Recover Under The Laws of Other Jurisdictions

Plaintiffs also seek to recover under the consumer protection statutes of various states.  The Third Amended Complaint does not indicate which Plaintiff is seeking to recovery under which State's statutes; presumably Kaiser Foundation Health Plan seeks to invoke the statutes where its subsidiaries – Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio − operate.  However, it is well established that a parent company may not recover for damages to a subsidiary.  *See, e.g.*, *PayPhone v. Brooks Fiber Commc'ns of R.I.*, 126 F. Supp. 2d 175, 179 (D.R.I. 2001); *Resolution Trust Corp. v. Fleischer*, 848 F. Supp. 917, 923 (D. Kan. 1994); *United Cont'l Tuna Corp. v. United States*, 550 F.2d 569, 573 (9th Cir. 1977).  Kaiser, therefore, has no standing to assert the consumer protection statute of any state other than California.

---

[13] For the same reasons, Plaintiffs cannot recover under the "unfair" prong of the UCL.  On the facts of this case, Plaintiffs cannot prove injury or causation absent evidence of some misrepresentation upon which both they and physicians relied.

Additionally, even if Plaintiffs were not barred from asserting claims for damages on behalf of their subsidiaries, they would still lack standing to recover under several of the relevant consumer protection statutes. Plaintiffs cannot assert claims under the law of Georgia, Hawaii, Maryland, or Ohio, because those jurisdictions do not allow corporations to assert consumer protection claims. *See Blue Cross & Blue Shield of Ga., Inc. v. Kell*, 488 S.E.2d 735, 740 (Ga. Ct. App. 1997); *Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.*, 114 P.3d 929, 941 (Haw. Ct. App. 2005); *Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 692 (D. Md. 2001); *Watkins & Son Pet Supplies v. Iams Co.*, 107 F. Supp. 2d 883, 893 (S.D. Ohio 1999), *aff'd*, 254 F.3d 607 (6th Cir. 2001). Nor may Plaintiffs bring claims under the consumer protection statutes of Oregon or the District of Columbia, which are limited to claims by consumers. *See Wheeler v. Montgomery*, No. 06-214-KI, 2007 WL 894562, at *6 (D. Or. Mar. 21, 2007) (sua sponte dismissing the plaintiffs' claim, observing that "[t]he Act is inapplicable to the situation at hand, a commercial transaction, and cannot form a basis for plaintiffs' recovery"); *Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1179-80 (D. Or. 1998) (rejecting claims under Oregon Unlawful Trade Practices Act by union health funds seeking recovery of monies spent on participants), *aff'd*, 185 F.3d 957 (9th Cir. 1999); *Shaw v. Marriott Int'l, Inc.*, 570 F. Supp. 2d 78, 83 (D.D.C. 2008) (dismissing claims brought by non-consumers).

## B.   Plaintiffs Must Prove Actual Fraud and Scienter Under Colorado and Virginia Law

To recover under the consumer protection statutes of Colorado or Virginia, Plaintiffs must prove both actual fraud and scienter. For instance, to recover on their claims under Colorado's consumer protection act, Plaintiffs must show that Pfizer "[k]nowingly ma[de] a false representation as to the characteristics, ingredients, uses, [or] benefits" of Neurontin or that Pfizer "[f]ail[ed] to disclose material information concerning [Neurontin] which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. Ann. §§ 6-1-

105(1)(e), (u) (West 2002).  Likewise, under Virginia law, Plaintiffs must show that Pfizer "acted with an intent to deceive or otherwise mislead, i.e., with fraudulent intent, as to a material fact." *Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712, 722 (E.D. Va. 2005); *see also, e.g.*, Va. Code Ann. § 59.1-200(A)(5) (West 2009).

### C. Plaintiffs Must Prove Injury, Reliance, and Causation To Prevail Under All Applicable Consumer Protection Statutes

Just as under RICO and the UCL, to recover under the consumer protection statutes of Colorado, Virginia, or Washington, Plaintiffs must prove injury, causation, and reliance.  To prevail under the Colorado Consumer Protection Act, Plaintiffs must prove that they "suffered injury in fact to a legally protected interest; and . . . that the challenged practice caused [their] injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003).  Likewise, to prevail under the Virginia Consumer Protection Act, Plaintiffs must show that they suffered a loss as a result of a violation of the statute, *see* Va. Code Ann. § 59.1-204(A) (West 2009), and that they "relied on the alleged misrepresentations claimed to constitute the prohibited practice, and thus that [their] loss was caused by the prohibited practice." *Cooper*, 334 B.R. at 189; *accord Padin*, 397 F. Supp. 2d at 722.  Again, to prevail under Washington's Consumer Protection Act, Plaintiffs must show "an unfair or deceptive practice" that "cause[d] injury to [Plaintiffs] in [their] business or property" and which "is causally linked to the unfair or deceptive act." *Shields v. Enter. Leasing Co.*, 161 P.3d 1068, 1074 (Wash. Ct. App. 1999); *accord First State Ins. Co. v. Kemper Nat'l Ins. Co.*, 971 P.2d 953, 957 (Wash. Ct. App. 1999). To prove causation under these statutes, Plaintiffs must show, at a minimum, that but for reliance on Pfizer's alleged misrepresentations, they would not have suffered an injury.  *See Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 290 (Wash. Ct. App. 2008) ("To establish the causation element . . . a plaintiff must show that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury.") *review granted in part*, 210 P.3d 1019 (Wash. 2009); *accord Garcia v. Medved Chevrolet, Inc.*, ___ P.3d ___, 2009 WL 3765481, at *10 (Colo. Ct. App. Nov. 12, 2009); *Cooper*, 334 B.R. at 188-89.   Nor can reliance be presumed under

these state statutes via any fraud-on-the-market type theory.  *See Garcia*, 2009 WL 3765481, at

