UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**KAISER'S TRIAL BRIEF**

858777.1

## TABLE OF CONTENTS

**Page**

I.  THE LAW GOVERNING KAISER'S RICO CLAIMS ............................................. 1

II. CALIFORNIA LAW APPLIES TO KAISER'S STATE LAW CLAIMS ........... 4

III. THE LAW GOVERNING KAISER'S UNFAIR COMPETITION LAW CLAIMS ................................................................................................................. 7

    A. Kaiser's "Unlawful" Business Practices Claim ......................................... 8

    B. Kaiser's "Unfair" Business Practices Claim .............................................. 9

    C. Kaiser's "Fraudulent" Business Practices Claim ...................................... 9

    D. Restitution ................................................................................................ 11

IV. THE LAW GOVERNING KAISER'S CLAIM FOR UNJUST ENRICHMENT ....................................................................................................... 11

## TABLE OF AUTHORITIES

<u>Page</u>

### Cases

*Allied Grape Growers v. Bronco Wine Co.*,
   203 Cal. App. 3d 432, 249 Cal. Rptr 872 (1988) .................................................................. 7

*California Med. Assn. v. Aetna U.S. Healthcare of Cal., Inc.*,
   94 Cal. App. 4th 151, 114 Cal. Rptr. 2d 109 (2001) ............................................................. 8

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
   20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) ................................................................... 7, 8

*Chern v. Bank of America*,
   15 Cal. 3d 866, 127 Cal. Rptr. 110 (1976) ..................................................................... 8, 11

*Cisneros v. U.D. Registry, Inc.*,
   39 Cal. App. 4th 548, 46 Cal. Rptr. 2d 233 (1995) ............................................................... 8

*Citizens for a Better Environment v. Union Oil of California*,
   996 F. Supp. 934 (N.D. Cal. 1997) ...................................................................................... 8

*Committee on Children's Television v. General Foods Corp.*,
   35 Cal. 3d 197, 197 Cal. Rptr. 783 (1983) ........................................................................... 7

*Committee on Children's Television, Inc. v. General Foods Corp.*,
   35 Cal. 3d 197, 197 Cal. Rptr. 783 (1983) ....................................................................... 8, 9

*Community Assisting Recovery, Inc. v. Aegis Ins. Co.*,
   92 Cal. App. 4th 886, 112 Cal. Rptr. 2d 304 (2001) ........................................................... 11

*Computer Systems Engineering, Inc. v. Qantel Corporation*,
   740 F.2d 59 (1st Cir. 1984) ................................................................................................... 4

*Desiano v. Warner-Lambert Co.*,
   326 F.3d 339 (2d Cir. 2003) .................................................................................................. 4

*Engalla v. Permanente Medical Group, Inc.*,
   15 Cal. 4th 951 (1997) ........................................................................................................ 10

*Farmers Ins. Exch. v. Sup. Ct.*,
   2 Cal. 4th 377, 6 Cal. Rptr. 2d 487 (1992) ........................................................................... 8

*Grisham v. Philip Morris U.S.A., Inc.*,
   40 Cal. 4th 623 (2007) ........................................................................................................ 10

*Hernandez v. Lopez*,
   180 Cal. App. 4th 932, 103 Cal. Rptr. 376 (Cal. 4th App. Dist. 2009) .............................. 12

*Hirsch v. Bank of America*,
   107 Cal. App. 4th 708, 132 Cal. Rptr. 2d 220 (Cal. App. 1st Dist. 2003) .......................... 12

## TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Mercedes-Benz Tele-Aid Contract Litig.*,
  257 F.R.D. 46 (D.N.J. 2009) .................................................................................... 11

*In re Neurontin Marketing, Sales Pracs., and Prods. Liab. Litig.*,
  2010 WL 53568 (D. Mass. Jan. 8, 2010) .......................................................... passim

*In re Neurontin Marketing, Sales Pracs., and Prods. Liab. Litig.*,
  433 F. Supp. 2d 172 (D. Mass. 2006) .................................................................. 1, 2, 6

