UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | MDL Docket No. 1629<br><br>Master File No. 04-10981<br><br>Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin |

**DEFENDANTS' OBJECTIONS TO PLAINTIFFS'
PROPOSED AMENDMENTS TO THE THIRD AMENDED COMPLAINT**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") hereby object to any attempt by Plaintiffs to amend the Third Coordinated Amended Complaint on the eve of trial. Plaintiffs have not made any motion to amend their complaint; however, by insertions to the Joint Pre-Trial Memorandum [2500], Plaintiffs have indicated that they seek two amendments to the Complaint. Plaintiffs have attempted to accomplish a third, de facto amendment to the Complaint to add additional parties through the expedient of dropping a footnote to their recent pre-trial filings.

For the reasons discussed below, Defendants object to and oppose all such attempts by Plaintiffs to amend their complaint, which should be denied.

**ARGUMENT**

**I.  Plaintiffs May Not Amend Their Complaint To Add An Additional RICO Enterprise**

Plaintiffs first seek to amend their Third Coordinated Amended Complaint [583] to add an alleged association-in-fact between Pfizer and Medical Action Communications (MAC), a medical marketing firm, to the list of RICO enterprises. Plaintiffs characterize their proposed amendment, by which they seek to add a never-before pled RICO enterprise, as a "technical amendment[]." (Joint Pre-Trial Memorandum at 61.) They make an even more misleading statement when they suggest that the Court previously granted leave to make the amendment now sought. (*Id.*) Plaintiffs have, in fact, been given three opportunities to amend their

complaint, but never to add a MAC enterprise. Indeed, at the time of the second amendment to the complaint, this Court stated: "With the exception of the proposed amendment regarding timing of the alleged illegal acts (i.e. post 2001 activities), no further amendments will be permitted." (9/17/06 Docket entry.)

In their unending efforts to expand the temporal scope of this litigation, on November 2, 2006, Plaintiffs moved for leave to file a Third Amended Complaint. (Pl. M. for Leave to File 3d Am. Compl. [528].) By their proposed amendment, Plaintiffs sought to include allegations extending into 2004. (Mem. of Law in Support of Pl. M. for Leave to File 3d Am. Compl. [531].) Nowhere in their supporting memorandum did Plaintiffs indicate that they wanted to add another RICO enterprise or sub-enterprise. While allegations regarding Medical Action Communications, Inc. ("MAC") were made in the proposed Third Amended Complaint, they were not in any of the sections where enterprise allegations were made.

For example, Section IV of the proposed Third Amended Complaint contained the "Factual Allegations." Subsection D was entitled "The Promotion Enterprise." This section was further subdivided by seven medical marketing firms, which did not include MAC. (Proposed 3d Am. Compl. [530] ¶¶ 44-90.) In paragraph 233, where Plaintiffs purported to describe their Promotion Enterprise, Plaintiffs stated: "The enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of (i) Defendants, including their employees and agents, (ii) the vendor participants, Cline Davis, Physicians World, Sudler & Hennessey, MEDED, MES, HCC and AMM/Adelphi, and (iii) the physician participants as set forth in paragraph 99, supra ('Promotion Enterprise')." (*Id.* ¶ 223.)[1] Plaintiffs did not identify MAC in connection with this enterprise allegation.

In Section G, Plaintiffs alleged the existence of seven alternative sub-enterprises.

---

[1] This Court rejected Plaintiffs' allegations of a global Promotion Enterprise as an impermissible "hub and spoke" enterprise. *See In re Neurontin Mktg., Sales Practices, & Products Liab. Litig.*, 433 F. Supp. 2d 172, 182-83 (D. Mass. 2006). Plaintiffs stated that they had included in the complaint "facts and claims that have been dismissed by the Court to preserve Plaintiffs' right to seek review on these matters." (Proposed 3d Am. Compl. at 1 n.1.)

Plaintiffs alleged separate associations-in-fact formed with each of the following medical marketing firms: Cline Davis, Physicians World, Sudler & Hennessey, MEDED/MEDCON, MES, HCC and AMM/Adelphi. (*Id.* ¶ 177.) Once again, MAC was not mentioned. Additionally, in their Second through Ninth Claims for Relief, Plaintiffs alleged RICO violations through each of the sub-enterprises identified in paragraph 177. Again, no claim was made for a "MAC enterprise." (*Id.* ¶¶ 244-347.) While the Proposed Third Amended Complaint did include allegations about MAC, it did not include "enterprise" allegations. Pleading fraud and pleading enterprise are not the same.

