UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------- x
NEURONTIN MARKETING, SALES PRACTICES, AND      :   MDL Docket No. 1629
PRODUCTS LIABILITY LITIGATION                  :
                                               :   Master File No. 04-10981
-------------------------------------------------- x
THIS DOCUMENT RELATES TO:                      :   Judge Patti B. Saris
                                               :
-------------------------------------------------- x   Magistrate Judge Leo T.
HARDEN MANUFACTURING CORPORATION;              :   Sorokin
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,    :
dba BLUECROSS/BLUESHIELD OF LOUISIANA;         :
INTERNATIONAL UNION OF OPERATING ENGINEERS,    :
LOCAL NO. 68 WELFARE FUND; ASEA/AFSCME LOCAL   :
52 HEALTH BENEFITS TRUST; GERALD SMITH; and    :
LORRAINE KOPA, on behalf of themselves and all others :
similarly situated, v. PFIZER INC. and WARNER-LAMBERT :
COMPANY.                                       :
                                               :
-------------------------------------------------- x
THE GUARDIAN LIFE INSURANCE COMPANY OF         :
AMERICA v. PFIZER INC. and                     :
AETNA, INC. v. PFIZER INC.                     :
-------------------------------------------------- x
```

## MEMORANDUM IN OPPOSITION TO CLASS PLAINTIFFS' MOTIONS FOR ORAL ARGUMENT AND LEAVE TO FILE MEMORANDUM REGARDING "*GUARDIAN*" RULING

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") submit this Memorandum in Opposition to Class Plaintiffs' Motions for Oral Argument and Leave to File Memorandum Regarding "Guardian" Ruling [2473]. For the reasons discussed below, Plaintiffs' motion should be denied.

## PRELIMINARY STATEMENT

On January 8, 2010, this Court entered its order granting in part, and denying in part, Defendants' motion for summary judgment. The Court granted the Defendants' motion for summary judgment as to Aetna, Inc. ("Aetna") and Guardian Life Insurance Company ("Guardian"), but denied it as to Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals ("Kaiser"). *See In re Neurontin Mktg. & Sales Practices Litig.*, No. 04-cv-10981-PBS,

2010 WL 53568, at *1 (D. Mass. Jan. 8, 2010) (to be published in F. Supp. 2d) ("Summary Judgment Decision"). The Court restricted its order to the Coordinated Third-Party Payors ("Coordinated TPPs") and, therefore, has not yet ruled on Defendants' motion to the extent directed at the Class Plaintiffs, including both third-party payors ("TPPs") and consumers. *See id.* The Class TPPs are understandably concerned about the implications of this Court's Summary Judgment Decision as to them. Kaiser survived summary judgment by asserting that it directly relied upon alleged misrepresentations by Defendants when it expanded formulary access to Neurontin. *See id.* at *11. The Class TPPs have never asserted such a theory. Indeed, at the class certification hearing, proposed Class Counsel went to great pains to distinguish the Class TPPs from Kaiser:

> MR. SOBOL: Right, so for anticonvulsants, what McDonough says – and the record is replete on this – is that for anticonvulsants, third-party payors won't restrict that category, given the nature of that kind of medication.
>
> THE COURT: But Kaiser does. So how many are like Kaiser? How do we know?
>
> MR. SOBOL: Kaiser would be unique . . . .

(10/15/09 Hr'g Tr. [2190] at 19:10-16.)

> MR. SOBOL: Sure, and the answer to that first is, in this case, the only thing we do care about is when the prescription was actually written and paid for. In other words, if there are third-party payors that are out there that have policed and prevented Neurontin scripts from being filled, they aren't in this case.
>
> THE COURT: Well, Kaiser is.

(*Id.* at 21:13-19.)

> MR. SOBOL: Kaiser is relatively or almost unique in the country in terms of it being a managed care organization with a high involvement with the physicians in the way that the coverages occur. That is highly unique in the country.

(*Id.* at 23:8-12.) In other words, the Class TPPs are much more like Guardian and Aetna than they are like Kaiser. It is more than a little odd, therefore, that Plaintiffs cling to their hopes that they can persuade this Court to reverse its class certification decision when the logical conclusion that flows from this Court's Summary Judgment Decision is that the Class TPPs'

claims should be dismissed in their entirety.

In any event, Plaintiffs' attempt to portray this Court's Summary Judgment Decision as novel are unavailing. This Court's rejection of Plaintiffs' aggregate model of causation is supported by a long line of cases in which courts have held that TPPs may not recover under RICO and other laws absent evidence that specific physicians would not have prescribed the drug at issue absent the challenged conduct. Further, the Court's insistence upon evidence of a direct injury is fully consistent with the Supreme Court's recent decision in *Hemi Group, LLC v. City of New York*, No. 08-969, 2010 WL 246151 (Jan. 25, 2010) (to be published in S. Ct.).

## ARGUMENT

### I.   The Class Plaintiffs' Reconsideration Motion Is Moot Because Summary Judgment Is Required

The Class TPP Plaintiffs request leave to submit yet another brief in support of their reconsideration motion regarding class certification. However, they fail to confront the more threshold question of whether any of their claims even survive, let alone support class certification. Although this Court reserved ruling on Defendants' motion for summary judgment as to the Class Plaintiffs, it is clear that the Class TPPs have not asserted a theory of direct injury comparable to that alleged by Kaiser. The Class TPPs have expressly disavowed any claim that they were directly misled or that they would have changed their formulary decisions. (*See* 10/15/09 Hr'g Tr. [2190] at 18:10-19:4.) They rely entirely upon a claim that *physicians* were misled. It was just such a claim, asserted by Guardian and Aetna, that the Court found could not survive summary judgment. As this Court recognized:

> [T]rial courts have almost uniformly held that in a misrepresentation action involving fraudulent marketing of direct claims to doctors, a plaintiff TPP or class must prove through individualized evidence that the misrepresentation caused specific physicians, TPPs, or consumers to rely on the fraud, and cannot rely on aggregate or statistical proof. . . .
>
>      . . . .
>
> To prevail, a TPP must demonstrate that it relied on a misrepresentation or omission, or provide a reliable methodology to calculate the percentage of the doctors who prescribed Neurontin based on Defendants' alleged fraud.

> Accordingly, the Coordinated Plaintiffs cannot rely solely on Dr. Rosenthal's
> report as the silver bullet to establish causation.

*In re Neurontin Mktg. & Sales Practices Litig.*, No. 04-cv-10981-PBS, 2010 WL 53568, at *10
(D. Mass. Jan. 8, 2010) (to be published in F. Supp. 2d). The Court granted summary judgment
as to Aetna and Guardian because they did not present evidence that they "directly relied" on any
purported misrepresentation or omission made to them, *id.* at *11, and as such, "their causation
argument is wholly dependent on individualized proof that their members' prescribing
physicians relied on defendants' misrepresentations," *id.* at *12.

This same analysis applies with even greater force to the Class TPPs, who have not even
alleged, let alone shown, any direct reliance. Indeed, in their motion for reconsideration, the
Class TPPs made the following binding and fatal judicial admission:

> Unlike the Coordinated Plaintiffs, Class Plaintiffs have ***never*** alleged or argued
> that Defendants misled the TPP Class Representatives or (absent class members)
> into giving Neurontin preferential treatment on their formularies, or of causing
> them to pay for the drug when they otherwise would not have."

(Class Pls. Mot. Recons. Order Denying Renewed Mot. Class Cert. [1796] at 18 (emphasis in
original).)

The Supreme Court's recent decision in *Hemi Group, LLC v. City of New York*, No. 08-
969, 2010 WL 246151 (Jan. 25, 2010) (to be published in S. Ct.), lends additional support to this
Court's ruling. In *Hemi Group*, the Supreme Court reiterated that proximate cause under RICO
requires "'some direct relation between the injury asserted and the injurious conduct alleged.' A
link that is too remote, purely contingent, or indirect is insufficient." 2010 WL 246151, at *5
(internal quotation marks and citations omitted). Plaintiffs cannot prove a direct relation where
"[m]ultiple steps . . . separate the alleged fraud from the asserted injury," *id.* at *9, for "'[t]he
general tendency of the law, in regard to damages at least, is not to go beyond the first step.'" *Id.*
at *6 (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 271-72 (1992)) (alteration in
original). A "theory of causation [that] requires [a court] to move well beyond the first step . . .
cannot meet RICO's direct relationship requirement." *Id.* Nor may Plaintiffs prove a direct
injury with a theory of causation that depends on "separate actions carried out by separate

- 4 -

parties." *Id.* at *7.  Where, as here, Plaintiffs' claims depend upon an independent assessment of (1) whether individual physicians were exposed to the alleged misrepresentations, (2) whether they based their prescribing decisions on the conduct alleged by Plaintiffs and (3) whether they would have done anything different in a hypothetical "but for" world, Plaintiffs' theory of recovery is too indirect to satisfy RICO's proximate cause standard.[1]

Plaintiffs' attempt to postpone the inevitable by requesting that the Court reserve decision until after the Kaiser trial should be rejected.  The Court dismissed Aetna's and Guardian's claims in advance of the Kaiser trial because there are no issues of material fact regarding their allegations of direct reliance.  *A fortiori*, the Class TPP Plaintiffs' claims should be dismissed immediately because they do not even allege direct reliance.

## II.   Plaintiffs' Unsuccessful Attempts To Distinguish a Legion of On-Point Cases Cannot Overcome Their Lack of Any Supporting Authority

In their ill-conceived attempt to characterize this Court's ruling as novel, the Class TPPs continue to rely upon inapposite price inflation and antitrust cases.  The use of aggregate proof in those types of cases is not at issue here.[2]  Instead, the question before this Court is whether aggregate proof can be used to establish that thousands of physicians based prescribing decision upon alleged misrepresentations.  As the numerous courts to grapple with this issue have concluded, the decision of a physician to prescribe a drug for a patient is too highly individualized and subject to too many different influences to be addressed through aggregate

---

[1] Significantly, the Supreme Court limited its prior holding in *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S. Ct. 2131 (2008), to a specific fact pattern not presented here.  As the Court explained, *Bridge* involved a "zero sum" situation where the defendant's acquisition of liens necessarily reduced the liens available for the plaintiffs to obtain.  Thus, there were no independent factors that accounted for the plaintiffs' alleged injury.  *Hemi Group*, 2010 WL 246151, at *8-9.  In contrast, in this case, Plaintiffs' theory of causation depends on the independent decision-making of thousands of physicians.

[2] Plaintiffs argue that a trio of antitrust cases that this Court cited for the general proposition that a plaintiff must be able to segregate damages due to unlawful conduct (an unassailable proposition) all allowed for the *possibility* that aggregate proof could be sufficient in some situations.  (Pl. Proposed Mem. [2473-2] at 10-11 (discussing *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335 (2d Cir. 1988); *Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342 (9th Cir. 1985); and *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1982)).)  Even if true, the use of aggregate damages evidence in antitrust litigation does not support its viability in this case.

proof.    It presents an entirely different question than, for example, whether alleged anti-competitive behavior had an impact on market prices for a commodity.

It is for this reason that the Class TPPs' reliance upon *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 582 F.3d 156 (1st Cir. 2009) ("*In Re AWP*"), a price inflation case, is misplaced.  Significantly, in *Hood, ex rel. Mississippi v. Eli Lilly & Co.* (In re Zyprexa Products Liability Litigation), No. 04-MD-1596, 2009 WL 4260857 (E.D.N.Y. Dec. 1, 2009) (to be published in F. Supp. 2d) ("*Hood*"), Judge Weinstein quoted at length from *In re AWP* and considered whether its reasoning could be extended to a case such as this, where a TPP seeks to recover based upon physician prescribing decisions.  *See* 2009 WL 4260857, at *48-50. Although Judge Weinstein discussed *In re AWP* favorably, after a thorough analysis, he nonetheless rejected the third party payors' aggregate proof.

Significantly, the First Circuit in *In re AWP* noted that the defendants were provided ample opportunity to depose TPPs other than the named plaintiff and, nonetheless, could not marshal "specific evidence" establishing variations in class member knowledge or expectations. *Hood*, 2009 WL 4260857, at *51 (quoting *In re AWP*, 582 F.3d at 196.)  The First Circuit further observed that the voluminous record developed showed "strikingly consistent" evidence as to the TPPs. *Id.* at *49. Reconciling *In re AWP* with the majority Individualized Proof Rule, Judge Weinstein explained:   "The Court of Appeals for the First Circuit emphasized that factual inquiries into the circumstances that might have differentiated class members had revealed little significant difference between them." *Id.* at *51.

In contrast to *In re AWP*, this Court does not have an extensive record demonstrating consistency among the prescribing physicians.[3]  Instead, the testimony of prescribing physicians has only highlighted individual variations and contradicted the assumptions made by Plaintiffs'

---

[3] For purpose of comparing the *AWP* class action to the "structural" class action represented by the TPPs' aggregate claims in this case, the absent class members in *In re AWP* occupy the position held by the prescribing physicians here.  It is the third-party reliance of the prescribing physicians upon which the TPPs' claims are based.

experts. *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 330 (D. Mass. 2009).

Analyzing the record before him in *Hood*, Judge Weinstein concluded that use of the aggregate model could not be extended beyond a price inflation theory, such as the one at issue in *In re AWP* and the claim described by him in his *Zyprexa* class certification opinion. *See Hood*, 2009 WL 4260857, at *52-53. As the court stated:

> The Third-Party Payors certification decision found that the Individualized Proof Rule did not apply where aggregate proof was used to establish an inflated price and resulting damages. An inflated price is paid by, and is detrimental to, *all* market participants, regardless of their knowledge or individual circumstances, obviating the need for separate proof with respect to each individual participant.

*Id.* at *54.[4]

Here, the TPP Plaintiffs have repeatedly disavowed any price inflation claim. (Dkt. 101, Joint Mem. of Class and Coordinated Pls. in Opp. to Defs. Mot. to Dismiss at 13 ("Plaintiffs advance no such 'price inflation' theory here."); Dkt. 1184, Reply Mem. in Supp. of Renewed Mot. for Class Cert. at 20 n.27 ("[p]laintiffs advance no such theory" regarding a purported "'effect on pricing of the marketing campaign in which defendant engaged'")); *see also In re Neurontin*, 257 F.R.D. at 324 (observing that the present case "does not involve price inflation"); *id.* at 326 n.7 ("Judge Weinstein, in an opinion [*Zyprexa*] published after *McLaughlin*, permitted a presumption of exposure and reliance akin to the fraud-on-the-market theory in a pharmaceutical price inflation case. As the instant case does not involve price inflation, that opinion has no direct bearing on the Court's decision." (citation omitted)). For all these reasons, the Class TPPs' reliance on *In re AWP* is misplaced.

Incredibly, the Class TPPs also argue that Judge Weinstein's "Mississippi Zyprexa

---

[4] Even as to the limited purpose for which Judge Weinstein permitted the use of aggregate evidence by the *Zyprexa* class plaintiffs, he noted that there was doubt as to its legal viability: "[I]n light of the majority of the Courts of Appeals' hostility to the use of aggregate proof, as demonstrated in *McLaughlin* and other decisions . . . , there is some doubt concerning the appellate court's willingness to accept statistical evidence of the kind that is necessary to the success of the Third-Party Payors' claims." *Hood*, 2009 WL 4260857, at *54. Given such doubt, Judge Weinstein stayed the litigation until the Second Circuit decided this "pivotal issue." *Id.* at *62.

Decision" supports the use of aggregate evidence in this case. (Pl. Proposed Mem. [2473-2] at 12-14.)   However, the fact that Judge Weinstein reiterated his oft-stated view that aggregate evidence should be permitted in certain cases, but nonetheless granted summary judgment dismissing the third-party payors' claims makes clear that neither *Hood* (Zyprexa) or, by analogy, this case are appropriate cases for the use of aggregate proof.   Plaintiffs essentially argue that Judge Weinstein got it wrong because he misconstrued the decisions upon which he based his decision.   (*Id.* at 13.)   Plaintiffs' attempt to distinguish the cases cited by Judge Weinstein in support of the Individualized Proof Rule are unavailing.

First, Plaintiffs argue that the decisions cited by Judge Weinstein are distinguishable because they involved consumers.   (*Id.*)   However, the individualized prescribing decisions of physicians are even more complex and individualized than a consumer's choice of soda with or without saccharine.   Indeed, this point was made by the Eighth Circuit in *St. Jude*, one of the cases cited by Judge Weinstein:

> Evidence of representations made to the treating physicians also illustrates the predominance of individual issues concerning representations and reliance. Physicians learned about St. Jude's heart valve in different ways.   One doctor heard about the valve from a senior partner, another discovered it at a cardiology conference, and a third learned about the valve from a St. Jude sales representative and a St. Jude advertisement.   Whether the information on which physicians based their actions ultimately can be traced to a representation by St. Jude undoubtedly will vary by individual physician.   Even where the present record does contain evidence that a physician eventually talked to a St. Jude representative or read Silzone promotional materials, those physicians assert that they did not rely on the representations by St. Jude in deciding to recommend the Silzone valve to their patients.   Any trial thus would require physician-by-physician inquiries into each doctor's sources of information about the valve, and the credibility of any physician's denial that he relied on St. Jude's statements.

*In re St. Jude Med., Inc.*, 522 F.3d 836, 839 (8th Cir. 2008).

Second, Plaintiffs argue that these cases did not address the use of statistical or other aggregate proof.   As an initial matter, each of these cases was a class action, where the issue is always whether class members' claims can be established through common proof.   By holding that individualized evidence was required, the courts necessarily rejected the proposition that the

claims could be proven through common or aggregate proof.  It was precisely for this reason that

Judge Weinstein explained that a third party payor claim, which also depends upon the viability

of aggregate proof, is conceptually and structurally no different than a class action.  *See Hood*,

2009 WL 4260857, at *35.  In any event, it is Plaintiffs, not Judge Weinstein, who misconstrue

the decisions.  For example, in *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir.

2008), the court expressly rejected the plaintiffs' proffer of aggregate proof on both reliance and

damages. *See id.* at 223-25, 231-33.

Thus, Judge Weinstein's reasons for rejecting aggregate proof of Mississippi's claims

apply with equal force to Plaintiffs' claims:

> All of the theories advanced under both claims have in common that they
> require a showing of reliance on Lilly's acts or omissions across the
> heterogeneous population of Mississippi patients and prescribing physicians,
> either in deciding to purchase Zyprexa at the market price, or in deciding to
> administer Zyprexa at all. They are subject to the Individualized Proof Rule
> regarding proof of reliance by aggregate evidence.

*Hood*, 2009 WL 4260857, at *62.

Plaintiffs' attempt to distinguish the remaining cases relied upon by this Court are also

without merit.   Plaintiffs argue that *Ironworkers Local Union No. 68 v. AstraZeneca*

*Pharmaceuticals LP*, 585 F. Supp. 2d 1339 (M.D. Fla. 2008) (Seroquel), *In re Actimmune*

*Marketing Litigation*, 614 F. Supp. 2d 1037 (N.D. Cal. 2009) (Actimmune), and *Southern Illinois*

*Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175, 2009 WL

3151807 (S.D.N.Y. Sept. 30, 2009) (Lipitor), should be disregarded because the courts in those

cases did not specifically consider the use of a statistical, aggregate model.  Plaintiffs' argument

misses the point.  The courts did not reach the sufficiency of any statistical model because the

cases were dismissed pursuant to Rule 12(b)(6) for failure to *plead* individual causation, injury

and reliance.

For example, in *Ironworkers*, the TPPs sought to recover under RICO and the New Jersey

Consumer Fraud Act ("NJCFA") for alleged off-label marketing of Seroquel, contending that

they would have paid for cheaper alternative drugs absent the defendants' alleged fraud.

Dismissing the plaintiffs' claims, the court explained:

> [I]n the context of this case, establishing that Plaintiffs' injuries were caused by Defendants' misconduct would require an inquiry into the specifics of each doctor-patient relationship implicated by the lawsuit. In other words, each physician who prescribed Seroquel to an individual consumer or health and welfare fund member would have to be questioned as to whether his or her independent medical judgment was influenced by Defendants' misrepresentations, and to what extent.

*Ironworkers*, 585 F. Supp. 2d at 1344. Likewise, in *In re Actimmune*, the court explained: "Plaintiffs need to allege what specific information the individual plaintiffs or their physicians had about the drug, the extent to which they relied upon that information, and that the information relied upon was false, misleading or otherwise fraudulent." 614 F. Supp. 2d at 1052. In *Southern Illinois Laborers*, the court also rejected Plaintiffs' claim predicated on physician reliance because the plaintiffs "d[id] not cite a single instance in which a physician received the fraudulent information and decided to prescribe Lipitor based on the information she received." 2009 WL 3151807, at *6. Plaintiffs concede that yet another court, the District of New Jersey, reached a similar conclusion in *District 1199P Health & Welfare Plan v. Janssen, L.P.*, Nos. 06-3044, et al., 2008 WL 5413105, at *6 (D.N.J. Dec. 23, 2008). (Pl. Proposed Mem. [2473-2] at 6 n.1.)

That the claims of the TPPs in these cases did not even survive the dismissal stage is hardly a basis for arguing that a class should be certified in the instant action. The courts' conclusion that injury, causation and reliance had to be *pled* on an individual, physician-by-physician basis necessarily forecloses the argument that they could be *proven* on an aggregate basis.

Plaintiffs concede that the court in *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL 2043604 (D.N.J. July 10, 2009), did address the use of statistical models. (Pl. Proposed Mem. [2473-2] at 9.) Plaintiffs' argument that the court failed to explain why aggregate, statistical proof must be rejected is simply wrong. Citing *McLaughlin* and other cases, the court provided a cogent analysis of this issue that is

prescient of Judge Weinstein's decision in *Hood*. *See In re Schering-Plough*, 2009 WL 2043604, at *23-25.

Throughout the life of this litigation, Plaintiffs have cited only two TPP cases that have survived motions to dismiss. The first, *In re Zyprexa Products Liability Litigation*, 253 F.R.D. 69 (E.D.N.Y. 2008), has been limited by Judge Weinstein to claims predicated on a price inflation theory – a theory expressly disavowed by these TPPs. The other is *Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 350 (2d Cir. 2003). But, as with *Zyprexa*, the theory that allowed the *Desiano* plaintiffs to survive dismissal – that they directly relied upon the defendant's alleged misrepresentations – is one which these Plaintiffs are not pursuing.

## III.   Additional Cases Support the Court's Summary Judgment Decision

In addition to the case discussed above, recent decisions lend further support to this Court's summary judgment decision.

In the first, *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83 (Ct. App. 2009), a California Court of Appeals affirmed a trial court's decision to deny class certification. Finding that individual issues precluded class certification, "[t]he trial court found that the decision to prescribe Vioxx is an individual decision made by a physician in reliance on many different factors, which vary from patient to patient." *Id.* at 98. Affirming, the California court of appeals held:

> Even if plaintiffs establish, class-wide, that Merck misrepresented the cardiovascular risks of Vioxx in a manner that was likely to deceive plaintiffs and their prescribing physicians, no plaintiff would be able to recover without first identifying a proper comparator drug, the cost of which would provide the actual value to the patient of the Vioxx received. As . . . the issue of a proper comparator was a patient-specific issue, incorporating the patient's medical history, treatment needs, and drug interactions, the trial court properly concluded that restitution could not be calculated on a class-wide basis.

*Id.* at 100.

More recently, in *Clark v. Pfizer Inc.*, No. 754 EDA 2009, 2010 WL 163583 (Pa. Super. Ct. Jan. 19, 2010) (to be published in A.2d), a Pennsylvania appellate court affirmed decertification of a Neurontin class action. *See id.* at *11. In *Clark*, as here, the Plaintiffs

- 11 -

asserted that they could prove classwide causation through an aggregate regression model developed by Professor Rosenthal – essentially the same model that Prof. Rosenthal proposes to use in this litigation. *Id.* at *5. Citing this Court's class certification decision with approval, the Pennsylvania court concluded:

> Here, like the plaintiffs in *In re Neurontin*, Appellants rely on Dr. Rosenthal's statistical proof to establish class-wide causation and reliance. Similar to *In re Neurontin*, Defendants have adduced evidence to prove that doctors in Pennsylvania have prescribed off-label use of Neurontin to class members for reasons wholly unrelated to Defendants' alleged fraudulent marketing. Consequently, in order to establish reliance and/or causation, Appellants "would have to demonstrate doctor-by-doctor that defendants' fraudulent misrepresentations or omissions during the off-label promotion caused the doctor to prescribe the medicine." Professor Rosenthal's statistical analysis cannot fulfill these requirements because it "does not take into account any other factors that may have led doctors to prescribe Neurontin for off-label indications.". . . Due to its failure to consider the actual prescribing choices of the class members' doctors, Professor Rosenthal's report is inadequate to show reliance and/or causation for any individual class member, let alone for every member on a class-wide basis.

*Id.* at *6 (quoting *In re Neurontin,* 257 F.R.D. at 330, 331). As the Court stated: "In sum, statistical probability does not substitute for actual inquiry, as a general showing of percentages does not tend to prove that the class members' specific doctors relied upon Defendants' statements or that Defendants' statements were the proximate cause of an injury." *Id.* at *7.

Finally, in *Southeast Laborers Health & Welfare Fund v. Bayer Corp.*, No. 08-80873, ECF Dkt. 71 (S.D. Fla. Feb. 11, 2010) (attached as Exh. A), the court dismissed a lawsuit by a third-party payor seeking to recover under RICO and various New Jersey statutes. The court had previously dismissed the plaintiff's claims predicated on physician reliance, finding that such claims were too indirect to satisfy RICO's proximate cause requirement. *See id.*, Dkt. 71 at 12. The plaintiff amended and attempted to plead a theory of direct reliance independent of decisions made by physicians. *See id.* The court held that the plaintiff's allegations were still insufficient and dismissed the RICO claim with prejudice. *See id.* at 13. As the court stated:

> Although Plaintiff argues that it had an independent choice of whether or not to pay for Trasylol, it does not explain how/why it made the choice to pay for Trasylol and how/why Bayer's alleged concealment of the dangers of Trasylol led Plaintiff to pay for Trasylol. Ultimately, Plaintiff has not established a different

premise of proximate causation and still has not met the *Holmes* requirement that it demonstrate a direct relation between its payment for Trasylol and Bayer's alleged fraudulent concealment.

*Id.*  For similar reasons, the court also dismissed the plaintiffs' consumer fraud claims.  *See id.* at 15-16.

## CONCLUSION

Plaintiffs' attempt to characterize this Court's Summary Judgment Decision dismissing the claims of Guardian and Aetna as some kind of aberration, when in fact it is consonant with the overwhelming weight of authority, must be rejected.  For all the foregoing reasons, Plaintiffs' Motions for Oral Argument and Leave to File Memorandum Regarding "Guardian" Ruling should be denied.

Dated: February 22, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By:   /s/ Mark S. Cheffo
       Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Email: Mark.Cheffo@skadden.com

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

---

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on February 22, 2010.

        /s/ Mark S. Cheffo
        Mark S. Cheffo

---