UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| | Magistrate Judge Leo T. Sorokin |
| *Shearer v. Pfizer Inc., et al.* Case No. 1:07-cv-11428-PBS | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF FOREIGN LABELS AND REGULATORY ACTIONS**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively "Pfizer") respectfully submit this memorandum in support of their motion *in limine*, pursuant to Federal Rules of Evidence 104(a), 401, 402, and 403, to exclude evidence of and references to foreign regulatory actions and labeling with respect to Neurontin. Defendants recognize that the Court previously addressed this or a similar issue in the *Bulger* and *Kaiser* cases and assume that the Court will issue a similar ruling in *Shearer*. To the extent that is the case, Defendants are not seeking reargument, but reserve their right to appeal from any such ruling.

The only regulatory decisions and actions relating to Neurontin that are relevant to this action are those of the U.S. Food and Drug Administration ("FDA"), which governs Defendants' labeling and conduct in this country. Moreover, even if evidence of foreign regulatory actions or requirements held some probative value, it should be excluded because its relevance would be far outweighed by the likelihood that it would cause unfair prejudice to Defendants, mislead and confuse the jury, and waste time and judicial resources.

## ARGUMENT

I. **Evidence Of Foreign Regulatory Actions And Labeling Should Be Excluded Because It Is Not Relevant**

The actions and labeling decisions of foreign regulatory bodies concerning Neurontin – which were rendered pursuant to each respective country's regulatory schemes and policy choices – are irrelevant to this suit, as they have no tendency to prove Defendants' compliance with their duties under the governing domestic law. *See* Fed. R. Evid. 401, 402. Federal courts have long held that foreign regulatory standards "are not relevant in a U.S. product liability case involving a [product] sold in the U.S." *Deviner v. Electrolux Motor, AB*, 844 F.2d 769, 771 n.2 (11th Cir. 1988); *accord Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319, 1327 (6th Cir. 1992). This principle applies with equal force in the context of prescription pharmaceutical products liability litigation. *See Harrison v. Wyeth Labs. Div. of Am. Home Prods. Corp.*, 510 F. Supp. 1, 4 (E.D. Pa. 1980) (explaining that each country "has its own legitimate concerns and its own unique needs which must be factored into its process of weighing the drug's merits, and which will tip the balance for it one way or the other"), *aff'd*, 676 F.2d 685 (3d Cir. 1982); *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1129 (S.D.N.Y. 1992) (noting that each country's "controlling standards of behavior" for the marketing and distribution of medications "will reflect the unique balance struck between the benefit each market derives from the product's use and the risks associated with that use").

For these reasons, courts have excluded evidence of foreign label changes and regulatory actions as irrelevant. *See, e.g., In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 WL 223140, at *5 (M.D. Fla. Jan. 30, 2009) (agreeing that such evidence could show "'only that a different regulatory authority, applying different standards in a different social and medical landscape, reached a conclusion different than the conclusion reached by the FDA under the U.S. system'" (citation omitted)), *aff'd*, 601 F. Supp. 2d 1313 (M.D. Fla. 2009); *see also In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) (rejecting plaintiffs' argument that such evidence was relevant to show notice). In addition, as the district court

observed in *Seroquel*, "regulators' *decisions and actions* – including requiring label changes" – are irrelevant to the issue of a defendant's notice of alleged risks. *In re Seroquel Prods. Liab. Litig.*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009) ("*In re Seroquel II*")). Indeed, "notice is not dependent on governmental action." *In re Baycol*, 532 F. Supp. 2d at 1054. These decisions direct the same preclusion of foreign evidence here.

II. **Evidence Of Foreign Regulatory Actions And Labeling Should Be Excluded Because Of The Likelihood That It Will Cause Unfair Prejudice, Confuse The Issues, Mislead The Jury, And Waste Time**

Even if Plaintiff could show some relevance of foreign labeling or regulatory action, the probative value of such evidence would be "greatly overmatched by the jury confusion, waste of time, and unfair prejudice that would result." *In re Seroquel II*, 601 F. Supp. 2d at 1318; *see also* Fed. R. Evid. 403. As the district court in *Seroquel* explained, "[t]o admit evidence about the foreign regulators' actions regarding Seroquel without providing context concerning the regulatory schemes and decision-making processes involved would strip the jury of any framework within which to evaluate the meaning of that evidence." *In re Seroquel II*, 601 F. Supp. 2d at 1318. The court further recognized that allowing such evidence and rebuttal would simply "result in a series of 'mini-trials' regarding the grounds for the decisions and the regulatory schemes of the . . . foreign countries involved," which "would confuse the jury and waste everyone's time." *Id.* Other courts have agreed "that allowing the admission of evidence of foreign regulatory actions, in a case that is governed by domestic law, would likely cause jury confusion." *In re Baycol*, 532 F. Supp. 2d at 1054; *see also In re Seroquel*, 2009 WL 223140, at *6 (holding that "whatever minimal relevance the foreign regulatory actions might have is clearly overwhelmed by the likelihood of jury confusion").

Moreover, the admission of such evidence would also mislead the jury because the standard of causation applied by regulatory bodies is not the same as the standard governing tort claims. As this Court has observed, "[i]t is widely recognized that, when evaluating pharmaceutical drugs, the FDA often uses a different standard than a court does to evaluate

3

evidence of causation in a products liability action." *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 612 F. Supp. 2d 116, 136 (D. Mass. 2009). Thus, a foreign regulatory agency may "err on the side of caution," *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1201 (11th Cir. 2002), and take action "upon a lesser showing of harm to the public than the . . . standard used to assess tort liability," *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005). Presenting the jury with the foreign warning labels could mislead it to improperly infer causation, for as this Court has recognized, "the decision by the FDA to require warnings on a drug label, without more, does not suffice to establish causation." *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 612 F. Supp. 2d, at 137. Indeed, the jury would only be confused by any attempt of Defendants to explain the significance of these foreign regulatory actions within the context of the operative foreign law. *Cf. Gray v. Genlyte Group, Inc.*, 289 F.3d 128, 140 (1st Cir. 2002) (affirming exclusion of defendant's prior conviction for related offense under Rule 403 due to dissimilarity between elements of conviction and elements of plaintiff's cause of action).

Finally, the substantial risks that allowing foreign labeling and regulatory evidence would pose would not be alleviated by a limiting instruction. Indeed, such an instruction was proposed, and rejected, in the *Seroquel* litigation. *See In re Seroquel*, 2009 WL 223140, at *5-6. There, the plaintiffs suggested that the jury be instructed that "the foreign regulatory evidence is not offered to determine whether a similar warning should have be given, and 'the laws and regulations of those respective foreign countries is irrelevant to the jurors determination as to whether [defendant] provided physicians an adequate warning,'" and that the case was governed solely by domestic law. *Id.* at *5 (citation omitted). The district court, in affirming the Magistrate Judge's decision, held that such an instruction would "neither alleviate the significant risk of jury confusion and waste of time, nor would it cure the substantial prejudice [defendant] would suffer if evidence of regulatory actions were admitted at trial." *In re Seroquel II*, 601 F. Supp. 2d at 1318. The same risks of prejudice, confusion of the jury, and undue delay are present in this case and, as there, would not be mitigated by such a limiting instruction. Accordingly, this Court should exclude such evidence in its entirety.

## CONCLUSION

For the foregoing reasons, this Court should exclude all references to and evidence related to foreign regulatory actions and labeling with respect to Neurontin.

Dated: February 22, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
       Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Mark.Cheffo@skadden.com

-and-

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
       William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
WOhlemeyer@bsfllp.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on February 22, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo