# EXHIBIT J

### § 314.72 Change in ownership of an application.

(a) An applicant may transfer ownership of its application. At the time of transfer the new and former owners are required to submit information to the Food and Drug Administration as follows:

(1) The former owner shall submit a letter or other document that states that all rights to the application have been transferred to the new owner.

(2) The new owner shall submit an application form signed by the new owner and a letter or other document containing the following:

(i) The new owner's commitment to agreements, promises, and conditions made by the former owner and contained in the application;

(ii) The date that the change in ownership is effective; and

(iii) Either a statement that the new owner has a complete copy of the approved application, including supplements and records that are required to be kept under § 314.81, or a request for a copy of the application from FDA's files. FDA will provide a copy of the application to the new owner under the fee schedule in § 20.45 of FDA's public information regulations.

(b) The new owner shall advise FDA about any change in the conditions in the approved application under § 314.70, except the new owner may advise FDA in the next annual report about a change in the drug product's label or labeling to change the product's brand or the name of its manufacturer, packer, or distributor.

[50 FR 7493, Feb. 22, 1985; 50 FR 14212, Apr. 11, 1985, as amended at 50 FR 21238, May 23, 1985; 67 FR 9586, Mar. 4, 2002; 68 FR 25287, May 12, 2003]

### § 314.80 Postmarketing reporting of adverse drug experiences.

(a) *Definitions.* The following definitions of terms apply to this section:–

*Adverse drug experience.* Any adverse event associated with the use of a drug in humans, whether or not considered drug related, including the following: An adverse event occurring in the course of the use of a drug product in professional practice; an adverse event occurring from drug overdose whether accidental or intentional; an adverse event occurring from drug abuse; an adverse event occurring from drug withdrawal; and any failure of expected pharmacological action.

*Disability.* A substantial disruption of a person's ability to conduct normal life functions.

*Life-threatening adverse drug experience.* Any adverse drug experience that places the patient, in the view of the initial reporter, at *immediate* risk of death from the adverse drug experience as it occurred, i.e., it does not include an adverse drug experience that, had it occurred in a more severe form, might have caused death.

*Serious adverse drug experience.* Any adverse drug experience occurring at any dose that results in any of the following outcomes: Death, a life-threatening adverse drug experience, inpatient hospitalization or prolongation of existing hospitalization, a persistent or significant disability/incapacity, or a congenital anomaly/birth defect. Important medical events that may not result in death, be life-threatening, or require hospitalization may be considered a serious adverse drug experience when, based upon appropriate medical judgment, they may jeopardize the patient or subject and may require medical or surgical intervention to prevent one of the outcomes listed in this definition. Examples of such medical events include allergic bronchospasm requiring intensive treatment in an emergency room or at home, blood dyscrasias or convulsions that do not result in inpatient hospitalization, or the development of drug dependency or drug abuse.

*Unexpected adverse drug experience.* Any adverse drug experience that is not listed in the current labeling for the drug product. This includes events that may be symptomatically and pathophysiologically related to an event listed in the labeling, but differ from the event because of greater severity or specificity. For example, under this definition, hepatic necrosis would be unexpected (by virtue of greater severity) if the labeling only referred to elevated hepatic enzymes or hepatitis. Similarly, cerebral thromboembolism and cerebral vasculitis would be unexpected (by virtue of greater specificity) if the labeling only listed

116

**Food and Drug Administration, HHS** § 314.80

cerebral vascular accidents. "Unexpected," as used in this definition, refers to an adverse drug experience that has not been previously observed (i.e., included in the labeling) rather than from the perspective of such experience not being anticipated from the pharmacological properties of the pharmaceutical product.

(b) *Review of adverse drug experiences.* Each applicant having an approved application under § 314.50 or, in the case of a 505(b)(2) application, an effective approved application, shall promptly review all adverse drug experience information obtained or otherwise received by the applicant from any source, foreign or domestic, including information derived from commercial marketing experience, postmarketing clinical investigations, postmarketing epidemiological/surveillance studies, reports in the scientific literature, and unpublished scientific papers. Applicants are not required to resubmit to FDA adverse drug experience reports forwarded to the applicant by FDA; however, applicants must submit all followup information on such reports to FDA. Any person subject to the reporting requirements under paragraph (c) of this section shall also develop written procedures for the surveillance, receipt, evaluation, and reporting of postmarketing adverse drug experiences to FDA.

(c) *Reporting requirements.* The applicant shall report to FDA adverse drug experience information, as described in this section. The applicant shall submit two copies of each report described in this section to the Central Document Room, 5901–B Ammendale Rd., Beltsville, MD 20705–1266. FDA may waive the requirement for the second copy in appropriate instances.

(1)(i) *Postmarketing 15-day "Alert reports".* The applicant shall report each adverse drug experience that is both serious and unexpected, whether foreign or domestic, as soon as possible but in no case later than 15 calendar days of initial receipt of the information by the applicant.

(ii) *Postmarketing 15-day "Alert reports"—followup.* The applicant shall promptly investigate all adverse drug experiences that are the subject of these postmarketing 15-day Alert reports and shall submit followup reports within 15 calendar days of receipt of new information or as requested by FDA. If additional information is not obtainable, records should be maintained of the unsuccessful steps taken to seek additional information. Postmarketing 15-day Alert reports and followups to them shall be submitted under separate cover.

(iii) *Submission of reports.* The requirements of paragraphs (c)(1)(i) and (c)(1)(ii) of this section, concerning the submission of postmarketing 15-day Alert reports, shall also apply to any person other than the applicant (nonapplicant) whose name appears on the label of an approved drug product as a manufacturer, packer, or distributor. To avoid unnecessary duplication in the submission to FDA of reports required by paragraphs (c)(1)(i) and (c)(1)(ii) of this section, obligations of a nonapplicant may be met by submission of all reports of serious adverse drug experiences to the applicant. If a nonapplicant elects to submit adverse drug experience reports to the applicant rather than to FDA, the nonapplicant shall submit each report to the applicant within 5 calendar days of receipt of the report by the nonapplicant, and the applicant shall then comply with the requirements of this section. Under this circumstance, the nonapplicant shall maintain a record of this action which shall include:

(A) A copy of each adverse drug experience report;

(B) The date the report was received by the nonapplicant;

(C) The date the report was submitted to the applicant; and

(D) The name and address of the applicant.

(iv) *Report identification.* Each report submitted under this paragraph shall bear prominent identification as to its contents, i.e., "15-day Alert report," or "15-day Alert report-followup."

(2) *Periodic adverse drug experience reports.* (i) The applicant shall report each adverse drug experience not reported under paragraph (c)(1)(i) of this section at quarterly intervals, for 3 years from the date of approval of the application, and then at annual intervals. The applicant shall submit each quarterly report within 30 days of the

117

close of the quarter (the first quarter beginning on the date of approval of the application) and each annual report within 60 days of the anniversary date of approval of the application. Upon written notice, FDA may extend or reestablish the requirement that an applicant submit quarterly reports, or require that the applicant submit reports under this section at different times than those stated. For example, the agency may reestablish a quarterly reporting requirement following the approval of a major supplement. Followup information to adverse drug experiences submitted in a periodic report may be submitted in the next periodic report.

(ii) Each periodic report is required to contain: (*a*) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval (all 15-day Alert reports being appropriately referenced by the applicant's patient identification number, adverse reaction term(s), and date of submission to FDA); (*b*) a FDA Form 3500A (Adverse Reaction Report) for each adverse drug experience not reported under paragraph (c)(1)(i) of this section (with an index consisting of a line listing of the applicant's patient identification number and adverse reaction term(s)); and (*c*) a history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated).

(iii) Periodic reporting, except for information regarding 15-day Alert reports, does not apply to adverse drug experience information obtained from postmarketing studies (whether or not conducted under an investigational new drug application), from reports in the scientific literature, and from foreign marketing experience.

(d) *Scientific literature.* (1) A 15-day Alert report based on information from the scientific literature is required to be accompanied by a copy of the published article. The 15-day reporting requirements in paragraph (c)(1)(i) of this section (i.e., serious, unexpected adverse drug experiences) apply only to reports found in scientific and medical journals either as case reports or as the result of a formal clinical trial.

(2) As with all reports submitted under paragraph (c)(1)(i) of this section, reports based on the scientific literature shall be submitted on FDA Form 3500A or comparable format as prescribed by paragraph (f) of this section. In cases where the applicant believes that preparing the FDA Form 3500A constitutes an undue hardship, the applicant may arrange with the Division of Pharmacovigilance and Epidemiology for an acceptable alternative reporting format.

(e) *Postmarketing studies.* (1) An applicant is not required to submit a 15-day Alert report under paragraph (c) of this section for an adverse drug experience obtained from a postmarketing study (whether or not conducted under an investigational new drug application) unless the applicant concludes that there is a reasonable possibility that the drug caused the adverse experience.

(2) The applicant shall separate and clearly mark reports of adverse drug experiences that occur during a postmarketing study as being distinct from those experiences that are being reported spontaneously to the applicant.

(f) *Reporting FDA Form 3500A.* (1) Except as provided in paragraph (f)(3) of this section, the applicant shall complete FDA Form 3500A for each report of an adverse drug experience (foreign events may be submitted either on an FDA Form 3500A or, if preferred, on a CIOMS I form).

(2) Each completed FDA Form 3500A should refer only to an individual patient or a single attached publication.

(3) Instead of using FDA Form 3500A, an applicant may use a computer-generated FDA Form 3500A or other alternative format (e.g., a computer-generated tape or tabular listing) provided that: (i) The content of the alternative format is equivalent in all elements of information to those specified in FDA Form 3500A; and (ii) The format is agreed to in advance by MedWatch: The FDA Medical Products Reporting Program.

(4) Ten copies or fewer of FDA Form 3500A and/or a copy of the instructions for completing the form may be obtained from the Division of Pharmacovigilance and Epidemiology (HFD–730), Center for Drug Evaluation

and Research, Food and Drug Administration, 5600 Fishers Lane, Rockville, MD 20857. More than 10 copies of the form may be obtained by writing to the Consolidated Forms and Publications Distribution Center, Washington Commerce Center, 3222 Hubbard Rd., Landover, MD 20785.

(g) *Multiple reports.* An applicant should not include in reports under this section any adverse drug experiences that occurred in clinical trials if they were previously submitted as part of the approved application. If a report applies to a drug for which an applicant holds more than one approved application, the applicant should submit the report to the application that was first approved. If a report refers to more than one drug marketed by an applicant, the applicant should submit the report to the application for the drug listed first in the report.

(h) *Patient privacy.* An applicant should not include in reports under this section the names and addresses of individual patients; instead, the applicant should assign a unique code number to each report, preferably not more than eight characters in length. The applicant should include the name of the reporter from whom the information was received. Names of patients, health care professionals, hospitals, and geographical identifiers in adverse drug experience reports are not releasable to the public under FDA's public information regulations in part 20.

(i) *Recordkeeping.* The applicant shall maintain for a period of 10 years records of all adverse drug experiences known to the applicant, including raw data and any correspondence relating to adverse drug experiences.

(j) *Withdrawal of approval.* If an applicant fails to establish and maintain records and make reports required under this section, FDA may withdraw approval of the application and, thus, prohibit continued marketing of the drug product that is the subject of the application.

(k) *Disclaimer.* A report or information submitted by an applicant under this section (and any release by FDA of that report or information) does not necessarily reflect a conclusion by the applicant or FDA that the report or information constitutes an admission that the drug caused or contributed to an adverse effect. An applicant need not admit, and may deny, that the report or information submitted under this section constitutes an admission that the drug caused or contributed to an adverse effect. For purposes of this provision, the term ''applicant'' also includes any person reporting under paragraph (c)(1)(iii) of this section.

[50 FR 7493, Feb. 22, 1985; 50 FR 14212, Apr. 11, 1985, as amended at 50 FR 21238, May 23, 1985; 51 FR 24481, July 3, 1986; 52 FR 37936, Oct. 13, 1987; 55 FR 11580, Mar. 29, 1990; 57 FR 17983, Apr. 28, 1992; 62 FR 34168, June 25, 1997; 62 FR 52251, Oct. 7, 1997; 63 FR 14611, Mar. 26, 1998; 67 FR 9586, Mar. 4, 2002; 69 FR 13473, Mar. 23, 2004]

### § 314.81 Other postmarketing reports.

(a) *Applicability.* Each applicant shall make the reports for each of its approved applications and abbreviated applications required under this section and section 505(k) of the act.

(b) *Reporting requirements.* The applicant shall submit to the Food and Drug Administration at the specified times two copies of the following reports:

(1) *NDA—Field alert report.* The applicant shall submit information of the following kinds about distributed drug products and articles to the FDA district office that is responsible for the facility involved within 3 working days of receipt by the applicant. The information may be provided by telephone or other rapid communication means, with prompt written followup. The report and its mailing cover should be plainly marked: ''NDA—Field Alert Report.''

(i) Information concerning any incident that causes the drug product or its labeling to be mistaken for, or applied to, another article.

(ii) Information concerning any bacteriological contamination, or any significant chemical, physical, or other change or deterioration in the distributed drug product, or any failure of one or more distributed batches of the drug product to meet the specification established for it in the application.

(2) *Annual report.* The applicant shall submit each year within 60 days of the anniversary date of U.S. approval of the application, two copies of the report to the FDA division responsible