UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------- x

In re: NEURONTIN MARKETING,
SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

---------------------------------------------------------- x

THIS DOCUMENT RELATES TO:

*Shearer v. Pfizer Inc.*,
Case No. 1:07-cv-11428-PBS

---------------------------------------------------------- x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF DAVID FRANKLIN AND EVIDENCE OF THE *FRANKLIN* LITIGATION AND OTHER CLAIMS OR ACTIONS INVOLVING NEURONTIN

Pursuant to the Federal Rules of Evidence, Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer") respectfully submit this memorandum of law in support of their motion *in limine* to exclude evidence of, and reference to: (1) any testimony of David Franklin; (2) the separate and unrelated *qui tam* action styled *United States ex rel. Franklin v. Parke-Davis, Division of Warner-Lambert Company, & Pfizer Inc.*, No. 1:96-CV-11651-PBS (D. Mass filed Aug. 13, 1996); or (3) any other claims, actions, or legal proceedings related to Neurontin. Defendants recognize that the Court previously addressed this or a similar issue in the *Bulger* case and assume that the Court will issue a similar ruling in *Shearer*. To the extent that is the case, Defendants are not seeking reargument, but reserve their right to appeal from any such ruling.

### PRELIMINARY STATEMENT

In this products liability case, Plaintiff will likely seek to introduce, just as plaintiffs have attempted in other Neurontin cases, the testimony of David Franklin and evidence concerning the *Franklin* litigation. Mr. Franklin's testimony and the *Franklin* litigation concern alleged off-

label promotion of Neurontin by Pfizer that Mr. Franklin claims to have witnessed during his four-month employment with Parke-Davis in 1996 as a medical liaison. Additionally, Plaintiff may also seek to introduce evidence of other legal actions and claims involving Neurontin. This evidence should be excluded on multiple grounds.

Mr. Franklin's testimony is inadmissible because it relates only to marketing of Neurontin. As argued in Pfizer's concurrently filed motion *in limine* to exclude marketing evidence, such evidence is irrelevant to this products liability lawsuit, would cause unfair prejudice to Pfizer, and constitutes improper "bad acts" evidence under Rule 404(b). Nor can Plaintiff draw any chain of inference connecting Mr. Franklin's testimony about claimed marketing practices in 1996 to the Mr. Shearer's physicians' decision to prescribe Neurontin to Mr. Shearer beginning in 2000. Additionally, because Mr. Franklin has not been designated as an expert witness, he is precluded from offering testimony beyond his personal knowledge or that requires specialized knowledge or expertise.

Likewise, evidence from the *Franklin* litigation, which also concerned alleged off-label promotion of Neurontin, is inadmissible as irrelevant, unfairly prejudicial, and barred by Rule 404(b). Moreover, specific documents from that litigation, such as purported statements of others included in Mr. Franklin's Disclosure of Information, are inadmissible as hearsay without an exception. Nor can Plaintiff make an end run around the hearsay rules by having Mr. Franklin testify to the contents of these documents; his testimony must be based on his recollection, not on his prior out-of-court statements.

Finally, Plaintiff may not introduce evidence of other claims or proceedings concerning Neurontin, because such evidence is irrelevant to this case and would unfairly prejudice Pfizer. Because no other similar Neurontin lawsuit has been tried to judgment, these suits offer only allegations, not evidence, and do not have any preclusive effect. As such, evidence of these other proceedings would unfairly prejudice Pfizer by suggesting that the jury impose liability due simply to the size of this litigation.

None of this evidence bears any connection to Mr. Shearer or the actions of his

2

prescribing physicians. None of it relates in any way to the issues for the jury to decide at Plaintiff's trial: whether Neurontin causes suicidal behavior; whether Neurontin's label should have warned doctors of a risk of suicidal behavior; and whether Mr. Shearer's decision to take his own life resulted from his use of Neurontin or from one of his many other well-accepted risk factors for suicide. The evidence that is the subject of this Motion would serve only to influence the jury to reach the wholly irrelevant, but highly prejudicial, conclusion that Pfizer engaged in improper marketing and is a "bad actor."[1] The Rules and the case law mandate that all such evidence be excluded.

## ARGUMENT

I.  **The Testimony of Mr. Franklin Is Inadmissible**

   A.  **Mr. Franklin's Testimony Is Irrelevant, Unfairly Prejudicial, and Barred by Rule 404(b)**

Mr. Franklin's testimony concerns his claims that he observed certain off-label marketing practices during his four-month employment at Parke-Davis in 1996 as a medical liaison. As an initial matter, such marketing evidence is irrelevant to this products liability lawsuit, would cause substantial unfair prejudice to Pfizer, and is impermissible "bad acts" evidence under Rule 404(b), as stated more fully in Pfizer's concurrently filed Motion *in Limine* to Exclude Evidence of Marketing or Advertising Materials and Conduct, incorporated here by reference. Because marketing evidence is categorically inadmissible, Mr. Franklin's testimony must be excluded.

Moreover, Mr. Franklin's testimony is irrelevant because there is no evidence that the marketing practices Mr. Franklin claims to have observed in 1996 have any connection whatsoever to the events at issue in this products liability personal injury case. Indeed, this Court dismissed Plaintiff's claims of affirmative misrepresentation because Plaintiff did not produce any evidence that Mr. Shearer's prescribing physicians received, let alone relied upon,

---

[1] As this Court is aware, Warner-Lambert pleaded guilty in 2004 to strict liability violations of the federal Food, Drug, and Cosmetic Act (codified in scattered sections of 21 U.S.C.) relating to specific instances of marketing of Neurontin for off-label uses in 1995 and 1996, several years before Mr. Shearer was ever prescribed Neurontin. The guilty plea and related evidence are subject to a separate motion *in limine*, filed concurrently herewith, and incorporated herein by reference.

3

Pfizer's alleged misrepresentations. *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 112 (D. Mass. 2009) ("*Neurontin II*"). Nor is there any conceivable chain of inference connecting Mr. Franklin's testimony about marketing practices to Mr. Shearer's prescription of Neurontin. Indeed, as stated above, Mr. Franklin's testimony is based entirely on his four-month employment at Parke-Davis in 1996, (Ex. A, 12/18/09 Franklin Dep. at 122:23-128:4),[2] and Mr. Shearer was not even prescribed Neurontin until 2000. Nor can Plaintiff draw any connection between Mr. Franklin's testimony and Mr. Shearer's prescribing physicians, as Mr. Franklin does not recall the names of any physicians he visited, nor even the approximate number of physicians he visited during that time. (*Id.* at 80:24-81:17.) More specifically, Mr. Franklin does not know whether he ever spoke with any of the physicians who prescribed Neurontin to Mr. Shearer. (*Id.* at 82:8-17.) In light of Mr. Franklin's short employment, the four-year gap before Mr. Shearer was prescribed Neurontin, and Mr. Franklin's inability to recall any physicians he spoke to, any inference that the practices Mr. Franklin claims to have observed had any connection to Mr. Shearer's prescription of Neurontin would be purely speculative. Mr. Franklin's testimony is therefore irrelevant and must be excluded as such.

Further, Mr. Franklin's testimony is also inadmissible as causing substantial unfair prejudice outweighing any conceivable probative value it may have. Such testimony may lead the jury to improperly infer that the alleged off-label marketing Mr. Franklin claims he observed had some effect on the prescribing decisions of Mr. Shearer's physicians, even though there is no such evidence, and this Court has unequivocally rejected Plaintiff's efforts to prove reliance and causation through a fraud-on-the-market theory. *See Neurontin II*, 618 F. Supp. 2d at 111-12; *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 323-25 (D. Mass. 2009). Thus, Rule 403 also requires the exclusion of Mr. Franklin's testimony.

### B. Mr. Franklin May Not Offer Expert Opinions

Because Mr. Franklin has not been designated as an expert witness in this action, any

---

[2] All exhibits are attached to the accompanying Declaration of Mark S. Cheffo.

opinion testimony he may attempt to offer at trial is limited by Rule 701. To be admissible, lay opinion must be "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Accordingly, Rule 701 bars Mr. Franklin from offering testimony (a) about subjects about which he lacks knowledge, such as Defendants' marketing practices after the term of his employment, (b) that gives unhelpful speculation about the motives of other persons, or (c) that requires expertise on FDA regulatory matters or drug efficacy, subject matters as to which Mr. Franklin has not been designated as an expert.

First, Mr. Franklin may not offer speculative testimony on what Defendants' marketing practices might have been after the time of his employment by Parke-Davis, because such testimony would run afoul of Rule 701 as lay opinion not "rationally based on the perception of the witness." It is well settled that all witness opinion must "be grounded in observation or other first-hand personal experience" and may "not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991); *see also Swajian v. Gen. Motors Corp.*, 916 F.2d 31, 36 (1st Cir. 1990). Courts have therefore excluded testimony that, like Mr. Franklin's, opines about matters beyond the witness's personal knowledge, because such testimony would violate Rule 701, and because it is also "speculative in nature and violates the requirements of Federal Rule of Evidence 403." *See Autoforge, Inc. v. Am. Axle & Mfg., Inc.*, No. 02-1265, 2008 WL 65603, at *11 (W.D. Pa. Jan. 4, 2008); *see also Schieber v. City of Phila.*, No. 98-5648, 2000 WL 1843246, at *11, *12-13 (E.D. Pa. Dec. 13, 2000) (excluding lay opinion in a document not based on "first-hand knowledge" because the document's "proffered use outside the context for which it was prepared will likely cause a jury unnecessary confusion and misapprehension of what is factual and what is speculative"). All such unfounded testimony by Mr. Franklin should therefore be prohibited.

Second, Mr. Franklin may not offer his speculations about the motives, intent, or state of

5

mind of other persons. Such conclusory speculations about the intent or motives of others are not helpful to the jury and are therefore inadmissible – especially where, as here, they are not based on personal knowledge. *See Visser*, 924 F.2d at 659 (rejecting affidavits that, without personal knowledge, purported to state the defendant's motives for his actions); *Adams v. United States*, No. CV-03-49, 2009 WL 1085490, at *3 (D. Idaho Apr. 20, 2009) (excluding testimony regarding chemical corporation's intent where witness had "no inside information about [the corporation's] intent, and no special expertise in the operations of large chemical companies"). "[Testimony] as to the knowledge, motivations, intent, state of mind, or purposes of [a pharmaceutical company or] its employees . . . is not a proper subject for expert or even lay testimony." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009). Indeed, Rule 701 was designed for the very purpose of barring such testimony, "which would merely tell the jury what result to reach." Fed. R. Evid. 704 advisory committee's note; *see also United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) ("When the issue is a party's knowledge, which is perhaps a more easily fathomed state of mind than, for example, intent or motivation, we suspect that in most instances a proffered lay opinion will not meet the requirements of Rule 701.").

Third, because Plaintiff has not designated Mr. Franklin as an expert witness, any opinion testimony is limited to those opinions not requiring specialized knowledge or expertise. *See* Fed. R. Evid. 701(c). For instance, Mr. Franklin may not offer opinion testimony about whether Pfizer's actions constituted violations of FDA marketing regulations because he lacks any expertise or specialized knowledge on such matters. Indeed, Mr. Franklin admitted at deposition that all of his testimony in that regard was given "in retrospect," based on things he learned later from unnamed sources, which does not satisfy the personal knowledge requirement. (*See, e.g.*, Ex. B, 9/12/00 Franklin Dep. at 157:16-160:10.) Likewise, Mr. Franklin has not been designated as an expert on efficacy of pharmaceutical products, so he should not be permitted to testify as to whether statements allegedly made to physicians about efficacy were true or false.

## II. Evidence from the *Franklin* Litigation Should Be Excluded

### A. Evidence from the *Franklin* Litigation Is Irrelevant, Unfairly Prejudicial, and Barred by Rule 404(b)

Pfizer moves to exclude from evidence any reference to or evidence from *Franklin*, a *qui tam* action brought under the False Claims Act by Mr. Franklin. The Complaint in *Franklin* alleged that Warner-Lambert promoted Neurontin for off-label uses, which caused the submission to Medicaid of Neurontin prescriptions that were ineligible for reimbursement. As argued in Pfizer's concurrently filed Motion *in Limine* to Exclude Evidence of Marketing or Advertising Materials and Conduct, incorporated here by reference, evidence of off-label marketing is inadmissible because it is irrelevant to this products liability lawsuit, it would unfairly prejudice Pfizer, and it is barred by Rule 404(b) as improper evidence of prior bad acts. Thus, because *Franklin* was likewise concerned with the issue of off-label marketing of Neurontin, all evidence of that litigation is irrelevant to any issue in this case and its therefore inadmissible.

### B. Much of the Evidence from the *Franklin* Litigation Is Inadmissible Hearsay

Moreover, much of the evidence that Plaintiff will likely seek to introduce from the *Franklin* litigation is independently objectionable. As just one example, the plaintiff in the *Bulger* case previously designated as an exhibit in that case Mr. Franklin's unsworn Disclosure of Information, filed as Exhibit 3 to the Information in *Franklin* (the "Disclosure"). This document purports to, among other things, describe certain remarks attributed by Mr. Franklin to John Ford, a former Parke Davis employee. According to the Disclosure, Mr. Franklin purported to record remarks made by Mr. Ford, Sales Director of the Northeast Customer Business Unit ("CBU"), in a meeting in Farmington, Connecticut, on April 22, 1996 (the "Meeting"). Mr. Ford allegedly said:

> I want you out there every day selling Neurontin. Look this isn't just me, its come down from Morris Plains that Neurontin is more profitable than Accupril so we need to focus on Neurontin . . . . We all know Neurontin's not growing for adjunctive therapy, besides that is not where the money is. Pain management, now that's money. Monotherapy, that's money. We don't want to share these patients with everybody, we want them on Neurontin only. We want their whole

7

drug budget, not a quarter, not half, the whole thing. . . . We can't wait for them to ask, we need to get out there and tell them up front. Dinner programs, CME programs, consultantships all work great but don't forget the one-on-one. That's where we need to be holding their hand and whispering in their ear, Neurontin for pain, Neurontin for monotherapy, Neurontin for bipolar, Neurontin for everything. I don't want to see a single patient coming off Neurontin until they have been up to at least 4800 mg/day. I don't want to hear that safety crap either, have you tried Neurontin, every one of you should take one just to see there is nothing, it's a great drug.

(Ex. C, Disclosure of Information by Relator David P. Franklin Pursuant to 31 U.S.C. § 3730b(2), *Franklin*, No. 96-CV-11651-PBS (D. Mass filed Aug. 13, 1996), at 11 (alteration in original).) Other than Mr. Franklin's self-interested characterization of and testimony about his Disclosure, there is no evidence that Mr. Ford actually said these words and the Disclosure should be excluded on multiple grounds.

First, as an out-of-court statement that Plaintiff would introduce to prove the truth of the matter asserted – *i.e.*, that the Disclosure accurately records Ford's statement at the Meeting – the Disclosure is hearsay.[3] The Disclosure, and the alleged statement by Ford, fails to qualify for any established exception to the hearsay rule, including the residual exception – the only conceivable exception to which Plaintiff might appeal. *See* Fed. R. Evid. 807. It is well settled that "[t]he residual exception is to be used sparingly, in exceptional circumstances." *Kosilek v. Maloney*, 221 F. Supp. 2d 156, 172 n.9 (D. Mass. 2002); *see also Doe v. United States*, 976 F.2d 1071, 1074 (7th Cir. 1992). No such circumstances warrant the admission of the Disclosure in this case; not only does the Disclosure not possess any circumstantial guarantees of trustworthiness, it is affirmatively untrustworthy on its face. The Disclosure is an unsworn statement by Mr. Franklin, filed along with his Complaint in *Franklin*. The alleged Ford statement was neither excerpted from the transcript of the Meeting, nor produced on the basis of any notes that Mr. Franklin took. Rather, it was based on Mr. Franklin's unaided recollection of

---

[3] In the event that Plaintiff seeks to introduce the alleged remarks by John Ford for their truth, it would be doubly inadmissible. Evidence containing multiple levels of hearsay deserves special scrutiny, under which the court must separately examine each level of hearsay to determine whether it falls within an exception to the hearsay rule. *See* Fed. R. Evid. 805; *Pakizegi v. First Nat'l Bank of Boston*, 831 F. Supp. 901, 909 (D. Mass. 1993), *aff'd*, 56 F.3d 59 (table), 1995 WL 338087 (1st Cir. 1995).

what was said in the Meeting several months after it took place.

Moreover, Mr. Franklin wrote the Disclosure in the context of the *Franklin* litigation, a litigation he initiated and through which he stood to gain millions of dollars. As a result, he had every incentive to shade Mr. Ford's purported language in the most damning way possible. *See, e.g., Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258-59 (9th Cir. 1984) (holding, in the analogous context of the business records exception, that a document prepared in the context of litigation lacks sufficient indicia of reliability to be admissible). Following similar logic, courts have concluded unequivocally that complaints and the charges and allegations they contain are inadmissible hearsay. *See Century '21' Shows v. Owens*, 400 F.2d 603, 609-10 (8th Cir. 1968) (affirming exclusion of petitions from prior proceeding involving plaintiff); *T.I. Constr. Co. v. Kiewit E. Co.*, No. 91-2638, 1992 WL 382306, at *4 (E.D. Pa. Dec. 10, 1992) (finding that allegations in complaint made in a separate case were hearsay); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 499 (D. Del. 2005) ("Because the allegations in the complaint are a pleading of a party unrelated to the instant litigation, the Court cannot accept them for the truth of the matters they assert."); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, MDL No. 997, 1997 WL 201614, at *4 (N.D. Ill. Apr. 8, 1997) (holding complaint filed in separate case inadmissible).[4]

Plaintiff may also designate other depositions from the *Franklin* litigation. In addition to addressing the irrelevant issue of national marketing and alleged off-label promotion, such testimony constitutes inadmissible hearsay. *See, e.g., Finn ex rel. Estate of Finn v. Consol. Rail Corp.*, 782 F.2d 13, 15-16 (1st Cir. 1986) (deposition testimony not based on personal knowledge "plainly hearsay under [Rule] 801"). The *Franklin* depositions are not admissible as former testimony under Federal Rule of Evidence 804(b)(1), which extends only to

---

[4] Mr. Franklin's deposition testimony is even more unreliable and inappropriate under the residual hearsay exception than the Disclosure itself. In his deposition testimony dated September 13, 2000, Mr. Franklin testified that he recalled the Meeting and believed that John Ford used the words, "I don't want to hear that safety crap." (*See* Ex. D, 9/13/00 Franklin Dep., at 227:22-228:22.) Only two months later, Mr. Franklin testified that he was "not sure" if Mr. Ford was even present at the Meeting. (*See* Ex. E, 11/21/00 Franklin Dep., at 36:5-15.)

> [t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination.

Fed. R. Evid. 804(b)(1); *see also United States v. Bartelho*, 129 F.3d 663, 670 (1st Cir. 1997) (holding that proponent of the evidence "must satisfy both requirements of [804(b)(1)]: unavailability and similar motive and opportunity to develop the challenged testimony"). Because this product liability action is completely distinct from Mr. Franklin's False Claims Act case – with differing issues and elements – Pfizer did not have a sufficiently similar motive and opportunity to develop deposition testimony.

In assessing similarity of motive under Rule 804(b)(1), the Court must consider whether the party resisting the offered testimony at a pending proceeding had, during the prior proceeding, an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue. *See Bartelho*, 129 F.3d at 671. The nature of the two proceedings – what is at stake, the applicable burden of proof, and, to a lesser extent, the cross examination at the prior proceeding, both what was undertaken and what was available but foregone – informs the determination. *See United States v. DiNapoli*, 8 F.3d 909, 912-15 (2d Cir. 1993). "This requirement 'operates to screen out those statements, which although made under oath, were not subject to the scrutiny of a party interested in thoroughly testing [their] validity.'" *See United States v. Jackson*, 335 F.3d 170, 177 (2d Cir. 2003) (alteration in original) (quoting *United States v. Pizarro*, 717 F.2d 336, 349 (7th Cir. 1983)).

The only question in the *qui tam* action was whether Warner-Lambert promoted Neurontin off-label and whether such off-label promotion caused the submission to Medicaid of Neurontin prescriptions that were ineligible for reimbursement. Consequently, Warner-Lambert's motive in cross examining the *Franklin* witnesses was merely to demonstrate that it did not encourage off-label promotion of Neurontin. That question is wholly irrelevant to the instant case. To the extent that testimony from *Franklin* is offered on the safety and efficacy of

Neurontin, it fails to satisfy the requirement of Rule 804(b)(1). Because Warner-Lambert lacked a sufficiently similar motive and opportunity to cross examine witnesses in the *qui tam* action on issues relevant to the instant action, such testimony in that case is not admissible here under the former testimony exception to the hearsay rule.

Finally, Plaintiff cannot make an end run around these hearsay problems by placing Mr. Franklin on the stand to testify about the contents of these documents from the *Franklin* litigation. Even assuming, arguendo, that Mr. Franklin could give any testimony in this case, Rule 602 requires that Mr. Franklin's testimony be based upon his memory, and not his prior out-of-court statements. *See Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1211 (7th Cir. 1993); *see also* 27 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6023 (2d ed. 2007) ("A witness who perceived events in the past will not be permitted to testify if she lacks present recollection of that perception."). As established above, Mr. Franklin's Disclosure of Information in the *qui tam* litigation is inadmissible hearsay. Plaintiff cannot evade the prohibition against hearsay evidence by simply having Mr. Franklin read such documents into the record. *See Rush v. Ill. Cent. R.R.*, 399 F.3d 705, 718-19 (6th Cir. 2005).[5] Nor can Plaintiff "offer a previously given statement to substitute for a witness's testimony under the guise of 'refreshing recollection,'" and "[t]he evil of this practice . . . is no less when an attorney can read the statement in the presence of the jury and thereby substitute his spoken word for the written document." *Goings v. United States*, 377 F.2d 753, 760 (8th Cir. 1967); *see also United States v. Faulkner*, 538 F.2d 724, 727 (6th Cir. 1976) ("[S]ome caution must be exercised to insure that the document is not used to put words into the mouth of the witness."). This Court

---

[5] As the Sixth Circuit explained in *Rush*, "otherwise inadmissible evidence [cannot be] introduced to the jury through the guise of refreshing a witness's recollection." 399 F.3d at 717. The court in *Rush* made clear the correct procedure for using an out-of-court statement to refresh recollection. First, it must be established that the witness does not have a present memory of the event. Second, the witness may be asked to *silently* review his prior statement. If the prior statement *refreshes* the witness's recollection, he can then be asked non-leading questions, to be answered based upon his refreshed recollection. It is not permissible for the attorney to read from the inadmissible out-of-court statement, followed by leading questions. *See id.* at 716-18. Nor is it permissible for a witness to read from his out-of-court statement. "Rule 612 requires a witness whose memory has been refreshed to testify from his present recollection, rather than to merely restate the contents of the writing." *Id.* at 718.

should therefore limit Mr. Franklin's trial testimony to those facts for which he can demonstrate personal knowledge and as to which he can testify from current recollection.

### III. Evidence of Other Claims, Actions, or Proceedings Related to Neurontin Is Likewise Inadmissible

To the extent that Plaintiff seeks to advise the jury, through argument or evidence, that other Neurontin lawsuits have been filed against Pfizer, such evidence is wholly irrelevant and could only be offered to induce the juror to render a verdict on an improper basis. Indeed, courts have recognized that, even when other claims and lawsuits have been proffered on the issue of notice, the prejudicial value of the evidence outweighs any probative value. *See, e.g., CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 144 F.3d 35, 45 (1st Cir. 1998) (in environmental insurance action, affirming exclusion of evidence of prior judicial findings of environmental contamination by defendant because of the danger that such evidence could "lead to a decision based on emotion or a desire to punish"); *Kinan v. City of Brockton*, 876 F.2d 1029, 1034-35 (1st Cir. 1989) (affirming exclusion of evidence of two previous civil rights cases filed against defendant because their remote relevancy was outweighed by the potential for prejudice); *McLeod v. Parsons Corp.*, 73 F. App'x 846, 853-54 (6th Cir. 2003) (affirming trial court's decision to exclude as irrelevant evidence of other unrelated lawsuits against defendant); *Barnes v. Koppers, Inc.*, No. 3:03CV60-P-D, 2006 WL 940279, at *3 (N.D. Miss. Apr. 11, 2006) (holding that "evidence of other lawsuits, claims, and injuries" even in same geographical area was "irrelevant to this case and therefore inadmissible"); *Grant Thornton, LLP v. FDIC*, No. 1:00-655, 2007 WL 518421, at *1 (S.D. W. Va. Feb. 13, 2007) ("Allowing evidence of other litigation [against plaintiff] would not only cause the issues of the current case to be delayed . . . but would confuse the issues by introducing twelve additional fact situations which would have to be dealt with individually before a decision on the merits of the current case could be reached.").

In this case, no conceivable argument for the relevance of such evidence can be offered by Plaintiff. No similar Neurontin case has been tried to judgment, and no determination of

12

causation has been made in any such litigation. Even if there were a verdict, the plaintiffs or decedents in other Neurontin lawsuits differ significantly from Mr. Shearer in myriad ways, including dose and duration of use of Neurontin, health and mental health history, concurrent medications, other risk factors for suicide, alleged injuries and, perhaps most importantly, the prescribing physicians' knowledge, decision-making, and directions to the patient.

The fact that other lawsuits have been filed, or claims have been made, against Pfizer means, at most, that others have made allegations against Pfizer. Allegations, however, are not evidence, and, if offered to prove the truth of the matter asserted – generic causation or failure to warn – are hearsay for which there is no exception. *See, e.g., Olson v. Ford Motor Co.*, 410 F. Supp. 2d 855, 861 (D.N.D. 2006); *Boston Beverage Corp. v. Turner*, 81 B.R. 738, 747 (D. Mass. 1987). In fact, even if another lawsuit is tried and the jury finds for the plaintiff, the jury verdict is inadmissible hearsay. *See* Fed. R. Evid. 803(22) (hearsay exception for judgments in other cases applies only to criminal felony cases). As a result, courts have been unwilling to admit judgments from previous cases. *See, e.g., Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987); *Colonial Refrigerated Transp., Inc. v. Mitchell*, 403 F.2d 541, 551 (5th Cir. 1968).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court exclude at trial any evidence of or reference to: (1) David Franklin's live or deposition testimony; (2) evidence from the *Franklin* litigation, including Mr. Franklin's Disclosure; and (3) any reference to or evidence of other claims, actions, or legal proceedings involving Neurontin.

Dated: February 22, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Mark.Cheffo@skadden.com

-and-

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
    William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
WOhlemeyer@bsfllp.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on February 22, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo