UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------ x

In re:  NEURONTIN MARKETING,
        SALES PRACTICES AND
        PRODUCTS LIABILITY LITIGATION

------------------------------------------------------------ x

THIS DOCUMENT RELATES TO:

*Shearer v. Pfizer Inc.*,
Case No. 1:07-cv-11428-PBS

------------------------------------------------------------ x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF MARKETING OR ADVERTISING MATERIALS AND CONDUCT

Pursuant to the Federal Rules of Evidence, Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer") respectfully submit this memorandum of law in support of their motion *in limine* to exclude evidence of, and reference to any marketing, advertising, or promotional materials or conduct concerning Neurontin. Defendants recognize that the Court previously addressed this or a similar issue in the *Bulger* case and assume that the Court will issue a similar ruling in *Shearer*. To the extent that is the case, Defendants are not seeking reargument, but reserve their right to appeal from any such ruling.

### PRELIMINARY STATEMENT

In this products liability case, Plaintiff will likely seek to introduce, just as plaintiffs have attempted in other Neurontin cases, voluminous and wide-ranging testimonial and documentary evidence relating to Pfizer's marketing and advertising of Neurontin. This evidence should be excluded on multiple grounds, including that it is irrelevant to Plaintiff's failure-to-warn claims, it would unfairly prejudice Pfizer, would confuse the issues for the jury, and would unnecessarily and substantially broaden the scope of this trial.[1]

---

[1] On June 9, 2009, this Court ordered in the *Bulger* case that each side was limited to 21 hours for
*(cont'd)*

This Court has dismissed Plaintiff's claims of fraudulent misrepresentation, and upheld Plaintiff's fraudulent concealment claim only to the extent that it is not based on evidence regarding Pfizer's national advertising and marketing campaign. *See In re Neurontin Mktg., Sales Practices & Prods. Liability Litig.*, 618 F. Supp. 2d 96, 114 (D. Mass. 2009) ("*Neurontin III*"). Likewise, this Court has also repeatedly recognized that off-label promotion does not constitute fraud, much less the narrow fraud by omission claim that the Court allowed to proceed. *See, e.g., In re Neurontin Mktg., Sales Practices & Prods. Liability Litig.*, 257 F.R.D. 315, 329 (D. Mass. 2009) ("*Neurontin II*"); *In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 92 n.6 (D. Mass 2007) (Saris, J.) ("*Neurontin I*"). The Court's rulings confirm that evidence and testimony regarding national advertising and marketing of Neurontin is wholly irrelevant to Plaintiff's claims and should be excluded.

Moreover, none of Plaintiff's marketing evidence bears any connection to Decedent, Hartley Shearer, or the actions of his prescribing physicians. None of it relates in any way to the issues for the jury to decide at Plaintiff's trial: whether Neurontin causes suicidal behavior; whether Neurontin's label should have warned doctors of a risk of suicidal behavior; and whether Mr. Shearer's decision to take his own life resulted from his use of Neurontin or from one of his many other well-accepted risk factors for suicide. The evidence that is the subject of this Motion would serve only to influence the jury to reach the wholly irrelevant, but highly prejudicial, conclusion that Pfizer engaged in improper marketing and is a "bad actor."[2] The Rules and the case law mandate that all such evidence be excluded.

---

*(cont'd from previous page)*
direct, cross, re-direct and re-cross. The parties have been proceeding with trial preparation in this case based upon the assumption that similar time constraints will apply to the trial of this case. The presentation of voluminous evidence pertaining to the marketing of Neurontin to physicians other than Mr. Shearer's prescribers is inconsistent with such parameters.

[2] As this Court is aware, Warner-Lambert pleaded guilty in 2004 to strict liability violations of the Federal Food, Drug, and Cosmetic Act relating to specific instances of marketing of Neurontin for off-label uses in 1995 and 1996, several years before Mr. Shearer was ever prescribed Neurontin. The guilty plea and related evidence are subject to a separate motion *in limine*, filed concurrently herewith, and incorporated herein by reference.

## ARGUMENT

I. **Evidence of Pfizer's Marketing or Advertising of Neurontin Should be Excluded as Irrelevant**

Plaintiff will likely designate as trial exhibits evidence pertaining only to national (and in some cases, foreign) marketing and advertising activities that are unrelated to the facts and issues in this case. For example, in *Bulger v. Pfizer*, the plaintiff's exhibit list included evidence relating to: speaker bureau presentations; continuing medical education presentations; consultants' meetings; advisory board meetings; teleconferences; Pfizer's involvement in the publication of clinical trial and study results; correspondence with the FDA regarding promotional pieces; and internal communications regarding the marketing and promotion of Neurontin, all of which are completely unconnected to the decisions of Mr. Shearer's doctors to prescribe Neurontin to him. Also as in *Bulger*, Plaintiff may designate numerous witnesses, live and by deposition, whose testimony pertains only to national marketing and is not relevant to the issues in this case, including: David Franklin (plaintiff-relator in *Franklin*),[3] Helen Duda-Racki, Bruce Fleischman, John Knoop, John Marino, Michele Meager, Avanish Mishra, and Martin Teicher.

Under Massachusetts' "learned intermediary rule," a prescription drug manufacturer fulfills its duty to warn "where it has adequately informed the prescribing physician of any associated risks." *Haughton v. Hill Labs., Inc.*, No. 06-11217, 2007 WL 2484889, at *2 (D. Mass. Aug. 30, 2007). As this Court has already found in dismissing Plaintiff's claims of affirmative fraudulent misrepresentation, Plaintiff has not even alleged, much less proffered evidence, that Mr. Shearer's prescribing physicians received or relied upon any marketing materials or statements by Pfizer concerning Neurontin in making their prescribing decisions in Mr. Shearer's case. *See Neurontin III*, 618 F. Supp. at 112. To the contrary, neither Dr. Angevine nor Dr. Sullivan recalled receiving *any* promotional statements by Pfizer before they

---

[3] Mr. Franklin's testimony is the subject of a separate motion to exclude, filed concurrently herewith and incorporated by reference.

3

prescribed Neurontin to Mr. Shearer (Ex. A, Sullivan Dep. at 111:5-114:9; Ex. B, Angevine Dep. at 15:1-5),[4] and Dr. Hynes testified that he did not have a specific recollection of visits with sales representatives regarding Neurontin, and was "not sure" regarding the timing of those visits. (Ex. C, Hynes Dep. at 180:20-182:23.)

Advertising and promotional statements that those physicians never heard or saw are thus completely irrelevant to the question of whether Pfizer's labeling for Neurontin adequately warned of its known risks and whether any additional suicide warning would have changed their decisions to prescribe Neurontin to Mr. Shearer. *See, e.g.*, *In re Norplant Contraceptive Prods. Liability Litig.*, No. MDL 1038, 1997 WL 81092, at *1 (E.D. Tex. Feb. 21, 1997) (observing that a determination of whether a physician was adequately warned involves a consideration of "all materials to which the physician *was actually exposed*, including patient materials . . . as well as advertisements *actually seen* by the physician" and excluding evidence of marketing and promotional materials and correspondence where there was no evidence that plaintiff's prescribers were exposed to such evidence (emphasis added)); *see also In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 WL 223140, at *5 (M.D. Fla. Jan. 30, 2009) (excluding letters from FDA's Division of Drug Marketing, Advertising and Communications ("DDMAC") because "[p]laintiffs [had] not shown that their prescribing physicians were exposed to the promotional materials" at issue in the letters), *aff'd*, 601 F. Supp. 2d 1313 (M.D. Fla. 2009); *Miller v. Pfizer Inc. (Roerig Div.)*, 196 F. Supp. 2d 1095, 1122-23 (D. Kan. 2002) (granting summary judgment because plaintiff provided no evidence that plaintiff's physician relied on representations by manufacturer), *aff'd*, 356 F.3d 1326 (10th Cir. 2004); *Alexander v. Smith & Nephew, P.L.C.*, 90 F. Supp. 2d 1225, 1235 (N.D. Okla. 2000) (same); *In re Orthopedic Bone Screw Prods. Liability Litig.*, No. MDL 1014, Civ. A. No. 93-7074, 1995 WL 273597, at *12 n.13 (E.D. Pa. Feb. 22, 1995) (holding that plaintiff bears the burden of showing that defendant promoted or marketed its device to a particular physician and that such promotion

---

[4] All exhibits are attached to the accompanying Declaration of Mark S. Cheffo.

caused the doctor to use the device).  Marketing evidence is similarly irrelevant to the questions of whether Neurontin is scientifically capable of inducing suicidal behavior, whether Pfizer knew or should have known about such a risk at the time Neurontin was prescribed to Mr. Shearer from 2000 to 2002, and whether Mr. Shearer's suicide was caused by Neurontin.

Nor is such evidence relevant to Plaintiff's fraud by omission claim.  As this Court has recognized, off-label marketing, even if it occurred, is not itself fraudulent.  As the Court has stated: "While off-label marketing is illegal, there is no private right of action to enforce it.  To succeed on their claims, plaintiffs must prove that defendants' representations were false, along with all other elements of their claims." *Neurontin I*, 244 F.R.D. at 92 n.6 (Saris, J.) (citation omitted); *see also Neurontin II*, 257 F.R.D. at 329 (holding that consumer plaintiffs must establish that "defendants' *fraudulent* marketing, not simply their off-label marketing, caused the prescriptions written for the putative class members").  And, as noted above, this Court has also held that Plaintiff's claims of fraudulent omission cannot be based upon omissions from national marketing.  *Neurontin III*, 618 F. Supp. 2d at 114.

Plaintiff may argue that off-label marketing is relevant to the issue of duty.  However, those courts that have recognized a duty to warn of risks associated with off-label use have done so based upon the *foreseeability* of the off-label use, not whether the drug was *marketed* for off-label uses.  See *McNeil v. Wyeth*, 462 F.3d 364, 369 (5th Cir. 2006); *Woodbury v. Janssen Pharms., Inc.*, No. 93 C 7118, 1997 WL 201571, at *9 (N.D. Ill. Apr. 10, 1997); *cf. Knowlton v. Deseret Med., Inc.*, 930 F.2d 116, 122-23 (1st Cir. 1991) (applying Massachusetts law and holding that manufacturer of medical device had duty to warn where there was evidence that it was aware of off-label use of product); *see also Peterson v. Parke Davis & Co.*, 705 P.2d 1001, 1003 (Colo. Ct. App. 1985) (holding that drug manufacturer was not liable for physician's unforeseeable misuse of product).  In other words, the duty derives from a manufacturer's duty to warn of risks associated with foreseeable misuses of a product.  See *Knowlton*, 930 F.2d at 120 ("Under Massachusetts law, '[t]he implied warranty of fitness includes uses which are reasonably foreseeable but does not include unforeseeable misuses of a product.'" (citation

5

omitted)). In this case, Pfizer admits that it was aware that Neurontin was being prescribed off-label, including for general neuropathic pain. Pfizer does not contend that the prescription of Neurontin to treat Mr. Shearer's pain was unforeseeable or that it constituted a misuse of the product. To the contrary, Pfizer has consistently maintained in this litigation that physicians were entitled to exercise their independent medical judgment and prescribe Neurontin for off-label uses. Pfizer argues that there was no duty to warn of the risk of suicide not because *off-label uses* were unforeseeable, but because the *risk* was unforeseeable. That is, Pfizer argues that there was no duty to warn because there was not at the time of Mr. Shearer's death any reliable evidence establishing a causal association between Neurontin and suicide. This is true regardless of whether Neurontin was prescribed for a labeled or off-label use.

Accordingly, because the foreseeability of off-label use is not at issue in this litigation, Plaintiff's proffered evidence in support of his allegations regarding Defendants' marketing of Neurontin for off-label use is not probative of any relevant and material fact. Plaintiff cannot introduce otherwise irrelevant evidence to prove an issue that has no bearing on the outcome of this case. *See, e.g., Turner v. Allstate Ins. Co.*, 902 F.2d 1208, 1212-13 (6th Cir. 1990) (ruling inadmissible evidence offered to show a party's good faith when the issue of good faith was not disputed).

II.  **Any Probative Value Of Marketing Evidence Is Substantially Outweighed By Its Potential For Unfair Prejudice, Confusion Of The Issues, And Waste Of Time**

Even if marketing evidence had some marginal relevance for a permissible purpose, which it does not, it should be excluded pursuant to Rule 403 because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, [and] misleading the jury" and by undue delay and waste of time. Fed. R. Evid. 403. Specifically, because it is clear that marketing materials played no causal role in this case, their introduction would serve only to encourage a jury to base its decision not on the facts properly before it but on the basis of inflammatory allegations against Pfizer that are unrelated to the issues in this case. This is precisely the sort of prejudice at which Rule 403 is aimed.

6

Further, the introduction of marketing evidence will substantially, and unnecessarily, prolong this trial and doubtlessly transform this product liability case into a trial about the irrelevant but complex regulatory regime regarding prescription drug promotion. To respond to the types of attacks Pfizer anticipates Plaintiff will attempt through marketing evidence, Pfizer would need to present responsive evidence. In the case of unimplemented marketing activities, for example, Pfizer would need to waste valuable trial time eliciting evidence that makes clear that they were never implemented and never affected any prescription decision, much less those at issue in the case. Jurors will likely become confused and may be misled into thinking that Pfizer is on trial for its promotion of Neurontin, rather than for an alleged failure to warn of a safety risk. Letters issued by DDMAC, though unrelated to the claims at issue here, may further distract the jurors from the real issues at trial by focusing needlessly on Pfizer's promotional activity. The Court should not permit this irrelevant, time-consuming "trial within a trial" and should instead focus the jury on Plaintiff's claim for failure to warn by excluding marketing evidence.

### III. Marketing Evidence Constitutes Impermissible Character Propensity Evidence And Should Therefore Be Excluded Under Rule 404(b)

Given the lack of relevance of marketing evidence to this case, the only conceivable use for which Plaintiff would seek to have it admitted would be to attempt to impugn Pfizer's character, in violation of Rule 404(b). Plaintiff will seek to portray Pfizer as a "bad actor" in the most general sense by trying to convince a jury that Pfizer has illegally, fraudulently, or otherwise improperly promoted Neurontin. As the First Circuit has explained:

> To admit evidence of prior bad acts, a trial court must find that the evidence passes two tests. First, the evidence must have "special relevance" to an issue in the case such as intent or knowledge, and must not include "bad character or propensity as a necessary link in the inferential chain." Second, under Rule 403, evidence that is specially relevant may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

*United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000) (quoting *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996)); *see also United States v. Gilbert*, 229 F.3d 15,

7

20-21 (1st Cir. 2000). As established above, Plaintiff cannot meet either of these requirements because marketing evidence is irrelevant to this dispute and will cause unfair prejudice and undue delay. While Rule 404(b) allows the introduction of other crimes, wrongs, or acts for certain purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," no such alternate reason has or could be proffered in the instant case. Fed. R. Evid. 404(b).[5] The only possible use of marketing evidence is specifically precluded by Rule 404(b): to invite the jury to base a finding of liability on Pfizer's alleged character rather than on the merits of Plaintiff's product liability allegations.

## IV.  Plaintiff's Marketing Expert Should Similarly Be Excluded

This Court's dismissal of Plaintiff's fraud claim based on affirmative representations or "a suppression of information as a part of a national marketing campaign," *see Neurontin III*, 618 F. Supp. 2d at 112, also mandates exclusion of any evidence or testimony related to Plaintiff's marketing expert, economist Charles King, III, Ph.D ("Prof. King"). The products liability plaintiffs have designated Prof. King to testify that Pfizer caused physicians to prescribe Neurontin to patients for off-label uses through allegedly illegal marketing and promotional efforts. Prof. King has admitted that he would not opine that any particular prescription resulted

---

[5] To the extent Plaintiff attempts to argue that marketing evidence is offered as evidence of a general motive to make money, such a generic motive does not satisfy Rule 404(b)'s separate purpose requirement. "[T]he analysis required under Fed. R. Evid. 404(b) must be more than merely inquiring if an exception is applicable and then automatically allowing in all evidence that seemingly fits into the exception. . . . The Court therefore views its role as one of a 'gate-keeper' similar to the non-involved role that judges have with respect to expert witnesses." *United States v. Gerard*, 926 F. Supp. 1351, 1358 (N.D. Ill. 1996) (citation omitted), *aff'd mem.*, 129 F.3d 119 (7th Cir. 1997). Thus, to escape the "absolute bar" of Rule 404(b), the proponent must show "special" relevance that connects the evidence to a specific, disputed consequential fact in the litigation by an evidential theory that does not rely on any inference about the defendant's propensity or character. *See United States v. Arias-Montoya*, 967 F.2d 708, 709-11 (1st Cir. 1992); *see also Varoudakis*, 233 F.3d at 125 n.11 (reversing conviction for admission of prior bad acts and cautioning that Rule 404(b)'s "exceptions must not swallow the rule"). When offered only to show bad character of the defendant, even if that character might be characterized as a "motive," the evidence is inadmissible. *See, e.g., Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 441 (D.C. Cir. 1994) (holding that prior conduct evidence proffered to demonstrate, *inter alia*, greed, inadmissible under Rule 404(b) because it was "only a shade less general than a claim that [the defendant] was a bad man"). In this case, evidence of certain promotional activities years before Mr. Shearer was ever prescribed Neurontin could never be probative of any of the elements that Plaintiff must prove and the exceptions listed in Rule 404(b) cannot be used as an end-run around the general prohibition against character evidence.

from any alleged improper promotion, (*see* King Dep., Ex. D, at 126:17-23), but rather that his opinion is that Pfizer's alleged improper marketing efforts "*indirectly influenced* all, or substantially, all physicians prescribing of Neurontin." (Ex. E, King Report, at 5 ¶ 5 (emphasis added).) As Prof. King cannot point to any evidence that Mr. Shearer's prescribing physicians were influenced by any alleged improper promotion, his opinion is nothing more than a "fraud-on-the-market" theory, which this Court has soundly rejected. *See Neurontin III*, 618 F. Supp. 2d at 111-12; *Neurontin II*, 257 F.R.D. 315. It should therefore be excluded.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court exclude at trial any and all evidence relating to Pfizer's marketing of Neurontin, including the testimony and opinions of Plaintiff's marketing expert, Prof. King.

Dated: February 22, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Mark.Cheffo@skadden.com

-and-

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
    William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
WOhlemeyer@bsfllp.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

---

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on February 22, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo

9