# EXHIBIT B

Page 1

```
 1   UNITED STATES DISTRICT COURT
     DISTRICT OF MASSACHUSETTS
 2   ----------------------------------x
     IN RE:   NEURONTIN MARKETING,    MDL DOCKET
 3            SALES PRACTICES AND     NO. 1629
              PRODUCTS LIABILITY      MASTER FILE
 4            LITIGATION,             NO. 04-10981
 5   _____x
 6   THIS DOCUMENT RELATES TO:        JUDGE PATTI B.
                                      SARIS, MAGISTRATE
 7   SHEARER VS. PFIZER, ET AL;       JUDGE LEO T.
         -CV-11428-PBS,               SOROKIN
 8
                 Defendant.
 9   ----------------------------------x
10
11            DEPOSITION OF ANNE HUDSON ANGEVINE
12
         The deposition of Anne Hudson Angevine was
13
     taken on November 17, 2009, at Hyatt Regency
14
     Greenwich, 1800 East Putnam Avenue, Old Greenwich,
15
     Connecticut, before Susan Wandzilak, Registered
16
     Professional Reporter and Notary Public in the
17
     State of Connecticut.
18
19
20
21              Susan Wandzilak   License No. 377
22
23
24
25   Job No. 225429
```

Page 2

```
 1           A P P E A R A N C E S
 2   KENNETH B. FROMSON, ESQUIRE
     SHAREEF RABAA, ESQUIRE
 3   SHARON SCANLAN, ESQUIRE
         Finkelstein & Partners
 4       1279 Route 300
         Post Office Box 1111
 5       Newburgh, New York 12551
         800-634-1212 Phone
 6       845-562-3492 Fax
         kfromson@lawampm.com
 7
             Attorney for Plaintiffs
 8
     CATHERINE B. STEVENS, ESQUIRE
 9       Skadden, Arps, Slate, Meagher & Flom, LLP
         Four Times Square
10       New York, New York 10036
         212-735-3353 Phone
11       917-777-3353 Fax
         Catherine.Stevens@skadden.com
12
             Attorney for Defendant Pfizer
13
     RICHARD M. BARNES, ESQUIRE
14       Goodell, DeVries, Leech & Dann, LLP
         One South Street
15       20th Floor
         Baltimore, Maryland 21202
16       410-783-4004 Phone
         410-783-4040 Fax
17       rmb@gdldlaw.com
18           Attorney for Defendant Pfizer
19   Also Present:  Samuel Krumholz
                    Emily Ardolino
20
21
22
23
24
25
```

Page 4

```
 1
 2               I N D E X
 3
     TESTIMONY OF ANNE HUDSON ANGEVINE
 4
        Direct Examination by Mr. Barnes      5
 5
        Cross Examination by Mr. Fromson      96
 6
 7
 8
 9
     CERTIFICATE OF REPORTER                 123
10
11
12
13               E X H I B I T S
14   Angevine Exhibit No. 1          Premarked
     Angevine Exhibit No. 2             8
15   Angevine Exhibit No. 3             8
     Angevine Exhibit No. 4             8
16   Angevine Exhibit No. 5            11
     Angevine Exhibit No. 6            12
17   Angevine Exhibit No. 7            31
     Angevine Exhibit No. 8            96
18   Angevine Exhibit No. 9            99
     Angevine Exhibit No. 10          102
19
20
21
22
23
24
25
```

Page 3

```
 1               S T I P U L A T I O N S
 2       IT IS HEREBY STIPULATED AND AGREED by
 3   and between counsel representing the parties that
 4   each party reserves the right to make specific
 5   objections at the trial of the case to each and
 6   every question asked and of answers given
 7   thereto by the deponent, reserving the right to
 8   move to strike out where applicable, except as to
 9   such objections as are directed to the form of
10   the question.
11       IT IS HEREBY STIPULATED AND AGREED by
12   and between counsel representing the respective
13   parties that proof of the official authority of
14   the Notary Public before whom this deposition is
15   taken is waived.
16       IT IS FURTHER STIPULATED AND AGREED by
17   and between counsel representing the respective
18   parties that the reading and signing of the
19   deposition by the deponent is not waived.
20       IT IS FURTHER STIPULATED AND AGREED by
21   and between counsel representing parties that all
22   defects, if any, as to the notice of the taking
23   of the deposition are waived.
24       Filing of the Notice of Deposition with
25   the original transcript is waived.
```

Page 5

```
 1           ANNE HUDSON ANGEVINE,
 2   having been first duly sworn, testified as
 3   follows:
 4       THE COURT REPORTER:  What is your full name
 5   and address for the record?
 6       THE WITNESS:  Anne Hudson Angevine, 14 West
 7   Way, Bronxville, New York 10708.
 8           DIRECT EXAMINATION
 9   BY MR. BARNES:
10     Q.  Good morning, Dr. Angevine.  My name is Rick
11   Barnes.  I represent Pfizer in this case.  And you
12   have been subpoenaed to appear for a deposition this
13   morning.  Do you understand that?
14     A.  Yes.
15     Q.  Have you ever been deposed before?
16     A.  No.
17     Q.  This is going to be an enjoyable morning,
18   okay?
19     A.  I hope so.
20     Q.  Okay, there are two notices.  One is the
21   notice from Pfizer and the other notice is from the
22   plaintiff's counsel.  In this case on behalf of the
23   Shearer family, are you aware of that?
24     A.  Yes.
25     Q.  I am going to hand you what has been marked
```

Page 14

1  interaction with sort of pharmaceutical
2  representatives related to -- I believe related to
3  Neurontin.
4      And my reply to him was that in my training
5  programs at the Brigham and Women's and other
6  institutions where I've worked that interactions of
7  pharmaceutical representatives and house staff members
8  was prohibited. That is the extent of what I recall
9  from that conversation.
10     Q. That's fine. Thank you. So let me just work
11 my way back through this if I can, all right?
12     A. Sure.
13     Q. Did -- prior to your conversation with
14 Dr. Egilman, did you have -- were you aware of whether
15 or not Pfizer had been implicated with regard to
16 violation of regulations and laws pertaining to
17 off-label marketing of medicine?
18     A. No, I was not.
19     Q. And prior to October of 2000, is it correct
20 to say you had no personal experience with Pfizer
21 pharmaceutical representatives of any kind; is that
22 correct?
23         MR. FROMSON: Objection to form.
24         THE WITNESS: That is correct.
25 BY MR. BARNES:

Page 15

1      Q. Let me ask you this. What, if any, contact
2  did you have with pharmaceutical representatives from
3  Pfizer prior to October of 2000 and -- prior to
4  October of 2000?
5      A. None.
6      Q. Had you ever received any information
7  concerning Neurontin prior to October 14 of 2000 from
8  any source?
9      A. In pharmacology class in medical school I
10 would have learned about the use -- the, you know, the
11 medication Gabapentin and its pharmacology.
12     Q. In the ordinary course of your training as a
13 physician.
14     A. Exactly.
15     Q. And did you recall receiving any information
16 from the attending staff at Brigham and Women's
17 Hospital concerning the use of Neurontin for the
18 treatment of any conditions?
19     A. Yes.
20     Q. Okay. And did you personally prescribe
21 Neurontin in October of 2000 during your training at
22 Brigham and Women's Hospital?
23     A. Yes, although I didn't see the order sheets
24 in that particular stack of papers, but I am assuming
25 that I ordered the medication.

Page 16

1      Q. So you either would renew it --
2      A. Oh, I know why. Because it was all done by
3  computer.
4      Q. Yeah, I think you can help explain that to me
5  then. That would be fine.
6      A. Okay.
7      Q. I may mark a few other pages on a break, but
8  that would help me. Thank you very much for that.
9      A. Sure.
10     Q. Let me go through your c.v. and we will work
11 our way back, but one other question in the materials
12 in Exhibit No. 6. Was that information relevant to
13 you in any way with regard to your care and treatment
14 of Mr. Shearer in 2000?
15     A. Which information? I am sorry.
16     Q. Right here, in this, the packet of
17 information Dr. Egilman sent to you.
18     A. Can you clarify what you mean by relevant?
19     Q. Well, in other words, does it have anything
20 to do in your mind with the case, your care of Hartley
21 Shearer?
22     A. Not in my recollection of the details of the
23 case based on the document, you know, the records that
24 you provided me for review today.
25     Q. Okay. And other than reading the abstract of

Page 17

1  the article in the Annals of Internal Medicine, did
2  you read any of this other material?
3      A. No, I did not.
4      Q. Okay. Did you have any reaction to the
5  receipt of these documents in the mail from
6  Dr. Egilman as to why would someone be sending you a
7  group of documents out of the blue?
8          MR. FROMSON: Objection. Form.
9          THE WITNESS: You -- yes, I had that exact
10 reaction. That had not happened to me
11 previously, so --
12 BY MR. BARNES:
13     Q. What was your reaction?
14     A. I was uncertain as to how to -- what to do
15 with that information and why I was being specifically
16 mailed that information.
17     Q. Did you ask Dr. Egilman why he sent that
18 material to you?
19     A. I don't remember if I asked him that specific
20 question.
21     Q. Um-uh. What was your -- based upon your
22 conversation with Dr. Egilman, did you come to an
23 understanding as to why he sent those documents to
24 you?
25     A. Yes, yes.