EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
:
In re: NEURONTIN MARKETING,        : MDL Docket No.: 1629
       SALES PRACTICES AND         :
       PRODUCTS LIABILITY LITIGATION : Master File No.: 04-10981
                                   :
                                   : Judge Patti B. Saris
------------------------------------------------------------x
                                   : Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:          :
                                   :
*Shearer v. Pfizer Inc.*, 1:07-cv-11428-PBS :
                                   :
                                   :
------------------------------------------------------------x

**[PROPOSED]**
**PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM OFFERING ANY EVIDENCE, TESTIMONY, MENTION, REFERENCES OR INFERENCES REGARDING THE SUICIDE BY FIREARM OF PLAINTIFF'S DECEDENT HARTLEY SHEARER'S STEPFATHER, CLIFFORD ROBERTS**

Plaintiff LINDA B. SHEARER, as Executrix of the Estate of Hartley Parker Shearer, deceased, by and through her counsel, hereby moves this Court for an order granting Plaintiff leave to file a late Motion *in Limine* to preclude Defendants from offering any evidence, testimony, mention, references or inferences regarding the suicide by firearm of Plaintiff's decedent Hartley Shearer's stepfather, Clifford Roberts.

This motion is supported by the Memorandum and Exhibits annexed thereto, filed herewith.

Dated: March 1, 2010                       Respectfully submitted,

                                           By:   /s/ W. Mark Lanier
                                                 W. Mark Lanier, Esquire
                                                 THE LANIER LAW FIRM, P.L.L.C.
                                                 126 East 56th Street, 6th Floor
                                                 New York, NY 10022

By:   /s/ Andrew G. Finkelstein
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
1279 Route 300, P.O. Box 1111
Newburgh, NY 12551

*Attorneys for Plaintiff Linda B. Shearer*

## CERTIFICATION OF GOOD FAITH

I hereby certify that I have conferred in good faith with counsel for Defendants concerning the issues presented in the foregoing motion, and the parties have been unable to resolve the issues without the intervention of this Court.

Dated: March 1, 2010

/s/ Kenneth B. Fromson
Kenneth B. Fromson, Esquire

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on March 1, 2010.

/s/ Andrew G. Finkelstein
Andrew G. Finkelstein, Esquire

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
:
In re:  NEURONTIN MARKETING,                     :   MDL Docket No.: 1629
       SALES PRACTICES AND                           :
       PRODUCTS LIABILITY LITIGATION           :   Master File No.: 04-10981
:
:   Judge Patti B. Saris
---------------------------------------------------------------x
:   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                        :
:
*Shearer v. Pfizer Inc.*, 1:07-cv-11428-PBS      :
:
---------------------------------------------------------------x

### [PROPOSED] MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM OFFERING ANY EVIDENCE, TESTIMONY, MENTION, REFERENCES OR INFERENCES REGARDING THE SUICIDE BY FIREARM OF PLAINTIFF'S DECEDENT' HARTLEY SHEARER'S STEPFATHER, CLIFFORD ROBERTS

Plaintiff LINDA B. SHEARER, (hereinafter "Plaintiff"), as Executrix of the Estate of Hartley Parker Shearer, deceased, by and through her counsel, respectfully requests that the Court preclude any evidence, testimony, comments, documents, references to or inferences, proffered by Defendants PFIZER INC. and WARNER-LAMBERT COMPANY LLC, (hereinafter "Defendants"), at trial, concerning Hartley Shearer's stepfather' suicide, on the grounds that such evidence and testimony is unreliable, irrelevant, highly prejudicial, and will confuse, mislead and inflame the jury.

As demonstrated below, such evidence must be excluded under Fed. R. Evid. 401, 402 and 403, as irrelevant and inadmissible, and because their probative value is outweighed by the risk of undue prejudice, confusion of issues, misleading the jury, undue delay, and waste of time.

## BACKGROUND

The deposition of Defendants' specific causation expert, Dr. Douglas Jacobs, was taken on February 9, 2010. *See* excerpts from Jacobs Deposition, annexed hereto as Exhibit A. Dr. Jacob testified that page 29 of his expert report made note that he considered a New York Times obituary for Clifford Roberts, who was Plaintiff's decedent, Hartley Shearer's stepfather. Jacobs Dep., at 85:16-25.[1] Dr. Jacobs testified that Mr. Roberts committed suicide with a firearm. Jacobs Dep. at 86:2-5. Dr. Jacobs clarified that Hartley Shearer's stepfather's suicide was not a risk factor for Hartley Shearer's suicide:

> Q. Okay. Is it more than interesting? Does it have any -- are you going to say that somehow that Mr. Shearer's stepfather's suicide was a risk factor for Mr. Shearer's suicide?
>
> A. I don't think I would go as far as to say it was a risk factor, but I would say that it's a noteworthy clinical event in this case.

Jacobs Dep. at 86:16-24.

Moreover, Dr. Jacobs, in no uncertain terms, also stated that the suicide of Hartley Shearer's stepfather is not relevant to causation in this case:

> Q. So, as I understand it, you find that the suicide of Mr. Shearer's stepfather is an interesting -- what did you say? Interesting sidenote? What did you say?
>
> A. It's noteworthy in this case because the fact pattern is very similar.
>
> Q. Is it relevant to causation?
>
> A. No.

Jacobs Dep. at 87:13-20.

## ARGUMENT

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

---

[1] New York Times obituary of Clifford Roberts, annexed hereto as Ex. B.

2

it would be without the evidence." Moore's Fed. Rules Pamphlet 2009, Fed. R. Evid. 401. To be admissible, evidence must be relevant. Fed. R. Evid. 401; *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248, 252 (1st Cir. 1998). Further, the Federal Rules of Evidence provide that "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403 (emphasis added).

Defendants own specific causation expert, Dr. Jacobs, has testified that the death of Hartley Shearer's stepfather by suicide with a firearm is not relevant to the issue of causation in this case. Therefore, evidence of Hartley Shearer's stepfather's suicide would not meet the threshold requirement under Fed. Rule Evid. 401. Because Defendants' own expert has denied that the stepfather's suicide is relevant to proximate cause, this evidence would only serve to inflame the jury against Plaintiff or confuse the issues or mislead the jury. Moreover, any mention by Defendants in this case of Clifford Roberts' suicide would serve no real probative value and certainly would cause unfair prejudice to Plaintiff.

## CONCLUSION

Plaintiff therefore respectfully requests an order prohibiting Defendants from mentioning, arguing or offering testimony, evidence, comments, references to or inferences that Plaintiff's decedent Hartley Shearer's stepfather, Clifford Roberts, committed suicide by a firearm.

Dated: March 1, 2010                                  Respectfully submitted,

                                                By:   /s/ W. Mark Lanier
                                                      W. Mark Lanier, Esquire
                                                      THE LANIER LAW FIRM, P.L.L.C.
                                                      126 East 56th Street, 6th Floor
                                                      New York, NY 10022

By:   <u>/s/ Andrew G. Finkelstein</u>
        Andrew G. Finkelstein, Esquire
        FINKELSTEIN & PARTNERS, LLP
        1279 Route 300, P.O. Box 1111
        Newburgh, NY 12551

        *Attorneys for Plaintiff Linda B. Shearer*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on March 1, 2010.

        <u>/s/ Andrew G. Finkelstein</u>
        Andrew G. Finkelstein, Esquire

[Proposed]
EXHIBIT A

```
                                                                    1

 1                                     VOLUME: I
                                       PAGES:   1 to 99
 2                                     EXHIBITS: 1 and 8

 3            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
 4

 5    MDL Docket No. 1629
      Master File No. 04-10981
 6

 7    IN RE: NEURONTIN MARKETING,
      SALES PRACTICES AND
 8    PRODUCTS LIABILITY
      LITIGATION
 9
      ---------------------------
10
      THIS DOCUMENT RELATES TO:
11    Shearer vs. Pfizer, Inc.

12

13    Job No.: DG240263

14        DEPOSITION OF DOUGLAS C. JACOBS,

15    M.D., called as a witness on behalf of

16    the Plaintiff, pursuant to the applicable

17    provisions of the Federal Rules of Civil

18    Procedure, before Jeanette N. Maracas,

19    Registered Professional Reporter and Notary

20    Public in and for the Commonwealth of

21    Massachusetts, at the Offices of Professional

22    Psychiatric Associates, One Washington

23    Street, Wellesley Hills, Massachusetts, on

24    Tuesday, February 9, 2010, commencing at

25    9:45 a.m.
```

```
                                                                    2
 1   APPEARANCES:

 2

 3
         THE LANIER LAW FIRM
 4       By: Kenneth S. Soh, Esq.
         6810 FM 1960 West
 5       Houston, Texas 77069
         For the Plaintiff.
 6       kss@lanierlawfirm.com

 7

 8
         BOIES, SCHILLER & FLEXNER, LLP
 9       By: William S. Ohlemeyer, Esq.
         333 Main Street
10       Armonk, New York 10504
         For Pfizer, Inc.
11       E-mail: Wohlemeyer@bsfllp.com

12

13   ALSO PRESENT:   Sam Krumholz

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1      state that Hartley Shearer's emotional
 2      state may have been upset by what might have
 3      been the absence of fluoxetine.
 4  Q.  Okay.
 5  A.  That's it.
 6  Q.  Going to references, Dr. Jacobs, Page 27,
 7      No. 3, looks like in JAMA, an article you
 8      published?
 9  A.  Yes.
10  Q.  Is that a case report?
11  A.  It was a case conference.  I was asked to
12      give a conference at the Beth Israel
13      Hospital and then they published that case
14      series and they asked me if I would want
15      to author an article for JAMA, which I did.
16  Q.  Page 29, the 48th entry, New York Times
17      obituary of Clifford Roberts, do you see
18      that?
19  A.  Yes.
20  Q.  That was given to you by the lawyers for
21      Pfizer in this case?
22  A.  I don't know whether we found it or -- I'm
23      not sure.  It could have been.
24  Q.  And for background, Mr. Roberts was Mr.
25      Shearer's stepfather, correct?
```

                                                          86

1    A.   Correct.
2    Q.   Mr. Roberts committed suicide?
3    A.   Correct.
4    Q.   I believe with a firearm, correct?
5    A.   Correct.
6    Q.   Does that have any relevance in this case?
7    A.   To the degree that I believe -- I haven't
8         looked at that obituary.  I think he had a
9         stroke, and that in terms of suicide, suicide
10        has two -- suicides in families, there's
11        two ways that suicide gets passed on.
12        There's a genetic predisposition and there's
13        an environmental predisposition.  To the
14        degree it's an interesting phenomenon in
15        this case, that's all I can say.
16   Q.   Okay.  Is it more than interesting?  Does
17        it have any -- are you going to say that
18        somehow that Mr. Shearer's stepfather's
19        suicide was a risk factor for Mr. Shearer's
20        suicide?
21   A.   I don't think I would go as far as to say
22        it was a risk factor, but I would say that
23        it's a noteworthy clinical event in this
24        case.
25   Q.   Would you identify for me any articles

```
 1         that -- are you aware of any articles that
 2         talk about this whole environmental passing
 3         on of suicide?
 4    A.   I am.
 5    Q.   Could you cite some for me, remote to
 6         stepfathers?
 7    A.   It may be in my textbooks.
 8    Q.   Off the top of your head, can you identify
 9         any articles for me?
10    A.   I'd have to go to my textbook, but what
11         I will do is I will find some articles and
12         I'll give them to Mr. Ohlemeyer.
13    Q.   So, as I understand it, you find that the
14         suicide of Mr. Shearer's stepfather is an
15         interesting -- what did you say?  Interesting
16         sidenote?  What did you say?
17    A.   It's noteworthy in this case because the
18         fact pattern is very similar.
19    Q.   Is it relevant to causation?
20    A.   No.
21    Q.   Thank you very much.  Let's take a break.
22         I will -- let me clean up, look at my notes
23         and then we'll be done in a few minutes.
24              MR. OHLEMEYER:  Fine.  Thanks.
25              MR. SOH:  Let me just identify a few
```

[Proposed]
**EXHIBIT B**

# Clifford Roberts, a Founder and Longtime Chief Of the Masters Golf Tournament Is Dead at 84

**By NEIL AMDUR**

Clifford Roberts, a co-founder and for 43 years chairman of the Masters golf tournament, was found dead yesterday at the Augusta (Ga.) National Golf Club, apparently a victim of a self-inflicted gunshot wound.

Mr. Roberts, 84 years old, had suffered a stroke earlier this year. His body was discovered by club officials in a creek bed, Ike's Pond, named for the late President Dwight D. Eisenhower, a close friend of Mr. Roberts who often played the Augusta course, home of the Masters, and who built a 16-room house on the grounds.

### Built Club With Bobby Jones

Mr. Roberts, considered a strong taskmaster, built the Masters into one of America's premiere sports attractions on the premise that a green jacket, the winner's prize, meant more than money to the champion. He stepped down as chairman of the tournament last year but continued as president of the club, which he helped build in 1931 with Bobby Jones, the golfer.

The last person reported to have seen Mr. Roberts alive was a guard whom Mr. Roberts, wearing trousers and a trench coat over pajamas, greeted at the club about 2:30 A.M. yesterday.

"Death was caused by a self-inflicted wound," the club said yesterday in a statement. "Mr. Roberts had been in ill health for several months."

The death of "Mr. Cliff," as many followers called him, caused shock and dismay among officials and professional golfers.

"The P.G.A. tour has lost a great friend, but, more than that, the game of golf has lost a real champion," said Deane Beman, commissioner of the Professional Golfers' Association tour and a former player.

### A Tribute From Palmer

Arnold Palmer said Mr. Roberts's death "marks the passing of one of the great eras of modern golf."

"Everybody in golf studied the operation of the Masters and considered it probably the best-run tournament in the world," said Palmer, whose name became synonymous with the growth of the sport 20 years ago. "So many things that are now standard and a normal part of tournament operation, such as on-course leader scoreboards, total roping of courses and other elements of gallery control, have been copied from the Masters, and Cliff Roberts was the man responsible."

If Mr. Roberts "set the tone for tournament golf," as Jack Nicklaus observed in another tribute yesterday, he also be-



*Associated Press*

**Clifford Roberts with President Eisenhower at Augusta (Ga.) National Golf Club in 1959. Visit came during a stay at the Presidential retreat there.**

came identified with his ironclad decisions.

"He was one of the last of the great autocrats," one close acquaintance noted, referring to the total control that Mr. Roberts assumed in the administration of the annual spring event that became one of the four titles in golfing's Grand Slam.

Mr. Roberts ousted Frank Stranahan, an amateur, from the 1948 tournament after his run-in with the head greenskeeper. The chairman also had sufficient muscle to demand that television announcers refrain from mentioning any prize money associated with the tournament on network telecasts, because "prestige matters more than money."

Mr. Roberts also survived intense criticism over the failure of any black golfers to receive Masters invitations until Lee Elder qualified in 1974 and played the following year.

Mr. Roberts was born in 1893 at Morning Sun, Iowa, and spent his youth on a ranch outside San Diego. He lived most of his adult years in New York as an investment banker, who once controlled the investments of President Eisenhower and became a frequent golfing companion on weekends.

Mr. Roberts first met Bobby Jones, golf's only Grand Slam champion, during the late 1920's. They settled on Augusta as the 365-acre site of the Masters because of its ideal climate for golf and the floral surroundings provided by a onetime plantation and nursery owned by a Belgian baron.

The first Masters, in 1934, was by invitation, a process that was to continue even after Mr. Roberts acknowledged privately years later that "the people down in Augusta" had warned him about the implications of black golfers' playing the tournament.

And if the golf circuit changed dramatically with the influx of dollars and television, "Masters week" remained a leisurely spring stroll in the country.

Mr. Roberts, who played golf regularly until his stroke, tried to play down his role in the success of the tournament.

"I don't take any credit for the success of the tournament," he once said, "because I think another financial man who could have afforded to do it had he happened to be in the same partnership role I was would have done the same thing."

"He knew what he wanted, and he demanded perfection," one friend said. "He made the Masters something special. It was his attitude."

A typical example of Mr. Roberts's rules of order came last year when he announced his retirement as tournament chairman. Although conceding that William H. Lane, a Houston food magnate, would succeed him, Mr. Roberts refused to let his successor speak at any news conferences until the end of the tournament.

"I can't think of anyone in life who comes close to Cliff," said Frank Chirkinian, a network television producer, who worked his 18th Masters last spring. "He was a very special man."

Mr. Roberts is survived by his wife, Betty. They had no children.

No funeral arrangements have been made. Club officials said private services would be held in Augusta.

The New York Times
Published: September 30, 1977
Copyright © The New York Times