UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:  NEURONTIN MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC., 04 CV 10739 (PBS)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## OBJECTIONS TO ROSENTHAL AND HARTMAN EXHIBITS

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this bench memorandum in support of their objections to exhibits Plaintiffs propose to use and/or admit in connection with the testimony of Prof. Meredith Rosenthal and Dr. Raymond Hartman.

Pfizer preserves all of its objections pursuant to Federal Rules of Evidence ("FRE") 401, 402, 403, 702, 703 and *Daubert* to Prof. Rosenthal's and Dr. Hartman's methodology, opinions and testimony, as set forth in Pfizer's prior motions to exclude their testimony.  Pfizer's objections extend to any graphic representation of Prof. Rosenthal's and Dr. Hartman's analysis and opinions.  Pfizer's objections include, without limitation, the fact that no foundation has been laid for extrapolating national data to Kaiser.  Pfizer also asserts the following additional objections.

## ARGUMENT

**I.     Exhibits Containing Improper References to "Fraud"**

Pursuant to FRE 401, 402 and 403, Pfizer objects to the admission or demonstrative use of all exhibits that use the terms "fraud," "subject to fraud," or "fraudulent."  This objection

extends to Exhibits 405K, 406, 408A, 408AA, 408F, 408G, Demonstrative 6.1, and Demonstrative 6.2. These references are wholly improper for a number of reasons.

First, they present a legal conclusion, which is not the province of expert testimony or related exhibits. It is axiomatic that experts may not offer opinions on issues of law. *See, e.g.*, *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) ("It is black-letter law that '[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.'" (alteration in original) (citations omitted)). Indeed, this Court previously ruled that Plaintiffs' experts would not be allowed to testify that Defendants acted fraudulently. (Hr'g Tr. 1/28/10 at 65:22.) Likewise, "[expert testimony] should not be received if it is based on 'inadequately explored legal criteria'" because of the risk of "'conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury.'" *Andrews v. Metro North Commuter Railroad*, 882 F.2d 705, 709 (2d Cir. 1989) (citations omitted). Plaintiffs' sporadic footnotes to the effect that "subject to the fraud" should be regarded as a "term of art" would only compound the prejudice by conferring an "aura of reliability" on what is merely Plaintiffs' lawyers' conclusory assertion. *United States v. Fosher*, 590 F.2d 381, 382 (1st Cir. 1979). There is no evidence that "subject to the fraud" is a term of art in Prof. Rosenthal's field of economics. She only uses the term in this case because Plaintiffs' lawyers told her to.

Second, Prof. Rosenthal's model makes no attempt to measure the effect of alleged "fraudulent" promotion. Instead, all Prof. Rosenthal did was correlate promotional spending on detailing and journal advertisements with prescriptions. She admits that she did not account for truthful promotion. As a result, her analysis does not allow any conclusions to be drawn about the impact of allegedly fraudulent promotion. As this Court has previously observed, Prof. Rosenthal "can't tell what's due to the fraud." (9/18/09 Hr'g Tr. at 79:10-12.) Indeed, any such opinion would be inadmissible *ipse dixit*, not connected to any existing data or supported by any reliable methodology. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999).

Third, Prof. Rosenthal was directed by Plaintiffs' counsel to assume the truth of all

2

allegations in the complaint, including "that all detailing during the class period was both off-label and fraudulent." *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 329 (D. Mass. 2009). Accordingly, Prof. Rosenthal's references to "fraud" merely reflect Plaintiffs' counsel's conclusory allegations, which Prof. Rosenthal assumed to be true without conducting any independent analysis. Plaintiffs' counsel's arguments are not evidence, and do not become so merely because they are repeated by an expert. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) ("[E]xperts should not be permitted to 'supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence.'" (citation omitted)).

## II.     Exhibits Containing Improper References to any "Class" or "Subclass"

Pursuant to FRE 401, 402 and 403, Pfizer objects to the admission or demonstrative use of all exhibits that contain references to any "class" or "subclass." This objection extends to Exhibits 405K, 405L, 406, 408A, 408AA, and 408B. Informing the jury that Pfizer was the target of a class action would serve no purpose other than to cause unfair prejudice and to confuse and mislead the jury. *See* Fed. R. Evid. 403. Thus, courts have routinely excluded evidence of other lawsuits from trial. *Compaq Computer Corp. v. Ergonome Inc*., 387 F.3d 403, 408-09 (5th Cir. 2004) (affirming district court conclusion "that Ergonome's true reason for seeking to introduce the evidence was to paint Compaq as a 'bad' company"); *Pizel v. Monaco Coach Corp.*, No. 3:04-CV-286, 2005 U.S. Dist. LEXIS 20079, at *9 (N.D. Ind. Sept. 13, 2005) (excluding evidence of other lawsuits: "This Court agrees with Defendant that referring to Defendant's other lawsuits may be prejudicial.").

This objection applies with particular force to Exhibits 408A and 408AA, which explicitly refer to prescriptions paid for and damages allegedly incurred by parties not before the Court. Indeed, the admission or use of these exhibits would violate the due process concerns expressed by the Supreme Court in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), by inviting the jury to impose liability and award damages based on conduct that purportedly harmed non-

parties.

### III.    Prof. Rosenthal's Expert Report Is Inadmissible

Pursuant to FRE 401, 402, 403, 702, 703, and 802, Pfizer objects to the admission or demonstrative use of Exhibit 406, which is Prof. Rosenthal's expert report in support of the Class Plaintiffs' original motion for class certification.   The reports of Kaiser's experts constitute inadmissible hearsay not falling within any exception.   *See* Fed. R. Evid. 802; *Jiménez v. Hernández*, No. 06-1501, 2009 WL 921289, at *2 (D.P.R. Mar. 31, 2009) ("Expert reports are inadmissible hearsay.") (quoting *Cash Energy, Inc. v. Weiner*, 81 F.3d 147, *text available at* 1996 WL 141787, at *3 n.7 (1st Cir. Mar. 29, 1996) (table mem.)); *West v. Drury Co.*, No. 2:07CV215-P-A, 2009 WL 1405181, at *1 (N.D. Miss. May 19, 2009) (excluding expert report as "hearsay which does not fall into any of the exceptions articulated in F.R.E. 803").   Exhibit 406 is essentially a prior draft of Prof. Rosenthal's current expert report.   Plaintiffs cannot bootstrap Prof. Rosenthal's prior report into evidence by claiming that she relied on it when preparing her current report.

### IV.    Journal Articles Are Inadmissible

Pursuant to FRE 401, 402, 403, 703, and 802, Pfizer objects to Exhibits 1601 and 1756. These are journal articles entitled, respectively, *Promotion of Prescription Drugs to Consumers*, and *Effects of Pharmaceutical Promotion on Adherence to the Treatment Guidelines for Depression*.   These articles are classic hearsay, not subject to any exception.   Even assuming *arguendo* that these articles are "of a type reasonably relied upon by experts in the particular field," such that Prof. Rosenthal could rely on them in forming her opinions, the articles themselves "shall not be disclosed to the jury" unless the Court determines that their probative value substantially outweighs their prejudicial effect – and even then, only to evaluate the expert's opinion, and not as substantive evidence.   Fed. R. Evid. 703; *See also id.*, advisory committee notes ("[T]he underlying information must not be used for substantive purposes.").   Plaintiffs have not made the required showing that the probative value substantially outweighs the prejudicial.

Defendants also object on the grounds that these articles were identified only as reference literature, and not as exhibits.  (*See* Dkt. 2500-20.)

## V.      Exhibits Beyond the Scope of Experts' Reports

Plaintiffs cannot use trial exhibits to improperly supplement their experts' reports. Federal Rule of Civil Procedure 26(a)(2)(B) requires that expert reports contain, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them," "the data or other information considered by the witness in forming them," and "any exhibits that will be used to summarize or support them."  The First Circuit "has held these directives to be mandatory."  *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004).  "'The required sanction in the ordinary case is mandatory preclusion.'"  *Id.* at 358 (brackets omitted, quoting *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998)).

As the Court previously stated, experts cannot present opinions or analyses not set forth in their reports.  (*See* 2/22 Tr. (Court) at 39:17-18 ("If it's not in an expert report, we're not doing it, both sides."); 2/23 Tr. (Court) at 38:13-14 ("Well, no, sustained.  If it's not in a report, it's going to apply to both sides.").)  Thus, the Court sustained Plaintiffs' objection to a defense exhibit that added more recent data to a chart prepared by defense expert Dr. Keeley.  (*See* 2/22 Tr. (Court) at 38:11-39:18.)  Because this rule applies to "both sides," Plaintiffs may not supplement their experts' charts or submit new charts as exhibits.  Several exhibits are objectionable on these grounds.

*First*, Pfizer objects to Exhibits 408C, 408E, and 408F to the extent that they include interest beyond what was included in Dr. Hartman's August 11, 2008, declaration.

*Second*, Pfizer also objects to Demonstrative 5 on the grounds that it is beyond the scope of Prof. Rosenthal's and Dr. Hartman's reports.  This exhibit refers to "Sources of Information About Drugs," and includes references to, *inter alia*, "Conferences, Articles, Label, Letters, and Samples."  Neither Prof. Rosenthal nor Dr. Hartman has any basis to testify regarding these sources of information.  Prof. Rosenthal merely purported to measure the impact of detailing expenditure on off-label prescribing.  She acknowledges that she is "unable to account

5

systematically for [other] influences on prescribing," and thus cannot even opine that the "sources of information" on Demonstrative 5 had any "independent effect on prescribing" generally, let alone on prescribing to Kaiser's insureds in particular.  (8/11/08 Rosenthal Decl. ¶ 53.)  *See also In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 339 (D. Mass. 2009) (Saris, J.).  Moreover, Prof. Rosenthal and Dr. Hartman are not marketing experts, pharmaceutical experts, or medical doctors, and any testimony regarding doctors' "sources of information" is well beyond the scope of their expertise.

*Third*, Pfizer objects to Demonstrative 6.2 as not being a fair representation of Prof. Rosenthal's Attachment G.  Indeed, none of the percentages on this exhibit appear in Attachment G, which Plaintiffs cite as their source.  In preparing this chart, Plaintiffs apparently re-aggregated indications that Prof. Rosenthal attempted to disaggregate pursuant to the Court's instructions.  Pfizer further objects to this chart pursuant to FRE 401 and 403.  The reason this Court directed Plaintiffs to disaggregate between indications is that, even if Plaintiffs could prove liability with respect to one indication, it would not follow that prescriptions for other indications were caused by fraudulent promotion.   (9/18/09 Hearing Tr. 96:20-97:7.) Demonstrative 6.2 seeks to erase the distinction between different indications and treat liability as an undifferentiated issue.  This approach has no probative value and would only serve to confuse and mislead the jury.

## VI.   Dr. Hartman's Uncorrected Damage Calculations

Pursuant to FRE 401, 402 and 403, Pfizer objects to the admission or demonstrative use of Exhibit 408B on the grounds that the uncorrected amounts set forth in that exhibit do not correspond to Dr. Hartman's corrected amounts in Exhibits 408D and 408G.

## VII.   Exhibit 405J

Pursuant to FRE 403, Pfizer objects to Exhibit 405J on the grounds that it is misleading. In each of the charts included in Attachment E to Prof. Rosenthal's report, she has used a different scale on the left or right axes or both so that the two lines are superimposed on each other.  The scale was not driven by Dr. Rosenthal's regression analyses, but was arbitrarily

selected by Dr. Rosenthal.  For example, in both E1 and E5, the scale on the left axis goes from 0 to 900,000.  But the scale on the right axes is dramatically different – going from 0 to *45,000* on Attachment E1 and 0 to *350,000* on Attachment E5.  (*See* Exhibit A.)  By adjusting the axes in this way, Dr. Rosenthal is able to superimpose the two lines on top of each other, creating a misleading impression of correlation through nothing more than a trick of the eye.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Pfizer respectfully requests that the Court sustain its objections to exhibits Plaintiffs propose to use and/or admit in connection with the testimony of Prof. Meredith Rosenthal and Dr. Raymond Hartman.

Dated: March 5, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:      /s/ Mark S. Cheffo
         Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Email:  Mark.Cheffo@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:      /s/ Raoul D. Kennedy
         Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel:  (415) 984-6400
Email:  Raoul.Kennedy@skadden.com

<div style="border: 1px solid black;">

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 5, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo

</div>

WHEELER TRIGG O'DONNELL LLP

By:     /s/ James E. Hooper
        James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel:  (303) 244-1800
Email:  hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*