UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------------x
                                          :        MDL Docket No. 1629
In re:   NEURONTIN MARKETING,             :
         SALES PRACTICES AND              :        Master File No. 04-10981
         PRODUCTS LIABILITY LITIGATION    :
                                          :        Judge Patti B. Saris
------------------------------------------------------------x
                                          :        Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                 :
                                          :
Shearer  v. Pfizer Inc., 1:07-cv-11428-PBS :
                                          :
------------------------------------------------------------x
```

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF FOREIGN LABELS AND REGULATORY ACTIONS**

## INTRODUCTION

Plaintiff Linda Shearer, as Administrator of the Estate of Hartley Shearer, Deceased, by and through her attorneys, respectfully submits that Defendants' Motion *in Limine* to preclude Plaintiff from presenting evidence of foreign prescription drug labels and foreign regulatory actions with respect to Neurontin must be denied.  By electronic order on July 24, 2009, Judge Patti B. Saris denied, without prejudice, an essentially identical motion *in limine* (ECF Doc. # 1867) filed by Defendants in the case of *Bulger v. Pfizer Inc.*, 1:07-cv-11426-PBS.

Plaintiff will not introduce the foreign labels and regulatory actions for any purpose that is inapposite to federal or state law.  Such evidence is highly relevant, in accordance with Fed. R. Evid. 401, and is admissible under Fed. R. Evid. 402, as it is being offered on the issues of Defendants' notice and knowledge regarding risks of suicidality and depression associated with Neurontin.  As such, the evidence is not hearsay (inadmissible or otherwise), because Plaintiff is not introducing the evidence for the truth of the matters contained therein.  Further, the probative

value of such evidence substantially outweighs the risk of confusing, misleading or inflaming the jury, or wasting judicial resources. Finally, the introduction of the foreign labels and regulatory actions, while clearly harmful to Defendants' interest, would not be unfairly prejudicial, as evaluated under Fed. R. Evid. 403, thus rendering Defendants' argument without merit.

Illustrative of Plaintiff's evidence regarding foreign regulatory actions and labels is an email from the Canadian regulatory authority, Health Canada. Health Canada communicated to Defendants that a suicide attempt via overdose was considered probably related to Neurontin.[1] *See* E-mail from Maribeth Lazzaro to Tina Carriero, annexed as Exhibit A to the Declaration of Andrew G. Finkelstein, Esq., submitted herewith. Another example is Defendants' labeling in China, which reflects Neurontin's mechanism of action and its capacity to reduce serotonin in the brain.[2] Finkelstein Decl., Ex. B. Evidence in both examples is probative of Defendants' knowledge regarding general causation, and their actions (or inaction) in warning Plaintiff's decedent and his prescribers herein.

## LEGAL ARGUMENT

A party moving *in limine* to exclude evidence has the burden to establish that "the evidence sought to be excluded is clearly inadmissible for any purpose." *Plair v. E. J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994); *accord Gage v. Metro. Water Reclamation Dist.*, 365 F. Supp. 2d 919, 926 (N.D. Ill. 2005) (evidence may be excluded through a motion *in limine* only if the evidence is "inadmissible on all potential grounds"). "If there is any question on the issue, rather than barring the evidence before trial, the Court should reserve ruling on questions

---

[1] Upon review of Defendants' safety update reports for 2004-2005, Maribeth Lazzaro, Ph.D., of Health Canada, stated the following: "One suicide attempt was found to have positive dechallenge/rechallenge, indicating that this event was related to gabapentin." Finkelstein Decl., Ex. A, at Pfizer_LKnapp_0062000.

[2] As of at least February 2002, the Neurontin labeling in China set forth the following: "The release of various monamine neurotransmitters is being reduced." Finkelstein Decl., Ex. B, at Pfizer_InRe_0001259.

of admissibility." *Boim v. Quranic Literacy Inst.,* 349 F. Supp. 2d 1097, 1102 (N.D. Ill. 2004); *accord Starling Union Pac. R.R. Co.,* 203 F.R.D. 468, 482 (D. Kan. 2001) ("it is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there").

A motion *in limine* is addressed to the sound discretion of the trial court, and is designed to give guidance about probable evidentiary rulings and thereby aid the parties in formulating trial strategy. *Jones v. Stotts,* 59 F.3d 143, 146 (10th Cir. 1995). As such, the district court has broad discretion to decide whether evidence of knowledge of foreign design regulations is unduly prejudicial under Fed. R. Evid. 403. *Nettles v. Electrolux Motor AB,* 784 F.2d 1574, 1580 (11th Cir. 1986).

Plaintiff does not dispute that this is an action brought by a United States citizen against a manufacturer of a pharmaceutical drug that is regulated by the United States federal government. The introduction of foreign Neurontin labels and foreign regulatory action taken regarding Neurontin would in no way necessitate a discussion of the regulatory standards of the country from where each label originates. In fact, U.S. regulations require Defendants to report to the FDA pertinent information related to foreign regulatory affairs. Specifically, 21 C.F.R. § 314.80 requires Defendants to review all adverse event information, 21 C.F.R. § 314.80(b), and report such information to the FDA. 21 C.F.R. § 314.80(c). Defendants are also required to provide the Food and Drug Administration with information concerning foreign marketing experience and labeling changes. 21 C.F.R. §§ 312.33(f), 314.80(c)(2)(ii)(c). Consequently, to the extent that Defendants knew or should have known of risks associated with Neurontin from foreign regulatory affairs, they were obligated to inform the FDA. Furthermore, because the FDA requires such information to be provided and also requires safety information to be considered,

whether foreign or domestic, is indicative of the relevance of this material information to Plaintiff's claims.  As such, the evidence is probative on whether or not Defendants met such obligations here in the United States.

Foreign labels and regulatory action, if any, may be introduced for the purpose of demonstrating that Defendants had notice, a key element in failure to warn and fraudulent concealment claims, and knowledge of the serious hazards reasonably associated with Neurontin, and of Defendants' reaction to that notice and knowledge.  *See, e.g., In re Seroquel Prods. Liab. Litig.,* 601 F. Supp. 2d 1313 , 1316 (M.D. Fla. 2009).  The foreign labels and regulatory actions are probative of Defendants' notice and knowledge of information that may lead a reasonable juror to believe that Defendants misrepresented or omitted that information or failed to meet the standard of care relative to warning about the drug's risks.  *Id.*  Since Defendants have failed to demonstrate that foreign labels and regulatory actions are inadmissible on any grounds, their motion to exclude such evidence must fail.

Defendants are also likely to introduce evidence at trial that the FDA was aware of all information associated with the safety of Neurontin.  As such, the FDA could have taken actions to require Defendant to change its label, but chose not to do so.  This premise by Defendants is factually untrue.  Aside from certain adverse events known as 15-day events, other foreign adverse events do not need to be reported to the FDA.  The only events that are considered 15-days events are those which are *both* serious and unexpected.  21 C.F.R. § 314.80(a).  The company has always maintained that "suicide attempt" was a labeled event.  Therefore, no foreign suicide attempt reports would be required to be reported to the FDA.  21 C.F.R. § 314.80(c)(2)(iii).  Yet those very same reports must be considered in conducting Defendants' pharmacovigilance activities according to 21 C.F.R. § 314.80(b):

(b) *Review of adverse drug experiences.*

Each applicant having an approved application under § 314.50 or, in the case of a 505(b)(2) application, an effective approved application, shall promptly review all adverse drug experience information obtained or otherwise received by the applicant from any source, **foreign** or domestic, including information derived from commercial marketing experience, postmarketing clinical investigations, postmarketing epidemiological / surveillance studies, reports in the scientific literature, and unpublished scientific papers. Applicants are not required to resubmit to FDA adverse drug experience reports forwarded to the applicant by FDA; however, applicants must submit all followup information on such reports to FDA. Any person subject to the reporting requirements under paragraph (c) of this section shall also develop written procedures for the surveillance, receipt, evaluation, and reporting of postmarketing adverse drug experiences to FDA. [Emphasis added.]

Since the FDA does not have all of the adverse event reports but all adverse event information must be reviewed, there is no possible way that the FDA could replicate analysis that could have been performed by Defendants. Therefore, information from outside the U.S. is relevant because (1) the FDA does not get all of the adverse event reports; and (2) the FDA requires that the information not sent be reviewed by the company in performing its regulatory duties.

To be admissible, evidence must be relevant. Fed. R. Evid. 401; *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248, 252 (1st Cir. 1998). Relevant evidence is defined as evidence which may tend to prove or disprove a material fact that is of consequence to the determination of the action.. Fed. R. Evid. 401. Further, the Federal Rules of Evidence provide that "relevant evidence <u>may</u> be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403 (emphasis added).

The Food, Drug and Cosmetic Act expressly requires a drug manufacturer to immediately inform the public of newly discovered dangers. *See* 44 Fed. Reg. 37,447 (1979). Plaintiff

alleges that the Defendants had an obligation to warn about the risks of its product. Thus, what Defendants knew, and when it knew it, are essential elements of Plaintiff's proof.

The district courts in several jurisdictions have permitted the admission of foreign labels, foreign designs and foreign regulatory action for the purposes of notice, knowledge and feasibility. In *Tobin v. SmithKline Beecham Pharms.*, 164 F. Supp. 2d 1278, 1289 (D. Wy. 2001), decedent, who was taking Paxil, killed his wife, daughter, and granddaughter before killing himself. *Id.* at 1280. The decedents' estates brought a products liability action against the manufacturer of Paxil, alleging negligent failure to warn, negligent misrepresentation and negligent failure to test. Subsequent to a sizable plaintiffs' verdict, defendant filed a motion for a new trial, arguing, *inter alia*, that the court erred in admitting a German label for Paxil, an issue previously filed by the defendant's motion *in limine* and denied by the court. *Id.* at 1289.

In reiterating its prior ruling, the *Tobin* court found that evidence that Germany had required all antidepressants to include suicide specific warnings since the early 1990's was extremely relevant. The court reasoned that the label was highly relevant and that it should be admissible and that it was not hearsay since it was not offered to prove the truth of the matter asserted. Finally, the court specifically found that the admission of the labels did not unduly prejudice the defendant and that the defendants was "more than entitled to offer testimony regarding the differences in medical customs and practices between the United States and Germany." *Id.* at 1289-90.

In *Sherry v. Massey-Ferguson, Inc.*, No. 1:96-cv-76, 1997 U.S. Dist. LEXIS 10752 (W.D. Mich. June 5, 1997), the court held that while evidence of European legal standards and requirements may unnecessarily confuse the jury, evidence of foreign tractor design was relevant to show both feasibility and defendant's knowledge of such alternate designs. *Id.* at *2. Again,

in *Nettles v. Electrolux Motor AB*, the trial court allowed plaintiff to present evidence to the jury that Swedish regulations required defendant to manufacture its chain saw with a safety break, a feature not included in the chain saw defendant sold in the United States. The court found that the evidence was relevant and admissible to show defendant's first-hand knowledge that chain breaks were a safety benefit. 784 F.2d at 1580.

Several state courts have also reached the same conclusion. In *Cantrell v. Hennessy Indus., Inc.,* 829 S.W.2d 875, 877 (Tex. App. 1992), the Texas Court of Appeals concluded that design information from foreign jurisdictions was relevant to plaintiff's design defect case. The court determined that whether a safer design suitable for one machine is adaptable to another is a question of feasibility to be decided by the trier of fact. "Evidence of the actual use of, or availability of practical, safer alternatives is therefore relevant." *Id.* Similarly, in *Tews v. Husqvarna, Inc.* 390 N.W.2d 363, 367 (Minn. App. 1986), the Minnesota Court of Appeals upheld the trial court's ruling that testimony regarding the design of chain breaks in foreign jurisdictions was relevant and admissible to plaintiff's design defect claim. The court excluded the legal standards of the other countries but held that the feasibility of the foreign design was an important issue for the jury to decide. *Id.* And in *Axen v. American Home Prods., Inc.*, 974 P.2d 224, 242 (Or. App. 1999), the trial court admitted evidence of Canadian labeling for defendant's drug, Cordarone. The court noted that the evidence was relevant to show defendant's knowledge that its Canadian affiliate had been required to use clearer language regarding the dangers of vision loss associated with the drug. *Id.*

Here, the foreign labels and regulatory actions that Plaintiff seeks to introduce are similar to those in the caselaw cited above. Plaintiff will not compare the U.S. regulatory scheme, as promulgated by the FDA, with the regulatory scheme of any other country. Plaintiff will utilize

the foreign labels and regulatory action, with respect to the suicidal dangers associated with the ingestion of Neurontin, to prove that Defendants had notice of this risk. The introduction of the foreign labels will be used to demonstrate that the suicidal risk associated with Neurontin was known and available to Defendants and could have been communicated to Plaintiff's decedent but for Defendants' fraudulent concealment and failure to warn. Additionally, the evidence shows the feasibility of Defendants using similar language to warn physicians and patients in the United States about the suicidal risk posed by Neurontin.

None of the cases cited by Defendants hold that such evidence is irrelevant as a matter of law. They merely state that the trial court's decision not to admit the evidence in a particular case was not an abuse of discretion. In *Harrison v. Wyeth Labs. Div. of Am. Home Prods. Corp.,* 510 F. Supp. 1 (E.D. Pa. 1980), the court dismissed foreign plaintiffs' claim against Wyeth based on the *forum non conveniens* doctrine. The court acknowledged it would be unfair to subject the plaintiff to a higher duty of care in the United States (to exceed government standards) when the defendant may be subject to a lower standard in Great Britain. *Id.* at 5. Again, in *Doe v. Hyland Therapeutic Div.,* 807 F. Supp. 1117 (S.D.N.Y. 1992), since the plaintiff's injuries occurred in Ireland, the court granted defendants' motion to dismiss based on the *forum non conveniens* doctrine. The situation in this case is different.

Here in the United States, FDA regulations are minimum standards, and drug companies have an obligation to meet and exceed those standards. *Hill v. Searle Labs.,* 884 F.2d 1064, 1068 (8th Cir. 1989). Moreover, as explained *supra*, FDA requires that manufacturers inform FDA of significant regulatory events outside the United States and that the company use all adverse event information from any source, foreign or domestic. Foreign labels and regulatory action are convincing evidence that Defendants could have warned doctors and patients in this

country as was done in other parts of the world, and in doing so, would have met its legal duty of care. This evidence is highly probative of Plaintiff's negligence and failure to warn claims and would be easily understood by jurors.

Moreover, Defendants seek to mislead the court by completely misstating the premises of two cases. On page 4 of Defendants' Memorandum (ECF Doc. # 2543), in citing to *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1201 (11th Cir. 2002), and *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005), Defendants refer to the standards that a foreign regulatory agency may take, insinuating that foreign regulations may be mandated upon a lesser showing of public harm and that the foreign jurisdictions may be more cautious than the U.S. when evaluating potential risks associated with a drug. But the above noted cases were discussing the regulatory actions of the FDA. Apparently, Defendants are desperate to have this evidence excluded, to the point of blatantly misrepresenting cases to the Court to achieve its goal.

Notwithstanding Defendants' obvious guile, the remaining cases cited by Defendants are inapplicable because Plaintiff is not attempting to introduce the regulatory standards of foreign countries. The introduction of these foreign labels and regulatory action to establish notice and knowledge will not require the jury to analyze foreign regulatory standards. Contrary to Defendants' assertion that the foreign labels will infer causation by a jury, a limiting instruction can remedy said issue. Since the foreign labels and regulatory actions are relevant, and their probative value substantially outweighs the risk of confusing, misleading or inflaming the jury, or wasting judicial resources, said evidence is admissible and should not be excluded.

## CONCLUSION

For the foregoing reasons, Defendants' Motion *in Limine* should be denied.

Dated:  March 8, 2010

Respectfully submitted,

By:   **/s/ W. Mark Lanier**
W. Mark Lanier, Esquire
THE LANIER LAW FIRM, P.L.L.C.
126 East 56th Street, 6th Floor
New York, NY  10022

By:   **/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein, Esquire
Finkelstein & Partners, LLP
1279 Route 300, P.O. Box 1111
Newburgh, NY  12551

*Attorneys for Plaintiff Linda B. Shearer*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on March 8, 2010.

**/s/ Andrew G. Finkelstein**
Andrew G. Finkelstein