UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------x
                            :
In re:  NEURONTIN MARKETING,                      :
           SALES PRACTICES AND             :
           PRODUCTS LIABILITY LITIGATION  :
                            :
-------------------------------------------------------------x
                            :
THIS DOCUMENT RELATES TO:        :
                            :
*Shearer v. Pfizer Inc.*, 1:07-cv-11428-PBS  :
                            :
-------------------------------------------------------------x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF DAVID FRANKLIN AND EVIDENCE OF THE *FRANKLIN* LITIGATION, AND OTHER CLAIMS OR ACTIONS

Plaintiff Linda B. Shearer, as Administrator of the Estate of Hartley Shearer, Deceased,

by and through his attorneys, respectfully requests that this Court deny in its entirety Defendants'

Motion *in Limine* to exclude testimony of David Franklin and evidence of the Franklin Litigation

and other claims or actions involving Neurontin, on the grounds that: (1) Defendants admit that

David Franklin's testimony relates to the marketing of Neurontin (ECF Doc. # 2561) ,and on

June 5, 2009, this Court denied Defendants' motion, *inter alia,* to exclude the marketing

documents, ECF Doc. # 1816, and by electronic order on July 24, 2009, Judge Patti B. Saris

denied Defendants' motion *in limine* to exclude the marketing documents in *Bulger v. Pfizer*

*Inc.*, 1:07-cv-11426-PBS, and Defendants' motion *in limine* in this case is nothing more than a

further attempt by Defendants to obtain yet another bite of the apple; (2) pursuant to Fed. R.

Evid. 401, such information is relevant to various salient issues in this litigation, including

Defendants' negligence, failure-to-warn, and suppression, and recklessness in not testing the

safety of Neurontin in off-label populations to whom the company had notice were using

Neurontin; (3) Plaintiff does not intend to use the subject material as evidence of prior bad acts (which is not an issue since these are not **prior** bad acts but Defendants' acts that form the facts and circumstances of this very litigation), but to demonstrate Defendants' negligence in knowingly and recklessly promoting Neurontin to off-label populations without performing the adequate pharmacovigilance to ascertain whether Neurontin was safe for such uses; and (4) the probative value of the evidence at issue greatly outweighs any potential unfair prejudice to Defendants.

## INTRODUCTION

This Court is well acquainted with Dr. David Franklin. This Court presided over his *qui tam* action, which exposed Defendants' off-label marketing of Neurontin, and it also found the testimony of Dr. Franklin to be sufficiently credible to enter restraining orders against the Defendants in the *Bulger* case on July 29, 2009. There can be no doubt that it is because Defendants are aware that Dr. Franklin is a credible witness, that Defendants have moved *in limine* to preclude him from taking the stand in this action. Dr. Franklin will appear on Plaintiff, Linda Shearer's witness list and Plaintiff intends to call him to the stand at the upcoming trial.

Defendants' grounds for their *in limine* motion are essentially the same arguments previously made to preclude Dr. Franklin's testimony in Defendants Motion *in Limine* To Exclude Evidence of Marketing or Advertising Materials and Conduct, David Franklin and the Franklin Litigation, and Other Claims or Actions (ECF Doc. # 1912), which this Court denied by electronic order on July 24, 2009, in the *Bulger* trial.

## ARGUMENT

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

it would be without the evidence." Moore's Fed. Rules Pamphlet 2009, Fed. R. Evid. 401. Defendants' national marketing documents relating to off-label marketing are admissible at trial to the extent they are relevant to Plaintiff's negligence, failure-to-warn, and negligent pharmacovigilance claims against Defendants. *See* ECF Doc. # 1790 at 33.

In response to Defendants' assertions that Dr. Franklin's testimony is inadmissible because it relates to the marketing of Neurontin (ECF Doc. # 2561), Plaintiff refers this Court to the arguments asserted in her opposition to Defendants' motion in *limine* to exclude marketing evidence as if fully incorporated herein. Plaintiff reiterates two salient points regarding that briefing, first, that Judge Saris, in her May 26, 2009 Order, succinctly described the heightened duty to warn that a pharmaceutical manufacturer bears when it engages in off-label marketing of a drug:

> Based on the reasoning of this caselaw, the Court concludes that a manufacturer of a pharmaceutical has a duty to disclose to physicians and patients material facts about the risks of the drug, <u>particularly when it is engaged in off-label marketing</u> for uses not approved by the FDA, if it knows that the plaintiff and/or his prescriber does not know or cannot reasonably discover the undisclosed facts.

ECF Doc. # 1790 at 25 (emphasis added).

Second, the manufacturer's <u>knowledge</u> of off-label use with its drug is inextricably intertwined with a manufacturer's duty to disclose material facts about risks with the drug. While off-label prescribing by physicians is not itself improper, a manufacturer with knowledge of both extensive off-label use and material facts about risks inherent with taking the drug (e.g., depression and suicide), has a duty to take action. The testimony of Dr. Franklin and the documents from the *Franklin* litigation demonstrate that Defendants were on notice both of the risks of depression, adverse mood and behavior changes and the increased risk for suicide and of the substantial off-label use of Neurontin and failed to take the appropriate actions to warn

3

Case 1:04-cv-10981-PBS   Document 2619   Filed 03/08/10   Page 4 of 19

individuals like Plaintiff's decedent, Hartley Shearer and his prescribing physicians of these risks. Dr. Franklin's testimony and evidence from the *Franklin* litigation regarding Defendants' national campaign to market Neurontin off-label for unapproved uses are probative of Defendants' negligence and evidence of Defendants' state of mind and that their off-label promotion and fraudulent concealment of the risks from ingestion of Neurontin was intentional conduct. Moreover, Dr. Franklin's testimony and evidence from the *Franklin* litigation demonstrate Defendants were malicious, willful, wanton or reckless when they knowingly disregarded the safety of Hartley Shearer, an off-label user, to risks, about which Defendants were aware but did not warn.

### POINT I

### EVIDENCE FROM THE FRANKLIN LITIGATION IS RELEVANT TO DEFENDANTS' DUTY OF CARE AND SERVE TO PROVIDE NOTICE THAT DEFENDANTS WERE WELL AWARE THAT NEURONTIN WAS BEING UTILIZED FOR OFF-LABEL POPULATIONS

To be admissible, evidence must be relevant. Fed. R. Evid. 401; *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248,252 (1st Cir. 1998). Relevant evidence is defined as evidence which may tend to prove or disprove a material fact that is of consequence to the determination of the action.. Fed. R. Evid. 401. Further, the Federal Rules of Evidence provide that "relevant evidence **may** be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403 (emphasis added). Plaintiff is not seeking that the marketing documents be admitted under Fed. R. Evid. 404(b), to prove conformity with **prior** bad acts, but instead for a wholly permissible purpose: to prove

---

[12] Defendant Warner-Lambert should be precluded from contending that they operated in compliance with the FDA's marketing rules because Defendants pled guilty to felony violations of distributing a drug for uses unapproved by the FDA and for distributing misbranded drugs.

4

Defendants' breach of duty, negligence and their intentional disregard for the safety of off-label users of Neurontin. *See Flebotte v. Dow Jones & Co. Inc.,* Civil Action No. 97-30117-FHF, 2001 U.S. Dist. LEXIS 1525, *5 (D. Mass. Jan. 24, 2001). The court remarked that the admission of any relevant evidence "carries a danger of prejudice." *Id.* at *4. The First Circuit has held that "the admitted evidence must not only be prejudicial, but be unfairly prejudicial, and not only outweigh relevance but substantially outweigh relevance." *United States v. Rivera,* 83 F.3d 542, 545 (1st Cir, 1996). The First Circuit also stated that "where the reviewing court finds the balancing close, Rule 403 tilts the balance in favor of admission." *Id.*

Defendants argue that because Dr. Franklin was only employed by Parke-Davis for four months in 1996 as a medical liaison, Dr. Franklin's testimony could not be relevant to Hartley Shearer's being harmed by unlawful practices that were witnessed by Dr. Franklin. Defendants would like it to appear that the illegal conduct uncovered in the *Franklin* litigation was merely the unauthorized aberrant conduct of a few individuals. The stark reality is that Defendants paid a $430 million criminal fine or pled to a criminal offense and the company was penalized because Dr. Franklin blew the whistle on a national campaign of illegal marketing and promotion of Neurontin off-label for unapproved uses. To the extent Dr. Franklin has knowledge of a national campaign and Plaintiff's decedent Hartley Shearer is a victim of that same illegal national marketing campaign, Dr. Franklin's testimony is admissible on several grounds including to prove negligence.

Similar to the national marketing documents, David Franklin's testimony and evidence from the *Franklin* litigation will be utilized by Plaintiff to demonstrate that Defendants breached their duty of care and notice. As detailed in Plaintiff's opposition to Defendants motion *in limine* to exclude the marketing documents, the manufacturer's <u>knowledge</u> of off-label use with its drug

is inextricably intertwined with a manufacturer's duty to disclose material facts about risks with the drug. Defendants were on notice both of the risks of depression and of the substantial off-label use of Neurontin. Dr. Franklin's testimony and evidence from the *Franklin* litigation are probative of Defendants' negligence.

Dr. Franklin's testimony will demonstrate the extent of Defendants knowledge and state of mind in regard to their off-label promotion of Neurontin for unapproved uses. Dr. Franklin was trained by Parke-Davis to engage in the illegal promotion of Neurontin for unapproved uses at training courses that Parke-Davis medical representatives and sales representatives were required to attend. ECF Doc. # 2562-4. Dr. Franklin received his training as a Medical Liaison at a Parke-Davis facility in Ann Arbor, Michigan. *Id.* On April 16, 1996, Dr. Franklin attended a Parke-Davis national training seminar in Ann Arbor which was being recorded by video-tape. *Id.* at 8. After Parke-Davis supervisors and an attorney laid out the FDA rules regarding, *inter alia,* the prohibition of off-label promotion, the supervisors intentionally turned off the video camera and proceeded to advise how medical liaisons could avoid the FDA rules. *Id.* at 8, 9. During the un-taped session, attendees were instructed that they were expected to convince physicians to prescribe Defendants' pharmaceuticals for their patients: "[W]e expect you to do your job out there and stay focused on sales, don't worry about this stuff just use common sense," and in particular, medical liaisons were instructed "above all, don't put anything in writing." *Id.*

During formal national liaison training, Dr. Franklin was also schooled in how to avoid putting anything on paper that would evidence improper off-label presentations in promotional circumstances. *Id.* at pp. 30-31. In addition to national medical liaison training, Dr. Franklin received training from Parke-Davis in techniques for sales from physicians. *Id.* at p. 17. Dr.

Franklin was instructed by Parke-Davis that "'good' results should be highly touted but that 'bad' results should be hidden from view," and he was provided with publications with good results in small samplings of patients to "tout" off-label unapproved uses. *Id.* at p. 18. Clearly, Dr. Franklin is more than qualified to testify to the fact that Defendants' conduct was indeed knowing and intentional conduct. On this issue, Plaintiff is not utilizing Dr. Franklin's testimony or the *Franklin* litigation documents to demonstrate fraud, but is using this evidence to demonstrate Defendants' intentional breach of their common law and statutory duty of care to Hartley Shearer. Dr. Franklin's testimony is probative as to Plaintiff's claims that Defendants were aware that Neurontin was being promoted and used by physicians for off-label unapproved uses but that they failed to monitor or provide adequate pharmacovigilance for the unapproved uses and failed in their duty to warn of the risks of Neurontin to physicians of those patients, like Hartley Shearer, who ingested the drug for the off-label unapproved use of pain.

Moreover, Plaintiff is not using this evidence as some previous "bad act". The evidence that Defendants are attempting to exclude concerns Neurontin, not another drug, the exact drug which is complained about in this case by Plaintiff — that Defendants were intentionally illegally promoting this drug off-label for the unapproved use of pain and thus had notice of this drug was being prescribed and ingested off-label — and Defendants had a heightened duty to warn of the risks of ingesting Neurontin. The probative value of this evidence is crucial to Plaintiff's claim and clearly does not pose any unfair prejudice to Defendants.

## POINT II

**DR. FRANKLIN'S TESTIMONY AND EVIDENCE FROM THE *FRANKLIN* LITIGATION IS RELEVANT TO DEFENDANTS' FRAUDULENT CONCEALMENT AND SUPPRESSION OF THE RISKS OF ADVERSE MOOD AND BEHAVIOR CHANGES AND INCREASED RISK FOR SUICIDALITY FROM THE INGESTION OF NEURONTIN FROM HARTLEY SHEARER'S PRESCRIBING PHYSICIAN**

7

This Court has previously ruled that Plaintiffs in the Track One cases, such Linda Shearer, in their amended complaints had sufficiently "allege[d] the elements necessary to establish a claim of fraudulent concealment, "namely that defendants intentionally withheld material information about the side effects of Neurontin from both consumers and their prescribing physicians, with the intent to deceive." *In Re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.,* 618 F. Supp. 2d 96, 114 (D. Mass. 2009).   Since that May 2009 decision, Plaintiff had the opportunity on November 13, 2009, to depose another of Hartley Shearer's treating physicians, Dr. Edgar Hynes.   Plaintiff is alleging in this action that Defendants intentionally and fraudulently concealed or suppressed information concerning the risks of adverse mood and behavior changes and the increased risk for suicidality from the ingestion of Neurontin from Mr. Shearer's prescribing physician Dr. Hynes.   Dr. Hynes prescribed Neurontin to Mr. Shearer for neuropathic pain issues.   Excerpts from the transcript of the deposition of Dr. Hynes is annexed hereto as Ex. A at 120:21-25; 121:1-2.   When Dr. Hynes was visited by Parke-Davis Warner-Lambert sales representatives in 1998-1999, they discussed the use of Neurontin for the treatment of neuropathic pain.   Ex. A, at 121:11-19.   The sales representatives did not ever disclose to Dr. Hynes any information whatsoever about whether Neurontin could increase the risk of suicidal behavior in people taking Neurontin.   Ex. A at 185:10-12.   Dr. Franklin's testimony and evidence from the *Franklin* litigation regarding Defendants' elaborate and multi-faceted strategy to promote Neurontin through sales representative contact with physicians, sales representative training, etc., is relevant to Plaintiff's claims of fraudulent concealment or suppression of the risks of increased suicide for Neurontin.

Moreover, Dr. Hynes' decision to prescribed Neurontin to treat neuropathic pain — an unapproved use — was based upon the information received from attending physicians during

his training.  Ex. A at 39:14-40:1.  Dr. Hynes testified that Dr. Ross was his supervising physician during the time that he prescribed Neurontin to Hartley Shearer.  Dr. Hynes relied upon Dr. Ross for prescribing information while he was a fellow, and at some point the two of them discussed Neurontin; Dr. Ross did not disclose that Neurontin could cause suicidal behavior in patients.  Ex. A at 125:19-126:21.  Dr. Hynes was aware the Dr. Ross was paid by Warner-Lambert or Parke Davis to lecture and attended a lecture of Dr. Ross where he advocated prescribing Neurontin for the off-label use of neuropathic pain, the condition for which it was prescribed for Hartley Shearer.  Ex. A at 127:7-128:6.  Prior to prescribing Neurontin to Hartley Shearer, Dr. Hynes attended approximately six lectures of Dr. Ross regarding Neurontin where Dr. Ross failed to disclose the any risk of suicidal behavior with the ingestion of Neurontin.  Ex. A at 128:7-19.  Dr. Hynes admitted that his prescribing practices for Neurontin had to be influenced by the lectures given by Dr. Ross regarding Neurontin and provided the basis for Dr. Hynes prescribing Neurontin to Hartley Shearer.  Ex. A at 129:15-130:17.

Dr. Franklin disclosed that false information regarding clinical trials was routinely given to physicians and negative information about the drug's effectiveness for bipolar disorder and neuropathic pain was suppressed.  ECF Doc. # 2562-4 at pp. 21-28.  In contrasting the requirements for failure to warn claims from fraudulent concealment claims, this Court stated that "claims based on a fraudulent concealment or misrepresentation require scienter." *In Re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d at 113.  As the Court recognized in the *Bulger* case, this evidence is relevant to, and admissible on, the issue of corporate intent — it provides the requisite evidence of Defendants' scienter in this case.  Clearly Dr. Franklin may provide testimony pertaining to the training that sales representative received

from Defendants in which they were instructed to fraudulently conceal or suppress the risks of Neurontin from physicians in their off-label promotion of Neurontin for pain.

Moreover, Dr. Franklin and the *Franklin* litigation evidence will demonstrate the way that Defendants utilized an elaborate off-label marketing plan which included a series of tactics including peer-to-peer marketing as shown through Dr. Ross' influence of Dr. Hynes' prescribing of Neurontin off-label for pain off-label to Hartley Shearer, consultants' meetings, speakers' bureaus and how payments to physicians were disguised. Dr. Franklin will be able to provide personal knowledge the way that each of these programs worked and explain how Defendants designed same to fraudulently conceal or suppress the risks of adverse mood and behavior changes in order to influence physicians, as Dr. Hynes was influenced by Dr. Ross and sales representatives who suppressed the risks, to induce him to prescribe Neurontin off-label for pain.

Plaintiff has not designated Dr. Franklin as an expert and she does not intend to seek his opinion as an expert opinion under Rule 702 from him. To the extent Plaintiff seeks to elicit any opinion testimony from Dr. Franklin, its admissibility will depend upon a straightforward application of Fed. R. Evid. 701. Dr. Franklin will be testifying live at trial, and Plaintiff is not required under the Federal Rules to provide Defendants with specific testimony that she will elicit from Dr. Franklin in advance of this trial. Consequently, Plaintiff asserts that Defendants are solely speculating upon the types of opinion that Dr. Franklin might be permitted to provide in their motion *in limine*. If and when Plaintiff's counsel seeks Dr. Franklin's opinion on the stand on a questionable issue, the matter will best be addressed by a timely objection before this Court at the time of trial. The Court can then rule based upon a full record and in context. There is no compelling reason to provide Defendants with an advisory opinion on admissible opinions.

Plaintiff, however, disputes Defendants' assertion that Dr. Franklin should be prevented from providing testimony regarding Parke-Davis compliance with FDA marketing regulation because he is not designated as an expert on the FDA. Individuals who work in a highly regulated industry, such as the pharmaceutical industry, are often allowed to provide testimony concerning their understanding, and that of their company, of the rules which govern their particular industry. A witness, such as Dr. Franklin, does not require a legal degree to testify about specialized rules and/or regulations if the witness is required to deal with same on a daily basis and has personal experience with them. *See, e.g.*, *Bradley v. Philips Chemical Co., Inc.*, 484 F. Supp. 2d 604, 616, n.34 (S.D. Tex. 2007) (risk manager with years of experience issuing workers' compensation policies and complying with state regulations affecting such policies could give lay opinion under Rule 701 regarding the construction of the workers' compensation policy at issue and related state regulations). Therefore, Dr. Franklin can testify concerning both his and Parke-Davis' understanding of the FDA marketing rules and regulatory requirements during the period of his employment with Parke-Davis. Moreover, Dr. Franklin can testify, based upon his own personal observations or upon admissions made to him by Defendants' officers and employees, whether Parke-Davis complied with its understanding of the FDA regulatory rule regarding marketing.[2] Moreover, Dr. Franklin can testify concerning specific conduct that he personally observed that would allow the jury to make its own determination whether Parke-Davis conducted its marketing of Neurontin in compliance with the applicable FDA rules.

Similarly, Dr. Franklin, based upon personal observation/knowledge or upon admissions made to him by Defendants' corporate employees, can testify that Parke-Davis encouraged the promotion of Neurontin for off-label use for unapproved indications. Moreover, as detailed

*supra,* Dr. Franklin can testify concerning Parke-Davis' scienter, that the company knew its representations concerning the drug's off-label uses were not truthful and that the risks were being fraudulently concealed and/or suppressed.

**POINT III**

**DR. FRANKLIN'S DISCLOSURE, RECORDINGS AND RECOLLECTION
OF STATEMENTS EXHORTING PARKE-DAVIS EMPLOYEES TO
ENGAGE IN UNLAWFUL MARKETING IS NOT INADMISSIBLE HEARSAY**

Defendants allege that David Franklin's disclosure should be excluded in this case. ECF Doc. # 2561 at 8. Dr. Franklin's Disclosure (ECF Doc .# 2562-4), and the quotations included therein, was compiled to reflect Dr. Franklin's knowledge of the events while they were still fresh in his memory, in the summer of 1996, a mere number of weeks after the events had occurred. A *qui tam* disclosure is intended to be a correct statement of all material facts known by a Relator, Dr. Franklin. Dr. Franklin attached to his Disclosure verbatim transcripts of conversations among Parke-Davis employees that were routinely recorded and preserved on the company's Aspen voice-mail system. Dr. Franklin also produced for the Defendants in the Franklin litigation the tape from which the transcripts were made. The recordings (and the resulting transcripts) capture a number of conversations between members of the NECBU discussing how medical liaisons could be used by the sales force to increase Neurontin sales, particularly for unapproved uses. The tapes, however, are comprised exclusively of statements from persons who were employees of the Defendants at the time the conversations were recorded. The tapes clearly constitute admissions of a party opponent, and are not considered hearsay pursuant to Fed. R. Evid. 801 (d)(2). *Cuddy v. Wal-Mart Super Center, Inc.*, 993 F. Supp. 962, 967 (W.D. Va. 1998) (tape recording of conversation with a corporate employee constituted an admission of a party opponent under Fed. R. Evid. 801(d)(2)(D) and could not be

12

excluded as hearsay).

Defendants point to Plaintiff's designation of a statement by Franklin in which he quotes a statement made by Mr. Ford, a Sales Director of the Northeast Customer Business Unit instructing other Defendant employees to utilize various marketing techniques to promote Neurontin. Defs.' Mem., ECF Doc. # 2561 at 7 ,8. Pursuant to Fed. R. Evid. 801.5, Plaintiff will use the statement not to prove the truth of the matter asserted as suggested by Defendants, but for the fact that Defendants had notice or knowledge that the drug was to be used off-label and thus, combined with their knowledge of the inherent risks of taking the drug, Defendants had a duty to perform adequate pharmacovigilance. *See United States v. Emmons,* 24 F.3d 1210, 1216-17 (10th Cir. 1994) (a map found in defendant's home demonstrated that he had knowledge of where marijuana plants were situated on the property he owned).

Moreover, the statement in question by Defendants' agent Mr. Ford that "I don't want to hear that safety crap either, have you tried Neurontin, every one of you should take one just to see there is nothing, its just a great drug," is sought to be admitted not for the truth of the matter asserted, but to demonstrate that Defendants had notice that Neurontin was not safe for the off-label uses. *See Worsham v. A.H. Robins Co.,* 734 F.2d 676, 687 (11th Cir. 1984) (complaint letters were admissible because they were not admitted to demonstrate that the product had caused the injury but that defendants had notice that there product was potentially dangerous). Furthermore, as this statement was made by Mr. Ford, a Parke-Davis employee, it clearly constitutes an admission of a party opponent, and is not considered hearsay pursuant to Fed. R. Evid. 801 (d)(2).

That Defendants alleged that Mr. Franklin later made a contrary statement does not go to the admissibility of the statement but rather goes to the weight of the evidence to be attached by

a finder of fact. Further, the statement is a prior inconsistent statement in accordance with Fed. R. Evid. 801.6[3], because Defendants have claimed in this litigation to be unaware that there were any safety concerns regarding Neurontin, whereas the statement by their agent, Mr. Ford, clearly demonstrates that some within the corporation were aware of "safety crap" and had concerns.

Defendants, however, assert that Dr. Franklin may only testify about the Ford statement (and any other statements in the Disclosure) based on his current memory at the time he is called to the stand. That is not necessarily true. Dr. Franklin's memorialization of the statement in his Disclosure likely qualifies as Recorded Recollection under Rule 803(5). If Dr. Franklin is unable to recall the matter sufficiently and fully, Plaintiff may read the statement into the record if Dr. Franklin establishes that he recorded the Ford Statement in the Disclosure when the matter was fresh in his mind and it was made to correctly reflect his knowledge.

As noted *supra*, the Disclosure was compiled in the summer of 1996, only weeks after the actual events occurred. The Court, of course, cannot make a definitive determination if memorialization of the Ford Statement and the other quotations referenced in the Disclosure qualify for the recorded recollection exception to the hearsay rule until the witness has testified and the Court can determine that Plaintiff has provided the necessary factual predicate for admission. Consequently, the Court cannot issue a blanket order at this time that the Ford Statement cannot be read to the jury. Plaintiff respectfully requests that this Court defer decision until it can determine whether Rule 803(5) is applicable.

Nor can Defendants prohibit Plaintiff's counsel from attempting to refresh Dr. Franklin's recollection, if necessary, by reviewing the document. Plaintiff's counsel realizes there are limitations on how a witness's memory can be refreshed, but there is no basis to believe that

Plaintiff's counsel will not comply with the proper procedures for refreshing memory or that the Court will be unable to monitor the situation if the witness cannot clearly recall the statements. Again, there is no reason for the Court to make an *in limine* ruling when the matter can be easily and completely addressed at the time the issue arises in the course of a trial.

Defendants allege that the *Franklin* depositions are not admissible as former testimony under Fed. R. Evid. 804(b)(1) because the only question in the *qui tam* action was whether Warner-Lambert promoted Neurontin off-label and whether such off-label promotion caused the submission to Medicaid of Neurontin prescriptions that were ineligible for reimbursement. — that Defendants' "motive in cross examining the *Franklin* witnesses was merely to demonstrate that it did not encourage off-label promotion of Neurontin." ECF Doc. # 2561 at 10. Defendants are just plain wrong when they state that "that question is wholly irrelevant to the instant case." *Id.* As detailed throughout this brief in opposition, Plaintiff requires the evidence in question to demonstrate that Defendants were not only aware of the off-label promotion but that Defendants encouraged the off-label promotion — Defendants' intent and state of mind — precisely the same issues which Defendants encountered in the *qui tam* action.

Plaintiff requires the documents and testimony, etc., from the *Franklin* litigation to demonstrates Defendants' negligence, breach of duty and their intentional and reckless disregard for the health and safety of Neurontin off-label users because they made a conscious decision to engage in and encourage the off-label promotion rather than to perform the required pharmacovigilance for the off-label uses. These documents and testimony will show that Defendants were well aware that there were safety concerns for the use of Neurontin to the off-label population and provide evidence of Defendants' reckless indifference in their breach of

their duty of care for which the probative value substantially outweighs any potential for unfair prejudice to Defendants.

**POINT IV**

**EVIDENCE OF OTHER LAWSUITS DEMONSTRATES THAT
EVEN THOUGH DEFENDANTS HAD AMPLE NOTICE OF
SAFETY CONCERNS WITH NEURONTIN, THEY FAILED TO
TAKE ADEQUATE MEASURE TO PERFORM THE NECESSARY
PHARMACOVIGILANCE, PROVIDE THE OFF-LABEL
USE POPULATION WITH WARNINGS REGARDING THE
RISKS OF SUICIDALITY AND INSTEAD CONTINUED TO
PERPETUATE THE BREACH OF THEIR DUTY OF CARE**

The cases to which Defendants cite in regard to support the exclusion of other lawsuits, are inapposite and do not apply in this case. Defendants reference instances where the facts and circumstances of the lawsuits are not related to the case at hand or  improperly based on prior unrelated lawsuits. In direct contrast, in this situation, the lawsuits in question all emanate from the same breach of Defendants' duty of care.

Moreover, Defendants' negligence in each case flows from the same facts and circumstances in regard to the issue of Defendants' breach of care. The fact that Defendants received additional knowledge from the filing of lawsuits that there were safety concerns and instead chose to sit on their hands rather than perform the required pharamacovigilance is further evidence of their reckless disregard for the safety of the off-label population. It was the FDA who performed their meta-analyses and mandated a new 2009 Neurontin label that provided off-label users with the information concerning the increased risk for suicide and that users should be monitored. Other lawsuits provide evidence of Defendants' reckless indifference in their breach of their duty of care for which the probative value substantially outweighs any potential for unfair prejudice to Defendants.

## POINT V

### DEFENDANTS' BREACH OF THEIR DUTY OF CARE AND THEIR RECKLESS INDIFFERENCE TO THE SAFETY OF OFF-LABEL USERS OF NEURONTIN AS DEMONSTRATED BY DR. FRANKLIN'S TESTIMONY AND THE *FRANKLIN* LITIGATION, AND OTHER LAWSUITS ARE PROPER EVIDENCE FOR THE ISSUE OF PUNITIVE DAMAGES

In this case, Dr. Franklin's testimony, evidence from the *Franklin* litigation and from other claims and lawsuits in question all emanate from the same breach of Defendants' duty of care and will be utilized to demonstrate notice — not punishment. Moreover, as noted in detail above, what is perfectly clear, is that Defendants were negligent and reckless in knowingly not performing adequate pharmacovigilance to ascertain whether the drug was safe for the off-label uses by the population for which they were promoting the drug off-label, and their breach, which be demonstrated by the testimony of Dr. Franklin and evidence from the *Franklin* litigation, harmed and caused the death of Hartley Shearer.

Pursuant to Mass. Gen. Laws ch. 229 §.2, "a plaintiff in a wrongful death action may recover 'punitive damages in an amount of not less than five thousand dollars in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant.' The Supreme Judicial Court of Massachusetts has defined willful, wanton or reckless conduct to be 'intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another.'" *O'Neil v. Electrolux Home Prods,* Civil Action No. 06-10433-DPW, 2008 U.S. Dist. LEXIS 39998 at *23 (D. Mass. May 14, 2008) (citing to *Manning v. Nobile,* 411 Mass. 382, 387-388 (1991)). The highest state court in Massachusetts, in regard to what it defines as gross negligence in comparison with regular negligence has stated:

substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence.

*Id.* (citing to *Altman v. Aronson,* 231 Mass. 588, 591-92 (1919)).

Plaintiff requires Dr. Franklin's testimony and the evidence from the *Franklin* litigation to demonstrate that Defendants were malicious, willful, wanton or reckless when they knowingly disregarded the safety of Hartley Shearer, an off-label user, to risks, **about which Defendants were aware but did not warn,** and thereby intentionally breached their duty of care in promoting Neurontin for such an off-label use rather than performing pharmacovigilance. Defendants' intentional and reckless conduct is intertwined and directly related, and not independent, with their breach of their duty of care for which Plaintiff claims that Defendants are liable for the injuries and death sustained by Mr. Shearer in this case. Plaintiff intends to have Dr. Franklin testify and utilize evidence from the *Franklin* litigation or other litigations as evidence to demonstrate that Defendants had knowledge of the risks of increased suicidality and that, instead of performing the pharmacovigilance required, intentionally breached their duty of care by sitting on their hands and not warning Mr. Shearer, and his prescribers of such risks. This is the conduct that is reprehensible and for which punitive damages should be considered.

## CONCLUSION

Plaintiff respectfully requests that this Court deny Defendants' Motion *in Limine* to exclude the testimony of Dr. David Franklin and evidence from the *Franklin* litigation, and other

claims or actions and find that these materials are relevant to Defendants' knowledge of the risks of Neurontin, duty of care, negligent and reckless disregard and punitive damages and their probative value greatly outweighs any alleged prejudice to Defendants.

Dated:  March 8, 2010                              Respectfully submitted,

By:     /s/ W. Mark Lanier
        W. Mark Lanier, Esquire
        THE LANIER LAW FIRM, P.L.L.C.
        126 East 56th Street, 6th Floor
        New York, NY  10022


By:     /s/ Andrew G. Finkelstein
        Andrew G. Finkelstein, Esquire
        Finkelstein & Partners, LLP
        1279 Route 300, P.O. Box 1111
        Newburgh, NY  12551

        *Attorneys for Plaintiff Linda B. Shearer*

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on March 8, 2010.

        /s/ Andrew G. Finkelstein
        Andrew G. Finkelstein