UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

---

THIS DOCUMENT RELATES TO:

---

*Shearer v. Pfizer Inc., et al.*
Case No. 1:07-cv-11428-PBS

---

: MDL Docket No. 1629
: Master File No. 04-10981
: Judge Patti B. Saris
: Magistrate Judge Leo T. Sorokin

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE MISCELLANEOUS SUBJECTS FROM EVIDENCE AT TRIAL

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer") hereby respond to Plaintiff's motion *in limine* to exclude certain miscellaneous subjects from evidence at trial. Pfizer has grouped several subjects on which it asserts the same response.[1]

**(1) That a verdict for Plaintiff will adversely impact pharmaceutical companies' incentive/ability to develop new medications. (Pl. Mem. at 2-3.)**

**(2) Any comment or inference, evidence, testimony, or documents tending to suggest in any way that an award of damages in this case will adversely affect the ability of any member of the jury to purchase, or have available medications in the future, or affect the cost thereof, or have any adverse effect on the medical or health products available to individuals or industries in the United States or worldwide. (Pl. Mem. at 3.)**

**(4) That this case or any other Neurontin products liability case may cause an increase in the cost of purchasing or maintaining insurance. (Pl. Mem. at 3.)**

**(5) That this case or any other Neurontin product liability case may cause an increase in the cost of purchasing medications for the public. (Pl. Mem. at 3.)**

Pfizer opposes Plaintiff's motion as to the foregoing subjects because such evidence is relevant to Plaintiff's claim for punitive damages. Specifically, Pfizer must be permitted to

---

[1] The numbering of the issues below corresponds to that set forth in Plaintiff's motion.

introduce evidence that a punitive damages award greater than that reasonably necessary to deter the conduct allegedly giving rise to liability and warranting punitive damages may lead to over-deterrence, inhibit Pfizer's development of new medications to improve public health, and increase healthcare costs. This Court has already adopted this stance in a previous ruling in *Bulger v. Pfizer Inc.*, 1:07-11426-PBS. (Ex. A, Final Pretrial Conference Transcript, *Bulger*, at 77:14-24.)[2]

The Supreme Court has made clear that due process requires that punitive damages awards be reasonable, and in all events no greater than the amount necessary to punish and deter the conduct at issue. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419-20 (2003) (reversing punitive damages award where "a more modest punishment for this reprehensible conduct could have satisfied the State's legitimate objectives" of punishment and deterrence); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 584 (1996) ("The [punitive damages] sanction imposed in this case cannot be justified on the ground that it was necessary to deter future misconduct without considering whether less drastic remedies could be expected to achieve that goal."). Consistent with this authority, Pfizer must be allowed to present evidence on the issue of deterrence, including evidence that an unreasonably large punitive damages award would stifle product innovation and increase healthcare costs.

The cases on which Plaintiff relies do not support exclusion of such evidence on the issue of punitive damages on prejudice or other grounds. None of the cases involved claims for punitive damages, much less evidence that an unreasonably large punitive damages award could deter product development. Indeed, the court in *Norman v. Gloria Farms, Inc.*, 668 So. 2d 1016 (Fla. Dist. Ct. App. 1996), found that the defendant's closing argument about a "punitive effect on landowners in general" if the jury were to find the defendant liable for injuries sustained by the plaintiff while hunting on the defendant's land was improper because *"no punitive damages were being claimed."* *Id.* at 1021 (emphasis added). Where punitive damages *are* at issue,

---

[2] All exhibits are attached to the accompanying Declaration of Mark S. Cheffo.

evidence on issues of punishment and deterrence, including the potential impact on innovation and the broader community, are highly probative. *See, e.g., Jimenez v. Chrysler Corp.*, 74 F. Supp. 2d 548, 577 (D.S.C. 1999) (observing that, "[i]n a sense, the jury, on the punitive damages issue, truly is the conscience of the community, because it is charged with responsibility for determining the reprehensibility of conduct and what the appropriate punishment and deterrent may be," and distinguishing the "conscience of the community" reference in *Westbrook v. General Tire & Rubber Co.*, 754 F.2d 1233 (5th Cir. 1985), cited by Plaintiff here, as not involving a punitive damages claim), *rev'd in part and vacated in part on other grounds*, 269 F.3d 439 (4th Cir. 2001).

During the final pretrial conference in *Bulger*, this Court addressed an identical argument made by the plaintiff in that case and ruled that this evidence was relevant and admissible to the issue of punitive damages. (Ex. A, Final Pretrial Conference Transcript, *Bulger*, at 77:14-24.)

**(6) Any comment, evidence, testimony, inference or document mentioning medical conditions of Plaintiff's decedent's family that are unrelated to the injuries at issue in this lawsuit. (Pl. Mem. at 3.)**

Pfizer opposes Plaintiff's motion to the extent it purports to exclude evidence of Mr. Shearer's family history of mental health problems because such evidence is highly relevant to the central issues of Mr. Shearer's health and risk factors for suicide. Additionally, Mr. and Mrs. Shearer were both under the treatment of psychiatrists over the years, at times in joint sessions. Evidence of marital strain and issues from Mrs. Shearer's records (or records referencing her) is clearly relevant to Mr. Shearer's mental state at the time of his suicide. Evidence of Mrs. Shearer's mental health following Mr. Shearer's suicide is also relevant to her loss of consortium claim. *See Smith v. Kmart Corp.*, 177 F.3d 19, 32 (1st Cir. 1999) (overturning a damages award of "loss of enjoyment of life, including loss of consortium" as excessive because of the limited evidence regarding negative changes in the plaintiff's life before and after the accident); *see also id.* at 30 (explaining that loss of consortium includes "reduction in sexual relations, affection, comfort, companionship, conjugal life, fellowship, society and/or the assistance that

3

accompanies the marriage relationship"). Plaintiff will have ample opportunity to present her own expert testimony on these issues and to cross examine Pfizer's witnesses.

> **(7) Any comment, inference, evidence, testimony, or document tending to suggest in any way that an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law. (Pl. Mem. at 4.)**

The constitutionality or legality of a punitive damages award concerns a legal argument that is not the proper subject of a motion *in limine*. Pfizer will present any such argument to the Court, not the jury.

> **(9) That Plaintiff's attorneys and their law firms primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation or that plaintiff's firm implemented a national advertising campaign for Neurontin cases. (Pl. Mem. at 4.)**

Pfizer agrees that arguments or evidence tending to characterize or malign the parties' respective counsel are irrelevant and improper and should be excluded. However, Pfizer opposes Plaintiff's motion to exclude evidence that Plaintiff's counsel implemented a national advertising campaign for Neurontin cases. As Pfizer's experts have opined, the national advertising campaign injected bias into the adverse reporting system for Neurontin, on which Plaintiff's experts have heavily relied, and is directly relevant to the issues of duty to warn and general causation. (*See, e.g.*, Ex. B, Report of Sheila Weiss Smith, Ph.D., FISPE, at 14, 15-22.) Indeed, Plaintiff's own expert, Cheryl Blume, Ph.D., conceded that attorney advertising for Neurontin litigation could have stimulated adverse event reports (*see* Ex. C, Cheryl Blume Dep., at 201:1-202:1), and Keith Altman, who prepared the adverse event analyses on which Dr. Blume relied for her opinions, has averred that "Dr. Blume . . . always requested that I confine analyses to data before the 3rd quarter of 2003 for signal detection purposes. [Dr. Blume] clearly recognized that such a [notoriety] bias was possible after that point in time . . . ." (Ex. D, Declaration of Keith Altman, ¶ 24.) Plaintiff will, of course, be able to proffer expert testimony on the effect, if any, of the advertising campaign on the adverse reporting system, and to cross-examine Pfizer's experts on the issue. In *Bulger v. Pfizer Inc.*, 1:07-11426-PBS, this Court indicated that evidence

4

regarding the national advertising campaign might be admissible for this purpose. (Ex. A, Final Pretrial Conference Transcript, *Bulger*, at 80:10-81:7.)

> **(11) Any comment, evidence, testimony, inference or document mentioning that: (a) state products liability law frustrates the FDA's protective regime; (b) state tort law undercuts the FDA's mission to provide only scientifically valid warnings; (c) state warning defect or failure-to-warn laws pressure drug manufacturers to add unsubstantiated, false, or invalid warnings in order to avoid lawsuits; or (d) too many warnings of serious injuries will dilute the effectiveness of warnings generally. (Pl. Mem. at 5.)**

Pfizer does not intend to make legal arguments to the jury. It does, however, intend to, and should be permitted to, present expert testimony on whether or not it would have been reasonable for it to warn, at the time that Mr. Shearer was prescribed Neurontin, that Neurontin can increase the risk of suicidal thoughts or behavior. This testimony will, among other things, address why a company should not warn of risks in the absence of sufficient scientific and medical evidence and why over-warning about risks in the prescription drug context is a problem. *Wyeth v. Levine*, 129 S. Ct. 1187 (2009), on which Plaintiff relies, stands for the proposition that FDA approval does not create an absolute legal defense to a failure-to-warn claim. It does not, however, support a finding that a defendant should be prohibited from presenting, and juries from considering, factors proffered by a competent expert that would make it reasonable or unreasonable for a manufacturer to warn of a particular risk.

> **(3) Making reference that this case or other Neurontin products liability litigation cases may have a negative impact on the stock price of Pfizer Inc or any other publicly traded pharmaceutical manufacturer. (Pl. Mem. at 3.)**
>
> **(8) Any mention of the purported "litigation crisis," "lawsuit crisis," "lawsuit abuse," or similar terms or phrases. (Pl. Mem. at 4.)**
>
> **(10) Any comment or personal anecdote from any witness or lawyer for Defendants about themselves, or family members who have used Neurontin. (Pl. Mem. at 5.)**

Pfizer does not oppose Plaintiff's motion as to the foregoing subjects.

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that the Court deny Plaintiff's motion to exclude evidence regarding the subjects enumerated above as 1, 2, 4, 5, 6, 7, 9, and 11.

Dated: March 8, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Mark.Cheffo@skadden.com

-and-

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
    William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
WOhlemeyer@bsfllp.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

---

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 8, 2010.

    /s/ Mark S. Cheffo
    Mark S. Cheffo