UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------x
In re: NEURONTIN MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

------------------------------------------------x

THIS DOCUMENT RELATES TO:

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC., 04 CV 10739 (PBS)

------------------------------------------------x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR ADMISSION OF SUMMARY EVIDENCE

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum in opposition to Plaintiffs' motion to admit summaries of voluminous documents.

## ARGUMENT

On the third week of trial, and three days before it plans to rest its case, Kaiser proposes to prove its RICO enterprise allegations by means of a never-disclosed, yet-to-be-produced exhibit – which Kaiser does not offer as a mere demonstrative aid, but as substantive evidence. This phantom exhibit will supposedly present a "neutral" summary of voluminous documents that Kaiser's counsel have had in their possession for years, but have inexplicably failed to introduce through the testimony of any knowledgeable witness. Kaiser claims that this exhibit will be admissible as a data summary under Federal Rule of Evidence ("FRE") 1006 – an argument that is impossible for Kaiser to support, since it did not even attach any proposed exhibit to its moving papers. Suffice it to say, the neutrality of any such summary would be hotly contested, and would require far more time for review and argument than Kaiser's belated submission would allow.

### I.     Kaiser's Inexcusable Delay Requires that the Untimely Exhibit Be Excluded

Kaiser's yet-to-be-produced exhibit is inadmissible because it is untimely.  Under Federal Rule of Civil Procedure ("FRCP") 16 and Local Rule 16.5(d)(11), Kaiser was required to identify its proposed exhibits in the joint pre-trial memorandum, which, pursuant to this Court's scheduling order [2172], was due February 15, 2010.  Deadlines in the court's scheduling order are not "'modified simply upon request,'" and can only be amended for good cause shown.  *Cabana v. Forcier*, 200 F.R.D. 9, 15 (D. Mass. Mar. 30, 2001) (citation omitted).  To satisfy the good cause requirement, Plaintiffs must provide a plausible and valid reason for their delay.  *See, e.g.*, *Berwind Prop. Group, Inc. v. Envtl. Mgmt. Group, Inc.*, 233 F.R.D. 62, 67 (D. Mass. 2005).  Good cause does not exist where Plaintiffs' proposed amendments to the scheduling order are based on facts already known or that should have been known in the exercise of diligence.  *Id.*; *see also, e.g.*, *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004) ("Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment.").  Here, Plaintiffs' untimely proposed exhibit is based on documents they had in their possession long before the Court-ordered deadline.  Therefore, there is no good cause for the delay, and the exhibit must be excluded.

### II.    Kaiser Cannot Satisfy the Requirements of FRE 1006

Kaiser's yet-to-be-produced exhibit is also inadmissible because it does not meet the requirements of FRE 1006, and must therefore be excluded under the best evidence rule, FRE 1002.  Kaiser's description of the proposed exhibit also suggests that it will be inadmissible under FRE 401, 402, and 403.

Kaiser claims that its "summary charts" will direct the jury's attention to "the relevant portions of the accompanying documents."  (Pl. Mem. at 5.)  In other words, Kaiser's notion of neutrality involves the presentation of cherry-picked quotes taken out of context from cherry-picked documents, all selected based on Kaiser's partisan theory of the case.  This is not what FRE 1006 contemplates.  In arguing to the contrary, Kaiser misstates the holding of one of its principal authorities.  Kaiser cites *United States v. Taylor*, 210 F.2d 311, 315 (5th Cir. 2000), as

2

"***upholding*** admission of organizational charts" in a conspiracy case. (Pl. Mem. at 5 (emphasis added).)  In reality, the Fifth Circuit held that the trial court's "admission of the chart unduly prejudiced [defendant's] trial and ***requires a reversal***."  *Taylor*, 210 F.2d at 316 (emphasis added).  This is because "admission of the chart allowed the government to assume that which it was required to prove … as operative facts of the alleged offense." *Id.*  The same concerns apply here.

"Charts admitted under Rule 1006 are explicitly intended to reflect the contents of the documents they summarize and typically are substitutes in evidence for the voluminous originals." *United States v. Milkiewicz*, 470 F.3d 390, 398 (1st Cir. 2006).  "Consequently, they must fairly represent the underlying documents and be '"accurate and nonprejudicial."'" *Id.* (quoting *United States v. Bray*, 139 F.3d 1104, 1111 (6th Cir. 2008)). "Care must be taken to insure that summaries accurately reflect the contents of the underlying documents and ***do not . . . unfairly emphasize part of the proponent's proof*** or create the impression that disputed facts have been conclusively established or that inferences have been directly proved." *United States v. Drougas*, 748 F.2d 8, 25 (1st Cir. 1984) (emphasis added).  Moreover, based on Kaisers description, it is clear that the proposed charts would not present a mere ***summary***, but would instead present a biased and highly misleading ***interpretation*** of the underlying documents, which FRE 1006 does not permit.  *See, e.g.*, *State Office Sys., Inc. v. Olivetti Corp.*, 762 F.2d 843, 845-46 (10th Cir. 1985) (exhibits containing "interpretations of past data" rather than a "simple compilation" were inadmissible under Rule 1006); *Gomez v. Great Lakes Steel Div. Nat'l Steel Corp.*, 803 F.2d 250, 258 (6th Cir. 1986) (exhibit purporting to be summary improperly admitted because it was not a "simple compilation of voluminous records").

The purported neutrality of Kaiser's yet-to-be-produced summary would have to be determined document-by-document before it could be submitted to the jury, and under the rule of completeness, Kaiser would be required to include additional documents or quotations to the extent necessary to achieve the "accurate and nonprejudicial" summary that FRE 1006 requires. This process would more than negate any time savings.  In addition, "[c]ourts have cautioned

that Rule 1006 is 'not a back-door vehicle for the introduction of evidence which is otherwise inadmissible.'" *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007) (quoting *Peat, Inc. v. Vanguard Research Inc.*, 378 F.3d 1154, 1160 (11th Cir. 2004).

### III.   Kaiser's Complaints Regarding Time Constraints and Witness Availability Are Irrelevant and Without Merit

Unable to demonstrate good cause under FRCP 16 or satisfy the standards for admissibility under FRE 1006, Kaiser attempts to blame the Court and Defendants for its own failure to prove essential elements of its RICO claims. These arguments have no bearing on admissibility and no basis in reality.

First, Kaiser blames the Court, complaining that it "has been asked in this bellwether[1] trial to present all of its evidence concerning a complex and sprawling medical marketing fraud in 28 hours." (Pl. Mem. at 1.) How quickly Kaiser forgets that ***Kaiser itself*** urged the Court to set a trial with a strictly limited time frame, which, because of an already-scheduled late March products liability trial, allowed no margin for error. Defendants objected to Kaiser's trial plan on precisely this basis:

> Despite their failure to provide any details regarding what a trial would actually "look like," and despite the fact that this would quite possibly be the first trial of its kind in the history of American jurisprudence, Plaintiffs ask this Court to take it on faith that the entire trial could be completed in exactly four weeks with absolutely no margin for error. The serious scheduling challenges presented by the recent *Bulger* trial suggest that this is highly unrealistic.

(Defs' Surreply to Proposed Trial Plan [2156-2] at 2.) Over Defendants' objection, the Court adopted ***Kaiser's*** trial plan. Kaiser now finds itself hoist on its own petard, the victim of its own ill-advised pre-trial posturing.

Next, Kaiser blames Defendants, arguing that Defendants "kn[ew] that Kaiser was relying upon [Mr. Knapp's] appearance to move the very documents at issue here into evidence."

---

[1] This trial is not a "bellwether" to anything. It is specific to Kaiser's claims. Kaiser's co-plaintiffs' claims have been dismissed, and the Court's summary judgment decision sets a standard that the so-called "Class TPPs" cannot survive. *See In re Neurontin Mktg. & Sales Practices. Litig.*, No. 04-CV-10981, 2010 WL 53568, at *9-10 (D. Mass. Jan. 8, 2010).

4

(Pl. Mem. at 2-3.) The Court has already rejected this argument: "No, you never thought he was going to be part of your case. You thought he was going to be part of their case." (3/2 Tr. (Court) at 7:3-5.)[2] Kaiser waited until shortly before trial (February 15) before ever raising the issue of Mr. Knapp's live appearance in Kaiser's case. Kaiser then served an untimely trial subpoena, and defense counsel accepted service in the spirit of cooperation – cooperation that has not been reciprocated by Kaiser.[3] The Court properly quashed the subpoena as untimely: "It's all last minute. This is last-minute skirmishing. … [I]t's too late in the game to be subpoenaing people and having a debate about it …." (3/2 Tr. (Court) at 10:15-22.) This reasoning applies with equal force to Kaiser's untimely, yet-to-be-produced summary.

In any event, Mr. Knapp's availability is a red herring. In addition to Mr. Knapp, Kaiser's deposition designations [Dkts. 2500-5 & 2500-6] include testimony from numerous witnesses that Kaiser's other pre-trial filings have described as being knowledgeable about "marketing" issues [2179]. These include twenty-two Warner-Lamber/Pfizer witnesses,[4] four Cline Davis witnesses,[5] and two Medical Action Communications witnesses.[6] In addition,

---

[2] Kaiser also pointlessly argues about the territorial limits of subpoena power (Pl. Mem. at 3 n.2), even though the Court specifically noted that "[t]hat's not the argument [Defendants] raised" in their motion to quash (3/2 Tr. (Court) at 6:21). The Court quashed Kaiser's trial subpoena because of *when* it was filed, not *where*.

[3] Throughout this litigation, Kaiser has made every effort to game the system in order to selectively procure the trial testimony of its own witnesses while depriving Pfizer of any comparable access to similarly situated witnesses. It has done so by filing this case in an inconvenient venue [Dkt. 31], opposing Pfizer's motion to transfer venue to the state where the vast majority of witnesses reside [Dkt. 2194 at 9-17], and selectively procuring the trial testimony of strategically chosen PMG doctors [Dkt. 2179 at 6-7], while refusing to lift a finger to procure the attendance of other PMG doctors sought by Pfizer [2392]. Most recently, Kaiser deprived Pfizer of the opportunity to cross-examine Albert Carver, a key witness in this case, by representing that he would testify as Kaiser's corporate representative, and waiting until Mr. Carver was on a plane out of the country before advising Defendants and the Court that Mr. Carver would not testify.

[4] The Warner-Lamber/Pfizer witnesses are: John Boris, George Cavic, John Crook, Christopher DeSimone, Suzanne Doft, Christopher Dowd, Allison Fannon, Timothy George, Robert Glanzman, Christine Grogan, Frances Kivel, Philip Magistro, Nancy Mancini, John Marino, Tamela Martin, Avanish Mishra, Joseph Pieroni, John Richter, Leslie Tive, Adrian Vega, Timothy Windom, Margaret Yoder.

[5] The Cline Davis witnesses are: Clare Cheng, Bina O'Brien, Jennifer Samuels, Connor Smith.

Kaiser introduced several marketing documents through Dr. Abramson and other experts, whose complete lack of personal knowledge regarding those documents did not stop them from commenting on the documents' purportedly meaning.  Indeed, the Court allowed Dr. Abramson to testify about internal corporate documents over Defendants' objection because "[h]e's their document summary witness basically." (2/24 Tr. (Court) at 10:17-20.)

Kaiser's failure of forward planning, inefficient use of available trial time, and other strategic blunders are not grounds for re-writing the rules of evidence or downgrading Kaiser's substantive burden of proving a RICO claim – a burden Kaiser all but concedes it cannot satisfy.

## CONCLUSION

For all of the foregoing reasons, Pfizer respectfully requests that the Court deny Plaintiffs' motion in its entirety.

Dated: March 8, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Mark S. Cheffo
      Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Email:  Mark.Cheffo@skadden.com

---

[6] The Medical Action Communications witnesses are David Cooper and Stephen Valerio, both of whom were designated late.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:   /s/ Raoul D. Kennedy
      Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400
Email: Raoul.Kennedy@skadden.com

WHEELER TRIGG O'DONNELL LLP

By:   /s/ James E. Hooper
      James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800
Email: hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

---

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 8, 2010.

      /s/ Mark S. Cheffo
      Mark S. Cheffo