UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:   NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| | Magistrate Judge Leo T. Sorokin |
| *Shearer v. Pfizer Inc., et al.* Case No. 1:07-cv-11428-PBS | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE*
TO PRECLUDE EVIDENCE THAT ANY DRUG OTHER THAN NEURONTIN
CAUSED OR WAS ASSOCIATED WITH HARTLEY SHEARER'S SUICIDE**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer") hereby oppose Plaintiff's motion *in limine* to preclude evidence that any drug other than Neurontin caused or was associated with Hartley Shearer's suicide and request that the Court deny the motion.[1]

**PRELIMINARY STATEMENT**

This Court should deny Plaintiff's sweeping request to exclude at trial any "testimony, evidence, comments, references to or inferences that . . . Hartley Shearer's ingestion of medications and drugs other than Neurontin caused or was associated with or contributed to his suicide." (Pl. Mem. [2549] at 7.)  Contrary to Plaintiff's contentions in their motion, evidence about Mr. Shearer's use of various medications is relevant to the issue of specific causation, the subject of reliable testimony by Pfizer's experts, and a proper and necessary area of examination of Plaintiff's experts.  Extraordinarily, it is *Plaintiff's own experts* who have set forth a theory of

---

[1] In the case *Bulger v. Pfizer Inc.*, No. 1:07-11426-PBS, a substantially identical motion *in limine* and accompanying memorandum were submitted to this Court in advance of the trial regarding claims of Plaintiff David Egilman, as administrator of the estate of Susan Bulger, who was also represented by the same counsel as in this case.  [1878, 1879]  The Court properly denied that motion in a hearing on July 20, 2009, as well as an accompanying electronic order on July 24, 2009, and it should likewise deny this substantially identical motion in this case for the same reasons.

"Prozac withdrawal" – claiming that this may have played a role in Mr. Shearer's suicide. Plaintiff cannot set forth causation theories implicating other medications, and then move to exclude evidence regarding Mr. Shearer's other medications.

Notably, Plaintiff's memorandum in support of this broad exclusion discusses the reports of experts who are not designated to testify in this case. She dedicates several pages of her argument to the expert opinions of Drs. Rothschild and Sanacora,[2] and, because they will not be testifying in her case, this portion of her argument can simply be disregarded. (Ex. A, Defendants' Witness List, at 2.)[3] Her memorandum does not mention Drs. Boyer and Bird, who actually are included as specific causation experts on Pfizer's witness list. (*Id.*) As such, it can be assumed that Plaintiff does not dispute the admissibility of the testimony of Drs. Boyer and Bird with regard to the issue of whether any drug other than Neurontin caused or was associated with Hartley Shearer's suicide.

The only expert to whom Plaintiff's memorandum refers, whose testimony will actually be presented, is Dr. Douglas Jacobs. Even so, the cherry-picked testimony of Dr. Jacobs that Plaintiff cites does not support the broad exclusion she seeks. That Dr. Jacobs has not subscribed to Plaintiff's theory that Neurontin or other medications can cause suicide does not render irrelevant, unreliable, or unduly prejudicial his testimony about, and other evidence of, Mr. Shearer's prescription history. Whether and how other drug use may have affected his mental and physical health and wellbeing, increased his risk for suicidal behavior, and, ultimately, caused his suicide, are all critical issues of fact that Pfizer must be permitted to present to the jury. Further, the Court should allow Pfizer to explore and demonstrate inconsistencies in Plaintiff's causation experts' testimony and opinions with respect to other drugs Mr. Shearer was prescribed or was taking. Plaintiff will have ample opportunity to address such evidence through his own experts and through cross-examination of Pfizer's experts.

---

[2] Drs. Rothschild and Sanacora were designated to testify in *Bulger v. Pfizer Inc.*, No. 1:07-11426-PBS, and it appears that Plaintiff's counsel adapted her brief from a similar brief filed on behalf of the plaintiff in the previous trial.

[3] All exhibits are attached to the accompanying Declaration of Mark S. Cheffo.

By denying Plaintiff's motion and permitting evidence regarding Mr. Shearer's use of other medications, the Court will merely be acting consistently with its previous ruling in *Bulger*, in which it plainly held that Defendants "are allowed to point out [plaintiff] was on other medications. . . . Of course they can do that." (Ex. B, Final Pretrial Conference Transcript, *Bulger*, at 52:6-9.)

## ARGUMENT

### I.   PFIZER MUST BE PERMITTED TO PRESENT EVIDENCE ABOUT MR. SHEARER'S USE OF OTHER MEDICATIONS ON THE ISSUE OF SPECIFIC CAUSATION

Evidence of and expert testimony about Mr. Shearer's use of prescription drugs are central to the key issue of specific causation.  As Plaintiff's own experts observe, Mr. Shearer was taking several other medications that are associated with an increased risk in suicide at the same time he was taking Neurontin.  Further, Plaintiff's experts will affirmatively present evidence of other drug use as part of their specific causation theory that relies on the effects of both Neurontin and Prozac.

For example, one of Plaintiff's specific causation experts, Dr. Joseph Glenmullen, concedes that "[s]ome of Hartley's other concurrent medications *may have increased Hartley's risk of suicide and may have been a substantial contributing factor in Hartley's death*." (Ex. C, Dr. Joseph Glenmullen Report, at 31 (emphasis added); *see also* Ex. D, Dr. Joseph Glenmullen Dep., at 115:10-12 (conceding that "some of [Shearer's] other medications may have increased his risk and may have been substantial contributing factors").)  Dr. Glenmullen explains as follows:

> Hartley was on multiple other medications at the time of his death.  Some of his other medications have warnings or precautions advising of an increased risk of suicide.  For example, the antidepressants Prozac and Trazadone have black box warnings that they may make children, adolescents, and young adults suicidal. There are reports that antidepressants also make adults suicidal.  Benzodiazepines like Valium have precautions that they may disinhibit suicidal urges.

(Ex. C, Glenmullen Report, at 31-32; *see also* Ex. D, Glenmullen Dep., at 106:24-107:3 (explaining that he has opined in other litigation that antidepressants, including Prozac, increase

the risk of suicide).)   In addition to conceding that it may have contributed to Mr. Shearer's suicide, other drug use is a necessary piece of Plaintiff's own expert's theory of causation.[4] Plaintiff will affirmatively offer the expert testimony of Dr. Glenmullen, who will opine that a combination of Neurontin use and "Prozac withdrawal" resulted in suicide.  His report provides as follows:

> An adverse interaction between Neurontin and Prozac in particular may have played a role in Hartley's death. . . .  He would have been in Prozac withdrawal with fluctuating serotonin levels that would have been altered by Neurontin's effect on changing serotonin levels in the brain. . . .  Neurontin's adverse interaction with Prozac may therefore have been responsible for the particular timing of Harley's death.

(Ex. C, Glenmullen Report, at 32.)  Considering that this theory – of "Prozac withdrawal" acting synergistically with Neurontin use – is inextricably bound to Dr. Glenmullen's conclusions, Plaintiff's objections to causation evidence about other drug use ironically constitutes a repudiation of her own expert's opinions.[5]

Plaintiff's other specific causation expert, Dr. Stefan P. Kruszewski, also incorporates Mr. Shearer's other medications as a part his opinion.  As he explained in his deposition, a key part of his scientific methodology depended upon examining "the medicines that a person was likely taking and which ones had a history or not of associated suicidality, and where they affected mood and behavior or not in other populations."  (Ex. E, Dr. Stefan P. Kruszewski Dep., at 111:10-15.)  Furthermore, as he conducted his "retrospective analysis," he "obviously had to consider to the best of [his] ability all of those medications" taken by Shearer, including Digoxin,

---

[4] Furthermore, Dr. Glenmullen indicated that Mr. Shearer's son was concerned that his father was "overmedicated," "overprescribed," and was experiencing "possible adverse interactions between medications" because "his eyes were glossed over" and he seemed "out of it."  (Ex. C, Glenmullen Report, at 22-23.)  Dr. Glenmullen also noted that the decision to prescribe Neurontin, along with other drugs, was partially because Mr. Shearer's previous pain medications had made him "paranoid and disoriented." (*Id.* at 18.)

[5] Pfizer disputes both the fact that "Prozac withdrawal" combined with Neurontin increases the risk of suicide, and the assertion that Mr. Shearer was even in "Prozac withdrawal" at the time of his suicide.  (Ex. G, Dr. Douglas G. Jacobs Report, at 23-24.)  As Dr. Jacobs points out, "[t]here is no scientific study to support that the interaction of Neurontin and Prozac 'or lack of Prozac' leads to increased suicide." (*Id.* at 23.)  Furthermore, Prozac has a long half-life, Mr. Shearer did not exhibit any symptoms of withdrawal, and no study indicates that SSRI withdrawal can lead to suicide. (*Id.* at 24.)

Ritalin, Provigil, and Prozac. (*Id.* at 111:15-112:9.) In particular, his report notes that Shearer "appeared to have 'run out' of fluoxetine (he last filled his prescription for fluoxetine on 1.26.02 in what would have been a seven day supply, leaving him approximately five days without this medicine at the time of his suicide) several days before his suicide." (Ex. F, Dr. Stefan P. Kruszewski Report, at 11.) Dr. Kruszewski then notes that this could have caused Mr. Shearer to become "pharmaceutically challenged" because "[h]is emotional state may have been upset by what might have been the absence of fluoxetine." (*Id.*; *see also* Ex. E, Kruszewski Dep., at 112:16-18 (noting that "Prozac withdrawal, for example, may have been a contributing factor to Mr. Shearer's suicide").) Furthermore, as part of Dr. Kruszewski's purported "differential diagnosis," he explicitly considers Mr. Shearer's lack of fluoxetine and the fact that he "was taking numerous medicines in the years before he suicided" as risk factors for suicide. (Ex. F, Kruszewski Report, at 14.)

As should be clear from their expert reports, consideration of Mr. Shearer's use, misuse, or nonuse of other medications was key to both Dr. Kruszewski and Dr. Glenmullen's opinions about specific causation. Furthermore, Plaintiff's motion provides no basis for finding that evidence and expert testimony by Defendants' experts about Mr. Shearer's use of other drugs is irrelevant, unreliable, or unduly prejudicial, as to whether any other medications contributed to his suicide or whether he was experiencing withdrawal symptoms from other medications. Here, as in *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248 (1st Cir. 1998), this evidence is critical to "scientific explanation[s] directly pertinent to the central issue in the case, namely, [specific causation]." *Id.* at 253 (vacating jury verdict and ordering new trial, holding district court erred in barring defendant from offering expert testimony of an alternative cause of plaintiff's pelvic inflammatory disease and infertility). Where, as here, evidence is significantly probative on a central issue in dispute, the risk of prejudice cannot outweigh the relevance of the evidence. In any event, as in *Baker*, the risk of prejudice or confusion of the jury is *de minimis* because Plaintiff's counsel will be able to cross-examine Defendants' experts on these issues. *See id.* at 254. Plaintiff's motion should, therefore, be denied to the extent it would preclude Pfizer from introducing such evidence.

## II.   PFIZER SHOULD BE ALLOWED TO ADDRESS INCONSISTENCIES IN PLAINTIFF'S EXPERTS' OPINIONS WITH RESPECT TO OTHER DRUGS

Pfizer should also be permitted to present evidence about other medications that Mr. Shearer was taking during the relevant time period to address inconsistencies, biases, and other methodological failings in Plaintiff's experts' causation opinions.  It is Plaintiff, not Pfizer, who bears the burden of proving both general and specific causation.  And it is Plaintiff, not Pfizer, who contends that Neurontin and other antiepileptic drugs ("AEDs") are GABAergic, that this increases the risk of suicide, and that there should be class-wide treatment of AEDs with respect to this alleged increased risk.  Plaintiff cannot, therefore, exclude evidence of, and questioning of her own experts regarding their failure to exclude alternative causes implicated by their opinions, merely because Pfizer's experts do not embrace Plaintiff's theory of general causation or proposed mechanism of action.  For the same reason, Pfizer should be allowed to impeach Plaintiff's experts' testimony about their opinions and methodologies by exploring whether other medications, which Mr. Shearer was taking, can and did cause suicide.

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that the Court deny Plaintiff's motion to exclude evidence that any drug other than Neurontin caused or was associated with Hartley Shearer's suicide.

Dated: March 8, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Mark.Cheffo@skadden.com

-and-

---

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 8, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo

---

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
     William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
WOhlemeyer@bsfllp.com

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*