UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : MDL Docket No. 1629 : : Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | : Judge Patti B. Saris : : Magistrate Judge Leo T. Sorokin |
| *Shearer v. Pfizer Inc., et al.* Case No. 1:07-cv-11428-PBS | : : : |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE, TESTIMONY, MENTION, REFERENCES OR INFERENCES REGARDING THE SUICIDE OF PLAINTIFF'S DECEDENT HARTLEY SHEARER'S STEPFATHER, CLIFFORD ROBERTS

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer") respectfully submit this memorandum of law in opposition to Plaintiff's untimely motion *in limine* to preclude "any evidence testimony, comments, documents, references to or inferences . . . at trial, concerning Hartley Shearer's stepfather's suicide." (Pl. Mem. [2599-1] at 1.)

### PRELIMINARY STATEMENT

Initially, the Court should deny Plaintiff's motion as untimely because it was filed a week after the applicable deadline[1] and, regardless, the arguments accompanying this motion lack merit. Defendants may introduce evidence showing a history of suicide in Mr. Shearer's family, and exposure to suicide in Mr. Shearer's life, especially considering that both Defendants' and Plaintiff's experts have indicated that these facts may impact a person's decision to commit suicide. During his lifetime, Mr. Shearer experienced the death of his stepfather, Clifford Roberts, by suicide under circumstances similar to those in which he would later take his own

---

[1] Pfizer incorporates herein its Memorandum in Opposition to Plaintiff's Motion for Leave to File A Late Motion In Limine. [2602]

life. Like Mr. Shearer, Mr. Roberts died from a self-inflicted gunshot wound to the head following a debilitating stroke. This piece of personal and family history is clearly relevant as it will aid the jury's understanding of the thought-process through which Mr. Shearer resolved to end his own life, one of the central questions that the jury will be asked to consider in this case. By necessity, the difficult and complex task of determining the cause of Mr. Shearer's death makes the circumstances of his life – all the circumstances – relevant. Plaintiff's request that the jury only hear a one-sided history of Mr. Shearer, which would require the jury to decide the issue of causation without the relevant context, should be rejected. Not only does the fact of his stepfather's suicide provide a key piece of the narrative leading up to Mr. Shearer's death, it may also directly show that he had an "environmental predisposition" for suicide. Additionally, this evidence is relevant in cross-examining Plaintiff's expert, who has specifically opined that a family history of suicide constitutes a risk factor.

## ARGUMENT

Both Plaintiff's and Defendants' experts, and all leading mental health organizations, agree that a family history of suicide is a risk factor for suicide. In this case, Mr. Shearer's stepfather committed suicide. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. This relevant fact about Mr. Shearer's personal and family history will provide the jury with a clearer understanding of the context in which the events at issue in this case occurred and, therefore, facilitate their ultimate determination as to what caused the suicide. *See* Fed. R. Evid. 401 advisory committee's note (observing that evidence that is "background in nature . . . is universally offered and admitted as an aid to understanding"). In addition to providing necessary background information, the expert opinions in this case indicate that Mr. Shearer's family history of suicide may make it less probable that Neurontin caused his death.

As explained in Dr. Douglas Jacobs's report, "[s]uicide is a multi-factorial event with a variety of conditions and stressors contributing to its outcome." (Ex. A, Dr. Douglas G. Jacobs

Report, at 5.)[2] The more risk factors a person has, the higher his or her risk of suicide. (*Id.* at 5-6) In response to a question about what impact that his stepfather's suicide under similar circumstances may have had on Mr. Shearer's own decision to take his life, Dr. Jacobs opined this fact was "a noteworthy clinical event in this case." (Ex. B, Dr. Douglas G. Jacobs Dep., at 86:23-24.) He explained that this circumstance in Mr. Shearer's family history may have created in him an "environmental predisposition" toward suicide. (*Id.* at 86:9-15.) He also indicated that multiple articles in his field lend support to this view.[3] (*Id.* at 86:25-87:4.) Along these same lines, Plaintiff's expert, Dr. Joseph Glenmullen, also indicated that a "[f]amily history of suicide" constitutes a "risk factor[] that increase[s] the likelihood of suicide." (Ex. C, Dr. Joseph Glenmullen Report, at 32-33.) Thus, the expert testimony from both sides demonstrates that Mr. Shearer's family history of suicide is particularly relevant to the issue of causation because it has been recognized as one of many factors that may have made it more likely that his actions would have been the same in the absence of Neurontin.

In addition to being relevant as direct proof regarding the issue of specific causation, Mr. Shearer's family history of suicide may be used to cross-examine Plaintiff's expert. In the section of Dr. Glenmullen's report where he weighs Mr. Shearer's "risk factors" against his "protective factors," he includes a "[f]amily history of suicide" in his list of risk factors for suicide, although the corresponding box beside this risk factor is not checked. (Ex. C, Glenmullen Report, at 33.) While it is not clear from his report whether Dr. Glenmullen knew of the suicide in Mr. Shearer's family history,[4] Defendants should be permitted to question the Plaintiff's expert about whether he considered this fact and whether he properly weighed it in his

---

[2] All exhibits are attached the accompanying Declaration of Mark S. Cheffo.

[3] Plaintiff's sole support for her argument – that the suicide in Mr. Shearer's immediate family is irrelevant – is an answer to a misleading question given by Dr. Jacob's during his deposition that is taken out of context, constitutes a legal conclusion, and was not followed by an opportunity for the deponent to explain his answer. (Pl. Mem. at 2.)

[4] Dr. Glenmullen's report notes his reliance on a "New York Times (Obituary)," however it is unclear from this reference whether this is an obituary for Mr. Shearer or for Mr. Roberts. (Ex. C, Glenmullen Report, at 4.)

analysis. *See* Fed. R. Evid. 705 ("The expert may in any event be required to disclose the underlying facts or data on cross-examination."). Dr. Glenmullen's treatment of Mr. Shearer's family history of suicide may call into question whether – even based upon his own flawed set of standards[5] – his conclusion properly accounts for all the relevant facts. An expert's failure to consider and apply all the relevant facts in a particular case may put his conclusions in a questionable light. *Cf. Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) (observing that an expert opinion is unreliable where it is "unsupported by sufficient facts[] or contrary to the facts of the case").

In short, the evidence regarding Mr. Rogers's suicide is relevant and admissible to show the context of Mr. Shearer's personal and family history, to show a factor that may have contributed to his suicide, and to be used in the cross-examination of Plaintiff's experts.

## CONCLUSION

For the reasons set forth herein, Pfizer requests that the Court deny Plaintiff's motion *in limine*.

Dated: March 8, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Mark.Cheffo@skadden.com

-and-

---

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 8, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo

---

[5] Defendants maintain that Dr. Glenmullen's methodology is fundamentally unreliable and should be excluded because it depends upon circular reasoning and faulty inferences grounded in *post hoc, ergo propter hoc*. (*See* Mot. to Exclude Testimony of Drs. Glenmullen and Kruszewski [2453, 2454].) In fact, Dr. Glenmullen's failure even to account for a factor that he set out himself underscores the unreliability and result-driving nature of his analysis.

4

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
    William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
WOhlemeyer@bsfllp.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

5