# EXHIBIT B

Page 1

```
 1                              VOLUME: I
                                PAGES:   1 to 99
 2                              EXHIBITS: 1 and 8
 3          UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
 4
 5    MDL Docket No. 1629
      Master File No. 04-10981
 6
 7    IN RE: NEURONTIN MARKETING,
      SALES PRACTICES AND
 8    PRODUCTS LIABILITY
      LITIGATION
 9
      -----------------------------
10
      THIS DOCUMENT RELATES TO:
11    Shearer vs. Pfizer, Inc.
12
13     Job No.: DG240263
14        DEPOSITION OF DOUGLAS C. JACOBS,
15    M.D., called as a witness on behalf of
16    the Plaintiff, pursuant to the applicable
17    provisions of the Federal Rules of Civil
18    Procedure, before Jeanette N. Maracas,
19    Registered Professional Reporter and Notary
20    Public in and for the Commonwealth of
21    Massachusetts, at the Offices of Professional
22    Psychiatric Associates, One Washington
23    Street, Wellesley Hills, Massachusetts, on
24    Tuesday, February 9, 2010, commencing at
25    9:45 a.m.
```

Page 1

```
 1                              VOLUME: I
                                PAGES:   1 to 99
 2                              EXHIBITS: 1 and 8
 3          UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
 4
 5    MDL Docket No. 1629
      Master File No. 04-10981
 6
 7    IN RE: NEURONTIN MARKETING,
      SALES PRACTICES AND
 8    PRODUCTS LIABILITY
      LITIGATION
 9
      -----------------------------
10
      THIS DOCUMENT RELATES TO:
11    Shearer vs. Pfizer, Inc.
12
13     Job No.: DG240263
14        DEPOSITION OF DOUGLAS C. JACOBS,
15    M.D., called as a witness on behalf of
16    the Plaintiff, pursuant to the applicable
17    provisions of the Federal Rules of Civil
18    Procedure, before Jeanette N. Maracas,
19    Registered Professional Reporter and Notary
20    Public in and for the Commonwealth of
21    Massachusetts, at the Offices of Professional
22    Psychiatric Associates, One Washington
23    Street, Wellesley Hills, Massachusetts, on
24    Tuesday, February 9, 2010, commencing at
25    9:45 a.m.
```

Page 2

```
 1   APPEARANCES:
 2
 3
         THE LANIER LAW FIRM
 4       By: Kenneth S. Soh, Esq.
         6810 FM 1960 West
 5       Houston, Texas 77069
         For the Plaintiff.
 6       kss@lanierlawfirm.com
 7
 8
         BOIES, SCHILLER & FLEXNER, LLP
 9       By: William S. Ohlemeyer, Esq.
         333 Main Street
10       Armonk, New York 10504
         For Pfizer, Inc.
11       E-mail: Wohlemeyer@bsfllp.com
12
13   ALSO PRESENT: Sam Krumholz
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1          I N D E X
 2
 3   Testimony of:      Direct   Cross
 4
     Douglas C. Jacobs, M.D.
 5
         (by Mr. Soh)       4
 6
 7
 8          E X H I B I T S
 9
     No.   Description         Page
10
11    1  Report of Dr. Jacobs.      4
12    2  List of deposition/trial
         testimony of Dr. Jacobs.   4
13
      3  Drugs.com Pill Finder, photo
14       of fluoxetine pill.       75
15    4  Copy of photograph of pill
         bottle.                   76
16
      5  Copy of photograph.       77
17
      6  Handwritten notes.        88
18
      7  Invoices.                 88
19
      8  Copy of Dr. Jacobs' file. 96
20
21
22
23
24
25
```

Page 4

```
 1          P R O C E E D I N G S
 2       (Exhibits 1 and 2 marked for
 3   identification.)
 4          DOUGLAS C. JACOBS, M.D.
 5       A witness called for examination
 6   by counsel for the Plaintiff, having been
 7   first duly sworn, was examined and testified
 8   as follows:
 9          DIRECT EXAMINATION
10   BY MR. SOH:
11   Q. Dr. Jacobs, I just want to -- we're going
12      to do this out of order, but you were so
13      kind to print this out. Would you look
14      at Jacobs No. 2, which is your deposition
15      trial testimony, which you handed us right
16      before the trial started. Look at 2009
17      very quickly.
18   A. Yes.
19   Q. I assume this is -- is this your first
20      deposition or trial, is this your first
21      deposition in 2010, what we're here for
22      today?
23   A. That's correct.
24   Q. Let's just, if we can just go over your
25      2009 stuff. Is this in chronological order,
```

Page 5

```
 1      like Crone vs. Pfizer was at the beginning
 2      of the year and U.S. versus George MacDonald,
 3      was at the end of the year?
 4   A. Correct.
 5   Q. Tell me about U.S. versus George MacDonald,
 6      what was that case about?
 7   A. That was a court-martial in which a soldier
 8      killed another soldier and claimed as a
 9      defense that he was taking the medication
10      Chantix, and I participated as a witness
11      for the prosecution.
12   Q. So the Jag Corp. or the U.S. Attorney's
13      office retained you?
14   A. I think it's actually the Jag Corp.
15   Q. You were paid by the Jag Corp.?
16   A. That's correct, the Department of Defense.
17   Q. Was that your first Chantix case that you
18      testified about?
19   A. That's correct.
20   Q. Tell me about -- let me ask you this. Who
21      makes Chantix?
22   A. I believe Pfizer.
23   Q. Did any lawyer from Pfizer contact you
24      with regard to your testimony in U.S.
25      versus MacDonald?
```

Veritext/NJ Reporting Company
800-227-8440                                        973-410-4040

Page 86

1  A. Correct.
2  Q. Mr. Roberts committed suicide?
3  A. Correct.
4  Q. I believe with a firearm, correct?
5  A. Correct.
6  Q. Does that have any relevance in this case?
7  A. To the degree that I believe -- I haven't
8     looked at that obituary. I think he had a
9     stroke, and that in terms of suicide, suicide
10    has two -- suicides in families, there's
11    two ways that suicide gets passed on.
12    There's a genetic predisposition and there's
13    an environmental predisposition. To the
14    degree it's an interesting phenomenon in
15    this case, that's all I can say.
16 Q. Okay. Is it more than interesting? Does
17    it have any -- are you going to say that
18    somehow that Mr. Shearer's stepfather's
19    suicide was a risk factor for Mr. Shearer's
20    suicide?
21 A. I don't think I would go as far as to say
22    it was a risk factor, but I would say that
23    it's a noteworthy clinical event in this
24    case.
25 Q. Would you identify for me any articles

Page 87

1     that -- are you aware of any articles that
2     talk about this whole environmental passing
3     on of suicide?
4  A. I am.
5  Q. Could you cite some for me, remote to
6     stepfathers?
7  A. It may be in my textbooks.
8  Q. Off the top of your head, can you identify
9     any articles for me?
10 A. I'd have to go to my textbook, but what
11    I will do is I will find some articles and
12    I'll give them to Mr. Ohlemeyer.
13 Q. So, as I understand it, you find that the
14    suicide of Mr. Shearer's stepfather is an
15    interesting -- what did you say? Interesting
16    sidenote? What did you say?
17 A. It's noteworthy in this case because the
18    fact pattern is very similar.
19 Q. Is it relevant to causation?
20 A. No.
21 Q. Thank you very much. Let's take a break.
22    I will -- let me clean up, look at my notes
23    and then we'll be done in a few minutes.
24       MR. OHLEMEYER: Fine. Thanks.
25       MR. SOH: Let me just identify a few

Page 88

1     more records. Can you give me the next
2     couple of stickers, ma'am?
3        (Exhibits 6 and 7 marked for
4     identification.)
5  Q. Before we break, Doctor, I want to take
6     care of ministerial type things. I'm handing
7     you what was marked Exhibit 6. Can you
8     identify these for me?
9  A. These are my handwritten notes on the case.
10 Q. I'm going to hand you what's been marked
11    as Exhibit 7. Can you identify those for me,
12    please?
13 A. These are invoices in the case prior to
14    today.
15 Q. You have additional invoices that you billed
16    Mary Wheeler, Trigg, or Shook, Hardy & Bacon
17    for general causation matters in the
18    Neurontin litigation?
19 A. In Neurontin it would only be Shook, Hardy &
20    Bacon.
21 Q. I want to go over some things with you.
22    It looks like you had meetings with Mr.
23    Ohlemeyer and other attorneys for Pfizer
24    on January 21st, January 13th. I'll give
25    them back to you so you can confirm, December

Page 89

1     17th and a meeting on September 30th of
2     2009. Can you confirm that, Dr. Jacobs?
3  A. In terms of, I met with Mr. Ohlemeyer on
4     September 30th, December 17th, January 13th.
5     On these invoices those are the only dates.
6  Q. Just some wrap-up stuff that caught my eye.
7     I think you said before trial you intend
8     on, I guess, re-reading Dr. Kruszewski's
9     and Dr. Glenmullen's deposition?
10 A. Correct.
11 Q. And you intend on making some additional
12    research on Prozac and Prozac withdrawal?
13    I think that was your prior testimony.
14 A. Yes.
15 Q. Are there any other activities that you
16    plan on doing other than meeting with
17    lawyers prior to your trial testimony?
18 A. This question you asked about environmental
19    factors and suicide.
20 Q. Okay. Anything else, as you sit here today?
21 A. The only thing I can say is that when I
22    read my own deposition, there may be ideas
23    or issues that are triggered by my own
24    deposition and that I will then do research
25    on that, follow-up on that.