UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------x
In re:  NEURONTIN MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

MDL Docket No. 1629

Master File No. 04-10981

------------------------------------------------x

Judge Patti B. Saris

THIS DOCUMENT RELATES TO:

Magistrate Judge Leo T. Sorokin

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC., 04 CV 10739 (PBS)

------------------------------------------------x

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' SECOND AMENDED MOTION FOR ADMISSION OF SUMMARY EVIDENCE

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum in opposition to Plaintiffs' second amended motion to admit summaries of voluminous documents.

## ARGUMENT

Kaiser improperly seeks to prove its RICO enterprise allegations by means of a document dump on the last day of its case-in-chief.  Kaiser's counsel have had these voluminous documents in their possession for years, but have inexplicably failed to introduce through the testimony of knowledgeable witnesses.  The untenable inferences Kaiser needs the jury to draw from these documents are so complex and so far removed from the documents themselves that Kaiser required a more than 50-page brief to explain its strained interpretation to the Court.  (*See* Dkt. 2649.)  Yet Kaiser expects the jury to somehow divine its theory of the case from reading documents that were not presented through witness testimony or in any coherent fashion.  As the Court aptly noted, "I'm not going to sit and read them and figure out your theory of the case, and if I'm not, I'm worried that it will be a document dump for [the jury]."  (3/8 Tr. (Court) at 182:4-7.)

Kaiser's present motion seeks to cure the gaping holes in its proof by means of two untimely, never-disclosed exhibits: a cherry-picked "list" of purportedly relevant documents and an argumentative "summary" containing a biased selection of cherry-picked quotations plucked out of context from those documents. Kaiser intends to offer these exhibits not as mere demonstrative aids, but as substantive evidence. While Kaiser claims that these exhibits are admissible as data summaries under Federal Rule of Evidence ("FRE") 1006, they present the underlying facts in a way that is both inaccurate and prejudicial.

## I.     Kaiser's Inexcusable Delay Requires that the Untimely Exhibit Be Excluded

Kaiser's exhibits are inadmissible because they are untimely. Under Federal Rule of Civil Procedure ("FRCP") 16 and Local Rule 16.5(d)(11), Kaiser was required to identify all its proposed exhibits in the joint pre-trial memorandum, which, pursuant to this Court's scheduling order [2172], was due February 15, 2010. Deadlines in the court's scheduling order are not "'modified simply upon request,'" and can only be amended for good cause shown. *Cabana v. Forcier*, 200 F.R.D. 9, 15 (D. Mass. Mar. 30, 2001) (citation omitted). To satisfy the good cause requirement, Plaintiffs must provide a plausible and valid reason for their delay. *See, e.g.*, *Berwind Prop. Group, Inc. v. Envtl. Mgmt. Group, Inc.*, 233 F.R.D. 62, 67 (D. Mass. 2005). Good cause does not exist where Plaintiffs' proposed amendments to the scheduling order are based on facts already known or that should have been known in the exercise of diligence. *Id.*; *see also, e.g.*, *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004) ("Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment."). Here, Plaintiffs' proposed exhibits are based on documents they have had in their possession long before the Court-ordered deadline. Thus, Kaiser cannot show good cause for the delay, and its untimely exhibits must be excluded.

## II.    Kaiser Cannot Satisfy the Requirements of FRE 1006

Kaiser's exhibits are inadmissible because they do not meet the requirements of FRE 1006, and must therefore be excluded under the best evidence rule, FRE 1002. Kaiser's Exhibit A [2656-2] is improper because it presents a biased and incomplete set of documents selected

based on Kaiser's counsel's arguments. It is one thing for Kaiser's counsel to emphasize particular documents during closing argument, with jurors free to take notes or not as they see fit; it is quite another thing to send Kaiser's counsel's list back to the jury room as substantive evidence regarding which documents are entitled to weight and which are not.

Kaiser's Exhibit B is even more objectionable. Indeed, the Court has already ruled that such argumentative summaries are inadmissible and that Kaiser cannot "build [its] case with the little snippets of the quotes." (3/8 Tr. (Court) at 182:24-25.) Kaiser's notion of neutrality apparently entails presenting cherry-picked quotes taken out of context from cherry-picked documents, all selected based on Kaiser's partisan theory of the case. These biased, one-sided documents are not what FRE 1006 contemplates. Further, it is contrary to the Court's explicit instruction that "[y]ou can't have argument in a summary document." (3/8 Tr. (Court) at 163:22-23.)

In its argument to the contrary, Kaiser continues to misstate the holding of one of its principal authorities, despite the fact that Pfizer pointed this error out in its previous memorandum. (*See* Dkt. 2631 at 2-3.) Kaiser cites *United States v. Taylor* as "**upholding** admission of organizational charts" in a conspiracy case. (Pl. Mem. at 5 (emphasis added).) As Pfizer has already pointed out once, however, the Fifth Circuit held that the trial court's "admission of the chart unduly prejudiced [defendant's] trial and ***requires a reversal***." *Taylor*, 210 F.2d at 316 (emphasis added). The *Taylor* court was faced with a similar situation as here, where "admission of the chart allowed the [proponent] to assume that which it was required to prove … as operative facts of the alleged offense." *Id.* The same concerns apply with regard to Kaiser's exhibits, and they likewise must be excluded.

"Charts admitted under Rule 1006 are explicitly intended to reflect the contents of the documents they summarize and typically are substitutes in evidence for the voluminous originals." *United States v. Milkiewicz*, 470 F.3d 390, 398 (1st Cir. 2006). "Consequently, they must fairly represent the underlying documents and be '"accurate and nonprejudicial."'" *Id.* (quoting *United States v. Bray*, 139 F.3d 1104, 1111 (6th Cir. 2008)). "Care must be taken to

3

insure that summaries accurately reflect the contents of the underlying documents and ***do not . . . unfairly emphasize part of the proponent's proof*** or create the impression that disputed facts have been conclusively established or that inferences have been directly proved." *United States v. Drougas*, 748 F.2d 8, 25 (1st Cir. 1984) (emphasis added). The proposed charts offered by Kaiser do not present a mere *summary*. Instead, they constitute a biased and highly misleading *interpretation* of the underlying documents, which FRE 1006 does not permit. *See, e.g.*, *State Office Sys., Inc. v. Olivetti Corp.*, 762 F.2d 843, 845-46 (10th Cir. 1985) (exhibits containing "interpretations of past data" rather than a "simple compilation" were inadmissible under Rule 1006); *Gomez v. Great Lakes Steel Div. Nat'l Steel Corp.*, 803 F.2d 250, 258 (6th Cir. 1986) (exhibit purporting to be summary improperly admitted because it was not a "simple compilation of voluminous records"). The fact that these biased documents are presented as neutral merely compounds the danger of jury confusion and necessitates exclusion under Rule 403.

Moreover, as a predicate to admissibility under FRE 1006, the purported "accurate and nonprejudicial" nature of Kaiser's exhibits – including the determination of whether further context is needed for any of the numerous quotations – would have to be determined document-by-document. Considering that Kaiser only presented its exhibits yesterday, Defendant has been prejudiced by a lack of a reasonable opportunity to review them and confirm that the quotations contained in Kaiser's Exhibit B accurately reflect the underlying documents. Also, under the Rule of Completeness, an opposing party is permitted to offer *contemporaneously* "any other part or any other writing [that] ought in fairness . . . be considered . . . ." Fed. R. Evid. 106. This process would more than negate any ostensible time savings. In addition, "[c]ourts have cautioned that Rule 1006 is 'not a back-door vehicle for the introduction of evidence which is otherwise inadmissible.'" *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007) (quoting *Peat, Inc. v. Vanguard Research Inc.*, 378 F.3d 1154, 1160 (11th Cir. 2004).

### III. Kaiser's Complaints Regarding Time Constraints and Witness Availability Are Irrelevant and Without Merit

Unable to demonstrate good cause under FRCP 16 or satisfy the standards for

4

admissibility under FRE 1006, Kaiser attempts to blame the Court and Defendants for its own failure to prove essential elements of its RICO claims. These arguments have no bearing on admissibility and no basis in reality.

First, Kaiser blames the Court, complaining that it "has been asked in this bellwether[1] trial to present all of its evidence concerning a complex and sprawling medical marketing fraud in 28 hours." (Pl. Mem. at 1.) How quickly Kaiser forgets that *Kaiser itself* urged the Court to set a trial with a strictly limited time frame, which, because of an already-scheduled late March products liability trial, allowed no margin for error. Defendants objected to Kaiser's trial plan on precisely this basis:

> Despite their failure to provide any details regarding what a trial would actually "look like," and despite the fact that this would quite possibly be the first trial of its kind in the history of American jurisprudence, Plaintiffs ask this Court to take it on faith that the entire trial could be completed in exactly four weeks with absolutely no margin for error. The serious scheduling challenges presented by the recent *Bulger* trial suggest that this is highly unrealistic.

(Defs' Surreply to Proposed Trial Plan [2156-2] at 2.) Over Defendants' objection, the Court adopted *Kaiser's* trial plan. Kaiser now finds itself hoisted on its own petard, the victim of its own ill-advised pre-trial posturing.

Next, Kaiser blames Defendants, arguing that Defendants "kn[ew] that Kaiser was relying upon [Mr. Knapp's] appearance to move the very documents at issue here into evidence." (Pl. Mem. at 3-4.) The Court has already rejected this argument: "No, you never thought he was going to be part of your case. You thought he was going to be part of their case." (3/2 Tr. (Court) at 7:3-5.)[2] Kaiser waited until shortly before trial (February 15) before ever raising the

---

[1] This trial is not a "bellwether" to anything. It is specific to Kaiser's claims. Kaiser's co-plaintiffs' claims have been dismissed, and the Court's summary judgment decision sets a standard that the so-called "Class TPPs" cannot survive. *See In re Neurontin Mktg. & Sales Practices. Litig.*, No. 04-CV-10981, 2010 WL 53568, at *9-10 (D. Mass. Jan. 8, 2010).

[2] Kaiser also pointlessly argues about the territorial limits of subpoena power (Pl. Mem. at 4 n.1), even though the Court specifically noted that "[t]hat's not the argument [Defendants] raised" in their motion to quash (3/2 Tr. (Court) at 6:21). The Court quashed Kaiser's trial subpoena because of *when* it was filed, not *where*.

5

issue of Mr. Knapp's live appearance in Kaiser's case. Kaiser then served an untimely trial subpoena, and defense counsel accepted service in the spirit of cooperation – cooperation that has not been reciprocated by Kaiser.[3] The Court properly quashed the subpoena as untimely: "It's all last minute. This is last-minute skirmishing. … [I]t's too late in the game to be subpoenaing people and having a debate about it …." (3/2 Tr. (Court) at 10:15-22.) This reasoning applies with equal force to Kaiser's untimely, yet-to-be-produced summary.

In any event, Mr. Knapp's availability is a red herring. In addition to Mr. Knapp, Kaiser's deposition designations [Dkts. 2500-5 & 2500-6] include testimony from numerous witnesses that Kaiser's other pre-trial filings have described as being knowledgeable about "marketing" issues [2179]. These include twenty-two Warner-Lamber/Pfizer witnesses,[4] four Cline Davis witnesses,[5] and two Medical Action Communications witnesses.[6] In addition, Kaiser introduced several marketing documents through Dr. Abramson and other experts, whose complete lack of personal knowledge regarding those documents did not stop them from commenting on the documents' purportedly meaning. Indeed, the Court allowed Dr. Abramson to testify about internal corporate documents over Defendants' objection because "[h]e's their document summary witness basically." (2/24 Tr. (Court) at 10:17-20.)

---

[3] Throughout this litigation, Kaiser has made every effort to game the system in order to selectively procure the trial testimony of its own witnesses while depriving Pfizer of any comparable access to similarly situated witnesses. It has done so by filing this case in an inconvenient venue [Dkt. 31], opposing Pfizer's motion to transfer venue to the state where the vast majority of witnesses reside [Dkt. 2194 at 9-17], and selectively procuring the trial testimony of strategically chosen PMG doctors [Dkt. 2179 at 6-7], while refusing to lift a finger to procure the attendance of other PMG doctors sought by Pfizer [2392]. Most recently, Kaiser deprived Pfizer of the opportunity to cross-examine Albert Carver, a key witness in this case, by representing that he would testify as Kaiser's corporate representative, and waiting until Mr. Carver was on a plane out of the country before advising Defendants and the Court that Mr. Carver would not testify.

[4] The Warner-Lamber/Pfizer witnesses are: John Boris, George Cavic, John Crook, Christopher DeSimone, Suzanne Doft, Christopher Dowd, Allison Fannon, Timothy George, Robert Glanzman, Christine Grogan, Frances Kivel, Philip Magistro, Nancy Mancini, John Marino, Tamela Martin, Avanish Mishra, Joseph Pieroni, John Richter, Leslie Tive, Adrian Vega, Timothy Windom, Margaret Yoder.

[5] The Cline Davis witnesses are: Clare Cheng, Bina O'Brien, Jennifer Samuels, Connor Smith.

[6] The Medical Action Communications witnesses are David Cooper and Stephen Valerio, both of whom were designated late.

Kaiser's failure of forward planning, inefficient use of available trial time, and other strategic blunders are not grounds for re-writing the rules of evidence or downgrading Kaiser's substantive burden of proving a RICO claim – a burden Kaiser all but concedes it cannot satisfy.

## CONCLUSION

For all of the foregoing reasons, Pfizer respectfully requests that the Court deny Plaintiffs' motion in its entirety.

Dated: March 12, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:   /s/ Mark S. Cheffo
        Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Email:  Mark.Cheffo@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:   /s/ Raoul D. Kennedy
        Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel:  (415) 984-6400
Email:  Raoul.Kennedy@skadden.com

| CERTIFICATE OF SERVICE | WHEELER TRIGG O'DONNELL LLP |
|---|---|
| I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 12, 2010.<br><br>　　　　/s/ Mark S. Cheffo<br>　　　　Mark S. Cheffo | By:　/s/ James E. Hooper<br>　　　James E. Hooper<br><br>1801 California Street<br>Suite 3600<br>Denver, CO 80202-2617<br>Tel:  (303) 244-1800<br>Email:  hooper@wtotrial.com<br><br>*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC* |