UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS)

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

**DEFENDANTS' MEMORANDUM IN SUPPORT OF OBJECTIONS TO PRE-MERGER STATEMENTS MADE BY PFIZER EMPLOYEES**

Defendants Pfizer Inc ("Pfizer") and Warner-Lambert Company LLC ("Warner Lambert"), respectfully submit this memorandum in opposition to Plaintiffs' attempt to admit statements made by Pfizer employees before the 2000 merger between Pfizer and Warner-Lambert Company.

## ARGUMENT

### I. The July 21, 1999 Email From Christopher Wohlberg Is Inadmissible Hearsay

Plaintiffs seek to admit an internally circulated Pfizer email, dated July 21, 1999, which contains statements made by Christopher Wohlberg, who was never an employee of Warner-Lambert Company, as a party-opponent admission. Admission of such evidence should not be permitted as any statements contained in the email constitute inadmissible hearsay. As these statements do not fall under any recognized exception to the hearsay rule nor are they admissible as a party-opponent admission, they should be excluded.

This is an instance where it is important to keep distinct the two defendants in this case. Neurontin was developed and marketed by Parke-Davis, a division of Warner-Lambert Company ("WLC"). Pfizer acquired WLC in 2000. Defendant Warner-Lambert Company LLC ("Warner Lambert") is the successor to WLC and is wholly owned by Pfizer. To determine whether the statement falls within an exception to the hearsay rule, two separate inquiries must be conducted: (1) is the statement admissible against Warner-Lambert and (2) is the statement admissible against Pfizer.

The answer to the first question is clearly no. While out-of-court statements may be admissible as party-opponent admission under Federal Rule of Evidence 801(d)(2),[1] it is well-settled that "[p]arties wishing to introduce statements into evidence under the aegis of Rule 801(d)(2)(D) must establish, by a preponderance of the evidence, (1) that an agency relationship existed; (2) that the statements were made during the course of the relationship; and (3) that the statements relate to matters within the scope of the agency." *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 116 (1st Cir. 2003). At the time of the statement in question, Mr. Wohlberg was employed by Pfizer, and not WLC or Warner-Lambert. As a result, his statements are not admissible against Warner-Lambert.

Likewise, the statements are not admissible against Pfizer. At the time the statement was made by Mr. Wohlberg, Pfizer had no involvement with the marketing of Neurontin. Mr. Wohlberg's email reflects no more than a gratuitous comment about a competitor's product, in response to a report of a positive study. Significantly, the positive study that is the subject of the email concerned social phobia, a condition for which Plaintiffs' expert psychiatrist concedes there is Level One evidence of efficacy. (2/26 Tr. (Barkin) at 70:24-71:2.) In this context, Mr. Wohlberg's email cannot be considered a statement within the scope of his agency.

"There is a critical difference [for purposes of Rule 801(d)(2)(D)] between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999). At the time the statement was made, Neurontin was not a product for which Mr. Wohlberg had any responsibility, because it was not even a Pfizer

[1] Federal Rule of Evidence 801 provides that a statement is not hearsay if: "The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or ***(D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship***, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2) (emphasis added).

product. Not every random remark made by an employee constitutes a statement made within the scope of his or her agency. As the court explained in *Jacklyn*:

> In this case, [the declarant] was a district manager for defendant and was plaintiff's direct supervisor from 1984 until 1989. He was not, however, her direct supervisor at any time after [another employee] became the regional manager in 1992, and was not involved in any of the critical appraisals of her performance that preceded her leaving work in April 1994. Plaintiff failed to show that [the declarant's] statement concerned matter within the scope of his agency or employment.

*Id.* at 927-28; *cf. Oki Am., Inc. v. Microtech Int'l, Inc.*, 872 F.2d 312, 314 (9th Cir. 1988) (statement by sales manager regarding defendant customer not within scope of employment). In this case, where Mr. Wohlberg was expressing a personal opinion about a competitor's product to an "FYI" email, Plaintiffs cannot make the requisite showing.

Similarly, the document cannot be treated as a business record. For example, in *United States v. Ferber*, 966 F. Supp. 90 (D. Mass. 1997), the court found that the email message in question did not qualify as a business record and stated that "[w]ere it otherwise, virtually any document found in the files of a business which pertained in any way to the functioning of that business would be admitted willy-nilly as a business record. This is not the law." *Id.* at 99. The court held that "in order for a document to be admitted as a business record, there must be some evidence of a business duty to make and regularly maintain records of this type," and "while it may have been [an employee's] routine business practice to make such records, there was no sufficient evidence that [the employer] required such records to be maintained." *Id.* at 98; s*ee also Park W. Radiology v. CareCore Nat'l LLC,* No. 06 Civ. 13516, 2009 WL 4277106, at *14 (S.D.N.Y. Nov. 19, 2009) (holding that business records exception does not apply to emails as employees were not under an obligation to create the emails as a record of regularly conducted business activity). Clearly Mr. Wohlberg was not under a business duty to make or maintain the email Plaintiff seeks to admit. As such, the email must be excluded.

## II. The Email Should Be Excluded As Irrelevant and Unfairly Prejudicial

Mr. Wohlberg's offhand remarks about a competitor's product are irrelevant to the issues in this litigation and any limited relevance is outweighed by the risk of unfair prejudice. *See* Fed. R. Evid. 403 (excluding relevant evidence if its probative value is substantially outweighed by unfair prejudice). As discussed above, Mr. Wohlberg was responding to an "FYI" email about a recent study on the efficacy of gabapentin to treat social phobia. Social phobia is not a condition for which Plaintiffs seek to recover in this litigation[2] and even Plaintiffs' expert psychiatrist concedes that double blind randomized control trials support the efficacy of gabapentin as a treatment for social phobia. (2/26 Tr. (Barkin) at 70:24-71:2.) Even if this were not true, Mr. Wohlberg's statement is not competent evidence on the issue of efficacy, which is the issue Plaintiffs seek to offer it on. If the email had any relevance at all, which it does not, it should nonetheless be excluded as unfairly prejudicial. *Cf. Skibniewski v. Am. Home Prods. Corp.*, No. 99-0842-CV-W-FJG, 2004 WL 5628157, at *2 (W.D. Mo. Apr. 1, 2004) (excluding an email in which an employee made a "flippant remark" to a fellow employee as unfairly prejudicial). Certainly, Mr. Wohlberg's statement is no more probative and no less prejudicial than evidence regarding Dr. Hartman that this Court has excluded.

## **CONCLUSION**

For all of the foregoing reasons, Pfizer respectfully requests that the Court reject Plaintiffs' attempt to admit statements made by Pfizer employees before the 2000 merger between Pfizer and Warner-Lambert. Pfizer further requests that Mr. Greene's questions and David Franklin's answer regarding this document be stricken from the record and the jury instructed to disregard it. (3/12 Tr. (Franklin) at 101:9-101:13.)

---

[2] Plaintiffs are not making an explicit claim for social phobia. However, the evidence shows that social phobia is frequently comorbid with bipolar disorder. Plaintiffs are unable to identify and disaggregate from the bipolar damages sought those instances where a psychiatrist prescribed Neurontin for social phobia, but linked the prescription to the primary diagnosis of bipolar disorder.

Dated: March 14, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Email: Mark.Cheffo@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Raoul D. Kennedy
Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400
Email: Raoul.Kennedy@skadden.com

WHEELER TRIGG O'DONNELL LLP

By: /s/ James E. Hooper
James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800
Email: hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 14, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo