UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | :  MDL Docket No. 1629 <br> : <br> :  Master File No. 04-10981 <br> : |
| THIS DOCUMENT RELATES TO: | :  Judge Patti B. Saris <br> : <br> :  Magistrate Judge Leo T. Sorokin <br> : |
| *Shearer v. Pfizer Inc., et al.* <br> Case No. 1:07-cv-11428-PBS | : <br> : <br> : |

**DEFENDANTS' TRIAL BRIEF**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

ARGUMENT ..............................................................................................................................1

I.  Plaintiff's Remaining Claims Are Subsumed By Her Failure-To-Warn Claim .................1

II.  Plaintiff Bears the Burden of Proving Medical Causation...................................................4

    A.  Plaintiff Must Prove That Neurontin Was a "But-For" Cause of Mr.
        Shearer's Suicide ......................................................................................................4

    B.  Plaintiff Must Establish General Causation..............................................................6

    C.  Plaintiff Must Establish Specific Causation .............................................................7

III.  Pfizer Had No Duty To Warn of Information It Did Not Know and Could Not
      Have Known at the Time Mr. Shearer Was Prescribed and Took Neurontin.....................8

IV.  Plaintiff Cannot Establish Proximate or Legal Causation .................................................10

    A.  Plaintiff Cannot Prove That a Different Warning Would Have Changed
        the Result ................................................................................................................10

    B.  Plaintiff Cannot Overcome the Presumption That Mr. Shearer's Choice
        Was an Intervening Cause of His Suicide...............................................................13

V.  Punitive Damages .............................................................................................................15

    A.  The Standard Governing Punitive Damages...........................................................15

    B.  The Jury Must Be Instructed Consistent With the Supreme Court's
        Dictates in *Campbell* and *Philip Morris* ...............................................................19

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Altman v. Aronson*, 121 N.E. 505 (Mass. 1919) ...........................................................17

*Anderson v. Owens-Illinois, Inc.*, 799 F.2d 1 (1st Cir. 1986) ........................................8

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996)...........................................19

*Baghdady v. Lubin & Meyer, P.C.*, 55 Mass. App. Ct. 316, 770 N.E.2d 513 (Mass. Ct.
   App. 2002) ...................................................................................................................5

*In re Baycol Products Liabiltiy Litigation*, 2010 WL 711972 (8th Cir. Mar. 3, 2010) ...................7

*Beer v. Upjohn Co.*, 943 S.W.2d 691 (Mo. Ct. App. 1997)...........................................14

*Chamian v. Sharplan Lasers, Inc.*, No. 200000171, 2004 WL 2341569 (Mass. Super. Ct.
   Sept. 24, 2004) .................................................................................................... 10-11

*City of Lowell v. Mass. Bonding & Insurance Co.*, 47 N.E.2d 265 (Mass. 1943).........................15

*Computer System Engineering, Inc. v. Quantel Corp.*, 740 F.2d 59 (1st Cir. 1984) ....................15

*Cottam v. CVS Pharmacy*, 436 Mass. 316, 764 N.E.2d 814 (2002) .............................................10

*Coughlin v. Titus & Bean Graphics, Inc.*, 767 N.E.2d 106 (Mass. App. Ct. 2002) .....................17

*Daniels v. New York, New Haven & Hartford Rail Road*, 183 Mass. 393, 67 N.E. 424
   (1903)................................................................................................................... 13-15

*Dartt v. Browning-Ferris Industrial, Inc.*, 427 Mass. 1, 691 N.E.2d 526 (1998).........................15

*Delaney v. Reynolds*, 63 Mass. App. Ct. 239, 825 N.E.2d 554 (App. Ct. 2005) ...........................14

*In re Diet Drugs Products Liability Litigation*, No. MDL 1203, 2001 WL 454586 (E.D.
   Pa. Feb. 1, 2001) .........................................................................................................6

*Dietz v. SmithKline Beecham Corp.*, 2010 WL 744273, at *1 (11th Cir. Mar. 5, 2010)...............12

*In re Dube's Case*, 70 Mass. App. Ct. 121, 872 N.E.2d 1171 (App. Ct. 2007).............................14

*Eck v. Parke, Davis & Co.*, 256 F.3d 1013 (10th Cir. 2001).........................................................10

*Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365 (N.D. Ill. 1998)..........................................12

*Freyermuth v. Lutfy*, 376 Mass. 612, 382 N.E.2d 1059 (1978) ...................................................14

*Garside v. Osco Drug, Inc.*, 976 F.2d 77 (1st Cir. 1992) .................................................... 2-3, 10

*Glastetter v. Novartis Pharmaceuticals Corp.*, 252 F.3d 986 (8th Cir. 2001) ................................ 6

*Goodrow v. Lane Bryant, Inc.*, 732 N.E.2d 289 (Mass. 2000) ........................................... 15-16, 18

*Haughton v. Hill Laboratories, Inc.*, No. 06-11217, 2007 WL 2484889 (D. Mass. Aug. 30, 2007) ................................................................................................................................. 11

*Held v. Bail*, 28 Mass. App. Ct. 919, 547 N.E.2d 336 (Mass. App. Ct. 1989) ............................ 6

*Hoffman v. Houghton Chemical Corp.*, 434 Mass. 624, 751 N.E.2d 848 (2001) ........................... 2

*Honda Motor Co. v. Oberg*, 512 U.S. 415 (1994) ....................................................................... 18

*JSB Industries, Inc. v. Nexus Payroll Services, Inc.*, 463 F. Supp. 2d 103 (D. Mass. 2006) .......... 4

*Jones v. Walter Kidde Portable Equipment, Inc.*, 16 F. Supp. 2d 123 (D. Mass. 1998), *aff'd*, 183 F.3d 67 (1st Cir. 1999) ....................................................................................... 11

*Kelley v. Eli Lilly & Co.*, 517 F. Supp. 2d 99 (D.D.C. 2007) ........................................................ 2

*MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. 131, 475 N.E.2d 65 (1985) .................... 2

*Matsuyama v. Birnbaum*, 452 Mass. 1, 890 N.E.2d 819 (2008) .................................................... 5

*McClain v. Metabolife International, Inc.*, 401 F.3d 1233 (11th Cir. 2005) ................................... 6

*Merrell Dow Pharmaceuticals, Inc. v. Havner*, 907 S.W.2d 535 (Tex. App. 1995), *rev'd on other grounds*, 953 S.W.2d 706, 730 (Tex. 1997) ....................................................... 17

*Milwaukee Etc. Rail Road Co. v. Arms*, 91 U.S. 489 (1875) ....................................................... 16

*Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331 (1983) ........................................ 5

*Northeast Data System, Inc. v. McDonnell Douglas Computer System Co.*, No. 83-1179, 1991 WL 254421 (D. Mass. Nov. 29, 1991), *aff'd*, 986 F.2d 607 (1st Cir. 1993) ............. 16

*Nelson v. Massachusetts Port Authority*, 55 Mass. App. Ct. 433, 771 N.E.2d 209 (App. Ct. 2002) ................................................................................................................................ 13

*In re Neurontin Marketing, Sales Practices & Products Liability Litigation*, 612 F. Supp. 2d 116 (D. Mass. 2009) ("*Neurontin I*") .............................................. *passim*

*In re Neurontin Marketing, Sales Practices & Products Liability Litigation*, 257 F.R.D. 315 (D. Mass. 2009) ("*Neurontin II*") ............................................................ 13

*In re Neurontin Marketing, Sales Practices & Products Liability Litigation*, 618 F. Supp. 2d 96 (D. Mass. 2009) ("*Neurontin III*") .............................................. *passim*

*Nix v. SmithKline Beecham Corp.*, No. CV-06-43-PHX-SMM, 2007 WL 2526402 (D. Ariz. Sept. 5, 2007) ...................................................................................................................12

*In re Norplant Contraceptive Products Liability Litigation*, 955 F. Supp. 700 (E.D. Tex. 1997), *aff'd*, 165 F.3d 374 (5th Cir. 1999)..................................................................................12

*O'Connor v. SmithKline Bio-Science Laboratories, Inc.*, 36 Mass. App. Ct. 360, 631 N.E.2d 1018 (Mass. App. Ct. 1994) ............................................................................................5

*O'Neil v. Electrolux Home Products, Inc.*, No. 06-10433, 2008 WL 2066948 (D. Mass. May 14, 2008) ...............................................................................................................................17

*Odom v. G.D. Searle & Co.*, 979 F.2d 1001 (4th Cir. 1992) ......................................................12

*Or v. Edwards*, 62 Mass. App. Ct. 475, 818 N.E.2d 163 (Mass. App. Ct. 2004)...........................5

*Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1 (1991)................................................18

*Philip Morris USA v. Williams*, 549 U.S. 346 (2007).............................................................19-20

*Pine v. Rust*, 404 Mass. 411, 535 N.E.2d 1247 (1989)...............................................................15

*Plummer v. Lederle Laboratories*, 819 F.2d 349 (2d Cir. 1987)................................................13

*Poskus v. Lombardos of Randolph, Inc.*, 423 Mass. 637, 670 N.E.2d 383 (1996)......................14

*Reinhardt v. Gulf Insurance Co.*, 489 F.3d 405 (1st Cir. 2007) ..................................................5

*Roadmaster Industrial Inc. v. Columbia Manufacturing Co.*, 893 F. Supp. 1162 (D. Mass. 1995)...................................................................................................................4

*Slaven v. City of Salem*, 386 Mass. 885, 438 N.E.2d 348 (1982) ..............................................13

*Smith v. Bell Atlantic*, 63 Mass. App. Ct. 702, 829 N.E.2d 228 (Mass. App. Ct. 2005) .........15-16

*Smith v. Wade*, 461 U.S. 30 (1983).............................................................................................16

*Sprague v. Upjohn Co.*, No. 91-40035-NMG, 1995 WL 376934 (D. Mass. May 10, 1994) ..........1

*State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003)......................19

*Swartz v. GM Corp.*, 375 Mass. 628, 378 N.E.2d 61 (1978).......................................................2

*Tate v. Canonica*, 5 Cal. Rptr. 28 (Ct. App. 1960) .....................................................................13

*Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806 (5th Cir. 1992) .........................................10-11

*Vanderwerf v. SmithKline Beecham Corp.*, 529 F. Supp. 2d 1294 (D. Kan. 2008)......................12

*Vassallo v. Baxter Healthcare Corp.*, 428 Mass. 1, 696 N.E.2d 909 (1998)....................................8

*Vaughn v. G.D. Searle & Co.*, 536 P.2d 1247 (Or. 1975) ...........................................................12

*Wheat v. Pfizer, Inc.*, 31 F.3d 340 (5th Cir. 1994).....................................................................12

*Windham v. Wyeth Laboratories, Inc.*, 786 F. Supp. 607 (S.D. Miss. 1992) ................................12

**Statutes**

Mass. Gen. Laws Ann. ch. 229, § 2 (West 2000) ............................................................. 15-16, 18

**Other Authorities**

*Massachusetts Superior Court Civil Practice Jury Instructions* § 11.1 (2d ed. 2008)....................3

Restatement (Third) of Torts § 2 cmt. n (1998)............................................................................2

Restatement (Second) of Torts § 433B cmt. b..............................................................................5

Restatement (Second) of Torts § 455 (1965)...............................................................................13

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer") respectfully submit this Trial Brief for the Court's consideration and in further support of their proposed jury instructions.[1]

## ARGUMENT

### I.   Plaintiff's Remaining Claims Are Subsumed By Her Failure-To-Warn Claim

By virtue of this Court's orders and Plaintiff's concessions, the only claim remaining in this case is failure to warn of the alleged risk of suicidality.   On May 26, 2009, this Court dismissed "all fraud claims alleging affirmative misrepresentations or a suppression of information as a part of a national marketing campaign" and allowed only claims of misrepresentation by concealment of material information about the side effects of Neurontin. *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 112 (D. Mass. 2009) ("*Neurontin III*") (Saris, J.).   Plaintiff has abandoned her claims for express warranty and violations of Massachusetts' consumer protection statute, leaving only her claims for negligence, strict liability, breach of implied warranty, and fraud by omission. (*See* Pl.'s Opp. to Mot. Summ. J. [2523] at 1.)

As argued in Pfizer's memorandum in support of its motion for summary judgment ([2457]), incorporated here by reference, all of Plaintiff's remaining claims are properly subsumed by her negligent failure-to-warn claim, and thus a single failure-to-warn instruction is warranted. (*Id.* at 16-18.)   Moreover, in product liability actions like this, courts regularly treat claims for breach of implied warranty and negligence under Massachusetts law as a single claim for negligent failure to warn.   *See Sprague v. Upjohn Co.*, No. 91-40035-NMG, 1995 WL

---

[1] Many issues in this action have previously been briefed for this Court.  Defendants incorporate by reference their prior Mot. for Summ. J. (*Shearer*) [2456]; Mot. to Exclude the Specific Causation Testimony of Doctors Drs. Glenmullen and Kruszewski (*Shearer*) [2453]; Mot. for Summ. J. (MDL) [1161]; Mot. to Exclude the Testimony of Doctors Trimble, Kruszewski and Blume on the Issue of General Causation (MDL) [1157]; Defs.' Mot. to Dismiss the Personal Injury Pls.' Claims Based Upon Allegedly Improper Marketing (MDL) [363]; Defs.' Mot. to Dismiss Product Liability Pls.' Fraud Claims Based Upon Allegedly Improper Marketing (Track One Cases) [1232], together with all memoranda of law filed in support of such motions.

376934, at *3 (D. Mass. May 10, 1994) (finding that Massachusetts and First Circuit authority in drug product liability actions directed the court to treat breach of implied warranty and negligence claims "as a consolidated, single claim of negligent failure to warn"); *Kelley v. Eli Lilly & Co.*, 517 F. Supp. 2d 99, 105-06, 108 (D.D.C. 2007) (same, applying Massachusetts law); *see also Hoffman v. Houghton Chem. Corp.*, 434 Mass. 624, 637, 751 N.E.2d 848, 859 (2001) (holding that theories of negligent failure to warn and failure to warn as a breach of warranty "are to be judged by the same standard:  the reasonableness of the defendant's actions in the circumstances"); Restatement (Third) of Torts § 2 cmt. n (1998) ("[T]wo or more factually identical failure-to-warn claims should not be submitted to the trier of fact in the same case under different doctrinal labels.").  Further, it is well established that the only strict products liability claim permitted under Massachusetts law is for breach of implied warranty under the UCC, *Swartz v. GM Corp.*, 375 Mass. 628, 630 n.4, 378 N.E.2d 61, 63 n.4 (1978), and thus Plaintiff's strict liability claim is also subsumed within her failure-to-warn theory.

Consistent with this authority, Plaintiff's fraudulent concealment claim is also subsumed by her negligent failure-to-warn claim, because the duty to disclose on which it is predicated is identical to the duty to warn physicians in prescription medication products liability cases.  As this Court has recognized, other courts have repeatedly found fraudulent concealment claims duplicative of failure-to-warn claims in actions just like this.  *See Neurontin III*, 618 F. Supp. 2d at 113.  The Court nevertheless concluded that the fraudulent concealment claims of products liability plaintiffs were independently actionable because Pfizer also had a duty to disclose Neurontin's material risks to *patients* in connection with Pfizer's alleged off-label promotion.  *See id.* at 110, 112.[2]  However, discovery in this action has now revealed that there is no causal

---

[2] Although this Court has suggested that Pfizer may also have a duty to disclose Neurontin's risks to patients where it is engaged in off-label promotion and "it knows that the plaintiff and/or his prescriber does not know or cannot reasonably discover the undisclosed facts," the Court was addressing the claims of products liability plaintiffs from several different states.  *Neurontin III*, 618 F. Supp. 2d at 110.  No such duty to warn *patients* exists under Massachusetts law, which only recognizes a duty to warn prescribing *physicians*.  *See Garside v. Osco Drug, Inc.*, 976 F.2d 77, 80 (1st Cir. 1992).  The Supreme Judicial Court has recognized just one exception to the learned intermediary rule, in the inapposite context of oral contraceptives.  *See MacDonald v. Ortho Pharm. Corp.*, 394 Mass. 131, 135, 475 N.E.2d 65, 68
*(cont'd)*

2

nexus between Pfizer's alleged off-label promotion and Plaintiff's injury, because there is no evidence connecting any marketing by Pfizer to the Neurontin prescriptions that Plaintiff claims caused Mr. Shearer's death. (*See* Mem. in Supp. of Mot. Summ. J. [2457] at 11-12.)  Nor can Plaintiff argue for a duty to disclose by virtue of Pfizer's alleged off-label promotion in other Neurontin cases or on a national scale, because this Court specifically dismissed Plaintiff's fraudulent concealment claims "to the extent they are premised on the claim of fraudulent omissions in the national advertising and marketing campaign." *Neurontin III*, 618 F. Supp. 2d at 114.  Thus, the Court's postulated legal duty to disclose risks to patients in the context of off-label promotion has not been triggered, and Plaintiff's fraudulent concealment claim may only be predicated on Pfizer's alleged "fail[ure] to disclose the risks of its drugs in the product labeling itself." *Id.* at 112.  That duty to disclose risks on the product label is identical to and coextensive with the duty to warn that underpins Plaintiff's negligent failure-to-warn claim. *See Garside v. Osco Drug, Inc.*, 976 F.2d 77, 80 (1st Cir. 1992) (manufacturers of prescription medications have a duty to warn prescribing physicians of medication's risk).  Because Pfizer's duty is the same under either theory, Plaintiff's fraudulent concealment claim is duplicative of her negligence claim and should be dismissed as such.

Separate instructions on negligent failure to warn and fraudulent omission, like separate instructions on negligence and breach of implied warranty, would unnecessarily confuse the jury and could lead to inconsistent results. *See, e.g.*, 1 *Mass. Super. Ct. Civil Practice Jury Instructions* § 11.1 (2d ed. 2008) (Intro., Judicial Commentary) ("The trial judge should always consider whether it is necessary to charge on both negligence and breach of warranty theories. . . . Charging on both theories creates the possibility of inconsistent verdicts." (citing *Hayes v. Ariens Co.*, 391 Mass. 407, 409-10, 462 N.E.2d 273, 275-76 (1984) (reversing and remanding for new trial where jury found defendant negligent but found for defendant on breach of implied warranty claim))).  Plaintiff's only effort to refute this argument is her assertion that she is permitted to

---

*(cont'd from previous page)*
(1985).

plead alternative theories of relief (Pl.'s Opp. to Mot. Summ. J. [2523] at 17), but the permissibility of alternative pleading has nothing to do with how the jury should be instructed as to the proof required on Plaintiff's claims.

As observed by this Court, Plaintiff's claim for fraudulent omission differs from her failure to warn claim in that it has the ***additional*** element of scienter. In other words, Plaintiff would have to prove everything that she must to establish her failure to warn claim – (1) that Neurontin can cause suicide; (2) that Pfizer knew or should have known of the risk of suicide prior to 2002; and (3) that Neurontin caused Mr. Shearer's suicide – but she would have to establish the additional element that Pfizer acted not only negligently, but with intent. *See Neurontin III*, 618 F. Supp. 2d at 113. In short, there is no circumstance, for example, under which a jury could properly find Defendants not liable for failure to warn but liable for fraudulent concealment. The additional element of scienter would not make Pfizer *more* liable for compensatory damages. Instead, it would be relevant, if at all, only on the issue of punitive damages.[3]

## II.    Plaintiff Bears the Burden of Proving Medical Causation

### A.    Plaintiff Must Prove That Neurontin Was a "But-For" Cause of Mr. Shearer's Suicide

As this Court has recognized, Plaintiff cannot prevail unless she can prove medical causation. To do so, she must establish both general causation, that is, that Neurontin is capable

---

[3] To the extent the Court nevertheless determines to provide a separate instruction on fraud by omission or fraudulent concealment, Plaintiff must prove each of the elements of a fraudulent misrepresentation claim, that is: "that the 'defendant [1] made a false representation of a material fact [2] with knowledge of its falsity [3] for the purpose of inducing the plaintiff to act thereon, [4] and the plaintiff relied upon the representation as true and [5] acted upon it to his damage.'" *Roadmaster Indus., Inc. v. Columbia Mfg. Co.*, 893 F. Supp. 1162, 1176 (D. Mass. 1995) (quoting *Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F. Supp. 1188, 1199 (D. Mass. 1990)). In addition, "[o]ver and above the elements of fraudulent misrepresentation, in order to establish fraudulent concealment, a plaintiff must prove that the defendant took affirmative steps to conceal defects or to prevent the plaintiff from acquiring knowledge of the defects." *Id.* at 1179; *accord JSB Indus., Inc. v. Nexus Payroll Servs., Inc.*, 463 F. Supp. 2d 103, 107 (D. Mass. 2006). "[F]ailure to disclose any nonapparent defect, without more, is not actionable on this theory." *Roadmaster Indus.*, 893 F. Supp. at 1179. As established below, because Plaintiff cannot establish that Pfizer had or should have had the knowledge sufficient to even trigger a duty to warn, she certainly cannot prove intentional concealment of safety information.

of causing suicide, and specific causation, that is, that Neurontin caused Mr. Shearer's suicide. *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 612 F. Supp. 2d 116, 123 (D. Mass. 2009) ("*Neurontin I*") (Saris, J.).

In order to meet her burden of proof on medical causation, Plaintiff must prove that Neurontin was a "but-for" cause of Mr. Shearer's suicide, and not merely, as Plaintiff has argued, that Neurontin was a contributing factor in his death. *See, e.g., Reinhardt v. Gulf Ins. Co.*, 489 F.3d 405, 412 (1st Cir. 2007) ("Under Massachusetts law, a plaintiff seeking to establish causation must show that the 'defendant's conduct was a but-for cause of [its] injury, and that [the] defendant's conduct was a 'substantial legal factor' in bringing about the alleged harm to [the] plaintiff.'" (alterations in original) (quoting *Jorgensen v. Mass. Port Auth.*, 905 F.2d 515, 524 (1st Cir. 1990))). As Massachusetts' highest court recently recognized, where, as here, the conduct of only one defendant or set of related defendants is at issue, "[t]he proper test" for causation is "whether that conduct was the but-for cause." *Matsuyama v. Birnbaum*, 452 Mass. 1, 31, 890 N.E.2d 819, 842 (2008); *see also Or v. Edwards*, 62 Mass. App. Ct. 475, 485 & n.16, 818 N.E.2d 163, 171 & n.16 (App. Ct. 2004) (applying "but-for," rather than "substantial causative factor," formulation of factual cause to negligence claim involving single set of defendants); *Baghdady v. Lubin & Meyer, P.C.*, 55 Mass. App. Ct. 316, 320, 770 N.E.2d 513, 517 (App. Ct. 2002) (affirming "but-for" causation instruction in negligence action).

A causal connection between Neurontin and Mr. Shearer's suicide "'cannot be left to the jury's conjecture or speculation'; that is, 'it is not enough to show the mere *possibility* of a causal connection; the *probability* of such a connection must be shown.'" *Reinhardt*, 489 F.3d at 412 (quoting *Jorgensen*, 905 F.2d at 524); *accord O'Connor v. SmithKline Bio-Science Labs., Inc.*, 36 Mass. App. Ct. 360, 363, 631 N.E.2d 1018, 1020 (App. Ct. 1994). To make such a showing, Plaintiff must "'introduce evidence from which reasonable men may conclude that it is more probable that [the suicide] was caused by [Neurontin] than that it was not.'" *Mullins v. Pine Manor Coll.*, 389 Mass. 47, 58, 449 N.E.2d 331, 339 (1983) (quoting *Carey v. GM Corp.*, 377 Mass. 736, 740, 387 N.E.2d 583, 585-86 (1979) (citing Restatement (Second) of Torts § 433B

5

cmt. b (1965))).

### B.    Plaintiff Must Establish General Causation

Plaintiff cannot prevail at trial unless she can make a threshold showing, through expert evidence, that "Neurontin is capable of causing suicide-related events." *Neurontin I*, 612 F. Supp. 2d at 123; *see also Held v. Bail*, 28 Mass. App. Ct. 919, 920, 547 N.E.2d 336, 338 (App. Ct. 1989) ("[I]f the causation question involves questions of medical science or technology, the jury requires the assistance of expert testimony."). Pfizer has previously briefed the issue of general causation in detail, and incorporates those arguments herein. (*See* Mem. in Supp. of Defs.' Mot. to Exclude [1158]; Mem. in Supp. of Defs.' Mot. for Summ. J. [1162].) As Pfizer has argued and will establish at trial, Plaintiff cannot satisfy her burden to prove general causation because the experts on which she relies have employed flawed methodologies in reaching their conclusions and because the overwhelming weight of reliable, epidemiologic evidence shows *no association* between Neurontin and suicide-related events.

Plaintiff's experts rely not upon controlled clinical trials to support their opinions, but upon anecdotal adverse event data, which numerous courts have recognized cannot establish causation. *See, e.g.*, *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *15 (E.D. Pa. Feb. 1, 2001) (collecting cases). Likewise, evidence of the FDA's 2008 Alert and meta-analysis of data on antiepileptic drugs (AEDs), and any post-2004 regulatory action relating to Neurontin's labeling, proves neither causation nor failure to warn. Initially, "the decision by the FDA to require warnings on a drug label, without more, does not suffice to establish causation" because "the FDA often uses a different standard than a court does to evaluate evidence of causation in a products liability action." *Neurontin I*, 612 F. Supp. 2d at 136; *see also Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 991 (8th Cir. 2001) (finding FDA regulatory "balancing" and warnings "irrelevant in determining the threshold question" of causation). Moreover, the FDA Alert is not based on specific conclusions about Neurontin specifically, but rather on analysis of pooled or combined placebo-controlled clinical trial data for eleven different AEDs. The

"pooled" data set that produced those figures is comprised of the aggregated data for eleven different drugs with different pharmacologic properties, chemical structures, mechanisms of action and safety profiles.  Significantly, the FDA pooled data is inconsistent with Neurontin-specific data.[4]

### C.    Plaintiff Must Establish Specific Causation

Even if Plaintiff could satisfy her burden of proof on general causation, she cannot prevail at trial unless she can also prove, through expert testimony, that it is more probable than not that Neurontin, rather than any of Mr. Shearer's many preexisting suicide risk factors, caused his suicide.  This issue too has been presented to the Court, and Pfizer incorporates herein its prior briefing.  (*See* Mem. in Supp. of Mot. to Exclude [2454].)  As with Plaintiff's experts on general causation, and independent of this Court's *Daubert* analysis, the many critical flaws in the methodology and credibility of Plaintiff's specific causation experts, Drs. Joseph Glenmullen and Stefan Kruszewski, preclude a finding of causation under Massachusetts law.  Among other things, Plaintiff's experts attempted to rule out other potential causes of Mr. Shearer's suicide based entirely on invalid reasoning, including circular reasoning and *post hoc ergo propter hoc* fallacies.  (*See id.* at 5-14.)  Moreover, the factual claims of Plaintiff's experts that Mr. Shearer's depression and anxiety manifested after his ingestion of Neurontin is "unsupported by the record," because Mr. Shearer's "medical history reveals a long battle" with depression and anxiety.  *See In re Baycol Prods. Liab. Litig.*, 2010 WL 711972, at *6 (8th Cir. Mar. 3, 2010) (to be published in F.3d) (affirming exclusion of similar expert testimony on specific causation based on *post hoc* reasoning).  Likewise, the attempt of these experts to save their opinions by characterizing Mr. Shearer's post-Neurontin depression as somehow different in kind from his pre-Neurontin depression is simply a "conclusory statement[] without sufficient evidentiary support."  *Id.*

---

[4] The Court has acknowledged that Pfizer's expert, Dr. Robert Gibbons, "has presented a powerful critique of the [FDA meta-analysis]," Plaintiff's primary evidence on causation.  *Neurontin I*, 612 F. Supp. 2d at 139.

III.   **Pfizer Had No Duty To Warn of Information It Did Not Know and Could Not Have Known at the Time Mr. Shearer Was Prescribed and Took Neurontin**

Plaintiff's claims also fail on the independent ground that Pfizer had no duty to warn, at the time that Mr. Shearer was prescribed and took Neurontin (between October 2000 and February 2002), of information about an alleged risk of suicidal events that Pfizer neither knew nor was capable of knowing.  It is axiomatic that a defendant cannot be liable for failing to warn of alleged risks that it did not know, and could not have known, through the exercise of reasonable care.  *See, e.g., Anderson v. Owens-Illinois, Inc.*, 799 F.2d 1, 2 (1st Cir. 1986) (duty to warn extends only to such dangers or defects about which a manufacturer either actually knew or about which it reasonably should have known, based on the state of medical and scientific knowledge in the field at the time period relevant to the claim); *accord Vassallo v. Baxter Healthcare Corp.*, 428 Mass. 1, 20-21, 696 N.E.2d 909, 922-23 (1998).

As this Court has observed, "[t]he 'gold standard' for determining the relationship between a drug and a health outcome is a randomized, double-blind, placebo-controlled clinical trial." *Neurontin I*, 612 F. Supp. 2d at 125.  Here, it is undisputed that the controlled clinical data for Neurontin fail to show a statistically significant increased risk of suicidal events.  *See id.* at 132.  In fact, Plaintiff and her experts have repeatedly admitted that the Neurontin-specific clinical trial data show *no statistically significant increased risk of*, or association with, suicide-related events.  Plaintiff's experts, like the FDA, rely on the *pooled* meta-analysis of clinical trial data for eleven different AEDs, which resulted in the 2008 FDA Alert and, ultimately, the 2008 revised class-wide AED warnings on suicidal events.  But Pfizer obviously did not possess such data on other AEDs, from which both the FDA and Plaintiff's experts have extrapolated, *see id.* at 144, prior to the FDA Alert, much less in 2000 through 2002, at the time Neurontin was prescribed to and taken by Mr. Shearer.  Indeed, Plaintiff's claims pre-date, by many years, the FDA Alert and meta-analysis, on which Plaintiff's experts' opinions, and the revised FDA warning, are based.  Plaintiff's experts cannot point to any other epidemiological study in support of their opinions that Neurontin can cause suicide, or any reliable scientific evidence of

causation that existed, and should have been known to Pfizer, at the time period relevant to this action.  *See id.* at 133-37.

Plaintiff cannot, in the undisputed absence of any evidence of an association in the controlled clinical trial data for Neurontin, or any other controlled epidemiological data pre-dating the FDA's 2008 meta-analysis, rely on mere cherry-picked anecdotal evidence, such as case reports and adverse event reports, to satisfy her burden to show that Pfizer had knowledge triggering a duty to warn about suicide.  As this Court recognized in its *Daubert* ruling on general causation, such evidence cannot, on its own, establish an association between a drug and a side effect, much less demonstrate a causal relationship, because there is no control group.  *See Neurontin I*, 612 F. Supp. 2d at 137, 153, 157.  (*See also* Letter from Russell Katz, M.D., Food and Drug Administration, to Andrew G. Finkelstein, dated Apr. 12, 2005 [1917-2] (responding to Plaintiff's counsel's letter providing "MedWatch forms of patients whom [Mr. Finkelstein] state[d] committed suicide while being treated with Neurontin" and emphasizing that, "in the absence of an appropriate control group, it will be difficult, if not impossible, to assess the role of any other factors that might explain these events, such as concomitant medications"); E-mail from Donald Dobbs, Food and Drug Administration to Alexander Ruggieri, M.D., dated Apr. 1, 2008 [1917-1] ("[T]he agency does not believe that spontaneous post-marketing reports can be interpreted appropriately in this situation.  Patients taking these drugs have a high background rate of suicidal thoughts/behaviors, and it is not possible to tell from AERS reports, whether the drug caused them.  In the agency's view, the only way to establish whether or not the drugs are responsible for suicidality is to analyze controlled trial data.").)

In sum, Pfizer cannot be held liable for failing to warn Mr. Shearer's prescribing doctors of a risk of suicide when the evidence on which Plaintiff relies to support her arguments on causation did not become available until many years later.

IV.    **Plaintiff Cannot Establish Proximate or Legal Causation**

A.    **Plaintiff Cannot Prove That a Different Warning Would Have Changed the Result**

Because all of Plaintiff's claims are based on the purported failure to warn of risks associated with a prescription drug, they are governed by the learned intermediary rule, which provides that "'a prescription drug manufacturer's duty to warn of dangers associated with its product runs only to the physician; it is the physician's duty to warn the ultimate consumer.'" *Cottam v. CVS Pharmacy*, 436 Mass. 316, 321, 764 N.E.2d 814, 820 (2002) (extending learned intermediary rule to pharmacies) (citation omitted). The rationale for the rule is that "the prescribing physician, as the 'learned intermediary' standing between the manufacturer and [the] consumer/patient, is generally in the best position to evaluate the potential risks and benefits of ingesting a certain drug and to advise the patient accordingly." *Garside*, 976 F.2d at 80. Thus, to prove causation, Plaintiff must adduce "evidence that if an additional warning had been given, *it would have been heeded and a different result would have obtained.*" *Chamian v. Sharplan Lasers, Inc.*, No. 200000171, 2004 WL 2341569, at *7 (Mass. Super. Ct. Sept. 24, 2004) (granting summary judgment to defendant under learned intermediary rule for lack of such evidence) (emphasis added). Otherwise, "the physician's conduct acts as an intervening-superseding cause of the plaintiff's injury which vitiates any liability on the part of the manufacturer." *Garside*, 976 F.2d at 80.

If a plaintiff produces evidence that a defendant owed a duty to warn, Massachusetts courts will apply a heeding presumption to the learned intermediary rule, that is, a presumption that a physician would have heeded an adequate warning if it had been given. *See id.* at 81. However, "'heed' in this context means only that the learned intermediary would have incorporated the 'additional' risk into his decisional calculus." *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 814 (5th Cir. 1992) (footnotes omitted). The Tenth Circuit has explained that a prescribing physician only "heed[s]" warnings in the sense of considering them while deciding how to prescribe the product and whether or not to tell the patient about the risk, and it is

unrealistic to presume physicians would "heed" any warning in the sense of never using the product or that they would automatically tell every patient about every risk. *See Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1021 (10th Cir. 2001).

Here, the heeding presumption is not even triggered, because, as established above in Point III, Plaintiff cannot meet her initial burden of proving that Pfizer had any duty to warn Mr. Shearer's prescribers of an alleged risk of suicidality. But even if the heeding presumption applies, it adds nothing to this case because Mr. Shearer's prescribers testified that they would have taken an additional warning into account. (*See* Angevine Dep. [2459-24] at 111:8-112:12; Sullivan Dep. [2459-25] at 101:16-102:2, 103:7-16.)

More important, neither this testimony, nor the heeding presumption, go to Plaintiff's burden of proving causation, because Plaintiff must "demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff." *Thomas*, 949 F.2d at 814. Accordingly, even under the heeding presumption, a plaintiff must "offer evidence that would . . . justif[y] the jury in concluding that if the warnings had been given and heeded, the outcome would have been different." *Jones v. Walter Kidde Portable Equip., Inc.*, 16 F. Supp. 2d 123, 125 (D. Mass. 1998) (O'Toole, J.), *aff'd*, 183 F.3d 67 (1st Cir. 1999). In *Jones*, a failure-to-warn case involving a medical device, the court applied the heeding presumption and inferred that the plaintiff's physicians would have considered additional warnings, but it nevertheless granted judgment as a matter of law because the plaintiff had offered no evidence that merely considering the additional warning would have changed the outcome. *Id.*; *see also Haughton v. Hill Labs., Inc.*, No. 06-11217-RGS, 2007 WL 2484889, at *2 (D. Mass. Aug. 30, 2007) (Stearns, J.) (granting summary judgment where there was "no evidence that [plaintiff's] doctors were unaware of the risks or that their decision to prescribe [the medication] for [plaintiff] would have been influenced by any additional instructions or warnings"); *accord Chamian*, 2004 WL 2341569, at *7.[5]

---

[5] *See also, e.g., Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 812 (5th Cir. 1992) ("[T]he plaintiff must establish that an adequate warning would have convinced the treating physician not to
(cont'd)

As set forth more fully in Pfizer's briefing in support of its motion for summary judgment, Plaintiff has no evidence that an additional warning on the product label would have affected Mr. Shearer's prescribing doctors' decision to prescribe Neurontin. Indeed, both Dr. Angevine and Dr. Sullivan testified that they do not know what they would have done if a different warning had been provided for Neurontin in 2000. (*See* Angevine Dep. [2459-24] at 111:8-112:12; Sullivan Dep. [2459-25] at 102:14-20.) Moreover, Dr. Hynes specifically testified that he still believes that prescribing Neurontin to Mr. Shearer "was appropriate." (Hynes Dep. [2459-26] at 177:5-18.) Further, both Dr. Angevine and Dr. Hynes testified that they did not know if they would have passed an additional warning on to Mr. Shearer (*see* Angevine Dep. [2459-24] at 111:8-112:12; Sullivan Dep. [2459-25] at 100:9-16), and any inference that Dr. Hynes, who merely approved a Neurontin prescription issued by a resident, would have done so is purely speculative. (*See* Hynes Dep. [2576-1] at 141:15-142:8); *see also Dietz v. SmithKline Beecham Corp.*, 2010 WL 744273, at *1 (11th Cir. Mar. 5, 2010) (to be published in F.3d) (rejecting plaintiff's attempt to prove causation based on prescribing doctor's current practice of passing current labeled warnings along to patients and family members); *Vanderwerf v. SmithKline Beecham Corp.*, 529 F. Supp. 2d 1294, 1313-14 & n.23 (D. Kan. 2008). Nor can Plaintiff survive summary judgment by relying on allegations of fraud, because there is no evidence that

---

*(cont'd from previous page)*

prescribe the product for the plaintiff."); *Wheat v. Pfizer, Inc.*, 31 F.3d 340, 343 (5th Cir. 1994) (holding that plaintiff must show "that 'a proper warning would have changed the decision of the treating physician, *i.e.*, that but for the inadequate warning, the treating physician would not have used or prescribed the product'" (quoting *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991))); *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1003-04 (4th Cir. 1992) (affirming summary judgment where prescribing physician testified that a different warning would not have changed his decision to prescribe an intrauterine device); *Plummer v. Lederle Labs.*, 819 F.2d 349, 358-59 (2d Cir. 1987) (finding no proximate cause in the absence of evidence that different warning would have caused the physician to act differently); *Nix v. SmithKline Beecham Corp.*, No. CV-06-43-PHX-SMM, 2007 WL 2526402, at *3 (D. Ariz. Sept. 5, 2007) (same); *Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 370 (N.D. Ill. 1998) (to prove causation, there must be evidence "to show that [the] physician would not have prescribed [the medication] if the defendants had provided adequate warnings"); *In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 711 (E.D. Tex. 1997) (noting that to prove causation, there must be evidence "that a different warning would have changed the decision of the treating physicians"), *aff'd*, 165 F.3d 374 (5th Cir. 1999); *Windham v. Wyeth Labs., Inc.*, 786 F. Supp. 607, 612 (S.D. Miss. 1992) (same); *Vaughn v. G.D. Searle & Co.*, 536 P.2d 1247, 1250-51 (Or. 1975) (same).

any alleged misrepresentations by Pfizer would have affected the prescribing decisions of Mr. Shearer's physicians (*see* Reply Br. in Supp. of Mot. Summ. J. [2574] at 5-6), and this Court has consistently rejected claims of indirect influence on the medical community at large as impermissible fraud-on-the-market theories of reliance. *See Neurontin III*, 618 F. Supp. 2d at 111-12; *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315 (D. Mass. 2009) ("*Neurontin II*") (Saris, J.). Thus, as the testimony of these physicians confirms, Plaintiff cannot satisfy her burden on proximate causation.

### B.   Plaintiff Cannot Overcome the Presumption That Mr. Shearer's Choice Was an Intervening Cause of His Suicide

As Plaintiff has conceded (*see* Opp. to Mot. for Summ. J. [2523] at 11), "[a]n act of suicide resulting from a moderately intelligent power of choice, even though the choice is determined by a disordered mind, should be deemed a new and independent, efficient cause of the death that immediately ensues." *Daniels v. N.Y., New Haven & Hartford. R.R.*, 183 Mass. 393, 400, 67 N.E. 424, 426 (1903). Thus, a defendant may not be held liable unless

> the death is the result of an uncontrollable impulse, or is accomplished in delirium or frenzy caused by the [defendant], and without conscious volition to produce death, having knowledge of the physical nature and consequences of the act.

*Id.* at 399-400, 67 N.E. at 426. Massachusetts courts have repeatedly reaffirmed *Daniels* in cases like this one, where a plaintiff claims that the defendant's conduct caused someone to commit suicide. *See, e.g., Slaven v. City of Salem*, 386 Mass. 885, 887-89, 438 N.E.2d 348, 349-50 (1982) (affirming summary judgment where decedent committed suicide while in police custody); *Nelson v. Mass. Port Auth.*, 55 Mass. App. Ct. 433, 434-36, 771 N.E.2d 209, 211-212 (App. Ct. 2002) (affirming summary judgment where decedent committed suicide by jumping from Tobin Bridge, owned and operated by defendant). Indeed, *Daniels* is the landmark case among "[t]he overwhelming weight of authority" that treats suicide as an independent, intervening cause, *Tate v. Canonica*, 5 Cal. Rptr. 28, 39 (Ct. App. 1960), and its holding has been codified in the relevant Restatement provision. *See* Restatement (Second) of Torts § 455 &

reporter's notes, illus. 1 (1965) (citing *Daniels*).[6]  Likewise, courts in other jurisdictions have applied these same principles to prescription drug failure-to-warn cases and granted judgment as a matter of law to defendants where the plaintiff lacked expert evidence that the decedent "could not understand the consequences of his act or [that] he could not resist taking insane actions." *See Beer v. Upjohn Co.*, 943 S.W.2d 691, 695 (Mo. Ct. App. 1997)

The *Daniels* rule is an issue of law as to which the jury must be instructed.  Indeed, the *Daniels* rule is grounded in policy questions properly resolved as a matter of law by courts, *see Daniels*, 183 Mass. at 397-98, 67 N.E. at 425, rather than upon strictly fact-based foreseeability questions.  As the Supreme Judicial Court has recognized, "[t]here must be limits to the scope or definition of reasonable foreseeability based on considerations of policy and pragmatic judgment."  *Poskus v. Lombardo's of Randolph, Inc.*, 423 Mass. 637, 640, 670 N.E.2d 383, 386 (1996).  The presumptive rule that suicide constitutes an independent intervening act is based on such legal and policy determinations, with the issue in particular cases simply being whether suicide occurred "without conscious volition . . . or knowledge of the physical nature and consequences of the act," *Daniels*, 183 Mass. at 399-400, 67 N.E.2d at 426.

Conceding that she cannot satisfy the delirium/insanity exception to the *Daniels* rule, Plaintiff argues that she may prove her claims through expert testimony that Mr. Shearer's suicide was "impulsive."  (Pl.'s Opp. to Mot. for Summ. J. [2523] at 11.)  But mere impulsivity is insufficient; Plaintiff must prove that Neurontin gave Mr. Shearer an "uncontrollable impulse" to commit suicide.  *Daniels*, 183 Mass. at 399, 67 N.E. at 426.  Yet neither of Plaintiff's experts suggest that Mr. Shearer did not have control of his actions, did not act with conscious volition,

---

[6] The rare Massachusetts cases allowing recovery for suicide are factually distinguishable.  *See Freyermuth v. Lutfy*, 376 Mass. 614, 619 n.6, 382 N.E.2d 1059, 1061, 1064 n.6 (1978) (citing *Daniels* as "applicable rule," but upholding plaintiff's verdict based on expert testimony that decedent had "involutional psychosis"); *Delaney v. Reynolds*, 63 Mass. App. Ct. 239, 242-44, 825 N.E.2d 554, 557-58 (App. Ct. 2005) (citing *Daniels* as "historical view," but holding summary judgment improper due to fact questions regarding whether plaintiff shot herself accidentally based on "belief that the gun was unloaded"); *In re Dube's Case*, 70 Mass. App. Ct. 121, 128, 872 N.E.2d 1171, 1176 (App. Ct. 2007) (*Daniels* standard did not apply because workers compensation case was "governed by a simple causation test, and not by [an] independent intervening cause analysis").

or did not understand the nature or consequences of his act. (*See* Reply in Supp. of Mot. Summ. J. [2574] at 7-9.) In fact, Dr. Kruszewski specifically denied making any "determination one way or the other" as to whether Mr. Shearer was "compelled to commit suicide." (*See* Kruszewski Dep. [2455-5] at 40:18-25; *see also id.* at 70:20-24, 75:16-23 (discussing Mr. Shearer's *decision* to commit suicide).) Nor has Plaintiff presented any evidence that Mr. Shearer acted "without conscious volition" or "knowledge of the physical nature and consequences of his act." *Daniels*, 183 Mass. at 399-400, 67 N.E.2d at 426. Indeed, it is undisputed that, before committing suicide, Mr. Shearer told his caretaker he was going upstairs to collect a few things, located his handgun, and wrote a note before ultimately shooting himself. As in *Daniels*, "[a]ll this points to an understanding of the physical nature and effect of his act, and to a willful and intelligent purpose to accomplish it." 183 Mass. at 400, 67 N.E. at 426. Plaintiff will thus be unable to satisfy her burden at trial of proving that Mr. Shearer's suicide resulted from an uncontrollable impulse caused by Neurontin.

## V.    Punitive Damages

### A.    The Standard Governing Punitive Damages

It is well settled that "[p]unitive damages are not favored in Massachusetts," *Pine v. Rust*, 404 Mass. 411, 415, 535 N.E.2d 1247, 1249 (1989), and that the issue may not be presented to the jury where there is no admissible evidence of sufficiently reprehensible conduct. *See Dartt v. Browning-Ferris Indus., Inc.*, 427 Mass. 1, 16-17, 691 N.E.2d 526, 536-37 (1998); *see also Goodrow v. Lane Bryant, Inc.*, 432 Mass. 165, 177-78, 732 N.E.2d 289, 299 (2000); *accord Smith v. Bell Atl.*, 63 Mass. App. Ct. 702, 721, 829 N.E.2d 228, 245 (App. Ct. 2005). Under Massachusetts' wrongful death statute, punitive damages are available only where a plaintiff can show that "the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant . . . ." Mass. Gen. Laws Ann. ch. 229, § 2 (West 2000).[7] Plaintiff cannot meet

---

[7] The law is clear that Plaintiff cannot seek punitive damages in connection with her fraud by omission claim because punitive damages are not available under Massachusetts law for claims of common law fraud. *See Computer Sys. Eng'g, Inc. v. Quantel Corp.*, 740 F.2d 59, 70 (1st Cir. 1984) (citing *City of Lowell v. Mass. Bonding & Ins. Co.*, 313 Mass. 257, 264, 47 N.E.2d 265, 269 (1943));

*(cont'd)*

this standard because she has no evidence of malicious, willful, wanton, or reckless conduct.

To the extent that the Massachusetts wrongful death statute permits the imposition of punitive damages upon a showing of only "gross negligence," *see* Mass. Gen. Laws Ann. ch. 229, § 2, the statute does not meet constitutional due process requirements.  While the Supreme Judicial Court has never expressly addressed this issue, it has cautioned that awarding punitive damages "absent evidence of heightened culpability would very likely constitute an 'arbitrary or irrational deprivation[] of property,' and thus would be constitutionally impermissible." *Goodrow*, 432 Mass. at 179, 732 N.E.2d at 299 (quoting *TXO Prod. Corp.* v. *Alliance Res. Corp.*, 509 U.S. 443, 467 (1993) (Kennedy, J., concurring) (alteration in original)); *Smith*, 63 Mass. App. Ct. at 721, 829 N.E.2d at 245 ("To support an award of punitive damages, there must be more than neglect or even inconsiderate behavior.  A high degree of culpability is required.").  Indeed, the U.S. Supreme Court has reversed a punitive damages award based on the ground that the gross negligence standard was too vague.  *See Milwaukee & St. Paul R.R.* v. *Arms*, 91 U.S. 489, 493-95 (1875) (holding that to impose punitive damages, "there must have been some wilful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences"); *see also Smith* v. *Wade*, 461 U.S. 30, 72 (1983) (Rehnquist, J., dissenting) ("The Court [in *Arms*] regarded 'gross negligence' as too imprecise and ill-defined a standard to support the extraordinary remedy of punitive damages.").  Accordingly, because due process requirements prohibit the imposition of punitive damages for gross negligence, Plaintiff could only recover punitive damages on a showing of "malicious, willful, wanton or reckless conduct," Mass. Gen. Laws Ann. ch. 229, § 2 (West 2000 & 2009 Supp.), of which there is no evidence here.

Even if the Constitution did permit recovery of punitive damages for gross negligence, Plaintiff cannot satisfy that standard either.  Under Massachusetts law, gross negligence is

---

*(cont'd from previous page)*
accord *Ne. Data Sys., Inc.* v. *McDonnell Douglas Comp. Sys. Co.*, No. 83-1179-Y, 1991 WL 254421, at *1 (D. Mass. Nov. 29, 1991), *aff'd*, 986 F.2d 607 (1st Cir. 1993).  Accordingly, punitive damages are available only to the extent allowed by the wrongful death statute.

negligence that is: "substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others."

*O'Neil v. Electrolux Home Prods., Inc.*, No. 06-10433, 2008 WL 2066948, at *9 (D. Mass. May 14, 2008) (quoting *Altman v. Aronson*, 231 Mass. 588, 591, 121 N.E. 505, 506 (1919)). Where the evidence is "insufficient to support . . . ordinary negligence claims, it follows that the evidence cannot support the claim for punitive damages because more than ordinary negligence is required." *Coughlin v. Titus & Bean Graphics, Inc.*, 54 Mass. App. Ct. 633, 641, 767 N.E.2d 106, 113 (App. Ct. 2002).

In *O'Neil*, for example, a wrongful death action in which the plaintiff's two-year-old child was killed in a riding lawnmower back-over accident, the court granted the defendant manufacturers' motion for summary judgment on punitive damages, finding evidence of accident reports and negligent design and warning alone insufficient to establish the "level of 'the absence of slight diligence, or the want of even scant care,'" necessary to allow a punitive damages claim to proceed. *O'Neil*, 2008 WL 2066948, at *10 (citation omitted). The court explained:

> The Plaintiffs have failed to adduce evidence that the Defendants thought there was a high degree of likelihood that a back-over accident would occur. The Defendants knew of at least 29 serious injuries caused by lawnmower blade contact at the time the O'Neil Tractor was manufactured. This number rose to 35 or 40 at the end of 2004. Based on these numbers, 11 accidents occurred between 2002 and 2004 or in the worse scenario, about 5 accidents per year. The Defendants manufactured around 700,000 lawnmowers annually and included numerous warnings about the risks of operation around children on all of their lawnmowers. . . . Even if the Defendants were negligent in designing their Tractor and providing adequate warnings, the Tractor did include user safety systems and the evidence indicates the Defendants were researching the possibility of adding child safety systems. They did not violate the ANSI industry standards nor were they required to follow these voluntary standards. In addition, they provided numerous warnings against the use of the Tractor around children.

*Id.* at *9; *see also Merrell Dow Pharms., Inc. v. Havner*, 907 S.W.2d 535, 563 (Tex. Ct. App.

1995) (reversing punitive damages verdict in drug product liability action under gross negligence standard where the "evidence that [defendant] knew and consciously disregarded the risk of birth defects caused by Bendectin exposure" included, *inter alia*, adverse event reports, alleged falsification of study data, and a no contest plea to an indictment for falsifying data regarding another drug, finding "[t]his evidence . . . too weak to support the conclusion that Merrell Dow was consciously indifferent" to the alleged risk of birth defects), *rev'd on other grounds*, 953 S.W.2d 706, 730 (Tex. 1997) (reversing compensatory verdict and entering judgment for defendant, finding "no scientifically reliable evidence to support the verdict"). Plaintiff's proffer is similarly deficient here where, as set forth above, Pfizer's warnings have always complied with FDA requirements and Plaintiff has no credible evidence of a duty to warn of suicide, much less a grossly negligent, malicious or intentional failure to do so, at the time period relevant to this action or at any other time.

Further, Supreme Court precedent requires that a plaintiff establish eligibility for punitive damages under the Massachusetts wrongful death statute by clear and convincing evidence. "[T]he clear and convincing standard of proof[] is an important check against unwarranted imposition of punitive damages." *Honda Motor Co. v. Oberg*, 512 U.S. 415, 433 (1994); *see also Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 n.11 (1991) ("There is much to be said in favor of a State's requiring, as many do, a standard of 'clear and convincing evidence' or, even, 'beyond a reasonable doubt,' as in the criminal context." (citations omitted)).   Although the *Haslip* Court held that the "clear and convincing evidence" standard was not constitutionally required in that case, the Court's holding was qualified in light of the numerous "procedural and substantive protections" of Alabama law. *Haslip*, 499 U.S. at 23 n.11. Among the protections provided by Alabama law were that punitive damages could be imposed only for "deceit or willful fraud," *id.* at 7, a much higher showing than the mere "gross negligence" that would permit an award under the Massachusetts wrongful death statute. Mass. Gen. Laws Ann. ch. 229, § 2 (West 2000). Indeed, as argued above, the gross negligence standard would itself be an unconstitutional basis for imposing punitive damages. *See, e.g., Goodrow*, 432 Mass. at 179,

732 N.E.2d at 299.  Thus, to award punitive damages under the Massachusetts wrongful death statute, clear and convincing evidence is constitutionally required.

### B.   The Jury Must Be Instructed Consistent With the Supreme Court's Dictates in *Campbell* and *Philip Morris*

For the reasons discussed above, Pfizer submits that the evidence in this case will not support submission of punitive damages to the jury.  If, however, the jury is instructed on punitive damages, those instructions must comport with U.S. Supreme Court precedent.

In *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), the United States Supreme Court held that, as a matter of due process, "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *Campbell*, 538 U.S. at 422-23.  The Court explained that "[a] defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.* at 423.  Moreover, the Court stated that "[d]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis." *Id.*

In *Campbell*, the Supreme Court held unconstitutional the lower court's punishment of twenty years of various dissimilar conduct by the defendant, explaining that courts are not permitted "to expand the scope of the case so that a defendant may be punished for any malfeasance." *Id.* at 424.  Punishment based on dissimilar conduct "creates the possibility of multiple punitive damages awards for the same conduct" since "nonparties are not bound by the judgment some other plaintiff obtains." *Id.* at 423.  A punitive damages award based on conduct unrelated to the plaintiff's harm enters the "zone of arbitrariness" that violates due process. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996).

Later, the Supreme Court explicitly clarified that due process "forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties . . . , *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation." *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007); *see also Campbell*, 538 U.S. at 423 ("Due process

does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis."). To allow punitive damages to be based upon harm to non-parties would violate due process by denying the defendant "'an opportunity to present every available defense.'" *Philip Morris*, 549 U.S. at 353 (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)).

The Supreme Court further explained that "to permit punishment for injuring a nonparty victim would add a near standardless dimension to the punitive damages equation," magnifying the due process risks of "arbitrariness, uncertainty and lack of notice." *Id.* at 354. Finally, the Court stated, there is "no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others." *Id.* The Court "made clear that the potential harm at issue was harm potentially caused *the plaintiff*." *Id.* (emphasis in original). Thus, in *Philip Morris*, the Supreme Court held that the jury must be correctly instructed according to the standards stated by the Supreme Court to assure that the jury is not imposing punishment for conduct unrelated to the injury to Plaintiff. *See id.* at 355.

## CONCLUSION

Defendants respectfully request that the Court consider this memorandum in further support of their proposed jury instructions and other trial submissions and arguments.

Dated: March 15, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Mark.Cheffo@skadden.com

-and-

CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 15, 2010.

    /s/ Mark S. Cheffo
    Mark S. Cheffo

20

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
     William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
WOhlemeyer@bsfllp.com

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*