UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | : | MDL Docket No. 1629 |
| | : | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | : | Judge Patti B. Saris |
| | : | Magistrate Judge Leo T. Sorokin |
| *Shearer v. Pfizer Inc., et al.* Case No. 1:07-cv-11428-PBS | : | |

**DEFENDANTS' SPECIAL REQUESTS FOR JURY INSTRUCTIONS**

Defendants, Pfizer Inc ("Pfizer") and Warner-Lambert Company LLC ("Warner-Lambert") (collectively, "Defendants"), by and through their undersigned counsel, hereby propose that the instructions identified or set forth in the attachments hereto be given to the jury before and following the trial of this matter. Defendants submit these proposed instructions without waiver of their right to contend at trial that certain instructions should not be given because the evidence admitted does not warrant submitting some or all of the issues to the jury and without waiver of its right to request additional or modified instructions in light of the record developed at trial, rulings by this Court, or other subsequent developments.

Dated: March 15, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Mark.Cheffo@skadden.com

-and-

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 15, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo

BOIES, SCHILLER & FLEXNER LLP

By: /s/ William S. Ohlemeyer
      William S. Ohlemeyer

333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
WOhlemeyer@bsfllp.com

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## PROPOSED INSTRUCTION 1

## PRELIMINARY INSTRUCTIONS:  GENERAL INSTRUCTIONS[1]

Ladies and Gentlemen of the jury:

Now that we are about to begin the trial of this case, I will briefly tell you something about the case, the order of events during the trial, and your duties as jurors.

The parties who bring a lawsuit are called the plaintiffs.  In this case the plaintiff is Linda Shearer.  The party against whom the suit is brought is called the defendant.  In this case the defendants are Pfizer Inc and Warner-Lambert Company LLC.  The plaintiff alleges that her husband, Hartley Shearer, committed suicide as a result of his use of Neurontin. The plaintiff alleges that Pfizer and Warner Lambert provided inadequate warnings regarding [and committed fraud by failing to disclose] Neurontin's effects.  The defendants deny these claims and deny that Neurontin caused Hartley Shearer's death.

It will be your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You will hear the evidence, decide what the facts are, and then apply those facts to the law I give to you.  That is how you will reach your verdict.  In doing so you must follow that law whether you agree with it or not.  The evidence will consist of the testimony of witnesses, documents and other things received into evidence as exhibits, and any facts on which the lawyers agree or which I may instruct you to accept.  You should not take anything I may say or do during the trial as indicating what I think of the believability or significance of the evidence or what your verdict should be.[2]

You must perform your duties as jurors without bias or prejudice as to any party.  The

---

[1] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 101.01 (5th ed. 2000) (modified); 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 70.01 (4th ed. 1987) (modified).

[2] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 1.01 (1997).

law does not permit you to be governed by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all of the evidence, follow the law as I give it to you, and reach a just verdict, regardless of the consequences.

**PROPOSED INSTRUCTION 2**

**PRELIMINARY INSTRUCTIONS:  JUROR NOTE TAKING[3]**

I am going to permit you to take notes in this case, and the courtroom deputy has distributed pencils and pads for your use.  I want to give you a couple of warnings about taking notes, however.  First of all, do not allow your note-taking to distract you from listening carefully to the testimony that is being presented.  If you would prefer not to take notes at all but simply to listen, please feel free to do so.  Please remember also from some of your grade-school experiences that not everything you write down is necessarily what was said.  Thus, when you return to the jury room to discuss the case, do not assume simply because something appears in somebody's notes that it necessarily took place in court.  Instead, it is your collective memory that must control as you deliberate upon the verdict.  Please take your notes to the jury room at every recess.  I will have the courtroom deputy collect them at the end of each day and place them in the vault.  They will then be returned to you the next morning.  When the case is over, your notes will be destroyed.  These steps are in line with my earlier instruction to you that it is important that you not discuss the case with anyone or permit anyone to discuss it with you.

---

[3] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 1.08 (1997).

5

**PROPOSED INSTRUCTION 3**

**PRELIMINARY INSTRUCTIONS:  JUDGE'S QUESTIONS TO WITNESSES[4]**

During the trial, I may sometimes ask a witness questions.  Please do not assume that I have any opinion about the subject matter of my questions.

---

[4] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 101.30 (5th ed. 2000); 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 70.13 (4th ed. 1987) (modified).

## PROPOSED INSTRUCTION 4

## <u>RULES FOR JURORS</u>[5]

You will not be required to remain together while the Court is in recess. To insure fairness, it is important that you obey the following instructions with reference to the recesses of the Court:

First, do not talk among yourselves about this case, similar medicines, mental disorders, suicide, or the pharmaceutical industry or about anyone involved with the case, until the end of the case when you go to the jury room to decide on your verdict.

Second, do not talk with anyone else about this case, similar medicines, mental disorders, suicide, or the pharmaceutical industry, or about anyone who has anything to do with the case, until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends. You may tell them that you are a juror, but do not tell them anything about the case until after you have been discharged by me.

Third, do not let anyone talk to you about the case or about anyone who has anything to do with it. If someone should try to talk to you, please report it to me immediately.

Fourth, during the trial, do not talk with or speak to any of the parties, lawyers or witnesses involved in this case – you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice. If a person from one side of the lawsuit sees you talking to a person from the other side – even if it is simply to pass the time of day – an unwarranted and unnecessary suspicion about your fairness might be aroused. If any lawyer, party or witness does not speak to you when you pass in the hall, ride the elevator or the like, it is because they are not supposed to talk or visit with you.

---

[5] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 1.07 (1997) (modified).

Fifth, do not read any news stories or articles about the case, similar medicines, mental disorders, suicide, or the pharmaceutical industry or about anyone involved with the case, or listen to any radio or television reports about the case or about anyone involved with it. If a newspaper headline or a radio or television statement catches your attention, do not read, listen, or view the matter any further. Media accounts may be inaccurate and may contain matters that are not proper evidence for your consideration. You must base your verdict solely on what is brought out as evidence here in open court.

Sixth, do not do any research, such as consulting dictionaries, other reference materials, or the internet, and do not make any investigation about the case on your own. For example, if you have friends or acquaintances who are physicians or scientists, do not ask them any questions about any of the medical or scientific issues in this case. Do not attempt to research any of the issues in this case, the parties, the attorneys or the witnesses on the internet or from any other source of information. You should be guided solely by the evidence presented in the courtroom.

Seventh, if you need to communicate with me simply give a signed note to the [court security officer] to give to me.

Finally, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

## PROPOSED INSTRUCTION 5

### PRELIMINARY INSTRUCTIONS:  ORDER OF TRIAL[6]

The case will proceed in the following order:

First, an attorney for the plaintiff will make an opening statement outlining what the attorneys for the plaintiff expect the evidence to show.  Then an attorney for the defendants will make an opening statement outlining what the attorneys for the defendant expect the evidence to show.  What the attorneys say in their opening statements is not evidence, but is simply to provide you with summaries of what the attorneys expect the evidence to show.

Next, the plaintiff will introduce evidence in support of her claim.  The defendant's attorneys may cross-examine the plaintiff's witnesses.  At the conclusion of the plaintiff's case, the defendant may introduce evidence, and the plaintiff's attorneys may cross-examine the defendant's witnesses.  The plaintiff may then introduce further evidence, called rebuttal evidence.

After all the evidence has been presented, the attorneys for the parties will make their closing arguments, telling you what they think the evidence has shown and what inferences they contend you should draw from the evidence.  What the attorneys say in closing argument, just as what they say in opening statements, is not evidence.  The plaintiff has the right to give both the first closing argument and the last closing argument.

Next, I will instruct you on the law that you must apply in reaching your verdict.  Then you will go to the jury room and deliberate to reach a verdict.

---

[6] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 101.02 (5th ed. 2000) (modified); 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 70.02 (4th ed. 1987) (modified).

## PROPOSED INSTRUCTION 6

## PRELIMINARY INSTRUCTIONS:  EVIDENCE IN THE CASE[7]

Since you will be called upon to decide the facts of this case, you should give careful attention to the testimony and evidence presented for your consideration.  Evidence includes the testimony of witnesses, documents and other things received as exhibits, and any facts that have been stipulated – that is, formally agreed to by the parties.

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence.  Then it may be necessary for me to talk with the lawyers out of the hearing of the jury, either by having a bench conference here while the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, and to avoid confusion and error.  We will, of course, do what we can to keep the number and length of these conferences to a minimum.

Certain things are not evidence.  I will list those things for you now:  (1) Statements, arguments, questions and comments by lawyers representing the parties in the case are not evidence.  (2) Objections are not evidence.  Lawyers have a duty to their client to object when they believe something is improper under the rules of evidence.  You should not be influenced by the objection.  If I sustain an objection, you must ignore the question or exhibit and must not try to guess what the answer might have been or the exhibit might have contained.  If I overrule

---

[7] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 101.40 (5th ed. 2000) (modified); 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 70.03 (4th ed. 1987) (modified).

10

the objection, the evidence will be admitted, but do not give it special attention because of the objection.  (3) Testimony that I strike from the record, or tell you to disregard, is not evidence and must not be considered.[8]

Also, anything you may have seen or heard outside the courtroom is not evidence, and you must entirely disregard it and must not discuss it with each other.  Therefore, you must not read, listen to, or view any media discussion, newspaper article, television or radio broadcast, or participate in or listen to any discussion by family, friends or others about this case, pain and anti-seizure medicines, suicide, the pharmaceutical industry, or anyone involved in this case. You also must not discuss among yourselves your own experience or any experience of any other person with any medicine, suicide, or any pharmaceutical company.[9]

Furthermore, a particular item of evidence is sometimes received for a limited purpose only.  That is, it can be used by you only for a particular purpose, and not for any other purpose. I will tell you when that occurs and instruct you on the purposes for which the item can and cannot be used.[10]

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of an eyewitness that the witness saw something. Circumstantial evidence is indirect evidence, that is proof of a fact or facts from which you could draw the inference, by reason and common sense, that another fact exists, even though it has not been proven directly.  You are entitled to consider both kinds of evidence.  The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any

---

[8] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 1.05 (1997) (modified).

[9] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 101.19 (5th ed. 2000) (modified).

[10] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 1.05.

evidence.[11]

You also may hear testimony in the form of what we call "depositions." Depositions are proceedings that occurred before the trial. They are proceedings in which witnesses give testimony outside the courtroom, but under oath before a court reporter, with attorneys for each party who attends the deposition being entitled to ask questions. Testimony from a deposition may be read to you or may be played for you on a screen from video. Deposition testimony is to be treated just like any testimony you may hear from witnesses who appear here in this courtroom. You should consider deposition testimony subject to the same instructions that apply to witnesses who appear live and testify here in court.[12]

You must listen to and consider all the evidence in the entire case, and deliberate with other jurors at the close of the case, before reaching any conclusions about the issues in the case. Therefore, you must keep an open mind until after all the evidence has been presented and you have conducted your deliberations as a jury at the end of the case.

---

[11] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 3.05 (1997).

[12] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 102.23 (5th ed. 2000) (modified); 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 73.02 (4th ed. 1987) (modified).

## PROPOSED INSTRUCTION 7

## PROVINCE OF COURT AND JURY

Now that you have heard the evidence, it becomes my duty to instruct you on the law that governs this case.

It is your duty to find the facts from all the evidence admitted in this case.  To those facts you must apply the law as I give it to you.  The determination of the law is my duty as the presiding judge in this court.  It is your duty to apply the law exactly as I give it to you, whether you agree with it or not.  You must not be influenced by any personal likes or dislikes, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you and according to the law.  You will recall that you took an oath promising to do so at the beginning of the case.  In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions, or into anything I may have said or done, any suggestions by me as to what verdict you should return – that is a matter entirely for you to decide.[13]

The parties' attorneys [may refer/have referred] to some of the rules of law in their arguments.  If, however, any difference appears to you between the law as stated by an attorney and the law as stated by me, you are of course to be governed by my instructions.[14]

---

[13] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 3.01 (1997).

[14] 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 71.01 (4th ed. 1987) (simplified).

13

## PROPOSED INSTRUCTION 8

## ALL PERSONS EQUAL UNDER THE LAW[15]

Do not let bias, prejudice or sympathy play any part in your deliberations.  Two of the parties in this case are corporations.  A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations, are equal before the law and must be treated as equals in a court of justice.  You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.

---

[15] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 103.12 (5th ed. 2000) (modified).

14

**PROPOSED INSTRUCTION 9**

**PREPONDERANCE OF EVIDENCE**[16]

The standard of proof in a civil case is that a plaintiff must prove his case by a preponderance of the evidence.  The standard of a preponderance of the evidence means the greater weight of the evidence.  A preponderance of the evidence is such evidence which, when considered and compared with any opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proven is more probably true than not true.

A proposition is proven by a preponderance of the evidence if, after you have weighed the evidence, that proposition is made to appear more likely or probable in the sense that there exists in your minds an actual belief in the truth of that proposition derived from the evidence, notwithstanding any doubts that may still linger in your minds.

Simply stated, a matter has been proven by a preponderance of the evidence if you determine, after you have weighed all of the evidence that that matter is more probably true than not true.

---

[16] *Massachusetts Superior Court Civil Practice Jury Instructions* § 1.20 (2d ed. 2008) (Burden of Proof) (simplified).

## PROPOSED INSTRUCTION 10

### EVIDENCE, STIPULATIONS, JUDICIAL NOTICE, AND EVIDENTIARY RULINGS

The evidence from which you are to decide what the facts are consists of sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness; the exhibits that have been received into evidence; and any facts to which the lawyers have agreed or stipulated. A stipulation means simply that the plaintiff and the defendants accept the truth of a particular proposition or fact. Since there is no disagreement, there is no need for evidence apart from the stipulation. You must accept the stipulation as fact even though nothing more was said about it one way or the other.[17] Also, I have taken judicial notice of certain facts or events. When I have declared that I will take judicial notice of some fact or event, you must, unless otherwise instructed, accept my declaration as evidence and regard as proven the fact or event which has been judicially noticed.[18]

Although you may consider only the evidence presented in the case, you are not limited in considering that evidence to the bald statements made by the witnesses or contained in the documents. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw from facts that you find to have been proven such reasonable inferences as you believe are justified in the light of common sense and personal experience.[19]

---

[17] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 3.04 (1997) (modified).

[18] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 103.30 (5th ed. 2000).

[19] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 3.04 (1997).

## PROPOSED INSTRUCTION 11

## <u>DEMONSTRATIVE EVIDENCE AND AIDS[20]</u>

Certain charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents that are in evidence in the case.  These charts or summaries are not themselves evidence or proof of any facts.  If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

In other words, the charts or summaries are used only as a matter of convenience.  To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

---

[20] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 104.50 (5th ed. 2000).

17

## PROPOSED INSTRUCTION 12

## CREDIBILITY AND NUMBER OF WITNESSES

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following: (1) the witness's ability to see or hear or know the things the witness testifies to; (2) the quality of the witness's memory; (3) the witness's manner while testifying; (4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice; (5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence; and (6) how reasonable the witness's testimony is when considered in the light of other evidence which you believe.[21]

Also, you have heard evidence that before testifying at this trial, certain witnesses made a statement concerning the same subject matter as his/her testimony in this trial. You may consider that earlier statement to help you decide how much of the witness's testimony to believe. If you find that the prior statement was not consistent with the witness's testimony at this trial, then you should decide whether that affects the believability of witness's testimony at this trial.[22]

Whether a party has met its burden of proof does not depend upon the number of witnesses it has called or upon the number of exhibits it has offered, but instead upon the nature and quality of the evidence presented.[23]

---

[21] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 1.06 (1997).

[22] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 2.02 (1997).

[23] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 3.06 (1997) (modified).

## PROPOSED INSTRUCTION 13

## <u>OPINION TESTIMONY</u>

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists for "expert witnesses."  An expert witness has special knowledge or experience that allows the witness to give an opinion.  You may accept or reject such testimony.  In weighing the testimony, you should consider the factors that generally bear upon the credibility of a witness as well as the expert witness's education and experience, the soundness of the reasons given for the opinion and all other evidence in the case.

Remember that you alone decide how much of a witness's testimony to believe, and how much weight it should be given.[24]  If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.[25]

---

[24] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 104.40 (5th ed. 2000); Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 2.06 (1997) (modified).

[25] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 104.40 (5th ed. 2000).

## PROPOSED INSTRUCTION 14

## <u>CORPORATE EMPLOYEES AND AGENTS</u>[26]

A corporation can act only through natural persons who are its agents or employees.  In general, a person who is an agent or employee of a corporation may bind the corporation only by acts and declarations made by that person while acting within the scope of the authority delegated to that person by the corporation, or within that person's duties as an employee of the corporation.

---

[26] 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 71.09 (4th ed. 1987) (simplified).

## PROPOSED INSTRUCTION 15

## NEGLIGENCE/DUTY TO WARN[27]

Negligence is the failure to exercise that degree of care which a reasonable person would exercise in the circumstances. In this case, you are asked to consider whether the defendants exercised that degree of care which an ordinary, reasonably prudent manufacturer/company would have exercised in like circumstances.[28] In order to recover for negligence against the defendants, the plaintiff must prove by a preponderance of the evidence four essential elements: (1) that the defendants owed a duty to the plaintiff; (2) that the defendants breached that duty; (3) that the plaintiff has suffered injury or damage; and (4) that the defendants' breach of its duty was a proximate cause of the plaintiff's injury or damage.[29]

The plaintiff alleges that the defendants failed to provide adequate warnings of the risk of suicide to Hartley Shearer's physicians. To recover for failure to warn, the plaintiff must prove

---

[27] Under Massachusetts law, liability for failure to warn under either a negligence theory or implied warranty theory is congruent. *See Hoffman v. Houghton Chem. Corp.*, 751 N.E.2d 848, 859 (Mass. 2001) ("[N]egligent failure to warn and failure to warn under breach of warranty are to be judged by the same standard: the reasonableness of the defendant's actions in the circumstances."); *see also Sprague v. Upjohn Co.*, Civ. A. No. 91-40035-NMG, 1995 WL 376934, at *3 (D. Mass. May 10, 1994) ("In accordance with Massachusetts law, and the precedent set forth within the First Circuit, this Court treats plaintiff's remaining claims of negligence and breach of implied warranty as a consolidated, single claim of negligent failure to warn."); *accord Kelley v. Eli Lilly & Co.*, 517 F. Supp. 2d 99, 110 (D.D.C. 2007) (applying Massachusetts law). Further, the only strict products liability claim permitted under Massachusetts law is for breach of implied warranty under the UCC, *Swartz v. GM Corp.*, 375 Mass. 628, 629, 378 N.E.2d 61, 62 (1978), and thus strict liability claims are also subsumed within the negligent failure-to-warn theory. "[T]wo or more factually identical failure to warn claims should not be submitted to the trier of fact in the same case under different doctrinal labels." Restatement (Third) of Torts: Products Liability § 2 cmt. n (1998). To allow factually identical claims to be submitted to the jury under different doctrinal labels will only generate confusion and create the potential for inconsistent verdicts. *See id.*; *see also Hayes v. Ariens Co.*, 462 N.E.2d 273, 274-75 (Mass. 1984), *overruled in part on other grounds by Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909 (Mass. 1998).

[28] *Massachusetts Superior Court Civil Practice Jury Instructions* § 11.2 (2d ed. 2008) (Product Liability: Negligence).

[29] *Massachusetts Superior Court Civil Practice Jury Instructions* § 11.2.1 (2d ed. 2008) (Product Liability: Negligence – Elements).

all of the following by a preponderance of the evidence:

1) The defendants failed to give adequate warnings and instructions to Hartley Shearer's medical providers regarding the relationship, if any, between Neurontin and suicide or suicidal behavior.

2) The relationship, if any, between Neurontin and suicide was known, or by the application of reasonably developed human skill and foresight, should have been known, when Hartley Shearer was treated with Neurontin in February 2002.

3) The failure, if any, to give adequate warnings and instructions rendered Neurontin unreasonably dangerous as marketed.

4) The defendants' alleged failure to provide adequate warnings and instructions was a substantial cause of Hartley Shearer's use of Neurontin.

5) Neurontin was a substantial cause of Hartley Shearer's suicide.

6) The defendants' alleged failure to provide adequate warnings and instructions was a proximate cause of the plaintiff's injury.

A defendant cannot be held liable for failure to warn or provide instructions about risks that were not reasonably foreseeable at the time of sale or could not have been discovered by way of reasonable testing prior to marketing the product.[30]  The duty to warn extends only to such dangers about which the manufacturer either actually knew or about which it reasonably should have known.  A manufacturer is held to that level of knowledge which the experts in the particular industry had or in view of the state of medical and scientific knowledge should have had.[31]

A product is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the

---

[30] *Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909, 923-24 (Mass. 1998).

[31] *Anderson v. Owens-Illinois, Inc.*, 799 F.2d 1, 2 (1st Cir. 1986).

provision of reasonable instructions or warnings by the manufacturer, and the omission of the instructions or warnings renders the product not reasonably safe.[32]   A prescription drug is not reasonably safe if it is dangerous to an extent beyond that which would be contemplated by a doctor or other medical provider with the ordinary knowledge common to the medical community as to the product's characteristics.[33]

---

[32] *Massachusetts Superior Court Civil Practice Jury Instructions* § 11.2.4(a) (2d ed. 2008) (Product Liability:  Duty to Warn – Adequate Warning).

[33] *Commonwealth v. Johnson Insulation*, 682 N.E.2d 1323, 1330-31 (Mass. 1997) (citing Restatement (Second) of Torts § 402A); *see also Guevara v. Dorsey Labs., Div. of Sandoz, Inc.*, 845 F.2d 364, 368 (1st Cir. 1988) (in case arising under Puerto Rico law, applying same Restatement provision and noting that, in the case of prescription drugs, "ordinary consumer" refers to an ordinary physician who prescribes the drug).

## PROPOSED INSTRUCTION 16

## <u>DUTY OWED TO PHYSICIAN (LEARNED INTERMEDIARY DOCTRINE)</u>

The defendants satisfied their duty to adequately warn of dangers and instruct for safe use if they furnished adequate warnings and instructions for prescribing medical providers. The physician or physician's assistant, as a learned intermediary, is the person best qualified to make an informed choice about appropriate treatment and patient communications after evaluating the benefits of a particular drug against the risk of harm from its use.[34]

---

[34] *MacDonald v. Ortho Pharm. Corp.*, 475 N.E.2d 65, 69 (Mass. 1985); *Garside v. Osco Drug, Inc.*, 976 F.2d 77, 80 (1st Cir. 1992); *Knowlton v. Deseret Med., Inc.*, 930 F.2d 116, 120 n.2 (1st Cir. 1991).

## PROPOSED INSTRUCTION 17

### DETERMINATION OF WRONGFUL CONDUCT
### BASED ON INFORMATION AS OF FEBRUARY 7, 2002

In determining whether the defendants provided adequate warnings and instructions for Neurontin or acted wrongfully, you may not consider any information that may have been learned about Neurontin, or any testing of Neurontin that occurred, after February 7, 2002, the date of Hartley Shearer's death.[35]

---

[35] The issue presented by the plaintiff's claims is whether the labeling provided by the defendants was adequate as of February 7, 2002, the day Hartley Shearer ended his life. *See Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909, 923-24 (Mass. 1998); *see also Cameron v. Otto Bock Orthopedic Indus., Inc.*, 43 F.3d 14, 16 (1st Cir. 1994) (holding that "post-accident reports [that] describe[d] incidents that took place after [plaintiff's] accident . . . have no bearing on notice").

## PROPOSED INSTRUCTION 18

## <u>NO DUTY TO TAKE ACTIONS FOR ULTIMATE SAFETY</u>

In determining whether the defendants were negligent, you should consider that a manufacturer is not obligated to take actions that represent the ultimate in safety. The manufacturer's duty is one of reasonable care, not perfection.[36]

.

---

[36] *See Massachusetts Superior Court Civil Practice Jury Instructions* § 11.2.2 (2d ed. 2008) (Product Liability:  Duty – Manufacturer); *Tibbetts v. Ford Motor Co.*, 358 N.E.2d 460, 461 (Mass. Ct. App. 1976).

## PROPOSED INSTRUCTION 19

### INFERENCE FROM FACT OF INJURY ALONE NOT PERMITTED

The mere fact that an accident or injury happened, standing alone, does not permit you to draw the inference that the accident or injury was caused by anyone's negligence.[37]

---

[37] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 120.20 (5th ed. 2000) (modified).

## PROPOSED INSTRUCTION 20

### OFF-LABEL USE

Evidence has been admitted that, at the time Hartley Shearer's physicians prescribed Neurontin to him, Neurontin had not been approved by the FDA for use in treating pain. This does not mean, however, that the physicians' prescriptions of Neurontin for Hartley Shearer were in any way improper or illegal. Both Massachusetts law and the FDA specifically permit doctors to prescribe drugs for "off-label" use. In other words, doctors are allowed to prescribe a drug for indications for which it has not been approved by the FDA. A medical doctor is permitted to prescribe a medication for any indication if it is that doctor's medical judgment that doing so is in the best interests of the patient.[38]

---

[38] *See* 21 U.S.C. § 396 ("Nothing in [the Federal Food, Drug and Cosmetic Act] shall be construed to limit or interfere with the authority of a health care practitioner to prescribe or administer any legally marketed device to a patient for any condition or disease within a legitimate health care practitioner-patient relationship."); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001) ("[T]he 'FDA itself recogniz[es] the value and propriety of off-label use[.]'") (citation omitted); *see also Sita v. Danek Med., Inc.*, 43 F. Supp. 2d 245, 262 n.13 (E.D.N.Y. 1999); *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 692 (2d Cir. 1994).

## PROPOSED INSTRUCTION 21

## <u>FOOD AND DRUG ADMINISTRATION – REGULATORY APPROVAL</u>

The Court has taken judicial notice of certain federal statutes and regulations which govern the FDA.  The defendants have presented evidence in this case that, on December 30, 1993, the FDA approved Neurontin for marketing in the United States.  You are instructed that, under federal statutes, FDA approval means that the FDA concluded that (1) the defendants complied with all applicable regulations, and (2) Neurontin is safe and effective when accompanied by FDA approved labeling.  You may consider government approval and the FDA findings, together with all the other evidence in this case, in deciding the issues presented to you.

The defendants also presented evidence in this case that the package insert and package labeling for Neurontin at the time it was prescribed to Hartley Shearer were approved by the FDA. You are instructed that under federal statutes, the FDA can approve labeling only if it concludes that the labeling (1) is supported by essential scientific evidence and (2) is supported by adequate evidence of safety and effectiveness.  You are further instructed that the FDA had the sole authority to require that a manufacturer provide warnings regarding off-label uses of a prescription drug, if the drug is commonly prescribed for a disease or condition, and there is lack of substantial evidence of effectiveness for that disease or condition, and such usage is associated with serious risk or hazard.[39]  Accordingly, you may consider the government's approval of the information issued by the defendants to the medical profession, together with all the other evidence in this case, in deciding whether the defendants adequately informed Hartley Shearer's physicians of the risks causally related to the use of Neurontin.[40]

I have also taken judicial notice of provisions contained in the Federal Register.  You are instructed that the Federal Register provides as follows:

---

[39] *See* 21 C.F.R. § 201.57(e) (2004).

[40] *See* 21 U.S.C. §§ 321, 331-37, 351-360n, 360aaa-360aaa-6.

"It is . . . apparent that there are very few statements in prescription drug labeling on which some controversy could not be found within the medical profession.  Not infrequently, there are several points of view on a single issue.  To permit or require statements of conflicting opinion on all of these matters would destroy the present usefulness of prescription drug labeling.

. . . [I]t is the Commissioner's conclusion that there is no justification for the presence of differences of medical opinion in any warning statements, such as precautions and information relating to possible product hazards."[41]

"Physicians clearly have access to new information on drugs through the medical literature, scientific meetings, post graduate courses, and professional contacts with colleagues. The package insert is not intended under the law to serve as a totally current repository of all such information.  It is intended instead to be an authoritative document which contains only those indications and usages based upon substantial evidence of safety and effectiveness."[42]

---

[41] Labeling; Failure to Reveal Material Facts, 39 Fed. Reg. 33,229, 33,232 (proposed Sept. 16, 1974) (to be codified at 21 C.F.R. pt. 1).

[42] Labeling for Prescription Drugs Used in Man; Proposed Format for Prescription-Drug Advertisements, 40 Fed. Reg. 15,392, 15,394 (proposed Apr. 7, 1979) (to be codified at 21 C.F.R. pts. 1, 3); *see also* Labeling and Prescription Drug Advertising; Content and Format for Labeling for Human Prescription Drugs, 44 Fed. Reg. 37,434, 37,448 (June 26, 1979) (to be codified at 21 C.F.R. pts. 201, 202) (in adopting final rule, FDA Commissioner rejected suggestion "that the regulation provide for referencing substantial differences of opinion among experts or for discussing other serious medical controversies relating to the 'Warnings' section": "The statutory scheme for drug labeling requires that potential hazards, as well as known hazards, be included in labeling.  Including conflicting opinions about such warnings would result in uncertainty and confusion and, accordingly, decrease the usefulness of the warnings in protecting the public.").

## PROPOSED INSTRUCTION 22

## FRAUDULENT CONCEALMENT[43]

In this case, the plaintiff claims that the defendants misrepresented the safety of Neurontin by failing to disclose information to the decedent's physicians regarding the risk of suicide or suicidal behavior. The defendants deny that they failed to disclose any important fact to the decedent's physicians.

The plaintiff may recover money damages from the defendants if and only if she proves the following by a fair preponderance of the credible evidence:

First, the plaintiff must show that the defendants owed a duty to disclose the side effects of Neurontin to the decedent's physicians.[44] A manufacturer has no duty to warn or provide instructions about risks that were not reasonably foreseeable at the time of sale or could not have been discovered by way of reasonable testing prior to marketing the product.[45] The duty to warn extends only to such dangers about which the manufacturer either actually knew or about which it reasonably should have known. A manufacturer is held to that level of knowledge which the experts in the particular industry had or in view of the state of medical and scientific knowledge should have had.[46]

Second, the plaintiff must show that the non-disclosure concerned some fact that a

---

[43] Defendants maintain that it is inappropriate to instruct the jury regarding fraudulent concealment. There is no set of facts that would permit the jury to find the defendants liable for fraudulent concealment, but not failure to warn. While fraudulent concealment has some additional elements, notably scienter, see In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig., 618 F. Supp. 2d 96, 113 (D. Mass. 2009), those elements are subsumed within punitive damages. As a result, instructing the jury separately on fraudulent concealment only creates a risk of inconsistent verdicts, which should be avoided. See supra note 27.

[44] Mem. & Order [1790] at 21, 25, May 26, 2009.

[45] Vassallo v. Baxter Healthcare Corp., 696 N.E.2d 909, 923-24 (Mass. 1998).

[46] Anderson v. Owens-Illinois, Inc., 799 F.2d 1, 2 (1st Cir. 1986).

reasonable physician would consider important to the prescribing decision that the physician was about to make.[47]

Third, that the non-disclosure rendered the defendants' statements to the decedent's physicians regarding Neurontin false or misleading.[48]

Fourth, at time the defendants failed to make the disclosure, the defendants acted with the intent to deceive the decedent's physicians.[49]

Fifth, that in failing to disclose the additional information, the defendants acted with the intention that such non-disclosure would induce the decedent's physicians to prescribe Neurontin to the decedent and that such non-disclosure did, in fact, induce the decedent's physicians to prescribe Neurontin to him.[50]

Sixth, that in making his prescribing decision, the decedent's physician did in fact rely on the defendant's statements about Neurontin as true, and that his or her reliance was reasonable under the circumstances.[51]

Seventh, that that the defendants' failure to disclose was a proximate cause of Hartley

---

[47] *Massachusetts Superior Court Civil Practice Jury Instructions* § 20.1 (2d ed. 2008) (Intentional Misrepresentation – Elements) (modified).

[48] *Massachusetts Superior Court Civil Practice Jury Instructions* § 20.1.3 (2d ed. 2008) (False Statement – Half-Truths, Silence and Statements and Conduct Calculated to Mislead) (modified).

[49] *Massachusetts Superior Court Civil Practice Jury Instructions* § 20.1 (2d ed. 2008) (Intentional Misrepresentation – Elements) (modified); Mem. & Order [1790] at 32, May 26, 2009.

[50] *Massachusetts Superior Court Civil Practice Jury Instructions* § 20.1 (2d ed. 2008) (Intentional Misrepresentation – Elements) (modified); *Massachusetts Superior Court Civil Practice Jury Instructions* § 20.1.5 (2d ed. 2008) (Intention that Plaintiff Would Rely upon False Statement) (modified); *Massachusetts Superior Court Civil Practice Jury Instructions* § 20.1.6 (2d ed. 2008) (Reasonable Reliance) (modified).

[51] *Massachusetts Superior Court Civil Practice Jury Instructions* § 20.1 (2d ed. 2008) (Intentional Misrepresentation – Elements) (modified).

Shearer's suicide.[52]

---

[52] *Massachusetts Superior Court Civil Practice Jury Instructions* § 20.1 (2d ed. 2008) (Intentional Misrepresentation – Elements) (modified).

## PROPOSED INSTRUCTION 23

### <u>INTENTIONAL SUICIDE</u>

Even if you find that the defendants failed to provide adequate warnings with Neurontin, you may not assign any liability to the defendants, on any of the plaintiff's claims, unless Hartley Shearer committed suicide because of an uncontrollable impulse, and the defendants proximately caused the uncontrollable impulse.[53]   It is not sufficient for the plaintiff to prove only that Hartley Shearer's suicide was impulsive; she must show that his suicide was the result of an uncontrollable impulse proximately caused by the defendants.

If Hartley Shearer knowingly and intentionally took his own life when he could have chosen not to do so, then the defendants bear no liability for his suicide.   Even if Neurontin caused the weakening of Hartley Shearer's power of self-control, the defendants nonetheless bear no liability for his suicide if he knowingly and intentionally took his own life when he was capable of resisting an impulse to take his life.[54]

---

[53] *Daniels v. New York, N.H. & H.R. Co.*, 67 N.E. 424, 426 (Mass. 1903) ("[T]he liability of a defendant for a death by suicide exists only when the death is the result of an uncontrollable impulse, or is accomplished in delirium or frenzy caused by the collision, and without conscious volition to produce death, having knowledge of the physical nature and consequences of the act.   An act of suicide resulting from a moderately intelligent power of choice, even though the choice is determined by a disordered mind, should be deemed a new and independent, efficient cause of the death that immediately ensues."); *Freyermuth v. Lutfy*, 382 N.E.2d 1059, 1064 n.6 (1978); *Nelson v. Massachusetts Port Authority*, 771 N.E.2d 209, 211-12 (Mass. App. Ct. 2002).   Plaintiff has conceded that the delirium/insanity exception to the *Daniels* rule is inapplicable to this case.

[54] *Daniels v. New York, N.H. & H.R. Co.*, 67 N.E. 424, 426 (Mass. 1903).

## PROPOSED INSTRUCTION 24

## <u>PROXIMATE CAUSE</u>

If you decide that the defendants failed to provide adequate warnings to Hartley Shearer's physicians, you must then consider whether the defendant's negligent conduct was the proximate cause of Hartley Shearer's death.  Even if you find that the defendants were negligent, the defendants are not liable to the plaintiff unless their failure to warn caused the plaintiff's harm.

First, the plaintiff must show that the loss would not have occurred but for the defendants' failure to warn.  If the harm would have occurred anyway, the defendants are not liable.[55]

Second, the plaintiff must show that the defendants' failure to warn was a substantial factor in bringing about the loss.[56]  To show that the defendants' negligence was a "substantial factor," the plaintiff does not have to prove that the defendant's negligence was the only or predominant cause of the injury.[57]  But the defendants' negligence must contribute significantly to the result; it must be a material and important ingredient in causing the harm.[58]  "Substantial"

---

[55] *See Matsuyama v. Birnbaum*, 890 N.E.2d 819, 842 (Mass. 2008) (holding that "but for" causation was required); *Reinhardt v. Gulf Ins. Co.*, 489 F.3d 405, 412 (1st Cir. 2007); *Jorgensen v. Mass. Port Auth.*, 905 F.2d 515, 522-23 (1st Cir. 1990) (Under Massachusetts law, proximate cause requires a showing by the plaintiff, first, that the loss was a foreseeable consequence of the defendant's negligence, second, that the defendant's negligence was a but-for cause of the loss, and third, that the defendant's negligence was a substantial factor in bringing about the loss.  The last two elements relate to the concept of actual causation, or causation-in-fact."); *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 836 (1st Cir. 1990) ("A defendant's breach of a legal duty is a cause in fact of the plaintiffs' harm if that harm would not have occurred 'but for' the breach.); *Verge v. U.S. Postal Serv.*, 965 F. Supp. 112, 119 (D. Mass. 1996); *see also Massachusetts Superior Court Civil Practice Jury Instructions* § 11.2.9(a) (2d ed. 2008) (Causation — Basic Definition).

[56] *Jorgensen v. Mass. Port Auth.*, 905 F.2d 515, 522-23 (1st Cir. 1990).

[57] *Massachusetts Superior Court Civil Practice Jury Instructions* § 11.2.9.

[58] *See* Massachusetts Superior Court Civil Practice Jury Instructions § 11.2.9(a) (2d ed. 2008) (Causation — Basic Definition); *Massachusetts Superior Court Civil Practice Jury Instructions* § 11.2.9(b) (2d ed. 2008) (Causation — Substantial Factor — Elaboration).

means that the defendants' conduct had such an effect in producing the harm as to lead reasonable men to regard it as a cause.[59]   Some other event which is a contributing factor in producing the harm may have such a predominant effect in bringing it about as to make the effect of the defendants' negligence insignificant and, therefore, to prevent it from being a substantial factor.   So too, although no one of the contributing factors may have such a predominant effect, their combined effect may so dilute the effects of the defendants' negligence as to prevent it from being a substantial factor.[60]   If the evidence establishes no more than a possibility of a causal relationship, then your verdict must be for the defendants.[61]

Finally, proximate cause requires a showing by the plaintiff that the loss was a foreseeable consequence of the defendants' failure to warn.[62]   If the decedent's death was the result of the intentional act of another person, which was not foreseeable to the defendants, then any negligence by the defendants was not the proximate cause of Hartley Shearer's death.[63]

---

[59] *See Damon v. Sun Co.*, 87 F.3d 1467, 1472 (1st Cir. 1996); *Mullins v. Pine Manor College*, 449 N.E.2d 331, 339 (Mass. 1983); *Frotton v. Masskey Dev. Corp.*, No. 001461, 2001 WL 1771993, at *2 (Mass. Super. Ct. Oct. 4, 2001).

[60] Restatement (Second) of Torts § 433 cmt. d (1965); *see also Johnson v. Summers*, 577 N.E.2d 301, 306 (Mass. 1991) (citing comments to Restatement section 433).

[61] *See Jorgensen v. Mass. Port Auth.*, 905 F.2d 515, 522-23 (1st Cir. 1990) ("[I]t is not enough to show the mere *possibility* of a causal connection; the *probability* of such a connection must be shown.") (emphasis in original); *accord Reinhardt v. Gulf Ins. Co.*, 489 F.3d 405, 412 (1st Cir. 2007); *O'Connor v. SmithKline Bio-Science Labs., Inc.*, 631 N.E.2d 1018, 1020 (Mass. App. Ct. 1994).

[62] *Jorgensen v. Mass. Port Auth.*, 905 F.2d 515, 522-23 (1st Cir. 1990).

[63] *Weston v. Chicken Box Restaurant, Inc.*, 65 Mass. App. Ct. 1107, 2005 WL 3312298, at *2 (2005); *Westerback v. Harold F. LeClair Co., Inc.*, 735 N.E.2d 1256, 1258 (Mass. App. Ct. 2000); *Admiral Ins. Co. v. Broan Mfg. Co.*, 17 Mass. L. Rptr. 602, 2004 WL 1049102, at *4 (Mass. Super. Ct. Apr. 15, 2004).

## PROPOSED INSTRUCTION 25

## PROOF OF GENERAL MEDICAL AND SPECIFIC MEDICAL CAUSATION

The plaintiff bears the burden in this case of proving both general medical causation and specific medical causation.

To prove general medical causation, the plaintiff must prove by a preponderance of the evidence that the use of Neurontin does generally cause suicide in some people.[64]

To prove specific medical causation, the plaintiff must prove by a preponderance of the evidence that Neurontin in fact caused Hartley Shearer to commit suicide.[65]   In determining whether the plaintiff has proven specific medical causation, it is not sufficient for the plaintiff to simply prove that Hartley Shearer was taking Neurontin at the time of his death.[66]

If you find that the plaintiff has failed to prove general medical causation, then you must return a verdict in favor of the defendants.

If you find that the plaintiff has failed to prove specific medical causation, then you must return a verdict in favor of the defendants.

---

[64] *See In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1171-72 (N.D. Cal. 2007); *In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 401-02 (S.D.N.Y. 2005); *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 830 (E.D. Tex. 2002); *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1224 (D. Colo. 1998).

[65] *See In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1172 (N.D. Cal. 2007); *In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 402 (S.D.N.Y. 2005); *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1224 (D. Colo. 1998).

[66] *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1232 (D. Colo. 1998).

## PROPOSED INSTRUCTION 26

## EFFECT OF WARNINGS ON PRESCRIPTION OF NEURONTIN

A prescription drug manufacturer's alleged failure to warn cannot be the proximate cause of injury unless a different warning would have changed the physician's decision to prescribe the drug.[67] The law presumes that a physician will heed an adequate warning; however, "heed" means only that the physician would have incorporated the additional risk into his decision making. The burden remains on the plaintiff to demonstrate that the additional non-disclosed risk would have changed the treating physician's decision to prescribe the product for the decedent.[68] In addition, the heeding presumption can be rebutted. As a result, if you find that Hartley Shearer's physicians would have prescribed Neurontin for him even if the plaintiff's preferred warnings had been given, you must return a verdict in favor of the defendants.[69]

---

[67] See *Thomas v. Hoffman-LaRoche, Inc.,* 949 F.2d 806, 814 (5th Cir. 1992); *Wheat v. Pfizer, Inc.,* 31 F.3d 340, 343 (5th Cir. 1994); *Odom v. G.D. Searle & Co.,* 979 F.2d 1001, 1003-04 (4th Cir. 1992); *Plummer v. Lederle Labs.,* 819 F.2d 349, 358-59 (2d Cir. 1987); *Nix v. SmithKline Beecham Corporation,* No. CV-06-43-PHX-SMM, 2007 WL 2526402, at *3 (D. Ariz. Sept. 5, 2007); *Fisher v. Bristol-Myers Squibb Co.,* 181 F.R.D. 365, 370 (N.D. Ill. 1998); *In re Norplant Contraceptive Prods. Liab. Litig.,* 955 F. Supp. 700, 711 (E.D. Tex. 1997), *aff'd,* 165 F.3d 374 (5th Cir. 1999); *Windham v. Wyeth Labs., Inc.,* 786 F. Supp. 607, 612 (S.D. Miss. 1992); *Vaughn v. G.D. Searle & Co.,* 536 P.2d 1247, 1250-51 (Or. 1975).

[68] *Thomas v. Hoffman-LaRoche, Inc.,* 949 F.2d 806, 814 (5th Cir. 1992); *Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1021 (10th Cir. 2001).

[69] *Garside v. Osco Drug, Inc.,* 976 F.2d 77, 81 (1st Cir. 1992); *Kelley v. Eli Lilly & Co.,* 517 F. Supp. 2d 99, 106 (D.D.C. 2007) (applying Massachusetts law).

## PROPOSED INSTRUCTION 27

## <u>EFFECT OF INSTRUCTION ON DAMAGES</u>[70]

I now turn to the subject of damages.  You will only reach the issue of damages if you find that the defendants were negligent and that the defendants' negligence was a proximate cause of the decedent's death.  You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case.  Consider damages only if necessary.  If the plaintiff has proven her claim against the defendants by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled.  It is your task first to decide whether the defendant is liable.  I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.

---

[70]*See* Fifth Circuit Pattern Jury Instructions No. 15.1 (2006); *see also* 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 106.02 (5th ed. 2000) (modified).

## PROPOSED INSTRUCTION 28

## COMPENSATORY DAMAGES:  NEXT-OF-KIN

If you find that the plaintiff is entitled to damages, then, as with all the other elements, the plaintiff bears the burden of proving her damages by a fair preponderance of the evidence. The purpose of the law in awarding damages is to reasonably and fairly compensate for the losses incurred because of another's negligent conduct.  Recovery for wrongful death represents damages to the survivors for the loss of value of the decedent's life.

There is no special formula under the law to assess the plaintiff's damages.

It is your obligation to assess what is fair, adequate, and just based on the evidence presented to you.  You must use your wisdom and judgment to translate into dollars and cents the amount which will fully, fairly, and reasonably compensate the next of kin for the death of the decedent.

In determining the amount of damages which the plaintiff is entitled to recover, there are certain types of loss and expenses which you should take into consideration.[71]

Under the wrongful death statute, the surviving spouse and children of the deceased are entitled to recover the fair monetary value of the decedent to them, including, but not limited to, compensation for the loss of reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent.

You shall not award damages for grief, anguish, and bereavement.[72]

In calculating damages for the loss of net income, the surviving spouse and children are entitled to only those amounts which the decedent would have contributed to them or for their

---

[71] *Massachusetts Superior Court Civil Practice Jury Instructions* § 3.5 (2d ed. 2008) (Compensatory Damages — Death).

[72] *Massachusetts Superior Court Civil Practice Jury Instructions* § 3.6 (2d ed. 2008) (Fair Monetary Value of the Decedent to the Beneficiaries).

40

benefit if he had not died.

You should take into consideration the life expectancies of the decedent and beneficiaries. In determining the loss of income to the decedent's spouse and children, any figures should be limited to the common life expectancies of the decedent and his beneficiaries.

In calculating damages for the loss of net income, the surviving spouse and children are entitled to recover the lifetime net income of the decedent, provided this income would have actually been received by the next of kin.[73]

The next of kin are also entitled to recover the value of any loss of services which the decedent regularly performed, although the services were gratuitous.[74]

The next area of damages which you are to consider is the cost of burial and funeral expenses incurred by the administrator because of the death.   The plaintiff is entitled to be compensated for those expenses which were reasonable in amount and which were reasonably necessary to bury the decedent.   Therefore, you must determine whether the expense was reasonably related to the burial of the decedent and whether the charge itself was reasonable. Funeral and burial expenses are debts of the decedent's estate.[75]

On the special verdict form, you must make a separate determination with respect to the fair value of the decedent to each of the next of kin.[76]

---

[73] *Massachusetts Superior Court Civil Practice Jury Instructions* § 3.7 (2d ed. 2008) (Net Income).

[74] *Massachusetts Superior Court Civil Practice Jury Instructions* § 3.8 (2d ed. 2008) (Loss of Services).

[75] *Massachusetts Superior Court Civil Practice Jury Instructions* § 3.9 (2d ed. 2008) (Burial and Funeral Expenses).

[76] *Massachusetts Superior Court Civil Practice Jury Instructions* § 3.13 (2d ed. 2008) (Allocation of Damages).

## PROPOSED INSTRUCTION 29

## <u>COMPENSATORY DAMAGES:  DECEDENT'S PAIN AND SUFFERING</u>[77]

The next area of damages to consider is conscious pain and suffering of the decedent prior to death.  The estate of the decedent is entitled to recover for the conscious pain and suffering sustained by the decedent as a result of the defendants' negligence.  Conscious pain and suffering refers to pain and suffering experienced by the decedent commencing with the impact of the fatal injury.[78]

Pain and suffering are of two types: physical pain and suffering, and mental pain and suffering.  For physical pain and suffering, you are to consider the areas of the body in which you find the plaintiff was physically injured.  You are to take into account the past pain and suffering endured by the plaintiff commencing with the impact of the fatal injury until death.

Mental pain and suffering includes any and all nervous shock, anxiety, embarrassment, or mental anguish resulting from the injury.  Again, you should take into account mental suffering commencing with the impact of the fatal injury until death.

Taking into consideration the nature of the injury, you are to determine what would be a fair and reasonable figure concerning conscious pain and suffering prior to death.  The plaintiff is entitled to full compensation for any reduction in Hartley Shearer's enjoyment of life which you conclude resulted from his suicide.

To arrive at a monetary figure for the decedent's pain and suffering, you must use your own good sense, background, and experience in determining what would be a fair and reasonable figure to compensate for the physical and mental suffering such as you find has been proven by the evidence.

---

[77] *Massachusetts Superior Court Civil Practice Jury Instructions* § 3.12 (2d ed. 2008) (Conscious Pain and Suffering) (modified).

[78] *Gage v. City of Westfield*, 532 N.E.2d 62, 71 (Mass. App. Ct. 1988).

# PROPOSED INSTRUCTION 30

## PUNITIVE DAMAGES

The plaintiff has alleged that the defendants caused the decedent's death by malicious, willful, wanton, and reckless conduct or by gross negligence. The plaintiff has the burden of proving malicious, willful, wanton, and reckless conduct [or gross negligence][79] by clear and convincing evidence.[80]   When you are determining whether the defendants' conduct was malicious, willful, wanton, or reckless [or whether the defendants were grossly negligent], remember the instructions on causation which I gave you earlier.[81]

A defendant acts maliciously, wantonly, willfully, or recklessly only when the defendant inflicts injury intentionally or is so utterly indifferent to the rights of others that the defendant

---

[79] Defendants object to the submission of any instruction on gross negligence. To the extent that the Massachusetts wrongful death statute permits the imposition of punitive damages upon a showing of only "gross negligence," *see* Mass. Gen. Laws Ann. ch. 229, § 2, the statute does not meet constitutional due process requirements. *See Goodrow* v. *Lane Bryant, Inc.*, 732 N.E.2d 289, 299 (Mass. 2000); *accord Smith v. Bell Atl.*, 829 N.E.2d 228, 245 (Mass. App. Ct. 2005); *TXO Prod. Corp.* v. *Alliance Res. Corp.*, 509 U.S. 443, 467 (1993) (Kennedy, J., concurring); *Milwaukee Etc. R.R. Co. v. Arms*, 91 U.S. 489, 493-95 (1875); *Smith v. Wade*, 461 U.S. 30, 72 (1983) (Rehnquist, J., dissenting).

[80] Defendants maintain that clear and convincing evidence is constitutionally required to support an award of punitive damages. *See, e.g., Honda Motor Co. v. Oberg*, 512 U.S. 415, 433 (1994) ("[T]he clear and convincing standard of proof[] is an important check against unwarranted imposition of punitive damages."); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 n.11 (1991) ("There is much to be said in favor of a State's requiring, as many do, a standard of 'clear and convincing evidence' or, even, 'beyond a reasonable doubt,' as in the criminal context.") (citations omitted); *id.* at 7 and 23 n.11 (finding a "clear and convincing evidence" standard not required only in light of the numerous "procedural and substantive protections" of Alabama law, which required, inter alia, a showing of "deceit or willful fraud"); *see also Goodrow* v. *Lane Bryant, Inc.*, 732 N.E.2d 289, 299 (Mass. 2000) (emphasizing that awarding punitive damages "absent evidence of heightened culpability would very likely constitute an 'arbitrary or irrational deprivation[] of property,' and thus would be constitutionally impermissible") (quoting *TXO Prod. Corp.* v. *Alliance Res. Corp.*, 509 U.S. 443, 467 (1993) (Kennedy, J., concurring)); *accord Smith v. Bell Atl.*, 829 N.E.2d 228, 245 (Mass. App. Ct. 2005) ("To support an award of punitive damages, there must be more than neglect or even inconsiderate behavior. A high degree of culpability is required.").

[81] *Massachusetts Superior Court Civil Practice Jury Instructions* §§ 3.15 (2d ed. 2008) (Malicious, Willful, Wanton, and Reckless Conduct — Punitive Damages) & 3.16 (2d ed. 2008) (Gross Negligence — Punitive Damages).

acts as if such rights did not exist.  The injury is then a willful and not a negligent wrong.[82]

[Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence.  It is materially more want of care than constitutes simple inadvertence.  It is an act or omission respecting legal duty of an aggravated character, as distinguished from a mere failure to exercise ordinary care.  It is very great negligence or the absence of slight diligence or the want of even scant care.  It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected.  It is a needless and palpable violation of legal duty respecting the rights of others.  The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence.  Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence, but is something less than willful, wanton, and reckless conduct.  It falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong.  Ordinary and gross negligence differ in degree of inattention.  Both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure.

Some of the common indicia of gross negligence are "deliberate inattention or . . . voluntary incurring of obvious risk or . . . impatience of reasonable restraint or . . . persistence in a palpably negligent course of conduct over an appreciable period of time."[83]]

If you determine that the decedent's death was a result of the defendants' malicious, willful, wanton, or reckless conduct [or by gross negligence], then the statute allows you to award punitive damages to the plaintiff, in addition to the compensatory damages on which I

---

[82] *Massachusetts Superior Court Civil Practice Jury Instructions* § 3.15 (2d ed. 2008) (Malicious, Willful, Wanton, and Reckless Conduct — Punitive Damages).

[83] *Massachusetts Superior Court Civil Practice Jury Instructions* § 3.16 (2d ed. 2008) (Gross Negligence — Punitive Damages) (citation omitted).  As discussed *supra* note 79, Defendants object to any gross negligence instruction.

instructed you earlier.  Punitive damages are awarded to punish a defendant and to deter future wrongdoing, not to compensate particular harmed individuals.

## PROPOSED INSTRUCTION 31

## <u>PUNITIVE DAMAGES MUST BE REASONABLE</u>

Punitive damages are disfavored in the law.  In deciding whether they should be imposed in this case, you should do so with great caution and should award them only if and to the extent necessary to achieve the proper amount of deterrence and punishment.  Whether to impose punitive damages is discretionary, which means that a plaintiff never has a right to an award of punitive damages and you are not required to award them under any circumstance.  The fact that the Court is instructing you on the law of punitive damages is not meant in any way to influence your decision whether it is necessary and appropriate to impose them.  Any amount of punitive damages you award must not exceed the amount that you find the plaintiff has proven is reasonably required to vindicate Massachusetts' legitimate interest in punishment and deterrence, if any, for the wrongful conduct that harmed the plaintiff in this case.[84]   In addition, if punitive damages are awarded in any amount, that amount must be both reasonable and proportionate to the amount of harm to the plaintiff and to the amount of compensatory damages awarded.[85]

---

[84] *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419-20 (2003) ("[A] more modest punishment for this reprehensible conduct could have satisfied the State's legitimate objectives, and the Utah courts should have gone no further."); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 584 (1996) (reversing punitive damages award because, in part, trial court failed to consider "whether a lesser deterrent would have adequately protected the interests of [] consumers"); *Cont'l Trend Res., Inc. v. OXY USA, Inc.*, 101 F.3d 634, 639-40 (10th Cir. 1996) ("In figuring harm both actual and potential harm may be considered.  But it must be harm to these plaintiffs, not to others.").

[85] *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003) (holding that punitive damages must be "reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered").

## PROPOSED INSTRUCTION 32

### <u>DETERRENCE</u>

You must not award any punitive damages to provide additional compensation of any kind to the plaintiff. Punitive damages may be awarded only if the defendants' culpability, after having paid the compensatory damages, is so reprehensible as to warrant the imposition of further sanctions required to vindicate Massachusetts' legitimate interest in punishment and deterrence, if any.[86]

---

[86] *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.").

## PROPOSED INSTRUCTION 33

## <u>PUNITIVE DAMAGES REQUIRE CLEAR AND CONVINCING EVIDENCE</u>

To prove the elements of their claim for punitive damages by clear and convincing evidence, the plaintiff must prove more than that each of those elements is more likely true than not.[87]   The plaintiff must prove each element by convincing, unequivocal proof, proof by a substantial margin.   It requires evidence so strong and cogent as to convince common persons to act upon that conviction in matters of the highest concern and importance to their own interests.[88]

---

[87] Defendants maintain that clear and convincing evidence is constitutionally required to support an award of punitive damages.   *See supra* note 80.

[88] 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* § 90.46 (4th ed. 1987) ("'Clear proof' is convincing, unequivocal proof; proof by a substantial margin.   It means proof by more than the mere preponderance of the evidence, as defined in these instructions.   The standard for 'clear proof,' however, is not so strict as the standard of 'proof beyond reasonable doubt' used in criminal cases."); 3A Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 157.32 (5th ed. 2001) ("'Clear proof' is convincing, unequivocal proof or proof by a substantial margin.   It means proof by more than the mere preponderance of the evidence.   The standard for 'clear proof,' however, is not so strict as the standard of 'proof beyond reasonable doubt' used in criminal cases.").

## PROPOSED INSTRUCTION 34

## <u>UNLAWFUL CONDUCT REQUIRED</u>

Punitive damages may not be awarded if reasonable people could conclude that the defendants' conduct was not unlawful.  Therefore, you may not award punitive damages unless the plaintiff proves by clear and convincing evidence that the defendants had no arguably legitimate basis for its conduct.[89]

---

[89] *See generally State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) ("A State cannot punish a defendant for conduct that may have been lawful where it occurred."); *Sw. Tel. & Tel. Co. v. Danaher*, 238 U.S. 482, 490 (1915) (even if the defendant "should have known that the supreme court of the state, in the exercise of its judicial power, might hold [its conduct] unreasonable," a $6,300 civil penalty violated "fundamental principles of justice" where "the prevailing view elsewhere was otherwise"); *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1317 (5th Cir. 1995) (vacating punitive damages award in design defect case where "there is a genuine dispute in the scientific community as to" the reasonableness of the design).

## PROPOSED INSTRUCTION 35

## <u>DETERRENCE LIMITED TO WITHIN STATE</u>

You may not award any punitive damages to protect people or punish for harm outside of Massachusetts.[90]

---

[90] *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421-22 (2003) ("A State cannot punish a defendant for conduct that may have been lawful where it occurred. Nor, as a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction. Any proper adjudication of conduct that occurred outside Utah to other persons would require their inclusion, and, to those parties, the Utah courts, in the usual case, would need to apply the laws of their relevant jurisdiction. . . . A jury must be instructed, furthermore, that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred.") (citations omitted); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 585 (1996) ("While each State has ample power to protect its own consumers, none may use the punitive damages deterrent as a means of imposing its regulatory policies on the entire Nation.").

## PROPOSED INSTRUCTION 36

## <u>DO NOT CONSIDER HARM TO PERSONS OTHER THAN PLAINTIFF</u>

You may not base the amount of any punitive damages award on any past, present, or future harm to anyone other than the plaintiff in this case.  Any amount of punitive damages you award must be based on the defendants' conduct with respect to the plaintiff in this case.[91]

---

[91] *See Philip Morris USA v. Williams*, 549 U.S. 346, 354-55 (2007) ("[W]e can find no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others. . . .  [A] jury may not . . . use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties."); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423-24 (2003) ("A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business.  Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis . . . .  Punishment on these bases creates the possibility of multiple punitive damages awards for the same conduct . . . .  The same reasons lead us to conclude the Utah Supreme Court's decision cannot be justified on the grounds that State Farm was a recidivist. . . . The reprehensibility guidepost does not permit courts to expand the scope of the case so that a defendant may be punished for any malfeasance, which in this case extended for a 20-year period."); *Cont'l Trend Res., Inc. v. OXY USA Inc.*, 101 F.3d 634, 639-40 (10th Cir. 1996) ("In figuring harm both actual and potential harm may be considered.  But it must be harm to these plaintiffs, not to others.").

51

## PROPOSED INSTRUCTION 37

### DUTY TO DELIBERATE

I come now to the last part of the instructions, the rules for your deliberations. When you retire you will discuss the case with the other jurors to reach agreement if you can do so. You shall permit your foreperson to preside over your deliberations, and your foreperson will speak for you here in court. Your verdict must be unanimous.[92]

Your verdict must be based solely on the evidence and on the law as I have given it to you in these instructions. However, nothing that I have said or done is intended to suggest what your verdict should be – that is entirely for you to decide.[93]

Each of you must decide the case for yourself, but you should do so only after considering all the evidence, discussing it fully with the other jurors, and listening to the views of the other jurors. Do not be afraid to change your opinion if you think you are wrong.[94] But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. Remember at all times that you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.[95]

When you retire to the jury room to deliberate, you may take with you these instructions and the exhibits that the Court has admitted into evidence. You will also be given a verdict form. The verdict form is simply the written notice of the decision that you reach in this case. After you have reached unanimous agreement on a verdict, your foreperson will fill in the form that

---

[92] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 6.01 (1997).

[93] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 6.02 (1997).

[94] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 6.03 (1997).

[95] 3 Hon. Edward J. Devitt, Hon. Charles B. Blackmar & Michael A. Wolff, *Federal Jury Practice and Instructions* §§ 106.01 & 103.50 (4th ed. 1987) (modified).

has been given to you, sign and date it, and advise the jury officer outside your door that you are ready to return to the courtroom.  After you return to the courtroom, your foreperson will deliver the completed verdict form as directed in open court.[96]

If it becomes necessary during your deliberations to communicate with me, you may send a note through the jury officer signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me on anything concerning the case except by a signed writing, and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.  If you send out a question, I will consult with the parties as promptly as possible before answering it, which may take some time.  You may continue with your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.[97]

After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

---

[96] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 6.04 (1997).

[97] Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 6.05 (1997).

53