UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Magistrate Judge Leo T. Sorokin |

**DEFENDANTS' COMMENTS ON COURT'S PROPOSED JURY INSTRUCTIONS**

Defendants, Pfizer Inc ("Pfizer") and Warner-Lambert Company LLC ("Warner-Lambert") (collectively, "Defendants"), pursuant to this Court's Procedural Order of November 12, 2009 [2172], hereby submit the following comments to the Court's proposed jury instructions. Defendants submit these comments conditionally and without waiving their prior requests for special jury instructions and without waiving their arguments that any issue should not be submitted to the jury, as set forth in Defendants' motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50.

Dated: March 19, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Mark S. Cheffo
        Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Email:  Mark.Cheffo@skadden.com

                SKADDEN, ARPS, SLATE, MEAGHER
                  & FLOM LLP

                By:    /s/ Raoul D. Kennedy
                      Raoul D. Kennedy

                Four Embarcadero Center
                San Francisco CA 94111
                Tel:  (415) 984-6400
                Email:Raoul.Kennedy@skadden.com

                WHEELER TRIGG O'DONNELL LLP

                By:    /s/ James E. Hooper
                      James E. Hooper

                1801 California Street
                Suite 3600
                Denver, CO 80202-2617
                Tel:  (303) 244-1800
                Email:  hooper@wtotrial.com

                *Attorneys for Defendants Pfizer Inc and*
                *Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 19, 2010.

                                /s/ Mark S. Cheffo
                                Mark S. Cheffo

# DEFENDANTS' COMMENTS ON COURT'S PROPOSED JURY INSTRUCTIONS

## I.     Instruction No. 8 – Evidence: Statements Before Trial

This instruction's second paragraph states that "any statements made by the Defendant or its representatives can be considered as evidence."  Pfizer respectfully submits that this instruction should apply to both parties, not just to Pfizer.  In addition, Pfizer requests additional language to make clear that party admissions are admissible only when offered by the opposing party.  Accordingly, Pfizer requests that the quoted language be replaced with the following:

> *statements made by the parties or their representatives, and introduced at trial by the opposing party, can be considered as evidence.*

## II.    Instruction No. 10 – Conflicting Expert Testimony

This instruction's second paragraph discusses expert testimony "about issues such as the efficacy of Neurontin for off-label indications, clinical trial design, and damages."  Plaintiffs also proffered Prof. Rosenthal as their causation expert.  Accordingly, Pfizer requests that "*causation*" be listed after "clinical trial design."

## III.   Instruction No. 13 – Civil RICO Claim, 18 U.S.C. § 1962(c)

This instruction lists essential elements of Plaintiffs' RICO claim, but does not include the elements of "*Causation*" and "*Injury*."  Pfizer requests that these elements be added to the list.

## IV.   Instruction No. 15 – First Element: The Enterprise

Pfizer believes that further language should be added to this instruction to explain how the RICO person/enterprise distinctiveness requirement applies to cases involving corporate defendants.  Pfizer requests that the following language be added at the end of the instruction's third paragraph:

> *Corporations can only act through their employees and agents.  A corporation's association with its own agents to carry out its own business is not an "enterprise" under RICO.  Therefore, to prove an enterprise, Kaiser must prove that Cline and MAC were not simply agents hired to assist Pfizer in conducting its*

*business.*[1]

Also, the instruction's final paragraph provides an unnecessary and potentially confusing summary of the requirements discussed in the preceding paragraphs. Pfizer requests that this summary be omitted.

In addition, the final paragraph treats the "enterprise" requirement as a singular element that may be satisfied by proof of "either" of the two alleged enterprises. Plaintiffs claim that the two alleged enterprises operated during different time periods and engaged in different conduct. Thus, it is important to distinguish between the two alleged enterprises when determining issues of causation and damages. Accordingly, Pfizer requests that the instruction's final paragraph be replaced with the following.

> *You must separately determine whether Kaiser proved the existence of each of the two alleged enterprises. If you find that Kaiser has failed to prove the existence of either enterprise, then there is no liability under RICO. If you find that Kaiser has proved the existence of one enterprise, but not the other, then there is no liability under RICO for any damages allegedly caused by the unproven enterprise.*

## V.     Instruction No. 17 – Third Element: Association with the Enterprise

This instruction is redundant and potentially confusing because it suggests that a Pfizer-Cline or Pfizer-MAC enterprise could exist without Pfizer. Because both of the alleged enterprises consist of an association-in-fact between Pfizer and one other participant, there is no need to separately instruct the jury as to Pfizer's association with either alleged enterprise.

## VI.    Instruction No. 18 – Fourth Element: Engaging in a Pattern of Racketeering Activity

This instruction's third paragraph presents a one-sided and potentially misleading account of Plaintiffs' theory of liability, without addressing any of Pfizer's defenses. Pfizer requests that the jury only be instructed on the legal elements of Plaintiffs' claims. The parties can present

---

[1] *See Mear v. Sun Life Assur. Co. of Canada (U.S.)*, No. 06-12143, 2008 WL 245217, at *9 (D. Mass. Jan. 24, 2008) (Zobel, J.); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 448 (1st Cir. 2000); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). (*See also* RICO Rule 50 Mem. [2669] at Section I.A.)

their theories of the case in closing argument.

Also, the phrasing of this instruction's third paragraph suggests that liability and damages can be based on off-label promotion for conditions "not proven to be scientifically safe and effective." The jury should instead be instructed that Plaintiffs have the burden of proving inefficacy.[2]

## VII. Instruction No. 20 – Fifth Element: Conducting or Participating in the Enterprise "Through" the Pattern of Racketeering

This instruction contains references to "defendants' illegal acts" and "those illegal acts." Pfizer believes that these references are prejudicial because they suggest that the nature and legality of Pfizer's alleged conduct have already been resolved in Plaintiffs' favor. Accordingly, Pfizer requests that these references be deleted.

## VIII. Instruction No. 22 – First Element of Mail Fraud: Scheme to Defraud by Means of False or Fraudulent Pretenses

This instruction states that "false or fraudulent pretenses" includes "actual, direct false statements as well as half truths and the knowing concealment of facts." Pfizer requests that additional language be given in order to clarify that, absent any "half truths," Pfizer has no duty to disclose information to the medical community or to Plaintiffs. For example, Plaintiffs have argued that Pfizer had a duty to disclose all unpublished data in response to requests by Kaiser's DIS and the Cochrane Group. The jury should be instructed that there is no such legal duty.

Pfizer also believes that additional language is needed to distinguish between alleged "half truths" by Pfizer and statements made by non-parties, in sponsored CME events and in sponsored publications, pursuant to unrestricted grants from Pfizer. The FDA permits industry-

---

[2] *See* Report & Recommendation [269] at 22 ("It is simply not enough to claim that Neurontin had not been proven to be effective; rather, Plaintiffs must allege [and ultimately prove] that it was ineffective."); *In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 104 (D. Mass. 2007) ("*Neurontin II*") (holding that Plaintiffs have the burden of proving "Neurontin's inefficacy"); *In re Neurontin Mktg. & Sales Practices. Litig.*, No. 04-CV-10981, 2010 WL 53568, at *13 (D. Mass. Jan. 8, 2010) ("*Neurontin IV*") (recognizing Kaiser's burden of proving that cheaper alternative drugs are "'more optimal'" than Neurontin (citation omitted)); *Sullivan v. City of Augusta*, 51 F.3d 16, 29 (1st Cir. 2007) ("It is plaintiffs' burden to establish injury-in-fact as an essential part of their standing – not the [defendant's] burden to disprove it."), *cert. denied*, 129 S. Ct. 112 (2008).

sponsored publications and CME events that discuss off-label uses, provided that the manufacturer does not control the content.³  As presently phrased, this instruction suggests that Pfizer can be held liable for *failing* to control the content of sponsored events.

In addition, Pfizer requests additional language to ensure that the jury does not engage in impermissible speculation regarding the issue of "half truths" or omissions.  In particular, Pfizer requests language instructing the jury that the specific content of a defendant's affirmative statements determines whether there is a duty to disclose additional information, and that if evidence of a defendant's affirmative statements is lacking, the jury may not speculate.

Finally, Pfizer requests that the term "significant omission" be changed to "*material omission*," and the following language be added at the end of the instruction's third paragraph:

> *In determining whether an omission was material, one of the things you should consider is how the plaintiffs or regional P&T committees responded or failed to respond after they learned of the allegedly omitted information.*

### IX. Instruction No. 23 – Second Element: Knowing and Willful Participation in a Scheme with Intent to Defraud

Defendants request that the following language be added after this instruction's third paragraph:

> *If the defendants acted in good faith, they cannot be guilty of mail or wire fraud. The burden to prove intent, as with all other elements, rests with the plaintiffs.*

Defendants further request that the following language be added as the instruction's final paragraph:

> *Also, there must be a connection between the racketeering acts that constitute a "pattern" and the alleged enterprise at issue.  Such a connection exists only if the plaintiffs show that the defendant was able to commit the predicate racketeering acts either by means or as a result of his involvement with the enterprise.  Alleged acts of wrongdoing which are not shown to bear a requisite relation to the enterprise are irrelevant to whether there was a pattern of RICO activity.⁴  In*

---

³ *See* Final Guidance on Industry-Supported Scientific and Educational Activities, 62 Fed. Reg. 64074, 64084-85 (Dec. 3, 1997); Guidance for Industry-Supported Scientific and Educational Activities, 62 Fed. Reg. 64093 (Dec. 3, 1997).

⁴ *United States v. Nascimento*, 491 F.3d 25, 45-46 (1st Cir. 2007).

*other words, the question before you is not whether the defendants engaged in mail or wire fraud, but whether they engaged in a pattern of mail or wire fraud through the conduct of the enterprises found by you to exist.[5]*

Defendants request that this instruction's fourth paragraph – regarding "conscious avoidance" – be deleted. The "conscious avoidance" standard applies to "one's [own] statements,"[6] not to statements made by non-parties, pursuant to unrestricted grants, at sponsored CME events and in sponsored publications.

## X.   Instruction No. 24 – Off-Label Use of Medications

Pfizer requests that the following language be deleted: "As you heard, defendants pleaded guilty to this crime." First, the instruction incorrectly states that "defendants" pleaded guilty when, in reality, only Warner-Lambert pleaded guilty. Second, the instruction fails to inform the jury of the extremely limited scope of the guilty plea. Third, instructing the jury regarding the guilty plea gives the plea undue weight. If the Court chooses to instruct the jury regarding the guilty plea, Pfizer requests that the following language be substituted for the language quoted above:

> *As you heard, Warner Lambert pleaded guilty to specific incidents of off-label promotion that occurred between April 1995 and August 1996, prior to Warner Lambert's acquisition by Pfizer. The incidents involved certain Warner-Lambert representatives and occurred in discrete locations within the United States. You should not assume that the specific incidents of off-label promotion addressed by the plea were directed towards Kaiser or towards PMG doctors. In addition, you are instructed that the plea is not evidence of a widespread promotional scheme. Nor is the plea evidence of fraud, intent, or ineffectiveness of Neurontin for the off-label conditions at issue in this case.*

Pfizer also requests that the instruction's third paragraph be deleted. The third paragraph states:

> Although a manufacturer has no obligation to publish negative clinical trial results, once it publicly provides information about a drug it has a duty not to omit or suppress material information about the drug. The Supreme Court has

---

[5] *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985) (observing that "the essence of the [RICO] violation is the commission of those [predicate] acts in connection with the conduct of an enterprise"); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006).

[6] *United States v. Brien*, 617 F.2d 299, 312 (1st Cir. 1980).

5

recognized that pharmaceutical manufacturers have superior access to information about their drugs and are under a special duty to investigate and report adverse effects of their drugs. It will be up to you to determine not only whether Pfizer made material misrepresentations in its statements about Neurontin, but also whether there were material omissions by the defendants.

The Court's cited authority – *Wyeth v. Levine*, 129 S. Ct. 1187 (2009) – merely applied a specific FDA regulation governing "[p]ostmarketing reporting of adverse drug experiences." 21 C.F.R. § 314.80, *cited in Wyeth*, 129 S. Ct. at 1219. There is no such regulation requiring disclosure of "negative clinical trials." Moreover, material omissions are already addressed in Instruction 22. Addressing them again here is confusing, because it suggests that "Off-Label Use of Medications" is a separate basis for liability under RICO.

## XI.   Instruction No. 25 – RICO Causation

Pfizer believes that the causation instruction should only address direct reliance by Kaiser itself, not reliance "by Permanente Medical Group physicians." Because Kaiser survived summary judgment based on its direct reliance theory, the jury should only be instructed in accordance with that theory.

Pfizer also believes that additional language should be added to the instruction to reflect the Supreme Court's most recent discussion of the RICO proximate cause requirement. Pfizer therefore requests that the following language be given:

> *If the plaintiffs' injuries depend upon the contingent and independent actions of other persons, then the harm is not sufficiently direct and is not the proximate cause of the injuries claimed by the plaintiffs.*[7]

In addition, because the evidence of causation varied among the different off-label conditions and geographic regions, the jury should be instructed as follows:

> *Kaiser seeks damages for Neurontin prescriptions written for five different off-label conditions. These prescriptions were allegedly written in eight different geographic regions, each of which has its own separate P&T Committee. You must separately determine whether Kaiser has met its burden of proof of all of the elements of its claims, including causation, for each of the alleged enterprises, for*

---

[7] *Hemi Group, LLC v. City of New York*, ___ S. Ct. ___, 2010 WL 246151, at *9 (U.S. Jan. 25, 2010); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457-58 (2006); *Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 267-72 (1992).

6

*each off-label condition and for each geographic region.*

## XII. Instruction No. 26 – RICO Damages

Pfizer requests that the jury be instructed as follows: *Damages may not be based on speculation because it is only actual damages (what the law calls compensatory damages) that you are to determine.*[8]

With respect to Plaintiffs' first damages theory, the jury should be instructed that: *Kaiser has the burden of proving: (1) that Neurontin is categorically ineffective for all patients for the off-label uses at issue; and (2) that no other drug would have been prescribed in place of Neurontin and, therefore, that Kaiser would not have had any offsetting expenses.*

With respect to Plaintiffs' second damages theory, the jury should be instructed that: *Kaiser has the burden of proving: (1) which alternative drugs would actually have been prescribed instead of Neurontin; (2) how many doctors would have actually prescribed those cheaper alternative drugs, as opposed to Neurontin or more expensive alternative drugs; (3) how many patients had already tried Plaintiffs' proposed alternative drugs without success; (4) how many patients would be unable to take Plaintiffs proposed alternative drugs due to side effects, contraindications or drug-drug interactions.*

## XIII. Proposed Additional Instruction – Mitigation of Damages

Defendants propose that the following additional instruction be given, a copy of which is attached hereto as Exhibit A:

> *It is the duty of a person who has been injured to use reasonable diligence and reasonable means under the circumstances, in order to prevent the aggravation of such injuries and to effect a recovery from such injuries. If you should find that the defendants are liable and the plaintiffs have suffered damages, the plaintiffs may not recover for any items of damage which they could have avoided through reasonable effort. If you find by a preponderance of the evidence that the plaintiffs unreasonably failed to take advantage of an opportunity to lessen their damages, then you should reduce the amount of plaintiffs' damages by the amount plaintiffs could have reasonably avoided had they taken advantage of the*

---

[8] *Cf.* Fifth Circuit Pattern Jury Instructions No. 8.1 (2006); Eleventh Circuit Pattern Jury Instructions: Civil Cases § 5.1 (2005).

7

*opportunity.*[9]

## XIV. Instruction No. 27 – RICO Statute of Limitations

Pfizer requests that the Court delete all references to tolling of the limitations period based on fraudulent concealment. Under the discovery rule, a plaintiff's claim accrues when it knew or reasonably should have known of its injury in the exercise of reasonable diligence. The First Circuit has recognized that, once a plaintiff reasonably should have known of its injury, it becomes impossible to satisfy the requirements of tolling based on fraudulent concealment. "[A] plaintiff whose argument for delayed accrual under the discovery rule has failed because [it] has not diligently investigated [its] claim will never be able to successfully argue that the statute of limitations has been tolled under a fraudulent concealment theory." *Rakes v. United States*, 442 F.3d 7, 26 (1st Cir. 2006).

## XV. Instruction No. 28 – California Unfair Competition Law: Types of Conduct Prohibited

In response to the Court's questions – (3/15 Tr. (Court) at 28:10-29:15; 3/16 Tr. (Court) at 90:19-91:20) – Pfizer has revised its Proposed Instruction 23 regarding Plaintiffs' Unfair Competition Law ("UCL") claim. Pfizer requests that the jury be instructed according to this revised instruction, which is attached as Exhibit B. Pfizer also offers the following comments to the Court's draft UCL instructions.

Pfizer respectfully submits that, on the theory of causation and damages alleged by Kaiser in this case, Kaiser can seek recovery only under the UCL's "fraudulent" prong. Kaiser does not seek to recover because the prescriptions that they paid for were off-label. Kaiser admits that it readily pays for off-label prescriptions and many of the alternative drugs it has proposed are also off-label. In fact, Kaiser has stated that it prefers physicians to prescribe cheaper, off-label drugs over FDA-approved drugs if the evidence supports their efficacy. As a result, absent a showing that Pfizer made fraudulent representations or omissions regarding the

---

[9] 3 Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 161.92 (5th ed. 2000) (modified).

8

efficacy of Neurontin, Plaintiffs cannot prove injury and causation to satisfy the standing requirements of the UCL.  Submitting questions on the "unfair" and "unlawful" prongs of the UCL would make the verdict form unnecessarily complex and confusing.  Pfizer also believes that the "deceptive advertising" prong does not apply.

Plaintiffs' claim under the UCL's "unlawful" prong is based on alleged off-label promotion in violation of the federal Food, Drug & Cosmetic Act ("FDCA").  This claim is impliedly preempted by the FDCA.  *See, e.g.*, *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1165-66 (S.D. Cal. 2009) (dismissing UCL claims premised on the sale of adulterated medical devices as impliedly preempted by the FDCA); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2008) (barring UCL claims); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 06-5774, 2009 WL 2043604, at *10 (D.N.J. July 10, 2009) (prohibiting similar off-label promotion claims under RICO and New Jersey Consumer Fraud Act).

For similar reasons, the jury should not be instructed regarding non-fraudulent, but allegedly "unfair" business practices.  The California Supreme Court has held that the UCL's "unfair" prong does not permit courts to "apply purely subjective notions of fairness," and that "the public policy triggering the violation must be tethered to a constitutional or statutory provision . . . or a regulation carrying out statutory policy."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 542-43 (Cal. 1999).  Thus, just as Plaintiffs' claim under the "unlawful" prong would "impermissibly seek private enforcement of the FDCA," *Perez*, 657 F. Supp. 2d at 1164, the same is true of Plaintiffs' claim under the "unfair" prong.

In addition, the jury should not be instructed regarding "advertising" practices.  The majority of courts hold that "advertising" means "widespread promotional activities directed to the public at large," as opposed to "personal solicitations."  *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1276-77 n.9 (Cal. 1992).  Kaiser's direct injury claims are based on alleged direct communications between Kaiser DIS employees and Defendants.  And Kaiser's causation expert, Prof. Rosenthal, only purports to measure the impact of detailing, *i.e.*,

9

"personal solicitations" of prescribing doctors by sales representatives.

## XVI. Instruction No. 29 – "Unlawful" Conduct Defined

As discussed above, Pfizer submits that the jury should not be instructed on the UCL's "fraudulent" prong. Pfizer requests that this instruction be deleted.

## XVII. Instruction No. 30 – "Unfair" Conduct Defined

As discussed above, Pfizer submits that the jury should not be instructed on the UCL's "unfair" prong. Pfizer requests that this instruction be deleted. Pfizer offers the additional comments in case the Court choose to instruct on the "unfair" prong.

First, Pfizer does not believe the jury should be instructed that "the definition of 'unfair' conduct is intentionally broad." This language is not sufficiently neutral for a jury instruction, and it also invites application of "purely subjective notions of fairness," which is not permitted. *Cel-Tech Communications, Inc.*, 973 P.2d at 542.

Second, the instruction currently states that "it must be an injury that the consumers themselves could not reasonably have avoided." Pfizer requests that the phrase "the consumers" be changed to "*plaintiffs*." Pfizer also believes that the following additional language is needed to clarify the distinction between Kaiser and an ordinary consumer:

> *In considering whether an allegedly "unfair" business practice caused injury, you are to consider the audience to whom the practice was directed. In this case, you are to consider whether a sophisticated insurer, with substantial resources and the ability to conduct its own research, was likely to be misled.[10]*

## XVIII. Instruction No. 31 – "Fraudulent" Conduct Defined

As discussed above, Pfizer requests that the jury be instructed according to Proposed Instruction 23 (Revised), which is attached as Exhibit B.

Pfizer also respectfully submits that the phrasing of the Court's draft instruction is not sufficiently neutral, and that it inappropriately downplays and minimizes Plaintiffs' burden of proof. For the example, the instruction states that fraudulent conduct under the UCL is "much

---

[10] *See In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 97 (Cal. Ct. App. 2009).

broader than the concept of mail and wire fraud." The instruction also emphasizes that Plaintiffs "only" need to prove certain elements, and that "plaintiffs do not need to prove" other elements. Pfizer requests that these comments be deleted, and that the jury simply be instructed on the required elements of a UCL claim.

Pfizer also believes that the following additional language is needed to clarify the distinction between Kaiser and an ordinary consumer:

> *In considering whether a representation was likely to mislead, you are to consider the audience to whom the misrepresentation was directed. In this case, you are to consider whether a sophisticated insurer, with substantial resources and the ability to conduct its own research, was likely to be misled.*[11]

### XIX.    Instruction No. 32 – Reliance on Fraudulent Business Practice

Pfizer submits that, in the circumstances of this case, Plaintiffs cannot prove injury and causation to satisfy the standing requirements of the UCL unless they can show that Pfizer made fraudulent representations or omissions regarding the efficacy of Neurontin, and that Plaintiffs' actually relied upon those particular representations or omissions. Because Plaintiffs have specifically asserted the particular representations and omissions they claim to have directly relied upon, the jury should not be instructed regarding "exposure to a long-term advertising campaign." Moreover, as discussed above, "advertising" does not encompass one-on-one communications with Kaiser DIS employees, or one-one-one detailing visits (if any) to PMG doctors.

The jury should also be instructed that Plaintiffs are not entitled to a "presumption of reliance" with respect to PMG doctors. Because Plaintiffs survived summary judgment based on their direct reliance theory, the jury should only be instructed in accordance with that theory. In addition, any "presumption of reliance" is necessarily rebuttable.[12] Having pursued their claims in the aggregate, and denied Defendants access to the individualized evidence needed to rebut any presumption of reliance, Plaintiffs must be required to prove actual reliance.

---

[11] *See In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 97 (Cal. Ct. App. 2009).

[12] *See, e.g.*, *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 977 (Cal. 1997).

Finally, Pfizer requests that the following language be added at the end of the instruction:

*In determining whether plaintiffs relied on any allegedly fraudulent representation or omission, you should consider is how the plaintiffs or regional P&T committees responded or failed to respond after they learned of the allegedly fraudulent representation or omission.*

### XX.     Instruction No. 33 – Duty to Disclose

Pfizer believes that the last paragraph of this instruction is confusing and incorrect, and should be deleted. The instruction's last paragraph appears to say that a duty to disclose is not necessary for a claim based on affirmative misrepresentations. This is confusing and unnecessary. The issue of disclosure is completely unrelated to the issue of affirmative misrepresentations. Moreover, Kaiser's claims are based overwhelmingly, if not entirely, on alleged omissions, which are the subject of this instruction. By incorrectly suggesting that Pfizer may be held liable even in the absence of any duty to disclose, the instruction's final paragraph contradicts the preceding paragraphs, which would unduly confuse the jury.

Finally, Pfizer requests that the following language be added at the end of the instruction:

*In determining whether an omission was material, one of the things you should consider is how the plaintiffs or regional P&T committees responded or failed to respond after they learned of the allegedly omitted information.*

### XXI.    Instruction No. 34 – Restitution

With regard to the measure of any award, Pfizer requests that the jury be instructed that Plaintiffs may not recover any expenditures they could have avoided through the exercise of reasonable diligence. (*See* Exhibit B, Proposed Mitigation Instruction.)

### XXII.   Instruction No. 35 – California UCL: Statute of Limitations

This instruction's third paragraph instructs the jury that accrual of claims under the UCL may be delayed pursuant to the discovery rule. Pfizer respectfully submits that this is incorrect, and that this paragraph should be deleted.

> The "discovery rule," which delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim, does not apply to unfair competition actions.

*Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th

12

884, 891 (2002).[13]

---

[13] *See also, e.g.*, *Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc.*, 285 F.3d 848 (9th Cir. 2002) ("[Plaintiffs'] claims under California Business and Professions Code § 17200 *et seq.* are subject to a four-year statute of limitations which began to run on the date the cause of action accrued, ***not on the date of discovery***.") (emphasis added); *Keilholtz v. Lennox Hearth Prods. Inc.*, No. 08-00836, 2009 WL 2905960, at *4 (N.D. Cal. Sept. 8, 2009) ("The delayed discovery rule does not apply to actions brought under the UCL.").