UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------------x
:
In re: NEURONTIN MARKETING, SALES  : MDL Docket No. 1629
PRACTICES AND PRODUCTS  :
LIABILITY LITIGATION : Master File No. 04-10981
:
----------------------------------------------x Judge Patti B. Saris
:
THIS DOCUMENT RELATES TO: :
: Magistrate Judge Leo T.
THE GUARDIAN LIFE INSURANCE COMPANY OF : Sorokin
AMERICA v. PFIZER INC., 04 CV 10739 (PBS) :
:
:
:
:
----------------------------------------------x

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JURY INSTRUCTION BINDING KAISER TO ITS LITIGATION POSITIONS

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum in support of their request for a jury instruction binding Kaiser to its longstanding positions in this litigation.

As discussed below, the jury should be instructed to disregard testimony by Kaiser witnesses that seeks to disavow the position Kaiser has taken throughout more than five years of litigation, and the position that allowed it to survive summary judgment – *i.e.*, that Kaiser discovered in mid-2002 that it had been directly misled regarding the purported lack of scientific evidence of Neurontin's efficacy for the relevant off-label conditions. Kaiser's tactic violates the doctrines of judicial estoppel and judicial admissions, as well as the principle that clients are bound by their lawyers' actions and charged with their lawyers' knowledge. Accordingly, the jury should be instructed to completely disregard testimony by Kaiser's witnesses that seeks to disavow Kaiser's longstanding positions in this litigation.

### PROPOSED INSTRUCTION

The law does not permit a party to a lawsuit to adopt new positions that contradict positions the party took in earlier stages of the lawsuit. In addition, when a party or a party's attorney makes clear and unequivocal statements in open court or in

court filings, the party is not permitted to later introduce evidence contradicting those statements.  You are further instructed that a party is deemed to have knowledge of information that becomes known to the party's attorneys in the course of the attorneys' representation of the party.

Throughout this lawsuit, Kaiser has taken the position and offered sworn statements claiming that Kaiser discovered in mid-2002 that it had been directly misled regarding the alleged lack of scientific evidence of Neurontin's effectiveness for the off-label conditions at issue.  During this trial, certain Kaiser witnesses testified that they only recently learned of the allegedly misleading conduct and the alleged lack of scientific evidence of Neurontin's effectiveness.  Because this testimony contradicts Kaiser's prior positions and statements in this lawsuit, you are instructed to completely disregard this testimony and to give it no weight.

## ARGUMENT

Pfizer has presented overwhelming evidence that, throughout this litigation, Kaiser has permitted and encouraged off-label Neurontin use for the very conditions at issue.  Plaintiffs have desperately tried to explain away the fundamental contradictions between their longstanding claim that no scientific evidence supports efficacy and their longstanding policies recognizing and encouraging off-label Neurontin use.  They have done so by presenting testimony from a carefully selected group of pharmacists and PMG doctors who had limited or no personal experience with Neurontin.  These witnesses claim that they believed there was scientific evidence favoring off-label Neurontin use until November 2009, when Dr. Dickersin published an article about her analysis in this case – an article that criticized the methodology of certain trials, ***but is completely silent on the question of efficacy***.

For present purposes, the problem with this testimony is not its implausibility.  The problem is that, by offering this testimony, Kaiser seeks to disavow the position it has taken throughout more than five years of litigation, and the position that allowed it to survive summary judgment – *i.e.*, that Kaiser discovered in mid-2002 that it had been directly misled regarding the purported lack of scientific evidence of Neurontin's efficacy for the relevant off-label conditions.  For example:

- In its First Coordinated Amended Complaint, dated February 1, 2005, Kaiser alleged: "Scientific data and evidence did not exist supporting [the relevant] off-label uses. . . .

2

> No clinical trial showed that Neurontin was safe or effective for any of these conditions." (First Coord. Am. Compl. ("FCAC") [31] at ¶ 29.)

- Opposing Pfizer's motion to dismiss, Kaiser argued that "Neurontin is ineffective for unapproved uses" (Joint Mem. Class & Coord. Pls. Opp. M. Dism. [101] at 6 & n.2 (citing FCAC)) and that its claims were based on "the inefficacy of Neurontin for each off-label condition." (Joint Surreply Mem. Class & Coord. Pls. Opp. M. Dism. [144] at 9-10 (citing FCAC).)

- In its Objections to the Magistrate Judge's Report & Recommendations, Kaiser again asserted "the lack of clinical evidence" to support various conditions as well as studies purportedly showing that Neurontin was "ineffective" or "no more effective than placebo" for various conditions. (Coord. Pls' Obj. to Rep. & Rec. [283] at 4-5.)

- And in the Joint Pre-Trial Memorandum, Kaiser argued that it "has consistently taken the position" "that Neurontin is ineffective in treating the off-label conditions at issue . . . [and] has consistently asserted that it is alleging inefficacy – *as well as* the availability of cheaper and more optimal medications." (Joint Pre-Trial Mem. [2500].)

Needless to say, Pfizer disputes Plaintiffs' allegations. But Kaiser cannot now disavow them as it searches for a theory of liability and damages that is not plainly contradicted by its own internal documents, website and behavior outside this litigation. In the clearest and most troubling example of Kaiser's double-speak, Dr. Millares testified under oath, subject to the penalties of perjury, that she first "became aware of the manipulation of studies and the results of the studies and how they were published through the work of Dr. Kay Dickersin and Lisa Bero, and this was published in the New England Journal of Medicine *November, 2009*." (3/4 Tr. (Millares) at 127:16-19 (emphasis added).) Dr. Millares further testified under oath that she never saw Dr. Dickersin's expert report until "*a month or two ago*." (3/4 Tr. (Millares) at 127:25-128:2 (emphasis added).) But when confronted with her sworn declaration dated March 26, 2009, Dr. Millares was forced to concede that she and Kaiser became aware *in 2002* of the alleged "misinformation campaign" and "suppress[ion of] key negative evidence that demonstrated Neurontin's *lack of efficacy*." (3/5 Tr. (Millares) at 12:24-14-25.) Dr. Millares was also forced to admit that she has long been aware of the purported manipulation of studies "[v]ia *the expert reports that I was reading*, yes." (3/5 Tr. (Millares) at 17:16-19.)

Moreover, the positions asserted by Dr. Millares in her March 2009 declaration were the

3

principal grounds for this Court's denial of summary judgment with respect to Kaiser. *See Neurontin*, 2010 WL 53568, at *11-12. (*See also* 3/26/09 Millares Decl. [1749] ¶ 18.) Having survived summary judgment by taking these positions, Kaiser is judicially estopped from taking a contrary position at trial. Under the doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. . . ." *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir. 1987). Judicial estoppel applies where, as here, "a litigant is 'playing fast and loose with the courts,' and when 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Id.* (citation omitted).

Kaiser cannot blame its attorneys for these contradictions. It is well settled that "'each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.'" *Forrest v. Paul Revere Life Ins. Co.*, 662 F. Supp. 2d 183, 195 (D. Mass. 2009) (Saylor, J.) (citation omitted). In addition, Counsel's clear and unequivocal statements in court proceedings or written filings are binding admissions. *See, e.g.*, *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992); *Davis v. Dawson, Inc.*, 15 F. Supp. 2d 64, 92 n.92 (D. Mass. 1998) (Saris, J.).

## CONCLUSION

For all of the foregoing reasons, Pfizer respectfully requests that the Court instruct the jury to completely disregard testimony by Kaiser's witnesses that seeks to disavow Kaiser's longstanding positions in this litigation.

Dated: March 19, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:  /s/ Mark S. Cheffo
     Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Email: Mark.Cheffo@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:  /s/ Raoul D. Kennedy
     Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400
Email: Raoul.Kennedy@skadden.com

WHEELER TRIGG O'DONNELL LLP

By:  /s/ James E. Hooper
     James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800
Email: hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

---

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 19, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo