UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x

In re: NEURONTIN MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

MDL Docket No. 1629

Master File No. 04-10981

------------------------------------------------------------x

THIS DOCUMENT RELATES TO:

Judge Patti B. Saris

*Barlow v. Pfizer Inc, et al.*
Case No. 1:05-cv-11501-PBS

Magistrate Judge Leo T. Sorokin

AND ALL PRODUCTS LIABILITY ACTIONS

**Leave to File Granted on March 19, 2010**

------------------------------------------------------------x

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR PROTECTIVE ORDER IMPOSING COST-SHIFTING**

Defendants Pfizer Inc and Warner-Lambert Company LLC (together, "Pfizer" or "Defendants") respectfully submit this reply memorandum in support of their Motion for Protective Order Imposing Cost-Shifting. Pfizer seeks a protective order providing that the substantial costs necessary to comply with Plaintiffs' burdensome and unwarranted discovery requests be shifted, in whole or in part, to the requesting party.

Instead of addressing the factual and legal substance of Defendants' argument that discovery of the custodial files would be unduly burdensome, Plaintiffs misleadingly direct the Court's attention to the average number of responsive pages produced. The actual number of responsive documents, however, is irrelevant to whether the "sources"[1] are "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Plaintiffs' misconception is apparently rooted in their incorrect assumption that the Court should consider

---

[1] Likewise, Federal Rule of Civil Procedure 26(b)(2)(C), which Defendants also moved under, requires that the Court impose reasonable limits where "the burden or expense of the *proposed discovery* outweighs its likely benefit" in light of several relevant considerations. Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added). It is axiomatic that the scope of the word "discovery" covers more than simply the copying and transfer of relevant documents.

"solely the costs of duplicating the documents," (Pls.' Steering Committee's Opp. [2641] at 4), which is incorrect as a matter of law. The pertinent issue is not about the "copying costs" of the documents ultimately found to be responsive, if any; rather, it is about "the burdens and costs required to search for, retrieve, and produce" from the disputed *sources*, Fed. R. Civ. P. 26(b)(2)(B) advisory committee's note (2006 Amendments), regardless of whether a single responsive documents even exists. As Plaintiffs point out, the discovery of some custodial files in previous cases led to no or few responsive documents, but that does not mean Defendants incurred no costs in responding to the discovery requests directed at the sources. If relevant at all, Plaintiffs' argument – that few responsive documents were found – *actually underscores* the minimal utility of the sources from which they seek discovery through arduous and expensive searching at unreasonable costs to the Defendants.

Likewise, Plaintiffs still have not set forth a single example of information previously obtained from the custodial files that actually led to relevant evidence or was otherwise useful in prior cases.[2] While continuing to make unsubstantiated claims that the materials in the custodial files are of "paramount importance," they offer no evidence to support this claim. (Pls.' Steering Committee's Opp. at 3.) The situation might be different if this litigation was still in its early stages, but now that several cases have gone through extensive discovery, past experience has afforded the parties and the Court a sense of what sources are more likely to contain useful information to the parties.[3] As exemplified by Plaintiffs' failure to point to any relevant, non-

---

[2] Plaintiffs merely posit that they find Defendants' argument "laughable" and then conclusorily state that "it ignores that the materials have been used, and may still be used during trial." (Pls.' Steering Committee's Opp. at 4.) Conspicuously absent, however, is even a modicum of support for this assertion. If the information from the custodial files has been as important as Plaintiffs claim, they should be able to demonstrate this alleged importance with specific examples of how it was used before.

[3] In fact, the advisory committee envisioned this very scenario when it recommended that "the parties may need some focused discovery, which may include sampling of the sources, to learn more about what burdens and costs are involved in accessing the information, what the information consists of, and how valuable it is for the litigation in light of information that can be obtained by exhausting other opportunities for discovery." Fed. R. Civ. P. 26(b)(2)(B) advisory committee's note (2006 Amendments). Under the present circumstances, production of the custodial files in earlier cases constitutes a "sampling of the sources," and this revealed that the information in the custodial files is of marginal value,

2

duplicative evidence obtained from the custodial files, this disputed source would add little value to this litigation. As such, Pfizer should not be burdened with substantial, yet avoidable, costs so that Plaintiffs can continue to drop their buckets down a dry well.

Plaintiffs have further presented nothing to rebut the cost estimates of Defendants' expert, Deena Coffman. Instead, they point to the fact that Pfizer has amended its cost figures based upon the recent report of an independent financial advisor retained for the purpose of presenting to this Court a more accurate estimate of the true discovery costs. Plaintiffs' suggestion that Defendant cannot provide an updated cost estimation based on new evidence is incorrect. *See, e.g., MultiTechnology Servs., L.P. v. Verizon Sw.*, No. Civ.A. 4:02-CV-702-Y, 2004 WL 1553480, at *1-2 (N.D. Tex. July 12, 2004) (ordering cost-shifting and allowing the party to update its cost estimate). Ms. Coffman was recently retained, and Defendants did not have the benefit of her expertise in the state court litigation. As such, the factual landscape has since changed and the relevant figures have been updated accordingly.

Additionally, Plaintiffs' attempts to impugn the calculations of Ms. Coffman are conclusory, baseless, and confusing. Plaintiffs use cherry-picked numbers from Ms. Coffman's affidavit, apply their incorrect assumption that "only the copying costs" should be considered, and then conduct misleading, irrelevant calculations to conclude that the cost of producing a single custodian's file is $53, plus $492 in attorney review costs. (Pls.' Steering Committee's Opp. at 8-9.) Further, Plaintiffs only apply their layman calculations to the number of *responsive documents* produced in the previous litigation, which has no correlation to the costs of "search[ing] for, retriev[ing], and produc[ing]" from the *custodial files*. Fed. R. Civ. P. 26(b)(2)(B) advisory committee's note (2006 Amendments). Plaintiffs' irrelevant manipulations of Ms. Coffman's calculations do not constitute evidence, and they have presented noting that would rebut the expert calculations supporting Defendants' motion. *See Major Tours, Inc. v.*

---

considering that it was not put to use in the previous cases. Furthermore, it was duplicative of information provided by the call notes.

3

*Colorel*, No. 05-3091, 2009 WL 3446761, at *3 (D.N.J. Oct. 20, 2009) ("[P]laintiffs have not credibly rebutted defendants' estimate of the substantial cost that must be spent to retrieve the requested e-mails. It is not sufficient for plaintiffs to merely claim that defendants' estimates are exaggerated or inaccurate.").

Plaintiffs' request for sanctions is, in itself, frivolous, and Plaintiffs fail to support it with anything other than conclusory allegations. Their basic premise is that, because they do not agree with Defendants' position, it constitutes "bad-faith, vexatious, wanton or oppressive behavior." (Pls.' Steering Committee's Opp. at 15-16.) As such, Plaintiffs' argument cannot be legitimized. Furthermore, Plaintiffs' characterization of Defendants' cost-shitting motion as an attempt to "stall discovery" is completely unwarranted and unnecessarily inflammatory. Quite to the contrary, in the spirit of cooperation, Pfizer's consistent position has been that it will produce these custodial files, despite their lack of utility or relevance to this lawsuit, but merely asks that Plaintiffs bear their fair share of the unnecessary and duplicative production costs. (*See, e.g.*, Defs.' Memo. [2578] at 2.) Additionally, Defendants have agreed to produce the materials that have been used most by Plaintiffs in this litigation, the call notes of sales representatives that called-upon prescribing physicians.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that a protective order be entered providing that Plaintiffs bear the costs of retrieving, reviewing, and producing the information responsive to their discovery requests.[4]

---

[4] Defendants note that the parties have recently developed a dispute over who should bear the costs for the production of additional documents from the custodial files of Chris Wohlberg. Pfizer has produced almost 170,000 pages of Mr. Wohlberg's emails. Pfizer was subsequently advised that there are additional documents totaling well over 1 million pages. Pfizer has offered to attempt to locate specific documents to the extent Plaintiffs can identify missing documents after a review of what has already been produced. After producing almost 170,000 pages of documents, it is Pfizer's position that it has produced sufficient relevant materials from the sources most likely to contain relevant information, and therefore Plaintiffs should be forced to bear to costs of any additional review and production of other Wohlberg documents, given that Plaintiffs have been unable to communicate any specific need for additional files or information.

Dated: March 19, 2010                    Respectfully submitted,

                                                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                                        By: /s/ Mark S. Cheffo
                                                               Mark S. Cheffo

                                                        Four Times Square
                                                        New York, NY 10036
                                                        Tel:  (212) 735-3000
                                                        Mark.Cheffo@skadden.com

                                                        *Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

---

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 19, 2010.

              /s/ Mark S. Cheffo
              Mark S. Cheffo