INSTRUCTION NO. ___ - CALIF. UCL REMEDY IN GENERAL

Kaiser has alleged a second claim against Pfizer which is entirely independent and separate from the RICO claim. The second claim alleges that Pfizer violated the California Unfair Competition Law and seeks to recover the money that Kaiser paid for the Neurontin sales that Pfizer made when Kaiser physicians prescribed Neurontin to Kaiser health plan members. This remedy is called restitution, and it is the only remedy available under the Unfair Competition Law. Restitution does not include any punitive penalties or damages for administrative expenses, attorneys' fees, or other losses that you think Kaiser may have suffered.

Kaiser seeks restitution on the basis of its allegation that Pfizer committed two different violations of the Unfair Competition Law. The first violation occurs when a company engages in an unlawful business act or practice. The second type occurs when a company engages in deceptive business act or practice. I will now instruct you on each of these two alleged violations.

Cal. Bus. & Prof. Code §17200 *et seq.*; *e.g., In re Tobacco II Cases*, 46 Cal.4th 298 (2009).

INSTRUCTION NO. __ - UCL UNLAWFUL PRONG

A company violates the Unfair Competition Law when it engages in an act or practice that is unlawful under another law that governs the company's business. In this case, Kaiser has charged Pfizer with promoting off-label sales of Neurontin and that such affirmative promotions and marketing were unlawful because they violated the federal Food and Drug Administration Act's prohibition against off-label marketing by drug manufacturers.

Pfizer pled guilty to this violation. Because this guilty plea amounts to a legal admission, the Court has concluded (and you must find) that Pfizer has committed an unlawful business practice as alleged by Kaiser.

**[[ ALTERNATIVE A – IF COURT CONCLUDES THAT KAISER NEED ONLY PROVE FACT OF INJURY TO HAVE STANDING TO SUE AND THAT INDIVIDUALIZED PROOF OF CAUSATION IS OTHERWISE UNNECESSARY ]]**

The Court has also concluded that Kaiser suffered financial injury as a result of Pfizer's unlawful business practice. However, I request that the jury determine the amount of money to which Kaiser is entitled as restitution. This amount is limited to the money that Kaiser paid to Pfizer for off-label sales of Neurontin for medical conditions that were the subject of Pfizer's illegal off-label marketing. Kaiser bears the burden of proving this amount by a preponderance of the evidence.

The law does not require Kaiser to prove the amount with exact precision. You may base your determination of the amount of restitution on an estimation for which there is a reasonable factual basis.

*In re Tobacco II Cases*, 46 Cal.4th 298 (2009) ( UCL's restitutionary remedy "focuss[es] on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices."); *Fletcher v. Security Pacific National Bank,* 23 Cal.3d 442, 450-51 (1979) ("By this language [in Bus. & Prof. Code §17535], the Legislature obviously intended to vest the trial court with broad authority to fashion a remedy that would effectively 'prevent the use . . . of any practices which violate [the] chapter [proscribing unfair trade practices]" and deter the defendant, and similar entities, from engaging in such practices in the future.  The requirement that a wrongdoing entity disgorge improperly obtained moneys surely serves as the prescribed strong deterrent. . . . This language, we believe, is unquestionably broad enough to authorize a trial court to order restitution without requiring the often impossible showing of the individual's lack of knowledge of the fraudulent practice in each transaction."); *Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 158-59 (Jan. 21, 2010) (As *Tobacco II* made clear, Proposition 64 did not change the substantive law governing UCL claims, other than the standing requirements for the named plaintiffs, and "before Proposition 64, 'California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury.' [Citation.]" (Tobacco II, supra, 46 Cal.4th at p. 326.)   But in any event, the *Cohen* court's discussion regarding the appropriateness of considering class members' reliance when examining commonality is irrelevant here, where the UCL claim is based upon the unlawful prong of the UCL and thus presents no issue regarding reliance.")

*E.g., Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563-66 (1931) (proof of magnitude of damages by reasonable estimation; Sherman Act); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 821 (9th Cir. 2001) (same; federal Fair Housing Act)

**[[ ALTERNATIVE B - IF COURT CONCLUDES THAT JURY MUST FIND ON THE CAUSATION ISSUE BUT THAT PFIZER BEARS THE BURDEN ]]**

Under the Unfair Competition Law, Kaiser is entitled to recoup the payments that it made to Pfizer that probably resulted from Pfizer's unlawful off-label marketing practice.  This remedy is called restitution.  As the jury in this case, you must determine the amount of the restitution to which Kaiser is entitled.  In doing so, you need to make findings on two issues.

The first issue is causation – that is, whether Pfizer's unlawful practice caused Kaiser to pay for the purchases of Neurontin that were made by the Kaiser patients in accordance with the prescriptions written by their Kaiser physicians.  Because Congress has already decided that off-

label marketing by drug manufacturers is a material factor in the sale of prescription medications, there is a presumption that Pfizer's unlawful conduct caused Kaiser to make the payments in question.  You therefore must find in favor of Kaiser on this issue unless Pfizer carries the burden of proving by a preponderance of the evidence that its unlawful conduct was not a substantial factor under the "substantial factor" standard on which I will be giving you a separate instruction.

     The second issue is the amount of the restitution that Kaiser is entitled to recover.   On this issue, Kaiser bears the burden of proof by a preponderance of the evidence.  The law, however, does not require Kaiser to prove the amount with exact precision.  If Kaiser prevails on the causation issue, you may base your determination of the amount of restitution on an estimation for which there is a reasonable factual basis.

*In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009) ("A presumption, or at least an inference of reliance arises wherever there is a showing that a misrepresentation was material.  A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question. . . ."); *Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 158-59 (Jan. 21, 2010) ("As *Tobacco II* made clear, Proposition 64 did not change the substantive law governing UCL claims, other than the standing requirements for the named plaintiffs, and 'before Proposition 64, 'California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury.' [Citation.]' (Tobacco II, supra, 46 Cal.4th at p. 326.)   But in any event, the *Cohen* court's discussion regarding the appropriateness of considering class members' reliance when examining commonality is irrelevant here, where the UCL claim is based upon the unlawful prong of the UCL and thus presents no issue regarding reliance."); *cf.  Ackerman v. Western Electric Co.*, *supra,* 643 F.Supp. 836, 854 (N.D. Cal. 1986) (In explaining shift of burden to employer that committed unlawful discrimination, the court stated, *inter alia*, that "since the Company's unlawful conduct has created the necessity for this back pay judgment, any 'uncertainties in determining what an employee would have earned but for the discrimination should be resolved against the discriminating party.' [Citations omitted]".)

*E.g., Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563-66 (1931) (proof of magnitude of damages by reasonable estimation; Sherman Act); *Silver Sage Partners,*

*Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 821 (9th Cir. 2001) (same; federal Fair Housing Act)

**[[ ALTERNATIVE C – IF COURT CONCLUDES THAT JURY MUST FIND ON THE CAUSATION ISSUE BUT THAT KAISER BEARS THE BURDEN ]]**

Under the Unfair Competition Law, Kaiser is entitled to recoup the payments that it made to Pfizer that probably resulted from Pfizer's unlawful off-label marketing practice. This remedy is called restitution. As the jury in this case, you must determine the amount of the restitution to which Kaiser is entitled. In doing so, you need to make findings on two issues.

The first issue is causation – that is, whether Pfizer's unlawful practice caused Kaiser to pay for the purchases of Neurontin that were made by the Kaiser patients in accordance with the prescriptions written by their Kaiser physicians. Kaiser bears the burden of proving causation by a preponderance of the evidence. To do so, Kaiser must prove that Pfizer's unlawful conduct was a substantial factor in the decisions that Kaiser made in listing Neurontin on its formularies and in the decisions that Kaiser physicians made in prescribing Neurontin. I will soon be giving you a separate instruction concerning the meaning of the "substantial factor" standard.

The second issue is the amount of the restitution that Kaiser is entitled to recover. On this issue, Kaiser bears the burden of proof by a preponderance of the evidence. The law, however, does not require Kaiser to prove the amount with exact precision. If Kaiser prevails on the causation issue, you may base your determination of the amount of restitution on an estimation for which there is a reasonable factual basis.

*In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009) ("It is not necessary that [the plaintiff's] reliance . . . be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision.")

*E.g., Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563-66 (1931) (proof of magnitude of damages by reasonable estimation; Sherman Act); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 821 (9th Cir. 2001) (same; federal Fair Housing Act)

INSTRUCTION NO. _____ – UCL FRAUDULENT PRONG

A company also violates the Unfair Competition Law when it engages in an act or practice that is likely to deceive reasonable buyers. This "likely to deceive" test is different from mail or wire fraud as I defined those terms regarding the RICO claim. Under the Unfair Competition Law, the defendant does not have to act with an actual intent to deceive the buyers. However, the defendant must have said or done things that are likely to mislead a reasonable buyer. In this case, a reasonable buyer is a reasonable health plan and a reasonable physician who treats the health plan's members.

Kaiser bears the burden of proving by a preponderance of evidence that Pfizer engaged in acts or practices that were likely to deceive reasonable buyers.

**[[ ALTERNATIVE A – IF COURT CONCLUDES THAT KAISER NEED ONLY PROVE FACT OF INJURY TO HAVE STANDING TO SUE AND THAT INDIVIDUALIZED PROOF OF CAUSATION IS OTHERWISE UNNECESSARY ]]**

If you find that Pfizer committed a deceptive act or practice as I have defined it, you must then determine that amount of money to which Kaiser is entitled as restitution. This amount is limited to the money that Kaiser paid to Pfizer for off-label sales of Neurontin for medical conditions that were the subject of Pfizer's deceptive conduct. Kaiser bears the burden of proving this amount by a preponderance of the evidence.

The law does not require Kaiser to prove the amount with exact precision. You may base your determination of the amount of restitution on an estimation for which there is a reasonable factual basis.

*In re Tobacco II Cases*, 46 Cal.4th 298 (2009) ( UCL's restitutionary remedy  "focuss[es] on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices.");  *Fletcher v. Security Pacific National Bank,* 23 Cal.3d 442, 450-51 (1979) ("By this language [in Bus. & Prof. Code §17535], the Legislature obviously intended to vest the trial court with broad authority to fashion a remedy that would effectively 'prevent the use . . . of any practices which violate [the] chapter [proscribing unfair trade practices]" and deter the defendant, and similar entities, from engaging in such practices in the future.  The requirement that a wrongdoing entity disgorge improperly obtained moneys surely serves as the prescribed strong deterrent. . . . This language, we believe, is unquestionably broad enough to authorize a trial court to order restitution without requiring the often impossible showing of the individual's lack of knowledge of the fraudulent practice in each transaction."); *Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 158-59 (Jan. 21, 2010) ("As *Tobacco II* made clear, Proposition 64 did not change the substantive law governing UCL claims, other than the standing requirements for the named plaintiffs, and 'before Proposition 64, 'California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury.' [Citation.]' (Tobacco II, supra, 46 Cal.4th at p. 326.).")

*E.g., Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563-66 (1931) (proof of magnitude of damages by reasonable estimation; Sherman Act); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 821 (9th Cir. 2001) (same; federal Fair Housing Act)

**[[ ALTERNATIVE B - IF COURT CONCLUDES THAT JURY MUST FIND ON THE CAUSATION ISSUE ]]**

If you find that Pfizer committed a deceptive act or practice as I have defined it, you must then determine that amount of money to which Kaiser is entitled as restitution..  In doing so, you must make findings on two issues.

The first issue is causation – that is, whether Pfizer's deceptive act or practice caused Kaiser to pay for the purchases of Neurontin that Kaiser patients made in accordance with prescriptions written by their Kaiser physicians.  The burden of proof on this issue depends on whether you find that Pfizer's deceptive information was <u>material</u> – that is, whether a reasonable person would attach importance to its existence or nonexistence in determining whether or not to give Neurontin a favorable listing on a formulary or whether or not to prescribe Neurontin to a

patient.  If you find that the information was material, there is a presumption that Pfizer's deceptive conduct caused Kaiser to make the payments in question.  You therefore must find in favor of Kaiser on the causation issue unless Pfizer carries the burden of proving by a preponderance of the evidence that its deceptive conduct was not a substantial factor under the "substantial factor" standard on which I will be giving you a separate instruction.

If you find that the deceptive information was not material, Kaiser will bear the burden of proving causation by a preponderance of the evidence.  To do so, Kaiser must prove that Pfizer's unlawful conduct was a substantial factor in the decisions that Kaiser made in listing Neurontin on its formularies and in the decisions that Kaiser physicians made in prescribing Neurontin.  Again, I will soon be giving you a separate instructions concerning the meaning of the "substantial factor" standard.

The second issue is the amount of the restitution that Kaiser is entitled to recover.   On this issue, Kaiser bears the burden of proof by a preponderance of the evidence.  The law, however, does not require Kaiser to prove the amount with exact precision.  If Kaiser prevails on the causation issue, you may base your determination of the amount of restitution on an estimation for which there is a reasonable factual basis.

*In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009) ("A presumption, or at least an inference of reliance arises wherever there is a showing that a misrepresentation was material.  A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question. . . ."); *id*. ("It is not necessary that [the plaintiff's] reliance . . . be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision."); *Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 158-59 (Jan. 21, 2010) (As *Tobacco II* made clear, Proposition 64 did not change the substantive law governing UCL claims, other than the standing requirements for the named plaintiffs, and "before Proposition 64, 'California courts

have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury.' [Citation.]" (Tobacco II, supra, 46 Cal.4th at p. 326.).")  *cf. Ackerman v. Western Electric Co.*, *supra,* 643 F.Supp. 836, 854 (N.D. Cal. 1986) (In explaining shift of burden to employer that committed unlawful discrimination, the court stated, *inter alia*, that "since the Company's unlawful conduct has created the necessity for this back pay judgment, any 'uncertainties in determining what an employee would have earned but for the discrimination should be resolved against the discriminating party.' [Citations omitted]".)

INSTRUCTION ___ – "SUBSTANTIAL FACTOR" STANDARD

Under my earlier instructions, you must determine whether Pfizer's violation of the Unfair Competition Law caused Kaiser to pay for Neurontin purchases on the basis of a "substantial factor" standard. I will now instruct you on the meaning of this standard.

An [unlawful] [deceptive] act or practice is deemed to cause the purchase of a product if the act or practice was a substantial factor in the buyer's decision. In this case, the decisions in question are Kaiser's decision to give Neurontin a favorable listing on its formularies and the decisions of the Kaiser physicians to prescribe Neurontin.

To be a "substantial factor," the [unlawful] [deceptive] conduct does not have to be the sole or even the predominant or decisive factor in influencing the buyer's decisions. Rather, if Kaiser has the burden on the causation issue, Kaiser need only show that the [unlawful] [deceptive] conduct played a substantial part in influencing the formulary and prescribing decisions. Conversely, if Pfizer has the burden of proof, Pfizer must prove that its conduct did not play a substantial part in these decisions.

If you find that Pfizer engaged in [unlawful] [deceptive] conduct over a long period of time and that Kaiser and its physicians were exposed to the conduct over this long duration, Kaiser is not required to show that the conduct played a substantial part in any of the many particular prescribing or formulary decisions. From such long-term exposure, you can infer that all of the prescribing and formulary decisions were affected in substantial part by the [unlawful] [deceptive] conduct.

Finally, Pfizer has presented you with evidence that as of certain points in time some

information was available that revealed some of the true facts concerning Neurontin.  The fact that Kaiser or its physicians may have had received or had access to such information does not by itself prevent Kaiser from carrying its burden of proving causation.  You still must determine, on the basis of all of the evidence, whether the [unlawful] [deceptive] conduct played a substantial part in the prescribing and formulary decisions.


*In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009) ( "It is not necessary that [the plaintiff's] reliance . . . be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision."); *id.* at 328 ("[W]here, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements. Finally, an allegation of reliance is not defeated merely because there was alternative information available to the consumer-plaintiff, even regarding an issue as prominent as whether cigarette smoking causes cancer.".)