UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
                                                            :
                                                            :     MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                                :
        SALES PRACTICES AND                                 :     Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION                       :
                                                            :     Judge Patti B. Saris
------------------------------------------------------------x
                                                            :     Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                   :
                                                            :
ALL PRODUCTS LIABILITY CASES                                :
                                                            :
                                                            :
------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF PRODUCTS LIABILITY PLAINTIFFS'
MOTION FOR AN ORDER AWARDING SANCTIONS AGAINST
DEFENDANTS AND COMPELLING DEFENDANTS TO COMPLY WITH
THIS COURT'S OCTOBER 14, 2009 AND DECEMBER 8, 2009 ORDERS**

This Memorandum is submitted in support of Products Liability Plaintiffs' motion

pursuant to Rule 37 of the Federal Rules of Civil Procedure, for an order awarding sanctions

against Defendants and compelling Defendants to comply with this Court's October 14, 2009

and December 8, 2009 Orders that mandate Defendants to produce documents up to the date of

the Bextra settlement regarding the efficacy or side effects of Neurontin within forty-five days;

documents and information regarding the process and events that led to the FDA label change for

Neurontin in April 2009; and discovery of the in-house work, analyses, files and documents upon

which Dr. Christopher Wohlberg relied or considered in his presentations to the FDA on January

31, 2009, June 2, 2008, and July 10, 2008.  ECF Doc. # 2125.

## PROCEDURAL HISTORY

On September 14, 2009, Plaintiffs moved by emergency motion to reopen discovery for

information and documents concerning Neurontin that are responsive to Plaintiffs' discovery

requests up until the April 23, 2009 change in the label for Neurontin, and Pfizer Defendants'

recent August 2009, settlement with the U.S. Department of Justice regarding their off-label

marketing of several drugs including Bextra and Lyrica.  ECF Doc. # 2090.  On October 14,

2009, this Court denied Plaintiffs' request to re-open discovery; however, the Court ordered that

Defendants produce the following discovery:

> **[T]o the extent defendants possess documents, up to the date of the Bextra
> settlement, regarding the efficacy or side effects of Neurontin not previously
> produced, they shall produce the documents within forty-five days.**

* * *

> **The request for discovery into the FDA label change is ALLOWED.**
> [In this regard, Plaintiffs' Memorandum in support had indicated the importance
> of label change discovery, to wit, "The April 2009 label change for Neurontin is
> of similar critical significance, and Plaintiffs are requesting that discovery of
> Pfizer Defendants be re-opened to obtain documents and information so that
> Plaintiffs are fully apprised of the process and events leading up to the label
> change." ECF Doc. # 2090 at 5.  "Moreover, the label change, and all of the
> mechanics, processes, involvement of certain individuals etc., are of crucial
> significance to Plaintiffs' cases." ECF Doc. # 2090 at 6.]

* * *

> **The request for discovery of the in-house work, analyses, files and
> documents upon which Dr. Christopher Wohlberg relied or considered for
> his presentations to the FDA on January 31, 2008, June 2, 2008 and July 10,
> 2008 is ALLOWED.**

ECF Doc. # 2125 (emphasis added).

Subsequent to the issuance of this Order, Defendants moved for clarification of the

October 14, 2009 Order and argued that Plaintiffs were seeking too much discovery.  ECF Doc.

## 2176, 2177, 2178.  Plaintiffs opposed Defendants' motion for clarification.  ECF Doc. # 2183.

This Court denied Defendants' motion for clarification by an Electronic Order on December 8,

2009, stating that "[t]he Court does not view the motion as one for 'clarification'.  The Court

expects the parties to make their best efforts to resolve any discovery disputes."

To date, Defendants have essentially refused to comply with the Order of the Court. The only materials that have been produced are documents from the custodial files of Christopher Wohlberg (167,000 pages), and these materials were produced defectively and out of order[1]. For example, attachments to e-mails are missing and it appears that documents not requiring redactions were produced and that documents with redactions were produced. Plaintiffs raised these production issues no later that February 16, 2010[2]. As of the date of this motion, Defendants have represented that there are additional documents to be produced from Wohlberg, but have not indicated the volume of material or the date by which they will be produced. Furthermore, Defendants have represented that there are an additional 2,000,000 pages of Wohlberg documents responsive to the Court's order which have not been produced and for which the Defendants will not produce without Plaintiffs specifying with particularity which documents are requested.

In an attempt to obtain Defendants' full compliance with this Court's Orders, Plaintiffs' attorneys conferred with defense counsel on several occasions and obtained a representation from defense counsel that Defendants would comply with the Court's October 14, 2009 Order. Despite Defendants' prior representation, Plaintiffs were advised by Defendants for the first time on March 1, 2010, that the only materials that would be provided were those materials from Wolhberg's custodial file, and that unless Plaintiffs agreed to cost shifting for *searching* for responsive documents, Defendants were not going to even look for responsive documents to the court-ordered discovery. In addition, Defendants demanded that Plaintiffs bear costs associated with the collection, attorney review, and production of responsive discovery.

---

[1] *See* Declaration of Keith L. Altman at ¶ 16.
[2] *See* e-mail from Keith L. Altman, Esq., attached to the Declaration of Andrew G. Finkelstein, Esq., as Exhibit A.

## ARGUMENT

Pursuant to Rule 37 of the Federal Rules of Procedure, if a party "fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." (Moore's Federal Rules Pamphlet 2008). A District Judge exercises broad discretion when supervising the discovery process. *Arzuaga-Perello v. Shell Co. (Puerto Rico),* 1999 U.S. App. LEXIS 2162 (1st Cir. 1999); *Cruden v. Bank of New York,* 957 F.2d 961, 972 (2d Cir. 1992). "If, after a court order on a motion to compel, 'the plaintiffs . . . refuse[] to comply with the specific order for production, sanctions [can] appropriately [be] imposed under Rule 37(b)(2).'" *Big Top USA, Inc. v. Wittern Group,* 183 F.R.D. 331, 338 (D. Mass. 1998) (citing to *R. W. Int'l Corp. v. Welch Foods, Inc.,* 937 F.2d 11, 17 (1st Cir. 1991)). "[T]he sanction of dismissal must be available not merely to penalize egregious conduct, but also to deter such conduct." *Id.* The factors to be considered in arriving at an appropriate sanction are "(1) the willfulness or bad faith of the noncomplying party; (2) the prejudice to the opposing party; (3) whether the procedural history indicates "protracted inaction or deliberate delay"; (4) the disregard of earlier warnings of the consequences of the misconduct; and (5) the availability of less draconian factors." *Id.* The First Circuit has stated that it will intervene concerning the trial court's discretion "only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party'" *Arzuaga-Perello,* 1999 U.S. App. LEXIS 2162 at *2 (citing to *Ayala-Gerena v. Bristol Myers-Squibb Co.,* 95 F.3d 86, 91 (1st Cir. 1996)); *see also Remexcel Managerial Consultants, Inc. v. Arlequin,* 583 F.3d 45, 51 (1st Cir. 2009) (affirming District Court's imposition of sanction of default judgment where defendants repeatedly failed to provide discovery and failed to produce court-ordered discovery or heed court's repeated warnings). It is well settled in the First

Circuit that an adverse inference is an appropriate sanction if a party fails or refuses to produce a document that is relevant to a case:

> "The failure or refusal to produce a relevant document, or the destruction of it, is evidence *from which alone* its contents may be inferred to be unfavorable to the possessor, provided the opponent, when the identity of the document is disputed, first introduces some evidence tending to show that the document actually destroyed or withheld is the one as to whose contents it is desired to draw an inference." 2 *Wigmore on Evidence* § 291, at 228 (Chadbourn rev. 1979) (emphasis added).

*Marquis Theatre Corp. v. Condado Mini Cinema,* 846 F. 2d 86, 89 (1st Cir. 1988) (citing to *Knightsbridge Marketing v. Promociones y Proyectos,* 728 F.2d 572, 575 (1st Cir. 1984)). An adverse inference instruction seeks to address the harm suffered due to the failure to produce may take many forms dependent upon the gravity of the failure and whether the act was willful or in bad faith. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC,* No. 05 Civ. 9016 (SAS), 2010 U.S. Dist. LEXIS 4546 at *28-30 (S.D.N.Y. Jan. 15, 2010).

Defendants failed to make any mention that Plaintiffs should be sharing the costs for this discovery in their papers in opposition to Plaintiffs' emergency motion to reopen discovery for information and documents concerning Neurontin that are responsive to Plaintiffs' discovery requests up until the April 23, 2009 change in the label for Neurontin, and Pfizer Defendants' recent August 2009, settlement with the U.S. Department of Justice regarding their off-label marketing of several drugs including Bextra and Lyrica. ECF Doc. # 2111. Defendants thus waived any such an argument in regard to the discovery at issue. It is clear that Defendants are attempting to circumvent this Court's Order and avoid production of this discovery. Defendants should be estopped from making such an argument at this subsequent late date. In good faith, Plaintiffs have tried to obtain the court-ordered discovery and have conferred with Defendants on many prior occasions prior to seeking this Court's intervention. Plaintiffs will be severely

prejudiced in prosecuting these actions if Defendants are not ordered to comply with this Court's prior Order and produce this court-ordered discovery within the next thirty days. Moreover, Plaintiffs request that this Court issue sanctions for Defendants' non-compliance with the Orders, including the cost of Plaintiffs' counsel's expenses and time for researching and briefing the within motion.

Defendants conduct in complying with the Court's Order is nothing short of willful disregard of the Order and Defendants' discovery obligations more generally. This Court ordered Defendants to produce all materials on safety and efficacy not already in the possession of Plaintiffs. Not only have Defendants produced nothing in compliance, they have refused to even search readily accessible materials unless Plaintiffs agree to cost-shifting. This Court ordered Defendants to produce documents associated with the April, 2009 labeling change. To date, Defendants have produced nothing, despite representing to the Court they would produce materials from the NDA. ECF Doc # 2177 at 2. Furthermore, Plaintiffs were specifically seeking the internal documents concerning the labeling change, and this Court did not limit the request to just materials in the NDA. Lastly, this Court ordered Defendants to produce materials that formed the basis of the materials relied upon by Dr. Wohlberg in his FDA presentations. Despite the involvement of several individuals in preparing those materials, Defendants have unilaterally and unreasonably limited their response to materials in the possession of Dr. Wohlberg.

Defendants' actions are in utter defiance of this Court's Order. The Court has ordered Defendants to produce materials. The burden is then on Defendants to seek relief of the Court. Instead, Defendants have refused to make even a modest attempt at complying with the Court's Order, claiming, contrary to well established case law and the Federal Rules of Civil Procedure,

6

that Plaintiffs must first agree to cost-shifting. Defendants have taken the position that any discovery owed to Plaintiffs is not reasonably accessible, regardless of the burden. In their Motion for Protective Order, ECF Doc. # 2089, Defendants took the absurd position that it would cost nearly $114,000 for the production of a sales representative file that averaged 425 pages. They have taken a similar position here, that even though they have responsive materials on an accessible hard drive that can be searched, this represents an unreasonable burden. This flies in the face of the spirit of Rule 26(b)(2)(b) and should be simply dismissed by the Court as frivolous.

Defendants' complaint about the burden of complying with this Court's order should also be dismissed as Defendants have developed the habit of claiming any production is too burdensome, regardless of size. If Defendants were really interested in demonstrating unreasonable burden to the Court, Defendants would have connected the external hard drive which contain the documents they already collected,[4] run searches on topics of safety and efficacy that take little, if any time,[5] and reported back to the Court on the number of documents not already produced. Instead, Defendants have chosen to make wildly unsupported claims of burden and then simply do nothing. Such behavior is willful and deserving of sanctions from this Court.

Subsequent to this Court's order of October 14, 2009, Plaintiffs attempted to meet and confer with Defendants concerning the order. (See generally Declaration of Keith L. Altman, Esq.) Plaintiffs requested that Defendants provide a list of custodians who may have responsive documents and also those individuals involved with preparing the documents used By Dr.

---

[4] See Excerpts from Deposition of Laura Kibbe, Pl.'s Ex. B, at 24:16-25:24.
[5] Id at 27:21-28:5.

Wohlberg.   Defendants simply refused and assured Plaintiffs that they would comply. Defendants' conduct demonstrates that this assurance was meaningless.

There is no question that there were materials that could have easily been searched with minimal effort.   Defendants' Rule 30(b)(6) witness, Laura Kibbe, during her April 7, 2008 deposition, testified that Defendants had collected documents from more than 200 custodians.[6] The documents are maintained in storage that could be readily made available for searching. Defendants have failed to take even this step.   Such conduct is not worthy of sympathy from this Court.   There is no excuse for Defendants to not have searched materials already collected for responsive documents since it would have taken little, if any effort, to search these materials.   If it appeared that there was a large volume of responsive material, Defendants could have conferred with Plaintiffs to see if appropriate limitations could be made.   Instead, Defendants did *nothing* to comply with the Court's order while at the same time assuring Plaintiffs that they would comply.

Defendants' refusal to provide the names of any individuals for whom they collected documents to assist in the refinement of the Court's order further demonstrates Defendants' bad faith.   This information was readily available to them as stated by Laura Kibbe at her deposition.[7] In effect, Defendants failed to offer anything to assist Plaintiffs in limiting the scope of the Court's order, sought relief from the Court, were denied the relief, assured Plaintiffs that they would comply, and then ignored the Court's Order.   Such conduct is outrageous.

As to the Order concerning documents on safety and efficacy not already produced, Defendants have produced nothing and have stated that they will not even search for responsive materials unless Plaintiffs agree to cost-shifting.   Furthermore, Defendants claim that such

---

[6] *Id* at 16:14-16:22.
[7] *Id* at 122:3-123:15.

materials are already in the possession of Plaintiffs. Defendants are wrong. First, the Court ordered Defendants to produce documents not in the possession of Plaintiffs. Therefore, none of the production would be duplicate. Second, there are at least 100 custodial files that have already been from which no documents of any kind have ever been produced. Searching these already-collected materials is a trivial process according to Rule 30(b)(6) witness Kibbe.[8] Lastly, documents regarding safety and efficacy of Neurontin after the original discovery cut-off date have obviously not already been produced.

With respect to responsive post-cut-off date documents, Plaintiffs question what steps Defendants have been taking to preserve these documents. Assuredly, Defendants cannot stand before this Court and maintain that after the discovery cut-off date, their obligations to preserve evidence expired. Assuming that Defendants take preservation obligations seriously, we can only assume that Neurontin-related materials have continued to be collected after the discovery cut-off date. Much like the materials that Defendants maintain from the pre-cut-off period, these materials can likely be searched.

During the last meet and confer call of March 1, 2010, Defendants indicated that in response to the Court's Order on documents that form the basis of the documents Wohlberg relied on, they were only going to produce documents from Wohlberg's files[9]. This completely ignores that Wohlberg did not have anything to do with the statistical analyses contained in the briefing materials. During the initial meet and confer on the Court's Order, Plaintiffs asked Defendants to provide a list of individuals involved in the preparation of the briefing materials used by Wohlberg. Defendants simply refused. After receiving the incomplete Wolhberg production, it is clear Wohlberg is not the only individual with responsive materials to the

---

[8] *Id* at 27:21-28:5.
[9] Altman Decl. at ¶ 19.

Court's Order. It appears that an individual, Ed Whalen, Pfizer's Product Statistical Lead,[10] was the person primarily responsible for this portion of the document and he is one of the individuals who Pfizer sent to attend a talk given by Dr. Robert Gibbons, one of Defendants' experts[11]. Notes were taken of this meeting where Dr. Gibbons discussed his work with Neurontin. As stated in the past, Plaintiffs believe that it is important to understand why the reports of Defendants' litigation expert differ from that of the company's internal analyses. Ed Whalen is the key to this understanding. Defendants have provided no justification for providing Ed Whalen's documents, along with others responsible for the development of the briefing materials. When asked about the documents from Ed Whalen's files, Plaintiffs were told by Defendants that the documents would be produced only if Plaintiffs were willing to bear the costs of the production starting with collecting responsive documents. Defendants' conduct unilaterally disregards the Order of the Court and continues to frustrate Plaintiffs' attempts to obtain that which has already been ordered by the Court.

In a conversation with defense counsel on March 18, 2010, Plaintiffs' attorneys learned for the first time that there was a significant error by Defendants' vendor in producing the Wohlberg files. Apparently, of the Wohlberg documents produced to Plaintiffs, more that 2,000,000 pages of documents were collected as attachments to the produced documents, yet the attachments have not been produced. Defendants have taken the position that none of these documents will be produced to Plaintiffs unless Plaintiffs indicate which documents are desired. This turns document production on its head. This Court ordered the production of documents relied upon by Dr. Wohlberg for the FDA presentations. Defendants should simply comply. Furthermore, Plaintiffs are not opposed to suggestions by Defendants as to how these documents

---

[10] Pl.'s Ex. C, PFIZER_WOHLBERG_019588.
[11] Pl.'s Ex. D, PFIZER_WOHLBERG_046824.

not produced can be narrowed, but it is unfair for the burden to be completely placed upon Plaintiffs for such narrowing. If Defendants do not want to take the time to review the materials that this Court ordered them to produce, then they can simply produce all of the documents under a Fed. R. Evid. 502(d) agreement which would allow for the recovery of privileged documents inadvertently produced.

Since Defendants have willfully and substantially failed to comply with the Court's Order and have done nothing to assist in narrowing the scope of the production. Plaintiffs request that the Court's Order be complied with as written and that Defendants have waived any further objections. In the event that the Court would allow Defendants another opportunity to narrow the discovery that Plaintiffs be provided the database of custodians whose files were collected as well as the search terms used by the Defendants to find responsive documents. As noted above, it is clear that Defendants conduct is willful and that the discovery which this Court ordered Defendants to produce is relevant and of great import to several issues in this case. Plaintiffs will be severely prejudiced in their prosecution of this action if they are not able to obtain this discovery.

Plaintiffs respectfully request that this Court issue an adverse inference instruction to the jury where Defendants have withheld relevant evidence during the discovery of this case, and that this evidence will be weighed against Defendants and in favor of Plaintiffs. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC,* 2010 U.S. Dist. LEXIS 4546 at *28-30. In the alternative, Plaintiffs request that this Court issue an second order compelling Defendants to produce these documents  and adjourning the trial in *Shearer v. Pfizer Inc.,* 1:07-cv-11428-PBS, to allow Defendants sufficient time to complete the production of this discovery and sufficient time for Plaintiffs to review same.

## CONCLUSION

Plaintiffs therefore respectfully request that this Court order that Defendants will receive an adverse inference instruction to the jury in future trials where Defendants have withheld relevant evidence during the discovery of the case, and that this evidence will be weighed against Defendants and in favor of Plaintiffs.  In the alternative, Plaintiffs request that this Court issue an order compelling Defendants to produce these documents and adjourning the trial in *Shearer* to allow Defendants sufficient time to complete the production of this discovery and sufficient time for Plaintiffs to review same.

Dated:  March 19, 2010                              Respectfully submitted,

                                                    ***Members of Products Liability***
                                                    ***Plaintiffs' Steering Committee***


                                        By:     **/s/ Andrew G. Finkelstein**
                                                Andrew G. Finkelstein, Esquire
                                                Finkelstein & Partners, LLP
                                                1279 Route 300, P.O. Box 1111
                                                Newburgh, NY  12551


                                        By:     **/s/ Jack W. London**
                                                Jack W. London, Esquire
                                                Law Offices of Jack W. London
                                                   & Associates
                                                106 E. 6th Street, Suite 700
                                                Austin, TX  78701


## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on March 19, 2010.


                                                **/s/ Andrew G. Finkelstein**
                                                Andrew G. Finkelstein, Esquire