INSTRUCTION NO. __ - UCL UNFAIR PRONG

[to follow fraudulent prong instruction]

Separate and apart from acts or practices that are unlawful or deceptive, a company also violates the Unfair Competition Law when it engages in an act or practice that is "unfair." An unfair act or practice is one that violates an established public policy or is immoral, unethical or unscrupulous. As I stated previously, the federal Food and Drug Administration Act prohibits off-label marketing by drug manufacturers. This statute is an established public policy. Because Pfizer pled guilty to violating the statute, the Court has concluded (and you must find) that Pfizer has committed an unfair business practice as alleged by Kaiser.

*E.g., Cel-Tech Communications v. Los Angeles Cellular Telephone Co.* 20 Cal.4th 163, 186-87 (1999) ("These principles convince us that, to guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition. We thus adopt the following test: 'When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to the same as a violation of the law, or otherwise significantly threatens or harms competition. [Footnote 12: This case involves an action by a competitor alleging anticompetitive practices. Our discussion and this test are limited to that context . . . ."].); *Gregory v. Albertson's, Inc.* 104 Cal.App.4th 845, 853-54 (2002) ("Since the test adopted by the court in *Cel-Tech* is expressly limited to the context of that case, our inquiry continues to be guided by p[rior Court of Appeal decisions. . . . 'A business practice constitutes unfair competition if it is forbidden by any law . . . or if it is unfair, that is, if it 'offends an established public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' . . .' (*Podolsky v. First Health care Corp.* (1996) 50 Cal.App.4th 632, 647, citations omitted.".)

**[[ ALTERNATIVE TO PRECEDING PARAGRAPH IF COURT DOES NOT INSTRUCT THAT JURY MUST FIND UNFAIRNESS:]**

-1-

Separate and apart from acts or practices that are unlawful or deceptive, a company also violates the Unfair Competition Law when it engages in an act or practice that is "unfair." An unfair act or practice is one that violates an established public policy or is immoral, unethical or unscrupulous. As I stated previously, the federal Food and Drug Administration Act prohibits off-label marketing by drug manufacturers. This statute is an established public policy. You must consider this fact, Pfizer's 2004 plea that it was guilty of violating the statute, and all of the other evidence in determining whether Pfizer engaged in an unfair act or practice.

**[[ ALTERNATIVE A – IF COURT CONCLUDES THAT KAISER NEED ONLY PROVE FACT OF INJURY TO HAVE STANDING TO SUE AND THAT INDIVIDUALIZED PROOF OF CAUSATION IS OTHERWISE UNNECESSARY ]]**

The Court has also concluded that Kaiser suffered financial injury as a result of Pfizer's unfair business practice. However, I request that the jury determine the amount of money to which Kaiser is entitled as restitution. This amount is limited to the money that Kaiser paid to Pfizer for off-label sales of Neurontin for medical conditions that were the subject of Pfizer's unfair off-label marketing. Kaiser bears the burden of proving this amount by a preponderance of the evidence.

The law does not require Kaiser to prove the amount with exact precision. You may base your determination of the amount of restitution on an estimation for which there is a reasonable factual basis.

*In re Tobacco II Cases*, 46 Cal.4th 298 (2009) ( UCL's restitutionary remedy  "focuss[es] on the

defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices."); *Fletcher v. Security Pacific National Bank,* 23 Cal.3d 442, 450-51 (1979) ("By this language [in Bus. & Prof. Code §17535], the Legislature obviously intended to vest the trial court with broad authority to fashion a remedy that would effectively 'prevent the use . . . of any practices which violate [the] chapter [proscribing unfair trade practices]" and deter the defendant, and similar entities, from engaging in such practices in the future. The requirement that a wrongdoing entity disgorge improperly obtained moneys surely serves as the prescribed strong deterrent. . . . This language, we believe, is unquestionably broad enough to authorize a trial court to order restitution without requiring the often impossible showing of the individual's lack of knowledge of the fraudulent practice in each transaction."); *Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 158-59 (Jan. 21, 2010) (As *Tobacco II* made clear, Proposition 64 did not change the substantive law governing UCL claims, other than the standing requirements for the named plaintiffs, and "before Proposition 64, 'California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury.' [Citation.]" (Tobacco II, supra, 46 Cal.4th at p. 326.) But in any event, the *Cohen* court's discussion regarding the appropriateness of considering class members' reliance when examining commonality is irrelevant here, where the UCL claim is based upon the unlawful prong of the UCL and thus presents no issue regarding reliance.")

*E.g., Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563-66 (1931) (proof of magnitude of damages by reasonable estimation; Sherman Act); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 821 (9th Cir. 2001) (same; federal Fair Housing Act)

## [[ ALTERNATIVE B - IF COURT CONCLUDES THAT JURY MUST FIND ON THE CAUSATION ISSUE BUT THAT PFIZER BEARS THE BURDEN ]]

Under the Unfair Competition Law, Kaiser is entitled to recoup the payments that it made to Pfizer that probably resulted from Pfizer's unfair off-label marketing practice. This remedy is called restitution. As the jury in this case, you must determine the amount of the restitution to which Kaiser is entitled. In doing so, you need to make findings on two issues.

The first issue is causation – that is, whether Pfizer's unfair practice caused Kaiser to pay for the purchases of Neurontin that were made by the Kaiser patients in accordance with the prescriptions written by their Kaiser physicians. Because Congress has already decided that off-label marketing by drug manufacturers is a material factor in the sale of prescription

medications, there is a presumption that Pfizer's unfair conduct caused Kaiser to make the payments in question.  You therefore must find in favor of Kaiser on this issue unless Pfizer carries the burden of proving by a  preponderance of the evidence that its unfair conduct was not a substantial factor under the "substantial factor" standard on which I will be giving you a separate instruction.

The second issue is the amount of the restitution that Kaiser is entitled to recover.   On this issue, Kaiser bears the burden of proof by a preponderance of the evidence.  The law, however, does not require Kaiser to prove the amount with exact precision.  If Kaiser prevails on the causation issue, you may base your determination of the amount of restitution on an estimation for which there is a reasonable factual basis.

*In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009) ("A presumption, or at least an inference of reliance arises wherever there is a showing that a misrepresentation was material.  A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question. . . ."); *Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 158-59 (Jan. 21, 2010) ("As *Tobacco II* made clear, Proposition 64 did not change the substantive law governing UCL claims, other than the standing requirements for the named plaintiffs, and 'before Proposition 64, 'California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury.' [Citation.]' (Tobacco II, supra, 46 Cal.4th at p. 326.)   But in any event, the *Cohen* court's discussion regarding the appropriateness of considering class members' reliance when examining commonality is irrelevant here, where the UCL claim is based upon the unlawful prong of the UCL and thus presents no issue regarding reliance."); *cf. Ackerman v. Western Electric Co.*, *supra,* 643 F.Supp. 836, 854 (N.D. Cal. 1986) (In explaining shift of burden to employer that committed unlawful discrimination, the court stated, *inter alia*, that "since the Company's unlawful conduct has created the necessity for this back pay judgment, any 'uncertainties in determining what an employee would have earned but for the discrimination should be resolved against the discriminating party.' [Citations omitted]".)

*E.g., Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563-66 (1931) (proof of magnitude of damages by reasonable estimation; Sherman Act); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 821 (9th Cir. 2001) (same; federal Fair Housing Act)

**[[ ALTERNATIVE C – IF COURT CONCLUDES THAT JURY MUST FIND ON THE CAUSATION ISSUE BUT THAT KAISER BEARS THE BURDEN ]]**

Under the Unfair Competition Law, Kaiser is entitled to recoup the payments that it made to Pfizer that probably resulted from Pfizer's unfair off-label marketing practice. This remedy is called restitution.  As the jury in this case, you must determine the amount of the restitution to which Kaiser is entitled.  In doing so, you need to make findings on two issues.

The first issue is causation – that is, whether Pfizer's unfair practice caused Kaiser to pay for the purchases of Neurontin that were made by the Kaiser patients in accordance with the prescriptions written by their Kaiser physicians.  Kaiser bears the burden of proving causation by a preponderance of the evidence.  To do so, Kaiser must prove that Pfizer's unfair conduct was a substantial factor in the decisions that Kaiser made in listing Neurontin on its formularies and in the decisions that Kaiser physicians made in prescribing Neurontin.  I will soon be giving you a separate instruction concerning the meaning of the "substantial factor" standard.

The second issue is the amount of the restitution that Kaiser is entitled to recover.   On this issue, Kaiser bears the burden of proof by a preponderance of the evidence.  The law, however, does not require Kaiser to prove the amount with exact precision.  If Kaiser prevails on the causation issue, you may base your determination of the amount of restitution on an estimation for which there is a reasonable factual basis.

*In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009) ("It is not necessary that [the plaintiff's] reliance . . . be the sole or even the predominant or decisive factor in influencing his conduct. . . .

It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision.")

*E.g., Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563-66 (1931) (proof of magnitude of damages by reasonable estimation; Sherman Act); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 821 (9th Cir. 2001) (same; federal Fair Housing Act)