UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------x
In re: NEURONTIN MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

------------------------------------------------x

THIS DOCUMENT RELATES TO:

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC., 04 CV 10739 (PBS)

------------------------------------------------x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CURATIVE INSTRUCTION

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum in opposition to Plaintiffs' motion for a "curative instruction" regarding products liability lawsuits [2720] and in response to Plaintiffs' Notice of Proposed Jury Instruction [2722].

### PRELIMINARY STATEMENT

Based on the pretext that defense counsel opened the door to issues of patient safety through certain remarks during opening statement, Plaintiffs request a "curative instruction" comprising overtly prejudicial statements about issues that are completely irrelevant to this case. This proposed instruction reads as follows:

> In its opening argument, counsel for defendant stated that "there is no claim that any patient was injured as a result of" its off-label marketing of Neurontin. You should take notice of the following facts:
>
> (1) A number of lawsuits have been filed against Pfizer, Inc. in various U.S. federal and state courts and in certain other countries alleging suicide, attempted suicide and other personal injuries as a result of the purported ingesting of Neurontin.
>
> (2) Certain of the federal court actions have been transferred to this

> Court for consolidated pre-trial proceedings with other litigation concerning Neurontin, including this case.
>
> (3)   Skadden, Arps, Slate, Meagher & Flom LLP are the lead lawyers for Pfizer, Inc. in this case, as well as in all of the other cases concerning Neurontin pending before this Court.

(Pl. Mem. [2721] at 3; *see also* Proposed Curative Instruction [2722-2].)

This proposed instruction is patently improper for several reasons. First, a corrective instruction is totally unnecessary, as defense counsel made no misleading statements about patient safety issues. Rather, counsel's remarks were made simply to clarify the actual scope of this case and of the criminal investigation against Warner-Lambert. Moreover, Plaintiffs' purported concerns are moot, because the jury has heard extensive testimony from Dr. Furberg regarding the alleged suicide risk, and has also heard gratuitous references to suicide litigation by Plaintiffs' counsel and Dr. Hartman. Second, any corrective instruction concerning the Neurontin personal injury litigation would not have any probative value, both because it is well-established that allegations are not evidence, and because the personal injury litigation lacks substantial similarity to the purely economic claims here. Indeed, this proposed instruction would violate due process by suggesting that damages be imposed based on unrelated, dissimilar conduct that allegedly harmed non-parties. Third, Plaintiffs' proposed instruction is manifestly overbroad and calculated simply to impugn defense counsel. Accordingly, Plaintiffs' proposed instruction should be rejected.

## ARGUMENT

### I.   Defense Counsel Did Not Make Misleading Statements

On their face, and especially when viewed in context, defense counsel's statements were neither inaccurate nor remotely prejudicial to Kaiser. For example, Kaiser complains of defense counsel's statement that "[t]here will be absolutely no claim *in this case* that anybody has been injured or killed by Neurontin or gabapentin." (2/22 Tr. (Kennedy) at 120:23-25 (emphasis added); Pl. Mem. [2721] at 2.) This statement clearly and accurately referred only to Kaiser's economic damages claims "in this case." Likewise, in stating that "*the evidence* is going to

show there is no claim that any patient was injured *as a result of any of that happening*," defense counsel was explicitly addressing "the evidence" in this economic damages case, and the "off-label campaign" that was the subject of the Warner-Lambert Plea. (2/22 Tr. (Kennedy) at 129:11-22.) Defense counsel's statement had nothing to do with the failure-to-warn claims at issue in unrelated personal injury lawsuits.

Kaiser also complains of defense counsel's reference to the "Hippocratic oath" and statement that "[Neurontin's] side effects are far milder and can be tolerated by people more than almost any other AED, so it's an easy-to-take drug." (*Id.* at 127:12-14, 128:23-129:3; Pl. Mem. [2721] at 1-2.) First of all, as even Kaiser concedes, defense counsel prefaced these statements by acknowledging that "Neurontin does have side effects. It's not side effect free." (2/22 Tr. (Kennedy) at 127:11; Pl. Mem. [2721] at 1.) Second, defense counsel's comparison of Neurontin's side-effect profile to that of "other AED[s]" is not misleading because all AEDs now carry identical suicide warnings. And third, Plaintiffs' own bipolar expert agrees with defense counsel's statements. Dr. Barkin prescribed Neurontin to his own patients for bipolar disorder even after concluding that it was ineffective for that condition. (2/26 Tr. (Barkin) at 36:5-14, 39:8-40:10, 53:20-54:4.) He did so because of Neurontin's "minimal drug-drug interactions, low risk of toxicity, and favorable side-effect profile." (*Id.* at 53:5-54:4.) Dr. Barkin felt comfortable prescribing the drug to his bipolar patients because "[he] felt that it didn't have harm, even though it [allegedly] lacked efficacy, yes. That's a reasonable statement." (*Id.* at 53:24-54:4.)

## II.   An Instruction Is Unnecessary Because the Jury Has Already Heard Testimony on the Alleged Suicide Risk

The concerns Plaintiffs expressed on the first day of trial, following defense counsel's opening statement, have been rendered completely moot. The jury has heard extensive testimony from Dr. Furberg regarding the alleged suicide risk. Plaintiffs' counsel have also made gratuitous references to "the Neurontin suicide litigation" in the presence of the jury. (3/15 Tr. (Greene) at 136:16-17.) Likewise, Plaintiffs' expert gratuitously referenced "some of the clinical press talking about people that became suicidal when they were given Neurontin." (3/9

3

Tr. (Hartman) at 71:22-24.)  At this point, Defendants are the only parties who have been prejudiced on the issue of suicide cases.  Plaintiffs are not entitled to exacerbate the prejudice with a completely unnecessary and improper "curative" instruction.

## III. The Jury Should Not Be Instructed On Issues With No Relevance to Kaiser's Claims

Even if defense counsel's statements could actually be construed as misleading, a corrective instruction concerning the Neurontin personal injury litigation would be utterly irrelevant to any issue in this case.  The fact that various plaintiffs have filed personal injury and wrongful death lawsuits has nothing to do with Kaiser's claims of purely economic injury.  It is well settled that evidence of other injuries and lawsuits is inadmissible absent a showing of substantial similarity.  *See Cameron v. Otto Bock Orthopedic Indus., Inc.*, 43 F.3d 14, 16 (1st Cir. 1994) ("[R]eports of other incidents would be probative evidence . . . only if the incidents occurred under circumstances substantially similar to those surrounding [plaintiff's] accident."); *accord Perez-Trujillo v. Volvo Car Corp. (Sweden)*, 137 F.3d 50, 54 n.7 (1st Cir. 1998).[1]

Moreover, Plaintiffs' proposed instruction would violate the due process concerns expressed by the Supreme Court in *Philip Morris USA v. Williams*, 549 U.S. 346, 349 (2007), *cert. granted in part*, 128 S. Ct. 2904 (2008), *cert dismissed*, 129 S. Ct. 1436 (2009), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 429 (2003), by inviting the jury to impose liability and award damages based on unrelated, dissimilar conduct that purportedly harmed non-parties.

Beyond the fact that this case has nothing to do with personal injury or suicide, the mere existence of lawsuits has no probative value as to whether a product causes personal injury or suicide.  Allegations are not evidence, and, if offered to prove the truth of the matter asserted –

---

[1] *See also, e.g.*, *McLeod v. Parsons Corp.*, 73 F. App'x 846, 853-54 (6th Cir. 2003) (affirming trial court's exclusion of other unrelated lawsuits against defendant); *Barnes ex rel. Estate of Barnes v. Koppers, Inc.*, No. 3:03CV60-P-D, 2006 WL 940279, at *3 (N.D. Miss. Apr. 11, 2006) (holding that "evidence of other lawsuits, claims, and injuries" even in same area was "irrelevant to this case and therefore inadmissible").

4

whether general causation, failure to warn, or some other issue – are hearsay for which there is no exception. *See, e.g.*, *Olson v. Ford Motor Co.*, 410 F. Supp. 2d 855, 861 (D.N.D. 2006); *Boston Beverage Corp. v. Turner*, 81 B.R. 738, 747 (D. Mass. 1987). In fact, even if another lawsuit is tried and the jury finds for the plaintiff, the jury verdict is inadmissible hearsay. *See* Fed. R. Evid. 803(22) (hearsay exception for judgments in other cases applies only to criminal felony cases). As a result, courts have been unwilling to even admit *judgments* from previous cases, *see, e.g.*, *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987); *Colonial Refrigerated Transportation, Inc. v. Mitchell*, 403 F.2d 541, 551 (5th Cir. 1968), let alone the highly prejudicial allegations from a litigation involving totally different issues that Plaintiffs proffer here. Thus, because Plaintiffs' proposed instruction would simply interject irrelevant issues into this already complicated case, no such instruction should be given.

Finally, Kaiser's pretense that this case is about anything other than "money" (Pl. Mem. [2721] at 2) falls flat. The Neurontin products liability cases have been pending for years. Neurontin, like all other AEDs, carries a suicide warning. As Dr. Hyatt concedes, "Kaiser has the ability with its databases to get a message overnight if they think their patients are facing some serious medical problem." (3/3 Tr. (Hyatt) 145:4-6.) Kaiser has done no such thing, nor has Kaiser changed its reimbursement policies or issued guidelines to address any purported health concerns. Kaiser simply filed a lawsuit for money damages.

## IV. Plaintiffs' Purported "Corrective Instruction" Is Overbroad and Unfairly Prejudicial

In addition, Plaintiffs' proposed stipulation is wildly overbroad and prejudicial. There is no need to advise the jury that "[a] number of" lawsuits have been filed, or that those lawsuits allege "suicide" or "attempted suicide." (Pl. Mem. [2721] at 3.) Even if the Court decides to advise the jury of the existence of personal injury and wrongful death lawsuits (which Pfizer contends is unnecessary and inappropriate), any such instruction should be narrowly tailored to avoid unnecessary confusion and prejudice. For example, after Plaintiffs' witnesses made irrelevant and prejudicial references to national litigation and related lawsuits by Aetna and

5

Guardian, defense counsel asked the Court to instruct the jury that Aetna's and Guardian's claims "were dismissed." (3/8 Tr. (Cheffo) at 191:19-192:13.) The Court indicated that it is inclined to give a much more neutral instruction to the effect that "'[t]his is part of a much larger piece of litigation, and you shouldn't speculate about any of the rest of it,' just leave it right then and there." (3/8 Tr. (Court) at 192:11-13.) Any instruction regarding injury claims should be similarly neutral. At most, the Court should simply advise that some lawsuits have been filed by plaintiffs who claim that Neurontin use caused injury, that Pfizer disputes those allegations, that none of those cases have been tried, that allegations are not evidence, that these lawsuits have nothing to do with Kaiser's claims of economic injury, and that the Court is merely bringing these suits to the jury's attention to correct any misimpression that may have been created during opening statements.[2]

The second and third paragraphs of Plaintiffs' proposed instruction reveals the document for what it truly is: an attempt to impugn Pfizer and its counsel through irrelevant assertions. Paragraphs 2 and 3 represent a misguided attempt to impeach defense counsel's credibility by advising the jury that defense counsel was aware of personal injury and wrongful death lawsuits during counsel's opening statement. But counsel's statements are not evidence. *See Intercity Maint. Co. v. Local 254, Service Employees Int'l Union*, 241 F.3d 82, 88 n.4 (1st Cir. 2001); *Fernandez v. Chardon*, 681 F.2d 42, 59 n.10 (1st Cir. 1982), *aff'd sub nom. Chardon v. Fumero Soto*, 462 U.S. 650 (1983). Therefore, counsel's credibility is not at issue, and Plaintiffs' attempted impeachment has no probative value whatsoever.

Attempts to prejudice the jury against opposing counsel are improper and should not be

---

[2] To the extent the Court believes that an instruction should be given, the following language would be more appropriate than what has been proposed by Plaintiffs: "In his opening statement, counsel for defendant stated that "There will be absolutely no claim in this case that anybody has been injured or killed by Neurontin or gabapentin." (2/22 Tr. at 120:23-25.) While Kaiser is not seeking recovery in this case because of anyone allegedly harmed by Neurontin, other lawsuits have been filed in which some plaintiffs allege that someone attempted or committed suicide as a result of using Neurontin or suffered harm from Neurontin or gabapentin. Pfizer has denied the allegations of those lawsuits. The Court is bringing these other lawsuits to your attention merely to correct any confusion from opening statements. You are not to consider such lawsuits in connection with your deliberations."

permitted. Personal attacks on opposing counsel are highly prejudicial. *See Moody v. Ford Motor Co.*, 506 F. Supp. 2d 823, 845 (N.D. Okla. 2007) (granting new trial due to, *inter alia*, prejudicial attacks against defense counsel by plaintiff's counsel); *DeLaporte v. Robey Bldg. Supply, Inc.*, 812 S.W.2d 526, 537 (Mo. Ct. App. 1991) (holding that "remarks intended to arouse prejudice" against defendant's lawyers were not within the scope of legitimate argument); *see also, e.g.*, *Smerke v. Office Equip. Co.*, 158 S.W.2d 302, 303 (Tex. Ct. App. 1941) (references to the geographic location of opposing counsel have nothing to do with the merits of the case and should never be indulged in). Indeed, other courts have recognized that attempts to impugn counsel by referring to the size of the firm – implicit here in Plaintiffs' statement that defense counsel "are the lead lawyers for Pfizer, Inc." in all Neurontin-related litigation in this Court[3] – are "highly improper." *See Brown v. Arco Petroleum Prods. Co.*, 552 N.E.2d 1003, 1005-06 (Ill. App. Ct. 1989) (comments on the size of defendant's 150-lawyer law firm served no legitimate purpose), *appeal denied*, 561 N.E.2d 687 (Ill. 1990); *see also Shemman v. Am. Steamship Co.*, 280 N.W.2d 852, 857-58 (Mich. Ct. App. 1979) (plaintiff's reference to the size and location of defendant's 130-lawyer New York law firm was improper). This Court should not countenance Plaintiffs' effort to malign defense counsel under the pretext of a "curative instruction." If any instruction is given, it must actually be used to correct, and should therefore be substantially narrowed to prevent prejudice to Pfizer, as set forth above.

This trial is already complicated and long enough. The jury is being asked to consider complex scientific testimony on the efficacy of Neurontin for five separate uses. The only reason that Plaintiffs could possibly have for injecting the issue of suicide at this late date would be to confuse the jury into thinking that this case is about something other than a large insurance company seeking to recovery economic damages. Such a blatant appeal to prejudice should not be permitted.

---

[3] (Pl. Mem. [2721] at 3; Proposed Curative Instruction [2722-2] at ¶ 3.)

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for a "curative instruction" should be denied.

## REQUEST FOR ORAL ARGUMENT

Defendants believe that oral argument will assist the Court, and they wish to be heard. Accordingly, pursuant to Local Rule 7.1(D), Defendants respectfully request oral argument on this motion.

Dated: March 22, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Mark S. Cheffo
        Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Email: Mark.Cheffo@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Raoul D. Kennedy
        Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400
Email: Raoul.Kennedy@skadden.com

| | |
|---|---|
| <u>CERTIFICATE OF SERVICE</u><br><br>I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 22, 2010.<br><br>            <u>/s/ Mark S. Cheffo</u><br>            Mark S. Cheffo | WHEELER TRIGG O'DONNELL LLP<br><br>By:   <u>/s/ James E. Hooper</u><br>       James E. Hooper<br><br>1801 California Street<br>Suite 3600<br>Denver, CO 80202-2617<br>Tel:  (303) 244-1800<br>Email:  hooper@wtotrial.com<br><br>*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC* |

9