UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:  NEURONTIN MARKETING, SALES
        PRACTICES AND PRODUCTS
        LIABILITY LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

THIS DOCUMENT RELATES TO:

THE GUARDIAN LIFE INSURANCE COMPANY OF
AMERICA v. PFIZER INC., 04 CV 10739 (PBS)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

## DEFENDANTS' BENCH MEMORANDUM REGARDING UCL CLAIMS

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this memorandum in response to the Court's inquiries regarding various aspects of Kaiser's claims under California's Unfair Competition Law ("UCL").

## I.      Kaiser Cannot Recover Under the UCL Without Proving Fraud

The UCL permits recovery for plaintiffs who have lost money or property as a result of an unlawful, unfair, or fraudulent act or practice.  *See* Cal. Bus. & Prof. Code §17200 (West 2008) & § 17204 (West 2008 & Supp. 2010).  Based on the theory of causation and damages alleged by Kaiser in this case, Kaiser can seek recovery only under the UCL's "fraudulent" prong.  Absent a showing that Pfizer made fraudulent representations or omissions regarding the efficacy of Neurontin, Plaintiffs cannot prove injury and causation to satisfy the standing requirements of the UCL.  Moreover, as discussed below, the UCL's "deceptive advertising" prong does not apply.

### A.      Kaiser Cannot Recover Under the UCL's "Unlawful" Prong

Plaintiffs' attempt to satisfy the "unlawful" prong by showing that Pfizer engaged in off-label promotion in violation the FDCA must be rejected.  Plaintiffs do not claim that they were injured because prescriptions were off-label.  Kaiser admits that it routinely pays for

off-label prescriptions and issues guidelines specifically approving off-label prescriptions. Indeed, many of the alternative drugs proposed by Kaiser are, or were during the relevant time frame, off label for the conditions at issue.  In short, Kaiser's theory of causation and damages cannot be divorced from its allegations that prescriptions were written as the result of fraudulent promotion.     Thus, Plaintiffs may only attempt to recover for off-label promotion that is fraudulent under the "fraudulent" prong of the UCL, and they may not proceed independently under the "unlawful" prong of the UCL.  *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1289-90 (C.D. Cal. 2008) (barring UCL claims).

The FDCA not only does not provide a private right of action, it expressly mandates that "all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."  21 U.S.C. § 337(a).  To the extent that a private plaintiff sues under state law based on FDCA violations alone – unaccompanied by fraud, product defect, or other cognizable injury – that plaintiff is doing nothing more than attempting to "enforce[]" or "restrain violations" of the FDCA.  21 U.S.C. § 337(a).  Any such claim is impliedly preempted by Congress' intent that the FDCA "be enforced exclusively by the Federal Government."  *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352 (2001).

Indeed, under the Supremacy Clause, a state is without power to enact a statute that allows private parties to enforce the FDCA, because Congress intended the act to be enforced exclusively by the United States.  *See Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1165-66 (S.D. Cal. 2009) (dismissing UCL claims premised on the sale of adulterated medical devices as impliedly preempted by the FDCA).  Accordingly, courts have consistently rejected claims by third-party payors seeking to recover for alleged off-label promotion under the UCL and other consumer protection laws, because "plaintiffs may not use . . . state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FDCA."  *In re Epogen*, 590 F. Supp. 2d at 1290-91 (barring UCL claims); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL 2043604, at *10 (D.N.J. July 10, 2009) (prohibiting similar off-label promotion claims under RICO and New Jersey

Consumer Fraud Act).

Numerous courts have recognized that, because federal law prohibits private actions for violations of the FDCA, claims seeking recovery based on alleged off-label marketing are actionable *only by proving fraud*. *See, e.g.*, *In re Epogen*, 590 F. Supp. 2d at 1290-91; *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1051 n.6, 1053-55 (N.D. Cal. 2009); *In re Schering-Plough*, 2009 WL 2043604, at *10. Indeed, proof of non-fraudulent off-label promotion is insufficient to prove injury – a required element of a UCL claim, Cal. Bus. & Prof. Code §§ 17200, 17204 – because off-label use is not inherently injurious, but rather "is, often times, the best means for providing effective treatment for patients." *See In re Schering-Plough*, 2009 WL 2043604, at *10. As such, the purportedly unlawful conduct is not actionable, because it does not represent an injury to Plaintiffs or a resulting loss of money or property by Plaintiffs. *See* Cal. Bus. & Prof. Code §§ 17200, 17204.

Notably, Plaintiffs' proposed jury instruction regarding the "unlawful" prong (Dkt. 2711-2 at pp. 2-6) relies on cases that addressed allegedly "fraudulent" practices.[1] Plaintiffs' trial brief argues that violations of federal and state statutes may be actionable under the UCL's "unlawful" prong even if the statutes do not provide a private right of action. (Pls. Trial Brief [2503] at 8.) But the authorities cited in Plaintiffs' trial brief are distinguishable in various respects. Many addressed violations of state statutes, which do not involve issues of federal preemption.[2] Some involved claims brought by the state Attorney General or the City Attorney,

---

[1] *See In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009) (discussing "Fraud Prong of the UCL"); *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 451 (1979) (despite prior statute's "unfair trade practice" nomenclature, court was addressing allegedly "fraudulent practices").

[2] *See Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 561-67 (1998) (involving violations of Cal. Penal Code § 308 and California STAKE Act); *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 210-11 (1983) (involving violations of California's Sherman Food Drug & Cosmetic Law); *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 169 (Cal. Ct. App. 2001) (involving violations of certain provisions of Cal. Health & Safety Code); *People v. E.W.A.P., Inc.*, 106 Cal. App. 3d 315, 319 (1980) (state criminal statute); *Farmers Ins. Exch. v. Super. Ct. of L.A.*, 2 Cal. 4th 377, 383 (1992) (state insurance statute).

who are not subject to Proposition 64's standing requirements for private plaintiffs.[3]  *See* Cal. Bus. & Prof. Code § 17203 (West 2008).  At least one case was brought under the UCL's fraud prong, not the unlawful prong.[4]  At least one holding was misstated by Plaintiffs, because the case affirmed summary judgment dismissing UCL claims.[5]  In general, the plaintiffs in these cases were seeking not simply to enforce the statutes in question, but to redress harm allegedly caused to them by the statutory violations.[6]  One of Plaintiffs' authorities directly supports Pfizer's position, because the court specifically noted that "[f]ederal courts . . . have refused to permit a private action under the federal Food, Drug and Cosmetic Act."  *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 211 n.9 (1983).  Finally, none of Plaintiffs' authorities involved claims based on non-fraudulent violations of the FDCA or any other federal statute that explicitly provides for exclusive enforcement by the federal government.

### B.    Kaiser Cannot Recover Under The UCL "Unfairness" Prong

For the same reasons discussed above, Plaintiffs cannot recover under the UCL for non-fraudulent, but allegedly "unfair" business practices.  The California Supreme Court has held that the UCL's "unfair" prong does not permit courts to "apply purely subjective notions of fairness," and that "the public policy triggering the violation must be tethered to a constitutional

---

[3] *See People v. E.W.A.P., Inc.*, 106 Cal. App. 3d 315, 317 n.2 ( Cal. Ct. App. 1980) (case brought by City Attorney of Los Angeles); *Farmers Ins. Exch.*, 2 Cal. 4th at 381 (case brought by Attorney General).

[4] *See Chern v. Bank of Am.*, 15 Cal. 3d 866, 876 (1976) (defendant's alleged business practice was "false and misleading" and "likely to deceive the public").

[5] *See Renick v. Dun & Bradstreet Receivable Mgmt Servs., Inc.*, 290 F.3d 1055, 1058 (9th Cir. 2002) ("[Defendant's] notice also did not constitute an 'unlawful, unfair or fraudulent business act or practice,' in violation of the California Unfair Business Practices Act, because the state claim hinges on [plaintiffs'] rejected federal claim.") (citation omitted).

[6] *See, e.g.*, *Roskind v. Morgan Stanley Dean Witter & Co.*, 80 Cal. App. 4th 345, 348 (2000) (violations of federal mail fraud statute allegedly caused plaintiff to lose more than $34,000); *Citizens for a Better Env't v. Union Oil of Cal.*, 996 F. Supp. 934, 937 (N.D. Cal. 1997) (federal Clean Water Act violations allegedly caused injury to "health" of "subsistence fishers").

or statutory provision or a regulation carrying out statutory policy." *Cel-Tech Commc'ns, Inc. v. L. A. Cellular Tel. Co.*, 20 Cal. 4th 163, 184-85 (1999).

Plaintiffs explicitly present their unfairness claim as a repackaged unlawful claim, arguing that the FDCA's prohibition of certain types of off-label marketing "is an established public policy." (*See* Dkt. 2723-2 at pp. 1, 2.)  Thus, just as Plaintiffs' claim under the "unlawful" prong would "impermissibly seek private enforcement of the FDCA," *Perez*, 657 F. Supp. 2d at 1164, the same is true of Plaintiffs' claim under the "unfair" prong.

## C.    Kaiser Cannot Recover Under the UCL's "Advertising" Prong

Kaiser cannot recover based on purportedly deceptive "advertising."  False advertising is advertising to the public which is untrue or misleading and which the defendants knew, or should have known, was untrue or misleading.[7]  As the California Supreme Court has repeatedly held, "advertising" refers to "widespread promotional activities directed to the public at large." *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1276-77 n.9 (1992); *Hameid v. Nat'l Fire Ins. of Hartford*, 31 Cal. 4th 16, 23-24 (Cal. 2003).  The California Supreme Court has rejected the "sparse minority of federal district court cases hold[ing] 'that the term "advertising" can also encompass personal solicitations.'" *Id.* at 23 (citations omitted).  Likewise, educational or informative statements that do not propose any financial transactions are not considered advertising.  *See Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 350 (Cal. Ct. App. 2004).

Kaiser's claims are not based on "advertising."  Its claims are instead based on alleged direct communications between Kaiser DIS employees and Defendants.  As for Kaiser's contentions regarding CME events and journal publications, these are not "advertising" because they occur in an educational context and do not propose financial transactions.  *See id.*  Even if CME events and journal publications could be characterized as advertising, Kaiser's causation expert, Prof. Rosenthal, did not even attempt to measure any purported impact of these activities

---

[7] Cal. Bus. & Prof. Code § 17500 (West 2008).

on Kaiser.   Instead, Prof. Rosenthal only purported to measure the impact of detailing, *i.e.*, "personal solicitations" of prescribing doctors by sales representatives.   Beyond the fact that one-on-one detailing is not "advertising," the Court has already recognized that "[t]here's just no data about detailing. . . . [W]hat was said and to whom it went and how, Northern versus Southern California, don't know, and you don't know."  (3/19 Tr. (Court) at 221:5-222:5.)

## II.    The Plea Cannot Support Plaintiffs' UCL Claims Under Any Prong

Kaiser's proposed jury instructions incorrectly state that the Warner Lambert plea constitutes an admission that Defendants engaged in an unlawful and unfair practice for purposes of Kaiser's UCL claim.  (*See* Dkt. 2711-2, at 2; Dkt. 2723-2, at 1.)  This argument must be rejected.  As discussed more fully in Defendants' Rule 50 motion regarding the issues of RICO enterprise and racketeering activity, the plea is not evidence of causation, inefficacy, or injury, and there is no nexus between the plea and Kaiser's claims.  (*See* Dkt. 2669, at II.A.)  Indeed, Kaiser has judicially admitted that the conduct addressed by the plea has nothing to do with its claims.   In opposing judgment as a matter of law regarding the RICO statute of limitations, Kaiser argued as follows:

> The 1996 *Franklin* complaint did not and could not have detailed Defendants' unlawful behavior following that date which is the subject of this case.

(Pls' Opp. [2695] at 4 n.1.)  By the same token, the plea has nothing to do with "the subject of this case" because it concerned specific instances of off-label marketing that occurred between April 1995 and August 1996.

## III.   Without Proof of Actual Reliance, Kaiser Lacks Standing to Sue Under Any Prong of the UCL

### A.    Reliance and Causation Cannot Be Presumed

Kaiser's assertion that "there is a presumption that Pfizer's unlawful conduct caused Kaiser to make the payments in question"[8] is contrary to California law.  As discussed more fully in Defendants' trial brief (*see* Dkt. 2502 at 12-14), California voters drastically limited the scope

---

[8] (Kaiser's Proposed Instruction [2711-2] at 4.)

of the UCL in 2004 through Proposition 64, a referendum that required UCL claimants to prove a loss of money or property "as a result of" an unfair, unlawful, or fraudulent practice.  *See* Cal. Bus. & Prof. Code § 17204.  The California Supreme Court has recently concluded that this new phrase "as a result of" "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong."  *In re Tobacco II Cases*, 46 Cal. 4th at 326.  Indeed, the phrase "as a result of" requires proof of causation, and "there is no doubt that reliance is the causal mechanism of fraud."  *Id.*

To prove actual reliance, a plaintiff must generally show "that but-for the defendant's fraudulent conduct, 'the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.'"  *In re Actimmune Mktg. Litig.*, No. C 08-02376, 2009 WL 3740648, at *8 (N.D. Cal. Nov. 6, 2009) ("*Actimmune II*") (dismissing UCL claims by TPPs seeking reimbursement for monies paid for defendant's prescription medication (quoting *In re Tobacco II*, 46 Cal. 4th at 326)).  Courts have recently recognized that proof of actual reliance in this specific context requires a showing that "doctors relied upon the information they received about [the medication] when deciding to prescribe" it.  *Actimmune II*, at *11.  Specifically, Plaintiffs must show "some link connecting the doctors' alleged beliefs that [the medication] was efficacious . . . to some fraudulent representation or omission made by [Pfizer]."  *Id.*  Proof that "doctors were exposed generally to the marketing" of the medication by the defendant is insufficient to show actual reliance.  *Id.*

Plaintiffs may not dispense with the "actual reliance" requirement by resorting to the language in *In re Tobacco II* that a plaintiff is "not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign."  46 Cal. 4th at 328.  As an initial matter, even if this exception, developed in the context of cigarette advertising cases, were applicable, it would only eliminate the need to prove reliance on *specific* misrepresentations; it would not excuse proof of actual reliance generally.  Here, however, no physician has testified that her decision to prescribe Neurontin was influenced

7

by Pfizer's marketing, and many have specifically disclaimed reliance, citing their own clinical experience and other sources as the basis for their prescriptions.   In addition, Kaiser's own internal documents contradict its claims of direct reliance.

Moreover, there is no indication that this exception would even be applicable here. Indeed, the *Actimmune II* court questioned the applicability of this exception under similar circumstances, because "defendants' seven year effort to market Actimmune to approximately 7,000 pulmonologists and 200,000 individuals suffering from IPF pales in comparison to the decades-long, national, ubiquitous advertising campaigns embarked upon by cigarette manufacturers."   *Actimmune II*, at *13.

Nor can Plaintiffs prove reliance through the theory that Pfizer "'saturated' the market for information regarding [Neurontin]."   *See id.* at *14 (citation omitted).   Indeed, the "'saturation' argument is nothing more than a repackaging of the 'fraud on the market' theory," *id.* (citation omitted), which this Court has repeatedly rejected, *see In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 111-12 (D. Mass. 2009); *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 323-24 (D. Mass. 2009), along with all other similar attempts to make aggregate proof of reliance.   *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, No. Civ. A. 04-CV-10981, 2010 WL 53568, at *9 (D. Mass. Jan. 8, 2010) (to be published in F. Supp.).   "Fraud on the market" is no more appropriate for UCL claims than it is for RICO claims.   *See In re Actimmune*, 614 F. Supp. 2d at 1054 ("The court will not let plaintiffs escape their burden to plead and prove the element of reliance by using a market-based fraud theory to handwave the requirement that there be a connection between the misdeed complained of and the loss suffered under state law."); *see also Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 439, 440 (C.D. Cal. 2007).

Finally, even if a presumption of reliance could ever apply in this context (which it cannot), any "presumption of . . . reliance" is necessarily rebuttable.   *See, e.g.*, *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 977 (1997).   Having pursued their claims in the aggregate, and denied Defendants access to the individualized evidence needed to rebut any

presumption of reliance by prescribing doctors, Plaintiffs must be required to prove actual reliance.

**B.      Reliance and Causation Are Required Under All Three Prongs**

Regardless of which prong Kaiser proceeds under, it must affirmatively establish causation as part of a UCL claim.  Numerous California Court of Appeals decisions have found that causation is necessary for standing under all three of the UCL's prongs, specifically including the unlawful prong.  *See, e.g.*, *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1348-51 (Cal. Ct. App. 2009) (holding plaintiffs had the burden of establishing the alleged harm was caused by the allegedly unlawful conduct in a claim brought under the UCL's "unlawful" prong).[9]

In *Troyk*, the plaintiffs sued under all three prongs of the UCL, but the Court of Appeal expressly limited its standing analysis to the named plaintiffs' claim under the "unlawful" prong. *Id.* at 1337, n.23.  Addressing the issue of causation, which the *Troyk* Court termed "[t]he third element for UCL standing," the court held "the phrase 'as a result of,' connotes an element of *causation* (i.e., Troyk lost money *because of* Farmers' unfair competition) . . . ." *Id.* at 1349. The Court then went on to explain, "'[t]here must be a causal connection between the harm suffered and the unlawful business activity.   That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.'" *Id.* (quoting *Daro v. Superior Ct.*, 151 Cal. App. 4th 1079, 1099 (Cal. Ct. App. 2007)).

*Troyk* is consistent with many other post-Proposition 64 cases requiring proof of causation under the unlawful prong.  *See, e.g.*, *Hall v. Time Inc,*, 158 Cal. App. 4th 847, 857

---

[9] *See also, e.g.*, *Daro v. Superior Ct.*, 151 Cal. App. 4th 1079, 1098-1101 (Cal. Ct. App. 2007) (same); *Medina v. Safe-Guard Prods. Int'l, Inc.*, 164 Cal. App. 4th 105, 115 (Cal. Ct. App. 2008) (same); *Animal Legal Def. Fund v. Mendes*, 160 Cal. App. 4th 136, 146-47 (Cal. Ct. App. 2008) (holding same in suit brought under UCL's "unlawful" and "unfairness" prongs); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (Cal. Ct. App. 2008) (holding same in suit brought under UCL's "unlawful" and "unfairness" prongs); *Kwikset Corp. v. Superior Court*, 171 Cal. App. 4th 645, 652-56 (2009) (holding same in suit brought alternatively under all three of the UCL's prongs), *review granted* 211 P.3d 1060 (Cal. 2009); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855-59 (Cal. Ct. App. 2008) (holding same in suit brought alternatively under all three of the UCL's prongs).

(Cal. Ct. App. 2008) (rejecting allegations invoice had "caused" plaintiff to loss money or property); *Medina v. Safe-Guard Prods. Int'l, Inc.*, 164 Cal. App. 4th 105, 114-15 (Cal. Ct. App. 2008) ("He hasn't suffered any loss *because of* Safe-Guard's [(the defendant's)] unlicensed status . . . there is no allegation that . . . Safe-Guard's unlicensed status *caused* him to part with the money he paid for the tire and wheel contract."); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (Cal. Ct. App. 2008) ("A private plaintiff must . . . demonstrate injury in fact *and* a loss of money or property *caused* by unfair competition") (second emphasis added).

The causation requirement cannot be satisfied merely by conclusory assertions, or by evidence suggesting nothing more than the existence of a generalized connection between the alleged harm and the alleged wrongdoing.  Further, an attenuated connection will not suffice, and the causal link may be broken.  *See Daro*, 151 Cal. App. 4th at 1099 ("When a UCL action is based on an unlawful business practice, as here, a party may not premise its standing to sue upon injury caused by a defendant's lawful activity simply because the lawful activity has some connection to an unlawful practice . . . .").[10]

To have standing, a plaintiff must show a meaningful loss of money or property resulting from the specific conduct alleged to be unlawful.  *See id.* at 1099-1101; *Animal Legal Def. Fund*, 160 Cal. App. 4th at 146-47 ("This language discloses a clear requirement that injury must be economic, at least in part, for a plaintiff to have standing . . . . In the present case the causal connection between wrongful conduct and injury is not apparent and is not alleged with any specificity. . . . Here, the consumers had the benefit of their bargain-that is, they received dairy products that were not inferior quality.  Any injury they suffered upon learning 'the truth' about industrial dairy farming was not economic."); *Kwikset Corp.*, 171 Cal. App. 4th 654 ("Absent a showing of some complaint about the cost, quality or operation of the mislabeled locksets they purchased from petitioners, real parties received the benefit of their bargain . . . .").

---

[10] "Thus, for example, a party who has suffered no injury as a result of a UCL violation cannot create standing by arguing that a broad-based injunction designed to remedy the UCL violation will provide him or her some incidental benefit."  *Daro* at 1100.

Additionally, requiring a showing of causation for standing under the all prongs of the UCL is fully consistent with both the language and purpose of Proposition 64. *See* Cal. Bus. & Prof. Code § 17204; *see also Hall*, 158 Cal. App. 4th at 855 ("The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection . . . "); *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 812-13, 817 (Cal. Ct. App. 2007) (reciting history and holding the language "'lost money or property as a result of'" imposed additional standing requirements beyond injury in fact) (citation omitted).[11]  Proposition 64 was passed to end "sham" lawsuits in which plaintiffs brought suit for harms they had not actually suffered.  *Hall* at 857 (discussing purpose of Proposition 64).  Indeed, arguing that plaintiffs filing suit under the UCL's unlawful prong should not need to meet the full standing requirements imposed by Proposition 64 ignores the history of that statute.[12]  Kaiser's suggestion that causation is not required under the "unlawful" and "unfair" prongs of the UCL not only conflicts with binding authority from California's appellate courts, but would also ignore the history, language, and purpose of Proposition 64 itself.

In sum, Kaiser has the burden of showing "that but-for the defendant's fraudulent conduct, 'the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.'"  *In re Actimmune Mktg. Litig.*, No. C 08-02376, 2009 WL 3740648, at *8 (N.D. Cal. Nov. 6, 2009) (dismissing UCL claims by TPPs seeking reimbursement for monies paid for defendant's prescription medication (quoting *In re Tobacco II*, 46 Cal. 4th at 326)).

---

[11] This is also consistent with long established cannons of statutory construction that courts "seek a construction that avoids rendering the requirement 'redundant and a nullity' . . . ."  *Buckland*, 155 Cal. App. 4th at 817 (citation omitted).

[12] The Trevor law group – cited as the single most prominent example of abusive UCL litigation – specialized in *unlawful prong* lawsuits, not lawsuits under the fraud prong.  *In re Tobacco II Cases*, 46 Cal. 4th at 316 ("The specific abuse of the UCL at which Proposition 64 was directed was its use by unscrupulous lawyers who exploited the generous standing requirement of the UCL to file "shakedown" suits to extort money from small businesses. 'Attorneys form[ed] a front "watchdog" or "consumer" organization. They scour[ed] public records on the Internet for what [were] often *ridiculously minor violations of some regulation or law* by a small business, and sue[d] that business in the name of the front organization . . . . '") (alteration in original) (emphasis added); *Buckland*, 155 Cal. App. 4th at 812 (reciting same).

**IV.     All Of Kaiser's UCL Claims Are Barred By The Statute Of Limitations**

  Claims under the UCL are subject to a four-year limitations period. *See* Cal. Bus. & Prof. Code § 17208. Kaiser's UCL claim accrued well over four years before Kaiser filed suit on February 1, 2005. "[B]ecause state consumer protection laws are intended to protect consumers," the laws of the home states will govern the actions of consumers in those states. *S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 93 (D. Mass 2007). Pursuant to California law, the "discovery rule" exception to the statute of limitations does not apply in the context of unfair competition actions. Even assuming that it did, Kaiser could not satisfy that exception because it had both actual and constructive knowledge of the accrual of a cause of action prior to February 1, 2001, and no separate action accrued after that point.

  **A.     The Discovery Rule Does Not Apply To UCL Claims**

  California state and federal courts have repeatedly held that the discovery rule does not apply to UCL claims. Claims under the UCL "are subject to a four-year statute of limitations which [begins] to run on the date the cause of action accrue[d], *not on the date of discovery*." *Perez*, 657 F. Supp. 2d at 1166 (quoting *Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (first alteration in original) (emphasis added)) (citing Cal. Bus. & Prof. Code § 17200); *Keilholtz v. Lennox Hearth Prods. Inc.*, No. C 08-00836, 2009 WL 2905960, at *4 (N.D. Cal. Sept. 8, 2009); *see also Rambus, Inc. v. Samsung Electronics Co., Ltd.*, No. C-05-02298 RMW, 2007 U.S. Dist. LEXIS 3088, at *11 (N.D. Cal. Jan. 4, 2007) (recognizing that a party "cannot rely upon the discovery rule for its Section 17200 claim").

  As explained by the California Court of Appeal:

> The "discovery rule," which delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim, does not apply to unfair competition actions [under section 17200]. Thus, "the statute begins to run . . . irrespective of whether plaintiff knew of its accrual, unless plaintiff can successfully invoke the equitable tolling doctrine."

*Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 891 (2002) (citations omitted).

Although the California Supreme Court has not yet resolved this issue, federal district courts in California are bound by the Ninth Circuit's determination that the discovery rule does not apply to UCL claims.  "Absent a clear indication from the California courts that the Ninth Circuit's interpretation of [section] 17208 was incorrect, this Court must follow *Karl Storz*." *Perez*, 657 F. Supp. 2d at 1166.  This Court should likewise defer to the Ninth Circuit, given that this is an issue of California law as to which the Ninth Circuit has considerable expertise, whereas this Court has acknowledged its relative lack of familiarity with UCL claims.  Even though this Court denied Pfizer's motion to transfer under 28 U.S.C. § 1404(a), well-recognized policy considerations indicate that this Court should defer to California federal courts' interpretation of California consumer protection laws.  *See, e.g.*, *Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 5 (D. Mass. 1987) (noting that it is preferable that a foreign state's law be "construed by a federal court sitting in that state, rather than by a court unfamiliar with" that state's law).[13]

### B.   Plaintiffs' Had Both Actual And Constructive Notice Of Their Claims Prior to February 1, 2001

Even if the discovery rule applied to claims under the UCL's "fraudulent" prong, Plaintiffs' claim would still be time-barred because Plaintiffs had both actual and constructive knowledge of their alleged injury well over four years before filing suit.  Under the discovery rule, it is well settled that "the limitations period begins when the Plaintiff suspects, or should suspect, that she has been wronged."  *Jolly* v. *Eli Lilly & Co.*, 44 Cal. 3d 1103, 1114 (1988).  Thus, not only is actual suspicion of wrongdoing sufficient, but constructive suspicion is

---

[13] *See also Lagor v. Eli Lilly & Co.*, No. 06-1967, 2007 U.S. Dist. LEXIS 43703, at *14 (D.D.C. June 18, 2007) ("Courts agree that the public interest is 'best served by having a case decided by the federal court in the state whose laws govern the interests at stake.'") (citation omitted); *Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1, 5 (D.D.C. 2004) (observing that "[c]learly, this Court's Massachusetts colleagues have greater familiarity with Massachusetts law and therefore superior capability to accurately apply Massachusetts law"); *Sub-Micron Sys., Inc. v. Sub-Micron Surfacing, Inc.*, No. 93 C 3295, 1993 WL 524273, at *11 (N.D. Ill. Dec. 10, 1993) (noting that "familiarity with New Jersey law is especially helpful in interpreting state statutes such as the New Jersey Consumer Fraud Act that reflect and are designed to implement the state's consumer protection policy").

sufficient as well.  *Id.* at 1109 ("[P]laintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through the investigation of sources open to her.") "'Subjective suspicion is not required.  If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation.'"  *Wilshire Westwood Assocs. v. Atl. Richfield Co.*, 20 Cal. App. 4th 732, 740 (Cal. Ct. App.1993) (citation omitted).  "'[W]hen the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation . . . the statute [begins] to run.'"  *Sanchez v. S. Hoover Hosp.*, 18 Cal. 3d 93, 101 (1976) (citation omitted).

As discussed more fully in Defendants' Rule 50 motion regarding the RICO statute of limitations [2675], Plaintiffs have asserted and judicially admitted that the *Franklin qui tam* action put them on notice of their alleged injury, prompting them to reevaluate their Neurontin usage – which they knew was mostly off-label – and to implement the DRUG/DUAT initiative. The Franklin *qui tam* complaint was unsealed on December 21, 1999, *United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39, 46 (D. Mass. 2001) (Saris, J.), and made public on January 3, 2000.  *See United States ex rel. Franklin v. Parke-Davis*, No. 96-11651 (D. Mass. Jan. 3, 2000) (ECF Dkt. 41).  Thus, by their own admission, Plaintiffs had constructive knowledge of their alleged injury no later than January 3, 2000, more than five years before they filed suit on February 1, 2005.

In addition, the government investigation was disclosed in Warner-Lambert's Form 10-K filed on March 28, 2000,[14] and the government investigation and *Franklin qui tam* suit were disclosed in Warner-Lambert's Form 10-Q filed on May 10, 2000.[15]  These filings received

---

[14]  *See* Warner-Lambert Co., Annual Report (Form 10-K), at 10 (Mar. 28, 2000), *available at* http://www.sec.gov/Archives/edgar/data/104669/0000950117-00-000720.txt.

[15]  *See* Warner-Lambert Co., Quarterly Report (Form 10-Q), Part II, Item 1 (May 10, 2000), a*vailable at* http://sec.gov/Archives/edgar/data/104669/0000104669-00-000001.txt.

extensive publicity.  In particular, Warner-Lambert's Form 10-K disclosures were picked up in the April 3, 2000, edition of *The Pink Sheet* – a pharmaceutical trade journal that Dr. Millares would have read at that time.  (DX 506; 3/5 Tr. (Millares) at 55:5-24.)  Moreover, internal Kaiser memos dated August 24 and October 27, 2000, demonstrate Plaintiffs' actual knowledge of their alleged injury long before February 1, 2001.  (DX 594; 3/5 Tr. (Millares) at 56:11-57:7; DX 599; 3/9 Tr. (Daniel) at 144:21-146:12; 3/5 Tr. (Millares) at 57:8-58:21.)

Thus, prior to February 1, 2001, Plaintiffs had actual knowledge (or at the very least inquiry knowledge) of: the Franklin *qui tam* action; the government investigation into off-label promotion of Neurontin by Warner-Lambert; the sharp increases in Neurontin sales in 1999; the fact that the majority of the increase was due to off-label prescribing; and the fact that Neurontin was more expensive than allegedly more optimal drugs.  Plaintiffs were also on notice of the negative Pande bipolar study, given that the study was published in September 2000, and was also disclosed at the June 1999 Third International Bipolar Conference, and in informational letters sent by Pfizer to several Kaiser physicians in 1999 and 2000.

## C.   The Discovery Rule Does Not Apply To The "Unlawful" And "Unfair" Prongs

Even if the discovery rule could apply with respect to the "fraudulent" prong, Plaintiffs' claims under the "unlawful" and "unfair" prongs are clearly time-barred.  While a small minority of cases have suggested – contrary to the Ninth Circuit – that the discovery rule could apply to UCL claims under the fraudulent prong, Defendants are unaware of any authority applying the discovery rule to claims under the UCL's "unlawful" or "unfair" prongs.

Furthermore, Plaintiffs' claims under the "unlawful" and "unfair" prongs are based entirely on off-label promotion, irrespective of fraud.  The evidence clearly shows that Plaintiffs had actual and constructive knowledge of the alleged off-label promotion well before February 1, 2001, due to, among other things, the Franklin *qui tam* action, the government investigation, and the April 2000 Pink Sheet.  Accordingly, even under the discovery rule, the four year clock starts with actual or constructive knowledge of off-label promotion alone, irrespective of fraud.

Whether Plaintiffs also had knowledge of alleged fraudulent conduct is irrelevant under the "unlawful" and "unfair" prongs.

> ### D.   Kaiser's UCL Claims Accrued Prior To February 1, 2001, And It Must Be Judicially Estopped From Inconsistently Asserting That It Can Recover Disaggregated Injuries

Regardless of what prong they fall under, Kaiser's UCL claim is time-barred because Kaiser's claim accrued prior to February 1, 2001.  Once a claim has accrued, the limitations period begins to run.  A claim accrues "'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.'"  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (Cal. 1999) (citation omitted); *Keilholtz*, 2009 WL 2905960, at *3 (noting that "generally a cause of action accrues when all of its elements accrue").  Furthermore, California recognizes the "single injury rule" whereby "the violation of a single primary right gives rise to but a single cause of action."  *Pooshs v. Phillip Morris USA, Inc.*, No. C 04-1221 PJH, 2008 U.S. Dist. LEXIS 43620, at *13-14, 45 (N.D. Cal. May 27, 2008) (citation omitted).  Ongoing damages flowing from the same alleged cause of action do not create separate claims or accruals.  *Id* at 13-14.

Earlier in this litigation, Kaiser survived summary judgment by taking the position that it suffered an aggregate injury resulting from direct contacts in 1997 and 1999.  It argued that these contacts resulted in formulary expansion by the Southern California P&T Committee.  Kaiser's position was that, as an insurance company, it could show causation and injury in the aggregate, without presenting any evidence regarding individual prescriptions allegedly written because of fraudulent or unlawful promotion.  Kaiser claimed that it sustained a singular, aggregate injury, and that the number of purportedly fraudulent prescriptions merely related to the amount of damages.  Under Kaiser's own theory of the case, its cause of action under the UCL would have "accrued" in 1999 when the formulary was expanded because all of the alleged elements would have been completed at that point.  *Norgart*, 21 Cal. 4th at 397.  Pursuant to the "single-injury" rule, subsequent damages that flowed from the claim accruing in 1999 are irrelevant to

calculation of the statute of limitations, *Pooshs*, 2008 U.S. Dist. LEXIS 43620, at *13, 45.

Kaiser cannot now circumvent the statute of limitations by arguing – inconsistent with its argument at the summary judgment stage and throughout this litigation – that individual prescriptions reimbursed after February 1, 2001, are distinct transactions giving rise to distinct injuries.  Indeed, if individual prescriptions are to be treated as individual transactions giving rise to individual claims, then all such claims must be dismissed because there is no evidence of a single prescription that was written and reimbursed because of Defendants' alleged conduct.

Moreover, putting aside the complete lack of evidence supporting any individualized theory of causation or injury, judicial estoppel precludes Kaiser from abruptly shifting from an aggregate claim to an individualized claim.  Under the doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. . . ."  *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir. 1987).  Judicial estoppel applies where, as here, "a litigant is 'playing fast and loose with the courts,' and when 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'"  *Id.* (citation omitted).

Dated: March 22, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:      /s/ Mark S. Cheffo
          Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Email:  Mark.Cheffo@skadden.com

17

SKADDEN, ARPS, SLATE, MEAGHER
  &amp; FLOM LLP

By:     /s/ Raoul D. Kennedy
        Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel:  (415) 984-6400
Email:  Raoul.Kennedy@skadden.com

WHEELER TRIGG O'DONNELL LLP

By:     /s/ James E. Hooper
        James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel:  (303) 244-1800
Email:  hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

---

<div style="border:1px solid black; padding:10px;">

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 22, 2010.

              /s/ Mark S. Cheffo
              Mark S. Cheffo

</div>