UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**PLAINTIFF KAISER'S MEMORANDUM IN RESPONSE TO THE
JUDICIAL REQUEST CONCERNING NOCICEPTIVE PAIN**

Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser") respectfully submit to the Court that Kaiser is entitled have the jury decide whether it should recover for Defendants' unlawful and fraudulent marketing of Neurontin for nociceptive pain. The evidence shows that Defendants' Neurontin scheme included unlawful and fraudulent marketing for nociceptive pain and that Kaiser was affected by that scheme.

**I.  DEFENDANTS' SCHEME INCLUDED FRAUDULENT MARKETING OF NEURONTIN FOR NOCICEPTIVE PAIN**

By nociceptive pain, Kaiser refers to pain other than neuropathic pain. Because of the permeability between pain indications and treatments, marketing a product with a narrow pain

indication for general pain would be off-label and potentially fraudulent marketing. For example, it would be improper to market a drug approved only for PHN for general pain. The failure to limit marketing to the precise indication is especially pernicious in pain indications because, as explained during trial, the lines between pain indications blur.

As this Court understands, and as Defendants' own experts have testified, definitions of different types of pain are at times unclear or overlap. For example, Dr. Bird, when asked whether "it [is] sometimes hard to differentiate between neuropathic and nociceptive pain in a particular patient" agreed that it is "[s]ometimes, and often they're mixed." (3/19 Tr. (Bird) at 20; *see also* 3/1 Tr. (Perry) at 149 ("THE COURT: So would it be fair to say the scientific community isn't completely clear about what it means when it says 'neuropathic pain'? THE WITNESS: That would be a very astute observation.").) Dr. Brenner explained that "people don't get boxed into one type of pain alone, [] they're overlapping, and you can have more than one." (3/16 Tr. (Brenner) at 29); *accord* TX 795 ("Neuropathic pain may coexist with non-neuropathic pain[.]")

Regardless of definitions, from the inception of the scheme, Defendants' fraudulent marketing scheme included promoting Neurontin to treat nociceptive pain. Neurontin's inefficacy for nociceptive pain is a rare point of agreement in this case. As Pfizer's former Neurontin team leader responded when asked to define nociceptive pain: "It's a pain which gabapentin didn't treat very effectively." (3/11 Tr. (Marino) at 37; s*ee also* 3/9 Tr. (Daniel) at 130 ("Q. And [Neurontin is] no better than a placebo for nociceptive pain? A. Yes.").)

Nonetheless, Defendants pushed Neurontin for nociceptive pain.

> Q. With regard to pain, did you and the other medical liaisons and the sales representatives promote Neurontin for off-label uses in -- to treat pain, neuropathic pain?

> A. Yes, yes.
>
> Q. And nociceptive pain?
>
> A. Yes.

(3/12 Tr. (Franklin) at 63.)  The subject matter urged caution and precision in marketing messages, but Defendants instead decided to take a broad approach and market for all types of pain.  As Defendants' Phil Magistro urged his troops: "When we get out there, we want to kick some ass on Neurontin, we want to sell Neurontin on pain.  All right?  And monotherapy and everything that we can talk about, that's what we want to do."  John Ford concurred: "If we are going to market Neurontin effectively, we have to do it for monotherapy, for epilepsy, also for pain and bipolar and other psychiatric uses."

Defendants decided against limiting their marketing to neuropathic or any other discrete area of pain.  Instead, they made it clear to the sales force to push Neurontin for all kinds of pain, including nociceptive pain.  *See* TX 105 at 601 (urging promotion to doctors "even if [they] treat[] garden variety pain"); TX 31 at 286 (suggesting that Neurontin "may be effective in more than neuropathic pain" and referencing Mellick's article that "suggests relief of other pain").  Defendants exploited the pain field, noting that "[p]ain practitioners are open to change because few medications are effective."  TX 31 at 289.  Of course, this included nociceptive pain.  *Id*. at 287 (urging studies in, *inter alia*, lower back pain and other "areas other than neuropathic pain").  And Defendants funded general pain studies that implied broad utility for Neurontin in pain.  TX 40 at 464 (discussing how Neurontin "may further add in pain control" and citing another article discussing Neurontin's "antinociceptive actions"); TX 18 at 918-19 (proposing studies concerning generally "Pain/Migraine" and "Gabapentin use in Chronic Pain Syndromes").

There is little doubt that Defendants' scheme included nociceptive pain, not just neuropathic pain.

## II.   DEFENDANTS' NOCICEPTIVE SCHEME AFFECTED KAISER

Kaiser has presented evidence that it was impacted by Defendants' fraudulent and unlawful marketing of Neurontin for nociceptive pain. Kaiser documents make clear that "[t]here are two major concerns for DUAT: [one of which is that] Neurontin is increasingly being used for non-neuropathic pain," TX 341 at 260, and that PMG physicians "may be influenced by drug company promotional efforts for 'off-label' uses of gabapentin, including neuropathic *and non-neuropathic pain (including . . . a variety of 'general pain' indications)*," TX 709 at 856 (emphasis added). Defendants' communications confirm the targeting of Kaiser with the nociceptive and general pain message. *See* TX 432 (SRL discussing articles where patients took gabapentin for "skeletal," "visceral," "myofascial," and "chronic osteoarthritic" pain – all nociceptive pains); TX 309 (SRL on "pain" touting "the safety and efficacy of high-dose gabapentin used in the management of pain").

Kaiser's September 1997 monograph demonstrates the success of Defendants' fraud. Based on biased case studies tainted by Defendants' scheme, that monograph recommended expanded restrictions (*i.e.*, expanded access) for Neurontin to treat reflex sympathetic dystrophy ("RSD"). Dr. Millares, when asked by this Court, testified concerning RSD that "I think it's been classified as nociceptive in some places and neuropathic in another." (3/4 Tr. (Millares) at 51.) Her uncertainty is understandable. The 1997 monograph describes RSD as being caused by, *inter alia*, "inflammation following surgery, infection, lacerations with swelling, burns, frostbite and degenerative joint disease[.]" TX 322 at 800. Though RSD is sometimes considered neuropathic pain, the above presentments are classically associated with nociceptive

4

pain. *See* TX 789 at 994 (noting that nociceptive pain is sometimes caused by "injury or inflammation" and that a common treatment is an anti-inflammatory).[1] Other Kaiser documents confirm the use of Neurontin among Kaiser insureds for nociceptive pain. TX 348 at 096C (listing usages in patients with disc degeneration, spondylolisthesis, myalgia, acute nasopharyngitis, rotator cuff, osteoarthritis, and other causes of nociceptive pain).

After Kaiser had been duped by Defendants' fraudulent marketing of Neurontin for nociceptive pain, Kaiser pursued a re-education campaign focused nociceptive pain (as well as the other indications at issue in this case).

> Q. But were Kaiser's re-education efforts limited just to Neuropathic pain?
>
> A. No, no, Nortriptyline was just one tool to offset the inappropriate use of Gabapentin. We were also looking at other indications, in fact, all indications that we could become aware of that it was being used for, but specifically bipolar disease and also treatment of migraine headache and generalized pain or nociceptive pain.

(2/26 Tr. (Carrejo) at 120-21.) Re-education documents stressed that "[t]here is <u>no evidence</u> to suggest efficacy of antiepileptic drugs for treating non-neuropathic pain." TX 341 at 260. Had Kaiser not been defrauded by Defendants' fraudulent marketing of Neurontin for nociceptive pain there would have been no reason for Kaiser to include nociceptive pain in its re-education campaign.

Kaiser relied on Defendants' fraudulent marketing of Neurontin for nociceptive pain to expand access to Neurontin and paid for Neurontin prescriptions for nociceptive pain that would not have been written absent Defendants' fraud.

---

[1] The September 1999 monograph also lists RSD separately from the neuropathies discussed in that monograph, TX 327 at 261, showing that RSD as the term is used at Kaiser is not simply neuropathic pain. Rather, it is, as Dr. Brenner said about pain generally, not "one type of pain alone" but "overlapping."

### III. CONCLUSION

For the foregoing reasons, Kaiser respectfully requests that this Court keep the determination of the nociceptive pain fraud in the proper place: with the jury.

Dated: March 23, 2010					Respectfully submitted,


							By: */s/ Linda P. Nussbaum*
							Linda P. Nussbaum
							KAPLAN FOX & KILSHEIMER LLP
							Linda P. Nussbaum, Esq.
							850 Third Avenue, 14th Floor
							New York, New York 10022

							*Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

*Of Counsel:*

Thomas M. Greene, (BBO # 210020)
GREENE, LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 23, 2010.

>	*/s/ John Radice*
>	John Radice