UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris<br><br>Magistrate Judge Leo T. Sorokin |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL MOTION FOR JUDGMENT AS A MATTER OF LAW BASED UPON LACK OF SUFFICIENT EVIDENCE OF INJURY, CAUSATION OR DAMAGES**

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") respectfully submit this Memorandum of Law in Support of their Supplemental Motion for Judgment as a Matter of Law Based Upon Lack of Sufficient Evidence to Prove Injury, Causation or Damages.

**ARGUMENT**

As discussed in Defendants' Memorandum of Law in support of their initial Motion for Judgment as a Matter of Law Based upon Lack of Sufficient Evidence of Injury or Causation, the evidence clearly showed that Prof. Rosenthal's calculations regarding Neurontin prescriptions for "bipolar" disorder are wildly overinclusive. (Defs' Mem. [2671] at Section III.D.) Those calculations improperly included ICD-9 codes for conditions other than bipolar disorder – including conditions that are "quite prevalent," for which there has been no showing of fraud, inefficacy, or any nexus to an enterprise. (3/8 Tr. (Rosenthal) at 85:22-24.)

The evidence introduced during Defendants' case has confirmed that for each indication at issue, not just bipolar disorder, Prof. Rosenthal used arbitrarily-selected groupings of ICD-9 codes to determine whether Neurontin prescriptions were written for the off-label indications at issue in this case. Prof. Rosenthal's groupings are set forth in Attachment I.2 to her report, entitled "ICD9 Code Categorization." (*See* Exhibit 405N, attached hereto as Exhibit A.) Kaiser presented no medical testimony supporting Prof. Rosenthal's assumption that these ICD-9 codes

correspond to the conditions at issue.

This is not a straightforward question that can be resolved by an economist or by a lay jury. The testimony demonstrates that it is often far from clear whether, for example, a particular pain condition should be categorized as neuropathic or nociceptive. For example, Dr. Bird testified that it is sometimes difficult to tell whether a type of pain is neuropathic or nociceptive and that "often they're mixed." (3/19 Tr. (Bird) at 20:23-25.) Specifically, Dr. Bird used pain resulting from a shoulder injury and back pain with intermittent sciatica as examples of situations where it would be difficult to identify what type of pain a patient was experiencing. (*Id.* at 20:17-21:5.) Dr. Brenner also recognized that there are situations where multiple types of pain are involved and that it is sometimes hard to categorize a particular pain indication because "patients don't fit into little peg holes." (3/16 Tr. (Brenner) at 24:1-6.) For example, Dr. Brenner explained perioperative pain, which is pain surrounding a surgery, may involve at various stages inflammatory pain, nociceptive pain, and/or possibly neuropathic pain. (*Id.* at 32:24-33:12.)

Plaintiffs have presented no medical expert testimony supporting any of their economist's categorizations.

This fundamental failure of Plaintiffs' proof is highlighted by Plaintiffs' cross-examination of Defendants' bipolar expert, Dr. Slaby. Kaiser's counsel emphasized the narrow scope of Kaiser's bipolar claims. For example:

- "[Y]ou understand that Kaiser, the plaintiff in this case, is not seeking damages for Neurontin prescriptions that were written for social phobia. Do you know that?" (3/19 Tr. (Greene) at 121:16-19.)

- "You understand that Kaiser is not seeking monetary damages for Neurontin prescriptions that were written for panic disorder. Do you understand that?" (*Id.* at 121:22-24.)

- "You weren't trying to suggest to the jury on direct examination that social phobia was one of the diagnostic criteria of bipolar disorder, were you?" (*Id.* at 122:4-6.)

This rhetoric cannot gloss over the fact that Plaintiffs have failed to demonstrate that Prof. Rosenthal's analysis actually addressed prescriptions written specifically for bipolar

disorder, as opposed to any other condition. The same is true for each of the disease conditions at issue.

This is a fundamental, blatant, and incurable failure of proof with respect to all of the indications at issue. Because Kaiser failed to present any competent medical evidence supporting its economist's arbitrary groupings of ICD-9 codes, Kaiser has failed to meet its burden of proof with respect to either causation or damages. Therefore, Kaiser's claims must be dismissed in their entirety.

## CONCLUSION

For all of the foregoing reasons, Pfizer respectfully requests that the Court grant its Supplemental Motion for Judgment as a Matter of Law Based Upon Lack of Sufficient Evidence to Prove Injury, Causation or Damages.

Dated: March 23, 2010
Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:  /s/ Mark S. Cheffo
     Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Email: Mark.Cheffo@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:  /s/ Raoul D. Kennedy
     Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400
Email: Raoul.Kennedy@skadden.com

| CERTIFICATE OF SERVICE | WHEELER TRIGG O'DONNELL LLP |

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 23, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo

WHEELER TRIGG O'DONNELL LLP

By:   /s/ James E. Hooper
      James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel:  (303) 244-1800
Email:  hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*