UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981 |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris |
| | Magistrate Judge Leo T. Sorokin |

**DEFENDANTS' OFFER OF PROOF REGARDING
DR. KEELEY'S EXCLUDED TESTIMONY**

Defendants, Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this offer of proof regarding Dr. Michael Keeley's excluded testimony. On March 22, 2010, this Court sustained an objection by Plaintiff to any testimony that Dr. Keeley would offer on whether national data could be applied to Kaiser. Were it not for Plaintiffs' objection, sustained by the Court, Defendants would have questioned Dr. Hartman regarding this issue and he would have testified as follows:

Dr. Keeley would have testified that, in his opinion to a reasonable degree of economic certainty, national data, as used by Prof. Rosenthal, could not be applied to Kaiser for the following reasons. First, Kaiser places a great deal of emphasis on management of drug utilization and believes that this is one of the things that distinguishes it from its competitors. Kaiser's emphasis on generics an example of Kaiser's management of drug utilization. For example, Dr. Carrejo testified that about 75 percent of Kaiser's prescriptions in 2003 were generic, compared to 43 percent at other insurers. Formulary access another way Kaiser differs from other insurers. In addition, there is no reason to assume that Kaiser physicians were detailed with the same frequency as other physicians. In fact, at certain points in time, some Kaiser regions prohibited Neurontin detailing, even for on-label indications. The evidence also showed that Kaiser employed a lot of aggressive techniques to actively control its drug utilization. The evidence at trial showed that Kaiser engaged in such techniques specifically for Neurontin and that there was a drop off in Neurontin prescribing. The effect of the Neurontin

re-education program could not be accounted for simply by reducing Dr. Hartman's damages estimates because that would not correct any errors in Dr. Rosenthal's regression analysis.

Dr. Keeley would have also testified that there is no reason to assume that Kaiser's patient population is comparable to the rest of the nation. Kaiser operates only in nine states, plus the District of Columbia. Seventy-five percent of its patients are in California. Demographically, California is different from the rest of the United States in many ways. Such differences would have to be analyzed.

Dr. Keeley would have also testified that the drug utilization chart reviews conducted by Kaiser, and introduced into evidence, were reliable and should have been considered.

Dated: March 23, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Mark S. Cheffo
        Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Email: Mark.Cheffo@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Raoul D. Kennedy
        Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400
Email:Raoul.Kennedy@skadden.com

        WHEELER TRIGG O'DONNELL LLP

        By: <u>/s/ James E. Hooper</u>
             James E. Hooper

        1801 California Street
        Suite 3600
        Denver, CO 80202-2617
        Tel:  (303) 244-1800
        Email:  hooper@wtotrial.com

        *Attorneys for Defendants Pfizer Inc and*
        *Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on March 23, 2010.

        <u>/s/ Mark S. Cheffo</u>
        Mark S. Cheffo