UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
: MDL Docket No. 1629
In re:  NEURONTIN MARKETING, :
       SALES PRACTICES AND : Master File No. 04-10981
       PRODUCTS LIABILITY LITIGATION :
: Judge William G. Young
---------------------------------------------------------------x
:
THIS DOCUMENT RELATES TO: :
:
*Shearer v. Pfizer Inc.*, 1:07-cv-11428-PBS :
:
---------------------------------------------------------------x

**PLAINTIFF'S LISTING OF MDL ORDERS REGARDING
EVIDENTIARY ISSUES, ETC. FOR CONSIDERATION BY THE COURT**

Plaintiff hereby submits for the Court's consideration the following summary, with citation to the relevant Electronic Case Filing document numbers, of orders concerning evidentiary rulings made in the case of *Bulger v. Pfizer Inc.*, 1:07-cv-11426-PBS, by the Honorable Patti B. Saris, U.S.D.J., who also presides over the multidistrict litigation, *In re Neurontin Marketing, Sales Practices and Products Liability Litigation*, MDL No. 1629. Annexed hereto as Exhibit A is a transcript of the evidentiary hearing held before Judge Saris on July 20, 2009, concerning the various evidentiary motions and other trial issues. Annexed hereto as Exhibits B and C, respectively, are copies of Judge Saris' decisions on the dispositive *Daubert* and summary judgment motions in *Smith v. Pfizer Inc.,* 1:05-cv-11515-PBS. Additionally, annexed hereto as Exhibits D and E are copies of the Memorandum and Order of Judge Aleta A. Trauger of the U.S. District Court for the Middle District of Tennessee, denying Defendants' motion for summary judgment after the *Smith* case was remanded back to Tennessee for trial.

**Judge Saris' Rulings on Defendants' Motions** *in Limine*

1. **Defendants' Motion to Exclude Evidence of Marketing or Advertising Materials and Conduct, David Franklin and the Franklin Litigation, and Other Claims or Actions**
**Filed:** 6/22/09
**ECF Doc. #1912**
**Ruling:** Denied by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, pp. 13-14:** "All right, a few things: The plaintiffs will be allowed to introduce evidence about a national marketing campaign. That is relevant to not only the issue of intent -- is fraud still part of this, intentional -- MR. FROMSON: Yes, Your Honor. MR. FINKELSTEIN: Yes. THE COURT: -- as well as the duty to understand that this was being nationally marketed for off-label in areas that were not just epilepsy. I think that's very important, and I think the probative value substantially outweighs the prejudicial value."

2. **Defendants' Motion to Exclude All Evidence of or References to Warner-Lambert Company LLC's Guilty Plea or Any Related Government Investigations or Agreements**
**Filed: 6/22/09**
**ECF Doc.** # 1896
**Ruling:** Denied by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, pp. 16-18:** "THE COURT: Yes, maybe. Let me just -- I think you make one good point, which is, I'm not ruling that every single question asked is going to be admissible, every single question about a boondoggle in Boca [Raton]. I am simply saying that in general the corporate intent and the corporate course of conduct is relevant to not only the fraud issues but the duty of care, and certainly the punitive issues, and I am going to allow both the plea and the national marketing campaign."

3. **Defendants' Motion to Exclude the Testimony of Decedent's Minor Daughter, Family Photographs and Memorabilia, and Post-Mortem Photographs**
**Filed: 6/22/09**
**ECF Doc.** # 1864
**Ruling:** Granted in part and denied in part by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, pp. 19-20:** Court would allow minor daughter's testimony, family photos and memorabilia but not post mortem photos.

4. **Defendants' Motion to Bifurcate Defendants' Conditional Motion for Bifurcated Trial of Punitive Damages Claim**
**Filed: 6/22/09**
**ECF Doc. #** 1903
**Ruling: Denied** by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, pp. 40-41:** 'THE COURT: I agree. All right, so allowed in part and denied in part. Because of the shortness of the trial, I'm not inclined to bifurcate the trial on punitive damages, so -- MR. CHEFFO: Your Honor? THE COURT: Yes. MR. CHEFFO: If you've ruled on that, I'll sit down, but I would just say that just going back to some of the issues on the marketing and the plea, we do believe that they really are only going

primarily, if not exclusively, to the punitive damage issue, and we believe they're incredibly prejudicial, so we would just ask that -- THE COURT: Well, I disagree with that. I think it's relevant to the corporate intent, why it is that they might not have wanted to have disclosed certain information, because it was such a profitable drug, and it was being marketed and it was so profitable, not dampening the sales, their understanding of how widespread it was used across so many indications. I mean, it's relevant on so many issues. My concern is more along the lines of the time frame. It can't just be what happened when I first got the case in the mid-'90s. It's got to be brought through the 2000s, and do I have a proffer that's going to happen? MR. FINKELSTEIN: Absolutely, Your Honor."

5. **Defendants' Motion to Exclude Evidence of Post-Incident Regulatory Actions, Labeling, and Patient Information Guides**
**Filed: 6/22/09**
**ECF Doc. #** 1869
**Ruling: Denied** by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, pp. 20-21:** "Four, defendant's motion in limine to exclude evidence of post-incident regulatory actions, labeling, and patient information guide. You mean the FDA? You want me to exclude the FDA? That's directly relevant to the causation issue, a finding of a public agency. MS. ARMSTRONG: Your Honor, not the meta-analysis. The motion doesn't go to that. It goes to the actual regulatory event of requiring a label. THE COURT: Overruled. So I deny the motion in limine with respect to the FDA."

6. **Defendants' Motion to Exclude Various Evidence, References, and Arguments**
**Filed: 6/22/09**
**ECF Doc. # 1872**
**Ruling: Granted in part and denied in part** by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, pp. 36-40:** 1) " MR. FROMSON: Your Honor, the size of the company and the resources of the company and the profits of the company, maybe. THE COURT: Well, I think the profits from the drug might make the most sense. MR. FROMSON: I agree, Your Honor. THE COURT: I think it's billions and billions. I remember someone made fun of me in a book because there was a fine of $450 million, which is one of the largest fines I'd ever imposed ever, and someone made fun of me because it was such a small piece of the profits of the actual drug. So I think the profits from the drug but not the whole company", 2) excluded references to attorneys in case and to insurance, 3) exclude comments re absence of corporate representatives at trial, 4) Plaintiff may argue that money will benefit the decedent's two children for what the statute states – counseling support etc, 5) golden rule arguments are inappropriate for opening statement and court excluded mention of discovery disputes.

7. **Defendants' Motion to Exclude the Testimony of Dan Brock**
**Filed: 6/22/09**
**ECF Doc. #  1889**
**Ruling:** Granted in Electronic Order on 7/21/2009: "Allowed for the reasons stated in Court. Professor Brock does not provide scientific, technical, or specialized knowledge that will assist the trier of fact."
**Court's Decision from 7/20/09 oral argument, p. 29:**

3

"THE COURT:  Excuse me.  I'm hoping that's what Franklin and some of these other people are going to do.  I thought he was on for the fact that he was going to say what they did was unethical for the punitive piece of it.  MR. FINKELSTEIN:  Unethical and reckless and careless, yes, all those components.  THE COURT:  I'm inclined not, but I will – but definitely don't put it into your opening statement.  MR. FINKELSTEIN:  Okay."

8. **Defendants' Motion to Exclude Anecdotal Adverse Event Reports**
**Filed:  6/22/09**
**ECF Doc. # 1915**
**Ruling:**  Granted in part by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, p. 35:**  Plaintiffs can utilize to demonstrate notice, and would have to have side bar if they want to include a particular adverse event report.  "I will definitely not allow in all the adverse event reports.  I will allow experts to rely on them to the extent it's appropriate, and there may be one or two adverse event reports that you want to use, and you'll give me heads-up notice beforehand."

9. **Defendants' Motion to Exclude Evidence of Foreign Labels and Regulatory Actions**
**Filed:  6/22/09**
**ECF Doc. #** 1867
**Ruling:**  Denying without prejudice by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, pp. 24-25**:  "THE COURT:  Could we hold that off just for second.  On the labeling -- I just need to sort of filter this -- on the labeling, to the extent it was based on information from the company, it's an admission of a party opponent.  To the extent that the company had the right to object and didn't, I will allow that in.  If, though – this is where it's hard because I don't know.  Who's going to put this in for you?  MR. ALTMAN:  This will go in through Dr. Cheryl Blume."

**Judge Saris' Rulings on Plaintiffs' Motions *in Limine***

1. **Plaintiffs' Motion to Preclude the Testimony and Exhibits of Defense Expert Dr. Gibbons**
**Filed:**  6/22/09
**ECF Doc. # 1875**
**Ruling:**  Court found as moot in Electronic Order of 9/11/2009
**Court's Decision from 7/20/09 oral argument, p. 10:**  "THE COURT:  Gibbons, all right.  So I've been reading the expert reports, and I have to say I'm sort of lost at some points between November, March, and May, how they differ or whether it's significant.  I will have to ask all that.  But I am sure I will let Dr. Gibbons criticize the FDA report, the lamotrigine and Topiramate points.  I am not sure what else I will let him do.  So I may not rule by the time of the openings, and you should just not mention it."

2. **Plaintiffs' Motion to Preclude the Testimony of All of Defendants' Expert Witnesses Other Than Dr. Gibbons Concerning the FDA Alert and Related FDA Subjects or, in the Alternative, to Preclude the Testimony of Dr. Gibbons**
**Filed:**  6/22/09
**ECF Doc. # 1887**

**Ruling:**  Denied by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, p. 57:** "MR. FROMSON:  Judge, very briefly -- and I understand your order clearly -- they went out and got Gibbons for the FDA alert because he was the only one in the world uniquely qualified to do it.  THE COURT:  You know, come on, that's just all litigation posturing.  MR. FROMSON:  Well, that's the way to posture to the Court in order to get the Court to allow him to do the rebuttal.  THE COURT:  He's a statistician, just like Greenland is.  It's very hard stuff.  So, I mean, he's the only guy who's qualified, as far as I know, on statistics, but there may be other aspects about the regulatory system that other people can comment on.  MR. FROMSON:  So then I think we're in agreement that all the other experts couldn't come in and give statistical opinion.  THE COURT:  They can't give a statistical analysis unless they're qualified."

3. **Plaintiffs' Motion to Preclude Any Evidence Proffered by Defendants at Trial That Any Drug Other Than Neurontin Caused or Was Associated With Plaintiff's Decedent Susan Bulger's Suicide**

**Filed:**  6/22/09
**ECF Doc. # 1878**
**Ruling:**  Denied by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, p. 52:** "MR. FINKELSTEIN:  We're not saying that -- we simply ask for a motion in limine that they can't say that cocaine leads to suicide.  It's a very limited -- we're not saying the cocaine use is out.  We don't want them to stand up and argue that she committed suicide because of cocaine, because of Effexor, because of all these things.  They have to withstand Daubert scrutiny if they want to argue that.  THE COURT:  Well, let me just put it this way:  Of course you're allowed to point out that she was possibly a drug addict and was on Effexor and all sorts of other meds, but it is in fact true that you can't say "and Effexor has depressive side effects" unless you have some medical expert who talks about that that's a warning from the FDA or some regulatory things.  In other words, I can't do a whole Daubert thing on that."

4. **Plaintiffs' Motion to Preclude Any Mention at Trial by Defendants that the Neurontin Package Insert was Labeled to Warn Against Completed Suicide Prior to the December 21, 2005 Labeling Change**

**Filed:**  6/22/09
**ECF Doc. # 1884**
**Ruling:**  Denied by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, pp. 54-55:** "MR. ALTMAN:  But from a regulatory perspective, the company considered a completed suicide report to be unlabeled. Their own records, there's a statement by the company that suicide is an unlabeled event.  THE COURT:  Can I say something?  This is one of these things where maybe you all put a lot of -- but when I hear "suicidal" and when a jury hears it, they're going to think that it means anything -- actually, I would have thought it meant trying to commit suicide or committing it.  Now, if it doesn't, you've got to be careful how you word this, but they're allowed to put in the package insert.  MR. ALTMAN:  But if that were true, Your Honor, then why did they tell the FDA it's not in the label?  THE COURT:  I don't know.  Ask them that question.  MR. FROMSON:  Your Honor, we're not saying they can't utilize the package insert.  They just can't say "We warn for

suicide" as the term is used in the industry.  That would be untrue.  THE COURT:  Just say "suicidal.""

5.  **Plaintiffs' Motion to Preclude Any Testimony or Discussion by Defendants That They Could Not Have Amended the Neurontin Label or Issued Strengthened Warnings Without Prior FDA Approval**
**Filed:**  6/22/09
**ECF Doc. # 1881**
**Ruling:**  Granted by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, p. 55:** "THE COURT:  All right, fine.  Motion in limine to preclude any testimony discussion by defendants that they could not have amended the Neurontin label or issued strengthened warnings without prior FDA approval.  That's just a legal argument.  MR. FROMSON:  I don't really think there's a disagreement.  After having read their papers, they didn't deny that there were federal regulations --THE COURT:  So allowed."

6.  **Plaintiffs' Motion to Preclude Miscellaneous Subjects From Evidence at Trial**
**Filed:**  6/22/09
**ECF Doc. # 1893**
**Ruling:**  Granted in part by Electronic Order on 7/24/09
**Court's Decision from 7/20/09 oral argument, pp. 77, 78:**  "1) Punitive damages, to the extent awarded,  have to be limited, have to be an amount reasonably necessary to accomplish the deterrent effect, should not be overdeterrent; and the fact that a punitive damage award would reduce innovation, would reduce the availability of medicines, that's relevant to how much of a punitive damage award would be sufficiently deterrent or overdeterrent.  THE COURT:  I think that's fair, I mean, in the context of punitive damages only.  "Not on the stock price of Pfizer …or insurance".  2) In reference to our motion to exclude mention of lawyer advertising – we noted that there was no intention of introducing number of adverse events after the second half of 2003 – lawyer advertising did not begin until later.  Court noted:  "Well, I'll wait and hear your thing, and then just don't mention it in the opening.  I'll wait hear.  I'll wait."  *Id.* at 81

7.  **Plaintiffs' Motion to Preclude Any Mention at Trial by Defendants of Bad Acts of Plaintiff's Decedent and Her Family and the Medical History of Plaintiff's Decedent's Family**
**Filed:**  6/22/09
**ECF Doc. # 1897**
**Ruling:**  Denied by Electronic Order on 7/24/2009
**Court's Decision from 7/20/09 oral argument, p. 73:** "MR. FINKELSTEIN:  As to her mother and issues relating to her mother, and they raise issues of Ron, Sr.'s drug use, and these ancillary -- THE COURT:  But that could be stressors on her in terms of her suicide.  I mean, to the extent it's otherwise relevant, denied.  I don't think I'm going to go back to the beginning of time.  To the extent it was happening --MR. FROMSON:  That's a very important point, Your Honor, as opposed to going back thirty years."

8.  **Plaintiffs' Motion to Exclude the Testimony of Sheila Weiss Smith**
**Filed:  1/23/2009**
**ECF Doc. # 1625**

6

**Ruling:**  Denied by Electronic Order on 09/10/2009
**Court's Decision:**  Judge Patti B. Saris:  Electronic ORDER entered re 1625 Motion to Exclude the Testimony of Sheila Weiss Smith, Ph.D.  "The Court denied this broad-brush Daubert motion in the Bulger trial without prejudice to challenging portions of Dr. Smith's testimony at trial."

**Judge Saris' Rulings on Summary Judgment and *Daubert* in *Smith v. Pfizer Inc.***

**Defendants' Motion for Summary Judgment *re Smith v. Pfizer Inc.***
**Filed:  1/23/09**
**ECF Doc. # 1641**
**Ruling:**  Granted in part**,** ORDER ECF Doc. # 2060 entered
**Court's Decision:**  Granting in part motion for summary judgment – Court left the following two summary judgment grounds for the Tennessee court to decide:  (1) Plaintiff cannot demonstrate that Mr. Smith ingested Neurontin at any time temporally related to his suicide; (2) Plaintiff cannot demonstrate that any allegedly inadequate warnings proximately caused Mr. Smith's suicide.  The court grants as unopposed the motion for summary judgment on express warranty and Tennessee Consumer Protection Act claims.  Defendants' motions for summary judgment on Plaintiff's implied warranty and fraud claims involve questions of Tennessee law. *See generally In re Neurontin Mktg., Sales Practices and Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 114 (D. Mass. 2009) (dismissing any fraud claims brought by Plaintiff Smith based on affirmative fraudulent misrepresentations but denying Defendants' motion to dismiss Plaintiff Smith's claim of fraudulent concealment).

**Defendants' Motion to Strike the Untimely Supplemental Declarations of Stefan P. Kruszewski and Ronald W. Maris**
**Filed:  3/12/2009**
**ECF Doc. # 1715**
**Ruling:  Denied ECF Doc. # 2059**

**Defendants' Motion to Exclude the Specific Causation Testimony of Dr. Maris and Dr. Kruszewski**
**Filed:  1/23/09**
**ECF Doc. # 1627**
**Ruling:  Denied ECF Doc. # 2059**

**Judge Trauger's Ruling on Summary Judgment in *Smith v. Pfizer Inc.***

**Middle District of Tennessee Case No. 03:05-cv-00444**
**Filed:  2/19/2010**
**M.D. Tenn. ECF Doc. # 63** Memorandum.  Judge Trauger denied Defendants' motion for summary judgment stating, *inter alia,* that : 1) In regard to the learned intermediary doctrine "the jury need not rely solely on its common sense to conclude that warnings from Dr. Mackey might have prevented Smith's suicide", 2) "it is at least a question of fact whether Smith's suicide is an independent intervening cause, the court will not dismiss the plaintiff's claims for lack of proximate cause", 3) regarding Plaintiff's breach of warranty claims "47-2-607(3)(a) did not require the plaintiff to serve the defendants with separate, pre-suit notice of her claims" and  the

reliance prong was fulfilled, 4) in denying Defendants' summary judgment on Plaintiff's fraudulent concealment claim the court noted Judge Saris' prior decision regarding Defendants' duty of care (that "a manufacturer of a pharmaceutical has a duty to disclose to physicians and patients material facts about the risks of the drug, particularly when it is engaged in off-label marketing for uses not approved by the FDA, if it knows that the plaintiff and/or his prescriber does not know or cannot reasonably discover the undisclosed facts." *In re Neurontin*, 618 F. Supp. 2d at 110) and stated "a pharmaceutical company when that company knows that its drug might cause patients to commit suicide".
**M.D. Tenn. ECF Doc. # 64 Order**

Dated:  March 23, 2010                                     Respectfully submitted,

                                                                               FINKELSTEIN & PARTNERS, LLP


                                                              By:      /s/ **Andrew G. Finkelstein**
                                                                               Andrew G. Finkelstein, Esquire
                                                                               1279 Route 300, P.O. Box 1111
                                                                               Newburgh, NY  12551
                                                                               (800) 634-1212

                                                                               *Attorneys for Plaintiff Linda B. Shearer*