Page 1

```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS


IN RE:                                  )
                                        ) No. 04-10981-PBS
NEURONTIN MARKETING, SALES PRACTICES,   ) MDL No. 1629
AND PRODUCTS LIABILITY LITIGATION       )
----------------------------------------)
This document relates to:               )
KAISER FOUNDATION HEALTH PLAN, et al,   )
                                        )
            Plaintiffs                  )
                                        )
        -V-                             )No. 04-10739-PBS
                                        )Pages 1 - 19
PFIZER, INC., et al,                    )
                                        )
            Defendants                  )
```

JURY TRIAL - DAY TWENTY-ONE
JURY DELIBERATIONS

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
March 24, 2010, 9:00 a.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 7200
Boston, MA  02210
(617)345-6787

1   A P P E A R A N C E S

2   FOR THE PLAINTIFFS:

3        THOMAS M. GREENE, ESQ. and ILYAS J. RONA, ESQ.,
    Greene, LLP, 33 Broad Street, 5th Floor, Boston,
4   Massachusetts, 02109.

5        THOMAS M. SOBOL, ESQ. and KRISTEN JOHNSON PARKER, ESQ.,
    Hagens Berman Sobol Shapiro, LLP, 55 Cambridge Parkway,
6   Suite 301, Cambridge, Massachusetts, 02142.

7        LINDA P. NUSSBAUM, ESQ., Kaplan Fox & Kilsheimer, LLP,
    850 Third Avenue, New York, New York, 10022.
8
         DON BARRETT, ESQ., Barrett Law Office,
9   404 Court Square North, P.O. Box 987, Lexington, Mississippi,
    39095.
10
         BARRY HIMMELSTEIN, ESQ., Lieff Cabraser Heimann &
11  Bernstein, Embarcadero Center West, 275 Battery Street,
    San Francisco, California, 94111-3339.
12

13  FOR THE DEFENDANTS:

14       KATHERINE ARMSTRONG, ESQ., MARK S. CHEFFO, ESQ., and
    THOMAS E. FOX, ESQ., Skadden Arps Slate Meagher & Flom, LLP,
15  Four Times Square, New York, New York, 10036.

16       RAOUL D. KENNEDY, ESQ., Skadden Arps Slate Meaher & Flom,
    LLP, Four Embarcadero Center, San Francisco, California, 94111.
17
         JAMES E. HOOPER, ESQ. and ANDREW H. MYERS, ESQ.,
18  Wheeler Trigg Kennedy, LLP, 1801 California Street, Suite 3600,
    Denver, Colorado, 80202.
19

20

21

22

23

24

25

df2d0aaa-0302-4125-8850-06c59fa01880

1                P R O C E E D I N G S
2          THE COURT:  Good morning.
3          MR. SOBOL:  Good morning, your Honor.
4          THE COURT:  Are there any issues this morning?
5          MR. CHEFFO:  There are a few, your Honor.
6          THE COURT:  The jury is all here, so I'd like to bring
7   them in, take them out, and then work on them.  Are there
8   issues with the exhibits?
9          MR. CHEFFO:  No.  The exhibits are fine with respect
10  to tabbing.  There are two or three quick things I just wanted
11  to --
12         MR. SOBOL:  I've made a representation to Mr. Cheffo
13  that replacement Exhibits 408-F and 408-I reflect the revised
14  calculations with the years cut off, and we've given the
15  information to confirm that with him later on this morning.
16         THE COURT:  Good.  And everyone agrees with the
17  chronological lists as well as the -- there were two sets of
18  lists.
19         MS. NUSSBAUM:  They're all fine, your Honor.
20         THE CLERK:  They're all here, one for each juror.
21         THE COURT:  So can I just bring these all in?
22         MR. CHEFFO:  Absolutely, your Honor.
23         THE COURT:  All right, so --
24         MR. CHEFFO:  But I do have one or two quick things.  I
25  was going to thank the Court, but I'll do that in a few

1   minutes.

2           The Rakes issue, you know, we basically submitted a
3   red line, and, again, I read it again last night, and I think,
4   you know, our proposal, I think, tracks, I think --
5           THE COURT: So you seem to think that fraudulent
6   concealment was eliminated, and I actually don't think it is as
7   long as the plaintiff diligently pursued.
8           MR. CHEFFO: Again, it says, "The District Court was
9   correct. The reasoning means we acknowledge that a plaintiff,
10  whose argument for delayed approval under the discovery rule
11  has failed because she has not diligently investigated her
12  claim, will never be able to successfully argue that the
13  statute of limitations has been tolled under a fraudulent
14  concealment theory."
15          THE COURT: I agree with that. Isn't that what I
16  said?
17          MR. CHEFFO: We basically said, no, because I think --
18  you have a fraudulent concealment language in your --
19          THE COURT: Yes, but you can only succeed on it if
20  you've also reasonably diligently -- we've looked it up too,
21  and I guess I don't think that they've completely eliminated
22  fraudulent concealment. I think, as long as you've reasonably
23  diligently discovered it, you can pursue it. But you've got to
24  also be -- let me ask you, what do you want to do? Do you care
25  enough about their thing? Does this matter enough to you?

1          MR. SOBOL:  Yes, we do.  We don't want to be focusing
2    on this issue anymore, and we thought your jury instruction was
3    correct.
4          THE COURT:  I'm not doing it.  So you've preserved the
5    objection.  I'm pretty convinced that they did not eliminate
6    fraudulent concealment.  What they did is, they said you can
7    never recover under fraudulent concealment unless you have also
8    reasonably diligently tried to discover your claim.
9          MR. CHEFFO:  Okay, your Honor, we will -- I mean, I
10   think we just -- do I need to read this for the record, or can
11   I just -- I've given a copy to Mr. Alba.  I can read it into
12   the record what we think.
13         THE COURT:  You can give it to him if you want.
14         THE CLERK:  You have it.  That's the one I gave you.
15   Oh, she has it.
16         MR. CHEFFO:  Can we just mark it to save your Honor
17   some time?
18         THE COURT:  Yes.  I do not believe the First Circuit
19   eliminated the concept of fraudulent concealment.  We've
20   Shepardized the case, we've done the research we can do.  What
21   they've done is, you can never succeed on it unless you've also
22   reasonably diligently pursued your claim, and at least that's
23   what I tried to portray.
24         MR. CHEFFO:  But if you read -- and, again, the
25   only --

1  THE COURT: You think I haven't?

2  MR. CHEFFO: This is why -- and I don't want to
3  quibble with your Honor -- I think if you reasonably pursue it,
4  okay, and you don't find it, then your statute never starts,
5  right?

6  THE COURT: Right.

7  MR. CHEFFO: If you reasonably pursue it and you
8  actually do find the information, then your statute starts to
9  run. And at that point you can't unring the bell. There's
10  never anything. So fraudulent concealment doesn't apply
11  because --

12  THE COURT: You're saying that they completely
13  eradicated the notion of fraudulent concealment. I think it's
14  relevant to whether or not you've actually reasonably -- to a
15  jury's analysis about whether someone was reasonably diligent
16  as to whether at the same time someone was trying to conceal
17  it.

18  MR. CHEFFO: But then they wouldn't have -- our point
19  is, if they never found out about it, in other words, if they
20  didn't find out the information, then the statute would never
21  start. And we agree with that, and I think that's what your
22  initial order said. We're saying there's no reason for
23  fraudulent concealment because what your language in your
24  charge --

25  THE COURT: But isn't it relevant to reasonably

Page 7

1  diligent activity as to whether the other side was trying to
2  conceal it at the same time?
3        MR. CHEFFO:  Yes, but here's the point:  If they're
4  reasonably diligent and they find it out, what your Honor's
5  instruction says is, there can then be a stoppage; in other
6  words, the clock stops.
7        THE COURT:  So it's just the last line you don't like?
8        MR. CHEFFO:  It's basically the last two or three
9  sentences.  I mean, I have a copy here, your Honor, which is
10 black-lined.
11       THE COURT:  Because they did not eliminate, to the
12 best -- we did a lot of research last night.  They never said
13 that fraudulent concealment is irrelevant, never, so --
14       MR. CHEFFO:  If your Honor has ruled, I'm not going
15 to, you know, keep banging, but I really think that it's
16 incongruous with the way they've done the analysis because the
17 point is, once you find something, if you really did your
18 diligence and you found it, nothing can stop that.  That's what
19 the First Circuit has said.  If someone does something to
20 prevent you from ever finding it, that is relevant, but that's
21 not fraudulent concealment.
22       THE COURT:  So your real issue is, "the clock stops"?
23       MR. CHEFFO:  Exactly, your Honor.
24       THE COURT:  That one sentence?  Because you've
25 rewritten the whole thing.  I have no problem with taking out

1  the last sentence, if that's really what this is all about.
2         MR. CHEFFO:  Yes, I mean, I think it's pretty much
3  what you had.  Really, we're just taking out "the clock stops"
4  language.
5         THE COURT:  All right, I don't have a problem with
6  that, if that's your big beef.
7         MR. SOBOL:  Well, there's two issues then, your Honor.
8  The first is that you've already instructed the jury one time.
9         THE COURT:  I'll have it typed up, and we'll send it
10 in.  I mean, they're going to get the whole thing anyway, and
11 we'll just eliminate the last sentence and say it's a
12 modification.
13        MR. SOBOL:  So it will appear as if that was what was
14 read?
15        THE COURT:  I'm going to say I'm going to hand them a
16 slight modification on the statute of limitations, and if
17 that's -- because it -- this was so dramatically rewritten, if
18 the issue is the last sentence, I have no problem with taking
19 that out.
20        So the next one is, I'm not going to give another
21 curative instruction on -- I did yesterday without objection.
22 I took care of it.
23        MR. CHEFFO:  I think we actually -- Ms. Nussbaum, we
24 talked this morning, did not think you did on the $122 million
25 point.

1          THE COURT:  I did.  I said, "The theories of damages
2     were set out in my instructions, and those are what you should
3     follow."  I specifically said that to counter that
4     $122 million, or whatever the issue was in the surge of the
5     moment brought on.  I've eliminated that.
6          Now, I think I've done that.  And, truthfully, if it
7     comes back that way, I'm going to send them out again because
8     the $122 million is not acceptable.  It's a surprise tactic.  I
9     don't know whether you just got your adrenalin going or what.
10         So I will send them back and say, no, that's not one
11    of the two theories.  So I think I've said it, and I hate to
12    say it again.
13         MR. SOBOL:  And might I just raise one issue, your
14    Honor?
15         THE COURT:  Yes.
16         MR. SOBOL:  It's also regarding the statute of
17    limitations.  Now that you're going to be giving them a revised
18    instruction, I think it's important to address this.  During
19    the case, the defendants opened saying that the Franklin case
20    was unsealed in the middle of 2002.  There was no effort during
21    the trial to have judicial notice taken of when the Franklin
22    case was, quote, "unsealed."  The defendants never sought to do
23    that.
24         THE COURT:  I am not doing anything now.  I'm not
25    reopening the record, Mr. Sobol.

1    MR. SOBOL:  I'm not --
2    MR. CHEFFO:  Mr. Greene asked this question.
3    MR. SOBOL:  If I may, your Honor?
4    THE COURT:  What?
5    MR. SOBOL:  I'm not asking that the record be
6  reopened.  If I may address the point however, okay?  The fact
7  that judicial notice was not asked at all during the trial;
8  then during the closing arguments, Ms. Nussbaum said something;
9  during the side bar it was addressed.  My impression was that
10 you weren't going to deal with that issue in front of the jury
11 because I thought you'd said you had had enough of it.  Then
12 right before we finished yesterday, you gave them an
13 instruction; you gave judicial notice that the Franklin case
14 was unsealed very late in 1999, the beginning of 2000, okay?
15 And that's the way it was left.
16   THE COURT:  No, actually I added, "and there's
17 evidence with respect to publicity later on in 2002," or some
18 such thing.
19   MR. SOBOL:  Well, actually --
20   THE COURT:  What did I say exactly?
21   MR. CHEFFO:  This is the question actually.
22   THE COURT:  Excuse me.  Let him finish.  What did I
23 say?  Does anyone have a transcript of what I said?
24   MR. SOBOL:  Well, my recollection of what you said,
25 your Honor, was that "There's other evidence that you should

1  consider in the record."  It's not as if you said when the
2  publicity was.  My point is very simply this:  If the jury is
3  going to be given judicial notice that the Franklin case was
4  unsealed in the beginning of 2000, then they need to be told
5  what that means because all that means is that something
6  happens in the docket room and that people can now get access
7  to it.  It does not mean that there's some notice.
8         THE COURT:  I'm not saying anything more about it.  I
9  said it yesterday without objection.  Whatever I said, I said
10 without objection.  I'm not changing the $122 million at this
11 point.  I'm not changing the publicity.  I said what I said
12 about it, and no one asked me to clarify.  She repeated
13 something that was said in the opening that turned out not to
14 be true.  I'm not faulting her any more than I am faulting
15 Mr. Kennedy who said something about the opening date on
16 statute of limitations.  I'm not faulting people.  Things
17 happen at a trial.  I just corrected it.  No one asked me for
18 anything else at that time.
19         MR. SOBOL:  But you dismissed the jury.
20         THE COURT:  I am not reopening it now.  There was an
21 objection on this, and I will not make a big Magilla out of it,
22 and I'm going to just send it in as part of the charge.  I'm
23 not recharging them now.  I'm not saying anything, period,
24 okay?  I'm not doing it.  I'm just not saying anything to
25 anyone about anything.  I'm going to send this in.  And I think

Page 12

1  at this point it's too late to do this cleanup.

2         MR. CHEFFO:  I just want to, just because we've been
3  here a long time and this issue of hospitals, I know we talked
4  about it a little bit.  We do have a few minutes to address it.

5         THE COURT:  No, we're not doing it now.  No.  You
6  didn't even file -- of the thousands and millions of pages that
7  you filed on this, not one has been a motion to dismiss the
8  hospitals, not one, not one.  Yesterday you filed a response to
9  a memo three minutes before I was about to charge a jury.  I'm
10 not doing it.  You've known this case from the get-go.  I'm not
11 doing it.  If they don't have standing, it's never too late to
12 raise subject matter standing.  You can do it after the trial.
13 I don't even know if it -- frankly, I've thought about it three
14 ways to Sunday.  I can't figure out why it matters other than
15 how they allocate the sums of money between the two of them.

16        MR. CHEFFO:  It does matter, though, your Honor.  The
17 only reason it matters is because under the Hemi Group, if the
18 hospitals --

19        THE COURT:  Excuse me.  I'm not doing it.  Untimely.
20 I rule as a matter of law it's untimely to raise it right now.
21 Everybody is untimely at this point.

22        (Laughter.)

23        THE COURT:  Everybody.  The only thing that's not
24 untimely is Ms. Armstrong's very persistent pressing me on
25 Rakes.  Wherever she is, she hammered me on Rakes.

1     MR. CHEFFO:  She's on a train, your Honor.
2     THE COURT:  All right?  So I'm hammered on Rakes.  I
3  will fix the last sentence.  But other than that, nothing.  No
4  one objected.  I'm not doing it.
5     So, yes?
6     MS. NUSSBAUM:  I just want to state for the record,
7  their opening demonstrative did show that Franklin was unsealed
8  in 2002.
9     THE COURT:  But it's untrue.  It's untrue.  How can I
10 give them something that's untrue?
11    MS. NUSSBAUM:  Your Honor --
12    THE COURT:  Okay?
13    (Laughter.)
14    MS. NUSSBAUM:  Our point I think is, that was what
15 they opened on.  That's what their demonstrative said.  They
16 had all these time lines that were up.
17    THE COURT:  Please sit down.  Okay.  I'm not saying
18 anything.  Untimely.  There's a big sign "Untimely," okay?
19 Let's bring them in.
20    (Discussion off the record.)
21    (Jury enters the courtroom.)
22    THE COURT:  Good morning. We're all happy because
23 we're done, so it's now in your lap.  So did anyone speak about
24 the case or see anything in the press?  I'm told there was an
25 article in Bloomberg.  Please don't read Bloomberg.  I didn't

df2d0aaa-0302-4125-8850-06c59fa01880

1  see anything in what I'll call the mainstream press, the New
2  York Times or the Wall Street Journal.  So please be careful as
3  you're reading the business sections.
4         Anyone speak about the case or see anything?  Nothing?
5  All right, good.
6         As I mentioned to you before, there are just a few
7  tweaks I've made in response to some of the things the
8  attorneys said last night in the instructions.  Don't take
9  notes.  I'm just going to include them in the final version
10 that Lee gives you.  Particularly, there was a slight tweak on
11 the statute of limitations instruction, so just to make sure
12 that you read that when you get that transcript.
13        So thank you.  We'll see you when you want to.
14 There's snacks, lunch, love.  We'll come to you at 4:30 if
15 you're not done and say, "Do you want to go home now?"  I had
16 understood some people -- it wasn't just yesterday, right?  You
17 need to leave at 4:30, kind of thing?  So we'll let you go at
18 4:30 if you need to.  We won't take a verdict after 5:00, just
19 because everybody has other things they need to do.
20        So we'll see you when you want us to.  Thank you very
21 much.
22        THE CLERK:  All rise for the jury.
23        (Jury excused.)
24        THE COURT:  Enjoy.  I won't take questions between
25 1:00 and 2:00.  The Institute For Contemporary Art is lovely.

1   There's the Aquarium.
2           MR. CHEFFO:  And, your Honor, in all seriousness,
3   nothing to do with the case, really, what I want to say I think
4   will speak for everyone that both your clerks and, you know,
5   Mr. Alba has been wonderful and the -- you know, there's been
6   some contentious issues, but you've really kept up with us and
7   your clerks have, so we really appreciate that.
8           THE COURT:  Thank you.  It was a big case.
9           (A recess was taken, 9:20 a.m.)
10          (Resumed, 4:30 p.m.)
11          MR. FOX:  Your Honor, these are replacement and
12  corrected exhibit lists that went back to the jury yesterday.
13  Plaintiffs had listed exhibits on the list that did not make it
14  into evidence.
15          THE COURT:  Have you two gone through this together?
16          MR. FOX:  Both sides have, Corey and Corinne and --
17          MR. GREENE:  I think somebody from our side did.
18  Corinne?
19          MR. FOX:  Yes.
20          THE CLERK:  Those are plaintiffs'.  Those are
21  defendants'.  They want to swap them out.
22          MR. FOX:  So all the corrections have been made, so
23  that accurately --
24          THE COURT:  I won't know anything, but let me just
25  play devil's advocate for a minute.  I'm happy to have them go

1  in as the key ones, but what if they've marked up the other
2  ones?  I don't know that they have.  I'm just simply saying, we
3  don't usually get into that level of detail.  Maybe what we can
4  do is have Mr. Alba say I'm substituting, these are more
5  accurate; and then if he starts seeing stuff on it, he can come
6  out and tell us that there's a problem.
7           MR. FOX:  And then either decide to leave those in
8  with the correct, with these more accurate ones and --
9           THE COURT:  We'll figure it out.  He'll finesse it.
10 He's good at this stuff, so --
11          MR. FOX:  The only other issue, your Honor, is that we
12 had determined that there was an error made in connection with
13 one of the video transcripts.  If you recall, plaintiffs
14 provided a binder with the transcripts of the videos that were
15 played.  We also provided a binder with the transcripts of the
16 videos we played.  Mr. Alba says he doesn't have them marked
17 and was wondering whether your Honor has them so that he could
18 mark them as, you know, non-exhibits.
19          THE COURT:  Have they even asked for them yet?
20          MR. FOX:  No, but Mr. Alba didn't know whether your
21 Honor was going to mark them as --
22          THE COURT:  Is this the binder?
23          MR. FOX:  That's the one from defendants or --
24          THE COURT:  Defendants' transcripts of video
25 depositions played?

1    MR. FOX:  Yes, because that's the one we provided.
2 There should be one from the plaintiffs.  I think you provided
3 the white binder.  That's it, so --
4    THE COURT:  Are you all happy?  You happy?
5    MR. GREENE:  Yes.  I think it was inconsequential.  I
6 don't know how you picked it up, but you did, I guess.
7    THE COURT:  Boy, you must have like a SWAT team back
8 there.
9    MR. GREENE:  Around the clock.
10   MR. FOX:  So I think the intent was that those would
11 be marked by Mr. Alba as a letter so that they're marked for
12 identification.
13   THE COURT:  Now what are you talking about?  What,
14 these deposition transcripts?
15   MR. FOX:  Because these were not taken down by the
16 Reporter, you had said they needed to be part of the court
17 record in the event there was an appeal.
18   THE COURT:  Right, so you just want to substitute the
19 correct one for the incorrect one, right?
20   MR. FOX:  Correct, and then Mr. Alba would mark these
21 as part of the court exhibits.
22   THE COURT:  Okay, okay.  All right, so why don't you
23 do that with him afterwards okay?  That's totally fine with me.
24        (Jury enters the courtroom.)
25   THE COURT:  Please don't be seated.  You're still

1  smiling, a good sign.

2          A JUROR:  So far.

3          (Laughter.)

4          THE COURT:  All right, so don't be seated.  Good-bye.
5  Have a nice night.  I'll see you tomorrow morning at 9:00.
6  Remember, don't start deliberating until I count that all of
7  you are in.  You can go through the documents and do whatever
8  you want just to prepare, but you can't deliberate until
9  absolutely everyone is in the room, so that's why I do it that
10 way.  See you tomorrow morning.

11         (Jury excused.)

12         THE COURT:  Okay.  Let me just ask you all:  Do you
13 want to be here tomorrow morning?  You don't have to be here.
14 You can sleep in, take a walk.

15         MR. GREENE:  I'll be here.

16         THE COURT:  But if one side is here, I want both sides
17 here.

18         MR. GREENE:  Well, yes, if they're not going to be
19 here, I don't have to be here.  Well --

20         THE COURT:  What do you all want to do?

21         MR. KENNEDY:  I'd just as soon not be here.

22         MR. GREENE:  I don't want to make Mr. Kennedy be here,
23 but --

24         THE COURT:  Why don't you all not be here in the
25 morning but be here at night, if they go back again, so that

1   they know that you're all here.  Does that make sense?
2           MR. KENNEDY:  Be here at 9:00 o'clock?
3           THE COURT:  No, you don't have to be here, so don't
4   come.
5           MR. GREENE:  Is that agreed we won't --
6           MR. KENNEDY:  Yes.
7           THE COURT:  I won't let anyone here unless there's
8   someone from each side, but it's nuts to have all of you here,
9   for one thing.  You know, you've been working so hard, you
10  might as well not come in.  I literally do what I just did.  I
11  count them and send them out.  I do it on the record in case
12  there's any issue.  If anything comes up, we call you to get in
13  here.
14          Who have you got here?
15          MR. GREENE:  This is Palko Goldman.  He works in my
16  office.  He's a physician.
17          THE COURT:  And you went from medicine to law?
18          MR. GOLDMAN:  Yes.
19          THE COURT:  Okay, all right, see you tomorrow.
20          (Adjourned, 4:40 p.m.)

df2d0aaa-0302-4125-8850-06c59fa01880

1 C E R T I F I C A T E

```
UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON               )
```

I, Lee A. Marzilli, Official Federal Court Reporter, do hereby certify that the foregoing transcript, Pages 1 through 19 inclusive, was recorded by me stenographically at the time and place aforesaid in Civil Action No. 04-10739-PBS, Kaiser Foundation Health Plan, Inc., et al V. Pfizer, Inc., et al, and thereafter by me reduced to typewriting and is a true and accurate record of the proceedings.

In witness whereof I have hereunto set my hand this 25th day of March, 2010.

/s/ Lee A. Marzilli
_____
LEE A. MARZILLI, CRR
OFFICIAL FEDERAL COURT REPORTER