UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------x

In re:  NEURONTIN MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

---------------------------------------------------------x

THIS DOCUMENT RELATES TO:

ALL PRODUCT LIABILITY CASES

---------------------------------------------------------x

: MDL Docket No. 1629
:
: Master File No. 04-10981
:
: Judge Patti B. Saris
:
: Magistrate Judge Leo T.
: Sorokin

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DR. GIBBONS' GABAPENTIN PAPER WITH
<u>ACCOMPANYING DISCLOSURES AND TRANSMITTALS</u>**

Defendants Pfizer Inc and Warner-Lambert Company LLC ("Pfizer") respectfully request that this Court deny the Product Liability Plaintiffs' ("Plaintiffs") motion to compel the production of Pfizer's expert Dr. Robert Gibbons' unpublished gabapentin manuscript and the accompanying disclosures and transmittals.  As more fully set forth below, Pfizer has fully complied with the Court's directions at the February 17, 2010 hearing to produce certain underlying data considered by Dr. Gibbons as well as any peer review "criticisms" of his draft gabapentin paper.  But Plaintiffs now demand still more material relating to Dr. Gibbons' unpublished gabapentin article that were not even addressed at the February hearing.  Defendants strenuously object to producing this confidential, highly sensitive material regarding an article still under peer review.  Those objections are well-founded in light of Plaintiffs' counsel's unprecedented past steps to publicly attack Dr. Gibbons and disparage his work.  The last time Dr. Gibbons published a peer reviewed article on gabapentin he was promptly personally attacked on a prominent news website by one of Plaintiffs' lawyers.  Such attacks on Dr. Gibbons, a world-renowned and highly respected biostatistician and researcher, are outrageous. No other expert in this case has been subjected to such public attack.  Accordingly, Defendants

object to producing to Plaintiffs' counsel a draft article by Dr. Gibbons that remains under peer review consideration, or Dr. Gibbons' personal correspondence with any journals. At some point in this litigation enough has to be enough with respect to Dr. Gibbons, particularly with respect to his academic pursuits outside of the litigation. And what possible relevance to this case would Dr. Gibbons' personal correspondence with journal editors conceivably have? Defendants respectfully urge that the seemingly endless pursuit of everything connected to Dr. Gibbons be brought to an end here.

## ARGUMENT

As this Court is well aware, Plaintiffs' unfounded attacks on Dr. Gibbons have continued unabated now for years. Dr. Gibbons has been deposed for multiple days, and has been the subject of three days of *Daubert* hearings and argument, numerous motions to compel by Plaintiffs, and repeated requests for apparently never-ending discovery. In this most recent motion to compel, Plaintiffs again seek to rehash and re-invigorate their exhausted attacks and allegations against Dr. Gibbons. They have offered no legal basis to do so. Further, Plaintiffs continue to allege dilatory or evasive behavior on the part of Pfizer's counsel. As the record in this case makes clear, Pfizer has gone above and beyond its discovery obligations with respect to Dr. Gibbons, and has complied with every discovery order relating to Dr. Gibbons. Nevertheless, Plaintiffs refuse to cease in their requests for more and more discovery regarding Dr. Gibbons. Further, Plaintiffs' suggestion that Pfizer's counsel misled the Court regarding the publication status of Dr. Gibbons' article should not even be dignified with a response.

At the February 17, 2010 continued *Daubert* Hearing, the Court stated with respect to Dr. Gibbons' unpublished gabapentin manuscript that Pfizer had "an obligation to have [Dr. Gibbons] produce all criticisms." (Ex. A, February 17, 2010, Tr. at 29:4-6.)[1] As Pfizer noted at the time, none of the peer-review comments constituted a criticism of his work. (*Id.* at 29:2-3.) Nonetheless, Pfizer subsequently provided Plaintiffs with *all* of the emails, unredacted, Dr.

---

[1] All exhibits are attached to the accompanying Declaration of Mark S. Cheffo.

Gibbons received from certain journals following submission of the gabapentin manuscript, regardless of whether they constituted criticism or not. (*See* Ex. B, March 17, 2010 Email from Steven Napolitano to Keith Altman; March 17, 2010 Email from Keith Altman to Steven Napolitano.)[2] After receiving these documents, Plaintiffs' counsel Keith Altman broadened Plaintiffs' requests, asking when Plaintiffs "get to see the paper as was submitted to the journals" and stating that Plaintiffs "expect[ed] that [they] would be provided the disclosures and transmittals that went with the submission." (Ex. B, March 17, 2010, Email from Keith Altman to Steven Napolitano.) As Pfizer's counsel noted at the time, in a follow up email, Pfizer was – and remains – unaware of any order by this Court or other obligation requiring it to turn over the manuscript under peer consideration and any correspondence from Dr. Gibbons to the editors of the journals to which he submitted it. (*See* Ex. C, March 18, 2010, Email from Steven Napolitano to Keith Altman.) Plaintiffs did not provide any answer then, and they have not cited any in their memorandum here.

I.   **Production of the Gabapentin Article and Attendant Disclosures and Transmittals Will Only Fuel Further Personal Attacks on Dr. Gibbons**

As Pfizer made clear at the February 17, 2010 hearing, it has very serious concerns regarding the confidentiality of Dr. Gibbons' academic work outside this litigation. Those concerns have been confirmed by steps that Plaintiffs' counsel have taken to publicly attack Dr. Gibbons last year when his first gabapentin article was published. On December 8, 2009, Plaintiffs' counsel, Mr. London, went so far as to post a comment on the website of the *Los Angeles Times*, after a *Times* blog posted a short entry on Dr. Gibbons' anti-epileptic and suicide article published in *Archives of General Psychiatry*. [*See* 2490-3 at 1-4.] The letter, chock-full of misrepresentations and insinuations, stated:

> I am personally familiar with this study and recommend in the strongest terms that anyone who reads it dig deeper. The FDA study was based on random

---

[2] Plaintiffs' counsel's complaint about any delay in producing this material is much ado about nothing, as Dr. Greenland specifically addressed certain of the peer review comments in the Supplemental Expert Report dated March 19, 2010.

3

controlled trials. Dr. Gibbons' et al study was based on a post hoc study of parsed claims records. Dr. Gibbons was paid vastly more by Pfizer lawyers as an expert witness in connection with his study of the FDA analysis and in connection with his statistical analysis of Neurontin, one of the drugs, which was marketed off-label to doctors for purposes not approved by the FDA, than was contributed to by the NIH grant. The Gibbons study does not account for changes in the patients during the period of the study that are commonly associated with other drugs (which Dr. Gibbons did not include), with treatment, or with the passage of time. It does not actually study whether the patients took the drugs, the doses, or the duration. One of the legal problems Neurontin had in 2004 when the Department of Justice brought charges for Warner-Lambert's improper marketing of Neurontin was that the drug had been promoted in the medical literature without reliable science.

[*Id.* at 3-4.]

The issues with Mr. London's public comments are legion. Although his letter to the editor suggests he merely hoped to sanitize the public record with sunlight, it only confuses the issues and casts further aspersions – this time in public view – upon Dr. Gibbons. And by raising issues pertaining to compensation it could only hope to embarrass Dr. Gibbons publicly and to damage his professional reputation. In doing so, Mr. London's comment aligns neatly with Plaintiffs' tactics throughout this litigation. Part and parcel with these misrepresentations, Mr. London implies that Dr. Gibbons' (peer-reviewed) analysis is deceptive and biased when, in fact, the limitations of the study and Dr. Gibbons' compensation from Pfizer were disclosed in both his blog entry and the underlying article itself.

It is difficult to understand why Mr. London felt the need to continue Plaintiffs' personal attacks on Dr. Gibbons in the public sphere, especially regarding an article that had been fully peer-reviewed (by individuals far more expert than Mr. London, as his comment reveals) and published by a highly respected journal. In the end, such tactics represent an unfortunate escalation of this litigation. These public attacks provide more than ample reason to deny Plaintiffs' request for further production. Having once attacked Dr. Gibbons' work in the public sphere, Plaintiffs cannot be trusted to refrain from doing so again. While Mr. London's commentary on Dr. Gibbons' study *after* his antiepileptic study was published was harmful enough, the damage done by a similar attack while the gabapentin paper ***is in peer review*** would

4

likely prove fatal to Dr. Gibbons' efforts to publish the paper. Pfizer recognizes this is of little concern to Plaintiffs, but the peer-review process only functions if it is protected and confidential. This Court is clearly aware of the importance of this confidentiality to the process, as it has provided that the peer-reviewer comments could be filed under seal subject to the protective order in place. (*See, e.g.*, Ex. A, February 17, 2010, Tr. at 29:16-17.) Plaintiffs' repeated attempts to pierce the shield of confidentiality for their own litigation gains are not sufficient reason to put Dr. Gibbons' academic work at risk.[3]

## II. Plaintiffs Continue to Misrepresent the Facts and the Record Regarding Discovery in This Litigation

Plaintiffs' misrepresentations of the facts, the record, and the expert evidence do not end with their attacks on Dr. Gibbons, however. Contrary to Plaintiffs' repeated assertions, Pfizer has complied with – and in fact exceeded – all of its discovery obligations regarding Dr. Gibbons. Although Plaintiffs continue to allege that Pfizer has been dilatory or evasive in responding (or not responding) to their discovery requests, the record reveals that this is clearly not the case.

### A. Pfizer Was Not Obligated to Produce the Unpublished Gabapentin Manuscript Or Any Attendant Disclosures or Transmittals

For instance, although Pfizer was obligated to disclose only the data files that Dr. Gibbons generated in running his final sensitivity analysis, Pfizer went above and beyond this obligation, asking Dr. Gibbons to voluntarily provide descriptions of the data files. (Ex. D, February 27, 2010 Email from Steven Napolitano to Keith Altman and Kenneth Fromson and attached Data File Descriptions.) That information was promptly provided to Mr. Altman (so that Dr. Greenland could then presumably attack Dr. Gibbons' work).

Similarly, although Plaintiffs claim that, based "on the exchange in Court," they believed Pfizer would "provide a copy of the paper as submitted to the journals along with the disclosures

---

[3] That Plaintiffs' interest in peeking inside the peer-review process is personal, and not scientific, is acknowledged in their memorandum, where they admit they "have raised concerns over the veracity of Dr. Gibbons' disclosures to journals in the past." [2731 at 6] ("Pl. Mem.") By their motion, Plaintiffs request permission to fish for additional ammunition for these baseless attacks.

Dr. Gibbons provided to the journals to which he submitted the manuscript," the record provides no basis for such belief. [2731 at 4] ("Pl. Mem.")  In fact, Plaintiffs quote the entire discussion on the subject of disclosure obligations from the February 17, 2010 hearing, and the *only* items specified are the peer-review criticisms.  [*Id.* at 2-3.]  Plaintiffs have not offered any support from the record for their continued assertions that they should "get to see the paper as was submitted," or their "expect[ations] that [they] would be provided the disclosures and transmittals that went with the submission."  (Ex. B, March 17, 2010 Email from Keith Altman to Steven Napolitano.)  In fact, in explaining Pfizer's position to Plaintiffs' counsel, Pfizer counsel specifically stated that "[i]f the court addressed this at the last hearing, or previously, and I somehow missed it, please let me know."  (Ex. C, March 18, 2010 Email from Steven Napolitano to Keith Altman.)  Plaintiffs did not identify at that time, and have not identified since, any such reference.

> **B.    Pfizer Met Its Obligations to Produce Dr. Gibbons' Peer-Review Criticism of the Gabapentin Manuscript**

As Plaintiffs are well aware, the record and the evidence also sharply contradict their assertions that Pfizer has failed to meet its obligation to produce "criticism" from the peer-review of Dr. Gibbons' article.  As noted above, both Plaintiffs' brief and the transcript from the February 17, 2010 hearing make clear that Pfizer was "obligat[ed]" only to "produce all criticisms."  [*See* Ex. A, February 17, 2010, Tr. at 29:4-5; Pl. Mem. at 2.]  Plaintiffs' desire to characterize Pfizer's actions as dilatory force them to misconstrue and misrepresent the publication record of Dr. Gibbons' gabapentin paper.

First, Plaintiffs allege that "Mr. Barnes' comments appeared to imply that the gabapentin paper was in the process of being accepted for publication – which, at that time – was simply untrue." [Pl. Mem. at 4.]  Plaintiffs offer no support for this allegation.  This is not surprising, because Dr. Gibbons' paper was, and remains, in the midst of peer-review at a prominent journal. Second, Plaintiffs' claim that "[c]ontrary to the representations by defense counsel Mr. Barnes at the February 2010 hearing . . . *the journals sent Dr. Gibbons criticisms of the paper*" is equally

6

incorrect. [*Id.* at 3.] (emphasis added).Thus, the record makes clear that Dr. Gibbons' manuscript did not receive *criticism* from any journal he submitted to, let alone from multiple journals.

In sum, Pfizer has been fully compliant with this Court's orders and responsive to Plaintiffs' requests. Unfortunately, when Dr. Gibbons is involved, enough is never enough, and whatever good faith efforts Pfizer's counsel makes to avoid yet another baseless discovery

---

[4] Copies of the peer-review comments were separately provided to the Court, unredacted, pursuant to the Court's request at the February 17, 2010 hearing. [2691.] The documents were likewise provided to Plaintiffs on March 17, 2010. (*See* Ex. B, March 17, 2010 Email from Steven Napolitano to Keith Altman.)

[5]

7

motion are in vain. Pfizer has repeatedly gone beyond its obligations, providing evidence and information that it was not ordered to disclose. Plaintiffs' requests for this additional discovery should be denied.

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests this Court deny Plaintiffs' motion to compel in all respects.

Dated: April 5, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ Mark S. Cheffo
      Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Email: Mark.Cheffo@skadden.com

ROPES & GRAY LLP

By:   /s/ Ana M. Francisco
      Ana M. Francisco

One International Place
Boston, MA 02110
Tel: (617) 951-7000
Email: ana.francisco@ropesgray.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

---

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on April 5, 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo