# EXHIBIT A

Page 1

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS
 2
 3
 4     IN RE:                                  )
                                               ) CA No. 04-10981-PBS
 5     NEURONTIN MARKETING, SALES PRACTICES,) Pages 1 - 63
       AND PRODUCTS LIABILITY LITIGATION       )
 6
 7
 8
 9                         MOTION HEARING
10               BEFORE THE HONORABLE PATTI B. SARIS
                     UNITED STATES DISTRICT JUDGE
11
12
13
14
                                   United States District Court
15                                 1 Courthouse Way, Courtroom 19
                                   Boston, Massachusetts
16                                 February 17, 2010, 2:08 p.m.
17
18
19
20
21
22
                             LEE A. MARZILLI
23                        OFFICIAL COURT REPORTER
                         United States District Court
24                       1 Courthouse Way, Room 7200
                             Boston, MA  02210
25                            (617)345-6787
```

Page 2

APPEARANCES:

FOR THE PLAINTIFFS:

    JACK W. LONDON, ESQ., Jack W. London & Associates, P.C.,
3701 Bee Cafe Road, Suite 200, Austin, Texas, 78746.
    KEITH L. ALTMAN, ESQ., Finkelstein & Partners,
1279 Route 300, Newburgh, New York, 12551.

FOR THE DEFENDANTS:
    MARK S. CHEFFO, ESQ. and STEVEN F. NAPOLITANO, ESQ.,
Skadden, Arps, Slate, Meagher & Flom, LLP, Four Times Square,
New York, New York, 10036.
    RICHARD M. BARNES, ESQ. and DEREK M. STIKELEATHER, ESQ.,
Goodell, DeVries, Leech & Dann, LLP, One South Street,
20th Floor, Baltimore, Maryland, 21202.

---

Page 3

PROCEEDINGS

    THE CLERK: In Re: Neurontin Marketing, Sales Practices, and Products Liability Litigation, Civil Action No. 04-10981, will now be heard before this Court. Will counsel please identify themselves for the record.

    MR. LONDON: Plaintiffs' Products Liability Steering Committee, I'm Jack London.

    MR. ALTMAN: Keith Altman on behalf of the plaintiffs.

    MR. BARNES: Rick Barnes on behalf of Pfizer, your Honor.

    MR. NAPOLITANO: Steven Napolitano on behalf of Pfizer.

    MR. CHEFFO: Mark Cheffo, your Honor.

    MR. STIKELEATHER: Derek Stikeleather on behalf of Pfizer.

    THE COURT: You're up for the week?

    MR. CHEFFO: I am, your Honor, maybe longer than that.

    THE COURT: Maybe the month?

    We had had an initial hearing on Dr. Gibbons a long time ago, and I essentially never ruled because the case resolved a different way. Part of my concern, why I chopped things off, was because it was too close up against the last trial. There's now been a supplementation and a preliminary dispute about whether or not I should permit the supplementation. And while I wouldn't have for the last trial

---

Page 4

because it was too late, the next trial isn't till sometime in April or May, depending on -- isn't it? When's Shearer?

    MR. LONDON: I may be mistaken. I think it's the last day of March, the 29th of March, something like that. We're about five weeks out.

    MR. CHEFFO: March 29, your Honor.

    THE COURT: As a practical matter, it's not clear when we're going to reach it because I am, as far as I know, spending a month on Neurontin, the sales and marketing side. And right now that's still on, right?

    MR. CHEFFO: It is, your Honor.

    THE COURT: Yes. And so following on that, I have a huge criminal case, or, if that resolves, the Mylan case, which is an AWP case. So my guess is, it's more likely to be, unless everything and I'm the luckiest woman in America, like everything goes away, it could possibly go. It will go sometime this spring, but just for your scheduling purposes, we're just going to need to get closer to it. He will have just -- are you trying both cases?

    MR. CHEFFO: There's going to be overlap with people, folks, I mean, but obviously we're prepared for that.

    THE COURT: So in a way he'll be the most current as to how the other case goes. We know for a fact, what's it, 28 hours a side? So we know almost to the hour how long the sales and marketing case will go. But, in any event, I'm inclined,

---

Page 5

because this is a new case and farther off, I'm going to allow the supplementation.

    So I think we should get into the merits. So I don't know that we need a whole lot of debate about that. It is true I ruled all those things. I was enormously frustrated that it kept coming out, and I would have excluded it because it's right up against that last trial. But now we've had time in between, so I don't want to spend a lot of time skirmishing over whether I'll allow the supplementation.

    So you filed that on January 10, right, or something along that line?

    MR. CHEFFO: I think that's right.

    THE COURT: And I didn't even look to see whether or not you had filed anything in response to that on the merits.

    MR. LONDON: I believe the sequence is that they filed the supplementation in early January.

    THE COURT: Right.

    MR. LONDON: And the plaintiffs filed a motion to strike the supplementation. The defendants filed a reply to that motion, and then the Court set this hearing. I believe that's the sequence.

    THE COURT: I'm inclined to deny the motion to strike the supplementation, but then what of course I'm going to allow you to do is respond to it on the merits, if you choose to, but I'm not reopening discovery. I'm not reopening depositions.

Page 26

1  MR. BARNES: Yes, ma'am.
2  THE COURT: The hearings were endless. We spent a
3  huge amount of time with Dr. Gibbons, a huge amount of time
4  with Dr. Greenland, I remember at one point late into the
5  afternoon. I never got briefing afterwards. I took it all
6  under advisement, and the case resolved. It was right up
7  against the trial, if I remember, and I don't remember. You've
8  got to reteach me what is left in the case. That's why I held
9  this hearing today. I'm not expecting to see them again. I
10 just need a full-blown argument on what's left.
11 MR. BARNES: What we left before your Honor was the
12 criticism that Dr. Gibbons addressed in the supplemental
13 report, which was the months on drug, the months off drug
14 following the first prescription of gabapentin, and the
15 gabapentin study only. That was the issue that your Honor was
16 concerned about. It's the issue that is addressed in this
17 report completely.
18 THE COURT: But here is my issue, which is, assume for
19 a minute the data bears out, you know, once they get the data,
20 they are pressing two or three other criticisms, and we hadn't
21 ever had oral argument after the evidentiary hearings because
22 the case ultimately resolved and we were all exhausted. I
23 mean, we didn't really -- I didn't -- I need somebody to
24 crisply put in place what are the remaining issues that I need
25 to address. That's why I'm holding this. It's a year later.

Page 27

1  MR. BARNES: Let me try, okay?
2  THE COURT: Okay.
3  MR. BARNES: I think I can do it as best -- I have
4  studied the transcript, and let me show you what Dr. Greenland
5  himself said in response to your Honor's questions on
6  methodology. And I have the transcript for you if you want.
7  THE COURT: I don't even care what he says at this
8  point. I just want to know what the issues are, and then I
9  want to hear what each side had to say about them. What do you
10 perceive as the remaining issues when the case -- it didn't
11 even settle -- was disposed of?
12 MR. BARNES: The only issue that we had left before
13 your Honor was whether Dr. Gibbons accounted fully for the
14 exposure to the drug after the index date. In other words, you
15 were concerned, as was Dr. Greenland, that Dr. Gibbons had
16 biased the study in favor of the drug by counting all patients
17 as being on drug for twelve months. Remember those
18 discussions? That was the only issue left, and that's what he
19 set out to address.
20 Dr. Gibbons assumed every suicide attempt after the
21 index date was attributed to the drug, whether the patient was
22 on or off the drug. He said to your Honor: That's a
23 conservative assumption, and it's biased against the drug and
24 risk. Dr. Greenland, on the other hand, came in and said:
25 Well, that may be so, but you're not taking patients out of the

Page 28

1  denominator at the same time in the months they're off drug.
2  Dr. Gibbons said: When I did that in the bipolar paper, which
3  has been peer reviewed, method and data, it showed that my
4  assumption was correct that it actually was a conservative
5  assumption, and if you account for it, you will show month by
6  month the drug looks far better if you do the person-time
7  logistic regression analysis than if you don't. So he had
8  proved his point in spades.
9  But to address the issue from Dr. Greenland, he went
10 and did the same exact analysis that was done in the bipolar
11 paper in the gabapentin paper, and indeed what it showed was
12 that Dr. Gibbons in his original primary analysis had been very
13 conservative; and when you account for time on and off drug,
14 the drug actually looks far better in terms of the rate of
15 suicide attempts goes down on drug if you address
16 Dr. Greenland's criticism.
17 THE COURT: So the bipolar was accepted into a
18 peer-reviewed journal?
19 MR. BARNES: It was fully published and it's
20 available.
21 THE COURT: What about the gabapentin?
22 MR. BARNES: It is pending, pending peer review.
23 THE COURT: And were there criticisms like the last
24 one?
25 MR. LONDON: It's in peer review.

Page 29

1  THE COURT: No, but you'll produce all criticisms?
2  MR. BARNES: As far as I am concerned, there are no
3  criticisms in the peer review, but --
4  THE COURT: You have an obligation to have him produce
5  all criticisms. That didn't happen last time till the last
6  minute.
7  MR. BARNES: We will produce it. May we produce this
8  in a way that's under seal so that it doesn't go into a public
9  domain to protect the peer-review process?
10 MR. CHEFFO: Your Honor, if I could, I mean, here's
11 the issue. We have no problem producing it. The only issue,
12 as you know from the literature, we don't want to do anything
13 to interfere with a journal that's -- sometimes the fact that
14 they even know that it's out there, it's been submitted, if we
15 do that, they may --
16 THE COURT: I'm happy to do that under a protective
17 order.
18 MR. CHEFFO: Thank you.
19 MR. BARNES: So that's pending review, and so to be
20 quite -- I prepared for this hearing looking very carefully at
21 your Honor's concerns and Dr. Greenland's concerns, and it
22 boiled down not to the -- these are new and they are cast
23 differently. And so what I am saying to your Honor, we left
24 here with one concern your Honor had. You stressed it three
25 times.