1
             UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF MASSACHUSETTS
2

                         MDL Docket No. 1629
3
                         Master File No. 04-10981

4
* * * * * * * * * * * * * * * * * * * *
                                *
5
IN RE: NEURONTIN MARKETING         *
      SALES PRACTICES AND         *
6
      PRODUCTS LIABILITY LITIGATION   *
------------------------------------------*
7
                                *
THIS DOCUMENT RELATES TO:        *
8
                                *
Shearer v. Pfizer Inc,  1:07-cv-11428-WGY *
9
                                *
* * * * * * * * * * * * * * * * * * * *

10

11
           **TRANSCRIPT OF JURY SELECTION**
               (Volume 1)
12
        BEFORE:  The Honorable Marianne B. Bowler,
13
               United States Magistrate Judge, and a Jury

14
APPEARANCES:
15

          FINKELSTEIN & PARTNERS, LLP (By Ronald
16
    Rosenkranz, Esq., Kenneth B. Fromson, and Keith L.
    Altman, Esq.), 1279 Route 300, P.O. Box 1111,
17
    Newburgh, New York 12551
         - and -
18
         JACK W. LONDON and ASSOCIATES, P.C. (By
    Jack W. London, Esq.), 3701 Bee Cave Road, Suite
19
    200, Austin, Texas 78746, on behalf of the
    Plaintiffs

20

21

22

23
                         1 Courthouse Way
24
                         Boston, Massachusetts
25
                         March 29, 2010

```
1                    A P P E A R A N C E S (Cont'd)

2

3           BOIES, SCHILLER & FLEXNER LLP (By William
     S. Ohlemeyer, Esq.), 333 Main Street, Armonk, New
4    York 10504
                - and -
5           GOODELL, DeVRIES, LEECH & DANN, LLP (By
     Bonnie J. Beavan, Esq.), One South Street, 20th
6    Floor, Baltimore, Maryland 21202
                - and -
7           `SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
     (By Catherine B. Stevens, Esq.), Four Times
8    Square, New York, New York 10036, on behalf of the
     Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              **THE CLERK:**  All rise.

2              **THE COURT:**  Please be seated.  Mr. Duffy, call the

3       case.

4              **THE CLERK:**  Yes, your Honor.

5              The United States District Court for the District

6       of Massachusetts is now in session, the Honorable Marianne

7       Bowler presiding.

8              Today is March 29, 2010.  The case of Shearer v.

9       Pfizer, Civil Action No. 07-11428, will now be heard.

10             If counsel would please identify themselves for the

11      record.

12             **MR. ROSENKRANZ:**  Ron Rosenkranz, Finkelstein &

13      Partners, for the plaintiff, Shearer.

14             **MR. LONDON:**  Jack London for the plaintiff,

15      Shearer.

16             **MR. FROMSON:**  Good morning, your Honor.  Kenneth

17      Fromson, Finkelstein & Partners.

18             **THE COURT:**  Thank you.  All right.  So Mark Lanier

19      is not here?

20             **MR. FROMSON:**  That is correct, your Honor.

21             **MR. ROSENKRANZ:**  That is correct.

22             **THE COURT:**  So, your name again?

23             **MR. ROSENKRANZ:**  Ron Rosenkranz, R O S E N K R A N

24      Z.

25             **THE COURT:**  And your firm?

1            **MR. ROSENKRANZ:**  Finkelstein & Partners.

2            **THE COURT:**  All right.  You're with Mr. Fromson

3    then?

4            **MR. ROSENKRANZ:**  I'm sorry?

5            **THE COURT:**  You're with Mr. Fromson?

6            **MR. ROSENKRANZ:**  Yes, I am, your Honor.

7            **THE COURT:**  I just want to have your names

8    correctly when I introduce you to the pool.

9            **MR. OHLEMEYER:**  Good morning, your Honor.  Bill

10   Ohlemeyer from Boies, Schiller & Flexner, for the

11   defendants.

12           **MS. BEAVAN:**  Good morning, your Honor.  Bonnie

13   Beavan from Goodell, DeVries, Leech & Dann, on behalf of the

14   Pfizer defendants.

15           **THE COURT:**  All right.  All right.  Counsel, I have

16   reviewed all of the questions submitted by both sides and I

17   have honed them down to some degree, and I'm going to go

18   through the questions that I have boiled them down to and

19   then I'll hear your comments.

20           My approach to the questions to the pool is to make

21   them very general and very broad and then if there is a

22   positive response to call that juror forward.  I think it's

23   better to use broad questions rather than to use very narrow

24   ones.  As I think you discussed with Judge Young, I will do

25   the questioning at the side bar but I will take my guidance

1    from you.

2          The first question:  Have you heard or read

3    anything about this case or any matter that you think might

4    be related to this case?

5          Now, in my mind that covers the verdict last week.

6    Rather than drawing direct attention to it, I think that

7    that is a better way of handling it.

8          Question Number 2:  Are you or anyone close to you,

9    A, personally acquainted with counsel, B, related to the

10   parties or counsel, had or have any business dealings or

11   financial interests, including stock or other financial

12   instruments, with the parties or counsel, D, formerly or

13   presently employed by the parties or counsel for the

14   parties, E, had any other similar relationship or business

15   connection with any party or counsel for the case?

16         I will ask you to list all of the witnesses or

17   prospective witnesses before we go to the questioning.

18         Question Number 3:  Counsel listed the prospective

19   witnesses in the case a few minutes ago.  Does any member of

20   the panel know any of the prospective witnesses?

21         Question Number 4:  Has any member of the panel

22   ever served as a juror in a civil or criminal case or as a

23   member of the grand jury in either the state or federal

24   courts?  This usually elicits a number of responses.

25         Number 5:  Have you or anyone in your immediate

1    family or close to you ever participated in a lawsuit as a

2    party, a witness, or in any other capacity?

3            Number 6:  Have you or anyone close to you ever

4    taken the drug Neurontin which is also known by its generic

5    name gabapentin?

6            Number 7:  You may hear testimony regarding the

7    off-label use of a prescription drug which means use for a

8    purpose not approved by the United States Food and Drug

9    Administration.  Do you have any opinion that might affect

10    your ability to decide this case fairly and impartially with

11    respect to off-label use?

12            During the course of the trial you will hear

13    testimony about depression and suicide.  Would that make it

14    difficult for you to serve as a juror?

15            My preference is a very broad question on that

16    subject matter, not to pinpoint anyone and make it awkward

17    for them to stand up.

18            Number 10:  If you are selected to sit on this case

19    will you be able to render a verdict solely on the evidence

20    presented at trial and in the context of the law as the

21    Court will give it to you in its instructions disregarding

22    any other ideas, notions or beliefs about the law that you

23    may have encountered?

24            Final question:  Can you think of any other matter

25    which you should call to the Court's attention which may

1    have any bearing on your qualifications to sit as a juror on

2    this particular case or which may prevent you from rendering

3    a fair and impartial verdict with these particular parties

4    based solely on the evidence and the instructions as given

5    to you by the Court?

6           I will tell them that the case is scheduled to last

7    approximately four weeks, sit from 9:00 to 1:00, that they

8    will get a midmorning break, that the trial will start on

9    Wednesday, the 31st, and that there will be no trial on

10   April 14th, 16th and the 19th, and that the case will go to

11   the jury on April 20th.

12          There will be six challenges per side.

13          All right, I'll hear you.

14          **MR. ROSENKRANZ:**  Your Honor, I think we just wanted

15   some direction with respect to how the panel is going to be

16   selected.  It's our understanding that we would make all of

17   our challenges before defense would go and then the next

18   round defendants would make all of their challenges --

19          **THE COURT:**  That's right.

20          **MR. ROSENKRANZ:**  -- before we would go.

21          **THE COURT:**  And I will start with the plaintiff,

22   defendant, plaintiff, defendant in the first round and in

23   the next round will be defendant, plaintiff, defendant,

24   plaintiff.

25          **MR. ROSENKRANZ:**  Okay.

1          **THE COURT:**  Six challenges per side.

2          It is the procedure of my clerk to randomize the

3     pool once more before he does the selecting of the first

4     twelve in the box.

5          **MR. ROSENKRANZ:**  That was actually the other

6     question that we had.  I believe all counsel outside before

7     you came in agreed that we would prefer just having the next

8     number up as opposed to randomizing.  Obviously, we don't

9     want to intrude on you or step on your toes but if --

10         **THE COURT:**  That's the way we do it and that's the

11    way we will do it.

12         **MR. ROSENKRANZ:**  Okay.

13         **MR. OHLEMEYER:**  Point of clarification.  You said

14    plaintiff, defendant, defendant, plaintiff.

15         **THE COURT:**  The first round will be plaintiff,

16    defendant, plaintiff, defendant; then, once we fill the box

17    again, then it will be defendant, plaintiff, defendant,

18    plaintiff, to reverse it.

19         **MR. OHLEMEYER:**  All right.  But it's not strike,

20    strike, strike, strike, strike.  It's make your strikes,

21    make your strikes.

22         **THE COURT:**  Right.

23         **MR. OHLEMEYER:**  All right.

24         **MR. ROSENKRANZ:**  I'm sorry, your Honor, I'm not

25    clear.

1              MR. OHLEMEYER:  Here's what I think happens.  We've

2    got --

3              THE COURT:  We fill the box.

4              MR. OHLEMEYER:  -- twelve people in the box.  Mr.

5    Rosenkranz makes four strikes.  I make one strike.  Now they

6    put five new people in the box, and from that five I now

7    make --

8              THE COURT:  You start.

9              MR. OHLEMEYER:  I start on those five.

10             THE COURT:  Exactly.

11             MR. OHLEMEYER:  Right.

12             MR. ROSENKRANZ:  Thank you.

13             THE COURT:  All right.  Any other matters?  Content

14   with the questions?  Plaintiff?

15             MR. ROSENKRANZ:  No.

16             MR. OHLEMEYER:  I'm sorry, one more question, your

17   Honor.  On hardship challenges for time or for -- how will

18   you handle that?

19             THE COURT:  That's my prerogative.

20             MR. OHLEMEYER:  I know, I understand, but I just --

21             THE COURT:  I will listen.

22             MR. OHLEMEYER:  Okay.

23             THE COURT:  And if I determine that the person

24   should be excused for cause, I'll grant it.

25             MR. OHLEMEYER:  All right.

```
 1              THE  COURT:   Are  defendants  content  with  the

 2     questions?

 3              MR.  OHLEMEYER:   We  are.   Thank  you,  your  Honor.

 4              THE  COURT:   All  right.   I'm  going  to  take  a  brief

 5     break,  I  have  a  mediation  going  upstairs,  and  as  soon  as  the

 6     jurors  come  down  we'll  begin.   All  right?   It  should  be

 7     about  10:30.

 8              MR.  ROSENKRANZ:   Thank  you,  your  Honor.

 9              THE  COURT:   You're  welcome.

10              THE  CLERK:   All  rise.

11              THE  COURT:   One  other  matter.   I  have  a  summary  of

12     the  case.   Please  be  seated.   I  have  a  brief  summary  of  the

13     case  that  I'm  going  to  read  to  the  panel  so  that  they  will

14     know  what  this  is  about.   And  I  will  hear  your  comments  on

15     that.

16              This  action  involves  the  February  2002  death  by

17     suicide  of  Hartley  Shearer,  a  Massachusetts  resident,  and  is

18     brought  by  the  plaintiff,  Linda  Shearer,  executrix  of  Mr.

19     Shearer's  estate  and  his  wife  against  the  defendants  Pfizer

20     Incorporated,  Parke-Davis  and  Warner-Lambert  Company,  LLC,

21     the  successor  to  Warner-Lambert  Company.   The  plaintiff

22     alleges  that  the  defendants  promoted  the  off-label  use  of

23     the  drug  Neurontin  to  treat  a  number  of  conditions,

24     including  paralysis,  without  disclosing  or  warning  of  the

25     drug's  alleged  side-effects  of  increased  risks  of  depression
```

1    and suicide.  Prior to his death, Mr. Shearer received

2    prescriptions for Neurontin for the off-label treatment of

3    his paralysis.  The plaintiff brings claims against the

4    defendants for negligence, breach of warranty, products

5    liability, fraud, and what the law calls a survival claim to

6    recover damages for Mr. Shearer's mental anguish and pain

7    prior to his death.  The defendants in turn deny that they

8    were negligent or otherwise responsible for Mr. Shearer's

9    death.

10             **MR. ROSENKRANZ:**  Your Honor, just --

11             **MR. LONDON:**  Can we negotiate the word paralysis?

12   He was really prescribed Neurontin for neuropathic pain or

13   pain.

14             **THE COURT:**  All right.  Neuropathic pain.

15             **MR. LONDON:**  He was a hemiplegic or paralytic, but

16   that was not really the reason he was given Neurontin.

17             **MR. OHLEMEYER:**  I think at this point it's easier

18   to just say for pain.  That's fine, Judge.

19             **MR. ROSENKRANZ:**  For pain.

20             **THE COURT:**  Easiest for the jurors.

21             All right.  All right.  I'll see you at 10:30.

22             (Recess.)

23             **THE COURT:**  Good morning.

24             **THE JURY VENIRE:**  Good morning.

25             **THE COURT:**  Please be seated.

1          (Whereupon the Court and the Clerk conferred.)

2          **THE COURT:**  Are you ready to call the case?

3          **THE CLERK:**  Yes, your Honor.

4          United States District Court for the District of

5    Massachusetts is now in session, the Honorable Marianne

6    Bowler presiding.

7          Today is March 29th, 2010.  The case of Shearer v.

8    Pfizer, Civil Action No. 07-11428, will now be heard.

9          Would counsel please identify themselves for the

10   record.

11         **MR. ROSENKRANZ:**  Ron Rosenkranz, Finkelstein &

12   Partners, for the plaintiff, Shearer.

13         **MR. FROMSON:**  Good morning.  Ken Fromson,

14   Finkelstein & Partners, for the plaintiff, Shearer.

15         **MR. LONDON:**  Good morning.  Jack London, Austin,

16   Texas, for Mrs. Shearer.

17         **MR. OHLEMEYER:**  Good morning, your Honor.  Bill

18   Ohlemeyer from Boies, Schiller & Flexner for the defendant.

19         **MS. BEAVAN:**  Good morning, your Honor.  Bonnie

20   Beavan, Goodell, DeVries, Leech & Dann, on behalf of the

21   Pfizer defendants.

22         **THE COURT:**  Thank you very much.

23         Ladies and gentlemen, I'm Magistrate Judge Bowler

24   and I will be presiding over the jury impanelment of this

25   civil case today.  Judge William Young will preside over the

```
 1    trial.  First, I'm going to tell you a little bit about the
 2    case that comes before the Court today.  I ask you to listen
 3    carefully.  After the statement is read, I'll be asking you
 4    some questions so I ask for your careful attention.
 5              Just give me one moment.
 6              This action involves the February 2002 death by
 7    suicide of Hartley Shearer, a Massachusetts resident, and is
 8    brought by the plaintiff, Linda Shearer, executrix of
 9    Mr. Shearer's estate and his wife against the defendants,
10    Pfizer Incorporated, Parke-Davis, and Warner-Lambert
11    Company, LLC, the successor to Warner-Lambert Company.
12              The plaintiff alleges that the defendants promoted
13    the off-label use of the drug Neurontin to treat a number of
14    conditions, including pain, without disclosing or warning of
15    the drug's alleged side-effects or increased risks of
16    depression and suicide.  Prior to his death, Mr. Shearer
17    received prescriptions for Neurontin for the off-label
18    treatment of his pain.  The plaintiff brings claims against
19    the defendants for negligence, breach of warranty, products
20    liability, fraud, and what the law calls a survival claim to
21    recover the damages for Mr. Shearer's mental anguish and
22    pain prior to his death.  The defendants in turn deny that
23    they were negligent or otherwise responsible for Mr.
24    Shearer's death.
25              You've heard the lawyers introduce themselves here
```

```
1    this morning.  There are some other lawyers who have been

2    involved in the case and I'm going to read you a list of

3    their names at this time.

4            Keith Altman, Finkelstein & Partners.  Richard

5    Barnes, Goodell, DeVries & Leech.  Mark Cheffo, Skadden

6    Arps.  Andrew Finkelstein, Finkelstein & Partners.  And

7    Kenneth Fromson, who is present here in court this morning.

8            Daniel Holloway, Boies, Schiller & Flexner.

9            Mark Lanier, the Lanier Law Firm.

10           Harlan A. Levy, Boies Schiller.  Lori Schultz.

11   Catherine Stevens, Skadden Arps.  Jim Hooper of Wheeler

12   Trigg.  And I believe all of the other counsel have

13   introduced themselves to you.

14           I'm going to ask counsel now to read to you a list

15   of the prospective individuals who may be called as

16   witnesses in this case.

17           Plaintiff.

18           MR. ROSENKRANZ:  Yes, your Honor.  This actually is

19   a joint, a joint list of witnesses --

20           THE COURT:  Fine.

21           MR. ROSENKRANZ:  -- that we had compiled.

22           Vito Acconci.  Larry Alphs.  Anne Hudson Angevine,

23   or Angevine.  Janet Arrowsmith.  Deborah August.  Professor

24   Shawn Bird.  Cheryl Blume.  Edward M. Boyer.  Lucy Castro.

25   Lisa Catapano-Friedman.  William Chambers.  Paul Consolini.
```

```
1   Stephen Cristo.  Paresh Desai.  Peggy Diggs.  Suzanne Doft.

2   Helen Duda-Racki.  Keith Edwards.  Ed Epping.  Michael

3   Fagan.  Bruce Fleischmann.  David Franklin.  Robert Gibbons.

4   Robert Glanzman.  Michael Gleason.  Joseph Glenmullen.

5   Henry Grabowski.  Thomas Green.  Sander Greenland.  Elaine

6   Hantman.  Manfred Hauben.  Douglas Herr.  Michael Hill.

7   Wilfred Hynes.  Douglas Jacobs.  Charles King the Third.

8   Lloyd Knapp.  John Knoop.  Stefan Kruskewski.  Jim Mahon.

9   John Marino.  Cynthia McCormick.  John Moulton.  Britton

10  O'Neil.  Atul Pende.  Judy and Larry Rabb.  Officer Rivers.

11  Ilyas Rona.  Robert Roth.  Anthony Rothschild.  Alexander

12  Ruggieri.  Druscilla Scott.  Ivor Shearer.  Linda Shearer.

13  Officer Skorupski.  Daniel Sullivan.  Charles P. Taylor.

14  Martin Teicher.  Paul Thompson.  Leslie Tive.  Michael

15  Tremble.  Janet Turner.  John Valigorsky.  Sheila Y. Smith.

16  Sean Wheeler.  Maria Yialamas.  And Carol Zullo.

17          THE COURT:  Thank you.

18          Now I'm going to begin to ask you a series of

19  questions.  If your answer is affirmative to any question,

20  I'll ask you to raise your hand and then the clerk will

21  direct you where to line up so that you can explain to me

22  and to counsel the reason for your affirmative response.

23          However, before we do that, I will ask the clerk to

24  administer the jury oath.

25          THE CLERK:  Yes, your Honor.
```

1        Prospective jurors, please stand and raise your
2    right hand.
3        Do each and every one of you solemnly swear that
4    you will make true answers to such questions that shall be
5    put to you by the Court in the matter now pending before
6    you, so help you God?
7        **THE JURY VENIRE:**  Yes.
8        **THE CLERK:**  Thank you.
9      **THE COURT:**  The first question:  Have you ever
10   heard or read anything about this case or any matter which
11   you think might be related to this case?
12       Let the record reflect no affirmative responses.
13       Are you or anyone close to you personally
14   acquainted with counsel, that is, the lawyers in this case,
15   related to the parties or counsel, had or have any business
16   dealings or financial interests, including stock or other
17   financial instruments, with the parties or counsel in this
18   case?
19       Presently or formerly employed by counsel for the
20   parties or the parties?
21       Or had any other similar relationship or business
22   connection with any party or counsel in this case?
23      **A JUROR:**  Your Honor, what about 401(k)'s?
24      **THE COURT:**  Yes, that's what I'm getting at.  So
25   raise your hand if that's your response.

1          All right.  I'll ask counsel to come to the side

2    bar.

3          **THE CLERK:**  Your Honor, Juror No. 16.

4          **THE COURT:**  Thank you.

5    SIDEBAR CONFERENCE, AS FOLLOWS:

6                INQUIRY BY THE COURT OF THE JUROR

7    **Q**   Good morning, Mr. Newman.

8    A   Good morning.

9    **Q**   Can you tell us why you responded affirmatively?

10   A   In my 401(k) there's a possibility that in any mutual

11   fund that might be held, that Pfizer might be a part of it.

12   **Q**   And would that possibly make it difficult for you to be

13   fair and impartial in this case?

14   A   Would it be difficult for me?  No.

15   **Q**   Are you sure?

16   A   Yes.

17   **Q**   You can be fair and impartial?

18   A   Yes.

19   **Q**   All right, thank you.

20          **THE CLERK:**  (Out loud)  Your Honor, Juror No. 18.

21                INQUIRY BY THE COURT OF THE JUROR

22   **Q**   Good morning, Mr. Feiner.  You responded affirmatively.

23   A   Yes.

24   **Q**   Why?

25   A   Oh.  The 401(k) that I have with my company is invested

1  in the SP500.  So it's one of the stocks in that portfolio.

2  **Q**  And would that in any way make it difficult for you to

3  be fair and impartial in this case?

4  A   It would not make it difficult.

5  **Q**  All right.  You can be fair and impartial?

6  A   Yes.

7  **Q**  Okay.  Thank you.

8          **THE CLERK:**  (Out loud)  Your Honor, Juror No. 39.

9              INQUIRY BY THE COURT OF THE JUROR

10  **Q**  Good morning, Ms. O'Neill.  Can you tell us why you

11  responded affirmatively?

12  A   I have a Fidelity Personal Advisers Fund.  I don't know

13  if Pfizer is included or not.

14  **Q**  Would that in any way make it difficult for you to be

15  fair and impartial in this case?

16  A   No.

17  **Q**  All right, thank you.

18          **THE CLERK:**  Your Honor, Juror No. 32, unrelated to

19  the question, came up to me and he said he's hard of

20  hearing, he can barely hear what's being said.

21          **THE COURT:**  All right.

22          **THE CLERK:**  I figured I would bring it up now.

23          **THE COURT:**  All right.  Why don't we bring him up.

24  Is he --

25          **THE CLERK:**  He's standing.

1          **THE COURT:**  All right, why don't you bring him up.

2          **THE CLERK:**  Yes, your Honor.  Go ahead.

3          (Out loud)  Your Honor, Juror No. 32.

4                INQUIRY BY THE COURT OF THE JUROR

5    A    Hi.

6    **Q**    Good morning, Mr. Ocampo.

7    A    Your Honor, I have a hearing problem.

8    **Q**    Have you been tested?

9    A    Well, I have been tested for years at my work.  I'm

10   going to have another coming up in June.

11   **Q**    All right.

12   A    My right ear is not that good.

13   **Q**    All right.  I'll excuse this juror for cause.  So you're

14   excused.

15   A    Thank you.

16   **Q**    Thank you.

17          **THE COURT:**  That is No. 32.  All right.  So if you

18   would stay put.

19          **MR. LONDON:**  All right.

20          (Whereupon the sidebar conference concluded.)

21          **THE COURT:**  Counsel listed the prospective

22   witnesses in the case a few minutes ago.  Does any member of

23   the panel know any of the prospective witnesses?

24          **A JUROR:**  Can you give me one name?

25          **THE COURT:**  Well, why don't you come forward.

```
 1              THE CLERK:  Your Honor, Juror No. 39.

 2   SIDEBAR CONFERENCE, AS FOLLOWS:

 3                    INQUIRY BY THE COURT OF THE JUROR

 4   Q   Yes?

 5   A   Is it Daniel Sullivan or Soloman?

 6              MR. ROSENKRANZ:  Sullivan.

 7   A   Sullivan.

 8   Q   Thank you.

 9              MS. SMITH:  There's another one, Marc.

10              THE CLERK:  (Out loud)  Your Honor, Juror No. 10.

11                    INQUIRY BY THE COURT OF THE JUROR

12   Q   Yes, Ms. Doyle?

13   A   Question.  If Michael Fagan is an attorney, so I would

14   know him.

15              MR. LONDON:  I believe Mr. Fagan is a sales

16   representative.  We don't think he's an attorney.  Isn't

17   that right?

18              MR. ROSENKRANZ:  Right.

19              THE COURT:  Okay.  Thank you very much.

20              MR. LONDON:  Thank you.

21              (Whereupon the sidebar conference concluded.)

22              THE COURT:  Has any member of the potential jury

23   pool served as a juror in a criminal or civil case or as a

24   member of the grand jury in either the state or federal

25   systems?
```

1           All right.

2           **THE CLERK:**  Your Honor, Juror No. 8.

3   SIDEBAR CONFERENCE, AS FOLLOWS:

4                   INQUIRY BY THE COURT OF THE JUROR

5   A   I'm not sure if it applies.  I served last month in

6   Taunton District Court.

7   Q   All right.  And would that -- was it a civil or criminal

8   case?

9   A   It was criminal.

10  Q   And would that in any way affect your ability to be fair

11  and impartial in this case?

12  A   No.

13  Q   Thank you.

14  A   I have a question about the other one, too.  I work for

15  an investment firm that may or may not purchase Pfizer.  I

16  don't have direct portfolio management experience so it

17  wouldn't be me, but I do work for a firm.

18  Q   Would that in any way affect your ability to be fair and

19  impartial in this case?

20  A   No.

21  Q   Thank you.

22  A   Okay.

23          **THE CLERK:**  (Out loud)  Your Honor, Juror No. 28.

24                  INQUIRY BY THE COURT OF THE JUROR

25  Q   Good morning, Mr. Goujon.

1    A    Good morning.

2    Q    Can you tell us why you responded affirmatively?

3    A    I was selected for a case up in Salem.  That was about

4    20 years ago.

5    Q    Civil or criminal?

6    A    Drunken driving.  But I had to go out on business

7    somewhere, so I only did the two days of jury and then I was

8    replaced by an alternate.

9    Q    And would that in any way, would that experience in any

10   way affect your ability to be fair and impartial in this

11   case here today?

12   A    I don't -- no.

13   Q    All right, thank you.

14              THE CLERK:  (Out loud)  Your Honor, Juror No. 14.

15                  INQUIRY BY THE COURT OF THE JUROR

16   A    Hi.

17   Q    Good morning, Ms. McGonagle.  Can you tell us about your

18   past experience?

19   A    Federal District Court in the State of Connecticut on a

20   civil case, approximately ten years ago.

21   Q    And what was the subject matter; do you know?

22   A    It was against Porsche.  An accident involving a

23   litigant.

24   Q    And would that experience in any way affect your ability

25   to be fair and impartial in this case?

1    A    Not at all.

2    **Q**    All right, thank you.

3    A    Thank you.

4         **THE CLERK:**  (Out loud)  Your Honor, Juror No. 17.

5    Correction.  No, that's right.  Juror No. 17.

6              INQUIRY BY THE COURT OF THE JUROR

7    **Q**    Ms. Martin?

8    A    Hi.

9    **Q**    Could you tell us about your past experience?

10   A    I've been on a criminal case and a civil case.

11   **Q**    And where were they?

12   A    In the state.

13   **Q**    All right.  And would that experience in any way make it

14   difficult for you to be fair and impartial in this case?

15   A    No.

16   **Q**    Okay, thank you.

17   A    Thank you.

18         **THE CLERK:**  (Out loud)  Your Honor, Juror No. 37.

19   I'm sure of it.

20              INQUIRY BY THE COURT OF THE JUROR

21   **Q**    Ms. Barth?

22   A    Yes.

23   **Q**    Can you tell us about your past experience?

24   A    About fifteen years ago I was on a murder trial.

25   **Q**    Where was that?

1    A    In New York.  In the state of New York.

2    Q    And would that in any way affect your ability to be fair

3    and impartial in this case?

4    A    I don't believe so.

5    Q    You don't think so.  You're sure?

6    A    Yes.

7    Q    Okay.

8    A    Thank you.

9         **THE CLERK:**  (Out loud)  Your Honor, Juror No. 45.

10              INQUIRY BY THE COURT OF THE JUROR

11   Q    Good morning, Ms. Barry.

12   A    Good morning.  I served on a jury for driving under the

13   influence.

14   Q    Where was that?

15   A    It was in Ayer, Massachusetts.

16   Q    And would that experience in any way make it difficult

17   for you to be fair and impartial in this case?

18   A    No.

19   Q    Thank you.

20        **MR. LONDON:**  May I just ask -- I think we found the

21   one juror who's quieter than I am and I don't think any of

22   us could hear.

23        **THE COURT:**  All right.

24        **MR. LONDON:**  I'm so sorry.

25   A    It was -- I was on a jury for someone who was driving

1    under the influence.

2              **MR. ROSENKRANZ:**  Okay.  Criminal case.

3              **MR. LONDON:**  Okay.  Thank you very much.

4              **THE CLERK:**  (Out loud)  Your Honor, Juror No. 11.

5                   INQUIRY BY THE COURT OF THE JUROR

6    **Q**   Good morning, Ms. McKenna.  Can you tell us about your

7    past experience?

8    **A**   In, I believe it was 1998, it was a four day medical

9    malpractice trial.

10   **Q**   Where was that?

11   **A**   That was in Lawrence.

12   **Q**   And would that experience in any way make it difficult

13   for you to be fair and impartial in this case?

14   **A**   Not at all.

15   **Q**   Thank you.

16             **THE CLERK:**  (Out loud)  Your Honor, Juror No. 41.

17                   INQUIRY BY THE COURT OF THE JUROR

18   **Q**   Good morning, Ms. Nadeau.  Can you tell us about your

19   past experience?

20   **A**   It was in Fall River.  I served in Fall River about a

21   year ago.

22   **Q**   In a criminal or civil case?

23   **A**   Ah, civil.

24   **Q**   And would that in any way affect your ability to be fair

25   and impartial in this case?

```
1    A    No.

2    Q    Thank you.

3    A    I was curious -- I know a Mike Fagan.  I was curious

4    what age he was.

5            MR. LONDON:  Question about Mr. Fagan's age,

6    there's a possibility she may know Mr. Fagan.

7            MR. FROMSON:  Middle-aged, western Massachusetts

8    area.  From western Massachusetts.

9    A    It's not him.

10   Q    Okay, thank you.

11   A    Thanks.

12           THE CLERK:  (Out loud)  Your Honor, Juror No. 22.

13               INQUIRY BY THE COURT OF THE JUROR

14   Q    Good morning, Mr. Marsello.

15   A    Good morning.

16   Q    Can you tell us about your past experience?

17   A    It was a drunk driving case.  I don't remember how many

18   years ago.  Fifteen, twenty years ago maybe.

19   Q    Would that experience in any way make it difficult for

20   you to be fair and impartial in this case?

21   A    No.

22   Q    Okay, thank you.

23   A    Thank you.

24           MR. FROMSON:  Thank you.

25           THE CLERK:  (Out loud)  Your Honor, Juror No. 18.
```

INQUIRY BY THE COURT OF THE JUROR

**Q**   Again, Mr. Feiner.

A   Hi.

**Q**   Can you tell us about your past experience?

A   In the Cambridge courts, there was an incident at the Bruins game, assault and battery, where I served on that jury.

**Q**   It was a criminal matter?

A   It was a criminal matter.

**Q**   And would that in any way affect your ability to be fair and impartial in this case?

A   It would not.

**Q**   All right, thank you.

            **MR. FROMSON:**   Thank you.

            **THE CLERK:**   (Out loud)   Your Honor, Juror No. 36.

INQUIRY BY THE COURT OF THE JUROR

**Q**   Good morning, Mr. Kelley.

A   Hi.

**Q**   And can you tell us about your past experience?

A   Yeah, it was a case about a man who was molesting one of his kids.

**Q**   And where was that?

A   Cambridge.

**Q**   And would that in any way affect your ability to be fair and impartial in this case?

1    A    No, your Honor.

2    **Q**    Okay, thank you.

3              **THE CLERK:**  (Out loud)  Your Honor, Juror No. 13.

4                   INQUIRY BY THE COURT OF THE JUROR

5    **Q**    Good morning, Mr. Lewis.  Can you tell us about your

6    past experience?

7    A    I'm prone to seizures and have been on medications that

8    cause depression and suicidal thoughts.

9    **Q**    And would that make it difficult for you to be fair and

10   impartial in this case?

11   A    Only the seizures part.

12   **Q**    Did you ever take Neurontin?

13   A    I'm sorry?

14   **Q**    Did you ever take Neurontin?

15   A    No.  I take Lamictal.  But I do have seizures

16   occasionally.  Mild ones.

17   **Q**    Do you feel it would be difficult for you to sit as a

18   juror?

19   A    I don't.  I just wanted to make sure that, having had

20   experience with the depression and the suicidal thoughts.

21   **Q**    All right.  Would it be difficult for you to sit?

22   A    I don't think so.

23   **Q**    To hear this?

24   A    I don't think so.

25   **Q**    All right.

1    A    Okay.

2    Q    And are you sure that you can be fair and impartial?

3    A    I am.

4    Q    All right.

5    A    Okay.

6    Q    Thank you.

7    A    Thank you.

8              **MR. LONDON:**  Thank you.

9              (Whereupon the sidebar conference concluded.)

10             **THE COURT:**  Have you or anyone close to you ever

11   participated in a lawsuit as a party, a witness, or in any

12   other capacity?  All right.

13             **THE CLERK:**  Your Honor, Juror No. 18.

14   SIDEBAR CONFERENCE, AS FOLLOWS:

15                    INQUIRY BY THE COURT OF THE JUROR

16   Q    All right.  Again, Mr. Feiner.

17   A    Yes.

18   Q    Can you tell us about why you responded?

19   A    Yes.  I was sued about five years ago and the case was

20   settled outside of court.

21   Q    What was the nature of the suit?

22   A    Financial.  It was a financial problem.

23   Q    And would that in any way affect your ability to be fair

24   and impartial in this case?

25   A    No.

1    Q    All right, thank you.

2              THE CLERK:  (Out loud)  Your Honor, Juror No. 44.

3                 INQUIRY BY THE COURT OF THE JUROR

4    A    Good morning.

5    Q    Good morning.  Can you tell us about your past

6    experience?

7    A    My parents initiated a malpractice lawsuit against a

8    company because of some recalled sutures.

9    Q    And?

10   A    It was never resolved.

11   Q    It was not resolved?

12   A    Nothing.

13   Q    And would that in any way affect your ability to be fair

14   and impartial in this case?

15   A    I don't think so.

16   Q    Are you sure?

17   A    I do.  I think I could be impartial.

18   Q    You have to say, you have to tell me you're sure.  Are

19   you sure whether or not you can be fair and/or impartial?

20   A    I'm sure.

21   Q    All right, thank you.

22   A    Thank you.

23             MR. FROMSON:  Thank you.

24             THE CLERK:  (Out loud)  Your Honor, Juror No. 9.

25

INQUIRY BY THE COURT OF THE JUROR

**Q**   All right, Ms. Knowlton, can you tell us about your past

experience?

A   When my son was a small child he got bit by a dog and we

brought a lawsuit.

**Q**   And would that experience in any way make it difficult

for you to be fair and impartial in this case?

A   No.

**Q**   Okay, thank you.

A   Thank you.

        **MR. LONDON:**   Your Honor, I'm not sure any of us

were able to hear against whom or what the nature of that

case was.

        **THE COURT:**   That her child was bitten by a dog.

        **MR. LONDON:**   A dog.  Okay.

        **MR. ROSENKRANZ:**   A dog bite.

        **MR. LONDON:**   Was she 9?

        **THE COURT:**   She was 9.

        **MR. LONDON:**   Thank you, your Honor.

        **THE CLERK:**   (Out loud)  Your Honor, Juror No. 14.

                INQUIRY BY THE COURT OF THE JUROR

**Q**   Yes, Ms. McGonagle.

A   Yes, I've had one small claims, and it was when I wasn't

working.  And I also was --

**Q**   Were you the plaintiff or defendant?

1    A    I was the defendant.

2    **Q**    All right.

3    A    That was fine.  And I was hit by a car about five years

4    ago.  So my insurance company -- there wasn't litigation.

5    There was an award made.

6    **Q**    And did you go to -- was there a trial?

7    A    There was not.

8    **Q**    All right.

9    A    No.

10   **Q**    Would that experience in any way make it difficult for

11   you to be fair and impartial in this case?

12   A    Not at all.

13   **Q**    All right, thank you.

14   A    Thank you.

15           **THE CLERK:**  (Out loud)  Your Honor, Juror No. 22.

16                   INQUIRY BY THE COURT OF THE JUROR

17   **Q**    Good morning again, Mr. Marsello.

18   A    Good morning.  My wife was in a car, a pretty severe car

19   accident 25 years ago.  I was in a motorcycle accident 40

20   years ago.  They were insurance cases at those times.

21   **Q**    And would that experience in any way impair your ability

22   to be fair and impartial in this case?

23   A    No.

24   **Q**    All right, thank you.

25   A    Thank you.

1       **THE CLERK:**  (Out loud) Your Honor, Juror No. 41.

2               INQUIRY BY THE COURT OF THE JUROR

3   **Q**   Yes, Ms. Nadeau?

4   A   I wasn't the defendant.  I was the other one.

5   **Q**   The plaintiff?

6   A   Yes, that.  No, I don't think it will.

7   **Q**   And what was the nature of the case?

8   A   Restraining order.

9   **Q**   So you were suing someone to get a restraining order?

10  A   Yes.

11  **Q**   And would that in any way affect your ability to be fair

12  and impartial in this case?

13  A   No.

14  **Q**   Thank you.

15  A   Thanks.

16      **THE CLERK:**  (Out loud)  Your Honor, Juror No. 2.

17              INQUIRY BY THE COURT OF THE JUROR

18  **Q**   Good morning, Ms. Richardson.

19  A   Good morning.  I don't know if this is relevant or not,

20  but my brother was on the O.J. Simpson case many, many, many

21  years ago.  So I don't know if --

22  **Q**   As a juror or as a --

23  A   As a juror.

24  **Q**   As a juror?

25  A   Yes.

1    Q    And would that in any way affect your ability to be --

2    A    Absolutely not.

3    Q    -- fair and impartial --

4    A    I'll be fair, yes.

5    Q    -- in this case?

6    A    I'll be fair.  I'm open minded, yes.

7    Q    Okay, thank you.

8    A    Thank you.

9              MR. LONDON:  Thank you.

10             THE CLERK:  (Out loud)  Your Honor, Juror No. 10.

11             MR. LONDON:  Was it the civil or criminal case?  It

12   doesn't matter to you?

13             THE COURT:  Do you think that's critical, whether

14   he was a juror in the civil case or in the criminal case?

15             MR. OHLEMEYER:  Yes, I think --

16             MR. LONDON:  We would like to find that out.

17             THE CLERK:  All right, let's do this juror that I

18   called.

19             MR. LONDON:  Yes, ma'am.

20             THE COURT:  Don't call me ma'am.  Anything but.

21                  INQUIRY BY THE COURT OF THE JUROR

22   A    My daughter got hit by a car and there was a lawsuit

23   so --

24   Q    All right.  Would that in any way -- did you go to

25   court?  Did you have to testify?

1    A    No, the attorney handled it.

2    Q    And would that in any way affect your ability to be fair

3    and impartial?

4    A    No.

5    Q    All right, thank you.

6             THE COURT:  (Out loud)  We would like to call Juror

7    No. 2, Ms. Richardson, back.

8             MR. LONDON:  Sorry about that.

9             THE COURT:  That's all right.

10                  FURTHER INQUIRY BY THE COURT OF THE JUROR

11   Q    Ms. Richardson, the lawyers would like to know whether

12   your brother was involved in the civil trial or the criminal

13   trial?

14   A    Civil trial.

15            MR. LONDON:  Which trial, please?

16            THE COURT:  Civil trial.

17   A    The civil trial.

18            MR. LONDON:  The civil trial.  All right.

19   Q    And did you discuss that trial with him?

20   A    Absolutely not.

21   Q    Okay.  And would this in any way affect your ability to

22   be fair and impartial?

23   A    I can be fair and impartial, ma'am.

24   Q    All right, thank you very much.

25            (Whereupon the sidebar conference concluded.)

```
 1              THE COURT:  All right, the next question:  Have you

 2      or anyone close to you ever taken the drug Neurontin which

 3      is also known by its generic name gabapentin.

 4              THE CLERK:  Your Honor, Juror No. 31.

 5      SIDEBAR CONFERENCE, AS FOLLOWS:

 6                      INQUIRY BY THE COURT OF THE JUROR

 7      Q   Good morning, Mr. Marchioni.

 8      A   Hi.

 9      Q   Can you tell us why you answered?

10      A   My mother takes Neurontin.

11      Q   And do you know what for?

12      A   Seizures or something.

13      Q   And would that in any way affect your ability to be fair

14      and impartial in this case?

15      A   No.

16      Q   You're comfortable?

17      A   Yes, ma'am.

18      Q   Okay.  Thank you.

19              THE CLERK:  (Out loud)  Your Honor, Juror No. 33.

20                      INQUIRY BY THE COURT OF THE JUROR

21      Q   Good morning, Ms. Benvie.

22      A   I believe it was one of the medicines given to my mother

23      when she was fighting cancer.

24      Q   And would that in any way affect your ability to be fair

25      and impartial in this case?
```

1    A    No.

2    Q    All right, thank you.

3         **THE CLERK:**  (Out loud)  Your Honor, Juror No. 18.

4              INQUIRY BY THE COURT OF THE JUROR

5    A    Hello again.

6    Q    Hello, Mr. Feiner.  Can you tell us why you responded

7    affirmatively?

8    A    Well, I actually have gabapentin in my pocket and I'm

9    going to take it again in about two hours.

10   Q    All right.

11   A    I have to tell you that I don't know whether or not I

12   would be impartial, it's really saved my life.  So, I'm not

13   really sure how you want to take that.  I would say that I

14   can probably be impartial.

15   Q    Probably.

16   A    Yeah.

17   Q    Are you not sure?

18   A    I'm very, very happy with the drug.  So I'm very -- I'm

19   not really sure how I would be able to handle that one way

20   or the other.  I think I could be impartial but --

21   Q    Well, you have to be sure.

22   A    Well, then I'm not sure.

23   Q    All right.  I'm going to excuse this juror for cause.

24        **MR. LONDON:**  What Juror Number?

25        **THE COURT:**  Juror No. 18.

1        **MS. SMITH:**  Eighteen.

2        **MR. LONDON:**  Thanks for coming forth, sir.

3        **THE COURT:**  Juror No. 18 is excused for cause.

4    A    Thank you very much, your Honor.

5        **THE CLERK:**  (Out loud)  Your Honor, Juror No. 27.

6              INQUIRY BY THE COURT OF THE JUROR

7    Q    Good morning, Mr. Delfino.

8    A    Good morning.  My wife takes it currently.  I don't know

9    what she takes it for.  Ah, I believe it's to go to sleep or

10   to get some sleep at night.

11   Q    And would that in any way affect your ability to be fair

12   and impartial in this case?

13   A    No.

14   Q    All right, thank you.

15       **THE CLERK:**  (Out loud)  Your Honor, Juror No. 14.

16             INQUIRY BY THE COURT OF THE JUROR

17   Q    Yes, Ms. McGonagle?

18   A    I did take Neurontin after foot surgery for a period of

19   about a year and-a-half for nerve pain.  That was about

20   eight to ten years ago.

21   Q    And would that in any way affect your ability to be fair

22   and impartial in this case?

23   A    Not at all.  Not at all.

24   Q    Thank you.

25       **THE CLERK:**  (Out loud)  Your Honor, Juror No. 10.

```
1              INQUIRY BY THE COURT OF THE JUROR
2    Q    Good morning, Ms. Doyle.
3    A    Hi.  I took Neurontin about five years ago for
4    neuropathy.
5    Q    And would that in any way affect your ability to be fair
6    and impartial in this case?
7    A    No.
8    Q    Okay, thank you.
9              (Whereupon the sidebar conference concluded.)
10         THE COURT:  All right, the next question.  You may
11   hear testimony regarding the off-label use of a prescription
12   drug which means use for a purpose not approved by the
13   United States Food and Drug Administration.  Do you have any
14   opinion that would affect your ability to decide this case
15   fairly and impartially with respect to off-label use?
16         Let the record reflect no affirmative responses.
17         Next question:  During the course of the trial you
18   will hear testimony about depression and suicide.  Would
19   that make it difficult for you to serve as a juror?
20         THE CLERK:  Your Honor, Juror No. 42.
21   SIDEBAR CONFERENCE, AS FOLLOWS:
22              INQUIRY BY THE COURT OF THE JUROR
23   Q    Good morning, Mr. Wolfe.
24   A    I previously have been treated for depression, so I'm
25   taking medication.  I don't recall exactly what it was at
```

1    this time.

2    **Q**   Would hearing this kind of testimony be difficult for

3    you?

4    **A**   Most likely.

5    **Q**   All right.  I will excuse you for cause.

6               **MS. SMITH:**  No. 42.

7               **THE COURT:**  No. 42 is excused for cause.

8    **Q**   Thank you for your candor.

9               **THE CLERK:**  (Out loud)  Your Honor, Juror No. 31.

10                  INQUIRY BY THE COURT OF THE JUROR

11   **Q**   Yes, Mr. Marchioni?

12   **A**   I'm pretty sure my mother tried to commit suicide.  I

13   don't know if it's because of that but --

14   **Q**   Would it affect your ability to be fair and impartial in

15   this case?

16   **A**   I mean, it would bring up memories.  I mean, I'm not

17   sure how I would feel about that.

18   **Q**   I would like you to give it a thought for a moment

19   whether you think it's too difficult for you emotionally to

20   hear this kind of testimony.

21   **A**   I mean, yeah.  It would be harder.

22   **Q**   All right.

23   **A**   To give an honest opinion.

24   **Q**   All right.  I'm going to excuse, excuse you for cause.

25               **THE COURT:**  Juror No. 31 is excused for cause.

1          **MR. FROMSON:**  Thank you.

2          **MR. LONDON:**  Thank you.

3          **THE CLERK:**  (Out loud)  Your Honor, Juror No. 9.

4               INQUIRY BY THE COURT OF THE JUROR

5    **Q**   Yes, Ms. Knowlton?

6    A   Hi.  I had two siblings who attempted suicide and it was

7    like years ago.  Both my parents, they're elderly, they're

8    both needy.  And my mother spent like 30 days in Mass.

9    General in a mental unit there.

10   **Q**   Would that make it difficult for you to hear this case?

11   A   Ah, I think so.  My father just had a stroke and he's

12   dealing with depression and different drugs and they're

13   changing his drugs around.

14         **MR. LONDON:**  I have a great deal of difficulty

15   hearing, I'm sorry.  Were you able to hear that?

16         **THE COURT:**  She had two siblings that committed

17   suicide.

18   A   Attempted.  Attempted.

19   **Q**   Attempted suicide.

20         **MR. ROSENKRANZ:**  Attempted suicide.

21         **MR. LONDON:**  Two siblings.  Yes.

22         **THE COURT:**  And a variety of other problems with

23   her mother treated in a mental institution.

24         **MR. LONDON:**  All right.

25         **THE COURT:**  And her father just had a stroke.

```
1              MR. ROSENKRANZ:  Do you -- did she just mention

2     SSRI?

3              THE COURT:  No, you will speak to me.

4              MR. ROSENKRANZ:  I'm sorry.

5              THE COURT:  I will ask the question.

6              MR. ROSENKRANZ:  I thought I heard SSRI mentioned

7     but I wasn't sure, your Honor.

8              THE COURT:  No, I don't think so.

9     Q   Do you think it would be too difficult for you to hear

10    this case?

11    A   I don't think it would be too difficult, but I don't

12    know.

13    Q   Are you bothered by whether or not you can be fair and

14    impartial?

15    A   I think I could be fair.

16    Q   You have to be sure.

17    A   Yes.

18    Q   All right.  And you don't -- and you feel you're strong

19    enough that it will not be a problem --

20    A   No.

21    Q   -- for you?

22    A   I'm okay.

23              THE CLERK:  (Out loud)  Your Honor, Juror No. 44.

24                   INQUIRY BY THE COURT OF THE JUROR

25    Q   Yes, Ms. Benoit?
```

1   A   I suffer from depression.

2   Q   Would it be too difficult for you to hear this kind of

3   testimony?

4   A   I don't believe so, no.

5   Q   All right, thank you.

6          THE CLERK:  (Out loud)  Your Honor, Juror No. 40.

7               INQUIRY BY THE COURT OF THE JUROR

8   Q   Good morning, Mr. Jasmin.

9   A   Good morning.  Because of my religious convictions, I do

10  believe that the suit is morally wrong.

11  Q   And would that make it difficult for you to be fair and

12  impartial in this case?

13  A   I would have to say somewhat, yes.

14  Q   All right.  I will excuse you for cause.  Thank you.

15         MS. SMITH:  That's No. 40, Mr. Jasmin.

16         THE COURT:  Yes, Juror No. 40 is excused for cause.

17         THE CLERK:  (Out loud)  Your Honor, Juror No. 41.

18               INQUIRY BY THE COURT OF THE JUROR

19  Q   Yes, Ms. Nadeau?

20  A   I work for Partners in Health and I deal with mental

21  health related things.  So I feel like it's a situation

22  where it might be difficult, and I don't think I'm going to

23  have an impartial judgment on this.

24  Q   You think you cannot be fair and impartial?

25  A   Right.  Yes.

1    **Q**   All right.  I'm going to excuse you.

2    A   Okay.

3                **MR. LONDON:**  Thank you.

4                **THE COURT:**  Juror No. 41 is excused for cause.

5                (Whereupon the sidebar conference concluded.)

6                **THE COURT:**  If you are selected to sit on this

7    case, will you be able to render a verdict solely on the

8    evidence presented at the trial and in the context of the

9    law as the Court will give it to you in the Court's

10   instructions disregarding any other ideas, notions or

11   beliefs about that law that you may have encountered?

12               Let the record reflect no affirmative responses.

13               Can you think of any other matter which you should

14   call to my attention which may have any bearing on your

15   qualifications to sit as a juror on this particular case or

16   which may prevent you from rendering a fair and impartial

17   verdict with these particular parties based solely on the

18   evidence and the instructions on the law as it is given to

19   you.

20               All right.

21               **THE CLERK:**  (Out loud)  Your Honor, Juror No. 46.

22                      INQUIRY BY THE COURT OF THE JUROR

23   **Q**   Yes, Mr. Bankston?

24   A   I work in the pharmaceutical industry as a scientist and

25   make drugs, and I'm afraid I might have a partial --

1    Q    You work for Serono?

2    A    Yes.

3    Q    Yes.

4    A    So I'm afraid I might have a partial view, impartial

5    view on coming to --

6    Q    In terms of the pharmaceutical industry?

7    A    Yes.

8    Q    All right.  I will excuse you for cause.

9    A    Thank you.

10              THE COURT:  Juror No. 46 is excused.

11              THE CLERK:  (Out loud)  Your Honor, Juror No. 37.

12                  INQUIRY BY THE COURT OF THE JUROR

13   Q    Yes, Ms. Nichol?

14   A    Yeah, there are two reasons.  I actually work for a

15   property, commercial property casualty insurer and I've

16   underwritten product insurance in the past.

17   Q    And would that make it difficult for you to be fair and

18   impartial in this case?

19   A    I believe it might.

20   Q    Are you sure?

21   A    I can't -- I've worked for an insurance company for 35

22   years in commercial insurance.  So --

23   Q    All right, I'll excuse you for cause.  Thank you very

24   much.

25              THE COURT:  Juror No. 37 is excused.

1          **THE CLERK:**  (Out loud)  Your Honor, Juror No. 44.

2               INQUIRY BY THE COURT OF THE JUROR

3    **Q**   Yes, Ms. Benoit?

4    **A**   I just wanted to disclose that for the past 20 years

5    I've been working in the medical research industry managing

6    industry sponsored clinical trials.

7          **MR. LONDON:**  Ms. Benoit works in the medical

8    research industry.

9          **THE COURT:**  And she manages clinical trials.

10   **A**   Industry sponsored clinical trials.

11   **Q**   And do you believe that you can still be fair and

12   impartial in this case?

13   **A**   Yes, absolutely.

14   **Q**   All right.

15         **MR. LONDON:**  Would it be appropriate to ask if she

16   is associated with clinical trials that may be involved with

17   Pfizer or Warner-Lambert?  Would that be appropriate?

18         **THE COURT:**  Yes.

19   **Q**   Have you ever worked --

20   **A**   It's hard to say.  I could have.  I can't be positive.

21   **Q**   But you don't recall?

22   **A**   But I don't recall any.

23   **Q**   All right.  And your direct employer is called?

24   **A**   Partnerships Health Care.

25   **Q**   All right.

1          **MR. LONDON:** May I ask, I say Benoit. Is it Benoit

2    or Benoit?

3    A   Benoit is the proper way. Benoit if you like.

4    Q   All right, thank you.

5          **MR. LONDON:** Thank you, Ms. Benoit. No. 44.

6          **THE CLERK:** (Out loud) Your Honor, Juror No. 15.

7               INQUIRY BY THE COURT OF THE JUROR

8    Q   Yes, Mr. Cabral, good morning.

9    A   Good morning. I'm not sure if I can be a partial juror

10   in this case. The reason being is that I have this belief

11   that the majority of these cases are grieving family members

12   who are looking to displace their anger against, you know,

13   the pharmaceutical companies.

14   Q   You believe you can't be fair and impartial?

15   A   I have -- I am leaning completely towards, you know,

16   protecting the drug companies. That's just my nature of

17   this whole thing. And that's why I wanted to bring this up

18   to you.

19   Q   And your wife is in the health care business?

20   A   She is. Yes.

21   Q   What does she do?

22   A   She's a health care consultant and she works with the

23   elderly and nursing homes.

24   Q   All right. I'm going to excuse Mr. Cabral.

25          **MR. LONDON:** Mr. Cabral, No. 15.

1          **THE COURT:**  That's right.  Juror No. 15 is excused

2     for cause.

3               (Whereupon the sidebar conference concluded.)

4          **THE COURT:**  All right, now we're coming to the last

5     question and this involves the schedule.  The case is

6     scheduled to last approximately four weeks.  Now, just

7     listen.

8               The jury will sit from 9:00 to 1:00.  Each day

9     there will be a midmorning break for coffee and snacks, and

10    the trial will not start until Wednesday, the 31st.

11              There will be no trial on Wednesday, April 14th,

12    Friday, April 16th, and Monday, April 19th.  The case will

13    be sent to the jury on April the 20th.  Judge Young runs a

14    very tight courtroom and he has set a schedule that the

15    lawyers will have to abide by.  So, the case will go to the

16    jury on the 20th of April.

17              Does the schedule present a problem?

18              This is always the tough one.

19         **MR. OHLEMEYER:**  Theoretically it could be done

20    sooner.

21         **THE COURT:**  And theoretically it could go to the

22    jury earlier than the 20th.

23         **THE CLERK:**  Your Honor, Juror No. 24.

24         **THE COURT:**  All right.

25

```
 1    SIDEBAR CONFERENCE, AS FOLLOWS:

 2                       INQUIRY BY THE COURT OF THE JUROR

 3    Q    Yes, Ms. Shea?

 4    A    I broke my ankle last week and I'm supposed to be off of

 5    it for four to six weeks.  And I'm also supposed to be

 6    taking pain medications.  And I can't drive and I have no

 7    easy way to get here.

 8    Q    And you live in Hudson?

 9    A    Hudson, Mass.  My daughter took today off.  We parked at

10    Alewife and we took the Red Line and the Silver Line to get

11    here.

12    Q    All right, I'm going to excuse Ms. Shea.

13    A    Thank you.

14    Q    Thank you very much.

15               THE COURT:   Juror No. 24 is excused.

16               THE CLERK:   (Out loud)  Your Honor, Juror No. 13.

17                       INQUIRY BY THE COURT OF THE JUROR

18    A    Good morning.

19    Q    Good morning, Mr. Lewis.

20    A    I am in publishing and it's basically a one man

21    operation.  This is the busy time of year, I'm sorry to say.

22    Q    I'm sure.  I tend not to excuse people for employment

23    reasons.  We do sit only from 9:00 to 1:00.  So, this isn't

24    the whole day.

25    A    It's on Cape Cod, your Honor.  It would be impossible to
```

1    get to work.

2    **Q**   I'm sorry.

3    A    Okay.

4             **THE CLERK:**  (Out loud)  26, your Honor.

5                    INQUIRY BY THE COURT OF THE JUROR

6    **Q**   Good morning, Ms. Jules.

7    A    Hi.  Coming in here is a big problem for me because I

8    have a problem with my foot.

9    **Q**   What's wrong with your foot?

10   A    I'm a diabetic and I'm still hobbling on my foot.

11   **Q**   But you live close by.  You're living in Medford.

12   A    I live in Medford.

13   **Q**   No, I can't excuse you.

14   A    Okay.

15   **Q**   You're not excused.  Okay.

16            **MR. LONDON:**  May I ask what her foot problem was?

17            **THE COURT:**  Diabetic.

18            **MR. LONDON:**  Okay, thank you, your Honor.

19            **THE CLERK:**  (Out loud)  Your Honor, Juror No. 1.

20                    INQUIRY BY THE COURT OF THE JUROR

21   **Q**   Good morning, Mr. Fahrenholtz.

22   A    I have a court ordered child support payment that I

23   would not be able to make if I was here for four weeks.  My

24   employer said they would pay for three days but nothing

25   beyond that.

1    Q    Well, you can still work a half day.  We're only sitting

2    from 9:00 to 1:00.

3    A    Living in Attleboro makes it very difficult.  I work in

4    southern Rhode Island.  It makes it rather difficult.

5    Q    I'm sorry, I don't excuse you for employment reasons.

6    Thank you.

7              **THE CLERK:**  (Out loud)  Your Honor, Juror No. 38.

8                   INQUIRY BY THE COURT OF THE JUROR

9    Q    Good morning, Mr. Mowday.

10   A    Good morning, your Honor.  I'm a student.  I'm scheduled

11   to graduate in May.  And I feel like serving that long might

12   adversely affect --

13   Q    You're a student where?

14   A    At Northeastern University Law School.

15   Q    And you're employed as well as a law clerk?

16   A    I'm one of the full-time law clerks as part of my

17   cooperative studies.

18   Q    So, are you on your coop?

19   A    Yeah.  Basically.

20   Q    Well, what better experience.  No excuse.

21             **MR. LONDON:**  Was he trying to get out?

22             **THE CLERK:**  (Out loud)  Your Honor, Juror No. 19.

23                   INQUIRY BY THE COURT OF THE JUROR

24   Q    Yes, Ms. Bentley.

25   A    One, I want to say that I do work for a physician, a

```
 1    dermatologist.  But also I work on clients and patients

 2    doing cosmetic stuff and I'm scheduled, I kind of have my

 3    own business with them.  So, it would be a pretty big

 4    hardship for myself to be out of work that many days.

 5    Q    But you are right here in Boston, so it would be half

 6    days.

 7    A    Half days.  And anxiety.

 8    Q    No, nothing anxious about --

 9    A    Okay.

10    Q    All right.

11    A    Whatever.

12              THE CLERK:  (Out loud)  Your Honor, Juror No. 34.

13                 INQUIRY BY THE COURT OF THE JUROR

14    Q    Good morning, Mr. Cavaliere.

15    A    Hi, your Honor.  I'm a school teacher on the Cape.  And

16    it would be pretty difficult to be out for that period of

17    time.  We're in the middle of MCAS testing this week.  And

18    not to mention the bridge construction would make it kind of

19    difficult.

20    Q    When -- is there a spring vacation?

21    A    Ah, middle of April.

22    Q    So, it might be part of it.  I'm not inclined to excuse

23    you.

24    A    Okay.

25              MR. LONDON:  That was number?
```

```
1              THE CLERK:  (Out loud)  Your Honor, Juror No. 12.
2                  INQUIRY BY THE COURT OF THE JUROR
3    Q   Good morning, Mr. Bacon.
4    A   Good morning, your Honor.  My mother, she's 70, she just
5    had a total knee replacement.  She's recently widowed.  I
6    have to take care of her so --
7    Q   Do you live with her?
8    A   Yes.
9    Q   Still it's just -- where is your --
10   A   I live in Dunstable.  It's on the New Hampshire border.
11   Q   Yes.  But where is your work?
12   A   Chelmsford, Massachusetts.
13   Q   Yes.  So you still have a half day.  It's only from --
14   A   I have to take care of her.  I have to take her to
15   physical therapy and all kinds of stuff.
16   Q   I'm sorry.
17             THE CLERK:  (Out loud)  Your Honor, Juror No. 9.
18                 INQUIRY BY THE COURT OF THE JUROR
19   Q   Yes, Ms. Knowlton?
20   A   Back again.  I got several factors.  I have an
21   18-year-old son who is a senior in high school.  He has
22   several appointments with different colleges.
23   Q   Where?
24   A   Different colleges.
25   Q   When are they?
```

1    A    One is April, next Tuesday.  One is the 23rd.

2    Q    That's afterwards.  Okay.

3    A    Several doctors' appointments, April 5th, April 27th.

4    And then there's probably another one involved there.  And

5    there's, also today is the first day of my new job.

6    Q    I'll excuse you.

7              THE COURT:  Juror No. 9 is excused for cause.

8              THE CLERK:  (Out loud)  Your Honor, Juror No. 35.

9                    INQUIRY BY THE COURT OF THE JUROR

10   Q    Yes, Ms. Pearson?

11   A    My husband is an unemployed plumber.  Right now I'm

12   working ten to twelve hour days just to make ends meet.

13   That time out of work would kill us.

14   Q    What sort of work do you do?

15   A    I work in manufacturing.

16   Q    I'm sorry, I don't excuse people for employment.

17             THE CLERK:  (Out loud)  Your Honor, Juror No. 43.

18                    INQUIRY BY THE COURT OF THE JUROR

19   Q    Hello, Ms. Nichol.

20   A    I teach preschool at a small private school.  My hours

21   are 9:00 to 1:00 Monday through Thursday.  We have a very

22   limited substitute, so I think it would present a hardship

23   to the school.

24   Q    And where is the school?

25   A    The school's in Wellesley.  You're welcome to call my

1    director if you would like.

2    Q    No, that's -- we tend not to excuse for employment

3    reasons.

4    A    Okay.

5         **THE CLERK:**  (Out loud)  Your Honor, Juror No. 3.

6              INQUIRY BY THE COURT OF THE JUROR

7    A    Good morning.

8    Q    Mr. Fowler?

9    A    Good morning.  I've got a four-month-old son at home.  I

10   don't know if I can commit to that period of time as far as

11   day care.  I can't afford --

12   Q    Do you have a wife?

13   A    Yes.  Yes.

14   Q    Is she at home?

15   A    She's at home, but for that length of time we can't

16   really schedule that.

17   Q    I'm sorry.

18   A    Huh?

19   Q    I'm sorry.

20   A    Sorry for what?

21   Q    You're not excused, no.

22   A    All right.

23         **THE CLERK:**  (Out loud)  Your Honor, Juror No. 16.

24              INQUIRY BY THE COURT OF THE JUROR

25   Q    Yes, Mr. Newman?

```
1    A    Good morning.  Your Honor, my wife and I are involved in

2    a case in Family Court in Bristol County where we're the

3    guardians of a minor child.  And although there's nothing

4    scheduled, it can be at any time, we could be called back at

5    any time in the near future.  Do you need specifics?

6    Q    Well, we can help with, we can help with your

7    scheduling.

8    A    Okay.

9    Q    All right.

10        THE CLERK:  (Out loud)  Your Honor, Juror No. 27.

11             INQUIRY BY THE COURT OF THE JUROR

12   Q    Yes, Mr. Delfino?

13   A    I run a deli, seafood deli department.  It's going into

14   the business side.  Is there any way of sending a paper to

15   the company?

16   Q    Yes, we can arrange that.

17        MS. SMITH:  The jury clerks will give you an

18   attendance slip that shows that you've been selected for

19   jury duty.

20   A    Thank you.

21        THE CLERK:  (Out loud)  Your Honor, Juror No. 11.

22             INQUIRY BY THE COURT OF THE JUROR

23   Q    Yes, Ms. McKenna?

24   A    Yes, I work for National Grid and I depend on overtime

25   to make ends meet.  So that long of a trial would be hard
```

1    for me.

2    **Q**   Well, it's only a half day, 9:00 to 1:00.

3    A    Uh-huh.

4    **Q**   Okay.

5          **THE CLERK:**   (Out loud)  Your Honor, Juror No. 44.

6                 INQUIRY BY THE COURT OF THE JUROR

7    A    I'll try to speak up this time.

8    **Q**   Yes.

9    A    Hello.  I am the sole babysitter for my grandson so my

10   daughter can work.  And it will be quite a hardship for the

11   family to --

12   **Q**   And how old is the child?

13   A    Twenty months old.

14   **Q**   And you've doing this full-time?

15   A    Full-time.

16   **Q**   But you also are employed full-time?

17   A    No, I'm retired.  Linda Barry.

18   **Q**   Oh, I'm sorry.

19   A    Forty-five.

20   **Q**   Okay, thank you.  All right, I'll excuse you.

21   A    Thank you.

22          **MS. SMITH:**  He had said 44.

23          **THE COURT:**  That's, Juror No. 45 is excused for

24   cause.

25          **THE CLERK:**  (Out loud)  Your Honor, Juror No. 20.

```
 1                    INQUIRY BY THE COURT OF THE JUROR

 2

 3    Q    Yes, Mr. Betz?

 4    A    I'm scheduled to go to New York on the 11th, April 11th,

 5    for work.

 6    Q    For work?

 7    A    Yes.

 8    Q    For a new job or --

 9    A    A new job.

10    Q    And what are you going to be doing?

11    A    It's installing store fixtures.

12    Q    What kind of pictures?

13    A    Store fixtures.

14    Q    Oh, store fixtures.  And who do you work for?

15    A    Pierre Reynold Company.

16    Q    And you start when?

17    A    April 11th.

18    Q    All right, I'll excuse you for cause.

19         Are you moving to New York?

20    A    No, I'm going to be staying there for three days.

21    Q    No.  In that case, no.

22              MR. ROSENKRANZ:  Was he excused?

23              MR. LONDON:  No, he was not excused.  He was

24    leaving the country for three days or something.

25              THE CLERK:  (Out loud)  Your Honor, Juror No. 21.
```

59

| | |
|---|---|
| 1 | |
| 2 | INQUIRY BY THE COURT OF THE JUROR |
| 3 | A    Good morning, your Honor. |
| 4 | **Q**    Good morning. |
| 5 | A    Okay, first of all, my English is not that good. |
| 6 | Second, I have kind of a problem understanding.  And, ah, I |
| 7 | have three questions.  About the 401(k), but I don't know if |
| 8 | it's related to the same thing. |
| 9 | **Q**    Would that in any way affect your ability to be fair and |
| 10 | impartial in this case? |
| 11 | A    Not at all. |
| 12 | **Q**    Okay. |
| 13 | A    And the other question, I been, I was called to serve |
| 14 | the jury at court in Lawrence.  They didn't pick anyone but |
| 15 | I was there ready. |
| 16 | And about the schedule, it interfere with my work. |
| 17 | **Q**    Unfortunately, that happens when you serve on jury duty. |
| 18 | A    But I'm going to have an issue with that? |
| 19 | **Q**    No, we'll give you a piece of paper. |
| 20 | A    Okay. |
| 21 | **Q**    Okay? |
| 22 | A    Yeah.  Thank you. |
| 23 | **THE COURT:**  For the record, I believe this juror |
| 24 | understands English satisfactorily. |
| 25 | **THE CLERK:**  (Out loud)  Your Honor, Juror No. 17. |

1

2                    INQUIRY BY THE COURT OF THE JUROR

3    A    Hi.

4    Q    Good morning.

5    A    Yeah, I have to get my kids off to school in the

6    morning.

7    Q    How many children do you have?

8    A    Two.

9    Q    And their ages?

10   A    Nine and ten.

11   Q    And where are they in school?

12   A    In Murphy Middle School.

13   Q    In Boston?

14   A    Yeah.

15   Q    What time do they have to be there?

16   A    Around 8:15.

17   Q    Well, then you should be able to get here by 9:00.

18   A    Okay, thank you.

19   Q    You're welcome.

20              THE COURT:  She lives in Boston.

21              THE CLERK:  (Our loud)  Your Honor, Juror No. 8.

22                    INQUIRY BY THE COURT OF THE JUROR

23   Q    Yes, Ms. Horton?

24   A    I don't think this will be an issue, but I just wanted

25   to point out that I have airline tickets for May 9th.

1    **Q**    Surely it won't be.

2              **MR. ROSENKRANZ:**  No.

3              **MR. LONDON:**  Lucky her.

4              **THE COURT:**  All right, at this point I will declare

5    the panel indifferent and we will, I will ask you to go back

6    to your tables.  I will have Mr. Duffy select twelve jurors

7    in the box.

8              **MR. LONDON:**  May we simply confirm our list to your

9    list --

10             **THE COURT:**  You may.

11             **MR. LONDON:**  -- to be absolutely sure we --

12             **THE COURT:**  Don, we do the voir dire -- yes, when

13   we do the peremptories we'll be on the other side.

14             **MR. LONDON:**  All right, may we confirm our list to

15   your list?

16             **THE COURT:**  Yes.  All right.

17             **MS. SMITH:**  Do you want me to go through the

18   excuses?

19             **THE COURT:**  Won't you.

20             **MS. SMITH:**  No. 32 --

21             **MR. LONDON:**  No. 32.

22             **MR. ROSENKRANZ:**  32.

23             **MS. SMITH:**  -- is excused.  No. 18 is excused.

24             **MR. LONDON:**  All right.

25             **MS. SMITH:**  No. 9 is excused.

```
 1              MR. LONDON:  I have No. 10.  I don't have No. 9.

 2              MR. ROSENKRANZ:  Yes.

 3              MR. LONDON:  Nine.

 4              MR. ROSENKRANZ:  Nine is excused.

 5              THE CLERK:  No. 42 is excused.

 6              MR. LONDON:  All right.

 7              THE CLERK:  No. 31 is excused.  No. 45 is excused.

 8    No. 40 is excused.  No. 41 is excused.  No. 46 is excused.

 9    No. 37 is excused.  No. 15 is excused.  And No. 24 is

10    excused.

11              MR. ROSENKRANZ:  Is it 15 or 16 that was excused?

12              MS. SMITH:  Fifteen.

13              THE COURT:  Fifteen.

14              MR. LONDON:  Fifteen is excused.  No. 16 is not.

15    Fifteen is excused.

16              MR. OHLEMEYER:  And 18, right?

17              MR. LONDON:  I have No. 18.

18              MS. SMITH:  Oh, yes, No. 18.  Yes.  I said No. 18,

19    he was the second one.  Eighteen.  Yeah.

20              MR. ROSENKRANZ:  18 is excused, right?

21              THE COURT:  Yes, 18.

22              MR. LONDON:  Thank you.

23              (Whereupon the sidebar conference concluded.)

24              THE COURT:  All right, at this time, I declare the

25    panel to be indifferent and I request the clerk to seat
```

1    twelve jurors.

2              Mr. Duffy.

3              **THE CLERK:**  Yes, your Honor.

4              All right, starting in seat number one, which is

5    the first seat in the first row, Juror No. 16, Newman.

6              In seat number two, which is the seat next to

7    number one, second seat, first row, Juror No. 14.  Excuse

8    me -- 14, McGonagle.

9              In seat number three, Juror No. 10, Doyle.

10             In seat number four, Juror No. 26, Jules.

11   Twenty-six, Carmelle Jules.

12             In seat number five, Juror No. 22, Marsello.

13             In seat number six, which will be the last seat in

14   the first row that we seat here today, No. 28, Goujon.

15             Starting in the first seat of the second row, seat

16   number seven, Juror No. 1, Fahrenholtz.

17             In seat number eight, which would be the second

18   seat, in the second row, Bacon, Juror No. 12.

19             In the third seat in the second row, seat number

20   nine, Perez-Macera, Juror No. 21.

21             In the fourth seat, in the second row, seat number

22   ten, O'Neill, Juror No. 39.

23             In the fifth seat of the second row, seat number

24   eleven, Richardson, Juror No. 2.

25             And last, Juror No. 38, Mowday, will be seat number

1    twelve, the sixth seat in the second row.

2              Your Honor, the box is full.

3              THE COURT:  All right, counsel, I'll give you a few

4    minutes to confer and when you're ready I'll see you at the

5    side bar.

6              MR. ROSENKRANZ:  Thank you, your Honor.

7              THE COURT:  To the prospective jurors, at this time

8    counsel are getting ready to exercise what are known as

9    peremptory challenges and each side has a right to exercise

10   six peremptory challenges.  So if you are removed from the

11   jury for a reason of peremptory challenge, you shouldn't

12   take it as anything personal, but counsel have the right

13   under the case law to exercise these challenges.

14             (Pause in proceedings.)

15   SIDEBAR CONFERENCE, AS FOLLOWS:

16             THE COURT:  You have six peremptories for each

17   side.  All right.

18             MR. FROMSON:  So we challenge No. 14, which is seat

19   number --

20             No. 26, seat four.  And 39, which is seat nine.

21             THE CLERK:  I didn't hear that one.

22             THE COURT:  39.

23             MR. FROMSON:  The last one that I -- seat twelve.

24             MR. OHLEMEYER:  I'm sorry, seat fourteen, 39.

25             MR. FROMSON:  And 38.

```
 1                    MR. OHLEMEYER:  All right, your Honor, we'll strike
 2       Juror No. 2.
 3                    MS. BEAVAN:  Seat eleven.
 4                    MR. OHLEMEYER:  Seat eleven.  And Juror No. 21 --
 5                    MS. BEAVAN:  Seat nine.
 6                    MR. OHLEMEYER:  -- who is in seat nine.
 7                    THE CLERK:  Seat 21 is in seat nine.
 8                    MR. OHLEMEYER:  Juror No. 21 in seat nine.  And
 9       Juror No. 2 in seat eleven.
10                    THE COURT:  All right, do they know their numbers?
11                    THE CLERK:  Juror No. -- not necessarily.
12                    THE COURT:  No.
13                    THE CLERK:  In seat, counsel, Juror No. 2 you had
14       already, you had already stricken, that was your first one.
15       You said 2.
16                    MR. OHLEMEYER:  That's right.  And 21.
17                    THE CLERK:  And 21.  Then you said 2 again.
18                    MR. OHLEMEYER:  No, I just have two strikes.
19                    THE CLERK:  You said then 2 --
20                    MR. ROSENKRANZ:  So you get an extra peremptory for
21       that?
22                    THE CLERK:  That's why the clerk shouldn't talk.
23                    THE COURT:  Mr. Duffy, let's confirm:  14, 26, 39,
24       38, 2 and 21.
25                    THE CLERK:  Correct.
```

1              THE COURT:  All right.

2              THE CLERK:  All right, let's go back to our seats

3     and do this again.

4              (Whereupon the sidebar conference concluded.)

5              THE CLERK:  All right, would the following jurors

6     step down:  Juror No. 2, Ms. Richardson; Juror No. 14,

7     Ms. McGonagle; Juror No. 21, Mr. Perez-Macera; Juror No. 26,

8     Ms. Jules; Juror No. 38, Mr. Mowday; and Juror No. 39,

9     Ms. O'Neill.

10             (Whereupon the aforementioned jurors stepped down

11    and left the courtroom.)

12             THE COURT:  All right, Mr. Duffy, would you please

13    fill the remaining seats.

14             THE CLERK:  Yes, your Honor.

15             In seat number two, which is the second seat in the

16    first row, 27, Delfino.

17             In the fourth seat in the first front row, seat

18    number four, Juror No. 44, Benoit.

19             Okay, in the second row, third seat, seat number

20    nine will be Juror No. 13, Lewis.

21             In the fourth seat next to Mr. Lewis in the second

22    row, Juror No. 43, Nichol.

23             Next to Ms. Nichol, in the, in seat number eleven,

24    that is the fifth seat in the second row, Juror No. 20,

25    Betz.

```
1                    In the last seat, which will be the seat number
2          twelve, the sixth seat in the second row, Juror No. 36,
3          Kelley.
4                    THE COURT:  All right, counsel, I'll give you some
5          time to confer.
6                    (Pause in proceedings.)
7          SIDEBAR CONFERENCE, AS FOLLOWS:
8                    MR. FROMSON:  I'm sorry, Judge.
9                    THE COURT:  Take your time.
10                   MR. FROMSON:  Seated in order in the back row 1
11         through 6.
12                   THE CLERK:  1 through 12.
13                   MR. FROMSON:  Right.
14                   MR. ROSENKRANZ:  So this one and that one.
15                   MR. FROMSON:  They go first.
16                   MR. OHLEMEYER:  Right.
17                   THE COURT:  Yes.
18                   MR. OHLEMEYER:  Your Honor, we would excuse No. 13.
19                   MR. FROMSON:  Tell me that again, please?
20                   MR. OHLEMEYER:  Juror No. 13.  Juror No. 43.  And
21         Juror No. 20.
22                   MR. FROMSON:  Who was excused just now?
23                   THE CLERK:  13, 43 and 20.
24                   MR. FROMSON:  Seat five is the front row, 22.
25                   MR. ROSENKRANZ:  Right.  No, you're right.  Mr.
```

```
 1   Marsello.
 2              MR. FROMSON:  Wait.  Is this the way it's laid out?
 3              THE CLERK:  Exactly.
 4              MR. FROMSON:  27.
 5              THE CLERK:  27 is your challenge.  27 is your
 6   challenge.  You got one left.
 7              MR. FROMSON:  Forty-four.
 8              THE COURT:  No, he doesn't have one left.
 9              MR. ROSENKRANZ:  Yes, we took four the first time.
10              THE CLERK:  They have one left.
11              MR. FROMSON:  We used four in the first round.
12              MR. OHLEMEYER:  So you've used -- I have one left,
13   right?
14              THE CLERK:  So 27 and 44 are your challenges.  And
15   that's it.
16              MR. ROSENKRANZ:  No, we have one left.
17              THE COURT:  You have one with 44.  Okay.
18              MR. ROSENKRANZ:  You got one left.
19              THE CLERK:  And defendants have got one left.
20              MS. SMITH:  Right.
21              MR. FROMSON:  Do we have -- no, no, I thought --
22              THE COURT:  Let's confirm on this round, 13, 43,
23   20, 27, and 44.
24              THE CLERK:  Correct, your Honor.
25              MR. OHLEMEYER:  All right, thank you, your Honor.
```

```
1              (Whereupon the sidebar conference concluded.)

2         THE COURT:  The following jurors please step down.

3              Juror No. 13, Mr. Lewis; Juror No. 20, Mr. Betz;

4    Juror No. 27, Mr. Delfino; Juror No. 43, Ms. Nichol; Juror

5    No. 44, Ms. Benoit.

6              (Whereupon the aforementioned jurors stepped down

7    and left the courtroom.)

8         THE COURT:  All right, Mr. Duffy will you refill

9    those seats.

10        THE CLERK:  Yes, your Honor.

11             In seat number two, in the front row, Juror No. 3,

12   Fowler.

13             In seat number four, in the front row, Juror

14   No. 11, McKenna.

15             Moving to the back row, the third seat in the back

16   row, Juror No. 29, Daigle.

17             Next to Ms. Daigle in the fourth seat in the second

18   row, No. 25, Cruikshank.

19             And next to Ms. Cruikshank in the fifth seat in the

20   back row, last is Juror No. 30, Jalbert.

21             All right, your Honor, the box is full.

22   SIDEBAR CONFERENCE, AS FOLLOWS:

23        MR. ROSENKRANZ:  They go first with the challenge.

24        MR. OHLEMEYER:  Your Honor, we'll accept the panel.

25        THE COURT:  All right.  Counsel are content.  All
```

1     right.

2                 MR. OHLEMEYER:   Thank you.

3                 (Whereupon the sidebar conference concluded.)

4                 THE COURT:   At this time, I want to make a few

5     remarks to those of you who remain seated in the courtroom

6     but were not selected.   And I want to thank you very much

7     for coming here today.   I know you have busy lives, you have

8     careers, families and plenty of other obligations.   But it

9     is the one thing that makes our system work.

10                As a federal judge over the years I've had the

11    opportunity to make more than 20,000 people American

12    citizens.   And when I do I tell them about certain

13    responsibilities that they have.   The first, to vote, and

14    the second, to serve on a jury if called for matters of

15    civil and criminal liability in this country are determined

16    by a jury of your peers, and today you are here to serve in

17    that role.   And although you were not selected to serve, you

18    came and you were willing to participate in the process.

19                About a year ago Chief Justice Roberts named me to

20    the Judicial Conference Committee on International Judicial

21    Relations.   And I travel all over the world and speak to

22    judges.   And the one thing that fascinates judges in most

23    countries is the jury system, because they don't have it.

24    And they wonder how a jury of lay people can decide things

25    better than a panel of professional judges.   And I tell them

1   the jury usually gets it right.  And that is because people

2   like you take the time and are willing to make the

3   commitment.  We thank you for your service and you are

4   excused at this time.

5           (Whereupon the remaining jurors left the

6   courtroom.)

7           **THE COURT:**  Mr. Duffy, I would like you to swear

8   the jury at this time.

9           **THE CLERK:**  Yes, your Honor.

10          Jurors, please stand and raise your right hands.

11          Do you each and every one of you solemnly swear

12  that you will render a true verdict according to the

13  evidence and the law given you, so help you God?

14          **THE JURY:**  Yes.

15          **THE CLERK:**  Thank you.

16          **THE COURT:**  Please be seated.

17          Members of the jury, as I told you, the trial will

18  be begin on Monday --

19          **MS. SMITH:**  On Wednesday.

20          **THE CLERK:**  Oh, on Wednesday.  Sorry.  It will be

21  your duty as members of the jury to find the evidence from

22  the facts that are given to you.  You, and you alone, are

23  the judges of the facts.  You will then have to apply to

24  those facts the law as the Court will give it to you.  You

25  must follow that law whether you agree with it or not.

1          I want to tell you a few things about your conduct

2     as jurors.  First, I instruct you that during the trial you

3     are not to discuss the case with anyone or to permit anyone

4     to discuss it with you.  Until you retire to the jury room

5     at the end of the case to deliberate on your verdict, you

6     simply are not to discuss the case.

7          Second, do not read or listen to anything touching

8     on this case in any way.  And if anyone should attempt to

9     talk to you about the case or communicate with you in any

10    way about it bring it to the Court's attention immediately.

11         Third, don't do any research on your own or make

12    any independent investigation about the case, and that

13    includes any kind of Google or Internet search of any type.

14    Simply do not do any research.  And most important, do not

15    form any opinion until all the evidence is in.  Keep an open

16    mind until you commence your deliberations at the end of the

17    case.

18         At this time, we will stand in recess.  Mr. Duffy

19    will show you to the jury room and go over any particulars

20    with you about reporting on Wednesday.

21         I remind you that the traffic in this area is

22    sometimes congested in the morning, and in order for

23    everyone to start at 9:00, we ask you to arrive promptly.

24         All rise for the jury.

25         (Whereupon the jury left the courtroom.)

1            **THE COURT:**  Counsel, be seated for a moment.

2            I include now the remarks about Internet search at

3     the very outset because I think there's a tremendous

4     temptation today just to go to the Internet and search

5     anything you may come in contact with.  So I don't know

6     whether it's Judge Young's practice, but it has become my

7     practice to tell them that immediately rather than waiting

8     for the beginning of the trial.

9            All right.  Any other matters you wish to bring to

10    my attention at this time?

11           **MR. LONDON:**  No, your Honor.

12           **MR. OHLEMEYER:**  No.  Thank you, Judge.

13           **THE COURT:**  All right, then we will stand in

14    recess.

15           (Adjournment.)

16

17

18

19

20

21

22

23

24

25

1               **C E R T I F I C A T E**

2

3

4          I, Donald E. Womack, Official Court Reporter for

5     the United States District Court for the District of

6     Massachusetts, do hereby certify that the foregoing pages

7     are a true and accurate transcription of my shorthand notes

8     taken in the aforementioned matter to the best of my skill

9     and ability.

10

11

12

13

14              /S/ DONALD E. WOMACK 4-12-2010
             _____
15              DONALD E. WOMACK
              Official Court Reporter
                P.O. Box 51062
16        Boston, Massachusetts 02205-1062
             womack@megatran.com

17

18

19

20

21

22

23

24

25