# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

HARDEN MANUFACTURING CORPORATION . CIVIL ACTION NO. 04-10981-PBS
    Plaintiff             .
                         . BOSTON, MASSACHUSETTS
        v.             . JUNE 8, 2010
                         .
PFIZER, INC., et al          .
    Defendants           .
. . . . . . . . . . . . . . . . . .

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

Kenneth B. Fromson, Esquire
Andrew Finklestein, Esquire
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY 12550
800-634-1212

Mark S. Cheffo, Esquire
Catherine Stevens, Esquire
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY 10036
212-735-3000
mark.cheffo@skadden.com

Levi Boone, III, Esquire
Boone Law Firm PA
401 West Sunflower Avenue
Cleveland, MS 38732-1772
662-843-7946
LBoone@BooneLawFirm.com

Court Reporter:

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

## <u>I N D E X</u>

Proceedings                                                          3

3

1                    **P R O C E E D I N G S**

2          CASE CALLED INTO SESSION

3                THE CLERK:  Today's June 8th.  The case of In re

4     Neurontin, Civil Action 04-10981 will now be heard before this

5     Court.  Counsel please identify themselves for the record.

6                MR. FINKELSTEIN:  Andrew Finkelstein, Finkelstein &

7     Partners, for the plaintiffs.

8                MR. FROMSON:  Kenneth Fromson, Finkelstein &

9     Partners, for the plaintiff.

10                MR. BOONE:  Levi Boone, Boone Law Firm, Cleveland,

11     Mississippi, plaintiff.

12                MR. CHEFFO:  Mark Cheffo, Skadden Arps, Pfizer.

13                MS. STEVENS:  Catherine Stevens, Skadden Arps, for

14     Pfizer.

15                THE COURT:  All right.

16                If you want to go do that, go ahead.

17                So, I think there are a couple things.  It's just a

18     scheduling issue we have before us, right?

19                MR. CHEFFO:  I think that--

20                THE COURT:  The scheduling of all the products

21     liability cases after you've made your filings.

22                MR. CHEFFO:  That's right.  We were just before Judge

23     Saris a few minutes ago.

24                THE COURT:  Oh, you were.  Good.

25                MR. CHEFFO:  Yes, and in fact I think her clerk is,

4

1    one of her clerks is here so we I think it's fair to say we

2    advised her that we were going to be dealing with some of the

3    scheduling issues and I know that you and she have been in

4    close communication but my understanding today at least before

5    Your Honor is the scheduling and we had a joint proposal and it

6    really I think addresses Mr. Boone and Mr. Schwartz's case--

7              THE COURT:  Revised from what you've already

8    submitted?

9              MR. CHEFFO:  Well, no.  I mean I think we made, they

10   weren't, I'm sorry they weren't joint.  They were separate--

11             THE COURT:  Right.

12             MR. CHEFFO:  --competing proposals.

13             THE COURT:  I mean they were very similar.  It was a

14   little different timing, a little pace.

15             MR. CHEFFO:  Exactly.

16             THE COURT:  But similar.  What did Judge Saris have

17   to say to you?

18             MR. CHEFFO:  She said take as much time as you want.

19   No.  She said, she shared, you know, I expressed to her that

20   you had basically put us on a schedule for the first which she

21   was aware of.  And then I indicated that you had said that, you

22   know, you want us to group cases such that we can really come

23   to an end on, you know, the cases that remain.  What she said

24   was - I don't know if Mr. Fromson has reported but of the 40 or

25   so, there was 80 Finkelstein cases in the first wave.  Forty

1   they're going to either dismiss or withdraw.

2           THE COURT:  Oh.

3           MR. CHEFFO:  She indicated as to those she's going to

4   direct us to mediation on the 40 cases or so.

5           THE COURT:  That are being dismissed or the 40 that

6   are left?

7           MR. CHEFFO:  Forty that are left.

8           THE COURT:  Okay.

9           MR. CHEFFO:  The other ones are just being dismissed.

10          THE COURT:  Gone.

11          MR. CHEFFO:  Or they're withdrawn.  There's no

12  payment or no--

13          THE COURT:  Right.

14          MR. CHEFFO:  --settlement or anything.  And then with

15  respect to Mr. Boone's and Mr. Schwartz's cases, we didn't get

16  into the nitty gritty of, you know, the 30 versus 15, but I

17  think she said she wants to have us proceed in the pace that

18  Your Honor, you know, suggests and then at the end of that

19  process she'll figure out whether mediation is appropriate

20  before she sends the cases back.  But she's going to do Tier I,

21  Track I and then send the cases back if they don't resolve

22  themselves.

23          THE COURT:  So she's going to send the 40 of the 80 -

24  of the 130, okay, 80 are Finkelstein cases, 40 are going away.

25  They're going to be dismissed but when?

1          MR. FROMSON:  On that note, Your Honor, just for

2  clarity of the approximate 40 cases our proposal is, as Mr.

3  Cheffo explained, to dismiss or seek to withdraw in those cases

4  where a plaintiff does not agree to dismiss so that the

5  plaintiff can proceed pro se or seek out counsel, very similar

6  to the previous certification process.

7          THE COURT:  When we did the cert.

8          MR. FROMSON:  So--

9          THE COURT:  When will you make whatever filing that

10  does that?

11          MR. FROMSON:  Judge Saris - we proposed a 30-day date

12  from today to advise you of the date, rather the status.  Go -

13  I'm sorry, Andrew--

14          MR. FINKELSTEIN:  Just advise that we've already

15  communicated with the clients.

16          MR. FROMSON:  Right, we've sent communications to the

17  client.  But the judge wanted us to coordinate with you for a

18  schedule.

19          THE COURT:  Okay.

20          MR. FROMSON:  So we proposed 30 days--

21          THE COURT:  So--

22          MR. FROMSON:  --from today to let you know what the

23  status is.  In other words within 30 days we'll know whose

24  agreed, who doesn't agree and which cases we need to make a

25  motion.  And then from that date we'll make our motion.

7

1          THE COURT:  So how about 30 days, for those 30 days

2    for any that you're going to move to dismiss--

3          MR. FROMSON:  Right.

4          THE COURT:  --to file the motion to dismiss.  And if

5    you're not going to move to dismiss you're going to file a

6    motion, you're going to seek to withdraw.  How much more time

7    do you need to file the motions to withdraw?

8          MR. FROMSON:  I think if we just had a date of 45

9    days total--

10         THE COURT:  Fine.

11         MR. FROMSON:  --we would be able to know which cases

12   we're able to dismiss on consent and which cases we're going to

13   be able to actually move to withdraw.  So just one straight

14   date of 45 days from today we could have our filings of

15   dismissals with consent.

16         THE COURT:  All right.

17         MR. FROMSON:  And make a motion on notice to the

18   plaintiffs that have not agreed--

19         THE COURT:  Okay.

20         MR. FROMSON:  --or otherwise have been silent and we

21   haven't be able to find them.

22         THE COURT:  All right.  As to the ones that are left

23   you're going to go to mediation together?

24         MR. FROMSON:  That's the understanding in October.

25         THE COURT:  And have you, where do you want to do

8

1    that?

2            MR. FROMSON:  The parties are to confer and agree

3    upon a mediator and if we can't we were going to have a process

4    to submit to Judge Saris for selection.

5            THE COURT:  Fine.

6            MR. FROMSOM:  To that there's no issue.

7            THE COURT:  Okay.  So you're set with that.  All

8    right.  As to the remainder of the 130 cases are just going

9    forward, they're not going to be part of that mediation?

10           MR. FROMSON:  That's correct, Your Honor.  When we

11   talk about the remainder, if I may on behalf of the MDL

12   Steering Committee, there are the non-Boone and non-Schwartz

13   cases.

14           THE COURT:  Right.

15           MR. FROMSON:  And so those are out there without a

16   discovery schedule so what we proposed in our supplement of,

17   which is number I think it's--

18           THE COURT:  I thought, hold on, let me just--

19           MR. FROMSON:  Go ahead.

20           THE COURT:  --this is what I thought.  I thought

21   there were 130 cases that we're going to be done with

22   preliminarily with template discovery, with plaintiffs,

23   prescribers and sales reps by September 14th.  Those 130 were

24   all of your 80--

25           MR. FROMSON:  Yes.

1              THE COURT:  --were the other cases, these individual

2    cases brought by individual lawyers.

3              MR. FROMSON:  Yes.

4              THE COURT:  And some Boone and Schwartz cases.

5              MR. FROMSON:  Yes.

6              THE COURRT:  Not too many.

7              MR. FROMSON:  Yes, Your Honor.

8              THE COURT:  And so of those 130, 80 we know what's

9    happening.

10             MR. FROMSON:  Yes.

11             THE COURT:  About 40 you're going to either dismiss

12   or file a motion to withdraw.  On about 40, however it breaks

13   out, you're going to go to mediation with Mr. Cheffo.  You'll

14   work that out.  You'll find a mediator.  You'll propose it to

15   Judge Saris and the like.  That leaves the Boone and Schwartz

16   cases within, some Boone and Schwartz cases within the 130 and

17   some others.

18             MR. FROMSON:  Yes.

19             THE COURT:  The other ones then they're just going

20   forward and on September 14th they'll be done with that

21   discovery and then we're going to send them on our way.

22             MR. FROMSON:  With the exception of those clients who

23   may seek to go pro se or seek other counsel they may need more

24   time.

25             THE COURT:  I understand.  The ones who--

10

1          MR. FROMSON:  Okay.

2          THE COURT:  --there's a withdrawal it's a different

3   matter.

4          MR. FROMSON:  Right.  So there are still other cases

5   that are not in the, as you proposed as the 130.  It's a little

6   less but there are still other cases that are not in the list

7   of approved cases that have to be done by September.

8          THE COURT:  Who exist who isn't in the 130 and is not

9   represented by Mr. Boone or Mr. Schwartz?

10         MR. FROMSON:  There are a number of cases.  I think

11  there are less than 30, okay, of people who were not on that

12  original list.  I'll give you an example.  There's a firm off

13  the top of my head, Garcia and Karam, may have had a number of

14  cases that were in the list but they may have cases that are

15  not on the list.  So, that's in the list.  So what we proposed

16  is for any case not on that list of 130 and which is also a

17  non-Boone and non-Schwartz case it needs to be on a discovery

18  schedule.  So we proposed a one-year completion date from

19  November of 2010 for all those other cases.  And that was

20  document, a joint submission by defense counsel and plaintiffs'

21  counsel, No. 2825.

22         Also, the reason for the one-year proposal is that

23  there are still cases, very few, that are being filed within

24  the last month or so, brand new cases that are coming in.

25         THE COURT:  Did you discuss that one year with Judge

1    Saris?

2            MR. FROMSON:  No, we didn't discuss – she deferred

3    everything to you.

4            THE COURT:  Okay.

5            MR. FROMSON:  Okay.

6            MR. CHEFFO:  The only thing I will say, I tried to,

7    I'll paraphrase a bit, I said I think to her that at one point

8    you said that, you know, you want, that she wanted this wrapped

9    up before the end of 2011, hopefully before--

10           THE COURT:  2010.

11           MR. CHEFFO:  No, 2011 for all of the other.

12           THE COURT:  Yeah.

13           MR. CHEFFO:  But I mean I want to suggest I think

14   fairly characterize, I mean she didn't affirm and say that's

15   great but she didn't say, you know, that's kind of wacky so.

16           THE COURT:  I, this is news to me, but given her

17   schedule this afternoon and my schedule we didn't actually get

18   to communicate this afternoon and so I'll talk to Judge Saris,

19   but, all right, so you're proposing essentially go to mediation

20   as to what's left of cases represented by the Finkelstein law

21   firm.  That there's 30 odd cases, somebody will put together a

22   list and those put on a one year track that begin November 1,

23   2010 and then at the end of that one year track they'll have

24   done the discovery that these 130 will have done by September

25   14th and then that would leave the Boone and Schwartz cases,

12

1   that will leave some individual pro se cases and there are

2   some that are still hanging around from the last certification.

3   And then that would leave some more, presumably there's going

4   to be some that come out of this process you describe and any

5   new ones that came in.  Does that summarize what's out there?

6           MR. CHEFFO:  Yeah.  The quick answer is yes.  The

7   only thing I will just point out is I think at our last

8   conference call we said we're shooting and there's going to be

9   cases that we think will be done by September 14th.  I just, I

10  think it's not our expectation that the full 130 even minus the

11  40 will all be done by September 14th but, you know, I think

12  we're going to try to--

13          THE COURT:  You got 80 out because you got 40 that

14  are going away and you got 40 that you're going to mediate and

15  you're going to resolve so that only leaves 50.

16          MR. CHEFFO:  Well the 40, no, no the 40 we're still

17  going strong on.  Those are part of the September 14th--

18          THE COURT:  Right.  I know.

19          MR. CHEFFO:  So--

20          THE COURT:  But--

21          MR. CHEFFO:  I'm not complaining.  I'm happy that we

22  reduced the number.  I'm just saying that with summer and

23  doctors and things, you know, I just want--

24          THE COURT:  Right.

25          MR. CHEFFO:  --Your Honor to know that, you know,

13

1    it's not going to be September--

2          THE COURT:  Only one of these doctors has filed a

3    motion to quash.  That's--

4          MR. CHEFFO:  Well--

5          MR. FROMSON:  We should have had another this morning

6    apparently.  I don't know that it was ever filed but we heard

7    rumblings.

8          THE COURT:  Oh.  I haven't, well if it was filed

9    today I wouldn't have seen it yet.

10          MR. FROMSON:  Right.  That position would have taken

11    place already.

12          THE COURT:  Oh.  All right.  I understand what you're

13    saying.  I really want to meet the September 14th deadline.  I

14    know you're all working hard on it.  So if we don't meet it

15    we'll cross that bridge when we get there, but I think it would

16    be best if we could meet it.

17          With respect to the pro se cases, I think what I'd

18    like to do is get a list of them.  I think that the list should

19    be two parts.  There's those that are out there now that are

20    already pro se and then added to it are whatever ones that get

21    added from this process, Mr. Fromson.  Maybe what makes sense,

22    and, Mr. Cheffo, you might have to take the lead on this

23    because once they're pro se the Finkelstein law firm is out of

24    it, is I think what I want to do with those cases while the MDL

25    is here is have a hearing and send notice to all those people.

14

1   They're here, they're pro se.  They have a choice.  They can

2   litigate the case themselves or they can hire counsel, but the

3   cases have to move forward.  And so once we have the list I

4   think it makes sense to wait until we have--

5           MR. FROMSON:  Forty-five days.

6           THE COURT:  --the 40 cases or so resolved.  So we

7   have one complete list including them and we do it once but

8   we'll do it once.  But we'll have a hearing.  I think I'll need

9   to set a schedule.  I'm not sure whether I need to have a

10  hearing at which they have to appear in person as much as I

11  think I set a schedule for what has to happen and then we go

12  forward in those cases and people need to, they need to carry

13  the water on their part of the case and if they don't, they

14  don't, and the cases will be dismissed for failure to comply

15  but they're entitled obviously to the opportunity and I would

16  expect that they, if they're, they all are interested enough

17  that they want to proceed so perhaps they will.

18          So why don't we say this, once – why don't you submit

19  a list.  In 45 days they're going to file the motions to

20  withdraw or dismiss.  Why don't you submit, 45 days from today

21  would be, it's roughly – what is it?  Near the end of July.

22          THE CLERK:  July 23rd.

23          THE COURT:  July 23rd.  So say July 23rd you'll file

24  the motions to dismiss or withdraw.

25          MR. FROMSON:  Your Honor, would it at least make

15

1  sense for them to do it July 24th after our motions are made?

2          THE COURT:  Oh, theirs - that's for you, July 23rd.

3          MR. FROMSON:  Mine's July 23rd, okay.

4          THE COURT:  Theirs is going to be later than that.  I

5  think you should do the list.  What I want from you is two

6  things.  One, the list and the other is your proposal about how

7  to deal with those cases, should I have a hearing, should I

8  not, should I just set a schedule.  And we need to, we're going

9  to have to provide notice to all these people of what the

10 schedule is by mail cause they're not on the ECF.  So what do

11 you say, July 23rd, I don't know, August 7th is that enough time?

12         MR. CHEFFO:  That sounds reasonable, Your Honor.

13         THE COURT:  All right, August 7th to provide the list

14 to me of the pro se cases and the recommendation as to what to

15 do about them.  All right, that takes care of everything other

16 than the Boone and Schwartz cases.

17         I looked at the schedules, the competing schedules

18 that you both submitted and I guess I have a preliminary

19 question for you, Mr. Boone, which is, if I'm, just correct me

20 if I'm wrong, but if I believe - you have 292 plaintiffs left

21 who aren't in the 130.  You have a couple I think some in the

22 130?

23         MR. BOONE:  That's correct.

24         THE COURT:  But 292 outside the 130.  Of those 292

25 they're in what, four or five cases?

1          MR. BOONE:  Three cases.

2          THE COURT:  Three cases?

3          MR. BOONE:  Yes.

4          THE COURT:  All right.  And those three cases are

5    pending in how many, one district court.  I mean they were

6    transferred here but they were all filed in one district court?

7          MR. BOONE:  No, I believe they were filed in three

8    district courts in Mississippi.

9          THE COURT:  All right, so they're in three different

10   districts in Mississippi?

11         MR. BOONE:  Yes.  Yes, Your Honor.

12         THE COURT:  All right, so in front of three different

13   judges.

14         MR. BOONE:  I believe that's correct.

15         THE COURT:  Okay.  All right.  Are those three courts

16   spread across the state of Mississippi?  I'm trying to remember

17   how the districts are divided up.

18         MR. BOONE:  Um--.

19         THE COURT:  That's all right.  They're in three--

20         MR. BOONE:  I can't, they're in three different--

21         THE COURT:  --three divisions or three districts?

22         MR. BOONE:  They're in; I believe they're in three

23   districts.

24         THE COURT:  Three different districts.

25         MR. BOONE:  Three different districts.  I think the

17

1   southern district--

2           THE COURT:  Northern, middle and southern.

3           MR. BOONE:  Yes.

4           THE COURT:  Okay.  All right.

5           MR. BOONE:  Cause we have to have plaintiffs--

6           THE COURT:  Right.

7           MR. BOONE:  --within the district.

8           THE COURT:  And all of those plaintiffs, all of those

9   292 people are from Mississippi, right?

10          MR. BOONE:  That's correct, Your Honor.

11          THE COURT:  Okay.  So here's what I'm wondering

12  about.  All right, you have got 292 plaintiffs putting aside

13  what's in the 130 all out of Mississippi.  There are 100 and,

14  probably 130 about, give or take 25, of plaintiffs in this

15  entire MDL from the whole rest of the country other than

16  represented by Mr. Schwartz from all the other states.  And so

17  what I'm wondering is before we embark on a process where

18  everyone which is going to be – how many lawyers in your law

19  firm?

20          MR. BOONE:  I'm the lawyer right now, Your Honor.

21          THE COURT:  You're the lawyer, okay.  Before we

22  embark on a process of depositions at the pace of what you

23  propose and Mr. Cheffo proposes though there's some

24  differences, there's something in the order of 45 depositions a

25  month or more for potentially a year and a half to, or more if

18

1    I do my math correctly.

2            MR. BOONE:  I think 30 is the maxi think.

3            THE COURT:  Thirty, that's cases though.  Each case

4    is going to have a plaintiff, a prescribing physician and a

5    sales rep. at a minimum and it could be more than one

6    prescribing physician, it could be more than one sales rep.,

7    but a minimum I think the way you both described it was 30

8    claims.  The way I understand that to be 30 cases a month.

9    That would be potentially – now not all the depositions I'm

10   sure are going to be, you know, full day depositions but am I

11   wrong about that, Mr. Finkelstein?

12           MR. FINKELSTEIN:  I think you are with all due

13   respect.

14           THE COURT:  All right.

15           MR. FINKELSTEIN:  I'm not saying anything about

16   Skadden but they do like to ask questions.

17           THE COURT:  So--

18           MR. CHEFFO:  Well, I mean and--

19           THE COURT:  I'm not, I'm not--

20           MR. CHEFFO:  --I know you understand--

21           MR. FINKELSTEIN:  I don't mean that disparatively at

22   all.

23           MR. CHEFFO:  No, no, I didn't take it disparative –

24   I'm just saying I think it's fair to say just, Your Honor, for

25   scheduling cause I think this is important that we get this out

19

1    because I've been saying the same thing.  I think it's fair to

2    say that, you know, plaintiffs you should probably assume are

3    going to be a full day.  I think our experience with

4    prescribing people can be two or three hours but some, probably

5    need to block out a half a day.

6              THE COURT:  Right.

7              MR. CHEFFO:  And sales reps. depositions are anywhere

8    from an hour to three hours typically, is that fair, Ken?

9              MR. FROMSON:  That's fair.

10             MR. CHEFFO:  So--

11             THE COURT:  So it's roughly two days of depositions

12   minimum per case.  That's assuming one prescribing physician

13   and one sales rep.

14             MR. CHEFFO:  That's correct.

15             THE COURT:  How many of these cases have more than

16   one prescribing physician and more than one sales rep.?

17             MR. FINKELSTEIN:  Our experience is the majority.

18             THE COURT:  All right.  So even if I say I took the

19   minority view, which I would guess would be incorrect as to

20   most cases, but just to be the least amount of depositions,

21   you're going to have three depositions in two days per case.

22   What you proposed was, if I remember right, I think you were

23   saying, Mr. Cheffo, 15 Boone cases a month and, when you got

24   the depositions.  And, Mr. Boone, I think you were saying, was

25   it 10 or 20?  You were saying 20.  And, but that's 45 to 60

20

1   depositions a month and that's significant but even at that

2   pace, I'm not saying I agree to that pace, I'm not saying that

3   pace is fast enough, but that pace is going to take at 292

4   cases doing 20 a month it's going to take 15 months.  So what

5   you're proposing Mr. Boone is that for 15 months beginning

6   December 1st you're going to be in deposition every single, at a

7   minimum every single day for the next 15 months on Neurontin

8   cases.  Did I miss something in my math?

9           MR. BOONE:  I don't think so, Your Honor.  Now, I

10  am--

11          THE COURT:  So let me just explain a little bit more

12  first.  I'll give you a chance, don't worry.

13          MR. BOONE:  Yes.

14          THE COURT:  So that's 15 months of depositions on

15  this case during which time you obviously can all settle at any

16  time, but there haven't been a lot of settlements that I'm

17  aware of in this litigation so far and unless you end up

18  settling them on a rolling basis that's 15 months of deposition

19  and all the transcripts you have to order and all the expense,

20  that doesn't leave you a lot of time to be doing any other

21  cases.  And then when you're done with that that's just the

22  common discovery.  Then there's case specific summary judgment

23  motions and cases returned for trial.

24          Now obviously these three judges aren't going to try

25  292 cases all at the same time because they can only each try

21

1   one case at a time.  But they're going to want to move these

2   cases.  So what I come back to when you have 292 never mind

3   what's in the 130, you have a lot more cases than everybody

4   else.  You have a lot more people who are aggrieved from their

5   taking of Neurontin in Mississippi than the entire rest of the

6   country combined for products liability purposes.  And I make

7   that point to you for this reason among others.  One, you

8   should think about that and what it says.  But two, I mean

9   maybe Pfizer was particularly active in Mississippi, I don't

10  know, but it's significantly different and it does make one

11  wonder about it.  And particularly when I now am confronted

12  with scheduling and I've seen throughout this litigation the

13  Finkelstein law firm some percentage of their cases when I went

14  through the certification process went away cause they just

15  couldn't find the plaintiffs.  And another set of cases they've

16  reviewed them, what I take from what they've indicated is that

17  half their 80 cases they essentially think are not viable cases

18  and that what I don't know cause I haven't seen it, but they're

19  either going to dismiss them with the agreement of their client

20  or they're going to seek to withdraw cause at this stage after

21  all the time and effort they put in they've decided those 40

22  cases are not viable and they're not going to do it.  That's

23  half of their cases of which they had one-fifth of the number

24  of cases that you have and from a larger population area, I

25  don't know if their cases come from just New York or all over

1    the country, but--

2           MR. FINKELSTEIN:  All over the country.

3           THE COURT:  All over the country.  And so it would

4    suggest the possibility of greater selectivity in the cases

5    they brought and they were still at this stage of the game

6    dropping at a rate of 50%.  So what - one suggestion I have to

7    you cause we're, these cases are going to get done and you

8    brought them and I feel if I could use a word, empathy, for

9    being a solo practitioner and facing 292, let's call it 300 to

10   round it up cause I'm not so great at math, 900 depositions if

11   there's just one prescribing physician and one sales rep or at

12   a reasonable calculation 1,800 days of depositions, okay, to

13   handle in these cases.  That's a lot of deposition time for one

14   lawyer and that's assuming every case is one.

15          And basically what I hear from all these lawyers who

16   have been doing these depositions is that's an unreasonable

17   assumption.  Some percentage are going to be one.  I don't know

18   if that's 20% but some, more than 50% are going to have more

19   than that.  So it's probably a fair estimate to say three days

20   of depositions for each of these.  That's even more deposition

21   time.  That's a huge time.  So what I, in one way or another

22   what's going to happen before we embark on everything at a

23   minimum it's an opportunity to go over the cases to be sure

24   that we're going to go down this road for each and every case.

25   If we are, we are.  If the plaintiffs brought the case and they

23

1   want to bring it and you want to do it that's fine, but what

2   everybody has to understand is that it's going to happen and

3   the opportunity to call the cases is now.

4          MR. BOONE:  I understand, Your Honor.

5          THE COURT:  How much - go ahead.

6          MR. BOONE:  I was going to respond but if the Court--

7          THE COURT:  If you want to go ahead.

8          MR. BOONE:  Well, I was going to say, Your Honor,

9   that each of - first of all we eliminated around 100 of our

10  clients during the certification process.

11         THE COURT:  Right.  I know you did.

12         MR. BOONE:  Okay.  All right.  And the remainder of

13  our clients, Your Honor, are ingestors.

14         THE COURT:  They're what?

15         MR. BOONE:  They're ingestors, off label ingestors of

16  Neurontin.

17         THE COURT:  Okay.

18         MR. BOONE:  And, Your Honor, they all have suicide

19  ideation and most have ineffective use of the drug in that they

20  have continued pain from the underlying condition and

21  additionally has attempted suicide.  I'm going to get right to

22  - what I'm trying to say is, is that, Your Honor, these people

23  all deserve the right to have their case tried before Pfizer.

24  And what I want to say is that Pfizer is squeezing these little

25  people out because of the money that's supposedly involved.

24

1  Now Judge Saris did say today that she was inclined to grant a

2  motion that would allow a preservation deposition of the

3  generic general causation expert which, but she will allow the

4  individual district to decide whether or not it would be

5  admissible, which that would eliminate a lot of the cost

6  involved in this case.  Now--

7           THE COURT:  How would that eliminate any of these

8  three depositions?

9           MR. BOONE:  It wouldn't eliminate any of those

10  depositions but I'm talking about the overall case, Your Honor,

11  and we, Your Honor, I'm the, I'm going to get some help on

12  these cases also.  But what I don't want to do at this point is

13  agree to dismiss cases that meet--

14           THE COURT:  I'm not asking you to--

15           MR. BOONE:  --all of the prongs.

16           THE COURT:  I'm not asking you to dismiss a single

17  case that, which meets the following criteria, one, that at

18  this stage of the game given the discovery and all that's

19  happened, you're satisfied is viable, all right.  There's no

20  motions to dismiss cases.  If you think it's viable and, you

21  know, review of the discovery, fine.  And second, that you can

22  adequately litigate, all right.  In other words you have a lot

23  of cases on your plate.  Preservation of the expert, you know,

24  fine, but that doesn't change the three depositions.  And three

25  times 300 is 900 and those have to be done at some point in

25

1   time.  If you think you can manage that be it on your own or

2   with help or however you're going to do it so be it.  It just,

3   I don't ordinarily have this conversation with a lawyer because

4   ordinarily people are coming in and there's two or five or

5   eight depositions in a case.  We're not talking about 900.

6           I'm not having the conversation as much with

7   Mr. Cheffo who has to do the 900 depositions as well for one

8   obvious reason.  Mr. Cheffo represents two.  One, he's at a

9   large law firm and he has lots of people at his disposal who he

10  can tell to do, show up and prepare for depositions and do

11  whatever he wants to do.  They have armies, right.  And second,

12  because he represents a large client with, who is going to, who

13  is in the case and my inference is can afford to pay what it

14  takes to defend the depositions and if they have to do it, they

15  can be there.  It may be a strain even on them to do 60 or 75

16  depositions or whatever it is, a month in this case for 15

17  months but I have no doubt that they've discussed it, they've

18  talked to in-house counsel, they've thought about it and

19  they'll do it.  My thought was you were probably on your own.

20  It's more difficult.  If Mr. Cheffo were here by himself and

21  there wasn't Skadden Arps and Pfizer behind him, I'd be having

22  the same conversation with him about whether he could do 900

23  depositions.

24           MR. BOONE:  Well, I certainly understand.  Your

25  Honor, I'm not opposed to looking at the 307 again to see--

26

1      THE COURT:  I'm not going to make you go through

2 another certification process, okay, expressly.  I'm just

3 telling you that this is an issue and you should be sensible to

4 think about, you've got to be aware of this, this is a big

5 undertaking and you ought to be prepared for it, okay.

6      MR. BOONE:  I'm asking the Court to understand that

7 these 300 people ought to be able to present their cases and

8 the attorney ought to be able to do it within a reasonable

9 period of time.  I mean not slow, I mean really working at it

10 but I don't, I would ask the Court that it not be to the point,

11 you know, that if the--

12      THE COURT:  I'm not trying to break you and I'm not

13 trying to break the cases by the schedule that I impose and I'm

14 not going to do that.  That's not going to be my goal and I'm

15 going to try to avoid that result.  But you have to understand

16 we're five years into my involvement in this case and as I

17 understand it, and you're not the only one who suffers from

18 this problem so I'm not singling you out but we're five years

19 into it and the template discovery is not done in every case.

20 And the medical authorizations aren't done in every case and it

21 was my order I believe that when I put it in place that every

22 new case that came here was going to have the template

23 discovery and the basic things done within 60 days of arrival

24 here and that the ones that were already here would be done in,

25 I don't remember how long I said now, but some reasonable

27

1   period of time after that date.  And now that – and you're not

2   the only one who hasn't done all that and I'm not singling you

3   out.  It is what it is, but you've known this day was coming

4   for a while and we're still in the position of that.  So I'm

5   just – it doesn't give me a lot of comfort that you're all

6   geared up and ready for a period of time when, however what the

7   schedule is there's 900 depositions to be done.

8          MR. BOONE:  Your Honor, we have, we did respond to

9   the template discovery on all 307.

10          THE COURT:  So all are done from your perspective?

11          MR. BOONE:  We've responded to defendant, yes,

12   discovery.  We did it through Choke Hardinen (ph), the other

13   law firm before them.  And we have supplied them with just

14   recently approximately 200 authorizations since we were last

15   here.

16          THE COURT:  Good.

17          MR. BOONE:  So--

18          THE COURT:  Okay.

19          MR. BOONE:  And we're continually working on that.

20   We have people to, some people have moved, some people have

21   passed so we have to go open some estates on some of these

22   cases.

23          THE COURT:  Right.  That's why it's a big job--

24          MR. BOONE:  Yes.

25          THE COURT:  --because you've got just 292 people to

28

1  keep track of just to keep their telephone number and contact

2  information and they're moving and that I imagine is a big job

3  in and of itself.

4        MR. BOONE:  I understand, Your Honor.  We just don't

5  want Pfizer to win because they're bigger and got more money.

6  I mean that's, that's what - I want to hold onto these people

7  and do the best I can for them as long as I can and I guarantee

8  if I dismiss, if I withdraw from it - I can't dismiss under my

9  juris, I have to withdraw.

10        THE COURT:  Sure.

11        MR. BOONE:  They're going to still have these people.

12  They're going to still have these people so it's not going to

13  get rid of the problem immediately anyway so.

14        THE COURT:  All right.  So where do we stand - have

15  you done for all 292, are the medical authorizations done?

16        MR. BOONE:  We've done approximately 200.

17        THE COURT:  All right.  What about the list from

18  Docket No. 372 page three of the doctors and the like?

19        MR. BOONE:  It was provided in the discovery answer,

20  the template discovery answer?

21        THE COURT:  All right.

22        MR. BOONE:  Now we talked about that today.  They

23  said some of it's not in there is what they say.  We will look

24  back at the discovery answer and we will supplement any

25  incomplete answers but we provided that information when we did

1   the first discovery response cause the question is, who is

2   your prescriber, who's all your doctors, and we did that.  And

3   they have that.

4           THE COURT:  All right.  So, Mr. Cheffo, where do

5   those stand?

6           MR. CHEFFO:  I mean, you know, again this isn't a

7   motion to compel and I don't want to kind of get too far down

8   into the reason but I do just take exception.  You know, I

9   think that, you know, all you've heard is we've responded.  I

10  think that, you know, just within the last two weeks we just

11  got authorizations for cases.  I think that there may have been

12  some kind of response but many of the cases there's no

13  indication of who your prescribers were.  Certainly those are

14  five years ago.

15          You know, again, like I said it's not a motion to

16  compel, but I do think just as Your Honor evaluates it's just

17  not accurate to say that, you know, we fully responded and we

18  have all these things.  I mean we have an enormous, an enormous

19  amount of work.  I mean I think Mr. Boone is wildly

20  underestimating the amount of work that's going to take into

21  the cases.  It's not just about, you know, having done

22  something five years ago and a response that's not appropriate.

23  We'll deal with each case individually, but I do think it's

24  important because at the end of the day, you know, I've, you

25  know, candidly had a conversation with Mr. Boone much like this

30

1    and I can't force him to dismiss it no more than Your Honor

2    can, and we're prepared to go forward if we have to, but I do

3    want to just, you know, put the point out and things like

4    collecting sales reps. files for 300 cases, you know.  If these

5    cases are not, you know, ultimately going to be prosecuted, you

6    know, I've said the same thing, now is the time so we can

7    triage and get those cases that you believe in because what's

8    going to happen, and I hope it doesn't but, you know, when

9    we're four, five or six months down and we really do, cause it

10   is going to take I think at least 50 or 60 depositions a month

11   for the next 15 months, that's an incredible crush of people

12   who whether you're Skadden Arps or whether you're Mr. Boone and

13   just getting the scheduling and everything else and holidays

14   and this and that and I just, you know, if Mr. Boone is telling

15   you that he's fully committed to prosecuting all these cases

16   well so be it, we'll have to deal with that.  But, you know, I

17   just don't – I haven't seen a level of appreciation--

18         THE COURT:  So let me just ask a couple – what you

19   both proposed was a schedule that looks like this, different

20   schedules but essentially this, one, you had one, do the

21   certifications and what's set forth in my order from way back

22   when, Docket No. 372 about listing the doctors, do that within

23   a certain period of time.  Then start rolling production of

24   completion of the template discovery, you know, certain number

25   of cases every two weeks for a period of time, and then

31

1   beginning either November 1 or December 1 depositions of all,

2   you know, categories, groups of cases.  You guys would work out

3   which one's based I suppose on what you you'd done with the

4   discovery already.  But you do a certain number of cases, the

5   depositions of those three categories every month.  And then

6   when it's all done we would presumably send them off to where

7   they come from.  The question – and that's one approach, all

8   right.

9          I want to ask you about a couple other possible

10  approaches.

11         MR. CHEFFO:  Sure.

12         THE COURT:  One would be that assumes doing the

13  depositions of all of the case by case, the three categories

14  all at once.  What if – would it make sense, and I'm thinking

15  out loud which could be dangerous.  Would it make sense to do

16  for example all the plaintiffs' depositions first and then when

17  the plaintiffs' depositions were done, then go forward with the

18  sales reps and the others?  The other thing I throw out for you

19  is just a thought, and Judge Saris and I have not discussed

20  this really so, but the, Mr. Schwartz's cases, and he's not

21  here, is he?

22         MR. CHEFFO:  Well he's rep--

23         THE COURT:  Well you are, Mr.--

24         MR. HARANG:  No, Your Honor.  I'm his partner, Your

25  Honor.

32

1          THE COURT:  All right.

2          MR. HARANG:  And in fact they're actually my cases

3 originally so.

4          THE COURT:  All right, fine.  So maybe--

5          MR. CHEFFO:  You can see we're--

6          MR. HARANG:  My name is Jack Harang.

7          MR. CHEFFO:  --bonding.  We're letting him sit at our

8 table as well.

9          THE COURT:  I see that.

10          MR. HARANG:  Yes.

11          MR. CHEFFO:  We have no objection.

12          MR. HARANG:  Which I thought was very nice.  Well

13 they pulled a little thing over the side and didn't want to sit

14 in front of me.

15          THE COURT:  I see.  Well, you know, it's much more

16 civil than the criminal lawyers who usually will never sit at

17 the same table.

18          So you're in the same boat with less obviously, 122.

19 But my question for you is out of your 122, how many individual

20 civil actions are those filed in about?

21          MR. HARANG:  They're in, I was just trying to do

22 that, one, two, three, four, five different states, Your Honor,

23 so--

24          THE COURT:  Five states.

25          MR. HARANG:  Five states, yeah.

33

1          THE COURT:  Okay.

2          MR. HARANG:  I think that's right.

3          THE COURT:  Five cases, five states, something like

4     that?

5          MR. HARANG:  Yes.

6          THE COURT:  All right.  I guess the question; I have

7     two questions you can just chew over.  I'm not sure it makes

8     sense to do the plaintiffs first but it's a thought.  And the

9     second is, does the benefit of the MDL is ordinarily that to

10    coordinate common discovery.  If I had 292 cases plus the 122,

11    that's 392, 410 cases, all making similar claims as they are

12    with one defendant spread throughout the country in front of,

13    you know, two or three hundred different courts, federal courts

14    around the country and 100, 200, 300 different federal judges,

15    I think there'd be a lot of sense to organize common discovery.

16    The one question I have is where you've got Mr. Boone's cases

17    three judges all in Mississippi all being in different

18    districts.  You have Mr. Schwartz's cases with five judges in a

19    couple different states.  Is the commonality of organization, I

20    mean maybe it is, maybe it's worth it but that's the question.

21    Would it be more efficient to have the trial judge manage the

22    process in these cases?

23         MR. CHEFFO:  For my part I would say no really for

24    two reasons.  And again, you know, I mean it's not like if you

25    decide to send them back they would be impossible but, you

34

1    know, for the, main reason is, you know, I think that we've

2    heard from plaintiffs on this, I certainly agree, there's a

3    level of, you know, of sophistication with these claims of

4    these cases that coordinating them, how the process works, you

5    know, because any time you get into different courthouses

6    judges sometimes as you know have different rules, different

7    ways of doing it.  They can be--

8            THE COURT:  They all do it the same way.

9            MR. CHEFFO:  --persnickety let's say a bit about how

10   it works.  And I think if you have unified CMOs and really all

11   we're talking about here and even just as - they're still going

12   to have their crack because once we get back as Your Honor

13   knows--

14           THE COURT:  Right.

15           MR. CHEFFO:  --there's all the specific causation.

16   Judge Saris has already indicated she's not going to address

17   the summary judgment or dispositive motions.  And there's going

18   to be, you know, probably if there's these three or four

19   depositions or five depositions there's probably typically 10

20   or others, you know, from friends, family and others.  So

21   there's going to be plenty of work.

22           I think Your Honor's suggestion on the plaintiffs

23   that's something I think I'd like to think about but I would

24   entertain that because that might give us some guidance.  The

25   one thing we were trying to avoid as well is to basically

1    understanding that they come from certain jurisdictions by

2    kind of triaging them or stacking them you'd be in a position

3    to not necessarily if you wanted to wait until the very end and

4    then send 307 cases back.

5              THE COURT:  Well, right, I get it.  So one of the

6    benefits of the way you propose which I think is probably more

7    sensible is that we can start rolling them out to the original,

8    the home courts.  Not only the 130 start rolling out after

9    September, but also in the way you propose the Boone and

10   Schwartz cases, you know, if we start depositions in November

11   then presumably in December or January we can start rolling

12   cases out to those courts and they can continue to roll out

13   from then on every month.

14             MR. CHEFFO:  But having said that, you know, again I

15   think--

16             THE COURT:  How do we roll a case back though if, you

17   know, it's more extreme with Mr. Boone but it's there with

18   Mr. Schwartz's cases too where you might have one case –

19   ordinarily we roll the case back but you could have a case

20   with, in your case Mr. Boone there might be 100 plaintiffs in

21   one civil action.  Can you roll them back plaintiff by

22   plaintiff or only when all hundred are done?

23             MR. BOONE:  Well, I mean they're all in one lawsuit.

24   I would, I don't know.  I would expect probably, probably after

25   they're all done.

36

1      MR. CHEFFO:  See I would actually disagree.  I think

2  that, you know, I don't think it's pejorative sense but I think

3  the civil action is an artifice.  I mean when they got back to

4  100 cases--

5      THE COURT:  Are you going to be seeking to try all

6  100 together?

7      MR. CHEFFO:  It would take five years so we'd move to

8  sever anyway.  You're going to have 100 plaintiffs in the same

9  case?

10     MR. BOONE:  Well, no, I thought the question was

11  we're they going to all be--

12     THE COURT:  Well they'd go back together right, but

13  then that comes to the second question whether you'd try them

14  together or not.

15     MR. BOONE:  I don't think the judge would try them

16  together because the facts are going to be too different.

17     THE COURT:  Right.  I wouldn't think the judge would.

18     MR. BOONE:  So--

19     MR. CHEFFO:  I mean, judge, if--

20     MR. BOONE:  But, Your Honor, that - I'm going to try

21  them one by one.

22     THE COURT:  Say that again?

23     MR. BOONE:  I'm going to try them one by one.

24     MR. CHEFFO:  See you in the year 2050.

25     MR. BOONE:  Well--

37

1          MR. CHEFFO:  But again, you know, I'm not here to

2     try and – I raise this, let me just throw this out, Your Honor,

3     because it is something to the extent that, you know, Your

4     Honor can think about things that and I was very candid and I'm

5     not going to revisit the cost shifting motion issue but I was,

6     basically one of the points, you know, just time and expense

7     and burden is the sales rep files, you know, of these people

8     and if they have two or three sales reps so I – and in fairness

9     to them I just raised this issue, you know, an hour or two.

10    But one way we might be able to – if we could streamline that

11    process I think there might be some benefits both for doctors

12    and for sales reps because we have a benefit that Mr. Boone's

13    clients are all in Mississippi.  So in other words you may have

14    a doctor whose treated four or five different plaintiffs and

15    there may be a way of deposing that doctor at least on

16    general--

17          THE COURT:  I think one thing you guys are going to

18    have to think about, I have to believe that the doctors, that

19    some of the doctors in Mississippi who you're going to be

20    deposing treated, prescribed to more than one of these

21    plaintiffs.  You're only deposing those doctors once.  And you

22    depose them once for all the plaintiffs I think rather than

23    multiple times cause that's, I'll be honest with you, that's a

24    motion to quash if it came from the doctor that I would

25    seriously entertain cause I think it's unfair to them.  I mean

38

1   half of what you're going to ask him is going to be the same

2   whatever, and it'd be cheaper for all of you to do it once.  I

3   recognize it complicates the scheduling a little bit cause

4   you're thinking about also the discovery.  You don't want to

5   depose him about plaintiff No. 22 if you haven't got the

6   discovery on plaintiff No. 22 yet; you got to think about that.

7   There might be some exceptions but that's got to be the goal.

8            MR. CHEFFO:  But that – I'm sorry to interrupt.

9   That's why frankly Your Honor's point at least if not all the

10  plaintiffs first, not making a hard and fast rule, but if we

11  started by doing, you know, 50 or 60 plaintiffs, what it would

12  enable us to do is then, cause I think the same rule should

13  apply for sales reps.  In other words if you have the same

14  doctor, right, and the sales rep called on him for different

15  plaintiffs at different times they should depose the sales rep

16  once because there's no reason, you know, to have the same

17  person being deposed 10 times.  That's going to take some time

18  and coordination whereas I think with the plaintiffs, you know,

19  you don't need to coordinate with other plaintiffs necessarily.

20           THE COURT:  I'll think about that.  And do either of

21  you have any thought about that?

22           MR. BOONE:  I think it's a good idea in reference to

23  the doctors, the three, you know, different plaintiffs.

24           THE COURT:  I mean the question of whether you should

25  do – what you both proposed was cases starting in either

39

1   November or December a certain number of cases per month.

2   When I say cases I mean then the plaintiff, the prescribing

3   doctors and the sales reps.  And what I threw out as a thought

4   was instead start and just do plaintiffs and do a certain--

5           MR. BOONE:  Right.

6           THE COURT:  --number of plaintiffs and--

7           MR. HARANG:  From our standpoint, Your Honor, I think

8   it makes an awful lot of sense, particularly since we're in a

9   lot of different--

10          THE COURT:  To do plaintiffs first?

11          MR. HARANG:  Yeah, sure.  And that's going to give

12  them a sense of what may be there.  And it's going to give, on

13  the same token it's going to give us a better sense.  And then

14  that'll allow us ahead of time to put the spreadsheet together

15  that it's going to take to find out how many of these sales

16  reps saw how many doctors in how many different places and

17  whether or not when we can do those.  I think it's pretty

18  functional, Your Honor.

19          THE COURT:  All right.  Mr. Boone?

20          MR. BOONE:  Yes, Your Honor.

21          THE COURT:  Yes what?

22          MR. BOONE:  Yes, I agree that we do the plaintiffs,

23  it would be a good idea to do the plaintiffs--

24          THE COURT:  All right.

25          MR. BOONE:  --first.

40

1          THE COURT:  Do plaintiffs first.

2          MR. BOONE:  Yes.

3          THE COURT:  Do you agree with that, Mr. Cheffo?

4          MR. CHEFFO:  I do.  I think it makes sense in this

5   case and then we'll identify who the prescribers are.

6          THE COURT:  So you think we should do all the, you

7   think you should do all the plaintiffs before you start on the

8   others or you need a certain number and then?

9          MR. CHEFFO:  Again ,I leave it to these folks.  I

10  mean I don't want to, you know, I don't know that we need to

11  create a hard and fast rule but I think we should--

12         THE COURT:  I'll tell you what I'll do.  I'm going to

13  set a schedule.  I want to think about it a little bit and I'll

14  probably talk to Judge Saris about it, but the structure of the

15  schedule would be something like this, 30 days from today, I'll

16  issue a short written order, but 30 days from today to do the

17  medical authorizations and other things.  Shortly thereafter

18  every two weeks the rolling production of the template

19  discovery.  A certain number of cases every two weeks from Mr.

20  Boone's law firm, Mr. Schwartz's law firm.  I understand the,

21  I'll tell you that between December 1 and November 1 it will be

22  November 1, I understand why you didn't go earlier than

23  November 1 cause you have the cases that you have to do by

24  September 14th, and I'm not going to derail those cases for

25  these cases but that'll give you October to get organized and

41

1   start in November.  I don't see any reason – and Mr. Boone and

2   Mr. Schwartz don't have as much of that burden because they

3   have some cases in the group but not as many.

4         I'll think about doing plaintiffs, all the plaintiffs

5   first.  And I'll issue an order that sets that out.  I

6   appreciate, Mr. Boone, but I can't help myself to come back to

7   it, I appreciate that, and I'm with you that these people don't

8   have to give up their claim just because Pfizer has a deeper

9   pocket than they do, all right.  I recognize Pfizer does have a

10  deeper pocket than these individual people.  But I think that

11  what you ought to be thinking about, and I'm not telling you to

12  dismiss any cases, I'm not, but I think you got to be

13  practical.  I mean you heard, I'm sorry, I don't – you're not

14  Mr. Schwartz, right, you're his partner?

15        MR. HARANG:  No, I'm Jack Harang, Your Honor.

16        THE COURT:  Jack Ryan.

17        MR. HARANG:  Harang.

18        THE COURT:  Oh.

19        MR. HARANG:  H-A-R-A-N-G.

20        THE COURT:  Oh, All right.  I mean you heard him.

21  He's saying one of the reasons is, you know, he recognizes some

22  cases are more viable than others.  And the plaintiffs will

23  give him a chance to make that assessment and the depositions

24  is a way for lawyers, plaintiffs' counsel and defense counsel

25  to make an assessment of the cases and he knows he's going to

42

1   have better cases and worse cases.  And at the end of that

2   process he's going to be talking to Mr. Cheffo and saying well

3   this one, you know, maybe we'll, it's a settlement or maybe

4   it's a strong case or whatever.  And so, and that assessment

5   process was you get information for everybody.  It goes on all

6   the time.  But the other part of it is you got to be prepared

7   to do it.  He's got – how many people in your law firm?

8           MR. HARANG:  We've got six lawyers, Your Honor.

9           THE COURT:  Six lawyers and then is Mr. Schwartz in a

10  separate law firm?

11          MR. HARANG:  No, we're together.

12          THE COURT:  No, he's in – you're together.  All

13  right.  So there's six lawyers and that law firm and they have

14  122 cases.  So just doing the math they have one to 20.  You

15  have – they have a one to 20 ratio between Neurontin cases and

16  lawyers.  You have a one to 292 ratio of Neurontin cases to

17  lawyers.  That's a very different ratio.  So I'm going to set

18  the schedule.  Whatever it is, it is.  But we're going to have

19  to do it.  I'm not looking to break you, I'm really not, but on

20  the other hand you brought the cases and having brought the

21  cases and they've made the claims they have to be litigated.

22  We're not going to do one case a month for the next 292 months.

23  And so it's a big undertaking.  And--

24          MR. BOONE:  I understand.  We'll go till they beat us

25  in the ground.  When they beat us in the ground then I guess

43

1    we'll surrender, but not until that time and we're not at that

2    point.  Right now we're--

3           THE COURT:  I'm not suggesting you surrender at any

4    point.  I'm suggesting that having a lawyer who's a member of

5    the Bar having brought the cases be prepared to litigate them.

6    That's all.  All right.

7           MR. BOONE:  I understand.

8           THE COURT:  Is there anything else we should talk

9    about today?  Yep?

10          MR. FROMSON:  I was hoping the Court might entertain

11   or give us some guidance on how we could get a template order

12   to have physicians appear at the depositions.  It's common when

13   we reach out for physicians either for them to be

14   uncooperative, unresponsive or simply be uninformed as to their

15   role in the litigation and neither party wants to have an

16   appropriate discussion with them.  But they ask, why am I

17   involved, get me a court order.  And we respond well, I made

18   you a subpoena, and they'll say well ,I'm not going to honor it

19   because I'm in a different state than is Judge Sorokin.  And I

20   can't give them a dissertation on the MDL authority.  Do you

21   have any guidance on a template order that we could use or--

22          THE COURT:  Well, we have a nationwide jurisdiction,

23   right?

24          MR. FROMSON:  Yes.

25          THE COURT:  So maybe--

44

1          MR. FROMSON:  Or ultimately I could come to you with

2   each individual motion for an order--

3          THE COURT:  Right.

4          MR. FROMSON:  --that could take 21 days as it's--

5          THE COURT:  Right.  Well, I'm thinking why couldn't

6   you do this.  Why, if you want, if it's helpful I could issue

7   an order that said this is an MDL case, it's consolidated

8   nationwide, multi-district litigation, involving allegations

9   of, products liability allegations what have you against Pfizer

10  involving the drug Neurontin.  There are claims of 500, 700

11  people pending here from around the country.  The parties are

12  in the midst of discovery on those cases, and in the course of

13  that discovery, the parties are taking depositions of not only

14  the plaintiffs but also the prescribing physicians, those

15  doctors who prescribed Neurontin to these people.  As a general

16  matter the court has found that those depositions are relevant

17  and material to the litigation in the case.  The court has

18  established a schedule that's governing the conduct of all the

19  discovery in this case, including the depositions of the sales

20  representatives, the prescribing physicians and the plaintiffs.

21  That schedule has various deadlines for when in certain cases

22  those particular depositions have to be accomplished by.

23  Subpoenas issued under this court in this case are enforceable

24  throughout the United States.  And counsel is authorized, I

25  mean I'm sort of stating the obvious, counsel is authorized to

45

1    issue subpoenas to the doctors who are the prescribing

2    physicians in these cases whose testimony is material to these

3    issues that the court as a general matter has found it is.  And

4    those subpoenas are enforceable without further order of the

5    court.  If you want me to go further – I mean is that enough?

6              MR. FROMSON:  That's actually probably--

7              MR. FINKELSTEIN:  That's good.

8              MR. FROMSON:  --more than we need, and I certainly

9    would welcome that if you could put that on the ECF as a formal

10   document and not just an electronic order so we could PDF it--

11             THE COURT:  Right.

12             MR. FROMSON:  --and then have it attached to our

13   subpoenas.

14             THE COURT:  How about we do this; you file a proposed

15   order and along the lines of what I just articulated and that

16   sounds reasonable.  I'd be happy to sign it.  That might be –

17   and then if there's some particulars--

18             MR. CHEFFO:  Yeah.

19             MR. FROMSON:  Thank you, Judge.

20             MR. CHEFFO:  That's a great idea, Your Honor.

21             MR. FROMSON:  We can work on that.

22             THE COURT:  Okay.  All right.

23             MR. FROMSON:  We'll propose some--

24             MR. HARANG:  Your Honor, one issue about the

25   particular plaintiffs and that is if you, however you propose

1   the taking but the selection, from our position if we could

2   have those by states and then select them randomly that would

3   be of a benefit and I think, probably think the same thing is

4   true for Mr. Boone and districts.

5   　　　　　THE COURT:  Oh, you see – how many – you have, you

6   have your 122 from different states?

7   　　　　　THE COURT:  Yes, Your Honor.  Here's the first

8   criteria from my perspective, that you all, whatever pace I set

9   your full.  In other words if I'm saying X number of cases a

10  month or X number of depositions a month you're doing X, not X

11  minus.  So in other words that means first priority is having

12  enough cases that are ready in terms of the discovery that's

13  done cause my criteria is going to be, the criteria would be I

14  would think that the template discovery is done and so that

15  would take precedence over anything else, having, filling that

16  yield up.  Once the yield is full if you have an excess for

17  November of depositions, that is, you have more than however

18  many I said you have to do, that the template discovery is

19  done, then it would make sense to organize them geographically

20  so you're not flying all over the place.

21  　　　　　MR. HARANG:  I have no objection to that.

22  　　　　　THE COURT:  That I think you all can work out.  Now

23  if you still have more than that then you get into the question

24  of who picks at random and I think that at that point if you

25  can't agree on anything, then I would just say fine at that

47

1   level you can do it randomly and, but first it's the other two

2   cuts.

3           MR. HARANG:  Sure.

4           THE COURT:  All right.  Anything else?  One question

5   about the Dorsey case.  So summary judgment, is that ripe in

6   the Dorsey case?

7           MR. CHEFFO:  Catherine tells me that the reply is due

8   Friday.  I think there was a scheduling snafu--

9           THE COURT:  Okay.  So it's Friday, it'll be ripe on

10  Friday.

11          MR. CHEFFO:  And--

12          THE COURT:  That's the only Massachusetts products

13  liability case that's left.

14          MR. CHEFFO:  That's correct.  And I'm not certain

15  whether Judge Saris is going to refer that.  I think she, you

16  know, we talked about that before her as well and she said she

17  was going to probably set a hearing to rule on that, but if she

18  refers it to you--

19          THE COURT:  I would think she – I was more wanting to

20  alert her to it cause I suspect she's probably going to want to

21  do it herself.  So I wanted to know to tell her when we talk

22  about it or so that you can tell her.  But if she refers it

23  then I'll do it.

24          All right, do I need to set; I don't need to set

25  another date right now it sounds like.  I may set it when, I

48

1    may set a date once I parse out these dates in the order.

2            MR. CHEFFO:  And the only thing maybe, and again I

3    don't think you need to do it now but after you gave us a date

4    of August 7th to do the scheduling the dates, you know, at some

5    point after that you might want to talk to us either by phone

6    or person.

7            THE COURT:  Yes.

8            MR. CHEFFO:  It's up to you.

9            THE COURT:  Right.  I like seeing all of you if you

10   don't mind coming.

11           MR. CHEFFO:  It's a nice train ride up.

12           THE COURT:  All right.  All right, so and in terms of

13   the proposals you make you each can, this sort of applies not

14   to you, Mr. Fromson and Mr. Finkelstein, but as to the rest of

15   you the numbers you proposed are numbers you can do.

16   Mr. Boone?

17           MR. BOONE:  Fifteen, Your Honor.

18           THE COURT:  That number you proposed right but that's

19   15 cases you proposed a month.

20           MR. BOONE:  Well, actually I thought I was proposing

21   15 depositions but--

22           THE COURT:  All right, well you tell me--

23           MR. BOONE:  I didn't know it was 45.  Well my

24   understanding is when we did this jointly we were trying to

25   suggest to you 15 depos.

49

1          THE COURT:  All right.

2          MR. BOONE:  Not 15 cases.

3          THE COURT:  Okay.

4          MR. CHEFFO:  I guess what I, if they are and if there

5    are the plaintiffs it's really going to be the same thing.  If

6    we start with the plaintiffs there's only one per case.

7          THE COURT:  So you're telling me, Mr. Boone, is 15

8    dep., you could do 15 days of deposition a month?

9          MR. BOONE:  Yes, Your Honor.

10         THE COURT:  So just so you're, we're clear, 15 days

11   and you can do – you could do that as well, right?

12         MR. HARANG:  I didn't commit to that, Your Honor.

13         THE COURT:  You committed to what, 10?

14         MR. HARANG:  Ten.

15         THE COURT:  Ten.

16         MR. HARANG:  Yes.

17         THE COURT:  All right.  And you can do 10?

18         MR. HARANG:  We can do 10 if we're pushed, yeah.  And

19   we figure we're being pushed so.

20         THE COURT:  Yes.

21         MR. HARANG:  That, and that's a realistic--

22         THE COURT:  You're already pushing back pretty hard

23   cause I read those papers and I thought that was 10 cases a

24   month which is 30 depositions and 15 which would be 45.  But

25   you tell me what you can do, you're telling me that's too much?

50

1           MR. HARANG:  Your Honor, we can do 10 a month.

2  We're doing quite a few more than that right now so –

3  (inaudible - #3:57:04).

4           THE COURT:  Right.  I figure you can do more than 10

5  a month.

6           All right, so you're telling me, Mr. Boone, at 15, 15

7  days of deposition a month you can do that?

8           MR. BOONE:  Well, Your Honor, I mean I make that

9  suggestion based upon, you know, you know, the push to get this

10  done so I'm putting forth my best, that is my best effort.  I

11  mean that's--

12           THE COURT:  Yeah.

13           MR. BOONE:  You know that's giving it my all and

14  leaving me just, leaving me five days to do my other stuff.

15           THE COURT:  Right.  That, but just so you know that

16  just doing the math, just to do the depositions of your

17  plaintiffs that's at that rate 20 months.

18           MR. BOONE:  I understand, Your Honor, and Pfizer is

19  well aware of that.  I mean but again I will say--

20           THE COURT:  Well but do you, I mean do you have

21  another – now is your chance to make a suggestion.  If I go the

22  route of doing plaintiffs' depositions first then there aren't

23  going to be any cases to ship off to Mississippi because, for

24  over 20 months because you're going to go through all the

25  plaintiffs' depositions and then you'll turn to sales reps.

51

1   And the like.  So, you know, what I heard you earlier say to

2   me after Mr. Cheffo and Mr. O'Hang?

3           MR. HARANG:  Harang.

4           THE COURT:  Harang, Mr. Harang was agreeable to do

5   that, to go down that road with you too but you understand what

6   that means.  If I do it that's 20 months of depositions like

7   that and I don't think I'll be sending any cases to

8   Mississippi.  I don't think Judge Saris will be sending any of

9   those cases to Mississippi in that amount of time because the

10  case won't be done.  It'll just be the plaintiffs' deposition.

11  Do you understand?

12          MR. BOONE:  I understand.  You're asking me if I can

13  do 15, is that a reasonable number?

14          THE COURT:  Yeah, you told me yes as to that.

15          MR. BOONE:  Yeah, I told you--

16          THE COURT:  But I'm--

17          MR. BOONE:  Yes?

18          THE COURT:  You told me it's your best effort.  I

19  hear that.

20          MR. BOONE:  I told you that because I felt like that

21  I couldn't come to the Court with anything less than that and—

22          THE COURT:  So, but what I'm saying is have you

23  thought through the math of 20 months of that?

24          MR. BOONE:  Well I, yes, well I don't know if I've

25  thought through the math, Your Honor.  I mean I understand how

52

1   long it would take to do that.

2          THE COURT:  But I mean have you thought it through in

3   terms of what it means to your practice, what it means to

4   representing these people?

5          MR. BOONE:  Again, Your Honor, these people--

6          THE COURT:  Do you have anyone who can help you do

7   this?

8          MR. BOONE:  Well, I mean if we did have a slower pace

9   that would help me.  But I didn't feel the Court was inclined

10  to do that and I wanted to be as reasonable and act as good

11  faith as I could under the circumstances.  But I really do want

12  to, I want these people, these people are all, I don't want to

13  just go over - these people all ingested this medication for

14  off label purpose and they all had suicide ideation.  FDA has

15  put, made them put the warning on there.  They paid $430

16  million because they admitted to promoting this for off label

17  use.  So these are plaintiffs that are caught in a trap that

18  they can't get out because they don't have the money.  And

19  actually I thought one of the purpose for MDL--

20         THE COURT:  Well, they're not really in a trap

21  because they don't have to continue taking the Neurontin.

22         MR. BOONE:  Well, I mean they're in a money trap.

23  What I'm saying is they're in a, well nobody else will take

24  these cases.  Nobody will take these cases.  You ask any of

25  these lawyers, they're getting rid of them.  But these cases--

53

1          THE COURT:  Yeah, but I got to say, Mr. Boone, with

2   all due respect, I've seen the lawyer sitting at this table for

3   five years and one thing I can tell you is they've done a lot

4   more work in this case over the last five years then you've

5   done.

6          MR. BOONE:  Oh, I agree.

7          THE COURT:  They've done a lot of time, labor, blood

8   and sweat that I've seen in the courtroom and in the papers and

9   that tells me that's at the tip of the iceberg for what they've

10  done over the last five years.  So far what I've seen from Mr.,

11  you, Mr. Boone, over the last five years is you filed a case

12  with 323 plaintiffs, paid one filing fee which it may be water

13  under the bridge, but I have to tell you I'm a little dubious

14  about that practice, and you then did, we went through the

15  certification process.  You filed all the social security

16  numbers.  So it wasn't, no offense but it was not a job well

17  done, and we're here now five years later.  You've known this

18  day is looming.  There's questions about the authorizations and

19  the template discovery.  A lot of it has come recently.  You've

20  got a lot people to manage.  You're by yourself.  You're not

21  telling me that, you know, so you can say they may be the only

22  one taking them but you know what, they might be exercising a

23  lot of wise, professional judgment.  And, you know what,

24  they've given me a lot of cause to believe that they exercise

25  wise, professional judgment over the last five years cause when

54

1    they come into court they're prepared.  I don't know always

2    agree with them.  I disagree with them sometimes.  I rule

3    against them.  But they're usually prepared.  They know what

4    they're talking about.  They're working hard on the case.

5    What, and I haven't had this colloquy with them because they've

6    always seemed like they can handle whatever they brought.  I'm

7    just telling you that it's a question, that's why I'm berating

8    the point to no end.

9           MR. BOONE:  I understand, Your Honor.  I'm just

10   trying to represent them.

11          THE COURT:  Okay.

12          MR. BOONE:  The little man against a giant.

13          THE COURT:  I understand.

14          We're adjourned.  Thank you very much.

15          COUNSEL:  Thank you, Your Honor.

16          THE CLERK:  All rise, this matter's adjourned.

17   //

18   //

19   //

20   //

21                      CERTIFICATION

22        I, Maryann V. Young, court approved transcriber, certify

23   that the foregoing is a correct transcript from the official

24   digital sound recording of the proceedings in the

25   above-entitled matter.

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**

55

1

2   /s/ Maryann V. Young                June 15, 2010

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20