UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No.  1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
NOTICE OF SUPPLEMENTAL AUTHORITY**

On June 17, 2010, Defendants filed a Notice of Supplemental Authority [D.E. 2859] related to Defendants' Proposed Findings of Fact and Conclusions of Law [D.E. 2816] and Defendants' Response to Plaintiffs' Proposed Conclusions of Law [D.E. 2808].  Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals ("Plaintiffs" or "Kaiser") now briefly respond.[1]

All three cases cited by Defendants *support* Plaintiffs' ability to recover under RICO and the UCL.

---

[1] Kaiser notes that the Court's March 29, 2010 post-trial procedural order stated that the proposed conclusions of law "shall be no longer than twenty pages" and that any replies also "shall not exceed twenty pages."  [D.E. 2763] Defendants' conclusions of law briefs totaled the maximum-allowed forty pages.

A.     *Rule v. Fort Dodge Animal Health, Inc.*

In *Rule v. Fort Dodge Animal Health, Inc.*, Plaintiffs sought to recover for an undisclosed safety risk associated with a veterinary medicine.  No. 09-1364, 2010 U.S. App. LEXIS 11127 (1st Cir. June 2, 2010).  There, Rule acknowledged that the drug was effective in preventing heartworms, *id*. at *2, and presented no evidence that the drug was actually worth less than what she paid, *id*. at *7 ("it was clear at the time of Rule's law suit that she neither now could show or could suffer in the future any adverse economic impact").  Here, in stark contrast, Kaiser proved Neurontin was ineffective for treating multiple conditions and that it paid for more Neurontin prescriptions than it would have absent Defendants' fraud.  [Special Verdict Form, D.E. 2760.] Rule benefited from purchasing the heartworm medicine; Kaiser did not benefit from purchasing Neurontin.

In addition, *Rule* is specific to Massachusetts ch. 93A.  Kaiser seeks to recover under the California UCL, *not* Massachusetts ch. 93A, and *Rule* offers no analysis of the California UCL.

B.     *Commonwealth v. Janssen Pharmaceutica, Inc.*

In *Commonwealth v. Janssen Pharmaceutica, Inc.*, No. 080102181 (Pa. Ct. Common Pleas June 14, 2010), plaintiffs apparently[2] failed to allege that defendants' actions caused doctors to write more prescriptions, *id*. at *29 (plaintiff arguing that it "does not allege that Janssen's conduct caused Pennsylvania doctors to write more Risperdal prescriptions than they otherwise would have"), or caused plaintiff to take particular actions, *id*. at*67 ("[T]here was no showing that if . . . any of the internal Janssen marketing materials had been provided to the Drug Utilization Committee or the Pharmacy and Therapeutic Committee . . . that there would have been any actions taken that were different.").  Plaintiff also failed provide *any* expert

_____

[2] Defendants cite to *Janssen* despite the fact that the court, as Defendants acknowledge, has not yet issued a written decision.  Plaintiffs respond based solely on the portion of the transcript provided by Defendants.

testimony about plaintiff's damage, a strategy that the court found to be "extraordinary and possibly, in fact, fatal to this litigation." *Id.* at *61

The *Janssen* plaintiffs' theory of recovery is entirely different from the theory in the instant case.[3]   Here, Kaiser proved Defendants' conduct caused physicians to write more Neurontin prescriptions than they otherwise would have written.   Kaiser offered credible testimony about just how severely Defendants' fraud impacted Kaiser's P&T committees and their recommendations.   [D.E. 2805 ¶¶ 87-102.]   Kaiser also provided extensive and reliable expert testimony on damages.

**C.**      ***In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*[4]**

In *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, the court unremarkably held that "off-label promotion alone, that is without some further allegation that the promotion involved some dishonesty about the drug's qualities or suitability to treat an illness, could not give rise to injury within the meaning of RICO."  No. 06-cv-5774, 2010 U.S. Dist. LEXIS 56621, at *17 (June 9, 2010 D.N.J.).   The court had previously determined, "[f]or the RICO claims to survive, each Named Plaintiff must at a minimum allege that (1) it paid for the Subject Drugs to treat an off-label indication for which the drugs were ineffective and/or unsafe and thus worth less than what was paid and (2) the diminished value of the Subject Drugs was caused by Schering's marketing practices." *Id.* at *20.   Despite the court's guidance, none of the named third party payor plaintiffs alleged "that the drug was worth less than what was paid due to the alleged falsity of the off-label promotional claims made by Schering" or "link[ed] their off-label purchases to … misrepresentations about the Subject Drugs and/or to conduct characterized as bribery." *Id.* at 25.

---

[3] *Janssen*, like *Rule*, was brought under an entirely different statute, not the UCL.

[4] Defendants concede that they raised in prior briefing the causation issues presented in this case.  [D.E. 2808-2 at 3.]

The *Intron/Temodar* court's decision was animated by the fact plaintiffs maintained off-label promotion alone was sufficient to show a RICO violation. *Id*. at *29-30 n.6. The court posed a hypothetical to illustrate the flaw in plaintiffs' argument: "Suppose, hypothetically, that subsequent double-blind testing demonstrated that the product was indeed safe and effective for the off-label use promoted by Schering. In Named Plaintiffs' view, they would still have a RICO cause of action despite the fact that the product actually performed as represented." *Id*. at *27 n.4.

*Intron/Temodar* offers nothing new, but does serve to confirm that Kaiser has proved Defendants violated RICO.[5] Kaiser did not prove its case by merely showing that defendants marketed Neurontin off-label. Kaiser proved that Neurontin was ineffective by introducing evidence of double-blind randomized clinical trials. Kaiser also proved that Defendants' suppression of negative evidence concerning those uses caused Kaiser's damages. A jury has already determined that Kaiser has satisfied the RICO causation requirements identified by both the *Intron/Temodar* court and this Court.

None of cases cited by Defendants even mention the California UCL; none offer any holdings binding on this Court nor dispositive of the outcome of the instant case. *As admitted by Defendants*, none are anything other than a rehash of arguments already made by Defendants.[6] Plaintiffs therefore respectfully request that Defendants' Notice of Supplemental Authority be stricken. Plaintiffs further request that, in order to avoid the time and expense of responding to seriatim baseless Notices of Supplemental Authority, that this Court order that no party file Notices of Supplemental Authority absent a new, binding, dispositive decision from the Supreme

---

[5] The *Temodar* court analyzed federal and state RICO statutes, and, like *Rule* and *Janssen*, made no mention of, and offered no analysis of or concerning the UCL.

[6] [D.E. 2859 at 1 (discussing *Rule*, "[a]s discussed in Defendants' Proposed Conclusions of Law"); at 2 (discussing *Janssen*, "[a]s discussed in Defendants' Proposed Conclusions of Law"); at 2-3 ("In prior briefing to this Court . . . Defendants have cited [earlier decisions in *Temodar*.]").]

Court of California, the United States Court of Appeals for the First Circuit, or the United States

Supreme Court.


Dated:  June 23, 2010                              Respectfully submitted,


                                                   By:     */s/ Linda P. Nussbaum*
                                                           Linda P. Nussbaum

                                                   Linda P. Nussbaum
                                                   John D. Radice
                                                   NUSSBAUM LLP
                                                   88 Pine Street, 14th Floor
                                                   New York, NY 10005

                                                   *Attorneys for Plaintiffs Kaiser Foundation
                                                   Health Plan, Inc. and Kaiser Foundation
                                                   Hospitals*

*Of Counsel*

Thomas M. Greene
GREENE LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

Don Barrett
DON BARRETT, P.A.
P.O. Box 987
404 Court Square North
Lexington, MS 39095

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served

pursuant to Case Management Order #3 on June 23, 2010.

*/s/ Linda P. Nussbaum*
Linda P. Nussbaum