# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
HARDEN MANUFACTURING CORPORATION . CIVIL ACTION NO. 04-10981-PBS
     Plaintiff                   .
                                 . BOSTON, MASSACHUSETTS
          v.                     . MARCH 22, 2010
                                 .
PFIZER, INC., et al              .
     Defendants                  .
. . . . . . . . . . . . . . .
                    TRANSCRIPT OF MOTIONS HEARING
              BEFORE THE HONORABLE LEO T. SOROKIN
                 UNITED STATES MAGISTRATE JUDGE

     APPEARANCES:    Jack W. London, Esquire
                     Jack W. London & Associates P.C.
                     3701 Bee Cave Road
                     Suite 200
                     Austin, TX 78746
                     512-478-5858
                     ecf@jackwlondon.com

                     Archie Carl Pierce, Esquire
                     Wright & Greenhill
                     221 W. 6th Street
                     Austin, TX 78701
                     512-476-4600
                     cpierce@w-g.com

                     Kenneth B. Fromson, Esquire
                     Keith Altman, Esquire
                     Finkelstein & Partners, LLP
                     436 Robinson Avenue
                     Newburgh, NY 12550
                     800-634-1212

                     Mark S. Cheffo, Esquire
                     Skadden, Arps, Slate, Meagher & Flom, LLP
                     Four Times Square
                     New York, NY 10036
                     212-735-3000
                     mark.cheffo@skadden.com
     Court Reporter:

     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.

                         MARYANN V. YOUNG
                     Certified Court Transcriber
                         Wrentham, MA  02093
                           (508) 384-2003
```

5

1   THE COURT:  Oh, I see.

2   MR. CHEFFO:  It really should've been part of the
3   $90,000 and we apologize for that, that inadvertent error.

4   THE COURT:  Okay.  All right, I got it.  Okay.

5   So let me just go over, before we get started.  So
6   let me just go over before we get started, so there's two sets
7   of motions, one that's ripe and one set that's not.  The ripe
8   motions are the, essentially there's two motions, motions to
9   compel one by plaintiff Barlow and one by the Steering
10  Committee and Mr. Cheffo you are, opposition and cross motion,
11  and essentially those three motions are all one issue really.
12  And then there's a motion - I was not unsympathetic by the way
13  Mr. Cheffo to your emergency motion to continue, but I didn't
14  really, truth be told I didn't come across it in the opposition
15  until last night and at the point it just seemed impractical.

16  The - you filed a motion, Mr. Fromson, in the
17  Shearer, applies to all products liability cases but the relief
18  you sought is with respect to the Shearer case--

19  MR. FROMSON:  Your Honor--

20  THE COURT:  --in terms of an adverse jury instruction
21  and a continuance in that trial.

22  MR. FROMSON:  Correct, in the imminence of that
23  case--

24  THE COURT:  Right.

25  MR. FROMSON:  --that's true.

7

1   had the opportunity yet to respond and so once that happens
2   then we'll see where we are.
3           All right, so I'll hear, I guess I'll hear from the
4   plaintiffs first cause they sort of began this issue.  And one
5   thing I'll tell you that will be helpful to me is I'm a little
6   unclear, notwithstanding all the briefing, exactly what things
7   we're talking about.  I understand what cost shifting is and I
8   know that essentially it's a dispute over who pays for this
9   whole process, but exactly which things this is applying to and
10  not applying to and the like and what we're talking about would
11  be one thing to pay attention to.  It would be helpful to me.
12          MR. PIERCE:  May I please the Court--
13          THE COURT:  Go ahead.
14          MR. PIERCE:  --I'll address that directly, Your
15  Honor.
16          THE COURT:  All right.
17          MR. PIERCE:  The discovery we're seeking in this case
18  is the core discovery as I understood that was ordered by this
19  Court.  The core discovery that relates to the treating
20  physicians of my client, plaintiff Barlow, and those Pfizer
21  representatives, particularly sales representatives that called
22  upon those treating physicians.  And--
23          THE COURT:  So essentially it's the discovery that's
24  the centerpiece of this dispute in your view, the template
25  interog, we'll call them interrogatory responses but the

8

1 template interrogatory responses and document requests that
2 each side is going to do with respect to each products
3 liability plaintiff and then the core depositions of the
4 plaintiff or administrator depending on the circumstances, the
5 doctor or doctors that prescribed the Neurontin and the sales
6 reps that detailed the doctor or doctors.
7           MR. PIERCE:  That's correct, Your Honor.  That's my
8 understanding.
9           THE COURT:  Okay.
10          MR. PIERCE:  And that's--
11          THE COURT:  So we're not talking about--
12          MR. PIERCE:  --what we have solved--
13          THE COURT:  From your perspective we're not talking
14 about discovery above and beyond that that you're looking for?
15          MR. PIERCE:  No, Your Honor.
16          THE COURT:  And whatever this dispute pertains to
17 from your perspective it pertains to just those things?
18          MR. PIERCE:  That's right.  We're focusing in on the
19 treating physicians for my client and the people who called
20 upon those treating physicians and the communications that were
21 given or received by the drug company from those treating
22 physicians, very specific--
23          THE COURT:  The ones that prescribed Neurontin?
24          MR. PIERCE:  That's right.  It has to do with
25 Neurontin.  It's limited to Neurontin.

11

1  THE COURT: So they told you they had it and they'll
2  give it to you if you pay for it?
3  MR. PIERCE: Exactly, Your Honor. And we don't think
4  it's appropriate under the *Zablocki* case factors we've cited to
5  you. That that cost be shift to us and we go against the
6  traditional rule especially in this case where their conduct is
7  criminal, and we're looking for the evidence that we know they
8  have of their criminal conduct that caused my client to get
9  their drug. And they're saying we have it but we want you to
10 pay for it.
11 THE COURT: So the response, just let me see if
12 understand correctly. So you've got the answers to the
13 template discovery. You've received answers, whether or not
14 they're satisfactory in your view you've received answer for
15 the template discovery.
16 MR. PIERCE: That's correct.
17 THE COURT: And--
18 MR. PIERCE: I've received a lot of objections and
19 very limited information.
20 THE COURT: All right. And so in those, and one of
21 the things you received as part of that was the call notes
22 which are the notes, the screenshots of the call notes which
23 are the phone calls between the reps and the treating
24 physicians who prescribed Neurontin to your client.
25 MR. PIERCE: That's what I call the call notes. I'm

73

1    THE COURT:  One minute if you have anything else?

2    MR. PIERCE:  Thirty second rebuttal.

3    THE COURT:  All right.

4    MR. PIERCE:  It's not a mass tort for me and my
5 client.  I've got one client.  They're not going to stipulate--

6    THE COURT:  Let me ask you this question.

7    MR. PIERCE:  Yes, Your Honor.

8    THE COURT:  Okay.  Out of the ESI information that
9 we've all discussed, what you want is the documents that relate
10 to Neurontin?

11   MR. PIERCE:  Definitely.  That's - it's limited to
12 Neurontin.

13   THE COURT:  Right.

14   MR. PIERCE:  And all the databases they say they have
15 produced and all these millions of documents we've searched
16 them--

17   THE COURT:  I understand.

18   MR. PIERCE:  --Your Honor--

19   THE COURT:  Okay.

20   MR. PIERCE:  --and all we got is the name of sales
21 reps.  We don't even know if they're medical liaisons.  And we
22 got those call notes, that's it.  And we know that I have the
23 burden to prove that it was their criminal off-label marketing
24 that caused my client to get that drug.  And there's stuff out
25 there like preceptorship, CME--