# EXHIBIT I

# Nissi, Nordo (NYC)

| | |
|---|---|
| **From:** | Stevens, Catherine B (NYC) |
| **Sent:** | Monday, June 14, 2010 7:55 PM |
| **To:** | 'jack@jackwlondon.com' |
| **Cc:** | Cheffo, Mark S (NYC) |
| **Subject:** | Barlow |

Dear Jack:

Please consider this to be a written response to your emails on June 10. As we discussed on the phone last week, in response to Plaintiff's Amended Motion to Compel and Judge Sorokin's March 24, 2010, order regarding cost-shifting, Pfizer conducted extensive searches for responsive materials within the tight deadline set forth by Judge Sorokin. Pfizer produced to you case-specific materials relating to the Barlow case in the form of MedWatch reports and adverse event reports. Additionally, Pfizer has produced to you the call notes relevant to the specific sales representatives in the Barlow case. These call notes also contain information about samples of Neurontin packages relating to prescribing physicians.

As we discussed last week, Pfizer conducted a review of both the paper and electronic custodial files for the sales representatives identified in this action. Pfizer sent multiple lawyers to Kalamazoo Michigan to specifically review the custodial representative files in your case alone. Despite an extensive review, Pfizer did not identify any responsive materials from these files. Additionally, Pfizer's search for medical liaisons that may have interacted with plaintiff's prescribers produced no responsive materials. In addition to the marketing materials previously produced in these cases, Pfizer was able to identify medical information letters that were provided to prescriber and produced these documents to you. For example, your May 3 letter references document 204 which indicates that Dr. Atwal wanted to know if it was common for patients on Neurontin after a few months to become agitated. In the recent production, Pfizer produced information which was provided to prescribers in response to such an inquiry. Additionally, we produced to you all of the medical records that we have collected in the Barlow case, at no cost to you.

Pfizer's investigation indicates that none of the prescribers identified in this matter appear in any grant request, clinical trial information and/or received any payments from Pfizer. Despite the mention in document 130 of a possible participation in a preceptorship, after a reasonable, good faith search, Pfizer has been unable to locate records of any payment which would indicate that this prescriber actually participated in this program. As noted in our discovery responses, and as we informed you of previously, Pfizer is currently unaware of any databases or other centralized files of defendants that identify physicians who attended meetings or events related to Neurontin. As we previously told you, Pfizer has searched for any additional correspondence or "Dear Doctor" letters sent to Plaintiff's prescribers. Pfizer has not identified any such documents.

We will continue to supplement our production if additional responsive materials are located and as discovery progresses in each of the 70 cases moving towards a September 14, 2010, cut-off of phase-I discovery. Pfizer believes that it has complied with your discovery requests in this matter. Thanks. Catherine

As always, I'm happy to discuss these issues with you.