# EXHIBIT J

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

*Irene Barlow v. Pfizer Inc., CA No. A-05-175 (W.D. Tex.)*

IN RE NEURONTIN MARKETING          MDL No. 1629
AND SALES PRACTICES LITIGATION

## DECLARATION OF JEFFREY R. LILLY

1.      My name is Jeffrey R. Lilly.  I am a shareholder at Clark, Thomas & Winters, A

Professional Corporation, and am counsel of record for Pfizer Inc. ("Pfizer") and Warner-

Lambert Company, L.L.C., ("Warner-Lambert"), Defendants in *Barlow v. Pfizer Inc. et al.* now

pending in the United States District Court for the Western District of Texas.  The facts stated

herein are within my personal knowledge, based on my participation in discovery in this matter,

and are true and correct.

2.      Plaintiff Irene Barlow filed suit in the state district court in Travis County, Texas

on July 13, 2004.  Plaintiff claims her suicide attempt was caused by the culpable conduct of

Pfizer and Warner-Lambert in allegedly promoting the drug Neurontin for "off-label" uses.

Defendants removed the case on August 13, 2004.

3.      On August 31, 2004, Plaintiff served Defendants with 58 requests for production.

4.      On October 25, 2004, Defendants objected and responded to Plaintiff's discovery

requests.  Defendants objected, among other things, "to the document requests to the extent they

call for the production of proprietary, commercially sensitive, or other confidential documents,

the probative value of which is outweighed by the company's interest in preserving their

confidentiality.  The company objects to producing any documents until an appropriate

confidentiality stipulation is entered into by the parties and so ordered by the Court."  Subject to

this, Defendants agreed to produce thousands of pages of responsive documents, including the

Neurontin New Drug Application ("NDA") and Investigational New Drug Application ("IND")

which are multi-volume compilations of documents relating to preclinical and clinical trials, labeling, and marketing of the drug.

5.      The next day, on October 26, 2004, Plaintiff's counsel Jack London wrote a letter to my partner, Ken Ferguson, requesting that Defendants' counsel appear at his office for a conference on Defendants' objections on November 1, 2004. Mr. London also questioned why documents had not been provided with Defendants' objections and responses. Mr. Ferguson responded on October 27, 2004, agreeing to a conference, but requesting alternate dates, as we were unavailable on November 1. The letter further explained that Defendants could not produce documents until logistical issues were resolved and a protective order in place.

6.      On November 2, 2004, without further response to Defendants' October 27, 2004 letter and without any earnest attempt to confer, Plaintiff filed a motion to compel requesting that Defendants' objections be overruled in their entirety and all requested documents ordered produced. On November 11, 2004, my partner, Leslie Benitez, wrote to Plaintiff's counsel reiterating that Defendants had agreed to produce documents, but because they contain proprietary, commercially sensitive, and confidential information, production could not occur until we had a protective order in place. With that letter, Ms. Benitez enclosed a proposed protective order.

7.      On November 15, 2004, Mr. London wrote a letter to Ms. Benitez threatening a second motion to compel, incorrectly stating that no objection had been lodged as to the confidential nature of the documents. Mr. London stated: "I have to disagree with your request to enter into a protective order." On November 17, 2004, my office responded to this letter stating that a second motion to compel was unnecessary and premature and that we remained willing to confer in person. We again requested available dates for such a conference. We further explained that while we had voluminous documents ready to be produced, we needed to

have a protective order entered first. That same day, Plaintiff filed her second motion to compel without further conference. The first motion to compel had not yet been ruled upon.

8.      On December 2, 2004, the parties did confer in person. In addition to documents Defendants had already offered subject to protective order (including the NDA and IND), Defendants offered to produce documents from the *Franklin* matter that related to either: (1) Texas; or (2) Bipolar Disorder (the  illness for which Plaintiff was allegedly treated with Neurontin); or (3) the named co-defendant, Dr. Jay Seastrunk.  Plaintiff did not accept this offer. Additionally, no agreement was reached on the form of a protective order.

9.      On December 3, 2004, before either the first or second motion to compel had been ruled upon, Plaintiff filed a "Request for Ruling," on her prior motions to compel. Ignoring the voluminous documents Defendants had offered subject to a protective order during their conference on the previous day, Plaintiff misleadingly stated in this pleading that Defendants "will disclose no documents except by Order of this Court."

10.      On December 9, 2004, I wrote a letter to Mr. London outlining the categories of documents that Defendants had made and would continue to make available to Plaintiff if the parties could agree to a protective order. I also made clear that Defendants had never stated that a "court order" would be required before Defendants would produce these documents. Plaintiff's counsel subsequently agreed to review the documents that we offered related to the *Franklin* matter detailed in this letter.

11.      On December 14, 2004, Defense counsel made available to Plaintiff's counsel approximately 14,000 pages of documents, on the condition that counsel sign the form Western District of Texas protective order prior to reviewing documents. I was out of town on this day. When Mr. London and Mr. Pierce arrived at my office, they represented to my staff that we had agreed that Plaintiff's counsel could review the documents without signing a protective order, referencing my letter of December 9 wherein I stated that no "court order" was necessary for the

review of these documents. (As stated above, the first paragraph in that letter made clear that the documents would only be made available subject to a protective order being in place.) Due to this disagreement, Plaintiff's counsel did not review documents on this day as they refused to sign the protective order.

12.     On December 16, 2004, Plaintiff's counsel signed a protective order, briefly reviewed the documents, and selected all of them for production.

13.     On December 21, 2004, I wrote Plaintiff's counsel advising them that the documents they selected for production should be ready on December 22, 2004.

14.     On December 22, 2004, Defense counsel learned that the case had been remanded. Consequently, as no protective order had been entered by the state Court, I informed Plaintiff's counsel that the document production would have to be delayed until a protective order could be entered in state court. On December 30, 2004, Defendants proposed a state court protective order which included provisions that addressed differences between state and federal law. On January 7, 2005, Plaintiff proposed a different protective order. On January 12, 2005, we informed Plaintiff's counsel that their proposed protective order was not adequate and asked that they let us know what problems they have with our proposal so that we could work to resolve our differences.

15.     On January 26, 2005, Plaintiff's counsel signed their own new version of a protective order and forwarded a check to Defense counsel for the documents. This protective order was not one to which Defendants had agreed. On January 31, 2005, I informed Plaintiff's counsel that we were reviewing their proposed protective order and would not deposit their check until the documents were delivered. Beginning on February 3, 2005, multiple discovery motions were filed by both parties in state court. These motions were set to be heard on March 10, 2005.

16.     On March 1, 2005, I received a call from counsel for co-defendant Dr. Jay Seastrunk. Dr. Seastrunk's counsel informed me that Dr. Seastrunk was at all relevant times a citizen of California, not Texas. On March 8, 2005, my office received a declaration signed by Dr. Seastrunk confirming this fact. On March 9, 2005, Defendants removed the case a second time.

17.     On March 10, 2005, I wrote Mr. London informing him that unless Plaintiff objected, we would file the previously signed form Western District Protective Order with the Court. We would also immediately forward to them the previously reviewed and selected documents, and we did so on March 11, 2005.

18.     On April 1, 2005, Defendants supplemented their production with approximately 304 additional pages of documents as well as a CD containing research reports. On April 7, 2005, Defendants made a second supplementation of their production with approximately 562 additional pages of documents.

19.     On April 25, 2005, Defendants made a third supplementation of their production by providing two of three disks containing over 100,000 documents. (The third disk was forwarded on April 28, 2005.) Because Plaintiff's counsel had objections to the format of the disks, Defendants provided a second set of the disks on June 24, 2005.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed this 30th day of June, 2005.

Jeffrey R. Lilly