UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Magistrate Judge Leo T. Sorokin |

## DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this notice of supplemental authority to bring to the Court's attention the recent findings of fact and conclusions of law issued in *In re Vioxx Products Liability Litigation*, No. 2:05-md-1657, ECF Dkt. 45739 (E.D. La.) (Fallon, J.) (attached as Exhibit A).[1] In *Vioxx*, the State of Louisiana sought to recover amounts paid for Vioxx under the state's Medicaid program, based on claims that the manufacturer misrepresented or concealed the drug's cardiovascular risks and that the plaintiff would not have approved such payments had it known of those risks. *See id.* at 5. The court had previously granted partial summary judgment dismissing the plaintiff's statutory consumer protection and unjust enrichment claims, but conducted a bench trial with respect to the plaintiff's redhibition[2] claim. *See id.* at 6. Following the bench trial, the court issued findings of fact and conclusions of law determining that the

---

[1] Plaintiffs recently requested that the Court "order that no party file Notices of Supplemental Authority absent a new, binding, dispositive decision from the Supreme Court of California, the United States Court of Appeals for the First Circuit, or the United States Supreme Court." (Dkt. 2868 at 4-5.) Plaintiffs' request should be denied. Throughout this litigation, this Court has considered and relied upon decisions issued by various state and federal courts other than the ones Plaintiffs identify. Defendants submit that it would be unwarranted and inappropriate to bar a party from bringing to the Court's attention recent developments in the jurisprudence that directly bear on the issues now under consideration.

[2] The plaintiff's redhibition claim required proof of the following elements: "(1) the thing sold is absolutely useless for its intended purposes, or that he would not have bought it had he known of the defect; (2) that the defect existed at the time that he purchased the thing, but was neither known nor apparent to him; and (3) that the seller was given the opportunity to repair the defect." *In re Vioxx*, No. 2:05-md-1657, ECF Dkt. 45739 at 6 (citation and internal quotation marks omitted).

plaintiff had failed to prove the essential element of causation. *See id.* at 38.

To establish causation, the plaintiff was required to prove both that it had the legal right to deny coverage for Vioxx prescriptions, and that it would have done so but for the manufacturer's alleged misconduct. *See id.* The plaintiff claimed that "had it known of different information about Vioxx, [it] would have established an exclusive formulary [pursuant to the Medicaid statute] for the purpose of excluding Vioxx from the formulary, and thereby denied coverage for the drug." *Id.* at 25. But as the court found, "[t]he credible evidence shows . . . that [the plaintiff] could not, and would not, have established such a formulary." *Id.* at 25-26. Accordingly, the court concluded that the plaintiff "failed to satisfy its burden of proving causation." *Id.* at 38. The court rejected the plaintiff's contentions on various grounds that are equally applicable here.

(1) The Secretary of the department that administered the plaintiff's Medicaid program testified that he relied on a P&T Committee and a non-party contractor for his decisions regarding FDA-approved drugs. *See id.* at 29-30. The court found that, "[b]ecause . . . there is no evidence in the record of what recommendations these entities would have made had they possessed different data, it is not legally sustainable to conclude that [the Secretary] would have acted to deny reimbursements for Vioxx had the State received different information about the drug." *Id.* at 31.

Likewise, Plaintiff Kaiser Foundation Health Plan, Inc. ("KFHP") does not make reimbursement decisions, does not maintain a formulary, and does not issue formulary restrictions or guidelines. Instead, each of the eight non-party PMGs has its own commercial formulary independently established by the P&T Committee of that particular regional PMG. (Defendants' Proposed Findings of Fact [2808-1] ¶ 3.) Plaintiffs presented no evidence that any PMG other than SCPMG made any formulary decisions in reliance upon the DIS monographs that Plaintiffs claim were influenced by Defendants, and the evidence as to SCPMG (which was provided from only one voting member of the SCPMG P&T Committee) contradicted Plaintiffs' claims of reliance. (Defendants' Proposed Conclusions of Law [2808-2] at 4-5, Defendants'

2

Response to Plaintiffs' Proposed Conclusions of Law [2816] at 2-4, 11-12.)

(2)   Rather than accepting at face value the plaintiff's contentions regarding what it "would have done had it received different information about Vioxx," the court "examine[d] what [the plaintiff] actually did in a closely analogous situation." *Vioxx*, ECF Dkt. 45739 at 33. Although Vioxx had been voluntarily withdrawn from the market, other drugs of the same class remain on the market. *See id.* In 2005, the FDA determined that drugs of this class carry significant cardiovascular risks, and required that their labeling include a "black box" warning. *Id.* But the plaintiff "did not institute an exclusive formulary in response to this development. Instead, it continued to keep these drugs on its preferred drug list." *Id.*

Here, Neurontin remains on the market. But despite having filed suit in February 2005, the evidence showed that, up until a few days before trial, the Kaiser Permanente website included numerous articles recommending Neurontin for many of the off-label indications at issue here; that gabapentin remains on PMG formularies unrestricted; and that KFHP continues to pay for gabapentin prescribed for the off-label indications at issue. (2808-2 at 6-9; 2816 at 12-13.) Even today, the Kaiser Permanente website continues to list "Gabapentin" and "Neurontin" as the only drugs under the heading "Drugs for managing Pain Originating From a Nerve."[3] The website also states, even today, that "Gabapentin may also be used to treat other nerve pain conditions (e.g., diabetic neuropathy, peripheral neuropathy, trigeminal neuralgia)."[4] Another Kaiser website article on pain management medications continues to advise: "Like antidepressants, anti-seizure medications are often used for pain involving the nerves. Common types include . . . Neurontin (gabapentin)."[5] The Court should take judicial notice that, more

---

[3] https://members.kaiserpermanente.org/kpweb/drugency/conditiondrugsearch.do?conditionId=5425&name=Pain+Originating+From+a+Nerve&type=condition (last visited 6/30/10); *see also* DX 902A.

[4] https://members.kaiserpermanente.org/kpweb/drugency/drugdetails.do?drugID=242690&name=Neurontin+100+mg+Cap&index=true#Other%20uses (last visited 6/30/10); *see also* DX 902A.

[5] https://members.kaiserpermanente.org/kpweb/detailPage.do?cfe=226&html=/htmlapp/feature/226pain/nat_pain_medications.html (last visited 6/30/10); *see also* DX902.

than three months after the jury's verdict in this case – a verdict based on the notion that PMG physicians commit malpractice every time they prescribe Neurontin for these off-label neuropathic pain conditions – Plaintiffs still direct PMG physicians and KFHP members to use Neurontin for these conditions.

Likewise, DIS's 2002 class-wide AED monograph addressed evidence supporting use of another AED, topiramate, in treatment of bipolar disorder. Even though there were no DBRCTs supporting topiramate's efficacy in bipolar disorder, and there was one negative, unpublished study, DIS recommended and SCPMG adopted a formulary expansion to permit prescriptions of topiramate by psychiatrists. (2808-1 ¶ 36.)

(3)   The *Vioxx* court found that, despite the plaintiff's assertion that "it would have taken action" had it known of the drug's cardiovascular risks, the evidence "reveals that Plaintiff had sufficient information about these risks and did not take any action." *Vioxx*, ECF Dkt. 45739 at 34. In particular, the court "look[ed] to the information that Plaintiff, specifically the P&T Committee, had available to it from 2002 on and what actions they took in response to that information." *Id.* The evidence showed that Vioxx drug monographs specifically addressing cardiovascular risks had been distributed to the state's P&T Committee. *See id.* at 35-38.

> The point is that since February of 2002 the P&T Committee was aware of the potential cardiovascular risks of Vioxx . . . . Further, the 2003 and 2004 monographs provided further, more extensive information to the P&T Committee regarding the controversy surrounding Cox-2 inhibitors including Vioxx and yet at no time did the P&T Committee make any recommendations to try to restrict its use. Plaintiff's protestations now ring hollow.

*Id.* at 38.

Likewise, there is no evidence that knowledge of allegedly "suppressed" information would have been material to DIS or SCPMG. For example, DIS and SCPMG had actual knowledge of the Pande and Frye studies when DIS issued its 2002 class-wide AED monograph citing both studies as negative. (2808-1 ¶¶ 33-34; Defendants' Response to Plaintiffs' Proposed Findings of Fact [2815] ¶ 98.) DIS has never recommended any changes to Neurontin's formulary status based on these studies, SCPMG has never made any such changes, and the Ohio

PMG expressly permitted doctors to prescribe Neurontin for bipolar disorder after reviewing this monograph. (2808-1 ¶ 35; 2815 ¶ 9.) Similarly, DIS and SCPMG had actual knowledge of the Gorson study results and the potential inadvertent unblinding of the Backonja study when SCPMG expanded formulary restrictions to permit Neurontin use for neuropathic pain in 1999. (2808-1 ¶¶ 24-27; 2815 ¶¶ 41, 98-99.)

## CONCLUSION

For all of these reasons, Defendants respectfully submit that the decision discussed herein provides additional support for the Proposed Findings of Fact and Conclusions of Law they have submitted regarding Plaintiffs' UCL claims.

Dated: June 30, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:   /s/ Mark S. Cheffo
      Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Email: Mark.Cheffo@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:   /s/ Raoul D. Kennedy
      Raoul D. Kennedy

Four Embarcadero Center
San Francisco, CA 94111
Tel: (415) 984-6400
Email: Raoul.Kennedy@skadden.com

| CERTIFICATE OF SERVICE |
|---|
| I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on June 30, 2010.<br><br>/s/ Mark S. Cheffo<br>Mark S. Cheffo |

WHEELER TRIGG O'DONNELL LLP

By: /s/ James E. Hooper
James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel: (303) 244-1800
Email: hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

6