UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
:  MDL Docket No. 1629
In re: NEURONTIN MARKETING, :
SALES PRACTICES AND :  Master File No. 04-10981
PRODUCTS LIABILITY LITIGATION :
:  Judge Patti B. Saris
---------------------------------------------------------------x
:  Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO: :
:
ALL PRODUCTS LIABILITY CASES :
:
---------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF PRODUCTS LIABILITY PLAINTIFFS'
MOTION FOR AN ORDER AWARDING SANCTIONS AGAINST PFIZER
DEFENDANTS AND COMPELLING DEFENDANTS TO COMPLY WITH
THIS COURT'S OCTOBER 14, 2009 AND DECEMBER 8, 2009 ORDERS**

This Memorandum is submitted in support of Products Liability Plaintiffs' motion pursuant to Rule 37 of the Federal Rules of Civil Procedure, for an order awarding sanctions against Pfizer Defendants and compelling Defendants to comply with this Court's October 14, 2009 and December 8, 2009 Orders that mandate Defendants to produce documents up to the date of the Bextra settlement regarding the efficacy or side effects of Neurontin within forty-five days; documents and information regarding the process and events that led to the FDA label change for Neurontin in April 2009; and discovery of the in-house work, analyses, files and documents upon which Dr. Christopher Wohlberg relied or considered in his presentations to the FDA on January 31, 2009, June 2, 2008, and July 10, 2008.  ECF Doc. # 2125.  Plaintiffs respectfully request oral argument.

## PROCEDURAL HISTORY

On September 14, 2009, Plaintiffs moved by emergency motion to reopen discovery for information and documents concerning Neurontin that are responsive to Plaintiffs' discovery requests up until the April 23, 2009 change in the label for Neurontin, and Pfizer Defendants' recent August 2009, settlement with the U.S. Department of Justice regarding their off-label marketing of several drugs including Bextra and Lyrica.  ECF Doc. # 2090.  On October 14, 2009, this Court denied Plaintiffs' request to re-open discovery; however, the Court ordered that Defendants produce the following discovery:

> **[T]o the extent defendants possess documents, up to the date of the Bextra settlement, regarding the efficacy or side effects of Neurontin not previously produced, they shall produce the documents within forty-five days.**
>
> \* \* \*
>
> **The request for discovery into the FDA label change is ALLOWED.** [In this regard, Plaintiffs' Memorandum in support had indicated the importance of label change discovery, to wit, "The April 2009 label change for Neurontin is of similar critical significance, and Plaintiffs are requesting that discovery of Pfizer Defendants be re-opened to obtain documents and information so that Plaintiffs are fully apprised of the process and events leading up to the label change."  ECF Doc. # 2090 at 5.  "**Moreover, the label change, and all of the mechanics, processes, involvement of certain individuals etc., are of crucial significance to Plaintiffs' cases.**"  ECF Doc. # 2090 at 6.]
>
> \* \* \*
>
> **The request for discovery of the in-house work, analyses, files and documents upon which Dr. Christopher Wohlberg relied or considered for his presentations to the FDA on January 31, 2008, June 2, 2008 and July 10, 2008 is ALLOWED.**

ECF Doc. # 2125 (emphasis added).

Subsequent to the issuance of this Order, Defendants moved for clarification of the October 14, 2009 Order and argued that Plaintiffs were seeking too much discovery.  ECF Doc. ## 2176, 2177, 2178.  Plaintiffs opposed Defendants' motion for clarification.  ECF Doc. # 2183.

This Court denied Defendants' motion for clarification by an Electronic Order on December 8, 2009, stating that "[t]he Court does not view the motion as one for 'clarification'. The Court expects the parties to make their best efforts to resolve any discovery disputes."

To date, Defendants have essentially refused to comply with the Order of the Court. The only materials that have been produced are documents from the custodial files of Christopher Wohlberg (167,000 pages), and these materials were produced defectively and out of order[1]. As to what has been produced, there are attachments to e-mails that are missing and which Defendants have thus far refused to provide; and there are improper redactions of information. Plaintiffs raised these production issues no later than February 16, 2010[2]. As of the date of this motion, Defendants have represented that there are additional documents to be produced from the Wohlberg custodial file, but have not indicated the date by which they will be produced; Defendants have represented that there are an additional 2,000,000 pages of Wohlberg documents responsive to the Court's order which have not been produced.[3]

In an attempt to obtain Defendants' full compliance with this Court's Orders, Plaintiffs' attorneys conferred with defense counsel on several occasions and obtained a representation from defense counsel that Defendants would comply with the Court's October 14, 2009 Order. Despite Defendants' prior representation, Plaintiffs were advised by Defendants for the first time on March 1, 2010, that the only materials that would be provided were those materials from Wolhberg's custodial file, and that unless Plaintiffs agreed to cost-shifting for *searching* for responsive documents, Defendants were not going to even look for responsive documents to the

---

[1] *See* Declaration of Keith L. Altman at ¶¶ 15, 16.
[2] *See* e-mail from Keith L. Altman, Esq., attached to the Declaration of Andrew G. Finkelstein, Esq., as Exhibit A.
[3] Altman Decl., at ¶ 21.

court-ordered discovery.[4] In addition, Defendants demanded that Plaintiffs bear costs associated with the collection, attorney review, and production of responsive discovery.[5]

The instant motion was originally filed on March 19, 2010, ECF Doc # 2715, but was then withdrawn following the parties' meet/confer after a pre-trial conference with Judge William G. Young in the case-specific matter, *Shearer v. Pfizer Inc*. In sum, Plaintiffs were led to believe via the meet/confer that the parties' discovery dispute would be resolved. At the meeting, Defendants represented that they would:

- Produce the custodial files of additional individuals involved in the development of the briefing materials submitted to the FDA in response to the FDA's alert on suicidality.

- Meet with Plaintiffs to find a way to optimally search the remaining Wohlberg documents that had not been produced.

- Identify individuals whose files were collected as part of Defendants' already completed document collection process and from which documents had not already been produced. The parties would then discuss whether documents from any of those individuals should actually be produced.[6]

Based upon the above representations, Plaintiffs withdrew the instant motion. However, in the three months since the resolution of the *Shearer* case, and the withdrawal of the instant motion, no documents have been produced. Defendants have not identified any individuals whose files were collected as part of the original document collection process and which may contain documents that are responsive to the orders forming the basis of this motion. In effect, other than the production of the partial Wohlberg collection, Plaintiffs have received none of the

---

[4] *See* Altman Decl., at ¶¶ 19, 20
[5] *Id.*
[6] *Id.* at ¶ 22

4

discovery ordered by this Court. Plaintiffs have learned of the names of certain custodians involved in the preparation of Defendants' FDA briefing materials in question, and although Defendants have agreed to search for responsive documents, no documents have been produced from these custodians. Due to the passage of more than eight months and Defendants' defiance and flagrant disregard for the Orders of this Court, Plaintiffs have no alternative than to seek the intervention of this Court and the sanctioning of Defendants.

During each meet/confer between the parties, Defendants consistently advocated that this Court did not "re-open" discovery in its October 2009 Order, and the Court provided a window of only 45 days for the production of responsive documents. Plaintiffs are readily aware of the Court's language and have taken good faith steps towards reaching resolution, to no avail.

## ARGUMENT

Pursuant to Rule 37 of the Federal Rules of Procedure, if a party "fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." (Moore's Federal Rules Pamphlet 2008). A District Judge exercises broad discretion when supervising the discovery process. *Arzuaga-Perello v. Shell Co. (Puerto Rico),* No. 98-1834, 1999 U.S. App. LEXIS 2162 (1st Cir. Feb. 4, 1999); *Cruden v. Bank of New York,* 957 F.2d 961, 972 (2d Cir. 1992). "If, after a court order on a motion to compel, 'the plaintiffs . . . refuse[] to comply with the specific order for production, sanctions [can] appropriately [be] imposed under Rule 37(b)(2).'" *Big Top USA, Inc. v. Wittern Group*, 183 F.R.D. 331, 338 (D. Mass. 1998) (citing to *R. W. Int'l Corp. v. Welch Foods, Inc.,* 937 F.2d 11, 17 (1st Cir. 1991)). "[T]he sanction of dismissal must be available not merely to penalize egregious conduct, but also to deter such conduct." *Id.* The factors to be considered in arriving at an appropriate sanction are "(1) the willfulness or bad faith of the noncomplying party; (2) the

5

prejudice to the opposing party; (3) whether the procedural history indicates "protracted inaction or deliberate delay"; (4) the disregard of earlier warnings of the consequences of the misconduct; and (5) the availability of less draconian factors." *Id.* The First Circuit has stated that it will intervene concerning the trial court's discretion "only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party"' *Arzuaga-Perello*, 1999 U.S. App. LEXIS 2162 at *2 (citing to *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 91 (1st Cir. 1996)); *see also Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 51 (1st Cir. 2009) (affirming District Court's imposition of sanction of default judgment where defendants repeatedly failed to provide discovery and failed to produce court-ordered discovery or heed court's repeated warnings). It is well settled in the First Circuit that an adverse inference is an appropriate sanction if a party fails or refuses to produce a document that is relevant to a case:

> "The failure or refusal to produce a relevant document, or the destruction of it, is evidence *from which alone* its contents may be inferred to be unfavorable to the possessor, provided the opponent, when the identity of the document is disputed, first introduces some evidence tending to show that the document actually destroyed or withheld is the one as to whose contents it is desired to draw an inference." 2 *Wigmore on Evidence* § 291, at 228 (Chadbourn rev. 1979) (emphasis added).

*Marquis Theatre Corp. v. Condado Mini Cinema,* 846 F. 2d 86, 89 (1st Cir. 1988) (citing to *Knightsbridge Marketing v. Promociones y Proyectos,* 728 F.2d 572, 575 (1st Cir. 1984)). An adverse inference instruction seeks to address the harm suffered due to the failure to produce may take many forms dependent upon the gravity of the failure and whether the act was willful or in bad faith. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC,* No. 05 Civ. 9016 (SAS), 2010 U.S. Dist. LEXIS 4546 at *28-30 (S.D.N.Y. Jan. 15, 2010).

Defendants failed to make any mention that Plaintiffs should be sharing the costs for this discovery in their papers when Defendants opposed Plaintiffs' emergency motion to reopen discovery for information and documents concerning Neurontin that are responsive to Plaintiffs' discovery requests up until the April 23, 2009 change in the label for Neurontin, and Defendants' recent August 2009 settlement with the U.S. Department of Justice regarding their off-label marketing of several drugs including Bextra and Lyrica. ECF Doc. # 2111. Defendants thus waived any such an argument in regard to the discovery at issue. It is clear that Defendants are attempting to circumvent this Court's Order and avoid production of this discovery. Defendants should be estopped from making such an argument at this subsequent late date. In good faith, Plaintiffs have tried to obtain the court-ordered discovery and have conferred with Defendants on many prior occasions prior to seeking this Court's intervention. Plaintiffs will be severely prejudiced in prosecuting these actions if Defendants are not ordered to comply with this Court's prior Order and produce this court-ordered discovery within the next thirty days. Moreover, Plaintiffs request that this Court award sanctions for Defendants' non-compliance with the Orders, including the cost of Plaintiffs' counsel's expenses and time for researching and briefing the within motion and the motion which was filed on March 19, 2010.

## I. DEFENDANTS HAVE FAILED TO COMPLY WITH THIS COURT'S DISCOVERY ORDERS

First, this Court ordered Defendants to produce all materials on safety and efficacy not already in the possession of Plaintiffs. Not only have Defendants produced nothing in compliance, they have refused to even search readily accessible materials unless Plaintiffs agree to cost-shifting. Second, this Court ordered Defendants to produce documents associated with the April, 2009 labeling change. Indeed, the Court stated "the label change, and all of the mechanics, processes, involvement of certain individuals etc., are of crucial significance to

7

Plaintiffs' cases." ECF Doc. # 2090 at 6.  To date, Defendants have produced nothing, despite representing to the Court they would produce materials from the NDA.  ECF Doc. # 2177 at 2.  Furthermore, Plaintiffs were specifically seeking the internal documents (e.g., emails/attachments and employee-level memoranda that reflect involvement of specific individuals) concerning the labeling change, and this Court did not limit the request to just materials in the NDA.  Lastly, this Court ordered Defendants to produce materials that formed the basis of the materials relied upon by Dr. Wohlberg in his FDA presentations.  Despite the involvement of several individuals in preparing those materials, Defendants have unilaterally and unreasonably limited their response to materials in the possession solely of Dr. Wohlberg.

Subsequent to this Court's order of October 14, 2009, Plaintiffs attempted to meet and confer with Defendants concerning the order.  *See generally* Declaration of Keith L. Altman, Esq.  Plaintiffs requested that Defendants provide a list of custodians who may have responsive documents regarding safety and efficacy.  Plaintiffs requested that Defendants similarly identify certain individuals with particularized knowledge of the labeling revision, as recognized by this Court as crucial information.  Defendants have refused to make even a modest attempt at complying with the Court's Order, claiming, contrary to well established caselaw and the Federal Rules of Civil Procedure, that Plaintiffs must first agree to cost-shifting.  Defendants have taken the position that any discovery owed to Plaintiffs is not reasonably accessible, regardless of the burden.

Not only have Defendants refused to identify or disclose materials regarding the aforementioned labeling revision of 2009, about which Plaintiffs have no idea whether Defendants have even yet collected, Defendants refuse to identify and/or produce materials already collected and available on an electronic hard-drive in Defendants' possession.

Specifically, Defendants possess a hard-drive of documents that includes their already completed collection of custodial file documents never before provided to Plaintiffs.[7] Consistent with the Court's Order to provide materials regarding safety and efficacy of Neurontin, Plaintiffs have requested that Defendants produce responsive documents from this centralized collection in their possession. However, Defendants have refused to do so. Defendants complain about the burden of complying with this Court's Order, claiming any production is too burdensome, regardless of size. If Defendants were really interested in demonstrating unreasonable burden to the Court, Defendants would connect the external hard drive which contains the documents they already collected,[8] run searches on topics of safety and efficacy that take little, if any time,[9] and report the number of documents responsive and not already produced. Instead, Defendants have chosen to make wildly unsupported claims of burden and then simply do nothing. Such behavior is willful and deserving of sanctions from this Court.

There is no question that there were materials that could have easily been searched with minimal effort. Defendants' Rule 30(b)(6) witness, Laura Kibbe, during her April 7, 2008 deposition, testified that Defendants had collected documents from more than 200 custodians.[10] The documents are maintained in storage that could be readily made available for searching. Defendants have failed to take even this step. Searching these already-collected materials is a trivial process according to Rule 30(b)(6) witness Kibbe.[11] There is simply no excuse for Defendants not searching the materials already collected for responsive documents since it would

---

[7] Previously, in their Motion for Protective Order, ECF Doc. # 2089, Defendants took the absurd position that it would cost nearly $114,000 for the production of a sales representative file that averaged 425 pages, but the Court denied Defendants' motion. Defendants have taken a similar position here, that even though Defendants have responsive materials on an accessible hard drive that can be searched, this represents an unreasonable burden. Defendants' position is untenable as it flies in the face of the spirit of Rule 26(b)(2)(b).

[8] *See* Excerpts from Deposition of Laura Kibbe, Pl.'s Ex. B, at 24:16-25:24.

[9] *Id* at 27:21-28:5.

[10] *Id* at 16:14-16:22.

[11] *Id* at 27:21-28:5.

have taken little, if any effort, to search these materials. If it appeared that there was a large volume of responsive material, Defendants could have conferred with Plaintiffs to see if appropriate limitations could be made. Instead, Defendants did *nothing* to comply with the Court's order while at the same time assuring Plaintiffs that they would comply.

Moreover, Defendants' simply refused to provide the identity of any individuals for whom they collected documents to assist the parties in further refining this Court Order. This information was readily available to Defendants as stated by Laura Kibbe at her deposition.[12] In effect, Defendants: (1) failed to offer anything to assist Plaintiffs in limiting the scope of the Court's Order, (2) then sought relief from the Court, (3) were denied the relief, (4) assured Plaintiffs that they would comply with the Court's Orders; and then (5) ignored the Court's Orders. As to this Court's Order concerning documents on safety and efficacy not already produced, Defendants have produced nothing and have stated that they will not even search for responsive materials unless Plaintiffs agree to cost-shifting. Such conduct is outrageous and should not go unsanctioned by this Court.

During the parties meet and confer call of March 1, 2010, Defendants indicated that in response to the Court's Order on documents that form the basis of the documents Wohlberg relied on, they were only going to produce documents directly from Wohlberg's file.[13] This completely ignores the fact that Wohlberg did not have anything to do with the statistical analyses contained in the FDA briefing materials, yet he obviously relied upon the statistical analyses in terms of making a presentation to the FDA opposing the FDA's recommendation for a label revision on suicidality. During the initial meet and confer on the Court's Order, Plaintiffs asked Defendants to provide a list of individuals involved in the preparation of the briefing

---

[12] *Id* at 122:3-123:15.
[13] Altman Decl. at ¶ 19.

materials used and relied upon by Wohlberg:  Defendants simply refused.  After receiving the incomplete Wolhberg production, it is clear Wohlberg is not the only individual with responsive materials to the Court's Order.[14]  Plaintiffs brought to Defendants' attention that their employee, Ed Whalen, Pfizer's Product Statistical Lead,[15] was the person primarily responsible for Defendants' statistical analysis (relied upon by Wohlberg).  Plaintiffs also brought to Defendants' attention that the incomplete Wohlberg production reflected that  Ed Whalen was sent by Defendants to attend a talk given by Dr. Robert Gibbons, one of Defendants' experts.[16]  Notes were taken of this meeting where Dr. Gibbons discussed his work with Neurontin.  As stated in the past, Plaintiffs believe that it is important to understand why the reports of Defendants' litigation expert differ from that of the company's internal analyses provided to FDA.  Not only did Defendants refuse to volunteer Ed Whalen as a person with knowledge, Defendants have provided no justification for not providing Ed Whalen's documents, along with others responsible for the development of the briefing materials relied upon by Wohlberg.  When asked about the documents from Ed Whalen's files, Plaintiffs were told by Defendants that the documents would be produced only if Plaintiffs were willing to bear the costs of the production starting with collecting responsive documents.  Defendants' delay in production of documents responsive to this Court's Order has consequently delayed Plaintiffs' ability to depose Wohlberg.

   Importantly, Plaintiffs are not opposed to suggestions by Defendants as to how documents which have not yet been produced can be narrowed, but it is unfair for the burden to be completely placed upon Plaintiffs for such narrowing.  If Defendants do not want to take the

---

[14] In a conversation with defense counsel on March 18, 2010, Plaintiffs' attorneys learned for the first time that there was a significant error by Defendants' vendor in producing the Wohlberg files.  Apparently, of the Wohlberg documents produced to Plaintiffs, more than 2,000,000 pages of documents were collected as attachments to the produced documents, yet the attachments have not been produced.  Defendants have taken the position that none of these documents will be produced to Plaintiffs unless Plaintiffs indicate which documents are desired.  This turns the document production process on its head.
[15] Pl.'s Ex. C, PFIZER_WOHLBERG_019588.
[16] Pl.'s Ex. D, PFIZER_WOHLBERG_046824.

11

time to review the materials that this Court ordered them to produce, then they can simply produce all of the documents under a Fed. R. Evid. 502(d) agreement that would allow for the recovery of privileged documents inadvertently produced.

Following the pre-trial conference for the *Shearer* case, and after the original filing of this motion, the parties met and conferred. Defendants agreed to take various actions including (a) identifying and producing documents from other custodians involved in the development of the FDA briefing materials, (b) identifying those individuals whose files had already been collected but never produced, and (c) working with Plaintiffs to find the optimal way to produce the additional Wohlberg documents. Based upon these representations, Plaintiffs withdrew the instant motion.

To date, Defendants have identified certain individuals involved in Pfizer's FDA briefing package for which they would produce documents, but no documents have been produced. Defendants now refuse to identify those individuals whose files had been previously collected. As to the Wohlberg documents, the parties have agreed to defer the search of these materials pending the production of the other custodians from the briefing materials. In regard to the safety and efficacy portion of the order as well as the briefing materials, Defendants have essentially refused to comply with this Court's Order despite assurances that reasonable compliance would be forthcoming with the withdrawal of Plaintiffs' original motion to compel.

Plaintiffs request that the Court's Orders be complied with as written and that the Court find that Defendants have waived any further objections. In the event that the Court allow Defendants another opportunity to narrow the discovery, Plaintiffs should be provided with the identity and description of employment position of custodians whose files were collected as well as the search terms used by Defendants to find responsive documents. As noted above, it is clear

12

that Defendants' conduct is willful and that the discovery which this Court ordered Defendants to produce is relevant and of great import to several issues in this case. Plaintiffs will be severely prejudiced in their prosecution of this action if they are not able to obtain this discovery.

## II.     DEFENDANTS' CONDUCT IS WORTHY OF SANCTIONS

Plaintiffs respectfully request that this Court order that Defendants will receive an adverse inference instruction to the jury in future trials given that Defendants withheld relevant evidence during the discovery of the case, and that this evidence will be weighed against Defendants and in favor of Plaintiffs. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC,* 2010 U.S. Dist. LEXIS 4546 at *28-30. In the alternative, Plaintiffs request that this Court issue an second order compelling Defendants to produce these documents and issue appropriate sanctions for Defendants' non-compliance with the Orders, including the cost of Plaintiffs' counsel's expenses and time for researching and briefing the within motion and the motion which was filed on March 19, 2010.

## CONCLUSION

Plaintiffs therefore respectfully request that this Court order that the Court issue an adverse inference instruction to the jury in future trials that Pfizer Defendants have withheld relevant evidence during the discovery of the case pertaining to the safety and efficacy of Neurontin, and that this evidence will be weighed against Defendants and in favor of Plaintiffs. This sanction can cease upon this Court's acknowledgement that Defendants have met with their obligations to produce documents consistent with the Court's discovery orders. In t he alternative, Plaintiffs request that this Court issue a second order compelling Defendants to produce these documents and issue appropriate sanctions for Defendants' non-compliance with

13

the Orders, including the cost of Plaintiffs' counsel's expenses and time for researching and briefing the within motion and the motion which was filed on March 19, 2010.

Dated: July 2, 2010                              Respectfully submitted,

*Members of Products Liability
Plaintiffs' Steering Committee*

By:     **/s/ Andrew G. Finkelstein**
          Andrew G. Finkelstein, Esquire
          Finkelstein & Partners, LLP
          1279 Route 300, P.O. Box 1111
          Newburgh, NY  12551

By:     **/s/ Jack W. London**
          Jack W. London, Esquire
          Law Offices of Jack W. London
             & Associates
          3701 Bee Cave Rd., Suite 200
          Austin, TX  78746

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on July 2, 2010.

          **/s/ Andrew G. Finkelstein**
          Andrew G. Finkelstein, Esquire

14