UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-----------------------------------------------------------x
                                                           :   MDL Docket No. 1629
In re:  NEURONTIN MARKETING,                               :
        SALES PRACTICES AND                                :   Master File No. 04-10981
        PRODUCTS LIABILITY LITIGATION                      :
                                                           :   Judge Patti B. Saris
-----------------------------------------------------------x
                                                           :   Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:                                  :
                                                           :
        PRODUCTS LIABILITY ACTIONS                         :
                                                           :
-----------------------------------------------------------x
```

## DECLARATION OF KEITH L. ALTMAN

I, Keith L. Altman, Esq. declare as follows:

1.   I am an attorney employed by the firm of Finkelstein & Partners, LLP. My business address is 1279 Route 300, P.O. Box 1111, Newburgh, NY 12551. I have been working on the Neurontin matter since the Fall of 2003 and have been the individual responsible for the receipt of the document productions from the Pfizer Defendants on behalf of the Products Liability Plaintiffs in both the federal multidistrict litigation and the New York coordinated litigation. I am the founder and co-chair of the AAJ Electronic Discovery Litigation Group. Furthermore, I am a member of The Sedona Conference Working Group One on electronic discovery. I have personal knowledge of all aspects of this declaration and if necessary, I am prepared to demonstrate these facts to this Court.

2.   On October 19, 2009, and subsequent to this Court's Order of October 14, 2009, I participated in a meet and confer with defense counsel concerning the Order. At the meet and confer, Plaintiffs requested information from defense counsel concerning custodians and other sources of material relevant to the order in an attempt to minimize Defendants' burden in

complying with the Order. Despite these attempts, defense counsel refused to provide any meaningful information that would have been of assistance. Instead, Defendants looked to Plaintiffs to provide concessions concerning responsive materials in a vacuum.

3. For example, one of the key questions currently in the litigation is why there was a substantive difference between the briefing materials provided by Defendants to the FDA regarding suicidality and that of Defendants' litigation expert, Robert Gibbons. Consequently, Plaintiffs sought to learn the names of the individuals who were responsible for the development of the briefing materials. Defendants were unwilling to identify any such individuals and simply offered the files of Dr. Christopher Wohlberg. Dr. Wohlberg is not a statistician and it is unlikely that he was solely responsible for this document.

4. Had Defendants been forthright with information concerning sources of materials responsive to the Court's order, Plaintiffs would have worked to minimize the burden of production. Instead, Plaintiffs were forced to rely upon Defendants' assurances that appropriate materials would be produced.

5. As to the alleged burden of production of responsive materials, including custodial file documents of Defendant employees with knowledge about the safety and efficacy of Neurontin, I have reviewed the Declaration of Ronke Ekwensi, dated November 19. 2009, and submitted by defense counsel on November 20, 2009. ECF Doc. # 2178. On its face, the Declaration provides little, if any, meaningful information concerning the burden of complying with the Court's Order.

6. First, it is unknown how many custodial files are truly in play since Defendants have refused to provide any meaningful information on the responsive sources. (e.g., Who are the custodians? How many custodians are there? What is the volume of their files?). Plaintiffs'

counsel has consistently indicated to Defendants that their claimed burden as to production efforts cannot be evaluated without answers to these simple questions.

7. Next, there is Defendants' blanket assertion concerning how difficult it is to collect and review documents. I have reviewed the testimony of Defendants' former employee (and in-house counsel) Laura Kibbe, from her deposition dated April 7, 2008, which I attended. In the deposition, Ms. Kibbe testified that documents were collected from over 200 custodians. Importantly, I have reviewed the document production in this MDL, and documents were produced from approximately 100 custodians. Therefore, there are approximately 100 custodial files which were not produced. According to Ms. Kibbe's testimony, it would not be difficult to load the remaining custodians and search for responsive files. At no time have Plaintiffs ever been informed as to which custodial files Defendants has in their possession. Ms. Kibbe indicated that such information was maintained in a database and thus could easily be provided to Plaintiffs. Using this list, Plaintiffs could determine which, if any, of the custodians might have information responsive to the Court's Order.

8 Furthermore, it is unclear if Defendants continued to collect documents from custodians after the close of discovery in 2007. If so, then much of the cost associated with production of documents, collection, has already been done and it would also be a simple matter to search these additional collected files for responsive materials.

9. Next, there is the assertion that each custodian would have 650,000 pages of materials to review on average. Ekwenski Decl. at 3. Even if that were so, and it is nothing more than pure speculation, that says nothing about the materials that would be responsive to keyword searching. The Declaration suggests that each page would be reviewed for responsiveness, but this is not how Defendants have produced documents in the past. After

3

appropriate custodians were identified, keyword searches were run on the resulting material and only upon this final collection was a review performed. As Ms. Kibbe testified, running searches on the materials is a trivial task. If Defendants were really interested in providing the court with meaningful information on the burden, then Defendants could have provided an accurate count of how many pages of documents satisfy the keyword queries already in use. Absent this information, there is no ability to test the accuracy of Defendants' estimate.

10. A review of the document production thus far shows that few custodial files exceeded 50,000 pages and that assumes all of the materials would need to be produced from scratch. Since the Court's Order was limited to just those materials not previously produced, one would think that the amount of material would be far less than that.

11. The suggestion that it would take more than 2750 hours to review the purported production as described in the Declaration has no basis. Ekwenski Decl. at 5. Furthermore, according to the Declaration, this does not include the cost of a privilege review. It is inconceivable how it could take that many hours to simply review for responsiveness a collection of materials that will already have been searched for keywords such as "Neurontin" and "suicide." Noteworthy, at the hearing before the Court on March 23, 2010, Defendants provided testimony on burdens associated with the production of sales representative materials and the Court found "that the expert's assumptions forming the basis of her analysis are neither applicable to this case nor the discovery under discussion." ECF Doc. # 2751. Defendants have effectively employed the same tactics here.

12. As to the question of privilege review, Defendants' document production is very sophisticated and it is likely that searches could be run that would narrow the range of materials that would need to be reviewed for privilege. In addition, the newly enacted Rule 502(d) of the

4

Federal Rules of Evidence could be used to provide that production of a privileged document would not constitute a waiver. This rule was implemented for precisely the reason Defendants complain of to reduce the cost of privilege review.

13.  A further review of the Declaration does not reveal that Defendants are claiming that the materials in question are inaccessible or that it would be difficult to collect.

14.  On its face, the Ekwnsi Declaration is nothing more than unsupported assertions of burden in producing materials that will by definition be responsive to the Court's Order. Furthermore, Defendants have taken no reasonable steps to minimize any burdens of complying with the Court's Order.

15.  Subsequent to the Courts Order of December 8, 2009 directing the parties to meet and confer on the scope of production in compliance with the Court's October 14. 2009 Order, Defendants refused to have any meaningful discussions concerning the scope. Defendants represented that they would comply with the Court's Order but refused to provide any details.

16.  In December, 2009, Defendants produced approximately 18,000 pages of documents from the files of Christopher Wohlberg. At the time, it appeared that the production was incomplete. I contacted Defendants, who confirmed that the production was not complete and that more documents would be produced.

17.  In mid January, 2010, Defendants produced approximately 150,000 additional pages from the files of Christopher Wohlberg. The production appeared to be defective in that many e-mails were missing attachments. Furthermore, it appeared that in this wave of the production, all of the documents redacted by Defendants were produced consecutively out of order from where they were maintained (as if someone effectively threw the documents into the air only to collect them out of order once they came to rest on the floor). I contacted Defendants

5

on February 16, 2010, to raise these problems.  Defendants stated they would look into the problems, but did confirm that the redacted documents were separated from where they originally were maintained.  In effect, this makes the review of the documents far more difficult.

18. Also in mid January, Defendants produced some 50,000 pages for the case-specific matter, *Shearer v. Pfizer Inc.*, comprising of materials referencing Dr. Keith Edwards. Based upon my review of these materials, it would appear that these documents did satisfy the Court's Order with respect to the Edwards documents.  I would add, though, that Defendants produced documents that had been previously produced instead of simply identifying the Bates numbers of already produced documents.  It also seems that there are documents from custodians from which Plaintiffs had previously received productions with dates that were prior to the discovery cutoff.  Without substantial effort, Plaintiffs can not determine whether these documents had been produced in the past, but it certainly places doubt on the adequacy of Defendants' previous production.  I asked Defendants why these documents had not been produced in the past, and Defendants were not able to confirm that they had been previously produced, or if not, why.

19. On March 1, 2010, I participated in a conference call with Defendants' attorneys, Mark Cheffo and Catherine Stevens, to discuss compliance with the Court's October, 2009 Order.  On the call I was told that with respect to the Order on Wohlberg's reliance materials, Defendants would not produce documents from any other custodian other than Wohlberg unless Plaintiffs were willing to agree to cost-shifting.  I pointed out that there were other important individuals with responsive materials consistent with the Court's Order, as I had during the October meet and confer, but was told that no such files would be produced and that Wohlberg's files that had been produced were adequate.

20. As to the remainder of the Court's Order, I was told that Defendants had not even searched for responsive materials and would not do so unless Plaintiffs agreed to cost-shifting. To date, other than documents that may have been in the possession of Wohlberg, no documents have been produced in compliance of the Court's Order to produce documents on the 2009 labeling change or safety and efficacy documents not already produced.

21. On March 18, 2010, I was informed for the first time by defense counsel Catherine Stevens that due to a vendor error, there were 2,000,000 pages of Wohlberg documents that had not been produced. These documents were attachments to previously produced documents (i.e., such as emails). I was told that Defendants had no intention of producing any of these attachments/materials unless Plaintiffs first identified each email for which Defendants should produce the attachment.

22. On or about March 24, 2010, I again participated in a meet and confer with defense counsel immediately following the final pre-trial conference before Judge William G. Young in the *Shearer* case. Importantly, just prior to the *Shearer* trial, Plaintiffs had previously filed a motion for sanctions and to compel Defendants' compliance with this Court's discovery order. At that meeting, Defendants stated they would provide the names of additional custodians associated with the development of the FDA briefing materials associated with Neurontin and suicidality. Furthermore, Defendants stated that they would provide the names of the additional custodians for which files had already been collected, but never produced. Based upon this information, the parties would determine the most efficient manner for Defendants to comply with this Court's October 2009 Order. Relying on these assurances, Plaintiffs withdrew the aforementioned motion to compel.

23. Subsequent to the March 24, 2010 meeting, I participated in additional conversations with Defendants concerning the production. First, the parties have agreed that with respect to the additional Wohlberg materials, Defendants would first produce the other ordered materials which would be then used to determine an efficient method of production for the Wohlberg materials. As of the date of this motion, Defendants have only identified two individuals who were involved in the development of the briefing package and for which they will produce custodial files. Second, as to any other custodial file documents that may be responsive to the Court's order regarding the safety and efficacy of Neurontin, Defendants now refuse to identify any individuals with documents, and they refuse to identify any of the approximate 100 individuals for whom they collected electronic documents already (as acknowledged by Ms. Kibbe).

Signed under the penalties of perjury this 2nd day of July, 2010.

Dated: July 2, 2010

                                                **/s/ Keith L. Altman**
                                                Keith L. Altman

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on July 2, 2010

Dated: July 2, 2010

                                                **/s/ Andrew G. Finkelstein**
                                                Andrew G. Finkelstein