UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| THIS DOCUMENT RELATES TO: | Master File No. 04-10981 |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | Judge Patti B. Saris |
| | Magistrate Judge Leo T. Sorokin |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ADMIT TABLES SHOWING DAMAGES WITH INTEREST INTO EVIDENCE

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer"), respectfully submit this opposition to Plaintiffs' Motion to Admit Tables Showing Damages with Interest Into Evidence.  For the reasons discussed below, prejudgment interest cannot properly be awarded on Plaintiffs' RICO claims and, as a matter of law, cannot be awarded on Plaintiffs' claims under the California Unfair Competition Law ("UCL").  As a result, Dr. Hartman's interest calculations are irrelevant and should not be admitted.  Further, Dr. Hartman's calculations should be excluded because they bear no relation to the damages actually awarded by the jury and use an inappropriate rate to calculate interest.[1]

## ARGUMENT

### I.  Plaintiffs Cannot Properly Be Awarded Interest On Their RICO Claims

#### A.  The Overwhelming Majority Of Federal Courts Have Refused To Award Interest Under Federal Statutes Providing Damage Multipliers, Including RICO

As numerous federal courts have held, an award of prejudgment interest is unnecessary and inappropriate when a plaintiff recovers statutory damages that are a multiple of actual damages.  As the Seventh Circuit has explained:

> [P]rejudgment interest should *not* be awarded in a case such as this where the violation of the age discrimination law is found to be willful and as a result the

---

[1] Defendants incorporate by reference their prior Bench Memorandum in Response to Kaiser's Request for Prejudgment Interest [2726].

damages are doubled . . . .  Like most of the other circuits, we have held that if
double damages are awarded[,] prejudgment interest may not be awarded. . . .
[W]hen such interest is added to an award that is half punitive, as the plaintiffs
would have us do, it ceases to have a compensatory function and becomes an
unauthorized form of punitive damages.

*Fortino v. Quasar Co.*, 950 F.2d 389, 397-98 (7th Cir. 1991).  Similarly, in a case under the

Clayton Act, the Second Circuit has explained:

It is reasonable to interpret Congress's silence on the matter as indicating that
trebled damages are sufficient penalty and that interest need not be included.
Moreover, trebled damages will more than adequately compensate [the plaintiff]
for its injuries.  Thus, there is no inherent policy reason to award moratory interest
here and not doing so avoids difficult questions of proof – including highly
abstruse inquiries as to proper rates and the time from which interest should run.
Since the trebled damage device in any event adequately serves the penal and
remedial purposes of the antitrust laws, we believe that it is sounder, absent
contrary express Congressional intent, to consider that these difficult and time-
consuming inquiries are intended to be avoided.

*Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 80 (2d Cir. 1971), *rev'd on other grounds*,

409 U.S. 363 (1973); *see also Fishman v. Estate of Wirtz*, 807 F.2d 520, 561 (7th Cir. 1986)

(disallowing prejudgment interest on treble damages in federal antitrust case); *Am. Timber &*

*Trading Co. v. First Nat'l Bank of Or.*, 690 F.2d 781, 786 (9th Cir. 1982) ("[T]he district court

properly refused to add prejudgment interest to the already substantial double recovery under the

Bank Act.").

The vast majority of courts that have examined this issue as applied to RICO have

concluded that prejudgment interest is inappropriate because RICO treble damages more than

adequately compensate plaintiff for actual damages suffered.  *See Abou-Khadra v. Mahshie*, 4

F.3d 1071, 1084 (2d Cir. 1993) (affirming district court's decision not to award prejudgment

interest); *Masco Corp. v. Bennett*, No. 3:08-cv-161-RJC-DCK, 2010 WL 1405136, at *3

(W.D.N.C. Mar. 31, 2010) ("The Court finds that in this matter the treble damages more than

adequately compensate the plaintiffs for their losses and thus declines to grant the plaintiffs

prejudgment interest."); *State ex. rel. Zoeller v. Pastrick*, No. 3:04 CV 506, 2010 WL 935583, at

*16 (N.D. Ind. Mar. 11, 2010) ("Because the Seventh Circuit has historically disallowed

prejudgment interest where a plaintiff received doubled or trebled damages, the court denies plaintiffs' request for prejudgment interest on the City's treble damages award under RICO."); *Chubb & Son Inc. v. Kelleher*, No. 92CV4484CBARML, et al., 2006 WL 1789118, at *5 (E.D.N.Y. Apr. 28, 2006) (finding that "the treble damages more than make [the plaintiff] whole, and that prejudgment interest on the RICO claim would be an undue windfall"); *Panix Prods., Ltd. v. Lewis*, No. 01 Civ. 2709 HB, 2003 WL 21659370, at *3 (S.D.N.Y. July 15, 2003) (finding that awarding prejudgment interest in addition to RICO treble damages would be excessive); *Group III Capital, Inc. v. Parasol Group, Ltd.*, No. 00 Civ. 6860, 2003 WL 1948801, at *3 (S.D.N.Y Apr. 23, 2003) (same); *In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996) (refusing to award prejudgment interest on RICO trebled damages and noting that courts declined to award judgment interest "[i]n the majority of cases where a plaintiff's damages are trebled" because "courts have found those damages sufficient compensation"); *Bingham v. Zolt*, 810 F. Supp. 100, 102 (S.D.N.Y. 1993) (observing that "treble damages will usually more than adequately compensate a plaintiff for actual damages suffered"); *Nu-Life Constr. Corp. v. Bd. of Educ. of N.Y.*, 789 F. Supp. 103, 105-06 (E.D.N.Y. 1992) (denying prejudgment interest on RICO treble damages award because such interest would "'overcompensate'" plaintiff and "provide an undeserved windfall"); *La. Power & Light Co. v. United Gas Pipe Line Co.*, 642 F. Supp. 781, 811 (E.D. La. 1986) ("The RICO statute does not provide for the recovery of prejudgment interest, and federal courts have generally refused to award prejudgment interest on claims which provide for multiple damages. They have done so for the sound reason that multiple damages more than reimburse a plaintiff for any loss he suffers from an unavailability of the funds he seeks to recover.").

In prior briefing, Plaintiffs relied on *Aetna Casualty Surety Co. v. P&B Autobody*, 43 F.3d 1546 (1st Cir. 1994), to argue that there is no abuse of discretion when a court applies prejudgment interest to a treble damages award under RICO. However, Plaintiffs have not identified any factors that would justify a discretionary award of interest in this case. For example, in *Bingham*, the court "recognize[d] the possibility that ***exceptional circumstances***"

may justify an award of prejudgment interest, such as where treble damages do not adequately compensate the plaintiff or the defendant unreasonably delayed the litigation. *See* 810 F. Supp. at 102 (emphasis added). Neither of these factors is present in here. Instead, the fact that Plaintiffs are fully compensated by an award of treble damages (as discussed above), together with the significant uncertainty in the calculation of Plaintiffs' damages (*see* Section I.B *infra*), counsels against such an award.

Moreover, the discussion of prejudgment interest played *no role* in the First Circuit's decision in *Aetna* because, as the court made clear, the defendant failed to preserve the issue for appeal. *See Aetna*, 43 F.3d at 1571. As other courts have noted, this discussion is non-binding dicta. *See Harding v. Cianbro Corp.*, 473 F. Supp. 2d 89, 100 (noting that the discussion of prejudgment interest in *Aetna* is dictum), *amended on other grounds*, 498 F. Supp. 2d 337 (D. Me. 2007); *Strachman ex rel. Estates of Ungar v. Palestinian Auth.*, 304 F. Supp. 2d 232, 240 (D.R.I. 2004) (same). Indeed, the First Circuit itself has acknowledged that the issue remains unsettled post-*Aetna*: *See Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 87-88 (1st Cir. 1998).

Accordingly, because the availability of RICO treble damages already goes far beyond the purpose of a prejudgment interest award – to fully compensate Kaiser for any alleged loss – this Court should, consistent with the numerous decisions discussed above, decline to award prejudgment interest on Kaiser's RICO claims.

## B. Plaintiffs' Damages Are Too Uncertain To Support An Award Of Interest

For the reasons set forth in Defendants' prior memoranda of law,[2] the evidence offered by Plaintiffs' in support of their claimed damages is extremely speculative and subject to wide margins of error. Even if Plaintiffs' damages evidence were sufficient to support a judgment

---

[2] Memorandum of Law in Support of Defendants' Motion for Judgment as a Matter of Law Based Upon Lack of Sufficient Evidence of Injury or Causation [2671]; Memorandum of Law in Support of Defendants' Motion for Judgment as a Matter of Law Based Upon Lack of Sufficient Evidence to Prove Damages [2673], Memorandum of Law in Support of Defendants' Supplemental Motion for Judgment as a Matter of Law Based Upon Lack of Sufficient Evidence of Injury, Causation or Damages [2741].

(and Defendants maintain it is not),[3] the following factors all combine to create an extremely wide margin of error:

    (1)    Prof. Rosenthal did not consider Kaiser-specific data, much less data specific to any of the eight separately incorporated PMGs, each of which independently developed its own formulary with its own approved indications and restrictions. Instead, she extrapolated from national data for all Neurontin prescriptions, the vast majority of which were not for Kaiser members and applied her extrapolations to Plaintiffs, neither of which actually wrote or approved the formulary for any of the eight separate PMGs. She did this notwithstanding Plaintiffs' repeated assertion that their drug utilization management is very different from that of other TPPs. (*See* Mem. of Law in Support of Defs' M. for J. as a Matter of Law Based Upon Lack of Sufficient Evidence of Injury or Causation [2671] at 14-16; Mem. of Law in Support of Defs' M. for J. as a Matter of Law Based Upon Lack of Sufficient Evidence to Prove Damages [2673] at 2-3.)

    (2)    Prof. Rosenthal only attempted to correlate detailing expenditures with prescriptions, notwithstanding this Court's determination that insufficient evidence of fraudulent detailing had been presented. (3/19 Tr. at 221:5-10.)

    (3)    Although the Court held that this case would be submitted to the jury only as a suppression case, *id.*, Prof. Rosenthal did not measure impacts of alleged suppression of medical literature or formulary decisions by PMGs. (2671 at 16-17; *see also See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 329 (D. Mass. 2009) (observing that "'[b]ecause of the limits in [her] data, [she is] unable to account systematically' for the influence that the 'manipulation of the published literature to which physicians look for impartial information' had on prescribing") (alterations in original; citation omitted).

    (4)    Prof. Rosenthal's "analysis [did] not take into account any other factors that may have led doctors to prescribe Neurontin for off-label indications." *Id.* at 330.

    (5)    Prof. Rosenthal employed an improper, results-oriented methodology. For example, she omitted a time trend, did not consistently include a constant, and repeatedly changed her model for each of her indication/specialty pairings until she got the result that she wanted. (2671 at 17.)

    (6)    Prof. Rosenthal based her disaggregation of the purported effects of Defendant's various alleged acts on prescriptions for multiple different indications on survey data with wide margins of error, sometimes as high as 60 percent. (3/22 Tr.

---

[3] For the reasons set forth in Defendants' prior motions and supporting memoranda, Defendants submit that the evidence is insufficient, as a matter of law, to satisfy Plaintiffs' burden to prove injury and causation or to quantify their damages with reasonable certainty. Pursuant to Federal Rule of Civil Procedure 50(b), Defendants intend to renew each of their motions for judgment as a matter of law.

(Keeley) at 113:21-114:24.)

(6)     The ICD9 codes used by Prof. Rosenthal to disaggregate the data for multiple different indications were provided to her by Plaintiffs' counsel and were not supported by any medical testimony. For example, she admitted that she included ICD9 codes for depression in her "bipolar" calculations. (2671 at 18; Mem. of Law in Support of Defs' Supp. M. for J. as a Matter of Law Based Upon Lack of Sufficient Evidence of Injury, Causation or Damages [2741] at 1-3.)[4]

(7)     Prof. Rosenthal's calculations included several computational and statistical errors. (3/8 Tr. (Rosenthal) at 58:7-60:14; 3/22 Tr. (Keeley) at 49:10-51:4, 53:12-19.) These computational errors resulted in significant overstatement of damages. (3/22 Tr. (Keeley) at 57:24-58:18.)

Because Dr. Hartman's estimates depended on the percentages of alleged wrongful prescriptions calculated by Prof. Rosenthal, every error made by Prof. Rosenthal is carried forward into Dr. Hartman's damages calculations. Dr. Hartman then compounded the imprecision by failing to account for the following in his estimates:

(1)     Dr. Hartman did not exclude from his damages calculations prescriptions that benefited patients. (2673 at 3-5.)

(2)     Dr. Hartman did not exclude prescriptions written by physicians who still would have prescribed Neurontin in Plaintiffs' hypothetical "but for" world. (*Id.* at 8-9.)

(3)     Dr. Hartman did not account for physicians who would have prescribed a drug other than one on one of Plaintiffs' list of cheaper drugs. (*Id.* at 7.)

(4)     Dr. Hartman did not exclude prescriptions written for patients who had tried, without success, Plaintiffs' proposed alternative drugs. (*Id.* at 7-8.)

(5)     Dr. Hartman did not exclude prescriptions written for patients for whom Plaintiffs' cheaper drugs were contraindicated. (*Id.* at 8.)

(6)     Dr. Hartman included prescriptions written after publication of studies that Plaintiffs' claim were suppressed. (*Id.* at 10-11.)

(7)     Plaintiffs' evidence of expanded formulary access was restricted to the Southern California PMG. (2671 at 3-4, 10.) Nonetheless, Dr. Hartman made no attempt to disaggregate the data to assign portions to Kaiser Health Plan and the various non-party, separately incorporated subsidiary health plans.[5]

---

[4] A chart review of over 20,000 prescriptions conducted by Kaiser of its own drug utilization found that its Neurontin prescriptions for bipolar comprised only approximately 4 percent of Kaiser's total Neurontin prescriptions, (3/3 Tr. (Carrejo) at 54:10-68:20), compared to 16 percent estimated by Dr. Hartman. (PX 408F.)

[5] *See* 2/22 Tr. (Sobol) at 25:2-3; 2/22 Tr. (Nussbaum) at 27:2-3; 2/22 Tr. (Court) at 26:5-8.

Because Plaintiffs will be more than fully compensated by an award of treble damages, and substantial imprecision in Plaintiffs' damages calculations creates a significant risk that compensatory damages are overstated, Plaintiffs should not be awarded prejudgment interest. *See Trans World Airlines*, 449 F.2d at 80.

## II.     California Law Precludes Prejudgment Interest On Plaintiffs' UCL Claim

Section 17203 of the UCL – which defines the remedies and judgment available under the statute – does not contain a provision for the award of prejudgment interest.   Under California law, absent a specific provision in the UCL, the availability of prejudgment interest for Kaiser's unfair competition claim is governed by California Civil Code section 3287(a), which provides that "[e]very person who is entitled to recover *damages* certain, or capable of being made certain by calculation, and the right to recover which is vested in him on a particular day, is entitled also to recover interest thereon from that day."  Cal. Civ. Code § 3287(a) (West 1997) (emphasis added).

Section 3287(a) permits an award of prejudgment interest only on a recovery of "damages," which are unavailable under the UCL.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 946 (Cal. 2003) (damages and penalties, whether compensatory or punitive, are prohibited under the UCL); *Bank of the W. v. Superior Ct.*, 833 P.2d 545, 552 (Cal. 1992) (because the UCL makes no provision for damages, "damages are not available under section 17203").   As the California Supreme Court has noted, these limitations on recovery exist pursuant to the express language of section 17203, and thus "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." *Cel-Tech Commc'ns, Inc. v. L. A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999); *see also Korea Supply Co.*, 63 P.3d at 943 (noting that "[w]hile the scope of conduct covered by the UCL is broad, its remedies are limited").

The cases previously cited by Plaintiffs in support of their assertion that "[c]ourts have regularly awarded interest under the UCL" (Pl. Mem. [2699] at 5) are inapposite.  In *Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706 (Cal. 2000), the court did not address the

award of prejudgment interest, except to note in a footnote that the Labor Code section allowing recovery of unpaid wages specifically provided for an award of interest. *Id.* at 710 n.5. In *Allied Grape Growers v. Bronco Wine Co.*, 249 Cal. Rptr. 872 (Ct. App. 1988), the award of prejudgment interest was based on the plaintiff's breach of contract claim, because the court granted only injunctive relief, not restitution, on the plaintiff's UCL action. *See id.* at 875.[6] In each of the three federal cases previously cited by Plaintiffs, the plaintiffs were alleging as the basis of their UCL claim a violation of a statute that itself had a provision for prejudgment interest.[7] Here, Plaintiffs attempt (improperly) to base their UCL claims on alleged FDCA violations that do not even provide any private right of action, let alone entitlement to prejudgment interest. None of Plaintiffs' authorities permit an award of prejudgment interest under the UCL in these circumstances.

Even if the distinction between damages and restitution could be disregarded, under California law "prejudgment interest is authorized only if the damages were 'certain, or capable of becoming made certain by calculation.'" *Jamison v. Jamison*, 79 Cal. Rptr. 3d 561, 567 (Ct. App. 2008) (citing Cal. Civ. Code § 3287). Damages are deemed "certain, or capable of becoming made certain by calculation" only when there is "no dispute between the parties concerning the basis of computation of damages." *Duale v. Mercedes-Benz USA, LLC*, 56 Cal. Rptr. 3d 19, 26 (Ct. App. 2007). Where damages can be derived only by judicial determination based on conflicting evidence, the plaintiff cannot recover prejudgment interest. *Block v. Lab.*

---

[6] *See also Bullis v. Sec. Pac. Nat'l Bank*, 582 P.2d 109, 117 (Cal. 1978) (prejudgment interest properly awarded in negligence action); *Cal. Hous. Fin. Agency v. Hanover/Cal. Mgmt. & Accounting Ctr., Inc.*, 56 Cal. Rptr. 3d 92, 96 (Ct. App. 2007) (court made clear that the prejudgment interest was awarded "on [the plaintiff's] tort claims," not the UCL cause of action).

[7] *See Irwin v. Mascott*, 112 F. Supp. 2d 937, 956 (N.D. Cal. 2000) (noting that an award of prejudgment interest is appropriate "where the judgment is for money owed or to be refunded pursuant to a statutory obligation," in that case, the federal Fair Debt Collection Practices Act); *Wang v. Chinese Daily News, Inc.*, No. CV 04-1498 CBM, 2008 WL 1805834, at *4 (C.D. Cal. Feb. 27, 2008) (UCL action borrowed Labor Code violations, including provision in Labor Code providing for interest at 10% on all due and unpaid wages); *Ballard v. Equifax Check Servs., Inc.*, 158 F. Supp. 2d 1163, 1176 (E.D. Cal. 2001) (also an action alleging violations of the Fair Debt Collection Practices Act).

*Procedures, Inc.*, 87 Cal. Rptr. 778, 780 (Ct. App. 1970).

Here, the amount of restitution sought by Plaintiffs was not certain or capable of being determined without resolving conflicting expert testimony.   Thus, Plaintiffs cannot recover prejudgment interest.

**III.    Dr. Hartman's Interest Calculations Should Be Excluded Because They Are Unrelated To The Jury Verdict And Use An Inappropriate Rate of Interest**

As discussed above, prejudgment interest cannot properly be awarded on Plaintiffs' UCL claims or RICO claim.   Even if the Court were inclined to award prejudgment interest on Plaintiffs' RICO claim, Dr. Hartman's calculations would not be helpful to the Court and should, therefore, be excluded.   The jury did not award all of the damages estimated by Dr. Hartman, but a significantly smaller amount.   Plaintiffs did not request a verdict form that would have required the jury to explain which of Dr. Hartman's two methodologies, if either, they used, or for which years they awarded damages.   As a result, there is no way to match up Dr. Hartman's interest calculations with the jury's verdict.   For example, in *SEB S.A. v. Sunbeam Corp.*, No. 02-80527-CIV, 2004 WL 5564188 (S.D. Fla. Mar. 22, 2004), the court held that "the parties were entitled to receive prejudgment interest beginning at a date prior to the verdict only if the exact date was explicit in the verdict or if the date was easily ascertainable by the Court." *Id.* at *1.   Because "the jury did not indicate when the damages arose or to what models the damages pertained," *id.* at *2, the court refused to award interest prior to the date of verdict, stating:  "Not only is such second-guessing of the jury inappropriate, but it is also the kind of speculative guesswork that is prohibited in awarding prejudgment interest from a date certain." *Id.*   Even more extensive guesswork would be required here.[8]

In addition, to calculate damages on Plaintiffs' federal claims, Dr. Hartman used the

---

[8] Further exacerbating this problem, Dr. Hartman does not explain how he allocated prescriptions within a particular year.   If, for example, he assumed that all of the prescriptions included in his calculations were paid for at the beginning of the year, he would overstate his interest calculations.

prime rate of interest, compounded in some unspecified manner.[9]   However, numerous courts have held that the more appropriate interest is the rate as specified under 28 U.S.C. § 1961.[10]   *See Vickers v. Principal Mut. Life Ins. Co.*, 993 F. Supp. 19, 21 (D. Mass. 1998) (holding that the "federal rate of interest should be the basis for calculating the prejudgment interest owed to the plaintiff" in ERISA action); *Celi v. Trs. of Pipefitters Local 537 Pension Plan*, 975 F. Supp. 23, 29 n.4 (D. Mass. 1997) (holding that the federal statutory rate was the appropriate rate); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1331 (8th Cir. 1995) (holding that rate provided in 28 U.S.C. § 1961 should be used for both pre- and post-judgment interest); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 314 F. Supp. 2d 201, 203 (S.D.N.Y. 2003) (fixing prejudgment interest rate at federal postjudgment rate and noting that "[s]everal circuits have pointed to the federal postjudgment rate as a starting point in exercising the district court's discretion.").

As discussed above, Plaintiffs will be fully compensated by an award of treble damages. Even if prejudgment interest were awarded, it should not be based on the higher rate of interest used by Dr. Hartman.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion To Admit Tables Showing Damages With Interest Into Evidence should be denied.

---

[9] The period over which interest was compounded is not stated either in Dr. Hartman's charts or his testimony.

[10] 28 U.S.C. § 1961 provides that postjudgment interest shall be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System" and compounded annually.   Between 1995 and 2004, those rates fluctuated between 0.95 (6/20/2003) and 7.24 (1/6/1995).
*See* http://www.federalreserve.gov/releases/h15/data/Weekly_Friday_/H15_TCMNOM_Y1.txt.

Dated: July 6, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By:    <u>/s/ Mark S. Cheffo</u>
         Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Email:  Mark.Cheffo@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By:    <u>/s/ Raoul D. Kennedy</u>
         Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel:  (415) 984-6400
Email:  Raoul.Kennedy@skadden.com

WHEELER TRIGG O'DONNELL LLP

By:    <u>/s/ James E. Hooper</u>
         James E. Hooper

1801 California Street
Suite 3600
Denver, CO 80202-2617
Tel:  (303) 244-1800
Email:  hooper@wtotrial.com

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

---

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 6, 2010.

           <u>/s/ Mark S. Cheffo</u>
           Mark S. Cheffo