UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**NOTICE OF SUPPLEMENTAL AUTHORITY**

On June 30, 2010, Defendants filed a second Notice of Supplemental Authority (Docket No. 2675) related to Defendants' Proposed Findings of Fact and Conclusions of Law (Docket No. 2816) and Defendants' Response to Plaintiffs' Proposed Conclusions of Law (Docket No. 2808). Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals ("Plaintiffs" or "Kaiser") now briefly respond.

Pfizer points the Court to the Findings of Fact and Conclusions of Law entered after the bench trial of the Louisiana Attorney General's safety-based claims involving the drug Vioxx. *State of Louisiana, ex rel. James D. Caldwell Attorney General v. Merck And Co., Inc.*, No. 05-3700, Docket No. 45739, June 29, 2010 (*In re Vioxx Prods. Liab. Litig.*, 2:05-md-1657)

("Findings"). Louisiana's Vioxx claims are legally and factually distinct from Kaiser's Neurontin claims.

**A.      Legal Distinctions**

Louisiana and Kaiser brought legal different claims. Louisiana tried a redhibition claim;[1] Kaiser tried RICO and California state consumer protection act (California Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200) claims. To establish a claim in redhibition, a plaintiff must establish:

> (1) the thing sold is absolutely useless for its intended purposes, or that he would not have bought it had he known of the defect; (2) that the defect existed at the time that he purchased the thing, but was neither known nor apparent to him and (3) that the seller was given the opportunity to repair the defect.

Findings at 38. This is a much higher pleading standard than that required by the California statute.

**B.      Factual Distinctions**

Louisiana claimed Vioxx was unsafe; Kaiser claimed and proved at trial that Neurontin is ineffective. At trial, the State of Louisiana claimed that "had it known that Vioxx presented cardiovascular risks it would not have approved reimbursement under the State's Medicaid program." Findings at 18. Louisiana did not claim Vioxx was ineffective. Here, Kaiser alleged and proved that Neurontin was ineffective to treat conditions for which it was fraudulently promoted as effective. Kaiser did not make allegations concerning Neurontin's safety.

Louisiana failed to demonstrate that it would have purchasedless Vioxx because of safety concerns; Kaiser actually purchased less Neurontin in light of efficacy concerns. While Louisiana argued that it would have taken steps to restrict the formulary status of Vioxx or deny

---

[1] The court dismissed Louisiana's claims under the Louisiana and New Jersey consumer protection statutes prior to trial. Findings at 6.

reimbursement for Vioxx had it been aware that Vioxx was unsafe (Findings at 18, 25), the Louisiana Attorney General conceded on the stand that imposing restrictions would have required "radically transforming the Louisiana Medicaid pharmacy program for the narrow purpose of trying to deny reimbursement for a single drug" and it would have been impossible to garner the necessary legislative approval "for the sole purpose of cutting off reimbursements for Vioxx." Findings at 28. Even after Louisiana acknowledges it knew about the safety risks associated with Vioxx, the State did not take any steps to reduce its Vioxx expenditures. By contrast, Kaiser took substantial steps to reeducate physicians after learning that Neurontin may not be effective to treat particular conditions. Kaiser's reeducation campaign curtailed Neurontin usage and, had the full truth been known, would have lead to an even more significant decline in usage.

Louisiana also offered no evidence that its P&T Committees would have voted differently had they possessed all of the allegedly withheld and/or misrepresented Vioxx safety data; Kaiser P&T committee members, on the other hand, testified that they would have voted differently had Pfizer not withheld and/or misrepresented Neurontin efficacy data. Testimony during the Vioxx trial established that "Mr. Hood made decisions about drugs in reliance on the recommendations of LDHH staff, P&T Committee members and Provider Synergies and there is no evidence in the record of what recommendations these entities would have made had they possessed different data...." Findings at 31. Here, both Dr. Millares and Dr. Hyatt testified that Kaiser's P&T Committees would not have voted to lift restrictions on Neurontin had they possessed accurate and complete data regarding Neurontin's efficacy to treat bipolar disorder, migraines, neuropathic pain, and nociceptive pain.

Louisiana's formulary decisions were motivated solely by cost; Kaiser's formulary decisions are not. The Vioxx court concluded, "[t]he evidence shows that the P&T Committee's decisions about which drugs to include on the preferred drug list were driven by cost, not safety concerns, such that additional information about Vioxx's potential cardiovasculas risks would not have prompted the Committee to see to deny reimbursement for Vioxx prescriptions." Findings at 32. Here, Dr. Millares, Dr. Hyatt, and Dr. Carrejo all testified that while cost is one factor that may influence formularies, Kaiser makes formulary decisions based on evidence based medicine in order to ensure that patients receive proper care. Kaiser witnesses also gave examples where formulary decisions were made for safety or efficacy reasons that lead to increased costs for Kaiser.

Louisiana claimed it was unaware of the cardiovascular events associated with Vioxx but in fact possessed data that reflected this association; Kaiser did not have access to internal Pfizer data that showed Neurontin was ineffective to treat particular conditions. The Louisiana P&T Committee monographs explicitly stated that the VIGOR study raised questions about the cardiovascular safety of Vioxx. Findings at 34-35. Merck's attempt to "neutralize" these safety concerns by providing the P&T Committee two "positive" articles was not enough to overcome P&T committee's knowledge about cardiovascular side effects. Here, there are no facts in the record that suggest Kaiser was aware Neurontin was ineffective but failed to do anything about it. Further, Kaiser argues that Pfizer (i) withheld scientific data that showed Neurontin was ineffective to treat particular conditions *and* (ii) falsified the scientific literature. Kaiser also identified communications it received from Pfizer that both (i) failed to provide the results of

4

studies establishing Neurontin's ineffectiveness and (ii) provided distorted and misleading studies that appeared to support Neurontin's effectiveness.[2]

The Vioxx MDL Court's resolution of Louisiana's safety-based redhibition claim has no bearing on Plaintiffs' efficacy-based UCL claims.

Dated:  July 9, 2010                                    Respectfully submitted,

                                                               By:    */s/ Linda P. Nussbaum*
                                                                          Linda P. Nussbaum

Linda P. Nussbaum
John D. Radice
NUSSBAUM LLP
88 Pine Street, 14th Floor
New York, NY 10005

*Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

*Of Counsel*

Thomas M. Greene
GREENE LLP
33 Broad Street, 5th Floor
Boston, MA 02109

---

[2] Pfizer's attempt to label Kaiser website materials as evidence or admissions of efficacy are unavailing.  Kaiser has and is continuing to remove primarily third-party material from its website – including material identified in Pfizer's latest filing – that misleadingly refers to Neurontin.  This is a continuing, iterative process.  Kaiser is also working with the content suppliers to correct their information.

5

Thomas M. Sobol
HAGENS BERMAN SOBOL
 SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

Don Barrett
DON BARRETT, P.A.
P.O. Box 987
404 Court Square North
Lexington, MS 39095

Barry Himmelstein
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 9, 2010.

>*/s/ Linda P. Nussbaum*
>Linda P. Nussbaum