UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
|   |   |
|---|---|
| In re:  NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | :  MDL Docket No. 1629<br>:<br>:  Master File No. 04-10981 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

THIS DOCUMENT RELATES TO:

AND ALL PRODUCTS LIABILITY ACTIONS

:  Judge Patti B. Saris
:
:  Magistrate Judge Leo T.
:  Sorokin

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER SCHEDULING BEFORE THIS COURT TRIAL PRESERVATION DEPOSITIONS OF PLAINTIFFS' GENERIC EXPERTS AND DAVID FRANKLIN

Defendants Pfizer Inc and Warner-Lambert Company LLC (together, "Pfizer" or "Defendants") respectfully submit this memorandum in opposition to Plaintiffs' motion to schedule trial preservation depositions for Dr. Michael Trimble, Dr. Stephen Kruszewski, Dr. Cheryl Blume, Dr. Charles King, Dr. Sander Greenland, and David Franklin.

### PRELIMINARY STATEMENT

Allowing video deposition in lieu of live trial testimony would significantly prejudice Defendants and present a variety of disadvantages, while offering little, if any, benefit. Although Plaintiffs seek to reopen generic discovery for the purposes of conducting preservation depositions of certain witnesses, nowhere do they claim that they anticipate these witnesses will actually be "unavailable" to testify at trial. Fed. R. Evid. 804(a), (b)(1). They merely posit that the witnesses have busy schedules and that it would be cheaper for the Plaintiffs if they could present the witnesses' testimony by way of video recording. This reasoning is inadequate in light of the major disadvantages associated with allowing video testimony, such as the fact that it would inhibit jurors' ability to judge witness demeanor, freeze the testimony at a point in time and leave it out of touch with contemporaneous developments, and rob Defendants' of the opportunity to tailor their examinations to the facts and applicable law in individual cases. Furthermore, with regard to Mr. Franklin in particular, Plaintiffs had an opportunity to depose

him in this litigation less than a year ago, but they failed to utilize it.  Thus, Plaintiffs' request should be denied, and they should not be permitted to take preservation depositions of generic experts in the absence of an agreement between the parties.

## ARGUMENT

**I.**    **Plaintiffs Have Failed To Show Sufficient Justification For Preservation Depositions**

   **A.**    **Plaintiffs Have Not Demonstrated That Witnesses Will Be Unavailable Or Identified Any Factors Sufficient To Overcome The Established Preference For Live Testimony At Trial**

As courts have repeatedly recognized, "'the live testimony of [key] witnesses for the purposes of presenting demeanor evidence [is] essential to a fair trial.'"  *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 17 (1st Cir. 2000) (alterations in original) (quoting *Howe v. Goldcorp Invs., Ltd.*, 946 F.2d 944, 952 (1st Cir. 1991)); *see also Beland v. U.S. Dep't of Transp.*, No. Civ. 00-328, 2001 WL 274849, at *3 (D.N.H. Feb. 14, 2001) ("[E]nsuring the presence of live witness testimony better serves the interest of justice.").  Video recordings provide a poor substitute for live testimony when it comes to judging a witness's demeanor on the stand.  Jurors are more adept at weighing credibility when they can actually see, in real time, the direct and cross examinations first hand.  Indeed, as the First Circuit has stated, it is undisputed "that live in-person testimony is preferable to video testimony or live videoconferencing testimony." *Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, 105 (1st Cir. 2009).  Permitting Plaintiffs to sidestep this requirement merely for the sake of convenience would prejudice the Defendants and hinder jurors' ability to reach an informed decision.

Allowing one-time video depositions in on-going pharmaceutical litigation also would give rise to unique problems because the science at issue in these cases continues to evolve.  As one court has observed, issues regarding the properties of pharmaceutical drugs will necessarily depend upon the "basis of scientific knowledge as it exists at the time of trial." *Coburn v. SmithKline Beecham Corp.*, 174 F. Supp. 2d 1235, 1240 (D. Utah 2001); *see also id.* ("When a scientific hypothesis is at issue in a trial, the evidence is likely to be different at a later trial.").  If

Plaintiffs are allowed to freeze their expert witnesses' testimony in time, Defendants could not ask them about novel scientific developments. *See Clark v. SmithKline Beecham*, No. 7:06-cv-30, 2006 U.S. Dist. LEXIS 83275, at *9 (M.D. Ga. Nov. 15, 2006) (indicating that it would not be "wise for this Court to freeze science in place from a 2001 verdict without taking into account subsequent advances"). Defendants should not be deprived of the opportunity to cross-examine Plaintiffs' experts based upon advances in the state of scientific knowledge.

Similarly, fairness dictates that Defendants should be able to use current information for purpose of impeachment. As the First Circuit has recognized, "expert testimony is not conclusive . . . and it may be rebutted in various ways apart from the introduction of countervailing expert opinion." *United States v. Dube*, 520 F.2d 250, 252 (1st Cir. 1975). As a result, expert testimony may be rebutted or impeached by evidence tending to show the bias of the expert or inconsistencies in the expert's public statements and testimony. *See id.* at 252 n.1. Here, the witnesses frequently testify in other litigation and remain active participants in their fields. If one of Plaintiffs' experts were to say or write something inconsistent after the date of his or her deposition, Defendants would be robbed of the opportunity to present and confront the witness with inconsistent statements. *See id.* (noting that an expert's credibility may be undermined by "inconsistencies or contradiction in his testimony as to material matters, [and] material variations between the experts themselves"). Plaintiffs should not be allowed to limit Defendants' use of this vital impeachment tool.

Furthermore, Defendants would be significantly prejudiced if deprived of the ability to tailor their questioning of Plaintiffs' experts to the facts and law of specific cases. Even though the experts are generic experts, the focus of Defendants' cross-examination may vary based upon the specific facts of each case. For example, Defendants should be allowed to ask experts hypothetical questions that are particular to individual cases on cross examination. Plaintiffs' proposal would not allow for this. The facts of each of these cases are significantly different. Individual Plaintiffs were prescribed Neurontin for different purposes. They also used Neurontin with different combinations of legal and, sometimes, illegal drugs. Different cases involve

varying allegations of suicide, attempted suicide, and suicide ideation.  Some do not even allege injuries of suicide at all.  (*See, e.g.*, Memo. in Support of Mot. for S.J. as to Mary Dorsey [2799].)  Also, considering the multi-jurisdictional nature of this litigation, different substantive law will apply in many of the cases.  In light of this, Defendants' attorneys may wish to adjust their cross-examination strategy to account for the specific legal causes of action and affirmative defenses applicable in each case.

Given the well-established preference for live testimony and the significant prejudice to Defendants' ability to cross-examine Plaintiffs' witnesses, Plaintiffs have failed to offer any legitimate justification for preservation depositions.[1]  Initially, Plaintiffs do not even assert that these witnesses will actually be "unavailable" to testify at trial.  Fed. R. Evid. 804(a), (b)(1). Even if preservation depositions are taken, each Plaintiff will have to establish "unavailability" at each individual trial in order to present this out-of-court testimony in the absence of a stipulation. *Id.*; *see also Salsman v. Witt*, 466 F.2d 76, 79 (10th Cir. 1972) (noting that there is a "long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness be unavailable to testify in person").  Unless their experts have unforeseeable health issues, this will require Plaintiffs to show that they applied "reasonable means" to attempt to procure the expert's attendance.  Fed. R. Evid. 804(a)(5).  Currently, Plaintiffs have not provided a legitimate reason to believe that they will be unable to procure, through reasonable means, their own experts' attendance at trial.  Plaintiffs

---

[1] The examples Plaintiffs cite in their memorandum are inapposite.  Unlike in this case, *Prempro Products Liability Litigation* involved a mutual agreement between the parties that a preservation deposition be taken for a single expert, and the plaintiffs, also unlike in this case, knew that the expert would be "unavailable" for trial. (Pls.' Ex. C [2872-3].)  Similarly, in *In re: Phenylpropanolamine (PPA) Products Liability Litigation*, the defendants in that case did not oppose the preservation deposition, which was limited in scope to the topic of only one international study.  (Pls.' Ex. B [2872-2].) Defendants in that case contended only that they would need additional time for cross examination, which the Court granted.  (*See In re PPA* D.E. [3188] Defs.' Opp. to Length of Exam. (W.D. Wash. Oct. 29, 2004).)  Finally, the number of cases at issue here nowhere approaches the number in the *Diet Drug Litigation*, where, at one point, over 18,000 cases had been filed.  *See In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386, 389 (3rd Cir. 2004).  The sheer size of the litigation, at least an order of magnitude greater than here, created a risk that cases would be tried simultaneously in multiple jurisdictions.

aver only that their witnesses have busy schedules.  This does not mean, however, that the witnesses will be somehow unable to testify at a trial.[2]  Trial dates are generally known well in advance, and Plaintiffs should be able to arrange for their expert witnesses to testify, even with their demanding schedules.  Furthermore, considering that Plaintiffs seek to proffer multiple and redundant experts as to the same general causation issues, even if one expert is unable to testify at a particular trial, Plaintiffs would not be left without expert testimony as to general causation.

Likewise, Plaintiffs' contention that taking preservation depositions would result in cost savings is unconvincing.[3]  As an initial matter, Plaintiffs have alleged that Defendants should be held liable for substantial money damages.  Given the stakes of these lawsuits, Plaintiffs should be required to present their case through live testimony, if possible, for the sake of fair adjudication.  Plaintiffs' desire to cut corners to save money simply does not justify the prejudice that would result to Defendants.[4]  Moreover, if the only thing preventing a witness from testifying at trial is Plaintiffs' unwillingness to pay their own expert's fee, that would be tantamount to procuring the witnesses' absence, and the testimony would be inadmissible anyway.  Fed. R. Evid. 801(a).  Without a showing of "unavailability," their experts' deposition testimony will be mostly inadmissible.  *Id.* 804(a)(5), (b)(1).  Consequently, the costs associated

---

[2] Some of the witnesses have also been designated as case-specific experts in certain cases.  For example, Dr. Kruszewski offered case-specific opinions in both the *Bulger* and *Shearer* cases, and Dr. Trimble offered case-specific opinions in the *Smith* case.  (*See Daubert* Mots. Re: Kruszewski [1634, 2453]; *Daubert* Mot. Re: Trimble [1627].)   If these experts are available to provide testimony as to specific causation, they will obviously be available to testify on generic causation.

[3] Plaintiffs' citation to section 11.452 of the Manual for Complex Litigation is misplaced.  That section deals with cost savings resulting from taking depositions by video tape "instead of stenographically *without having it transcribed*."  Manual for Complex Litigation, Fourth § 11.452 (emphasis added).  Obviously, Plaintiffs are not proposing depositions without transcripts because they simultaneously suggest that the Court rule on objections based on a transcript of the depositions.  (*See* Pls.'s Memo. [2871] at 2.)

[4] Plaintiffs seem concerned about the costs of litigation only when it benefits them.  Throughout this litigation, they have resisted Defendants' efforts to conserve resources and promote efficiency.  For example, rather than modifying custodial searches for sales representatives or using the massive sales and marketing information they already had, Plaintiffs insisted that Defendants pay for extremely burdensome and expensive discovery, relying on the small likelihood that it would lead to marginally-relevant information.

with conducting the proposed preservation depositions would prove to be unnecessary because Plaintiffs will not likely be able to show they cannot reasonably procure trial attendance by their own retained experts. *See id.* 804, advisory committee's note to subdivision (a)(5) ("Depositions are expensive and time-consuming."). Thus, taking preservation testimony that will not likely be admissible would actually increase, rather than decrease, litigation costs.

Accordingly, Plaintiffs' proposal to take preservation depositions of their own experts would be detrimental to the fair adjudication of this litigation. For good reasons, the standard rule is that witnesses must testify live at trial. Plaintiffs have failed to show a need or a justification for taking preservation depositions of their own experts at this point, and the Court should deny their motion.[5]

## B.   Preservation Depositions Are Particularly Inappropriate For Drs. Blume And King

In the event that the Court is inclined to allow Plaintiffs to take certain deposition, their motion should be denied with respect to Dr. Blume and Dr. King. Dr. Blume and Dr. King are two of Plaintiffs' key witnesses on the issue of liability. Dr. Blume's opinions are not limited to the issue of generic causation, but extend to regulatory matters and safety surveillance. She purports to address the sufficiency of Defendants' post-market surveillance and the adequacy of the Neurontin label, the central issue to be decided by the jury. Dr. Blume's opinions are replete with her personal characterizations of numerous documents, not based upon any scientific analysis. Likewise, Dr. King, an economist, purports to offer opinions regarding Defendants' alleged off-label marketing activities based upon his selective review of documents chosen by Plaintiffs' counsel.

---

[5] In any case, their motion is untimely. Neither the Federal Rules of Civil Procedure nor courts distinguish between discovery depositions and preservation depositions. *See, e.g.*, *Integra LifeSciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 558-59 (S.D. Cal. 1999); *Henkel v. XIM Products, Inc.*, 133 F.R.D. 556, 557 (D. Minn. 1991). Thus, federal courts have found that all depositions, regardless of their purpose, are governed by the same deadlines in the absence of a stipulation by the parties. *Integra Lifesciences I*, 190 F.R.D. at 559. Because generic discovery in the products liability cases has closed in this litigation, Plaintiffs have the burden of showing "good cause" to reopen it, which they have failed to do. Fed. R. Civ. P. 16(b)(4).

In each case, the prejudice to Defendants if they are deprived of the opportunity to cross-examine the witnesses live at trial is heightened.   Where, as with Dr. Blume and Dr. King, a witness purports to opine on a defendants' conduct, a much more subjective endeavor than an evaluation of scientific data, the need for the jury to be able to evaluate the witness's demeanor is even more important.   Considering that both Dr. Blume and Dr. King intend to testify as to their subjective interpretations of the evidence – testimony that goes to the core of and arguably overlaps with the jury's role[6] – it is imperative that the jury have the ability to fully judge their demeanor. *See In re Air Crash Disaster*, 720 F. Supp. 1493, 1502 (D. Colo. 1989) ("Mere inconvenience to the witness does not outweigh the substantial need to evaluate the demeanor of a witness presenting controversial testimony of questionable relevance.").

Likewise, it is unlikely that liability evidence will be identical at each trial.   Plaintiffs in this multi-district litigation are represented by different attorneys who are likely to make different strategic decisions on what evidence to introduce.   Different courts may impose different time limitations on trials which could affect the selection of evidence.   And, it is unlikely that the strategic decisions made by either Plaintiffs or Defendants will remain static from one trial to the next.   Under such circumstances, and given the subject matter of their testimony, it is critical that Defendants be able to adapt their cross-examination of such witnesses to the evidence introduced at trial.

Further, Plaintiffs' predictions of "unavailability" ring particularly hollow with respect to Dr. Blume and Dr. King.   Both work for consulting firms that assist frequently with litigation. For example, Dr. Blume's list of prior deposition, affidavits, expert reports and trial testimony for 2003-2007 was 11 pages long and contained over 140 entries.   (Ex. A.)   Dr. King works for

---

[6] Numerous courts have excluded similar expert testimony, including testimony by Dr. Blume, where an expert "'simply summarizes and states her advocacy-based interpretation of documents in the record.'" *Martin v. Pfizer, Inc.* (In re Viagra Prods. Liab. Litig.), 658 F. Supp. 2d 950, 967 (D. Minn. 2009) (citation omitted).   Defendants reserve their right to object to the testimony of Dr. Blume and Dr. King on the grounds that it is irrelevant, unhelpful to the jury, and not appropriate or reliable expert testimony.

Greylock McKinnon, a litigation consulting firm, and has offered expert opinions in litigation involving Vioxx, Relafen, Celebrex, tobacco, and generic competition. (Ex. B, King C.V. at 1, 4-5.)  In short, their availability is mostly contingent upon Plaintiffs' willingness to pay their fees.  As discussed above, Plaintiffs' desire to save money, however, is not a valid basis for unavailability.

## II.   Plaintiffs Already Had The Opportunity To Depose Mr. Franklin, And They Should Not Be Given A Second Bite At The Apple

Plaintiffs' motion is also misplaced as to Mr. Franklin, considering that Plaintiffs had an opportunity to depose this witness less than a year ago.  Unless Plaintiffs can point to new circumstances arising since last December that would justify another deposition, which they cannot do, their request for a second opportunity to take preservation testimony from Mr. Franklin should be denied.

On October 9, 2009, Defendants served Mr. Franklin with a subpoena *duces tecum*, and Plaintiffs filed an emergency motion to quash the subpoena.  (Motion to Quash [2139].) Plaintiffs argued that Mr. Franklin's deposition was "unnecessary because [he had] already testified for four (4) days in the *qui tam* litigation[.]"  (Pl.'s Memo. for Mot. to Quash [2140] at 2.)  On October 28, 2009, Magistrate Judge Sorokin denied Plaintiffs' motion to quash, allowed the deposition of Mr. Franklin to proceed, and declared that "the results of this deposition shall apply to all of the products liability cases."  On November 16, 2009, Plaintiffs filed a notice to take preservation deposition testimony from Mr. Franklin.  (Ex. C, Franklin notice.)   On December 18, 2009, Mr. Franklin's deposition was conducted.  Plaintiffs' attorneys Keith Altman and Ken Soh were present at the deposition.  They had the opportunity to question Mr. Franklin, but chose not to. (Ex. D, Franklin Dep. at 6:16-7:20.)

Plaintiffs' present motion should be denied as to Mr. Franklin because they already had their opportunity – and even filed notice – to take Mr. Franklin's deposition in this litigation on December 18, 2009.  Per Magistrate Judge Sorokin's order, this applied to "all of the products liability cases."  In their present motion, the only reason they offer as to why Mr. Franklin should

be re-deposed now is that he has a busy schedule, but it is doubtful that Mr. Franklin's schedule is significantly more busy today than in December 2009.  As Plaintiffs noted in their motion to quash, Mr. Franklin was previously deposed for four days in the *qui tam* litigation.  If Plaintiffs had wanted to ask him additional questions more recently, they had the opportunity to do so last December.  As one court held, "[w]here a party makes a tactical decision during discovery to refrain from deposing a non-party witness . . . , that party takes the risk that the testimony will not be presented at trial if the witness does not voluntarily appear."  *Integra LifeSciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 559 (S.D. Cal. 1999).  Plaintiffs now seek a second bite at the apple as to Mr. Franklin, which this Court should reject.

### III.  Preservation Depositions Would Require The Court To Establish A Comprehensive Procedural Protocol

If any of these preservation depositions are permitted to go forward, Defendants request that the Court issue detailed procedural rulings in order to minimize prejudice.  Attempting to introduce these witnesses' testimony via video would create numerous practical issues that need to be addressed, such as where the depositions will be taken, who will preside over them, whether objections will be ruled upon at the time of the deposition or reserved for the trial court, how much time will be allotted for direct and cross, whether there will be limitations as to scope, and whether there will be an opportunity to re-depose these witnesses if new matters arise.  Preservation depositions also present numerous technical issues that must be addressed.  For example, if Plaintiffs attempt to present documents through these witness, how will the jury be able to simultaneously view documents while depositions are played?

In short, if Plaintiffs' proposal is accepted, Defendants request that the Court delineate clear procedural guidelines in an attempt to duplicate the trial environment during the depositions and minimize prejudice against the Defendants to the greatest extent possible.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion to schedule preservation depositions for their generic experts and Mr. Franklin

in the absence of an agreement between the parties.  Alternatively, Defendants ask that the Court

limit preservation depositions to certain generic causation experts and request that the Court set

appropriate conditions.

Dated: July 13, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By:   /s/ Mark S. Cheffo
       Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Mark.Cheffo@skadden.com

ROPES & GRAY LLP

By:   /s/ Ana M. Francisco
       Ana M. Francisco
       BBO # 564346

One International Place
Boston, MA  02110
Tel:  (617) 951-7000
Ana.Francisco@ropesgray.com

*Attorneys for Defendants Pfizer Inc and*
*Warner-Lambert Company LLC*

CERTIFICATE OF SERVICE

I hereby certify that this document
filed through the ECF system has been served
pursuant to Case Management Order #3 on
July 13, 2010.

/s/ Ana M. Francisco
Ana M. Francisco