UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re:   NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | : : : : | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | : : : | Judge Patti B. Saris |
| *Guard Insurance Co., et al. v. Warner Lambert Co., et al.*, Case No. 1:10-cv-10277 | : : | Magistrate Judge Leo T. Sorokin |

**MEMORANDUM IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT .........................................................................................1

STATEMENT OF FACTS ..................................................................................................2

STANDARDS FOR DISMISSAL........................................................................................4

ARGUMENT ........................................................................................................................5

I.      Guard's Claims Are Barred Because the FDCA Proscribes a Private Cause of
Action and Guard Has Not Alleged Any Independently Actionable Fraudulent
Conduct ....................................................................................................................5

II.     The Complaint Fails to Allege a Cognizable Injury or Causal Nexus.................................7

      A.     The Complaint Does Not Plausibly Allege Causation.............................................8

      B.     The Complaint Does Not Plausibly Allege a Cognizable Injury...........................13

III.    Guard's Claims Are Precluded by State Law ....................................................................14

      A.     Guard's Claims Are Subsumed by the NJPLA .......................................................14

      B.     Guard's NJCFA Claims Fail Because It Is Not a "Consumer" ..............................15

IV.    Guard's Warranty and Unjust Enrichment Claims Fail for Additional Reasons ..............16

      A.     Guard's Warranty and Unjust Enrichment Claims Are Time-Barred ...................16

      B.     Guard's Warranty Claim Fails for Lack of Notice and Standing ..........................17

      C.     Guard's Unjust Enrichment Claim Fails as a Matter of Law ................................18

CONCLUSION.....................................................................................................................19

**TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*In re Actimmune Marketing Litigation*, 614 F. Supp. 2d. 1037 (N.D. Cal. 2009) ....................6, 14

*In re Actimmune Marketing Litigation*, No. C 08-02376, 2009 WL 3740648
    (N.D. Cal. Nov. 6, 2009)........................................................................................11

*Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23 (1st Cir. 2004) ....................4, 7

*Anthony v. Country Life Manufacturing, L.L.C.*, No. 02 C 1601, 2002 WL 31269621
    (N.D. Ill. Oct. 9, 2002), *aff'd*, 70 F. App'x 379 (7th Cir. 2003)...........................................5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...............................................................................4, 12

*Autin v. Solvay Pharmaceuticals, Inc.*, No. 05-2213, 2006 WL 889423 (W.D. Tenn. Mar.
    31, 2006) ........................................................................................................5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................................4, 9

*Blystra v. Fiber Tech Group, Inc.*, 407 F. Supp. 2d 636 (D.N.J. 2005)........................................18

*Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001) ............................................3, 5

*Castro v. NYT Television*, 851 A.2d 88 (N.J. Super. Ct. App. Div. 2004) ...................................18

*Central Regional Employees Benefit Fund v. Cephalon, Inc.*, No. 09-3418,
    2010 WL 1257790 (D.N.J. Mar. 29, 2010)...............................................................11, 15

*Conte Brothers Automobile, Inc. v. Quaker State-Slick 50, Inc.*, 992 F. Supp. 709
    (D.N.J.), *aff'd*, 165 F.3d 221 (3d Cir. 1998) ...............................................................15

*Cooper v. Samsung Electronics America, Inc.*, No. 07-3853, 2008 WL 4513924
    (D.N.J. Sept. 30, 2008), *aff'd*, No. 08-4736, 2010 WL 1220946 (3d Cir. Mar. 30,
    2010) .............................................................................................................18

*District 1199P Health & Welfare Plan v. Janssen, L.P.*, No. 06-3044, 2008 WL 5413105
    (D.N.J. Dec. 23, 2008) ........................................................................................13

*In re Epogen & Aranesp Off-Label Marketing & Sales Practices Litigation*,
    No. MDL 08-1934, 2009 WL 1703285 (C.D. Cal. June 17, 2009) ................................6, 7

*Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839 (6th Cir. 2006)................................................8

*Gennari v. Weichert Co. Realtors*, 691 A.2d 350 (N.J. 1997)......................................................7

*Goldsmith v. Camden County*, 975 A.2d 459 (N.J. Super. Ct. App. Div. 2009) ...........................17

*In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*,
    484 F. Supp. 2d 973 (D. Minn. 2007) ...............................................................................11

*Hagen v. U-Haul Co. of Tennessee*, 613 F. Supp. 2d 986 (W.D. Tenn. 2009) ...............................7

*Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364 (D.N.J. 2004) ...........................................................8

*Hood ex rel. Mississippi v. Eli Lilly & Co.* (In re Zyprexa Products Liability Litigation),
    671 F. Supp. 2d 397 (E.D.N.Y. 2009) ............................................................................11

*International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*,
    929 A.2d 1076 (N.J. 2007) .......................................................................................10, 12

*Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*,
    585 F. Supp. 2d 1339 (M.D. Fla. 2008) .........................................................................11

*JOC, Inc. v. ExxonMobil Oil Corp.*, No. 08-5344, 2010 WL 1380750
    (D.N.J. Apr. 1, 2010) .....................................................................................................17

*Johnson v. Hoffman*, 80 A.2d 624 (N.J. 1951) ...........................................................................17

*Kaufman v. i-Stat Corp.*, 754 A.2d 1188 (N.J. 2000) ..................................................................8

*Kavky v. Herbalife International of America*, 820 A.2d 677
    (N.J. Super. Ct. App. Div. 2003) ....................................................................................16

*In re Lead Paint Litigation*, 924 A.2d 484 (N.J. 2007) ..............................................................14

*Lefaivre v. KV Pharmaceutical Co.*, No. 4:09CV00588, 2010 WL 59125
    (E.D. Mo. Jan. 5, 2010) ...................................................................................................5

*Maniscalco v. Brother International Corp. (USA)*, 627 F. Supp. 2d 494 (D.N.J. 2009) ..............18

*McDarby v. Merck & Co.*, 949 A.2d 223 (N.J. Super. Ct. App. Div. 2008) ...........................14, 15

*Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993) ...............................................5

*Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2009 WL 4119176 (D.N.J. Nov. 24, 2009) .................18

*In re Neurontin Marketing & Sale Practices Litigation*, 244 F.R.D. 89
    (D. Mass. 2007) ...............................................................................................3, 7, 8, 13

*In re Neurontin Marketing & Sales Practices Litigation*, 677 F. Supp. 2d 479
    (D. Mass. 2010) .....................................................................................................9, 10, 12

*In re Neurontin Marketing, Sales Practices & Products Liability Litigation*,
    433 F. Supp. 2d 172 (D. Mass. 2006) ..............................................................................5

*In re Neurontin Marketing, Sales Practices & Products Liability Litigation*,
257 F.R.D. 315 (D. Mass. 2009)........................................................................3, 6

*In re Neurontin Marketing, Sales Practices & Products Liability Litigation*,
618 F. Supp. 2d 96 (D. Mass. 2009) .................................................................4, 9

*New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174
(N.J. Super. Ct. App. Div. 2003) ........................................................................10

*PDK Laboratories, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997) ........................5

*Perez v. Nidek Co.*, 657 F. Supp. 2d 1156 (S.D. Cal. 2009)........................................6

*Photomedex, Inc. v. Irwin*, 601 F.3d 919 (9th Cir. 2010) .........................................5

*Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007) .................................9

*In re Rezulin Products Liability Litigation*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005) ...............16, 17

*In re Rezulin Products Liability Litigation*, 524 F. Supp. 2d 436 (S.D.N.Y. 2007) .....................10

*Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002) ...........................11

*Rule v. Fort Dodge Animal Health, Inc.*, No. 09-1364, 2010 WL 2179794
(1st Cir. June 2, 2010)..........................................................................................13

*Southern Illinois Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*,
No. 08 CV 5175, 2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) ................................11, 16

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
No. 2:06-cv-5774, 2010 WL 2346624 (D.N.J. June 9, 2010)..................................8, 10, 14

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
No. 2:06-cv-5774, 2009 WL 2043604 (D.N.J. July 10, 2009) .................10, 11, 12, 13, 15

*Southeastern Laborers Health & Welfare Fund v. Bayer Corp.*,
655 F. Supp. 2d 1270 (S.D. Fla. 2009) ....................................................................10, 12

*Sinclair v. Merck & Co.*, 948 A.2d 587 (N.J. 2008) ....................................................15

*Solomon v. Bristol-Myers Squibb Co.*, No. 07-1102, 2009 WL 5206120
(D.N.J. Dec. 30, 2009) ..........................................................................................12

*Summit Technology, Inc. v. High-Line Medical Instruments Co.*,
922 F. Supp. 299 (C.D. Cal. 1996) ........................................................................5

*Sutliffe v. Epping School District*, 584 F.3d 314 (1st Cir. 2009) ...................................7

*United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720 (1st Cir. 2007).........................5

*Walus v. Pfizer, Inc.*, 812 F. Supp. 41 (D.N.J. 1993) ....................................................................15

*Washington Legal Foundation v. Friedman*, 13 F. Supp. 2d 51 (D.D.C. 1998),
    *amended*, 36 F. Supp. 2d 16 (D.D.C. 1999) ......................................................................14

*Washington Legal Foundation v. Henney*, 202 F.3d 331 (D.C. Cir. 2000) ...................................3

*Windsor Card Shops, Inc. v. Hallmark Cards, Inc.*, 957 F. Supp. 562 (D.N.J. 1997) ..................15

## **Statutes**

21 C.F.R. § 99.1 *et seq.* (2010) ....................................................................................................3

21 U.S.C. § 321(n) ........................................................................................................................3

21 U.S.C. § 337(a) ......................................................................................................................4, 5

N.J. Stat. Ann. § 2A:58C-1 (West 2000) ....................................................................................14

N.J. Stat. Ann. § 12A:2-607(3) (West 2004) ...............................................................................17

N.J. Stat. Ann. § 12A:2-714 (West 2004) ....................................................................................17

N.J. Stat. Ann. § 12A:2-725(1)-(2) (West 2004) .........................................................................16

Defendants Pfizer Inc and Warner-Lambert Company LLC ("Defendants," or "Pfizer") submit this memorandum in support of their Motion to Dismiss pursuant to Rules 8(a), 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs Guard Insurance Company and various subsidiaries (collectively, "Guard" or "Plaintiff") are insurance companies seeking to recover, under New Jersey's Consumer Fraud Act ("NJCFA") and through common law fraud and other state law causes of action, money that Guard allegedly spent on Neurontin prescriptions for its insureds.[1]  Guard's ten-page Complaint consists of legal conclusions and bare allegations of wrongdoing that are impermissibly premised on alleged violations of the Food, Drug, and Cosmetic Act ("FDCA"), completely untethered to any cognizable injury to Guard, and devoid of the specificity required to maintain a fraud claim.

As this Court has repeatedly held in the Neurontin litigation, civil plaintiffs cannot, as Guard seeks to do here, privately enforce the FDCA's provisions governing off-label promotion. Nor, as this Court has also held, can a plaintiff satisfy Rule 9(b) merely by alleging, as Guard does here, off-label or improper promotion to the market in general.  Guard does not identify a single doctor who saw or heard any off-label or fraudulent statement by Pfizer, much less one who prescribed Neurontin to someone insured by Guard as a result.  Indeed, Guard does not identify, or allege it has identified, any purportedly off-label Neurontin prescription for which it paid some or all of the cost.  Similarly, Guard does not identify any false statement or misrepresentation on which it purportedly relied in making any coverage or reimbursement decision with regard to Neurontin, or allege that it no longer covers Neurontin prescriptions for its insureds or that it has made any changes to its payment or reimbursement policy for Neurontin since learning about the alleged misconduct.  Instead, the Complaint is rife with precisely the types of conclusory allegations that the Supreme Court has determined are not to be

---

[1] Pfizer removed this action to federal court on the basis of diversity jurisdiction, and it was transferred to this Court for consolidated pretrial proceedings.

credited on a motion to dismiss.  Guard thus has not adequately alleged Article III standing or pled a plausible claim for relief under Rule 8, much less set forth any of the details necessary to satisfy Rule 9(b)'s requirements for claims sounding in fraud.

Guard's claims also fail for several additional reasons.  The Complaint should be dismissed with prejudice because all of Guard's claims are subsumed by the New Jersey Products Liability Act ("NJPLA"), which governs causes of action relating to products, including prescription medicines.  In addition, Guard's NJCFA claim fails as a matter of law because Guard is a third-party payor ("TPP"), not a Neurontin user, and, therefore, lacks standing as a "consumer" under that Act.  Guard's breach of warranty and unjust enrichment claims are further barred by New Jersey's four-year statute of limitations and fail for several other reasons.

As set forth in more detail below, the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

Plaintiff Guard is an insurance company that claims to have been "obligated to pay prescription drug expenses for persons qualified for workers' compensation benefits" under its plans. (Compl. ¶¶ 1, 4.)  Guard's central allegation, stated in the broadest most conclusory terms possible, is that Defendants engaged in "illegal and fraudulent promotion of unapproved uses in connection with the marketing and sale of Neurontin."  (*Id.* ¶ 5.)  Guard also asserts that "Defendants misrepresented and concealed material information from end-users, physicians, and third-party payors such as Plaintiff, concerning the safety and efficacy of Neurontin."  (*Id.* ¶ 6.) The Complaint does not, however, allege that Defendants made any representations about Neurontin to Guard or to any doctor who prescribed Neurontin to an insured, much less identify any specific misrepresentation or statement on which Guard relied that was false, misleading, or contained material omissions.  Rather, it levies generic and conclusory allegations that Defendants "employed various deceptive tactics" (*id.* ¶ 12), and engaged in a "fraudulent marketing scheme" (*id.* ¶ 13), on which Guard claims to have somehow relied to its detriment. (*Id.* ¶ 8.)

The only portion of the Complaint with any factual detail – though still without any reference or link to Guard itself – consists of a quotation of seven paragraphs from the Department of Justice's May 13, 2004, press release, entitled, "Warner-Lambert to Pay $430 Million to Resolve Criminal & Civil Health Care Liability Relating to Off-Label Promotion." (*Id.* ¶ 12 (citing http://www.justice.gov/opa/pr/2004/May/04_civ_322.htm).)   This press release described the plea agreement and settlement reached in May 2004 by Warner-Lambert and the Department of Justice in which Warner-Lambert pleaded guilty to two strict-liability, misdemeanor violations under the FDCA related to its marketing of Neurontin between April 1995 and August 1996.   Off-label promotion of prescription medicines constitutes a violation of the FDCA,[2] regardless of the medicine's safety or efficacy or the truth of any statements about off-label use.[3]

Off-label use, as distinguished from off-label promotion, is not unlawful.   The FDA recognizes the independent and informed medical judgment of physicians and does not prohibit the prescription of medications for "any purpose that [a physician] deems appropriate, regardless of whether the drug has been approved for that use by the FDA." *Wash. Legal Found. v. Henney*, 202 F.3d 331, 333 (D.C. Cir. 2000); *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001) (prescribing off-label is an "accepted and necessary" part of the practice of medicine).   Furthermore, Congress and the FDA have adopted detailed regulatory provisions to address prescription drug marketing and promotion, including the dissemination of information about off-label uses. *See, e.g.*, 21 U.S.C. § 321(n) (defining misbranding); 21 C.F.R. § 99.1 *et*

---

[2] Not every discussion of off-label use by a drug manufacturer constitutes off-label promotion. The Food and Drug Administration ("FDA") has established certain safe harbors for the dissemination of information that it does not consider promotional.

[3] Accordingly, the press release and plea quoted in Guard's Complaint does not establish that Warner-Lambert acted fraudulently or intentionally, or that Neurontin is not efficacious.   As this Court has recognized implicitly, scienter was not an element of the counts to which Warner-Lambert pled. *See In re Neurontin Mktg. & Sale Practices Litig.*, 244 F.R.D. 89, 92 & n.6 (D. Mass. 2007) (Saris, J.) ("*Neurontin I*"); *In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 329 (D. Mass. 2009) (Saris, J.) ("*Neurontin II*").

*seq.* (2010) (establishing requirements for dissemination of information about off-label uses). Congress vested the right to enforce these laws exclusively with the government. *See* 21 U.S.C. § 337(a).

## STANDARDS FOR DISMISSAL

In evaluating the sufficiency of a complaint under Rule 8(a), courts apply a two-step analysis: First, a court disregards all conclusory allegations because it is "'not bound to accept as true a legal conclusion couched as a factual assertion.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). While Rule 8 provides for a "short and plain statement," "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950. Second, after disregarding conclusory allegations, the court assumes the truth only of the remaining "well-pleaded factual allegations," *id.*, to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 107 (D. Mass. 2009) (Saris, J.) ("In order to survive a motion to dismiss, 'a complaint must allege "a plausible entitlement to relief."'") (quoting *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (citation omitted)). To be facially plausible, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (citation omitted)).

In addition, where, as here, a plaintiff alleges claims sounding in fraud, it must plead with particularity pursuant to Federal Rule of Civil Procedure 9(b). This heightened pleading standard can only be satisfied by laying out "the who, what, where, and when of the allegedly false or fraudulent representation." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23,

29 (1st Cir. 2004); *see also United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 731 (1st Cir. 2007) ("The particularity requirement means that a complaint must specify 'the time, place, and content of an alleged false representation.'") (citation omitted).

## ARGUMENT

## I.   Guard's Claims Are Barred Because the FDCA Proscribes a Private Cause of Action and Guard Has Not Alleged Any Independently Actionable Fraudulent Conduct

Guard's Complaint constitutes an impermissible attempt to privately enforce the FDCA and FDA regulations governing off-label promotion and should be dismissed in its entirety on this ground.  As this Court has recognized, the FDCA "does not create a private right of action." *In re Neurontin Mktg., Sales Practices & Prods. Liability Litig.*, 433 F. Supp. 2d 172, 179 (D. Mass. 2006) (Saris, J.).  Rather, the right to enforce the FDCA and its regulations concerning the promotion of prescription medicines belongs exclusively to the federal government.  *See* 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States.");  *Buckman*, 531 U.S. at 349 n.4 (section 337(a) "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the [FDCA]"); *see also Photomedex, Inc. v. Irwin*, 601 F.3d 919, 928 (9th Cir. 2010) (holding that plaintiffs may not assert any claim that "would . . . require a court to usurp the FDA's prerogative to enforce the FDCA").[4]  Guard's

---

[4] Federal courts have repeatedly foreclosed claims – regardless of the stated legal theory – that a manufacturer or distributor has unlawfully promoted a product for a use for which has not been approved by the FDA.  *See, e.g., PDK Labs., Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (action challenging advertising of diet product that plaintiff alleged was being "sold without proper FDA approval" was an improper attempt "to privately enforce [the provisions] of the FDCA"); *Lefaivre v. KV Pharm. Co.*, No. 4:09CV00588, 2010 WL 59125, at *3 (E.D. Mo. Jan. 5, 2010) (rejecting state warranty claim based on adulteration of drugs because it was "wholly dependent upon the federal violations and would not exist absent the federal violations"); *see also Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993) (affirming dismissal of false advertising claim on same ground); *Autin v. Solvay Pharms., Inc.*, No. 05-2213, 2006 WL 889423, at *4-5 (W.D. Tenn. Mar. 31, 2006) (dismissing tort and consumer protection claims based on allegations that defendant marketed an unapproved drug on same grounds); *Anthony v. Country Life Mfg., L.L.C.*, No. 02 C 1601, 2002 WL 31269621, at *1 (N.D. Ill. Oct. 9, 2002) (dismissing Illinois Consumer Fraud Act claim where allegations "amount[ed] to nothing other than an attempt to enforce the FDCA"), *aff'd*, 70 F. App'x 379 (7th Cir. 2003); *Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 306, 316-17 (C.D. Cal. 1996) (dismissing Lanham Act and *(cont'd)*

Complaint falls squarely within this prohibition.  All of its claims are predicated on alleged violations of the FDCA and off-label marketing regulations.  Indeed, the Complaint's only factual allegations of misconduct are quotations from a government press release regarding Warner-Lambert's plea to two such violations.

Guard cannot circumvent the prohibition against private enforcement of the FDCA merely by invoking state-law fraud, when its factual allegations concern *only* off-label promotion and lack any specificity as to any fraudulent misrepresentation.  As this and other Courts have repeatedly held, off-label promotion is not inherently fraudulent.  *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 329 (D. Mass. 2009) ("*Neurontin II*") ("[I]t is important to reiterate that [plaintiffs] must show that defendants' *fraudulent* marketing, not simply their off-label marketing, caused the prescriptions [for which Plaintiffs seek to recover]." (emphasis in original)); *accord In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, No. MDL 08-1934, 2009 WL 1703285, at *7 (C.D. Cal. June 17, 2009) (appeal pending); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d. 1037, 1051 n.6 (N.D. Cal. 2009).

For example, *Epogen* involved TPP claims that a manufacturer violated the federal RICO statute and state consumer protection laws by promoting its anemia medicines for off-label uses.  *See Epogen*, 2009 WL 1703285, at *1-2.  Finding that plaintiffs "failed to state a claim for fraud," *id.* at *6, the court dismissed the complaint as an improper "attempt to shoehorn allegations that [defendant] engaged in off-label promotion in violation of the FDCA into . . . state consumer fraud causes of action."  *Id.* at *5.  As the court explained:

> Plaintiffs [cannot] predicate RICO and state consumer fraud claims on what are, in essence, misbranding claims, *absent allegations that [the defendant] made false or deceptive statements.*  This is because off-label promotion is not

*(cont'd from previous page)*
consumer protection claims that would "'usurp[] the FDA's discretionary role in the application and interpretation of its regulations'") (citation omitted); *cf. Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1168-69 & n.6 (S.D. Cal. 2009) (dismissing state law claims premised on the sale of adulterated medical devices because the FDCA precludes private enforcement actions).

6

inherently fraudulent; truthful off-label promotion of drugs does not violate RICO or state consumer protection laws. Rather, it violates the FDCA. But the law is very clear in that only the federal government, and not a private plaintiff, may enforce the FDCA.

*Id.* at \*7 (emphasis added and omitted).

Here, as in *Epogen*, Guard has not identified a single allegedly false or misleading statement that underlies its claims of fraud under New Jersey law, much less one on which it relied to its detriment. *Cf. Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) (fraud claim requires material misrepresentation, knowledge of falsity, an intention of reliance, reasonable reliance, and injury). Nor does the Complaint plead with specificity any factual representation made by Pfizer to Guard – or the time, place, or content of any particular statement or omission. *Cf. Alternative Sys. Concepts*, 374 F.3d at 29. It merely contains vague references to statements purportedly made about Neurontin. (*See, e.g.*, Compl. ¶¶ 16-18); *cf. Hagen v. U-Haul Co. of Tenn.*, 613 F. Supp. 2d 986, 996 (W.D. Tenn. 2009) (dismissing fraud claims because, "aside from generally stating that the fraud involved the 'safety' of the product, the complaint does not expound upon the content of the misrepresentations"). In sum, because Guard has not pled any fraudulent statement with specificity and instead purports to rely on generalized allegations of off-label promotion, the Court should dismiss its Complaint.

## II.     The Complaint Fails to Allege a Cognizable Injury or Causal Nexus

Guard's Complaint should also be dismissed in its entirety because it does not adequately allege a cognizable injury or a tenable causal nexus between Pfizer's alleged misconduct and any purported injury – two essential elements of each of their claims and of constitutional standing. *See Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009) (Article III standing requires both an "'injury in fact'" and "a 'causal connection between the injury and the conduct complained of'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))); *In re Neurontin Mktg. & Sale Practices Litig.*, 244 F.R.D. 89, 104 (D. Mass. 2007) ("*Neurontin I*") (addressing injury and causation requirements of New Jersey claims).

A.       **The Complaint Does Not Plausibly Allege Causation**

Each of Guard's claims requires that it plead and prove causation. *See Neurontin I*, 244 F.R.D. at 103-04 (causation required for New Jersey fraud, NJCFA, and unjust enrichment claims); *see also Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 383 (D.N.J. 2004) (dismissing implied warranty products liability claim under Pennsylvania law for failure to prove causation). The element of causation is also of constitutional and jurisdictional significance because Article III standing "requires that [Plaintiff's] injury be causally linked to some action or conduct by Defendants, that is[,] be fairly attributable to their alleged wrongdoing." *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2010 WL 2346624, at *5 (D.N.J. June 9, 2010) ("*Schering II*").  To sufficiently allege causation under Article III and its state law claims, Plaintiff's Complaint must, therefore, at a minimum, set forth allegations "link[ing] [its] off-label purchases to the wrongdoing charged." *Id.* at *7 ("Some plausible showing of having been personally harmed by Defendants' conduct is fundamental to each Named Plaintiff's standing to pursue this action under Article III . . . .").  In addition, Plaintiff's common-law fraud claim requires that it plead "reasonable reliance" with particularity. *See Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 852-53 (6th Cir. 2006) (affirming dismissal of fraud action for failure to plead reliance with particularity).  As the New Jersey Supreme Court has held, "[t]he actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission." *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195 (N.J. 2000).

Guard's conclusory allegations do not satisfy these standards.  The Complaint does not contain a single fact demonstrating a link between the conduct alleged and any payment by Guard for Neurontin.  More specifically, Guard does not identify a single misrepresentation by Pfizer that it received or that caused it to pay for a prescription for Neurontin, much less one on which it relied at any time in making any coverage, payment, purchase, formulary, or reimbursement decision, or any other transaction, with respect to Neurontin.  Nor does the Complaint identify a single physician who received and relied on any such misrepresentation in

8

writing a Neurontin prescription for any of Guard's insureds, or, for that matter, a single Neurontin prescription for which it purportedly paid as a result of any of the alleged misconduct involving the promotion of Neurontin.  Instead, Guard asserts in only the most general terms that it "would not have authorized the purchase or otherwise paid for Neurontin on the terms it did, if Plaintiff, its insureds or beneficiaries, had known the true and complete facts associated with the purported safety and efficacy of Neurontin for the off-label use for which it had been prescribed."  (Compl. ¶ 21.)  Guard does not identify any of "the terms" on which it based any coverage, reimbursement, authorization or payment decision for Neurontin; allege that it no longer covers or authorizes the purchase of Neurontin; or allege that it has changed those authorization "terms" in any way after learning of the alleged misconduct on which it bases its claims.  Such generalized and conclusory allegations of causation are not entitled to a presumption of truth and thus fail to state a claim upon which relief can be granted.  *See Twombly*, 550 U.S. at 555.

As this Court has recognized, courts throughout the country "have almost uniformly held that in a misrepresentation action involving fraudulent marketing of direct claims to doctors, a plaintiff TPP or class must prove through *individualized evidence* that the misrepresentation caused specific physicians, TPPs, or consumers to rely on the fraud, and cannot rely on aggregate or statistical proof."  *In re Neurontin Mktg. & Sales Practices Litig.*, 677 F. Supp. 2d 479, 494 (D. Mass. 2010) (Saris, J.) ("*Neurontin III*") (emphasis added) (collecting cases).  Thus, this Court has expressly rejected efforts by plaintiffs to plead or prove causation through a "fraud-on-the-market" theory.  *See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 112 (D. Mass. 2009) (Saris, J.) (holding that "the prescription drug industry is too dissimilar from the securities market to support applying a 'fraud on the market' theory") (citing *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1337 (S.D. Fla. 2007)).  Other courts have likewise rejected the use of "fraud-on-the-market" or price inflation theories in this context.  *See, e.g.*, *Prohias*, 485 F. Supp. 2d at 1336 ("[P]roof of any such 'price inflation' injury would depend on evidence that the pharmaceutical market is 'efficient' such that information about [a medicine's]

efficacy results in changes in its price."); *see also In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL 2043604, at \*22 (D.N.J. July 10, 2009) ("*Schering I*") (dismissing TPP claims based on a fraud-on-the-market theory of causation); *In re Rezulin Prods. Liab. Litig.*, 524 F. Supp. 2d 436, 441 (S.D.N.Y. 2007) (rejecting price-inflation theory of injury as a "quintessential fraud-on-the-market theory").

Indeed, in two prescription drug marketing actions similar to this one, New Jersey's courts found it "plain that the theories [of fraud-on-the-market or price inflation] have no place as a part of the proofs required of plaintiffs in the [NJ]CFA context." *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 178 (N.J. Super. Ct. App. Div. 2003) (noting that such theories "would virtually eliminate the requirement that there be a connection between the misdeed complained of and the loss suffered"); *accord Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1087-88 (N.J. 2007) ("*Engineers*"); *see also Se. Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F. Supp. 2d 1270, 1283 (S.D. Fla. 2009) (dismissing NJCFA claim because it was premised on impermissible "fraud-on-the-market" theory of causation).

These authorities confirm that TPPs like Guard cannot establish the essential elements of causation and injury unless they plead, and ultimately prove, "that they were directly harmed by misrepresentations or omissions relied on by the TPP." *Neurontin III*, 677 F. Supp. 2d at 496. Accordingly, in *Neurontin III*, this Court granted summary judgment dismissing the claims of two TPPs that alleged a fraudulent marketing scheme but did not claim or present evidence that they "had [any] direct communications with Pfizer" or that they themselves "relied on fraudulent representations." *Id.* at 497. Here, Plaintiffs' Complaint contains no allegations that would distinguish their claims from those dismissed in *Neurontin III*.

Numerous other courts have likewise dismissed highly analogous TPP claims as too speculative and remote to satisfy Article III or the causation requirements of state law claims like Guard's. *See, e.g.*, *Schering II*, 2010 WL 2346624, at \*2-3, \*8-9 (dismissing amended complaint for failing to connect plaintiffs' "purchases of the Subject Drugs with the alleged fraudulent

10

promotion and/or bribes," finding that allegations of off-label promotion and plaintiffs' payment for off-label prescriptions did not plausibly suggest that such payment had "anything to do with any alleged misrepresentations about off-label indications for the Subject Drugs"); *Cent. Reg'l Employees Benefit Fund v. Cephalon, Inc.*, No. 09-3418, 2010 WL 1257790, at *4 (D.N.J. Mar. 29, 2010) (denying plaintiffs' motion to reopen action asserting TPP fraud claims involving alleged off-label promotion because "none of [the] factual allegations [in the proposed complaint] contain[ed] any nexus at all to the plaintiffs from which the Court could infer reliance by the plaintiffs or causation of the plaintiffs' alleged damages"); *S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175, 2009 WL 3151807, at *7 (S.D.N.Y. Sept. 30, 2009) (dismissing same, holding that absent specific allegations of physician reliance, plaintiffs could not plead proximate cause); *Ironworkers Local Union No. 68 v. AstraZeneca Pharms. LP*, 585 F. Supp. 2d 1339, 1344 (M.D. Fla. 2008) (same, finding the critical causal link of a doctor's decision to prescribe a medicine rendered TPP claims too speculative as a matter of law).[5]

Courts have similarly dismissed claims by consumers against manufacturers of prescription medicines for failing to allege specific misrepresentations to or reliance by plaintiffs' prescribing physicians. *See, e.g.*, *Schering I*, 2009 WL 2043604, at *31-35 (finding consumer plaintiffs failed to plead causation in support of their New Jersey fraud claims because they did "not plead a single instance in which they, themselves, or any of their prescribing doctors received a misrepresentation of fact from Defendants and relied upon that misrepresentation in deciding to prescribe one of the Subject Drugs to Plaintiffs"); *In re Actimmune Mktg. Litig.*, No.

---

[5] *See also Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 318, 321 (5th Cir. 2002) (concluding that a health insurer could not causally link its injuries to defendant's conduct where the product at issue "was a prescription drug [because] before a patient could take [the product], his physician had to make an independent medical judgment to prescribe it"); *Hood ex rel. Miss. v. Eli Lilly & Co.* (In re Zyprexa Prods. Liab. Litig.), 671 F. Supp. 2d 397, 454-55 (E.D.N.Y. 2009) (dismissing reimbursement claims by state attorney general against pharmaceutical manufacturer for lack of causation because those claims would "require[] consideration of what the prescribing physician knew and the cost-benefit analysis that applied to the individual patient"); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 484 F. Supp. 2d 973, 984 (D. Minn. 2007) (rejecting TPP claims as "too speculative" due to dependence upon "the independent choices of the doctors who recommend[ed] the [pacemakers] to their patients and on the patients who decide[d] to receive the devices, in lieu of other treatment options, if any").

11

C 08-02376, 2009 WL 3740648, at *11 (N.D. Cal. Nov. 6, 2009) (dismissing amended complaint where plaintiffs failed to "supplement[] their complaint with any allegations of sufficient specificity from which the court could infer that any of above-alleged misrepresentations caused injury to plaintiffs by inducing them to pay for [the subject medicine]"); *Solomon v. Bristol-Myers Squibb Co.*, No. 07-1102, 2009 WL 5206120, at *10 (D.N.J. Dec. 30, 2009) ("Plaintiff fails to allege that his physicians personally received a misrepresentation of fact from Defendants and relied upon that misrepresentation in deciding to prescribe [the subject medicine] to Plaintiff.").[6]  Indeed, given the numerous factors that may have contributed to the independent medical judgment of a physician who prescribed Neurontin for a patient – such as personal experience with the drug and other drug therapies, the standard of care, independent research, or recommendations from colleagues – there is no plausible basis to presume a causal connection between the limited alleged communications and Guard's individual payments for any Neurontin prescriptions.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937,1950–52 (2009).

As discussed above, recent decisions by this Court and other courts also make clear that Guard cannot avoid the need to specifically plead facts demonstrating a causal nexus between some conduct by Pfizer and a cognizable injury to Guard by claiming that it is going to rely on "aggregate or statistical proof" at some point in the future.  *Neurontin III*, 677 F. Supp. 2d at 494 (holding that causation must instead be proved through "individualized evidence").   As the *Schering* court observed, "[t]he New Jersey Supreme Court has . . . rejected [the] attempt to use statistical analysis of price effect in place of particularized factual allegations to establish ascertainable loss or causation under the NJCFA."  *Schering I*, 2009 WL 2043604, at *31; *see also Engineers*, 929 A.2d at 1088 ("To the extent that plaintiff intends to rely on a single expert to establish a price effect in place of a demonstration of an ascertainable loss or in place of proof

---

[6] *See also Se. Laborers Health & Welfare Fund*, 655 F. Supp. 2d at 1289 (noting that the court dismissed the fraud and negligent misrepresentation claims of individual patients because they "failed to allege specific statements upon which the individual patients or their physicians had relied").

of a causal nexus between defendant's acts and the claimed damages, . . . plaintiff's proofs would fail.").

>        **B.      The Complaint Does Not Plausibly Allege a Cognizable Injury**

Guard's conclusory allegations of injury in the form of payment for unidentified prescriptions for Neurontin similarly fail to satisfy both state law and constitutional standing requirements.   First, as this Court has previously held, a TPP alleging injury based on its purported payment for off-label Neurontin prescriptions must plead and prove that Neurontin was *ineffective* for the off-label use at issue.   *See Neurontin I*, 244 F.R.D. at 104; *accord Schering I*, 2009 WL 2043604, at *11; *see also Rule v. Fort Dodge Animal Health, Inc.*, No. 09-1364, 2010 WL 2179794, at *3 (1st Cir. June 2, 2010) (holding, in consumer fraud case involving veterinary medicine, that where a product has been consumed and provided the intended benefit without injury, a plaintiff cannot demonstrate a concrete injury).   Indeed, "[w]ithout alleging that a product failed to perform as advertised, a Plaintiff has received the benefit of his bargain and has no basis to recover purchase costs."   *District 1199P Health & Welfare Plan v. Janssen*, *L.P.*, No. 06-3044, 2008 WL 5413105, at *8 (D.N.J. Dec. 23, 2008) (quotation omitted).   In its Complaint, however, Guard never alleges that Neurontin is or was ineffective for any specific off-label use or that it failed to perform as expected by any prescribing physician, much less sets forth any factual support for any such allegation.   It contains only the broad and vague charges that Pfizer "misrepresented the . . . efficacy of Neurontin" and that Neurontin's "purported . . . efficacy benefits were unfounded."   (Compl. ¶ 27(c), (e).)   Such conclusory allegations are plainly insufficient to sustain Guard's burden of stating a plausible claim.   *See Schering I*, 2009 WL 2043604, at *14 (holding that TPPs failed to plausibly allege injury where "in the few instances where Plaintiffs [did] allege that they paid for ineffective drugs, they [did] so summarily").

It is, of course, "'simply not enough to claim that [the subject medicine] had not been proven to be effective'" to the FDA in order to state a claim.   *Id.* at *14 (citation omitted); *id.* at *10 ("[T]his theory of injury requires the Court to assume that off-label promotion is, by its very

nature, fraudulent conduct.  This is not reality."); *see also Schering II*, 2010 WL 2346624, at *7 (dismissing amended complaint where there were "no factual allegations stating that the drugs were purchased for indications for which they were actually ineffective or unsafe, as opposed to indications for which they simply had not been FDA-approved"); *accord In re Actimmune*, 614 F. Supp. 2d at 1051 n.6 (noting that a medicine may still be effective even if the FDA has not reached that conclusion); *Wash. Legal Found. v. Friedman*, 13 F. Supp. 2d 51, 67 (D.D.C. 1998) (highlighting FDA official's deposition testimony that "'the fact that [a use] is not an approved indication should not be viewed . . . as some sort of determination by FDA that the use is inappropriate or is ineffective'" (citation omitted)), *amended on other grounds*, 36 F. Supp. 2d 16 (D.D.C. 1999).

## III.    Guard's Claims Are Precluded by State Law

### A.    Guard's Claims Are Subsumed by the NJPLA

Plaintiff's claims should be dismissed for the additional, independent reason that they are subsumed by the New Jersey Product Liability Act ("NJPLA").  The NJPLA replaced all pre-existing product liability theories with "one unified, statutorily defined theory of recovery for harm caused by a product."  *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007); N.J. Stat. Ann. 2A:58C-1 (West 2000).  This extends not only to direct actions for "harm" caused by a product, but also to any action for "other loss deriving from any type of harm described" in the statute.  N.J. Stat. Ann. § 2A:58C-1b(2)(d) (West 2000).  As the New Jersey Supreme Court has observed, "[t]he language chosen by the Legislature in enacting the [NJ]PLA is both expansive and inclusive, encompassing virtually *all possible causes of action* relating to harms caused by consumer and other products."  *Lead Paint*, 924 A.2d at 503 (emphasis added).

Thus, in *McDarby v. Merck & Co.*, 949 A.2d 223 (N.J. Super. Ct. App. Div. 2008), the Appellate Division held that plaintiffs' NJCFA claims to recover monies expended on the prescription medicine Vioxx were barred because they were based on the same underlying allegation that Merck failed to disclose health risks posed by Vioxx.  *Id.* at 278-79.  It made no difference that the relief sought was economic in nature.  The Appellate Division thus affirmed

the rule that, under New Jersey law, such product claims may only be pursued under the NJPLA. *Id.*; *see also Walus v. Pfizer, Inc.*, 812 F. Supp. 41, 43 (D.N.J. 1993) (noting that the NJPLA is "the sole method to prosecute a product liability action," and that, "[a]fter its enactment, only a single product liability action remains") (internal quotation marks and citation omitted); *Sinclair v. Merck & Co.*, 948 A.2d 587, 598 (N.J. 2008) (holding that plaintiffs' NJCFA claim for medical monitoring was subsumed under the NJPLA, even though plaintiffs had no viable NJPLA claim to assert).

The same principles apply in this case.  Guard's claims all rest on the same fundamental theory of injury at issue in *McDarby* – that is, that it sustained economic loss as a result of Pfizer's alleged misrepresentations involving a prescription medication.  Because the alleged loss "deriv[es] from" the kind of harm covered exclusively by the NJPLA, it is recoverable, if at all, only under the auspices of the NJPLA.

### B.    Guard's NJCFA Claims Fail Because It Is Not a "Consumer"

Guard's claims under the NJCFA should be dismissed for the additional reason that it is not a "consumer" under the NJCFA.  "It is well-settled law that one must be a 'consumer' in order to sue under [the NJCFA's private remedy provision]."  *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 992 F. Supp. 709, 716 (D.N.J.), *aff'd*, 165 F.3d 221 (3d Cir. 1998).  To be a "consumer" for purposes of the NJCFA, the plaintiff must actually use the item purchased, or, in the words of the appellate division, a consumer is one who "'diminishes or destroys [the] utilit[y]'" of the purchased product.  *Windsor Card Shops, Inc. v. Hallmark Cards, Inc.*, 957 F. Supp. 562, 567 n.6 (D.N.J. 1997) (citation omitted).

For this reason, courts have repeatedly held that TPPs for prescription medications, like Guard, cannot bring NJCFA claims.  *See Schering I*, 2009 WL 2043604, at *31-32 (holding that TPPs "are not consumers entitled to sue under the NJCFA" because "TPP Plaintiffs do not use or consume the drugs they purchase") (citing *J & R Ice Cream Corp. v. Cal. Smoothie Lic'g Corp.*, 31 F.3d 1259, 1273 (3d Cir. 1994)); *Central Regional Employees*, 2009 WL 1257790, at *3 ("Because third-party payors do not use or consume prescription medications themselves, they

are not 'consumers' within the meaning of the NJCFA, and that statute is therefore inapplicable to the circumstances alleged in the Complaint."); *S. Ill. Laborers'*, 2009 WL 3151807, at *10 (dismissing New Jersey TPP's NJCFA claim with prejudice, finding that "the weight of New Jersey authority supports a finding that [the] New Jersey Plaintiff is not a consumer within the meaning of the New Jersey Act because it does not use Lipitor in a way that diminishes or destroys its utility").[7]  Guard's NJCFA claim should be dismissed on the same ground.[8]

## IV.    Guard's Warranty and Unjust Enrichment Claims Fail for Additional Reasons

### A.    Guard's Warranty and Unjust Enrichment Claims Are Time-Barred

Guard's Complaint establishes on its face that its claims for breach of warranty and unjust enrichment are untimely as a matter of law.  In New Jersey, the statute of limitations for a claim for breach of warranty is "four years after the cause of action has accrued . . . .  A cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach*.  A breach of warranty occurs when tender of delivery is made . . . ."  N.J. Stat. Ann. § 12A:2-725(1)-(2) (West 2004) (emphasis added).  However, all of the wrongful conduct for which Guard might seek to recover occurred prior to May 2004, the date of the Warner-Lambert guilty plea and the Department of Justice press release on which its claims rely, at the latest.  (*See* Compl. ¶¶ 12-14.)  Any "tender of delivery" made on the basis of that conduct would also have occurred before May 2004.  Accordingly, the limitations period for this alleged cause of action expired in May 2008, more than a year before Guard filed its complaint on October 16,

---

[7] *See also In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 617 (S.D.N.Y. 2005) (NJCFA claims fail where the plaintiff is not "one who in some sense benefits from the use of the good or service in question").

[8] Furthermore, in determining the class of plaintiffs that the NJCFA was enacted to protect, New Jersey courts have looked to the NJCFA's purpose, namely, to protect unsophisticated consumers from mass marketing by professional sellers.  *See Kavky v. Herbalife Int'l of Am.*, 820 A.2d 677, 683 (N.J. Super. Ct. App. Div. 2003).  Plaintiff in this case is a large business entity with extensive knowledge of the pharmaceutical industry and does not fall within the class of "consumers" whom the NJCFA was intended to protect.  More importantly, the business transactions described in the Complaint – that is, underwriting expenses related to treatment of third-party claimants to satisfy Guard's contractual obligations under workers' compensation insurance policies – do not qualify as consumer activity.

2009.  Moreover, the failure of Guard's breach of warranty claim also dooms its unjust enrichment claim because a plaintiff cannot "avoid the time constraints of [the statute of limitations] by simply denominating his action as an equitable one seeking relief based upon defendants' alleged unjust enrichment."  *See Goldsmith v. Camden County*, 975 A.2d 459, 463 (N.J. Super. Ct. App. Div. 2009).

### B.   Guard's Warranty Claim Fails for Lack of Notice and Standing

Guard's warranty claim is also barred because it has not alleged that it notified Pfizer of any alleged breach of warranty within a "reasonable time" and before bringing suit.  N.J. Stat. Ann. § 12A:2-607(3) (West 2004).  Under New Jersey law, "providing notice [of breach of warranty] is a condition precedent to filing any suit for breach of contract under Article 2 of the U.C.C.," and Plaintiff's failure to allege that it gave notice to Pfizer is therefore fatal to its warranty claims.  *JOC, Inc. v. ExxonMobil Oil Corp.*, No. 08-5344, 2010 WL 1380750, at *4 (D.N.J. Apr. 1, 2010) (dismissing gas station franchisee's warranty claim for economic harm against franchisor for failure to allege notice of breach); *Johnson v. Hoffman*, 80 A.2d 624, 628 (N.J. 1951) (reversing grant of judgment to plaintiff on warranty claim for failure to prove "notice of a breach of warranty within a reasonable time after the buyer knew or ought to have known of the breach").  Moreover, even if Plaintiff had alleged pre-suit notice, it is plain that five years from the date of alleged breach is not a "reasonable time" to apprise Pfizer of the issue.

Additionally, Guard lacks standing to assert its warranty claims under the UCC because such claims may only be asserted by "buyers."  *See* N.J. Stat. Ann. § 12A:2-714 (West 2004).  A buyer is "'[o]ne who *obtains* property for money or other valuable consideration,'" and, therefore, "one is not a buyer of a good unless one acquires some kind of ownership rights in it."  *See In re Rezulin*, 392 F. Supp. 2d at 609 (quoting BLACK'S LAW DICTIONARY 1248 (7th ed. 1999)).  Here, as in *Rezulin*, in which the court granted summary judgment dismissing TPP warranty claims involving their payment for prescription medicines, Guard is not a buyer because, as a TPP, it did not obtain or acquire any rights in the Neurontin prescriptions administered to its insureds. *Id.*  Indeed, "[p]aying for part of the cost of something is not the same as buying it."  *Id.*

17

### C.     Guard's Unjust Enrichment Claim Fails as a Matter of Law

Guard's unjust enrichment claim fails for two additional reasons. First, under New Jersey law, unjust enrichment is not an independent cause of action in tort. *See, e.g.*, *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004) (New Jersey "does not recognize unjust enrichment as an independent tort cause of action"). Unjust enrichment "is of course a familiar basis for imposition of liability in the law of contracts," but "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion." *Id.* Thus, courts have held that, in a tort action like this one, unjust enrichment allegations are "subsumed by [plaintiff's] other tort claims" and cannot proceed separately. *Blystra v. Fiber Tech Group, Inc.*, 407 F. Supp. 2d 636, 644 n.11 (D.N.J. 2005).

Second, Guard's unjust enrichment claim fails because it does not (and cannot) allege that it directly conferred a benefit on Pfizer. To establish unjust enrichment as a basis for quasi-contractual liability, Guard must "allege a sufficiently direct relationship with the defendant to support the claim." *Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009). Thus, plaintiffs alleging unjust enrichment based on the purchase of a product must plead that they conferred a benefit directly on the defendant – as opposed to an intermediary retailer. *See*, *e.g.*, *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 506 (D.N.J. 2009) (consumer who bought printer from Office Depot did not state claim for unjust enrichment against the manufacturer because he did not confer a benefit directly on the manufacturer); *Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) (consumer who bought his television through retailer "did not confer a benefit on [the manufacturer] within the meaning of New Jersey's doctrine of unjust enrichment"), *aff'd*, No. 08-4736, 2010 WL 1220946 (3d Cir. Mar. 30, 2010). As a TPP, Guard has no direct economic relationship with Pfizer. Any payments it has made for Neurontin were made to medical providers, pharmacies, or insureds, not to Pfizer, and Guard does not allege otherwise. Accordingly, its unjust enrichment claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Pfizer requests that the Court enter an order dismissing the Complaint in its entirety and with prejudice.

Dated:  July 14, 2010                    Respectfully submitted,

                                         SKADDEN, ARPS, SLATE, MEAGHER
                                           & FLOM LLP

                                         By:     /s/ Mark S. Cheffo
                                                 Mark S. Cheffo

                                         Four Times Square
                                         New York, NY 10036
                                         Tel:  (212) 735-3000

                                         -and-

                                         ROPES & GRAY LLP

                                         By:     /s/ Ana M. Francisco
                                                 Ana M. Francisco (BBO #564346)

                                         One International Place
                                         Boston, MA  02110
                                         Tel:  (617) 951-7000
                                         Email:  ana.francisco@ropesgray .com

                                         *Attorneys for Defendants Pfizer Inc and*
                                         *Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 14, 2010.

                                         /s/ Ana. M. Francisco
                                         Ana M. Francisco