UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x

In re:  NEURONTIN MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

MDL Docket No. 1629

Master File No. 04-10981

------------------------------------------------------------x

THIS DOCUMENT RELATES TO:

PRODUCTS LIABILITY ACTIONS

Judge Patti B. Saris

Magistrate Judge Leo T. Sorokin

------------------------------------------------------------x

### DEFENDANTS' OPPOSITION TO PRODUCTS LIABILITY PLAINTIFFS' MOTION FOR AN ORDER AWARDING SANCTIONS AGAINST PFIZER DEFENDANTS AND COMPELLING DEFENDANTS TO COMPLY WITH THIS COURT'S OCTOBER 14, 2009 AND DECEMBER 9, 2009 ORDERS

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer") submit this memorandum in Opposition to Products Liability Plaintiffs' Motion for an Order Awarding Sanctions Against Pfizer Defendants and Compelling Defendants to Comply With this Court's October 14, 2009 and December 9, 2009 Orders [2878]. Defendants request oral argument.

### PRELIMINARY STATEMENT

In June and August of 2009, long after the close of generic discovery, counsel for the Products Liability Plaintiffs represented, on two occasions, that generic discovery was complete and that certain cases were ready to be remanded or tried.[1]  Notwithstanding such representations, on September 14, 2009, Plaintiffs made a far-reaching motion seeking to re-open generic discovery in this MDL.[2]

On October 14, 2009, this Court entered an order granting in part and denying in part Plaintiffs' motion to re-open discovery. (Prods. Liab. Cases Scheduling Order October 2009

---

[1] See Pls.' Mem. in Support of Emergency Request for Issuance of Suggestion of Remand [2075] at 4; see also Joint Status Report on Products Liability Actions, dated June 12, 2009 [1832] at 5.

[2] See Pls.' Mem. in Support of Motion to Re-Open Discovery [2090].

[2125] at 3-4.) The Court made clear that "[a]s a general matter, the Court is not reopening discovery." ([2125] at 3.) And the Court denied Plaintiffs' request to reopen and revise the cutoff date for discovery to the latest date of injury sustained by a plaintiff. (*Id.*) The Court granted discovery limited to the following categories of documents: (1) documents "regarding the efficacy or side effects of Neurontin not previously produced," (2) documents regarding the FDA label change, and (3) "the in-house work, analyses, files and documents upon which Dr. Christopher Wohlberg relied or considered for his presentation to the FDA on January 31, 2008, June 2, 2008 and July 10, 2008." (*Id.* at 3-4.)

Consistent with this Court's order, counsel for Defendants conferred with Plaintiffs' counsel in an attempt to reach agreement on the parameters of such supplemental production, in light of the Court's direction that production be made within 45 days, a time frame that clearly contemplated a narrow supplementation of Defendants' prior production and not a sweeping search of every conceivable custodial file. When the parties were unable to reach agreement, Defendants' moved for clarification of this Court's order. (Defs.' M. for Clarification of Court's October 12, 2009 Order [2176].) This Court denied Defendants' motion on December 8, 2009, stating: "The Court expects the parties to make their best efforts to resolve any discovery disputes." (Electronic Order dated Dec. 8, 2009.)

Since such order, Defendants have produced or made available to Plaintiffs hundreds of thousands of pages of additional documents. They have conferred in good faith with Plaintiffs' counsel on numerous occasions in an attempt to resolve this dispute. Some progress has been made regarding certain categories of documents, although Plaintiffs fail to acknowledge it in their motion for sanctions. As to other categories of documents, Plaintiffs have insisted upon such a vast scope of discovery that the parties have been unable to reach agreement. In fact, Plaintiffs' motion for sanctions makes clear that they are seeking exactly what this Court ordered should not take place: a re-opening of general discovery that would entail a search of hundreds of custodial files.

Pfizer is prepared to continue to confer in good faith with Plaintiffs' counsel and outlines

below the documents that have already been produced, the documents that will be produced in the near future pursuant to agreements reached with Plaintiffs' counsel, and Defendants' proposal for completion of this discovery. For the reasons discussed below, Plaintiffs' motion should be denied.

## ARGUMENT

I.  **Defendants Have Engaged In Good Faith Efforts To Comply With This Court's Orders And To Reach Agreement On The Scope Of Production**

   A.  **The Wohlberg Documents**

One category of documents addressed by this Court's October 2009 were "the in-house work, analyses, files and documents upon which Dr. Christopher Wohlberg relied or considered for his presentation to the FDA on January 31, 2008, June 2, 2008 and July 10, 2008." (2125 at 3-4.) On November 28, 2009, Defendants produced to Plaintiffs over 18,000 pages of documents from the Dr. Wohlberg's files that were responsive to this category. (*See* Stevens Decl., Exh. A.) On January 27, 2010, Defendants produced an additional 90,000 plus pages of documents from Dr. Wohlberg's files. (*See* Stevens Decl., Exh. B.) This production was supplemented with approximately 57,000 additional pages of documents on February 8, 2010. (*See* Stevens Decl., Exh. C.)[3]

In March, counsel for Defendants learned that, as a result of a vendor error, a large number of attachments had been omitted from the documents reviewed for the Wohlberg production. Counsel for Defendants promptly notified Plaintiffs' counsel of the error and asked how they would like to handle these documents. Plaintiffs' Counsel indicated that they wanted to review additional custodial files first. (Stevens Decl. ¶ 6.)[4]

---

[3] Plaintiffs argue that pages were out of order and/or redacted (Altman Decl. [2881] ¶ 17), but have never provided any specifics in response to Defendants' requests for explanation. Defendants are willing to try to fix any technical problems with the document production, but do not know what the issues alluded to by Plaintiffs' Counsel are.

[4] Given the volume at issue, it was certainly reasonable of Defense counsel to make inquiry of Plaintiffs' counsel before reviewing the documents. The attempt by Plaintiffs' counsel to characterize Defendants' reasonable inquiry as a refusal to produce the attachments (Altman Decl. [2881] ¶ 21) may reflect a misunderstanding between the parties. In any event, Plaintiffs' counsel indicated that review of

3

Not satisfied with the over 160,000 pages produced from Dr. Wohlberg's files, Plaintiffs' Counsel continue to insist that additional custodial files be searched and the parties continued to confer regarding which custodians to include  As a result of these conferences, Pfizer agreed to search the custodial files of Guy Cohen, Ed Whalen, Lloyd Knapp, and Lisa Malandro for documents related to Dr. Wohlberg's FDA presentations. It was Defendants' understanding that agreement had been reached regarding the additional custodial files to be searched. (Stevens Decl. ¶ 7.) Defendants anticipate that review of the Whalen and Cohen materials will be completed by August 16 and Malandro and Knapp by September 30. (Stevens Decl. ¶ 7 & Exh. D.)[5] Defendants believe that this production will satisfy their agreement with Plaintiffs' Counsel regarding the Wohlberg-related documents.

### B.     Safety And Efficacy Documents

As acknowledged in Plaintiffs' Motion to Re-Open Discovery, generic paper discovery in this MDL concluded on April 30, 2007 and fact discovery closed on July 14, 2007. (2090 at 1.) The scope of the document production was through May 31, 2004. (*Id.* at 2.) Plaintiffs' prior motion sought additional documents through August 2009.

Although the Court ordered Defendants to update their prior production, as noted above, it made clear that it was not re-opening discovery and contemplated an additional production that could be completed in 45 days. In response to this Court's October 2009, Defendants agreed to make available to Plaintiffs the recent and post-production portions of the Neurontin Investigational New Drug Application(s) ("IND") and New Drug Application(s) ("NDA"). (2177 at 3.) Such files are the logical starting point for any document review concerned with

---

these documents was a lower priority and the parties agreed that other documents would be produced first, to limit the unnecessary search of this large volume of documents. (Stevens Decl. ¶ 6, Exh. G.)

[5] Defendants began collecting materials for review as soon as agreement was reached. Only recently were their efforts sufficiently advanced that they were able to reasonably estimate completion dates. (Steven Decl. ¶ 7.) Such collection has been going on simultaneously with Defendants' efforts to review numerous sales representative files to produce initial case-specific discovery in 69 cases before the September 2010 deadline for such discovery.

4

issues of safety and efficacy and were responsive to Plaintiffs' requests for various regulatory files. For example, the IND and NDA files include correspondence with the FDA, Summaries of Clinical Safety, Annual Reports, and Investigator Brochures. On December 1, 2009, Defendants produced an index to such materials so that Plaintiffs' Counsel could identify which files they wanted to review. (Stevens Decl ¶ 8 & Exh. E.) Plaintiffs have never requested to review any of these documents. (Stevens Decl. ¶ 8.)[6]

In addition, the documents produced from Dr. Wohlberg's files include documents related to "safety and efficacy." Similarly, Defendants have agreed that its search of the custodial files of Lloyd Knapp, Executive Director, Global Clinical Lead, and Lisa Malandro, Associate Director, Worldwide Regulatory Strategy, will include safety and efficacy documents, regardless of whether they were prepared in connection with Dr. Wohlberg's presentation to the FDA.[7] (Stevens Decl. ¶ 9.) Defendants have also made clear to Plaintiffs' counsel that they are willing to perform additional custodial searches provided that an agreement can be reached limiting such searches to a manageable number. (Stevens Decl. ¶ 7 & Exh. D.)

At this time, it is apparent from Plaintiffs' motion for sanctions that Plaintiffs are not interested in the supplemental production contemplated by this Court's October 2009 Order. Instead, Plaintiffs are using this motion as a pretext for ***re-opening*** discovery, a purpose expressly prohibited by this Court's October 2009 Order.

Based upon an April 2008 deposition of Laura Kibbe, who was then the managing director of Pfizer's discovery response team, Plaintiffs argue that the material to be searched in

---

[6] Once again, Plaintiffs distort the history of the document production and negotiations when they say "Defendants have produced nothing, despite representing to the Court they would produce materials from the NDA." (Pl. Mem. [2879] at 8.) As discussed above, Defendants made clear that they were ready to produce NDA documents; Plaintiffs simply did not request them.

[7] The other custodians whose files are being searched for documents related to Dr. Wohlberg's FDA presentation, Mr. Whalen and Mr. Cohen, are statisticians. Defendants agreed to search their files in response to Plaintiffs' continued insistence that such documents are relevant to some alleged discrepancy between Dr. Wohlberg's presentations and Dr. Gibbons' analysis. Defendants agreed to conduct such searches even though Plaintiffs' counsel has never explained what this discrepancy is.

5

response to the Court's October 2009 order has already been collected on a hard drive; that files from over 200 custodians were collected, and that Defendants should run additional searches for safety and efficacy and produce any documents that were not previously produced. (Pl. Mem. at 9.) Plaintiffs argue that documents were produced from only 100 custodial files, and that the *other* custodial files should now be searched for responsive documents. (Altman Decl. ¶ 7.)

Of course, when Ms. Kibbe testified in April 2008, she was not describing Pfizer's efforts to comply with an order that would be issued by this Court over a year later, but the steps taken to respond to the court-ordered scope of discovery at that time. Plaintiffs' motion is no longer about seeking safety and efficacy documents that might have been generated between May 31, 2004, and August 2009; Plaintiffs seek to challenge the scope of Defendants' original document production and compel production of custodial files long after the deadline for making such a motion has passed. (*See* Discovery Order No. 13 [801] (providing that discovery motions should be filed by September 6, 2007).) In connection with the original document production in this matter, Defendants identified the custodial files from which production was being made as part of their Rule 26 disclosure. (*See* Exh. F.) As Plaintiffs concede, Defendants' original production included documents from almost 100 custodial files. Issues regarding which custodial files were searched as part of the original document production were the subject of conferences and agreements among counsel (*see, e.g., id.*) or motion practice before this Court. (*See, e.g.*, Discovery Order No. 9 [632] at 4-5 (granting motion to compel as to certain custodians, denying it as to others).) Likewise, Plaintiffs were aware of Ms. Kibbe's testimony since April 2008. The scope of production sought by the instant motion is completely unrelated to this Court's October 2009 order and instead represents an impermissible, untimely motion to compel with respect to Defendants' original document production.

The position taken by Plaintiffs in the instant motion illustrates the difficulty that Defendants have encountered when attempting to resolve these issues with Plaintiffs' counsel. Nonetheless, Defendants continue to seek a good faith resolution of this dispute. Defendants have agreed to run additional searches, based upon mutually agreed upon search terms, of ten

additional custodial files selected by Plaintiffs. (Stevens Decl. ¶ 7 & Exh. D.)

### C. Labeling Documents

Labeling documents would be largely subsumed within the categories of documents described above. Dr. Wohlberg's presentations to the FDA were directed at the proposed classwide labeling changes. His files have already been produced and Pfizer has agreed to search certain additional custodial files for documents related to his presentations. In addition, labeling changes must be reviewed and approved by the FDA and, therefore, labeling documents would be contained within the NDA files that Defendants have previously agreed to make available to the Plaintiffs for review.

### II. Plaintiffs' Motion For Sanctions Should Be Denied

Plaintiffs seek sanctions in the form of an adverse inference instruction to be given at future trials and cite in support *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*, 685 F. Supp. 2d 456 (S.D.N.Y. 2010). (Pl. Mem. at 13.)[8] *Pension Committee* involved the failure of a party to preserve relevant documents, *see* 685 F. Supp. 2d at 463, an issue not presented here. In any event, Plaintiffs' request for sanctions should be denied. This Court directed the parties to use their best efforts to resolve disputes regarding the proper scope of the supplemental document production required by this Court's October 2009 order. (*See* December 8, 2009 Electronic Order.) As discussed above, Defendants have done so. They have produced over 160,000 pages of documents to Plaintiffs and made available several hundred thousand additional documents for review by Plaintiffs' counsel. They have tendered the relevant regulatory files where responsive documents are likely to be found and conferred with Plaintiffs' counsel on numerous occasions regarding reasonable searches of custodial files. In contrast, Plaintiffs seek to re-open discovery so as to expand the original

---

[8] Plaintiffs also cite cases where courts imposed extreme sanctions, such as dismissal. (*See* Pl. Mem. at 5-6.) The very cases that Plaintiffs cite make clear that such sanctions are reserved for the most egregious conduct. *See, e.g., Big Top USA, Inc. v. Wittern Group*, 183 F.R.D. 331, 338 (D. Mass. 1998) (Saris, J.).

document production to include hundreds of additional custodial files, notwithstanding their failure to timely make a motion to compel following the completion of Defendants' original document production and contrary to this Court's express pronouncement that discovery was not being re-opened.[9] Under such circumstances, sanctions are not warranted. *See, e.g., Brockmeier v. Solano County Sheriff's Dep't*, No. CIV S-05-2090, 2010 WL 148179, at *7-8 (E.D. Cal. Jan. 12, 2010) (denying request for sanctions where counsel failed to meet and confer prior to filing motion to compel); *Aristocrat Techs. v. Int'l Game Tech.*, No. C 06-03717, 2009 WL 3573327, at *4 (N.D. Cal. Oct. 30, 2009) (denying motion for sanctions based upon party's good faith, noting that the discretion to impose sanctions "must be exercised with restraint").

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that Plaintiffs' motion for sanctions and to compel be denied.

---

[9] In an effort to resolve the dispute over which custodial files would be searched, Pfizer proposed cost sharing as a compromise. As courts have recognized, cost-sharing is an effective tool to encourage parties to make reasonable, cost-effective decisions regarding the scope of discovery. Cost-sharing serves to "counterbalanc[e] the tendency to ask for more discovery material than economic efficiency would justify because the cost of producing is not being borne by the party making the request." *Cognex Corp. v. Electro Scientific Indus., Inc.*, No. Civ.A 01CV10287RCL, 2002 WL 32309413, at *3 n.1 (D. Mass. July 2, 2002); *accord In re Fosamax Prods. Liab. Litig.*, No. 1:06-md-1789, 2008 WL 2345877, at *11 (S.D.N.Y. June 5, 2008); *Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127, 145 (E.D. Mich. 2009); *see also Annotated Manual for Complex Litigation – Fourth*, § 11.433, at 102 (2010) (observing that cost-sharing "give[s] the parties an incentive to use cost-effective means of obtaining information and a disincentive to engage in wasteful and costly discovery activity"). Plaintiffs rejected this proposal, refused to agree to any reasonable limitations on the number of custodial files to be searched, or to propose specific custodians whose files would be searched. Plaintiffs have made it clear that they are interested in cost-saving efficiencies only when their own costs are at issue. For example, Plaintiffs recently sought permission to take preservation depositions of their expert witnesses in order to save money, notwithstanding the well-established preference for live testimony. At the same time, Plaintiffs have resisted Defendant's efforts to develop a cost-effective approach to the supplemental discovery ordered by this Court.

Dated: July 16, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000

ROPES & GRAY LLP

By: /s/ Ana M. Francisco
    Ana M. Francisco

One International Place
Boston, MA 02110
Tel: (617) 951-7000
Email: ana.francisco@ropesgray.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 16, 2010.

/s/ Ana. M. Francisco
Ana M. Francisco

9