UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------------------------------x
                                                                                       :      MDL Docket No. 1629

In re:  NEURONTIN MARKETING,     :
           SALES PRACTICES AND               :      Master File No. 04-10981
           PRODUCTS LIABILITY LITIGATION  :
                                                    :      Judge Patti B. Saris
----------------------------------------------------------------x
                                                                 :      Magistrate Judge Leo T. Sorokin
THIS DOCUMENT RELATES TO:           :
                                                                 :      **LEAVE TO FILE**
ALL PRODUCTS LIABILITY CASES      :      **GRANTED ON JULY 21, 2010**
----------------------------------------------------------------x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PRODUCTS LIABILITY
PLAINTIFFS' MOTION FOR AN ORDER AWARDING SANCTIONS AGAINST
DEFENDANTS AND COMPELLING DEFENDANTS TO COMPLY WITH
THIS COURT'S OCTOBER 14, 2009 AND DECEMBER 8, 2009 ORDERS**

Defendants' opposition to Plaintiffs' motion is misdirection at its purest. In effect, it blames Plaintiffs for Defendants' own failure to comply with the October 2009 Order of the Court. Three things are certain. First, Defendants have not operated in good faith throughout this process. Defendants have consistently refused to provide meaningful information to Plaintiffs that is consistent with the Order, despite Plaintiffs' willingness to confer on the scope and burden, if any, of Defendants' compliance with the Order. Second, Defendants do not dispute that they are in possession of readily accessible materials which could be easily searched to identify the ultimate quantity of material responsive to the Order. Third, aside from *Shearer* case-specific documents, and the purported index to the New Drug Application,[1] Defendants

---

[1] Defendants misdirect the Court by referencing a purported willingness to provide documents (or at least an index) from the Neurontin New Drug Application (NDA), the Investigational New Drug Application (NDA). *See* Defs.' Mem. at 5. This is an attempt to tout volume over substance. In other words, Defendants come to the Court touting a high volume of documents so as to avoid the obligations of providing individual, custodial level files from their own employees with responsibilities for Neurontin.

have not produced to Plaintiffs any documents beyond the Wohlberg custodial file documents, and that production is admittedly defective.

Before Defendants produced any documents responsive to the Court's Order, Plaintiffs sought to confer with Defendants to learn of the existence of potentially responsive documents that might be readily accessible and which were encompassed by the Order.  Plaintiffs were aware that there were approximately 100 custodial files which Defendants collected but from which no materials had ever been produced during the entire litigation; it is undisputed that Plaintiffs learned this after the close of discovery.  So at issue are custodial files collected before the discovery cut-off in this litigation, as well as custodial files that go up to the Bextra settlement date, which have not been produced and which are encompassed by the Court's discovery Order of October 2009.  Nevertheless, Defendants refused to provide this information.  Even today, Defendants are still asking Plaintiffs to guess the identities of the responsive custodians instead of providing even a list to assist in this process.  Plaintiffs have merely asked Defendants to:  (a) identify the employees at issue; (b) identify their job description or responsibility to Neurontin; and (c) identify the size of their respective custodial file.  Thereafter, the parties can discuss which employee/custodial files can be produced.  At no time have Plaintiffs asked for the production of anything beyond the Order of the Court.  Plaintiffs have suggested that Defendants run the same "safety and efficacy" searches against the initial production in the remaining 100 custodians.  Defendants' representation that Plaintiffs are seeking any broader range of searches originally performed is false.

Before deciding this motion, the Court should consider that the burden of providing Plaintiffs with a list of custodians already collected was essentially nil.  The burden of searching the materials for those custodians already collected and not produced for the *quantity* of

responsive document was essentially nil.  The burden of actually producing those materials is completely unknown because Defendants refuse to engage in a good faith effort to identify the burden of complying with the Court's Order.  Plaintiffs have done everything in their power to work with the Defendants, yet Defendants have not taken even the simplest of steps to comply.

Defendants tout their willingness to now finally provide files from 10 custodian-employees, out of approximately 100 custodians.  It is unfortunate that a motion to compel sanctions was required for even this offer to be made, and more importantly it is logically impossible at this juncture to agree to such an offer without first having an understanding as to the identity, job descriptions and size of the respective 100 custodial files.  And Defendants ask Plaintiffs to identify these employees, yet Plaintiffs have no knowledge of the list of available employees.

Defendants misstate the sequence of events with respect to compliance with the Court's Order.  During the first meet and confer, Defendants completely ignored Plaintiffs' requests for additional information about the possible responsive materials.  In an attempt to discover custodians with responsive documents, Plaintiffs inquired concerning the identities of the individuals working with Dr. Wohlberg who participated in the development of the briefing materials for the FDA's evaluation on suicidality.  Defendants refused to provide the names.  Plaintiffs asked for the list of custodians whose files had been collected but not produced.  Once again, Defendants refused to provide the names. Plaintiffs sought the names of these individuals so that an educated assessment could be made of which individuals would have materials that should be retrieved to comply with the Order.  This is exactly the type of inquiry that is appropriate under the circumstances.  Ultimately, after even a cursory glance at Defendants' defective Wohlberg production, Plaintiffs were able to identify witnesses Whalen, Cohen and

3

Malandro as witnesses who would have responsive custodial file documents consistent with that portion of the October 2009 Order about Dr. Wohlberg.[2] While Defendants have agreed to produce these files, nine months after Order and five months after Plaintiffs received Dr. Wohlberg's defective files, these files have yet to be produced.

Furthermore, Defendants' implication that these documents should not be produced because Plaintiffs never filed a motion to compel in 2008, before the motion leading to the Court's Order in 2009, ignores the fact that Ms. Laura Kibbe's deposition took place after the close of discovery and Plaintiffs had no way of knowing that the additional 100 files had been collected. At no time did Plaintiffs ever participate in Defendants' arbitrary selection of responsive custodians. Plaintiffs received what Defendants chose to send. In effect, Defendants all but admit that they did not comply with their initial discovery obligations. If materials responsive to Plaintiffs' requests exist in these 100 custodians, then Defendants withheld them inappropriately.

Defendants claim that because Plaintiffs were willing to go to trial without the materials in question, the materials are unimportant. This is fallacious. Because Defendants continue to raise defenses, Plaintiffs are required to rebut these defenses with all available material. If Defendants are in possession of materials responsive to the Court's Order which refute those defenses, Plaintiffs are clearly entitled to them, even if they have proceeded to trial in the past.

In conclusion, Plaintiffs are looking to the Court to enforce its October, 2009 Order. Defendants have failed to meaningfully comply with substantive aspects of the Order without adequate justification and sanctions are warranted.

---

[2] Plaintiffs were quite sure that because he was not a statistician, Dr. Wohlberg was not the individual who had performed the analysis in the briefing materials, and Plaintiffs advised Defendants of this fact. Defendants replied that Dr. Wohlberg's documents would contain everything. When Dr. Wohlberg's files were produced, as expected there were other individuals who were involved in the statistical portion.

Dated: July 21, 2010                                   Respectfully submitted,

*Members of Products Liability*
*Plaintiffs' Steering Committee*

By:   **/s/ Andrew G. Finkelstein**
      Andrew G. Finkelstein, Esquire
      Finkelstein & Partners, LLP
      1279 Route 300, P.O. Box 1111
      Newburgh, NY  12551

By:   **/s/ Jack W. London**
      Jack W. London, Esquire
      Law Offices of Jack W. London
         & Associates
      3701 Bee Cave Road, Suite 200
      Austin, TX  78746

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order No. 3 on July 21, 2010.

                                    **/s/ Andrew G. Finkelstein**
                                    Andrew G. Finkelstein