# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                :

In re:  NEURONTIN MARKETING, SALES     :  MDL Docket No. 1629
       PRACTICES AND PRODUCTS        :
       LIABILITY LITIGATION           :  Master File No. 04-10981

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                :  Judge Patti B. Saris

THIS DOCUMENT RELATES TO:        :
                :  Magistrate Judge Leo T.
PRODUCTS LIABILITY ACTIONS       :  Sorokin
                :

               x  **PROPOSED**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x  **DOCUMENT**

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PRODUCTS LIABILITY
PLAINTIFFS' MOTION FOR AN ORDER AWARDING SANCTIONS AGAINST
PFIZER DEFENDANTS AND COMPELLING DEFENDANTS TO COMPLY WITH
THIS COURT'S OCTOBER 14, 2009 AND DECEMBER 9, 2009 ORDERS**

     Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer" or

"Defendants") submit this Sur-Reply in Opposition to Products Liability Plaintiffs' Motion for

an Order Awarding Sanctions Against Pfizer Defendants and Compelling Defendants to Comply

With this Court's October 14, 2009 and December 9, 2009 Orders.  [2878.]  Defendants request

oral argument.

     As discussed in detail in Defendants' opening response to Plaintiffs' motion, Defendants

have produced and made available for review by Plaintiffs' counsel hundreds of thousands of

pages of documents in response to this Court's October 14, 2009 and December 9, 2009 Orders.

And, as required by this Court's December 9, 2009 Order, the attorneys for Defendants have

attempted to confer in good faith with Plaintiffs' counsel to agree on reasonable parameters to

the scope of supplemental production.  However, this Court need not engage in a futile exercise

of trying to reconcile the parties' competing characterizations of the negotiations that have taken

place.  Plaintiffs' reply brief makes clear the following:

     (1)     Defendants produced to Plaintiffs hundreds of thousands of pages of documents

from the custodial files of Dr. Christopher Wohlberg.[1]

(2)     The parties have agreed on additional custodial files to be searched for documents
related to Dr. Wohlberg's presentations to the FDA on January 31, 2008, June 2,
2008 and July 10, 2008.  Plaintiffs do not deny that they have been given firm
dates for Defendants' production of these additional custodial files.

(3)     Defendants made available for review to Plaintiffs the IND and NDA files that
post-dated Defendants' last production to Plaintiffs and provided Plaintiffs with
an index so that they could identify which files they wanted to review.  Despite
their professed interest in documents related to safety and efficacy, Plaintiffs have
never asked to review such documents.

(4)     Defendants have agreed to produce a reasonable number of additional custodial
files and have further agreed that Plaintiffs can select which custodial files they
are interested in reviewing.

(5)     The grounds for Plaintiffs' current motion to compel greatly exceed the grounds
set forth in their original motion to re-open discovery and that formed the basis
for this Court's October 14, 2009 Order.  Plaintiffs' current motion goes far
beyond the request that discovery be supplemented based upon the passage of
time and seeks to challenge the sufficiency of Defendant's original production,
raising arguments that should have been made, if at all, years ago.

Plaintiffs' reply only confirms what Defendants said in their response:  that, by the
instant motion, Plaintiffs are seeking to impermissibly re-open discovery.  In their September 9,
2009, Emergency Motion to Re-Open Discovery, Plaintiffs relied largely upon the passage of
time to justify their request.  For example, Plaintiffs argued:

Pursuant to Discovery Order No. 7, Pfizer Defendants were to produce documents
and information responsive to Plaintiffs' demands for same up until the date of

---

[1] Plaintiffs continue to refer to such production as "defective," without explaining in what way it
is defective.

2

> the last injury sustained by any of the Plaintiffs, i.e., May 31, 2004.  ECF Doc.
> # 582.  Since the issuance of that discovery order, there have been additional
> complaints filed by Plaintiffs claiming injuries to Plaintiffs' decedents that
> occurred subsequent to the May 31, 2004 cut-off date for disclosure of documents
> and information.

(Prod. Liab. Pls.' Mem. in Support of Emergency Motion to Re-Open Discovery [2090] at 2.)

Plaintiffs also noted the FDA's 2008 findings and requirement of a classwide warning on all

AEDs in 2009.  (*Id.* at 2, 5.)  Plaintiffs also noted that "[t]he disclosure should not affect the

discovery and/or remand of other cases, where, for the most part, Plaintiffs or their decedents

were injured prior to the prior May 31, 2004 cut-off date."  (*Id.* at 7.)  Thus, when it granted in

part, and denied in part, Plaintiffs' motion, the Court stated:  "As a general matter, the Court is

not reopening discovery.  However, the Court recognizes that the scientific understanding of

Neurontin continues to develop . . . ."  (Prods. Liab. Cases Scheduling Order October 2009

[2125] at 3.)

      Plaintiffs' original motion to re-open had absolutely nothing to do with Laura Kibbe's

deposition testimony regarding document collection.  And it had nothing to do with what

custodians were or were not included in Defendants' original document production.

Nonetheless, in support of their current motion, Plaintiffs argue:

> Plaintiffs were aware that there were approximately 100 custodial files which
> Defendants collected but from which no materials had ever been produced during
> the entire litigation; it is undisputed that Plaintiffs learned of this after the close of
> discovery. ***So at issue are custodial files collected before the discovery cut-off in
> this litigation***, as well as the custodial files that go up to the Bextra settlement
> date . . . .

([2903] at 2 (emphasis added).)  Plaintiffs argue that Ms. Kibbe's deposition was not taken until

after the close of discovery.  That, however, does not change the fact that it was taken almost a

year and a half before Plaintiffs made their motion in September 2009 and over a year before

Plaintiffs, on two separate occasions, represented to this Court that generic discovery was

complete.[2]  Issues regarding the scope of Defendants' original document production should have

---

[2] *See* Pls.' Mem. in Support of Motion to Re-Open Discovery.  [2090].

been raised, if at all, long before September 2009. *Cf. Falconer v. Penn Maritime, Inc.*, 232 F.R.D. 34, 36 (D. Me. 2005). Defendants' opposition is not, as characterized by Plaintiffs ([2903] at 4), a concession that their original document production was incomplete. To the contrary, as evidenced by Exhibit F to Defendants' opposition [2896-6], the parties engaged in contemporaneous discussions regarding the custodians included in Defendants' document production. As difficult as it might be now to reconcile the parties' competing characterizations of the "meet and confers" that have taken place over the past months, it is much more difficult to recreate such discussions years after the fact. It is for this reason, among others, that discovery motions should be made timely.[3]

That Plaintiffs' requests are so untethered to their original motion or this Court's Order easily explains why the parties have been unable to reach agreement on the custodial files to be searched. Nonetheless, Defendants have attempted to negotiate in good faith to arrive at a reasonable number of custodial searches, and have offered to allow Plaintiffs to select the custodians whose files would be searched for documents not previously produced. Plaintiffs have enough information to engage in such a selection process. Defendants have produced hundreds of thousands of pages of documents to Plaintiffs. Numerous witnesses have been deposed. Defendants and Plaintiffs' counsel have been on the eve of trial three times.[4] Certainly, Plaintiffs should be able to identify which custodians are likely to have relevant safety and efficacy documents. Plaintiffs' requests for detailed historical information regarding which custodial files were included in Defendants' original document production is nothing more than a

---

[3] Indeed, the parties have not been shy about seeking relief from this Court when discovery disputes could not be resolved by agreement. Over the years, this Court has resolved dozens of discovery motions, including motions directed at whether certain custodial files would be produced or not. (*See,* *e.g.*, Discovery Order No. 9 [632] at 4-5.)

[4] As previously noted by Defendants, the relevance of post-2004 information is extremely limited, since it is not probative of whether the Neurontin label in 2004 and earlier contained adequate warnings and information based upon information available at that time. ([2111] at 7-8.) That the parties have been able to prepare three cases for trial further undermines Plaintiffs' claims that the documents sought are critical to their ability to rebut unspecified defenses asserted by Defendants. ([2903] at 4.)

ruse to re-visit the scope of that original document production in an effort to impose new discovery burdens and expenses on Defendants.

Indeed, Plaintiffs' attempt to dismiss Defendants' document tender of supplemental IND and NDA files (*see* [2903] at 1 n.1) makes clear that they are most interested in a fishing expedition through custodial files and causing Defendants to incur significant discovery costs. Plaintiffs do not deny that IND and NDA documents are responsive to this Court's order; nor do they deny that they have never asked to review them, even though they were furnished with an index to such documents months ago.  Plaintiffs offer no explanation for their disinterest in such documents, notwithstanding that the original basis for the motion and this Court's Order was the continued development of the science regarding Neurontin.  Plaintiffs' dismissive attitude towards obtaining and reviewing files where documents directly relevant to safety and efficacy are likely to be found is fundamentally at odds with the grounds originally advanced in support of Plaintiffs' motion to re-open discovery.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that Plaintiffs' motion for sanctions and to compel be denied.

Dated: July 26, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By:   /s/ Mark S. Cheffo_____
      Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

ROPES & GRAY LLP

By:   /s/ Ana M. Francisco
      Ana M. Francisco
      BBO #564346

One International Place
Boston, MA  02110
Tel:  (617) 951-7000
Email:  ana.francisco@ropesgray.com

*Attorneys for Defendants Pfizer Inc and
Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on July 26, 2010.

/s/ Ana. M. Francisco
Ana M. Francisco