UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
NOTICES OF SUPPLEMENTAL AUTHORITY**

On August 2, 2010 and August 10, 2010, Defendants filed Notices of Supplemental Authority (Docket Nos. 2999, 3020) related to Defendants' Proposed Findings of Fact and Conclusions of Law (Docket No. 2816) and Defendants' Response to Plaintiffs' Proposed Conclusions of Law (Docket No. 2808). Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals ("Plaintiffs" or "Kaiser") now briefly respond.

**A.**     *Judy v. Pfizer*

In *Judy v. Pfizer*, a Missouri trial court denied certification of a class of off-label Neurontin purchasers. While the drug at issue is the same, the procedural, legal, and factual differences are substantial.

Procedurally, the matters could not be more dissimilar. The *Judy* plaintiffs sought certification of a statewide class of *all* off-label purchasers of Neurontin for violations of the Missouri Merchandising Practices Act. *Judy* at 2. The class definition does not distinguish between consumers and third party payors, and does not identify any specific off-label indications. The court declined to certify the class for failure to establish typicality, predominance, or superiority.

The theories of liability and recovery are radically different in *Judy* and the Kaiser case. The *Judy* Plaintiffs alleged the price paid by purchasers of Neurontin for off label indications were based on the drug's on-label effectiveness and, therefore, such purchasers overpaid. .

> Plaintiffs argue that the purchase price paid for Neurontin for off-label uses was predicated on the product having scientifically demonstrable value or benefit that it only had with regard to on-label uses. As such, Plaintiffs contend that any person who purchased Neurontin for off-label uses necessarily overpaid. (*Judy* at 10-11.)

(This argument echoes the theory advanced by the class of Vioxx consumers and upheld by the Missouri Court of Appeals in *Plubell v. Merck & Co.*, No. WD69808, May 12, 2009.) The *Judy* court noted that plaintiffs there had at one point alleged that Neurontin was "ineffective for relief of their conditions," but apparently abandoned this claim and instead argued that they overpaid. *Judy* at 12.

Here, Kaiser alleged -- and proved -- that Neurontin is ineffective to treat particular off-label conditions. The jury specifically made findings of for certain off-label indications Kaiser sought to recover the money it paid for prescriptions written to treat those off-label conditions and the jury awarded damages for such prescriptions.[1]

Although Kaiser has no specific knowledge of the factual record in Judy, it seems unlikely that *Judy* plaintiffs had access to Pfizer's unpublished studies or presented evidence of Neurontin's ineffectiveness given the Court's suggestion that this claim had been abandoned. In any case, Kaiser refers the Court to the extensive factual record of Neurontin's ineffectiveness developed and presented at trial, as well as Kaiser's Proposed Findings of Fact (Docket No. 2805) and Kaiser's Response to Defendants' Proposed Findings of Fact (Docket No. 2814).

**B.**     *Zafara v. Pfizer, Inc.*

*Zafara v. Pfizer, Inc.* is a bizarre case seeking recovery for the allegedly fraudulent marketing and promotion of 12 different prescriptions drugs (including statins, contraceptives, and allergy medicines). No. 09-cv-4026, 2010 WL 2854170 (E.D. Pa. July 20, 2010). The *Zafara* plaintiffs filed their case on the heels of Pfizer settling various *qui tam* actions for approximately $2 billion. The plaintiffs alleged that all 12 drugs were unsafe, ineffective, caused plaintiffs to suffer side effects, and were more expensive than alternative medications. Plaintiffs also alleged Pfizer engaged in kickbacks and improper inducements.

The allegations and legal theories presented by the *Zafara* plaintiffs bear little resemblance to those tried by Kaiser before this court. *Zafara* is relevant only insofar as it

---

[1] In the alternative, Kaiser has requested that it receive the difference in price between Neurontin and other specifically identified cheaper more optimal alternatives.

confirms that a violation of the FDCA may be used to recover under the unlawful prong of the UCL.  The *Zafara* court confirmed that the FDCA does not preempt other causes of action "but simply does not provide a private cause of action."  *Zafara* at *4.  The court further clarified, "to the extent that Plaintiffs are alleging conduct that gives rise to an independent cause of action, they are not barred from bringing their claims unless it frustrates the congressional intent in passing the FDCA."  Here, contrary to Defendants assertion (Docket No. 2999 at fn 1), Plaintiffs properly "borrow" the FDCA to establish a violation of the unlawful prong of the UCL.

The *Zafara* plaintiffs proceeded under the New Jersey Consumer Fraud Act.  The court determined that another New Jersey statute prevented them from bringing certain claims under the NJCFA, and went on to analyze whether the single remaining claim ("Plaintiffs paid more money for Defendants' medications than they would have paid for alternative treatments for their conditions") could proceed.  *Zafara* at *7.  The Court remarked, "Plaintiff must point to evidence that would allow an inference that there was an actual loss, and cannot rely on a loss that is purely hypothetical," and concluded, "Plaintiffs … simply  have not stated any facts that make it plausible that a less expensive alternative would have been prescribed."  *Zafara* at *7.

Here, Kaiser proceeded under the California UCL, not the NJCFA.  The statutes have distinct causation requirements.  Further, unlike the *Zafara* plaintiffs, Kaiser provided evidence and testimony from Dr. Millares about cheaper and more optimal alternative drugs.

C.      *Commonwealth v. Janssen Pharmaceutica, Inc.*

Plaintiffs already addressed excerpts of the hearing transcript in their previous response.  Docket No. 2868.  The written order confirms that, in stark contrast to Kaiser,

plaintiffs advanced a fraud on the market theory (*Janssen* at 12) and failed to submit any expert reports or testimony about damages (*Janssen* at 22-23).

**D.**     *In re Yasmin & Yaz (Drosperinone) Mktg., Sales Practices & Prods. Liab. Litig*

The *Yaz* plaintiffs sought to recover for certain common law claims as well as RICO violations and sought certification of a class of all third party payors in the United States that paid for Yaz. MDL No. 2100 (S.D. Ill., Aug. 5, 2010). The *Yaz* court dismissed third party payor plaintiffs' claims because "the remoteness of the injury and the speculative nature of any potential damages analysis prevent Plaintiffs from meeting the direct causal relationship requirement and proximate cause is therefore lacking." *Yaz* at 20. In addressing proximate cause under RICO, the *Yaz* court determined "the central question is whether there is a sufficiently direct relationship between Plaintiffs' alleged injury (paying too much for too many Yaz prescriptions) and the alleged wrongful conduct." At oral argument, *Yaz* plaintiffs argued that if they had been aware of the alleged misrepresentations they would have altered their formulary to exclude or restrict coverage for Yaz or engaged in reeducation, but offered no facts in support of this contention *Yaz* 20-21. For the *Yaz* court, this was too little too late: "attempting to determine what the Plaintiffs *would* have done and how effective patient education *would* have been is 'hopelessly speculative' and militates against finding that the alleged injury is sufficiently direct." *Yaz* at 21.

Here, Kaiser through trial witnesses established a direct relationship between Pfizer's unlawful actions and Kaiser's payment for Neurontin for certain off-label indications. Kaiser witnesses testified about specific misrepresentations and omissions regarding Neurontin's effectiveness for certain off-label conditions made directly to and relied upon by Kaiser by Pfizer. The court need not speculate as to what plaintiffs would

have done had Pfizer been honest: Kaiser witnesses also offered specific testimony about what would have happened had Pfizer *not* made these misrepresentations and omissions. Kaiser witnesses, including members of the P&T committee who voted on formulary changes, testified that in the absences of Pfizer's misrepresentations and omissions, Kaiser would have made (or would have refrained from making) specific changes to the Kaiser formulary that would have reduced the number of Neurontin prescriptions paid for by Kaiser.  Kaiser witnesses also testified about the success of Kaiser's Neurontin reeducation campaign, presenting concrete evidence that sales decreased once reeducation began.

E.     *Siegel v. Shell Oil*

In *Siegel v. Shell Oil*, Siegel brought a class action against the eight largest oil and gas companies, seeking relief under the Illinois Consumer Fraud and Deceptive Business Practices Act and common law unjust enrichment.  2010 WL 2977315 (7th Cir. July 30, 2010).

Factually, Siegel and Kaiser were in very different positions.  Siegel, an individual consumer, continued to buy gasoline directly from the defendants, after be believed their conduct was unlawful, even though he could (and did) purchase gasoline from other entities.  *Siegel* at *1.  The *Siegel* court determined that he could not establish that he suffered harm by defendants because he continued to purchase their gasoline. Kaiser has not brought a class action and does not seek recovery under the Illinois Statute.

In contrast, Kaiser, a health plan and hospital, purchased Neurontin prescribed by physicians who treated its members.  Kaiser has never contested Neurontin's efficacy in treating the conditions for which it is approved:  epilepsy and PHN.  That Kaiser

continued to pay for Neurontin is thus not preclusive of its ability to recover payments made for Neurontin to treat indications for which it is ineffective.[2]

Dated:  August 18, 2010				Respectfully submitted,


						By:	/s/ Thomas M. Sobol
							Thomas M. Sobol

						Thomas M. Sobol
						HAGENS BERMAN SOBOL
						  SHAPIRO LLP
						55 Cambridge Parkway, Suite 301
						Cambridge, MA 02142

						*Of Counsel*


*Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals*

Linda P. Nussbaum
NUSSBAUM LLP
88 Pine Street, 14th Floor
New York, NY 10005



*Of Counsel*

Thomas M. Greene
GREENE LLP
33 Broad Street, 5th Floor
Boston, MA 02109

---

[2] During the relevant time period, Neurontin was only available in branded form; unlike Siegel, Kaiser could not have purchased gabapentin from another source.

Barry Himmelstein
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Don Barrett
DON BARRETT, P.A.
P.O. Box 987
404 Court Square North
Lexington, MS 39095

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on August 18, 2010.

                                                        */s/ Thomas M. Sobol*
                                                        Thomas M. Sobol