UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 |
| | Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: | |
| | Judge Patti B. Saris |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS) | |
| | Magistrate Judge Leo T. Sorokin |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Pfizer" or "Defendants"), respectfully respond to the Notice of Supplemental Authority [3035] submitted by Plaintiffs on August 17, 2010.

The supplemental authority, *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923, 2010 WL 3155934 (N.D. Cal. Aug. 10, 2010), bears no resemblance to this case, and the court's analysis of California's Unfair Competition Law ("UCL") is irrelevant to the issues under consideration by this Court.

In *Gutierrez*, the defendant bank instituted a bookkeeping practice of processing charges against a client's account from high-to-low. This differed from its prior practice of processing charges from low-to-high, and it resulted in more overdraft transactions, increasing the bank's fees. *See Gutierrez*, 2010 WL 3155934, at *2-3. The bank's representative did not explain to Ms. Gutierrez the expenses she would incur as a result of overdrafts, but instead presented her with a 69-page Consumer Account Agreement and 37-page Consumer Account Fee and Information Schedule, both printed in densely packed, 10-point font. *See id.* at *5. Ms. Gutierrez later was assessed $88 for four overdraft transactions, fees that were disproportionate to the transaction sums and exceeded the aggregate overdraft. Had the bank used either a chronological sequence or low-to-high sequence, she would have been charged only $22. *See id.* at *7-9. The issues of injury and causation were undisputed in *Gutierrez*. In addition, it was impossible for Ms. Gutierrez to ascertain from her statement the order in which

transactions were posted so as to result in the multiple overdraft fees. *See id.* at *10. The court further found that even the 37-page Consumer Account Fee and Information Schedule had not disclosed the bank's posting method and how it would affect assessed fees and that the bank had implied, through its marketing materials, that transactions would be posted chronologically. *See id.* at *47-49.

To the extent Plaintiffs cite *Gutierrez* for the proposition that "[o]therwise accurate statements" can, under certain circumstances, violate the UCL (Pl. Notice [3035] at 2), the proposition has no applicability here. Plaintiffs allege that Pfizer *misrepresented* the efficacy of Neurontin for certain off-label uses. Plaintiffs' allegations of falsity are inextricably linked to causation and injury. As discussed in Defendants' Proposed Conclusions of Law [2808-2] and Defendants' Response to Plaintiffs' Proposed Conclusions of Law [2816], absent sufficient evidence that Neurontin was ineffective for the conditions at issue in all patients, Plaintiffs cannot prove causation and injury. (2808-2 at 3, 11-14; 2816 at 8-11.)

Second, *Gutierrez* involved Ms. Gutierrez's direct transactions with the bank and her direct reliance on information for which the bank was the sole source. Here, in contrast, the Plaintiffs' claims depend on thousands of individual decisions made by individual physicians, as well as the independent decisions of the different Permanente Medical Group ("PMG") P&T Committees. While Ms. Gutierrez described her actions and reliance on the bank's representations to her, no P&T member outside of Southern California testified regarding any of its decisions, and no doctor testified that she prescribed any Neurontin for any purpose based on any Pfizer marketing. (2816 at 4, 11-12.) To the contrary, prescribing physician testimony was elicited only by Pfizer, and in each such instance, the physician confirmed the he or she prescribed Neurontin because he or she believed it would be effective for the patient. (2808-2 at 10, 13; 2816 at 8-9.)

Finally, while *Gutierrez* concerned individual consumers, unsophisticated in bank accounting, who entered into poorly explained contracts of adhesion with the defendant bank, Plaintiffs here are sophisticated medical-business corporate entities. Kaiser Foundation

Hospitals, through its Drug Information Services, undertakes its own monitoring and review of the medical literature. It makes recommendations to the different, independent Permanente Medical Groups, who exercise control over their own respective formularies and drug utilization. Yet even after Plaintiffs saw negative studies the publication of which allegedly was delayed, and even after Plaintiffs filed this lawsuit, they took no action to restrict formulary access to Neurontin and continued to recommend Neurontin for off-label uses on their website to both physicians and persons insured by the various Kaiser Health Plans. (2808-2 at 4-9; 2816 at 8-9, 12-13.)

Plaintiffs also erroneously suggest that *Gutierrez* supports their argument that "uncertainty as to the precise amount of damages to avoid liability" does not preclude restitution. (Pl. Notice [3035] at 2-3.) In *Gutierrez*, determining restitution was a relatively routine, mathematical function determined from the bank's records. *Gutierrez*, 2010 WL 3155934, at *58-59. Any uncertainty in the calculation of restitution resulted solely from the bank's failure to capture date/time information for some transactions. *Id.* at *59 n.28. Here, in sharp contrast, uncertainty results from, *inter alia*, (1) the failure of Plaintiffs' experts to use Kaiser-specific data; (2) the failure of Plaintiffs' experts to measure the impact of either the alleged suppression of scientific evidence or formulary decisions by the PMGs; (3) the failure of Plaintiffs' experts to account for other factors that influence prescribing physicians' decisions; (4) the use by Plaintiffs' experts of results-oriented methodologies and data with wide margins of error; (5) the lack of any medical testimony to support the ICD-9 codes used by Plaintiffs' economist; (6) the complete absence of evidence that physicians would have prescribed drugs other than Neurontin, that any such drugs would have been cheaper than Neurontin, or that such drugs would have been as effective and well tolerated by patients as Neurontin; and (7) the failure of Plaintiffs' experts to calculate restitution separately for each of the different Kaiser subsidiaries. (2808-2 at 10-11, 16-17; *see also* Defs.' Opp'n to Pls.' Mot. to Admit Tables Showing Damages with Interest into Evidence [2882] at 5-7.) In short, while restitution in *Gutierrez* could be calculated to the penny except with respect to some transactions for which the defendant had kept

3

inaccurate records, the uncertainty here is pervasive and does not result from a mere glitch in the defendant's data set; rather, it results from Plaintiffs' calculated tactical decision not to adduce any of the evidence that was in their possession or available to them and that was required to prove the amount of restitution sought.

## CONCLUSION

For all the reasons set forth above, Defendants respectfully submit that *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923, 2010 WL 3155934 (N.D. Cal. Aug. 10, 2010) is inapposite to the issues currently under consideration by the Court.

Dated: August 23, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By: /s/ Mark S. Cheffo
    Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Email: Mark.Cheffo@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By: /s/ Raoul D. Kennedy
    Raoul D. Kennedy

Four Embarcadero Center
San Francisco CA 94111
Tel: (415) 984-6400
Email: Raoul.Kennedy@skadden.com

| CERTIFICATE OF SERVICE | WHEELER TRIGG O'DONNELL LLP |
|---|---|
| I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on August 23, 2010.<br><br>　　　　　/s/ Mark S. Cheffo<br>　　　　　Mark S. Cheffo | By:　/s/ James E. Hooper<br>　　　James E. Hooper<br><br>1801 California Street<br>Suite 3600<br>Denver, CO 80202-2617<br>Tel:  (303) 244-1800<br>Email:  hooper@wtotrial.com<br><br>*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC* |