UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------x

In re: NEURONTIN MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

MDL Docket No. 1629

Master File No. 04-10981

----------------------------------------x

THIS DOCUMENT RELATES TO:

Judge Patti B. Saris

*Feyer v. Pfizer Inc, et al.*
Case No. 1:05-cv-11035-PBS

Magistrate Judge Leo T. Sorokin

----------------------------------------x

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS OF PLAINTIFF SHANAN FEYER AND FOR OTHER APPROPRIATE RELIEF

Defendants Pfizer Inc and Warner-Lambert Company LLC (together, "Pfizer" or "Defendants") respectfully submit this memorandum in support of their Motion to Dismiss Claims of Plaintiff Shanan Feyer and for Other Appropriate Relief. Dismissal is appropriate in this case because Plaintiff, either directly or through her family member agent, has committed fraud on the Court by falsifying a key document with the intent of deceiving both Pfizer and this Court.

### PRELIMINARY STATEMENT

On the eve of her deposition, Pfizer learned that Plaintiff Shanan Feyer (or someone acting at her direction and on her behalf) materially altered and removed a portion of her deceased husband's suicide note and produced this key document to Pfizer with the intent to deceive. This was not merely an unintentional act or a mistake. Specifically, a portion of the decedent's suicide note that was unfavorable to Plaintiff's case was carefully and surreptitiously excised. Pfizer discovered this fraud shortly before Plaintiff's deposition by obtaining a copy of the original from the Coffee County Sheriff's Department. In the portion of the note that was removed, Mr. Feyer attributed his suicide, in part, to the fact that Plaintiff told him that she "wanted to leave" him. (Compare Ex. A, Unaltered Suicide Note, with Ex. B, Altered Suicide

Note.)[1] Also removed was Mr. Feyer's statement to Plaintiff that "because you want me out of your life I am finally going to give you your wish." (*Id.*) Because Plaintiff has falsified a key document in this case – an act that the First Circuit recognizes as a classic example of fraud on the court – dismissal of her case as a sanction for her misconduct is appropriate and necessary. Additional relief should be granted, and additional actions should be taken by the Court, in its sound discretion.

## FACTUAL BACKGROUND

This case involves the death of Plaintiff's husband, Cayce Feyer, by intentional drug overdose. On November 28, 2003, Plaintiff found him unconscious along with empty pill bottles and a suicide note, and his death was pronounced shortly thereafter. (Ex. C, Deposition of Shanan Feyer ("Feyer Dep.") at 200:16-201:22.) Plaintiff alleges that Neurontin contributed to Mr. Feyer's suicide, despite the facts: 1) that no Neurontin was found in the deceased's system after his death; 2) Mr. Feyer did not fill his last two Neurontin prescriptions and therefore he would have run out of Neurontin two months before his suicide; and 3) there is no evidence that he took Neurontin in the months preceding his suicide. (*Id.* at 202:1-203:13; 256:24-258:25.)

During discovery, Pfizer requested from Plaintiff, among other things, the suicide note found at the scene of Mr. Feyer's death. (Ex. D, Pl.'s Resp. to Defs.' Req. for Prod. of Docs., No. 35.) In response to this request, Plaintiff referred to a copy of a handwritten note addressed to her from Mr. Feyer that provided, in part:

> I'm sorry I hurt you. I never meant
> to hurt you. I've died inside everyday
> Your name is on the deed to the house
> in Tullahoma so because I'm dead it becomes
> yours. You are still the beneficiary of my
> settlement so you will get the money ($1160)
> every month until 2008. Use it wisely.
> Take care of yourself. And I wish you
> the very best of luck in life. I hope you
> find happiness someday.

---

[1] All exhibits are attached to the accompanying declaration of Catherine B. Stevens.

(Ex. B, Altered Suicide Note.)[2] Plaintiff also represented that this document constituted her husband's suicide note in her Initial Disclosures submitted pursuant to Federal Rule of Civil Procedure 26(a)(1). (Ex. E, Pl.'s Rule 26 Disclosures & Attachment.) At her deposition, Plaintiff maintained that this was the document that she had received from the Coffee County Sheriff's Department, although she was not sure whether she had been given a copy or the original. (*See* Feyer Dep. at 9:19-10:5; 171:20-25.) Immediately prior to Plaintiff's deposition in this litigation, however, the Coffee County Sheriff's Department provided Pfizer with a copy of the suicide note collected at the scene; the unaltered document stated:

> I'm sorry I hurt you.  I never meant
> to hurt you.  I've died inside everyday
> **since you told me you wanted to leave me.**
> **And because you want me out of your life**
> **I am finally going to give you your wish.**
> Your name is on the deed to the house
> in Tullahoma so because I'm dead it becomes
> yours.  You are still the beneficiary of my
> settlement so you will get the money ($1160)
> every month until 2008.  Use it wisely.
> Take care of yourself.  And I wish you
> the very best of luck in life.  I hope you
> find happiness someday.

(Ex. A, Unaltered Suicide Note (emphasis added).) The bolded language above was excised from the note produced by Plaintiff, and the second and sixth lines were moved together to conceal the fact that the document produced by Plaintiff had been altered. Also, the line "I am finally going to give you your wish" contained the letters "g" and "y" that bled into the next line in the original note. In the altered note, however, these marks had been carefully removed, and – although the copy produced by Plaintiff was of poor quality – it appears that a period was added after the word "everyday". Except for the missing three lines, the documents appear identical.

Plaintiff never corrected her submission of this altered document and, in fact, positively identified the altered document as her husband's suicide note at her deposition. (*See* Feyer Dep.

---

[2] The line breaks in the block quotation reflect the line breaks in the document.

3

at 221:3-8.) Before she realized Pfizer had received a copy of the original note, Plaintiff did not use her deposition as an opportunity to correct her altered submission. In fact, when shown the altered suicide note and asked what she thought her husband had meant by the phrase "I've died inside everyday . . . .," Plaintiff testified that he must have been apologizing for physically abusing her or her son. (*See id.* at 221:9-223:8; 223:23-224:11.) Contrary to Plaintiff's claim, the unaltered note actually stated: "I've died inside everyday **since you told me you wanted to leave me**." (Ex. A, Unaltered Suicide Note (emphasis added).) In addition, Plaintiff repeatedly and adamantly denied that she had told Mr. Feyer that she wanted to leave him.[3] (*See* Feyer Dep. at 162:17-163:1; 209:24-214:20.) After the contradictory language in the unaltered note was later revealed, however, Plaintiff reversed course and conceded that she and Mr. Feyer "had a discussion about [her leaving him] probably two or three months before" his suicide. (*Id.* at 231:16-232:7.)

When confronted with the original suicide note obtained from the sheriff's department, Plaintiff could provide no explanation for the inconsistency between this note and the document she had produced to Pfizer. The following colloquy occurred at her deposition:

> Q: Okay. So this – in a lot of ways this note doesn't make sense?
> A: (No response.)
> Q: Does it?
> A: Him killing hisself [sic] doesn't make sense.
> Q: Okay. Well, how about the rest of the note that's missing?
> A: What do you mean that's missing?
> Q: If you could mark this as Exhibit 7.
> (Whereupon Exhibit No. 7, a Handwritten Note, was marked as an exhibit and attached hereto.)

---

[3] Plaintiff's deposition testimony contains several material inconsistencies and contradictions in addition to her denials about the altered suicide note. For example, early in her deposition, Plaintiff swore that Mr. Feyer had never before threatened to kill himself and that she did not think he was depressed prior to his suicide. (*See* Feyer Dep. at 166:19-167:6.) Later in the deposition, however, she was read a report from the Coffee County Sheriff's Department from November 27, 2003, just the day before Mr. Feyer's suicide, and this document reported that Plaintiff had called 911 claiming that Mr. Feyer had threatened to kill himself over the phone. (*See id.* at 204:14-205:15.) When confronted with this contradiction, Plaintiff then backtracked from her earlier story and conceded that she had indeed thought and reported that Mr. Feyer was going to kill himself prior to the day of his suicide. (*See id.* at 206:7-21.)

> Q: Why did you take those lines out?
> A: I don't know. My mom could have done it. I honestly don't know.

(*Id.* at 224:18-225:10.) When confronted with the falsity of the document she had produced, Plaintiff did not deny that it had been altered, but instead she attempted to shift the blame away from herself. Plaintiff insinuated that her deceased mother may have played a part in falsifying the note, while claiming that she did not really know what had happened. (*See id.* at 225:8-227:12.)

## ARGUMENT

### I. Plaintiff Or Her Agent Perpetrated Fraud On This Court By Falsifying A Key Document

Plaintiff or someone on her behalf willfully altered and produced important and highly relevant evidence with the intent to deceive. In the First Circuit, "'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). More pointedly, the First Circuit considers the act of falsifying documents as "a near-classic example" of fraud on the court. *Id.* The First Circuit also explained that a trial court must sanction this inequitable conduct pursuant to its "inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court."[4] *Id.*

The alternation of key evidence in this case was seemingly done for the purpose of enhancing Plaintiff's case at the expense of the judicial system's ability to adjudicate based on objective evidence. The portion removed from the suicide note is favorable to Pfizer's case

---

[4] Sanctions are also appropriate under Federal Rule of Civil Procedure 37(c)(1) because Plaintiff failed to supplement her document production as required by Rule 26(e)(1), considering that her earlier production was materially incomplete and incorrect. Fed. R. Civ. P. 37(c)(1). "[T]he duty to supplement is a continuing duty and a 'party may not free itself of the burden to fully comply' by placing 'a heretofore unrecognized duty of repeated requests for information on its adversary.'" *AVX Corp. v. Cabot Corp.*, 252 F.R.D. 70, 77 (D. Mass. 2008) (quoting *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995)).

because it supports a potential alternative cause of Mr. Feyer's suicide. The nature of the alteration precludes any suspicion that it was somehow inadvertent.

When asked to explain why she altered the document at her deposition, Plaintiff repeatedly denied knowledge of the alteration. (*See* Feyer Dep. at 224:18-225:10.) She vaguely insinuated that her deceased mother might have somehow played a role, but she claimed that she had no idea what had happened and, therefore, had no real basis for blaming her mother. (*Id.* at 226:8-227:7.) Plaintiff's unsupported speculation, however, fails to mitigate the seriousness of this misconduct. As one court held, a plaintiff's mere suggestion that someone else may have altered the evidence is insufficient where, as here, she "offers nothing beyond sheer speculation to attribute misconduct" to the other person. *See McMunn v. Memorial Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 453-54 (S.D.N.Y. 2002); *see also Cerruti 1881 S.A. v. Cerruti Inc.*, 169 F.R.D. 573, 583 (S.D.N.Y. 1996) (rejecting argument that sanctions for fabricating documents were not appropriate because "evidence of purposeful conduct is sufficiently murky to stay the court's hand"). In *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425 (S.D.N.Y. 2002), the court faced a similar situation where a plaintiff produced documents that had been altered but denied that she personally altered them. The court noted as follows:

> [the offending party] recognizes that the version of the [document] that she submitted with her counterclaims was altered, although she denies altering the document herself. . . . However, given the fact that two parties with no interest in the outcome of this litigation produced unaltered copie[s] of the [document], whereas [the offending party] produced a copy that was altered in a manner that directly supports her claims in this litigation strongly indicates that she is responsible for the alteration.

*Id.* at 444. The *Scholastic* court then went on to impose sanctions for committing fraud on the court. *Id.* at 444-45. A nearly identical situation is presented in this case. The Coffee County Sheriff's Department – a disinterested third-party – produced a copy of a suicide note collected at the scene that was materially different from the document produced by Plaintiff – one that had been altered in a way to favor her case. Not even Plaintiff denies the fact that the document she produced to Pfizer was falsified. Accordingly, without compelling evidence to the contrary, the

6

only plausible conclusion is that Plaintiff altered the document or had someone do it on her behalf.[5]

Moreover, the surrounding circumstances clearly and convincingly establish that the critical language missing from the falsified document was removed with the intent to deceive. In the original one-page suicide note, the removed portion appeared between other writing. (*See* Ex. A, Unaltered Suicide Note.) In the altered document produced by Plaintiff, however, the missing portion was not simply covered up – as might happen, for example, in the case of redaction for privilege. (*See* Ex. B, Altered Suicide Note.) Rather, the text was moved together and the document was altered to conceal that anything had been removed. (*See id.*) In fact, the alteration was so meticulous that traces of the letters "y" and "g" that had bled into the next line of text in the unaltered document were removed from the altered note. These careful efforts indicate a clear attempt to conceal the alteration, which – along with the fact that the deleted portion was detrimental to her case – leads to no other conclusion than that these alterations were made with an intent to deceive the trier of fact in this litigation and obscure a defense available to Pfizer.

## II.    Plaintiff's Fraud On The Court Warrants Dismissal Of Her Claims

The First Circuit has found that dismissal pursuant to the Court's inherent power constitutes the appropriate sanction where a plaintiff commits a fraud on the court by falsifying a document. *Aoude*, 892 F.2d at 1118. In *Aoude,* the First Circuit explained as follows: "All in all, we find it surpassingly difficult to conceive of a more appropriate use of a court's inherent power than to protect the sanctity of the judicial process – to combat those who would dare to practice unmitigated fraud upon the court itself." *Id.* at 1119. In so holding, the First Circuit relied on the United States Supreme Court's declaration that

> [t]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a

---

[5] Pfizer's counsel conferred with Plaintiff's counsel before filing this motion to determine if there was an "honest explanation" for this alteration. None has been provided.

> wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society . . . . The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

*Id.* (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944)). In light of these policy considerations that extend even beyond the parties to this individual case, dismissal of Plaintiff's claims is appropriate under the inherent powers of this Court.

Numerous other courts have found dismissal to be the proper sanction where a plaintiff commits fraud on the court by producing falsified documents. *See, e.g., Pope v. Fed. Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (upholding district court's dismissal of a case where "manufactured evidence and perjured testimony had been introduced in an attempt to enhance the case through fraudulent conduct"); *Shangold v. The Walt Disney Co.*, No. 03 Civ. 9522, 2006 WL 71672, at *5 (S.D.N.Y. Jan. 12, 2006) ("Because [plaintiffs] have tainted evidence at the heart of their dispute with Defendants and then sought to conceal it, they have forfeited their right to litigate this case and no sanction short of dismissal will suffice to deter future misconduct."); *McMunn*, 191 F. Supp. 2d at 461 (finding that dismissal with prejudice and monetary sanctions were appropriate where plaintiff "abused the judicial system from which she sought relief"); *Scholastic*, 221 F. Supp. 2d at 444 (dismissing claims where party altered documents); *Cerruti 1881*, 169 F.R.D. at 583 (dismissing claims of a party who presented falsified documents); *Vargas v. Peltz*, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995) ("Plaintiff's intentional misconduct in presenting false evidence in support of her claims compels dismissal of this case."); *Epps v. Snowden*, 656 F. Supp. 1267, 1280-81 (E.D. Ky. 1986) (dismissing counterclaim and awarding costs against a party who manufactured falsified documents).

Moreover, this sanction is especially appropriate given the multidistrict nature of this litigation. Courts recognize that the sanction of dismissal is particularly appropriate in the MDL context, where the importance of case management is paramount. *See, e.g., In re: Guidant Corp. Inmplantable Defibrillator Prod. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) (finding that MDL courts should be given greater discretion to enter dismissal as a sanction); *In re*

*Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1222 (9th Cir. 2006) (recognizing that, when considering a motion to dismiss based on non-compliance with a discovery order, "multidistrict litigation is different because of the large number of cases that must be coordinated, its greater complexity, and the court's statutory charge to promote the just and efficient conduct of the actions").

## CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiff's claims as a sanction for her fraud on the court by falsification of a key document. Alternatively or additionally, this Court should conduct a hearing to make factual findings concerning the alterations, consider a referral of this motion to the proper authorities, and impose any other sanctions, including costs and fees, it finds appropriate.

Dated: September 16, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:   /s/ Mark S. Cheffo
      Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Mark.Cheffo@skadden.com

ROPES & GRAY LLP

By:   /s/ Ana M. Francisco
      Ana M. Francisco
      BBO # 564346

One International Place
Boston, MA 02110
Tel: (617) 951-7000
Ana.Francisco@ropesgray.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

---

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on September 16, 2010.

/s/ Ana M. Francisco
Ana M. Francisco

---