EXHIBIT B

```
                                                              Page 1

 1          IN THE UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
 2
 3
     In re: NEURONTIN MARKETING,
 4          SALES PRACTICES AND
            PRODUCTS LIABILITY LITIGATION
 5
     Master File No. 04-10981
 6   MDL DOCKET NO. 1629
 7   _____
 8   THIS DOCUMENT RELATES TO:
 9   Morrow v. Pfizer Inc., et al.
10
                       **********
11
           VIDEO DEPOSITION OF PENNY LAWIN, M.D.
12
                  Taken at the offices of
13                  Page, Kruger & Holland,
              10 Canebrake Boulevard, Suite 200,
14                   Flowood, Mississippi,
                on Wednesday, August 18, 2010,
15                 beginning at 3:17 p.m.
16                     **********
17
18
                   APPEARANCES NOTED HEREIN
19
20
21
22         CHRISTY R. SIEVERT, CSR, RPR
23
24
25   Job No. NJ278293
```

```
 1                    APPEARANCES
 2
 3      MS. SHARON SCANLAN
        Finkelstein & Partners, LLP
 4      1279 Route 300
        Newburgh, New York 12551
 5            COUNSEL FOR PLAINTIFF
 6
        MR. CHAD W. HIGGINS
 7      Goodwin Procter, LLP
        Exchange Place
 8      Boston, Massachusetts  02109
              COUNSEL FOR DEFENDANT
 9            TEVA PHARMACEUTICALS USA, INC.
10
        MS. KATHERINE F. ARTHUR
11      Skadden, Arps, Slate,
          Meagher & Flom, LLP
12      Four Times Square
        New York, New York  10036
13            COUNSEL FOR DEFENDANT
              PFIZER, INC.
14
15      MR. STEPHEN P. KRUGER
        Page, Kruger & Holland
16      10 Canebrake, Suite 200
        Flowood, Mississippi  39232
17            COUNSEL FOR PENNY LAWIN, M.D.
18
19
20
21
22
23
24
25
```

1  via e-mail and, I believe, one telephone -- one
2  telephone call.  Are you -- are you aware of that?
3       A.    Yes, ma'am.
4       Q.    I'm going to show you what's been
5  marked -- it has not been marked.
6             Did you receive -- did you review
7  today, before coming here, a two-page document
8  that I had faxed to your attorney entitled,
9  "Declaration"?
10      A.    Yes, ma'am.
11            MS. SCANLAN:  Okay.  Let's just mark
12 that for purposes -- so that we have a full
13 record.
14            MR. KRUGER:  Do you have an extra
15 copy of that?
16            MS. SCANLAN:  I do.  So we can mark --
17 I have a copy that we can mark.
18    (EXHIBIT NO. 12 WAS MARKED FOR THE RECORD.)
19 MS. SCANLAN, CONTINUED:
20      Q.    Doctor, I'm going to show you what's
21 been marked as Plaintiff's Exhibit 12.  Is that
22 the declaration that you reviewed?
23      A.    It looks the same, yes, ma'am.
24      Q.    Okay.  And at that time, I had sent
25 it yesterday to your attorneys so that you would

1   have the opportunity to see the items that I would
2   be addressing at today's deposition.  Did you
3   understand that?
4       A.    Yes, ma'am.
5       Q.    Okay.  And at no time did I ask you
6   to sign that deposition or did I ask your attorney
7   to have you sign that document, correct?  No one
8   asked you to sign it, correct?
9       A.    No, ma'am.
10      Q.    Doctor, do you have an understanding
11  from any source of what the Neurontin litigation
12  issues are, generally?
13            MS. ARTHUR:  Object to the form.
14            THE WITNESS:  No, ma'am.
15  MS. SCANLAN, CONTINUED:
16      Q.    Are you aware that the labeling on
17  the Neurontin drug was changed after the year 2005
18  to warn about the potentials for suicide for
19  patients on this drug?
20            MS. ARTHUR:  Objection.
21            THE WITNESS:  No.
22  MS. SCANLAN, CONTINUED:
23      Q.    Well, you know why you're here today,
24  correct?
25      A.    Yes, ma'am.