# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------x
In re: NEURONTIN MARKETING, SALES : 
        PRACTICES AND PRODUCTS : MDL Docket No. 1629
        LIABILITY LITIGATION :
------------------------------------------x Master File No. 04-10981
THIS DOCUMENT RELATES TO: :
: Judge Patti B. Saris
*Barlow v. Pfizer Inc, et al.* :
Case No. 1:05-cv-11501-PBS : Magistrate Judge Leo T.
: Sorokin
:
: **PROPOSED**
: **DOCUMENT**
------------------------------------------x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS'
EMERGENCY MOTION FOR AN ORDER PROHIBITING IMPROPER TACTICS
DURING FACT WITNESS DEPOSITIONS AND IMPOSING SANCTIONS**

The responses by Plaintiff Barlow [3103] and Products Liability Plaintiffs [3105] are the strongest evidence of the need for the relief Pfizer seeks. Plaintiffs offer no assurances that they will discontinue the tactics they have engaged in, and instead attempt to divert this Court's attention from the improper conduct at issue. It remains evident that Plaintiff's counsel has failed to heed this Court's prior warnings with regard to tainting neutral third-party witness testimony by improper tactics. (*See* Order [2175].) Judicial intervention is necessary to prevent Plaintiff's counsel from improperly influencing prescribing physicians' testimony both in this case and other pending cases involving the same counsel. Discovery is ongoing and not all prescribing physicians and other non-party witnesses have been deposed. The Products Liability Plaintiffs' attempt to circle the wagons to defend Mr. London's conduct is particularly odd because they have not found it necessary to engage in the use of edited video clips to zealously represent their clients in the scores of depositions that have transpired to date. And, their effort to defend the use of a highly suggestive and totally inappropriate affidavit, sent to a doctor before her deposition in an effort to influence her testimony, with a fill-in-the-blanks format,

shows that an order is indeed required going forward. Accordingly, this Court should preclude all Plaintiffs' counsel from engaging in improper tactics during, and in advance of, the depositions of prescribing physicians and other fact witnesses. This Court should also impose sanctions for the Barlow Plaintiff's counsel's willful misconduct pursuant to its inherent power and Federal Rule of Civil Procedure 30(d)(2).

## ARGUMENT

### I. Plaintiff's Counsel Improperly Attempted to Influence Dr. Flowers at His Deposition

As explained in Pfizer's opening memorandum, during the deposition of Irene Barlow's prescribing physician, Dr. Larry Flowers, Plaintiff's counsel attempted to improperly influence the doctor's testimony by prejudicing him against Pfizer with cherry-picked materials unrelated to the scope of his testimony as a non-party fact witness. In an attempt to justify his behavior, Plaintiff's counsel argues, first, that because certain questions posed by him to Dr. Flowers might have been relevant, the entire conduct of the examination is somehow excused. As a back-up, Plaintiff's counsel seeks to characterize Dr. Flowers as an expert witness who could be permissibly asked a series of "hypothetical" questions (that were, in fact, improper jury arguments masquerading as questions) unrelated to the doctor's care and treatment of Mrs. Barlow. Plaintiff's *ad hoc* justification for engaging in such improper conduct during Dr. Flowers' deposition is not persuasive, because Plaintiff's counsel went beyond merely asking questions about Dr. Flowers' prescribing decisions. Rather, the cumulative effect of Plaintiff's counsel's conduct prejudiced an important fact witness in an attempt to distort his testimony.

Whether Dr. Flowers would have changed his prescribing decision or treatment of Mrs. Barlow had the warnings section of the FDA-approved Neurontin label in 1999 or 2000 contained a statement regarding suicidal behavior or ideation is, of course, an appropriate area of inquiry. It should also be a simple and straightforward area of inquiry. Plaintiff's counsel needed to ask only: "Dr. Flowers, had the Neurontin label in 1999 or 2000 contained a warning that Neurontin might increase the risk of suicidal behavior or ideation in certain patients (or other

2

proposed warning language Plaintiff contends should have been given), would you have prescribed Neurontin to Mrs. Barlow? Why or why not? Would your treatment of Mrs. Barlow have changed? In what way?"

Not only would the above have been a relevant and appropriate line of questioning – and one that required no elaborate foundation – Defendants, as well as this Court and the jury, are entitled to hear Dr. Flowers' unvarnished answers to these questions, without being tainted by counsel's efforts to improperly influence the answer by exposing Dr. Flowers to cherry-picked internal company documents or witness testimony far beyond his personal knowledge. Yet that is precisely the tactic engaged in by Plaintiff's counsel, a tactic he seeks to excuse by characterizing it as "laying the foundation."

For example, Plaintiff's counsel played misleadingly edited clips from Dr. Glanzman's video deposition designed to persuade Dr. Flowers that Dr. Glanzman approved the publication of messages unsupported by clinical data. Plaintiff's response only continues counsel's mischaracterization of Dr. Glanzman's testimony and, more importantly, is beside the point. Whether Plaintiff's or Defendants' characterization of Dr. Glanzman's testimony is correct is ultimately an issue for the jury, should the trial court decide that it is relevant at all. But it is a decision that the jury – not Dr. Flowers – will reach based upon the entirety of Dr. Glanzman's testimony considered in light of all the evidence presented at trial. It has nothing to do with Dr. Flowers' care and treatment of Mrs. Barlow and the presentation to a treating physician of out-of-context video testimony that paints a skewed and incomplete picture is fundamentally unfair. As this Court has previously explained, it is "materially misleading" to present evidence that has been edited – in a way that is favorable to one party's case – to a fact witness. (Order [2175], at 2.) Thus, Plaintiff's counsel's biased presentation of Dr. Glanzman's deposition testimony runs afoul of the spirit of this Court's Order.

Plaintiff's counsel also showed Dr. Flowers internal company documents and a copy of the criminal information filed against Warner Lambert Company LLC. These documents likewise have no bearing on Dr. Flowers' care and treatment of Mrs. Barlow and were presented

solely to alter the doctor's testimony and to portray Pfizer in a bad light. The criminal plea, for example, has nothing to do with whether Neurontin should have contained a suicidal behavior or ideation warning or whether it was effective for certain indications. As this Court has stated, "there [is] no basis for producing the conviction [to a prescribing physician] other than to poison the well." (Order [2175] at 2.) And whether Neurontin was marketed off-label to *other* physicians is irrelevant to whether sales representatives discussed off-label uses of Neurontin with Dr. Flowers.[1] Indeed, Dr. Flowers testified that he does not consider internal company documents, or the testimony of pharmaceutical company employees, when making prescribing decisions. (Flowers Dep. [3097-1], at 170:21-171:18.)

There is no realistic way for Defendants to counter such unfair deposition tactics. Defendants should not be required to use their limited time with a treating or prescribing physician playing counter-designations of deposition testimony or by showing the physician other documents or testimony that explain or place in context the documents selected by Plaintiff's counsel. In other words, depositions should not devolve into mini-trials on the underlying merits of the litigation, straying far afield from the relevant evidence to be gained from a particular fact witness, under the guise of "laying a foundation" or rebutting any such foundation.

Plaintiff also attempts to justify her counsel's use of misleading testimony, irrelevant documents, and improper questioning by arguing that Dr. Flowers is an expert witness. But Dr. Flowers has not been designated as an expert witness in this case. While a treating physician, in certain circumstances, may be permitted to offer opinions as a nonretained expert,

---

[1] Plaintiff distorts the argument of Pfizer's counsel when she suggests that Pfizer has argued that plaintiffs are required to lay the foundation for introduction of the criminal plea through the testimony of treating physicians. (Barlow Pl. Opp. [3103] at 17-18.) Defendants have objected to (and continue to object to) the introduction of the criminal plea in this litigation. In support of their relevancy objection, Defendants have argued, *inter alia*, that treating physicians in the cases at issue had denied that they were detailed on off-label uses. Plaintiff's counsel was able to ask Dr. Flowers about his communications with Pfizer sales representatives without showing Dr. Flowers the criminal plea.

such opinions must be based upon observations formed during the physician's care and treatment of the patient, not hypotheticals posed by Plaintiff's counsel. As one court has explained:

> The common rule distilled from the above decisions is that so long as the expert care-provider's testimony about causation and prognosis is based on personal knowledge and on observations obtained during the course of care and treatment, and he or she was not specially retained in connection with the litigation or for trial, a Rule 26 expert report is not necessary.

*Garcia v. City of Springfield Police Dep't*, 230 F.R.D. 247, 249 (D. Mass. 2005); *see also Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999) ("A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party.").[2] The only case Plaintiff cites on this issue, *Wreath v. United States*, 161 F.R.D. 448 (D. Kansas 1995), is in accord with *Garcia*. As explained by the *Wreath* court, a physician is not considered to be "specially retained," so long as "the treating physician testifies only as to the care and treatment of his/her patient." *Id.* at 450. On the other hand, where any opinions offered by a physician are based upon information that extends beyond his or her observations during treatment and are based upon information supplied by an attorney, the physician must be designated as an expert and supply an expert report. *See Garcia*, 230 F.R.D. at 249; *accord Wreath*, 161 F.R.D. at 450 (holding that an expert report is required "when the physician's proposed opinion testimony extends beyond the facts made known to him *during the course of the care and treatment of the patient*") (emphasis added).[3] Thus, there was no basis for Plaintiff's counsel to elicit opinions from Dr. Flowers based upon hypotheticals.

Indeed, Plaintiff undermines her own argument. As Plaintiff herself explained, in order to opine whether he would have changed his treatment choices, Dr. Flowers did not "have[] to

---

[2] Under such circumstances, a party is relieved only of the obligation to provide an expert report from the witness; the witness must still be designated as an expert under Rule 26. *See Garcia*, 230 F.R.D. at 248-49.

[3] The "hypotheticals" asked by Plaintiff's counsel stand in stark contrast to the example of questioning by defense counsel included in the response filed by Plaintiffs' Liaison Counsel. (Liaison Pl. Opp. [3105] at 5-6.) In the example given, the physician was being asked to respond to questions based upon his personal, clinical experience and not hypothetical information supplied by the questioning attorney.

5

study and parse out conflicting scientific or technical data to separate the wheat from the chaff; *it was only a treatment question*." (Barlow Pl. Opp. [3103], at 10 (emphasis added).) Even more egregious than the purported "hypotheticals" posed by Plaintiff's counsel to Dr. Flowers were the series of "do you think it's right" questions. (Def. Mem. [3096] at 6-7.) It is unlikely that such questions would be relevant even if posed to a designated expert who had provided a report.[4] They were certainly improper when directed at a prescribing physician. Such questions were not aimed at discovering relevant information and had no purpose other than advocating Plaintiff's position and improperly influencing Dr. Flowers.

In short, Plaintiff's counsel engaged in a number of improper tactics designed specifically to bias Dr. Flowers against Pfizer. Plaintiff may not avoid sanctions by arguing that her counsel was merely laying a foundation in order to question Dr. Flowers about whether he might have chosen other treatment for Mrs. Barlow. In this instance, Plaintiff's counsel did much more. Rather than asking appropriate and relevant questions, Plaintiff's counsel misled and biased Dr. Flowers and mischaracterized the evidence presented to him. As a result, Pfizer was prevented from obtaining the unbiased, untainted testimony of a prescribing doctor, a key fact witness in this case.

## II. The Letters Plaintiff's Counsel Sent to Dr. Flowers Constitute Improper *Ex Parte* Communications

Shortly after initiating this lawsuit, Plaintiff's counsel sent Dr. Flowers two inappropriate letters, one of which contained argumentative assertions about the Neurontin guilty plea, conclusory allegations as to Pfizer's marketing activities, copies of the plea agreement, and other prejudicial statements calculated solely to bias this fact witness against Pfizer. (*See* Aug. 31, 2004 letter [3097-2]; July 18, 2005 letter [3097-3].) Most notably, the August 31, 2004 letter makes the following inflammatory – and baseless – assertion: "It is clear that the scheme the

---

[4] *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004) ("The principal issues here are whether the defendants breached their legal duties to the plaintiffs in the manufacturing, labeling and marketing of Rezulin. . . . [E]xpert opinion as to the ethical character of their actions simply is not relevant to these lawsuits.").

drug manufacturers created made the prescribing physicians victims as much as their patients." (Aug. 21, 2004 letter [3097-2].)

Pfizer recognizes that Plaintiff's counsel may engage in legitimate *ex parte* contacts with treating physicians to discuss their care and treatment of Mrs. Barlow. But along with this right comes the potential for exploitation and abuse, and the corresponding need for judicially imposed limits to protect the fundamental fairness and integrity of the process. A plaintiff's broad access to treating doctors is not a license to deluge those doctors with biased and misleading information, safe in the knowledge that defendants have no comparable access or ability to provide their side of the story. Such communications, if unchecked, would pollute the fairness of these proceedings.

Therefore, Pfizer does not argue that Plaintiff is barred from contacting or interviewing Mrs. Barlow's treating doctors. Rather, what this motion seeks to preclude is improper and misleading contacts that have no plausible connection with non-party doctors' treatment of Mrs. Barlow and are instead transparently designed to taint doctors' perceptions of Pfizer. Plaintiff's counsel's letters to Dr. Flowers fall squarely within this category.

In her response, Plaintiff does not deny that her counsel sent these two letters to Dr. Flowers. (Barlow Pl. Opp. [3103], at 2.) Rather, unable to justify these actions, Plaintiff instead attempts to divert the Court's attention by discussing Pfizer's communications with Dr. Flowers prior to this litigation. (Barlow Pl. Opp. [3103], at 15-16.) While Plaintiff seeks to characterize such contacts as "*ex parte*" communications, Plaintiff does not allege that Pfizer has communicated with Dr. Flowers about the substance of this litigation after Mrs. Barlow filed suit.[5] Plaintiff's argument is plainly designed to deflect attention from her counsel's misconduct.

---

[5] Plaintiff attaches as Exhibit C to her response (which is also Exhibit H to Liaison Counsel's response), a Q&A intended to provide the sales force with background information on the litigation and government settlement, *in the event that they were questioned by physicians*. Not only was the information only to be used *in response* to questions from physicians, the tone is moderate and factual, in contrast to the inflammatory, unsolicited communications from Plaintiff's counsel. The document also makes clear that any response to physicians must be consistent with the FDA-approved label. In any event, Plaintiff has offered no evidence that communications between sales representatives and Dr. Flowers regarding information on the litigation and government settlement took place.

Indeed, Plaintiff fails to even address the improper statements made in the August 31, 2004 letter.

Plaintiff's counsel's letters had no conceivable purpose other than to influence Dr. Flowers' deposition testimony by seeking to create a negative impression of Pfizer in his mind through a biased, incomplete, and misleading presentation of information about Pfizer and Neurontin. Plaintiff's *ad hoc* justification for sending these letters does not hold water. A simple notification that Mrs. Barlow has filed suit against Pfizer does not require the attachment of a plea agreement or an inflammatory statement that "[i]t is clear that the scheme the drug manufacturers created made the prescribing physicians victims as much as their patients." (*See* Aug. 31, 2004 letter [3097-2].). That Dr. Flowers may not remember the contents of these letters does not excuse or justify such improper *ex parte* communication. The transparent purpose of Plaintiff's counsel's pre-deposition letter was to "influence[]" the treating physician's testimony by impugning and maligning Pfizer, and to thereby "gain a tactical advantage." *Parker v. Upsher-Smith Labs, Inc.*, 3:06-cv-0518, 2009 WL 418596, at *8 (D. Nev. Feb. 18, 2009). This Court has previously proscribed such attempts to taint the testimony of fact witnesses designed to "poison the well." (Order [2175], at 2.) Although the letters pre-dated this Court's November 2009 Order, they were nonetheless improper. Plaintiff's counsel made matters worse when he followed such improper *ex parte* communications with the irrelevant and abusive questions asked during Dr. Flowers' deposition. And it is based upon the entirety of such conduct, not just the letters, that Pfizer seeks sanctions.

### III. The Affidavit Plaintiffs' Liaison Counsel Sent to Dr. Lawin in *Morrow* Constitutes an Improper *Ex Parte* Communication

The unsolicited draft affidavit sent by Plaintiffs' Liaison Counsel to a prescriber in the *Morrow* case was clearly designed to influence a necessary fact witness in this litigation. As noted above, Defendants are not contesting Plaintiffs' counsel's right to communicate with prescribing physicians about their care and treatment of their patients. However, the affidavit sent to Dr. Lawin was clearly not a legitimate *ex parte* effort to contact a treating physician in

8

order to discuss her care and treatment of Ms. Morrow. This is not, as Plaintiffs' Liaison counsel suggests, an affidavit drafted to summarize a witness's testimony after a fact-gathering conversation or "due diligence" in building Plaintiff's defenses. Here, there was no pre-affidavit conversation and, therefore, Liaison counsel's provision of a draft affidavit can only be intended to suggest the testimony that counsel hopes to receive from the physician. The doctor's name was not filled in; the name of the case was left blank and it was not tailored to the specific circumstances of the physician's treatment of the patient in question. In short, it was a fill-in-the-blank, form affidavit that was not only sloppy, but wholly improper.

As such, the proposed affidavit went far beyond the realm of permissible fact-gathering by a party in anticipation of a deposition and entered the realm of patent advocacy. Sending this information to a neutral treating physician prior to speaking to the doctor can only serve and is plainly calculated to improperly color a neutral third party witness's testimony. It is undoubtedly intimidating and confusing for a non-party treating physician to receive an unsolicited affidavit seeking the doctor to attest that they would have done something different in their care of the patient if they had known certain facts. Further, the draft affidavit is clearly dated within 2010, long after Judge Saris's 2009 Order on contact with witnesses.

## CONCLUSION

Plaintiff's counsel's "poison the well" strategy has, and will continue to, unfairly prejudice Pfizer's ability to mount a full and fair defense. Once the well has been poisoned it cannot be unpoisoned, but the Court should still take remedial steps to deter and prevent similar conduct in the future. This Court "has the inherent power to manage its proceedings and to control the conduct of litigants who appear before it through orders or the issuance of monetary sanctions for bad-faith, vexatious, wanton or oppressive behavior." *Strahan v. Simon Prop. Group, Inc.*, No. 08-cv-10764, 2008 WL 5273684, at *1 (D. Mass. Dec. 11, 2008) (citing *United States v. Kouri-Perez*, 187 F.3d 1, 6-8 (1st Cir. 1999)). Moreover, Federal Rule of Civil Procedure 30(d)(2) provides that a court may impose sanctions on a party who "frustrates the fair examination of [a] deponent." Thus, pursuant to this authority, Pfizer respectfully requests that

this Court preclude Plaintiff's counsel from engaging in such unfair tactics in the future, impose sanctions, and fashion any other relief deemed appropriate.

Dated: October 25, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Mark S. Cheffo
Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Mark.Cheffo@skadden.com

-and-

ROPES & GRAY LLP

By: /s/ Ana M. Francisco
Ana M. Francisco
BBO # 564346

Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Ana.Francisco@ropesgray.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on October 25, 2010.

/s/ Ana. M. Francisco
Ana M. Francisco

10