# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Mast File No. 04-10981<br>Judge Patti B. Saris<br>Magistrate Judge Leo T. Sorokin |
| THIS DOCUMENT RELATES TO:<br>*Barlow v. Pfizer Inc, et al.*<br>*Case No. 1:05-cv-11501-PBS* | |

## PLAINTIFF'S SUR-REPLY MEMORANDUM IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION FOR AN ORDER PROHIBITING IMPROPER TACTICS DURING FACT WITNESS DEPOSITIONS AND IMPOSING SANCTIONS [DOCUMENT 3095]

TO THE HONORABLE COURT:

Plaintiff Irene Barlow respectfully replies to the Motion and Additional Reply in Support of the Emergency Motion for an Order Prohibiting Improper Tactics and Sanctions (Documents 3095 and 3108, Exhibit A) as follows:

Defendants' Motion and Additional Reply do not cite a rule, an order, or a standard that prohibits asking the treating doctors in a deposition whether knowledge of certain facts that they did not know would affect or change their treatment choices. A court that is asked to impose sanctions must at a minimum find that the party who is the target of such a motion has violated some explicit rule, order, or standard. *See, e.g. Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323 (2d Cir: New York, 1999)*. Sanctions are appropriate only if there is clear evidence that the conduct at issue is entirely 'without color' and that it was motivated by an improper purpose. Conduct is 'entirely without color' when it lacks any legal or factual basis, viewed from the point of the attorney whose conduct is in question. *Schlaifer*, supra, at 337.

1

That is indeed the rub – the defense does not contest that the facts made known to Dr. Flowers are absolutely true. The defense does not contest that the questions are proper and, indeed, essential under Texas law and, hence, have a legal as well as a factual basis. There is no merit to defendants' plea for sanctions.

Defendants certainly do not cite a rule, order, or standard that plaintiff's counsel violated in deposing Dr. Flowers. Judge Saris's Order [2175] does not address deposition questions. Rule 30 (c) expressly provides that depositions are to be taken pursuant to the Federal Rules of Evidence except for Rule 103, the rule that provides that the court will rule on objections. It states that the deposition will proceed with the testimony being taken subject to the objections. Neither Judge Saris's order nor Rule 30 provide that the questions may not be asked. The trial court can rule on the defendant's objections before trial, as the Rule contemplates.

As for obstructing the deposition, every question, answer and exhibit is on the record, yet the defendant has not cited one question it was prevented from asking Dr. Flowers or one answer that Dr. Flowers gave to any question that suggests that his testimony was tainted. Defendants neither cited to the court nor followed the procedures outlined in Rule 30 (d) to obtain protective relief from deposition questions.

It is not sanctionable for Mr. London to be the only attorney in the MDL who has asked prescribing doctors about Dr. Glanzman, if such be true. It is likely that Mr. London is the only attorney in the MDL who has taken the deposition of a prescribing doctor in a bipolar psychiatric case who also knew that Dr. Glanzman had testified that he had approved messages for Neurontin in such cases without ever having read the underlying clinical reports. Mr. London assisted in *Bulger v Pfizer* and *Shearer v Pfizer* in making the line and page cuts of Dr. Glanzman's testimony that Judge Young ruled admissible. Mr. London was part of the trial

team in *Shearer v Pfizer* who was in court when Dr. Glanzman's testimony was played to the jury. There was nothing about Dr. Glanzman's testimony that was out of context, skewed, or fundamentally unfair – it was the same testimony that Judge Young approved to present to the jury and was being played to the jury when that case concluded. It was no more cherry-picked than Pfizer's deposition questions to Dr. Flowers that implied that the label was adequate because the word 'suicide' was buried several pages deep in the adverse events section of the Physician's Desk Reference, after such other adverse events as diarrhea and dizziness.

As for Defendants' complaint that the plaintiffs' products liability steering committee circled the wagons by filing an opposition to defendants' motion, Plaintiff would point out two things. First, the defense motion was addressed to Mrs. Barlow and her counsel. There was no reference to '*all products liability cases*' in the caption. Second, the defense nevertheless asked for relief against all attorneys and plaintiffs in the MDL as part of its prayer for sanctions against Mrs. Barlow. In light of defendants' subterfuge in not giving direct notice that it wanted relief from all plaintiffs and attorneys, the steering committee did not have the option to let the motion go unanswered on behalf of the rest of the plaintiffs and their attorneys.

Defendants' motion asks the court not only for sanctions but to implement a hitherto-unknown procedure that will require the court to spend a huge amount of time ruling on deposition questions before they are asked. The questions that plaintiff's counsel asked Dr. Flowers are exactly the questions that defense counsel Cheffo told Judge Saris should have been asked of prescribing doctors in the pre-trial of *Bulger v Pfizer*. [Document 3104, Exhibit I].

There is nothing in any record that the letters sent to Dr. Flowers six years before Dr. Flowers' deposition, five years before Judge Saris's order, and one year before Mrs. Barlow's case was removed to the MDL affected his testimony. The record is that he didn't even read or

remember them. They pale in comparison to Pfizer's misconduct illegally promoting Neurontin to Dr. Flowers and in sending its sales representatives all over the country with misleading answers about Pfizer's criminal and Medicaid Neurontin settlements.

While the defendant claims its 'DO NOT LEAVE BEHIND' message to doctors was factual, the fact is it targets Finkelstein & Partners for bringing the litigation. That message had nothing to do with helping doctors understand the federal (criminal) settlement or the civil (Medical) settlement. Defendant does not have clean hands on this issue.

Finally, the reply memorandum talks about *Morrow v Pfizer* complaints. Mrs. Barlow and her counsel know nothing about *Morrow v Pfizer*.

The Motions should be denied.　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　LAW OFFICES OF JACK W LONDON
　　　　　　　　　　　　　　　　　　　　　　3701 Bee Cave Rd., Suite 200
　　　　　　　　　　　　　　　　　　　　　　Austin, TX 78746
　　　　　　　　　　　　　　　　　　　　　　512-478-5858 (telephone)
　　　　　　　　　　　　　　　　　　　　　　512-479-5934 (facsimile)

　　　　　　　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　　　Jack W. London, Esq.
　　　　　　　　　　　　　　　　　　　　　　State Bar No. 12512500

　　　　　　　　　　　　　　　　　　　　　　WRIGHT & GREENHILL, P.C.
　　　　　　　　　　　　　　　　　　　　　　221 West 6th Street, Suite 1800
　　　　　　　　　　　　　　　　　　　　　　Austin, TX 78701
　　　　　　　　　　　　　　　　　　　　　　512-476-4600 (telephone)
　　　　　　　　　　　　　　　　　　　　　　512-476-5382 (facsimile)
　　　　　　　　　　　　　　　　　　　　　　Archie Carl Pierce
　　　　　　　　　　　　　　　　　　　　　　State Bar No. 15991500

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served as required by Case Management Order Number 3 on October 27, 2010.

Dated: October 27, 2010

LAW OFFICES OF JACK W LONDON
3701 Bee Cave Rd., Suite 20
Austin, TX 78746
512-478-5858 (telephone)
512-479-5934 (facsimile)

By: _____
Jack W. London, Esq.
State Bar No. 12512500