UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------ x
In re:  NEURONTIN MARKETING,                : MDL Docket No. 1629
SALES PRACTICES AND PRODUCTS  :
LIABILITY LITIGATION                              : Master File No. 04-10981
------------------------------------------------------------ x
                                                                       : Judge Patti B. Saris
THIS DOCUMENT RELATES TO:              :
                                                                       : Magistrate Judge Leo T.
                                                                       : Sorokin
IRENE BARLOW                                        :
                                                                       :
------------------------------------------------------------ x

### PLAINTIFF BARLOW'S REPLY TO DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S DENIAL OF MOTION FOR AN ORDER PROHIBITING IMPROPER TACTICS DURING FACT WITNESS DEPOSITIONS AND IMPOSING SANCTIONS

Plaintiff Barlow would show that Judge Sorokin's Order of October 29, 2010 denying Pfizer's Motion for an Order Prohibiting Improper Deposition Tactics and Imposing Sanctions was correct and, therefore, Defendant Pfizer's objection should be denied.

I.

### DEFENDANT PFIZER'S CLAIMS

Defendant Pfizer claims "Plaintiff's counsel is attempting to unfairly influence the deposition testimony of fact witnesses with misleading incomplete materials and improper questions that are unrelated to their testimony as non-party fact witnesses." Defendant Pfizer further asserts Plaintiff's counsel "also showed Dr. Flowers internal company documents and a copy of the criminal information filed against Warner-Lambert Company LLC, none of which had any bearing on Plaintiff's treatment, and were meant only to alter the doctor's testimony and portray Defendants in a bad light." [#3124 pgs. 1, 2].

## II.

## JUDGE SOROKIN'S ORDER

On October 29, 2010, after extensive briefing by both parties, Judge Sorokin denied Pfizer's Motion for Sanctions Regarding Improper Deposition Tactics and Imposing Sanctions [#3095] without prejudice to objecting to the admission or use of any portion of the deposition at trial.

## III.

## JUDGE SOROKIN'S RULING WAS CORRECT

A.  **"Clearly Erroneous Or Contrary To Law" Standard Of Review Applies**

Pursuant to Federal Rule of Civil Procedure 72(a), in determining objections to the order of a magistrate judge on a nondispositive matter, "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

B.  **Judge Sorokin's Ruling Was Correct And Not Clearly Erroneous Or Contrary to Law**

Plaintiff Barlow stands upon and incorporates herein her extensive briefing in opposition to Defendant Pfizer's motion [# 3103 – 3104; 3116].

Plaintiff Barlow in this reply will demonstrate the complete absence of merit of Defendant's claims and the correctness of Judge Sorokin's ruling in response to those claims.

First, the remedy Pfizer seeks – that Mrs. Barlow's counsel and all MDL plaintiffs' counsel submit their proposed deposition questions and exhibits in advance for the defendant to get a ruling before the deposition – is unknown to the Rules, but

Judge Sorokin's decision to let the trial judges rule on objections when and if the deposition is offered, is in the exact language of Rule 30(c).

Second, the complained of deposition examination of Dr. Flowers was not improper and was highly relevant. Defendant Pfizer would have this Court believe that there was no legitimate purpose in questioning Plaintiff Barlow's treating psychiatrist, Dr. Larry Flowers, M.D., regarding their illegal marketing activities. That is as a completely contrary position to Pfizer's argument with this Court in the *Bulger* pre-trial in which defense counsel asserted that evidence of the guilty plea and illegal marketing would be relevant only if the prescribing doctors were asked about it in deposition. [# 3104-9, Exhibit I]. Now, when the prescribing doctor is asked, Pfizer seeks sanctions.

It is important to note that there is no dispute that such illegal marketing activities took place with regards to the promotion of Neurontin to doctors for patients like Plaintiff Barlow who suffer from bipolar disease. This Court, in its findings of fact and conclusions of law in the *Kaiser* case dated November 3, 2010, found Defendant Pfizer engaged in the fraudulent marketing of Neurontin for the treatment of bipolar disorder. The fraudulent marketing tactics of Defendant Pfizer included, but were not limited to, detailing psychiatrists, including Dr. Flowers, to prescribe Neurontin for bipolar disorder without disclosing the negative information they had in their possession regarding such things as the failed random controlled trial of Neurontin in treating bipolar disorder [#3120 pages 35, 39, and 111].

What Defendant Pfizer complains about in the instant case is Plaintiff Barlow's counsel questioning the treating psychiatrist about whether Defendant Pfizer's illegal marketing activities would affect that treating psychiatrist's decision to prescribe Neurontin for Mrs. Barlow. One such inquiry involved questioning Dr. Flowers about the prior testimony of the Pfizer Medical Director for its Neurontin Team, Dr.

3

Glanzman. Dr. Glanzman testified he approved the message that Neurontin was effective in treating a variety of psychiatric disorders without determining that such message was accurate. Another line of questioning involved the use of exhibits to demonstrate that Pfizer withheld critical information regarding the lack of efficacy of Neurontin for the treatment of bipolar disorder. After these questions, Dr. Flowers was then asked whether it would have affected his decision to prescribe Neurontin for Mrs. Barlow if he had known the information that Warner-Lambert had withheld. Not surprisingly, Dr. Flowers testified it would have affected his decision to prescribe Neurontin for Mrs. Barlow [#3103, pages 3 – 8].

Nothing could be more relevant than inquiring as to the effect of Defendant Pfizer's illegal marketing tactics on a treating doctor's prescribing decisions. This is a failure to warn / learned intermediary case in which Mrs. Barlow has the burden of proof under Texas law to overcome a statutory rebuttable presumption that the drug label warnings were adequate. By law, she must show that Neurontin was promoted off-label to her doctor without adequate warnings. V.T.C.A., Civil Practice & Remedies Code § 82.007 (2003).

Mrs. Barlow also has the affirmative burden of proof, under Texas law, to demonstrate that her doctor did not know of the risks or inadequate warnings and would have chosen other drugs or warned her specifically about suicide risks if he had known. *See, McNeil v Wyeth*, 462 F.3d 364, (5th Cir. Texas 2006*); Ebel v Eli Lilly & Co.*, 321 Fed.Appx. 350 (5th Cir. Tex. 2009).

This Court in its November 3, 2010 findings of fact and conclusions of law in the *Kaiser* trial addressed that fact when it noted "no physician had testified during that trial that she would not have prescribed Neurontin had she known about Defendant's misrepresentations as to efficacy or suppression of negative trials in the literature...."[#3120 p.133]. Here Plaintiff Barlow's counsel did nothing more than face

4

head-on the issue of causation with Plaintiff Barlow's treating psychiatrist. Defendant Pfizer's position that this line of questioning was irrelevant is without merit to the point of being ridiculous.

Third, the use of Defendant Pfizer's guilty plea was proper. As this Court noted in its November 3, 2010 findings of fact and conclusions of law in the *Kaiser* trial, Pfizer caused Warner-Lambert (which it owned) to plead guilty to two felony counts of marketing Neurontin for unapproved uses, including bipolar disorder [#3120 p.24]. Warner-Lambert expressly and unequivocally admitted that it committed the crimes charged in the Information, which included distribution of a misbranded drug. Neurontin was "misbranded" because Defendant Warner-Lambert's off-label promotion for non-indicated uses, including bipolar disorder, was conducted without providing adequate instructions to doctors regarding its risks and efficacy for such off-label use. Accordingly, the questions by Mrs. Barlow's counsel to Dr. Flowers whether he would like to have known that Parke-Davis and Warner-Lambert admitted that it was unequivocally true that they had distributed Neurontin for the treatment of bipolar disorder without adequate directions to doctors to treat that condition was very relevant and very appropriate. Again, and not surprisingly, Dr. Flowers testified that it would have affected his decision to prescribe Neurontin for his patient [#3103, pgs. 3 – 8]. Obviously, Defendant Pfizer's admissions in the guilty plea are highly relevant in a case in which the defendant promoted Neurontin to the prescribing doctor 49 times. This Court ruled on July 20, 2009, when addressing the admissibility of the criminal

conviction in the *Bulger* case (Exhibit A), that it was relevant to the duty of care, corporate intent regarding marketing, and the corporate course of conduct.[1]

Fourth, nowhere in the history of depositions has a party moved for nor a court granted sanctions for asking a witness about facts that are true and for asking a treating physician witness whether if he had known those facts his choice of treatment would have been different. That is exactly what Defendant Pfizer is seeking in the instant case. Defendant Pfizer has not cited to the Court one question it was prevented from asking Dr. Flowers in the deposition or one answer Dr. Flowers gave to any question to suggest that his testimony was tainted. All of the questions were asked on the record and the trial court can rule on Defendant's objections to them at the time of trial, as Rule 30(c) contemplates. In fact, Judge Sorokin's order does nothing more than follow what is contemplated in Rule 30 by leaving the admissibility of any deposition testimony or portion of deposition testimony to the trial court. As such, Judge Sorokin's order was correct and certainly not clearly erroneous or contrary to law.

Lastly, a court that is asked to impose sanctions must at a minimum find that the party who is the target of such a motion has violated some explicit rule, order, or standard. *See, e.g. Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323 (2d Cir: New York, 1999). Defendants' Motion and Additional Reply did not cite a rule, an order, or a standard that prohibits asking the treating doctors in a deposition whether knowledge of certain facts that they did not know would affect or change their treatment choices, nor has defendant done so in its

---

[1] Defendant Pfizer continually complains that Plaintiff Barlow's use of the criminal conviction "portray Defendants in a bad light." In fact, what portrays Defendant Pfizer in a bad light is Defendant Pfizer's own felonious conduct in this and other similar situations. For example, while it was executing the Corporate Integrity Agreement relating to Neurontin (Exhibit B), it was in the process of illegally off-label marketing Bextra, which resulted in another felony conviction for its wholly owned subsidiary Pharmacia Inc. (Exhibit C). Therefore, Defendant Pfizer's complaints about being portrayed in a "bad light" should be given little weight in light of their habitual criminal conduct.

objection to Judge Sorokin's Order.   Neither Plaintiff nor her counsel have violated a rule, an order, or a standard.  Judge Sorokin's decision was not erroneous or contrary to law.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Barlow prays that Defendant Pfizer's objections to Judge Sorokin's order of October 29, 2010 be overruled.

Respectfully submitted,

WRIGHT & GREENHILL, P.C.
221 West 6th Street, Suite 1800
Austin, Texas 78701
512/476-4600
512/476-5382 (Fax)

By: _____
Archie Carl Pierce
State Bar No. 15991500

LAW OFFICES OF JACK LONDON
& ASSOCIATES, P.C.
Jack W. London
State Bar No. 12512500
106 E. 6th Street, Suite 700
Austin, TX 78701
512/478-5858
512/478-1120 (Fax)

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been sent as required by Case Management Order No. 3 on November 17, 2010.

WRIGHT & GREENHILL, P.C.
221 West 6th Street, Suite 1800
Austin, Texas 78701
512/476-4600
512/476-5382 (Fax)

By: _____
Archie Carl Pierce

7