# EXHIBIT A

1

1                 IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF MASSACHUSETTS

2

3

4     IN RE:                          )

                                      ) CA No. 04-10981-PBS

5     NEURONTIN MARKETING, SALES PRACTICES,) Pages 1 - 107

      AND PRODUCTS LIABILITY LITIGATION    )

6

7

8

9                 FINAL PRETRIAL CONFERENCE - DAY ONE

10                BEFORE THE HONORABLE PATTI B. SARIS

                     UNITED STATES DISTRICT JUDGE

11

12

13

14

                            United States District Court

15                          1 Courthouse Way, Courtroom 19

                            Boston, Massachusetts

16                          July 20, 2009, 9:15 a.m.

17

18

19

20

21

22

                         LEE A. MARZILLI

23                   OFFICIAL COURT REPORTER

                  United States District Court

24             1 Courthouse Way, Room 7200

                   Boston, MA  02210

25                   (617)345-6787

1    profit motive, why you would have an intent not to disclose

2    certain things, as well as the extent of the information

3    that you had available, you knew that it was being marketed

4    off-label.

5              MR. CHEFFO:  But, see, the issue --

6              THE COURT:  Denied, denied.  Okay, now, that

7    having been said, you only have a certain number of hours.

8    You can't spend your life on the national marketing

9    campaign.  The number of hours is going to circumscribe how

10   much time you can spend on it.

11             MR. FINKELSTEIN:  We're well aware of that, your

12   Honor, and we were waiting till today to understand what

13   our --

14             THE COURT:  So Franklin will probably come first.

15             MR. FINKELSTEIN:  Yes.

16             THE COURT:  Let me just go through defendant

17   first, since you're -- the motion with respect to the guilty

18   plea, that's admissible.  Why isn't that corporate intent?

19             MR. CHEFFO:  Well, your Honor, the issue here is

20   not whether there was -- well, first of all, we look at the

21   doctors who were deposed in this specific case, and none of

22   them talked about it, but they had an opportunity to depose

23   the doctors, and Crognale and Goldman testified.  There was

24   no testimony that they relied on marketing, advertising,

25   CME.  I mean, the plea talks about conduct back in, as your

1    Honor is well aware, back in the late '90s.  There's an

2    absolute and total disconnect from a proximate causation

3    perspective, and it's absolutely prejudicial with respect

4    to -- if we're going to start talking about national

5    marketing and what happened back in the '90s, the issue

6    here, I think as your Honor had correctly said a few weeks

7    ago, it's about causation, it's about Mrs. Bulger.

8          THE COURT:  It's also about intent.  It's about

9    corporate intent and a duty and whether a duty arose and

10    what the corporate course of conduct was with respect to

11    this drug.

12          MR. CHEFFO:  Here's the duty, I think, your Honor.

13    The duty issue is not whether there was knowledge or

14    information about off-label marketing.  To the extent, and

15    we may disagree, but to the extent that you think that

16    there's a heightened duty, okay, that arose as a result of

17    the use of off-label, that's the issue, so --

18          THE COURT:  Even put aside heightened, just a

19    regular duty.

20          MR. CHEFFO:  Okay, and there's no dispute here,

21    your Honor, that Pfizer understood that the products were

22    being used for off-label.  The issue here, you don't have to

23    then go to the next step and say what the actual marketing

24    was.  That's kind of a secondary irrelevant inquiry.

25          THE COURT:  Yes, maybe.  Let me just -- I think

1   you make one good point, which is, I'm not ruling that every

2   single question asked is going to be admissible, every

3   single question about a boondoggle in Boca.  I am simply

4   saying that in general the corporate intent and the

5   corporate course of conduct is relevant to not only the

6   fraud issues but the duty of care, and certainly the

7   punitive issues, and I am going to allow both the plea and

8   the national marketing campaign.

9           As I understand it, there is no effort here to

10  separate off Pfizer from Warner-Lambert, is there?  Would

11  you want -- I was going to ask you that -- different

12  verdicts for both of them?

13          MR. CHEFFO:  I don't think so, your Honor, but the

14  one thing I would add is, there are 230 or 240 exhibits,

15  over 5,000 pages with respect to market --

16          THE COURT:  That's a very good point.  They're not

17  going to do a dump.

18          MR. CHEFFO:  But they have already.  They've

19  already --

20          THE COURT:  Excuse me, excuse me.  Not with me

21  they haven't.  If they think they're going to put in

22  Exhibits 1 through 100 on a national marketing campaign, I

23  am going to say, "Rule 403, it's cluttering the record."  So

24  the jury won't look at it, I won't look at it.  They can't

25  do it, I agree with that.  I'm doing this in a macro sense,

1      of a closing argument.  Golden rule --

2                  MS. ARMSTRONG:  Golden rule arguments, appealing

3      to the jury's self-interest, to place themselves in the

4      position of the plaintiff, to say, "What would you have

5      wanted your doctor to tell you, or what would you have

6      wanted the drug company to tell you?"  The First Circuit has

7      said "no."

8                  THE COURT:  Well, all of this is inappropriate for

9      opening statements anyway, so, I mean --

10                 Evidence of references to discovery disputes.

11                 MS. ARMSTRONG:  Right, yes, your Honor.  They

12     should not be able to get up in front of the jury and say,

13     "We had to compel to get this document."

14                 THE COURT:  I agree.  All right, so allowed in

15     part and denied in part.

16                 Because of the shortness of the trial, I'm not

17     inclined to bifurcate the trial on punitive damages, so --

18                 MR. CHEFFO:  Your Honor?

19                 THE COURT:  Yes.

20                 MR. CHEFFO:  If you've ruled on that, I'll sit

21     down, but I would just say that just going back to some of

22     the issues on the marketing and the plea, we do believe that

23     they really are only going primarily, if not exclusively, to

24     the punitive damage issue, and we believe they're incredibly

25     prejudicial, so we would just ask that --

1            THE COURT:  Well, I disagree with that.  I think

2       it's relevant to the corporate intent, why it is that they

3       might not have wanted to have disclosed certain information,

4       because it was such a profitable drug, and it was being

5       marketed and it was so profitable, not dampening the sales,

6       their understanding of how widespread it was used across so

7       many indications.  I mean, it's relevant on so many issues.

8       My concern is more along the lines of the time frame.  It

9       can't just be what happened when I first got the case in the

10      mid-'90s.  It's got to be brought through the 2000s, and do

11      I have a proffer that's going to happen?

12            MR. FINKELSTEIN:  Absolutely, your Honor.

13            MR. CHEFFO:  Your Honor, and I will sit down if

14      you tell me you're done with this, but, you know, when the

15      hear the number 240 million, 430, it's going to be such an

16      incredible prejudicial distraction that the jury is going to

17      think that this is about marketing and conduct.  They're

18      going to lose sight of the fact that it's dealing with

19      general and specific causation and Mrs. Bulger.

20            THE COURT:  I don't think -- I was actually

21      thinking of making, just to make sure that that's right, of

22      not just having a general verdict form, actually, and making

23      people walk through the different steps, just because of

24      that.  They're going to have to answer the causation issue.

25      And as I was thinking about the case, I mean, they've got a