# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ------------------------------------------------x | : | MDL Docket No. 1629 |
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : : | Master File No. 04-10981 |
| ------------------------------------------------x | : | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | : : : | Magistrate Judge Leo T. Sorokin |
| *Barlow v. Pfizer Inc, et al.* Case No. 1:05-cv-11501-PBS | : : | **[PROPOSED DOCUMENT]** |
| ------------------------------------------------x | | |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S DENIAL OF MOTION FOR AN ORDER PROHIBITING IMPROPER TACTICS DURING FACT WITNESS DEPOSITIONS AND IMPOSING SANCTIONS**

Defendants Pfizer Inc and Warner-Lambert Company LLC (together, "Pfizer") submit this reply brief in further support of their Objection to Magistrate Judge's Denial of Motion for an Order Prohibiting Improper Tactics During Fact Witness Depositions and Imposing Sanctions.

Plaintiff's Response memorandum [3127] ignores most of the concerns raised in Pfizer's objection and mischaracterizes Pfizer's other arguments. For instance, Plaintiff provides no explanation for the inflammatory letter sent to Dr. Flowers telling him that he was a "victim" of Pfizer's "scheme." Nor does it attempt to provide a legitimate purpose for playing the cherry-picked video deposition of Dr. Glanzman. Plaintiff's Response does not explain how the use of internal company documents or a plea entered years after Plaintiff's Neurontin prescription was appropriate or how this could have even conceivably influenced her physician's treatment decisions. Finally, Plaintiff's Response fails to address Plaintiff's counsel's cumulative misconduct, which is aimed at frustrating Pfizer's ability to conduct a fair deposition of Dr. Flowers and – at the very least – demonstrates her counsel's disregard for the proper purpose of a deposition in favor of a mini-trial in which he attempts to tarnish the testimony of fact witnesses.

Instead of addressing the arguments actually raised in Defendants' motion, Plaintiff's Response veers off on a tangent about the relevance of evidence related to the promotion of Neurontin. First, the issue is not whether such evidence would be admissible *at trial*, a question not at issue here. Rather, the issue is whether certain questions and documents were appropriate for *this deponent*, a fact witness with a narrow scope of knowledge and connection to this case. Dr. Flowers did not initially prescribe Neurontin to Mrs. Barlow, but continued a prescription by another doctor. And he only treated her for a few months, from August of 2000 to December of 2000. (*See* Flowers Dep. [3097-1] at 37:7-13.)

Contrary to what Plaintiff would have the Court infer, the underlying motion does not raise objections to her counsel's inquires into any alleged promotion **to Dr. Flowers** prior to him prescribing Neurontin for Mrs. Barlow. Rather, the basis for Pfizer's motion is a pattern of improper discovery tactics employed by Plaintiff's counsel – tactics that no other attorney in this multi-district litigation has seen the need to employ – that are not intended to serve any discovery-related purpose and are intended only to bias the witness. With regard to Dr. Flowers, the legitimate purpose of conducting his deposition was for the parties to obtain information about his treatment of Mrs. Barlow. *See Garcia v. City of Springfield Police Dep't*, 230 F.R.D. 247, 249 (D. Mass. 2005) (explaining that a non-expert treating physician's testimony should be limited to his diagnosis and treatment of his patient). None of Plaintiff's counsel's conduct described in Pfizer's motion was focused on that treatment or any other legitimate purpose. Plaintiff's after-the-fact justifications (e.g., that her counsel played the misleadingly-edited video in order to find out how Dr. Glanzman's testimony would have affected Dr. Flowers' prescribing decision) are obvious subterfuges.

Plaintiff further mischaracterizes several other aspects of Pfizer's objection. Although he knows it is not the case, Plaintiff's counsel disingenuously claims that Pfizer is seeking to have "Mrs. Barlow's counsel and all MDL plaintiffs' counsel submit their proposed deposition questions and exhibits in advance for the defendant to get a ruling before the deposition." (Pl.'s Response [3127], at 2.) That is a knowing misrepresentation of Pfizer's position. Pfizer has

never requested anything that even resembles such a remedy.  Indeed, Pfizer wants to avoid a "circus" atmosphere during the depositions of physicians – an atmosphere created only by Plaintiff's counsel in this case.

Moreover, Plaintiff incorrectly claims that the record shows Dr. Glanzman's video testimony and the internal Pfizer documents "would have affected [Dr. Flowers'] decision to prescribe Neurontin for Mrs. Barlow." (*Id.* at 4.)  Quite the opposite of Plaintiff's assertion, Dr. Flowers explicitly testified that he does *not* consider internal company documents or the testimony of pharmaceutical company employees when making prescribing decisions.  (Flowers Dep. [3097-1] at 170:21-171:18.)  Further, Dr. Flowers testified that had success treating bipolar patients with an anxiety component before he saw Mrs. Barlow and that he still prescribes Neurontin for such patients today.  (Ex. A, Flowers Dep. at 132:1-135:20.)

Furthermore, Plaintiff misstates Pfizer's arguments at the *Bulger* pre-trial hearing by claiming that Pfizer had asserted plaintiffs must ask the treating physician about the guilty plea for it to be admissible.  (Pl.'s Response at 3.)  That is a complete distortion of the argument; Pfizer's attorney simply noted that the attorneys in *Bulger* did not ask the prescribing physicians whether they had relied on any marketing or advertising activities by Pfizer.  Pfizer does not object to questioning Dr. Flowers regarding his *personal* exposure to marketing.  Pfizer objected to asking Dr. Flowers hypothetical questions that were far beyond his personal experience.

Plaintiff is also incorrect as a matter of law when she argues that this Court lacks a legal basis to sanction and deter her counsel's improper discovery conduct intended to taint a fact witness's testimony.  Federal Rule of Civil Procedure 30(d)(2) provides that "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent."  The court also has the "inherent power to manage its own proceedings and to control the conduct of litigants who appear before it through orders or the issuance of monetary sanctions for bad-faith, vexatious, wanton or oppressive behavior."  *Strahan v. Simon Property Group, Inc.*, No. 08-cv-10764, 2008 WL 5273684, at *1 (D. Mass. Dec. 11, 2008) (citing *United*

3

*States v. Kouri-Perez*, 187 F.3d 1, 6-8 (1st Cir. 1999)).  Other courts have imposed sanctions in similar situations where attorneys communicated with non-party fact witnesses, even though the representations were factually true, for no other purpose than to "influence these witnesses not to cooperate with defendant's counsel" and thereby "gain a tactical advantage."  *Parker v. Upsher-Smith Labs, Inc.*, No. 3:06-cv-0518, 2009 WL 418596, at \*4, \*8 (D. Nev. Feb. 18, 2009); *see also In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005) (finding that courts have supervisory authority to prevent parties from engaging in "'misleading communications'" with putative class members, including biased, one-sided accounts that "omit[] critical information") (citation omitted).  Lastly, Plaintiff ignores the clear import of the admonitions in this Court's November 18, 2009 Order about attempts to influence the testimony of fact witnesses.  (Nov. 18 Order [2175].)

      Both Plaintiff and the Magistrate Judge mistakenly assume that the misconduct described in Pfizer's motion can be cured by exclusion of evidence at trial.  However, that assumption is clearly erroneous in light of the type of harm caused by the conduct at issue.  First, if Plaintiff's counsel is allowed to continue their ongoing strategy, Pfizer will continue to be deprived of a fair opportunity to retrieve untainted testimony from treating physicians that might supply evidence helpful in supporting Pfizer's defense.  Second, once the well has been poisoned, it cannot be unpoisoned.  Evidentiary rulings cannot somehow remove an unfair prejudice once instilled in the minds of these key witnesses, who will carry any established bias with them when they testify at trial.  Plaintiff's argument about a lack of evidence clearly showing a subjective bias in Dr. Flowers, even if true, is irrelevant.  The mere fact that an unfair discovery strategy to taint a witness's testimony was unsuccessful does not legitimize it.  Third, Plaintiff's counsel's pattern of misconduct causes a significant and unnecessary waste of discovery time and resources.  It is unreasonable to expect Pfizer's counsel to prepare counter-designations and rebuttal evidence to respond to these unfair tactics at every deposition of a treating physician.  Finally, Plaintiff's counsel's deposition tactics project an unflattering image of the discovery process to these non-party witnesses.  These physicians arrive expecting to answer questions about the care of

4

their patients, and instead they are subjected to mini-trials on tangential issues – complete with a barrage of out-of-context video testimony, internal corporate documents of which they have no knowledge, and argumentative questions about what they think is "right." Physicians should not be forced to field questions about every topic that is potentially relevant at trial. These physicians have busy schedules, and their time would be exponentially better spent caring for patients than being forced to watch Plaintiff's counsel test-run his case-in-chief prior to trial.

Because the Magistrate Judge's Order fails to address any of these legitimate concerns, it should be set aside. Its conflation of these discovery issues with evidentiary issues does nothing to remedy the problem. Mrs. Barlow's counsel's actions – sending unsolicited inflammatory letters, playing misleadingly-edited clips from other depositions, showing non-pertinent "bad actor" materials, asking "do you think its right" and other argumentative questions – not only produce inadmissible testimony; these tactics collectively represent an ongoing strategy to improperly influence the witness's admissible testimony and deprive Pfizer of the opportunity to obtain untainted testimony. Regardless of whether Plaintiff's improper strategy achieves its goal, it results in unnecessary waste of Pfizer's and the fact-witness's time and resources. Thus, the Magistrate Judge's Order, which allows this pattern of misconduct to continue undeterred, is clearly erroneous and should be overturned for the sake of protecting the integrity of the discovery process in this litigation.

## **CONCLUSION**

For all the foregoing reasons, the Court should set aside the Magistrate Judge's Order denying Pfizer's motion and grant the relief requested therein.

Dated: November 19, 2010

        Respectfully submitted,

        SKADDEN, ARPS, SLATE, MEAGHER
          & FLOM LLP

        By: /s/ Mark S. Cheffo
            Mark S. Cheffo

        Four Times Square
        New York, NY 10036
        Tel: (212) 735-3000
        Mark.Cheffo@skadden.com

        -and-

        ROPES & GRAY LLP

        By: /s/ Ana M. Francisco
            Ana M. Francisco
            BBO # 564346

        Prudential Tower
        800 Boylston Street
        Boston, MA 02199-3600
        Tel: (617) 951-7000
        Ana.Francisco@ropesgray.com

        *Attorneys for Defendants Pfizer Inc and*
        *Warner-Lambert Company LLC*

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on November 19, 2010.

        /s/ Ana M. Francisco
        Ana M. Francisco

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629 <br> Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO: <br> *Barlow v. Pfizer Inc, et al.* <br> Case No. 1:05-cv-11501-PBS | Judge Patti B. Saris <br> Magistrate Judge Leo T. Sorokin <br> **[PROPOSED DOCUMENT]** |

## DECLARATION OF MARK S. CHEFFO IN SUPPORT OF DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S DENIAL OF MOTION FOR AN ORDER PROHIBITING IMPROPER TACTICS DURING FACT WITNESS DEPOSITIONS AND IMPOSING SANCTIONS

I, Mark S. Cheffo, declare and state as follows:

1. I am a partner with the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, counsel for Defendants Pfizer Inc and Warner-Lambert Company LLC. I make this declaration based on my own personal knowledge and information.

2. Attached hereto as Exhibit A is a true and correct copy of excerpts from the August 28, 2010, deposition of Larry Flowers, M.D.

Signed under the penalties of perjury this 19th day of November 2010.

/s/ Mark S. Cheffo
Mark S. Cheffo

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on November 19, 2010.

/s/ Ana. M. Francisco
Ana M. Francisco

# EXHIBIT A

---

**Page 1**

```
              IN THE UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
..............................:
                               :
In Re:                         :
NEURONTIN MARKETING,           :MDL Docket No. 1629
SALES PRACTICES AND PRODUCTS,  :
LIABILITY LITIGATION           :Master File No. 04-10981
                               :
..............................:
                               :
THIS DOCUMENT RELATES TO:      :Judge Patti B. Saris
                               :
IRENE BARLOW                   :Magistrate Judge Leo T.
                               :Sorokin
                               :
..............................:...............

              IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TEXAS
                         AUSTIN DIVISION
..............................:
                               :
IRENE BARLOW                   :
                               : CIVIL ACTION NO.
vs.                            :
                               : 1:05CV175-SS
PFIZER, INC.; WARNER-LAMBERT   :
COMPANY, L.L.C., formerly known:
as WARNER-LAMBERT COMPANY,     :
including its division PARKE-DAVIS :
and DR. JAY SEASTRUNK, M.D.,   :
REHABILITATION STAFFING SERVICES, :
LTD., AND GERO-PSYCHIATRIC     :
SERVICE OPPORTUNITY            :
                               :
..............................:...............

     ORAL AND VIDEOTAPED DEPOSITION OF LARRY FLOWERS, M.D.

                        AUGUST 28, 2010

..............................................................
```

---

**Page 2**

```
     ORAL AND VIDEOTAPED DEPOSITION OF LARRY FLOWERS, M.D.

                        AUGUST 28, 2010


     ORAL AND VIDEOTAPED DEPOSITION OF LARRY FLOWERS,
M.D., produced as a witness at the instance of the
Plaintiff, and duly sworn, was taken in the above-styled
and numbered cause on Saturday, August 28, 2010, from
9:55 a.m. to 2:08 p.m., before Mary C. Dopico, Certified
Shorthand Reporter No. 463 and Notary Public in and for
the State of Texas, reported by machine shorthand and
audio/video recording at the offices of 1125 Cypress
Station Drive, Suite B1, Houston, Texas, pursuant to
Notice and the Federal Rules of Civil Procedure and the
provisions stated on the record or attached hereto.
```

---

**Page 3**

```
APPEARANCES
COUNSEL FOR PLAINTIFF:
    Mr. Archie Carl Pierce
    Wright & Greenhill, P.C.
    221 W. 6th Street, Suite 1800
    Austin, Texas  78701
    Telephone: 512/476-4600  Fax: 512/476-5382
    E-mail: cpierce@w-g.com

and

    Mr. Jack London
    Law Offices of Jack London, P.C.
    3701 Bee Caves Road, Suite 200
    Austin, Texas  78746
    Telephone: 512/478-5858  Fax: 512/478-1120
    E-mail: jack@jackwlondon.com

COUNSEL FOR DEFENDANT, PFIZER, INC. AND WARNER-LAMBERT
COMPANY:
    Mr. Jeffrey R. Lilly
    Clark, Thomas & Winters, P.C.
    3000 Weslayan, Suite 350
    Houston, Texas  77027-3708
    Telephone: 713/621-1017  Fax: 713/583-1221
    E-mail: jrl@ctw.com

and

    Mr. Kenneth J. Ferguson
    Clark, Thomas & Winters, P.C.
    300 West 6th Street, Suite 1500
    Austin, Texas  78701
    Telephone: 512/472-8800  Fax: 512/682-5495
    E-mail: kjf@ctw.com

REPORTED BY:              VIDEO BY:
Mary C. Dopico, CSR, RPR, CRR    Joseph (Chip) Tait
Independent Contractor To:
Wright, Watson & Associates
Firm Registration No. 225
Expires 12-31-2011
3307 Northland Drive, Suite 185
Austin, Texas  78731
512/474-4363  Fax 512/474-8802
```

---

**Page 4**

```
                        INDEX
     ORAL AND VIDEOTAPED DEPOSITION OF LARRY FLOWERS, M.D.
                       AUGUST 28, 2010
                                                    PAGE
Appearances.........................  2
Proceedings/Stipulations............  9
Changes and Signature Page.......... 194
Reporter's Certification............ 196

LARRY FLOWERS, M.D.
    Examination, by Mr. London.....................   9
    Examination, by Mr. Ferguson...................  98
    Further Examination, by Mr. London............. 173
    Further Examination, by Mr. Ferguson........... 190
    Further Examination, by Mr. London............. 193

FLOWERS EXHIBITS

Exhibit 1...........................  13
    Dr. Flower's clinical records of Irene Barlow
    (13 pages)

Exhibit 2...........................  13
    Cypress Creek Hospital chart of Irene Barlow
    (69 pages)

Exhibit 3...........................  41
    Pfizer records of sales rep visit call dates
    made to Dr. Flowers (CONFIDENTIAL)
    (Pfizer_MDL_Barlow_0000107 - 0000132, 0000208 -
    0000213, 0000082 - 0000106)

Exhibit 4...........................  53
    Psychiatric Times and CME, Inc. sponsored
    Complimentary Educational Symposium flier
    "New Frontiers in Social Phobia and Bipolar
    Disorders" (CME/NEU 01416)
```

133
1  Q. (By Mr. Ferguson) So -- So I understand, the
2  patients that you believe that you had some success with
3  were bipolar patients who added an anxiety component to
4  their bipolar?
5  A. Who generally had a concomitant anxiety and
6  concomitant substance abuse, which could have been
7  related to their anxiety or not.
8  Q. Have you had success treating patients with --
9  for pain before -- with Neurontin before you saw
10 Ms. Barlow?
11 A. I didn't specifically initiate their treatment
12 with pain, but I've had patients who I have inherited on
13 gabapentin who were treated for pain disorders whom had
14 success and I've continued it, but I wasn't necessarily
15 initiating it myself.
16 Q. With regard to the patients for whom you
17 prescribed Neurontin, before you saw Ms. Barlow, for
18 those patients you determined that Neurontin was an
19 appropriate medication to treat their condition.
20 A. Correct.
21 Q. Are you still prescribing anti-epileptic drugs
22 for bipolar disease today?
23 A. Yes.
24 Q. And which ones are you using to -- to treat
25 bipolar either as monotherapy or as adjunctive therapy?

134
1  A. Depakote, Lamictal, would be my primary two
2  AEs that I use. On occasion I will add topiramate --
3  Topamax -- if a patient has weight issues due to
4  Depakote and sometimes being on an atypical. Those are
5  the three that I primarily use.
6  Q. Are there others that you secondarily use or
7  tertiarily use?
8  A. As they start failing, yes.
9     MR. LONDON: Say that again, please. I
10 just didn't -- "As they start" what?
11    THE WITNESS: Failing.
12    MR. LONDON: Failing?
13    THE WITNESS: Failing.
14    MR. LONDON: F-A-I-L-I-N-G?
15    THE WITNESS: Yes.
16    MR. LONDON: Okay. I'm sorry. I
17 apologize.
18 A. That's all right. As there are failed trials
19 with the other medications, you know, my general
20 spectrum is atypical, AE, then searching for the perfect
21 AE, anti-epileptic, lithium, then I'm going out there --
22 I may -- You know, sometimes there's add-on
23 benzodiazepines. Then none of those have worked. Then
24 there might be other AEs I've used, which I may not even
25 think typically work well with bipolar disorder,

135
1  Topamax, Zonegran, I've used them before.
2  Q. (By Mr. Ferguson) Do you use Neurontin at all
3  at least as an adjunctive therapy for bipolar at all?
4  A. I will say there are several patients who are
5  on Neurontin that are still on Neurontin who -- as an
6  adjunctive therapy -- that have a history of bipolar,
7  anxiety, and chemical dependency, and they have
8  continued on.
9  Q. So at least you have continued a prescription
10 for some patients who have anxiety and substance abuse
11 components to their bipolar?
12 A. Correct.
13 Q. Okay. And at least in your view, for those
14 patients, does the Neurontin use as adjunctive therapy
15 help those patients? Does it benefit them?
16 A. It helps those patients. In my determination,
17 more with the anxiety and the substance abuse, and --
18 than I see -- that I can say necessarily with mania or
19 depression, but I can certainly say it's helped the --
20 it's helping them.
21 Q. Are there any other conditions, other than as
22 you just described --
23 A. Uh-huh.
24 Q. -- any other conditions that you use Neurontin
25 for currently?

136
1  A. Yeah, there are pain conditions that -- that I
2  continued people on Neurontin with.
3  Q. What sorts of pain conditions?
4  A. Neuralgias primarily, some polyneuropathies,
5  some neuralgias.
6  Q. And would these include neuralgias other than
7  post-herpetic neuralgias?
8  A. Yes.
9  Q. So you still, in certain patients have
10 determined that Neurontin benefits these patients for
11 these pain conditions as you've described?
12 A. Yes.
13 Q. Does -- Does Neurontin leave the system, the
14 body fairly quickly?
15    MR. LONDON: Objection. I'm sorry,
16 objection, form.
17 A. In comparison to -- It isn't if I am
18 comparing -- if I am comparing it to some of my
19 atypicals, certainly yes. It depends on -- You know,
20 relative to the medications we use in psychiatry, yes.
21 Q. (By Mr. Ferguson) And that's my question.
22 A. Right.
23 Q. Relative to the medications --
24 A. I mean --
25 Q. -- that you use in -- in psychiatry --