<pre>
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2

 3   _____

 4   IN RE:  NEURONTIN MARKETING,
     SALES PRACTICES AND PRODUCTS
 5   LIABILITY LITIGATION,                  Civil Action
                                            No. 04-10981-PBS
 6
                                            December 1, 2010
 7                                          9:08 a.m.

 8   _____

 9

10             TRANSCRIPT OF STATUS CONFERENCE

11         BEFORE THE HONORABLE PATTI B. SARIS

12           and HONORABLE LEO T. SOROKIN

13            UNITED STATES DISTRICT COURT

14         JOHN J. MOAKLEY U.S. COURTHOUSE

15                 1 COURTHOUSE WAY

16                BOSTON, MA  02210

17

18

19

20
                   DEBRA M. JOYCE, RMR, CRR
21                  Official Court Reporter
                 John J. Moakley U.S. Courthouse
22               1 Courthouse Way, Room 5204
                      Boston, MA  02210
23                     617-737-4410

24

25
</pre>

```
 1    APPEARANCES:

 2    FOR THE PLAINTIFFS:

 3    ANDREW G. FINKELSTEIN, ESQ.
      KENNETH B. FROMSON, ESQ.
 4    Finkelstein & Partners, LLP.
      436 Robinson Avenue
 5    Newburgh, New York  12550

 6    LEVI BOONE, III, ESQ.
      Boone Law Firm PA
 7    401 West Sunflower Avenue
      Cleveland, MS 38732-1772
 8    662-843-7946

 9    JACK HARANG, ESQ.
      Law Offices of Newton B. Schwartz
10    1911 Southwest Freeway
      Houston, Texas 77098
11
      FOR THE DEFENDANTS:
12
      MARK S. CHEFFO, ESQ.
13    CATHERINE STEVENS, ESQ.
      Skadden, Arps, Slate, Meagher & Flom LLP
14    Four Times Square
      New York, NY 10036
15    212-735-3000

16    CHAD W. HIGGINS, ESQ.
      Goodwin Procter LLP
17    Exchange Place
      53 State Street
18    Boston, MA 02109
      617-570-1229
19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2                (The following proceedings were held in open
 3       court before the Honorable Patti B. Saris and Honorable Leo T.
 4       Sorokin, United States District Court, District of
 5       Massachusetts, at the John J. Moakley United States Courthouse,
 6       1 Courthouse Way, Boston, Massachusetts, on December 1, 2010.)
 7                THE CLERK:  The Honorable Patti Saris and the
 8       Honorable Leo Sorokin presiding.  Please be seated.
 9                In re:  Neuron Marketing Sales Practices and Product
09:08 10       Liability Litigation, civil action 04-10981, will now be heard
11       before this court.
12                Counsel please identify themselves for the record.
13                MR. FINKELSTEIN:  Andrew Finkelstein, Finkelstein &
14       Partners.  Good morning, your Honor.
15                MR. FROMSON:  Good morning, Judges.  Kenneth Fromson,
16       Finkelstein & Partners.
17                MR. BOONE:  Good afternoon, your Honors.  Levi Boone,
18       Boone Law Firm.
19                MR. HARANG:  Jack Harang, your Honor, with Newton
09:08 20       Schwartz.
21                MR. CHEFFO:  Good morning, your Honor.  I'm Mark
22       Cheffo, I'm here with Catherine Stevens from Skadden Arps.
23                MS. STEVENS:  Good morning.
24                MR. HIGGINS:  Good morning, your Honor.  Chad Higgins
25       from Goodwin Procter.
```

1          JUDGE SARIS:  Are we waiting for anybody?

2          MR. FINKELSTEIN:  No, he --

3          MR. HARANG:  I'm here, your Honor.

4          JUDGE SARIS:  Welcome.  As you know, Judge Sorokin has

5     taken the lead in a lot of these issues and I on others, and we

6     thought it was time to meet with all of you and figure out how

7     we're going to finish this case.  So Judge Sorokin actually has

8     all the numbers broken down and has some neat buckets to put it

9     in.  And by these cases what I mean is the product liability

09:09  10     end of it, not sales and marketing, which has its own drumbeat.

11          So, as I see it -- and I may at some point turn it

12     over to Judge Sorokin -- we have at least four or five buckets

13     that we need to talk about.  And let me begin by way of

14     apology.  I didn't want to cancel this, you all had made plans,

15     but I had a cousin who died of ovarian cancer, so I am going

16     off at -- she was very young -- I'm heading off at 9:30 to make

17     a 10:30 funeral in Lexington.  But Judge Sorokin will finish

18     off whatever because I didn't want to cancel it, it was just

19     too important to sort of get this thing going.

09:10  20          So the first 40 cases I'm going to let Judge Sorokin

21     address because we think they're pretty done, and they're

22     Mr. Finkelstein's cases.

23          JUDGE SOROKIN:  Do you want me to run through them?

24          JUDGE SARIS:  Yes.

25          JUDGE SOROKIN:  So the buckets we have are there's one

about 130 cases that are listed in docket number 3129 that you

had indicated are done.  When I say "done," I mean done with

the template paper discovery and done with the common

depositions, which are the prescribers, the sales reps, and the

plaintiff or the plaintiff's representative.  And what we are

anticipating in those cases, which we'll memorialize in an

order that will be drafted after this hearing, is you all will

file a separate list just as to those cases culled from the

list you already filed along with a draft transfer order for

09:11 submission to us.  And we'll -- and then Judge Saris will issue

an order transferring those cases back to the originating

districts for whatever further proceedings need to be done

there.

        The second group of cases are the pro se cases, and I

believe he -- and stop me if I'm wrong -- that the pro se cases

you listed in 3129 are already pro se and subject to the

schedule that I issued that provided that as of November 30th

the paper template discovery be done in those cases.  So am I

right about that?

09:11     MR. FROMSON:  Unless it states otherwise, yes.

        JUDGE SOROKIN:  Okay.

        MR. CHEFFO:  That's right.

        JUDGE SOROKIN:  So what we are anticipating in those

cases is an update -- I don't know whether, in fact, all the

paper discovery was done by all those pro se plaintiffs.

1          The answer is no, Mr. Cheffo?

2          MR. CHEFFO:  It wasn't.  In fact, some of them have

3     sent in dismissals, and we can update once we get ahold of

4     them.  They're contacting us and now saying we want to dismiss

5     the case.

6          JUDGE SOROKIN:  I think what we'll do in the follow-up

7     order is give you two weeks or something to file a list of

8     those cases where people have signed dismissals, and we'll

9     dismiss those.

09:12 10         To the extent this case is left, what we're

11    anticipating is issuing an order that will direct the pro se

12    plaintiffs whose cases remain live that they have to produce

13    their discovery within 30 days or face dismissal of their case.

14    So it will be a drop dead date with an order explaining to them

15    that failure to comply with the order will result in dismissal

16    of their case.

17         JUDGE SARIS:  And we definitely will be transferring

18    the remainder.  We think the depositions would be more easily

19    handled by a pro se person out there and any motions to compel,

09:12 20   et cetera.  So to the extent on the pro se cases that they've

21    actually complied -- we don't even know how many that ends up

22    with, you know, how many are left.  We're likely to transfer

23    them and let the depositions take place out there rather than

24    here.

25         Do you have any idea how many you think are actually

1    viable and the plaintiffs are moving with them?

2          MR. CHEFFO:  We do, your Honor.  And I think the one

3    kind of wrinkle in this because of the good efforts of mostly

4    from Finkelstein but you'll recall they dismissed certain of

5    their cases, Mr. Finkelstein and his crew, and withdrew from

6    certain cases.  So there are some pro se folks who are out

7    there who there's been some discovery because they were

8    represented previously.  So that's one kind of group of folks.

9    Then there are just the others, and I think it's actually due

09:13 10   today or yesterday.  We'll need a few weeks to find out who

11   they are who are being transferred.  Probably in a week or two

12   we can give you more of a breakdown, but there's about 68 --

13          (Discussion off the record.)

14          MR. CHEFFO:  I read that wrong.  That's good news.

15   There's only six to eight plaintiffs of which there was

16   discovery.  So I think that we'll be able to give you -- is

17   that right?

18          MS. STEVENS:  Without discovery.

19          MR. CHEFFO:  Without discovery.  I'm sorry.

09:13 20          JUDGE SARIS:  You'll give us a report.  But the bottom

21   line is we're going to transfer those cases because it's just a

22   hardship.  We don't hear from them.  They're better off in

23   their local states.  I don't know what's left, and my guess is

24   even if you move for summary judgment, they wouldn't be able to

25   respond out there.  I mean, it's just going to -- unlike the

 1   ones where the lawyers can centralize it there, there's no

 2   benefit to the centralization here.

 3          So I know it includes some that aren't Finkelstein,

 4   those 40 cases or so are being transferred.  Whatever is left

 5   at the end of the day on the pro se is being transferred.

 6          All right.  So those --

 7          JUDGE SOROKIN:  Basically we'll take care of the paper

 8   discovery, even though I set the schedule for depositions prior

 9   to February of 2011.  We're figuring what's not been dismissed

09:14 10   will be transferred to their home district for the pro se

11   cases.

12          JUDGE SARIS:  So you'll draft the order.

13          MR. CHEFFO:  Sure.

14          JUDGE SARIS:  The transfer order.  So the Finkelstein

15   folks are drafting the first transfer order, you'll draft the

16   second, we'll play with it, but basically we'll get that --

17   those two buckets gone within -- I'm thinking as a practical

18   matter three months.  They'll just be gone, just for your

19   timing, by the holidays, things get a little delayed, December,

09:15 20   maybe by the end of January, even two months.  What do you

21   think?

22          JUDGE SOROKIN:  Yeah.

23          JUDGE SARIS:  Okay.

24          MR. FINKELSTEIN:  As long as it's after the holidays,

25   we'll be able to do it.

1          JUDGE SARIS:  Okay.

2          JUDGE SOROKIN:  Before we get to the Boone and

3     Schwartz cases, there's the 40 -- there's 40 other cases that

4     weren't in the first wave and are not -- they weren't in the

5     first wave of 130 and they're not represented by the Boone Law

6     Firm, they're not represented by the Schwartz law firm.  And

7     what we're thinking about those cases was setting a schedule

8     of, say, 60 days to do the template discovery and then

9     transferring them back to their home districts.

09:15 10          JUDGE SARIS:  Who represents those -- is anybody here

11    on those other 40?

12          MR. FINKELSTEIN:  No.

13          JUDGE SARIS:  Nobody's appeared here today with these

14    other miscellaneous 40 cases.

15          MR. FINKELSTEIN:  Right, no.

16          JUDGE SARIS:  And those are just individual -- if I

17    remember right, there's individual law firms that have one to

18    five to six cases in each one.

19          You don't represent them at all, you're not like a

09:16 20    coordinated --

21          MR. FINKELSTEIN:  I'm here on behalf of the MDL where

22    it's coordinated, so I do represent them from a general

23    liability standpoint but certainly not on their individual

24    cases.  I'm here only -- I'll relay just what you're ordering

25    to them, but it's up to them to make sure they do their

```
 1    discovery and so on.
 2            JUDGE SARIS:  If the discovery isn't done, the
 3    template discovery, I think that's all we're talking about, we
 4    decided not to do the deposition discovery on the miscellaneous
 5    ones -- but if the template isn't done, we're expecting to
 6    dismiss them.
 7            MR. FINKELSTEIN:  We'll advise them.  We don't
 8    represent them on the underlying case, only as liaison to the
 9    Court so you don't have 60 lawyers.
09:16 10        JUDGE SARIS:  We need to memorialize that in an order.
11            JUDGE SOROKIN:  We'll do an order.
12            JUDGE SARIS:  We'll do that order.  It will get out to
13    them, but we're planning on holding a second status conference,
14    let's say, end of January, early February just to keep this
15    thing on track, and it's going to be basically -- we're going
16    to dismiss it if it's not done, because it means someone isn't
17    prosecuting essentially, isn't making the effort to prosecute
18    the cases.
19            MR. FINKELSTEIN:  And our responsibility is to
09:17 20   communicate with them and then to report to the Court.
21            JUDGE SARIS:  Perfect.  I just want to make sure that
22    they were represented here.
23            All right.  I'm not even sure what they are, they
24    haven't really been pressed.
25            MR. FINKELSTEIN:  Right.
```

             1           JUDGE SARIS:  All right.

             2           JUDGE SOROKIN:  On the gabapentin defendants, there's

             3    a schedule for the common discovery, that's sort of the general

             4    liability discovery.  Are there individual products liability

             5    plaintiffs with respect to those defendants?

             6           MR. FROMSON:  Your Honor, as a matter of fact, I spoke

             7    with Mr. Higgins this morning.  There is at least one pro se

             8    plaintiff who has an action against defendant Teva.  Other than

             9    that, I believe the remainder of the plaintiffs are represented

    09:17   10    by counsel.  And so I know my firm --

            11           JUDGE SOROKIN:  Are those plaintiffs separate from all

            12    the plaintiffs we've been talking about all along?

            13           MR. FROMSON:  Some are, most are not.  For example,

            14    the Teva cases that I have with Mr. Higgins' office I believe

            15    are within the Finkelstein 40.

            16           JUDGE SOROKIN:  I see.

            17           MR. FROMSON:  So while there's still the general

            18    discovery schedule that goes through July of 2011 after

            19    dispositive motions --

    09:18   20           JUDGE SOROKIN:  I thought it was December of 2010 for

            21    discovery and June 2011 for end of summary judgment.

            22           MR. FROMSON:  Correct, July, I might be off by a

            23    month.

            24           JUDGE SARIS:  I'm actually having palpitations.  Is

            25    this going to be summary judgment motions that's cross-cutting

```
 1    with gabapentin?
 2              MR. FROMSON:  Yes, liability --
 3              JUDGE SARIS:  That's something that we will have to
 4    deal with it before sending it back because that's a
 5    cross-cutting issue.
 6              MR. FROMSON:  Under the current scheduling order that
 7    we have, correct, your Honor.
 8              JUDGE SARIS:  That's a sixth bucket that I haven't
 9    even thought about.
09:18 10           MR. FROMSON:  Fortunately, we've been able to identify
11    that the discovery is far less complicated.
12              JUDGE SARIS:  So do we have a deadline for filing the
13    summary judgment?
14              MR. FROMSON:  We have a complete schedule for the
15    remaining generic --
16              JUDGE SARIS:  And when is that filing?
17              JUDGE SOROKIN:  It's done on June 24th, the last
18    brief.
19              JUDGE SARIS:  The last --
09:19 20           JUDGE SOROKIN:  The reply or sur-reply.
21              JUDGE SARIS:  Here's my staffing issue, which is now
22    I'm now on my third law clerk or more since we started with the
23    cross-cutting issues, and so I don't want to start on yet a
24    fourth.  So if we get it in in June, we could probably finish
25    it in the three months, but I don't want it to skip again.
```

```
 1          MR. FROMSON:  I understand, Judge.  And Judge Sorokin
 2     is completely accurate, our notes say the replies to
 3     dispositive motions are due June 24, 2011.
 4          So I hope that's responsive to your question about how
 5     many cases there are that are pro se plaintiffs against generic
 6     defendants.
 7          JUDGE SOROKIN:  So what I need -- when we are done --
 8     the 40 go back, the 40 that are done go back; the 40 other
 9     cases we've got a schedule for, which we'll memorialize; the
10     pro se cases we have a schedule, which we'll memorialize;
11     the -- there are cases that are already done and dismissed,
12     those are done; and that leaves, putting aside the Boone and
13     Schwartz cases, the question I had were there other people who
14     have individual cases against the gabapentin defendants that
15     aren't already covered by these schedules?  In other words,
16     when we're done with everything else, will we then discover
17     there's a bunch of products liability cases of individual cases
18     that need template discovery or need depositions or need to go
19     back or something?
20          MR. FROMSON:  I know of one case off the top of my
21     head called Hamilton, which is an individual product liability
22     case brought by my law firm, the Finkelstein Law Firm, in which
23     there are multiple defendants, including Johnson & Johnson and
24     Pfizer.  So that isn't yet subject to a scheduling order
25     because it wasn't filed until the summer of 2010.
```

1          JUDGE SARIS:  It involves gabapentin?

2          MR. FROMSON:  It involves Pfizer's Neurontin and

3    Johnson & Johnson's Topamax, and it may also involve one other

4    defendant.

5          JUDGE SARIS:  Why do I have it?

6          MR. FROMSON:  Because it's a Pfizer case in the

7    complaint involving a suicidality claim, so it's really no

8    different in the terms of claims being made, it's just

9    additional --

09:21 10          JUDGE SARIS:  It's huge, Topamax is a different drug.

11          MR. FROMSON:  Yes, it is.  Same claims, same

12    meta-analysis from the FDA, so it was brought here.  But if it

13    gets transferred and remanded, you know, it is what it is, your

14    Honor.  It's here.

15          JUDGE SARIS:  Maybe even severed, but let's -- when

16    will I know about that?  Should we set up a separate schedule

17    on that?

18          MR. FROMSON:  I'm not -- I have no problem with that,

19    Judge, that's fine with me.  I'm sure I could confer with

09:21 20    defense counsel, Johnson & Johnson.

21          JUDGE SARIS:  Let's just do a separate schedule on

22    that one, if you don't --

23          MR. FROMSON:  I'll confer with defendants and have

24    something proposed to the Court, Judge.

25          JUDGE SARIS:  I should make a decision -- that's a

```
 1   whole different drug.  We had two weeks' worth of hearings
 2   on -- who's that British guy --
 3           MR. CHEFFO:  Professor Trimble.
 4           JUDGE SARIS:  Topamax --
 5           MR. FROMSON:  When we filed the case, your Honor, it
 6   was transferred.
 7           JUDGE SARIS:  I'm not faulting anyone.  This is why
 8   we're doing this.  This is good.  All right.  So we'll just
 9   figure that out.
10           JUDGE SOROKIN:  That would be the only other one?  Is
11   that the only other one?
12           MR. FROMSON:  There may be a second, but I think it's
13   simply a Pfizer case.
14           JUDGE SOROKIN:  Any of the cases brought against the
15   gabapentin people, the plaintiffs, in terms of their individual
16   discovery, they're already in one of these other buckets.
17           MR. FROMSON:  That's my understanding.
18           JUDGE SARIS:  The one involving Johnson & Johnson, is
19   that a Massachusetts case?
20           MR. FROMSON:  Your Honor, it was filed in United
21   States District Court in Texas and then was transferred here.
22           JUDGE SARIS:  I see.
23           MR. FROMSON:  There are -- just for additional
24   information, there are two other litigations in the country in
25   state courts, so we are coordinating the discovery --
```

1          JUDGE SARIS:  On the Johnson & Johnson drug?

2          MR. FROMSON:  Yes.  So the discovery is 90 percent

3     complete already in that litigation.  Dispositive motion

4     practice is --

5          JUDGE SARIS:  Has the judge dealt with any Daubert

6     motions?

7          MR. FROMSON:  Filed in January or February in the

8     state of New Jersey.  So it's already going to be done well

9     before any federal judge has to handle it.

09:23 10          JUDGE SOROKIN:  I think that leaves the Boone and

11    Schwartz cases.  Let me summarize where I understand things are

12    in those two cases based upon what you filed.

13          As to the Schwartz cases, there were six in the first

14    wave of 130, and as to Boone there were 10 in the first wave of

15    130.  My understanding is that those 16 cases are not

16    dismissed, not gone pro se, not ready to be transferred,

17    discovery is incomplete.  And by my review of the filing, those

18    are the only 16 cases in the first wave of 130 that are in that

19    status.

09:23 20          Second, I set a schedule in the summer or in the

21    spring -- in June of 2010 that directed -- notwithstanding the

22    fact, in my view, template discovery was supposed to already

23    have been completed, that provided for rolling template

24    discovery beginning in July where every two weeks a certain

25    number of Schwartz cases and a certain number of Boone cases

1    would be done with the paper template discovery that would

2    result in all of the paper template discovery in those cases

3    being completed by January of 2011.

4         And third, I provided that the parties would begin

5    depositions in the Boone and Schwartz cases in November.  My

6    recollection is 15 days of deposition in the Boone cases each

7    month and was it 10 days of deposition in the -- 15 and 15.

8    Fifteen days for Boone and 15 days for Schwartz of days of

9    depositions, and I did it that way because I thought not all

09:24 10   these depositions are all-day depositions, you might be able to

11   do two or three in a day rather than specifying the number

12   of -- the latest updates I have, as to the Schwartz cases, no

13   depositions occurred in November, but there was a filing from

14   Mr. Schwartz' law firm indicating they were reviewing their

15   cases to see whether there were cases that after this stage of

16   the discovery they wanted to dismiss or withdraw from,

17   therefore, it might be more efficient to not do the depositions

18   in October -- I mean in November and allow them to do that

19   review.  And the question I have for Mr. London (sic.) is

09:25 20   what's the status of that?

21        On the Boone cases, I have from you, Mr. Cheffo, that

22   no depositions occurred in November.  I have from Mr. Boone --

23   or as of November 24th no depositions had occurred.  I have

24   from Mr. Boone that several depositions, something in the

25   neighborhood of three to five depositions, occurred in November

1   at the beginning of November in his cases but nothing near 15

2   days of depositions.  And so I want -- I guess the question I

3   have in addition to the question for you, Mr. London, (sic.)

4   the question for both of you is why are we where we are, where

5   the ones in the first 130 aren't done, unlike all the other

6   cases from all the other law firms, and why aren't these other

7   cases moving forward?  And what are you inviting me -- it's

8   inviting me issue further orders that are going to result

9   potentially in dismissal of your cases if the discovery is not

09:26 10   done.  So I guess the question is for both of you:  What are

11   you going to do and where are we?

12        MR. HARANG:  Your Honor, I think that I can answer on

13   behalf of ours.  As of now, there are 87 sets of discovery that

14   have been done, 20 that are in the mill and should be out

15   within the next 10 days.  There have been 10 plaintiffs'

16   depositions, five prescribers' depositions --

17        JUDGE SOROKIN:  In November.

18        MR. HARANG:  No, this is before November.  Seven

19   plaintiffs, two subscribers' depositions, and the rest of the

09:26 20   depositions -- that was the beginning of November, your Honor.

21   They were delayed because of that agreement.  We have

22   depositions scheduled for 10 plaintiffs, five prescriber

23   depositions so far in December, and those are going forward.

24        JUDGE SARIS:  You have 15 days of depositions

25   scheduled in December?

```
 1          MR. HARANG:  That's my understanding, you Honor, I
 2   believe that's 15 people.  It's actually turning out to be more
 3   than that.  The plaintiffs' depositions that we've taken so far
 4   are extending over to that second day, so --
 5          JUDGE SARIS:  What happened to the six cases in the
 6   first wave?  Why aren't they done?
 7          MR. HARANG:  The six cases in the initial wave, your
 8   Honor, we have two of those that are going to be -- or should
 9   be dismissed out of the initial bellwether plaintiffs, I
10   believe that was the grouping on that.
11          JUDGE SOROKIN:  All right.  What about the other four?
12          MR. HARANG:  Your Honor, I don't have a note on that
13   and I should and I apologize.
14          JUDGE SOROKIN:  All right.
15          JUDGE SARIS:  So what we're contemplating is
16   essentially a cutoff.  Basically if you haven't done them,
17   we're going to dismiss the cases.
18          MR. HARANG:  Yes, ma'am, we understand that.  And we
19   had 121 active claims.  We had about 23 individuals that we
20   were just unable to contact.  We finally have hired a better
21   skip tracing company and have located all but three of those
22   people.  Discovery is out to those and that should be back and
23   that will complete all of our plaintiffs.
24          JUDGE SARIS:  Whatever is not done by the deadlines he
25   sets I am dismissing.
```

```
 1              MR. HARANG:  Absolutely, your Honor.

 2              JUDGE SARIS:  I mean, I don't want to say if somebody

 3       got sick or something, but basically at this point it's going

 4       to be perceived as a lack of prosecution.  These cases have

 5       been pending a very, very, very long time.

 6              As you know, I have to leave in a few minutes.  Before

 7       I do that, if I can just interject for a minute.  Is there

 8       anything other than discovery that I owe all of you?

 9              MR. HARANG:  I'm sorry, your Honor, I couldn't hear

09:28 10       you.

11              JUDGE SARIS:  Is --

12              MR. FROMSON:  Your Honor, you still have pending

13       before you ECF number 2121, which is product liability

14       plaintiffs' motion to preclude Dr. Gibbons.  That is fully

15       submitted, you had referenced it at the previous conference.

16              JUDGE SARIS:  All right.  That is still alive, the

17       papers are still -- are current?

18              MR. FROMSON:  Yes, your Honor.  Defense counsel only

19       recently, within the last month or so, had submitted some

09:29 20       additional I'll call it persuasive authority.  And that is

21       submitted for you.

22              JUDGE SARIS:  So other than that, there's nothing.

23              MR. FROMSON:  That's my understanding, Judge.

24              JUDGE SARIS:  Okay.  Technically it's actually not

25       even pending because I think somehow Judge Young wiped it off
```

1    the books, but I will take it as current.  I was sort of hoping

2    that there would be some bellwether -- not bellwether -- either

3    a bellwether trial or a global settlement.  I'm taking by the

4    fact you're sitting here that did not work out.

5         MR. FINKELSTEIN:  In that regard, we have had

6    discussions, we have had mediation.  Recently I've communicated

7    with Mr. Cheffo.  We've communicated as the MDL liaison with

8    all other counsel and we've presented -- which I would prefer

9    remain confidential -- just a recommendation for a global

09:30 10    resolution for all of the matters.  That was done recently, and

11    I don't want to speak for Mr. Cheffo, but it was communicated

12    to me they're taking it under advisement, they are going to get

13    back to us.  So we're making efforts.  Whether it will be

14    fruitful or not, I can't report that yet, but we certainly are

15    making efforts.

16         JUDGE SARIS:  Not that I'm not eager to wade back into

17    the statistical recommendation of Dr. Gibbons, but let me ask

18    you this -- I don't want do it if there's some serious

19    possibility of a settlement.  When we will know that?

09:30 20         MR. CHEFFO:  I think we'll no know it soon, your

21    Honor.

22         JUDGE SARIS:  Why don't we go off the record for a

23    minute.

24         (Discussion off the record.)

25         JUDGE SARIS:  Judge Sorokin and I talked about what to

1    do with the Boone and Schwartz cases, and I'm going to leave it

2    now to talk about the rest of those.  I am looking to finish

3    this case within what I learned and live by this clerkship

4    year.  I think that's in everybody's interest as well, from my

5    point of view, wrapping up this MDL.  I'm hoping on the sales

6    and marketing side as well.  There isn't much left there.

7              MR. CHEFFO:  Our condolences, your Honor.

8              JUDGE SARIS:  Thank you.

9              THE CLERK:  All rise.

09:34 10       (Judge Saris left the courtroom.)

11             JUDGE SOROKIN:  You may be seated.

12             Mr. Boone, anything you want to say?

13             MR. BOONE:  Yes.  I was hoping to say something to

14   Judge Saris, but I understand she has to leave.

15             What I want to say about our plaintiffs, the November

16   deadline plaintiffs, we started off with 15 plaintiffs, three

17   of those plaintiffs we dismissed already, so that left 12

18   plaintiffs.  Additional two plaintiffs we are going to dismiss,

19   that's going to be Shoemaker and the Estate of Smith, but I

09:34 20   have to get the authority from the client.  So actually down to

21   10 plaintiffs.  Of those 10 plaintiffs each of those plaintiffs

22   have actually been deposed, and the prescribers for those

23   plaintiffs have also been deposed.

24             Now, it's been indicated in the report these cases are

25   not ready to be transferred, but --

1          JUDGE SOROKIN:  We're now talking about the ten cases

2     you have in the first wave.

3          MR. BOONE:  Yes, yes, yes.

4          JUDGE SOROKIN:  So two or three are dismissed as of

5     now and two more you're going to dismiss.  That leaves five out

6     of those ten.

7          MR. BOONE:  It was 15 to begin with.

8          JUDGE SOROKIN:  Fifteen you had in the first wave?

9          MR. BOONE:  Yes.

09:35 10          JUDGE SOROKIN:  All right.

11          MR. BOONE:  So that would leave 10.  And I believe

12     that those 10 have been deposed and the prescribers for those

13     ten have been deposed.  We have proposed for deposition dates

14     for sales representatives relating to those ten, and one of the

15     reasons we haven't had the sales representative is in part

16     because we didn't get the sales rep info on some of these ten

17     plaintiffs until -- in November, for example, we got the

18     information relating to Duvall and Scott and Trim, which are

19     all November case, we got that November 11th.

09:36 20          JUDGE SOROKIN:  We're still talking about the 10 cases

21     in the first 130 wave.

22          MR. BOONE:  If I understood Judge Saris when she said

23     that those who were not complete she was going to recommend she

24     was going to dismiss them, if that's what I understood her to

25     say --

1          JUDGE SOROKIN:  I think you understood her very

2     clearly.

3          MR. BOONE:  Okay.  Then that's exactly why I want to

4     say to your Honor we have been very active in our tent.  I

5     don't know if they're properly categorized as not being

6     completed.

7          JUDGE SOROKIN:  So let me just explain so you

8     understand.

9          What we're intending to do is this:  As to the 10 -- I

09:37 10    thought it was 10 total in the 130, maybe it was 15, 15 -- as

11    to your 15 cases there and as to all of your others that are

12    subject to that separate schedule, the one that had rolling

13    paper discovery for beginning in July, ending in January,

14    depositions beginning in November, is do the following:  Set --

15    and I'll memorialize this in an order -- set a drop-dead date

16    for paper discovery.  Because my read of the record is that --

17    I'm sorry.  A drop-dead date for paper discovery by which if

18    it's not done, it will be dismissed.  There will be two dates.

19    There will be one date for all those cases for which paper

09:37 20    discovery should have been done by November 30th, which would

21    be the 10 cases and all the ones on the rolling list through

22    November.  There will be a separate, later drop-dead date for

23    January 30th for those cases which are December and January on

24    your paper discovery.  If they're not done by that date, then

25    it's the intention of the court to dismiss them, and it will so

1  say in the order.

2       The reason I'm doing that is because, essentially, I

3  believe, based on what's been submitted to me, there might be a

4  dispute as to whether or not the paper discovery has been done.

5  The defendants have filed something that indicates that in

6  their view the paper discovery is incomplete in various ways,

7  and so you said in your filing that some of the discovery --

8  you can't do the depositions in some cases fairly and fully and

9  completely because you have incomplete discovery, incomplete

09:38 10  discovery has been provided.  I'm not going to adjudicate that

11  dispute today, all right, but the time for incomplete and

12  responses to template discovery is long passed.  My

13  recollection is that a long time ago Mr. Fromson,

14  Mr. Finkelstein, and Mr. Rouhandeh were before me and we had a

15  hearing about what the template discovery should look like.  My

16  recollection was that hearing was in the fall of 2005.  It was

17  no later than 2006.  That was years ago, and I think I issued

18  an order way back when that said that cases had 60 days to do

19  the template discovery, 60 days either from the date of my

09:39 20  order or the date the case arrived here, whichever was later.

21  That 60 days is long passed.

22       I then, in deference to counsel on the 130 -- I don't

23  know that I set another schedule on the 130 because you were

24  all moving along on that, but I did in the Boone and Schwartz

25  cases, notwithstanding the fact that Mr. Boone, you, and

1    Mr. Schwartz blew right past that 60-day deadline by several

2    years.  I set this rolling schedule.  The time now is done.

3            So I'm going to set those drop-dead dates and then

4    what I'm expecting is if there's a case that you think the

5    discovery is incomplete, then you'll tell me.  Defendants will

6    tell me, they'll file a motion pursuant to the order to dismiss

7    it, explaining it wasn't done or it wasn't done satisfactorily

8    and explain why, you'll get the chance to respond, and we'll

9    look at it.  If it's not done right, it's going to be gone.

09:40  10           I think you heard Judge Saris quite clearly.  That

11   would apply to the Boone cases and that would apply to the

12   Schwartz cases.  Those are the only ones that I see that the

13   discovery is not done.

14           So that's in terms of the paper discovery.  In terms

15   of the depositions in those cases, my view of it is 15 days or

16   15 depositions, whichever is greater, every month.  I think

17   that was pretty clear in my other order.  So I read what you

18   gave me, Mr. Boone, and I will tell you that my response was

19   you didn't do 15 depositions, you didn't do 15 days, and that

09:40  20   may be -- I don't know if that's on your shoulders or on

21   defense counsel's shoulders, but it seems that the problem

22   seems to crop up mostly in your cases, and so that is -- raises

23   a question mark.  But that's what has to be done.

24           MR. BOONE:  And I believe we did -- I think it's six

25   depositions in November, through November 15.  We had the

1    hearing scheduled for November 19, and depositions --

2             JUDGE SOROKIN:  You didn't schedule through the three

3    days, I understand it, didn't schedule any through

4    Thanksgiving, and I don't expect you to have depositions over

5    Thanksgiving.  But you recall we had a discussion in the

6    spring.  Do you recollect that discussion?

7             MR. BOONE:  Oh, yes, your Honor.

8             JUDGE SOROKIN:  And do you remember that I said to you

9    that I thought the schedule you and Mr. Cheffo proposed was

09:41 10   wholly unrealistic, that you would be in depositions for five

11   years was my calculation.  And although you didn't seem to

12   blush at the prospect of being in depositions for five years

13   without collecting any money on any of these cases, because

14   you're not going to collect any money unless you settle or win,

15   you're not going to win until you finish discovery, you

16   proposed that schedule to me.  I didn't accept it because I

17   thought that was a schedule that really was just wholly

18   impractical.  I set this schedule because I thought it was more

19   practical, and you told me that you would do it.  And so the

09:42 20   only way these -- you have undertaken to represent these

21   people.  If these people -- if we were sitting in Mississippi,

22   I'd be contemplating ordering all of those people to come in to

23   report for full review of the status of their cases.  I'm not

24   going to make those people in Mississippi travel to Boston, I

25   think that would be unfair to them.

1          You have a lot of cases, Mr. Boone.  You've agreed to

2     a schedule that I imagine is taxing to Mr. Cheffo.  Mr. Cheffo

3     is at a large law firm with, I imagine, an army or two of

4     lawyers who can do those depositions.  I don't think Mr. Cheffo

5     is doing all these depositions himself.  And you, I'm assuming,

6     are doing all these depositions yourself.  You're signing on

7     for a huge task, but understand that your clients' rights are

8     at stake.  If these deadlines and schedules aren't met, these

9     cases will be dismissed.

09:43 10          MR. BOONE:  I understand, your Honor, and I'm

11     saying -- your Honor, aside from the November schedule, we have

12     met every deposition that has been scheduled between counsel,

13     counsel opposite and my law firm.  November, for reasons

14     previously discussed, we did take six and holidays and travel

15     days.  That's why --

16          JUDGE SOROKIN:  So to the extent isn't clear, let me

17     explain what I understand an order of the Court to be.  When I

18     order something to be done, I expect it to be done.  If the

19     parties can't meet the order, then what I expect is people to

09:43 20     file a motion.  If you file a motion and say to me -- or

21     something, at least while it wasn't done in the -- it doesn't

22     sound like it was all done in the Schwartz cases, what was

23     filed was a notice that there was an agreement between the

24     parties based on the fact that they were reviewing their cases

25     and they were going to dismiss some cases.  That's reasonable.

```
 1    That makes sense.  I understand a brief respite from the
 2    deposition schedule in order to review the cases to dismiss
 3    them.
 4         You sat in front of me and told me, if I remember,
 5    Mr. Schwartz, (sic.) that notwithstanding the Finkelstein law
 6    firm had a smaller number of cases drawn from the entire
 7    country and was dismissing large numbers of them, you told me
 8    in April in May you saw no reason and no basis to dismiss or
 9    withdraw from any of your cases, notwithstanding the fact you
10    have a much larger number of cases all from Mississippi.  So
11    you were representing to me in federal court that you reviewed
12    those cases, they were fine, ready to proceed.  Well, here you
13    are.  So then you've got to do them.  If you're not going to do
14    what Mr. Finkelstein and his law firm did, you're not going to
15    do what Mr. Schwartz did, you've got to meet them.  If for some
16    reason you can't do the 15 days in December, then I expect you
17    to file a motion and explain to me why.  If you have an
18    agreement with the other side, I'm obviously more likely to
19    agree to it if there's an agreement and there's a good reason
20    to do it.  But, essentially, there's a schedule of 15 days of
21    depositions a month, and I'm expecting that to be met.  And,
22    you know, we'll see where we are once we're done with the paper
23    discovery.
24         There are other cases we're transferring back without
25    the depositions being done, but I'll be honest with you so you
```

```
 1   will all understand that it's not our inclination to send the

 2   Boone and Schwartz cases back without the depositions being

 3   done, for one reason:  It seems unfair to hand two or three

 4   hundred cases to one district judge with all the level of

 5   depositions that need to be done and all the problems that have

 6   arisen and just dump it on them.  So at least at the moment

 7   that's not what we're anticipating.  Obviously depends as what

 8   develops, but -- yes, Mr. Cheffo.

 9           MR. CHEFFO:  I just wanted to respond to a few things,

10   your Honor.  I know this isn't a motion to compel, and

11   certainly I'm not asking for a ruling, but I just feel -- I

12   just want to at least state our position briefly with respect

13   to Mr. Boone's perhaps -- we've tried to talk informally about

14   this, but maybe there's been a lack of communication on that.

15           You know, I think there's two different issues, as

16   your Honor knows, between producing someone for a deposition

17   and producing paper discovery and producing discovery that's

18   compliant with the rulings.  And I think, as your Honor knows,

19   we haven't been here on these type of issues with largely,

20   certainly, Mr. Finkelstein and even Mr. Schwartz' firms.  We've

21   had some issues, but for the most part we've seen, you know,

22   what I think is a good faith effort to comply.  And I'm not

23   suggesting that Mr. Boone's not acting in good faith, but it's

24   one thing to basically have a plaintiff come and not produce

25   any records, not do any template discovery and then have to
```

```
 1    come back again.  The same thing with the template discovery, a
 2    few pages, that's wholly inadequate.  The whole idea that we
 3    can't take prescribers, here's why:  Because you've ordered, as
 4    I think the template is supposed to produce 10 years of
 5    provider information, including prescribers, largely most of
 6    these people have one or two providers who are not even the
 7    prescriber.  So we get there and we find out those aren't even
 8    the people who prescribed.  We can't produce sales reps unless
 9    we know who the prescribers are.  So this isn't a motion to
10    compel, but that's a litany of problems that we've had.
11              JUDGE SOROKIN:  Thank you.  That's helpful.  It
12    potentially raises two issues that I want you to appreciate.
13    One is that discovery has to be done in compliance.  It's not
14    enough to send a form to a plaintiff in a case like this and
15    say give me this information and get back a little bit of
16    information that upon thoughtful review somebody experienced in
17    this case would know is not complete and just turn it over to
18    the other side.  It's incumbent on you as counsel to ensure
19    that it's complete discovery.  That means you need to
20    communicate with that person, talk to them, go over it, ask the
21    kind of thoughtful and probing questions that counsel ordinary
22    ask or should ask of their clients in the course of document
23    production or response to paper discovery so that there's a
24    reasonable likelihood that it is complete.  I recognize that
25    it's possible in this kind of case that individual issues will
```

1    arise in an individual case about whether it's all done, and I

2    would imagine that those kinds of issues have arisen in the

3    Schwartz and Finkelstein and other cases, and my experience has

4    been those have been largely resolved because I haven't seen

5    them and it all went through discovery.  But if it doesn't look

6    like it's complete, it probably isn't.  And it raises -- the

7    two issue it raises is, one, the issue that the discovery needs

8    to be completed, and if it's not, the cases will be dismissed.

9          It raises a second issue of concern for you,

09:48 10   Mr. Boone.  At some point you're sort of representing that, in

11   fact, it is done when you turn it over.  I just want to tell

12   you this, that it raises the concern I never like to see a

13   lawyer in the position where they're exposing personally

14   themselves to the Court for a possible sanction, but I have to

15   tell you that if you're repeatedly -- if you undertake a large

16   number of cases that seems unrealistic to undertake and you

17   profess the ability to do it and then you proceed and then

18   there seems to be what Mr. Cheffo is talking about -- and I

19   don't know this is the case -- but what he's indicating might

09:49 20   be the case, potentially large-scale inadequate discovery

21   responses, all right, that could be a problem.

22          Now, I'm not saying that is the case right now, all

23   right, and you may have a different view of it, but understand

24   that you're the plaintiffs' counsel.  It's your job to get the

25   discovery done so that the case can move forward to

       1    depositions.  And, you know, it may be that Pfizer is asking

       2    for too much.  If that's the defense, that's a defense, I'll

       3    look at it.  But understand that, you know, that template

       4    discovery was worked out a long time ago.  I haven't had a

       5    single motion, I don't think, in the course of five years

       6    disputing the scope of the template discovery, and I don't

       7    expect that I would look very seriously at such a motion at

       8    this stage.  So it's being done, that's the template, that's

       9    what has to be done, one has to do it.  And it's not sufficient

09:50 10    to say here's a medical authorization and I remember one

      11    provider who didn't prescribe Neurontin and I'm done.  So keep

      12    that in mind.

      13          MR. BOONE:  Yes, your Honor.  I think the Court would

      14    probably need to look at these on a case-by-case basis because

      15    we do disagree with the characterization that's been made.  We

      16    have submitted template discovery responses and supplemented

      17    most of those.

      18          JUDGE SOROKIN:  All right.

      19          MR. BOONE:  But we can bring them to the Court.

09:51 20          JUDGE SOROKIN:  I intend to look at them.  I think

      21    it's going to require a case-by-case determination, and what

      22    I'm expecting after the drop-dead date is one motion from you

      23    that outlines any cases you're dissatisfied with, the general

      24    law, case by case each one, and then you'll respond with the

      25    general law and then a case-by-case response.  And then I'll

1    decide.  And I understand you'll be telling me you think you've

2    complied so you're confident that none of your cases will be

3    dismissed on that basis.

4         MR. BOONE:  I'm not saying that we're perfect, I'm

5    saying there --

6         JUDGE SOROKIN:  No, I didn't ask for that.

7         MR. BOONE:  Yes, but I think -- certainly I think the

8    Court will get a different impression once the Court sees we

9    have supplemented.

09:51 10         JUDGE SOROKIN:  Do you think you have fully complied?

11         MR. BOONE:  Your Honor, I think we complied with the

12    information that were available to us.  There may be

13    information that our client did not have and did not give and

14    we could not make it available to the defendant.  But we have

15    been fully compliant with what was available to us.

16         The other thing I would say, your Honor, since we last

17    met our cases are down by 100.  So 100 of those cases are gone,

18    either we dismissed them voluntarily or motion to withdraw or

19    when your Honor recommended --

09:52 20         JUDGE SOROKIN:  Can I make a suggestion -- that's

21    great.  I appreciate that finally, Mr. Boone, you're

22    recognizing that some sense.  What I don't understand, to be

23    honest, with you, Mr. Boone, is why back in April, May, and

24    June when we had those discussions you couldn't have done that

25    then rather than putting the Court and all of counsel through

1    the time, labor, and expense and then dismiss them later when I

2    think what was fairly obvious to everyone else in the room was

3    a lot of your cases were probably appropriate for dismissal.

4         So just food for thought.  In other words, it's better

5    to be proactive and sensible than it is after the fact.

6         MR. BOONE:  I agree with you.

7         JUDGE SOROKIN:  I appreciate, nonetheless, that if in

8    your judgment the cases aren't appropriate to proceed that you

9    are dismissing them and talking to your clients about it.

09:52 10        MR. BOONE:  And we're still looking at that.

11        JUDGE SOROKIN:  Is there anything else?

12        MR. CHEFFO:  Your Honor, there is just one other --

13   sorry, I didn't mean to interrupt.

14        Again, I know we hear, all of us, loud and clear, and

15   I think we agree that the Court's looking, both you and Judge

16   Saris, to kind of get this to a point where it can be resolved.

17   But here's the one but.  You know, this is from Mr. Boone's

18   complaint.  Now, if he decides that he's going to amend it or

19   there's going to be different issues -- but the claims here

09:53 20   include -- and this is just kind of a standard complaint,

21   there's a suicide, so certainly from a Daubert perspective

22   we've beaten that horse.  But A through H, memory loss, liver

23   failure, kidney failure, heart attack, stroke, high blood

24   pressure, other injuries.  And when you go through this kind

25   of -- he has this list of -- kind of a chart, I guess, from

1    interviews of his people, what it was prescribed for, heartbeat

2    fast -- I'm just kind of picking these at random -- kidney

3    problems, nervous, panicky, depression.  There's like -- about

4    20 different disease endpoints that are other than suicide --

5         JUDGE SOROKIN:  In other words, Neurontin instead of

6    causing suicide caused liver problems.

7         MR. CHEFFO:  Or heartbeat fast, which have never been

8    subject to Daubert challenges.  So it's just another issue that

9    either if those are claims he's going to proceed with 200 or

09:54 10   some-odd cases, I think that we'd have to have another round of

11   Daubert or he's going to decide that these -- and there's

12   probably even a bigger one.  A lot of these cases -- in his

13   initial --

14        JUDGE SOROKIN:  See what he has to say.

15        MR. CHEFFO:  I'm sorry?  Yeah.

16        MR. BOONE:  Your Honor, we're only pursuing the

17   suicidality issues, suicide, attempted suicide, suicide

18   ideation.

19        JUDGE SOROKIN:  Not liver failure, none of those other

09:54 20   things.

21        MR. BOONE:  None of those other things.

22        JUDGE SOROKIN:  So why don't you talk to Mr. Cheffo --

23        MR. BOONE:  I'll be happy to.

24        JUDGE SOROKIN:  -- and work out some filing that

25   you're going to do that makes clear on the record and the

1    docket that those aren't being pursued, then that resolves your

2    issue.

3              MR. CHEFFO:  It does, with the one caveat -- I don't

4    want to take up the Court's time, certainly Mr. Boone and I can

5    talk about this.  I think Judge Saris raised this -- we all

6    understand the completed suicide and the suicide attempts --

7    the concept of suicide ideation.  In other words, in a lot of

8    these form template discovery there was never any indication.

9    There's been some supplements and some of the plaintiffs have

09:55 10    said I didn't attempt suicide, I certainly didn't commit

11    suicide if they're being deposed, but I had a suicide ideation.

12    You know, the issue of whether that's compensable --

13              JUDGE SOROKIN:  As to the other issues, you're going

14    to work it out --

15              MR. CHEFFO:  Absolutely.

16              JUDGE SOROKIN:  -- on the record, they're gone.  You

17    can talk about this, but I think I will tell you in the end

18    that would be a question for Judge Saris.  But I think if it

19    weren't clear to you already I think it unlikely that in Judge

09:55 20    Saris' view that at this date in this MDL that now is the time

21    to be raising a new disease that requires a different set of

22    expert discovery.  And I don't want to speak for Judge Saris,

23    and in the end it would be her decision, but I think that we're

24    pretty far down the road in the case.  So if it's within the

25    expert discovery that's been done, that's one thing.  If it's

```
 1    not, that might be another thing.

 2              MR. CHEFFO:  Sure.

 3              JUDGE SOROKIN:  So I think you should talk to each

 4    other.  Then if you think it's outside the scope and Mr. Boone

 5    thinks it's -- is pressing it and either thinks it's within the

 6    scope or if it's outside the scope but thinks it nonetheless

 7    should be pressed, then I think the two of you -- one of you

 8    should file a motion to bring it to the Court's attention and

 9    the other can respond to the motion, and then we'll address it.

09:56 10              MR. CHEFFO:  That sounds perfectly reasonable.

11    Thanks.

12              JUDGE SOROKIN:  Anything else?

13              MR. FROMSON:  Your Honor, do you intend to have an ECF

14    summary of your orders?

15              JUDGE SOROKIN:  Yes.  I'm going to do something -- it

16    won't come today, but I'm going to do something I hope by the

17    end of the week and certainly by the end of next week that will

18    memorialize what we've mentioned here in regard to these

19    different buckets.  So I think you can -- you know essentially

09:56 20    what it's likely to look like, but you'll get it in writing.

21              MR. FROMSON:  Thank you.

22              JUDGE SOROKIN:  Are we going to do 15 days of

23    deposition in the Schwartz cases for December?

24              MR. CHEFFO:  I think we have that schedule, your

25    Honor.
```

1          JUDGE SOROKIN:  How about the Boone cases?

2          MR. BOONE:  In my report to the Court I had proposed

3     five, I believe --

4          JUDGE SOROKIN:  I'm not going to schedule the dates

5     and the people.  I'm just wondering whether 15 are ready to go

6     in your view?  You should talk to each other.  This is what I

7     expect in the Boone cases.  Either there's going to be 15 days

8     of depositions or at least 15 depositions, more if you can do

9     more than one a day, fine.  If you're unable to do that, either

09:57 10   you, Mr. Boone, because you're not available in that amount of

11    time, or you, Mr. Cheffo, because you don't feel there's that

12    many people that ready, then file something that tells me that.

13         MR. CHEFFO:  Sure.

14         JUDGE SOROKIN:  So either, Mr. Boone, you file a

15    motion to be relieved from the order because you can't do 15

16    days, or you, Mr. Cheffo, file something and say that there

17    aren't 15 cases that are ready and that he's proposed this and

18    why the ones he proposes aren't ready, and then you can respond

19    to it.  We'll see where we go.

09:58 20        All right.  Thank you very much.

21         (Discussion off the record.)

22         JUDGE SOROKIN:  I'm sorry, there is one other issue.

23    The Assurant plaintiffs, does this ring a bell?  They're in the

24    monthly status report, there's something about the Assurant

25    plaintiffs.  The case was stayed a long time ago.  This was

1    before your time in this case, Mr. Cheffo, in '05.  My

2    recollection, but I have not had a chance to look back at this,

3    is that the Assurant plaintiffs had a hybrid claim that was

4    both an antitrust claim that might be subject to a case in New

5    Jersey before Judge Hochberg --

6          MR. CHEFFO:  Right.

7          JUDGE SOROKIN:  -- and a sales and marketing case that

8    was within the MDL.  So I guess the question is, is there

9    something that we should be doing about Assurant?  You could

09:59 10    perhaps look into that.

11          MR. CHEFFO:  I'll look into it, your Honor.  I'm not

12    aware of it, but I'll look into it.

13          JUDGE SOROKIN:  I guess the other question related to

14    that is are there other -- we now know what the universe of

15    things to wrap up the products liability and Judge Saris is

16    aware of the Gibbons issue with respect to sales and marketing,

17    is there anything else that's out there that we ought to be

18    thinking about that needs resolution before the whole case is

19    wrapped up?

09:59 20          MR. CHEFFO:  The one thing that stands out, I mean, I

21    can say is probably certainly we know the Kaiser issue in post

22    trial, but certainly the Judge is aware of that.  But there is

23    the motion for the -- the plaintiffs' motion to reconsider the

24    class certification with respect to the bipolar is the only

25    thing I can really think of that's out there.

 1          JUDGE SOROKIN:  But if Judge Saris did Gibbons,

 2    resolved whatever Kaiser issues remain, that motion for

 3    reconsideration and we wrapped up all that we've talked about

 4    in the products liability cases here, would this MDL -- subject

 5    to whatever little things are left in the sales and

 6    marketing -- would this MDL be over?

 7          MR. CHEFFO:  I think the answer is yes.  I'm going to

 8    go back.  What's happened, there are a number of cases over the

 9    years that have been filed, particularly like sales and

10:00 10    marketing, third-party payor, nothing has been done.  The

11    Guardian case was recently dismissed.  I can take a look at how

12    many cases are still out there.

13          The answer is yes, they could probably resolve because

14    most of Judge Saris' rulings will apply to, I think --

15    particularly in the Guardian and Aetna ruling will likely apply

16    to third-party payor cases.

17          JUDGE SOROKIN:  All right.  Great.  Thanks.  We're

18    adjourned.

19          (Court adjourned at 10:00 01 a.m.)

20                - - - - - - - - - - - -

21

22

23

24

25

1                              CERTIFICATION

2              I certify that the foregoing is a correct transcript

3       of the record of proceedings in the above-entitled matter to

4       the best of my skill and ability.

5

6

7

8       /s/Debra M. Joyce                    December 6, 2010
        Debra M. Joyce, RMR, CRR             Date
9       Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25