UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: NEURONTIN MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1629<br><br>Master File No. 04-10981 |
| THIS DOCUMENT RELATES TO:<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA v. PFIZER INC., 04 CV 10739 (PBS)<br><br> and<br><br>AETNA, INC. V. PFIZER INC., 04 CV 10958 (PBS) | Judge Patti B. Saris<br>Mag. Judge Leo T. Sorokin |

**PLAINTIFF KAISER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TREBLED DAMAGES AND PREJUDGMENT INTEREST UNDER RICO, AND UPDATED PREJUDGMENT INTEREST UNDER THE UCL**

# **TABLE OF CONTENTS**

         **Page**

TABLE OF AUTHORITIES……………………………………………………………………..II

I.    FACTUAL BACKGROUND ........................................................................................... 2

II.   THE JURY'S RICO VERDICT MUST BE TREBLED ...................................................... 4

III.  AN AWARD OF PREJUDGMENT INTEREST ON THE RICO AWARD IS NECESSARY TO FULLY COMPENSATE KAISER .......................................................... 4

    A.   Prejudgment Interest Effectuates the Broad Remedial Purpose RICO ............................. 5

    B.   Prejudgment Interest Is Routinely Awarded to RICO Claims and Should Be Awarded to Kaiser Here ........................................................................................................ 6

IV.  PREJUDGMENT INTEREST AWARDED UNDER THE UCL SHOULD BE UPDATED TO THE DATE OF JUDGMENT ................................................................... 14

V.   CONCLUSION ............................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abou-Khadra v. Mahshie*,
    4 F.3d 1071 (2d Cir. 1993)..................................................................................................7

*Aetna Cas. & Sur. Co. of Ill. v. Levy*,
    No. 83-C-3566, 1985 WL 3766 (N.D. Ill. Nov. 7, 1985) ...............................................7, 8, 12

*Aetna Cas. Sur. Co. v. P & B Autobody*,
    43 F.3d 1546 (1st Cir. 1994)............................................................................................7, 8, 11

*Allstate Insurance Co. v. Palterovich*,
    653 F. Supp. 2d 1306 (S.D. Fla. 2009) .............................................................................7

*Argonaut Ins. Co. v. Town of Cloverdale*,
    699 F.2d 417 (7th Cir. 1983) ...........................................................................................6

*Businessland Rents, Inc. v. Brian Bros.*,91-C-0144,
    No. 91-C-0144, 1991 WL 249679 (N.D. Ill Nov. 14, 1991) ..........................................7

*City of Milwaukee v. Cement Div., Nat. Gypsum Co.*,
    515 U.S. 189 (1995)..........................................................................................................5

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
    No. 88-CV-3694, 1996 WL 510097 (E.D.N.Y. Sept. 5, 1996) .......................................7, 12

*Colon Velez v. Puerto Rico Marine Mgmt., Inc.*,
    957 F.2d 933 (1st Cir. 1992)............................................................................................12

*Cottrill v. Sparrow, Johnson & Ursillo, Inc.*,
    100 F.3d 220 (1st Cir. 1996)............................................................................................12

*D'Orange v. Feely*,
    894 F. Supp. 159 (S.D.N.Y. 1995)...................................................................................11

*D'Orange v. Feely*,
    No. 95-7904, 1996 WL 446254 (2d Cir. Aug. 8, 1996) ..................................................7, 8, 12

*Gorenstein Enter., Inc. v. Quality Care-U.S.A., Inc.*,
    874 F.2d 431 (7th Cir. 1989) ...........................................................................................6

*Laurenzano v. Blue Cross and Blue Shield of Mass., Inc. Ret. Income Trust*,
    191 F. Supp. 2d 223 (D. Mass. 2002) ..............................................................................10

*Liquid Air Corp. v. Rogers*,
 834 F.2d 1297 (7th Cir. 1987) ....................................................................................6, 7, 8

*Loeffler v. Frank*,
 486 U.S. 549 (1988)..............................................................................................................5

*Miltland Raleigh-Durham v. Myers*,
 840 F. Supp. 235 (S.D.N.Y. 1993).................................................................................7, 12

*Min v. Chung*,
 No. 86-7486, 1987 WL 14148 (E.D. Pa. Jul. 16, 1987) .........................................7, 13

*Monex Deposit Co. v. Gilliam*,
 No. SACV 09-287-JVS, 2010 WL 2349095 (C.D. Cal. Jun. 1, 2010) ......................7

*In re Neurontin Mktg. & Sales Practices Litig.*,
 No. 04-CV-10739-PBS, 2010 WL 4325225 (D. Mass. Nov. 3, 2010).......................2

*Osterneck v. Ernst & Whinney*,
 489 U.S. 169 (1989)..............................................................................................................5

*PacifiCare Health Systems, Inc., v. Book*,
 538 U.S. 401 (2003)..............................................................................................................6

*Platten v. HG Bermuda Exempted Ltd.*,
 437 F.3d 118 (1st Cir. 2006).............................................................................................4

*Radford Trust v. First Unum Life Ins. Co. of America*,
 321 F. Supp. 2d 226 (D. Mass. 2004) ..........................................................................10

*Rubin v. Donoghoe*,
 No. 05-CV-1644, 2006 WL 3254481 (D. Conn. Oct. 20, 2006) ..................7, 12, 13

*Sanders v. John Nuveen & Co.*,
 524 F.2d 1064 (7th Cir. 1975) .........................................................................................5

*Sedima, SPRL v. Imrex Co.*,
 473 U.S. 479 (1985)..............................................................................................................6

*Shearson/American Express Inc. v. McMahon*,
 482 U.S. 220 (1987)..............................................................................................................6

*Smith v. Jefferson Pilot Fin. Ins. Co.*,
 No. 07-10228, 2010 WL 818788 (D. Mass. Mar. 5, 2010) ................................9, 12

*Tri Component Prods. Corp. v. Benarroch*,
 No. 87-CIV-2351, 1988 WL 126560 (S.D.N.Y. Aug 5, 1988) ....................7, 12, 13

*West Virginia v. United States*,
   479 U.S. 305 (1987) ..........................................................................................................5

*Wickham Contracting Co. v. Local Union No. 3*,
   955 F.2d 831 (2d Cir. 1992) ..............................................................................................8

**STATUTES**

18 U.S.C. § 1961 ..................................................................................................................10

18 U.S.C. § 1964(c) ..........................................................................................................4, 11

California Business and Professions Code § 17200 ...............................................................2

Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 901(a), 84 Stat. 922
   (codified as 18 U.S.C. § 1961–1968 (1970)) ...............................................................10

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY 1296 (7th ed. 1999) ..................................................................6

Having prevailed under RICO, Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, "Kaiser") is entitled to a mandatory trebling of damages. Kaiser also should be awarded prejudgment interest on the trebled RICO award. Allowing Pfizer to retain the interest and reinvested profits that Pfizer earned on money that lawfully belonged to Kaiser would result in unjust enrichment. Moreover, all prejudgment interest awarded, under both RICO and the UCL, should be current to the date of judgment, and Kaiser submits two Tables that provide updated calculations for prejudgment interest depending on the date this Court enters judgment.

## I.   FACTUAL BACKGROUND

Kaiser, a non-profit charitable organization, is one of the largest integrated health care delivery systems in the United States with approximately 8.6 million members located in nine states. (Findings of Fact and Conclusions of Law dated November 3, 2010 ("UCL Findings"), at 5.)[1] Defendant Pfizer is one of the largest pharmaceutical companies in the world. (UCL Findings, at 9.)

On March 25, 2010, after a five-week trial, a federal jury found that Pfizer engaged in a RICO enterprise that committed mail and wire fraud by fraudulently marketing Neurontin for the following off-label indications: bipolar disorder, neuropathic pain, and migraine, and dosages over 1800 mg/day. The jury rendered a verdict in Plaintiffs' favor on those claims in the amount of $47,363,092. (UCL Findings, at 2-3.) The jury also returned an advisory verdict under California Business and Professions Code § 17200, more commonly known as the California Unfair Competition Law ("UCL"), finding that Pfizer engaged in fraudulent business acts or practices with respect to the same off-label indications and dosages over 1800 mg/day. The jury

---

[1] *In re Neurontin Mktg. & Sales Practices Litig.*, No. 04-CV-10739-PBS, 2010 WL 4325225 (D. Mass. Nov. 3, 2010).

also found that those fraudulent acts or practices caused Kaiser damages with respect to the money spent on those off-label indications.

On November 3, 2010, the Court issued its Findings of Fact and Conclusions of Law on the UCL claim. The Court independently found, consistent with the jury's advisory verdict, that Pfizer's conduct constituted fraudulent business acts or practices under the UCL with respect to the same off-label indications. The Court ordered Pfizer to pay Kaiser restitution in the base amount of $65,418,419 and awarded Kaiser prejudgment interest.[2] (UCL Findings, at 139-40.)

The Court's specific findings showed that Pfizer's fraud, both in the execution and the concealment after the fact, were deliberate. For example, with respect to bipolar and other mood disorders, the Court found: "Beginning in July 1998 when Parke-Davis obtained (and began to suppress) the <u>negative</u> results of the Pande trial, the defendants engaged in the fraudulent marketing of Neurontin for the treatment of bipolar disorder." (UCL Findings, at 39.) The Court further found that "Pfizer's failure to disclose lack of efficacy is particularly outrageous in the area of bipolar disorder where there was not a scrap of evidence supporting efficacy and where there were actual negative side effects of depression for certain segments of the population." (UCL Findings, at 111.) The Court also found that: "For bipolar disorder, plaintiffs have proven that defendants fraudulently concealed the facts underlying plaintiffs' UCL claims." (UCL Findings, at 116.)

The economist and expert witness retained by counsel for Kaiser, Dr. Raymond Hartman, has updated his previously submitted interest calculations through the present and into the

---

[2] Based on interest calculations submitted by Plaintiffs in June, the Court calculated interest on the amount of $65,418,419 of restitution to yield a total award, including interest, of $95,286,518. Because interest continued to accrue at the California statutory rate of 7% per annum after the time that Plaintiffs submitted their calculations and will continue to accrue at that rate up until the time of judgment, Plaintiffs have recalculated interest through various time periods and, as explained in Section IV, respectfully request that the Court update its award of interest through the date of judgment, based on the figures contained in Dr. Hartman's updated calculations. *See* Exh. A, Table 2 (Hartman Decl.).

3

beginning months of 2011 so that the Court can use the interest value closest to the actual date judgment is entered.  *See* Exh. A, Table 1.[3]  As explained in his declaration, Dr. Hartman calculated RICO interest by allocating the jury's damage award, trebled, pro-rata by indication, based on his damages calculations across the time periods this Court set forth in the UCL Findings.  *See* UCL Findings, at 27; Exh. A, notes to Table 1.  After damages were tallied by year, interest was calculated, using the prime rate on annual totals beginning in the year after the damages were incurred.  Exh. A, notes to Table 1.  Dr. Hartman used the same approach to update the UCL interest calculations except that he used the Court's UCL restitution figure instead of the jury's damages figure, and he used the statutory 7% simple interest rate instead of the prime rate.  Exh. A, notes to Table 2.  These calculations are conservative because they assume for purposes of calculating interest that no harm for any year accrued until December 31 of that year, whereas in reality harm accrued throughout the year.

## II.    THE JURY'S RICO VERDICT MUST BE TREBLED

Pursuant to the RICO statute, Kaiser "shall recover threefold the damages [it] sustains[.]" 18 U.S.C. § 1964(c).  The trebling of damages under RICO is mandatory.  *See Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 125 (1st Cir. 2006).  Accordingly, this Court is required to treble the amount of damages that Kaiser recovers under RICO, meaning that the jury's verdict of $47,363,092, trebled, equates to $142,089,276. (UCL Findings, at 3.)

## III.   AN AWARD OF PREJUDGMENT INTEREST ON THE RICO AWARD IS NECESSARY TO FULLY COMPENSATE KAISER

Kaiser is a non-profit charitable corporation and all monies received by Kaiser are reinvested for the benefit of both Kaiser members and the community at large.  Kaiser uses its

---

[3] Because of the size of the damages and restitution, and the amount of time involved between the fraud and the present, each additional month of interest is substantial, amounting to approximately $600,000 per month on the RICO award and approximately $400,000 per month on the UCL award.  *See* Exh. A, Tables 1&2.

4

revenue to fund: patient care, including for the uninsured; local community health centers; medical education; and Kaiser programs in local communities focusing on prevention, healthy eating, and environmental improvement. Kaiser should be awarded prejudgment interest because of the "particularly outrageous" way that Pfizer committed fraud and then concealed it. Pfizer fraudulently obtained money from Kaiser. This deprived Kaiser of interest on that money, and also deprived Kaiser, and, by extension, the community, of the use of that money.

### A.  Prejudgment Interest Effectuates the Broad Remedial Purpose RICO

An award of prejudgment interest is compensatory, intended to make the plaintiff whole, and is seen as "an element of complete compensation." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989); *Loeffler v. Frank*, 486 U.S. 549, 558 (1988); *West Virginia v. United States*, 479 U.S. 305, 310, and n.2 (1987). "The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss." *City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 195 (1995). The rationale for prejudgment interest has also been explained, in general, as follows:

> [I]f a defendant has deprived the plaintiff of a specific sum of money, he has also deprived the plaintiff of the interest which the money would have earned in the absence of defendant's breach of duty; unless the plaintiff is paid interest for the entire time that he is deprived of the use of his money, he will not receive full compensation.

*Sanders v. John Nuveen & Co.*, 524 F.2d 1064, 1075 (7th Cir. 1975), *vacated and remanded on other grounds*, 425 U.S. 929 (1976). If the defendant is allowed to retain interest earned from funds obtained unlawfully, it would be unjustly enriched. *See, e.g., Argonaut Ins. Co. v. Town of Cloverdale*, 699 F.2d 417, 421 (7th Cir. 1983).

Awarding prejudgment interest is consistent with and furthers the purposes of RICO. The Supreme Court has held that RICO's treble damages provision is compensatory in nature.

*See Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 241 (1987); *see also PacifiCare Health Systems, Inc., v. Book*, 538 U.S. 401, 406 (2003) (noting that "the treble-damages provision contained in RICO itself is remedial in nature" and criticizing the inattention of lower courts to that distinction.). In *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987), the Seventh Circuit affirmed a RICO award that included prejudgment interest, ruling that "[a] plaintiff injured by civil RICO violations deserves a 'complete recovery.'" *Liquid Air Corp.*, 834 F.2d at 1310, *quoting Carter v. Berger*, 777 F.2d 1173, 1176 (7th Cir. 1985); *see also Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 497-98 (1985) ("RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach . . . but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes[.]'").[4] Indeed, absent an award of prejudgment interest, liable defendants would have a strong incentive to delay. *See Gorenstein Enter., Inc. v. Quality Care-U.S.A., Inc.*, 874 F.2d 431, 436 (7th Cir. 1989) ("[P]rejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay"). An award of prejudgment interest would promote the remedial purposes of RICO, and should be applied in this case.

### B. Prejudgment Interest Is Routinely Awarded to RICO Claims and Should Be Awarded to Kaiser Here

It is well settled that prejudgment interest is discretionary and may be applied by the Court with respect to Kaiser's federal RICO claims. *See Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1571 (1st Cir. 1994) (noting that "prejudgment interest was properly awarded [by

---

[4] "Remedial" and "compensatory" are used interchangeably in the case law and in this Memorandum of Law. *See* BLACK'S LAW DICTIONARY 1296 (7th ed. 1999) ("Remedial" means "affording or proving a remedy" or "intended to correct, remove, or lessen a wrong, fault, or defect." . . . A "remedial law" is "a law providing a means to enforce rights or redress injuries.").

the court]"); *Abou-Khadra v. Mahshie*, 4 F.3d 1071, 1084 (2d Cir. 1993) ("[T]he district court had discretion as to whether to award such interest."), *citing Lodges 743 and 1746, Int'l Ass'n of Machinists v. United Aircraft Corp.*, 534 F.2d 422, 446 (2d Cir. 1975) ("Whether to award prejudgment interest in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts."), *cert. denied*, 429 U.S. 825 (1976).

Federal courts routinely exercise their discretion and award prejudgment interest in addition to RICO damages. *See D'Orange v. Feely*, No. 95-7904, 1996 WL 446254, at *4 (2d Cir. Aug. 8, 1996); *Aetna Cas. Sur. Co. v. P & B Autobody, supra*; *Liquid Air Corp. supra*; *Monex Deposit Co. v. Gilliam*, No. SACV 09-287-JVS, 2010 WL 2349095, at *8 (C.D. Cal. Jun. 1, 2010); *Allstate Insurance Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1328, 1333 (S.D. Fla. 2009); *Rubin v. Donoghoe*, 05-CV-1644, 2006 WL 3254481, at **11-12 (D. Conn. Oct. 20, 2006); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, No. 88-CV-3694, 1996 WL 510097, at *16 (E.D.N.Y. Sept. 5, 1996), *reversed on other grounds*, *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 243 (S.D.N.Y. 1993); *Businessland Rents, Inc. v. Brian Bros.,* No. 91-C-0144, 1991 WL 249679, at *7 (N.D. Ill Nov. 14, 1991); *Tri Component Prods. Corp. v. Benarroch*, No. 87-CIV-2351, 1988 WL 126560, at *7 (S.D.N.Y. Aug 5, 1988); *Min v. Chung*, No. 86-7486, 1987 WL 14148, at *1 (E.D. Pa. Jul. 16, 1987); *Aetna Cas. & Sur. Co. of Ill. v. Levy*, No. 83-C-3566, 1985 WL 3766, at *2 -3 (N.D. Ill. Nov. 7, 1985).[5] Awards of interest are also regularly upheld on appeal. *See Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d at 1572 (not disturbing award of interest on

---

[5] Of course, given that the decision whether to award prejudgment interest is committed to a court's sound discretion, other courts – as Defendants undoubtedly will detail – have refused to grant prejudgment interest on RICO claims. This variety means nothing more than that the decision is discretionary. Under the facts of this case, given, *inter alia*, the length of time during which Kaiser was deprived of its money, Kaiser believes that an exercise of discretion to award prejudgment interest is warranted.

trebled RICO award); *D'Orange,* 1996 WL 446254 at *4 (finding no error in award of prejudgment interest on trebled award); *Liquid Air Corp.*, 834 F.2d at 1310 (affirming award of prejudgment interest).[6]

The Second Circuit's analysis of whether to award prejudgment interest in similar contexts is instructive. *See Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831, 834-35 (2d Cir. 1992). In *Wickham*, the Second Circuit noted that its rulings on prejudgment interest followed "the Supreme Court's approach" and upheld an award "of prejudgment interest, notwithstanding the statute's silence on the subject of interest" whenever "the awards were fair, equitable and necessary to compensate the wronged party fully." As the Second Circuit explained:

> [The prejudgment] award should be a function of (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.

*Id*. (citations omitted).

Applying these factors to the instant case compels an award of prejudgment interest to Kaiser. First, there is a strong need to fully compensate Kaiser – a non-profit charitable corporation that provides medical care to millions of people – for actual damages suffered because Kaiser has been deprived for years and, in part, for over a decade, of the use of the money that Pfizer fraudulently caused Kaiser to spend on Neurontin. The amount of prejudgment interest needed to compensate Kaiser for this loss is substantial. Using the prime rate, which this Court found to be a reasonable measure earlier this year, *Smith v. Jefferson Pilot*

---

[6] A search of the case law reveals no appellate decisions reversing a district court's award of prejudgment interest in a RICO case.

*Fin. Ins. Co.*, No. 07-10228, 2010 WL 818788, at *3 (D. Mass. Mar. 5, 2010), the amount of prejudgment interest necessary to fully compensate Kaiser is over 53% of the damages.[7]

Second, considerations of fairness and the balance of equities strongly weigh in Kaiser's favor. Kaiser timely filed suit less than one year after the announcement of Pfizer's $430 million settlement with the government relating to the off-label marketing of Neurontin. Prior to that settlement, Pfizer had vigorously denied that *any* off-label marketing had taken place. Even once the instant fraud case was commenced, and up until and following trial, Pfizer never admitted that it had engaged in fraud, nor conceded that it had any liability. In fact, Pfizer rejected this Court's entreaty for mediation on October 6, 2006, claiming "further factual development would benefit the parties" even after the first of the suppressed studies (the Reckless study) became known.[8] (Letter from James P. Rouhandeh to Hon. Patti B. Saris dated October 6, 2006 (Docket No. 516)). It took years of discovery, nearly a dozen experts, and a five-plus week jury trial to identify all the suppressed studies and fully unravel the fraud. Even when there was "further factual development" of the record, Pfizer still showed no interest in expediting the litigation. In fact, just before trial, Pfizer sought to delay trial by seeking a transfer of venue. (*See* Defendants' Motion to Transfer Venue filed December 4, 2009, Docket No. 2193; Memorandum in Support of Motion to Transfer Venue, Docket No. 2194.) Pfizer was content to see this

---

[7] *See* Exh. A, Table 1 (interest through December 31, 2010 divided by damages equals 53.6%).

[8] At a motion hearing held before this Court on September 27, 2006, Pfizer's counsel admitted that Plaintiffs had discovered the existence of the Reckless study: "And for pain, all they do, the only theory that they have is, they *added this study... There's a study done by a fellow named Dr. Reckless*." (Tr. of Motion Hearing held on September 27, 2006 at 62:19-63:14) (emphasis added). Of course, Pfizer's counsel carefully avoided mentioning the negative POPP study, which Plaintiffs still hadn't discovered – to avoid alerting them to its existence. (*Id.*) Counsel also referred favorably to the Backonja "JAMA article," without directing the Court or plaintiffs' attention to the potential unblinding problems of the study or the loss of statistical significance if potentially unblinded patients were removed from the study that Plaintiffs would later uncover. Such colloquy illustrates the way that Pfizer continued to conceal the full extent of the fraud even during litigation.

litigation continue for as long as possible while it earned interest on money swindled from Kaiser.

Allowing Pfizer to retain the tens of millions of dollars in interest and re-invested capital that accrued on its fraudulent spoils would not only deprive Kaiser of complete compensation, it would also result in an unwarranted windfall to Pfizer. As Judge Young succinctly observed in an ERISA case,[9] the decision to award prejudgment interest is guided by "the concern [of] making the aggrieved party whole *and* with preventing unjust enrichment." *Radford Trust v. First Unum Life Ins. Co. of America*, 321 F. Supp. 2d 226, 252 (D. Mass. 2004), *reversed on other grounds*, 491 F.3d 21 (1st Cir. 2007) (emphasis added). For this reason, Judge Young held in *Radford* that there were "no special circumstances to justify a denial of prejudgment interest, and the long delay in [plaintiff's] receipt of benefits strongly favors awarding interest." *Id.*

Here, a failure to award prejudgment interest would reward Pfizer for its decade-long concealment of its Neurontin marketing fraud and the ensuing, protracted litigation that was necessary to expose it. Allowing Pfizer to retain the interest on Kaiser's money would unjustly enrich Pfizer and allow it to profit from its RICO enterprise in a manner that Congress did not contemplate. Indeed, Courts that have awarded prejudgment interest recognize RICO's propensity to under-compensate. *See Aetna Cas. Sur. Co.*, 43 F.3d at 1572, *citing Liquid Air Corp.* at 1310. Because RICO was anticipated in some instances to under-compensate, adding prejudgment interest in this case would not represent a windfall to Kaiser. To the contrary, not awarding prejudgment interest *would* be a windfall *to Pfizer*.

---

[9] The First Circuit has recognized that "by the time ERISA was enacted in 1974, the federal common law had recognized for over forty years that prejudgment interest is necessary to make a prevailing plaintiff whole." *Laurenzano v. Blue Cross and Blue Shield of Massachusetts, Inc. Retirement Income Trust*, 191 F. Supp. 2d 223, 234 (D. Mass. 2002). RICO was enacted just 4 years before ERISA. *See* Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 901(a), 84 Stat. 922 (codified as 18 U.S.C. § 1961–1968 (1970)).

The RICO scheme that caused harm to Kaiser dates back to at least 1996.  (*See* UCL Findings, at 2 ("Kaiser spent about $200 million on Neurontin from 1996 to 2004.").)  It has taken over a decade for Pfizer to be held accountable for the harm it has caused to Kaiser.  Under these circumstances, the need for prejudgment interest is clear.  For example, in *D'Orange v. Feely*, 894 F. Supp. 159 (S.D.N.Y. 1995), the defendant was found liable for a pattern of embezzlement that began roughly five years before trial and lasted "over a period of more than two and one-half years."  *D'Orange*, 894 F. Supp. at 161-163.  The court ruled that "the long period of time it has taken to hold [defendant] to account argues clearly for an award of prejudgment interest."  *Id.* at 163.  The court then went on to calculate that the defendant had "misappropriated $357,533, inclusive of interest," and "embezzled $96,328, inclusive of interest" and then trebled the entire amount pursuant to RICO, ruling that "[s]ince 18 U.S.C. § 1964(c) requires an award of treble damages, the awarded amounts must be increased respectively to $1,072,599 for the first scheme and $288,984 for the second."  *Id*., *aff'd*, 101 F.3d 1393 (2d Cir. 1996) (unpublished) (affirming district court's calculation of damages – including prejudgment interest on the entirety of the trebled award), *cert. denied*, 522 U.S. 919 (1997).

The same rationale applies here.  Pfizer caused harm to Kaiser for years and is only being held accountable now.  Kaiser should recover the interest it could have earned over this extensive period on the entire amount of the RICO award of $142,089,276.  *See also Tri Component Products Corp.,* 1988 WL 126560, at *7 (awarding prejudgment interest on entire trebled amount of RICO award); *Rubin*, 2006 WL 3254481 at **11-12 (granting application for prejudgment remedy that trebled principal and interest).  As explained above, *supra* at 2, Dr. Hartman calculated interest by allocating the jury's damage award, trebled, pro-rata by indication based on his damages calculations across the time periods this Court set forth in the UCL

Findings, and then used the prime rate on annual totals beginning in the year after the damages were incurred.[10]  Exh. A, notes to Table 1; s*ee also* UCL Findings, at 27.  Interest, calculated at the prime rate,[11] through December 31, 2010 on the $142,089,276 million RICO award is $76,237,185, for a RICO principal plus interest total amount of $218,326,461.  Exh. A, Table 1.  Interest is continuing to accrue at the rate of approximately $600,000 per month.  *Id.*[12]

---

[10] These calculations, as discussed above, are conservative because they assume for purposes of calculating interest that no harm for any year accrued until December 31 of that year, whereas in reality harm accrued throughout the entire year.

[11] Where a claim for prejudgment interest arises out of a federal statute such as RICO, federal law governs as to the applicable interest rate.  *Colon Velez v. Puerto Rico Marine Mgmt., Inc.*, 957 F.2d 933, 941 (1st Cir. 1992).  Although the federal postjudgment interest rate is authorized and defined by 18 U.S.C. § 1961, the rate of federal prejudgment interest is not determined by that statute.  Accordingly, this Court has discretion to select an appropriate interest rate, and may look to outside sources, including state law, for guidance.  *See Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 224-25 (1st Cir. 1996).  Kaiser proposes that the prime rate,  which Dr. Hartman states is a conservative estimate of the lost time value of money, is a reasonable rate to use in the present case.  *See* Exh. A, Table 1; *see also* Trial Tr. 3/8/2010 (Hartman) at 148:25-149:4; *Smith*, 2010 WL 818788, at *3.  Dr. Hartman offered testimony about both the amount of interest and the appropriate interest rate: "I used the prime rate because the injured party was somebody that the dollars that were forgone was something that they had to replace by, let's say, borrowing at a corporate rate. And the prime rate is conservative in that case."  Trial Tr. 3/8/2010 (Hartman) at 148:25 – 149:4 (discussing Trial Ex. 408-E).  According to *Forbes*, Pfizer's return on equity from total operations is 7%, which is higher than the prime rate.  *See Forbes.com, Pfizer Inc. (NYSE:PFE), Ratios and Returns*, available at http://finapps.forbes.com/finapps/jsp/finance/compinfo/Ratios.jsp?tkr=pfe (last visited Dec. 7, 2010).

[12] Defendants may argue – relying on decisions on interest that predate the Supreme Court's clarification in *PacifiCare* – that this Court, even if it were to grant interest, should only grant interest on the pre-trebled amount of the jury RICO verdict (i.e., $47,363,092).  While some courts have granted interest only on the pre-trebled amount, *see, e.g.*, *Aetna Cas. & Sur. Co. of Ill. v. Levy*, No. 83-cv-3566, 1985 WL 3766, **2-3 (N.D. Ill. Nov. 7, 1985), *Min v. Chung*, No. 86-cv-7486, 1987 WL 14148 (E.D. Pa. Jul. 16, 1987), the weight of authority  is on the side of awarding interest on the entire amount post-trebling, *see., e.g.*, *Aetna Cas. Sur. Co., at* 1572 (affirming award of interest on trebled amount), *D'Orange*, 1996 WL 446254, at *4 (2d Cir. Aug. 8, 1996) (same), *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, No. 88-cv-3694 1996 WL 510097, at *16 (E.D.N.Y. Sep. 5, 1996), reversed on other grounds, *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 243 (S.D.N.Y. 1993) (awarding interest based on trebled award), *Tri Component Prods. Corp. v. Benarroch*, No. 87-cv-2351, 1988 WL 126560 *7 (S.D.N.Y. Aug 5, 1988) (same), *Rubin v. Donoghoe*, No. 05-cv-16442006 WL 3254481 *11-12 (D. Conn. Oct. 20, 2006) (same).  If the Court were to award interest only based on the untrebled RICO award of $47,363,092, that interest, calculated at the prime rate, through December 31, 2010 is $25,412,395, for a total RICO principal plus interest amount of $167,501,671.  *See* Exh. A, notes to Table 1.

As this Court implicitly recognized when awarding interest on the UCL restitution award, failure to award interest has the perverse effect of allowing the wrongdoer to keep the time value of money that accrues on the ill-gotten gains, all of which should go to the victim to make the victim whole. In this case, an award of damages that fails to incorporate prejudgment interest would fall well short of achieving RICO's compensatory purpose, and would actually punish Kaiser for the depth and length of Pfizer's fraudulent concealment, and reward Pfizer for dragging out this case as long as possible.

Both this Court and the jury agreed that Pfizer's extensive pattern of telling lies and half-truths, all while concealing and suppressing the truth, not only injured Kaiser but also prevented it from learning the extent to which it was a victim of Defendants' fraud until well into this litigation. The scientific and marketing fraud relating to Neurontin was not fully known until it was revealed after years of protracted litigation. Kaiser had to fend off numerous motions and pursue years of contentious discovery before it could obtain a complete accounting and scientific appraisal and evaluation of Pfizer's unpublished or deceptively published negative studies. All the while, Pfizer was earning interest and re-investing its ill-gotten gains. Kaiser respectfully requests that this Court follow the long line of other courts that have awarded prejudgment interest to successful RICO plaintiffs. Only an award of prejudgment interest will ensure that Kaiser is fully compensated, and Pfizer is not rewarded for its "particularly outrageous" conduct.

Accordingly, Kaiser requests an award of prejudgment interest under RICO up to the date judgment is entered, which, if judgment were entered on December 31, 2010, would be $76,237,185, for a RICO principal plus interest award of $218,326,461.

## IV.  PREJUDGMENT INTEREST AWARDED UNDER THE UCL SHOULD BE UPDATED TO THE DATE OF JUDGMENT

The Court has already awarded Kaiser interest under the UCL. (UCL Findings, at 140.) Based on interest calculations submitted by Plaintiffs in June 2010, the Court calculated interest on the base amount of $65,418,419 of restitution to yield a total award, including interest, of $95,286,518. (UCL Findings, at 140.)  Because interest – equaling approximately $400,000 per month – continued to accrue (at the California statutory rate of 7% per annum) after the time that Plaintiffs submitted their calculations and will continue to accrue at that rate up until the time of judgment, Plaintiffs have recalculated interest through various time periods and respectfully request that the Court update its award of interest through the date of judgment, based on the figures contained in Dr. Hartman's updated calculations.  Exh. A, Table 2.[13]  Updating the UCL interest award using the Court's restitution under the UCL of $65,418,419 and the statutory 7% simple interest rate that the Court used to calculate interest on that award yields, as of December 31, 2010, interest of $37,059,858 and a UCL award of principal plus interest of $102,478,277. *Id*.

## V.  CONCLUSION

For the foregoing reasons, Kaiser respectfully requests that this Court treble the jury's $47,363,092 RICO award to $142,089,276, and award prejudgment interest on that award through the date of judgment which, if it were December 31, 2010, would be $76,237,185, for a total RICO award with interest of $218,326,461.  Kaiser also respectfully requests that this Court update the interest calculation on the UCL award through the date of judgment which, if it were December 31, 2010, would be $37,059,858, for a total UCL award with interest of $102,478,277.

---

[13] Dr. Hartman used the same approach to update the UCL interest calculations that he used to calculate the RICO interest, except that he used the Court's UCL restitution figure instead of the jury's damages figure and used the statutory 7% simple interest rate instead of the prime rate.  Exh. A, notes to Table 2.

|  |  |
|---|---|
| Dated:  December 10, 2010 | Respectfully submitted, |
|  | By:     */s/ Linda P. Nussbaum*<br>          Linda P. Nussbaum |
|  | Linda P. Nussbaum, Esq.<br>John D. Radice, Esq.<br>GRANT & EISENHOFER, P.A.<br>485 Lexington Avenue<br>New York, NY 10017 |
|  | *Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals* |

*Of Counsel*

Thomas M. Greene, Esq.
GREENE LLP
33 Broad Street, 5th Floor
Boston, MA 02109

Barry Himmelstein, Esq.
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Thomas M. Sobol, Esq.
HAGENS BERMAN SOBOL
  SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142