EXHIBIT H

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JULIA BISHOP and
KAREN JOHNSON,

    Plaintiffs,

v.                                            Case No. 8:02-cv-1533-T-30TBM

HOFFMANN-LA ROCHE, INC.,
et al.,

    Defendants.
_____/

**O R D E R**

THIS CAUSE is before the court on the **Plaintiffs' Motion for Sanctions Related to Document Inspection and Meet and Confer in Basel, Switzerland**[1] (Doc. 301) and Defendants' response (Doc. 318). By their motion, Plaintiffs seek an Order sanctioning each Defendant in this cause, pursuant to Rule 37(b) of the Federal Rules of Civil Procedure, for "their conduct in providing discovery." According to Plaintiffs, their motion is based upon the dilatory and misleading discovery tactics by all the Defendants. In particular, Plaintiffs contend that it results from events leading up to and culminating in a costly and time-consuming meet-and-confer session sanctioned by the court and held in Basel, Switzerland, on August 16, 2004. By Plaintiffs' account, five attorneys and an information technology specialist traveled to Switzerland on the false hope that there would be meaningful

---

[1] Filed in connection with this motion is the Affidavit of Plaintiffs' counsel, Michael J. Ryan. See (Doc. 302).

discussions on the process to be employed in conducting discovery of the so-called "Swiss Defendants," and for their perusal of some of the 6,600 laboratory notebooks represented to contain matters relevant to Accutane and this litigation, as well as an additional 225,000 documents that Defendants' counsel said were available for immediate review and copying. As set forth more fully in the motion and discussed at the hearing, Plaintiffs claim that they were prevented from having a meaningful conference because the Defendants refused to allow them to inspect any of the 6,600 laboratory notebooks as kept in the normal course of business, insisted upon an unworkable protocol requiring the Plaintiffs to identify the pertinent laboratory notebooks for review, withdrew almost all of the 225,000 documents originally said to be available for immediate review, and notified Plaintiffs that the animal studies and models were outside Switzerland and unavailable. Plaintiffs seek an Order directing that the Defendants (1) produce all future documents for inspection at the law offices of Plaintiffs' counsel in Fort Lauderdale, Florida, (2) scan all hard copy documents in-house, at their own expense, (3) review the laboratory notebooks and produce Accutane-related materials at Defendants' own expense, (4) reimburse the travel cost and time of sending five attorneys to Basel, Switzerland, (5) reimburse Plaintiffs' attorney's fees for bringing this motion, (6) pay the attorney's fees for the travel time to and from Switzerland, and (7) are sanctioned in any other manner deemed appropriate.

Defendants oppose Plaintiffs' motion. They contend that sanctions are not warranted because they conducted the meet-and-confer in Basel, Switzerland, in good faith and its

intended purpose was fully achieved.[2]  In Defendants' view, Plaintiffs brought their motion as a "tactical maneuver" designed to portray Defendants as uncooperative, and in doing so, Plaintiffs have misrepresented what occurred at the meet-and-confer in Switzerland. Additionally, Defendants take issue with Plaintiffs' motion practice as a whole, and urge the court to establish a case management program in which there is regular supervision by the court of the discovery process in this case.  A hearing on the motion and other discovery matters was conducted September 28, 2004.

Upon consideration, **Plaintiffs' Motion for Sanctions Related to Document Inspection and Meet and Confer in Basel, Switzerland** (Doc. 301) is **GRANTED**.  I find that the events surrounding the meet-and-confer conference in Switzerland to represent only the latest efforts on the part of the Defendants to delay Plaintiffs' discovery of the science of Accutane (related to the allegations in the Complaint), as well as Defendants' knowledge of the harmful psychological effects of its product, if any.  Well over one year ago, the court advised the Defendants that such discovery was appropriate, whether directed at the U.S. or the Swiss Defendants, in light of the allegations in the Complaint.[3]  See (Doc. 92 at 4-5).  The U.S. Defendants effectively delayed any meaningful production before and after this directive, apparently awaiting the court's ruling on the Swiss Defendants' motion to dismiss.

---

[2]According to Defendants, the intended purpose of the meet-and-confer was "to discuss the document production by the Swiss Defendants."  (Doc. 318 at 16).

[3]At the same time, the court advised the Plaintiffs that the scope of their requests was overbroad and needed to be narrowed.  With the court's approval, the parties have employed meet-and-confer conferences intended to narrow the scope of Plaintiffs' demands and to facilitate the production of discovery.

Since the denial of that motion, the Defendants' dilatory tactics have continued despite their counsel's repeated assurances to Plaintiffs and this court that they stood ready to provide millions of pages of discovery.[4] I find the events surrounding the conference in Switzerland the height of gamesmanship.

Here, the court had suggested a formal meet-and-confer conference in Switzerland for the purpose of the parties discussing and agreeing upon a plan for the discovery of the foreign documents. The meet-and-confer was to include a review of document so that informed decisions could be made. Not unreasonably, in light of the representations of Defendants' counsel, the court expected that the meet-and-confer would be conducted in good faith and would not be employed for purposes of further delay. It was not. In reality, what transpired was that Plaintiffs' counsel traveled, at great expense, to Switzerland only to find the agenda changed, "available" documents unavailable, and that the person most

---

[4]Despite the earlier meet-and-confer conferences and the assurances of Defendants' counsel, I find that little meaningful production under the agreements has actually occurred. At discovery hearings held in June and July 2004, Defendants' attorney, Mr. Griffinger, represented to the court that upwards of three million pages of discovery had been identified and that the foreign Defendants stood ready to produce laboratory notebooks and assorted other documents (totaling over one and a half million pages) immediately. Counsel's representations, contrasted by Plaintiffs' counsel's concern that discovery be meaningful and cost efficient, not just a "document dump," prompted the court to suggest another meet-and-confer conference, this time in Switzerland, where those most familiar with the available records, document storage, information technology, etc., were located, and where Plaintiffs could review such matters and the parties could make an informed decision about how to proceed. As Plaintiffs' counsel learned after traveling to Switzerland, and as this court now knows, Mr. Griffinger's representations were made recklessly. Indeed, it appears that neither Mr. Griffinger nor any other counsel of record had reviewed any of the documents said to be available before the court directed the conduct of the conference. After the conference was agreed to, Mr. Imbroscio claims to have reviewed the available documents and determined that they would not be produced. However, neither the court nor Plaintiffs' counsel were given the benefit of this determination before the conference.

knowledgeable and in control of the foreign documents discovery was Defendants' attorney, Mr. Imbroscio, who had remained behind in Washington, D.C., and participated in the meeting via telephone.[5]  If the costs of this trip to Plaintiffs' counsel were not so high and the continued delay in the discovery process before this court not so serious, these circumstances would be humorous.  They are not.

     Plaintiffs and this court were mislead.  Attorney Griffinger's representations before this court were misleading and, at a minimum, made with reckless disregard for the truth.  Mr. Griffinger is an experienced attorney who is very familiar with Accutane litigation and the discovery requests that have occurred in this and other courts.  His offer of three million documents to the Plaintiffs now appears to be exactly what Plaintiffs' counsel feared, a document dump.  His offer of 6,600 laboratory notebooks and a quarter million of other documents for immediate review was false and misleading.  His representations before this court were clearly intended to appease the court's concerns about the lack of production from the Swiss Defendants, regardless of their accuracy.  His actions in refusing to permit

---

[5]This is not to say that there was no benefit from the meet and confer.  Numerous other documents were assembled, many of them duplicates of matters already disclosed.  Plaintiffs' counsel did gain some insight into Defendants' information technology system.  They also learned for the first time of another database related to Accutane.  Thus, it was revealed that Defendants had a clinical trials database known as "RDR."  Remarkably, this data base, which Mr. Imbroscio concedes contains relevant and discoverable matters, was not previously revealed to the Plaintiffs despite their early interrogatory request that the Defendants identify all their databases related to Accutane.  Of course, this discovery only serves to underscore the dilatory tactics and "hide the ball" approach to discovery it is now apparent has been adopted by the Defendants.  I can find no excuse for the failure of the Defendants or their counsel to have identified this database in a timely fashion and, when given the opportunity at the hearing to explain this non disclosure, Mr. Imbroscio could not do so.

Plaintiffs' counsel to see even one laboratory notebook as it was kept in the ordinary course in Switzerland is unexplainable and inexcusable. As it now appears that Mr. Imbroscio is the person making the ultimate decisions about the foreign discovery, he is no less to blame for what occurred in Switzerland, even if he made no outright misrepresentations to the court beforehand.

The Swiss Defendants and their counsel have engaged in dilatory tactics designed to delay or even defeat Plaintiffs' discovery of matters relevant to this lawsuit. They have been aided and abetted by their American counterparts. In this instance, they have breached an agreed upon course of discovery and are appropriately sanctioned under Rule 37. I also conclude that sanctions are appropriate pursuant to this court's inherent supervisory authority over the integrity of it processes and, in particular here, its discovery processes. Whether sanctions flow from the court's inherent supervisory authority or the provisions of Rule 26 or 37, they are in order in this case. Accordingly, the sanctions that follow are imposed.

(1) Mr. Griffinger's permission to practice before this court *pro hac vice*, see (Doc. 125), is rescinded. He may no longer represent the Defendants in proceedings before this court;

(2) Plaintiffs' counsel are awarded the reasonable costs expended for the trip to Switzerland.[6]

(3) Plaintiffs' counsel are awarded the fees and costs associated with the instant motion;[7]

---

[6]Plaintiffs' counsel shall submit a itemization of costs including airfare, lodging and meals with all available backup documentation within twenty (20) days of the date of this Order.

[7]Plaintiffs' counsel shall submit a itemization of fees and costs within twenty (20) days of the date of this Order.

(4) Within <u>forty-five (45) days</u> of the date of this order, the Defendants shall produce to Plaintiffs all animal models and studies previously demanded by the Plaintiffs, as well as laboratory notebooks reflecting work done by Defendants' scientists, which are relevant to and within the scope of Plaintiffs' claim that Accutane is a dangerous and defective product; and

(5) Within <u>thirty (30) days</u> of the date of this order, the RDR database and other documents related to clinical trials of Accutane as previously requested by the Plaintiffs and relevant to and within the scope of their claim that Accutane is a dangerous and defective product shall be produced to the Plaintiffs.

Additionally, the court hereby orders Mr. Imbroscio to oversee the production made by the Swiss Defendants or other foreign affiliates and directs that he certify in writing at the conclusion of any of the productions that it was made after a diligent and thorough search and that the production is complete. Costs of such production shall be borne initially by the Defendants.

**Done and Ordered** in Tampa, Florida, this 30th day of September 2004.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable James S. Moody
Counsel of Record