# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

|  |  |
|---|---|
| In re:  NEURONTIN MARKETING, SALES | : MDL Docket No. 1629 |
| PRACTICES AND PRODUCTS | : |
| LIABILITY LITIGATION | : Master File No. 04-10981 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

|  |  |
|---|---|
| THIS DOCUMENT RELATES TO: | : Judge Patti B. Saris |
|  | : |
| ALL BOONE PRODUCT LIABILITY ACTIONS | : Magistrate Judge Leo T. Sorokin |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# MEMORANDUM IN SUPPORT OF DEFENDANTS'
# MOTION TO COMPEL COMPLETE DISCOVERY RESPONSES

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 4

ARGUMENT ...................................................................................................................... 10

I.     Global Deficiencies In Boone Plaintiffs' Discovery Responses ..................................... 10

     A.     Medical Providers ............................................................................................ 11

     B.     Medical Records ............................................................................................... 14

     C.     Other Authorizations And Records .................................................................. 15

     D.     Blank Or Evasive Responses ........................................................................... 16

     E.     Improper And Confusing Cross-Referencing .................................................. 17

     F.     Inapposite And Untimely Objections ............................................................... 19

     G.     Canned Answers To Individualized Questions ................................................ 19

     H.     Unapproved And Unilaterally-Imposed Time Limitations ............................... 21

     I.     Other Deficiencies .......................................................................................... 22

II.     Counsel Boone's Misconduct Has Prejudiced Pfizer ................................................... 23

     A.     Inherently Defective And Improper Forms ..................................................... 24

     B.     Concerns About Pervasive Spoliation ............................................................. 26

III.     Pfizer Should Be Awarded Its Reasonable Expenses In Bringing This Motion .............. 27

CONCLUSION ................................................................................................................... 28

CERTIFICATE OF SERVICE ............................................................................................ 29

# TABLE OF AUTHORITIES

## CASES

*Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19 (S.D.N.Y. 1995)........................22

*Caldwell v. Center for Correctional Health and Policy Studies, Inc.*, No. Civ. A.
    03-1464 GKIJMF, 2005 WL 1313507 (D.D.C. June 2, 2005)...................................22

*Green v. Wells Fargo Home Mortgage, Inc.*, No. 4:07CV01055-WRW, 2008 WL
    5423244 (E.D. Ark. Dec. 23, 2008).............................................................................10

*In re Family Dollar FLSA Litigation*, 3 2009 U.S. Dist. LEXIS 59165 (W.D.N.C.
    July 10, 2009) .................................................................................................................21

*John Doe HM v. City of Creve Coeur, Mo.*, No. 4:07CV00946 *ERW*, 2008 WL
    4104558 (E.D. Mo. Aug. 29, 2008) ..................................................................... 10, 11

*LaBounty v. McCoy*, 1991 WL 128735 (W.D.N.Y. 1991) .............................................22

*Samos Imex Corp. v. Nextel Communications, Inc.*, 194 F.3d 301 (1st Cir. 1999)...........23

## RULES

Fed. R. Civ. P. 26 advisory committee notes....................................................................24

Fed. R. Civ. P. 26(a)(1)......................................................................................................18

Fed. R. Civ. P. 26(g)(1)(A) ...............................................................................................23

Fed. R. Civ. P. 26(g)(3) .............................................................................................. 1, 23

Fed. R. Civ. P. 36(b) advisory committee notes ...............................................................29

Federal Rule of Civil Procedure 37(a)..................................................................................1

Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv) ..................................................................................10

Fed. R. Civ. P. 37(a)(4)............................................................................................... 10, 17

Fed. R. Civ. P. 37(a)(5)(A) ...............................................................................................29

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively, "Defendants" or "Pfizer") submit this memorandum in support of their Motion to Compel Plaintiffs represented by the Boone Law Firm (the "Boone Plaintiffs" or "Plaintiffs")[1] in accordance with this Court's December 6, 2010 Order and Federal Rule of Civil Procedure 37(a), and seek any additional relief this Court deems appropriate in accordance with Federal Rule of Civil Procedure 26(g)(3) and the Court's inherent authority.  This memorandum relates to the claims that are listed in Defendants' accompanying Motion to Compel.

## PRELIMINARY STATEMENT

The Neurontin litigation has been ongoing for many years and Plaintiffs were directed to comply with their basic discovery obligations several years ago.  Despite numerous warnings from this Court and multiple deficiency letters from Defendants, however, Plaintiffs have failed to produce full and complete discovery responses and materials.  Their minimal efforts and woefully incomplete discovery responses fall far short of meeting their obligations under the Federal Rules of Civil Procedure and the orders of this Court.  The serious deficiencies in Plaintiffs' discovery responses have prevented Pfizer from preparing its defense, preparing for depositions, pursuing follow-up discovery, and providing its own responses in case-specific discovery.

To compound these issues, Counsel Levi Boone improperly certified and repeatedly represented to the Court that his clients' responses to template discovery are complete and correct, despite blatant deficiencies and large gaps of missing information.  Some Plaintiffs have totally failed to provide any responses whatsoever to certain requests.  Some provided evasive answers, or crafted circuitous and unhelpful cross-references that only lead to other deficient answers.  Others have listed only one or two providers in their critical medical provider lists.

---

[1] Counsel Boone has represented that he will be dismissing approximately ten cases, and therefore Pfizer's motion applies only to those cases that remain.  If Mr. Boone ultimately does not dismiss these cases, however, Defendants reserve their right to move for an order compelling discovery from those Plaintiffs as well.

The majority of Plaintiffs have produced a mere handful of medical records.  Moreover, while the remaining Plaintiffs have provided authorizations for select medical records, many have not provided other types of authorizations needed to retrieve documents vital to preparing for depositions.  Counsel Boone also drafted identical "canned" answers that reappear in multiple Plaintiffs' responses to Interrogatories requesting individualized information, and the stock answers provided by Plaintiffs' counsel often conflict with previous handwritten responses, apparently provided by Plaintiffs themselves.  Given all the surrounding circumstances, no attorney could have reasonably and objectively determined in good faith that the hundreds of responses Mr. Boone certified on behalf of his clients were appropriate and complete.

Even more troubling, Counsel Boone's affirmative actions materially contributed to many of the deficiencies.  He sent his clients a defective fill-in-the-blank form that unilaterally and impermissibly altered the template Interrogatories which had previously been reviewed and sanctioned by this Court.  These unilaterally-altered forms modified the time periods applicable to certain disclosures and cynically did not leave enough room on the forms for Plaintiffs to answer the questions as presented.  Furthermore, it appears that Mr. Boone merely forwarded whatever responses that the Plaintiffs wrote down directly to Pfizer without reviewing or vetting them.  He did not inquire into or follow-up regarding Plaintiffs' handwritten answers provided in the forms – as one would expect of counsel.  Also, in several cases, deposition testimony revealed that Mr. Boone failed to communicate with his clients about their discovery obligations – a failure that almost certainly resulted in spoliation.  Furthermore, for reasons unknown to Pfizer, Plaintiffs' counsel produced discovery responses in 2010 that contained less and even inconsistent information than discovery responses produced for the same Plaintiffs in 2008.  Each of these actions, standing alone, has made it impossible for Pfizer or the Court to move the Boone cases forward, but considering them all together – and in light of Counsel Boone's long history of inaction and inattention to his hundreds of filed cases – the prejudice is significant.

With few exceptions, Plaintiffs' medical provider lists contain only a fraction of their total medical providers.  Some Boone Plaintiffs have completely failed to provide a medical

provider list.  Many Boone Plaintiffs have listed only one or two medical providers.  Based on Pfizer's experience in this litigation and the complicated health histories of most of the Plaintiffs, it is objectively unreasonable to conclude that a list with one or two medical providers is complete and accurate.  Indeed, in each of the depositions of Boone Plaintiffs that have been conducted, the deponent Plaintiffs  identified  numerous healthcare providers that had not been disclosed prior to the depositions.  Based on this track record with about ten depositions, Pfizer believes that the vast majority of the provider lists supplied by Boone Plaintiffs are substantially incomplete.

Equally important, the majority of Boone Plaintiffs' medical provider lists also *fail to explain which physicians prescribed Neurontin and the date ranges of the prescription periods*. As this Court has previously recognized, prescriber and date range information is critical to Pfizer's ability to respond to case-specific discovery.  Medical provider lists should contain the most fundamental information sought by Pfizer in discovery, and much of this information could have been obtained by Mr. Boone through a simple interview with Plaintiffs.  Indeed, Pfizer has been forced to identify providers for the first time at depositions.  Counsel Boone's failure to make a serious effort to retrieve this basic information from his clients before the depositions and in accordance with prior deadlines, has been prejudicial.

Additionally, while Plaintiffs have provided authorizations for medical records, a very significant number have failed to provide other required authorizations, including those for Social Security disability, employment, education, insurance, military service, and Medicaid and Medicare records.  Other plaintiffs' firms in this litigation have routinely supplied these authorizations, and the deadline for Boone Plaintiffs was July 7, 2010, or at least the same as the schedule for other template discovery.

Similarly, Plaintiffs clearly have not produced all responsive medical records.  The quantity of records supplied by Boone Plaintiffs is significantly lower than what has been produced by other firms.  The vast majority of Boone Plaintiffs have produced fewer than 100 pages of total documents.  Almost half of all Plaintiffs represented by Counsel Boone have

produced fewer than 20 pages of medical records in total. In contrast, Plaintiffs represented by other counsel have produced hundreds of pages on average and in some cases thousands of pages. It is highly unlikely that so few responsive medical records exist for Boone Plaintiffs, and it is clear that, if Plaintiffs had been given proper retention instructions, more responsive records would have been produced. In fact, some Plaintiffs have indicated at their depositions that they were actually in possession of materials that were never produced. In addition to violations of Plaintiffs' discovery duties, failing to preserve and produce records gives rise to concerns about spoliation. Some deposed Plaintiffs have indicated that they were never informed about their retention obligations in this litigation. Some even conceded that they may have destroyed discoverable items (such as medical calendars and empty Neurontin bottles) after filing their lawsuits because they were not told to save them.

The deficiencies in the individual disclosures are too numerous to outline in this memorandum. For the purposes of efficiency and for the Court's convenience examples of defects in individual cases will be outlined in greater detail in the attached Appendix.

Counsel Boone clearly has not engaged in the degree of diligence or expended the necessary resources required in cases of this nature and magnitude, and therefore Pfizer's motion to compel and any other appropriate relief should be granted.[2]

## BACKGROUND

Counsel Boone filed claims on behalf of over 300 Plaintiffs in Mississippi against Pfizer.

---

[2] While Pfizer intends to address this issue in a separate motion, the Court should be aware that Counsel Boone has recently retracted from his representations to the Court (on the record) that his clients would only be pursuing suicide-related claims. During the December 1, 2010 conference, Pfizer raised the issue with the Court that there would need to be another round of *Daubert* hearings if the Boone Plaintiffs were still alleging claims other than suicide-related injuries. (*See* Ex. K, Dec. 1, 2010, Status Conference Tr., at 35:12-36:13.) In response, Mr. Boone stated, "Your Honor, we're only pursuing the suicidality issues, suicide, attempted suicide, suicide ideation." (*Id.* at 36:16-18.) As such, the Court directed the parties to enter a filing establishing this agreement in the record. (*Id.* at 36:19-37:2.) On December 6, 2010, Pfizer sent Mr. Boone a draft stipulation memorializing his representations at the conference, but he refused to sign it because – contrary to his statements at the conference – he claimed, "we are still pursuing [claims related to] the ineffectiveness of the drug." (Ex. A, Dec. 7, 2010, L. Boone email.)

On multiple occasions, this Court has expressed "significant concern regarding the ability of the Boone Law Firm to handle the large number of plaintiffs it represents in this MDL." (Further Scheduling Order Regarding All Products Cases [2839], at 2.) Counsel Boone's conduct throughout this litigation has repeatedly validated the Court's concerns.

On June 19, 2006, this Court issued an order directing all Plaintiffs to provide responses to template discovery – subject to the Court's various rulings as to the parties' objections. (Discovery Order No. 2 [372], at 3-6.) In 2008, the Boone Plaintiffs forwarded Defendants some documents, which were "fill-in-the-blank" type forms created by Counsel Boone and sent to his Plaintiffs. These forms substantively changed the requests in the template Interrogatories served by Pfizer because Mr. Boone's form imposed time limitations contrary to the Court's order. In addition, his form did not provide enough free space for Plaintiffs to fully answer many of the Interrogatories. Further, it appears that Mr. Boone simply forwarded Pfizer copies of whatever handwritten answers his clients provided on these forms – without doing any further inquiry or making any effort to obtain complete information. Several other Boone Plaintiffs provided no discovery responses whatsoever at that time.

On November 9, 2007, the Court issued an order requiring all plaintiff's counsel, including Mr. Boone to submit documents in each case certifying the following: "(1) they have conferred with the individual plaintiff; (2) the plaintiff intends to proceed with the litigation . . . (3) they have reviewed the relevant medical records and allegations of the complaint and (4) plaintiffs' counsel believes pursuit of the action is warranted." (CMO & Order Regarding Motions to Withdraw [949], at 2-3 (emphasis added).) While his certifications were "incomplete or ambiguous," the Court still noted that Mr. Boone had certified that "pursuit of these plaintiffs claims [was] warranted." (R&R on Mot. to Dismiss [1500], at 2-3.)

On June 9, 2010, because Counsel Boone had "done nothing in this litigation beyond producing some of the template discovery on behalf of his clients," the Court set forth the timeframe for completion of initial discovery for Boone Plaintiffs. (Further Scheduling Order Regarding All Products Cases, at 3.) This Order directed that, beginning on July 15, 2010,

Boone Plaintiffs should produce template discovery responses for 20 Plaintiffs on the first and fifteenth of every month until template discovery was complete. (*Id.* at 5.) The Court also issued the following warning: "In light of . . . Attorney Boone's previous failure to comply with governing rules and orders, the Court directs him to pay particular attention to" the Court's warning "that the failure to comply with the Court's Orders set forth herein may result in dismissal of the claims of a plaintiff or of cases brought by counsel." (*Id.* at 6 (emphasis omitted).)[3]

Despite the Court's warnings, the discovery responses that Boone Plaintiffs subsequently provided were incomplete and lacked much of the critical information that Pfizer needed to proceed in discovery. Pfizer sent Mr. Boone multiple letters and e-mails explaining what information was missing and requesting that he provide them as soon as possible. (*See* Ex. B, Aug. 4, 2010 C. Stevens letter.)[4] Pfizer explained that Plaintiffs' responses, among other deficiencies, lacked complete medical provider lists, medical records, and other authorizations. Pfizer further explained that it would suffer prejudice because the deficiencies made "it difficult for Defendants to collect the relevant records necessary to complete Plaintiffs' depositions, and those of their prescribers, [and] also [made] it difficult for Defendants to comply with their own discovery obligations in these cases." (*Id.*)

---

[3] Over the course of the next couple of months, Counsel Boone's efforts to comply with the Court's deadlines were spotty at best. On July 12, 2010, the Court admonished Mr. Boone for filing an "incomplete" discovery chart and failing to provide certain medical disclosures. (*See* Further Order Regarding All Boone Cases [2886], at 2.) The Court gave Mr. Boone until July 23 to provide the missing medical authorizations, which ultimately resulted in the dismissal of 47 cases for failure to provide medical authorizations. (Aug. 11, 2010 Report and Recommendation [3025].) On August 10, 2010, Mr. Boone missed another deadline, and the Court levied a sanction of $500 on him. (Order of Sanctions [3031].) That order stated: "The Court need not detail every instance of Attorney Boone's failure to comply with Court Orders over the past several years of this litigation. . . . Attorney Boone's repeated failures to adhere to Court imposed deadlines not only delays the resolution of this matter; they also are a considerable drain on the Court's time and resources." (*Id.* at 1-2.)

[4] (*See also, e.g.*, Aug. 26, 2010 C. Stevens letter; Sept. 23, 2010 C. Stevens letter; Oct. 1, 2010 C. Stevens letter; Oct. 22, 2010 C. Stevens letter; Oct. 22, 2010 C. Stevens email; Oct. 27, 2010 C. Stevens letter; Nov. 23, 2010 C. Stevens letter.) All exhibits are attached to the accompanying Declaration of Mark S. Cheffo.

While the Boone Plaintiffs were still producing template discovery, the Court ordered that the parties begin depositions at the rate of fifteen days or depositions per month.[5] Pfizer went forward with the depositions in light of the Court's Order, but was at a substantial disadvantage by having to depose these Plaintiffs without adequate information about their medical providers, medical records, employment history, criminal history, and any disability history. Because Pfizer lacked enough medical and other records for a productive and complete deposition to occur, Defendants informed Counsel Boone that they may need to keep Plaintiffs' depositions open. (Nov. 23, 2010 C. Stevens letter to Mr. Boone; *see also* Aug. 12, 2010 C. Stevens email.)

At these depositions, as well as at those depositions ordered to be completed by November 15, 2010, Defendants came to appreciate the full extent of Plaintiffs' deficiencies. For example, while Plaintiff Catherine Duvall has consulted several mental health professionals, Pfizer had received no records for any mental health providers prior to her deposition or prior to the depositions of her prescribing physicians. During the deposition of Dr. Nathanial Brown, one of Ms. Duvall's physicians, Mr. Boone, during his examination, showed Dr. Brown copies of Delta Mental Health Center records from Ms. Duvall's psychiatric providers. (*See* Ex. C, Brown Dep. at 172:22-175:7.) These relevant documents had never been produced to Defendants, in clear violation of basic courtesies Court's orders. (*See* Discovery Order No. 2, at 3.)

At Plaintiff Deborah Watson's deposition, she testified that she "always get[s] a copy of [her] medical records" and that she had a whole box of medical records at her house but ***only some*** had been produced to Pfizer because she considered the rest to be her "personal business." (Ex. E, Watson Dep. at 9:22-13:6.) Defendants have not yet received any of these documents.

---

[5] Despite the Court's order that fifteen days of depositions take place in December, Mr. Boone recently sent defense counsel an e-mail representing that he would only be available to take depositions for seven days and one afternoon:  12/7, 12/8, 12/9, 12/10, 12/16 (afternoon), 12/27, 12/28, and 12/30. (Ex. D, Dec. 2, 2010, L. Boone email chain.)  Also of note, Counsel Boone agreed that the deposition of Plaintiff Elizabeth Knight should be conducted in December 2010, but Defendants subsequently learned that Ms. Knight had died almost three years ago.  (*Id.*)  Mr. Boone also recently rejected Defendants' attempt to take depositions on January 3, 10, 11, 12, 14, 17, 18, and 24.

Ms. Watson also named several medical providers by memory that had not been previously disclosed in her medical provider list.  (*See id.* at 20:1-27:9.)  Ms. Watson further testified that she has thrown away several empty Neurontin bottles since the beginning of this litigation, even though Request for Production No. 4 asked for "[e]ach bottle and label in Plaintiff's possession."

Similarly, Plaintiff Christopher Kyle's medical provider list contained only one medical provider, but he testified that he had probably seen about ten doctors during the relevant timeframe.  (*See* Ex. F, Kyle Dep. at 12:4-23:4.)  Plaintiff Kyle had not disclosed these other medical providers prior to the deposition despite a deficiency letter sent to Mr. Boone before the deposition asking for additional provider information.  (*See* Ex. G, Dec. 4, 2010 C. Stevens letter to Mr. Boone.)  Mr. Kyle further testified that he typically threw away documents that he got from his doctors and that no one has "ever told [him] to keep documents relating to [his] healthcare pertaining to this lawsuit."  (Kyle Dep. at 10:2-11.)  Of course, this Court has ordered that Plaintiffs "shall supplement the production as they receive medical records in the future." (Discovery Order No. 2, at 3.)

As another example, Plaintiff Jack Shoemaker initially provided no response to Interrogatory Nos. 6 (asking for whether he has ever consumed alcohol or used illegal drugs) and 13 (asking whether he was ever charged with or convicted of committing a crime).  (Ex. H, 2008 Shoemaker Resp. To Interrogs.)  Counsel Boone submitted additional responses for Mr. Shoemaker in 2010, but wrote "to be supplemented" in response to the question about criminal history and "No" in response to the question about drug and alcohol use.  (Ex. I, 2010 Shoemaker Resp. To Interrogs.)  Even a cursory interview with Mr. Shoemaker would have highlighted that the supplemental responses were deficient.  At Plaintiff Shoemaker's deposition, he conceded that he was arrested in 1992 for grand larceny, was convicted of driving under the influence ("DUI") charge and possession of marijuana in 1993, pled guilty to a DUI charge and operating a vehicle with a suspended license in 1994, plead guilty to criminal misdemeanor and petty larceny in 1995, was charged with killing animals in 1997, was arrested for a DUI charge and manslaughter in 2005, and pled guilty to manufacturing methamphetamines and was charged

with burglary in 2005.  (Ex. J, Shoemaker Dep. at 139:14-151:17.)  When defense counsel asked Plaintiff Shoemaker the reason he failed to disclose this information in response to template discovery, (after his counsel interjected with several baseless objections) Plaintiff could provide no explanation.  (*Id.* at 152:7-155:17.)  Mr. Shoemaker also testified that he thought he still had a bottle of Neurontin in his possession that had not been produced.  (*Id.* at 136:3-12.)  Moreover, the answer provided in his 2010 response to Interrogatory No. 11 stated that he "tried to overdose while taking Neurontin."  (2010 Shoemaker Resp. To Interrogs., Resp. No. 11)  Yet at his deposition, Plaintiff testified that he has never tried to overdose on drugs.  (Shoemaker Dep. at 135:12-18.)

On December 1, 2010, this Court held a status conference during which Pfizer raised the issue of inadequacies in Boone Plaintiffs' discovery responses.  Prior to this conference, Counsel Boone represented to the Court that it was finished with responding to discovery.  (Boone Pls.' Status Update [3134], at 3-4.)  The Court warned Mr. Boone that partially complete responses would not satisfy Plaintiffs' discovery obligations and aptly explained as follows:

> [D]iscovery has to be done in compliance.  ***It's not enough to send a form to a plaintiff in a case like this and say give me this information and get back a little bit of information that upon thoughtful review somebody experienced in this case would know is not complete and just turn it over to the other side.***  It's incumbent on [Mr. Boone] as counsel to ensure that it's complete discovery.  That means [he] need[s] to communicate with that person, talk to them, go over it, ask the kind of thoughtful and probing questions that counsel [ordinarily] ask or should ask of their clients in the course of document production or response to paper discovery so that there's a reasonable likelihood that it is complete.

(Ex. K, Dec. 1, 2010, Status Conference Tr. at 31:13-32:8 (emphasis added).)  On December 6, 2010, this Court issued the following ruling with regard to Boone Plaintiffs:

> Insofar as the [template discovery] responses are unsatisfactory or incomplete, Defendants may file a motion to compel.  Attorney Boone is cautioned, however, that the failure to produce all the discovery ordered by the Court in response to such motion to compel, within the time allotted by the Court, may result in dismissal as a sanction under Rule 37, and/or for violation of the Court's Orders or failure to prosecute.

(Dec. 6, 2010, Scheduling Order [3141], at ¶ 5.)  Despite these repeated warnings from the Court

and multiple letters sent by Pfizer requesting adequate responses, Mr. Boone still has not corrected numerous deficiencies. [6]   Accordingly, Pfizer has been forced to seek relief in accordance with this Court's December 6, 2010 Order.

## ARGUMENT[7]

### I.   Global Deficiencies In Boone Plaintiffs' Discovery Responses

The Federal Rules of Civil Procedure provide that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" against a party who fails to answer an Interrogatory pursuant to Rule 33 or produce materials requested under Rule 34.   Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv).   For the purposes of this Rule, incomplete responses are treated the same as failures to disclose, answer, or respond.   Fed. R. Civ. P. 37(a)(4).   Even though the Boone Plaintiffs have haphazardly provided some responses, these cases cannot sensibly proceed upon discovery responses that are incomplete.   *See, e.g., Green v. Wells Fargo Home Mortg., Inc.*, No. 4:07CV01055-WRW, 2008 WL 5423244, at *1 (E.D. Ark. Dec. 23, 2008) (granting motion to compel discovery where party responded to some but not all discovery requests); *John Doe HM v. City of Creve Coeur, Mo.*, No. 4:07CV00946 ERW, 2008 WL 4104558, at *1 (E.D. Mo. Aug. 29, 2008) (granting motion to compel where party untimely provided "wholly inadequate" discovery responses).   Mr. Boone's failure to procure and produce adequate information and materials has severely inhibited Defendants' ability to depose Plaintiffs, respond to Plaintiffs' discovery requests, and conduct further discovery.   Thus, this Court should issue an order compelling Plaintiffs to provide full and complete responses to

---

[6] While Mr. Boone has sent some supplementation of discover responses some cases – mainly cases with scheduled depositions - the responses remain untimely and largely deficient.

[7] Defendants have diligently and carefully tried to identify the Boone Plaintiffs' deficiencies as accurately and quickly as possible to meet the Court's deadline for filing a motion to compel. Plaintiffs' multiple inconsistencies in their responses and the breadth of the deficiencies made the task extremely labor intensive and difficult, and Defendants reserve the right to supplement this motion if additional information comes to light.  Mr. Boone's own failure to accurately provide dates of production for certain materials (instead providing approximations) in his discovery charts further complicates the issue, as does the fact that Mr. Boone at times indicates that certain materials have been produced, or are enclosed with a letter, but Defendants find otherwise.

Defendants' template discovery requests and supply full medical provider lists and other authorizations.

### A.      Medical Providers

Contrary to explicit instructions by this Court, the Boone Plaintiffs generally have failed to provide comprehensive lists of their medical providers.  This Court has ordered as follows:

> Each Plaintiff shall also produce a list identifying (1) his or her psychiatric medical providers for the twenty years preceding the date of the alleged incident; (2) his or her non-psychiatric medical providers for the ten/five year period defined in Plaintiffs' papers; and (3) each medical provider (doctors, social workers, psychologists, hospitals, etc.) from whom he or she has sought medical records, regardless of whether the requested records have been received.

(Discovery Order No. 2, at 3.)  The Court also instructed Plaintiffs to "*identify the physicians who prescribed Neurontin to them, as well as the date range(s) of each prescription period*."

(*Id.* at 4 (emphasis added).)[8]  Despite these clear directives, Boone Plaintiffs' medical provider lists are severely inadequate.

Some Boone Plaintiffs have disclosed no medical providers whatsoever, and many Boone Plaintiffs have disclosed only one or two providers.  Defendants' past experience in this litigation gives Defendants good reason to believe that the Boone Plaintiffs have seen far more medical providers in the last 10-20 years than those they have disclosed.  Furthermore, the majority of Boone Plaintiffs have *failed to identify which physicians prescribed Neurontin*, and the *vast majority have failed to provide the date ranges of each prescription period* – thus making it impossible for Pfizer to comply with its own discovery obligations.  In contrast, plaintiffs represented by other firms have supplied significantly more comprehensive provider lists and details about plaintiffs use of Neurontin than the Boone Plaintiffs.  (*Compare* Ex. L, Bennett (Finkelstein Plaintiff) Resp. to Interrogs., Resp. No 12, *with* Ex. M, Brown (Boone

---

[8] Additionally, Defendants' Interrogatory No. 12 requested, in part, that Plaintiffs "[i]dentify every health-care professional or facility that provided any type of consultation or care whatsoever to Plaintiff (whether mental or physical) over the last twenty years and identify the location where such consultation and/or treatment was rendered."

Plaintiff) Resp. to Interrogs., Resp. No 12.)   The Boone Plaintiffs' failure to provide this information may be the result of the modified form Mr. Boone sent to his clients.   While Defendants' template Interrogatory No. 14 asks, in part, for the name of the healthcare professional that prescribed the medication, Mr. Boone's form does not even elicit or leave room for the name of the prescriber.

Depositions to date of the Boone Plaintiffs have confirmed that their medical provider lists are incomplete.   The deposed Boone Plaintiffs recalled many more medical providers than they included in their discovery responses.   The following examples illustrate some of these discrepancies:

| Plaintiff | Disclosed in Plaintiff's Provider List or Interrogatory Responses | Identified For the First Time at Deposition |
|---|---|---|
| Watson, Deborah | (no provider list and no doctors listed in Interrogatory answers) | Dr. Mansour; Dr. Weiner; Dr. Traore; Dr. Brown; Dr. Hornsby; Dr. Clark; Dr. Morris; Dr. Meyers; Dr. Herzog; Dr. McCaffey; Dr. Moseley; Dr. Merbitz; Dr. Gambel; Dr. Frostingham; Dr. Tankly; Dr. Warrington; Dr. Brock; Dr. Wright; Dr. Dodson; Dr. Kelly; Dr. Aziz |
| Kyle, Christopher | Dr. Lawin; Dr. Stanford; Dr. Bryant; Dr. Holdiness; Dr. Sharock; Dr. Lee | Dr. Jackson; Dr. Porter; Dr. Seibel; Dr. Sumrall |
| Trim, Michael | Dr. Smith; Dr. Bishop; Dr. Russell; Dr. Summers; Dr. Joiner | Dr. Duncan; Dr. Pete; Dr. Bains; Dr. Parson; Dr. Virginia Blaylack |
| Scott, Vanessa | Dr. Hadidi; Dr. Besselievre | Dr. Yelldale; W. Brozovich; Dr. Payne; Dr. Dodson; Dr. Curry; Dr. Jackson; Dr. Duncan; Dr. Gobar |

Particularly after the first few depositions, it is difficult to believe that Counsel Boone could have interviewed his clients about their medical histories prior to certifying their discovery responses and then representing to the Court and Pfizer that they were complete.   (*See* Boone Pls.' Status Update, at 3-4.)   As a result, Defendants have wasted countless days and resources and must

conduct continued depositions of the Plaintiffs.

The absence of a complete medical provider list is particularly prejudicial to Defendants in these cases.  It has caused Defendants to struggle with identifying and locating prescribing physicians for Boone Plaintiffs.  Also, even though Plaintiffs have signed authorizations for some medical records, Plaintiffs' provider lists and other discovery responses are so inadequate that Pfizer can derive only minimal utility from such authorizations.  Additionally, considering that the Boone Plaintiffs are generally all from the same area, there is a great deal of overlap in the Neurontin prescribers amongst Plaintiffs.  If Mr. Boone provided comprehensive lists of prescribing physicians, then the parties should be able to cover a doctor's treatment of multiple Plaintiffs during a single day of depositions.  Otherwise, Pfizer will have to spend substantial resources to depose the same doctors over and over again in different cases – a frustrating and unhelpful result for both Defendants and the prescribing physicians.  The same would be true of sales representatives.

As noted above, these woefully incomplete medical provider lists have prevented Defendants from responding to Plaintiffs' discovery requests because they do not have the necessary information to search for responsive materials.  As this Court previously recognized, "a lot of [plaintiffs' discovery] requests *turn on the timing of various – of the prescriptions or who issued the prescriptions*."  (June 15, 2006 Status Conference Tr. at 12:9-18 (emphasis added).)  Without complete medical provider lists, and other discovery identifying the full names and addresses of physician(s) that prescribed Neurontin, and date ranges for each Neurontin prescription period or a date of injury, Pfizer cannot produce certain case-specific discovery.  In many cases, Plaintiffs have not even disclosed the name of the physician who prescribed Neurontin and identified him or her as a prescriber.  For example, Plaintiff Louisia Smith only provided the names and addresses for two doctors in her provider list:  Dr. Kenneth J. Hayles and Dr. Parvez Karim.  (Ex. N, Louisia Smith Provider List.)  Yet Defendants later learned through her pharmacy records that she had consulted three other doctors who prescribed her Neurontin, Dr. Jenkins, Dr. Sanders, and Dr. Wilkerson – none of whom appeared on Ms. Smith's medical

provider list.  (Ex. O, Smith Pharmacy Record.)  Even then, Pfizer could not locate the doctors or use this information because it only had the doctors' last names.  On three separate occasions, Pfizer wrote to Counsel Boone requesting these prescribing physicians' first names and addresses, but he never responded or provided that information.  (*See* Ex. P, Aug. 12, 2010 C. Stevens email; Sept. 30, 2010 C. Stevens email; Oct. 27, 2010, C. Stevens letter.)  Without a full name and address, Pfizer could not search for records.

These provider lists constitute some of the most basic information sought by Pfizer. Plaintiffs' failure to provide this information readily available to them has significantly impeded Pfizer's efforts to proceed in these cases.

**B.    Medical Records**

Defendants submit that Boone Plaintiffs have not supplied complete copies of medical records in accordance with the orders of this Court and their obligations under the Federal Rules of Civil Procedure.  In Discovery Order No. 2, this Court ordered that "Plaintiffs shall produce copies of all of the medical records currently in their possession and they shall supplement the production as they receive medical records in the future."  (Discovery Order No. 2, at 3.)  The Boone Plaintiffs have failed to obey this clear directive.  The small quantity of total documents produced by each Boone Plaintiff suggests that their productions are incomplete.  In approximately 180 cases (the vast majority), less than 100 pages have been produced by each individual Plaintiff.  In approximately 100 cases, the number of pages produced was less than 20 pages.  It is highly improbable that so few documents are responsive in each case, particularly given the amount of medical records that would likely come into the possession of each Plaintiff. The average number of pages that the Boone Plaintiffs have produced is noticeably smaller than the average amount produced in cases involving plaintiffs represented by other firms.

Furthermore, depositions of certain Boone Plaintiffs have indicated that other medical records in Plaintiffs' possession have not yet been produced.  As noted above, during the deposition of Dr. Brown, Plaintiff Duvall's physician, Mr. Boone attempted to use several undisclosed mental health records, (*see* Brown Dep. at 172:22-175:7), in violation of the Court's

14

orders.  (*See* Discovery Order No. 2, at 3.)   Additionally, Plaintiff Debra Ann Johnson has produced the same two pages of clinic notes twice, and the same two-page pharmacy list (limited to 2002 to 2004) three times, but has produced no other medical or pharmacy records.  Yet in Exhibit B to Plaintiff Johnson's Complaint she stated that has "been taking [Neurontin] since 2000 – still taking."  Thus, she obviously has medical and pharmacy records directly related to her medical condition and Neurontin that have not been produced.  Also, Plaintiff Deborah Watson testified regarding a box of medical records located at her house that had not been produced.  (*See* D. Watson Dep. at 9:22-13:6.)  She also testified that no one told her she was required to preserve her medical records.  (*Id.* at 10:11-13; *see also* Kyle Dep. at 10:19-25 (stating that no one has told him to retain medical records).)

The Boone Plaintiffs have not made a diligent attempt to satisfy their obligations to produce medical records in their possession, and therefore this Court should issue an order compelling them to do so.

### C.     Other Authorizations And Records

While the Boone Plaintiffs have submitted medical authorizations, many have failed to provide a myriad of other types of authorizations or to supply corresponding records.   In Discovery Order No. 2, this Court ruled that Plaintiffs should produce documents in the possession of educational or governmental entities as follows:

> (1) produce those documents in their possession that are responsive to Defendants' requests, as established by the Court's rulings below, (2) provide to Defendants a list that identifies all of the entities that are, or were, in possession of such documents, to the best of Plaintiffs' knowledge; and (3) ***produce appropriate release forms*** to the Defendants.

(Discovery Order No. 2, at 4, n.2 (emphasis added).)   Several categories of responsive documents would be in the possession of educational, governmental, or other entities.  These may include, but are not limited to, records related to Social Security disability, employment, education, insurance, military service, and Medicaid and Medicare.  These authorizations, or the corresponding records, have been routinely provided by other firms in this litigation.  However,

many Boone Plaintiffs have neither provided authorizations nor produced any responsive documents for these categories of records, which substantially impairs Pfizer's ability to prepare for Plaintiffs' depositions. Further, authorizations for employment and educational records are missing for the vast majority of Boone Plaintiffs. Thus, this Court should enter an order compelling Plaintiffs to provide the missing authorizations.

### D.     Blank Or Evasive Responses

In many instances, Plaintiffs have failed to provide any responses to Interrogatories, or they simply wrote an evasive response such as "don't recall" or "N/A." These failures to respond have prevented Defendants from obtaining very basic information prior to depositions. For example, while Plaintiff Vanessa Scott stated that she had no children in response to Interrogatory No. 1, Defendants learned at her deposition that she in fact does have children. (*Compare* Ex. Q, Scott Interrogatory Response, *with* Ex. R, Scott Dep. at 13:18-25.) She also failed to explained that her grandmother and brother lived with her in response to Interrogatory No. 2, and she failed to disclose her prior residence in Memphis, where she lived for eight years. (Scott Dep. at 16:4-25.) She simply put and "X" in response to Interrogatory No. 5, which in part asked about her participation in religious organizations, but testified at her deposition that she attends church. (*Id.* at 27:10-13.) Despite having much of this information, Plaintiff Scott failed to respond or crossed out Interrogatory Nos. 1, 5, 6, 7, 10, 11, 13, 24, and 25.

Plaintiffs cannot leave questions completely unanswered or simply supply evasive answers like "N/A" or "don't know."[9] These answers prevent Pfizer from obtaining some very basic information. Non-answers and evasive answers like "don't recall" are particularly inappropriate in light of the Court's Discovery Order No. 2, which gave specific instructions as

---

[9] For example, Plaintiff Carl Henry responded "N/A" to Interrogatory Nos. 6, 8, 9, 10, 11, 13, 16, 17 and 25. (*See* Ex. S, Henry Resp. to Interrogs.) Plaintiff Mae Hester wrote "n/a" in response to requests regarding her employment history, drug use and related treatment, psychiatric treatment, and criminal history. (*See* Ex. S, Hester Resp. to Interrogs.) Plaintiff Emma Gregory answered "don't know" to Interrogatory No. 1, which seeks information about her marriage date and location, and then provided no response whatsoever to the remaining 24 interrogatories. (*See* Ex. S, Gregory Resp. to Interrogs.)

to how to answer many of these particular Interrogatories. (*See, e.g.*, Disc. Order No. 2 at 6 (referencing Interrogatory Nos. 6, 10, 13, 24).)  Evasive answers also violate the Federal Rules of Civil Procedure, which provide that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

In addition to those evasive answers, many Boone Plaintiffs responded to requests by writing "to be supplemented," and such response prevents Pfizer from obtaining vital facts prior to depositions.[10]  For example, as noted above, Plaintiff Shoemaker wrote "to be supplemented" with regard to his criminal history, yet he never actually provided supplementation prior to his deposition, even though he turned out to have a fairly extensive arrest and substance abuse record.  At this late stage of the litigation, "to be supplemented" answers are completely unhelpful and should also "be treated as a failure to disclose, answer, or respond" under Rule 37(a)(4) and this Court's Orders.

### E.  Improper And Confusing Cross-Referencing

Boone Plaintiffs also employed cross-references that were inaccurate and otherwise unhelpful.  The following are just a few examples of where Plaintiffs improperly used cross-referencing to respond to Interrogatories:[11]

- Interrogatory No. 7:  Plaintiffs' responses to this Interrogatory, requesting the identities of persons with knowledge of the facts of the case and other information, solely refer to Interrogatory Nos. 4, 11, 12, and 14. Plaintiffs' reference to Response No. 11 is misplaced because Plaintiffs'

---

[10] For example, Plaintiff Darlene Stampley responded with "to be supplemented" as to Interrogatory Nos. 3, 4, 5, 13, 15, and 24.  Plaintiff John Staten responded "to be supplemented" to Interrogatory Nos. 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, and 15, and provided no response at all to Nos. 14, 18, 22, 24, and 25.  Plaintiff Dorian Taylor responded "to be supplemented" to Interrogatory Nos. 2, 4, 5, 6, 13, 15 and 24, provided no response at all to Nos. 3, 7, and 11, and responded "N/A" to Nos. 14, 17, 22, and 25.  Doris Toy solely responded "to be supplemented" to Interrogatory Nos. 2, 3, 4, 5, 6, 10, 11, 13, 15 and 24, provided no response at all to Interrogatory Nos. 7, 18, 22 and 25, and responded "N/A" to Interrogatory No. 17.

[11] Furthermore, the deficiencies in some Plaintiffs' responses are compounded by the fact that their Rule 26(a)(1) initial disclosures and responses Requests for Production also refer to and incorporate their responses to Interrogatories.  Considering that many of the referenced Interrogatory responses are incomplete, some of Plaintiff's initial disclosures and production are rendered deficient, as well.

responses to that Interrogatory are typically deficient and fail to identify persons in response.   Plaintiffs' reference to Response No. 12 is misleading and confusing since that response refers to a provider list that is typically deficient, and it is not likely to contain more than a provider's name and address.  Plaintiffs' reference to Response No. 14 is similarly unhelpful since that response typically refers to Response Nos. 4 and 12 (both already referred to in this response).

- Interrogatory No. 10:   Plaintiffs' responses to this Interrogatory, requesting information regarding Plaintiffs' counseling and mental health treatment and treaters, solely refer to Interrogatory No. 12.  This reference, however, is misleading and confusing since that response refers to a provider list that is typically deficient, and further is not likely to contain more than a provider's name and address.

- Interrogatory No. 12:   This Interrogatory requests the "date and circumstances" that a Plaintiff sought care or treatment from a health-care professional or facility, the dates of such care or treatment, the "name and address of each …person who attended or treated [him/her]," and the "names and addresses of witnesses with knowledge of …the treatment rendered."  Plaintiffs' responses, however, "incorporate[] herein, word for word… the "Medical Providers List previously submitted."   This incorporation alone, however, is insufficient since these Plaintiffs' provider lists are pervasively deficient and generally do not contain more than a provider's name and address.

- Interrogatory No. 14:   Plaintiffs' responses to this Interrogatory, requesting information and witnesses regarding prescription and non-prescription medications Plaintiffs have ingested, solely refer to Interrogatory Nos. 4, and 12.  Plaintiffs' reference to Response No. 12 is misleading and confusing since that response refers to a provider list that is typically deficient, and further is not likely to contain more than a provider's name and address.  Plaintiffs' reference to Interrogatory No. 4, which requests the ten persons Plaintiffs are closest to, also fails to provide much of the requested information in this Interrogatory.

- Interrogatory No. 22:   Plaintiffs' responses to this Interrogatory, requesting witnesses with knowledge of the 72 hours before a Plaintiff's suicide attempt or death, solely refer to Interrogatory Nos. 4, and 12.  Plaintiffs' reference to Response No. 12 is misleading and confusing since that response refers to a provider list that is typically deficient, and is not likely to contain more than a provider's name and address and fails to specify which of these individuals have the relevant knowledge.  Plaintiffs' reference to Interrogatory No. 4, which requests the ten persons

Plaintiffs are closest to, fails to specify which of these individuals have the relevant knowledge.

Several Plaintiffs also cross-referenced their medical provider lists, even though they did not supply a provider list at all or failed to provide a comprehensive list.  In short, Plaintiffs' cross-references are convoluted, circuitous, and do not logically lead to responsive information.  Accordingly, this Court should treat these confounding cross-references as failures to respond.

### F.    Inapposite And Untimely Objections

Plaintiffs have improperly objected to some Interrogatories without providing any response.  As to Interrogatory Nos. 8 and 9, nearly all Plaintiffs have solely asserted objections with no further response.  Considering that this Court has ruled that "[r]egarding Interrogatory Nos. 8 & 9, Plaintiffs shall respond to the interrogatory as propounded," (Discovery Order No. 2, at 6), it is wholly improper for Plaintiffs to simply object to these Interrogatories without answering.  As this Court recently recognized, "template discovery was worked out a long time ago.  I haven't had a single motion . . . in the course of five years disputing the scope of the template discovery, and I don't expect that I would look very seriously at such a motion at this stage."  (Dec. 1, 2010 Status Conference Tr. at 33:3-8.)  Accordingly, there should be no doubt that Plaintiffs were and are required to respond to these Interrogatories.

### G.    Stock Answers To Individualized Questions

Many Plaintiffs have the exact same response to certain Interrogatories, despite the fact that the Interrogatory seeks personalized information.  For instance, Interrogatory No. 11 asks:

> Please describe any instances of psychiatric or mental illness, suicide, attempted suicide, homicide or other violent behavior by Plaintiff or any of Plaintiff's family members . . . for each such instance, identify the person; the person's relationship to Plaintiff the nature of the person's illness or behavior and identify the individuals that might have knowledge of these incidents.

In response to this Interrogatory, many Boone Plaintiffs' responses provided in 2010 are suspiciously identical.   They simply state: "Abnormal thinking and suicidal ideation." [12]

---

[12] To name a few but by no means all, "Abnormal thinking and suicidal ideation" was supplied as an answer to Interrogatory No. 11 in responses by Belinda Havard, Dorothy Tolliver, Darlene Stampley,

Personalized answers in response to Interrogatory No. 11 are particularly important in these cases because – as far as can be ascertained – it is one of the only places where Boone Plaintiffs actually provide some insight into their alleged injury and these responses provided by Mr. Boone in 2010 are in most circumstances the first mention of these types of injuries. In fact, Plaintiffs cross-reference Interrogatory No. 11 in response to Interrogatory No. 19, which asks for a computation of damages.

For many Boone Plaintiffs, there even arise inconsistencies between the stock responses and the handwritten responses provided previously. For example, Plaintiff Rosa Smith originally handwrote "none" in response to Interrogatory No. 11, but her 2010 response contained the typed answer "abnormal thinking and suicidal ideation." (Ex. T, *Compare* Rosa Smith 2008 Resp. to Interrogs. *with* Rosa Smith 2010 Resp. to Interrogs.) Many Boone Plaintiffs wrote "N/A" or crossed off the response area to Interrogatory No. 11 in their handwritten 2008 responses.[13] However, in the last several months, this answer has fundamentally changed for most Boone Plaintiffs and the vast majority now allege "abnormal thinking and suicide ideation." These new claims are highly improper and prejudicial at this point in the litigation. These cases have been pending for years and Plaintiffs should not be allowed to simply add a never-before-disclosed alleged injury at this late stage. If Plaintiffs wanted to make these allegations, they should have done it years ago and put Pfizer on notice of them. Pfizer has been evaluating these cases and proceeding with discovery based on responses to the initial templates. As such, adding previously undisclosed injuries at this point is not only improper, it is fundamentally unfair and

---

Freddie Harris, Evelyn Holt, Mae Catherine Hester, Clarence Harris, Mark Head, Frank Hoover, Carl Henry, Memye Creswill, Ruby Hoover, and William Hony.

[13] For example, Plaintiff Magnolia Thomas alleged "memory loss, HBP, dizziness" in Exhibit B to the Complaint and then handwrote "to be supplemented" in response to Interrogatory No. 11, but she recently-provided an Interrogatory No. 11 response that included "abnormal thinking and suicide ideation." Plaintiff Barbara Readus alleged "dizzy, memory loss, high blood pressure" in Exhibit B and initially wrote nothing in response to Interrogatory No. 11, but then her recently-provided response stated "abnormal thinking and suicide ideation." Plaintiff Bridgette Shields alleged "memory loss" in Exhibit B and initially wrote "N/A" in response to Interrogatory No. 11, but then her recently-provided response included "abnormal thinking and suicide ideation."

will greatly enlarge the time needed for discovery if allowed to stand.

Furthermore, courts have held that a firm representing multiple plaintiffs cannot simply provide common responses to Interrogatories that seek individualized information.  For instance, in *In re Family Dollar FLSA Litig.*, 3:08MD1932-MU, 2009 U.S. Dist. LEXIS 59165 (W.D.N.C. July 10, 2009), defendants in that case moved to dismiss a group of plaintiffs because their attorneys answered their Interrogatories by providing "identical answers [that were] obviously not specific to each individual and therefore [were] not in compliance" with plaintiffs' individual discovery obligations.  *Id.* at *22.  The Court agreed and dismissed the claims of plaintiffs who had filed identical responses because it found:

> [T]he requests at issue . . . require[d] an individualized response, specific to each Plaintiff answering the requests.  However, a review of the responses reveal[ed] that they [were] canned responses obviously drafted by counsel and not the individual Plaintiffs.  Such responses represent[ed] a blatant disregard for this Court's previous discovery Order.

*Id.* at *23.  Likewise, the Boone Plaintiffs' pro forma responses are improper for the same reasons stated by the *Family Dollar* court.

## H.    Unapproved And Unilaterally-Imposed Time Limitations

Contrary to the Federal Rules of Civil Procedure and well-settled precedent, Mr. Boone imposed time limitations on certain Interrogatories that were neither approved by the Court nor agreed to by Defendants.  For example, the Court-approved version of Interrogatory No. 10 asked Plaintiffs to provide certain information about any psychiatrist or other mental health professional Plaintiffs may have seen at any time.  Mr. Boone altered this template Interrogatory to add the following time limitation: "treatment to the Plaintiff for the time period since five (5) years before Plaintiff started taking Neurontin OR since ten (10) years before the occurrence of the incident alleged in the Complaint, whichever date is earlier."  (*See, e.g.*, 2008 Shoemaker Resp. To Interrogs. (emphasis omitted).)  However, not only has the Court failed to approve this time limitation unilaterally imposed by Mr. Boone, Discovery Order No. 2 explicitly stated, "Regarding Interrogatory Nos. 10 and 12, Plaintiffs' *time period limitation is OVERRULED*."

(Discovery Order No. 2, at 6 (emphasis added).)   Mr. Boone also attached improper time limitations to Interrogatory Nos. 2, 3, 5, 6, 12, 13, 14, and 24.

Counsel Boone's attempt to unilaterally and arbitrarily limit the scope of Plaintiffs' discovery obligations, in addition to violating this Court's Discovery Order No. 2, is contrary to the Federal Rules.  *See, e.g.*, *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20-21 (S.D.N.Y. 1995) (stating that "[t]he disclosure provisions in the Federal Rules of Civil Procedure do not permit a party to trim his duty of disclosure to suit his own view of what might be relevant to his adversary"); *LaBounty v. McCoy*, 1991 WL 128735 (W.D.N.Y. 1991), *2 (stating that plaintiffs "must make available all medical records and, to the extent he believes some should be exempt from production, he must provide the Court with specific facts upon which such belief is founded"); *Caldwell v. Ctr. for Corr. Health and Policy Studies, Inc.*, No. Civ. A. 03-1464 GK/JMF, 2005 WL 1313507, *2 (D.D.C. June 2, 2005) (chastising plaintiffs counsel for "substitut[ing] his definition of what is discoverable . . . for the discovery standard as stated by the Federal Rules of Civil Procedure").  Because Plaintiffs' responses have been restricted by Mr. Boone's invalid time limitations, they are inherently incomplete.  Plaintiffs should be compelled to provide information in accordance with time ranges submitted in Pfizer's template Interrogatories that were approved by this Court.

### I.      Other Deficiencies

In addition to the global and recurrent deficiencies mentioned in this memorandum, Plaintiffs' responses are incomplete in several other individualized ways that are too numerous to explain herein.   Thus, Pfizer respectfully refers the Court to and incorporates its attached Appendix A, which explains case-specific problems with individual Plaintiffs' discovery responses in more detail.   Pfizer likewise moves to compel with regard to all materials and information outlined in Appendix A, which is incorporated herein, and asks for any additional relief that the Court believes is appropriate.[14]

---

[14] Counsel Boone recently sent amended provider lists for fifty-four Plaintiffs, and these amended lists identify some prescribers for those Plaintiffs.  As it just so happened, most of those fifty-four

II.    **Counsel Boone's Discovery Lapses Have Prejudiced Pfizer**

Federal Rule of Civil Procedure 26(g)(1)(A) requires that an attorney sign all discovery responses, and this signature "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the discovery response "is complete and correct as of the time it is made."   Where an attorney improperly certifies a discovery response without justification, "the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."   Fed. R. Civ. P. 26(g)(3). Furthermore, this Court recognized in June 2008:

> The orderly management of this litigation requires the parties to heed the Court's orders and to pursue their claims in a diligent and timely fashion. . . .  The Court is "free to enforce its discovery rules by ordering compliance, sanctions, or any other appropriate remedy." *Samos Imex Corp. v. Nextel Communications, Inc.*, 194 F.3d 301, 305 (1st Cir. 1999).

(Discovery Order No. 25 [1335] at 5.)

No reasonably experienced attorney could have determined in good faith that Plaintiffs' discovery responses were "complete and correct" at the time Mr. Boone signed them.  Contrary to the Court's explicit directions, the inadequacy of Plaintiffs' responses shows that Mr. Boone failed to "communicate with [his clients], talk to them, go over [template discovery], ask the kind of thoughtful and probing questions that counsel ordinary ask or should ask of their clients in the course of document production or response to paper discovery so that there's a reasonable likelihood that it is complete."   (*See* December 1, 2010 Status Conference Tr. at 31:20-32:8.) The pervasive and blatant deficiencies outlined in this memorandum and Appendix A make clear that Mr. Boone did not give proper reverence to his Rule 26(g)(1)(A) certification duties.

---

Plaintiffs have names beginning with letters near the front of the alphabet, and so Defendants would note the names at the beginning portion of the attached Appendix (because it lists them alphabetically) disproportionately have prescriber identifications included.  The majority of Boone Plaintiffs, however, still have not identified Neurontin prescribers in their provider lists or Interrogatory responses. Furthermore, even in the cases where the prescriber is identified, the majority of Plaintiffs do not supply dates or date ranges for the prescriptions – as required by this Court's order.

### A.     Inherently Defective And Improper Forms

Counsel Boone provided his clients with a form that unilaterally limited the template Interrogatories submitted by Pfizer and approved by this Court.  The altered form that Mr. Boone used was confusing and misleading in a number of ways.

First, as with Plaintiffs' other Interrogatory responses, Mr. Boone included unilaterally-imposed time limitations on certain Interrogatories that were neither approved by the Court nor agreed to by Defendants.  For the reasons explained *supra* in section I.H., this was improper under the Federal Rules and contrary to this Court's orders.

Second, Mr. Boone's form contained insufficient space for Plaintiffs to write in the information requested, and this absence of space on the form – or the confusing instructions – implied to Plaintiffs that certain information was not required.  For instance, Interrogatory No. 3 appeared as follows:

**INTERROGATORY NO. 3:**

> Identify the name and address of each of Plaintiff's employers for the twenty years preceding commencement of this suit, the inclusive dates of each, the nature of his or her work with each employer, and the reason for the termination of the employment. Also identify Plaintiffs supervisors, bosses, co-workers and any other employees that he worked closely with for each of his prior places of employment [**ten-(10) year period immediately preceding the incident**].[15]
>
> **ANSWER TO INTERROGATORY NO. 3:**
> Name/Address of Plaintiff's Employer: _____
> Dates of Employment: _____
> Nature of Work: _____
> Immediate Supervisors: _____

As is obvious, the form supplied by Counsel Boone provided no blank space in which the Plaintiffs could have filled in "the reason for the termination of the employment" or provide the requested names of any of his or her co-workers other than immediate supervisors. Not surprisingly, almost none of his Plaintiffs disclosed this information.  Additionally, Interrogatory No. 4 asked for information about *ten* people to whom Plaintiffs were close, but Mr. Boone's

---

[15] The bracketed time limitation in the Interrogatory was added by Mr. Boone.

form only provided lines for *four* responses.[16]  (*Id.*)  Examples of other notable spacing problems with Mr. Boone's form included:

- Interrogatory No. 1:  Plaintiff was asked to state "any other names that [Plaintiff] has used or was known by, including the dates during which she . . . was known by such other names," but the form failed to provide a blank in which to provide such information.

- Interrogatory No. 6:  Plaintiff was asked to state "the dosage and the frequency" of her use of illegal drugs and/or or prescription drugs that were not originally prescribed to her, but the form provided blanks for Plaintiff to state whether she took any such substances and did not provide any blanks for "the dosage and the frequency" of use.

- Interrogatory No. 11:  Plaintiff was asked to name "instances of psychiatric or mental illness, suicide, attempted suicide, homicide or other violent behavior by Plaintiff or any of Plaintiff's family members," but the form only contained space to provide this information for family members, and not Plaintiff herself.

- Interrogatory No. 12:  Plaintiff was asked to identify "the date and circumstances of each . . . injury, illness, disease, or affliction" for which treatment was sought, but while the form provided blanks for Plaintiff to identify what she was treated for, it did not include any blanks for Plaintiff to identify the "date and circumstances" of her alleged harm.

- Interrogatory No. 13:  Plaintiff was asked to identify any "judgment or plea" that she entered into in connection with an offense, but the form merely provided a blank for "Plea Entered."

- Interrogatory No. 13:  Plaintiff was asked to provide the "address of each institution in which Plaintiff was confined or referred for treatment or counseling in connection with [an] offense" and "the name and the last known address of any probation, parole, or juvenile officer assigned to any such case," but the form did not provide any blanks for such information.

---

[16] When Plaintiff Lashonda Skinner was asked at her deposition why she only wrote in four names in response to Interrogatory No. 4 in Mr. Boone's form, she responded, "I only had four lines." (Ex. U, Skinner Dep. at 151:7-10.)

- Interrogatory No. 14:  Plaintiff was asked to "state the name of the prescribing health-care professional," but the form did not provide any blanks for such information.

- Interrogatory No. 14: Plaintiff was asked to identify "each date that the prescription was prescribed," but the form merely asked for "Date Prescribed," which was under-inclusive because it erroneously suggested that Plaintiff needed only provide the initial or one date of her prescription.

These very real problems with the form not only misleadingly implied that Plaintiffs were not required to provide all information requested, they actually prevented Plaintiffs from answering the questions as asked.

Third, Mr. Boone did not give Plaintiffs an opportunity to answer certain Interrogatories because he filled the empty space with outdated and previously-overruled objections.  As explained supra at section I.F., such objections have been previously rejected by this Court and the time for making proper objections has long passed.  (*See* Dec. 1, 2010 Status Conference Tr. at 33:3-12; *see also* Discovery Order No. 2, at 6 (specifically ordering Plaintiffs to response to Interrogatory Nos. 8, 9, 16, and 19).)

In summary, Counsel Boone's actions – in supplying his clients with these defective forms and then using their answers as responses to discovery – were clearly improper because the forms were inherently misleading, confusing, self-contradictory, inadequate, and contrary to this Court's orders and the Federal Rules.

## B.    Concerns About Pervasive Spoliation

Several Plaintiffs who have been deposed have made clear that no one has informed them about their duty to retain records relevant to this litigation.  (*See, e.g.*, Kyle Dep. at 10:19-12:12; Deborah Watson Dep. at 10:11-13.)[17]  Counsel Boone's failure to inform his clients about their discovery obligations,[18] in tandem with Plaintiffs' deficient and tardy discovery responses, has

---

[17] Mr. Kyle testified that he had never met with Mr. Boone prior to his deposition.  (Kyle Dep. at 11:16-23.)  Mr. Kyle ultimately agreed to dismiss his case during a break in the middle of the deposition.

[18] In fact, Mr. Boone himself asked one Plaintiff, Jerry Lowe, if anyone had instructed him to "bring any information, document or pill bottle that [he] might have in relation to Neurontin" to the

created the conditions for widespread spoliation of responsive evidence.

In fact, testimony from Plaintiffs deposed to date makes clear that spoliation has occurred and will likely continue to occur among Boone Plaintiffs.   For example, Plaintiff Watson testified that she has thrown away several empty Neurontin bottles since the beginning of this litigation, even though Request for Production No. 4 asked for "[e]ach bottle and label in Plaintiff's possession."  [333]  Ms. Watson stated that she only sent Mr. Boone one bottle, which was never produced to Pfizer.  Yet she testified that she had thrown other bottles away and that her counsel failed to inform her that she had an obligation to retain them.[19]  (Watson Dep. at 15:5-16:6.)  Also, both Ms. Watson and Mr. Kyle stated that they routinely kept calendars of their medical appointments, which would have been responsive to Request for Production No. 6, but they did not produce them and ultimately threw them away.  (Id. at 16:14-17:19; Kyle Dep. at 10:22-11:23.)  Mr. Kyle further testified that he typically threw away documents that he got from his doctors and that no one has "ever told [him] to keep documents relating to [his] healthcare pertaining to this lawsuit."  (Kyle Dep. at 10:19-25.)  That was despite the Court's order that Plaintiffs "shall supplement the production as they receive medical records in the future." (Discovery Order No. 2, at 3.)

Given the Boone Plaintiffs' apparently widespread lack of knowledge about their discovery duties, it is likely that similar instances of spoliation will continue to surface in this litigation.

## III.   Pfizer Should Be Awarded Its Reasonable Expenses In Bringing This Motion

The Court should also award Defendants reasonable expenses, including attorneys' fees,

---

deposition, and Mr. Lowe responded "No."  (Ex. V, Lowe Dep. at 238:11-239:4.)  While Plaintiff Lowe had brought a bottle of Neurontin to his deposition, he testified that he did so, not at his attorney's instructions, but simply because he "had just went and picked the prescription up from the drugstore."  (Id. at 239:1-11.)

[19] The pharmacy records that Pfizer has retrieved for Ms. Watson show that she only filled one prescription for Neurontin so she might actually be mistaken to the extent she asserts she had multiple bottles.  Regardless, her testimony illustrates how Counsel Boone's failure to advise his clients has likely resulted in instances of spoliation.

they incurred in making this motion.  Federal Rule of Civil Procedure 37(a)(5)(A) provides:

> If [a motion for an order compelling disclosure or discovery] is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

*See also* Fed. R. Civ. P. 36(b) advisory committee notes ("The provision places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust.").   Accordingly, the Court should grant Defendants' request for reasonable expenses.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully requests that the Court issue an order compelling Plaintiffs to provide full and complete responses to template discovery in accordance with their discovery obligations and any other relief the Court deems appropriate, including dismissal and preclusion of evidence.

Dated: December 20, 2010         Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By:    /s/ Mark S. Cheffo
       Mark S. Cheffo

Four Times Square
New York, NY 10036
Tel:  (212) 735-3000

ROPES & GRAY LLP

By:      /s/ Ana M. Francisco
         Ana M. Francisco
         BBO #564346

Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel:  (617) 951-7000
Email:  ana.francisco@ropesgray.com

*Attorneys for Defendants Pfizer Inc and Warner-Lambert Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system has been served pursuant to Case Management Order #3 on December 20, 2010.

/s/ Ana. M. Francisco
Ana M. Francisco