*10; *Borow v. nVIEW Corp.*, 27 F.3d 562, 1994 WL 285458, at *n.1 (4th Cir. 1994) (table

decision); *In re Metro. Sec. Litig.*, No. 04-25, 2009 WL 36776, at *4-5 (E.D. Wash. Jan. 6, 2009).

## V.      Plaintiffs Must Offer Reliable and Reasonably Specific Proof of Damages

Plaintiffs have the burden of proving the fact and amount of damages with reasonable

certainty.  *See Computer Access Tech. Corp. v. Catalyst Enters., Inc.*, 273 F. Supp. 2d 1063,

1076 (N.D. Cal. 2003).  For the reasons set forth in Defendants' Motion in Limine to Exclude the

Testimony of Raymond S. Hartman and supporting memoranda [2319, 2320, 2439-2], Plaintiffs'

damages evidence is not supported by expert testimony that meets the dictates of *Daubert* and,

therefore, cannot satisfy their burden of proof.  In addition, because Dr. Hartman's estimates are

not based upon data that is specific to Kaiser, Plaintiffs' evidence of damages is wholly

speculative.

Plaintiffs cannot excuse their failure to offer expert testimony that is specific to Kaiser by

relying upon *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946) and its progeny.  First,

reliance on industry, rather than Kaiser-specific data, afflicts both Prof. Rosenthal's causation

opinion, as well as Dr. Hartman's damages calculation.  *Bigelow* does not apply to causation.

*See Hare v. Potter*, 549 F. Supp. 2d 688, 695-96 (E.D. Pa. 2007).  Second, *Bigelow* applies to

situations where data is not available for more precise damage calculations.  It does not allow a

plaintiff to ignore data specific to it in favor of less reliable data simply because it does not want

to incur the expense of doing a proper damage assessment.  Third, even under *Bigelow*, "there is

a distinction between proof which allows the jury to make a 'just and reasonable inference' of

damages and proof which only provides a basis for 'pure speculation or guesswork.'"  *Wallace*

*Motor Sales, Inc. v. Am. Motors Sales Corp.*, 780 F.2d 1049, 1062 (1st Cir. 1985) (quoting

*Bigelow*, 327 U.S. at 264).  Where, as here, Kaiser insists that it is unique and its expert has

testified that he would expect Kaiser's drug utilization to be different than the industry, Kaiser

has provided no reasonable basis upon which its experts should be allowed to ignore Kaiser-

specific data and extrapolate from industry data.  Finally, as this Court noted, Kaiser must be

able to segregate damages "caused by unlawful conduct from damages caused by lawful conduct." *In re Neurontin*, 2010 WL 53568, at *10. Kaiser cannot recover for prescriptions that were not caused by the alleged wrongful conduct and its inability to reliably disaggregate is fatal to its claim.

## VI.    Plaintiffs Cannot Recover Punitive Damages

At the January 28, 2010 pre-trial conference, Plaintiffs were unable to identify any statute pursuant to which they sought punitive damages. Indeed, neither RICO nor the UCL permits recovery of punitive damages. *See In re XE Servs. Alien Tort Litig.*, ___ F. Supp. 2d ___, 2009 WL 3415129, at *21 (E.D. Va. Oct. 21, 2009) (observing that treble damages are the exclusive remedy under RICO, punitive damages are not available); *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) (holding that punitive damages are not available under the UCL). For the reasons discussed above, Plaintiffs lack standing to sue under the consumer protection statutes of other states, even if they permitted punitive damages. Moreover, Plaintiffs would be constitutionally barred from seeking punitive damages, because they have failed to proffer a damages model that segregates harm on a state-by-state basis. As a result, Plaintiffs cannot satisfy either the "in-state" or proportionality requirements of *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). Accordingly, Plaintiffs cannot recover punitive damages.

## CONCLUSION

Pfizer respectfully requests that the Court consider this memorandum in further support of its proposed jury instructions and other trial submissions and arguments.

Dated: February 15, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By:     /s/ Mark S. Cheffo
        Mark S. Cheffo
        /s/ Katherine F. Arthur
        Katherine F. Arthur

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Email:  Mark.Cheffo@skadden.com
Email:  Katherine.Arthur@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By:     /s/ Raoul D. Kennedy
        Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel:  (415) 984-6400
Email:Raoul.Kennedy@skadden.com

WHEELER TRIGG O'DONNELL LLP

By:   /s/ James E. Hooper
      James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel:  (303) 244-1800
Email:  hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on February 15, 2010.

<u>/s/ Mark S. Cheffo</u>
Mark S. Cheffo