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
  230 F.R.D. 61 (D. Mass. 2005) ................................................................................. 5

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ......................................................................................... 9, 10

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939, 119 Cal. Rptr. 2d 296 (2002) ..................................................... 8, 9

*Lectrodryer v. Seoulbank*,
  77 Cal. App. 4th 723, 91 Cal. Rptr. 2d 881 (2000) ................................................ 12

*Lozano v. AT&T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007) .................................................................................... 9

*Mirkin v. Wasserman*,
  5 Cal. 4th 1082 (1993) ............................................................................................ 10

*People v. Cappuccio, Inc.*,
  204 Cal. App. 3d 750, 251 Cal. Rptr. 657 (1988) .................................................. 11

*People v. Casa Blanca Convalescent Homes, Inc.*,
  159 Cal. 3d 509, 206 Cal. Rptr. 164 (1984) ........................................................ 7, 11

*People v. E.W.A.P., Inc.*,
  106 Cal. App. 3d 315, 165 Cal. Rptr. 73 (1980) ...................................................... 8

*Podolsky v. First Healthcare Corp.*,
  50 Cal. App. 4th 632 (1996) ..................................................................................... 9

*Powers v. Lycoming Engines*,
  245 F.R.D. 226 (E.D. Pa. 2007), *rev'd on other grounds*, 2009 WL 826842 (3d Cir. 2009) ... 12

*Prata v. Sup. Ct.*,
  91 Cal. App. 4th 1128, 111 Cal. Rptr. 2d 296 (2001) .............................................. 9

*Reicher v. Berkshire life Ins. Co. of America*,
  360 F.3d 1 (1st Cir. 2004) ......................................................................................... 4

*Renick v. Dun & Bradstreet Receivable Management Services*,
  290 F.3d 1055 (9th Cir. 2002) .................................................................................. 8

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Roskind v. Morgan Stanley Dean Witter & Co.,*
 80 Cal. App. 4th 345, 95 Cal. Rptr. 2d 258 (2000) ............................................................... 8

*Rothschild v. Tyco Intl. Inc.,*
 83 Cal. App. 4th 488, 99 Cal. Rptr. 2d 721 (2000) ............................................................. 11

*Salinas v. United States,*
 522 U.S. 52 (1997) ................................................................................................................ 4

*Shersher v. Superior Court,*
 154 Cal. App. 4th 1491, 65 Cal. Rptr. 3d 634 (2007) ......................................................... 11

*State Farm Fire & Cas. Co. v. Superior Court,*
 45 Cal. App. 4th 1093 (1996) ........................................................................................ 9, 11

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,*
 17 Cal. 4th 553, 71 Cal. Rptr. 2d 731 (1998) ....................................................................... 8

*Tingley Systems, Inc. v. CSC Consulting, Inc.,*
 152 F. Supp. 2d 95 (D. Mass. 2001) ..................................................................................... 4

*U.S. v. Cianci,*
 78 F.3d 71 (1st Cir. 2004) ..................................................................................................... 3

*Walker v. Countrywide Home Loans, Inc.,*
 98 Cal. 4th 1158, 121 Cal. Rptr. 2d 79 (2002) ..................................................................... 7

*Washington Legal Found. v. Friedman,*
 13 F. Supp. 2d 51 (D.D.C. 1998) (explaining statute), *appeal dismissed, vacated in part on other grounds,* 202 F.3d 331 (D.C. Cir. 2000) ....................................................... 8

*Wilson v. Stearns,*
 123 Cal. App. 2d 472 (1954) ................................................................................................ 7

### Statutes

18 U.S.C. § 1962(c) .................................................................................................................... 1

18 U.S.C. §§ 1961-1968 ............................................................................................................. 1

18 U.S.C. 1962(d) ....................................................................................................................... 4

21 U.S.C. §§ 360aaa, *et seq.* ...................................................................................................... 8

Cal. Bus. & Prof. Code § 17200 ................................................................................................. 7

Cal. Bus. & Prof. Code § 17203 ............................................................................................... 11

The following is a brief outline of the law governing Kaiser's claims.

## I. THE LAW GOVERNING KAISER'S RICO CLAIMS

Plaintiffs bring claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). This Court has written extensively on Plaintiffs' RICO allegations in this case, *see In re Neurontin Marketing, Sales Pracs., and Prods. Liab. Litig.*, 433 F. Supp. 2d 172 (D. Mass. 2006) (adopting in part Magistrate Judge Sorokin's Report and Recommendation on Defendants' Motions to Dismiss); *In re Neurontin Marketing, Sales Pracs., and Prods. Liab. Litig.*, 2010 WL 53568 (D. Mass. Jan. 8, 2010) (decision on summary judgment).

Section 1962(c) of RICO provides, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c). Plaintiffs' Proposed RICO Jury Instruction No. 4 sets out the five elements of a claim under RICO:

- First, that an enterprise existed as alleged in the complaint;
- Second, that the enterprise affected interstate or foreign commerce;
- Third, that Defendants was associated with, or employed by, the enterprise;
- Fourth, that Defendants engaged in a pattern of racketeering activity; and
- Fifth, that Defendants conducted, or participated in, the conduct of the enterprise through that pattern of racketeering activity.

Plaintiffs will prove the first element, enterprise, by demonstrating that Defendants conducted or participated in the conduct of two separate enterprises: a Medical Education Enterprise, comprised of Defendants (or their predecessors) and the third-party vendor Cline Davis Mann, and a Publication Enterprise, comprised of Defendants and the medical marketing

858777.1

firm called Medical Action Communications.[1] In this Court's decision on Defendants' motion to dismiss, the Court found that, "as to the medical marketing firms named in the complaints," Plaintiffs had "adequately alleged systematic linkages that constitute ongoing units sufficient to sustain allegations of [association-in-fact] RICO enterprises." *Neurontin*, 433 F. Supp. 2d at 183. Plaintiffs will show that, as the Court held that Plaintiffs alleged, the participants in each enterprise shared a common purpose of illegally promoting off-label uses of Neurontin. *Id.* at 179. Although the common purpose is shared, Plaintiffs must prove only that Defendants "possessed the requisite intent to commit the predicate acts of mail and wire fraud." *Id.*

The second and third elements – that the enterprise affected interstate commerce and that Defendants were associated with the enterprise – will be straightforward.

Plaintiffs will meet the fourth element – that Defendants engaged in racketeering activity within the meaning of RICO, here, through acts of mail fraud and wire fraud. *See Neurontin* (summary judgment decision), 2010 WL 53568, at *7. These predicate acts of mail and wire fraud will include misrepresentations and omissions of negative information that Defendants possessed about the use of Neurontin to treat the off-label indications at issue. In the opinion on summary judgment, this Court emphatically rejected as having "no merit" Defendants' contention that it had no duty to disclose negative trials involving Neurontin. As the Court stated, "The First Circuit has said that "the locus classicus of fraud is a seller's affirmative false statement or a half truth, i.e., a statement that is literally true but is made misleading by a significant omission." *Id.* (citing *Bonilla v. Volvo Car Corp.*, 150 F.3d 62, 69 (1st Cir. 1998)).

---

[1] The MAC Enterprise is discussed at Section VII of Plaintiffs' portion of the Joint Pretrial Memorandum, covering amendments to the pleadings. Kaiser made extensive allegations in its Third Coordinated Amended Complaint regarding MAC's role in Defendants' fraudulent conduct, and discovery proceeded accordingly, but Kaiser did not separately allege a MAC sub-enterprise among the other sub-enterprises alleged.

Kaiser will put forth evidence that Defendants communicated half truths that are actionable under RICO, including instances of Defendants suppressing negative information while submitting for publication in monographs positive information about off-label indications.

Plaintiffs will prove the fifth element of a RICO violation, showing sufficient relatedness and continuity over the years that Defendants engaged in their multifaceted and comprehensive campaign to increase sales of Neurontin for off-label uses. *See, e.g., U.S. v. Cianci*, 78 F.3d 71, 88 (1st Cir. 2004).

Next, Plaintiffs will show that Defendant's mail or wire fraud in violation of the racketeering statute was a "but for" cause of his injury and a proximate cause. *Neurontin*, 2010 WL 53568, at *8. As the Court has already held, Kaiser does not need to prove that it relied on Defendants' misrepresentations to recover under RICO. *Id.* (citing *Bridge v. Phoenix Bond & Indem. Co.*, --- U.S. ----, ----, 128 S.Ct. 2131, 2144, 170 L.Ed.2d 1012 (2008)). In addition, Kaiser can prove that it relied on the "half-truths put forth by Pfizer through publications, monographs, and other communications to Kaiser and to the general public." *Id.* at __. Kaiser will show that it gathered all publicly available information about Neurontin to make formulary decisions concerning the drug, and that it had additional direct communications with Pfizer regarding Neurontin. Kaiser will show a sharp reduction its insureds' Neurontin purchases after it began to learn the truth about Defendants' campaign of misinformation, which "is strong evidence of a causal link between Pfizer's misrepresentations and Kaiser's alleged injuries." *Id.* at 11.

Finally, Kaiser will show that Defendants' fraud directly caused an injury to Kaiser's business. Kaiser will show cheaper and more optimal alternatives to Neurontin and that Kaiser would not have paid for Neurontin absent Defendants' fraud. This evidence sufficiently

establishes direct injury, as this and other courts have held. *See Neurontin*, 2010 WL 53568, at *13; *Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 349 (2d Cir. 2003).

Kaiser has also brought, under 18 U.S.C. 1962(d), a claim for conspiracy to violate Section 1962(c) of RICO. It should be noted that although Section 1962(c) requires that two predicate offenses be shown, a conspirator need not actually commit two predicate offenses to violate Section 1962(d). *See Salinas v. United States*, 522 U.S. 52, 65 (1997).

## II.  CALIFORNIA LAW APPLIES TO KAISER'S STATE LAW CLAIMS

Kaiser's action was filed in this district. Accordingly, the Court must apply Massachusetts choice of law rules in order to determine which state's law provides the appropriate prism through which to view Kaiser's state law claims. Contrary to Defendants' argument, Massachusetts' choice of law rules do not require application of the substantive laws of the various states in which Kaiser insureds reside. Massachusetts has rejected any such rigid rules in favor of a "flexible approach,"[2] inviting Massachusetts courts to "feel free . . . to borrow from any of the various lists to help focus . . . attention on the considerations particularly relevant to the case." *Reicher v. Berkshire life Ins. Co. of America*, 360 F.3d 1, 5 (1st Cir. 2004) (citations and internal quotations omitted).

In cases alleging common law fraud and statutory consumer fraud, the First Circuit has expressly held that "a Massachusetts court would apply a test not materially different from that of the *Restatement (Second) of Conflict of Laws* § 148[(2)] in determining the law applicable". *Computer Systems Engineering, Inc. v. Qantel Corporation*, 740 F.2d 59, 70 (1st Cir. 1984). In *AWP*, the Court found that under § 148(2), factor (a), "the place where the plaintiff acted in reliance upon the defendant's representations," was the most important. *In re Pharm. Indus.*

---

[2] *Tingley Systems, Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95 (D. Mass. 2001)

*Avg. Wholesale Price Litig.*, 230 F.R.D. 61, 82-83 (D. Mass. 2005). In *AWP*, the Court also considered factor (b), "the place where the plaintiff received the representations," as of secondary importance. *Id.* at 83. While in *AWP*, these factors led to the application of the law of each class member's state of residence, the application of those factors here leads to the application of California law.

As the Court found in its recent summary judgment opinion, what distinguishes this case from the outcome in *AWP*, is, *inter alia*, the active role played by Kaiser's Drug Information Services ("DIS"):

> Neurontin was added to Kaiser's formulary in September 1994 with a restriction limiting its use to, or in consultation with, a PMG neurologist. In 1997, Neurontin's formulary status was expanded to include prescriptions by PMG pain clinic physicians for the treatment of Reflex Sympathetic Dystrophy. In 1999, the P & T committee voted to expand restrictions to include prescriptions by psychiatrists for the treatment of bipolar affective disorder. For each of these three changes to the Kaiser formulary, Kaiser's Drug Information Service ("DIS") prepared monographs summarizing the available studies and other information for Neurontin related to the particular indication in question. At the time of each P & T Committee vote, Kaiser alleges that its DIS did not have access to studies known to Pfizer that showed Neurontin's negative or negligible effects in patients with RSD and bipolar disorder.
>
> After these formulary expansions, the DIS continued to gather information on Neurontin and circulate it to its physicians and committees. For example, in 1998 a DIS employee sent a request to Parke-Davis for "information regarding the use of Neurontin (gabapentin) for the management of neuropathic and central pain." Parke-Davis responded by sending an eleven-page letter summarizing published reports on these indications. No negative studies were reported despite the fact that Parke-Davis was aware of several at the time.
>
> In addition, DIS has an Inquiry Department, which responds to requests from PMG physicians and pharmacists who have questions about the use of a specific drug for a specific patient. Often, DIS solicits advice and information from pharmaceutical companies when answering such inquiries. Kaiser alleges that in responding to requests for information from its Inquiry

> Department, Parke-Davis provided information that was "materially misleading."

*In re Neurontin Marketing and Sales Practices Litigation*, --- F.Supp.2d ----, 2010 WL 53568, *2-*3 (D. Mass. 2010) (citations omitted). Consistent with these allegations, the Court summarized Kaiser's case as follows:

> As a more hands-on third-party payor, Kaiser argues that, due to Pfizer's fraudulent misrepresentations about and withholding of certain negative studies for these indications, the recommendations of its Drug Information Service (DIS) were tainted. Because DIS drug monographs for Neurontin, prepared by Kaiser and used by Kaiser's P & T committee, directly influenced Kaiser's decision to expand its formulary, a reasonable inference can be drawn that Kaiser was directly injured by Pfizer's misrepresentations about Neurontin. Notably, Kaiser's preparation of drug monographs gathered all publicly available data and publications regarding Neurontin, and therefore Kaiser directly relied on the "half truths" put forth by Pfizer through publications, monographs, and other communications to Kaiser and to the general public.
>
> In addition, Kaiser's DIS had direct communications with Pfizer both through its information-gathering activities and its Inquiry Department service for physicians and members. Kaiser alleges that, had Pfizer not made misrepresentations regarding Neurontin's effectiveness for certain off-label indications, DIS's activities would have highlighted problems with Neurontin such that Kaiser could have responded sooner and thereby reduced its payments and reimbursements for Neurontin. These activities represent direct interaction between Kaiser and Pfizer, providing the evidence of causation alluded to by the *Desiano* court.

*Id.* at 11 (citations omitted).

As the foregoing description of Kaiser's case makes plain, in this case, Restatement § 148[(2)] factor (a), "the place where the plaintiff acted in reliance upon the defendant's representations," and factor (b), "the place where the plaintiff received the representations," are both in California, where Kaiser's DIS is located, regardless of the state of residence of the particular insureds whose prescriptions resulted from Defendants' fraud. The head of Kaiser's DIS, Dr. Mirta Millares, will testify that DIS is centralized and headquartered in Kaiser's

California regions. She will also testify that Kaiser's other, non-California regions rely on the decisions made and information gathered by the California DIS. As the home to more than six million of Kaiser members, the California regions play a central role in Kaiser's formulary decisions, and serve as a locus for communications with, among others, drug manufacturers and other information sources. Accordingly, under Massachusetts' choice of law rules, Kaiser's state law claims are brought under California law.[3]

## III. THE LAW GOVERNING KAISER'S UNFAIR COMPETITION LAW CLAIMS

California's Unfair Competition Law, Business & Professions Code § 17200, *et seq.* (the "UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Each part of this definition operates separately from each other part. Thus, "unlawful" business practices (the first prong) are forbidden even if the practices are not "unfair" (the second prong) or "fraudulent" (the third). Likewise, "unfair advertising" is prohibited even if it is not "misleading" and is not a "business practice."[4]

In this case, Kaiser alleges that Defendants engaged in unlawful, unfair, and fraudulent business acts and practices. In general, under the UCL, a "practice" means the habitual doing of certain things, the doing of an act more than once, or repeated or customary action, habitual performance; a succession of acts of similar kind; habit, custom. Thus, a "practice" may be found based on nothing more than a pattern of behavior pursued as a business practice. A

---

[3] If the Court were to find that the residence of the insured governs, Kaiser can and will prove the elements of the each of the applicable state law claims pled in its Complaint.

[4] *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 560–561 (1999); *Committee on Children's Television v. General Foods Corp.*, 35 Cal. 3d 197, 210, 197 Cal. Rptr. 783, 790–791 (1983); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. 4th 1158, 121 Cal. Rptr. 2d 79 (2002).

business "practice" can violate the UCL even though it does not affect more than a single victim.[5]

### A. Kaiser's "Unlawful" Business Practices Claim

California's UCL is unique among the various state consumer protection statutes. Unlike other statutes, the UCL permits a cause of action to be brought if a practice violates some *other law*. In effect, the "unlawful" prong of the UCL makes a violation of the underlying law a *per se* violation of the UCL.[6] Thus, if a "business practice" violates any other federal or state law, it also violates the UCL's prohibition of "unlawful" business practices.[7] This is true *even if the underlying statute provides no private right of action*.[8] In this case, Kaiser alleges that Defendants engaged in unlawful business practices by violating federal regulations that prohibit off-label marketing.[9]

---

[5] *Wilson v. Stearns*, 123 Cal. App. 2d 472, 479 (1954); *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. 3d 509, 527, 206 Cal. Rptr. 164, 175 (1984); *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 453, 249 Cal. Rptr 872, 884 (1988).

[6] *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950, 119 Cal. Rptr. 2d 296, 304 (2002); *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 561 (1999); *Farmers Ins. Exch. v. Sup. Ct.*, 2 Cal. 4th 377, 383, 6 Cal. Rptr. 2d 487, 491 (1992).

[7] *People v. E.W.A.P., Inc.*, 106 Cal. App. 3d 315, 319, 165 Cal. Rptr. 73, 75 (1980); *Farmers Ins. Exch. v. Sup. Ct.*, 2 Cal. 4th 377, 383, 6 Cal. Rptr. 2d 487, 491 (1992). *See, e.g., Roskind v. Morgan Stanley Dean Witter & Co.*, 80 Cal. App. 4th 345, 95 Cal. Rptr. 2d 258 (2000) (mail fraud statute); *Citizens for a Better Environment v. Union Oil of California*, 996 F. Supp. 934, 938 (N.D. Cal. 1997) (Clean Water Act); *Chern v. Bank of America*, 15 Cal. 3d 866, 127 Cal. Rptr. 110 (1976) (Truth in Lending Act); *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 562, 46 Cal. Rptr. 2d 233, 243 (1995) (Fair Credit Reporting Act); *Renick v. Dun & Bradstreet Receivable Management Services*, 290 F.3d 1055, 1057-1058 (9th Cir. 2002) (Fair Debt Collection Practices Act).

[8] *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 561–567, 71 Cal. Rptr. 2d 731, 735–740 (1998); *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 210–211, 197 Cal. Rptr. 783, 792 (1983); *California Med. Assn. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 169, 114 Cal. Rptr. 2d 109, 123 (2001).

[9] *See* 21 U.S.C. §§ 360aaa, *et seq.* (pharmaceutical manufacturer may not disseminate written information on off-label uses unless application to approve use is pending and other conditions

### B.  Kaiser's "Unfair" Business Practices Claim

The definition of "unfairness," for purposes of the UCL, is intentionally broad, thus allowing courts the maximum discretion to prohibit new schemes to defraud. For purposes of the UCL, conduct is "unfair" if the harm to the victim outweighs the utility of the conduct to the defendant.[10] Determining whether an act is unfair involves an examination of that act's impact on its alleged victim, balanced against the reasons, justifications, and motives of the alleged wrongdoer.[11]

### C.  Kaiser's "Fraudulent" Business Practices Claim

A business practice is "fraudulent" within the meaning of the Unfair Competition Law if members of the public are likely to be deceived by it.[12]

To recover on its claim for fraudulent business practices, Kaiser must show, by a preponderance of the evidence, that Defendants' misrepresentations and/or nondisclosures were an immediate cause of the conduct that produced Kaiser's injuries. Kaiser may establish that Defendants' misrepresentations and non-disclosures were an immediate cause of the injury-producing conduct by showing that in its absence Kaiser in all reasonable probability would not have engaged in the injury-producing conduct.

---

are satisfied), 3600aaa-6(a) (sole exception permits "disseminating information in response to an unsolicited request from a health care practitioner") (emphasis added). *See also Washington Legal Found. v. Friedman*, 13 F. Supp. 2d 51, 58 (D.D.C. 1998) (explaining statute), *appeal dismissed, vacated in part on other grounds*, 202 F.3d 331 (D.C. Cir. 2000).

[10] *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996).

[11] *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).

[12] *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009); *Committee on Children's Television v. General Foods Corp.*, 35 Cal. 3d 197, 211, 197 Cal. Rptr. 783, 791 (1983); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 119 Cal. Rptr. 2d 296 (2002); *Prata v. Sup. Ct.*, 91 Cal. App. 4th 1128, 1144, 111 Cal. Rptr. 2d 296, 308 (2001).

In this case, Kaiser alleges that it was injured when Defendants' misrepresentations and nondisclosures concerning Neurontin's efficacy in treating the off-label conditions at issue caused Kaiser to pay for Neurontin prescriptions that would not otherwise have been written. Defendants deny these allegations.

While Kaiser must show that the misrepresentation was an immediate cause of the injury-producing conduct, Kaiser need not demonstrate it was the only cause. It is not necessary that Kaiser's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing its conduct. It is enough that the representations or omissions have played a substantial part, and so were a substantial factor, in influencing Kaiser's decisions.

A presumption of reliance arises wherever there is a showing that a misrepresentation or omission was material. A misrepresentation is judged to be "material" if a reasonable person would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction in question.

Kaiser does not need to demonstrate reliance on specific misrepresentations or omissions to satisfy the reliance requirement. Where a plaintiff alleges exposure to a long-term marketing campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.

Finally, proof of reliance is not defeated merely because alternative information concerning Neurontin's efficacy in treating the off-label conditions at issue may have been available to Kaiser.[13]

---

[13] *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009); *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 976-977 (1997); *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1110-1111 (1993)

A business practice is not immune from attack under the UCL merely because it has become customary or habitual either for the defendant or the industry of which it is a part.[14] The UCL imposes strict liability. It is not necessary for Kaiser to show that Defendants intended to injure anyone.[15]

### D. Restitution

If the Court finds that Defendants have engaged in unlawful, unfair, and/or fraudulent business acts and practices in violation of the Unfair Competition Law,[16] Kaiser is entitled to restitution, in the amount of money necessary to restore to Kaiser any money acquired by Defendants as a result of the practice(s).[17] In determining the amount of money to be awarded, it does not matter whether Kaiser's Neurontin purchases at issue were made directly to the Defendants.[18]

## IV. THE LAW GOVERNING KAISER'S CLAIM FOR UNJUST ENRICHMENT

Kaiser has also asserted a claim for restitution for unjust enrichment. Consistent with the UCL claim, Kaiser has submitted proposed jury instructions for this claim based on California

---

(conc. & dis. opn. of Kennard, J.); *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 638 (2007).

[14] *Chern v. Bank of America*, 15 Cal. 3d 866, 876, 127 Cal. Rptr. 110, 116 (1976); *People v. Cappuccio, Inc.*, 204 Cal. App. 3d 750, 251 Cal. Rptr. 657 (1988); *People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal. App. 3d 509, 527, 206 Cal. Rptr. 164, 175 (1984).

[15] *Community Assisting Recovery, Inc. v. Aegis Ins. Co.*, 92 Cal. App. 4th 886, 891, 112 Cal. Rptr. 2d 304, 308 (2001); *Rothschild v. Tyco Intl. Inc.*, 83 Cal. App. 4th 488, 494, 99 Cal. Rptr. 2d 721, 725 (2000); *State Farm & Casualty Co. v. Sup .Ct.*, 45 Cal. App. 4th 1093, 1102, 53 Cal. Rptr. 2d 229, 233 (1996).

[16] As Defendants note, there is no right to a jury trial under California's UCL, an "equitable" claim tried to the Court. Kaiser does not object to Pfizer's proposal that the Court empanel an advisory jury on Kaiser's UCL and unjust enrichment claims, and agree that the ultimate decision on those claims remains with the Court.

[17] Cal. Bus. & Prof. Code § 17203.

[18] *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 65 Cal. Rptr. 3d 634 (2007).

law.  As courts have recently noted, the elements of an unjust enrichment claim do not materially differ among states.  *See, e.g., In re Mercedes-Benz Tele-Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) (citing *Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437, 463-64 (D.N.J. 2009)); *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007) ("Although there are numerous permutations of the elements of unjust enrichment under the laws of the various states, there are very few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.") (emphasis in original), *rev'd on other grounds*, 2009 WL 826842 (3d Cir. 2009).

A claim for unjust enrichment "is grounded in equitable principles of restitution." *Hirsch v. Bank of America*, 107 Cal. App. 4th 708, 721, 132 Cal. Rptr. 2d 220 (Cal. App. 1st Dist. 2003).  Restitution is required where one party has been unjustly enriched at the expense of another.  *Id.* at 722.  "A person is enriched if he or she receives a benefit at another's expense.  The term 'benefit' connotes *any* type of advantage." *Id.* (emphasis in original, internal citations omitted).  A claim of unjust enrichment can stand alone, even when other claims brought by the plaintiff have been deemed to be otherwise deficient.  *Id.*  Even as a claim grounded in equitable principles, unjust enrichment claims are routinely put to juries.  *See, e.g., Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 728, 91 Cal. Rptr. 2d 881 (2000).

Kaiser will prove that Defendants have been unjustly enriched by Kaiser's payments for Neurontin, a benefit conferred on Defendants by reason of Defendants' fraud, and that Defendants should not justly retain those payments.  Kaiser will seek restitution, or damages in the amount of the benefit it has conferred on Defendants through these payments.  *See Hernandez v. Lopez*, 180 Cal. App. 4th 932, 939, 103 Cal. Rptr. 376 (Cal. 4th App. Dist. 2009)

("[T]he measure of damages for unjust enrichment is synonymous with restitution.") (internal citations and quotations omitted).

Dated: February 16, 2010

Respectfully submitted,

By: /s/ Linda P. Nussbaum
Linda P. Nussbaum

KAPLAN FOX & KILSHEIMER LLP
Linda P. Nussbaum, Esq.
850 Third Avenue, 14th Floor
New York, New York 10022

*Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

Thomas Greene
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

/s/ Barry Himmelstein
Barry Himmelstein
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

*Of Counsel*