On December 12, 2006, this Court granted Plaintiffs' motion to amend. The Court's order stated: "The motion to amend is allowed in part with respect to allegations through May, 2004." (12/12/06 Docket entry.) The Court did not grant leave to amend to plead an additional RICO enterprise, because no such amendment had been sought.

The amendment Plaintiffs now propose is clearly more than the "technicality" they describe. Accordingly, Plaintiffs were required to bring a timely motion to amend pursuant to Federal Rule of Civil Procedure 15. *See* Fed. R. Civ. P. 15(a)(2) (providing that a party can amend its complaint "only with the opposing party's written consent or the court's leave."). As the First Circuit has stated: "Any attorney authorized to practice in the federal court should know that, in order to amend a complaint, a motion must be made to do so." *Ortiz Villafane v. Segarra*, 797 F.2d 1, 2 (1st Cir. 1986). Seeking such a major substantive amendment through insertion in the Rule 16.5 Pre-trial Memorandum is improper. *See Tarr v. Fedex Ground Package Sys., Inc.*, No. 08-1454, 2010 WL 331846, at *10 (W.D. Pa. Jan. 28, 2010) (rejecting plaintiffs' "attempt[] in his pre-trial statement to amend his complaint to add claims for stress related injuries" as "not consistent with the Federal Rules of Civil Procedure").

In any event, Plaintiffs' request for an amendment is untimely. "[W]here, as here, a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some 'valid reason for his neglect and delay.'" *Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15, 19-20 (1st Cir.

3

1979) (quoting *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967)). It is well-settled that "the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Steir ex rel. Steir v. Girl Scouts of USA*, 383 F.3d 7, 12 (1st Cir. 2004); *see also Riofrio Anda v. Ralston Purina, Co.*, 959 F.2d 1149, 1154-55 (1st Cir. 1992) (affirming denial of leave to amend where plaintiffs submitted motion to amend two months after scheduling order deadline had passed).

In short, Plaintiffs cannot present any justification for waiting until the eve of trial to amend their complaint to add a new enterprise to their allegations. Courts have held that a party's delayed request to amend its complaint may alone be sufficient to justify denial of leave to amend. *See Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir. 1981) (holding that trial court acted within its discretion in refusing to allow amendment considering motion to amend was made on eve of trial and "after discovery and after an unexplained nineteen-month delay").[2] Especially here, where Plaintiffs were given three opportunities to amend the Complaint and have presented no legitimate reason why a timely motion could not have been made, leave to amend should be denied. *See United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (affirming denial of leave to amend and noting that "Plaintiffs do not get a fourth chance to try to get it right"); *Pope v. MCI Telecomms. Corp.*, 937 F.2d 258, 263 (5th Cir. 1991) (affirming denial of amendment where proposed amendment was based upon the same facts as plaintiff's previous claims and was made less than a week before trial).

## II. Plaintiffs May Not Amend Their Complaint To Allege A New Theory Of Injury

Plaintiffs further seek to amend the Complaint to allege a new theory of injury. (Joint

---

[2] Plaintiffs claim that Defendants will suffer no prejudice from such an amendment because the depositions of three MAC employees were taken in this case. (Joint Pre-Trial Mem. at 59-60.) However, Plaintiffs once again fail to distinguish between allegations of fraud (which had been pled when such persons were deposed) and allegations of enterprise, which had not. Moreover, Plaintiffs failed to designate the deposition testimony of these three witnesses before the agreed upon deadline for designations passed and now seek to use those untimely designations at trial to support this alleged, unpled, sub-enterprise. This lack of diligence should bar any last gasp effort to amend the Complaint.

Pre-Trial Mem. at 60-61.) When considering Defendants' first motion to dismiss, the Magistrate Judge recommended dismissal of the Coordinated Plaintiffs' complaint for the following reason:

> The Report recommended dismissal of Coordinated Plaintiffs' claims on grounds that they did not allege a cognizable injury. According to the Report, the FCAC's fatal flaw is that it does not allege Neurontin was ineffective, only that Coordinated Plaintiffs paid for a drug that was not proven to be effective. (Report at 21-22.) The Class Plaintiffs avoid this fate because they adequately alleged that Neurontin was ineffective, and, as such, paid for a drug that didn't work as promised. (Id. at 21.) Because the FCAC does not allege that Neurontin failed to perform as advertised, the Report concluded that the FCAC does not allege a cognizable injury. (Id.)

*In re Neurontin Mktg.*, 433 F. Supp. 2d at 185. This Court agreed, observing that "a direct allegation that Neurontin was not effective for Coordinated Plaintiffs' insured patients does not appear anywhere else in the complaint, nor is one associated with any other causes of action." *Id.* Allowing leave to amend, the Court observed:

> In their objections to the Report, Coordinated Plaintiffs argue, however, that they sustained an economic injury because Defendants' fraudulent activities caused Plaintiffs to pay for Neurontin prescriptions at excessive doses and instead of cheaper alternatives, citing *Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 349-50 (2d Cir.2003). Unlike *Desiano*, nowhere in the FCAC do the Coordinated Plaintiffs make any allegations that cheaper alternatives were available and that Plaintiffs are seeking any difference in price. *Cf. id.* at 349 (describing damages sought as "the excess money Plaintiffs paid")

*Id.* at 185-86. A comparison of some of the allegations highlighted by the Magistrate Judge in his report and recommendation on the first motion to dismiss makes clear that the efficacy allegations in the Third Amended Complaint are essentially the same as found deficient to allege injury in the First Amended Complaint:

| First Amended Complaint | Third Amended Complaint |
|---|---|
| "The fraudulent scheme was designed to, and did, cause Plaintiffs to pay for Neurontin prescriptions to treat conditions for which the drug is not proven to be medically safe, efficacious, effective or useful." (¶ 183.) | The fraudulent scheme was designed to, and did, cause Plaintiffs to pay for Neurontin prescriptions to treat conditions for which the drug is not proven to be medically safe, efficacious, effective or useful. (¶ 225.) |

| | |
|---|---|
| As detailed above, Defendants' fraudulent scheme consisted of, *inter alia*: (a) deliberately misrepresenting, and causing others to misrepresent, the uses for which Neurontin was safe and effective so that Plaintiffs paid for this drug to treat symptoms for which it was not scientifically proven to be safe, efficacious, effective and useful . . . . (¶ 248) | As detailed above, Defendants' fraudulent scheme consisted of, inter alia: (a) deliberately misrepresenting, and causing others to misrepresent, the uses for which Neurontin was safe and effective so that Plaintiffs paid for this drug to treat symptoms for which it was not scientifically proven to be safe, efficacious, effective and useful . . . . (¶ 290) |
| Defendants' scheme and the above described racketeering activities amounted to a common course of conduct intended to cause Plaintiffs and others to pay for Neurontin to treat conditions for which it was not proven to be safe and efficacious, effective and useful. (¶ 249) | Defendants' scheme and the above described racketeering activities amounted to a common course of conduct intended to cause Plaintiffs and others to pay for excessive amounts of Neurontin. (¶ 291.) |

*Cf.* Magistrate Report & Recommendation, at 21-22 (Jan. 31, 2006). What is different about the injury allegations of the First and Third Complaints is that the Third Complaint alleges that "[t]here were numerous alternative medications that were cheaper and more optimal than Neurontin to treat the conditions for which Defendants were touting Neurontin, including several medications (such as aspirin and ibuprofen) not ordinarily covered by Plaintiffs' formularies. . . . Defendants' unlawful scheme thus caused Plaintiffs to pay for Neurontin where alternative treatments at a small fraction of the cost were readily available." (3d Am. Compl. ¶¶ 173-74.)

Thus, Plaintiffs survived dismissal by attempting to bring themselves within the framework of *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir.2003). At this Court's invitation, they specifically pled a theory of injury and causation premised on the assertion that, were it not for the Defendants' alleged fraudulent conduct, they would have paid for cheaper, more optimal drugs, rather than Neurontin. It was this theory that also allowed Plaintiffs to survive summary judgment. *See In Re Neurontin Mktg. & Sales Practices Litig.*, ___ F. Supp. 2d ___, 2010 WL 53568, at *12-13 (D. Mass. Jan. 8, 2010). Plaintiffs should not be allowed to amend their complaint on the eve of trial so as to plead a different theory.

### III. Plaintiffs May Not Amend Their Complaint To Add Kaiser Foundation Health Plan's Subsidiaries

In several of their pre-trial filings, Plaintiffs have included a footnote stating that "Kaiser Foundation Health Plan, Inc. is the parent company of the following companies and has brought this lawsuit on behalf of itself and its subsidiaries: Kaiser Foundation Health Plan of Colorado; Kaiser Foundation Health Plan of Georgia, Inc.; Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.; Kaiser Foundation Health Plan of the Northwest; and Kaiser Foundation Health Plan of Ohio." (Pl. List of Witnesses To Be Presented at Trial [2179] at 1 n.1.) The only two Kaiser entities that are plaintiffs in this action, however, are Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals. These subsidiaries were not included in the description of the parties in the Complaint. Plaintiffs have not made a motion to amend their complaint to add new parties, and are essentially attempting to accomplish a *de facto* amendment by footnote. This is improper. *See O'Rear v. Am. Family Life Assur. Co. of Columbus, Inc.*, 784 F. Supp. 1561, 1564-65 (M.D. Fla. 1992).

Defendants raised this issue in their motion to exclude Plaintiffs' expert Raymond Hartman, who made no attempt to restrict his damages calculation to the prescriptions paid for by the Plaintiffs in this action. (*See* Mem. in Support of Defendants' Motion in Limine to Exclude the Testimony of Raymond S. Hartman [2320] at 12-13.) Plaintiffs responded that the Complaint defines Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals as including these previously unnamed subsidiaries. (Pl. Consol. Opp. to Def. M. in Limine to Exclude the Testimony of Meredith Rosenthal & Raymond S. Hartman [2419] at 11-12.) But the Complaint contains no such allegation. The Complaint merely indicates, incorrectly, that Kaiser Foundation Health Plan, Inc. has operations in other states.[3]

---

[3] The Complaint alleges as follows:

Kaiser Foundation Health Plan, Inc., a not-for-profit corporation with its headquarters in Oakland, California, is among the largest health maintenance organizations in the United States. As of December 2004, Kaiser Foundation Health Plan, Inc. had 8.2 million members in nine states and the District of Columbia, with over 6 million members in California. The remaining members are in Colorado, Georgia, Maryland, Virginia, Oregon, Washington, Hawaii, Ohio and the District of

(cont'd)

7

Federal Rule of Civil Procedure 10(a) mandates that the title of the complaint "name all the parties" and while courts do consider the body of the complaint when determining the identities of the parties, none of the Kaiser subsidiaries are mentioned anywhere in the Complaint. *See, e.g., Saykin v. Donald W. Wyatt Detention Ctr.*, No. C.A. 07-182ML, 2008 WL 2128059, at *2 (D.R.I. May 20, 2008) (dismissing defendants where complaint was "utterly devoid of any reference" to them). Nowhere does Kaiser indicate that it is bringing this action on behalf of its subsidiaries, nor does it state who those subsidiaries are. Kaiser cannot amend its complaint, on the eve of trial, simply by dropping footnotes in its pre-trial filings, nor can it formally add these subsidiaries as plaintiffs at this late stage. *See In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884-85 (8th Cir. 2009) (holding that merely including a footnote in response to motion to dismiss requesting an opportunity to amend is insufficient method of moving to amend); *Booker v. Wash. Mut. Bank, FA*, 375 F. Supp. 2d 439, 441 (M.D.N.C. 2005) ("A memorandum in opposition or response . . . cannot remedy the defects in a party's complaint.").

As discussed above, Plaintiffs have had ample opportunity to amend their complaint in the past and have never identified any of the subsidiaries. Plaintiffs cannot now properly add

---

*(cont'd from previous page)*
    Columbia. Kaiser Foundation Health Plan, Inc. offers its members pharmacy benefits that include coverage of Neurontin. Kaiser Foundation Health Plan, Inc. owns and operates its own in-house pharmacies in the same nine states in which it has members and the District of Columbia. These pharmacies purchase prescription drugs, including Neurontin, and dispense these drugs directly to Kaiser Foundation Health Plan, Inc. members. A limited number of health plan members purchase their prescription drugs through a pharmacy benefit manager retained by Kaiser Foundation Health Plan, Inc. From 1994 to the present, Kaiser Foundation Health Plan, Inc. has paid tens of millions of dollars for excessive prescriptions of Neurontin caused by Defendants' wrongful acts.

    Kaiser Foundation Hospitals is a not-for-profit California corporation which owns and operates thirty hospitals in California, Oregon and Hawaii and contracts with Kaiser Foundation Health Plan, Inc. to provide or arrange for hospital services for Kaiser Foundation Health Plan, Inc. members in each state in which Kaiser Foundation Health Plan, Inc. operates. From 1994 to the present, Kaiser Foundation Hospitals has paid tens of millions of dollars for excessive prescriptions of Neurontin caused by Defendants' wrongful acts.

Third Coordinated Amended Complaint [583], ¶¶ 7-8.

parties to this litigation.

## CONCLUSION

For all of the forgoing reasons, Defendants respectfully request that the Court reject Plaintiffs' attempts to amend their Complaint on the eve of trial.

Dated:   February 21, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ Mark S. Cheffo
     Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Email: Mark.Cheffo@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ Raoul D. Kennedy
     Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400
Email: Raoul.Kennedy@skadden.com

WHEELER TRIGG O'DONNELL LLP

By: /s/ James E. Hooper
     James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800
Email: hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

---

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on February 21, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo